Daniel J. Pochoda (SBA 021979)
Kelly Flood (SBA 019772)
James Duff Lyall (SBA 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 N. 7th Street, Suite 235
Phoenix, AZ  85013
Telephone: (602) 650-1854
dpochoda@acluaz.org
kflood@acluaz.org
jlyall@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Victor Parsons, Robert Gamez, Shawn
Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez,
Christina Verduzco, Jackie Thomas, Jeremy Smith, Maryanne
Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and
Charlotte Wells, on behalf of themselves and all others
similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE
PAGE]**

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
STRUCK WIENEKE & LOVE
3100 West Ray Road, Suite 300
Chandler, AZ 85226
Telephone: (480) 420-1600
dstruck@swlfirm.com
kwieneke@swlfirm.com

*Attorneys for Defendants*

**[ADDITIONAL COUNSEL LISTED ON
SIGNATURE PAGE]**

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| VICTOR ANTONIO PARSONS, et al., | NO. 2:12-cv-00601-NVW (MEA) |
| Plaintiffs, | JOINT PROPOSED DISCOVERY PLAN |
| v. | |
| CHARLES RYAN, et al., | |
| Defendants. | |

Pursuant to the Court's order dated May 18, 2012, the parties submit the following joint proposed Discovery Plan.

1.   <u>Attendees at Rule 26(f) Meeting</u>:   the following attended the Rule 26(f) meeting and assisted in developing the Plan:

- *Counsel for the named Plaintiffs and putative class*:  Donald Specter (Prison Law Office); David C. Fathi (ACLU National Prison Project); Caroline N. Mitchell (Jones Day);

- *Counsel for the Arizona Center for Disability Law*:  Jennifer Alewelt; and

- *Counsel for Defendants Ryan and Pratt*:  Daniel P. Struck and Timothy Bojanowski (Struck Wieneke & Love); Michael E. Gottfried (Office of the Attorney General).

2.   <u>Statement of the Case</u>

**Plaintiffs' Statement of the Case:**       Prisoner Plaintiffs and the putative Plaintiff Classes (collectively the "Prisoner Plaintiffs") filed the Class Action Complaint for Injunctive and Declaratory Relief on March 22, 2012 (the "Complaint").   The Complaint contends that Defendants systematically fail to provide prisoners housed in state prisons operated by the Arizona Department of Corrections ("ADOC") with constitutionally adequate medical, dental, and mental health care (hereinafter "health care"), and that Defendants house prisoners in isolation in supermax Special Management Units ("SMUs") in cruel and unusual conditions of confinement.   Plaintiffs seek class certification pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1) and (2). Plaintiffs seek injunctive and declaratory relief to compel Defendants to immediately provide Prisoner Plaintiffs with constitutionally adequate health care and with protection from unconstitutional conditions of confinement.   Prisoner Plaintiffs request the Court retain jurisdiction until Defendants have fully complied with orders of this Court and there is a reasonable assurance that Defendants will continue to comply absent continuing

SFI-737127v1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

jurisdiction.  Prisoner Plaintiffs seek the costs of this suit, reasonable attorneys' fees, and litigation expenses pursuant to 42 U.S.C. § 1988, and any other and further relief as the Court deems just and proper

Plaintiffs raise five claims:  (1) Defendants have a policy and practice of failing to provide prisoners with adequate health care, and are deliberately indifferent to the fact that these conditions result in significant injury and a substantial risk of serious harm, depriving Plaintiffs and the Plaintiff Class of their Eighth Amendment rights; (2) Defendants have a policy and practice of failing to provide prisoners with adequate medical care, and are deliberately indifferent to the fact that the systemic failure to do so results in significant injury and a substantial risk of serious harm, depriving Plaintiffs and the Medical Subclass of their Eighth Amendment rights; (3) Defendants have a policy and practice of failing to provide prisoners with adequate dental care, and are deliberately indifferent to the fact that the systemic failure to do so results in significant injury and a substantial risk of serious harm, depriving Plaintiffs and the Dental Subclass of their Eighth Amendment rights; (4) Defendants have a policy and practice of failing to provide prisoners with adequate mental health care, and are deliberately indifferent to the fact that the systemic failure to do so results in significant injury and a substantial risk of serious harm, depriving Plaintiffs and the Mental Health Subclass of their Eighth Amendment rights; and (5) Defendants have a policy and practice of confining thousands of prisoners in isolation (defined as confinement in a cell for 22 hours or more each day or confinement in Eyman – SMU 1, Eyman – Browning Unit, Florence – Central Unit, or Perryville – Lumley Unit Special Management Area ("SMA")), in conditions of enforced idleness, social isolation, and sensory deprivation, and are deliberately indifferent to the fact that these conditions result in a substantial risk of serious physical and psychiatric harm, depriving Plaintiffs and the Isolation Subclass of their Eighth Amendment rights.

Plaintiff Arizona Center for Disability Law ("ACDL") is pursuing this action to protect and advocate for the rights and interests of prisoners who are "individuals with

mental illness" as that term is defined in 42 U.S.C. § 10802.  ACDL contends that Defendants systematically fail to provide prisoners housed in state prisons operated by the Arizona Department of Corrections ("ADOC") with constitutionally adequate medical, dental, and mental health care and conditions of confinement.

Defendants allege 43 affirmative defenses to Plaintiffs' claims:

**Defendants' Statement of the Case:**      Defendants assert that the Plaintiffs in this matter have received medical, dental and mental health care that is within the applicable standard of care, and that it far exceeds levels necessary for there to be a determination of deliberate indifference to serious health care needs.  Defendants also assert that there was no systemic failure to provide constitutionally adequate health care either before the complaint was filed or at the time the complaint was filed.  Defendants maintain that improvements in the delivery of health care to the ADOC inmate population are constantly being made, both prior to the filing of this lawsuit and after, and that these improvements have nothing to do with the lawsuit filed by Plaintiffs.  Defendants also assert that the medical portions of this lawsuit are moot as of July 1, 2012, due to the fact that the entire health care delivery system is being taken over by Wexford Health Sources ("Wexford"), Inc. as a result of legislation and a contract entered into between Wexford and the State of Arizona.  By virtue of this contract, Wexford will be employing all health care professionals and will be providing all medical, mental health and dental care to all inmates housed in ADOC operated facilities in accordance with National Commission on Correctional Health Care Standards (NCCHC).  Defendants further deny that inmates who are housed in segregation in SMU 1, Eyman-Browning Unit, Florence-Central Unit or Perryville-Lumley Unit Special Management Area are being housed in conditions of confinement that constitute deliberate indifference or are atypical of the hardships normally experienced by inmates in a prison setting and that the housing of inmates who are management problems within the ADOC system is consistent with contemporary

correctional standards.   Finally, Defendants assert that this matter is not suitable for certification as a class action.

> 3.   <u>Principal Factual and Legal Disputes</u>:

*Factual Issues*

Defendants served their Amended Answer to the Complaint on June 4, 2012, stating which facts in the Complaint they dispute.  Defendants admit that the Plaintiffs are housed in state prisons, and that all of the Plaintiffs but Jeremy Smith are prisoners in state prisons.   Defendants admit that Defendant Ryan is the Director of the Arizona Department of Corrections acting in his official capacity, and that his duties and responsibilities are governed by Arizona law.  Defendants admit Defendant Pratt is the Interim Division Director of Health Services Division acting in his official capacity. Defendants admit a demand letter was sent to Defendant Ryan and that said letter listed numerous allegations concerning the delivery of health care to prisoners in ADOC. Defendants admit they maintain records for prisoners housed at ADOC facilities.

Defendants dispute all other facts relating to liability.

*Legal Issues*

The parties agree that this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.  The parties further agree that venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b), because the Defendants reside therein, and because a substantial part or all of the alleged events and omissions giving rise to Plaintiffs' claims occurred in the District of Arizona.

Defendants deny that Plaintiffs or the putative class are entitled to any relief, and dispute they violated any Plaintiff or putative class member's constitutional rights. Defendants further deny any liability for harm alleged by Plaintiffs.   Defendants deny Plaintiffs have standing to seek declaratory and/or injunctive relief.   Furthermore, Defendants offer 43 affirmative defenses which Plaintiffs dispute.

JOINT PROPOSED DISCOVERY PLAN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

a)     Class Certification

**Plaintiffs' Position:**  Plaintiffs contend that the class and subclasses pled in the Complaint each satisfy the requirements for certification under Federal Rule of Civil Procedure 23.  Plaintiffs will move for class certification after having had an opportunity to take discovery.    Plaintiffs contend that defendants are artificially seeking to bifurcate discovery and plaintiffs intend to oppose limitations on discovery in the pre-certification phase of the litigation.

**Defendants' Position:**    Although Plaintiffs state they will move for class certification in this matter, they have failed to provide Defendants with a date or timeframe in which they plan to file their Motion for Class Certification.  Defendants deny this matter is suitable for class certification and affirmatively allege Plaintiffs do not have standing to assert their claims on behalf of other individuals and that Plaintiffs are not proper class representatives.  Defendants deny the proposed class and subclasses are so numerous that joinder of all members is impracticable.  Defendants deny there are questions of law and fact common to the members of the proposed class and subclasses.  Defendants deny the claims of Plaintiffs are atypical of those of the proposed class and subclasses.  Defendants deny Plaintiffs are capable of fairly and adequately protecting the interests of the proposed class and subclasses.  Additionally, and as discussed below, once Plaintiffs file their Motion for Class Certification, Defendants will request a stay on merits discovery in order to conduct class discovery prior to filing their Opposition to Plaintiffs' Motion for Class Certification.

4.     Jurisdictional Basis of Case:   This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  Plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. §§ 1343, 2201, and 2202; and 42 U.S.C. § 1983.

5.     Unserved Parties:  There are no unserved parties.

6.     Contemplated Additional Parties and Amendments:  None of the Plaintiffs presently contemplate adding additional categories of claims to the Complaint.  The

SFI-737127v1

Prisoner Plaintiffs anticipate that they will seek to amend the Complaint or otherwise bring a motion to add one or more named plaintiffs as they learn more about the current conditions in the ADOC, whether as a result of a change in status of current named Plaintiffs or because of events or evidence that arises in the course of the litigation or otherwise comes to Plaintiffs' attention. Prisoner Plaintiffs also anticipate that they may seek to amend the Complaint to conform to the evidence in the case. Finally, Defendants are named in their official capacities. If the identity of holders of those positions changes during the course of the litigation, a substitution of parties pursuant to Federal Rule of Civil Procedure 25(d) would occur. Plaintiff Arizona Center for Disability Law does not presently contemplate any amendments beyond those mentioned above. Defendants do not presently contemplate any amendment to their answer.

7.    Contemplated Motions:  The parties contemplate the following motions at this time, although developments in the case may give rise to the need for additional motions or obviate the need for some of the presently listed motions:

*Prisoner Plaintiffs*:

1.    Motion for order regarding preservation of documents.  This will resolve any outstanding dispute regarding the extent of Defendants' and the ADOC's obligation to preserve documents.

2.    Motions to compel discovery as needed.  This will decide scope of permitted discovery.

3.    Motion for Protective Order.  This will decide whether and how certain personal information of prisoners can be disclosed.

4.    Motion to limit the cost per page that Defendants may charge for produced discovery materials or for alternative relief.  This will determine the rate Plaintiffs must pay for materials produced by Defendants and whether Plaintiffs can alternatively retain their own vendor to perform copying of such materials.

5.    Motion for Class Certification.  This will decide whether the putative classes can be certified consistent with Federal Rule of Civil Procedure 23.

6.    Summary Judgment.  This will determine whether any of Plaintiffs' claims can be decided as a matter of law.

7.    Such other motions as may be warranted by developments in the case, including, if Plaintiffs prevail, a motion for attorneys' fees and costs.

*Plaintiff   Arizona Center for Disability Law*: The Center contemplates filing motions on topics 1-4, 6, and 7 identified above.

*Defendants Ryan and Pratt*:

1.    Motion to Dismiss on mootness grounds.  As of July 1, 2012, Wexford is managing all aspects of health care at ADOC facilities rendering Plaintiffs' claims moot.  In the alternative of asking for dismissal on mootness grounds, Defendants will move for dismissal of particular named Plaintiffs for failure to exhaust, and running of the statute of limitations.[1]

2.    Motion to Stay medical portion of this matter for a period of no less than six months to allow for an evaluation of Wexford's provision of health care pursuant to the contract.

3.    Summary Judgment for dismissal of Plaintiffs' claims as a matter of law.

4.    Motions to Limit Discovery.  These motions may include but are not limited to motions to limit discovery requests, the course and scope of discovery, and/or the implication of class discovery prior to and separate from merits discovery.

5.    Motion to Compel discovery if necessary.

---

[1] In the event Plaintiffs' health care claims are not dismissed on mootness grounds, Defendants may file a Rule 19 Motion to Dismiss for failure to join Wexford as an indispensable party.

JOINT PROPOSED DISCOVERY PLAN
2:12-cv-00601-NVW (MEA)

6.     Such other motions that may become necessary after further development of the facts.

8.     <u>Suitability for Reference</u>:   This case is not suitable for reference to arbitration or a United States Magistrate Judge for trial.

9.     <u>Related Cases</u>:  None

10.    <u>Exchange of Initial Disclosures</u>:   The parties exchanged Federal Rule of Civil Procedure 26(a) initial disclosures  on  June 29, 2012 pursuant to this Court's May 18, 2012 Order.  .

11.    <u>Necessary Discovery</u>:

a.     <u>Extent, nature and location of anticipated discovery</u>:

**Plaintiffs' Position:**

Plaintiffs expect discovery to be substantial because it will reach the scope of the ADOC's provision of health care, including physical, mental health, and dental care, and the treatment of prisoners held in isolation.  The discovery will be largely at or from ADOC facilities and their employees and at or from health care providers servicing the ADOC.  Discovery will also involve former employees and agents of the ADOC and other witnesses who have personal knowledge of the underlying events, including family members who have observed the level of care or conditions of confinement, or interacted with the ADOC with regard to such care or conditions of confinement.

Plaintiffs oppose Defendants' request to bifurcate discovery between class and merits issues.  Plaintiffs submit that especially after the Supreme Court's decision in *Walmart* class and merits discovery overlap, that bifurcation would result in unnecessary use of judicial resources to determine which discovery is relevant to the merits and which is relevant to the class, and it would also result in duplicative discovery.

**Defendants' Position:**

Defendants propose a bifurcated discovery plan whereby separate discovery is conducted for class and merits discovery.  Plaintiffs' have yet to move for class

- 9 -

certification, and have given Defendants no indication when they plan to do so.  When Plaintiffs do file their Motion for Class Certification, Defendants will ask for a stay on merits discovery in order to first conduct class discovery.

      b.    <u>Suggested changes to limitations in Federal Rules:</u>

**<u>Plaintiffs' Position:</u>** Prisoner Plaintiffs propose no change to the limit for interrogatories or the rule governing document requests; 75 depositions per side; and a limit of 150 requests for admission, excluding requests directed to the authenticity of documents.   Plaintiff Arizona Center for Disability Law agrees to those limitations.

Defendants' Initial Disclosure Statement identified 767 witnesses and had five additional catch-all categories beyond that.  Given this number of identified witnesses who potentially have discoverable evidence, Defendants' proposal of 25 depositions, only one of which can be taken under Rule 30(b)(6), is unreasonable and would deprive Plaintiffs of discovery necessary to their case without justification under any of the factors enumerated in Federal Rules of Civil Procedure 30(a)(2) and 26(b)(2) (court can limit discovery if it is cumulative, can be obtained from more convenient or less expensive sources, or is unduly burdensome when considered in light of the benefit and importance of the issues).

Given the magnitude of Defendants' disclosure, 75 depositions is a reasonable starting point and Plaintiffs should still have the opportunity to seek additional depositions under Rule 30(a)(2), if that is necessary and the criteria under Rule 26(b)(2) for denying the depositions are not met.

As to Defendants' proposed limits on document requests, those also are unreasonable. Federal Rule of Civil Procedure 34 does not contemplate limits on document requests.  Additionally, although Federal Rule of Civil Procedure 26(b)(2) gives courts authority to limit the number of depositions, interrogatories and even requests for admission, it does not give courts authority to limit the number of document requests.   The Court, of course, has the authority to determine that a given discovery

request is too burdensome and that a party has been unreasonable, but the Court should decide that issue when a particular set of requests has been brought before it, after a meet-and-confer, not now.  This is especially true here, where Plaintiffs may need some very tailored requests to get at particular documents, such as individuals' medical and prison records or documents identified by particular witnesses in deposition.  Plaintiffs similarly request that Rule 45 subpoenas for documents not be limited at this time because there are many third parties, especially different health care providers, who have relevant documents, the production of which is necessary to Plaintiffs' case.

**Defendants' Position:**  There are fifteen Plaintiffs and only two Defendants. Therefore, Plaintiffs' position is that they are entitled to 750 interrogatories.  Additionally, by not limiting interrogatories, any additional Plaintiffs would be entitled to twenty-five interrogatories per Defendant.  Defendants propose a limit of 225 interrogatories *per side*, regardless of the addition of subsequent parties, and a limit of 50 requests for admission and 250 requests for production to per side.  Defendants propose a limit of twenty-five (25) depositions per side.  Defendants also propose a limit of one 30(b)(6) deposition, with no more than five topic areas, in order to prevent Plaintiffs from circumventing restrictions on the number of depositions by noticing up multiple 30(b)(6) depositions with a multitude of topic areas, thereby requiring Defendants to produce numerous witnesses.  Defendants also propose that Plaintiffs should not be allowed to circumvent any Court-imposed limits on requests for production by issuing subpoenas to the Defendants or the employees or agents of the Arizona Department of Corrections.  As the overwhelming majority of the witnesses identified in Defendants' Disclosure Statement are health care providers who were proving treatment of the 14 inmate Plaintiffs, the mere fact that they were included in the disclosure in no way requires that the parties should exceed 25 depositions per side, particularly as the information pertaining to any testimony can be obtained via interrogatory.  If, upon taking 25 depositions, the Plaintiffs believe that additional depositions are necessary, Defendants would be willing to revisit this issue

SFI-737127v1

provided Plaintiffs can show good cause as to why they require additional depositions.  A restriction of 25 depositions per side will force Plaintiffs and Defendants to be more circumspect in the depositions that they decide to take.

      c.     <u>Number of hours permitted for each deposition</u>:

**Plaintiffs' Position:**  Each side should be permitted five 14-hour depositions, all other depositions should be 7-hour depositions.

**Defendants' Position**:  Defendants object to any deposition longer than 7 hours.

      12.     <u>Discovery Deadlines</u>:

**Plaintiffs' Proposed Discovery Deadlines:**

      a.     Completion of fact discovery/Rule 26(a)(3) disclosures:  May 31, 2013.

      b.     Expert disclosures:  Plaintiffs' experts:  June 28, 2013; Defendants' experts: August 16, 2013; Plaintiffs' rebuttal experts:  September 27, 2013.

      c.     Deadline for Completion of Expert Depositions:  Plaintiffs' experts: July 26, 2013; Defendants' experts:  September 13, 2013; Plaintiffs' rebuttal experts: October 18, 2013.

      d.  Deadline for filing dispositive motions:  November 17, 2013.

      e.  Deadline for good faith settlement talks:  December 7, 2013.

**Defendants' Proposed Discovery Deadlines:**

      a)     Completion of fact discovery/Rule 26(a)(3) disclosures:  February 7, 2014.

      b)     Expert disclosures:  Plaintiffs' experts:  March 7, 2014; Defendants' experts:  April 25, 2014; Plaintiffs' rebuttal experts:  May 23, 2014.

      c)     Deadline for completion of expert depositions:  Plaintiffs' experts:  April 4, 2014; Defendants' experts:  May 23, 2014; Plaintiffs' rebuttal experts:  June 13, 2014.

      d)     Deadline for filing dispositive motions:  July 25, 2014.

      e)     Deadline for good faith settlement talks:  August 15, 2014.

SFI-737127v1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E-Discovery**

**Plaintiffs' Position:**   Defendants were on notice of their obligation to preserve relevant evidence no later than October 12, 2011, when plaintiffs' lawyers specifically brought that obligation to their attention.   Plaintiffs reminded Defendants of that obligation by a letter dated May 31, 2012.   Plaintiffs do not take the position that Defendants must preserve every document in the ADOC's possession.   Rather, as with any other party in anticipated litigation, Defendants' obligation is to preserve evidence relevant to the claims, and that effort should have commenced in October of last year, at the latest.   Plaintiffs will take a 30(b)(6) deposition on Defendants' preservation efforts and to understand Defendants' methods for storing and maintaining documents.   Once Plaintiffs have taken this deposition, the parties can meet-and-confer about how to manage e-discovery.

**Defendants' Position:**   On May 31, 2012, Plaintiffs sent Defendants a letter advising Defendants of Plaintiffs' position regarding preservation of evidence and the scope of e-discovery.   Plaintiffs' position is that "the preservation obligation extends to all evidence in ADC's possession, custody, or control."   *See* Plaintiffs' May 31, 2012 letter from David Fathi.

Defendants disagree with the broad and overreaching scope of document preservation suggested by Plaintiffs and contend it covers and reaches a plethora of documents that are irrelevant to this matter.   ADOC is a large entity with many subparts.  Preservation of every document generated by ADOC is impracticable and unnecessary.   It is Defendants' position that their preservation obligation is limited to documents related to the course and nature of this litigation.   Specifically, documents related to the specific health care claims of Plaintiffs.

Defendants plan to employ an electronic search to locate relevant electronically stored information and will disclose any restrictions as to scope of the electronically stored information.   The parties will meet-and-confer to reach an agreement as to the

JOINT PROPOSED DISCOVERY PLAN
2:12-cv-00601-NVW (MEA)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

method of searching.   Defendants intend to propose words, terms, and phrases to be searched with the assistance of the respective e-discovery coordinators, who are charged with familiarity with the parties' respective systems.   The parties will also meet-and-confer about reaching agreement as to the timing and conditions of any additional searches which may become necessary in the normal course of discovery.   To minimize the expense, Defendants may propose that the parties consider limiting the scope of electronic search (e.g. time frames, fields, document types).

Defendants' attorneys are in the process of discovering how the electronic storage system at ADOC operates and functions.   Defendants propose a narrow scope of e-discovery that is limited to the specific health care and conditions of confinement claims alleged by the named Plaintiffs.

13.   Request for Jury Trial:

**Plaintiffs' Position:**   Defendants made a request for a jury trial and Plaintiffs contest it.   The Complaint seeks only equitable forms of relief, and accordingly, Plaintiffs contend that Defendants are not entitled to a jury trial.

**Defendants' Position:**   Defendants specifically request a trial by jury "on all such claims or issues so triable to the extent permitted by law."   See Doc. 22 (Amended Answer).   Defendants are aware they are not entitled to a jury trial on equitable claims of relief, however, to the extent Plaintiffs' claims or issues evolve into those triable by jury, Defendants affirmatively preserve their right to a jury trial.

14.   Length of Trial:

**Plaintiffs' Position**:      All Plaintiffs agree that the trial should be 20 court days providing that the Court orders that direct examinations of experts be submitted on paper with live direct for such experts limited to no more than two hours per expert, with live cross-examination.  If Plaintiffs' proposal regarding  direct examination of experts is not accepted, then plaintiffs contend that the trial should be 26 court days and that the time

SFI-737127v1

should be reasonably allocated by the parties, with no set limit on the amount of time for an expert's direct examination.

**Defendants' Position**:   Defendants agree to a trial limited to 20 court days. Defendants further agree to limit direct examination of experts to no more than 2 hours per expert.   Defendants further agree to no limitation on cross examination of experts. Defendants dispute Plaintiffs' contention that direct examinations of experts be submitted on paper prior to trial to the extent that submission differs from each experts' report under Rule 26(a)(2)(b).

15.   Prospects for Settlement:

**Plaintiffs' Position**:   Plaintiffs are amenable to an enforceable settlement that requires Defendants to provide constitutional conditions in each of the areas identified in Plaintiffs' complaint and are willing to engage in discussions about the details of such a settlement at any time.

Plaintiffs have reviewed Defendants' proposal to stay the proceedings on the health care claims for six months in exchange for "discovery and access to effectively evaluate" whether health care is being provided at constitutional levels.   Plaintiffs agree to continue discussions with Defendants between now and the date of the case management conference scheduled for July 20.   In the event there is an agreement, the parties will promptly so notify the Court.

**Defendants' Position**:   Prior to filing Defendants' Amended Answer, Defense Counsel contacted Plaintiffs' Counsel in an effort to engage in good faith settlement discussions.   Defendant proposed Plaintiffs stay the case for six months following Wexford's take over on July 1, 2012 to allow implementation of Wexford's policies and practices and to determine if these policies and practices conform to constitutionally acceptable standards.   Defendants offered to provide Plaintiffs with discovery and access to effectively evaluate Wexford's performance pursuant to the Contract. (Which requires that Wexford provide medical, dental, and mental health in conformance with the

Constitution, and that such treatment conforms to the standards set forth by the National Commission on Correctional Health Care.).  If Wexford was providing constitutionally sufficient health care, Plaintiffs would dismiss the health care claims from the lawsuit (leaving only the isolation claim).  If Wexford was not providing constitutionally adequate health care, the case could go forward.  This would provide Wexford the opportunity to implement its policies and practices regarding the delivery of health care to inmates and prevent the parties and the Court from wasting unnecessary resources on these claims. Plaintiffs initially rejected this proposal, contending the only way the health care aspect of this case could be resolved was by admission of liability by Defendants for alleged unconstitutional practices and through entering into a consent decree or injunction whereby Plaintiffs would monitor Defendants actions.  On July 6, 2012, while discussing this section of the Rule 26(f) Statement, the Plaintiffs indicated a willingness to discuss the possibility of a stay.

   16.   <u>Other Matters</u>:

        a)   Copying Costs:  Currently, Plaintiffs are paying .50 cents a page for copying costs.

        **<u>Plaintiffs' Position</u>**:  Plaintiffs propose a 10 cent limit per page for copying costs.  This is consistent with the cost for providing subpoenaed documents in a statement recently issued by Wexford (attached) and is also consistent with A.R.S. § 12.351 (F)(1)'s per page cost for subpoenaed documents..

        **<u>Defendants' Position</u>**:  Defendants propose a .20 cent limit per page for copying costs, which is in line with actual costs of copying documents.

        b)   Access to ADOC facilities and ADOC employees

        **<u>Plaintiffs' Position</u>**:  This issue should be addressed by the  Court if the parties cannot resolve it through a meet-and-confer.

        **<u>Defendants' Position</u>**:  As discussed at the parties' 26(f) meeting, the parties will meet and confer at a later time regarding appropriate limits and boundaries

1

2

regarding Plaintiffs' access.  Defendants do propose that any visit be accompanied by an

attorney for the Defendants.

3

4

5

Dated:  July 7, 2012                                    Respectfully submitted,

**ACLU FOUNDATION OF ARIZONA**

6

7

8

9

10

11

12

By  /s/ Daniel P. Struck (with authority)
    Daniel J. Pochoda
    Kelly Flood (SBA 019772)
    James Duff Lyall (SBA 330045)*
    3707 N. 7th Street, Suite 235
    Phoenix, AZ  85013
    Telephone: (602) 650-1854
    dpochoda@acluaz.org
    kflood@acluaz.org
    jlyall@acluaz.org
    *Admitted pursuant to Ariz. Sup. Ct. R.
    38(f)

13

14

15

16

17

18

19

    Donald Specter (Cal. 83925)*
    Alison Hardy (Cal. 135966)*
    Sara Norman (Cal. 189536)*
    Corene Kendrick (Cal. 226642)*
    **PRISON LAW OFFICE**
    1917 Fifth Street
    Berkeley, CA  94710
    Telephone: (510) 280-2621
    dspecter@prisonlaw.com
    ahardy@prisonlaw.com
    snorman@prisonlaw.com
    ckendrick@prisonlaw.com
    *Pro hac vice*

20

21

22

23

24

    David C. Fathi (Wash. 24893)* ⌣
    Amy Fettig (D.C. 484883) *
    **ACLU NATIONAL PRISON
    PROJECT**
    915 15th St. N.W., 7th Floor
    Washington, D.C.  20005
    Telephone:  (202) 548-6603
    dfathi@npp-aclu.org
    afettig@npp-aclu.org

25

26

    ⌣*Pro hac vice - Not admitted in DC;
    practice limited to federal courts*

27

28

- 17 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Daniel C. Barr (SBA 010149)
Jill L. Ripke (SBA 024837)
James A. Ahlers (SBA 026660)
Kirstin T. Eidenbach (SBA 027341)
John H. Gray (SBA 028107)
Thomas D. Ryerson (SBA 028073)
Matthew B. Du Mée (SBA 028468)
**PERKINS COIE LLP**
2901 N. Central Ave., Suite 2000
Phoenix, AZ  85012-2788
Telephone:  (602) 351-8000
dbarr@perkinscoie.com
jripke@perkinscoie.com
jahlers@perkinscoie.com
keidenbach@perkinscoie.com
jhgray@perkinscoie.com
tryerson@perkinscoie.com
mdumee@perkinscoie.com

Caroline Mitchell (Cal. 143124)*
Ilham Hosseini (Cal. 256724)*
Sophia Calderon (Cal. 278135)*
**JONES DAY**
555 California St., 26th Floor
San Francisco, CA 94104
Telephone: (415) 875-5712
cnmitchell@jonesday.com
ihosseini@jonesday.com
scalderon@jonesday.com

*Pro hac vice*

*Attorneys for Plaintiffs Victor Parsons,
Shawn Jensen, Stephen Swartz, Dustin
Brislan, Sonia Rodriguez, Christina
Verduzco, Jackie Thomas, Jeremy
Smith, Robert Gamez, Maryanne
Chisholm, Desiree Licci,  Joseph
Hefner, Joshua Polson, and Charlotte
Wells, on behalf of themselves and all
others similarly situated*

- 18 -

**ARIZONA CENTER FOR DISABILITY LAW**

By  /s/ Daniel P. Struck (with authority)
Jennifer Alewelt (SBA 027366)
Ruth Szanto (SBA 029073)
5025 East Washington St. Suite 202
Phoenix, AZ  85034
Telephone (602) 274-6287
jalewelt@azdisabilitylaw.org
rszanto@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**STRUCK WIENEKE & LOVE, P.L.C.**

By  /s/ Daniel P. Struck
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone (480) 420-1600
dstruck@swlfirm.com
kwieneke @swlfirm.com
tbojanowski@swlfirm.com
nacedo @swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com

**OFFICE OF THE ATTORNEY GENERAL of the STATE OF CALIFORNIA**

Thomas C. Horne
Michael E. Gottfried, Bar No. 010623
Office of the Attorney General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Michael.Gottfried@azag.gov

*Attorneys for Defendants Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities*

SFI-737127v1

JOINT PROPOSED DISCOVERY PLAN
2:12-cv-00601-NVW (MEA)