Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Assistant Attorney General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Courtney R. Cloman, Bar No. 023155
Ashlee B. Fletcher, Bar No. 028874
STRUCK WIENEKE, & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | NO. 2:12-cv-00601-NVW **DEFENDANTS' MOTION TO DISMISS** |
| Plaintiffs, | |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

Pursuant to Rule 12, Fed.R.Civ.P., Defendants move to dismiss the majority of Plaintiffs' claims for failure to state a claim and failure to exhaust administrative remedies.  Moreover, all of the claims pertaining to health care, medical care, dental care, and mental health care should be dismissed because they are moot.  Alternatively, Defendants request this Court to stay proceedings on the medical claims for a period of six-to-nine months.  This Motion is supported by the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      FACTUAL BACKGROUND**

Plaintiffs are fourteen inmates in the custody of the Arizona Department of Corrections ("ADC") and confined in an Arizona State Prison Complex ("ASPC").[1]  Their Complaint lists five claims for relief: inadequate health care (Count 1), inadequate medical care (Count 2), inadequate dental care (Count 3), inadequate mental health care (Count 4), and cruel and unusual conditions of confinement (Count 5).  (Dkt. # 1, ¶¶ 140–149.)  That much is readily ascertainable.  But that is it.  Each claim is prefaced with the phrase, "By their policies and practices described herein …"  Those alleged policies and practices are scattered across 76 paragraphs.  (*Id*., ¶¶ 26–100.)  These paragraphs make both general and specific allegations, some paragraphs refer to incidents involving a named Plaintiff, some paragraphs refer to incidents involving unidentified inmates, and other paragraphs do not cite to any specific incident; it only generally accuses Defendants of implementing an improper policy or practice.  At the end, Plaintiffs request declaratory and injunctive relief in the form of modified policies and practices.  They also seek to certify this lawsuit as a class action on behalf of several subclasses of inmates.  The case has not been certified, nor have Plaintiffs moved to certify the Complaint.

Construed liberally, their Complaint arguably raises the following claims (Plaintiffs names added in **bold** where specifically alleged):

---

[1] Also named as a Plaintiff is the Arizona Center for Disability Law.

<u>Inadequate Health Care (¶ 26)</u>

1.   Delays in providing access to health care. (¶ 27)

    a. Barriers to request medical treatment (no HNR forms, forms not provided or discouraged by staff, given photocopies of forms, staff reject forms or do not forward to medical). (¶ 27)

    b. Staff prohibit prisoners from assisting others in completing forms. (¶ 28) - **Smith**

    c. Forms not processed by medical in a timely manner. (¶ 29)

    d. Prisoners told they are on a waiting list ("be patient") even for emergencies. (¶¶ 18, 30-32) - **Hefner**, **Gamez**, **Swartz**, **Licci**, **Verduzco**, **Polson**

    e. Ineffective tracking and scheduling system for appointments. (¶ 33)

    f. Clinicians make decisions without examining prisoners. (¶¶ 34-35) - **Polson**, **Hefner**

    g. Unqualified medical staff perform medical procedures. (¶¶ 7, 19, 36) - **Jensen**, **Wells**

2.   Untimely emergency treatment. (¶ 37)

    a. Inadequate number of staff to respond to emergencies. (¶ 38)

    b. Inadequate emergency training for security and medical staff. (¶¶ 39-42) - **Swartz**

    c. Configuration of living units not conducive to responding to emergencies. (¶ 43)

3.   Failing to provide medication and medical devices. (¶ 44)

    a. Discontinue medication upon transfer between facilities. (¶ 44) - **Swartz**

    b. Do not provide full course of medication. (¶¶ 6, 45) - **Parsons**

    c. Do not deliver medication. (¶¶ 7, 10, 46) - **Gamez**, **Rodriquez**, **Jensen**

    d. Given expired or incorrect doses of medication. (¶¶ 13, 47) – **Hefner**, **Smith**

    e. Provide only formulary or approved medication. (¶¶ 48-49) – **Brislan**, **Parsons**, **Gamez**, **Swartz**

    f. Do not provide medically necessary devices. (¶ 50) - **Jensen**

4.   Employ insufficient number of medical staff. (¶¶ 51-57)

<u>Inadequate Medical Care (¶ 58)</u>

5.   Fail to manage or treat chronic illnesses. (¶ 59)

6.   Do not provide necessary medical diets. (¶ 60) - **Hefner**

7.   Do not enforce 'no smoking' laws in buildings. (¶ 61) - **Gamez**, **Thomas**

8.   Do not mitigate risk of infectious diseases (fail to sanitize facilities). (¶ 62)

9.   Do not provide timely access to outside medical specialists. (¶¶ 8, 15, 17, 18, 19, 63-66) – **Swartz**, **Chisolm**, **Polson**, **Wells**, **Hefner**

10.  Do not order or approve outside diagnostic testing. (¶¶ 7, 14, 67-68) - **Jensen**, **Licci**, **Hefner**, **Gamez**

11.  Fail to continue treatment prescribed by outside specialists. (¶ 69)

3

Inadequate Dental Care (¶ 70)

12. Delays in dental treatment. (¶¶ 18, 71) - **Polson**
13. Staff resort to tooth extraction over less-intrusive alternatives. (¶¶ 8, 15, 72) - **Swartz, Wells, Chisholm**
14. Only given temporary, not permanent, fillings. (¶¶ 6, 73) - **Parsons**

Inadequate Mental Health Care (¶ 74)

15. Insufficient interaction and evaluation of mental health patients. (¶¶ 6, 9, 12, 75-76) - **Gamez, Brislan, Thomas, Parsons**
16. Do not sufficiently manage psychotropic medication. (¶¶ 8, 9, 12, 13, 15, 18, 77-80) - **Parsons, Polson, Gamez, Rodriguez, Brislan, Swartz, Smith, Verduzco, Thomas, Chisholm**
17. Do not provide sufficient inpatient care to "severely mentally ill" prisoners. (¶¶ 81) - **Brislan, Rodriguez, Verduzco**
18. Suicide watch facilities offer no meaningful treatment. (¶¶ 8, 11, 82-83) - **Swartz, Thomas, Verduzco**

Conditions of Confinement/Retaliation (Suicide Watch Cells) (¶ 84)

19. Filthy cells and walls smeared with feces/blood. (¶ 84)
20. Staff lack professionalism and compassion (¶ 84) - **Swartz**
21. Cold temperatures with no warm clothing or blankets. (¶ 85) - **Rodriquez, Verduzco**
22. Deprived mattresses. (¶ 85) - **Brislan**
23. Given only two cold meals a day.  (¶ 86)
24. Cannot go outside. (¶ 86) - **Verduzco**
25. Cannot brush their teeth or take a shower. (¶ 86) - **Verduzco**
26. Woken up every 10-30 minutes. (¶ 86) - **Verduzco**
27. 24-hour lighting.  (¶ 86) - **Verduzco**
28. Subjected to staff harassment, insults, taunts, and unnecessary use of pepper spray. (¶ 87) - **Verduzco, Rodriguez**
29. Staff promote self-injurious behavior. (¶ 88) - **Brislan, Swartz**
30. Use suicide watch cells to punish prisoners for disciplinary infractions. (¶ 89)

Conditions of Confinement (Isolation Cells) (¶¶ 90-91)

31. Can only leave their cells three times per week to shower and two hours per week for "exercise" in the "rec pen." (¶ 92)
32. No outdoor recreation for prolonged periods of time. (¶¶ 11, 92) - **Gamez, Verduzco**
33. Cells designed to minimize human contact (solid steel door, no windows).  (¶ 93)
34. 24-hour lighting. (¶ 93) – **Thomas**
35. Limited property (no radio or television). (¶ 93)
36. Extreme Isolation. (¶¶ 10, 11, 12, 13, 18, 94, 96, 97, 98, 99, 100) - **Gamez, Thomas, Smith, Swartz, Brislan, Polson, Rodriguez, Verduzco**
37. Denied adequate nutrition (only 2 meals per day). (¶ 95) - **Thomas, Smith**
38. Custodial Harassment (¶ 15) - **Chisholm**

4

## II.      FAILURE TO STATE A CLAIM

Claims **1(a), 1(b), 1(c), 1(e), 2(a), 2(c), 4, 5, 8, 11, 19, 23, 30, 31, 33,** and **35** do not allege that any of the *Plaintiffs* were subjected to or otherwise suffered any harm from the stated allegation.[2]  For example, none of the Plaintiffs were allegedly harmed in an emergency situation as a result of the configuration of the living units (Claim2(c)). And nobody alleges that they were placed in a suicide watch cell as punishment (Claim 20).  These are general allegations made on behalf of other, unidentified inmates.

Plaintiffs do not have standing to assert claims on behalf of other inmates who are not parties to this lawsuit.  "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (standing requires a showing that the plaintiff has suffered an "injury in fact" and that there is a "causal connection" between that injury and the complained-of conduct). "[A] named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share." *Allee v. Medrano*, 416 U.S. 802, 828-29 (1974).

This is particularly true in the context of claims made by one inmate regarding conditions of confinement that impact other inmates.  A plaintiff-inmate cannot simply make general allegations about jail conditions; he only has standing to bring the claim if he alleges specific facts that connect those conditions to his own experiences and further alleges that he has personally suffered a resulting injury.  *See Swoboda v. Dubach*,

---

[2] Claim 1(b) alleges that staff "prohibit *prisoners* from assisting fellow inmates in completing HNRs." (Dkt. # 1, ¶ 28, emphasis added.) In that same paragraph, Plaintiff Smith alleges that he "asked *officers* to assist him in completing the HNRs, but the officers stated they were prohibited by ADC policy from helping him." (*Id.*, emphasis added.) He does not allege that he was denied the assistance of another *prisoner*.

992 F.2d 286, 289–90 (10th Cir. 1993) (inmate lacked standing where his contentions about jail conditions were simply general observations or complaints on behalf of other prisoners and he stated no specific facts connecting the allegedly unconstitutional conditions with his own experiences at the jail or indicating how the conditions caused him injury); *Clagett v. Woodring*, 2011 WL 7463790, at *13 (C.D. Cal. 2011) (inmate did not have standing where his allegations regarding medical treatment were "centered around potential harm to others, as opposed to himself"); *Downing v. Greer*, 2011 WL 3739023, at *6 (W.D. Mich. 2011) (inmate did not have standing where he made "sweeping allegations about inadequate medical and dental treatment of a large group of inmates at the jail who have dental health or chronic pain problems"); *Maxwell v. Byrd*, 2010 WL 3515774, at *4 n.5 (E.D. Ark. 2010) (inmate did not have standing to pursue claims that related facts concerning medical treatment of other inmates); *Burton v. McDonald*, 2010 WL 3294387, at *2 (E.D. Cal. 2010) (inmate did not have standing where he merely raised a variety of allegations of mistreatment of inmates at prison but did not allege that he suffered actual or threatened injury from the events complained of); *Vance v. Buss*, 2010 WL 3171968, at *2 (S.D. Ind. 2010) (inmate did not have standing to assert claim regarding placement into segregation without due process where he did not allege that he was placed in segregation without due process, just that he could be); *Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1222, 1262 (D. N.M. 2010) (inmate had no standing to allege claims regarding allowing inmates with infectious and transmissible diseases to work in prison kitchen where he failed to allege that he contracted a disease while working in the kitchen or suffered injury from eating food from kitchen); *Ortiz v. Kelly*, 2009 WL 801831, at *9 (D. Nev. Mar. 25, 2009), *aff'd*, 404 F. App'x 140 (9th Cir. 2010) (holding that "[a]n allegation that defendants retaliated against other inmates does not allege an injury to plaintiff" sufficient to confer standing to bring suit); *Oliver v. Thornburgh*, 587 F.Supp. 380, 382 (E.D. Pa. 1984) (inmate did not have standing to bring claim regarding double bunking where he did not allege that he was personally subjected to overcrowding conditions); *see also Darring v. Kincheloe*, 783 F.2d 874, 877 (9th Cir.

1986) (plaintiff lacked standing where he "suffered no legally cognizable injury from the prison regulation at issue"); *Jackson v. Yates*, 2012 WL 14018, at *5 (E.D. Cal. 2012) (inmates do not have standing to request system wide injunctive relief for other inmates).

Thus, Plaintiffs do not have standing to bring the aforementioned claims.

## III.   FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

The remainder of Plaintiffs' claims do allege specific facts/harm attributable to a specific Plaintiff.  Therefore, *those* Plaintiffs have standing to proceed on *those* claims in which *they* are named.  However, most of these claims were *not* properly exhausted by the named Plaintiff prior to bringing this lawsuit.

Those unexhausted claims are: **1(d)** – by Gamez, Polson, Swartz, Licci, Verduzco; **1(f)** – by Hefner, Polson; **1(g)** – by Jensen, Wells;  **2(b) & 3(a)** – by Swartz; **3(b)** – by Parsons; **3(c)** – by Gamez, Rodriguez, Jensen; **3(d)** – by Hefner, Smith; **3(e)** – by Brislan, Gamez, Parsons, Swartz; **3(f)** – by Jensen; **6** – by Hefner; **7** – by Gamez, Thomas; **9** – by Wells, Chisolm, Hefner; **10**- by Licci, Jensen; **12** – by Polson; **13** – by Swartz, Wells, Chisholm; **14** – by Parsons; **15** – by Thomas, Parsons, Gamez; **16** – by Gamez, Parsons, Polson, Brislan, Smith, Swartz, Verduzco, Rodriguez, Chisholm, Thomas; **17** – by Rodriguez, Verduzco; **18** – by Swartz, Thomas, Verduzco; **20** – by Swartz; **21** – by Rodriguez, Verduzco; **22** – by Brislan; **24, 25, 26, & 27** – by Verduzco; **28** – by Verduzco, Rodriguez; **29** – by Brislan, Swartz; **32** – by Verduzco; **34** – by Thomas; **36** – by Thomas, Smith, Swartz, Gamez, Polson, Rodriguez, Verduzco; **37** – by Smith, Thomas; and **38** – by Chisholm.  (Ex. A, ¶¶ 13(a), (b), (c), (e), (g), (h), (i), (j), (l), (m), (o), (p), (q), (r), (t), (u), (v), (x) &14; Ex. B, ¶¶ 13(a), (b), (c), (d), (e), (f), (g), (h), (j), (k) & 14.)

### A.   The PLRA

Under the Prisoner Litigation Reform Act ("PLRA"), a prisoner must properly exhaust any available administrative remedies before filing a federal lawsuit. 42 U.S.C. § 1997e(a).  The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).   Proper exhaustion requires a prisoner to complete the detention facility's "administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 90–91 (2006).  Exhaustion is mandatory under the PLRA, and unexhausted claims are barred.  *Jones v. Bock*, 549 U.S. 199, 211 (2007).

### B.    ADC's Grievance Process

The ADC's Department Order #802 ("DO 802"), Inmate Grievance System, governs ADC inmate grievances and sets forth the procedures that inmates must follow to complete the prison administrative grievance process.  (Ex. A, ¶ 5.)  Any ADC inmate, regardless of disciplinary status, housing location, or classification, may use the Inmate Grievance System. (*Id.*, ¶ 6.) This includes inmates in a complex detention unit, segregation unit, or suicide watch cell; all inmates  have access to the Inmate Grievance System. (*Id.*) The ADC educates inmates about the Inmate Grievance System by providing both written and oral explanations of the Inmate Grievance Procedure at reception centers and again as part of the orientation process each time an inmate is transferred to another facility.   (*Id.*, ¶ 7.)  A copy of the Inmate Grievance System policy is also kept at each prison facility's inmate resource library and is available for inmates to use.  (*Id.*) Staff are required to ensure that there are no barriers for inmate access to grievance forms and that inmates have the ability to file grievances and appeals in a timely and confidential manner.  (*Id.*, ¶ 6.)

Inmates may use the Inmate Grievance System to grieve issues related to any aspect of institutional life or condition of confinement that directly and personally affects the inmate grievant.  (*Id.*, ¶ 8.)  The path they must follow depends on whether their grievance relates to a medical issue (including health care, medical care, dental care, and mental health care) or a non-medical issue (e.g., conditions of confinement). (Ex. A, ¶ 9; Ex. B, ¶ 9.)

The <u>Medical Grievance Process</u> is a three-step process.  (Ex. A, ¶ 9.)  The first step is the Informal Complaint Resolution.  (*Id*., ¶ 9(a).)  An inmate must attempt to informally resolve a medical complaint by submitting an Inmate Letter to the inmate's counselor/assigned CO III within ten work days from the date of the action that caused the inmate's complaint. (*Id*.) A medical staff member investigates the issue and provides a response to the inmate.  (*Id*.) If the inmate is not satisfied with that response, he must initiate a Formal Grievance by submitting to the Grievance Coordinator an Inmate Grievance within five work days from receipt of the Inmate Letter Response.  (*Id*., ¶ 9(b).) The Inmate Grievance is forwarded to the Facility Health Administrator ("FHA") for review, investigation, and a response. (*Id*.) If an inmate is unsatisfied with the FHA's Inmate Grievance Response, the inmate must initiate a "Director's-Level Appeal" to the Director of the ADC by submitting to the Unit Grievance Coordinator an Inmate Grievance Appeal within five work days from receipt of the Inmate Grievance Response. (*Id*., 9(c).) The Inmate Grievance Appeal is forwarded to the Director for a decision after an investigation by the Medical Grievance Appeal Investigator and review by the Health Services Director.  (*Id*.) The Director's Decision is final, and constitutes exhaustion of all remedies for medical grievances within the ADC's Inmate Grievance System.  (*Id*., ¶ 10.)

The <u>Non-Medical Grievance Process</u> is a five-step process.  (Ex. B, ¶ 9.) The inmate must first try to resolve his issue through informal means, such as discussion with staff in the area most responsible for the complaint.  (*Id*.)  If the inmate is unable to resolve the issue through informal means, within ten working days after he becomes aware of the specific issue, he must submit an Informal Complaint or an Inmate Letter to his assigned CO III.  (*Id*.)  If the inmate is not satisfied with the Response of the CO III, within five working days from receipt of the Response he must submit a Formal Grievance to which the Deputy Warden responds.  (*Id*.)  If the inmate is not satisfied with the Deputy Warden's Response, within five working days from receipt of the Response he must submit an Inmate Grievance Appeal to the Warden. (*Id*.)  If the inmate is not satisfied with the Warden's Response to the Grievance Appeal, he must Appeal to the

9

ADC Director within five working days from the receipt of the Response. (*Id.*) The Director's Decision is final, and constitutes exhaustion of all remedies for non-medical grievances within the ADC's Inmate Grievance System. (*Id.*, ¶ 10.)

### C.    Exhausted Claims

All medical and non-medical grievances that are submitted to the Director (the final stage) are recorded and maintained in an electronic database at ADC's Central Office. (Ex. A, ¶ 12; Ex. B, ¶ 12.)   According to those records, of the claims in the Complaint that *are* raised by specific Plaintiffs, *only* the following were properly exhausted by those Plaintiffs (i.e., raised at each available level of the Inmate Grievance System, and also initiated within two years of the filing of the Complaint and concluded before the Complaint was filed):[3]

> **Claim 1(d):**  Prisoners told they are on a waiting list even for emergencies.
>
> > **Hefner**: Submitted multiple HNRs in spring of 2011 for pain in ribs and torso, but was not seen by a doctor for three months. (¶ 32) (Ex. A, ¶¶ 13(s) & 14)
>
> **Claim 9:**  Do not provide timely access to outside medical specialists.
>
> > **Swartz:** Referrals for ophthalmologist after suffering eye injury in February 2010 were not approved until January 2011. (¶¶ 8, 65) (Ex. A, ¶¶ 13(d) & 14)
> > **Polson**: Delay in receiving outside specialist referrals for chronic ear infections and hearing loss in right ear.  (¶ 18) (Ex. A, ¶¶ 13(w) & 14)
>
> **Claim 10:**  Do not order or approve outside diagnostic testing.
>
> > **Hefner:** Physician request for CT scan of ribs submitted in March 2011 not given until October 2011. (¶ 68) (Ex. A, ¶¶ 13(s) & 14)
> > **Gamez**: No follow-up tests conducted on positive initial screening for frontal lobe dysfunction. (¶ 14) (Ex. A, ¶¶ 13(n) & 14)

---

[3] There is a two-year statute of limitations for Plaintiffs' constitutional claims. *See Normandeau v. City of Phoenix*, 516 F.Supp.2d 1054, 1065 (D. Ariz. 2005). In addition, the PLRA requires exhaustion before the filing of the complaint. *See McKinney v. Carey*, 311 F.3d 1198, 1199–1200 (9th Cir. 2002).

**Claim 15**:  Insufficient interaction and evaluation of mental health patients.

> **Brislan**: Did not see a psychiatrist for stretches of five to seven months while in suicide watch. (¶ 75) (Ex. A, ¶¶ 13(f) & 14)

**Claim 17:** Do not provide sufficient inpatient care to "severely mentally ill" prisoners. (Ex. A, ¶¶ 13(f) & 14)

> **Brislan**: Have not received inpatient mental health care. (¶ 81) (Ex. A, ¶¶ 13(f) & 14)

**Claim 32:**  No outdoor recreation for prolonged periods of time.

> **Gamez:** In isolation cells, not allowed to go to recreation if not clean shaven, but are deprived shaving supplies and thus denied exercise (¶ 92) (Ex. B, ¶¶ 13(i) & 14)

**Claim 36:**  Extreme Isolation.

> **Brislan**: Have not received inpatient mental health care. (¶ 99) (Ex. A, ¶¶ 13(f) & 14)

The remaining claims must be dismissed for failure to exhaust administrative remedies. *See Jones*, 549 U.S. at 211.

## IV.   THE MEDICAL CLAIMS ARE MOOT

Moot claims must be dismissed for lack of jurisdiction.  *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003).  "A claim is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. The basic question is whether there exists a present controversy as to which effective relief can be granted." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007) (quoting *Vill. of Gambell v. Babbitt,* 999 F.2d 403, 406 (9th Cir. 1993)).

Plaintiffs challenge what they allege to be ADC policies and bring suit against ADC Director Charles Ryan and Interim Division Director of Health Services Richard Pratt (in their official capacities).  They seek an injunction enjoining ADC staff from continuing the alleged policies and requiring ADC to implement a "plan" that alters its policies with respect to staffing, access, screening, emergency responses, medication and supplies, chronic care, environmental conditions, mental health treatment, quality

assurance, and isolation.  (Dkt. # 1 at 73–74.)

All of Plaintiffs' medical claims are now moot.  Effective July 1, 2012, health care services (including medical, dental, and mental health care) at all ADC facilities are now provided by Wexford Health Services, a private entity, pursuant to a Contract entered into on April 2, 2012.  (Ex. C.)  The three-year Contract (renewable for two, one-year periods) was consummated pursuant to a government mandate: in April 2011, the Governor signed a Bill (H.B. 2154) which required the privatization of correctional health services provided in state-owned and operated prisons.  *See* Ariz. Sess. Laws 2011, Ch. 278, § 1.  The Contract also specifically addresses each of the issues in Plaintiffs' proposed "plan":

> **Staffing** shall be sufficient to provide routine, urgent, emergent, specialty care: § 2.17.3.2 (requires 24/7 medical staffing at each complex); § 2.17.2.2 (requires that inmates receive emergency care onsite 24/7); § 2.8.6.2 (sets minimum standards for access to specialty, urgent, and emergent care); § 2.12.8 (pharmacy staffing and hours); § 2.11.3 (dental staffing and hours); § 2.11.2 (sick call staffing and hours); § 2.10.9 (nursing staffing and hours).

> **Access** to health care should be timely: § 2.13.1 (requires compliance with all DO's, HSTM, NCCHC standards, and licensing requirements); § 2.11.6 (dental); § 2.13.3 (mental health); § 2.7.1 (provides that all inmates shall have unimpeded access to health care including timely referral); § 2.7.2.6 (requires inmates to be able to sign-up for sick call 7 days a week; sick call forms must be triaged at least once daily); § 2.7.2.5 (requires compliance w/ NCCHC Standard P-E-09 Segregated Inmates); § 2.8.6.2 (sets minimum standards for routine appointment for specialty care, urgent appointments, and emergent care).

> **Screening** for medic al, dental, and mental health conditions that need treatment:  § 2.9.1 (assessments of each inmate upon incarceration & provision of meds); §§ 2.9.2 & 2.9.3 (required testing); § 2.7.2.3 (transfer screening on arrival & departure for meds, emergency & urgent medical needs, specialty follow-up, and placement in chronic illness clinic status if required); § 2.20.2.1 (required timeliness of intake screening); § 2.10.10 (for radiology services); § 2.10.11 (for laboratory services); § 2.9.4 (requires development of treatment plans for medical, dental, and mental health care based on intake screening and assessments).

**Emergency Responses** to health care emergencies: § 2.8.6.2.3 (requires immediate onsite response for emergent care needs with appropriate disposition); § 2.10.21 (onsite emergency services); § 2.10.19 (offsite emergency services); § 2.10.15 (hospitalization of inmates requiring care beyond the resources of ADC); § 2.10.16 (inpatient infirmary care); § 2.11.3-2.11.5 (dental emergency and urgent care).

**Medication and Supplies** timely prescribed and distributed: § 2.12.8 (pharmacy staffing/hours); § 2.12.23.4 (timeliness of dispensing meds); § 2.12.12 (web-based prescription inquiry system); § 2.9.6.2 (requires transfer of medications).

**Chronic Care** treatment: § 2.7.2.3 (requires screening of inmates on arrival for meds and specialty follow-up care, including placement in a chronic illness clinic status); § 2.10.6.5 (requires maintenance of registry for tracking inmates with chronic illnesses).

**Environmental Conditions** that do not spread diseases or infections: § 2.8.15 (requires implementation of infection control program in accordance with NCCHC standards, CDC guidelines, and OSHA regulations); § 2.10.5.5.7 (infectious diseases); § 2.10.12 (bio hazardous waste disposal); § 2.10.24.2 (communicable disease education plan).

**Mental Health Treatment** for serious mental illness: § 2.13.3 (mental health staffing/hours); § 2.7.2.5.1 (requires at least weekly monitoring of extreme isolation inmates by mental health professionals); § 2.9.5 for assessment of mental health on intake); § 2.13.10.2 (for initial assessment of mental health and classification plus ongoing assessments as needed); § 2.13.11 (for treatment programs and therapy); § 2.13.12 (for offsite mental health treatment).

**Quality Assurance** of health care staff, services, procedures, and activities: § 2.12.5 (pharmacy review); § 2.12.16 (pharmacy inventory review); § 2.8.14 (peer review of primary care clinicians); § 2.8.15.1.1 (infection control program); § 2.8.12 (requires establishment of Quality Improvement Committee to meet on monthly basis).

**Isolation** cell conditions: § 2.7.2.5.1 (requires daily monitoring by medical staff of extreme isolation inmates); § 2.7.2.5.2 (requires monitoring 3 times per week of limited contact inmates by medical or mental health pros).

Because ADC is no longer providing medical services for inmates at ADC, there is no longer a present controversy as to which effective relief can be granted in this lawsuit. Therefore, Plaintiffs' medical claims should be dismissed as moot.

1  **V.      REQUEST FOR STAY**

2           If this Court determines that the medical claims are not moot at this point in

3  time, Defendants request a six-to-nine month stay in the proceedings with respect to the

4  medical claims.  This will allow Wexford to perform under the contract and demonstrate

5  that Plaintiffs' claims are no longer valid.  Since Plaintiffs are seeking only prospective

6  relief, a stay allowing Wexford to perform could potentially moot their medical claims.

7  This will preserve judicial resources and prevent the parties from having to engage in

8  costly litigation since Plaintiffs may ultimately get what they are asking for.  Wexford's

9  performance measures will be a matter of public record.  Plaintiffs will not suffer any

10  prejudice from this stay, and may continue pursuing their non-medical claims.

11                                 **CONCLUSION**

12           For all these reasons, the aforementioned claims should be dismissed.

13  Alternatively, Defendants request a six-to-nine month stay of the proceedings on

14  Plaintiffs' medical claims.

15           DATED this 19th day of July, 2012

16                                 STRUCK WIENEKE, & LOVE, P.L.C.

17

18                                 By /s/*Nicholas D. Acedo*
                                        Daniel P. Struck
19                                      Kathleen L. Wieneke
                                        Timothy J. Bojanowski
20                                      Nicholas D. Acedo
                                        Courtney R. Cloman
21                                      Ashlee B. Fletcher
                                        STRUCK WIENEKE, & LOVE, P.L.C.
22                                      3100 West Ray Road, Suite 300
                                        Chandler, Arizona  85226
23
                                        Arizona Attorney General Thomas C. Horne
24                                      Office of the Attorney General
                                        Michael E. Gottfried
25                                      Assistant Attorney General
                                        1275 W. Washington Street
26                                      Phoenix, Arizona 85007-2926

27                                      *Attorneys for Defendants*

28

                                        14

**CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alison Hardy:             ahardy@prisonlaw.com

Amy Fettig:               afettig@npp-aclu.org

Caroline N. Mitchell:     cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

Corene T. Kendrick:       ckendrick@prisonlaw.com; edegraff@prisonlaw.com

Daniel Clayton Barr:      DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

Daniel Joseph Pochoda:    dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org

David Cyrus Fathi:        dfathi@npp-aclu.org; astamm@aclu.org; mtartaglia@npp-aclu.org

Donald Specter:           dspecter@prisonlaw.com

Ilham A. Hosseini:        ihosseini@jonesday.com; areyes@jonesday.com

James Anthony Ahlers:     jahlers@perkinscoie.com; docketphx@perkinscoie.com; jroe@perkinscoie.com

James Duff Lyall:         jlyall@acluaz.org; gtorres@acluaz.org

Jennifer Ann Alewelt:     jalewelt@azdisabilitylaw.org; emyers@azdisabilitylaw.org; mlauritzen@azdisabilitylaw.org

Jill Louise Ripke:        jripke@perkinscoie.com; jgable@perkinscoie.com

John Howard Gray:         jhgray@perkinscoie.com; slawson@perkinscoie.com

Kelly Joyce Flood:        kflood@acluaz.org; gtorres@acluaz.org

Kirstin T. Eidenbach:     keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; docketphx@perkinscoie.com

Matthew Benjamin de Mee:  mdumee@perkinscoie.com; cwendt@perkinscoie.com

Michael Evan Gottfried:   Michael.gottfried@azag.gov; colleen.jordan@azag.gov; lucy.rand@azag.gov

Ruth Angela Szanto:       RSzanto@azdisabilitylaw.org; RuthSzanto@gmail.com

1    Sara Norman:            snorman@prisonlaw.com

2    Sophia Calderon:        scalderson@jonesday.com

3    Thomas Dean Ryerson: tryerson@perkinscoie.com; docketphx@perkinscoie.com;
                             rboen@perkinscoie.com
4

5         I hereby certify that on this same date, I served the attached document by U.S.

6    Mail, postage prepaid, on the following, who is not a registered participant of the

7    CM/ECF System:

8         N/A

9                                          /s/Kimberly Shadoan

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   2658229.1

28