1 | Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
2 | James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3 | 3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
4 | Telephone: (602) 650-1854
Email: dpochoda@acluaz.org
5 |     kflood@acluaz.org
    jlyall@acluaz.org
6 | *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7 | *Attorneys for Plaintiffs Victor Parsons, Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriquez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriquez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-NVW (MEA) <br><br> **PRISONER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

# TABLE OF CONTENTS

**Page**

Introduction and Background ........................................................................................ 1

Argument ....................................................................................................................... 2

A. Defendants Have "Irrevocably Waived" the Affirmative Defense of Exhaustion of Administrative Remedies and Are Precluded from Asserting It ...... 2

    1. Defendants waived the exhaustion defense.................................................... 2

    2. The Court should enforce the Tolling Agreement and preclude Defendants from asserting exhaustion as a basis for dismissal..................... 3

B. Plaintiffs Have Standing To Assert Their Claims Based on the ADC's System-wide Deficiencies Creating a Significant Risk of Harm ............................. 4

    1. Plaintiffs meet the basic standing requirements for each of their claims................................................................................................................ 4

    2. Plaintiffs do not lack standing simply because they have alleged numerous examples of system-wide deficiencies within ADC..................... 5

C. Plaintiffs' Claims Are Not Moot Because Defendants Have Not Proven That the Constitutional Violations Plaintiffs Allege Have Been Cured and Cannot Be Expected to Recur ............................................................................................... 8

D. The Case Should Not Be Stayed .......................................................................... 10

Conclusion and Request For Leave To Amend............................................................ 11

# **TABLE OF AUTHORITIES**

**Page**

CASES

*Allee v. Medrano*,
    416 U.S. 802 (1974) ................................................................................................ 7

*Ancata v. Prison Health Servs., Inc.*,
    769 F.2d 700 (11th Cir. 1985) ................................................................................ 9

*Arevalo v. Bank of Am. Corp.*,
    No. C10-4959 TEH, 2011 WL 1195973 (N.D. Cal. Mar. 29, 2011) .................. 7, 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................ 2, 6

*Camico Mut. Ins. Co. v. Citizens Bank*,
    474 F.3d 989 (7th Cir. 2007) .................................................................................. 3

*Casey v. Lewis*,
    834 F. Supp. 1477 (D. Ariz. 1993) ..................................................................... 7, 9

*Clinton v. Jones*,
    520 U.S. 681 (1997) .............................................................................................. 10

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*,
    498 F.3d 1059 (9th Cir. 2007) ............................................................................... 11

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ................................................................................................ 6

*Foulk v. Charrier*,
    262 F.3d 687 (8th Cir. 2001) .................................................................................. 3

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ................................................................................................ 8

*Gillibeau v. City of Richmond*,
    417 F.2d 426 (9th Cir. 1969) .................................................................................. 8

*Gluth v. Kangas*,
    951 F.2d 1504 (9th Cir. 1991) ................................................................................ 8

*Helling v. McKinney*,
    509 U.S. 25 (1993) .............................................................................................. 5, 6

*Jewel v. Nat'l Sec. Agency*,
    673 F.3d 902 (9th Cir. 2011) .................................................................................. 5

*Jones v. Bock*,
    549 U.S. 199 (2007) ................................................................................................ 3

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Knox v. Serv. Emps. Int'l Union Local 1000*,
   132 S. Ct. 2277 (2012) .................................................................................. 9

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) .............................................................................. 10, 11

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) ............................................................... 10, 11

*Melendres v. Maricopa Cnty.*,
   No. 07-CV 02513-PHX-GMS, 2009 WL 2515618 (D. Ariz., Aug. 13, 2009) ... 10, 11

*Monaco v. Bear Stearns Cos.*,
   No. CV 09-05438 SJO, 2011 WL 4059801 (C.D. Cal., Sept. 12, 2011) ..................... 3

*Morning Star Packing Co., L.P. v. Crown Cork & Seal Co. (USA)*,
   303 F. App'x 399 (9th Cir. 2008) ................................................................. 3

*Morrison v. Hall*,
   261 F.3d 896 (9th Cir. 2001) ........................................................................ 9

*Perez v. Wis. Dep't of Corr.*,
   182 F.3d 532 (7th Cir. 1999) ........................................................................ 3

*Pickern v. Holiday Quality Foods Inc.*,
   293 F.3d 1133 (9th Cir. 2002) ...................................................................... 5

*Ray v. Kertes*,
   285 F.3d 287 (3rd Cir. 2002) ........................................................................ 3

*Ross v. Arpaio*,
   No. CV 05-4177-PHX-MHM, 2008 WL 2705562 (D. Ariz. July 10, 2008) .............. 3

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ...................................................................... 6

*Trenton v. Ariz. Dep't of Corrs.*,
   CV 04-2548-PHX-MHM (DKD), 2008 WL 169642 (D. Ariz. Jan. 14, 2008) ........... 2

*Trochuck v. Patterson Cos., Inc.*,
   ---F. Supp. 2d---, 2012 WL 407218 (S.D. Ill. Feb. 8, 2012) ....................... 5

*Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*,
   454 U.S. 464 (1982) ...................................................................................... 4

*West v. Atkins*,
   487 U.S. 42 (1988) ........................................................................................ 9

*Westmark Dev. Corp. v. City of Burien*,
   371 F. App'x 805 (9th Cir. 2010) ................................................................. 3

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Wyatt v. Terhune*,
  315 F.3d 1108 (9th Cir. 2003) .......................................................................... 2, 3, 4

**STATUTES**

42 U.S.C. § 1997e(a) ................................................................................................ 4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 15(a)(2) .......................................................................................... 12

7B Wright, Miller & Kane, *Federal Practice & Procedure* § 1798 (3d ed. 2005)........... 8

**Introduction and Background**

Prisoner Plaintiffs ("Plaintiffs") and the class they seek to represent allege facts in the Complaint (Doc. 1) detailing Defendants' systemic failure to provide prisoners in the custody of the Arizona Department of Corrections ("ADC") with constitutionally adequate health care or to provide constitutional conditions of confinement in ADC's isolation units. Based on an investigation that included a review of numerous ADC documents and policies, thousands of pages of health care records, and correspondence with hundreds of prisoners, Plaintiffs allege in the Complaint that Defendants employ policies and practices that result in the provision of inadequate medical, dental, and mental health care (collectively "health care"), and unconstitutional conditions of confinement in isolation. Plaintiffs allege that these policies and practices have caused them serious harm and create a significant risk of harm to Plaintiffs and others similarly situated; that Defendants are aware of this significant risk; and that Defendants, by their failure to take reasonable actions, have demonstrated deliberate indifference to this risk.

Because Defendants could not reasonably argue that Plaintiffs failed to allege sufficient facts to state a claim, Defendants assert instead that Plaintiffs' Complaint (1) is barred by the exhaustion requirements of the Prison Litigation Reform Act ("PLRA"); (2) fails to state a claim because Plaintiffs lack standing to assert claims on behalf of other prisoners, and (3) is moot or alternatively should be stayed because health care services were privatized. These arguments are unavailing. First, Defendants ignore their "irrevocabl[e] waive[r]" of the exhaustion affirmative defense, which defeats their contention that the PLRA bars Plaintiffs' claims. Second, Defendants do not contest Plaintiffs' standing to assert their own claims. Plaintiffs allege that they face an unconstitutional risk of harm caused by Defendants' systemic deliberate indifference in providing health care and conditions of confinement. Nothing more is required at the pleading stage. Finally, the duty to provide constitutionally adequate care is non-delegable, and Defendants cannot moot Plaintiffs' constitutional claims simply by hiring a private company to provide health care services. Defendants' Motion should be denied.

**Argument**

Plaintiffs have pled sufficient facts to give fair notice of their claims and the grounds upon which they rest. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Defendants conspicuously do not argue that Plaintiffs' factual allegations are insufficient under *Twombly*, and instead concoct exhaustion, standing, and mootness arguments. Each of these arguments lacks merit.

**A.   Defendants Have "Irrevocably Waived" the Affirmative Defense of Exhaustion of Administrative Remedies and Are Precluded from Asserting It.**

**1.   Defendants waived the exhaustion defense.**

Defendants assert (at 10-11) that dismissal is warranted for a subset of Plaintiffs' allegations due to Plaintiffs' failure to exhaust administrative remedies. Defendants' argument is meritless. They explicitly waived this affirmative defense in an arms-length tolling agreement. On November 16, 2011, Defendant Ryan, then represented by ADC General Counsel Karyn Klausner, agreed on "behalf of the [ADC] and all of its agents" to "irrevocably waive and not assert in any civil lawsuit brought by plaintiffs' counsel on behalf of prisoners in the custody of the ADOC any defense based on allegations that plaintiffs failed to exhaust administrative remedies." [Declaration of Donald Specter in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Specter Dec."), Ex. 1 ¶ 3(c)][1]  Defendant Ryan, as the director of the department responsible for managing prisoners' administrative remedies, expressly represented that he had the authority to enter into this binding agreement on behalf of the "ADOC and all of its agents." [*Id.* ¶ 3(g)].

---

[1] If the Court considers Defendants' evidence in support of their argument that Plaintiffs did not exhaust administrative remedies (Doc. 50, Exs. A-B), Plaintiffs request that the Court also consider their exhibits submitted with this Response. *See Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003) ("In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact."); *Trenton v. Ariz. Dep't of Corrs.*, CV 04-2548-PHX-MHM (DKD), 2008 WL 169642, at *4 (D. Ariz. Jan. 14, 2008) (evidence established that defendants had waived exhaustion defense).

**2. The Court should enforce the Tolling Agreement and preclude Defendants from asserting exhaustion as a basis for dismissal.**

Under the PLRA, failure to exhaust is an *affirmative defense* and thus is neither a jurisdictional prerequisite nor a pleading requirement. *Jones v. Bock*, 549 U.S. 199, 212, 214 (2007) (no requirement to plead exhaustion of administrative remedies); *Wyatt*, 315 F.3d at 1119 (exhaustion not jurisdictional). Because exhaustion is an affirmative defense, the argument is waivable. *See Ross v. Arpaio*, No. CV 05-4177-PHX-MHM, 2008 WL 2705562, at *4 (D. Ariz. July 10, 2008) (citing *Handberry v. Thompson*, 436 F.3d 52, 59 (2d Cir. 2006)); *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999) for the proposition that PLRA's exhaustion defense is waivable); *see also Foulk v. Charrier,* 262 F.3d 687, 697 (8th Cir. 2001) (holding that the affirmative defense of failure to exhaust is waivable by prison officials).

Defendant Ryan, with advice of counsel, irrevocably waived the defense in the Tolling Agreement and agreed not to assert any defense based on exhaustion. Courts interpret litigation-related agreements as contracts and have "'no power to make a new contract[,]'" and Defendants, therefore, are precluded by the Tolling Agreement's plain terms from asserting this affirmative defense. *See Monaco v. Bear Stearns Cos.*, No. CV 09-05438 SJO (JCx), 2011 WL 4059801, at *14 (C.D. Cal. Sept. 12, 2011) (internal citation omitted) (collecting Ninth Circuit authority holding that tolling agreements are interpreted as contracts); *see also Westmark Dev. Corp. v. City of Burien*, 371 F. App'x 805, 806 (9th Cir. 2010) (treating a tolling agreement as a contract); *Morning Star Packing Co., L.P. v. Crown Cork & Seal Co. (USA)*, 303 F. App'x 399, 401 (9th Cir. 2008) (applying principles of contract law to a tolling agreement); *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992-93 (7th Cir. 2007) (applying the "four corners" rule to a tolling agreement).

The waiver applies even though the Tolling Agreement is no longer in effect. The waiver by its plain terms was "irrevocabl[e]." [Specter Dec., Ex. 1 ¶ 3(c)] The agreement

further provides that Defendants would not assert an exhaustion defense in "any civil litigation," which by its terms includes this litigation, which was filed shortly after the parties' negotiation period ended. [*Id.*] Finally, the parties specifically agreed that "[a]ll material terms of this Agreement will survive termination of this agreement." [*Id.* ¶ 3(h)] Defendants should not be allowed to agree to waive all exhaustion defenses, let Plaintiffs rely on that waiver, and then reverse course in order to obtain an early dismissal.[2]

**B.     Plaintiffs Have Standing To Assert Their Claims Based on the ADC's System-wide Deficiencies Creating a Significant Risk of Harm.**

### 1.     Plaintiffs meet the basic standing requirements for each of their claims.

In their 74-page Complaint, Plaintiffs offer approximately 150 examples of risk of future harm to Plaintiffs caused by Defendants' systemic failure to provide minimally adequate health care or constitutional conditions of confinement. These factual allegations form the basis for Plaintiffs' five claims: (1) inadequate health care (including medical, mental health, and dental care); (2) inadequate medical care; (3) inadequate dental care; (4) inadequate mental health care; and (5) unconstitutional conditions of confinement in isolation. [Doc. 1 ¶¶ 140-149]

Defendants concede (at 7), as they must, that "Plaintiffs have standing" to raise these constitutional claims on their own behalf. For each of these claims, the Complaint identifies multiple Plaintiffs who are presently at risk of future harm from Defendants' deliberate indifference. [*Id.* ¶¶ 1, 6-19, 23-89 (deficient health care policies and practices); ¶¶ 2, 8-14, 18, 90-100) (conditions of confinement); ¶¶ 1, 23-25, 31, 39, 49, 52-55, 63, 64, 77, 78, 82, 96, 98, 100) (Defendants failed to take action after learning of these risks of harm)] This is all that is required for standing. *See Valley Forge Christian*

---

[2] In any event, the exhaustion defense does not bar Plaintiffs' claims. As Defendants admit, many of Plaintiffs' claims are exhausted. For those claims that are not exhausted, Plaintiffs' claims are not barred because Defendants' policies and procedures have rendered administrative remedies not "available" within the meaning of the PLRA. *See* 42 U.S.C. § 1997e(a). Any dismissal on exhaustion grounds, therefore, should be without prejudice and with leave to amend. *See Wyatt*, 315 F.3d at 1120 ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice.").

1 *Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (plaintiff must show that "he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision") (internal quotation marks omitted) (relied upon by Defendants, at 5); *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 907 (9th Cir. 2011) ("General factual allegations of injury resulting from the defendant's conduct may suffice, as we presume that general allegations embrace those specific facts that are necessary to support the claim.") (quotation marks and alterations omitted).[3]

### 2. Plaintiffs do not lack standing simply because they have alleged numerous examples of system-wide deficiencies within ADC.

Despite admitting that Plaintiffs have standing for at least some claims, Defendants contend that some of Plaintiffs' claims must be dismissed for lack of standing because Plaintiffs have not alleged that they have been injured as a result of *every alleged fact* relating to deficiencies in Defendants' health care system and isolation units—arguing, for example (at 5), that "none of the Plaintiffs were allegedly harmed in an emergency situation as a result of the configuration of the living units."

Defendants, however, confuse "allegations" with "claims for relief." A motion to dismiss looks at whether a complaint has stated a *claim* for relief, not at every *fact* that ultimately may support those claims at trial. *See Trochuck v. Patterson Cos., Inc.*, ---F. Supp. 2d---, 2012 WL 407218, at *2 (S.D. Ill. Feb. 8, 2012) ("complaints need only plead

---

[3] In a footnote (at 10 n.3), Defendants presuppose that a two-year statute of limitations controls Plaintiffs' constitutional claims. But Plaintiffs allege *current* conditions in ADC pose a substantial risk of serious harm; it is this *current* risk that violates the Eighth Amendment. *See infra* and *Helling v. McKinney*, 509 U.S. 25, 35 (1993) ("We affirm the holding . . . that McKinney states a cause of action under the Eighth Amendment by alleging that petitioners have, with deliberate indifference, exposed him to levels of [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his future health."). Since Plaintiffs "seek[] injunctive relief against an ongoing violation," they are "not barred from seeking relief either by the statute of limitations or by lack of standing." *See Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002).

1   claims (not facts)"); *cf. Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (plaintiff must
2   plead enough facts to "raise a reasonable expectation that discovery will reveal evidence"
3   proving the claim alleged); *Twombly*, 550 U.S. at 570 (complaint must allege "only
4   enough *facts* to state a *claim* to relief that is plausible on its face") (emphasis added).  Yet,
5   Defendants parse the Complaint so finely to argue (at 4) that "filthy [suicide watch] cells
6   and walls smeared with feces/blood" is a separate claim as to which plaintiffs lack
7   standing.  This is a factual allegation, not a claim for relief, and an illustration of the risk
8   of harm to Plaintiffs posed by Defendants' system-wide failure to provide constitutionally
9   adequate mental health care.[4]

10   Defendants' argument betrays a fundamental misconception of standing in an
11   Eighth Amendment case seeking injunctive relief.  The Eighth Amendment is violated
12   when prison officials, acting with deliberate indifference, expose prisoners to a
13   "substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  It is
14   this *risk* of future harm, without more, that violates the Eighth Amendment and entitles
15   prisoners to injunctive relief.  A prisoner need not wait to suffer physical injury or illness
16   to have standing—the risk itself is the "injury" for standing purposes. *See Helling*, 509
17   U.S. at 33 ("It would be odd to deny an injunction to inmates who plainly proved an
18   unsafe, life-threatening condition in their prison on the ground that nothing yet had
19   happened to them.").

20   To allege a risk of future harm, a plaintiff is not limited to alleging only harm that
21   has happened to her.  When a plaintiff seeks systemic declaratory and injunctive relief, a
22   plaintiff may prove her claim through "'repeated examples of negligent acts which

---

[4] In any event, the Complaint clearly identifies a Plaintiff who has suffered from poor sanitation in suicide watch cells. [Doc. 1 ¶ 84]  Similarly, Defendants assert (at 4) that "cells designed to minimize human contact (solid steel door, no windows)" is a separate claim.  It is not; it is a factual elaboration of Plaintiffs' claim that conditions in ADC's isolation units violate the Eighth Amendment.  In any event, the Complaint identifies by name a number of Plaintiffs who are held in isolation, and then asserts that "[m]ost or all of these prisoners are held in cells with a solid steel door and no window to the outside"—a clear assertion that Plaintiffs are personally affected by these conditions. [*See* Doc. 1 ¶¶ 90, 93]

disclose a pattern of conduct'" or by "'proving there are such systemic and gross deficiencies in staffing, facilities, equipment or procedures that the inmate population is effectively denied access to adequate medical care.'" *Casey v. Lewis*, 834 F. Supp. 1477, 1543 (D. Ariz. 1993) (quoting *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983)); *see also French v. Owens*, 777 F.2d 1250, 1254 (7th Cir. 1985) (in class actions challenging a prison's health care system, liability may be premised on a showing of "repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff or by showing systemic or gross deficiencies in staffing, facilities, equipment or procedures") (quotations marks omitted). To the extent Plaintiffs allege facts that are not tied to any particular named Plaintiff, therefore, these facts evidence Defendants' system-wide deficiencies exposing each of the named Plaintiffs (and others similarly situated) to ongoing risk and are not a basis for dismissal on standing grounds.

Defendants' authority to the contrary (at 5-6) is not controlling. Defendants rely on cases brought by pro se prisoners seeking money damages in individual actions, and most of the complaints in those actions included little or nothing in the way of specific allegations, much less specific allegations showing system-wide deficiencies creating a risk of future harm. That pro se prisoners could not base their individual damages claims solely on the experiences of others says nothing about whether these fourteen named Plaintiffs have standing to assert claims for declaratory and injunctive relief. Plaintiffs have amply demonstrated their standing to assert the five claims set forth in the Complaint. Defendants' argument to the contrary fails.[5]

Finally, the question whether Plaintiffs can seek relief for prisoners other than themselves is a question for class certification, not a motion to dismiss. *See Arevalo v.*

---

[5] Defendants' reliance on *Allee v. Medrano*, 416 U.S. 802 (1974), also is misplaced, because they misrepresent a concurring/dissenting opinion as the opinion of the Court. *Id.* at 828-29 (Burger, C.J., concurring in part and dissenting in part). The majority held that an action was not moot and plaintiffs had standing when there is the "possibility of recurrence" of defendants' "old ways." *Id.* at 810-11. *See infra* regarding mootness. In any event, the case is cited by Defendants for the proposition that named plaintiffs must have suffered an injury—which Plaintiffs clearly have alleged.

*Bank of Am. Corp.*, No. C10-4959 TEH, 2011 WL 1195973, at *4 (N.D. Cal. Mar. 29, 2011) ("'Representative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.'") (quoting *Greenwood v. Compucredit Corp.*, No. 08-04878 CW, 2010 WL 4807095, at *3 (N.D. Cal. Nov. 19, 2010)); *Gillibeau v. City of Richmond*, 417 F.2d 426, 432 (9th Cir. 1969) ("compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim"); 7B Wright, Miller & Kane, *Federal Practice & Procedure* § 1798 (3d ed. 2005) ("Compliance with Rule 23 prerequisites theoretically should not be tested by a motion to dismiss for failure to state a claim or by a summary-judgment motion.").

**C.    Plaintiffs' Claims Are Not Moot Because Defendants Have Not Proven That the Constitutional Violations Plaintiffs Allege Have Been Cured and Cannot Be Expected to Recur.**

Defendants contend (at 12) that because they have recently retained a private corporation to provide health care to ADC prisoners, Plaintiffs' health care claims are moot. This contention is frivolous under Supreme Court precedent:

> [T]he standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal punctuation and citation omitted). Defendants entirely fail to meet their burden, providing no evidence whatsoever that the constitutional violations identified in the Complaint have been cured, let alone that they cannot reasonably be expected to recur.

The mere signing of a contract falls far short of discharging Defendants' "heavy burden" under *Laidlaw*. *See Gluth v. Kangas*, 951 F.2d 1504, 1507 (9th Cir. 1991) (ADC's claim that mere promulgation of a new legal access policy mooted prisoners'

-8-

claims was "overreaching;" case was not moot where ADC "provided no *facts* to support its claim that the inmate access situation had changed at all"); *Casey*, 834 F. Supp. at 1547 (disabled prisoners' claims were not mooted by ADC's plan to make some prison units accessible, when that plan had not been fully implemented); *see also Morrison v. Hall*, 261 F.3d 896, 900 n.5 (9th Cir. 2001) (citing *Laidlaw* and noting that even if prison mail regulation had been materially changed, prisoner's claim would not be moot). A finding of mootness is particularly inappropriate where, as here, the party asserting mootness continues to defend the legality of its prior conduct. *See Knox v. Serv. Emps. Int'l Union Local 1000*, 132 S. Ct. 2277, 2287 (2012) ("since the union continues to defend the legality of the . . . fee, it is not clear why the union would necessarily refrain from collecting similar fees in the future").

Defendants assert (at 13) that the Wexford contract deprives this Court of the power to grant "effective relief." Defendants cannot avoid their burden to prove mootness, however, merely by pointing to a contract with a private party. "Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *West v. Atkins*, 487 U.S. 42, 56 (1988). Contrary to the Defendant's arguments, the duty ADC owes to the prisoners in its custody is non-delegable. *See id.*; *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985) ("Although Prison Health Services has contracted to perform an obligation owed by the county, the county itself remains liable for any constitutional deprivations caused by the policies or customs of the Health Service."). ADC's contract with Wexford does not alter or shift its non-delegable duty to provide adequate healthcare to the inmates in its custody. If the Court finds constitutional violations in the delivery of health care to *ADC prisoners*, it has the power to order *ADC* to remedy those violations.[6]

---

[6] ADC has the right to cancel the Wexford contract on ten days' notice. *See* Doc. 50, Ex. 4, at 8-9.

**D.     The Case Should Not Be Stayed.**

Citing no authority, Defendants contend (at 14) that this case should be stayed for six to nine months. A stay of this case, however, is legally unfounded, prejudicial to Plaintiffs' ability to obtain relief, and a clog in the Court's docket.

A stay is an extraordinary and disfavored departure from the ordinary course of civil litigation and carries a significant risk of prejudice. *See Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936) (a stay is a "departure from the beaten track" and "the burden of making out [its] justice and wisdom . . . [lies] heavily" on the party seeking it); *Clinton v. Jones*, 520 U.S. 681, 707-08 (1997) (noting "the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party").

A court considering a stay must consider (a) "the possible damage which may result from the granting of a stay," (b) "the hardship or inequity which a party may suffer in being required to go forward," and (c) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). None of these factors militate in favor of a stay.

Plaintiffs have credibly alleged ongoing violations of fundamental constitutional rights, resulting in a substantial risk of serious injury or death. [*See, e.g.*, Doc. 1 ¶ 66 (describing death of prisoner from untreated cancer); ¶ 82 (noting that ADC's suicide rate is more than double the national average for state prisons, and that three ADC prisoners committed suicide in a single week in January 2012)]. The potential harm from a stay is at its zenith where, as here, plaintiffs seek injunctive relief from ongoing violations of the law. *See Lockyer*, 398 F.3d at 1112 (where plaintiff "seeks injunctive relief against ongoing and future harm," there is "more than just a fair possibility" of harm from a stay) (internal quotation marks omitted); *Melendres v. Maricopa Cnty.*, No. 07-CV-02513-PHX-GMS, 2009 WL 2515618, at *2 (D. Ariz. Aug. 13, 2009) (denying stay in case

alleging racial profiling by sheriff's office, acknowledging plaintiffs' "strong interest in resolving their claims expeditiously and in vindicating any constitutional or statutory violations to which they may have been subjected," and concluding that their request for "injunctive relief against ongoing and future harm further counsels against a stay").

If there is "even a fair possibility" that the stay will harm the nonmoving party, the movant "must make out a clear case of hardship or inequity" to justify a stay. *Landis*, 299 U.S. at 255. But Defendants fail to identify *any* harm to them that would result if a stay were denied. "[B]eing required to defend a suit, without more, does not constitute a clear case of hardship or inequity[.]" *Lockyer*, 398 F.3d at 1112; *see also Melendres*, 2009 WL 2515618, at *3 ("[T]he mere litigation of a case, even a complex one, is not so burdensome as to justify staying that case. . . . If it were otherwise, a stay would be available simply upon request.").

Defendants assert in conclusory fashion (at 14) that a stay "will preserve judicial resources and prevent the parties from having to engage in costly litigation," but that claim does not withstand even casual scrutiny. Whether or not a stay is granted, Wexford's performance will need to be explored through discovery and the adequacy of that performance litigated; accordingly, a stay will not conserve judicial resources. Rather, a stay at most delays the resolution of this case as it sits on the Court's docket. In any event, speculations of judicial economy alone are insufficient to support a stay. *See Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) ("case management standing alone is not necessarily a sufficient ground to stay proceedings"); *Lockyer*, 398 F.3d at 1112 (holding a stay inappropriate where grounds other than judicial economy were found to lack merit). There is no ground for a stay here.

## Conclusion and Request for Leave to Amend

For the reasons set forth above, Plaintiffs have standing to assert the claims in their Complaint, and those claims are not moot. Defendants may not assert the defense of failure to exhaust administrative remedies, and a stay of the litigation is not warranted. Therefore, Defendants' Motion to Dismiss should be denied in its entirety.

-11-

But if the Court grants Defendants' Motion in whole or in part, Plaintiffs respectfully request leave to amend to address any deficiencies identified by the Court. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

Dated: August 6, 2012                           **PERKINS COIE LLP**

By: s/ John H. Gray
    Daniel C. Barr (Bar No. 010149)
    Jill L. Ripke (Bar No. 024837)
    James A. Ahlers (Bar No. 026660)
    Kirstin T. Eidenbach (Bar No. 027341)
    John H. Gray (Bar No. 028107)
    Thomas D. Ryerson (Bar No. 028073)
    Matthew B. du Mée (Bar No. 028468)
    2901 N. Central Avenue, Suite 2000
    Phoenix, Arizona 85012
    Telephone: (602) 351-8000
    Email:  dbarr@perkinscoie.com
             rjipke@perkinscoie.com
             jahlers@perkinscoie.com
             keidenbach@perkinscoie.com
             jhgray@perkinscoie.com
             tryerson@perkinscoie.com
             mdumee@perkinscoie.com

Daniel J. Pochoda
Kelly J. Flood
James Duff Lyall
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:  dpochoda@acluaz.org
         flood@acluaz.org
         lyall@acluaz.org

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:   dspecter@prisonlaw.com
         ahardy@prisonlaw.com
         snorman@prisonlaw.com
         ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:   dfathi@npp-aclu.org
         afettig@npp-aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Ilham Hosseini (Cal. 256274)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email:  cnmitchell@jonesday.com
        dkiernan@jonesday.com
        ihosseini@jonesday.com
        scalderon@jonesday.com
        srauh@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriquez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

# **CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2012, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Assistant Arizona Attorney General
Michael.Gottfried@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

*Attorneys for Defendants*


Jennifer Alewelt
Asim Varma
jalewelt@azdisabilitylaw.org
avarma@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*


                                        s/ Stephanie Lawson

78204-0001/LEGAL24303900.2