**EXHIBIT 1**

1    Arizona Attorney General Thomas C. Horne
     Office of the Attorney General
2    Michael E. Gottfried, Bar No. 010623
     Assistant Attorney General
3    1275 W. Washington Street
     Phoenix, Arizona 85007-2926
4    Telephone: (602) 542-4951
     Fax: (602) 542-7670
5    Michael.Gottfried@azag.gov

6    Daniel P. Struck, Bar No. 012377
     Kathleen L. Wieneke, Bar No. 011139
7    Timothy J. Bojanowski, Bar No. 22126
     Nicholas D. Acedo, Bar No. 021644
8    Courtney R. Cloman, Bar No. 023155
     Ashlee B. Fletcher, Bar No. 028874
9    STRUCK WIENEKE, & LOVE, P.L.C.
     3100 West Ray Road, Suite 300
10   Chandler, Arizona  85226
     Telephone:  (480) 420-1600
11   Fax:  (480) 420-1696
     dstruck@swlfirm.com
12   kwieneke@swlfirm.com
     tbojanowski@swlfirm.com
13   nacedo@swlfirm.com
     ccloman@swlfirm.com
14   afletcher@swlfirm.com

15   *Attorneys for Defendants*

16              **UNITED STATES DISTRICT COURT**

17                **DISTRICT OF ARIZONA**

18   Victor Parsons; Shawn Jensen; Stephen          NO. 2:12-cv-00601-NVW
     Swartz; Dustin Brislan; Sonia Rodriguez;
19   Christina Verduzco; Jackie Thomas; Jeremy      **DECLARATION OF KARYN**
     Smith; Robert Gamez; Maryanne Chisholm;        **KLAUSNER**
20   Desiree Licci; Joseph Hefner; Joshua Polson;
     and Charlotte Wells, on behalf of themselves
21   and all others similarly situated; and Arizona
     Center for Disability Law,
22
23                                    Plaintiffs,

24                  v.

25   Charles Ryan, Director, Arizona Department
     of Corrections; and Richard Pratt, Interim
26   Division Director, Division of Health Services,
     Arizona Department of Corrections, in their
27   official capacities,

28                                    Defendants.

1       I, **KARYN KLAUSNER**, declare under penalty of perjury that the

2   following information is true to the best of my information, knowledge, and belief:

3       1.    I was formerly general counsel for the Director of the Department of

4   Corrections ("Director") from March 30, 2009 until May 1, 2012. I have personal

5   knowledge of, and am competent to testify to, the matters set forth in this Declaration.

6       2.    In my capacity as general counsel, I acted solely as in-house counsel

7   for, and provided legal advice to, the Director.

8       3.    On or about October 12, 2011, I received a letter from Mr. Donald

9   Specter, the Director of the Prison Law Office. That letter lodged several serious

10  allegations of deficient health care at ADC, and recounted alleged injuries and

11  deteriorating health conditions of dozens of unidentified inmates in ADC custody.  The

12  letter stated that Mr. Specter was prepared to file a lawsuit, but also indicated that he was

13  open to negotiate a stipulated injunction so long as ADC entered into a tolling agreement.

14      4.    I contacted Mr. Specter to discuss the issues raised in his October 12,

15  2011 letter, and continued a dialogue with him by telephone, email, and letter.

16      5.    Attached as Attachment 1 is a true and correct copy of email

17  correspondence between myself and Mr. Specter regarding the tolling agreement.

18      6.    Attached as Attachment 2 is a true and correct copy of a letter dated

19  December 6, 2011, which I authored and sent to Mr. Specter.

20      7.    Attached as Attachment 3 is a true and correct copy of a letter dated

21  February 17, 2012, which I authored and sent to Mr. Specter.

22      8.    On or about November 8, 2011, I spoke with Mr. Specter by

23  telephone, and told him that I understood that the inmates he was representing had to

24  agree to provide their names and ADC number and that he was not at liberty to waive this

25  privilege without their consent, but that it was imperative that he provide a list of those

26  inmates who were allegedly in crisis and not receiving care as quickly as possible so that

27  ADC could investigate their claims and provide care to those who needed it.  I also

28  assured Mr. Specter that there would not be any retaliation against those inmates who did

2679457

1   identify themselves, and reiterated that our goal was to provide adequate health care to

2   everyone.  Mr. Specter's response to the request was, *if I give you names, then you are*

3   *going to address the health care problems and then it jeopardizes our certifying a class*

4   (or words to that effect).  I was shocked by his response and documented it in an email to

5   Mr. Specter, dated November 10, 2011.  (See Attachment 1.)

6        I declare under penalty of perjury that the foregoing is true and correct.

7        EXECUTED this 16 day of August, 2012.

8

9

10  Karyn Klausner

**Attachment 1**

**From:** Don Specter [mailto:dspecter@prisonlaw.com]
**Sent:** Thursday, November 17, 2011 1:59 PM
**To:** KLAUSNER, KARYN
**Subject:** RE: Tolling Agreement and other matters

Karyn,

Thanks for sending the tolling agreement.  I'm glad that we were able to resolve that issue.

You previously mentioned that you would get back to me about the copying costs once the tolling agreement was done, so could you please let me know today or tomorrow whether your Department is willing to reduce the price per page or to let us bring in a copy service.

Also, we have received some responses to our letters asking whether prisoners in need of health care want us to disclose their names to you.  I attach the names of those prisoners and a very short description of at least one of the health care problems of each prisoner.  This description is not intended to be all inclusive of the health care needs of these prisoners.

In addition, I am attaching a document signed by numerous prisoners requesting that we inform you that they have serious health care needs that are not being addressed.  We haven't interviewed or received information from most, if not all, of this last group.

We expect to continue to receive more responses permitting disclosure.  Would you like us to forward those names to you as we receive them or on more regular basis such as once a week?

Thanks

Don

**From:** KLAUSNER, KARYN [mailto:KKLAUSNER@azcorrections.gov]
**Sent:** Wednesday, November 16, 2011 12:51 PM
**To:** 'Don Specter'
**Subject:** RE: Tolling Agreement and other matters

Mr. Specter:

Tolling agreement attached.

Regards,
Karyn Klausner

---

**From:** Don Specter [mailto:dspecter@prisonlaw.com]
**Sent:** Wednesday, November 16, 2011 11:01 AM
**To:** KLAUSNER, KARYN
**Subject:** FW: Tolling Agreement and other matters

Karyn,

Please send the signed tolling agreement to me today.

Thanks

Don

---

**From:** Don Specter [mailto:dspecter@prisonlaw.com]
**Sent:** Monday, November 14, 2011 5:47 PM
**To:** arizona@prisonlaw.com
**Subject:** FW: Tolling Agreement and other matters

---

**From:** Don Specter [mailto:dspecter@prisonlaw.com]
**Sent:** Monday, November 14, 2011 3:28 PM
**To:** 'KLAUSNER, KARYN'
**Subject:** RE: Tolling Agreement and other matters

Karen,

Attached is the list.  I look forward to receiving the signed agreement.

Thanks

Don

---

**From:** KLAUSNER, KARYN [mailto:KKLAUSNER@azcorrections.gov]
**Sent:** Monday, November 14, 2011 7:09 AM
**To:** 'Don Specter'
**Subject:** RE: Tolling Agreement and other matters

When I receive your list, you will receive the tolling agreement.

---

**From:** Don Specter [mailto:dspecter@prisonlaw.com]
**Sent:** Sunday, November 13, 2011 12:56 PM
**To:** KLAUSNER, KARYN
**Subject:** Re: Tolling Agreement and other matters

Dear Karyn,

It is true that your assessment of our intentions in incorrect.  The reason we are undertaking this project is to ensure that these and all other prisoners who need it receive appropriate health care and live under conditions consistent with the Constitution.

We remain willing to provide you a list of names of prisoners that will be covered by the agreement. I will be ready to send that list to you tomorrow.  Just so that we are perfectly clear, please confirm at your earliest convenience tomorrow that upon receipt of that list your client will immediately sign and return the tolling agreement that I have already signed and sent you.

Thank you.

Don

On Thu, Nov 10, 2011 at 3:41 PM, KLAUSNER, KARYN <KKLAUSNER@azcorrections.gov> wrote:

Mr. Specter:


As you will see from below, (though I suspect you are already aware), Mr. Pochoda inadvertently cc'd me on his comments to you regarding the discussion you and I had about the tolling agreement and providing a list of inmates to us.  I was not aware that Mr. Pochoda did not intend his email to be sent my way until I read it; it became patently clear to me that while I operate to work with you in good faith, you have an additional agenda in process. I am well aware that Mr. Pochoda and you are in a collaborative relationship, but it is hard not to feel that whatever list you do provide is simply to placate me.


Having said that, we are still willing to sign the tolling agreement upon receipt of the list of inmates it is intended to cover.  Mr. Pochoda's "outside" involvement, notwithstanding, I am awaiting your information.  Mr. Pochoda has requested numerous inmate visits for several attorneys for the Eyman complex on November 22.  We will set those up once I have received the tolling agreement and list from you.


I am deeply concerned that in our conversation you expressed a fear that if you provided names to me it might mean ADC would address these medical issues with individual inmates, which you believe might interfere with your ability to certify a class of inmates.  As I stated, there is no question that we will address any and all individual problems brought to our attention.  ADC has a responsibility to provide constitutionally appropriate care.  I am perplexed that you might know of an inmate who you believe is suffering and hesitate to identify him for us because you have concerns about structuring future potential litigation; however, I will continue to proceed as I have in our discussions, and remain hopeful that my assessment proves incorrect.


As I stated, upon receipt of the list of inmates and the agreement along with the understanding that it is effective for 90 days from the date of signing, I will let you know if we can reduce our copying costs.


I assume I will receive the agreed upon documents from you shortly.


Regards,

Karyn Klausner

General Counsel

Arizona Department of Corrections

---

**From:** Daniel Pochoda [mailto:dpochoda@acluaz.org]
**Sent:** Tuesday, November 08, 2011 5:22 PM
**To:** Don Specter
**Cc:** KLAUSNER, KARYN
**Subject:** Re: Tolling Agreement and other matters

A good 'quo'... thanks. Good to get accommodation for at least records of any forwarded & avoid turning over names with ADC having direct access with us still on outside. Dan

On Nov 8, 2011, at 5:08 PM, "Don Specter" <dspecter@prisonlaw.com> wrote:

> Karen,
>
> During our telephone conversation just now we agreed that the exhaustion provision of the tolling agreement would apply to a set of prisoners that I will provide to you. I informed you that this list could include all the prisoners we have interviewed and others that we have information about, and you agreed that this would be acceptable. Once you have that list, you indicated that Mr. Ryan would sign the agreement. Please confirm that this is your understanding of our agreement, and we will provide the list to you shortly.
>
> You also agreed to discuss with Mr. Ryan a cost effective method for us to copy medical records and provide me with a response shortly.
>
> Thank you.
>
> Don

4

**From:** KLAUSNER, KARYN [mailto:KKLAUSNER@azcorrections.gov]
**Sent:** Tuesday, November 08, 2011 12:56 PM
**To:** 'Don Specter'
**Subject:** RE: Tolling Agreement and other matters

Don:

We are not intending to suspend the medical grievance process for the entire prison population.  We will be agreeable to doing this for an enumerated list of inmates--it seems that you have some specific inmates in mind for this matter.  Please advise.

Karyn

**From:** Don Specter [mailto:dspecter@prisonlaw.com]
**Sent:** Tuesday, November 08, 2011 1:33 PM
**To:** KLAUSNER, KARYN
**Subject:** RE: Tolling Agreement and other matters

Karen,

Exactly what more information do you need about the copying.

Don

**From:** KLAUSNER, KARYN [mailto:KKLAUSNER@azcorrections.gov]
**Sent:** Tuesday, November 08, 2011 12:09 PM
**To:** 'Don Specter'
**Subject:** RE: Tolling Agreement and other matters

Don:

I am acquainted with how civil litigation works.  Having said that, I cannot make any offers on copying without more information.  Also, we have no objection to the tolling agreement, but cannot agree to the language regarding "exhaustion of remedies" as to all ADC inmates.  If we have a list of who you represent then we will attach that as an addendum to the agreement so we are all on the same page.  Let me know.

Karyn

---

**From:** Don Specter [mailto:dspecter@prisonlaw.com]
**Sent:** Tuesday, November 08, 2011 1:06 PM
**To:** KLAUSNER, KARYN
**Subject:** RE: Tolling Agreement and other matters

Karyn,

Thanks.  I look forward to receiving the signed tolling agreement by Thursday.

It's difficult for me to give you a precise or conclusive number of files we will need because we are not sure how you are going to respond to our substantive demands and won't know until you get back to us in three months.  At this time, we would like to start with about 20-25 files.  It seem like the most efficient method for your purposes would be to allow us or a copy service to scan the records, which would free your employees from that task.   Also, as I'm sure you're aware, in the event that we are successful in this litigation, the State would be obligated to reimburse us for the costs so it seems in the best interests of all concerned to do this in the most economical way possible.  In any event, we would like to get this process started, so please get back to me by the end of the week.

Don

---

**From:** KLAUSNER, KARYN [mailto:KKLAUSNER@azcorrections.gov]
**Sent:** Monday, November 07, 2011 3:21 PM
**To:** 'Don Specter'
**Subject:** RE: Tolling Agreement and other matters

Don:

Thank you for the quick response.  I will convey this to the Director for his review.  It would certainly help me to know the amount of documents you will be requesting.  Even a list of inmates would be helpful in that regard.  I need to be able to communicate what is anticipated in order to have the Director make a further commitment on any copying fees.  Thank you for amending the 90 day frame of reference on the tolling agreement to the signing date. I anticipate I will have this back to you no later than Thursday.

Regards,

Karyn

---

**From:** Don Specter [mailto:dspecter@prisonlaw.com]
**Sent:** Monday, November 07, 2011 3:19 PM
**To:** KLAUSNER, KARYN
**Subject:** RE: Tolling Agreement and other matters

Dear Karyn,

I have modified the Tolling Agreement so that it is effective for 90 days from the date of signing, which I assume will occur very shortly. The only modifications to the Agreement that I made were in paragraphs 3 and 5. Please have Mr. Ryan sign the attached agreement and return it to me by email and mail.

We understand your need for more detailed information, and as I explained to you in Thursday's email we are engaged in the time consuming process of obtaining releases from the prisoners. We will be able to provide you with more information if we are able to review the records of these prisoners in a timely manner. As I explained before, the cost of reviewing these files is prohibitive. Since you seem unable to resolve the cost per page issue, we propose either that your department scan  the records instead of copying them and then send us a disk, or that we be provided access to review the records and we will bring our own portable scanner to scan the records that we need.

Thank you for considering these proposals and for agreeing to the tolling agreement.

Don

---

**From:** KLAUSNER, KARYN [mailto:KKLAUSNER@azcorrections.gov]
**Sent:** Monday, November 07, 2011 10:39 AM
**To:** 'Don Specter'
**Subject:** RE: Tolling Agreement and other matters

Mr. Specter:

I have shared the agreement with Director Ryan. We are amenable to signing it if the 90 extension dates from the date of signing, and not from the original date of your letter. If that is agreeable, we will sign it and return it. Please understand that we need to have more detailed information about the allegations in your letter before we can agree to any other requests from your end. I look forward to hearing from you soon.

Regards,

Karyn Klausner

**From:** Don Specter [mailto:dspecter@prisonlaw.com]
**Sent:** Thursday, November 03, 2011 1:53 PM
**To:** KLAUSNER, KARYN
**Subject:** Tolling Agreement and other matters

Dear Karyn,

Thank you for your call last week in response to our letter of October 12, 2011. During that call you stated that you needed 90 days to investigate and respond to the claims made in our letter and indicated that your clients would be willing to enter into a tolling agreement. Our proposed tolling agreement is attached for your review. We look forward to learning whether you find it acceptable.

You also requested that we disclose the names of prisoners whose cases we described in the October 12 letter so that you could ensure that they receive treatment.

I informed you that because of our clients' concern about retaliation we would have to contact them individually to determine whether they want us to disclose to you the information that they provided to us. We are in the process of doing that and will provide you with a list of names and a very brief description of the problem for each prisoners who authorizes such disclosure. That list may also include other prisoners who have serious health care problems, but whose cases we did not use in the letter.

We also discussed the issue of copying medical and other records. I requested that your department either reduce the charge per page to a reasonable amount or permit us to send in a copy service to copy the records. You stated that you would discuss that issue with your clients and get back to me. We would appreciate a prompt response as we are ready to inspect and copy records. As I mentioned, we have releases from all the prisoners whose records we would like to inspect and/or copy.

Thank you in advance for your response to these issues.  I look forward to hearing from you.


Don

**Attachment 2**



# Arizona Department of Corrections

1601 WEST JEFFERSON
PHOENIX, ARIZONA 85007
(602) 542-5497
www.azcorrections.gov



JANICE K. BREWER
GOVERNOR

CHARLES L. RYAN
DIRECTOR

December 6, 2011

Don Specter
Prison Law Office
Sent Via E-Mail

Mr. Specter:

The purpose of this correspondence is to address a number of issues with you. You have asked me to consider either a reduction in copying fees or to allow a copying service to come onto the prison grounds to copy records in order to provide a cost-savings to your organization. At this time, we intend to provide all requested records accompanied by a proper authorization from the inmate, at our standard rate of .50/page. Based on the "history" of your representations thus far, I see no basis to negotiate these costs.

In early October, we spoke by phone. You began the conversation by alleging that the Arizona Department of Corrections (ADC), was not providing adequate medical or mental health care to inmates. I requested that you provide me with written information to include as much detail as possible in order to start a meaningful dialogue. You were certain to let me know of your litigation success in California and of the risk ADC would be taking if we would no sit down and negotiate with your group. What has become obvious since that discussion, is that while ADC remains transparent, your organization is operating with a thinly-veiled agenda to use ADC's time and resources in effort to find out whether you have sufficient grounds to establish a class action lawsuit. Your actions to this point belie little evidence of good faith.

On October 12, 2011 a number of days after this initial call, you sent a 21 page correspondence that can only be described as a collection of unsubstantiated anecdotal allegations, voluminous references to case law, and devoid of any specific information that would allow ADC to legitimately respond to matters causing medical or mental health distress to any particular inmates. On October 31, 2011 I responded in writing that we could not meaningfully address the concerns without more specificity. We then spoke on the phone and I advised that ADC would sign the tolling agreement, but not before we received a list of inmates you intended to have covered by the agreement. You were very reluctant to provide this information, suggesting that I would use it to address individual inmate issues and thereby interfere in some manner with your ability to certify a class action. Ultimately you reluctantly agree to provide a list of inmates and I agreed to have the tolling agreement signed and returned to you upon receipt of that list.

On November 3, 2011 you sent an email that in part stated:

*I informed you that because of our clients' concern about retaliation we would have to contact them individually to determine whether they want us to disclose to you the information that they provided to us. We are in the process of doing that and will provide you with a list of names and a very brief description of the problem for each prisoner who authorizes such disclosure. That list may also include other prisoners who have serious health care problems, but whose cases we did not use in the letter.*

On November 14, 2011 you sent a list of 221 inmates to be covered by the tolling agreement; there was no evidence that these inmates had either spoken to you or consented to inclusion on this list. Nevertheless, the Director signed the agreement and it was emailed to you on November 16, 2011.

Prison Law Office
Page 2

On November 23, 2011 you then provided a new list that contained approximately 45 named inmates (5 of whom on not part of the larger list), with a brief description of the allegations regarding medical and/or mental health care that was lacking.   This list was not accompanied by any authorizations from the inmates named, but you did represent their consent to be identified and to list the specific complaints. You also sent along a handwritten list with 215 inmate names, numbers and complaints, but advised you could not include these inmates with complaints you could confirm.  On November 28, 2011 you sent a new list containing the names of 12 inmates who did provide authorizations and you have requested copies of each of their medical records.  Of the 12 inmates listed, only 3 are contained in the list of 45 you provided.

It has come to my attention that you also sent out two mass mailings to inmates; one on September 7, 2011 to prepare for your group visitation that was accommodated on September 20, 2011 by ADC.  A second mass mailing dated November, 2011 (the specific date was left off), was sent out by your office which can only be characterized as further demonstration of bad faith and client shopping on the part of your organization.  In this correspondence which includes a "survey" for the inmate, you advise that you are conducting an "investigation," and go on to state that if "[ADC] did not fix the problems, [PLO along with the ACLU] would pursue a lawsuit."  You also state that "in response, ADC's General Counsel, Karyn Klausner, has asked us for the names and ADC numbers of prisoners who currently have medical and/or mental health problems that needs attention."

It is clear from this chain of events that you and the two major law firms along with the thirteen other lawyers listed in your 21 page correspondence to ADC are posturing to obtain a certified class of inmates to represent in a lawsuit against ADC.  You are engaging in direct solicitation, notwithstanding an attempt to obscure this by referring to your process as an "investigation."  You have used my name specifically and in such a way to suggest that I would seek to retaliate in some manner upon learning the identities of the inmates in need of assistance.  I find your tactics wholly unprofessional and believe that my efforts to operate in good faith are being represented improperly to these inmates.

I have recommended that we continue to honor the tolling agreement for now.  I remain hopeful that you will recognize our concerns about what has occurred thus far, and will strive to move forward at this point in a good faith effort at constructive dialog as opposed to legal posturing.  We continue to remain open to an on-going dialogue, but not to intimidating nor questionable tactics designed to enhance a discovery process.

We are in the process of totaling the number of pages of records requested to date in order to give you an estimate of the associated costs.  I will continue to request that any special group visitations be arranged through my office in order that I may consult with staff about any security and/or safety concerns at the prison complexes.

Sincerely,
Karyn Klausner
General Counsel

CC: Charles L. Ryan, Director
      File

**Attachment 3**



# Arizona Department of Corrections

1601 WEST JEFFERSON
PHOENIX, ARIZONA 85007
(602) 542-5497
www.azcorrections.gov



JANICE K. BREWER
GOVERNOR

CHARLES L. RYAN
DIRECTOR

February 17, 2012

Donald Specter, Executive Director
Prison Law Office
General Delivery
San Quentin, CA  94964

Sent Via E-Mail
dspecter@prisonlaw.com

RE:  Tolling Agreement and Inmate Health Care

Dear Mr. Specter:

The Arizona Department of Corrections (ADC) has decided to terminate participation in the tolling agreement from November 17, 2011 and does not wish to renew this agreement with your office.  We have looked closely at the issues raised in your October 21, 2011 letter and have reviewed all of the inmate health care concerns based upon the lists that you have been providing to our General Counsel, Karyn Klausner.

ADC acknowledges that there have been some delays in delivery of health care services to inmates in certain instances.  There are a number of reasons for these delays, but nevertheless ADC is working with the Health Services Division toward a solution to the problems identified. There has not been evidence that delays have caused undue negative health consequences to the inmates who have had to wait for consultations.   The health care staff has done an admirable job of triaging medical and mental health needs of individual inmates and urgent and emergent care has been appropriately and promptly delivered.

We have identified some factors that influence delays in individual cases:  human error, loss of contracts due to change in rates permitted for private providers to charge for treating inmates, and replacing and maintaining staffing levels due to the mandated privatization of health care for the entire prison system.  Even with these challenges, however, ADC stands by its internal auditing of the concerns brought to our attention, and have concluded that there is not a system-wide deficit in the delivery of health care.  Staff turnover can certainly contribute to issues of communication regarding treatment needed in individual cases, but ADC has continued to address these changes to prevent important health care needs from being overlooked.

In looking at the community standard for health care, especially in the area of specialty consultations, ADC has not systemically failed in delivering necessary services to our inmates. While there have been some delays, there is no evidence deliberate indifference by ADC or any

Donald Specter
February 17, 2012
Page 2 of 2

member of its health care services staff.  Our internal review does not support the wholesale allegations you have made in your original correspondence from October.

What has become abundantly clear is that your main focus has been to simply gather Plaintiffs for a lawsuit you are set on filing.  We have numerous pieces of correspondence provided by inmates either as attached to motions they have filed, or in at least one instance by an inmate who did not appreciate being visited in connection with this matter, that demonstrates wholesale direct solicitation—an ethically questionable practice.

You have used ADC time, staff, security and resources to actively solicit clients who did not initially contact you.  You have improperly insinuated that there could be retaliation for inmates providing information to ADC and have truly failed to demonstrate that you are acting out of any real concern for individual inmates, but more to promote your public forum.

ADC will also be terminating visitation in the manner you have previously been afforded as of today.  You may have legal visits on days set for these visits as available.  You may contact your clients by mail at any time, and may have reasonable phone access when arranged as per ADC policy.  See Department Orders, 902, and 911 for further detailed requirements.  We have permitted an ongoing exception to visitation during the term of the tolling agreement but we will not continue special visitation arrangements any further.

Finally, we would again ask for you to provide us a detailed written response that suggests what you have found to be specifically lacking within the policies and application of the policies regarding the health care of ADC inmates.  We request that you specifically identify what you have found to be a systemic issue that has not been properly addressed, or where there has been any evidence of systemic deliberate indifference.

If the Prison Law Office, the ACLU, Jones Day, and/or Perkins Coie have actually come to some definitive results and have concrete suggestions for improvement, then ADC is certainly open to meaningful dialogue.  If you have only been focused on collecting clients for a lawsuit then you have had ample time to do so.  We look forward to any constructive input you may have, and remain willing to hear where you may have reached different conclusions from our own.

Sincerely,

Charles L. Ryan
Director

cc:  Jeff Hood, Deputy Director
     Karyn Klausner, General Counsel
     Richard Pratt, Interim Division Director, Health Services
     Michael Gottfried, Section Chief, Liability Management Section, Arizona Attorney
     General's Office