# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,     Plaintiffs,   v.   Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,     Defendants. | No.: CV12-00601-PHX-NVW (MEA) |

30(b)(6) ARIZONA DEPARTMENT OF CORRECTIONS
(RICHARD H. ROWE, M.D.)
TOPIC NOS. 1, 2, 5, 6, 7, 8, 9, 10, 12, 13, 15, 17

September 19, 2012
9:49 a.m.
Phoenix, Arizona

Prepared by:
Marcella Daughtry, RPR
Arizona Certified
Reporter No. 50623

Prepared for:

(Copy)

```
 1      Q    In the last, say, six months, how many times
 2   have you -- how many charts have you reviewed?
 3      A    Oh, boy, I would say probably -- and this is a
 4   guess -- 20, 25.  Just a wild guess.  At least that
 5   many.
 6      Q    That's your best estimate?
 7      A    I'm sorry?
 8      Q    That's your best estimate?
 9      A    That's my best estimate.
10      Q    And how many of those cases have you had
11   concerns about the adequacy of care?
12              MS. WIENEKE:  Then I will object and
13   insert confidentiality of care.
14      Q    BY MR. SPECTER:  You can answer.
15              MS. WIENEKE:  No, I'm going to ask you
16   not to answer.
17      Q    BY MR. SPECTER: Are you going to follow your
18   attorney's instruction or are you going to answer?
19      A    I'm going to follow my attorney's advice.
20              MR. SPECTER:  I don't understand why the
21   numbers would be confidential.
22              MS. WIENEKE:  Because by providing the
23   numbers, you are providing the content of the
24   conclusion.
25              MR. SPECTER:  Well, okay.  I disagree
```

1  with that, but we can --
2               MS. WIENEKE:  I understand.
3               MR. SPECTER:  So going -- I can ask him
4  a thousand questions about this, but if you are going
5  to continue to assert the same objection and instruct
6  him not to answer, can we have an agreement that -- or
7  can you explain what you are going to object to and
8  what you are not going to object to so we can move
9  faster?
10              MS. WIENEKE:  Certainly, Mr. Specter.
11 Anything that would require Dr. Rowe to reveal the
12 content of his confidential analysis regarding his
13 death reviews we are asserting a privilege and I would
14 instruct him not to answer, and he will follow that
15 advice.  And perhaps that's something that we can take
16 up at another time and resolve.
17              MR. SPECTER:  Sure.
18              MS. WIENEKE:  Thank you.
19              MR. SPECTER:  And with that, would your
20 instruction -- would your objection be any different
21 once the court enters a protective order, or would you
22 still assert the same objection?
23              MS. WIENEKE:  You know, that's a good
24 question.  I would want to consider that, but I don't
25 think that a protective order would adequately resolve

Page 81

1    the issue, but I would certainly want to ruminate on
2    that a little bit.
3                MR. SPECTER:  Okay.  I don't have to ask
4    him all these questions?
5                MS. WIENEKE:  No.
6                MR. SPECTER:  We have an agreement --
7                MS. WIENEKE:  Right.
8                MR. SPECTER:  -- that we will just try
9    to resolve the issue, and if it's resolved in our
10   favor, we will come back and ask him the questions, and
11   if not, then we won't get that information?
12               MS. WIENEKE:  I will agree that that's
13   the risk that I take.
14               MR. SPECTER:  Okay.  Thank you very much
15   for that.
16        Q    BY MR. SPECTER:  Let me ask you a question
17   about the peer-review process as it works in Arizona.
18   And this is not about any specific case, but in
19   California, at least, there are peer-review committees.
20   Are there peer-review committees in Arizona, or do you
21   know?
22        A    As it relates to what discipline?  Any
23   discipline?
24        Q    Yes.
25        A    In the Department of Corrections we don't have

Page 82

1   a peer-review committee.  Peer review is done
2   one-on-one with the supervising physician locally.
3        Q    I see.  And your part of the peer-review
4   process is -- is -- you believe you are part of the
5   peer-review process?
6        A    I do.  I provide peer review for the physician
7   supervisors who provide peer review for their physician
8   that works on it.
9        Q    Okay.  So when -- when the peer-review process
10  finds that there is some problem, what -- are -- do
11  they lose privileges to practice in the Department of
12  Corrections, or what happens?
13       A    And it all depends on what the situation is.
14  The practitioner is usually counseled about the
15  practice pattern.  And I recall one case where it was
16  before I came into that position where I think a
17  practitioner was reported to the board, so it may even
18  be to the medical board, so it may even elevate to that
19  level.  I have not reported anyone.
20       Q    Okay.  So are there any minutes kept of these
21  peer-review sessions besides the form you fill out?
22       A    Just the form.
23       Q    Okay.  And that's sent to Mr. Pratt; is that
24  right?
25       A    Those peer reviews, which is confidential, is

Page 83

1  kept by me.  And if there are reasons to discuss it
2  with him about some concerns, yes, it's not sent to
3  him.  He does not keep copies of it.
4      Q    Okay.  You may object to this, but I will ask
5  it.  And how many cases in the last six months have you
6  discussed a case with Mr. Pratt?
7           MS. WIENEKE:  I think that's just the
8  same question but asked a little differently.
9           MR. SPECTER:  Yeah.
10          MS. WIENEKE:  So I'm going to object and
11 instruct him not to answer.
12     Q    BY MR. SPECTER:  And are you going to follow
13 that instruction?
14     A    I will follow that.
15          MS. WIENEKE:  But nice try.
16     Q    BY MR. SPECTER:  In one of the documents we
17 received from your attorneys, it said that in response
18 to an audit by NCCHC, 21 out of the 33 deaths were from
19 HIV -- this was a 2010 audit -- with two by suicide,
20 one by homicide and one by natural causes.  Are you
21 aware of that figure?
22     A    Not the breakdown as such.
23     Q    Right.  Does it sound right to you, that 21
24 out of 33 deaths were HIV?  This doesn't have anything
25 to do with peer review; it's just death.

# Exhibit B



PRISON LAW OFFICE
General Delivery, San Quentin CA. 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Rana Anabtawi
Rebekah Evenson
Steven Fama
Penny Godbold
Megan Hagler
Alison Hardy
Corene Kendrick
Kelly Knapp
Millard Murphy
Lynn Wu

September 20, 2012

VIA EMAIL ONLY

Ms. Kathy Wieneke
Struck Wieneke & Love
3100 W. Ray Rd., Ste. 300
Chandler AZ 85226

    Re:    *Parsons, et al. v. Ryan, et al*.; 30(b)(6) Deposition on Sept. 19, 2012

Dear Kathy,

    I write about some of the issues that surfaced at yesterday's deposition.

    First, at the Rule 30(b)(6) deposition yesterday you instructed the deponent, Dr. Rowe, not to answer questions related to the mortality reviews that he conducts for the ADC on the basis of the state law peer review privilege. Dr. Rowe followed your instruction and did not answer substantive questions on that topic.

    Plaintiffs do not agree that the mortality reviews conducted by Dr. Rowe are peer review. Even if those reviews are covered by the Arizona peer review statute, the Ninth Circuit has held that that state law privilege is not recognized in federal question cases in federal court. In a case arising out of an Arizona correctional facility the Court held that "federal law recognizes no privilege of peer review in the context of a case involving the death of a prisoner." *Agster v. Maricopa County*, 422 F.3d 836, 837 (9th Cir. 2005). The Court affirmed the district court's ruling requiring the disclosure of a mortality review conducted by jail authorities. *Id.* at 839. Accordingly, your instruction to Dr. Rowe had no legal basis.

    Plaintiffs therefore request that you produce all mortality reviews in possession of ADC, including those produced by Dr. Rowe, from January 1, 2010 to the present and that you make Dr. Rowe available for deposition to answer questions about those mortality reviews.

    Second, Dr. Rowe testified that he had emails that were responsive to some of the deposition topics but had not been asked to search for them and did not produce any pursuant to the Notice of Deposition Duces Tecum. At the deposition I requested that those emails be produced but you did not respond to that request, stating that you first had to consult with your clients and other members of your team. Plaintiffs again request that those emails be produced

Board of Directors
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Felecia Gaston • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Dennis Roberts

Ms. Kathy Wieneke<br>
RE: *Parsons v. Ryan*<br>
September 20, 2012<br>
Page 2

immediately and that Dr. Rowe be made available for deposition to answer any questions about those emails.

Third, it is apparent that Defendants did not conduct any other search for documents to comply with the Notice and the accompanying request for documents, despite the fact that it was clear from Dr. Rowe's testimony that others, including Mr. Taylor and Mr. Pratt, may have knowledge or information on the noticed topics and may possess responsive documents. Plaintiffs request that Defendants search for and produce all emails, memoranda and other documents listed in the Notice (Dkt #78) relevant to the listed topics.

Fourth, it is perfectly clear from yesterday's deposition that Defendants made no attempt to ensure that Dr. Rowe could "testify about information known or reasonably available to" ADC. Fed. Rule Civ. Proc., Rule 30(b)(6). Dr. Rowe testified that he worked less than half time and had very limited responsibilities for health care and that for the most part he was charged with reviewing charts and answering questions from Mr. Pratt and others regarding clinical issues specific to individual patients. In addition, Dr. Rowe, whom Defendants designated to cover multiple topics, did nothing to prepare for the deposition besides having a three to four hour conversation with you and reviewing a few policies. Thus, Defendants did not designate the person most knowledgeable on these subjects and made no attempt to provide information "reasonably available to the organization." This is not the first time 30(b)(6) deponents have been unprepared or that we have complained about that fact.

Finally, we discussed issues two and four at length at the deposition so I see no need to meet and confer about that further. We are available on September 21 and 24 to meet and confer about the other two issues.

I look forward to your prompt response.

                                                    Sincerely,

                                                    /s/

                                                  Donald Specter

# Exhibit C


To:
Cc:
Bcc:
Subject: Parsons Meet-and-Confer regarding document production

**From:** Courtney Cloman [mailto:CCloman@swlfirm.com]
**Sent:** Monday, September 24, 2012 4:49 PM
**To:** Corene Kendrick (ckendrick@prisonlaw.com) (ckendrick@prisonlaw.com); Caroline N Mitchell (cnmitchell@JonesDay.com); Jennifer Alewelt (jalewelt@azdisabilitylaw.org); Eidenbach, Kirstin (Perkins Coie) (KEidenbach@perkinscoie.com)
**Cc:** Kathy Wieneke; Ashlee Fletcher; Therese Mayo; Elizabeth Espiritu
**Subject:** Parsons Meet-and-Confer regarding document production

Counsel –

I understand that at today's meet-and-confer, Plaintiffs sought scheduling another meet-and-confer for tomorrow to discuss document production.  I am unfortunately unavailable to meet tomorrow.  I am, however, drafting a letter responsive to Laurens Wilkes' letter and will touch on other production issues as well.

Thank you,

Courtney



**Courtney R. Cloman**
Attorney
Direct: (480) 420-1608
ccloman@swlfirm.com
www.swlfirm.com

This electronic mail transmission contains information from the law firm
Struck Wieneke & Love, P.L.C. that may be confidential or privileged. Such
information is solely for the intended recipient, and use by any other party
is not authorized. If you are not the intended recipient, be aware that any
disclosure, copying, distribution or use of this message, its contents or any
attachments is prohibited. Any wrongful interception of this message is
punishable as a Federal Crime. Although this e-mail and any attachments are
believed to be free of any virus or other defect that might affect any
computer system into which it is received and opened, it is the responsibility
of the recipient to ensure that it is virus free and no responsibility is
accepted by the sender for any loss or damage arising in any way from its use.
If you have received this message in error, please notify the sender
immediately by telephone (480) 420-1600. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.