**JWB**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Antonio Parsons, et al., | No. CV-12-00601-PHX-NVW |
| Plaintiffs, | **ORDER** |
| vs. | |
| Charles L. Ryan, et al., | |
| Defendants. | |

Before the Court is Defendants' fully-briefed Motion to Dismiss (Doc. 50). The Court will deny the motion.

**I.     LEGAL STANDARD**

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint need contain only "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To show that the plaintiff is entitled to relief, the complaint must permit the court to infer more than the mere possibility of misconduct. *Id.*

A claim must be stated clearly enough to provide each defendant fair opportunity to frame a responsive pleading. *McHenry v. Renne*, 84 F.3d 1172, 1176 (9th Cir. 1996). "Something labeled a complaint . . ., yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *Id.* at 1180.

Generally, material beyond the pleadings may not be considered in deciding a Rule 12(b)(6) motion. However, material properly submitted as part of the complaint and documents not physically attached to the complaint whose contents are alleged in a complaint and whose authenticity no party questions may be considered. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

## II.     BACKGROUND

Plaintiffs are fourteen inmates incarcerated at various facilities within the Arizona Department of Corrections (ADC) and the Arizona Center for Disability Law. They assert five claims against Defendants—ADC Director Charles Ryan and Facility Health Administrator Richard Pratt—in their official capacity pursuant to 42 U.S.C. § 1983 and the Eighth Amendment. All five claims stem from Defendants' alleged deliberate indifference in the provision of overall health, medical, dental, and mental health care and to unconstitutional conditions of confinement in the ADC's solitary confinement facilities (Doc. 1 at ¶¶ 140-149).

Defendants move to dismiss the Complaint on three grounds: failure to state a claim, failure to exhaust, and mootness. Defendants also move to stay this action for nine

months because of the recent privatization of ADC's provision of health care (Doc. 50). The Court will address each argument in turn.

## III. ANALYSIS

### A. Failure to State a Claim

Defendants first argue that portions of the Complaint must be dismissed for failure to state a claim (Doc. 50 at 5-7). They acknowledge that the Complaint presents five claims for relief (*id.* at 2, citing Doc. 1 at ¶¶ 140-149). But Defendants argue that, based on the facts alleged in the Complaint (Doc. 1 at ¶¶ 26-100), Plaintiffs actually set forth 51 claims for relief (including subparts), which Defendants enumerate in their motion (Doc. 50 at 3-4, listing claims 1-38). Further, because 16 of those "claims" do not apply to any of the named Plaintiffs (Doc. 1 at ¶¶ 27-29, 33, 37, 43, 51-57, 59, 62, 69, 84, 86, 89, 92, 93), Defendants argue that they must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

As an initial matter, the Court notes that it has already screened the Complaint pursuant to 28 U.S.C. § 1915A(b) and determined that it stated a claim (Doc. 21 at 3-4). Under these circumstances, a motion to dismiss under Rule 12(b)(6) is almost never an appropriate response when the court directed the defendants to respond because the standard for dismissal under Rule 12(b)(6) ("failure to state a claim upon which relief can be granted") is identical to the standard under 28 U.S.C. § 1915A(b) ("fail[ure] to state a claim upon which relief may be granted"). A Rule 12(b)(6) motion to dismiss will, therefore, be granted only if the defendant can convince the Court that reconsideration is appropriate.

Motions for reconsideration should be granted only in rare circumstances. *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). Mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988). Nor is reconsideration to be used to ask the court to rethink what it has already thought through. *United States v. Rezzonico*, 32 F. Supp.2d 1112, 1116 (D. Ariz. 1998). Reconsideration is only appropriate if the district court "(1) is presented with newly discovered evidence,

- 3 -

(2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "No motion for reconsideration shall repeat in any manner any oral or written argument made in support of or in opposition to the original motion." *Motorola, Inc. v. J.B. Rodgers Mechanical Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003).

Defendants make no argument that reconsideration of the Court's March 28, 2012 Order is appropriate. Rather, Defendants' argument relies on well-settled standing principles, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and the accepted notion that inmates do not have standing to assert claims on behalf of other inmates (Doc. 50 at 5-6, citing cases). But Defendants' argument rests entirely on its theory that Plaintiffs pleading presented 51 separate claims for relief. The Court, however, does not read the Complaint as stating a separate claim for relief in each paragraph. Rather, the Court reads the Complaint as it was presented—as alleging five claims for relief predicated on the factual assertions presented in Paragraphs 26-100. Those assertions certainly are supportive of Plaintiffs' underlying contention that Defendants have established policies, practices, or customs that result in the denial of adequate medical, dental, and mental health care and unconstitutional conditions of confinement.

Nor is this type of Complaint unique. On this score, *Starr v. Baca*, 652 F.3d 1202, 1209 (9th Cir. 2011), is highly instructive. In *Starr*, the plaintiff alleged that the Los Angeles County Sheriff failed to act to protect inmates under his care from extreme violence at the hands of other inmates despite his knowledge that they were in danger and despite his ability to take actions that would have protected them. *Id.* at 1208. The facts alleged in Starr's Complaint included multiple allegations pertaining to inmates other than the plaintiff, in an effort to establish that the Sheriff was on notice of ongoing constitutional violations and condoned or ratified a custom, practice, or policy of ongoing conduct by his subordinate deputies and supervisors. *Id.* at 1209, 1211-12. Among the allegations were that the Sheriff received "weekly reports from his subordinates responsible for reporting deaths and injuries in the jails"; numerous specific events related

- 4 -

to assaults on other inmates; and the fact that the United States Department of Justice had initiated an investigation into conditions at Los Angeles County Jails. *Id.*

In harmony with *Starr*, Plaintiffs here have alleged a multitude of facts that support their claim that Defendants have been deliberately indifferent to inmates' health and safety despite knowledge of the risk to inmate health and safety. The paragraphs Defendants identify are synonymous with the paragraphs in *Starr* that identified inmates other than the plaintiff who had been violently assaulted or killed while in the jails' custody. *Id.* (identifying paragraphs 39, 41-47 of Starr's Complaint). Defendants' attempt to read Plaintiffs' factual allegations in isolation and apart from the context of the remainder of the Complaint is unpersuasive.

Finally, the relevant inquiry is not whether each factual assertion is sufficient to state a claim on its own but whether the *claims* are supported by sufficient facts to state a claim. Claim 1 alleging deliberate indifference to inmates' health care (Doc. 1 at ¶¶ 140-41) is supported by Paragraphs 30-37, 39-42, 44-50; Claim 2 alleging deliberate indifference to inmates' medical care (Doc. 1 at ¶¶ 142-43) is supported by Paragraphs 60-61, 63-68; Claim 3 alleging deliberate indifference to inmates' dental care (Doc. 1 at ¶¶ 144-45) is supported by Paragraphs 71-73; Claim 4 alleging deliberate indifference to inmates' mental health care (Doc. 1 at ¶¶ 145-46) is supported by Paragraphs 75-83; and Claim 5 alleging deliberate indifference to inmates' conditions of confinement in isolation (Doc. 1 at ¶¶ 148-49) is supported by Paragraphs 84-100.

To the extent that a particular paragraph provides background information and is not, standing alone, sufficient to state a separate claim does not meant that the entire Complaint must be dismissed for failure to state a claim. At this stage, Plaintiffs' allegations must be taken as true and are sufficient to state a claim. *Iqbal*, 566 U.S. at 678. Defendants' motion to dismiss on this basis will be denied.

**B.     Exhaustion of Administrative Remedies**

*1.     Governing Standard*

Under the Prison Litigation Reform Act, a prisoner must exhaust available administrative remedies before bringing a federal action. *See* 42 U.S.C. § 1997e(a);

*Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001). A prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. *Wyatt*, 315 F.3d at 1119. There can be no absence of exhaustion unless a defendant demonstrates that applicable relief remained available in the grievance process. *Brown v. Valoff*, 422 F.3d 926, 936-7 (9th Cir. 2005). Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. *Wyatt*, 315 F.3d at 1119-20.

### *2. Analysis*

Defendants maintain that 35 of the 51 claims presented in Plaintiffs' Complaint (as identified by Defendants) must be dismissed for failure to exhaust administrative remedies as required by the PLRA (Doc. 50 at 7). In support of this argument, Defendants introduce the declarations of ADC Medical Grievance Appeals Investigator Juliet Respicio-Moriarty and Hearing Officer Cheryl Dossett (*id.* 50, Exs. A-B), which are supported by ADC Department Order 802, *Inmate Grievance Procedure*, and copies of grievance documents (id., Attachs.).

Plaintiffs respond that Defendants waived this affirmative defense when the parties executed a Tolling Agreement on November 7, 2011 (Doc. 73 at 2-3). The Tolling Agreement was precipitated by a October 12, 2011 letter from Plaintiffs' counsel to Defendant Ryan and ADC's then-General Counsel, Karyn Klausner that outlined counsels' concerns with the administration of health care at ADC facilities (Doc. 74, Ex. 1, Nov. 7, 2011 Tolling Agreement). The Tolling Agreement's stated purpose was "[t]o protect the interests of all parties during the time the ADOC is investigating and responding to the allegations contained in plaintiffs' counsel's letter of October 12, 2011" and "[t]o give the parties time to determine whether the issues described in the letter of

October 12, 2011 can be resolved without the need for active litigation." (*Id.* § 2(a)(b)).

Section 3(c) of the Agreement provides that "Charles Ryan and the ADOC agree to irrevocably waive and not assert in any civil lawsuit brought by plaintiffs' counsel on behalf of prisoners in the custody of the ADOC any defense based on allegations that plaintiffs failed to exhaust administrative remedies." The Tolling Agreement remained in effect for 90 days, until January 12, 2012, although either party could have terminated the agreement at any time prior to the automatic termination date upon written notice (*Id.* § 3(d)).

Defendants address the Tolling Agreement in their reply and contend that Section 3(c) does not waive the exhaustion defense because (1) the claims presented against Ryan in his official capacity are, actually, claims against the State, which was not a signatory to the Tolling Agreement and (2) the Tolling Agreement only applied to certain inmates and claims that accrued during the 90 day period it was in effect and not to claims that arose before its execution (Doc. 91 at 5-10).

Defendants chose not to mention the Tolling Agreement in their motion to dismiss despite its obvious relevance and the certainty that it would be introduced by Plaintiffs. This was an intentional choice that precluded Plaintiffs from responding to the three arguments against enforcement of the Tolling Agreement and the evidence Defendants submit. For this reason alone, the Court would be justified in refusing to consider Defendants' arguments in reply. *See Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003) (declining to consider an issue raised for the first time in a reply brief).

The Court does not need to summarily reject Defendants' arguments because none are meritorious. Defendants first point to the fact that they are sued in their official capacity, which is, in effect a suit against the State of Arizona. And because the State of Arizona was not a signatory to the Tolling Agreement, Defendants argue, it cannot be enforced in this action. Defendants drive home this point by informing the Court that Plaintiffs' counsel drafted the agreement and suggesting that Plaintiffs' counsel should have known that contracting with public officials can be perilous (Doc. 50 at 8-9).

- 7 -

Defendants cite several cases supporting the notion that individuals contract with public officials at their own risk.  But what Defendants do not cite is the plain language of the Tolling Agreement, which provides that Ryan had the authority to enter into the agreement on behalf of "ADOC and all of its agents."  (Doc. 74, Ex. 1 at § 3(g).)  Indeed, Defendants make no argument and introduce no evidence or caselaw to support their bald conclusion that Ryan—the final policymaker for the Arizona Department of Corrections—lacked the actual or apparent authority to enter into an agreement with Plaintiffs' counsel concerning the exhaustion requirement at the state's prisons.  Further, Defendants' statement that Plaintiffs' counsel should have been on notice that they were negotiating with Ryan at "their peril" only bolsters the conclusion that their argument is nothing more than a case of buyer's remorse.

Defendants' second argument rests on the language of section 3c.  They argue that because the exhaustion provision did not enumerate the precise claims or inmates to which the provision applied, extrinsic evidence is necessary to ascertain the intent of the parties.  Defendants maintain that the provision was only meant to waive exhaustion on claims that accrued during the life of the Tolling Agreement for a particular list of inmates.

Defendants are correct that section 3c did not explicitly identify those claims or inmates for which the exhaustion requirement was waived.  But the agreement does explain that its purpose is to investigate claims presented in Plaintiffs' counsels' October 12, 2011 letter to Ryan and Klausner and applies to "any civil lawsuit brought by plaintiffs' counsel on behalf of prisoners in the custody of the ADOC."  (Doc. 74, Ex. 1 at § 3(c).)  Consequently, when reading the agreement as a whole, Defendants' proposed interpretation simply does not make sense.  If the parties entered into the Tolling Agreement for the express purpose of investigating claims that accrued before its inception, it does not follow that the waiver of the exhaustion defense would not apply to those claims.

Arizona law applies in interpreting the Tolling Agreement and the Court must

- 8 -

"adopt a construction of a contract which will harmonize all of its parts, and apparently conflicting parts must be reconciled, if possible by any reasonable interpretation." *Aztar Corp. v. U.S. Fire Ins. Co.*, 224 P.3d 960, 974 (Ariz. Ct. App. 2010) (citing *U.S. Insulation, Inc. v. Hilro Const. Co.*, 705 P.3d 490, 499 (Ariz. Ct. App. 1985). By reading the agreement in its totality, the Court finds that the exhaustion provision applied to claims with respect to any ADC inmate that accrued before the execution of the Tolling Agreement and while it was in effect. And Defendants make no specific arguments about allegations or claims that accrued after the life of the Tolling Agreement. The extraneous evidence Defendants' submit in their reply to establish their intent when it executed this agreement is irrelevant when the tolling agreement's language is not susceptible to interpretation.

In short, the Tolling Agreement's exhaustion waiver applies to the claims presented in Plaintiffs' Complaint. The Court therefore need not consider whether Plaintiffs were prevented from exhausting their claims and the motion to dismiss on this basis will be denied.

### C. Mootness

For their penultimate argument, Defendants point to the recent privatization of the provision of health care services and argue that all of Plaintiff's claims are moot because Wexford Health Services began providing health care services effective July 1, 2012 (Doc. 50 at 11). Defendants point to the Arizona Legislature's mandate that the prison privatize the provision of health care and argue that even if the contract with Wexford expires or is terminated, ADC may not then provide health care. Rather, the prison would have to re-contract with another private entity.

Plaintiffs argue that even though a private entity is providing health care to inmates, the "duty ADC owes to the prisoners in its custody is non-delegable" (Doc. 73 at 14). In reply, Defendants maintain that Plaintiffs' claims are moot because they are levied against ADC officials and ADC policies which do not support a live controversy (Doc. 91 at 13).

- 9 -

Defendants rely exclusively on the Arizona Legislature's mandate that the provision of health care services be privatized in state-owned and operated prisons. *See* Ariz. Sess. Laws 2011, Ch. 278, § 1.  But this argument ignores the statutes directing that Ryan provide medical and health services for prisoners.  Ariz. Rev. Stat. § 31-201.01(D). Even though state law allows Ryan to delegate to appropriate personnel administrative functions or duties, Ryan has a continuing duty to ensure that those to whom he delegated functions or duties performed those duties appropriately.  *See* Ariz. Rev. Stat. § 41-1604(B)(1)(d) (the director may delegate functions or duties "that the director believes can be competently, efficiently and properly performed"); *Starr*, 652 F.3d at 1208 (relying on fact that the defendant sheriff was required by state statute to take charge of county jails and was answerable for prisoner's safekeeping).  This delegation, however, does not absolve Ryan of his obligation to ensure the provision of medical care is constitutionally adequate.

The cases Plaintiffs cite in their response are on point and establish that a prison or jail facility that contracts with a private party to perform an obligation is still ultimately liable for any constitutional deprivation that occurs.  *West v. Atkins*, 487 U.S. 42, 56 (1988) ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights.").  The Court therefore finds that Plaintiffs claims are not mooted by the privatization of medical care at ADC facilities.  Defendants' motion to dismiss on this basis will be denied.

### D. Request for Stay of Medical Claims

Finally, Defendants request that the Court stay this action for six-to-nine months to allow Wexford to perform under the contract and demonstrate that Plaintiff's claims are no longer valid (Doc. 50 at 14). Defendants cite no authority under which a stay would be appropriate and the Court finds there is no basis for a stay.  The request will be denied.

- 10 -

Finally, the Court will not consider any argument with respect to ACDL because it was raised for the first time in Defendants' reply (Doc. 91 at 17).

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 50) is **denied**.

DATED this 10th day of October, 2012.

_____
Neil V. Wake
United States District Judge