Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: dpochoda@acluaz.org
       kflood@acluaz.org
       jlyall@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Victor Parsons, Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Jennifer Alewelt (Bar No. 027366)
Asim Varma (Bar No. 027927)
Sarah Kader (Bar No. 027147)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: jalewelt@azdisabilitylaw.org
       avarma@azdisabilitylaw.org
       skader@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-NVW (MEA) <br><br> **PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DEATH RECORDS AND MORTALITY REVIEWS AND TO COMPEL RESPONSE TO DEPOSITION QUESTIONS REGARDING MORTALITY REVIEWS PURSUANT TO OCTOBER 4, 2012 ORDER [DOC. 170], AND MEMORANDUM IN SUPPORT** |

**MOTION**

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and this Court's October 4, 2012 Order [Doc. 170], Plaintiffs move for an order compelling Defendants to produce all death records, including mortality reviews, and requiring Defendants to produce Dr. Rowe for further deposition regarding Defendants' death review policies and practices. This Motion is supported by the Memorandum of Points and Authorities and the Rule 37.1 Statement filed along with this Motion.

**INTRODUCTION**

Defendants' practice of providing inadequate health care – including deficient medical, dental and mental health care – and unconstitutional conditions of confinement in isolation, combined with Defendants' deliberate indifference to such conditions, is endangering the lives of prisoners in the custody of the Arizona Department of Corrections (ADC). (Complaint ¶¶ 39, 40, 59, 66, 82 and 100). Nearly four months ago, Plaintiffs sought production of documents related to prisoner deaths and Defendants' review of those deaths, but Defendants have yet to produce those documents. After initially objecting that state law prevents them from doing so, Defendants conceded on October 12, 2012 that the prisoners' medical records must be produced, and have indicated that they will produce them in 30 days. Defendants' concession did not, however, extend to mortality reviews or other medical death review documents.

Plaintiffs also noticed a Rule 30(b)(6) deposition regarding Defendants' review of prisoner deaths. While Defendants produced Dr. Richard Rowe to provide Rule 30(b)(6) deposition testimony on that issue, Defendants' counsel instructed Dr. Rowe not to respond to questions related to prisoner death reviews, and he followed that instruction. Defendants have since refused to meet and confer regarding Plaintiffs' request that Dr. Rowe be made available to continue the 30(b)(6) deposition and respond to questions about prisoner death reviews.

In light of Defendants' refusals, Plaintiffs seek an order compelling Defendants to produce all death records, including mortality reviews, and requiring Defendants to

produce Dr. Rowe for further deposition regarding Defendants' death review policies and practices. That the discovery Plaintiffs seek is critical is confirmed by the limited discovery Defendants have produced to date, which, as discussed below, suggests a complete breakdown of the delivery of health care to putative class members that places their lives at risk.

## ARGUMENT

### I. BACKGROUND

Defendants' failure to provide a constitutional level of health care in Arizona prisons places the lives of prisoners at risk. Accordingly, in June, Plaintiffs sought production of documents related to Defendants' review of prisoner deaths. Declaration of Alison Hardy, ¶ 2, Exh. 1 (Plaintiffs' First Set of Requests for Production, Req. 40, served June 15, 2012). After an August 30, 2012 meet and confer with Defendants' Counsel regarding the requested death records, Plaintiffs narrowed their request to focus on the files of 37 deceased prisoners, which Plaintiffs sought to have produced first. Hardy Decl., ¶ 3, Exh. 2 (August 31, 2012 Letter from Caroline Mitchell to Timothy Bojanowski). Plaintiffs also noticed a Rule 30(b)(6) deposition regarding Defendants' review of prisoner deaths. Doc. 78-1.

Until October 12, Defendants refused to produce any death records, to the extent they contained confidential information regarding the deceased inmates' medical records or reference to their medical records. Doc. 149. A few days before this motion was to be filed, Defendants agreed to produce the medical records of deceased prisoners within 30 days, and asserted that this issue is now moot. Doc. 179. The issue is not moot, however, as medical records for deceased prisoners represent just a fraction of the information that Plaintiffs have requested. In addition to the medical records, Plaintiffs seek all mortality reviews and any other medical/mental health investigations, assessments or inquiries into prisoner deaths. Defendants have not agreed to produce these documents.

While Defendants designated Dr. Rowe to provide Rule 30(b)(6) deposition testimony regarding their review of prisoner deaths, Defendants' counsel instructed Dr.

-2-

1  Rowe not to respond to questions related to what he referred to as the "mortality review"
2  process. Hardy Decl., ¶ 4, Exh. 3 (Deposition of Richard Rowe, September 19, 2012, pp.
3  79-83). Following Dr. Rowe's deposition, Plaintiffs reiterated their request that
4  Defendants produce all mortality reviews in their possession, and make Dr. Rowe
5  available to continue the 30(b)(6) deposition. Hardy Decl., ¶ 5, Exh. 4. (September 20,
6  2012 Letter from Donald Specter to Kathy Wieneke). However, Defendants have refused
7  to produce those documents, claiming that state and federal law bar them from doing so
8  absent a court order, and that this Court's protective order does not suffice. Doc. 149.
9  Defendants also have refused to meet and confer further regarding Dr. Rowe's deposition.
10 Doc. 156 at 5; Hardy Decl., ¶ 6, Exh. 5 (October 10, 2012 Letter from Courtney Cloman
11 to Donald Specter).

12 Plaintiffs now ask this Court to compel Defendants to produce all death records,
13 including mortality reviews and any related medical or mental health death reviews and to
14 produce Dr. Rowe for further deposition regarding Defendants' death review policies and
15 practices. This requested discovery is crucial, as evidenced by the limited discovery
16 Defendants have produced to date.

17 In particular, Defendants produced a letter to their agent, Wexford Health, Inc.,
18 dated September 21, 2012, documenting a number of recent, constitutionally-significant
19 lapses in adequate health care. For example, the letter notes that more than 100 insulin-
20 dependent prisoners at ASPC-Lewis were exposed to Hepatitis C in August 2012 after a
21 nurse reused a syringe and a vial of insulin. Hardy Decl., ¶ 7, Exh. 6 (ADC-028059-
22 28060). In the letter, Defendants acknowledge "inadequate staffing levels in multiple
23 program areas at multiple locations," which are forcing "existing staff to work excessive
24 hours, creating fatigue risks." *Id.*, p. 5 (ADC-028061). That understaffing likely has
25 contributed to the admittedly "significant number of inmates [who] may not have been
26 receiving their medications as prescribed due to expired prescription(s) and inappropriate
27 renewals or refills," because more than 8,300 prescriptions statewide needed to be
28 reviewed. *Id.*, p. 2 (ADC-028058).) The letter also discusses a mentally ill prisoner

1 housed at ASPC-Florence, who did not receive his lithium medication (a medication
2 prescribed to control mania in patients with bipolar disorder) for more than three weeks in
3 August, prior to being found hanging from a sheet in his cell on August 23, 2012. *Id.*, p. 3
4 (ADC-028059). Finally, the letter notes that a case of whooping cough, a highly
5 contagious bacterial disease that can be spread by coughing, went unreported for 30 days.
6 *Id.* at pp. 4-5.

7 Moreover, Defendants' own reports show that ASPC-Eyman, a prison that housed
8 more than 5,100 prisoners on September 30, 2012, "is operating with no full-time
9 Physicians, and three full time Mid-Level Providers." Hardy Decl., ¶ 8, Exh. 7, ADC
10 Memo from M. Musson to J. Profiri, ADC No. 028094-028095. And at the Winslow
11 prison, "lack of staffing continues to be the major issue and has an adverse effect on
12 numerous other areas" and the nurses "have all worked lots of overtime and this will
13 undoubtedly lead to a greater incidence of mistakes as they reach burnout." Hardy Decl.,
14 ¶ 9, Exh. 8, ADC Memo from J. Mitchell to J. Profiri, ADC No. 028163-28164.

15 The limited discovery produced thus far demonstrates that the system is in a crisis,
16 and that the lives of prisoners are at risk. Since this case was filed in March, 2012, more
17 than 50 prisoners have died, according to Defendants' news releases.
18 http://www.azcorrections.gov/Minh_news_gov.asp?DisplayYear=2012 (last accessed
19 October 15, 2012). Many of those, according to Defendants, died of natural causes
20 despite their young age. *Id.* Given these dangerous conditions, good cause for the
21 requested discovery into the medical and mental health care provided to prisoners prior to
22 their deaths and all subsequent medical reviews is manifest.

23 **II.     PLAINTIFFS SEEK RELEVANT EVIDENCE**

24 Plaintiffs are entitled to discovery regarding "any nonprivileged matter that is
25 relevant to any party's claim or defense," and, "[f]or good cause, the court may order
26 discovery of any matter relevant to the subject matter involved in the action." Fed. R.
27 Civ. P. 26(b). The Complaint alleges that prisoners have died as a result of Defendants'
28 policies and practices of providing inadequate health care and unconstitutional conditions

-4-

of confinement in isolation, as well as Defendants' deliberate indifference to such conduct (Complaint ¶¶ 39, 40, 59, 66, 82 and 100). Documents related to prisoner deaths and Defendants' death review practices plainly are relevant to Plaintiffs' inadequate medical care, inadequate mental health care, inadequate dental care and unconstitutional conditions of confinement in isolation claims.

### III. FEDERAL AND STATE LAW PERMIT THE DISCLOSURE OF THE REQUESTED INFORMATION AND TESTIMONY

Defendants refuse to produce the mortality reviews or other medical reviews of the deaths. As they have conceded that medical records production is appropriate, Defendants' basis for withholding this information is not clear. Defendants will likely assert that the peer review privilege bars production of the mortality reviews and related medical death reviews, as they have asserted that privilege bars Dr. Rowe's testimony on the death review process. But, as set forth below, HIPAA permits production of the requested information and Dr. Rowe's testimony. And federal law, which allows the requested discovery, is controlling, such that the Arizona peer review statutes are no obstacle to production.

#### A. HIPAA Permits Disclosure Under a Protective Order.

Under HIPAA, disclosure of protected health information is permitted upon a court order. 45 C.F.R. § 164.512(1)(e)(ii)-(v). Here, Plaintiffs sought such an order, this Court entered one (Docket 140), and Defendants concede that a qualified protective order is in place. Doc. 179. Thus, HIPAA is not an obstacle to production of the mortality reviews, as a qualified protective order is in place.

#### B. Federal Law Controls Discovery Disputes.

Where federal law claims are at issue, federal law controls privilege and discovery disputes. *See Wilkins v. Maricopa County*, No. CV-09-1380-PHX-LOA, 2010 WL 2231909, at *3 (D. Ariz. June 2, 2010) ("Assertions of privileges in federal-question cases are governed by the federal common law"); *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005); Fed. R. Evid. 501; <u>*Jaffee v. Redmond,* 518 U.S. 1, 8 (1996)</u> ("Rule

501 of the Federal Rules of Evidence authorizes federal courts to define new privileges by interpreting 'common law principles ... in the light of reason and experience.'"). Thus, Arizona privilege statutes are not controlling in this context; federal common law is.

"The patient-physician privilege does not exist at federal common law and the Ninth Circuit has not recognized a physician-patient privilege ...." *Soto v. City of Concord*, 162 F.R.D. 603, 618 (N.D.Cal. 1995). And no other privilege exists at federal common law that could bar discovery of the disputed death reviews. Consequently, courts in this district have held that requests for discovery of prisoner medical records are governed by federal common law, and have granted such requests. *Kent v. Cummings*, No. CV-09-1616-PHX-JWS (LOA), 2010 WL 2643538 at *2 (D. Ariz. June 29, 2010) (ordering production of the medical records relevant to claims at issue).

**C.    Death Review Documents and Process Are Not Privileged under Federal Law**

The "peer review" privilege, while recognized under Arizona law, has been expressly rejected by the Ninth Circuit. In *Agster*, an action involving the death of an inmate in a correctional facility, the Ninth Circuit considered Arizona's peer review privilege and rejected the defendant's request to create a peer review privilege as a matter of federal common law. 422 F.3d at 839. In doing so, the Court emphasized the need for public accountability and explained that, in the context of a prisoner's death, "it is peculiarly important that the public have access to the assessment by peers of the care provided." *Id.* Given that the Ninth Circuit found public accountability concerns sufficiently worrisome to reject a federal peer review privilege in a case involving the death of a single prisoner, those same concerns certainly counsel against the recognition of such a privilege in the instant case, where Plaintiffs contend that Defendants' deliberate indifference has led to multiple prisoner deaths.

Furthermore, even if Arizona's peer review privilege applied here, Dr. Rowe's work would not be considered privileged under the Arizona statute. Arizona law defines

1   "peer review" broadly,[1]  but not all "peer review" proceedings fall under the Arizona
2   statutory privilege. The Arizona peer review privilege statute provides that "the
3   governing body of each licensed hospital or outpatient surgical center" must require
4   physicians admitted to practice at that facility to "organize into committees or other
5   organizational structures to review the professional practices within the hospital or center
6   for the purposes of reducing morbidity and mortality and for the improvement of the care
7   of patients provided in the institution." A.R.S. § 36-445.  The proceedings and records of
8   these reviews are protected from discovery. A.R.S. § 36-445.01.  Thus, to be protected
9   under the Arizona peer review privilege, the activity must be performed at the direction of
10  a governing body of a licensed hospital or outpatient surgical center.

   Dr. Rowe's review of death records is not covered by the state peer review privilege. He testified that:

> In the Department of Corrections we don't have a peer review committee. Peer review is done one-on-one with the supervising physician locally. . . . I provide peer review for the physician supervisors who provide peer review for their physician that works on it.

Hardy Decl., ¶ 4, Exh. 3 (Rowe Deposition at 81:25-82:8). His mortality reviews do not fall within the class of proceedings covered under the protections of A.R.S. § 36-445 because his activities are not performed under the auspices of the governing body of a licensed hospital or outpatient surgical center.

   In sum, under governing federal law – and even under Arizona law – Defendants lacked grounds to instruct Dr. Rowe not to answer questions relating to ADC's death review practices. Additionally, Defendants should be required to produce the written mortality reviews Dr. Rowe and others have performed, as well as any other documents

---

[1] Arizona law defines "medical peer review" broadly as
   (a) The participation by a doctor of medicine in the review and evaluation of the medical management of a patient and the use of resources for patient care.
   (b) Activities relating to a health care institution's decision to grant or continue privileges to practice at that institution. Ariz. Rev. Stat. § 32-1401.

relating to the medical and/or mental health review of prisoner deaths.

### IV. BECAUSE PLAINTIFFS' MOTION IS SUBSTANTIALLY JUSTIFIED, ATTORNEYS FEES SHOULD NOT BE ASSESSED AGAINST PLAINTIFFS' COUNSEL UNDER RULE 37(A)(5)

There can be no dispute that the documents and testimony Plaintiffs seek, which relate to the deaths of prisoners in Defendants' custody, are relevant to Plaintiffs' claims. The parties met and conferred regarding the death records, including the mortality reviews, on September 10, 2012, by telephone conference, but because Defendants asserted they were constrained by state law from complying with the request for records absent a court order, the parties could not negotiate a solution. The parties concurred that both had made sincere efforts as required by L.R.Civ. 7.2(j) to personally consult and resolve the matter, but had reached an impasse. Docs. 149 and 156. Defendants subsequently concluded that the Protective Order entered in this action permits them to produce the medical files for the prisoners who died. Doc. 179. They continue, however, to refuse to produce the mortality reviews and other medical reviews, investigations, evaluations, etc. of prisoner deaths. Thus, Plaintiffs' motion to obtain an order requiring the disclosure of death reviews and related documents is substantially justified.

Plaintiffs' request for 30(b)(6) testimony regarding the death review process also is substantially justified. After Defendants' counsel instructed Dr. Rowe not to respond to death review related questions at his September 19, 2012 deposition, counsel met and conferred and defense counsel indicated she would consider whether Defendants would permit the testimony if a protective order were in place. Hardy Decl, ¶ 4, Exh. 3 (Rowe Deposition at 80:19-81:2). Plaintiffs' counsel sent a follow-up letter requesting that Dr. Rowe be made available for deposition after Defendants produce the mortality reviews, and offered to meet and confer on the issue on September 21 or 24. Hardy Decl., ¶ 5, Exh. 4 (September 20, 2012 Letter from Donald Specter to Kathy Wieneke). Defendants have not responded to this letter. On October 9, Plaintiffs' counsel left a voicemail message again asking Defendants' counsel to meet and confer regarding the deposition, and immediately thereafter sent a confirming email. Hardy Decl., ¶ 10, Exh. 9 (October 9,

-8-

2012 email from Donald Specter to Kathy Wieneke). Defense counsel replied on October 10, 2012, declaring that the issue of Dr. Rowe's testimony is now before the Court, and there is no reason to conduct a further meet and confer. Hardy Decl., ¶ 6, Exh. 5 (October 10, 2012 Letter from Courtney Cloman to Donald Specter).[2] Plaintiffs' counsel has made sincere efforts as required by L.R.Civ. 7.2(j) to personally consult and resolve this disputed matter. As these efforts have not been successful, this motion is substantially justified, such that attorney fees should not be assessed against Plaintiffs under Fed. R. Civ. P. 37(a)(5)(A).

## CONCLUSION

For the reasons stated above, Plaintiffs seek an order (1) requiring Defendants to produce all death records, including medical files and mortality reviews pursuant to Plaintiffs' June 15, 2012 Request for Production of Documents; (2) requiring Defendants to produce for further deposition Dr. Richard Rowe to testify regarding Defendants' death review policies and practices following production of the death records; (3) requiring Defendants to pay attorney fees and costs associated with this motion and securing this discovery; and (4) granting any other relief this Court deems proper.

## LOCAL RULE 37.1 STATEMENT

Pursuant to LRCiv 37.1(a), Plaintiffs state:

(1) Plaintiffs requested "all documents regarding death records," defined as "any document regarding the death of a prisoner, including audits, reviews, studies, interview notes, videos, audio-recordings, external investigations or internal investigations." Plaintiffs also requested, pursuant to Rule 30(b)(6), that Defendants designate a witness to testify regarding Defendants' "[p]ractices, policies and procedures for quality assurance and quality improvement, including, but not limited to, reviews of deaths and sentinel events."

---

[2] Defense counsel also have refused Plaintiffs' counsels' request to set up a standing weekly meet and confer. Hardy Decl., ¶ 11, Exh. 10 (September 26, 2012 E-mail from Caroline Mitchell to Kathy Wieneke, et al.); Hardy Decl., ¶ 11, Exh. 11 (September 27, 2012 Letter from Ashlee B. Fletcher to Caroline Mitchell, et al.).

     (2)    Defendants refuse to produce mortality reviews and other medical reviews for prisoners who have died in custody. Defendants' counsel instructed the witness they designated to testify about reviews of deaths not to answer questions related to reviews of deaths on the ground that he would be forced to disclose confidential information in violation of Ariz. Rev. Stat. § 12-2294. The witness followed his counsel's instruction.

     (3)    The documents and testimony Plaintiffs seek are discoverable under governing federal law, and Defendants' refusal to produce the requested discovery therefore is not justified.

Dated: October 15, 2012　　　　　　　　**PRISON LAW OFFICE**

By: s/ Alison Hardy

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:　dspecter@prisonlaw.com
　　　　ahardy@prisonlaw.com
　　　　snorman@prisonlaw.com
　　　　ckendrick@prisonlaw.com

*Admitted *pro hac vice*

Daniel J. Pochoda
Kelly J. Flood
James Duff Lyall
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:　dpochoda@acluaz.org
　　　　kflood@acluaz.org
　　　　jlyall@acluaz.org

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@npp-aclu.org
           afettig@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Jill L. Ripke (Bar No. 024837)
James A. Ahlers (Bar No. 026660)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Thomas D. Ryerson (Bar No. 028073)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:     dbarr@perkinscoie.com
           rjipke@perkinscoie.com
           jahlers@perkinscoie.com
           keidenbach@perkinscoie.com
           jhgray@perkinscoie.com
           tryerson@perkinscoie.com
           mdumee@perkinscoie.com

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:     cnmitchell@jonesday.com
           dkiernan@jonesday.com
           scalderon@jonesday.com
           srauh@jonesday.com

*Admitted *pro hac vice*

|   |   |
|---|---|
| 1 | R. Scott Medsker (D.C. 976405)* |
|   | **JONES DAY** |
| 2 | 51 Louisiana Avenue, NW |
|   | Washington, D.C. 20001-2113 |
| 3 | Telephone:  (202) 879-3837 |
|   | Email:    rsmedsker@jonesday.com |
| 4 |   |
|   | *Admitted *pro hac vice* |
| 5 |   |
|   | John Laurens Wilkes (Tex. 24053548)* |
| 6 | **JONES DAY** |
|   | 717 Texas Street |
| 7 | Houston, Texas 77002 |
|   | Telephone:  (832) 239-3939 |
| 8 | Email:    jlwilkes@jonesday.com |
| 9 | *Admitted *pro hac vice* |
| 10 | Kamilla Mamedova (N.Y. 4661104)* |
|   | Jennifer K. Messina (N.Y. 4912440)* |
| 11 | **JONES DAY** |
|   | 222 East 41 Street |
| 12 | New York, New York 10017 |
|   | Telephone:  (212) 326-3498 |
| 13 | Email:    kmamedova@jonesday.com |
|   |          jkmessina@jonesday.com |
| 14 |   |
|   | *Admitted *pro hac vice* |
| 15 |   |
|   | *Attorneys for Plaintiffs Victor Parsons;* |
| 16 | *Shawn Jensen; Stephen Swartz; Dustin* |
|   | *Brislan; Sonia Rodriguez; Christina* |
| 17 | *Verduzco; Jackie Thomas; Jeremy Smith;* |
|   | *Robert Gamez; Maryanne Chisholm;* |
| 18 | *Desiree Licci; Joseph Hefner; Joshua* |
|   | *Polson; and Charlotte Wells, on behalf of* |
| 19 | *themselves and all others similarly situated* |
| 20 | **ARIZONA CENTER FOR DISABILITY LAW** |
| 21 |   |
| 22 | By: s/ Jennifer Alewelt (with permission) |
|   |    Jennifer Alewelt |
| 23 |    Asim Varma |
|   |    Sarah Kader |
| 24 |    5025 East Washington Street, Suite 202 |
|   |    Phoenix, Arizona 85034 |
| 25 |    Telephone:  (602) 274-6287 |
|   |    Email:    jalewelt@azdisabilitylaw.org |
| 26 |              avarma@azdisabilitylaw.org |
|   |              skader@azdisabilitylaw.org |
| 27 |   |
|   | *Attorneys for Plaintiff Arizona Center for* |
| 28 | *Disability Law* |

**CERTIFICATION OF ATTEMPT TO RESOLVE THE DISCOVERY DISPUTE**

I certify that plaintiffs have made sincere efforts as required by L.R.Civ. 7.2(j) to personally consult and resolve the disputed matter described herein. The parties have reached an impasse.

 s/ Alison Hardy
Alison Hardy
*Attorney for Prisoner Plaintiffs*

# **CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2012, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Assistant Arizona Attorney General
Michael.Gottfried@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

*Attorneys for Defendants*

☒    I hereby certify that on October 15, 2012, I served the attached document by first class mail on Judge Neil V. Wake, United States District Court of Arizona, 401 West Washington Street, Phoenix, Arizona 85003-2118.

                 s/ S. Neilson

LEGAL24896605.1