1   Arizona Attorney General Thomas C. Horne
    Office of the Attorney General
2   Michael E. Gottfried, Bar No. 010623
    Assistant Attorney General
3   1275 W. Washington Street
    Phoenix, Arizona 85007-2926
4   Telephone: (602) 542-4951
    Fax: (602) 542-7670
5   Michael.Gottfried@azag.gov

6   Daniel P. Struck, Bar No. 012377
    Kathleen L. Wieneke, Bar No. 011139
7   Rachel Love, Bar No. 019881
    Timothy J. Bojanowski, Bar No. 22126
8   Nicholas D. Acedo, Bar No. 021644
    Courtney R. Cloman, Bar No. 023155
9   Ashlee B. Fletcher, Bar No. 028874
    Anne M. Orcutt, Bar No. 029387
10  STRUCK WIENEKE & LOVE, P.L.C.
    3100 West Ray Road, Suite 300
11  Chandler, Arizona  85226
    Telephone:  (480) 420-1600
12  Fax:  (480) 420-1696
    dstruck@swlfirm.com
13  kwieneke@swlfirm.com
    rlove@swlfirm.com
14  tbojanowski@swlfirm.com
    nacedo@swlfirm.com
15  ccloman@swlfirm.com
    afletcher@swlfirm.com
16  aorcutt@swlfirm.com
    *Attorneys for Defendants*

17                 **UNITED STATES DISTRICT COURT**

18                      **DISTRICT OF ARIZONA**

19  Victor Parsons; Shawn Jensen; Stephen          NO. 2:12-cv-00601-NVW
    Swartz; Dustin Brislan; Sonia Rodriguez;
20  Christina Verduzco; Jackie Thomas; Jeremy      **DEFENDANTS' MOTION
    Smith; Robert Gamez; Maryanne Chisholm;        REGARDING THIRD JOINT
21  Desiree Licci; Joseph Hefner; Joshua Polson;   NOTICE OF DISCOVERY
    and Charlotte Wells, on behalf of themselves   DISPUTE (DKT #156)**
22  and all others similarly situated; and Arizona
    Center for Disability Law,
23
                                   Plaintiffs,
24
                   v.
25
    Charles Ryan, Director, Arizona Department
26  of Corrections; and Richard Pratt, Interim
    Division Director, Division of Health Services,
27  Arizona Department of Corrections, in their
    official capacities,
28                                 Defendants.

Pursuant to the Court's October 4, 2012 Order allowing a formal discovery motion (Dkt #170), Defendants Charles Ryan and Richard Pratt submit this Motion in support of their position detailed in the Third Joint Notice of Discovery Dispute (Dkt #156).  This Motion is supported by the following Memorandum of Points and Authorities and the Court's record in this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    BACKGROUND**

Plaintiffs have sought through discovery "all documents regarding death records" of inmates who have died while in the custody of the Arizona Department of Corrections (ADC). Plaintiffs define "documents regarding death records" as "any document regarding the death of a prisoner, including audits, reviews, studies, interview notes, videos, audio-recordings, external investigations or internal investigations." As used by ADC, the term "death record" encompasses several types of records, including medical records and mortality review reports prepared by ADC physicians.  At issue in the Third Joint Discovery Dispute are the mortality reviews.[1]

In their discovery request for death records, Plaintiffs did not specify any time limits.   However, counsel for Plaintiffs have explained that if no timeframe is specified in a discovery request, Defendants should produce documents responsive to that request from January 1, 2011 to the present.  *See* Ex. A at 2.

During his September 19, 2012 deposition, Plaintiffs questioned Dr. Richard Rowe regarding mortality reviews.  Dr. Rowe testified that he is "still working on 2011" mortality reviews and that no reviews have been completed for 2012.  *See* Ex. B at 93:1-13.  Dr. Rowe also testified that mortality reviews are "an ongoing process." Id. at 76:19-22.

---

[1] There is no longer a dispute regarding the medical records of the deceased inmates.  As noted in Defendants Notice re First Discovery Dispute (Doc. #179) filed with the Court on October 12, 2012, Defendants have agreed to produce medical records of inmates who have died since January 1, 2011 to Plaintiffs pursuant to the Protective Order.

## II.     LAW AND ARGUMENT

The question before this Court is whether to recognize a peer review privilege in this litigation to preclude the disclosure of mortality reviews by ADC physicians.

### A.     This Court should exercise its discretion to recognize a peer review privilege

All states, including Arizona, have granted statutory protection to peer reviews of patient care.  *See Adkins v. Christie*, 488 F.3d 1324, 1328 (11th Cir. 2007); *Spencer Sav. Bank SLA v. Excell Mortg. Corp.*, 960 F.Supp. 835 (D.N.J. 1997) (collecting cases).  Arizona recognizes a peer review privilege in state court, which protects peer review of "the professional practices within the hospital or center for the purposes of reducing morbidity and mortality and the improvement of the care of patients provided in the institution."  *See* A.R.S. §§ 36–445, –445.01.  Although Plaintiffs elected to file this case in federal court, Rule 501, Fed. R. Evid., provides that in cases in which federal law governs, privileges "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

While the Ninth Circuit did not recognize a medical peer review privilege in *Agster v. Maricopa Cnty*, 422 F.3d 836, 839 (9th Cir. 2005), the Supreme Court has noted that "Rule 501 manifests a congressional desire 'not to freeze the law of privilege, but rather to provide the courts with flexibility to develop rules of privilege on a case-by-case basis."  *Univ of Penn. v. E.E.O.C.*, 493 U.S. 182, 189 (1990) (quoting *Trammel v. U.S.*, 445 U.S. 40, 47 (1980)).  A court may create an evidentiary privilege if it "promotes sufficiently important interests to outweigh the need for probative evidence[.]"  *Trammel*, 445 U.S. at 51.  When a party "seeks to assert a privilege not existent in the common law but enacted by the (state) legislature based on unique considerations of government policy," courts must "balance[e] the policies behind the privilege with the policies favoring disclosure."  *ACLU v. Finch*, 638 F.2d 1336, 1343 (5th Cir. 1981).  A district court should consider four factors in determining whether to create an evidentiary

3

privilege: "(1) the needs of the public good, (2) whether the privilege is rooted in the imperative need for confidence and trust, (3) the evidentiary benefit of the denial of the privilege, and (4) consensus among the states." *Adkins*, 488 F.3d at 1328 (citing *Jaffee v. Redmond*, 518 U.S. 1, 10-16 (1997)).

### 1.     Recognizing a privilege would promote the public good

The first factor weighs in favor of recognizing a peer review privilege in this case.  The purpose of mortality reviews is to improve patient outcomes and reduce morbidity and mortality.  If a privilege is not recognized in federal court, there will be a significant chilling effect on a provider's willingness to candidly attribute fault to a colleague or to suggest that the particular procedures employed caused the death.  Additionally, a physician will likely be hesitant to suggest improvements that would necessarily implicate shortcomings in the prior care or process.  Thus, absent a privilege, the utility of the mortality review process in improving inmate medical care and thereby reducing morbidity and mortality will be seriously undermined.

### 2.     The privilege promotes confidence and trust

Two considerations are of particular importance here.  First, Plaintiffs seek confidential medical information regarding deceased inmates who are not parties to this litigation without making any effort to contact or obtain releases from the next of kin of those inmates.  The next of kin of deceased inmates should be entitled to a certain level of confidence that the privacy of their deceased family member's confidential medical information, including that found in mortality reviews, is protected from public disclosure and scrutiny.  Recognizing the privilege in this litigation would preserve these privacy interests.

Second, recognizing a privilege as to the mortality reviews would engender confidence and trust in the quality improvement process within ADC.  In performing mortality reviews, physicians rely on the protection of the state statutory privilege.  If those involved in the mortality review process cannot trust that their opinions and recommendations will remain confidential, they may not provide the candid information

4

necessary to reduce morbidity and mortality through improvements in the quality of inmate medical care. Rather than a critical tool to improve inmate medical care and outcomes, mortality reviews will become nothing more than a hollow exercise.

3. Denying the privilege offers little evidentiary benefit if any

There is little to no evidentiary benefit in denying the privilege in this case. Plaintiffs rely on *Agster* in arguing that no peer review privilege should protect the mortality reviews from disclosure, but that case is distinguishable. In *Agster*, the parents and representative of the estate of a deceased inmate brought an action against County officials and the County for his death while in the custody of the County jail. 422 F.3d at 837. *Agster* was a wrongful death action, and to recover, the plaintiffs were required to prove that the County caused Agster's death. By contrast, in this case Plaintiffs seek the medical records of approximately 40 deceased inmates. None of the 14 named Plaintiffs in this litigation are deceased, so unlike in *Agster*, the records are not necessary or even relevant to proving Plaintiffs' own claims. In this action for prospective injunctive relief brought under 42 U.S.C. § 1983, Plaintiffs must prove that Defendants are deliberately indifferent to the serious medical needs of the 14 named Plaintiffs and that such deliberate indifference has caused actual injury to Plaintiffs. *See Lewis v. Casey*, 518 U.S. 343 (1996) (in an action seeking injunctive relief, the only relevant constitutional violations are those suffered by the *named* plaintiffs, who "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").

Moreover, the mortality reviews are not necessary to assess whether the medical care the deceased ADC inmates received caused or contributed to their deaths. Plaintiffs can have their own experts review the medical records of the deceased inmates, which Defendants are providing, and with those they will be able to assess the adequacy of the care provided and may opine as to whether the care caused the deaths.

In addition, even if the Court should determine that policy and privacy considerations do not weigh in favor of protecting the mortality reviews, no mortality

1   reviews of deaths occurring since the filing of the Complaint have been conducted.  In an

2   action, such as this one, for prospective injunctive relief, the operative timeframe is the

3   filing of the Complaint.  *See Casey v. Lewis*, 834 F.Supp. 1477, 1546 (D. Ariz. 1993)

4   (noting that the constitutionality of defendants' medical and dental care systems is

5   assessed at the time of the filing of the complaint and through trial).  Even if mortality

6   reviews of deaths that occurred prior to the filing of the Complaint are relevant, Plaintiffs

7   have taken the position in discovery that "unless otherwise specified, the relevant period

8   of time from which responsive information is requested in [sic] from January 1, 2011

9   through the time of the period."  *See* Ex. A at 2.  As Dr. Richard Rowe testified at his

10  deposition, many of the mortality reviews for inmate deaths occurring in 2011 have not

11  yet been completed, and no mortality reviews have been done for deaths occurring in

12  2012.  *See* Ex. B at 93:1-13.  Thus, Plaintiffs would gain little to no evidentiary benefit if

13  a peer review privilege is denied.

14          4.      Recognizing a privilege is consistent with legislation in every state

15          The fourth factor weighs heavily in favor of recognizing a peer review

16  privilege in this case, as the peer review privilege is recognized by legislation in every

17  state.  *See Adkins*, 488 F.3d at 1330.  The "existence of a consensus among the States

18  indicates that 'reason and experience' support recognition of the privilege." *Jaffee*, 518

19  U.S. at 13.

20          In sum, all four factors weigh in favor of this Court exercising its discretion

21  to recognize a peer review privilege in this litigation as to mortality reviews.

22      **B.    Attorney's Fees**

23          Rule 37(a)(5)(A), Fed. R. Civ. P., provides that if a motion for an order

24  compelling disclosure or discovery is granted, "the court must, after giving an opportunity

25  to be heard, require the party . . . whose conduct necessitated the motion, the party or

26  attorney advising that conduct, or both to pay the movant's reasonable expenses incurred

27  in making the motion, including attorney's fees."  However, the court must not order the

28  payment of expenses and attorney's fees if: "(i) the movant filed the motion before

6

attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."  Rule 37(a)(5)(A), Fed. R. Civ. P.

Rule 501 gives courts "flexibility to develop rules of privilege on a case-by-case basis" if they promote "sufficiently important interests."  *Trammel*, 445 U.S. at 47, 51.  Even if the court declines to exercise its discretion to recognize a peer review privilege in this litigation, Defendants' objections to the disclosure of mortality reviews are substantially justified on the basis of compelling privacy and policy considerations. Moreover, Dr. Rowe testified that mortality review reports have not been completed for many inmate deaths in 2011 and that no mortality reviews have been completed for inmate deaths occurring in 2012.  Despite knowing this, Plaintiffs nonetheless continued to insist that the parties raise this issue to the Court's attention now. Accordingly, an award of expenses, including attorney's fees, are not appropriate against Defendants under Rule 37(a)(5)(A)(ii) or (iii), Fed. R. Civ. P.

**III.    CONCLUSION**

For the foregoing reasons, this Court should exercise its discretion and recognize a peer review privilege to protect from discovery in this action the mortality review reports of deceased inmates.  Because Defendants' objections to the disclosure of mortality review reports are substantially justified by important privacy and policy considerations, an award of expenses is not proper and would be unjust.

DATED this 15th day of October 2012.

STRUCK WIENEKE & LOVE, P.L.C.


By /s/ Daniel P. Struck
    Daniel P. Struck
    Kathleen L. Wieneke
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    Courtney R. Cloman
    Ashlee B. Fletcher
    Anne M. Orcutt
    STRUCK WIENEKE & LOVE, P.L.C.
    3100 West Ray Road, Suite 300
    Chandler, Arizona  85226

    Arizona Attorney General Thomas C. Horne
    Office of the Attorney General
    Michael E. Gottfried
    Assistant Attorney General
    1275 W. Washington Street
    Phoenix, Arizona 85007-2926

    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alison Hardy:    ahardy@prisonlaw.com

Amy Fettig:    afettig@npp-aclu.org

Caroline N. Mitchell:    cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

Corene T. Kendrick:    ckendrick@prisonlaw.com; edegraff@prisonlaw.com

Daniel Clayton Barr:    DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

Daniel Joseph Pochoda:    dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org

David Cyrus Fathi:    dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org

8

| | | |
|---|---|---|
| 1 | Donald Specter: | dspecter@prisonlaw.com |
| 2 | James Anthony Ahlers: | jahlers@perkinscoie.com; docketphx@perkinscoie.com; jroe@perkinscoie.com |
| 3 | | |
| | James Duff Lyall: | jlyall@acluaz.org; gtorres@acluaz.org |
| 4 | | |
| | Jennifer Ann Alewelt: | jalewelt@azdisabilitylaw.org; emyers@azdisabilitylaw.org; |
| 5 | | phxadmin@azdisabilitylaw.org |
| 6 | Jill Louise Ripke: | jripke@perkinscoie.com; jgable@perkinscoie.com |
| 7 | John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| 8 | Kelly Joyce Flood: | kflood@acluaz.org; gtorres@acluaz.org |
| 9 | Kirstin T. Eidenbach: | keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; |
| 10 | | docketphx@perkinscoie.com |
| | Matthew Benjamin de Mee: | mdumee@perkinscoie.com; cwendt@perkinscoie.com |
| 11 | | |
| | Michael Evan Gottfried: | Michael.gottfried@azag.gov; colleen.jordan@azag.gov; |
| 12 | | lucy.rand@azag.gov |
| 13 | Sara Norman: | snorman@prisonlaw.com |
| 14 | Sophia Calderon: | scalderon@jonesday.com; lwong@jonesday.com |
| 15 | Thomas Dean Ryerson: | tryerson@perkinscoie.com; docketphx@perkinscoie.com; rboen@perkinscoie.com |
| 16 | | |
| | Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; |
| 17 | | phxadmin@azdisabilitylaw.org |
| 18 | Sarah Rauh: | srauh@jonesday.com; treyes@jonesday.com |
| 19 | David C. Kiernan: | dkiernan@jonesday.com; lwong@jonesday.com |
| 20 | R. Scott Medsker: | rsmedsker@JonesDay.com |
| 21 | John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| 22 | Kamilla Mamedova: | kmamedova@jonesday.com |
| 23 | Jennifer K Messina: | jkmessina@jonesday.com |
| 24 | Sarah Eve Kader: | skader@azdisabilitylaw.org, mlauritzen@azdisabilitylaw.org |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

       I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ Daniel P. Struck
2698191