**EXHIBIT A**

JONES DAY

555 CALIFORNIA STREET, 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: +1.415.626.3939 • FACSIMILE: +1.415.875.5700

Direct Number: (415) 875-5712
cnmitchell@JonesDay.com

JP005615 August 7, 2012

VIA EMAIL & U.S. MAIL

Mr. Timothy J. Bojanowski
Struck Wieneke & Love
3100 W. Ray Road, Ste. 300
Chandler, AZ 85226

Re: *Parsons, et al. v. Ryan, et al.*

Dear Tim:

This letter memorializes our meet-and-confer on July 31 regarding Defendants' responses to Plaintiffs' discovery. As we discussed, this letter also proposes a timetable for Defendants' production of documents and information responsive to the discovery, keeping in the Court's November 2, 2012 deadline for filing for class certification. Additionally, we agreed that to the extent that you are refusing to produce any category of documents, you would write a letter so stating and identifying what requests or interrogatories are at issue. Please send us that letter this week so we can ascertain whether there is disagreement that requires further meet-and-confer or escalation to the Court.

**A. July 31, 2012 Meet and Confer Regarding Discovery**

This letter and meet-and-confer only focused upon the discovery requests of the named Prisoner Plaintiffs, and not plaintiff Arizona Center for Disability Law.

**1. Answers to All Interrogatories**

- General Objections: You agreed to serve a supplemental response without general objections are to assert these objections in the specific Interrogatories to which they apply.

- First General Objection: You stated that your position that some of the sub-parts in the interrogatories exceeded the 25 per party requirement. You agreed to identify any requests you would refuse to respond to. We expect to escalate this issue to the Court, so please do this by the end of the week, so we can move this issue forward.



ALKHOBAR • ATLANTA • BEIJING • BOSTON • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DUBAI
DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • JEDDAH • LONDON • LOS ANGELES • MADRID
MEXICO CITY • MILAN • MOSCOW • MUNICH • NEW YORK • PARIS • PITTSBURGH • RIYADH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

- Third General Objection: I clarified that unless other specified, the relevant period of time for which responsive information is requested in January 1, 2011 through the time of the period. You agreed to this, and noted that to the extent some medical records go earlier than January 2011, you will still produce them in toto, which is what we are requesting.

- Fourth General Objection: You stated that you would specify which portions of the Interrogatories you claim call for a legal conclusion, and what you mean by information that is beyond "the scope of the Defendant," and provide a definition of that scope.

- Seventh General Objection: You clarified that you are not refusing to provide information after July 1, 2012. Rather, you stated that you and your clients will have to work with Wexford to produce responsive information.

- Deadlines for Providing Supplemental Information: You stated that you will provide information and documents as they are processed. I told you that we need firmness for the dates, and supplementation cannot be open-ended in light of the Court's briefing schedule. (See Part B below for Plaintiffs' proposed timeframe for the production of discovery).

- Additionally, we note that none of your interrogatories were verified. Please send verification for each of your interrogatory responses by August 10.

2. **Defendants' Responses to Swartz Interrogatories**

- No. 1: You stated that you would provide us with additional responsive information beyond D.O. 1103. You also agreed to confirm whether there have been any changes to the I policies and procedures since Wexford took over. I also made clear that we are interested not just in the written policies, but also the policies as practiced.

  The Request For Proposal ADOC 12-1105 for the privatization of health care services states in numerous places that the contractor must abide by ADC policies and procedures, see, e.g., part 2.6.6, ("The Contractor shall provide correctional health care treatment in accordance with all federal and state laws, rules and regulations, Department Orders, instructions, procedures, and Departmental Technical Manuals applicable to the delivery of correctional health care services.... All such laws, rules and regulations, current and/or as revised, are incorporated herein by reference and made a part of this Request for Proposal and

any resulting Contract.") In light of this statement, unless you tell us otherwise, we will operate under the presumption that all ADC health care policies are still in place.

- No. 2: You stated you are still investigating but will provide us with responsive information to this interrogatory.
- Nos. 4-6 (Affirmative Defenses 10-11, 18): You stated that these defenses may be invoked as to certain named plaintiffs after a review of their medical records. Our position is that you must identify specific incidents as to specific plaintiffs, pursuant to Federal Rule of Civil Procedure 33(d). Please do so by August 17.
- No. 7 (Aff. Def. 18): You stated that you would supplement the answer with more information regarding what standard of care Defendants owe to prisoners in their custody.
- No. 8 (Aff. Defs. 42, 43): You stated that you would supplement this response if you find additional cases to cite in support of this affirmative defense.

3. **Defendants' Responses to Jensen Interrogatories**

- Objection to the definition of "identify" as to prisoners: You stated that you must comply with confidentiality requirements of state law. Mr. Gottfried stated that as a practical matter, ADC does not keep this information. However, Counsel for ADC stated that indeed some parolees are supervised by ADC.

  Our position is that to the extent Defendants have information that is responsive, you need to provide it, and note with specificity which details you cannot provide pursuant to state law, as well as the relevant state law upon which you rely for not providing the information.

- Nos. 1-11 (supplementing responses): You said you expected to have additional information in the new two weeks, and stated that you would write us a letter detailing what information you are not going to produce, and the specific objection that goes with each request from which you are withholding responsive information.

4. **Defendants' Responses to Parsons Interrogatories**

- Objection to the definition of "identify": See above under # 3.

- Nos. 1-6, 7-11, 12-14 (supplementing responses): See above under # 3.

5. **Defendants' Responses to Parsons RFPs**

- General Objections: See above under # 1.

- General Objection 1: You stated that you would provide a privilege log for the specific documents which you are withholding on the basis of these claims, but that you do not anticipate much of the information being privileged.

- General Objection 2: You stated you would specify, what if any information is not being produced on the basis it is immaterial or irrelevant.

- General Objection 3, 5: You stated that once a protective order is in place, you would provide any documents being withheld subject to the objection that it is confidential, "financial trade," information, or "proprietary," if there are any such documents. Even if there are, they should be produced pursuant to a protective order, not withheld.

- General Objection 4: You stated that you are not currently withholding any documents based on the objection that the requests are overbroad, unduly vague, ambiguous, burdensome, oppressive, irrelevant, not material, and seek information unrelated to claims in Plaintiffs' complaint. If that changes as you continue to review documents, please let us know what categories of documents are affected so we can assess whether further action is required..

- General Objection 6: You stated that information stored electronically will be produced electronically, but that you will not code any information. You stated that you believe paper documents will also be produced electronically. For any documents produced electronically, to the extent metadata exists, you are required to produce it. We understand your position to be that you will not create metadata just for us, not that you are refusing to produce existing metadata. If we have misunderstood in any way, please let us know immediately.

- All requests: See above under # 3 regarding supplementing responses.

- Request No. 32 (all complaints regarding health care directives): I clarified that "complaints" meant all complaints received, not just lawsuits.

- Request No. 33 (all health care complaints for which ADC paid money to a prisoner or prisoner's estate): You stated that you did not know if a printout or any other compilation exists listing all lawsuits against ADC. I reiterated our position that referring us to "public records" is not a proper response, and you need to provide us with responsive information if it is in the possession, custody or control of the ADC.

- RFP Responses Raising Security Concerns: You stated that state law regarding confidential informants or information that could lead to injury cannot be revealed. I request that you specify how this concern impacts particular requests. Furthermore, to the extent that there is such a concern, a protective order should address it and allow for production.

- Request No. 44 (budget documents): You stated that you would provide us with all documents that are in the possession of ADC and are responsive to the request.

- Request Nos. 49-50: I clarified that we were requesting not just grievances, but also anything done by ADC to analyze the grievances and complaints about conditions and health care in isolation.

- Request No. 57: You stated you were not sure why the response invoked privilege, and that it should most likely be removed. Please let us know if there is any privilege you intend to assert.

**B. Plaintiffs' Proposal for Discovery Production Through Class Certification**

Given the upcoming deadline for class certification, we need either to reach agreement on a schedule for the production of Defendants' documents or we need to seek the Court's assistance in providing deadlines. Below is our proposal, we would like to schedule a call for Wednesday or Thursday to determine if we can reach agreement, we will call you to schedule it..

**1. Prioritizing and Narrowing the Discovery Requests.**

To facilitate production of the information needed for class certification, we are identifying below our top priority requests.

- Parsons RFPDs: 2, 4, 6, 7, 9, 10, 16, 21, 24, 33, 35, 37, 39, 40, 48, 49, 51, 53, 54 (can narrow to exclude unit logs and other documents showing exercise actually

provided), 55, 57 (can narrow to exclude unit logs and other documents showing food actually provided), 62.

- Parsons Interrogatories: 8, 10, 15

- Jensen Interrogatories: 1, 5, 7

We propose that you complete production of the documents and information called for by this discovery on the following schedule:

- **No Later Than (NLT) August 27, 2012**

**Request No. 40**: All documents regarding death records.

- **NLT September 4, 2012**

**Parsons RFPD:**
**Request No. 16**: All minutes from meetings attended by ADC health care staff, and any other meetings at which the health care of prisoners, health care policies and procedures, health care staffing, or any issue related to health care was discussed.
**Request No. 21**: Documents sufficient to show ADC's health care staffing plan at each facility, including but not limited to...[see original request]
**Request No. 53**: Documents sufficient to show the duration of confinement in isolation, including but not limited to the mean, median, and maximum length of confinement in isolation for ADC prisoners.
**Request No. 55**: All documents regarding exhausted grievances regarding health care or isolation from Jan. 1, 2010 through the response date.
**Request No. 62**: All documents regarding health care shortages.

**Parsons Interrogatories:**
**No. 8**: Describe all circumstances under which a health care clinician's or mid-level practitioner's prescription or treatment plan can be cancelled, overridden, or otherwise not carried out in the time period after Wexford Health Sources Incorporated's obligations under its contract regarding ADC began.
**No. 15**: Identify all prisoners who died while in the custody of the ADC between January 1, 2007 and the response date, and specify the facility and county in which the prisoner died.

**Jensen Interrogatories:**
**No. 5**: Describe each referral for health care in which the prisoner did not receive the referred care within sixty days of the referral.

- **NLT September 14, 2012**

**Parsons RFPD:**
**Request No. 7**: All policies and procedures regarding the extraction of a prisoner's tooth or teeth, including but not limited to alternative treatments presented to the prisoner and the consequences of a prisoner's selection of alternative treatment.
**Request No. 24**: All documents regarding complaints, from 2009 through the response date, regarding health care staffing or the staffing schedule at each facility, including but not limited to communications from ADC personnel that refer to or comment on any aspect of health care staffing.
**Request No. 49**: All documents regarding criticisms; critiques; or identification of possible, perceived, or actual deficiencies in conditions of confinement for ADC prisoners in isolation from Jan. 1, 2009 to the response date.
**Request No. 51**: All documents regarding internal investigations or external investigations regarding conditions of confinement for prisoners in isolation from Jan. 1, 2009 to the present.
**Request No. 54**: All documents regarding the provision of outdoor exercise to prisoners in isolation (can be narrowed to exclude unit logs and other documents showing exercise actually provided, see above Part B.1).
**Request No. 57**: All documents regarding the provision of food to prisoners in isolation (can be narrowed to exclude unit logs and other documents showing food actually provided, see above Part B.1).

**Parsons Interrogatories:**
**No. 10**: Describe under what circumstances a prescription or treatment plan issued by any locum tenens contractor, specialty contractor, or other external provider of health care can be cancelled, overridden, or otherwise not carried out in the time period after Wexford Health Sources Incorporated's obligations under its contract regarding ADC began.

**Jensen Interrogatories:**
**No. 1**: Identify each prisoner sent or referred to an emergency room or urgent care facility for emergency health care services between Jan. 1, 2011 and the response date, including the name of the facility where the prisoner was sent, the date the prisoner was sent to the emergency room or urgent care facility, and the primary reason the prisoner was sent to the emergency room or urgent care facility.

- **NLT October 1, 2012**

**Parsons RFPD:**
**Request No. 2:** All ADC policies and procedures in draft form or that have not been approved or implemented regarding health care from Jan. 1, 2011 through the response date.
**Request No. 4**: All policies and procedures regarding the provision of medications to ADC prisoners, including both formulary and non-formulary medications.
**Request No. 6**: All policies and procedures regarding quality assurance of health care, including but not limited to required reports, meetings, in-service trainings, audits, evaluations, or peer review systems.
**Request No. 9**: All policies and procedures regarding confinement of prisoners in isolation, including but not limited to placement in, retention in, or removal from isolation, conditions of confinement, diet, and outdoor exercise while in isolation.
**Request No. 10**: All policies and procedures regarding HNR policies and procedures, other than documents specific to specific prisoners, including but not limited to documents regarding actual timeframes for processing and the necessary qualifications of personnel, including health care staff, responsible for processing HNRs from prisoners.
**Request No. 33**: Documents sufficient to show the name of the prisoner and counsel, if any, regarding every health care complaint for which the ADC, on behalf of itself or an employee, paid money to a prisoner or a prisoner's estate or heirs to resolve. Where the complaint was filed in a court, include documents sufficient to show the court in which it was filed and the case number.
**Request No. 37**: All documents regarding criticisms; critiques; or identification of possible, perceived, or actual deficiencies in health care made by current or former health care staff and other ADC staff, current or former locum tenens contractors, or current or former specialty contractors made from Jan. 1, 2009 to the response date.

**Request No. 39**: All documents regarding the denial or delay of transportation for referred prisoners to and from appointments with the health care providers to which they were referred.
**Request No. 48**: All documents regarding requests for funding made by the ADC to the Governor or legislature of Arizona from Jan. 1, 2007 to the response date.

**Jensen Interrogatories:**
**No. 7**: Identify all health care staff, correctional staff, locum tenens contractors, and specialty contractors who have been investigated or subject to discipline by ADC or by their respective state licensing board, between January 1, 2011 and the response date, for any behavior regarding the provision, or lack thereof, of health care to prisoners, or regarding the conditions of confinement of prisoners in isolation.

Please let us know if you have any questions about our proposal. Otherwise, we will plan to review with you later this week in the meet-and-confer.

Sincerely yours,

Caroline N. Mitchell

Caroline N. Mitchell