# EXHIBIT 1

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| Victor Parsons, et al. | ) |
|---|---|
| *Plaintiff* | ) |
| v. | ) Civil Action No. CV 12-00601-PHX-NVW (MEA) |
| Charles Ryan, et al. | ) |
| | ) (If the action is pending in another district, state where: |
| *Defendant* | ) ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Greg Fizer, Deputy Warden, Central Unit, ADC Florence
c/o Struck Wieneke & Love, 3100 West Ray Road, Suite 300, Chandler, Arizona 85226

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Perkins Coie LLP, 2901 N. Central Avenue, Ste. 2000, Phoenix, AZ 85012-2788 | Date and Time: 10/29/2012 9:00 am |
|---|---|

The deposition will be recorded by this method: __stenographic and real time transcription__

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:
See Attachment A attached hereto for documents requested by Friday, October 26, 2012, at 9:00 a.m., to be delivered to the offices of Perkins Coie LLP, 2901 North Central Avenue, Phoenix, AZ 85012

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: __10/17/2012__

*CLERK OF COURT*
OR
_____          _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* __Victor Parsons and the other named prisoner plaintiffs and Arizona Center for Disability Law__, who issues or requests this subpoena, are:
John H. Gray, Perkins Coie LLP, 2901 North Central Avenue, Phoenix, AZ 85012, 602-351-8000; Jennifer Alewelt, Arizona Center for Disability Law, 5025 East Washington Street, Suite 202, Phoenix, AZ 85034, 602-274-6287

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. CV 12-00601-PHX-NVW (MEA)

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* Greg Fizer

was received by me on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

### Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## ATTACHMENT A

TO: **Greg Fizer**

**c/o Struck, Wieneke & Love**

**3100 West Ray Road, Suite 300**

**Chandler, Arizona 85226**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Plaintiffs command Greg Fizer to appear and testify at deposition in this civil action at 9:00 am on October 29 at the law offices of Perkins Coie LLP, 2901 N. Central Avenue, Ste. 2000, Phoenix, AZ 85012-2788. Plaintiffs intend to record the testimony stenographically using instaneous (or "real time") transcription, which provides visual display of the testimony.

PLEASE TAKE FURTHER NOTICE that pursuant to Federal Rule of Civil Procedure 45, Greg Fizer is required to produce the following documents for inspection and copying at Perkins Coie LLP, 2901 N. Central Avenue, Ste. 2000, Phoenix, AZ 85012-2788 on or before October 26, 2012 at 9:00 am.

## **DEFINITIONS**

For the purposes of this request for document the following definitions shall apply.

1. "ADC" means the Arizona Department of Corrections, including all its subdivisions, agents, employees, contractors, and attorneys.

2. "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including a Blackberry or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X and any other

1 meeting software and share point servers, and oral contact such as face-to-face
2 discussions or meetings, telephone conversations, and voice mail messages.

3   3. "CONDITIONS OF CONFINEMENT" means all circumstances
4 REGARDING the state of being imprisoned.

5   4. "CORRECTIONAL STAFF" means custody staff employed or paid by
6 the ADC to serve in a security or operational capacity.

7   5. "DESCRIBE" and "DESCRIPTION" means to provide all available
8 INFORMATION.

9   6. "DISCIPLINE" means any formal or informal discipline, punishment,
10 reprimand, warning, or comment given to any person as a result of substandard or
11 unacceptable conduct.

12   7. "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule
13 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or
14 record of every type and DESCRIPTION and every tangible thing that is or has been in
15 YOUR possession, custody, or control, and to which YOU have access, or of which
16 YOU have knowledge, including, but not limited to, COMMUNICATIONS, newspaper
17 articles, magazine articles, news articles, correspondence, letters, contracts, files,
18 electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies,
19 publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements,
20 direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks,
21 diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer
22 records, voice recordings, maps, reports, surveys, MINUTES, data compilations, and
23 statistical compilations, regardless of whether a particular DOCUMENT is privileged or
24 confidential, and regardless of the form of storage (including, but not limited to, paper,
25 microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD,
26 optical disk, or electronic storage device). "DOCUMENT" and "DOCUMENTS"
27 includes, but is not limited to, all DOCUMENTS generated by or maintained in the
28 Director's Project Tracking System, official ADC papers, and the ADC's intranet.

8.  "HEALTH CARE" means the provision of care, including adequate diet, to address the mental health, medical, or dental needs of a PRISONER, whether those needs arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic or preventive purposes.

9.  "HEALTH CARE CLINICIANS" means persons independently licensed to provide HEALTH CARE to PRISONERS at the ADC facilities, including but not limited to M.D., D.O., D.D.S., and Ph.D. credentialed staff.

10. "HEALTH CARE DIRECTIVES" means DOCUMENTS REGARDING advance medical care directives, living wills, personal directives, advance directives, or instructions of any kind in which individuals specify what actions should or should not be taken for their HEALTH CARE in the event they are no longer able to make decisions due to illness, injury, or incapacity

11. "HEALTH CARE RECORDS" means any and all documents maintained and recorded, whether in electronic or paper format, for individual PRISONERS regarding the HEALTH CARE they are receiving or requesting.

12. "HEALTH CARE SHORTAGES" means any deficiencies involving HEALTH CARE, including but not limited to a lack of or insufficient number of medicines, drugs, medical supplies, medical equipment, transportation, or HEALTH CARE STAFFING.

13. "HEALTH CARE STAFF" means all staff employed or paid by the ADC, or paid indirectly by the ADC through the HEALTH CARE PRIVATIZATION CONTRACT with WEXFORD who are responsible for providing HEALTH CARE to ADC PRISONERS, including but not limited to HEALTH CARE CLINICIANS, MID-LEVEL PRACTITIONERS, ENTRY-LEVEL PRACTITIONERS, PHARMACISTS, and administrative and support staff.

14. "HEALTH CARE STAFFING" means the provision of HEALTH CARE STAFF to provide HEALTH CARE.

15. "HEALTH GRIEVANCES" means requests for HEALTH CARE or COMPLAINTS REGARDING the need for, adequacy of, quality of, or timing of HEALTH CARE made by PRISONERS to the ADC, including but not limited to the submission of Health Needs Request ("HNR") forms and the exhaustion of claims stated therein.

16. "HNR POLICIES AND PROCEDURES" means policies, procedures, or practices, whether written or established through custom or use, REGARDING HNR submissions by PRISONERS, including but not limited to the distribution, disposal, processing, rejection of, responses to, provision of HEALTH CARE pursuant to, and exhaustion of claims raised by such submissions. This includes policies, procedures, or practices that are in draft form and have not been approved and/or implemented.

17. "HOSPITALIZED PRISONER" means any PRISONER who is sent to a hospital or other off-site medical or mental health facility, or who is admitted to an on-site hospital, while in the custody of the ADC.

18. "HOURS OF OPERATION" means the time periods during which a facility, unit, or other ADC facility housing PRISONERS is able to provide HEALTH CARE to PRISONERS by on-site HEALTH CARE STAFF.

19. "IDENTIFY" and "IDENTIFICATION" with respect to (a) a PRISONER or former PRISONER, means to state the PRISONER'S full name, ADC number, date of birth, current or most recent mental health score (MH-1 through MH-5), medical score (M-1 through M-5), public risk score, institutional risk score, and current housing location (if still in ADC custody) or last known address and telephone number (if no longer in ADC custody); (b) a person other than a PRISONER or former PRISONER, means to state the person's full name and specify whether or not the person is or has been an ADC STAFF member, and if so, to state the staff member's position title, facility location, work schedule, responsibilities, date ADC employment began, date ADC employment terminated, dates of any changes in position titles or responsibilities, DESCRIPTIONS of any changes in position titles or responsibilities and, if the person is

not currently employed by ADC, the person's last known address and telephone number; and (c) a third-party contractor or entity means to state the name of the contractor or entity, the type of entity (e.g., corporation, partnership, etc.); its address and telephone number; and any persons YOU are aware of who acted on behalf of that contractor or entity with respect to the events at issue in the discovery request; (d) IDENTIFY in any other context means to provide as much INFORMATION REGARDING the thing to be identified as in YOUR possession.

20. "INFORMATION" means any knowledge YOU have, any evidence of any type, any facts of which YOU are aware and any inferences or speculation of which YOU are aware, all regardless of the source. When INFORMATION YOU provide is based solely on inference or speculation, specifically so state in YOUR response. When providing INFORMATION, provide the names of involved individuals, actions relevant to the requested INFORMATION, dates and times when known, locations, and any other knowledge YOU have about the subject of the discovery request. When asked to provide INFORMATION about one or more individuals, IDENTIFY the individual or individuals and provide any other INFORMATION YOU have about such person or persons.

21. "ISOLATION" means confinement in a cell for 22 hours or more each day; confinement in Eyman-Special Management Unit ("SMU") 1, Eyman-Browning Unit, Florence-Central Unit, Florence-Kasson Unit, or Perryville-Lumley Special Management Area ("SMA"); or confinement in a Complex Detention Unit ("CDU").

22. "MINUTES" means notes or any other recording reflecting the content of a meeting, whether written contemporaneously with or subsequent to the meeting.

23. "OUTDOOR EXERCISE" means periods during which PRISONERS are permitted to exercise in the outdoors.

24. "POLICIES AND PROCEDURES" means policies, procedures, criteria, or practices, whether written or established through custom or use, including but not limited to policy and procedure manuals, directors' orders, protocols, directives,

5

flowcharts, institution post orders, and any other DOCUMENTS designed to direct the actions of ADC personnel, ADC contractors, and/or PRISONERS.

25. "PRISONER" means a person incarcerated by the ADC.

26. "REFERRAL" means a recommendation that a PRISONER obtain HEALTH CARE at ADC or non ADC facilities, whether or not such HEALTH CARE is in fact ever provided.

27. "REFERRED CARE" means HEALTH CARE pursuant to a REFERRAL.

28. "REFERRED PRISONER" means a PRISONER who received a REFERRAL while in the legal custody of the ADC.

29. "REGARDING" or "REGARDED" to any given subject matter means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers to, relates to, responds to, states, summarizes, or is in any way relevant to the particular subject matter identified.

30. "REVIEWS" means examinations, assessments, evaluations, or investigations performed by or at the direction of ADC staff or officials.

31. "STAFFING SCHEDULE" means the days, hours, and/or shifts for which each member of the HEALTH CARE STAFF was scheduled to work, including overtime, on call and call-in coverage.

32. "SUFFICIENT TO SHOW" means demonstrating or evidencing complete INFORMATION on the requested topic, without the need to produce every DOCUMENT REGARDING the topic.

33. "YOU," "YOUR," "YOURSELF," means Greg Fizer, his agents, representatives, contractors, and employees.

34. "WEXFORD" means Wexford Health Sources, Incorporated.

### INSTRUCTIONS

1. YOU are required to furnish all DOCUMENTS in YOUR possession,

custody, or control, including those DOCUMENTS that are in YOUR possession, custody, or control in the normal course of YOUR employment obligations, and those in the possession, custody or control of your (1) employer; (2) consultants; (3) attorneys; (4) representatives; (5) agents; or (6) any other person acting or purporting to act on YOUR behalf or at YOUR direction, whether doing so directly or at the direction of YOUR subordinates.  Possession, custody, or control includes DOCUMENTS stored in electronic form by third party service providers but accessible to YOU, including but not limited to email accounts, FTP servers, portable storage media such as USB drives, cloud storage services such as Dropbox or SharePoint , and online workspaces such as WebEx.

      2. All non-identical copies of every DOCUMENT whose production is sought shall be separately produced.

      3. Each request herein constitutes a request for DOCUMENTS in their entirety, with all enclosures and attachments, and without abbreviation, redaction, or expurgation. DOCUMENTS attached to each other, including but not limited to, by staple, clip, tape, email attachment, or "Post-It" note, should not be separated, although any page on which a Post-It note covers or obscures text on the DOCUMENT should be produced both with and without the Post-It note.  The production must also include, where applicable, any index tabs, file dividers, designations, binder spine labels, or other similar information as to the source and/or location of the DOCUMENTS.

      4. YOU shall produce any and all drafts and copies of each DOCUMENT that are responsive to any request, including but not limited to copies containing handwritten notes, markings, stamps, or interlineations.  The author(s) of all hand-written notes should be identified.

      5. YOU shall produce all responsive DOCUMENTS as they have been kept in the ordinary course of business.

      6. Responsive DOCUMENTS that exist only in paper form shall be organized as

they have been kept in the ordinary course of business and shall be produced according to the following protocol:

    a.    Paper DOCUMENTS shall be scanned and produced in TIFF image form at a resolution sufficient to enable the generation of searchable text using Optical Character Recognition ("OCR").

7. Responsive DOCUMENTS that exist in electronic form, even if such DOCUMENTS also exist in paper form, shall be produced in electronic form according to the following protocol:

    a.    Electronic DOCUMENTS shall be produced electronically as single page, uniquely and sequentially numbered Group IV TIFF image files of not less than 300 dots per inch resolution, together with DOCUMENT level load files wherein the full text was extracted directly from the native file where possible.

    b.    For files produced in TIFF image form, each page of a produced DOCUMENT shall have a legible, unique production number electronically "burned" onto the TIFF image in such a manner that information from the source DOCUMENT is not obliterated, concealed, or interfered with, preferably in the lower right corner of the DOCUMENT. The production number shall contain at least six digits. There shall be no other legend or stamp placed on the DOCUMENT image, unless a DOCUMENT qualifies for confidential treatment pursuant to the terms of any protective order in this matter, or if the DOCUMENT requires redaction. In the case of confidential materials as defined by any protective order in this matter, any applicable designation may be "burned" onto the DOCUMENT's image at a location that does not obliterate or obscure any information from the source DOCUMENT, preferably in the lower left corner.

    c.    Each DOCUMENT image file shall be named with the unique production number of the page of the DOCUMENT in question, followed by the extension ".tif". File names should not be more than 20 characters long or contain spaces.

    d.    For files produced in TIFF image format, each page of a DOCUMENT shall be electronically saved as an image file. If a DOCUMENT is more than one page, the unitization of the DOCUMENT and any attachments and/or affixed notes shall be maintained as they existed in the original DOCUMENT.

    e.    TIFF images shall be accompanied by a standard load file containing the metadata and other fields identified in Paragraph 7(j) of these Instructions, below. The load file shall be produced in one of the following industry-standard formats: (1) Concordance delimited file (".dat"); (2) comma-separated value file (".csv"); or (3) TAB delimited file. TIFF images shall also be accompanied by either an Opticon delimited cross-reference file (".opt") or IPRO View LFP comma-delimited file showing DOCUMENT breaks and appropriate DOCUMENT unitization.

f.  In addition to TIFF images, each production of electronic DOCUMENTS shall include searchable text files corresponding to the TIFF images for each DOCUMENT. The full text of each native electronic DOCUMENT, excluding redacted DOCUMENTS, shall be extracted directly from the native file and produced in a DOCUMENT-level related text file (the "Extracted Text"). The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with the unique production number of the first page of the corresponding TIFF DOCUMENT followed by the extension ".txt". YOU shall also perform OCR on certain types of non-text based static image ESI, such as native PDF image files, and produce the corresponding DOCUMENT-level related text files. Searchable text files shall be generated from Extracted Text where available.

g.  DOCUMENTS shall be produced on optical media (CD or DVD) or external hard drives or similar, readily accessible electronic media (the "Production Media"). Each piece of Production Media shall IDENTIFY a production number corresponding to the party and production with which the DOCUMENTS on the Production Media are associated (e.g., "RYAN 001"), as well as the volume of the material in that production (e.g., "-001", "-002"). For example, if the first production wave by YOU comprises DOCUMENT images on three hard drives, YOU shall label each hard drive in the following manner: "RYAN 001-001", "RYAN 001-002", and "RYAN 001-003." The face of each piece of Production Media shall also IDENTIFY: (1) the production date; and (2) the production number range of the materials contained on the Production Media.

h.  Presentation DOCUMENTS (such as Microsoft PowerPoint DOCUMENTS) shall be produced with one slide per page together with any "Speaker's Notes" or similar pages appended to, or otherwise associated with, each slide. Presentation DOCUMENTS shall also be produced according to all other applicable Instructions set forth in this set of requests.

i.  Unless redaction is required, spreadsheet DOCUMENTS (such as Microsoft Excel DOCUMENTS) shall be produced in native format, together with a single page TIFF placeholder bearing the legend "Native File Produced" and load files containing the agreed upon metadata, extracted text, production numbers and any applicable confidentiality labels as described above. If redaction is required, then spreadsheets shall be produced in TIFF image format as set forth above.

j.  For all DOCUMENTS for which metadata exists, the load files described above shall be produced including the following fields:

| Fields for all DOCUMENTS | Description |
| --- | --- |
| BegProd | Beginning production number assigned to each DOCUMENT |
| EndProd | Ending production number assigned to each DOCUMENT |
| BegAttach | Beginning production number assigned to the group of DOCUMENTS to which |

9

|  | |
|---|---|
|  | the parent DOCUMENT and any attachment DOCUMENTS are associated |
| EndAttach | Ending production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| Custodian | The name of the person or source from which the DOCUMENT was obtained |
| FileName | Original file name |
| FilePath | Original file path |
| DocExt | DOCUMENT type as identified by metadata associated with the native DOCUMENT indicating the extension of the application that created the native DOCUMENT (e.g., .doc, .ppt, etc.) |
| HashValue | The unique identifying value assigned to a DOCUMENT based on hash coding algorithms |
| Author | The person or source that originated the DOCUMENT |
| DateCreated | Date that the DOCUMENT was created (as reflected by metadata) |
| LastModifiedDate | Date that the file was last modified (as reflected by metadata) |
| FullText | The path or link to the searchable Extracted or OCR text for a DOCUMENT |
| NativeFile | The path or link to a processed and produced native file, to the extent the production contains native files |
| Confidentiality | The confidentiality designation for the DOCUMENT, as defined by any protective order in this matter |
| **Additional Fields for Email** | **Description** |
| To | All information contained in the "To" field of an email |
| From | All information contained in the "From" field of an email |
| CC | All information contained in the "CC" field of an email |
| BCC | All information contained in the "BCC" field of an email |

| | |
|---|---|
| DateSent | Date the email was sent, including month, day and year |
| TimeSent | Time the email was sent, including hour, minute, second and time zone. To the extent this information is already included in the DateSent field in the metadata, YOU need not parse TimeSent as a separate field. |
| DateReceived | Date the email was received, including the month, day and year |
| TimeReceived | Time the email was received, including hour, minute, second and time zone. To the extent this information is already included in the DateReceived field in the metadata, YOU need not parse TimeReceived as a separate field. |
| Subject | Subject or "Re:" line, as stated in the email |

8. If with respect to any request there are no responsive DOCUMENTS, so state in writing.

9. The following rules of construction shall be applied herein: (a) the words "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope ; (b) the use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural; (c) the words "any," "all," "each" and "every" all include any, all, each, and every and shall be understood in either their most or least inclusive sense as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; and (d) the use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the DOCUMENT requests all responses that might otherwise be construed to be outside of their scope.

10. If YOU object to a portion or an aspect of a request, state the grounds for your

11

objection with specificity and respond to the remainder of the DOCUMENT request. If any DOCUMENTS, or portion thereof, are withheld because YOU claim that such information is protected under the attorney-client privilege, work product doctrine, or other privilege or doctrine, YOU are required to provide a privilege log setting forth the specific basis for the claim of privilege or protection and for each DOCUMENT provide the following:

    a.    the subject matter of the DOCUMENT;

    b.    the title, heading or caption of the DOCUMENT, if any;

    c.    the date appearing on the DOCUMENT or, if no date appears thereon, the date or approximate date on which the DOCUMENT was prepared;

    d.    the type of DOCUMENT (e.g., whether it is a letter, memorandum, MINUTES of meeting, etc.) and the number of pages of which it consists;

    e.    the identity of the person who signed the DOCUMENT or, if it was not signed, the person who prepared it;

    f.    the identity of each person to whom the DOCUMENT was addressed and the identity of each person to whom a copy thereof was sent; and

    g.    the identity of each person who has custody of a copy of each such DOCUMENT.

11. If YOU claim that a portion of a DOCUMENT is protected from disclosure for any reason, produce such DOCUMENT with redaction of only the portion claimed to be protected. When such redactions for privilege or protection are made, YOU shall place a legend similar to "REDACTION – PRIVILEGE" on the copy of the DOCUMENT produced. All redactions shall also be included on the privilege log described in Instruction #4.

12. If you object that a request is vague or ambiguous, IDENTIFY the objectionable aspect of the request.

13. If a request cannot be responded to in full, YOU shall respond to the extent

possible, specify the reason for YOUR inability to respond to the remainder, and state whatever information or knowledge YOU have REGARDING the portion to which YOU have not responded.

14. If any DOCUMENT called for by these requests has been destroyed, lost, discarded, or is otherwise no longer in your possession, custody, or control, IDENTIFY such DOCUMENT as completely as possible, and specify the date of disposal of the DOCUMENT, the manner of disposal, the reason for disposal, the person authorizing disposal, and the person disposing of the DOCUMENT.

15. These requests are sequentially numbered and each numbered paragraph constitutes a single request. Defined terms may be capitalized for the convenience of the parties; the definitions herein apply whether or not the term is capitalized.

16. Except where expressly stated, these requests are not limited in any way by geography.

17. Unless otherwise specified, the relevant time period, and the period for which YOU are required to provide responsive DOCUMENTS, is from and including January 1, 2011 up to and including the date of the subpoena.

**DOCUMENTS REQUESTED**

1. All POLICIES AND PROCEDURES REGARDING the provision of HEALTH CARE to PRISONERS classified as "seriously mentally ill," "severely mentally ill," MH-1 through MH-5, or any other mental health classification employed by the ADC while housed in ISOLATION, including but not limited to required frequency of contact with psychiatrists or other HEALTH CARE STAFF; monitoring of PRISONERS for adverse mental health effects of ISOLATION; and the removal of prisoners suffering adverse health effects of ISOLATION.

2. All POLICIES AND PROCEDURES REGARDING confinement of PRISONERS in ISOLATION, including but not limited to placement in, retention in, or removal from ISOLATION, CONDITIONS OF CONFINEMENT, diet, and OUTDOOR EXERCISE while in ISOLATION.

13

3. All DOCUMENTS REGARDING criticisms; critiques; or identification of possible, perceived, or actual deficiencies in CONDITIONS OF CONFINEMENT for ADC PRISONERS in ISOLATION from January 1, 2009 to the RESPONSE DATE.

4. All DOCUMENTS REGARDING INTERNAL INVESTIGATIONS OR EXTERNAL INVESTIGATIONS REGARDING CONDITIONS OF CONFINEMENT for PRISONERS in ISOLATION from January 1, 2009 to the RESPONSE DATE.

5. DOCUMENTS SUFFICIENT TO SHOW the duration of confinement in ISOLATION, including but not limited to the mean, median, and maximum length of confinement in ISOLATION for ADC PRISONERS.

6. All DOCUMENTS REGARDING the provision of food to PRISONERS in ISOLATION, including but not limited to POLICIES AND PROCEDURES; schedules for delivery of food; menus; and nutritional analyses of menus.

7. All DOCUMENTS REGARDING the provision of OUTDOOR EXERCISE to PRISONERS in ISOLATION, including but not limited to POLICIES AND PROCEDURES; schedules for the provision of OUTDOOR EXERCISE; plans of the areas in which OUTDOOR EXERCISE is provided; and exercise equipment in the OUTDOOR EXERCISE areas.