**EXHIBIT 1**

RECEIVED

AUG 1 0 2012

**MIDDLE GROUND PRISON REFORM**
139 East Encanto Drive
Tempe, Arizona 85281
(480) 966-8116
middlegroundprisonreform@msn.com
www.middlegroundprisonreform.org

August 8, 2012

Mr. Timothy J. Bojanowski
Attorney for Defendants
Struck Wieneke & Love
3100 West Ray Road
Suite 300
Chandler, Arizona 85226

In re: **OBJECTION TO SUBPOENA**
*Parsons, et al v. Ryan and Pratt*
U.S. District Court of Arizona
2:12-CV-00601

Dear Mr. Bojanowski:

In response to the Subpoena Duces Tecum served upon me, and for which a response is due on August 13, 2012, I provide the following information documenting my inability to provide the requested documents at this time. Pursuant to the Federal Rules of Civil Procedure, this objection is timely submitted.

**With respect to the "Documents to be Produced":**

**General Information:**

Middle Ground, Inc. was formed in 1983. We are a non-profit, all-volunteer organization with no paid staff. Our annual operating budget is derived solely from private donations and in-kind contributions. We do not possess the number of volunteers nor the funds required to retain staff in order to research our stored hard-copy records, research the data bases of two (2) computers, or pay the photocopying costs to produce the potentially large volume of records for Defendant's attorneys.

As volunteer custodian of Middle Ground's records, I, Donna Leone Hamm, am a self-employed Mitigation/Executive Clemency Consultant whose job responsibilities must take precedence over volunteer hours. In order to comply with the subpoena as written, I would need to hire someone to assist

in locating, retrieving and photocopying the requested records dating back to 1983 (if still available).  Further, in order to avoid an <u>extraordinary undue financial burden</u> on myself [1] (as a volunteer and as a self-employed person when not volunteering for Middle Ground) and on <u>Middle Ground's limited resources</u>, I would need to be reimbursed for each photocopy at the rate of $.50/page (this is the same amount / page that the Dept. of Corrections charges for photocopies of their public records documents).  A retained staff person to perform research would be billed at $20.00/hour.  There is no way to estimate the potential number of hours required, especially if records are requested to be reviewed and produced dating back to 1983.

**Health Care / Privacy / Confidentiality Issues**

Additionally, it should be noted that the Department of Corrections has often refused to discuss medical/health care related prisoner issues with Middle Ground in the past, unless the prisoner has signed a Medical Information Release Authorization Form.  In some cases, the DOC initiates contact with the prisoner to obtain such authorization, and in some cases the prisoner is advised through a family member to sign off on such an authorization for me.  The authorization is then maintained in the prisoner's medical file at the prison institution where he/she is housed.

In any case, I am concerned that the release of the records as requested in the subpoena, without proper HIPPA-approved authorization for such release will implicate liability for me or for Middle Ground with regard to unauthorized release of information protected under HIPPA and/or other laws which address privacy concerns for individuals (including the incarcerated), at least for medical/dental/mental health issues.

The confidentiality and privacy issues are of particular concern for all those individuals who are not listed as named plaintiffs in the lawsuit for which you are attorneys for defendants.  It is my understanding that this litigation has not been certified as a class action matter at this time.  Persons not included as named plaintiffs have not provided any implied authorization for release of personal information, and I am not confident of the legality of releasing such information until this issue is fully resolved.

**With respect to the individual items listed for production**:

1       The subpoena presents an all-inclusive request which is too broad.
        Assuming you mean to have us attempt to retrieve documents or records

---

[1]See Federal Rule of Civil Procedure 45 ( c ) (1)

dating back to 1983, it would require researching hard copy records stored in many dusty boxes located in a non-air-conditioned storage unit in Tempe, Arizona during the peak of the summer.  The storage unit contains files regarding a myriad of issues, including – possibly – documents related to health care of inmates in the Arizona Department of Corrections and/or records relating to issues of conditions of confinement in isolation.  It especially should be noted that we do not and have never categorized or filed documents relating to health care or conditions of confinement in any system or manner that is separate from documents relating to the same issues for prisoners in general population or separate from documents relating to all other issues.  The "system" we use is simply a storage unit, not an intricately organized filing system.

2.   It is our understanding that Middle Ground was not listed as a potential witness in the above-entitled action; rather, we were listed as a "resource."  Additionally, we have recently been advised by Plaintiffs that there is no intention whatsoever to call us as a witness in this litigation.

3.   With the possible exception of Sonia Rodriguez and Stephen Swartz, we are unaware of any advocacy work that we may have performed in the past for any of the remaining listed Plaintiffs.  Without extensive research, we have no idea if we have retained records for the above two (2) listed Plaintiffs whose names we recognize as having performed some advocacy in the past.

4.   We cannot possibly know what documents are available, until a thorough search is performed of our hard-copy files and our old computer records, to the extent that such records are available.  No other entity would possess the records of Middle Ground prison reform with the exception that prisoners who have written to us or for whom we have advocated may have retained copies of our responses to them in their own files.  Also, we assume that the Arizona Department of Corrections may have retained correspondence from us when advocating for any/all issues on behalf of prisoners.  These documents, possibly retained by the DOC, could date back as far as 1983.

5.   Some records may not be available due to a computer hard-drive "crash" which occurred in 2002 or 2003.  Also, some of our hard-copy files were lost due to dampness and mold at our storage facility; this was discovered sometime in the mid-1990's.  No records exist to document the destruction of such documents.

6.   Middle Ground often sends a "blind copy" of certain health care medical

advocacy emails to one of Plaintiff's attorneys – James Lyall – but because a stored, retrieved email message does not reflect those to whom a blind copy was sent, it is impossible for us to know which emails were communicated to Mr. Lyall and which may not have been.  For purposes of this litigation, it may be assumed that all emails written by Middle Ground to Department of Corrections employees at any level regarding health care and/or conditions of confinement in isolation since the filing of Plaintiff's Complaint in this matter have been "blind copied" to Mr. Lyall.

7.   See notation in Item 6 above.  With the exception of a telephone call to James Lyall, ACLU attorney, to advise him of our receipt of a subpoena from the Defendants; a telephone call to advise him of receipt of the amended subpoena;  a call to ask him if the litigation has been certified by the court as a class action matter and to specifically ask if we were going to be called as a witness, we have had no contact with Plaintiffs' attorneys on this litigation, unless we are able to research records to locate correspondence we may not recall.  We have no telephone contact with any listed Plaintiff because all of them are incarcerated and we are not listed on their approved telephone contact list.  We do not maintain records or logs of general contacts in the course of performing volunteer work for Middle Ground.

In conclusion, until the various matters listed in this Objection are resolved, we will be unable to comply with the Subpoena and we formally Object.

Sincerely,

Donna Leone Hamm
Executive Director
Custodian of Records

cc: James Lyall, ACLU/Arizona

**EXHIBIT 2**



STRUCK WIENEKE & LOVE

[ 3100 West Ray Road, Suite 300   Chandler, Arizona 85226   480.420.1600  swlfirm.com ]

August 21, 2012

Daniel P. Struck
PARTNER

Kathleen L. Wieneke
PARTNER

Rachel Love
PARTNER

Timothy J. Bojanowski
PARTNER

Christina Retts
SENIOR ASSOCIATE

Jamie D. Guzman
ASSOCIATE

Nicholas D. Acedo
ASSOCIATE

Tara B. Zoellner
ASSOCIATE

Amy L. Nguyen
ASSOCIATE

Ashlee B. Fletcher
ASSOCIATE

Courtney R. Cloman
ASSOCIATE

Jennifer Holsman Tetreault
OF COUNSEL

David C. Lewis
OF COUNSEL

Donna Hamm
139 E Encanto Drive
Tempe, AZ 85281

Re:     Parsons, et al v. Pratt and Ryan
        U.S. District Court of Arizona; 2:12-cv-00601
        (LMS12-0081)

Dear Ms. Hamm:

We are in receipt of your letter dated August 8, 2012 outlining your objections to the Subpoena Duces Tecum we served on you dated August 2, 2012.  This letter will serve as our attempt to resolve disputed issues regarding your response and objections to our request for production.

The Subpoena Duces Tecum was served on you because you were listed by Plaintiffs in their Initial Disclosure Statement as an individual likely to have discoverable information.   Specifically, you were listed as having "direct knowledge concerning ADC health care or conditions of confinement in isolation." As such all documents in your possession custody or control that relate to these issues must be produced.

We understand it is your contention that you may not release records pertaining to medical, dental, and mental health issues without authorization.  In order for you to have such records in your possession, however, we assume you obtained authorization for their release.  Therefore, your position that you may not provide those records is unfounded and the production is hereby demanded.

If you have no documents in your possession, custody, or control related to any plaintiffs other than Sonia Rodriguez and Stephen Swartz, please so state. We do, however, require copies of any documents you have pertaining to Sonia Rodriguez and Stephen Swartz.  It is important to note that the deadline for you to have produced these records was over a week ago.  Please provide an estimate for when you will produce these documents.

If it is your position that any documents responsive to the subpoena are no longer in your possession, please provide a destruction log or produce documents sufficient to show your policies, procedures, and/or practices regarding document retention.

Donna Hamm
August 21, 2012
Page 2

It is Defendants' position that reimbursement for photocopying at the rate of $.50 per page is not reasonable and therefore not warranted. Copying charges in this case are set at .10 per page.

Please comply with the subpoena by no later than August 31, 2012 or we will be forced to file a motion to compel with the Court.  If you have any further questions or need additional information, please do not hesitate to contact me.

Sincerely,

Timothy J. Bojanowski
For the Firm

TJB/AO
cc:    Dawn Northup, Esq
       Michael Gottfried, Esq.

**EXHIBIT 3**

**MIDDLE GROUND PRISON REFORM**
139 East Encanto Drive
Tempe, Arizona 85281
(480) 966-8116
middlegroundprisonreform@msn.com
www.middlegroundprisonreform.org

RECEIVED

AUG 3 1 2012

August 30, 2012

Mr. Timothy J. Bojanowski
Attorney for Defendants
Struck Wieneke & Love
3100 West Ray Road
Suite 300
Chandler, Arizona 85226

In re: **OBJECTION TO SUBPOENA**
*Parsons, et al v. Ryan and Pratt*
U.S. District Court of Arizona
2:12-CV-00601

Dear Mr. Bojanowski:

We are in receipt of your letter of August 21, 2012 in which you request compliance with a previously served subpoena no later than August 31, 2012. Your letter indicates that if we do not comply, you will be "forced" to file a motion to compel with the Court.

Please review the previously stated Health Care/Privacy/Confidentiality Issues discussed in our letter to you of August 8, 2012. As we explained in that letter, we are not in possession of any authorization by prisoners that would allow us to provide you with access to their records. Your client, the Department of Corrections, is in possession of inmate health record authorizations, to the extent that such authorizations actually exist. You should be aware that your client presents its own internal authorization form to prisoners, who subsequently sign that form if they choose to do so (we assume, since the form is never forwarded to us), and then the Department proceeds to discuss the medical, mental health, or dental issues with us. Hence, your position that we must provide such records is entirely contingent on what authorizations have been granted by the inmate regarding the release / communication of health-related information and/or records. In short, consult with your client.

Assuming, solely for purposes of this discussion, that we did possess such authorization forms, properly executed by a prisoner (which we do not), we nonetheless believe that the standard form utilized by the Department authorizes the release of the records only and exclusively to us, but does not provide authorization for further disclosure by us to others such as attorneys

not representing the inmate.  Hence, we have no basis for believing that we are either compelled or authorized to release any such records to you.

Meanwhile, we stand by our position that none of the records we may have in our possession are subject to subpoena, because we have been expressly informed by the attorneys for Plaintiff that they do not intend to call us to testify.  Surely, you would not intend to produce hearsay documents at trial?

For all the reasons cited in our letter of August 8, and for those related to you in this correspondence, and for others potentially existing, we will not comply with the subpoena at this time.

Sincerely,

Donna Leone Hamm
Executive Director

cc: James Lyall, ACLU

**EXHIBIT 4**



STRUCK WIENEKE & LOVE                    [ 3100 West Ray Road, Suite 300   Chandler, Arizona 85226   480.420.1600   swlfirm.com ]

September 13, 2012

Daniel P. Struck
PARTNER

Kathleen L. Wieneke
PARTNER

Rachel Love
PARTNER

Timothy J. Bojanowski
PARTNER

Christina Retts
SENIOR ASSOCIATE

Jamie D. Guzman
ASSOCIATE

Nicholas D. Acedo
ASSOCIATE

Tara B. Zoellner
ASSOCIATE

Amy L. Nguyen
ASSOCIATE

Ashlee B. Fletcher
ASSOCIATE

Courtney R. Cloman
ASSOCIATE

Jennifer Holsman Tebscott
OF COUNSEL

David C. Lewis
OF COUNSEL

Donna Leone Hamm
**MIDDLE GROUND PRISON REFORM**
139 E. Encanto Drive
Tempe, AZ 85281

      Re:    Parsons, et al. v. Ryan, et al.
             United States District Court, District of Arizona
             Case Number 2:12-cv-00601

Dear Ms. Hamm:

    We are in receipt of your letter dated August 30, 2012 in which you indicate that you have been expressly informed by Plaintiffs' counsel that they do not intend to call you as a witness at trial. Your acknowledgement that you will not testify as a witness in this case is sufficient. Please feel free to contact me if you have any questions.

Regards,

Timothy J. Bojanowski
For the Firm

TJB/khs
Cc:   Michael Gottfried, Esq.
       Dawn Northup, Esq.

2685622.1

[ Timothy J. Bojanowski | tbojanowski@swlfirm.com | Direct: 480.420.1604 | swlfirm.com ]

**EXHIBIT 5**



STRUCK WIENEKE & LOVE      [ 3100 West Ray Road, Suite 300   Chandler, Arizona 85226   480.420.1600   swlfirm.com ]

October 3, 2012

David P. Struck
PARTNER

Kathleen L. Wieneke
PARTNER

Rachel Love
PARTNER

Timothy J. Bojanowski
PARTNER

Christina Retts
SENIOR ASSOCIATE

Jamie D. Guzman
ASSOCIATE

Nicholas D. Acedo
ASSOCIATE

Tara B. Zoellner
ASSOCIATE

Amy L. Nguyen
ASSOCIATE

Ashlee B. Fletcher
ASSOCIATE

Courtney R. Cloman
ASSOCIATE

Anne M. Orcutt
ASSOCIATE

Jennifer Holsman Tetreault
OF COUNSEL

Daniel P. Struck
OF COUNSEL

**VIA EMAIL ONLY**

Jennifer Alewelt:  jalewelt@azdisabilitylaw.org
Caroline N. Mitchell:  cnmitchell@jonesday.com
Donald Specter:  dspecter@prisonlaw.com
David C. Fathi:  dfathi@npp-aclu.org

Re:     Parsons, et al. v. Ryan and Pratt
        U.S. District Court of Arizona; 2:12-cv-00601

Dear Counsel:

In your initial disclosure statement you stated that Donna Hamm and Robert Ortega were both persons who "have direct knowledge concerning ADC health care or conditions of confinement in isolation."  *See* Plaintiffs' Initial Disclosure Statement at 15.

As a result of your disclosure, Defendants subpoenaed both Hamm and Ortega.  Both individuals failed to comply with the subpoena and informed Defendants that Plaintiffs' counsel expressly instructed each of them that they would not be called as a witness at trial.

If it is in fact true that neither of these individuals will be called as a witness at trial, please provide Defendants with a supplemental disclosure statement that does not include either of their names as persons likely to have discoverable information.

If you fail to do so, Defendants will take every measure to enforce the subpoenas including taking the matter in front of the Court.  Further, Defendants will depose both Hamm and Ortega if you refuse to remove them from your initial disclosure statement.

Sincerely,

Ashlee B. Fletcher
For the Firm

ABF/slw
2695046.1
cc:     Michael E. Gottfried
        Dawn Northup
        Kelly Dudley

**EXHIBIT 6**



# Arizona Department of Corrections

**1601 WEST JEFFERSON**
**PHOENIX, ARIZONA 85007**
**(602) 542-5497**
www.azcorrections.gov



JANICE K. BREWER
GOVERNOR

CHARLES L. RYAN
DIRECTOR



<u>Hand Delivered, Electronic Mail, and</u>
<u>Certified Mail – Return Receipt Requested</u>

September 21, 2012

Karen Mullenix, Director
Wexford Health Sources
1850 N. Central Avenue, Suite 1050
Phoenix, Arizona 85004

Re:    Written Cure Notification - Contract No. 120075DC

Dear Ms. Mullenix:

The purpose of this letter is notify you of details of non-compliance, required corrective actions, and timeline for action to the above referenced contract between Wexford Health Sources ("Wexford") and the Arizona Department of Corrections ("ADC").

The action is being made in accordance with the contract's Special Terms and Conditions, Section 2.19 Contract Monitoring General Requirements, paragraph 2.19.5, which states:

> If non-compliance issues, other than those identified in Subsection 2.19.6, are identified during a quarterly audit required under Section 2.20, or any other monitoring activity, the Department Monitoring Staff shall provide a written cure notice to the Contractor's Arizona CEO and Area Manager regarding the details of the non-compliance, the required corrective action, and the period of time allowed to bring performance back into compliance with Contract requirements.

> If, at the end of the specified time period, the Contractor has complied with the cure notice requirements, the Department shall take no further action. (2.19.5.1)

> If, however, the Contractor has not complied with the cure notice requirements, the Department Contract Monitor shall notify the Contractor's Arizona CEO and Area Manager in writing that the matter shall be referred to the Chief Procurement Officer to take action against the Contractor, including but not limited to monetary sanctions, suspension, refusal to renew, or termination of the Contract. (2.19.5.2)

- 1 -

Several events detailing significant issues of non-compliance are described below:

### 1.   *August 17, 2012, ASPC-Perryville/Lumley Unit*

On August 17, 2012, Wexford nursing personnel were distributing medication on Lumley Unit - Yard 24 to include "watch swallow" medications. In accordance with "watch swallow" protocols, certain medications in powder form require administration to be completed via "floating" the medication in a small cup of water, which the patient drinks. During this distribution of medication, Wexford nurses depleted their stock of cups prior to completing medication distribution to the inmate population. Wexford nurses failed to stop the medication line and retrieve additional plastic cups, as would have been appropriate. Rather than refilling the supply of cups, a Wexford nurse placed the powdered "watch swallow" medication in an inmate's hand, directing the inmate to lick the powdered medication from her own hand.

This improper administration of medication instigated disorderly behavior by the affected inmate, requiring a security response. The nurses' disregard for proper protocol in administering this inmate's medication and their disrespect for the inmate are significant non-compliance issues that require corrective action.

### 2.   *August 22, 2012, Medication Expiration Report (Statewide)*

During the month of August 2012, ADC conducted random reviews of prescriptions, utilizing the Medication Expiration Report published by Wexford for July 1 – August 11, 2012. In completing this review, ADC learned that a significant number of inmates may not have been receiving their medications as prescribed due to expired prescription(s) and inappropriate renewals or refills. Approximately 8,358 prescriptions required review and potential renewal to ensure inmates received their required medications.

Wexford's lack of communication to its field supervisors regarding the necessary process for reviewing the Medication Expiration Report for renewal of medication, together with Wexford's delayed response and lack of urgency to correct the identified problem, contributed to this significant non-compliance issue. Specifically, during a meeting on August 22, 2012, between ADC's Monitoring Bureau leadership and Wexford Regional and Corporate personnel, it was apparent, based on statements from Wexford's Corporate Pharmacist, Denise Mervis, Pharm.D., that Wexford was aware of the expired medication issue, but had not taken adequate, if any, action to correct it. In this meeting, Dr. Mervis referred to the expired medication renewals as a critical issue.

When asked on August 22, 2012 what actions Wexford had undertaken to correct this problem, Wexford leadership advised that they intended to conduct an initial review of the July 1, 2012 – August 11, 2012 Medication Expiration Report beginning August 27, 2012. Wexford's decision to wait five days to begin reviewing the Medication Expiration Report was an inadequate response to a significant issue of grave concern to ADC. As a result of Wexford's delayed response, ADC deployed State resources on August 23, 2012 to ADC prison complexes statewide to review various data sources in an effort to identify inmates in need of medication renewal and to ensure that renewal actually occurred. Multiple ADC prison complexes also enhanced security vigilance by increasing the rate of security checks to 30-minute intervals on all inmates to ensure the well-being of the inmate population.

### 3. *August 23, 2012, ASPC-Florence/Central Unit*

On August 23, 2012, an inmate was found hanging from a sheet in his housing location. ADC staff removed the sheet, placed the inmate on a gurney, and arranged for air transport to an outside hospital. The inmate (MH-3) was last seen by an ADC psychiatrist provider on May 1, 2012. At that time, the provider prescribed lithium carbonate, a "watch swallow" medication used as a mood stabilizer, for 180 days. Medication Administration Records (MARs) showed this inmate received his medication in May, June, and July. On July 18, 2012, during a psychiatric follow-up, the inmate reported that the lithium carbonate had been helpful in stabilizing his mood. During ADC's investigation of this incident, ADC determined that this inmate had not received his psychotropic medication for the first 23 days of August 2012, as evidenced by the fact that no MAR had been generated. Failing to deliver psychotropic medication as prescribed is a significant, non-compliance issue.

### 4. *August 27, 2012, ASPC-Lewis/Morey Unit*

On August 27, 2012, between approximately 0600 and 0630 hours, while conducting diabetic insulin line in the medical unit at ASPC – Lewis – Morey Unit, Licensed Practical Nurse (LPN) N. Nwaohia contaminated a vial of insulin being used on the line. This contamination occurred when LPN Nwaohia drew insulin with a syringe for a Hepatitis-C positive inmate from a vial of "Regular" insulin and injected this insulin into the inmate. Utilizing the same syringe, she then drew a second dose of insulin from a vial of "Lantus" insulin and injected the secondary dose into the same inmate. LPN Nwaohia's actions contaminated the multi-dose "Lantus" vial. This vial was then utilized to provide insulin to other insulin dependent inmates.

Despite Wexford's Nurse Lindsay Stephen becoming aware of this information on August 27, 2012, Ms. Stephen did not file an Incident Report on the event, in accordance with ADC policy, until September 4, 2012. Rather, on August 27, 2012, she disposed of the insulin vials thought to have been involved in the contamination event and failed to notify Wexford management or appropriate ADC staff of the contamination event or her actions in destroying the insulin vials.

Wexford Site Manager Sumi Erno reported contacting Wexford Regional Manager Linda Maschner on August 28, 2012, to report the incident to her. Ms. Erno reported being directed by Ms. Maschner to begin identifying Insulin Dependent Diabetes Mellitus (IDDM) inmates so that baseline testing for Hepatitis-C could commence. As a precaution, baseline testing was also conducted for HIV. (The index inmate, although known to be positive for Hepatitis-C, was subsequently tested for both Hepatitis-C and HIV.) Pending receipt of those test results, plans were implemented to test all inmates potentially exposed through this event for both Hepatitis-C and HIV. Test results for the index inmate later confirmed him as positive for Hepatitis-C and negative for HIV.

Also, on August 28, 2012, upon direction of Wexford Management, Wexford RN Supervisor Sienkiewicz contacted AB Staffing, the subcontracted employer of LPN Nwaohia. Ms. Sienkiewicz reportedly advised AB Staffing that LPN Nwaohia would be prohibited from performing nursing services in support of Wexford contracts in the state. Wexford requested that AB Staffing file a complaint with the Arizona State Board of Nursing regarding LPN Nwaohia's actions. One week later, on September 4, 2012, while following up at ADC's request, Wexford learned that no complaint regarding LPN Nwaohia had been received by the Board. Wexford Regional Manager Maschner then formally submitted the complaint on the afternoon of September 4, 2012.

- 3 -

In identifying IDDM inmates, Ms. Erno initially reported on August 28, 2012, as having 105 inmates at Lewis that receive insulin. This number later changed to 103, following review of a spreadsheet created by Wexford medical personnel at the Lewis Complex listing inmates receiving insulin at Lewis. In review of this list, duplication of some inmates was noted, thus the 103 number derived from this list was determined questionable.

Additionally, the Department received a report from Wexford generated from the online reporting system of their subcontracted Pharmacy (Diamond Pharmacy Service) on September 5, 2012, which reflected 91 inmates receiving insulin at Lewis. In an email coinciding with the provision of this report, Wexford Director Karen Mullenix, stipulated that the report was generated by Wexford's Site Manager at Lewis (Sumi Erno) and that she (Mullenix) had concerns with the validity of the information Ms. Erno had provided thus far.

On September 5, 2012, during a meeting with inmates at ASPC-Lewis, an additional 9 inmates not previously identified by Wexford were added to the list of those potentially exposed.

Due to the continued fluctuation of information from Wexford and the lack of systems in place to readily identify insulin dependent/chronic care inmates, ADC deployed additional compliance monitoring staff to ASPC-Lewis on September 5, 6, & 7. Wexford did not deploy additional resources to the site until September 6, 2012. It was not until Friday, September 7, 2012, that the total population of insulin dependent inmates and the subset of potentially exposed inmates were identified with certainty. Further, baseline testing of this population was not completed until September 10, 2012, despite Wexford's earlier reporting that this had been completed on September 4, 2012.

The failure to follow established nursing protocols, poor record keeping, mismanagement of documentation, inadequate and inaccurate communication, lack of timely managerial or administrative support, and failure to ensure that corrective action had been completed represent serious issues of non-compliance.

### 5. September 13, 2012, ASPC-Perryville/Santa Rosa Unit

On September 13, 2012, at approximately 1715 hours, Wexford Director Karen Mullenix notified ADC of a possible case of pertussis (whooping cough) at ASPC-Perryville. Wexford management did not know the name(s) or number(s) of inmate(s) affected, or the unit(s) identified with the reported case. Wexford's notification of the reported pertussis case was inadequate and inconsistent. Further, without sufficient factual detail of the incident, Wexford reported no action plan to address the situation.

Ms. Mullenix further reported that Wexford's Dr. Palmer spoke to both the County and State Health Departments about the case. She also reported that Dr. Bell (Regional Medical Manager) was called about this issue two days prior, September 11, 2012, and although he was aware of the potential diagnosis, that information had not been communicated to either Ms. Mullenix or the ADC Site Monitors. ADC Audit Nurse Mendoza contacted Wexford facility personnel and determined that an inmate tested positive for pertussis on August 13, 2012, approximately 30 days prior to Wexford's notification to ADC. ADC Audit Nurse Mendoza also confirmed the inmate's name, number and location.

In a phone conversation later that evening with Site Manager Deb Cherry and Richard Pratt, ADC Interim Assistant Director, Health Services Monitoring Bureau, it was reported that Dr. Palmer had seen the inmate who tested positive for pertussis approximately 10 days prior to Wexford's notification to ADC. Ms. Cherry also advised she was aware of this issue up to 10 days prior and failed to advise either Ms. Mullenix or ADC Site Monitors at that time. During ADC's investigation, Ms. Cherry speculated that the patient may have unknowingly contracted the disease through inmate visitation in the past few weeks, as the inmate was later contacted by her visitor to advise she or her child had been diagnosed with pertussis. Ms. Cherry also reported that Dr. Palmer contacted the County Health Department regarding the case and that she ordered 25 test kits from the Maricopa County Health Department to test any additional suspected cases of pertussis. That, in fact, was not the case. Ms. Cherry sent an "undeliverable" e-mail to the County's website, requesting the test kits.

A known case of a reportable infectious disease went unreported to ADC staff and Wexford State Level Management for 30 days, indicating a lack of urgency, a lack of awareness of the situation's potential seriousness, a breakdown of communication between field personnel and management, or all of the above. Further, Wexford's failure to independently engage in developing a plan by which to identify/confirm current and future suspected cases of pertussis is a significant non-compliance issue.

**Required CURE actions**

The aforementioned significant events have necessitated ADC to substantially supplement Wexford with personnel resources, operational modifications, and specific direction that should not be expected and are not required under this contract. ADC expects Wexford to effect sustained, systemic operational improvements in the management and delivery of health care services to ADC inmates. ADC is not contractually obligated to deploy its resources to manage Wexford's day-to-day, as well as crisis operations.

The following non-compliance issues, as identified here and/or in previously provided monitoring reports, require corrective action:

STAFFING: Inadequate staffing levels in multiple program areas at multiple locations

1.   Inadequate support from corporate staff to field staff during normal and crisis operations

2.   Staffing levels creating inappropriate scheduling gaps in on-site medical coverage, including In-Patient Component

3.   Staffing levels forcing existing staff to work excessive hours, creating fatigue risks

MEDICATION/DOCUMENTATION:   Incorrect,   incomplete,   inconsistent   medication administration or documentation of care provided

4.   Quantitative decrease in routine institutional care: backlog of prescription medication expiration review

5.   Incorrect or incomplete pharmacy prescriptions (medication not matching chart order, wrong dosage)

6.    Inappropriate discontinuation/change of medication

7.    Inconsistent non-formulary medication approval process

8.    Inconsistent or contradictory medication refill and/or return procedures

9.    Inadequate pharmacy reports

10.   Inconsistent documentation of Medication Administration Records (MARs)

11.   Inconsistent provision of release, transfer, and/or renewal medications

12.   Inability to readily identify specific groups of inmates or chronic conditions based upon
      medications prescribed (e.g., diabetics)

SENSE OF URGENCY RESPONSE, and COMMUNICATION: ADC deployment of resources
to intervene in healthcare operations as a result of corporate inaction

13.   Inadequate/untimely communication between field staff, corporate staff, and ADC

14.   Lack of responsiveness and/or lack of awareness of incident urgency and reporting
      requirements

15.   Quantitative decrease in routine institutional care: backlog of chart reviews

16.   Quantitative decrease in routine institutional care: backlog of provider line appointments

17.   Quantitative decrease in routine institutional care: untimely handling of Health Needs
      Requests

18.   Quantitative decrease in routine institutional care: backlog/cancellation of outside
      specialty consultations

19.   Unresponsive approach to ADC inquiries on patient information

20.   Unresponsive approach to inmate grievance process

ADC expects Wexford to provide a proposed corrective action plan for all of the identified
deficiencies by October 1, 2012. Although Wexford is afforded 7, 30, 60, or 90 days to complete
corrective action, it is ADC's expectation that Wexford will begin corrective action on all
identified deficiencies immediately. Corrective action must be ongoing throughout the 90-day
cure period, and Wexford must regularly demonstrate to ADC Contract Monitors that corrective
action is ongoing and being completed throughout the 90-day cure period.

This letter shall also serve as a demand for Right to Assurance in accordance with section 8.1 of
the Uniform Terms and Conditions, that it is Wexford's intent to perform and comply with all
provisions of the contract. Accordingly, Wexford has ten (10) calendar days from the date of this
letter to respond to the demand for assurance.

In accordance with the contract's Special Terms and Conditions, Section 2.19 Contract Monitoring General Requirements, paragraph 2.19.7, Wexford has ten (10) calendar days from the date of this letter to submit a written appeal of this Cure Notice.

Wexford's failure to provide written assurance of its intent to perform and comply with all contractual provisions within ten (10) calendar days, or its failure to cure all deficiencies noted herein within ninety (90) calendar days from the date of this letter may, at the State's option, be the basis for terminating the contract under the Uniform Terms and Conditions or other rights and remedies available by law or provided by the contract.

Sincerely,

Joe Profiri
*Contract Beds Operations Director*
Arizona Department of Corrections


Enclosures:    Cure Matrix Monitoring Report
               Cure Matrix Monitoring Summary Report


c:    Charles L. Ryan, Director - ADC
      Jeff Hood, Deputy Director - ADC
      Dawn Northup, General Counsel - ADC
      Michael Kearns, Division Director, Administrative Services - ADC
      Richard Pratt, Interim Assistant Director, Health Services - ADC
      Leon George, Chief Procurement Officer - ADC
      Mark W. Hale, President and Chief Executive Officer - Wexford
      Daniel L. Conn, Executive Vice President and COO - Wexford
      John Froehlich, Vice President of Finance - Wexford

**EXHIBIT 7**



**STRUCK WIENEKE & LOVE**   [ 3100 West Ray Road, Suite 300   Chandler, Arizona 85226   480.420.1600   swlfirm.com ]

October 11, 2012

Daniel P. Struck
PARTNER

Kathleen L. Wieneke
PARTNER

Rachel Love
PARTNER

Timothy J. Bojanowski
PARTNER

Kristina Rees
SENIOR ASSOCIATE

Jamie D. Guzman
ASSOCIATE

Nicholas D. Acedo
ASSOCIATE

Tara B. Zoellner
ASSOCIATE

Amy L. Nguyen
ASSOCIATE

Ashlee B. Fletcher
ASSOCIATE

Courtney R. Cloman
ASSOCIATE

Anne M. Orcutt
ASSOCIATE

Jennifer Hoskins Tetreault
OF COUNSEL

David C. Lewis
OF COUNSEL

Donna Leone Hamm
Middle Ground Prison Reform
139 E. Encanto Drive
Tempe, AZ 85281

Re:   Parsons, et al. v. Ryan and Pratt
U.S. District Court of Arizona; 2:12-cv-00601

Dear Ms. Hamm:

On August 2, 2012, Defendants served a subpoena duces tecum on you. You have still failed to produce documents in response to this subpoena. On August 8, 2012, you wrote Defendants a letter in which you stated it would be overly burdensome for you to retrieve documents responsive to the subpoena due to your status as a non-profit organization. You further objected to the subpoena because it "would require researching hard copy records stored in many dusty boxes located in a non-air-conditioned storage unit in Tempe, Arizona during the peak of the summer." Additionally, you expressed concern regarding producing medical records without releases from Plaintiffs. Further, you alleged that Plaintiffs have "no intention whatsoever to call us as a witness in this litigation." Defendants sent you a responsive letter on August 21, 2012 in which we requested you provide us further information regarding your objection to the subpoena and your reasons for objecting. You failed to do so. In your August 30, 2012 letter, you expressly stated you would not comply with the subpoena, again alleging that Plaintiffs assured you that you would not be called as a witness and that you need releases to produce medical records. Each of your objections are invalid.

First, despite requests from Defendants to remove your name from their initial disclosure, Plaintiffs have failed to do so. Thus, regardless of what you were allegedly told by Plaintiffs, you remain listed as a witness. Your objection to the subpoena based on your personal allegation that you were informed that you would not testify is insignificant. That you may not be called as a witness is not a valid objection to not responding to a subpoena for documents. Second, your absurd assertion that it is essentially too hot to produce records is abrogated by the fact that summer has concluded.

Next, there is a valid protective order in place which prevents dissemination of documents to individuals outside those listed in the order. *See* attached Protective Order. Further, Plaintiffs have directly put their medical records at issue by bringing this lawsuit. Thus, your objection to the subpoena based on lack of releases is irrelevant. Regardless, Defendants requested a

Donna Leone Hamm
October 11, 2012
Page 2


variety of types of documents from you, many of which have nothing to do with inmate medical records and many of which do not require releases or a protective order to be produced.   Furthermore, Defendants have encountered numerous documents which contain the "Middle Ground" logo stamp on them, throughout the course of this litigation.  *See* attachments.  Therefore, Defendants are puzzled by your assertion that your documents are essentially stored in a bonded warehouse in which it would take drastic measures to reach.   It has become acutely obvious that you are without holding records directly responsive to Defendants' subpoena, in contempt of court.

Lastly, Defendants are willing to come down to the warehouse and sift through the documents themselves given the alleged financial burden it would place on you to do so.   Please make the relevant records available for Defendants to do so.

This letter will serve as Defendants' final attempt to obtain documents in response to a valid subpoena duces tecum.  We have continued to reasonably work with you; however, you have failed to cooperate.  Unless we hear from you before then, Defendants will file a Motion to Compel on Monday if you fail to make the documents available.

Sincerely,

Ashlee B. Fletcher
For the Firm


ABF/slw
Attachments
2697333.1

cc:   Michael E. Gottfried
      Dawn Northup
      Kelly Dudley

**EXHIBIT 8**

| From: | DONNA LEONE HAMM <middlegroundprisonreform@msn.com> |
|-------|--------------------------------------------------------|
| Sent: | Monday, October 15, 2012 1:59 PM |
| To: | Sherri Wolford; Ashlee Fletcher |
| Cc: | michael.gottfried@azag.gov; Dawn Northup; Kelly Dudley; Parsons Team; Charles Ryan |
| Subject: | RE: Parsons, et al. v. Ryan, et al. - Subpoena Duces Tecum |

**Dear Ms. Fletcher:**

**I was visiting my grandsons and my daughter in an out-of-state location from 10/5/12 thru 10/15/12 and just opened Ms. Wolford's email.**

**It appears from your letter (attached to the email) that you intend to file a Motion to Compel with the federal court today, October 15, 2012, unless you hear from me before 10/15.  Since I was out of state, I was unable to communicate until today.**

**You state that this is your "final attempt" to obtain documents regarding the Subpoena duces tecum.  I sincerely hope so.**

**You state that you have "continued to reasonably work with [me.]"  I disagree completely.**

**Your letter of October 11, 2012 utterly fails to mention that on September 13, 2012, firm attorney Timothy J. Bojanowski sent me a letter which indicated that the firm was no longer engaged in attempting to obtain documents from Middle Ground or from  me pursuant to the previously mentioned subpoena.  Instead, your letter adopts the position that you have been attempting to obtain these documents throughout September and October.  This is patently false.  The reality is that Ms. Wolford's email of 10/11/12 is the FIRST attempt by your firm to re-initiate the subpoena previously served on me.  It is my opinion that there is no current valid subpoena, given your firm's previous official termination of any attempt to obtain documents pursuant to a previously served subpoena.**

**I also note that between October 11th and the 15th, 2012 -- the day you intend to file a Motion to Compel -- is a period of four (4) days; four days, in which to comply with a new attempt to obtain documents without service of a Subpoena duces tecum and without acknowledgement of your firm's agreement to cease efforts regarding the previously served subpoena.**

**I consider this unreasonable, ethically questionable, and procedurally impossible.**

**The documents which were attached to the email sent to me on October 11th -- and the only document relevant to Middle Ground -- revolves around a letter sent by your client to Wexford Healthsources which was apparently distributed to the media by the ADOC and which I recall was emailed to me by news media wishing to interview me about my opinions on the content of the letter.  I downloaded a copy of the letter and faxed it to James Lyall at the ACLU.  Since the letter was emailed by me to another party, I added a rubber stamp marked "COPY" and added Middle Ground's name as the source of the fax to ACLU.  It is important for you to note that the date of the letter to Wexford from the DOC is September 21, 2012 -- eight days after Mr. Bojanowski's letter to me terminating the Subpoena duces tecum previously served.**

1

I mention this because your letter of October 11, 2012 states, "It has become acutely obvious that you are without holding [sic] records directly responsive to Defendants' subpoena, in contempt of court." I categorically reject the absurd notion that I am in contempt of any court, especially in light of Mr. Bojanowski's letter to me -- which you continue to utterly ignore. The date is important because there was no reason for me to even consider sending you a copy when there was no valid subpoena in effect for records in my possession.

Finally, I wish to point out that I reject any attempt to obtain documents that stretch back into the distant past rather than the current litigation in which your client is the Defendant. I mention this because the now-void subpoena had no date or time line associated with it for purposes of relevance to your litigation.   As pointed out in my original correspondence (see August 8, 2012 letter), Middle Ground was formed in 1983.

Please communicate with  and coordinate with your fellow firm members and refrain from sending me any additional  schizophrenic communications.


**Donna Leone Hamm, Judge (Ret.)**
**Criminal Justice Consultant**
**Executive Director**
**Middle Ground Prison Reform**
**(480) 966-8116**
**MIDDLE GROUND HAS BEEN ARIZONA'S PREMIER ADVOCACY ORGANIZATION**
**PROTECTING THE RIGHTS OF THE INCARCERATED SINCE 1983**

---

From: SWolford@swlfirm.com
To: middlegroundprisonreform@msn.com
CC: Michael.gottfried@azag.gov; DNORTHUP@azcorrections.gov; KDUDLEY@azcorrections.gov; ParsonsTeam@swlfirm.com
Subject: Parsons, et al. v. Ryan, et al. - Subpoena Duces Tecum
Date: Thu, 11 Oct 2012 22:36:51 +0000

Ms. Hamm,

Attached is a letter from Ashlee Fletcher regarding the Subpoena Duces Tecum served in this case.

Best regards,
Sherri



STRUCK WIENEKE & LOVE
3100 West Ray Road, Suite 300   Chandler, Arizona 85226

**Sherri L. Wolford**
**Legal Assistant to Nicholas D. Acedo,**
**  Tara B. Zoellner, and Ashlee B. Fletcher**
Direct:  (480) 420-1621
swolford@swlfirm.com
www.swlfirm.com

**EXHIBIT 9**



**STRUCK WIENEKE & LOVE**   [ 3100 West Ray Road, Suite 300   Chandler, Arizona 85226   480.420.1600   swlfirm.com ]

Daniel P. Struck
PARTNER

Kathleen L. Wieneke
PARTNER

Rachel Love
PARTNER

Timothy J. Bojanowski
PARTNER

Christina Retts
SENIOR ASSOCIATE

Jamie D. Guzman
ASSOCIATE

Nicholas D. Acedo
ASSOCIATE

Tara B. Zoellner
ASSOCIATE

Amy L. Nguyen
ASSOCIATE

Ashlee B. Fletcher
ASSOCIATE

Courtney R. Cloman
ASSOCIATE

Anne M. Orcutt
ASSOCIATE

Jennifer Halverson Dieterich
OF COUNSEL

Daniel C. Lewis
OF COUNSEL

October 15, 2012

Donna Leone Hamm
Middle Ground Prison Reform
139 E. Encanto Drive
Tempe, AZ 85281

Re:     Parsons, et al. v. Ryan and Pratt
        U.S. District Court of Arizona; 2:12-cv-00601

Dear Ms. Hamm:

Thank you for your letter regarding the subpoena duces tecum. For clarification purposes, Mr. Bojanowski sent you a letter on October 11, 2012, which informed you that if you were not going to be called as a witness, we would withdraw the subpoena. Problematically, however, Plaintiffs' counsel has refused to respond to our request that you be removed from their Initial Disclosure Statement. Therefore, contrary to your unsupported belief, you are still a witness in this matter. We suggest you take this issue up with Plaintiffs' counsel if you are operating under a contrary belief.

Defendants have never informed you that you or Middle Ground were released from obligations under the subpoena duces tecum, and you have failed to provide us with any authority which supports your position that you need not comply. In fact, you have continuously provided an array of excuses why you will not be complying with the subpoena, however, have failed to provide any authority to support your position. Despite your contentions, Mr. Bojanowski's letter never informed you that Defendants were no longer attempting to obtain documents from Middle Ground or from you. Also, despite your allegations to the contrary, Defendants never terminated the subpoena nor was there ever an "official termination of any attempt to obtain documents."

As I stated in my previous letter, defense counsel volunteered to obtain and review responsive documents ourselves, thereby eliminating an alleged "undue burden" on your part. Furthermore, we are willing to work with you with respect to relevant time frames and ask that you only produce documents from January 1, 2012 until present, in accordance with the description contained in the subpoena.

We understand you have been out of town, and we are willing to work with you in a professional and efficient manner in order to obtain documents responsive to our subpoena duces tecum. It is unclear from your letter, however, whether you intend to work with us in our efforts to obtain responsive documents

Donna Leone Hamm
October 15, 2012
Page 2


pursuant to the subpoena.   Please provide a clear answer by the close of
business tomorrow.  If you will not comply with the subpoena, we will move
forward with our remedies.  If you will comply, we can discuss how and when we
can work together to achieve compliance.

Sincerely,

Ashlee B. Fletcher
For the Firm


ABF/slw
2698941.1

cc:   Michael E. Gottfried
      Dawn Northup
      Kelly Dudley

**EXHIBIT 10**

**From:** DONNA LEONE HAMM [mailto:middlegroundprisonreform@msn.com]
**Sent:** Tuesday, October 16, 2012 11:21 AM
**To:** Sherri Wolford; Ashlee Fletcher
**Subject:** RE: Parsons, et al. v. Ryan, et al. - Subpoena Duces Tecum


**Ms. Fletcher:**

I am in receipt of the letter dated October 15, 2012 which indicates that you have now (finally) addressed my strenuously expressed concern regarding the original subpoena, which had no time line incorporated, and that you now wish to have records  dating back only to January 1, 2011.   I can assure you that if you had only addressed this concern when it was initially brought to your attention (see my letter to Mr. Bojanowski dated August 8, 2012), we would not have had the problems and issues that have created so much correspondence between us.

We can comply with this request with the following considerations, and without necessity for any "assistance" from your staff in digging through old hard-copy records  in our storage facility dating all the way back to 1983.

My husband and I are in the process of re-locating our full-time offices for both Middle Ground

and for our private consulting businesses to our home offices at 139 E. Encanto Drive, Tempe, Arizona. This change of location from a downtown law firm where we presently rent offices will be finalized on the weekend of November 3-4, 2012. Presently, many records and files are boxed and awaiting transport to our newly-expanded home offices. In the meantime, it would be unduly burdensome to sift through boxes -- even of files dating back only to 2011 -- and also to keep those records separate from the many files and records which are now in the process of being labeled and sorted for transit. In addition to packing, sorting materials and moving boxes, office furniture and equipment, we also are responsible for keeping up with current consulting client deadlines, which include commutation of sentence hearings before the Board of Executive Clemency, Mitigation hearings for private attorney clients, and for my husband's post-conviction relief consulting work.

We have no intention of destroying or concealing relevant files. Instead, we are simply trying to keep some sort of organizational process in place which will not create missed deadlines or other problems for our current paying private consulting clients. Our work for Middle Ground is entirely on a voluntary basis.

We can work with you to produce the requested records by no later than November 15, 2012, at the close of business. This would allow us ample time to move our records, re-establish a working filing system in the new location, and to spend the time that is required to locate the relevant files both in hard-copy format and on our various computers. The November 15, 2012 date should not create any problems for your firm, nor is the request made for any dilatory purpose whatsoever. Please advise in writing as to your agreement to the above terms. We will still need reimbursement for all photocopies made, and will need some information about how that reimbursement will take place. In addition, we will need instructions about delivery or pick-up of the relevant documents in a manner that does not create additional expense for us.


**Donna Leone Hamm, Judge (Ret.)**
**Criminal Justice Consultant**
**Executive Director**
**Middle Ground Prison Reform**
**(480) 966-8116**
**MIDDLE GROUND HAS BEEN ARIZONA'S PREMIER ADVOCACY ORGANIZATION**
**PROTECTING THE RIGHTS OF THE INCARCERATED SINCE 1983**

---

From: SWolford@swlfirm.com
To: middlegroundprisonreform@msn.com
CC: michael.gottfried@azag.gov; dnorthup@azcorrections.gov; kdudley@azcorrections.gov; ParsonsTeam@swlfirm.com
Subject: Parsons, et al. v. Ryan, et al. - Subpoena Duces Tecum
Date: Mon, 15 Oct 2012 23:36:45 +0000

Ms. Hamm,

Attached is a letter from Ashlee Fletcher regarding the Subpoena Duces Tecum served in this case.

Best regards,
Sherri

**EXHIBIT 11**



STRUCK WIENEKE & LOVE   [ 3100 West Ray Road, Suite 300   Chandler, Arizona 85226   480.420.1600   swlfirm.com ]

October 18, 2012

Daniel P. Struck
PARTNER

Kathleen L. Wieneke
PARTNER

Rachel Love
PARTNER

Timothy J. Bojanowski
PARTNER

Christina Retts
SENIOR ASSOCIATE

Jennie B. Grgurich
ASSOCIATE

Nicholas D. Acedo
ASSOCIATE

Tara B. Zoellner
ASSOCIATE

Amy L. Nguyen
ASSOCIATE

Ashlee B. Fletcher
ASSOCIATE

Courtney R. Cloman
ASSOCIATE

Anne M. Orcutt
OF COUNSEL

Jennifer Robinson Tetrenault
OF COUNSEL

David C. Lewis
OF COUNSEL

Donna Leone Hamm
Middle Ground Prison Reform
139 E. Encanto Drive
Tempe, AZ 85281

Re:   Parsons, et al. v. Ryan and Pratt
       U.S. District Court of Arizona; 2:12-cv-00601

Dear Ms. Hamm:

Thank you for agreeing to comply with the Subpoena Duces Tecum by producing relevant documents from January 1, 2011 to the present, as described in the Subpoena.

As proposed in your October 16, 2012 letter, please produce all relevant documents by November 15, 2012.  Defendants will pick up all responsive documents from your "home office" located at 139 E. Encanto Drive, Tempe, Arizona, at 9:00 a.m. on November 15, 2012.

Defendants will reimburse you .10 cents per page.  Pursuant to A.R.S. § 12-351(C), Defendants are not required to pay reasonable costs before the documents are available for delivery pursuant to the subpoena.  Further, and pursuant to A.R.S. § 12-351(C), Defendants will provide you with reimbursement costs simultaneously with actual delivery of the subpoenaed documents.

Sincerely,

Ashlee B. Fletcher
For the Firm

ABF/slw
2699671.1

cc:   Michael E. Gottfried
       Dawn Northup
       Kelly Dudley

[ Ashlee B. Fletcher | afletcher@swlfirm.com | Direct: 480.420.1631 | swlfirm.com ]

**EXHIBIT 12**



STRUCK WIENEKE & LOVE   [ 3100 West Ray Road, Suite 300   Chandler, Arizona 85226   480.420.1600   swlfirm.com ]

October 18, 2012

Daniel P. Struck
PARTNER

Kathleen L. Wieneke
PARTNER

Rachel Love
PARTNER

Timothy J. Bojanowski
PARTNER

Christina Retts
SENIOR ASSOCIATE

Jamie D. Guzman
ASSOCIATE

Nicholas D. Acedo
ASSOCIATE

Tara B. Zoellner
ASSOCIATE

Amy L. Nguyen
ASSOCIATE

Ashlee B. Fletcher
ASSOCIATE

Courtney R. Cloman
ASSOCIATE

Anne M. Orcutt
ASSOCIATE

Jennifer Sheridan Zofkiewicz
OF COUNSEL

Daniel C. Lewis
OF COUNSEL

Donna Leone Hamm
Middle Ground Prison Reform
139 E. Encanto Drive
Tempe, AZ 85281

Re:   Parsons, et al. v. Ryan and Pratt
      U.S. District Court of Arizona; 2:12-cv-00601

Dear Ms. Hamm:

Please be advised that Defendants believe electronically stored information to be an important and irreplaceable source of evidence in the above-referenced matter.

The Subpoena served in this matter sought information from Middle Ground and your computer systems, removable electronic media and other locations. This includes, but is not limited to, e-mail and other electronic communications, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and network access information.

The laws and rules prohibiting destruction of evidence apply to electronically stored information in the same manner that they apply to other evidence. Because of its format, electronic information is easily deleted, modified or corrupted. Accordingly, Middle Ground and you must take every reasonable step to preserve this information. This includes, but is not limited to, an obligation to discontinue all relevant data destruction and backup tape recycling policies. Similarly, the obligation to preserve relevant documents applies to hard copies as well.

If this correspondence is in any respect unclear, please do not hesitate to contact us.

Sincerely,

Ashlee B. Fletcher
For the Firm

ABF/slw
2699956.1

Donna Leone Hamm
October 18, 2012
Page 2


cc:    Michael E. Gottfried
       Dawn Northup
       Kelly Dudley

**EXHIBIT 13**

1  Daniel Pochoda (Bar No. 021979)
   Kelly J. Flood (Bar No. 019772)
2  James Duff Lyall (Bar No. 330045)*
   **ACLU FOUNDATION OF ARIZONA**
3  3707 North 7th Street, Suite 235
   Phoenix, Arizona 85013
4  Telephone:  (602) 650-1854
   Email: dpochoda@acluaz.org
5         kflood@acluaz.org
          jlyall@acluaz.org
6  *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7  *Attorneys for Plaintiffs Victor Parsons, Shawn Jensen,*
   *Stephen Swartz, Dustin Brislan, Sonia Rodriguez,*
8  *Christina Verduzco, Jackie Thomas, Jeremy Smith,*
   *Robert Gamez, Maryanne Chisholm, Desiree Licci,*
9  *Joseph Hefner, Joshua Polson, and Charlotte Wells, on*
   *behalf of themselves and all others similarly situated*
10
   **[ADDITIONAL COUNSEL LISTED ON**
11  **SIGNATURE PAGE]**

12              UNITED STATES DISTRICT COURT

13                 DISTRICT OF ARIZONA

14 | Victor Parsons; Shawn Jensen; Stephen Swartz; | No. CV 12-00601-PHX-NVW
   | Dustin Brislan; Sonia Rodriguez; Christina | (MEA)
15 | Verduzco; Jackie Thomas; Jeremy Smith; Robert |
   | Gamez; Maryanne Chisholm; Desiree Licci; Joseph |
16 | Hefner; Joshua Polson; and Charlotte Wells, on | **INDIVIDUAL NAMED**
   | behalf of themselves and all others similarly | **PLAINTIFFS' FIRST**
17 | situated; and Arizona Center for Disability Law, | **SUPPLEMENTAL**
   |                                                | **DISCLOSURE STATEMENT**
18 |                  Plaintiffs,                   |

19              v.

20  Charles Ryan, Director, Arizona Department of
    Corrections; and Richard Pratt, Interim Division
21  Director, Division of Health Services, Arizona
    Department of Corrections, in their official
22  capacities,

23                 Defendants.

24

25

26

27

28

Pursuant to Fed. R. Civ. P. 26(a)(1), named plaintiffs Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; Charlotte Wells (collectively, "Prison Plaintiffs"), amend Individual Named Plaintiffs' Initial Disclosure Statement, served June 29, 2012 as follows:

Prisoner Plaintiffs remove the names of the following witnesses from Section I(F) of Prisoner Plaintiffs' Initial Disclosure Statement because Prisoner Plaintiffs do not currently anticipate a need to call them as witnesses:

1.     Donna Hamm, Middle Ground Prison Reform, 139 E. Encanto Drive, Tempe, Arizona, 85281, (480) 966-8116.

2.     Bob Ortega, Arizona Republic, 200 E. Van Buren St., Phoenix, Arizona, (602) 444-8928.

Plaintiffs reserve the right to continue to supplement or amend its disclosures in accordance with Rule 26 or court order.

Dated: October 17, 2012

**PERKINS COIE LLP**

By:  s/ John H. Gray
Daniel C. Barr (Bar No. 010149)
Jill L. Ripke (Bar No. 024837)
James A. Ahlers (Bar No. 026660)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Thomas D. Ryerson (Bar No. 028073)
Matthew B. du Mée (Bar No. 028468)
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:     dbarr@perkinscoie.com
           rjipke@perkinscoie.com
           jahlers@perkinscoie.com
           keidenbach@perkinscoie.com
           jhgray@perkinscoie.com
           tryerson@perkinscoie.com
           mdumee@perkinscoie.com

1   Daniel Pochoda (Bar No. 021979)
    Kelly J. Flood (Bar No. 019772)
2   James Duff Lyall (Bar No. 330045)*
    **ACLU FOUNDATION OF**
3   **ARIZONA**
    3707 North 7th Street, Suite 235
4   Phoenix, Arizona 85013
    Telephone: (602) 650-1854
5   Email:   dpochoda@acluaz.org
              kflood@acluaz.org
6             jlyall@acluaz.org

7   *Admitted pursuant to Ariz. Sup. Ct.
    R. 38(f)
8
    Donald Specter (Cal. 83925)*
9   Alison Hardy (Cal. 135966)*
    Sara Norman (Cal. 189536)*
10  Corene Kendrick (Cal. 226642)*
    **PRISON LAW OFFICE**
11  1917 Fifth Street
    Berkeley, California 94710
12  Telephone: (510) 280-2621
    Email:   dspecter@prisonlaw.com
13            ahardy@prisonlaw.com
              snorman@prisonlaw.com
14            ckendrick@prisonlaw.com

15  *Admitted *pro hac vice*

16  David C. Fathi (Wash. 24893)*
    Amy Fettig (D.C. 484883)**
17  **ACLU NATIONAL PRISON
    PROJECT**
18  915 15th Street N.W., 7th Floor
    Washington, D.C. 20005
19  Telephone: (202) 548-6603
    Email:   dfathi@npp-aclu.org
20            afettig@npp-aclu.org

21  *Admitted *pro hac vice*.  Not admitted
    in DC; practice limited to federal
22  courts.
    **Admitted *pro hac vice*
23
24
25
26
27
28

-2-

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:    cnmitchell@jonesday.com
          dkiernan@jonesday.com
          scalderon@jonesday.com
          srauh@jonesday.com

*Admitted *pro hac vice*

R. Scott Medsker (D.C. 976405)*
**JONES DAY**
51 Louisiana Avenue, NW
Washington, D.C. 20001-2113
Telephone:  (202) 879-3837
Email:    rsmedsker@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Kate A. Suh (Tex. 24075132)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:    jlwilkes@jonesday.com
          ksuh@jonesday.com
*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:    kmamedova@jonesday.com
          jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Victor Parsons;
Shawn Jensen; Stephen Swartz; Dustin
Brislan; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2012, I e-mailed a copy of the attached document to the following parties:

Michael E. Gottfried
Assistant Arizona Attorney General
Michael.Gottfried@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

*Attorneys for Defendants*

Jennifer Alewelt
Asim Varma
Sarah Kader
ARIZONA CENTER FOR DISABILITY LAW
jalewelt@azdisabilitylaw.org
avarma@azdisabilitylaw.org
skader@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

s/ Stephanie Lawson

LEGAL24926418.1

**EXHIBIT 14**

| | |
|---|---|
| **From:** | DONNA LEONE HAMM <middlegroundprisonreform@msn.com> |
| **Sent:** | Thursday, October 18, 2012 9:37 PM |
| **To:** | Sherri Wolford; Ashlee Fletcher |
| **Subject:** | New Information:  Parsons, et. al v. Ryan, et al |

### Ms. Fletcher:

It is my understanding that the Plaintiffs have served notice in writing today, via a revised and/or amended Disclosure Notice, that Donna Hamm of Middle Ground Prison Reform will not be called as a witness in their case.  As a result, I see absolutely no reason whatsoever to comply with any subpoena for records from Middle Ground Prison Reform.  Indeed, we will not comply with any subpoena for such records, and you are free to pursue whatever remedies you feel might potentially be available to you.  If you continue to attempt to pursue the records, however, we intend to obtain a Protective Order from the Court in this matter.

Just to be clear, especially since the requested records contain private information about the medical conditions or records of individuals for whom we advocated from January 1, 2011 to the present, we will not comply with our previous agreement to provide such records by November 15, 2012.  You should be aware that the only reason we previously agreed to do so was because the ACLU had not formally taken steps, until today, to provide notice of removal of our organization (or myself) as a potential witness.


**Donna Leone Hamm, Judge (Ret.)**
**Criminal Justice Consultant**
**Executive Director**
**Middle Ground Prison Reform**
**(480) 966-8116**
**MIDDLE GROUND HAS BEEN ARIZONA'S PREMIER ADVOCACY ORGANIZATION**
**PROTECTING THE RIGHTS OF THE INCARCERATED SINCE 1983**

**EXHIBIT 15**



**STRUCK WIENEKE & LOVE**

[ 3100 West Ray Road, Suite 300I  Chandler, Arizona 85226  **480.420.1600**  swlfirm.com ]

October 19, 2012

Daniel P. Struck
PARTNER

Kathleen L. Wieneke
PARTNER

Rachel Love
PARTNER

Timothy J. Bojanowski
PARTNER

Christina Retts
SENIOR ASSOCIATE

James B. Grayson
ASSOCIATE

Nicholas D. Acedo
ASSOCIATE

Tara B. Zoellner
ASSOCIATE

Amy L. Nguyen
ASSOCIATE

Ashlee B. Fletcher
ASSOCIATE

Courtney R. Cloman
ASSOCIATE

Anne M. Orcutt
ASSOCIATE

Jennifer Hoseman Tiffabalt
OF COUNSEL

David C. Lewis
OF COUNSEL

Donna Leone Hamm
Middle Ground Prison Reform
139 E. Encanto Drive
Tempe, AZ 85281

        Re:    Parsons, et al. v. Ryan and Pratt
              U.S. District Court of Arizona; 2:12-cv-00601

Dear Ms. Hamm:

    This letter is in response to your October 18, 2012 email regarding Defendants' Subpoena Duces Tecum. In that letter, you assert you will no longer be complying with Defendants' Subpoena Duces Tecum, despite your contention to the contrary earlier this week, because Plaintiffs have removed you from their Initial Disclosure Statement. You have provided absolutely no support for your position that being removed from a disclosure statement somehow absolves you from your obligation to comply with a subpoena. Your position that only persons listed as witnesses in a case are subject to a subpoena is wholly inaccurate. And you have provided no legal authority which supports your position or that you are entitled to a protective order.

    The excuse listed in your most recent letter is that you cannot produce private information about individuals. If inmates produced "private" information to you and your organization, without a release, they did so waiving their medical privilege. If you obtained the information with a release, you have not provided a copy to us so that we can review the terms of the release of information to you.

    In any event, attached is a copy of the Protective Order entered in this case. Any documents produced by you and produced in response to the subpoena can be marked confidential under the Protective Order to preserve the privacy of the records.

    You have failed to comply with the subpoena after our numerous reasonable attempts to assist you in complying. Federal Rule of Civil Procedure 45(c)(2)(B)(i) states that, "at any time, on notice to the commanded *person*, the serving party may move the issuing court for an order compelling production or inspection." (emphasis added).

    Defendants have continuously tried to work with you regarding this matter. We feel that we have reached an impasse and must now proceed to court intervention. This letter serves as our notice to you, the commanded person, that we will move for an order compelling production.

[ Ashlee B. Fletcher | afletcher@swlfirm.com | Direct: 480.420.1631 | swlfirm.com ]

Donna Leone Hamm
October 19, 2012
Page 2


      Unless we hear otherwise from you, Defendants will file a Motion to Compel on Monday.

                              Sincerely,

                              Ashlee B. Fletcher
                              For the Firm

ABF/slw
Enclosure
2700463.1
cc:    Michael E. Gottfried
        Dawn Northup
        Kelly Dudley