Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: dpochoda@acluaz.org
        kflood@acluaz.org
        jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Victor Parsons, Shawn Jensen,
Stephen Swartz, Dustin Brislan, Sonia Rodriguez,
Christina Verduzco, Jackie Thomas, Jeremy Smith,
Robert Gamez, Maryanne Chisholm, Desiree Licci,
Joseph Hefner, Joshua Polson, and Charlotte Wells, on
behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED IN PUBLIC
DOCUMENTS]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-NVW (MEA) |

**LODGED:  Proposed**

**PRISONER PLAINTIFFS' MOTION & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION (Redacted) Attached**

1  Daniel Pochoda (Bar No. 021979)
   Kelly J. Flood (Bar No. 019772)
2  James Duff Lyall (Bar No. 330045)*
   **ACLU FOUNDATION OF ARIZONA**
3  3707 North 7th Street, Suite 235
   Phoenix, Arizona 85013
4  Telephone: (602) 650-1854
   Email: dpochoda@acluaz.org
5         kflood@acluaz.org
          jlyall@acluaz.org
6
   *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)
7
   *Attorneys for Plaintiffs Victor Parsons, Shawn Jensen,*
8  *Stephen Swartz, Dustin Brislan, Sonia Rodriguez,*
   *Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert*
9  *Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner,*
   *Joshua Polson, and Charlotte Wells, on behalf of*
10 *themselves and all others similarly situated*

11 **[ADDITIONAL COUNSEL LISTED ON**
     **SIGNATURE PAGE]**
12
                  UNITED STATES DISTRICT COURT
13
                      DISTRICT OF ARIZONA
14
15 Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-NVW
   Dustin Brislan; Sonia Rodriguez; Christina           (MEA)
   Verduzco; Jackie Thomas; Jeremy Smith; Robert
16 Gamez; Maryanne Chisholm; Desiree Licci; Joseph
   Hefner; Joshua Polson; and Charlotte Wells, on       **PRISONER PLAINTIFFS'**
17 behalf of themselves and all others similarly        **MOTION &**
   situated; and Arizona Center for Disability Law,     **MEMORANDUM OF**
18                                                       **POINTS AND**
                           Plaintiffs,                   **AUTHORITIES IN**
19                                                       **SUPPORT OF CLASS**
         v.                                              **CERTIFICATION**
20
   Charles Ryan, Director, Arizona Department of
21 Corrections; and Richard Pratt, Interim Division     **ORAL ARGUMENT**
   Director, Division of Health Services, Arizona       **REQUESTED**
22 Department of Corrections, in their official
   capacities,
23                         Defendants.

24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.   MOTION FOR CLASS CERTIFICATION .......................................................... 1

II.  MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
     THE MOTION FOR CLASS CERTIFICATION .............................................. 1

     A.   STATEMENT OF FACTS......................................................................... 4

          1.   Health Care..................................................................................... 4

          2.   Isolation .......................................................................................... 8

     B.   ARGUMENT ........................................................................................... 9

          1.   Plaintiffs Satisfy the Numerosity, Commonality, Typicality,
               and Adequacy Requirements of Rule 23(a) ...................................... 9

               a.   The Numerosity Requirement of Rule 23(a)(1) is
                    Satisfied Because the Class and Subclass
                    Include Thousands of Members at Any Given
                    Time ......................................................................... 10

               b.   The Commonality Requirement of Rule 23(a)(2)
                    is Satisfied Because the Challenged Policies
                    Present Numerous Common Questions of Fact
                    and Law...................................................................... 10

               c.   The Typicality Requirement of Rule 23(a)(3) is
                    Satisfied Because the Named Plaintiffs' Claims
                    are Representative of Those of the Class................... 15

               d.   The Named Plaintiffs Will Fairly and
                    Adequately Protect the Interests of the Class as
                    Required by Rule 23(a)(4) ........................................ 16

          2.   The Requirements of Rule 23(b)(2) are Satisfied Because This
               Case Seeks Declaratory and Injunctive Relief from Policies
               and Practices that Place the Class and the Subclass at Risk of
               Harm................................................................................................. 17

III. THE COURT SHOULD DESIGNATE PLAINTIFFS' COUNSEL AS
     CLASS COUNSEL UNDER RULE 23(g)(1) ...................................................... 19

IV.  CONCLUSION ..................................................................................................... 21

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001).................................................................. 3, 14, 15

5

6

*Armstrong v. Wilson*,
  124 F.3d 1019 (9th Cir. 1997)...................................................................... 18

7

8

*Baby Neal for and by Kanter v. Casey*,
  43 F.3d 48 (3rd Cir. 1994)............................................................................ 17

9

*Betts v. Reliable Collection Agency, Ltd.*,
  659 F.2d 1000 (9th Cir. 1981)........................................................................ 9

10

11

*Bradley v. Harrelson*,
  151 F.R.D. 422 (M.D. Ala. 1993).................................................................. 17

12

13

*Brown v. Plata*,
  563 U.S. __, 131 S.Ct. 1910 (2011) ....................................................... 3, 14, 19

14

15

*Casey v. Lewis*,
  834 F. Supp. 1477 (D. Ariz. 1993)........................................................ 1, 8, 11, 13

16

*Clark v. California*,
  123 F.3d 1267 (9th Cir. 1997)...................................................................... 18

17

18

*Connor B. v. Patrick*,
  278 F.R.D. 30 (D. Mass. 2011)................................................................ 14, 19

19

20

*D.G. ex rel. Strickland v. Yarbrough*,
  278 F.R.D. 635 (N.D. Okla. 2011) ................................................................ 14

21

22

*Farmer v. Brennan*,
  511 U.S. 825 (1994) .................................................................................... 11

23

*Graves v. Arpaio*,
  623 F.3d 1043 (9th Cir. 2010)........................................................................ 13

24

25

*Helling v. McKinney*,
  509 U.S. 25 (1993) ............................................................................... 2, 16, 18

26

27

*Henderson v. Thomas*,
  No. 2:11-cv-224, 2012 WL 3777146 (M.D. Ala. Aug. 30, 3012)................................ 14

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Hoptowit v. Ray*,
    682 F.2d 1237 (9th Cir. 1982) .......................................................................... 18

*Inmates of San Diego Cnty Jail in Cell Block 3B v. Duffy*,
    528 F.2d 954 (9th Cir. 1975) ........................................................................... 19

*Leeds v. Watson*,
    630 F.2d 674 (9th Cir. 1980) ............................................................................ 18

*Mayweathers v. Newland*,
    258 F.3d 930 (9th Cir. 2001) ............................................................................ 18

*Morrow v. Washington*,
    277 F.R.D. 172 (E.D. Tex. 2011) ..................................................................... 14

*Ortega-Melendres v. Arpaio*,
    836 F. Supp. 2d 959 (D. Ariz. 2011) .......................................................... 11, 13

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2009) .............................................. 14, 15, 17, 18

*Rosas v. Baca*,
    No. CV 12-00428-DDP, 2012 WL 2061694 (C.D. Cal. June 7, 2012) ........................ 13

*Toussaint v. Yockey*,
    722 F.2d 1490 (9th Cir. 1984) .......................................................................... 18

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. ___, 131 S.Ct. 2541 (2011) ...................................................... 10, 11, 19

*Walters v. Reno*,
    145 F. 3d 1032 (9th Cir. 1998) .............................................. 9, 16, 17, 18

STATUTES

Ariz. Rev. Stat. § 31-201.01(D) ............................................................................ 11

OTHER AUTHORITIES

Fed. R. Civ. P. 23 ................................................................................... passim

Fed. R. Civ. P. 30(b)(6) ............................................................................................ 3

WILLIAM B. RUBENSTEIN, ET AL., NEWBERG ON CLASS ACTIONS, § 3.12 (5th ed.
    2011) ........................................................................................................... 10

I.      **MOTION FOR CLASS CERTIFICATION**

Plaintiffs Victor Parsons, Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, by and through their attorneys, respectfully move the Court for an order certifying this proceeding as a class action pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.  The proposed class, on whose behalf the representative Plaintiffs named in the Complaint bring constitutional claims, is defined below.  Plaintiffs Gamez, Swartz, Brislan, Rodriguez, Verduzco, Thomas, Smith, and Polson further move the Court for an order certifying a subclass, defined below, pursuant to Rule 23(a) and 23(b)(2).  Plaintiffs also request an order appointing the undersigned counsel to represent the certified class and subclass, pursuant to Rule 23(g).

II.     **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF THE MOTION FOR CLASS CERTIFICATION**

This case arises from systemic failures of Defendants Ryan and Pratt to provide minimally adequate health care and constitutional conditions of confinement in isolation to prisoners in the Arizona Department of Corrections ("ADC").  Defendants have been, and continue to be, deliberately indifferent to these systemic failures and to the inhumane conditions in the isolation units.  Their indifference results in an unreasonable risk of serious harm to prisoners' mental and physical health.  Fourteen prisoners who have been subject to and harmed by Defendants' constitutionally inadequate policies and procedures seek to represent a class of prisoners housed in ADC prisons.  Plaintiffs seek declaratory and injunctive relief, including an order compelling Defendants to immediately develop a plan to provide Plaintiffs and the proposed class with constitutionally adequate health care and protection from unconstitutional conditions of confinement in ADC's isolation units.

Twenty years ago, this Court resolved a prisoner class action raising many of the same claims by issuing injunctions against Arizona prison officials.  *Casey v. Lewis*, 834 F. Supp. 1477 (D. Ariz. 1993).    Unfortunately,  the  evidence  demonstrates  that

constitutionally adequate health care and conditions in the isolation units did not survive the end of that litigation.  It is again necessary for this Court to certify a class in order to remedy the conditions that expose ADC prisoners to an unreasonable risk of serious harm.  *See Helling v. McKinney*, 509 U.S. 25, 35 (1993) (plaintiff "states a cause of action under the Eighth Amendment by alleging that [defendants] have, with deliberate indifference, exposed him to [conditions] that pose an unreasonable risk of serious damage to his future health").  By this motion, Plaintiffs seek such an order certifying the case as a class action under Federal Rules of Civil Procedure 23(a) and (b)(2).

Here, the Class comprises all prisoners who are now, or will in the future be, subjected to the medical, mental health and dental care (collectively "health care") policies and practices of the ADC.[1]  The Subclass comprises all prisoners who are now, or will in the future be, subjected by the ADC to isolation, defined as confinement in a cell for 22 hours or more each day or confinement in the following housing units: Eyman – SMU 1, Eyman – Browning Unit, Florence – Central Unit; Florence – Kasson Unit, or Perryville – Lumley Special Management Area.

Because the Class comprises over 33,000 prisoners there is no question that Plaintiffs satisfy the numerosity requirement.  *See* Fed. R. Civ. P. ("Rule[s]") 23(a)(1); Ex. QQQ, Ariz. Dep't of Corrections, *ADC Institutional Capacity Committed Population* (Oct. 22, 2012).  Similarly, as explained below, Plaintiffs and their counsel easily satisfy the adequacy of representation prong of Rule 23(a)(4).  Finally, the ADC health care system and the conditions in isolation units are controlled through Defendants' centralized policies, procedures, and practices.  These policies, procedures, and practices are applicable to all ADC prisons and employees, making the Plaintiffs' claims common to, and typical of, those of the Class.  Rule 23(a)(2), (3).  They also show that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final

---

[1] This proposed class does not include the approximately 6,400 Arizona prisoners housed in private for-profit prisons pursuant to contracts with ADC.

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Rule 23(b)(2).

Defendants assert that their main objection to class certification is a lack of commonality and typicality.  *See* Declaration of D. Fathi, November 9, 2012, Ex. DD, Reporter's Transcript ("RT"), July 20, 2012 at 8:9-16[2]  ("[P]laintiffs have alleged through 14 plaintiffs inadequate medical care for many of them.  But when you go to the doctor, you present certain symptoms.  They all have a variety of different symptoms and there's different plans to treat those symptoms.  So they all have their individual claims.  And that's what we are concerned about, is whether they are adequate representatives of the class and whether they present common questions").[3]  That objection fails because testimony from the ADC itself shows that even though every patient reacts differently to treatment, the centralized policies and procedures are "important . . . in the statewide system to be sure that the patients have the appropriate care."  Ex. Y, Rowe Dep. 119:4-15 (testifying for the ADC as a Rule 30(b)(6) deponent).   Those centralized policies, procedures and practices are the subject of this lawsuit.

Further, commonality and typicality are satisfied in the Ninth Circuit when a lawsuit challenges a system-wide policy or practice and when each class member makes similar legal arguments to prove liability arising from the same course of conduct.  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (certifying a class of prisoners who suffered from varying disabilities).  In this case, Plaintiffs are not seeking relief for individual prisoners.  Instead, they seek system-wide injunctive relief under the same legal theory:  the conditions in Arizona's state prisons create an unreasonable risk of harm in violation of the Eighth Amendment.  *See Brown v. Plata*, 563 U.S. __, 131 S.Ct. 1910

---

[2]  All excerpts of transcripts, expert declarations, plaintiff declarations, and documents referenced herein are attached as exhibits to the Declaration of D. Fathi ("Fathi Decl.") filed concurrently with this Memorandum of Points and Authorities.  For ease of reading and economy, all such exhibits will be referenced hereinafter as simply "Ex. ___".

[3]  Defendants raised no commonality or typicality concerns regarding the isolation claims.

(2011) (affirming system-wide injunctive relief for California prisoners denied constitutionally adequate health care).  Defendants' arguments are without merit and the class should be certified.

A.     **STATEMENT OF FACTS**

1.     **Health Care**

The ADC employs statewide policies and procedures to regulate the delivery of health care.  Ex. Y, Rowe Dep. 119:4-15.  The staffing patterns, medical policies, and guidelines for treatment are developed in the ADC's central office and must be followed at each prison.  *Id*. at 51:13-52:1; 165:2-12.  These centralized policies and procedures are intended to provide essential care to prisoners, but both the policies themselves and their implementation are broken.  In fact, the ADC and its health care contractor, Wexford Health Sources ("Wexford"), have both documented the abysmal conditions and systemic deficiencies that put the lives and health of prisoners at serious risk.  The ADC's own findings demonstrate that not only is class certification appropriate, but also essential to protect the Eighth Amendment rights of the Plaintiffs, the Class, and the Subclass.

The inadequacies of this system are widespread and acknowledged, by both ADC and its agent, Wexford.

In a scathing September 21, 2012 letter to Wexford, ADC had previously catalogued the systemic deficiencies and dangerous practices that threaten serious harm to the prisoners completely dependent upon this dysfunctional system.  Ex. EE, at ADC027854-69.  ADC found that more than 8,000 prescriptions requiring review or

-4-

renewal due to "expired prescription(s) and inappropriate renewals or refills" remained unaddressed by Wexford.  *Id*. at ADC027855.  This failure endangers thousands of prisoners' access to appropriate medication.  *Id*.  ADC itself referred to the situation as a "significant issue of grave concern," and condemned Wexford's handling of medication administration issues: "[t]he failure to follow established nursing protocols, poor record keeping, mismanagement of documentation, inadequate and inaccurate communication, lack of timely managerial or administrative support, and failure to ensure that corrective action had been completed represent serious issues of non-compliance."  *Id*. at ADC027855-57.

ADC identified other serious systemic issues in the health care system.  And it found "[i]nadequate staffing levels in multiple program areas at multiple locations," which created "inappropriate scheduling gaps" and "forc[ed] existing staff to work excessive hours, creating fatigue risks."  *Id*. at ADC027858.  Dr. Ben Shaw, formerly head of mental health for ADC and now ADC Mental Health Contract Monitor, wrote in an August 13, 2012 memorandum that "Wexford's current level of psychiatry staffing is grossly insufficient to meet [its] contractual requirement.  Further, this staffing level is so limited that patient safety and orderly operation of [ADC] facilities may be significantly compromised."  Ex. KK, at ADC027770.  Among the five prison complexes that collectively house 90 to 95% of the mental health population, each had less than 50% of its psychiatric positions filled.  Ex. T, Shaw Dep. 126:22-127:10.  As of August 2012, there was no psychiatrist at either the Florence or Lewis complexes.  *Id*. at 76:22-77:1; 78:19-22.  Wexford has instituted the dangerous practice of expecting non-psychiatrist physicians to refill prescriptions for patients they have never examined and for psychiatric medications with which they are unfamiliar.  Ex. W, Sharp Dep. 84:10-87:14;

Ex. C, Cohen Decl. ¶ 40.

ADC's letter to Wexford further noted that there has been a "[q]uantitative decrease in routine institutional care," prescriptions that provide the wrong dosage or do not match the physician orders, "inappropriate [discontinuation] of medication," and an

communication and lack of training are only increased when registry is used." Ex. SS, at ADC028164.

In addition to staffing shortages, written ADC health care policies prevent prisoners from receiving the care they need and place the Class at risk. For example, ADC dental policies set forth inadequate triage protocols and fail to properly address ongoing pain and tooth decay. These failed written policies have resulted in, among other problems, a de facto tooth extraction policy for patients that is below the standard of care. Ex. D, Shulman Decl. ¶¶ 5-7, 42-43, 59-61. As another example, the only psychiatric inpatient facility for female prisoners does not accept prisoners with the highest security classification, leaving some prisoners, including                     without an adequate alternative because they are deemed too unstable for a less intensive treatment program. *See* Ex. V, Crews Dep. 136:20-137:17; 141:9-22. ADC policy does not require that prisoners on suicide watch be evaluated face-to-face by a psychiatrist, and ADC policy allows unlicensed mental health staff to remove prisoners from suicide watch. Ex. T, Shaw Dep. 164:15-19; 234:12-235:16. Another ADC policy fails to adequately protect prisoners who take certain psychotropic medications from the risk of heat stroke, which can cause serious injury or death. Ex. B, Stewart Decl. ¶¶ 34-36. All of these policies are below the standard of care in the community and create a substantial risk of harm to prisoners.

Dr. Jeffrey Sharp, a physician who worked for ADC since 1991 and is now employed in the same capacity by Wexford, described the systemic problems that continue to this day. He testified that problems with staffing shortages, access to consultants and medication issues are common, and if those problems are not addressed, they pose a serious health risk. Ex. W, Sharp Dep. 79:9-81:2. Among the cases he recalled were several patients whose chemotherapy and radiation therapy were

interrupted, including the case of one prisoner who had cancer on his lip. *Id*. at 175:24-176:14. In another recent case, Dr. Sharp was shocked that an x-ray report showing that a patient had a cavitary lesion in her lung was not delivered for two months even though this type of lesion puts the patient and others in her vicinity at risk of tuberculosis. *Id*. at 56:6-11; 177:8-179:21. Asked by the ADC's counsel whether the problems he identified are confined to the prison where he works, Dr. Sharp responded by testifying that the ADC's September 21, 2012 letter to Wexford "pretty much tells me it's systemwide." *Id*. at 180:24-181:10.

## 2.    Isolation

Thousands of ADC prisoners are held in isolation units, where they are confined to their cells for all but a few hours a week. Ex. E, Haney Decl. ¶¶ 43, 46. Moreover, Defendants admit that seriously mentally ill prisoners are held in isolation units consistent with ADC policy. Ex. BBBB, at ##1-2, 26 (hereinafter "RFA"); *see also* Ex. T, Shaw Dep. 135:21- 137:2; 168:5-7; Ex. MMM, ADC027759-27768; Ex. NNN, at 2. This policy exists despite the weight of medical, mental health and legal authority condemning the practice. *See* Ex. E, Haney Decl. ¶¶ 34-40, 47, 54; Ex. B, Stewart Decl. ¶ 28; *Casey*, 834 F. Supp. at 1548-49 (ADC's practice of housing mentally ill prisoners in isolation violates the Eighth Amendment). The dangers of housing severely mentally ill individuals in isolation are further exacerbated by the fact that ADC has no policy requiring a face-to-face mental health evaluation prior to placement in isolation. Ex. E, Haney Decl. ¶ 47; Ex. BBBB, RFA # 7. All prisoners in ADC isolation units, including those who are mentally ill, are subject to inadequate psychiatric monitoring because of chronic understaffing. *See* Ex. T, Shaw Dep. 53:16-54:5; 86:16-88:9; 126:22-127:10; 139:4-143:13. Moreover, the ADC's policy of subjecting mentally ill prisoners—even those on psychotropic medications—to the use of chemical agents in isolation units poses a substantial risk of harm. Ex. E, Haney Decl. ¶ 48.

Under ADC policy, prisoners in isolation are generally confined to their cells for all but three two-hour periods per week. Ex. BBBB, RFA #11. In practice even this

minuscule opportunity to exercise can be cancelled so that prisoners in isolation may have far less out-of-cell time than even the bare minimum suggested by policy. *Id.* at RFA #17. This extreme isolation is exacerbated by ADC's policies that allow for 24 hour illumination in some isolation cells, *id.* at RFA #21, limited property, including lack of access to TVs or radios, *id.* at RFA #22, and infrequent, reduced calorie meals, *id.* at RFA #31.

These policies and practices continue to cause serious harm to all prisoners subject to isolation and place all prisoners at risk of such harm. Ex. B, Stewart Decl. ¶¶ 28-29; Ex. E, Haney Decl. ¶¶ 13, 45, 49, 54. These policies, however, are similarly susceptible to resolution through a class action.[4]

### B.   ARGUMENT

#### 1.   Plaintiffs Satisfy the Numerosity, Commonality, Typicality, and Adequacy Requirements of Rule 23(a).

For a district court to certify a class, the named plaintiffs must satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Walters v. Reno*, 145 F. 3d 1032, 1045 (9th Cir. 1998). A class "may be divided into subclasses that are each treated as a class," Rule 23(c)(5), but each subclass "must independently meet the requirements of Rule 23 for the maintenance of a class action." *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981) (citing former Rule 23(c)(4)). Plaintiffs satisfy each of the four Rule 23(a) requirements for the Class and the Subclass.

---

[4] Additional facts are set forth in the expert declarations of Robert Cohen, M.D. (Ex. C), Pablo Stewart, M.D. (Ex. B), Jay D. Shulman, DMD, MA, MSPH (Ex. D), and Craig Haney, Ph.D., J.D. (Ex. E), as well as the declarations of each of the 14 named plaintiffs (Exs. F - S).

1

2

###### a. The Numerosity Requirement of Rule 23(a)(1) is Satisfied Because the Class and Subclass Include Thousands of Members at Any Given Time.

3  To meet the numerosity requirement of Rule 23(a), a class must be "so numerous

4  that joinder of all members is impracticable." Rule 23(a)(1). A class with 40 or more

5  members raises a presumption that the numerosity requirement has been satisfied.

6  WILLIAM B. RUBENSTEIN, ET AL., NEWBERG ON CLASS ACTIONS, § 3.12 at 198 (5th ed.

7  2011). Some 33,000 prisoners are in the custody of the ADC, and each one of them is

8  affected by the policies and practices challenged in this lawsuit. *See* Ex. QQQ. The Class

9  includes every present and future prisoner in ADC custody because every prisoner is

10  subject to Defendants' unconstitutional policies related to the provision of health care. As

11  for the Subclass, approximately 3,000 prisoners are in isolation at any given moment, and

12  all prisoners in the custody of the ADC are potentially subject to isolation. These

13  numbers are more than adequate to satisfy the numerosity requirement of Rule 23(a)(1).

14

15

###### b. The Commonality Requirement of Rule 23(a)(2) is Satisfied Because the Challenged Policies Present Numerous Common Questions of Fact and Law.

16  To meet the commonality requirement, there must be "questions of law or fact

17  common to the class." Rule 23(a)(2). The Supreme Court recently reiterated that

18  commonality requires the plaintiffs to demonstrate that each member of the class "ha[s]

19  suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, 131 S.Ct. 2541,

20  2551 (2011) (citation and quotation marks omitted). In *Dukes*, the Court clarified that, to

21  fulfill the commonality requirement, class claims must "depend upon a common

22  contention . . . [that is] capable of classwide resolution … mean[ing] that determination of

23  its truth or falsity will resolve an issue that is central to the validity of each one of the

24  claims in one stroke." *Id.* In other words, "[w]hat matters to class certification . . . [is]

25  the capacity of a classwide proceeding to generate common *answers* apt to drive the

26  resolution of the litigation." *Id.* (emphasis in original) (citation and quotation marks

27  omitted). Importantly, "for purposes of Rule 23(a)(2) [e]ven a single [common] question

28  will do." *Id.* at 2556 (citation and internal quotation marks omitted).

A question common to all members of the Class and the Subclass is whether Defendants Ryan and Pratt are deliberately indifferent to Class members' health and safety. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). The Court's answer to that question is "apt to drive the resolution of the litigation" because it will be the foundation for determining whether the Eighth Amendment has been violated and whether an injunction directing these Defendants to remedy the unconstitutional conditions is appropriate relief. *Dukes*, 131 S.Ct. at 2551 (citation omitted).

"In a civil rights suit, 'commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 989 (D. Ariz. 2011) (quoting *Armstrong*, 275 F.3d at 868). Defendants' deliberate indifference is such a system-wide practice that has created a significant risk of serious harm to all members of the Class. *See Dukes*, 131 S.Ct. at 2553 (noting that a supervisor's discriminatory bias could justify certifying a class of different groups of employees since the defendant's unlawful intent would manifest itself in different contexts).

For example, contrary to the holding of this Court 20 years ago in *Casey*, 834 F. Supp. at 1548-49, Defendants reinstated a statewide policy that violates the Eighth Amendment by allowing prisoners suffering from serious mental illness to be housed in isolation. Ex. BBBB, RFA ##1-2; Ex. T, Shaw Dep. 135:21-137:2; 168:5-7. Moreover, Defendants Ryan and Pratt control the health care and the conditions of confinement to which Plaintiffs are subject. Ariz. Rev. Stat. § 31-201.01(D) (Director has statutory obligation to "provide medical and health services for the prisoners").

As this Court previously noted,

"Ryan has a continuing duty to ensure that those to whom he delegated functions or duties performed those duties appropriately," and that delegation "does not absolve Ryan of his obligation to ensure the provision of medical care is constitutionally adequate."  Order Denying Defs.' Mot. to Dismiss 10 (Doc. 175).

Beyond Defendants' deliberate indifference, there are numerous system-wide policies and practices that are common to the Class and the Subclass that can be remedied by an injunction against Defendants:

- Dental "policies and practices with regard to staffing, inmate health requests, pain management, dental appliances, tooth extraction, and informed consent combine into a system that fails to adequately identify, or properly and timely treat, dental issues experienced by inmates….These failures place all inmates at risk not only of preventable pain, but also of teeth decay and unnecessary loss of teeth."  Ex. D, Shulman Decl. ¶ 3.

- "[T]he shortage of mental health staff, delays in providing or outright failure to provide mental health treatment, and the gross inadequacies in the provision of psychiatric medications are statewide systemic problems, and prisoners who need mental health care have already experienced, or will experience, a serious risk of injury to their health if these problems are not addressed."  Ex. B, Stewart Decl. ¶ 6.

- Defendants "have neglected the serious medical needs of the Arizona state prisoners by failing to manage, support, supervise and administer medical care to prisoners in the ten state facilities.  Because of this neglect, these prisoners are at serious risk of harm, and in some cases, death."  Ex. C, Cohen Decl. ¶ 5; *see also id.* ¶ 11 (noting deficiencies in qualified medical staffing, intake screening, timely access to medical care, adequate clinical facilities, medication distribution system, medical records and quality assurance).

- "Contrary to sound correctional practice and the weight of psychological and psychiatric opinion, ADC currently houses seriously mentally ill prisoners in its isolation units. ADC's failure to have and implement policy that excludes these prisoners from these units places these prisoners at an unreasonable risk of harm … [C]onditions of extreme isolation can create enormous harm in even previously healthy individuals.  ADC's apparent failure to put in place careful mental health monitoring policies for all prisoners subject to the extremely isolated conditions in their maximum security/isolation units, places all prisoners subject to such conditions at an unreasonable risk of harm." Ex. E, Haney Decl. ¶ 54; *see also* Ex. B, Stewart Decl. ¶¶ 28-29 (isolated confinement can damage the mental health of all prisoners and devastates those with serious mental illness, leading to severe deterioration, self-harm or suicide; ADC's lack of a policy excluding the seriously mentally ill from isolation has harmed the Plaintiffs).  Further, Defendants' policies, procedures, and conditions that exist in and apply to ADC's isolation units are typical of isolation units where the scientific literature has identified psychologically adverse effects on all prisoners.  Ex. E, Haney Decl. ¶¶ 15-33, 45, 53.

This Court's ruling in *Casey*, 834 F. Supp. 1477, demonstrates that these issues are sufficiently common to be capable of resolution through a class action.  *See also Graves v. Arpaio*, 623 F.3d 1043 (9th Cir. 2010) (class action challenge to conditions in Maricopa County Jail).  Post-*Dukes* cases also consistently confirm that a finding of commonality is appropriate in civil rights cases challenging overarching policies and practices such as these.  See *Rosas v. Baca*, No. CV 12-00428-DDP (SHx), 2012 WL 2061694, at *5 (C.D. Cal. June 7, 2012) (post-*Dukes* decision certifying prisoner class where the question whether officials were deliberately indifferent to a pattern or practice of violence was a common question likely to yield a common answer); *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 989 (D. Ariz. 2011) (certifying class in racial profiling lawsuit against

sheriff; court found that commonality was satisfied despite the fact that "the factual circumstances of the individual stops involving the named Plaintiffs differ[ed], [where the named Plaintiffs] claim[ed] generally that [the sheriff's office] ha[d] a policy of racial profiling "); *Henderson v. Thomas*, No. 2:11-cv-224, 2012 WL 3777146, at *5-*7 (M.D. Ala. Aug. 30, 3012) (post-*Dukes* decision certifying prisoner class where plaintiffs alleged a statewide policy of HIV segregation in the state prison system); *Morrow v. Washington*, 277 F.R.D. 172, 192 (E.D. Tex. 2011) (post-*Dukes* decision certifying class where plaintiffs alleged a "city wide policy … of targeting racial and ethnic minorities for traffic stops"); *Connor B. v. Patrick*, 278 F.R.D. 30, 31-35 (D. Mass. 2011) (certifying class of abused children in custody of state agency); *D.G. ex rel. Strickland v. Yarbrough*, 278 F.R.D. 635, 639 (N.D. Okla. 2011) (certifying class of children in foster care seeking redress for the defendants' failure to adequately monitor their safety); *see also Brown v. Plata*, 131 S. Ct. 1910 (2011) (decided the same term as *Dukes*; affirming class-wide injunctive relief to remedy inadequate medical and mental health care in all California prisons).

Differences among class members with respect to the specific incidents of inadequate health care or the adverse effects of isolation do not undermine commonality. *See Armstrong*, 275 F.3d at 868 (rejecting defendant's argument that class was improperly certified in prison case alleging several forms of systemic disability discrimination). In *Rodriguez v. Hayes*, the Ninth Circuit held:

> It is not necessary that all questions of fact and law ... be common to satisfy the rule.... [T]he existence of shared legal issues with divergent factual predicates is sufficient.... The commonality requirement asks us to look only for some shared legal issue or a common core of facts.

591 F.3d 1105, 1122 (9th Cir. 2009) (internal citations and quotations omitted).

As in *Armstrong* and *Rodriguez*, any dissimilarities between class members here pose no bar to a finding of commonality. The claims of the Class and the Subclass depend upon a single underlying question: whether the deliberate indifference of the Defendants

-14-

and the system-wide policies and practices regarding the provision of healthcare and the conditions of confinement in isolation units have placed them at serious risk of harm. This question is common to all class members.

### c.       The Typicality Requirement of Rule 23(a)(3) is Satisfied Because the Named Plaintiffs' Claims are Representative of Those of the Class.

To meet the typicality requirement, the claims of the named plaintiffs must be "typical of the claims or defenses of the class." Rule 23(a)(3). The typicality requirement is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868 (citations omitted). The injuries do not have to be identical, but must be similar and arise from the same course of conduct. *Id*; *Rodriguez*, 591 F.3d at 1124. In *Armstrong*, the Ninth Circuit affirmed a ruling certifying a class composed of prisoners with different disabilities, holding that the "plaintiffs all suffer a refusal or failure to afford them accommodations as required by statute, and are objects of discriminatory treatment on account of their disabilities." *Armstrong*, 275 F.3d at 869. Recognizing that prisoners with different disabilities will suffer different injuries as a result of the defendants' conduct, the Court held that those "minor" differences were "insufficient to defeat typicality." *Id*.

Here, the injuries suffered by the named Plaintiffs are similarly typical of the Class as a whole.[5]   Indeed, their injuries are typical of the kind that would result from Defendants' systemic failures. *See* Ex. B, Stewart Decl. ¶ 37; Ex. E, Haney Decl. ¶ 49;

---

[5]  The named Plaintiffs detail their injuries and the harms they have suffered in declarations attached to the Declaration of D. Fathi filed with this motion. Ex. I, Parsons Decl. ¶¶ 5-39; Ex. O, Jensen Decl. ¶¶ 4-51; Ex. L, Swartz Decl. ¶¶ 4-14; Ex. F, Brislan Decl.  ¶¶ 3-16 ; Ex. J, Rodriguez Decl. ¶¶ 3-14; Ex. S, Verduzco Decl. ¶¶ 3-16; Ex. M, Thomas Decl. ¶¶ 3-11; Ex. K, Smith Decl. ¶¶ 5-18; Ex. G, Gamez Decl. ¶¶ 3-24; Ex. H, Chisholm Decl. ¶¶ 3-27; Ex. N, Licci Decl. ¶¶ 2-31; Ex. P, Hefner Decl. ¶¶ 5-10; Ex. R, Polson Decl. ¶¶ 5-21; Ex. Q, Wells Decl. ¶¶ 3-20.  The Subclass Plaintiffs also attest to the conditions in isolation units and the resulting harm in their attached declarations. Ex. F, Brislan Decl. ¶¶ 8, 11, 13-16; Ex. J, Rodriguez Decl. ¶¶ 8-14; Ex. S, Verduzco Decl. ¶¶ 4-13; Ex. M, Thomas Decl. ¶¶ 6-8; 10-11; Ex. K, Smith Decl. ¶¶ 15-18; Ex. G, Gamez Decl. ¶¶ 10-12, 24; Ex. R, Polson Decl. ¶¶ 17-18.

Ex. C, Cohen Decl. ¶ 47; Ex. D, Shulman Decl. ¶ 72.  Each Plaintiff and each Class member is subject to an unreasonable risk of harm, which is the relevant injury for Eighth Amendment purposes.  *See Helling*, 509 U.S. at 35.  Even though every patient reacts differently to treatment, the ADC employs statewide policies and procedures to regulate the delivery of health care.  Ex. Y, Rowe Dep. 119:4-15.  The staffing patterns, the medical policies and the guidelines for treatment are developed in the ADC's central office and must be followed at each prison.  Ex. Y, Rowe Dep. 51:13-52:1; 165:2-12.  Thus, the harm that plaintiffs suffer from Defendants' actions is typical of the harm to other members of the Class.  Similarly, each of the Subclass members is subject to the same system-wide policies, practices and conditions that create a risk of harm for all prisoners in isolation.  Ex. B, Stewart Decl. ¶¶ 28-29; Ex. E, Haney Decl. ¶¶ 13, 49.

As in *Armstrong* and *Rodriguez*, the fact that every prisoner in ADC custody does not suffer exactly the same injuries as the named Plaintiffs, and that deprivations arise from the conduct of various staff members, are not grounds for denying class certification.  Because the risk of injury arises from the same deficient system-wide policies and practices, the Plaintiffs' claims are typical of those of the Class and the Subclass.

### d.   The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class as Required by Rule 23(a)(4).

The final requirement of Rule 23(a) is that the representative parties will fairly and adequately represent the interests of the class.  Rule 23(a)(4).  Satisfying this requirement depends on "'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'"  *Walters*, 145 F.3d at 1046 (citation omitted).

The named Plaintiffs, the Class, and the Subclass raise the same claims giving rise to common questions of fact and law.  The class representatives do not have any interests that are antagonistic to the interests of the Class or the Subclass, and they are committed to the vigorous prosecution of this suit.  Both the class representatives and class members have a common interest in ensuring that prisoners in the custody of ADC receive adequate

1    health care and are not subjected to unconstitutional conditions in isolation, and each has

2    affirmed his or her willingness to perform the duties of a class representative.[6]   There is

3    no suggestion of any collusion between the named Plaintiffs and any of the Defendants.

4    Moreover, no conflicts exist that could hinder the named Plaintiffs' ability to pursue this

5    lawsuit vigorously on behalf of the Class.  The named Plaintiffs will fairly and adequately

6    protect the interests of the Class and the Subclass.[7]

7
8
> **2.**      **The Requirements of Rule 23(b)(2) are Satisfied Because This Case Seeks Declaratory and Injunctive Relief from Policies and Practices that Place the Class and the Subclass at Risk of Harm.**

9         In addition to satisfying Rule 23(a), a class action must meet the requirements of

10    one of the provisions of Rule 23(b).  For the reasons described below, this case fits

11    squarely within Rule 23(b)(2), which authorizes class certification where "the party

12    opposing the class has acted or refused to act on grounds that apply generally to the class,

13    so that final injunctive relief or corresponding declaratory relief is appropriate respecting

14    the class as a whole." Rule 23(b)(2).  As the Ninth Circuit has explained, Section 23(b)(2)

15    "was adopted in order to permit the prosecution of civil rights actions." *Walters*, 145 F.3d

16    at 1047; *see also Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3rd Cir. 1994)

17    (noting that subsection (b)(2) "is almost automatically satisfied in actions primarily

18    seeking injunctive relief"); *Bradley v. Harrelson*, 151 F.R.D. 422, 427 (M.D. Ala. 1993)

19    (subsection (b)(2) "is particularly applicable to suits…involv[ing] conditions of

20    confinement in a correctional institution.").

21         Whether a class may be certified under Rule 23(b)(2) depends on "whether class

22    members seek uniform relief from a practice applicable to all of them." *Rodriguez*, 591

23

24

---

25         [6] All named Plaintiffs declare their willingness to serve as class representatives and their understanding of their duty to the class in doing so. *See* Ex. I, Parsons Decl. ¶ 3; Ex.

26    O, Jensen Decl. ¶ 3; Ex. L, Swartz Decl. ¶ 3; Ex. F, Brislan Decl. ¶ 2; Ex. J, Rodriguez Decl. ¶ 2; Ex. S, Verduzco Decl. ¶¶ 17-19; Ex. M, Thomas Decl. ¶ 2; Ex. K, Smith Decl.

27    ¶¶ 3-4; Ex. G, Gamez Decl. ¶ 2; Ex. H, Chisholm Decl. ¶¶ 28-29; Ex. N, Licci Decl. ¶ 32; Ex. P, Hefner Decl. ¶ 4; Ex. R, Polson Decl. ¶ 4; Ex. Q, Wells Decl. ¶¶ 21-22.

         [7] Defendants have stipulated that Plaintiffs' counsel are qualified to represent the

28    Class should the Court decide to grant class certification.

F.3d at 1125.  The fact that different class members have suffered different injuries—or no injury at all—does not bar certification under Rule 23(b)(2).  *Id.*; *see also Walters*, 145 F.3d at 1047 ("We note that with respect to 23(b)(2) in particular, the government's dogged focus on the factual differences among the class members appears to demonstrate a fundamental misunderstanding of the rule. . . . It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole.").

Here, high-level officials have placed all Class members at risk of grave mental and physical harm by turning a blind eye to grossly inadequate health care and unconstitutional conditions in isolation, and by failing to adopt the policies and practices necessary to ensure that ADC functions in a constitutional manner.  Plaintiffs seek injunctive and declaratory relief to abate the injuries Defendants' policies and practices inflict on the Class and the Subclass.  As explained by the Ninth Circuit in *Rodriguez*, whether all class members have not yet suffered harm, or suffered harm different from the named plaintiffs, is irrelevant to whether the Court can order uniform injunctive relief from policies and practices applicable to all—especially at the class certification stage. 591 F.3d at 1125; *see also Helling*, 509 U.S. at 35 (Eighth Amendment injunctive claim is based on the "risk" of serious harm).

*Rodriguez* is consistent with a long line of civil rights cases brought by incarcerated persons that have proceeded as class actions in the Ninth Circuit.  *See, e.g.*, *Mayweathers v. Newland*, 258 F.3d 930, 933-34 (9th Cir. 2001) (class action by Muslim prisoners at California state prison); *Armstrong v. Wilson*, 124 F.3d 1019 (9th Cir. 1997) (statewide class action on behalf of physically disabled California prisoners); *Clark v. California*, 123 F.3d 1267 (9th Cir. 1997) (statewide class action on behalf of developmentally disabled California prisoners); *Toussaint v. Yockey*, 722 F.2d 1490, 1491 (9th Cir. 1984) ("class of approximately 2,000 prisoners confined in administrative segregation in four California State Prisons"); *Hoptowit v. Ray*, 682 F.2d 1237, 1249 (9th Cir. 1982) (class of all prisoners in Washington State Penitentiary challenging, *inter alia*, "a pattern and practice of brutality and harassment by the prison guards"); *Leeds v.*

*Watson*, 630 F.2d 674, 675 (9th Cir. 1980) (class action on behalf of prisoners in county jail); *Inmates of San Diego Cnty Jail in Cell Block 3B v. Duffy*, 528 F.2d 954, 956-57 (9th Cir. 1975) (reversing denial of class certification for detainees in a county jail cellblock). *See also Brown v. Plata*, 131 S. Ct. 1910 (2011) (affirming class-wide injunctive relief to alleviate prison overcrowding and inadequate medical and mental health care).

Moreover, Plaintiffs have proffered an injunction that would uniformly address all injuries of the Class and the Subclass. In particular, Plaintiffs' Prayer for Relief asks the Court for relief that includes the adoption by Defendants of a plan to develop and implement policies and practices that will eliminate the substantial risk of serious harm to the Class and the Subclass, such as adequate health care staffing; timely access to care; adequate health care screening; access to competent care for chronic disease; and a prohibition on confining prisoners in conditions of social isolation and sensory deprivation without access to adequate mental health care, nutrition, or regular outdoor exercise. Compl. ¶151 (Doc. 1). The relief requested here will redound to the benefit of all members of the Class and the Subclass and the requirements of Rule 23(b)(2) are accordingly satisfied.[8]

## III.   THE COURT SHOULD DESIGNATE PLAINTIFFS' COUNSEL AS CLASS COUNSEL UNDER RULE 23(G)(1).

Rule 23(g) requires that the district court appoint class counsel for any class that is certified. *See* Rule 23(g)(1). The attorneys appointed to serve as class counsel must "fairly and adequately represent the interests of the class." Rule 23(g)(1)(B). The

---

[8] Plaintiffs here present a traditional Rule 23(b)(2) class; they seek only injunctive and declaratory relief. Any concerns over Rule 23(b)(2) certification post-*Dukes* therefore do not apply here. In *Dukes* the plaintiffs sought both injunctive and declaratory relief and money damages for some but not all plaintiffs. 131 S.Ct. at 2549-50. Due to the hybrid nature of the relief sought, the *Dukes* Court's refusal to certify a nationwide employment discrimination class under Rule 23(b)(2) was driven by its concerns that the plaintiffs' addition of class claims for back pay created claims for "individualized relief" that could not meet the requirements of Rule 23(b)(2). *Dukes*, 131 S.Ct. at 2557. *See also Connor B.*, 278 F.R.D. at 34 (the holding in *Dukes* regarding Rule 23(b)(2) certification was "limited" to "the propriety of claims for monetary relief.").

1  appointed class counsel must be listed in the Court's class certification order. Rule

2  23(c)(1)(B).

3      The Rule identifies four factors that the Court must consider in appointing class

4  counsel: (1) "the work counsel has done in identifying or investigating potential claims in

5  the action;" (2) "counsel's experience in handling class actions, other complex litigation,

6  and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable

7  law;" and (4) "the resources that counsel will commit to representing the class." Rule

8  23(g)(1)(A).  The ACLU-NPP, the ACLU-AZ, the PLO, and the law firms of Perkins

9  Coie LLP and Jones Day, which have agreed to act jointly as class counsel if the Court so

10  designates them, satisfy each of these requirements.

11      First, Plaintiffs' counsel have worked for over a year in identifying and

12  investigating the claims in the action.  In particular, Plaintiffs' counsel have interviewed

13  the named Plaintiffs, scores of other putative class members and other potential fact

14  witnesses, consulted with experts, reviewed court records, and engaged in extensive other

15  factual and legal research.[9]  With regard to the second and third factors, Plaintiffs' counsel

16  have significant experience in handling class actions as well as other complex litigation,

17  including civil rights actions on behalf of institutionalized persons; they are

18  knowledgeable with regard to the applicable law.[10]  Finally, Plaintiffs' litigation team has

19  dedicated, and will continue to commit, major staffing and material resources to the

20  representation of this class, including by retaining highly qualified experts.[11]  In sum,

21  Plaintiffs' counsel fully satisfy the criteria for class counsel set forth in Rule 23(g) and

22  Plaintiffs respectfully request that the Court appoint them in its class certification order.

23

24      [9] Lead counsel for all of the organizations and firms serving as counsel in this

25  action have filed declarations concurrently with this motion attesting to these facts and
those set forth below.  *See* Fathi Decl. ¶ 4; Pochoda Decl. ¶ 4; Mitchell Decl. ¶ 4; Barr

26  Decl. ¶ 4; Specter Decl. ¶ 4.

    [10] *See* Fathi Decl. ¶¶ 5-7; Pochoda Decl. ¶ 5; Mitchell Decl. ¶ 5; Barr Decl. ¶ 5;

27  Specter Decl. ¶ 5.

    [11] *See* Fathi Decl. ¶¶ 2-4, 8; Pochoda Decl. ¶¶ 2-4, 6; Mitchell Decl. ¶¶ 2-4, 6; Barr

28  Decl. ¶¶ 2-4, 6; Specter Decl. ¶¶ 2-4, 6.

1

## IV.   CONCLUSION

2          For the foregoing reasons, Plaintiffs respectfully request that this Court certify,

3    pursuant to Rule 23(a) and (b)(2), a Class consisting of all prisoners who are now, or will

4    in the future be, subjected to the medical, mental health, and dental care policies and

5    practices of ADC, and a Subclass consisting of all prisoners who are now, or will in the

6    future be, subjected by the ADC to isolation, defined as confinement in a cell for 22 hours

7    or more each day, or confinement in the following housing units: Eyman – SMU 1,

8    Eyman – Browning Unit, Florence – Central Unit; Florence – Kasson Unit, or Perryville –

9    Lumley Special Management Area.   Plaintiffs also request that the Court appoint the

10   undersigned as class counsel pursuant to Rule 23(g).

11

12   Dated:  November 9, 2012                    **PERKINS COIE LLP**

13

14                                              By _s/ Daniel C. Barr_____
                                                   Daniel C. Barr (Bar No. 010149)
15                                                 Jill L. Ripke (Bar No. 024837)
                                                   James A. Ahlers (Bar No. 026660)
16                                                 Kirstin T. Eidenbach (Bar No. 027341)
                                                   John H. Gray (Bar No. 028107)
17                                                 Thomas D. Ryerson (Bar No. 028073)
                                                   Matthew B. du Mée (Bar No. 028468)
18                                                 2901 N. Central Avenue, Suite 2000
                                                   Phoenix, Arizona 85012
19                                                 Telephone:  (602) 351-8000
                                                   Email:    dbarr@perkinscoie.com
20                                                           rjipke@perkinscoie.com
                                                             jahlers@perkinscoie.com
21                                                           keidenbach@perkinscoie.com
                                                             jhgray@perkinscoie.com
22                                                           tryerson@perkinscoie.com
                                                             mdumee@perkinscoie.com

23

24

25

26

27

28

Daniel J. Pochoda
Kelly J. Flood
James Duff Lyall
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:     dpochoda@acluaz.org
           kflood@acluaz.org
           jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:     dspecter@prisonlaw.com
           ahardy@prisonlaw.com
           snorman@prisonlaw.com
           ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@npp-aclu.org
           afettig@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email:     cnmitchell@jonesday.com
               dkiernan@jonesday.com
               scalderon@jonesday.com
               srauh@jonesday.com

*Admitted *pro hac vice*

R. Scott Medsker (D.C. 976405)*
**JONES DAY**
51 Louisiana Avenue, NW
Washington, D.C. 20001-2113
Telephone: (202) 879-3837
Email:     rsmedsker@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Kate A. Suh (Tex. 24075132)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email:     jlwilkes@jonesday.com
               ksuh@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone: (212) 326-3498
Email:     kmamedova@jonesday.com
               jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Victor Parsons;
Shawn Jensen; Stephen Swartz; Dustin
Brislan; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

-23-

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 9, 2012, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Assistant Arizona Attorney General
Michael.Gottfried@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

*Attorneys for Defendants*

Jennifer Alewelt
Asim Varma
Sarah Kader
ARIZONA CENTER FOR DISABILITY LAW
jalewelt@azdisabilitylaw.org
avarma@azdisabilitylaw.org
skader@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

I hereby certify that on November 9, 2012, I served the attached document by first class mail on Judge Neil V. Wake, United States District Court of Arizona, 401 West Washington Street, Phoenix, Arizona 85003-2118.

s/ S. Neilson

LEGAL25124252.2