# EXHIBIT D

**Portions of this document are subject to Protective Order**

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: dpochoda@acluaz.org
        kflood@acluaz.org
        jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Victor Parsons, Shawn Jensen,
Stephen Swartz, Dustin Brislan, Sonia Rodriguez,
Christina Verduzco, Jackie Thomas, Jeremy Smith,
Robert Gamez, Maryanne Chisholm, Desiree Licci,
Joseph Hefner, Joshua Polson, and Charlotte Wells, on
behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED BELOW]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-NVW (MEA) <br><br> **DECLARATION OF JAY D. SHULMAN** |

1    I, Jay D. Shulman declare as follows:

2    1.    I am a dentist experienced in the field of Correctional Dentistry. I have been

3    retained by prisoner plaintiffs' counsel in the *Parsons* case as an expert in dental care in

4    correctional institutions. I have been asked to render my opinion with respect to whether

5    there are current systemic deficiencies in the dental care provided by the Arizona

6    Department of Corrections ("ADC") that are amenable to a common remedy that will

7    reduce the risk of harm to inmates.

8    2.    The opinions stated below are based on a review of health records of the

9    named prisoner plaintiffs, documents, reports, and depositions available at this time, as

10   listed in Exhibit 2, as well as the scientific literature. In addition, the opinions are based

11   on my professional experience set forth below, and are based on a reasonable degree of

12   dental certainty.

13   **SUMMARY OF OPINIONS**

14   3.    It is my opinion that the consistently inadequate care documented in the

15   records I reviewed is attributable to systemic problems caused by inadequate and poorly

16   monitored policies and procedures in the ADC's Dental Department. Specifically, ADC's

17   policies and practices with regard to staffing, inmate health requests, pain management,

18   dental appliances, tooth extraction, and informed consent combine into a system that fails

19   to adequately identify, or properly and timely treat, dental issues experienced by inmates.

20   ADC's policies on these issues are in many cases themselves below the standard of care.

21   Moreover, regular practices often fall even further short, with ADC having a common

22   practice of a lack of oversight and control over dental care, thus ensuring that inmates are

23   at risk of receiving inadequate care. These failures place all inmates at risk not only of

24   preventable pain, but also of tooth decay and unnecessary loss of teeth. My review of the

25   dental injuries of various inmates is consistent with this opinion. The inadequacies in

26   dental care experienced by the named plaintiffs are typical of the risk of inadequate dental

27   care for all inmates. Consequently, all present and future inmates with dental problems

28   are at risk for preventable pain and tooth morbidity. In my experience as Court Expert /

Monitor in *Fussell v. Wilkinson* and *Perez v. Tilton*, both large dental prisoner class actions, I have seen systemic problems of this type addressed successfully by mandated changes in the dental care system.

### A.    Insufficient Dental Staffing

4.    It is my opinion that the ADC lacks an adequate treatment capacity because it does not employ enough dentists, even by ADC's own standards.  Lacking dental personnel is a systemic problem that makes it increasingly difficult for ADC to address all dental needs in a timely and adequate way.  ADC's inadequate treatment capacity also results in assignment of inmates to the Routine Care List who typically have inordinately long waits to be scheduled, often resulting in unnecessary pain and deterioration of tooth structure and needless extractions.  This is below the standard of care.

### B.    Inadequate Process for Triaging Inmates Requiring Dental Treatment

5.    It is my opinion that the Dental Department's policies for triaging inmates requiring dental treatment places inmates at an unreasonable risk of receiving untimely or inadequate dental care.  For instance, the process for responding to Health Needs Requests ("HNRs") places many inmates at risk of suffering preventable pain and tooth morbidity.  ADC has a policy or practice of allowing dental assistants, who are not licensed providers, too much discretion in determining when and if treatment will take place based on HNRs, and they have too large a role in examining patients.  In addition, the HNR triage process does not appropriately address the progression of tooth decay and other chronic issues and does not ensure that inmates suffering tooth pain will receive timely urgent dental treatment.  This is below the standard of care.

### C.    Inappropriate Treatment of Pain

6.    It is my opinion that the Dental Department's response to HNRs that mention pain places many inmates at risk of suffering preventable pain and tooth morbidity.  Neither ADC's policies, nor actual practices I have observed through records, adequately address patients' pain or the likelihood of increased pain and decay over time.  This is below the standard of care.

### D.     De Facto Extraction Only Policy

7.     It is my opinion that ADC dentists encourage inmates to allow the dentists to extract teeth that could be filled.  It is fundamentally unfair to encourage the acceptance of a lesser alternative (tooth extraction) to patients in pain by telling them that it will take "months" to be scheduled for the clinically acceptable treatment (a filling).  This occurs because of the scheduling and triaging policies of the ADC as well as the ADC's failure to exercise oversight and prevent such conduct.  Moreover, the Refusal to Submit to Treatment forms, when present, were often inadequate, misleading, and clinically insufficient.  This is a subtle form of an extraction only policy and is below the standard of care.

### E.     Inadequate Treatment of Chewing Difficulty

8.     It is my opinion that ADC policy and practice regarding patients unable to adequately chew their food is flawed and places inmates at risk of preventable pain, poor nutrition, and inability to take necessary medications.  ADC policy does not address timing or monitoring of patients waiting to receive dental devices, thus permitting inappropriate delays and problems in receiving a proper diet.  This is below the standard of care.

### F.     Inadequacy of NCCHC Dental Program Evaluation

9.     It is my opinion that accreditation by the National Commission for Correctional Health Care ("NCCHC") is insufficient to meet the standard of care, because the NCCHC audit does not focus on record reviews by dentist-auditors and the NCCHC Oral Care Standard does not mandate specific timelines for treatment.

**PROFESSIONAL QUALIFICATIONS**

10.     I have been a dentist for over 40 years and have had careers in the military, dental education, and correctional dentistry consulting.  I am certified by the American Board of Dental Public Health, one of the nine specialties recognized by the American Dental Association.  Moreover, I have extensive experience auditing educational, military,

LEGAL25073157.3

and correctional programs.  A true and correct copy of my *curriculum vitae* is attached as Exhibit 1.

11.     During my 22-year military career, I had clinical, research, administrative, and command assignments in the United States, Okinawa, and Germany.  Among my assignments, I served as the Army Surgeon General's Dental Public Health Consultant and wrote dental public health policy, procedures, and technical guidance.  As Commander of the 86th Medical Detachment, I directed dental care delivery for the Army in North Central Germany and operated six clinics with 20 dentists and 60 ancillary personnel.  I was responsible for the dental health of 25,000 soldiers and family members.  Among the studies I planned when I was in a research position were several on the Army's Dental Fitness Classification System in which dentists assign patients to treatment priority groups based on the severity of dental needs.

12.     I have written 55 peer-reviewed articles and three book chapters, have served as a reviewer for several dental journals, and was on the editorial board of the Journal of Public Health Dentistry, the official journal of my specialty.  Most of the papers I wrote during my academic career related to the epidemiology of dental caries (tooth decay) and oral lesions.  Three publications relate to correctional dentistry, one of which involved surveying dental programs in state corrections departments.

### Correctional Dentistry Experience

13.     I have served as a correctional dentistry consultant, court expert / representative, and expert witness several times since 2005.  As a Court Expert in two major class action settlements involving prisoner dental care, I developed an audit process based on clinical records review and performed system-wide audits of programs in California (roughly 170,000 inmates in 33 institutions) and Ohio (roughly 50,000 inmates in 30 institutions) over a multi-year period.  Moreover, I have performed clinical dentistry and supervised dental and dental hygiene students at the Dallas County Juvenile Detention Center.

LEGAL25073157.3

**PROGRESSION OF DENTAL CARIES**

14.     Dental caries (tooth decay) is an infectious disease characterized by progressive destruction of tooth substance, beginning on the outer (enamel) surface or the exposed root surface.  Left untreated, the decay can progress, causing pain and leading to tooth loss, localized infection (dental abscess), and occasionally, systemic infection.

15.     Caries is typically diagnosed visually and/or radiographically.  The visual appearance ranges from a "white spot" on the enamel (outer layer of the tooth) to a gaping hole in the tooth with black staining characteristic of end-stage caries.  Figure 1 is a representation of how different stages of caries may appear on a radiograph.

**Figure 1.  Interproximal Decay as Seen on a Radiograph**

| **A. Incipient** | **B. Moderate / Advanced** | **C. Severe** |



16.     An incipient lesion (Figure 1A) may not be readily identified clinically because there is no "cavity" in the tooth and too little tooth has been affected to be seen on a radiograph.  Once the lesion reaches the dentin—a tissue that is less resistant to decay than enamel (early Figure 1B)—the patient should be scheduled for treatment.  Figure 1C shows an advanced lesion that is almost through the dentin to the pulp.  When decay reaches the pulp, the tooth will require either endodontic (root canal) treatment or extraction.[1]  Caries that is radiographically at or beyond the dentin should receive prioritized treatment to prevent deterioration to the point that the only practical alternative will be extraction.

---

[1]  In the ADC, endodontic treatment (especially on posterior teeth) is rare and these teeth will almost always be slated for extraction.

LEGAL25073157.3

17.     A tooth that is classified as requiring routine (as opposed to urgent) treatment will typically not remain asymptomatic indefinitely.  Caries, especially once the enamel is penetrated, generally progresses and the more time that passes before the tooth is treated (*i.e.*, filled), the greater the likelihood that decay will progress, destroying tooth structure, possibly causing an abscess, and generally requiring the tooth to be extracted. Consequently, any classification system must have timelines to ensure that teeth that did not have a severe problem at the time of classification do not develop a severe problem due to untimely treatment.

STANDARD OF DENTAL CARE IN PRISON

18.     The standard for quality is the same in a correctional institution as it is in the community at large.  Makrides *et al*. at 557.[2]  The focus of correctional dentistry is the control of acute and chronic dental pain, stabilization of dental pathology, and maintenance or restoration of function.   Dental treatment should not be limited to extractions and should include restorations (fillings).  *Id.*

### A.     *Timeliness of Care*

19.     The Civil Rights Division of the U.S. Department of Justice ("DOJ") enforces the *Civil Rights of Institutionalized Persons Act* ("*CRIPA*"), which authorizes the Attorney General to enforce the constitutional rights of prisoners subject to unconstitutional conditions.   The DOJ has held that prisoner dental care must be consistent with generally accepted professional standards and sufficient treatment capacity must be provided to ensure care is provided in a timely manner.  Dallas County at ¶ 13 (injunction related to conditions of confinement at the County Jail); *see also* Cook County Letter at 89 (setting forth DOJ recommendations for Cook County Jail, including "ensure that inmates receive adequate dental care in accordance with generally accepted professional standards of care. Such care should be provided in a timely manner.").

---

[2] A full list of materials cited and considered can be found in Exhibit 2.  Materials that have been attached to the David Fathi declaration for consideration by the Court include the lettered exhibit in the citation.

6

### B.      The National Commission for Correctional Health Care

20.     The NCCHC describes itself as an organization "dedicated to improving the quality of correctional health care services and helping correctional facilities provide effective and efficient care."  NCCHC 2008 at vi.

21.     The NCCHC provides accreditation to correctional institutions based on compliance with, among other standards, the NCCHC Oral Care Standard.  The Oral Care Standard measures an institution's processes for providing care, requiring that it provides a full range of dental care (rather than just extractions) and has a priority system to determine the need for more urgent care.  *See* NCCHC Oral Care Standard (P-E-06), NCCHC 2008 at 69, and Compliance Indicators, NCCHC 2008 at 70.

22.     However, NCCHC accreditation does not require any auditing by dentists of the care actually performed at an institution to evaluate health outcomes.  Additionally, some NCCHC standards, such as its requirement that care be "timely" do not specify auditable standards, and thus even compliance does not indicate that an institution meets the standard of care.  Accordingly, relying on NCCHC standards or accreditation, as Dr. Adu-Tutu repeatedly explained the ADC does, fails to demonstrate that an institution comports with the appropriate standard of care.  To the contrary, the shortcomings of the NCCHC standards reinforce the systemic failures within the ADC.

### DENTAL CARE IN THE ARIZONA DEPARTMENT OF CORRECTIONS

23.     In evaluating dental care in the ADC, I relied, among other documents, on the Dental Services Technical Manual updated in 2010 ("ADC P&P"), which is publicly available on the ADC website and identified as the current dental policies and procedures.  According to the deposition of Dr. Carlos Weekly, ADC dental staff currently operates under a very similar document drafted by Wexford, but I have been unable to obtain a copy.

24.     I also reviewed the health records of the named prisoner plaintiffs, although without dental x-rays.  As described in further detail below, the named prisoner plaintiffs'

7

records are consistent with the risks of inadequate care one would expect to result from the ADC's inadequate polices that are in turn poorly implemented and poorly monitored.

### A.     Dental Staffing

25.     To achieve the necessary standard of timely care requires sufficient dental staffing.  A letter from the DOJ summarizing the findings of its investigation of the Lake County, Indiana Jail identified that "[i]nsufficient dentist time inappropriately limits dental care to prescription for antibiotics and extractions."  Lake County Letter at 15. With respect to waiting time for dental care, the letter stated:  "[c]onsequently, this wait for medical care violates constitutional minimums, leaving significant inmate medical needs inadequately addressed or completely unmet.  For example, inmates wait approximately eight weeks for dental care."  *Id.* at 15.  Among the minimum remedial measures was "[e]nsure dental hours accommodate the need for dental care."  *Id.* at 29.

26.     In developing a staffing model for a dental program, one should consider the appropriate mix of dentists, dental hygienists, and dental assistants.  Makrides *et al* at 557. Dental hygienists perform skilled but routine dental care, such as cleanings and periodontal disease maintenance, that then do not have to be performed by a dentist, thus increasing the number of patients that the dentist can treat for more complicated issues. Makrides *et al*. recommend an inmate to dentist ratio of 1,000:1 under the assumption that dental hygiene support will be provided (independent of the dentist ratio).  *Id.* at p. 557.

27.     Dental staffing in the ADC has decreased markedly in the past 16 years.  In a 1996 survey, the ADC reported an inmate to dentist ratio of 763:1.  Makrides and Shulman at 299.  In a follow-up study in January 2007, the ADC reported an inmate census of 34,864 and 33 dentist full-time equivalents ("FTE")—a ratio of 1,056:1. However, ADC reported that only 26.5 FTEs were filled, resulting in a vacancy rate of 19.7 percent.  ADC NIC 2007.  The adjusted ratio was 1,315:1.

28.     It is important to note that the ADC has no dental hygienists.  Consequently, to the extent that the ADC provides teeth cleaning and scaling to treat and prevent periodontal disease, it is performed by dentists at the expense of providing other

8

treatment.  Since the 1,000:1 ratio recommended by Makrides *et al*. was based on the presence of dental hygienists, the ADC ratio overstates treatment capacity.

29.     Wexford proposed to staff the ADC with 30 dentist FTEs, which, assuming an inmate census of 33,206, yields an inmate to dentist ratio of 1,107:1.  *See* ADC Count, Wexford Contract, Ex. HHH at ADC015761.  The Wexford staffing plan also does not include dental hygienists.

30.     There were 19.3 FTEs in July 2012—only 64% of the proposed dentist FTEs were seeing patients, leaving a ratio of 1,720:1.  Wexford Vacancies 7/31, Ex. UUU at ADC028188.  System-wide, as of August 12, 2012, there were 24 FTE dentist and 32 dental assistant positions filled.  Based on the October 2012 count of 33,206, the inmate to dentist ratio at that point was 1,384:1.  Arizona Vacancies, Ex. III at ADC016148-76.

31.     Compliance monitors have confirmed staffing shortfalls at multiple institutions, including Florence, Safford, Douglas, and Yuma.  At the Yuma complex, it was noted that, "[t]here is one dentist on site Monday through Wednesday for ten hours each day which equates to a .75 FTE.  Wexford submitted a budget calling for 3.5 FTE dentists".  Yuma Deficiencies at ¶ 1, Ex. RRR at ADC028173.  Similarly, at Florence it was reported that, "[a]t Globe, a dental line has not been conducted since the end of June." Florence Deficiencies, Ex. SSS at ADC028109.  That so many facilities, and the ADC system as a whole, has such a large inmate-to-dentist ratio, I can comfortably conclude that ADC has a policy or practice of failing to employ sufficient dental staffing.

32.     It is my understanding that each ADC dental clinic maintains a Routine Care List, and it schedules inmates with issues classified as routine on a space-available basis each day, after taking care of more urgent needs.  Dental staffing, including both the number of dentists and the lack of hygienists, directly impacts the number of routine care patients that can be seen each day, and in turn the length of the Routine Care List.

33.     My review of the named prisoner plaintiff medical records shows numerous instances of inmates requesting a filling or other routine care who did not have their requests filled until 4-16 months later.  Table 1 shows that treatment time for a filling

9

from the Routine Treatment List ranged from 85 to 292 days, with an average of 225 days.[3]

34.

35.

36.

37.     Each of these examples of injuries to the named prisoner plaintiffs is consistent with the risk of harm I would expect to occur as a result of ADC's systemic staffing deficiencies.

38.     It is my opinion based on a reasonable degree of dental certainty that the ADC has inadequate treatment capacity that results in inmates who are assigned to the Routine Care List typically having inordinately long waits to be scheduled, often resulting in unnecessary pain and deterioration of tooth structure and needless extractions.  Dental

---

[3] This inordinate delay is not idiosyncratic to one clinic since the data shown in Table 1 reflect care provided at Lewis, Eyman, and Perryville over a 9-year period.

1   disease progresses faster than the ADC is able to treat the initially asymptomatic inmates

2   placed on the Routine Care List.  This is below the standard of care.

3   ### B.      *Inappropriate Triage of Inmate Health Needs Requests*

4   39.     Dental emergencies are rare.   Typically they comprise conditions (*e.g.*,

5   facial fractures, uncontrollable post-extraction bleeding, difficulty breathing due to an oral

6   infection, or an abscess involving orofacial spaces) that require immediate attention and

7   often immediate transport to a hospital.   Urgent care comprises conditions such as

8   toothache, post-extraction pain, and abscesses not involving the orofacial spaces.  "Care

9   [should be] timely and include[s] immediate access for urgent or painful conditions."

10  NCCHC 2008 at 69.

11  40.     A priority system can be a reasonable and efficient way to ensure that

12  patients with the greatest need receive timely treatment.   An appropriate dental

13  classification system properly identifies teeth with dental disease sufficiently acute as to

14  require urgent care while appropriately delaying treatment of other teeth on a "routine"

15  basis.

16  41.     The value of a classification system depends on the extent to which the

17  system is capable of identifying patients with the greatest need and moving them to the

18  head of the treatment queue.   But the system fails when the treatment queue for the

19  remaining patients (*i.e.*, the Routine Care List) is so long that teeth whose treatment was

20  classified as routine becomes urgent because of disease progression.

21  42.     ADC practices and procedures do not adequately ensure appropriate

22  classification and treatment of patients reporting dental issues.   First, ADC Dental

23  Procedure 770.2, which defines urgent care, provides no timelines as to how soon a

24  patient identified as having an urgent care problem must be treated although the HNR

25  must be reviewed by a dental assistant "and an appropriate dentist's acknowledgment

26  within one business day (24 hours)."[4]  ADC Procedure 787, Ex. PPP at ADC010634 ¶ 5.3.

27  _____

28  [4] "If the reviewing provider has any question as to the significance of the dental assistant's evaluation, the dentist is to see the inmate within the next 24 hours or sooner."

1  So while there is an auditable timeline for the dental assistant's referral to a dentist, there

2  is thus no clear (or auditable) requirement that inmates gain immediate or even expedited

3  treatment for urgent care needs.[5]

4      43.     Nor are there any timelines for routine treatment.   As a result, an inmate

5  with a decayed tooth placed in Priority 3 (routine care) may remain there indefinitely—

6  perhaps until the decay progresses to the point that tooth structure is lost, making

7  restoration difficult (*i.e.*, requiring a larger filling with a poor prognosis) or requiring that

8  the tooth be extracted.   Dental Procedure 770.2 provides that "[t]he scheduling of dental

9  appointments for inmates will be based on the current relative priority of the inmate's

10  dental condition within the dental classification system," but there is no requirement for

11  follow-up analysis of the inmate's condition and thus scheduling is based on the priority

12  set based on the inmate's HNR.   Ex. PPP at ADC010584-85.

13      44.     Wexford agreed to ensure that an inmate with routine dental needs is seen

14  within 90 calendar days of receipt of a HNR for treatment.   Wexford Contract at

15  ADC015398, Ex. HHH.   While this is an improvement over Dental Procedure 770.2,

16  ADC monitors reported estimated dental appointment wait times between five and seven

17  months at Douglas and four to five months at Safford.   Monitor Report 8/8/12, Ex. TTT at

18  ADC028081; ADC028087.   In addition, "Dental emergent [urgent] care apt wait time is

19  5.5-6.5 days."   *Id.*   Moreover, the time from when an HNR is submitted until a patient is

20  seen is not necessarily the same as the time between when a condition presents and when

21  it is treated.   It is my understanding that if a patient requests to be seen by dental staff

22  (rather than specifically requesting a filling), and is at that visit then identified as needing

23  a filling, he or she will be placed on the Routine Care List *again* before receiving the

24  filling, with no monitoring for further decay in the interim.

25

26

27  *Id.* at ¶ 5.4.
[5]   The Wexford Contract, however, requires that "an inmate with urgent care needs

28  is seen within 72 hours."   Wexford Contract at ADC015397-98, Ex. HHH.

45.     Inmates submit HNRs to inform the Dental Department that they have dental problems or to communicate a request.  The evaluation of dental HNRs is primarily a responsibility of a dental assistant.  According to Dental Procedure 787, dental assistants are responsible for evaluating the HNRs based on the Dental Classification System and assigning any inmate whose request is considered "emergency" or "urgent" to be evaluated by the dental assistant that day or the next clinical day.   Ex. PPP at ADC010634.  If the dental assistant decides that the HNR merits routine rather than urgent care, the inmate will be placed on the Routine Care List and will not be seen until the routine care appointment.

46.     Dental Procedure 787 requires that if a patient is brought into the dental clinic based on an urgent need, that the dental assistant "will review the inmate health history, perform an oral evaluation, and take dental radiographs, to assist in determining the severity of the dental condition."  *Id.*  Moreover, the dental assistant is to make notes in the Inmate Health Record and take x-rays.  *Id.* at ADC010635.

47.     Dental assistants, who are required to have little or no specialized training, are performing more than ministerial acts.  First they review the HNR and map the patient's description of the problem to a priority category.   This requires more understanding of oral disease that one can reasonably expect a dental assistant to have.  Second, they perform an oral evaluation (*i.e.*, an assessment or examination) and the review patient's health history—activities well beyond the training of a high school graduate.  *See* Wexford Dental Assistant (describing required qualifications for Wexford dental assistant positions).   Third, they take dental radiographs.   Allowing a dental assistant to take x-rays without specific authorization of a dentist is below the standard of care.[6]  Finally, the dental assistant, a non-clinician, makes clinical notes in the Inmate Health Record.

---

[6] Moreover, the *Arizona Dental Practice Act* requires that in order to legally operate dental x-ray equipment and perform dental radiographic procedures, a dental assistant must hold a current Arizona board approved certificate in radiology.  AZ Dental Assistant at 10.

48.     This procedure gives far too much discretion to a dental assistant who is not a licensed individual.  The dental assistant effectively has the power to determine who will be seen promptly, eventually, or not at all, an evaluation that should be performed by those with the most experience and education.

49.     It is my opinion based on a reasonable degree of dental certainty that the ADC priority system does not adequately deal with the progressive nature of tooth decay, ADC procedures do not ensure that patients will be treated in a timely matter, and triaging decisions are inappropriately made by dental assistants not trained to make such assessments.   Accordingly, the Dental Department's policies for triaging inmates requiring dental treatment places inmates at an unreasonable risk of receiving untimely or inadequate dental care.

## C.     *Inadequate Treatment of Pain*

50.     Regardless of the size of an institution or the level of dental care provided, the requirement to treat toothaches is common to all correctional facilities.  Shulman and Sauter at 63.  Managing patients' pain is a standard element of dental practice.  Pain is managed by the appropriate use of analgesics as well as expediting the treatment of patients whose complaints of pain are clinically validated.  For most infections, the appropriate treatment is establishing drainage through the tooth (if the tooth is to be saved) or extracting the tooth as soon as possible.  *Id*. at 66.  "Delayed treatment of the original focus of infection may turn a minor problem into a serious condition."  Makrides *et al*. at 559.

51.     NCCHC restorative dentistry guidance[7] concurs, noting that, "although restorative dental care is usually classified as routine, correctional systems need to place significant importance in providing such care to their inmates.  *Delaying or deferring restorative care in a correctional setting simply leads to an increase in oral pain, infection, or tooth loss.*  As a result, dental services become inundated with emergency

---

[7] Based on a white paper written by Dr. Adu-Tutu.  NCCHC 2008 at 174.

14

dental sick call requests and more procedures to replace lost teeth with removable prosthetics.  NCCHC 2008 at 170 (emphasis added).

52.     Occasionally, maxillofacial pain is not of dental origin.  If a problem cannot be resolved at the institution, professional standards dictate that the patient be referred to specialists expeditiously.  Failing to address chronic pain is below the standard of care.

53.

54.

55.     The experiences of the named prisoner plaintiffs is consistent with the risk of harm I would expect to result from the ADC's policies and practices regarding HNR processing, triaging, and pain management.

56.     It is my opinion that the Dental Department's response to HNRs that mention pain places many inmates at risk of suffering preventable pain and tooth morbidity.  Rather than expediting treatment for these inmates, they were kept on the Routine Treatment List.  This is below the standard of care.

15

### D.    *De Facto Extraction Only Policy*

57.    While extractions are a large portion of a correctional practice, extractions should be limited to teeth that cannot be restored (*i.e.*, filled).  An "extraction only policy" is unacceptable.  NCCHC at 70; APHA at 90.

58.    When an extraction is recommended, it is a generally accepted standard of care that the patient should be fully informed of the reason, the consequences of not consenting to the procedure, and the existence of alternative treatments if there are any. This information and the patient's refusal should be documented in writing.  *See, e.g.,* NCCHC Standard P-I-05 (NCCHC Informed Consent and Right to Refuse Standard), NCCHC 2008 at 129.

59.    Recommending that a tooth that can be filled be extracted because it is more expedient is not consistent with the generally accepted standard of care.  Similarly, advising a patient in pain that a salvageable tooth could be extracted expeditiously but the wait to get it filled may be months is below the standard of care and constitutes a *de facto* extraction only policy.  Where a dental system does not have the resources or oversight to treat salvageable teeth or where a dental system incorrectly triages patients, this also can create a *de facto* extraction only policy if the result is that inmates are at a systemic risk of receiving extractions when less invasive dental care could have prevented the extraction.

60.    Dental Procedure 773.5 (Informed Consent and Right to Refuse) states that

> When an inmate gives the dentist permission to perform an invasive dental procedure, he/she will be informed of the possible risks/consequences of the procedure.  If the procedure includes the removal of one or more teeth, then the inmate will be notified if he/she is eligible for replacement teeth.

> If the inmate refuses the examination, treatment or procedure, dental services for that appointment will be not be provided and a Refusal of Treatment Form will be completed.  The risks of the inmate's action shall be explained to him/her.

Ex. PPP at ADC010620.

61.    Both these directives are incomplete because they do not require the dentist to discuss alternative treatments and memorialize that discussion in the consent form.  So,

16

1   for example, a patient who signs a consent form for an extraction without having been

2   informed that the tooth could be filled did not sign an informed consent.  Because the

3   written directives are incomplete and leave room for such inadequate care, it is my

4   opinion that this results in a de facto policy of lack of oversight and control, in turn

5   resulting in a de facto extraction-only policy.

6          62.

16         63.

22         64.    While there are statements in the clinical notes I reviewed that inmates

23  signed Refusal to Submit to Treatment forms, the forms are often absent, creating

24  uncertainty as to whether the consent was truly informed.  Moreover, many of the forms I

25  was able to review provided inadequate clinical information, and one form omitted critical

26  information.

17

65.     The experiences of the named prisoner plaintiffs is consistent with the risk of harm I would expect to result from the ADC's policies and practices regarding HNR processing, triaging, and pain management.

66.     It is my opinion, based on a reasonable degree of dental certainty, that ADC dentists encouraged inmates to allow the dentists to extract teeth that could be filled.  It is fundamentally unfair to encourage the acceptance of lesser alternative (tooth extraction) to a patient in pain by telling him/her that it will take "months" to be scheduled for a filling appointment (the clinically acceptable treatment).   Moreover, Refusal to Submit to Treatment forms, when present, were inadequate, misleading, and clinically insufficient. This is a subtle form of an extraction only policy.

### E.     Inadequate Treatment of Chewing Difficulty

67.     Individuals lacking sufficient opposing teeth to chew adequately, absent an appropriate diet, are at risk for pain and nutritional problems.  According to Procedure 770.2, inmates who are partially edentulous and are determined to have inadequate chewing ability set forth in Procedure 771.5 may request to be placed on the Routine Care List for removable partial dentures.  Ex. PPP, at ADC010585; see also 010603-64.

68.

18

LEGAL25073157.3

1

2

3

4

5          69.     At deposition, Dr. Adu-Tutu was asked about ADC policy with respect to

6    dentures and conflated emergency care (treatment for a life-threatening problem) and

7    urgent care (treatment for a painful condition).  Deposition of M. Adu-Tutu, Ex. AA, at

8    139:10-23.  While it is not appropriate to send partially or fully edentulous patients who

9    have documented weight loss and problems chewing to an emergency room, it surely is

10   reasonable to expedite their care.  Moreover, he states that, on average, it should take less

11   than six months.  *Id.* at 140:10-11.  This was not Mr. Polson's experience—on two

12   occasions.

13         70.     The experiences of the named prisoner plaintiffs is consistent with the risk

14   of harm I would expect to result from the ADC's policies and practices regarding HNR

15   processing, triaging, and pain management.

16         71.     It is my opinion to a reasonable degree of dental certainty that the ADC's

17   policies and practices regarding patients who have difficulty chewing does not adequately

18   address their need for timely treatment.  Without any requirements that patients receive

19   dental devices within a particular timeframe, or that patients be monitored while they are

20   waiting, ADC policy places inmate at risk of preventable pain, poor nutrition resulting

21   from the inability to eat, and inability to take necessary medications.

22   ***Limitations of My Review***

23         72.     The material I reviewed was limited by the discovery process and time

24   deadlines.  I was not provided dental radiographs.  Reviewing radiographs would give me

25   insight into quality of care; for example, whether they were taken when clinically

26

27

28

19

indicated, whether they were clinically acceptable, and whether the decisions that were made were consistent with the radiographs.[8]

73.    Except for what is cited herein, I was not provided with any written policies, wait lists, or reports from ADC or Wexford, which I understand have not yet been produced.

74.    I was not able to review a large number of records to comprehensively and independently analyze treatment practices and outcomes, because such records are not available at this time.

75.    Despite these limitations however, the consistency of my findings was such that based on my experience auditing correctional institutions, I had sufficient data to base the opinions I set forth.

**CONCLUSIONS**

76.    It is my opinion, based on a reasonable degree of dental certainty, that the consistently inadequate care documented in the records I reviewed is attributable to systemic problems, primarily, inadequate staffing and inadequate and poorly monitored policies and procedures.  The resulting inadequacies in dental care experienced by the named plaintiffs are typical of the risk of inadequate dental care for all inmates. Consequently, all present and future inmates with dental problems are at risk for preventable pain and tooth morbidity.  In my experience as Court Expert / Monitor in *Fussell v. Wilkinson* and *Perez v. Tilton*, I have seen systemic problems of this type addressed successfully by mandated changes in the dental care system.

//

//

//

---

[8]  For example, it is a standard of care that a tooth should not be extracted without a clinically appropriate x-ray.

20

1
2      I, Jay D. Shulman, declare under penalty of perjury that the foregoing is true and
3   correct and that this declaration was completed and signed on _11 5_____, 2012
4   at _Dallas_, _Texas_
5
6                                                    _____
7                                                    Jay D. Shulman
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**Table 1.       Time Between HNR Submission And Completion Of Treatment**

| | A | B | C | D | E |
|---|---|---|---|---|---|
| Patient | Treatment | Problem Identified at Examination | HNR Submitted | Treatment provided | Days to Completion |

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ADDITIONAL COUNSEL:**

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:    dspecter@prisonlaw.com
          ahardy@prisonlaw.com
          snorman@prisonlaw.com
          ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
**ACLU NATIONAL PRISON
PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:    dfathi@npp-aclu.org
          afettig@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted
 in DC; practice limited to federal
 courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Jill L. Ripke (Bar No. 024837)
James A. Ahlers (Bar No. 026660)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Thomas D. Ryerson (Bar No. 028073)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:    dbarr@perkinscoie.com
          rjipke@perkinscoie.com
          jahlers@perkinscoie.com
          keidenbach@perkinscoie.com
          jhgray@perkinscoie.com
          tryerson@perkinscoie.com
          mdumee@perkinscoie.com

LEGAL25073157.3

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:     cnmitchell@jonesday.com
           dkiernan@jonesday.com
           scalderon@jonesday.com
           srauh@jonesday.com

*Admitted *pro hac vice*

R. Scott Medsker (D.C. 976405)*
**JONES DAY**
51 Louisiana Avenue, NW
Washington, D.C. 20001-2113
Telephone:  (202) 879-3837
Email:    rsmedsker@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Kate A. Suh (Tex. 24075132)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:     jlwilkes@jonesday.com
           ksuh@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:    kmamedova@jonesday.com
          jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Victor Parsons;
Shawn Jensen; Stephen Swartz; Dustin
Brislan; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

24

**Exhibit 1**

**Curriculum Vitae**

**Jay D. Shulman, DMD, MA, MSPH**

## CURRICULUM VITAE - JAY D. SHULMAN

## PERSONAL INFORMATION

Address:     9647 Hilldale Drive, Dallas, Texas  75231

Telephone:  (214) 923-8359

E-mail:       jayshulman@sbcglobal.net

## EDUCATION

1982     Master of Science in Public Health

University of North Carolina

1979     Master of Arts in Education and Human Development

George Washington University

1971     Doctor of Dental Medicine

University of Pennsylvania

1967     Bachelor of Arts (Biology)

New York University

## POSITIONS HELD

**Academic**

2007 –     Adjunct Professor, Department of Periodontics

Baylor College of Dentistry

2003 - 07  Professor (Tenure), Department of Public Health Sciences

Baylor College of Dentistry (retired October, 2007)

1993 - 03  Associate Professor, Department of Public Health Sciences

Baylor College of Dentistry

**Military**

1971 - 93   Active duty, U.S. Army. Retired July 1993 in grade of Colonel.

1990 - 93   Chief, Dental Studies Division & Interim Commander (1993),
US Army Health Care Studies and Clinical Investigation Activity

Directed Army Dental Corps' oral epidemiologic and health services research. Supervised a team of public health dentists, statisticians, and management analysts. Designed and conducted research in oral epidemiology, healthcare management and policy.

1987 - 90   Director, Dental Services Giessen (Germany) Military Community and Commander, 86th Medical Detachment. Public Health & Preventive Dentistry Consultant, US Army 7th Medical Command.

Directed dental care for Army in North Central Germany. Operated 6 clinics with 20 dentists and 60 ancillary personnel. Responsible for the dental health of 25,000 soldiers and family members and for providing dental services during wartime using portable equipment. Provided technical supervision of public health and preventive dentistry programs for the Army in Europe.

1984 - 87   Chief, Dental Studies Division US Army Health Care Studies & Clinical Investigation Activity. Public Health & Preventive Dentistry Consultant to Army Surgeon General.

Directed Army Corps' oral epidemiologic and health services research. Supervised a multi-disciplinary team of public health dentists, statisticians, and management analysts. Designed and conducted research in oral epidemiology, healthcare management and policy. Technical supervision of all Army public health and preventive dentistry programs worldwide.

LEGAL25073157.3

1982 - 84   Assistant Director for Research, US Army Institute of Dental Research.

Responsible for Management of extramural research program, performing epidemiologic research, and teaching biostatistics and epidemiology to Walter Reed Army Medical Center dental residents.

1980 - 82   Full-time graduate student (Army Dental Public Health Training Fellowship) at the School for Public Health, University of North Carolina at Chapel Hill.

1976 - 80   Director, Dental Automation

US Army Tri-Service Medical Information Systems Agency

Walter Reed Army Medical Center, Washington, DC

Directed a team of computer scientists in the development of an automated management system for the Army dental clinics and upper management.

1975 - 76   Clinical Dentist, Pentagon Dental Clinic, Washington, DC

1974 - 75   Clinical Dentist, US Army Hospital Okinawa, Japan

1971 - 74   Clinical Dentist, US Army Dental, Clinic Fort McPherson, Georgia

## BOARD CERTIFICATION AND STATE LICENSE

**Dental Licensure.**

Texas #17518 (retired)

**Board Certification.**

Certified by the American Board of Dental Public Health since 1984 (active).

## RESEARCH - AREAS OF INTEREST

Oral epidemiology, health services research, health policy, military and correctional health.

**RECENT FUNDED RESEARCH**

2010 - 12    Instrument system and technique for minimally invasive periodontal surgery (MIS). National Institutes of Health SBIR Grant 2R44DE017829-02A1 ($368,270). Principal Investigator: Dr. Stephen Harrel. Role: Paid consultant.

**CURRENT SOCIETY AND ORGANIZATION MEMBERSHIPS**

1984 –    American Board of Dental Public Health

1982 –    American Association of Public Health Dentistry

2011 –    Texas Oral Health Coalition

**PROFESSIONAL ACTIVITIES**

**Presentations.**

Apr 2012    Public Health, Public Policy, And Legal Issues Associated with Health Care in Prisons: A Dental Perspective. Presented at the University of Texas Health Science Center, San Antonio.

Apr 2009    Public Health, Public Policy, And Legal Issues Associated with Health Care in Prisons: A Dental Perspective. Presented at the University of Iowa

Mar 2008    Public Health and Public Policy Issues Related to Dental Care in Prisons. Presented at University of North Carolina School of Public Health, Chapel Hill, NC.

Jun 2007    Characteristics of Dental Care Systems of State Departments of Corrections. Presented to annual meeting of Federal Bureau of Prisons dentists, Norman OK.

Jun 2006    Public Health Aspects of Correctional Dentistry. Presented to annual meeting of Federal Bureau of Prisons dentists, Fort Worth, TX.

Oct 2006    Opportunities for Dental Research Using the National Health and Nutrition Examination Survey. Indiana University School of Dentistry.

LEGAL25073157.3

Aug 2006    Dental Public Health and Legal Issues Associated with Correctional Dentistry. Federal Bureau of Prisons.

Dec 2005    Opportunities for Faculty Research Using Secondary Data. Frontiers in Dentistry Lecture. University of the Pacific School of Dentistry.

Feb 2005    Advanced Education in Dental Public Health. University of Missouri, Kansas City, School of Dentistry.

**Consultant Activities**

2012 –      Expert witness. *Parsons et al. v. Ryan et al*. 2:12-cv-00601-NVW (D. AZ).

2012 –      Expert witness. *John Smentek et al. v. Thomas Dart, Sheriff of Cook County et al*. 1:09-cv-00529 (N.D. IL).

2012 –      Expert witness. *Quentin Hall et al. v. Margaret Mimms, Sheriff of Fresno County et al.* 1:11-cv-02047-LJO-BAM (E.D. CA)

2009 - 11   Expert witness. Inmates of the *Northumberland County Prison, et al. v. Ralph Reish, et al*. 08-CV-345 (M.D. PA).

2007 - 09   Expert witness. *Flynn v. Doyle* 06-C-537-RTR (E.D. WI.)

2006 - 12   Rule 706 expert witness (monitor) and Court Representative, *Perez v. Tilton* (*Perez v. Cate*) federal class action lawsuit settlement. C05-5241 JSW (N.D. CA).

Responsible to *Perez* Court for coordinating remedies between dental (*Perez v. Tilton / Cate*), medical (*Plata v. Schwarzenegger*), and mental health (*Coleman v. Schwarzenegger*). Monitored compliance with *Perez* stipulated injunction. Monitoring completed June 2012.

2005 - 10   Rule 706 expert witness (monitor), *Fussell v. Wilkinson* federal class action lawsuit settlement. 1:03-cv-00704-SSB (S.D. OH).

Performed initial fact finding, provided dental input to stipulated injunction and monitored compliance. Monitoring completed.

LEGAL25073157.3

| | |
|---|---|
| 1999 - 03 | Editorial Board *Journal of Public Health Dentistry* |
| 1996 - 05 | Editorial Board, Mosby's Dental Drug Reference |
| 1993 - 07 | *Ad hoc* reviewer: *J Public Health Dent* (10); *J Amer Dent Assoc* (6); *J Dent Educ* (3); *Pediatr* (1); *Community Dent and Oral Epidemiol* (3); *Cleft Palate Craniofacial J* (3); *Pediatr Int* (3); *J Dent Res* (2); *Caries Res* (4); *Oral Dis* (2); *J Oral Rehab* (2) |
| 1995 - 97 | Consultant, Fluoride Steering Subcommittee, Oral Health Coordinating Committee, US Department of Health and Human Services |
| 1996 - 08 | Editorial Board, Mosby's Dental Drug Reference |
| 1997 | Reviewer (primary), Total Fluoride Intake, CDC Fluoride Recommendations Workshop |
| 1999 - 04 | Editorial Board *Journal of Public Health Dentistry* |
| 2000 - 06 | Predoctoral Consultant to ADA Commission on Dental Accreditation |
| 2000 - 06 | Postdoctoral Consultant:  Advanced Education (Dental Public Health) Commission on Dental Accreditation |
| 2000 - 03 | Editorial Board, Journal of Public Health Dentistry |
| 2005 | National Institute of Dental Research Special Emphasis Panel -- PAR 04-091 "NIDCR Small Research Grants for Data Analysis and Statistical Methodology |

**Teaching**

Predoctoral

| | |
|---|---|
| 1993 - 2007 | Director, Principles of Biostatistics |
| 1993 - 2007 | Lecturer, Applied Preventive Dentistry |
| 1993 - 2007 | Clinical Supervisor, Preventive Dentistry |
| 2006 - 2007 | Clinical Supervisor and Care Provider, Dallas County Juvenile Detention Center Dental Clinic |
| 1994 - 2005 | Director, Epidemiology & Prevention |

| | |
|---|---|
| 1993 - 2005 | Director, Epidemiology & Prevention |
| 1995 - 2003 | Director, Dental Public Health |

Postdoctoral

| | |
|---|---|
| 2007 – | Research mentor, Department of Periodontics, Baylor College of Dentistry |
| 1994 - 2007 | Director, Dental Public Health Residency |
| 1994 - 2007 | Lecturer, Research Methods |
| 2001 - 2006 | Director, Applied Biostatistics |

## PUBLICATIONS

### Peer Reviewed (55)

1. Bansal R, Bolin KA, Abdellatif HM, Shulman JD. Knowledge, Attitude and use of fluorides among dentists in Texas. *J Contemp Dent Pract* 2012;13(3):371-375.

2. Shulman JD, Sauter DT. Treatment of odontogenic pain in a correctional setting. *J Correctional Health Care* (2012) 18:1, 58 - 65.

3. Barker TS, Cueva MA, Rivera-Hidalgo F, Beach MM, Rossman JA, Kerns DG, Crump TB, Shulman JD. A comparative study of root coverage using two different acellular dermal matrix products. *J. Periodontology* (2010) 81:11, 1596-1603.

4. Maupomé G, Shulman JD, Medina-Solis CE, Ladeinde O. Is there a relationship between asthma and dental caries? A critical review of the literature. *Journal of the American Dental Association* 2010;141(9):1061-1074.

5. Puttaiah R, Shulman JD, Youngblood D, Bedi R, Tse E, Shetty S, Almas K, Du M. Sample infection control needs assessment survey data from eight countries. *Indian Dental Journal* 2009; 59, 271-276.

6. Fransen JN, He J, Glickman GN, Rios A, Shulman JD, Honeyman A. Comparative Assessment of ActiV GP/Glass Ionomer Sealer, Resilon/Epiphany, and Gutta-Percha/AH Plus Obturation: A Bacterial Leakage Study. *Journal of Endodontics* 2008; 34(6), 725-27.

7.   Beach MM, Shulman JD, Johns G, Paas J. Assessing the viability of the independent practice of dental hygiene. *J Public Health Dent.*2007;67(4):250-4.

8.   Blackwelder A, Shulman JD. Texas dentists' attitudes towards the dental Medicaid program. *Pediatr Dent* 2007;29:40-4.

9.   Massey CC, Shulman JD. Acute ethanol toxicity from ingesting mouthwash in children younger than 6 years of age, 1989-2003. *Pediatr Dent*. 2006; 28:405-409.

10.  Shulman JD, Carpenter WM. Prevalence and risk factors associated with geographic tongue among US adults. *Oral Dis*. 2006;12:381-386.

11.  Clark DC, Shulman JD, Maupomé G, Levy SM. Changes in dental fluorosis following cessation of water fluoridation. *Community Dent Oral Epidemiol*. 2006;34: 197-204.

12.  Shulman JD, Sutherland JN. Reports to the National Practitioner Data Bank involving dentists, 1990-2004. *J Am Dent Assoc* 2006;137:523-528.

13.  Holyfield LJ, Bolin KA, Rankin KV, Shulman JD, Jones DL, Eden BD. Use of computer technology to modify objective structured clinical examinations. *J Dent Educ* 2005;10:1133-1136.

14.  Benson BW, Shulman JD. Inclusion of tobacco exposure as a predictive factor for decreased bone mineral content. *Nicotine Tob Res* 2005;719-724.

15.  Shulman JD, Rivera-Hidalgo F, Beach MM. Risk factors associated with denture stomatitis in the United States. *J Oral Path Med* 2005;340-346.

16.  Shulman JD. Is there an association between low birth weight and caries in the primary dentition? *Caries Res* 2005;39:161-167.

17.  Shulman JD. The prevalence of oral mucosal lesions in U.S. children and youth. *Int J Pediatr Dent.*2005;15:89-97.

18.  Bolin KA, Shulman JD. Nationwide dentist survey of salaries, retention issues, and work environment perceptions in community health centers. *J Am Dent Assoc* 2005;136 (2): 214-220.

LEGAL25073157.3

19. Shulman JD. Recurrent herpes labialis in US children and youth. *Community Dent Oral Epidemiol* 2004; 32: 402-9.

20. Shulman JD. An exploration of point, annual, and lifetime prevalence in characterizing recurrent aphthous stomatitis in USA children and youth. *J Oral Path Med*. 2004;33: 558.66.

21. Shulman JD, Beach MM, Rivera-Hidalgo F. The prevalence of oral mucosal lesions in U.S. Adults: Data from the Third National Health and Nutrition Examination Survey. *J Am Dent Assoc* 2004;135:1279-86.

22. Bolin KA, Shulman JD. Nationwide survey of dentist recruitment and salaries in community health centers. *J. Health Care for the Poor and Underserved* 2004; 15:161-9.

23. Shulman JD, Maupomé G, Clark DC, Levy SM. Perceptions of tooth color and dental fluorosis among parents, dentists, and children. *J Am Dent Assoc* 2004;135(5):595-604.

24. Rivera-Hidalgo F, Shulman JD, Beach MM. The association of tobacco and other factors with recurrent aphthous stomatitis. *Oral Dis.* 2004;10:335-345.

25. Shulman JD, Peterson J. The association between occlusal characteristics and incisal trauma in individuals 8 - 50 years of age. *Dental Traumatology* 2004; 20: 67-74.

26. Buschang PH, Shulman JD. Crowding in treated and untreated subjects 17-50 years of age. *The Angle Orthodontist* 2003; 73(5):502-8.

27. Maupomé G, Shulman JD, Clark DC, Levy SM. Socio-demographic features and fluoride technologies contributing to higher TFI scores in permanent teeth of Canadian children. *Caries Res* 2003; 37(5):327-34.

28. Shulman JD, Nunn ME, Taylor SE, Rivera-Hidalgo F. The prevalence of periodontal-related changes in adolescents with asthma: Results of the Third Annual National Health and Nutrition Examination Survey. *Pediatr Dent* 2003; 25(3):279-84.

LEGAL25073157.3

29.  Makrides NS, Shulman JD. Dental health care of prison populations. *J Corr Health Care* 2002; 9(3):291-306.

30.  Shulman JD, Ezemobi EE, Sutherland JN. Louisiana dentists' attitudes toward the Dental Medicaid program. *Pediatr Dent* 2001; 23(5):395-400.

31.  Shulman JD, Taylor SE, Nunn ME. The association between asthma and dental caries in children and adolescents: A population-based case-control study. *Caries Res* 2001; 35:4:240-246.

32.  Maupomé G, Shulman JD, Clark DC, Levy SM, Berkowitz J. Tooth-surface progression and reversal changes in fluoridated and no-longer-fluoridated communities over a 3-year period. *Caries Res* 2001; 35:2:95-105.

33.  Trautmann G, Gutmann JL, Nunn ME, Witherspoon DE, Shulman JD. Restoring teeth that are endodontically treated through existing crowns. Part I: Survey of pulpal status on access. *Quintessence Int* 2000; 31(10):713-18.

34.  Trautmann G, Gutmann JL, Nunn ME, Witherspoon DE, Shulman JD. Restoring teeth that are endodontically treated through existing crowns. Part II: Survey of restorative materials commonly used. *Quintessence Int* 2000; 31(10):719-28.

35.  Lalumandier JA, McPhee SD, Riddle S, Shulman JD, Daigle WW. Carpal tunnel syndrome: Effect on Army dental personnel. *Milit Med* 165:372-78,May 2000.

36.  McFadyen JA, Shulman JD**.** Orofacial injuries in youth soccer. *Pediatr Dent* 1999; 21:192-96.

37.  Cederberg RA, Fredricksen NL, Benson BW, Shulman JD. Influence of the digital image display monitor quality on observer performance. *Dentomaxillofacial Radiology* 1999; 28:203-7.

38.  Shulman JD, Niessen LC, Kress GC, DeSpain B, Duffy R. Dental public health for the 21st century: Implications for specialty education and practice. *J Public Health Dent* 1998; 58 (Suppl 1):75-83.

LEGAL25073157.3

39. Cederberg RA, Fredricksen NL, Benson BW, Shulman JD. Effect of different lighting conditions on diagnostic performance of digital film images. *Dentomaxillofacial Radiology* 1998; 27:293-97.

40. Shulman JD, Lewis DL, Carpenter WM. The prevalence of chapped lips during an Army hot weather exercise. *Milit Med* 1997; 162:817-19.

41. Shulman JD, Wells LM. Acute toxicity due to ethanol ingestion from mouthrinses in children less than six years of age. *Pediatr Dent* 1997; 19(6):404-8.

42. Kress G, Shulman JD. Consumer satisfaction with dental care: where have we been, where are we going? *J Am Coll Dent* 1997; 64 (1):9-15.

43. Shulman JD, Wells LM. Acute toxicity in children under the age of six from ingesting home fluoride products: an update. *J Public Health Dent* 1995; 57(3):150-8.

44. McFadyen JA, Seidler KL, Shulman JD, Wells, LM. Provision of free and discounted dental services to selected populations: A survey of attitudes and practices of dentists attending the 1996 Dallas Midwinter Meeting. *Texas Dent J* 1996; 113 (12):10-18.

45. Shulman JD. Potential effects of patient opportunity cost on dental school patients. *J Dent Educ* 1996; 60 (8):693-700.

46. Shulman JD, Lalumandier JA, Grabenstein JD. The average daily dose of fluoride: a model based on fluid consumption. *Pediatr Dent* 1995; 17 (1):13-18.

47. Solomon ES, Hasegawa TK, Shulman JD, Walker PO. An application: the cost of clinic care by dental students and its relationship to clinic fees. *J Dent Educ* 1994; 58 (11-12):832-5.

48. Shulman JD, Williams TR, Lalumandier JA. Treatment needs and treatment time for soldiers in Dental Fitness Class 2. *Milit Med* 159, 2:135-138, 1994.

LEGAL25073157.3

49. Shulman JD, Williams TR, Tupa JE, Lalumandier JA, Richter NW, Olexa BJ. A comparison of dental fitness classification using different class 3 criteria. *Milit Med* 1994; 159 (1):5-10.

50. Amstutz RD, Shulman JD. Perceived needs for dental continuing education within the Army Dental Care System. *Milit Med* 1994; 159 (1):1-4.

51. Shulman JD, Carpenter WM, Lewis DL. The prevalence of recurrent herpes labialis during an Army hot weather exercise. *J Public Health Dent* 1992; 52 (4):198-203.

52. Brusch WA, Shulman JD, Chandler HT. Survey of Army dental practice. *J Am Coll Dent* 1987; 54 (1):54-63.

53. Lewis DM, Shulman JD, Carpenter WM. The prevalence of acute lip damage during a US Army cold weather exercise. *Milit Med* 1985; 150 (2):87-90.

54. Freund DA, Shulman JD. Regulation of the professions, results from dentistry. In Scheffler, Richard (ed.). *Advances in Health Economics and Health Services Research IV* 1984; 5(1):161-180.

55. Baumgartner JC, Brown CM, Mader CL, Peters DD, Shulman JD. Scanning electron microscopic evaluation of root canal irrigation with saline, sodium hypochlorite, and citric acid. *J Endodon.* 1984; 10 (11):525-531.

**Book Chapters Monographs, and Non-Peer Reviewed Articles**

1. Cappelli DP, Shulman JD. Epidemiology of Periodontal Diseases. In Cappelli DP, Mosley C, eds. <u>Prevention in Clinical Oral Health Care</u>. Elsevier (2008), 14-26.

2. Shulman JD, Gonzales CK. Epidemiology of Oral Cancer. In Cappelli DP, Mosley C, eds. <u>Prevention in Clinical Oral Health Care</u>. Elsevier (2008), 2-13.

3. Shulman JD, Cappelli DP. Epidemiology of Dental Caries. In Cappelli DP, Mosley C, eds. <u>Prevention in Clinical Oral Health Care</u>. Elsevier (2008), 27-43.

4. Shulman JD, Heng C. Meth Mouth: What We Know and What We Don't Know. *Fortune News* 2006;52(1):12-13.

**Abstracts Presented (27 since 2002)**

1. Yanus M, Rivera-Hidalgo F, Solomon E, Roshan S, Shulman J, Rees TD, Hummel S, Boluri A. Relationship of Candida to Oral Factors in Complete Denture Wearers. *J Dent Res 89* (Special Issue):#4445, 2010.

2. Abraham C, Rivera-Hidalgo F, Kessler H, Rees T, SL Cheng, Y, Shulman J, Solomon E. Inter-Examiner Evaluation of Fluorescence in Oral Lesions. *J Dent Res 89* (Special Issue): #4404, 2010.

3. He J, Solomon E, Shulman J, Rivera-Hidalgo F. Treatment Outcome of Endodontic Therapy with or without Patency Filing. *J Dent Res 89* (Special Issue):#1277, 2010.

4. Harrel SK, Rivera-Hidalgo F, Hamilton K, Shulman JD. Comparison of Ultrasonic Scaling Wear and Roughness Produced In Vitro. *J Dent Res 87* (Special Issue): # 1018, 2008.

5. Harrel SK, Rivera-Hidalgo F, Shulman JD. Comparison of Surgical Instrumentation Systems for Minimally Invasive Periodontal Surgery. *J Dent Res 87* (Special Issue): # 1020, 2008.

6. Shulman JD, Bolin KA. Characterizing Disparities in Root Surface Caries in the US. *J Dent Res 85* (Special Issue): # 476, 2006.

7. Shulman JD, Bolin KA. Is Root Surface Caries Associated with Xerogenic Medications? *J Dent Res 85* (Special Issue): # 477, 2006.

8. Shulman JD, Carpenter WM. Risk Factors Associated with Geographic Tongue among US Children. *J Dent Res 85* (Special Issue): # 1205, 2006.

9. Shulman JD, Bolin KA, Eden BD. Socio-demographic Factors Associated with Root Surface Caries Prevalence. *J Dent Res 84* (Special Issue): # 3279, 2005.

10. Shulman JD, Carpenter WM, Rivera-Hidalgo F. Prevalence of Hairy Tongue among US Adults. *J Dent Res 84* (Special Issue): # 1396, 2005.

LEGAL25073157.3

11.   Eden BD, Shulman JD. Root Caries in the US by Tooth Type and Surface. *J Dent Res* 84 (Special Issue): # 2622, 2005.

12.   Mobley CC, Shulman JD. Birth Weight and Caries in the Permanent Dentition of Children. *J Dent Res* 84 (Special Issue): # 86, 2005.

13.   Puttaiah R, Shulman JD, Bedi R, Youngblood D, Tse E. Infection Control Profile Scores of Practitioners from Eight Countries. *J Dent Res* 84 (Special Issue): # 1026, 2005.

14.   Puttaiah R, Youngblood D, Shulman JD, Bedi R, Tse E. Infection Control Practice Comparisons between Practitioners from Eight Countries. *J Dent Res* 84 (Special Issue): # 3207, 2005.

15.   Foyle DM, Rivera-Hidalgo F, Shulman JD, Williams F, Hallmon W, Taylor S. Effect of Selected Therapies on Healing in Rat Calvarial Defects. *J Dent Res* 84 (Special Issue): # 1172, 2005.

16.   Puttaiah R, Lin SM, Svoboda KKH, Cederberg R, Shulman JD. Quantitative Comparison of Scanning Electron and Laser Confocal Microscopy Techniques. *J Dent Res* 84 (Special Issue): # 3425, 2005.

17.   Holyfield LJ, Bolin KA, Rankin KV, Shulman JD, Jones DL, Eden BD. Use of computer technology to modify objective structured clinical examinations. *J Dent Educ* 69 (1):147 # 113, 2005.

18.   Benson BW, Shulman JD. Effect of antepartum natural background radiation on infant low birth weight: a pilot study. American Academy of Oral & Maxillofacial Radiology; Denver, CO. 11/6/04.

19.   Shulman JD, Beach MM, Rivera-Hidalgo F. Risk factors associated with denture stomatitis in U.S. adults. *J Dent Res* 83 (Special Issue): # 422, 2004.

20.   Puttaiah R, Shulman JD, Bedi R. A multi-country survey data on dental infection control KAP. *J Dent Res*; 82 (Spec Issue):# 3394, 2003

LEGAL25073157.3

21.   Eden BD, Shulman JD. Perceived need for denture care and professional assessment of dentures. *J of Dent Res* 83 (Special Issue): # 1604.

22.   Benson BW, Shulman JD. Inclusion of tobacco exposure as a predictive factor for decreased bone mineral content. *Oral Surg, Oral Med, Oral Pathol, Oral Radiol & Endo* 97(2): 266-267

23.   Eden BD, Shulman JD. Factors influencing self-perceived need for periodontal therapy: Data from the Third National Health and Nutrition Survey (NHANES III). *J Dent Res* 2003; 82(Spec Issue):#0481.

24.   Shulman JD, Beach MM, Rivera-Hidalgo F. The Prevalence of oral mucosal lesions among US adults: Results from the Third National Health and Nutrition Survey. *J Dent Res* 82 (Special Issue A): # 1472, 2003.

25.   Rivera-Hidalgo F, Shulman JD, Beach MM. Recurrence of aphthous ulcerations in adult tobacco smokers. *JDent Res* 82 (Special Issue A): # 0759, 2003.

26.   Shulman, JD, Nunn, ME, Taylor SE. The association between asthma and periodontal health in adolescents using data from NHANES 3. *J Dent Res* 81 (AADR Abstracts): # 2971, 2002.

27.   Buschang PH, Shulman, JD. Patterns of maxillary and mandibular incisor irregularity. *J Dent Res* 81 (AADR Abstracts): # 3951, 2002.

28.   Maupome G, Shulman, JD, Clark DC, Levy SM. TFI measurements in the BC fluoridation cessation study. *J Dent Res* 81 (AADR Abstracts): # 547, 2002.

LEGAL25073157.3

**Exhibit 2**

**Materials Considered**

## MATERIALS CONSIDERED

1.  Arizona Department of Corrections Departmental Order 1103. Technical Manual: Health Services. Supersedes: April 1, 2000; Effective Date: January 1, 2010. ADC010554-10647. ("ADC P&P 2010")

2.  Arizona Department of Corrections Departmental Order 1103. Technical Manual: Health Services. Supersedes: April1, 1997; Effective Date: April 1, 2000. ("ADC P&P 2000").

3.  ADC Institutional Capacity & Committed Population, October 31, 2012, *available at*
    http://www.azcorrections.gov/adc/reports/capacity/bed_2012/bed_capacity_oct12.pdf ("ADC Count")

4.  Arizona Department of Corrections reports and correspondence, ADC028025-254, including:

    ▪ Arizona Department of Corrections. Arizona State Prison – Yuma Complex. Memorandum from Dennis G. Chenail to Joe Profiri re Wexford Health Deficiencies at ASPC-Yuma. August 20, 2012. ADC028173. ("Yuma Deficiencies")

    ▪ Arizona Department of Corrections. Arizona State Prison – Yuma Complex. Memorandum from Dennis Kendall to Joe Profiri re Florence Weekly Monitoring Report. August 17, 2012. ADC028107-10. ("Florence Deficiencies")

    ▪ Arizona Department of Corrections Contract Monitoring Bureau Report, 8/8-8/13.12 ADC028081-90. ("Monitor Report 8/8/12")

    ▪ Wexford Vacancies Report 7/31/12. ADC28188. ("Wexford Vacancies 7/31")

5.  Arizona Vacancies and FTE Percentages – Compared to Contracted Staff Plan (External). August 8, 2011; Rev. 0. ADC016148 - 16176 ("ADC Vacancies").

6.  Arizona Revised Statutes. Article 1. Dental Board. ("Dental Board")

7.    Dental Assistant Functions List. Dental Assisting National Board, 2012. http://www.dalefoundation.org/resources-and-state-requirements/State-Dental-Assistant-Requirements/Arizona. Accessed 10/20/12 ("AZ Dental Assistant")

8.    Deposition of Dr. Michael Adu-Tutu

9.    Deposition of Dr. Carlos Weekly

10.   *Fussell v. Wilkinson*. Joint Notice of Filing Dental Agreement. C-103-704 S. D. OH, Document 181-1 February 26, 2007. "*Fussell* Dental Agreement".

11.   Health records of the following ADC inmates

      ▪  Maryanne Chisholm #200825

      ▪  Victor Parsons #123589

      ▪  Joshua Polson  #187716

      ▪  Stephen Swartz  #102486

      ▪  Charlotte Wells #247188

12.   Lake County Jail Settlement Findings Letter. Re: Investigation of the Lake County Jail. December 7, 2009. Accessed at http://www.justice.gov/crt/about/spl/documents/Lake_County_Jail_findlet_12-07-09.pdf October 18, 2012. ("Lake County Letter")

13.   Letter from U.S. Department of Justice, Civil Rights Division, to Board President and Sheriff of Cook County dated July 11, 2008, subject: Cook County Jail, Chicago,                                                                    Illinois. http://www.justice.gov/crt/split/documents/CookCountyJail_findingsletter_7-11-08.pdf. Accessed 2/7/01. ("Cook County Letter").

14.   Makrides NS, Costa JN, Hickey DJ, Woods PD, Bajuscak R. Correctional Dental Services. In Puisis M, Clinical Practice of Correctional Medicine, 2nd ed. Philadelphia: Mosby Elsevier, 2006. ("Makrides *et al*., 2006").

15.   Makrides NS, Shulman JD. Dental health care of prison populations. *J Corr Health Care* 2002; 9(3):291-306. ("Makrides and Shulman, 2002").

LEGAL25073157.3

16.     National Institute of Corrections Survey on Correctional Dentistry, 2006. Arizona Department of Corrections Response from Dr. Michael Adu-Tutu, Dental Program Manager, January 25, 2007. ("ADC NIC 2007").

17.     *Parsons et al. v. Ryan et al*., Class Action Complaint. 2:12-cv-00601-NVW--MEA Document 1 Filed 03/22/12

18.     *Parsons et a;. v. Ryan et al*., Answer. 2:12-cv-00601-NVW Document 30 Filed 05/14/12

19.     Shulman JD, Heng C. Meth Mouth: What We Know and What We Don't Know. *Fortune News* 2006;52(1):12-13.

20.     Shulman JD, Williams TR, Lalumandier JA. Treatment needs and treatment time for soldiers in Dental Fitness Class 2. *Milit Med* 159, 2:135-138, 1994.

21.     Shulman JD, Williams TR, Tupa JE, Lalumandier JA, Richter NW, Olexa BJ. A comparison of dental fitness classification using different class 3 criteria. *Milit Med* 1994; 159 (1):5-10.

22.     Shulman JD, Sauter DT. Treatment of odontogenic pain in a correctional setting. *J Correctional Health Care* (2012) 18:1, 58 - 65.

23.     Settlement Agreement. *U.S. v. Lupe Valdez, Sheriff of Dallas County, Texas*. U.S. District Court for the Northern District of Texas, Civil No. 307 CV 1559-N. Accessed at http://www.justice.gov/crt/split/documents/dallas_county_order_11-06-07.pdf December 11, 2009. ("Dallas County").

24.     ORDER APPOINTING COURT EXPERTS AS COURT REPRESENTATIVES, C-05-241 JSW (N.D.Cal. February 8, 2007). ("*Perez* Court Representative Order").

25.     Standards for Health Services in Correctional Institutions. Washington, DC: American Public Health Association, 2003. ("APHA 2003")

26.     Standards for Health Services in Prisons.  National Commission on Correctional Health Care. Chicago, Illinois, 2008. ("NCCHC 2008")

27.     STIPULATION AND ORDER RE: DISMISSAL OF CASE WITH PREJUDICE AND TERMINATION OF ALL PROVISIONS OF CONSENT DECREE

LEGAL25073157.3

EXCEPT PROVISION RELATED TO RENOVATION PROJECTS, C-05-05241 JSW (N.D.Cal.  August 15, 2012). ("*Perez* Termination Order")

28.    Wexford Health. Human Resources Job Description, Dental Assistant – Arizona. Accessed at http://jobs.wexfordhealth.com/careers/dental-jobs.

29.    Wexford    Health.    Solicitation    #ADOG12-00001105.    ADC014103-16042 ("Wexford Contract")

30.    United States v. Tom Dart, Cook County Sheriff et al. Agreed Order. 1:10-cv-02946 Document 3-1 filed 5/13/10. ("Cook County Order").