1   Daniel Pochoda (Bar No. 021979)
    Kelly J. Flood (Bar No. 019772)
2   James Duff Lyall (Bar No. 330045)*
    **ACLU FOUNDATION OF ARIZONA**
3   3707 North 7th Street, Suite 235
    Phoenix, Arizona 85013
4   Telephone: (602) 650-1854
    Email: dpochoda@acluaz.org
5          kflood@acluaz.org
           jlyall@acluaz.org
6   *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7   *Attorneys for Plaintiffs Victor Parsons, Shawn Jensen,*
    *Stephen Swartz, Dustin Brislan, Sonia Rodriguez,*
8   *Christina Verduzco, Jackie Thomas, Jeremy Smith,*
    *Robert Gamez, Maryanne Chisholm, Desiree Licci,*
9   *Joseph Hefner, Joshua Polson, and Charlotte Wells, on*
    *behalf of themselves and all others similarly situated*

10
    **[ADDITIONAL COUNSEL LISTED ON**
11   **SIGNATURE PAGE]**

12              UNITED STATES DISTRICT COURT

13                  DISTRICT OF ARIZONA

14  Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-NVW
    Dustin Brislan; Sonia Rodriguez; Christina            (MEA)
15  Verduzco; Jackie Thomas; Jeremy Smith; Robert
    Gamez; Maryanne Chisholm; Desiree Licci; Joseph
16  Hefner; Joshua Polson; and Charlotte Wells, on       **PRISONER PLAINTIFFS'**
    behalf of themselves and all others similarly        **REPLY IN SUPPORT OF**
17  situated; and Arizona Center for Disability Law,     **MOTION FOR CLASS**
                                                          **CERTIFICATION**
18                  Plaintiffs,

19          v.

20  Charles Ryan, Director, Arizona Department of
    Corrections; and Richard Pratt, Interim Division
21  Director, Division of Health Services, Arizona
    Department of Corrections, in their official
22  capacities,

23                  Defendants.

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** ............................................................................................ii

**INTRODUCTION** ........................................................................................ 1

**ARGUMENT** ........................................................................................ 2

    I.     THE COMMONALITY REQUIREMENT IS SATISFIED ........................ 2

         A.    Plaintiffs have identified system-wide policies and practices that pose the same risk of harm to all members of the class and subclass ........................................................................................ 2

         B.    *Dukes* poses no bar to class certification in this case ......................... 4

         C.    Defendants' remaining arguments are meritless ................................ 7

    II.    THE TYPICALITY REQUIREMENT IS SATISFIED ............................... 8

    III.    THE REQUIREMENTS OF RULE 23(B)(2) ARE SATISFIED ................ 9

    IV.    DEFENDANTS FAIL TO REBUT PLAINTIFFS' SHOWING THAT THE REQUIREMENTS OF RULE 23 ARE SATISFIED ............. 11

    V.    PLAINTIFF PARSONS SHOULD NOT BE DISMISSED ....................... 12

**CONCLUSION** ........................................................................................ 13

# TABLE OF AUTHORITIES

**Page**

CASES

*Amarir v. Hill*,
 243 F. App'x 353 (9th Cir. 2007) ................................................................. 3

*Armstrong v. Davis*,
 275 F.3d 849 (9th Cir. 2001) ........................................................... 2, 4, 8

*Balla v. Idaho*,
 677 F.3d 910 (9th Cir. 2012) ....................................................................... 7

*Bogle v. Raines*,
 No. 1:09–CV–1046, 2010 WL 3890863 (W.D. Mich. Aug. 19, 2010) ........ 9

*Brown v. Plata*,
 131 S. Ct. 1910 (2011) ........................................................................ 3, 4, 7

*Casey v. Lewis*,
 834 F. Supp. 1477 (D. Ariz. 1993) ............................................................. 7

*Connor B. v. Patrick*,
 278 F.R.D. 30 (D. Mass. 2011) ................................................................... 6

*D.G. ex rel. Strickland v. Yarbrough*,
 278 F.R.D. 635 (N.D. Okla. 2011) .............................................................. 6

*D.G. ex rel. Stricklin v. Devaughn*,
 594 F.3d 1188 (10th Cir. 2010) ....................................................... 3, 9, 11

*Farmer v. Brennan*,
 511 U.S. 825 (1994) ..................................................................................... 2

*Gates v. Gomez*,
 60 F.3d 525 (9th Cir. 1995) ......................................................................... 7

*Gluth v. Kangas*,
 951 F.2d 1504 (9th Cir. 1991) ................................................................... 11

*Gomez v. Vernon*,
 255 F.3d 1118 (9th Cir. 2001) ................................................................... 13

*Graves v. Arpaio*,
 No. CV-77-0479-PHX-NVW, 2008 WL 4699770 (D. Ariz. Oct. 22, 2008),
 *aff'd*, 623 F.3d 1043 (9th Cir. 2010) ......................................................... 7

*Grey v. Golden Gate Nat'l Recreational Area*,
 279 F.R.D. 501 (N.D. Cal. 2011) .............................................................. 10

*Hallett v. Morgan*,
 296 F.3d 732 (9th Cir. 2002) ....................................................................... 7

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................... 2, 8, 9

*Harris v. Thigpen*,
   941 F.2d 1495 (11th Cir. 1991) ................................................................ 2

*Hawkins v. Securitas Sec. Servs. USA, Inc.*,
   280 F.R.D. 388 (N.D. Ill. 2011) .............................................................. 13

*Helling v. McKinney*,
   509 U.S. 25 (1993) .................................................................................. 3, 4

*Hoptowit v. Ray*,
   682 F.2d 1237 (9th Cir. 1982) ................................................................ 7

*Hutto v. Finney*,
   437 U.S. 678 (1978) ................................................................................ 7

*Ind. Prot. & Advocacy Servs. Comm'n v. Comm'r*,
   No. 1:08–cv–01317–TWP–MJD, 2012 WL 6738517 (S.D. Ind. Dec. 31, 2012) ..... 6, 7

*Jermyn v. Best Buy Stores, L.P.*,
   276 F.R.D. 167 (S.D.N.Y. 2011) ............................................................ 7

*Jones'El v. Berge*,
   164 F. Supp. 2d 1096 (W.D. Wis. 2001) ................................................ 7

*Kress v. CCA of Tennessee, LLC*,
   272 F.R.D. 222 (S.D. Ind. 2010) ............................................................ 9

*Lewis v. Casey*,
   518 U.S. 343 (1996) ................................................................................ 10

*Madrid v. Gomez*,
   889 F. Supp. 1146 (N.D. Cal. 1995) ...................................................... 7

*Mathis v. GEO Group, Inc.*,
   No. 2:08–CT–21–D, 2012 WL 600865 (E.D.N.C. Feb. 23, 2012) ............ 7

*Orantes-Hernandez v. Holder*,
   321 F. App'x 625 (9th Cir. 2009) .......................................................... 11

*Riggs v. Valdez*,
   No. 1:09–CV–010–BLW, 2010 WL 4117085 (D. Idaho Oct. 18, 2010) .... 13

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ............................................................... 2, 10

*Schilling v. Kenton Cnty.*,
   Civil Action No. 10–143–DLB, 2011 WL 293759 (E.D. Ky. Jan. 27, 2011) ...... 7

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Shook v. Board of County Commissioners*,
543 F.3d 597 (10th Cir. 2008) ............................................................... 10, 11

4

*Smith v. Sheriff of Cook Cnty.*,
No. 07 C 3659, 2008 WL 1995059 (N.D. Ill. May 6, 2008) ........................ 7

5

6

*Snead v. Mohr*,
Civil Action No. 2:12–cv–0739, 2012 WL 5988774 (S.D. Ohio
Nov. 29, 2012) ............................................................................................ 8

7

8

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ........................................................... 6, 8, 9

9

*Stevens v. Harper*,
213 F.R.D. 358 (E.D. Cal. 2002) .............................................................. 7

10

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*,
402 U.S. 1 (1971) ...................................................................................... 10

11

12

*Toussaint v. McCarthy*,
801 F.2d 1080 (9th Cir. 1986) ................................................................... 7

13

14

*U.S. Parole Comm'n v. Geraghty*,
445 U.S. 388 (1980) .................................................................................. 13

15

*United States v. Or. State Med. Soc'y*,
343 U.S. 326 (1952) .................................................................................. 11

16

17

*Vallario v. Vandehey*,
554 F.3d 1259 (10th Cir. 2009) ........................................................... 10, 11

18

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ....................................................................... passim

19

20

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998) ......................................................... 2, 4, 10

21

*Wood v. Housewright*,
900 F.2d 1332 (9th Cir. 1990) ................................................................... 3

22

23

24

**STATUTES**

25

18 U.S.C. § 3626(a)(1)(A) ............................................................................ 10

26

A.R.S. § 31-201.01 ......................................................................................... 6

27

A.R.S. § 41-1604 ............................................................................................ 6

28

# TABLE OF AUTHORITIES
**(continued)**

**Page**

**OTHER AUTHORITIES**

Eighth Amendment.................................................................................................... passim

Fed. R. Civ. P. 1............................................................................................................... 2

**INTRODUCTION**

Defendants' opposition to plaintiffs' motion for class certification suffers from a fundamental misunderstanding of plaintiffs' claims and the governing law.  Plaintiffs do not seek class certification to aggregate a number of individual damages claims, each of which would require an individualized assessment of harm to the particular prisoner.  Rather, plaintiffs allege that system-wide Arizona Department of Corrections ("ADC") policies and practices create a substantial risk of serious harm, violating the Eighth Amendment and entitling them to injunctive relief to abate that risk.  Because these policies and practices create the same risk of harm to all members of the class and subclass, the requirements of Fed. R. Civ. P. 23 are easily satisfied.

Indeed, defendants do not dispute the existence of many of the system-wide ADC policies and practices plaintiffs challenge.[1]  These concessions alone are sufficient to satisfy Rule 23(a)(2).  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) ("even a single common question" satisfies the commonality requirement) (brackets omitted).  Defendants argue that these policies and practices are constitutional, but that is the ultimate question before the Court—a question that can be resolved as to all class members "in one stroke."  *Id.* at 2551.

Plaintiffs seek injunctive relief requiring defendants to develop a plan to provide the class with constitutionally adequate health care and protection from unconstitutional conditions in ADC's isolation units.  *See* Doc. 1 at 73-74.  Under these circumstances class certification is not only permissible; it is the most just, speedy, inexpensive, and

---

[1]  For example, defendants admit that some prisoners are confined to their cells for 22 hours per day (Def. Br. at 3); the rates ADC pays for outside specialists are fixed by statute (*id.* at 7); ADC policy sets no timelines for urgent or routine dental treatment (*id.* at 10); prescriptions for psychotropic medications may be renewed without a face-to-face evaluation by a psychiatrist (*id.* at 14); ADC policy does not bar the housing of prisoners with serious mental illness in maximum custody cells (*id.* at 16); ADC policy does not require a face-to-face mental health evaluation before placing a prisoner in a maximum custody cell (*id.*); ADC policy permits the use of chemical agents such as pepper spray on prisoners who are seriously mentally ill, taking psychotropic medications, or on suicide watch (*id.* at 17); prisoners in maximum custody cells are allowed only six hours per week of out-of-cell exercise (*id.* at 19); and prisoners in maximum custody are fed a reduced-calorie diet (*id.* at 20).

1   efficient way to resolve constitutional claims shared by thousands of Arizona prisoners,

2   and to spare this Court the burden of a multitude of individual lawsuits.  *See* Fed. R. Civ.

3   P. 1.  "[C]lass certification in this case is entirely proper in light of the general purposes of

4   Rule 23, avoiding duplicative litigation."  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir.

5   1998).[2]

6                                    **ARGUMENT**

7   **I.      THE COMMONALITY REQUIREMENT IS SATISFIED**

8           **A.      Plaintiffs have identified system-wide policies and practices that pose**
9                    **the same risk of harm to all members of the class and subclass**

10          "[T]he commonality requirement[] asks us to look only for some shared legal issue

11  or a common core of facts."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).

12  "The existence of shared legal issues with divergent factual predicates is sufficient."

13  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "[I]n a civil-rights suit,

14  . . . commonality is satisfied where the lawsuit challenges a system-wide practice or

15  policy that affects all of the putative class members."  *Armstrong v. Davis*, 275 F.3d 849,

16  868 (9th Cir. 2001).

17          Plaintiffs here seek injunctive relief under the Eighth Amendment.   That

18  Amendment is violated when prison officials, acting with deliberate indifference, subject

19  prisoners to "a substantial risk of serious harm."  *Farmer v. Brennan*, 511 U.S. 825, 828

20  (1994).[3]  The Court reaffirmed this analysis less than two years ago, affirming a grant of

21  class-wide injunctive relief based upon "systemwide deficiencies in the provision of

22  medical and mental health care that, taken as a whole, subject sick and mentally ill

23

24          [2] Defendants do not dispute that plaintiffs satisfy the numerosity requirement of
25  Rule 23(a)(1) and (with the exception of plaintiff Parsons) the adequacy of representation
    requirement of Rule 23(a)(4).  In addition, they have stipulated that plaintiffs' counsel are
    qualified to represent the class.  *See* Pl. Br. at 17 n.7.
26          [3] "Deliberate indifference to inmates' health needs may be shown, for example, by
27  proving that there are such systemic and gross deficiencies in staffing, facilities,
    equipment, or procedures that the inmate population is effectively denied access to
28  adequate medical care."  *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)
    (internal quotation marks and citation omitted).

prisoners in California to substantial risk of serious harm." *Brown v. Plata*, 131 S. Ct. 1910, 1926 n.3 (2011) (internal quotation marks omitted).

As in *Plata*, plaintiffs here have identified system-wide ADC policies and practices —regarding both health care and conditions in isolation—that have caused them, and many other Arizona prisoners, serious physical or psychiatric injury, and in some cases death.  Those policies and practices apply to all Arizona prisoners and thus place the plaintiffs and other class members at continuing risk of harm.  As the Supreme Court recognized in *Plata*, "all prisoners in [the state] are at risk so long as the State continues to provide inadequate care."  131 S. Ct. at 1940.  Because plaintiffs and other class members are subject to the same risk of harm, the commonality requirement is easily met.[4]

Defendants' repetitive assertion that "[n]one of the Plaintiffs allege a harm" resulting from various policies and practices (*see, e.g.*, Def. Br. at 6) pervades their brief and betrays a misunderstanding of the evidence and the law.  The harm that plaintiffs have already suffered violates the Eighth Amendment and at the same time demonstrates that they and the class they represent are at *risk* of future illness or injury.  As the Supreme Court has made abundantly clear, a substantial risk of serious illness or injury, without more, violates the Eighth Amendment and is sufficient to warrant injunctive relief. *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (prison officials may not "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year.").[5]

---

[4] *See also D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010) (in foster care case, "[t]he 'injury' the Named Plaintiffs allege which the district court found constituted a question of fact common to the class is not solely actual abuse or neglect.  The injury, instead, includes exposure to an impermissible risk of harm due to OKDHS's alleged agency-wide failure to monitor class members adequately.").

[5] Defendants' citation of *Wood v. Housewright*, 900 F.2d 1332 (9th Cir. 1990), for the proposition that "[i]f a claim alleges a delay in treatment, the prisoner must also show that the delay caused substantial harm," Def. Br. at 23 (internal quotation marks omitted), is incorrect.  In *Wood*, the three members of the panel issued three separate opinions; the "substantial harm" proposition was endorsed by only one judge and thus is not the holding of the case. *See* 900 F.2d at 1336 (Reinhardt, J., dissenting in part) ("Judge Hug and I (and thus the panel majority) are in agreement" that the Eighth Amendment was violated). More fundamentally, *Wood*, as well as *Amarir v. Hill*, 243 F. App'x 353 (9th Cir. 2007) and all subsequent cases cited in n.6 of defendants' brief, involved damages claims.

Defendants also assert that plaintiffs' claims will involve individualized assessment of each class member's medical condition or exposure to isolated confinement.  *See* Def. Br. at 25, 29.  But no such individualized evaluation is required when plaintiffs challenge system-wide deficiencies, as the Supreme Court confirmed in *Plata*, which is materially indistinguishable on this point.  In *Plata*, a statewide class action challenge to inadequate medical and mental health care in California prisons, the Court said:

> Because plaintiffs do not base their case on deficiencies in care provided on any one occasion, this Court has no occasion to consider whether these instances of delay—or any other particular deficiency in medical care complained of by the plaintiffs—would violate the Constitution under *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976), if considered in isolation.  Plaintiffs rely on systemwide deficiencies in the provision of medical and mental health care that, taken as a whole, subject sick and mentally ill prisoners in California to "substantial risk of serious harm" and cause the delivery of care in the prisons to fall below the evolving standards of decency that mark the progress of a maturing society. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

*Plata*, 131 S. Ct. at 1926 n.3.[6]

**B.**   ***Dukes* poses no bar to class certification in this case**

None of the foregoing is affected by *Dukes*, 131 S. Ct. 2541, decided the same term as *Plata*.  While *Dukes* addressed the commonality requirement, the Court's analysis was necessarily informed by the substantive law underlying the plaintiffs' claims in that case: the prohibition against sex discrimination set forth in Title VII of the Civil Rights Act of 1964.

---

While a prisoner seeking damages for a delay in treatment may be required to show that physical injury resulted, *Helling* makes clear that there is no such requirement in a purely injunctive case seeking to abate a risk of future harm.

   [6] Defendants also entirely fail to distinguish the Ninth Circuit's holding in *Armstrong* that class members' differing disabilities, and thus needs for different accommodations, did not defeat commonality in an ADA challenge to parole and parole revocation proceedings.  *See* 275 F.3d at 868; *see also Walters,* 145 F.3d at 1045 (commonality not defeated by class members' differing experiences with different INS agents and offices).  *Armstrong* and *Walters* thus foreclose any argument that plaintiffs' differing health care needs or differing experiences with ADC health care defeat commonality in this case.

> In this case, proof of commonality necessarily overlaps with respondents' merits contention that Wal-Mart engages in a pattern or practice of discrimination. That is so because, in resolving an individual's Title VII claim, the crux of the inquiry is "the reason for a particular employment decision," *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984). Here respondents wish to sue about literally millions of employment decisions at once. Without some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*.

*Dukes*, 131 S. Ct. at 2552 (footnote, some italics omitted). In other words, the ultimate question in a Title VII class action is whether each individual class member has actually suffered discrimination. A showing of commonality therefore requires the existence of questions whose resolution will advance the determination of whether there has been discrimination in the case of each individual class member.

The situation is very different in this case, where plaintiffs need only show that defendants expose them, with deliberate indifference, to a *risk* of future harm. Because system-wide policies and practices create the same risk of harm to all members of the class and subclass, the commonality requirement is easily met. Questions common to the class include, but are not limited to: Does ADC's level of health care staffing pose a substantial risk of serious harm? Do ADC's medication distribution practices pose a substantial risk of serious harm? Do ADC's dental care practices pose a substantial risk of serious harm? Questions common to the isolation subclass include, but are not limited to: Does the severely limited exercise provided to prisoners in isolation pose a substantial risk of serious harm? Does the level of social isolation that exists in ADC isolation units pose a substantial risk of serious harm? Because they involve system-wide policies and practices, these common questions have common answers, and if the answer is affirmative, the risk can be remedied through class-wide injunctive relief.

*Dukes* is distinguishable in other critical respects as well. The class in *Dukes*, "one of the most expansive class actions ever," consisted of approximately 1.5 million current and former employees in 3,400 stores throughout the United States, seeking backpay. 131

S. Ct. at 2547. The plaintiffs alleged, and the district court found, that employment decisions were largely committed to the discretion of individual store managers with only limited corporate oversight. *Id.* at 2547-48. That fact alone was fatal to the plaintiffs' commonality argument; "[i]n such a company, demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's." *Id.* at 2554.

Here, by contrast, the putative class consists of approximately 33,000 prisoners in the custody of a single state agency. State law provides that defendant Ryan is responsible for their custody, health, and safety, *see* A.R.S. §§ 31-201.01, 41-1604, and, as defendants concede, ADC is governed by mandatory centralized policies of statewide application. Def. Br. at 1 ("ADC policies governing health care and conditions of confinement apply to all facilities and inmates"). *See Staton v. Boeing Co.*, 327 F.3d 938, 956 (9th Cir. 2003) ("evidence of centralized decisionmaking" supports finding of commonality). Courts in similar cases have found that *Dukes* poses no bar to a finding of commonality. *See, e.g., Ind. Prot. & Advocacy Servs. Comm'n v. Comm'r*, No. 1:08-cv–01317–TWP-MJD, 2012 WL 6738517, at *18 (S.D. Ind. Dec. 31, 2012) (denying motion to decertify class of prisoners with mental illness and distinguishing *Dukes*; "the class is united by the common question of whether the lack of treatment and isolated living conditions in [prison] facilities violate the Eighth Amendment"); *Connor B. v. Patrick*, 278 F.R.D. 30, 34 (D. Mass. 2011) (denying motion to decertify class of 8,500 children in custody of state agency and finding *Dukes* "easily distinguishable;" "[P]laintiffs have alleged specific and overarching systemic deficiencies within DCF that place children at risk of harm"); *D.G. ex rel. Strickland v. Yarbrough*, 278 F.R.D. 635, 639 (N.D. Okla. 2011) (distinguishing *Dukes* and denying motion to decertify class of 10,000 children in custody of state agency).[7]

---

[7] Defendants attempt to graft requirements of Title VII onto plaintiffs' Eighth Amendment claims. For example, defendants assert that "[a] challenge to a system-wide policy or practice requires 'significant proof' that the alleged policy or practice is in fact system-wide," citing *Dukes*. Def. Br. at 26. Although plaintiffs here have in fact adduced

1              C.    **Defendants' remaining arguments are meritless**

2         Defendants' assertion that an injunctive challenge to prison health care is somehow

3   inherently incapable of resolution on a class basis is meritless, as demonstrated by this

4   Court's decision in *Graves v. Arpaio*, No. CV-77-0479-PHX-NVW, 2008 WL 4699770 (D.

5   Ariz. Oct. 22, 2008), *aff'd*, 623 F.3d 1043 (9th Cir. 2010), and the ADC-wide challenge to

6   health care litigated to final judgment in *Casey v. Lewis*, 834 F. Supp. 1477 (D. Ariz.

7   1993).[8]  Defendants' unsupported contention that conditions of confinement in isolation

8   cannot be litigated on a class-wide basis is similarly groundless.  *See Hutto v. Finney*, 437

9   U.S. 678, 688 (1978) (affirming district court's order in class action limiting confinement

10  in "punitive isolation" to 30 days); *Ind. Prot. & Advocacy Servs. Comm'n*, *supra; Jones'El

11  v. Berge*, 164 F. Supp. 2d 1096, 1098 (W.D. Wis. 2001) (class action challenge to

12  conditions in "supermax" prison); *Madrid v. Gomez*, 889 F. Supp. 1146, 1155 (N.D. Cal.

13  1995) (class action challenge to conditions in "security housing unit"); *Casey*, 834 F.

14  Supp. at 1548-49 (holding, in class action, that placement of prisoners with mental illness

15  in segregation violates the Eighth Amendment).[9]

16  _____

17  "significant proof," the cited page of *Dukes* refers to "significant proof *that an employer operated under a general policy of discrimination*." 131 S. Ct. at 2553 (emphasis added). This requirement is specific to Title VII, and has no application to plaintiffs' claims here.

18  *See Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 172 (S.D.N.Y. 2011) (holding that these requirements are "designed for and unique to the context of employment

19  discrimination").

20       [8]  Other challenges to prison health care litigated as class actions include *Brown v. Plata*, *supra; Balla v. Idaho*, 677 F.3d 910, 911 (9th Cir. 2012); *Hallett v. Morgan*, 296 F.3d 732, 738 (9th Cir. 2002); *Gates v. Gomez*, 60 F.3d 525 (9th Cir. 1995); *Toussaint v.

21  McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986); and *Hoptowit v. Ray*, 682 F.2d 1237, 1252 (9th Cir. 1982).

22       [9]  The district court cases cited by defendants in n.9 of their brief are readily distinguishable.  *Schilling v. Kenton Cnty.*, Civil Action No. 10-143-DLB, 2011 WL

23  293759 (E.D. Ky. Jan. 27, 2011), and *Smith v. Sheriff of Cook Cnty.*, No. 07 C 3659, 2008 WL 1995059 (N.D. Ill. May 6, 2008), involved claims for damages, which would of

24  course require individualized inquiry as to each class member.  In other cases, the plaintiffs simply failed to submit evidence to establish the existence of common questions.

25  *See Mathis v. GEO Group, Inc.*, No. 2:08-CT-21-D, 2012 WL 600865 (E.D.N.C. Feb. 23, 2012) at *5 (noting that the sole prisoner plaintiff "fails to identify any general policy of

26  federal defendants as the uniform cause of the Eighth Amendment violations that he alleges"); *Stevens v. Harper*, 213 F.R.D. 358, 365 (E.D. Cal. 2002) ("In support of their

27  request for class certification . . . plaintiffs rely mainly on the unverified allegations in their amended complaint.  Plaintiffs have not submitted any declarations or depositions to

28  establish their entitlement to equitable relief or class certification . . . .").  This is in stark

1    **II.    THE TYPICALITY REQUIREMENT IS SATISFIED**

2         As the Supreme Court reiterated in *Dukes*, "[t]he commonality and typicality

3    requirements of Rule 23(a) tend to merge."  131 S. Ct. at 2551 n.5 (quoting *Gen. Tel. Co.*

4    *of Sw. v. Falcon*, 457 U.S. 147, 157-58 (1982)).  "Under the rule's permissive standards,

5    representative claims are 'typical' if they are reasonably co-extensive with those of absent

6    class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  "We

7    do not insist that the named plaintiffs' injuries be identical with those of the other class

8    members, only that the unnamed class members have injuries similar to those of the

9    named plaintiffs, and that the injuries result from the same, injurious course of conduct."

10   *Armstrong*, 275 F.3d at 869.

11        Defendants first assert that typicality is not satisfied because not all named

12   plaintiffs assert claims regarding conditions of confinement in isolation.  Def. Br. at 30.

13   Since the isolation plaintiffs are clearly identified as representing a subclass (*see* Pl. Br.

14   at 2), it is of course true by definition that not all named plaintiffs in the case assert these

15   claims.[10]

16        Defendants also complain that different named plaintiffs have been injured by

17   different aspects of ADC's dysfunctional healthcare system.  Def. Br. at 30.  But the

18   question posed by Rule 23(a)(3) is not whether the named plaintiffs' claims are identical

19

20   contrast to the massive and largely undisputed evidentiary showing made by plaintiffs in
     this case.  *See Staton,* 327 F.3d at 954 (citing "the breadth and consistency of class
21   counsel's initial evidence" in affirming a finding of commonality).  Finally, defendants'
     characterization of *Snead v. Mohr*, Civil Action No. 2:12–cv–0739, 2012 WL 5988774
22   (S.D. Ohio Nov. 29, 2012), is simply incorrect.  There was no motion for class
     certification in that case; rather, the complaint brought by two *pro se* prisoners was
23   screened by the Magistrate Judge, who recommended separating their claims as
     improperly joined.  *Id.* at *1.  In light of the district court's observation that "claims
24   brought by prisoners who are not represented by counsel cannot be maintained as class
     actions," *id.* at 2, the language cited by defendants is dictum, and in any event appears to
25   refer to joinder of the two prisoners' claims, not the commonality requirement of
     Rule 23(a)(2).
26        [10] Although one of defendants' declarants states under oath that "ADC does not
     recognize or use the term isolation" (Fizer Decl., ¶ 4), this is false; ADC policies use the
27   term liberally. *See, e.g.*, Department Order ("DO") 904 at 4, 5, 12; DO 1002 at 4; DO 701
     at 10; DO 524 at 14, all available at http://www.azcorrections.gov/Z_dept_orders_1.aspx
28   (visited January 14, 2013).

1     to each other, but rather whether they are similar to those of the class. Here, all class

2     members are at the same risk from defendants' system-wide health care policies and

3     practices; that the named plaintiffs have suffered varying injuries as a result is irrelevant.

4     Far from defeating typicality, such variation among named plaintiffs ensures that the

5     typicality requirement is satisfied, as the composition of the class is better reflected by the

6     named plaintiffs. *See Staton*, 327 F.3d at 957 (typicality satisfied where "[t]he named

7     plaintiffs . . . include a very broadly selected cross-section of the different categories of

8     Boeing employees") (ellipsis in original); *Hanlon*, 150 F.3d at 1020 ("the broad

9     composition of the representative parties vitiates any challenge founded on atypicality").[11]

10     **III.   THE REQUIREMENTS OF RULE 23(B)(2) ARE SATISFIED**

11         Defendants cite no Ninth Circuit authority in support of their contention that the

12     requirements of Rule 23(b)(2) are not met, but instead doggedly insist on "the highly

13     individualized nature of [plaintiffs'] claims" and their assertion that class certification

14     would require the Court to "craft[] an injunction that is specifically tailored to each class

15     member." Def. Br. at 32. As previously explained, this is incorrect. Plaintiffs contend

16     that all class members are placed at the same risk of harm as a result of defendants'

17     system-wide policies and practices, and have presented uncontroverted expert declarations

18     explaining that these policies and practices can be remedied by systemic injunctions. *See*

19

---

20         [11] The district court cases cited by defendants in n.11 of their brief do not assist

21     them. In *Kress v. CCA of Tennessee, LLC,* 272 F.R.D. 222 (S.D. Ind. 2010), the plaintiffs filed a six-page memorandum in support of class certification that identified no challenged health care policy or practice and was apparently supported by no evidentiary material

22     whatsoever. *See* Case 1:08-cv-00431-DFH-WTL (S.D. Ind.), Doc. 30, filed 06/12/08 (Ex. 1 to Declaration of Corene Kendrick, filed concurrently herewith). Nevertheless, the

23     court found typicality satisfied and granted class certification on several issues, including the allegation that the jail's intake procedures violated prisoners' medical privacy rights.

24     272 F.R.D. at 230-31. In *Bogle v. Raines*, No. 1:09–CV–1046, 2010 WL 3890863 (W.D. Mich. Aug. 19, 2010), the court denied class certification on numerosity and typicality

25     grounds after the sole plaintiff conceded that the challenged policy did not exist. *Id.* at *2-3. Neither of these cases undermines plaintiffs' showing of typicality in this case.

26         Defendants also assert, without authority, that exposure to "an unreasonable risk of harm" is an injury "far too abstract to show typicality." Def. Br. at 30. This is incorrect.

27     *See Stricklin*, 594 F.3d at 1199 ("typicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's

28     individual circumstances").

1   Stewart Decl. ¶ 38; Haney Decl. ¶ 55; Shulman Decl. ¶¶ 3, 76; Cohen Decl. ¶ 48.[12]  An

2   injunction requiring defendants to (for example) hire additional health care staff, or

3   provide more exercise to prisoners in isolation, would redound to the benefit of all class

4   and subclass members without any need for individualized tailoring.  Certification under

5   Rule 23(b)(2) is appropriate here.  *See Rodriguez*, 591 F.3d at 1125 (Rule 23(b)(2) is

6   satisfied when "class members seek uniform relief from a practice applicable to all of

7   them"); *Walters*, 145 F.3d at 1047 (for Rule 23(b)(2) certification, "[i]t is sufficient if

8   class members complain of a pattern or practice that is generally applicable to the class as

9   a whole").

10      Defendants further assert that "Plaintiffs' proposed injunction exceeds

11   Rule 23(b)(2)'s boundaries," Def. Br. at 31, but again cite no Ninth Circuit authority for

12   this proposition.  Plaintiffs outlined, in their Complaint, the general contours of the

13   injunctive relief they seek.  *See* Doc. 1 at 73-74.  Defendants' contention that plaintiffs are

14   required to do more is groundless for two independent reasons.

15      First, under both the Prison Litigation Reform Act and the general law of equity, an

16   injunction in a prison conditions case must closely track the violation established by the

17   evidence at trial.  *See* 18 U.S.C. § 3626(a)(1)(A); *Swann v. Charlotte-Mecklenburg Bd. of*

18   *Educ.*, 402 U.S. 1, 16 (1971) ("As with any equity case, the nature of the violation

19   determines the scope of the remedy.").  It is therefore impossible to outline the precise

20   contours of the injunction in the Complaint, before any evidence has been presented.

21   Second, the Supreme Court has made clear that prison officials must be given the first

22   opportunity to formulate injunctive relief when constitutional violations are found.  *See*

23   *Lewis v. Casey*, 518 U.S. 343, 362-63 (1996).  Requiring plaintiffs to present a detailed

24   injunction in their Complaint would run afoul of this requirement.[13]

25   _____

26   [12] These declarations are attached as Exhibits B-E to the Declaration of David Fathi ("Fathi Decl.") filed with Prisoner Plaintiffs' Motion for Class Certification (Doc. 240-1).

27   [13] Defendants rely on *Shook v. Board of County Commissioners*, 543 F.3d 597 (10th Cir. 2008), and *Vallario v. Vandehey*, 554 F.3d 1259 (10th Cir. 2009), which of

28   course do not represent the law of this Circuit.  *See Grey v. Golden Gate Nat'l*

**IV.   DEFENDANTS FAIL TO REBUT PLAINTIFFS' SHOWING THAT THE REQUIREMENTS OF RULE 23 ARE SATISFIED**

To the extent that defendants challenge plaintiffs' showing of system-wide policies and practices that create a class-wide risk of harm, they do so primarily by relying on ADC written policies.   But where, as here, plaintiffs have submitted overwhelming evidence of systemic, life-threatening deficiencies in ADC health care and conditions of confinement, it is not enough for defendants merely to point to written policies and ask the Court to assume, without evidence, that actual practice is consistent with those policies. *See Orantes-Hernandez v. Holder*, 321 F. App'x 625, 628 (9th Cir. 2009) ("The government's insistence that the existence of its forms and policies alone obviates the need for the injunction misses the point.   *Orantes I*, *II,* and *III* make it clear that the injunction seeks to remedy the government's actual practices, not just its policies on paper.").[14]

_____

*Recreational Area*, 279 F.R.D. 501, 521 (N.D. Cal. 2011) (declining to follow *Shook* and *Vallario* because "cases within the Ninth Circuit have taken a more liberal view of Rule 23(b)(2) requirements").   And both cases are readily distinguishable.   In *Vallario*, the plaintiffs' complaint sought only "such declaratory and injunctive relief . . . as the Court deems just."   554 F.3d at 1268.   In *Shook*, the Tenth Circuit did not "deny [] [a] motion to certify [the] class," as defendants erroneously state (Def. Br. at 32 n.14); it affirmed the district court's denial under an abuse of discretion standard, while acknowledging that "we might reach a different conclusion were we addressing the certification question in the first instance."   543 F.3d at 600.   *Shook* reaffirmed that (b)(2) certification is appropriate where, as here, class members' injuries are "sufficiently similar that they can be addressed in an single injunction that need not differentiate between class members." *Id*. at 604.
   Defendants fail to acknowledge the Tenth Circuit's later decision in *Stricklin*, 594 F.3d at 1188, affirming (b)(2) certification of a class comprising "all children who are or will be in the legal custody of [the Oklahoma Department of Human Services] due to a report or suspicion of abuse or neglect or who are or will be adjudicated deprived due to abuse or neglect—approximately 10,000 children."   *Id*. at 1192.   The court held that Rule 23(b)(2) was satisfied because the "Named Plaintiffs allege the same injury on behalf of all class members . . . exposure to an impermissible risk of harm."   *Id*. at 1201.   Thus, the Tenth Circuit's most recent decision on the requirements of Rule 23(b)(2) supports class certification in this case.
   [14]   Defendants rely heavily upon written policies that they have revised since the filing of this lawsuit, in some cases mere days before filing their response to this motion. *See* Def. Exs. 1-D, 1-F, and 2-G.   If the Court considers these eleventh-hour changes at all, it should bear in mind "the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption."   *United States v. Or. State Med. Soc'y,* 343 U.S. 326, 333 (1952); *see also Gluth v. Kangas*, 951 F.2d 1504, 1507

Indeed, documents produced by defendants since plaintiffs filed this motion continue to show a healthcare system in free-fall. As of November 30, 2012, 26% of healthcare positions statewide were vacant, as were 65% of psychiatrist positions.[15] In defendants' own November 2012 monitoring reports, continuing staffing shortages are specifically noted at ASPC-Yuma, *e.g.*, ADC053184 ("At the current level there is not enough providers to serve an inmate population of 4200+."); ASPC-Lewis, *e.g.*, ADC052579 ("Staffing continues to be of primary concern."); and ASPC-Douglas, *e.g.*, ADC052248 (staffing shortage "is now reaching a critical state for both routine visits and chronic care follow ups" and "[t]here are no filled dentist positions at this complex").[16] At ASPC-Lewis, "[t]here are no care plans created for any inmates," ADC052581, and "[t]he [mental health] referrals are not being seen as required due to limited staffing." ADC052571. Timely intake exams are not occurring at Eyman-Browning, Perryville-Lumley, and Phoenix-Intake. *See* ADC052305, ADC052745, ADC052840. Prisoners on psychotropic medications are not being seen in a timely manner at Eyman-Rynning, Florence-East, and Florence-Kasson. *See* ADC052388, ADC052478, ADC052514. If staffing has "greatly improved" since the Wexford transition, as defendants repeatedly assert (Def. Br. at 6, 13, 14), that improvement is not reflected in defendants' own documents.[17]

---

(9th Cir. 1991) (ADC's post-litigation promulgation of a new policy did not moot prisoners' claims).

[15] Wexford Health Sources Vacancy Report – Budget v. Actual, as of 11/30/12, ADC049067-77, Exhibit 2 to the Kendrick Declaration.

[16] These and subsequent documents identified as "ADC_____" are defendants' November 2012 monitoring reports, produced to plaintiffs on December 21, 2012. They are attached as Exhibit 3 to the Kendrick Declaration.

[17] *See also* ADC052575 (ten prisoner deaths in ten weeks at ASPC-Lewis; "timely reviews are sporadic at present"); ADC052423 (768 unprocessed HNRs (Health Needs Request forms) found in nurses' office at Florence-Central); ADC053081 (at Tucson-Whetstone, "125 HNRs back-logged in the HNR accordion folder. . . . Provider line is back-logged out 2 months"); ADC053063 (at Tucson-Santa Rita, "this auditor found 105 HNRs not yet addressed in an accordion file . . . Nurse line is backlogged five weeks out").

1    **V.    PLAINTIFF PARSONS SHOULD NOT BE DISMISSED**

2          Defendants assert, without authority, that plaintiff Victor Parsons should be

3    dismissed because he was recently released on parole.  Def. Br. at 33.  Despite his release,

4    Mr. Parsons retains standing to litigate the question of class certification.  *See U.S. Parole*

5    *Comm'n v. Geraghty*, 445 U.S. 388, 403-04 (1980).  Accordingly, his dismissal as a

6    named plaintiff at this time would be premature.  *See Riggs v. Valdez*, No. 1:09–CV–010–

7    BLW, 2010 WL 4117085, at *2-3 (D. Idaho Oct. 18, 2010) (denying defendants' motion

8    to dismiss named plaintiff who was released on parole prior to class certification).[18]

9                                    **CONCLUSION**

10         For all of the reasons set forth above and in plaintiffs' opening brief, the motion for

11   class certification should be granted.  In light of the upcoming discovery cutoff and

12   defendants' refusal to permit expert tours absent class certification, plaintiffs respectfully

13   request that the Court decide this motion on an expedited basis.

14

15

16

     _____

17         [18]  Defendants admit that they have trolled through more than four years of plaintiff

18   Parsons' personal telephone calls, including discussions of attorney-client
     communications and litigation strategy, in search of information to use against him in this

19   case.  *See* Def. Br. at 33; Decl. of Jeffrey Stewart, ¶ 2 (stating that he was asked to retrieve
     Mr. Parsons' calls "[i]n conjunction with the *Parsons v. Ryan* lawsuit").  Defendants do

20   not state whether they listened to the calls of all fourteen plaintiffs; whether they listened
     to calls to attorneys that were made on non-legal phones; or whether Mr. Stewart was

21   instructed not to listen to attorney-client calls.  While prison officials may monitor
     prisoners' personal telephone calls as a security measure, it is far from clear that such

22   monitoring is permissible when conducted at the behest of counsel to gain an advantage in
     civil litigation.  C*f. Gomez v. Vernon*, 255 F.3d 1118, 1131-35 (9th Cir. 2001) (affirming

23   award of sanctions against defense counsel who obtained and read letters from prisoners'
     counsel that were stored in prison law library and "us[ed] [the] information for potential

24   tactical advantage" in conditions litigation).
           In any event, defendants' eavesdropping netted them nothing of use.  More than

25   three months after the intercepted conversations on which defendants rely, Mr. Parsons
     executed a declaration in which he unequivocally affirmed his willingness to act as a

26   named plaintiff in this case.  *See* Decl. of Victor Parsons, Exhibit I to the Fathi Decl., ¶ 3.
     That he may have earlier expressed some hesitation does not disqualify him as a class

27   representative.  *See Hawkins v. Securitas Sec. Servs. USA, Inc.,* 280 F.R.D. 388, 394-95
     (N.D. Ill. 2011) (class counsel asked that named plaintiff be dismissed after she failed to

28   appear for deposition; plaintiff ultimately appeared for deposition and was held to be an
     adequate class representative).

                                    -13-

1    Dated:  January 15, 2013              **ACLU NATIONAL PRISON PROJECT**

2

3                                         By:    s/ David C. Fathi
                                              David C. Fathi (Wash. 24893)*
4                                             Amy Fettig (D.C. 484883)**
                                              915 15th Street N.W., 7th Floor
5                                             Washington, D.C. 20005
                                              Telephone:  (202) 548-6603
6                                             Email:     dfathi@npp-aclu.org
                                                         afettig@npp-aclu.org

7                                             *Admitted *pro hac vice*.  Not admitted
                                               in DC; practice limited to federal
8                                              courts.
                                              **Admitted *pro hac vice*

9
                                              Daniel C. Barr (Bar No. 010149)
10                                            Amelia M. Gerlicher (Bar No. 023966)
                                              Kirstin T. Eidenbach (Bar No. 027341)
11                                            John H. Gray (Bar No. 028107)
                                              Matthew B. du Mée (Bar No. 028468)
12                                            **PERKINS COIE LLP**
                                              2901 N. Central Avenue, Suite 2000
13                                            Phoenix, Arizona 85012
                                              Telephone:  (602) 351-8000
14                                            Email:     dbarr@perkinscoie.com
                                                         agerlicher@perkinscoie.com
15                                                       keidenbach@perkinscoie.com
                                                         jhgray@perkinscoie.com
16                                                       mdumee@perkinscoie.com

17                                            Daniel Pochoda (Bar No. 021979)
                                              Kelly J. Flood (Bar No. 019772)
18                                            James Duff Lyall (Bar No. 330045)*
                                              **ACLU FOUNDATION OF**
19                                            **ARIZONA**
                                              3707 North 7th Street, Suite 235
20                                            Phoenix, Arizona 85013
                                              Telephone:  (602) 650-1854
21                                            Email:     dpochoda@acluaz.org
                                                         kflood@acluaz.org
22                                                       jlyall@acluaz.org

23                                            *Admitted pursuant to Ariz. Sup. Ct.
                                              R. 38(f)
24

25

26

27

28

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:     dspecter@prisonlaw.com
           ahardy@prisonlaw.com
           snorman@prisonlaw.com
           ckendrick@prisonlaw.com

*Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:     cnmitchell@jonesday.com
           dkiernan@jonesday.com
           scalderon@jonesday.com
           srauh@jonesday.com

*Admitted *pro hac vice*

R. Scott Medsker (D.C. 976405)*
**JONES DAY**
51 Louisiana Avenue, NW
Washington, D.C. 20001-2113
Telephone:  (202) 879-3837
Email:     rsmedsker@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Kate A. Suh (Tex. 24075132)
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:     jlwilkes@jonesday.com
           ksuh@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:    kmamedova@jonesday.com
              jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Victor Parsons;
Shawn Jensen; Stephen Swartz; Dustin
Brislan; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

1

**<u>CERTIFICATE OF SERVICE</u>**

2

     I hereby certify that on January 15, 2013, I electronically transmitted the above

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrants:

5

Michael E. Gottfried
Katherine E. Watanabe

6

Lucy M. Rand
Ashley B. Zuerlein

7

Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov

8

Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

9

Ashley.Zuerlein@azag.gov

10

Daniel P. Struck

11

Kathleen L. Wieneke
Timothy J. Bojanowski

12

Rachel Love
Nicholas D. Acedo

13

Courtney R. Cloman
Ashlee B. Fletcher

14

Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.

15

dstruck@swlfirm.com
kwieneke@swlfirm.com

16

tbojanowski@swlfirm.com
rlove@swlfirm.com

17

nacedo@swlfirm.com
ccloman@swlfirm.com

18

afletcher@swlfirm.com
aorcutt@swlfirm.com

19

20

*Attorneys for Defendants*

21

Jennifer Alewelt
Asim Varma

22

Sarah Kader
ARIZONA CENTER FOR DISABILITY LAW

23

jalewelt@azdisabilitylaw.org
avarma@azdisabilitylaw.org

24

skader@azdisabilitylaw.org

25

*Attorneys for Arizona Center for Disability Law*

26

        s/ Delana Freouf

27

28