# EXHIBIT A



--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

H

Only the Westlaw citation is currently available.

Supreme Court of the United States
AMGEN INC. et al., Petitioners
v.
CONNECTICUT RETIREMENT PLANS AND
TRUST FUNDS.

No. 11–1085.
Argued Nov. 5, 2012.
Decided Feb. 27, 2013.

*Syllabus* FN*

FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

**\*1** To recover damages in a private securities-fraud action under § 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b–5, a plaintiff must prove, among other things, reliance on a material misrepresentation or omission made by the defendant. *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. ——, ——. Requiring proof of direct reliance "would place an unnecessarily unrealistic evidentiary burden on [a] plaintiff who has traded on an impersonal market." *Basic Inc. v. Levinson,* 485 U.S. 224, 245, 108 S.Ct. 978, 99 L.Ed.2d 194. Thus, this Court has endorsed a "fraud-on-the-market" theory, which permits securities-fraud plaintiffs to invoke a rebuttable presumption of reliance on public, material misrepresentations regarding securities traded in an efficient market. *Id., at 241–249.* The fraud-on-the-market theory facilitates the certification of securities-fraud class actions by permitting reliance to be proved on a classwide basis.

Invoking the fraud-on-the-market theory, respondent Connecticut Retirement Plans and Trust Funds (Connecticut Retirement) sought certification of a securities-fraud class action under Federal Rule of Civil Procedure 23(b)(3) against biotechnology company Amgen Inc. and several of its officers (collectively, Amgen). The District Court certified the class, and the Ninth Circuit affirmed. The Ninth Circuit rejected Amgen's argument that Connecticut Retirement was required to prove the materiality of Amgen's alleged misrepresentations and omissions before class certification in order to satisfy Rule 23(b)(3)'s requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members." The Ninth Circuit also held that the District Court did not err in refusing to consider rebuttal evidence that Amgen had presented on the issue of materiality at the class-certification stage.

*Held* : Proof of materiality is not a prerequisite to certification of a securities-fraud class action seeking money damages for alleged violations of § 10(b) and Rule 10b–5. Pp. —— – ——.

(a) The pivotal inquiry in this case is whether proof of materiality is needed to ensure that the questions of law or fact common to the class will "predominate over any questions affecting only individual members" as the litigation progresses. For two reasons, the answer to this question is "no." First, because materiality is judged according to an objective standard, it can be proved through evidence common to the class. *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 445, 96 S.Ct. 2126, 48 L.Ed.2d 757. Thus, it is a common question for Rule 23(b)(3) purposes. Second, a failure of proof on the common question of materiality would not result in individual questions predominating. Instead, it would end the case, for materiality is an essential element of a securities-fraud claim. Pp. —— – ——.

(b) Amgen's arguments to the contrary are unpersuasive. Pp. —— – ——.

**\*2** (1) Amgen points to the Court's statement in *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. ——, ——, that "securities fraud plaintiffs must prove certain things in order to invoke *Basic* 's rebuttable presumption of reliance," including "that the alleged misrepresentations were publicly known ..., that the stock traded in an efficient market, and that the rele-

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

vant transaction took place 'between the time the misrepresentations were made and the time the truth was revealed.' " If these fraud-on-the-market predicates must be proved before class certification, Amgen contends, materiality—another fraud-on-the-market predicate—should be treated no differently. The Court disagrees. The requirement that a putative class representative establish that it executed trades "between the time the misrepresentations were made and the time the truth was revealed" relates primarily to the Rule 23(a)(3) and (a)(4) inquiries into typicality and adequacy of representation, not to the Rule 23(b)(3) predominance inquiry. And unlike materiality, market efficiency and the public nature of the alleged misrepresentations are not indispensable elements of a Rule 10–5 claim. While the failure of common, classwide proof of market efficiency or publicity leaves open the prospect of individualized proof of reliance, the failure of common proof on the issue of materiality ends the case for all class members. Pp. —— – ——.

(2) Amgen also contends that "policy considerations" militate in favor of requiring precertification proof of materiality. Because class certification can exert substantial pressure on the defendant to settle rather than risk ruinous liability, Amgen asserts, materiality may never be addressed by a court if it is not required to be evaluated at the class-certification stage. In this regard, however, materiality does not differ from other essential elements of a Rule 10b–5 claim, notably, the requirements that the statements or omissions on which the plaintiff's claims are based were false or misleading and that the alleged statements or omissions caused the plaintiff to suffer economic loss. Significantly, while addressing the settlement pressures associated with securities-fraud class actions, Congress has rejected calls to undo the fraud-on-the-market theory. And contrary to Amgen's argument that requiring proof of materiality before class certification would conserve judicial resources, Amgen's position would necessitate time and resource intensive mini-trials on materiality at the class-certification stage. Pp. —— – ——.

(c) Also unavailing is Amgen's claim that the District Court erred by refusing to consider the rebuttal evidence Amgen proffered in opposing Connecticut Retirement's class-certification motion. The Ninth Circuit concluded, and Amgen does not contest, that Amgen's rebuttal evidence aimed to prove that the misrepresentations and omissions alleged in Connecticut Retirement's complaint were immaterial. The potential immateriality of Amgen's alleged misrepresentations and omissions, however, is no barrier to finding that common questions predominate. Just as a plaintiff class's inability to prove materiality creates no risk that individual questions will predominate, a definitive rebuttal on the issue of materiality would not undermine the predominance of questions common to the class. Pp. —— – ——.

660 F. 3d 1170, affirmed.

**\*3** GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C.J., and BREYER, ALITO, SOTOMAYOR, and KAGAN, JJ., joined. ALITO, J., filed a concurring opinion. SCALIA, J., filed a dissenting opinion. THOMAS, J., filed a dissenting opinion, in which KENNEDY, J., joined, and in which SCALIA, J., joined except for Part I–B.

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
Seth P. Waxman, Washington, DC, for Petitioners.

David C. Frederick, Washington, DC, for Respondents.

Melissa Arbus Sherry, for the United States as amicus curiae, by special leave of the Court, supporting the Respondent.

Noah A. Levine, Wilmer Cutler Pickering, Hale and Dorr LLP, New York, NY, Steven O. Kramer, John P. Stigi III, John M. Landry, Jonathan D. Moss, Sheppard, Mullin, Richter & Hampton LLP, Los Angeles, CA, Seth P. Waxman, Counsel of Record, Louis R. Cohen, Andrew N. Vollmer, Daniel S. Volchok, Weili J. Shaw, Wilmer Cutler Pickering, Hale and Dorr LLP, Washington, DC, for Petitioners.

Edward Labaton, Jonathan M. Plasse, Christopher J. McDonald, Labaton Sucharow LLP, New York, NY, David C. Frederick, Counsel of Record, Derek T. Ho, Emily T.P. Rosen, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., Washington, DC, for Respondent.

For U.S. Supreme Court briefs, see:2012 WL 5246241 (Reply.Brief)2012 WL 4229498 (Resp.Brief)2012

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

WL 4259469 (Resp.Brief)2012 WL 3277030 (Pet.Brief)

Justice GINSBURG delivered the opinion of the Court.

This case involves a securities-fraud complaint filed by Connecticut Retirement Plans and Trust Funds (Connecticut Retirement) against biotechnology company Amgen Inc. and several of its officers (collectively, Amgen). Seeking class-action certification under Federal Rule of Civil Procedure 23, Connecticut Retirement invoked the "fraud-on-the-market" presumption endorsed by this Court in *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), and recognized most recently in *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. —— (2011). The fraud-on-the-market premise is that the price of a security traded in an efficient market will reflect all publicly available information about a company; accordingly, a buyer of the security may be presumed to have relied on that information in purchasing the security.

Amgen has conceded the efficiency of the market for the securities at issue and has not contested the public character of the allegedly fraudulent statements on which Connecticut Retirement's complaint is based. Nor does Amgen here dispute that Connecticut Retirement meets all of the class-action prerequisites stated in Rule 23(a): (1) the alleged class "is so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) Connecticut Retirement's claims are "typical of the claims ... of the class"; and (4) Connecticut Retirement will "fairly and adequately protect the interests of the class."

The issue presented concerns the requirement stated in Rule 23(b)(3) that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Amgen contends that to meet the predominance requirement, Connecticut Retirement must do more than plausibly *plead* that Amgen's alleged misrepresentations and misleading omissions materially affected Amgen's stock price. According to Amgen, certification must be denied unless Connecticut Retirement *proves* materiality, for immaterial misrepresentations or omissions, by definition, would have no impact on Amgen's stock price in an efficient market.

**\*4** While Connecticut Retirement certainly must prove materiality to prevail on the merits, we hold that such proof is not a prerequisite to class certification. Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class. Because materiality is judged according to an objective standard, the materiality of Amgen's alleged misrepresentations and omissions is a question common to all members of the class Connecticut Retirement would represent. The alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all investors composing the class. As vital, the plaintiff class's inability to prove materiality would not result in individual questions predominating. Instead, a failure of proof on the issue of materiality would end the case, given that materiality is an essential element of the class members' securities-fraud claims. As to materiality, therefore, the class is entirely cohesive: It will prevail or fail in unison. In no event will the individual circumstances of particular class members bear on the inquiry.

Essentially, Amgen, also the dissenters from today's decision, would have us put the cart before the horse. To gain certification under Rule 23(b)(3), Amgen and the dissenters urge, Connecticut Retirement must first establish that it will win the fray. But the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the "metho[d] best suited to adjudication of the controversy "fairly and efficiently.""

**I**
**A**

This case involves the interaction between federal securities-fraud laws and Rule 23's requirements for class certification. To obtain certification of a class action for money damages under Rule 23(b)(3), a plaintiff must satisfy Rule 23(a)'s above-mentioned prerequisites of numerosity, commonality, typicality, and adequacy of representation, see *supra,* at 1–2, and must also establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." To recover damages in a private securities-fraud action under § 10(b) of the Securities Exchange Act of 1934, 48 Stat. 891, as amended, 15 U.S.C. § 78j(b)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

(2006 ed., Supp. V), and Securities and Exchange Commission Rule 10b–5, 17 CFR § 240.10b–5 (2011), a plaintiff must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. ——, —— (2011) (slip op., at 9) (internal quotation marks omitted).

"Reliance," we have explained, "is an essential element of the § 10(b) private cause of action" because "proof of reliance ensures that there is a proper connection between a defendant's misrepresentation and a plaintiff's injury." *Halliburton,* 563 U.S., at —— (slip op., at 4) (internal quotation marks omitted). "The traditional (and most direct) way" for a plaintiff to demonstrate reliance "is by showing that he was aware of a company's statement and engaged in a relevant transaction ... based on that specific misrepresentation." *Ibid.* We have recognized, however, that requiring proof of direct reliance "would place an unnecessarily unrealistic evidentiary burden on [a] plaintiff who has traded on an impersonal market." *Basic,* 485 U.S., at 245. Accordingly, in *Basic* the Court endorsed the "fraud-on-the-market" theory, which permits certain Rule 10b–5 plaintiffs to invoke a rebuttable presumption of reliance on material misrepresentations aired to the general public. *Id.,* at 241–249.[FN1]

> **FN1.** Part IV of Justice Blackmun's opinion in *Basic*—the part endorsing the fraud-on-the-market theory—was joined by Justices Brennan, Marshall, and Stevens. Together, these Justices composed a majority of the quorum of six Justices who participated in the case. See 28 U.S.C. § 1 ("The Supreme Court of the United States shall consist of a Chief Justice of the United States and eight associate justices, any six of whom shall constitute a quorum.").

**\*5** The fraud-on-the-market theory rests on the premise that certain well developed markets are efficient processors of public information. In such markets, the "market price of shares" will "reflec[t] all publicly available information." *Id.,* at 246. Few investors in such markets, if any, can consistently achieve above-market returns by trading based on

publicly available information alone, for if such above-market returns were readily attainable, it would mean that market prices were not efficiently incorporating the full supply of public information. See R. Brealey, S. Myers, & F. Allen, Principles of Corporate Finance 330 (10th ed. 2011) ("[I]n an efficient market, there is no way for most investors to achieve consistently superior rates of return.").

In *Basic,* we held that if a market is shown to be efficient, courts may presume that investors who traded securities in that market relied on public, material misrepresentations regarding those securities. See 485 U.S., at 245–247. This presumption springs from the very concept of market efficiency. If a market is generally efficient in incorporating publicly available information in a security's market price, it is reasonable to presume that a particular public, material misrepresentation will be reflected in the security's price. Furthermore, it is reasonable to presume that most investors—knowing that they have little hope of outperforming the market in the long run based solely on their analysis of publicly available information—will rely on the security's market price as an unbiased assessment of the security's value in light of all public information. Thus, courts may presume that investors trading in efficient markets indirectly rely on public, material misrepresentations through their "reliance on the integrity of the price set by the market." *Id.,* at 245. "[T]he presumption," however, is "just that, and [can] be rebutted by appropriate evidence." *Halliburton,* 563 U.S., at —— (slip op., at 5). See also *Basic,* 485 U.S., at 248–249 (providing examples of showings that would rebut the fraud-on-the-market presumption).

Although fraud on the market is a substantive doctrine of federal securities-fraud law that can be invoked by any Rule 10b–5 plaintiff, see, *e.g., Black v. Finantra Capital, Inc.,* 418 F.3d 203, 209 (C.A.2 2005); *Blackie v. Barrack,* 524 F.2d 891, 908 (C.A.9 1975), the doctrine has particular significance in securities-fraud class actions. Absent the fraud-on-the-market theory, the requirement that Rule 10b–5 plaintiffs establish reliance would ordinarily preclude certification of a class action seeking money damages because individual reliance issues would overwhelm questions common to the class. See *Basic,* 485 U.S., at 242. The fraud-on-the-market theory, however, facilitates class certification by recognizing a rebuttable presumption of classwide reliance on

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

public, material misrepresentations when shares are traded in an efficient market. *Ibid.*[FN2]

> FN2. Although describing *Basic*'s adoption of the fraud-on-the-market presumption of reliance as "questionable," Justice THOMAS' dissent acknowledges that "the Court has not been asked to revisit" that issue. *Post,* at 4–5, n. 4. See also *post,* p. 1 (ALITO, J., concurring).

**B**

**\*6** In its complaint, Connecticut Retirement alleges that Amgen violated § 10(b) and Rule 10b–5 through certain misrepresentations and misleading omissions regarding the safety, efficacy, and marketing of two of its flagship drugs.[FN3] According to Connecticut Retirement, these misrepresentations and omissions artificially inflated the price of Amgen's stock at the time Connecticut Retirement and numerous other securities buyers purchased the stock. When the truth came to light, Connecticut Retirement asserts, Amgen's stock price declined, resulting in financial losses to those who purchased the stock at the inflated price. In its answer to Connecticut Retirement's complaint, Amgen conceded that "[a]t all relevant times, the market for [its] securities," which are traded on the NASDAQ stock exchange, "was an efficient market"; thus, "the market for Amgen's securities promptly digested current information regarding Amgen from all publicly available sources and reflected such information in Amgen's stock price." Consolidated Amended Class Action Complaint ¶¶ 199–200 in No. CV–07–2536 (CD Cal.); Answer ¶¶ 199–200.

> FN3. Amgen's allegedly improper marketing practices have sparked federal and state investigations and several whistleblower lawsuits. See Dye, Amgen to pay $762 million in drug-marketing case, Washington Post, Dec. 19, 2012, p. A17.

The District Court granted Connecticut Retirement's motion to certify a class action under Rule 23(b)(3) on behalf of all investors who purchased Amgen stock between the date of the first alleged misrepresentation and the date of the last alleged corrective disclosure. After granting Amgen's request to take an interlocutory appeal from the District Court's class-certification order, see Fed. Rule Civ.

Proc. 23(f), the Court of Appeals affirmed. See 660 F.3d 1170 (C.A.9 2011).

Amgen raised two arguments on appeal. First, Amgen contended that the District Court erred by certifying the proposed class without first requiring Connecticut Retirement to prove that Amgen's alleged misrepresentations and omissions were material. Second, Amgen argued that the District Court erred by refusing to consider certain rebuttal evidence that Amgen had proffered in opposition to Connecticut Retirement's class-certification motion. This evidence, in Amgen's view, demonstrated that the market was well aware of the truth regarding its alleged misrepresentations and omissions at the time the class members purchased their shares.

The Court of Appeals rejected both contentions. Amgen's first argument, the Court of Appeals noted, made the uncontroversial point that immaterial misrepresentations and omissions "by definition [do] not affect ... stock price [s] in an efficient market." *Id.,* at 1175. Thus, where misrepresentations and omissions are not material, there is no basis for presuming classwide reliance on those misrepresentations and omissions through the information-processing mechanism of the market price. "The problem with that argument," the Court of Appeals observed, is evident: "[B]ecause materiality is an element of the *merits* of their securities fraud claim, the plaintiffs cannot both fail to prove materiality yet still have a viable claim for which they would need to prove reliance individually." *Ibid.* The Court of Appeals thus concluded that "proof of materiality is not necessary" to ensure compliance with Rule 23(b)(3)'s requirement that common questions predominate. *Id.,* at 1177.

**\*7** With respect to Amgen's second argument, the Court of Appeals determined that Amgen's proffered rebuttal evidence was merely "a method of refuting [the] *materiality* " of the misrepresentations and omissions alleged in Connecticut Retirement's complaint. *Ibid.* Having already concluded that a securities-fraud plaintiff does not need to prove materiality before class certification, the court similarly held that "the district court correctly refused to consider" Amgen's rebuttal evidence "at the class certification stage." *Ibid.*

We granted Amgen's petition for certiorari, 567 U.S. —— (2012), to resolve a conflict among the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

Courts of Appeals over whether district courts must require plaintiffs to prove, and must allow defendants to present evidence rebutting, the element of materiality before certifying a class action under § 10(b) and Rule 10b–5. Compare _660 F.3d 1170_ (case below); and _Schleicher v. Wendt,_ 618 F.3d 679, 687 (C.A.7 2010) (materiality need not be proved at the class-certification stage), with _In re Salomon Analyst Metromedia Litigation,_ 544 F.3d 474, 484–485, 486, n. 9 (C.A.2 2008) (plaintiff must prove, and defendant may present evidence rebutting, materiality before class certification). See also _In re DVI, Inc. Securities Litigation,_ 639 F.3d 623, 631–632, 637–638 (C.A.3 2011) (plaintiff need not prove materiality before class certification, but defendant may present rebuttal evidence on the issue).

## II

### A

The only issue before us in this case is whether Connecticut Retirement has satisfied Rule 23(b)(3)'s requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members." Although we have cautioned that a court's class-certification analysis must be "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim," _Wal–Mart Stores, Inc. v. Dukes,_ 564 U.S. ——, —— (2011) (slip op., at 10) (internal quotation marks omitted), Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. See _id.,_ at ——, n. 6 (slip op., at 10, n. 6) (a district court has no " 'authority to conduct a preliminary inquiry into the merits of a suit' " at class certification unless it is necessary "to determine the propriety of certification" (quoting _Eisen v. Carlisle & Jacquelin,_ 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974))); Advisory Committee's 2003 Note on subd. (c)(1) of Fed. Rule Civ. Proc. 23, 28 U.S.C.App., p. 144 ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision.").

Bearing firmly in mind that the focus of Rule 23(b)(3) is on the predominance of common _questions,_ we turn to Amgen's contention that the courts below erred by failing to require Connecticut Retirement to prove the materiality of Amgen's alleged

misrepresentations and omissions before certifying Connecticut Retirement's proposed class. As Amgen notes, materiality is not only an element of the Rule 10b–5 cause of action; it is also an essential predicate of the fraud-on-the-market theory. See _Basic,_ 485 U.S., at 247 ("[W]here _materiality_ misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed." (emphasis added)). That theory, Amgen correctly observes, is premised on the understanding that in an efficient market, all publicly available information is rapidly incorporated into, and thus transmitted to investors through, the market price. See _id.,_ at 246–247. Because immaterial information, by definition, does not affect market price, it cannot be relied upon indirectly by investors who, as the fraud-on-the-market theory presumes, rely on the market price's integrity. Therefore, the fraud-on-the-market theory cannot apply absent a _material_ misrepresentation or omission. And without the fraud-on-the-market theory, the element of reliance cannot be proved on a classwide basis through evidence common to the class. See _id.,_ at 242. It thus follows, Amgen contends, that materiality must be proved before a securities-fraud class action can be certified.

**\*8** Contrary to Amgen's argument, the key question in this case is not whether materiality is an essential predicate of the fraud-on-the-market theory; indisputably it is.[FN4] Instead, the pivotal inquiry is whether proof of materiality is needed to ensure that the _questions_ of law or fact common to the class will "predominate over any questions affecting only individual members" as the litigation progresses. Fed. Rule Civ. Proc. 23(b)(3). For two reasons, the answer to this question is clearly "no."

> FN4. We agree with Justice THOMAS that "[m]ateriality was central to the development, analysis, and adoption of the fraud-on-the-market theory both before _Basic_ and in _Basic_ itself." _Post,_ at 18. We disagree, however, that the history of the fraud-on-the-market theory's development "confirms that materiality must be proved at the time that the theory is invoked—_i.e.,_ at certification." _Ibid._ As explained below, see _infra_ this page and 11–13, proof of materiality is not required prior to class certification

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

because such proof is not necessary to ensure satisfaction of Rule 23(b)(3)'s predominance requirement.

First, because "[t]he question of materiality ... is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor," materiality can be proved through evidence common to the class. *TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 445, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).* Consequently, materiality is a "common questio[n]" for purposes of Rule 23(b)(3). *Basic,* 485 U.S., at 242 (listing "materiality" as one of the questions common to the *Basic* class members).

Second, there is no risk whatever that a failure of proof on the common question of materiality will result in individual questions predominating. Because materiality is an essential element of a Rule 10b–5 claim, see *Matrixx Initiatives,* 563 U.S., at —— (slip op., at 9), Connecticut Retirement's failure to present sufficient evidence of materiality to defeat a summary-judgment motion or to prevail at trial would not cause individual reliance questions to overwhelm the questions common to the class. Instead, the failure of proof on the element of materiality would end the case for one and for all; no claim would remain in which individual reliance issues could potentially predominate.

Totally misapprehending our essential point, Justice THOMAS' dissent asserts that our "entire argument is based on the assumption that the fraud-on-the-market presumption need not be shown at certification because it will be proved later on the merits." *Post,* at 11, n. 9. Our position is not so based. We rest, instead, entirely on the text of Rule 23(b)(3), which provides for class certification if "the questions of law or fact common to class members predominate over any questions affecting only individual members." A failure of proof on the *common* question of materiality ends the litigation and thus will never cause individual questions of reliance or anything else to overwhelm questions common to the class. Therefore, under the plain language of Rule 23(b)(3), plaintiffs are not required to prove materiality at the class-certification stage. In other words, they need not, at that threshold, prove that the predominating question will be answered in their favor.

**\*9** Justice THOMAS urges that a plaintiff seeking

class certification "must show that the elements of [her] claim are susceptible to classwide proof." *Post,* at 7. See also *post,* at 11 (criticizing the Court for failing to focus its analysis on "whether the element of *reliance* is susceptible to classwide proof"). From this premise, Justice THOMAS concludes that Rule 10b–5 plaintiffs must prove materiality before class certification because (1) "materiality is a necessary component of fraud on the market," and (2) without fraud on the market, the Rule 10b–5 element of reliance is not "susceptible of a classwide answer." *Post,* at 6, 10–11. See also *post,* at 12 ("[I]f a plaintiff wishes to use *Basic* 's presumption to prove that reliance is a common question, he must establish the entire presumption, including materiality, at the class certification stage.").

Rule 23(b)(3), however, does *not* require a plaintiff seeking class certification to prove that each "element[t] of [her] claim [is] susceptible to classwide proof." *Post,* at 7. What the rule does require is that common questions "*predominate* over any questions affecting only individual [class] members." Fed. Rule Civ. Proc. 23(b)(3) (emphasis added). Nowhere does Justice THOMAS explain how, in an action invoking the *Basic* presumption, a plaintiff class's failure to prove an essential element of its claim for relief will result in individual questions predominating over common ones. Absent proof of materiality, the claim of the Rule 10b–5 class will fail in its entirety; there will be no remaining individual questions to adjudicate.

Consequently, proof of materiality is not required to establish that a proposed class is "sufficiently cohesive to warrant adjudication by representation"—the focus of the predominance inquiry under Rule 23(b)(3). *Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).* No doubt a clever mind could conjure up fantastic scenarios in which an individual investor might rely on immaterial information (think of the superstitious investor who sells her securities based on a CEO's statement that a black cat crossed the CEO's path that morning). But such objectively unreasonable reliance does not give rise to a Rule 10b–5 claim. See *TSC Industries,* 426 U.S., at 445 (materiality is judged by an objective standard). Thus, "the individualized questions of reliance," *post,* at 9, n. 8, that hypothetically might arise when a failure of proof on the issue of materiality dooms the fraud-on-the-market class are

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

far more imaginative than real. Such "individualized questions" do not undermine class cohesion and thus cannot be said to "predominate" for purposes of Rule 23(b)(3).[FN5]

> **FN5.** Justice THOMAS is also wrong in arguing that a failure of proof on the issue of materiality would demonstrate that a Rule 10b–5 class action "should not have been certified in the first place." *Post,* at 2. Quite the contrary. The fact that such a failure of proof resolves all class members' claims once and for all, leaving no individual issues to be adjudicated, confirms that the original certification decision was proper.

Because the question of materiality is common to the class, and because a failure of proof on that issue would not result in questions "affecting only individual members" predominating, Fed. Rule Civ. Proc. 23(b)(3), Connecticut Retirement was not required to prove the materiality of Amgen's alleged misrepresentations and omissions at the class-certification stage. This is not a case in which the asserted problem—*i.e.,* that the plaintiff class cannot prove materiality—"exhibits some fatal dissimilarity" among class members that would make use of the class-action device inefficient or unfair. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97, 107 (2009). Instead, what Amgen alleges is "a fatal similarity—[an alleged] failure of proof as to an element of the plaintiffs' cause of action." *Ibid.* Such a contention is properly addressed at trial or in a ruling on a summary-judgment motion. The allegation should not be resolved in deciding whether to certify a proposed class. *Ibid.* See also Schleicher, 618 F.3d, at 687 ("[W]hether a statement is materially false is a question common to all class members and therefore may be resolved on a class-wide basis after certification.").

B

**\*10** Insisting that materiality must be proved at the class-certification stage, Amgen relies chiefly on two arguments, neither of which we find persuasive.[FN6]

> **FN6.** Amgen advances a third argument founded on modern economic research tending to show that market efficiency is not " 'a binary, yes or no question.' " Brief for

Petitioners 32 (quoting Langevoort, *Basic at Twenty: Rethinking Fraud on the Market, 2009 Wis. L.Rev. 151, 167).* Instead, this research suggests, differences in efficiency can exist within a single market. For example, a market may more readily process certain forms of widely disseminated and easily digestible information, such as public merger announcements, than information more difficult to acquire and understand, such as obscure technical data buried in a filing with the Securities and Exchange Commission. See, *e.g.,* Macey & Miller, Good Finance, Bad Economics: An Analysis of the Fraud–on–the–Market Theory, 42 Stan. L.Rev. 1059, 1083–1087 (1990); Stout, The Mechanisms of Market Inefficiency: An Introduction to the New Finance, 28 J. Corp. L. 635, 653–656 (2003). Amgen, however, never clearly explains how this research on *market efficiency* bolsters its argument that courts should require precertification proof of *materiality.* In any event, this case is a poor vehicle for exploring whatever implications the research Amgen cites may have for the fraud-on-the-market presumption recognized in *Basic.* As noted above, see *supra,* at 6–7, Amgen conceded in its answer that the market for its securities is "efficient" and thus "promptly digest[s] current information regarding Amgen from all publicly available sources and reflect[s] such information in Amgen's stock price." Consolidated Amended Class Action Complaint ¶¶ 199–200; Answer ¶¶ 199–200. See also App. to Pet. for Cert. 40a (relying on the admission in Amgen's answer and an unchallenged expert report submitted by Connecticut Retirement, the District Court expressly found that the market for Amgen's stock was efficient). Amgen remains bound by that concession. See American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (C.A.9 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them."); cf. *Christian Legal Soc. Chapter of Univ. of Cal., Hastings College of Law v. Martinez,* 561 U.S. ——, —— (2010) (slip op., at 10) ("This Court has ... refused to consider a party's argument that contradicted a joint

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

'stipulation [entered] at the outset of th[e] litigation.' " (quoting *Board of Regents of Univ. of Wis. System v. Southworth,* 529 U.S. 217, 226, 120 S.Ct. 1346, 146 L.Ed.2d 193 (2000))). We thus find nothing in the cited research that would support requiring precertification proof of materiality in this case.

1

Amgen points first to our statement in *Halliburton* that "securities fraud plaintiffs must prove certain things in order to invoke *Basic* 's rebuttable presumption of reliance," including "that the alleged misrepresentations were publicly known ..., that the stock traded in an efficient market, and that the relevant transaction took place 'between the time the misrepresentations were made and the time the truth was revealed.' " 563 U.S., at —— (slip op., at 5–6) (quoting *Basic,* 485 U.S., at 248, n. 27). See also *Dukes,* 564 U.S., at ——, n. 6 (slip op., at 11, n. 6) ("[P]laintiffs seeking 23(b)(3) certification [of a securities-fraud class action] must prove that their shares were traded on an efficient market."). If these fraud-on-the-market predicates must be proved before class certification, Amgen contends, materiality—another fraud-on-the-market predicate—should be treated no differently.

We disagree. As an initial matter, the requirement that a putative class representative establish that it executed trades "between the time the misrepresentations were made and the time the truth was revealed" relates primarily to the Rule 23(a)(3) and (a)(4) inquiries into typicality and adequacy of representation, not to the Rule 23(b)(3) predominance quiry. *Basic,* 485 U.S., at 248, n. 27.[FN7] A security's market price cannot be affected by a misrepresentation not yet made, and in an efficient market, a misrepresentation's impact on market price is quickly nullified once the truth comes to light. Thus, a plaintiff whose relevant transactions were not executed between the time the misrepresentation was made and the time the truth was revealed cannot be said to have indirectly relied on the misrepresentation through its reliance on the integrity of the market price.[FN8] Such a plaintiff's claims, therefore, would not be "typical" of the claims of investors who did trade during the window between misrepresentation and truth revelation. Fed. Rule Civ. Proc. 23(a)(3). Nor could a court confidently conclude that such a plaintiff would "fairly and adequately

protect the interests" of investors who traded during the relevant window. Rule 23(a)(4). The requirement that the fraud-on-the-market theory's trade-timing predicate be established before class certification thus sheds little light on the question whether materiality must also be proved at the class-certification stage.

FN7. As earlier noted, see *supra,* at 1–2, Amgen does not here contest Connecticut Retirement's satisfaction of Rule 23(a)'s requirements.

FN8. Accordingly, "the timing of the relevant stock trades" is indeed an "element" of the fraud-on-the-market theory. *Post,* at 6, n. 6 (opinion of THOMAS, J.). Unlike Justice THOMAS, however, see *ibid.,* we do not understand the United States as *amicus curiae* to take a different view. See Brief for United States 15, n. 2 ("Precise identification of the times when the alleged misrepresentation was made and the truth was subsequently revealed is ... important to ensure that the named plaintiff has traded stock during the time the stock price allegedly was distorted by the defendant's misrepresentations.").

Amgen is not aided by *Halliburton* 's statement that market efficiency and the public nature of the alleged misrepresentations must be proved before a securities-fraud class action can be certified. As Amgen notes, market efficiency, publicity, and materiality can all be proved on a classwide basis. Furthermore, they are all essential predicates of the fraud-on-the-market theory. Unless those predicates are established, there is no basis for presuming that the defendant's alleged misrepresentations were reflected in the security's market price, and hence no grounding for any contention that investors indirectly relied on those misrepresentations through their reliance on the integrity of the market price. But unlike materiality, market efficiency and publicity are not indispensable elements of a Rule 10b–5 claim. See *Matrixx Initiatives,* 563 U.S., at —— (slip op., at 9) (listing elements of a Rule 10b–5 claim). Thus, where the market for a security is inefficient or the defendant's alleged misrepresentations were not aired publicly, a plaintiff cannot invoke the fraud-on-the-market presumption. She can, however, attempt to establish reliance through the "traditional" mode of demonstrating that

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

she was personally "aware of [the defendant's] statement and engaged in a relevant transaction ... based on that specific misrepresentation." *Halliburton,* 563 U.S., at —— (slip op., at 4). Individualized reliance issues would predominate in such a lawsuit. See *Basic,* 485 U.S., at 242. The litigation, therefore, could not be certified under Rule 23(b)(3) as a class action, but the initiating plaintiff's claim would remain live; it would not be "dead on arrival." 660 F.3d, at 1175.

**\*11** A failure of proof on the issue of materiality, in contrast, not only precludes a plaintiff from invoking the fraud-on-the-market presumption of classwide reliance; it also establishes as a matter of law that the plaintiff cannot prevail on the merits of her Rule 10b–5 claim. Materiality thus differs from the market-efficiency and publicity predicates in this critical respect: While the failure of common, classwide proof on the issues of market efficiency and publicity leaves open the prospect of individualized proof of reliance, the failure of common proof on the issue of materiality ends the case for the class and for all individuals alleged to compose the class. See Brief for United States as *Amicus Curiae* 20 ("Unless the failure of *common* proof gives rise to a need for *individualized* proof, it does not cast doubt on the propriety of class certification."). In short, there can be no actionable reliance, individually or collectively, on immaterial information. Because a failure of proof on the issue of materiality, unlike the issues of market efficiency and publicity, does not give rise to any prospect of individual questions overwhelming common ones, materiality need not be proved prior to Rule 23(b)(3) class certification.

2

**\*12** Amgen also contends that certain "policy considerations" militate in favor of requiring precertification proof of materiality. Brief for Petitioners 28. An order granting class certification, Amgen observes, can exert substantial pressure on a defendant "to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability." Advisory Committee's 1998 Note on subd. (f) of Fed. Rule Civ. Proc. 23, 28 U.S.C.App., p. 143. See also *AT & T Mobility LLC v. Concepcion,* 563 U.S. ——, —— (2011) (slip op., at 16) (class actions can entail a "risk of 'in terrorem' settlements"). Absent a requirement to evaluate materiality at the class-certification stage, Amgen contends, the issue may never be addressed by a court, for the defendant will surrender and settle

soon after a class is certified. Insistence on proof of materiality before certifying a securities-fraud class action, Amgen thus urges, ensures that the issue will be adjudicated and not forgone. See also *post,* at 4 (SCALIA, J., dissenting) (expressing the same concerns).

In this regard, however, materiality does not differ from other essential elements of a Rule 10b–5 claim, notably, the requirements that the statements or omissions on which the plaintiff's claims are based were false or misleading and that the alleged statements or omissions caused the plaintiff to suffer economic loss. See *Matrixx Initiatives,* 563 U.S., at —— (slip op., at 9). Settlement pressure exerted by class certification may prevent judicial resolution of these issues. Yet this Court has held that loss causation and the falsity or misleading nature of the defendant's alleged statements or omissions are common questions that need not be adjudicated before a class is certified. See *Halliburton,* 563 U.S., at —— (slip op., at 3) (loss causation need not be proved at the class-certification stage); *Basic,* 485 U.S., at 242 ("the falsity or misleading nature of the ... public statements" allegedly made by the defendant is a "common questio[n]"). See also *Schleicher,* 618 F.3d, at 685 (falsity of alleged misstatements need not be proved before certification of a securities-fraud class action).

Congress, we count it significant, has addressed the settlement pressures associated with securities-fraud class actions through means other than requiring proof of materiality at the class-certification stage. In enacting the Private Securities Litigation Reform Act of 1995 (PSLRA), 109 Stat. 737, Congress recognized that although private securities-fraud litigation furthers important public-policy interests, prime among them, deterring wrongdoing and providing restitution to defrauded investors, such lawsuits have also been subject to abuse, including the "extract[ion]" of "extortionate 'settlements' " of frivolous claims. H.R. Conf. Rep. No. 104–369, pp. 31–32 (1995). The PSLRA's response to the perceived abuses was, *inter alia,* to "impos[e] heightened pleading requirements" for securities-fraud actions, "limit recoverable damages and attorney's fees, provide a 'safe harbor' for forward-looking statements, impose new restrictions on the selection of (and compensation awarded to) lead plaintiffs, mandate imposition of sanctions for frivolous litigation, and authorize a stay of discovery pending resolution of any

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

motion to dismiss." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,* 547 U.S. 71, 81–82, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006). See also 15 U.S.C. § 78u–4 (2006 ed. and Supp. V). Congress later fortified the PSLRA by enacting the Securities Litigation Uniform Standards Act of 1998, 112 Stat. 3227, which curtailed plaintiffs' ability to evade the PSLRA's limitations on federal securities-fraud litigation by bringing class-action suits under state rather than federal law. See 15 U.S.C. § 78bb(f)(1) (2006 ed.).

While taking these steps to curb abusive securities-fraud lawsuits, Congress rejected calls to undo the fraud-on-the-market presumption of classwide reliance endorsed in *Basic.* See Langevoort, *Basic at Twenty: Rethinking Fraud on the Market,* 2009 Wis. L.Rev. 151, 153, and n. 8 (noting that the initial version of H.R. 10, 104th Cong., 1st Sess. (1995), an unenacted bill that, like the PSLRA, was designed to curtail abuses in private securities litigation, "would have undone *Basic* "). See also Common Sense Legal Reform Act: Hearings before the Subcommittee on Telecommunications and Finance of the House Committee on Commerce, 104th Cong., 1st Sess., 92, 236–237, 251–252, 272 (1995) (witnesses criticized the fraud-on-the-market presumption and expressed support for H.R. 10's requirement that securities-fraud plaintiffs prove direct reliance). Nor did Congress decree that securities-fraud plaintiffs prove each element of their claim before obtaining class certification. Because Congress has homed in on the precise policy concerns raised in Amgen's brief, "[w]e do not think it appropriate for the judiciary to make its own further adjustments by reinterpreting Rule 23 to make likely success on the merits essential to class certification in securities-fraud suits." *Schleicher,* 618 F.3d, at 686; cf. *Smith v. Bayer Corp.,* 564 U.S. ——, —— (2011) (slip op., at 17–18) ("Congress's decision to address the relitigation concerns associated with class actions through the mechanism of removal provides yet another reason for federal courts to adhere in this context to longstanding principles of preclusion.").

**\*13** In addition to seeking our aid in warding off "in terrorem" settlements, Amgen also argues that requiring proof of materiality before class certification would conserve judicial resources by sparing judges the task of overseeing large class proceedings in which the essential element of reliance cannot be proved on a classwide basis. In reality, however, it is Amgen's position, not the judgments of the lower courts in this

case, that would waste judicial resources. Amgen's argument, if embraced, would necessitate a mini-trial on the issue of materiality at the class-certification stage. Such preliminary adjudications would entail considerable expenditures of judicial time and resources, costs scarcely anticipated by Federal Rule of Civil Procedure 23(c)(1)(A), which instructs that the decision whether to certify a class action be made "[a]t an early practicable time." If the class is certified, materiality might have to be shown all over again at trial. And if certification is denied for failure to prove materiality, nonnamed class members would not be bound by that determination. See *Smith,* 564 U.S., at —— (slip op., at 12–18). They would be free to renew the fray, perhaps in another forum, perhaps with a stronger showing of materiality.

Given the tenuousness of Amgen's judicial-economy argument, Amgen's policy arguments ultimately return to the contention that private securities-fraud actions should be hemmed in to mitigate their potentially "vexatiou[s]" character. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 739, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). We have already noted what Congress has done to control exorbitant securities-fraud actions. See *supra,* at 19–20. Congress, the Executive Branch, and this Court, moreover, have "recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 313, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); see H.R. Conf. Rep. No. 104–369, at 31; Brief for United States as *Amicus Curiae* 1. See also *Amchem,* 521 U.S., at 617 (" 'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.' " (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (C.A.7 1997))). We have no warrant to encumber securities-fraud litigation by adopting an atextual requirement of precertification proof of materiality that Congress, despite its extensive involvement in the securities field, has not sanctioned.

### C

**\*14** Justice SCALIA acknowledges that proof of materiality is not required to satisfy Rule 23(b)(3)'s

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

predominance requirement. See *post,* at 1. Nevertheless, he maintains that full satisfaction of Rule 23's requirements is insufficient to obtain class certification under *Basic.* In Justice SCALIA's view, the Court's decision in *Basic* established a special rule: A securities-fraud class action cannot be certified unless all of the prerequisites of the fraud-on-the-market presumption of reliance, including materiality, have first been established. *Post,* at 2.

The purported rule is Justice SCALIA's invention. It cannot be attributed to anything the Court said in *Basic.* That decision is best known for its endorsement of the fraud-on-the-market theory. But the opinion also established something more. It stated the proper standard for judging the materiality of misleading statements regarding the existence and status of preliminary merger discussions. See 485 U.S., at 230–241, 250 ("Materiality in the merger context depends on the probability that the transaction will be consummated, and its significance to the issuer of the securities."). The District Court in *Basic* certified a class of investors whose share prices were allegedly depressed by misleading statements that disguised ongoing merger negotiations. *Id.,* at 228. Postcertification, the court granted summary judgment to the defendants on the ground that the alleged misstatements were immaterial as a matter of law. *Id.,* at 228–229. The Court of Appeals affirmed the class certification but reversed the grant of summary judgment. *Id.,* at 229. This Court, in turn, vacated the Court of Appeals' judgment and remanded for further proceedings on the defendants' summary-judgment motion in light of the materiality standard set forth in the Court's opinion. *Id.,* at 240–241, 250. Notably, however, we did not disturb the District Court's class-certification order, which we stated "was appropriate when made." *Id.,* at 250.[FN9]

> **FN9.** Scouring the Court's decision in *Basic* for some semblance of support for his position, Justice SCALIA attaches portentous significance to *Basic*'s statement that the District Court's class-certification order, although " 'appropriate when made,' " was " 'subject on remand to such adjustment, if any, as developing circumstances demand[ed].' " *Post,* at 2 (quoting *Basic,* 485 U.S., at 250).* This statement, however, merely reminds that certifications are not frozen once made. Rule 23 empowers district

courts to "alte[r] or amen[d]" class-certification orders based on circumstances developing as the case unfolds. Fed. Rule Civ. Proc. 23(c)(1) (1988). See also Rule 23(c)(1)(C) (2013).

If Justice SCALIA were correct that our decision in *Basic* demands proof of materiality before class certification, the Court in *Basic* should have ordered the lower courts to reconsider on remand both the defendants' entitlement to summary judgment and the propriety of class certification. Instead, the Court expressly endorsed the District Court's class-certification order while at the same time recognizing that further proceedings were necessary to determine whether the plaintiffs had mustered sufficient evidence to satisfy the relatively lenient standard for avoiding summary judgment. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[S]ummary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). Unlike Justice SCALIA, we are unwilling to presume that *Basic* announced a rule requiring precertification proof of materiality when *Basic* failed to apply any such rule to the very case before it.[FN10]

> **FN10.** Justice SCALIA suggests that the Court's approach in *Basic* might have been influenced by the obsolete view that " 'Rule 23 ... set [s] forth a mere pleading standard.' " *Post,* at 3 (quoting *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. ——, —— (2011) (slip op., at 10)). The opinion in *Basic,* however, provides no indication that the Court perceived any issue before it to turn on the question whether a plaintiff must merely plead, rather than "affirmatively demonstrate," her satisfaction of Rule 23's certification requirements. *Dukes,* 564 U.S., at —— (slip op., at 10).

### III

**\*15** Amgen also argues that the District Court erred by refusing to consider the rebuttal evidence Amgen proffered in opposing Connecticut Retirement's class-certification motion. This evidence, Amgen contends, showed that "in light of all the information available to the market," its alleged misrepresentations and misleading omissions "could not be presumed to have altered the market price because

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

they would not have 'significantly altered the total mix of information made available.' " Brief for Petitioners 40–41 (quoting *Basic*, 485 U.S., at 232). For example, Connecticut Retirement's complaint alleges that an Amgen executive misleadingly downplayed the significance of an upcoming Food and Drug Administration advisory committee meeting by incorrectly stating that the meeting would not focus on one of Amgen's leading drugs. See App. to Pet. for Cert. 17a. Amgen responded to this allegation by presenting public documents—including the committee's meeting agenda, which was published in the Federal Register more than a month before the meeting—stating that safety concerns associated with Amgen's drug would be discussed at the meeting. See *id.*, at 41a–42a. See also 69 Fed.Reg. 16582 (2004).

The District Court did not err, we agree with the Court of Appeals, by disregarding Amgen's rebuttal evidence in deciding whether Connecticut Retirement's proposed class satisfied Rule 23(b)(3)'s predominance requirement. The Court of Appeals concluded, and Amgen does not contest, that Amgen's rebuttal evidence aimed to prove that the misrepresentations and omissions alleged in Connecticut Retirement's complaint were immaterial. 660 F.3d, at 1177 (characterizing Amgen's rebuttal evidence as an attempt to present a " 'truth-on-the-market' defense," which the Court of Appeals explained "is a method of refuting an alleged misrepresentation's *materiality* "). See also Reply Brief 17 (Amgen's evidence was offered to rebut the "materiality predicate" of the fraud-on-the-market theory). As explained above, however, the potential immateriality of Amgen's alleged misrepresentations and omissions is no barrier to finding that common questions predominate. See Part II, *supra*. If the alleged misrepresentations and omissions are ultimately found immaterial, the fraud-on-the-market presumption of classwide reliance will collapse. But again, as earlier explained, see *supra*, at 10–13, individual reliance questions will not overwhelm questions common to the class, for the class members' claims will have failed on their merits, thus bringing the litigation to a close. Therefore, just as a plaintiff class's inability to prove materiality creates no risk that individual questions will predominate, so even a definitive rebuttal on the issue of materiality would not undermine the predominance of questions common to the class.

We recognized as much in *Basic* itself. A de-

fendant could "rebut the [fraud-on-the-market] presumption of reliance," we observed in *Basic,* by demonstrating that "news of the [truth] credibly entered the market and dissipated the effects of [prior] misstatements." 485 U.S., at 248–249. We emphasized, however, that "[p]roof of that sort is a matter for trial" (and presumably also for a summary-judgment motion under Federal Rule of Civil Procedure 56). *Id.*, at 249, n. 29.[FN11] The District Court thus correctly reserved consideration of Amgen's rebuttal evidence for summary judgment or trial. It was not required to consider the evidence in determining whether common questions predominated under Rule 23(b)(3).

> FN11. Amgen attempts to minimize the import of this statement by noting that it was made prior to a 2003 amendment to Rule 23 that eliminated district courts' authority to conditionally certify class actions. See Advisory Committee's 2003 Note on subd. (c)(1) of Fed. Rule Civ. Proc. 23, 28 U.S.C.App., p. 144. Nothing in our opinion in *Basic*, however, suggests that the statement relied in any way on district courts' conditional-certification authority. To the contrary, the Court in *Basic* stated: "Proof of that sort [*i.e.*, that news of the truth had entered the market and dissipated the effects of prior misstatements] is a matter for trial, throughout which the District Court retains the authority to *amend the certification order as may be appropriate*." 485 U.S., at 249, n. 29 (emphasis added). Rule 23(c)(1)(C) continues to provide that a class-certification order "may be altered or amended before final judgment."

3

**\*16** For the reasons stated, the judgment of the Court of Appeals for the Ninth Circuit is affirmed.

It is so ordered.

Justice ALITO, concurring.

I join the opinion of the Court with the understanding that the petitioners did not ask us to revisit *Basic* 's fraud-on-the-market presumption. See *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). As the dissent observes, more recent evidence suggests that the presumption may

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

rest on a faulty economic premise. *Post,* at 4, n. 4 (opinion of THOMAS, J.); see Langevoort, *Basic at Twenty: Rethinking Fraud on the Market, 2009 Wis. L.Rev. 151, 175–176.* In light of this development, reconsideration of the *Basic* presumption may be appropriate.

Justice SCALIA, dissenting.

I join the principal dissent, that of Justice THOMAS, except for Part I–B.

The fraud-on-the-market rule says that purchase or sale of a security in a well functioning market establishes reliance on a material misrepresentation known to the market. This rule is to be found nowhere in the United States Code or in the common law of fraud or deception; it was invented by the Court in *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Today's Court applies to that rule the principles of Federal Rule of Civil Procedure 23(b)(3), and thereby concludes (logically enough) that commonality is established at the certification stage even when materiality has not been shown. That would be a correct procedure if *Basic* meant the rule it announced to govern only the question of substantive liability—what must be shown in order to prevail. If that were so, the new substantive rule, like the more general substantive rule that reliance must be proved, would be subject, at the certification stage, to the commonality analysis of Rule 23(b)(3). In my view, however, the *Basic* rule of fraud-on-the-market—a well functioning market plus purchase or sale in the market plus material misrepresentation known to the market establishes a necessary showing of reliance—governs not only the question of substantive liability, but also the question whether certification is proper. All of the elements of that rule, including materiality, must be established if and when it is relied upon to justify certification. The answer to the question before us today is to be found not in Rule 23(b)(3), but in the opinion of *Basic.*

*Basic* established a presumption *that the misrepresentation was relied upon,* not a mere presumption that the plaintiffs relied on the market price. And it established that presumption not just for the question of substantive liability but also for the question of certification. "We granted certiorari ... to determine whether the courts below properly applied a *presumption of reliance in certifying the class,* rather than requiring each class member to show direct reliance

on Basic's statements." 485 U.S., at 230 (emphasis added). Of course it makes no sense to "presume reliance" on the misrepresentation merely because the plaintiff relied on the market price, *unless* the alleged misrepresentation would likely have affected the market price—that is, unless it was material. Thus, as Justice THOMAS' dissent shows, the *Basic* opinion is shot through with references to the necessary materiality. The presumption of reliance does not apply, and hence neither substantive liability will attach nor will certification be proper, unless materiality is shown. The necessity of materiality for certification is demonstrated by the last sentence of the *Basic* opinion, which comes after the Court has decided to remand the case for reconsideration of materiality under the appropriate legal standard: "The District Court's certification of the class here was appropriate when made but is subject on remand to such adjustment, if any, as developing circumstances demand." *Id., at 250.* Those circumstances are the establishment of facts that rebut the presumption, including of facts that show the misrepresentation was not material, or was not known to the market.

**\*17** The Court argues that if materiality were a predicate to certification on a fraud-on-the-market theory, the *Basic* Court would not have approved the class certification order while remanding for reconsideration of "whether the plaintiffs had mustered sufficient evidence to satisfy the relatively lenient standard for avoiding summary judgment." See *ante,* at 23–24. The Court manufactures an inconsistency on the basis of doctrine that did not govern class certification at the time of *Basic.* We recently clarified that "Rule 23 does not set forth a mere pleading standard." *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. ——, —— (2011) (slip op., at 10). But review of the *Basic* certification order shows that the District Court's fraud-on-the-market analysis was based exclusively on the pleadings: "[T]he *allegations of plaintiffs' complaint* are sufficient to bring this section 10(b) and Rule 10(b)(5) claim within the so-called 'fraud on the market' theory." App. to Pet. for Cert. in *Basic Inc. v. Levinson,* O.T.1987, No. 86–279, p. 115a (emphasis added); see also *ibid.* (citing complaint paragraphs as establishing fraud on the market). Under a pleadings standard, the District Court found that the plaintiffs had satisfied Rule 23(b)(3) with regard to fraud on the market, including its materiality predicate. See *id.,* at 133a (denial of reconsideration) ("This court ruled on December 10 that transaction causation [*i.e.,* reliance] could be established by the following: *proof of a ma-*

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

terial misrepresentation* which affected the market price of the stocks with a resulting injury to the plaintiffs" (emphasis added)). Thus, even if the plaintiffs sufficiently pleaded materiality that the certification order "was appropriate when made," *Basic, supra,* at 250, the defendants retained an opportunity on remand to rebut the pleading in order to defeat certification.
[FN*]

> [FN*] As for the Court's contention that I have "[s]cour[ed] the Court's decision in *Basic* " to find "some semblance of support" for my reading of the case, *ante,* at 23, n. 9: It does not take much scouring to come across the Court's opening statement that "[w]e granted certiorari ... to determine whether the courts below properly applied a *presumption of reliance in certifying the class.*" 485 U.S., at 230 (emphasis added).

Certification of the class is often, if not usually, the prelude to a substantial settlement by the defendant because the costs and risks of litigating further are so high. It does an injustice to the *Basic* Court to presume without clear evidence—and indeed in the face of language to the contrary—that it was establishing a regime in which not only those market class-action suits that have earned the presumption of reliance pass beyond the crucial certification stage, but *all* market-purchase and market-sale class-action suits do so, no matter what the alleged misrepresentation. The opinion need not be read this way, and it should not.

**\*18** The fraud-on-the-market theory approved by *Basic* envisions a demonstration of materiality not just for substantive recovery but for certification. Today's holding does not merely accept what some consider the regrettable consequences of the four-Justice opinion in *Basic* ; it expands those consequences from the arguably regrettable to the unquestionably disastrous.

Justice THOMAS, with whom Justice KENNEDY joins, and with whom Justice SCALIA joins except for Part I–B, dissenting.

I

The Court today allows plaintiffs to obtain certification of securities-fraud class actions without proof that common questions predominate over individualized questions of reliance, in contravention of Federal Rule of Civil Procedure 23(b)(3). The Court does so

by all but eliminating materiality as one of the predicates of the fraud-on-the-market theory, which serves as an alternative mode of establishing reliance. See *Basic Inc. v. Levinson,* 485 U.S. 224, 241–250, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Without demonstrating materiality at certification, plaintiffs cannot establish *Basic* 's fraud-on-the-market presumption. Without proof of fraud on the market, plaintiffs cannot show that otherwise individualized questions of reliance will predominate, as required by Rule 23(b)(3). And without satisfying Rule 23(b)(3), class certification is improper. Fraud on the market is thus a condition precedent to class certification, without which individualized questions of reliance will defeat certification.

The Court's opinion depends on the following assumption: Plaintiffs will either (1) establish materiality at the merits stage, in which case class certification was proper because reliance turned out to be a common question, or (2) fail to establish materiality, in which case the claim would fail on the merits, notwithstanding the fact that the class should not have been certified in the first place, because reliance was never a common question. The failure to establish materiality retrospectively confirms that fraud on the market was never established, that questions regarding the element of reliance were not common under Rule 23(b)(3), and, by extension, that certification was never proper. Plaintiffs cannot be excused of their Rule 23 burden to show at certification that questions of reliance are common merely because they might lose later on the merits element of materiality. Because a securities-fraud plaintiff invoking *Basic* 's fraud-on-the-market presumption to satisfy Rule 23(b)(3) should be required to prove each of the predicates of that theory at certification in order to demonstrate that questions of reliance are common to the class, I respectfully dissent.

A

**\*19** We begin with § 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (2006 ed. and Supp. V).[FN1] We "have implied a private cause of action from the text and purposes of § 10(b)" and Securities and Exchange Commission Rule 10b–5, 17 CFR § 240.10b–5 (2011).[FN2] *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. ——, —— (2011) (slip op., at 9). See also *Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co.,* 404 U.S. 6, 13, n. 9, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971) ("It is now established that a

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

private right of action is implied under § 10(b)"). The elements of an implied § 10(b) cause of action for securities fraud are " '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.' " *Matrixx, supra,* at —— (slip op., at 9) (quoting *Stoneridge Investment Partners, LLC v. Scientific–Atlanta, Inc.,* 552 U.S. 148, 157, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008)). This case concerns the reliance element of the § 10(b) claim and its interaction with Rule 23(b)(3).

**FN1.** Section 10 states, in relevant part:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

.....

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe...."

**FN2.** Rule 10b–5 states:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

"(a) To employ any device, scheme, or artifice to defraud,

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

To prove reliance, a plaintiff, whether proceeding individually or as a class member, must show that his stock transaction was caused by the specific alleged misstatement. "[P]roof of reliance ensures that there is a proper 'connection between a defendant's misrepresentation and a plaintiff's injury.' " *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. ——, —— (2011) (slip op., at 4) (quoting *Basic, supra,* at 243).[FN3] To satisfy this element, a plaintiff traditionally was required to "sho[w] that he was aware of a company's statement and engaged in a relevant transaction ... *based on that specific misrepresentation.*" *Erica P. John Fund, supra,* at —— (slip op., at 4) (emphasis added). In the face-to-face fraud cases from which securities claims historically arose, see, *e.g., Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 343–344, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) (discussing common-law roots of securities-fraud actions), this requirement was easily met by showing that the seller made statements directly to the purchaser and that the purchaser bought stock in reliance on those statements. However, in a modern securities market many, if not most, individuals who purchase stock from third parties on an impersonal exchange will be unaware of statements made by the issuer of those securities. As a result, such purchaser-plaintiffs are unable to meet the traditional reliance requirement because they cannot establish that they "engaged in a relevant transaction ... based on [a] specific misrepresentation." *Erica P. John Fund, supra,* at —— (slip op., at 4).

**FN3.** Courts have also "referred to the element of reliance as 'transaction causation.' " *Erica P. John Fund,* 563 U.S., at —— (slip op., at 6) (quoting *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 341–342, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), in turn citing *Basic Inc. v. Levinson,* 485 U.S. 224, 248–249, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)). This alternative phrasing recognizes that the reliance inquiry is directed at determining whether a particular piece of information caused an individual to enter into a given transaction.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

This concern was the driving force behind the development of the fraud-on-the-market theory adopted in *Basic.* Because individuals trading stock on an impersonal market often cannot show reliance even for purposes of an individual securities-fraud action, *Basic* permitted "plaintiffs to invoke a rebuttable presumption of reliance." *Erica P. John Fund, supra,* at —— (slip op., at 5).[FN4] *Basic* presumes that " 'in an open and developed securities market, the price of a company's stock is determined by the available *material* information regarding the company and its business.' " 485 U.S., at 241 (quoting *Peil v. Speiser,* 806 F.2d 1154, 1160–1161 (C.A.3 1986); emphasis added).[FN5] " 'Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.' " 485 U.S., at 241–242. As a result, "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price," and "an investor's reliance *on any public material misrepresentations* " may therefore "be presumed for purposes of a Rule 10b–5 action." *Id., at 247* (emphasis added).

FN4. The *Basic* decision itself is questionable. Only four Justices joined the portion of the opinion adopting the fraud-on-the-market theory. Justice White, joined by Justice O'Connor, dissented from that section, emphasizing that "[c]onfusion and contradiction in court rulings are inevitable when traditional legal analysis is replaced with economic theorization by the federal courts" and that the Court is "not well equipped to embrace novel constructions of a statute based on contemporary microeconomic theory." 485 U.S., at 252–253 (concurring in part and dissenting in part). Justice White's concerns remain valid today, but the Court has not been asked to revisit *Basic*'s fraud-on-the-market presumption. I thus limit my dissent to demonstrating that the Court is not following *Basic* 's dictates.

Moreover, the Court acknowledges there is disagreement as to whether market efficiency is " ' "a binary, yes or no question," ' " or instead operates differently depending on the information at issue, see *ante,* at 14, n. 6 (quoting Brief for Petitioners 32, in turn quoting Langevoort, *Basic* at Twenty: Rethinking Fraud on the Market, 2009 Wis. L.Rev. 151, 167).

FN5. *Basic* "adopt[ed] the *TSC Industries* standard of materiality for the § 10(b) and Rule 10b–5 context." 485 U.S., at 232. That standard indicates that " '[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.' " *Id., at 231* (quoting *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976); alteration in original). "[T]o fulfill the materiality requirement 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.' " 485 U.S., at 231–232 (quoting *TSC Industries,supra,* at 449).

**\*20** If a plaintiff opts to show reliance through fraud on the market, *Basic* is clear that the plaintiff must show the following predicates in order to prevail: (1) an efficient market, (2) a public statement, (3) that the stock was traded after the statement was made but before the truth was revealed, and (4) the materiality of the statement. *Id., at 248, n. 27.*[FN6] Both the Court and respondent agree that materiality is a necessary component of fraud on the market. See, *e.g., ante,* at 9 (materiality is "indisputably" "an essential predicate of the fraud-on-the-market theory"); Brief for Respondent 29 ("If the statement is not materially false, then no one in the class can establish reliance via the integrity of the market"). The materiality of a specific statement is, therefore, essential to the fraud-on-the-market presumption, which in turn enables a plaintiff to prove reliance.

FN6. The United States as *amicus curiae* invokes Rule 23(a)(3) to suggest that the third element, the timing of the relevant stock trades, is a "limit on the definition of the class." Brief for United States 15, n. 2. But it is also necessary to establish the timing of the allegedly material, public misstatement made into an allegedly efficient market (as well as when the fraud ended due to entry of truth on the market) before the fraud-on-the-market theory can be evaluated under Rule 23(b)(3).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

Thus, the lower court opinion in *Basic* expressly identified "the time the misrepresentations were made and the time the truth was revealed" as part of fraud on the market. *Levinson v. Basic Inc.,* 786 F.2d 741, 750 (C.A.6 1986). The *Basic* Court cited the formulation approvingly, 485 U.S., at 248, n. 27, and recently in *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. —— (2011), the Court cited the same language as part of the "undisputed" elements a securities-fraud plaintiff must prove to invoke *Basic.* 563 U.S., at —— (slip op., at 5–6) (quoting *Basic,supra,* at 248, n. 27). Unless the timing of the misrepresentation and truth is established at certification, there is no framework within which to determine whether fraud on the market renders reliance a common question. Thus, insofar as the majority recognizes that timing is a factor of the fraud-on-the-market theory, *ante,* at 16, n. 8, I agree. It would be incorrect to suggest that timing *solely* relates to Rules 23(a)(3) and (4). It is equally important to establish the timing range at certification for Rule 23(b)(3) reliance purposes. This fact undercuts the majority's attempt to isolate materiality as the only factor of fraud on the market that need not be shown at certification to demonstrate that reliance is a common question.

B

*Basic* 's fraud-on-the-market presumption is highly significant because it makes securities-fraud class actions possible by converting the inherently individual reliance inquiry into a question common to the class, which is necessary to satisfy the dictates of Rule 23(b)(3).[FN7] Rule 23(b)(3) requires the party seeking certification to prove that "questions of law or fact common to class members predominate over any questions affecting only individual members." A plaintiff seeking class certification is not required to prove the elements of his claim at the certification stage, but he must show that the elements of the claim are susceptible to classwide proof. See, *e.g., Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. ——, ——, n. 6 (2011) (slip op., at 11, n. 6) ("[P]laintiffs seeking 23(b)(3) certification must *prove* that their shares were traded on an efficient market," an element of the fraud-on-the-market theory (emphasis added)). Without that proof, there is no justification for certifying a class because there is no " 'capacity of a

classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.' " *Id.,* at —— (slip op., at 9–10) (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97, 132 (2009)).

> FN7. There is no dispute that respondent meets the prerequisites of Fed. Rule Civ. Proc. 23(a).

If plaintiffs fail to show that *reliance* is a common question at the time of certification, certification is improper. For if reliance is not a common question, each plaintiff would be required to prove that he in fact relied on a misstatement, a showing which is simply not susceptible to classwide proof. Individuals make stock transactions for divergent, even idiosyncratic, reasons. As the leading pre-*Basic* fraud-on-the-market case recognized, "[a] purchaser on the stock exchanges may be either unaware of a specific false representation, or may not directly rely on it; he may purchase because of a favorable price trend, price earnings ratio, or some other factor." *Blackie v. Barrack,* 524 F.2d 891, 907 (C.A.9 1975). The inquiry's inherently individualized nature renders it impossible to generate the common answers necessary for certification under Rule 23(b)(3). See *Basic,* 485 U.S., at 242 ("Requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would have prevented respondents from proceeding with a class action, since individual issues then would have overwhelmed the common ones").

**\*21** The Court's solution in *Basic* was to allow putative class members to prove reliance through the fraud-on-the-market presumption. *Id.,* at 241–250. As the Court today recognizes, failure to establish fraud on the market "leaves open the prospect of individualized proof of reliance." *Ante,* at 17. Notably, the Court and the Ninth Circuit both acknowledge that in order to obtain the benefit of the presumption, plaintiffs must establish two of the fraud-on-the-market predicates *at class certification* : (1) that the market was generally efficient, and (2) that the alleged misstatement was public. See *ante,* at 16 (acknowledging "that market efficiency and the public nature of the alleged misrepresentations must be proved before a securities-fraud class action can be certified"); 660 F.3d 1170, 1175 (C.A.9 2011) (same). See also *Erica P. John Fund,* 563 U.S., at —— (slip op., at 5) ("It is

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

undisputed that securities fraud plaintiffs must prove," at certification *inter alia,* "that the alleged misrepresentations were publicly known ... [and] that the stock traded in an efficient market"). The Court is correct insofar as its statements recognize that fraud on the market is a condition precedent to showing that there are common questions of reliance at the time of class certification.

Nevertheless, the Court asserts that materiality—by its own admission an essential predicate to invoking fraud on the market—need not be established at certification because it will ultimately be proved at the merits stage. *Ante,* at 16–18. This assertion is an express admission that parties *will not know* at certification whether reliance is an individual or common question.

To support its position, the Court transforms the predicate certification inquiry into a novel either-or inquiry occurring much later on the merits. According to the Court, either (1) plaintiffs will prove materiality on the merits, thus demonstrating *ex post* that common questions predominated at certification, or (2) they will fail to prove materiality, at which point we learn *ex post* that certification was inappropriate because reliance was not, in fact, a common question. In the Court's second scenario, fraud on the market was never established, reliance for each class member was inherently individualized, and Rule 23(b)(3) in fact should have barred certification long ago.[FN8] The Court suggests that the problem created by the second scenario is excusable because the plaintiffs will lose anyway on alternative merits grounds, and the case will be over. See *ante,* at 17 ("[F]ailure of proof on the issue of materiality [at the merits stage] ... not only precludes a plaintiff from invoking the fraud-on-the-market presumption of classwide reliance; it also establishes as a matter of law that the plaintiff cannot prevail on the merits of her Rule 10b–5 claim"). But nothing in logic or precedent justifies ignoring at certification whether reliance is susceptible to Rule 23(b)(3) classwide proof simply because one predicate of reliance—materiality—will be resolved, if at all, much later in the litigation on an independent merits element.

FN8. The majority ignores this explanation of the fundamental flaw in its position, asserting that I never "explain how ... a plaintiff class's failure to prove an essential element of

its claim for relief will result in individual questions predominating over common ones." *Ante,* at 12. But a plaintiff, who is excused from his burden of showing, at certification that reliance is a common question, fails to demonstrate that common questions predominate over the individualized questions of reliance that are inherent in a securities fraud claim. A plaintiff must carry this burden at certification for certification to be proper. The majority does not respond to the inherent timing problem in its position. It does not explain how *ignoring* questions of reliance—that undeniably will be individualized in some cases—*at certification* is justified by the fact that those questions will be resolved months or years later on the merits in a way that indicates reliance was indeed an individualized question all along. Far from obeying the dictates of Rule 23(b)(3) as it claims, *ante,* at 12–13, the majority unjustifiably puts off a critical part of the Rule 23(b)(3) inquiry until the merits. The only way the majority can purport to follow Rule 23(b)(3) is by ignoring the fact that, under its own analysis, reliance may be an individualized question that predominates over common questions at certification.

**\*22** It is the Court, not Amgen, that "would have us put the cart before the horse," *ante,* at 3, by jumping chronologically to the § 10(b) merits element of materiality. But Rule 23, as well as common sense, requires class certification issues to be addressed first. See Rule 23(c)(1)(A) ("At an early practicable time after a person sues or is sued ... the court must determine by order whether to certify the action as a class action"). A plaintiff who cannot prove materiality does not simply have a claim that is " 'dead on arrival' " at the merits, *ante,* at 17 (quoting 660 F.3d, at 1175); he has a class that should never have arrived at the merits at all because it failed Rule 23(b)(3) certification from the outset. Without materiality, there is no fraudon-the-market presumption, questions of reliance remain individualized, and Rule 23(b)(3) certification is impossible. And the fact that evidence of materiality goes to both fraud on the market at certification and an independent merits element is no issue; *Wal–Mart* expressly held that a court at certification may inquire into questions that also have later relevance on the merits. See 564 U.S., at —— (slip op., at 10–11). The Court reverses that inquiry, effectively

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

saying that certification may be put off until later because an adverse merits determination will retroactively wipe out the entire class. However, a plaintiff who cannot prove materiality cannot prove fraud on the market and, thus, cannot demonstrate that the question of reliance is susceptible of a classwide answer.

The fact that a statement may prove to be material at the merits stage does not justify conflating the doctrinally independent (and distinct) elements of materiality and reliance.[FN9] The Court's error occurs when, instead of asking whether the element of *reliance* is susceptible to classwide proof, the Court focuses on whether *materiality* is susceptible to classwide proof. *Ante,* at 10 ("[T]he pivotal inquiry is whether proof of materiality is needed to ensure that the *questions* of law or fact common to the class will 'predominate' "). The result is that the Court effectively equates § 10(b) materiality with fraud-on-the-market materiality and elides reliance as a § 10(b) element. But a plaintiff seeking certification under Rule 23 bears the burden of proof with regard to all the elements of a § 10(b) claim, which includes materiality *and* reliance. As *Wal-Mart* explained, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." 564 U.S., at —— (slip op., at 10). If the elements of fraud on the market are not proved at certification, a plaintiff has failed to carry his burden of establishing that questions of individualized reliance will not predominate, without which the plaintiff class cannot obtain certification. Cf. *id.,* at —— (slip op., at 12) (holding in Rule 23(a)(2) context that "[w]ithout some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer"). It is only by establishing all of the elements of the fraud-on-the-market presumption that reliance can be proved on a classwide basis. Therefore, if a plaintiff wishes to use *Basic* 's presumption to prove that reliance is a common question, he must establish the entire presumption, including materiality, at the class certification stage.

FN9. Of course, the Court's assertion that materiality will be resolved on the merits presumes that certification will not bring in *terrorem* settlement pressures to bear, foreclosing any materiality inquiry at all. The Court dismisses this concern, *ante,* at 18–20, attempting to give fraud-on-the-market analysis the imprimatur of congressional enactment instead of recognizing it as a judicially created doctrine grafted onto an implied cause of action. But the fact that Congress has enacted legislation to curb excesses in securities litigation while leaving *Basic* intact, see *ante,* at 19–20, says nothing about the proper interpretation of *Basic* at issue here. The Court retains discretion over the contours of *Basic* unless and until Congress sees fit to alter them—a fact Congress must also have realized when it passed the Private Securities Litigation Reform Act of 1995, 109 Stat. 737, and other legislation. The Court's entire argument is based on the assumption that the fraud-on-the-market presumption need not be shown at certification because it will be proved later on the merits; insofar as certification makes that later determination unlikely to occur, it at least counsels against the certitude with which the Court assures us that its gloss on *Basic* is correct.

**\*23** Nor is it relevant, as respondent argues, that requiring plaintiffs to establish all predicates of fraud on the market at certification will make it more difficult to obtain certification. See Brief for Respondent 35–38. In *Basic,* four Justices of a six-Justice Court created the fraud-on-the-market presumption from a combination of newly minted economic theories, 485 U.S., at 250–251, n. 1 (White, J., concurring in part and dissenting in part), and "considerations of fairness, public policy, and probability," *id., at 245* (majority opinion), to allow claims that otherwise would have been barred due to the plaintiffs' inability to show reliance, *id., at 242. Basic* is a judicially invented doctrine based on an economic theory adopted to ease the burden on plaintiffs bringing claims under an implied cause of action. There is nothing untoward about requiring plaintiffs to take the steps that the *Basic* Court created in an effort to save otherwise inadequate claims.

II

**\*24** The majority's approach is, thus, doctrinally incorrect under *Basic.* Its shortcomings are further

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

highlighted by the role that materiality played in the pre-*Basic* development of the fraud-on-the-market theory as a condition precedent to showing that there are common questions of reliance in the class-action context. Materiality, at the time of certification, has been a driving force behind the theory from the outset. This fact further supports the need to prove materiality at the time the fraud-on-the-market theory is invoked to show that questions of reliance can be answered on a classwide basis.

A

Before *Basic,* two signposts marked the way for courts applying the fraud-on-the-market theory. Both demonstrate that the materiality of an alleged false-hood was not a mere afterthought but rather one of the primary reasons for allowing traditional proof of reliance to be brushed aside at certification. This fact weighs strongly in favor of the conclusion that materiality must be resolved at certification when the fraud-on-the-market presumption is invoked to show that reliance can be proved on a classwide basis.

The first signpost was the Ninth Circuit's 1975 opinion in *Blackie,* termed by one pre-*Basic* court the "seminal fraud on the market case." *Peil,* 806 F.2d, at 1163, n. 16. See also *Basic, supra,* at 251, n. 1 (White, J., dissenting) ("The earliest Court of Appeals case adopting this theory cited by the Court is *Blackie v. Barrack,* 524 F.2d 891 (C.A.9 1975), cert. denied, 429 U.S. 816 (1976)").

*Blackie* arose from a $90 million loss reported by audio equipment manufacturer Ampex Corp. in its 1972 annual report. 524 F.2d, at 894. [FN10] Ampex's independent auditors not only refused to certify the 1972 annual report but also withdrew certification of all 1971 financial statements "because of doubts that the loss reported for 1972 was in fact suffered in that year." *Ibid.* In resultant class actions, the defendants argued that reliance stood in the way of class certification under Rule 23(b)(3) because it was not a common question.

FN10. Ampex's sales for 1971 were just under $284 million. See Reckert, A. & P. Registers Deficit for First Fiscal Quarter, N.Y. Times, July 1, 1972, p. 30 (discussing Ampex's revenue and net loss in its 1972 Annual Report).

The Ninth Circuit disagreed. Instead, it relieved plaintiffs from providing traditional proof of reliance, explaining that "causation is adequately established in the impersonal stock exchange context *by proof of purchase and of the materiality of misrepresentations,* without direct proof of reliance." *Id.,* at 906 (emphasis added). The court left no doubt that the materiality of the $90 million shortfall in Ampex's financial statements was central to its determination that reliance could be presumed. It asserted that "[m]ateriality circumstantially establishes the reliance of some market traders and hence the inflation in the stock price—when the purchase is made[,] the causational chain between defendant's conduct and plaintiff's loss is sufficiently established to make out a prima facie case." *Ibid.* Materiality was not merely an important factor that allowed reliance to be presumed at certification; materiality was *the* factor. It demonstrated that the defendants had committed a fraud on the market, that all putative class plaintiffs had relied on it in purchasing stock, and, therefore, that questions of reliance would be susceptible to common answers. [FN11]

FN11. *Blackie*'s use of materiality to satisfy reliance for purposes of Rule 23(b)(3) predominance continued to form the foundation for the fraud-on-the-market concept in subsequent pre-*Basic* appellate cases. See, *e.g., Peil v. Speiser,* 806 F.2d 1154, 1161 (C.A.3 1986) ("[W]e hold that plaintiffs who purchase in an open and developed market need not prove direct reliance on defendants' misrepresentations, but can satisfy their burden of proof on the element of causation by showing that the defendants made material misrepresentations" (footnote omitted)); *Panzirer v. Wolf,* 663 F.2d 365, 368 (C.A.2 1981) ("*Blackie* held that the materiality of a fraud creates a presumption of reliance through its presumed effect on the market.... Our holding is no more than an extension of *Blackie* ").

The second fraud-on-the-market signpost prior to *Basic* was a note in the Harvard Law Review, which described the nascent theory. See Note, The Fraud–on–the–Market Theory, 95 Harv. L.Rev. 1143 (1982) (hereinafter Harv. L.Rev. Note). The Sixth Circuit opinion reviewed in *Basic* termed the Note "[t]he clearest statement of the theory of presumption of reliance." *Levinson v. Basic Inc.,* 786 F.2d 741, 750

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2013 WL 691001 (U.S.)
(Cite as: 2013 WL 691001 (U.S.))

(1986). Indeed, in the briefing for *Basic* itself, the plaintiffs, the United States, and plaintiffs' *amicus* cited the article repeatedly as an authoritative statement on the subject. See Brief for Respondent 43, n. 18, 46, n. 20 (cited in *Peil, supra,* at 1160), Brief for Securities and Exchange Commission as *Amicus Curiae* 22, n. 25, 24, n. 30, 26, n. 32, and Brief for Joseph Harris et al. as *Amicus Curiae* 4, n. 2, in *Basic Inc. v. Levinson,* O.T.1987, No. 86–279.

**\*25** Like *Blackie,* the Note also hinged the fraud-on-the-market presumption of reliance on proof of materiality. Harv. L.Rev. Note 1161 ("In developed markets, which are apparently efficient, reliance should be presumed *from the materiality of the deception* " (emphasis added)). Ultimately, in language that will be familiar to anyone who has read *Basic,* the Note formulated a "pivotal assumption" underlying the fraud-on-the-market theory as the belief that:

"market prices respond to information disseminated (or *not* disseminated) concerning the companies whose securities are traded. In such a setting—often described as an 'efficient market'—the reliance of some traders upon a material deception influences market prices and thereby affects even traders who never read or hear of the deception." Harv. L.Rev. Note 1154 (footnote omitted).

Again, the materiality of the alleged misstatement was a key component, without which the market could not be presumed to have moved. As a result, without materiality it is impossible to say that there has been a fraud on the market at all, and if that is not the case there is no reason to believe that the market price at which stock transactions occurred was affected by an alleged misstatement or, by extension, that any market participants relied on it. Materiality should thus be proved when the fraud-on-the-market presumption is invoked, or there is no commonality with respect to questions of reliance.

**B**

Nor did the importance of materiality diminish in the Sixth Circuit opinion reviewed in *Basic.* Rather, the court followed the path marked by the signposts discussed above. It excused plaintiffs from offering traditional evidence of reliance, so long as "a defendant is shown to have made a *material* public misrepresentation that, if relied on directly, would fraudulently induce an individual to misjudge the value of the stock." *Levinson,* 786 F.2d, at 750 (emphasis added). The court's analysis made clear that materiality should be demonstrated *at the time the presumption was invoked* : "In order to invoke the presumption of reliance based upon the fraud on the market theory, a plaintiff must allege and prove ... that the mis-representations were material...." *Ibid.* (citing *Blackie,* 524 F.2d, at 906).

**C**

**\*26** Finally, the briefing before this Court in *Basic* itself built upon this framework and the foundational principle that materiality is an integral part of the theory. Critically, the *Basic* defendants argued that the plaintiffs could not establish fraud on the market at certification even if the theory were valid because the alleged misstatement was immaterial. They "contrast[ed] the likely market impact of disclosure of the [\$90 million *Blackie* loss] ... with the disclosure of the information which respondents contend[ed] rendered Basic's statements materially misleading." See Brief for Petitioners in O.T.1987, No. 86–279, p. 42. The *Basic* defendants concluded that "the differences between a company's \$90 million loss and a company's sporadic contacts with a friendly suitor are substantial.... [T]he fraud on the market theory, if it has vitality, should not be applied in a case such as this." *Id.,* at 43.

In response, the plaintiffs in *Basic* did not argue that the defendants misunderstood the role of materiality in the fraud-on-the-market theory. They instead advanced a now-foreclosed interpretation of dicta from *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974):

"Petitioners' final argument—that respondents will be unable to establish that Basic's repeated false and misleading statements impacted the price of Basic stock over a fourteen month period—represents an effort to litigate the merits of this case on the motion for class certification.... As this Court held in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974): 'We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.' " Brief for Respondents in O.T.1987, No. 86–279, p. 54.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.Ct. ----, 2013 WL 691001 (U.S.)
**(Cite as: 2013 WL 691001 (U.S.))**

The Court rejected this reading of *Eisen* two Terms ago, explaining that the very language the *Basic* plaintiffs quoted was "sometimes mistakenly cited" as prohibiting inquiry into "the propriety of certification under Rules 23(a) and (b)." *Wal–Mart Stores, Inc.,* 564 U.S., at ——, n. 6 (slip op., at 10, n. 6). That reading, the Court explained, "is the purest dictum and is contradicted by our other cases." *Ibid.* The *Basic* defendants' reply is consistent with *Wal–Mart* :

"Putative class representatives, such as respondents, should not be permitted to invoke the fraud on the market theory while, at the same time, arguing that courts may not make any preliminary inquiry into the claimed impact on the market. *See, e.g.,* Resp. Br., p. 54. By seeking the benefit of the presumption, respondents necessarily invite judicial scrutiny of the circumstances in which it is invoked." Reply Brief for Petitioners in O.T.1987, No. 86–279, p. 18.

Well said. The history of *Basic* is worth the volume of argument offered by the majority. Cf. *New York Trust Co. v. Eisner,* 256 U.S. 345, 349, 41 S.Ct. 506, 65 L.Ed. 963 (1921) (majority opinion of Holmes, J.). Materiality was central to the development, analysis, and adoption of the fraud-on-the-market theory both before *Basic* and in *Basic* itself. Materiality, therefore, must be demonstrated to prove fraud on the market, and until materiality of an alleged misstatement is shown there is no reason to believe that all market participants have relied equally on it. Otherwise individualized questions of reliance remain. This history confirms that materiality must be proved at the time that the theory is invoked—*i.e.,* at certification.

                                III
**\*27** I, thus, would reverse the judgment of the Ninth Circuit and hold that a plaintiff invoking the fraud-on-the-market presumption bears the burden to establish all the elements of fraud on the market at certification, including the materiality of the alleged misstatement.

U.S.,2013.
Amgen Inc. v. Connecticut Retirement Plans and Trust Funds
--- S.Ct. ----, 2013 WL 691001 (U.S.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.