1  Daniel Pochoda (Bar No. 021979)
   Kelly J. Flood (Bar No. 019772)
2  James Duff Lyall (Bar No. 330045)*
   **ACLU FOUNDATION OF ARIZONA**
3  3707 North 7th Street, Suite 235
   Phoenix, Arizona 85013
4  Telephone: (602) 650-1854
   Email: dpochoda@acluaz.org
5         kflood@acluaz.org
          jlyall@acluaz.org
6  *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7  *Attorneys for Plaintiffs Victor Parsons, Shawn Jensen,
   Stephen Swartz, Dustin Brislan, Sonia Rodriguez,
8  Christina Verduzco, Jackie Thomas, Jeremy Smith,
   Robert Gamez, Maryanne Chisholm, Desiree Licci,
9  Joseph Hefner, Joshua Polson, and Charlotte Wells, on
   behalf of themselves and all others similarly situated*

10 **[ADDITIONAL COUNSEL LISTED ON
    SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | No. CV 12-00601-PHX-NVW (MEA)<br><br>**PLAINTIFFS' MOTION TO MODIFY PROTECTIVE ORDER** |

1    Pursuant to Federal Rule of Civil Procedure 26(c), Plaintiffs respectfully ask the Court to modify Provision 6a of the Protective Order (Doc. 140) issued September 21, 2012 by (1) striking the language limiting the disclosure of "[m]ental health records pertaining to any unnamed plaintiffs . . . [to] Plaintiff Arizona Center for Disability Law absent [a] release provided by the patient[,]" as well as all subsequent language in Provision 6a at 3-4, and (2) adding a provision that allows former agents of a party to be shown documents marked "confidential" under the protective order in a deposition, so that Wexford documents can be used with Wexford witnesses. Such modifications are appropriate in light of (1) this Court's recently issued Order Granting Plaintiffs' Motion for Class Certification, which appoints Plaintiffs' counsel to represent not only named Plaintiffs, but "[a]ll prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices of the ADC" (Doc. 372 at 22); (2) the fact that the Protective Order as modified would better accord with the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d-2; 45 C.F.R. pts. 160 and 164 (HIPAA), on which the Court relied in crafting the Order; (3) the additional safeguards protecting the materials from public disclosure that will remain, were the relevant language stricken; and (4) the necessity of the Wexford-related revision to show Wexford personnel documents related to their performance during the time when Wexford was contracting with the ADC.

Plaintiff Arizona Center for Disability Law does not oppose this motion.

**BACKGROUND**

On March 22, 2012, Plaintiffs filed suit against Charles Ryan, Director of the Arizona Department of Corrections (ADC), and Richard Pratt, Interim Director of ADC's Division of Health Services, alleging that ADC's failure to provide adequate medical, mental, and dental health services, or adequate conditions of confinement in isolation, violate the Eighth Amendment's prohibition on cruel and unusual punishments, and seeking declaratory and injunctive relief. The named Plaintiffs included fourteen prisoners incarcerated in ADC facilities throughout the state who alleged that they had

78204-0001/LEGAL26230203.1

been denied adequate mental, physical, and/or dental health care, or who had been or were placed in isolation. ADC subsequently entered a contract with Wexford Health Sources to provide health care in their facilities. That contract was terminated by agreement and Wexford was replaced by Corizon Correctional Healthcare in March 2013.

On September 21, 2012, after receiving submissions from both Plaintiffs and Defendants, the Court issued a Protective Order setting guidelines for the disclosure of "confidential information," "protected health information" and "security information" related to the named and non-named Plaintiffs in the case. Doc. 140 at 1-2. The Court, in defining "protected health information," used the definition HIPAA provides. *Id.* at 2. The Order provided that "confidential information regarding the fourteen named Plaintiffs and any future named Plaintiff may be produced to all counsel of record for the parties," but set strict limitations on disclosures to any other persons, absent "order of the Court, consent of opposing counsel, or failure of opposing counsel to object" in an appropriate and timely manner. *Id.* at 3. Additionally, in Provision 6a, the Court set the terms for the release and disclosure of "confidential information" received from the opposing party or a third party. Although it provided that most records could be released to "[c]ounsel of record for the parties," it created an additional limitation regarding the disclosure of mental health records: "Mental Health records pertaining to any unnamed plaintiffs shall be disclosed only to Plaintiff Arizona Center for Disability Law absent the appropriate medical records release provided by the patient." *Id.* at 3-4. However, the Order concluded by noting that its provisions did not prejudice "the right of any party . . . to apply to the Court for a modification" of its terms. *Id.* at 8. Further, Paragraph 6 does not provide for the disclosure of confidential information to former agents, such as Wexford.

The practical effect of Provision 6a has been to stymie Plaintiffs' counsel's collection of mental health information concerning prisoners beyond the fourteen named plaintiffs in the case, given (1) it is impracticable or impossible to collect releases from

the nearly 33,000 individuals incarcerated in ADC facilities,[1] and (2) Defendants' interpretation of the order as barring even the release of the names of individuals for whom it may have such records, including, for example, lists of prisoners who are prescribed psychotropic medication, or are classified as seriously mentally ill. Accordingly, Plaintiffs currently have no means of even determining the prisoners for whom ADC may have such mental health records, and therefore which prisoners they could theoretically seek releases from. Defendants also have invoked this Provision of the Order to prevent Plaintiffs' counsel from obtaining a representative sample of relevant class member mental health records.

Moreover, with the termination of ADC's contract with Wexford, which was not foreseeable when the Protective Order was entered, it is necessary to add a subparagraph to Paragraph 6 allowing disclosure of confidential information to former agents of ADC, so that Plaintiffs can show Wexford documents to Wexford in deposition.

On March 5, 2013, this Court granted Plaintiffs' Motion for Class Certification, appointing the American Civil Liberties Union (ACLU) Foundation of Arizona, the Prison Law Office, the ACLU National Prison Project, Perkins Coie LLP, and Jones Day as Plaintiffs' counsel, representing not only the thirteen named plaintiffs remaining in ADC custody, but "all prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices of the ADC." Doc. 372 at 22-23. However, despite the fact that non-named Plaintiffs are members of the class, represented by class counsel, Plaintiffs' counsel still cannot obtain class members' mental health records as a result of the protective order's language. This information is necessary to prove Plaintiffs' class-wide mental health claims.

---

[1] The Court's Order Granting Class Certification noted that the numerosity requirement of Rule 23(a) was not in dispute given the number of prisoners who were putative class and subclass members, and that "there is no doubt that joinder of all members of the potential Class and Subclass would be impracticable, if not impossible." Doc. 372 at 3.

**DISCUSSION**

**I.    THE LEGAL STANDARD FOR MODIFYING THE PROTECTIVE ORDER**

Federal Rule of Civil Procedure 26(c)(1) provides that a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). However, it is undisputed that a district court retains the power to modify or lift protective orders that it has entered. *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place for Us, Inc.*, 62 F.3d 1217, 1219 (9th Cir. 1995); *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). Indeed, "Ninth Circuit precedent strongly favors disclosure to meet the needs of parties in pending litigation." *Beckman Indus.*, 966 F.2d at 475.

A court must make a finding of good cause before it can vacate or modify a protective order. *Tumbling v. Merced Irrigation Dist.*, No. 1:08cv1801 LJO DLB, 2010 WL 144833, at *2 (E.D. Cal. Jan. 11, 2010). In determining whether "good cause" exists, the central inquiry is whether the challenged provision prejudices the moving party. *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 528 (N.D. Cal. 2000); see *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (rejecting request for modification because of the movant's inability to show that the protective order violated its due process rights and prevented it from prosecuting its claims). Once the moving party has demonstrated the order's prejudicial effect, the burden shifts to the party opposing modification to show cause as to why the order should nonetheless not be modified. *Intel Corp.*, 198 F.R.D. at 528. In determining whether the opposing party meets its burden, courts consider the basis for the portion of the Order being challenged, *cf. Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 790 (3d Cir. 1994) (explaining that where secrecy interests are less important, interest in the protective order is weakened), and if the requested modification will result in the disclosure of the protected information to third parties. *Intel Corp.*, 198 F.R.D. at 528; *see Brown Bag Software*, 960 F.2d at 1470 (balancing "the risk . . . of inadvertent disclosure of trade secrets to competitors against the risk . . . that protection of . . . trade secrets impaired prosecution [of the

discovering party's] claims"). Other relevant factors may include: "(1) the nature of the protective order, (2) the foreseeability, at the time of issuance of the order, of the modification requested, (3) the parties' reliance on the order; . . . [(4)] the public and private interests affected; [(5)] the moving party's consent to submit to the terms; [(6)] . . . any new information; and [(7)] the burden created for others seeking information relevant to other litigation." *Tumbling*, 2010 WL 144833, at *2 (citing *Pansy*, 23 F.3d at 790).

## II. GOOD CAUSE EXISTS TO MODIFY THE PROTECTIVE ORDER.

### A. Precluding Plaintiffs from Showing Confidential Documents to Wexford Witnesses Prejudices Plaintiffs.

Wexford had a central role in the provision of medical care in ADC facilities. In the course of providing such care, Wexford generated many documents relevant to this litigation. It would be prejudicial to Plaintiffs if the Protective Order did not allow such documents to be shown to Wexford now that it is a former agent.

### B. Provision 6a Prejudices Class Members and Class Counsel.

Provision 6a of the Court's Protective Order prejudices class members, as well as Plaintiffs' counsel, in that it severely limits class counsel's ability to obtain the information necessary to represent class members. Without access to records detailing the mental health services ADC has provided and is providing, Plaintiffs' counsel are unable to gather the evidence required to adequately prosecute class members' mental health claims. Furthermore, HIPAA, upon which the Court relied in defining the class of protected health-related materials, draws no distinction between physical and mental health records, making both available subject to a qualified protective order. Finally, the class members' mental health records and information will remain otherwise confidential, as are all medical records in the case.

#### 1. Under Provision 6a, Class Counsel Cannot Obtain Information Necessary to Prove Class-Wide Mental Health Claims.

"For a litigation class, the key decision is whether or not to certify the class. Once a class is certified, the dynamics of the case change dramatically." *Sullivan v. DB Invs.*,

*Inc.*, 667 F.3d 273, 335 n.4 (3d Cir. 2011). The plaintiff class no longer consists only of those persons named; but rather, non-named "class members are automatically participants in the action unless they affirmatively opt out."[2] *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, 638 F. Supp. 2d 1290, 1297 (D. Colo. 2009) (internal quotation marks omitted). Class certification not only changes the status of non-named plaintiffs, but immediately "gives rise to an attorney-client relationship between potential class members and class counsel." *Gortat v. Capala Bros., Inc.*, No. 07-Civ-3629(ILG)(SMG), 2010 WL 1879922, at *2 (E.D.N.Y May 10, 2010); *see also Bower v. Bunker Hill Co.*, 689 F. Supp. 1032, 1033 (E.D. Wash. 1985) (accepting plaintiff's position that "once the court enters an order certifying a class, an attorney-client relationship arises between all members of the class and class counsel"). The result immediately invests class counsel with the authority to act on class members' behalf. *Parks v. Eastwood Ins. Servs.*, 235 F. Supp. 2d 1082, 1083 (C.D. Cal. 2002) ("[i]n a class action certified under Rule 23, . . . absent class members are considered represented by class counsel unless they choose to 'opt out'"). Class counsel have the responsibility to represent class members' interests. *Van Gemert v. Boeing Co.*, 590 F.2d 433, 440 n.15 (2d Cir. 1978) ("A certification under Rule 23(c) makes the Class the attorney's client for all practical purposes[.] . . . Without question, it is settled that the attorney is not free to advocate the interests of the named plaintiffs alone."); *Resnick v. Am. Dental Ass'n*, 95 F.R.D. 372, 376 (N.D. Ill. 1982) ("Without question, the unnamed class members, once the class has been certified, are 'represented by' the class counsel. Class counsel have the fiduciary responsibility and all the other hallmarks of a lawyer representing a client.").[3]

---

[2] While non-named class members may opt-out of a class action certified under Federal Rule of Civil Procedure 23(b)(3), they may not opt out of the class in this case, as it was certified pursuant to Federal Rule of Civil Procedure 23(b)(2). FED. R. CIV. P. 23(c); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011).

[3] Class certification has real consequences for not only plaintiffs' counsel, but defendants' attorneys as well. *See Harris v. Vector Marketing Corp.*, 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010) ("[O]nce a class is certified, the rules governing communications apply as though each class member is a client of the class counsel."

Recognizing this, the Supreme Court has explicitly rejected restrictions imposed by trial courts that interfere with plaintiffs' counsel's representation of class members. For example, in *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), minority employees of Gulf Oil filed a class action against the company and the employees' local union chapter, alleging that both had discriminated against them based on race. *Id.* at 91. The district court entered an order banning all communications between all parties, counsel, and any actual or potential class member without the court's prior approval. *Id.* at 93. The Supreme Court invalidated the order, finding it interfered with counsel's ability to represent the class. *Id.* at 104. It explained:

> [W]e are faced with the unquestionable assertion by respondents that the order created at least potential difficulties for them as they sought to vindicate the legal rights of a class of employees. The order interfered with their efforts to inform potential class members of the existence of this lawsuit . . . . In addition, the order made it more difficult for respondents, as the class representatives, to obtain information about the merits of the case from the persons they sought to represent.

*Id.* at 101.

Provision 6a of the Protective Order, as currently worded, imposes a similar impediment to class counsel's representation of class members and should therefore be modified. Provision 6a, by requiring that class counsel obtain an individual release from each of the nearly 33,000 individual class members before counsel may review their mental health records, effectively bars class counsel or their experts from reviewing these records. Plaintiffs' counsel would have to spend a great deal of time and money to obtain releases from every ADC prisoner. The problem is exacerbated by the fact that Defendants interpret the Protective Order to prohibit even the release of names of prisoners who may have mental health records, such as persons ADC has classified as seriously mentally ill, those prescribed psychotropic medications, or those who have

---

(citing MANUAL FOR COMPLEX LITIGATION § 21.33, at 300 (4th ed. 2004)); *Bower v. Bunker Hill Co.*, 689 F. Supp. 1032, 1034 (E.D. Wash. 1985) ("In summary, I believe that . . . defense counsel must treat plaintiff-class members as represented by counsel[.]").

1 requested or received mental health treatment. Declaration of Corene Kendrick in Support of Plaintiffs' Motion to Modify Protective Order ("Kendrick Decl.") ¶ 2, describing Defendants' refusal to provide lists of, *inter alia*, prisoners classified as seriously mentally ill, prisoners prescribed psychotropic medications, and prisoners placed on mental health watch, citing Provision 6a of the Protective Order. Plaintiffs thus have no means of even determining which class members to seek releases from. Defendants' interpretation of the Order prevents class counsel from even obtaining a sample of relevant records. Kendrick Decl., Ex. 1, Request No. 11 (declining to provide the names of prisoners classified as seriously mentally ill, as of the first day of every third month, citing Provision 6a of the Protective Order). Indeed, Defendants have relied on the order to refuse to produce any document that might conceivably contain class members' mental health information. *Id.*, Requests No. 16, 17 (declining to produce staff meeting minutes, citing Provision 6a of the Protective Order).

In order to prove Plaintiffs' claim that Defendants systemically fail to provide mental health services that satisfy Eighth Amendment standards, there must be an evaluation of the mental health services provided to prisoners beyond the fourteen named plaintiffs. Unless Provision 6a is modified, class counsel cannot obtain the evidence necessary to prove Plaintiffs' mental health claims and thus represent their clients effectively.[4]

### 2. Other Relevant Considerations Further Support Modification.

Upon a moving party's showing of good cause, the court may consider if some other reason exists that cautions against modification. In this case, no such reason exists.

---

[4] Even if it were possible to obtain releases from the 33,000 class members or some subset thereof, proceeding in this way, when HIPAA explicitly authorizes the release of these records subject to a protective order, would result in needless additional expense and delay. *See* FED. R. CIV. P. 1 (Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding").

### a. Modifying the Protective Order Would Harmonize it With HIPAA Requirements.

When defining the class of health care records it sought to protect from disclosure, the Court used the definition of "protected health information" in HIPAA. Doc. 140 at 2 (citing 45 C.F.R. § 160.103, A.R.S. 12-2294). However, Provision 6a's requirement that Plaintiffs' counsel obtain individual releases from class members imposes a restriction that conflicts with HIPAA's classification of health care records, as well as the circumstances under which they may be released.

HIPAA does not designate mental health records as a separate category of records from physical health records, nor does it provide separate additional protections for mental health records beyond those generally applicable to all "protected health information." *See* 45 C.F.R. §§ 164.103, 164.502, 164.512.[5] Rather, it sets out a limited number of circumstances in which such records may be released on a limited basis absent the individual's consent. *Id.* § 164.512. Among these, HIPAA provides that protected health information may be released during the course of a judicial proceeding in response to a qualified protective order: "an order of a court . . . that . . . [p]rohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested . . . ." *Id.* § 164.512(e)(1)(v).

Provision 6a therefore conflicts with HIPAA in two respects. First, rather than treating physical and mental health records equally, the Order creates an additional and statutorily unfounded distinction, requiring an additional step before mental health records may be released to class counsel. Second, the requirement imposed by Provision 6a with regards to class members' mental health records explicitly conflicts with HIPAA which

---

[5] HIPAA broadly defines protected health information as (1) "individually identifiable health information"; (2) "[t]ransmitted or maintained in any . . . form or medium"; (3) "created or received by a health care provider"; (4) "[r]elat[ing] to the past, present, or future physical or mental health or condition of an individual"; and (5) "identif[ying] the individual." 45 C.F.R. § 160.103 (emphasis added).

1  provides that protected health information may be made available on a limited basis as
2  part of a judicial proceeding without the consent of the individual the record concerns
3  once a court has issued a qualified protective order, as the Court did in this case.

          **b.**        **If the Protective Order is Modified, Class Members' Mental Health Records Will Remain Protected from Public Disclosure.**

6        Finally, there is no reason to believe that were Provision 6a modified as requested,
7  that class members mental health records would become available to third parties. Rather,
8  class members' mental health records would remain subject to the same protections the
9  Protective Order affords their medical or dental information. That is, once counsel for
10 each party receives such records, they are prohibited from disclosing the information" to
11 any person other than a limited class of "qualified persons": employees or agents assisting
12 "counsel in the preparation or trial of this action, . . . [t]he Court and court personnel[,] . . .
13 [s]tenographic and videographic reporters engaged in such proceedings[,] . . . experts and
14 consultants retained by the parties[,] . . . [and] [w]itnesses to whom confidential
15 information may otherwise be disclosed during a deposition[.]" Doc. 140 at 3-4.

## CONCLUSION

17       For the aforementioned reasons, Plaintiffs respectfully request that Provision 6a of
18 the Court's September 21, 2012 protective order be modified such that the following
19 language be stricken: "except that Mental Health records pertaining to any unnamed
20 plaintiffs shall be disclosed only to Plaintiff Arizona Center for Disability Law absent the
21 appropriate medical records release provided by the patient. Once a release is obtained
22 and provided, Defendants and Plaintiff Arizona Center for Disability Law may provide
23 the Mental Health Records along with the applicable release to counsel of record for the
24 parties, and their support staff, including paralegals, legal interns, and legal assistants, and
25 to testifying or consulting experts. These individuals will be governed by the
26 requirements consistent with this Protective Order[.]" Additionally, Plaintiffs respectfully
27 request that a new subparagraph be added to Provision 6 that adds "Any person who is a
28 former agent of a party and whose role as a party's agent is relevant to this litigation" to

1  the list of persons who may be shown confidential information.  A proposed redline of
2  Paragraph 6 to the protective order reflecting these changes is attached hereto as
3  Exhibit 1.

4  Dated: April 1, 2013                    **ACLU NATIONAL PRISON PROJECT**

By:   s/ David C. Fathi
   David C. Fathi (Wash. 24893)*
   Amy Fettig (D.C. 484883)**
   Ajmel Quereshi (Md. 28882)*
   915 15th Street N.W., 7th Floor
   Washington, D.C. 20005
   Telephone: (202) 548-6603
   Email:   dfathi@npp-aclu.org
         afettig@npp-aclu.org
         aquereshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:   dbarr@perkinscoie.com
      agerlicher@perkinscoie.com
      keidenbach@perkinscoie.com
      jhgray@perkinscoie.com
      mdumee@perkinscoie.com

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:   dpochoda@acluaz.org
      kflood@acluaz.org
      jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

| | |
|---|---|
| 1 | Donald Specter (Cal. 83925)* |
| | Alison Hardy (Cal. 135966)* |
| 2 | Sara Norman (Cal. 189536)* |
| | Corene Kendrick (Cal. 226642)* |
| 3 | **PRISON LAW OFFICE** |
| | 1917 Fifth Street |
| 4 | Berkeley, California 94710 |
| | Telephone:  (510) 280-2621 |
| 5 | Email:     dspecter@prisonlaw.com |
| | ahardy@prisonlaw.com |
| 6 | snorman@prisonlaw.com |
| | ckendrick@prisonlaw.com |
| 7 | |
| | *Admitted *pro hac vice* |
| 8 | |
| | Caroline Mitchell (Cal. 143124)* |
| 9 | David C. Kiernan (Cal. 215335)* |
| | Sophia Calderón (Cal. 278315)* |
| 10 | Sarah Rauh (Cal. 283742)* |
| | **JONES DAY** |
| 11 | 555 California Street, 26th Floor |
| | San Francisco, California 94104 |
| 12 | Telephone:  (415) 875-5712 |
| | Email:     cnmitchell@jonesday.com |
| 13 | dkiernan@jonesday.com |
| | scalderon@jonesday.com |
| 14 | srauh@jonesday.com |
| 15 | *Admitted *pro hac vice* |
| 16 | R. Scott Medsker (D.C. 976405)* |
| | **JONES DAY** |
| 17 | 51 Louisiana Avenue, NW |
| | Washington, D.C. 20001-2113 |
| 18 | Telephone:  (202) 879-3837 |
| | Email:     rsmedsker@jonesday.com |
| 19 | |
| | *Admitted *pro hac vice* |
| 20 | |
| | John Laurens Wilkes (Tex. 24053548)* |
| 21 | **JONES DAY** |
| | 717 Texas Street |
| 22 | Houston, Texas 77002 |
| | Telephone:  (832) 239-3939 |
| 23 | Email:     jlwilkes@jonesday.com |
| 24 | *Admitted *pro hac vice* |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:     kmamedova@jonesday.com
           jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2013, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
Ashley B. Zuerlein
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov
Ashley.Zuerlein@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

*Attorneys for Defendants*

Jennifer Alewelt
Asim Varma
Sarah Kader
ARIZONA CENTER FOR DISABILITY LAW
jalewelt@azdisabilitylaw.org
avarma@azdisabilitylaw.org
skader@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

        s/ Delana Freouf