# EXHIBIT 1

Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Katherine E. Watanabe, Bar No. 027458
Lucy M. Rand, Bar No. 026919
Ashley B. Zuerlein, Bar No. 029541
Assistant Attorney Generals
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-1610
Fax:        (602) 542-7670
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov
Ashley.Zuerlein@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Courtney R. Cloman, Bar No. 023155
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| Victor Parsons; *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | NO. 2:12-cv-00601-NVW |
|---|---|
| Plaintiffs, | **DEFENDANTS' RESPONSE TO PLAINTIFF JOSHUA POLSON'S *FIRST* SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |
| v. | |
| Charles Ryan, Director, et al. | |
| Defendants. | |

#3015996

Defendant Richard Pratt and Defendant Charles Ryan, pursuant to Fed. R. Civ. P. 34 and through counsel, jointly respond to Plaintiff Joshua Polson's First Request for Production of Documents ("RFP") as follows.

## **GENERAL OBJECTIONS**

1.      Defendants object to the production of any information that is protected by the attorney-client privilege, settlement privilege, deliberative process privilege, work product doctrine, or any similarly recognized privilege.  Inadvertent production of any information or documents so privileged does not constitute a waiver of such privilege or any other grounds for objecting to the discovery request.

2.      Defendants object to the extent that these requests for production seek, in whole or in part, the disclosure of confidential, financial, trade, or proprietary information.

3.      Defendants object to the production of any information that is irrelevant and/or immaterial to the claims and issues in this action and/or information that is not reasonably calculated to lead to the discovery of admissible information.

4.      Defendants object to the extent that these requests are overbroad and seek information unrelated to claims set forth in Plaintiffs' Complaint.

5.      Defendants object to any request that seeks confidential or privileged information relating to non-parties to this litigation.

6.      Defendants object to any request that seeks information, medical and/or mental health records without an executed release from the applicable inmate(s), as required by the Health Insurance Portability and Accountability Act of 1996 (aka HIPAA), 42 U.S.C. § 1320d and 45 CFR 160-164.

7.      Defendants object to the extent that these requests for production impose any obligation to provide identical information maintained in multiple forms (i.e., in paper and electronic form).

As discovery is ongoing, Defendants reserve the right to supplement these responses as necessary.

#3015996                                                         2

Defendants hereby preserve any and all objections to the ultimate admissibility of the documents produced as contemplated by the Federal Rules of Evidence.

Any documents or information produced are subject to the parties' protective order and clawback agreement.

Defendants' specific responses to Plaintiffs' requests, as listed below, incorporate these general objections as if fully stated in the specific response.

## GENERAL ABBREVIATIONS

| | Abbreviation | Definition |
|---|---|---|
| 1. | ADC | Arizona Department of Corrections |
| 2. | ASPC | Arizona State Prison Complex |
| 3. | DO | Department Order |
| 4. | DI | Director's Instruction |
| 5. | PO | Post Order |
| 6. | FO | Facility Order |
| 7. | IO | Institution Order |
| 8. | HS | Health Services |
| 9. | TM | Technical Manuals |
| 10. | MH | Mental Health |

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1**

All DOCUMENTS regarding CONDITIONS OF CONFINEMENT for prisoners on SUICIDE WATCH.

**RESPONSE**

Objection:     Defendants object to the extent this request seeks documents regarding inmates other than the named Plaintiffs, as it is not likely to lead to the discovery of admissible evidence at this stage of litigation.  Unless this case becomes certified as a class action, the only relevant mental health documents are those of the 14 named Plaintiffs. Defendants also object to this request as it is overbroad, unduly burdensome, and vague as to the time frame requested.  ADC does have the ability to limit its search of "mental health" or "medical" watches to "suicide" watches.  Plaintiffs' define "conditions of confinement" as "all circumstances regarding the state of being

imprisoned."[1]  Plaintiffs' request requires the review of each mental health incident to determine whether it is relevant to this litigation.  Between 1/1/2011 and 11/27/2012, there were 4,976 mental health watches.  Moreover, the Protective Order entered in this litigation prevents the disclosure of mental health records of unnamed Plaintiffs absent a medical records release.  *See* Doc. #140 at ¶ 6(a).

Without waiving the foregoing objection(s), see the following:

1.    DO(s): 804, 807, 1103, previously produced in response to Plaintiff Parsons' First RFP ("Parson's 1st RFP") Request No. 1.  For a detailed list of produced final and draft DOs, including document numbers, effective dates, and bates numbers, see Attachment A to Plaintiff Parsons' 1st RFP.

2.    TM(s): Mental Health TM (eff. Dec. 11, 2009 and Aug. 15, 2011) (Bates Numbers ADC011232-ADC011332 and ADC031959-ADC032044), previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.

3.    ASPC-DOUGLAS HS PO(s): FO-HS-874, FO-HS-1100, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced POs, including document numbers, effective dates, and bates numbers, see Attachment B to Plaintiff Parsons' 1st RFP.

4.    ASPC-LEWIS HS PO(s): HS-L-MH 01.00, HS-L-MH 02.00, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.

5.    ASPC-PHOENIX HS PO(s): PO-11-0509, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.

6.    ASPC-TUCSON HS PO(s): IHS-T-MHTM 001.00, IHS-T-MHTM 001.01, IHS-T-MHTM 001.02, IHS-T-MHTM 002.00, and IHS-T-MHTM 003.05, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.

---

[1]    These documents are maintained in paper format and are not electronically searchable by inmate name or other parameter.

7.     <u>ASPC-WINSLOW PO(s)</u>: 012-PO-Winslow, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.

8.     <u>ASPC-YUMA HS PO(s)</u>: MH-2, MH-3, MH-4, MH-5, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.

9.     <u>FORM(s)</u>: 1103-44, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced HS and medically-related forms, including form numbers, effective dates, and bates numbers, see Attachment C to Plaintiff Parsons' 1st RFP.

10.     <u>TRAINING</u>: DCOMT540, <u>Inmate Suicide Prevention</u>, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 25.

**REQUEST FOR PRODUCTION NO. 2**

All POLICIES AND PROCEDURES regarding MANAGEMENT OR TREATMENT of prisoners on SUICIDE WATCH, including but not limited to required frequency of contact with psychiatrists and other HEALTH CARE STAFF and CORRECTIONAL STAFF.

**RESPONSE**

Objection:  Defendants object to Plaintiff's request as vague and ambiguous with respect to the term "management."

Without waiving the foregoing objection(s), see the following:

1.     See responses to Request No. 1, above.

2.     <u>DO(s)</u>: 704, 807, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1. For a detailed list of produced final and draft DOs, including document numbers, effective dates, and bates numbers, see Attachment A to Plaintiff Parsons' 1st RFP.

3.     <u>ASPC-DOUGLAS HS PO(s)</u>: PO-HS-588, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced POs,

1   including document numbers, effective dates, and bates numbers, see Attachment B to

2   Plaintiff Parsons' 1st RFP.

3         4.      ASPC-EYMAN HS PO(s): PO-36-Eyman, PO-98-08, previously produced

4   in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced

5   POs, including document numbers, effective dates, and bates numbers, see Attachment B

6   to Plaintiff Parsons' 1st RFP.

7         5.      ASPC-FLORENCE HS PO(s): 07-81, previously produced in response to

8   Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced POs, including

9   document numbers, effective dates, and bates numbers, see Attachment B to Plaintiff

10  Parsons' 1st RFP.

11        6.      ASPC-LEWIS HS PO(s): HS-L-MH 01.00, HS-L-MH 02.00, previously

12  produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of

13  produced POs, including document numbers, effective dates, and bates numbers, see

14  Attachment B to Plaintiff Parsons' 1st RFP.

15        7.      ASPC-PHOENIX HS PO(s): 11-509, previously produced in response to

16  Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced POs, including

17  document numbers, effective dates, and bates numbers, see Attachment B to Plaintiff

18  Parsons' 1st RFP.

19        8.      ASPC-SAFFORD HS PO(s): PO-015-A-HU, PO-36-Safford-Fort Grant,

20  PO-36-Safford Tonto, previously produced in response to Plaintiff Parsons' 1st RFP

21  Request No. 1.  For a detailed list of produced POs, including document numbers,

22  effective dates, and bates numbers, see Attachment B to Plaintiff Parsons' 1st RFP.

23        9.      ASPC-TUCSON HS PO(s): IHS-T-MHTM 001.00, IHS-T-MHTM 001.01,

24  IHS-T-MHTM 001.02, IHS-T-MHTM 002.00, IHS-T-MHTM 003.01, IHS-T-MHTM

25  003.02, IHS-T-MHTM 003.03, IHS-T-MHTM 003.05, previously produced in response to

26  Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced POs, including

27  document numbers, effective dates, and bates numbers, see Attachment B to Plaintiff

28  Parsons' 1st RFP.

#3015996                                    6

10.     <u>ASPC-WINSLOW PO(s)</u>: 012-PO-Winslow, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced POs, including document numbers, effective dates, and bates numbers, see Attachment B to Plaintiff Parsons' 1st RFP.

11.     <u>ASPC-YUMA HS PO(s)</u>: MH-2, MH-3, MH-4, MH-5, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced POs, including document numbers, effective dates, and bates numbers, see Attachment B to Plaintiff Parsons' 1st RFP.

12.     <u>FORM(s)</u>: 1101-16, 1101-72, 1102-09, 1103-08, 1103-24, 1103-26, 1103-40a, 1103-44, 1103-70, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced POs, including document numbers, effective dates, and bates numbers, see Attachment B to Plaintiff Parsons' 1st RFP.

**REQUEST FOR PRODUCTION NO. 3**

All DOCUMENTS, including but not limited to POLICIES AND PROCEDURES, regarding USE OF FORCE or RESTRAINT by ADC staff on PRISONERS on SUICIDE WATCH and prisoners who are CLASSIFIED as "SERIOUSLY MENTALLY ILL," "SEVERELY MENTALLY ILL," MH-1 THROUGH MH-5, or any OTHER MENTAL HEALTH CLASSIFICATION employed by the ADC.

**RESPONSE**

Objection: Defendants object to the extent this request seeks documents regarding inmates other than the named Plaintiffs, as it is not likely to lead to the discovery of admissible evidence at this stage of litigation.  Unless this case becomes certified as a class action, the only relevant mental health documents are those of the 14 named Plaintiffs. Defendants also object to this request as it is overbroad, unduly burdensome, and vague as to the time frame requested.  ADC does have the ability to limit its search of "mental health" or "medical" watches to "suicide" watches.  Plaintiffs' define "conditions

of confinement" as "all circumstances regarding the state of being imprisoned."[2]
Plaintiffs' request requires the review of each mental health incident to determine whether
it is relevant to this litigation.  Between 1/1/2011 and 11/27/2012, there were
approximately 4,900 mental health watches.  Moreover, the Protective Order entered in
this litigation prevents the disclosure of mental health records of unnamed Plaintiffs
absent a medical records release.  *See* Doc. #140 at ¶ 6(a).

Defendants also object to Plaintiffs' request as vague and ambiguous with respect
to use of the term "restraint."  Plaintiffs' use of "restraint" is over broad and unduly
burdensome.  Pursuant to ADC policy, maximum custody inmates are restrained and
escorted by correctional officers each time they leave their cell.

Without waiving the foregoing objection(s), Defendants are still attempting to
locate additional responsive documents and will supplement this response as they are
located.

**REQUEST FOR PRODUCTION NO. 4**

All POLICIES and PROCEDURES regarding CLASSIFYING or IDENTIFYING
prisoners as "SERIOUSLY MENTALLY ILL," "SEVERELY MENTALLY ILL," MH-1
THROUGH MH-5, or any OTHER MENTAL HEALTH CLASSIFICATION employed
by the ADC.

**RESPONSE**

Objection:  Seeks information that is publicly available to Plaintiffs.

Without waiving the foregoing objection(s), see the following:

1.      DO(s): 801, 807, 1103, previously produced in response to Plaintiff
Parsons' 1st RFP Request No. 1.  For a detailed list of produced final and draft DOs,

---

[2]   These documents are maintained in paper format and are not electronically searchable
by inmate name or other parameter.

including document numbers, effective dates, and bates numbers, see Attachment A to Plaintiff Parsons' 1st RFP.

2. <u>TM(s)</u>: <u>Mental Health TM</u> (eff. Dec. 11, 2009 and Aug. 15, 2011) and 801-TM-OPS, <u>Classification Technical Manual</u> (Bates Numbers ADC040639-ADC040641, ADC040673-ADC040677, and ADC040689-ADC040690), previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.

3. <u>ASPC-PHOENIX HS PO(s)</u>: PO 11-0501, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced POs, including document numbers, effective dates, and bates numbers, see Attachment B to Plaintiff Parsons' 1st RFP.

4. <u>FORM(s)</u>: 1103-13, 1103-27, 1103-32, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced HS and medically-related forms, including form numbers, effective dates, and bates numbers, see Attachment C to Plaintiff Parsons' 1st RFP.

**REQUEST FOR PRODUCTION NO. 5**

All POLICIES and PROCEDURES regarding RESTRICTIONS or LIMITATIONS ON HOUSING of prisoners classified as "SERIOUSLY MENTALLY ILL," "SEVERELY MENTALLY ILL," MH-1 THROUGH MH-5, or any OTHER MENTAL HEALTH CLASSIFICATION employed by the ADC.

**RESPONSE**

Objection: Seeks information that is publicly available to Plaintiffs.

Without waiving the foregoing objection(s), see the following:

1. <u>DO(s)</u>: 801, 807, 1103, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced final and draft DOs, including document numbers, effective dates, and bates numbers, see Attachment A to Plaintiff Parsons' 1st RFP.

2.      TM(s): Mental Health TM (eff. Dec. 11, 2009 and Aug. 15, 2011) and 801-TM-OPS, Classification Technical Manual (Bates Numbers ADC040639-ADC040641, ADC040673-ADC040677, and ADC040689-ADC040690), previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.

3.      ASPC-TUCSON HS PO(s): IHS-T-MHTM 003.05, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced POs, including document numbers, effective dates, and bates numbers, see Attachment B to Plaintiff Parsons' 1st RFP.

**REQUEST FOR PRODUCTION NO. 6**

All POLICIES and PROCEDURES regarding PROVISION of HEALTH CARE to prisoners classified as "SERIOUSLY MENTALLY ILL," "SEVERELY MENTALLY ILL," MH-1 THROUGH MH-5, or any OTHER MENTAL HEALTH CLASSIFICATION employed by the ADC.

**RESPONSE**

Objection: Seeks information that is publicly available to Plaintiffs.

Without waiving the foregoing objection(s), see the following:

1.      DO(s): 807, 1101, 1103, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced final and draft DOs, including document numbers, effective dates, and bates numbers, see Attachment A to Plaintiff Parsons' 1st RFP.

2.      TM(s): Mental Health TM (eff. Dec. 11, 2009 and Aug. 15, 2011), and 801-TM-OPS,  previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.

3.      ASPC-PHOENIX HS PO(s): PO 11-0501, PO 11-0510, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced POs, including document numbers, effective dates, and bates numbers, see Attachment B to Plaintiff Parsons' 1st RFP.

4.     ASPC-TUCSON HS PO(s): IHS-T-MHTM 001.00, IHS-T-MHTM 001.01, IHS-T-MHTM 001.02, IHS-T-MHTM 002.00, IHS-T-MHTM 002.01, IHS-T-MHTM 003.00, IHS-T-MHTM 003.01, IHS-T-MHTM 003.02, IHS-T-MHTM 003.03, IHS-T-MHTM 003.05, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced POs, including document numbers, effective dates, and bates numbers, see Attachment B to Plaintiff Parsons' 1st RFP.

5.     TRAINING: DCHTH312, Understanding Mentally Ill Inmates Training, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 25.

6.     Also see previously produced Health Services Post Orders generally, as identified in Attachment B to the Defendants' 7th Supplemental Response to Plaintiff Parsons' 1st Request for Production.

**REQUEST FOR PRODUCTION NO. 7**

All POLICIES and PROCEDURES regarding TRANSFER of ADC prisoners to an INPATIENT MENTAL HEALTH FACILITY, whether operated by the ADC or by some other entity.

**RESPONSE**

Objection: Seeks information that is publicly available to Plaintiffs.

Without waiving the foregoing objection(s), see the following:

1.     DO(s): 1103, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced final and draft DOs, including document numbers, effective dates, and bates numbers, see Attachment A to Plaintiff Parsons' 1st RFP.

2.     TM(s): Mental Health TM (eff. Dec. 11, 2009 and Aug. 15, 2011), previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.

3.     ASPC-PHOENIX HS PO(s): PO 11-0404, PO 11-0501, PO 11-0504, PO 11-0510, PO 11-0512, 11-0514, PO 11-0622, PO 11-1006, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced POs,

including document numbers, effective dates, and bates numbers, see Attachment B to Plaintiff Parsons' 1st RFP.

    4.    <u>FORM(s)</u>: 1103-23, 1103-51, 1103-53, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced HS and medically-related forms, including form numbers, effective dates, and bates numbers, see Attachment C to Plaintiff Parsons' 1st RFP.

**REQUEST FOR PRODUCTION NO. 8**

All POLICIES and PROCEDURES regarding TRANSITIONING prisoners BETWEEN DIFFERENT LEVELS of MENTAL HEALTH CARE, whether provided by the ADC or by some other entity.

**RESPONSE**

Objection: Seeks information that is publicly available to Plaintiffs.

Without waiving the foregoing objection(s), see the following:

    1.    See response to Request No. 6, above.

    2.    <u>ASPC-PHOENIX HS PO(s)</u>: PO 11-0402, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced POs, including document numbers, effective dates, and bates numbers, see Attachment B to Plaintiff Parsons' 1st RFP.

**REQUEST FOR PRODUCTION NO. 9**

All POLICIES and PROCEDURES regarding MANAGEMENT of ADC prisoners who are PRESCRIBED PSYCHOTROPIC MEDICATIONS, including but not limited to required FREQUENCY OF CONTACT with health care staff, MONITORING of the THERAPEUTIC EFFECTS and ADVERSE SIDE EFFECTS of MEDICATION, and PROTECTION of the prisoners FROM HEAT INJURY.

**RESPONSE**

Objection:   Defendants object to Plaintiffs' request as vague and ambiguous with respect to use of the term "management" and as to the phrase "protection of the PRISONERS from heat injury"; assumes facts; seeks information that is publicly available to Plaintiffs.

Without waiving the foregoing objection(s), see the following:

1.     TM(s): Mental Health TM (eff. Dec. 11, 2009 and Aug. 15, 2011), previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.

2.     ASPC-PHOENIX HS PO(s): PO 11-0515, PO 11-0517, PO 11-0603, PO 11-0610, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1. For a detailed list of produced POs, including document numbers, effective dates, and bates numbers, see Attachment B to Plaintiff Parsons' 1st RFP.

3.     ASPC-TUCSON HS PO(s): IHS-T-PTM 002.00, IHS-T-MHTM 003.00, IHS-T-MHTM 003.01, IHS-T-MHTM 003.02, IHS-T-MHTM 003.03, IHS-T-MHTM 003.05, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced POs, including document numbers, effective dates, and bates numbers, see Attachment B to Plaintiff Parsons' 1st RFP.

4.     See also Responses to Parsons' 1st RFP Requests Nos. 3 and 4.


**REQUEST FOR PRODUCTION NO. 10**

All POLICIES AND PROCEDURES regarding the PROVISION of HEALTH CARE to prisoners classified as "SERIOUSLY MENTALLY ILL," "SEVERELY MENTALLY ILL," MH-1 THROUGH MH-5, or any OTHER MENTAL HEALTH CLASSIFICATION employed by the ADC while housed in ISOLATION, including but not limited to required FREQUENCY OF CONTACT with PSYCHIATRISTS or other health care staff; MONITORING of prisoners for ADVERSE MENTAL HEALTH EFFECTS of ISOLATION; and the REMOVAL of prisoners SUFFERING ADVERSE HEALTH EFFECTS of ISOLATION.

**RESPONSE**

Objection: Overbroad; assumes facts; seeks information that is publicly available to Plaintiffs.

Defendants additionally object to Plaintiff's definition of "isolation," which includes several different housing assignments, each with its own criteria for assignment. Inmates may be housed in a detention unit in disciplinary isolation, investigative detention, mental health observation, or pending placement into a maximum security unit. Moreover, the term "isolation" implies solitary confinement; however, inmates housed in the housing units listed in Plaintiffs' definition of "isolation" may or may not have cellmates, and have interaction with other inmates.

Without waiving the foregoing objection(s), see the following:

1.    DO(s): 807, 1101, 1103, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced final and draft DOs, including document numbers, effective dates, and bates numbers, see Attachment A to Plaintiff Parsons' 1st RFP.

2.    TM(s): Mental Health TM (eff. Dec. 11, 2009 and Aug. 15, 2011), previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  See also Response to Request No. 1, ¶ 2, above.

3.    ASPC-TUCSON HS PO(s): IHS-T-MHTM 001.00, IHS-T-MHTM 001.01, IHS-T-MHTM 001.02, IHS-T-MHTM 003.01, IHS-T-MHTM 003.02, IHS-T-MHTM 003.03, IHS-T-MHTM 003.05, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.

**REQUEST FOR PRODUCTION NO. 11**

Documents SUFFICIENT TO SHOW the NUMBER and NAMES of all prisoners at each ADC FACILITY and UNIT classified as "SERIOUSLY MENTALLY ILL," "SEVERELY MENTALLY ILL," MH-3 THROUGH MH-5, or any OTHER MENTAL

HEALTH CLASSIFICATION employed by the ADC to indicate the presence of mental illness as of January 1, 2011 and the first day of every third month thereafter.

**RESPONSE**

Objection: Defendants object to the extent this request seeks documents regarding inmates other than the named Plaintiffs, as it is not likely to lead to the discovery of admissible evidence at this stage of litigation.  Unless this case becomes certified as a class action, the only relevant mental health documents are those of the 14 named Plaintiffs.  Moreover, the Protective Order entered in this litigation prevents the disclosure of mental health records of unnamed Plaintiffs absent a medical records release. *See* Doc. #140 at ¶ 6(a).

Defendants additionally object to Plaintiff's definition of "isolation," which includes several different housing assignments, each with its own criteria for assignment. Inmates may be housed in a detention unit in disciplinary isolation, investigative detention, mental health observation, or pending placement into a maximum security unit. Moreover, the term "isolation" implies solitary confinement; however, inmates housed in the housing units listed in Plaintiffs' definition of "isolation" may or may not have cellmates, and have interaction with other inmates.

Defendants further object that this interrogatory is unduly burdensome, as Defendants do not maintain a centralized listing of the information requested.  Inmates' mental health scores may change over time and the reason for placement in a particular unit on a particular day may also vary.  ADC does not have the capability of electronically determining the mental health score and housing location of all inmates for a given day. Plaintiffs' request would require ADC to review data of each individual inmate and the creation of documents not currently in existence.

Without waiving the foregoing objection(s), see the following:

1.      MH Levels Statistical Summary (showing number of inmates per MH score and by complex) as of 06/30/2010, provided with Defendants' 1st Supplemental Response

1    to the ACDL's 1st RFP ("DFS' 1st Supp Resp to ACDL's 1st RFP") Request No. 11, bates
2    ADC050868.

3         2.      MH Levels Statistical Summary (showing number of inmates per MH score
4    and by complex) as of 08/09/2011, provided with provided with DFS' 1st Supp Resp to
5    ACDL's 1st RFP Request No. 11, bates ADC050869-050872.

6         3.      MH Levels Statistical Summary (showing number of inmates per MH score
7    and by location) as of 07/23/2012, provided with Defendants' Second Supplemental
8    response to Plaintiffs' Notice of 30(B)(6) Deposition (Dkt. 82) Request No. 4.

9

10   **REQUEST FOR PRODUCTION NO. 12**

11        Documents SUFFICIENT TO SHOW the NUMBER and NAMES of all prisoners
12   at each ADC FACILITY and UNIT who were PRESCRIBED PSYCHOTROPIC
13   MEDICATIONS, including but not limited to INVOLUNTARY or FORCED
14   psychotropic medication, and the medication(s) prescribed to each prisoner, as of January
15   1, 2011 and the first day of every third month thereafter.

16   **RESPONSE**

17        Objection: Defendants object to the extent this request seeks documents regarding
18   inmates other than the named Plaintiffs, as it is not likely to lead to the discovery of
19   admissible evidence at this stage of litigation.  Unless this case becomes certified as a
20   class action, the only relevant mental health documents are those of the 14 named
21   Plaintiffs.  Defendants also object that this request assumes facts, and is vague and
22   ambiguous as to "psychotropic medications."  Moreover, the Protective Order entered in
23   this litigation prevents the disclosure of mental health records of unnamed Plaintiffs
24   absent a medical records release.  *See* Doc. #140 at ¶ 6(a).

25

26   **REQUEST FOR PRODUCTION NO. 13**

27        Documents SUFFICIENT TO SHOW the NUMBER and NAMES of all prisoners
28   in an ISOLATION unit classified as "SERIOUSLY MENTALLY ILL," "SEVERELY

1    MENTALLY ILL," MH-3 through MH-5, or any other mental health classification
2    employed by the ADC to INDICATE the PRESENCE of MENTAL ILLNESS, as of
3    January 1, 2011 and the first day of every third month thereafter.
4    **RESPONSE**

5         Objection: Defendants object to the extent this request seeks documents regarding
6    inmates other than the named Plaintiffs, as it is not likely to lead to the discovery of
7    admissible evidence at this stage of litigation.  Unless this case becomes certified as a
8    class action, the only relevant mental health documents are those of the 14 named
9    Plaintiffs.  Moreover, the Protective Order entered in this litigation prevents the disclosure
10   of mental health records of unnamed Plaintiffs absent a medical records release. *See* Doc.
11   #140 at ¶ 6(a).

12        Defendants additionally object to Plaintiff's definition of "isolation," which
13   includes several different housing assignments, each with its own criteria for assignment.
14   Inmates may be housed in a detention unit in disciplinary isolation, investigative
15   detention, mental health observation, or pending placement into a maximum security unit.
16   Moreover, the term "isolation" implies solitary confinement; however, inmates housed in
17   the housing units listed in Plaintiffs' definition of "isolation" may or may not have
18   cellmates, and have interaction with other inmates.

19        Defendants further object that this interrogatory is unduly burdensome, as
20   Defendants do not maintain a centralized listing of the information requested.  Inmates'
21   mental health scores may change over time and the reason for placement in a particular
22   unit on a particular day may also vary.  ADC does not have the capability of electronically
23   determining the mental health score and housing location of all inmates for a given day.
24   Plaintiffs' request would require ADC to review data of each individual inmate and the
25   creation of documents not currently in existence.

26

27

28

1   **REQUEST FOR PRODUCTION NO. 14**

2          Documents SUFFICIENT TO SHOW the NUMBER and NAMES of all prisoners

3   in an ISOLATION unit who were PRESCRIBED PSYCHOTROPIC MEDICATIONS,

4   including but not limited to INVOLUNTARY or FORCED psychotropic medication, and

5   the MEDICATION(S) PRESCRIBED to each prisoner, as of January 1, 2011 and the first

6   day of every third month thereafter.

7   **RESPONSE**

8          Objection: Defendants object to the extent this request seeks documents regarding

9   inmates other than the named Plaintiffs, as it is not likely to lead to the discovery of

10  admissible evidence at this stage of litigation.  Unless this case becomes certified as a

11  class action, the only relevant mental health documents are those of the 14 named

12  Plaintiffs. Defendants also object that this request assumes facts, and is vague and

13  ambiguous as to "psychotropic medications."  Moreover, the Protective Order entered in

14  this litigation prevents the disclosure of mental health records of unnamed Plaintiffs

15  absent a medical records release.  *See* Doc. #140 at ¶ 6(a).

16         Defendants additionally object to Plaintiff's definition of "isolation," which

17  includes several different housing assignments, each with its own criteria for assignment.

18  Inmates may be housed in a detention unit in disciplinary isolation, investigative

19  detention, mental health observation, or pending placement into a maximum security unit.

20  Moreover, the term "isolation" implies solitary confinement; however, inmates housed in

21  the housing units listed in Plaintiffs' definition of "isolation" may or may not have

22  cellmates, and have interaction with other inmates.

23

24  **REQUEST FOR PRODUCTION NO. 15**

25         All "703 INSPECTION REPORTS" or other monthly reports generated pursuant to

26  ADC Department Orders at the ISOLATION units since January 1, 2011.

27

28

#3015996                                        18

**RESPONSE**

Objection: Defendants object to this request as irrelevant, unlikely to lead to the discovery of admissible evidence.  Plaintiff's request seeks the production of confidential security information, the disclosure of which could jeopardize facility security. ADC 703 Inspection Reports relate to the maintenance of security facilities and are in no way relevant to inmate medical, mental health or dental treatment.

Defendants additionally object to Plaintiff's definition of "isolation," which includes several different housing assignments, each with its own criteria for assignment. Inmates may be housed in a detention unit in disciplinary isolation, investigative detention, mental health observation, or pending placement into a maximum security unit. Moreover, the term "isolation" implies solitary confinement; however, inmates housed in the housing units listed in Plaintiffs' definition of "isolation" may or may not have cellmates, and have interaction with other inmates.

**REQUEST FOR PRODUCTION NO. 16**

All MEETING MINUTES produced for periodic STAFF MEETINGS and/or UNIT MANAGEMENT MEETINGS at ISOLATION units since January 1, 2011.

**RESPONSE**

Objection: Defendants object to this request to the extent that it seeks the production of confidential mental health information of unnamed inmates and security-sensitive information, the disclosure of which could jeopardize facility security. The Protective Order entered in this litigation prevents the disclosure of mental health records of unnamed Plaintiffs absent a medical records release.  *See* Doc. #140 at ¶ 6(a).

Defendants additionally object to Plaintiff's definition of "isolation," which includes several different housing assignments, each with its own criteria for assignment. Inmates may be housed in a detention unit in disciplinary isolation, investigative detention, mental health observation, or pending placement into a maximum security unit. Moreover, the term "isolation" implies solitary confinement; however, inmates housed in

the housing units listed in Plaintiffs' definition of "isolation" may or may not have

cellmates, and have interaction with other inmates.

Without waiving the foregoing objection(s), Defendants are still attempting to

locate additional responsive documents and will supplement this response as they are

located.


**REQUEST FOR PRODUCTION NO. 17**

All MEETING MINUTES produced for periodic meetings between WARDENS at

ISOLATION units and their EXECUTIVE STAFF since January 1, 2011.

**RESPONSE**

Objection: Defendants object to this request to the extent that it seeks the

production of confidential mental health information of unnamed inmates and security-

sensitive information, the disclosure of which could jeopardize facility security. The

Protective Order entered in this litigation prevents the disclosure of mental health records

of unnamed Plaintiffs absent a medical records release.  *See* Doc. #140 at ¶ 6(a).

Defendants additionally object to Plaintiff's definition of "isolation," which

includes several different housing assignments, each with its own criteria for assignment.

Inmates may be housed in a detention unit in disciplinary isolation, investigative

detention, mental health observation, or pending placement into a maximum security unit.

Moreover, the term "isolation" implies solitary confinement; however, inmates housed in

the housing units listed in Plaintiffs' definition of "isolation" may or may not have

cellmates, and have interaction with other inmates.

Without waiving the foregoing objection(s), Defendants are still attempting to

locate additional responsive documents and will supplement this response as they are

located.

1    **REQUEST FOR PRODUCTION NO. 18**

2         Copies of CORRECTIONAL JOURNALS maintained by each ISOLATION Unit

3    for the last year.

4    **RESPONSE**

5         Objection: Defendants object to this request as overbroad, unduly burdensome and

6    requiring the production of security-sensitive information, the disclosure of which could

7    jeopardize facility security.  Plaintiffs' request is estimated to include more than 150,000

8    pages of documents maintained in an original handwritten format.  Defendants also object

9    to the extent this request seeks mental health documents regarding inmates other than the

10   named Plaintiffs, as it is not likely to lead to the discovery of admissible evidence at this

11   stage of litigation.  Unless this case becomes certified as a class action, the only relevant

12   mental health documents are those of the 14 named Plaintiffs.  Moreover, the Protective

13   Order entered in this litigation prevents the disclosure of mental health records of

14   unnamed Plaintiffs absent a medical records release.  *See* Doc. #140 at ¶ 6(a).

15        Defendants additionally object to Plaintiff's definition of "isolation," which

16   includes several different housing assignments, each with its own criteria for assignment.

17   Inmates may be housed in a detention unit in disciplinary isolation, investigative

18   detention, mental health observation, or pending placement into a maximum security unit.

19   Moreover, the term "isolation" implies solitary confinement; however, inmates housed in

20   the housing units listed in Plaintiffs' definition of "isolation" may or may not have

21   cellmates, and have interaction with other inmates.

22

23   **REQUEST FOR PRODUCTION NO. 19**

24        All DOCUMENTS DESCRIBING or DEPICTING the CELL SIZE, PLAN,

25   FURNITURE, FIXTURES, DOORS, and WINDOWS in the ISOLATION units,

26   including the variations, if any, in the cells in the particular ISOLATION units.

27

28

1 **RESPONSE**

2     Objection: Defendants object to this request to the extent is seeks the production of

3 security-sensitive information, the disclosure of which could jeopardize facility security.

4     Defendants additionally object to Plaintiff's definition of "isolation," which

5 includes several different housing assignments, each with its own criteria for assignment.

6 Inmates may be housed in a detention unit in disciplinary isolation, investigative

7 detention, mental health observation, or pending placement into a maximum security unit.

8 Moreover, the term "isolation" implies solitary confinement; however, inmates housed in

9 the housing units listed in Plaintiffs' definition of "isolation" may or may not have

10 cellmates, and have interaction with other inmates.

11     Without waiving the foregoing objection(s), the parties are in the process of

12 scheduling tours of the ADC facilities for inspection.

13

14 **REQUEST FOR PRODUCTION NO. 20**

15     All DOCUMENTS, POLICIES & PROCEDURES regarding the OPERATION OF

16 and CONDITIONS of CONFINEMENT in the CENTRAL UNIT'S PHASE PROGRAM

17 described in Departmental Order 704 at § 1.2.7.

18 **RESPONSE**

19     Objection: Defendants object to this request as overly broad and unduly

20 burdensome.  Defendants also object to the extent that it seeks the production of

21 confidential mental health information of unnamed inmates and security-sensitive

22 information, the disclosure of which could jeopardize facility security. The Protective

23 Order entered in this litigation prevents the disclosure of mental health records of

24 unnamed Plaintiffs absent a medical records release.  *See* Doc. #140 at ¶ 6(a).

25     Without waiving the foregoing objection(s), see the following:

26     1.    Memorandum dated April 30, 2012, Increase of Mental Health for Max

27 Custody, previously produced in response to ACDL 1ˢᵗ RFP No. 9.

28

#3015996　　　　22

2.     DO(s): 804, 807, 1103, previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  For a detailed list of produced final and draft DOs, including document numbers, effective dates, and bates numbers, see Attachment A to Plaintiff Parsons' 1st RFP.

3.     TM(s): Mental Health TM (eff. Dec. 11, 2009 and Aug. 15, 2011), previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  See also Response to Request No. 1, ¶ 2, above.

**REQUEST FOR PRODUCTION NO. 21**

All DOCUMENTS, POLICIES & PROCEDURES regarding the OPERATION OF, CONDITIONS of CONFINEMENT in, and MENTAL HEALTH CARE PROGRAMS at, all of the units described in the memorandum to Charles Ryan from Robert Patton and Richard Pratt dated April 30, 2012, entitled "Increase of Mental Health for Max Custody" (ADC050861-67).

**RESPONSE**

Objection: Defendants object to this request as overly broad and unduly burdensome with respect to scope.  Defendants also object to the extent that it seeks the production of confidential mental health information of unnamed inmates and security-sensitive information, the disclosure of which could jeopardize facility security. The Protective Order entered in this litigation prevents the disclosure of mental health records of unnamed Plaintiffs absent a medical records release.  *See* Doc. #140 at ¶ 6(a).

Without waiving the foregoing objection(s), see the following:

1.     DO(s): 804, 807, 1103, previously produced in response to Parson's 1st RFP No. 1.  For a detailed list of produced final and draft DOs, including document numbers, effective dates, and bates numbers, see Attachment A to Plaintiff Parsons' 1st RFP.

2.     TM(s): Mental Health TM (eff. Dec. 11, 2009 and Aug. 15, 2011), previously produced in response to Plaintiff Parsons' 1st RFP Request No. 1.  See also Response to Request No. 1, ¶ 2, above.

**REQUEST FOR PRODUCTION NO. 22**

All documents regarding the USE OF FORCE or RESTRAINTS in the ISOLATION units for the last two years.

**RESPONSE**

Objection: Defendants object to this request as overly broad and unduly burdensome with respect to scope.  Defendants also object to the extent that it seeks the production of confidential security-sensitive information, the disclosure of which could jeopardize facility security.

Defendants object to Plaintiffs' request as vague and ambiguous with respect to use of the term "restraint."  Plaintiffs' use of "restraint" is over broad and unduly burdensome. Pursuant to ADC policy, maximum custody inmates are restrained and escorted by correctional officers each time they leave their cell.

Defendants additionally object to Plaintiff's definition of "isolation," which includes several different housing assignments, each with its own criteria for assignment. Inmates may be housed in a detention unit in disciplinary isolation, investigative detention, mental health observation, or pending placement into a maximum security unit. Moreover, the term "isolation" implies solitary confinement; however, inmates housed in the housing units listed in Plaintiffs' definition of "isolation" may or may not have cellmates, and have interaction with other inmates.

**REQUEST FOR PRODUCTION NO. 23**

All DOCUMENTS, POLICIES & PROCEDURES regarding the NUMBER and DURATION of NON-LEGAL VISITS allowed for prisoners in ISOLATION units; the CONDITIONS of those non-legal visits, whether CONTACT or NON-CONTACT; and the conditions under which the visits take place, e.g. by telephone; through glass, through wire mesh, etc.

**RESPONSE**

Objection: Defendants object to this request as overly broad and unduly burdensome with respect to scope.  Defendants also object to the extent that it seeks the production of confidential security-sensitive information, the disclosure of which could jeopardize facility security.

Defendants additionally object to Plaintiff's definition of "isolation," which includes several different housing assignments, each with its own criteria for assignment. Inmates may be housed in a detention unit in disciplinary isolation, investigative detention, mental health observation, or pending placement into a maximum security unit. Moreover, the term "isolation" implies solitary confinement; however, inmates housed in the housing units listed in Plaintiffs' definition of "isolation" may or may not have cellmates, and have interaction with other inmates.

Without waiving the foregoing objection(s), see the following:

1.       DO(s): 911, previously produced in response to Parson's 1st RFP No. 1.  For a detailed list of produced final and draft DOs, including document numbers, effective dates, and bates numbers, see Attachment A to Plaintiff Parsons' 1st RFP.

**REQUEST FOR PRODUCTION NO. 24**

All INSTITUTION ORDERS regarding FOOD SERVICE MAINTAINED or DEVELOPED by WARDENS or OTHER ADMINISTRATIVE STAFF at the ISOLATION units as referenced in Departmental Order 912, Food Service (effective date January 28, 2009) at p. 4 (ADC013141).

**RESPONSE**

Objection:     Defendants object to Plaintiff's request as over broad with respect to time frame.

Defendants also object to Plaintiff's definition of "isolation," which includes several different housing assignments, each with its own criteria for assignment.  Inmates may be housed in a detention unit in disciplinary isolation, investigative detention, mental

1  health observation, or pending placement into a maximum security unit.  Moreover, the

2  term "isolation" implies solitary confinement; however, inmates housed in the housing

3  units listed in Plaintiffs' definition of "isolation" may or may not have cellmates, and have

4  interaction with other inmates.

5      Without waiving the foregoing objection(s), Defendants attempting to locate

6  responsive documents and will supplement this response as they are located.

7

8  **REQUEST FOR PRODUCTION NO. 25**

9      All documents REFERENCED in the ADC FOOD SERVICE TECHNICAL

10  MANUAL (rev. 7/2/10) related to "DEPARTMENT FOOD SPECIFICATIONS" and the

11  "STANDARDIZED CYCLE MENU."

12  **RESPONSE**

13      Objection:    Defendants object to Plaintiff's request as over broad and unduly

14  burdensome with respect to scope and timeframe.  Trinity Services Group currently

15  provides food services to ADC on a contractual basis.  Pursuant to the contract, Trinity is

16  required to ensure meals meet the requisite nutritional requirements.  Defendants also

17  object to Plaintiff's request to the extent it seeks to obtain Trinity documentation through

18  ADC.  Defendants are in the possession of limited diet documentation.  To the extent

19  Plaintiffs' seek documents outside of ADC's possession, Plaintiffs must issue a subpoena

20  to Trinity.

21      Without waiving the foregoing objection(s), see the following:

22      1.    See Defendants' Response to Plaintiff Parsons' 1st RFP Request No. 57.

23      Defendants are still attempting to locate additional responsive documents and will

24  supplement this response as they are located.

25

26  **REQUEST FOR PRODUCTION NO. 26**

27      All INFORMATION REPORTS or OTHER DOCUMENTS generated since

28  January 1, 2011 that document MISSED MEALS on the ISOLATION units.

1   **RESPONSE**

2       Objection: Defendants object to this request as overly broad and unduly

3   burdensome with respect to scope.  ADC Information Reports are not typically maintained

4   in electronic format and are not searchable by inmate or subject matter.  Plaintiffs' request

5   would require ADC to review all Information Reports maintained by each individual

6   "isolation" unit from January 1, 2011, to date.

7       Defendants additionally object to Plaintiff's definition of "isolation," which

8   includes several different housing assignments, each with its own criteria for assignment.

9   Inmates may be housed in a detention unit in disciplinary isolation, investigative

10  detention, mental health observation, or pending placement into a maximum security unit.

11  Moreover, the term "isolation" implies solitary confinement; however, inmates housed in

12  the housing units listed in Plaintiffs' definition of "isolation" may or may not have

13  cellmates, and have interaction with other inmates.

14

15  **REQUEST FOR PRODUCTION NO. 27**

16      All documents regarding any NUTRITIONAL ANALYSIS of the DIET served to

17  prisoners in ISOLATION units.

18  **RESPONSE**

19      Objection:    Defendants object to Plaintiff's request as over broad and unduly

20  burdensome with respect to timeframe.  Trinity Services Group currently provides food

21  services to ADC on a contractual basis.  Pursuant to the contract, Trinity is required to

22  ensure meals meet the requisite nutritional requirements.  Defendants also object to

23  Plaintiff's request to the extent it seeks to obtain Trinity documentation through ADC.

24  Defendants are in the possession of limited diet documentation.  They are not in

25  possession of "nutritional analysis" or research regarding nutritional values.  To obtain

26  these documents, Plaintiffs must issue a subpoena to Trinity.

27      Defendants additionally object to Plaintiff's definition of "isolation," which

28  includes several different housing assignments, each with its own criteria for assignment.

1    Inmates may be housed in a detention unit in disciplinary isolation, investigative

2    detention, mental health observation, or pending placement into a maximum security unit.

3    Moreover, the term "isolation" implies solitary confinement; however, inmates housed in

4    the housing units listed in Plaintiffs' definition of "isolation" may or may not have

5    cellmates, and have interaction with other inmates.

6         Without waiving the foregoing objection(s), Defendants are still attempting to

7    locate additional responsive documents and will supplement this response as they are

8    located.

9

10   **REQUEST FOR PRODUCTION NO. 28**

11        All INFORMATION REPORTS and OTHER DOCUMENTS generated at

12   ISOLATION units in the last two years regarding the CANCELLATION or

13   TRUNCATION of OUTDOOR EXERCISE.

14   **RESPONSE**

15        Objection: Defendants object to this request as overly broad and unduly

16   burdensome with respect to scope.  ADC Information Reports are not typically maintained

17   in electronic format and are not searchable by inmate or subject matter.  Plaintiffs' request

18   would require ADC to review all Information Reports maintained by each individual

19   "isolation" unit within the last two years.

20        Defendants additionally object to Plaintiff's definition of "isolation," which

21   includes several different housing assignments, each with its own criteria for assignment.

22   Inmates may be housed in a detention unit in disciplinary isolation, investigative

23   detention, mental health observation, or pending placement into a maximum security unit.

24   Moreover, the term "isolation" implies solitary confinement; however, inmates housed in

25   the housing units listed in Plaintiffs' definition of "isolation" may or may not have

26   cellmates, and have interaction with other inmates.

27

28

#3015996                                                28

1   **REQUEST FOR PRODUCTION NO. 29**

2       All documents DESCRIBING or DEPICTING the SIZE of OUTDOOR

3   EXERCISE ENCLOSURES at each ISOLATION unit.

4   **RESPONSE**

5       Objection:    Defendants object to Plaintiff's request to the extent it seeks the

6   production of confidential security-sensitive information, the disclosure of which could

7   jeopardize facility security.

8       Defendants additionally object to Plaintiff's definition of "isolation," which

9   includes several different housing assignments, each with its own criteria for assignment.

10   Inmates may be housed in a detention unit in disciplinary isolation, investigative

11   detention, mental health observation, or pending placement into a maximum security unit.

12   Moreover, the term "isolation" implies solitary confinement; however, inmates housed in

13   the housing units listed in Plaintiffs' definition of "isolation" may or may not have

14   cellmates, and have interaction with other inmates.

15       Without waiving the foregoing objection(s), Defendants will continue to coordinate

16   with Plaintiffs to schedule a tour of ADC facilities for inspection.

17

18   **REQUEST FOR PRODUCTION NO. 30**

19       All ADC POST ORDERS, including general Post Orders that apply across ADC

20   and facility-specific Post Orders, related to the provision of OUTDOOR EXERCISE to

21   prisoners in ISOLATION.

22   **RESPONSE**

23       Objection:    Defendants object to Plaintiff's request as over broad.

24       Defendants additionally object to Plaintiff's definition of "isolation," which

25   includes several different housing assignments, each with its own criteria for assignment.

26   Inmates may be housed in a detention unit in disciplinary isolation, investigative

27   detention, mental health observation, or pending placement into a maximum security unit.

28   Moreover, the term "isolation" implies solitary confinement; however, inmates housed in

1  the housing units listed in Plaintiffs' definition of "isolation" may or may not have

2  cellmates, and have interaction with other inmates.

3       Without waiving the foregoing objection(s), Defendants are still attempting to

4  locate additional responsive documents and will supplement this response as they are

5  located.

6

7  **REQUEST FOR PRODUCTION NO. 31**

8       All ADC POST ORDERS, including general Post Orders that apply across ADC

9  and facility-specific Post Orders, related to working as a DESK OFFICER, KEY

10  OFFICER, FLOOR OFFICER, or YARD OFFICER in an ISOLATION unit.

11  **RESPONSE**

12       Objection: Defendants object to this request as irrelevant, unlikely to lead to the

13  discovery of admissible evidence, and overly broad and unduly burdensome with respect

14  to scope.  Defendants also object to the extent that it seeks the production of confidential

15  security-sensitive information, the disclosure of which could jeopardize facility security.

16

17  **REQUEST FOR PRODUCTION NO. 32**

18       All ADC POST ORDERS, including general Post Orders that apply across ADC

19  and facility-specific Post Orders, regarding HEALTH AND WELFARE CHECKS and

20  MENTAL HEALTH contacts on prisoners in ISOLATION.

21  **RESPONSE**

22       Objection: Defendants object to this request as overly broad and unduly

23  burdensome with respect to scope.  Defendants also object to the extent that it seeks

24  security-sensitive information, the disclosure of which could jeopardize facility security.

25       Defendants additionally object to Plaintiff's definition of "isolation," which

26  includes several different housing assignments, each with its own criteria for assignment.

27  Inmates may be housed in a detention unit in disciplinary isolation, investigative

28  detention, mental health observation, or pending placement into a maximum security unit.

1  Moreover, the term "isolation" implies solitary confinement; however, inmates housed in

2  the housing units listed in Plaintiffs' definition of "isolation" may or may not have

3  cellmates, and have interaction with other inmates.

4      Without waiving the foregoing objection(s), Defendants are still attempting to

5  locate additional responsive documents and will supplement this response as they are

6  located.

7

8  **REQUEST FOR PRODUCTION NO. 33**

9      All ADC POST ORDERS, including general Post Orders that apply across ADC

10 and facility-specific Post Orders, for WATCH OFFICERS.

11 **RESPONSE**

12     Objection: Defendants object to this request as vague and ambiguous as to the

13 definition of "watch officers", overly broad and unduly burdensome with respect to scope.

14 Defendants also object to the extent that it seeks security-sensitive information, the

15 disclosure of which could jeopardize facility security.

16     Without waiving the foregoing objection(s), Defendants are still attempting to

17 locate responsive documents, if any, and will supplement this response as they are located.

18

19 **REQUEST FOR PRODUCTION NO. 34**

20     All ADC POST ORDERS, including general Post Orders that apply across ADC

21 and facility-specific post orders regarding SUICIDE WATCH, suicide PREVENTION,

22 suicide PRECAUTIONS, SYMPTOMS/SIGNS of DEPRESSION in prisoners,

23 SUICIDALITY and REQUIRED REPORTING of such symptoms to mental health staff.

24 **RESPONSE**

25     Objection:    Defendants object to Plaintiff's request as over broad.

26     Without waiving the foregoing objection(s), see the following:

27     1.    ASPC-YUMA HS PO(s): MH-3, MH-4, MH-5, MH-6, previously produced

28 in response to Plaintiff Parsons' 1st RFP Request No. 1.

#3015996                                              31

1        2.       See also responses to Requests Nos. 1 and 2, above.

2

3    **REQUEST FOR PRODUCTION NO. 35**

4        All ADC POST ORDERS, including general Post Orders that apply across ADC

5    and facility-specific Post Orders, regarding STRIP SEARCHING of prisoners in

6    ISOLATION.

7    **RESPONSE**

8        Objection: Defendants object to this request as irrelevant.  Defendants also object

9    to the extent that Plaintiff's request seeks security-sensitive information, the disclosure of

10   which could jeopardize facility security.

11       Defendants additionally object to Plaintiff's definition of "isolation," which

12   includes several different housing assignments, each with its own criteria for assignment.

13   Inmates may be housed in a detention unit in disciplinary isolation, investigative

14   detention, mental health observation, or pending placement into a maximum security unit.

15   Moreover, the term "isolation" implies solitary confinement; however, inmates housed in

16   the housing units listed in Plaintiffs' definition of "isolation" may or may not have

17   cellmates, and have interaction with other inmates.

18       Without waiving the foregoing objection(s), Defendants are still attempting to

19   locate responsive documents, if any, and will supplement this response as they are located.

20

21   **REQUEST FOR PRODUCTION NO. 36**

22       All documents regarding STAFFING and STAFFING VACANCIES in

23   ISOLATION units, including but not limited to post charts, staffing charts, prioritized

24   posting charts, and staffing rosters in each ISOLATION unit.

25   **RESPONSE**

26       Objection: Defendants object to this request as vague and ambiguous as to the

27   definition of "posting charts," overly broad and unduly burdensome with respect to scope

28   and time frame.  Defendants also object to Plaintiff's request to the extent it seeks to

1   obtain Wexford documentation through ADC.  Defendants are in the possession of limited

2   Wexford employment documentation.  They are not in possession of Wexford "post

3   charts, "staffing charts," "prioritized posting charts" or weekly staffing schedules.  To

4   obtain these documents, Plaintiffs must issue a subpoena to Wexford.

5          Defendants additionally object to Plaintiff's definition of "isolation," which

6   includes several different housing assignments, each with its own criteria for assignment.

7   Inmates may be housed in a detention unit in disciplinary isolation, investigative

8   detention, mental health observation, or pending placement into a maximum security unit.

9   Moreover, the term "isolation" implies solitary confinement; however, inmates housed in

10   the housing units listed in Plaintiffs' definition of "isolation" may or may not have

11   cellmates, and have interaction with other inmates.

12          Without waiving the foregoing objection(s), see the following:

13          1.     Vacancy Reports, previously produced in response to Parsons 1st RFP

14   Request No. 19: 09/27/2012 (ADC049045-049055); 10/31/2012 (ADC049056-049066);

15   11/30/2012 (ADC049067-049077); 12/21/2012 (ADC0-0);

16          2.     AZ Termination Report, dated December 21, 2012, previously produced in

17   response to Parsons 1st RFP Request No. 19.

18          3.     Health Services Filled Position Detail Reports, previously produced in

19   response to Parsons 1st RFP Request No. 19.

20          4.     AZ New Hire Report, previously produced in response to Parsons 1st RFP

21   Request No. 19.

22

23   **REQUEST FOR PRODUCTION NO. 37**

24          Documents SUFFICIENT TO SHOW the MENTAL HEALTH CARE STAFFING

25   SCHEDULE and STAFFING VACANCIES for the mental health care programs at all of

26   the units described in the memorandum to Charles Ryan from Robert Patton and Richard

27   Pratt dated April 30, 2012, entitled "Increase of Mental Health for Max Custody"

28   (ADC050861-67).

#3015996                                        33

**RESPONSE**

Objection:  Defendants object to Plaintiff's request to the extent it seeks to obtain Wexford documentation through ADC.  Defendants are in the possession of limited Wexford employment documentation.  They are not in possession of Wexford weekly staffing schedules.  To obtain these documents, Plaintiffs must issue a subpoena to Wexford.

Without waiving the foregoing objection(s), see the following:

1.      Monthly Health Services Total, Filled, and Vacant Summary 06/30/2009-06/30/2012 (ADC049078-049079);

2.      Monthly Health Services Filled Position Detail By Location 06/30/2009-06/30/2012 (ADC049080-049082); and

3.      See response to Request No. 36, above.

**REQUEST FOR PRODUCTION NO. 38**

Documents SUFFICIENT TO SHOW the NAMES, QUALIFICATIONS, WEEKLY STAFFING SCHEDULES, and FACILITIES covered by each of the FIFTEEN ADDITIONAL PSYCHIATRISTS HIRED by WEXFORD since September 2012 identified in the Declaration of Benjamin Shaw, ¶ 10 dated December 21, 2012, and filed as Exhibit 1 with Defendants' Response to Plaintiffs' Motion for Class Certification, dated December 24, 2012.

**RESPONSE**

Objection:  Defendants object to Plaintiff's request to the extent it seeks to obtain Wexford documentation through ADC.  Defendants are in the possession of limited Wexford employment documentation.  They are not in possession of Wexford employee qualifications or weekly staffing schedules.  To obtain these documents, Plaintiffs must issue a subpoena to Wexford.

Without waiving the foregoing objection(s), see the following:

1.  AZ New Hire Report dated December 21, 2012, previously produced in response to Parsons 1st RFP Request No. 19.


DATED this 11th day of February, 2013

           Thomas C. Horne
           Attorney General


           s/Ashley B. Zuerlein
           Ashley B. Zuerlein
           Michael E. Gottfried
           Lucy M. Rand
           Katherine E. Watanabe
           Assistant Attorneys General

           Daniel P. Struck
           Kathleen L. Wieneke
           Rachel Love
           Timothy J. Bojanowski
           Nicholas D. Acedo
           Courtney R. Cloman
           Ashlee B. Fletcher
           Anne Orcutt
           STRUCK WIENEKE & LOVE, P.L.C

1   COPIES of the foregoing were e-mailed to
    all counsel of record per the below list
2   this 11th day of February, 2013.

3   By: /s/ Ashley B. Zuerlein

4

5   Alison Hardy:                ahardy@prisonlaw.com

6   Amy Fettig:                  afettig@npp-aclu.org
    Caroline N. Mitchell:        cnmitchell@jonesday.com; mlandsborough@jonesday.com;
7
                                 nbreen@jonesday.com
8
    Corene T. Kendrick:          ckendrick@prisonlaw.com; edegraff@prisonlaw.com
9   Daniel Clayton Barr:         DBarr@perkinscoie.com; docketphx@perkinscoie.com;
10                               sneilson@perkinscoie.com
11  Daniel Joseph Pochoda:       dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org
    David Cyrus Fathi:           dfathi@npp-aclu.org; astamm@aclu.org;
12
13                               hkrase@npp-aclu.org
    Donald Specter:              dspecter@prisonlaw.com
14  James Anthony Ahlers:        jahlers@perkinscoie.com; docketphx@perkinscoie.com;
15                               jroe@perkinscoie.com
16  James Duff Lyall:            jlyall@acluaz.org; gtorres@acluaz.org
17  Jennifer Ann Alewelt:        jalewelt@azdisabilitylaw.org; emyers@azdisabilitylaw.org;
18                               phxadmin@azdisabilitylaw.org
19  Jill Louise Ripke:           jripke@perkinscoie.com; jgable@perkinscoie.com
20  John Howard Gray:            jhgray@perkinscoie.com; slawson@perkinscoie.com
21  Kelly Joyce Flood:           kflood@acluaz.org; gtorres@acluaz.org
    Kirstin T. Eidenbach:        keidenbach@perkinscoie.com; dfreouf@perkinscoie.com;
22
23                               docketphx@perkinscoie.com
24  Matthew Benjamin de Mee: mdumee@perkinscoie.com; cwendt@perkinscoie.com
    Sara Norman:                 snorman@prisonlaw.com
25
26  Sophia Calderon:             scalderon@jonesday.com; lwong@jonesday.com
    Thomas Dean Ryerson:         tryerson@perkinscoie.com; docketphx@perkinscoie.com;
27                               rboen@perkinscoie.com
28

| | | |
|---|---|---|
| 1 | Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; |
| 2 | | phxadmin@azdisabilitylaw.org |
| 3 | Sarah Rauh: | srauh@jonesday.com; treyes@jonesday.com |
| 4 | David C. Kiernan: | dkiernan@jonesday.com; lwong@jonesday.com |
| 5 | R. Scott Medsker: | rsmedsker@JonesDay.com |
| 6 | John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| 7 | Kamilla Mamedova: | kmamedova@jonesday.com |
| 8 | Jennifer K Messina: | jkmessina@jonesday.com |
| 9 | Sarah Eve Kader: | skader@azdisabilitylaw.org, mlauritzen@azdisabilitylaw.org |