**Parsons v. Ryan**

**CV 12-00601-PHX-NVW (MEA)**

**Index of Plaintiffs' Exhibits**

1.  October 29, 2012 letter from Ashlee Fletcher to Plaintiffs' counsel

2.  November 30, 2012 letter from Scott Medsker to Katharine Watanabe and Dan Struck

3.  December 19, 2012 letter from Laurens Wilkes to Katharine Watanabe and Dan Struck

4.  November 7, 2012 letter form Ashlee Fletcher to Plaintiffs' counsel

5.  January 15, 2013 email from Katharine Watanabe to Plaintiffs' counsel

6.  March 14, 2013 email from Laurens Wilkes to Ashley Zuerlein

7.  March 18, 2013 email from Ashley Zuerlein to Plaintiffs' counsel

8.  March 26, 2013 letter from Ashley Zuerlein to Caroline Mitchell

9.  *Fleischer v. Phoenix Life Ins. Co.*, No. 1:11-cv-08405-CM-JCF, 2012 WL 6732905 (S.D.N.Y. Dec. 27, 2012)

# EXHIBIT 1



STRUCK WIENEKE & LOVE

3100 West Ray Road, Suite 300   Chandler, Arizona 85226   **480.420.1600**   swlfirm.com

October 29, 2012

Daniel P. Struck
PARTNER

Kathleen L. Wieneke
PARTNER

Rachel Love
PARTNER

Timothy J. Bojanowski
PARTNER

Christina Retts
SENIOR ASSOCIATE

Jamie D. Guzman
ASSOCIATE

Nicholas D. Acedo
ASSOCIATE

Tara B. Zoellner
ASSOCIATE

Amy L. Nguyen
ASSOCIATE

Ashlee B. Fletcher
ASSOCIATE

Courtney R. Cloman
ASSOCIATE

Anne M. Orcutt
ASSOCIATE

Jennifer Holsman Tetreault
OF COUNSEL

David C. Lewis
OF COUNSEL

**VIA EMAIL ONLY**

Jennifer Alewelt:  jalewelt@azdisabilitylaw.org
Caroline N. Mitchell:  cnmitchell@jonesday.com
Donald Specter:  dspecter@prisonlaw.com
David C. Fathi:  dfathi@npp-aclu.org

> Re:   Parsons, et al. v. Ryan and Pratt
>       U.S. District Court of Arizona; 2:12-cv-00601

Dear Counsel:

This letter is in response to Scott Medsker's October 18, 2012 letter regarding e-discovery.  The Barracuda system is capable of operating a Boolean search method.  Defendants agree that in the event a specific, responsive, and relevant document is identified; but not captured by the Barracuda system, they will make a good faith effort to obtain that document and produce it to Plaintiffs.

Defendants do not agree with your position that every individual listed in Defendants' Initial Disclosure Statement should have their email account searched.  First, each individual listed in Defendants' Disclosure Statement may not have or have had an email account with ADC.  For example, many of the health care providers who treated Plaintiffs, such as Registered Nurses, do not maintain email accounts with ADC.  For this same reason, Defendants do not agree that every individual who provided treatment to Plaintiffs should be subject to search of their email accounts.  Similarly, it is overly burdensome to require a search of all medical providers that provided treatment to one or more of the named plaintiffs.  Further, the individuals listed in Defendants' Initial Disclosure Statement were revealed as *possibly* having relevant information – not that they in fact did.  Defendants will, however, agree to search both Defendants' email accounts, all 34 individual contract monitors' accounts, and each ADC employee's email account that has been deposed thus far.   Additionally, Defendants will agree to your proposed, additional search terms.

Defendants have attached their proposed exclusionary terms.  These terms will be run prior to the general search terms, to remove privileged and confidential documents.  If you have any objection to these terms, please let us know by the end of this week.  Given our agreement regarding the Clawback and search terms, Defendants are actively working to get a first set of documents to Plaintiffs as soon as possible.  It is important to note, however, that despite numerous requests over the previous few months, Plaintiffs first provided Defendants with their search terms less than a week ago.  As such, Defendants will now need to run the agreed upon search terms through the requested email accounts (Adu TuTu, Pratt and Ryan).  Once we reach an agreement regarding

Counsel of Record
October 29, 2012
Page 2

the search of additional employee email accounts, we will run a similar search on those individuals' accounts.  We will then have to calculate the cost to run the additional email accounts and determine if it will be unduly burdensome.  As always, we will keep you apprised of the progress and will continue to work toward a reasonable production of documents.

Sincerely,

Ashlee B. Fletcher
For the Firm

ABF/slw
Attachment
26700303.1

cc:     Michael E. Gottfried
        Dawn Northup
        Katherine Watanabe
        Kelly Dudley

Confid!
Attorney
Attorney /s client
Client
Legal
Priv!
Law!
work /s product
Litigation
Sue
Suit
Lawsuit
Protect!
Class /s action
"ACLU"
PLO
"Prison law office"
" Iafrate & Associates"
"Shorall, McGoldrick, Brinkmann"
"David Bell & Associates"
"Ricker & Bustamante"
"O'Connor and Campbell"
" Rivera & Rivera"
"Fadell, Cheney, Burt"
"Rusing & Lopez"
"Sanders, Parks"
"Burch Cracchiolo"
"Campbell Yost Clare & Norell"
"Udall Law Firm"
"Mariscal, Weeks, McIntyre & Friedlander"
"Calderone Law Offices"
"Cantelme and Brown"
"Thrasher & Jemsek"
"Jardine, Baker Hickman & Houston"
"Gordon & Rees"
"Slaton Law Office"
 "azag.gov"
"swlfirm.com"
Northup!
Dudley!
Klausner!

# EXHIBIT 2

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001-2113
TELEPHONE: 202-879-3939 • FACSIMILE: 202-626-1700

Direct Number: (202) 879-3837
rsmedsker@jonesday.com

JP008786                              November 30, 2012

VIA EMAIL ONLY

Katherine E. Watanabe
Michael Gottfried
Office of the Attorney General
1275 W. Washington
Phoenix, AZ 85007

Dan Struck
Struck Wieneke & Love
3100 West Ray Road, Suite 300
Chandler, AZ 85226

                    Re:    *Parsons v. Ryan*

Dear Counsel:

        This letter responds to Ashlee Fletcher's November 29, 2012 letter regarding the collection and production of e-mails. As outlined below, Plaintiffs are agreeable to a number of Defendants' suggestions and believe that, based on these agreements, the burden of searching and producing e-mails will be significantly reduced.

        Plaintiffs agree with Defendants' request to remove Curt Czarsty, Sharon Bohm, Laurie Berg, and Sharon Malcolm from the custodian list. We request, however, that Defendants continue to preserve e-mails for these individuals. If subsequent discovery indicates that these individuals may have relevant, responsive information that is not available from other custodians, the parties can discuss the temporal scope and search terms for these accounts.

        Additionally, Plaintiffs propose omitting search terms 56 through 58 on the list attached to Ms. Fletcher's November 29 letter (Richard w/2 pratt; Charles w/2 ryan; Adu-tutu or adututu or "adu tutu"). Removing these terms will eliminate 313,214 documents that were retrieved solely because they included the name of Mr. Ryan, Mr. Pratt, or Dr. Adu-tutu.

        We strongly disagree, however, with Ms. Fletcher's suggestion that "many of" the e-mails retrieved by searching for the term "health" "are not likely to be related to Plaintiffs' claims...." Without any information as to the types of documents Defendants claim are not relevant despite referencing "health," that assertion can only be verified based on a collection and review of the documents. Absent such verification, those e-mails are clearly within the

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DUBAI • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MEXICO CITY • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Katherine Watanabe
November 30, 2012
Page 2

broad scope of relevant information that, if responsive, must be produced.  If Defendants are aware of categories of documents that respond to the search for "health" but are categorically nonresponsive, Plaintiffs are, as always, willing to discuss how to facilitate a more efficient review and production of such documents.

Plaintiffs also agree that Defendants may limit the search of Contract Monitors' e-mail accounts to July 1, 2012 through the present provided that the Contract Monitor did not have a prior role with ADC that would have made him or her a custodian of similar relevant information.  For example, while Carol Pearson is a Contract Monitor, her position with ADC prior to July 1, 2012 makes her a custodian of e-mails that are highly relevant and responsive to the issues in this case.  If Defendants are agreeable to this modification on your proposal, please provide a list of all Contract Monitors and their position with ADC prior to July 1, 2012, if any.  Plaintiffs will review the list and identify which individuals can be limited to the post-July 1, 2012 time period.

To facilitate a more efficient and focused review and production process, Plaintiffs propose a prioritization of custodians for review.  By beginning with these custodians, the parties may be able to further narrow search terms and time periods for subsequent custodians.  Specifically, Plaintiffs propose that Defendants begin with the following 14 custodians:

- Charles Ryan
- Richard Pratt
- Michael Adu-Tutu
- Jeffrey Sharp
- Ben Shaw
- Joe Profiri
- Jim Taylor
- Paulette Boothby
- Terry Allred
- Dennis Kendall
- Helena Valenzuela
- Matthew Musson
- Marlena Bedoya
- Mark Haldane*

Plaintiffs note that Dr. Sharp was not identified on the list of custodians in Ms. Fletcher's November 29 letter.  As the parties agreed in e-mail correspondence on November 7, the custodians to be searched include any deponent who is a current Wexford employee and a prior ADC employee and who had an e-mail account while he or she was an ADC employee.  Defendants' October 8, 2012 letter included a list reflecting that ADC's Barracuda e-mail

**JONES DAY**

Katherine Watanabe
November 30, 2012
Page 3

archiving system includes Dr. Sharp's e-mails. Accordingly, please update your custodian list to include any deponent who was a former ADC employee who now works for Wexford, per our agreement.

Plaintiffs also note that Defendants' custodian list omits Mr. Mark Haldane. ADC's organization chart includes a handwritten note indicating that Mr. Haldane is the Contract Monitor for Perryville. However, the Perryville reports largely appear to be either unsigned or signed by Ben Shaw or Paulette Boothby. If Mr. Haldane is the Contract Monitor for Perryville, please add him to the custodian list and prioritize the review and production of his e-mail. If he is not the Contract Monitor for Perryville, please identify that individual, add that person to the custodian list, and prioritize his or her e-mail in place of Mr. Haldane.

Plaintiffs are unable to agree to Defendants' suggestion to limit the search of Charles Ryan's and Richard Pratt's e-mails to March 22, 2012. Mr. Ryan's and Mr. Pratt's knowledge of the deficient health care provided to ADC's inmates, including when they were on notice of those issues, is a central issue in this case. Accordingly, Plaintiffs request that Defendants search all e-mails on or after January 1, 2011 through the present. We believe some of the agreements reached above will significantly reduce or eliminate the burden of doing so.

Finally, Plaintiffs note that some of the costs quoted in Defendants' November 29 letter seem unusually high. Based on our experience with review and production of e-mail and, using recent quotes we received for similar projects, Plaintiffs believe that it should cost substantially less than half of the figure you cite to conduct a first level and privilege review of 80,000 documents (40,000 e-mails with attachments). In short, we question whether the quoted figure of $786,700 for every 40,000 e-mails is accurate and would be happy to discuss with you how to find a lower cost vendor.

We also note that Defendants' letter indicated that it would cost $37,440 to use an outside vendor, but that it would cost $68,798 to purchase additional server space to store and process the e-mails. Our experience with outside ESI vendors is that you can "rent" space on a per GB basis.

We appreciate your thoughtful letter regarding ways to narrow the e-mail review and production process. Plaintiffs hope that Defendants are agreeable to our above responses. We suggest that Defendants re-run the searches based on the proposals contained in this letter and, if necessary, the parties can discuss additional reasonable methods of narrowing the review and production process.

**JONES DAY**

Katherine Watanabe
November 30, 2012
Page 4

Sincerely,

R. Scott Medsker

# EXHIBIT 3

# JONES DAY

717 TEXAS • SUITE 3300 • HOUSTON, TEXAS 77002.2712

TELEPHONE: +1.832.239.3939 • FACSIMILE: +1.832.239.3600

Direct Number:  (832) 239-3796
jlwilkes@JonesDay.com

JP011915                              December 19, 2012

<u>VIA E-MAIL ONLY</u>

Katherine E. Watanabe
Michael Gottfried
Office of the Attorney General
1275 W. Washington
Phoenix, AZ 85007

Dan Struck
Ashlee Fletcher
Struck Wieneke & Love
3100 West Ray Road, Suite 300
Chandler, AZ 85226

                    Re:    <u>Parsons v. Ryan</u>

Dear Counsel:

    This letter responds to Ashlee Fletcher's December 18, 2012 letter regarding the collection and production of email.

    Thank you for agreeing to Plaintiffs' proposed prioritization of production and for agreeing to search Mr. Ryan's and Mr. Pratt's email accounts from January 1, 2011.  With regard to your agreement to produce all documents containing the word "health" from custodian email accounts, we believe that this request is not unduly burdensome given the likelihood that these documents will be responsive and relevant.  If, however, Defendants discover that including "health" as a search term results in a significant number of categorically nonresponsive documents, Plaintiffs remain willing to discuss how best to eliminate such documents from review and production.

    Based on the currently available information, Plaintiffs agree that the search of the email accounts of Mark Haldane, Marlena Bedoya, Karen Chu, and Kristan Sears will be limited to July 1, 2012, while the accounts for the other Contract Monitors will be searched from January 1, 2011.  Regarding the priority of Mr. Haldane's account, we ask that Defendants prioritize the accounts of the 14 custodians including Mr. Haldane's in the following order:

ALKHOBAR  •  ATLANTA  •  BEIJING  •  BOSTON  •  BRUSSELS  •  CHICAGO  •  CLEVELAND  •  COLUMBUS  •  DALLAS  •  DUBAI
DÜSSELDORF  •  FRANKFURT  •  HONG KONG  •  HOUSTON  •  IRVINE  •  JEDDAH  •  LONDON  •  LOS ANGELES  •  MADRID
MEXICO CITY  •  MILAN  •  MOSCOW  •  MUNICH  •  NEW YORK  •  PARIS  •  PITTSBURGH  •  RIYADH  •  SAN DIEGO
SAN FRANCISCO  •  SÃO PAULO  •  SHANGHAI  •  SILICON VALLEY  •  SINGAPORE  •  SYDNEY  •  TAIPEI  •  TOKYO  •  WASHINGTON

JONES DAY

Katherine E. Watanabe
Dan Struck
December 19, 2012
Page 2

- Charles Ryan
- Richard Pratt
- Michael Adu-Tutu
- Ben Shaw
- Joe Profiri
- Jim Taylor
- Paulette Boothby
- Terry Allred
- Dennis Kendall
- Helena Valenzuela
- Matthew Musson
- Marlena Bedoya
- Mark Haldane
- Jeffrey Sharp

Plaintiffs ask that Defendants re-run the agreed-upon search terms and time limits for the prioritized custodians and begin production immediately.  As stated above, we believe that these requests do not place an undue burden on Defendants.  Defendants have had over two weeks since Mr. Medsker's letter to determine what, if any, further agreements would be necessary to reduce the burden on Defendants to their satisfaction, and Plaintiffs reserve all rights with respect to any further delay of production by Defendants.

We appreciate your intent to resolve this issue in a timely manner.

Regards,

*J. Laurens Wilkes*

J. Laurens Wilkes

HUI-156592v1

# EXHIBIT 4



STRUCK WIENEKE & LOVE

3100 West Ray Road, Suite 300   Chandler, Arizona 85226   480.420.1600   swlfirm.com

Daniel P. Struck
PARTNER

Kathleen L. Wieneke
PARTNER

Rachel Love
PARTNER

Timothy J. Bojanowski
PARTNER

Christina Retts
SENIOR ASSOCIATE

Jamie D. Guzman
ASSOCIATE

Nicholas D. Acedo
ASSOCIATE

Tara B. Zoellner
ASSOCIATE

Amy L. Nguyen
ASSOCIATE

Ashlee B. Fletcher
ASSOCIATE

Courtney R. Cloman
ASSOCIATE

Anne M. Orcutt
ASSOCIATE

Jennifer Holsman Tetreault
OF COUNSEL

David C. Lewis
OF COUNSEL

November 7, 2012

**VIA EMAIL ONLY**

Jennifer Alewelt:  jalewelt@azdisabilitylaw.org
Caroline N. Mitchell:  cnmitchell@jonesday.com
Donald Specter:  dspecter@prisonlaw.com
David C. Fathi:  dfathi@npp-aclu.org

      Re:     Parsons, et al. v. Ryan and Pratt
               U.S. District Court of Arizona; 2:12-cv-00601

Dear Counsel:

     This letter is in response to Scott Medsker's November 2, 2012 letter regarding Defendants' search terms.

     The email accounts for Pratt, Adu TuTu and Ryan have been run using the parties' agreed upon search terms and de-duped, resulting in 52,629 documents.  Defendants will no longer be running exclusionary terms.  Instead, the Attorney General's office will review each document responsive to Plaintiffs' discovery requests.  During this review, the attorneys will look for privileged documents and documents containing security sensitive information.  Any security sensitive information will be redacted prior to production and any privileged document will be withheld and cataloged in a privilege log.

     Until we hear back from Plaintiffs regarding Defendants' proposed list of additional employee email accounts to be searched, Defendants will limit their production to the three accounts discussed above.  Defendants intend to provide Plaintiffs with weekly supplemental productions of these documents.

     Sincerely,

     Ashlee B. Fletcher
     For the Firm

ABF/slw
2705010.1

cc:   Michael E. Gottfried
     Dawn Northup
     Katherine Watanabe
     Kelly Dudley

# EXHIBIT 5

From: "Watanabe, Katherine" <Katherine.Watanabe@azag.gov>

To: 'Laurens Wilkes' <jlwilkes@JonesDay.com>, Sherri Wolford <SWolford@azag.gov>, Parsons Team <ParsonsTeam@swlfirm.com>

Cc: Caroline N Mitchell <cnmitchell@JonesDay.com>, "Rand, Lucy" <Lucy.Rand@azag.gov>, "Zuerlein, Ashley" <Ashley.Zuerlein@azag.gov>, "Gottfried, Michael" <Michael.Gottfried@azag.gov>

Date: 01/15/2013 04:10 PM

Subje RE: Parsons, et al. v. Ryan, et al. - Correspondence
ct:

---

Laurens,

We plan to begin processing emails for production shortly.  As I'm sure you know, we did begin processing emails, and have produced some, however, we put that production on hold as talks were going on regarding the scope of the email production.  We did not want to end up duplicating our efforts or wasting time on reviewing emails that might potentially be removed from the search pool once an agreement was reached.  Since receiving your letter, we had the Christmas holiday and New Years, which means a number of people have been out of the office for extended periods of time, myself included, which has made coordination difficult.  I'm sure you understand, as it appears that a number of your colleagues were away for the holidays as well.  We have been processing emails since your letter, though the process has been slowed by the holidays and our attempts to follow up on information and documents as I discussed with Ms. Mitchell, Ms. Kendrick, and Mr. Fathi in relation to the first request for production.  You should begin to see the production of emails restart in the next week or two, and as we are hopefully able to begin wrapping up production of documents in other areas, you should have larger batches of emails produced.  Until the other areas of production are concluded, however, you will see a mix of the two and the volume of production of emails will vary based upon the volume of other documents that have come in.  We obviously cannot process and produce everything at once, but we are doing our best to work at getting documents produced across the spectrum of those that have been requested.  I hope this addresses your concerns, and please feel free to let me know if you have any other questions or I have failed to cover anything.

Sincerely,

Katherine Watanabe
Assistant Attorney General
Office of the Attorney General
Liability Management Section

1275 W. Washington

Phoenix, Arizona 85007

Direct: (602) 542-7695

Fax: (602) 542-7670

Katherine.Watanabe@azag.gov

The information contained in this e-mail is privileged and confidential, intended only for the use of specific individuals and/or entities to which it is addressed. If you are not one of the intended recipients, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this communication in error, please immediately notify the sender by return e-mail. Thank you.

# EXHIBIT 6



| | | |
|---|---|---|
| **Subject:** | RE: Parsons, et al. v. Ryan, et al. - Correspondence 📄 | |
| From: | Laurens Wilkes | 03/14/2013 03:06 PM |
| | Extension:  3-3796 | |
| To: | Zuerlein, Ashley | |
| Cc: | 'Corene Kendrick ', 'Caroline Mitchell', 'Donald Specter', 'Jennifer Alewelt ', 'James Duff Lyall', "Rand, Lucy", "'du Mee, Matthew B. (Perkins Coie)'", "Gottfried, Michael", 'Struck Wieneke Love', 'Taylor Freeman' | |

Ashley,

Thank you for your position statement regarding email production.  Given the Court's order extending the time for discovery, without waiving any rights and in the spirit of compromise, Plaintiffs are willing to review a "seed" set of email, so that we can work with you on ways to narrow the broader production of email to reduce any burden on Defendants, as a way for both parties to work in good faith and get production started.  To facilitate our discussion, here are the custodians and respective time periods we request be produced in the next 30 days.  Obviously, these productions would be additionally limited by the search terms we agreed to previously:

- Charles Ryan - emails from October 1, 2012 - January 31, 2013
- Richard Pratt - emails from October 1, 2012 - January 31, 2013
- Joe Profiri -  emails from October 1, 2012 - January 31, 2013
- Ben Shaw – emails from October 1, 2012 – January 31, 2013
- Greg Fizer – emails from October 1, 2012 – January 31, 2013
- Jim Taylor - emails from November 1, 2012 - January 31, 2013
- Terry Allred - emails from September 1, 2012 - December 31, 2012
- Matthew Musson - emails from December 1, 2012 - January 31, 2013
- Mark Haldane - emails from December 1, 2012 - January 31, 2013
- Dennis Kendall - emails from December 1, 2012 - January 31, 2013

Once we receive these documents, we will promptly review them and identify additional categories of documents you can exclude from the production of the balance of the email, based on this review.  We will then  be willing to discuss reasonable timelines for the remaining production of email.  We request a response by Monday morning Arizona time and a meet and confer on Tuesday if Defendants are unwilling to agree to this or an alternate proposal by then.  I am generally available from 1:00 pm Arizona time until 4:00 pm Arizona time for the meet and confer on Tuesday.  To be clear, we do not agree that Defendants can defer all other productions to do the email production.  Instead, they should move forward at the same time and we are happy to discuss a production schedule for those materials as well.  We look forward to hearing from you soon.

Regards,

Laurens

Laurens Wilkes
Jones Day
Houston, TX
832-239-3796
x3-3796

# EXHIBIT

# 7

| | |
|---|---|
| From: | "Zuerlein, Ashley" <Ashley.Zuerlein@azag.gov> |
| To: | 'Laurens Wilkes' <jlwilkes@JonesDay.com> |
| Cc: | 'Corene Kendrick ' <ckendrick@prisonlaw.com>, 'Caroline Mitchell' <cnmitchell@jonesday.com>, 'Donald Specter' <dspecter@prisonlaw.com>, 'Jennifer Alewelt ' <jalewelt@azdisabilitylaw.org>, 'James Duff Lyall' <jlyall@acluaz.org>, "Rand, Lucy" <Lucy.Rand@azag.gov>, "'du Mee, Matthew B. (Perkins Coie)'" <MduMee@perkinscoie.com>, "Gottfried, Michael" <Michael.Gottfried@azag.gov>, 'Struck Wieneke Love' <ParsonsTeam@swlfirm.com>, 'Taylor Freeman' <tfreeman@jonesday.com> |
| Date: | 03/18/2013 05:55 PM |
| Subject: | RE: Parsons, et al. v. Ryan, et al. - Correspondence |

Counsel:

As indicated in our response, due to the time and costs associated with extraction and formatting, we are unable to produce emails to you within 30 days.  While I appreciate your offer to temporarily limit the applicable time frame for ten of the custodians, this recommendation will not reduce the costs or processing time associated with your request.  As stated in  Defendants' one-pager, Defendants estimate that once funding is approved the conversion process will take approximately three weeks.  It is impossible for Defendants to review, redact and produce one year's worth of emails for ten separate individuals within less than one week.

Further, Plaintiffs have not yet responded with regard to Defendants' request for cost sharing.  Please respond.

Finally, despite repeated promises by Plaintiffs' counsel, we have yet to receive any sort of priority list for overall discovery.  Individual counsel have continued to request immediate production of various documents.  Defendants cannot review, redact and produce all requested documents at once.  I again request that Plaintiffs counsel coordinate their discovery requests to create a realistic discovery plan.

Defendants are available for a meet and confer on Wednesday, March 20, 2013, anytime after 11:00 a.m. Arizona time.


Ashley Zuerlein
Assistant Attorney General
Office of the Attorney General
Liability Management Section
1275 W. Washington
Phoenix, Arizona 85007
Direct: (602) 542-7620
Fax: (602) 542-7670
Ashley.Zuerlein@azag.gov

The information contained in this e-mail is privileged and confidential, intended only for the use of specific individuals and/or entities to which it is addressed.  If you are not one of the intended recipients, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you receive this communication in error, please immediately notify the sender by return e-mail.  Thank you.

# EXHIBIT

# 8



**TOM HORNE**
**ATTORNEY GENERAL**

**OFFICE OF THE ATTORNEY GENERAL**
**STATE OF ARIZONA**
**LIABILITY MANAGEMENT SECTION**

**ASHLEY B. ZUERLEIN**
**Assistant Attorney General**
**(602) 542-7620**
**Ashley.Zuerlein@azag.gov**

March 26, 2013

Caroline Mitchell
Jones Day
555 California St., 26th Floor
San Francisco, CA 94104
cmitchell@jonesday.com

      Re:   *Parsons, et al. v. Ryan, et al.*
            USDC CV 12-00601-PHX-NVW (MEA)

Dear Ms. Mitchell:

      This letter is to follow-up regarding the production of email data.

## I.  Search Terms

      As previously discussed, Plaintiffs' request for production of emails for the identified custodians creates an undue burden upon Defendants.  See list of identified ADC employees, i.e. custodians, attached as Exhibit A.  The searches are too broad, the custodians too numerous, and the results too large.

      The EnCase database created by the ADC, currently contains emails for the majority of Plaintiffs' identified custodians from January 1, 2011,[1] through late November 2012.  We have used the search terms confirmed by Ashlee Fletcher's November 29, 2012, correspondence to identify responsive emails.  Defendants estimate that there are approximately 640,000 responsive emails (117.2 GB of data) after applying Plaintiffs' search terms and a privilege filter.[2]  The top 14 "priority" custodians identified in your December 19, 2012 letter, are estimated to have approximately 157,000 emails (28.5 GB of data).

---

[1] Bedoya, Haldane, Chu, and Sears have been collected from July 1, 2012, through approximately November 2012, according to Plaintiffs' agreement.
[2] This estimate does not include de-duplication of emails between custodians, and does not include emails from late November 2012, to the present.

While we appreciate Plaintiffs' offer to possibly remove search terms in the future, doing so is not a viable option and will only increase Defendants' costs.  Simply, each search requires a reconfiguration of the system.  As a result, please review the list of search terms attached one final time and confirm your agreement to the terms attached as Exhibit B.  Once Plaintiffs confirm these search terms, no further changes will be made.

We would like to again note that several of Plaintiffs' requested terms are extremely broad, resulting in a significant number of irrelevant results.  For example, "health" results in 32,297 results, "medical" results in 24,886 results, and "dr" results in 16,220 results.[3]  These types of terms are likely to be included in an employee's signature line and thus, are not narrowly tailored to lead to the discovery of admissible evidence.  We would recommend you reconsider your proposed search terms.

Finally, it is our understanding that the attached search terms were to be applied uniformly to all 48 custodians.  Please confirm.

## II. EnCase Email Process

In order to efficiently process Plaintiffs' email requests, the ADC has been utilizing EnCase software, which is capable of removing duplicate emails in one of two ways.  The first option is "within custodian."  This means that any email that occurs twice *within the same employee's account* will only be produced once.  For example, if Director Ryan sent an email to Employee X, who then replied, only the final email chain would appear in Ryan's account.  Employee X's emails would be unaffected by the de-duplication of Ryan's email account.  Therefore, ultimately, there would be two duplicate emails to review: one in Ryan's email account and one in Employee X's email account.

The second option is de-duplication "across custodians."  This means that any email that occurs twice within the identified employees will only appear in one employee's email account depending upon who was the last to respond in the email chain.  For example, if Director Ryan sent an email to Employee X, who then responded, the final email chain will appear in Employee X's email account, but not Director Ryan's email account.  The benefit to this option is that only one copy of the email would be reviewed, redacted, converted and produced.  This option can save both parties time and money.

Based on the above descriptions, please clarify the type of de-duplication that Plaintiffs intended.  Due to the EnCase programming required, once a method is confirmed, the ADC cannot change the type of de-duplication used without significant expense and delay.

---

[3] These figures are based upon EnCase data after applying privilege and search term filters.

### III.    Discovery Schedule

On March 20, 2013, Plaintiffs' relayed their position that it was Defendants' choice to select more costly email production options and they would not engage in cost-sharing. Plaintiffs have repeatedly suggested that Defendants rely upon the claw-back provision of the protective order and send Plaintiffs all emails without any review or redaction.[4]  This is not a viable option.  The ADC is responsible for the safe and orderly operation of state prisons and cannot compromise its duty.  The ADC's emails regularly contain highly sensitive information that cannot be disclosed.  Any disclosure of its security procedures would be extremely detrimental to the ADC, its employees, inmates and the public in general.  The claw-back procedure is meant as a safety net of last resort, not the primary method of preventing confidential, privileged and security information from being disclosed.

As you know, production of these emails is a two-step process.  First, the emails of each of your identified individuals are collected and the search terms run to narrow the scope of potentially relevant documents.  Once collected, the emails have to be produced to you.  As noted above, all of the emails must be reviewed for security and privilege.  Given the quantity of emails your searches are producing, this will require tremendous amounts of dedicated time and resources.

Accordingly, Defendants are left with two options with respect to the production of emails.  Option one involves the manual conversion of emails extracted from the EnCase system into a PDF format for review, redaction and bates numbering.  While it is the most economical for Plaintiffs, it is a very time consuming, burdensome process for Defendants. Based on the amount of emails requested, Defendants cannot produce all emails by the discovery deadline of September 27, 2013.  We note that during this same time frame, Defendants must also respond to numerous other requests for production of documents sought by Plaintiffs.  Because of the scope of your requests, this manual review (which is all the rules require) is unduly burdensome.

Option two, previously discussed, involves sending the extracted email data to a third-party for electronic conversion.  Defendants have located a third-party capable of converting the EnCase data to a TIFF format at a cost of $625 per gigabyte of data.  This format allows for computerized review, redaction and production of data.  Plaintiffs' full

---

[4] The cases you have forwarded do not support your position.  *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 290 (S.D.N.Y. 2003), merely notes that parties *may* enter into a "claw-back" agreement to "return *inadvertently* produced privileged documents."  (Emphasis added.)  Here, the requested documents are *known* to contain security sensitive information.  It would be irresponsible for ADC to knowingly turn over these highly privileged and confidential documents to Plaintiffs.  A claw-back agreement is intended for *inadvertent* disclosure, not *intentional* disregard.

request is estimated to cost $38,438 (61.5 GB).  Conversion of the 14 "priority" custodians is estimated at $17,813 (28.5 GB).  When limited to Ryan, Pratt and Adu-tutu costs are estimated at $8,563 (13.69 GB).   If Plaintiffs are willing to share in the cost of electronic conversion, Defendants anticipate completion of email production in approximately six months.  However, this is an estimate that may change based upon the actual data to be processed.

    In short, production of these emails is going to be extremely costly and time-intensive unless the number of emails you are seeking is reduced substantially.  As the request currently stands, it is unduly burdensome due to the resources needed if reviewed manually and the costs if reviewed in a more efficient electronic form.  If you continue to insist on these overly broad and burdensome requests, we will have no choice but to revise our previous one-page position and seek court intervention.

    Please let me know if you believe that a meet and confer is necessary.

                    Sincerely,



                    Ashley B. Zuerlein
                    Assistant Attorney General

CC:    Tim Bojanowski
       Dan Struck
       Kathy Wieneke
       Dawn Northup

#3191627

# EXHIBIT 9

Slip Copy, 2012 WL 6732905 (S.D.N.Y.)
**(Cite as: 2012 WL 6732905 (S.D.N.Y.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Martin FLEISHER, as trustee of the Michael Moss
Irrevocable Life Insurance Trust II and Jonathan
Berck, as trustee of the John L. Loeb Jr. Insurance
Trust, on behalf of themselves and all others simil-
arly situated, Plaintiffs,
v.
PHOENIX LIFE INSURANCE COMPANY, De-
fendant.

No. 11 Civ. 8405(CM)(JCF).
Dec. 27, 2012.

*MEMORANDUM AND ORDER*
JAMES C. FRANCIS IV, United States Magistrate
Judge.

**\*1** This case involves claims that Phoenix Life
Insurance Company ("Phoenix") violated contractu-
al obligations by improperly raising the cost-
of-insurance ("COI") rates on premium-adjustable,
universal life insurance ("PAUL") policies. The
plaintiffs now move pursuant to Rule 37 of the Fed-
eral Rules of Civil Procedure for an order compel-
ling Phoenix to complete production of documents
responsive to the plaintiffs' first set of requests
within two weeks.

*Background*

The facts relating to the plaintiffs' substantive
claims are set forth in detail in a decision in a re-
lated case, *U.S. Bank National Association v. PHL
Variable Insurance Co.,* No. 12 Civ. 6811, 2012
WL 5395249 (S.D.N.Y. Nov. 5, 2012), and will be
summarized only briefly here. The PAUL policies
at issue allow policyholders to choose the amount
they pay into their policy accounts each month as
long as the account balance is sufficient to cover
policy charges, including a cost of insurance
charge. The policies permit the insurer to adjust
cost of insurance rates, but only based on certain

specified factors, the most significant of which is
mortality. The plaintiffs allege that Phoenix has in-
creased its cost of insurance rates notwithstanding
the fact that life expectancy has increased. Accord-
ing to the plaintiffs, Phoenix has done this to inflate
its fees and to prompt policyholders to allow their
policies to lapse, thus relieving Phoenix of the risk
of ever having to pay out on the policies.

The plaintiffs served their First Set of Docu-
ment Requests Directed to Defendant Phoenix Life
Insurance Company ("Plaintiffs' First Document
Requests") on December 21, 2011. (Exh. 1 to De-
claration of Seth Ard dated Nov. 19, 2012 ("Ard
Decl.")). Since that time, Phoenix has produced
over 600,000 pages in response. (Defendant
Phoenix Life Insurance Company's Memorandum
of Law Opposing Plaintiffs' Motion to Compel Pro-
duction of Documents By a Date Certain
("Def.Memo.") at 1; Declaration of Jason H. Gould
dated Dec. 5, 2012 ("Gould Decl."), 5 8). It has yet
to review approximately 130,000 documents that
have been collected. (Gould Decl., ¶ 15). According
to the plaintiffs, production has not been completed
in several major categories, including (1) commu-
nications with New York State regulatory agencies
concerning the COI increases at issue, (2) docu-
ments exchanged with outside actuarial firms relat-
ing to the COI increases, (3) experience studies
used by Phoenix to evaluate the necessity of a COI
increase, and (4) documents concerning the meth-
odology used by Phoenix to determine the appropri-
ate interest rate. (E-mail from Jason H. Gould to
Steven G. Sklaver dated Nov. 9, 2012, attached as
Exh. 2 to Ard Decl.).

Although the plaintiffs served their document
request in December 2011, Phoenix first proposed
search terms for collecting electronically stored in-
formation on April 13, 2012. (Letter of Jason H.
Gould dated April 13, 2012, attached as Exh. 3 to
Ard Decl.). On April 23, 2012, the plaintiffs pro-
posed additional search terms (Letter of Steven G.
Sklaver dated April 23, 2012, attached as Exh. 4 to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 6732905 (S.D.N.Y.)
**(Cite as: 2012 WL 6732905 (S.D.N.Y.))**

Ard Decl.), and on May 2, 2012, Phoenix provided a list of the terms it agreed to run (Letter of Jason H. Gould dated July 27, 2012 ("Gould 7/27/12 Letter"), attached as Exh. 5 to Ard Decl., at 1). At the end of July, Phoenix announced that the stipulated search terms had returned too many documents and that it would take several months to complete production based on a reduced set of search terms. (Gould 7/27/12 Letter). In addition, limitations in Phoenix's search capabilities have come to light. For example, although "Project X" was the code name that Phoenix assigned to the first COI increase, it did not suggest "Project X" as a search term, apparently because its search engine drops single characters like "X", which would have resulted in a search for "Project X" returning every document containing the word "project ." (Memorandum of Law in Support of Plaintiff's [sic] Motion to Compel Production of Documents By a Date Certain ("Pl.Memo.") at 5; "Update on Project X," attached as Exh. 11 to Ard Decl.; Def. Memo. at 10 n. 5; Gould Decl., ¶ 14).

**\*2** Additional factual background will be provided in connection with the legal analysis below.

*Discussion*

Phoenix contends that the plaintiffs' motion should be denied on the ground that they did not comply with the requirement to meet and confer in good faith. (Def. Memo. at 3–5). On the merits, Phoenix maintains that the delay in completing production has resulted from the sheer volume of information requested, and that any prejudice to the plaintiffs can be ameliorated by prioritizing the remaining disclosures. (Def. Memo. at 5–7, 9–11). Phoenix argues that it cannot fully comply with Phoenix's discovery demands until it has completed production in the *U.S. Bank* case because one of the categories of documents sought by the plaintiffs here is all documents produced in that action. (Def. Memo. at 7–8). Further, Phoenix notes that the plaintiffs have propounded a second set of document requests and contends that its response to the

first must be coordinated with its response to this new demand. (Def. Memo. at 8–9). Finally, Phoenix argues that the two-week deadline proposed by the plaintiffs is unworkable and contends that if there is to be any deadline, it should be set at May 31, 2012, with the costs of completing production by that date shifted to the plaintiffs. (Def. Memo. at 11–17). I will address each of these issues in turn.

A. *Meet and Confer Requirements*

A motion to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed.R.Civ.P. 37(a) (1). Here, the plaintiffs satisfied that requirement. As early as July 2012, they conferred with Phoenix concerning the pace of the production. (Letter from Steven G. Sklaver dated July 6, 2012, attached as Exh. 6 to Ard Decl., at 1 ("This letter responds to the issues addressed in our recent telephonic meet and confer .... Plaintiffs served their document requests on Phoenix on December 20, 2011. It is now July 2012, six months later, and Phoenix's document production remains substantially incomplete.")). Immediately prior to filing the instant motion, the parties communicated further, but Phoenix could only state that it would take "several more months" to complete production. (E-mail of Steven G. Sklaver dated Nov. 1, 2012, attached as part of Exh. 2 to Ard Decl.). Phoenix argues that when the motion was filed, "the parties had tentatively discussed plaintiffs' concerns regarding Phoenix's document production timetable, but they had not discussed Phoenix's proposals to alleviate plaintiffs' concerns and to avoid formal motion practice." (Gould Decl., ¶ 4). This is not surprising, since Phoenix had not made any such proposal during the months that the parties had been negotiating. (Gould Decl., ¶ 5 ("Phoenix intended to propose ....")).

A failure to meet and confer may be excused when to do so would be futile. *See Gibbons v.*

Slip Copy, 2012 WL 6732905 (S.D.N.Y.)
**(Cite as: 2012 WL 6732905 (S.D.N.Y.))**

*Smith,* No. 01 Civ. 1224, 2010 WL 582354, at *2 (S.D.N.Y. Feb. 11, 2010); *Metrokane, Inc. v. Built NY, Inc.,* No. 06 Civ. 14447, 2008 WL 4185865, at *3 (S.D.N.Y. Sept. 3, 2008); *Myers v. Andzel,* No. 06 Civ. 14420, 2007 WL 3256865, at *1 (S.D.N.Y. Oct. 15, 2007). Of course, futility should not be lightly presumed. But where, as here, a party has tried over an extended period of time to obtain full compliance with discovery demands and has received no firm commitment, it has no obligation to continue negotiations that seemingly have no end. *See Bell v. Lockheed Martin Corp.,* Civ. No. 08–6292, 2012 WL 1677240, at *1 (D .N.J. May 14, 2012); *Bristol–Myers Squibb Co. v. Rhone–Poulenc Rorer, Inc.,* No. 95 Civ. 8833, 1998 WL 2829, at *3 (S.D.N.Y. Jan. 6, 1998).

### B. *Cause and Effect of Delay*

**\*3** To be sure, the volume of discovery here is substantial. Nevertheless, the delay in completing production appears largely attributable to Phoenix's inability to get a handle on its own data. Phoenix took four months even to suggest search terms. Then, because of the limitations of its search tools, it could not target critical documents, like those relating specifically to "Project X." While the technical difficulties faced by Phoenix might warrant some relaxation of a normal discovery timetable, they do not excuse the extensive delay here.

Nor is the delay harmless. The parties face a deadline of June 4, 2013, to submit their expert reports in connection with the merits of the case. (Order dated Dec. 17, 2012, ¶ 2). Although Phoenix suggests that it could prioritize discovery so that documents pertinent to expert testimony are produced first, it has not indicated with any specificity how it would go about segregating such information.

### C. *Coordination of Discovery*

Phoenix's argument that it cannot complete document production because that production is dependent on disclosures that it makes in the *U.S. Bank* case is perplexing. Phoenix can, of course, produce now that which it has already produced in

*U.S. Bank* and then supplement its production here as it discloses additional documents in that case. Indeed, it is obligated by Rule 26(e)(1) (A) to do just that.

Phoenix's contention that it must coordinate its responses to the plaintiffs' first document request with its responses to the second is equally unavailing. It is common for a party to be required to respond to subsequent discovery demands before it has completed production in response to earlier ones. To the extent appropriate, Phoenix can respond to the second request by referring to or incorporating its responses to the first.

### D. *Deadline and Cost–Shifting*

More than a year has passed since Phoenix was served with the document requests at issue. Its suggestion that it cannot now complete document production for another five months is unreasonable. But so, too, is the plaintiffs' demand that Phoenix do so in two weeks. Balancing the time that Phoenix has already had to respond to the plaintiffs' requests against the work still to be done, it is appropriate to require Phoenix to complete its production by February 28, 2013. That will allow a period for follow-up discovery before the date that the expert reports are due.

Relying on *Boeynaems v. LA Fitness International, LLC,* 285 F.R.D. 331 (E.D.Pa.2012), Phoenix argues that the cost of its completing production within any deadline other than one of its own choosing should be shifted to the plaintiffs. (Def. Memo. at 14–17). In *Boeynaems,* the court stated that

> where (1) class certification is pending, and (2) the plaintiffs have asked for very extensive discovery, compliance with which will be very expensive, that absent compelling equitable circumstances to the contrary, the plaintiffs should pay for the discovery they seek. If the plaintiffs have confidence in their contention that the Court should certify the class, then the plaintiffs should have no objection to making an investment.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 6732905 (S.D.N.Y.)
**(Cite as: 2012 WL 6732905 (S.D.N.Y.))**

Where the burden of discovery expense is almost entirely on the defendant, principally because the plaintiffs seek class certification, then the plaintiffs should share the costs.

**\*4** *Id.* at 341. The presumption created by *Boeynaems* has never been adopted in this circuit, and, more importantly, it runs counter to the relevant principle announced by the Supreme Court: "Under [the discovery] rules, the presumption is that the responding party must bear the expense of complying with discovery requests[.]" *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 358 (1978).

Any presumption, of course, may be rebutted, and discovery costs may therefore be shifted to the requesting party under appropriate circumstances. *See Zubulake v. UBS Warburg LLC,* 217 F.R.D. 309, 317–18 (S.D.N.Y.2003) ( *"Zubulake I"* ); *Rowe Entertainment, Inc. v. William Morris Agency, Inc.,* 205 F.R.D. 421, 428–29 (S.D.N .Y.2002). However, to do so requires an analysis of a range of factors, including (1) the degree to which the request for information is designed to discover germane information, (2) the availability of the same information from different sources, (3) the cost of production as compared to the amount in controversy, (4) the cost of production as compared to the resources of each party, (5) the parties' relative abilities to control discovery costs and their incentives to control costs, (6) the degree of importance of the issues being decided in the litigation, and (7) the relative benefits to each of the parties in obtaining the information at issue. *Zubulake I,* 217 F.R.D. at 322.

Of those factors, Phoenix has addressed only two, and even its analysis of those elements is incomplete. Phoenix has identified the costs of discovery it has incurred to date (Def. Memo. at 15), but not the cost of the additional discovery that it seeks to shift. Moreover, it has not discussed either the amount in controversy or its own resources. It has alluded in general terms to the resources of the plaintiffs or, more precisely, the resources of their

counsel. (Def. Memo. at 15). However, it is far from clear why the resources of counsel should be taken into consideration. Certainly, Phoenix has not suggested that the wherewithal of the law firms that it has engaged should be weighed in the balance. More importantly, if the assets of counsel were to be taken into consideration, the ability of clients to engage an attorney of their choice would likely be hampered. Even if Phoenix had otherwise made its case for cost-shifting, which it has not, I would not include the resources of counsel in the analysis.

Furthermore, Phoenix has represented that the bulk of the costs for completing production relate to review for privileged and confidential communications. (Gould Decl., ¶ 16). Generally, it is not appropriate to shift such costs because "the producing party has the exclusive ability to control the cost of reviewing the documents." *Zubulake v. UBS Warburg LLC,* 216 F.R.D. 280, 290 (S.D.N.Y.2003) ( *"Zubulake II"* ). Nevertheless, I will enter an order pursuant to Rule 502(d) of the Federal Rules of Evidence that will preclude the disclosure of privileged documents in this case from constituting a waiver of privilege or of work product protection in this or any other proceeding, state or federal. Although Phoenix is, of course, free to engage in as exacting a privilege review as it wishes, entry of a Rule 502(d) order will protect against waiver if it opts to conduct a more economical analysis. In addition, I will entertain a protective order that would restrict dissemination of commercially sensitive information and thereby allow Phoenix to expedite its review.

*Conclusion*

**\*5** For the reasons set forth above, the plaintiffs' motion to compel (Docket no, 42) is granted to the extent that Phoenix shall complete the production of documents responsive to the Plaintiffs' First Document Request by February 28, 2013. Phoenix's application to shift the costs of that production to the plaintiffs is denied.

SO ORDERED.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 6732905 (S.D.N.Y.)
**(Cite as: 2012 WL 6732905 (S.D.N.Y.))**

S.D.N.Y.,2012.
Fleisher v. Phoenix Life Ins. Co.
Slip Copy, 2012 WL 6732905 (S.D.N.Y.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.