1  Daniel Pochoda (Bar No. 021979)
   Kelly J. Flood (Bar No. 019772)
2  James Duff Lyall (Bar No. 330045)*
   **ACLU FOUNDATION OF ARIZONA**
3  3707 North 7th Street, Suite 235
   Phoenix, Arizona 85013
4  Telephone: (602) 650-1854
   Email: dpochoda@acluaz.org
5          kflood@acluaz.org
           jlyall@acluaz.org
6  *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7  *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
   *Dustin Brislan, Sonia Rodriguez, Christina Verduzco,*
8  *Jackie Thomas, Jeremy Smith, Robert Gamez,*
   *Maryanne Chisholm, Desiree Licci, Joseph Hefner,*
9  *Joshua Polson, and Charlotte Wells, on behalf of*
   *themselves and all others similarly situated*

10 **[ADDITIONAL COUNSEL LISTED ON**
   ** SIGNATURE PAGE]**
11
   Jennifer Alewelt (Bar No. 027366)
12 Asim Varma (Bar No. 027927)
   Sarah Kader (Bar No. 027147)
13 **ARIZONA CENTER FOR DISABILITY LAW**
   5025 East Washington Street, Suite 202
14 Phoenix, Arizona 85034
   Telephone: (602) 274-6287
15 Email: jalewelt@azdisabilitylaw.org
          avarma@azdisabilitylaw.org
16         skader@azdisabilitylaw.org

17 *Attorneys for Plaintiff Arizona Center for Disability Law*

18                UNITED STATES DISTRICT COURT

19                      DISTRICT OF ARIZONA

20 Victor Parsons; Shawn Jensen; Stephen Swartz;    No. CV 12-00601-PHX-NVW
   Dustin Brislan; Sonia Rodriguez; Christina       (MEA)
21 Verduzco; Jackie Thomas; Jeremy Smith; Robert
   Gamez; Maryanne Chisholm; Desiree Licci; Joseph
22 Hefner; Joshua Polson; and Charlotte Wells, on    **PLAINTIFFS' RESPONSE**
   behalf of themselves and all others similarly     **TO COURT'S ORDER FOR**
23 situated; and Arizona Center for Disability Law,  **SUPPLEMENTAL BRIEFING**
                                                     **ON SEVENTH JOINT**
24              Plaintiffs,                          **NOTICE OF DISCOVERY**
                                                     **DISPUTE**
25       v.

26 Charles Ryan, Director, Arizona Department of
   Corrections; and Richard Pratt, Interim Division
27 Director, Division of Health Services, Arizona
   Department of Corrections, in their official
28 capacities,

                 Defendants.

1    Plaintiffs must carry the burden of showing deliberate indifference by Defendants

2    and their agents regarding the unconstitutional levels of health care and use of isolation

3    system-wide.   Plaintiffs understand the Court's insistence on tailored discovery,[1] and

4    therefore negotiated with Defendants for eight months to try to achieve a narrowed,

5    reasonable production of critical email.[2]   The parties even reached agreement on the

6    production in October 2012.  But no emails were produced.

7        To lessen the burden further, Plaintiffs then proposed to reduce the production even

8    from what the parties had agreed to, by suggesting that Defendants produce documents

9    only from a limited set of key custodians for a time period ranging from two to four

10   months, so the parties could use those documents to narrow or eliminate the need for

11   production of other email.  Plaintiffs additionally offered to allow Defendants to use the

12   claw-back process to expedite production, so that they could reduce or eliminate their

13   privilege review, while still retaining the ability to assert privilege as appropriate.  None

14   of it has worked and no emails have been produced.  With the discovery cutoff looming,

15   Plaintiffs filed this motion to determine a reasonable path forward.

16       The discovery at issue focuses on email regarding the following:

17       Category 1.  Complaints about the adequacy of health care staffing (No. 24)[3] and

18   health care directives (No. 32);

19       Category 2.  Complaints from the ADC's own staff about the adequacy of health

20   care for prisoners (No. 34) and communications by ADC staff and contractors discussing

21

22

---

23        [1] Plaintiffs' counsel heard the Court loud and clear when it voiced its displeasure
with the discovery disputes raised by Plaintiffs at the outset of this discovery.  Plaintiffs
24   have accordingly done as much as possible to avoid such disputes, and have not submitted
a discovery dispute in the last five months.
25        [2] The majority of the discovery at issue was propounded in June 2012.  The meet-
and-confer process started in July 2012 and continued through March 2013.  Calderón
26   Decl., ¶ 2.  The discovery related to Wexford's termination and the cure letter came later,
after the termination happened, as set forth in footnotes 4 and 5.
27        [3] Unless noted otherwise, citations are to Parsons' First Set of Requests for
Production of Documents to Defendants, served on June 15, 2012.  *See* Calderón Decl., ¶
28   3, Exh. A.

possible, perceived, or actual deficiencies in the provision of health care to prisoners (No. 37);

Category 3.   Communications by ADC staff and contractors discussing the conditions of confinement and delivery of health services for prisoners in isolation (Nos. 49, 50); and

Category 4.   Communications relating to ADC interactions with Wexford, including the cure notice, the termination of Wexford and its replacement with Corizon, and allegations of deficiencies in the health care system (Nos. 1-2[4]; Nos. 8, 9, 10, 11[5]).

As detailed below, each of these categories is relevant and critical to show Defendants' notice of the constitutional violations, their deliberate indifference, and the constitutional inadequacy of the care provided.[6]   As also detailed below, the ten custodians—the two Defendants, one individual central to the cure letter exchanges with Wexford, one individual responsible for care of prisoners in isolation, and six contract monitors who were responsible for overseeing Wexford's care of prisoners across the system—were carefully selected to target the most important evidence to Plaintiffs' claims.

To be clear, Plaintiffs are not requesting the large volume of emails from 44 custodians that Defendants cite in their position statement.  Plaintiffs want to avoid a large email production and the burdens associated with such a production on both parties, including the costs to Defendants and the burden on Plaintiffs of trying to sift through a large production and locate the important documents.  That is why, as detailed below,

---

[4] Jensen's First Set of Requests for Production of Documents to Defendants, served on January 31, 2013.  *See* Calderón Decl., ¶ 4, Exh. B.

[5] Parsons' Second Set of Requests for Production of Documents to Defendants, served on October 12, 2012.  *See* Calderón Decl., ¶ 5, Exh. C.

[6] Emails sent and received by correctional officials are often cited by courts as relevant to the objective or subjective prong of an Eighth Amendment violation. *See, e.g.*, *Coleman v. Brown*, 2013 WL 1397335 (E.D. Cal. April 5, 2013), at *14 n. 39, *15 n. 40 (statewide class action challenge to prison mental health care); *Flynn v. Doyle*, 672 F.Supp.2d 858, 865 (E.D. Wis. 2009) (class action challenge to prison medical and mental health care); *Padgett v. Kowanda*, 2010 WL 4638871 (D. Or. 2010), at *14 (prison staff emails tended to show knowledge of risk of harm).

1    Plaintiffs engaged in such a lengthy meet-and-confer process and proposed production of

2    a narrow sub-set of the documents Defendants *had already agreed to produce* before

3    filing this motion.  Plaintiffs are seeking either a production that starts with the very

4    narrow sub-set of documents to be expanded later, or the "full" production of previously-

5    negotiated custodians and search terms, facilitated with a claw-back agreement so that

6    production can proceed quickly and Defendants do not need to expend resources on a

7    privilege review.  As Defendants have rejected both options and ultimately refused to

8    produce any email on any firm schedule, Plaintiffs felt it necessary to seek the assistance

9    of the Court.

10   **I.       BACKGROUND AND AGREEMENTS TO PRODUCE**

11           **A.      The Negotiation Process.**

12           Applying the Court's directives, Plaintiffs engaged in a lengthy negotiation process

13   to narrow and streamline Defendants' production of emails.  Plaintiffs first propounded

14   discovery requests in June 2012.  *See* Calderón Decl. ¶ 3, Exh. A.  After receiving

15   Defendants' response, Plaintiffs initiated a meet-and-confer process in July 2012 that

16   continued until March 2013.  Calderón Decl., ¶ 2.  After several months of discussions, in

17   October 2012, Defendants agreed to search the email accounts of the named Defendants,

18   the Wexford contract monitors, and the deposed ADC employees, using agreed upon

19   search terms.  *See* Calderón Decl., ¶ 6, Exh. D.  In November 2012, to further narrow the

20   scope of the email production and ensure that such production would begin shortly,

21   Plaintiffs agreed to remove four custodians, eliminated several search terms, and

22   identified the emails of 14 custodians to prioritize.  Plaintiffs further prioritized within that

23   list of custodians in December, and narrowed the relevant time periods.  *See* Calderón

24   Decl., ¶¶ 7-8, Exh. E, F.  Also in December, Plaintiffs proactively reached out to

25   Defendants to narrow the scope of Defendants' overall document production.  *See*

26   Calderón Decl., ¶ 9, Exh. G.  Defendants agreed to Plaintiffs' proposals and repeatedly

27   represented they would soon provide Plaintiffs with initial production followed by weekly

28   supplementations of emails.  *See* Calderón Decl., ¶¶ 10-11, Exh. H, I.  It was Plaintiffs'

1    understanding that Defendants were working on their production.  Defendants, however,

2    never started the production of email.  *See* Calderón Decl., ¶ 12.

3          **B.     The Requests and Custodians.**

4          In light of the search term agreements, the types of custodians at issue, and other

5    steps that Plaintiffs have taken to narrow the production, the email production Plaintiffs

6    seek falls into four categories that are central to the burden of proof Plaintiffs bear in the

7    litigation:

8          Category 1 seeks email regarding complaints about health care staffing (No. 24)

9    and health care directives (No. 32).  Health care staffing levels are critical because the

10   level of staffing often dictates whether the correct care is being delivered to prisoners on a

11   reasonably timely basis.  *See* Specter Decl., ¶ 7.  Plaintiffs know from email produced in

12   individual prisoner litigation and given to Plaintiffs by the prisoner, that staffing levels

13   have been a chronic problem impeding the provision of adequate care at the ADC.  *See*

14   Calderón Decl., ¶ 13, Exh. J.  With regard to health care directives, Plaintiffs have been

15   told that Defendants are obtaining health care directives from prisoners without securing

16   full and informed consent.  *See* Calderón Decl., ¶ 14.  In the directives prisoners are

17   waiving their right to, for example, be resuscitated.  Evidence on this issue is relevant and

18   important to the question of whether Defendants are deliberately indifferent.

19         Category 2 seeks email regarding complaints from the health care staff about the

20   adequacy of health care for prisoners (No. 34) and possible, perceived, or actual

21   deficiencies in the provision of health care to prisoners (No. 37).  As the health care staff

22   is directly responsible for the medical, dental, and mental health care of all class members,

23   the details provided through these complaints would be a critical source of  proof  that the

24   care provided by ADC is constitutionally inadequate.  *See* Specter Decl., ¶ 7; *see also*

25   Calderón Decl., ¶ 13, Exh. J.

26         Category 3 seeks email regarding the conditions of confinement and delivery of

27   health services for prisoners in isolation (Nos. 49, 50).  This Court has certified the

28   Subclass of isolation prisoners, who bear the burden of proving that they receive

constitutionally inadequate health care and conditions of confinement.   While this category could be broadly interpreted, Plaintiffs currently request only documents from higher level employees, hopefully avoiding lower level and more mundane documents (the suggestion of the seed set was intended to ensure this is true).  *See* Specter Decl., ¶¶ 3-7.

Category 4 seeks email regarding key ADC interactions with Wexford, including perceived deficiencies in health care by ADC and Wexford (Parsons 2nd Nos. 8, 9, 10), subsequent cure notices from ADC to Wexford (Parsons 2nd No. 11), the decision to terminate Wexford's contract (Jensen 1st No. 1), and Wexford's replacement with Corizon (Jensen 1st No. 2).  These emails are central to the questions of whether Plaintiffs received constitutionally adequate health care and whether Defendants were deliberately indifferent towards any deficiencies in health care provided by Wexford.  *See* Specter Decl., ¶¶ 3-7.  Additionally, emails regarding decisions about replacing the sole provider of health care, including the motivation for the change and the issues it poses for trying to ensure continuity of constitutionally adequate health care, are central to the need for injunctive relief and Plaintiffs' allegations of continuing inadequate care.

Plaintiffs have also narrowed and prioritized the custodians.   In the motion, Plaintiffs requested that Defendants produce email from six custodians for only a four month period, from one custodian for a three month period, and from three others for a narrow two month period.  Five of the custodians falling in the four months period play a central role in the delivery of health care to Plaintiffs, and thus likely have important responsive emails.  These custodians are:

- Defendant Charles Ryan, the Director of ADC, and Richard Pratt, the Interim Division Director for the Division of Health Services.  As the named Defendants in this suit, emails for these custodians are essential to show Defendants' deliberate indifference towards prisoner health care and notice to them of the ongoing unconstitutional conditions;

- Joe Profiri, the individual responsible for the "cure notice" process between

ADC and Wexford. As shown in the class certification briefing, the "cure notice" process resulted in allegations of inadequate provision of medical care, both by ADC and Wexford, and documents relating to Mr. Profiri's candid comments of this process are thus highly relevant; and

- Ben Shaw and Greg Fizer, the individuals that Defendants have identified as responsible for the oversight of mental health care and the care to prisoners in isolation, respectively. As the person responsible for mental health care system-wide, Dr. Shaw's email is critical to showing what action was taken to address deficiencies repeatedly brought to ADC's attention and what information he had about how ADC policies were in fact being implemented. Similarly, Dr. Fizer's oversight of prisoners in isolation makes his email one of the best sources of proof relating to care for the Isolation Subclass.

The remaining five custodians are all contract compliance monitors: one head monitor and a monitor from each of the four main ADC facilities.[7] Plaintiffs selected the relevant time periods, ranging from two months to four months, for these custodians based on various factors such as the size and importance of the relevant facilities and events at those facilities. These monitors were in charge of determining Wexford's compliance with the terms of the ADC-Wexford agreement, and thus provided the primary mechanism by which ADC purported to exercise control and discharge its obligations relating to the provision of health care provided by Wexford to the inmates. Thus, emails from each of these custodians will lead to important proof regarding the adequacy of health care given at each facility. Further, the inclusion of all five monitors as custodians is essential because Defendants have made clear that they intend to put Plaintiffs to their

---

[7] Jim Taylor (3 month time period), Terry Allred (4 month time period), Matthew Musson (2 month time period), Mark Haldane (2 month time period), and Dennis Kendall (2 month time period).

proof when it comes to establishing system-wide violations in each of the ADC facilities and system-wide relief.

## II.    DEFENDANTS SHOULD BE REQUIRED TO PRODUCE A SUBSET OF EMAILS.

### A.    Plaintiffs' Proposal is Reasonable.

After Plaintiffs learned that Defendants were not producing email under the parties' agreements, Plaintiffs proposed that Defendants produce the emails from ten custodians for limited time periods, ranging from two to four months, so the parties could determine how to narrow any further production. *See* Calderón Decl., ¶ 15, Exh. K.  As detailed above, the selected custodians are key individuals that have highly relevant materials.  Through the use of search terms and negotiated narrowing of the scope of production, the production will be limited to documents relevant to this case.  Once Plaintiffs have reviewed this abbreviated production, Plaintiffs can either dramatically narrow or jettison the requests for other email, especially email from an earlier time period (although Plaintiffs will need production of documents related to the Corizon time period, which began in March 2013, and will work with Defendants to ensure that production is reasonable).  Further, as part of this proposal Plaintiffs clarified that Defendants could rely on the existing claw-back agreement to eliminate concerns over a lengthy privilege or security review.[8]

### B.    Plaintiffs' Request for Emails is Substantially Justified.

This is a class action case involving the health care of prisoners across all of the Arizona state prisons.  It addresses important constitutional issues directly affecting over 30,000 prisoners housed in 10 prison complexes across the state.  The stakes are high, and applicable law requires proof of objectively serious harm and deliberate indifference.

---

[8] Under this approach, Defendants would make the requested documents available to Plaintiffs prior to review, with the understanding that all documents subsequently determined to be privileged may be clawed back by Defendants.  To eliminate the security concerns of Defendants, all documents produced in this fashion would be treated as Attorneys' Eyes Only until an agreement was reached about the confidential status of the document.

Proving deliberate indifference is a critical element of Plaintiffs' case.  Emails provide uniquely candid insight to Defendants' and their agents' states of mind regarding the provision of health care to prisoners.[9]    As such, Plaintiffs' request for emails was substantially justified.  *See, e.g., Tomkins v. Schmid Sys., Inc.*, 2005 BL 42452, at *2 (D. Ariz. Oct. 13, 2005) ("[A]n action is substantially justified . . . if reasonable people could differ as to whether the party acted appropriately under the pertinent rules of procedure." (quotations and citations omitted)).  Plaintiffs' actions of repeatedly negotiating with Defendants about search terms and making alternative proposals for narrowing the production and eliminating burden on Defendants, coupled with the fact that the documents Plaintiffs have moved to compel are a subset of documents Defendants already repeatedly agreed to produce, demonstrate that Plaintiffs are acting in good faith.  *See* Calderón Decl. ¶¶10-11, Exh. H, I.  Under such circumstances, imposing fees would be unjust.  *See, e.g.*, Fed. R. Civ. P. 37(a)(5)(B) ("the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust").

Plaintiffs' proposal also is consistent with other cases in which one party has elected an expensive discovery tool to delay discovery of email.  *See Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 290 (S.D.N.Y. 2003) ("Indeed, many parties to document-intensive litigation enter into so-called 'claw-back' agreements that allow the parties to forego privilege review altogether in favor of an agreement to return inadvertently produced privileged documents."); *Fleischer v. Phoenix Life Ins. Co.*, No. 1:11-cv-08405-CM-JCF, 2012 BL 340929, at *5 (S.D.N.Y. Dec. 27, 2012) ("Although [Defendant] is, of

---

[9] Emails produced in individual prisoners' cases, and supplied by the prisoner to Plaintiffs, confirms this.  *See* Calderón Decl., ¶ 13, Exh. J.  Plaintiffs also note that the discovery they seek is routine in prison and jail conditions cases, and is usually provided by defendants without objection.  *See Green v. Baca*, 219 F.R.D. 485, 493 (C.D. Cal 2003) (concluding that, in part because the "evidence . . . concerns important constitutional issues," a single prisoner plaintiff was entitled to production of records defendants asserted would cost them tens of thousands of hours and tens of thousands of dollars to produce).

1  course, free to engage in as exacting a privilege review as it wishes, entry of a [claw-back]

2  order will protect against waiver if it opts to conduct a more economical analysis.").[10]

3  **III.   CONCLUSION**

4          Plaintiffs request that Defendants be ordered to produce the emails of the ten

5  custodians identified in Plaintiffs' proposal of March 14, 2013, from the time periods

6  identified in Plaintiffs' proposal, and that Defendants complete such production in three

7  months.  Once that production is made, the parties can negotiate in good faith about what

8  further narrow production of email is necessary, based on what is learned from this

9  review.   Alternatively, Plaintiffs seek the "full" production of previously-negotiated

10 custodians and search terms, facilitated with a claw-back agreement so that production

11 can proceed quickly and Defendants do not need to expend resources on a privilege

12 review.  Plaintiffs need to prove their case, and to do so without burdening the Court.

13 Plaintiffs negotiated in good faith with Defendants to try to achieve that objective.  For the

14 parties to proceed with reasonable but meaningful discovery of email production, the

15 Court needs to create some incentive for Defendants to participate in the process in a

16 meaningful and helpful way.  Right now, Defendants have benefitted from making the

17 production seem as onerous as possible and by resisting efforts to make it more

18 reasonable.  If necessary, Plaintiffs would agree to a Magistrate Judge to further resolve

19 this issue.  Because Plaintiffs have narrowed the production in good faith and participated

20 in an extensive meet-and-confer process before coming to the Court, Plaintiffs

21 respectfully submit that monetary sanctions are not warranted.

22

23

24

25

26  [10] Defendants' contention that Plaintiffs should share the cost of Defendants' email production, when such emails are active and accessible data, contradicts the case law and is not appropriate in a case such as this. *Zubulake*, 216 F.R.D. at 290 ("It is worth
27  emphasizing again that cost-shifting is potentially appropriate only when *inaccessible* data is sought.  When a discovery request seeks accessible data—for example, active on-line or
28  near-line data—it is typically inappropriate to consider cost-shifting.").

Dated:  April 12, 2013

JONES DAY

By:   s/ Caroline Mitchell
Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:    cnmitchell@jonesday.com
          dkiernan@jonesday.com
          scalderon@jonesday.com
          srauh@jonesday.com

*Admitted *pro hac vice*

R. Scott Medsker (D.C. 976405)*
JONES DAY
51 Louisiana Avenue, NW
Washington, D.C. 20001-2113
Telephone:  (202) 879-3837
Email:    rsmedsker@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
JONES DAY
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:    jlwilkes@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
JONES DAY
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:    kmamedova@jonesday.com
          jkmessina@jonesday.com

*Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
              agerlicher@perkinscoie.com
              keidenbach@perkinscoie.com
              jhgray@perkinscoie.com
              mdumee@perkinscoie.com

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:     dpochoda@acluaz.org
               kflood@acluaz.org
               jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:     dspecter@prisonlaw.com
               ahardy@prisonlaw.com
               snorman@prisonlaw.com
               ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:    dfathi@npp-aclu.org
             afettig@npp-aclu.org
             aquereshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**


By:   s/ Jennifer Alewelt
        Jennifer Alewelt (Bar No. 027366)
        Asim Varma (Bar No. 027927)
        Sarah Kader (Bar No. 027147)
        5025 East Washington Street, Suite 202
        Phoenix, Arizona 85034
        Telephone:  (602) 274-6287
        Email:    jalewelt@azdisabilitylaw.org
                     avarma@azdisabilitylaw.org
                     skader@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

1

**<u>CERTIFICATE OF SERVICE</u>**

2

    I hereby certify that on April 12, 2013, I electronically transmitted the above

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrants:

5

6

7

8

9

10

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
Ashley B. Zuerlein
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov
Ashley.Zuerlein@azag.gov

11

12

13

14

15

16

17

18

19

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

20

*Attorneys for Defendants*

21

22

          s/ Marie van Olffen

78204-0001/LEGAL26343240.1

23

24

25

26

27

28