**Exhibit Index**

**Case No. No. CV 12-00601-PHX-NVW (MEA)**

**Declaration of Sophia Calderón in Support of Plaintiffs' Response to Court's Order for Supplemental Briefing on Seventh Joint Notice of Discovery Dispute**

Exhibit A:    Parsons' First Set of Requests for Production of Documents to Defendants, served on June 15, 2012

Exhibit B:    Jensen's First Set of Requests for Production of Documents to Defendants, served on January 31, 2013

Exhibit C:    Parsons' Second Set of Requests for Production of Documents to Defendants, served on October 12, 2012

Exhibit D:    Letter dated October 29, 2012 from Defendants' counsel to Plaintiffs' counsel

Exhibit E:    Letter dated November 30, 2012 from Plaintiffs' counsel to Defendants' counsel

Exhibit F:    Letter dated December 19, 2012 from Plaintiffs' counsel to Defendants' counsel

Exhibit G:    Letter dated December 21, 2012 from Plaintiffs' counsel to Defendants' counsel

Exhibit H:    Letter dated November 7, 2012 from Defendants' counsel to Plaintiffs' counsel

Exhibit I:    Email dated January 15, 2013 from Defendants' counsel to Plaintiffs' counsel

Exhibit J:    Documents Bates labeled PLTF-PARSONS-000011, 000012, 000043, and 000044

Exhibit K:    Email dated March 14, 2013 from Plaintiffs' counsel to Defendants' counsel

# Exhibit A

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: dpochoda@acluaz.org;
        kflood@acluaz.org
        jlyall@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Victor Parsons, Shawn Jensen,
Stephen Swartz, Dustin Brislan, Sonia Rodriquez,
Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert
Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner,
Joshua Polson, and Charlotte Wells, on behalf of
themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON
  SIGNATURE PAGE]**

Jennifer Alewelt (Bar No. 027366)
Ruth Szanto (Bar No. 029073)
Asim Varma (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: jalewelt@azdisabilitylaw.org
        rszanto@azdisabilitylaw.org
        avarma@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center of Disability Law*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriquez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-NVW (MEA) <br><br><br> **PLAINTIFF VICTOR ANTONIO PARSONS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS** |

1

2   Pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiff <u>Victor</u>

3   <u>Antonio Parsons</u>, by and through undersigned counsel, requests that defendants respond,

4   within 30 days and produce the following documents for inspection and copying at ACLU

5   Foundation of Arizona, 3707 N. 7th Street, Suite 235, Phoenix, AZ 85013.

6   **DEFINITIONS**

7   For purposes of these requests, the following definitions shall apply:

8   1.    "ADC" means the Arizona Department of Corrections, including all its

9   subdivisions, agents, employees, contractors, and attorneys.

10  2.    "ADC STAFF" means all persons employed by ADC, including

11  "CORRECTIONAL STAFF" and "HEALTH CARE STAFF."

12  3.    "COMMUNICATIONS" means any transmittal of information from one

13  person or entity to another by any means, including letters, correspondence, notes,

14  memoranda, records,  reports, papers, facsimiles, electronic mail (whether to, from, copied

15  or blind copied), electronic mail generated from a hand held personal device including a

16  Blackberry or iPhone, instant messaging, electronic mail generated from business or

17  personal email accounts, internet relay chat, news group, group or collaboration servers,

18  electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings,

19  audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes,

20  teleconference, collaboration servers (including share point servers), web-based or

21  software virtual meetings including Web-X and any other meeting software and share

22  point servers, and oral contact such as face-to-face discussions or meetings, telephone

23  conversations, and voice mail messages.

24  4.    "COMPLAINTS" means any DOCUMENTS, formal or informal,

25  REGARDING specific or general problems, issues, deficiencies, unanswered questions,

26  challenges, shortcomings, disagreements, or requests brought to the attention of the ADC

27  or any ADC STAFF.

28  5.    "CONDITIONS OF CONFINEMENT" means all circumstances

REGARDING the state of being imprisoned.

6.     "CONTRACTOR" means "LOCUM TENENS CONTRACTOR" and "SPECIALTY CONTRACTOR."

7.     "CORRECTIONAL STAFF" means custody staff employed or paid by the ADC to serve in a security or operational capacity.

8.     "COST CONTAINMENT" means contemplated, discussed, or actual actions to restrict, reduce, contain, or limit costs or expenses by DEFENDANTS, the ADC or any personnel working in any capacity for the ADC or the Arizona State Government, including any agents of the foregoing.

9.     "DEATH RECORDS" means any DOCUMENT REGARDING the death of a PRISONER, including audits, REVIEWS, studies, interview notes, videos, audio-recordings, EXTERNAL INVESTIGATIONS or INTERNAL INVESTIGATIONS.

10.     "DESCRIBE" and "DESCRIPTION" means to provide all available INFORMATION.

11.     "DISCIPLINE" means any formal or informal discipline, punishment, reprimand, warning, or comment given to any person as a result of substandard or unacceptable conduct.

12.     "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and DESCRIPTION and every tangible thing that is or has been in the possession, custody, or control of DEFENDANTS and the ADC, to which they have access, or of which they have knowledge, including, but not limited to, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys, MINUTES, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and

-2-

regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device). "DOCUMENT" and "DOCUMENTS" includes, but is not limited to, all DOCUMENTS generated by or maintained in the Director's Project Tracking System, official ADC papers, and the ADC's intranet.

13. "EMERGENCY HEALTH CARE SERVICES" means treatment or care to address a mental health, medical, or dental injury or illness that is acute, causes substantial pain, and/or and poses a substantial and immediate risk to the life or long term health of a person.

14. "ENTRY-LEVEL PRACTITIONERS" means unlicensed persons who provide HEALTH CARE to PRISONERS at the ADC subordinate to MID-LEVEL PRACTITIONERS or HEALTH CARE CLINICIANS.

15. "EXTERNAL INVESTIGATIONS" means investigations, REVIEWS, audits, or studies, whether formal or informal, conducted by a person who is not employed by the ADC or an entity that is not the ADC.  It is immaterial to the definition whether the EXTERNAL INVESTIGATION was conducted at the ADC's behest or direction.

16. "GRIEVANCES" means COMPLAINTS or requests made by PRISONERS to the ADC, and the exhaustion of claims raised or stated therein.

17. "HEALTH CARE" means the provision of care, including adequate diet, to address the mental health, medical, or dental needs of a PRISONER, whether those needs arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic or preventive purposes.

18. "HEALTH CARE CLINICIANS" means persons independently licensed to provide HEALTH CARE to PRISONERS at the ADC facilities, including but not limited to M.D., D.O., D.D.S., and Ph.D. credentialed staff.

19. "HEALTH CARE DIRECTIVES" means DOCUMENTS REGARDING advance medical care directives, living wills, personal directives, advance directives, or instructions of any kind in which individuals specify what actions should or should not be

-3-

taken for their HEALTH CARE in the event they are no longer able to make decisions due to illness, injury, or incapacity

20.    "HEALTH CARE SHORTAGES" means any deficiencies involving HEALTH CARE, including but not limited to a lack of or insufficient number of medicines, drugs, medical supplies, medical equipment, transportation, or HEALTH CARE STAFFING.

21.    "HEALTH CARE STAFF" means all staff employed or paid by the ADC, LOCUM TENENS CONTRACTORS, or SPECIALTY CONTRACTORS (other than CORRECTIONAL STAFF) who are responsible for providing HEALTH CARE to ADC PRISONERS, including but not limited to HEALTH CARE CLINICIANS, MID-LEVEL PRACTITIONERS, ENTRY-LEVEL PRACTITIONERS, PHARMACISTS, and administrative and support staff.

22.    "HEALTH CARE STAFFING" means the provision of HEALTH CARE STAFF to provide HEALTH CARE.

23.    "HEALTH GRIEVANCES" means requests for HEALTH CARE or COMPLAINTS REGARDING the need for, adequacy of, quality of, or timing of HEALTH CARE made by PRISONERS to the ADC, including but not limited to the submission of Health Needs Request ("HNR") forms and the exhaustion of claims stated therein.

24.    "HNR POLICIES AND PROCEDURES" means policies, procedures, or practices, whether written or established through custom or use, REGARDING HNR submissions by PRISONERS, including but not limited to the distribution, disposal, processing, rejection of, responses to, provision of HEALTH CARE pursuant to, and exhaustion of claims raised by such submissions.  This includes policies, procedures, or practices that are in draft form and have not been approved and/or implemented.

25.    "HOSPITALIZED PRISONER" means any PRISONER who is sent to a hospital or other off-site medical or mental health facility, or who is admitted to an on-site hospital, while in the custody of the ADC.

26.    "HOURS OF OPERATION" means the time periods during which a facility, unit, or other ADC facility housing PRISONERS is able to provide HEALTH CARE to PRISONERS by on-site HEALTH CARE STAFF.

27.    "IDENTIFY" and "IDENTIFICATION" with respect to (a) a PRISONER or former PRISONER, means to state the PRISONER'S full name, ADC number, date of birth, current or most recent mental health score (MH-1 through MH-5), medical score (M-1 through M-5), public risk score, institutional risk score, and current housing location (if still in ADC custody) or last known address and telephone number (if no longer in ADC custody); (b) a person other than a PRISONER or former PRISONER, means to state the person's full name and specify whether or not the person is or has been an ADC STAFF member, and if so, to state the staff member's position title, facility location, work schedule, responsibilities, date ADC employment began, date ADC employment terminated, dates of any changes in position titles or responsibilities, DESCRIPTIONS of any changes in position titles or responsibilities and, if the person is not currently employed by ADC, the person's last known address and telephone number; and (c) a third-party contractor or entity means to state the name of the contractor or entity, the type of entity (*e.g.*, corporation, partnership, etc.); its address and telephone number; and any persons YOU are aware of who acted on behalf of that contractor or entity with respect to the events at issue in the discovery request; (d) IDENTIFY in any other context means to provide as much INFORMATION REGARDING the thing to be identified as is in the possession of DEFENDANTS or the ADC.

28.    "INFORMATION" means any knowledge YOU have, any evidence of any type, any facts of which YOU are aware and any inferences or speculation of which YOU are aware, all regardless of the source. When INFORMATION YOU provide is based solely on inference or speculation, specifically so state in YOUR response. When providing INFORMATION, provide the names of involved individuals, actions relevant to the requested INFORMATION, dates and times when known, locations, and any other knowledge YOU have about the subject of the discovery request. When asked to provide

INFORMATION about one or more individuals, IDENTIFY the individual or individuals and provide any other INFORMATION YOU have about such person or persons.

29.     "INTERNAL INVESTIGATION" means an investigation, REVIEW, audit, study, interview notes, videos, or audio recordings, whether formal or informal, conducted by the ADC.

30.     "ISOLATION" means confinement in a cell for 22 hours or more each day; confinement in Eyman-Special Management Unit ("SMU") 1, Eyman-Browning Unit, Florence-Central Unit, Florence-Kasson Unit, or Perryville-Lumley Special Management Area ("SMA"); or confinement in a Complex Detention Unit ("CDU").

31.     "JOB PERFORMANCE EVALUATION" means any evaluation, whether formal or informal, of the work of an ADC STAFF member or contractor performing services for the ADC.

32.     "LOCUM TENENS CONTRACTOR" means any person or entity contracting with ADC to provide HEALTH CARE to ADC PRISONERS.

33.     "MID-LEVEL PRACTITIONERS" means licensed professionals who provide HEALTH CARE to PRISONERS at the ADC under supervision by HEALTH CARE CLINICIANS.

34.     "MINUTES" means notes or any other recording reflecting the content of a meeting, whether written contemporaneously with or subsequent to the meeting.

35.     "ORGANIZATIONAL STRUCTURE" means the structure of who reports to whom within the ADC up to and including defendant Charles Ryan, including specifically all HEALTH CARE STAFF and each individual's job title and DESCRIPTION of duties.

36.     "OUTDOOR EXERCISE" means periods during which PRISONERS are permitted to exercise in the outdoors.

37.     "PHARMACIST" means a professional who practices pharmacy.

38.     "POLICIES AND PROCEDURES" means policies, procedures, criteria, or practices, whether written or established through custom or use, including but not limited

VICTOR ANTONIO PARSONS' FIRST SET
OF REQUESTS FOR PRODUCTION
2:12-CV-00601-NVW--MEA

to policy and procedure manuals, directors' orders, protocols, directives, flowcharts, institution post orders, and any other DOCUMENTS designed to direct the actions of ADC personnel, ADC contractors, and/or PRISONERS.

39.    "PRISONER" means a person incarcerated by the ADC.

40.    "QUALITY ASSURANCE" means any activities implemented for the purpose of examining, assessing, evaluating, investigating, analyzing, or identifying the quality of a product or service.

41.    "REFERRAL" means a recommendation that a PRISONER obtain HEALTH CARE from HEALTH CARE STAFF at ADC or non ADC facilities, whether or not such HEALTH CARE is in fact ever provided.

42.    "REFERRED CARE" means HEALTH CARE pursuant to a REFERRAL.

43.    "REFERRED PRISONER" means a PRISONER who received a REFERRAL while in the legal custody of the ADC.

44.    "REGARDING" or "REGARDED" to any given subject matter means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers to, relates to, responds to, states, summarizes, or is in any way relevant to the particular subject matter identified.

45.    "RESPONSE DATE" means date upon which YOU respond to these discovery requests, or, if YOU amend or supplement YOUR response, the date of YOUR amendment or supplement.

46.    "REVIEWS" means examinations, assessments, evaluations, or investigations performed by or at the direction of ADC STAFF or officials.

47.    "SPECIALTY CONTRACTOR" means any person or entity contracting with the ADC to provide HEALTH CARE to PRISONERS who is not a LOCUM TENENS CONTRACTOR.

48.    "STAFFING SCHEDULE" means the days, hours, and/or shifts for which each member of the HEALTH CARE STAFF was scheduled to work, including overtime, on call and call-in coverage.

49.    "SUFFICIENT TO SHOW" means demonstrating or evidencing complete INFORMATION on the requested topic, without the need to produce every DOCUMENT REGARDING the topic.

50.    "YOU," "YOUR," "YOURSELF," and "DEFENDANTS" means defendants Charles Ryan and Richard Pratt, and their predecessors, successors, employees, subordinates, contractors, agents, and attorneys.

## INSTRUCTIONS

1.    YOU are required to furnish all DOCUMENTS in YOUR possession, custody, or control, including those DOCUMENTS that are in YOUR possession, custody, or control in the normal course of YOUR employment obligations, and those in the possession, custody or control of your (1) employer; (2) consultants; (3) attorneys; (4) representatives; (5) agents; or (6) any other person acting or purporting to act on YOUR behalf or at YOUR direction, whether doing so directly or at the direction of YOUR subordinates.  Possession, custody, or control includes DOCUMENTS stored in electronic form by third party service providers but accessible to the Defendant, including but not limited to email accounts, FTP servers, portable storage media such as USB drives, cloud storage services such as Dropbox or SharePoint , and online workspaces such as WebEx.

2.    All non-identical copies of every DOCUMENT whose production is sought shall be separately produced.

3.    Each request herein constitutes a request for DOCUMENTS in their entirety, with all enclosures and attachments, and without abbreviation, redaction, or expurgation.  DOCUMENTS attached to each other, including but not limited to, by staple, clip, tape, email attachment, or "Post-It" note, should not be separated, although any page on which a Post-It note covers or obscures text on the DOCUMENT should be

produced both with and without the Post-It note.  The production must also include, where applicable, any index tabs, file dividers, designations, binder spine labels, or other similar information as to the source and/or location of the DOCUMENTS.

4.    DEFENDANTS shall produce any and all drafts and copies of each DOCUMENT that are responsive to any request, including but not limited to copies containing handwritten notes, markings, stamps, or interlineations.  The author(s) of all hand-written notes should be identified.

5.    YOU shall produce all responsive DOCUMENTS as they have been kept in the ordinary course of business.

6.    Responsive DOCUMENTS that exist only in paper form shall be organized as they have been kept in the ordinary course of business and shall be produced according to the following protocol:

      a.    Paper DOCUMENTS shall be scanned and produced in TIFF image form at a resolution sufficient to enable the generation of searchable text using Optical Character Recognition ("OCR").

7.    Responsive DOCUMENTS that exist in electronic form, even if such DOCUMENTS also exist in paper form, shall be produced in electronic form according to the following protocol:

      a.    Electronic DOCUMENTS shall be produced electronically as single page, uniquely and sequentially numbered Group IV TIFF image files of not less than 300 dots per inch resolution, together with DOCUMENT level load files wherein the full text was extracted directly from the native file where possible.

      b.    For files produced in TIFF image form, each page of a produced DOCUMENT shall have a legible, unique production number electronically "burned" onto the TIFF image in such a manner that information from the source DOCUMENT is not obliterated, concealed, or interfered with, preferably in the lower right corner of the DOCUMENT.  The production

-9-

number shall contain at least six digits.  There shall be no other legend or stamp placed on the DOCUMENT image, unless a DOCUMENT qualifies for confidential treatment pursuant to the terms of any protective order in this matter, or if the DOCUMENT requires redaction.  In the case of confidential materials as defined by any protective order in this matter, any applicable designation may be "burned" onto the DOCUMENT's image at a location that does not obliterate or obscure any information from the source DOCUMENT, preferably in the lower left corner.

c.      Each DOCUMENT image file shall be named with the unique production number of the page of the DOCUMENT in question, followed by the extension ".tif".  File names should not be more than 20 characters long or contain spaces.

d.      For files produced in TIFF image format, each page of a DOCUMENT shall be electronically saved as an image file.  If a DOCUMENT is more than one page, the unitization of the DOCUMENT and any attachments and/or affixed notes shall be maintained as they existed in the original DOCUMENT.

e.      TIFF images shall be accompanied by a standard load file containing the metadata and other fields identified in Paragraph 7(j) of these Instructions, below.  The load file shall be produced in one of the following industry-standard formats:  (1) Concordance delimited file (".dat"); (2) comma-separated value file (".csv"); or (3) TAB delimited file.  TIFF images shall also be accompanied by either an Opticon delimited cross-reference file (".opt") or IPRO View LFP comma-delimited file showing DOCUMENT breaks and appropriate DOCUMENT unitization.

f.      In addition to TIFF images, each production of electronic DOCUMENTS shall include searchable text files corresponding to the TIFF images for each DOCUMENT.  The full text of each native electronic

-10-

DOCUMENT, excluding redacted DOCUMENTS, shall be extracted directly from the native file and produced in a DOCUMENT-level related text file (the "Extracted Text"). The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with the unique production number of the first page of the corresponding TIFF DOCUMENT followed by the extension ".txt". YOU shall also perform OCR on certain types of non-text based static image ESI, such as native PDF image files, and produce the corresponding DOCUMENT-level related text files. Searchable text files shall be generated from Extracted Text where available.

g.      DOCUMENTS shall be produced on optical media (CD or DVD) or external hard drives or similar, readily accessible electronic media (the "Production Media"). Each piece of Production Media shall IDENTIFY a production number corresponding to the party and production with which the DOCUMENTS on the Production Media are associated (e.g., "RYAN 001"), as well as the volume of the material in that production (e.g., "- 001", "-002"). For example, if the first production wave by YOU comprises DOCUMENT images on three hard drives, YOU shall label each hard drive in the following manner: "RYAN 001-001", "RYAN 001-002", and "RYAN 001-003." The face of each piece of Production Media shall also IDENTIFY: (1) the production date; and (2) the production number range of the materials contained on the Production Media.

h.      Presentation DOCUMENTS (such as Microsoft PowerPoint DOCUMENTS) shall be produced with one slide per page together with any "Speaker's Notes" or similar pages appended to, or otherwise associated with, each slide. Presentation DOCUMENTS shall also be produced according to all other applicable Instructions set forth in this set of requests.

i.   Unless redaction is required, spreadsheet DOCUMENTS (such as Microsoft Excel DOCUMENTS) shall be produced in native format, together with a single page TIFF placeholder bearing the legend "Native File Produced" and load files containing the agreed upon metadata, extracted text, production numbers and any applicable confidentiality labels as described above.  If redaction is required, then spreadsheets shall be produced in TIFF image format as set forth above.

j.   For all DOCUMENTS for which metadata exists, the load files described above shall be produced including the following fields:

| Fields for all DOCUMENTS | Description |
| --- | --- |
| BegProd | Beginning production number assigned to each DOCUMENT |
| EndProd | Ending production number assigned to each DOCUMENT |
| BegAttach | Beginning production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| EndAttach | Ending production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| Custodian | The name of the person or source from which the DOCUMENT was obtained |
| FileName | Original file name |
| FilePath | Original file path |
| DocExt | DOCUMENT type as identified by metadata associated with the native DOCUMENT indicating the extension of the application that created the native DOCUMENT (e.g., .doc, .ppt, etc.) |
| HashValue | The unique identifying value assigned to a DOCUMENT based on hash coding algorithms |
| Author | The person or source that originated the DOCUMENT |

| | |
|---|---|
| DateCreated | Date that the DOCUMENT was created (as reflected by metadata) |
| LastModifiedDate | Date that the file was last modified (as reflected by metadata) |
| FullText | The path or link to the searchable Extracted or OCR text for a DOCUMENT |
| NativeFile | The path or link to a processed and produced native file, to the extent the production contains native files |
| Confidentiality | The confidentiality designation for the DOCUMENT, as defined by any protective order in this matter |
| **Additional Fields for Email** | **Description** |
| To | All information contained in the "To" field of an email |
| From | All information contained in the "From" field of an email |
| CC | All information contained in the "CC" field of an email |
| BCC | All information contained in the "BCC" field of an email |
| DateSent | Date the email was sent, including month, day and year |
| TimeSent | Time the email was sent, including hour, minute, second and time zone. To the extent this information is already included in the DateSent field in the metadata, YOU need not parse TimeSent as a separate field. |
| DateReceived | Date the email was received, including the month, day and year |
| TimeReceived | Time the email was received, including hour, minute, second and time zone. To the extent this information is already included in the DateReceived field in the metadata, YOU need not parse TimeReceived as a separate field. |
| Subject | Subject or "Re:" line, as stated in the email |

8.     If with respect to any request there are no responsive DOCUMENTS, so state in writing.

-13-

9.      The following rules of construction shall be applied herein: (a) the words "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope ; (b) the use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural; (c) the words "any," "all," "each" and "every" all include any, all, each, and every and shall be understood in either their most or least inclusive sense as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; and (d) the use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the DOCUMENT requests all responses that might otherwise be construed to be outside of their scope.

10.     If YOU object to a portion or an aspect of a request, state the grounds for your objection with specificity and respond to the remainder of the DOCUMENT request. If any DOCUMENTS, or portion thereof, are withheld because YOU claim that such information is protected under the attorney-client privilege, work product doctrine, or other privilege or doctrine,  YOU are required to provide a privilege log setting forth the specific basis for the claim of privilege or protection and for each DOCUMENT provide the following:

        a.      the subject matter of the DOCUMENT;

        b.      the title, heading or caption of the DOCUMENT, if any;

        c.      the date appearing on the DOCUMENT or, if no date appears thereon, the date or approximate date on which the DOCUMENT was prepared;

        d.      the type of the DOCUMENT (e.g., whether it is a letter, memorandum, MINUTES of meeting, etc.) and the number of pages of which it consists;

        e.      the identity of the person who signed the DOCUMENT or, if it was not signed, the person who prepared it;

-14-

f.     the identity of each person to whom the DOCUMENT was addressed and the identity of each person to whom a copy thereof was sent; and

g.     the identity of each person who has custody of a copy of each such DOCUMENT.

11.     If YOU claim that a portion of a DOCUMENT is protected from disclosure for any reason, produce such DOCUMENT with redaction of only the portion claimed to be protected.  When such redactions for privilege or protection are made, YOU shall place a legend similar to "REDACTION – PRIVILEGE" on the copy of the DOCUMENT produced.  All redactions shall also be included on the privilege log described in Instruction #4.

12.     If you object that a request is vague or ambiguous, IDENTIFY the objectionable aspect of the request.

13.     If a request cannot be responded to in full, YOU shall respond to the extent possible, specify the reason for YOUR inability to respond to the remainder, and state whatever information or knowledge YOU have REGARDING the portion to which YOU have not responded.

14.     If any DOCUMENT called for by these requests has been destroyed, lost, discarded, or is otherwise no longer in your possession, custody, or control, IDENTIFY such DOCUMENT as completely as possible, and specify the date of disposal of the DOCUMENT, the manner of disposal, the reason for disposal, the person authorizing disposal, and the person disposing of the DOCUMENT.

15.     These requests are sequentially numbered and each numbered paragraph constitutes a single request.  Defined terms may be capitalized for the convenience of the parties; the definitions herein apply whether or not the term is capitalized.

16.     Except where expressly stated, these requests are not limited in any way by geography.

17.     These requests shall be deemed continuing in nature in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.  Supplemental responses are required

if additional responsive information is acquired or discovered between the time of responding to this request and the time of trial.

18.     Unless otherwise specified, the relevant time period, and the period for which YOU are required to provide responsive DOCUMENTS, is from and including January 1, 2011  up to and including the RESPONSE DATE.

# DOCUMENTS REQUESTED

## POLICIES AND PROCEDURES

**REQUEST FOR PRODUCTION NO. 1.:**

All ADC POLICIES AND PROCEDURES REGARDING HEALTH CARE in effect from January 1, 2011 through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 2.:**

All ADC POLICIES AND PROCEDURES in draft form or that have not been approved or implemented REGARDING HEALTH CARE from January 1, 2011 through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 3.:**

All POLICIES AND PROCEDURES REGARDING prescriptions of non-formulary medicine made by HEALTH CARE STAFF.

**REQUEST FOR PRODUCTION NO. 4.:**

All POLICIES AND PROCEDURES REGARDING the provision of  medications to ADC PRISONERS, including both formulary and non-formulary medications.

**REQUEST FOR PRODUCTION NO. 5.:**

All DOCUMENTS REGARDING POLICIES AND PROCEDURES for obtaining executed HEALTH CARE DIRECTIVES from PRISONERS.

**REQUEST FOR PRODUCTION NO. 6.:**

All POLICIES AND PROCEDURES REGARDING QUALITY ASSURANCE of HEALTH CARE, including but not limited to required reports, meetings, in-service trainings, audits, evaluations, or peer review systems.

**REQUEST FOR PRODUCTION NO. 7.:**

All POLICIES AND PROCEDURES REGARDING the extraction of a PRISONER'S tooth or teeth, including but not limited to alternative treatments presented to the PRISONER and the consequences of a PRISONER'S selection of alternative treatment.

**REQUEST FOR PRODUCTION NO. 8.:**

All POLICIES AND PROCEDURES REGARDING CORRECTIONAL STAFF's and HEALTH CARE STAFF's response to a non-responsive PRISONER in his/her cell for whom HEALTH CARE assistance has been requested or appears necessary.

**REQUEST FOR PRODUCTION NO. 9.:**

All POLICIES AND PROCEDURES REGARDING confinement of PRISONERS in ISOLATION, including but not limited to placement in, retention in, or removal from ISOLATION, CONDITIONS OF CONFINEMENT, diet, and OUTDOOR EXERCISE while in ISOLATION.

**REQUEST FOR PRODUCTION NO. 10.:**

All DOCUMENTS REGARDING HNR POLICIES AND PROCEDURES, other than DOCUMENTS specific to specific PRISONERS, including but not limited to DOCUMENTS REGARDING actual timeframes for processing and the necessary qualifications of personnel, including HEALTH CARE STAFF, responsible for processing HNRs from PRISONERS.

**REQUEST FOR PRODUCTION NO. 11.:**

All POLICIES AND PROCEDURES REGARDING PRISONERS' requests for second opinions when the first opinion was given by HEALTH CARE STAFF or an external provider.

**REQUEST FOR PRODUCTION NO. 12.:**

All POLICIES AND PROCEDURES REGARDING CORRECTIONAL STAFF assisting PRISONERS with completing HNRs.

-17-

**REQUEST FOR PRODUCTION NO. 13.:**

All POLICIES AND PROCEDURES REGARDING screening PRISONERS when they are initially received into custody, including but not limited to any reviews of medical history, physical examinations, and communicable diseases screening.

**REQUEST FOR PRODUCTION NO. 14.:**

All POLICIES AND PROCEDURES REGARDING COST CONTAINMENT, including any changes in the POLICIES AND PROCEDURES.

**REQUEST FOR PRODUCTION NO. 15.:**

All DOCUMENTS REGARDING the development and adoption of HEALTH CARE DIRECTIVES.

**REQUEST FOR PRODUCTION NO. 16.:**

All MINUTES from meetings attended by ADC HEALTH CARE STAFF, and any other meetings at which the HEALTH CARE of PRISONERS, HEALTH CARE POLICIES AND PROCEDURES, HEALTH CARE STAFFING, or any issue related to HEALTH CARE was discussed.

**REQUEST FOR PRODUCTION NO. 17.:**

One copy of each standardized DOCUMENT used by the ADC REGARDING the provision of HEALTH CARE.

**REQUEST FOR PRODUCTION NO. 18.:**

All DOCUMENTS REGARDING HEALTH CARE statistics of any kind at the ADC, including but not limited to DOCUMENTS that track disease or condition prevalence, outcomes, delays in service, care provided, and costs.

**STAFFING**

**REQUEST FOR PRODUCTION NO. 19.:**

DOCUMENTS SUFFICIENT TO SHOW the HOURS OF OPERATION, STAFFING SCHEDULES, and HEALTH CARE STAFFING levels for each facility operated by the ADC from January 1, 2011 through the RESPONSE DATE.

1

2   **REQUEST FOR PRODUCTION NO. 20.:**

3   All DOCUMENTS REGARDING HEALTH CARE STAFFING in ADC for each

4   fiscal year from 2005 to the RESPONSE DATE, including but not limited to

5   DOCUMENTS sufficient to show the total number of HEALTH CARE STAFF, the

6   existing positions for HEALTH CARE STAFF, whether they are permanent ADC

7   employees or LOCUM TENENS CONTRACTORS, the number of full-time employees

8   for each position, the number of vacancies and the duration of vacancies, and the total

9   hours worked by HEALTH CARE STAFF and LOCUM TENENS CONTRACTORS

10   who provided HEALTH CARE to ADC PRISONERS.

11   **REQUEST FOR PRODUCTION NO. 21.:**

12   DOCUMENTS SUFFICIENT TO SHOW ADC'S HEALTH CARE STAFFING

13   plan at each facility, including but not limited to DOCUMENTS REGARDING (a) the

14   minimum qualifications (e.g., M.D., R.N., L.P.N., etc.) for each position, whether (i)

15   HEALTH CARE STAFF, (ii) non-patient care-giving staff (such as medical file clerks),

16   or (iii) CORRECTIONAL STAFF, required in the infirmary within the facility; (b) a

17   general DESCRIPTION of the function of each position listed; (c) the training required of

18   each position (e.g., pre-service or in-service trainings); (d) the number of hours required

19   per week for each position; (e) any difference in coverage on holidays or weekends for

20   any staff position; (f) whether each position is filled or vacant as of the RESPONSE

21   DATE; and (g) the identity of the staff members currently filling each position, with

22   provider number (if applicable), shift, duties and degrees for each staff member identified.

23   **REQUEST FOR PRODUCTION NO. 22.:**

24   All JOB PERFORMANCE EVALUATIONS of HEALTH CARE STAFF or

25   LOCUM TENENS CONTRACTORS REGARDING whether the staff member or

26   contractor provided insufficient, inappropriate, or suboptimal HEALTH CARE

27   SERVICES and/or resulting in DISCIPLINE being taken against the staff member or

28   contractor.

1

2   **REQUEST FOR PRODUCTION NO. 23.:**

3       All JOB PERFORMANCE EVALUATIONS OF CORRECTIONAL STAFF

4   finding that the staff member or contractor provided insufficient, inappropriate, or

5   suboptimal EMERGENCY HEALTH CARE SERVICES and/or resulting in

6   DISCIPLINE being taken against the staff member or contractor due to the

7   EMERGENCY HEALTH CARE SERVICES provided.

8   **REQUEST FOR PRODUCTION NO. 24.:**

9       All DOCUMENTS REGARDING COMPLAINTS, from 2009 through the

10  RESPONSE DATE, REGARDING HEALTH CARE STAFFING or the STAFFING

11  SCHEDULE at each facility, including but not limited to COMMUNICATIONS from

12  ADC personnel that refer to or comment on any aspect of the adequacy of HEALTH

13  CARE STAFFING.

14                          **TRAINING**

15  **REQUEST FOR PRODUCTION NO. 25.:**

16      All DOCUMENTS REGARDING formal and informal HEALTH CARE training

17  provided to HEALTH CARE STAFF and CORRECTIONAL STAFF, REGARDING (a)

18  the provision of HEALTH CARE, (b) administrative responsibilities REGARDING the

19  provision of HEALTH CARE, (c) the processing of HNR forms and other PRISONER

20  COMPLAINTS, and (d) the procedures to ensure that PRISONERS have access to

21  HEALTH CARE.

22  **REQUEST FOR PRODUCTION NO. 26.:**

23      All DOCUMENTS REGARDING HEALTH CARE training materials provided to

24  ADC staff, including but not limited to to DOCUMENTS REGARDING first aid,

25  cardiopulmonary resuscitation, and suicide prevention.

26                          **CONTRACTORS**

27  **REQUEST FOR PRODUCTION NO. 27.:**

28      DOCUMENTS SUFFICIENT TO SHOW the names and contact INFORMATION for

    each agency or entity providing ADC with temporary or long-term HEALTH CARE contractors.

**REQUEST FOR PRODUCTION NO. 28.:**

DOCUMENTS SUFFICIENT TO SHOW each contract or agreement that has been fully executed REGARDING each agency, entity or contracting individual providing ADC with temporary or long-term HEALTH CARE contractors.

**REQUEST FOR PRODUCTION NO. 29.:**

DOCUMENTS SUFFICIENT TO SHOW the amounts paid to each agency, entity, or contracting individual providing ADC with temporary or long-term HEALTH CARE contractors, with sufficient detail to ascertain the number, type, and credentials of each temporary or long-term contractor provided to the ADC, and the duration of each contractor's work for the ADC.

**REQUEST FOR PRODUCTION NO. 30.:**

All POLICIES AND PROCEDURES for establishing agreements, contracts, or understandings with LOCUM TENENS CONTRACTORS, SPECIALTY CONTRACTORS, professionals, clinics, and institutions who provide HEALTH CARE to PRISONERS.

**REQUEST FOR PRODUCTION NO. 31.:**

All DOCUMENTS REGARDING the rates of reimbursement or payment to providers contracting with ADC and/or the State of Arizona to provide HEALTH CARE to PRISONERS.

**COMPLAINTS**

**REQUEST FOR PRODUCTION NO. 32.:**

All COMPLAINTS REGARDING HEALTH CARE DIRECTIVES.

**REQUEST FOR PRODUCTION NO. 33.:**

DOCUMENTS SUFFICIENT TO SHOW the name of the PRISONER and counsel, if any, REGARDING every HEALTH CARE COMPLAINT for which the ADC, on behalf of itself or an employee, paid money to a PRISONER or a PRISONER'S estate or heirs to resolve.  Where the COMPLAINT was filed in a court, include DOCUMENTS sufficient to show the court in which it was filed and the case number.

**REQUEST FOR PRODUCTION NO. 34.:**

All DOCUMENTS REGARDING HEALTH CARE STAFF and CORRECTIONAL STAFF who have filed COMPLAINTS REGARDING the provision of HEALTH CARE.

### REFERRALS

**REQUEST FOR PRODUCTION NO. 35.:**

DOCUMENTS SUFFICIENT TO SHOW how REFERRALS are processed, including persons involved in the decision-making process to approve or deny the REFERRAL.

**REQUEST FOR PRODUCTION NO. 36.:**

All DOCUMENTS REGARDING submitted REFERRALS, including the name of the referring HEALTH CARE CLINICIAN, the name and identification number of the PRISONER for whom the REFERRAL was made, the PRISONER'S current housing location, the reason the REFERRAL was made, the date the REFERRAL was approved or denied, the reasons for approving or denying the REFERRAL, and the name of the facility where the REFERRED CARE was actually or proposed to be provided.

**REQUEST FOR PRODUCTION NO. 37.:**

All DOCUMENTS REGARDING criticisms; critiques; or identification of possible, perceived, or actual deficiencies in HEALTH CARE made by current or former HEALTH CARE STAFF and other ADC staff, current or former LOCUM TENENS CONTRACTORS, or current or former SPECIALTY CONTRACTORS made from January 1, 2009 to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 38.:**

All DOCUMENTS REGARDING HEALTH CARE for REFERRED PRISONERS, including DOCUMENTS REGARDING any REVIEWS that occurred REGARDING the REFERRAL.

**REQUEST FOR PRODUCTION NO. 39.:**

All DOCUMENTS REGARDING the denial or delay of transportation for REFERRED PRISONERS to and from appointments with the HEALTH CARE providers

1

2    to which they were referred.

3                              **PRISONERS**

4    **REQUEST FOR PRODUCTION NO. 40.:**

5        All DOCUMENTS REGARDING DEATH RECORDS.

6    **REQUEST FOR PRODUCTION NO. 41.:**

7        All DOCUMENTS REGARDING any REVIEWS done of HEALTH CARE for

8    HOSPITALIZED PRISONERS, whether done before or after the hospitalization of any

9    HOSPITALIZED PRISONER.

10   **REQUEST FOR PRODUCTION NO. 42.:**

11       DOCUMENTS SUFFICIENT TO SHOW the population of PRISONERS in each

12   ADC operated facility by month for each year from 2009 through the RESPONSE DATE.

13   **REQUEST FOR PRODUCTION NO. 43.:**

14       All DOCUMENTS REGARDING the conditions in which PRISONERS are held

15   at Tempe St. Luke's Hospital.

16                        **COSTS AND BUDGET**

17   **REQUEST FOR PRODUCTION NO. 44.:**

18       All DOCUMENTS REGARDING HEALTH CARE COST CONTAINMENT.

19   **REQUEST FOR PRODUCTION NO. 45.:**

20       All DOCUMENTS REGARDING HEALTH CARE cost analysis done by the

21   ADC, whether over all or for particular types of care or medical procedures.

22   **REQUEST FOR PRODUCTION NO. 46.:**

23       All DOCUMENTS REGARDING the ADC's budget, including all amounts

24   budgeted for HEALTH CARE, for each year from 2007 to the RESPONSE DATE.

25   **REQUEST FOR PRODUCTION NO. 47.:**

26       DOCUMENTS SUFFICIENT TO SHOW the actual amounts expended on

27   HEALTH CARE for ADC PRISONERS for each year from 2007 to the RESPONSE

28   DATE.

**REQUEST FOR PRODUCTION NO. 48.:**

All DOCUMENTS REGARDING requests for funding made by the ADC to the Governor or legislature of Arizona from January 1, 2007 to the RESPONSE DATE.

### PRISONERS IN ISOLATION

**REQUEST FOR PRODUCTION NO. 49.:**

All DOCUMENTS REGARDING criticisms; critiques; or identification of possible, perceived, or actual deficiencies in CONDITIONS OF CONFINEMENT for ADC PRISONERS in ISOLATION from January 1, 2009 to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 50.:**

All COMPLAINTS REGARDING CONDITIONS OF CONFINEMENT for PRISONERS in ISOLATION, or the delivery of HEALTH SERVICES to PRISONERS in ISOLATION, made by current or former ADC personnel.

**REQUEST FOR PRODUCTION NO. 51.:**

All DOCUMENTS REGARDING INTERNAL INVESTIGATIONS OR EXTERNAL INVESTIGATIONS REGARDING CONDITIONS OF CONFINEMENT for PRISONERS in ISOLATION from January 1, 2009 to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 52.:**

All DOCUMENTS REGARDING INTERNAL INVESTIGATIONS OR EXTERNAL INVESTIGATIONS REGARDING the delivery of HEALTH SERVICES to PRISONERS in ISOLATION from January 1, 2009 to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 53.:**

DOCUMENTS SUFFICIENT TO SHOW the duration of confinement in ISOLATION, including but not limited to the mean, median, and maximum length of confinement in ISOLATION for ADC PRISONERS.

**REQUEST FOR PRODUCTION NO. 54.:**

All DOCUMENTS REGARDING the provision of OUTDOOR EXERCISE to PRISONERS in ISOLATION, including but not limited to POLICIES AND PROCEDURES; schedules for the provision of OUTDOOR EXERCISE; DOCUMENTS

SUFFICIENT TO SHOW when and for how long PRISONERS actually received OUTDOOR EXERCISE, including any DOCUMENTS REGARDING cancellation or truncation of scheduled OUTDOOR EXERCISE; plans of the areas in which OUTDOOR EXERCISE is provided; and exercise equipment in the OUTDOOR EXERCISE areas.

**REQUEST FOR PRODUCTION NO. 55.:**

All DOCUMENTS REGARDING exhausted GRIEVANCES REGARDING HEALTH CARE or ISOLATION from January 1, 2010 through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 56.:**

All DOCUMENTS REGARDING GRIEVANCES REGARDING CONDITIONS OF CONFINEMENT in ISOLATION.

**REQUEST FOR PRODUCTION NO. 57.:**

All DOCUMENTS REGARDING the provision of food to PRISONERS in ISOLATION, including but not limited to POLICIES AND PROCEDURES; schedules for delivery of food; menus; nutritional analyses of menus; and DOCUMENTS SUFFICIENT TO SHOW when PRISONERS actually received food and what food they received, including any DOCUMENTS REGARDING deviation from the schedule for delivery of food or from the planned menu.

### DOCUMENTS FROM ADC OFFICIALS

**REQUEST FOR PRODUCTION NO. 58.:**

All DOCUMENTS authored by or sent from defendant Charles Ryan REGARDING HEALTH CARE.

**REQUEST FOR PRODUCTION NO. 59.:**

All DOCUMENTS authored by or sent from defendant Richard Pratt REGARDING HEALTH CARE.

**REQUEST FOR PRODUCTION NO. 60.:**

All DOCUMENTS authored by or sent from Michael Adu-Tutu REGARDING HEALTH CARE.

**OTHER**

**REQUEST FOR PRODUCTION NO. 61.:**

DOCUMENTS SUFFICIENT TO SHOW the ORGANIZATIONAL STRUCTURE of the ADC for the time period from January 1, 2011 through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 62.:**

All DOCUMENTS REGARDING HEALTH CARE SHORTAGES.

**REQUEST FOR PRODUCTION NO. 63.:**

For each custodian for whom you produce DOCUMENTS, produce an image of the folder structure, including all sub-folders, of any email accounts for that custodian.

Dated:  June 15, 2012                                    **JONES DAY**

By: _Caroline Mitchell_
Caroline Mitchell (Cal. 143124)*
Ilham Hosseini (Cal. 256274)*
Sophia Calderon (Cal. 278315)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:      cnmitchell@jonesday.com
            ihosseini@jonesday.com
            scalderon@jonesday.com


*Admitted *pro hac vice*

Attorneys for Defendants


Daniel J. Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF
ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:      dpochoda@acluaaz.org;
            kflood@acluaz.org
            jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct.
R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:      dspecter@prisonlaw.com
            ahardy@prisonlaw.com
            snorman@prisonlaw.com
            ckendrick@prisonlaw.com

*Admitted *pro hac vice*

VICTOR ANTONIO PARSONS' FIRST SET
OF REQUESTS FOR PRODUCTION
2:12-CV-00601-NVW--MEA

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email: dfathi@npp-aclu.org
afettig@npp-aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*
Daniel C. Barr (Bar No. 010149)
Jill L. Ripke (Bar No. 024837)
James A. Ahlers (Bar No. 026660)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Thomas D. Ryerson (Bar No. 028073)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email: dbarr@perkinscoie.com
rjipke@perkinscoie.com
jahlers@perkinscoie.com
keidenbach@perkinscoie.com
jhgray@perkinscoie.com
tryerson@perkinscoie.com
mdumee@perkinscoie.com

*Attorneys for Plaintiffs Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriquez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

VICTOR ANTONIO PARSONS' FIRST SET
OF REQUESTS FOR PRODUCTION
2:12-CV-00601-NVW--MEA

1
2
**ARIZONA CENTER FOR DISABILITY LAW**

3
4      Jennifer Alewelt
       Ruth Szanto
5      Asim Varma
       5025 East Washington Street, Suite 202
       Phoenix, Arizona 85034
6      Telephone:  (602) 274-6287
       Email:    jalewelt@azdisabilitylaw.org
7                rszanto@azdisabilitylaw.org
                 avarma@azdisabilitylaw.org
8
       *Attorneys for Plaintiff Arizona Center for*
9      *Disability Law*

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VICTOR ANTONIO PARSONS' FIRST SET
OF REQUESTS FOR PRODUCTION
2:12-CV-00601-NVW--MEA

1

2

## CERTIFICATE OF SERVICE

3      I hereby certify that on June 15, 2012, I served the foregoing document by mail on

4  the following:

5

6      Arizona Attorney General Thomas C. Horne
       Office of the Attorney General
       Michael E. Gotfried

7      Assistant Attorney General
       1275 W. Washington Street

8      Phoenix, AZ 85007-2926
       Telephone: 602-542-4951

9      Facsimile: 602-542-7670

10     Daniel P. Struck
       Kathleen L. Wieneke

11     Timothy J. Bojanowski
       Nicholas D. Acedo

12     Courtney R. Cloman
       Ashlee B. Fletcher

13     Struck Wieneke & Love, PLC
       3100 West Ray Rd., Ste. 300

14     Chandler, AZ 85226
       Telephone: 480-420-1600

15     Facsimile 480-420-1696

16

17

18

19                                              Sophia Calderón

20  SFI-735993v1

21

22

23

24

25

26

27

28

VICTOR ANTONIO PARSONS' FIRST SET
OF REQUESTS FOR PRODUCTION
2:12-CV-00601-NVW--MEA