# Exhibit C

1   Daniel Pochoda (Bar No. 021979)
    Kelly J. Flood (Bar No. 019772)
2   James Duff Lyall (Bar No. 330045)*
    **ACLU FOUNDATION OF ARIZONA**
3   3707 North 7th Street, Suite 235
    Phoenix, Arizona 85013
4   Telephone: (602) 650-1854
    Email: dpochoda@acluaz.org
5           kflood@acluaz.org
            jlyall@acluaz.org
6   *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7   *Attorneys for Plaintiffs Victor Parsons, Shawn Jensen,*
    *Stephen Swartz, Dustin Brislan, Sonia Rodriguez,*
8   *Christina Verduzco, Jackie Thomas, Jeremy Smith,*
    *Robert Gamez, Maryanne Chisholm, Desiree Licci,*
9   *Joseph Hefner, Joshua Polson, and Charlotte Wells, on*
    *behalf of themselves and all others similarly situated*
10
    **[ADDITIONAL COUNSEL LISTED ON**
11   **SIGNATURE PAGE]**

12                  UNITED STATES DISTRICT COURT

13                       DISTRICT OF ARIZONA

14   Victor Parsons; Shawn Jensen; Stephen Swartz;      No. CV 12-00601-PHX-NVW
     Dustin Brislan; Sonia Rodriguez; Christina           (MEA)
15   Verduzco; Jackie Thomas; Jeremy Smith; Robert
     Gamez; Maryanne Chisholm; Desiree Licci; Joseph
16   Hefner; Joshua Polson; and Charlotte Wells, on       **PLAINTIFF VICTOR**
     behalf of themselves and all others similarly        **ANTONIO PARSONS'**
17   situated; and Arizona Center for Disability Law,     **SECOND SET OF**
                                                          **REQUESTS FOR**
18                  Plaintiffs,                           **PRODUCTION OF**
                                                          **DOCUMENTS TO**
19        v.                                              **DEFENDANTS**

20   Charles Ryan, Director, Arizona Department of
     Corrections; and Richard Pratt, Interim Division
21   Director, Division of Health Services, Arizona
     Department of Corrections, in their official
22   capacities,

23                  Defendants.

24

25

26

27

28

1    Propounding Parties:        Plaintiff Victor Antonio Parsons

2    Responding Party:           Defendants

3        Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Victor

4   Antonio Parsons, by and through undersigned counsel, requests that Defendants respond,

5   within 30 days and produce the following documents for inspection and copying at ACLU

6   Foundation of Arizona, 3707 N. 7th Street, Suite 235, Phoenix, Arizona 85013.

7                                    **DEFINITIONS**

8        1.    "ADC" means the Arizona Department of Corrections, including all its

9   subdivisions, agents, employees, contractors, and attorneys.

10       2.    "ADC STAFF" means all persons employed by ADC, including

11  "CORRECTIONAL STAFF" and "HEALTH CARE STAFF."

12       3.    "COMMUNICATIONS" means any transmittal of information from one

13  person or entity to another by any means, including letters, correspondence, notes,

14  memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied

15  or blind copied), electronic mail generated from a hand held personal device including a

16  Blackberry or iPhone, instant messaging, electronic mail generated from business or

17  personal email accounts, internet relay chat, news group, group or collaboration servers,

18  electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings,

19  audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes,

20  teleconference, collaboration servers (including share point servers), web-based or

21  software virtual meetings including Web-X and any other meeting software and share

22  point servers, and oral contact such as face-to-face discussions or meetings, telephone

23  conversations, and voice mail messages.

24       4.    "COMPLAINTS" means any DOCUMENTS, formal or informal,

25  REGARDING specific or general problems, issues, deficiencies, unanswered questions,

26  challenges, shortcomings, disagreements, or requests brought to the attention of the ADC

27  or any ADC STAFF.

28

78204-0001/LEGAL24896164.1

5.    "CONDITIONS OF CONFINEMENT" means all circumstances REGARDING the state of being imprisoned.

6.    "CONTRACTOR" means "LOCUM TENENS CONTRACTOR" and "SPECIALTY CONTRACTOR."

7.    "CORRECTIONAL STAFF" means custody staff employed or paid by the ADC to serve in a security or operational capacity.

8.    "COST CONTAINMENT" means contemplated, discussed, or actual actions to restrict, reduce, contain, or limit costs or expenses by DEFENDANTS, the ADC or any personnel working in any capacity for the ADC or the Arizona State Government, including any agents of the foregoing.

9.    "DEATH RECORDS" means any DOCUMENT REGARDING the death of a PRISONER, including audits, REVIEWS, studies, interview notes, videos, audio-recordings, EXTERNAL INVESTIGATIONS or INTERNAL INVESTIGATIONS.

10.   "DESCRIBE" and "DESCRIPTION" means to provide all available INFORMATION.

11.   "DISCIPLINE" means any formal or informal discipline, punishment, reprimand, warning, or comment given to any person as a result of substandard or unacceptable conduct.

12.   "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and DESCRIPTION and every tangible thing that is or has been in the possession, custody, or control of DEFENDANTS and the ADC, to which they have access, or of which they have knowledge, including, but not limited to, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings,

maps, reports, surveys, MINUTES, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device). "DOCUMENT" and "DOCUMENTS" includes, but is not limited to, all DOCUMENTS generated by or maintained in the Director's Project Tracking System, official ADC papers, and the ADC's intranet.

13.     "EMERGENCY HEALTH CARE SERVICES" means treatment or care to address a mental health, medical, or dental injury or illness that is acute, causes substantial pain, and/or and poses a substantial and immediate risk to the life or long term health of a person.

14.     "ENTRY-LEVEL PRACTITIONERS" means unlicensed persons who provide HEALTH CARE to PRISONERS at the ADC subordinate to MID-LEVEL PRACTITIONERS or HEALTH CARE CLINICIANS.

15.     "EXTERNAL INVESTIGATIONS" means investigations, REVIEWS, audits, or studies, whether formal or informal, conducted by a person who is not employed by the ADC or an entity that is not the ADC.  It is immaterial to the definition whether the EXTERNAL INVESTIGATION was conducted at the ADC's behest or direction.

16.     "GRIEVANCES" means COMPLAINTS or requests made by PRISONERS to the ADC, and the exhaustion of claims raised or stated therein.

17.     "HEALTH CARE" means the provision of care, including adequate diet, to address the mental health, medical, or dental needs of a PRISONER, whether those needs arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic or preventive purposes.

18.     "HEALTH CARE CLINICIANS" means persons independently licensed to provide HEALTH CARE to PRISONERS at the ADC facilities, including but not limited to M.D., D.O., D.D.S., and Ph.D. credentialed staff.

19. "HEALTH CARE DIRECTIVES" means DOCUMENTS REGARDING advance medical care directives, living wills, personal directives, advance directives, or instructions of any kind in which individuals specify what actions should or should not be taken for their HEALTH CARE in the event they are no longer able to make decisions due to illness, injury, or incapacity

20. "HEALTH CARE SHORTAGES" means any deficiencies involving HEALTH CARE, including but not limited to a lack of or insufficient number of medicines, drugs, medical supplies, medical equipment, transportation, or HEALTH CARE STAFFING.

21. "HEALTH CARE STAFF" means all staff employed or paid by the ADC, LOCUM TENENS CONTRACTORS, or SPECIALTY CONTRACTORS (other than CORRECTIONAL STAFF) who are responsible for providing HEALTH CARE to ADC PRISONERS, including but not limited to HEALTH CARE CLINICIANS, MID-LEVEL PRACTITIONERS, ENTRY-LEVEL PRACTITIONERS, PHARMACISTS, and administrative and support staff.

22. "HEALTH CARE STAFFING" means the provision of HEALTH CARE STAFF to provide HEALTH CARE.

23. "HEALTH GRIEVANCES" means requests for HEALTH CARE or COMPLAINTS REGARDING the need for, adequacy of, quality of, or timing of HEALTH CARE made by PRISONERS to the ADC, including but not limited to the submission of Health Needs Request ("HNR") forms and the exhaustion of claims stated therein.

24. "HNR POLICIES AND PROCEDURES" means policies, procedures, or practices, whether written or established through custom or use, REGARDING HNR submissions by PRISONERS, including but not limited to the distribution, disposal, processing, rejection of, responses to, provision of HEALTH CARE pursuant to, and exhaustion of claims raised by such submissions.  This includes policies, procedures, or practices that are in draft form and have not been approved and/or implemented.

25.    "HOSPITALIZED PRISONER" means any PRISONER who is sent to a hospital or other off-site medical or mental health facility, or who is admitted to an on-site hospital, while in the custody of the ADC.

26.    "HOURS OF OPERATION" means the time periods during which a facility, unit, or other ADC facility housing PRISONERS is able to provide HEALTH CARE to PRISONERS by on-site HEALTH CARE STAFF.

27.    "IDENTIFY" and "IDENTIFICATION" with respect to (a) a PRISONER or former PRISONER, means to state the PRISONER'S full name, ADC number, date of birth, current or most recent mental health score (MH-1 through MH-5), medical score (M-1 through M-5), public risk score, institutional risk score, and current housing location (if still in ADC custody) or last known address and telephone number (if no longer in ADC custody); (b) a person other than a PRISONER or former PRISONER, means to state the person's full name and specify whether or not the person is or has been an ADC STAFF member, and if so, to state the staff member's position title, facility location, work schedule, responsibilities, date ADC employment began, date ADC employment terminated, dates of any changes in position titles or responsibilities, DESCRIPTIONS of any changes in position titles or responsibilities and, if the person is not currently employed by ADC, the person's last known address and telephone number; and (c) a third-party contractor or entity means to state the name of the contractor or entity, the type of entity (*e.g.*, corporation, partnership, etc.); its address and telephone number; and any persons YOU are aware of who acted on behalf of that contractor or entity with respect to the events at issue in the discovery request; (d) IDENTIFY in any other context means to provide as much INFORMATION REGARDING the thing to be identified as is in the possession of DEFENDANTS or the ADC.

28.    "INFORMATION" means any knowledge YOU have, any evidence of any type, any facts of which YOU are aware and any inferences or speculation of which YOU are aware, all regardless of the source.  When INFORMATION YOU provide is based solely on inference or speculation, specifically so state in YOUR response.  When

providing INFORMATION, provide the names of involved individuals, actions relevant to the requested INFORMATION, dates and times when known, locations, and any other knowledge YOU have about the subject of the discovery request.  When asked to provide INFORMATION about one or more individuals, IDENTIFY the individual or individuals and provide any other INFORMATION YOU have about such person or persons.

29.     "INTERNAL INVESTIGATION" means an investigation, REVIEW, audit, study, interview notes, videos, or audio recordings, whether formal or informal, conducted by the ADC.

30.     "ISOLATION" means confinement in a cell for 22 hours or more each day; confinement in Eyman-Special Management Unit ("SMU") 1, Eyman-Browning Unit, Florence-Central Unit, Florence-Kasson Unit, or Perryville-Lumley Special Management Area ("SMA"); or confinement in a Complex Detention Unit ("CDU").

31.     "JOB PERFORMANCE EVALUATION" means any evaluation, whether formal or informal, of the work of an ADC STAFF member or contractor performing services for the ADC.

32.     "LOCUM TENENS CONTRACTOR" means any person or entity contracting with ADC to provide HEALTH CARE to ADC PRISONERS.

33.      "MID-LEVEL PRACTITIONERS" means licensed professionals who provide HEALTH CARE to PRISONERS at the ADC under supervision by HEALTH CARE CLINICIANS.

34.     "MINUTES" means notes or any other recording reflecting the content of a meeting, whether written contemporaneously with or subsequent to the meeting.

35.     "ORGANIZATIONAL STRUCTURE" means the structure of who reports to whom within the ADC up to and including defendant Charles Ryan, including specifically all HEALTH CARE STAFF and each individual's job title and DESCRIPTION of duties.

36.     "OUTDOOR EXERCISE" means periods during which PRISONERS are permitted to exercise in the outdoors.

37.     "PHARMACIST" means a professional who practices pharmacy.

38.     "POLICIES AND PROCEDURES" means policies, procedures, criteria, or practices, whether written or established through custom or use, including but not limited to policy and procedure manuals, directors' orders, protocols, directives, flowcharts, institution post orders, and any other DOCUMENTS designed to direct the actions of ADC personnel, ADC contractors, and/or PRISONERS.

39.     "PRISONER" means a person incarcerated by the ADC.

40.     "QUALITY ASSURANCE" means any activities implemented for the purpose of examining, assessing, evaluating, investigating, analyzing, or identifying the quality of a product or service.

41.     "REFERRAL" means a recommendation that a PRISONER obtain HEALTH CARE from HEALTH CARE STAFF at ADC or non ADC facilities, whether or not such HEALTH CARE is in fact ever provided.

42.     "REFERRED CARE" means HEALTH CARE pursuant to a REFERRAL.

43.     "REFERRED PRISONER" means a PRISONER who received a REFERRAL while in the legal custody of the ADC.

44.     "REGARDING" or "REGARDED" to any given subject matter means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers to, relates to, responds to, states, summarizes, or is in any way relevant to the particular subject matter identified.

45.     "RESPONSE DATE" means date upon which YOU respond to these discovery requests, or, if YOU amend or supplement YOUR response, the date of YOUR amendment or supplement.

46.     "REVIEWS" means examinations, assessments, evaluations, or investigations performed by or at the direction of ADC STAFF or officials.

47.   "SPECIALTY CONTRACTOR" means any person or entity contracting with the ADC to provide HEALTH CARE to PRISONERS who is not a LOCUM TENENS CONTRACTOR.

48.   "STAFFING SCHEDULE" means the days, hours, and/or shifts for which each member of the HEALTH CARE STAFF was scheduled to work, including overtime, on call and call-in coverage.

49.   "SUFFICIENT TO SHOW" means demonstrating or evidencing complete INFORMATION on the requested topic, without the need to produce every DOCUMENT REGARDING the topic.

50.   "YOU," "YOUR," "YOURSELF," and "DEFENDANTS" means defendants Charles Ryan and Richard Pratt, and their predecessors, successors, employees, subordinates, contractors, agents, and attorneys.

**INSTRUCTIONS**

1.   YOU are required to furnish all DOCUMENTS in YOUR possession, custody, or control, including those DOCUMENTS that are in YOUR possession, custody, or control in the normal course of YOUR employment obligations, and those in the possession, custody or control of your (1) employer; (2) consultants; (3) attorneys; (4) representatives; (5) agents; or (6) any other person acting or purporting to act on YOUR behalf or at YOUR direction, whether doing so directly or at the direction of YOUR subordinates.  Possession, custody, or control includes DOCUMENTS stored in electronic form by third party service providers but accessible to the Defendant, including but not limited to email accounts, FTP servers, portable storage media such as USB drives, cloud storage services such as Dropbox or SharePoint , and online workspaces such as WebEx.

2.   All non-identical copies of every DOCUMENT whose production is sought shall be separately produced.

3.   Each request herein constitutes a request for DOCUMENTS in their entirety, with all enclosures and attachments, and without abbreviation, redaction, or

1    expurgation.   DOCUMENTS attached to each other, including but not limited to, by

2    staple, clip, tape, email attachment, or "Post-It" note, should not be separated, although

3    any page on which a Post-It note covers or obscures text on the DOCUMENT should be

4    produced both with and without the Post-It note.   The production must also include, where

5    applicable, any index tabs, file dividers, designations, binder spine labels, or other similar

6    information as to the source and/or location of the DOCUMENTS.

7         4.    DEFENDANTS shall produce any and all drafts and copies of each

8    DOCUMENT that are responsive to any request, including but not limited to copies

9    containing handwritten notes, markings, stamps, or interlineations.   The author(s) of all

10   hand-written notes should be identified.

11        5.    YOU shall produce all responsive DOCUMENTS as they have been kept in

12   the ordinary course of business.

13        6.    Responsive DOCUMENTS that exist only in paper form shall be organized

14   as they have been kept in the ordinary course of business and shall be produced according

15   to the following protocol:

16             a.    Paper DOCUMENTS shall be scanned and produced in TIFF image

17             form at a resolution sufficient to enable the generation of searchable text using

18             Optical Character Recognition ("OCR").

19        7.    Responsive DOCUMENTS that exist in electronic form, even if such

20   DOCUMENTS also exist in paper form, shall be produced in electronic form according to

21   the following protocol:

22             a.    Electronic DOCUMENTS shall be produced electronically as single

23             page, uniquely and sequentially numbered Group IV TIFF image files of not less

24             than 300 dots per inch resolution, together with DOCUMENT level load files

25             wherein the full text was extracted directly from the native file where possible.

26             b.    For files produced in TIFF image form, each page of a produced

27             DOCUMENT shall have a legible, unique production number electronically

28             "burned" onto the TIFF image in such a manner that information from the source

1    DOCUMENT is not obliterated, concealed, or interfered with, preferably in the

2    lower right corner of the DOCUMENT.  The production number shall contain at

3    least six digits.   There shall be no other legend or stamp placed on the

4    DOCUMENT image, unless a DOCUMENT qualifies for confidential treatment

5    pursuant to the terms of any protective order in this matter, or if the DOCUMENT

6    requires redaction.   In the case of confidential materials as defined by any

7    protective order in this matter, any applicable designation may be "burned" onto

8    the DOCUMENT's image at a location that does not obliterate or obscure any

9    information from the source DOCUMENT, preferably in the lower left corner.

10           c.       Each DOCUMENT image file shall be named with the unique

11   production number of the page of the DOCUMENT in question, followed by the

12   extension ".tif".  File names should not be more than 20 characters long or contain

13   spaces.

14           d.       For files produced in TIFF image format, each page of a

15   DOCUMENT shall be electronically saved as an image file.  If a DOCUMENT is

16   more than one page, the unitization of the DOCUMENT and any attachments

17   and/or affixed notes shall be maintained as they existed in the original

18   DOCUMENT.

19           e.       TIFF images shall be accompanied by a standard load file containing

20   the metadata and other fields identified in Paragraph 7(j) of these Instructions,

21   below.  The load file shall be produced in one of the following industry-standard

22   formats:  (1) Concordance delimited file (".dat"); (2) comma-separated value file

23   (".csv"); or (3) TAB delimited file.  TIFF images shall also be accompanied by

24   either an Opticon delimited cross-reference file (".opt") or IPRO View LFP

25   comma-delimited file showing DOCUMENT breaks and appropriate DOCUMENT

26   unitization.

27           f.       In addition to TIFF images, each production of electronic

28   DOCUMENTS shall include searchable text files corresponding to the TIFF

images for each DOCUMENT.   The full text of each native electronic DOCUMENT, excluding redacted DOCUMENTS, shall be extracted directly from the native file and produced in a DOCUMENT-level related text file (the "Extracted Text"). The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with the unique production number of the first page of the corresponding TIFF DOCUMENT followed by the extension ".txt".   YOU shall also perform OCR on certain types of non-text based static image ESI, such as native PDF image files, and produce the corresponding DOCUMENT-level related text files. Searchable text files shall be generated from Extracted Text where available.

g.   DOCUMENTS shall be produced on optical media (CD or DVD) or external hard drives or similar, readily accessible electronic media (the "Production Media").  Each piece of Production Media shall IDENTIFY a production number corresponding to the party and production with which the DOCUMENTS on the Production Media are associated (e.g., "RYAN 001"), as well as the volume of the material in that production (e.g., "- 001", "-002").   For example, if the first production wave by YOU comprises DOCUMENT images on three hard drives, YOU shall label each hard drive in the following manner: "RYAN 001-001", "RYAN 001-002", and "RYAN 001-003."  The face of each piece of Production Media shall also IDENTIFY:   (1) the production date; and (2) the production number range of the materials contained on the Production Media.

h.   Presentation DOCUMENTS (such as Microsoft PowerPoint DOCUMENTS) shall be produced with one slide per page together with any "Speaker's Notes" or similar pages appended to, or otherwise associated with, each slide. Presentation DOCUMENTS shall also be produced according to all other applicable Instructions set forth in this set of requests.

i.   Unless redaction is required, spreadsheet DOCUMENTS (such as Microsoft Excel DOCUMENTS) shall be produced in native format, together with

a single page TIFF placeholder bearing the legend "Native File Produced" and load files containing the agreed upon metadata, extracted text, production numbers and any applicable confidentiality labels as described above.  If redaction is required, then spreadsheets shall be produced in TIFF image format as set forth above.

j.    For all DOCUMENTS for which metadata exists, the load files described above shall be produced including the following fields:

| Fields for all DOCUMENTS | Description |
|---|---|
| BegProd | Beginning production number assigned to each DOCUMENT |
| EndProd | Ending production number assigned to each DOCUMENT |
| BegAttach | Beginning production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| EndAttach | Ending production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| Custodian | The name of the person or source from which the DOCUMENT was obtained |
| FileName | Original file name |
| FilePath | Original file path |
| DocExt | DOCUMENT type as identified by metadata associated with the native DOCUMENT indicating the extension of the application that created the native DOCUMENT (e.g., .doc, .ppt, etc.) |
| HashValue | The unique identifying value assigned to a DOCUMENT based on hash coding algorithms |
| Author | The person or source that originated the DOCUMENT |
| DateCreated | Date that the DOCUMENT was created (as reflected by metadata) |
| LastModifiedDate | Date that the file was last modified (as reflected by metadata) |

| Fields for all DOCUMENTS | Description |
|---|---|
| FullText | The path or link to the searchable Extracted or OCR text for a DOCUMENT |
| NativeFile | The path or link to a processed and produced native file, to the extent the production contains native files |
| Confidentiality | The confidentiality designation for the DOCUMENT, as defined by any protective order in this matter |
| **Additional Fields for Email** | **Description** |
| To | All information contained in the "To" field of an email |
| From | All information contained in the "From" field of an email |
| CC | All information contained in the "CC" field of an email |
| BCC | All information contained in the "BCC" field of an email |
| DateSent | Date the email was sent, including month, day and year |
| TimeSent | Time the email was sent, including hour, minute, second and time zone. To the extent this information is already included in the DateSent field in the metadata, YOU need not parse TimeSent as a separate field. |
| DateReceived | Date the email was received, including the month, day and year |
| TimeReceived | Time the email was received, including hour, minute, second and time zone. To the extent this information is already included in the DateReceived field in the metadata, YOU need not parse TimeReceived as a separate field. |
| Subject | Subject or "Re:" line, as stated in the email |

8. If with respect to any request there are no responsive DOCUMENTS, so state in writing.

9.     The following rules of construction shall be applied herein: (a) the words "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope ; (b) the use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural; (c) the words "any," "all," "each" and "every" all include any, all, each, and every and shall be understood in either their most or least inclusive sense as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; and (d) the use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the DOCUMENT requests all responses that might otherwise be construed to be outside of their scope.

10.     If YOU object to a portion or an aspect of a request, state the grounds for your objection with specificity and respond to the remainder of the DOCUMENT request. If any DOCUMENTS, or portion thereof, are withheld because YOU claim that such information is protected under the attorney-client privilege, work product doctrine, or other privilege or doctrine,  YOU are required to provide a privilege log setting forth the specific basis for the claim of privilege or protection and for each DOCUMENT provide the following:

a.     the subject matter of the DOCUMENT;

b.     the title, heading or caption of the DOCUMENT, if any;

c.     the date appearing on the DOCUMENT or, if no date appears thereon, the date or approximate date on which the DOCUMENT was prepared;

d.     the type of the DOCUMENT (e.g., whether it is a letter, memorandum, MINUTES of meeting, etc.) and the number of pages of which it consists;

e.     the identity of the person who signed the DOCUMENT or, if it was not signed, the person who prepared it;

f. the identity of each person to whom the DOCUMENT was addressed and the identity of each person to whom a copy thereof was sent; and

g. the identity of each person who has custody of a copy of each such DOCUMENT.

11. If YOU claim that a portion of a DOCUMENT is protected from disclosure for any reason, produce such DOCUMENT with redaction of only the portion claimed to be protected. When such redactions for privilege or protection are made, YOU shall place a legend similar to "REDACTION – PRIVILEGE" on the copy of the DOCUMENT produced. All redactions shall also be included on the privilege log described in Instruction #4.

12. If you object that a request is vague or ambiguous, IDENTIFY the objectionable aspect of the request.

13. If a request cannot be responded to in full, YOU shall respond to the extent possible, specify the reason for YOUR inability to respond to the remainder, and state whatever information or knowledge YOU have REGARDING the portion to which YOU have not responded.

14. If any DOCUMENT called for by these requests has been destroyed, lost, discarded, or is otherwise no longer in your possession, custody, or control, IDENTIFY such DOCUMENT as completely as possible, and specify the date of disposal of the DOCUMENT, the manner of disposal, the reason for disposal, the person authorizing disposal, and the person disposing of the DOCUMENT.

15. These requests are sequentially numbered and each numbered paragraph constitutes a single request. Defined terms may be capitalized for the convenience of the parties; the definitions herein apply whether or not the term is capitalized.

16. Except where expressly stated, these requests are not limited in any way by geography.

17. These requests shall be deemed continuing in nature in accordance with Rule 26(e) of the Federal Rules of Civil Procedure. Supplemental responses are required

1   if additional responsive information is acquired or discovered between the time of

2   responding to this request and the time of trial.

3       18.    Unless otherwise specified, the relevant time period, and the period for

4   which YOU are required to provide responsive DOCUMENTS, is from and including

5   January 1, 2011  up to and including the RESPONSE DATE.

6                        **DOCUMENTS REQUESTED**

7   **REQUEST FOR PRODUCTION NO. 1:**

8       All DOCUMENTS, in particular but not exclusively including recordings,

9   transcripts, summaries, memoranda, or notes, REGARDING telephone calls or other

10  COMMUNICATIONS made by ADC CORRECTIONAL or HEALTH CARE STAFF to

11  911 or other emergency response providers where any part of those

12  COMMUNICATIONS REGARDED Victor Parsons, Shawn Jensen, Stephen Swartz,

13  Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith,

14  Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, or

15  Charlotte Wells.

16

17  **REQUEST FOR PRODUCTION NO. 2:**

18      All DOCUMENTS, in particular but not exclusively including recordings,

19  transcripts, summaries, memoranda, or notes, REGARDING telephone calls or other

20  COMMUNICATIONS made by ADC CORRECTIONAL or HEALTH CARE STAFF to

21  911 or other emergency response providers where any part of those

22  COMMUNICATIONS REGARDED any PRISONER and the telephone call occurred on

23  any date between January 1, 2011 and the RESPONSE DATE.

24

25  **REQUEST FOR PRODUCTION NO. 3:**

26      All DOCUMENTS, in particular but not exclusively including reports, memoranda,

27  notes, photographs, films, audiotapes, videotapes, video recordings, or computer records,

28  REGARDING the use of force by ADC CORRECTIONAL STAFF, in particular but not

exclusively including the use of pepper spray or any similar substance, against Victor Parsons, Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, or Charlotte Wells.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS, in particular but not exclusively including reports, memoranda, notes, photographs, films, audiotapes, videotapes, video recordings, or computer records, REGARDING the use of force by ADC CORRECTIONAL STAFF, in particular but not exclusively including the use of pepper spray or any similar substance, against any PRISONER classified as SERIOUSLY MENTALLY ILL on any date between January 1, 2011 and the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS, in particular but not exclusively including reports, memoranda, notes, Inmate Letters, photographs, films, audiotapes, videotapes, video recordings, or computer records, REGARDING Daniel Porter, #61424, in particular but not exclusively including video recordings of him and/or ADC CORRECTIONAL and HEALTH CARE STAFF at ASPC-Eyman near him at or near the time of his death on or about February 20, 2012, and video recordings of interviews with PRISONERS regarding Daniel Porter's death.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS, in particular but not exclusively including reports, memoranda, notes, photographs, films, audiotapes, videotapes, video recordings, or computer records, REGARDING Anthony Lester, #253529, in particular but not exclusively including video recordings of him and/or ADC CORRECTIONAL or HEALTH CARE STAFF at ASPC-Tucson near him at or near the time of his death on or about July 11, 2010.

1   **REQUEST FOR PRODUCTION NO. 7:**

2       All photographs, films, audiotapes, videotapes, video recordings, computer records,

3   "cell extraction videos," or similar videos made by ADC CORRECTIONAL STAFF

4   REGARDING the removal of Victor Parsons, Shawn Jensen, Stephen Swartz, Dustin

5   Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert

6   Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, or Charlotte

7   Wells from their cells.

8

9   **REQUEST FOR PRODUCTION NO. 8:**

10      All   DOCUMENTS   REGARDING   COMMUNICATIONS,   including   the

11  COMMUNICATIONS themselves, from ADC to Wexford Health Sources, Inc. on or

12  about September 21, 2012, pertaining in any part to deficiencies ADC has perceived in

13  Wexford's delivery of health care.  This production should include the September 21,

14  2012 letter referenced in the Arizona Republic article titled "Arizona Fines Provider of

15  Prison Health Care," written by Craig Harris, published on September 28, 2012, attached

16  as       Exhibit       A,       and       available       online       at

17  http://www.azcentral.com/news/articles/2012/09/28/20120928arizona-fines-provider-

18  prison-health-care.html.   This production should include ADC's correspondence to

19  Wexford as well as any internal documentation or correspondence relating to that

20  correspondence.

21

22  **REQUEST FOR PRODUCTION NO. 9:**

23      All   DOCUMENTS   REGARDING   COMMUNICATIONS,   including   the

24  COMMUNICATIONS themselves, from ADC to Wexford Health Sources, Inc. on or

25  about September 28, 2012, pertaining in any part to deficiencies ADC has perceived in

26  Wexford's delivery of health care.  This production should include the letter notifying

27  Wexford that Wexford has until October 22, 2012 to respond to ADC's letter of

28  September 21, 2012 referenced in the Arizona Republic article titled "Arizona Fines

1  Provider of Prison Health Care," written by Craig Harris, published on September 28,

2  2012, attached as Exhibit A, and available online at

3  http://www.azcentral.com/news/articles/2012/09/28/20120928arizona-fines-provider-

4  prison-health-care.html.   This production should include ADC's correspondence to

5  Wexford as well as any internal documentation or correspondence relating to that

6  correspondence.

7

8  **REQUEST FOR PRODUCTION NO. 10:**

9      All DOCUMENTS REGARDING COMMUNICATIONS, including the

10  COMMUNICATIONS themselves, from Wexford Health Sources, Inc. to ADC.  This

11  production should include the letter from Wexford to Charles Ryan pertaining to

12  deficiencies Wexford perceived in the prior existing ADC health care system and

13  referenced in the Arizona Republic article titled "Arizona Fines Provider of Prison Health

14  Care," written by Craig Harris, published on September 28, 2012, attached as Exhibit A,

15  and available online at

16  http://www.azcentral.com/news/articles/2012/09/28/20120928arizona-fines-provider-

17  prison-health-care.html.   This production should include Wexford's correspondence to

18  ADC as well as any internal documentation or correspondence relating to that

19  correspondence that is available to Defendants.

20

21  **REQUEST FOR PRODUCTION NO. 11:**

22      All other DOCUMENTS, COMMUNICATIONS, audits, evaluations, internal

23  correspondence, memoranda, minutes, and/or "cure notices" REGARDING in any part

24  deficiencies that ADC has perceived in Wexford's delivery of health care.

25      Plaintiffs note that these documents should have been produced previously as

26  responsive to topics 3-6 of the 30(b)(6) Deposition Duces Tecum that was noticed on

27  August 9, 2012, docketed as document 76, and responded to by Defendants on August 27,

28  2012 with a promise to produce all responsive documents.

1  **REQUEST FOR PRODUCTION NO. 12:**

2  All DOCUMENTS and COMMUNICATIONS REGARDING any attempted or

3  completed suicide at any ADC facility in Florence, Arizona between August 20, 2012 and

4  September 3, 2012.

5

6  **REQUEST FOR PRODUCTION NO. 13:**

7  All DOCUMENTS, in particular but not exclusively including photographs and

8  video recordings, REGARDING, depicting, or documenting the physical or mental

9  condition of Victor Parsons, Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia

10 Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne

11 Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, or Charlotte Wells after any of

12 these persons sustained an injury.

13

14 **REQUEST FOR PRODUCTION NO. 14:**

15 All DOCUMENTS that refer or relate to topics 1-16 listed on pages 8-9 of the

16 Notice of 30(b)(6) Deposition Duces Tecum, filed August 28, 2012, docketed as

17 document 98.  These DOCUMENTS should in particular but not exclusively include all

18 the records and reports for the period including January 1, 2011 through October 1, 2012

19 mentioned by Dr. Michael Adu-Tutu during his October 1, 2012 deposition, such as

20 agreements with outside dental providers (including "pool" providers and "registry"

21 providers), notes or memoranda REGARDING Dr. Adu-Tutu's conferences with ADC

22 STAFF, notes or memoranda REGARDING ADC's evaluation of the proposals submitted

23 in response to ADC's Request for Proposal Number ADOC12-00001105, notes or

24 memoranda REGARDING Dr. Adu-Tutu's efforts to recruit dental and other medical

25 providers, notes or memoranda REGARDING exit interviews with dental staff, quality

26 management reports, staffing reports, wait time reports, and equipment maintenance

27 reports.

28

1      Plaintiffs note that these documents should have been produced previously as

2  responsive to 30(b)(6) Deposition Duces Tecum filed August 28, 2012.

3  Dated:  October 12, 2012            **PERKINS COIE LLP**

4

5                            By:   s/ Matthew B. du Mée

                              Daniel C. Barr (Bar No. 010149)

6                              Jill L. Ripke (Bar No. 024837)

                              James A. Ahlers (Bar No. 026660)

7                              Kirstin T. Eidenbach (Bar No. 027341)

                              John H. Gray (Bar No. 028107)

8                              Thomas D. Ryerson (Bar No. 028073)

                              Matthew B. du Mée (Bar No. 028468)

9                              2901 N. Central Avenue, Suite 2000

                              Phoenix, Arizona 85012

10                            Telephone:  (602) 351-8000

                            Email:    dbarr@perkinscoie.com

11                                      rjipke@perkinscoie.com

                                    jahlers@perkinscoie.com

12                                    keidenbach@perkinscoie.com

                                    jhgray@perkinscoie.com

13                                    tryerson@perkinscoie.com

                                    mdumee@perkinscoie.com

14                            Daniel Pochoda (Bar No. 021979)

                            Kelly J. Flood (Bar No. 019772)

15                            James Duff Lyall (Bar No. 330045)*

                            **ACLU FOUNDATION OF**

16                            **ARIZONA**

                            3707 North 7th Street, Suite 235

17                            Phoenix, Arizona 85013

                            Telephone:  (602) 650-1854

18                            Email:    dpochoda@acluaz.org

                                      kflood@acluaz.org

19                                      jlyall@acluaz.org

20                            *Admitted pursuant to Ariz. Sup. Ct.

                            R. 38(f)

21

22

23

24

25

26

27

28

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:     dspecter@prisonlaw.com
           ahardy@prisonlaw.com
           snorman@prisonlaw.com
           ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
**ACLU NATIONAL PRISON
PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@npp-aclu.org
           afettig@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted
 in DC; practice limited to federal
 courts.
**Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:     cnmitchell@jonesday.com
           dkiernan@jonesday.com
           scalderon@jonesday.com
           srauh@jonesday.com

*Admitted *pro hac vice*

R. Scott Medsker (D.C. 976405)*
**JONES DAY**
51 Louisiana Avenue, NW
Washington, D.C. 20001-2113
Telephone:  (202) 879-3837
Email:     rsmedsker@jonesday.com

*Admitted *pro hac vice*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:    jlwilkes@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:    kmamedova@jonesday.com
          jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Victor Parsons;
Shawn Jensen; Stephen Swartz; Dustin
Brislan; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on October 12, 2012, I electronically transmitted the above

3   document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4   Notice of Electronic Filing to the following CM/ECF registrants:

5

6                         Michael E. Gottfried
                     Assistant Arizona Attorney General
7                      Michael.Gottfried@azag.gov

8                          Daniel P. Struck
                         Kathleen L. Wieneke
                         Timothy J. Bojanowski
9                            Rachel Love
                         Nicholas D. Acedo
10                        Courtney R. Cloman
                         Ashlee B. Fletcher
11                         Anne M. Orcutt
                   STRUCK WIENEKE, & LOVE, P.L.C.
12                       dstruck@swlfirm.com
                        kwieneke@swlfirm.com
13                      tbojanowski@swlfirm.com
                         rlove@swlfirm.com
14                       nacedo@swlfirm.com
                         ccloman@swlfirm.com
15                       afletcher@swlfirm.com
                         aorcutt@swlfirm.com
16

17                     *Attorneys for Defendants*

18

19                        Jennifer Alewelt
                            Asim Varma
                            Sarah Kader
20             ARIZONA CENTER FOR DISABILITY LAW
                     jalewelt@azdisabilitylaw.org
21                    avarma@azdisabilitylaw.org
                      skader@azdisabilitylaw.org
22

23           *Attorneys for Arizona Center for Disability Law*

24                            s/ Delana Freouf

25

26

27

28

# EXHIBIT A

**October 12, 2012 |**                  **10:47 am 68°**

## News



- Type Size: **A A A**
- 🖨 **Print**
- ✉ **Email**
- ⭐ **Most Popular**

# Arizona fines provider of prison health care

*by Craig Harris - Sept. 28, 2012 11:26 PM*
*The Republic | azcentral.com*

| Recommend |   42 people recommend this. Sign Up to see what your friends recommend. |

| Tweet | 4 |

The Arizona Department of Corrections has levied a $10,000 fine against Wexford Health Sources Inc., a new private medical-care provider for inmates that is accused of improperly dispensing medicine and wasting state resources.

- **Prison nurse tied to hepatitis C exposure at Buckeye facility**

The DOC called on Wexford to fix staffing problems, properly distribute and document medication for inmates, show a sense of urgency and communicate better with the state when problems occur.

Wexford was fined over the actions of a nurse who caused a hepatitis C scare in August at the Arizona State Prison Complex-Lewis in Buckeye, and for failing to properly report the problem to authorities.

Corrections Director Charles Ryan in a statement said the state's demands, called a cure notification, give the state and Wexford an opportunity to "improve communications and ensure the health care needs of the inmates incarcerated by the State of Arizona are being met."

Ryan was not available to answer questions. Bill Lamoreaux, a DOC spokesman, declined to answer specific questions about the matter.

Wexford was hired after the Republican-controlled Arizona Legislature pushed to privatize inmate health care to save money. The DOC in strongly worded letters to Wexford alleges the company forced the state to use public employees to fix its deficiencies. The amount of wasted tax dollars was not disclosed. Arizona houses close to 40,000 inmates.

Lamoreaux declined to answer if taxpayers were still saving money with Wexford's services.

The Pittsburgh-based company took over inmate care July 1 after winning a $349 million, three-year contract. The company plans to appeal the fine, according to Wexford spokesman Jason Rose. Wexford, in a letter to Ryan, contends the conditions of health care in the state prison system were poor and problems existed prior to privatization.

*The Arizona Republic* learned of the punishment after filing a public records request Friday. The state on Sept. 21 sent a seven-page letter to Wexford outlining the company's alleged deficiencies, according to documents obtained under the Arizona Public Records Law. The state on Friday notified Wexford it had until Oct. 22 to respond to the notice.

In that letter, the DOC says:

A Wexford nurse on Aug. 17, at the Arizona State Prison Complex-Perryville in

Goodyear, improperly administered medication to an inmate by having the inmate "lick the powdered medication from her own hand," instead of putting the medication in a small cup of water.

In August, the state learned that "a significant number of inmates may not have been receiving their medications as prescribed due to expired prescription(s) and inappropriate renewals or refills." The state said Wexford showed a "lack of urgency" to correct the problem, and the state had to deploy staff "to identify inmates in need of medication renewals."

An inmate was found hanging from a sheet in his housing unit in Florence on Aug. 23. The state determined that the inmate had not received his psychotropic medication for the entire month of August, prior to his hanging, and Wexford's failure to deliver the medication was a "significant, non-compliance issue." Records do not indicate if the inmate survived.

On Aug. 27, a nurse hired by Wexford contaminated a vial of insulin, potentially exposing roughly 100 inmates at the state prison in Buckeye to hepatitis C. Another Wexford nurse was aware of the problem Aug. 27, but she did not file an incident report until Sept. 4, violating policy. The state was forced to deploy additional compliance monitoring staff to correct the problem. It said Wexford failed to follow established nursing protocols, mismanaged documents and engaged in inadequate and inaccurate communication.

At the Goodyear prison, meanwhile, a known case of whooping cough, a reportable infectious disease, went unreported to DOC staff and Wexford's state-level management for 30 days, indicating a "lack of urgency" and a "lack of awareness of the situation's potential seriousness."

"This is more proof that privatization is not saving us money, not providing better services and is not any more efficient," said Caroline Isaacs, program director for the prison watchdog group American Friends Service Committee. "While the state clearly had its problems, just inserting another layer to the bureaucracy is no way to address the problems, and it complicates the matter."

Wexford, in a letter to Ryan, said it believed in being held accountable, but added the DOC "must recognize that the system that was in place less than 90 days ago was extremely weak." Wexford also said 34 people who were previously in state prison management positions were hired by the state as monitors, and that has created a void in "leadership and institutional knowledge that Wexford Health is working hard to fill."

Wexford said those monitors are the same people who allowed the system to get to its current state, and they have interfered with Wexford's efforts to provide appropriate health-care services to inmates.

Before the problems in Arizona, Wexford had issues in other states.

Clark County, Wash., declined to renew a contract with Wexford in 2009 at its county jail and juvenile-detention center after complaints that Wexford was not dispensing medications to inmates in a timely fashion.

And New Mexico terminated a statewide contract with Wexford in 2007 after an audit by that state's legislative finance committee found shortages of physicians, dentists and other prison medical staff, and noted that Wexford had failed to issue timely reports on the deaths of 14 inmates the previous year.

- Type Size: A A A
- Print
- Email

Remaining Views

MORE FROM AZCENTRAL

- **Most Popular**
- Arizona math teachers feel squeeze (azcentral.com | Arizona Republic Front Page)
- SHARE
- ...n finds 4 children home alone (azcentral.com | news)
- Teen swigs nitrogen drink, has stomach removed (azcentral.com | thebuzz)
- It may be kind to let go (azcentral.com | Arizona Republic Front Page)

MORE FROM THE WEB

- Here Are the Top 5 Most Miserable States in America (Bloomberg)
- Israelis Moving to Golan Heights As Development Booms (AL-Monitor)
- Would You Fire Someone For Refusing To Wear A "666" Sticker? (OPEN Forum)
- Gas prices and industry earnings: A few things to think about the next time you fill up (ExxonMobil's Perspectives Blog)

- Wife forces husband to strip naked, police say (azcentral.com | thebuzz)

- Teachers Avoid Loan Sharks, Using E-Payments (Visa Viewpoints)

[?]



**LATEST NEWS HEADLINES**

- 3 states could legalize marijuana
- Vice president debate: Biden, Ryan exchange blows on various issues
- 2 fatally shot in Prescott Valley apartment
- Drowning victim's body recovered from Padre Canyon
- Turkey detains Syrian jetliner
- Autopsy: 2 shots in head killed Mexican drug lord
- Mexico condemns shooting involving border agent
- Girl, 4, dies during Make-A-Wish trip
- Kirkpatrick-Paton race seen as competitive
- 2 brothers charged with raping drunk boy

Remaining Views