# Exhibit E

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001-2113
TELEPHONE: 202-879-3939 • FACSIMILE: 202-626-1700

Direct Number: (202) 879-3837
rsmedsker@jonesday.com

JP008786                    November 30, 2012

VIA EMAIL ONLY

Katherine E. Watanabe
Michael Gottfried
Office of the Attorney General
1275 W. Washington
Phoenix, AZ 85007

Dan Struck
Struck Wieneke & Love
3100 West Ray Road, Suite 300
Chandler, AZ 85226

                    Re:    *Parsons v. Ryan*

Dear Counsel:

     This letter responds to Ashlee Fletcher's November 29, 2012 letter regarding the collection and production of e-mails. As outlined below, Plaintiffs are agreeable to a number of Defendants' suggestions and believe that, based on these agreements, the burden of searching and producing e-mails will be significantly reduced.

     Plaintiffs agree with Defendants' request to remove Curt Czarsty, Sharon Bohm, Laurie Berg, and Sharon Malcolm from the custodian list. We request, however, that Defendants continue to preserve e-mails for these individuals. If subsequent discovery indicates that these individuals may have relevant, responsive information that is not available from other custodians, the parties can discuss the temporal scope and search terms for these accounts.

     Additionally, Plaintiffs propose omitting search terms 56 through 58 on the list attached to Ms. Fletcher's November 29 letter (Richard w/2 pratt; Charles w/2 ryan; Adu-tutu or adututu or "adu tutu"). Removing these terms will eliminate 313,214 documents that were retrieved solely because they included the name of Mr. Ryan, Mr. Pratt, or Dr. Adu-tutu.

     We strongly disagree, however, with Ms. Fletcher's suggestion that "many of" the e-mails retrieved by searching for the term "health" "are not likely to be related to Plaintiffs' claims…." Without any information as to the types of documents Defendants claim are not relevant despite referencing "health," that assertion can only be verified based on a collection and review of the documents. Absent such verification, those e-mails are clearly within the

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DUBAI • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MEXICO CITY • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

**JONES DAY**

Katherine Watanabe
November 30, 2012
Page 2

broad scope of relevant information that, if responsive, must be produced. If Defendants are aware of categories of documents that respond to the search for "health" but are categorically nonresponsive, Plaintiffs are, as always, willing to discuss how to facilitate a more efficient review and production of such documents.

Plaintiffs also agree that Defendants may limit the search of Contract Monitors' e-mail accounts to July 1, 2012 through the present <u>provided that</u> the Contract Monitor did not have a prior role with ADC that would have made him or her a custodian of similar relevant information. For example, while Carol Pearson is a Contract Monitor, her position with ADC prior to July 1, 2012 makes her a custodian of e-mails that are highly relevant and responsive to the issues in this case. If Defendants are agreeable to this modification on your proposal, please provide a list of all Contract Monitors and their position with ADC prior to July 1, 2012, if any. Plaintiffs will review the list and identify which individuals can be limited to the post-July 1, 2012 time period.

To facilitate a more efficient and focused review and production process, Plaintiffs propose a prioritization of custodians for review. By beginning with these custodians, the parties may be able to further narrow search terms and time periods for subsequent custodians. Specifically, Plaintiffs propose that Defendants begin with the following 14 custodians:

- Charles Ryan
- Richard Pratt
- Michael Adu-Tutu
- Jeffrey Sharp
- Ben Shaw
- Joe Profiri
- Jim Taylor
- Paulette Boothby
- Terry Allred
- Dennis Kendall
- Helena Valenzuela
- Matthew Musson
- Marlena Bedoya
- Mark Haldane*

Plaintiffs note that Dr. Sharp was not identified on the list of custodians in Ms. Fletcher's November 29 letter. As the parties agreed in e-mail correspondence on November 7, the custodians to be searched include any deponent who is a current Wexford employee and a prior ADC employee and who had an e-mail account while he or she was an ADC employee. Defendants' October 8, 2012 letter included a list reflecting that ADC's Barracuda e-mail

JONES DAY

Katherine Watanabe
November 30, 2012
Page 3

archiving system includes Dr. Sharp's e-mails. Accordingly, please update your custodian list to include any deponent who was a former ADC employee who now works for Wexford, per our agreement.

Plaintiffs also note that Defendants' custodian list omits Mr. Mark Haldane. ADC's organization chart includes a handwritten note indicating that Mr. Haldane is the Contract Monitor for Perryville. However, the Perryville reports largely appear to be either unsigned or signed by Ben Shaw or Paulette Boothby. If Mr. Haldane is the Contract Monitor for Perryville, please add him to the custodian list and prioritize the review and production of his e-mail. If he is not the Contract Monitor for Perryville, please identify that individual, add that person to the custodian list, and prioritize his or her e-mail in place of Mr. Haldane.

Plaintiffs are unable to agree to Defendants' suggestion to limit the search of Charles Ryan's and Richard Pratt's e-mails to March 22, 2012. Mr. Ryan's and Mr. Pratt's knowledge of the deficient health care provided to ADC's inmates, including when they were on notice of those issues, is a central issue in this case. Accordingly, Plaintiffs request that Defendants search all e-mails on or after January 1, 2011 through the present. We believe some of the agreements reached above will significantly reduce or eliminate the burden of doing so.

Finally, Plaintiffs note that some of the costs quoted in Defendants' November 29 letter seem unusually high. Based on our experience with review and production of e-mail and, using recent quotes we received for similar projects, Plaintiffs believe that it should cost substantially less than half of the figure you cite to conduct a first level and privilege review of 80,000 documents (40,000 e-mails with attachments). In short, we question whether the quoted figure of $786,700 for every 40,000 e-mails is accurate and would be happy to discuss with you how to find a lower cost vendor.

We also note that Defendants' letter indicated that it would cost $37,440 to use an outside vendor, but that it would cost $68,798 to purchase additional server space to store and process the e-mails. Our experience with outside ESI vendors is that you can "rent" space on a per GB basis.

We appreciate your thoughtful letter regarding ways to narrow the e-mail review and production process. Plaintiffs hope that Defendants are agreeable to our above responses. We suggest that Defendants re-run the searches based on the proposals contained in this letter and, if necessary, the parties can discuss additional reasonable methods of narrowing the review and production process.

**JONES DAY**

Katherine Watanabe
November 30, 2012
Page 4

                                                Sincerely,

                                                R. Scott Medsker