Thomas C. Horne Arizona Attorney General
OFFICE OF THE ATTORNEY GENERAL
Michael E. Gottfried, Bar No. 010623
Katherine E. Watanabe, Bar No. 027458
Lucy M. Rand, Bar No. 026919
Ashley B. Zuerlein, Bar No. 029541
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-7695
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov
Ashley.Zuerlein@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Courtney R. Cloman, Bar No. 023155
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons; *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan and Richard Pratt, in their official capacities,<br><br>Defendants. | NO. CV12-0601-PHX-NVW (MEA)<br><br>**DEFENDANTS' RESPONSE TO APRIL 18, 2013 COURT ORDER REGARDING EMAIL PRODUCTION** |

#3280037

Defendants continue to object to Plaintiffs' expansive email production request due to the undue burden it imposed. Defendants have already agreed to the production of emails for Ryan, Pratt and Adu-Tutu, which include approximately 13.7 GB of data and at least 66,913 emails.[1] On December 18, 2012, Defendants agreed to produce emails for an additional 44 employees absent an undue burden.[2] (Defendants' December 18, 2012, correspondence is attached hereto as Exhibit A). After performing data searches for the 44 additional employees, Defendants have determined that the sheer volume of the Plaintiffs' request creates an undue burden. Unfortunately, Plaintiffs' suggested methods to reduce this immense burden do nothing to simply or alleviate what is required.

ADC has already expended approximately $27,800 for ESI collection and are in the process of purchasing additional storage space which may cost as much as $68,000. Defendants must expend an additional $31,800 in programming fees associated with the extraction of email data from its EnCase system. (Guidance Software Service Estimate is attached hereto as Exhibit B.) Once extracted, the data must be converted into a form that can be bates stamped and redacted. This cannot be done in-house. Conversion services are estimated at $625 per gigabyte of data. (Epiq data processing cost confirmation attached hereto as Exhibit C.) Plaintiffs' full request (47 custodians) is estimated to cost $38,438 (61.5 GB). Conversion of the 14 "priority" employees is estimated at $17,813 (28.5 GB).[2] When limited to Ryan, Pratt and Adu-tutu costs are estimated at $8,556 (13.69 GB).

---

[1] This does not include data from approximately the end of November 2012, to date.

[2] Contrary to Plaintiffs' assertion, the parties did not have a finalized email request until December 2012. (Ex. A). Similarly, Defendants produced approximately 300 emails between December 2012 and January 2013. Further production was temporarily postponed due to numerous other document requests that were prioritized by Plaintiffs and Defendants effort to obtain a more efficient and cost effective manner of production.

## A.    <u>Search Terms</u>

Plaintiffs make it seem as if Defendants have only recently raised concerns over the scope of their request.  In fact, in light of the considerable burden, Defendants have repeatedly asked Plaintiffs to refine their request to eliminate excessively broad search terms.  For example, Defendants have requested that Plaintiffs exclude search terms that are likely to be found within employee signature lines, such as the following:

- "health" (270,000 emails; 87,004 documents; 357,004 total items),[3]
- "dental" (14,934 emails; 18,478 documents; 33,412 total items),
- "medical*" (209,232 emails; 80,482 documents; 289,714 total items),
- "mental" (34,006 emails; 45,082 documents; 79,088 total items),
- "nurse" (69,244 emails; 25,970 documents; 95,214 total items),
- "physician" (24,034 emails; 25,248 documents; 49,282 total items),
- "dr" (134,778 emails; 36,614 documents; 171,392 total items),
- "MD" (9,536 emails; 6052 documents; 15,588 total items),
- "RN" (96,054 emails; 14,244 documents; 110,298 total items),
- "LPN" (11,176 emails; 5,238 documents; 16,414 total items);
- "Wexford" (87,342 emails; 14,204 documents; 101,546 total items),
- "clinic" (52,264 emails; 21,456 documents; 73,720 total items),
- "Hospital*" (82,754 emails; 60,848 documents; 143,602 total items), and
- "Corizon"

(A copy of Defendants' search term report is attached hereto as Exhibit D.)  These search terms are so overly inclusive and general that they pull every email sent by a doctor, dentist, nurse, health or medical administrator.   They are not sufficiently tailored to identify responsive emails and result in an excessive number of irrelevant results.   To date, Plaintiffs have refused to exclude these terms.

## B.    <u>Number of Custodians</u>

Defendants object to the production of emails for all 47 identified employees as it creates an undue burden.   Based upon the current data available to Defendants, the

---

[3]     Defendants have asked ADC's IT department to rerun and confirm all email hits without limitation to a particular custodian.  These search results do not include data from approximately the end of November 2012, to data.  These results have been deduplicated within each employee's email account.  Based upon the parties' recent agreement, additional deduplication may occur.  Additionally, some search terms may overlap, with multiple different search terms occurring within the same email.

production of all 47 employees is approximately 117.2 GB or 640,262 emails.  After deduplication, Defendants estimate a reduction in the quantity of data to 61.5 GB or 375,000 emails with approximately 88,000 attachments.  Defendants anticipate that the attachments to many of these emails will require extensive redaction as they are likely to include security threat and physical plant information.

Charles Ryan and Richard Pratt are the only named defendants in this matter.  Any information in their possession would have been emailed directly to them and should be contained within their email accounts.  At a minimum, the email accounts of the following ADC employees are unlikely to produce information relevant to this litigation and create an undue burden given the quantity and costs of production.

- Joseph Nicoletti, IT
- Carol Pearson, Medical Record Monitor (108,021 emails) [4]
- Leon George, Chief Procurement Officer (20,076 emails)
- John Lee, Psychiatrist/Psychiatrist (2,748 emails)
- Joe Profiri, Contract Bed Administrator until July 2012 (handling private prison matters until July 2012) (158,498 emails)
- Ronda Lee, ADC Policy Unit Manager (does not deal with substantive policy issues) (35,142 emails)

Plaintiffs appear to be simply naming all people they think might have information, without any consideration of the burden and efficiency of their request.  Plaintiffs refuse to tailor their requests while they simultaneously refuse to share in the costs.

**C.      "Seed Set" Proposal**

As previously discussed with Plaintiffs' counsels, their proposed alternatives inappropriately increase the burden upon Defendants.  A "seed set" effectively requires Defendants to incur thousands of dollars in additional programming or conversion fees. (*See* April 2, 2013, correspondence to Plaintiffs' counsel, attached hereto as Exhibit E.) Plaintiffs have suggested that Defendants use Concordance document management

---

[4]      Email estimates are based upon the data currently contained in the EnCase system.  Defendants are unable to estimate the quantity of emails that will be impacted by the decision to deduplicate "across custodian."

software to refine and continually modify the applicable search terms.  To do so requires that Defendants either (1) manually convert or scan all emails (estimated to take several months) into Concordance, or (2) incur approximately $38,500 in fees to have an outside service convert the emails into a format capable of being searched and produced to Plaintiffs.

Moreover, despite Plaintiffs assertion that they are "not requesting the large volume of emails from 44" additional employees (dkt. 413, at 3-4), they have continued to do so.  All their proposal entails is Plaintiffs' "promise" that they will reevaluate the search terms again, after Defendants have expended additional programming fees.  History shows us that it is unlikely Plaintiffs' request will be significantly reduced.  It is more probable that the request will be expanded to include all 47 employees (Ryan, Pratt and Adu-Tutu, plus an additional 44 employees).  Plaintiffs' "seed set" approach merely postpones discussion of the 140 search terms to a later date on the basis that Plaintiffs "may" decide to tailor their requests.  In effect, this "seed set" proposal simply stretches out discovery, without any promise of a reduction in scope or expense.

**D.    Claw-Back Proposal**

Plaintiffs' insistence that Defendants produce *all* confidential security related documents without review or revision is unfathomable.  The claw-back provision only addresses waiver of privileges, not the unique prison security concerns.  Case law cited by Plaintiffs is both distinguishable and inapplicable within the Ninth Circuit.  In *Fleischer v. Phoenix Life Ins.,* No. 1:11-cv-08405-cm-jcf, 2012 BL 340929 (S.D. N.Y. Dec. 27, 2012), the emails at issue were potentially subject to an attorney-client privilege or work-product privilege.  Federal Rule of Evidence 502, addresses the inadvertent disclosure and waiver of these privileges.  It does not deal with the disclosure of the confidential and security-sensitive information at issue in this case.

#3280037

5

ADC has a statutory duty to provide for the safe and orderly operation of the state prison system.  This includes the protection of ADC inmates, staff and the public.[5]  The voluminous emails *and attachments* requested involve highly confidential security matters, including mental health, maximum security, detention, and security threat groups ("STG").  Production of these documents without review or redaction would create a severe security risk.

**E.**   **Defendants' Proposal**

If Plaintiffs require more than the emails of Ryan, Pratt and Adu-Tutu, Plaintiffs should be restricted to no more than 14 employees and ordered to share in the costs of this electronic discovery.  *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978). Should Plaintiffs share the costs, Defendants estimate that the conversion process for these 14 custodians will take approximately three weeks.  Production is anticipated to take approximately 6 months after conversion is completed.  Even this estimate will require additional staffing and expenses.  Given the current quantity of data requested, manual conversion of data into a producible format, is unlikely to be completed prior to the close of discovery.

RESPECTFULLY SUBMITTED this 22nd day of April, 2013.

Thomas C. Horne
ATTORNEY GENERAL


s/ Ashley Zuerlein
Lucy M. Rand

---

[5]   The courts have repeatedly acknowledged the severe security concerns associated with prison administration.  "Prison administrators are responsible for maintaining internal order and discipline for securing their institutions against unauthorized access or escape, and for rehabilitating … the inmates placed in their custody.  The Herculean obstacles to effective discharge of these duties are too apparent to warrant explication. Suffice it to say that the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.  Most require expertise, comprehensive planning, and the commitment of resources… For all of those reasons, courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.  Judicial recognition of that fact reflects no more than a healthy sense of realism."  *Procunier v. Martinez,* 416 U.S. 396, 404-405 (1974), overruled on other grounds, *Thornburgh v. Abbott,* 490 U.S. 401 (1989).

Michael E. Gottfried
Katherine E. Watanabe
Ashley B. Zuerlein
Assistant Attorneys General
1275 West Washington Street
Phoenix, Arizona  85007-2926

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
Anne Orcutt
**STRUCK WIENEKE & LOVE, P.L.C.**
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
*Attorneys for Defendants*

1  **CERTIFICATE OF SERVICE**

2       I certify that on April 22, 2013, I electronically transmitted the attached document

3  to the Clerk of the Court using the ECF System.   This document and the Notice of

4  Electronic Filing were automatically served on the same date to the following, who are

5  registered participants of the CM/ECF System:

6  Donald Specter:             dspecter@prisonlaw.com
   Alison Hardy:               ahardy@prisonlaw.com
7  Sara Norman:              snorman@prisonlaw.com
8  Corene T. Kendrick:       ckendrick@prisonlaw.com
   **PRISON LAW OFFICE**

9

10  Daniel Joseph Pochoda:    dpochoda@acluaz.org
   Kelly Joyce Flood:         kflood@acluaz.org
11  James Duff Lyall:          jlyall@acluaz.org
   **ACLU**

12

13  David Cyrus Fathi:        dfathi@npp-aclu.org
   Amy Fettig:               afettig@npp-aclu.org
14  **ACLU NATIONAL PRISON PROJECT**

15  Daniel Clayton Barr:     DBarr@perkinscoie.com
   Jill Louise Ripke:        jripke@perkinscoie.com
16  James Anthony Ahlers:   jahlers@perkinscoie.com
17  Kirstin T. Eidenbach:    keidenbach@perkinscoie.com
   John Howard Gray:     jhgray@perkinscoie.com
18  Matthew Benjamin de Mée mdumee@perkinscoie.com
   Amelia Morrow Gerlicher: agerlicher@perkinscoie.com
19  **PERKINS COIE, LLP**

20  Caroline N. Mitchell:    cnmitchell@jonesday.com
21  David C. Kiernan:       dkiernan@jonesday.com
   Sophia Calderón:      scalderon@jonesday.com
22  Sarah Rauh:             srauh@jonesday.com
23  R. Scott Medsker:      rsmedsker@JonesDay.com
   John Laurens Wilkes:   jlwilkes@jonesday.com
24  Kamilla Mamedova:    kmamedova@jonesday.com
25  Jennifer K Messina:    jkmessina@jonesday.com
   **JONES DAY**

26

27

28

#3280037                          8

Jennifer Ann Alewelt:          jalewelt@azdisabilitylaw.org
Asim Varma:                    avarma@azdisabilitylaw.org
Sarah Eve Kader:               skader@azdisabilitylaw.org
**ACDL**

s/ Barbara Ratter
Legal Secretary