# DEFENDANTS' EXHIBITS 1-6

# EXHIBIT 1

# EXHIBIT 1

| **From:** | Ashlee Fletcher |
|---|---|
| **Sent:** | Wednesday, May 29, 2013 5:15 PM |
| **To:** | 'Fathi, David' |
| **Cc:** | Parsons Team; Michael E. Gottfried; Lucy Rand; dspecter@prisonlaw.com; cnmitchell@jonesday.com; jalewelt@azdisabilitylaw.org |
| **Subject:** | RE: Eighth Joint Notice of Discovery Dispute - 1 of 3 |

David,

We will be opposing your motion to exceed the page limit, as it is unnecessary for the issue at hand.  Defendants will  also oppose Plaintiffs' combining of multiple issues into one discovery dispute.  Additionally, we will need more time to prepare our position to the "one-pager."  This is only fair given Plaintiffs had far more time to prepare their position than we have had to prepare ours.  Defendants will provide you with their position statement by next Wednesday.  Finally, exhibit fifteen does not need to be filed under seal.  If you have any questions regarding the above, please feel free to contact me.



STRUCK WIENEKE & LOVE

**Ashlee B. Fletcher**
**Attorney**
Direct: (480) 420-1631
afletcher@swlfirm.com
www.swlfirm.com

---

**From:** Fathi, David [mailto:dfathi@npp-aclu.org]
**Sent:** Wednesday, May 29, 2013 12:07 PM
**To:** Ashlee Fletcher
**Cc:** Parsons Team; Michael E. Gottfried; Lucy Rand; dspecter@prisonlaw.com; cnmitchell@jonesday.com; jalewelt@azdisabilitylaw.org
**Subject:** RE: Eighth Joint Notice of Discovery Dispute - 1 of 3

Dear Ashlee,

Thank you for your comments.  We plan to file the notice of discovery dispute on the morning of Monday, June 3.  If you would like us to include any position statement from defendants, please provide it, as well as any exhibits, by 5:00 p.m. PDT on Friday, May 31.

We will be including only selected pages from the Wexford powerpoint (Exh. 16), rather than the entire powerpoint.  I will send you our revised Exh. 16 as soon as it is available.

Please let us know if we may file the October 2012 Lewis monitoring report (Exh. 15) unsealed, or if you will require that it be filed under seal.

Finally, along with the notice of discovery dispute we will also be filing a motion to exceed the page limit. Please let us know if defendants will oppose that motion.

Thanks very much,

David C. Fathi*
Director, ACLU National Prison Project
915 15th St. N.W., 7th Floor
Washington, DC  20005
(202) 548-6603
dfathi@npp-aclu.org

*Not admitted in DC; practice limited to federal courts

---

**From:** Ashlee Fletcher [mailto:AFletcher@swlfirm.com]
**Sent:** Tuesday, May 28, 2013 7:55 PM
**To:** Fathi, David
**Cc:** Parsons Team; Michael E. Gottfried; Lucy Rand; Don Specter (dspecter@prisonlaw.com); cnmitchell@jonesday.com; jalewelt@azdisabilitylaw.org
**Subject:** RE: Eighth Joint Notice of Discovery Dispute - 1 of 3

David,

As you are aware, the Court advised that discovery disputes should be approximately *one* page. Plaintiffs' revised position statement is ten pages – not including the sixteen attached exhibits. This can hardly be considered a "one-pager." Moreover, much of the content in Plaintiffs' position statement is irrelevant and provides no support for the alleged disputes Plaintiffs have combined into one "Joint Notice." If Plaintiffs wish to raise multiple issues with the Court, they should do so by submitting separate discovery disputes on each desired subject. Combining a myriad of issues to create a lengthy brief is unnecessary, and is contrary to the express direction of the Court.

Defendants will provide their position statement, of appropriate length and in accordance with the Court's order, once Plaintiffs have condensed and separated their issues. If you have any questions regarding the above, please feel free to contact me.



STRUCK WIENEKE & LOVE
3100 West Ray Road  Suite 300   Chandler, Arizona 85226

**Ashlee B. Fletcher**
**Attorney**
Direct: (480) 420-1631
afletcher@swlfirm.com
www.swlfirm.com

**From:** Fathi, David [mailto:dfathi@npp-aclu.org]
**Sent:** Tuesday, May 28, 2013 12:57 PM
**To:** Dan Struck; Ashlee Fletcher; Anne Orcutt; Michael E. Gottfried; Lucy Rand
**Subject:** Eighth Joint Notice of Discovery Dispute - 1 of 3

Dear Counsel,

Attached is plaintiffs' revised draft of the Eighth Joint Notice of Discovery Dispute.  In the interest of efficiency, we have combined our two disputes (the parameters of plaintiffs' expert tours, and the ability of plaintiffs' counsel to observe defendants' expert tours) into a single Notice.  Because the exhibits are rather voluminous, this will arrive in three separate emails.

Please send us defendants' portion of the Joint Notice, and any exhibits, by COB on Friday, May 31.

Thanks very much,

David C. Fathi*
Director, ACLU National Prison Project
915 15th St. N.W., 7th Floor
Washington, DC  20005
(202) 548-6603
dfathi@npp-aclu.org

*Not admitted in DC; practice limited to federal courts*

This electronic mail transmission contains information from the law firm Struck Wieneke & Love, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 420-1600. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

# EXHIBIT 2

# EXHIBIT 2

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

---

| | | |
|---|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No.  **CV 12-00601-PHX-NVW**  **Phoenix, Arizona**  **November 30, 2012**  **2:00 p.m.** |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

---

BEFORE:  **THE HONORABLE NEIL V. WAKE**
UNITED STATES DISTRICT JUDGE

(*Scheduling Conference*)

Official Court Reporter:
Laurie A. Adams, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 43
Phoenix, Arizona 85003-2151
(602) 322-7256
Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1   Honor.  But one of the most important elements of a prison -- a

2   constitutional prison health care system is its ability to deal

3   with people who have serious chronic illnesses and with regard

4   to mental health prisoners who are seriously mentally ill who

5   are on psychotropic medications.  So our experts need to, in

6   order to be able to make an assessment of that, they do need

7   this information.  And this is the kind of thing that is

8   routinely produced in prison --

9           THE COURT:  Sounds like what you are looking for is

10  basically information at the level of general data, that you

11  don't need each and every prisoner with this condition and

12  their name on that list.

13          MR. FATHI:  Well, Your Honor, it may be possible if we

14  had a random sampling, that might be accurate.  But our experts

15  need to look at the medical records of, for example, 10

16  prisoners with HIV disease.

17          THE COURT:  Great.  You don't need the list of every

18  prisoner for that.

19          MR. FATHI:  Well, that's true, Your Honor.  But we

20  need to generate that sublist in some way that -- in which

21  there's no sampling bias.  And again, I will simply represent

22  to the Court that this is the kind of discovery that we obtain

23  routinely and then the expert, for example, picks every 10th

24  name or has some sort of sampling.

25          THE COURT:  I am concerned with the burden of this, so

─────── November 30, 2012 - Discovery Management Conference ───────

1  I'm going to take that very seriously.  And it doesn't really

2  much matter to me what other judges do.  I have the

3  responsibility to exercise judgment.  If others do it the same

4  as me, that's great.  If they do it less thoroughly than me, it

5  doesn't matter to me, that I'm going to do the job well, at

6  least to my mind.

7          I am concerned about the burden.  Well, I had all the

8  same stuff go on with the Maricopa County Jail case that I

9  inherited after 35 years of pendency.  And I got that case

10 prepared and tried in six months, so six months from the day I

11 got it.

12         MR. FATHI:  Obviously, Your Honor -- and, by the way,

13 my office is on that case as I'm sure you know.  So we're

14 familiar with the admirable speed with which that was

15 processed.

16         You are correct, Your Honor.  If there were some -- if

17 it were possible to agree on a sampling methodology then

18 perhaps we would not need a complete list.  But the important

19 thing, of course, is that there's a way for us and our experts

20 to get a representative sample.

21         THE COURT:  Yes, but what I'm remembering about that

22 case is that this -- and what I'm troubled about this case --

23 is here it looks like there are broad expansive requests for

24 data that requires creation of documents, not just pulling

25 something out of a folder and copying it.  And in that case, my

UNITED STATES DISTRICT COURT

November 30, 2012 - Discovery Management Conference

1    recollection, there was, yes, there were some difficulties at
2    first.  But after it shaked out, the lawyers dialogued about
3    what it is the experts actually needed and how that can be
4    generated in an economical way mand that's how it got done.
5         So I am not disposed to order sweeping, burdensome
6    discovery production from the defendant.  But I am disposed to
7    understand what the experts really need, the most
8    cost-effective ways to get something they can use.  And, in
9    fact, in the end, I didn't have to police that.  Once the
10   lawyers understood that, they accomplished it themselves.
11        So I suppose in general, Mr. Fathi, I'm not disposed
12   at all to make them create documents for you as a document
13   production now, but certainly not before we have class
14   certification resolved.
15        MR. FATHI:  Thank you, Your Honor.  We're certainly
16   willing and we will work with the defendants on a way of
17   reducing the burden.  But until today, it has been their
18   position that they will not produce any of that information
19   without individual releases.
20        THE COURT:  Actually, that's a different issue.  And
21   my general sense on that is, I thought I had resolved that with
22   a protective order I entered earlier so that I would have to
23   totally rethink that to come to a conclusion that individual
24   releases are necessary.  I'm actually concerned not about that
25   issue, but about the unreasonable burden.

# EXHIBIT 3

# EXHIBIT 3

1   Arizona Attorney General Thomas C. Horne
    Office of the Attorney General
2   Michael E. Gottfried, Bar No. 010623
    Katherine E. Watanabe, Bar No. 027458
3   Lucy M. Rand, Bar No. 026919
    Ashley B. Zuerlein, Bar No. 029541
4   Assistant Attorney General
    1275 W. Washington Street
5   Phoenix, Arizona 85007-2926
    Telephone: (602) 542-4951
6   Fax: (602) 542-7670
    Michael.Gottfried@azag.gov
7   Katherine.Watanabe@azag.gov
    Lucy.Rand@azag.gov
8   Ashley.Zuerlein@azag.gov

9   Daniel P. Struck, Bar No. 012377
    Kathleen L. Wieneke, Bar No. 011139
10  Rachel Love, Bar No. 019881
    Timothy J. Bojanowski, Bar No. 22126
11  Nicholas D. Acedo, Bar No. 021644
    Courtney R. Cloman, Bar No. 023155
12  Ashlee B. Fletcher, Bar No. 028874
    Anne M. Orcutt, Bar No. 029387
13  STRUCK WIENEKE & LOVE, P.L.C.
    3100 West Ray Road, Suite 300
14  Chandler, Arizona  85226
    Telephone:  (480) 420-1600
15  Fax:  (480) 420-1696
    dstruck@swlfirm.com
16  kwieneke@swlfirm.com
    rlove@swlfirm.com
17  tbojanowski@swlfirm.com
    nacedo@swlfirm.com
18  ccloman@swlfirm.com
    afletcher@swlfirm.com
19  aorcutt@swlfirm.com
    *Attorneys for Defendants*
20
              UNITED STATES DISTRICT COURT
21                DISTRICT OF ARIZONA

22  Victor Parsons, *et al.*, on behalf of themselves      NO. 2:12-cv-00601-NVW
    and all others similarly situated; and Arizona
23  Center for Disability Law,
                                    Plaintiffs,            DEFENDANTS' OBJECTION TO
24              v.                                         PLAINTIFFS' REQUEST TO
                                                          ENTER DEFENDANTS'
25  Charles Ryan, Director, Arizona Department             PROPERTY
    of Corrections; and Richard Pratt, Interim
26  Division Director, Division of Health Services,
    Arizona Department of Corrections, in their
27  official capacities,
                                    Defendants.
28

1    On January 4, 2013, Plaintiffs filed a "Notice of Service of Plaintiffs' Request to

2    Enter Defendants' Property for the Purpose of Expert Inspections."  *See* Doc. 317.  On

3    that same date, Plaintiffs served Defendants with their Request.

4    While Defendants do not necessarily object to permitting Plaintiffs' experts to

5    conduct an inspection of certain ADC facilities, Defendants do object to the timing of

6    such inspections and the overbroad nature by which Plaintiffs make their request.

7    Defendants' objections are outlined below.

8    **I.    EXPERT INSPECTIONS SHOULD NOT BE PERMITTED PRIOR TO A**

9    **DETERMINATION ON CLASS CERTIFICATION.**

10   This case is not a class action, it is a case consisting of 14 individually named

11   Plaintiffs and the Arizona Center for Disability Law.  Plaintiffs' request to inspect specific

12   ADC facilities is premature and may lead to the expenditure of unnecessary resources and

13   expenses.

14   At the November 30, 2012 discovery management conference, the Court expressed

15   its disapproval of placing unnecessary burdens on Defendants during discovery –

16   especially given that much of the discovery could be futile if a class is not certified.  *See*

17   Ex. 1 (Transcript of November 30, 2012 discovery management conference) at 30, 35, 36,

18   37, 42, 44.  Moreover, the Court noted its concern Plaintiffs may not be entitled to much

19   of the information they seek if the class is not certified.  *Id.* at 43.  Further, the Court

20   noted the lawsuit is currently about the 14 named Plaintiffs and specifically stated, "And

21   that's what this lawsuit is about.  And we have all agreed that this other discovery is not

22   really pertinent or necessary to the class certification."  *Id.*  Most notable with regard to

23   the issue of expert tours is the Court's statement, "I am worried about not burdening the

24   defendants with a lot of production that is just grossly related rather than finely related to

25   what their experts' methodologies and plans are going to be."  *Id.* at 44.  Allowing

26   Plaintiffs to conduct expert tours before a determination of class certification would do

27   just that – burden Defendants with unnecessary discovery that may not be relevant.  The

28   time and effort for attorneys and staff to facilitate the tours is great.  Facilities would have

2

1    to accommodate for each expert's presence and adjust security and staffing levels
2    accordingly.   Attorneys from each side would need to be present each day an expert
3    toured a facility.   This burden is heavy considering Plaintiffs propose tours occurring
4    almost every day for over two months, many days involve two experts at two separate
5    facilities, only further increasing the manpower and work necessary to accomplish these
6    tours.

7        Due to the burden, expense, and time involved in allowing Plaintiffs' experts to
8    tour many ADC facilities, Defendants informed Plaintiffs of their objection to allowing
9    expert tours prior to a determination on class certification.   Plaintiffs, however, chose to
10   serve their Request to conduct expert tours, prior to a class certification determination.   It
11   is the prematurity of Plaintiffs' request that Defendants object to.

12   **II.    PLAINTIFFS' REQUEST TO INSPECT IS OVERBROAD AND BEYOND**
13   **THE SCOPE OF WHAT DEFENDANTS AGREED TO.**

14       Despite Defendants' objection to the timing of Plaintiffs' Request, defense counsel
15   has frequently communicated with Plaintiffs' counsel regarding the logistics of the tours –
16   *if and when* a class is certified.   Counsel for both parties have discussed certain particulars
17   regarding expert tours (such as when counsel should be present during the tours,
18   scheduling issues, whether photographs will be permitted and what the procedure will be
19   for taking photographs, the parameters with respect to experts talking to employees of
20   ADC or Wexford – such as an agreement that statements made by employees are not
21   binding on the Defendants and not subject to admission pursuant to 801(d)(2)).

22       There has also been no agreement as to the scope of the records to be reviewed.
23   Defendants assert that the experts should review a random sample of medical records.
24   Plaintiffs want to "cherry-pick" records, which in Defendants' view is an unfair sampling
25   of records and will not produce an accurate picture of the health care delivery system.

26       Even though these items have been discussed in the abstract, no agreement was
27   reached prior to Plaintiffs serving their Request.   More importantly, Defendants have
28   expressly informed Plaintiffs on multiple occasions that they will not agree to expert tours

3

of the facilities until a class is certified in this matter and if a class is certified.  As such, dialogue between counsel regarding expert tours has been an "if and when" discussion. Defendants understand that Plaintiffs deserve to set aside dates for these tours, but suggest that they be set for dates in March or April.

## III.   **CONCLUSION**

Because conducting expert tours may be futile at this stage and because the parties have not yet reached an agreement, Defendants formally object; at this time, to Plaintiffs' Request to Enter Defendants' Property for the purposes of allowing their experts to conduct expert tours.  Should the class be certified, Defendants are open and willing to further discussions regarding tours of ADC facilities by Plaintiffs' experts.

DATED this   25th   day of January 2013.

STRUCK WIENEKE & LOVE, P.L.C.

By /s/ Ashlee B. Fletcher
    Daniel P. Struck
    Kathleen L. Wieneke
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    Courtney R. Cloman
    Ashlee B. Fletcher
    Anne M. Orcutt
    STRUCK WIENEKE & LOVE, P.L.C.
    3100 West Ray Road, Suite 300
    Chandler, Arizona  85226

    Arizona Attorney General Thomas C. Horne
    Office of the Attorney General
    Michael E. Gottfried
    Katherine E. Watanabe
    Lucy M. Rand
    Ashley B. Zuerlein
    Assistant Attorney General
    1275 W. Washington Street
    Phoenix, Arizona 85007-2926

    *Attorneys for Defendants*

2721286.1

4

1
COPIES of the foregoing e-mailed this
25th day of January, 2013 to:

2

3
Caroline N. Mitchell
cnmitchell@jonesday.com

4
Jennifer Alewelt
jalewelt@azdisabilitylaw.org

5

6
David Cyrus Fathi
dfathi@npp-aclu.org

7
Donald Specter
dspecter@prisonlaw.com

8

9
/s/ *Ashlee B. Fletcher*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

### UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

---

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>                    Plaintiffs,<br><br>vs.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>                    Defendants. | No.  **CV 12-00601-PHX-NVW**<br><br>**Phoenix, Arizona**<br>**November 30, 2012**<br>**2:00 p.m.** |

---

BEFORE:  **THE HONORABLE NEIL V. WAKE**
UNITED STATES DISTRICT JUDGE

(*Scheduling Conference*)

Official Court Reporter:
Laurie A. Adams, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 43
Phoenix, Arizona 85003-2151
(602) 322-7256
Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

───── November 30, 2012 - Discovery Management Conference ─────

1   unrealistic -- recurring, unrealistic expectations on both

2   sides, then the collateral benefit of a discovery master is to

3   have the benefit of that much more extensive dialogue with

4   someone who is neutral and independent and experienced and can

5   just get more sober perspectives on both sides.

6           So I think at this time, I don't need to really enter

7   an order as such.  I will leave you with the directive that I'm

8   accepting your mutual agreement to schedule a meet-and-confer

9   within 48 hours upon request.  And if things don't improve, we

10  can come back and deal with a next step.

11          Again, Mr. Struck is right.  The defendants are

12  entitled to know what they are being sued for.  And they are

13  entitled to not just the minimal pleadings but the disclosures

14  required by Rule 26 and appropriate contention interrogatories

15  to -- they are entitled to that.  They don't have to take

16  depositions to find out that.  With proper requests, the

17  plaintiffs have to tell them before they take the depositions.

18          So I'm expecting all of this to be processed in the

19  ways that are efficient for everyone where the plaintiffs do

20  their part so the defendants don't have unnecessary and

21  unreasonable burdens and where the plaintiffs can fairly get

22  discovery that is related to their focused contentions.  And I

23  don't see this as a fishing expedition on either side.  No one

24  should have to do that.

25          All right.  Now, Mr. Fathi, there were some things in

```
┌─ November 30, 2012 - Discovery Management Conference ─┐
```

1    Honor.  But one of the most important elements of a prison -- a

2    constitutional prison health care system is its ability to deal

3    with people who have serious chronic illnesses and with regard

4    to mental health prisoners who are seriously mentally ill who

5    are on psychotropic medications.  So our experts need to, in

6    order to be able to make an assessment of that, they do need

7    this information.  And this is the kind of thing that is

8    routinely produced in prison --

9            THE COURT:  Sounds like what you are looking for is

10   basically information at the level of general data, that you

11   don't need each and every prisoner with this condition and

12   their name on that list.

13           MR. FATHI:  Well, Your Honor, it may be possible if we

14   had a random sampling, that might be accurate.  But our experts

15   need to look at the medical records of, for example, 10

16   prisoners with HIV disease.

17           THE COURT:  Great.  You don't need the list of every

18   prisoner for that.

19           MR. FATHI:  Well, that's true, Your Honor.  But we

20   need to generate that sublist in some way that -- in which

21   there's no sampling bias.  And again, I will simply represent

22   to the Court that this is the kind of discovery that we obtain

23   routinely and then the expert, for example, picks every 10th

24   name or has some sort of sampling.

25           THE COURT:  I am concerned with the burden of this, so

────────── November 30, 2012 - Discovery Management Conference ──────────

1   I'm going to take that very seriously.  And it doesn't really

2   much matter to me what other judges do.  I have the

3   responsibility to exercise judgment.  If others do it the same

4   as me, that's great.  If they do it less thoroughly than me, it

5   doesn't matter to me, that I'm going to do the job well, at

6   least to my mind.

7          I am concerned about the burden.  Well, I had all the

8   same stuff go on with the Maricopa County Jail case that I

9   inherited after 35 years of pendency.  And I got that case

10  prepared and tried in six months, so six months from the day I

11  got it.

12         MR. FATHI:  Obviously, Your Honor -- and, by the way,

13  my office is on that case as I'm sure you know.  So we're

14  familiar with the admirable speed with which that was

15  processed.

16         You are correct, Your Honor.  If there were some -- if

17  it were possible to agree on a sampling methodology then

18  perhaps we would not need a complete list.  But the important

19  thing, of course, is that there's a way for us and our experts

20  to get a representative sample.

21         THE COURT:  Yes, but what I'm remembering about that

22  case is that this -- and what I'm troubled about this case --

23  is here it looks like there are broad expansive requests for

24  data that requires creation of documents, not just pulling

25  something out of a folder and copying it.  And in that case, my

UNITED STATES DISTRICT COURT

—————— November 30, 2012 - Discovery Management Conference ——————

1   recollection, there was, yes, there were some difficulties at

2   first.  But after it shaked out, the lawyers dialogued about

3   what it is the experts actually needed and how that can be

4   generated in an economical way mand that's how it got done.

5        So I am not disposed to order sweeping, burdensome

6   discovery production from the defendant.  But I am disposed to

7   understand what the experts really need, the most

8   cost-effective ways to get something they can use.  And, in

9   fact, in the end, I didn't have to police that.  Once the

10  lawyers understood that, they accomplished it themselves.

11       So I suppose in general, Mr. Fathi, I'm not disposed

12  at all to make them create documents for you as a document

13  production now, but certainly not before we have class

14  certification resolved.

15       MR. FATHI:  Thank you, Your Honor.  We're certainly

16  willing and we will work with the defendants on a way of

17  reducing the burden.  But until today, it has been their

18  position that they will not produce any of that information

19  without individual releases.

20       THE COURT:  Actually, that's a different issue.  And

21  my general sense on that is, I thought I had resolved that with

22  a protective order I entered earlier so that I would have to

23  totally rethink that to come to a conclusion that individual

24  releases are necessary.  I'm actually concerned not about that

25  issue, but about the unreasonable burden.

UNITED STATES DISTRICT COURT

---

November 30, 2012 - Discovery Management Conference

1  provide that information to them.

2       MR. FATHI:  Well, there's the rub, Your Honor.

3  Apparently, they are not willing to produce this until after

4  the class is certified which may be two months from now.

5       THE COURT:  I guess what I want you to do now is move

6  forward diligently and in good faith.  And it may not matter.

7  By the time you get this focused and communicated -- I think

8  they are entitled, and I have done this in other cases, they

9  are entitled to understand what your experts are going to try

10  to do.  And because they think it's not going to pass

11  scientific muster, that's a good reason not for them to be

12  burdened and they can present to me a dispute.

13       Now, the chances of that happening seem very remote.

14  I mean, if your experts have done this before and they know

15  what they are doing and they are qualified, they may or may not

16  be persuasive but the chance is pretty remote that they won't

17  have a methodology that will pass scientific muster.

18       But they are entitled to know that so they can also

19  think independently about the degree of burden.  Because a lot

20  of times you ask for stuff, you all litigate this so you know a

21  lot about prisons, but a lot of people, they ask for stuff and

22  they don't understand the burden on the other side.

23       So I expect you all, both, to dialogue and to work

24  together to minimize the burden on both sides.  So that's what

25  I'm saying, and --

---

UNITED STATES DISTRICT COURT

November 30, 2012 - Discovery Management Conference

1              MR. FATHI:  Absolutely, Your Honor.  But we are very

2     concerned by Mr. Struck's position that until and unless the

3     class is certified individual releases are required.

4              THE COURT:  He has just retrenched from that.

5              MR. FATHI:  I believe his position was that individual

6     releases are not required only after the class is certified.

7              THE COURT:  I'm sorry.  Is that what you said, Mr.

8     Struck?

9              MR. STRUCK:  Your Honor, I didn't say that.  What I

10    said was the requests, as they are today, are overbroad, unduly

11    burdensome for us to produce them prior to the class

12    certification.  So that's -- we will endeavor to work with the

13    plaintiffs to figure out exactly what it is they want, because

14    right now their requests are extremely broad what their experts

15    need and try and come up with what it is, come up with a

16    methodology for obtaining that information so if and when the

17    class is certified we can obtain that information for them.

18    Because if the class isn't certified, I don't believe they are

19    entitled to all that information.

20             THE COURT:  I am concerned about that, too.  Until the

21    class is certified, you have got, what, 15 named plaintiffs?

22             MR. FATHI:  14, Your Honor.

23             THE COURT:  And that's what this lawsuit is about.

24    And we have all agreed that this other discovery is not really

25    pertinent or necessary to the class certification.  However, I

November 30, 2012 - Discovery Management Conference

1    think what I want you all -- I want you all --  you know, I

2    want you all to dialogue and explore this because I want to

3    have it ready to go.  And it may be that it just doesn't matter

4    whether they can get this all done or not, that by the time you

5    all understand this we'll be close to or have a ruling on the

6    class certification.

7              And I'm more concerned about -- I'm really not worried

8    about the individual consents.  I am worried about not

9    burdening the defendants with a lot of production that is just

10   grossly related rather than finely related to what their

11   experts' methodologies and plans are going to be.

12             MR. SPECTER:  We understand that, Your Honor, and we

13   will work with the defendants.

14             Could -- are you going to set a hearing for the

15   argument on the class certification motion?

16             THE COURT:  You know, I will.  I just -- I will have

17   to look at my calendar.  I think I have got a lot of trials at

18   that time.  We'll e-mail with you and pick a time that you all

19   can do, but it will almost certainly be on a Friday because

20   that's when I have my civil motions.

21             MR. SPECTER:  So as Mr. Fathi said, that's -- the

22   scheduling of that is important to the rest of the case, as

23   know, as you just identified.

24             THE COURT:  Well, Nick, pull up the calendar.  And how

25   are we on Friday, January 18?

Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Katherine E. Watanabe, Bar No. 027458
Lucy M. Rand, Bar No. 026919
Ashley B. Zuerlein, Bar No. 029541
Assistant Attorney General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov
Ashley.Zuerlein@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Courtney R. Cloman, Bar No. 023155
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>                                        Plaintiffs,<br><br>             v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>                                        Defendants. | NO. 2:12-cv-00601-NVW<br><br><br>**DEFENDANTS' OBJECTION TO PRISONER PLAINTIFFS' REQUEST TO ENTER DEFENDANTS' PROPERTY FOR THE PURPOSE OF EXPERT INSPECTIONS (MODIFIED)** |

On February 21, 2013, Plaintiffs filed a "Notice of Service of Prisoner Plaintiffs' Request to Enter Defendants' Property for the Purpose of Expert Inspections (Modified)." *See* Doc. 358. On that same date, Plaintiffs served Defendants with their Request.

While Defendants do not necessarily object to permitting Plaintiffs' experts to conduct an inspection of certain ADC facilities, and have agreed to dates, Defendants do object to the overbroad nature by which Plaintiffs make their request. Defendants' objections are outlined below.

## I.    PLAINTIFFS' REQUEST TO INSPECT IS OVERBROAD AND UNDULY BURDENSOME

Defense counsel has frequently communicated with Plaintiffs' counsel regarding the logistics of the tours; however, a final agreement has not yet been reached. Counsel for both parties have discussed certain particulars regarding expert tours (such as when counsel should be present during the tours, scheduling issues, whether photographs will be permitted and what the procedure will be for taking photographs, the parameters with respect to experts talking to employees of ADC or Corizon – such as an agreement that statements made by employees are not binding on the Defendants and not subject to admission pursuant to 801(d)(2)).

Additionally, there has been no agreement as to the scope of the records to be reviewed. Defendants assert that the experts should review a random sample of medical records. Plaintiffs want to "cherry-pick" records, which in Defendants' view results in an unfair sampling of records and will not produce an accurate picture of the health care delivery system.

Further, Defendants object to many of the "lists" Plaintiffs have demanded. Many of these lists will require an unduly burdensome amount of time to compile and again afford Plaintiffs the opportunity to "cherry-pick" records. Specifically, Defendants also object to Plaintiffs' final, catch-all request, "Other records of selected prisoners will also be inspected." Defendants will not agree to allow Plaintiffs unfettered access to any record of every inmate in ADC custody. Plaintiffs' request permits such review and is

deficiently overbroad because it covers documents and inmates irrelevant to the claims in Plaintiffs' Complaint.

Furthermore, Defendants object to any expert's tour of a facility that exceeds one day. For example, Plaintiffs propose Cohn tour the Eyman facility on April 8 and 9; Vail and Haney tour the Eyman facility on May 22 and 23; Cohen tour the Florence facility on April 10 and 11; Shulman tour the Florence facility on May 2 and 3; Vail and Haney tour the Florence facility on May 20 and 21; Shulman tour the Lewis facility on April 15 and 16; Wilcox tour the Lewis facility on April 16 and 17; Wilcox tour the Perryville facility on April 8 and 9; Shulman tour the Perryville facility on April 17 and 18; Stewart tour the Tucson facility on April 8 and 9; Cohen tour the Tucson facility on May 22 and 23; Wilcox tour the Winslow facility on May 23 and 24; Shulman tour the Yuma facility on April 29 and 30; and Wilcox tour the Yuma facility on May 15 and 16.

It is unnecessary for any of Plaintiffs' experts to spend more than one day at each facility. Plaintiffs propose that each facility be toured by at least two, and up to five, of their six experts over the course of their proposed expert tour schedule. Given that multiple experts will already be touring each facility, it is unnecessary to burden the facility with additional, duplicative tours by the same expert. Moreover, Defendants object to any "follow-up" tour Plaintiffs may wish to conduct at a later time. Plaintiffs will be provided with one opportunity to tour ADC facilities.

Although these items have been discussed in the abstract, no final agreement regarding specifics was reached prior to Plaintiffs serving their Request. As such, dialogue between counsel regarding expert tours has been an "if and when" discussion.

## II.   CONCLUSION

The parties are currently in discussions regarding the timing, scope, and logistics of the tours. As such, and because no agreement has been reached, Defendants formally object, at this time, to Plaintiffs' Request to Enter Defendants' Property for the purposes of allowing their experts to conduct expert tours.

2734352.1

3

1           DATED this __14th__ day of March 2013.

2                        STRUCK WIENEKE & LOVE, P.L.C.

3

4                   By /s/Ashlee B. Fletcher

5                    Daniel P. Struck
                   Kathleen L. Wieneke

6                    Rachel Love
                   Timothy J. Bojanowski

7                    Nicholas D. Acedo
                   Courtney R. Cloman

8                    Ashlee B. Fletcher
                   Anne M. Orcutt

9                    STRUCK WIENEKE & LOVE, P.L.C.
                   3100 West Ray Road, Suite 300

10                   Chandler, Arizona  85226

11                    Arizona Attorney General Thomas C. Horne
                   Office of the Attorney General

12                    Michael E. Gottfried
                   Katherine E. Watanabe

13                    Lucy M. Rand
                   Ashley B. Zuerlein

14                    Assistant Attorney General
                   1275 W. Washington Street

15                   Phoenix, Arizona 85007-2926

16                   *Attorneys for Defendants*

17

18

19

20

21

22

23

24

25

26

27

28

COPIES of the foregoing e-mailed this
__14th__ day of March, 2013 to:

Caroline N. Mitchell
cnmitchell@jonesday.com

Jennifer Alewelt
jalewelt@azdisabilitylaw.org

David Cyrus Fathi
dfathi@npp-aclu.org

Donald Specter
dspecter@prisonlaw.com

/s/ Ashlee B. Fletcher

# EXHIBIT 4

# EXHIBIT 4

## Amy Bender

| | |
|---|---|
| **From:** | Dan Struck |
| **Sent:** | Friday, May 03, 2013 8:27 AM |
| **To:** | dfathi@npp-aclu.org |
| **Cc:** | Don Specter (dspecter@prisonlaw.com); Michael E. Gottfried; Ashley Zuerlein; Lucy Rand |
| **Subject:** | RE: Plaintiffs' expert inspections |

David,

Your email comes as a surprise, as it appeared to us that the parties had already reached an agreement on the parameters of most aspects of these tours, and were close to reaching an agreement on the remaining portions.   We also don't agree that two short phone calls, which is all the time that has been expended on this issue, was excessive or unnecessary.  It also appears that you are now asking to withdraw much of what we have already agreed upon with respect to these tours, which we are not willing to do.

It makes sense to set the parameters prior to the tours so that we avoid unnecessary delays or phone calls to the court while the tours are underway.   It is also important that the scope of these tours are clearly defined so that they don't interfere with the safety, security and general operation of the prisons. In light of the fact that you haven't even provided us with any dates for these tours, other than sometime in July through September, it is really not an problem to get the remaining issues hammered out ahead of time.

With respect to your request that plaintiffs' counsel accompany our experts when they tour the facility, please provide us with authority to support this proposition.   Indeed, this has never been required on any case we have been involved with, including cases we have litigated against the ACLU National Prison Project.

Finally, we are not sure what you are referring to with respect to your statement that it is our position that our clients can "interfere with the methodology" your experts use to select records, with the exception of burden.  We don't recall discussing anything other than a concern with respect to burden in our last telephone call.   If you could be more specific as to what you are concerned about, that would be helpful.

Dan



STRUCK WIENEKE & LOVE
3100 West Ray Road, Suite 300   Chandler, Arizona 85226

## Daniel P. Struck
Direct: (480) 420-1620
dstruck@swlfirm.com
www.swlfirm.com

---

**From:** Fathi, David [mailto:dfathi@npp-aclu.org]
**Sent:** Friday, May 03, 2013 7:55 AM
**To:** Lucy Rand; Michael E. Gottfried; Katherine Watanabe; Ashley Zuerlein; jalewelt@azdisabilitylaw.org; skader@azdisabilitylaw.org; avarma@azdisabilitylaw.org; Fettig, Amy; kflood@acluaz.org; jlyall@acluaz.org; danpoc@cox.net; dpochoda@acluaz.org; Quereshi, Ajmel; scalderon@jonesday.com; dkiernan@jonesday.com; kmamedova@jonesday.com; rsmedsker@jonesday.com; jkmessina@jonesday.com; cnmitchell@jonesday.com; srauh@jonesday.com; jlwilkes@jonesday.com; dbarr@perkinscoie.com; mdumee@perkinscoie.com;

1

keidenbach@perkinscoie.com; agerlicher@perkinscoie.com; jhgray@perkinscoie.com; ahardy@prisonlaw.com; ckendrick@prisonlaw.com; snorman@prisonlaw.com; dspecter@prisonlaw.com; Nick Acedo; Tim Bojanowski; Courtney Cloman; Ashlee Fletcher; Rachel Love; Anne Orcutt; Dan Struck; Kathy Wieneke
**Cc:** Amy Bender; Therese Mayo; Kimberly Shadoan; Colleen Webb; Sherri Wolford; mlauritzen@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org; ACLU AZ 1; Stamm, Alex; Krase, Hilary; nbreen@jonesday.com; dkkerr@jonesday.com; mlandsborough@jonesday.com; treyes@jonesday.com; lwong@jonesday.com; dfreouf@perkinscoie.com; slawson@perkinscoie.com; sneilson@perkinscoie.com; docketphx@perkinscoie.com; cwendt@perkinscoie.com; edegraff@prisonlaw.com
**Subject:** Plaintiffs' expert inspections

Dan,

I write to follow up on our April 29 conversation about expert tours. We are in the process of obtaining the information we promised and will provide that soon. We also look forward to getting the information you promised to provide as soon as possible.

We are concerned that the process for negotiating the expert tours is becoming excessively burdensome and time consuming. In fact, neither Don nor I have ever spent so much time negotiating prison expert inspections. All of our experts have taken numerous prison tours, and they will all act reasonably so as not to overburden the prison staff. Therefore, we don't believe it is necessary for the parties to choreograph each step of the process. There is only a certain amount of time to do the inspections, and if we both approach the tours in a cooperative manner there shouldn't be any problems. Thus, I propose that we agree on general parameters, such as the date of the inspections, the areas of the inspections (such as housing units, clinics, etc.) the fact that the experts will speak to staff during the tour and review relevant documents, and leave it at that.

In addition, we request that you inform us when your experts are going to be inspecting the prisons and that your clients arrange for gate clearances so that plaintiffs' counsel can accompany them on the inspections. We believe that it is necessary to accompany your experts so we can have accurate and reliable first-hand knowledge of the information that your experts rely on for their opinions, just as defendants will be able to do when they accompany our experts. Please let me know whether this is acceptable to your clients.

Also, while we do not agree with your position that your clients may interfere with the methodology our experts use to select records (besides the issue of burden), if the Court agrees with your position, we will insist that we approve the methodology that your experts use for this task as well.

Thanks, and I look forward to hearing from you.

David

David C. Fathi*
Director, ACLU National Prison Project
915 15th St. N.W., 7th Floor
Washington, DC 20005
(202) 548-6603
dfathi@npp-aclu.org

*Not admitted in DC; practice limited to federal courts

**EXHIBIT 5**

.

**EXHIBIT 5**

1   Daniel Pochoda (Bar No. 021979)
    Kelly J. Flood (Bar No. 019772)
2   James Duff Lyall (Bar No. 330045)*
    **ACLU FOUNDATION OF ARIZONA**
3   3707 North 7th Street, Suite 235
    Phoenix, Arizona 85013
4   Telephone:  (602) 650-1854
    Email: dpochoda@acluaz.org
5           kflood@acluaz.org
            jlyall@acluaz.org
6   *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,
    Dustin Brislan, Sonia Rodriguez, Christina Verduzco,*
8   *Jackie Thomas, Jeremy Smith, Robert Gamez,*
    *Maryanne Chisholm, Desiree Licci, Joseph Hefner,*
9   *Joshua Polson, and Charlotte Wells, on behalf of*
    *themselves and all others similarly situated*
10
    **[ADDITIONAL COUNSEL LISTED ON**
11    **SIGNATURE PAGE]**

12                  UNITED STATES DISTRICT COURT

13                       DISTRICT OF ARIZONA

14  Victor Parsons; Shawn Jensen; Stephen Swartz;      No. CV 12-00601-PHX-NVW
    Dustin Brislan; Sonia Rodriguez; Christina           (MEA)
15  Verduzco; Jackie Thomas; Jeremy Smith; Robert
    Gamez; Maryanne Chisholm; Desiree Licci; Joseph
16  Hefner; Joshua Polson; and Charlotte Wells, on     **PRISONER PLAINTIFFS'**
    behalf of themselves and all others similarly      **REQUEST TO ENTER**
17  situated; and Arizona Center for Disability Law,   **DEFENDANTS' PROPERTY**
                                                       **FOR THE PURPOSE OF**
18                  Plaintiffs,                        **EXPERT INSPECTIONS**
                                                       **(SECOND REQUEST)**
19       v.

20  Charles Ryan, Director, Arizona Department of
    Corrections; and Richard Pratt, Interim Division
21  Director, Division of Health Services, Arizona
    Department of Corrections, in their official
22  capacities,

23                  Defendants.

24

25

26

27

28

1   PROPOUNDING PARTIES:        Prisoner Plaintiffs

2   RESPONDING PARTIES:         Defendants

3   REQUEST NUMBER:             Two

4   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

5          PLEASE TAKE NOTICE THAT, pursuant to Federal Rules of Civil Procedure 26

6   and 34(a)(2), Prisoner Plaintiffs Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia

7   Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne

8   Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells ("Prisoner

9   Plaintiffs") request that Defendants allow PRISONER PLAINTIFFS' COUNSEL and

10  Prisoner Plaintiffs' experts to INSPECT certain ADC prisons and confer with staff and

11  prisoners.

12         Prisoner Plaintiffs' experts are as follows:

13         a.     Pablo Stewart, M.D.

14         b.     Brie Williams, M.D., M.S.

15         For purposes of this request, "INSPECT" means to physically walk through,

16  observe, and photograph ADC prison facilities, INCLUDING:  clinical space available for

17  medical, dental, and mental health care; medication lines; housing available in the

18  ISOLATION and segregation units; kitchen facilities; intake or screening areas;

19  infirmaries and other inpatient facilities; a sample of general population and ISOLATION

20  cells; cells in which PRISONERS are housed during suicide and mental health watches;

21  and all areas to which PRISONERS in ISOLATION are taken or have access,

22  INCLUDING exercise enclosures, counseling/programming areas or offices, visiting

23  areas, law libraries, and suicide watch areas.  The term "INSPECT" also means to confer

24  with and interview HEALTH CARE STAFF and CORRECTIONAL STAFF, as well as to

25  confidentially meet with PRISONERS, to discover information regarding the provision of

26  HEALTH CARE to prisoners and conditions of confinement in ISOLATION.

The term "INSPECT" further means to review documents or records, INCLUDING: a sample of health needs requests received; a sample of grievances received related to the provision of health care or the conditions of confinement in ISOLATION; a sample of incident reports; and logbooks relating to PRISONERS' movement and activities within ISOLATION units; and for each facility, a list of all ADC PRISONERS who fit the below criteria, and a subset of these PRISONERS' records will be selected for review:

a.      PRISONERS who currently are chronic care patients, INCLUDING persons with diabetes, hypertension, congestive heart failure, cancer, Hepatitis, asthma, HIV/AIDS, kidney failure/dialysis, and pregnant patients;

b.      PRISONERS who currently are prescribed psychotropic medications, INCLUDING for each prisoner the mental health diagnoses and the medications and dosages;

c.      PRISONERS who currently are on the mental health caseload, INCLUDING for each prisoner the mental health diagnoses;

d.      PRISONERS in ISOLATION who have mental health diagnoses, INCLUDING for each prisoner the mental health diagnoses;

e.      PRISONERS who had serious suicide attempts in last two years;

f.      PRISONERS who were placed on suicide watch or any kind of mental health watch in the last year;

g.      PRISONERS who were admitted to outside hospitals and emergency rooms in last two years;

h.      PRISONERS who were admitted to any inpatient mental health facility in the last two years;

i.      PRISONERS who were referred to outside clinics and reason for referral in the past year;

1        j.       PRISONERS who have had dental extractions in the last two years;

2        k.       PRISONERS who have had medications prescribed for them by dentists in

3    the past two years;

4        l.       PRISONERS who received after hours care for dental problems in the past

5    year;

6        m.      PRISONERS who have been in ADC custody for more than five years;

7        n.       Documents listing the duration of ISOLATION for PRISONERS.

8        Other records of selected prisoners will also be inspected.

9        Therefore, Prisoner Plaintiffs request that subject to the above and following

10   definitions, Defendants allow PRISONER PLAINTIFFS' COUNSEL and Prisoner

11   Plaintiffs' experts to INSPECT the following ADC prisons and confer with prison staff

12   and prisoners on the following dates:

13       a.       Arizona State Prison Complex ("ASPC") - Florence, in Florence, Arizona

14               on August 14, 2013, from 8 a.m. to 5 p.m.

15               i.       August 14 – Williams

16       b.       ASPC-Eyman, in Florence, Arizona, on August 15, 2013, from 8 a.m. to

17               5 p.m. and August 16, 2013 from 8 a.m. to 12 noon.

18               i.       August 15-16 – Williams

19       c.       ASPC-Perryville, in Goodyear, Arizona, on August 16, 2013, from 1 p.m. to

20               5 p.m.

21               i.       August 16, 2013 - Williams

22       d.       ASPC-Yuma, in San Luis, Arizona, on July 23, 2013, from 8 a.m. to 5 p.m.

23               i.       July 23 – Stewart

24                                    **DEFINITIONS**

25       1.       "ADC" means the Arizona Department of Corrections, INCLUDING all its

26   subdivisions, agents, employees, contractors, and attorneys.

1    2.    "CORIZON" means Corizon, Inc.

2    3.    "CORRECTIONAL STAFF" means custody staff employed or paid by the

3    ADC to serve in a security or operational capacity.

4    4.    "DEFENDANTS" means Defendants Charles Ryan and Richard Pratt, and

5    their predecessors, successors, employees, subordinates, contractors, agents, and

6    attorneys.

7    5.    "HEALTH CARE" means the provision of care, INCLUDING adequate

8    diet, to address the mental health, medical, or dental needs of a PRISONER, whether

9    those needs arise as a result of injury, illness, disease, or other trauma, or care provided

10   for diagnostic or preventive purposes.

11   6.    "HEALTH CARE STAFF" means all staff employed or paid by the ADC,

12   WEXFORD, or HEALTH CARE SUBCONTRACTORS (other than CORRECTIONAL

13   STAFF) who are responsible for providing HEALTH CARE to ADC PRISONERS.

14   7.    "HEALTH CARE SUBCONTRACTOR" means any person or entity

15   contracting with the ADC or WEXFORD to provide HEALTH CARE to PRISONERS.

16   8.    "INCLUDING" means including but not limited to.

17   9.    "INSPECT" is defined at pages 2-4 of this Request.

18   10.    "ISOLATION" means confinement in a cell for 22 hours or more each day;

19   confinement in Eyman-Special Management Unit ("SMU") 1, Eyman-Browning Unit,

20   Florence-Central Unit, Florence-Kasson Unit, or Perryville-Lumley Special Management

21   Area ("SMA"); or confinement in a Complex Detention Unit ("CDU").

22   11.    "PRISONER PLAINTIFFS' COUNSEL" means legal counsel and retained

23   experts for PRISONER PLAINTIFFS and agents acting on their behalf.

24   12.    "PRISONER" means a person incarcerated by the ADC.

25   13.    "WEXFORD" means Wexford Health Sources, Incorporated.

26

1    Dated:  May 21, 2013                    **PRISON LAW OFFICE**

2

3                                            By:   s/ Corene Kendrick
                                                 Donald Specter (Cal. 83925)*
                                                 Alison Hardy (Cal. 135966)*
4                                                Sara Norman (Cal. 189536)*
                                                 Corene Kendrick (Cal. 226642)*
5                                                1917 Fifth Street
                                                 Berkeley, California 94710
6                                                Telephone:  (510) 280-2621
                                                 Email:     dspecter@prisonlaw.com
7                                                           ahardy@prisonlaw.com
                                                           snorman@prisonlaw.com
8                                                           ckendrick@prisonlaw.com

9                                                *Admitted *pro hac vice*

10                                               Daniel Pochoda (Bar No. 021979)
                                                 Kelly J. Flood (Bar No. 019772)
11                                               James Duff Lyall (Bar No. 330045)*
                                                 **ACLU FOUNDATION OF**
12                                               **ARIZONA**
                                                 3707 North 7th Street, Suite 235
13                                               Phoenix, Arizona 85013
                                                 Telephone:  (602) 650-1854
14                                               Email:     dpochoda@acluaz.org
                                                           kflood@acluaz.org
15                                                          jlyall@acluaz.org

16                                               *Admitted pursuant to Ariz. Sup. Ct.
                                                 R. 38(f)
17

18                                               David C. Fathi (Wash. 24893)*
                                                 Amy Fettig (D.C. 484883)**
19                                               Ajmel Quereshi (Md. 28882)*
                                                 **ACLU NATIONAL PRISON**
20                                               **PROJECT**
                                                 915 15th Street N.W., 7th Floor
21                                               Washington, D.C. 20005
                                                 Telephone:  (202) 548-6603
22                                               Email:     dfathi@npp-aclu.org
                                                           afettig@npp-aclu.org
23                                                          aquereshi@npp-aclu.org

24                                               *Admitted *pro hac vice*.  Not admitted
                                                  in DC; practice limited to federal
25                                                courts.
                                                 **Admitted *pro hac vice*

26

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:      cnmitchell@jonesday.com
            dkiernan@jonesday.com
            scalderon@jonesday.com
            srauh@jonesday.com

*Admitted *pro hac vice*

R. Scott Medsker (D.C. 976405)*
**JONES DAY**
51 Louisiana Avenue, NW
Washington, D.C. 20001-2113
Telephone:  (202) 879-3837
Email:      rsmedsker@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:      jlwilkes@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:      kmamedova@jonesday.com
            jkmessina@jonesday.com

*Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
             agerlicher@perkinscoie.com
             keidenbach@perkinscoie.com
             jhgray@perkinscoie.com
             mdumee@perkinscoie.com

*Attorneys for Plaintiffs Shawn Jensen;*
*Stephen Swartz; Dustin Brislan; Sonia*
*Rodriguez; Christina Verduzco; Jackie*
*Thomas; Jeremy Smith; Robert Gamez;*
*Maryanne Chisholm; Desiree Licci; Joseph*
*Hefner; Joshua Polson; and Charlotte*
*Wells, on behalf of themselves and all others*
*similarly situated*

1

<u>**CERTIFICATE OF SERVICE**</u>

2

I hereby certify that on May 21, 2013, I e-mailed a copy of the attached document

3

to the following parties:

4

Michael E. Gottfried
Katherine E. Watanabe

5

Lucy M. Rand
Ashley B. Zuerlein

6

Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov

7

Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

8

Ashley.Zuerlein@azag.gov

9

Daniel P. Struck
Kathleen L. Wieneke

10

Timothy J. Bojanowski
Rachel Love

11

Nicholas D. Acedo
Courtney R. Cloman

12

Ashlee B. Fletcher
Anne M. Orcutt

13

STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com

14

kwieneke@swlfirm.com
tbojanowski@swlfirm.com

15

rlove@swlfirm.com
nacedo@swlfirm.com

16

ccloman@swlfirm.com
afletcher@swlfirm.com

17

aorcutt@swlfirm.com

18

*Attorneys for Defendants*

19

20

Jennifer Alewelt
Asim Varma

21

Sarah Kader
ARIZONA CENTER FOR DISABILITY LAW

22

jalewelt@azdisabilitylaw.org
avarma@azdisabilitylaw.org

23

skader@azdisabilitylaw.org

24

*Attorneys for Arizona Center for Disability Law*

25

26

s/ Delana Freouf

**EXHIBIT 6**

**EXHIBIT 6**

1

2

3

4

5

6

7

8                              IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12     **ROBERT MITCHELL, et al.,**              Case No. 2:08-CV-01196 JAM EFB

                                      Plaintiffs,   **[PROPOSED] ORDER RE DISCOVERY**
13                                                  **DISPUTE**

14            **v.**

15     **MATTHEW CATE, et al.,**

16                                      Defendants.

17

18          This case was before the undersigned on October 10, 2012, for a hearing on Plaintiffs'

19     discovery motion concerning site inspections.  Attorney Rebekah Evenson appeared at the

20     hearing on behalf of Plaintiffs, and attorneys Damon McClain and Christopher Becker appeared

21     on behalf of Defendants.  For the reasons set forth herein and stated on the record at the hearing,

22     Plaintiffs' motion is denied.

23          Plaintiffs' motion sought an order permitting their experts to informally question prison

24     staff during site inspections at three prisons, and an order requiring that Defendants allow

25     Plaintiffs' counsel to accompany Defendants' experts on any prison visits.

26          Plaintiffs' proposed informal questioning of prison staff would amount to a roving

27     deposition taken without notice, and could lead to Plaintiffs' experts relying on inaccurate or

28     unreliable information.  Additionally, such informal questioning would deprive Defendants of the

                                                    1

1   protections and safeguards prescribed by Rule 30 of the Federal Rules of Civil Procedure for oral

2   depositions, such as advance notice to the deponent, a formal record of the deposition to ensure

3   accuracy, and an oath or affirmation to ensure the veracity and reliability of the testimony.  Fed.

4   R. Civ. P. 30(b).  Accordingly, Plaintiffs' request to informally question staff at the prisons (Dckt.

5   No. 124) is denied.

6        Plaintiffs' request to accompany Defendants' experts on prison visits would constitute an

7   impermissible invasion into privileged communications between Defendants, their counsel, and

8   their expert consultants as they work together to evaluate Plaintiffs' claims and prepare a defense,

9   and would also violate the work-product privilege.  *See* Fed. R. Civ. P. 26(b)(4)(C).  Accordingly,

10  Plaintiffs' request that their counsel accompany Defendants' experts during any prison visits

11  (Dckt. No. 124) is denied.

12

13  Dated:  October 17, 2012.

                                              EDMUND F. BRENNAN
14                                            UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              2