# *Exhibit 1*

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Virginia

| | | |
|---|---|---|
| Victor Parsons, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   CV 12-00601-PHX-NVW (MEA) |
| Charles Ryan and Richard Pratt | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | District of Arizona                    ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   30(b)(6) Designee, Smallwood Prison Dental Services, Inc.
      44031 Pipeline Plaza, Ste. #2-300, Ashburn, Virginia 20147

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Attachment A for deposition topics.

| Place: The law offices of Perkins Coie LLP, 700 Thirteenth Street N.W., Washington, D.C. 20005-3960 | Date and Time:<br>07/15/2013 10:00 am |
|---|---|

The deposition will be recorded by this method:   stenographic and real time transcription

☑ *Production:*  You, or your representatives, must also produce documents by June 28, 2013 at 10:00 a.m.:

See Attachment B for document requests.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   06/10/2013

*CLERK OF COURT*

OR

_____        _____
*Signature of Clerk or Deputy Clerk*                 *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Prisoner Plaintiffs
_____ , who issues or requests this subpoena, are:

Amelia Gerlicher, Perkins Coie LLP, 2901 N. Central Avenue, Suite 2000, Phoenix, Arizona 85012,
agerlicher@perkinscoie.com, 602-351-8308

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  CV 12-00601-PHX-NVW (MEA)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## ATTACHMENT A

Pursuant to Rules 30(b)(6) of the Federal Rules of Civil Procedure, Smallwood Prison Dental Services, Inc. ("SPDS") shall designate one or more officers, directors, or managing agents, or other person who consent to testify on its behalf, to testify on the topics identified below.

## DEFINITIONS

For the purposes of this deposition notice the following definitions shall apply.

1. "ADC" means the Arizona Department of Corrections, including all its subdivisions, agents, employees, contractors, and attorneys.

2. "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including a Blackberry or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

3. "CORIZON" means Corizon, Inc., including all of its subdivisions, agents, employees, contractors, and attorneys.

4. "DENTAL" means involving or relating to the oral cavity and maxillofacial area, including the lips, mouth, tongue, teeth, gums, jaw, and oral musculature, as well as the adjacent and associated areas.

5. "DENTAL CARE" means the provision of care, including adequate diet, to address the DENTAL needs of a PRISONER, whether those needs arise as a result of

1   injury, illness, disease, or other trauma, or care provided for diagnostic or preventive
2   purposes.

3       6.      "DOCUMENT" and "DOCUMENTS" have the same scope used in
4   Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing
5   or record of every type and description and every tangible thing that is or has been in the
6   possession, custody, or control of SPDS, to which they have access, or of which they have
7   knowledge, including, but not limited to, COMMUNICATIONS, newspaper articles,
8   magazine articles, news articles, correspondence, letters, contracts, files, electronic mail,
9   memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books,
10  pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations,
11  point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices,
12  pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings,
13  maps, reports, surveys, minutes, data compilations, and statistical compilations, regardless
14  of whether a particular DOCUMENT is privileged or confidential, and regardless of the
15  form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic
16  disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage
17  device). "DOCUMENT" and "DOCUMENTS" includes, but is not limited to, all
18  DOCUMENTS generated by or maintained in SPDS's Correctional Dental Software.

19      7.      "POLICIES AND PROCEDURES" means policies, procedures, criteria, or
20  practices, whether written or established through custom or use, including but not limited
21  to policy and procedure manuals, directors' orders, protocols, directives, flowcharts,
22  institution post orders, and any other DOCUMENTS designed to direct the actions of
23  ADC personnel, ADC contractors, SPDS, and/or PRISONERS.

24      8.      "PRISONER" means a person incarcerated by the ADC.

25      9.      "QUALITY ASSURANCE" means any activities implemented for the
26  purpose of examining, assessing, evaluating, investigating, analyzing, or identifying the
27  quality of a product or service.

28

10.     "YOU," "YOUR," "YOURSELF" or "SPDS" means Smallwood Dental Prison Services, and its corporate predecessors or successors, employees, subordinates, contractors, agents, and attorneys.

## TOPICS

1.     POLICIES AND PROCEDURES for DENTAL CARE provided to ADC PRISONERS at facilities where SPDS provides care.

2.     Tracking and scheduling system for DENTAL appointments at ADC facilities where SPDS provides care.

3.     The capabilities and limitations of SPDS' Correctional Dental Software, as implemented at ADC facilities.

4.     POLICIES AND PROCEDURES for QUALITY ASSURANCE and quality improvement.

5.     Hiring and credentialing of employees who provide DENTAL CARE at ADC.

6.     Reports, evaluations and statistical data regarding the provision of and need for DENTAL CARE for ADC prisoners.

7.     Changes made at ADC facilities where SPDS provides DENTAL CARE after March 4, 2013.

8.     The relationship between CORIZON and SPDS, including the process by which SPDS was selected to provide DENTAL CARE to ADC prisoners.

9.     The relationship between ADC and SPDS.

**ATTACHMENT B**

Pursuant to Federal Rules of Civil Procedure 45, Plaintiffs hereby request that the Smallwood Dental Services produce the following documents for inspection and copying at Perkins Coie LLP, 700 Thirteenth Street NW, Washington, D.C., 20005-3960 no later than June 28, 2013, at 10:00 a.m.

**DEFINITIONS**

For the purposes of this deposition notice the following definitions shall apply.

1.    "ADC" means the Arizona Department of Corrections, including all its subdivisions, agents, employees, contractors, and attorneys.

2.    "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including a Blackberry or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

3.    "CORIZON" means Corizon, Inc., including all of its subdivisions, agents, employees, contractors, and attorneys.

4.    "DENTAL" means involving or relating to the oral cavity and maxillofacial area, including the lips, mouth, tongue, teeth, gums, jaw, and oral musculature, as well as the adjacent and associated areas.

5. "DENTAL CARE" means the provision of care, including adequate diet, to address the DENTAL needs of a PRISONER, whether those needs arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic or preventive purposes.

6. "DENTAL STAFF" or "ADC DENTAL STAFF" means people working at ADC facilities whose primary function is to provide DENTAL CARE to ADC PRISONERS, including dentists, hygienists, and dental assistants.

7. "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and description and every tangible thing that is or has been in the possession, custody, or control of SPDS, to which they have access, or of which they have knowledge, including, but not limited to, COMMUNICATIONS, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys, MINUTES, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device).

8. "HEALTH NEEDS REQUESTS" means written requests for medical, dental or other health care submitted by ADC PRISONERS using forms provided for that purpose or other similar writings intended to request care.

9. "INFORMATION" means any knowledge YOU have, any evidence of any type, any facts of which YOU are aware and any inferences or speculation of which YOU are aware, all regardless of the source. When INFORMATION YOU provide is based

1  solely on inference or speculation, specifically so state in YOUR response.  When
2  providing INFORMATION, provide the names of involved individuals, actions relevant
3  to the requested INFORMATION, dates and times when known, locations, and any other
4  knowledge YOU have about the subject of the discovery request.  When asked to provide
5  INFORMATION about one or more individuals, identify the individual or individuals by
6  name, ADC number (if an ADC PRISONER) and employer.

7      10.    "MINUTES" means notes or any other recording reflecting the content of a
8  meeting, whether written contemporaneously with or subsequent to the meeting.

9      11.    "ORGANIZATIONAL STRUCTURE" means the structure of who reports
10 to whom within SPDS up to and including William Smallwood, including each
11 individual's job title and DESCRIPTION of duties.

12     12.    "POLICIES AND PROCEDURES" means policies, procedures, criteria, or
13 practices, whether written or established through custom or use, including but not limited
14 to policy and procedure manuals, directors' orders, protocols, directives, flowcharts,
15 institution post orders, and any other DOCUMENTS designed to direct the actions of
16 ADC personnel, ADC contractors including SPDS, and/or PRISONERS.

17     13. "PORTABLE DENTISTRY" has the meaning intended by SPDS on its
18 website, at http://www.smallwoodpds.com/corrections_innerpage.php?id=portable

19     14.    "PRISONER" means a person incarcerated by the ADC.

20     15.    "QUALITY MANAGEMENT REPORTS" means any DOCUMENTS
21 generated for the purpose of examining, assessing, evaluating, investigating, analyzing, or
22 identifying the quality of ADC DENTAL CARE.

23     16.    "REGARDING" or "REGARDED" to any given subject matter means,
24 without limitation, anything that, in whole or in part, analyzes, comments upon,
25 comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences,
26 explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers
27 to, relates to, responds to, states, summarizes, or is in any way relevant to the particular
28 subject matter identified.

17.    "RESPONSE DATE" means date upon which YOU respond to these discovery requests, or, if YOU amend or supplement YOUR response, the date of YOUR amendment or supplement.

18.    "ROUTINE CARE" means DENTAL CARE for conditions that require treatment to restore the form and function of oral tissues, but where such treatment is not required on an urgent or emergency basis.

19.    "SUFFICIENT TO SHOW" means demonstrating or evidencing complete INFORMATION on the requested topic, without the need to produce every DOCUMENT REGARDING the topic.

20.    "URGENT CARE" means DENTAL CARE for conditions such as fractured dentition with pulp exposure, acute dental abscess, oral pathological conditions that may severely compromise the general health of the inmate, and any other conditions for which a patient should be seen for DENTAL CARE within five days of the complaint.

21.    "YOU," "YOUR," "YOURSELF," and "SPDS" means Smallwood Dental Services, and their corporate predecessors, successors, employees, subordinates, contractors, agents, and attorneys.

22.    "WAIT TIME REPORTS" are DOCUMENTS SUFFICIENT TO SHOW, for each ADC facility, the amount of time that PRISONERS who have filed HNRs requesting DENTAL CARE must wait before an appointment with DENTAL STAFF to address that request.

**INSTRUCTIONS**

1.    YOU are required to furnish all DOCUMENTS in YOUR possession, custody, or control, including those DOCUMENTS that are in YOUR possession, custody, or control in the normal course of YOUR employment obligations, and those in the possession, custody or control of your (1) employer; (2) consultants; (3) attorneys; (4) representatives; (5) agents; or (6) any other person acting or purporting to act on YOUR behalf or at YOUR direction, whether doing so directly or at the direction of YOUR subordinates.  Possession, custody, or control includes DOCUMENTS stored in

1   electronic form by third party service providers but accessible to the Defendant, including
2   but not limited to email accounts, FTP servers, portable storage media such as USB
3   drives, cloud storage services such as Dropbox or SharePoint , and online workspaces
4   such as WebEx.

5        2.     All non-identical copies of every DOCUMENT whose production is sought
6   shall be separately produced.

7        3.     Each request herein constitutes a request for DOCUMENTS in their
8   entirety, with all enclosures and attachments, and without abbreviation, redaction, or
9   expurgation.  DOCUMENTS attached to each other, including but not limited to, by
10  staple, clip, tape, email attachment, or "Post-It" note, should not be separated, although
11  any page on which a Post-It note covers or obscures text on the DOCUMENT should be
12  produced both with and without the Post-It note. The production must also include, where
13  applicable, any index tabs, file dividers, designations, binder spine labels, or other similar
14  information as to the source and/or location of the DOCUMENTS.

15       4.     DEFENDANTS shall produce any and all drafts and copies of each
16  DOCUMENT that are responsive to any request, including but not limited to copies
17  containing handwritten notes, markings, stamps, or interlineations.  The author(s) of all
18  hand-written notes should be identified.

19       5.     YOU shall produce all responsive DOCUMENTS as they have been kept in
20  the ordinary course of business.

21       6.     Responsive DOCUMENTS that exist only in paper form shall be organized
22  as they have been kept in the ordinary course of business and shall be produced according
23  to the following protocol:

24            a.    Paper DOCUMENTS shall be scanned and produced in
                    TIFF image form at a resolution sufficient to enable the
25                  generation of searchable text using Optical Character
                    Recognition ("OCR").
26
27
28

7.     Responsive DOCUMENTS that exist in electronic form, even if such DOCUMENTS also exist in paper form, shall be produced in electronic form according to the following protocol:

a.     Electronic DOCUMENTS shall be produced electronically as single page, uniquely and sequentially numbered Group IV TIFF image files of not less than 300 dots per inch resolution, together with DOCUMENT level load files wherein the full text was extracted directly from the native file where possible.

b.     For files produced in TIFF image form, each page of a produced DOCUMENT shall have a legible, unique production number electronically "burned" onto the TIFF image in such a manner that information from the source DOCUMENT is not obliterated, concealed, or interfered with, preferably in the lower right corner of the DOCUMENT. The production number shall contain at least six digits. There shall be no other legend or stamp placed on the DOCUMENT image, unless a DOCUMENT qualifies for confidential treatment pursuant to the terms of any protective order in this matter, or if the DOCUMENT requires redaction. In the case of confidential materials as defined by any protective order in this matter, any applicable designation may be "burned" onto the DOCUMENT's image at a location that does not obliterate or obscure any information from the source DOCUMENT, preferably in the lower left corner.

c.     Each DOCUMENT image file shall be named with the unique production number of the page of the DOCUMENT in question, followed by the extension ".tif". File names should not be more than 20 characters long or contain spaces.

d.     For files produced in TIFF image format, each page of a DOCUMENT shall be electronically saved as an image file. If a DOCUMENT is more than one page, the unitization of the DOCUMENT and any attachments and/or affixed notes shall be maintained as they existed in the original DOCUMENT.

e.     TIFF images shall be accompanied by a standard load file containing the metadata and other fields identified in Paragraph 7(j) of these Instructions, below. The load file shall be produced in one of the following industry-standard formats: (1) Concordance delimited file (".dat"); (2) comma-separated value file (".csv"); or (3) TAB delimited file. TIFF images shall also be accompanied by either an Opticon delimited cross-reference file (".opt") or IPRO View LFP comma-delimited file showing DOCUMENT breaks and

1    appropriate DOCUMENT unitization.

2  f.   In addition to TIFF images, each production of
3       electronic DOCUMENTS shall include searchable text
        files corresponding to the TIFF images for each
4       DOCUMENT. The full text of each native electronic
        DOCUMENT, excluding redacted DOCUMENTS,
5       shall be extracted directly from the native file and
        produced in a DOCUMENT-level related text file (the
6       "Extracted Text"). The Extracted Text shall be
        provided in searchable ASCII text format (or Unicode
7       text format if the text is in a foreign language) and shall
        be named with the unique production number of the
8       first page of the corresponding TIFF DOCUMENT
        followed by the extension ".txt". YOU shall also
9       perform OCR on certain types of non-text based static
        image ESI, such as native PDF image files, and
10      produce the corresponding DOCUMENT-level related
        text files. Searchable text files shall be generated from
11      Extracted Text where available.

12  g.   DOCUMENTS shall be produced on optical media (CD
        or DVD) or external hard drives or similar, readily
13      accessible electronic media (the "Production Media").
        Each piece of Production Media shall IDENTIFY a
14      production number corresponding to the party and
        production with which the DOCUMENTS on the
15      Production Media are associated (e.g., "RYAN 001"),
        as well as the volume of the material in that production
16      (e.g., "- 001", "-002"). For example, if the first
        production wave by YOU comprises DOCUMENT
17      images on three hard drives, YOU shall label each hard
        drive in the following manner: "RYAN 001-001",
18      "RYAN 001-002", and "RYAN 001-003." The face of
        each piece of Production Media shall also IDENTIFY:
19      (1) the production date; and (2) the production number
        range of the materials contained on the Production
20      Media.

21  h.   Presentation DOCUMENTS (such as Microsoft
        PowerPoint DOCUMENTS) shall be produced with
22      one slide per page together with any "Speaker's Notes"
        or similar pages appended to, or otherwise associated
23      with, each slide. Presentation DOCUMENTS shall also
        be produced according to all other applicable
24      Instructions set forth in this set of requests.

25  i.   Unless redaction is required, spreadsheet
        DOCUMENTS (such as Microsoft Excel
26      DOCUMENTS) shall be produced in native format,
        together with a single page TIFF placeholder bearing
27      the legend "Native File Produced" and load files
        containing the agreed upon metadata, extracted text,
28      production numbers and any applicable confidentiality
        labels as described above. If redaction is required, then

spreadsheets shall be produced in TIFF image format as set forth above.

j.   For all DOCUMENTS for which metadata exists, the load files described above shall be produced including the following fields:

| Fields for all DOCUMENTS | Description |
|---|---|
| BegProd | Beginning production number assigned to each DOCUMENT |
| **Fields for all DOCUMENTS** | **Description** |
| EndProd | Ending production number assigned to each DOCUMENT |
| BegAttach | Beginning production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| EndAttach | Ending production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| Custodian | The name of the person or source from which the DOCUMENT was obtained |
| FileName | Original file name |
| FilePath | Original file path |
| DocExt | DOCUMENT type as identified by metadata associated with the native DOCUMENT indicating the extension of the application that created the native DOCUMENT (e.g., .doc, .ppt, etc.) |
| HashValue | The unique identifying value assigned to a DOCUMENT based on hash coding algorithms |
| Author | The person or source that *originated* the DOCUMENT |
| DateCreated | Date that the DOCUMENT was created (as reflected by metadata) |
| LastModifiedDate | Date that the file was last modified (as reflected by metadata) |
| FullText | The path or link to the searchable Extracted or OCR text for a DOCUMENT |

| | |
|---|---|
| NativeFile | The path or link to a processed and produced native file, to the extent the production contains native files |
| Confidentiality | The confidentiality designation for the DOCUMENT, as defined by any protective order in this matter |
| **Additional Fields for Email** | **Description** |
| To | All information contained in the "To" field of an email |
| From | All information contained in the "From" field of an email |
| CC | All information contained in the "CC" field of an email |
| BCC | All information contained in the "BCC" field of an email |
| DateSent | Date the email was sent, including month, day and year |
| TimeSent | Time the email was sent, including hour, minute, second and time zone. To the extent this information is already included in the DateSent field in the metadata, YOU need not parse TimeSent as a separate field. |
| DateReceived | Date the email was received, including the month, day and year |
| TimeReceived | Time the email was received, including hour, minute, second and time zone. To the extent this information is already included in the DateReceived field in the metadata, YOU need not parse TimeReceived as a separate field. |
| Subject | Subject or "Re:" line, as stated in the email |

8.    If with respect to any request there are no responsive DOCUMENTS, so state in writing.

9.    The following rules of construction shall be applied herein: (a) the words "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope ; (b) the use of the singular form of any word shall be taken to mean

the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural; (c) the words "any," "all," "each" and "every" all include any, all, each, and every and shall be understood in either their most or least inclusive sense as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; and (d) the use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the DOCUMENT requests all responses that might otherwise be construed to be outside of their scope.

10.   If YOU object to a portion or an aspect of a request, state the grounds for your objection with specificity and respond to the remainder of the DOCUMENT request. If any DOCUMENTS, or portion thereof, are withheld because YOU claim that such information is protected under the attorney-client privilege, work product doctrine, or other privilege or doctrine, YOU are required to provide a privilege log setting forth the specific basis for the claim of privilege or protection and for each DOCUMENT provide the following:

a.   the subject matter of the DOCUMENT;

b.   the title, heading or caption of the DOCUMENT, if any;

c.   the date appearing on the DOCUMENT or, if no date appears thereon, the date or approximate date on which the DOCUMENT was prepared;

d.   the type of DOCUMENT (e.g., whether it is a letter, memorandum, MINUTES of meeting, etc.) and the number of pages of which it consists;

e.   the identity of the person who signed the DOCUMENT or, if it was not signed, the person who prepared it;

f.   the identity of each person to whom the DOCUMENT was addressed and the identity of each person to whom a copy thereof was sent; and

g.   the identity of each person who has custody of a copy of each such DOCUMENT.

11.    If YOU claim that a portion of a DOCUMENT is protected from disclosure for any reason, produce such DOCUMENT with redaction of only the portion claimed to be protected.  When such redactions for privilege or protection are made, YOU shall place a legend similar to "REDACTION – PRIVILEGE" on the copy of the DOCUMENT produced.  All redactions shall also be included on the privilege log described in Instruction #4.

12.    If you object that a request is vague or ambiguous, IDENTIFY the objectionable aspect of the request.

13.    If a request cannot be responded to in full, YOU shall respond to the extent possible, specify the reason for YOUR inability to respond to the remainder, and state whatever information or knowledge YOU have REGARDING the portion to which YOU have not responded.

14.    If any DOCUMENT called for by these requests has been destroyed, lost, discarded, or is otherwise no longer in your possession, custody, or control, IDENTIFY such DOCUMENT as completely as possible, and specify the date of disposal of the DOCUMENT, the manner of disposal, the reason for disposal, the person authorizing disposal, and the person disposing of the DOCUMENT.

15.    These requests are sequentially numbered and each numbered paragraph constitutes a single request.  Defined terms may be capitalized for the convenience of the parties; the definitions herein apply whether or not the term is capitalized.

16.    Except where expressly stated, these requests are not limited in any way by geography.

17.    These requests shall be deemed continuing in nature in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.  Supplemental responses are required if additional responsive information is acquired or discovered between the time of responding to this request and the time of trial.

18.     Unless otherwise specified, the relevant time period, and the period for which YOU are required to provide responsive DOCUMENTS, is from and including January 1, 2011 up to and including the date of the Rule 30(b)(6) deposition.

## DOCUMENTS REQUESTED

1.     QUALITY MANAGEMENT REPORTS relating to the provision of DENTAL CARE at any ADC facility.

2.     Contracts with outside DENTAL CARE providers who are not employed by either YOU or ADC, including temporary or part-time DENTAL STAFF and those DENTAL STAFF listed on the "registry."

3.     DOCUMENTS, including but not limited to notes, minutes, and memoranda, generated by meetings between William Smallwood, or other representatives of SPDS, and ADC DENTAL STAFF.

4.     DOCUMENTS sufficient to show the DENTAL STAFF levels, including the total number of DENTAL STAFF positions that are filled and open, job titles for each position, and whether the positions are filled by SPDS employees, registry, or other, for each ADC facility where SPDS provides DENTAL CARE, as of March 4, 2013, and on the first of each month thereafter, through the RESPONSE DATE.

5.     WAIT TIME REPORTS relating to DENTAL CARE at any ADC facility, as of March 4, 2013, and on the first of each month thereafter, through the RESPONSE DATE.

6.     All POLICIES AND PROCEDURES regarding DENTAL CARE in effect from March 4, 2013, to the RESPONSE DATE.

7.     All DOCUMENTS relating to accreditation, investigation, or auditing by the National Commission on Correctional Health Care of the DENTAL CARE at any ADC facility.

8.     DOCUMENTS sufficient to show all HEALTH NEEDS REQUESTS filed by prisoners requesting DENTAL CARE at any ADC facility where SPDS provides

1   DENTAL CARE from March 4, 2013 to the RESPONSE DATE, including the nature of

2   the prisoner's complaint and the response from ADC or DENTAL STAFF.

3       9.      DOCUMENTS SUFFICIENT TO SHOW which prisoners were waiting for

4   ROUTINE CARE at each ADC facility where SPDS provides DENTAL CARE, as of

5   March 4, 2013 and on the RESPONSE DATE.

6       10.     DOCUMENTS SUFFICIENT TO SHOW which prisoners were waiting for

7   URGENT CARE at each ADC facility where SPDS provides DENTAL CARE, as of

8   March 4, 2013 and on the RESPONSE DATE.

9       11.     All requests by ADC DENTAL STAFF for oral biopsies on ADC prisoners,

10  from March 4, 2013 to the RESPONSE DATE, including inmate identifier, date of

11  request, date of biopsy, pathologic diagnosis, and follow-up, if any.

12      12.     All COMMUNICATIONS with ADC regarding DENTAL CARE for ADC

13  prisoners, from January 1, 2012, to the RESPONSE DATE.

14      13.     All COMMUNICATIONS with CORIZON regarding DENTAL CARE for

15  ADC prisoners, from January 1, 2012, to the RESPONSE DATE.

16      14.     All COMMUNICATIONS between SPDS or its managerial employees

17  based in Virginia and ADC DENTAL STAFF regarding DENTAL CARE for ADC

18  PRISONERS.

19      15.     All contract bids, requests for proposal, and final contracts between SPDS

20  and CORIZON related to the provision of DENTAL CARE at ADC facilities.

21      16.     DOCUMENTS SUFFICIENT TO SHOW the payment or compensation

22  SPDS has received and is owed under its contract to provide DENTAL CARE TO ADC

23  PRISONERS.

24      17.     DOCUMENTS SUFFICIENT TO SHOW the ORGANIZATIONAL

25  STRUCTURE, of SPDS, including but not limited to any organizational charts, lists of

26  employees, and lists of contractors, for SPDS operations in Virginia and Arizona.

27  Employees, contractors, and agents whose entire responsibility concerns either military

28  services or a prison system other than ADC are excluded from this request.

18.   All DOCUMENTS REGARDING the use, limitations, and capabilities of SPDS Correctional Dental Software (CDS) that have been made available to a) ADC employees or b) DENTAL STAFF.

19.   For any reports that can be generated by CDS that are not responsive to requests 1, 5, or 8-11, a sample template or other DOCUMENTS SUFFICIENT TO SHOW the information that could be included in such report. Only reports that could be generated using the version or implementation of CDS in use at ADC facilities are covered by this request.

20.   DOCUMENTS SUFFICIENT TO SHOW the PORTABLE DENTISTRY equipment available for each ADC facility, and when that equipment has been used for DENTAL CARE for ADC PRISONERS, including the date, prisoner treated, condition treated, and the DENTAL STAFF that administered treatment.

21.   All DOCUMENTS reflecting studies or data relating to the following statement on SPDS' website: "The majority of correctional dental departments surprisingly still rely on cumbersome systems (not tailored to the dental profession) and/or obsolete paper-and-pen methods to manage their dental operations. This often results in non-compliance in meeting standards established by the respective Department of Corrections and governing bodies such as the ACA and the NCCHC. Increased grievances and ensuing lawsuits are the byproduct of inefficient systems."

22.   All DOCUMENTS that the deponent used or may need to use to refresh his or her recollection as to any of the topics in the accompanying Attachment A.

23.   All DOCUMENTS that the deponent consulted or relied upon to learn the information known or reasonably available to the ADC on the topics in the accompanying 30(b)(6) Notice.