1  Jennifer A. Alewelt (Bar No. 027366)
2  Asim Varma (Bar No. 027927)
   Sarah Kader (Bar No. 027147)
3  ARIZONA CENTER FOR DISABILITY LAW
   5025 East Washington Street, Suite 202
4  Phoenix, Arizona  85034
   (602) 274-6287
5  jalewelt@azdisabilitylaw.org
6  avarma@azdisabilitylaw.org
   skader@azdisabilitylaw.org
7
8  J.J. Rico (Bar No. 021292)
   Cathleen M. Dooley (Bar No. 022420)
9  ARIZONA CENTER FOR DISABILITY LAW
   100 N. Stone Avenue, Suite 305
10 Tucson, AZ  85701
   (520) 327-9547
11 jrico@asdisabilitylaw.org
12 cdooley@azdisabilitylaw.org
   *Attorneys for Plaintiff*
13 *Arizona Center for Disability Law*
14

15            **IN THE UNITED STATES DISTRICT COURT**
16              **FOR THE DISTRICT OF ARIZONA**

17 VICTOR ANTONIO PARSONS, et al.,        )   No. 2:12-CV-00601-NVW
                                          )
18              Plaintiffs,               )   **PLAINTIFF ARIZONA CENTER**
                                          )   **FOR DISABILITY LAW'S**
19 v.                                     )   **RESPONSE TO DEFENDANTS'**
                                          )   **EMERGENCY MOTION TO**
20 CHARLES RYAN, et al.,                  )   **STAY PROCEEDINGS PENDING**
                                          )   **RULE 23(f) APPEAL AND**
21              Defendants.               )   **JOINDER IN PRISONER**
                                          )   **PLAINTIFFS' OPPOSITION**
22                                        )   **DEFENDANTS' EMERGENCY**
                                          )   **MOTION TO STAY**
23                                        )
                                          )
24 _____)
                                          )   Hon. Neil V. Wake
25
            Plaintiff Arizona Center for Disability Law ("ACDL"), by and through counsel
26
   undersigned, hereby responds to Defendant's Emergency Motion to Stay Proceedings
27
   Pending Rule 23(f) Appeal ("Motion to Stay"), and joins in Prisoner Plaintiffs'
28

Opposition to Defendant's Emergency Motion to Stay Proceedings Pending Rule 23(f) Appeal.

## I.      INTRODUCTION

Plaintiff ACDL is a non-profit law firm designated as Arizona's Protection and Advocacy agency.  Plaintiff ACDL is charged with advocating for persons with mental illness pursuant to the Protection and Advocacy for Persons with Mental Illness Act ("PAIMI") and is permitted to pursue a variety of legal options to achieve this purpose. 42 U.S.C. § 10801, *et. seq*.  Plaintiff ACDL has complained that prisoners with mental illness housed in the Arizona Department of Corrections ("ADC") have been, and continue to be, subjected to a substantial risk of serious harm and injury resulting from Defendants' failure to provide constitutionally adequate mental health care.   (Compl. ¶42, Doc. 1.)   Plaintiff ACDL also alleges that prisoners with mental illness are subjected to a substantial risk of harm and injury resulting from Defendants' policy and practice of confining prisoners with mental illness in isolation in unconstitutional conditions. (Compl. ¶ 90, Doc. 1.)

On November 9, 2012, attorneys for named Prisoner Plaintiffs filed a Motion for Class Certification and on March 6, 2013, this Court granted the motion.  (Doc. 235; Doc. 372.)  Defendants appealed the District Court's decision, and on July 10, 2013, the Ninth Circuit agreed to hear Defendants' argument.  Plaintiff ACDL is not a Prisoner Plaintiff and did not file any motions in relationship to the named Prisoner Plaintiffs' request for class certification.  The outcome of the pending Ninth Circuit Appeal has no impact on the viability or scope of Plaintiff ADCL's claims.

Although it appears Defendants seek to stay the entire proceedings, references to "Plaintiffs" throughout its Motion to Stay only refer to named Prisoner Plaintiffs.  (*See, e.g.* Doc. 532 at 7,  4.)  In fact, Defendants only directly mention Plaintiff ACDL once in the Motion to Stay and only to suggest that counsel for Plaintiff ACDL will attend the expert tours related to its claims.  (Doc. 532 at 5.)  While it is Plaintiff ACDL's position that Defendants have no grounds to request a stay of Plaintiff ACDL's claims appending

1   the result of the Ninth Circuit Court of Appeals decision and that Defendants' Motion to

2   Stay did not provide any justification as to why a stay of Plaintiff ACDL's claims was

3   appropriate, we nonetheless respond to Defendants' Motion to Stay and respectfully

4   request that this Court deny the Motion to Stay, or in the alternative, to deny as to

5   Plaintiff ACDL's claims.

6

7   **II.   ARGUMENT**

8          In determining whether to issue a stay pending an interlocutory appeal, courts

9   must consider:  (1) whether the stay applicant has made a strong showing that he is

10  likely to succeed on the merits; (2) whether the applicant will be irreparably injured

11  absent a stay; (3) whether issuance of the stay will substantially injure the other parties

12  interested in the proceeding; and (4) where the public interest lies.  *Natural Res. Def.*

13  *Council, Inc. v. Winter*, 502 F.3d 859, 863 (9th Cir. 2007) (citing *Hilton v. Braunskill*,

14  481 U.S. 770 (1987)).  When a party's argument as to the first prong relies on the

15  assertion that there are serious legal questions, Defendants' must prove that the "balance

16  of hardships tips sharply in favor of a stay."  *Levia-Perez v. Holder*, 640 F.3d 962, 971

17  (9th Cir. 2011).

18         This Court retains the ultimate power to determine whether a stay is appropriate

19  in cases over which it presides.  *Landis v. North American Co.,* 299 U.S. 248, 254,

20  (1936); *Rohan ex rel. Gates v. Woodford,* 334 F.3d 803, 817 (9th Cir.2003).   An

21  interlocutory appeal does not prohibit this Court from permitting other aspects of the

22  case to progress. *Plotkin v. Pac. Tel. and Tel. Co.,* 688 F.2d 1291, 1293 (1982), *accord*

23  *Cabral v. County of Glenn,* 2009 WL 1911692 *1 (E.D. Cal. July 1, 2009) (holding that

24  an interlocutory appeal does not bar progression of other matters unrelated to the issue at

25  appeal).  As to Plaintiff ACDL's claims, Defendants cannot and have not established

26  *any* of the elements necessary to support granting a stay of the proceedings.

27  ///

28  ///

A.      **Defendants' Likelihood of Success is Irrelevant to Plaintiff ACDL's Claims**

The first prong of Defendants' obligation of proof requires Defendants to demonstrate a likelihood of success on appeal. *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011). However, the outcome of Defendants' appeal, filed pursuant to the Federal Rules of Civil Procedure, Rule 23(f), does not impact or limit the claims of Plaintiff ACDL, and Defendants have made no such allegation. Because the pending appeal does not impinge on the ability of Plaintiff ACDL to litigate its claims, Defendants' argument that the novel issue raised related to class certification is unpersuasive as to Plaintiff ACDL. Defendants simply cannot establish a likelihood of success on appeal where there is no appeal.

Even as to Prisoner Plaintiffs' claims, the only argument Defendants offer as to the likeliness off success on appeal is that, according to Defendants, the Ninth Circuit agrees "[either with the novelty of the issues or Defendants' arguments that the class certification is erroneous] because it has *granted* the Petition . . . ." (Doc. 532 at 3.) This is insufficient to show a likelihood of success. Instead, it is merely an example of Rule 23(f) of the Federal Rules of Civil Procedure functioning as it is designed to function – requiring moving parties to request an appeal and permitting the Appellate Court to allow such an appeal at its discretion. A mere determination that a request for a 23(f) appeal will be heard by the Appellate Court does not give rise to a presumption that Defendants have met their burden to prove a likelihood of success. *In re Rail Freight Fuel Surcharge Antitrust Litig.,* 286 F.R.D. 88, 93 (D.D.C. 2012) ("It is a fool's errand to try to predict what the court of appeals is likely to do before it acts or, absent explanation, to speculate on why it has made a certain procedural decision. In sum, although it is possible that defendants may prevail on their appeal, defendants have not shown that they are substantially likely to do so.").

///

///

**B.      Defendants Cannot Establish Irreparable Injury Because They Will Be Required to Participate in Discovery Related to Plaintiff ACDL's Claims Regardless of the Outcome of the Appeal**

The only irreparable harm identified by Defendants is "costly and burdensome discovery on the class allegations."  (Doc. 532 at 3.)  However, the District of Arizona has rejected a request for a stay when "the only litigation costs that will be incurred while the parties await appeal are discovery costs, which do not constitute irreparable injury." *R & L Ltd. Invs., Inc. v. Cabot Inv. Properties, LLC.,* 2010 WL 3789401 at *2 (D. Ariz. Sept. 21, 2010) (citing *Castaneda v. U.S.,* 2008 U.S. Dist. LEXIS 40567 at *13 (C.D. Cal. May 20, 2008) ["The Court acknowledges that discovery can be burdensome. However, such a burden, while regrettable, does not constitute irreparable injury."]).

Moreover, Defendants' assertion that certain components of discovery would not progress but for class certification is simply incorrect, as Plaintiff ACDL's claims are unaffected by the outcome of the appeal.  According to Defendants, "if the class is decertified on appeal, however, the scope of this lawsuit will be significantly narrowed, limited only to the individual claims of thirteen inmates."  (Doc. 532 at 4.)  Defendants also suggest that expert tours have been coordinated only for the purpose of providing evidence for the claims of the named Prisoner Plaintiffs and that written discovery has been propounded relevant only to the class claims.[1]  (Doc. 532 at 4, 6.)  However, this argument overlooks Plaintiff ACDL's entitlement to conduct discovery to litigate its claims.   Defendants will incur these costs regardless of the outcome of the Ninth Circuit's decision.

---

[1]       The two examples of written discovery Defendants provide this Court as illustrative of burdensome discovery are requests that are also relevant to the claims of Plaintiff ACDL.   (Doc. 532 at 6.) In attempting to reduce the burden of all parties, Plaintiff ACDL did not duplicate requests for documents related to its mental health claims when requested by named Prisoner Plaintiffs, despite its entitlement to request for such documents independent of named Prisoner Plaintiffs.  While a stay on the claims of named Prisoner Plaintiffs might reduce Defendants' burden to produce written discovery, Defendants would still be required to respond to the written discovery requests of Plaintiff ACDL.

1    To litigate its claims, Plaintiff ACDL would certainly need experts to opine as to

2  the issues it will be required to prove to this Court regarding the mental healthcare and

3  conditions of confinement for prisoners with mental illness.  Tours would need to

4  continue with experts Pablo Stewart, Craig Haney, and Eldon Vail, along with counsel

5  for named Prisoner Plaintiffs, as these experts were retained with the intention that

6  Plaintiff ACDL would join in their disclosure, consistent with the deadlines set by this

7  Court.  If a stay is granted as to Prisoner Plaintiffs' claims, Plaintiff ACDL and

8  Defendants would be obligated to coordinate new tour dates and times with the experts

9  identified by Plaintiff ACDL, which would require repeat tours of facilities already

10  completed and obtaining security clearance from additional persons, resulting in

11  unnecessary and avoidable cost to both Plaintiff ACDL and Defendants.

12    **C.    A Stay Will Substantially Injure Plaintiff ACDL**

13    Defendants have provided no evidence that the requested relief will not

14  substantially injure Plaintiff ACDL.  Defendants fail to even address this factor as to

15  Plaintiff ACDL.  Providing no authority, Defendants argue only that named Prisoner

16  Plaintiffs would not be harmed because the scope of claims could be reduced and that

17  because the Court of Appeals granted an expedited resolution, any delay should be

18  minimal.  Even under the best case scenario, the interlocutory appeal would delay

19  discovery six months.  In some cases, perhaps that delay could be considered "minimal."

20  In this case, Plaintiff ACDL and the interests it represents *will* incur substantial injury

21  during that delay.  (*See* Prisoner Pls. Opp'n to Defs.' Emergency Mot. to Stay

22  Proceedings at II.B.1.)    Congress has found that "individuals with mental illness are

23  vulnerable to abuse and serious injury" and enacted the PAIMI Act to assist each State

24  with establishing a Protection and Advocacy agency to "ensure that the rights of

25  individuals with mental illness are protected."  42 U.S.C. § 10801(a)(1), (b)(1).  Plaintiff

26  ACDL is mandated to "protect and advocate" for persons with mental illness in Arizona.

27  42 U.S.C. § 10801(b)(2)(A).

28    In order to fulfill these mandates, Plaintiff ACDL filed this lawsuit, alleging that

1   ADC has failed to provide constitutionally adequate care mental health care and
2   appropriate conditions of confinement to prisoners with mental illness.  The deprivation
3   of Constitutional rights "unquestionably constitutes irreparable injury." *Elrod v. Burns,*
4   427 U.S. 347, 373 (1976).  Moreover, as detailed in Section II.B.1 of named Prisoner
5   Plaintiffs' Opposition to Defendants' Motion to Stay and in their Motion for Class
6   Certification, the failures of ADC in providing adequate mental health care and
7   appropriate conditions of confinement results in ongoing injury to prisoners with mental
8   illness.  A stay would prohibit Plaintiff ACDL from moving forward on behalf of
9   prisoners with mental illness, resulting in an unfair delay in the progression of its claims
10  and resulting in irreparable harm to the interests Plaintiff ACDL represents.

11          A stay would also be detrimental to Plaintiff ACDL, as well as Defendants,
12  because it would require rescheduling all of the mental health tours, all of which have
13  already been arranged and coordinated with counsel for Plaintiff ACDL, counsel for
14  named Plaintiffs, counsel for Defendants, the various ADC facilities where the visits
15  will take place, and the ADC staff attending the tours and the experts.  Counsel and
16  experts for Plaintiff ACDL and named Prisoner Plaintiffs have provided personal
17  information to ADC to comply with its security policy and permit clearance to ADC
18  facilities, rearranged schedules and expended costs on travel in preparation for the tours.
19  Furthermore, if written discovery for named Prisoner Plaintiffs halts, then Plaintiff
20  ACDL will have to issue discovery requests that are duplicative of requests made by
21  counsel for named Prisoner Plaintiffs.  For example, Polson's Interrogatory No. 2,
22  requesting lists of "all prisoners prescribed psychotropic medications . . ." and Well's
23  Interrogatory No. 8, requesting lists of "all prisoners on the mental health case load as of
24  the response date in the isolation units," two examples of written discovery identified in
25  the Motion to Stay, are requests relevant to Plaintiff ACDL's claims, would need to be
26  requested anew to Defendants.  Naturally, propounding additional written discovery
27  would result in additional resource burdens for both Plaintiff ACDL and Defendants.

28          Even if this Court granted Defendants' request as to the claims of the class

1    members, surely Defendants would not want to bear the burden of discovery already

2    completed as to Plaintiff ACDL's claims  if the mental health and isolation class claims

3    move forward after the class issue is resolved.  By their own motion, counsel for named

4    Prisoner Plaintiffs have indicated willingness to accept the risk of conducting discovery

5    and continuing expert tours regardless of the outcome of the Ninth Circuit appeal.

6         **D.    Public Interest Favors Resolving the Deficiencies in ADC's Provision**

7         **of Constitutionally Adequate Conditions for Prisoners with Mental Illness**

8         Defendants' only argument that public interest favors granting a stay is the

9    interest in the efficient use of judicial resources.  (Doc. 532 at 7.)  However, because

10   Plaintiff ACDL's claims will move forward regardless of the outcome of Defendants'

11   Rule 23(f) appeal, this argument necessarily fails in relationship to those claims.  If this

12   Court granted a stay as to the claims of named Prisoner Plaintiffs and if Defendants lose

13   the appeal above, the costs of the litigation could nearly double for Defendants in

14   relationship to mental health and isolation claims.

15        Although cost is one public interest consideration, it is not the only public interest

16   issue.  For example, the Ninth Circuit has found that "it is always in the public interest

17   to prevent the violation of a party's constitutional rights."  *Melendres v. Arpaio*, 695

18   F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks and citation omitted).

19   Moreover, the ongoing harm to prisoners with mental illness who are receiving

20   inadequate mental health care is a more significant hardship than the costs of discovery

21   to Defendants.  In *Lopez V. Heckler*, for example, the Ninth Circuit Court of Appeals

22   determined that a cost of over ten million dollars to the Defendant absent a stay was not

23   a sufficient hardship when the public policy interest was greater.  713 F.2d 1432, 1436

24   (9th Cir. 1983).   The court found that "the physical and emotional suffering shown by

25   the plaintiffs in the record before us is far more compelling than the possibility of some

26   administrative inconvenience or monetary loss to the government."  *Id.* at 1437.  The

27   physical and emotional suffering of prisoners with mental illness is far more compelling,

28   particularly given that the *only* expense incurred by the Defendants is related to the cost

1   of litigating these claims.

2   **III.      CONCLUSION**

3          For the aforementioned reasons, Plaintiff ACDL requests this court deny

4   Defendant's Emergency Motion to Stay Proceedings Pending Rule 23(f) Appeal.

5   Plaintiff ACDL also respectfully requests this Court to  refrain from considering any

6   arguments related to Plaintiff ACDL should Defendants attempt to make them in their

7   Reply Brief.  *Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1514 n.6 (9th Cir. 1994)

8   (holding that "tardy presentation of an issue would raise serious questions of fairness

9   because the non-moving party would have had no chance to respond to contentions

10  raised initially in reply.").  (*See also* Doc. 175 at 11.)  In the alternative, Plaintiff ACDL

11  requests leave to file a surreply to address any new issues Defendants  raise in the reply.

12

13         Respectfully submitted this 18th day of July, 2013.

14                                        ARIZONA CENTER FOR DISABILITY LAW

15

16                                        s/ Jennifer A. Alewelt
                                          Jennifer A. Alewelt
17                                        Asim Varma
                                          Sarah Kader
18                                        J. J. Rico
                                          Cathleen M. Dooley
19                                        *Attorneys for Plaintiff Arizona Center for*
20                                        *Disability Law*

21

22

23

24

25

26

27

28

## CERTIFICATE OF FILING AND SERVICE

I certify that on this 18th day of July, 2013, I electronically transmitted the

foregoing to the Clerk's Office using the CM/ECF System for filing and transmittal of a

Notice of Electronic Filing to the following CM/ECF registrants in this action:

Michael Gottfried:   Michael.Gottfried@azag.gov
Lucy M. Rand        lucy.rand@azag.gov
Katherine Emiko Watanabe  Katherine.Watanabe@azag.gov
ARIZONA ATTORNEY GENERAL THOMAS HORNE
OFFICE OF THE ATTORNEY GENERAL

Timothy J. Bojanowski :   TBojanowski@swlfirm.com
Daniel P. Struck:         DStruck@swlfirm.com
Kathleen L. Wieneke:      KWieneke@swlfirm.com
Nicholas Daniel Acedo:    NAcedo@swlfirm.com
Courtney R. Cloman:       ccloman@swlfirm.com
Ashlee B. Fletcher:       afletcher@swlfirm.com
Anne Marie Orcutt         aorcutt@swlfirm.com
Rachel Love               rlove@swlfirm.com
STRUCK WIENEKE & LOVE, P.L.C.
*Attorneys for Defendants*

Caroline N. Mitchell:   cnmitchell@jonesday.com
Sophia Calderon:        scalderon@jonesday.com
Sarah Rauh:             srauh@jonesday.com
David C. Kiernan        dkieman@jonesday.com
John Laurens Wilkes      jlwilkes@jonesday.com
Kamilla Mamedova        kmamedova@jonesday.com
Jennifer K. Messina     jkmessina@jonesday.com
JONES DAY

James Duff Lyall:       jlyall@acluaz.org
Daniel Joseph Pochoda:  dpochoda@acluaz.org
Kelly Joyce Flood:      kflood@acluaz.org
ACLU FOUNDATION OF ARIZONA

Corene T. Kendrick:     ckendrick@prisonlaw.com
Donald Specter:         dspecter@prisonlaw.com
Sarah Norman:           snorman@prisonlaw.com
Alison Hardy:           ahardy@prisonlaw.com
PRISON LAW OFFICE

1

2  Amy Fettig:              afettig@npp-aclu.org
   David Cyrus Fathi:       dfathi@npp-aclu.org
3  Ajmel A Quereshi:        aquereshi@npp-aclu.org
   ACLU NATIONAL PRISON PROJECT
4

5  Daniel Clayton Barr:     DBarr@perkinscoie.com
   Amelia Morrow Gerlicher  agerlicher@perkinscoie.com
6  Kirstin T. Eidenbach:    keidenbach@perkinscoie.com
   John Howard Gray:        jhgray@perkinscoie.com
7  Matthew Benjamin duMee   mdumee@perkinscoie.com
8  PERKINS COIE LLP
   *Attorneys for Plaintiffs*
9

10 s/ Cathleen M. Dooley
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28