Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: dpochoda@acluaz.org
kflood@acluaz.org
jlyall@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]'**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,

Plaintiffs,

v.

Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,

Defendants.

No. CV 12-00601-PHX-NVW (MEA)

**PRISONER PLAINTIFFS' OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO STAY PROCEEDINGS PENDING RULE 23(F) APPEAL**

## I. INTRODUCTION

Defendants' "emergency" motion to stay all discovery and this Court's class certification order—filed months after their Rule 26(f) petition was filed—should be denied because the 13 named Plaintiffs and the 33,000 other class members still face constitutionally inadequate conditions of confinement, some life-threatening. These Plaintiffs will be substantially prejudiced by a stay because it will inevitably delay trial and their right to present their claims to this Court. Defendants do not even attempt to show that they will likely prevail on appeal; instead, they argue that a stay is warranted simply by a novel legal question. But in the Ninth Circuit, novelty is not enough. "In order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case for relief on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011). Further, the balance of hardships tips sharply *against* staying discovery.

For Prisoner Plaintiffs, a stay threatens irreparable injury to their physical and mental health and, in some cases, a serious risk of death. During the stay, Plaintiffs will continue to be deprived of constitutional medical, dental, and mental health care, and they will endure the associated physical and emotional suffering, examples of which Defendants themselves have amply documented as recently as April 2013. *See infra*, pp. 6-7.

Weighed against the dire risks to Plaintiffs, Defendants' primary argument for a stay, consuming half their motion, is that it will save them money. This is both unlikely and insufficient. A stay would relieve little, if any, litigation expense even if the class were de-certified. The thirteen named prisoner Plaintiffs and the Arizona Center for Disability Law ("ACDL") have the right to seek substantially the same injunctive relief even without a class certification. Moreover, regardless of the outcome of the appeal, a stay may well delay discovery to the extent that discovery already taken will need to be repeated or supplemented to ascertain whether ADC's practices changed in the interim. In any event, even taking Defendants' claims at face value, when "'[f]aced with [] a conflict between financial concerns and preventable human suffering, [the Ninth Circuit has] little

difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor.'" *Harris v. Bd. of Supervisors, Los Angeles Cnty.*, 366 F.3d 754, 766 (9th Cir. 2004) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)); *see also Rodde v. Bonta*, 357 F.3d 988, 999 (9th Cir. 2004). Last year, this Court correctly refused to delay the case when Defendants moved for a stay at that time [Doc. 175 (10/9/2012 Order Denying Motion to Dismiss) at 10], and there is no reason to stay the case now.

## II. ARGUMENT

Defendants bear the burden to demonstrate the necessity of a stay, and they have failed. [*See id.* (denying motion to stay)] To obtain a stay, Defendants must show: (1) that they are likely to succeed on the merits of the appeal, (2) that they will be irreparably injured absent a stay, (3) that a stay will not substantially injure Plaintiffs or third parties, and (4) that the stay is in the public interest. *See Leiva-Perez*, 640 F.3d at 964. The standard for granting a stay is a continuum, "delineated on one end by a showing of a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; and, on the other end, by a showing of a substantial case on the merits and that the balance of hardships tips sharply in favor of a stay." *Id.* at 971. In other words, in a case like this one, where the moving party does not or cannot demonstrate a strong likelihood of success, it must show that the remaining elements of the test—those weighing the hardships of the parties—strongly favor a stay. Defendants cannot succeed in this endeavor, and the Motion should be denied.

### A. Defendants have a weak chance of success on appeal, as the Court correctly certified the Plaintiff class and as Defendants overstate the novelty of their arguments on appeal.

Defendants do not even attempt to show that their appeal is likely to succeed on the merits. Nor could they, as this Court correctly analyzed Ninth Circuit and Supreme Court precedent federal case law after *Wal-Mart v. Dukes*, and expert declarations and documents demonstrating that the members of the Plaintiff class are subjected to the same unconstitutional risk of harm. [*See generally* Doc. 372 (3/6/2013 Order Granting Motion for Class Certification)] Thus, as a threshold matter, Defendants have not met their

burden to show that they have a "substantial case for relief on the merits." *Leiva-Perez*, 640 F.3d at 968 ("[T]he idea [of the serious legal question requirement] is that in order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case for relief on the merits."). Defendants instead focus entirely on the alleged novelty of the issues to justify the stay, but *Leiva-Perez* states the rule that the novelty of an issue, without a showing of substantive merit, is not enough to justify a stay.

Defendants fail to demonstrate even that they present a novel issue. Contrary to Defendants' belief, the Ninth Circuit has addressed the certification of prisoners' claims related to conditions of confinement. *Armstrong v. Davis*, 275 F.3d 849, 868-69 (9th Cir. 2001). Defendants argue that claims of inadequate health care and unconstitutional conditions of isolation are inherently case specific, but this is precisely the same argument that the *Armstrong* court rejected. *Id.* In a case involving prisoners with mobility, vision, hearing, kidney, and learning disabilities, the Ninth Circuit held "that commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all the putative class members." *Id.* at 868. Defendants' arguments are no different from the arguments already rejected by the Ninth Circuit.

Defendants also make a misdirected and superficial argument that this will be the first opportunity for the Ninth Circuit to apply *Wal-Mart Stores, Inc., v. Dukes* to Eighth Amendment violations. As this Court correctly explained, however, *Dukes'* "analysis on commonality arose in a legally and factually inapposite context" arising out of a nationwide class of employees seeking monetary relief for promotion decisions handled independently by thousands of Wal-Mart store managers. [Doc. 372 at 13] By contrast, Plaintiffs seek only injunctive relief based on system-wide policies and practices that place ADC prisoners at a common risk of harm. [*Id.* at 14 ("[T]he evidence here suggests that the root cause of the injuries and threats of injuries suffered by Plaintiffs is the systemic failures in the provision of health care generally.")] The Court's decision correctly aligned with the vast majority of post-*Dukes* decisions for classes seeking injunctive relief rather than damages. [*See* Doc. 242 (11/9/2012 Plaintiffs' Motion for

Class Certification) at 13-14 (gathering post-*Dukes* authority)][1] Defendants' belief that the Ninth Circuit's grant of the Rule 23(f) petition suggests that Defendants have a reasonable chance of success on appeal is pure speculation. The class certification issues in this case are not so unsettled as to warrant a stay pending appeal.

**B. The balance of the hardships and the relative risks of irreparable harm tip sharply *against* Defendants.**

Defendants at most assert that there are "serious questions" for appeal—not that they are likely to succeed on appeal—and therefore bear the heavy burden to show that the hardships tip "sharply" in their favor. *See Leiva-Perez*, 640 F.3d at 971. That showing is a "threshold" requirement for a stay pending appeal; without a showing of irreparable harm, a stay "may not issue, regardless of [Defendants'] proof regarding the other stay factors." *Id.* at 965, 968.

Defendants, however, exaggerate the "irreparable" harm they would suffer by having to litigate this case and all but ignore what a stay would do to ADC prisoners and the Court's trial schedule.

It is beyond dispute that continuing violations of the Eighth Amendment during a stay constitute irreparable injury to Plaintiffs. *See Monterey Mech. Co. v. Wilson*, 125

[1] *See Rosas v. Baca*, No. CV 12-00428-DDP (SHx), 2012 WL 2061694, at *5 (C.D. Cal. June 7, 2012) (post-*Dukes* decision certifying prisoner class where the question whether officials were deliberately indifferent to a pattern or practice of violence was a common question likely to yield a common answer); *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 989 (D. Ariz. 2011) (certifying class in racial profiling lawsuit against sheriff; court found that commonality was satisfied despite the fact that "the factual circumstances of the individual stops involving the named Plaintiffs differ[ed], [where the named Plaintiffs] claim[ed] generally that [the sheriff's office] ha[d] a policy of racial profiling"); *Henderson v. Thomas*, No. 2:11-cv-224, 2012 WL 3777146, at *5-7 (M.D. Ala. Aug. 30, 3012) (post-*Dukes* decision certifying prisoner class where plaintiffs alleged a statewide policy of HIV segregation in the state prison system); *Morrow v. Washington*, 277 F.R.D. 172, 192 (E.D. Tex. 2011) (post-*Dukes* decision certifying class where plaintiffs alleged a "city wide policy . . . of targeting racial and ethnic minorities for traffic stops"); *Connor B. v. Patrick*, 278 F.R.D. 30, 31-35 (D. Mass. 2011) (certifying class of abused children in custody of state agency); *D.G. ex rel. Strickland v. Yarbrough*, 278 F.R.D. 635, 639 (N.D. Okla. 2011) (certifying class of children in foster care seeking redress for the defendants' failure to adequately monitor their safety); *see also Brown v. Plata*, 131 S. Ct. 1910, 1923 (2011) (decided the same term as *Dukes*; affirming class-wide injunctive relief to remedy inadequate medical and mental health care in all California prisons).

F.3d 702, 715 (9th Cir. 1997) ("'an alleged constitutional infringement will often alone constitute irreparable harm'") (citation omitted); *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2nd Cir. 1984) (affirming finding of irreparable harm based on threat to plaintiffs' Eighth Amendment rights). And even assuming for the sake of argument that a stay would reduce Defendants' litigation costs, the risk of constitutional violations, physical injury, and death far outweigh those budgetary concerns. *See Harris*, 366 F.3d at 766 (plaintiffs' harm, including "pain, infection, amputation, medical complications, and death due to delayed treatment," outweighed harm to County of budget shortfall); *Lopez*, 713 F.2d at 1437 ("the physical and emotional suffering shown by plaintiffs in the record before us is far more compelling than the possibility of some administrative inconvenience or monetary loss to the government"); *Rodde*, 357 F.3d at 999 (balance of hardships tipped in favor of plaintiffs, who would face "delayed and/or complete lack of necessary treatment, and increased pain and medical complications").[2]

**1. A stay would substantially injure Plaintiffs by causing extreme pain and suffering and risk of death, decidedly tipping the balance of the hardships against Defendants.**

Defendants assert in only a few sentences that a stay would not "irreparably harm plaintiffs." Defendants totally ignore, however, that a stay would inflict further suffering on human beings who have already endured years of systemic mistreatment. They will continue living under conditions that the Department of Corrections' own monitoring reports have deemed "woefully inadequate." [Ex. 1 (ADC088842)] For some gravely ill prisoners, an indefinite delay in proceedings could lead to death. The situation is so bad that ADC's own health care contractor informed the governor's office, in advance of a November 8, 2012 meeting, that "the current class action lawsuits are accurate" and

[2] The Supreme Court has explained that litigation expenses do not constitute irreparable harm at all. *See, e.g.*, *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.") (citation omitted); *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) ("[W]e do not doubt that the burden of defending this proceeding will be substantial. But the expense and annoyance of litigation is part of the social burden of living under government.") (citation and internal quotation marks omitted).

declared that "the ADC system is broken, and does not provide a constitutional level of care." [Ex. 2 at 3 (WEXFORD 000001-3); *see also* Ex. 3 (WEXFORD 000004-131) at 18 (ADC had "none" of the components of "constitutionally mandated correctional health care"), 29-32 (failure to follow accepted guidelines in treating inmates with Hepatitis C and HIV), 58-61 (failure to cooperate and facilitate private medical provider's provision of healthcare), 104-111 (same), 127 ("The current class action lawsuits are accurate.")]

This harsh reality is well-supported by specific evidence in the record. The following statements were made by ADC's own employees in March and April 2013 regarding the delivery of health care to prisoners, and confirm that prisoners continue to face a real and actual, as opposed to an abstract or theoretical, risk of ongoing and irreparable harm:

- "Rynning Unit has not had a provider in 6 weeks . . . . The backlogged appointments go back to August." ASPC-Eyman Monitoring Report, April 16, 2013 [Ex. 4 (ADC088816)]

- "Provider staffing is woefully inadequate . . . there were more than 3.500 appointments backlogged . . . . There is one psychiatrist for the entire complex. Staffing is insufficient to renew medications or see patients in a timely manner." ASPC-Eyman Monitoring Report, April 15, 2013 [Ex. 1 (ADC088842)]

- "Kasson Unit did not have evidence of a nurses line being run in April." ASPC-Florence Monitoring Report, April 27, 2013 [Ex. 5 (ADC088847)]

- "Globe . . . [n]o provider was on site the entire month of March." ASPC-Florence Monitoring Report, April 14, 2013 [Ex. 6 (ADC088852)]

- "Inmate . . . was exposed to blood from a HIV positive inmate on April 24th. There was no progress or SOAPE note documenting the incident in the inmate's medical record to indicate the inmate was seen by medical." ASPC-Florence Monitoring Report, April 30, 2013 [Ex. 7 (ADC088863)]

- "Staff reported that they are not to use overtime or registry nurses. The tentative schedule for May leaves num[]erous times when nurses are not scheduled, which would leave IPC [infirmary] uncovered, no nurses to provide insulin or other care on Sundays, and cell blocks without coverage on some days." ASPC-Florence Monitoring Report, April 16, 2013 [Ex. 8 (ADC088885)]

- "Monitors have been informed by Corizon supervisors overtime and the use of agency is not permitted by upper management; however, an extremely high back load number intakes not being timely medically processed resulted in medical and medical records staff working until midnight last

week." ASPC-Phoenix Monitoring Report, April 28, 2013 [Ex. 9 (ADC088976)]

- "The staffing is not adequate/effective to meeting the facility's needs of inmate population as evidence by sick call not being conducted daily on yards, La Paz with 3-4 months backlog of chronic care visits." ASPC-Yuma Monitoring Report, April 26, 2013 [Ex. 10 (ADC089108)]
- "Dental: Appointments four months plus behind. No full time dentist." ASPC Safford Monitoring Report, March 4, 2013 [Ex. 11 (ADC88780)]
- "HIV [positive inmate] . . . . Last cc visit was 6/25/2012 with 90 days, but no further visit." ASPC-Eyman Monitoring Report, April 4, 2013 [Ex. 12 (ADC088727-32)]
- "Rynning: Unit has not had a doctor or Mid level provider in at least 5 weeks." ASPC-Eyman Monitoring Report, April 4, 2013 [*Id.*]
- "[C]hronic care appointments ha[ve] been pushed to the back burner." ASPC-Douglas Monitoring Report, April 5, 2013 [Ex. 13 (ADC088725-26)]; ASPC-Phoenix Monitoring Report, April 5, 2013 [Ex. 14 (ADC088771-79)]
    - "Central Unit is 318 chronic care appointments behind." Florence Complex Findings for March 2013 [Ex. 15 (ADC088742-47)]
    - "East is 250+ behind on their chronic care appointment and is currently without a regular HCP assigned to the unit." Florence Complex Findings for March 2013 [*Id.*]

While this case has been pending, Plaintiffs' counsel tried to take preservation depositions or otherwise collect information from several prisoners who died from inadequate health care before their stories could be heard. For example, Plaintiffs had just informed defense counsel of their intent to depose , a prisoner , when Plaintiffs' counsel received an email notification from Defendants' counsel that had passed away. Plaintiffs were similarly in the process of scheduling an interview with , who , when they discovered that had passed away. Likewise, Plaintiffs' counsel has on multiple occasions brought particular prisoners to the attention of the ADC, and several of those prisoners have died.

What is more, the rate of suicides in ADC is increasing. ADC experienced six prisoner suicides in all of 2012. In the first six months of 2013 there have been five, including three at a single facility in a three-week period in April and May. [Ex. 16

(Defs.' Resp. to Pl. Wells' First Set of Interrog., Resp. to Interrog. No. 1 (June 26, 2013))] The number of suicides this year yields an annual suicide rate of 25 per 100,000 prisoners, well above the national average for state prisons of 16 per 100,000. [*See* Margaret E. Noonan, U.S. Department of Justice, Bureau of Justice Statistics, *Mortality in Local Jails and State Prisons*, 2000-2010 - Statistical Tables (December 2012), at 14, available at http://www.bjs.gov/content/pub/pdf/mljsp0010st.pdf.] Three more inmates died just this week, including another suicide. [*See* ADC, *ADC News Releases* (accessed July 18, 2013), available at http://www.azcorrections.gov/Minh_news_gov.asp.] In all, 44 prisoners have died so far this year in ADC prisons. Any delay in the trial prejudices the surviving prisoners by allowing dangerous, unconstitutional conditions to continue.

**2. A stay on balance disrupts, rather than advances, judicial efficiency.**

Defendants focus only on their own litigation expenses, which as noted above are outweighed by the risk of actual injury to ADC prisoners. Defendants ignore that a stay would keep this case on the docket for years and delay trial. Under the current schedule, trial will be held two-and-a-half years after Plaintiffs filed their complaint. A stay is likely to extend that time to three years, if not longer. Defendants baldly speculate that a stay will not significantly delay the case because the appeal is on an expedited schedule. Even assuming the Ninth Circuit calendars oral argument for the fall, given the Ninth Circuit's extensive docket and the priority given to criminal appeals, there is no telling when a decision will issue. The expedited appeal here will delay this case at least several months even if the Ninth Circuit hears and decides the case quickly. The delay could be far longer.

Further, this delay is unlikely to preserve judicial resources because the thirteen named Plaintiffs and the ACDL can continue the case even without class certification. As the Court explained in the July 20, 2012 hearing ordering that merits discovery begin even before class certification briefing, the injunction the named Plaintiffs pursue "could well be very similar with or without the certification." [Ex. 17 (Excerpts from 7/20/12 Hearing

Tr.) at 11-12)] Meanwhile, the ACDL has statutory standing to seek an injunction on behalf of all prisoners with mental health needs. 42 U.S.C. § 10801. Accordingly, much of the same discovery must take place with or without class certification. This includes document discovery, depositions, and expert tours aimed at understanding ADC's facilities, policies, and practices and the way in which ADC places prisoners at risk of harm.

Defendants complain that they have to supplement discovery requests. But Defendants would have the duty to produce many of the same documents with or without class certification, including any documents about the named Plaintiffs, documents about ADC's policies and practices, and documents relating to ADC's medical subcontractors. Information responsive to these requests will become only more voluminous as time goes on, making production after the stay is lifted additionally burdensome.

Likewise, interrogatories and depositions about ADC's facilities and practices are permitted where reasonably calculated to lead to the discovery of admissible evidence. The named Plaintiffs and ACDL would seek a system-wide injunction even without a class because only that type of injunction can reduce the risk of future injury. This is not a case in which Plaintiffs seek monetary recovery for specific instances of past harm; rather, Plaintiffs seek to abate the risk of future harm through an injunction. The case would require system-wide discovery even without a class because many of these decisions are made on a system-wide basis. Moreover, by the time a potential stay is lifted, and regardless of the outcome of the appeal, some of the discovery already taken will need to be repeated in order to address developments during the intervening months or years. Accordingly, the potential savings to Defendants would not be as significant as they suggest.

Defendants' assertions about expert tours are similarly unpersuasive. Defendants contend that the tours impose a severe burden, but much of that burden is self-inflicted because of the way they choose to staff the tours. Further, many of the tours would need to take place even absent a class. For mental health claims, ACDL would have the right

to conduct tours on its own. The remaining named Plaintiffs likewise would require expert tours—at least of the facilities in which they are housed—to evaluate ADC's conditions of confinement.

**C. The public interest in preventing the violation of constitutional rights and in conserving judicial resources confirms that no stay should issue.**

Public interest considerations confirm that a stay is not appropriate in this case. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation and internal quotation marks omitted); *accord United States v. Raines*, 362 U.S. 17, 27 (1960) ("there is the highest public interest in due observance of all constitutional guarantees"). As such, "[t]he public has a strong interest in the provision of constitutionally-adequate health care to prisoners." *Flynn v. Doyle*, 630 F. Supp. 2d 987, 993 (E.D. Wis. 2009). *See also Farnham v. Walker*, 593 F. Supp. 2d 1000, 1017 (C.D. Ill. 2009) (holding that public had an interest in the maintenance of prisoner's health during the pendency of the lawsuit); *Duran v. Anaya*, 642 F. Supp. 510, 527 (D.N.M. 1986) ("The public at large is not served by . . . the willful or wanton infliction of pain and suffering on prisoners . . . [or] the deterioration and dismantling of [prison] medical and mental health systems"). Therefore, "the public interest lies in obviating the ongoing constitutional violations in the mental and medical health care systems in [Arizona's] prisons" by denying a stay and allowing the case to progress to a determination on the merits. *Coleman v. Brown*, Nos. 2:90–cv–0520 LKK JFM P, C01–1351 TEH, 2013 WL 3356910, at *13 (E.D. Cal. July 3, 2013).

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion for a stay.

Dated: July 18, 2013

**PERKINS COIE LLP**

By: s/ Kirstin T. Eidenbach

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email: dbarr@perkinscoie.com
agerlicher@perkinscoie.com
keidenbach@perkinscoie.com
jhgray@perkinscoie.com
mdumee@perkinscoie.com

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: dpochoda@acluaz.org
kflood@acluaz.org
jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email: dspecter@prisonlaw.com
ahardy@prisonlaw.com
snorman@prisonlaw.com
ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email: dfathi@npp-aclu.org
afettig@npp-aclu.org
aquereshi@npp-aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email: cnmitchell@jonesday.com
dkiernan@jonesday.com
scalderon@jonesday.com
srauh@jonesday.com

*Admitted *pro hac vice*

R. Scott Medsker (D.C. 976405)*
**JONES DAY**
51 Louisiana Avenue, NW
Washington, D.C. 20001-2113
Telephone: (202) 879-3837
Email: rsmedsker@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email: jlwilkes@jonesday.com
tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone: (212) 326-3498
Email: kmamedova@jonesday.com
jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2013, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

*Attorneys for Defendants*

Jennifer Alewelt
Asim Varma
Sarah Kader
J.J. Rico
Cathleen M. Dooley
ARIZONA CENTER FOR DISABILITY LAW
jalewelt@azdisabilitylaw.org
avarma@azdisabilitylaw.org
skader@azdisabilitylaw.org
jrico@azdisabilitylaw.org
cdooley@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

s/ Delana Freouf