Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorney General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Courtney R. Cloman, Bar No. 023155
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br> Defendants. | NO. 2:12-cv-00601-NVW <br><br> **DEFENDANTS' REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY PROCEEDINGS PENDING RULE 23(f) APPEAL** <br><br> **[Expedited Ruling Requested]** |

As much as Plaintiffs would like the Court to believe, this is not a choice between saving lives and saving money. This is about facing the reality that the Ninth Circuit may reverse, either in whole or in part, this lawsuit's class action status. A reversal of the class certification order will drastically change the landscape of this case: it would reduce the number of Individual Plaintiffs from 33,000 inmates to 13 inmates; it would significantly reduce Plaintiffs' discovery; it would alter (narrow) the scope of Plaintiffs' relief; and it could even lead to settlement. Indeed, Plaintiffs' own counsel has communicated to the press that the Ninth Circuit's decision to review the propriety of class certification in this case is a "concern given the implications." (Ex. 6.)

Plaintiffs' response to these realities is scare tactics. They boldly allege *continuing* constitutional violations, although there has *never* been a finding of unconstitutionality in this case. They proclaim, in the most general of terms, that inmates are suffering and facing impending death, but provide no actual evidence of any specific instance, much less evidence on a systemic scale. They even go so far as to suggest that recent inmate deaths and suicides are attributable to ADC's provision of health care, but again make no connection between the two (and provide no details regarding the circumstances of those death/suicides). As discussed below, none of Plaintiffs' purported "evidence" establishes actual harm. It is purely speculative.

Defendants have established not only a "serious legal question," but also irreparable (and actual) harm if a stay is not granted. These factors, as well as the public's interest in the efficient use of judicial resources and resolving the most important issue in this case thus far, sharply tip in favor of a stay.

**I.    A RULE 23(F) STAY IS WARRANTED**

Plaintiffs fail to cite a single case that has *denied* a stay pending a Rule 23(f) appeal, and they make no attempt to distinguish the cases cited by Defendants that have granted Rule 23(f) stays. *See*, *e.g.*, *Brown v. Wal-Mart Stores, Inc.*, 5:09-CV-03339-EJD, 2012 WL 5818300, at *1 (N.D. Cal. Nov. 15, 2012); *Gray v. Golden Gate Nat. Recreational Area*, C 08-00722 EDL, 2011 WL 6934433, at *1 (N.D. Cal. Dec. 29, 2011).

A. **Likelihood of Success**

Plaintiffs argue that "novelty is not enough" to satisfy this first factor. Citing *Leiva-Perez*, Plaintiffs contend that a party requesting a stay must show a "substantial case for relief on the merits" *in addition to* raising a novel legal question in their Rule 23(f) appeal, and that "the novelty of an issue, without a showing of substantive merit, is not enough to justify a stay." (Dkt. # 541 at 3–4.) Plaintiffs have it wrong. In describing the "many ways" the court has described the "minimum quantum of likely success necessary to justify a stay," including the "serious legal question" test, the court in *Leiva-Perez* stated:

> We think these formulations are essentially interchangeable, and that none of them demand a showing that success is more likely than not. Regardless of how one expresses the requirement, the idea is that in order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case for relief on the merits.

640 F.3d at 967–68 (internal citations omitted). Thus, the court held that a "substantial case for relief on the merits" is made *by showing* that there are "serious legal questions" raised. *See Gray*, 2011 WL 6934433, at *1 ("'In order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case for relief on the merits.' The Ninth Circuit has recognized that this showing is satisfied by a showing of "reasonable probability" or "fair prospect;" "a substantial case on the merits;" *or* that "serious legal questions are raised.") (quoting *Leiva-Perez*, 640 F.3d at 967–68) (emphasis added). It is not an *additional* hurdle to overcome.

Plaintiffs' proposed double burden has been rejected by other courts addressing the propriety of a Rule 23(f) stay:

> Plaintiffs do not, however, address Defendants' argument that issues presenting unsettled questions of law present serious legal questions so as to demonstrate sufficient likelihood of success on a motion to stay. Plaintiffs do not appear to dispute that the issues raised in Defendants' Rule 23(f) petition are matters of first impression in this circuit. Following other courts in this district that have held that a showing that "serious legal questions" have been raised on appeal will satisfy the requirement of likelihood of success on the merits, the Court determines that Defendants have made a sufficient showing of the likelihood of success.

2

1  *Gray*, 2011 WL 6934433, at *2 (citing *Hunt v. Check Recovery Systems, Inc.,* C 05 4993
2  SBA, 2008 WL 2468473 (N.D. Cal. June 17, 2008); *Pokorny v. Quixtar Inc.,* 07–00201
3  SC, 2008 WL 1787111 (N.D. Cal. Apr. 17, 2008)); *see also Brown*, 2012 WL 5818300, at
4  *2 ("A Rule 23(f) petition that presents an unsettled question of law constitutes a 'serious
5  legal question' sufficient to satisfy this first prong of the stay analysis. Plaintiff does not
6  dispute that Defendant's Rule 23(f) petition presents a case of first impression to the Ninth
7  Circuit. This fact alone could support a finding that the first factor weighs in favor of a
8  stay."). Plaintiffs' contention that Defendants must "show that they will likely prevail on
9  appeal" was also squarely rejected by *Leiva-Perez*: "What is clear, however, is that to
10 justify a stay, petitioners need not demonstrate that it is more likely than not that they will
11 win on the merits." 640 F.3d at 966.

12        A Rule 23(f) appeal that presents an unsettled question of law "constitutes a
13 'serious legal question' sufficient to satisfy this first prong of the stay analysis." *Brown*,
14 2012 WL 5818300, at *2. No additional showing is necessary. The Ninth Circuit's
15 decision to grant Defendants' Rule 23(f) Petition further validates a stay. Courts have
16 granted stays based on the *possibility* that an appellate court may grant a Rule 23(f) appeal
17 raising a novel issue. *See*, *e.g.*, *Gray*, 2011 WL 6934433, at *1 (factor satisfied where
18 novelty of issue merely "increas[ed] the likelihood" that Ninth Circuit would grant Rule
19 23(f) petition, and court "could reverse" class certification order); *Johnson v. Geico Cas.*
20 *Co.*, 269 F.R.D. 406, 412 (D. Del. 2010) (factor satisfied where it was "likely" that Third
21 Circuit would grant Rule 23(f) petition of novel issue and "may disagree" with class
22 certification findings); *In re Lorazepam & Clorazepate Antitrust Litig.*, 208 F.R.D. 1, 4–6
23 (D.D.C. 2002) (factor satisfied where court of appeals directed parties to address the
24 merits of certification decision as well as whether Rule 23(f) petition should be granted,
25 and where "partial reversal is possible and not insignificant"); *see also City of Oakland v.*
26 *Holder*, C 12-05245 MEJ, 2013 WL 3357887 (N.D. Cal. July 3, 2013) ("While the Court
27 ultimately held that Oakland's claims did not fit within the parameters of the APA, this
28 Court is not infallible in its rulings and Oakland's appeal allows the Ninth Circuit to

3

provide guidance on whether this Court's construction of the applicable statutory provisions [a novel issue] was correct."). Plaintiffs criticize Defendants for filing their request for a stay now instead of at the time they filed their Rule 23(f) Petition. But Defendants were merely respecting the Court's prior admonition regarding stays. Now that the Ninth Circuit has granted the Petition, Defendants are on solid ground for requesting a stay.[1]

Plaintiffs alternatively argue that the questions presented in the Rule 23(f) Petition are not novel because the Ninth Circuit "addressed the certification of prisoners' claims related to conditions of confinement" in *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001). But *Armstrong* did not involve an *Eighth Amendment* violation; it involved claims under the Americans with Disabilities Act and the Rehabilitation Act. *Id*. at 854. The Ninth Circuit has *never* addressed the propriety of certifying an Eighth Amendment claim alleging inadequate health care or conditions of confinement. Despite three opportunities to show otherwise (in their Reply to the Motion for Class Certification, their Answer to the Rule 23(f) Petition, and in this Response), Plaintiffs have not.[2]

Plaintiffs also consider Defendants' contention that the Rule 23(f) appeal will be the first time the Ninth Circuit has addressed *Wal-Mart* in the context of an Eighth Amendment claim to be "misdirected and superficial." Those characterizations are wrong

---

[1] The Ninth Circuit took more than 3 months to rule on the Rule 23(f) Petition, which is unusual in counsel's experience. Defendants had no control of that. It is also worth noting that the panel consisted of three judges, not just two, as is typically the case. The three-judge panel included Chief Judge Alex Kozinski. (Dkt. # 532–1 at 1.)

[2] Plaintiffs cited *Armstrong* in their Answer to the Rule 23(f) Petition to defeat Defendants' novelty argument. (Ex. 1 at 1–2, 9.) The Ninth Circuit apparently disagreed with Plaintiffs' interpretation of *Armstrong*. In addition to the fact that *Armstrong* did not involve an Eighth Amendment claim, the inmates' differences in disabilities in that case did not defeat commonality because the differing disabilities did not dictate whether there was an underlying statutory violation; they all qualified as disabilities under the statutes. *LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985), the case *Armstrong* relied upon, recognized this key distinction: "Of course, if material variations exist as to the law or facts involved with individual class member injuries, then the commonality requirement would not be met." In the instant Eighth Amendment case, Defendants have maintained that the differing health conditions, treatment, and alleged delay/harm *are* "material variations" that dictate whether there was a constitutional violation.

4

because it *is* the first time the Ninth Circuit will address *Wal-Mart* in the context of an Eighth Amendment claim. Plaintiffs point to the Court's certification order and ruling that *Wal-Mart* does not apply, but that is precisely one of the rulings that Defendants are challenging on appeal. (Dkt. # 532–1 at 19–20.) The Ninth Circuit will decide for the first time whether *Wal-Mart* applies in this context or not.

The ACDL argues that the likelihood of success factor is irrelevant to their claims, because their claims (which were not certified) are not affected by the outcome of the appeal; thus, a stay of proceedings *as to their claims* should not be entered. This argument ignores the fact that the ACDL's claims are *identical* to the class claims. (Dkt. # 1.) Staying the class claims, but allowing the ACDL's claims to continue, will result in piecemeal litigation and discovery that will require Defendants to defend against the mental health and conditions of confinement claims *twice*: once against the ACDL (while the appeal is pending) and a second time against the Individual Plaintiffs (after the appeal). This would be a tremendous waste of judicial resources.[3] A stay of all claims is necessary to avoid this result.[4]

Finally, Plaintiffs criticize Defendants for not arguing that they will likely prevail on appeal. Again, that is not required under *Leiva-Perez*, 640 F.3d at 966. But regardless, this is a petty argument. Of course Defendants believe their arguments will

---

[3] *See Richtek Tech. Corp. v. UPI Semiconductor Corp.*, C 09-05659 WHA, 2011 WL 445509, at *6 (N.D. Cal. Feb. 3, 2011) ("Although the copyright claim for relief will not be resolved by the patent reexamination proceedings, a stay of that portion of the action is appropriate in light of the stay to be placed on litigating the other claims for relief. Richtek's copyright claim arises from the same basic factual theory as its patent claims for relief, so discovery for the copyright and patent portions of the action will be inextricably intertwined. Accordingly, a partial stay of the action that applied only to the patent claims for relief and allowed piecemeal discovery and litigation to move forward on the copyright claim simply would create a mess.").

[4] Defendants' Motion requested a stay of "all proceedings," and none of the arguments were limited to just the Individual Plaintiffs. Defendants note that the ACDL has allowed counsel for the Individual Plaintiffs to take the lead in this lawsuit. The ACDL has only served one set of ROGs (10) and one set of RFPs (12), both in June 2012. It has not sent any RFAs, issued any subpoenas, or noticed any depositions. It is questionable whether it would go forward with their claims without the support and resources of counsel for the Individual Plaintiffs.

1 prevail on appeal. That is why they vigorously opposed Plaintiffs' Motion for Class Certification, filed a Motion for Reconsideration, *and* filed a Rule 23(f) Petition, which Defendants attached to their Emergency Motion to Stay. Defendants strongly believe in their position (exhaustively outlined in all three pleadings) and re-urge their challenges to the class certification order here. Rehashing the specifics of those arguments in a stay request would have been counter-productive, and likely drawn a cursory response from Plaintiffs ("for all of the reasons in the Court's order").

### B. Defendants Will Suffer Irreparable Harm

Plaintiffs try to minimize the harm inflicted on Defendants if a stay is not granted, referring to it as merely "discovery costs" and the burden of "having to litigate this case." First, Plaintiffs do not dispute that class discovery is extraordinary and extremely burdensome, and that they would not be entitled to conduct all of it if the class was decertified. This is irreparable harm for purposes of a Rule 23(f) stay. *See Brown*, 2012 WL 5818300, at *4; *Gray*, 2011 WL 6934433, at *3; *see also Brown v. Charles Schwab & Co., Inc.,* C/A 2:07-CV-03852DCN, 2010 WL 424031 (D.S.C. 2010) ("The difference between this case as a class action and this case as a direct action is significant, especially in terms of the burdensome and costly class-wide discovery that will take place if this case proceeds as a class action. Class-wide merits discovery would not only burden the parties (particularly Schwab), but it could also burden the court if discovery disputes were to arise. And any expenditure of resources on class-wide discovery will be for naught if the Fourth Circuit sides with Schwab in its appeal of the class certification decision."). The cases cited by Plaintiffs for the proposition that discovery/litigation costs do not constitute irreparable harm are not class actions, and therefore do not contemplate the unique burden of class discovery. *See Renegotiation B. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974); *F.T.C. v. Standard Oil Co. of California*, 449 U.S. 232, 244 (1980); *R & L Ltd. Investments, Inc. v. Cabot Inv. Properties, LLC*, CV 09-1525-PHX-MHM, 2010 WL 3789401 (D. Ariz. Sept. 21, 2010).

6

Second, the harm is much more than just a financial burden. For example, in addition to the attorneys' fees incurred for four attorneys attending fifty-nine (59), 9-hour expert tours, the tours impose a tremendous burden on ADC staff who must also attend the tours. Their assignment to these tours (up to as many as five staff members) pulls them away from their everyday responsibilities.[5] Their absence, in turn, can affect the provision of inmate health care, the very thing Plaintiffs are challenging. The tours also pose a risk to the safety and security of the facilities. With more than ten civilians walking around the facility, interacting with inmates, and going into housing units, security is on high alert to ensure that there are no incidents or security breaches.[6]

Class action status has also afforded Plaintiffs' counsel the attorney-client privilege with every single inmate at every facility during their expert tours. Counsel for Plaintiffs invoke this privilege during every tour to so that they and their experts can have confidential interviews with any inmate they come across. Counsel for Defendants are excluded from these interviews. If Plaintiffs' counsel did not represent the class, Defendants' exclusion would not be appropriate. Counsel for Plaintiffs also invoke their status as class counsel to review inmate records without releases. Indeed, Plaintiffs' experts spend most of their time on these tours interviewing inmates and reviewing records. (Ex. 3.) Plaintiffs' counsel and their experts also tour facilities and units that the named Plaintiffs do not live in because of class action status. Such unfettered access to non-Plaintiff inmates and facilities would not be allowed if this case was not certified as a class action. These are the obvious reasons why Plaintiffs did not begin their tours until after class certification. Unless a stay is granted, Defendants are harmed each day by

---

[5] Plaintiffs contend that this burden is "self-inflicted because of the way they choose to staff the tours." Defendants have gone out of their way to accommodate *Plaintiffs'* request to speak with individuals knowledgeable about many broad categories of subjects. (Ex. 2.)

[6] During a recent tour, an inmate in a housing dormitory became agitated during his interview with Plaintiffs' expert Dr. Bobby Cohen. Dr. Cohen then became upset and argumentative with ADC staff and defense counsel, and stormed out of the room. There were other, unrestrained inmates present, and thankfully the situation did not escalate.

7

1  these sweeping tours.  And once a tour takes place, that harm cannot be undone.[7]

2  Plaintiffs contend that "much of the same discovery must take place with or without class certification."  But their argument on this point is slight, and actually concedes that most of the discovery would not be allowed but for class certification.  For example, the Individual Plaintiffs contend that they are only entitled to "many" (but not all) "of the same documents with or without class certification, including any documents about the named Plaintiffs, documents about ADC's policies and practices, and documents relating to ADC's medical subcontractors."  Similarly, the ACDL is only entitled to conduct discovery on the mental health claims (not medical or dental claims).  These documents pale in comparison to the requests they are currently making.  They also acknowledge that the Individual Plaintiffs would only be entitled to take an expert tour of the housing units they live in to assess the conditions of their confinement (not medical, dental, and mental health tours), and that the ACDL tours would be limited to mental health tours.  That is just 9 of the remaining 35 tours.[8]

With these concessions, Plaintiffs try to broaden the scope of discovery necessary for their individual claims (in hopes of convincing the Court of greater overlap) by stating that the Individual Plaintiffs are seeking a "system-wide injunction," which necessarily requires "system-wide discovery."  This is not so.  If a class is not certified, an injunction may cover only the named plaintiffs. *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 728 n.1 (9th Cir. 1983) (quoting *Nat'l Ctr. For Immigrants Rights, Inc. v. INS*, 743 F.3d 1365 (9th Cir. 1984));  *see also* 18 U.S.C. § 3626(a)(1) (prospective relief relating to prison conditions must be "narrowly drawn" and "shall extend no further than necessary to

---

[7] There are still 35 expert tours scheduled from July 22, 2013 through September 6, 2013, including three on July 22, three on July 23, two on July 24, two on July 25, and one on July 26.

[8] The ACDL admits that the expert tours are being conducted by the Individual Plaintiffs' experts, not their own, and that if it is allowed to proceed on their claims, they would allow counsel for the Individual Plaintiffs and their experts to resume their tours and follow in tow. (ACDL Response at 6.)  This would be an overt attempt to circumvent any stay order, and further supports a stay of *all* claims.

correct the violation of the Federal right of a particular plaintiff or plaintiffs"). Although, as a practical matter, a non-plaintiff may benefit from injunctive relief granted to a plaintiff, that "practical effect, of course, does not militate against the legal limitations that should be placed on the injunction." *Zepeda*, 753 F.2d at 728 n.1; *see also Williams v. California*, CIV S-09-2416LKKDADP, 2010 WL 2546086, at *4 (E.D. Cal. June 23, 2010) ("Plaintiff is cautioned that he may only seek relief on his own behalf. This is not a class action lawsuit and the relief he seeks must be narrowly tailored. Therefore, in any amended complaint he elects to file plaintiff may not seek injunctive relief affecting all prison facilities or on behalf of all the inmates of a prison."). Thus, Plaintiffs are not entitled to system-wide discovery simply because they believe they are entitled to a system-wide injunction.

### C. **Plaintiffs Posit Only Speculative Harm**

Plaintiffs contend that a stay will result in "extreme pain and suffering and risk of death" and "continuing violations of the Eighth Amendment." This is nothing more than rhetoric and conjecture. There has been no finding of constitutional violations. *See Free Speech Coal., Inc. v. Shurtleff*, 2:05CV949DAK, 2007 WL 922247, at *18 (D. Utah 2007) ("Violations of constitutional rights are given a presumption of irreparable harm, but presumptions are not assumptions merely because allegations of such violations are asserted. To do so would render the irreparable harm prong meaningless in these cases."); *Kaiser v. Cnty. of Sacramento,* 780 F. Supp. 1309, 1311–12 (E.D. Cal. 1991) ("[P]laintiffs must show a likelihood of real, immediate and non-conjectural violations of constitutional rights before the court will apply the presumption of irreparable harm.").

Moreover, none of the named Plaintiffs allege imminent injury, nor do they identify any class members that are suffering or at risk of imminent harm. They simply make general assertions of "dire risks" and impending injury. And they provide no causal link between the alleged harm and an ADC policy/practice or an ADC policy/practice and an actual injury; they simply assume that they are connected. None of the "evidence" Plaintiffs provide establish that they will suffer imminent, substantial harm absent a stay:

9

**Wexford Opinion**. Plaintiffs allege that a "health care contractor informed the governor's office … that 'the current class action lawsuits are accurate' and declared that 'the ADC system is broken, and does not provide a constitutional level of care.'" This "evidence" is taken from slides (including the table of contents) from a PowerPoint presentation given at a meeting on November 2012 (more than 8 months ago) between Wexford and ADC officials. The slides are completely devoid of factual and legal support. Plaintiffs also fail to bring to the Court's attention the subsequent deposition testimony of Wexford's Director of Operations, who attended that meeting. She testified that many issues were "fixed" by the time that health care transitioned from Wexford to Corizon on March 3, 2013, including medication administration records, the electronic scheduling system, timely record filings, timely outside consults, grievance and inmate letter responses, and staff time and attendance. (Ex. 4.) She also testified that the presentation was not a judgment on the constitutionality of the health care system because "obviously" she is "not a legal expert." (Id. at 111.) Besides this, as this Court has already made clear, what matters in this litigation is "the gross evidence about budgeting, staffing number of people being served" and "the possibility of future inadequate care rather than past inadequate care." (R.T. 4/26/13 at 16, 24.)

**Facility Performance Measures**. Plaintiffs cherry-pick contract performance reviews from only five facilities and covering only a handful of issues. That should speak volumes considering they do not cite to any reviews from the other four facilities (there is no review for Safford) or to the majority of the issues that relate to the allegations in their Complaint. These reports also reflect old data; they are all based on reviews in March or April 2013. Defendants have attached all of the April 2013 performance reviews so that the Court has a complete picture.[9] (Ex. 5.) Collectively, these reviews show that the facilities' compliance levels are much better than what Plaintiffs make them out to be. Also relevant is the fact that Corizon had just taken over the provision of health care in March 2013. These reviews naturally reflect that transition. Notably, Plaintiffs do not provide any evidence gathered from the last two weeks of their facility tours.

**Preservation Depositions**. Plaintiffs baldy assert that two inmates died before they could be deposed/interviewed, and that they had "on multiple occasions brought particular prisoners to the attention of the ADC, and several of those prisoners have died." Plaintiffs do not provide any information regarding the circumstances or cause of these inmates' deaths, nor do they provide any evidence to support their conclusion that these inmates died "from inadequate health care." Defendants are uncertain who the unnamed "particular prisoners" are. Plaintiffs are simply trying to attribute every death, regardless of the cause, to ADC's health care.

**Suicide Rate**. Plaintiffs contend that "the rate of suicides in ADC is increasing," and that the "number of suicides this year yields an annual

---

[9] The ratings indicate compliance with performance measures outlined in the ADC-Corizon Contract. A green rating indicates compliance, an amber rating indicates non-compliance, and a red rating indicates significant non-compliance. In total, there are 437 green ratings and 247 amber ratings (Yuma: 44/32; Phoenix: 43/33; Douglas 67/9; Tucson 39/37; Winslow 63/13; Perryville: 44/32; Lewis: 42/34; Florence: 42/33; Eyman: 53/24). (Ex. 5.) There are no red ratings. (Id.)

10

suicide rate of 25 per 100,000 prisoners, well above the national average for state prisons of 16 per 100,000." First, the rate of suicides is not increasing; it is decreasing. In 2010, there were 12 suicides at ADC, compared to 7 suicides in 2011, and 6 suicides in 2012. (Ex. 16 at 2-3.) Plaintiffs' statement that the suicide rate this year will be 25 per 100,000 prisoners, is guess work, and not supported by fact. The Bureau of Justice report they cite to for the national average, though published in December 2012, is based on data for the period from 2001 to 2010; there are no statistics for 2011, 2012, or 2013. Arizona's average suicide rate for the 10-year period was 18 per 100,000 prisoners. (Ex. 7.) According to the same statistics, 19 states had higher average suicide rates than Arizona. (Id.) Eleven states had an average rate of 25 or greater per 100,000 inmates (Utah's rate was 48 per 100,000 inmates). (Id.) Plaintiffs' comparisons are meaningless. They are also assuming that the inmates' suicides were caused by inadequate health care.

Plaintiffs' speculative non-attributable harm does not outweigh the actual, irreparable injury that Defendants will suffer if a stay is not granted.[10]

### D.  **The Public's Interest Favors a Stay**

Defendants do not dispute that the public has an interest in preventing constitutional violations and in the provision of constitutionally-adequate health care. But there has been no finding that ADC is violating the constitutional rights of inmates. Thus, the public's interest here is the proper resolution of the class certification issue now so that judicial resources are not wasted.

### **CONCLUSION**

For these reasons, Defendants respectfully request an immediate stay of all proceedings pending the resolution of their Rule 23(f) appeal.

---

[10] Plaintiffs complain that they will have to reschedule already scheduled expert tours *if* the Ninth Circuit affirms the class certification ruling in full. But Plaintiffs knew that the tours could be disrupted if the Ninth Circuit granted the Rule 23(f) Petition when it was filed on March 20, 2013, and nonetheless proceeded with scheduling them. Furthermore, the irreparable harm suffered by Defendants if the tours continue now and the Ninth Circuit decertifies the class far outweighs any inconvenience for Plaintiffs in having to resume the tours if the class certification order is affirmed.

11

DATED this 22nd day of July 2013.

STRUCK WIENEKE & LOVE, P.L.C.


By /s/ Nicholas D. Acedo
    Daniel P. Struck
    Kathleen L. Wieneke
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    Courtney R. Cloman
    Ashlee B. Fletcher
    Anne M. Orcutt
    STRUCK WIENEKE & LOVE, P.L.C.
    3100 West Ray Road, Suite 300
    Chandler, Arizona  85226

    Arizona Attorney General Thomas C. Horne
    Office of the Attorney General
    Michael E. Gottfried
    Lucy M. Rand
    Assistant Attorney General
    1275 W. Washington Street
    Phoenix, Arizona 85007-2926

*Attorneys for Defendants*

2780880.1

# CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2013, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amy Fettig: | afettig@npp-aclu.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| Daniel Joseph Pochoda: | dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| James Duff Lyall: | jlyall@acluaz.org; gtorres@acluaz.org |
| Jennifer Ann Alewelt: | jalewelt@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Cathleen M. Dooley: | cdooley@azdisabilitylaw.org |
| J.J. Rico: | jrico@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Kelly Joyce Flood: | kflood@acluaz.org; gtorres@acluaz.org |
| Kirstin T. Eidenbach: | keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; docketphx@perkinscoie.com |
| Matthew Benjamin de Mee: | mdumee@perkinscoie.com; cwendt@perkinscoie.com |
| Michael Evan Gottfried: | Michael.gottfried@azag.gov; colleen.jordan@azag.gov; lucy.rand@azag.gov |
| Sara Norman: | snorman@prisonlaw.com |
| Sophia Calderon: | scalderon@jonesday.com; lwong@jonesday.com |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |

| | | |
|---|---|---|
| 1 | Sarah Rauh: | srauh@jonesday.com; treyes@jonesday.com |
| 2 | David C. Kiernan: | dkiernan@jonesday.com; lwong@jonesday.com |
| 3 | R. Scott Medsker: | rsmedsker@JonesDay.com |
| 4 | John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| 5 | Kamilla Mamedova: | kmamedova@jonesday.com |
| 6 | Jennifer K. Messina: | jkmessina@jonesday.com |
| 7 | Taylor Freeman: | tfreeman@jonesday.com |
| 8 | Sarah Eve Kader: | skader@azdisabilitylaw.org, mlauritzen@azdisabilitylaw.org |
| 9 | Katherine E. Watanabe: | Katherine.Watanabe@azag.gov, susan.oquinn@azag.gov |
| 10 | Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, pdrew@perkinscoie.com |
| 11 | Lucy Marie Rand: | Lucy.Rand@azag.gov, Geneva.Johnson-Joksch@azag.gov |
| 12 | Ajmel Quereshi: | aquereshi@npp-aclu.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ Nicholas D. Acedo

14