**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| Victor Parsons, et al., on | ) | |
| behalf of themselves and all | ) | |
| others similarly situated; | ) | No.  **CV 12-00601-PHX-NVW** |
| and Arizona Center for | ) | |
| Disability Law, | ) | |
| | ) | **Phoenix, Arizona** |
| Plaintiffs, | ) | **January 25, 2013** |
| vs. | ) | **3:07 p.m.** |
| | ) | |
| Charles Ryan, Director, | ) | |
| Arizona Department of | ) | |
| Corrections; and Richard | ) | |
| Pratt, Interim Division | ) | |
| Director, Division of Health | ) | |
| Services, Arizona Department | ) | |
| of Corrections, in their | ) | |
| official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

_____


BEFORE:  **THE HONORABLE NEIL V. WAKE**
UNITED STATES DISTRICT JUDGE

(_**Scheduling Conference**_)


Official Court Reporter:
Laurie A. Adams, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 43
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
1    For the Plaintiffs:
             ACLU - Washington DC
2            By:  David Cyrus Fathi, Esq.
             915 15th Street NW
3            7th Floor
             Washington, DC 20005
4
     For the Defendants:
5
             STRUCK WIENEKE & LOVE, P.L.C.
6            By: Daniel P. Struck, Esq.
             By: Nicholas D. Acedo, Esq.
7            3100 W. Ray Road
             Suite 300
8            Chandler, AZ 85226

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

─── January 25, 2013 - Motion Hearing ───

1              P R O C E E D I N G S

2          THE COURTROOM DEPUTY:  This is Civil Case 2012-601,

3    Victor Antonio Parsons, et al., versus Charles Ryan, et al.

4    This is the time set for oral argument.

5              Counsel, please announce for the record.          15:07:48

6          MR. FATHI:  Good afternoon, Your Honor.  David Fathi

7    of the ACLU National Prison Project for the prisoner

8    plaintiffs.

9          MR. STRUCK:  Dan Struck and Nick Acedo for the

10   defendants.                                                  15:08:01

11         THE COURT:  Good afternoon, counsel.

12         Well, there's a lot here.  I guess we should just

13   proceed with the plaintiffs' motion.  And Mr. Fathi, you can

14   proceed.

15         And I ask you both also to try to deal with what you    15:08:37

16   know the other side's contentions are.

17         MR. FATHI:  I'm sorry, Your Honor?

18         THE COURT:  Please, I ask you both to try to deal with

19   what you know the other side's contentions are in response to

20   your main presentation.                                       15:08:53

21         Go ahead.

22         MR. FATHI:  Your Honor, what's before the Court today

23   is the narrow question whether the plaintiffs have satisfied

24   the requirements for class certification under Rule 23.

25             In fact, the question is even narrower than that    15:09:03

─────────────── January 25, 2013 - Motion Hearing ───────────────

1   because the defendants don't dispute that we satisfied the

2   numerosity requirement and, with the exception of one single

3   named plaintiff, the adequacy of representation requirement.

4   And they have also stipulated that defendants' counsel are

5   qualified to represent the class.                              15:09:21

6        So all that's before the Court today is, first,

7   whether there was at least one common question of law or fact

8   common to the class; second, whether the claims of the named

9   plaintiffs are typical of those of the class; and thirdly,

10  whether the requirements of Rule 23(b)(2) are satisfied.       15:09:37

11       Because the answer to all of those questions is

12  affirmative, the Court should grant the motion for class

13  certification.

14       In a case seeking only injunctive relief, the Eighth

15  Amendment is violated when prison officials acting with        15:09:53

16  deliberate indifference expose prisoners to a substantial risk

17  of serious harm.  There is no requirement that threatened harms

18  have already come to pass.  The risk alone is enough to violate

19  the Eighth Amendment and to entitle prisoners to injunctive

20  relief to abate that risk.  That's the Supreme Court's holding  15:10:13

21  in *Helling versus McKinney*.  The Court reaffirmed that analysis

22  less than two years ago in *Brown versus Plata* when it affirmed

23  a statewide grant of injunctive relief based on what it called

24  system-wide deficiencies in the provision of medical and mental

25  health care that, taken as a whole, subject sick and mentally   15:10:33

——— **January 25, 2013 - Motion Hearing** ———

1   ill prisoners in California to substantial risk of serious

2   harm.

3           In this case, we allege that ADC's policies and

4   practices with regard to health care and conditions of

5   confinement and isolation violate the Eighth Amendment by          15:10:47

6   exposing prisoners to a substantial risk of serious harm.  And

7   we have shown through ADC's own documents that these practices

8   have already resulted in serious physical and psychiatric

9   injury and, in some cases, death to Arizona prisoners.

10          Now, ADC, like most prison systems, is a highly          15:11:06

11  centralized top down organization.  ADC admits on the very

12  first page of its brief that ADC policies governing health care

13  and conditions of confinement apply to all facilities and

14  inmates.  Director Ryan has a mandatory duty under state law to

15  provide medical and health services for all Arizona prisoners.   15:11:29

16  Every single ADC policy is personally signed by Director Ryan.

17  Health care is provided pursuant to a single statewide contract

18  that applies to all ADC facilities.  Health care staffing

19  patterns and policies are established centrally.

20          Now, because the policies and practices that we          15:11:49

21  challenge apply system-wide, they place all Arizona prisoners

22  at a risk of harm.  As the Supreme Court recognized in *Plata*,

23  all prisoners in the State are at risk so long as the State

24  continues to provide inadequate care.  And because the named

25  plaintiffs and the class and subclass members are all subject    15:12:11

──────── January 25, 2013 - Motion Hearing ────────

1    to the same risk of harm, the commonality requirement is met.

2    The Ninth Circuit has said that commonality requires only some

3    shared legal issue or a common core effect.  And it thus held,

4    in a prison case, the commonality is satisfied where the

5    lawsuit challenges a system-wide practice or policy that          15:12:29

6    affects all the putative class members.  That's *Armstrong*

7    *versus Davis*.

8              Now, in this case, ADC's long standing pervasive and

9    system-wide practice of failing to provide adequate health care

10   staffing, a practice that began well before the Wexford          15:12:49

11   takeover and continues to this day, affects all Arizona

12   prisoners.  So one question that is common to all members of

13   the class is, does ADC's level of health care staffing pose a

14   significant risk, a substantial risk of serious harm?  One

15   question that is common to all members of the isolation          15:13:08

16   subclass is does the severely limited out-of-cell exercise

17   provided to prisoners in isolation pose a substantial risk of

18   serious harm?  We have identified other common questions in our

19   briefing, Your Honor, but because a --

20             THE COURT:  Would you restate that second practice?    15:13:27

21             MR. FATHI:  Yes.  Sure, Your Honor.  With regard to

22   the isolation subclass, does the severely limited out-of-cell

23   exercise provided to prisoners in isolation --

24             THE COURT:  Which is about six hours a week, right?

25             MR. FATHI:  That's correct, Your Honor.               15:13:42

—— January 25, 2013 - Motion Hearing ——

1          THE COURT:  You know, in the Maricopa County jail case

2    I think I ruled five hours is good enough.

3          MR. FATHI:  Well, Your Honor --

4          THE COURT:  Not that I thought it was a good

5    criterion, just relying on case authority.                         15:13:52

6          MR. FATHI:  Yes, Your Honor.  And again, that is a

7    question the Court will decide either on summary judgment or a

8    trial.  But at this point all we have to do is identify a

9    common practice that applies to all members of this class or

10   subclass, and that is one.                                         15:14:09

11          Another is the extreme levels of social isolation that

12   are provided or are imposed upon prisoners in the isolation

13   subclass.  Another is the restricted meal service, two meals a

14   day with a reduced calorie diet.  So there are many, Your

15   Honor.                                                             15:14:28

16          THE COURT:  Do you know what they -- they have to have

17   standards.  What's their caloric standard?

18          MR. FATHI:  I believe it is -- I believe it's 2400

19   calories a day for males.  I'm not 100 percent sure of that,

20   Your Honor.  Two meals a day.  I believe it's 2400 calories.      15:14:42

21          So there are many common questions, Your Honor, both

22   for the overall class and for the subclass.  But because a

23   single one is sufficient, the commonality requirement is amply

24   satisfied in this case.

25          As for typicality --                                       15:14:59

**January 25, 2013 - Motion Hearing**

1      THE COURT:  It is distracting that several of these

2  are things that I already ruled on in the Maricopa County jail

3  case.  I ruled that two meals a day was not unconstitutional.

4  I ruled that 2400 calories a day was, you know --

5      MR. FATHI:  Well, Your Honor, again, the Court may --      15:15:15

6      THE COURT:  And I and other judges of this court,

7  again, this isn't -- I say we have ruled.  It isn't because I

8  or any of us think any of this is a good idea.  But following

9  policy, I think we have all ruled that these isolation, even

10  more than 22 hours a day, is not unconstitutional.  So it is      15:15:37

11  distracting that most, if not all of what you are putting --

12  not all, the understaffing of medical staff could well be

13  meritorious, but I don't know what to make of this.

14      But I have studied this.  I have ruled on it, and you

15  are arguing against things that this and other courts I know      15:16:05

16  have already ruled may not be very good but do not fall below

17  the minimum standards of constitutionality.  I'm not sure what

18  to make of that at the class certification level.

19      MR. FATHI:  Well, again, Your Honor, we don't have the

20  burden of proving our case on the merits at the class      15:16:28

21  certification stage.  The burden that we have is to identify

22  practices, policies and practices, or one policy or practice

23  that applies to the class and one to the subclass.

24      THE COURT:  But, of course, for a class we need more

25  than distinct violations.  We need some kind of a policy or      15:16:47

—— January 25, 2013 - Motion Hearing ——

1   practice that is the basis for the class.

2          MR. FATHI:  Correct, Your Honor.

3          THE COURT:  What -- again, I'm sorry.  I'm repeating

4   myself.  But if you are telling me that the practice is thus

5   and such and I have already ruled that that's not                        15:17:07

6   unconstitutional, why should I certify a class that I have

7   already determined you don't even state a claim?

8          MR. FATHI:  Well, Your Honor, I think with the

9   exception of the Maricopa County jail case, many of the cases

10  that you are referring to were cases brought by pro se          15:17:23

11  prisoners, certainly without experts of the kind that we have

12  in this case.  And I believe that none of those cases have

13  addressed the issue of people with serious mental illness who

14  are held in solitary confinement.

15         THE COURT:  Well, yes, that could be a distinct class,   15:17:41

16  a distinct issue.

17         MR. FATHI:  But coming back to the overall class, Your

18  Honor, I am confident that neither you nor any other court has

19  ruled that a long standing pervasive policy of significant

20  understaffing of health care services is constitutionally      15:17:59

21  permissible.  And that is one of the questions that is common

22  to the overall class.

23         Now, as for typicality, the Ninth Circuit has held

24  that the standard is permissive, and the claims of the named

25  plaintiffs need only be reasonably co-extensive of those with  15:18:18

—— January 25, 2013 - Motion Hearing ——

1   the other class members.  They need not be identical.  And

2   here, where the claim is exposure to risk of future harm,

3   again, in an Eighth Amendment injunctive case, the violation is

4   exposure to an unreasonable risk of harm.

5          So in this case, the plaintiffs and the class members          15:18:37

6   are all asserting not just similar claims, but an identical

7   claim.

8          Now, even if we were to look at the actual physical

9   injuries suffered by the named plaintiffs as a result of that

10  risk, we have submitted expert declarations from our health          15:18:53

11  care experts saying that their injuries, injuries of the named

12  plaintiffs, are typical of those that one would expect to see

13  in a system with the deficiencies that we have identified.  And

14  that expert testimony, Your Honor, is completely unrebutted.

15  The defendants have not submitted a declaration from a          15:19:13

16  psychiatrist.  They have not submitted a declaration from a

17  physician.  They have submitted a very brief declaration from a

18  dentist that does not address the situations of the named

19  plaintiffs at all.

20         Finally, the Ninth Circuit has said that Rule 23          15:19:25

21  (b)(2) is satisfied when class members seek uniform relief from

22  a practice applicable to all of them.  The remedies that we're

23  seeking in this case, for example, an injunction requiring

24  defendants to hire more health care staff, or an injunction

25  requiring them to provide more exercise to prisoners in          15:19:45

UNITED STATES DISTRICT COURT

— January 25, 2013 - Motion Hearing —

1    isolation, would redound to the benefit of all the members of

2    the class or subclass without any need for individual

3    tailoring.  Once again, we have submitted expert declarations

4    from our experts saying that they have personal knowledge of

5    similar systemic problems in other prison systems that were          15:20:03

6    remedied by class-wide injunctions.  And once again, those

7    expert opinions are entirely uncontroverted.

8         Now, the defendants seem to think that this case is an

9    aggregation of individual damage actions, and they say that the

10   Court will have to make an individualized determination about      15:20:23

11   each prisoner's experience with the health care system or with

12   isolated confinement to determine if the treatment of that

13   individual prisoner violated the Eighth Amendment.  But that's

14   exactly the argument the Supreme Court rejected in *Plata*.  The

15   Court said very thoroughly in Footnote 3 that when the              15:20:39

16   plaintiffs' allegation is that system-wide deficiencies pose a

17   substantial risk of harm to prisoners as a class, there's no

18   need to consider whether the treatment of any individual

19   prisoner standing alone violated the Eighth Amendment.  And I

20   think, Your Honor, this distinguishes our case from some of the    15:20:58

21   cases that you and other judges may have heard about isolated

22   confinement where we're not -- this is not a damages case

23   saying that the treatment of prisoner John Smith violated the

24   Eighth Amendment.  This is a case saying these policies pose a

25   substantial risk of serious harm to the class or subclass as a     15:21:15

——— January 25, 2013 - Motion Hearing ———

1    whole.

2           So far from requiring individualized inquiry, a class

3    certification in this case will actually promote efficiency and

4    judicial economy by allowing claims common to thousands of

5    Arizona prisoners to be decided in a single case rather than a          15:21:35

6    multitude of individual lawsuits that may yield conflicting

7    holdings.

8           THE COURT:  But the class representative has to win

9    his own lawsuit.

10          MR. FATHI:  Correct, Your Honor, they have to show          15:21:48

11   that they are exposed to a substantial risk of serious harm.

12          THE COURT:  Such that if they weren't a class

13   representative, they would still warrant an injunction.

14          MR. FATHI:  Correct.

15          THE COURT:  For them and them alone.  They have to          15:22:02

16   win -- every class representative has to win their own lawsuit.

17   I mean, they don't have to all win, but each -- everyone either

18   wins or they have lost and they are out.  Maybe the other

19   people will still be in.

20          MR. FATHI:  You are correct, Your Honor, in the          15:22:18

21   following sense, that because it's a purely injunctive case,

22   the class members have to show that they, too, are exposed to a

23   substantial risk of serious harm.  They do not have to show

24   that their past treatment violated the Eighth Amendment.

25          THE COURT:  Well, they have to prove enough that          15:22:33

—— January 25, 2013 - Motion Hearing ——

1   constitutes a constitutional violation that would warrant an

2   injunction today for them.

3          MR. FATHI:  Correct.  And that is based on the risk of

4   future harm, not on what has happened to them in the past.

5   What has happened to them in the past is relevant because it          15:22:50

6   shows the risk is real.  It shows this is a risk that is not

7   hypothetical.  It's already come to pass.  But the plaintiffs

8   don't have to show that -- they do not have to establish, for

9   example, that the occasion on which John Smith was denied

10  dental care in 2010, standing alone, violates the Eighth          15:23:06

11  Amendment.  They have to show that they are exposed to a risk

12  of future harm that violates the Eighth Amendment.

13          And you are correct, Your Honor, you just need to

14  have -- you don't necessarily have to have all plaintiffs show

15  that, you have to have at least one.          15:23:21

16          Now, the *Plata* case granted the kind of systemic

17  state-wide injunctive relief that we're seeking in this case.

18  And although the issue before the Supreme Court in that case

19  was not class certification, the case was a state-wide class

20  action, and the Court's opinion makes clear that in an Eighth          15:23:42

21  Amendment injunctive challenge to prison conditions, the

22  question is whether system-wide policies and practices pose a

23  substantial risk of serious harm.  And that question is common

24  to all prisoners who are subject to that, to those policies and

25  practices.          15:23:59

1    Now, Justice Scalia dissenting in *Plata* made exactly

2    the argument that the defendants are making here.  He said you

3    can't establish a class-wide Eighth Amendment violation by

4    showing system-wide deficiencies in prison health care.  But he

5    dissented and he was able to attract only one other justice to        15:24:15

6    that position.  And so in post-*Plata* cases of this type

7    involving injunctive challenges to conditions for prisoners and

8    others in state custody, for example, children in the State

9    child welfare system, based on a risk of future harm, the

10   courts have uniformly found that the commonality requirement is      15:24:36

11   satisfied based on the common risk of harm that affects

12   everybody in the class, and class certification is appropriate.

13   And we have cited a number of those cases at Pages 13 and 14 of

14   our opening brief and on Page 6 of our reply brief.

15       For all these reasons, Your Honor, this is the                   15:24:55

16   paradigm case of a Rule 23(b)(2) class action for purely

17   injunctive relief.  We would ask that the Court certify the

18   class and subclass.

19       THE COURT:  Well, again, looking at the systemic

20   practices that are the basis of class treatment, one is             15:25:11

21   understaffing with medical personnel.  The other is isolation

22   -- actually, I'm sorry.  Are they isolated only 22 hours a day?

23   I may be confusing the isolation with the exercise.  Tell me

24   what the numbers are.

25       MR. FATHI:  Your Honor, we have defined the isolation           15:25:42

─ **January 25, 2013 - Motion Hearing** ─

1   subclass to include either people who are locked in their cells

2   for 22 or more hours a day --

3              THE COURT:  Is that the practice?

4              MR. FATHI:  Yes.  That is undisputed that that is the

5   practice.                                                              15:25:54

6              THE COURT:  Well, actually, what is the practice as to

7   how long per day they are allowed out of their cell?

8              MR. FATHI:  It is undisputed that there is a group of

9   prisoners who receive six hours a week of out-of-cell time.

10             THE COURT:  And that's in three blocks of two hours?       15:26:07

11             MR. FATHI:  That's my understanding, Your Honor.

12             THE COURT:  So they can go nearly two days without

13  being out of the cell?

14             MR. FATHI:  Correct, Your Honor.  And it is our

15  contention, although this is more a matter for trial, that in        15:26:19

16  practice even that very small amount of out-of-cell time is in

17  practice often cancelled because of understaffing, because of

18  other incidents.

19             THE COURT:  I take it these are like the SMU

20  prisoners?                                                            15:26:38

21             MR. FATHI:  Correct, Your Honor.

22             THE COURT:  High danger, high security ones?

23             MR. FATHI:  Well, not all of them are high danger,

24  Your Honor.  Some are there simply by virtue of their

25  conviction, their sentences.  If you are sentenced to life you       15:27:16

─────────── January 25, 2013 - Motion Hearing ───────────

1    spend the first two years in the SMU or similar unit.  So yes,

2    Your Honor, that is essentially the group we are talking about.

3            So getting back to the common questions for the

4    overall class, the health care class, certainly the long

5    standing and pervasive practice of understaffing the health                15:27:17

6    care system, which began long before the Wexford takeover and

7    continues to this day.  That is one common policy.

8            Another is the defendant's failure to have in place a

9    functioning medication administration system.  Another is the

10   defendants' failure to have in place a functioning system for              15:27:27

11   prisoners to make their health care needs known to the staff.

12   Their policy describes a form called the HNR, the Health Needs

13   Request form, and describes this very orderly policy of how

14   those forms are collected and processed.  If you look at the

15   evidence that we have submitted, including evidence that is                 15:27:49

16   very recent that was just provided to us a few weeks ago, it

17   shows hundreds of these HNR forms piled up, unread, for weeks

18   at a time in multiple institutions.

19           So that's another question that's common to the

20   entire -- the overall health care class.  So there are many,               15:28:06

21   but again, one is sufficient to satisfy the commonality

22   requirement.

23           THE COURT:  All right.

24           MR. FATHI:  If the Court has no further questions, I

25   would like to reserve some time for rebuttal.                              15:28:26

─────── January 25, 2013 - Motion Hearing ───────

1          THE COURT:  Mr. Struck.

2          MR. FATHI:  Thank you, Your Honor.

3          MR. ACEDO:  Good afternoon, Your Honor.  Nicholas

4   Acedo on behalf of the defendants.

5          It's readily apparent that the parties have divergent       15:28:43

6   views on how to approach the Rule 23 elements.  I'd like to

7   take a different approach now, instead of regurgitating what's

8   already been briefed, take a step back and give a more general

9   view of what's going on here.

10         I think it's significant that the plaintiffs have not       15:28:59

11  cited a single case involving a challenge to a prison's

12  medical, mental, or dental care in which the Court's decision

13  analyzed and granted class certification.  They keep talking

14  about *Brown v. Plata* and *Casey v. Lewis*.  Those are their two

15  primary cases.  As counsel admitted, *Brown v. Plata* was not a   15:29:19

16  class certification order case.  It simply reviewed whether or

17  not the three-judge panel abused its discretion in its order

18  releasing all California prisoners -- well, a percentage of

19  them.

20         THE COURT:  By the way, none of them have gotten out       15:29:35

21  yet, have they?

22         MR. ACEDO:  Not as far as I know.

23         THE COURT:  Go ahead.

24         MR. ACEDO:  *Casey v. Lewis*, what's significant about

25  that case is that the class was certified back in 1991.  *Brown*  15:29:47

——— January 25, 2013 - Motion Hearing ———

1   *v. Plata*, that's a consolidation of two cases, *Plata* and

2   *Coleman*.  *Coleman* was also consolidated back in 1991.  *Plata*

3   was a case that was certified in 2001.  And as far as I know, I

4   believe that that case was -- a class certification was

5   stipulated to.                                                        15:30:09

6        If you look at all the cases that they cite to, the

7   Ninth Circuit cases, it's true that some of them involve class

8   actions.  None of them are class action orders.  And if you

9   follow the trail, the history of those cases, they were all

10  certified in the '70s and '80s.                                        15:30:25

11       Now, shift to the cases that we have cited, Your

12  Honor.  *Mathis v. GEO*, 2012; *Snead v. Mohr*, 2012; *Schilling* was

13  in 2011.  *Kress* was in 2010.  *Bogle*, 2010.  I have listed about

14  eight cases here all denying class certification.  They were

15  class certification orders denying class certification or          15:30:47

16  affirming the denial specifically with respect to mental,

17  medical, and dental care, all in the last five years.

18       And I think if you take a step back, and ask yourself

19  why, I think the *Lewis v. Caseys* and the *Colemans*, back in the

20  '70s and '80s, that was an old way of thinking.  I think over       15:31:04

21  time, district court judges have come to realize that

22  certifying these types of enormous, very general claims that go

23  after policies of facilities, that's just not feasible.  It's

24  not efficient.  In fact, just last week we checked the docket

25  in the *Coleman* case and they're still challenging the             15:31:25

——— January 25, 2013 - Motion Hearing ———

1   implementations of the injunctions 20 years later.  There's

2   still no end to that.  That's the bigger picture.

3           THE COURT:  Well, we don't avoid it just because it's

4   a lot of work.

5           MR. ACEDO:  I understand that.  I think it's symbolic          15:31:41

6   -- I think it's telling, however, that what the trend is, how

7   it was 20 or 30 years ago and the trend, the recent trend in

8   the last five years.  Now we've got *Wal-Mart versus Dukes*,

9   which essentially has significantly held plaintiffs to the fire

10  with respect to class certification and really, really nailed          15:32:01

11  them down on the commonality element.

12          THE COURT:  Of course, well, that was a damage case,

13  wasn't it?

14          MR. ACEDO:  Which case?

15          THE COURT:  *Wal-Mart versus Dukes*.                          15:32:16

16          MR. ACEDO:  It was a (b)(2) case.  I believe there

17  might have been incidental damages, but the crux of it was an

18  injunction.

19          Counsel, in their -- plaintiffs, in their reply, they

20  cite to the *Plata* case and they talk about -- which talks about     15:32:32

21  system-wide policies.  Again, that was relegated to a footnote

22  and it had nothing to do with what the real issue in that case

23  was.  And this court should just regard it as purely dicta.

24          Counsel was trying to go through a list of proposed

25  common questions of law in fact.  I point out that from the           15:32:59

—— **January 25, 2013 - Motion Hearing** ——

1    complaint to the motion to the reply that's sort of morphed

2    over time.   Initially it was that the common legal question is

3    whether or not their constitutional rights were violated.   Now,

4    they have tried to whittle it down, whittle it down, and today,

5    they are focusing largely on the conditions of confinement on        15:33:20

6    the maximum custody claims.   For instance, whether or not

7    exercise three times a week for six hours is constitutional, as

8    you pointed out, you have specifically ruled on that.   But --

9    and there's really no need to even go further with it.   But the

10   point is, those types of claims, the exercise, the meal claims     15:33:40

11   which you talked about -- which, by the way, is 2600 caloric

12   intake a week in the maximum custody cells, something that the

13   district court has also upheld as being constitutional.   Those

14   types of claims aren't suitable for class certification

15   because, for instance, getting deprived exercise for a week or     15:34:04

16   for 30 days, say zero exercise, is different from getting

17   deprived exercise for six months or a year.   Whether or not a

18   constitutional violation occurred depends on the length or the

19   duration of the deprivation.   So the constitution on the

20   isolate -- the maximum custody claims that they keep referring     15:34:24

21   to, the alleged common questions of fact, they simply cannot be

22   certified.

23          I'd like to discuss a couple things that were in the

24   reply that weren't in the response, one being the footnote

25   regarding monitoring telephone calls, particularly with Inmate     15:34:42

──── **January 25, 2013 - Motion Hearing** ────

1   Parsons.

2           ADC has an inmate phone system.  The inmates used that

3   for non-legal telephone calls.  Those non-legal telephone calls

4   at the outset of the call, there's a recording that informs the

5   inmate that they are being recorded and subject to monitoring.        15:35:01

6   The inmates know this.  Those are the telephone calls that have

7   been reviewed.  They were not calls specifically that involved

8   this case.  And counsel -- I'm sorry -- in the *Gomez* case that

9   they cite, that case specifically says when an inmate -- an

10  inmate can waive their attorney/client privilege with respect        15:35:22

11  to those -- with respect to the attorney/client privilege.

12          I'd also like to point out in one of the footnotes

13  they insinuate that ADC has changed policies at the 11th hour

14  in order to defeat class certification, and they cite to three

15  different policies.  One of those policies was in effect in          15:35:40

16  June 2012.  The other two policies went into effect December

17  19, 2012.  However, I'd point out that the substance of the

18  provisions we were relying on were identical to what they were

19  in the previous policy.  And we disclosed the proposed drafts

20  of those policies several months before we filed our motion.         15:35:58

21          Unless the Court has any other questions.

22          THE COURT:  Well, there's a lot in the briefs.  No,

23  that's fine.

24          Mr. Fathi, your reply.

25          MR. FATHI:  Thank you, Your Honor.  Just a brief             15:36:25

─── **January 25, 2013 - Motion Hearing** ───

1   reply.

2          First, counsel said that the common questions that we

3   assert have morphed over time.  That's not true, Your Honor.

4   There's been no changing or morphing over time.  The fact is

5   there are a number of common questions, both for the overall        15:36:45

6   class and -- the overall health care class and the isolation

7   subclass.  The fact that we have identified a number of them

8   does not mean that we are changing our position or retreating

9   from our prior position.

10          Counsel said again that this case will require an          15:37:00

11   individualized examination of the experience of each person who

12   is exposed to isolated confinement.  Again, Your Honor, that

13   completely disregards the Supreme Court's statement less than

14   two years ago in *Plata* that when it's an injunctive challenge

15   to systemic policies and practices that create a risk of harm,    15:37:22

16   that sort of individualized inquiry is not necessary.  It's

17   Footnote 3 of the opinion.  Counsel can call it dictum; I call

18   it the teaching of the United States Supreme Court.

19          Finally, let me just address the *Wal-Mart* case.

20   *Wal-Mart* was what the Supreme Court called one of the most      15:37:44

21   expansive class actions ever with approximately one and-a-half

22   million current and former employees in 3400 stores throughout

23   the United States seeking back pay.  So the Court is correct,

24   there was a monetary remedy, individualized monetary remedy

25   sought there too.  *Wal-Mart* was about as different from this    15:38:05

─────── **January 25, 2013 - Motion Hearing** ───────

1    case as you could possibly imagine, but let me focus on two

2    particularly important differences.

3              What the Court said in *Wal-Mart* is that commonality

4    requires the plaintiff to demonstrate the class members have

5    suffered the same injury.  And what counts as injury depends on          15:38:20

6    the substantive law governing the plaintiffs' claims, and

7    that's the most important difference between *Wal-Mart* and this

8    case.  *Wal-Mart* was a sex discrimination case brought under

9    Title VII of the Civil Rights Act.  And in a Title VII class

10   action, the ultimate question is whether each individual class          15:38:41

11   member has personally suffered discrimination.  That's why the

12   Court in *Wal-Mart* said that the plaintiffs there were trying to

13   sue about literally millions of employment decisions at once.

14   And so to show commonality in that case, the plaintiffs would

15   have had to show that there's a question whose resolution would          15:39:00

16   help determine whether each of those 1.5 million class members

17   had personally suffered discrimination.

18             Our case is an Eighth Amendment injunctive case where

19   the ultimate question is whether each class member is exposed

20   to a substantial risk of serious harm.  And because ADC's                15:39:17

21   system-wide policies and practices create the same risk of harm

22   to all members of the class and subclass, the commonality

23   requirement is satisfied.  We're not suing about millions or

24   even dozens of individual health care decisions.  We're suing

25   about centralized policies that apply to everyone.                        15:39:37

—— January 25, 2013 - Motion Hearing ——

1        And so, for example, one common question is, whether

2    ADC's level of health care staffing poses a substantial risk of

3    serious harm to prisoners.  That question is common to the

4    entire class.  An affirmative answer to that question will mean

5    that all class members have suffered an Eighth Amendment                    15:39:57

6    violation and are entitled to injunctive relief to abate that

7    risk.

8        Here's the second critical difference.  In *Wal-Mart*,

9    the only corporation-wide policy that the plaintiffs even

10   alleged was a policy of allowing each of its 3400 individual                15:40:14

11   store managers wide discretion in making employment decisions.

12   And this alone was fatal to the plaintiffs' commonality

13   argument because, as the Court said, such a policy amounts to

14   having a policy against the uniform employment practices.

15       Here, by contrast, all the class members are in the          15:40:36

16   physical custody of a single highly centralized, top down state

17   agency where there's no dispute that policies governing health

18   care and conditions of confinement apply to all facilities and

19   all prisoners.  Director Ryan has a mandatory duty under state

20   law to provide health care for all Arizona prisoners.  As I                 15:40:57

21   mentioned, he signs every single ADC policy and those policies

22   apply state-wide.

23       As the Ninth Circuit said in *Staton versus the Boeing*

24   *Company*, evidence of centralized decision making supports a

25   finding of commonality.  That's what was missing in *Wal-Mart*.            15:41:16

1    That's what's present in this case.

2         Finally, Your Honor, it's important to realize that

3    ADC is a single unified system in a way that Wal-Mart's 3400

4    stores are not.  ADC has 10 prison complexes and any prisoner

5    can be transferred at any time to any of those facilities,          15:41:38

6    obviously against his will and without his consent.  Mr.

7    Brislan alone has been in three different complexes in the 10

8    months since we filed this case.

9         So every prisoner has a stake in, every prisoner is

10   affected by the entire health care system.  If you are an          15:41:59

11   employee at a Wal-Mart store in Miami, what happens in a

12   Wal-Mart store in Los Angeles probably doesn't matter to you at

13   all.  But if you are a prisoner at Florence, the health care

14   system at Tucson matters to you a whole lot, both because

15   health care staff and other health care resources may be          15:42:19

16   redeployed from Florence to Tucson and because you, yourself,

17   may be transferred to Tucson tomorrow or next week or the week

18   after.

19        If the Court has no further questions, I will stop

20   there.                                                              15:42:35

21        THE COURT:  So again, for -- with respect to each of

22   these practices, the practice itself must create such an

23   unreasonable risk of harm that it amounts to deliberate

24   indifference such that the practice itself is appropriately

25   enjoined.                                                           15:42:57

—— January 25, 2013 - Motion Hearing ——

1          MR. FATHI:  Correct.  That's the question for trial,

2     Your Honor.  That's not the question for --

3          THE COURT:  Yes.  And so let's just take your

4     challenge to the two meals a day.

5          MR. FATHI:  Yes.                                    15:43:09

6          THE COURT:  There's some people whose health is such

7     that they need nutrition more often.

8          MR. FATHI:  Correct.

9          THE COURT:  And if they were denied it they presumably

10     would have a claim.  But that doesn't set them up as a class   15:43:22

11     representative for the practice as a whole, right?

12          MR. FATHI:  Not exactly, Your Honor.  If I can use a

13     different analogy.  There is always -- there is variations in

14     the population.  Some people will be more at risk from any

15     practice than from others.  Those differences in risk don't   15:43:43

16     defeat commonality.  They may affect where the Court draws the

17     line in terms of remedy.  But the inevitable fact that there is

18     a range of vulnerability within the class, a range of -- the

19     fact that some people in the class will be harmed more than

20     others, that doesn't defeat commonality or you could never   15:44:04

21     certify a class.

22          THE COURT:  Well, but there's got to be a baseline of

23     common sense here.  If two meals a day met the constitutional

24     minimum, but not for some people whose body is such that --

25          MR. FATHI:  Yeah.                                  15:44:26

1    THE COURT:  -- they need more, surely you would not be

2  telling me that those people who are physically, their bodies

3  are outliers, that they would be a good class representative

4  for a lawsuit to challenge two meals a day for the entire

5  population.  You wouldn't be telling me that, would you?          15:44:46

6    MR. FATHI:  Your Honor, I think they could be.  Again,

7  it would affect the remedy.  It would affect the Court's ruling

8  on the ultimate Eighth Amendment question.  It would affect the

9  remedy.  But I don't think it would affect the standing of that

10 person to be --                                                   15:45:03

11   THE COURT:  Well, actually I'm putting my question

12 more broadly as to the propriety of class certification on all

13 criteria.  I thought the class representatives had to have a

14 claim that is the same claim with respect to the same practice

15 as the other members of the class.                                15:45:26

16   MR. FATHI:  Correct, Your Honor.  They have to have

17 the same -- they have to be claiming they are at the same kind

18 of risk as the other class members.  They do not have to claim

19 that they are exactly at the same quantum of risk.  Again, that

20 such a requirement would mean that you could never certify a      15:45:42

21 class because, again, there is unavoidable variations in the

22 population.

23     So, for example, there are some people who will, to

24 look at the overall medical care class, let's just talk for a

25 moment about the long standing practice of understaffing.  Of     15:45:59

—— January 25, 2013 - Motion Hearing ——

1    course, there are some people who will suffer more severe

2    injuries.  There are some people who will die, there are some

3    people who will ultimately not suffer a physical injury at all.

4    But the constitutional injury is the risk.  And it is the risk

5    that violates the Eighth Amendment.  It is the risk that is the      15:46:21

6    question that is common to the class.

7            THE COURT:  Well, to use my example again, if the risk

8    reaches a level of unconstitutionality only for outlier people

9    who are physically outliers, that doesn't seem to connect at

10   all with the class action to change the meal plan for               15:46:45

11   everybody.

12           MR. FATHI:  Well, again, Your Honor, perhaps I may

13   just be respectfully --

14           THE COURT:  I'm not -- I'm just using this as an

15   example because it seems simple.  But go ahead.                     15:46:59

16           MR. FATHI:  My answer would be, Your Honor, that does

17   not go to class certification.  That goes to the Court's

18   ultimate ruling on the merits.

19           THE COURT:  That defies common sense to say that

20   someone who may, in unusual circumstances, have a claim can be      15:47:13

21   a proper class representative to sue with respect to a policy

22   that has entirely, well, materially different legal

23   circumstances for most people in the class.  That just doesn't

24   seem like that's what we spend our time doing.

25           MR. FATHI:  Well, Your Honor, I'm not sure that I          15:47:32

UNITED STATES DISTRICT COURT

— January 25, 2013 - Motion Hearing —

1  would agree with your premise.  I think the Court is making an

2  assumption that there are -- that only a relatively few people

3  would be placed at risk by the two-meal-a-day policy if that's

4  the example the Court wants to discuss.

5            THE COURT:  I want to be clear.  You have told me you          15:47:52

6  are challenging for the entire prison population.

7            MR. FATHI:  We're challenging it for the subclass of

8  people who are in isolation.

9            THE COURT:  Yes.

10           MR. FATHI:  Not the entire prison population, just the          15:48:03

11 subclass.

12           THE COURT:  And how is that different for the subclass

13 who are in isolation?

14           MR. FATHI:  Well, Your Honor, it's only the subclass

15 that's subject to the two-meal-a-day policy to the reduced             15:48:16

16 calorie diet.  It's only the subclass.  I'm sorry if that

17 wasn't clear.

18           THE COURT:  All right.  All right.

19           Did I tell you about the one time I was counsel for a

20 plaintiff class?                                                        15:48:32

21           MR. FATHI:  I don't think so, Your Honor.

22           THE COURT:  I filed a plaintiff class action once when

23 I was young and foolish for 220 first-time condominium home

24 buyers on defective roofs and on a contingent fee, of course.

25 And I went the whole distance.  Class certification, discovery,        15:48:52

—— January 25, 2013 - Motion Hearing ——

1  jury trial, appeal, affirmance on appeal, forcible collection

2  of the judgment.  And when it was all over, they told me they

3  didn't think I deserved my contingent fee.  So I decided these

4  class actions are pretty --

5          MR. FATHI:  Well, Your Honor, I want to point out that    15:49:11

6  was most certainly a (b)(3) class action, totally different

7  from our (b)(2).

8          THE COURT:  It was a (b)(3).  Absolutely.

9          All right.  Thank you, counsel.  The motion is taken

10  under advisement.                                              15:49:26

11          MR. FATHI:  Thank you, Your Honor.

12          (Proceeding concluded at 3:49 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    C E R T I F I C A T E

5

6          I, LAURIE A. ADAMS, do hereby certify that I am duly

7    appointed and qualified to act as Official Court Reporter for

8    the United States District Court for the District of Arizona.

9          I FURTHER CERTIFY that the foregoing pages constitute

10   a full, true, and accurate transcript of all of that portion of

11   the proceedings contained herein, had in the above-entitled

12   cause on the date specified therein, and that said transcript

13   was prepared under my direction and control.

14          DATED at Phoenix, Arizona, this 24th day of July,

15   2013.

16

17                              s/Laurie A. Adams

18                              _____
                                Laurie A. Adams, RMR, CRR

19

20

21

22

23

24

25