Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: dpochoda@acluaz.org
       kflood@acluaz.org
       jlyall@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin
Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas,
Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci,
Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of
themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Jennifer Alewelt (Bar No. 027366)
Asim Varma (Bar No. 027927)
Sarah Kader (Bar No. 027147)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: jalewelt@azdisabilitylaw.org
       avarma@azdisabilitylaw.org
       skader@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-NVW (MEA) |
| Plaintiffs, | **PLAINTIFFS' PROPOSED DISCOVERY SCHEDULE** |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

1    This case has approximately 33,000 Plaintiff class members, as well as Plaintiff

2    Arizona Center for Disability Law, which has statutory authority to bring claims on their

3    behalf.  Prisoner Plaintiffs are housed at ten prison complexes, all with multiple units,

4    spread throughout the state of Arizona.  *See* Doc. 372 at 1.  This Court has certified the

5    Plaintiff class as to ten alleged practices, and the subclass as to seven.  *Id*. at 21-23.  These

6    practices cover multiple aspects of the provision of medical, mental health, and dental

7    care, as well as conditions of confinement in ADC's isolation units.  *Id*.  In short, this is a

8    large case that, even efficiently run, requires sufficient discovery to allow Plaintiffs a

9    reasonable opportunity to prove their claims—and Defendants have not yet provided that.

10    Plaintiffs must prove that Defendants, acting with deliberate indifference, expose

11    the class to a "substantial risk of serious harm."  *Farmer v. Brennan,* 511 U.S. 825, 828

12    (1994).  Moreover, to obtain system-wide relief, they must show that the violation is

13    systemic in nature.  *See Armstrong v. Davis,* 275 F.3d 849, 870 (9th Cir. 2001).

14    All of Prisoner Plaintiffs' health care and other records, all of the documents

15    reflecting prison operations, most witnesses to the provision of health care and conditions

16    of confinement, all of the physical premises—in short, virtually all of the evidence,

17    including even the physical persons of Plaintiffs themselves—is in the exclusive custody

18    and control of Defendants.

19    In addition, factors beyond Plaintiffs' control have increased the amount of

20    discovery necessary in this case.  First, Defendants have changed health care providers

21    twice during the pendency of this case.  Responsibility for providing health care passed

22    from state employees to Wexford Health Sources on July 1, 2012, and from Wexford to

23    Corizon, Inc. on March 4, 2013.  Thus, virtually all the discovery Plaintiffs conducted

24    regarding Wexford—its policies, procedures, staffing matrices, drug formulary, dental and

25    pharmacy subcontractors, and all other aspects of its operation—must be repeated with

26    regard to Corizon.

27    In addition, Defendants' conduct during Plaintiffs' expert inspections has

28    necessitated additional depositions and written discovery.  For example, contrary to

LEGAL27448238.5

typical practice,[1] Defendants here have barred Plaintiffs' experts from speaking to any staff during their tours, except a staff member(s) pre-selected by Defendants' counsel, and have at times refused to permit experts to review documents during the tour.  In many cases the designated staff person had little or no knowledge of the relevant facility, or was instructed not to answer basic questions.[2]  As a result, Plaintiffs were unable to gain basic information about issues such as staffing, training, and typical operational practices.

In light of these circumstances, Plaintiffs submit this response outlining the discovery already taken and the remaining discovery pursuant to the Court's Order dated July 29, 2013.  As will be shown below, Plaintiffs' discovery to date has been commensurate with their burden of proof, and Defendants have rejected several of Plaintiffs' proposals to conduct discovery more efficiently.

---

[1]  *See, e.g., Graves v. Arpaio*, 2011 WL 1843026, at *5, *10 (D. Ariz. May 16, 2011) (granting Plaintiffs' "discovery request for counsel and their medical expert to tour the Maricopa County Jails facilities, speak with pretrial detainees and staff, and review records on-site, upon reasonable notice to Defendants"); *United States v. Erie County, N.Y.*, 2010 WL 986505, at *3 (W.D.N.Y. March 17, 2010) (ordering in jail conditions case that plaintiffs' experts "shall be permitted to interview or question [jail] and other County employees as necessary during the course of the site inspection on the issues of suicide prevention and mental health processes and procedures"); *K.L. v. Edgar*, 945 F. Supp. 167 (N.D. Ill. 1996) (permitting on-site interviews of staff at state mental health facilities by plaintiffs' experts if conducted in presence of defense counsel).

[2]  For example, during his tour of ASPC-Perryville, Plaintiffs' psychiatric expert Dr. Pablo Stewart was told he could speak only to a representative from Corizon's corporate office in Nashville, Tennessee; it was unclear whether she had ever been to the facility before that day, and she was unable to answer most of Dr. Stewart's questions. [*See* Declaration of David C. Fathi ("Fathi Decl."), dated August 6, 2013, ¶ 5] Defendants also denied Dr. Stewart's repeated requests to speak with a psychiatrist. [*Id.* at ¶¶ 5-6] Moreover, when Dr. Stewart tried to ask even basic questions of these designated staff people, Defendants' counsel frequently instructed them not to answer. [*Id.* at ¶¶ 5-6]

Similarly, during Dr. Cohen's tour of ASPC-Lewis, counsel for Defendants instructed the designated Corizon employees not to answer questions regarding staffing levels or vacancies because they stated, erroneously, that information current as of June 2013 had been produced to Plaintiffs. [Declaration of Corene Kendrick ("Kendrick Decl."), dated August 6, 2013, ¶ 3]  (Although some information regarding staffing was produced the following day, it does not answer many of Dr. Cohen's questions.)  The designees at Dr. Cohen's Eyman tour were unable to answer questions regarding the delivery of medical care, including emergency care and specialty care, as they were new to their jobs.  [*Id.* ¶ 7]  On both the Eyman and Lewis tours, counsel for Defendants instructed the designees not to answer questions about topics as basic as the current day's staffing, how frequently Health Needs Requests were picked up in a unit, whether an X-ray room was being used, and where paper for exam tables was stored. [*Id.* ¶¶ 4, 8]

1  **I.      DISCOVERY ALREADY ACCOMPLISHED**

2         **A.      Expert Tours**

3         Expert inspections are an essential feature of institutional conditions litigation.  *See*

4  n. 1, supra; *Casey v. Lewis*, 834 F. Supp. 1477 (1993) (citing testimony by plaintiffs' and

5  defendants' medical, psychiatric, and dental experts in challenge to ADC health care).

6  This Court has made clear that systemic data and expert witness testimony are critical and

7  "what's going to matter" for Plaintiffs to meet their burden of proof in this case.  [Fathi

8  Decl. Ex. 6 (Reporter's Tr. of Proceedings, April 26, 2013, at 18:7-10)]  "You're going to

9  need an expert and so are [Defendants] about what is such a low level that it falls below

10  the constitutional minimums."  [*Id.* at 12:4-6]  The Court also stated that Plaintiffs should

11  be focused on "getting what you hope will be credible, persuasive expert witnesses the

12  data that they need to offer their opinions."  [*Id.* at 34:9-13][3]

13         After the Court certified the class, Plaintiffs proposed to Defendants that the parties

14  agree on joint experts who would tour the prisons and form opinions on the issues in the

15  case.  Plaintiffs believed that this procedure would reduce costs and minimize factual

16  disputes.  Defendants did not accept this proposal.  Therefore, Plaintiffs retained their own

17  experts.

18         Plaintiffs' seven experts (a psychiatrist, a psychologist, three physicians, a

19  correctional expert, and a dentist) are evaluating the four primary areas of the case across

20

21

22

23  _____

24         [3]  Defendants make a number of assertions about the alleged burden of Plaintiffs'
    expert tours, although they submit no declarations or other evidence in support of these
25  assertions, and at no point actually claim that the burden is disproportionate to the size of
    the class and the number of issues before the Court.  Defendants do not explain, for
26  example, why review of medical records by Plaintiffs' experts "disrupts the pressing
    responsibilities of health care staff" (Doc. 532 at 5) any more than does the monthly
27  record review performed by ADC's own monitoring staff.  They do not explain why each
    expert must be accompanied by "two-to-five [sic]" health care staff members (*id.*), when
28  Plaintiffs' experts are often forbidden to speak to these staff persons and their presence on
    the tour has no other apparent purpose.  [*See* Fathi Decl. ¶ 8]

1  the ten ADC prison complexes (each of which has multiple units) in just 34 visits.[4]  More

2  than three quarters of the expert tours will be completed by the end of this week.[5]

3  **B.      Written Discovery**

4  Plaintiffs have propounded 22 sets of discovery (including Rule 30(b)(6) document

5  requests) comprising 290 requests, admissions, or topics.[6]  Defendants have issued 77 sets

6  of discovery covering 1,232 discovery requests to Plaintiffs.  [Fathi Decl. Ex. 4]

7  In total, Defendants have produced just over 120,000 pages.  Two-thirds of

8  Defendants' production before March 2013 (some 55,000 pages) addressed only the

9  named Plaintiffs and a handful of other specifically-identified prisoners, or contained

10  procurement documents for Wexford and Corizon.[7]  Defendants have just begun

11  producing substantial numbers of documents over the past 60 days, pursuant to ongoing

12  cooperative conversations between the parties regarding the most efficient ways in which

13  to respond to Plaintiffs' requests.

---

[4]  Defendants are apparently counting each day each expert tours each facility as a separate tour, despite that fact that each facility tour involves one set of arrangements and personnel.  As described in the Declaration of David Fathi, filed herewith, the experts evaluating each area have selected facilities and divided responsibilities so as to cover the system in its entirety most efficiently.

[5]  The remaining tours include all three tours by Dr. Brie Williams (Plaintiffs' expert on the medical effects of isolation), as well as medical tours of Florence, Winslow, Safford, Douglas, and Tucson.  [*See* Fathi Decl. ¶¶ 2-3]

[6]  Defendants complain that "[m]any of [plaintiffs'] discovery requests require on-going supplementation."  Doc. 532 at 6.  Of course discovery requests require ongoing supplementation in an injunctive case, Fed. R. Civ. P. 26(e)(1), and Defendants have not hesitated to ask Plaintiffs to supplement their discovery responses.  Moreover, only a handful of the requests require supplementation to the type of system-wide prisoner lists about which Defendants complain, and Plaintiffs are open to discussing how to reduce this burden on Defendants.

[7]  Approximately 21,000 pages of medical and other records for the named Plaintiffs, 12,000 pages of death investigations, 8,000 pages of other prisoners' medical records, 10,000 pages of the Wexford and Corizon procurement files, and 2,000 pages for the Wexford contract.

### C.    Depositions

Defendants have noticed depositions of the 14 named Plaintiffs to take place this month, starting August 6.  In the more than twelve months that discovery has been open, Plaintiffs have taken 13 depositions, including one preservation deposition.[8]

Defendants are refusing to produce more than eight additional witnesses for deposition, even though they have identified over 500 witnesses in their disclosure statement and this Court already rejected their request to limit the number of deposition to 25 per side.  [Fathi Decl. Ex. 5 (Reporter's Tr. of Proceedings, July 20, 2012, at 25:1, referring to limits proposed in Doc. 46 at 10-11)]   In light of the large number of employees and facilities at issue, Defendants' arbitrary limit on depositions is insufficient.

### D.    Electronic (Email) Discovery

To date, Defendants have produced a very small quantity of email to Plaintiffs. Although Defendants represented to the Court in the April 26, 2013 hearing regarding discovery that they had already produced 10,000 pages of information on Wexford, they were evidently referring to the procurement file, a paper file that contained, in part, printed emails related to the administrative procurement process.  An additional small set of email produced includes only correspondence with Wexford from before approximately November 1, 2012.  [Fathi Decl. ¶ 17]

Plaintiffs have repeatedly requested production of the narrowest subset of dates and custodians referenced during the April discovery dispute (three custodians over time periods related to the Wexford and Corizon contracts).[9]  Defendants have continued to use

---

[8] Plaintiffs have taken depositions pursuant to seven Rule 30(b)(6) notices, and have deposed five other ADC and Wexford personnel in their individual capacities. Plaintiffs also deposed prisoner Jonathan Trethewey, whose deposition was authorized by the Court for preservation purposes.  For the purposes of limits on depositions, each 30(b)(6) notice counts as a single deposition.  *See* Fed. R. Civ. P. 30, Adv. Comm. note (1993).  Defendants' oft-repeated statement that Plaintiffs have taken 17 depositions apparently counts each deponent individually, and omits (per the parties' agreement) Mr. Trethewey from the calculation.

[9] During negotiations following the April discovery dispute, Plaintiffs added one additional custodian believed to have useful information.  Defendants have indicated that the "new" custodian has approximately 200 emails in the relevant date ranges.

costs to delay, but Plaintiffs have agreed to submit the cost issue to the Court and asked that the limited production now at issue be made forthwith.  On the evening of August 5, Defendants informed Plaintiffs that they would not produce any email under any circumstances.

## II.      DISCOVERY THAT IS YET TO BE ACCOMPLISHED BY PLAINTIFFS.

The current discovery cut-off is September 27, 2013.  Prior to that date Plaintiffs intend to submit additional written discovery, take depositions, and complete the expert tours, as discussed below.  For the reasons explained below, Plaintiffs believe that an extension in the discovery cut-off date will ultimately result in more efficient and less burdensome discovery.

### A.      Written Discovery

Plaintiffs plan to submit one additional set each of requests for production of documents, interrogatories, and requests for admission, primarily to address issues discovered during the expert tours in July.  Some requests result from the inability of the experts to obtain information about a topic during the tours.  For example, Plaintiffs plan to request information on temperature in housing units, and detailed staffing information reflecting the actual schedules worked, topics that those individuals made available on the tours were either unable to discuss, or which were declared off limits by defense counsel.  Other requests will reflect narrowed document requests now possible because of information learned on the tours or through the ongoing written discovery.  For example, selected medical records were identified during the tours that will likely be used as evidence; prior to the tours, Plaintiffs had little basis on which to prioritize among hundreds of possible records of prisoners with healthcare or isolation-related issues.

### B.      Depositions

#### 1.      Defendant Employee Depositions

Plaintiffs initially identified approximately 60-75 people who were likely either to have key information about healthcare or isolation practices at one or more of the ten

1   ADC facilities, or to be trial witnesses (or both).[10]  Twenty-five of these depositions were

2   noticed on June 13, 2013 to take place in August and September.  On June 18, 2013, in an

3   effort to reduce the number of depositions, Plaintiffs proposed to Defendants that each

4   side identify trial witnesses lists by July 26, 2013, which would have permitted Plaintiffs

5   to direct depositions to likely trial witnesses.  [Fathi Decl. Ex. 1]  Plaintiffs also proposed

6   a limit of 50 depositions per side (i.e., cutting in half the original list of 60-75 *additional*

7   potential deponents they had identified).  [Fathi Decl. Ex. 2]  Defendants did not accept

8   either proposal.

9       On July 25, Plaintiffs again proposed to Defendants that the parties exchange

10  witness lists, this time with a detailed description of the testimony that each of its

11  expected witnesses will give at trial, subject to exclusion at trial of material topics not

12  included in the statement but now known to the party.  Each party would be permitted to

13  supplement this list of expected witnesses or the topics with a good faith, timely

14  disclosure of additional witnesses/witness statements through the time of trial.  [Fathi

15  Decl. Ex. 3]  Combined with a proposed 90-day extension of discovery (and the

16  information learned from expert tours), Plaintiffs believe that this will permit the creation

17  of a revised and more focused deposition list, although it will still contain more than the

18  eight witnesses Defendants have agreed to produce.[11]  Defendants  rejected this proposal

19  via  letter sent to Plaintiffs after 5pm on Monday, August 5, the night before this filing

20  was due at 10am.

21

22

23

24

---

25  [10]  In light of the failure of Defendants to prepare 30(b)(6) witnesses in the Fall of
    2012, and the likelihood that there would not be time to contest the inadequate preparation
26  of 30(b)(6) witnesses deposed in August or September of this year before the close of
    discovery, Plaintiffs planned to notice individual depositions.

27  [11]  Plaintiffs propose that fact discovery be continued concurrently with expert
    discovery, and thus an extension of the current September 27, 2013 cutoff would not
28  require changing the current trial date.

## 2.      Prisoner Depositions

Plaintiffs are aware of several prisoners who are near death and their depositions need to be taken to preserve their testimony.    Under Federal Rule of Civil Procedure 30(a)(2)(B), a court order will be necessary for their deposition.

## 3.      Disputed Depositions

Plaintiffs have noticed the deposition of Defendant Charles Ryan, Director of ADC.  Defendants have indicated an intention to object to his deposition.

Plaintiffs also intend to depose Defendant Richard Pratt, who was produced pursuant to a Rule 30(b)(6) notice in the Fall of 2012.  Mr. Pratt is the employee in charge of health care services at ADC.  Defendants have offered to produce Mr. Pratt only for two hours, which Plaintiffs believe is insufficient given Mr. Pratt's responsibilities and the changes in the ADC system since last September, and the fact that he followed defense counsel's instruction not to answer questions beyond the 30(b)(6) topics.  Plaintiffs seek the Court's guidance on this issue.

## C.      Expert Tours

Plaintiffs have scheduled eight expert tours after the hearing on the present motion. In light of Defendants' concern about the burden that these tours impose, Plaintiffs will agree not to conduct any further tours, with the exception of the three one-day tours by Dr. Williams, if Defendants stipulate that the care and conditions at the institutions that the medical experts have toured to date are representative of the care and conditions at the institutions that the experts have not yet toured.

## D.      Trial Date

The trial in this case is set to commence more than a year from now.  The evidence gathered to date, and especially that obtained through the expert tours, indicates that there are serious deficiencies in care and conditions that are causing serious injury and death to many prisoners.  Plaintiffs request that the Court consider holding the trial at an earlier date so that, if Plaintiffs prevail, a remedy can be obtained more swiftly and thereby mitigate further harm to the Plaintiff class.

1    If the Court is not so inclined, Plaintiffs request that limited fact discovery be

2 permitted until six months before trial (i.e., contemporaneously with expert discovery and

3 depositions) so that the evidence produced at trial is more current.  *See Brown v. Plata*,

4 563 U.S. ___, 131 S. Ct. 1910, 1935 (2011) (discovery cut-off a few months before trial is

5 within the trial court's discretion).  Plaintiffs propose that during those six months the

6 parties be permitted to take depositions and conduct expert tours if there is credible

7 evidence, or if Defendants argue, that the conditions at any of the institutions have

8 changed.

9

10   Dated:  August 6, 2013                    **PERKINS COIE LLP**

11

12                                            By:   s/ Amelia M. Gerlicher
                                                 Daniel C. Barr (Bar No. 010149)
13                                               Amelia M. Gerlicher (Bar No. 023966)
                                                 Kirstin T. Eidenbach (Bar No. 027341)
                                                 John H. Gray (Bar No. 028107)
14                                               Matthew B. du Mée (Bar No. 028468)
                                                 2901 N. Central Avenue, Suite 2000
15                                               Phoenix, Arizona 85012
                                                 Telephone:  (602) 351-8000
16                                               Email:    dbarr@perkinscoie.com
                                                           agerlicher@perkinscoie.com
17                                                         keidenbach@perkinscoie.com
                                                           jhgray@perkinscoie.com
18                                                         mdumee@perkinscoie.com

19                                               Daniel Pochoda (Bar No. 021979)
                                                 Kelly J. Flood (Bar No. 019772)
20                                               James Duff Lyall (Bar No. 330045)*
                                                 **ACLU FOUNDATION OF**
21                                               **ARIZONA**
                                                 3707 North 7th Street, Suite 235
22                                               Phoenix, Arizona 85013
                                                 Telephone:  (602) 650-1854
23                                               Email:    dpochoda@acluaz.org
                                                           kflood@acluaz.org
24                                                         jlyall@acluaz.org

25                                               *Admitted pursuant to Ariz. Sup. Ct.
                                                 R. 38(f)
26

27

28

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
              ahardy@prisonlaw.com
              snorman@prisonlaw.com
              ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:    dfathi@npp-aclu.org
              afettig@npp-aclu.org
              aquereshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted
 in DC; practice limited to federal
 courts.
**Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:    cnmitchell@jonesday.com
              dkiernan@jonesday.com
              scalderon@jonesday.com
              srauh@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email:    jlwilkes@jonesday.com
              tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone: (212) 326-3498
Email:    kmamedova@jonesday.com
              jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Dustin Brislan; Sonia
Rodriguez; Christina Verduzco; Jackie
Thomas; Jeremy Smith; Robert Gamez;
Maryanne Chisholm; Desiree Licci; Joseph
Hefner; Joshua Polson; and Charlotte
Wells, on behalf of themselves and all others
similarly situated*

1

**ARIZONA CENTER FOR DISABILITY LAW**

2

3

By:   s/Jennifer Alewelt

4

Jennifer Alewelt (Bar No. 027366)
Asim Varma (Bar No. 027927)

5

Sarah Kader (Bar No. 027147)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034

6

Telephone:  (602) 274-6287
Email:     jalewelt@azdisabilitylaw.org

7

avarma@azdisabilitylaw.org
skader@azdisabilitylaw.org

8

9

J.J. Rico (Bar No. 021292)
Cathleen M. Dooley (Bar No. 022420)

10

**ARIZONA CENTER FOR DISABILITY LAW**

11

100 N. Stone Avenue, Suite 305
Tucson, Arizona 85701

12

Telephone:  (520) 327-9547
Email:     jrico@azdisabilitylaw.org

13

cdooley@azdisabilitylaw.org

14

*Attorneys for Arizona Center for Disability Law*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

eigh

1

**CERTIFICATE OF SERVICE**

2    I hereby certify that on August 6, 2013, I electronically transmitted the above

3  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4  Notice of Electronic Filing to the following CM/ECF registrants:

5

6    Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
7  Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
8  Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov
9

10    Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
11  Rachel Love
Nicholas D. Acedo
12  Courtney R. Cloman
Ashlee B. Fletcher
13  Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.
14  dstruck@swlfirm.com
kwieneke@swlfirm.com
15  tbojanowski@swlfirm.com
rlove@swlfirm.com
16  nacedo@swlfirm.com
ccloman@swlfirm.com
17  afletcher@swlfirm.com
aorcutt@swlfirm.com
18

19    *Attorneys for Defendants*

20

21    s/  S. Neilson

22

23

24

25

26

27

28

LEGAL27448238.5                                   -13-