**Index of Exhibits to Declaration of David C. Fathi
in Support of Plaintiffs' Proposed Discovery Schedule**

Exhibit 1:          June 18, 2013 Email from Caroline N. Mitchell to Defendants

Exhibit 2:          June 25, 2013 Email from David C. Fathi to Defendants

Exhibit 3:          July 25, 2013 Email from Caroline N. Mitchell to Defendants

Exhibit 4:          Chart prepared by Plaintiffs' counsel listing the discovery requests
                    served by the parties in this litigation

Exhibit 5:          Excerpts of transcript of proceedings dated July 20, 2012

Exhibit 6:          Excerpts of transcript of proceedings dated April 26, 2013

# EXHIBIT 1



Subject:
RE: Discovery
From:
Caroline N Mitchell
06/18/2013 09:07 AM
Sent by:
parsonsdiscovery@prisonlaw.com
To:
Dan Struck
Cc:
Anne Orcutt, "lucy.rand@", Jennifer Alewelt, Kathy Wieneke, "Michael E. Gottfried", Tim
Bojanowski
Hide Details
From: Caroline N Mitchell <cnmitchell@JonesDay.com> Sort List...
To: Dan Struck <DStruck@swlfirm.com>,
Cc: Anne Orcutt <AOrcutt@swlfirm.com>, "lucy.rand@" <azag.gov_lucy.rand@azag.gov>,
Jennifer Alewelt <jalewelt@azdisabilitylaw.org>, Kathy Wieneke
<KWieneke@swlfirm.com>, "Michael E. Gottfried" <Michael.Gottfried@azag.gov>, Tim
Bojanowski <TBojanowski@swlfirm.com>
Sent by: parsonsdiscovery@prisonlaw.com
History: This message has been forwarded.

Dan,

Given the length of the initial disclosures, the number of potential witnesses each side could call, and the aim of
the Federal Rules to avoid trial by ambush, we think reaching some orderly way of identifying and deposing
witnesses who will testify at trial is essential.  Courts have found that when initial disclosures identify an
overwhelming number of individuals, failing to provide the opposing party with a narrower list of the witnesses who
may be called at trial is "contrary to the purpose and goal of early disclosure and the common sense requirements
of Fed.R.Civ.P. 26." *In re Fedex Ground Package Sys., Inc., Employment Practices Litigation*, 2007 BL 82536, at
*4 (N.D. Ind. July 23, 2007) (witness declarations stricken where Defendants waited until after the close of
discovery before informing Plaintiffs which of the thousands of individuals listed in the initial disclosures
Defendants intended to use at trial); *see also Sender v. Mann*, F.R.D. 645, 655 (D. Colo. 2004) (disclosures
inadequate where opposing party was left "with the choice of either requesting a substantial number of additional
depositions, with all of the attendant costs, or hoping that they correctly guessed which of the approximately 300
[individuals] ultimately would testify at trial.").  Similarly, courts have limited trial witnesses to those individuals
whom the opposing party has already deposed.  *See, e.g., Sundance Image Tech., Inc. v. Cone Editions Press,
Ltd.*, 2007 BL 241925, at *3 (S.D. Cal. Mar. 7, 2007) ("any witness who Plaintiffs propose [to call at trial], who has
not already been disclosed to and deposed by Defendants, may not be called to testify at trial").

To address this issue in an orderly fashion, Plaintiffs propose that the parties agree to exchange pretrial witness
lists by July 26, 2013.  Each party will then provide good faith supplementations to their list on the date set by the
Court for pretrial witness disclosures, and will allow the opposing party to take the deposition of those witnesses
not previously identified in the lists exchanged on July 26.  Thereafter, any party who had a good faith reason to
add a trial witness to their list could seek leave to do so, providing the party agreed to allow the witness to be
deposed before testifying and agreed to promptly produce relevant documents.  The other party would still be free
to argue prejudice.  This proposal will provide both parties with the opportunity to depose those witnesses who
are ultimately called at trial, as well as to review documents relevant to those witnesses.  Furthermore, it will allow
both parties to prioritize that discovery that will ultimately be used at trial, so we can avoid needlessly deposing
initial disclosure witnesses who will not be called at trial, thus saving everyone time and resources.  Scheduling
the exchange of witness lists prior to the close of discovery is not uncommon.  *See, e.g., Pendlebury v. Starbucks
Coffee Co.*, 518 F. Supp. 2d 1345 (S.D. Fla. 2007); *Brown v. Peterson*, 2007 BL 119274 (D. Alaska Oct. 4, 2007);
*Paulsen v. State Farm Ins. Co.*, 2008 BL 305224 (E.D. La. Feb. 14, 2008).

The above proposal should be part of the parties' meet and confer when we discuss the number of depositions
that Plaintiffs have recently noticed.

Thank you,

Caroline


Caroline Mitchell
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104-1500

Telephone:  (415) 875-5712
Fax: (415) 875-5700
e-mail: cnmitchell@jonesday.com


| From: | Dan Struck <DStruck@swlfirm.com> |
| To: | 'Caroline N Mitchell' <cnmitchell@JonesDay.com>, Anne Orcutt <AOrcutt@swlfirm.com>, "lucy.rand@" <azag.gov lucy.rand@azag.gov> |
| Cc: | Jennifer Alewelt <jalewelt@azdisabilitylaw.org>, "Michael E. Gottfried" <Michael.Gottfried@azag.gov>, Kathy Wieneke <KWieneke@swlfirm.com>, Tim Bojanowski <TBojanowski@swlfirm.com> |
| Date: | 06/10/2013 11:43 AM |
| Subject: | RE: Discovery |

Caroline,

I don't see how this would be possible.   We may not know who we are going to call in some instances until after you put on your case in chief.



STRUCK WIENEKE & LOVE
3100 West Ray Road, Suite 300   Chandler, Arizona 85226

**Daniel P. Struck**
Direct: (480) 420-1620
dstruck@swlfirm.com
www.swlfirm.com

**From:** Caroline N Mitchell [mailto:cnmitchell@JonesDay.com]
**Sent:** Monday, June 10, 2013 11:26 AM
**To:** Dan Struck; Anne Orcutt; lucy.rand@
**Cc:** Jennifer Alewelt
**Subject:** Discovery

Dan,

Plaintiffs (both the prisoner class and the ADLC) propose that the parties agree that no party will call a witness at trial without allowing the opposing party an opportunity to depose that witness.  Please let me know if Defendants will agree.  If you do, I am happy to prepare a stipulation.

Thank you,

Caroline

Caroline Mitchell
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104-1500

Telephone:  (415) 875-5712
Fax: (415) 875-5700
e-mail: cnmitchell@jonesday.com

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

This electronic mail transmission contains information from the law firm Struck Wieneke & Love, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 420-1600. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

# EXHIBIT

## 2



Subject:
Depositions
From:
Fathi, David
06/25/2013 08:48 AM
Sent by:
parsonsdiscovery@prisonlaw.com
To:
dstruck
Cc:
Michael.Gottfried, parsonsdiscovery
Hide Details
From: "Fathi, David" <dfathi@npp-aclu.org>
To: <dstruck@swlfirm.com>,
Cc: <Michael.Gottfried@azag.gov>, <parsonsdiscovery@prisonlaw.com>
Sent by: parsonsdiscovery@prisonlaw.com

Dan,

To try to reach resolution on the deposition issue, Plaintiffs have reviewed the number of witnesses we intended to depose and are prepared to reduce the number of overall depositions we intend to take of fact witnesses from more than 70 to 50. This number is reasonable given that there are 10 institutions, 33,000 class members, and 17 issues on which the Court has granted class certification. The case covers four areas (medical care, mental health care, isolation and dental) and you have replaced your system-wide health care provider mid-case. We do not believe that your proposal of 25 total depositions is reasonable, given the scope of the case and the way the factual issues have developed. Please let me know if you agree and if not, we need to schedule a meet-and-confer to discuss.

With respect to particular depositions, Plaintiffs do propose to resume the Richard Pratt 30(b)(6) deposition that took place on October 4, 2012. In the alternative, Plaintiffs intend to notice a deposition of Mr. Pratt in his individual capacity. During his deposition in October, Mr. Pratt followed Defendants' counsel's instructions to not answer any questions outside of the scope of the 30(b)(6) notice. Such instructions were improper. *See Detoy v. City & County of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000) ("If Defendants have objections to either questions outside the scope of the 30(b) (6) designation or a question whether certain conduct falls inside or outside Departmental policy, counsel shall state the objection on the record and the witness shall answer the question, to the best of the witness's ability."). Furthermore, Mr. Pratt's testimony made it clear that he was not adequately prepared to answer many questions within the scope of the notice, as required by the Federal Rules. *See Pioneer Drive v. Nissan Diesel America, Inc.*, 262 F.R.D. 552, 559 (D. Mont. 2009) ("Defendant's designee was not knowledgeable about the noticed matters nor was he prepared to give complete and binding answers on behalf of the organization. The Defendant failed its obligation to produce a witness under 30(b)(6). While a physical body was present, no person who satisfied the legal requirements of Rule 30(b)(6) was produced."). Finally, the termination of the Wexford contract and the implementation of the Corizon contract both occurred after Mr. Pratt's previous deposition, necessitating that he be deposed again so as to cover these developments. *See* Wright & Miller, Federal Practice and Procedure § 2103 ("The fact that a Rule 30(b)(6) notice must specify limited topics for examination implies that additional inquiry into other relevant topics should not be precluded by the fact that inquiry has first been made on the topics designated for the first Rule 30(b)(6) deposition. Moreover, it might be inappropriate to insist that all topics be explored in a single deposition because various topics are suitable for inquiry at different times in the case.").

Further, we understand that Dr. Shaw is now affiliated with Corizon and responsible for mental health.

In light of his new position and for the same reasons discussed above with respect to Mr. Pratt, Plaintiffs intend to take Dr. Shaw's deposition based on events that transpired since his last deposition. Please let me know if you intend to oppose that request.

Thanks very much,

David

David C. Fathi*
Director, ACLU National Prison Project
915 15th St. N.W., 7th Floor
Washington, DC  20005
(202) 548-6603
dfathi@npp-aclu.org

*Not admitted in DC; practice limited to federal courts

# EXHIBIT

# 3

# JONES DAY

555 CALIFORNIA STREET • 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104-1500
TELEPHONE: 415-626-3939 • FACSIMILE: 415-875-5700

Direct Number: (415) 875-5712
cnmitchell@JonesDay.com

JP005615                          July 25, 2013

VIA EMAIL AND MAIL
Daniel P. Struck, Esq.
Struck Wieneke & Love, P.L.C.
3100 West Ray Road
Suite 300
Chandler, Arizona 85226-2473

                    Re:    Parsons v. Ryan

Dear Dan:

          In light of recent developments in the litigation and the ongoing disputes between the
parties regarding depositions, I am writing to propose the following adjustments to upcoming
discovery:

          1.  We propose a 90-day extension of the discovery cut-off.  This will allow you, if you
choose, to postpone the named Plaintiffs' depositions without prejudice.  We are prepared to
move forward and defend those depositions on the dates currently scheduled, but if that is going
to happen, then we need Defendants to comply with the agreement to supplement the production
of prisoners' medical records prior to the deposition.

          2.  Subject to the 90-day extension, we propose that each party disclose on an agreed
upon date, August 15, a detailed description of the testimony that each of its expected witnesses
will give at trial, subject to exclusion at trial of material topics not included in the statement but
now known to the party.  Each party would be permitted to supplement this list of expected
witnesses or the topics with a good faith, timely disclosure of additional witnesses/witness
statements through the time of trial.  Subject to this agreement, we will withdraw our pending
deposition notices and evaluate the information obtained through the disclosures.  We will then
re-notice some depositions at a later day based on outstanding information we believe we still
need based on an overall assessment of the evidence produced to date.  This would likely be a
combination of individual witnesses and 30(b)(6) depositions.  If a party supplements the witness
list, the opposing party may also modify the depositions to account for the addition or subtraction
of witnesses.  This proposal would also allow more time for document production to complete,
including email production, so we can narrow the scope of depositions we need.  Experts would
not be subject to this paragraph and no party would be required to disclose a witness statement
for an adverse witness (e.g., Defendants would not need to disclose expected testimony from

SFI-832797v1

**JONES DAY**

Dan Struck, Esq.
July 25, 2013
Page 2

Plaintiffs and Plaintiffs would not need to disclose expected testimony from Defendants or others responsible for providing the challenged care). This agreement would not alter the parties' obligations to update their initial disclosures on a timely basis.

    3. If your request for a stay is granted, this agreement would remain in effect but would be continued for the duration of the stay.

    The Arizona Center for Disability Law has agreed to these proposals.

             Very truly yours,

             Caroline N. Mitchell

SFI-832797v1

# EXHIBIT
# 4

## Written Discovery Statistics

| Category | Plaintiffs | | | Defendants | | |
|---|---|---|---|---|---|---|
| | Prisoners | ACDL | TOTAL | To Prisoners | To ACDL | TOTAL |
| RFAs Served (Sets of Discovery) | 0 | 0 | 0 | 2 | 0 | 2 |
| RFAs & Rogs Served (Sets of Discovery) | 2 | 0 | 0 | 12 | 2 | 14 |
| RFPs Served (Sets of Discovery) | 5 | 1 | 6 | 30 | 2 | 32 |
| Rogs Served (Sets of Discovery) | 6 | 1 | 7 | 27 | 2 | 29 |
| 30(b)(6) Doc Requests Served (Sets of Discovery) | 7 | 0 | 7 | 0 | 0 | 0 |
| **Total Sets of Discovery Served:** | 20 | 2 | 22 | 71 | 6 | 77 |
| RFAs Served (Total Requests) | 363 | 0 | 363 | 571* | 70 | 617 |
| RFPs Served (Total Requests) | 144 | 12 | 156 | 310 | 13 | 323 |
| Rogs Served (Total Questions) | 72 | 10 | 82 | 267 | 25 | 292 |
| 30(b)(6) Doc Requests Served (Total Requests) | 29 | 0 | 29 | 0 | 0 | 0 |
| **Total Requests/Questions Served:** | 608 | 22 | 630 | 1124 | 108 | 1232 |

* Does not include 63 withdrawn RFAs Defendants plan to reword and resubmit

## Other Discovery Statistics

| Category | Plaintiffs | Defendants |
|---|---|---|
| Pages of Documents Produced | 25,678 | 121,330 |
| Depositions Taken | 13 | 0 |
| Third-Party Doc Requests Served (Sets of Discovery) | 9 | 36 |
| Third-Party Doc Requests Served (Total Requests) | 48 | 206 |

## Total Discovery Served on Others

| Category | Plaintiffs | Defendants |
|---|---|---|
| Sets of Discovery | 31 | 113 |
| Total Requests | 678 | 1438 |

| Plaintiff | Document | RPD #s | RFA #s | Rog #s |
|---|---|---|---|---|
| Brislan | RFA / Rog 1 | | 110 | 2 |
| Brislan | Rog 1 (Pratt) | | | 4 |
| Brislan | Rog 2 (Pratt) | | | 2 |
| Brislan | Rog 3 (Pratt) | | | 1 |
| Brislan | Rog 1 (Ryan) | | | 19 |
| Brislan | Rog 2 (Ryan) | | | 4 |
| Brislan | RPD 1 | 23 | | |
| Brislan | RPD 2 | 1 | | |
| Chisholm | RFA / Rog 2 | | 3 | 1 |
| Chisholm | RFA 1 (Pratt) | | 10 | 2 |
| Chisholm | RFA 1 (Ryan) | | 23 | 2 |
| Chisholm | Rog 1 | | | 12 |
| Chisholm | Rog 2 (Pratt) | | | 4 |
| Chisholm | Rog 2 (Ryan) | | | 2 |
| Chisholm | Rog 3 | | | 5 |
| Chisholm | RPD 1 | 25 | | |
| Chisholm | RPD 2 | 12 | | |
| Chisholm | RPD 3 | 1 | | |
| Gamez | RFA / Rog 1 | | 189 | 2 |
| Gamez | RFA / Rog 2 | | 3 | 1 |
| Gamez | Rog 1 | | | 12 |
| Gamez | RPD 1 | 19 | | |
| Gamez | RPD 2 | 1 | | |
| Hefner | RFA / Rog 1 | | 23 | 3 |
| Hefner | Rog 1 | | | 14 |
| Hefner | RPD 1 | 25 | | |
| Hefner | RPD 2 | 1 | | |
| Jensen | RFA / Rog 1 | | 31 | 2 |
| Jensen | RFA / Rog 2 | | 19 | 3 |
| Jensen | Rog 1 | | | 11 |
| Jensen | Rog 2 | | | 2 |
| Jensen | RPD 1 | 20 | | |
| Jensen | RPD 2 | 1 | | |
| Licci | Rog 1 | | | 14 |
| Licci | RPD 1 | 25 | | |
| Licci | RPD 2 | 1 | | |
| Parsons | RFA / Rog 1 | | 98 | 2 |
| Parsons | RFA / Rog 2 | | 3 | 1 |
| Parsons | Rog 1 | | | 17 |
| Parsons | RPD 1 | 26 | | |
| Parsons | RPD 2 | 15 | | |
| Parsons | RPD 3 | 1 | | |
| Polson | Rog 1 | | | 14 |
| Polson | RPD 1 | 19 | | |
| Polson | RPD 2 | 1 | | |
| Rodriguez | Rog 1 | | | 12 |
| Rodriguez | Rog 2 | | | 6 |
| Rodriguez | RPD 1 | 14 | | |
| Rodriguez | RPD 2 | 1 | | |
| Smith | RFA / Rog 1 | | 10 | 3 |
| Smith | Rog 1 | | | 14 |
| Smith | RPD 1 | 15 | | |
| Smith | RPD 2 | 1 | | |
| Swartz | Rog 1 | | | 12 |
| Swartz | Rog 2 | | | 7 |
| Swartz | RPD 1 | 17 | | |
| Swartz | RPD 2 | 1 | | |
| Thomas | RFA / Rog 1 | | 67 | 3 |
| Thomas | Rog 1 | | | 11 |
| Thomas | Rog 2 | | | 5 |
| Thomas | RPD 1 | 12 | | |

| Plaintiff | Document | RPD #s | RFA #s | Rog #s |
|---|---|---|---|---|
| ACDL | RPD 1 | 7 | | |
| ACDL | RPD 2 | 6 | | |
| ACDL | RFA / Rog 1 | | 51 | 2 |
| ACDL | RFA / Rog 2 | | 19 | 2 |
| ACDL | Rog 1 (Pratt) | | | 12 |
| ACDL | Rog 1 (Ryan) | | | 9 |
| | | 13 | 70 | 25 |

| Name | Type | | | |
|---|---|---|---|---|
| Thomas | RPD 2 | 1 | | |
| Verduzco | RFA / Rog 1 | | 45 | 3 |
| Verduzco | Rog 1 | | | 10 |
| Verduzco | Rog 2 | | | 9 |
| Verduzco | RPD 1 | 14 | | |
| Verduzco | RPD 2 | 1 | | |
| Wells | Rog 1 | | | 10 |
| Wells | Rog 2 | | | 4 |
| Wells | RPD 1 | 15 | | |
| Wells | RPD 2 | 1 | | |
| | | | | |
| | TOTALS | 310 | 634 | 267 |

| Date | Party Subpoenaed | Dkt. | Doc Reqs. |
|---|---|---|---|
| 8/2/2012 | Ortega | 63 | 7 |
| 8/2/2012 | Hamm | 64 | 7 |
| 9/7/2012 | Arizona State Hospital | 116 | 4 |
| 11/9/2012 | Hospital | 233 | 4 |
| 11/9/2012 | Hospital | 233 | 4 |
| 11/9/2012 | Hospital | 233 | 4 |
| 11/9/2012 | Hospital | 233 | 4 |
| 11/9/2012 | Hospital | 233 | 4 |
| 11/9/2012 | Hospital | 233 | 4 |
| 11/9/2012 | Hospital | 233 | 4 |
| 11/9/2012 | Hospital | 233 | 4 |
| 11/9/2012 | Hospital | 233 | 4 |
| 11/9/2012 | Hospital | 233 | 4 |
| 11/9/2012 | Hospital | 233 | 4 |
| 11/9/2012 | Hospital | 233 | 4 |
| 11/9/2012 | Hospital | 233 | 4 |
| 11/9/2012 | Hospital | 233 | 4 |
| 11/14/2012 | Hospital | 250 | 4 |
| 11/14/2012 | Hospital | 250 | 4 |
| 11/14/2012 | Hospital | 250 | 4 |
| 11/14/2012 | Hospital | 250 | 4 |
| 11/14/2012 | Hospital | 250 | 4 |
| 11/14/2012 | Hospital | 250 | 4 |
| 11/14/2012 | Hospital | 250 | 4 |
| 11/14/2012 | Hospital | 250 | 4 |
| 11/14/2012 | Hospital | 250 | 4 |
| 11/14/2012 | Hospital | 250 | 4 |
| 11/14/2012 | Hospital | 250 | 4 |
| 11/14/2012 | Hospital | 250 | 4 |
| 11/14/2012 | Hospital | 250 | 4 |
| 11/14/2012 | Hospital | 250 | 4 |
| 11/14/2012 | Stewart | 250 | 18 |
| 11/15/2012 | Shulman | 255 | 18 |
| 11/15/2012 | Cohen | 255 | 18 |
| 11/19/2012 | Haney | 266 | 18 |
| | Totals | 36 | 206 |

# EXHIBIT
# 5

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

———————————

Victor Antonio Parsons, et al.,       )
                                      )
                                      )
                        Plaintiffs,   )
                                      )
             vs.                      )   NO. CV 12-601 PHX-NVW
                                      )
Charles L. Ryan, et al.,              )   Phoenix, Arizona
                                      )   July 20, 2012
                                      )   10:20 a.m.
                        Defendants.   )
——————————————————————————————————————)


REPORTER'S TRANSCRIPT OF PROCEEDINGS

(Scheduling Conference)

BEFORE THE HONORABLE NEIL V. WAKE




Court Reporter:        Merilyn A. Sanchez, CRR
                       Sandra Day O'Connor U.S. Courthouse
                       401 W. Washington Street SPC-37
                       Phoenix, Arizona  85003-2118
                       (602) 322-7250


Proceedings taken by stenographic court reporter
Transcript prepared by computer-aided transcription

A P P E A R A N C E S

For the Plaintiffs:        **Donald H. Specter**, Esq.
                           Prison Law Office
                           General Delivery
                           San Quentin, California

                           **David C. Fathi**, Esq.
                           ACLU National Prison Project
                           1630 Connecticut Avenue NW, Suite 500
                           Washington, District of Columbia

                           **Caroline N. Mitchell**, Esq.
                           Jones Day
                           555 California Street
                           26th Floor
                           San Francisco, California 94104

                           **Jennifer Alewelt**, Esq.
                           Arizona Center for Disability Law
                           5025 E. Washington Street, Suite 202
                           Phoenix, Arizona  85034


For the Defendants:        **Kathleen L. Wieneke**, Esq.
                           Struck, Wieneke & Love
                           3100 West Ray Road, Suite 300
                           Chandler, Arizona


                           **Michael Gottfried**, Esq.
                           Assistant Attorney General
                           1275 W. Washington Street
                           Phoenix, Arizona 85007-2926


                           **Timothy J. Bojanowski**, Esq.
                           P.O. Box 73427
                           Phoenix, Arizona

1   affected by what the scope of the document requests are.   If

2   they are extremely voluminous, it's a big issue.   And in

3   general -- in general my thought is that these costs should not

4   exceed what you can get an outside vendor to do.   And the easy

5   way to do that is if you send it to an outside vendor.

6          Now, there's still costs in getting together and

7   getting it over there and getting it back.   So I know it's not

8   that simple.   And, again, this seems to be very much affected

9   by what the scope of the requests are.

10          And let me warn you, Mr. Specter, my approach to

11  voluminous document discovery is I don't make people produce

12  things that are not going to be looked at.

13          MR. SPECTER:   Your Honor, we are -- we don't have any

14  interest in making this as -- as -- we have every interest in

15  making this as efficient as possible.   We've been doing this a

16  long time, and we think we can target what we need.

17          THE COURT:   All right, then, I'm going to leave that

18  to you all.   If this really goes to -- takes a wrong turn on

19  the road, I might end up having to set a discovery master, but

20  I'm hoping not to do that, that with adequate direction from me

21  where necessary, you all can get this done without the great

22  expense of a discovery master.

23          And I have not -- I could, but I have not referred

24  this case to a magistrate judge, at least not yet, because I

25  figured it was going to require some very substantial case

1   management and that I could do it more efficiently.  However,

2   although I'm really not disposed to sending this case generally

3   to a magistrate judge, there might be a discrete task that gets

4   sent to a magistrate judge, if necessary.  So --.

5          Well, I'm already on page 9 of your 19-page report, so

6   we are making progress.

7          This issue of depositions and the number of discovery

8   in general, it's probably premature to try to set that, but let

9   me give you some -- a general sense.

10          First of all, as you know, the rules charge me with

11   managing discovery so that it's efficient, economical, and

12   proportionate to the issues.  And although I can see the

13   defendants assert the Court doesn't have authority to limit the

14   number of document requests, I read Rule 26(b)(2) otherwise.

15   It charges the Court with managing all discovery.  So that I've

16   got -- I have authority to set limits on all discovery.  And as

17   to depositions, well, these -- these presumptive numbers in the

18   federal rules are starting points of thinking.  They are not

19   the ending points of thinking.

20          So and again, this is -- well -- and indeed, I don't

21   view numbers of depositions as an entitlement for anyone.  I

22   view it all as something to be managed in light of what the

23   issues are, what the purposes are.  Just taking depositions, I

24   don't believe taking depositions of somebody just because they

25   got listed as a witness.

1          A better way to do that is to request, and I'll allow

2    it, interrogatories that say what that witness is going to say.

3    You don't have to -- it can be abbreviated but substantive.

4          And a lot of times you find you don't need to depose

5    that person for that.  You make focus judgments about what

6    witnesses are important enough.  And a lot of witnesses, you

7    pretty much know what they are going to say.  You know what

8    you're going to do.  You can cross-examine them without having

9    seen them before contrary to popular belief, If they're -- if

10   they are, shall I say routine witnesses on matters that are not

11   of critical importance.

12         But my point is that you all need to think of -- you

13   need to look at the more efficient ways of getting the

14   discovery about what the evidence is going to be and then make

15   focused decisions about who you are going to depose.  I don't

16   like depositions as a first line of discovery because they are

17   so wasteful and expensive.

18         So now with that said, once you go through them, you

19   may still have disagreements, in which event, you come back and

20   we will have whatever we need in terms of discovery

21   conferences.  As I said, on a worst-case scenario I might make

22   you hire a discovery master.  But so far, I have not done that

23   in any case because of the expense and the delay that's built

24   into it.  But I might, so --.

25         Hard for me to see 75 depositions.  So I think again

1   on this I'm not going to set limits now.  I'll leave you with

2   general directions with the direction to confer and be

3   practical and then you can bring disputes to me.

4        Oh, and -- 750 interrogatories, well, it's really the

5   same point that we've got this initial thing about the

6   discovery on the class certification.  And yet since I'm

7   viewing that as not encompassing, it encompasses the issues but

8   not the outcome of the issues of the merits of the case.

9        So what do you really think, Mr. Specter, in -- I

10   mean, in particular about -- and just a rough sense of the

11   magnitude of the interrogatories you will need -- well,

12   actually no.  I'm not limiting you to the class certification.

13   I'm going to allow you to do all of the discovery relevant to

14   your 14 plaintiffs commensurate -- in fact, I've basically

15   required it.

16        MR. SPECTER:  Yes, Your Honor.

17        THE COURT:  So what --

18        MR. SPECTER:  Well -- sorry.

19        THE COURT:  Well, you are not going to get 750

20   interrogatories, so what is realistic?

21        MR. SPECTER:  Well, I think it's probably better to do

22   it in the real world than in the abstract along with your other

23   thinking.  And if we have a problem, we can come back to you.

24        Can I address --

25        THE COURT:  You may.

# EXHIBIT

# 6

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| Victor Parsons, et al., on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIV 12-0601-PHX-NVW |
| vs. | ) ) ) | Phoenix, Arizona April 26, 2013 2:14 p.m. |
| Charles Ryan and Richard Pratt, in their official capacities, | ) ) ) ) | |
| Defendants. | ) ) ) | |

_____

BEFORE:  THE HONORABLE NEIL V. WAKE, JUDGE


REPORTER'S TRANSCRIPT OF PROCEEDINGS

ORAL ARGUMENT


Official Court Reporter:
Linda Schroeder, RDR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 32
Phoenix, Arizona  85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
 1                    A P P E A R A N C E S

 2


 3   For the Plaintiffs:

 4                Jones Day – Washington, DC
                  By:  R. SCOTT MEDSKER, ESQ.
 5                51 Louisiana Avenue NW
                  Washington, DC  20001
 6
                  Jones Day – San Francisco, CA
 7                By:  CAROLINE N. MITCHELL, ESQ.
                  555 California Street, 26th Floor
 8                San Francisco, CA  94104

 9   For the Plaintiff Arizona Center for Disability Law:

10                Arizona Center for Disability Law – Phoenix, AZ
                  By:  JENNIFER ANN ALEWELT, ESQ.
11                5025 East Washington Street, Suite 202
                  Phoenix, AZ  85034
12
     For the Defendants:
13
                  Office of the Attorney General – Phoenix
14                By: ASHLEY BROOK ZUERLEIN, ESQ.
                      LUCY MARIE RAND, ESQ.
15                    MICHAEL EVAN GOTTFRIED, ESQ.
                  1275 West Washington Street
16                Phoenix, AZ  85007

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

1    all.  This is a lawsuit about the inadequacy of the level of

2    medical care.  That's going to require apprehending the actual

3    facts of what levels of care are provided.

4         You're going to need an expert and so are they about

5    what is such a low level that it falls below the constitutional

6    minimums.  I'm at a loss as to why you or anybody needs to

7    troll through tens of thousands or hundreds of thousands of

8    e-mails from anybody.  Go ahead.

9         MR. MEDSKER:  Certainly, Your Honor.  The thing that

10   we have to show is systemwide deliberate indifference.  And the

11   e-mails of not only these three individuals but also the

12   individuals who were responsible for healthcare at each of the

13   facilities and those individuals who were responsible for the

14   relationship with Wexford, which provided the healthcare, those

15   e-mails are the best contemporaneous evidence.

16        THE COURT:  Why?  I mean, you've got a huge volume of

17   business in corrections in a large statewide prison system.

18   You're going to have zillions of e-mails.  What are you looking

19   for?  The e-mails to say I sure hope we never get sued for this

20   because what we're doing is unconstitutional?

21        And for that you want to spend months and months and

22   months and huge amounts of labor and money?

23        MR. MEDSKER:  Well, Judge Wake, we know those

24   e-mails --

25        THE COURT:  When I was in law school, they told a

UNITED STATES DISTRICT COURT

1    perhaps correct physician in the system who said we're not

2    getting enough here.

3            Let's suppose we had that.  Is it worth spending all

4    this time and labor to find that when what will really matter

5    is the systemic data itself as to what resources are being put

6    in rather than looking for the embarrassing e-mail?

7            I can tell you that's what I'm going to care about,

8    about the systemic data.  And I will be aided by expert

9    witnesses who are -- at least whichever ones are believable to

10   me.  That's what's going to matter.

11           So it seems to me that's what ought to be examined

12   rather than -- Well, I am talking freely to help you understand

13   my concerns and to respond to them.

14           MR. MEDSKER:  Of course, Judge Wake.  We are not doing

15   this to harass or embarrass.  We're doing it in our right to

16   find the best evidence of notice.  And we know that it exists

17   because we've seen some of it.

18           THE COURT:  Why not do rifle shot discovery at those

19   people?  You say you already know some of them.  If you have

20   some and you've got great complaining memos that are specific,

21   you've got that.  Why do we have to spend all this time to get

22   a few more?

23           MR. MEDSKER:  Your Honor, this is not rifle shot

24   discovery, respectfully.  We've worked time and time again to

25   narrow this to approximately 36 months of e-mail.  And the

1   minimums for them in a way that's probable.

2          And if in fact the gross data show a poor level of

3   care but not one falling to the depth of an Eighth Amendment

4   violation, it's not going to matter that anybody complained and

5   anybody sent angry e-mails telling them that were so.  That's

6   just not going to matter.

7          And if you do prove that, you're not going to need

8   that to prove your case either.

9          So I'm disposed to not impose great burdens on the

10  defendants on this e-mail search and to leave you to mining the

11  vein of gold that is there, their level of actual care, and

12  getting what you hope will be credible, persuasive expert

13  witnesses the data that they need to offer their opinions.

14         Now, with that said, obviously this Wexford contract

15  is particularly significant.  I'm hearing the defendants say

16  they've already given you all of that.  By the way, when we're

17  dealing with large amounts of data production, it doesn't have

18  to be perfect.  It cannot be perfect.  But if you've done

19  diligent effort, a large volume, and you've got most of the

20  stuff, that's all that life requires.  The Rules of Civil

21  Procedure don't require any more than life.

22         Now, you know, there are issues about the key decision

23  makers.  If there's some focused way to get at that without

24  this gross review of all the business they've done for whatever

25  period of months, I'm open to you all exploring that in a