Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Courtney R. Cloman, Bar No. 023155
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br>Defendants. | NO. 2:12-cv-00601-NVW<br><br>**DEFENDANTS' PROPOSED DISCOVERY SCHEDULE** |

In accordance with the Court's July 29, 2013 Order requiring the parties to file a proposed discovery schedule "detailing the discovery that has occurred and what is

2790106.1

yet to be accomplished" (Dkt. # 555), Defendants Charles Ryan and Richard Pratt submit the following Proposed Discovery Schedule. This Proposed Discovery Schedule is separated into two parts: past discovery and future discovery. Attached as Exhibit 1 to this Proposed Discovery Schedule are Tables that provide further detail regarding the discovery in this case.

## I. DISCOVERY ALREADY TAKEN

### A. Plaintiffs' Past Discovery

#### 1. Plaintiffs' Interrogatories

Plaintiffs have served Defendants with 7 sets of interrogatories, which included a total of **73 interrogatories**. (Table P-1.) Defendants have answered all of them. A sample of the interrogatories include asking Defendants to:

> Identify individuals "responsible" for health care policies and procedures, budgetary matters relating to health care, development/implementation of quality assurance; and policies and procedures regarding health care.

> Identify specific inmates, for example, prisoners who have been hospitalized, have appliances, have chronic conditions, experienced adverse reactions to medications, have died, received expired medication, have dental issues, are seriously mentally ill, are on psychotropic medications, are on mental health watch, are housed in "isolation," received referrals for inpatient mental health care, have been on suicide watch, are over 50 years old, have been treated in the dental clinics, are on the mental health caseload, and have been in ADC custody for more than five years.

> Describe health care policies and practices, any discipline issues with staff; training of ADC staff and locum tenens; HNR process; explanations for Defendants' affirmative defenses; housing units where deaths have occurred; isolation housing units; recreation enclosures; health care treatment areas; mental health programming; staffing numbers and vacancies; circumstances regarding cancelation/overriding of health care; and referrals that did not result in referred care.

#### 2. Plaintiffs' Requests for Admission

Plaintiffs have served Defendants with 2 sets of requests for admissions, which included a total of **363 requests for admissions**. (Table P-2.) Defendants have answered all of them. The requests essentially ask Defendants to admit to all of the

allegations in the Complaint. For example, the requests ask Defendants to admit that:

> ADC has no written policy that prohibits "seriously mentally ill" inmates from being placed in isolation; there is no policy requiring face to face evaluation or mental health evaluation prior to being housed in isolation; isolation cells are illuminated 24 hours a day; ADC policy allows isolation prisoners to be housed without a television or radio; there is no written policy restricting the use of chemical agents on prisoners who are mentally ill or are taking psychotropic medications; there is no policy requiring face to face psychiatrist meetings before prescription, renewal, or discontinuation of psychotropic medications; ADC has offered inmates presenting with dental problems extraction as the only treatment option; security staff do not allow inmates to assist other inmates in completing HNR forms; and ADC policy does not specify time frames by which HNR forms describing mental/physical symptoms be referred to clinical staff.

Other requests ask Defendants to admit allegations that are not included in the Complaint. For example, the requests ask Defendants to admit that:

> At least 100 additional prisoners were potentially exposed to Hep C after a Lewis health care staff member reused a vial of medication compromised with a previously used syringe; ADC policy does not require that health care staff always have a sharps container within arms' reach when using a needle or sharp instrument to reduce possibility of blood borne pathogen exposure; and ADC does not require prenatal vitamins and supplemental nourishment be provided to prisoners who are pregnant.

3. <u>Plaintiffs' Requests for Production</u>

Plaintiffs have served Defendants with 6 sets of requests for production, which included a total of **156 requests for production**. (Table P-3.) Defendants have answered all of them and produced approximately **129,048 pages** of responsive documents. (Id.) A sample of the documents requested and produced include:

> All ADC policies and procedures regarding prescriptions, health care directives, prescriptions of non-formulary medications, quality assurance, extraction of teeth, staff responses to HNRs, confinement in isolation, time frames for processing HNRs, inmate requests for "second opinions," correctional staff assisting prisoners with completing HNRs, intake screening of inmates, cost containment, health care directives, and staffing.
>
> Documents relevant to the provision of health care, including documents regarding "health care statistics," staffing schedules, hours of operation, number of full time employees

and locum tenens, duration of staffing vacancies, total hours worked by full time employees and locum tenens, staffing plans, minimum educational requirements for health care and correctional staff, description of staff positions, difference in staffing coverage on holidays and weekends, and job performance evaluations of health care and correctional staff.

Correspondence regarding health care, health care shortages, email accounts for each custodian including all folders and subfolders, documents showing discipline of staff as a result of insufficient "emergency health care services," complaints of health care staffing, formal and informal health care training, health care training materials provided to staff, all complaints regarding health care directives.

Documents relative to classifying prisoners as "seriously mentally ill," restrictions or limitations on housing prisoners classified as "seriously mentally ill," transfer of prisoners to inpatient mental health facilities, transitioning prisoners between different levels of mental health care, management of prisoners prescribed psychotropic medications including frequency of contact with health care staff, monitoring of therapeutic effects and side effects of medication, protection of prisoners from heat injury, monitoring of prisoners for adverse mental health effects of isolation, removal of prisoners suffering adverse health effects of isolation, conditions of confinement for prisoners on suicide watch, treatment of prisoners on suicide watch including frequency of contact with psychiatrists and other health care and correctional staff, and use of force or restraint by ADC staff on prisoners on suicide watch/seriously mentally ill/in isolation.

Reports regarding use of force by ADC regarding named Plaintiffs and all seriously mentally ill inmates, regarding the removal of named Plaintiffs from their cells, attempted suicides at any ADC facility in Florence, Arizona.

Documents pertaining to criticisms/deficiencies of conditions of confinement of inmates in isolation, complaints regarding conditions of confinement for prisoners in isolation or the delivery of health services to prisoners in isolation, internal or external investigations regarding conditions of confinement and the delivery of health care for prisoners in isolation, grievances regarding health care isolation or conditions of confinement, and provisions of food to prisoners in isolation.

All "703 inspection reports" or monthly reports generated at the isolation units, meeting minutes regarding the isolation units, correctional journals maintained by each isolation unit, description of cell size/plan/furniture/fixtures/windows in isolation units, conditions of confinement in Central Unit's Phase Program,

4

> Names of every prisoner who filed a health care complaint, names of prisoners classified as "seriously mentally ill"/MH-3/MH-4/MH-5, names of prisoners who were prescribed psychotropic medications including forced psychotropic medication, documents relating to specific inmates, including all documents regarding the deaths of inmates Daniel Porter and Anthony Lester.
>
> Name and contact information for each agency that has provided health care to ADC, documents that show each contract has been fully executed, documents to show amount paid/rate of reimbursement to each contracting entity, communications between Wexford and ADC regarding deficiencies in delivery of health care, any documents regarding deficiencies ADC has perceived in Wexford's delivery of health care, cost analysis done by ADC, ADC's budget, amount of money expended on health care, and requests for funding by ADC to the governor or legislature.

In addition to the approximately 129,048 pages of produced documents, ADC has collected and prepared mental health disposition forms and observation reports from seven facilities, in response to Plaintiff Swartz's 1st Set of RFPs (## 19, 20). Those documents comprise 19 bankers' boxes, and Defendants' counsel estimate that they total **76,000 pages**. They have been sitting in counsel's office since June 17, 2013, waiting for Plaintiffs' counsels' inspection, but counsel have made no attempt to review them.[1]

    4.    <u>Plaintiffs' Rule 30(b)(6) Document Requests</u>

Plaintiffs issued 7 subpoenas requesting documents pursuant to Rule 30(b)(6), which included a total of **69 requests for production**. (Table P-4.) Defendants have answered all of them and produced approximately **10,526 pages** of responsive documents. (Id.) A sample of the documents subpoenaed include documents which:

> Identify custodians of records/individuals responsible for management of documents, individuals responsible for information services/individuals responsible for creating and maintaining backups for archiving documents, sufficient to show ADC's current/prior systems and software.
>
> Relate to retention destruction policies and procedures, network architecture or system and technology infrastructure, backup and archival systems for ESI, destruction/spoliation of

---

[1] Defendants have also disclosed approximately **13,840 pages** of documents with their disclosure statements.

5

evidence, and transfer of documents to Wexford.

Relate to Wexford's compliance and performance, reports created pursuant to Wexford's "required reporting," procurement documents, hours of operation, staffing schedules, staffing vacancies, complaints regarding staffing, provisions of health care to prisoners classified as "seriously mentally ill," monitoring of prisoners for adverse mental health effects of isolation, removal of prisoners suffering adverse health effects of isolation, confinement of prisoners in isolation, isolation conditions of confinement, diet, and outdoor exercise while in isolation, criticisms/deficiencies in conditions of confinement for isolation prisoners, internal/external investigations of conditions of confinement prisoners in isolation, durations of confinement in isolation including mean/medium/maximum, management and treatment of prisoners on suicide watch/frequency of contact with psychiatrists, transfer of prisoners to inpatient mental health facility, and management of prisoners who are prescribed psychotropic medications.

5. <u>Plaintiffs' Subpoenaed Documents</u>

Plaintiffs have served Wexford Health Services with a subpoena requesting documents. (Table P-5.) Wexford has produced a total of approximately **10,195 pages** of documents in response to that subpoena. (Id.) The subpoena requests the medical files of 11 inmate class members, from January 1 2005 to present. (Id.)

6. <u>Plaintiffs' Depositions</u>

Plaintiffs have taken **19 depositions** thus far, **15 of which were Rule 30(b)(6) depositions**. (Table P-6.) These depositions have taken a total of **74 hours**. (Id.) The Rule 30(b)(6) depositions included testimony from the persons most knowledgeable about the delivery of health care, mental health care, and dental care, maximum custody conditions, medical records, electronic storage of documents and emails, retention and destruction of paper documents, and backup and archival of electronic documents and emails. (Id.)

7. <u>Plaintiffs' Expert Tours</u>

Plaintiffs have taken **41 expert tours** of ADC facilities. (Table P-7.) This included tours by 6 of Plaintiffs' experts, and of all 10 ADC facilities, for a total of **355 hours**. (Id.) These tours have largely consisted of the experts reviewing inmates'

6

records, inmate interviews, and touring the facility. During the tours, Plaintiffs have reviewed approximately **683 inmates' records**, and requested copies of approximately **857 pages** of documents in those records.

### 8. Discovery Disputes

Plaintiffs have formally brought several discovery disputes to the Court's attention thus far, and have been unsuccessful on most of them. The Court rejected Plaintiffs' challenge to Defendants' Rule 30(b)(6) designations (Dkt. ## 150, 171); their request for a preservation order (Dkt. ## 161, 167); their request for an order requiring ADC to produce Wexford information and documents (Dkt. ## 162, 168); their request to depose former ADC Director of Health Care Services Dr. Adu-Tutu twice, once as a Rule 30(b)(6) witness and a second time as an individual (Dkt. ## 164, 166); their attempt to require Defendants to produce "burdensome and overbroad" electronic (email) discovery (Dkt. ## 403, 432); and their request for a "scopeless tour" of ADC facilities and an order allowing their counsel to accompany Defendants' experts on their own inspections (Dkt.## 482, 495). The Court did rule that Defendants were required to product relevant mortality reviews (Dkt. ## 156, 228), and that Plaintiffs' privilege log was sufficient (Dkt. ## 252, 284).[2]

## B. **Defendants' Past Discovery**

### 1. Defendants' Interrogatories

Defendants have served each of the fourteen individual Plaintiffs and the ACDL with interrogatories, which included: 23 interrogatories to Chisholm, 19 interrogatories to Swartz, 32 interrogatories to Brislan, 14 interrogatories to Wells, 13 interrogatories to Jensen, 18 interrogatories to Rodriguez, 16 interrogatories to Thomas, 19 interrogatories to Verduzco, 16 interrogatories to Parsons, 10 interrogatories to Gamez, 13 interrogatories to Hefner, 14 interrogatories to Licci, 14 interrogatories to

---

[2] Defendants withdrew their opposition to Plaintiffs' request for death records after the Court issued the protective order because the protective order resolved Defendants' concerns. (Dkt ## 149, 179, 186.)

Polson, 14 interrogatories to Plaintiff Smith, and 21 interrogatories to the ACDL. (Table D-1.) The interrogatories largely ask Plaintiffs to explain and provide details regarding the allegations in the Complaint, and to identify any evidence supporting their claims and requested relief. Only three of these interrogatories were served after the November 30, 2012 Discovery Management Conference, wherein the Court warned the parties to be reasonable in proceeding with discovery. (Dkt. # 284.)

Of these interrogatories, Plaintiffs have failed to substantively respond to 56 interrogatories, and have provided deficient responses to 84 interrogatories. (Exhibit 2.) This has been a continuing issue with Plaintiffs' duty to respond and supplement. In many instances, Plaintiffs simply direct Defendants to their Complaint and to Defendants' own records. (Id.) And some responses are blatantly defiant. For example, in one interrogatory which seeks identification of the standard of care Plaintiffs contend required a Plaintiff to be referred for an endoscopy after he swallowed pieces of metal, Plaintiffs objected and stated, "Plaintiff [] will not respond to Interrogatory no. 13." (Id.) When Plaintiffs do provide any details in response to Defendants' interrogatories, Plaintiffs generally only give a single example, despite being asked to identify all facts or incidents. (Id.) Plaintiffs' failure to provide substantive responses to Defendants' interrogatories has significantly prejudiced Defendants' ability to prepare their defense.

### 2. Defendants' Requests for Admission

Defendants have served nine of the individual Plaintiffs and the ACDL with requests for admissions, which included: 35 requests to Chisholm, 192 requests to Gamez, 110 requests to Brislan, 101 requests to Parsons, 49 requests to Jensen, 67 requests to Thomas, 23 requests to Hefner, 10 requests to Smith, 45 requests to Verduzco, and 70 requests to the ACDL. (Table D-2.) Defendants subsequently withdrew 52 of the requests to Thomas, 16 of the requests to Hefner, and 3 of the requests to Jensen, Parsons, to Gamez, Chisholm, Smith, and Verduzco (each). The requests outlined the health care and treatment the individual Plaintiffs received while incarcerated, and discussed ADC policies, practices, and the provision of health care relative to the

allegations in the Complaint. The number of requests correlated to the individual Plaintiffs' medical history. All of these requests were served before the Discovery Management Conference.

### 3. Defendants' Requests for Production

Defendants have served the individual Plaintiffs and the ACDL with requests for production, which included: 41 requests to Parsons, 38 requests to Chisholm, 20 requests to Gamez, 47 requests to Brislan, 18 requests to Swartz, 16 requests to Wells, 27 requests to Hefner, 21 requests to Jensen, 26 requests to Licci, 22 requests to Polson, 15 requests to Rodriguez, 17 requests to Smith, 13 requests for Thomas, 15 requests for Verduzco, and 13 requests for the ACDL. (Table D-3.) The requests focused mainly on documents relating to allegations in the Complaint, grievances, prior complaints, evidence to be used at trial, and releases for records. Many of the same requests were made to all of the Plaintiffs since they are each individually named. The number of requests made to a particular Plaintiff typically correlated with the number of allegations in the Complaint that were specific to that Plaintiff. Of the approximately 25,660 pages of documents Plaintiffs have produced, approximately 7,392 pages were documents that ADC produced to them pursuant to a public records request (the procurement files). Only 17 of these requests were served after the November 30, 2012 Discovery Management Conference.

## II. DISCOVERY YET TO BE ACCOMPLISHED

### A. Plaintiffs' Future Discovery

#### 1. Written Discovery

In addition to Defendants' obligation to supplement discovery as needed, *see* Rule 26(e), Fed.R.Civ.P., Defendants must supplement **22 interrogatories** and **65 requests for production** on a specified basis. (Table P-8, P-9.) Specific examples are set forth at pages 6–7 of Defendants' Emergency Motion to Stay. (Dkt. # 532.)

#### 2. Depositions

Plaintiffs noticed **28 depositions** to take place between July 31, 2013, and September 19, 2013. (Table P-10.) After this Court ordered the parties to detail future

discovery, Plaintiffs informally "canceled" 6 of the depositions (scheduled during the weeks of July 29 and August 5). They have not indicated whether they are rescheduling those depositions, substituting other individuals, or permanently withdrawing them. In addition to these 28 formally noticed depositions, Plaintiffs have informally notified Defendants that they intend on deposing 6 dentists employed by Smallwood Prison Dental Services, which provides dental care to ADC inmates. Plaintiffs have also maintained that they are entitled to take 75 depositions, which Defendants dispute. So, in addition to the 19 depositions they have already taken and the 34 depositions they have indicated they will be taking, they are still expecting to take 24 depositions before the September 27, 2013 close of discovery, but which are unknown to Defendants. Plaintiffs will also likely take the depositions of any experts that Defendants disclose.

### 3. Expert Tours

Between August 7, 2013, and September 6, 2013, Plaintiffs will be taking **12 more expert tours**. (Table P-11.) These tours will take place at 7 ADC facilities, and total **108 hours**. There are no named Plaintiffs housed at 4 of those facilities (Florence, Winslow, Safford, Douglas), and none of the tours are mental health tours. (Id.) Dr. Jay Shulman, Plaintiffs' dental expert, is taking 2 of the tours; he has already toured 6 other facilities. (Table P-7, Table P-11.) Dr. Todd Wilcox, one of Plaintiffs' two medical experts, is taking 3 of the tours; he has already toured 3 other facilities. (Id.) Dr. Bobby Cohen, Plaintiffs' other medical expert, is taking 4 of the tours; he has already toured 2 other facilities. (Id.) Thus, their medical experts have collectively toured 5 ADC facilities already. The remaining three upcoming tours are being conducted by one of Plaintiffs' three conditions-of confinement experts, Dr. Brie Williams, at three facilities (Florence, Eyman, Perryville). (Id.) Plaintiffs' other two conditions-of-confinement experts, Craig Haney and Eldon Vail, have already toured these three facilities: Haney: Perryville (1 day), Florence (2 days), Eyman (3 days); and Vail (Perryville (1 day), Florence (2 days), Eyman (2 days). (Id.)

####  4.  Electronic Discovery

Plaintiffs maintain that they are entitled to all emails between April 2, 2012 and March 3, 2013 from four ADC custodians relating to Wexford and Corizon. At the April 26, 2013 hearing on the parties' discovery dispute pertaining to electronic discovery, the Court noted that Plaintiffs' request for the emails of three of these custodians (constituting 16,245 emails) was "burdensome and overbroad." Shortly after that hearing, Plaintiffs stopped pursuing production of these emails. (Exhibit 3.) Then, in the first week of July, Plaintiffs added to the scope of the production to include a *fourth* ADC custodian. (Id.) This has increased the number of emails to 22,513. (Id.) On August 5, 2013, just 7 weeks before the close of discovery and with the stay hearing just two days away, Plaintiffs demanded production of these emails. (Id.)

### B.  **Defendants' Future Discovery**

Defendants expect 38 interrogatories to be supplemented by Plaintiffs. (Table D-4.) Defendants have also noticed the depositions of the individual Plaintiffs, which are scheduled between August 6, 2013 and August 30, 2013. (Table D-5.) Defendants further anticipate deposing each of Plaintiffs' experts, and conducting limited written discovery pertaining to their experts' reports and deposition, including discovery and depositions of any inmate class member relied upon by their experts to reach their opinions. Defendants believe that all of their future discovery can be accomplished within the discovery deadlines currently in place.

DATED this 6th day of August 2013.

        STRUCK WIENEKE & LOVE, P.L.C.


By /s/ Nicholas D. Acedo
 Daniel P. Struck
 Kathleen L. Wieneke
 Rachel Love
 Timothy J. Bojanowski
 Nicholas D. Acedo
 Courtney R. Cloman
 Ashlee B. Fletcher
 Anne M. Orcutt
 STRUCK WIENEKE & LOVE, P.L.C.
 3100 West Ray Road, Suite 300
 Chandler, Arizona 85226

 Arizona Attorney General Thomas C. Horne
 Office of the Attorney General
 Michael E. Gottfried
 Lucy M. Rand
 Assistant Attorneys General
 1275 W. Washington Street
 Phoenix, Arizona 85007-2926

 *Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2013, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amy Fettig: | afettig@npp-aclu.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| Daniel Joseph Pochoda: | dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| James Duff Lyall: | jlyall@acluaz.org; gtorres@acluaz.org |
| Jennifer Ann Alewelt: | jalewelt@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Cathleen M. Dooley: | cdooley@azdisabilitylaw.org |
| J.J. Rico: | jrico@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Kelly Joyce Flood: | kflood@acluaz.org; gtorres@acluaz.org |
| Kirstin T. Eidenbach: | keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; docketphx@perkinscoie.com |
| Matthew Benjamin de Mee: | mdumee@perkinscoie.com; cwendt@perkinscoie.com |
| Michael Evan Gottfried: | Michael.gottfried@azag.gov; colleen.jordan@azag.gov; lucy.rand@azag.gov |
| Sara Norman: | snorman@prisonlaw.com |
| Sophia Calderon: | scalderon@jonesday.com; lwong@jonesday.com |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |

| | | |
|---|---|---|
| 1 | Sarah Rauh: | srauh@jonesday.com; treyes@jonesday.com |
| 2 | David C. Kiernan: | dkiernan@jonesday.com; lwong@jonesday.com |
| 3 | R. Scott Medsker: | rsmedsker@JonesDay.com |
| 4 | John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| 5 | Kamilla Mamedova: | kmamedova@jonesday.com |
| 6 | Jennifer K. Messina: | jkmessina@jonesday.com |
| 7 | Taylor Freeman: | tfreeman@jonesday.com |
| 8 | Sarah Eve Kader: | skader@azdisabilitylaw.org, mlauritzen@azdisabilitylaw.org |
| 9 | Katherine E. Watanabe: | Katherine.Watanabe@azag.gov, susan.oquinn@azag.gov |
| 10 | Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, pdrew@perkinscoie.com |
| 11 | Lucy Marie Rand: | Lucy.Rand@azag.gov, Geneva.Johnson-Joksch@azag.gov |
| 12 | Ajmel Quereshi: | aquereshi@npp-aclu.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ Nicholas D. Acedo

14