Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: dpochoda@acluaz.org
　　　  kflood@acluaz.org
　　　  jlyall@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Jennifer Alewelt (Bar No. 027366)
Asim Varma (Bar No. 027927)
Sarah Kader (Bar No. 027147)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: jalewelt@azdisabilitylaw.org
　　　  avarma@azdisabilitylaw.org
　　　  skader@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-NVW (MEA) <br><br> **PLAINTIFFS' REQUEST FOR CLARIFICATION** <br><br> **EXPEDITED CONSIDERATION REQUESTED** |

On August 9, 2013, this Court issued an order (Doc. 567) regarding Defendants' Emergency Motion to Stay this action pending the Ninth Circuit's adjudication of their appeal of this Court's grant of class certification.[1] Plaintiffs respectfully request that in light of the discovery deadline, the Court provide expedited clarification regarding several issues raised at the August 7 hearing on Defendants' motion and in the parties' papers that were not addressed in the Court's Order.

**Depositions**

*Total Number of Depositions*

The Court did not state in its order whether there should be an overall limit on the total number of depositions, but previously has rejected Defendants' request to limit the number of depositions to 25 per side. *See* Joint Discovery Plan (Doc. 46), at 11 ("Defendants propose a limit of twenty-five (25) depositions per side."); July 20, 2012 Hearing Tr., 25:1 ("I'm not going to set limits now."). But as described in pages 5 and 7-8 of Plaintiffs' Proposed Discovery Schedule (Doc. 559), Defendants have repeatedly stated that they will refuse to produce more than eight additional witnesses for deposition,[2] claiming that there is a 25-deposition limit, despite the fact that they initially identified more than 500 witnesses in their disclosure statement.

On August 12, 2013, Defendants served a supplemental disclosure statement, in which they identified 38 people whom they *will* call at trial, and another 38 persons whom

---

[1] Subsequent to the Court's order, Defendants moved the Ninth Circuit for a stay of all discovery and proceedings in this case. Defendants' stay motion was denied on August 15, 2013. [Declaration of Donald Specter in Support of Plaintiffs' Request for Clarification ("Specter Decl."), filed herewith, Ex. 1]

[2] Defendants state that Plaintiffs have taken 17 depositions, but that is incorrect. Plaintiffs have taken 13 depositions total. These were taken pursuant to seven Rule 30(b)(6) notices, and Plaintiffs have deposed five other ADC and Wexford personnel in their individual capacities. Plaintiffs also deposed prisoner Jonathan Trethewey, whose deposition was authorized by the Court for preservation purposes. For the purposes of limits on depositions, each 30(b)(6) notice counts as a single deposition. Fed. R. Civ. P. 30, Adv. Comm. Note (1993) ("A deposition under Rule 30(b)(6) should, for purposes of this limit, be treated as a single deposition even though more than one person may be designated to testify."). Defendants' oft-repeated statement that Plaintiffs have taken 17 depositions apparently counts each deponent individually, and omits (per the parties' agreement) Mr. Trethewey from the calculation.

1 they *may* call at trial, for a total of 76 witnesses. [Specter Decl. Ex. 2 at ¶¶ 1-78] On top of Defendants' refusal to answer basic questions during expert tours (Doc. 559 at 3), Defendants have refused to answer or provided incomplete answers to written interrogatories and Requests for Admission, leaving a number of unanswered questions that at this point are most efficiently answered through deposition. Therefore, additional depositions are necessary, beyond the arbitrary limit of eight additional depositions unilaterally set by Defendants. Plaintiffs respectfully request that the Court clarify whether Defendants can refuse to produce more than eight additional witnesses for depositions, given their announced plan to call at least 38 witnesses, and perhaps call an additional 38 individuals. Plaintiffs further request that the Court clarify that the parties are limited in their number of depositions only by their own prioritization before the fact discovery deadline next month, so that the parties are not forced to bring another dispute to the Court's attention before the close of discovery.

As a practical matter, Plaintiffs have less than a month remaining in which to schedule depositions, making it impossible to depose even half of Defendants' 76 likely witnesses, and thus forcing significant compromise over Plaintiffs' previous proposals. However, given Defendants' repeated refusal to compromise on this issue, it seems unlikely that they will drop the issue in the absence of explicit guidance from the Court. (Doc. 559 at 7; Doc. 560, Ex. 2)

Prior to receiving Defendants' list of 76 witnesses, Plaintiffs proposed repeatedly to Defendants that there be a limit of 50 depositions per side. (Doc. 560, ¶¶ 12-14, Exs. 1-2) In recent weeks, Counsel for Plaintiffs have withdrawn many of their deposition notices. At this point, and in light of Defendants' supplemental disclosure of 76 possible witnesses, Defendants' refusal to stipulate that the facility tours and monitors would be representative (see pages 4-7 below), and the Court's elimination of tours of the Tucson and Florence prisons by Plaintiffs' medical expert, Counsel for Plaintiffs anticipate needing to take at least the following 14 depositions of ADC employees:

- Charles Ryan, Named Defendant, ADC Director (noticed for Sept. 11, 2013) [Specter Decl. Ex. 2, ¶ 1];

- Richard Pratt, Named Defendant, ADC Quality/Clinical Program Evaluation Administrator and former Interim Director, ADC Health Services ("HS") Division (noticed for Sept. 10, 2013) [Specter Decl. Ex. 2, ¶ 2];

- Arthur Gross, ADC HS Contract Monitoring Bureau, Assistant Director (noticed for Sept. 9, 2013) [Specter Decl. Ex. 2, ¶ 43];

- Dr. David Robertson, ADC HS Contract Monitoring Bureau, Quality/Clinical, Medical Program [statewide monitor for medical care] (noticed for Aug. 26, 2013) [Specter Decl. Ex. 2, ¶ 10];

- Ms. Kathleen Campbell, ADC HS Contract Monitoring Bureau, Nursing Contract Monitor (statewide nursing monitor) (noticed for Sept. 11, 2013) [Specter Decl. Ex. 2, ¶ 8];

- Ms. Vanessa Headstream, ADC HS Contract Monitoring Bureau, Quality/Clinical Program (statewide nursing monitor) (noticed for Aug. 27, 2013) [Specter Decl. Ex. 2, ¶ 76];

- Ms. Nicole Taylor, Ph.D., ADC HS Division Contract Monitoring Bureau, Quality/Clinical, Health Services Coordinator (statewide mental health monitor) and former Psychologist III and Facility Health Administrator at ASPC-Florence (noticed for Aug. 28, 2013) [Specter Decl. Ex. 2, ¶ 11];

- Ms. Juliet Respicio-Moriarty, ADC HS Contract Monitoring Bureau, Inmate Grievance Appeals Investigator (statewide grievance monitor) (previously noticed for Aug. 1, taken off calendar and not yet re-noticed) [Specter Decl. Ex. 2, ¶ 7];

- Mr. Martin Winland, ADC HS Division Contract Monitoring Bureau, Quality/Clinical, Pharmacy Monitor (statewide pharmacy monitor) (Plaintiffs noticed his predecessor, Paulette Boothby for July 31, this was taken off calendar and not yet re-noticed) [Specter Decl. Ex. 2, ¶ 44];

- Ms. Patricia Arroyo, ADC HS Division Contract Monitoring Bureau, Quality/Clinical, Audit Nurse (nursing monitor for ASPC-Florence and ASPC-Eyman)[3] (noticed for Aug. 28, 2013) [Specter Decl. Ex. 2, ¶ 77];

- Ms. Marlena Bedoya, ADC HS Contract Monitoring Bureau, Contract Monitor (ASPC-Tucson monitor) (not yet noticed) [Specter Decl. Ex. 2, ¶ 77];

- Ms. Helena Valenzuela, ADC HS Contract Monitoring Bureau, Contract Monitor (ASPC-Phoenix) and former Facility Health Administrator at ASPC-Tucson (noticed for Aug. 23, 2013) [Specter Decl. Ex. 2, ¶ 71];

- Person(s) most knowledgeable pursuant to Rule 30(b)(6) regarding conditions of confinement in isolation at ASPC-Perryville, ASPC-Florence, and ASPC-Eyman (Defendants' disclosure identifies 13 witnesses they will call about

---

[3] Plaintiffs reserve the right to call additional facility monitors, *see* pages 4-5.

maximum custody units [Specter Decl. Ex. 2, ¶¶ 12-25], and an additional 11 witnesses they may call about such units [*Id.* ¶¶ 40, 46-56]); and

- Person(s) most knowledgeable pursuant to Rule 30(b)(6) regarding the provision of mental health care to all members of the Isolation Sub-class in ASPC-Perryville, ASPC-Florence, and ASPC-Eyman.

Plaintiffs also need to take the following seven depositions of employees of Defendants' contractor Corizon, Inc. (or their dental or pharmacy subcontractors):

- Person(s) most knowledgeable pursuant to Rule 30(b)(6) regarding the statewide provision of medical care;
- Person(s) most knowledgeable pursuant to Rule 30(b)(6) regarding the statewide provision of dental care (noticed for Aug. 20, 2013);
- Person(s) most knowledgeable pursuant to Rule 30(b)(6) regarding the statewide provision of mental health care;
- Person(s) most knowledgeable pursuant to Rule 30(b)(6) regarding the statewide provision of nursing care;
- Person(s) most knowledgeable pursuant to Rule 30(b)(6) regarding the statewide provision of pharmacy services;
- Person(s) most knowledgeable pursuant to Rule 30(b)(6) regarding the provision of medical care at ASPC-Tucson; and,
- Person(s) most knowledgeable pursuant to Rule 30(b)(6) regarding the provision of medical care at ASPC-Florence.

### *Depositions of Contract Monitors*

At the August 7, 2013 hearing, Counsel for the Defendants complained that Plaintiffs were taking 11 contract monitor depositions for different ADC facilities, and stated that, "I think they are going to be relatively duplicative. I mean, these contract monitors are in there to make sure ADC is complying with -- Corizon is complying with the contract with ADC. *And we don't understand how it's going to be different from one facility to another.* So for them to parade eight or nine contract monitors just from different facilities, we think that that's not useful." (Aug. 7, 2013 Hearing Tr. 20:11-17 (emphasis added))  The Court agreed, and limited the number of depositions of contract monitors "to three, which the Court will take as representative of all eleven unless the Defendants object and offer all eleven for deposition." (Doc. 567 at 4)  However,

1  subsequent to this Court's order, Defendants have refused to agree that these three
2  monitor depositions will be representative.[4]  [Specter Decl. Ex. 3]  Defendants have also
3  refused to "offer all eleven [monitors] for deposition," insisting instead that Plaintiffs may
4  only take eight more depositions in the entire case.  At the same time, Defendants have
5  disclosed that six monitors will be called as witnesses and fourteen other monitors may be
6  called as witnesses at trial.  [*Id*. Ex. 2 at ¶¶ 6-11, 43-45, 68-78]

7  Defendants are being disingenuous.  Before the Court, Defendants represented that
8  these depositions would be duplicative and "we don't understand how it's going to be
9  different from one facility to another."  (Aug. 7, 2013 Hearing Tr. 20:14-15)  But when
10 given the opportunity to reduce their claimed burden based on those representations,
11 Defendants refuse, apparently in an attempt to run Plaintiffs' depositions up against their
12 arbitrary limit of 25 depositions.  And Defendants clearly believe there is something to be
13 gained from hearing from monitors from different facilities—as they now acknowledge
14 they will call at least six monitors at trial, and possibly as many as twenty.

15 Again, Plaintiffs request that the Court clarify that the parties are limited in their
16 number of depositions only by their own prioritization before the fact discovery deadline
17 next month, so that the parties are not forced to bring another dispute to the Court's
18 attention before the close of discovery.

19 **Expert Tours**

20 The Court limited the remaining expert tours to Dr. Brie Williams' three one-day
21 tours regarding the effects of isolation on prisoners' physical health.  (Doc. 567 at 4)
22 However, as noted in Plaintiffs' papers, the medical expert tours of Florence, Winslow,

---

[4] To clarify the different numbers given during the hearing, Plaintiffs had originally noticed nine facility monitors (the one for the tenth facility was never noticed due to logistical issues), and statewide monitors for nursing, mental health, grievances, and pharmacy.  The last two had been taken off the calendar at the time of the hearing, leaving eleven "monitor" depositions pending.  Defendants' statements that monitor depositions are likely duplicative apparently only applies to the facility monitors, and Plaintiffs likewise request that to the extent the Court is inclined to order Defendants to stipulate that some monitors are representative of the rest, that should apply only to the facility monitors and not the statewide monitors.

-5-

1   Safford, Douglas, and Tucson prisons had not yet occurred at the time of the hearing.
2   (Doc. 559 at 4, fn. 5; Fathi Decl. ¶¶ 2-3 (Doc. 560))  At the hearing, Plaintiffs proposed
3   that if Defendants stipulated the delivery of medical care and the facilities were the same
4   as the prisons already toured, then Plaintiffs would be willing to cancel these five tours.
5   (Aug. 7, 2013 Hearing Tr. 33:3-8)  At the hearing, Counsel for Defendants appeared to be
6   receptive to such a stipulation, as he complained about the burden of the tours and stated
7   that touring the other facilities was unnecessary.  (*See id.* at 17:10 ("There's no reason for
8   those [tours] to happen, none."))  However, after the hearing, Defendants refused to agree
9   to such a stipulation, and the Court's Order cancelling the tours of these remaining
10  facilities was apparently not contingent upon such a stipulation being reached.  Plaintiffs
11  asked Defendants again if they will make such a stipulation, but they have not agreed.
12  [Specter Decl. Ex. 3]

13       These tours provide important, probative evidence of the actual conditions not
14  likely to be discovered by other means.  For example, Dr. Cohen observed a dangerous
15  procedure for distributing medication to prisoners.  Cohen Declaration ¶ 11, attached to
16  Specter Declaration as Exhibit 5.  Dr. Cohen's interviews with prisoners also led to
17  valuable information.  Based on one prisoner's complaint, for example, Dr. Cohen
18  discovered that the prisoner had untreated cancer.  *Id.* at ¶ 6.  These and other examples
19  demonstrate that the tours produce valuable evidence that will assist the Court in
20  determining whether the conditions pose a substantial risk of harm to prisoners.

21       If Defendants will not agree to such a stipulation, Plaintiffs respectfully request
22  that these tours should go forward.  Plaintiffs are willing to cut back the number of
23  facilities to be toured from five institutions and limit them to the two largest remaining—
24  ASPC-Tucson and ASPC-Florence.[5]  The Tucson prison complex houses more seriously

---

[5] Plaintiffs reject Defendants' argument that Plaintiffs' experts should only tour the prisons in which Named Plaintiffs currently are housed, as the policies and practices Plaintiffs challenge are system-wide and the level of proof necessary will encompass all prisons. (*See* Aug. 7, 2013 Hearing Tr. 71:14-15 ("Why are they going to facilities where these inmates aren't housed at?"))  Furthermore, the male Named Plaintiffs are subject to transfer at any time, at ADC's discretion, to any of these five remaining institutions.

1 medically ill male prisoners than any other institution, houses male minors convicted as
2 adults of crimes, and includes a large infirmary, hospice care, chemotherapy, and dialysis
3 for chronically ill prisoners. [Specter Decl. ¶ 5 (chronic care report produced by
4 Defendants listed a total of 1,585 prisoners housed at Tucson in March 2013, with one or
5 more chronic conditions that require regular monitoring by medical staff); *id*. Ex. 4 at
6 ADC014312 (showing more M-5 and M-4 prisoners housed at Tucson than any other
7 institution in the system); ADC014319 at Question 4 (Tucson has 48 infirmary beds); and
8 ADC014348 at Question 10 ("Inmates requiring Dialysis are housed at either the Tucson
9 or Florence facility where ADC has established dialysis centers and on-site radiology
10 equipment") and at Question 12 (Tucson infirmary beds "normally at 100% occupancy");
11 ADC014392, at Question 12 ("[I]n the past, Tucson has had 1-3 inmates going daily for
12 chemotherapy")]  Similarly, the Florence prison complex has an infirmary, provides
13 dialysis care, is the primary site for chemotherapy, and is second only to ASPC-Tucson in
14 the number of prisoners with complex medical needs. [Specter Decl. ¶ 5 (chronic care
15 report produced by Defendants listed a total of 1,695 prisoners housed at Florence in
16 March 2013 with one or more chronic conditions that require regular monitoring by
17 medical staff); *id*. Ex. 4 at ADC014392 at Question 12 (Florence/Eyman is the primary
18 site for chemotherapy); ADC014312 (showing Florence as second only to Tucson in
19 number of M-5 and M-4 prisoners housed at the prison); ADC014319 at Question 4
20 Florence has 15 infirmary beds); ADC014348 at Question 10 ("Inmates requiring Dialysis
21 are housed at either the Tucson or Florence facility where ADC has established dialysis
22 centers and on-site radiology equipment"); and at Question 12 (Florence infirmary beds
23 "normally at 100% occupancy")]

24   Among the claims on which this Court has granted class certification are treatment
25 for chronic diseases; failure to provide timely access to health care generally and specialty

---

27 On August 12, 2013, the population of ASPC-Tucson was 5,062 and the population
of ASPC-Florence was 4,082. *See* ADC Daily Count Sheet, *available at*
28 http://www.azcorrections.gov/adc/PDF/count/08122013%20count%20sheet.pdf.

1    care in particular; and insufficient staffing. (Class Cert Order (Doc. 372) at 16) ADC's
2    treatment of its sickest and medically neediest patients is relevant to the pending questions
3    in this action, and Plaintiffs anticipate that Defendants' refusal to stipulate that the level of
4    medical care at other prisons is representative of the prisons not yet toured, means they
5    will then turn around and argue in dispositive motions or at trial that care is adequate at
6    the Tucson and Florence prisons.

7    Plaintiffs respectfully request that the Court clarify whether its order limiting the
8    number of remaining expert tours was contingent upon Defendants agreeing that the
9    institutions already reviewed by the medical experts were representative of the remaining
10   facilities. If the Order was not based upon such a stipulation by Defendants, then
11   Plaintiffs respectfully request that they be permitted to have their medical expert tour the
12   Tucson and Florence facilities for two days each, as previously noticed. (Doc. 560 at
13   ¶¶ 2-3)

**Conclusion**

15   Plaintiffs respectfully request, in light of the deadlines for depositions and the close
16   of all discovery, that this Court provide expedited clarification on the following matters
17   raised at the August 7 hearing on Defendants' motion and in the parties' papers that were
18   not addressed in the Court's Order:

19   (1)    Whether Defendants can refuse to produce more than eight additional
20   witnesses for depositions, given their announced plan to call at trial at least 38 witnesses,
21   and perhaps call an additional 38 individuals;

22   (2)    That the parties are limited in their number of depositions only by their own
23   prioritization before the fact discovery deadline next month;

24   (3)    Whether the Court's order limiting the number of remaining expert tours
25   was contingent upon Defendants agreeing that the institutions already reviewed by the
26   medical experts were representative of the remaining facilities; and

27   (4)    If the order limiting the number of remaining expert tours was based upon
28   such a stipulation by Defendants, then Plaintiffs respectfully request that in light of

1  Defendants' refusal to so stipulate, the Court order that Plaintiffs are permitted to have
2  their medical expert tour the Tucson and Florence facilities for two days each, as
3  previously noticed.

4  Dated: August 20, 2013                    **PRISON LAW OFFICE**

                                             By:   s/ Donald Specter
                                                Donald Specter (Cal. 83925)*
                                                Alison Hardy (Cal. 135966)*
                                                Sara Norman (Cal. 189536)*
                                                Corene Kendrick (Cal. 226642)*
                                                1917 Fifth Street
                                                Berkeley, California 94710
                                                Telephone: (510) 280-2621
                                                Email:   dspecter@prisonlaw.com
                                                         ahardy@prisonlaw.com
                                                         snorman@prisonlaw.com
                                                         ckendrick@prisonlaw.com

                                             *Admitted *pro hac vice*

                                                Daniel C. Barr (Bar No. 010149)
                                                Amelia M. Gerlicher (Bar No. 023966)
                                                Kirstin T. Eidenbach (Bar No. 027341)
                                                John H. Gray (Bar No. 028107)
                                                Matthew B. du Mée (Bar No. 028468)
                                                **PERKINS COIE LLP**
                                                2901 N. Central Avenue, Suite 2000
                                                Phoenix, Arizona 85012
                                                Telephone: (602) 351-8000
                                                Email:   dbarr@perkinscoie.com
                                                         agerlicher@perkinscoie.com
                                                         keidenbach@perkinscoie.com
                                                         jhgray@perkinscoie.com
                                                         mdumee@perkinscoie.com

                                                Daniel Pochoda (Bar No. 021979)
                                                Kelly J. Flood (Bar No. 019772)
                                                James Duff Lyall (Bar No. 330045)*
                                                **ACLU FOUNDATION OF ARIZONA**
                                                3707 North 7th Street, Suite 235
                                                Phoenix, Arizona 85013
                                                Telephone: (602) 650-1854
                                                Email:   dpochoda@acluaz.org
                                                         kflood@acluaz.org
                                                         jlyall@acluaz.org

                                             *Admitted pursuant to Ariz. Sup. Ct.
                                             R. 38(f)

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:   dfathi@npp-aclu.org
          afettig@npp-aclu.org
          aquereshi@npp-aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email:   cnmitchell@jonesday.com
          dkiernan@jonesday.com
          scalderon@jonesday.com
          srauh@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email:   jlwilkes@jonesday.com
          tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone: (212) 326-3498
Email: kmamedova@jonesday.com
jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By:   s/ Jennifer Alewelt
Jennifer Alewelt (Bar No. 027366)
Asim Varma (Bar No. 027927)
Sarah Kader (Bar No. 027147)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: jalewelt@azdisabilitylaw.org
avarma@azdisabilitylaw.org
skader@azdisabilitylaw.org

J.J. Rico (Bar No. 021292)
Cathleen M. Dooley (Bar No. 022420)
**ARIZONA CENTER FOR DISABILITY LAW**
100 N. Stone Avenue, Suite 305
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email: jrico@azdisabilitylaw.org
cdooley@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2013, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

*Attorneys for Defendants*

                                   s/ Delana Freouf

76597-0002/LEGAL27622870.1

-12-