**EXHIBIT 5**

**EXHIBIT 5**

1  Daniel Pochoda (Bar No. 021979)
   Kelly J. Flood (Bar No. 019772)
2  James Duff Lyall (Bar No. 330045)*
   **ACLU FOUNDATION OF ARIZONA**
3  3707 North 7th Street, Suite 235
   Phoenix, Arizona 85013
4  Telephone: (602) 650-1854
   Email: dpochoda@acluaz.org
5          kflood@acluaz.org
           jlyall@acluaz.org
6  *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7  *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
   *Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie*
8  *Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
   *Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte*
9  *Wells, on behalf of themselves and all others similarly*
   *situated*
10
   **[ADDITIONAL COUNSEL LISTED ON**
11 **SIGNATURE PAGE]**

12                    UNITED STATES DISTRICT COURT

13                      DISTRICT OF CALIFORNIA

14 Victor Parsons; Shawn Jensen; Stephen Swartz;      No. CV 12-00601-PHX-NVW
   Dustin Brislan; Sonia Rodriguez; Christina          (MEA)
15 Verduzco; Jackie Thomas; Jeremy Smith; Robert
   Gamez; Maryanne Chisholm; Desiree Licci; Joseph
16 Hefner; Joshua Polson; and Charlotte Wells, on     **PLAINTIFF ROBERT**
   behalf of themselves and all others similarly      **GAMEZ'S FIRST SET OF**
17 situated; and Arizona Center for Disability Law,   **REQUESTS FOR ADMISSION**
                                                       **(NOS. 1-75) AND FIRST SET**
18                  Plaintiffs,                        **OF INTERROGATORIES**
                                                       **(NOS. 1-25) TO DEFENDANT**
19            v.                                       **CHARLES RYAN**

20 Charles Ryan, Director, Arizona Department of
   Corrections; and Richard Pratt, Interim Division
21 Director, Division of Health Services, Arizona
   Department of Corrections, in their official
22 capacities,

23                  DEFENDANTS.

24

25

26

27

28

78204-0001/LEGAL27578573.1

PROPOUNDING PARTY:        Robert Gamez

RESPONDING PARTY:         Defendant Charles Ryan

## REQUESTS FOR ADMISSION

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff Robert Gamez, by and through undersigned counsel, requests that Defendant Charles Ryan respond to the following Requests for Admission separately and fully, in writing, and under oath within thirty (30) days after service. The following definitions and instructions apply to these requests.

## DEFINITIONS

For purposes of these requests, the following definitions shall apply:

1. "ADC" means the Arizona Department of Corrections, including all its subdivisions, agents, employees, CONTRACTORS, and attorneys.

2. "ADC STAFF" means all persons employed by ADC, including "CORRECTIONAL STAFF" and "HEALTH CARE STAFF."

3. "CHEMICAL AGENTS" means oleo capsicum (OC) spray, OC gas, mace, tear gas, or any other chemical substance used by CORRECTIONAL STAFF to control or subdue PRISONERS.

4. "COMMUNICATIONS" means any transmittal of INFORMATION from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including a Blackberry or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X and any other meeting software and share

point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

5. "COMPLAINTS" means any DOCUMENTS, formal or informal, REGARDING specific or general problems, issues, deficiencies, unanswered questions, challenges, shortcomings, disagreements, or requests brought to the attention of the ADC or any ADC STAFF.

6. "CONTRACTOR" means "LOCUM TENENS CONTRACTOR" and "SPECIALTY CONTRACTOR."

7. "CORRECTIONAL STAFF" means custody staff employed or paid by the ADC to serve in a security or operational capacity.

8. "COST CONTAINMENT" means contemplated, discussed, or actual actions to restrict, reduce, contain, or limit costs or expenses by DEFENDANTS, the ADC or any personnel working in any capacity for the ADC or the Arizona State Government, including any agents of the foregoing.

9. "DENTAL" means involving or relating to the oral cavity and maxillofacial area, including the lips, mouth, tongue, teeth, gums, jaw, and oral musculature, as well as the adjacent and associated areas.

10. "DENTAL CARE" means the provision of care, including adequate diet, to address the DENTAL needs of a PRISONER, whether those needs arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic or preventive purposes.

11. "DENTIST" means an individual holding a degree in dental medicine or dental surgery and licensed as a dentist by the Arizona Board of Dental Examiners, who has been hired to work as a dentist at ADC facilities treating PRISONERS

12. "DESCRIBE" and "DESCRIPTION" means to provide all available INFORMATION.

13. "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing

1    or record of every type and DESCRIPTION and every tangible thing that is or has been in

2    the possession, custody, or control of DEFENDANTS and the ADC, to which they have

3    access, or of which they have knowledge, including, but not limited to, newspaper articles,

4    magazine articles, news articles, correspondence, letters, contracts, files, electronic mail,

5    memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books,

6    pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations,

7    point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices,

8    pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings,

9    maps, reports, surveys, MINUTES, data compilations, and statistical compilations,

10   regardless of whether a particular DOCUMENT is privileged or confidential, and

11   regardless of the form of storage (including, but not limited to, paper, microfiche,

12   magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or

13   electronic storage device). "DOCUMENT" and "DOCUMENTS" includes, but is not

14   limited to, all DOCUMENTS generated by or maintained in the Director's Project

15   Tracking System, official ADC papers, and the ADC's intranet.

16        14.   "ENTRY-LEVEL PRACTITIONERS" means unlicensed persons who

17   provide HEALTH CARE to PRISONERS at the ADC subordinate to MID-LEVEL

18   PRACTITIONERS or HEALTH CARE CLINICIANS.

19        15.   "GRIEVANCES" means COMPLAINTS or requests made by PRISONERS

20   to the ADC, and the exhaustion of claims raised or stated therein.

21        16.   "HEALTH CARE" means the provision of care, including adequate diet, to

22   address the mental health, medical, or DENTAL needs of a PRISONER, whether those

23   needs arise as a result of injury, illness, disease, or other trauma, or care provided for

24   diagnostic or preventive purposes.

25        17.   "HEALTH CARE CLINICIANS" means persons independently licensed to

26   provide HEALTH CARE to PRISONERS at the ADC facilities, including but not limited

27   to M.D., D.O., D.D.S., and Ph.D. credentialed staff.

28

18. "HEALTH CARE DIRECTIVES" means DOCUMENTS REGARDING advance medical care directives, living wills, personal directives, advance directives, or instructions of any kind in which individuals specify what actions should or should not be taken for their HEALTH CARE in the event they are no longer able to make decisions due to illness, injury, or incapacity

19. "HEALTH CARE SHORTAGES" means any deficiencies involving HEALTH CARE, including but not limited to a lack of or insufficient number of medicines, drugs, medical supplies, medical equipment, transportation, or HEALTH CARE STAFFING.

20. "HEALTH CARE STAFF" means all staff employed or paid by the ADC, LOCUM TENENS CONTRACTORS, or SPECIALTY CONTRACTORS (other than CORRECTIONAL STAFF) who are responsible for providing HEALTH CARE to ADC PRISONERS, including but not limited to HEALTH CARE CLINICIANS, MID-LEVEL PRACTITIONERS, ENTRY-LEVEL PRACTITIONERS, PHARMACISTS, and administrative and support staff.

21. "HEALTH CARE STAFFING" means the provision of HEALTH CARE STAFF to provide HEALTH CARE.

22. "HOSPITALIZED PRISONER" means any PRISONER who is sent to a hospital or other off-site medical or mental health facility, or who is admitted to an on-site hospital, while in the custody of the ADC.

23. "IDENTIFY" and "IDENTIFICATION" with respect to (a) a PRISONER or former PRISONER, means to state the PRISONER'S full name, ADC number, date of birth, current or most recent mental health score (MH-1 through MH-5), medical score (M-1 through M-5), public risk score, institutional risk score, and current housing location (if still in ADC custody) or last known address and telephone number (if no longer in ADC custody); (b) a person other than a PRISONER or former PRISONER, means to state the person's full name and specify whether or not the person is or has been an ADC STAFF member, and if so, to state the staff member's position title, facility location, work

1   schedule, responsibilities, date ADC employment began, date ADC employment

2   terminated, dates of any changes in position titles or responsibilities, DESCRIPTIONS of

3   any changes in position titles or responsibilities and, if the person is not currently

4   employed by ADC, the person's last known address and telephone number; and (c) a

5   third-party CONTRACTOR or entity means to state the name of the CONTRACTOR or

6   entity, the type of entity (*e.g.*, corporation, partnership, etc.); its address and telephone

7   number; and any persons YOU are aware of who acted on behalf of that CONTRACTOR

8   or entity with respect to the events at issue in the discovery request; (d) IDENTIFY in any

9   other context means to provide as much INFORMATION REGARDING the thing to be

10   identified as is in the possession of DEFENDANTS or the ADC.

11       24.   "INDIVIDUAL MENTAL HEALTH THERAPY" means a PRISONER'S

12   meeting with a licensed mental health care provider, but does not include a conversation

13   held at cell front.

14       25.   "INFORMATION" means any knowledge YOU have, any evidence of any

15   type, any facts of which YOU are aware and any inferences or speculation of which YOU

16   are aware, all regardless of the source. When INFORMATION YOU provide is based

17   solely on inference or speculation, specifically so state in YOUR response. When

18   providing INFORMATION, provide the names of involved individuals, actions relevant

19   to the requested INFORMATION, dates and times when known, locations, and any other

20   knowledge YOU have about the subject of the discovery request. When asked to provide

21   INFORMATION about one or more individuals, IDENTIFY the individual or individuals

22   and provide any other INFORMATION YOU have about such person or persons.

23       26.   "ISOLATION" means confinement in a cell for 22 hours or more each day;

24   confinement in Eyman-Special Management Unit ("SMU") 1, Eyman-Browning Unit,

25   Florence-Central Unit, Florence-Kasson Unit, or Perryville-Lumley Special Management

26   Area ("SMA"); or confinement in a Complex Detention Unit ("CDU").

27       27.   "LOCUM TENENS CONTRACTOR" means any person or entity

28   contracting with ADC to provide HEALTH CARE to ADC PRISONERS.

28. "MENTAL HEALTH WATCH" means any housing or other status in which a PRISONER is subject to increased observation by ADC STAFF or CONTRACTORS for mental health reasons.

29. "MID-LEVEL PRACTITIONERS" means licensed professionals who provide HEALTH CARE to PRISONERS at the ADC under supervision by HEALTH CARE CLINICIANS.

30. "MINUTES" means notes or any other recording reflecting the content of a meeting, whether written contemporaneously with or subsequent to the meeting.

31. "OUTDOOR EXERCISE" means periods during which PRISONERS are permitted to exercise in the outdoors.

32. "PHARMACIST" means a professional who practices pharmacy.

33. "POLICIES AND PROCEDURES" means policies, procedures, criteria, or practices, whether written or established through custom or use, including but not limited to policy and procedure manuals, directors' orders, protocols, directives, flowcharts, institution post orders, and any other DOCUMENTS designed to direct the actions of ADC personnel, ADC CONTRACTORS, and/or PRISONERS.

34. "POLICY" means policies, procedures, criteria, or practices, whether written or established through custom or use, including but not limited to policy and procedure manuals, directors' orders, protocols, directives, flowcharts, institution post orders, and any other DOCUMENTS designed to direct the actions of ADC personnel, ADC contractors, and/or PRISONERS.

35. "PRISONER" means a person incarcerated by the ADC.

36. "PROGRAMS" means a program made available to PRISONERS in the custody of ADC, including but not limited to rehabilitative, therapeutic, educational, vocational, substance abuse treatment, recreational, re-entry, and faith-based PROGRAMS; furlough, temporary release, compassionate release, and early release PROGRAMS; and prison job assignments whether or not for pay.

37.   "REGARDING" or "REGARDED" to any given subject matter means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, DESCRIBES, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers to, relates to, responds to, states, summarizes, or is in any way relevant to the particular subject matter identified.

38.   "RESPONSE DATE" means date upon which YOU respond to these discovery requests, or, if YOU amend or supplement YOUR response, the date of YOUR amendment or supplement.

39.   "RESTRICTED DIET" means a medical or soft mechanical diet prescribed pursuant to the Diet Reference Manual (ADC040582). For purposes of this document, the term does not include religious diets.

40.   "REVIEWS" means examinations, assessments, evaluations, or investigations performed by or at the direction of ADC STAFF or officials.

41.   "SPECIALTY CONTRACTOR" means any person or entity contracting with the ADC to provide HEALTH CARE to PRISONERS who is not a LOCUM TENENS CONTRACTOR.

42.   "SUFFICIENT TO SHOW" means demonstrating or evidencing complete INFORMATION on the requested topic, without the need to produce every DOCUMENT REGARDING the topic.

43.   "TELEPSYCHIATRY" means a session in which a psychiatrist at a remote location speaks with an ADC PRISONER via video link.

44.   "YOU," "YOUR," "YOURSELF," and "DEFENDANTS" means DEFENDANTS Charles Ryan and Richard Pratt, and their predecessors, successors, employees, subordinates, CONTRACTORS, agents, and attorneys.

**INSTRUCTIONS**

1.   Each request for admission below asks for admission of the truth of the matter stated in the request.

1   2.  If YOU do not specifically admit or deny matters stated below, YOU must

2 set forth in detail the reasons why YOU cannot truthfully admit or deny the matter.

3   3.  If good faith requires YOU to qualify a response or to deny only a part of a

4 matter set forth below, YOU must specify so much of the matter as is true and qualify or

5 deny the remainder.

6   4.  YOU may not refuse to admit or deny any matter set forth below based upon

7 lack of INFORMATION or knowledge unless YOU also assert that YOU have made

8 reasonable inquiry and that the INFORMATION necessary to admit or deny the matter

9 stated is not known or readily obtainable.

10   5.  Each matter of which an admission is requested will be deemed admitted,

11 and conclusively established for purposes of this litigation (unless the Court upon motion

12 permits withdrawal or amendment of the admission), if YOU do not serve a written,

13 signed answer or objection addressed to the matter specified within thirty (30) days after

14 service of these requests, or within such other time as the Court may allow.

15   6.  YOU shall answer the following requests for admission separately and fully,

16 in writing, and under oath. Should YOU object to or otherwise refuse to answer any

17 portion of a request for admission, YOU shall (1) state the objection or reason for such

18 refusal, and (2) provide all INFORMATION called for by that portion of the admission to

19 which it does not object to or to which it does not decline to answer.

20   7.  Should YOU find the meaning of any term to be ambiguous or unclear,

21 YOU should assume a reasonable meaning, state what that assumed meaning is, and

22 answer the request on the basis of that assumed meaning.

23   8.  These requests are deemed to be continuing in nature, and YOU shall amend

24 or supplement the responses hereto in accordance with the Federal Rules of Civil

25 Procedure as is necessary to maintain the accuracy of YOUR responses. To that end, if

26 YOU obtain additional responsive INFORMATION at any time between the time for the

27 initial response and the time of hearing or trial, YOU shall promptly provide Plaintiffs

28 with the supplemental response.

9.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

10.    The use of the singular form of any word includes the plural, and the plural form of a word shall be interpreted as singular, whenever appropriate to bring within the scope any DOCUMENTS or INFORMATION that might otherwise be considered beyond the scope of the request.

11.    For the purposes of these requests, whenever necessary to ensure completeness or accuracy, words importing the masculine gender include the feminine and neuter, words importing the feminine gender include the masculine and neuter, and words importing the neuter gender include the masculine and feminine.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1.:**

Admit that ADC POLICY does not limit the amount of time a PRISONER may be housed in ISOLATION.

        **Admit** _____        **Deny** _____

**REQUEST FOR ADMISSION NO. 2.:**

Admit that ADC POLICY does not require CORRECTIONAL STAFF to review the length of time a PRISONER has been housed in ISOLATION.

        **Admit** _____        **Deny** _____

**REQUEST FOR ADMISSION NO. 3.:**

Admit that ADC POLICY does not require HEALTH CARE STAFF to review the length of time a PRISONER has been housed in ISOLATION.

        **Admit** _____        **Deny** _____

**REQUEST FOR ADMISSION NO. 4.:**

Admit that ADC POLICY does not require staff to monitor the length of time PRISONERS are housed in ISOLATION.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 5.:**

Admit that ADC does not monitor the mean length of stay for PRISONERS housed in ISOLATION.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 6.:**

Admit that ADC does not monitor the median length of stay for PRISONERS housed in ISOLATION.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 7.:**

Admit that ADC does not produce reports indicating the length of time PRISONERS are housed in ISOLATION.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 8.:**

Admit that ADC has no written POLICY restricting the use of CHEMICAL AGENTS on PRISONERS who are on MENTAL HEALTH WATCH.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 9.:**

Admit that CHEMICAL AGENTS have been used on PRISONERS who are on MENTAL HEALTH WATCH.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 10.:**

Admit that some PRISONERS in the ISOLATION units are offered no more than six hours per week of out-of-cell exercise.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 11.:**

Admit that some PRISONERS in ASPC-Florence Central CB-1 are not offered mental health group PROGRAMS every week.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 12.:**

Admit that some PRISONERS in ASPC-Florence Kasson-Wing 1 are not offered mental health group PROGRAMS every week.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 13.:**

Admit that some PRISONERS in ASPC-Eyman Browning-BMU are not offered mental health group PROGRAMS every week.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 14.:**

Admit that some PRISONERS in ASPC-Phoenix Baker Ward are not offered mental health group PROGRAMS every week.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 15.:**

Admit that some PRISONERS in ASPC-Phoenix Flamenco are not offered mental health group PROGRAMS every week.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 16.:**

Admit that some PRISONERS in ASPC-Phoenix Aspen are not offered mental health group PROGRAMS every week.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 17.:**

Admit that some PRISONERS in ASPC-Tucson BHU are not offered mental health group PROGRAMS every week.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 18.:**

Admit that some PRISONERS in ASPC-Florence Central CB-1 are not offered INDIVIDUAL MENTAL HEALTH THERAPY every month.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 19.:**

Admit that some PRISONERS in ASPC-Florence Kasson-Wing 1 are not offered INDIVIDUAL MENTAL HEALTH THERAPY every month.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 20.:**

Admit that some PRISONERS in ASPC-Eyman Browning-BMU are not offered INDIVIDUAL MENTAL HEALTH THERAPY every month.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 21.:**

Admit that some PRISONERS in ASPC-Phoenix Baker Ward are not offered INDIVIDUAL MENTAL HEALTH THERAPY every month.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 22.:**

Admit that some PRISONERS in ASPC-Phoenix Flamenco are not offered INDIVIDUAL MENTAL HEALTH THERAPY every month.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 23.:**

Admit that some PRISONERS in ASPC-Phoenix Aspen are not offered INDIVIDUAL MENTAL HEALTH THERAPY every month.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 24.:**

Admit that some PRISONERS in ASPC-Tucson BHU are not offered INDIVIDUAL MENTAL HEALTH THERAPY every month.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 25.:**

Admit that ADC policy allows PRISONERS on psychotropic medications to be seen by a psychiatrist less frequently than every 90 days.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 26.:**

Admit that TELEPSYCHIATRY is provided to ADC PRISONERS by HEALTH CARE providers who are not licensed in Arizona.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 27.:**

Admit that during a TELEPSYCHIATRY session, the psychiatrist does not have the patient's ADC health record with him or her.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 28.:**

Admit that all psychiatry services at ASPC-Yuma are provided by TELEPSYCHIATRY.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 29.:**

Admit that some ADC exercise enclosures have no misting system.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 30.:**

Admit that some ADC exercise enclosures have no source of drinking water.

**Admit** _____        **Deny** _____

**REQUEST FOR ADMISSION NO. 31.:**

Admit that ADC infirmaries are not air conditioned.

**Admit** _____        **Deny** _____

**REQUEST FOR ADMISSION NO. 32.:**

Admit that housing units at ASPC-Perryville are not air conditioned.

**Admit** _____        **Deny** _____

**REQUEST FOR ADMISSION NO. 33.:**

Admit that housing units at ASPC-Yuma are not air conditioned.

**Admit** _____        **Deny** _____

**REQUEST FOR ADMISSION NO. 34.:**

Admit that housing units at ASPC-Tucson are not air conditioned.

**Admit** _____        **Deny** _____

**REQUEST FOR ADMISSION NO. 35.:**

Admit that housing units at ASPC-Eyman are not air conditioned.

**Admit** _____        **Deny** _____

**REQUEST FOR ADMISSION NO. 36.:**

Admit that housing units at ASPC-Phoenix are not air conditioned.

**Admit** _____        **Deny** _____

**REQUEST FOR ADMISSION NO. 37.:**

Admit that housing units at ASPC-Lewis are not air conditioned.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 38.:**

Admit that housing units at ASPC-Douglas are not air conditioned.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 39.:**

Admit that housing units at ASPC-Safford are not air conditioned.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 40.:**

Admit that housing units at ASPC-Florence are not air conditioned.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 41.:**

Admit that housing units at ASPC-Winslow are not air conditioned.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 42.:**

Admit that temperatures exceeding 85 degrees Fahrenheit have been recorded in ADC housing units between June 1, 2013, and the RESPONSE DATE.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 43.:**

Admit that temperatures exceeding 90 degrees Fahrenheit have been recorded in ADC housing units between June 1, 2013, and the RESPONSE DATE.

**Admit** _____        **Deny** _____

**REQUEST FOR ADMISSION NO. 44.:**

Admit that temperatures exceeding 95 degrees Fahrenheit have been recorded in ADC housing units between June 1, 2013, and the RESPONSE DATE.

**Admit** _____        **Deny** _____

**REQUEST FOR ADMISSION NO. 45.:**

Admit that temperatures exceeding 100 degrees Fahrenheit have been recorded in ADC housing units between June 1, 2013, and the RESPONSE DATE.

**Admit** _____        **Deny** _____

**REQUEST FOR ADMISSION NO. 46.:**

Admit that ADC does not provide a RESTRICTED DIET specifically designed for PRISONERS with diabetes.

**Admit** _____        **Deny** _____

**REQUEST FOR ADMISSION NO. 47.:**

Admit that Corizon does not provide a RESTRICTED DIET specifically designed for PRISONERS with diabetes.

**Admit** _____        **Deny** _____

**REQUEST FOR ADMISSION NO. 48.:**

Admit that ADC does not provide methadone maintenance.

**Admit** _____        **Deny** _____

78204-0001/LEGAL.27578573.1

- 17 -

**REQUEST FOR ADMISSION NO. 49.:**

Admit that Corizon does not provide methadone maintenance.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 50.:**

Admit that ADC cannot produce reports showing the timeliness of chronic care appointments.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 51.:**

Admit that Corizon cannot produce reports showing the timeliness of chronic care appointments.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 52.:**

Admit that ADC cannot produce reports showing the timeliness of offsite medical specialty care appointments.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 53.:**

Admit that Corizon cannot produce reports showing the timeliness of offsite medical specialty care appointments.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 54.:**

Admit that ADC cannot produce reports showing the timeliness of on-site medical specialty care appointments.

**Admit** _____          **Deny** _____

**REQUEST FOR ADMISSION NO. 55.:**

Admit that Corizon cannot produce reports showing the timeliness of on-site medical specialty care appointments.

**Admit** _____        **Deny** _____

**REQUEST FOR ADMISSION NO. 56.:**

Admit that ADC cannot produce reports showing the timeliness of telemedicine specialty care appointments.

**Admit** _____        **Deny** _____

**REQUEST FOR ADMISSION NO. 57.:**

Admit that Corizon cannot produce reports showing the timeliness of telemedicine specialty care appointments.

**Admit** _____        **Deny** _____

**REQUEST FOR ADMISSION NO. 58.:**

Admit that ADC cannot produce reports showing how many PRISONERS have received the RESTRICTED DIETS described in the Diet Reference Manual (Bates Nos. 40574-40609).

**Admit** _____        **Deny** _____

**REQUEST FOR ADMISSION NO. 59.:**

Admit that ADC's contracted food service provider cannot produce reports showing how many PRISONERS have received the RESTRICTED DIETS described in the Diet Reference Manual (Bates Nos. 40574-40609).

**Admit** _____        **Deny** _____

1  **REQUEST FOR ADMISSION NO. 60.:**

2      Admit that ADC POLICY does not require that new ADC PRISONERS have a

3  physical exam performed by a physician, nurse practitioner or physician's assistant.

4            **Admit** _____        **Deny** _____

5

6  **REQUEST FOR ADMISSION NO. 61.:**

7      Admit that Corizon POLICY does not require that new ADC PRISONERS have a

8  physical exam performed by a physician, nurse practitioner or physician's assistant.

9            **Admit** _____        **Deny** _____

10

11  **REQUEST FOR ADMISSION NO. 62.:**

12      Admit that ADC POLICY does not require that new ADC PRISONERS have a

13  DENTAL exam performed by a DENTIST.

14            **Admit** _____        **Deny** _____

15

16  **REQUEST FOR ADMISSION NO. 63.:**

17      Admit that Corizon POLICY does not require that new ADC PRISONERS have a

18  DENTAL exam performed by a DENTIST.

19            **Admit** _____        **Deny** _____

20

21  **REQUEST FOR ADMISSION NO. 64.:**

22      Admit that ADC POLICY does not require that women PRISONERS be offered a

23  PAP smear at least every three years.

24            **Admit** _____        **Deny** _____

25

26

27

28

**REQUEST FOR ADMISSION NO. 65.:**

Admit that Corizon POLICY does not require that women PRISONERS be offered a PAP smear at least every three years.

**Admit _____          Deny _____**


**REQUEST FOR ADMISSION NO. 66.:**

Admit that ADC POLICY does not require that women PRISONERS over 50 years old be offered a mammogram at least every two years.

**Admit _____          Deny _____**


**REQUEST FOR ADMISSION NO. 67.:**

Admit that Corizon POLICY does not require that women PRISONERS over 50 years old be offered a mammogram at least every two years.

**Admit _____          Deny _____**


**REQUEST FOR ADMISSION NO. 68.:**

Admit that as of the RESPONSE DATE, ADC does not have an electronic health records system to track whether women PRISONERS have been offered a PAP smear in the last three years.

**Admit _____          Deny _____**


**REQUEST FOR ADMISSION NO. 69.:**

Admit that as of the RESPONSE DATE, Corizon does not have an electronic health records system to track whether women PRISONERS have been offered a PAP smear in the last three years.

**Admit _____          Deny _____**

1

**REQUEST FOR ADMISSION NO. 70.:**

2   Admit that as of the RESPONSE DATE, ADC does not have an electronic health

3 records system to track whether women PRISONERS over 50 years old have been offered

4 a mammogram in the last two years.

5   **Admit** _____   **Deny** _____

6

7

**REQUEST FOR ADMISSION NO. 71.:**

8   Admit that as of the RESPONSE DATE, Corizon does not have an electronic

9 health records system to track whether women PRISONERS over 50 years old have been

10 offered a mammogram in the last two years.

11   **Admit** _____   **Deny** _____

12

13

**REQUEST FOR ADMISSION NO. 72.:**

14   Admit that ADC POLICY does not require that PRISONERS who are pregnant be

15 offered periodic pre-natal appointments with an obstetrician/gynecologist.

16   **Admit** _____   **Deny** _____

17

18

**REQUEST FOR ADMISSION NO. 73.:**

19   Admit that Corizon POLICY does not require that PRISONERS be offered who are

20 pregnant be offered periodic pre-natal appointments with an obstetrician/gynecologist.

21   **Admit** _____   **Deny** _____

22

23

**REQUEST FOR ADMISSION NO. 74.:**

24   Admit that as of the RESPONSE DATE, ADC does not have an electronic health

25 records system to track PRISONERS with coccidioidomycosis.

26   **Admit** _____   **Deny** _____

27

28

**REQUEST FOR ADMISSION NO. 75.:**

Admit that as of the RESPONSE DATE, Corizon does not have an electronic health records system to track PRISONERS with coccidioidomycosis.

**Admit** _____          **Deny** _____

## INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Robert Gamez, by and through undersigned counsel, requests that Defendant Charles Ryan respond, under oath, to the following Interrogatories within thirty (30) days after service. The following definitions and instructions apply to these interrogatories.

### DEFINITIONS

Definitions are set forth in section I, *supra*.

### INSTRUCTIONS

1.      Each interrogatory shall be answered fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable.

2.      The answers are to be signed by the person making them, and the objections signed by the attorney making them.

3.      If only a part of an interrogatory is objectionable, the remainder of the interrogatory shall be answered. If an objection is made to an interrogatory or to a part of an interrogatory, the specific ground for the objection shall be set forth clearly in the response.

4.      The following rules of construction shall be applied herein: (1) the words "and" or "or" shall be construed conjunctively or disjunctively as necessary to make the requests inclusive rather than exclusive; (2) the singular includes the plural and vice versa; and (3) the words "any," "all," "each" and "every" all include any, all, each, and every.

5.      Each term used in these Interrogatories that is not set forth in the "Definitions" section above has the broadest and most complete meaning permitted under

78204-0001/LEGAL27578573.1

1  the Federal Rules of Civil Procedure and the applicable case law. If any Interrogatory

2  contains a term (or terms) that YOU believe is (or are) unclear or ambiguous, YOU should

3  assume a reasonable meaning for such term(s), state what that meaning is, and answer that

4  Interrogatory on the basis of the assumed meaning.

5      6.      All INFORMATION requested herein is to be set forth if it is in the

6  possession, custody, or control of, or is available or accessible to, YOU or any of YOUR

7  agents, consultants, counsel, investigators, representatives, or any other person or persons

8  acting for YOU or on YOUR behalf.

9      7.      If any INFORMATION called for by an interrogatory is withheld on the

10  basis of claim of privilege, set forth the nature of the claimed privilege and the nature of

11  the INFORMATION with respect to which it is claimed.

12      8.      If these interrogatories cannot be responded to in full, YOU shall respond to

13  the extent possible, specify the reason for YOUR inability to respond to the remainder,

14  and state whatever INFORMATION or knowledge YOU have REGARDING the portion

15  to which YOU have not responded.

16      9.      Unless otherwise specified, the relevant time period, and the period for

17  which YOU are required to provide responsive DOCUMENTS, is from and including

18  January 1, 2011, up to and including the RESPONSE DATE.

19      10.     These Interrogatories are submitted for the purpose of discovery and are not

20  to be construed as waiving any objections that may be made at trial or at any hearing to

21  the introduction of evidence on subjects covered by these Interrogatories or as an

22  admission of the relevance or materiality at trial of any of the matters covered by these

23  Interrogatories.

24      11.     These Interrogatories are continuing in nature; responses should be

25  promptly supplemented pursuant to Federal Rule of Civil Procedure 26(e).

26      12.     All responses in which the DEFENDANTS choose to exercise the option to

27  produce DOCUMENTS or other writings shall require the DEFENDANTS to provide a

28  copy of that DOCUMENT or make it available for inspection, provide a DESCRIPTION

1   of the location where the DOCUMENT was found, indicate to which interrogatory it is

2   responsive, and specify the DOCUMENTS' Bates range. If the DOCUMENT is made

3   available for inspection, DEFENDANTS shall afford the Plaintiffs a reasonable

4   opportunity to examine, audit, or inspect the DOCUMENT and to make copies,

5   compilations, abstracts, or summaries of it.

6                                **INTERROGATORIES**

7   **INTERROGATORY NO. 1:**

8           IDENTIFY all CHEMICAL AGENTS that ADC STAFF carry and/or use on

9   PRISONERS; including, but not limited to those CHEMICAL AGENTS which ADC staff

10  are DESCRIBED as having used in ADC's Use of Force Reports.

11  **RESPONSE TO INTERROGATORY NO. 1:**

12

13

14

15  **INTERROGATORY NO. 2:**

16          State the mean and median length of stay for PRISONERS housed in ISOLATION.

17  **RESPONSE TO INTERROGATORY NO. 2:**

18

19

20

21  **INTERROGATORY NO. 3:**

22          State the custody level and other eligibility requirements for the Women's

23  Treatment Unit (WTU) at ASPC-Perryville.

24  **RESPONSE TO INTERROGATORY NO. 3:**

25

26

27

28

78204-0001/LEGAL27578573.1

- 25 -

1    **INTERROGATORY NO. 4:**

2        State the capacity of the Women's Treatment Unit (WTU) at ASPC-Perryville, the

3    number of women currently enrolled in the WTU, the number of women currently on the

4    waiting list for the WTU, and the mean length of time between addition to the waiting list

5    and acceptance into the WTU.

6    **RESPONSE TO INTERROGATORY NO. 4:**

7

8

9

10   **INTERROGATORY NO. 5:**

11       State the custody level and other eligibility requirements for Baker Ward at ASPC-

12   Phoenix.

13   **RESPONSE TO INTERROGATORY NO. 5:**

14

15

16

17   **INTERROGATORY NO. 6:**

18       State the mean, median, and modal length of stay in Baker Ward at ASPC-Phoenix.

19   **RESPONSE TO INTERROGATORY NO. 6:**

20

21

22

23   **INTERROGATORY NO. 7:**

24       State the custody level and other eligibility requirements for Flamenco at ASPC-

25   Phoenix.

26   **RESPONSE TO INTERROGATORY NO. 7:**

27

28

**INTERROGATORY NO. 8:**

State the custody level and other eligibility requirements for Aspen at ASPC-Phoenix.

**RESPONSE TO INTERROGATORY NO. 8:**

**INTERROGATORY NO. 9:**

State the custody level and other eligibility requirements for the BMU at ASPC-Eyman/Browning.

**RESPONSE TO INTERROGATORY NO. 9:**

**INTERROGATORY NO. 10:**

State the custody level and other eligibility requirements for Kasson-Wing 1 at ASPC-Florence.

**RESPONSE TO INTERROGATORY NO. 10:**

**INTERROGATORY NO. 11:**

State the custody level and other eligibility requirements for the BHU at ASPC-Tucson.

**RESPONSE TO INTERROGATORY NO. 11:**

1    **INTERROGATORY NO. 12:**

2        State the custody level and other eligibility requirements for CB-1 at ASPC-

3    Florence/Central.

4    **RESPONSE TO INTERROGATORY NO. 12:**

5

6

7

8    **INTERROGATORY NO. 13:**

9        State the custody level and other eligibility requirements for the Enhanced Mental

10   Health Treatment DESCRIBED in DEFENDANTS' response to Plaintiff Brislan's

11   Request for Admission No. 1.

12   **RESPONSE TO INTERROGATORY NO. 13:**

13

14

15

16   **INTERROGATORY NO. 14:**

17       DESCRIBE the process by which a PRISONER is transferred to ASPC-Phoenix

18   from another ADC facility for mental health reasons.

19   **RESPONSE TO INTERROGATORY NO. 14:**

20

21

22

23   **INTERROGATORY NO. 15:**

24       DESCRIBE the restraints worn by PRISONERS in ISOLATION units when they

25   are outside of their cells.

26   **RESPONSE TO INTERROGATORY NO. 15:**

27

28

1  **INTERROGATORY NO. 16:**

2     DESCRIBE the process for administration of psychotropic medications that are

3  ordered "PRN," and state who decides when the medication is to be administered.

4  **RESPONSE TO INTERROGATORY NO. 16:**

5

6

7

8  **INTERROGATORY NO. 17:**

9     State the minimum qualifications ADC requires of persons who act as interpreters

10  for medical, mental health, or DENTAL encounters for PRISONERS who do not speak

11  English.

12  **RESPONSE TO INTERROGATORY NO. 17:**

13

14

15

16  **INTERROGATORY NO. 18:**

17     State the number of ADC PRISONERS who received INDIVIDUAL MENTAL

18  HEALTH THERAPY during the week of June 24-29, 2013.

19  **RESPONSE TO INTERROGATORY NO. 18:**

20

21

22

23  **INTERROGATORY NO. 19:**

24     State the number of ADC PRISONERS who participated in mental health group

25  PROGRAMS during the week of June 24-29, 2013.

26  **RESPONSE TO INTERROGATORY NO. 19:**

27

28

1  **INTERROGATORY NO. 20:**

2    State the number of PRISONERS prescribed injectable Haldol decanoate as of the

3  first day of every month from January 1, 2012 to present.

4  **RESPONSE TO INTERROGATORY NO. 20:**

5

6

7

8  **INTERROGATORY NO. 21:**

9    State the number of PRISONERS prescribed one or more psychotropic medications

10  as of the first day of every month from January 1, 2012 to present.

11  **RESPONSE TO INTERROGATORY NO. 21:**

12

13

14

15  **INTERROGATORY NO. 22:**

16    State the conditions under which scheduled OUTDOOR EXERCISE is canceled

17  because of heat.

18  **RESPONSE TO INTERROGATORY NO. 22:**

19

20

21

22  **INTERROGATORY NO. 23:**

23    State the dates on which scheduled OUTDOOR EXERCISE has been canceled

24  because of heat from June 1, 2013 to present.

25  **RESPONSE TO INTERROGATORY NO. 23:**

26

27

28

1    **INTERROGATORY NO. 24:**

2          IDENTIFY each PRISONER whose prescribed medication has been interrupted

3    due to an expiring prescription or the unavailability of the medication, from June 1, 2012

4    to present, and for each such PRISONER IDENTIFY the medication(s) and state the

5    date(s) on which the PRISONER did not receive the medication(s)

6    **RESPONSE TO INTERROGATORY NO. 24:**

7

8

9

10   **INTERROGATORY NO. 25:**

11         DESCRIBE the physical location of the Enhanced Mental Health Treatment areas

12   DESCRIBED in DEFENDANTS' response to Plaintiff Brislan's Request for Admission

13   No. 1; IDENTIFY each PRISONER housed in those areas as of the RESPONSE DATE;

14   DESCRIBE the "individual, group, and televised treatment options" provided in those

15   areas; and IDENTIFY each PRISONER who participated in individual or group treatment

16   during the week of June 24-29, 2013.

17   **RESPONSE TO INTERROGATORY NO. 25:**

18

19

20

21

22

23

24

25

26

27

28

Dated:  August 13, 2013                    **JONES DAY**

By:  s/ Sophia Calderón
Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:    cnmitchell@jonesday.com
              dkiernan@jonesday.com
              scalderon@jonesday.com
              srauh@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:    jlwilkes@jonesday.com
              tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:    kmamedova@jonesday.com
              jkmessina@jonesday.com

*Admitted *pro hac vice*

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF
ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:    dpochoda@acluaz.org
              kflood@acluaz.org
              jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct.
R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
          ahardy@prisonlaw.com
          snorman@prisonlaw.com
          ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:    dfathi@npp-aclu.org
          afettig@npp-aclu.org
          aquereshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
          agerlicher@perkinscoie.com
          keidenbach@perkinscoie.com
          jhgray@perkinscoie.com
          mdumee@perkinscoie.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on August 13, 2013, I e-mailed a copy of the attached document to

3    the following parties:

4

5                                 Michael E. Gottfried
                                  Katherine E. Watanabe
                                  Lucy M. Rand
6                          Assistant Arizona Attorneys General
                              Michael.Gottfried@azag.gov
7                            Katherine.Watanabe@azag.gov
                                 Lucy.Rand@azag.gov
8

9                                  Daniel P. Struck
                                  Kathleen L. Wieneke
                                  Timothy J. Bojanowski
10                                   Rachel Love
                                  Nicholas D. Acedo
11                                Courtney R. Cloman
                                  Ashlee B. Fletcher
12                                 Anne M. Orcutt
                          STRUCK WIENEKE, & LOVE, P.L.C.
13                              dstruck@swlfirm.com
                                kwieneke@swlfirm.com
14                              tbojanowski@swlfirm.com
                                  rlove@swlfirm.com
15                              nacedo@swlfirm.com
                                ccloman@swlfirm.com
16                              afletcher@swlfirm.com
                                 aorcutt@swlfirm.com
17

18                              *Attorneys for Defendants*

19                                 Jennifer Alewelt
                                     Asim Varma
20                                  Sarah Kader
                                      J.J. Rico
21                                Cathleen M. Dooley
                    **ARIZONA CENTER FOR DISABILITY LAW**
22                            jalewelt@azdisabilitylaw.org
                              avarma@azdisabilitylaw.org
23                            skader@azdisabilitylaw.org
                               jrico@azdisabilitylaw.org
24                            cdooley@azdisabilitylaw.org

25          *Attorneys for Plaintiff Arizona Center for Disability Law*

26

27                                              s/ Margaret Landsborough

28

1   Daniel Pochoda (Bar No. 021979)
    Kelly J. Flood (Bar No. 019772)
2   James Duff Lyall (Bar No. 330045)*
    **ACLU FOUNDATION OF ARIZONA**
3   3707 North 7th Street, Suite 235
    Phoenix, Arizona 85013
4   Telephone:  (602) 650-1854
    Email: dpochoda@acluaz.org
5          kflood@acluaz.org
           jlyall@acluaz.org
6   *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin
    Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
8   *Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci,*
    *Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of*
9   *themselves and all others similarly situated*

    **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**
10

11                  UNITED STATES DISTRICT COURT

12                      DISTRICT OF ARIZONA

13  Victor Parsons; Shawn Jensen; Stephen Swartz;      No. CV 12-00601-PHX-NVW
    Dustin Brislan; Sonia Rodriguez; Christina         (MEA)
14  Verduzco; Jackie Thomas; Jeremy Smith; Robert
    Gamez; Maryanne Chisholm; Desiree Licci;
15  Joseph Hefner; Joshua Polson; and Charlotte        **PLAINTIFF DESIREE LICCI'S**
    Wells, on behalf of themselves and all others      **FIRST SET OF REQUESTS**
16  similarly situated; and Arizona Center for         **FOR ADMISSION (NOS. 1-8)**
    Disability Law,                                    **AND FIRST SET OF**
17                                                     **INTERROGATORIES (NOS. 1-**
                      Plaintiffs,                      **20) TO DEFENDANT**
18                                                     **CHARLES RYAN**
            v.
19
    Charles Ryan, Director, Arizona Department of
20  Corrections; and Richard Pratt, Interim Division
    Director, Division of Health Services, Arizona
21  Department of Corrections, in their official
    capacities,
22
                      Defendants.

23

24

25

26

27

28

PROPOUNDING PARTY:        Desiree Licci

RESPONDING PARTY:         Defendant Charles Ryan

REQUESTS FOR ADMISSION

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff Desiree Licci, by and through undersigned counsel, requests that Defendant Charles Ryan respond to the following Requests for Admission separately and fully, in writing, and under oath within thirty (30) days after service. The following definitions and instructions apply to these requests.

## DEFINITIONS

For purposes of these requests, the following definitions shall apply:

1.   "ADC" means the Arizona Department of Corrections, including all its subdivisions, agents, employees, CONTRACTORS, and attorneys.

2.   "ADC STAFF" means all persons employed by ADC, including "CORRECTIONAL STAFF" and "HEALTH CARE STAFF."

3.   "COMMUNICATIONS" means any transmittal of INFORMATION from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including a Blackberry or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

4.   "COMPLAINTS" means any DOCUMENTS, formal or informal, REGARDING specific or general problems, issues, deficiencies, unanswered questions,

challenges, shortcomings, disagreements, or requests brought to the attention of the ADC or any ADC STAFF.

5. "CONTRACTOR" means "LOCUM TENENS CONTRACTOR" and "SPECIALTY CONTRACTOR."

6. "CORRECTIONAL STAFF" means custody staff employed or paid by the ADC to serve in a security or operational capacity.

7. "DENTAL" means involving or relating to the oral cavity and maxillofacial area, including the lips, mouth, tongue, teeth, gums, jaw, and oral musculature, as well as the adjacent and associated areas.

8. "DENTAL ASSISTANT" means an ENTRY-LEVEL PROVIDER charged with providing DENTAL CARE to PRISONERS.

9. "DENTAL CARE" means the provision of care, including adequate diet, to address the DENTAL needs of a PRISONER, whether those needs arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic or preventive purposes.

10. "DENTAL HNR" means a Health Needs Request form that is routed to a DENTIST or DENTAL ASSISTANT for evaluation and response.

11. "DENTIST" means an individual holding a degree in dental medicine or dental surgery and licensed as a dentist by the Arizona Board of Dental Examiners, who has been hired to work as a dentist at ADC facilities treating PRISONERS.

12. "DESCRIBE" and "DESCRIPTION" means to provide all available INFORMATION.

13. "DISCIPLINE" means any formal or informal DISCIPLINE, punishment, reprimand, warning, or comment given to any person as a result of substandard or unacceptable conduct.

14. "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and DESCRIPTION and every tangible thing that is or has been in

1   the possession, custody, or control of DEFENDANTS and the ADC, to which they have

2   access, or of which they have knowledge, including, but not limited to, newspaper articles,

3   magazine articles, news articles, correspondence, letters, contracts, files, electronic mail,

4   memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books,

5   pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations,

6   point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices,

7   pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings,

8   maps, reports, surveys, MINUTES, data compilations, and statistical compilations,

9   regardless of whether a particular DOCUMENT is privileged or confidential, and

10   regardless of the form of storage (including, but not limited to, paper, microfiche,

11   magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or

12   electronic storage device). "DOCUMENT" and "DOCUMENTS" includes, but is not

13   limited to, all DOCUMENTS generated by or maintained in the Director's Project

14   Tracking System, official ADC papers, and the ADC's intranet.

15       15.   "ENTRY-LEVEL PRACTITIONERS" means unlicensed persons who

16   provide HEALTH CARE to PRISONERS at the ADC subordinate to MID-LEVEL

17   PRACTITIONERS or HEALTH CARE CLINICIANS.

18       16.   "HEALTH CARE" means the provision of care, including adequate diet, to

19   address the mental health, medical, or DENTAL needs of a PRISONER, whether those

20   needs arise as a result of injury, illness, disease, or other trauma, or care provided for

21   diagnostic or preventive purposes.

22       17.   "HEALTH CARE CLINICIANS" means persons independently licensed to

23   provide HEALTH CARE to PRISONERS at the ADC facilities, including but not limited

24   to M.D., D.O., D.D.S., and Ph.D. credentialed staff.

25       18.   "HEALTH CARE DIRECTIVES" means DOCUMENTS REGARDING

26   advance medical care directives, living wills, personal directives, advance directives, or

27   instructions of any kind in which individuals specify what actions should or should not be

28   taken for their HEALTH CARE in the event they are no longer able to make decisions due

1    to illness, injury, or incapacity

2         19.    "HEALTH CARE SHORTAGES" means any deficiencies involving

3    HEALTH CARE, including but not limited to a lack of or insufficient number of

4    medicines, drugs, medical supplies, medical equipment, transportation, or HEALTH

5    CARE STAFFING.

6         20.    "HEALTH CARE STAFF" means all staff employed or paid by the ADC,

7    LOCUM TENENS CONTRACTORS, or SPECIALTY CONTRACTORS (other than

8    CORRECTIONAL STAFF) who are responsible for providing HEALTH CARE to ADC

9    PRISONERS, including but not limited to HEALTH CARE CLINICIANS, MID-LEVEL

10   PRACTITIONERS, ENTRY-LEVEL PRACTITIONERS, PHARMACISTS, and

11   administrative and support staff.

12        21.    "HEALTH CARE STAFFING" means the provision of HEALTH CARE

13   STAFF to provide HEALTH CARE.

14        22.    "IDENTIFY" and "IDENTIFICATION" with respect to (a) a PRISONER or

15   former PRISONER, means to state the PRISONER'S full name, ADC number, date of

16   birth, current or most recent mental health score (MH-1 through MH-5), medical score

17   (M-1 through M-5), public risk score, institutional risk score, and current housing location

18   (if still in ADC custody) or last known address and telephone number (if no longer in

19   ADC custody); (b) a person other than a PRISONER or former PRISONER, means to

20   state the person's full name and specify whether or not the person is or has been an ADC

21   STAFF member, and if so, to state the staff member's position title, facility location, work

22   schedule, responsibilities, date ADC employment began, date ADC employment

23   terminated, dates of any changes in position titles or responsibilities, DESCRIPTIONS of

24   any changes in position titles or responsibilities and, if the person is not currently

25   employed by ADC, the person's last known address and telephone number; and (c) a

26   third-party CONTRACTOR or entity means to state the name of the CONTRACTOR or

27   entity, the type of entity (*e.g.*, corporation, partnership, etc.); its address and telephone

28   number; and any persons YOU are aware of who acted on behalf of that CONTRACTOR

-4-

1   or entity with respect to the events at issue in the discovery request; (d) IDENTIFY in any

2   other context means to provide as much INFORMATION REGARDING the thing to be

3   identified as is in the possession of DEFENDANTS or the ADC.

4        23.   "INFORMATION" means any knowledge YOU have, any evidence of any

5   type, any facts of which YOU are aware and any inferences or speculation of which YOU

6   are aware, all regardless of the source.  When INFORMATION YOU provide is based

7   solely on inference or speculation, specifically so state in YOUR response.  When

8   providing INFORMATION, provide the names of involved individuals, actions relevant

9   to the requested INFORMATION, dates and times when known, locations, and any other

10   knowledge YOU have about the subject of the discovery request.  When asked to provide

11   INFORMATION about one or more individuals, IDENTIFY the individual or individuals

12   and provide any other INFORMATION YOU have about such person or persons.

13        24.   "ISOLATION" means confinement in a cell for 22 hours or more each day;

14   confinement in Eyman-Special Management Unit ("SMU") 1, Eyman-Browning Unit,

15   Florence-Central Unit, Florence-Kasson Unit, or Perryville-Lumley Special Management

16   Area ("SMA"); or confinement in a Complex Detention Unit ("CDU").

17        25.   "LOCUM TENENS CONTRACTOR" means any person or entity

18   contracting with ADC to provide HEALTH CARE to ADC PRISONERS.

19        26.   "MID-LEVEL PRACTITIONERS" means licensed professionals who

20   provide HEALTH CARE to PRISONERS at the ADC under supervision by HEALTH

21   CARE CLINICIANS.

22        27.   "MINUTES" means notes or any other recording reflecting the content of a

23   meeting, whether written contemporaneously with or subsequent to the meeting.

24        28.   "PAIN EVALUATION" means, for the purposes of this document, a

25   DENTAL visit attended by or scheduled for a PRISONER who complains of DENTAL

26   pain, and, if different, the meaning intended when DENTAL HNRs are returned to

27   prisoners with "pain eval" or "you are scheduled for a pain evaluation" written or stamped

28   in Section IV (see, e.g., ADC073881).

1       29.   "PHARMACIST" means a professional who practices pharmacy.

2       30.   "POLICIES AND PROCEDURES" means policies, procedures, criteria, or
3  practices, whether written or established through custom or use, including but not limited
4  to policy and procedure manuals, directors' orders, protocols, directives, flowcharts,
5  institution post orders, and any other DOCUMENTS designed to direct the actions of
6  ADC personnel, ADC CONTRACTORS, and/or PRISONERS.

7       31.   "POLICY" means policies, procedures, criteria, or practices, whether
8  written or established through custom or use, including but not limited to policy and
9  procedure manuals, directors' orders, protocols, directives, flowcharts, institution post
10  orders, and any other DOCUMENTS designed to direct the actions of ADC personnel,
11  ADC contractors, and/or PRISONERS.

12      32.   "PRISONER" means a person incarcerated by the ADC.

13      33.   "PROGRAMS" means a program made available to PRISONERS in the
14  custody of ADC, including but not limited to rehabilitative, therapeutic, educational,
15  vocational, substance abuse treatment, recreational, re-entry, and faith-based
16  PROGRAMS; furlough, temporary release, compassionate release, and early release
17  PROGRAMS; and prison job assignments whether or not for pay.

18      34.   "REGARDING" or "REGARDED" to any given subject matter means,
19  without limitation, anything that, in whole or in part, analyzes, comments upon,
20  comprises, concerns, constitutes, contains, DESCRIBES, discusses, embodies, evidences,
21  explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers
22  to, relates to, responds to, states, summarizes, or is in any way relevant to the particular
23  subject matter identified.

24      35.   "RESPONSE DATE" means date upon which YOU respond to these
25  discovery requests, or, if YOU amend or supplement YOUR response, the date of YOUR
26  amendment or supplement.

27      36.   "RESTRICTED DIET":   a "medical or soft mechanical diet prescribed
28  pursuant to the Diet Reference Manual (ADC040582).  For purposes of this document, the

term does not include religious diets."

37.   "ROUTINE CARE" means DENTAL CARE for conditions that require treatment to restore the form and function of oral tissues, but where such treatment is not required on an urgent or emergency basis.

38.   "ROUTINE CARE LIST" means prisoners who have requested, but not yet received DENTAL CARE that is not required on an urgent or emergency basis.

39.   "SPECIALTY CONTRACTOR" means any person or entity contracting with the ADC to provide HEALTH CARE to PRISONERS who is not a LOCUM TENENS CONTRACTOR.

40.   "SDPS" means Smallwood Dental Prison Services, and its corporate predecessors or successors, employees, subordinates, CONTRACTORS, agents, and attorneys.

41.   "SUFFICIENT TO SHOW" means demonstrating or evidencing complete INFORMATION on the requested topic, without the need to produce every DOCUMENT REGARDING the topic.

42.   "TRIAGE" or "TRIAGING" means the process by which HEALTH CARE providers determine how quickly a PRISONER is seen by a HEALTH CARE provider and the process of determining the type of HEALTH CARE visit or treatment a PRISONER may receive. TRIAGE or TRIAGING includes, but is not limited to, the review of HNRs, the placement of PRISONERS on the URGENT CARE LIST and ROUTINE CARE LIST, and consultations used to decide the care a PRISONER needs.

43.   "URGENT CARE" means DENTAL CARE for conditions such as fractured dentition with pulp exposure, acute dental abscess, oral pathological conditions that may severely compromise the general health of the inmate, and any other conditions for which a patient should be seen for DENTAL CARE within five days of the complaint.

44.   "URGENT CARE LIST":   any list maintained of prisoners who have requested URGENT CARE, but have not yet been seen, including, but not limited to, patients who have been told they will be seen for a PAIN EVALUATION.

1    45.    "YOU," "YOUR," "YOURSELF," and "DEFENDANTS" means

2    defendants Charles Ryan and Richard Pratt, and their predecessors, successors,

3    employees, subordinates, CONTRACTORS, agents, and attorneys.

4    46.    INSTRUCTIONS

5    47.    Each request for admission below asks for admission of the truth of the

6    matter stated in the request.

7    48.    If YOU do not specifically admit or deny matters stated below, YOU must

8    set forth in detail the reasons why YOU cannot truthfully admit or deny the matter.

9    49.    If good faith requires YOU to qualify a response or to deny only a part of a

10   matter set forth below, YOU must specify so much of the matter as is true and qualify or

11   deny the remainder.

12   50.    YOU may not refuse to admit or deny any matter set forth below based upon

13   lack of INFORMATION or knowledge unless YOU also assert that YOU have made

14   reasonable inquiry and that the INFORMATION necessary to admit or deny the matter

15   stated is not known or readily obtainable.

16   51.    Each matter of which an admission is requested will be deemed admitted,

17   and conclusively established for purposes of this litigation (unless the Court upon motion

18   permits withdrawal or amendment of the admission), if YOU do not serve a written,

19   signed answer or objection addressed to the matter specified within thirty (30) days after

20   service of these requests, or within such other time as the Court may allow.

21   52.    YOU shall answer the following requests for admission separately and fully,

22   in writing, and under oath. Should YOU object to or otherwise refuse to answer any

23   portion of a request for admission, YOU shall (1) state the objection or reason for such

24   refusal, and (2) provide all INFORMATION called for by that portion of the admission to

25   which it does not object to or to which it does not decline to answer.

26   53.    Should YOU find the meaning of any term to be ambiguous or unclear,

27   YOU should assume a reasonable meaning, state what that assumed meaning is, and

28   answer the request on the basis of that assumed meaning.

-8-

54.     These requests are deemed to be continuing in nature, and YOU shall amend or supplement the responses hereto in accordance with the Federal Rules of Civil Procedure as is necessary to maintain the accuracy of YOUr responses. To that end, if YOU obtain additional responsive INFORMATION at any time between the time for the initial response and the time of hearing or trial, YOU shall promptly provide Plaintiffs with the supplemental response.

55.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

56.     The use of the singular form of any word includes the plural, and the plural form of a word shall be interpreted as singular, whenever appropriate to bring within the scope any DOCUMENTS or INFORMATION that might otherwise be considered beyond the scope of the request.

57.     For the purposes of these requests, whenever necessary to ensure completeness or accuracy, words importing the masculine gender include the feminine and neuter, words importing the feminine gender include the masculine and neuter, and words importing the neuter gender include the masculine and feminine.

## **REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION NO. 1**

Admit that DENTAL ASSISTANTS review DENTAL HNRs to determine whether the PRISONER who filed the HNR is placed on the ROUTINE CARE LIST or URGENT CARE LIST.

                    Admit _____          Deny _____


**REQUEST FOR ADMISSION NO. 2**:

Admit that ADC policy permits PRISONERS who have filed HNRs listing DENTAL pain as an issue to be put on the ROUTINE CARE LIST.

                    Admit _____          Deny _____

**REQUEST FOR ADMISSION NO. 3:**

Admit that DENTAL ASSISTANTS have discretion to place PRISONERS who file DENTAL HNRs on the URGENT CARE LIST.

Admit _____          Deny _____

**REQUEST FOR ADMISSION NO. 4:**

Admit that PRISONERS who submit a DENTAL HNR for ROUTINE CARE are placed on the ROUTINE CARE LIST.

Admit _____          Deny _____

**REQUEST FOR ADMISSION NO. 5:**

Admit that PRISONERS on the DENTAL ROUTINE CARE LIST are seen for ROUTINE CARE in order of the date that the HNR was submitted.

Admit _____          Deny _____

**REQUEST FOR ADMISSION NO. 6:**

Admit that PRISONERS on the DENTAL ROUTINE CARE LIST who receive a PAIN EVALUATION are taken off the DENTAL ROUTINE CARE LIST.

Admit _____          Deny _____

**REQUEST FOR ADMISSION NO. 7:**

Admit that PRISONERS on the DENTAL ROUTINE CARE LIST who receive a PAIN EVALUATION are never taken off the DENTAL ROUTINE CARE LIST.

Admit _____          Deny _____

**REQUEST FOR ADMISSION NO. 8:**

Admit that PRISONERS who are placed on the ROUTINE CARE LIST as the result of an initial DENTAL HNR, but who receive a PAIN EVALUATION, must submit

1  a second DENTAL HNR to be placed back on the ROUTINE CARE LIST.

2            Admit _____      Deny _____

3

4  **INTERROGATORIES**

5      Pursuant to Rule 33 of the Federal Rules of Civil Procedure, plaintiff Desiree Licci,

6  by and through undersigned counsel, requests that Defendant Charles Ryan respond,

7  under oath, to the following Interrogatories within thirty (30) days after service. The

8  following definitions and instructions apply to these interrogatories.

9  **DEFINITIONS**

10      Definitions are set forth in section I, *supra*.

11  **INSTRUCTIONS**

12      1.    Each interrogatory shall be answered fully in writing under oath, unless it is

13  objected to, in which event the objecting party shall state the reasons for objection and

14  shall answer to the extent the interrogatory is not objectionable.

15      2.    The answers are to be signed by the person making them, and the objections

16  signed by the attorney making them.

17      3.    If only a part of an interrogatory is objectionable, the remainder of the

18  interrogatory shall be answered. If an objection is made to an interrogatory or to a part of

19  an interrogatory, the specific ground for the objection shall be set forth clearly in the

20  response.

21      4.    The following rules of construction shall be applied herein: (1) the words

22  "and" or "or" shall be construed conjunctively or disjunctively as necessary to make the

23  requests inclusive rather than exclusive; (2) the singular includes the plural and vice versa;

24  and (3) the words "any," "all," "each" and "every" all include any, all, each, and every.

25      5.    Each term used in these Interrogatories that is not set forth in the

26  "Definitions" section above has the broadest and most complete meaning permitted under

27  the Federal Rules of Civil Procedure and the applicable case law. If any Interrogatory

28  contains a term (or terms) that YOU believe is (or are) unclear or ambiguous, YOU should

-11-

assume a reasonable meaning for such term(s), state what that meaning is, and answer that Interrogatory on the basis of the assumed meaning.

6. All INFORMATION requested herein is to be set forth if it is in the possession, custody, or control of, or is available or accessible to, YOU or any of YOUR agents, consultants, counsel, investigators, representatives, or any other person or persons acting for YOU or on YOUR behalf.

7. If any INFORMATION called for by an interrogatory is withheld on the basis of claim of privilege, set forth the nature of the claimed privilege and the nature of the INFORMATION with respect to which it is claimed.

8. If these interrogatories cannot be responded to in full, YOU shall respond to the extent possible, specify the reason for YOUR inability to respond to the remainder, and state whatever INFORMATION or knowledge YOU have REGARDING the portion to which YOU have not responded.

9. Unless otherwise specified, the relevant time period, and the period for which YOU are required to provide responsive DOCUMENTS, is from and including January 1, 2011, up to and including the RESPONSE DATE.

10. These Interrogatories are submitted for the purpose of discovery and are not to be construed as waiving any objections that may be made at trial or at any hearing to the introduction of evidence on subjects covered by these Interrogatories or as an admission of the relevance or materiality at trial of any of the matters covered by these Interrogatories.

11. These Interrogatories are continuing in nature; responses should be promptly supplemented pursuant to Federal Rule of Civil Procedure 26(e).

12. All responses in which the DEFENDANTS choose to exercise the option to produce DOCUMENTS or other writings shall require the DEFENDANTS to provide a copy of that DOCUMENT or make it available for inspection, provide a DESCRIPTION of the location where the DOCUMENT was found, indicate to which interrogatory it is responsive, and specify the DOCUMENTS' Bates range. If the DOCUMENT is made

-12-

1  available for inspection, DEFENDANTS shall afford the Plaintiffs a reasonable

2  opportunity to examine, audit, or inspect the DOCUMENT and to make copies,

3  compilations, abstracts, or summaries of it.

4  **INTERROGATORIES**

5  **INTERROGATORY NO. 1:**

6      At a PRISONER'S first DENTAL evaluation after entering ADC custody, does the

7  HEALTH CARE provider performing the evaluation tell the PRISONER that s/he needs

8  DENTAL CARE, including but not limited to fillings?

9  **RESPONSE TO INTERROGATORY NO. 1:**

10

11

12  **INTERROGATORY NO. 2:**

13      DESCRIBE any and all training PROGRAMS DENTAL ASSISTANTS undergo

14  to teach or train them triaging skills.

15  **RESPONSE TO INTERROGATORY NO. 2:**

16

17

18  **INTERROGATORY NO. 3:**

19      Are DENTAL ASSISTANTS evaluated on their TRIAGING or TRIAGING skills?

20  If yes, please DESCRIBE that evaluation process, including but not limited to (a) how

21  often the evaluations are performed; (b) who performs the evaluations; and (c) the criteria

22  and/or skills on which the DENTAL ASSISTANTS are evaluated.

23  **RESPONSE TO INTERROGATORY NO. 3:**

24

25

26  **INTERROGATORY NO. 4:**

27      Are DENTISTS evaluated on their TRIAGING or TRIAGING skills?  If yes,

28  please DESCRIBE that evaluation process, including but not limited to (a) how often the

-13-

1  evaluations are done; (b) who performs the evaluations; and (c) the criteria and/or skills

2  on which the DENTISTS are evaluated.

3  **RESPONSE TO INTERROGATORY NO. 4:**

4

5

6  **INTERROGATORY NO. 5:**

7      Explain the meaning of the headings for each column listed in the Arizona Monthly

8  Staffing Report Roll-up, e.g. ADC117064-ADC121177, including but not limited to the

9  data used to calculate each data column and the differences between the data shown in

10  each column.

11  **RESPONSE TO INTERROGATORY NO. 5:**

12

13

14  **INTERROGATORY NO. 6:**

15      Explain how "wait time" is calculated in the Inmate Wait Times Report, e.g. ADC

16  122017.

17  **RESPONSE TO INTERROGATORY NO. 6:**

18

19

20  **INTERROGATORY NO. 7:**

21      Do "wait time" calculations, such as those included in the Inmate Wait Times

22  Report (ADC 122017) include requests for URGENT CARE?

23  **RESPONSE TO INTERROGATORY NO. 7:**

24

25

26  **INTERROGATORY NO. 8:**

27      If a PRISONER who is on the ROUTINE CARE LIST for a DENTAL condition is

28  seen on a PAIN EVALUATION but does not have the pain addressed through an

-14-

1  extraction during the PAIN EVALUATION visit,  what happens to the PRISONER'S

2  request to be treated for ROUTINE CARE?  If the response varies by facility or by the

3  nature of either the routine or emergency request, state so and explain each variation.

4  **RESPONSE TO INTERROGATORY NO. 8:**

5

6

7  **INTERROGATORY NO. 9:**

8        If a PRISONER who is on the ROUTINE CARE LIST for a DENTAL condition is

9  treated on a PAIN EVALUATION, will the patient be seen for the originally requested

10  ROUTINE CARE (1) at the time he or she would have been seen had there been no PAIN

11  EVALUATION; (2) at the time he or she would have been seen had he or she filed a new

12  HNR on the date of the PAIN EVALUATION (in other words, the routine HNR is "sent

13  to the bottom" of the ROUTINE CARE LIST without action by the PRISONER); or 3)

14  not unless and until the PRISONER files a new ROUTINE CARE HNR and waits until

15  his or her turn on the ROUTINE CARE LIST.

16  **RESPONSE TO INTERROGATORY NO. 9:**

17

18

19  **INTERROGATORY NO. 10:**

20        If a PRISONER who is on the ROUTINE CARE LIST for a DENTAL complaint

21  on one tooth then files a second HNR for a DENTAL complaint on a different tooth or

22  teeth, explain when and for which issue(s) the PRISONER will be scheduled. If the

23  response varies by facility or by the nature of either request, state so and explain each

24  variation.

25  **RESPONSE TO INTERROGATORY NO. 10:**

26

27

28

1   **INTERROGATORY NO. 11:**

2       Did the "Standing Medical Order: Toothache/Dental Abscess" as referenced in

3   Paragraph 3.0 of Procedure 787 in the Dental Services Technical Manual (January 1,

4   2010) change during Wexford's employment with ADC?

5   **RESPONSE TO INTERROGATORY NO. 11:**

6

7

8   **INTERROGATORY NO. 12:**

9       Has the "Standing Medical Order: Toothache/Dental Abscess" as referenced in

10   Paragraph 3.0 of Procedure 787 in the Dental Services Technical Manual (January 1,

11   2010) changed during Corizon's employment with ADC?

12   **RESPONSE TO INTERROGATORY NO. 12:**

13

14

15   **INTERROGATORY NO. 13:**

16       Paragraph 4.0 of Procedure 787 in the Dental Services Technical Manual (January

17   1, 2010) identifies four exclusions from Procedure 787 (Globe, SACRC, Papago, and

18   Picacho).  What Evaluation and Triage Procedure, as defined in Procedure 787, operate at

19   the facilities identified in Paragraph 4.0?

20   **RESPONSE TO INTERROGATORY NO. 13:**

21

22

23   **INTERROGATORY NO. 14:**

24       Does ADC track or monitor the instances in which inmates are denied or refuse

25   their RESTRICTED DIET, the reasons for the denials or refusals, and any action taken as

26   a result of such denials or refusals? If so, explain how ADC tracks or monitors that

27   INFORMATION.

28

1   **RESPONSE TO INTERROGATORY NO. 14:**

2

3

4   **INTERROGATORY NO. 15:**

5       Explain what factors determine whether an inmate receives a RESTRICTED DIET.

6   YOUR response to this interrogatory should include, but not be limited to, an explanation

7   of what is needed for a "provider [to] determine[] that the general population menu is

8   inappropriate," what determines whether "a therapeutic or soft food diet [is] consistent

9   with the therapeutic diets listed in the ADC Diet Manual," and what it means for a SOFT

10   DIET or THERAPEUTIC DIET to be "supported in the inmate's progress notes with

11   SOAP documentation by the prescribing practitioner." [See Ryan's Responses to

12   Verduzco's 1st RFAs Nos. 223-24].

13   **RESPONSE TO INTERROGATORY NO. 15:**

14

15

16   **INTERROGATORY NO. 16:**

17       Whom does ADC permit to determine whether inmates receive RESTRICTED

18   DIET? In particular, YOUR response should include, but not be limited to, a statement of

19   who is authorized to decide whether the "general population menu is inappropriate,"

20   whether "a therapeutic or soft food diet [is] consistent with the medical diets listed in the

21   ADC Diet Manual," and whether a restricted diet is "supported in the inmate's progress

22   notes with SOAP documentation by the prescribing practitioner." [See Ryan's Responses

23   to Verduzco's 1st RFAs Nos. 223-24].

24   **RESPONSE TO INTERROGATORY NO. 16:**

25

26

27   **INTERROGATORY NO. 17:**

28       Regardless of YOUR response to the previous interrogatory, which categories of

-17-

1  personnel actually have decided, on any occasion, whether inmates may receive

2  RESTRICTED DIETS?

3  **RESPONSE TO INTERROGATORY NO. 17:**

4

5

6  **INTERROGATORY NO. 18:**

7      State the number of jobs available to PRISONERS housed in each ISOLATION

8  unit, the job title of each job, the eligibility for each job, the number of hours per week

9  available to be worked for each job, and the names and ADC numbers of each

10  PRISONER holding said jobs as of June 1, 2013.

11  **RESPONSE TO INTERROGATORY NO. 18:**

12

13

14  **INTERROGATORY NO. 19:**

15      State the name, ADC number, and current housing unit of each PRISONER in

16  ISOLATION who is eligible for a lower custody housing placement but still housed in

17  ISOLATION as of the RESPONSE DATE.

18  **RESPONSE TO INTERROGATORY NO. 19:**

19

20

21  **INTERROGATORY NO. 20:**

22      What is ADC's policy on dental floss, flossers, floss loops, and other similar

23  products intended to permit PRISONERS to clean between their teeth? If this policy

24  varies by custody level, explain variations in your response.

25  **RESPONSE TO INTERROGATORY NO. 20:**

26

27

28

-18-

1

2

Dated:  August 13, 2013                          **JONES DAY**

3                                                By:  s/ Sophia Calderón
                                                 Caroline Mitchell (Cal. 143124)*
4                                                David C. Kiernan (Cal. 215335)*
                                                 Sophia Calderón (Cal. 278315)*
5                                                Sarah Rauh (Cal. 283742)*
                                                 555 California Street, 26th Floor
6                                                San Francisco, California 94104
                                                 Telephone:  (415) 875-5712
7                                                Email:    cnmitchell@jonesday.com
                                                           dkiernan@jonesday.com
8                                                          scalderon@jonesday.com
                                                           srauh@jonesday.com
9
                                                 *Admitted *pro hac vice*
10
                                                 John Laurens Wilkes (Tex. 24053548)*
11                                               Taylor Freeman (Tex. 24083025)*
                                                 **JONES DAY**
12                                               717 Texas Street
                                                 Houston, Texas 77002
13                                               Telephone:  (832) 239-3939
                                                 Email:    jlwilkes@jonesday.com
14                                                         tfreeman@jonesday.com
15                                               *Admitted *pro hac vice*
16                                               Kamilla Mamedova (N.Y. 4661104)*
                                                 Jennifer K. Messina (N.Y. 4912440)*
17                                               **JONES DAY**
                                                 222 East 41 Street
18                                               New York, New York 10017
                                                 Telephone:  (212) 326-3498
19                                               Email:    kmamedova@jonesday.com
                                                           jkmessina@jonesday.com
20
                                                 *Admitted *pro hac vice*
21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:    dpochoda@acluaz.org
          kflood@acluaz.org
          jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
          ahardy@prisonlaw.com
          snorman@prisonlaw.com
          ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:    dfathi@npp-aclu.org
          afettig@npp-aclu.org
          aquereshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
          agerlicher@perkinscoie.com
          keidenbach@perkinscoie.com
          jhgray@perkinscoie.com
          mdumee@perkinscoie.com

*Attorneys for Plaintiffs Shawn Jensen;*
*Stephen Swartz; Dustin Brislan; Sonia*
*Rodriguez; Christina Verduzco; Jackie*
*Thomas; Jeremy Smith; Robert Gamez;*
*Maryanne Chisholm; Desiree Licci; Joseph*
*Hefner; Joshua Polson; and Charlotte*
*Wells, on behalf of themselves and all others*
*similarly situated*

-21-

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 13, 2013, I e-mailed a copy of the attached document to the following parties:

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

*Attorneys for Defendants*

Jennifer Alewelt
Asim Varma
Sarah Kader
J.J. Rico
Cathleen M. Dooley
**ARIZONA CENTER FOR DISABILITY LAW**
jalewelt@azdisabilitylaw.org
avarma@azdisabilitylaw.org
skader@azdisabilitylaw.org
jrico@azdisabilitylaw.org
cdooley@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

                              s/ Margaret Landsborough

1   Daniel Pochoda (Bar No. 021979)
    Kelly J. Flood (Bar No. 019772)
2   James Duff Lyall (Bar No. 330045)*
    **ACLU FOUNDATION OF ARIZONA**
3   3707 North 7th Street, Suite 235
    Phoenix, Arizona 85013
4   Telephone: (602) 650-1854
    Email: dpochoda@acluaz.org
5          kflood@acluaz.org
           jlyall@acluaz.org
6   *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7   *Attorneys for Plaintiffs Shawn Jensen, Stephen*
    *Swartz, Dustin Brislan, Sonia Rodriguez,*
8   *Christina Verduzco, Jackie Thomas, Jeremy*
    *Smith, Robert Gamez, Maryanne Chisholm,*
9   *Desiree Licci, Joseph Hefner, Joshua Polson, and*
    *Charlotte Wells, on behalf of themselves and all*
10  *others similarly situated*

11  **[ADDITIONAL COUNSEL LISTED ON
    SIGNATURE PAGE]**
12
                    UNITED STATES DISTRICT COURT
13
                       DISTRICT OF CALIFORNIA
14

15  Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-NVW
    Dustin Brislan; Sonia Rodriguez; Christina              (MEA)
16  Verduzco; Jackie Thomas; Jeremy Smith; Robert
    Gamez; Maryanne Chisholm; Desiree Licci; Joseph     **PLAINTIFF DESIREE LICCI'S**
17  Hefner; Joshua Polson; and Charlotte Wells, on      **FIRST SET OF REQUESTS**
    behalf of themselves and all others similarly       **FOR PRODUCTION OF**
18  situated; and Arizona Center for Disability Law,    **DOCUMENTS TO**
                                                        **DEFENDANTS**
19                        Plaintiffs,

20              v.

21  Charles Ryan, Director, Arizona Department of
    Corrections; and Richard Pratt, Interim Division
22  Director, Division of Health Services, Arizona
    Department of Corrections, in their official
23  capacities,

24                        Defendants.

25

26

27

28

LEGAL27578843.1

PROPOUNDING PARTY:        Desiree Licci

RESPONDING PARTY:         Defendants

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Desiree Licci, by and through undersigned counsel, requests that Defendants respond, within thirty (30) days and produce the following documents for inspection and copying at ACLU Foundation of Arizona, 3707 N. 7th Street, Suite 235, Phoenix, Arizona 85013.

## DEFINITIONS

For purposes of these requests, the following definitions shall apply:

1.      "ADC" means the Arizona Department of Corrections, including all its subdivisions, agents, employees, contractors, and attorneys.

2.      "ADC STAFF" means all persons employed by ADC, including "CORRECTIONAL STAFF" and "HEALTH CARE STAFF."

3.      "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including a Blackberry or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

4.      "COMPLAINTS" means any DOCUMENTS, formal or informal, REGARDING specific or general problems, issues, deficiencies, unanswered questions, challenges, shortcomings, disagreements, or requests brought to the attention of the ADC or any ADC STAFF.

LEGAL27578843.1

1      5.    "CONTRACTOR" means "LOCUM TENENS CONTRACTOR" and

2    "SPECIALTY CONTRACTOR."

3      6.    "CORRECTIONAL STAFF" means custody staff employed or paid by the

4    ADC to serve in a security or operational capacity.

5      7.    "DENTAL" means involving or relating to the oral cavity and maxillofacial

6    area, including the lips, mouth, tongue, teeth, gums, jaw, and oral musculature, as well as

7    the adjacent and associated areas.

8      8.    "DENTAL CARE" means the provision of care, including adequate diet, to

9    address the DENTAL needs of a PRISONER, whether those needs arise as a result of

10   injury, illness, disease, or other trauma, or care provided for diagnostic or preventive

11   purposes.

12     9.    "DENTIST" means an individual holding a degree in dental medicine or

13   dental surgery and licensed as a dentist by the Arizona Board of Dental Examiners, who

14   has been hired to work as a dentist at ADC facilities treating PRISONERS.

15     10.   "DESCRIBE" and "DESCRIPTION" means to provide all available

16   INFORMATION.

17     11.   "DOCUMENT" and "DOCUMENTS" have the same scope used in

18   Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing

19   or record of every type and DESCRIPTION and every tangible thing that is or has been in

20   the possession, custody, or control of DEFENDANTS and the ADC, to which they have

21   access, or of which they have knowledge, including, but not limited to, newspaper articles,

22   magazine articles, news articles, correspondence, letters, contracts, files, electronic mail,

23   memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books,

24   pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations,

25   point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices,

26   pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings,

27   maps, reports, surveys, MINUTES, data compilations, and statistical compilations,

28   regardless of whether a particular DOCUMENT is privileged or confidential, and

LEGAL27578843.1

- 2 -

1    regardless of the form of storage (including, but not limited to, paper, microfiche,

2    magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or

3    electronic storage device).   "DOCUMENT" and "DOCUMENTS" includes, but is not

4    limited to, all DOCUMENTS generated by or maintained in the Director's Project

5    Tracking System, official ADC papers, and the ADC's intranet.

6         12.    "ENTRY-LEVEL PRACTITIONERS" means unlicensed persons who

7    provide HEALTH CARE to PRISONERS at the ADC subordinate to MID-LEVEL

8    PRACTITIONERS or HEALTH CARE CLINICIANS.

9         13.    "GRIEVANCES" means COMPLAINTS or requests made by PRISONERS

10   to the ADC, and the exhaustion of claims raised or stated therein.

11        14.    "HEALTH CARE" means the provision of care, including adequate diet, to

12   address the mental health, medical, or dental needs of a PRISONER, whether those needs

13   arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic

14   or preventive purposes.

15        15.    "HEALTH CARE CLINICIANS" means persons independently licensed to

16   provide HEALTH CARE to PRISONERS at the ADC facilities, including but not limited

17   to M.D., D.O., D.D.S., and Ph.D. credentialed staff.

18        16.    "HEALTH CARE STAFF" means all staff employed or paid by the ADC,

19   LOCUM TENENS CONTRACTORS, or SPECIALTY CONTRACTORS (other than

20   CORRECTIONAL STAFF) who are responsible for providing HEALTH CARE to ADC

21   PRISONERS, including but not limited to HEALTH CARE CLINICIANS, MID-LEVEL

22   PRACTITIONERS,   ENTRY-LEVEL   PRACTITIONERS,   PHARMACISTS,   and

23   administrative and support staff.

24        17.    "HEALTH CARE STAFFING" means the provision of HEALTH CARE

25   STAFF to provide HEALTH CARE.

26        18.    "HNR POLICIES AND PROCEDURES" means policies, procedures, or

27   practices, whether written or established through custom or use, REGARDING HNR

28   submissions by PRISONERS, including but not limited to the distribution, disposal,

1  processing, rejection of, responses to, provision of HEALTH CARE pursuant to, and

2  exhaustion of claims raised by such submissions.  This includes policies, procedures, or

3  practices that are in draft form and have not been approved and/or implemented.

4        19.   "IDENTIFY" and "IDENTIFICATION" with respect to (a) a PRISONER or

5  former PRISONER, means to state the PRISONER'S full name, ADC number, date of

6  birth, current or most recent mental health score (MH-1 through MH-5), medical score

7  (M-1 through M-5), public risk score, institutional risk score, and current housing location

8  (if still in ADC custody) or last known address and telephone number (if no longer in

9  ADC custody); (b) a person other than a PRISONER or former PRISONER, means to

10  state the person's full name and specify whether or not the person is or has been an ADC

11  STAFF member, and if so, to state the staff member's position title, facility location, work

12  schedule, responsibilities, date ADC employment began, date ADC employment

13  terminated, dates of any changes in position titles or responsibilities, DESCRIPTIONS of

14  any changes in position titles or responsibilities and, if the person is not currently

15  employed by ADC, the person's last known address and telephone number; and (c) a

16  third-party CONTRACTOR or entity means to state the name of the CONTRACTOR or

17  entity, the type of entity (*e.g.*, corporation, partnership, etc.); its address and telephone

18  number; and any persons YOU are aware of who acted on behalf of that CONTRACTOR

19  or entity with respect to the events at issue in the discovery request; (d) IDENTIFY in any

20  other context means to provide as much INFORMATION REGARDING the thing to be

21  identified as is in the possession of DEFENDANTS or the ADC.

22        20.   "INFORMATION" means any knowledge YOU have, any evidence of any

23  type, any facts of which YOU are aware and any inferences or speculation of which YOU

24  are aware, all regardless of the source.  When INFORMATION YOU provide is based

25  solely on inference or speculation, specifically so state in YOUR response.  When

26  providing INFORMATION, provide the names of involved individuals, actions relevant

27  to the requested INFORMATION, dates and times when known, locations, and any other

28  knowledge YOU have about the subject of the discovery request.  When asked to provide

LEGAL27578843.1

- 4 -

1   INFORMATION about one or more individuals, IDENTIFY the individual or individuals

2   and provide any other INFORMATION YOU have about such person or persons.

3       21.   "ISOLATION" means confinement in a cell for 22 hours or more each day;

4   confinement in Eyman-Special Management Unit ("SMU") 1, Eyman-Browning Unit,

5   Florence-Central Unit, Florence-Kasson Unit, or Perryville-Lumley Special Management

6   Area ("SMA"); or confinement in a Complex Detention Unit ("CDU").

7       22.   "LOCUM TENENS CONTRACTOR" means any person or entity

8   contracting with ADC to provide HEALTH CARE to ADC PRISONERS.

9       23.   "MENTAL HEALTH WATCH" means any housing or other status in

10   which a PRISONER is subject to increased observation by ADC STAFF or

11   CONTRACTORS for mental health reasons.

12       24.   "MID-LEVEL PRACTITIONERS" means licensed professionals who

13   provide HEALTH CARE to PRISONERS at the ADC under supervision by HEALTH

14   CARE CLINICIANS.

15       25.   "MINUTES" means notes or any other recording reflecting the content of a

16   meeting, whether written contemporaneously with or subsequent to the meeting.

17       26.   "PHARMACIST" means a professional who practices pharmacy.

18       27.   "POLICIES AND PROCEDURES" means policies, procedures, criteria, or

19   practices, whether written or established through custom or use, including but not limited

20   to policy and procedure manuals, directors' orders, protocols, directives, flowcharts,

21   institution post orders, and any other DOCUMENTS designed to direct the actions of

22   ADC personnel, ADC CONTRACTORS, and/or PRISONERS.

23       28.   "POLICY" means policies, procedures, criteria, or practices, whether

24   written or established through custom or use, including but not limited to policy and

25   procedure manuals, directors' orders, protocols, directives, flowcharts, institution post

26   orders, and any other DOCUMENTS designed to direct the actions of ADC personnel,

27   ADC contractors, and/or PRISONERS.

28       29.   "PRISONER" means a person incarcerated by the ADC.

LEGAL27578843.1

- 5 -

30.   "PROGRAMS" means a program made available to prisoners in the custody of ADC, including but not limited to rehabilitative, therapeutic, educational, vocational, substance abuse treatment, recreational, re-entry, and faith-based programs; furlough, temporary release, compassionate release, and early release programs; and prison job assignments whether or not for pay.

31.   "REGARDING" or "REGARDED" to any given subject matter means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers to, relates to, responds to, states, summarizes, or is in any way relevant to the particular subject matter identified.

32.   "RESPONSE DATE" means date upon which YOU respond to these discovery requests, or, if YOU amend or supplement YOUR response, the date of YOUR amendment or supplement.

33.   "RESTRICTED DIET" means A medical or soft mechanical diet prescribed pursuant to the Diet Reference Manual (ADC040582-609). For purposes of this document, the term does not include religious diets.

34.   "SPECIALTY CONTRACTOR" means any person or entity contracting with the ADC to provide HEALTH CARE to PRISONERS who is not a LOCUM TENENS CONTRACTOR.

35.   "SPDS" means Smallwood Prison Dental Services, and its corporate predecessors or successors, employees, subordinates, CONTRACTORS, agents, and attorneys.

36.   "SUFFICIENT TO SHOW" means demonstrating or evidencing complete INFORMATION on the requested topic, without the need to produce every DOCUMENT REGARDING the topic.

37.   "TELEPSYCHIATRY" means a session in which a psychiatrist at a remote location speaks with an ADC PRISONER via video link.

38.   "YOU," "YOUR," "YOURSELF," and "DEFENDANTS" means Defendants Charles Ryan and Richard Pratt, and their predecessors, successors, employees, subordinates, CONTRACTORS, agents, and attorneys.

**INSTRUCTIONS**

1.   YOU are required to furnish all DOCUMENTS in YOUR possession, custody, or control, including those DOCUMENTS that are in YOUR possession, custody, or control in the normal course of YOUR employment obligations, and those in the possession, custody or control of YOUR (1) employer; (2) consultants; (3) attorneys; (4) representatives; (5) agents; or (6) any other person acting or purporting to act on YOUR behalf or at YOUR direction, whether doing so directly or at the direction of YOUR subordinates.   Possession, custody, or control includes DOCUMENTS stored in electronic form by third party service providers but accessible to the Defendant, including but not limited to email accounts, FTP servers, portable storage media such as USB drives, cloud storage services such as Dropbox or SharePoint , and online workspaces such as WebEx.

2.   All non-identical copies of every DOCUMENT whose production is sought shall be separately produced.

3.   Each request herein constitutes a request for DOCUMENTS in their entirety, with all enclosures and attachments, and without abbreviation, redaction, or expurgation.   DOCUMENTS attached to each other, including but not limited to, by staple, clip, tape, email attachment, or "Post-It" note, should not be separated, although any page on which a Post-It note covers or obscures text on the DOCUMENT should be produced both with and without the Post-It note.   The production must also include, where applicable, any index tabs, file dividers, designations, binder spine labels, or other similar INFORMATION as to the source and/or location of the DOCUMENTS.

4.   DEFENDANTS shall produce any and all drafts and copies of each DOCUMENT that are responsive to any request, including but not limited to copies

1  containing handwritten notes, markings, stamps, or interlineations. The author(s) of all
2  hand-written notes should be identified.

3    5.   YOU shall produce all responsive DOCUMENTS as they have been kept in
4  the ordinary course of business.

5    6.   Responsive DOCUMENTS that exist only in paper form shall be organized
6  as they have been kept in the ordinary course of business and shall be produced according
7  to the following protocol:

8        a.   Paper DOCUMENTS shall be scanned and produced in TIFF image
9             form at a resolution sufficient to enable the generation of searchable
10            text using Optical Character Recognition ("OCR").

11   7.   Responsive DOCUMENTS that exist in electronic form, even if such
12  DOCUMENTS also exist in paper form, shall be produced in electronic form according to
13  the following protocol:

14       a.   Electronic DOCUMENTS shall be produced electronically as single
15            page, uniquely and sequentially numbered Group IV TIFF image
16            files of not less than 300 dots per inch resolution, together with
17            DOCUMENT level load files wherein the full text was extracted
18            directly from the native file where possible.

19       b.   For files produced in TIFF image form, each page of a produced
20            DOCUMENT shall have a legible, unique production number
21            electronically "burned" onto the TIFF image in such a manner that
22            INFORMATION from the source DOCUMENT is not obliterated,
23            concealed, or interfered with, preferably in the lower right corner of
24            the DOCUMENT. The production number shall contain at least six
25            digits. There shall be no other legend or stamp placed on the
26            DOCUMENT image, unless a DOCUMENT qualifies for
27            confidential treatment pursuant to the terms of any protective order in
28            this matter, or if the DOCUMENT requires redaction. In the case of

LEGAL27578843.1

- 8 -

confidential materials as defined by any protective order in this
matter, any applicable designation may be "burned" onto the
DOCUMENT's image at a location that does not obliterate or
obscure any INFORMATION from the source DOCUMENT,
preferably in the lower left corner.

c.   Each DOCUMENT image file shall be named with the unique
production number of the page of the DOCUMENT in question,
followed by the extension ".tif". File names should not be more than
20 characters long or contain spaces.

d.   For files produced in TIFF image format, each page of a
DOCUMENT shall be electronically saved as an image file.  If a
DOCUMENT is more than one page, the unitization of the
DOCUMENT and any attachments and/or affixed notes shall be
maintained as they existed in the original DOCUMENT.

e.   TIFF images shall be accompanied by a standard load file containing
the metadata and other fields identified in Paragraph 7(j) of these
Instructions, below.  The load file shall be produced in one of the
following industry-standard formats:  (1) Concordance delimited file
(".dat");  (2) comma-separated value file (".csv"); or (3) TAB
delimited file.  TIFF images shall also be accompanied by either an
Opticon delimited cross-reference file (".opt") or IPRO View LFP
comma-delimited file showing DOCUMENT breaks and appropriate
DOCUMENT unitization.

f.   In addition to TIFF images, each production of electronic
DOCUMENTS shall include searchable text files corresponding to
the TIFF images for each DOCUMENT. The full text of each native
electronic DOCUMENT, excluding redacted DOCUMENTS, shall
be extracted directly from the native file and produced in a

1     DOCUMENT-level related text file (the "Extracted Text"). The
2     Extracted Text shall be provided in searchable ASCII text format (or
3     Unicode text format if the text is in a foreign language) and shall be
4     named with the unique production number of the first page of the
5     corresponding TIFF DOCUMENT followed by the extension ".txt".
6     YOU shall also perform OCR on certain types of non-text based
7     static image ESI, such as native PDF image files, and produce the
8     corresponding DOCUMENT-level related text files. Searchable text
9     files shall be generated from Extracted Text where available.

10   g.   DOCUMENTS shall be produced on optical media (CD or DVD) or
11     external hard drives or similar, readily accessible electronic media
12     (the "Production Media"). Each piece of Production Media shall
13     IDENTIFY a production number corresponding to the party and
14     production with which the DOCUMENTS on the Production Media
15     are associated (e.g., "RYAN 001"), as well as the volume of the
16     material in that production (e.g., "- 001", "-002"). For example, if
17     the first production wave by YOU comprises DOCUMENT images
18     on three hard drives, YOU shall label each hard drive in the
19     following manner: "RYAN 001-001", "RYAN 001-002", and
20     "RYAN 001-003." The face of each piece of Production Media shall
21     also IDENTIFY: (1) the production date; and (2) the production
22     number range of the materials contained on the Production Media.

23   h.   Presentation DOCUMENTS (such as Microsoft PowerPoint
24     DOCUMENTS) shall be produced with one slide per page together
25     with any "Speaker's Notes" or similar pages appended to, or
26     otherwise associated with, each slide. Presentation DOCUMENTS
27     shall also be produced according to all other applicable Instructions
28     set forth in this set of requests.

i.   Unless redaction is required, spreadsheet DOCUMENTS (such as Microsoft Excel DOCUMENTS) shall be produced in native format, together with a single page TIFF placeholder bearing the legend "Native File Produced" and load files containing the agreed upon metadata, extracted text, production numbers and any applicable confidentiality labels as described above.  If redaction is required, then spreadsheets shall be produced in TIFF image format as set forth above.

j.   For all DOCUMENTS for which metadata exists, the load files described above shall be produced including the following fields:

| Fields for all DOCUMENTS | Description |
|---|---|
| BegProd | Beginning production number assigned to each DOCUMENT |
| EndProd | Ending production number assigned to each DOCUMENT |
| BegAttach | Beginning production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| EndAttach | Ending production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| Custodian | The name of the person or source from which the DOCUMENT was obtained |
| FileName | Original file name |
| FilePath | Original file path |
| DocExt | DOCUMENT type as identified by metadata associated with the native DOCUMENT indicating the extension of the application that created the native DOCUMENT (e.g., .doc, .ppt, etc.) |
| HashValue | The unique identifying value assigned to a DOCUMENT based on hash coding algorithms |
| Author | The person or source that originated the |

| Fields for all DOCUMENTS | Description |
|---|---|
| | DOCUMENT |
| DateCreated | Date that the DOCUMENT was created (as reflected by metadata) |
| LastModifiedDate | Date that the file was last modified (as reflected by metadata) |
| FullText | The path or link to the searchable Extracted or OCR text for a DOCUMENT |
| NativeFile | The path or link to a processed and produced native file, to the extent the production contains native files |
| Confidentiality | The confidentiality designation for the DOCUMENT, as defined by any protective order in this matter |
| **Additional Fields for Email** | **Description** |
| To | All information contained in the "To" field of an email |
| From | All information contained in the "From" field of an email |
| CC | All information contained in the "CC" field of an email |
| BCC | All information contained in the "BCC" field of an email |
| DateSent | Date the email was sent, including month, day and year |
| TimeSent | Time the email was sent, including hour, minute, second and time zone. To the extent this information is already included in the DateSent field in the metadata, YOU need not parse TimeSent as a separate field. |
| DateReceived | Date the email was received, including the month, day and year |
| TimeReceived | Time the email was received, including hour, minute, second and time zone. To the extent this information is already included in the DateReceived field in the metadata, YOU need not parse TimeReceived as a separate field. |
| Subject | Subject or "Re:" line, as stated in the email |

8.    If with respect to any request there are no responsive DOCUMENTS, so state in writing.

9.    The following rules of construction shall be applied herein: (a) the words "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope ; (b) the use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural; (c) the words "any," "all," "each" and "every" all include any, all, each, and every and shall be understood in either their most or least inclusive sense as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; and (d) the use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the DOCUMENT requests all responses that might otherwise be construed to be outside of their scope.

10.    If YOU object to a portion or an aspect of a request, state the grounds for YOUR objection with specificity and respond to the remainder of the DOCUMENT request.  If any DOCUMENTS, or portion thereof, are withheld because YOU claim that such INFORMATION is protected under the attorney-client privilege, work product doctrine, or other privilege or doctrine,   YOU are required to provide a privilege log setting forth the specific basis for the claim of privilege or protection and for each DOCUMENT provide the following:

        a.    the subject matter of the DOCUMENT;

        b.    the title, heading or caption of the DOCUMENT, if any;

        c.    the date appearing on the DOCUMENT or, if no date appears thereon, the date or approximate date on which the DOCUMENT was prepared;

     d.   the type of the DOCUMENT (e.g., whether it is a letter, memorandum, MINUTES of meeting, etc.) and the number of pages of which it consists;

     e.   the identity of the person who signed the DOCUMENT or, if it was not signed, the person who prepared it;

     f.   the identity of each person to whom the DOCUMENT was addressed and the identity of each person to whom a copy thereof was sent; and

     g.   the identity of each person who has custody of a copy of each such DOCUMENT.

11.   If YOU claim that a portion of a DOCUMENT is protected from disclosure for any reason, produce such DOCUMENT with redaction of only the portion claimed to be protected.  When such redactions for privilege or protection are made, YOU shall place a legend similar to "REDACTION – PRIVILEGE" on the copy of the DOCUMENT produced.  All redactions shall also be included on the privilege log described in Instruction #4.

12.   If YOU object that a request is vague or ambiguous, IDENTIFY the objectionable aspect of the request.

13.   If a request cannot be responded to in full, YOU shall respond to the extent possible, specify the reason for YOUR inability to respond to the remainder, and state whatever INFORMATION or knowledge YOU have REGARDING the portion to which YOU have not responded.

14.   If any DOCUMENT called for by these requests has been destroyed, lost, discarded, or is otherwise no longer in YOUR possession, custody, or control, IDENTIFY such DOCUMENT as completely as possible, and specify the date of disposal of the DOCUMENT, the manner of disposal, the reason for disposal, the person authorizing disposal, and the person disposing of the DOCUMENT.

15.     These requests are sequentially numbered and each numbered paragraph constitutes a single request.  Defined terms may be capitalized for the convenience of the parties; the definitions herein apply whether or not the term is capitalized.

16.     Except where expressly stated, these requests are not limited in any way by geography.

17.     These requests shall be deemed continuing in nature in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.  Supplemental responses are required if additional responsive INFORMATION is acquired or discovered between the time of responding to this request and the time of trial.

18.     Unless otherwise specified, the relevant time period, and the period for which YOU are required to provide responsive DOCUMENTS, is from and including January 1, 2011  up to and including the RESPONSE DATE.

## DOCUMENTS REQUESTED

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS, other than DOCUMENTS relating or referring to individual PRISONERS, REGARDING the issuance and distribution of RESTRICTED DIETS to PRISONERS.   This request includes, but is not limited to, any formal or informal POLICIES AND PROCEDURES, any DOCUMENTS relating to any training or guidance provided to ADC, Corizon, or SPDS employees REGARDING prescribing or delivering   RESTRICTED   DIETS   to   PRISONERS,   and   any   DOCUMENTS REGARDING  the  enforcement  or  quality  control  of  any  POLICIES  AND PROCEDURES relating to RESTRICTED DIETS.

**RESPONSE TO REQUEST NO. 1:**

1    **REQUEST FOR PRODUCTION NO. 2:**

2         All updated POLICIES AND PROCEDURES, including but not limited to training

3    materials, that ADC has received from SPDS.

4    **RESPONSE TO REQUEST NO. 2:**

5

6

7

8    **REQUEST FOR PRODUCTION NO. 3:**

9         The "Standing Medical Order: Toothache/Dental Abscess" referenced in

10   Paragraph 3.0 of Procedure 787 in The Dental Services Technical Manual (January 1,

11   2010).

12   **RESPONSE TO REQUEST NO. 3:**

13

14

15

16   **REQUEST FOR PRODUCTION NO. 4:**

17        Any and all HEALTH CARE records for the PRISONERS listed in Exhibit A

18   attached to this document, entitled "List of Health Care Records Requested (RFP No. 4)."

19   **RESPONSE TO REQUEST NO. 4:**

20

21

22

23   **REQUEST FOR PRODUCTION NO. 5:**

24        The master file for the PRISONERS listed in Exhibit B attached to this document,

25   entitled "List of Master Files Requested (RFP No. 5)."

26   **RESPONSE TO REQUEST NO. 5:**

27

28

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS and POLICIES AND PROCEDURES REGARDING PROGRAMS provided to PRISONERS in ISOLATION.

**RESPONSE TO REQUEST NO. 6:**

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS REGARDING heat or humidity measurements taken in ADC housing units from June 1, 2013 to present.

**RESPONSE TO REQUEST NO. 7:**

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS REGARDING ADC POLICIES AND PROCEDURES designed to protect PRISONERS from heat injury.

**RESPONSE TO REQUEST NO. 8:**

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS REGARDING housing transfers of ADC PRISONERS to protect them from heat injury from June 1, 2013 to present.

**RESPONSE TO REQUEST NO. 9:**

LEGAL27578843.1

- 17 -

1

2    **REQUEST FOR PRODUCTION NO. 10:**

3         All DOCUMENTS REGARDING incidents of dehydration or any other heat-

4    related illness or injury to ADC PRISONERS from June 1, 2013 to present.

5    **RESPONSE TO REQUEST NO. 10:**

6

7

8

9    **REQUEST FOR PRODUCTION NO. 11:**

10        All DOCUMENTS REGARDING the malfunction or breakdown of ADC climate

11   control systems from June 1, 2012 to present.

12   **RESPONSE TO REQUEST NO. 11:**

13

14

15

16   **REQUEST FOR PRODUCTION NO. 12:**

17        All DOCUMENTS REGARDING self-harm incidents by ADC PRISONERS, by

18   institution and custody level, from June 1, 2012 to present.   (*See* 2/12/13 email from

19   Charles Ryan to ADC staff, stating that ADC tracks self-harm incidents by institution and

20   custody level).

21   **RESPONSE TO REQUEST NO. 12:**

22

23

24

25   **REQUEST FOR PRODUCTION NO. 13:**

26        All DOCUMENTS REGARDING mental health group PROGRAMS scheduled

27   from June 1, 2012 to present.

28

LEGAL27578843.1

- 18 -

1   **RESPONSE TO REQUEST NO. 13:**

2

3

4

5   **REQUEST FOR PRODUCTION NO. 14:**

6        All DOCUMENTS REGARDING mental health group PROGRAMS actually held

7   from June 1, 2012 to present.

8   **RESPONSE TO REQUEST NO. 14:**

9

10

11

12  **REQUEST FOR PRODUCTION NO. 15:**

13       All  DOCUMENTS  REGARDING  PRISONERS'  attendance  at  mental  health

14  group PROGRAMS from June 1, 2012 to present.

15  **RESPONSE TO REQUEST NO. 15:**

16

17

18

19  **REQUEST FOR PRODUCTION NO. 16:**

20       All  DOCUMENTS  REGARDING  the  cancellation  of  scheduled  mental  health

21  group PROGRAMS from June 1, 2012 to present.

22  **RESPONSE TO REQUEST NO. 16:**

23

24

25

26  **REQUEST FOR PRODUCTION NO. 17:**

27       All DOCUMENTS REGARDING the "detailed information on ADC's operations"

28  provided to Rep. Chad Campbell.  (*See* Mary K. Reinhart, Campbell calls for Arizona

1    prison    chief    to    resign,    Arizona    Republic,    July    23,    2013,

2    http://www.azcentral.com/news/politics/articles/20130723campbell-calls-arizona-prison-

3    chief-resign.html, attached to this document as Exhibit C).

4    **RESPONSE TO REQUEST NO. 17:**

5

6

7

8    **REQUEST FOR PRODUCTION NO. 18:**

9        The formulary governing prescription of medications to ADC PRISONERS.

10   **RESPONSE TO REQUEST NO. 18:**

11

12

13

14   **REQUEST FOR PRODUCTION NO. 19:**

15       All DOCUMENTS REGARDING the POLICIES AND PROCEDURES for

16   HEALTH CARE CLINICIANS to request a non-formulary medication.

17   **RESPONSE TO REQUEST NO. 19:**

18

19

20

21   **REQUEST FOR PRODUCTION NO. 20:**

22       All POLICIES AND PROCEDURES governing the use of TELEPSYCHIATRY

23   in ADC institutions.

24   **RESPONSE TO REQUEST NO. 20:**

25

26

27

28

1   **REQUEST FOR PRODUCTION NO. 21:**

2        All schedules and other DOCUMENTS REGARDING the provision of

3   TELEPSYCHIATRY from June 1, 2012 to present.

4   **RESPONSE TO REQUEST NO. 21:**

5

6

7

8   **REQUEST FOR PRODUCTION NO. 22:**

9        All mental health screening forms used with PRISONERS arriving at an ADC

10  reception center.

11  **RESPONSE TO REQUEST NO. 22:**

12

13

14

15  **REQUEST FOR PRODUCTION NO. 23:**

16       All POLICIES AND PROCEDURES governing the provision of interpreters for

17  medical, mental health, or DENTAL encounters for PRISONERS who do not speak

18  English.

19  **RESPONSE TO REQUEST NO. 23:**

20

21

22

23  **REQUEST FOR PRODUCTION NO. 24:**

24       All DOCUMENTS REGARDING ADC's POLICIES AND PROCEDURES on

25  monitoring the side effects of psychotropic medications.

26  **RESPONSE TO REQUEST NO. 24:**

27

28

LEGAL27578843.1

- 21 -

1

2   **REQUEST FOR PRODUCTION NO. 25:**

3       All HEALTH CARE records and portions thereof that were identified for copying

4   during Plaintiffs' expert inspections.

5   **RESPONSE TO REQUEST NO. 25:**

6

7

8

9   **REQUEST FOR PRODUCTION NO. 26:**

10      All photographs that were taken during Plaintiffs' expert inspections.

11  **RESPONSE TO REQUEST NO. 26:**

12

13

14

15  **REQUEST FOR PRODUCTION NO. 27:**

16      All DOCUMENTS REGARDING insect, pest, and vermin eradication measures

17  conducted in ADC housing units from January 1, 2013 to the present.

18  **RESPONSE TO REQUEST NO. 27:**

19

20

21

22  **REQUEST FOR PRODUCTION NO. 28:**

23      All DOCUMENTS REGARDING ADC POLICIES AND PROCEDURES

24  designed to eradicate insects, pests, and vermin in ADC housing units.

25  **RESPONSE TO REQUEST NO. 28:**

26

27

28

LEGAL27578843.1

- 22 -

1  **REQUEST FOR PRODUCTION NO. 29:**

2       All DOCUMENTS REGARDING ADC POLICIES AND PROCEDURES for

3  issuing clothing to PRISONERS in ISOLATION, including any variations in clothing

4  issued by unit, a PRISONER'S programming "phase" or "stage" level, and season.

5  **RESPONSE TO REQUEST NO. 29:**

6

7

8

9  **REQUEST FOR PRODUCTION NO. 30:**

10       All DOCUMENTS REGARDING the "phase" or "stage" levels in the

11  ISOLATION units, including but not limited to, any orientation materials issued to

12  PRISONERS in the ISOLATION units, and any materials used by ADC STAFF to

13  determine a PRISONER'S progression or regression through a "phase" or "stage" in the

14  ISOLATION units.

15  **RESPONSE TO REQUEST NO. 30:**

16

17

18

19  **REQUEST FOR PRODUCTION NO. 31:**

20       All monthly PROGRAM schedules in the ISOLATION units from January 1, 2013

21  to the present.

22  **RESPONSE TO REQUEST NO. 31:**

23

24

25  **REQUEST FOR PRODUCTION NO. 32:**

26       All waiting lists of PRISONERS in ISOLATION who are currently eligible for a

27  job but who do not hold a job.

28

1    **RESPONSE TO REQUEST NO. 32:**

2

3

4

5    **REQUEST FOR PRODUCTION NO. 33:**

6         All DOCUMENTS REGARDING the schedules for cleaning the ISOLATION

7    units.

8    **RESPONSE TO REQUEST NO. 33:**

9

10

11

12   **REQUEST FOR PRODUCTION NO. 34:**

13        All DOCUMENTS REGARDING ADC POLICIES AND PROCEDURES for

14   cleaning cells in ISOLATION and MENTAL HEALTH WATCH between occupants.

15   **RESPONSE TO REQUEST NO. 34:**

16

17

18

19   **REQUEST FOR PRODUCTION NO. 35:**

20        All DOCUMENTS REGARDING the number of classification custody

21   discretionary overrides classifying PRISONERS into or out of maximum custody from

22   January 1, 2013 to the present.

23   **RESPONSE TO REQUEST NO. 35:**

24

25

26

27

28

LEGAL27578843.1

- 24 -

1   **REQUEST FOR PRODUCTION NO. 36:**

2      All DOCUMENTS REGARDING medical specialty services provided on-site at

3   prison complexes, including but not limited to the schedules and names of PRISONERS

4   seen on-site for the past year.

5   **RESPONSE TO REQUEST NO. 36:**

6

7

8

9   **REQUEST FOR PRODUCTION NO. 37:**

10      All DOCUMENTS REGARDING medical specialty services provided through

11   telemedicine at prison complexes, including but not limited to the schedules and names of

12   PRISONERS seen via telemedicine for the past year.

13   **RESPONSE TO REQUEST NO. 37:**

14

15

16

17   **REQUEST FOR PRODUCTION NO. 38:**

18      All DOCUMENTS REGARDING the menus of the general population, restricted

19   movement, suicide/MENTAL HEALTH WATCH, and RESTRICTED DIETS, including

20   for each prison, documents for the month of July 2013 showing the number of each diet

21   provided and the menus for each type of diet described in the Diet Reference Manual.

22   **RESPONSE TO REQUEST NO. 38:**

23

24

25

26   **REQUEST FOR PRODUCTION NO. 39:**

27      All DOCUMENTS REGARDING the number of PRISONERS who are provided

28   therapeutic or soft food diets, as tracked by the contracted provider of food services at

LEGAL27578843.1

eew

1 ADC facilities, as described in Defendants' response to Verduzco's First Request for

2 Admissions, Request for Admission No. 227.

3 **RESPONSE TO REQUEST NO. 39:**

4

5

6

7 **REQUEST FOR PRODUCTION NO. 40:**

8     All DOCUMENTS showing the timeliness of chronic care appointments for

9 PRISONERS identified as having chronic medical conditions.

10 **RESPONSE TO REQUEST NO. 40:**

11

12

13

14 **REQUEST FOR PRODUCTION NO. 41:**

15     All DOCUMENTS REGARDING the timeliness of off-site specialty care

16 appointments for the past year.

17 **RESPONSE TO REQUEST NO. 41:**

18

19

20

21 **REQUEST FOR PRODUCTION NO. 42:**

22     Any blank forms used by health care practitioners to order special diets or diet

23 supplements.

24 **RESPONSE TO REQUEST NO. 42:**

25

26

27

28

1    **REQUEST FOR PRODUCTION NO. 43:**

2         The entire contents of the binder marked ADC diet reference manual, as seen by

3    Dr. Wilcox at the Yuma complex in the Cheyenne unit.

4    **RESPONSE TO REQUEST NO. 43:**

5

6

7

8    **REQUEST FOR PRODUCTION NO. 44:**

9         The two-page "educational handout" shown to Dr. Wilcox during his tour of the

10   Yuma complex and referred to in the ADC diet reference manual seen in the Yuma

11   complex.

12   **RESPONSE TO REQUEST NO. 44:**

13

14

15

16   **REQUEST FOR PRODUCTION NO. 45:**

17        The contents of the binder containing log entries of HNRs that was viewed by Dr.

18   Wilcox at the Yuma complex, Cocopah unit. A computer print-out that corresponds to the

19   HNRs listed in the binder, documenting the dates and/or descriptions of any actions taken

20   in response to the HNRs.

21   **RESPONSE TO REQUEST NO. 45:**

22

23

24

25   **REQUEST FOR PRODUCTION NO. 46:**

26        The document shown to Dr. Wilcox at the Yuma complex setting forth a "diet log"

27   from La Paz North and South, listing names and numbers of prisoners, types of diets or

28   supplements, and start and end dates.

1   **RESPONSE TO REQUEST NO. 46**:

2

3

4

5   **REQUEST FOR PRODUCTION NO. 47**:

6       The NETS manual viewed by Dr. Wilcox during pill call on the Cheyenne unit of

7   the Yuma complex with nursing SOAP notes.

8   **RESPONSE TO REQUEST NO. 47**:

9

10

11

12   **REQUEST FOR PRODUCTION NO. 48**:

13       Produce data kept by the ADC that tracks the following across units, prisons,

14   specific populations or the ADC in its entirety:

15       1.   Compliance and/or non-compliance  with ADC's Mental Health Policies.

16       2.   Compliance and/or non-compliance with ADC's Dental Policies.

17       3.   Compliance and/or non-compliance with ADC's Medical Care Policies.

18       4.   Compliance and/or non-compliance  with the enhanced health monitoring of

19           seriously mentally ill (SMI) inmates that requires that each such inmate is to

20           be evaluated every 30 days as set forth in Defendant Charles Ryan's First

21           Supplemental Answers to Plaintiff Dustin Brislan's First Set of Requests for

22           Admissions, Response to Request No. 1.

23       5.   Compliance and/or non-compliance with the ADC pre-requirement that each

24           prisoner receive a minimum of six hours per week of exercise time unless

25           prohibited by a legitimate security need.

26       6.   Compliance and/or non-compliance with the ADC policy that requires a

27           face-to-face contact with psychiatric staff, including either a psychiatrist of

28           mental health professional in consultation with a psychiatrist in order for a

1        prisoner to renew psychotropic medication.

2        7.      The number of prisoners who meet with a psychiatric provider on a daily,

3                weekly, monthly quarterly or annual basis.

4        8.      The number of prisoners prescribe psychotropic medication.

5        9.      The number of prisoners placed in mental health restraints or a restraint

6                chair.

7        10.     The number and/or type of 911 calls placed relating to prisoner health care.

8        11.     Any aspect of suicides by prisoners.

9        12.     Actual wait times for any type of medical treatment(s) or appointment(s).

10   **RESPONSE TO REQUEST NO. 48:**

11

12

13

14   **REQUEST FOR PRODUCTION NO. 49:**

15        Produce copies of any televised material that you will contend at trial at trial is

16   relevant to the class claims and an adequate alternative to in person care.

17   **RESPONSE TO REQUEST NO. 49:**

18

19

20

21   **REQUEST FOR PRODUCTION NO. 50:**

22        For the following medical records, produce all HNRs from January 1, 2009 to present, the

23   entire section for "dental," and all documents in the consents/refusals section since January 1,

24   2009.

25                Merrick, JD 99252
                  Heser, Glen 42693
26                Minnis, Greg 155351
                  Conroy, Raymond 13179
27                Leon, Michael 61657
                  Douglas, Jeff 58263
28                Nevarez, Arturo 228792

LEGAL27578843.1
                                                    - 29 -

1           Winkler, Jesse 259742
        Schwartz, Thomas  64805
2           Milburn, Matthew 45655
        Garcia, Maryann 105507
3           Kapus, Brook 180853
        Koehler, Riki 106735
4           Rogers, Verna 147287
        Shears, Tana 253471
5           Haddock, Kenneth 205997
        Rogowski, Daniel 108202
6           O'Rourke, William 25281
        Sharp, David 194939
7           Worley, Glenn 257008
        Bozzo, Blaine 207036
8           Shaw, Carlos 214336
        Fulilangi, Ake 243355
9           Rivas, Carlos 109759
        Dossett, Gregory 56282
10          Cruz, Samuel 262667
        Brumm, Tony 59088
11          Howarth, Scott 261299
        Bustamante, Mario 243426
12          Medina, Ernesto 235957
        Davidson, Stephen 209199

**RESPONSE TO REQUEST NO. 50:**

**REQUEST FOR PRODUCTION NO. 51:**

To the extent YOU deny or otherwise fail to admit any request in Plaintiff Desiree Licci's First Set of Requests for Admission, all DOCUMENTS supporting such denial or failure to admit.

**RESPONSE TO REQUEST NO. 51:**

**REQUEST FOR PRODUCTION NO. 52:**

To the extent YOU deny or otherwise fail to admit any request in Plaintiff Robert Gamez's First Set of Requests for Admission, all DOCUMENTS supporting such denial or failure to admit.

LEGAL27578843.1

- 30 -

1   **RESPONSE TO REQUEST NO. 52:**

2

3

4

5   Dated:  August 13, 2013         **JONES DAY**

6                       By:  s/ Sophia Calderón

7                       Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*

8                       Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*

9                       555 California Street, 26th Floor
San Francisco, California 94104

10                    Telephone:  (415) 875-5712
Email:    cnmitchell@jonesday.com

11                                dkiernan@jonesday.com
                                scalderon@jonesday.com

12                                  srauh@jonesday.com

13                    *Admitted *pro hac vice*

14                    John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*

15                    **JONES DAY**
717 Texas Street

16                    Houston, Texas 77002
Telephone:  (832) 239-3939

17                    Email:    jlwilkes@jonesday.com
                                tfreeman@jonesday.com

18                    *Admitted *pro hac vice*

19                    Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*

20                    **JONES DAY**
222 East 41 Street

21                    New York, New York 10017
Telephone:  (212) 326-3498

22                    Email:    kmamedova@jonesday.com
                                jkmessina@jonesday.com

23

24                    *Admitted *pro hac vice*

25

26

27

28

LEGAL27578843.1

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:    dpochoda@acluaz.org
          kflood@acluaz.org
          jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
          ahardy@prisonlaw.com
          snorman@prisonlaw.com
          ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:    dfathi@npp-aclu.org
          afettig@npp-aclu.org
          aquereshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

1                                           

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:   dbarr@perkinscoie.com
        agerlicher@perkinscoie.com
        keidenbach@perkinscoie.com
        jhgray@perkinscoie.com
        mdumee@perkinscoie.com

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

LEGAL27578843.1

- 33 -

# EXHIBIT
# A

EXHIBIT A

LIST OF HEALTH CARE RECORDS REQUESTED (RFP No. 4)

I.    **Request for Inspection of Most Recent Volume:**

    A.    **Prisoners at ASPC-Florence (previously listed on expert tour set up letter)**

        Addis, Gary, #246793
        Akridge, Rodney, #84478
        Alvarado-Montez, George, #241621
        Aranda, Guadalupe, #113047
        Betterton, Trenton, #277788
        Chavez, Marco, #187239
        Cheser, Joseph, #158106
        Chumbler, Jason, #213303
        Cordova, Gilbert, #173352
        Coronado, Pete, #33329
        Cruz, Hipolito, #175323
        Dehe, Manfred, #269783
        Delgado, Phillip, #74329
        Dose, Anthony, #197106
        Everley, Chris, #203114
        Faulkner, Donald, #252682
        Feltner, Richard, #91975
        Gutierrez, Manuelito, #139928
        Haley, James, #75188
        Hampton, Darryl, #225275
        Harris, John, #177765
        Harrison, Charles, #82360
        Hernandez, Ricardo, #35326
        Hildenbrand, Richard, #140990
        Hitchcock, James, #177921
        Homer, Kevin, #180025
        Jenkins, Christopher, #118514
        Johnson, Richard, #81442
        Jordan, Walter, #78789
        Koehler, William, #165210
        Korte, Damon, #213356
        Leon, Miguel, #201494
        Lopez, Bruno, #31390
        Martin, David, #217317
        Martinez, Salvador, #208833
        Maxwell, Christopher, #158586
        Montoya, Joshua, #208217
        Mushatt, Dythanyl, #186772
        Nava, Conrad, #192735

Nez, Frankie, # 257870
Pearson, Matthew, #199279
Pemberton, Joseph, #83807
Perkins, Michael, #269919
Porter, Christopher, #128972
Puckett, Ricky, #129580
Ree, John, #172999
Rios, Federico, #199480
Robinson, Elvia, #52352
Sanchez-Perez, Jorge, #235024
Shelley, William, #259371
Skaggs, Gary, #216765
Smith, Gary, #267300
Southworth, Shawn, #257109
Steah, Kee, #200537
Stewart, Ramon, #208756
Stoeckel, Loren, #261727
Terry, Jamie, #268085
Williams, Berry, #267365

**B.     Prisoners at ASPC-Winslow (previously listed on expert tour set up letter)**
Anyan, Raymond, #144998
Arrieta, Daniel, #213487
Calhoun, John, #50600
Catalan-Herrera, Jesus, #228670
Corona, Hipolito, #175323
Curley, Herman, #46938
Dorman, Jeff, #275874
Estillore, Shane, #169466
Felix-Pinzon, Efren, #242738
Garcia, Arnold, #273715
Gastelum, Jeff, #85013
Goad, Robert, #67001
Jewitt, Jack, #106380
Khoury, Monier, #236429
Lucero, Luis, #169986
Mason, Justin, #205452
Medina-Moreno, Jesus, #212283
Ortega, David, #139367
Perondi, Angelo, #140844
Ramirez, Juan, #171942
Roby, Elmo, #278727
Ruiz, Jimmy, #246829
Shepherd, Demitiri, #271352
Stonecipher, Curtis, #128431
Vasquez-Remigio, Ivan, #254787

**C.    Prisoners at ASPC-Tucson:**

Aguilar-Hernandez, Ricky, #156468
Allan, Gary, #267802
Alvarado, Jesse, #59906
Anderson, Rusty, #222342
Apolinar, George, #274761
Armbruster, Royce, #48573
Avila, Pedro, #47094
Bernal, Carlos, #258629
Brewster, Jay, #266712
Brilz, Joseph, #204759
Burns, Jeffrey, #231300
Caballero, Alfred, #212756
Charlie, Jimmie, #49134
Clements, Rodney, #156175
Cook, Michael, #71546
Corral, William, #81620
Cosen, Leon, #280937
Day, Richard, #202495
Edwards, Orlando, #207300
Elkanick, Luke, #207211
Fierros, George , #58206
Flagg, Andrew, #270412
Frankeny, Robert, #94785
Frieses, Allen, #280257
Gilbert, Monancco, #278595
Gossett, David, #81630
Graciano, Fernando, #255968
Grooms, Daniel, #243708
Guevara, Raymond, #118362
Guida, Orlando, #256355
Hamilton, Timothy, #257423
Harvey, Thomas, #227207
Hernandez, Dennis, #138137
Hernandez, Ruben, #217451
Herrada, Brian , #277907
Hillard, Shawn, #112970
Hoard, October, #82764
Howard, Jeffrey, #49806
Hubbard, Jerry, #140843
Jackson, Roger, #90740
Jessup, Terrence, #90373
Johnson, Eric, #272454
Johnson, Steven, #235714
Judd, Thomas, #280424

Justice, Ronald, #156637
Katona, Joe, #263092
Kennedy, Josef, #113924
Krick, James, #210691
Lapada, Gildardo, #76778
Larsgard, John, #271552
Lemar, Timothy, #279507
Lewis, Antron, #150014
Lobo, Mark, #269511
MacCool, Finn, #71383
Machir, Daniel, #190972
Marcum, Kenneth, #266043
Mayo, Esteban, #173466
McCallum, Derrick, #186822
McKenzie, Andrew, #251666
Mendiola, Enoc, #253193
Miller, Jesse, #278113
Morales, Christopher, #275737
Pena, Miguel, #234944
Peterson, Terry, #33546
Pierce, Dean, #275891
Plasa, Robert, #268330
Powell, Edward, #89254
Racicot, Robert, #254502
Ramirez, Juan, #192673
Rinninger, Cary, #255275
Roberts, Donovan, #276756
Roberts, Michael, #79600
Rodriguez, George, #163888
Rodriguez, Inez, #276756
Ruben, Danior, #251201
Salazar, Luis, #239752
Salmon, Troy, #1874376
Sanchez, Able, #253543
Shields, Johnny, #103270
Steed, Kenneth, #29145
Sullivan, Joseph, #57766
Sundiata, Adiya, #130798
Swanson, John, #135973
Thompson, Shawn, #134533
Thran, Adam, #257951
Torres, Martin, #158092
Twigg, Daniel, #143625
Ventura, Miguel, #219103
Vigil, Larry, #237346
Virgil, Christopher, #239377

Yeager, James, #191146
Youngkin, Adam, #270150
Zamora, Adrian, #226075

**D.      Prisoners at ASPC-Douglas**
Ahern, Daniel, #275908
Armijo, Santino, #205724
Bell, Richard , #107357
Benjamin, Jordan, #264098
Bosquez, Robert, #253862
Brooks, Robert, #74440
Burleson, Christopher, #269189
Dossett, Gregory, #56282
Durazo, Alberto, #151337
Flores, Jesus, #79529
Gilbreath, James, #271790
Gonzalez, Gerald, #187763
Graves, Thomas, #236947
Gregg, Keith, #267625
Guebara, Manuel, #189248
Hale, Michael, #271242
Hanze, Jason, #254319
Hayes, James, #184856
Herrera, Thomas, #78507
Hodges, William, #235345
Kuczynski, Richard, #120366
Lopez, Manuel, #114556
Lujan, Filemon, #191965
McDermott, Robert, #201659
Mendez, Angel, #169515
Mendoza-Soto, Neftali, #255612
Paroli, Michael, #253162
Patin, Kenneth, #102090
Rincon, Refugio, #230431
Rodgers, Charlie, #264166
Sanchez, Johnny, #55826
Saucedo, Gabriel, #243304
Smith, Steven, #269226
Solano, Domingo, #252150
Tabor, Scott, #114707
Tepeyac, Milton, #252208
Thomas, Steven, #102003
Valenzuela, Efrain, #194176
Williams, Sandran, #165732
Woodhead, Alex, #273347
Zarate, Xavier, #275894

E.    **Prisoners at ASPC-Safford**
       Altamirano, Gilbert, #158831
       Balderaz, Johnn, #78322
       Baldwin, Brandon, #273482
       Bluntschly, Robert, #132654
       Brown, Kyle, #280781
       Bruce, David, #261126
       Caballero, Jose, #224643
       Corona, Johnny, #69014
       Correa, Danny, #66471
       Dockum, Jason, #181945
       Estrada, Samuel, #178235
       Galindo, Conrad, #53806
       Hernandez, Julio, #208823
       Johnson, Marc, #126590
       Juarez-Ruiz, Felix, #269235
       Lewis, Richard, #115135
       Londo, Toommy, #152070
       Lopez-Velasquez, Daniel, #274784
       Loya, Ismael, #275327
       Martinez-Escobedo, Miguel, #265123
       Menendez, Justin, #111590
       Meza, Victor, #251800
       Miranda, Arthur, #92248
       Morales, Ricardo, #119831
       Nevarez, Daniel, #202812
       Quarrels, Leonard, #197011
       Ray, Douglas, #77215
       Rojelio, Alberto, #272836
       Swapp, Darrell, #180667
       Voong, Hung, #136016
       Wallace, Wesley, #87365
       Weeks, Damien, #222215

II.    **Requesting Production of Copies of Most Recent Volume (In Addition to Pages Flagged During Tours)**

A.    **Perryville Prisoners**
       Regan Clarine, 276836
       Chene Manley, 144981
       Kathryn Miller, 277505
       Danette Porter, 255037
       Delma Troy, 226501
       Virginia Anderson, #265961
       Sandra Banks, #276868

Chrystal Cunningham, #224317
Pamela England, #142291
Danielle Fisher #274353
Margaret Ihms, #233157
Arlene Leon, #246975
Norma Lowe, #083360
Lisa Long, #264410
Tiffany McNeish, #194635
Bernadette Deanna Ramirez, #264284
Sheila Manygoats #193693
Tory Lynn Williams #190756
Christina Ann Perez #194526
Tameka Ternoir #212090
Jennifer Wheeler #228570
Danette Taulbee  #273151
Jamie Nicole Cruz #237919
Latonya Cain #172377
Patricia Chavez #228178

**B.**     **Male Prisoners**

**1.     Eyman**
Robert Flemming, #090689
Jason Avery, #269351
Kristopher Kimmerling, #154443
Kendall Pearson, #246092
Robert Lopez, #179081
Luis Saucedo, #170180
Alfred Davis, #183961
Javier Celaya, #238704
Ray Arce #151480
Eric Caicedo-Caneloz #228215
Charles Bade #279059
Edward Joh Sanders #118868
Ryan Tenny #263981
Roger Lagazo #156280
Isaac Valle #126113
Carlos Alvardo #050444
Shaun Harris #198341
Robert Jaramillo #039278
Rocky Collins #040513
Alex Sanchez #235989
Jesse Wozniak #129673
Edward Martinez #121022
Eric Deluca, #153954
Miguel Rivera, #239996

Michael Hernandez, #211872
Leroy Montoya, #238802
Anthony Sepulveda, #222800
Billy Johnson, #225801
Ramon Patino, #134104
Snitty Long, #156721
Dennis Eddy #053476
Tavarus Bell, #254623
Louis Avanzi, #104515
Dustin Varela, #274845
Salvador Sanabira #268794
Victor Martinez, #280392
Robert Johnson, #065631
Danny Schmidt, #254619
Johnny Casillas, #119986
Samuel Sanchez, #242227
Jeremy Price, #162486
Thomas Kane, #060051
Frank Racer, #108121
Royal Sanchez, #049686

**2.      Florence**
William Gobbett, #225268
Jeremy Begay, #273183
Sergio Andrade, #195824
Jack McGee, #220171
George Lamas, #218510
Michael Walliser, #181344
Kemp Horton, #202496
Fermin Vidal, #147564
David Metcalf, #126539
Santino Zanghi, #229344
Joaquin Elizalde-Cota, #280890
Luis Salazar, #239752
Miguel Lopez, #246307
Jose Amayo-Ruiz, #57279
Sampson Hays, #258100
Daniel Allen, #276661
Tristan Rossum, #121496
Ramon Martinez #076688
Leonard Bean #159352
Frank Galo #150621
Willie Johnson #220930
Christopher Pavloff #264480
Zachary MacIssac #252577
Jody Sullivan #182295

Mark Martinez #200893
Frankie Rodriguez #140309
Enrique Garza #248056
Anthony Hand #266711
Robert Dumond #180847
Jesse Mauricio #128194
Jesse Casas #156294
Tony Pruitt #175985
Jason Jones #242070
Chase Blackshear #208994
Wolfgang Ehmke #132189
Charles Johnson #099855
Eric Nelson #157808
Noe Jimenez #239038
Jesse Papanek #180906
Andrew Solorzano #281250
Samuel Wright #207261
David Ruiz #213456
Robert Harmon #251293
Brandon Antonides #153201
Robert Aloia #070520
Nathaniel Vargas #138514
Henry Ochoa #257721

3.    Lewis
Michael Kiel, #166428
James Hill, #085078
John Koch, #170635
Jason Elder, #150231
Norman Flanigan, #177442
Jose Juarez, #186820
Shawn Chock, #256000
Gabriel Ramirez, #173799
Emery White, #165183

4.    Phoenix
Johnny Gurule, #117783
Miguel Coronado, #113546
Daniel Grigsby, #088635
Austin Breshear, #214264
Gary Hall, #207113
Vincent Velardez, #071329
Richard Green, #116948
Allen Mosley, #091711
Terry Atkins, #176929
Andrew Fancy, #262420

SFI-834642v1

**5.     Yuma**

Robert Inigo, #083735
Victor Calzada-Gutierrez, #254887
William Bianco, #197299
Jason Lewis, #189264
James Bennett, #237279
Robert Bond, #276234
Trenton Davis, #282528
Daniel De Leon, #189733
Michael Dozier, #065384
Domenic Brodowski, 27566
Victor Brooks, 255790
Ronald Davison, 81813
Robert Devine, 138222
Jesse Figueroa, 45460
Douglas Leslie, 251101
Patrick Nissely, 277002
Clifford Robinson, #188961
Michael Velasquez, 173685

# EXHIBIT

# B

**EXHIBIT B**

**LIST OF MASTER FILES REQUESTED (RFP No. 5)**

1.   Adam Duran, #209206
2.   Adam Nicolia, #254795
3.   Ahmad Qadir, #089104
4.   Alfredo Herrera, #141081
5.   Andrew Cushman, #247824
6.   Andrew Robins, #248144
7.   Angel Morales, #234567
8.   Armando Martinez, #185280
9.   Augustine Gonzalez, #076949
10.  Bennie Masters, #134860
11.  Brian Chavez, #200384
12.  Cesar Fimbres, #172483
13.  Chaine Masbrugh, #165945
14.  Chance Hart, #176018
15.  Christian Vasquez, #274006
16.  Christopher Cartier, #278352
17.  Chrystal Cunningham, #224317
18.  Clayton Hill, #230403
19.  Darrell Lyon, #096480
20.  David Conro #246918
21.  Deshawn Scott, #146395
22.  Eileen Vasquez, #272404
23.  Eligio (Z) Valenzuela, #230945
24.  Eric Caicedo-Caneloz, #228215
25.  Eric Haves, #162876
26.  Ernesto Mendez-Carrillo, #216062
27.  Eugene Diaz, #270867
28.  Fernando Canales, #135638
29.  Frank Racer, #108121
30.  Gabriel Hayes, #174960
31.  Gilberto Trevino, #223700
32.  Glen Stamper, #174892
33.  Griffon Ray, #153582
34.  Heather Self, #231185
35.  Hector Martinez, #240034
36.  Ivan Santacruz, #194683
37.  Jack McGee, #220171
38.  Jacob Avila, #217766
39.  Jacob Glasscock, #235550
40.  Jahmari Manuel, #078985
41.  James Pacheco, #215017
42.  Jason Gann, #182504

43.     Javier Zambrano, #226439
44.     Jay Connolly, #167895
45.     Jeremy Begay, #273183
46.     Jeremy Fletcher, #209388
47.     Jerry Patton, #277153
48.     Jose Lormeli, #161242
49.     Joshua Deroche, #147875
50.     Jovon Harris, #123545
51.     Kenneth Jordan, #233937
52.     Luis Saucedo, #170180
53.     Lyle Paddock, #196476
54.     Manuel Sanchez, #119063
55.     Marcellus Jackson, #275352
56.     Marcus Davis, #165060
57.     Marcus Thompson, #161030
58.     Mark Alvarez, #182500
59.     Matthew Manzanedo, #079369
60.     Melissa Wakeman, #271682
61.     Michael Ortega, #240365
62.     Mike Archibeque, #092371
63.     Oscar Terrazas, #095729
64.     Patrick Logan, #177604
65.     Phil Copas, #185706
66.     Ramon Garcia, #196249
67.     Ricky Guevara, #202103
68.     Robert Olivas, #177681
69.     Robert Osorio, #108309
70.     Ronald Jacobs, #093371
71.     Roy Carr, #120406
72.     Roy Roach, #117499
73.     Ruben Hernandez, #116412
74.     Ruben Morales, #266207
75.     Sam Pailate, #235510
76.     Sergio Rubio, #213703
77.     Shacoia Mitchell, #266314
78.     Thaddeus Beasley, #111724
79.     Timothy Stephenson, #201751
80.     Toddrick Booth, #248310
81.     Trevonne Whitewalker, #207315
82.     Tyson McDaniel, #115043
83.     Victor Sweeney, #257549
84.     Warees Muzakkir, #082561
85.     Wilford Ratliff, #210575
86.     William Evans, #213432
87.     William Lidy, #136911
88.     William Neville, #061616

89.    Yak Yak, #181109
90.    Yara Giselle Renteria, #236532

# EXHIBIT

# C

Campbell calls for Arizona prison chief to resign

Aug 12, 2013 • 12:41 PM • A GANNETT COMPANY

Shopping • Jobs • Cars • Real Estate • Rentals • Buy & Sell • LaVozArizona.com


azcentral.com
ARIZONA'S HOME PAGE

SUBSCRIBE NOW and get
3 months for the price of 1    SUBSCRIBE

Log in • My account • Register • e-Newspaper • Help

SEARCH

101°
Phoenix

News | Sports | Money | Things to do | Politics | Opinion | Watchdog | Travel | Food & Home | Health | Traffic | Weather      Today's Deal

Ahwatukee | Chandler | Gilbert | Glendale | Mesa | Peoria | Phoenix | Pinal | Queen Creek | Scottsdale | Southwest Valley | Surprise | Tempe


GO SOLAR WITH
SUNGEVITY
Get panels with curb appeal
Go solar for $0 down

News   »   Politics   »   Article

# Campbell calls for Arizona prison chief to resign


THE VERY BEST OF REPUBLIC PHOTOGRAPHY
(Just point, click and buy!)

SHARE URL | EMAIL | FONT: A A A     Recommend   Tweet ⟨ 0 ⟩  +1

SUBSCRIBER CONTENT PREVIEW

For Full Access: LOG IN or | Subscribe now: 3 months for the price of 1

**RELATED NEWS**
Special report: The price of prisons

**RELATED VIDEO**


Secret video reveals corrections officers watched inmate bleed to death


Campbell calls for resignation

**By Mary K. Reinhart**
The Republic | azcentral.com
Tue Jul 23, 2013 6:42 PM

A key lawmaker is calling on the state's prison chief to resign, citing a high prison suicide rate, security failures, inadequate medical care and inappropriate ties to the private-prison industry.

House Minority Leader Chad Campbell, D-Phoenix, a longtime critic of the Department of Corrections and private prisons, said his call for director Charles Ryan's resignation was prompted by the suspected homicide last month of an inmate at the Lewis state prison complex in Buckeye.

"Director Ryan has exhibited a pattern of mismanagement and a lack of leadership resulting in an unsafe corrections system in our state," Campbell said in a statement. "Under his direction, our corrections system has wasted tax dollars, jeopardized people's lives and damaged the state's credibility."

Campbell, who is considering a run for governor in 2014, said Ryan has failed to plug holes in prison security, stem criminal behavior by corrections employees, properly manage private-prison contracts and ensure adequate health care for inmates.

Bill Lamoreaux, a spokesman for the corrections department, said Ryan and other agency officials have responded to Campbell's concerns and provided "detailed information on ADC's operations."

"Earlier this year he was even invited to tour ADC correctional facilities so that he could gain a firsthand understanding of the Department, its employees and operations," Lamoreaux said in a statement. "Unfortunately, Representative Campbell did not respond to ADC's offer."

Gov. Jan Brewer's office did not immediately respond to a request for comment. Brewer appointed Ryan to lead the agency in 2009.

Under his tenure, the state has privatized inmate health care and now


3 MONTHS FOR THE PRICE OF 1
SIGN UP TODAY AND SAVE!

Top Videos

Mug shots in the news: Aug. 4 - 10

Feds pay millions for border-agent housing in Ajo

Arizona made the list!

Mug shots in the news: July 28 - Aug. 3

Today in Arizona history: August

Campbell calls for Arizona prison chief to resign



UP TO
70% OFF
home décor

Joss & Main

SHOP NOW »

...faces a class-action lawsuit alleging that the department provides inadequate medical, dental and mental-health care to inmates. Also under Ryan, two murderers escaped from a private prison near Kingman in 2010, leading to a nationwide manhunt and the deaths of two people. An internal investigation blamed human error and lax monitoring of the private-prison contract.

*Republic reporter Craig Harris contributed to this article.*

Arizona pension system gave out bonuses

Ancient Pa. dwelling still divides archaeologists

Arizona family trying to leave U.S. rescued at sea

Annual Perseid meteor shower to light up sky this weekend

Sinkhole causes resort villa to partially collapse



## YOU MAY LIKE
by Taboola

 

 

Chemical leak creates health hazard for thousands

Valley woman's $50,000 medical bill erased

 

Man shot to death on farm in Buckeye

Exclusive: Sen. McCain gets called for jury duty

## FROM AROUND THE WEB
by Taboola



Weird Trick Adds $1,000 to Social Security Checks
Newsmax

Is This What's Putting Tanning Salons Out of Business?
Ten Physics

## YOU MIGHT BE INTERESTED IN

Annual Perseid meteor shower to light up sky this weekend

Texas teenager finds his mom's body in freezer

Ex-Arizona officer facing trial for stalking

Arizona pension system gave out bonuses

Former Ariz. youth pastor sentenced in sex-toy case

6-year-old accidentally shoots 22-month-old girl

5 Ariz. prison employees tied to money-laundering scheme

Student left in DEA cell to get $4 million from U.S.

Grandma admits killing, dismembering teen, police say

16-year-old Phoenix autistic girl found

[?]

## SPONSORED LINKS

Are Gangs Targeting People Who Flash Their Headlights? *[The Insurance Blog]*

Princess Diana's 'Revenge Dress' Was the Best Way to Get Even With Prince Charles *[Celebitus]*

Brooke Shields's Suprising Family History *[Ancestry]*

TGI Friday's Fined $500K for Cheating Its Customers *[Bottom Online]*

Worst drinks for your body *[Shape Magazine]*

## TOP JOBS

POWERED BY REPUBLIC careerbuilder·

**Grounds Maintenance**
Confidential

**RESTAURANT MANAGER**
KABUKI RESTAURANT

**Public Health Nurse Supervisor**
San Carlos Apache Tribe Human Resources Department

**INFORMATION TECHNOLOGY DIRECTOR**
KINGMAN UNIFIED SCHOOL DISTRICT

**SALES**
FOUR SEASONS MOTOR SPORTS

All Top Jobs
Employers - Post your job now

## TOP HOMES

POWERED BY HomeFinder.com

Paradise Valley - $1,400,000
MLS 4856643
4 bed / 4 bath / 2005
Sandra Baldwin, Russ Lyon Sotheby's International Realty

Fountain Hills - $699,000
MLS 4968403

Campbell calls for Arizona prison chief to resign


Surprising Abraham Lincoln Descendants Discovered
ancestry.com


5 Most Overrated Exercises You Can Stop Doing
Daily Health Post

Flesh-Eating Bacteria Kills Killer *(Web2Carz)*

Bank manager stole more than $1M *(Bankrate.com)*

Sarah Jessica Parker's Fashion Disaster Is So Horrific We Can't Look Away (PHOTO) *(CafeMom)*

Miley Cyrus' Revealing Jean Shorts Cause Twitter to Explode (Pictures) *(Zimbio)*

Bisquick's Slow-Cooked Peach Cobbler *(Betty Crocker)*


5 bed / 4 bath / 1992
JoAnn Callaway, Those Callaways


Gilbert - $450,000
MLS 0
4 bed / 3 bath / 0000

Agents! Display your listings here! »
Thousands more home listings »

GET AZCENTRAL ANYWHERE



## ▶ JOIN THE DISCUSSION

Join the conversation! To comment on azcentral.com, you must be logged into an active personal account on Facebook. You are responsible for your comments and abuse of this privilege will not be tolerated. We reserve the right, without warning or notification, to remove comments and block users judged to violate our Terms of Service and Rules of Engagement. Facebook comments FAQ

Comments posted via facebook: 6


Add a comment...

☐ Post to Facebook



**Peggy Plews** · ⭐ Top Commenter · Phoenix, Arizona

by the way, Chad forgot to mention the race riots, by the way. Ryan has no control over these prisons...or else this is how he really wants them to be running, which is even more scary... http://arizonaprisonwatch.blogspot.com/search?q=doc+riot

Reply · 👍 7 · Like · July 23 at 5:02pm


Add a Reply...



**Alan Anderson** · ⭐ Top Commenter · Saguaro High School

While I support many privatization efforts, I believe privatizing prisons is the wrong way to go. not only for the reasons listed above, it also becomes a vicious circle of companies lobbying for more criminal sentencing to expand the prison population in order to increase profits that they pay themselves and use to lobby for more criminal sentencing.

Reply · 👍 6 · Like · July 23 at 3:15pm

**Robert Warrington** · ⭐ Top Commenter

Spot on.
Well said.

Reply · 👍 2 · Like · July 23 at 5:25pm


Add a Reply...

**Julie Acklin** · ⭐ Top Commenter · 103 subscribers

I am beyond words. My life and heart has forever been changed by this dictator Charles R Ryan. Our families and loved ones have been through life threatening illness as well as suicide for some and deaths for others and suffering. All the while Mr. Ryan builds more prisons to house our most vulnerable inmates. Our mentally ill.. .It is time for MR .Ryan to come clean with the lies. He says he doesn't have solitary confinement .He lied .Many of our loved ones are tucked away under his reign.As he sits back and watches as he continues to run his industrial empire as if he has no soul. Mr. Ryan enough is enough .You need to go and try to live with your conscience for the rest of your life and think of Marsha Powell and Tony Lester and all of the others who have felt suicide was a better place to be than your prison .Rest in peace Mr. HOPPIE. No rest for Mr. Ryan until you resign and take responsibility for the families pain and suffering that even after you are gone from the DOC the memories of the sadness and suffering will remain.An inmates mother.

Reply · 👍 5 · Like · July 23 at 5:56pm


Add a Reply...

Campbell calls for Arizona prison chief to resign





**Frank Smith** · ⭐ Top Commenter · San Francisco State University

Actually, two convicted murderers escaped from Kingman, but a third escapee with them was in for two attempted murders. The incompetence of both the for-profit operator, Management and Training Corporation, and the Arizona Department of Corrections, was simply staggering.

One of those escapees, who was doing two consecutive 22-year sentences for murders in Arizona, had a shootout with police and a sheriff's deputy the next day in Rifle, Colorado. He was sentenced to 60 years for the shootout and will die in a Colorado prison.

A second, who had been doing life in Arizona for a Tucson robbery-murder, has made a plea bargain to testify against his fellow escapee, in a federal murder prosecution over deaths of two Oklahoma tourists that

## POPULAR TOPICS

| | |
|---|---|
| Arizona Lottery Results | Investigations |
| Saving Arizona's Children | AZ Fact Check |
| Immigration | Arizona's American Indians |
| Boomer101 | Economic Snapshot |
| Western Jobs | City Comparison Guide |
| My Town | Air We Breathe |
| Fiesta Bowl Investigation | Republic 100 |
| Ask & Answered | AZ Storytellers |
| My Neighborhood | Sheriff Joe Arpaio |
| Who's Who In Business | Valley Home Values |

## SITEMAP

Homepage
Arizona Lottery
Healthy Living
Business & Entrepreneurship
Business
Food & Home
News
Photos
Sports
Things To Do
Travel
Getaway Tips
Videos
Weather

More of azcentral.com

## CUSTOMER SERVICE

Mobile Apps
RSS feeds
Advertise with Republic Media
Careers at The Republic
FCC Online Public Inspection File
EEO Public File Report
Careers at 12 News
Contact The Republic
Media In Education
Privacy Policy
Manage My Account
Subscribe to The Republic
Terms of Service

## PARTNERS

USA Today
Gannett Co. Inc.
Apartments: apartments.com
Cars: cars.com
Dating: eHarmony.com
Homes: Homefinder.com
HomeGain
Jobs: CareerBuilder.com
Local Businesses
Shopping:
findnsave.azcentral.com

© 2013 azcentral.com. All rights reserved. | Users of this site agree to the Terms of Service, Privacy Policy/Your California Privacy Rights and Ad Choices

GANNETT

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on August 13, 2013, I e-mailed a copy of the attached document to

3   the following parties:

4

5                          Michael E. Gottfried
                           Katherine E. Watanabe
                           Lucy M. Rand
6                   Assistant Arizona Attorneys General
                        Michael.Gottfried@azag.gov
7                      Katherine.Watanabe@azag.gov
                          Lucy.Rand@azag.gov
8
                            Daniel P. Struck
9                          Kathleen L. Wieneke
                          Timothy J. Bojanowski
10                             Rachel Love
                            Nicholas D. Acedo
11                        Courtney R. Cloman
                           Ashlee B. Fletcher
12                           Anne M. Orcutt
                  STRUCK WIENEKE, & LOVE, P.L.C.
13                       dstruck@swlfirm.com
                        kwieneke@swlfirm.com
14                     tbojanowski@swlfirm.com
                          rlove@swlfirm.com
15                       nacedo@swlfirm.com
                        ccloman@swlfirm.com
16                      afletcher@swlfirm.com
                         aorcutt@swlfirm.com
17

18                       *Attorneys for Defendants*

19
                           Jennifer Alewelt
20                            Asim Varma
                             Sarah Kader
21                              J.J. Rico
                           Cathleen M. Dooley
22             **ARIZONA CENTER FOR DISABILITY LAW**
                      jalewelt@azdisabilitylaw.org
23                     avarma@azdisabilitylaw.org
                       skader@azdisabilitylaw.org
24                      jrico@azdisabilitylaw.org
                       cdooley@azdisabilitylaw.org
25
          *Attorneys for Plaintiff Arizona Center for Disability Law*
26

27                                          s/ Margaret Landsborough

28