1 | Daniel Pochoda (Bar No. 021979)
2 | Kelly J. Flood (Bar No. 019772)
  | James Duff Lyall (Bar No. 330045)*
3 | **ACLU FOUNDATION OF ARIZONA**
  | 3707 North 7th Street, Suite 235
  | Phoenix, Arizona 85013
4 | Telephone: (602) 650-1854
  | Email: dpochoda@acluaz.org
5 |         kflood@acluaz.org
  |         jlyall@acluaz.org
6 | *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7 | *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin*
  | *Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
8 | *Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci,*
  | *Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of*
9 | *themselves and all others similarly situated*

  | **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**
10 |

11 |

12 | UNITED STATES DISTRICT COURT

13 | DISTRICT OF ARIZONA

14 | Victor Parsons; Shawn Jensen; Stephen Swartz; | No. CV 12-00601-PHX-NVW
   | Dustin Brislan; Sonia Rodriguez; Christina      | (MEA)
15 | Verduzco; Jackie Thomas; Jeremy Smith; Robert   |
   | Gamez; Maryanne Chisholm; Desiree Licci; Joseph |
16 | Hefner; Joshua Polson; and Charlotte Wells, on  | **JOINT REPORT**
   | behalf of themselves and all others similarly   | **REGARDING DISCOVERY**
17 | situated; and Arizona Center for Disability Law, | **DISPUTES**
   |                               Plaintiffs,       |
18 |            v.                                   | (ORAL ARGUMENT
19 |                                                 | REQUESTED)
   | Charles Ryan, Director, Arizona Department of   |
20 | Corrections; and Richard Pratt, Interim Division|
   | Director, Division of Health Services, Arizona  |
21 | Department of Corrections, in their official    |
   | capacities,                                     |
22 |                               Defendants.       |

23 |

24 |

25 |

26 |

27 |

28 |

1      **Plaintiffs' Position:**

2         Plaintiffs' Position:   Plaintiffs are seeking discovery for two purposes:   (1) to

3 discharge their burden of proof, which requires Plaintiffs to show deliberate indifference

4 to serious medical needs and conditions of confinement that creates a "substantial risk of

5 serious harm" to the class;[1]  and (2) to prepare their response to the case defendants are

6 likely to present.  *See Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1117 (9th Cir.

7 2004) ("An important purpose of discovery is to reveal what evidence the opposing party

8 has").

9         In light of the Court's statements that "gross data" about Defendants' practices will

10 be persuasive evidence of the conditions, Plaintiffs have attempted to obtain this

11 information.  Defendants, however, do not have a lot of gross data.  And while that fact is

12 probative, Defendants can be expected to argue that it is not dispositive.  Accordingly,

13 Plaintiffs have sought to prove through discovery that there is a risk of harm by showing

14 that serious harm has occurred and that the actual practices at each of the prisons cause

15 substandard care to be delivered and the isolation conditions are inhumane.

16         Since the Court has ordered the parties to be concise in this Report, Plaintiffs will

17 not respond to all of Defendants' misrepresentations below, but one bears particular

18 mention.  Defendants assert that Plaintiffs' have had 13 months to conduct discovery in

19 this case.  What Defendants omit is that they refused to produce class wide discovery until

20 the class was certified, which is less than six months ago.  In effect, Plaintiffs will have to

21 complete discovery for tens of thousands of prisoners on 17 certified questions at ten

22 institutions in about seven months.  That task is made all the more daunting because of

23 Defendants' obstructive tactics. The latest example occurred last week at the deposition of

24 one of the contract monitors.  During the first three hours Defendants' counsel objected

25

26

    —————————————

27        [1] *See Brown v. Plata*, -- U.S. --, 131 S. Ct. 1910, 1926 n.3 (2011); *McGuckin v.*

28 *Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

1 | 240 times.  These examples illustrate why the Court should be cautious when considering
2 | Defendants' positions.

3 |         Defendants complain below that the discovery conducted by Plaintiffs has been
4 | excessive, but they have rejected every attempt by Plaintiffs to make discovery more
5 | efficient.  For example, Defendants will not stipulate that the tours conducted to date are
6 | representative of the system.  Defendants rejected the Court's invitation to stipulate that
7 | the deposition of three contract monitors are representative of the other eight such
8 | monitors.  Defendants also rejected a procedure for witness statements that bind the
9 | parties.  It is not fair for Defendants to force Plaintiffs to their proof as to every claim at
10 | every institution and then withhold evidence necessary to meet that burden, particularly
11 | where, as here, Defendants have control of all of the evidence, including the prisoner
12 | plaintiffs themselves.

13 |         **Defendants' Position:**

14 |         These disputes arise from Plaintiffs failure to conduct efficient and relevant
15 | discovery over the past 13 months.  Plaintiffs come to the Court – just one month before
16 | the close of discovery – with a laundry list of demands, hoping it will give them a reprieve
17 | for their abusive and burdensome discovery tactics thus far.  The Court ordered the parties
18 | to meet-and-confer on the issues raised in Plaintiffs' Motion for Clarification, but that
19 | meeting was dysfunctional, to say the least:  Plaintiffs refused to give their position on
20 | several issues; they have included in this Joint Discovery Dispute issues that were never
21 | discussed at the meet-and-confer and issues that were discussed but which the parties
22 | agreed were not ripe for presentment; and they have expanded on some demands in their
23 | briefing.[2]  In resolving these issues, Defendants ask the Court to note several things.

24 |         First, at the July 20, 2012 Scheduling Conference (and subsequently), the Court
25 | very clearly explained what it considered to be appropriate discovery, and admonished the

26 |
27 | _____

28 |         [2] This is not the first time Plaintiffs have circumvented the meet-and-confer
process.  (See Dkt. ## 170, 495.)

parties to be reasonable.[3]  But since that directive, Plaintiffs have conducted excessive and unnecessary discovery.  The Court has repeatedly chastised Plaintiffs for their discovery tactics,[4] but Plaintiffs have ignored it, and respond yet again with a request for even more discovery.  This is baffling in light of Plaintiffs' counsel's representation to the Court more than a year ago that they were experts in conducting discovery:  "We've been doing this a long time, and we think we can target what we need … We've done many of these cases, we – we know what we need. We know what we don't need."  (Ex. 1 at 34.)

Second, in opposing Defendants' motion to stay proceedings pending resolution of their appeal, Plaintiffs argued that discovery was near the end. Indeed, that was the primary basis for this Court's denial of a stay.  (Dkt. # 567.)  In response to Defendants' request for a stay in the Court of Appeals, Plaintiffs' represented to the court that there was only one expert tour left.  (Ex. 4.)  Yet, they are now asking for *at least* 21 additional depositions (nine of which are Rule 30(b)(6) depositions) and as many as 8 more expert

---

[3] *See* Ex. 1 at 27, 36, 58: "The question is I want you all to be focused and practical about it. … I'm not setting any limitations, but I'm urging you to be economical and focused for what you need early on. … And this really comes back to the earlier discussion we had about managing the discovery in a way that is reasonable and appropriate and proportionate. …"It's counsel's responsibility to understand the rules and the process and to be reasonable with one another with respect to, you know, what's being sought and the burden and the relevancy and the cost and all of that …"; Ex. 2 at 24-25: "I don't want any more hardball. I want reasonableness."; Ex. 3 at 23-24: "There is no right to just whatever discovery might be theoretically -- might yield something, and it's especially true for this kind of highly burdensome gross review of extensive business records. There's no right to that.  What there is is a need to have a focused judgment about what is likely to matter and what is likely to be cost beneficial."

[4] "The number and extent of Rule 30(b)(6) depositions sought by Plaintiffs was extreme." (Dkt. # 171_; "the Court will not sanction a scopeless tour of Defendants' facilities." (Dkt. # 495);  "Plaintiffs' last request is that their counsel be permitted to accompany Defendants' experts on their own inspections. There is no basis for this request." (Dkt. # 495); "But it is plain that the scope of Plaintiffs' request is breathtaking and it is difficult for the Court to imagine that accommodation of the entire request would not result in an undue burden." (Dkt. # 407); "the amount of discovery that has taken place in this case well exceeded what the Court contemplated – some of which may have been inefficient or unnecessary" *See* Doc. 567; Plaintiffs discovery has been "excessive" and "inappropriate"(Ex. 8 at 18-19); "Plaintiff had adequate opportunity to depose Dr. Adu-Tutu and was advised that he would be departing the country. Witnesses are usually entitled to be protected against multiple depositions. Plaintiff has not shown good cause to depose Dr. Adu-Tutu again." (Dkt. # 166); I'm having a hard time understanding why you need any of this at all." (Ex. 3 at 11–12.)

tours.  The timing of their request for more tours – after the Court of Appeals denied the stay request – is not coincidental.  And since the court's denial of the stay, Plaintiffs have propounded 83 requests for admission, 45 interrogatories, and 52 requests for production. (Ex. 5.) Plaintiffs should either be estopped from conducting the excessive discovery they now say they need, or the Court should reconsider its ruling on the stay request since it is now obvious that Plaintiffs believe they are entitled to a lot more discovery than they previously represented.

Third, Plaintiffs make their shotgun request for *more* discovery just a month before the close of discovery.  Defendants made it very clear to Plaintiffs more than a year ago that they would only stipulate to 25 total depositions.  (Dkt. # 46.)  Yet, Plaintiffs hid in the weeds, knowing that this would be an issue, and have now sprung it on Defendants and the Court just a month before the close of discovery.  Plaintiffs have also known Defendants position regarding Pratt's deposition and the Rule 30(b)(6) depositions for some time.  (Ex. 6–7.)  Again, the timing of their request is no coincidence.  Plaintiffs come to the court just 31 days before the discovery cutoff, requesting more tours, more depositions, and more document production – asking the Court to make a snap judgment while placing blame on Defendants for the mismanagement of Plaintiffs' own discovery tactics.  Allowing additional discovery, this late in the game, only invites Plaintiffs to file another request to extend the discovery deadline because it is likely impossible to conduct the discovery they seek by the September 27, 2013 deadline.   Plaintiffs' failure to adequately calculate and tailor their discovery devices is no reason to permit Plaintiffs to conduct additional, duplicative, and burdensome discovery.

**Medical Expert Inspections of Tucson, Florence, Winslow,**

**Safford, and Douglas**

**Plaintiffs' Position:**

At the August 7 hearing, Plaintiffs proposed that if Defendants would stipulate that medical care and facilities at these prisons are the same as at the prisons Plaintiffs' medical experts have already inspected, Plaintiffs would be willing to cancel these five tours.  Ex. A, Aug. 7, 2013 Hr'g Tr., at 33:3-8.  After the hearing, Plaintiffs asked if Defendants would agree to such a stipulation, but they have refused.  Doc. 578, Ex. 3.  At the meet and confer held on August 22, defendants again refused either to agree to medical expert tours of any of the remaining five facilities, or to stipulate that the conditions observed at the facilities already toured are representative of those at the remaining facilities.

As Defendants will not agree to such a stipulation, Plaintiffs respectfully urge that these tours must go forward, as they provide important, probative evidence of actual conditions not likely to be discovered by other means.  *See, e.g.,* Cohen Decl., ¶ 11, attached to Specter Decl. (Doc. 578) as Ex. 5.  Plaintiffs are willing to cut back the number of facilities to be toured from five institutions to the two largest remaining – ASPC-Tucson and ASPC-Florence.  Plaintiffs have informed Defendants that only one medical expert will tour each facility.

The Tucson prison complex houses more seriously medically ill male prisoners than any other institution, houses male minors convicted as adults, and includes a large infirmary, hospice care, chemotherapy, and dialysis for chronically ill prisoners. Similarly, the Florence prison complex has an infirmary, provides dialysis care, is the primary site for chemotherapy, and is second only to ASPC-Tucson in the number of prisoners with complex medical needs.  See Specter decl. (Doc. 578), ¶¶ 4-5 and attached exhibits.

Plaintiffs anticipate that Defendants' refusal to stipulate that the medical care at other prisons is representative of the prisons not yet toured means they will argue in

1   dispositive motions or at trial that care is adequate at the Tucson and Florence prisons.

2   Plaintiffs respectfully request that they be permitted to have their medical expert tour the

3   Tucson and Florence facilities for two days each.

4   Defendants argue that Plaintiffs should have toured these facilities earlier.

5   However, the tours were planned months ago according the busy schedules of the experts

6   and not in the order of importance.  Furthermore, until the Court's ruling Plaintiffs had no

7   notice that they might not be able to conduct further tours.  It is fundamentally unfair to

8   prevent Plaintiffs from conducting these tours under these circumstances.

9   **Defendants' Position:**

10   Plaintiffs are not entitled to any more expert tours. When the Court issued its

11   August 8, 2013 order denying Defendants' request for a stay, Plaintiffs had conducted 44

12   expert tours. The Court allowed them to take three additional tours, but canceled the

13   remaining tours: "The Court will limit the remaining expert tours to Dr. Williams' three

14   one-day tours, scheduled to occur on August 14-16, 2013."  (Dkt. # 567 at 4.)  The Court

15   noted: "I don't understand these expert tours.  They look to me like they are being done in

16   lieu of interrogatories, walking around the prison asking people questions. That's what

17   interrogatories are for." (Ex. 8 at 16.) The Court also observed: "[T]his issue of the

18   systemic and class challenge here, I have always understood to be aimed at the gross level

19   of provision of services that seem to me to be easily ascertainable from gross data and

20   applying them to industry standards about providing medical care to -- in correction

21   settings. I have not envisioned that that meant walking through all the prisons asking lots

22   of people questions." (Id. at 17.)  Relying on that order, Defendants canceled those tours

23   the Court ordered would not go forward.  Indeed, Defendants articulated to the Court just

24   how burdensome and excessive these tours had become.  (Dkt. ## 532, 543.)  Dr.

25   Williams conducted her three tours, raising the total to 47 tours.

26   Despite the Court's order, Plaintiffs are now asking the Court to reconsider its

27   ruling and to allow that they be permitted to "have their medical expert tour the Tucson

28   and Florence facilities for two days each." This request is not exactly clear because

Plaintiffs have *two* medical experts:  Dr. Cohen and Dr. Wilcox.  Thus, Plaintiffs' request could conceivably include eight days of tours – each expert touring both facilities for two days.  This is more than what they proposed at the meet-and-confer – one expert touring each facility for two days – and more than what was originally scheduled – Dr. Wilcox for two days at Florence and Dr. Cohen for two days at Tucson.[5]

Regardless of how many more tours Plaintiffs are requesting, there is no reason for the Court to reconsider its originally ruling canceling these tours.  Defendants' refusal to reschedule them was based on the Court's order, and Plaintiffs should not be permitted to take any more.  Plaintiffs complain that these two facilities are important because they house more "seriously medically ill" inmates and inmates in need of chronic care than other facilities.  If these tours were really more important to Plaintiffs than the other 47 tours they have already taken, including Dr. Cohen's two tours at Lewis and two tours at Eyman, they should have scheduled them with more priority.[6]  But that is beside the point.  Plaintiffs can gather the information they need through other, more efficient means.  At the meet-and-confer, Plaintiffs stated that each tour would be 9 hours, and would include walking the medical units, speaking with staff members, reviewing inmate medical records, and interviewing inmates. As this Court observed, Plaintiffs can (and have) acquire this information through written discovery or by scheduling interviews with inmates through the normal channels.  Indeed, in their last round of discovery requests, Plaintiffs requested the medical files of approximately 188 inmates at these two facilities. (Ex. 5.)  Touring the facilities for this same purpose is excessive and unnecessary.

---

[5] Defendants have challenged Plaintiffs insistence on having two medical experts. Plaintiffs' justification for having two medical experts was allegedly because neither expert was available to conduct all the medical tours, and thus they needed two experts to cover all facilities. That justification is no longer valid since Plaintiffs now request *both* experts be permitted to tour the same facilities for two days.

[6] Dr. Shulman (dental expert) toured Florence on July 24, 2013, and Tucson on August 7, 2013 and August 8, 2013; Dr. Stewart (mental health) toured Florence on July 15, 2013, and Tucson on July 8, 2013 and on July 9, 2013; Dr. Haney (conditions of confinement) toured Florence on July 19, 2013 and again on July 22, 2013; Dr. Vail (conditions of confinement) toured Florence on July 30, 2013 and again on July 31, 2013; (Doc. 561-1 at Table P-7 and P-11.)

1

**Depositions**

2

**Plaintiffs' Position:**

3   Defendants have taken the position that they will agree to only 25 depositions and

4   that none of the remaining depositions, other than those of Corizon, can be a 30(b)(6)

5   deposition.[7]  At the same time, Defendants have identified 38 individuals whom they will

6   call at trial (excluding experts and foundational witnesses) and 39 additional witnesses

7   they may call.  Ex. B.  Of those 77 witnesses, Plaintiffs have deposed eight.  As indicated

8   in the Motion for Clarification, Plaintiffs request that further depositions before the

9   discovery deadline not be expressly limited.   The following types of depositions are

10  contested by the parties:

11  Monitors

12  In its Order, this Court stated "The ADC contract monitors' depositions will . . . be

13  limited to three, which the Court will take as representative of all eleven unless

14  Defendants object and offer all eleven for deposition."   Doc. 567.   Defendants are

15  objecting and will not stipulate that the testimony of three monitors is representative.

16  Ex. C (8/14/13 D. Struck to D. Specter e-mail).  Further, they are insisting that if Plaintiffs

17  want to depose the other monitors, those are the only depositions Plaintiffs may take.  *Id.*

18  Plaintiffs request that the Court order that Plaintiffs are entitled to depose all of the

19  monitors Defendants intend to have testify at trial and that Defendants be precluded from

20  introducing testimony from monitors who are not deposed.

21  Defendant Charles Ryan

22  Defendants dispute Plaintiffs' right to take a full day of deposition of Defendant

23  Charles Ryan because they say it is unwarranted.   At the same time, Defendants'

24

25

---

26  [7] Defendants agreed at the meet and confer that their position is that Plaintiffs are
    limited to 25 depositions (rather than a certain number of additional depositions).  At the

27  time, they apparently agreed that each Rule 30(b)(6) notice should be counted once.  The
    parties were unable to compare specific notes on this topic, but Plaintiffs believe that 14

28  depositions have been taken: seven individuals (Chu, Weekly, Crews, Echeverria, Sharp,
    Fizer, and Valenzuela) and seven 30(b)(6) notices (Docs. 44, 76, 78, 81, 82, 98, and 436).

disclosure statement reflects that they intend to offer Defendant Ryan at trial on a wide array of topics, including "his training and experience in corrections and his role in the development of policies, procedures, training programs, and ADC's strategic vision." Ex. B at 1-2.  They explain that he "possesses in-depth, hand-on institutional knowledge" and "extensive experience in the development of correctional institution policy including . . . staffing, operation and activities of various prison complexes and the development of budgetary requirements."  Id.  Other topics they intend to offer his testimony on include "the improvements in the delivery of health care to ADC inmate population; the privatization of the entire health care delivery system, specifically the taking over of the health care system by Wexford Health Sources . . . and by Corizon Health . . .; ADC facilities' compliance with the National Commission on Correction Health Care Standards . . . Wexford's compliance during its tenure, and Corizon's compliance . . .; various budgetary issues . . . ; his recommendation of policies and program to the Governor and Legislature for improving corrections programs including health care services; his establishment of employment qualifications for key personnel . . . as well as relevant staffing policies, procedures levels, and issues with regard to dental, medical, and mental health personnel as well as to any communications with said personnel" and several other issues.  *Id.*  This information is not, contrary to Defendants' claim, available through already obtained discovery, as much relates to his own actions, statements, and "in-depth" instutitional knowledge.  Defendants own cases hold that, "When a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition."  *See Apple Inc. v. Samsung Electronics Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012).  Here, where Defendants' have written an extensive disclosure statement on all of Ryan's relevant knowledge and he is a named defendant in the case, citations to other cases where apex depositions have been denied in completely different circumstances is meaningless.   Seeking a seven hour deposition of Ryan is not unreasonable and Defendants attempt to distort the meet-and-confer to get to a contrary result should be rejected.

1

2          <u>Defendant Richard Pratt</u>

3          Defendants have similarly refused to produce Richard Pratt, the other named

4    defendant and former Interim Division Director of Health Services and current

5    Quality/Clinical Program Evaluation Administrator for ADC, for a full day of deposition,

6    and insist the deposition should be no more than two hours.  Plaintiffs have pointed out

7    that this Court has already indicated that is not acceptable, when it stated:  "You're going

8    to have to submit to more than two hours of deposition for . . . Mr. Pratt."  Ex. A, 16:11-

9    16.  Defendants claim this Court was unaware that Pratt had been previously deposed.

10   That, of course, is not true because Defendants have pointed that out to the Court.  Doc.

11   No. 561-1, Table P-6.  Beyond that, Defendants' position ignores three critical points:

12   (1) Defendants changed medical providers since Pratt's last deposition nearly one year

13   ago; (2) he was not offered for a broad personal deposition then, but as a limited 30(b)(6)

14   witness;[8] and (3) Defendants have made plain they intend to have him testify broadly at

15   trial, including on most of the medical and mental health care topics identified above for

16   Director Ryan, and also including such critical topics as "policies and procedures

17   including those related to medical, dental and mental health care, statistics, reports and

18   historical data relating to mental, medical and dental care, as well as the provision of

19

20   _____

21          [8] *See Dynetix Design Solutions Inc. v. Synopsys Inc.,* No. CV 11-05973 PSG, 2012
     WL 5943105, at *2 (N.D. Cal. Nov. 27, 2012) ("The designation of Chan as Dynetix's
22   30(b)(6) witness does not somehow divest Synopsys' right to take the individual
     deposition of Mr. Chan. Ninth Circuit courts have held that individuals noticed as an
     individual witness under Rule 30(b)(1) and also as the corporate representative under
23   30(b)(6) are 'presumptively subject to independent seven- hour time limits.'"); *Pecover v.
     Elec. Arts, Inc.,* Nos. 12-mcv-80064 CS (NC) & 08-cv-02820 CW (NC), 2012 WL
24   951255, at *3 (N.D. Cal. Mar. 20, 2012) (permitting personal deposition of witness in part
     because the topics to be covered in the personal deposition were distinct from the Rule
25   30(b)(6) topics); *E.E.O.C. v. Winn-Dixie, Inc.,* CA 09-0643-C, 2010 WL 2202520 (S.D.
     Ala. May 28, 2010) (allowing deposition of individual after same witness had served as a
26   Rule 30(b)(6) designee because a "deposition pursuant to Rule 30(b)(6) is substantially
     different form a witness's deposition as an individual"). The comments by this Court on
27   that issue, cited by Defendants, were made nearly two months after Pratt appeared for the
     30(b)(6) deposition on October 4.  At that deposition, counsel for Defendants stated
28   repeatedly that it would be limited to the 30(b)(6) topics.

adequate care to ADC inmates in compliance with constitutional requirements." Ex. B at pp. 2-3. As the Court previously found, two hours will not be sufficient and Plaintiffs request the Court order a full day.

30(b)(6) Depositions

Plaintiffs seek depositions of (most likely) two ADC employees via Rule 30(b)(6): One on conditions of isolation at the three institution with isolation units, and one on the mental health treatment of prisoners in the isolation units at those facilities.[9] "One of the purposes of Rule 30(b)(6) is to curb any temptation a corporation might have to shunt a discovering party from 'pillar to post' by presenting deponents who each disclaim knowledge of facts clearly known to someone in the organization." *Elan Microelectronics Corp. v. Pixcir Microelectronics Co. Ltd.,* 2013 WL 4101811 at *4 (D. Nev. August 13, 2013) (citations omitted). "A corporation has a duty under Rule 30(b)(6) to provide a witness who is knowledgeable in order to provide 'binding answers on behalf of the corporation.'" *Id.* If Defendants object to 30(b)(6) depositions, they should be required to produce for deposition specific individuals who will be able to address those issues. Plaintiffs have proposed these particular topics in part to reduce the burden on defendants—depositions had previously been noticed for several of the wardens and deputy wardens responsible for facilities with maximum custody units. But it is not reasonable to deny the 30(b)(6) depositions, limit individual depositions so Plaintiffs have too few to pursue depositions necessary to get complete information on these issues, and then for Defendants to offer expansive testimony at trial from witnesses who have not been deposed, whose email has not been produced, and for whom Plaintiffs have not received complete sets of relevant documents.[10]

---

[9] These topics are divided out here and in the Motion for Clarification for ease of reference, but could be combined into one notice.

[10] Defendants have listed approximately 22 wardens and other security staff as likely or possible trial witnesses, including 19 witnesses who will testify on issues related to "maximum custody." *See* Ex. B (Defendants' disclosure statement).

Defendants' response indicates that they will allow "one 30(b)(6) deposition of Corizon."  It is unclear what limits Defendants intend by this, as at the meet and confer, counsel understood Defendants to say they would allow no further Rule 30(b)(6) depositions of ADC employees but would not object at this juncture to Plaintiffs planned depositions of Corizon employees.  Plaintiffs are willing to issue a single 30(b)(6) notice to Corizon, and Corizon will have the choice whether to present multiple witnesses or not, all of which would count as a single deposition.

### Defense Trial Witness Depositions

In addition to the depositions described above and other depositions Plaintiffs may choose to take before the close of discovery,[11] Plaintiffs request the right to depose, at a future time, any witness that Defendants intend to call at trial but that are not deposed by Plaintiffs before the close of fact discovery.  *See Smith v. County of Nassau*, 2013 WL 1232995 at *2 (E.D.N.Y. March 26, 2013) (collecting cases precluding admission of evidence from witnesses who have not submitted to deposition); *Winding v. Allstate Ins. Co.,* 2012 WL 2934820 at * 1 (E.D. Cal. July 18, 2012) ("The court's reasons for granting the motion remain sound:  defendant would be prejudiced without an opportunity to depose those witnesses plaintiff intends to present at trial").  Plaintiff made this proposal to Defendants and they rejected it.  Ex. D (6/18/13 C. Mitchell email to D. Struck).

Alternatively, Plaintiffs request that for any witness on Defendants' witness list that they are not allowed by the Court to depose, Defendants be required to disclose as part of discovery the specific and detailed facts (not just the broad subject matters) and documents that the witness will testify to, so that Plaintiffs can prepare to cross-examine each witness at trial.  Plaintiffs proposed such binding witness statements for undeposed

---

[11] Plaintiffs set forth in their Request for Clarification the individual and 30(b)(6) depositions they need to take regardless of whom Defendants identify as trial witnesses. Doc. 577 at 3-5.  Because, as explained above, Defendants' disclosure of trial witnesses must be further refined, it is impossible at this time for Plaintiffs to specify a precise total number of depositions they will need.

witnesses and Defendants rejected that as well.   Ex. E (7/25/13 C. Mitchell letter to D. Struck).   The witness statements the Defendants currently have provided in their initial disclosures are overly broad and obviously inaccurate, and do not provide sufficient information to be a substitute for a deposition.[12]   These statements in no way obviate the need for discovery relating to these witnesses if Plaintiffs are to avoid being ambushed by their testimony at trial.

**Defendants' Position:**

Under Fed.R.Civ.P. 30(a)(2)(A), a party is entitled to only 10 depositions without leave of court, unless the parties have stipulated otherwise.   Defendants have stipulated to 25 depositions, far above the presumptive limit. At the meet-and-confer, Plaintiffs' counsel refused to tell Defendants how many depositions above that number they needed to take, and they still refuse to take a position on the number they need in their portion of the Discovery Dispute.[13]   In prior correspondence, Plaintiffs have demanded between 50 and 75 depositions.   Plaintiffs have already taken 18 depositions,[14] and they state that they want *at least* 21 more.

Plaintiffs indefinite request for depositions cuts against the Court's prior admonition regarding depositions:

> So and again, this is -- well -- and indeed, I don't view numbers of depositions as an entitlement for anyone. I view it

---

[12] For example, Defendants represent that the Wardens of Yuma, Winslow, Douglas and Safford are all going to testify about "management of maximum custody units" even though there are not any such units at those prisons. *See* Ex. 2 at pp. 15-16 (Winslow); 16-17 (Douglas); 18-19 (Safford); 20-21 (Yuma). Defendants represent that all of the Facility Health Administrators are going to testify about "the day-to-day operation of health services at Yuma." *Id.* at pp. 20 (Entry 26)-22 (Entry 28), 22 (Entry 31)-24 (Entry 36). The entry for Sam Tardibuono (#9) is largely identical to that for Kathleen Campbell (#8), including the use of female pronouns. *Id.* at 7. It is obvious that this is a slapdash, boilerplate, cut-and-paste document rather than a reliable witness list.

[13] This is precisely the type of "hardball and" gamesmanship the Court cautioned against. *See* November hearing transcript at 24–25: "I don't want any more hardball. I want reasonableness. … I want the hardball brought to an end, and I want to [sic] you all to process this case the way regular lawsuits are processed."

[14] This number does not include a deposition being taken today or a deposition scheduled for tomorrow.

all as something to be managed in light of what the issues are, what the purposes are. Just taking depositions, I don't believe taking depositions of somebody just because they got listed as a witness.  A better way to do that is to request, and I'll allow it, interrogatories that say what that witness is going to say. You don't have to -- it can be abbreviated but substantive. And a lot of times you find you don't need to depose that person for that. You make focus judgments about what witnesses are important enough. And a lot of witnesses, you pretty much know what they are going to say. You know what you're going to do. You can cross-examine them without having seen them before contrary to popular belief, If they're – if they are, shall I say routine witnesses on matters that are not of critical importance. But my point is that you all need to think of – you need to look at the more efficient ways of getting the discovery about what the evidence is going to be and then make focused decisions about who you are going to depose. I don't like depositions as a first line of discovery because they are so wasteful and expensive."

(Ex. 1 at 23–24).  The written discovery deadline has come and gone and now Plaintiffs want additional depositions to obtain the information they failed to request through written discovery.

Contract Monitors

Plaintiffs are correct that Defendants will not stipulate that the testimony of three monitors is representative of all monitors.  They cannot do that.  ADC contract monitors have a specific and narrowly-defined role.  They are responsible for monitoring Corizon's performance at each facility based on various performance measures which are outlined in the contract between Corizon and ADC.  Corizon's performance is evaluated monthly and represented in a monthly report – Medical Green Amber Red ("MGAR").  The MGAR report serves as a learning tool and operates to advise Corizon of potential problem areas and/or areas that need extra attention in a particular facility.  The report is detailed and includes specific examples the contract monitor has seen in medical records or personal observations of the monitors.  The report is generated monthly at every ADC facility. Defendants have produced every MGAR report and thus the information Plaintiffs seek is already in their possession.

Defendants have never placed a limit on the number of contract monitors Plaintiffs can depose. Plaintiffs can depose whomever they want, so long as it does not exceed to

1    the total number of depositions Defendants have stipulated to – 25.   Defendants are

2    willing to stipulate to things such as the authenticity of the MGAR reports, but Defendants

3    cannot stipulate that three contract monitors' testimony is representative of ADC as a

4    whole.   In considering this issue, the Court should be advised of how Plaintiffs would use

5    these depositions.   On August 23, 2013, Plaintiffs' counsel took the deposition of Phoenix

6    contract monitor, Helena Valenzuela.   Defendants have attached a copy of the transcript

7    of that deposition to illustrate the uselessness of that deposition.  (Ex. 9.)   The deposition

8    lasted approximately 6 hours, and included questions regarding Ms. Valenzuela's

9    professional opinions on medical care administered at the Tucson and Phoenix facilities

10   (despite not being a medical doctor).   Plaintiffs' counsel also wasted a significant amount

11   of time introducing numerous MGAR reports and having Ms. Valenzuela confirm that the

12   report said what was written in the report.   At least two hours was spent asking Ms.

13   Valenzuela about her prior role as a Facility Health Administrator for the Tucson facility

14   and her knowledge of medical conditions pertaining to Plaintiff Jensen in 2010.   It is

15   obvious that deposing the remaining contract monitors will not be an efficient use of time

16   unless there are limits put in place. The MGAR speaks for itself and is an adequate

17   representation of what was occurring at each facility during that particular month.   It is

18   unnecessary and burdensome to spend 6 hours deposing each contract monitor so that

19   Plaintiffs can obtain testimony confirming that a piece of paper says what is written on

20   it.[15]   Plaintiffs' request that Defendants be precluded from introducing testimony from

21   monitors who are not deposed is devoid of any legal support.

22          Director Ryan Deposition

23          Defendants have a substantial basis to limit the deposition of Director Charles

24   Ryan to 4 hours.   When a party seeks the deposition of a high-level executive, such

25   _____

26          [15] At the August 7, 2013 hearing, the Court noted, "I mean, if this is a matter of the
     character of what I'm seeing reading this, of asking a whole bunch of people on the retail
27   level of the prison health care services depositions, I don't see that as appropriate and
     justified. That's interviewing people at the bus stations to find out how many people ride
28   on a bus system." (Ex. 8 at 19-20.)

discovery creates a tremendous potential for abuse or harassment, and therefore courts are permitted to limit the discovery if it can be sought through other, less burdensome means. *See Apple Inc. v. Samsung Electronics Co*., Ltd, 282 F.R.D. 259, 263 (N.D. Cal. 2012); *see also Salter v. Upjohn,* 593 F.2d 649, 651 (5th Cir. 1979); *Baine v. General Motors Corp.,* 141 F.R.D. 332 (M.D. Ala.1991); *Community Federal Sav. & Loan Ass'n v. FHLBB,* 96 F.R.D. 619 (D.D.C.1983); *Skookum Co. v. Sutherlin Mach. Works, Inc.,* 33 F.R.D. 19 (D. Ore.1963); *Colonial Capital Co. v. General Motors,* 29 F.R.D. 514 (D. Conn.1961); *M.A. Porazzi Co. v. The Mormaclark,* 16 F.R.D. 383 (S.D.N.Y. 1951). Defendants believe that any information Director Ryan has, has been obtained through other discovery already.  Indeed, Plaintiffs have already obtained testimony of "ADC" through the seven 30(b)(6) depositions they have taken.  In all likelihood, the Director's knowledge on those topics will be duplicative of the witnesses' knowledge, thereby eliminating a necessity to depose the Director. In an effort to be reasonable, however, Defendants believe a 4-hour deposition of Director Ryan is more than sufficient. Defendants communicated this position to Plaintiffs at the meet-and-confer.  Plaintiffs stated they wanted 6 hours.  In a further effort to work with Plaintiffs, Defendants said they would agree to a 5-hour deposition. At that point, Plaintiffs' counsel increased his demand back to 7 hours.  Again, more "hardball" and gamesmanship.

Richard Pratt Deposition

Defendants have agreed to allow Plaintiffs a *second* deposition of Richard Pratt, but limited to 2 hours and only concerning issues that occurred *after* Corizon took over the provision of health care. Plaintiffs want 7 more hours, covering all issues and not limited to a specific period of time.  That is not reasonable.  First, Pratt is no longer the Interim Division Director of the Health Services Division.  He has been replaced by Art Gross. Plaintiffs have noticed Mr. Gross's deposition, and therefore can acquire any information they need from him.  Second, Plaintiffs questioned Pratt for over *5 hours* at his first deposition on October 4, 2012.  (Ex. 10.)  Plaintiffs assert they need more

1    information from Pratt as a result of the Corizon takeover, but Corizon has only been

2    providing health care to ADC inmates for approximately 5 months. Plaintiffs do not need

3    7 hours to obtain information regarding a five-month time period. Instead, Plaintiffs will

4    use this second deposition to ask duplicative questions and obtain information that was

5    available to them during Pratt's first deposition, but that they failed to inquire about. This

6    Court was clear that it was "not disposed to let [Plaintiffs] depose people twice" and "one

7    must show justification for depositing a witness a second time" (Ex. 2 at 47).

8        Even more puzzling is Plaintiffs' assertion that because Pratt was produced in

9    response to a 30(b)(6) notice, Plaintiffs are entitled to re-depose him in his "individual

10   capacity." The Court has already rejected this argument, stating, "how is their knowledge

11   and their brains different whether they are a public official or just a guy"; "I don't see any

12   practical sense to that idea."; "But I don't see any practical sense to the idea that what you

13   know in your head and you testify to is different in your capacity as a public official and

14   your capacity as a human being." (Id. at 47). Defendants agree with the Court.

15       Rule 30(b)(6) Depositions

16       In this Court's October 4, 2012 Order, the Court noted, "The number and extent of

17   Rule 30(b)(6) depositions sought by Plaintiffs was extreme." (Dkt. #. 171.)[16] At the time

18   of that Order, Plaintiffs had taken seven ADC 30(b)(6) depositions. Since that order,

19   Plaintiffs have taken three more 30(b)(6) depositions (two Wexford, one Smallwood). For

20   the first time in their "Motion for Clarification" and without any prior notice to

21   Defendants, Plaintiffs advised the Court they would notice an additional *nine* 30(b)(6)

22   depositions – two of ADC and seven of Corizon. The Court has already noted the

23   extreme number of 30(b)(6) depositions noticed by Plaintiffs. (Dkt. #. 171.) Moreover,

24   Plaintiffs have never indicated to Defendants they would want to depose additional

25   individuals pursuant to 30(b)(6). Plaintiffs should not be permitted to take any more

26   _____

27       [16] The Court also noted that, "Sweeping discovery from a large organization is
     usually better and far more economically obtained by written discovery, with Rule
28   30(b)(6) depositions to supplement." (Dkt. # 171.)

Rule 30(b)6 depositions. In their portion of the Discovery Dispute, they assert they seek "only two" more, but at the meet-and-confer, they would not commit to a limit. In the spirit of compromise, and despite Plaintiffs' abuse of the 30(b)(6) tool, Defendants agreed to allow *one* 30(b)(6) deposition of Corizon with the understanding that this deposition would go toward Defendants' proposed twenty-five limit and Defendants reserve the right to object to any overly broad or unduly burdensome topics contained in the 30(b)(6) notice.

The topics in the purported 30(b)(6) notices are also duplicative.  For example, Plaintiffs want to conduct a 30(b)(6) deposition of ADC regarding "the provision of mental health care to all members of the Isolation-Sub-class in ASPC-Perryville, ASPC-Florence, and ASPC-Eyman." (Dkt. # 577 at 5.)  Plaintiffs have already conducted a 30(b)(6) deposition (Dr. Shaw) on this very topic.  (Ex. 12; Dkt. # 82-1 at 8 [Topic 20: Policies and procedures for the provision of mental health care to prisoners in isolation]). Plaintiffs also want to conduct a 30(b)(6) deposition of ADC regarding "conditions of confinement in isolation at ASPC-Perryville, ASPC-Florence, and ASPC-Eyman" (Dkt. # 577 at 5), but they have already deposed Greg Fizer regarding that very topic.  (Dkt. # 81-1 at 7 [Topic 2: Conditions of confinement in isolation]).  Mr. Fizer was originally identified as being the Rule 30(b)(6) designee in response to a prior Rule 30(b)(6) notice, but after this Court warned Plaintiffs that their notices were excessive, Plaintiffs turned around and noticed him individually.  (Ex. 11.)

<u>Defense Trial Witness Deposition</u>

Plaintiffs request "the right to depose any witness Defendants intent to call at trial" and alternatively an order prohibiting Defendants from calling any witness that Plaintiffs have not had an opportunity to depose.  This was not a topic discussed at the meet-and-confer, and likely so because it is an outrageous and legally unsupportable contention. Plaintiffs do not have a right to depose every witness on Defendants' witness list.  The Court has already made that perfectly clear.  (Ex. 1 at 23–24.) The cases Plaintiffs cite are inapposite, and merely hold that a court may preclude trial witnesses as a *discovery*

1   *sanction* for the parties' failure to comply with discovery orders.  *See Smith v. County of*

2   *Nassau*, 2013 WL 1232995 at *2 (E.D.N.Y. March 26, 2013);*Winding v. Allstate Ins. Co.*,

3   2012 WL 2090144 (E.D. Cal. June 8, 2012), *reconsideration denied*, 2012 WL 2934820

4   (E.D. Cal. July 18, 2012).  This is Plaintiffs' case and their burden.  They can depose the

5   witnesses they want to try and prove their case. Defendants must defend against Plaintiffs'

6   allegations, but Plaintiffs have no corresponding right to depose the witnesses Defendants

7   intend to call.  Indeed, Defendants cannot proclaim precisely who they will be calling at

8   trial, as that determination will depend on the evidence Plaintiffs present, which will not

9   be known up to the time of trial.

10       Defendants note that they made an effort to identify the testimony of trial witnesses

11   in their most recent disclosure statement. Plaintiffs never objected to the sufficiency of

12   that disclosure until today, when for the first time they stated that some witnesses'

13   proposed testimony was not adequately disclosed. If Plaintiffs' counsel had made

14   Defendants aware of these issues, they would have been revised.

15   **E-Mail**

16       **Plaintiffs' Position**

17       As this Court knows, Plaintiffs have been requesting a review and production of

18   Defendants' email files since the opening of discovery.  Plaintiffs have returned to the

19   Court repeatedly and the Court even ordered at the last hearing that email must be

20   produced.  (Doc. No. 567 at 3-4).  Consistent with the Court's order, Plaintiffs have

21   agreed to limit the request for email to two types:  (1) email from four identified

22   individuals (the named defendants plus two others) that includes particular search terms

23   (e.g., Wexford, Corizon); and (2) email reviewed by Defendants of any of the witnesses

24   they intend to call at trial.  Ex. F (8/19/13 email from C. Mitchell to L. Rand).  Defendants

25   never responded to that email and now claim there is no dispute.  But there is, because

26   they have yet to agree to the production of any email on any kind of concrete schedule.

27   Their response below adds no clarity to when a production will actually happen.

28   Additionally, Plaintiffs' counsel were plain at the meet-and-confer that the Court has

1   asked for a report on this issue and Plaintiffs intended to include it in this Joint Statement.

2   Any representation to the contrary is just flat-out false.

3   As to the first category, we know this is likely to include highly relevant

4   documents because the incomplete materials we have received to date have included

5   important email.

6

7

8

9

10   Further, the numbers the Defendants previously quoted to the Court (more than

11   22,000 documents) were before any type of de-duplication or exclusion of privileged

12   email.  With de-duplication, Plaintiffs anticipate the burden of review will substantially

13   diminish and have offered to consider additional ways to narrow the production if that

14   does not prove to be the case.  *See* Ex F.

15   As to the second category, which would be produced in addition to the first

16   category, it is prejudicial for Defendants to prevail on a burden argument to block

17   production and then turn around and use the same materials offensively against Plaintiffs.

18   If Defendants only have to produce email they are reviewing anyway, then the burden

19   argument largely disappears.  Plaintiffs are not asking them to review anything they will

20   not be reviewing any way.  Conversely, Plaintiffs suffer great prejudice if Defendants can

21   cherry-pick email to use at trial without having to produce other email they have reviewed

22   for the same witness that may contradict or impeach the testimony they are eliciting.

23   **Defendants' Position**

24   Plaintiffs' counsel conveyed to Defendants' counsel during the meet-and-confer

25   that they would *not* include this topic in the Discovery Dispute. That is because there is

26   currently no impasse. The parties are still currently negotiating whether an efficient

27   production can be done. Nonetheless, they have been included. The court should not

28   address this issue until there is an actual dispute; it is not yet ripe.  Defendants note,

1  however, that Plaintiffs continue to misrepresent that they have limited their requests.

2  What started out in April 2013 as emails from three custodians with one search term

3  during a limited period of time, increased in August 2013 to four custodians with two

4  search terms during a more expanded period of time.  Now, in their Discovery Dispute,

5  and for the first time, they are requesting a second set of emails: any "email reviewed by

6  Defendants of any of the witnesses they intend to call at trial."  The court stated in April

7  2013 that their original request was burdensome.  They have only gone up from there.

8

9  Dated:  August 26, 2013                              **JONES DAY**

10

11                                                      By:   s/ Caroline Mitchell
                                                        Caroline Mitchell (Cal. 143124)*
12                                                      David C. Kiernan (Cal. 215335)*
                                                        Sophia Calderón (Cal. 278315)*
13                                                      Sarah Rauh (Cal. 283742)*
                                                        555 California Street, 26th Floor
14                                                      San Francisco, California 94104
                                                        Telephone:  (415) 875-5712
15                                                      Email:     cnmitchell@jonesday.com
                                                                   dkiernan@jonesday.com
16                                                                 scalderon@jonesday.com
                                                                   srauh@jonesday.com

17                                                      *Admitted *pro hac vice*

18                                                      John Laurens Wilkes (Tex. 24053548)*
                                                        Taylor Freeman (Tex. 24083025)*
19                                                      **JONES DAY**
                                                        717 Texas Street
20                                                      Houston, Texas 77002
                                                        Telephone:  (832) 239-3939
21                                                      Email:     jlwilkes@jonesday.com
                                                                   tfreeman@jonesday.com
22
                                                        *Admitted *pro hac vice*
23

24

25

26

27

28

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone: (212) 326-3498
Email:   kmamedova@jonesday.com
         jkmessina@jonesday.com

*Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:   dbarr@perkinscoie.com
         agerlicher@perkinscoie.com
         keidenbach@perkinscoie.com
         jhgray@perkinscoie.com
         mdumee@perkinscoie.com

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF
ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:   dpochoda@acluaz.org
         kflood@acluaz.org
         jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct.
R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:     dspecter@prisonlaw.com
               ahardy@prisonlaw.com
               snorman@prisonlaw.com
               ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON
PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@npp-aclu.org
               afettig@npp-aclu.org
               aquereshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted
 in DC; practice limited to federal
 courts.
**Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Dustin Brislan; Sonia
Rodriguez; Christina Verduzco; Jackie
Thomas; Jeremy Smith; Robert Gamez;
Maryanne Chisholm; Desiree Licci; Joseph
Hefner; Joshua Polson; and Charlotte
Wells, on behalf of themselves and all others
similarly situated*

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on August 26, 2013, I electronically transmitted the above

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrants:

5

6

Michael E. Gottfried
Katherine E. Watanabe

7

Lucy M. Rand
Assistant Arizona Attorneys General

8

Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov

9

Lucy.Rand@azag.gov

10

Daniel P. Struck
Kathleen L. Wieneke

11

Timothy J. Bojanowski
Rachel Love

12

Nicholas D. Acedo
Courtney R. Cloman

13

Ashlee B. Fletcher
Anne M. Orcutt

14

STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com

15

kwieneke@swlfirm.com
tbojanowski@swlfirm.com

16

rlove@swlfirm.com
nacedo@swlfirm.com

17

ccloman@swlfirm.com
afletcher@swlfirm.com

18

aorcutt@swlfirm.com

19

*Attorneys for Defendants*

20

21

Jennifer Alewelt
Asim Varma

22

Sarah Kader
J.J. Rico

23

Cathleen M. Dooley
**ARIZONA CENTER FOR DISABILITY LAW**

24

jalewelt@azdisabilitylaw.org
avarma@azdisabilitylaw.org

25

skader@azdisabilitylaw.org
jrico@azdisabilitylaw.org

26

cdooley@azdisabilitylaw.org

27

*Attorneys for Plaintiff Arizona Center for Disability Law*

28

s/S. Neilson