Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email: dpochoda@acluaz.org
          kflood@acluaz.org
          jlyall@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,
Dustin Brislan, Sonia Rodriguez, Christina Verduzco,
Jackie Thomas, Jeremy Smith, Robert Gamez,
Maryanne Chisholm, Desiree Licci, Joseph Hefner,
Joshua Polson, and Charlotte Wells, on behalf of
themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON
 SIGNATURE PAGE]**

Jennifer Alewelt (Bar No. 027366)
Asim Varma (Bar No. 027927)
Sarah Kader (Bar No. 027147)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email: jalewelt@azdisabilitylaw.org
          avarma@azdisabilitylaw.org
          skader@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | No. CV 12-00601-PHX-NVW (MEA)<br><br>**JOINT REQUEST FOR CLARIFICATION**<br><br>**(EXPEDITED CONSIDERATION REQUESTED)** |

78204-0001/LEGAL27782244.1

1    The parties seek clarification of the Court of its August 30 Order.   The parties

2    request that this request be resolved immediately because pursuant to the Court's

3    scheduling order, fact depositions must be completed by September 20, five business days

4    prior to the close of fact discovery.   The parties have met and conferred and certify that

5    they have reached an impasse in their interpretations of two sections of the Court's

6    August 30 Order.

7    **Disputed Issues**

8    **1.    Expert Tours:**

9    The Court ordered that "Plaintiffs are permitted one expert tour each of ASPC-

10   Tucson and ASPC-Florence." (Doc. 611 at 1.) Is each tour limited to one day, or is each

11   tour allowed to span two days?

12   **2.    Depositions:**

13   A.    The Court ordered that "Each side is permitted to take 25 depositions.

14   Plaintiffs may depose all 11 contract monitors and those depositions do not count toward

15   the total of 25."   (Doc. 611 at 1)   Regarding the "11 contract monitors," was the Court

16   referring to the contract monitors that are assigned to a specific facility and responsible for

17   ensuring compliance with the ADC-Corizon contract at that facility, or was the Court

18   referring to any individual employed in the ADC Health Services Contract Monitoring

19   Bureau, including those who monitor statewide compliance;

20   B.    The Court ordered that "Plaintiffs may use their remaining depositions as

21   they wish and the Court will not issue further directives regarding 30(b)(6) depositions or

22   trial witness depositions."   (Doc. 611 at 1)   In tabulating the number of depositions that

23   have been taken thus far, the parties cannot agree on the number of Rule 30(b)(6)

24   depositions that count against the 25-deposition limit.   The parties ask the Court to rule on

25   whether the depositions taken pursuant to the 30(b)(6) notices at Dkt. # 80 and Dkt. # 81

26   count towards the 25-deposition limit; and

27

28

78204-0001/LEGAL27782244.1

C.      Whether Ben Shaw, who has already been deposed as a Rule 30(b)(6) witness, can be deposed a second time in his individual capacity as an employee of Corizon, Inc.

**Plaintiffs' Introduction**

On August 30, 2013, this Court issued an order (Doc. 611) clarifying its previous order (Doc. 567) regarding the parties' proposed discovery plans.  Defendants, however, have refused to honor the plain language of the Court's order and are refusing to produce discovery according to the Court's direction.  For example, as will be explained below, Plaintiffs requested two-day medical expert tours at two prisons.  The Court granted that request, but Defendants will not allow Plaintiffs to tour for more than one day for each prison absent further order of the Court.  Similarly, even though the Court permitted Plaintiffs to take the depositions of ADC's 11 "contract monitors" (plus an additional 25 other depositions), Defendants are not including "statewide" monitors as part of those 11 monitor depositions, even though the Court's order nowhere so limits those depositions.  Thus, Defendants have said that they will count any "statewide monitors" against the 25 total depositions that Plaintiffs are allowed for the entire case.  This would circumvent the Court's order allowing Plaintiffs to depose 11 "contract monitors" and 25 other witnesses.  Here again, unless the Court intervenes, Defendants will be able to prevent Plaintiffs from effectuating the clear intent of the Court's order.  Defendants' obstructive tactics this near to the close of discovery is severely prejudicing Plaintiffs' ability to obtain evidence to prove their case.

**Defendants' Introduction**

The Court canceled the expert tours, then reconsidered and allowed Plaintiffs to take two more.  Plaintiffs are insisting on four.  The Rules of Civil Procedure authorize 10 depositions without leave of court.  The Court granted Plaintiffs leave to take 25, but Plaintiffs are insisting on taking 34.  Defendants are not being obstructive; Plaintiffs are taking advantage of a favorable ruling.  Defendants merely seek clarification. Any prejudice resulting from these outstanding issues is Plaintiffs' own fault, as they decided

1    to wait and raise these issues at the eleventh hour of discovery.  Defendants and the Court

2    are the victims of *their* delay tactics.

3         ***Expert Tours***

4         Plaintiffs' Position:   The Court's August 30 order states that "Plaintiffs are

5    permitted one expert tour each of ASPC-Tucson and ASPC-Florence." (Doc. 611 at 1)  In

6    their request for clarification, Plaintiffs asked that they be permitted to have a medical

7    expert tour the Tucson and Florence facilities for two days each, as previously noticed.

8    (Doc. 577 at 9, *citing* Doc. 560 at ¶¶ 2-3)  Plaintiffs interpret the Court's order to grant the

9    two two-day tours, as described and requested in their moving papers.   Defendants

10   interpret the Court's statement to mean two one-day tours.  Nothing in the request or the

11   Court order suggests that the tours should be limited to one day per institution.   In any

12   event, Plaintiffs have already informed Defendants that their expert will have to finish his

13   second day of touring at both facilities no later than 2 pm.   (Ex. 1)   To the extent

14   requested medical records are compiled and ready for review by the time of the tours, and

15   there are no unreasonable delays in touring the facilities, the expert may very well be done

16   even earlier than 2 p.m. on his second day at each facility, which makes Defendants'

17   position all the more absurd.

18        Defendants' Position:   The Court is allowing "one expert tour each of ASPC-

19   Tucson and ASPC-Florence."   The order is silent as to how many days each tour can be

20   (and it certainly does not explicitly authorize 2-day tours), yet Plaintiffs assume that the

21   Court ordered 2-day tours simply because that is what they requested, and chastise

22   Defendants for refusing "to honor the plain language of the Court's order."   It is

23   presumptuous, to say the least, for Plaintiffs to contend that the Court granted 2-day tours

24   simply because that is what they asked for, particularly when the Court initially canceled

25   both tours in their entirety and expressed skepticism as to the utility of the tours: "I don't

26   understand these expert tours.  They look to me like they are being done in lieu of

27   interrogatories, walking around the prison asking people questions.    That's what

28   interrogatories are for." (Dkt. # 567 at 4–5; Dkt. # 594–7 at 17.)  Plaintiffs' counsel has

1    informed Defendants that their experts need two days (one 9-hour day and one 7-hour

2    day) so that their expert can not only inspect the medical units, but also casually interview

3    inmates and sit in a room and review 151 medical records.  (Ex. 7)  But Plaintiffs have

4    already requested these same medical records in a request for production, and Defendants

5    will be producing them on or before September 16, 2013, the day they are due, which is

6    *before* the tentatively scheduled tours.  (*Id.*)  There is no need for 2-day tours.  The burden

7    far outweighs the necessity.

8         ***Depositions***

9         A.    <u>Plaintiffs' Position</u>:  The Court's August 30 order states that "Plaintiffs may

10   depose all 11 contract monitors and those depositions do not count toward the total of 25.

11   Plaintiffs may use their remaining depositions as they wish…"  (Doc. 611 at 1)  There are

12   more than 11 persons employed in the ADC Health Services Contract Monitoring Bureau,

13   some of them are assigned to monitor specific prisons, and others monitor health care

14   delivery at all prisons on a statewide level.  Plaintiffs have subpoenaed (and in some

15   cases, already have deposed) individuals who monitor specific prisons and those who

16   monitor statewide.

17        Defendants now argue they can dictate how Plaintiffs use their remaining

18   depositions and that six of these depositions are not "contract monitors" because the

19   individuals provide statewide monitoring (*i.e.* dental, medical, or mental health care), and

20   Plaintiffs can only depose persons assigned to monitoring a single prison.  Defendants

21   previously had not distinguished between the statewide and facility monitors, and

22   disclosed to Plaintiffs that both the statewide and facility monitors were, *inter alia*, "likely

23   to have discoverable information with regard to the implementation of health care to

24   inmates housed at ADC facilities as well as the management of health care within each

25   respective facility…"  (Ex. 5 at pages 12-13: Defs' 8th Supp. Disc., 5/17/13).  Plaintiffs'

26   interpretation of the Court's order that "Plaintiffs may use their remaining depositions as

27   they wish" for "contract monitors" means that these eleven monitor depositions includes

28   the statewide monitors of contract compliance, as this class action was certified on the

1   basis of statewide deficiencies and practices, and any injunctive relief will be on a

2   statewide basis.

3       A.    Defendants' Position:

4       Approximately 34 ADC employees work in the Health Services Contract

5   Monitoring Bureau ("Bureau").  (Ex. 2; Ex. 3, ¶ 3)  The Bureau oversees many things,

6   including grievance appeals, medical records, contract compliance, and quality/clinical

7   care.  (Ex. 3, ¶ 3)  The contract compliance component is responsible for ensuring that

8   private vendors are fulfilling their contractual obligations with ADC.  (*Id.*)  Each facility

9   has a contract monitor that is responsible for ensuring Corizon's compliance with its

10  duties relating to health care under the ADC-Corizon contract. (Id.) Those contract

11  monitors are:

12      Anthony Medel (ASPC-Yuma)          Jen Mielke-Fontaine (ASPC-Florence)
        Troy Evans (ASPC-Safford)          Matthew Musson (ASPC-Eyman)
13      Helena Valenzuela (ASPC-Phoenix)   Terry Allred (ASPC-Lewis)
        Sam Tardibuono (ASPC-Douglas)      Mark Haldane (ASPC-Perryville)
14      John Mitchell (ASPC-Winslow)       Marlena Bedoya (ASPC-Tucson)

15  (Ex. 2; Ex. 3, ¶ 4)  These 10 contract-compliance monitors are supervised by Program

16  Evaluation Administrator (Contract Compliance) Kathleen Campbell.  (Ex. 2; Ex. 3, ¶ 5)

17  The quality/clinical care component is primarily responsible for overseeing the quality of

18  care that is provided to ADC inmates, including medical care, dental care, and mental

19  health care, and ensuring that certain standards are met.  (Ex. 3, ¶ 6)  Clinical monitors are

20  not assigned to a specific facility, but instead monitor care statewide.[1]  (*Id.*)

21      When the contract monitor issue first came up at the August 7, 2013 stay hearing,

22  the discussion was focused on the contract monitors at each facility.  (Ex. 4 at 19–20, 23,

23  39, 43)  Plaintiffs complained that they had to depose each one because Defendants would

24  argue that the care was not the same at each facility.  (*Id.* at 35–36.)  But now that the

25  Court has exempted these facility-contract monitors from the 25-deposition limit,

26

27      [1] There are two exceptions: Erin Barlund (Lewis/Perryville) and Trudy
    Dumkrieger (Tucson) monitor care at specific facilities because of their size and the
28  number of inmates.  (Ex. 3, ¶ 6)

1   Plaintiffs are trying to include within that exemption ADC employees responsible for

2   statewide quality-of-care monitoring simply because they all fall within the Bureau.  They

3   contend that the following ADC employees do not count against their 25-deposition limit:

> Karen Chu, D.M.D. (Dental Program Manager)
> David Robertson, D.O. (Medical Program Administrator)
> Vanessa Headstream, R.N. (Health Services Coordinator – Nursing Monitor)
> Nicole Taylor, Ph.D. (Health Services Coordinator – Mental Health Monitor)
> Martin Windland, R.Ph. (Pharmacy Monitor)
> Steven Bender (Private Prison Contract Monitor)

8   These individuals do not fall within the "11 contract monitor" exemption.   Chu,

9   Robertson, Headstream, Taylor, and Windland are not "contract" monitors responsible for

10  monitoring compliance with the ADC-Corizon contract at a specific facility.[2]   (Ex. 2;

11  Ex. 3, ¶ 7)   They monitor "care" statewide.   (*Id.*)   Bender monitors private prison

12  contracts, not the provision of health care under the ADC-Corizon contract.  (Ex. 2; Ex. 3,

13  ¶ 8)

14       Defendants respectfully request that the Court clarify that the "11 contract

15  monitors" include the 10 listed facility contract monitors and Kathleen Campbell, their

16  supervisor, and that their depositions are limited to their roles as contract monitors.

17  Significantly, Plaintiffs initially noticed 8 of the 10 facility-contract monitors.   (Dkt.

18  # 561–1 at 12–13.)  They subsequently withdrew most of those, and now have deposed or

19  seek to depose only three: Valenzuela (Phoenix), Bedoya (Tucson), and Tardibuono

20  (Douglas).[3]  Clearly, Plaintiffs are not interested in facility specific contract compliance.

21  They want to depose individuals regarding statewide care, which is fine, but those

22  individuals do not fall within the Court's "11 contract monitor" exemption.[4]

23

24       [2]  Chu, Robertson, and Headstream were deposed before the Court's order setting
    deposition limits.  Taylor was deposed on September 5, 2013.
25       [3]  Plaintiffs have noticed the deposition of Karyn Christie, who was formerly the
    contract monitor at ASPC-Safford.  She is now retired.  If Plaintiffs substitute the current
26  Safford contract monitor (Evans) for Christie, then his deposition would not count against
    the 25-deposition limit. But if they do not, then Christie would count towards that limit.
27       [4]  Plaintiffs' cite to an outdated disclosure statement.  (Ex. 5; Dkt. # 600–1 at 8–50)
    At that time, the critical distinction between a facility contract-compliance  monitor and a
28  statewide care monitor was not an issue.

1   **B.**   <u>Plaintiffs' Position</u>:  Last fall, Defendants produced two witnesses (Mr. Pratt
2   and Dr. Shaw) each for one seven-hour 30(b)(6) deposition.   At those depositions
3   Defendants designated them as responsive to other topics from other 30(b)(6) deposition
4   notices.  Defendants designated Mr. Pratt to cover two topics total from two other 30(b)(6)
5   notices, and they designated Dr. Shaw to cover four topics total from two other 30(b)(6)
6   notices.   Defendants incorrectly list Mr. Pratt as being produced for all ten topics on
7   deposition notice Dkt. 80; in reality, he was produced for one topic, and Dr. Shaw was
8   produced for one topic on the deposition noticed at Dkt. 80.   Defendants refused on
9   October 5, 2012 to produce their designee for the other eight topics on that notice.
10   Defendants incorrectly list Dr. Shaw as being produced for all 16 topics on deposition
11   notice Dkt. 81; in reality, he was produced for three of those topics.   Defendants refused
12   to produce their designee (Mr. Fizer) for the other 13 topics on that notice, and Plaintiffs
13   were forced to subpoena Mr. Fizer in his individual capacity.

14   The depositions did not exceed 7.5 hours for either Mr. Pratt or Dr. Shaw.
15   Defendants count these two depositions of Pratt and Shaw as four depositions against the
16   limit of 25 set by the Court.  Mr. Pratt and Dr. Shaw's depositions should count as one
17   deposition each.

18   **B.**   <u>Defendants' Position</u>:   In total, Plaintiffs have served <u>nine</u> 30(b)(6)
19   deposition notices.  (Dkt. ## 44, 76, 78, 80, 81, 82, 98, 436, 490)  These notices have
20   included <u>124 topics</u>.  (*Id.*)  The Court has recognized that the "number and extent of
21   Rule 30(b)(6) depositions sought by Plaintiffs was extreme" and that "[p]erfection is
22   impossible in identifying a person who has all the knowledge of an organization on broad
23   matters."  (Dkt. # 171)  Defendants have done their best to meet Plaintiffs demands and
24   have provided multiple witnesses to try and cover all of their topics, including:

25   (Dkt. 44) – Electronically Stored Information, Topics 1-15
    Deponents:  Curt Czarsty, Joseph Nicoletti, Carol Pearson, and Ronda Lee
26
27   (Dkt. 76) – Health Records/Contract Proposals/Contract Compliance, Topics 1-6
    Deponents:  Karen Ingram and Richard Pratt
28

1   (Dkt. 78) – Health Care Policies, Topics 1-18
    Deponent: Richard Rowe
2
    (Dkt. 80) – Cost Containment, Budget, Staffing, Training, Topics 1-10
3   Deponent: Richard Pratt

4   (Dkt. 81) – Isolation Policies, Topics 1-16
    Deponent: Ben Shaw
5
    (Dkt. 82) – Mental Health Policies, Topics 1-24
6   Deponent: Ben Shaw

7   (Dkt. 98) – Dental Policies, Topics 1-16
    Deponent: Michael Adu-Tutu
8
    (Dkt. 436) – Wexford, Topics 1-10
9   Deponent: Karen Mullenix

10  (Dkt. # 490) – Smallwood, Topics 1–9
    Deponent: William Smallwood
11

12      Up until this current dispute, Plaintiffs have maintained that each notice constitutes

13  one deposition, even where there were multiple deponents.  (Dkt. # 559 at 6 n.8; Dkt.

14  # 577 at 2 n.2; Dkt. # 600 at 9 n.7)  They also previously acknowledged that the witness

15  offered in response to the 30(b)(6) notice at Dkt. # 81 was valid and counted as one of

16  their depositions.  (Dkt. # 600 at 9 n.7)  Now, with a deposition limit imposed, they are

17  scrambling to create space and reneging on their prior position.  They ask the Court to not

18  include the notices at Dkt. # 80 and Dkt. # 81 because those deponents were also produced

19  as witnesses for other 30(b)(6) notices.  But the fact of the matter is that those witnesses

20  did provide testimony on topics across multiple notices.  (Dkt. # 596, Ex. 10; Dkt. # 605–

21  3) Their testimony cannot be ignored.  Furthermore, Plaintiffs have noticed two additional

22  30(b)(6) depositions that include many of the same topics that were already testified to in

23  response to Dkt. # 80 and Dkt. # 81.  (Dkt. # 602–1 at 6–20)  They should not get a

24  second bite at the apple.

25      (C)    Plaintiffs' Position:

26      Under the Federal Rules of Civil Procedure, and caselaw from Ninth Circuit and

27  other courts, Plaintiffs are entitled to take the individual deposition of a person previously

28  designated as 30(b)(6) witness.  *See* Rule 30(b)(6) ("This paragraph (6) does not preclude

a deposition by any other procedure allowed by these rules"); *Dynetix Design Solutions Inc. v. Synopsys Inc.,* No. CV 11-05973 PSG, 2012 WL 5943105, at *2 (N.D. Cal. Nov. 27, 2012) ("The designation of Chan as Dynetix's 30(b)(6) witness does not somehow divest Synopsys' right to take the individual deposition of Mr. Chan.  Ninth Circuit courts have held that individuals noticed as an individual witness under Rule 30(b)(1) and also as the corporate representative under 30(b)(6) are 'presumptively subject to independent seven- hour time limits.'"); *Pecover v. Elec. Arts, Inc.*, Nos. 12-mcv-80064 CS (NC) & 08-cv-02820 CW (NC), 2012 WL 951255, at *3 (N.D. Cal. Mar. 20, 2012) (permitting personal deposition of witness in part because the topics to be covered in the personal deposition were distinct from the Rule 30(b)(6) topics); *E.E.O.C. v. Winn-Dixie, Inc*., CA 09-0643-C, 2010 WL 2202520 (S.D. Ala. May 28, 2010) (allowing deposition of individual after same witness had served as a Rule 30(b)(6) designee because a "deposition pursuant to Rule 30(b)(6) is substantially different form a witness's deposition as an individual"); *see also AG-Innovations, Inc. v. United States*, 82 Fed. Cl. 69, 81 (Fed. Cl. 2008) (due to the "qualitative difference" in the testimony a witness may give as an individual versus a Rule 30(b)(6) deponent, this person may be deposed twice).

In addition to the caselaw supporting Plaintiffs' position, the specific facts in this case show the need to depose Dr. Shaw in his individual capacity.  Defendants produced Dr. Shaw on October 2, 2012 as responsive to a 30(b)(6) notice, on behalf of ADC.  Since the time of the deposition, Dr. Shaw worked for ADC as the statewide monitor of Wexford Health, Inc.'s and Corizon, Inc.'s delivery of mental health care at all prisons, and at some point before May 17, 2013[5] he quit working at ADC and went to go work for Corizon as their statewide director of mental health care, now overseeing the delivery of mental health care at the same institutions he used to monitor.

---

[5] Defendants served a supplemental disclosure statement on May 17 that updated Dr. Shaw's status to be the "former" monitor of mental health care delivered at all the prisons.

(C)   <u>Defendants' Position</u>:   Plaintiffs have separately noticed the deposition of Ben Shaw, whom they have already deposed for 7 hours as a 30(b)(6) witness. (Dkt. # 605–3; Dkt. # 617–1 at 5–6)   They should not be permitted to depose him again. Plaintiffs tried this trick before, and the Court would not allow them to depose one witness twice, once as a 30(b)(6) witness and again as an individual.  (Dkt. ## 164, 166; Ex. 6 at 46–49)   Moreover, Plaintiffs do not specify why they need to depose Shaw again.   They simply claim they are entitled to it because he now works for Corizon.   That is not a legitimate basis.   Finally, unlike in *Dynetix*, Plaintiffs are not requesting two depositions before either deposition has occurred; they have already taken one deposition, and the court made clear it was reluctant to allow two depositions of any one witness.   And unlike in *Pecover*, Plaintiffs have not narrowed the topics to questions not previously asked; they want an open-ended, 7-hour deposition.

By Defendants count, Plaintiffs have taken or noticed the following depositions:

| **Non-Contract Monitors** | **Contract Monitors** |
|---|---|
| (1) Chu | (1) Valenzuela |
| (2) Weekly | (2) Bedoya (9/10/13) |
| (3) Crews | (3) Tardibuono (9/19/13) |
| (4) Echeverria | |
| (5) Sharp | |
| (6) Fizer | |
| (7) Conn | |
| (8) Robertson | |
| (9) Headstream | |
| (10) 30(b)(6) (Dkt. # 44) | |
| (11) 30(b)(6) (Dkt. # 76) | |
| (12) 30(b)(6) (Dkt. # 78) | |
| (13) 30(b)(6) (Dkt. # 80) | |
| (14) 30(b)(6) (Dkt. # 81) | |
| (15) 30(b)(6) (Dkt. # 82) | |
| (16) 30(b)(6) (Dkt. # 98) | |
| (17) 30(b)(6) (Dkt. # 436) | |
| (18) 30(b)(6) (Dkt. # 490) | |
| (19) Taylor | |
| (20) Gross (9/9/13) | |
| (21) Profiri (9/11/13) | |
| (22) Williams (9/12/13) | |
| (23) Bender (9/12/13) | |
| (24) Somner (9/13/13) | |
| (25) Shaw (9/16/13) | |
| (26) Vukecivic (9/16/13) | |
| (27) 30(b)(6) (9/17/13) | |
| (28) 30(b)(6) (9/18/13) | |

1   (29) Winland (9/18/13)
    (30) Christie (9/18/13)
2   (31) Lewis (9/19/13)
    (32) Hanstad (9/20/13)
3   (33) Pratt (TBD)
    (34) Ryan (TBD)
4

5   They are nine over the 25-deposition limit.

6         Respectfully submitted,

                                          **PRISON LAW OFFICE**
7   Dated:  September 6, 2013

                                          By:   _s/ Corene Kendrick_
8                                               Donald Specter (Cal. 83925)*
                                                Alison Hardy (Cal. 135966)*
9                                               Sara Norman (Cal. 189536)*
                                                Corene Kendrick (Cal. 226642)*
10                                              **PRISON LAW OFFICE**
                                                1917 Fifth Street
11                                              Berkeley, California 94710
                                                Telephone:  (510) 280-2621
12                                              Email:   dspecter@prisonlaw.com
                                                         ahardy@prisonlaw.com
13                                                       snorman@prisonlaw.com
                                                         ckendrick@prisonlaw.com
14
                                                *Admitted *pro hac vice*
15
                                                Daniel C. Barr (Bar No. 010149)
16                                              Amelia M. Gerlicher (Bar No. 023966)
                                                Kirstin T. Eidenbach (Bar No. 027341)
17                                              John H. Gray (Bar No. 028107)
                                                Matthew B. du Mée (Bar No. 028468)
18                                              **PERKINS COIE LLP**
                                                2901 N. Central Avenue, Suite 2000
19                                              Phoenix, Arizona 85012
                                                Telephone:  (602) 351-8000
20                                              Email:   dbarr@perkinscoie.com
                                                         agerlicher@perkinscoie.com
21                                                       keidenbach@perkinscoie.com
                                                         jhgray@perkinscoie.com
22                                                       mdumee@perkinscoie.com

23

24

25

26

27

28

78204-0001/LEGAL27782244.1                    -11-

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:    dpochoda@acluaz.org
          kflood@acluaz.org
          jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:    dfathi@npp-aclu.org
          afettig@npp-aclu.org
          aquereshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email:    cnmitchell@jonesday.com
          dkiernan@jonesday.com
          scalderon@jonesday.com
          srauh@jonesday.com

*Admitted *pro hac vice*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email:   jlwilkes@jonesday.com
         tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone: (212) 326-3498
Email:   kmamedova@jonesday.com
         jkmessina@jonesday.com

*Admitted *pro hac vice*

Kevin Brantley (Cal. 251886)*
**JONES DAY**
3161 Michelson Drive, Suite 800
Irvine, California 92612
Telephone: (949) 851-3939
Email:   kcbrantley@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Dustin Brislan; Sonia
Rodriguez; Christina Verduzco; Jackie
Thomas; Jeremy Smith; Robert Gamez;
Maryanne Chisholm; Desiree Licci; Joseph
Hefner; Joshua Polson; and Charlotte
Wells, on behalf of themselves and all others
similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By: /s/ Jennifer Alewelt
    Jennifer Alewelt (Bar No. 027366)
    Asim Varma (Bar No. 027927)
    Sarah Kader (Bar No. 027147)
    5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
    Telephone:  (602) 274-6287
    Email:   jalewelt@azdisabilitylaw.org
           avarma@azdisabilitylaw.org
           skader@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**STRUCK WIENEKE & LOVE, P.L.C.**

By /s/ Corene T. Kendrick (*with authority*)
    Daniel P. Struck
    Kathleen L. Wieneke
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    Courtney R. Cloman
    Ashlee B. Fletcher
    Anne M. Orcutt
    3100 West Ray Road, Suite 300
    Chandler, Arizona 85226

    Arizona Attorney General Thomas C. Horne
    Office of the Attorney General
    Michael E. Gottfried
    Lucy M. Rand
    Assistant Attorneys General
    1275 W. Washington Street
    Phoenix, Arizona 85007-2926

*Attorneys for Defendants*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 6, 2013, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
Ashley B. Zuerlein
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov
Ashley.Zuerlein@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

*Attorneys for Defendants*

 s/ Delana Freouf