**EXHIBIT 1**

**EXHIBIT 1**

## RE: Plaintiffs' portion

Rand, Lucy

**Sent:** Friday, September 06, 2013 2:07 PM
**To:** Caroline N Mitchell [cnmitchell@JonesDay.com]
**Cc:** Giardina, Michael (MGiardina@swlfirm.com); Martin, Dennis; Gottfried, Michael; Acedo, Nicholas (nacedo@swlfirm.com); Bojanowski, Timothy (tbojanowski@swlfirm.com); Cloman, Courtney (ccloman@swlfirm.com); Fletcher, Ashlee (afletcher@swlfirm.com); Love, Rachel (rlove@swlfirm.com); Orcutt, Anne (aorcutt@swlfirm.com); Struck, Dan Patrick (dstruck@swlfirm.com); Wieneke, Kathleen (kwieneke@swlfirm.com)
**Attachments:** PHX-#3532794-v1-PARSONS__~1.DOCX (46 KB)

Caroline,

I was not able to obtain any comments from my people yet; therefore, this version is likely to change.

Lucy

Lucy M. Rand, AAG
Office of the Attorney General
(602) 542-7683 Direct

The information contained in this e-mail message is privileged and confidential, intended only for the use of the specific individuals and/or entities to which it is addressed.  If you are not one of the intended recipients, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you received this communication in error, please immediately notify the sender by return e-mail or call (602) 542-7683.  Thank you.

**From:** Caroline N Mitchell [mailto:cnmitchell@JonesDay.com]
**Sent:** Friday, September 06, 2013 2:01 PM
**To:** Rand, Lucy
**Subject:** Plaintiffs' portion

Hi Lucy,

Here's plaintiffs' portion.  If you send Defendants', I will incorporate.

Thanks,

Caroline


Caroline Mitchell
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104-1500

Telephone:  (415) 875-5712
Fax: (415) 875-5700
e-mail: cnmitchell@jonesday.com

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

7, 2013), hereinafter referred to as "Motion Transcript at __".)  Further, the Court stated that 16,000 e-mails were unduly burdensome. (Motion Transcript at 61:7-8.) The total number of e-mails currently being processed is 22,513.  A large reduction in e-mails—nearly 30%—must occur through de-duplication and filtering just to reach the 16,000 e-mail level—the number of e-mails the Court already said was unduly burdensome.  A 20% reduction would result in 18, 010 e-mails, which is well over the number the Court already stated was unduly burdensome.  Typically, de-duplication of e-mail data results in a 20% to 50% reduction (Wave Software at http://www.discoverthewave.com/products/107, last visited on Sep. 5, 2013); however, a 40 to 50% reduction is not very likely.

The number of e-mails also does not accurately portray the amount of work necessary to review and redact the e-mails and attachments.  Although we know that there are 22,513 e-mails, this does not foretell the ultimate number of attachments or number of pages.  An e-mail may range from 1 to 5 pages long; however, attachments, such as morning/executive reports, can be hundreds of pages long.  There also may be more than one file attached to each e-mail.

Defendants performed a preliminary and informal (not verified) processing of the "Corizon Search" data—the smaller data collection.  The 6,168 e-mails had approximately 1,432 attachments, which results in a total number of documents of approximately 7,600.  Of these approximately 7,600 documents, approximately 600 were duplicates, which results in de-duplicated documents totaling approximately 7,000.  This is approximately an 8% reduction in the number of documents after de-duplication.  After de-duplication, the number of documents *actually increased* by approximately 12%.  (These figures do not include filtering for attorney-client privilege documents.)  Of great significance is that these figures do not forecast the actual number of pages each document contains.  A very conservative estimate using a page count for each document of 3 pages, the "Corizon Search" data collection could yield approximately 21,000 pages.  The "Wexford Search" data collection is more than double the size of the "Corizon Search" data collection and, extrapolating the "Corizon Search" results to the "Wexford Search" data collection, the "Wexford Search" could conservatively yield approximately 42,000 pages.  Combining both data collections, Defendants could conservatively need to review and redact more than 63,000 pages for security-sensitive information.  This is truly unduly burdensome.

Defendants must perform a manual "eyes-on" review of each and every page due to the importance of the security concerns being reviewed for redaction.  For example, morning/executive reports show security issues and/or information at all ten prison complexes, such as prison gang intelligence; inmate-on-inmate assaults; details of prison searches, locations searched, when the searches occurred, and who performed the searches; contraband found, location found, and how the contraband

66 (Aug. 7, 2013), hereinafter referred to as "Motion Transcript at __".) Further, the Court stated that 16,000 e-mails were unduly burdensome. (Motion Transcript at 61:7-8.)

Currently, Plaintiffs want Defendants to process 22,513 e-mails. Typically, de-duplication of e-mail data results in a 20% to 50% de-duplication rate (Wave Software at http://www.discoverthewave.com/products/107, last visited on Sep. 5, 2013); however, a 40 to 50% reduction is not very likely. Defendants performed a preliminary and informal (not verified) processing of the "Corizon Search" data collection—the smaller of the "Wexford Search" and "Corizon Search" data collections. (Within two days of receipt of final (and verified) figures from the vendor, Defendants will file a supplement to this statement advising the Court of the actual figures. Defendants expect to receive these figures on or about September 11 or 12, 2013.) Processing of the "Corizon Search" data collection determined that there are 6,186 e-mails and 1,432 attachments, or a total of 7,618 documents. Of the 7,618 documents, only 600 documents were duplicates, which is an 8% de-duplication rate—a significantly low de-duplication rate. (These figures do not include filtering for attorney-client privilege documents.) The "Corizon Search" data collection, which was originally thought to have 6,186 e-mails, ultimately had 7,018 documents—an increase of 12%.

Of greater significance is that the total number of documents does not accurately forecast the number of pages or the work load involved in reviewing and redacting the documents for security-sensitive information. Although an e-mail may consist of only a few pages, an attachment may consist of hundreds of pages. In addition, an e-mail may have more than one attachment. A very conservative estimate using 3 pages per document as the average page count, the "Corizon Search" data collection could yield 21,000 pages. The "Wexford Search" data collection is more than double the size of the "Corizon Search" data collection. Extrapolating the "Corizon Search" results to the "Wexford Search" data collection, the "Wexford Search" could conservatively yield 42,000+ pages. Both data collections together result in the need to review and redact more than 63,000 pages for security-sensitive information. This is truly unduly burdensome.

Defendants must perform a manual "eyes-on" review of each and every page due to the importance of the security concerns being reviewed for redaction. For example, morning/executive reports show security issues and/or information at all ten prison complexes, such as prison gang intelligence; inmate-on-inmate assaults; details of prison searches, locations searched, when the searches occurred, and who performed the searches; contraband found, location found, and how the contraband was brought into the prison; inmate housing issues, including do not house with (DNHW) conflicts; and protective segregation/custody information. Further, the disclosure of the identification of individuals who participate or perform ancillary