# EXHIBIT 1

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Arizona

| | | |
|---|---|---|
| Victor Parsons, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   CV 12-00601-PHX-NVW (MEA) |
| Charles Ryan and Richard Pratt | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   Rule 30(b)(6) Designee, Corizon, Inc.
      Corizon, Inc., c/o Renaud Cook Drury Mesaros PA, One N. Central Ave., Suite 900, Phoenix, AZ 85004-4417

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

      See Attachment A for deposition topics.

| Place: Perkins Coie LLP | Date and Time: |
|---|---|
| 2901 N. Central Avenue, Ste. 2000 Phoenix, Arizona 85012-2788 | 09/19/2013 9:00 am |

The deposition will be recorded by this method:   stenographic

❏ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   09/10/2013

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | s/ Amelia M. Gerlicher _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Prisoner Plaintiffs and the Arizona Center for Disability Law                                          , who issues or requests this subpoena, are:
Amelia Gerlicher, Perkins Coie LLP, 2901 N. Central Avenue, Suite 2000, Phoenix, Arizona 85012, agerlicher@perkinscoie.com, 602-351-8308; Jennifer Alewelt, ACDL, 5025 East Washington St., Suite 202, Phoenix, AZ 85034, jalewelt@azdisabilitylaw.org, 602-274-6287

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  CV 12-00601-PHX-NVW (MEA)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*

 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

 **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

 **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

 **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

 **(i)** fails to allow a reasonable time to comply;

 **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

 **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

 **(iv)** subjects a person to undue burden.

 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

 **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

 **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

 **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

 **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*

 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

 **(i)** expressly make the claim; and

 **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# ATTACHMENT A

TO: 30(b)(6) Designee, Corizon, Inc.
c/o Renaud Cook Drury Mesaros PA
One N Central Ave Suite 900
Phoenix, AZ  85004-4417

PLEASE TAKE NOTICE that pursuant to Rule 45 of the Federal Rules of Civil Procedure, Plaintiffs command the 30(b)(6) Designee of Corizon, Inc. to appear and testify at deposition in this civil action at 9:00 a.m. on September 19, 2013 at the law offices of Perkins Coie LLP, 2901 N. Central Avenue, Ste. 2000, Phoenix, AZ 85012-2788. Plaintiffs intend to record the testimony stenographically using instantaneous (or "real time") transcription, which provides visual display of the testimony.

## DEFINITIONS

For the purposes of this deposition notice the following definitions shall apply.

1.     "ADC" means the Arizona Department of Corrections, including all its subdivisions, agents, employees, contractors, and attorneys.

2.     "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records,  reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including a Blackberry or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

3.     "CONDITIONS OF CONFINEMENT" means all circumstances REGARDING the state of being imprisoned.

4.     "CORIZON" means Corizon, Inc., including all of its subdivisions, agents, employees, contractors, and attorneys.

5.     "CORRECTIONAL STAFF" means custody staff employed or paid by the ADC to serve in a security or operational capacity.

6.     "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and DESCRIPTION and every tangible thing that is or has been in the possession, custody, or control of CORIZON, to which they have access, or of which they have knowledge, including, but not limited to, COMMUNICATIONS, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and regardless of the form of storage.

7.     "EMERGENCY MENTAL HEALTH CARE SERVICES" means treatment or care to address a mental health condition that is acute, causes substantial pain, and/or and poses a substantial and immediate risk to the life or mental health of a person.

8.     "ENTRY-LEVEL PRACTITIONERS" means unlicensed persons who provide HEALTH CARE to PRISONERS at the ADC subordinate to MID-LEVEL PRACTITIONERS or HEALTH CARE CLINICIANS.

9.     "HEALTH CARE" means the provision of care, including adequate diet, to address the MENTAL HEALTH CARE, MEDICAL CARE, or dental needs of a PRISONER, whether those needs arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic or preventive purposes.

10.     "HEALTH CARE CLINICIANS" means persons independently licensed to provide HEALTH CARE to PRISONERS at the ADC facilities, including but not limited to M.D., D.O., D.D.S., and Ph.D. credentialed staff.

11.     "HEALTH CARE PRIVATIZATION CONTRACT" means the contract executed on January 30, 2013, between ADC and Corizon, Inc., pursuant to State of

Arizona Request for Proposal Number ADOC12-00001105, for the privatization of all correctional health services.

12.    "HEALTH CARE RECORDS" means any and all documents maintained and recorded, whether in electronic or paper format, for individual PRISONERS regarding the HEALTH CARE they are receiving or requesting.

13.    "HEALTH CARE STAFF" means all staff employed or paid by the ADC, or paid indirectly by the ADC through CORIZON who are responsible for providing HEALTH CARE to ADC PRISONERS, including but not limited to HEALTH CARE CLINICIANS, MID-LEVEL PRACTITIONERS, ENTRY-LEVEL PRACTITIONERS, PHARMACISTS, and administrative and support staff.

14.    "ISOLATION UNITS" means Eyman-Special Management Unit ("SMU 1"), Eyman-Browning Unit, Florence-Central Unit, Florence-Kasson Unit, and Perryville-Lumley Special Management Area ("SMA").

15.    "MEDICAL CARE" means the provision of care to address the physical health needs of a PRISONER, whether those needs arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic or preventive purposes.

16.    "MENTAL HEALTH CARE" means the provision of care to address the psychiatric and/or psychological health needs of a prisoner, including but not limited to the prevention of self-harm and suicide.

17.    "MID-LEVEL PRACTITIONERS" means licensed professionals who provide HEALTH CARE to PRISONERS at the ADC under supervision by HEALTH CARE CLINICIANS.

18.    "OUTDOOR EXERCISE" means periods during which PRISONERS are permitted to exercise in the outdoors.

19.    "PHARMACIST" means a licensed professional who practices pharmacy.

20.    "POLICIES AND PROCEDURES" means policies, procedures, criteria, or practices, whether written or established through custom or use, including but not limited to policy and procedure manuals, directors' orders, protocols, directives, flowcharts,

-3-

institution post orders, and any other DOCUMENTS designed to direct the actions of ADC personnel, ADC contractors, and/or PRISONERS.

21.    "PRISONER" means a person incarcerated by the ADC.

22.    "PSYCHIATRIST" means a licensed physician certified by the American Board of Psychiatry and Neurology.

23.    "QUALITY ASSURANCE" means any activities implemented for the purpose of examining, assessing, evaluating, investigating, analyzing, or identifying the quality of a product or service.

24.    "REFERRAL" means a recommendation that a PRISONER obtain HEALTH CARE at ADC or non-ADC facilities, whether or not such HEALTH CARE is in fact ever provided.

25.    "REGARDING" or "REGARDED" to any given subject matter means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers to, relates to, responds to, states, summarizes, or is in any way relevant to the particular subject matter identified.

26.    "REVIEWS" means examinations, assessments, evaluations, or investigations performed by or at the direction of ADC staff or officials.

27.    "STAFFING SCHEDULE" means the days, hours, and/or shifts for which each member of the HEALTH CARE STAFF was scheduled to work, including overtime, on call and call-in coverage.

## TOPICS

1.    POLICIES AND PROCEDURES for HEALTH CARE STAFF monitoring the effects of CONDITIONS OF CONFINEMENT in ISOLATION UNITS on PRISONERS' mental and physical health, including but not limited to POLICIES AND PROCEDURES for suicide watch and suicide prevention, and implementation of said POLICIES AND PROCEDURES at each of the ISOLATION UNITS

2.      POLICIES AND PROCEDURES for the REFERRAL and transfer of PRISONERS from ISOLATION UNITS to inpatient MENTAL HEALTH CARE facilities, whether operated by the ADC or some other entity, and implementation of said POLICIES AND PROCEDURES at each of the ISOLATION UNITS.

3.      Training provided to HEALTH CARE STAFF working with PRISONERS housed in ISOLATION UNITS.

4.      POLICIES AND PROCEDURES REGARDING the involvement of HEALTH CARE STAFF in the use of force or restraint by ADC staff on PRISONERS on suicide watch, PRISONERS taking psychotropic medications, or PRISONERS classified as "seriously mentally ill," "severely mentally ill," MH-3 through MH-5, or any other mental health classification employed by the ADC or CORIZON, while housed in ISOLATION UNITS, and implementation of said POLICIES AND PROCEDURES at each of the ISOLATION UNITS.

5.      POLICIES AND PROCEDURES for mental health programs available to PRISONERS in each ISOLATION UNIT, including but not limited to group counseling, one-to-one counseling, jobs, and recreational and congregate activities, and implementation of said POLICIES AND PROCEDURES at each of the ISOLATION UNITS.

6.      POLICIES AND PROCEDURES for the provision of MENTAL HEALTH CARE to PRISONERS in ISOLATION UNITS, and implementation of said POLICIES AND PROCEDURES at each of the ISOLATION UNITS.

7.      MENTAL HEALTH CARE staffing, including without limitation the number of MENTAL HEALTH CARE staff, the qualifications of MENTAL HEALTH CARE staff, the recruitment and hiring of MENTAL HEALTH CARE staff, the training of MENTAL HEALTH CARE staff, the supervision of MENTAL HEALTH CARE staff, and any related POLICIES AND PROCEDURES.

8.      The provision of MENTAL HEALTH CARE pursuant to the HEALTH CARE PRIVATIZATION CONTRACT, including without limitation:

1         a.     POLICIES AND PROCEDURES related to the timely provision of

2 MENTAL HEALTH CARE.

3         b.     The processing of Health Needs Requests submitted by PRISONERS

4 that raise MENTAL HEALTH CARE concerns, including without limitation any related

5 POLICIES AND PROCEDURES.

6         c.     The timely access of PRISONERS to MENTAL HEALTH CARE

7 CLINICIANS, including but not limited to PSYCHIATRISTS, and MID-LEVEL

8 PRACTITIONERS, including without limitation any related POLICIES AND

9 PROCEDURES.

10         d.     The REFERRALS of PRISONERS to inpatient MENTAL HEALTH

11 CARE facilities, whether operated by the ADC or some other entity, and the timeliness of

12 those REFERRALS, including without limitation any related POLICIES AND

13 PROCEDURES.

14         e.     The treatment of PRISONERS prescribed psychotropic medications,

15 including but not limited to monitoring for therapeutic effect and side effects.

16         f.     The use of "telemedicine" to provide MENTAL HEALTH CARE.

17     9.     QUALITY ASSURANCE and quality improvement in the provision of

18 MENTAL HEALTH CARE, including without limitation corrective action plans and

19 REVIEWS of suicides, self-injury, and other sentinel events. This topic also includes

20 without limitation any POLICIES AND PROCEDURES related to QUALITY

21 ASSURANCE or quality improvement.

22     10.    Reports, evaluations and statistical data regarding the provision of

23 MENTAL HEALTH CARE, and any related POLICIES AND PROCEDURES related to

24 the creation, maintenance, or use of reports, evaluations, or statistical data.

25

LEGAL27701552.1

26

27

28

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Arizona

| | | |
|---|---|---|
| Victor Parsons, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   CV 12-00601-PHX-NVW (MEA) |
| Charles Ryan and Richard Pratt | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   Rule 30(b)(6) Designee, Corizon, Inc.
      Corizon, Inc., c/o Renaud Cook Drury Mesaros PA, One N. Central Ave., Suite 900, Phoenix, AZ 85004-4417

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Attachment A for deposition topics.

| Place:  Perkins Coie LLP | Date and Time: |
|---|---|
| 2901 N. Central Avenue, Ste. 2000 | |
| Phoenix, Arizona 85012-2788 | 09/20/2013 9:00 am |

The deposition will be recorded by this method:   stenographic

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   09/10/2013

|   *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | s/ Amelia M. Gerlicher |
| *Signature of Clerk or Deputy Clerk* | _____ |
| | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Prisoner Plaintiffs and the Arizona Center for Disability Law                                                            , who issues or requests this subpoena, are:
Amelia Gerlicher, Perkins Coie LLP, 2901 N. Central Avenue, Suite 2000, Phoenix, Arizona 85012, agerlicher@perkinscoie.com, 602-351-8308; Jennifer Alewelt, ACDL, 5025 East Washington St., Suite 202, Phoenix, AZ 85034, jalewelt@azdisabilitylaw.org, 602-274-6287

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   CV 12-00601-PHX-NVW (MEA)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*

 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

 **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

 **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

 **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

 **(i)** fails to allow a reasonable time to comply;

 **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

 **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

 **(iv)** subjects a person to undue burden.

 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

 **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

 **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

 **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

 **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*

 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

 **(i)** expressly make the claim; and

 **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

1  **ATTACHMENT A**

2  TO: 30(b)(6) Designee, Corizon, Inc.
3  c/o Renaud Cook Drury Mesaros PA
   One N Central Ave Suite 900
   Phoenix, AZ  85004-4417
4

5  PLEASE TAKE NOTICE that pursuant to Rule 45 of the Federal Rules of Civil

6  Procedure, Plaintiffs command the 30(b)(6) Designee of Corizon, Inc. to appear and

7  testify at deposition in this civil action at 9:00 a.m. on September 20, 2013 at the law

8  offices of Perkins Coie LLP, 2901 N. Central Avenue, Ste. 2000, Phoenix, AZ 85012-

9  2788. Plaintiffs intend to record the testimony stenographically using instantaneous (or

10  "real time") transcription, which provides visual display of the testimony.

11  **DEFINITIONS**

12  For the purposes of this deposition notice the following definitions shall apply.

13  1.  "ADC" means the Arizona Department of Corrections, including all its

14  subdivisions, agents, employees, contractors, and attorneys.

15  2.  "CHRONIC CARE" means the provision of care to treat and manage

16  chronic conditions or diseases that require regular monitoring and treatment, including but

17  not limited to the chronic conditions set forth in ADC's Health Services Technical

18  Manual, Chapter 5, Section 5.5.1.

19  3.  "COMMUNICATIONS" means any transmittal of information from one

20  person or entity to another by any means, including letters, correspondence, notes,

21  memoranda, records,  reports, papers, facsimiles, electronic mail (whether to, from, copied

22  or blind copied), electronic mail generated from a hand held personal device including a

23  Blackberry or iPhone, instant messaging, electronic mail generated from business or

24  personal email accounts, internet relay chat, news group, group or collaboration servers,

25  electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings,

26  audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes,

27  teleconference, collaboration servers (including share point servers), web-based or

28  software virtual meetings including Web-X and any other meeting software and share

point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

4.   "CORIZON" means Corizon, Inc., including all of its subdivisions, agents, employees, contractors, and attorneys.

5.   "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and DESCRIPTION and every tangible thing that is or has been in the possession, custody, or control of CORIZON, to which they have access, or of which they have knowledge, including, but not limited to, COMMUNICATIONS, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and regardless of the form of storage.

6.   "EMERGENCY HEALTH CARE SERVICES" means treatment or care to address a mental health, medical, or dental injury or illness that is acute, causes substantial pain, and/or and poses a substantial and immediate risk to the life or long term health of a person.

7.   "ENTRY-LEVEL PRACTITIONERS" means persons who provide HEALTH CARE to PRISONERS at the ADC subordinate to MID-LEVEL PRACTITIONERS or HEALTH CARE CLINICIANS.

8.   "HEALTH CARE" means the provision of care, including adequate diet, to address the mental health, MEDICAL CARE, or dental needs of a PRISONER, whether those needs arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic or preventive purposes.

9.   "HEALTH CARE CLINICIANS" means persons independently licensed to provide HEALTH CARE to PRISONERS at the ADC facilities, including but not limited to M.D., D.O., D.D.S., and Ph.D. credentialed staff.

1        10.    "HEALTH CARE PRIVATIZATION CONTRACT" means the contract

2   executed on January 30, 2013, between ADC and Corizon, Inc., pursuant to State of

3   Arizona Request for Proposal Number ADOC12-00001105, for the privatization of all

4   correctional health services.

5        11.    "HEALTH CARE RECORDS" means any and all documents maintained

6   and recorded, whether in electronic or paper format, for individual PRISONERS

7   regarding the HEALTH CARE they are receiving or requesting.

8        12.    "HEALTH CARE STAFF" means all staff employed or paid by the ADC,

9   or paid indirectly by the ADC through CORIZON who are responsible for providing

10   HEALTH CARE to ADC PRISONERS, including but not limited to HEALTH CARE

11   CLINICIANS, MID-LEVEL PRACTITIONERS, ENTRY-LEVEL PRACTITIONERS,

12   and administrative and support staff.

13        13.    "MEDICAL CARE" means the provision of care to address the physical

14   health needs of a PRISONER, whether those needs arise as a result of injury, illness,

15   disease, or other trauma, or care provided for diagnostic or preventive purposes

16        14.    "MID-LEVEL PRACTITIONERS" means licensed professionals who

17   provide HEALTH CARE to PRISONERS at the ADC under supervision by HEALTH

18   CARE CLINICIANS.

19        15.    "POLICIES AND PROCEDURES" means policies, procedures, criteria,

20   and/or practices, whether written or established through custom or use, including but not

21   limited to policy and procedure manuals, directors' orders, protocols, directives,

22   flowcharts, institution post orders, and any other DOCUMENTS designed to direct the

23   actions of ADC personnel, ADC contractors, including CORIZON, and/or PRISONERS.

24        16.    "PRISONER" means a person incarcerated by the ADC.

25        17.    "QUALITY ASSURANCE" means any activities implemented for the

26   purpose of examining, assessing, evaluating, investigating, analyzing, or identifying the

27   quality of a product or service.

28

18.   "REFERRAL" means a recommendation that a PRISONER obtain HEALTH CARE at ADC or non ADC facilities, whether or not such HEALTH CARE is in fact ever provided.

19.   "REGARDING" or "REGARDED" to any given subject matter means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers to, relates to, responds to, states, summarizes, or is in any way relevant to the particular subject matter identified.

20.   "REVIEWS" means examinations, assessments, evaluations, or investigations performed by or at the direction of ADC staff or officials, or CORIZON staff or officials.

21.   "SPECIALTY CARE" means non-routine HEALTH CARE provided by HEALTH CARE CLINICIANS not employed by ADC or CORIZON, pursuant to a REFERRAL.

22.   "STAFFING SCHEDULE" means the days, hours, and/or shifts for which each member of the HEALTH CARE STAFF was scheduled to work, including overtime, on call and call-in coverage.

**TOPICS**

1.   HEALTH CARE staffing, including without limitation the number of HEALTH CARE staff, the qualifications of HEALTH CARE staff, the recruitment and hiring of HEALTH CARE staff, training of HEALTH CARE staff, and any related POLICIES AND PROCEDURES.

2.   The provision of MEDICAL CARE pursuant to the HEALTH CARE PRIVATIZATION CONTRACT, including without limitation:

a.   POLICIES AND PROCEDURES related to the timely provision of MEDICAL CARE;

-4-

b.      The processing Health Needs Requests submitted by PRISONERS that raise MEDICAL CARE concerns, including without limitation any related POLICIES AND PROCEDURES.

c.      The timely access of PRISONERS to HEALTH CARE CLINICIANS and MID-LEVEL PRACTITIONERS, including without limitation any related POLICIES AND PROCEDURES.

d.      The REFERRALS of PRISONERS to SPECIALTY CARE, and the timeliness of those REFERRALS, including without limitation any related POLICIES AND PROCEDURES.

e.      PRISONER access to CHRONIC CARE, including without limitation the types of CHRONIC CARE clinics provided by ADC and CORIZON and ay POLICIES AND PROCEDURES related to the timely access of PRISONERS to CHRONIC CARE.

f.      Timely access to EMERGENCY HEALTH CARE SERVICES, including without limitation any related POLICIES AND PROCEDURES.

g.      Health screening and intake when prisoners are initially received into ADC custody, including without limitation any related POLICIES AND PROCEDURES.

h.      Tracking and scheduling system for HEALTH CARE appointments, including without limitation any related POLICIES AND PROCEDURES.

3.      The nature and extent of clinical space for MEDICAL CARE, including without limitation general MEDICAL CARE space, infirmary care, dialysis care, hospice care, and any other SPECIALTY or CHRONIC CARE. This topic also includes without limitation any related POLICIES AND PROCEDURES.

4.      QUALITY ASSURANCE and quality improvement in the provision of MEDICAL CARE, including without limitation corrective action plans and REVIEWS of deaths and sentinel events. This topic also includes without limitation any POLICIES AND PROCEDURES related to QUALITY ASSURANCE or quality improvement.

5. Reports, evaluations and statistical data regarding the provision of MEDICAL CARE, and any related POLICIES AND PROCEDURES related to the creation, maintenance, or use of reports, evaluations, or statistical data.

LEGAL27701552.1