1 | Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
2 | James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3 | 3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
4 | Telephone: (602) 650-1854
Email: dpochoda@acluaz.org
5 |         kflood@acluaz.org
        jlyall@acluaz.org
6 | *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Jennifer Alewelt (Bar No. 027366)
Asim Varma (Bar No. 027927)
Sarah Kader (Bar No. 027147)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: jalewelt@azdisabilitylaw.org
        avarma@azdisabilitylaw.org
        skader@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-NVW (MEA) <br><br> **NOTICE OF CONTINUATION OF 30(B)(6) DEPOSITION OF ARIZONA DEPARTMENT OF CORRECTIONS** |

1     TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2     PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs will take the deposition of the Arizona Department of Corrections ("ADC") at 9:00 am on September 23, 2012, and from day to day until the deposition is completed, at the law offices of Perkins Coie LLP, 2901 N. Central Avenue, Ste. 2000, Phoenix, AZ 85012-2788. The deposition was previously noticed at Docket number 78. Plaintiffs intend to record the testimony stenographically using instantaneous (or "real time") transcription, which provides visual display of the testimony. The ADC is hereby requested and required, pursuant to Rule 30(b)(6) to designate and produce a witness or witnesses to testify on its behalf on topics 3, 4, 11, 14, 16, and 18 identified in ATTACHMENT A to this Notice. Plaintiffs also intend to serve a subpoena related to this continued deposition on ADC, in the form attached hereto as Exhibit 1.

Dated: September 11, 2013

**PERKINS COIE LLP**

By:   s/ Amelia M. Gerlicher
      Daniel C. Barr (Bar No. 010149)
      Amelia M. Gerlicher (Bar No. 023966)
      Kirstin T. Eidenbach (Bar No. 027341)
      John H. Gray (Bar No. 028107)
      Matthew B. du Mée (Bar No. 028468)
      2901 N. Central Avenue, Suite 2000
      Phoenix, Arizona 85012
      Telephone: (602) 351-8000
      Email:   dbarr@perkinscoie.com
              agerlicher@perkinscoie.com
              keidenbach@perkinscoie.com
              jhgray@perkinscoie.com
              mdumee@perkinscoie.com

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:   dpochoda@acluaz.org
         kflood@acluaz.org
         jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Warren E. George (Cal. 53588)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:   dspecter@prisonlaw.com
         ahardy@prisonlaw.com
         snorman@prisonlaw.com
         ckendrick@prisonlaw.com
         wgeorge@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:   dfathi@npp-aclu.org
         afettig@npp-aclu.org
         aquereshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email:   cnmitchell@jonesday.com
         dkiernan@jonesday.com
         scalderon@jonesday.com
         srauh@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email:   jlwilkes@jonesday.com
         tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone: (212) 326-3498
Email:   kmamedova@jonesday.com
         jkmessina@jonesday.com

*Admitted *pro hac vice*

Kevin Brantley (Cal. 251886)*
**JONES DAY**
3161 Michelson Drive, Suite 800
Irvine, California 92612
Telephone: (949) 851-3939
Email:   kcbrantley@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By: s/ Jennifer Alewelt
   Jennifer Alewelt (Bar No. 027366)
   Asim Varma (Bar No. 027927)
   Sarah Kader (Bar No. 027147)
   5025 East Washington Street, Suite 202
   Phoenix, Arizona 85034
   Telephone: (602) 274-6287
   Email:   jalewelt@azdisabilitylaw.org
            avarma@azdisabilitylaw.org
            skader@azdisabilitylaw.org

   J.J. Rico (Bar No. 021292)
   Cathleen M. Dooley (Bar No. 022420)
   **ARIZONA CENTER FOR DISABILITY LAW**
   100 N. Stone Avenue, Suite 305
   Tucson, Arizona 85701
   Telephone: (520) 327-9547
   Email:   jrico@azdisabilitylaw.org
            cdooley@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2013, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

*Attorneys for Defendants*

  s/S. Neilson

| | |
|---|---|
| 1 | **ATTACHMENT A** |
| 2 | Pursuant to Rules 30(b)(6) of the Federal Rules of Civil Procedure, the Arizona |
| 3 | Department of Corrections (ADC) shall designate one or more officers, directors, or |
| 4 | managing agents, or other person who consent to testify on its behalf, to testify on the |
| 5 | topics identified below. |
| 6 | **DEFINITIONS** |
| 7 | For the purposes of this deposition notice the following definitions shall apply. |
| 8 | 1. "ADC" means the Arizona Department of Corrections, including all its |
| 9 | subdivisions, agents, employees, contractors, and attorneys. |
| 10 | 2. "COMMUNICATIONS" means any transmittal of information from one |
| 11 | person or entity to another by any means, including letters, correspondence, notes, |
| 12 | memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied |
| 13 | or blind copied), electronic mail generated from a hand held personal device including a |
| 14 | Blackberry or iPhone, instant messaging, electronic mail generated from business or |
| 15 | personal email accounts, internet relay chat, news group, group or collaboration servers, |
| 16 | electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings, |
| 17 | audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, |
| 18 | teleconference, collaboration servers (including share point servers), web-based or |
| 19 | software virtual meetings including Web-X and any other meeting software and share |
| 20 | point servers, and oral contact such as face-to-face discussions or meetings, telephone |
| 21 | conversations, and voice mail messages. |
| 22 | 3. "COMPLAINTS" means any DOCUMENTS, formal or informal, |
| 23 | REGARDING specific or general problems, issues, deficiencies, unanswered questions, |
| 24 | challenges, shortcomings, disagreements, or requests brought to the attention of the ADC |
| 25 | or any ADC STAFF. |
| 26 | 4. "CONDITIONS OF CONFINEMENT" means all circumstances |
| 27 | REGARDING the state of being imprisoned. |
| 28 | |

5. "CORRECTIONAL STAFF" means custody staff employed or paid by the ADC to serve in a security or operational capacity.

6. "COST CONTAINMENT" means contemplated, discussed, or actual actions to restrict, reduce, contain, or limit costs or expenses by DEFENDANTS, the ADC or any personnel working in any capacity for the ADC or the Arizona State Government, including any agents of the foregoing.

7. "DEATH RECORDS" means any DOCUMENT REGARDING the death of a PRISONER, including audits, REVIEWS, studies, interview notes, videos, audio-recordings, EXTERNAL INVESTIGATIONS or INTERNAL INVESTIGATIONS.

8. "DESCRIBE" and "DESCRIPTION" means to provide all available INFORMATION.

9. "DISCIPLINE" means any formal or informal discipline, punishment, reprimand, warning, or comment given to any person as a result of substandard or unacceptable conduct.

10. "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and DESCRIPTION and every tangible thing that is or has been in the possession, custody, or control of DEFENDANTS and the ADC, to which they have access, or of which they have knowledge, including, but not limited to, COMMUNICATIONS, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys, MINUTES, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk

1  (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device).
2  "DOCUMENT" and "DOCUMENTS" includes, but is not limited to, all DOCUMENTS
3  generated by or maintained in the Director's Project Tracking System, official ADC
4  papers, and the ADC's intranet.

5      11.   "EMERGENCY HEALTH CARE SERVICES" means treatment or care to
6  address a mental health, medical, or dental injury or illness that is acute, causes substantial
7  pain, and/or and poses a substantial and immediate risk to the life or long term health of a
8  person.

9      12.   "ENTRY-LEVEL PRACTITIONERS" means unlicensed persons who
10 provide HEALTH CARE to PRISONERS at the ADC subordinate to MID-LEVEL
11 PRACTITIONERS or HEALTH CARE CLINICIANS.

12     13.   "EXTERNAL INVESTIGATIONS" means investigations, REVIEWS,
13 audits, or studies, whether formal or informal, conducted by a person who is not employed
14 by the ADC or an entity that is not the ADC. It is immaterial to the definition whether the
15 EXTERNAL INVESTIGATION was conducted at the ADC's behest or direction.

16     14.   "GRIEVANCES" means COMPLAINTS or requests made by PRISONERS
17 to the ADC, and the exhaustion of claims raised or stated therein.

18     15.   "HEALTH CARE" means the provision of care, including adequate diet, to
19 address the mental health, medical, or dental needs of a PRISONER, whether those needs
20 arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic
21 or preventive purposes.

22     16.   "HEALTH CARE CLINICIANS" means persons independently licensed to
23 provide HEALTH CARE to PRISONERS at the ADC facilities, including but not limited
24 to M.D., D.O., D.D.S., and Ph.D. credentialed staff.

25     17.   "HEALTH CARE DIRECTIVES" means DOCUMENTS REGARDING
26 advance medical care directives, living wills, personal directives, advance directives, or
27 instructions of any kind in which individuals specify what actions should or should not be
28

1  taken for their HEALTH CARE in the event they are no longer able to make decisions due
2  to illness, injury, or incapacity

3    18.   "HEALTH CARE PRIVATIZATION CONTRACT" means Solicitation
4  No. ADOC12-00001105, Privatization for All Correctional Health Care, and the Offer and
5  Acceptance Between ADC and WEXFORD.

6    19.   "HEALTH CARE RECORDS" means any and all documents maintained
7  and recorded, whether in electronic or paper format, for individual PRISONERS
8  regarding the HEALTH CARE they are receiving or requesting.

9    20.   "HEALTH CARE SHORTAGES" means any deficiencies involving
10 HEALTH CARE, including but not limited to a lack of or insufficient number of
11 medicines, drugs, medical supplies, medical equipment, transportation, or HEALTH
12 CARE STAFFING.

13   21.   "HEALTH CARE STAFF" means all staff employed or paid by the ADC,
14 or paid indirectly by the ADC through the HEALTH CARE PRIVATIZATION
15 CONTRACT with WEXFORD who are responsible for providing HEALTH CARE to
16 ADC PRISONERS, including but not limited to HEALTH CARE CLINICIANS, MID-
17 LEVEL PRACTITIONERS, ENTRY-LEVEL PRACTITIONERS, PHARMACISTS, and
18 administrative and support staff.

19   22.   "HEALTH CARE STAFFING" means the provision of HEALTH CARE
20 STAFF to provide HEALTH CARE.

21   23.   "HEALTH CARE SUBCONTRACTOR" means any person or entity
22 contracting with the ADC or WEXFORD to provide HEALTH CARE to PRISONERS,
23 either on-site at ADC prisons or off-site.  "HEALTH GRIEVANCES" means requests for
24 HEALTH CARE or COMPLAINTS REGARDING the need for, adequacy of, quality of,
25 or timing of HEALTH CARE made by PRISONERS to the ADC, including but not
26 limited to the submission of Health Needs Request ("HNR") forms and the exhaustion of
27 claims stated therein.

28

24. "HNR POLICIES AND PROCEDURES" means policies, procedures, or practices, whether written or established through custom or use, REGARDING HNR submissions by PRISONERS, including but not limited to the distribution, disposal, processing, rejection of, responses to, provision of HEALTH CARE pursuant to, and exhaustion of claims raised by such submissions. This includes policies, procedures, or practices that are in draft form and have not been approved and/or implemented.

25. "HOSPITALIZED PRISONER" means any PRISONER who is sent to a hospital or other off-site medical or mental health facility, or who is admitted to an on-site hospital, while in the custody of the ADC.

26. "HOURS OF OPERATION" means the time periods during which a facility, unit, or other ADC facility housing PRISONERS is able to provide HEALTH CARE to PRISONERS by on-site HEALTH CARE STAFF.

27. "IDENTIFY" and "IDENTIFICATION" with respect to (a) a PRISONER or former PRISONER, means to state the PRISONER'S full name, ADC number, date of birth, current or most recent mental health score (MH-1 through MH-5), medical score (M-1 through M-5), public risk score, institutional risk score, and current housing location (if still in ADC custody) or last known address and telephone number (if no longer in ADC custody); (b) a person other than a PRISONER or former PRISONER, means to state the person's full name and specify whether or not the person is or has been an ADC STAFF member, and if so, to state the staff member's position title, facility location, work schedule, responsibilities, date ADC employment began, date ADC employment terminated, dates of any changes in position titles or responsibilities, DESCRIPTIONS of any changes in position titles or responsibilities and, if the person is not currently employed by ADC, the person's last known address and telephone number; and (c) a third-party contractor or entity means to state the name of the contractor or entity, the type of entity (e.g., corporation, partnership, etc.); its address and telephone number; and any persons YOU are aware of who acted on behalf of that contractor or entity with respect to the events at issue in the discovery request; (d) IDENTIFY in any other context means to

1   provide as much INFORMATION REGARDING the thing to be identified as is in the
2   possession of DEFENDANTS or the ADC.

3      28.   "INFORMATION" means any knowledge YOU have, any evidence of any
4   type, any facts of which YOU are aware and any inferences or speculation of which YOU
5   are aware, all regardless of the source.  When INFORMATION YOU provide is based
6   solely on inference or speculation, specifically so state in YOUR response.  When
7   providing INFORMATION, provide the names of involved individuals, actions relevant
8   to the requested INFORMATION, dates and times when known, locations, and any other
9   knowledge YOU have about the subject of the discovery request.  When asked to provide
10  INFORMATION about one or more individuals, IDENTIFY the individual or individuals
11  and provide any other INFORMATION YOU have about such person or persons.

12     29.   "INTERNAL INVESTIGATION" means an investigation, REVIEW, audit,
13  study, interview notes, videos, or audio recordings, whether formal or informal, conducted
14  by the ADC.

15     30.   "ISOLATION" means confinement in a cell for 22 hours or more each day;
16  confinement in Eyman-Special Management Unit ("SMU") 1, Eyman-Browning Unit,
17  Florence-Central Unit, Florence-Kasson Unit, or Perryville-Lumley Special Management
18  Area ("SMA"); or confinement in a Complex Detention Unit ("CDU").

19     31.   "JOB PERFORMANCE EVALUATION" means any evaluation, whether
20  formal or informal, of the work of an ADC STAFF member or contractor performing
21  services for the ADC.

22     32.   "MID-LEVEL PRACTITIONERS" means licensed professionals who
23  provide HEALTH CARE to PRISONERS at the ADC under supervision by HEALTH
24  CARE CLINICIANS.

25     33.   "MINUTES" means notes or any other recording reflecting the content of a
26  meeting, whether written contemporaneously with or subsequent to the meeting.

27     34.   "ORGANIZATIONAL STRUCTURE" means the structure of who reports
28  to whom within the ADC up to and including defendant Charles Ryan, including

-11-

1  specifically all HEALTH CARE STAFF and each individual's job title and
2  DESCRIPTION of duties.
3      35.   "OUTDOOR EXERCISE" means periods during which PRISONERS are
4  permitted to exercise in the outdoors.
5      36.   "PHARMACIST" means a professional who practices pharmacy.
6      37.   "POLICIES AND PROCEDURES" means policies, procedures, criteria, or
7  practices, whether written or established through custom or use, including but not limited
8  to policy and procedure manuals, directors' orders, protocols, directives, flowcharts,
9  institution post orders, and any other DOCUMENTS designed to direct the actions of
10 ADC personnel, ADC contractors, and/or PRISONERS.
11     38.   "PRISONER" means a person incarcerated by the ADC.
12     39.   "QUALITY ASSURANCE" means any activities implemented for the
13 purpose of examining, assessing, evaluating, investigating, analyzing, or identifying the
14 quality of a product or service.
15     40.   "REFERRAL" means a recommendation that a PRISONER obtain
16 HEALTH CARE at ADC or non ADC facilities, whether or not such HEALTH CARE is
17 in fact ever provided.
18     41.   "REFERRED CARE" means HEALTH CARE pursuant to a REFERRAL.
19     42.   "REFERRED PRISONER" means a PRISONER who received a
20 REFERRAL while in the legal custody of the ADC.
21     43.   "REGARDING" or "REGARDED" to any given subject matter means,
22 without limitation, anything that, in whole or in part, analyzes, comments upon,
23 comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences,
24 explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers
25 to, relates to, responds to, states, summarizes, or is in any way relevant to the particular
26 subject matter identified.
27
28

44. "RESPONSE DATE" means date upon which YOU respond to these discovery requests, or, if YOU amend or supplement YOUR response, the date of YOUR amendment or supplement.

45. "REVIEWS" means examinations, assessments, evaluations, or investigations performed by or at the direction of ADC staff or officials.

46. "STAFFING SCHEDULE" means the days, hours, and/or shifts for which each member of the HEALTH CARE STAFF was scheduled to work, including overtime, on call and call-in coverage.

47. "SUFFICIENT TO SHOW" means demonstrating or evidencing complete INFORMATION on the requested topic, without the need to produce every DOCUMENT REGARDING the topic.

48. "YOU," "YOUR," "YOURSELF," and "DEFENDANTS" means defendants Charles Ryan and Richard Pratt, and their predecessors, successors, employees, subordinates, contractors, agents, and attorneys.

49. "WEXFORD" means Wexford Health Sources, Incorporated.

**TOPICS**

1. Practices, policies and procedures for health screening and intake when prisoners are initially received into ADC custody.

2. Practices, policies and procedures for submitting and processing Health Needs Requests.

3. Grievance procedures for medical issues.

4. Tracking and scheduling system for health care appointments.

5. Practices, policies and procedures for access to physicians and nurses.

6. Practices, policies and procedures for access to specialty care providers, including provisions for second opinions.

7. Practices, policies and procedures for providing care by outside health care providers.

1    8.  Practices, policies and procedures for responding to emergency medical
2 needs.
3    9.  Practices, policies and procedures for follow-up medical care and
4 monitoring, including timeliness of such care.
5    10. Practices, policies and procedures for in-house infirmary care, including
6 intake, discharge, and any protocols for determining acuity levels for patients and the
7 monitoring required by RNs, advanced level practitioners such as PAs and APNs, and
8 MDs for each patient acuity level.
9    11. Practices, policies and procedures for obtaining informed consent.
10   12. Practices, policies and procedures for providing care to prisoners with
11 chronic illnesses or conditions; the number of prisoners enrolled in chronic care clinics;
12 and the number diagnosed with chronic diseases.
13   13. Practices, policies and procedures diagnosing, treating and preventing the
14 spread of infectious diseases.
15   14. The nature and extent of clinical space for medical treatment.
16   15. Practices, policies and procedures for quality assurance and quality
17 improvement, including, but not limited to, reviews of deaths and sentinel events.
18   16. Reports, evaluations and statistical data regarding the provision of and need
19 for medical care.
20   17. Practices, policies and procedures for prescribing, ordering, delivering,
21 repairing and replacing health care appliances to prisoners, including any changes planned
22 or implemented by Wexford compared to the practices, policies or procedures of the
23 ADOC.
24   18. Practices, policies and procedures for utilization review.

78204-0001/LEGAL27821049.1