1  Daniel Pochoda (Bar No. 021979)
   Kelly J. Flood (Bar No. 019772)
2  James Duff Lyall (Bar No. 330045)*
   **ACLU FOUNDATION OF ARIZONA**
3  3707 North 7th Street, Suite 235
   Phoenix, Arizona 85013
4  Telephone: (602) 650-1854
   Email: dpochoda@acluaz.org
5          kflood@acluaz.org
           jlyall@acluaz.org
6  *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7  *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin
   Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
8  *Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci,
   Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of*
9  *themselves and all others similarly situated*

10 **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

11 Jennifer Alewelt (Bar No. 027366)
   Asim Varma (Bar No. 027927)
   Sarah Kader (Bar No. 027147)
12 **ARIZONA CENTER FOR DISABILITY LAW**
   5025 East Washington Street, Suite 202
13 Phoenix, Arizona 85034
   Telephone: (602) 274-6287
14 Email: jalewelt@azdisabilitylaw.org
          avarma@azdisabilitylaw.org
15        skader@azdisabilitylaw.org

16 *Attorneys for Plaintiff Arizona Center for Disability Law*

17 **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-NVW (MEA) <br><br> **NOTICE OF CONTINUATION OF 30(B)(6) DEPOSITION OF ARIZONA DEPARTMENT OF CORRECTIONS** |

1  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2  PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs will continue the deposition of the Arizona Department of Corrections ("ADC") at 9:00 am on September 24, 2012, and from day to day until the deposition is completed, at the law offices of Perkins Coie LLP, 2901 N. Central Avenue, Ste. 2000, Phoenix, AZ 85012-2788.  The deposition was previously noticed at Docket number 80.  Plaintiffs intend to record the testimony stenographically using instantaneous (or "real time") transcription, which provides visual display of the testimony.  The ADC is hereby requested and required, pursuant to Rule 30(b)(6) to designate and produce a witness or witnesses to testify on its behalf on topic 2 identified in ATTACHMENT A to this Notice.  Plaintiffs also intend to serve a subpoena related to this continued deposition on ADC, in the form attached hereto as Exhibit 1.

Dated:  September 11, 2013

**PERKINS COIE LLP**

By: s/ Amelia M. Gerlicher
Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
          agerlicher@perkinscoie.com
          keidenbach@perkinscoie.com
          jhgray@perkinscoie.com
          mdumee@perkinscoie.com

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: dpochoda@acluaz.org
kflood@acluaz.org
jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Warren E. George (Cal. 53588)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email: dspecter@prisonlaw.com
ahardy@prisonlaw.com
snorman@prisonlaw.com
ckendrick@prisonlaw.com
wgeorge@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email: dfathi@npp-aclu.org
afettig@npp-aclu.org
aquereshi@npp-aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email: cnmitchell@jonesday.com
dkiernan@jonesday.com
scalderon@jonesday.com
srauh@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email: jlwilkes@jonesday.com
tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email: kmamedova@jonesday.com
jkmessina@jonesday.com

*Admitted *pro hac vice*

Kevin Brantley (Cal. 251886)*
**JONES DAY**
3161 Michelson Drive, Suite 800
Irvine, California 92612
Telephone:  (949) 851-3939
Email: kcbrantley@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By: s/ Jennifer Alewelt
Jennifer Alewelt (Bar No. 027366)
Asim Varma (Bar No. 027927)
Sarah Kader (Bar No. 027147)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: jalewelt@azdisabilitylaw.org
avarma@azdisabilitylaw.org
skader@azdisabilitylaw.org

J.J. Rico (Bar No. 021292)
Cathleen M. Dooley (Bar No. 022420)
**ARIZONA CENTER FOR DISABILITY LAW**
100 N. Stone Avenue, Suite 305
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email: jrico@azdisabilitylaw.org
cdooley@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2013, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

*Attorneys for Defendants*

s/S. Neilson

-5-

**ATTACHMENT A**

Pursuant to Rules 30(b)(6) of the Federal Rules of Civil Procedure, the Arizona Department of Corrections (ADC) shall designate one or more officers, directors, or managing agents, or other person who consent to testify on its behalf, to testify on the topics identified below.

**DEFINITIONS**

For the purposes of this deposition notice the following definitions shall apply.

1. "ADC" means the Arizona Department of Corrections, including all its subdivisions, agents, employees, contractors, and attorneys.

2. "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including a Blackberry or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

3. "COMPLAINTS" means any DOCUMENTS, formal or informal, REGARDING specific or general problems, issues, deficiencies, unanswered questions, challenges, shortcomings, disagreements, or requests brought to the attention of the ADC or any ADC STAFF.

4. "CONDITIONS OF CONFINEMENT" means all circumstances REGARDING the state of being imprisoned.

5. "CORRECTIONAL STAFF" means custody staff employed or paid by the ADC to serve in a security or operational capacity.

6. "DESCRIBE" and "DESCRIPTION" means to provide all available INFORMATION.

7. "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and DESCRIPTION and every tangible thing that is or has been in the possession, custody, or control of DEFENDANTS and the ADC, to which they have access, or of which they have knowledge, including, but not limited to, COMMUNICATIONS, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys, MINUTES, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device). "DOCUMENT" and "DOCUMENTS" includes, but is not limited to, all DOCUMENTS generated by or maintained in the Director's Project Tracking System, official ADC papers, and the ADC's intranet.

8. "HEALTH CARE" means the provision of care, including adequate diet, to address the mental health, medical, or dental needs of a PRISONER, whether those needs arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic or preventive purposes.

1    9.   "HEALTH CARE CLINICIANS" means persons independently licensed to
2 provide HEALTH CARE to PRISONERS at the ADC facilities, including but not limited
3 to M.D., D.O., D.D.S., and Ph.D. credentialed staff.
4    10.  "HEALTH CARE DIRECTIVES" means DOCUMENTS REGARDING
5 advance medical care directives, living wills, personal directives, advance directives, or
6 instructions of any kind in which individuals specify what actions should or should not be
7 taken for their HEALTH CARE in the event they are no longer able to make decisions due
8 to illness, injury, or incapacity
9    11.  "HEALTH CARE RECORDS" means any and all documents maintained
10 and recorded, whether in electronic or paper format, for individual PRISONERS
11 regarding the HEALTH CARE they are receiving or requesting.
12   12.  "HEALTH CARE STAFF" means all staff employed or paid by the ADC,
13 or paid indirectly by the ADC through the HEALTH CARE PRIVATIZATION
14 CONTRACT with WEXFORD who are responsible for providing HEALTH CARE to
15 ADC PRISONERS, including but not limited to HEALTH CARE CLINICIANS, MID-
16 LEVEL PRACTITIONERS, ENTRY-LEVEL PRACTITIONERS, PHARMACISTS, and
17 administrative and support staff.
18   13.  "HEALTH CARE STAFFING" means the provision of HEALTH CARE
19 STAFF to provide HEALTH CARE.
20   14.  "HNR POLICIES AND PROCEDURES" means policies, procedures, or
21 practices, whether written or established through custom or use, REGARDING HNR
22 submissions by PRISONERS, including but not limited to the distribution, disposal,
23 processing, rejection of, responses to, provision of HEALTH CARE pursuant to, and
24 exhaustion of claims raised by such submissions. This includes policies, procedures, or
25 practices that are in draft form and have not been approved and/or implemented.
26   15.  "HOURS OF OPERATION" means the time periods during which a
27 facility, unit, or other ADC facility housing PRISONERS is able to provide HEALTH
28 CARE to PRISONERS by on-site HEALTH CARE STAFF.

1        16.     "IDENTIFY" and "IDENTIFICATION" with respect to (a) a PRISONER or former PRISONER, means to state the PRISONER'S full name, ADC number, date of birth, current or most recent mental health score (MH-1 through MH-5), medical score (M-1 through M-5), public risk score, institutional risk score, and current housing location (if still in ADC custody) or last known address and telephone number (if no longer in ADC custody); (b) a person other than a PRISONER or former PRISONER, means to state the person's full name and specify whether or not the person is or has been an ADC STAFF member, and if so, to state the staff member's position title, facility location, work schedule, responsibilities, date ADC employment began, date ADC employment terminated, dates of any changes in position titles or responsibilities, DESCRIPTIONS of any changes in position titles or responsibilities and, if the person is not currently employed by ADC, the person's last known address and telephone number; and (c) a third-party contractor or entity means to state the name of the contractor or entity, the type of entity (e.g., corporation, partnership, etc.); its address and telephone number; and any persons YOU are aware of who acted on behalf of that contractor or entity with respect to the events at issue in the discovery request; (d) IDENTIFY in any other context means to provide as much INFORMATION REGARDING the thing to be identified as is in the possession of DEFENDANTS or the ADC.

         17.     "INFORMATION" means any knowledge YOU have, any evidence of any type, any facts of which YOU are aware and any inferences or speculation of which YOU are aware, all regardless of the source.  When INFORMATION YOU provide is based solely on inference or speculation, specifically so state in YOUR response.  When providing INFORMATION, provide the names of involved individuals, actions relevant to the requested INFORMATION, dates and times when known, locations, and any other knowledge YOU have about the subject of the discovery request.  When asked to provide INFORMATION about one or more individuals, IDENTIFY the individual or individuals and provide any other INFORMATION YOU have about such person or persons.

18. "ISOLATION" means confinement in a cell for 22 hours or more each day; confinement in Eyman-Special Management Unit ("SMU") 1, Eyman-Browning Unit, Florence-Central Unit, Florence-Kasson Unit, or Perryville-Lumley Special Management Area ("SMA"); or confinement in a Complex Detention Unit ("CDU").

19. "PHARMACIST" means a professional who practices pharmacy.

20. "POLICIES AND PROCEDURES" means policies, procedures, criteria, or practices, whether written or established through custom or use, including but not limited to policy and procedure manuals, directors' orders, protocols, directives, flowcharts, institution post orders, and any other DOCUMENTS designed to direct the actions of ADC personnel, ADC contractors, and/or PRISONERS.

21. "PRISONER" means a person incarcerated by the ADC.

22. "QUALITY ASSURANCE" means any activities implemented for the purpose of examining, assessing, evaluating, investigating, analyzing, or identifying the quality of a product or service.

23. "REFERRAL" means a recommendation that a PRISONER obtain HEALTH CARE at ADC or non ADC facilities, whether or not such HEALTH CARE is in fact ever provided.

24. "REFERRED CARE" means HEALTH CARE pursuant to a REFERRAL.

25. "REFERRED PRISONER" means a PRISONER who received a REFERRAL while in the legal custody of the ADC.

26. "REGARDING" or "REGARDED" to any given subject matter means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers to, relates to, responds to, states, summarizes, or is in any way relevant to the particular subject matter identified.

27. "REVIEWS" means examinations, assessments, evaluations, or investigations performed by or at the direction of ADC staff or officials.

28. "STAFFING SCHEDULE" means the days, hours, and/or shifts for which each member of the HEALTH CARE STAFF was scheduled to work, including overtime, on call and call-in coverage.

29. "SUFFICIENT TO SHOW" means demonstrating or evidencing complete INFORMATION on the requested topic, without the need to produce every DOCUMENT REGARDING the topic.

30. "SUICIDE WATCH" means the CONDITIONS OF CONFINEMENT imposed on PRISONERS who, in the ADC's determination, pose a risk of suicide.

31. "SUICIDE WATCH PLACEMENT" means the placement on, retention on or removal from SUICIDE WATCH.

32. "YOU," "YOUR," "YOURSELF," and "DEFENDANTS" means defendants Charles Ryan and Richard Pratt, and their predecessors, successors, employees, subordinates, contractors, agents, and attorneys.

33. "WEXFORD" means Wexford Health Sources, Incorporated.

**TOPICS**

1. POLICIES AND PROCEDURES for evaluating mental health needs of PRISONERS at initial intake into ADC; upon transfer to other facilities within the system; and upon release to the community.

2. The availability of mental health care other than medication within the ADC system.

3. POLICIES AND PROCEDURES for PRISONER access to mental health care clinicians.

4. The nature and extent of clinical space for HEALTH CARE in the ADC system.

5. POLICIES AND PROCEDURES for classifying, re-classifying or identifying PRISONERS as "seriously mentally ill," "severely mentally ill," MH-1 through MH-5, or any other mental health classification employed by the ADC or WEXFORD.

6. POLICIES AND PROCEDURES for restrictions or limitations on housing of PRISONERS classified, re-classified or identified as "seriously mentally ill," "severely mentally ill," MH-1 through MH-5, or any other mental health classification employed by the ADC or WEXFORD.

7. POLICIES AND PROCEDURES REGARDING the provision of mental health care to PRISONERS classified as "seriously mentally ill," "severely mentally ill," MH-1 through MH-5, or any other mental health classification employed by the ADC or WEXFORD.

8. POLICIES AND PROCEDURES for transitioning PRISONERS between different levels of mental health care, including but not limited to the transfer of PRISONERS to mental health inpatient facilities.

9. POLICIES AND PROCEDURES for providing mental health inpatient care, including the current status of REFERRALS and admissions to such facilities in the ADC system.

10. Number of PRISONERS on the mental health caseload or classified as "seriously mentally ill," "severely mentally ill," MH-1 through MH-5, or any other mental health classification employed by the ADC or WEXFORD at each ADC facility.

11. POLICIES AND PROCEDURES for suicide watch and prevention, including but not limited to the management or treatment of PRISONERS placed on suicide watch and frequency of contact with psychiatrists, other HEALTH CARE STAFF and CORRECTIONAL STAFF.

12. CONDITIONS OF CONFINEMENT for PRISONERS on suicide watch.

13. POLICIES AND PROCEDURES REGARDING the use of force or restraint by ADC staff on PRISONERS on suicide watch.

14. Required and current mental health care staffing levels and STAFFING SCHEDULES at each ADC facility.

15. Mental health care staff job descriptions, standards and responsibilities for each mental health care staff position in the ADC system.

1    16.    Hiring and supervision of mental health care staff by the ADC or
2  WEXFORD.
3    17.    Training required for mental health care staff in each ADC facility.
4    18.    Training for psychiatrists, other HEALTH CARE STAFF, and
5  CORRECTIONAL STAFF on suicide watch and prevention POLICIES AND
6  PROCEDURES.
7    19.    Training provided to mental health care staff working with PRISONERS
8  housed in ISOLATION.
9    20.    POLICIES AND PROCEDURES for the provision of mental health care to
10  PRISONERS in ISOLATION.
11    21.    POLICIES AND PROCEDURES REGARDING the provision of HEALTH
12  CARE to PRISONERS classified as "seriously mentally ill," "severely mentally ill," MH-
13  1 through MH-5, or any other mental health classification employed by the ADC or
14  WEXFORD while housed in ISOLATION.
15    22.    POLICIES AND PROCEDURES for monitoring and managing
16  PRISONERS on psychiatric medications, including but not limited to the required
17  frequency of contact with HEALTH CARE STAFF, monitoring of the therapeutic effects
18  and adverse side effects of medication, and protection of the PRISONERS from heat
19  injury.
20    23.    Number of PRISONERS on psychotropic medication at each ADC facility.
21    24.    POLICIES AND PROCEDURES for administering involuntary
22  psychotropic medications and the current extent of the use of such involuntary medication
23  in each ADC facility.

78204-0001/LEGAL27821065.1

-13-