1  Daniel Pochoda (Bar No. 021979)
   Kelly J. Flood (Bar No. 019772)
2  James Duff Lyall (Bar No. 330045)*
   **ACLU FOUNDATION OF ARIZONA**
3  3707 North 7th Street, Suite 235
   Phoenix, Arizona 85013
4  Telephone:  (602) 650-1854
   Email: dpochoda@acluaz.org
5          kflood@acluaz.org
           jlyall@acluaz.org
6  *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7  *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin
   Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
8  *Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci,
   Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of*
9  *themselves and all others similarly situated*

   **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**
10
   Jennifer Alewelt (Bar No. 027366)
11 Asim Varma (Bar No. 027927)
   Sarah Kader (Bar No. 027147)
12 **ARIZONA CENTER FOR DISABILITY LAW**
   5025 East Washington Street, Suite 202
13 Phoenix, Arizona 85034
   Telephone:  (602) 274-6287
14 Email: jalewelt@azdisabilitylaw.org
           avarma@azdisabilitylaw.org
15         skader@azdisabilitylaw.org

16 *Attorneys for Plaintiff Arizona Center for Disability Law*

   **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**
17
                    UNITED STATES DISTRICT COURT
18
                        DISTRICT OF ARIZONA
19

| | |
|---|---|
| 20  Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-NVW (MEA) |
| 23                           Plaintiffs, | **NOTICE OF CONTINUATION OF 30(B)(6) DEPOSITION OF ARIZONA DEPARTMENT OF CORRECTIONS** |
| 24                v. | |
| 25  Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| 27                           Defendants. | |

28

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2    PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of

3    Civil Procedure, Plaintiffs will continue the deposition of the Arizona Department of

4    Corrections ("ADC") at 9:00 am on September 25, 2012, and from day to day until the

5    deposition is completed, at the law offices of Perkins Coie LLP, 2901 N. Central Avenue,

6    Ste. 2000, Phoenix, AZ 85012-2788.  The deposition was previously noticed at Docket

7    number 81. Plaintiffs intend to record the testimony stenographically using instantaneous

8    (or "real time") transcription, which provides visual display of the testimony.  The ADC is

9    hereby requested and required, pursuant to Rule 30(b)(6) to designate and produce a

10   witness or witnesses to testify on its behalf on topics 1-9, 11, 13, 14, and 16 identified in

11   ATTACHMENT A to this Notice.  Plaintiffs also intend to serve a subpoena related to

12   this continued deposition on ADC, in the form attached hereto as Exhibit 1.

13

14   Dated: September 11, 2013                **PERKINS COIE LLP**

15

16                                            By:  s/ Amelia M. Gerlicher
                                                  Daniel C. Barr (Bar No. 010149)
17                                                Amelia M. Gerlicher (Bar No. 023966)
                                                  Kirstin T. Eidenbach (Bar No. 027341)
18                                                John H. Gray (Bar No. 028107)
                                                  Matthew B. du Mée (Bar No. 028468)
19                                                2901 N. Central Avenue, Suite 2000
                                                  Phoenix, Arizona 85012
20                                                Telephone:  (602) 351-8000
                                                  Email:    dbarr@perkinscoie.com
21                                                          agerlicher@perkinscoie.com
                                                            keidenbach@perkinscoie.com
22                                                          jhgray@perkinscoie.com
                                                            mdumee@perkinscoie.com

23

24

25

26

27

28

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF
ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:     dpochoda@acluaz.org
               kflood@acluaz.org
               jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct.
R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Warren E. George (Cal. 53588)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:     dspecter@prisonlaw.com
               ahardy@prisonlaw.com
               snorman@prisonlaw.com
               ckendrick@prisonlaw.com
               wgeorge@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON
PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@npp-aclu.org
               afettig@npp-aclu.org
               aquereshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted
 in DC; practice limited to federal
 courts.
**Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:      cnmitchell@jonesday.com
            dkiernan@jonesday.com
            scalderon@jonesday.com
            srauh@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:      jlwilkes@jonesday.com
            tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:      kmamedova@jonesday.com
            jkmessina@jonesday.com

*Admitted *pro hac vice*

Kevin Brantley (Cal. 251886)*
**JONES DAY**
3161 Michelson Drive, Suite 800
Irvine, California 92612
Telephone:  (949) 851-3939
Email:      kcbrantley@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Dustin Brislan; Sonia
Rodriguez; Christina Verduzco; Jackie
Thomas; Jeremy Smith; Robert Gamez;
Maryanne Chisholm; Desiree Licci; Joseph
Hefner; Joshua Polson; and Charlotte
Wells, on behalf of themselves and all others
similarly situated*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARIZONA CENTER FOR DISABILITY LAW**

By:   s/ Jennifer Alewelt
Jennifer Alewelt (Bar No. 027366)
Asim Varma (Bar No. 027927)
Sarah Kader (Bar No. 027147)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:    jalewelt@azdisabilitylaw.org
                avarma@azdisabilitylaw.org
                skader@azdisabilitylaw.org

J.J. Rico (Bar No. 021292)
Cathleen M. Dooley (Bar No. 022420)
**ARIZONA CENTER FOR DISABILITY LAW**
100 N. Stone Avenue, Suite 305
Tucson, Arizona 85701
Telephone:  (520) 327-9547
Email:    jrico@azdisabilitylaw.org
                cdooley@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2013, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

*Attorneys for Defendants*

s/ S. Neilson

**ATTACHMENT A**

Pursuant to Rules 30(b)(6) of the Federal Rules of Civil Procedure, the Arizona Department of Corrections (ADC) shall designate one or more officers, directors, or managing agents, or other person who consent to testify on its behalf, to testify on the topics identified below.

**DEFINITIONS**

For the purposes of this deposition notice the following definitions shall apply.

1. "ADC" means the Arizona Department of Corrections, including all its subdivisions, agents, employees, contractors, and attorneys.

2. "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including a Blackberry or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

3. "CONDITIONS OF CONFINEMENT" means all circumstances REGARDING the state of being imprisoned.

4. "CORRECTIONAL STAFF" means custody staff employed or paid by the ADC to serve in a security or operational capacity.

5. "DESCRIBE" and "DESCRIPTION" means to provide all available INFORMATION.

1      6.     "DISCIPLINE" means any formal or informal discipline, punishment,

2  reprimand, warning, or comment given to any person as a result of substandard or

3  unacceptable conduct.

4      7.     "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule

5  34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or

6  record of every type and DESCRIPTION and every tangible thing that is or has been in

7  the possession, custody, or control of DEFENDANTS and the ADC, to which they have

8  access, or of which they have knowledge, including, but not limited to,

9  COMMUNICATIONS, newspaper articles, magazine articles, news articles,

10 correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes,

11 handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase

12 orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-

13 purchase materials, notebooks, diaries, models, devices, pictures, photographs, films,

14 audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys,

15 MINUTES, data compilations, and statistical compilations, regardless of whether a

16 particular DOCUMENT is privileged or confidential, and regardless of the form of

17 storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk

18 (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device).

19 "DOCUMENT" and "DOCUMENTS" includes, but is not limited to, all DOCUMENTS

20 generated by or maintained in the Director's Project Tracking System, official ADC

21 papers, and the ADC's intranet.

22     8.     "HEALTH CARE" means the provision of care, including adequate diet, to

23 address the mental health, medical, or dental needs of a PRISONER, whether those needs

24 arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic

25 or preventive purposes.

26     9.     "HEALTH CARE CLINICIANS" means persons independently licensed to

27 provide HEALTH CARE to PRISONERS at the ADC facilities, including but not limited

28 to M.D., D.O., D.D.S., and Ph.D. credentialed staff.

10.     "HEALTH CARE DIRECTIVES" means DOCUMENTS REGARDING advance medical care directives, living wills, personal directives, advance directives, or instructions of any kind in which individuals specify what actions should or should not be taken for their HEALTH CARE in the event they are no longer able to make decisions due to illness, injury, or incapacity

11.     "HEALTH CARE RECORDS" means any and all documents maintained and recorded, whether in electronic or paper format, for individual PRISONERS regarding the HEALTH CARE they are receiving or requesting.

12.     "HEALTH CARE SHORTAGES" means any deficiencies involving HEALTH CARE, including but not limited to a lack of or insufficient number of medicines, drugs, medical supplies, medical equipment, transportation, or HEALTH CARE STAFFING.

13.     "HEALTH CARE STAFF" means all staff employed or paid by the ADC, or paid indirectly by the ADC through the HEALTH CARE PRIVATIZATION CONTRACT with WEXFORD who are responsible for providing HEALTH CARE to ADC PRISONERS, including but not limited to HEALTH CARE CLINICIANS, MID-LEVEL PRACTITIONERS, ENTRY-LEVEL PRACTITIONERS, PHARMACISTS, and administrative and support staff.

14.     "HEALTH CARE STAFFING" means the provision of HEALTH CARE STAFF to provide HEALTH CARE.

15.     "HEALTH GRIEVANCES" means requests for HEALTH CARE or COMPLAINTS REGARDING the need for, adequacy of, quality of, or timing of HEALTH CARE made by PRISONERS to the ADC, including but not limited to the submission of Health Needs Request ("HNR") forms and the exhaustion of claims stated therein.

16.     "HNR POLICIES AND PROCEDURES" means policies, procedures, or practices, whether written or established through custom or use, REGARDING HNR submissions by PRISONERS, including but not limited to the distribution, disposal,

processing, rejection of, responses to, provision of HEALTH CARE pursuant to, and exhaustion of claims raised by such submissions.  This includes policies, procedures, or practices that are in draft form and have not been approved and/or implemented.

17.    "HOSPITALIZED PRISONER" means any PRISONER who is sent to a hospital or other off-site medical or mental health facility, or who is admitted to an on-site hospital, while in the custody of the ADC.

18.    "HOURS OF OPERATION" means the time periods during which a facility, unit, or other ADC facility housing PRISONERS is able to provide HEALTH CARE to PRISONERS by on-site HEALTH CARE STAFF.

19.    "IDENTIFY" and "IDENTIFICATION" with respect to (a) a PRISONER or former PRISONER, means to state the PRISONER'S full name, ADC number, date of birth, current or most recent mental health score (MH-1 through MH-5), medical score (M-1 through M-5), public risk score, institutional risk score, and current housing location (if still in ADC custody) or last known address and telephone number (if no longer in ADC custody); (b) a person other than a PRISONER or former PRISONER, means to state the person's full name and specify whether or not the person is or has been an ADC STAFF member, and if so, to state the staff member's position title, facility location, work schedule, responsibilities, date ADC employment began, date ADC employment terminated, dates of any changes in position titles or responsibilities, DESCRIPTIONS of any changes in position titles or responsibilities and, if the person is not currently employed by ADC, the person's last known address and telephone number; and (c) a third-party contractor or entity means to state the name of the contractor or entity, the type of entity (e.g., corporation, partnership, etc.); its address and telephone number; and any persons YOU are aware of who acted on behalf of that contractor or entity with respect to the events at issue in the discovery request; (d) IDENTIFY in any other context means to provide as much INFORMATION REGARDING the thing to be identified as is in the possession of DEFENDANTS or the ADC.

20.     "INFORMATION" means any knowledge YOU have, any evidence of any type, any facts of which YOU are aware and any inferences or speculation of which YOU are aware, all regardless of the source.  When INFORMATION YOU provide is based solely on inference or speculation, specifically so state in YOUR response.  When providing INFORMATION, provide the names of involved individuals, actions relevant to the requested INFORMATION, dates and times when known, locations, and any other knowledge YOU have about the subject of the discovery request.  When asked to provide INFORMATION about one or more individuals, IDENTIFY the individual or individuals and provide any other INFORMATION YOU have about such person or persons.

21.     "ISOLATION" means confinement in a cell for 22 hours or more each day; confinement in Eyman-Special Management Unit ("SMU") 1, Eyman-Browning Unit, Florence-Central Unit, Florence-Kasson Unit, or Perryville-Lumley Special Management Area ("SMA"); or confinement in a Complex Detention Unit ("CDU").

22.     "MINUTES" means notes or any other recording reflecting the content of a meeting, whether written contemporaneously with or subsequent to the meeting.

23.     "OUTDOOR EXERCISE" means periods during which PRISONERS are permitted to exercise in the outdoors.

24.     "POLICIES AND PROCEDURES" means policies, procedures, criteria, or practices, whether written or established through custom or use, including but not limited to policy and procedure manuals, directors' orders, protocols, directives, flowcharts, institution post orders, and any other DOCUMENTS designed to direct the actions of ADC personnel, ADC contractors, and/or PRISONERS.

25.     "PRISONER" means a person incarcerated by the ADC.

26.     "REFERRAL" means a recommendation that a PRISONER obtain HEALTH CARE at ADC or non ADC facilities, whether or not such HEALTH CARE is in fact ever provided.

27.     "REFERRED CARE" means HEALTH CARE pursuant to a REFERRAL.

1       28.    "REFERRED PRISONER" means a PRISONER who received a
2  REFERRAL while in the legal custody of the ADC.

3       29.    "REGARDING" or "REGARDED" to any given subject matter means,
4  without limitation, anything that, in whole or in part, analyzes, comments upon,
5  comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences,
6  explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers
7  to, relates to, responds to, states, summarizes, or is in any way relevant to the particular
8  subject matter identified.

9       30.    "REVIEWS" means examinations, assessments, evaluations, or
10  investigations performed by or at the direction of ADC staff or officials.

11       31.    "STAFFING SCHEDULE" means the days, hours, and/or shifts for which
12  each member of the HEALTH CARE STAFF was scheduled to work, including overtime,
13  on call and call-in coverage.

14       32.    "SUFFICIENT TO SHOW" means demonstrating or evidencing complete
15  INFORMATION on the requested topic, without the need to produce every DOCUMENT
16  REGARDING the topic.

17       33.    "YOU," "YOUR," "YOURSELF," and "DEFENDANTS" means
18  defendants Charles Ryan and Richard Pratt, and their predecessors, successors,
19  employees, subordinates, contractors, agents, and attorneys.

20       34.    "WEXFORD" means Wexford Health Sources, Incorporated.

21  **TOPICS**

22       1.    POLICIES AND PROCEDURES for placement in, retention in, and release
23  from ISOLATION.

24       2.    CONDITIONS OF CONFINEMENT in ISOLATION.

25       3.    Programming available in ISOLATION, including but not limited to
26  employment, education, drug treatment, and rehabilitative services.

27       4.    Lengths of stay in ISOLATION, including mean, median, and maximum
28  lengths of confinement.

-11-

1       5.       POLICIES AND PROCEDURES related to increases and decreases in

2 PRISONER privileges while housed in ISOLATION.

3       6.       POLICIES AND PROCEDURES related to the provision of food to

4 PRISONERS in ISOLATION, including but not limited to schedules for delivery of food;

5 deviations from such schedules; menus; and nutritional analyses of menus.

6       7.       POLICIES AND PROCEDURES for exercise in ISOLATION, including

7 but not limited to OUTDOOR EXERCISE.

8       8.       POLICIES AND PROCEDURES REGARDING any out-of-cell time for

9 PRISONERS in ISOLATION, including but not limited to, any congregate activities

10 allowed with other PRISONERS.

11       9.       CORRECTIONAL STAFF posts at each ISOLATION unit for each shift,

12 including knowledge of post orders and daily job duties.

13       10.      POLICIES AND PROCEDURES for monitoring the effects of

14 CONDITIONS OF CONFINEMENT in ISOLATION on PRISONERS' mental and

15 physical health.

16       11.      POLICIES AND PROCEDURES for suicide watch and prevention in

17 ISOLATION.

18       12.      POLICIES AND PROCEDURES for the REFERRAL and transfer of

19 PRISONERS from   ISOLATION to inpatient mental health facilities, whether operated

20 by the ADC or some other entity.

21       13.      Required CORRECTIONAL STAFF levels for each ISOLATION unit for

22 each shift, including current STAFFING SCHEDULES.

23       14.      Training provided to CORRECTIONAL STAFF working in ISOLATION

24 units.

25       15.      Training provided to HEALTH CARE STAFF working with PRISONERS

26 housed in ISOLATION.

27       16.      POLICIES AND PROCEDURES REGARDING the use of force or

28 restraint by ADC staff on PRISONERS on suicide watch or PRISONERS classified as

"seriously mentally ill," "severely mentally ill," MH-1 through MH-5, or any other mental health classification employed by the ADC or WEXFORD while housed in ISOLATION.

78204-0001/LEGAL27821098.1