Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email: dpochoda@acluaz.org
         kflood@acluaz.org
         jlyall@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Jennifer Alewelt (Bar No. 027366)
Asim Varma (Bar No. 027927)
Sarah Kader (Bar No. 027147)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email: jalewelt@azdisabilitylaw.org
         avarma@azdisabilitylaw.org
         skader@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-NVW (MEA) |
| Plaintiffs, | **SECOND JOINT REQUEST FOR CLARIFICATION** |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | **EXPEDITED CONSIDERATION REQUESTED** |
| Defendants. | |

The parties seek clarification from the Court of its September 9, 2013 Order. (Doc. 623)  The parties request that this request be resolved immediately because pursuant to the Court's scheduling order, fact depositions must be completed by September 20, five business days prior to the close of fact discovery.  The parties have met and conferred and certify that they have reached an impasse on the following two disputed issues.

**Disputed Issues**

1.     Are the depositions of the 11 contract monitors limited to the contract monitor's role and responsibilities in monitoring the facility's compliance with the Corizon contract and the facility's compliance with that contract, or can they be asked about any topic reasonably calculated to lead to the discovery of admissible evidence?

2.     Can Defendants be compelled to produce additional witnesses in response to Plaintiffs' renewed Rule 30(b)(6) deposition notices, and if so, do each of those three renewed notices  count against the 25-deposition limit?

**Plaintiffs' Introduction**

The current dispute arises from Defendants' never-ending attempt to limit the evidence Plaintiffs may obtain to prove their case.  In its latest chapter, Defendants insist on several absurdly narrow interpretations of the Court's latest order.  (Doc. 623)  In that order the Court ruled that Plaintiffs may take only 36 depositions, 11 of which must be contract monitors assigned to specific prisons.  After the Court issued its order limiting the *type of monitor* Plaintiffs may depose, Defendants now take the position that this order also limits the *type of questions* Plaintiffs may ask of these individuals who are being subpoenaed in their individual capacity to testify.  They have done so by contending that if Plaintiffs ask a single question of a contract monitor that goes beyond the scope of his or her *current* employment duties, it will count as one of the 25 non-contract monitor depositions, and Defendants have promised to unilaterally stop producing witnesses as soon as they believe the 25 deposition limit has been met.  Plaintiffs submit that the Federal Rules allow them to ask any question of a witness that may lead to the discovery

of relevant evidence, and by taking such an extreme position Defendants are prejudicing Plaintiffs' ability to prove their case.

The Court also stated in its Order that "each 30(b)(6) deposition counts as one deposition and the Court sees no need to deviate from that approach." (Doc. 623 at 1)  As detailed below, last fall Plaintiffs issued 30(b)(6) deposition notices for which Defendants unilaterally refused to produce knowledgeable witnesses for all topics.  Once Plaintiffs learned on Monday that the Court considers each 30(b)(6) deposition counts as one of the 25 depositions Plaintiffs are entitled to, they renewed these 30(b)(6) deposition notices. Contrary to the Court's ruling, Defendants take the already rejected position that these renewed notices of pre-existing notices count as more than one deposition.

These depositions are critical because despite Plaintiffs' best efforts at other discovery, such as prison tours, written discovery, and document requests, Defendants have not provided the necessary information.  During prison tours, for example, Defendants' counsel repeatedly instructed staff not to answer questions on the ground that an inspection is not a deposition.  Now, consistent with their strategy of preventing Plaintiffs from obtaining evidence, Defendants are objecting to the depositions at which those questions could be answered.

Despite the massive nature of the facts in this case and the 76 witnesses that Defendants have said they may call at trial, Plaintiffs have been permitted very limited deposition discovery.  Plaintiffs are working under the rules set by the Court to the best of their ability.  However, Plaintiffs must not be further hamstrung by Defendants' unfounded positions.

**Defendants' Introduction**

Plaintiffs' second verse is the same as the first:  the Court set generous limits on the number of depositions Plaintiffs can take, despite their wasteful and inefficient use of prior discovery; Plaintiffs refuse to accept those limitations and have proceed as if there are none; Plaintiffs go back to the Court to get a different result and accuse Defendants of

being the problem.  No matter how artfully they try to re-write the script, the story does not change.[1]

Issue 1:  The Court set a 25-deposition limit, but excluded the "11 contract monitors" from that total.  (Dkt. # 611.)  Plaintiffs first argued that this exemption included *any* individual employed in the ADC Health Services Contract Monitoring Bureau, including those who monitor statewide care.  (Dkt. # 618.)  They took this position so that six of their already taken or noticed depositions would not count against the 25-deposition limit.  (Id.)  The Court clarified that the "11 contract monitors" included only the 10 facility contract-compliance monitors and their supervisor, and not "statewide monitors of general healthcare."  (Dkt. # 623.)  Plaintiffs responded with retaliation:  the next day – September 10, 2013, just 10 days before the deposition deadline – they informed Defendants that they were going to notice the depositions of all 11 contract-compliance monitors, despite the fact that they had previously told Defendants that they only wanted to depose four of them.[2]  (Ex. 1; Ex. 11.)  They also now take the position that they can question the "11 contract monitors" about *any* topic, including subjects outside their role and responsibilities as a contract-compliance monitor at their respective facility.  A scopeless deposition would eviscerate the distinction that the Court carefully made between those depositions that count against the 25-deposition limit (including statewide care monitoring) and those that fall within the "11 contract monitor" exemption (facility-specific contract compliance).

Issue 2: In October 2012, after Plaintiffs had noticed seven ADC 30(b)(6) depositions, the Court characterized the "number and extent of Rule 30(b)(6) depositions

---

[1] Plaintiffs' complaint that the Court has permitted them "very limited deposition discovery" and that Defendants have not provided adequate discovery is absurd, if not insulting to the Court and Defendants.

[2] The Court's clarification order had no bearing on whether these additional *seven* contract-compliance monitors counted against the 25-deposition limit because Defendants had agreed that they fell within the "11 contract monitor" exemption.  Now, Plaintiffs have subpoenaed these additional seven contract monitors, requiring their depositions in the last week of discovery, and threatening legal action if they do not appear under the subpoena.  (Ex. 12; Dkt. # 638–1.)

sought by Plaintiffs" as "extreme." (Dkt. # 171.) Nonetheless, in August 2013, Plaintiffs informed Defendants and the Court that they wanted to notice two more ADC 30(b)(6) depositions. (Dkt. # 577.) The Court allowed them to notice these additional 30(b)(6) depositions, but cautioned they would count toward the 25-deposition limit. (Dkt. # 611.) To make room for these additional depositions, Plaintiffs argued that two of them, noticed at Dkt. # 80 and Dkt. # 81, did not count against the 25-deposition limit because the deponents did not testify as to all of the topics that were listed in the notices. (Dkt. # 618.) The Court rejected this maneuvering and ruled that "each 30(b)(6) notice counts as one deposition." (Dkt. # 623.) To circumvent the Court's order, Plaintiffs withdrew the two additional ADC 30(b)(6) notices, and now argue that Defendants must produce additional deponents in response to not only the notices at Dkt. # 80 and Dkt. # 81 but also the notice at Dkt. # 78, and that none of these additional depositions count toward the limit.

This is just the latest round of Plaintiffs' manipulation of the Court's orders. Before the last clarification order (Dkt. # 623), Plaintiffs had sought to take a total of 38 depositions: 34 non-contract monitors and 4 contract monitors. (Dkt. # 618 at 11–12.) After that order, they still want to take at least 37 depositions: 25 non-contract monitors, 11 contract monitors unlimited in scope, at least three continued ADC Rule 30(b)(6) depositions (Dkt. ## 633, 634, 635), one continued Wexford Rule 30(b)(6) deposition (Dkt. # 630), and one continued Smallwood Rule 30(b)(6) deposition (Ex. 13). They are trying to circumvent the Court's order, and as a result Defendants are having to defend and/or attend <u>14 noticed depositions</u> in the final 8 days of discovery.[3] The Court should clarify that (1) the 11 contract monitor depositions are limited to the monitors' roles and responsibilities as contract-compliance monitors at their respective facilities and contract compliance at their facilities, and (2) any "continuing" depositions noticed pursuant to any

_____

[3] That number does not include the depositions of Director Charles Ryan, Richard Pratt, or Dr. Neil Fisher (continued Wexford Rule 30(b)(6) deposition), which are scheduled after the discovery cut-off date.

1   prior Rule 30(b)(6) notice, including those at Dkt. ## 78, 80, and 81, count toward the 25-
2   deposition limit.

3   **I.      SCOPE OF THE CONTRACT-MONITOR DEPOSITIONS**

4       **Plaintiffs' Position**

5       Despite the Court's order plainly allowing Plaintiffs to depose 11 contract
6   monitors, Defendants again are seeking to run up the count of Plaintiffs' depositions by
7   unilaterally imposing limitations on the scope of those depositions.  On Monday, the
8   Court clarified which "monitors" Plaintiffs were authorized to depose, expressly
9   authorizing "Plaintiffs to depose the 11 contract monitors related to each facility's monitor
10  and the supervisor."  (Doc. 623)  In light of that order, Plaintiffs the next day notified
11  Defendants of their intent to depose those monitors.  [Ex. 1]  Despite Defendants'
12  unfounded accusations of "retaliation," Plaintiffs noticed these depositions quickly after
13  the Court clarified which depositions fall within the limit of 11 contract monitors.

14      The evening before the prescheduled deposition of Kathleen Campbell, one of the
15  11 monitors, Defendants, for the first time, asserted that monitor depositions "will be
16  limited to their duties as to monitoring the Corizon contract[] (And Wexford contract if
17  they were in that position during Wexford's tenure)."  [*Id.*, Ex. 2]  Defendants then stated
18  that they would unilaterally count each monitoring deposition as two depositions if
19  Plaintiffs asked questions beyond Defendants' pre-approved scope limitations.  [*Id.*]
20  During Ms. Campbell's deposition on September 11, Defendants changed their position
21  yet again, taking an even harder line.  Ms. Campbell has been in her current monitor
22  position since May 2013.  Previously, she was a facility monitor and "quality monitor"
23  during Wexford's and Corizon's tenure.  Defendants asserted at the deposition that any
24  questions about Ms. Campbell's work as a monitor prior to May 2013 were outside the
25  scope, and tried to count Ms. Campbell's deposition as two depositions.  [Ex. 3][4]

26

27  _____
        [4] Before Ms. Campbell's deposition, two facility monitors had been deposed,
28  during which Defendants had not yet come up with their position that questions must be
    limited to the monitor's current duties.

1    Defendants' latest attempt to thwart discovery, however, flies in the face of both

2    the Court's order and the Federal Rules.  Nothing in any Court order limits the scope of

3    any deposition or makes the counting of depositions contingent on which questions are

4    asked.  That was true when the Court first allowed Plaintiffs to "depose all 11 contract

5    monitors" (Doc. 611), and it was true when the Court again permitted "Plaintiffs to depose

6    the 11 contract monitors" (Doc. 623).  These orders are consistent with the Federal Rules,

7    which allow discovery of any matter "reasonably calculated to lead to the discovery of

8    admissible evidence."  Fed. R. Civ. P. 26(b)(1).  These are not Rule 30(b)(6) depositions,

9    for which an objection to the scope of a question might be permissible. Nor are Plaintiffs

10   trying to ask the monitors about "any" topic, but rather Plaintiffs intend to confine their

11   questions to the reasonable scope of discovery allowed under Rule 26.

12   If Defendants wanted to limit the scope of any deposition beyond that authorized

13   by the Federal Rules, Defendants had at least two opportunities to do so: (1) before the

14   Court first ordered that Plaintiffs could depose all 11 contract monitors, and (2) before the

15   Court clarified which witnesses count as those 11 monitors.  Defendants instead waited

16   until the deposition schedule was in place, hoping to double-count monitor depositions in

17   order to avoid producing other witnesses later in discovery.

18   Defendants waited until the eve of the remaining monitor depositions, placing an

19   unworkable burden on Plaintiffs to guess which questions Defendants will deem outside

20   the scope, and on the Court to police depositions question-by-question.  It is difficult, if

21   not impossible, to evaluate which questions Defendants think relate to a witness's "duties

22   as to monitoring," especially as Defendants continually shift positions on the scope of

23   discovery.  Many of the monitors, such as Ms. Campbell, worked in the health care field

24   under ADC, then Wexford, and now Corizon.  Plaintiffs maintain that questions relating

25   to the provision of health care in ADC facilities and the way in which ADC has monitored

26   or otherwise regulated that care *are related* to a witness's current duties as a monitor and

27   to the sufficiency of the current provision of health care in ADC facilities.  But even so,

28

1    this Court has never, and should not, limit the scope of any deposition or allow

2    Defendants to decide which depositions to double-count.

3    **Defendants' Position**

4    Plaintiffs' theatrics aside, the parties ask a simple question: are Plaintiffs entitled

5    to ask the 11 facility-specific, contract-compliance monitors *any* question regarding *any*

6    topic or subject, or are the depositions limited to the contract monitor's role and

7    responsibilities in monitoring the facility's compliance with the Corizon contract and the

8    facility's compliance with that contract?

9    A limited deposition is consistent with the Court's intent in exempting the

10   11 contract monitors from the 25-deposition limit. Allowing a scopeless deposition

11   essentially eliminates the exemption. Plaintiffs' recent deposition of contract monitor

12   Kathleen Campbell proves this point. Ms. Campbell has been the Program Evaluation

13   Administrator since May 2013; she is essentially the contract monitors' supervisor and is

14   included in the "11 contract monitor" exemption. (Ex. 14, ¶ 3.) Plaintiffs' counsel,

15   however, extensively questioned Ms. Campbell on: (1) training, policies, procurement,

16   and performance during Wexford's provision of healthcare to ADC inmates prior to

17   March 2013, despite the fact that she was not responsible for monitoring/supervising

18   contract compliance at all during Wexford's tenure; (2) her duties in her former position

19   as the Health Services Coordinator/Nursing Monitor ("HSC"), including specific events

20   related to nursing that she was involved in as HSC, dating back as far as August 2012

21   when Wexford was providing healthcare, whether she ever worked in the field with

22   Wexford, whether she assisted Wexford during its transition into the healthcare system,

23   and whether Wexford ever offered her a position; (3) whether she found that Wexford was

24   addressing "systemic" problems within ADC; (4) her opinion, based on her years of

25   experience, on Wexford's overall performance in providing healthcare to ADC inmates;

26   (5) the termination of Wexford's contract; (6) Corizon's procurement, which also

27   occurred prior to Ms. Campbell assuming the Program Evaluation Administrator position

28   in May 2013; and (7) the transition from Wexford to Corizon for the provision of

1    healthcare to inmates in ADC, which occurred in March 2013.  (Ex. 14, ¶¶ 7–18.)

2    Ms. Campbell's deposition lasted approximately 5 ½ hours.  (Id., ¶ 19.)  Only about 1½

3    hours pertained to her role and responsibilities as Program Evaluation Administrator.  (Id.)

4        Plaintiffs continued down this scopeless path, and disregarded Defendants'

5    repeated warnings that they were choosing to remove her from the "11 contract monitor"

6    exemption.[5]  Notably, Vanessa Headstream is now the HSC, and the Court has already

7    determined that her deposition counted against the 25-deposition limit.  Campbell's

8    deposition should similarly count against that limit, as well as any contract monitor whom

9    they question on topics outside their role and responsibilities in monitoring the facility's

10   compliance with the Corizon contract and the facility's compliance with that contract.

11   Otherwise, they are using these contract monitors to elicit information that the Court has

12   already ruled counts against the 25-deposition limit.[6]

13   **II.    RENEWED RULE 30(B)(6) DEPOSITION NOTICES**

14       <u>**Plaintiffs' Position**</u>

15       In 2012, prior to filing the motion for class certification, Plaintiffs served

16   Defendants several 30(b)(6) notices.  The ones presently at issue are at Dockets 78, 80,

17   and 81.  Defendants produced witnesses in late September and early October 2012

18

19       [5] Defendants first informed Plaintiffs of their belief that the contract monitor
20   depositions were to be limited in scope within 6 hours of Plaintiffs informing Defendants
     that they intended to depose all 11 contract monitors.  (Ex. 1–2.)  Only one contract
21   monitor had been deposed before that time (Valenzuela).  The notice was given before the
     9 remaining contract monitors' scheduled depositions (one deposition was occurring at the
22   time Plaintiffs told Defendants that they were now going to depose all 11 contract
     monitors).  Defendants did not "wait[] until the deposition schedule was in place, hoping
23   to double-count monitor depositions in order to avoid producing other witnesses later in
     discovery."
24       [6] Contrary to Plaintiffs' complaint, limiting the scope of the depositions as
     outlined herein does not create an "unworkable burden on Plaintiffs to guess which
25   questions" are "outside the scope."  With the Court's clarification, Plaintiffs' counsel
     should be capable of taking a deposition and asking only questions that fall within the
26   scope delineated.  Plaintiffs' contention that it is Defendants' position that even a "single
     question" outside the scope will count the deposition against the 25-deposition limit is
27   wrong.  Defendants informed Plaintiffs' counsel at the meet and confer that there would
     be leeway, notice, and negotiation during the depositions, as they understand that certain
28   questions are subject to differing interpretations.  But, for example, questions like those
     asked of Ms. Campbell clearly cross the line.

1  responsive to some of the topics, but as of October 4, 2012, stated they would not produce

2  or designate witnesses for the remaining topics.  [Ex. 4]  As the Court had advised the

3  parties in October that it thought that "[s]weeping discovery from a large organization is

4  usually better and far more economically obtained by written discovery, with

5  Rule 30(b)(6) depositions to supplement[,]" (Doc. 171), Plaintiffs turned their focus to

6  obtaining evidence through written discovery requests.

7  Unfortunately, as illustrated with the long-running back-and-forth regarding the

8  production of emails (Doc. 624), and Defendants' refusal to produce documents or written

9  discovery responses applicable to prisoners beyond the 14 named Plaintiffs prior to class

10  certification (Doc. 283 at 4; Doc. 364 at 2-3; Doc. 365 at ¶¶ 2-6), Defendants have

11  frustrated and perverted the basic concept of orderly discovery.  Additionally, it was not

12  until September 9, 2013 that the Court definitively stated its position that "each 30(b)(6)

13  deposition counts as one deposition."  Upon receiving that ruling, Plaintiffs promptly

14  notified Defendants that they planned to renew the notices for Dockets 78, 80, and 81, to

15  continue the depositions and set a date for Defendants to produce responsive witnesses for

16  the remaining topics for which Plaintiffs need information.  [Ex. 1]  Defendants now

17  assert these are not continuances of existing 30(b)(6) depositions, but somehow morphed

18  into new depositions that count against the limit of 25 depositions set by the court.  [*Id.*,

19  Ex. 2]

20  Defendants cannot "unilaterally decide[] to block discovery into topics clearly

21  identified in a 30(b)(6) notice."  *Collins v. Nissan North Am., Inc.*, 2013 WL 1950002 *1

22  (E.D. Tex. May 9, 2013).  Furthermore, once a party is served with the deposition notice

23  under Rule 30(b)(6), "the responding party is required to produce one or more witnesses

24  knowledgeable about the subject matter of the noticed topics."  *Great Am. Ins. Co. of New*

25  *York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 538 (D. Nev. 2008) (citation omitted).

26  The designating party also "has a duty to designate more than one deponent if necessary

27  to respond to relevant areas of inquiry on the noticed topics."  *Id.* at 538-39.  Defendants

28  cannot ignore this duty simply by asserting that Plaintiffs waited too long to enforce that

duty.  Plaintiffs have not waived their right to complete their Rule 30(b)(6) depositions due to the passage of time, especially because there remains time to complete the depositions under the current schedule; rather, Plaintiffs were merely following the Court's advice to first seek the information via written discovery and then to use depositions as needed to "supplement" written discovery.

First, the deposition noticed at Docket 78 sought the testimony of person(s) who could testify about information known or reasonably available to ADC regarding 18 topics related to the delivery of medical care.  (Doc. 78-1 at 8-10)  Defendants designated two persons as responsive on the topics, but only produced one, Dr. Richard Rowe, to testify on 12 topics (1, 2, 5-10, 12, 13, 15, and 17).  (Ex. 5 [Deposition of Dr. Rowe])  Plaintiffs' Notice of Continuance of 30(b)(6) Deposition (Doc. 633) seeks to continue the deposition for the six remaining topics (3, 4, 11, 14, 16, and 18).  These remaining topics pertain to the grievance procedures for prisoners raising medical issues, tracking and scheduling for health care appointments, the procedures for obtaining informed consent, the nature and extent of clinical space, statistical data regarding the provision of medical care, and utilization review practices.   These are important components of a functioning correctional health care system, but to date Defendants have produced minimal or no written discovery on these topics, and Defendants refused to provide answers to Plaintiffs' medical experts' basic questions during tours.  (Doc. 562 at ¶¶ 3-8)

Next, the deposition noticed at Docket 80 sought the testimony of person(s) who could testify about information known or reasonably available to ADC regarding ten topics related to the health care budget, training, and staffing levels.  (Doc. 80-1 at 9-10)  Defendants designated three persons as responsive to these topics, but in violation of Rule 37(d)(1)(A) failed to appear at a deposition on the agreed upon date of October 5, 2012 with the witness responsive to Topic 2.  (Ex. 6 [Non-Appearance of 30(b)(6) witness])  Plaintiffs' Notice of Continuance of 30(b)(6) Deposition (Doc. 634) simply seeks to continue the deposition Defendants failed to attend, despite not filing a motion to quash or for a protective order.  Testimony on this topic is necessary because Defendants

have submitted new budget proposals to the Legislature, have changed medical providers, signed a new contract with Corizon, Inc. for a different budget than that with Wexford, and have not provided information regarding how they are ensuring that Corizon's budget proposal was analyzed, or how they are auditing Corizon's expenditures to ensure that the contractor is spending money as budgeted.

Finally, the deposition noticed at Docket 81 sought the testimony of person(s) who could testify about information known or reasonably available to ADC regarding 16 topics related to the conditions of confinement in isolation units.  (Doc. 81-1 at 7-8)  Defendants designated two people as responsive to these topics, but only produced one, Dr. Ben Shaw, to testify to three topics (10, 12, 15).  [Ex. 7]  Plaintiffs' Notice of Continuance of 30(b)(6) Deposition (Doc. 635) seeks to continue the deposition for the 13 remaining topics (1-9, 11, 13, 14, and 16).[7]  This continued deposition is critical to establish statewide policies, procedures and practices in the isolation units, and to identify recent programmatic changes in those units, any policies or practices underlying such changes, and the extent to which such changes apply to the entire isolation sub-class.

**Defendants' Position**

A.    Plaintiffs Abandoned their Rule 30(b)(6) Topics

To date, Plaintiffs have served nine 30(b)(6) Notices which encompass over 115 Topics and make up over 70 pages.[8]  In October 2012, after several meet and confers and the exchange of numerous correspondence regarding the over breadth and lack of specificity in Plaintiffs' Topics, the parties' submitted two discovery disputes to the Court. (Docs. 150, 158).  In its order regarding Doc. 150, the Court noted, "The number and

---

[7] Defendants cite to an October 9, 2012 letter from Counsel for Plaintiffs proposing to withdraw three of the topics listed for Docket 81, numbers 9, 13, and 14. (Ex. 8)  However, this was a proposal that Defendants explicitly rejected two days later. (Ex. 9 [Fletcher Oct. 11, 2012 letter: " Defendants therefore decline your proposal regarding the remaining 30(b)(6) notices"])

[8] This does not include the four 30(b)(6) Notices Plaintiffs served on third parties (Wexford, Smallwood, and Corizon).

extent of Rule 30(b)(6) depositions sought by Plaintiffs was extreme."[9]  (Doc. 171).  After that Order, Plaintiffs' Counsel withdrew several Topics from their notices. (Ex. 8)[10]  But given the Court's comments regarding Plaintiffs' 30(b)(6) Notices, Defendants maintained their position that the scope and breadth of Plaintiffs' Notices was improper and advised Plaintiffs that in light of the Court's Order noting their extremity, they would cancel all remaining 30(b)(6) depositions.[11]  (Ex. 9).  Plaintiffs failed to respond, failed to request a meet-and-confer, and failed to ever bring the issue to the Court – until now, nearly a year later.   Only now, exactly one week before the deadline to conduct depositions, do Plaintiffs request a "continuation" of the 30(b)(6) depositions noticed over a year ago.[12]

Plaintiffs themselves believed the 30(b)(6) depositions taken last year (Doc. 79, Doc. 80, Doc. 81) could not be continued.  Otherwise, they would not have noticed new 30(b)(6) notices to ADC on September 4, 2013, that are virtually identical to the ones served in August 2012.[13]  (Docs. 80, 81; 602-1.)  But upon the issuance of the Court's September 9, 2013 Order agreeing with Plaintiffs' position that each Rule 30(b)(6) counted as a separate deposition[14] and ruling that any new 30(b)(6) notices would count towards the 25-deposition limit, Plaintiffs realized they would not be allowed to depose the number of witnesses they originally wanted.   The solution was to find a way to

---

[9]  The Court never ruled on Doc. 158 – the second discovery dispute regarding Plaintiffs' 30(b)(6) depositions.

[10]  Although Plaintiffs now conveniently assert that the withdrawal of the topics listed in Mr. Fathi's October 9, 2012 was contingent upon Defendants agreeing to Plaintiffs' proposal, the parenthetical contained in the letter clearly states, "In response to your request to narrow the topics for 30(b)(6) depositions, plaintiffs *have* deleted Topics 9, 13, and 14." (Ex. 8)  Thus, the withdrawal of those topics occurred *prior* to Plaintiffs' October 9 proposal.  Specifically, the withdrawal occurred during a meet and confer regarding Plaintiffs' deficient notices.

[11]  Plaintiffs' assertion that witnesses "failed to appear" for depositions is incorrect.  The depositions were canceled in light of the Court's Order and the fact Plaintiffs' Notices were patently deficient.

[12]  Indeed, many of the Topics Plaintiffs request testimony regarding were withdrawn by Plaintiffs' Counsel in October 2012. (Ex. 8)

[13]  Plaintiffs have since withdrawn these notices and noticed additional depositions in place of these notices.

[14]  Plaintiffs' assertion that the Court's September 9, 2013 Order was the first time they realized each 30(b)(6) deposition counted as one deposition is not true.  Indeed, it was Plaintiffs themselves who took this position repeatedly in previous filings with the Court.  (Dkt. # 559 at 6 n.8; Dkt. # 577 at 2 n.2; Dkt. # 600 at 9 n.7)

1  circumvent the Court's ruling.  This was accomplished by asserting an entirely new

2  position – that they are entitled to "continue" 30(b)(6) notices from over a year ago.

3      Indeed, September 10, 2013 (three days ago) was the first time Plaintiffs advised

4  Defendants they would seek to "continue" depositions from last year.[15]  The Court should

5  not allow such manipulation.  If Plaintiffs believed they were entitled to continuing

6  depositions (as Plaintiffs now claim), they would have raised it with the Court last year, in

7  the Joint Report (Doc. 600) or in the numerous pleadings filed with the Court over the last

8  month that directly dealt with the number of depositions, and Rule 30(b)(6) depositions,

9  Plaintiffs wanted in this case.  Indeed, any reference to "continue" last year's 30(b)(6)

10  depositions is readily absent from any document filed with the Court.  Additionally, last

11  year's 30(b)(6) depositions of ADC were mentioned during the Motion to Stay hearing.

12  Plaintiffs acknowledged that Defendants objected to these notices, but failed to mention

13  they would seek to "continue" those depositions, even after the Court directly inquired

14  into what depositions were still needed by Plaintiffs.  This is because, at that time,

15  Plaintiffs believed they could notice additional 30(b)(6) notices of ADC.  Now that they

16  are required to prioritize their depositions, they cannot afford to have two more count

17  toward their limit.  So instead, they now seek to resurrect their prior notices.  This would

18  allow Plaintiffs to circumvent the Court's ruling and still get what they want.[16]

19      B.  Defendants Produced Witnesses for All Non-Objectionable Topics

20      Defendants provided full and complete testimony on all non-privileged, non-

21  expert, and non-objectionable portions of Plaintiffs' Rule 30(b)(6) topics.  An entity is not

22  required to produce witnesses on 30(b)(6) topics that are overly broad, unduly

23  burdensome, oppressive, vague, and ambiguous.  *Static Control Components, Inc. v.*

24  *Lexmark Int'l, Inc*., CIV A 04-84-KSF, 2006 WL 3702464 (E.D. Ky. Dec. 13, 2006)

25  (denying plaintiff's request for a continuation of a 30(b)(6) deposition for topics

26  _____

27  [15] This clearly does not constitute reasonable notice to Defendants to identify and produce witnesses.  *See* Fed. R. Civ. P. 30(b)(1).

28  [16] Plaintiffs cite no authority to support their position that waiting over a year to request a "continuation" of a 30(b)(6) notice is somehow permitted.

defendants did not produce witnesses on).  Defendants provided detailed objections to the deposition topics in question as being, among other things; overly broad, unduly burdensome, vague and ambiguous, and not described with specificity – as explicitly required by Rule 30(b)(6).[17]  These objections were served on Plaintiffs well before any deposition went forward.  (Ex. 10).  Thus, Plaintiffs had adequate notice of Defendants' objections, but chose to proceed with the Rule 30(b)(6) deposition without resolving them.  Therefore, Plaintiffs have no basis to complain about subject matter now.  *Id.*

C.   Plaintiffs Obtained Information Relevant to the Topics Through Other Means

The information Plaintiffs hope to obtain through these continuing depositions have already been produced through the other witnesses Plaintiffs have deposed, the over 130,000 pages of documents Defendants have produced, and the more than 40 expert tours.[18]  Specifically, although Nicole Taylor (Mental Health Monitor), Dr. Robertson (Medical Program Administrator), Greg Fizer (Deputy Warden, ASPC-Florence Central Unit), Tracy Crews M.D., Carlos Weekly M.D., Carmelo Echeverria, M.D., Jeff Sharp, M.D., and Arthur Gross (Assistant Director of the Health Services Bureau) were not noticed as 30(b)(6) depositions, their testimony filled the gaps in any information the 30(b)(6) witnesses did not testify to.  For example, Nicole Taylor testified regarding Topic 4 of Doc. 78; Topic 16 of Doc. 78; Topic 1 of Doc. 81; Topic 3 of Doc. 81; Topic 4 of Doc. 81; Topic 5 of Doc. 81; Topic 7 at Doc. 81, Topic 8 at Doc. 81; and Topic 16 of Doc. 81.  And Art Gross testified regarding Topic 18 of Doc. 78; Topic 16 of Doc. 78;

---

[17] Many of the Topics sought information specifically from Wexford or encompassed information more appropriately sought from Wexford or Corizon.  While Defendants understand they are obligated to educate witnesses on the topics, they are not required to educate a witness regarding information more appropriately sought from a third-party.  *See Gossar v. Soo Line R.R. Co.*, 2009 WL 3570335, at *3, 2009 U.S. Dist. LEXIS 100931, *16-17 (S.D. Ind. Oct. 27, 2009).  Doing so would elicit hearsay answers from ADC witnesses which Plaintiffs would in turn use to bind the department.  Indeed, Plaintiffs served multiple 30(b)(6) notices on Wexford and Corizon and can or should have obtained answers to these topics areas through those depositions.

[18] Plaintiffs are conducting two 1.5-day expert tours of ADC facilities in October.

1   Topic 4 of Doc. 78.[19]  All of these topics are topics Plaintiffs complain they still need

2   information regarding.  Moreover, Plaintiffs have scheduled the depositions of Charles

3   Ryan, Richard Pratt (Program Evaluation Administrator, Quality/Clinical), and Martin

4   Winland (Pharmacy Monitor) and will likely obtain even more information on the Topics.

5          Defendants believe the last minute attempts to gather information is indicative of

6   Plaintiffs' mismanagement of discovery and yet another excuse to seek another extension

7   of fact discovery.  The Court should not permit this.  Plaintiffs' decision to wait until a

8   week before the deposition cut-off date to notice these depositions is a self-inflicted

9   wound.

10                                **CONCLUSION**

11          The parties certify that they have met and conferred on these issues and

12   respectfully request expedited consideration by the Court given the September 20, 2013

13   deadline for fact depositions. Defendants believe that the resolution of these issues

14   directly affect the following upcoming depositions[20]:

15          Anthony Medel, ASPC-Yuma Contract Monitor: September 17, 2013
       John Mitchell, ASPC-Winslow Contract Monitor: September 18, 2013
16       Terry Allred, ASPC-Lewis Contract Monitor: September 18, 2013

17   _____

18          [19] This is not an exhaustive list as Plaintiffs received information on the topics
       they complain of through other witness testimony, documents produced by Defendants,
       and through their lengthy expert tours.
19          [20] Plaintiffs take the position that to the extent Defendants assert that this dispute
       covers the upcoming depositions of third parties Corizon and Wexford, Defendants lack
20   standing to make such an argument.  Furthermore, Corizon is based in the Middle District
       of Tennessee and Wexford is based in the Western District of Pennsylvania, and the
21   30(b)(6) subpoenas were issued through those district courts.  *See Precourt v. Fairbank
       Reconstruction Corp.*, 10-CV-337-LM, 2012 WL 707083, at *3 (D.N.H. Mar. 5, 2012)
22   ("Fairbank does not explain how: (1) it has standing to object to the deposition of a third-
       party witness, which is Hoffman's current status since Fairbank withdrew him as an
23   expert; or (2) this court has any authority to block GOPAC's deposition of a third-party
       witness who resides outside the court's subpoena power."); *Stinnett v. Brooks Kushman,
24   P.C.*, 10-CV-15043, 2011 WL 2746560, at *2 (E.D. Mich. July 13, 2011) ("With respect
       to the third-party depositions, the Court is going to deny the motions to quash, because a
25   party doesn't have standing to quash the depositions of a non-party absent the claim of
       privilege or personal right, and I don't believe that those exceptions apply here.")
26   (quotations omitted); *Colombini v. Members of Bd. of Directors of Empire Coll. Sch. of
       Law*, C9704500CRB, 2001 WL 1006785, at *11 (N.D. Cal. Aug. 17, 2001) *aff'd sub nom.
27   Colombini v. Members of Bd. of Directors*, 61 F. App'x 387 (9th Cir. 2003) ("the plaintiff
       had no standing even to object to the taking of that deposition since it involved a third
28   party").

1   Sam Tardibuono, ASPC-Douglas Contract Monitor: September 19, 2013
    Mark Haldane, ASPC-Perryville Contract Monitor: September 19, 2013
2   Rule 30(b)(6), Corizon: September 19, 2013
    Jen Mielke-Fontaine, ASPC-Florence Contract Monitor: September 20, 2013
3   Yvonne Maese, ASPC-Eyman Contract Monitor: September 20, 2013
    Rule 30(b)(6), Corizon: September 20, 2013
4   Continuing Rule 30(b)(6), ADC: September 23, 2013
    Continuing Rule 30(b)(6), ADC: September 24, 2013
5   Continuing Rule 30(b)(6), ADC: September 25, 2013

6   Dated:  September 13, 2013

7   **PRISON LAW OFFICE**                    **STRUCK WIENEKE, & LOVE,
                                             P.L.C.**
8
9   By  _s/ Corene Kendrick_
        Donald Specter (Cal. 83925)*        By:  _s/ Nicholas D. Acedo_
        Alison Hardy (Cal. 135966)*              Daniel P. Struck
10      Sara Norman (Cal. 189536)*               Kathleen L. Wieneke
        Corene Kendrick (Cal. 226642)*           Timothy J. Bojanowski
11      Warren E. George (Cal. 53588)*           Rachel Love
        1917 Fifth Street                        Nicholas D. Acedo
12      Berkeley, California 94710               Courtney R. Cloman
        Telephone:  (510) 280-2621               Ashlee B. Fletcher
13      Email:    dspecter@prisonlaw.com         Anne Orcutt
                  ahardy@prisonlaw.com           3100 West Ray Road, Suite 300
14                snorman@prisonlaw.com          Chandler, Arizona 85226
                  ckendrick@prisonlaw.com
15                wgeorge@prisonlaw.com

16      *Admitted *pro hac vice*

17      Daniel Pochoda (Bar No. 021979)     Arizona Attorney General Thomas C.
        Kelly J. Flood (Bar No. 019772)     Home
18      James Duff Lyall (Bar No. 330045)*  Office of the Attorney General
        **ACLU FOUNDATION OF**                   Michael E. Gottfried
19      **ARIZONA**                              Assistant Attorney General
        3707 North 7th Street, Suite 235         1275 W. Washington Street
20      Phoenix, Arizona 85013                   Phoenix, Arizona 85007-2926
        Telephone:  (602) 650-1854
21      Email:    dpochoda@acluaz.org
                  kflood@acluaz.org          *Attorneys for Defendants*
22                jlyall@acluaz.org

23      *Admitted pursuant to Ariz. Sup. Ct.
        R. 38(f)
24

25

26

27

28

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:      dfathi@npp-aclu.org
            afettig@npp-aclu.org
            aquereshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:      dbarr@perkinscoie.com
            agerlicher@perkinscoie.com
            keidenbach@perkinscoie.com
            jhgray@perkinscoie.com
            mdumee@perkinscoie.com

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:      cnmitchell@jonesday.com
            dkiernan@jonesday.com
            scalderon@jonesday.com
            srauh@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email:    jlwilkes@jonesday.com
            tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone: (212) 326-3498
Email:    kmamedova@jonesday.com
            jkmessina@jonesday.com

*Admitted *pro hac vice*

Kevin Brantley (Cal. 251886)*
**JONES DAY**
3161 Michelson Drive, Suite 800
Irvine, California 92612
Telephone: (949) 851-3939
Email:    kcbrantley@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Dustin Brislan; Sonia
Rodriguez; Christina Verduzco; Jackie
Thomas; Jeremy Smith; Robert Gamez;
Maryanne Chisholm; Desiree Licci; Joseph
Hefner; Joshua Polson; and Charlotte
Wells, on behalf of themselves and all others
similarly situated*

1    **ARIZONA CENTER FOR DISABILITY LAW**

2

3    By:    s/ Jennifer Alewelt

4           Jennifer Alewelt (Bar No. 027366)
            Asim Varma (Bar No. 027927)

5           Sarah Kader (Bar No. 027147)
            5025 East Washington Street, Suite 202

6           Phoenix, Arizona 85034
            Telephone:  (602) 274-6287

7           Email:    jalewelt@azdisabilitylaw.org
                      avarma@azdisabilitylaw.org

8                     skader@azdisabilitylaw.org

9           J.J. Rico (Bar No. 021292)
            Cathleen M. Dooley (Bar No. 022420)

10          **ARIZONA CENTER FOR DISABILITY LAW**

11          100 N. Stone Avenue, Suite 305
            Tucson, Arizona 85701

12          Telephone:  (520) 327-9547
            Email:    jrico@azdisabilitylaw.org

13                    cdooley@azdisabilitylaw.org

14   *Attorneys for Arizona Center for Disability Law*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that on September 13, 2013, I electronically transmitted the above

3

document to the Clerk's Office using the CM/ECF System for filing.

4

5

<u>    s/ D. Freouf                      </u>

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28