1  Daniel Pochoda (Bar No. 021979)
2  Kelly J. Flood (Bar No. 019772)
   James Duff Lyall (Bar No. 330045)*
   **ACLU FOUNDATION OF ARIZONA**
3  3707 North 7th Street, Suite 235
   Phoenix, Arizona 85013
4  Telephone: (602) 650-1854
   Email: dpochoda@acluaz.org
5         kflood@acluaz.org
          jlyall@acluaz.org
6  *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7  *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin Brislan,*
   *Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith,*
8  *Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner,*
   *Joshua Polson, and Charlotte Wells, on behalf of themselves and all*
9  *others similarly situated*

10 **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

11 Jennifer Alewelt (Bar No. 027366)
   Asim Varma (Bar No. 027927)
   Sarah Kader (Bar No. 027147)
12 **ARIZONA CENTER FOR DISABILITY LAW**
   5025 East Washington Street, Suite 202
13 Phoenix, Arizona 85034
   Telephone: (602) 274-6287
14 Email: jalewelt@azdisabilitylaw.org
          avarma@azdisabilitylaw.org
15        skader@azdisabilitylaw.org

16 *Attorneys for Plaintiff Arizona Center for Disability Law*

17 **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

                    UNITED STATES DISTRICT COURT
18
                         DISTRICT OF ARIZONA
19

20 | Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-NVW (MEA) |

21
22
                                              **NINTH JOINT NOTICE OF**
                                              **DISCOVERY DISPUTE**
23                    Plaintiffs,
                                              **(EXPEDITED RULING**
24           v.                               **REQUESTED)**

25 Charles Ryan, Director, Arizona Department of
   Corrections; and Richard Pratt, Interim Division
26 Director, Division of Health Services, Arizona
   Department of Corrections, in their official
27 capacities,

                    Defendants.
28

**DISPUTED ISSUE**

Plaintiffs' Stated Issue: Whether Defendants may refuse to answer discovery requests pertaining to the risk of heat injury and death to ADC prisoners taking psychotropic medications, when one of the class claims certified by the Court is Defendants' "Failure to provide mentally ill prisoners medically necessary mental health treatment (i.e. psychotropic medication, therapy, and inpatient treatment)."

Defendants' Stated Issue:  Are Defendants required to answer Interrogatory No. 5 in Plaintiff Sonia Rodriguez's First Set of Interrogatories to Defendants, which requests temperature readings at every ADC facility, when the Court expressly disclaimed certification of the alleged practice of failing to provide temperatures below 85° Fahrenheit in units that house inmates taking psychotropic medication?

**PLAINTIFFS' POSITION**

As this Court has recognized, "[a]ir temperatures in excess of 85° F. greatly increase the risk of heatstroke and other heat-related illnesses for [prisoners] who are taking psychotropic medications."  *Graves v. Arpaio*, 2008 WL 4699770, *19 (D. Ariz. 2008), *aff'd*, 623 F.3d 1043 (9th Cir. 2010).  In *Graves*, this Court concluded that the failure of jail officials to ensure that prisoners taking psychotropic medications were housed in "temperatures that provide healthful living conditions" violated the Constitution, and ordered that "Defendants shall provide pretrial detainees who are taking prescribed psychotropic medications with housing in which the temperature does not exceed 85° F."  *Graves*, 2008 WL 4699770, at *20.

Plaintiffs in this case propounded an interrogatory asking Defendants to provide the daily maximum temperature and humidity readings in ADC housing units and other areas to which prisoners have access for the summer months of 2012 and 2013.  Defendants objected and refused to provide any response.  [Fathi Decl., Ex. 1, at 3-4]  Plaintiffs sent a letter narrowing the request to cover only days on which the maximum indoor temperature was 85 degrees Fahrenheit or above, *id.*, Ex. 2, but Defendants still refuse to provide any answer, *id.*, Ex. 3.

1

1    Defendants object that this request is "not likely to lead to the discovery of
2  admissible evidence." This objection misstates the legal standard for discovery, and in
3  any event is meritless. Plaintiffs' Complaint clearly alleges that "prisoners who are on
4  psychotropic medications that increase heat sensitivity are exposed to levels of heat that
5  pose potentially lethal risks." (Doc. 1, ¶ 77) Plaintiff Maryanne Chisholm stated in her
6  declaration that "Housing units are not air conditioned and in the summer months
7  temperatures in the cells are so high that I experience excessive sweating, dizziness,
8  exhaustion, because my psychiatric medications make me more sensitive to the heat."
9  (Doc. 240-1, Ex. H, ¶ 10) Two of the named Plaintiffs discussed in their depositions the
10  harmful interaction of their psychotropic medications with high temperatures. [Fathi
11  Decl., Ex. 4 (Brislan); *id*, Ex. 5 (Chisholm)] Information on heat and humidity in ADC
12  prisons is clearly "relevant to [plaintiffs'] claim," Fed. R. Civ. P. 26(b)(1), and Defendants
13  should be required to answer this interrogatory.

14    Defendants also object that this interrogatory "is . . . beyond the scope of the class
15  claims that have been certified by the court." This is both wrong and irrelevant. One of
16  the claims certified by this Court is "Failure to provide mentally ill prisoners medically
17  necessary mental health treatment (i.e. psychotropic medication, therapy, and inpatient
18  treatment)." (Doc. 372 at 22) In his declaration filed herewith, board-certified
19  psychiatrist Pablo Stewart, M.D., explains the mechanisms by which psychotropic
20  medications increase the risk of heat injury or death, and explains that persons taking such
21  medications "should be housed in areas where the ambient temperature does not exceed
22  85 degrees Fahrenheit." [Declaration of Pablo Stewart, M.D., ¶¶ 5-6] Dr. Stewart
23  concludes that "protection from heat injury is an essential element of the proper use of
24  psychotropic medications to treat mental illness." [*Id.*, ¶ 5] Accordingly, Plaintiffs'
25  request for heat and humidity information goes to the heart of whether Defendants are
26  "Fail[ing] to provide mentally ill prisoners medically necessary mental health treatment,"
27  including "psychotropic medication."

28

1    Even if this discovery request did go beyond the class claims certified by the Court

2    (and it does not), individual Plaintiffs who are taking psychotropic medications and face a

3    risk of heat injury or death would be entitled to discovery of this information.  [*See Fathi*

4    *Decl.*, Ex. 6, at 11:23-24 (the Court states at July 20, 2012 hearing that "it's pretty much

5    the same injunction" with or without class certification)].  Moreover, the Arizona Center

6    for Disability Law ("ACDL"), the state of Arizona's authorized protection and advocacy

7    agency, is a Plaintiff in this action, asserting the rights of ADC prisoners who are

8    "individuals with mental illness."  *See* Complaint, Doc. 1, ¶¶ 20, 146; *see also* 42 U.S.C.

9    § 10805(a)(1) (empowering protection and advocacy agencies to "pursue administrative,

10   legal, and other appropriate remedies to ensure the protection of individuals with mental

11   illness"); *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1116 (9th Cir. 2003)

12   (affirming power of protection and advocacy agency to sue on behalf of mentally

13   incapacitated criminal defendants).  ACDL, like any other litigant, is entitled to discovery

14   of material relevant to its claims.  *See Monaco v. Stone*, 2002 WL 32984617 (E.D.N.Y.

15   2002), at *23 (affirming right of protection and advocacy agency to discovery).

16   Plaintiffs asked that their experts be allowed to bring a thermometer on their tours;

17   this request was denied without explanation.  [Fathi Decl., Ex. 7]  Despite Defendants'

18   noncooperation, Plaintiffs have found documentation in Defendants' own records that cell

19   temperatures sometimes exceed the 85 degree danger threshold.  [*See* Declaration of Brie

20   Williams, M.D., M.S., ¶ 3 (citing June 12, 2013 email in prisoner medical chart stating

21   that cell temperature was 89 degrees)]  Having denied Plaintiffs the ability to gather

22   temperature data themselves, Defendants should be required to produce the temperature

23   readings they take in the normal course of business.  [*See* Fathi Decl., Ex. 8, at 2 (ASPC-

24   Perryville Weekly Executive Team Meeting minutes, October 23, 2012, citing

25   temperature checks and database)]

26

27

28

The interaction of heat with psychotropic medications is an "extremely serious risk factor" for heat-related illness.  [Stewart Decl., ¶ 5][1]  This is particularly so in light of Defendants' admission that ADC "has no policy specifying temperature limits for areas housing" prisoners taking psychotropic medications.  [Fathi Decl., Ex. 10 (Request For Admission No. 33)]  *Compare Graves*, 2008 WL 4699770, at *19 (finding that failure to have such a policy violates the Constitution).  "[A]ccurate temperature readings from ADC prisons are important for assessing the risk of heat injury and death to prisoners who are taking psychotropic medications."  [Stewart Decl., ¶ 8]  Defendants should be ordered to provide this information.

Defendants' contention that the Court "did not certify the temperature claim" misstates the issue.  Plaintiffs do not assert a separate "temperature claim."[2]  Plaintiffs assert, and the Court certified, the claim that Defendants "Fail[] to provide mentally ill prisoners medically necessary mental health treatment (i.e. psychotropic medication, therapy, and inpatient treatment)."  (Doc. 372 at 22).  Defendants make much of the fact that while it certified this claim, the Court did not specifically cite Paragraph 10 of Maryanne Chisholm's declaration.  But they provide no legal or other authority that these illustrative citations to the plaintiffs' declarations limit the plain language of the class claim certified by the Court.  That claim specifically includes "mental health treatment" with "psychotropic medication," and Plaintiffs have presented unrebutted expert evidence that "protection from heat injury is an essential element of the proper use of psychotropic medications to treat mental illness."  [Stewart dec., ¶ 5].  The discovery sought concerns a potentially lethal risk of harm to prisoners taking psychotropic medications, and it is squarely within this class claim.[3]

---

[1]  *See also* Fathi Decl., Ex. 9 (deposition testimony of ADC Mental Health Services Monitor Ben Shaw, Ph.D., agreeing that heat can have "quite serious health ramifications" for persons taking psychotropic medications).

[2]  The Court previously chastised Defendants for attempting to subdivide Plaintiffs' claims to an absurd degree when it denied their motion to dismiss.  See Doc. 175 at 4.

[3]  Defendants' claim that the Court "expressly disclaimed certification of the

**DEFENDANTS' POSITION**

On July 9, 2013, Plaintiff Sonia Rodriguez served on Defendants a First Set of Interrogatories. (Ex. A.) Interrogatory No. 5 requests:

> For all ADC prison complex buildings in which PRISONERS[4] are permitted, including without limitation all housing, isolation, and medical unit buildings, IDENTIFY the following:
>
> (a)   The maximum indoor temperature for each day from June 1, 2012 through August 31, 2012, and from June 1, 2013 through the date of your response, including July 2013;
>
> (b)   The relative humidity for each day from June 1, 2012 through August 31, 2012, and from June 1, 2013 through the date of your response, including July 2013;
>
> (c)   ALL DOCUMENTS relating to, supporting or reflecting the data that was the basis for your responses to (a)-(b);
>
> (d)   ALL POLICIES AND PROCEDURES REGARDING the collection of the INFORMATION requested in (a)-(b);
>
> (e)   All methods used by ADC, whether formal or informal, to measure the indoor temperatures.

Defendants' objected to this request on August 12, 2013 because the request was "compound, overbroad, unduly burdensome, and not likely to lead to the discovery of admissible evidence. It is also beyond the scope of the claims that have been certified by the court." (Ex. 1.)

---

alleged practice of failing to provide temperatures below 85° Fahrenheit in units that house inmates taking psychotropic medication" is simply incorrect. At the August 7, 2013 hearing, the Court initially expressed concern about discovery on "overheating." Plaintiffs' counsel then explained that the issue was not overheating generally, but rather "protocols of appropriate conditions for someone on [psychotropic] medications. ... And that was something that certainly the clinician identified as an issue as part of the medication component is ensuring those individuals on those certain medications have additional protections or information about the dangers of certain heat conditions in relationship to taking that medication." The Court replied, "I know. I granted relief on that basis in a different case," an apparent reference to *Graves v. Arpaio.* Ex. B at 54-55.

[4]   PRISONERS was defined as "a person incarcerated by the ADC."

This objection was based, in part, on the Court's statements just several days earlier at the August 7, 2013 hearing on the parties' Proposed Discovery Schedules, in which the Court addressed "whether the current discovery being undertaken greatly exceeds what is necessary or appropriate." (Dkt. # 555.)  Plaintiffs' Proposed Discovery Schedule stated that they were seeking "information on temperature in housing units" (Dkt. # 559 at 7) and "discovery on the heat and humidity measurements taken by defendants in ADC housing units, as well as the measures taken, if any, to protect vulnerable prisoners from heat injury and death" (Dkt. # 560, ¶ 11).  This requested discovery was addressed and rejected at the hearing:

> THE COURT: … It does appear to me that the plaintiffs are seeking and giving discovery information that goes beyond even the rather long list of classes, subclasses that I certified. They are just looking for anything they can find, some of which may well be legitimate.
>
> I read the stuff about overheating.  That's not in any of my -- that may fall below constitutional minimums but it's not what I certified.
>
> Ms. Gerlicher: It goes to the conditions of isolation, You Honor.
>
> THE COURT:  Well, perhaps. Was that where -- was that in some of the isolation units?
>
> MS. GERLICHER:  I believe it may have been discovered on Pablo Stewart's tour, which would have been a mental health tour. And I know it's an issue with mental health medications as well.
>
> THE COURT:   I didn't think that was within what we certified, that is, the mental health medications may be broadly viewed.

(Exhibit B at  53–54.)  The Court reiterated that it had certified "a list [of practices] that was pretty generous.  But there's a list. It isn't anything you couldn't think of."  (Id. at 55.)

Indeed, the Court certified ten health care practices, and each practice was supported by a citation to a named Plaintiffs' declaration "detailing their exposure to them." (Dkt. # 372 at 15–17.)  One of the certified practices was:

9.    Failure to provide mentally ill prisoners medically necessary mental health treatment (i.e. psychotropic medication, therapy, and inpatient treatment) (Brislan Decl. ¶¶ 4–10; Gamez Decl. ¶¶ 3–23; Chisholm ¶¶ 3–9; Rodriguez ¶¶ 7–8; Swartz ¶¶ 10–13; Thomas Decl. ¶¶ 4–9; Polson Decl. ¶¶ 14–16; Verduzco ¶¶ 12–16).

(Id. at 17.)  None of the cited declaration paragraphs alleged anything about the effects of temperatures on inmates taking psychotropic medications.

Defendants objected to Interrogatory No. 4 primarily because it is beyond the scope of the class claims certified by the Court.  This Court said at the August 7 hearing that it did not certify the temperature claim (and in fact chastised Plaintiffs for seeking discovery on it), and a review of the class certification order supports that it did not.  Plaintiffs point to the fact that Plaintiff Maryanne Chisholm alleged in her Declaration in support of the Motion for Class Certification that high temperatures cause her to experience several side effects.  That avowal, however, was made in paragraph 10 of her Declaration.  (Dkt. # 240–1, Ex. H, ¶ 10.)  The Court's order certifying the alleged practice of failing "to provide mentally ill prisoners medically necessary mental health treatment" was not extended to include the allegation in paragraph 10 of Chisholm's Declaration. (Id.)  Rather, the Court specifically excluded it ("Chisholm ¶¶ 3–9").  Id.  Defendants cannot be faulted for taking the position they did.[5]  And the Court should not modify the class certification order at this point in the litigation (after the close of fact discovery and while a challenge to the existing class certification order is pending on appeal)[6] to include it.[7]

---

[5] Plaintiffs provide a declaration from their mental health expert, Dr. Pablo Stewart, avowing to the effects of temperatures on inmates taking psychotropic medications. But Dr. Stewart provided a similar opinion at the class-certification stage (Dkt. # 240–1, Ex. B, ¶¶ 34–36), and the Court still did not certify the alleged practice.

[6] Oral argument has been scheduled in the appeal for November 6, 2013.

[7] Defendants objected to the Interrogatory on August 12 (Ex. 1), and the parties discussed the issue at a meet and confer on August 30 (Ex. 2). Yet, Plaintiffs waited until now to raise the issue with the Court.  Furthermore, in addition to the obvious safety risks, Defendants would not allow Plaintiffs' counsel to bring thermometers into ADC facilities during their expert tours because the court did not certify the temperature issue.

1    Plaintiffs alternatively argue that they are entitled to the information to support
2  their individual claims and the claims of Plaintiff ACDL.  There are several problems with
3  this argument.  First, the discovery request was made *only* by Plaintiff Sonia Rodriguez,
4  and she has never alleged a temperature issue.  The request was not made by the ACDL or
5  Plaintiff Chisholm.  Thus, only Rodriguez has grounds to demand a response, but since
6  she has never made a temperature allegation the information is not relevant to her
7  individual claim. Moreover, even if she had made a temperature allegation or the
8  information was relevant to her claim, she would be entitled only to the temperature
9  readings at (1) ASPC-Perryville (the only ADC facility that houses female inmates), (2) in
10 the Unit she lived in (3) during the requested times.  Plaintiffs' Interrogatory, however, is
11 not so limited; they are requesting temperature readings for "all ADC prison complex
12 buildings."   Defendants' objection to Rodriguez's overbroad discovery request is
13 substantially justified.[8]   They should not be compelled to answer either the original or
14 modified Interrogatory No. 5.
15 . . .
16
17
18
19
20
21
22
23
24
25

---

26    [8] Plaintiffs claim that they narrowed their request "to cover only days on which the
   maximum indoor temperature was 85 degrees Fahrenheit or above," but that request is
27 actually more burdensome than the original request, as Defendants would be required to
   sort through temperature readings and determine which ones exceeded Plaintiffs'
28 threshold.  It also did not limit the request to ASPC-Perryville.

1  September 24, 2013.

2  **ACLU NATIONAL PRISON PROJECT**          **STRUCK WIENEKE & LOVE, P.L.C.**

3

4  By:_*s/ David C. Fathi*_____        By _*s/Nicholas D. Acedo*_ (with permission)
      David C. Fathi (Wash. 24893)*               Daniel P. Struck
      Amy Fettig (D.C. 484883)**                  Kathleen L. Wieneke
5     Ajmel Quereshi (D.C. 1012205)**             Rachel Love
      915 15th Street N.W., 7th Floor             Timothy J. Bojanowski
6     Washington, D.C. 20005                      Nicholas D. Acedo
      Telephone:  (202) 548-6603                  Courtney R. Cloman
7     Email:    dfathi@npp-aclu.org               Ashlee B. Fletcher
                afettig@npp-aclu.org              Anne M. Orcutt
8               aquereshi@npp-aclu.org            3100 West Ray Road, Suite 300
                                                  Chandler, Arizona 85226
9     *Admitted *pro hac vice*.  Not admitted
       in DC; practice limited to federal         Arizona Attorney General Thomas C.
10     courts.                                     Horne
      **Admitted *pro hac vice*                    Office of the Attorney General
11                                                 Michael E. Gottfried
                                                   Lucy M. Rand
12                                                 Assistant Attorneys General
                                                   1275 W. Washington Street
13                                                 Phoenix, Arizona 85007-2926

14                                                 *Attorneys for Defendants*

15    Daniel Pochoda (Bar No. 021979)
      Kelly J. Flood (Bar No. 019772)
16    James Duff Lyall (Bar No. 330045)*
      **ACLU FOUNDATION OF**
17    **ARIZONA**
      3707 North 7th Street, Suite 235
18    Phoenix, Arizona 85013
      Telephone:  (602) 650-1854
19    Email:    dpochoda@acluaz.org
                kflood@acluaz.org
20              jlyall@acluaz.org

21    *Admitted pursuant to Ariz. Sup. Ct.
      R. 38(f)
22

23

24

25

26

27

28

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Warren E. George (Cal. 53588)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
          ahardy@prisonlaw.com
          snorman@prisonlaw.com
          ckendrick@prisonlaw.com
          wgeorge@prisonlaw.com

*Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
          agerlicher@perkinscoie.com
          keidenbach@perkinscoie.com
          jhgray@perkinscoie.com
          mdumee@perkinscoie.com

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:    cnmitchell@jonesday.com
          dkiernan@jonesday.com
          scalderon@jonesday.com
          srauh@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:     jlwilkes@jonesday.com
              tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:     kmamedova@jonesday.com
              jkmessina@jonesday.com

*Admitted *pro hac vice*

Kevin Brantley (Cal. 251886)*
**JONES DAY**
3161 Michelson Drive, Suite 800
Irvine, California 92612
Telephone:  (949) 851-3939
Email:     kcbrantley@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Dustin Brislan; Sonia
Rodriguez; Christina Verduzco; Jackie
Thomas; Jeremy Smith; Robert Gamez;
Maryanne Chisholm; Desiree Licci; Joseph
Hefner; Joshua Polson; and Charlotte
Wells, on behalf of themselves and all others
similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By:   *s/ Jennifer Alewelt*
_____
       Jennifer Alewelt (Bar No. 027366)
       Asim Varma (Bar No. 027927)
       Sarah Kader (Bar No. 027147)
       5025 East Washington Street, Suite 202
       Phoenix, Arizona 85034
       Telephone:  (602) 274-6287
       Email:    jalewelt@azdisabilitylaw.org
                  avarma@azdisabilitylaw.org
                  skader@azdisabilitylaw.org

       J.J. Rico (Bar No. 021292)
       Cathleen M. Dooley (Bar No. 022420)
       **ARIZONA CENTER FOR DISABILITY LAW**
       100 N. Stone Avenue, Suite 305
       Tucson, Arizona 85701
       Telephone:  (520) 327-9547
       Email:    jrico@azdisabilitylaw.org
                  cdooley@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATION OF ATTEMPT TO RESOLVE THE DISCOVERY DISPUTE**

Plaintiffs and Defendants certify that we have made sincere efforts as required by LRCiv. 7.2(j) to personally consult and resolve the disputed matter described herein.  The parties have discussed the issue numerous times by telephone, email, and written correspondence.  The parties have reached an impasse.

*s/ David C. Fathi*

*s/Nicholas D. Acedo* (with permission)

1          **<u>CERTIFICATE OF SERVICE</u>**

2          I hereby certify that on September 24, 2013, I electronically transmitted the above

3   document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4   Notice of Electronic Filing to the following CM/ECF registrants:

5

6                              Michael E. Gottfried
                              Katherine E. Watanabe
7                                Lucy M. Rand
                        Assistant Arizona Attorneys General
8                          Michael.Gottfried@azag.gov
                           Katherine.Watanabe@azag.gov
9                              Lucy.Rand@azag.gov

10                              Daniel P. Struck
                             Kathleen L. Wieneke
11                           Timothy J. Bojanowski
                                 Rachel Love
12                            Nicholas D. Acedo
                             Courtney R. Cloman
13                             Ashlee B. Fletcher
                               Anne M. Orcutt
14                    STRUCK WIENEKE, & LOVE, P.L.C.
                           dstruck@swlfirm.com
15                          kwieneke@swlfirm.com
                          tbojanowski@swlfirm.com
16                            rlove@swlfirm.com
                            nacedo@swlfirm.com
17                           ccloman@swlfirm.com
                            afletcher@swlfirm.com
18                           aorcutt@swlfirm.com

19                          *Attorneys for Defendants*

20

21                                          s/ S. Neilson
    78204-0001/LEGAL27881875.2

22

23

24

25

26

27

28

                                      -14-