**Index to Prisoner Plaintiffs' Exhibits to Tenth Joint Notice of Discovery Dispute**

Exhibit 1:   Plaintiff Victor Antonio Parsons' First Set of Interrogatories

Exhibit 2:   Plaintiff Victor Antonio Parsons' First Set of Requests for Production of Documents to Defendants

Exhibit 3:   Plaintiff Victor Antonio Parsons' Second Set of Requests for Production of Documents to Defendants

Exhibit 4:   Email dated September 12, 2013 from Defendants' Counsel to Plaintiff's Counsel

# EXHIBIT 1

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: dpochoda@acluaaz.org;
        kflood@acluaz.org
        jlyall@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Victor Parsons, Shawn Jensen,
Stephen Swartz, Dustin Brislan, Sonia Rodriquez,
Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert
Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner,
Joshua Polson, and Charlotte Wells, on behalf of
themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON
  SIGNATURE PAGE]**

Jennifer Alewelt (Bar No. 027366)
Ruth Szanto (Bar No. 029073)
Asim Varma (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: jalewelt@azdisabilitylaw.org
        rszanto@azdisabilitylaw.org
        avarma@azdisabilitylaw.org
*Attorneys for Plaintiff Arizona Center of Disability Law*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriquez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-NVW (MEA) <br><br> **PLAINTIFF VICTOR ANTONIO PARSONS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS** |

1

2    Pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiff <u>Victor</u>

3  <u>Antonio Parsons</u>, by and through undersigned counsel, requests that defendants respond,

4  within 30 days and produce the following documents for inspection and copying at ACLU

5  Foundation of Arizona, 3707 N. 7th Street, Suite 235, Phoenix, AZ 85013.

6                                          **DEFINITIONS**

7        For purposes of these requests, the following definitions shall apply:

8        1.    "ADC" means the Arizona Department of Corrections, including all its

9  subdivisions, agents, employees, contractors, and attorneys.

10       2.    "ADC STAFF" means all persons employed by ADC, including

11 "CORRECTIONAL STAFF" and "HEALTH CARE STAFF."

12       3.    "COMMUNICATIONS" means any transmittal of information from one

13 person or entity to another by any means, including letters, correspondence, notes,

14 memoranda, records,  reports, papers, facsimiles, electronic mail (whether to, from, copied

15 or blind copied), electronic mail generated from a hand held personal device including a

16 Blackberry or iPhone, instant messaging, electronic mail generated from business or

17 personal email accounts, internet relay chat, news group, group or collaboration servers,

18 electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings,

19 audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes,

20 teleconference, collaboration servers (including share point servers), web-based or

21 software virtual meetings including Web-X and any other meeting software and share

22 point servers, and oral contact such as face-to-face discussions or meetings, telephone

23 conversations, and voice mail messages.

24       4.    "COMPLAINTS" means any DOCUMENTS, formal or informal,

25 REGARDING specific or general problems, issues, deficiencies, unanswered questions,

26 challenges, shortcomings, disagreements, or requests brought to the attention of the ADC

27 or any ADC STAFF.

28       5.    "CONDITIONS OF CONFINEMENT" means all circumstances

REGARDING the state of being imprisoned.

6.     "CONTRACTOR" means "LOCUM TENENS CONTRACTOR" and "SPECIALTY CONTRACTOR."

7.     "CORRECTIONAL STAFF" means custody staff employed or paid by the ADC to serve in a security or operational capacity.

8.     "COST CONTAINMENT" means contemplated, discussed, or actual actions to restrict, reduce, contain, or limit costs or expenses by DEFENDANTS, the ADC or any personnel working in any capacity for the ADC or the Arizona State Government, including any agents of the foregoing.

9.     "DEATH RECORDS" means any DOCUMENT REGARDING the death of a PRISONER, including audits, REVIEWS, studies, interview notes, videos, audio-recordings, EXTERNAL INVESTIGATIONS or INTERNAL INVESTIGATIONS.

10.    "DESCRIBE" and "DESCRIPTION" means to provide all available INFORMATION.

11.    "DISCIPLINE" means any formal or informal discipline, punishment, reprimand, warning, or comment given to any person as a result of substandard or unacceptable conduct.

12.    "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and DESCRIPTION and every tangible thing that is or has been in the possession, custody, or control of DEFENDANTS and the ADC, to which they have access, or of which they have knowledge, including, but not limited to, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys, MINUTES, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and

regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device). "DOCUMENT" and "DOCUMENTS" includes, but is not limited to, all DOCUMENTS generated by or maintained in the Director's Project Tracking System, official ADC papers, and the ADC's intranet.

13.     "EMERGENCY HEALTH CARE SERVICES" means treatment or care to address a mental health, medical, or dental injury or illness that is acute, causes substantial pain, and/or and poses a substantial and immediate risk to the life or long term health of a person.

14.     "ENTRY-LEVEL PRACTITIONERS" means unlicensed persons who provide HEALTH CARE to PRISONERS at the ADC subordinate to MID-LEVEL PRACTITIONERS or HEALTH CARE CLINICIANS.

15.     "EXTERNAL INVESTIGATIONS" means investigations, REVIEWS, audits, or studies, whether formal or informal, conducted by a person who is not employed by the ADC or an entity that is not the ADC.  It is immaterial to the definition whether the EXTERNAL INVESTIGATION was conducted at the ADC's behest or direction.

16.     "GRIEVANCES" means COMPLAINTS or requests made by PRISONERS to the ADC, and the exhaustion of claims raised or stated therein.

17.     "HEALTH CARE" means the provision of care, including adequate diet, to address the mental health, medical, or dental needs of a PRISONER, whether those needs arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic or preventive purposes.

18.     "HEALTH CARE CLINICIANS" means persons independently licensed to provide HEALTH CARE to PRISONERS at the ADC facilities, including but not limited to M.D., D.O., D.D.S., and Ph.D. credentialed staff.

19.     "HEALTH CARE DIRECTIVES" means DOCUMENTS REGARDING advance medical care directives, living wills, personal directives, advance directives, or instructions of any kind in which individuals specify what actions should or should not be

taken for their HEALTH CARE in the event they are no longer able to make decisions due to illness, injury, or incapacity

20.   "HEALTH CARE SHORTAGES" means any deficiencies involving HEALTH CARE, including but not limited to a lack of or insufficient number of medicines, drugs, medical supplies, medical equipment, transportation, or HEALTH CARE STAFFING.

21.   "HEALTH CARE STAFF" means all staff employed or paid by the ADC, LOCUM TENENS CONTRACTORS, or SPECIALTY CONTRACTORS (other than CORRECTIONAL STAFF) who are responsible for providing HEALTH CARE to ADC PRISONERS, including but not limited to HEALTH CARE CLINICIANS, MID-LEVEL PRACTITIONERS, ENTRY-LEVEL PRACTITIONERS, PHARMACISTS, and administrative and support staff.

22.   "HEALTH CARE STAFFING" means the provision of HEALTH CARE STAFF to provide HEALTH CARE.

23.   "HEALTH GRIEVANCES" means requests for HEALTH CARE or COMPLAINTS REGARDING the need for, adequacy of, quality of, or timing of HEALTH CARE made by PRISONERS to the ADC, including but not limited to the submission of Health Needs Request ("HNR") forms and the exhaustion of claims stated therein.

24.   "HNR POLICIES AND PROCEDURES" means policies, procedures, or practices, whether written or established through custom or use, REGARDING HNR submissions by PRISONERS, including but not limited to the distribution, disposal, processing, rejection of, responses to, provision of HEALTH CARE pursuant to, and exhaustion of claims raised by such submissions.  This includes policies, procedures, or practices that are in draft form and have not been approved and/or implemented.

25.   "HOSPITALIZED PRISONER" means any PRISONER who is sent to a hospital or other off-site medical or mental health facility, or who is admitted to an on-site hospital, while in the custody of the ADC.

26.    "HOURS OF OPERATION" means the time periods during which a facility, unit, or other ADC facility housing PRISONERS is able to provide HEALTH CARE to PRISONERS by on-site HEALTH CARE STAFF.

27.    "IDENTIFY" and "IDENTIFICATION" with respect to (a) a PRISONER or former PRISONER, means to state the PRISONER'S full name, ADC number, date of birth, current or most recent mental health score (MH-1 through MH-5), medical score (M-1 through M-5), public risk score, institutional risk score, and current housing location (if still in ADC custody) or last known address and telephone number (if no longer in ADC custody); (b) a person other than a PRISONER or former PRISONER, means to state the person's full name and specify whether or not the person is or has been an ADC STAFF member, and if so, to state the staff member's position title, facility location, work schedule, responsibilities, date ADC employment began, date ADC employment terminated, dates of any changes in position titles or responsibilities, DESCRIPTIONS of any changes in position titles or responsibilities and, if the person is not currently employed by ADC, the person's last known address and telephone number; and (c) a third-party contractor or entity means to state the name of the contractor or entity, the type of entity (*e.g.*, corporation, partnership, etc.); its address and telephone number; and any persons YOU are aware of who acted on behalf of that contractor or entity with respect to the events at issue in the discovery request; (d) IDENTIFY in any other context means to provide as much INFORMATION REGARDING the thing to be identified as is in the possession of DEFENDANTS or the ADC.

28.    "INFORMATION" means any knowledge YOU have, any evidence of any type, any facts of which YOU are aware and any inferences or speculation of which YOU are aware, all regardless of the source.  When INFORMATION YOU provide is based solely on inference or speculation, specifically so state in YOUR response.  When providing INFORMATION, provide the names of involved individuals, actions relevant to the requested INFORMATION, dates and times when known, locations, and any other knowledge YOU have about the subject of the discovery request.  When asked to provide

INFORMATION about one or more individuals, IDENTIFY the individual or individuals and provide any other INFORMATION YOU have about such person or persons.

29.   "INTERNAL INVESTIGATION" means an investigation, REVIEW, audit, study, interview notes, videos, or audio recordings, whether formal or informal, conducted by the ADC.

30.   "ISOLATION" means confinement in a cell for 22 hours or more each day; confinement in Eyman-Special Management Unit ("SMU") 1, Eyman-Browning Unit, Florence-Central Unit, Florence-Kasson Unit, or Perryville-Lumley Special Management Area ("SMA"); or confinement in a Complex Detention Unit ("CDU").

31.   "JOB PERFORMANCE EVALUATION" means any evaluation, whether formal or informal, of the work of an ADC STAFF member or contractor performing services for the ADC.

32.   "LOCUM TENENS CONTRACTOR" means any person or entity contracting with ADC to provide HEALTH CARE to ADC PRISONERS.

33.   "MID-LEVEL PRACTITIONERS" means licensed professionals who provide HEALTH CARE to PRISONERS at the ADC under supervision by HEALTH CARE CLINICIANS.

34.   "MINUTES" means notes or any other recording reflecting the content of a meeting, whether written contemporaneously with or subsequent to the meeting.

35.   "ORGANIZATIONAL STRUCTURE" means the structure of who reports to whom within the ADC up to and including defendant Charles Ryan, including specifically all HEALTH CARE STAFF and each individual's job title and DESCRIPTION of duties.

36.   "OUTDOOR EXERCISE" means periods during which PRISONERS are permitted to exercise in the outdoors.

37.   "PHARMACIST" means a professional who practices pharmacy.

38.   "POLICIES AND PROCEDURES" means policies, procedures, criteria, or practices, whether written or established through custom or use, including but not limited

VICTOR ANTONIO PARSONS' FIRST SET
OF REQUESTS FOR PRODUCTION
2:12-CV-00601-NVW--MEA

to policy and procedure manuals, directors' orders, protocols, directives, flowcharts, institution post orders, and any other DOCUMENTS designed to direct the actions of ADC personnel, ADC contractors, and/or PRISONERS.

39. "PRISONER" means a person incarcerated by the ADC.

40. "QUALITY ASSURANCE" means any activities implemented for the purpose of examining, assessing, evaluating, investigating, analyzing, or identifying the quality of a product or service.

41. "REFERRAL" means a recommendation that a PRISONER obtain HEALTH CARE from HEALTH CARE STAFF at ADC or non ADC facilities, whether or not such HEALTH CARE is in fact ever provided.

42. "REFERRED CARE" means HEALTH CARE pursuant to a REFERRAL.

43. "REFERRED PRISONER" means a PRISONER who received a REFERRAL while in the legal custody of the ADC.

44. "REGARDING" or "REGARDED" to any given subject matter means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers to, relates to, responds to, states, summarizes, or is in any way relevant to the particular subject matter identified.

45. "RESPONSE DATE" means date upon which YOU respond to these discovery requests, or, if YOU amend or supplement YOUR response, the date of YOUR amendment or supplement.

46. "REVIEWS" means examinations, assessments, evaluations, or investigations performed by or at the direction of ADC STAFF or officials.

47. "SPECIALTY CONTRACTOR" means any person or entity contracting with the ADC to provide HEALTH CARE to PRISONERS who is not a LOCUM TENENS CONTRACTOR.

48.    "STAFFING SCHEDULE" means the days, hours, and/or shifts for which each member of the HEALTH CARE STAFF was scheduled to work, including overtime, on call and call-in coverage.

49.    "SUFFICIENT TO SHOW" means demonstrating or evidencing complete INFORMATION on the requested topic, without the need to produce every DOCUMENT REGARDING the topic.

50.    "YOU," "YOUR," "YOURSELF," and "DEFENDANTS" means defendants Charles Ryan and Richard Pratt, and their predecessors, successors, employees, subordinates, contractors, agents, and attorneys.

## INSTRUCTIONS

1.    YOU are required to furnish all DOCUMENTS in YOUR possession, custody, or control, including those DOCUMENTS that are in YOUR possession, custody, or control in the normal course of YOUR employment obligations, and those in the possession, custody or control of your (1) employer; (2) consultants; (3) attorneys; (4) representatives; (5) agents; or (6) any other person acting or purporting to act on YOUR behalf or at YOUR direction, whether doing so directly or at the direction of YOUR subordinates.  Possession, custody, or control includes DOCUMENTS stored in electronic form by third party service providers but accessible to the Defendant, including but not limited to email accounts, FTP servers, portable storage media such as USB drives, cloud storage services such as Dropbox or SharePoint , and online workspaces such as WebEx.

2.    All non-identical copies of every DOCUMENT whose production is sought shall be separately produced.

3.    Each request herein constitutes a request for DOCUMENTS in their entirety, with all enclosures and attachments, and without abbreviation, redaction, or expurgation.  DOCUMENTS attached to each other, including but not limited to, by staple, clip, tape, email attachment, or "Post-It" note, should not be separated, although any page on which a Post-It note covers or obscures text on the DOCUMENT should be

1

2  produced both with and without the Post-It note.  The production must also include, where

3  applicable, any index tabs, file dividers, designations, binder spine labels, or other similar

4  information as to the source and/or location of the DOCUMENTS.

5       4.     DEFENDANTS shall produce any and all drafts and copies of each

6  DOCUMENT that are responsive to any request, including but not limited to copies

7  containing handwritten notes, markings, stamps, or interlineations.  The author(s) of all

8  hand-written notes should be identified.

9       5.     YOU shall produce all responsive DOCUMENTS as they have been kept in

10  the ordinary course of business.

11       6.     Responsive DOCUMENTS that exist only in paper form shall be organized

12  as they have been kept in the ordinary course of business and shall be produced according

13  to the following protocol:

14           a.     Paper DOCUMENTS shall be scanned and produced in TIFF image

15           form at a resolution sufficient to enable the generation of searchable text

16           using Optical Character Recognition ("OCR").

17       7.     Responsive DOCUMENTS that exist in electronic form, even if such

18  DOCUMENTS also exist in paper form, shall be produced in electronic form according to

19  the following protocol:

20           a.     Electronic DOCUMENTS shall be produced electronically as single

21           page, uniquely and sequentially numbered Group IV TIFF image files of not

22           less than 300 dots per inch resolution, together with DOCUMENT level

23           load files wherein the full text was extracted directly from the native file

24           where possible.

25           b.     For files produced in TIFF image form, each page of a produced

26           DOCUMENT shall have a legible, unique production number electronically

27           "burned" onto the TIFF image in such a manner that information from the

28           source DOCUMENT is not obliterated, concealed, or interfered with,

           preferably in the lower right corner of the DOCUMENT.  The production

-9-

number shall contain at least six digits.  There shall be no other legend or stamp placed on the DOCUMENT image, unless a DOCUMENT qualifies for confidential treatment pursuant to the terms of any protective order in this matter, or if the DOCUMENT requires redaction.  In the case of confidential materials as defined by any protective order in this matter, any applicable designation may be "burned" onto the DOCUMENT's image at a location that does not obliterate or obscure any information from the source DOCUMENT, preferably in the lower left corner.

c.      Each DOCUMENT image file shall be named with the unique production number of the page of the DOCUMENT in question, followed by the extension ".tif".  File names should not be more than 20 characters long or contain spaces.

d.      For files produced in TIFF image format, each page of a DOCUMENT shall be electronically saved as an image file.  If a DOCUMENT is more than one page, the unitization of the DOCUMENT and any attachments and/or affixed notes shall be maintained as they existed in the original DOCUMENT.

e.      TIFF images shall be accompanied by a standard load file containing the metadata and other fields identified in Paragraph 7(j) of these Instructions, below.  The load file shall be produced in one of the following industry-standard formats:  (1) Concordance delimited file (".dat"); (2) comma-separated value file (".csv"); or (3) TAB delimited file.  TIFF images shall also be accompanied by either an Opticon delimited cross-reference file (".opt") or IPRO View LFP comma-delimited file showing DOCUMENT breaks and appropriate DOCUMENT unitization.

f.      In addition to TIFF images, each production of electronic DOCUMENTS shall include searchable text files corresponding to the TIFF images for each DOCUMENT.  The full text of each native electronic

-10-

DOCUMENT, excluding redacted DOCUMENTS, shall be extracted directly from the native file and produced in a DOCUMENT-level related text file (the "Extracted Text"). The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with the unique production number of the first page of the corresponding TIFF DOCUMENT followed by the extension ".txt".  YOU shall also perform OCR on certain types of non-text based static image ESI, such as native PDF image files, and produce the corresponding DOCUMENT-level related text files.  Searchable text files shall be generated from Extracted Text where available.

g.      DOCUMENTS shall be produced on optical media (CD or DVD) or external hard drives or similar, readily accessible electronic media (the "Production Media").  Each piece of Production Media shall IDENTIFY a production number corresponding to the party and production with which the DOCUMENTS on the Production Media are associated (e.g., "RYAN 001"), as well as the volume of the material in that production (e.g., "- 001", "-002").  For example, if the first production wave by YOU comprises DOCUMENT images on three hard drives, YOU shall label each hard drive in the following manner: "RYAN 001-001", "RYAN 001-002", and "RYAN 001-003."  The face of each piece of Production Media shall also IDENTIFY:  (1) the production date; and (2) the production number range of the materials contained on the Production Media.

h.      Presentation DOCUMENTS (such as Microsoft PowerPoint DOCUMENTS) shall be produced with one slide per page together with any "Speaker's Notes" or similar pages appended to, or otherwise associated with, each slide. Presentation DOCUMENTS shall also be produced according to all other applicable Instructions set forth in this set of requests.

i.      Unless redaction is required, spreadsheet DOCUMENTS (such as Microsoft Excel DOCUMENTS) shall be produced in native format, together with a single page TIFF placeholder bearing the legend "Native File Produced" and load files containing the agreed upon metadata, extracted text, production numbers and any applicable confidentiality labels as described above.  If redaction is required, then spreadsheets shall be produced in TIFF image format as set forth above.

j.      For all DOCUMENTS for which metadata exists, the load files described above shall be produced including the following fields:

| Fields for all DOCUMENTS | Description |
|---|---|
| BegProd | Beginning production number assigned to each DOCUMENT |
| EndProd | Ending production number assigned to each DOCUMENT |
| BegAttach | Beginning production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| EndAttach | Ending production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| Custodian | The name of the person or source from which the DOCUMENT was obtained |
| FileName | Original file name |
| FilePath | Original file path |
| DocExt | DOCUMENT type as identified by metadata associated with the native DOCUMENT indicating the extension of the application that created the native DOCUMENT (e.g., .doc, .ppt, etc.) |
| HashValue | The unique identifying value assigned to a DOCUMENT based on hash coding algorithms |
| Author | The person or source that originated the DOCUMENT |

-12-

| DateCreated | Date that the DOCUMENT was created (as reflected by metadata) |
|---|---|
| LastModifiedDate | Date that the file was last modified (as reflected by metadata) |
| FullText | The path or link to the searchable Extracted or OCR text for a DOCUMENT |
| NativeFile | The path or link to a processed and produced native file, to the extent the production contains native files |
| Confidentiality | The confidentiality designation for the DOCUMENT, as defined by any protective order in this matter |
| **Additional Fields for Email** | **Description** |
| To | All information contained in the "To" field of an email |
| From | All information contained in the "From" field of an email |
| CC | All information contained in the "CC" field of an email |
| BCC | All information contained in the "BCC" field of an email |
| DateSent | Date the email was sent, including month, day and year |
| TimeSent | Time the email was sent, including hour, minute, second and time zone. To the extent this information is already included in the DateSent field in the metadata, YOU need not parse TimeSent as a separate field. |
| DateReceived | Date the email was received, including the month, day and year |
| TimeReceived | Time the email was received, including hour, minute, second and time zone. To the extent this information is already included in the DateReceived field in the metadata, YOU need not parse TimeReceived as a separate field. |
| Subject | Subject or "Re:" line, as stated in the email |

8.     If with respect to any request there are no responsive DOCUMENTS, so state in writing.

9.      The following rules of construction shall be applied herein: (a) the words "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope ; (b) the use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural; (c) the words "any," "all," "each" and "every" all include any, all, each, and every and shall be understood in either their most or least inclusive sense as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; and (d) the use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the DOCUMENT requests all responses that might otherwise be construed to be outside of their scope.

10.      If YOU object to a portion or an aspect of a request, state the grounds for your objection with specificity and respond to the remainder of the DOCUMENT request. If any DOCUMENTS, or portion thereof, are withheld because YOU claim that such information is protected under the attorney-client privilege, work product doctrine, or other privilege or doctrine,  YOU are required to provide a privilege log setting forth the specific basis for the claim of privilege or protection and for each DOCUMENT provide the following:

a.      the subject matter of the DOCUMENT;

b.      the title, heading or caption of the DOCUMENT, if any;

c.      the date appearing on the DOCUMENT or, if no date appears thereon, the date or approximate date on which the DOCUMENT was prepared;

d.      the type of the DOCUMENT (e.g., whether it is a letter, memorandum, MINUTES of meeting, etc.) and the number of pages of which it consists;

e.      the identity of the person who signed the DOCUMENT or, if it was not signed, the person who prepared it;

-14-

f.      the identity of each person to whom the DOCUMENT was addressed and the identity of each person to whom a copy thereof was sent; and

g.      the identity of each person who has custody of a copy of each such DOCUMENT.

11.     If YOU claim that a portion of a DOCUMENT is protected from disclosure for any reason, produce such DOCUMENT with redaction of only the portion claimed to be protected.  When such redactions for privilege or protection are made, YOU shall place a legend similar to "REDACTION – PRIVILEGE" on the copy of the DOCUMENT produced.  All redactions shall also be included on the privilege log described in Instruction #4.

12.     If you object that a request is vague or ambiguous, IDENTIFY the objectionable aspect of the request.

13.     If a request cannot be responded to in full, YOU shall respond to the extent possible, specify the reason for YOUR inability to respond to the remainder, and state whatever information or knowledge YOU have REGARDING the portion to which YOU have not responded.

14.     If any DOCUMENT called for by these requests has been destroyed, lost, discarded, or is otherwise no longer in your possession, custody, or control, IDENTIFY such DOCUMENT as completely as possible, and specify the date of disposal of the DOCUMENT, the manner of disposal, the reason for disposal, the person authorizing disposal, and the person disposing of the DOCUMENT.

15.     These requests are sequentially numbered and each numbered paragraph constitutes a single request.  Defined terms may be capitalized for the convenience of the parties; the definitions herein apply whether or not the term is capitalized.

16.     Except where expressly stated, these requests are not limited in any way by geography.

17.     These requests shall be deemed continuing in nature in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.  Supplemental responses are required

if additional responsive information is acquired or discovered between the time of responding to this request and the time of trial.

18. Unless otherwise specified, the relevant time period, and the period for which YOU are required to provide responsive DOCUMENTS, is from and including January 1, 2011 up to and including the RESPONSE DATE.

## DOCUMENTS REQUESTED

## POLICIES AND PROCEDURES

**REQUEST FOR PRODUCTION NO. 1.:**

All ADC POLICIES AND PROCEDURES REGARDING HEALTH CARE in effect from January 1, 2011 through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 2.:**

All ADC POLICIES AND PROCEDURES in draft form or that have not been approved or implemented REGARDING HEALTH CARE from January 1, 2011 through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 3.:**

All POLICIES AND PROCEDURES REGARDING prescriptions of non-formulary medicine made by HEALTH CARE STAFF.

**REQUEST FOR PRODUCTION NO. 4.:**

All POLICIES AND PROCEDURES REGARDING the provision of medications to ADC PRISONERS, including both formulary and non-formulary medications.

**REQUEST FOR PRODUCTION NO. 5.:**

All DOCUMENTS REGARDING POLICIES AND PROCEDURES for obtaining executed HEALTH CARE DIRECTIVES from PRISONERS.

**REQUEST FOR PRODUCTION NO. 6.:**

All POLICIES AND PROCEDURES REGARDING QUALITY ASSURANCE of HEALTH CARE, including but not limited to required reports, meetings, in-service trainings, audits, evaluations, or peer review systems.

**REQUEST FOR PRODUCTION NO. 7.:**

All POLICIES AND PROCEDURES REGARDING the extraction of a PRISONER'S tooth or teeth, including but not limited to alternative treatments presented to the PRISONER and the consequences of a PRISONER'S selection of alternative treatment.

**REQUEST FOR PRODUCTION NO. 8.:**

All POLICIES AND PROCEDURES REGARDING CORRECTIONAL STAFF's and HEALTH CARE STAFF's response to a non-responsive PRISONER in his/her cell for whom HEALTH CARE assistance has been requested or appears necessary.

**REQUEST FOR PRODUCTION NO. 9.:**

All POLICIES AND PROCEDURES REGARDING confinement of PRISONERS in ISOLATION, including but not limited to placement in, retention in, or removal from ISOLATION, CONDITIONS OF CONFINEMENT, diet, and OUTDOOR EXERCISE while in ISOLATION.

**REQUEST FOR PRODUCTION NO. 10.:**

All DOCUMENTS REGARDING HNR POLICIES AND PROCEDURES, other than DOCUMENTS specific to specific PRISONERS, including but not limited to DOCUMENTS REGARDING actual timeframes for processing and the necessary qualifications of personnel, including HEALTH CARE STAFF, responsible for processing HNRs from PRISONERS.

**REQUEST FOR PRODUCTION NO. 11.:**

All POLICIES AND PROCEDURES REGARDING PRISONERS' requests for second opinions when the first opinion was given by HEALTH CARE STAFF or an external provider.

**REQUEST FOR PRODUCTION NO. 12.:**

All POLICIES AND PROCEDURES REGARDING CORRECTIONAL STAFF assisting PRISONERS with completing HNRs.

-17-

**REQUEST FOR PRODUCTION NO. 13.:**

All POLICIES AND PROCEDURES REGARDING screening PRISONERS when they are initially received into custody, including but not limited to any reviews of medical history, physical examinations, and communicable diseases screening.

**REQUEST FOR PRODUCTION NO. 14.:**

All POLICIES AND PROCEDURES REGARDING COST CONTAINMENT, including any changes in the POLICIES AND PROCEDURES.

**REQUEST FOR PRODUCTION NO. 15.:**

All DOCUMENTS REGARDING the development and adoption of HEALTH CARE DIRECTIVES.

**REQUEST FOR PRODUCTION NO. 16.:**

All MINUTES from meetings attended by ADC HEALTH CARE STAFF, and any other meetings at which the HEALTH CARE of PRISONERS, HEALTH CARE POLICIES AND PROCEDURES, HEALTH CARE STAFFING, or any issue related to HEALTH CARE was discussed.

**REQUEST FOR PRODUCTION NO. 17.:**

One copy of each standardized DOCUMENT used by the ADC REGARDING the provision of HEALTH CARE.

**REQUEST FOR PRODUCTION NO. 18.:**

All DOCUMENTS REGARDING HEALTH CARE statistics of any kind at the ADC, including but not limited to DOCUMENTS that track disease or condition prevalence, outcomes, delays in service, care provided, and costs.

**STAFFING**

**REQUEST FOR PRODUCTION NO. 19.:**

DOCUMENTS SUFFICIENT TO SHOW the HOURS OF OPERATION, STAFFING SCHEDULES, and HEALTH CARE STAFFING levels for each facility operated by the ADC from January 1, 2011 through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 20.:**

All DOCUMENTS REGARDING HEALTH CARE STAFFING in ADC for each fiscal year from 2005 to the RESPONSE DATE, including but not limited to DOCUMENTS sufficient to show the total number of HEALTH CARE STAFF, the existing positions for HEALTH CARE STAFF, whether they are permanent ADC employees or LOCUM TENENS CONTRACTORS, the number of full-time employees for each position, the number of vacancies and the duration of vacancies, and the total hours worked by HEALTH CARE STAFF and LOCUM TENENS CONTRACTORS who provided HEALTH CARE to ADC PRISONERS.

**REQUEST FOR PRODUCTION NO. 21.:**

DOCUMENTS SUFFICIENT TO SHOW ADC'S HEALTH CARE STAFFING plan at each facility, including but not limited to DOCUMENTS REGARDING (a) the minimum qualifications (e.g., M.D., R.N., L.P.N., etc.) for each position, whether (i) HEALTH CARE STAFF, (ii) non-patient care-giving staff (such as medical file clerks), or (iii) CORRECTIONAL STAFF, required in the infirmary within the facility; (b) a general DESCRIPTION of the function of each position listed; (c) the training required of each position (e.g., pre-service or in-service trainings); (d) the number of hours required per week for each position; (e) any difference in coverage on holidays or weekends for any staff position; (f) whether each position is filled or vacant as of the RESPONSE DATE; and (g) the identity of the staff members currently filling each position, with provider number (if applicable), shift, duties and degrees for each staff member identified.

**REQUEST FOR PRODUCTION NO. 22.:**

All JOB PERFORMANCE EVALUATIONS of HEALTH CARE STAFF or LOCUM TENENS CONTRACTORS REGARDING whether the staff member or contractor provided insufficient, inappropriate, or suboptimal HEALTH CARE SERVICES and/or resulting in DISCIPLINE being taken against the staff member or contractor.

**REQUEST FOR PRODUCTION NO. 23.:**

All JOB PERFORMANCE EVALUATIONS OF CORRECTIONAL STAFF finding that the staff member or contractor provided insufficient, inappropriate, or suboptimal EMERGENCY HEALTH CARE SERVICES and/or resulting in DISCIPLINE being taken against the staff member or contractor due to the EMERGENCY HEALTH CARE SERVICES provided.

**REQUEST FOR PRODUCTION NO. 24.:**

All DOCUMENTS REGARDING COMPLAINTS, from 2009 through the RESPONSE DATE, REGARDING HEALTH CARE STAFFING or the STAFFING SCHEDULE at each facility, including but not limited to COMMUNICATIONS from ADC personnel that refer to or comment on any aspect of the adequacy of HEALTH CARE STAFFING.

<strong>TRAINING</strong>

**REQUEST FOR PRODUCTION NO. 25.:**

All DOCUMENTS REGARDING formal and informal HEALTH CARE training provided to HEALTH CARE STAFF and CORRECTIONAL STAFF, REGARDING (a) the provision of HEALTH CARE, (b) administrative responsibilities REGARDING the provision of HEALTH CARE, (c) the processing of HNR forms and other PRISONER COMPLAINTS, and (d) the procedures to ensure that PRISONERS have access to HEALTH CARE.

**REQUEST FOR PRODUCTION NO. 26.:**

All DOCUMENTS REGARDING HEALTH CARE training materials provided to ADC staff, including but not limited to to DOCUMENTS REGARDING first aid, cardiopulmonary resuscitation, and suicide prevention.

<strong>CONTRACTORS</strong>

**REQUEST FOR PRODUCTION NO. 27.:**

DOCUMENTS SUFFICIENT TO SHOW the names and contact INFORMATION for each agency or entity providing ADC with temporary or long-term HEALTH CARE contractors.

**REQUEST FOR PRODUCTION NO. 28.:**

DOCUMENTS SUFFICIENT TO SHOW each contract or agreement that has been fully executed REGARDING each agency, entity or contracting individual providing ADC with temporary or long-term HEALTH CARE contractors.

**REQUEST FOR PRODUCTION NO. 29.:**

DOCUMENTS SUFFICIENT TO SHOW the amounts paid to each agency, entity, or contracting individual providing ADC with temporary or long-term HEALTH CARE contractors, with sufficient detail to ascertain the number, type, and credentials of each temporary or long-term contractor provided to the ADC, and the duration of each contractor's work for the ADC.

**REQUEST FOR PRODUCTION NO. 30.:**

All POLICIES AND PROCEDURES for establishing agreements, contracts, or understandings with LOCUM TENENS CONTRACTORS, SPECIALTY CONTRACTORS, professionals, clinics, and institutions who provide HEALTH CARE to PRISONERS.

**REQUEST FOR PRODUCTION NO. 31.:**

All DOCUMENTS REGARDING the rates of reimbursement or payment to providers contracting with ADC and/or the State of Arizona to provide HEALTH CARE to PRISONERS.

**COMPLAINTS**

**REQUEST FOR PRODUCTION NO. 32.:**

All COMPLAINTS REGARDING HEALTH CARE DIRECTIVES.

**REQUEST FOR PRODUCTION NO. 33.:**

DOCUMENTS SUFFICIENT TO SHOW the name of the PRISONER and counsel, if any, REGARDING every HEALTH CARE COMPLAINT for which the ADC, on behalf of itself or an employee, paid money to a PRISONER or a PRISONER'S estate or heirs to resolve.  Where the COMPLAINT was filed in a court, include DOCUMENTS sufficient to show the court in which it was filed and the case number.

-21-

**REQUEST FOR PRODUCTION NO. 34.:**

All DOCUMENTS REGARDING HEALTH CARE STAFF and CORRECTIONAL STAFF who have filed COMPLAINTS REGARDING the provision of HEALTH CARE.

**REFERRALS**

**REQUEST FOR PRODUCTION NO. 35.:**

DOCUMENTS SUFFICIENT TO SHOW how REFERRALS are processed, including persons involved in the decision-making process to approve or deny the REFERRAL.

**REQUEST FOR PRODUCTION NO. 36.:**

All DOCUMENTS REGARDING submitted REFERRALS, including the name of the referring HEALTH CARE CLINICIAN, the name and identification number of the PRISONER for whom the REFERRAL was made, the PRISONER'S current housing location, the reason the REFERRAL was made, the date the REFERRAL was approved or denied, the reasons for approving or denying the REFERRAL, and the name of the facility where the REFERRED CARE was actually or proposed to be provided.

**REQUEST FOR PRODUCTION NO. 37.:**

All DOCUMENTS REGARDING criticisms; critiques; or identification of possible, perceived, or actual deficiencies in HEALTH CARE made by current or former HEALTH CARE STAFF and other ADC staff, current or former LOCUM TENENS CONTRACTORS, or current or former SPECIALTY CONTRACTORS made from January 1, 2009 to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 38.:**

All DOCUMENTS REGARDING HEALTH CARE for REFERRED PRISONERS, including DOCUMENTS REGARDING any REVIEWS that occurred REGARDING the REFERRAL.

**REQUEST FOR PRODUCTION NO. 39.:**

All DOCUMENTS REGARDING the denial or delay of transportation for REFERRED PRISONERS to and from appointments with the HEALTH CARE providers

to which they were referred.

## PRISONERS

**REQUEST FOR PRODUCTION NO. 40.:**

All DOCUMENTS REGARDING DEATH RECORDS.

**REQUEST FOR PRODUCTION NO. 41.:**

All DOCUMENTS REGARDING any REVIEWS done of HEALTH CARE for HOSPITALIZED PRISONERS, whether done before or after the hospitalization of any HOSPITALIZED PRISONER.

**REQUEST FOR PRODUCTION NO. 42.:**

DOCUMENTS SUFFICIENT TO SHOW the population of PRISONERS in each ADC operated facility by month for each year from 2009 through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 43.:**

All DOCUMENTS REGARDING the conditions in which PRISONERS are held at Tempe St. Luke's Hospital.

## COSTS AND BUDGET

**REQUEST FOR PRODUCTION NO. 44.:**

All DOCUMENTS REGARDING HEALTH CARE COST CONTAINMENT.

**REQUEST FOR PRODUCTION NO. 45.:**

All DOCUMENTS REGARDING HEALTH CARE cost analysis done by the ADC, whether over all or for particular types of care or medical procedures.

**REQUEST FOR PRODUCTION NO. 46.:**

All DOCUMENTS REGARDING the ADC's budget, including all amounts budgeted for HEALTH CARE, for each year from 2007 to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 47.:**

DOCUMENTS SUFFICIENT TO SHOW the actual amounts expended on HEALTH CARE for ADC PRISONERS for each year from 2007 to the RESPONSE DATE.

VICTOR ANTONIO PARSONS' FIRST SET
OF REQUESTS FOR PRODUCTION
2:12-CV-00601-NVW--MEA

**REQUEST FOR PRODUCTION NO. 48.:**

All DOCUMENTS REGARDING requests for funding made by the ADC to the Governor or legislature of Arizona from January 1, 2007 to the RESPONSE DATE.

**PRISONERS IN ISOLATION**

**REQUEST FOR PRODUCTION NO. 49.:**

All DOCUMENTS REGARDING criticisms; critiques; or identification of possible, perceived, or actual deficiencies in CONDITIONS OF CONFINEMENT for ADC PRISONERS in ISOLATION from January 1, 2009 to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 50.:**

All COMPLAINTS REGARDING CONDITIONS OF CONFINEMENT for PRISONERS in ISOLATION, or the delivery of HEALTH SERVICES to PRISONERS in ISOLATION, made by current or former ADC personnel.

**REQUEST FOR PRODUCTION NO. 51.:**

All DOCUMENTS REGARDING INTERNAL INVESTIGATIONS OR EXTERNAL INVESTIGATIONS REGARDING CONDITIONS OF CONFINEMENT for PRISONERS in ISOLATION from January 1, 2009 to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 52.:**

All DOCUMENTS REGARDING INTERNAL INVESTIGATIONS OR EXTERNAL INVESTIGATIONS REGARDING the delivery of HEALTH SERVICES to PRISONERS in ISOLATION from January 1, 2009 to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 53.:**

DOCUMENTS SUFFICIENT TO SHOW the duration of confinement in ISOLATION, including but not limited to the mean, median, and maximum length of confinement in ISOLATION for ADC PRISONERS.

**REQUEST FOR PRODUCTION NO. 54.:**

All DOCUMENTS REGARDING the provision of OUTDOOR EXERCISE to PRISONERS in ISOLATION, including but not limited to POLICIES AND PROCEDURES; schedules for the provision of OUTDOOR EXERCISE; DOCUMENTS

-24-

SUFFICIENT TO SHOW when and for how long PRISONERS actually received OUTDOOR EXERCISE, including any DOCUMENTS REGARDING cancellation or truncation of scheduled OUTDOOR EXERCISE; plans of the areas in which OUTDOOR EXERCISE is provided; and exercise equipment in the OUTDOOR EXERCISE areas.

**REQUEST FOR PRODUCTION NO. 55.:**

All DOCUMENTS REGARDING exhausted GRIEVANCES REGARDING HEALTH CARE or ISOLATION from January 1, 2010 through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 56.:**

All DOCUMENTS REGARDING GRIEVANCES REGARDING CONDITIONS OF CONFINEMENT in ISOLATION.

**REQUEST FOR PRODUCTION NO. 57.:**

All DOCUMENTS REGARDING the provision of food to PRISONERS in ISOLATION, including but not limited to POLICIES AND PROCEDURES; schedules for delivery of food; menus; nutritional analyses of menus; and DOCUMENTS SUFFICIENT TO SHOW when PRISONERS actually received food and what food they received, including any DOCUMENTS REGARDING deviation from the schedule for delivery of food or from the planned menu.

**DOCUMENTS FROM ADC OFFICIALS**

**REQUEST FOR PRODUCTION NO. 58.:**

All DOCUMENTS authored by or sent from defendant Charles Ryan REGARDING HEALTH CARE.

**REQUEST FOR PRODUCTION NO. 59.:**

All DOCUMENTS authored by or sent from defendant Richard Pratt REGARDING HEALTH CARE.

**REQUEST FOR PRODUCTION NO. 60.:**

All DOCUMENTS authored by or sent from Michael Adu-Tutu REGARDING HEALTH CARE.

1

2                                    **OTHER**

3    **REQUEST FOR PRODUCTION NO. 61.:**

4           DOCUMENTS SUFFICIENT TO SHOW the ORGANIZATIONAL

5    STRUCTURE of the ADC for the time period from January 1, 2011 through the

6    RESPONSE DATE.

7    **REQUEST FOR PRODUCTION NO. 62.:**

8           All DOCUMENTS REGARDING HEALTH CARE SHORTAGES.

9    **REQUEST FOR PRODUCTION NO. 63.:**

10          For each custodian for whom you produce DOCUMENTS, produce an image of

11   the folder structure, including all sub-folders, of any email accounts for that custodian.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  June 15, 2012                        **JONES DAY**

                                     By:  _Caroline Mitchell_
                                          Caroline Mitchell (Cal. 143124)*
                                          Ilham Hosseini (Cal. 256274)*
                                          Sophia Calderon (Cal. 278315)*
                                          **JONES DAY**
                                          555 California Street, 26th Floor
                                          San Francisco, California 94104
                                          Telephone:  (415) 875-5712
                                          Email:      cnmitchell@jonesday.com
                                                      ihosseini@jonesday.com
                                                      scalderon@jonesday.com


                                          *Admitted *pro hac vice*

                                     Attorneys for Defendants


                                          Daniel J. Pochoda (Bar No. 021979)
                                          Kelly J. Flood (Bar No. 019772)
                                          James Duff Lyall (Bar No. 330045)*
                                          **ACLU FOUNDATION OF
                                          ARIZONA**
                                          3707 North 7th Street, Suite 235
                                          Phoenix, Arizona 85013
                                          Telephone:  (602) 650-1854
                                          Email:      dpochoda@acluaaz.org;
                                                      kflood@acluaz.org
                                                      jlyall@acluaz.org

                                          *Admitted pursuant to Ariz. Sup. Ct.
                                          R. 38(f)

                                          Donald Specter (Cal. 83925)*
                                          Alison Hardy (Cal. 135966)*
                                          Sara Norman (Cal. 189536)*
                                          Corene Kendrick (Cal. 226642)*
                                          **PRISON LAW OFFICE**
                                          1917 Fifth Street
                                          Berkeley, California 94710
                                          Telephone:  (510) 280-2621
                                          Email:      dspecter@prisonlaw.com
                                                      ahardy@prisonlaw.com
                                                      snorman@prisonlaw.com
                                                      ckendrick@prisonlaw.com

                                          *Admitted *pro hac vice*

VICTOR ANTONIO PARSONS' FIRST SET
OF REQUESTS FOR PRODUCTION
2:12-CV-00601-NVW--MEA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@npp-aclu.org
           afettig@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*
Daniel C. Barr (Bar No. 010149)
Jill L. Ripke (Bar No. 024837)
James A. Ahlers (Bar No. 026660)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Thomas D. Ryerson (Bar No. 028073)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:     dbarr@perkinscoie.com
           rjipke@perkinscoie.com
           jahlers@perkinscoie.com
           keidenbach@perkinscoie.com
           jhgray@perkinscoie.com
           tryerson@perkinscoie.com
           mdumee@perkinscoie.com

*Attorneys for Plaintiffs Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriquez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

1

2     **ARIZONA CENTER FOR DISABILITY LAW**

3
      Jennifer Alewelt
4     Ruth Szanto
      Asim Varma
5     5025 East Washington Street, Suite 202
      Phoenix, Arizona 85034
6     Telephone:  (602) 274-6287
      Email:     jalewelt@azdisabilitylaw.org
7                rszanto@azdisabilitylaw.org
                 avarma@azdisabilitylaw.org
8
      *Attorneys for Plaintiff Arizona Center for*
9     *Disability Law*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VICTOR ANTONIO PARSONS' FIRST SET
OF REQUESTS FOR PRODUCTION
2:12-CV-00601-NVW--MEA

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2012, I served the foregoing document by mail on the following:

Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gotfried
Assistant Attorney General
1275 W. Washington Street
Phoenix, AZ 85007-2926
Telephone: 602-542-4951
Facsimile: 602-542-7670

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
Struck Wieneke & Love, PLC
3100 West Ray Rd., Ste. 300
Chandler, AZ 85226
Telephone: 480-420-1600
Facsimile 480-420-1696

Sophia Calderón

SFI-735993v1

VICTOR ANTONIO PARSONS' FIRST SET
OF REQUESTS FOR PRODUCTION
2:12-CV-00601-NVW--MEA

# EXHIBIT 2

1  Daniel Pochoda (Bar No. 021979)
   Kelly J. Flood (Bar No. 019772)
2  James Duff Lyall (Bar No. 330045)*
   **ACLU FOUNDATION OF ARIZONA**
3  3707 North 7th Street, Suite 235
   Phoenix, Arizona 85013
4  Telephone: (602) 650-1854
   Email: dpochoda@acluaz.org
5          kflood@acluaz.org
           jlyall@acluaz.org
6  *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7  *Attorneys for Plaintiffs Victor Parsons, Shawn Jensen,*
   *Stephen Swartz, Dustin Brislan, Sonia Rodriguez,*
8  *Christina Verduzco, Jackie Thomas, Jeremy Smith,*
   *Robert Gamez, Maryanne Chisholm, Desiree Licci,*
9  *Joseph Hefner, Joshua Polson, and Charlotte Wells, on*
   *behalf of themselves and all others similarly situated*
10
   **[ADDITIONAL COUNSEL LISTED ON**
11   **SIGNATURE PAGE]**

12            UNITED STATES DISTRICT COURT

13               DISTRICT OF ARIZONA

14  Victor Parsons; Shawn Jensen; Stephen Swartz;      No. CV 12-00601-PHX-NVW
    Dustin Brislan; Sonia Rodriguez; Christina          (MEA)
15  Verduzco; Jackie Thomas; Jeremy Smith; Robert
    Gamez; Maryanne Chisholm; Desiree Licci; Joseph
16  Hefner; Joshua Polson; and Charlotte Wells, on     **PLAINTIFF VICTOR**
    behalf of themselves and all others similarly      **ANTONIO PARSONS'**
17  situated; and Arizona Center for Disability Law,   **SECOND SET OF**
                                                       **REQUESTS FOR**
18              Plaintiffs,                             **PRODUCTION OF**
                                                       **DOCUMENTS TO**
19      v.                                             **DEFENDANTS**

20  Charles Ryan, Director, Arizona Department of
    Corrections; and Richard Pratt, Interim Division
21  Director, Division of Health Services, Arizona
    Department of Corrections, in their official
22  capacities,

23              Defendants.

24

25

26

27

28

1    Propounding Parties:          Plaintiff Victor Antonio Parsons

2    Responding Party:             Defendants

3           Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Victor

4    Antonio Parsons, by and through undersigned counsel, requests that Defendants respond,

5    within 30 days and produce the following documents for inspection and copying at ACLU

6    Foundation of Arizona, 3707 N. 7th Street, Suite 235, Phoenix, Arizona 85013.

7                                    **DEFINITIONS**

8           1.     "ADC" means the Arizona Department of Corrections, including all its

9    subdivisions, agents, employees, contractors, and attorneys.

10          2.     "ADC STAFF" means all persons employed by ADC, including

11   "CORRECTIONAL STAFF" and "HEALTH CARE STAFF."

12          3.     "COMMUNICATIONS" means any transmittal of information from one

13   person or entity to another by any means, including letters, correspondence, notes,

14   memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied

15   or blind copied), electronic mail generated from a hand held personal device including a

16   Blackberry or iPhone, instant messaging, electronic mail generated from business or

17   personal email accounts, internet relay chat, news group, group or collaboration servers,

18   electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings,

19   audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes,

20   teleconference, collaboration servers (including share point servers), web-based or

21   software virtual meetings including Web-X and any other meeting software and share

22   point servers, and oral contact such as face-to-face discussions or meetings, telephone

23   conversations, and voice mail messages.

24          4.     "COMPLAINTS" means any DOCUMENTS, formal or informal,

25   REGARDING specific or general problems, issues, deficiencies, unanswered questions,

26   challenges, shortcomings, disagreements, or requests brought to the attention of the ADC

27   or any ADC STAFF.

28

78204-0001/LEGAL24896164.1

5.     "CONDITIONS OF CONFINEMENT" means all circumstances REGARDING the state of being imprisoned.

6.     "CONTRACTOR" means "LOCUM TENENS CONTRACTOR" and "SPECIALTY CONTRACTOR."

7.     "CORRECTIONAL STAFF" means custody staff employed or paid by the ADC to serve in a security or operational capacity.

8.     "COST CONTAINMENT" means contemplated, discussed, or actual actions to restrict, reduce, contain, or limit costs or expenses by DEFENDANTS, the ADC or any personnel working in any capacity for the ADC or the Arizona State Government, including any agents of the foregoing.

9.     "DEATH RECORDS" means any DOCUMENT REGARDING the death of a PRISONER, including audits, REVIEWS, studies, interview notes, videos, audio-recordings, EXTERNAL INVESTIGATIONS or INTERNAL INVESTIGATIONS.

10.     "DESCRIBE" and "DESCRIPTION" means to provide all available INFORMATION.

11.     "DISCIPLINE" means any formal or informal discipline, punishment, reprimand, warning, or comment given to any person as a result of substandard or unacceptable conduct.

12.     "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and DESCRIPTION and every tangible thing that is or has been in the possession, custody, or control of DEFENDANTS and the ADC, to which they have access, or of which they have knowledge, including, but not limited to, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings,

maps, reports, surveys, MINUTES, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device). "DOCUMENT" and "DOCUMENTS" includes, but is not limited to, all DOCUMENTS generated by or maintained in the Director's Project Tracking System, official ADC papers, and the ADC's intranet.

13. "EMERGENCY HEALTH CARE SERVICES" means treatment or care to address a mental health, medical, or dental injury or illness that is acute, causes substantial pain, and/or and poses a substantial and immediate risk to the life or long term health of a person.

14. "ENTRY-LEVEL PRACTITIONERS" means unlicensed persons who provide HEALTH CARE to PRISONERS at the ADC subordinate to MID-LEVEL PRACTITIONERS or HEALTH CARE CLINICIANS.

15. "EXTERNAL INVESTIGATIONS" means investigations, REVIEWS, audits, or studies, whether formal or informal, conducted by a person who is not employed by the ADC or an entity that is not the ADC.  It is immaterial to the definition whether the EXTERNAL INVESTIGATION was conducted at the ADC's behest or direction.

16. "GRIEVANCES" means COMPLAINTS or requests made by PRISONERS to the ADC, and the exhaustion of claims raised or stated therein.

17. "HEALTH CARE" means the provision of care, including adequate diet, to address the mental health, medical, or dental needs of a PRISONER, whether those needs arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic or preventive purposes.

18. "HEALTH CARE CLINICIANS" means persons independently licensed to provide HEALTH CARE to PRISONERS at the ADC facilities, including but not limited to M.D., D.O., D.D.S., and Ph.D. credentialed staff.

19.     "HEALTH CARE DIRECTIVES" means DOCUMENTS REGARDING advance medical care directives, living wills, personal directives, advance directives, or instructions of any kind in which individuals specify what actions should or should not be taken for their HEALTH CARE in the event they are no longer able to make decisions due to illness, injury, or incapacity

20.     "HEALTH CARE SHORTAGES" means any deficiencies involving HEALTH CARE, including but not limited to a lack of or insufficient number of medicines, drugs, medical supplies, medical equipment, transportation, or HEALTH CARE STAFFING.

21.     "HEALTH CARE STAFF" means all staff employed or paid by the ADC, LOCUM TENENS CONTRACTORS, or SPECIALTY CONTRACTORS (other than CORRECTIONAL STAFF) who are responsible for providing HEALTH CARE to ADC PRISONERS, including but not limited to HEALTH CARE CLINICIANS, MID-LEVEL PRACTITIONERS, ENTRY-LEVEL PRACTITIONERS, PHARMACISTS, and administrative and support staff.

22.     "HEALTH CARE STAFFING" means the provision of HEALTH CARE STAFF to provide HEALTH CARE.

23.     "HEALTH GRIEVANCES" means requests for HEALTH CARE or COMPLAINTS REGARDING the need for, adequacy of, quality of, or timing of HEALTH CARE made by PRISONERS to the ADC, including but not limited to the submission of Health Needs Request ("HNR") forms and the exhaustion of claims stated therein.

24.     "HNR POLICIES AND PROCEDURES" means policies, procedures, or practices, whether written or established through custom or use, REGARDING HNR submissions by PRISONERS, including but not limited to the distribution, disposal, processing, rejection of, responses to, provision of HEALTH CARE pursuant to, and exhaustion of claims raised by such submissions.  This includes policies, procedures, or practices that are in draft form and have not been approved and/or implemented.

25.     "HOSPITALIZED PRISONER" means any PRISONER who is sent to a hospital or other off-site medical or mental health facility, or who is admitted to an on-site hospital, while in the custody of the ADC.

26.     "HOURS OF OPERATION" means the time periods during which a facility, unit, or other ADC facility housing PRISONERS is able to provide HEALTH CARE to PRISONERS by on-site HEALTH CARE STAFF.

27.     "IDENTIFY" and "IDENTIFICATION" with respect to (a) a PRISONER or former PRISONER, means to state the PRISONER'S full name, ADC number, date of birth, current or most recent mental health score (MH-1 through MH-5), medical score (M-1 through M-5), public risk score, institutional risk score, and current housing location (if still in ADC custody) or last known address and telephone number (if no longer in ADC custody); (b) a person other than a PRISONER or former PRISONER, means to state the person's full name and specify whether or not the person is or has been an ADC STAFF member, and if so, to state the staff member's position title, facility location, work schedule, responsibilities, date ADC employment began, date ADC employment terminated, dates of any changes in position titles or responsibilities, DESCRIPTIONS of any changes in position titles or responsibilities and, if the person is not currently employed by ADC, the person's last known address and telephone number; and (c) a third-party contractor or entity means to state the name of the contractor or entity, the type of entity (*e.g.*, corporation, partnership, etc.); its address and telephone number; and any persons YOU are aware of who acted on behalf of that contractor or entity with respect to the events at issue in the discovery request; (d) IDENTIFY in any other context means to provide as much INFORMATION REGARDING the thing to be identified as is in the possession of DEFENDANTS or the ADC.

28.     "INFORMATION" means any knowledge YOU have, any evidence of any type, any facts of which YOU are aware and any inferences or speculation of which YOU are aware, all regardless of the source.  When INFORMATION YOU provide is based solely on inference or speculation, specifically so state in YOUR response.  When

providing INFORMATION, provide the names of involved individuals, actions relevant to the requested INFORMATION, dates and times when known, locations, and any other knowledge YOU have about the subject of the discovery request.  When asked to provide INFORMATION about one or more individuals, IDENTIFY the individual or individuals and provide any other INFORMATION YOU have about such person or persons.

29.    "INTERNAL INVESTIGATION" means an investigation, REVIEW, audit, study, interview notes, videos, or audio recordings, whether formal or informal, conducted by the ADC.

30.    "ISOLATION" means confinement in a cell for 22 hours or more each day; confinement in Eyman-Special Management Unit ("SMU") 1, Eyman-Browning Unit, Florence-Central Unit, Florence-Kasson Unit, or Perryville-Lumley Special Management Area ("SMA"); or confinement in a Complex Detention Unit ("CDU").

31.    "JOB PERFORMANCE EVALUATION" means any evaluation, whether formal or informal, of the work of an ADC STAFF member or contractor performing services for the ADC.

32.    "LOCUM TENENS CONTRACTOR" means any person or entity contracting with ADC to provide HEALTH CARE to ADC PRISONERS.

33.    "MID-LEVEL PRACTITIONERS" means licensed professionals who provide HEALTH CARE to PRISONERS at the ADC under supervision by HEALTH CARE CLINICIANS.

34.    "MINUTES" means notes or any other recording reflecting the content of a meeting, whether written contemporaneously with or subsequent to the meeting.

35.    "ORGANIZATIONAL STRUCTURE" means the structure of who reports to whom within the ADC up to and including defendant Charles Ryan, including specifically all HEALTH CARE STAFF and each individual's job title and DESCRIPTION of duties.

36.    "OUTDOOR EXERCISE" means periods during which PRISONERS are permitted to exercise in the outdoors.

37.    "PHARMACIST" means a professional who practices pharmacy.

38.    "POLICIES AND PROCEDURES" means policies, procedures, criteria, or practices, whether written or established through custom or use, including but not limited to policy and procedure manuals, directors' orders, protocols, directives, flowcharts, institution post orders, and any other DOCUMENTS designed to direct the actions of ADC personnel, ADC contractors, and/or PRISONERS.

39.    "PRISONER" means a person incarcerated by the ADC.

40.    "QUALITY ASSURANCE" means any activities implemented for the purpose of examining, assessing, evaluating, investigating, analyzing, or identifying the quality of a product or service.

41.    "REFERRAL" means a recommendation that a PRISONER obtain HEALTH CARE from HEALTH CARE STAFF at ADC or non ADC facilities, whether or not such HEALTH CARE is in fact ever provided.

42.    "REFERRED CARE" means HEALTH CARE pursuant to a REFERRAL.

43.    "REFERRED PRISONER" means a PRISONER who received a REFERRAL while in the legal custody of the ADC.

44.    "REGARDING" or "REGARDED" to any given subject matter means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers to, relates to, responds to, states, summarizes, or is in any way relevant to the particular subject matter identified.

45.    "RESPONSE DATE" means date upon which YOU respond to these discovery requests, or, if YOU amend or supplement YOUR response, the date of YOUR amendment or supplement.

46.    "REVIEWS" means examinations, assessments, evaluations, or investigations performed by or at the direction of ADC STAFF or officials.

47. "SPECIALTY CONTRACTOR" means any person or entity contracting with the ADC to provide HEALTH CARE to PRISONERS who is not a LOCUM TENENS CONTRACTOR.

48. "STAFFING SCHEDULE" means the days, hours, and/or shifts for which each member of the HEALTH CARE STAFF was scheduled to work, including overtime, on call and call-in coverage.

49. "SUFFICIENT TO SHOW" means demonstrating or evidencing complete INFORMATION on the requested topic, without the need to produce every DOCUMENT REGARDING the topic.

50. "YOU," "YOUR," "YOURSELF," and "DEFENDANTS" means defendants Charles Ryan and Richard Pratt, and their predecessors, successors, employees, subordinates, contractors, agents, and attorneys.

**<u>INSTRUCTIONS</u>**

1. YOU are required to furnish all DOCUMENTS in YOUR possession, custody, or control, including those DOCUMENTS that are in YOUR possession, custody, or control in the normal course of YOUR employment obligations, and those in the possession, custody or control of your (1) employer; (2) consultants; (3) attorneys; (4) representatives; (5) agents; or (6) any other person acting or purporting to act on YOUR behalf or at YOUR direction, whether doing so directly or at the direction of YOUR subordinates.  Possession, custody, or control includes DOCUMENTS stored in electronic form by third party service providers but accessible to the Defendant, including but not limited to email accounts, FTP servers, portable storage media such as USB drives, cloud storage services such as Dropbox or SharePoint , and online workspaces such as WebEx.

2. All non-identical copies of every DOCUMENT whose production is sought shall be separately produced.

3. Each request herein constitutes a request for DOCUMENTS in their entirety, with all enclosures and attachments, and without abbreviation, redaction, or

1    expurgation.   DOCUMENTS attached to each other, including but not limited to, by

2    staple, clip, tape, email attachment, or "Post-It" note, should not be separated, although

3    any page on which a Post-It note covers or obscures text on the DOCUMENT should be

4    produced both with and without the Post-It note.  The production must also include, where

5    applicable, any index tabs, file dividers, designations, binder spine labels, or other similar

6    information as to the source and/or location of the DOCUMENTS.

7        4.    DEFENDANTS shall produce any and all drafts and copies of each

8    DOCUMENT that are responsive to any request, including but not limited to copies

9    containing handwritten notes, markings, stamps, or interlineations.  The author(s) of all

10   hand-written notes should be identified.

11       5.    YOU shall produce all responsive DOCUMENTS as they have been kept in

12   the ordinary course of business.

13       6.    Responsive DOCUMENTS that exist only in paper form shall be organized

14   as they have been kept in the ordinary course of business and shall be produced according

15   to the following protocol:

16           a.    Paper DOCUMENTS shall be scanned and produced in TIFF image

17       form at a resolution sufficient to enable the generation of searchable text using

18       Optical Character Recognition ("OCR").

19       7.    Responsive DOCUMENTS that exist in electronic form, even if such

20   DOCUMENTS also exist in paper form, shall be produced in electronic form according to

21   the following protocol:

22           a.    Electronic DOCUMENTS shall be produced electronically as single

23       page, uniquely and sequentially numbered Group IV TIFF image files of not less

24       than 300 dots per inch resolution, together with DOCUMENT level load files

25       wherein the full text was extracted directly from the native file where possible.

26           b.    For files produced in TIFF image form, each page of a produced

27       DOCUMENT shall have a legible, unique production number electronically

28       "burned" onto the TIFF image in such a manner that information from the source

DOCUMENT is not obliterated, concealed, or interfered with, preferably in the lower right corner of the DOCUMENT.  The production number shall contain at least six digits.  There shall be no other legend or stamp placed on the DOCUMENT image, unless a DOCUMENT qualifies for confidential treatment pursuant to the terms of any protective order in this matter, or if the DOCUMENT requires redaction.  In the case of confidential materials as defined by any protective order in this matter, any applicable designation may be "burned" onto the DOCUMENT's image at a location that does not obliterate or obscure any information from the source DOCUMENT, preferably in the lower left corner.

c.    Each DOCUMENT image file shall be named with the unique production number of the page of the DOCUMENT in question, followed by the extension ".tif".  File names should not be more than 20 characters long or contain spaces.

d.    For files produced in TIFF image format, each page of a DOCUMENT shall be electronically saved as an image file.  If a DOCUMENT is more than one page, the unitization of the DOCUMENT and any attachments and/or affixed notes shall be maintained as they existed in the original DOCUMENT.

e.    TIFF images shall be accompanied by a standard load file containing the metadata and other fields identified in Paragraph 7(j) of these Instructions, below.  The load file shall be produced in one of the following industry-standard formats:  (1) Concordance delimited file (".dat"); (2) comma-separated value file (".csv"); or (3) TAB delimited file.  TIFF images shall also be accompanied by either an Opticon delimited cross-reference file (".opt") or IPRO View LFP comma-delimited file showing DOCUMENT breaks and appropriate DOCUMENT unitization.

f.    In addition to TIFF images, each production of electronic DOCUMENTS shall include searchable text files corresponding to the TIFF

images for each DOCUMENT.   The full text of each native electronic DOCUMENT, excluding redacted DOCUMENTS, shall be extracted directly from the native file and produced in a DOCUMENT-level related text file (the "Extracted Text"). The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with the unique production number of the first page of the corresponding TIFF DOCUMENT followed by the extension ".txt".   YOU shall also perform OCR on certain types of non-text based static image ESI, such as native PDF image files, and produce the corresponding DOCUMENT-level related text files. Searchable text files shall be generated from Extracted Text where available.

g.    DOCUMENTS shall be produced on optical media (CD or DVD) or external hard drives or similar, readily accessible electronic media (the "Production Media").  Each piece of Production Media shall IDENTIFY a production number corresponding to the party and production with which the DOCUMENTS on the Production Media are associated (e.g., "RYAN 001"), as well as the volume of the material in that production (e.g., "- 001", "-002").   For example, if the first production wave by YOU comprises DOCUMENT images on three hard drives, YOU shall label each hard drive in the following manner: "RYAN 001-001", "RYAN 001-002", and "RYAN 001-003."  The face of each piece of Production Media shall also IDENTIFY:   (1) the production date; and (2) the production number range of the materials contained on the Production Media.

h.    Presentation DOCUMENTS (such as Microsoft PowerPoint DOCUMENTS) shall be produced with one slide per page together with any "Speaker's Notes" or similar pages appended to, or otherwise associated with, each slide. Presentation DOCUMENTS shall also be produced according to all other applicable Instructions set forth in this set of requests.

i.    Unless redaction is required, spreadsheet DOCUMENTS (such as Microsoft Excel DOCUMENTS) shall be produced in native format, together with

a single page TIFF placeholder bearing the legend "Native File Produced" and load files containing the agreed upon metadata, extracted text, production numbers and any applicable confidentiality labels as described above.  If redaction is required, then spreadsheets shall be produced in TIFF image format as set forth above.

   j. For all DOCUMENTS for which metadata exists, the load files described above shall be produced including the following fields:

| Fields for all DOCUMENTS | Description |
| --- | --- |
| BegProd | Beginning production number assigned to each DOCUMENT |
| EndProd | Ending production number assigned to each DOCUMENT |
| BegAttach | Beginning production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| EndAttach | Ending production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| Custodian | The name of the person or source from which the DOCUMENT was obtained |
| FileName | Original file name |
| FilePath | Original file path |
| DocExt | DOCUMENT type as identified by metadata associated with the native DOCUMENT indicating the extension of the application that created the native DOCUMENT (e.g., .doc, .ppt, etc.) |
| HashValue | The unique identifying value assigned to a DOCUMENT based on hash coding algorithms |
| Author | The person or source that originated the DOCUMENT |
| DateCreated | Date that the DOCUMENT was created (as reflected by metadata) |
| LastModifiedDate | Date that the file was last modified (as reflected by metadata) |

| Fields for all DOCUMENTS | Description |
| --- | --- |
| FullText | The path or link to the searchable Extracted or OCR text for a DOCUMENT |
| NativeFile | The path or link to a processed and produced native file, to the extent the production contains native files |
| Confidentiality | The confidentiality designation for the DOCUMENT, as defined by any protective order in this matter |
| **Additional Fields for Email** | **Description** |
| To | All information contained in the "To" field of an email |
| From | All information contained in the "From" field of an email |
| CC | All information contained in the "CC" field of an email |
| BCC | All information contained in the "BCC" field of an email |
| DateSent | Date the email was sent, including month, day and year |
| TimeSent | Time the email was sent, including hour, minute, second and time zone. To the extent this information is already included in the DateSent field in the metadata, YOU need not parse TimeSent as a separate field. |
| DateReceived | Date the email was received, including the month, day and year |
| TimeReceived | Time the email was received, including hour, minute, second and time zone. To the extent this information is already included in the DateReceived field in the metadata, YOU need not parse TimeReceived as a separate field. |
| Subject | Subject or "Re:" line, as stated in the email |

8.     If with respect to any request there are no responsive DOCUMENTS, so state in writing.

9.     The following rules of construction shall be applied herein: (a) the words "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope ; (b) the use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural; (c) the words "any," "all," "each" and "every" all include any, all, each, and every and shall be understood in either their most or least inclusive sense as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; and (d) the use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the DOCUMENT requests all responses that might otherwise be construed to be outside of their scope.

10.     If YOU object to a portion or an aspect of a request, state the grounds for your objection with specificity and respond to the remainder of the DOCUMENT request. If any DOCUMENTS, or portion thereof, are withheld because YOU claim that such information is protected under the attorney-client privilege, work product doctrine, or other privilege or doctrine,  YOU are required to provide a privilege log setting forth the specific basis for the claim of privilege or protection and for each DOCUMENT provide the following:

a.     the subject matter of the DOCUMENT;

b.     the title, heading or caption of the DOCUMENT, if any;

c.     the date appearing on the DOCUMENT or, if no date appears thereon, the date or approximate date on which the DOCUMENT was prepared;

d.     the type of the DOCUMENT (e.g., whether it is a letter, memorandum, MINUTES of meeting, etc.) and the number of pages of which it consists;

e.     the identity of the person who signed the DOCUMENT or, if it was not signed, the person who prepared it;

f.      the identity of each person to whom the DOCUMENT was addressed and the identity of each person to whom a copy thereof was sent; and

g.      the identity of each person who has custody of a copy of each such DOCUMENT.

11.     If YOU claim that a portion of a DOCUMENT is protected from disclosure for any reason, produce such DOCUMENT with redaction of only the portion claimed to be protected.  When such redactions for privilege or protection are made, YOU shall place a legend similar to "REDACTION – PRIVILEGE" on the copy of the DOCUMENT produced.   All redactions shall also be included on the privilege log described in Instruction #4.

12.     If you object that a request is vague or ambiguous, IDENTIFY the objectionable aspect of the request.

13.     If a request cannot be responded to in full, YOU shall respond to the extent possible, specify the reason for YOUR inability to respond to the remainder, and state whatever information or knowledge YOU have REGARDING the portion to which YOU have not responded.

14.     If any DOCUMENT called for by these requests has been destroyed, lost, discarded, or is otherwise no longer in your possession, custody, or control, IDENTIFY such DOCUMENT as completely as possible, and specify the date of disposal of the DOCUMENT, the manner of disposal, the reason for disposal, the person authorizing disposal, and the person disposing of the DOCUMENT.

15.     These requests are sequentially numbered and each numbered paragraph constitutes a single request.  Defined terms may be capitalized for the convenience of the parties; the definitions herein apply whether or not the term is capitalized.

16.     Except where expressly stated, these requests are not limited in any way by geography.

17.     These requests shall be deemed continuing in nature in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.  Supplemental responses are required

1  if additional responsive information is acquired or discovered between the time of

2  responding to this request and the time of trial.

3        18.    Unless otherwise specified, the relevant time period, and the period for

4  which YOU are required to provide responsive DOCUMENTS, is from and including

5  January 1, 2011  up to and including the RESPONSE DATE.

6                          **DOCUMENTS REQUESTED**

7  **REQUEST FOR PRODUCTION NO. 1:**

8        All DOCUMENTS, in particular but not exclusively including recordings,

9  transcripts, summaries, memoranda, or notes, REGARDING telephone calls or other

10 COMMUNICATIONS made by ADC CORRECTIONAL or HEALTH CARE STAFF to

11 911 or other emergency response providers where any part of those

12 COMMUNICATIONS REGARDED Victor Parsons, Shawn Jensen, Stephen Swartz,

13 Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith,

14 Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, or

15 Charlotte Wells.

16

17 **REQUEST FOR PRODUCTION NO. 2:**

18       All DOCUMENTS, in particular but not exclusively including recordings,

19 transcripts, summaries, memoranda, or notes, REGARDING telephone calls or other

20 COMMUNICATIONS made by ADC CORRECTIONAL or HEALTH CARE STAFF to

21 911 or other emergency response providers where any part of those

22 COMMUNICATIONS REGARDED any PRISONER and the telephone call occurred on

23 any date between January 1, 2011 and the RESPONSE DATE.

24

25 **REQUEST FOR PRODUCTION NO. 3:**

26       All DOCUMENTS, in particular but not exclusively including reports, memoranda,

27 notes, photographs, films, audiotapes, videotapes, video recordings, or computer records,

28 REGARDING the use of force by ADC CORRECTIONAL STAFF, in particular but not

1  exclusively including the use of pepper spray or any similar substance, against Victor

2  Parsons, Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina

3  Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree

4  Licci, Joseph Hefner, Joshua Polson, or Charlotte Wells.

5

6  **REQUEST FOR PRODUCTION NO. 4:**

7       All DOCUMENTS, in particular but not exclusively including reports, memoranda,

8  notes, photographs, films, audiotapes, videotapes, video recordings, or computer records,

9  REGARDING the use of force by ADC CORRECTIONAL STAFF, in particular but not

10  exclusively including the use of pepper spray or any similar substance, against any

11  PRISONER classified as SERIOUSLY MENTALLY ILL on any date between January 1,

12  2011 and the RESPONSE DATE.

13

14  **REQUEST FOR PRODUCTION NO. 5:**

15       All DOCUMENTS, in particular but not exclusively including reports, memoranda,

16  notes, Inmate Letters, photographs, films, audiotapes, videotapes, video recordings, or

17  computer records, REGARDING Daniel Porter, #61424, in particular but not exclusively

18  including video recordings of him and/or ADC CORRECTIONAL and HEALTH CARE

19  STAFF at ASPC-Eyman near him at or near the time of his death on or about February 20,

20  2012, and video recordings of interviews with PRISONERS regarding Daniel Porter's

21  death.

22

23  **REQUEST FOR PRODUCTION NO. 6:**

24       All DOCUMENTS, in particular but not exclusively including reports, memoranda,

25  notes, photographs, films, audiotapes, videotapes, video recordings, or computer records,

26  REGARDING Anthony Lester, #253529, in particular but not exclusively including video

27  recordings of him and/or ADC CORRECTIONAL or HEALTH CARE STAFF at ASPC-

28  Tucson near him at or near the time of his death on or about July 11, 2010.

**REQUEST FOR PRODUCTION NO. 7:**

All photographs, films, audiotapes, videotapes, video recordings, computer records, "cell extraction videos," or similar videos made by ADC CORRECTIONAL STAFF REGARDING the removal of Victor Parsons, Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, or Charlotte Wells from their cells.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS REGARDING COMMUNICATIONS, including the COMMUNICATIONS themselves, from ADC to Wexford Health Sources, Inc. on or about September 21, 2012, pertaining in any part to deficiencies ADC has perceived in Wexford's delivery of health care.  This production should include the September 21, 2012 letter referenced in the Arizona Republic article titled "Arizona Fines Provider of Prison Health Care," written by Craig Harris, published on September 28, 2012, attached as Exhibit A, and available online at http://www.azcentral.com/news/articles/2012/09/28/20120928arizona-fines-provider-prison-health-care.html.  This production should include ADC's correspondence to Wexford as well as any internal documentation or correspondence relating to that correspondence.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS REGARDING COMMUNICATIONS, including the COMMUNICATIONS themselves, from ADC to Wexford Health Sources, Inc. on or about September 28, 2012, pertaining in any part to deficiencies ADC has perceived in Wexford's delivery of health care.  This production should include the letter notifying Wexford that Wexford has until October 22, 2012 to respond to ADC's letter of September 21, 2012 referenced in the Arizona Republic article titled "Arizona Fines

Provider of Prison Health Care," written by Craig Harris, published on September 28, 2012, attached as Exhibit A, and available online at http://www.azcentral.com/news/articles/2012/09/28/20120928arizona-fines-provider-prison-health-care.html.   This production should include ADC's correspondence to Wexford as well as any internal documentation or correspondence relating to that correspondence.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS REGARDING COMMUNICATIONS, including the COMMUNICATIONS themselves, from Wexford Health Sources, Inc. to ADC.   This production should include the letter from Wexford to Charles Ryan pertaining to deficiencies Wexford perceived in the prior existing ADC health care system and referenced in the Arizona Republic article titled "Arizona Fines Provider of Prison Health Care," written by Craig Harris, published on September 28, 2012, attached as Exhibit A, and available online at http://www.azcentral.com/news/articles/2012/09/28/20120928arizona-fines-provider-prison-health-care.html.   This production should include Wexford's correspondence to ADC as well as any internal documentation or correspondence relating to that correspondence that is available to Defendants.

**REQUEST FOR PRODUCTION NO. 11:**

All other DOCUMENTS, COMMUNICATIONS, audits, evaluations, internal correspondence, memoranda, minutes, and/or "cure notices" REGARDING in any part deficiencies that ADC has perceived in Wexford's delivery of health care.

Plaintiffs note that these documents should have been produced previously as responsive to topics 3-6 of the 30(b)(6) Deposition Duces Tecum that was noticed on August 9, 2012, docketed as document 76, and responded to by Defendants on August 27, 2012 with a promise to produce all responsive documents.

1    **REQUEST FOR PRODUCTION NO. 12:**

2        All DOCUMENTS and COMMUNICATIONS REGARDING any attempted or

3    completed suicide at any ADC facility in Florence, Arizona between August 20, 2012 and

4    September 3, 2012.

5

6    **REQUEST FOR PRODUCTION NO. 13:**

7        All DOCUMENTS, in particular but not exclusively including photographs and

8    video recordings, REGARDING, depicting, or documenting the physical or mental

9    condition of Victor Parsons, Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia

10   Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne

11   Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, or Charlotte Wells after any of

12   these persons sustained an injury.

13

14   **REQUEST FOR PRODUCTION NO. 14:**

15       All DOCUMENTS that refer or relate to topics 1-16 listed on pages 8-9 of the

16   Notice of 30(b)(6) Deposition Duces Tecum, filed August 28, 2012, docketed as

17   document 98.  These DOCUMENTS should in particular but not exclusively include all

18   the records and reports for the period including January 1, 2011 through October 1, 2012

19   mentioned by Dr. Michael Adu-Tutu during his October 1, 2012 deposition, such as

20   agreements with outside dental providers (including "pool" providers and "registry"

21   providers), notes or memoranda REGARDING Dr. Adu-Tutu's conferences with ADC

22   STAFF, notes or memoranda REGARDING ADC's evaluation of the proposals submitted

23   in response to ADC's Request for Proposal Number ADOC12-00001105, notes or

24   memoranda REGARDING Dr. Adu-Tutu's efforts to recruit dental and other medical

25   providers, notes or memoranda REGARDING exit interviews with dental staff, quality

26   management reports, staffing reports, wait time reports, and equipment maintenance

27   reports.

28

1    Plaintiffs note that these documents should have been produced previously as

2   responsive to 30(b)(6) Deposition Duces Tecum filed August 28, 2012.

3   Dated: October 12, 2012                **PERKINS COIE LLP**

4

5                                          By:   s/ Matthew B. du Mée
                                               Daniel C. Barr (Bar No. 010149)
6                                              Jill L. Ripke (Bar No. 024837)
                                               James A. Ahlers (Bar No. 026660)
7                                              Kirstin T. Eidenbach (Bar No. 027341)
                                               John H. Gray (Bar No. 028107)
8                                              Thomas D. Ryerson (Bar No. 028073)
                                               Matthew B. du Mée (Bar No. 028468)
9                                              2901 N. Central Avenue, Suite 2000
                                               Phoenix, Arizona 85012
10                                             Telephone:  (602) 351-8000
                                               Email:    dbarr@perkinscoie.com
11                                                       rjipke@perkinscoie.com
                                                         jahlers@perkinscoie.com
12                                                       keidenbach@perkinscoie.com
                                                         jhgray@perkinscoie.com
13                                                       tryerson@perkinscoie.com
                                                         mdumee@perkinscoie.com

14                                             Daniel Pochoda (Bar No. 021979)
                                               Kelly J. Flood (Bar No. 019772)
15                                             James Duff Lyall (Bar No. 330045)*
                                               **ACLU FOUNDATION OF**
16                                             **ARIZONA**
                                               3707 North 7th Street, Suite 235
17                                             Phoenix, Arizona 85013
                                               Telephone:  (602) 650-1854
18                                             Email:    dpochoda@acluaz.org
                                                         kflood@acluaz.org
19                                                       jlyall@acluaz.org

20                                             *Admitted pursuant to Ariz. Sup. Ct.
                                               R. 38(f)

21

22

23

24

25

26

27

28

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:     dspecter@prisonlaw.com
           ahardy@prisonlaw.com
           snorman@prisonlaw.com
           ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
**ACLU NATIONAL PRISON
PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@npp-aclu.org
           afettig@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted
  in DC; practice limited to federal
  courts.
**Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:     cnmitchell@jonesday.com
           dkiernan@jonesday.com
           scalderon@jonesday.com
           srauh@jonesday.com

*Admitted *pro hac vice*

R. Scott Medsker (D.C. 976405)*
**JONES DAY**
51 Louisiana Avenue, NW
Washington, D.C. 20001-2113
Telephone:  (202) 879-3837
Email:     rsmedsker@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:     jlwilkes@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:     kmamedova@jonesday.com
              jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Victor Parsons;
Shawn Jensen; Stephen Swartz; Dustin
Brislan; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

1    **CERTIFICATE OF SERVICE**

2         I hereby certify that on October 12, 2012, I electronically transmitted the above

3    document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4    Notice of Electronic Filing to the following CM/ECF registrants:

5
                                    Michael E. Gottfried
6                              Assistant Arizona Attorney General
                                Michael.Gottfried@azag.gov
7
                                     Daniel P. Struck
8                                   Kathleen L. Wieneke
                                   Timothy J. Bojanowski
9                                      Rachel Love
                                    Nicholas D. Acedo
10                                   Courtney R. Cloman
                                    Ashlee B. Fletcher
11                                    Anne M. Orcutt
                             STRUCK WIENEKE, & LOVE, P.L.C.
12                                 dstruck@swlfirm.com
                                   kwieneke@swlfirm.com
13                               tbojanowski@swlfirm.com
                                    rlove@swlfirm.com
14                                  nacedo@swlfirm.com
                                   ccloman@swlfirm.com
15                                 afletcher@swlfirm.com
                                    aorcutt@swlfirm.com
16
                                 *Attorneys for Defendants*
17

18
                                    Jennifer Alewelt
19                                     Asim Varma
                                      Sarah Kader
20                        ARIZONA CENTER FOR DISABILITY LAW
                              jalewelt@azdisabilitylaw.org
21                             avarma@azdisabilitylaw.org
                               skader@azdisabilitylaw.org
22
                    *Attorneys for Arizona Center for Disability Law*
23

24                                    s/ Delana Freouf
                            _____
25

26

27

28

# EXHIBIT 3

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: dpochoda@acluaaz.org;
        kflood@acluaz.org
        jlyall@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Victor Parsons, Shawn Jensen,
Stephen Swartz, Dustin Brislan, Sonia Rodriquez,
Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert
Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner,
Joshua Polson, and Charlotte Wells, on behalf of
themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON
 SIGNATURE PAGE]**

Jennifer Alewelt (Bar No. 027366)
Ruth Szanto (Bar No. 029073)
Asim Varma (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: jalewelt@azdisabilitylaw.org
        rszanto@azdisabilitylaw.org
        avarma@azdisabilitylaw.org
*Attorneys for Plaintiff Arizona Center of Disability Law*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriquez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-NVW (MEA) <br><br><br> **PLAINTIFF VICTOR ANTONIO PARSONS' FIRST SET OF INTERROGATORIES TO DEFENDANTS** |

1

2          Propounding Party:  Victor Antonio Parsons

3          Responding Party:   Defendants

4     Pursuant to Rule 33 of the Federal Rules of Civil Procedure, plaintiff <u>Victor</u>

5 <u>Antonio Parsons,</u> by and through undersigned counsel,  hereby requests that defendants

6 respond, under oath, to the following interrogatories  within thirty (30) days.

7 **DEFINITIONS**

8     For purposes of these interrogatories, the following definitions shall apply:

9     1.    "ADC" means the Arizona Department of Corrections, including all its

10 subdivisions, agents, employees, CONTRACTORS, and attorneys.

11     2.    "ADC STAFF" means all persons employed by ADC, including

12 "CORRECTIONAL STAFF" and "HEALTH CARE STAFF."

13     3.    "COMPLAINTS" means any DOCUMENTS, formal or informal,

14 REGARDING specific or general problems, issues, deficiencies, unanswered questions,

15 challenges, shortcomings, disagreements, or requests brought to the attention of the ADC

16 or any ADC STAFF.

17     4.    "CONDITIONS OF CONFINEMENT" means all circumstances

18 REGARDING the state of being imprisoned.

19     5.    "CONTRACTOR" means "LOCUM TENENS CONTRACTOR" and

20 "SPECIALTY CONTRACTOR."

21     6.    "CORRECTIONAL STAFF" means custody staff employed or paid by the

22 ADC to serve in a security or operational capacity.

23     7.    "DESCRIBE" and "DESCRIPTION" means to provide all available

24 INFORMATION.

25     8.    "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule

26 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or

27 record of every type and DESCRIPTION and every tangible thing that is or has been in

28 the possession, custody, or control of DEFENDANTS and the ADC, to which they have

access, or of which they have knowledge, including, but not limited to, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys, MINUTES, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device). "DOCUMENT" and "DOCUMENTS" includes, but is not limited to, all DOCUMENTS generated by or maintained in the Director's Project Tracking System, official ADC papers, and the ADC's intranet.

9.      "ENTRY-LEVEL PRACTITIONERS" means unlicensed persons who provide HEALTH CARE to PRISONERS at the ADC subordinate to MID-EVEL PRACTITIONERS or HEALTH CARE CLINICIANS

10.     "HEALTH CARE" means the provision of care, including adequate diet, to address the mental health, medical, or dental needs of a PRISONER, whether those needs arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic or preventive purposes.

11.     "HEALTH CARE APPLIANCES" are assistive devices or medical support equipment prescribed for a PRISONER.  Health care appliances include but are not limited to durable medical equipment, prosthetic and orthotic appliances, eyeglasses, hearing aids, prosthetic eyes, and dentures.

12.     "HEALTH CARE CLINICIANS" means persons independently licensed to provide HEALTH CARE to PRISONERS at the ADC facilities, including but not limited to M.D., D.O., D.D.S., and Ph.D. credentialed staff.

13.     "HEALTH CARE STAFF" means all staff employed or paid by the ADC, LOCUM TENENS CONTRACTORS, or SPECIALTY CONTRACTORS (other than CORRECTIONAL STAFF) who are responsible for providing HEALTH CARE to ADC PRISONERS, including but not limited to HEALTH CARE CLINICIANS, MID-LEVEL PRACTITIONERS, ENTRY-LEVEL PRACTITIONERS, PHARMACISTS, and administrative and support staff.

14.     "HOSPITALIZED PRISONER" means any PRISONER who is sent to a hospital or other off-site medical or mental health facility, or who is admitted to an on-site hospital, while in the custody of the ADC.

15.     "IDENTIFY" and "IDENTIFICATION" with respect to (a) a PRISONER or former PRISONER, means to state the PRISONER'S full name, ADC number, date of birth, current or most recent mental health score (MH-1 through MH-5), medical score (M-1 through M-5), public risk score, institutional risk score, and current housing location (if still in ADC custody) or last known address and telephone number (if no longer in ADC custody); (b) a person other than a PRISONER or former PRISONER, means to state the person's full name and specify whether or not the person is or has been an ADC STAFF member, and if so, to state the staff member's position title, facility location, work schedule, responsibilities, date ADC employment began, date ADC employment terminated, dates of any changes in position titles or responsibilities, DESCRIPTIONS of any changes in position titles or responsibilities and, if the person is not currently employed by ADC, the person's last known address and telephone number; and (c) a third-party contractor or entity means to state the name of the contractor or entity, the type of entity (*e.g.*, corporation, partnership, etc.); its address and telephone number; and any persons YOU are aware of who acted on behalf of that contractor or entity with respect to the events at issue in the discovery request; (d) IDENTIFY in any other context means to provide as much INFORMATION REGARDING the thing to be identified as is in the possession of DEFENDANTS or the ADC.

16.    "INFORMATION" means any knowledge YOU have, any evidence of any type, any facts of which YOU are aware and any inferences or speculation of which YOU are aware, all regardless of the source.  When INFORMATION YOU provide is based solely on inference or speculation, specifically so state in YOUR response.  When providing INFORMATION, provide the names of involved individuals, actions relevant to the requested INFORMATION, dates and times when known, locations, and any other knowledge YOU have about the subject of the discovery request.  When asked to provide INFORMATION about one or more individuals, IDENTIFY the individual or individuals and provide any other INFORMATION YOU have about such person or persons.

17.    "LOCUM TENENS CONTRACTOR" means any person or entity contracting with ADC to provide HEALTH CARE to ADC PRISONERS.

18.    "MID-LEVEL PRACTITIONERS" means licensed professionals who provide HEALTH CARE to PRISONERS at the ADC under supervision by HEALTH CARE CLINICIANS.

19.    "MINUTES" means notes or any other recording reflecting the content of a meeting, whether written contemporaneously with or subsequent to the meeting.

20.    "OUTDOOR EXERCISE" means periods during which PRISONERS are permitted to exercise in the outdoors.

21.    "PHARMACIST" means a professional who practices pharmacy.

22.    "POLICIES AND PROCEDURES" means policies, procedures, criteria, or practices, whether written or established through custom or use, including but not limited to policy and procedure manuals, directors' orders, protocols, directives, flowcharts, institution post orders, and any other DOCUMENTS designed to direct the actions of ADC personnel, ADC CONTRACTORS, and/or PRISONERS.

23.    "PRISONER" means a person incarcerated by the ADC.

24.    "QUALITY ASSURANCE" means any activities implemented for the purpose of examining, assessing, evaluating, investigating, analyzing, or identifying the quality of a product or service.

25.     "REGARDING" or "REGARDED" to any given subject matter means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers to, relates to, responds to, states, summarizes, or is in any way relevant to the particular subject matter identified.

26.     "RESPONSE DATE" means date upon which YOU respond to these discovery requests, or, if YOU amend or supplement YOUR response, the date of YOUR amendment or supplement.

27.     "SPECIALTY CONTRACTOR" means any person or entity contracting with the ADC to provide HEALTH CARE to PRISONERS who is not a LOCUM TENENS CONTRACTOR.

28.     "YOU," "YOUR," "YOURSELF," and "DEFENDANTS" means defendants Charles Ryan and Richard Pratt, and their predecessors, successors, employees, subordinates, CONTRACTORS, agents, and attorneys.

## INSTRUCTIONS

1.     Each interrogatory shall be answered fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable.

2.     The answers are to be signed by the person making them, and the objections signed by the attorney making them.

3.     If only a part of an interrogatory is objectionable, the remainder of the interrogatory shall be answered.  If an objection is made to an interrogatory or to a part of an interrogatory, the specific ground for the objection shall be set forth clearly in the response.

4.     The following rules of construction shall be applied herein: (1) the words "and" or "or" shall be construed conjunctively or disjunctively as necessary to make the requests inclusive rather than exclusive; (2) the singular includes the plural and vice-

versa; and (3) the words "any," "all," "each" and "every" all include any, all, each, and every.

5.    Each term used in these Interrogatories that is not set forth in the "Definitions" section above has the broadest and most complete meaning permitted under the Federal Rules of Civil Procedure and the applicable case law.  If any Interrogatory contains a term (or terms) that YOU believe is (or are) unclear or ambiguous, YOU should assume a reasonable meaning for such term(s), state what that meaning is, and answer that Interrogatory on the basis of the assumed meaning.

6.    All INFORMATION requested herein is to be set forth if it is in the possession, custody, or control of, or is available or accessible to YOU or any of YOUR agents, consultants, counsel, investigators, representatives, or any other person or persons acting for you or on YOUR behalf.

7.    If any INFORMATION called for by an interrogatory is withheld on the basis of claim of privilege, set forth the nature of the claimed privilege and the nature of the INFORMATION with respect to which it is claimed.

8.    If these requests cannot be responded to in full, YOU shall respond to the extent possible, specify the reason for YOUR inability to respond to the remainder, and state whatever INFORMATION or knowledge YOU have REGARDING the portion to which YOU have not responded.

9.    Unless otherwise specified, the relevant time period, and the period for which YOU are required to provide responsive DOCUMENTS, is from and including January 1, 2011,  up to and including the RESPONSE DATE.

10.    These Interrogatories are submitted for the purpose of discovery and are not to be construed as waiving any objections that may be made at trial or at any hearing to the introduction of evidence on subjects covered by these Interrogatories or as an admission of the relevance or materiality at trial of any of the matters covered by these Interrogatories.

11.     These Interrogatories are continuing in nature; responses should be promptly supplemented pursuant to Federal Rule of Civil Procedure 26(e).

12.     If DEFENDANTS exercise their option to produce DOCUMENTS or other writings pursuant to Fed. R. Civ. P. 33(d), DEFENDANTS shall comply with the Instructions set forth in plaintiffs' First Set of Requests for Production relating to the form of and procedure for producing DOCUMENTS.  In addition, for any responses pursuant to Fed. R. Civ. P. 33(d), DEFENDANTS shall provide a copy of that DOCUMENT or make it available for inspection, provide a DESCRIPTION of the location where the DOCUMENT was found, indicate to which interrogatory it is responsive, and specify the DOCUMENTS' bates range.  If the DOCUMENT is made available for inspection, DEFENDANTS shall afford the plaintiffs a reasonable opportunity to examine, audit, or inspect the DOCUMENT and to make copies, compilations, abstracts, or summaries of it.

## INTERROGATORIES

### IDENTIFYING PERSONS AND ENTITIES

**INTERROGATORY NO. 1:**

IDENTIFY all persons, including but not limited to any persons in managerial or supervisory positions, responsible for researching, drafting, establishing, monitoring, and enforcing the HEALTH CARE POLICIES AND PROCEDURES that were in effect at the ADC between January 1, 2011 and the RESPONSE DATE.

**INTERROGATORY NO. 2:**

IDENTIFY all persons responsible for any budgeting, budget requests, or budgetary matters relating to HEALTH CARE services, whether system-wide or facility specific, in fiscal year 2012 or fiscal year 2013.

**INTERROGATORY NO. 3:**

IDENTIFY all LOCUM TENENS CONTRACTORS, SPECIALTY CONTRACTORS, professionals, clinics, and institutions who provided HEALTH CARE to PRISONERS between January 1, 2011 and the RESPONSE DATE.

-7-

**INTERROGATORY NO. 4:**

IDENTIFY all persons at Wexford Health Sources Incorporated who are responsible for implementing contracts REGARDING ADC.

**INTERROGATORY NO. 5:**

IDENTIFY all persons, including but not limited to HEALTH CARE STAFF, CORRECTIONAL STAFF, CONTRACTORS, and state employees, involved in the development and implementation of QUALITY ASSURANCE of HEALTH CARE between January 1, 2011 and the RESPONSE DATE.

## POLICIES AND PROCEDURES

**INTERROGATORY NO. 6:**

DESCRIBE all ADC POLICIES AND PROCEDURES, which are not committed to writing, REGARDING the provision of HEALTH CARE to PRISONERS.  YOUR response should include, but not be limited to, each material element of the POLICIES AND PROCEDURES, the process through which the ADC formulated them, and the identities of the persons responsible for implementing them.

## PRESCRIPTION OR TREATMENT PLAN

**INTERROGATORY NO. 7:**

DESCRIBE under what circumstances a HEALTH CARE CLINICIAN's OR MID-LEVEL PRACTITIONER's prescription or treatment plan could be cancelled, overridden, or otherwise not carried out in the time period before Wexford Health Sources Incorporated's obligations under its contract REGARDING ADC began.

**INTERROGATORY NO. 8:**

DESCRIBE all circumstances under which a HEALTH CARE CLINICIAN's OR MID-LEVEL PRACTITIONER's prescription or treatment plan can be cancelled, overridden, or otherwise not carried out in the time period after Wexford Health Sources Incorporated's obligations under its contract REGARDING ADC began.

**INTERROGATORY NO. 9:**

DESCRIBE all circumstances under which a prescription or treatment plan issued

-8-

by any LOCUM TENENS CONTRACTOR, SPECIALTY CONTRACTOR, or other external provider of HEALTH CARE could be cancelled, overridden, or otherwise not carried out in the time period before Wexford Health Sources Incorporated's obligations under its contract REGARDING ADC began.

**INTERROGATORY NO. 10:**

DESCRIBE under what circumstances a prescription or treatment plan issued by any LOCUM TENENS CONTRACTOR, SPECIALTY CONTRACTOR, or other external provider of HEALTH CARE can be cancelled, overridden, or otherwise not carried out in the time period after Wexford Health Sources Incorporated's obligations under its contract REGARDING ADC began.

## IDENTIFYING PRISONERS

**INTERROGATORY NO. 11:**

IDENTIFY each PRISONER who had a diagnosis of one or more of the following CHRONIC CONDITIONS:  hypertension, COPD, kidney disease, diabetes, hepatitis C, HIV/AIDS, other autoimmune diseases, hyperlipidemia, asthma, cancer, neurodegenerative diseases, epilepsy, periodontal disease and other similarly long-term conditions at any time between January 1, 2011 and the RESPONSE DATE.  Include each PRISONER'S diagnoses, the medication(s) currently prescribed to the PRISONER, and, for each such medication, the dosage prescribed.

**INTERROGATORY NO. 12:**

IDENTIFY each HOSPITALIZED PRISONER between January 1, 2011 and the RESPONSE DATE, including the facility where the PRISONER was hospitalized, dates of admission to and discharge from the hospital, and primary reason for hospitalization.

**INTERROGATORY NO. 13:**

IDENTIFY all PRISONERS who requested or were prescribed HEALTH CARE APPLIANCES between January 1, 2011 and the RESPONSE DATE, including but not limited to wheelchairs, crutches, prosthetics, canes, walkers, braces, slings, hearing aids, eyeglasses, prosthetic eyes, or dentures, and did not receive them within 6 weeks of the

prescription.

**INTERROGATORY NO. 14:**

IDENTIFY all PRISONERS who have experienced adverse reaction(s) to medication(s) prescribed by HEALTH CARE STAFF between January 1, 2011 and the RESPONSE DATE.

**INTERROGATORY NO. 15:**

IDENTIFY all PRISONERS who died while in the custody of the ADC between January 1, 2007 and the RESPONSE DATE, and specify the facility and county in which the PRISONER died.

1

2    Dated:  June 15, 2012                    **JONES DAY**

3

4                                             By: _Caroline Mitchell_____

5                                             Caroline Mitchell (Cal. 143124)*
                                              Ilham Hosseini (Cal. 256274)*
6                                             Sophia Calderon (Cal. 278315)*
                                              **JONES DAY**
7                                             555 California Street, 26th Floor
                                              San Francisco, California 94104
8                                             Telephone:  (415) 875-5712
                                              Email:    cnmitchell@jonesday.com
9                                                       ihosseini@jonesday.com
                                                        scalderon@jonesday.com
10

11                                            *Admitted *pro hac vice*

12                                            Attorneys for Defendants

13                                            Daniel J. Pochoda (Bar No. 021979)
                                              Kelly J. Flood (Bar No. 019772)
14                                            James Duff Lyall (Bar No. 330045)*
                                              **ACLU FOUNDATION OF**
15                                            **ARIZONA**
                                              3707 North 7th Street, Suite 235
16                                            Phoenix, Arizona 85013
                                              Telephone:  (602) 650-1854
17                                            Email:    dpochoda@acluaz.org;
                                                        kflood@acluaz.org
18                                                      jlyall@acluaz.org

19                                            *Admitted pursuant to Ariz. Sup. Ct.
20                                            R. 38(f)

21                                            Donald Specter (Cal. 83925)*
                                              Alison Hardy (Cal. 135966)*
22                                            Sara Norman (Cal. 189536)*
                                              Corene Kendrick (Cal. 226642)*
23                                            **PRISON LAW OFFICE**
                                              1917 Fifth Street
24                                            Berkeley, California 94710
                                              Telephone:  (510) 280-2621
25                                            Email:    dspecter@prisonlaw.com
                                                        ahardy@prisonlaw.com
26                                                      snorman@prisonlaw.com
                                                        ckendrick@prisonlaw.com
27

28                                            *Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:   dfathi@npp-aclu.org
         afettig@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted
  in DC; practice limited to federal
  courts.
**Admitted *pro hac vice*
Daniel C. Barr (Bar No. 010149)
Jill L. Ripke (Bar No. 024837)
James A. Ahlers (Bar No. 026660)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Thomas D. Ryerson (Bar No. 028073)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:   dbarr@perkinscoie.com
         rjipke@perkinscoie.com
         jahlers@perkinscoie.com
         keidenbach@perkinscoie.com
         jhgray@perkinscoie.com
         tryerson@perkinscoie.com
         mdumee@perkinscoie.com

*Attorneys for Plaintiffs Victor Parsons;
Shawn Jensen; Stephen Swartz; Dustin
Brislan; Sonia Rodriquez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

1

2 **ARIZONA CENTER FOR DISABILITY LAW**

3

4 Jennifer Alewelt
Ruth Szanto
Asim Varma

5 5025 East Washington Street, Suite 202
Phoenix, Arizona 85034

6 Telephone:  (602) 274-6287
Email:     jalewelt@azdisabilitylaw.org

7 rszanto@azdisabilitylaw.org
avarma@azdisabilitylaw.org

8 *Attorneys for Plaintiff Arizona Center for*

9 *Disability Law*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-13-

1

2

### CERTIFICATE OF SERVICE

3    I hereby certify that on June 15, 2012, I served the foregoing document by mail on

4  the following:

5

6    Arizona Attorney General Thomas C. Horne
     Office of the Attorney General
     Michael E. Gotfried

7    Assistant Attorney General
     1275 W. Washington Street

8    Phoenix, AZ  85007-2926
     Telephone: 602-542-4951

9    Facsimile: 602-542-7670

10   Daniel P. Struck
     Kathleen L. Wieneke

11   Timothy J. Bojanowski
     Nicholas D. Acedo

12   Courtney R. Cloman
     Ashlee B. Fletcher

13   Struck Wieneke & Love, PLC
     3100 West Ray Rd., Ste. 300

14   Chandler, AZ  85226
     Telephone: 480-420-1600

15   Facsimile 480-420-1696

16

17

18

19                                           Sophia Calderón

20   SFI-735995v1

21

22

23

24

25

26

27

28

-14-

# EXHIBIT 4

## Fathi, David

| | |
|---|---|
| **Subject:** | FW: Letter re: Discovery  - PARSONS v. RYAN |
| **Importance:** | High |

---

**From:** Rand, Lucy [mailto:Lucy.Rand@azag.gov]
**Sent:** Thursday, September 12, 2013 1:32 PM
**To:** Fettig, Amy
**Cc:** Gottfried, Michael; 'SW&L Parsons Team (ParsonsTeam@swlfirm.com)'
**Subject:** RE: Letter re: Discovery - PARSONS v. RYAN

Amy,

This e-mail is to advise you that Defendants will not be providing any supplemental discovery responses to discovery directed to Defendant Parsons because Parson was dismissed as a party from this lawsuit on March 6, 2013.

Lucy

Lucy M. Rand, AAG
Office of the Attorney General
(602) 542-7683 Direct

The information contained in this e-mail message is privileged and confidential, intended only for the use of the specific individuals and/or entities to which it is addressed.  If you are not one of the intended recipients, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you received this communication in error, please immediately notify the sender by return e-mail or call (602) 542-7683.  Thank you.

---

**From:** Rand, Lucy
**Sent:** Wednesday, September 11, 2013 6:04 PM
**To:** Amy Fettig (afettig@npp-aclu.org)
**Cc:** Gottfried, Michael; SW&L Parsons Team (ParsonsTeam@swlfirm.com)
**Subject:** Letter re: Discovery - PARSONS v. RYAN

Amy,

See attached letter.

Sincerely,
Lucy

Lucy M. Rand,
Assistant Attorney General
**OFFICE OF THE ATTORNEY GENERAL**
Department of Corrections Unit
Liability Management Section
1275 West Washington Street
Phoenix, AZ 85007-2926
**(602) 542-7683 Direct**
(602) 542-7635 Secretary