**TABLE OF EXHIBITS**

| EXH. | DESCRIPTION |
|:---:|---|
| A | Letter from Amy Fettig to Lucy Rand dated September 5, 2013 |
| B | Letter from David Fathi to Lucy Rand dated September 25, 2013<br>Supplemental Letter from David Fathi to Lucy Rand dated September 25, 2013 |
| C | Plaintiff Desiree Licci's First Set of Requests for Production of Documents to Defendants dated August 13, 2013 |

# EXHIBIT A

AMERICAN CIVIL LIBERTIES UNION

## VIA EMAIL ONLY

September 5, 2013

Lucy M. Rand, AAG
Office of the Arizona Attorney General
Department of Corrections Unit
Liability Management Section
1275 West Washington Street
Phoenix, AZ 85007-2926

### *Re: Parsons v. Ryan Supplemental Discovery Production*

AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

Dear Ms. Rand:

I am writing regarding Plaintiffs' discovery requests and the need for both responses and supplementation of the same. Plaintiffs have reviewed Defendants' discovery responses to the various pending requests in this matter and have identified a narrowed list of requests that require response and supplementation. Each request is identified and set forth below. Where possible we have also narrowed the scope of these requests or specifically waived further supplementation.

## PLAINTIFF JOSHUA POLSON'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST FOR PRODUCTION NO. 1
All DOCUMENTS regarding CONDITIONS OF CONFINEMENT for prisoners on SUICIDE WATCH.

- In response to this request, Defendants have produced Departmental Orders, the Mental Health Technical Manual, forms, a training document and POs from some units. However, POs from units, such as Eyman, Florence, and Perryville, have not been produced. Plaintiffs request supplementation of this RFP or Defendants' confirmation that no further responsive documents exist.

### REQUEST FOR PRODUCTION NO. 2
All POLICIES AND PROCEDURES regarding MANAGEMENT OR TREATMENT of prisoners on SUICIDE WATCH, including but not limited to required frequency of contact with psychiatrists and other HEALTH CARE STAFF and CORRECTIONAL STAFF.

- In response to this request Defendants have produced Departmental Orders, forms and POs for all prison complexes except for Perryville.

1

Plaintiffs request supplementation of this RFP to include the PO from Perryville and any other responsive documents or confirmation that no further responsive documents exist.

**REQUEST FOR PRODUCTION NO. 3**
All DOCUMENTS, including but not limited to POLICIES AND PROCEDURES, regarding USE OF FORCE or RESTRAINT by ADC staff on PRISONERS on SUICIDE WATCH and prisoners who are CLASSIFIED as "SERIOUSLY MENTALLY ILL," "SEVERELY MENTALLY ILL," MH-1 THROUGH MH-5, or any OTHER MENTAL HEALTH CLASSIFICATION employed by the ADC.

- Defendants have produced no documents in response to this request but have indicated that they "are still attempting to locate additional responsive documents and will supplement this response as they are located." Plaintiffs request documents responsive to this RFP.

**REQUEST FOR PRODUCTION NO. 10**
All POLICIES AND PROCEDURES regarding the PROVISION of HEALTH CARE to prisoners classified as "SERIOUSLY MENTALLY ILL," "SEVERELY MENTALLY ILL," MH-1 THROUGH MH-5, or any OTHER MENTAL HEALTH CLASSIFICATION employed by the ADC while housed in ISOLATION, including but not limited to required FREQUENCY OF CONTACT with PSYCHIATRISTS or other health care staff; MONITORING of prisoners for ADVERSE MENTAL HEALTH EFFECTS of ISOLATION; and the REMOVAL of prisoners SUFFERING ADVERSE HEALTH EFFECTS of ISOLATION.

- Defendants have failed to produce any policies or procedures in response to this request regarding specific mental health programs provided to prisoners at SMU I, Browning, Florence Central, Florence Kasson, or Perryville – Lumley SMA. Plaintiffs request supplementation. Plaintiffs note that some policy documents were produced by Unit staff during Plaintiffs' expert tours but have not yet been produced through discovery.
- Plaintiffs also note that a PO from Tucson is listed as responsive to this request but POs from units, such as Eyman, Florence, and Perryville, have not been produced. Plaintiffs request supplementation of this RFP or Defendants' confirmation that no further responsive documents exist.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

2

**REQUEST FOR PRODUCTION NO. 15**
All "703 INSPECTION REPORTS" or other monthly reports generated
pursuant to ADC Department Orders at the ISOLATION units since January 1,
2011.

- Defendants have only produced reports for Eyman, Lewis and Florence
  for April 2011 and Eyman and Florence for January of 2012. Plaintiffs
  request supplementation of this request to include reports from January
  1, 2013 to August 2013, or affirmation that no further responsive
  documentation exists.

**REQUEST FOR PRODUCTION NOs. 16 & 17**
All MEETING MINUTES produced for periodic STAFF MEETINGS and/or
UNIT MANAGEMENT MEETINGS at ISOLATION units since January 1,
2011.

All MEETING MINUTES produced for periodic meetings between
WARDENS at ISOLATION units and their EXECUTIVE STAFF since
January 1, 2011.

- Defendants produced some documents responsive to these requests and
  indicated that they are still attempting to locate additional responsive
  documents. Plaintiffs request supplementation for ASPC - Florence
  after February 2013; ASPC- Perryville after March 22, 2013; ASPC-
  Eyman, Browning Unit after December 28, 2012; and ASPC-Eyman,
  SMU I unit after January 27, 2012.

**REQUEST FOR PRODUCTION NO. 18**
Copies of CORRECTIONAL JOURNALS maintained by each ISOLATION
Unit for the last year.

- Plaintiffs agreed to limit this request to specific dates due to the volume
  of a full year of Correctional Journals. We request a single week of
  said journals from June 6-16, 2013 for Florence Central Unit;
  Perryville-Lumley SMA; Eyman Browning Unit; and Eyman SMU I.

**REQUEST FOR PRODUCTION NO. 19**
All DOCUMENTS DESCRIBING or DEPICTING the CELL SIZE, PLAN,
FURNITURE, FIXTURES, DOORS, and WINDOWS in the ISOLATION
units, including the variations, if any, in the cells in the particular ISOLATION
units.

- In response to this request Defendants have produced diagrams of
  Eyman SMU I, Eyman Browning, and Rynning. Defendants have also

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

referred to Interrogatory response No. 10 to Plaintiff Wells' First Set of Interrogatories. Plaintiffs request supplementation of this RFP to include diagrams of Florence Central Unit and Perryville-Lumley SMA or confirmation that no further responsive documents exist.

**REQUEST FOR PROCUTION NO. 21:** All DOCUMENTS, POLICIES & PROCEDURES regarding the OPERATION OF, CONDITIONS of CONFINEMENT in, and MENTAL HEALTH CARE PROGRAMS at, all of the units described in the memorandum to Charles Ryan from Robert Patton and Richard Pratt dated April 30, 2012, entitled "Increase of Mental Health for Max Custody"

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

- Defendants produced general Departmental Orders and the Mental Health Technical Manual in response to this request but have failed to produce any policies or procedures regarding the specific mental health programs set forth in in the 4/30/12 Ryan memo, including SMU I, Browning, Florence Central, Florence Kasson, or Perryville – Lumley SMA . Plaintiffs request supplementation of this RFP or Defendants' confirmation that no further responsive documents exist.

**REQUEST FOR PRODUCTION NO. 22**
All documents regarding the USE OF FORCE or RESTRAINTS in the ISOLATION units for the last two years.

- Plaintiffs have narrowed this request. Using the Morning Reports produced by Defendants in response to this request and Swartz RFP No. 9, Plaintiffs have been able to narrow our request for Use of Force/Incident Management Reports (Form 804-2) and all underlying documents regarding use of force and restraints to particular use of force incidents at the Florence Central Unit, Lumley, Eyman Browning & SMU I units identified in the morning reports. **Please see *Appendix A*** to this letter which includes tables for each unit that set forth the name and number of the prisoner involved in the use of force/restraint incident, the corresponding SIR report #, and the date of the incident/SIR report.

**REQUEST FOR PRODUCTION NO. 24**
All INSTITUTION ORDERS regarding FOOD SERVICE MAINTAINED or DEVELOPED by WARDENS or OTHER ADMINISTRATIVE STAFF at the ISOLATION units as referenced in Departmental Order 912, Food Service (effective date January 28, 2009) at p. 4 (ADC013141).

- Defendants have produced no documents in response to this request but have indicated that they "are still attempting to locate additional

4

responsive documents and will supplement this response as they are located." Plaintiffs request documents responsive to this RFP.

**REQUEST FOR PRODUCTION NO. 26**
All INFORMATION REPORTS or OTHER DOCUMENTS generated since January 1, 2011 that document MISSED MEALS on the ISOLATION units.

- Defendants have produced some Information Reports responsive to this request. Plaintiffs request supplementation of this RFP or Defendants' confirmation that no further responsive documents exist.

**REQUEST FOR PRODUCTION NO. 27**
All documents regarding any NUTRITIONAL ANALYSIS of the DIET served to prisoners in ISOLATION units.

- Defendants have produced some documents responsive to this request including policies, requests for proposals, and contracts with food vendors but no documents specific to the ISOLATION UNITS. Plaintiffs request documents responsive to this RFP or Defendants' confirmation that no further responsive documents exist.

**REQUEST FOR PRODUCTION NO. 28**
All INFORMATION REPORTS and OTHER DOCUMENTS generated at ISOLATION units in the last two years regarding the CANCELLATION or TRUNCATION of OUTDOOR EXERCISE.

- Defendants have produced some reports in response to this request but have indicated that they "are still attempting to locate additional responsive documents and will supplement this response as necessary." Plaintiffs request documents responsive to this RFP.

**REQUEST FOR PRODUCTION NO. 30**
All ADC POST ORDERS, including general Post Orders that apply across ADC and facility-specific Post Orders, related to the provision of OUTDOOR EXERCISE to prisoners in ISOLATION.

- Defendants have produced no documents in response to this request but have indicated that they "are still attempting to locate additional responsive documents and will supplement this response as they are located." Plaintiffs request documents responsive to this RFP.

**REQUEST FOR PRODUCTION NO. 32**
All ADC POST ORDERS, including general Post Orders that apply across ADC and facility-specific Post Orders, regarding HEALTH AND WELFARE CHECKS and MENTAL HEALTH contacts on prisoners in ISOLATION.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

5

- Defendants have produced no documents in response to this request but have indicated that they "are still attempting to locate additional responsive documents, if any, and will supplement this response as they are located." Plaintiffs request documents responsive to this RFP.

## REQUEST FOR PRODUCTION NO. 33
All ADC POST ORDERS, including general Post Orders that apply across ADC and facility-specific Post Orders, for WATCH OFFICERS.

- Defendants have produced no documents in response to this request but have indicated that they "are still attempting to locate additional responsive documents, if any, and will supplement this response as they are located." Plaintiffs request documents responsive to this RFP.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

## REQUEST FOR PRODUCTION NO. 35
All ADC POST ORDERS, including general Post Orders that apply across ADC and facility-specific Post Orders, regarding STRIP SEARCHING of prisoners in ISOLATION.

- Defendants have produced one document in response to this request but have indicated that they "are still attempting to locate additional responsive documents, if any, and will supplement this response as they are located." Plaintiffs request documents responsive to this RFP.

## REQUEST FOR PRODUCTION NO. 36
All documents regarding STAFFING and STAFFING VACANCIES in ISOLATION units, including but not limited to post charts, staffing charts, prioritized posting charts, and staffing rosters in each ISOLATION unit.

- The most recent documents Defendants have produced all date from 2012. Plaintiffs request Defendants supplement this request with responsive documents for 2013.

## PRISONER PLAINTIFFS' NOTICE OF 30(B)(6) DEPOSITION DUCES TECUM (DKT. 76)

## REQUEST FOR PRODUCTION NO. 4.
All DOCUMENTS that evaluate WEXFORD's compliance and performance and whether WEXFORD is meeting specific performance measures and outcomes, as defined in Sections 2.19 and 2.20 of the HEALTH CARE PRIVATIZATION CONTRACT.

**REQUEST FOR PRODUCTION NO. 5.**
All reports created by WEXFORD for ADC as specified per the schedule
identified in Exhibit 2, "Required Reporting," of the HEALTH CARE
PRIVATIZATION CONTRACT.

- The parties stipulated that the word "Corizon" would replace all
  appearances of the word "Wexford" in discovery requests.
- Defendants have not produced any monitoring reports after the June
  2013 reports.  Furthermore, Defendants have not produced any
  Corrective Action Plans created by Corizon in response to
  shortcomings identified by ADC monitoring staff in their monthly
  reports.
- Defendants have produced a limited number of reports by Corizon, and
  the ones produced are from May 2013.  For example, the May
  monitoring reports at ADC 117829-830 and 117863, refer to the
  Pharmacy Corrective Action Plan of May 13, 2013, and the Status
  Report of May 30, 2013 regarding the Corrective Action Plan.  Neither
  of these documents – nor any other corrective action plans – have been
  produced by Defendants.
- Plaintiffs request that Defendants supplement this production and
  confirm in writing that these are all of the reports created by Corizon to
  comply with the requirements of the Health Care Privatization
  Contract.

## PLAINTIFF VICTOR PARSONS' FIRST SET OF REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 2**
All ADC POLICIES AND PROCEDURES in DRAFT FORM or that have not
been approved or implemented regarding HEALTH CARE from January 1,
2011 through the response date.

- Defendants have not produced anything responsive to this request after
  December 2012.  To the extent that there are any new policies and
  procedures, defendants must supplement.  In particular, Plaintiffs note
  that a draft of a new mental health care program at Perryville Lumley –
  SMA was shown to Plaintiffs' expert, Eldon Vail, during his tour, but
  this document has never been produced.  Plaintiffs request that this
  response be supplemented accordingly.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

**REQUEST FOR PRODUCTION NO. 16**

All MINUTES from MEETINGS attended by ADC HEALTH CARE STAFF, and any other meetings at which the HEALTH CARE of PRISONERS, HEALTH CARE POLICIES AND PROCEDURES, HEALTH CARE STAFFING, or ANY ISSUE related to HEALTH CARE was discussed.

- Defendants produced a number of meeting minutes in response to this request. However, prisoner names were redacted in the copies produced. For example, minutes from the meetings at ASPC Phoenix (ADC55223-243) have blacked out prisoner-plaintiff names. Now that the class is certified, all prisoner names must be unredacted in documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 18.:**

All DOCUMENTS REGARDING HEALTH CARE statistics of any kind at the ADC, including but not limited to DOCUMENTS that track disease or condition prevalence, outcomes, delays in service, care provided, and costs.

- Defendants have produced dental summary reports and a dental utilization report for May 2013. Plaintiffs request dental utilization reports from January 1, 2012 to April 2013. In addition, this request includes reports provided by Smallwood Prison Dental Services to Corizon. Plaintiffs request continuing production of all wait time and utilization reports provided by Smallwood (directly or through Corizon). If ADC does not receive or maintain these reports, state so.

**REQUEST FOR PRODUCTION NO. 19**

DOCUMENTS SUFFICIENT TO SHOW the HOURS OF OPERATION, STAFFING SCHEDULES, and HEALTH CARE STAFFING levels for each facility operated by the ADC from January 1, 2011 through the RESPONSE DATE.

- Defendants have produced "staffing roll-ups" from May and June 2013. Plaintiffs request continuing supplementation of this request. In addition, Plaintiffs are not clear whether the produced documents satisfy this request for staffing levels. Please explain the column headings on the staffing roll-ups (i.e, what is the difference between "Corizon filled FTEs" and "Corizon Employee FTEs"), or identify a witness who can explain the document.
- Regarding staffing schedules for dental, see Swartz RFP No. 6.

**REQUEST FOR PRODUCTION NO. 25.:**

All DOCUMENTS REGARDING formal and informal HEALTH CARE training provided to HEALTH CARE STAFF and CORRECTIONAL STAFF, REGARDING (a) the provision of HEALTH CARE, (b) administrative responsibilities REGARDING the provision of HEALTH CARE, (c) the

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

8

processing of Health Needs Request ("HNR") forms and other PRISONER COMPLAINTS, and (d) the procedures to ensure that PRISONERS have access to HEALTH CARE.

- None of the documents provided are specific to dental clinics. Plaintiffs request supplementation of this response, or confirmation that no such responsive documents exist with respect to dental clinics.

**REQUEST FOR PRODUCTION NO. 40**
All Documents regarding DEATH RECORDS.

- No documents have been produced for anything after December 2012. Plaintiffs request supplementation of this response to the present date.
- **Plaintiffs can provide Defendants with what they believe is an up-to-date list of all prisoners who have died since January 1, 2011, and what, if any, documents have been produced to date.**

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

**REQUEST FOR PRODUCTION NO. 54**
All documents regarding the PROVISION of OUTDOOR EXERCISE to prisoners in ISOLATION, including but not limited to POLICIES AND PROCEDURES; SCHEDULES for the provision of outdoor exercise; documents sufficient to show WHEN and FOR HOW LONG prisoners ACTUALLY RECEIVED outdoor exercise, including any documents regarding CANCELLATION or TRUNCATION of scheduled outdoor exercise; PLANS of the AREAS in which outdoor exercise is provided; and EXERCISE EQUIPMENT in the outdoor exercise areas.

- Defendants have produced Departmental Orders and Post Orders in response to this request as well as photographs of recreation enclosures and ADC Reports regarding missed meals.
- Defendants response indicates that they "will supplement this response as necessary." Plaintiffs request supplementation or affirmation that no further responsive documentation exists.

**REQUEST FOR PRODUCTION NO. 55**
All DOCUMENTS REGARDING exhausted GRIEVANCES REGARDING HEALTH CARE or ISOLATION from January 1, 2010 through the RESPONSE DATE.

- Defendants' response refers to grievances of named plaintiffs only, but information related to all of the class members is relevant to Plaintiffs' claims. To limit this request, Plaintiffs request that Defendants

9

supplement this response by producing the dental-related grievances
listed in the document at ADC074296 - 327.

**REQUEST FOR PRODUCTION NO. 56**
All documents regarding GRIEVANCES regarding CONDITIONS of
CONFINEMENT in ISOLATION.

- Plaintiffs received the following logs for exhausted non-medical
  grievance appeals:  1) non-medical grievances (conditions of
  confinement only) from Jan. 1, 2011 to April 24, 2013 (ADC089380-
  391) and 2) non-medical grievances (all) from Jan. 1, 2011 to 12/21/12)
  (ADC089392-442).  Based on the current non-medical logs produced
  we request only the following grievances for Parsons' RFP #56 related
  to exhausted grievances for the ISOLATION units, including
  documentation of all levels of appeals:

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

For ADC089380-391, Grievance Appeals Non-Medical – Conditions (1/1/11-
4/24/13), grievances listed under the following log numbers:

- 6, 74, 75, 127, 187, 198, 199, 219, 256-264, 272, 273, 348-350, 378,
  379, 495, 509, 532, 578, 582, 606, 657, 662, 663, 731
- Starting on ADC089385 the numbering in the list of Log numbers
  starts over: 51-53, 111, 184, 215, 294, 295, 423, 440, 529, 542 and 580.

For ADC089392-442, Grievance Appeals Non-Medical (1/1/11-12/21/12),
grievances listed under the following log numbers:

- 1, 2, 10, 27, 28, 32, 36, 59, 74, 75, 87, 94-96, 101, 107, 116, 127, 129,
  131, 152-154, 157, 166, 168, 182, 198, 199, 223, 238-240, 243, 256-
  264, 271-274, 287, 288, 297-299, 312, 313, 348, 351, 397, 400, 405,
  446, 449, 462, 465, 468, 470, 508, 509, 514, 522, 532, 567, 582, 583,
  619, 657, 659, 662, 663, 666, 720, 731, 747
- Starting on ADC089420 the numbering in the list of Log numbers
  starts over: 10, 50-54, 58, 62, 65, 101, 112, 121, 143, 144, 200, 210,
  213, 215, 218, 219, 277 ,294, 295, 312, 373, 384, 412, 423, 433, 520,
  521, 525, 536 and 542.

**REQUEST FOR PRODUCTION NO. 61**
Documents sufficient to show the ORGANIZATIONAL STRUCTURE of the
ADC for the time period from January 1, 2011 through the response date.

- Defendants have produced only organizational charts from July 2012
  (prior to Corizon's provision of health services).  Plaintiffs request
  Defendants supplement this response with updated information.

10

## PLAINTIFF VICTOR PARSONS' SECOND SET OF REQUESTS FOR PRODUCTION

### REQUEST TO PRODUCE NO. 13

All documents, in particular but not exclusively including photographs and video recordings, REGARDING, DEPICTING, OR DOCUMENTING the PHYSICAL OR MENTAL CONDITION of Victor Parsons, Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, or Charlotte Wells after any of these persons sustained an injury.

- Defendants have produced Significant Incident Reports in response to this request and responded that they will "seasonably supplement this response as necessary."
- Plaintiffs request supplementation of this response to include recordings of any telephone calls to or from Plaintiffs regarding factual circumstances at issue in this lawsuit.

## PLAINTIFF SWARTZ'S FIRST REQUEST FOR PRODUCTION

*Plaintiffs agree to waive further production and supplementation for **Requests 1 and 7.***

### REQUEST FOR PRODUCTION NO. 2

All GRIEVANCE DOCUMENTS for GRIEVANCES REGARDING DENTAL CARE that have not been exhausted from January 1, 2012 to the RESPONSE DATE.

- Defendants' response references grievance documents from Douglas, Perryville, Lewis, Tucson, and Yuma. Please confirm whether documents from Safford, Phoenix, Eyman, and Florence have been produced.

### REQUEST FOR PRODUCTION NO. 4

All DISCIPLINARY REPORTS for all ADC PRISONERS in ISOLATION units for incidents that occurred on or after February 1, 2013.

- Plaintiffs have narrowed this request using the discipline report log Defendants produced under Swartz RFP #14 and request only the underlying disciplinary report documentation form the following incidents (note this list tracks the data as presented in the reports: Case #; ADOC #; Name; Race; Violation; Date):

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

*EYMAN*

**Browning:**

13A211165 220569A FIERRO, JERONIMO MEX.AMER. 10B-DISORDERLY CONDU 02/01/13

13A211211 154458 JOSYTEWA, RICKY NA INDIAN 03B-ASSAULT ON STAFF 02/09/13

13A211222 131401 GAMEZ, ROBERT C. MEX.AMER. 13A-PROMOT PRISON CO 02/15/13

13A211275 246568 SHERROD, GARY H. BLACK 32B-TAMPERING W/SECU 04/08/13

13A211292 190485 CALVIN, STANLEY G. BLACK 03B-ASSAULT ON STAFF 04/13/13

13A211346 263981 TENNY, RYAN A. CAUC 09B-CRIMINAL DAMAGE 05/20/13

13A211262 238511A CARRILLO, JESUS MEX.AMER. 10B-DISORDERLY CONDU 03/15/13

13A211166 245044 LIZARRAGA, JUAN L. MEX.AMER. 01A-AGGRAVATED ASSAU 02/01/13

**SMU 1:**

13A080103 266463 GRANADO, DANIEL MEX.AMER. 27B-SEXUAL CONTACT 02/06/13

13A080129 260970 TROUPE, LOGAN MEX.AMER. 09B-CRIMINAL DAMAGE 02/19/13

13A080152 119843A LAUX, STEVEN M. CAUC 04B-ASSAULT ON STAFF 02/26/13

13A080175 218044V FRACCARO, JAMES A. MEX.AMER. 29B-STALKING I/M TO 03/04/13

13A080316 207674 MESSER, SCOTT S. CAUC 03B-ASSAULT ON STAFF 04/05/13

13A080320 191968 WHEELER, CEDRIC E. BLACK 39B-THREATENING OR I 04/05/13

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

13A080429 200270 MORT, PAUL D. MEX.AMER. 25B-DISOBEY VERBAL/W 04/30/13

13A080316 207674 MESSER, SCOTT S. CAUC 03B-ASSAULT ON STAFF 04/05/13

## *FLORENCE*

### ASPC F Central Unit

13A010076 167240A TAYLOR, AARON G. CAUC 01A-AGGRAVATED ASSAU 02/06/13

13A010081 235560 ORDUNO, JAVIER A. MEX.AMER. 13A-PROMOT PRISON CO 02/05/13

13A010314 233453A SANCHEZ, SANTIAGO MEX.AMER. 01A-AGGRAVATED ASSAU 04/18/13

13A010330 155634 SALINAS, MARTIN MEX.AMER. 13A-PROMOT PRISON CO 04/24/13

13A010331 223774 NOLINE, LUIS NA INDIAN 13A-PROMOT PRISON CO 04/25/13

13A010382 065451 MCCLEARY, COREY CAUC 02B-ASSAULT ON INMAT 05/20/13

13A010390 232725F GUTIERREZ, JAVIER F. MEX.NAT. 13A-PROMOT PRISON CO 05/23/13

## *PERRYVILLE*

### Lumley

13B020179 257742 FIMBRES, ELISA MEX.AMER. 09B-CRIMINAL DAMAGE 02/04/13

13B020226 237166 DELIMA, ASHLY M. CAUC 05A-ARSON 02/19/13

13B020291 257742 FIMBRES, ELISA MEX.AMER. 03B-ASSAULT ON STAFF 02/28/13

13B020310 123777 MARQUEZ, VERONICA G. MEX.AMER. 32B-TAMPERING W/SECU 03/04/13

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

13

13B020311 265961 ANDERSON, VIRGINIA M. CAUC 13B-FALSE
REPORTING 03/03/13

13B020393 202190 POWELL, ALICE L. BLACK 09B-CRIMINAL
DAMAGE 03/14/13

13B020613 052651 CABALLERO, ALMA NA INDIAN 39B-
THREATENING OR I 04/24/13

13B020651 237652 GRAHAM, DIANNA E. BLACK 13B-FALSE
REPORTING 04/25/13

**REQUEST FOR PRODUCTION NO. 6**
Documents sufficient to show ACTUAL DENTAL STAFFING for each ADC
DENTAL CLINIC for January 1, 2012 to RESPONSE DATE.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

- Defendants reference their response to Parsons No. 19, a list of dental
  staff from May 9, and indicate that they will supplement. In the interest
  of focusing this request, plaintiffs request the production of the staffing
  schedule for each dental clinic, for the weeks of January 2, 2011,
  January 1, 2012, January 6, 2013, and June 2, 2013. Plaintiffs waive
  the rest of the this request and defendants' duty of supplementation.

**REQUEST FOR PRODUCTION NO. 8**
URGENT CARE LISTS for each ADC DENTAL CLINIC reflecting HNRs
submitted since January 1, 2012.

- Defendants' response indicates that they use no form called "urgent
  care list" and refers to the response to request no. 8 (sic). Please
  confirm that dental clinics do not maintain a list of patients seen since
  January 1, 2012 for dental care that qualifies as "urgent" per the Dental
  Services Technical Manual. If such a list does exist in full or in part,
  please produce the list for each complex, including the date of the
  request to be seen and the date actually seen by dental. If such a list
  does not exist, please state so. Plaintiffs waive any further
  supplementation of this request beyond initial production.

**REQUEST FOR PRODUCTION NO. 9**
All CORRECTIONAL SERVICE LOGS (Form 105-6) and
CORRECTIONAL POST JOURNALS (set forth in Departmental Order 105,
Section 105.03, 1.2.3.4) and any OTHER CONTINUOUS LOGS, including
any supplemental documents to such reports, for the ISOLATION UNITS for
June 2012; August 2012; October 2012; December 2012; February 2013; April
2013, and every second month thereafter.

14

- Please see Polson Request for Production No. 18 above.

**REQUEST FOR PRODUCTION NOs. 12 & 17**
All SIGNIFICANT INCIDENT REPORTS (SIR) (Form 105-3) including any supplemental documents to such reports for the ISOLATION UNITS for June 2012; August 2012; October 2012; December 2012; February 2013; April 2013, and every second month thereafter.

All SIGNIFICANT INCIDENT REPORTS (SIR) (Form 105-3) including any supplemental documents to such reports for March, April, and May 2013, and every second month thereafter for each Arizona State Prison Complex.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

- In response to these requests Defendants have produced SIR reports from January 1, 2011 through February 6, 2013. Plaintiffs request that these reports be updated to at least August 31, 2013 prior to the close of discovery.
- Originally Plaintiffs requested all Significant Incident Reports (SIR) (Form 105-3) in particular enumerated months. After conversations with Ms. Rand, we understand that the SIRS are actually categorized by "nature" of the event using labels set forth in D.O. 105, Attachment B (not previously produced). We have reviewed that list and agree to limit our SIRs request to the following "nature" terms:

  - After hour transport
  - Assault on Inmate
  - Assault on Staff
  - Attempted Self Harm
  - Death
  - Disorderly Conduct
  - Disturbance
  - Drug Overdose
  - Drugs/Narcotics
  - Dry Cell Watch
  - Fight/Inmate
  - Fight/Staff
  - Homicide
  - Inmate Hunger Strike
  - Inmate Injury/Illness
  - Major Disturbance
  - Meal Refusal
  - Medical Emergency
  - Medical Transport
  - Medical Watch

15

- Mental Health Watch
- Progressive Restraints
- Property Damage
- Self-Harm
- Staff Misconduct
- Threats of Violence/Inmate
- Threats of Violence/Staff
- Use of Force

**REQUEST FOR PRODUCTION NOs. 13 & 18**

All USE OF FORCE/INCIDENT MANAGEMENT REPORTS (Form 804-2) including any supplemental documents to such reports for the ISOLATION UNITS for June 2012; August 2012; October 2012; December 2012; February 2013; April 2013, and every second month thereafter.

All USE OF FORCE/INCIDENT MANAGEMENT REPORTS (Form 804-2) including any supplemental documents to such reports for March, April, and May 2013, and every second month thereafter for each Arizona State Prison Complex.

- Please see Polson Request for Production No. 22 above related to both Swartz RFP ##13, 18.

**PLAINTIFFS' REQUEST TO ENTER DEFENDANTS' PROPERTY FOR THE PURPOSE OF EXPERT INSPECTIONS**

- Plaintiffs note that this request included document requests, including photographs requested by the experts on each tour, and the documents flagged by the experts for copying during the tours by each expert, such as excerpts of medical records and the programming schedules at the isolation units. To date, these documents have not been fully produced to Plaintiffs despite multiple requests. We reiterate our request for immediate production of these documents and note that production of similar documents identified in the upcoming tours must be produced in a more expedient manner.

**PLAINTIFF CHARLOTTE WELLS' FIRST SET OF INTERROGATORIES**

**INTERROGATORY NO. 1**

IDENTIFY, and state the last ADC housing unit of, all ADC PRISONERS who died in each of the following years and whose deaths were classified as suicide by ADC, a county medical examiner, or any other governmental entity: 2009, 2010, 2011, 2012, and 2013 (as of the RESPONSE DATE).

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

- Defendants responded to this interrogatory by providing a list of individuals who died in 2009, 2010, 2011, part of 2012 and part of 2013. Plaintiffs request that this interrogatory be fully updated to August 31, 2013. Plaintiffs further request that Defendants provide the information requested in this Interrogatory and update all the information provided with the housing unit location of every individual who committed suicide within the requested timeframe. Defendants' response to date has sometimes included the housing unit, but in most instances included only the name of the Prison Complex, or in a few instances, no location at all.

## INTERROGATORY NO. 11

For each ISOLATION unit describe the indoor and outdoor recreation enclosures available to the PRISONERS housed in that unit, including the size of each enclosure; any exercise equipment available to PRISONERS in those enclosures; and the materials of which the enclosures are constructed.

- Defendants only addressed Eyman and Perryville in their response to this interrogatory. Plaintiffs request that Defendants include a response for Florence Central and Kasson units, per the definition of ISOLATION unit in this request. Plaintiffs also note that that the Eyman response appears to be only a partial response as no differentiation is made between Eyman – Browning Unit and Eyman – SMU I.

## INTERROGATORY NO. 13

Since January 1, 2012, describe any changes to the mental health programming available to PRISONERS incarcerated in each ISOLATION unit.

- Defendants have provided a response to this request including only Florence Central and Phoenix Complex. Plaintiffs request that Defendants provide information regarding all ISOLATION units as defined by this request.

## INTERROGATORY NO. 18

IDENTIFY the name, position, and/or title, and job description of all HEALTH CARE STAFF OR ISOLATION UNIT STAFF responsible for providing or determining the content of mental health counseling, group programming, or other type of TREATMENT.

- Defendants responded to this interrogatory with a list of names, positions and facilities. This list did not include any Psychiatric Technicians or Psychiatric Associates despite the fact that Defendants' response to Interrogatory No. 12 indicates that Psychiatric Associates and Psychiatric Technicians are responsible for providing mental health care in at least some of the ISOLATION units. Defendants also

17

provided no job description for any staff identified in response to this request. Defendants must supplement their response to this request to include all pertinent HEALTH CARE STAFF or ISOLATION UNIT STAFF, including job descriptions of the individuals identified.

*Plaintiffs waive further supplementation of **interrogatories 5 and 9**.*

## PLAINTIFF SHAWN JENSEN'S FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 6**
DESCRIBE all DENTAL AFFLICTIONS that are REFERRED to external providers. For each condition identified, DESCRIBE whether the condition is REFERRED to an external provider and DESCRIBE the reasons why a condition is or is not REFERRED to an external provider.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

- Defendants responded that they lacked sufficient information at that time to respond to this Interrogatory and stated that they would supplement. Please supplement.

**INTERROGATORY NO. 7**
IDENTIFY all HEALTH CARE STAFF, CORRECTIONAL STAFF, LOCUM TENENS CONTRACTORS, and SPECIALTY CONTRACTORS who have been investigated or subject to DISCIPLINE by ADC or by their respective state licensing board, between January 1, 2011 and the RESPONSE DATE, for any behavior REGARDING the provision, or lack thereof, of HEALTH CARE to PRISONERS or REGARDING the CONDITIONS OF CONFINEMENT of PRISONERS in ISOLATION.

- Defendants indicated that they would supplement as discovery progresses. Please supplement. Additionally, although Defendants asserted that their response was limited to the period before July 1, 2012, when Wexford took over the health care delivery system, Defendants are still in a position to answer this interrogatory to the extent Defendants employ anyone involved in the provision of health care, as well as to the extent Defendants have knowledge of the staffing provided by Wexford and/or Corizon. If Defendants lack knowledge of the staffing under Wexford and/or Corizon, please state so.

**INTERROGATORY NO. 10**
DESCRIBE all formal and informal training provided to ADC STAFF that is not memorialized in written materials REGARDING (a) the provision of HEALTH CARE, (b) administrative responsibilities REGARDING the provision of HEALTH CARE, (c) the processing of Health Needs Request ("HNR") forms and other PRISONER COMPLAINTS, (d) the procedures to ensure that PRISONERS have access to HEALTH CARE, and (e) the CONDITIONS OF CONFINEMENT of PRISONERS in ISOLATION.

2:12-cv-00601-ROS   Document 673-2   Filed 09/27/13   Page 21 of 105

- Defendants responded that they lacked sufficient knowledge and information to answer this interrogatory and promised to supplement. Please supplement by explaining in detail all training provided to staff of Corizon regarding the provision of health care, administrative responsibilities regarding the provision of health care, the processing of HNRs and prison complaints, any procedures relating to access to health care, and conditions of confinement. If Defendants are unable to answer this interrogatory, please state so.

Should you have any questions, please feel free to contact me at 202-548-6608.

Sincerely,

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Amy Fettig
Senior Staff Counsel

cc: All counsel of record

enc.

19

# APPENDIX A

**Lumley:**

| SIR Number | Incident Date | Location |
|---|---|---|
| 201200101 | 1/3/2012 | Lumley |
| 201200401 | 1/11/2012 | Lumley |
| 201201029 | 1/25/2012 | Lumley |
| 201201993 | 2/16/2012 | Lumley |
| 201202287 | 2/23/2012 | Lumley |
| 201202927 | 3/8/2012 | Lumley |
| 201204745 | 4/17/2012 | Lumley |
| 201211753 | 9/19/2012 | Lumley |
| 201212167 | 9/28/2012 | Lumley |
| 201214634 | 11/28/2012 | Lumley |
| 201215892 | 12/29/2012 | Lumley |
| 201300646 | 1/16/2013 | Lumley |

**Central:**

| SIR Number | Incident Date | Location |
|---|---|---|
| 201200127 | 1/4/2012 | Central |
| 201200288 | 1/8/2012 | Central |
| 201200363 | 1/10/2012 | Central |

| | | |
|---|---|---|
| 201200448 | 1/12/2012 | Central |
| 201200914 | 1/23/2012 | Central |
| 201200944 | 1/24/2012 | Central |
| 201200990 | 1/25/2012 | Central |
| 201201114 | 1/27/2012 | Central |
| 201201798 | 2/13/2012 | Central |
| 201202148 | 2/20/2012 | Central |
| 201202485 | 2/28/2012 | Central |
| 201202994 | 3/10/2012 | Central |
| 201203267 | 3/15/2012 | Central |
| 201203321 | 3/16/2012 | Central |
| 201203727 | 3/26/2012 | Central |
| 201204276 | 4/6/2012 | Central |
| 201204945 | 4/21/2012 | Central |
| 201204991 | 4/23/2012 | Central |
| 201205347 | 5/1/2012 | Central |
| 201205449 | 5/3/2012 | Central |
| 201205942 | 5/13/2012 | Central |
| 201206593 | 5/28/2012 | Central |
| 201207346 | 6/14/2012 | Central |
| 201207364 | 6/14/2012 | Central |
| 201208525 | 7/9/2012 | Central |

2

| | | |
|---|---|---|
| 201208997 | 7/19/2012 | Central |
| 201209468 | 7/30/2012 | Central |
| 201209639 | 8/2/2012 | Central |
| 201210629 | 8/23/2012 | Central |
| 201210981 | 9/1/2012 | Central |
| 201211832 | 9/20/2012 | Central |
| 201212429 | 10/4/2012 | Central |
| 201213877 | 11/8/2012 | Central |
| 201214205 | 11/17/2012 | Central |
| 201214282 | 11/19/2012 | Central |
| 201214891 | 12/4/2012 | Central |
| 201214940 | 12/6/2012 | Central |
| 201214957 | 12/6/2012 | Central |
| 201215008 | 12/7/2012 | Central |
| 201215028 | 12/7/2012 | Central |
| 201215382 | 12/16/2012 | Central |
| 201215504 | 12/18/2012 | Central |
| 201300266 | 1/8/2013 | Central |
| 201300431 | 1/11/2013 | Central |
| 201301104 | 1/26/2013 | Central |

3

| 201301282 | 1/31/2013 | Central |
| 201301307 | 1/31/2013 | Central |
| 201301308 | 1/31/2013 | Central |
| 201301485 | 2/5/2013 | Central |

## SMU I:

| SIR Number | Incident Date | Location |
|---|---|---|
| 201200368 | 1/10/2012 | SMU I |
| 201200620 | 1/16/2012 | SMU I |
| 201200863 | 1/22/2012 | SMU I |
| 201200925 | 1/23/2012 | SMU I |
| 201200926 | 1/23/2012 | SMU I |
| 201200932 | 1/23/2012 | SMU I |
| 201200950 | 1/24/2012 | SMU I |
| 201201052 | 1/26/2012 | SMU I |
| 201201125 | 1/28/2012 | SMU I |
| 201201258 | 1/31/2012 | SMU I |
| 201202122 | 2/19/2012 | SMU I |
| 201202213 | 2/21/2012 | SMU I |
| 201202390 | 2/25/2012 | SMU I |
| 201203435 | 3/19/2012 | SMU I |
| 201203436 | 3/19/2012 | SMU I |
| 201203922 | 3/29/2012 | SMU I |

4

| 201203964 | 3/30/2012 | SMU I |
|-----------|-----------|-------|
| 201204494 | 4/11/2012 | SMU I |
| 201204823 | 4/18/2012 | SMU I |
| 201204906 | 4/20/2012 | SMU I |
| 201204971 | 4/22/2012 | SMU I |
| 201204984 | 4/23/2012 | SMU I |
| 201205042 | 4/24/2012 | SMU I |
| 201205269 | 4/29/2012 | SMU I |
| 201205276 | 4/29/2012 | SMU I |
| 201205393 | 5/1/2012 | SMU I |
| 201205528 | 5/4/2012 | SMU I |
| 201205727 | 5/9/2012 | SMU I |
| 201205826 | 5/11/2012 | SMU I |
| 201205874 | 5/11/2012 | SMU I |
| 201205998 | 5/14/2012 | SMU I |
| 201206054 | 5/15/2012 | SMU I |
| 201206411 | 5/23/2012 | SMU I |
| 201206623 | 5/29/2012 | SMU I |
| 201206697 | 5/30/2012 | SMU I |
| 201206907 | 6/5/2012 | SMU I |
| 201206982 | 6/6/2012 | SMU I |
| 201206983 | 6/6/2012 | SMU I |
| 201207612 | 6/19/2012 | SMU I |
| 201207623 | 6/19/2012 | SMU I |

| 201207726 | 6/22/2012 | SMU I |
|---|---|---|
| 201207876 | 6/25/2012 | SMU I |
| 201208018 | 6/28/2012 | SMU I |
| 201208790 | 7/13/2012 | SMU I |
| 201208999 | 7/19/2012 | SMU I |
| 201209241 | 7/25/2012 | SMU I |
| 201209320 | 7/27/2012 | SMU I |
| 201209414 | 7/29/2012 | SMU I |
| 201209681 | 8/3/2012 | SMU I |
| 201209728 | 8/4/2012 | SMU I |
| 201209956 | 8/9/2012 | SMU I |
| 201210282 | 8/16/2012 | SMU I |
| 201210612 | 8/23/2012 | SMU I |
| 201210708 | 8/26/2012 | SMU I |
| 201212453 | 10/4/2012 | SMU I |
| 201212886 | 10/15/2012 | SMU I |
| 201213039 | 10/18/2012 | SMU I |
| 201213450 | 10/29/2012 | SMU I |
| 201213519 | 10/30/2012 | SMU I |
| 2012213998 | 11/11/2012 | SMU I |
| 201214444 | 11/24/2012 | SMU I |
| 201214821 | 12/3/2012 | SMU I |
| 201215303 | 12/14/2012 | SMU I |
| 201215324 | 12/14/2012 | SMU I |

6

| 201215451 | 12/18/2012 | SMU I |
| 201300104 | 1/3/2013 | SMU I |
| 201300680 | 1/17/2013 | SMU I |
| 201300884 | 1/22/2013 | SMU I |
| 201301158 | 1/28/2013 | SMU I |
| 201301482 | 2/5/2013 | SMU I |

## Browning:

| SIR Number | Incident Date | Location |
|---|---|---|
| 201200452 | 1/12/2012 | Browning |
| 201200684 | 1/17/2012 | Browning |
| 201201028 | 1/25/2012 | Browning |
| 201201086 | 1/26/2012 | Browning |
| 201201673 | 2/10/2012 | Browning |
| 201202024 | 2/17/2012 | Browning |
| 201202286 | 2/23/2012 | Browning |
| 201203694 | 3/25/2012 | Browning |
| 201204087 | 4/2/2012 | Browning |
| 201204125 | 4/3/2012 | Browning |
| 201204404 | 4/10/2012 | Browning |
| 201205190 | 4/27/2012 | Browning |
| 201205235 | 4/28/2012 | Browning |
| 201205660 | 5/8/2012 | Browning |
| 201206180 | 5/18/2012 | Browning |
| 201206368 | 5/22/2012 | Browning |
| 201207847 | 6/25/2012 | Browning |
| 201208185 | 7/2/2012 | Browning |
| 201209279 | 7/26/2012 | Browning |
| 201209817 | 8/6/2012 | Browning |
| 201210385 | 8/18/2012 | Browning |

7

| | | |
|---|---|---|
| 201211197 | 9/6/2012 | Browning |
| 201211934 | 9/23/2012 | Browning |
| 201212036 | 9/25/2012 | Browning |
| 201212297 | 10/1/2012 | Browning |
| 201212649 | 10/9/2012 | Browning |
| 201213308 | 10/25/2012 | Browning |
| 201213702 | 11/5/2012 | Browning |
| 201214098 | 11/14/2012 | Browning |
| 201214287 | 11/19/2012 | Browning |
| 201300229 | 1/7/2013 | Browning |
| 201300585 | 1/15/2013 | Browning |
| 201301381 | 2/2/2013 | Browning |

# EXHIBIT B

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT



**AMERICAN CIVIL LIBERTIES UNION**

<div align="center">

<u>**VIA EMAIL ONLY**</u>

</div>

September 25, 2013

Lucy M. Rand, AAG
Office of the Attorney General
Department of Corrections Unit
Liability Management Section
1275 West Washington Street
Phoenix, AZ 85007-2926

AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
*DIRECTOR*
*ATTORNEY AT LAW**

**NOT ADMITTED IN DC;*
*PRACTICE LIMITED TO*
*FEDERAL COURTS*

<div align="center">

*Re:  Parsons v. Ryan Supplemental Discovery Production*

</div>

Dear Ms. Rand:

I am writing to memorialize our September 23, 2013 meet and confer, and to provide Defendants with the additional information requested during our meeting.

As a threshold matter, we agreed to a stipulation asking the Court to extend the September 27, 2013 deadline for submitting discovery disputes, to allow us additional time to resolve these issues prior to seeking Court intervention. Plaintiffs propose that the parties request an order that a motion seeking to compel a response on any of the discovery issues enumerated in this letter and any disputes arising from depositions taken this week may be filed no later than October 25, 2013.  Additionally, we request that you provide a date certain when you will certify that your document production is complete.  We intend to ask the Court for a week after that date to review the documents and move to compel on materials that have not been produced, unless you are willing to stipulate to that.  Of course if there are additional discovery issues you would like to include in such an agreement, please let us know.  In light of the current September 27 deadline, please let us know your response to this proposal tomorrow.

**PLAINTIFFS' DISCOVERY REQUESTS**

**Documents identified during depositions**

Plaintiffs agreed to provide Defendants a list of documents identified during recent depositions that have not been produced.  This list is attached as Appendix A and includes reference to the specific discovery requests to which these documents are responsive, and the deposition in which the document was

<div align="center">1</div>

identified.  Plaintiffs note that additional documents were produced last night that may include some of the documents identified in Appendix A.

**Objections based on class certification**

Plaintiffs also agreed to provide a list of the discovery requests to which Defendants objected on the ground that *"the Court did not certify this claim."* That list is attached as Appendix B.

**Documents identified during plaintiffs' expert tours**

Defendants indicated that the photographs taken for Plaintiffs' experts during their tours will likely be produced next week, and agreed to provide a firm date for that production later this week.  As for the medical records tabbed for copying during the expert tours, Defendants agreed to provide a firm production date by September 24.  We did not hear from you on September 24; we request a response as soon as possible.

**Plaintiff Licci's First Request for Production, Requests # 4-5**

These request class member medical records (#4) and institutional files (MRFs) (#5).  Defendants indicated that the MRFs will be produced by the end of next week.  The medical records are still in production, and Defendants agreed to inform us of the production date by September 24.  We did not hear from you on September 24; we request a response as soon as possible.

In terms of Plaintiffs' request for medical records in RFP #4, the Section II requests remain unchanged.  The Section I requests to inspect for Florence and Tucson also remain unchanged.  Due to the cancellation of expert tours at Winslow, Safford and Douglas, Plaintiffs request production of those records listed in Section I, rather than inspection.

**Plaintiffs Licci's Interrogatories and Requests for Admissions; Plaintiff Gamez's Requests for Admissions**

We discussed Defendants' objections to these requests on the ground that they seek an admission from a third party, and Defendants' responses referring plaintiffs to the Smallwood deposition, even when the deposition does not address the particular discovery request.  Defendants indicated that where ADC policy controls they will supplement their responses, but that in areas of dental process and practice they will not.  Defendants also indicated that they will discuss this matter with Kathy Wieneke and provide further information to Plaintiffs.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

2

**Other requests**

Defendants indicated that they will not provide supplemental responses to any discovery requests propounded by Victor Parsons. We believe you are estopped from taking this position. As late as August of this year, you were continuing to supplement the Parsons discovery. See Docket 569. To announce that you are now taking a different position, only when we cannot propound further discovery, is unreasonable and we intend to seek an order from the Court requiring you to continue this production.

Defendants have recently raised an objection to providing supplemental discovery to Deposition Duces Tecum [DKT. #76], but indicated they will confer as to the status of that objection.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Defendants indicated they will not produce the new MGAR instructions until they are finalized. We note that the final document may be among the documents produced last night.

Defendants agreed to confer among themselves regarding production of the Corrective Action Plans, and provide further information to plaintiffs.

Defendants indicated that their responses to Plaintiff Licci's First Set of Requests for Production with be supplemented in about a week.

As for plaintiffs' initial disclosures, we believe all our descriptions of proposed testimony provide the same level of detail as yours, to the extent we know what the witnesses will be able to testify to. You have not provided to us the level of detail you sought from us in the meet-and-confer. We are willing to work with you on this issue, but it needs to be a two way street. If there are specific entries that you think are not written to the same level of specificity as yours, please send us that list of names and we will review them and explain to you our view in more detail.

## ADDITIONAL DISCOVERY ISSUES

In the interest of completeness, we wish to raise additional discovery issues that were not discussed during our September 23 discussion. These issues must also be addressed in the stipulation. First, the discovery dispute regarding Plaintiffs' September 5, 2013 discovery supplementation letter remains ongoing, but Plaintiffs believe that further discussion may now be fruitful rather than seeking immediate Court intervention. In particular, the production of death records under Parsons RFP #40 needs to be addressed. Second, plaintiffs are reviewing the 30(b)(6) testimony taken to date and will provide a list by tomorrow morning of any material relating to those depositions that we intend to move to compel on. We believe some of those issues can be resolved if the parties work together, so would also be willing to

3

include those in the stipulation if you wish to do that. Finally, Defendants have not yet produced a privilege log. Please provide a date certain by when you will do so or agree in writing that you are withdrawing all of your privilege objections to all of Plaintiffs' document requests. We are willing to consider extending the date for production of the log, as long as there is an extension of our time to move to compel.

We request a meet-and-confer for tomorrow afternoon to reach closure on all of these issues. Please let me know when you are available for that.

If I have inadvertently omitted or misstated any portion of our discussion, please let me know. We look forward to your response.

Very truly yours,

David C. Fathi

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

cc:  All counsel of record

Enc.

4

# APPENDIX A

## Unproduced Documents Identified During Recent Depositions

**The following previously unproduced documents were identified during depositions:**

- Strategic Plan Initiative draft (Taylor – new policies and procedures for max custody unit) (Parsons RFP 1 - #9)
- Mental Health Technical manual (currently being updated so we want to make sure we have drafts) (Taylor) (Parsons 1 - #1; ACDL RFP 1 - ##1-9)
- Psych autopsies completed whenever there is an inmate suicide (Taylor) (Parsons RFP 1 - #40)
- Taylor's emails to facilities with MGAR findings pasted in (Taylor) (Dkt #76 ##4, 5)
- Full list of MGAR indicators (both active and inactive) (Taylor) (Dkt #76 ##4, 5)
- Instruction materials regarding the MGAR audit tool (Campbell) (Dkt #76 ##4, 5)
- Corrective Action Plans for MGAR "amber" and "red" findings, including all the documents, drafts, worksheets, etc. generated by the monitors when preparing their MGAR reports (Taylor; Campbell; Bedoya; Robertson; Gross; Evans – note that several witnesses have testified that they use worksheets and notes as the basis for their monthly MGAR reports – Plaintiffs' definition of "document" includes drafts, notes, etc. and the request is for documents related to the monitoring of the contract)) (Dkt #76 ##4, 5)
- E-versions of the CAPs as they appear on the screen (Mr. Evans mentioned that the CAP appears on the screen differently than the way it appears when he prints it. We would like to see how the reports appear on the screen.) (Dkt #76 ##4, 5)
- Email from Greg Fizer (DW Florence Central) to Taylor re: programming doesn't have adequate resources (Aug/Sept 2013) (Taylor) (Parsons 1 - ##49,50)
- Written agendas and minutes for weekly meetings with Corizon officials and ADC Monitoring Bureau (Taylor; Campbell; Evans; Winland) (Dkt #76 ##4, 5)
- Written agendas and minutes for weekly ADC monitor meetings (Evans; Winland) (Dkt #76 ##4, 5)
- Spreadsheets attached to the memorandum of M. Bedoya to the FHA for ASPC-Tucson, dated April 5, 2013 (ADC088785) (Bedoya) (Dkt #76 ##4, 5)
- Written Job Descriptions for Arthur Gross, Assistant Director of ADC and leader of the Health Services Contract Monitoring Bureau (Gross) (Parsons RFP 1 - ##21, 61)
- Written job descriptions for the Monitor positions in the Health Services Contract Monitoring Bureau (Gross) (Parsons RFP 1 - ##21, 61)
- Peer reviews for all licensed medical staff at ASPC-Tucson and potentially other facilities (Bedoya) (Parsons RFP 1 - #6)
- Weekly staffing reports regarding Corizon's staffing levels (Bedoya) (Dkt #76 ##4, 5)
- Psych associate databases containing group program records (ex: Newman in Kasson has one) (Taylor) (Polson 1 - #21; Licci RFP 1 - #6))

- Drafts of statewide Action Plans from Corizon in Pharmacy, Mental Health, Chronic Care, Sick Call and Utilization Management, including "statement of need" and target date for addressing the need (Taylor; Gross) (Dkt #76 ##4, 5)
- "53 page boot camp manual" for ADC monitors (Evans) (Dkt #76 ##4, 5)
- Weekly reports from the Dental Coordinator (Evans)  (Dkt #76 ##4, 5)
- Monthly Inmate Grievance Appeal Report (reflects all grievance appeals; generated through the IHAS system) (Moriarty) (Parsons RFP 1 - #55)
- Documents identified at the Winland deposition that have not been produced (Dkt #76 ##4, 5)
  - From Deposition Ex. 319, the August 2013 Lewis Pharmacy Monitoring Report, the "snapshot" referred to in paragraph E, at ADC 137534;
  - From Dep. Ex. 327, the July 2013 Phoenix Pharmacy Monitoring Report, the photographs of boxes of medications referred to in paragraph 1 at ADC 137323;
  - From deposition Ex. 330, the August 2013 Yuma Pharmacy Monitoring Report, the "snapshot" referred to at ADC 137697;
  - From Dep. Ex. 323, the July 2013 Eyman Pharmacy Monitoring Report, the summary of investigation and corrective action plan submitted by Jim Taylor, Corizon referred to at ADC 137207;
  - From deposition Ex. 324, the August 2013 Eyman Pharmacy Monitoring report, the snapshot referred to in paragraph E) at ADC 137476;
  - From deposition Exhibit 325, the July 2013 Perryville Pharmacy Monitoring Report, the email or other document that is the source of the information on ADC 137293 that begins with the following language: "There are several issues of concern with this facility . . .," as well as the pictures taken to support the statement quoted;
  - From deposition Exhibit 325, the July 2013 Perryville Pharmacy Monitoring Report, the email or other document that is the source of the information that begins on ADC 137294 with the following language: "Today, Monday, July 22, 2013, I accompanied Nurse McDonald on Lumley pill call" and concludes on page ADC 137295 with the following language: "Please ensure that nurses are compliant with proper medication administration processes. nts";
  - From deposition Ex. 326, the August 2013 Perryville Pharmacy Monitoring Report, the "snapshot" referred to at ADC 137560;
  - From deposition Ex. 326, the August 2013 Perryville Pharmacy Monitoring Report, the email or other document that is the source of the information that begins on ADC 137561 with the following language "On my brief visit to Lumley I encountered the following issues (8-5)" and concludes with the language "I continue to alert the facility on chronic medications needing filled/refilled";
  - From deposition Ex. 320, the July 2013 the Florence Pharmacy Monitoring Report, the email or other document that is the source of the information that begins on ADC 137240 with the language "This location must maintain the continuity of care by renewing medications in appropriate time frame and be more keenly aware of expiring meds" and concludes on the same page with the language "This must be done to maintain the continuity of care of our population and to reduce morbidity/mortality";

- From deposition Ex. 322, the August 2013 Florence Pharmacy Monitoring Report, the "snapshot" referred to on page ADC 137506;
- From deposition Ex. 322, the August 2013 Florence Pharmacy Monitoring Report, the email or other document that is the source of the language that begins on ADC 137506 with the language "Medications need to be ordered/reordered in a timely or manner" and concludes on ADC 137507 with the language "72 prescriptions expired, 21 prescriptions discontinued, 7 renewed or therapy changed";
- From deposition Ex. 331, the July 2013 Tucson Pharmacy Monitoring Report, the email or other document that is the source of the language begins on page ADC 137373 with the words "The facility must be aware of the necessity of renewing prescriptions in a timely manner as not to negatively impact the continuity of care" and concludes on page ADC 137374 with the language "Next, I asked nursing if after (3) no shows for medications, if they are notifying the physicians and they told me that they have been instructed to NOT do this regarding MH meds because MH is so short staffed that they won't get to them anyway";
- From deposition Ex. 332, the August 2013 Tucson Pharmacy Monitoring Report, the "snapshot" referred to at ADC 137645.

**The following documents were identified during depositions as having been updated since produced to Plaintiffs:**

- Pursuant to Dkt #76 - ##4-5 updates for ALL statewide reports that Corizon is providing to ADC (wait times, referrals to outside, etc.), including but not limited to (the most recent month of production is indicated in bold):
  - ADC122017-122017 – Corizon AZ IM Wait Times Rpt – 2013-05.pdf
    Inmate Wait Times for **May** 1-31, 2013
  - ADC122042-122045 – Corizon AZ Inpatient Log – 2013-06.pdf
    Inpatient Log Documenting Hospital Admissions for **June** 2013
  - ADC122046-122048 – Corizon AZ Medical HNR Rpt – 2013-05.pdf
    Health Needs Requests Appointments Report for **May** 2013
  - ADC122049-122056 – Corizon AZ Medical Transports By Complex – 2013-05.pdf
    Medical Transports Complex Report **May** 2013
  - ADC122057-122058 – Corizon AZ MH HNR Appt Rpt – 2013-05.pdf
    Health Needs Requests Appointments Report **May** 2013 (Mental Health HNR/Appointments)
  - ADC122060-122060 – Corizon AZ Intake Rpt – 2013-05.pdf
    AZDOC Inmate Intake By Complex **May** 1-31, 2013
  - ADC121167 June 2013 staffing in native format.xlsx
    Arizona Monthly Staffing Report Florence Region (**June** 2013)

# APPENDIX B

Defendants refused to respond to the following Interrogatories and Requests for Admission on the grounds that the Interrogatory or Request concerned matters beyond those certified in the Court's March 5, 2013 Order granting Plaintiffs' Motion for Class Certification. [Doc. 372]. Beneath each request and excerpted response, Plaintiffs have included a listing of those practices, certified by the court, to which the requests are relevant.

## DEFENDANTS RESPONSES TO LICCI'S 1ST SET OF INTERROGATORIES (INTERROGATORIES NOS.: 14-20)

**INTERROGATORY NO. 14:**
Does ADC track or monitor the instances in which inmates are denied or refuse their RESTRICTED DIET, the reasons for the denials or refusals, and any action taken as a result of such denials or refusals? If so, explain how ADC tracks or monitors that INFORMATION.

**ANSWER TO INTERROGATORY NO. 14:**
Defendant objects that this Interrogatory is compound, vague, and ambiguous. Defendant objects that this Interrogatory is not likely to lead to the discovery of admissible evidence, as the Court's Order certifying the class did not include claims relating to restricted diets.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "v. Failure to provide care for chronic diseases and protection from infectious disease; [and] vi. Failure to provide timely access to medically necessary specialty care". [Doc. 372, p. 22].**

**INTERROGATORY NO. 15:**
Explain what factors determine whether an inmate receives a RESTRICTED DIET. YOUR response to this interrogatory should include, but not be limited to, an explanation of what is needed for a "provider [to] determine[] that the general population menu is inappropriate," what determines whether "a therapeutic or soft food diet [is] consistent with the therapeutic diets listed in the ADC Diet Manual," and what it means for a SOFT DIET or THERAPEUTIC DIET to be "supported in the inmate's progress notes with SOAP documentation by the prescribing practitioner." [See Ryan's Responses to Verduzco's 1st RFAs Nos. 223-24].

**ANSWER TO INTERROGATORY NO. 15:**
Defendant objects that this Interrogatory is overly broad, unduly burdensome, compound, vague, and ambiguous. Defendant objects that this Interrogatory is not likely to lead to the discovery of admissible evidence, as the Court's Order certifying the class did not include claims relating to restricted diets.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "v. Failure to provide care for chronic diseases and protection from infectious disease; [and] vi. Failure to provide timely access to medically necessary specialty care". [Doc. 372, p. 22].**

**INTERROGATORY NO. 16:**
Whom does ADC permit to determine whether inmates receive RESTRICTED DIET? In particular, YOUR response should include, but not be limited to, a statement of who is authorized to decide whether the "general population menu is inappropriate," whether "a therapeutic or soft food diet [is] consistent with the medical diets listed in the ADC Diet Manual," and whether a restricted diet is "supported in the inmate's progress notes with SOAP documentation by the prescribing practitioner." [See Ryan's Responses to Verduzco's 1st RFAs Nos. 223-24].

**ANSWER TO INTERROGATORY NO. 16:**
Defendant objects that this Interrogatory is overly broad, unduly burdensome, compound, vague, and ambiguous. Defendant objects that this Interrogatory is not likely to lead to the discovery of admissible evidence, as the Court's Order certifying the class did not include claims relating to restricted diets.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "v. Failure to provide care for chronic diseases and protection from infectious disease; [and] vi. Failure to provide timely access to medically necessary specialty care". [Doc. 372, p. 22].**

**INTERROGATORY NO. 17:**
Regardless of YOUR response to the previous interrogatory, which categories of personnel actually have decided, on any occasion, whether inmates may receive RESTRICTED DIETS?

**ANSWER TO INTERROGATORY NO. 17:**
Defendant objects that this Interrogatory is overly broad, unduly burdensome, vague, and ambiguous. Defendant objects that this Interrogatory is not likely to lead to the discovery

2

of admissible evidence, as the Court's Order certifying the class did not include claims relating to restricted diets.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "v. Failure to provide care for chronic diseases and protection from infectious disease; [and] vi. Failure to provide timely access to medically necessary specialty care." [Doc. 372, p. 22].**

**INTERROGATORY NO. 18:**
State the number of jobs available to PRISONERS housed in each ISOLATION unit, the job title of each job, the eligibility for each job, the number of hours per week available to be worked for each job, and the names and ADC numbers of each PRISONER holding said jobs as of June 1, 2013.

**ANSWER TO INTERROGATORY NO. 18:**
Defendant objects that this Interrogatory is overly broad, unduly burdensome, compound, vague, and ambiguous. Defendant objects that this Interrogatory is not likely to lead to the discovery of admissible evidence, as the Court's Order certifying the class did not include claims relating to jobs.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "iv. Extreme social isolation". [Doc. 372, p. 23].**

**INTERROGATORY NO. 19:**
State the name, ADC number, and current housing unit of each PRISONER in ISOLATION who is eligible for a lower custody housing placement but still housed in ISOLATION as of the RESPONSE DATE.

**ANSWER TO INTERROGATORY NO. 19:**
Defendant objects that this Interrogatory is overly broad, unduly burdensome, compound, vague, and ambiguous. Defendant objects that this Interrogatory is not likely to lead to the discovery of admissible evidence, as the Court's Order certifying the class did not include claims relating to classification levels.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "iv. Extreme social isolation". [Doc. 372, p. 23].**

**INTERROGATORY NO. 20:**
What is ADC's policy on dental floss, flossers, floss loops, and other similar products intended to permit PRISONERS to clean between their teeth? If this policy varies by custody level, explain variations in your response.

**ANSWER TO INTERROGATORY NO. 20:**
Defendant objects that this Interrogatory is overly broad, compound, vague, and ambiguous. Defendant objects that this Interrogatory is not likely to lead to the discovery of admissible evidence, as the Court's Order certifying the class did not include claims relating to dental floss or similar products.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "vii. Failure to provide timely access to basic dental treatment". [Doc. 372, p. 22].**


**DEFENDANTS RESPONSES TO GAMEZ'S 1ST SET OF REQUESTS FOR ADMISSION (REQUESTS FOR ADMISSION NOS.: 29-47, 49, 58-59, 64-75)**

**REQUEST FOR ADMISSION NO. 29:**
Admit that some ADC exercise enclosures have no misting system.

**RESPONSE:**  Defendant objects that this Request is overbroad, vague, and ambiguous. The request fails to identify which ADC exercise enclosures are included in the request. Defendant further objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to exercise enclosures.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "iii. Lack of recreation". [Doc. 372, p. 23].**


**REQUEST FOR ADMISSION NO. 30:**
Admit that some ADC exercise enclosures have no source of drinking water.

**RESPONSE:** Defendant objects that this Request is overbroad, vague, and ambiguous. The request fails to identify which ADC exercise enclosures are included in the request. Defendant further objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to exercise enclosures.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "iii. Lack of recreation". [Doc. 372, p. 23].**

**REQUEST FOR ADMISSION NO. 31:**
Admit that ADC infirmaries are not air conditioned.

**RESPONSE:** Defendant objects that this Request is overbroad, vague and ambiguous. Defendant further objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to air conditioning or temperatures.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care; . . . and x. Failure to provide suicidal and self-harming prisoners basic mental health care." [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 32:**
Admit that housing units at ASPC-Perryville are not air conditioned.

**RESPONSE:** Defendant objects that this Request is overbroad, vague and ambiguous. Defendant further objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to air conditioning or temperatures.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care; . . . and x. Failure to provide suicidal and self-harming prisoners basic mental health care." [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 33:**
Admit that housing units at ASPC-Yuma are not air conditioned.

**RESPONSE:** Defendant objects that this Request is overbroad, vague and ambiguous. Defendant further objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to air conditioning or temperatures.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care; . . . and x. Failure to provide suicidal and self-harming prisoners basic mental health care." [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 34:**
Admit that housing units at ASPC-Tucson are not air conditioned.

**RESPONSE:** Defendant objects that this Request is overbroad, vague and ambiguous. Defendant further objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to air conditioning or temperatures.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care; . . . and x. Failure to provide suicidal and self-harming prisoners basic mental health care." [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 35:**
Admit that housing units at ASPC-Eyman are not air conditioned.

**RESPONSE:** Defendant objects that this Request is overbroad, vague and ambiguous. Defendant further objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to air conditioning or temperatures.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care; . . . and x. Failure to provide suicidal and self-harming prisoners basic mental health care." [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 36:**
Admit that housing units at ASPC-Phoenix are not air conditioned.

**RESPONSE:** Defendant objects that this Request is overbroad, vague and ambiguous. Defendant further objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to air conditioning or temperatures.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care; . . . and x. Failure to provide suicidal and self-harming prisoners basic mental health care." [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 37:**
Admit that housing units at ASPC-Lewis are not air conditioned.

**RESPONSE:** Defendant objects that this Request is overbroad, vague and ambiguous. Defendant further objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to air conditioning or temperatures.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care; . . . and x. Failure to provide suicidal and self-harming prisoners basic mental health care." [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 38:**
Admit that housing units at ASPC-Douglas are not air conditioned.

**RESPONSE:** Defendant objects that this Request is overbroad, vague and ambiguous. Defendant further objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to air conditioning or temperatures.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care; . . . and x. Failure to provide suicidal and self-harming prisoners basic mental health care." [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 39:**
Admit that housing units at ASPC-Safford are not air conditioned.

**RESPONSE:** Defendant objects that this Request is overbroad, vague and ambiguous. Defendant further objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to air conditioning or temperatures.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care; . . . and x. Failure to provide suicidal and self-harming prisoners basic mental health care." [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 40:**
Admit that housing units at ASPC-Florence are not air conditioned.

**RESPONSE:** Defendant objects that this Request is overbroad, vague and ambiguous. Defendant further objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to air conditioning or temperatures.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care; . . . and x. Failure to provide suicidal and self-harming prisoners basic mental health care." [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 41:**
Admit that housing units at ASPC-Winslow are not air conditioned.

**RESPONSE:** Defendant objects that this Request is overbroad, vague and ambiguous. Defendant further objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to air conditioning or temperatures.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care; . . . and x. Failure to provide suicidal and self-harming prisoners basic mental health care." [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 42:**
Admit that temperatures exceeding 85 degrees Fahrenheit have been recorded in ADC housing units between June 1, 2013, and the RESPONSE DATE.

**RESPONSE:** Defendant objects that this Request is overbroad, vague and ambiguous. Defendant further objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to air conditioning or temperatures.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care; . . . and x. Failure to provide suicidal and self-harming prisoners basic mental health care." [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 43:**
Admit that temperatures exceeding 90 degrees Fahrenheit have been recorded in ADC
housing units between June 1, 2013, and the RESPONSE DATE.

**RESPONSE:** Defendant objects that this Request is overbroad, vague and ambiguous.
Defendant further objects that this Request is not likely to lead to the discovery of
admissible evidence because the Court's Order certifying the class did not include claims
relating to air conditioning or temperatures.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING
CLASS CERTIFICATION: "i. Failure to provide timely access to health care; . . .
and x. Failure to provide suicidal and self-harming prisoners basic mental health
care." [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 44:**
Admit that temperatures exceeding 95 degrees Fahrenheit have been recorded in ADC
housing units between June 1, 2013, and the RESPONSE DATE.

**RESPONSE:** Defendant objects that this Request is overbroad, vague and ambiguous.
Defendant further objects that this Request is not likely to lead to the discovery of
admissible evidence because the Court's Order certifying the class did not include claims
relating to air conditioning or temperatures.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING
CLASS CERTIFICATION: "i. Failure to provide timely access to health care; . . .
and x. Failure to provide suicidal and self-harming prisoners basic mental health
care." [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 45:**
Admit that temperatures exceeding 100 degrees Fahrenheit have been recorded in ADC
housing units between June 1, 2013, and the RESPONSE DATE.

**RESPONSE:** Defendant objects that this Request is overbroad, vague and ambiguous.
Defendant further objects that this Request is not likely to lead to the discovery of
admissible evidence because the Court's Order certifying the class did not include claims
relating to air conditioning or temperatures.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING
CLASS CERTIFICATION: "i. Failure to provide timely access to health care; . . .**

and x. Failure to provide suicidal and self-harming prisoners basic mental health care." [Doc. 372, p. 22].

**REQUEST FOR ADMISSION NO. 46:**
Admit that ADC does not provide a RESTRICTED DIET specifically designed for PRISONERS with diabetes.

**RESPONSE:** Defendant objects that this Request is vague and ambiguous. Defendant further objects that this Request is not likely to lead to the discovery of admissible evidence, as the Court's Order certifying the class does not include claims relating to restricted diets.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "v. Failure to provide care for chronic diseases and protection from infectious disease; [and] vi. Failure to provide timely access to medically necessary specialty care". [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 47:**
Admit that Corizon does not provide a RESTRICTED DIET specifically designed for PRISONERS with diabetes.

**RESPONSE:** Defendant objects that this Request is overbroad, vague and ambiguous. Defendant further objects that this Request seeks an admission regarding a non-party to this litigation. Defendant additionally objects that this Request is not likely to lead to the discovery of admissible evidence, as the Court's Order certifying the class does not include claims relating to restricted diets.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "v. Failure to provide care for chronic diseases and protection from infectious disease; [and] vi. Failure to provide timely access to medically necessary specialty care". [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 49:**
Admit that Corizon does not provide methadone maintenance.

**RESPONSE:** Defendant objects that this Request is overbroad, vague and ambiguous. Defendant further objects that this Request seeks an admission regarding a non-party to this litigation. Defendant additionally objects that this Request is not likely to lead to the

discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to methadone maintenance.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "iii. Failure to provide necessary medication and medical devices; [and] . . . v. Failure to provide care for chronic diseases and protection from infectious disease". [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 58:**
Admit that ADC cannot produce reports showing how many PRISONERS have received the RESTRICTED DIETS described in the Diet Reference Manual (Bates Nos. 40574-40609).

**RESPONSE:** Defendant objects that this Request is vague and ambiguous. Defendant further objects that this Request is not likely to lead to the discovery of admissible evidence, as the Court's Order certifying the class did not include claims relating to restricted diets.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "v. Failure to provide care for chronic diseases and protection from infectious disease; [and] vi. Failure to provide timely access to medically necessary specialty care". [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 59:**
Admit that ADC's contracted food service provider cannot produce reports showing how many PRISONERS have received the RESTRICTED DIETS described in the Diet Reference Manual (Bates Nos. 40574-40609).

**RESPONSE:** Defendant objects that this Request is vague and ambiguous. Defendant further objects that this Request seeks an admission regarding a non-party to this litigation. Defendant additionally objects that this Request is not likely to lead to the discovery of admissible evidence, as the Court's Order certifying the class did not include claims relating to restricted diets.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "v. Failure to provide care for chronic diseases and protection from infectious disease; [and] vi. Failure to provide timely access to medically necessary specialty care". [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 64:**

Admit that ADC POLICY does not require that women PRISONERS be offered a PAP smear at least every three years.

**RESPONSE:** Defendant objects that this Request is overbroad, vague, and ambiguous. Defendant objects because this request does not identity the "ADC POLICY" referred to in this request. Defendant additionally objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to PAP smears.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care". [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 65:**

Admit that Corizon POLICY does not require that women PRISONERS be offered a PAP smear at least every three years.

**RESPONSE:** Defendant objects that this Request is overbroad, vague, and ambiguous. Defendant further objects that this Request seeks an admission regarding a non-party to this litigation. Defendant additionally objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to PAP smears.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care". [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 66:**

Admit that ADC POLICY does not require that women PRISONERS over 50 years old be offered a mammogram at least every two years.

**RESPONSE:** Defendant objects that this Request is overbroad, vague, and ambiguous. Defendant objects because this request does not identity the "ADC POLICY" referred to in this request. Defendant additionally objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to inmates over 50 years old or mammograms.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care".** **[Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 67:**
Admit that Corizon POLICY does not require that women PRISONERS over 50 years old be offered a mammogram at least every two years.

**RESPONSE:** Defendant objects that this Request is overbroad, vague, and ambiguous. Defendant further objects that this Request seeks an admission regarding a non-party to this litigation. Defendant additionally objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to inmates over 50 years old or mammograms.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care".** **[Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 68:**
Admit that as of the RESPONSE DATE, ADC does not have an electronic health records system to track whether women PRISONERS have been offered a PAP smear in the last three years.

**RESPONSE:** Defendant objects that this Request is overbroad, vague, and ambiguous. Defendant additionally objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to PAP smears.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care".** **[Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 69:**
Admit that as of the RESPONSE DATE, Corizon does not have an electronic health records system to track whether women PRISONERS have been offered a PAP smear in the last three years.

**RESPONSE:** Defendant objects that this Request is overbroad, vague, and ambiguous. Defendant further objects that this Request seeks an admission regarding a non-party to this litigation. Defendant additionally objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to PAP smears.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care". [Doc. 372, p. 22].**


**REQUEST FOR ADMISSION NO. 70:**
Admit that as of the RESPONSE DATE, ADC does not have an electronic health records system to track whether women PRISONERS over 50 years old have been offered a mammogram in the last two years.

**RESPONSE:** Defendant objects that this Request is overbroad, vague, and ambiguous. Defendant additionally objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to inmates over 50 years old or mammograms.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care". [Doc. 372, p. 22].**


**REQUEST FOR ADMISSION NO. 71:**
Admit that as of the RESPONSE DATE, Corizon does not have an electronic health records system to track whether women PRISONERS over 50 years old have been offered a mammogram in the last two years.

**RESPONSE:** Defendant objects that this Request is overbroad, vague, and ambiguous. Defendant further objects that this Request seeks an admission regarding a non-party to this litigation. Defendant additionally objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to inmates over 50 years old or mammograms.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care". [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 72:**
Admit that ADC POLICY does not require that PRISONERS who are pregnant be offered periodic pre-natal appointments with an obstetrician/gynecologist.

**RESPONSE:** Defendant objects that this Request is overbroad, vague, and ambiguous. Defendant objects because this request does not identity the "ADC POLICY" referred to in this request. Defendant additionally objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to pregnant inmates.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "v. Failure to provide care for chronic diseases and protection from infectious disease". [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 73:**
Admit that Corizon POLICY does not require that PRISONERS be offered who are pregnant be offered periodic pre-natal appointments with an obstetrician/gynecologist.

**RESPONSE:** Defendant objects that this Request is overbroad, vague, and ambiguous. Defendant further objects that this Request seeks an admission regarding a non-party to this litigation. Defendant additionally objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to pregnant inmates.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "v. Failure to provide care for chronic diseases and protection from infectious disease". [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 74:**
Admit that as of the RESPONSE DATE, ADC does not have an electronic health records system to track PRISONERS with coccidioidomycosis.

**RESPONSE:** Defendant objects that this Request is overbroad, vague, and ambiguous. Defendant additionally objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to coccidioidomycosis.

15

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "v. Failure to provide care for chronic diseases and protection from infectious disease; [and] vi. Failure to provide timely access to medically necessary specialty care". [Doc. 372, p. 22].**

**REQUEST FOR ADMISSION NO. 75:**
Admit that as of the RESPONSE DATE, Corizon does not have an electronic health records system to track PRISONERS with coccidioidomycosis.

**RESPONSE:** Defendant objects that this Request is overbroad, vague, and ambiguous. Defendant further objects that this Request seeks an admission regarding a non-party to this litigation. Defendant additionally objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to coccidioidomycosis.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "v. Failure to provide care for chronic diseases and protection from infectious disease; [and] vi. Failure to provide timely access to medically necessary specialty care". [Doc. 372, p. 22].**

## DEFENDANTS' RESPONSES TO GAMEZ'S 1ST SET OF INTERROGATORIES (INTERROGATORIES NOS.: 15, 17)

**INTERROGATORY NO. 15:**
DESCRIBE the restraints worn by PRISONERS in ISOLATION units when they are outside of their cells.

**ANSWER TO INTERROGATORY NO. 15:**
Defendant objects that this Interrogatory is overbroad, vague, and ambiguous. Defendant additionally objects to Plaintiff's definition and use of the term "ISOLATION." Plaintiffs' definition of "ISOLATION" includes several different types of housing assignments, each with its own criteria for assignment. Inmates may be housed in a detention unit in disciplinary segregation, investigative detention, mental health observation, or pending placement into a maximum security unit. Moreover, the term "ISOLATION" implies solitary confinement; however, inmates housed in the housing units listed in Plaintiffs' definition of "ISOLATION" may or may not have cellmates. Defendant additionally objects that this Request is not likely to lead to the discovery of

16

admissible evidence because the Court's Order certifying the class did not include claims relating to use of restraints when inmates are out of their cells.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "iv. Extreme social isolation". [Doc. 372, p. 23].**

**INTERROGATORY NO. 17:**
State the minimum qualifications ADC requires of persons who act as interpreters for medical, mental health, or DENTAL encounters for PRISONERS who do not speak English.

**ANSWER TO INTERROGATORY NO. 17:**
Defendant objects that this Interrogatory is overbroad, vague, and ambiguous. Defendant additionally objects that this Request is not likely to lead to the discovery of admissible evidence because the Court's Order certifying the class did not include claims relating to interpreters.

**RELEVANT PRACTICES IDENTIFIED IN THE COURT'S ORDER GRANTING CLASS CERTIFICATION: "i. Failure to provide timely access to health care". [Doc. 372, p. 22].**

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT



AMERICAN CIVIL LIBERTIES UNION

**VIA EMAIL ONLY**

September 25, 2013

Lucy M. Rand, AAG
Office of the Attorney General
Department of Corrections Unit
Liability Management Section
1275 West Washington Street
Phoenix, AZ 85007-2926

AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

*Re: Parsons v. Ryan Supplemental Discovery Production*

Dear Ms. Rand:

I am writing to correct an inadvertent omission in my letter sent earlier today.

In Appendix B to that letter, Plaintiffs set forth a list of the discovery requests to which Defendants objected on the ground that *"the Court did not certify this claim."* For each such request, Plaintiffs identified the certified claim or claims to which we believe the request is relevant.

For the following requests, Claim 9 ("Failure to provide mentally ill prisoners medically necessary mental health treatment (i.e. psychotropic medication, therapy, and inpatient treatment)") should have been identified as a claim to which the request is relevant:

Defendants' Responses to Gamez's 1st Set of Request for Admissions

Requests No. 29 – 45 (see Appendix B at 4-10).

We apologize for the omission.

Very truly yours,

David C. Fathi

Cc:     All counsel

# EXHIBIT C

1   Daniel Pochoda (Bar No. 021979)
    Kelly J. Flood (Bar No. 019772)
2   James Duff Lyall (Bar No. 330045)*
    **ACLU FOUNDATION OF ARIZONA**
3   3707 North 7th Street, Suite 235
    Phoenix, Arizona 85013
4   Telephone: (602) 650-1854
    Email: dpochoda@acluaz.org
5          kflood@acluaz.org
           jlyall@acluaz.org
6   *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7   *Attorneys for Plaintiffs Shawn Jensen, Stephen
    Swartz, Dustin Brislan, Sonia Rodriguez,*
8   *Christina Verduzco, Jackie Thomas, Jeremy
    Smith, Robert Gamez, Maryanne Chisholm,*
9   *Desiree Licci, Joseph Hefner, Joshua Polson, and
    Charlotte Wells, on behalf of themselves and all*
10  *others similarly situated*

11  **[ADDITIONAL COUNSEL LISTED ON
    SIGNATURE PAGE]**

12                    UNITED STATES DISTRICT COURT

13                       DISTRICT OF CALIFORNIA

14
    Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-NVW
15  Dustin Brislan; Sonia Rodriguez; Christina              (MEA)
    Verduzco; Jackie Thomas; Jeremy Smith; Robert
16  Gamez; Maryanne Chisholm; Desiree Licci; Joseph
    Hefner; Joshua Polson; and Charlotte Wells, on       **PLAINTIFF DESIREE LICCI'S**
17  behalf of themselves and all others similarly         **FIRST SET OF REQUESTS**
    situated; and Arizona Center for Disability Law,     **FOR PRODUCTION OF**
18                                                        **DOCUMENTS TO**
                         Plaintiffs,                      **DEFENDANTS**
19
20           v.

21  Charles Ryan, Director, Arizona Department of
    Corrections; and Richard Pratt, Interim Division
22  Director, Division of Health Services, Arizona
    Department of Corrections, in their official
23  capacities,

24                       Defendants.

25

26

27

28

PROPOUNDING PARTY:        Desiree Licci

RESPONDING PARTY:         Defendants

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Desiree Licci, by and through undersigned counsel, requests that Defendants respond, within thirty (30) days and produce the following documents for inspection and copying at ACLU Foundation of Arizona, 3707 N. 7th Street, Suite 235, Phoenix, Arizona 85013.

## DEFINITIONS

For purposes of these requests, the following definitions shall apply:

1.      "ADC" means the Arizona Department of Corrections, including all its subdivisions, agents, employees, contractors, and attorneys.

2.      "ADC STAFF" means all persons employed by ADC, including "CORRECTIONAL STAFF" and "HEALTH CARE STAFF."

3.      "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including a Blackberry or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

4.      "COMPLAINTS" means any DOCUMENTS, formal or informal, REGARDING specific or general problems, issues, deficiencies, unanswered questions, challenges, shortcomings, disagreements, or requests brought to the attention of the ADC or any ADC STAFF.

1    5.    "CONTRACTOR" means "LOCUM TENENS CONTRACTOR" and
2  "SPECIALTY CONTRACTOR."

3    6.    "CORRECTIONAL STAFF" means custody staff employed or paid by the
4  ADC to serve in a security or operational capacity.

5    7.    "DENTAL" means involving or relating to the oral cavity and maxillofacial
6  area, including the lips, mouth, tongue, teeth, gums, jaw, and oral musculature, as well as
7  the adjacent and associated areas.

8    8.    "DENTAL CARE" means the provision of care, including adequate diet, to
9  address the DENTAL needs of a PRISONER, whether those needs arise as a result of
10 injury, illness, disease, or other trauma, or care provided for diagnostic or preventive
11 purposes.

12    9.    "DENTIST" means an individual holding a degree in dental medicine or
13 dental surgery and licensed as a dentist by the Arizona Board of Dental Examiners, who
14 has been hired to work as a dentist at ADC facilities treating PRISONERS.

15    10.    "DESCRIBE" and "DESCRIPTION" means to provide all available
16 INFORMATION.

17    11.    "DOCUMENT" and "DOCUMENTS" have the same scope used in
18 Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing
19 or record of every type and DESCRIPTION and every tangible thing that is or has been in
20 the possession, custody, or control of DEFENDANTS and the ADC, to which they have
21 access, or of which they have knowledge, including, but not limited to, newspaper articles,
22 magazine articles, news articles, correspondence, letters, contracts, files, electronic mail,
23 memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books,
24 pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations,
25 point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices,
26 pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings,
27 maps, reports, surveys, MINUTES, data compilations, and statistical compilations,
28 regardless of whether a particular DOCUMENT is privileged or confidential, and

LEGAL27578843.1

- 2 -

regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device). "DOCUMENT" and "DOCUMENTS" includes, but is not limited to, all DOCUMENTS generated by or maintained in the Director's Project Tracking System, official ADC papers, and the ADC's intranet.

12.    "ENTRY-LEVEL PRACTITIONERS" means unlicensed persons who provide HEALTH CARE to PRISONERS at the ADC subordinate to MID-LEVEL PRACTITIONERS or HEALTH CARE CLINICIANS.

13.    "GRIEVANCES" means COMPLAINTS or requests made by PRISONERS to the ADC, and the exhaustion of claims raised or stated therein.

14.    "HEALTH CARE" means the provision of care, including adequate diet, to address the mental health, medical, or dental needs of a PRISONER, whether those needs arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic or preventive purposes.

15.    "HEALTH CARE CLINICIANS" means persons independently licensed to provide HEALTH CARE to PRISONERS at the ADC facilities, including but not limited to M.D., D.O., D.D.S., and Ph.D. credentialed staff.

16.    "HEALTH CARE STAFF" means all staff employed or paid by the ADC, LOCUM TENENS CONTRACTORS, or SPECIALTY CONTRACTORS (other than CORRECTIONAL STAFF) who are responsible for providing HEALTH CARE to ADC PRISONERS, including but not limited to HEALTH CARE CLINICIANS, MID-LEVEL PRACTITIONERS, ENTRY-LEVEL PRACTITIONERS, PHARMACISTS, and administrative and support staff.

17.    "HEALTH CARE STAFFING" means the provision of HEALTH CARE STAFF to provide HEALTH CARE.

18.    "HNR POLICIES AND PROCEDURES" means policies, procedures, or practices, whether written or established through custom or use, REGARDING HNR submissions by PRISONERS, including but not limited to the distribution, disposal,

processing, rejection of, responses to, provision of HEALTH CARE pursuant to, and exhaustion of claims raised by such submissions.  This includes policies, procedures, or practices that are in draft form and have not been approved and/or implemented.

19.     "IDENTIFY" and "IDENTIFICATION" with respect to (a) a PRISONER or former PRISONER, means to state the PRISONER'S full name, ADC number, date of birth, current or most recent mental health score (MH-1 through MH-5), medical score (M-1 through M-5), public risk score, institutional risk score, and current housing location (if still in ADC custody) or last known address and telephone number (if no longer in ADC custody); (b) a person other than a PRISONER or former PRISONER, means to state the person's full name and specify whether or not the person is or has been an ADC STAFF member, and if so, to state the staff member's position title, facility location, work schedule, responsibilities, date ADC employment began, date ADC employment terminated, dates of any changes in position titles or responsibilities, DESCRIPTIONS of any changes in position titles or responsibilities and, if the person is not currently employed by ADC, the person's last known address and telephone number; and (c) a third-party CONTRACTOR or entity means to state the name of the CONTRACTOR or entity, the type of entity (*e.g.*, corporation, partnership, etc.); its address and telephone number; and any persons YOU are aware of who acted on behalf of that CONTRACTOR or entity with respect to the events at issue in the discovery request; (d) IDENTIFY in any other context means to provide as much INFORMATION REGARDING the thing to be identified as is in the possession of DEFENDANTS or the ADC.

20.     "INFORMATION" means any knowledge YOU have, any evidence of any type, any facts of which YOU are aware and any inferences or speculation of which YOU are aware, all regardless of the source.  When INFORMATION YOU provide is based solely on inference or speculation, specifically so state in YOUR response.  When providing INFORMATION, provide the names of involved individuals, actions relevant to the requested INFORMATION, dates and times when known, locations, and any other knowledge YOU have about the subject of the discovery request.  When asked to provide

INFORMATION about one or more individuals, IDENTIFY the individual or individuals and provide any other INFORMATION YOU have about such person or persons.

21.    "ISOLATION" means confinement in a cell for 22 hours or more each day; confinement in Eyman-Special Management Unit ("SMU") 1, Eyman-Browning Unit, Florence-Central Unit, Florence-Kasson Unit, or Perryville-Lumley Special Management Area ("SMA"); or confinement in a Complex Detention Unit ("CDU").

22.    "LOCUM TENENS CONTRACTOR" means any person or entity contracting with ADC to provide HEALTH CARE to ADC PRISONERS.

23.    "MENTAL HEALTH WATCH" means any housing or other status in which a PRISONER is subject to increased observation by ADC STAFF or CONTRACTORS for mental health reasons.

24.    "MID-LEVEL PRACTITIONERS" means licensed professionals who provide HEALTH CARE to PRISONERS at the ADC under supervision by HEALTH CARE CLINICIANS.

25.    "MINUTES" means notes or any other recording reflecting the content of a meeting, whether written contemporaneously with or subsequent to the meeting.

26.    "PHARMACIST" means a professional who practices pharmacy.

27.    "POLICIES AND PROCEDURES" means policies, procedures, criteria, or practices, whether written or established through custom or use, including but not limited to policy and procedure manuals, directors' orders, protocols, directives, flowcharts, institution post orders, and any other DOCUMENTS designed to direct the actions of ADC personnel, ADC CONTRACTORS, and/or PRISONERS.

28.    "POLICY" means policies, procedures, criteria, or practices, whether written or established through custom or use, including but not limited to policy and procedure manuals, directors' orders, protocols, directives, flowcharts, institution post orders, and any other DOCUMENTS designed to direct the actions of ADC personnel, ADC contractors, and/or PRISONERS.

29.    "PRISONER" means a person incarcerated by the ADC.

30.     "PROGRAMS" means a program made available to prisoners in the custody of ADC, including but not limited to rehabilitative, therapeutic, educational, vocational, substance abuse treatment, recreational, re-entry, and faith-based programs; furlough, temporary release, compassionate release, and early release programs; and prison job assignments whether or not for pay.

31.     "REGARDING" or "REGARDED" to any given subject matter means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers to, relates to, responds to, states, summarizes, or is in any way relevant to the particular subject matter identified.

32.     "RESPONSE DATE" means date upon which YOU respond to these discovery requests, or, if YOU amend or supplement YOUR response, the date of YOUR amendment or supplement.

33.     "RESTRICTED DIET" means A medical or soft mechanical diet prescribed pursuant to the Diet Reference Manual (ADC040582-609). For purposes of this document, the term does not include religious diets.

34.     "SPECIALTY CONTRACTOR" means any person or entity contracting with the ADC to provide HEALTH CARE to PRISONERS who is not a LOCUM TENENS CONTRACTOR.

35.     "SPDS" means Smallwood Prison Dental Services, and its corporate predecessors or successors, employees, subordinates, CONTRACTORS, agents, and attorneys.

36.     "SUFFICIENT TO SHOW" means demonstrating or evidencing complete INFORMATION on the requested topic, without the need to produce every DOCUMENT REGARDING the topic.

37.     "TELEPSYCHIATRY" means a session in which a psychiatrist at a remote location speaks with an ADC PRISONER via video link.

38.     "YOU," "YOUR," "YOURSELF," and "DEFENDANTS" means Defendants Charles Ryan and Richard Pratt, and their predecessors, successors, employees, subordinates, CONTRACTORS, agents, and attorneys.

## INSTRUCTIONS

1.      YOU are required to furnish all DOCUMENTS in YOUR possession, custody, or control, including those DOCUMENTS that are in YOUR possession, custody, or control in the normal course of YOUR employment obligations, and those in the possession, custody or control of YOUR (1) employer; (2) consultants; (3) attorneys; (4) representatives; (5) agents; or (6) any other person acting or purporting to act on YOUR behalf or at YOUR direction, whether doing so directly or at the direction of YOUR subordinates.  Possession, custody, or control includes DOCUMENTS stored in electronic form by third party service providers but accessible to the Defendant, including but not limited to email accounts, FTP servers, portable storage media such as USB drives, cloud storage services such as Dropbox or SharePoint , and online workspaces such as WebEx.

2.      All non-identical copies of every DOCUMENT whose production is sought shall be separately produced.

3.      Each request herein constitutes a request for DOCUMENTS in their entirety, with all enclosures and attachments, and without abbreviation, redaction, or expurgation.  DOCUMENTS attached to each other, including but not limited to, by staple, clip, tape, email attachment, or "Post-It" note, should not be separated, although any page on which a Post-It note covers or obscures text on the DOCUMENT should be produced both with and without the Post-It note.  The production must also include, where applicable, any index tabs, file dividers, designations, binder spine labels, or other similar INFORMATION as to the source and/or location of the DOCUMENTS.

4.      DEFENDANTS shall produce any and all drafts and copies of each DOCUMENT that are responsive to any request, including but not limited to copies

1    containing handwritten notes, markings, stamps, or interlineations.  The author(s) of all

2    hand-written notes should be identified.

3        5.    YOU shall produce all responsive DOCUMENTS as they have been kept in

4    the ordinary course of business.

5        6.    Responsive DOCUMENTS that exist only in paper form shall be organized

6    as they have been kept in the ordinary course of business and shall be produced according

7    to the following protocol:

8            a.    Paper DOCUMENTS shall be scanned and produced in TIFF image

9                  form at a resolution sufficient to enable the generation of searchable

10                 text using Optical Character Recognition ("OCR").

11       7.    Responsive DOCUMENTS that exist in electronic form, even if such

12   DOCUMENTS also exist in paper form, shall be produced in electronic form according to

13   the following protocol:

14           a.    Electronic DOCUMENTS shall be produced electronically as single

15                 page, uniquely and sequentially numbered Group IV TIFF image

16                 files of not less than 300 dots per inch resolution, together with

17                 DOCUMENT level load files wherein the full text was extracted

18                 directly from the native file where possible.

19           b.    For files produced in TIFF image form, each page of a produced

20                 DOCUMENT shall have a legible, unique production number

21                 electronically "burned" onto the TIFF image in such a manner that

22                 INFORMATION from the source DOCUMENT is not obliterated,

23                 concealed, or interfered with, preferably in the lower right corner of

24                 the DOCUMENT.  The production number shall contain at least six

25                 digits.   There shall be no other legend or stamp placed on the

26                 DOCUMENT   image,   unless   a   DOCUMENT   qualifies   for

27                 confidential treatment pursuant to the terms of any protective order in

28                 this matter, or if the DOCUMENT requires redaction.  In the case of

confidential materials as defined by any protective order in this matter, any applicable designation may be "burned" onto the DOCUMENT's image at a location that does not obliterate or obscure any INFORMATION from the source DOCUMENT, preferably in the lower left corner.

c.   Each DOCUMENT image file shall be named with the unique production number of the page of the DOCUMENT in question, followed by the extension ".tif". File names should not be more than 20 characters long or contain spaces.

d.   For files produced in TIFF image format, each page of a DOCUMENT shall be electronically saved as an image file. If a DOCUMENT is more than one page, the unitization of the DOCUMENT and any attachments and/or affixed notes shall be maintained as they existed in the original DOCUMENT.

e.   TIFF images shall be accompanied by a standard load file containing the metadata and other fields identified in Paragraph 7(j) of these Instructions, below. The load file shall be produced in one of the following industry-standard formats: (1) Concordance delimited file (".dat"); (2) comma-separated value file (".csv"); or (3) TAB delimited file. TIFF images shall also be accompanied by either an Opticon delimited cross-reference file (".opt") or IPRO View LFP comma-delimited file showing DOCUMENT breaks and appropriate DOCUMENT unitization.

f.   In addition to TIFF images, each production of electronic DOCUMENTS shall include searchable text files corresponding to the TIFF images for each DOCUMENT. The full text of each native electronic DOCUMENT, excluding redacted DOCUMENTS, shall be extracted directly from the native file and produced in a

DOCUMENT-level related text file (the "Extracted Text"). The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with the unique production number of the first page of the corresponding TIFF DOCUMENT followed by the extension ".txt". YOU shall also perform OCR on certain types of non-text based static image ESI, such as native PDF image files, and produce the corresponding DOCUMENT-level related text files. Searchable text files shall be generated from Extracted Text where available.

g.    DOCUMENTS shall be produced on optical media (CD or DVD) or external hard drives or similar, readily accessible electronic media (the "Production Media"). Each piece of Production Media shall IDENTIFY a production number corresponding to the party and production with which the DOCUMENTS on the Production Media are associated (e.g., "RYAN 001"), as well as the volume of the material in that production (e.g., "- 001", "-002"). For example, if the first production wave by YOU comprises DOCUMENT images on three hard drives, YOU shall label each hard drive in the following manner: "RYAN 001-001", "RYAN 001-002", and "RYAN 001-003." The face of each piece of Production Media shall also IDENTIFY: (1) the production date; and (2) the production number range of the materials contained on the Production Media.

h.    Presentation DOCUMENTS (such as Microsoft PowerPoint DOCUMENTS) shall be produced with one slide per page together with any "Speaker's Notes" or similar pages appended to, or otherwise associated with, each slide. Presentation DOCUMENTS shall also be produced according to all other applicable Instructions set forth in this set of requests.

i.   Unless redaction is required, spreadsheet DOCUMENTS (such as Microsoft Excel DOCUMENTS) shall be produced in native format, together with a single page TIFF placeholder bearing the legend "Native File Produced" and load files containing the agreed upon metadata, extracted text, production numbers and any applicable confidentiality labels as described above.  If redaction is required, then spreadsheets shall be produced in TIFF image format as set forth above.

j.   For all DOCUMENTS for which metadata exists, the load files described above shall be produced including the following fields:

| Fields for all DOCUMENTS | Description |
|---|---|
| BegProd | Beginning production number assigned to each DOCUMENT |
| EndProd | Ending production number assigned to each DOCUMENT |
| BegAttach | Beginning production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| EndAttach | Ending production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| Custodian | The name of the person or source from which the DOCUMENT was obtained |
| FileName | Original file name |
| FilePath | Original file path |
| DocExt | DOCUMENT type as identified by metadata associated with the native DOCUMENT indicating the extension of the application that created the native DOCUMENT (e.g., .doc, .ppt, etc.) |
| HashValue | The unique identifying value assigned to a DOCUMENT based on hash coding algorithms |
| Author | The person or source that originated the |

| Fields for all DOCUMENTS | Description |
|---|---|
|  | DOCUMENT |
| DateCreated | Date that the DOCUMENT was created (as reflected by metadata) |
| LastModifiedDate | Date that the file was last modified (as reflected by metadata) |
| FullText | The path or link to the searchable Extracted or OCR text for a DOCUMENT |
| NativeFile | The path or link to a processed and produced native file, to the extent the production contains native files |
| Confidentiality | The confidentiality designation for the DOCUMENT, as defined by any protective order in this matter |
| **Additional Fields for Email** | **Description** |
| To | All information contained in the "To" field of an email |
| From | All information contained in the "From" field of an email |
| CC | All information contained in the "CC" field of an email |
| BCC | All information contained in the "BCC" field of an email |
| DateSent | Date the email was sent, including month, day and year |
| TimeSent | Time the email was sent, including hour, minute, second and time zone. To the extent this information is already included in the DateSent field in the metadata, YOU need not parse TimeSent as a separate field. |
| DateReceived | Date the email was received, including the month, day and year |
| TimeReceived | Time the email was received, including hour, minute, second and time zone. To the extent this information is already included in the DateReceived field in the metadata, YOU need not parse TimeReceived as a separate field. |
| Subject | Subject or "Re:" line, as stated in the email |

8.      If with respect to any request there are no responsive DOCUMENTS, so state in writing.

9.      The following rules of construction shall be applied herein: (a) the words "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope ; (b) the use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural; (c) the words "any," "all," "each" and "every" all include any, all, each, and every and shall be understood in either their most or least inclusive sense as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; and (d) the use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the DOCUMENT requests all responses that might otherwise be construed to be outside of their scope.

10.      If YOU object to a portion or an aspect of a request, state the grounds for YOUR objection with specificity and respond to the remainder of the DOCUMENT request.  If any DOCUMENTS, or portion thereof, are withheld because YOU claim that such INFORMATION is protected under the attorney-client privilege, work product doctrine, or other privilege or doctrine,  YOU are required to provide a privilege log setting forth the specific basis for the claim of privilege or protection and for each DOCUMENT provide the following:

a.      the subject matter of the DOCUMENT;

b.      the title, heading or caption of the DOCUMENT, if any;

c.      the date appearing on the DOCUMENT or, if no date appears thereon, the date or approximate date on which the DOCUMENT was prepared;

d.   the type of the DOCUMENT (e.g., whether it is a letter, memorandum, MINUTES of meeting, etc.) and the number of pages of which it consists;

e.   the identity of the person who signed the DOCUMENT or, if it was not signed, the person who prepared it;

f.   the identity of each person to whom the DOCUMENT was addressed and the identity of each person to whom a copy thereof was sent; and

g.   the identity of each person who has custody of a copy of each such DOCUMENT.

11.   If YOU claim that a portion of a DOCUMENT is protected from disclosure for any reason, produce such DOCUMENT with redaction of only the portion claimed to be protected.  When such redactions for privilege or protection are made, YOU shall place a legend similar to "REDACTION – PRIVILEGE" on the copy of the DOCUMENT produced.   All redactions shall also be included on the privilege log described in Instruction #4.

12.   If YOU object that a request is vague or ambiguous, IDENTIFY the objectionable aspect of the request.

13.   If a request cannot be responded to in full, YOU shall respond to the extent possible, specify the reason for YOUR inability to respond to the remainder, and state whatever INFORMATION or knowledge YOU have REGARDING the portion to which YOU have not responded.

14.   If any DOCUMENT called for by these requests has been destroyed, lost, discarded, or is otherwise no longer in YOUR possession, custody, or control, IDENTIFY such DOCUMENT as completely as possible, and specify the date of disposal of the DOCUMENT, the manner of disposal, the reason for disposal, the person authorizing disposal, and the person disposing of the DOCUMENT.

15.     These requests are sequentially numbered and each numbered paragraph constitutes a single request.  Defined terms may be capitalized for the convenience of the parties; the definitions herein apply whether or not the term is capitalized.

16.     Except where expressly stated, these requests are not limited in any way by geography.

17.     These requests shall be deemed continuing in nature in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.  Supplemental responses are required if additional responsive INFORMATION is acquired or discovered between the time of responding to this request and the time of trial.

18.     Unless otherwise specified, the relevant time period, and the period for which YOU are required to provide responsive DOCUMENTS, is from and including January 1, 2011  up to and including the RESPONSE DATE.

## DOCUMENTS REQUESTED

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS, other than DOCUMENTS relating or referring to individual PRISONERS, REGARDING the issuance and distribution of RESTRICTED DIETS to PRISONERS.   This request includes, but is not limited to, any formal or informal POLICIES AND PROCEDURES, any DOCUMENTS relating to any training or guidance provided to ADC, Corizon, or SPDS employees REGARDING prescribing or delivering RESTRICTED DIETS to PRISONERS, and any DOCUMENTS REGARDING the enforcement or quality control of any POLICIES AND PROCEDURES relating to RESTRICTED DIETS.

**RESPONSE TO REQUEST NO. 1:**

1   **REQUEST FOR PRODUCTION NO. 2:**

2       All updated POLICIES AND PROCEDURES, including but not limited to training

3   materials, that ADC has received from SPDS.

4   **RESPONSE TO REQUEST NO. 2:**

5

6

7

8   **REQUEST FOR PRODUCTION NO. 3:**

9       The "Standing Medical Order: Toothache/Dental Abscess" referenced in

10  Paragraph 3.0 of Procedure 787 in The Dental Services Technical Manual (January 1,

11  2010).

12  **RESPONSE TO REQUEST NO. 3:**

13

14

15

16  **REQUEST FOR PRODUCTION NO. 4:**

17      Any and all HEALTH CARE records for the PRISONERS listed in Exhibit A

18  attached to this document, entitled "List of Health Care Records Requested (RFP No. 4)."

19  **RESPONSE TO REQUEST NO. 4:**

20

21

22

23  **REQUEST FOR PRODUCTION NO. 5:**

24      The master file for the PRISONERS listed in Exhibit B attached to this document,

25  entitled "List of Master Files Requested (RFP No. 5)."

26  **RESPONSE TO REQUEST NO. 5:**

27

28

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS and POLICIES AND PROCEDURES REGARDING PROGRAMS provided to PRISONERS in ISOLATION.

**RESPONSE TO REQUEST NO. 6:**

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS REGARDING heat or humidity measurements taken in ADC housing units from June 1, 2013 to present.

**RESPONSE TO REQUEST NO. 7:**

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS REGARDING ADC POLICIES AND PROCEDURES designed to protect PRISONERS from heat injury.

**RESPONSE TO REQUEST NO. 8:**

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS REGARDING housing transfers of ADC PRISONERS to protect them from heat injury from June 1, 2013 to present.

**RESPONSE TO REQUEST NO. 9:**

1

2  **REQUEST FOR PRODUCTION NO. 10:**

3      All DOCUMENTS REGARDING incidents of dehydration or any other heat-

4  related illness or injury to ADC PRISONERS from June 1, 2013 to present.

5  **RESPONSE TO REQUEST NO. 10:**

6

7

8

9  **REQUEST FOR PRODUCTION NO. 11:**

10     All DOCUMENTS REGARDING the malfunction or breakdown of ADC climate

11 control systems from June 1, 2012 to present.

12 **RESPONSE TO REQUEST NO. 11:**

13

14

15

16 **REQUEST FOR PRODUCTION NO. 12:**

17     All DOCUMENTS REGARDING self-harm incidents by ADC PRISONERS, by

18 institution and custody level, from June 1, 2012 to present.  (*See* 2/12/13 email from

19 Charles Ryan to ADC staff, stating that ADC tracks self-harm incidents by institution and

20 custody level).

21 **RESPONSE TO REQUEST NO. 12:**

22

23

24

25 **REQUEST FOR PRODUCTION NO. 13:**

26     All DOCUMENTS REGARDING mental health group PROGRAMS scheduled

27 from June 1, 2012 to present.

28

1    **RESPONSE TO REQUEST NO. 13:**

2

3

4

5    **REQUEST FOR PRODUCTION NO. 14:**

6        All DOCUMENTS REGARDING mental health group PROGRAMS actually held

7    from June 1, 2012 to present.

8    **RESPONSE TO REQUEST NO. 14:**

9

10

11

12   **REQUEST FOR PRODUCTION NO. 15:**

13       All DOCUMENTS REGARDING PRISONERS' attendance at mental health

14   group PROGRAMS from June 1, 2012 to present.

15   **RESPONSE TO REQUEST NO. 15:**

16

17

18

19   **REQUEST FOR PRODUCTION NO. 16:**

20       All DOCUMENTS REGARDING the cancellation of scheduled mental health

21   group PROGRAMS from June 1, 2012 to present.

22   **RESPONSE TO REQUEST NO. 16:**

23

24

25

26   **REQUEST FOR PRODUCTION NO. 17:**

27       All DOCUMENTS REGARDING the "detailed information on ADC's operations"

28   provided to Rep. Chad Campbell.  (*See* Mary K. Reinhart, Campbell calls for Arizona

1   prison    chief    to    resign,    Arizona    Republic,    July    23,    2013,

2   http://www.azcentral.com/news/politics/articles/20130723campbell-calls-arizona-prison-

3   chief-resign.html, attached to this document as Exhibit C).

4   **RESPONSE TO REQUEST NO. 17:**

5

6

7

8   **REQUEST FOR PRODUCTION NO. 18:**

9       The formulary governing prescription of medications to ADC PRISONERS.

10  **RESPONSE TO REQUEST NO. 18:**

11

12

13

14  **REQUEST FOR PRODUCTION NO. 19:**

15      All DOCUMENTS REGARDING the POLICIES AND PROCEDURES for

16  HEALTH CARE CLINICIANS to request a non-formulary medication.

17  **RESPONSE TO REQUEST NO. 19:**

18

19

20

21  **REQUEST FOR PRODUCTION NO. 20:**

22      All POLICIES AND PROCEDURES governing the use of TELEPSYCHIATRY

23  in ADC institutions.

24  **RESPONSE TO REQUEST NO. 20:**

25

26

27

28

**REQUEST FOR PRODUCTION NO. 21:**

All schedules and other DOCUMENTS REGARDING the provision of TELEPSYCHIATRY from June 1, 2012 to present.

**RESPONSE TO REQUEST NO. 21:**

**REQUEST FOR PRODUCTION NO. 22:**

All mental health screening forms used with PRISONERS arriving at an ADC reception center.

**RESPONSE TO REQUEST NO. 22:**

**REQUEST FOR PRODUCTION NO. 23:**

All POLICIES AND PROCEDURES governing the provision of interpreters for medical, mental health, or DENTAL encounters for PRISONERS who do not speak English.

**RESPONSE TO REQUEST NO. 23:**

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS REGARDING ADC's POLICIES AND PROCEDURES on monitoring the side effects of psychotropic medications.

**RESPONSE TO REQUEST NO. 24:**

1

2  **REQUEST FOR PRODUCTION NO. 25:**

3       All HEALTH CARE records and portions thereof that were identified for copying

4  during Plaintiffs' expert inspections.

5  **RESPONSE TO REQUEST NO. 25:**

6

7

8

9  **REQUEST FOR PRODUCTION NO. 26:**

10       All photographs that were taken during Plaintiffs' expert inspections.

11  **RESPONSE TO REQUEST NO. 26:**

12

13

14

15  **REQUEST FOR PRODUCTION NO. 27:**

16       All DOCUMENTS REGARDING insect, pest, and vermin eradication measures

17  conducted in ADC housing units from January 1, 2013 to the present.

18  **RESPONSE TO REQUEST NO. 27:**

19

20

21

22  **REQUEST FOR PRODUCTION NO. 28:**

23       All   DOCUMENTS   REGARDING   ADC   POLICIES   AND   PROCEDURES

24  designed to eradicate insects, pests, and vermin in ADC housing units.

25  **RESPONSE TO REQUEST NO. 28:**

26

27

28

1   **REQUEST FOR PRODUCTION NO. 29:**

2       All DOCUMENTS REGARDING ADC POLICIES AND PROCEDURES for

3   issuing clothing to PRISONERS in ISOLATION, including any variations in clothing

4   issued by unit, a PRISONER'S programming "phase" or "stage" level, and season.

5   **RESPONSE TO REQUEST NO. 29:**

6

7

8

9   **REQUEST FOR PRODUCTION NO. 30:**

10      All DOCUMENTS REGARDING the "phase" or "stage" levels in the

11  ISOLATION units, including but not limited to, any orientation materials issued to

12  PRISONERS in the ISOLATION units, and any materials used by ADC STAFF to

13  determine a PRISONER'S progression or regression through a "phase" or "stage" in the

14  ISOLATION units.

15  **RESPONSE TO REQUEST NO. 30:**

16

17

18

19  **REQUEST FOR PRODUCTION NO. 31:**

20      All monthly PROGRAM schedules in the ISOLATION units from January 1, 2013

21  to the present.

22  **RESPONSE TO REQUEST NO. 31:**

23

24

25  **REQUEST FOR PRODUCTION NO. 32:**

26      All waiting lists of PRISONERS in ISOLATION who are currently eligible for a

27  job but who do not hold a job.

28

1  **RESPONSE TO REQUEST NO. 32:**

2

3

4

5  **REQUEST FOR PRODUCTION NO. 33:**

6      All DOCUMENTS REGARDING the schedules for cleaning the ISOLATION

7  units.

8  **RESPONSE TO REQUEST NO. 33:**

9

10

11

12  **REQUEST FOR PRODUCTION NO. 34:**

13      All DOCUMENTS REGARDING ADC POLICIES AND PROCEDURES for

14  cleaning cells in ISOLATION and MENTAL HEALTH WATCH between occupants.

15  **RESPONSE TO REQUEST NO. 34:**

16

17

18

19  **REQUEST FOR PRODUCTION NO. 35:**

20      All DOCUMENTS REGARDING the number of classification custody

21  discretionary overrides classifying PRISONERS into or out of maximum custody from

22  January 1, 2013 to the present.

23  **RESPONSE TO REQUEST NO. 35:**

24

25

26

27

28

1

**REQUEST FOR PRODUCTION NO. 36:**

2      All DOCUMENTS REGARDING medical specialty services provided on-site at

3 prison complexes, including but not limited to the schedules and names of PRISONERS

4 seen on-site for the past year.

5

**RESPONSE TO REQUEST NO. 36:**

6

7

8

9

**REQUEST FOR PRODUCTION NO. 37:**

10      All DOCUMENTS REGARDING medical specialty services provided through

11 telemedicine at prison complexes, including but not limited to the schedules and names of

12 PRISONERS seen via telemedicine for the past year.

13

**RESPONSE TO REQUEST NO. 37:**

14

15

16

17

**REQUEST FOR PRODUCTION NO. 38:**

18      All DOCUMENTS REGARDING the menus of the general population, restricted

19 movement, suicide/MENTAL HEALTH WATCH, and RESTRICTED DIETS, including

20 for each prison, documents for the month of July 2013 showing the number of each diet

21 provided and the menus for each type of diet described in the Diet Reference Manual.

22

**RESPONSE TO REQUEST NO. 38:**

23

24

25

26

**REQUEST FOR PRODUCTION NO. 39:**

27      All DOCUMENTS REGARDING the number of PRISONERS who are provided

28 therapeutic or soft food diets, as tracked by the contracted provider of food services at

LEGAL27578843.1

1  ADC facilities, as described in Defendants' response to Verduzco's First Request for
2  Admissions, Request for Admission No. 227.

3  **RESPONSE TO REQUEST NO. 39:**

4

5

6

7  **REQUEST FOR PRODUCTION NO. 40:**

8      All DOCUMENTS showing the timeliness of chronic care appointments for
9  PRISONERS identified as having chronic medical conditions.

10  **RESPONSE TO REQUEST NO. 40:**

11

12

13

14  **REQUEST FOR PRODUCTION NO. 41:**

15      All DOCUMENTS REGARDING the timeliness of off-site specialty care
16  appointments for the past year.

17  **RESPONSE TO REQUEST NO. 41:**

18

19

20

21  **REQUEST FOR PRODUCTION NO. 42:**

22      Any blank forms used by health care practitioners to order special diets or diet
23  supplements.

24  **RESPONSE TO REQUEST NO. 42:**

25

26

27

28

1    **REQUEST FOR PRODUCTION NO. 43:**

2         The entire contents of the binder marked ADC diet reference manual, as seen by

3    Dr. Wilcox at the Yuma complex in the Cheyenne unit.

4    **RESPONSE TO REQUEST NO. 43:**

5

6

7

8    **REQUEST FOR PRODUCTION NO. 44:**

9         The two-page "educational handout" shown to Dr. Wilcox during his tour of the

10   Yuma complex and referred to in the ADC diet reference manual seen in the Yuma

11   complex.

12   **RESPONSE TO REQUEST NO. 44:**

13

14

15

16   **REQUEST FOR PRODUCTION NO. 45:**

17        The contents of the binder containing log entries of HNRs that was viewed by Dr.

18   Wilcox at the Yuma complex, Cocopah unit.  A computer print-out that corresponds to the

19   HNRs listed in the binder, documenting the dates and/or descriptions of any actions taken

20   in response to the HNRs.

21   **RESPONSE TO REQUEST NO. 45:**

22

23

24

25   **REQUEST FOR PRODUCTION NO. 46:**

26        The document shown to Dr. Wilcox at the Yuma complex setting forth a "diet log"

27   from La Paz North and South, listing names and numbers of prisoners, types of diets or

28   supplements, and start and end dates.

LEGAL27578843.1

1    **RESPONSE TO REQUEST NO. 46:**

2

3

4

5    **REQUEST FOR PRODUCTION NO. 47:**

6         The NETS manual viewed by Dr. Wilcox during pill call on the Cheyenne unit of

7    the Yuma complex with nursing SOAP notes.

8    **RESPONSE TO REQUEST NO. 47:**

9

10

11

12   **REQUEST FOR PRODUCTION NO. 48:**

13        Produce data kept by the ADC that tracks the following across units, prisons,

14   specific populations or the ADC in its entirety:

15        1.      Compliance and/or non-compliance  with ADC's Mental Health Policies.

16        2.      Compliance and/or non-compliance with ADC's Dental Policies.

17        3.      Compliance and/or non-compliance with ADC's Medical Care Policies.

18        4.      Compliance and/or non-compliance  with the enhanced health monitoring of

19                seriously mentally ill (SMI) inmates that requires that each such inmate is to

20                be evaluated every 30 days as set forth in Defendant Charles Ryan's First

21                Supplemental Answers to Plaintiff Dustin Brislan's First Set of Requests for

22                Admissions, Response to Request No. 1.

23        5.      Compliance and/or non-compliance with the ADC pre-requirement that each

24                prisoner receive a minimum of six hours per week of exercise time unless

25                prohibited by a legitimate security need.

26        6.      Compliance and/or non-compliance with the ADC policy that requires a

27                face-to-face contact with psychiatric staff, including either a psychiatrist of

28                mental health professional in consultation with a psychiatrist in order for a

1          prisoner to renew psychotropic medication.

2          7.    The number of prisoners who meet with a psychiatric provider on a daily,

3                weekly, monthly quarterly or annual basis.

4          8.    The number of prisoners prescribe psychotropic medication.

5          9.    The number of prisoners placed in mental health restraints or a restraint

6                chair.

7          10.   The number and/or type of 911 calls placed relating to prisoner health care.

8          11.   Any aspect of suicides by prisoners.

9          12.   Actual wait times for any type of medical treatment(s) or appointment(s).

10   **RESPONSE TO REQUEST NO. 48:**

11

12

13

14   **REQUEST FOR PRODUCTION NO. 49:**

15          Produce copies of any televised material that you will contend at trial at trial is

16   relevant to the class claims and an adequate alternative to in person care.

17   **RESPONSE TO REQUEST NO. 49:**

18

19

20

21   **REQUEST FOR PRODUCTION NO. 50:**

22          For the following medical records, produce all HNRs from January 1, 2009 to present, the

23   entire section for "dental," and all documents in the consents/refusals section since January 1,

24   2009.

25          Merrick, JD 99252
             Heser, Glen 42693
26          Minnis, Greg 155351
             Conroy, Raymond 13179
27          Leon, Michael 61657
             Douglas, Jeff 58263
28          Nevarez, Arturo 228792

LEGAL27578843.1

Winkler, Jesse 259742
Schwartz, Thomas 64805
Milburn, Matthew 45655
Garcia, Maryann 105507
Kapus, Brook 180853
Koehler, Riki 106735
Rogers, Verna 147287
Shears, Tana 253471
Haddock, Kenneth 205997
Rogowski, Daniel 108202
O'Rourke, William 25281
Sharp, David 194939
Worley, Glenn 257008
Bozzo, Blaine 207036
Shaw, Carlos 214336
Fulilangi, Ake 243355
Rivas, Carlos 109759
Dossett, Gregory 56282
Cruz, Samuel 262667
Brumm, Tony 59088
Howarth, Scott 261299
Bustamante, Mario 243426
Medina, Ernesto 235957
Davidson, Stephen 209199

**RESPONSE TO REQUEST NO. 50:**

**REQUEST FOR PRODUCTION NO. 51:**

To the extent YOU deny or otherwise fail to admit any request in Plaintiff Desiree Licci's First Set of Requests for Admission, all DOCUMENTS supporting such denial or failure to admit.

**RESPONSE TO REQUEST NO. 51:**

**REQUEST FOR PRODUCTION NO. 52:**

To the extent YOU deny or otherwise fail to admit any request in Plaintiff Robert Gamez's First Set of Requests for Admission, all DOCUMENTS supporting such denial or failure to admit.

1    **<u>RESPONSE TO REQUEST NO. 52:</u>**

2

3

4

5    Dated:  August 13, 2013                    **JONES DAY**

6                                               By: s/ Sophia Calderón

7                                               Caroline Mitchell (Cal. 143124)*
                                                David C. Kiernan (Cal. 215335)*
8                                               Sophia Calderón (Cal. 278315)*
                                                Sarah Rauh (Cal. 283742)*
9                                               555 California Street, 26th Floor
                                                San Francisco, California 94104
10                                              Telephone:  (415) 875-5712
                                                Email:     cnmitchell@jonesday.com
11                                                         dkiernan@jonesday.com
                                                           scalderon@jonesday.com
12                                                         srauh@jonesday.com

13                                              *Admitted *pro hac vice*

14                                              John Laurens Wilkes (Tex. 24053548)*
                                                Taylor Freeman (Tex. 24083025)*
15                                              **JONES DAY**
                                                717 Texas Street
16                                              Houston, Texas 77002
                                                Telephone:  (832) 239-3939
17                                              Email:     jlwilkes@jonesday.com
                                                           tfreeman@jonesday.com
18                                              *Admitted *pro hac vice*

19                                              Kamilla Mamedova (N.Y. 4661104)*
                                                Jennifer K. Messina (N.Y. 4912440)*
20                                              **JONES DAY**
                                                222 East 41 Street
21                                              New York, New York 10017
                                                Telephone:  (212) 326-3498
22                                              Email:     kmamedova@jonesday.com
                                                           jkmessina@jonesday.com
23

24                                              *Admitted *pro hac vice*

25

26

27

28

LEGAL27578843.1

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF
ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:      dpochoda@acluaz.org
               kflood@acluaz.org
               jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct.
R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:      dspecter@prisonlaw.com
               ahardy@prisonlaw.com
               snorman@prisonlaw.com
               ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON
PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:      dfathi@npp-aclu.org
               afettig@npp-aclu.org
               aquereshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted
 in DC; practice limited to federal
 courts.
**Admitted *pro hac vice*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:      dbarr@perkinscoie.com
            agerlicher@perkinscoie.com
            keidenbach@perkinscoie.com
            jhgray@perkinscoie.com
            mdumee@perkinscoie.com

*Attorneys for Plaintiffs Shawn Jensen;*
*Stephen Swartz; Dustin Brislan; Sonia*
*Rodriguez; Christina Verduzco; Jackie*
*Thomas; Jeremy Smith; Robert Gamez;*
*Maryanne Chisholm; Desiree Licci; Joseph*
*Hefner; Joshua Polson; and Charlotte Wells,*
*on behalf of themselves and all others*
*similarly situated*

# EXHIBIT

# A

**EXHIBIT A**

**LIST OF HEALTH CARE RECORDS REQUESTED (RFP No. 4)**

I. **Request for Inspection of Most Recent Volume:**

    A. **Prisoners at ASPC-Florence (previously listed on expert tour set up letter)**
        Addis, Gary, #246793
        Akridge, Rodney, #84478
        Alvarado-Montez, George, #241621
        Aranda, Guadalupe, #113047
        Betterton, Trenton, #277788
        Chavez, Marco, #187239
        Cheser, Joseph, #158106
        Chumbler, Jason, #213303
        Cordova, Gilbert, #173352
        Coronado, Pete, #33329
        Cruz, Hipolito, #175323
        Dehe, Manfred, #269783
        Delgado, Phillip, #74329
        Dose, Anthony, #197106
        Everley, Chris, #203114
        Faulkner, Donald, #252682
        Feltner, Richard, #91975
        Gutierrez, Manuelito, #139928
        Haley, James, #75188
        Hampton, Darryl, #225275
        Harris, John, #177765
        Harrison, Charles, #82360
        Hernandez, Ricardo, #35326
        Hildenbrand, Richard, #140990
        Hitchcock, James, #177921
        Homer, Kevin, #180025
        Jenkins, Christopher, #118514
        Johnson, Richard, #81442
        Jordan, Walter, #78789
        Koehler, William, #165210
        Korte, Damon, #213356
        Leon, Miguel, #201494
        Lopez, Bruno, #31390
        Martin, David, #217317
        Martinez, Salvador, #208833
        Maxwell, Christopher, #158586
        Montoya, Joshua, #208217
        Mushatt, Dythanyl, #186772
        Nava, Conrad, #192735

Nez, Frankie, # 257870
Pearson, Matthew, #199279
Pemberton, Joseph, #83807
Perkins, Michael, #269919
Porter, Christopher, #128972
Puckett, Ricky, #129580
Ree, John, #172999
Rios, Federico, #199480
Robinson, Elvia, #52352
Sanchez-Perez, Jorge, #235024
Shelley, William, #259371
Skaggs, Gary, #216765
Smith, Gary, #267300
Southworth, Shawn, #257109
Steah, Kee, #200537
Stewart, Ramon, #208756
Stoeckel, Loren, #261727
Terry, Jamie, #268085
Williams, Berry, #267365

**B.     Prisoners at ASPC-Winslow (previously listed on expert tour set up letter)**

Anyan, Raymond, #144998
Arrieta, Daniel, #213487
Calhoun, John, #50600
Catalan-Herrera, Jesus, #228670
Corona, Hipolito, #175323
Curley, Herman, #46938
Dorman, Jeff, #275874
Estillore, Shane, #169466
Felix-Pinzon, Efren, #242738
Garcia, Arnold, #273715
Gastelum, Jeff, #85013
Goad, Robert, #67001
Jewitt, Jack, #106380
Khoury, Monier, #236429
Lucero, Luis, #169986
Mason, Justin, #205452
Medina-Moreno, Jesus, #212283
Ortega, David, #139367
Perondi, Angelo, #140844
Ramirez, Juan, #171942
Roby, Elmo, #278727
Ruiz, Jimmy, #246829
Shepherd, Demitiri, #271352
Stonecipher, Curtis, #128431
Vasquez-Remigio, Ivan, #254787

**C.     Prisoners at ASPC-Tucson:**

Aguilar-Hernandez, Ricky, #156468
Allan, Gary, #267802
Alvarado, Jesse, #59906
Anderson, Rusty, #222342
Apolinar, George, #274761
Armbruster, Royce, #48573
Avila, Pedro, #47094
Bernal, Carlos, #258629
Brewster, Jay, #266712
Brilz, Joseph, #204759
Burns, Jeffrey, #231300
Caballero, Alfred, #212756
Charlie, Jimmie, #49134
Clements, Rodney, #156175
Cook, Michael, #71546
Corral, William, #81620
Cosen, Leon, #280937
Day, Richard, #202495
Edwards, Orlando, #207300
Elkanick, Luke, #207211
Fierros, George , #58206
Flagg, Andrew, #270412
Frankeny, Robert, #94785
Frieses, Allen, #280257
Gilbert, Monancco, #278595
Gossett, David, #81630
Graciano, Fernando, #255968
Grooms, Daniel, #243708
Guevara, Raymond, #118362
Guida, Orlando, #256355
Hamilton, Timothy, #257423
Harvey, Thomas, #227207
Hernandez, Dennis, #138137
Hernandez, Ruben, #217451
Herrada, Brian , #277907
Hillard, Shawn, #112970
Hoard, October, #82764
Howard, Jeffrey, #49806
Hubbard, Jerry, #140843
Jackson, Roger, #90740
Jessup, Terrence, #90373
Johnson, Eric, #272454
Johnson, Steven, #235714
Judd, Thomas, #280424

Justice, Ronald, #156637
Katona, Joe, #263092
Kennedy, Josef, #113924
Krick, James, #210691
Lapada, Gildardo, #76778
Larsgard, John, #271552
Lemar, Timothy, #279507
Lewis, Antron, #150014
Lobo, Mark, #269511
MacCool, Finn, #71383
Machir, Daniel, #190972
Marcum, Kenneth, #266043
Mayo, Esteban, #173466
McCallum, Derrick, #186822
McKenzie, Andrew, #251666
Mendiola, Enoc, #253193
Miller, Jesse, #278113
Morales, Christopher, #275737
Pena, Miguel, #234944
Peterson, Terry, #33546
Pierce, Dean, #275891
Plasa, Robert, #268330
Powell, Edward, #89254
Racicot, Robert, #254502
Ramirez, Juan, #192673
Rinninger, Cary, #255275
Roberts, Donovan, #276756
Roberts, Michael, #79600
Rodriguez, George, #163888
Rodriguez, Inez, #276756
Ruben, Danior, #251201
Salazar, Luis, #239752
Salmon, Troy, #1874376
Sanchez, Able, #253543
Shields, Johnny, #103270
Steed, Kenneth, #29145
Sullivan, Joseph, #57766
Sundiata, Adiya, #130798
Swanson, John, #135973
Thompson, Shawn, #134533
Thran, Adam, #257951
Torres, Martin, #158092
Twigg, Daniel, #143625
Ventura, Miguel, #219103
Vigil, Larry, #237346
Virgil, Christopher, #239377

Yeager, James, #191146
Youngkin, Adam, #270150
Zamora, Adrian, #226075

**D.     Prisoners at ASPC-Douglas**

Ahern, Daniel, #275908
Armijo, Santino, #205724
Bell, Richard , #107357
Benjamin, Jordan, #264098
Bosquez, Robert, #253862
Brooks, Robert, #74440
Burleson, Christopher, #269189
Dossett, Gregory, #56282
Durazo, Alberto, #151337
Flores, Jesus, #79529
Gilbreath, James, #271790
Gonzalez, Gerald, #187763
Graves, Thomas, #236947
Gregg, Keith, #267625
Guebara, Manuel, #189248
Hale, Michael, #271242
Hanze, Jason, #254319
Hayes, James, #184856
Herrera, Thomas, #78507
Hodges, William, #235345
Kuczynski, Richard, #120366
Lopez, Manuel, #114556
Lujan, Filemon, #191965
McDermott, Robert, #201659
Mendez, Angel, #169515
Mendoza-Soto, Neftali, #255612
Paroli, Michael, #253162
Patin, Kenneth, #102090
Rincon, Refugio, #230431
Rodgers, Charlie, #264166
Sanchez, Johnny, #55826
Saucedo, Gabriel, #243304
Smith, Steven, #269226
Solano, Domingo, #252150
Tabor, Scott, #114707
Tepeyac, Milton, #252208
Thomas, Steven, #102003
Valenzuela, Efrain, #194176
Williams, Sandran, #165732
Woodhead, Alex, #273347
Zarate, Xavier, #275894

**E.    Prisoners at ASPC-Safford**
Altamirano, Gilbert, #158831
Balderaz, Johnn, #78322
Baldwin, Brandon, #273482
Bluntschly, Robert, #132654
Brown, Kyle, #280781
Bruce, David, #261126
Caballero, Jose, #224643
Corona, Johnny, #69014
Correa, Danny, #66471
Dockum, Jason, #181945
Estrada, Samuel, #178235
Galindo, Conrad, #53806
Hernandez, Julio, #208823
Johnson, Marc, #126590
Juarez-Ruiz, Felix, #269235
Lewis, Richard, #115135
Londo, Toommy, #152070
Lopez-Velasquez, Daniel, #274784
Loya, Ismael, #275327
Martinez-Escobedo, Miguel, #265123
Menendez, Justin, #111590
Meza, Victor, #251800
Miranda, Arthur, #92248
Morales, Ricardo, #119831
Nevarez, Daniel, #202812
Quarrels, Leonard, #197011
Ray, Douglas, #77215
Rojelio, Alberto, #272836
Swapp, Darrell, #180667
Voong, Hung, #136016
Wallace, Wesley, #87365
Weeks, Damien, #222215

**II.    Requesting Production of Copies of Most Recent Volume (In Addition to Pages Flagged During Tours)**

**A.    Perryville Prisoners**
Regan Clarine, 276836
Chene Manley, 144981
Kathryn Miller, 277505
Danette Porter, 255037
Delma Troy, 226501
Virginia Anderson, #265961
Sandra Banks, #276868

Chrystal Cunningham, #224317
Pamela England, #142291
Danielle Fisher #274353
Margaret Ihms, #233157
Arlene Leon, #246975
Norma Lowe, #083360
Lisa Long, #264410
Tiffany McNeish, #194635
Bernadette Deanna Ramirez, #264284
Sheila Manygoats #193693
Tory Lynn Williams #190756
Christina Ann Perez #194526
Tameka Ternoir #212090
Jennifer Wheeler #228570
Danette Taulbee  #273151
Jamie Nicole Cruz #237919
Latonya Cain #172377
Patricia Chavez #228178

**B.**      **Male Prisoners**

  **1.**      **Eyman**
Robert Flemming, #090689
Jason Avery, #269351
Kristopher Kimmerling, #154443
Kendall Pearson, #246092
Robert Lopez, #179081
Luis Saucedo, #170180
Alfred Davis, #183961
Javier Celaya, #238704
Ray Arce #151480
Eric Caicedo-Caneloz #228215
Charles Bade #279059
Edward Joh Sanders #118868
Ryan Tenny #263981
Roger Lagazo #156280
Isaac Valle #126113
Carlos Alvarado #050444
Shaun Harris #198341
Robert Jaramillo #039278
Rocky Collins #040513
Alex Sanchez #235989
Jesse Wozniak #129673
Edward Martinez #121022
Eric Deluca, #153954
Miguel Rivera, #239996

Michael Hernandez, #211872
Leroy Montoya, #238802
Anthony Sepulveda, #222800
Billy Johnson, #225801
Ramon Patino, #134104
Snitty Long, #156721
Dennis Eddy #053476
Tavarus Bell, #254623
Louis Avanzi, #104515
Dustin Varela, #274845
Salvador Sanabira #268794
Victor Martinez, #280392
Robert Johnson, #065631
Danny Schmidt, #254619
Johnny Casillas, #119986
Samuel Sanchez, #242227
Jeremy Price, #162486
Thomas Kane, #060051
Frank Racer, #108121
Royal Sanchez, #049686

**2.      Florence**
William Gobbett, #225268
Jeremy Begay, #273183
Sergio Andrade, #195824
Jack McGee, #220171
George Lamas, #218510
Michael Walliser, #181344
Kemp Horton, #202496
Fermin Vidal, #147564
David Metcalf, #126539
Santino Zanghi, #229344
Joaquin Elizalde-Cota, #280890
Luis Salazar, #239752
Miguel Lopez, #246307
Jose Amayo-Ruiz, #57279
Sampson Hays, #258100
Daniel Allen, #276661
Tristan Rossum, #121496
Ramon Martinez #076688
Leonard Bean #159352
Frank Galo #150621
Willie Johnson #220930
Christopher Pavloff #264480
Zachary MacIssac #252577
Jody Sullivan #182295

Mark Martinez #200893
Frankie Rodriguez #140309
Enrique Garza #248056
Anthony Hand #266711
Robert Dumond #180847
Jesse Mauricio #128194
Jesse Casas #156294
Tony Pruitt #175985
Jason Jones #242070
Chase Blackshear #208994
Wolfgang Ehmke #132189
Charles Johnson #099855
Eric Nelson #157808
Noe Jimenez #239038
Jesse Papanek #180906
Andrew Solorzano #281250
Samuel Wright #207261
David Ruiz #213456
Robert Harmon #251293
Brandon Antonides #153201
Robert Aloia #070520
Nathaniel Vargas #138514
Henry Ochoa #257721

**3.    Lewis**
Michael Kiel, #166428
James Hill, #085078
John Koch, #170635
Jason Elder, #150231
Norman Flanigan, #177442
Jose Juarez, #186820
Shawn Chock, #256000
Gabriel Ramirez, #173799
Emery White, #165183

**4.    Phoenix**
Johnny Gurule, #117783
Miguel Coronado, #113546
Daniel Grigsby, #088635
Austin Breshear, #214264
Gary Hall, #207113
Vincent Velardez, #071329
Richard Green, #116948
Allen Mosley, #091711
Terry Atkins, #176929
Andrew Fancy, #262420

**5.      Yuma**

Robert Inigo, #083735
Victor Calzada-Gutierrez, #254887
William Bianco, #197299
Jason Lewis, #189264
James Bennett, #237279
Robert Bond, #276234
Trenton Davis, #282528
Daniel De Leon, #189733
Michael Dozier, #065384
Domenic Brodowski, 27566
Victor Brooks, 255790
Ronald Davison, 81813
Robert Devine, 138222
Jesse Figueroa, 45460
Douglas Leslie, 251101
Patrick Nissely, 277002
Clifford Robinson, #188961
Michael Velasquez, 173685

# EXHIBIT

# B

**EXHIBIT B**

**LIST OF MASTER FILES REQUESTED (RFP No. 5)**

1.      Adam Duran, #209206
2.      Adam Nicolia, #254795
3.      Ahmad Qadir, #089104
4.      Alfredo Herrera, #141081
5.      Andrew Cushman, #247824
6.      Andrew Robins, #248144
7.      Angel Morales, #234567
8.      Armando Martinez, #185280
9.      Augustine Gonzalez, #076949
10.     Bennie Masters, #134860
11.     Brian Chavez, #200384
12.     Cesar Fimbres, #172483
13.     Chaine Masbrugh, #165945
14.     Chance Hart, #176018
15.     Christian Vasquez, #274006
16.     Christopher Cartier, #278352
17.     Chrystal Cunningham, #224317
18.     Clayton Hill, #230403
19.     Darrell Lyon, #096480
20.     David Conro #246918
21.     Deshawn Scott, #146395
22.     Eileen Vasquez, #272404
23.     Eligio (Z) Valenzuela, #230945
24.     Eric Caicedo-Caneloz, #228215
25.     Eric Haves, #162876
26.     Ernesto Mendez-Carrillo, #216062
27.     Eugene Diaz, #270867
28.     Fernando Canales, #135638
29.     Frank Racer, #108121
30.     Gabriel Hayes, #174960
31.     Gilberto Trevino, #223700
32.     Glen Stamper, #174892
33.     Griffon Ray, #153582
34.     Heather Self, #231185
35.     Hector Martinez, #240034
36.     Ivan Santacruz, #194683
37.     Jack McGee, #220171
38.     Jacob Avila, #217766
39.     Jacob Glasscock, #235550
40.     Jahmari Manuel, #078985
41.     James Pacheco, #215017
42.     Jason Gann, #182504

43.     Javier Zambrano, #226439
44.     Jay Connolly, #167895
45.     Jeremy Begay, #273183
46.     Jeremy Fletcher, #209388
47.     Jerry Patton, #277153
48.     Jose Lormeli, #161242
49.     Joshua Deroche, #147875
50.     Jovon Harris, #123545
51.     Kenneth Jordan, #233937
52.     Luis Saucedo, #170180
53.     Lyle Paddock, #196476
54.     Manuel Sanchez, #119063
55.     Marcellus Jackson, #275352
56.     Marcus Davis, #165060
57.     Marcus Thompson, #161030
58.     Mark Alvarez, #182500
59.     Matthew Manzanedo, #079369
60.     Melissa Wakeman, #271682
61.     Michael Ortega, #240365
62.     Mike Archibeque, #092371
63.     Oscar Terrazas, #095729
64.     Patrick Logan, #177604
65.     Phil Copas, #185706
66.     Ramon Garcia, #196249
67.     Ricky Guevara, #202103
68.     Robert Olivas, #177681
69.     Robert Osorio, #108309
70.     Ronald Jacobs, #093371
71.     Roy Carr, #120406
72.     Roy Roach, #117499
73.     Ruben Hernandez, #116412
74.     Ruben Morales, #266207
75.     Sam Pailate, #235510
76.     Sergio Rubio, #213703
77.     Shacoia Mitchell, #266314
78.     Thaddeus Beasley, #111724
79.     Timothy Stephenson, #201751
80.     Toddrick Booth, #248310
81.     Trevonne Whitewalker, #207315
82.     Tyson McDaniel, #115043
83.     Victor Sweeney, #257549
84.     Warees Muzakkir, #082561
85.     Wilford Ratliff, #210575
86.     William Evans, #213432
87.     William Lidy, #136911
88.     William Neville, #061616

89.    Yak Yak, #181109
90.    Yara Giselle Renteria, #236532