Exhibit 9

1    Daniel Pochoda (Bar No. 021979)
     Kelly J. Flood (Bar No. 019772)
2    James Duff Lyall (Bar No. 330045)*
     **ACLU FOUNDATION OF ARIZONA**
3    3707 North 7th Street, Suite 235
     Phoenix, Arizona 85013
4    Telephone: (602) 650-1854
     Email: dpochoda@acluaz.org;
5         kflood@acluaz.org
          jlyall@acluaz.org
6    *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7    *Attorneys for Plaintiffs Victor Parsons, Shawn Jensen,*
     *Stephen Swartz, Dustin Brislan, Sonia Rodriquez,*
8    *Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert*
     *Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner,*
9    *Joshua Polson, and Charlotte Wells, on behalf of*
     *themselves and all others similarly situated*

10   **[ADDITIONAL COUNSEL LISTED ON**
       **SIGNATURE PAGE]**
11
     Jennifer Alewelt (Bar No. 027366)
12   Ruth Szanto (Bar No. 029073)
     Asim Varma (Bar No. 027927)
13   **ARIZONA CENTER FOR DISABILITY LAW**
     5025 East Washington Street, Suite 202
14   Phoenix, Arizona 85034
     Telephone: (602) 274-6287
15   Email: jalewelt@azdisabilitylaw.org
          rszanto@azdisabilitylaw.org
16        avarma@azdisabilitylaw.org

     *Attorneys for Plaintiff Arizona Center of Disability Law*
17
                    UNITED STATES DISTRICT COURT
18
                        DISTRICT OF ARIZONA
19

20   Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-NVW
     Dustin Brislan; Sonia Rodriquez; Christina              (MEA)
21   Verduzco; Jackie Thomas; Jeremy Smith; Robert
     Gamez; Maryanne Chisholm; Desiree Licci; Joseph
22   Hefner; Joshua Polson; and Charlotte Wells, on       **PLAINTIFF VICTOR**
     behalf of themselves and all others similarly        **ANTONIO PARSONS' FIRST**
23   situated; and Arizona Center for Disability Law,     **SET OF REQUESTS FOR**
                                                          **PRODUCTION OF**
24                            Plaintiffs,                 **DOCUMENTS TO**
                                                          **DEFENDANTS**
     v.
25
     Charles Ryan, Director, Arizona Department of
26   Corrections; and Richard Pratt, Interim Division
     Director, Division of Health Services, Arizona
27   Department of Corrections, in their official
     capacities,
28
                            Defendants.

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiff <u>Victor Antonio Parsons</u>, by and through undersigned counsel, requests that defendants respond, within 30 days and produce the following documents for inspection and copying at ACLU Foundation of Arizona, 3707 N. 7th Street, Suite 235, Phoenix, AZ 85013.

## DEFINITIONS

For purposes of these requests, the following definitions shall apply:

1.     "ADC" means the Arizona Department of Corrections, including all its subdivisions, agents, employees, contractors, and attorneys.

2.     "ADC STAFF" means all persons employed by ADC, including "CORRECTIONAL STAFF" and "HEALTH CARE STAFF."

3.     "COMMUNICATIONS" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records,  reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including a Blackberry or iPhone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Web-X and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

4.     "COMPLAINTS" means any DOCUMENTS, formal or informal, REGARDING specific or general problems, issues, deficiencies, unanswered questions, challenges, shortcomings, disagreements, or requests brought to the attention of the ADC or any ADC STAFF.

5.     "CONDITIONS OF CONFINEMENT" means all circumstances REGARDING the state of being imprisoned.

6.     "CONTRACTOR" means "LOCUM TENENS CONTRACTOR" and "SPECIALTY CONTRACTOR."

7.     "CORRECTIONAL STAFF" means custody staff employed or paid by the ADC to serve in a security or operational capacity.

8.     "COST CONTAINMENT" means contemplated, discussed, or actual actions to restrict, reduce, contain, or limit costs or expenses by DEFENDANTS, the ADC or any personnel working in any capacity for the ADC or the Arizona State Government, including any agents of the foregoing.

9.     "DEATH RECORDS" means any DOCUMENT REGARDING the death of a PRISONER, including audits, REVIEWS, studies, interview notes, videos, audio-recordings, EXTERNAL INVESTIGATIONS or INTERNAL INVESTIGATIONS.

10.    "DESCRIBE" and "DESCRIPTION" means to provide all available INFORMATION.

11.    "DISCIPLINE" means any formal or informal discipline, punishment, reprimand, warning, or comment given to any person as a result of substandard or unacceptable conduct.

12.    "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and DESCRIPTION and every tangible thing that is or has been in the possession, custody, or control of DEFENDANTS and the ADC, to which they have access, or of which they have knowledge, including, but not limited to, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys, MINUTES, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and

regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device). "DOCUMENT" and "DOCUMENTS" includes, but is not limited to, all DOCUMENTS generated by or maintained in the Director's Project Tracking System, official ADC papers, and the ADC's intranet.

13. "EMERGENCY HEALTH CARE SERVICES" means treatment or care to address a mental health, medical, or dental injury or illness that is acute, causes substantial pain, and/or and poses a substantial and immediate risk to the life or long term health of a person.

14. "ENTRY-LEVEL PRACTITIONERS" means unlicensed persons who provide HEALTH CARE to PRISONERS at the ADC subordinate to MID-LEVEL PRACTITIONERS or HEALTH CARE CLINICIANS.

15. "EXTERNAL INVESTIGATIONS" means investigations, REVIEWS, audits, or studies, whether formal or informal, conducted by a person who is not employed by the ADC or an entity that is not the ADC.  It is immaterial to the definition whether the EXTERNAL INVESTIGATION was conducted at the ADC's behest or direction.

16. "GRIEVANCES" means COMPLAINTS or requests made by PRISONERS to the ADC, and the exhaustion of claims raised or stated therein.

17. "HEALTH CARE" means the provision of care, including adequate diet, to address the mental health, medical, or dental needs of a PRISONER, whether those needs arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic or preventive purposes.

18. "HEALTH CARE CLINICIANS" means persons independently licensed to provide HEALTH CARE to PRISONERS at the ADC facilities, including but not limited to M.D., D.O., D.D.S., and Ph.D. credentialed staff.

19. "HEALTH CARE DIRECTIVES" means DOCUMENTS REGARDING advance medical care directives, living wills, personal directives, advance directives, or instructions of any kind in which individuals specify what actions should or should not be

taken for their HEALTH CARE in the event they are no longer able to make decisions due to illness, injury, or incapacity

20. "HEALTH CARE SHORTAGES" means any deficiencies involving HEALTH CARE, including but not limited to a lack of or insufficient number of medicines, drugs, medical supplies, medical equipment, transportation, or HEALTH CARE STAFFING.

21. "HEALTH CARE STAFF" means all staff employed or paid by the ADC, LOCUM TENENS CONTRACTORS, or SPECIALTY CONTRACTORS (other than CORRECTIONAL STAFF) who are responsible for providing HEALTH CARE to ADC PRISONERS, including but not limited to HEALTH CARE CLINICIANS, MID-LEVEL PRACTITIONERS, ENTRY-LEVEL PRACTITIONERS, PHARMACISTS, and administrative and support staff.

22. "HEALTH CARE STAFFING" means the provision of HEALTH CARE STAFF to provide HEALTH CARE.

23. "HEALTH GRIEVANCES" means requests for HEALTH CARE or COMPLAINTS REGARDING the need for, adequacy of, quality of, or timing of HEALTH CARE made by PRISONERS to the ADC, including but not limited to the submission of Health Needs Request ("HNR") forms and the exhaustion of claims stated therein.

24. "HNR POLICIES AND PROCEDURES" means policies, procedures, or practices, whether written or established through custom or use, REGARDING HNR submissions by PRISONERS, including but not limited to the distribution, disposal, processing, rejection of, responses to, provision of HEALTH CARE pursuant to, and exhaustion of claims raised by such submissions.  This includes policies, procedures, or practices that are in draft form and have not been approved and/or implemented.

25. "HOSPITALIZED PRISONER" means any PRISONER who is sent to a hospital or other off-site medical or mental health facility, or who is admitted to an on-site hospital, while in the custody of the ADC.

26.     "HOURS OF OPERATION" means the time periods during which a facility, unit, or other ADC facility housing PRISONERS is able to provide HEALTH CARE to PRISONERS by on-site HEALTH CARE STAFF.

27.     "IDENTIFY" and "IDENTIFICATION" with respect to (a) a PRISONER or former PRISONER, means to state the PRISONER'S full name, ADC number, date of birth, current or most recent mental health score (MH-1 through MH-5), medical score (M-1 through M-5), public risk score, institutional risk score, and current housing location (if still in ADC custody) or last known address and telephone number (if no longer in ADC custody); (b) a person other than a PRISONER or former PRISONER, means to state the person's full name and specify whether or not the person is or has been an ADC STAFF member, and if so, to state the staff member's position title, facility location, work schedule, responsibilities, date ADC employment began, date ADC employment terminated, dates of any changes in position titles or responsibilities, DESCRIPTIONS of any changes in position titles or responsibilities and, if the person is not currently employed by ADC, the person's last known address and telephone number; and (c) a third-party contractor or entity means to state the name of the contractor or entity, the type of entity (*e.g.*, corporation, partnership, etc.); its address and telephone number; and any persons YOU are aware of who acted on behalf of that contractor or entity with respect to the events at issue in the discovery request; (d) IDENTIFY in any other context means to provide as much INFORMATION REGARDING the thing to be identified as is in the possession of DEFENDANTS or the ADC.

28.     "INFORMATION" means any knowledge YOU have, any evidence of any type, any facts of which YOU are aware and any inferences or speculation of which YOU are aware, all regardless of the source.  When INFORMATION YOU provide is based solely on inference or speculation, specifically so state in YOUR response.  When providing INFORMATION, provide the names of involved individuals, actions relevant to the requested INFORMATION, dates and times when known, locations, and any other knowledge YOU have about the subject of the discovery request.  When asked to provide

VICTOR ANTONIO PARSONS' FIRST SET
OF REQUESTS FOR PRODUCTION
2:12-CV-00601-NVW--MEA

INFORMATION about one or more individuals, IDENTIFY the individual or individuals and provide any other INFORMATION YOU have about such person or persons.

29.   "INTERNAL INVESTIGATION" means an investigation, REVIEW, audit, study, interview notes, videos, or audio recordings, whether formal or informal, conducted by the ADC.

30.   "ISOLATION" means confinement in a cell for 22 hours or more each day; confinement in Eyman-Special Management Unit ("SMU") 1, Eyman-Browning Unit, Florence-Central Unit, Florence-Kasson Unit, or Perryville-Lumley Special Management Area ("SMA"); or confinement in a Complex Detention Unit ("CDU").

31.   "JOB PERFORMANCE EVALUATION" means any evaluation, whether formal or informal, of the work of an ADC STAFF member or contractor performing services for the ADC.

32.   "LOCUM TENENS CONTRACTOR" means any person or entity contracting with ADC to provide HEALTH CARE to ADC PRISONERS.

33.   "MID-LEVEL PRACTITIONERS" means licensed professionals who provide HEALTH CARE to PRISONERS at the ADC under supervision by HEALTH CARE CLINICIANS.

34.   "MINUTES" means notes or any other recording reflecting the content of a meeting, whether written contemporaneously with or subsequent to the meeting.

35.   "ORGANIZATIONAL STRUCTURE" means the structure of who reports to whom within the ADC up to and including defendant Charles Ryan, including specifically all HEALTH CARE STAFF and each individual's job title and DESCRIPTION of duties.

36.   "OUTDOOR EXERCISE" means periods during which PRISONERS are permitted to exercise in the outdoors.

37.   "PHARMACIST" means a professional who practices pharmacy.

38.   "POLICIES AND PROCEDURES" means policies, procedures, criteria, or practices, whether written or established through custom or use, including but not limited

to policy and procedure manuals, directors' orders, protocols, directives, flowcharts, institution post orders, and any other DOCUMENTS designed to direct the actions of ADC personnel, ADC contractors, and/or PRISONERS.

39.   "PRISONER" means a person incarcerated by the ADC.

40.   "QUALITY ASSURANCE" means any activities implemented for the purpose of examining, assessing, evaluating, investigating, analyzing, or identifying the quality of a product or service.

41.   "REFERRAL" means a recommendation that a PRISONER obtain HEALTH CARE from HEALTH CARE STAFF at ADC or non ADC facilities, whether or not such HEALTH CARE is in fact ever provided.

42.   "REFERRED CARE" means HEALTH CARE pursuant to a REFERRAL.

43.   "REFERRED PRISONER" means a PRISONER who received a REFERRAL while in the legal custody of the ADC.

44.   "REGARDING" or "REGARDED" to any given subject matter means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers to, relates to, responds to, states, summarizes, or is in any way relevant to the particular subject matter identified.

45.   "RESPONSE DATE" means date upon which YOU respond to these discovery requests, or, if YOU amend or supplement YOUR response, the date of YOUR amendment or supplement.

46.   "REVIEWS" means examinations, assessments, evaluations, or investigations performed by or at the direction of ADC STAFF or officials.

47.   "SPECIALTY CONTRACTOR" means any person or entity contracting with the ADC to provide HEALTH CARE to PRISONERS who is not a LOCUM TENENS CONTRACTOR.

48.    "STAFFING SCHEDULE" means the days, hours, and/or shifts for which each member of the HEALTH CARE STAFF was scheduled to work, including overtime, on call and call-in coverage.

49.    "SUFFICIENT TO SHOW" means demonstrating or evidencing complete INFORMATION on the requested topic, without the need to produce every DOCUMENT REGARDING the topic.

50.    "YOU," "YOUR," "YOURSELF," and "DEFENDANTS" means defendants Charles Ryan and Richard Pratt, and their predecessors, successors, employees, subordinates, contractors, agents, and attorneys.

**INSTRUCTIONS**

1.    YOU are required to furnish all DOCUMENTS in YOUR possession, custody, or control, including those DOCUMENTS that are in YOUR possession, custody, or control in the normal course of YOUR employment obligations, and those in the possession, custody or control of your (1) employer; (2) consultants; (3) attorneys; (4) representatives; (5) agents; or (6) any other person acting or purporting to act on YOUR behalf or at YOUR direction, whether doing so directly or at the direction of YOUR subordinates.  Possession, custody, or control includes DOCUMENTS stored in electronic form by third party service providers but accessible to the Defendant, including but not limited to email accounts, FTP servers, portable storage media such as USB drives, cloud storage services such as Dropbox or SharePoint , and online workspaces such as WebEx.

2.    All non-identical copies of every DOCUMENT whose production is sought shall be separately produced.

3.    Each request herein constitutes a request for DOCUMENTS in their entirety, with all enclosures and attachments, and without abbreviation, redaction, or expurgation.  DOCUMENTS attached to each other, including but not limited to, by staple, clip, tape, email attachment, or "Post-It" note, should not be separated, although any page on which a Post-It note covers or obscures text on the DOCUMENT should be

-8-

produced both with and without the Post-It note. The production must also include, where applicable, any index tabs, file dividers, designations, binder spine labels, or other similar information as to the source and/or location of the DOCUMENTS.

4.      DEFENDANTS shall produce any and all drafts and copies of each DOCUMENT that are responsive to any request, including but not limited to copies containing handwritten notes, markings, stamps, or interlineations. The author(s) of all hand-written notes should be identified.

5.      YOU shall produce all responsive DOCUMENTS as they have been kept in the ordinary course of business.

6.      Responsive DOCUMENTS that exist only in paper form shall be organized as they have been kept in the ordinary course of business and shall be produced according to the following protocol:

        a.      Paper DOCUMENTS shall be scanned and produced in TIFF image form at a resolution sufficient to enable the generation of searchable text using Optical Character Recognition ("OCR").

7.      Responsive DOCUMENTS that exist in electronic form, even if such DOCUMENTS also exist in paper form, shall be produced in electronic form according to the following protocol:

        a.      Electronic DOCUMENTS shall be produced electronically as single page, uniquely and sequentially numbered Group IV TIFF image files of not less than 300 dots per inch resolution, together with DOCUMENT level load files wherein the full text was extracted directly from the native file where possible.

        b.      For files produced in TIFF image form, each page of a produced DOCUMENT shall have a legible, unique production number electronically "burned" onto the TIFF image in such a manner that information from the source DOCUMENT is not obliterated, concealed, or interfered with, preferably in the lower right corner of the DOCUMENT. The production

number shall contain at least six digits.  There shall be no other legend or stamp placed on the DOCUMENT image, unless a DOCUMENT qualifies for confidential treatment pursuant to the terms of any protective order in this matter, or if the DOCUMENT requires redaction.  In the case of confidential materials as defined by any protective order in this matter, any applicable designation may be "burned" onto the DOCUMENT's image at a location that does not obliterate or obscure any information from the source DOCUMENT, preferably in the lower left corner.

c.      Each DOCUMENT image file shall be named with the unique production number of the page of the DOCUMENT in question, followed by the extension ".tif".  File names should not be more than 20 characters long or contain spaces.

d.      For files produced in TIFF image format, each page of a DOCUMENT shall be electronically saved as an image file.  If a DOCUMENT is more than one page, the unitization of the DOCUMENT and any attachments and/or affixed notes shall be maintained as they existed in the original DOCUMENT.

e.      TIFF images shall be accompanied by a standard load file containing the metadata and other fields identified in Paragraph 7(j) of these Instructions, below.  The load file shall be produced in one of the following industry-standard formats:  (1) Concordance delimited file (".dat"); (2) comma-separated value file (".csv"); or (3) TAB delimited file.  TIFF images shall also be accompanied by either an Opticon delimited cross-reference file (".opt") or IPRO View LFP comma-delimited file showing DOCUMENT breaks and appropriate DOCUMENT unitization.

f.      In addition to TIFF images, each production of electronic DOCUMENTS shall include searchable text files corresponding to the TIFF images for each DOCUMENT.  The full text of each native electronic

DOCUMENT, excluding redacted DOCUMENTS, shall be extracted directly from the native file and produced in a DOCUMENT-level related text file (the "Extracted Text"). The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with the unique production number of the first page of the corresponding TIFF DOCUMENT followed by the extension ".txt". YOU shall also perform OCR on certain types of non-text based static image ESI, such as native PDF image files, and produce the corresponding DOCUMENT-level related text files. Searchable text files shall be generated from Extracted Text where available.

g.      DOCUMENTS shall be produced on optical media (CD or DVD) or external hard drives or similar, readily accessible electronic media (the "Production Media"). Each piece of Production Media shall IDENTIFY a production number corresponding to the party and production with which the DOCUMENTS on the Production Media are associated (e.g., "RYAN 001"), as well as the volume of the material in that production (e.g., "- 001", "-002"). For example, if the first production wave by YOU comprises DOCUMENT images on three hard drives, YOU shall label each hard drive in the following manner: "RYAN 001-001", "RYAN 001-002", and "RYAN 001-003." The face of each piece of Production Media shall also IDENTIFY: (1) the production date; and (2) the production number range of the materials contained on the Production Media.

h.      Presentation DOCUMENTS (such as Microsoft PowerPoint DOCUMENTS) shall be produced with one slide per page together with any "Speaker's Notes" or similar pages appended to, or otherwise associated with, each slide. Presentation DOCUMENTS shall also be produced according to all other applicable Instructions set forth in this set of requests.

i.      Unless redaction is required, spreadsheet DOCUMENTS (such as Microsoft Excel DOCUMENTS) shall be produced in native format, together with a single page TIFF placeholder bearing the legend "Native File Produced" and load files containing the agreed upon metadata, extracted text, production numbers and any applicable confidentiality labels as described above.  If redaction is required, then spreadsheets shall be produced in TIFF image format as set forth above.

j.      For all DOCUMENTS for which metadata exists, the load files described above shall be produced including the following fields:

| Fields for all DOCUMENTS | Description |
| --- | --- |
| BegProd | Beginning production number assigned to each DOCUMENT |
| EndProd | Ending production number assigned to each DOCUMENT |
| BegAttach | Beginning production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| EndAttach | Ending production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| Custodian | The name of the person or source from which the DOCUMENT was obtained |
| FileName | Original file name |
| FilePath | Original file path |
| DocExt | DOCUMENT type as identified by metadata associated with the native DOCUMENT indicating the extension of the application that created the native DOCUMENT (e.g., .doc, .ppt, etc.) |
| HashValue | The unique identifying value assigned to a DOCUMENT based on hash coding algorithms |
| Author | The person or source that originated the DOCUMENT |

-12-

| DateCreated | Date that the DOCUMENT was created (as reflected by metadata) |
|---|---|
| LastModifiedDate | Date that the file was last modified (as reflected by metadata) |
| FullText | The path or link to the searchable Extracted or OCR text for a DOCUMENT |
| NativeFile | The path or link to a processed and produced native file, to the extent the production contains native files |
| Confidentiality | The confidentiality designation for the DOCUMENT, as defined by any protective order in this matter |
| **Additional Fields for Email** | **Description** |
| To | All information contained in the "To" field of an email |
| From | All information contained in the "From" field of an email |
| CC | All information contained in the "CC" field of an email |
| BCC | All information contained in the "BCC" field of an email |
| DateSent | Date the email was sent, including month, day and year |
| TimeSent | Time the email was sent, including hour, minute, second and time zone. To the extent this information is already included in the DateSent field in the metadata, YOU need not parse TimeSent as a separate field. |
| DateReceived | Date the email was received, including the month, day and year |
| TimeReceived | Time the email was received, including hour, minute, second and time zone. To the extent this information is already included in the DateReceived field in the metadata, YOU need not parse TimeReceived as a separate field. |
| Subject | Subject or "Re:" line, as stated in the email |

8.     If with respect to any request there are no responsive DOCUMENTS, so state in writing.

-13-

9.      The following rules of construction shall be applied herein: (a) the words "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope ; (b) the use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural; (c) the words "any," "all," "each" and "every" all include any, all, each, and every and shall be understood in either their most or least inclusive sense as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; and (d) the use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the DOCUMENT requests all responses that might otherwise be construed to be outside of their scope.

10.     If YOU object to a portion or an aspect of a request, state the grounds for your objection with specificity and respond to the remainder of the DOCUMENT request. If any DOCUMENTS, or portion thereof, are withheld because YOU claim that such information is protected under the attorney-client privilege, work product doctrine, or other privilege or doctrine,  YOU are required to provide a privilege log setting forth the specific basis for the claim of privilege or protection and for each DOCUMENT provide the following:

a.      the subject matter of the DOCUMENT;

b.      the title, heading or caption of the DOCUMENT, if any;

c.      the date appearing on the DOCUMENT or, if no date appears thereon, the date or approximate date on which the DOCUMENT was prepared;

d.      the type of the DOCUMENT (e.g., whether it is a letter, memorandum, MINUTES of meeting, etc.) and the number of pages of which it consists;

e.      the identity of the person who signed the DOCUMENT or, if it was not signed, the person who prepared it;

f.      the identity of each person to whom the DOCUMENT was addressed and the identity of each person to whom a copy thereof was sent; and

g.      the identity of each person who has custody of a copy of each such DOCUMENT.

11.     If YOU claim that a portion of a DOCUMENT is protected from disclosure for any reason, produce such DOCUMENT with redaction of only the portion claimed to be protected.  When such redactions for privilege or protection are made, YOU shall place a legend similar to "REDACTION – PRIVILEGE" on the copy of the DOCUMENT produced.  All redactions shall also be included on the privilege log described in Instruction #4.

12.     If you object that a request is vague or ambiguous, IDENTIFY the objectionable aspect of the request.

13.     If a request cannot be responded to in full, YOU shall respond to the extent possible, specify the reason for YOUR inability to respond to the remainder, and state whatever information or knowledge YOU have REGARDING the portion to which YOU have not responded.

14.     If any DOCUMENT called for by these requests has been destroyed, lost, discarded, or is otherwise no longer in your possession, custody, or control, IDENTIFY such DOCUMENT as completely as possible, and specify the date of disposal of the DOCUMENT, the manner of disposal, the reason for disposal, the person authorizing disposal, and the person disposing of the DOCUMENT.

15.     These requests are sequentially numbered and each numbered paragraph constitutes a single request.  Defined terms may be capitalized for the convenience of the parties; the definitions herein apply whether or not the term is capitalized.

16.     Except where expressly stated, these requests are not limited in any way by geography.

17.     These requests shall be deemed continuing in nature in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.  Supplemental responses are required

-15-

if additional responsive information is acquired or discovered between the time of responding to this request and the time of trial.

18.    Unless otherwise specified, the relevant time period, and the period for which YOU are required to provide responsive DOCUMENTS, is from and including January 1, 2011  up to and including the RESPONSE DATE.

## DOCUMENTS REQUESTED

### POLICIES AND PROCEDURES

**REQUEST FOR PRODUCTION NO. 1.:**

All ADC POLICIES AND PROCEDURES REGARDING HEALTH CARE in effect from January 1, 2011 through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 2.:**

All ADC POLICIES AND PROCEDURES in draft form or that have not been approved or implemented REGARDING HEALTH CARE from January 1, 2011 through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 3.:**

All POLICIES AND PROCEDURES REGARDING prescriptions of non-formulary medicine made by HEALTH CARE STAFF.

**REQUEST FOR PRODUCTION NO. 4.:**

All POLICIES AND PROCEDURES REGARDING the provision of  medications to ADC PRISONERS, including both formulary and non-formulary medications.

**REQUEST FOR PRODUCTION NO. 5.:**

All DOCUMENTS REGARDING POLICIES AND PROCEDURES for obtaining executed HEALTH CARE DIRECTIVES from PRISONERS.

**REQUEST FOR PRODUCTION NO. 6.:**

All POLICIES AND PROCEDURES REGARDING QUALITY ASSURANCE of HEALTH CARE, including but not limited to required reports, meetings, in-service trainings, audits, evaluations, or peer review systems.

**REQUEST FOR PRODUCTION NO. 7.:**

All POLICIES AND PROCEDURES REGARDING the extraction of a PRISONER'S tooth or teeth, including but not limited to alternative treatments presented to the PRISONER and the consequences of a PRISONER'S selection of alternative treatment.

**REQUEST FOR PRODUCTION NO. 8.:**

All POLICIES AND PROCEDURES REGARDING CORRECTIONAL STAFF's and HEALTH CARE STAFF's response to a non-responsive PRISONER in his/her cell for whom HEALTH CARE assistance has been requested or appears necessary.

**REQUEST FOR PRODUCTION NO. 9.:**

All POLICIES AND PROCEDURES REGARDING confinement of PRISONERS in ISOLATION, including but not limited to placement in, retention in, or removal from ISOLATION, CONDITIONS OF CONFINEMENT, diet, and OUTDOOR EXERCISE while in ISOLATION.

**REQUEST FOR PRODUCTION NO. 10.:**

All DOCUMENTS REGARDING HNR POLICIES AND PROCEDURES, other than DOCUMENTS specific to specific PRISONERS, including but not limited to DOCUMENTS REGARDING actual timeframes for processing and the necessary qualifications of personnel, including HEALTH CARE STAFF, responsible for processing HNRs from PRISONERS.

**REQUEST FOR PRODUCTION NO. 11.:**

All POLICIES AND PROCEDURES REGARDING PRISONERS' requests for second opinions when the first opinion was given by HEALTH CARE STAFF or an external provider.

**REQUEST FOR PRODUCTION NO. 12.:**

All POLICIES AND PROCEDURES REGARDING CORRECTIONAL STAFF assisting PRISONERS with completing HNRs.

-17-

**REQUEST FOR PRODUCTION NO. 13.:**

All POLICIES AND PROCEDURES REGARDING screening PRISONERS when they are initially received into custody, including but not limited to any reviews of medical history, physical examinations, and communicable diseases screening.

**REQUEST FOR PRODUCTION NO. 14.:**

All POLICIES AND PROCEDURES REGARDING COST CONTAINMENT, including any changes in the POLICIES AND PROCEDURES.

**REQUEST FOR PRODUCTION NO. 15.:**

All DOCUMENTS REGARDING the development and adoption of HEALTH CARE DIRECTIVES.

**REQUEST FOR PRODUCTION NO. 16.:**

All MINUTES from meetings attended by ADC HEALTH CARE STAFF, and any other meetings at which the HEALTH CARE of PRISONERS, HEALTH CARE POLICIES AND PROCEDURES, HEALTH CARE STAFFING, or any issue related to HEALTH CARE was discussed.

**REQUEST FOR PRODUCTION NO. 17.:**

One copy of each standardized DOCUMENT used by the ADC REGARDING the provision of HEALTH CARE.

**REQUEST FOR PRODUCTION NO. 18.:**

All DOCUMENTS REGARDING HEALTH CARE statistics of any kind at the ADC, including but not limited to DOCUMENTS that track disease or condition prevalence, outcomes, delays in service, care provided, and costs.

<b>STAFFING</b>

**REQUEST FOR PRODUCTION NO. 19.:**

DOCUMENTS SUFFICIENT TO SHOW the HOURS OF OPERATION, STAFFING SCHEDULES, and HEALTH CARE STAFFING levels for each facility operated by the ADC from January 1, 2011 through the RESPONSE DATE.

1

2 **REQUEST FOR PRODUCTION NO. 20.:**

3      All DOCUMENTS REGARDING HEALTH CARE STAFFING in ADC for each

4 fiscal year from 2005 to the RESPONSE DATE, including but not limited to

5 DOCUMENTS sufficient to show the total number of HEALTH CARE STAFF, the

6 existing positions for HEALTH CARE STAFF, whether they are permanent ADC

7 employees or LOCUM TENENS CONTRACTORS, the number of full-time employees

8 for each position, the number of vacancies and the duration of vacancies, and the total

9 hours worked by HEALTH CARE STAFF and LOCUM TENENS CONTRACTORS

10 who provided HEALTH CARE to ADC PRISONERS.

11 **REQUEST FOR PRODUCTION NO. 21.:**

12      DOCUMENTS SUFFICIENT TO SHOW ADC'S HEALTH CARE STAFFING

13 plan at each facility, including but not limited to DOCUMENTS REGARDING (a) the

14 minimum qualifications (e.g., M.D., R.N., L.P.N., etc.) for each position, whether (i)

15 HEALTH CARE STAFF, (ii) non-patient care-giving staff (such as medical file clerks),

16 or (iii) CORRECTIONAL STAFF, required in the infirmary within the facility; (b) a

17 general DESCRIPTION of the function of each position listed; (c) the training required of

18 each position (e.g., pre-service or in-service trainings); (d) the number of hours required

19 per week for each position; (e) any difference in coverage on holidays or weekends for

20 any staff position; (f) whether each position is filled or vacant as of the RESPONSE

21 DATE; and (g) the identity of the staff members currently filling each position, with

22 provider number (if applicable), shift, duties and degrees for each staff member identified.

23 **REQUEST FOR PRODUCTION NO. 22.:**

24      All JOB PERFORMANCE EVALUATIONS of HEALTH CARE STAFF or

25 LOCUM TENENS CONTRACTORS REGARDING whether the staff member or

26 contractor provided insufficient, inappropriate, or suboptimal HEALTH CARE

27 SERVICES and/or resulting in DISCIPLINE being taken against the staff member or

28 contractor.

**REQUEST FOR PRODUCTION NO. 23.:**

All JOB PERFORMANCE EVALUATIONS OF CORRECTIONAL STAFF finding that the staff member or contractor provided insufficient, inappropriate, or suboptimal EMERGENCY HEALTH CARE SERVICES and/or resulting in DISCIPLINE being taken against the staff member or contractor due to the EMERGENCY HEALTH CARE SERVICES provided.

**REQUEST FOR PRODUCTION NO. 24.:**

All DOCUMENTS REGARDING COMPLAINTS, from 2009 through the RESPONSE DATE, REGARDING HEALTH CARE STAFFING or the STAFFING SCHEDULE at each facility, including but not limited to COMMUNICATIONS from ADC personnel that refer to or comment on any aspect of the adequacy of HEALTH CARE STAFFING.

**TRAINING**

**REQUEST FOR PRODUCTION NO. 25.:**

All DOCUMENTS REGARDING formal and informal HEALTH CARE training provided to HEALTH CARE STAFF and CORRECTIONAL STAFF, REGARDING (a) the provision of HEALTH CARE, (b) administrative responsibilities REGARDING the provision of HEALTH CARE, (c) the processing of HNR forms and other PRISONER COMPLAINTS, and (d) the procedures to ensure that PRISONERS have access to HEALTH CARE.

**REQUEST FOR PRODUCTION NO. 26.:**

All DOCUMENTS REGARDING HEALTH CARE training materials provided to ADC staff, including but not limited to to DOCUMENTS REGARDING first aid, cardiopulmonary resuscitation, and suicide prevention.

**CONTRACTORS**

**REQUEST FOR PRODUCTION NO. 27.:**

DOCUMENTS SUFFICIENT TO SHOW the names and contact INFORMATION for each agency or entity providing ADC with temporary or long-term HEALTH CARE contractors.

**REQUEST FOR PRODUCTION NO. 28.:**

DOCUMENTS SUFFICIENT TO SHOW each contract or agreement that has been fully executed REGARDING each agency, entity or contracting individual providing ADC with temporary or long-term HEALTH CARE contractors.

**REQUEST FOR PRODUCTION NO. 29.:**

DOCUMENTS SUFFICIENT TO SHOW the amounts paid to each agency, entity, or contracting individual providing ADC with temporary or long-term HEALTH CARE contractors, with sufficient detail to ascertain the number, type, and credentials of each temporary or long-term contractor provided to the ADC, and the duration of each contractor's work for the ADC.

**REQUEST FOR PRODUCTION NO. 30.:**

All POLICIES AND PROCEDURES for establishing agreements, contracts, or understandings with LOCUM TENENS CONTRACTORS, SPECIALTY CONTRACTORS, professionals, clinics, and institutions who provide HEALTH CARE to PRISONERS.

**REQUEST FOR PRODUCTION NO. 31.:**

All DOCUMENTS REGARDING the rates of reimbursement or payment to providers contracting with ADC and/or the State of Arizona to provide HEALTH CARE to PRISONERS.

## COMPLAINTS

**REQUEST FOR PRODUCTION NO. 32.:**

All COMPLAINTS REGARDING HEALTH CARE DIRECTIVES.

**REQUEST FOR PRODUCTION NO. 33.:**

DOCUMENTS SUFFICIENT TO SHOW the name of the PRISONER and counsel, if any, REGARDING every HEALTH CARE COMPLAINT for which the ADC, on behalf of itself or an employee, paid money to a PRISONER or a PRISONER'S estate or heirs to resolve.  Where the COMPLAINT was filed in a court, include DOCUMENTS sufficient to show the court in which it was filed and the case number.

**REQUEST FOR PRODUCTION NO. 34.:**

All DOCUMENTS REGARDING HEALTH CARE STAFF and CORRECTIONAL STAFF who have filed COMPLAINTS REGARDING the provision of HEALTH CARE.

**REFERRALS**

**REQUEST FOR PRODUCTION NO. 35.:**

DOCUMENTS SUFFICIENT TO SHOW how REFERRALS are processed, including persons involved in the decision-making process to approve or deny the REFERRAL.

**REQUEST FOR PRODUCTION NO. 36.:**

All DOCUMENTS REGARDING submitted REFERRALS, including the name of the referring HEALTH CARE CLINICIAN, the name and identification number of the PRISONER for whom the REFERRAL was made, the PRISONER'S current housing location, the reason the REFERRAL was made, the date the REFERRAL was approved or denied, the reasons for approving or denying the REFERRAL, and the name of the facility where the REFERRED CARE was actually or proposed to be provided.

**REQUEST FOR PRODUCTION NO. 37.:**

All DOCUMENTS REGARDING criticisms; critiques; or identification of possible, perceived, or actual deficiencies in HEALTH CARE made by current or former HEALTH CARE STAFF and other ADC staff, current or former LOCUM TENENS CONTRACTORS, or current or former SPECIALTY CONTRACTORS made from January 1, 2009 to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 38.:**

All DOCUMENTS REGARDING HEALTH CARE for REFERRED PRISONERS, including DOCUMENTS REGARDING any REVIEWS that occurred REGARDING the REFERRAL.

**REQUEST FOR PRODUCTION NO. 39.:**

All DOCUMENTS REGARDING the denial or delay of transportation for REFERRED PRISONERS to and from appointments with the HEALTH CARE providers

to which they were referred.

## PRISONERS

**REQUEST FOR PRODUCTION NO. 40.:**

All DOCUMENTS REGARDING DEATH RECORDS.

**REQUEST FOR PRODUCTION NO. 41.:**

All DOCUMENTS REGARDING any REVIEWS done of HEALTH CARE for HOSPITALIZED PRISONERS, whether done before or after the hospitalization of any HOSPITALIZED PRISONER.

**REQUEST FOR PRODUCTION NO. 42.:**

DOCUMENTS SUFFICIENT TO SHOW the population of PRISONERS in each ADC operated facility by month for each year from 2009 through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 43.:**

All DOCUMENTS REGARDING the conditions in which PRISONERS are held at Tempe St. Luke's Hospital.

## COSTS AND BUDGET

**REQUEST FOR PRODUCTION NO. 44.:**

All DOCUMENTS REGARDING HEALTH CARE COST CONTAINMENT.

**REQUEST FOR PRODUCTION NO. 45.:**

All DOCUMENTS REGARDING HEALTH CARE cost analysis done by the ADC, whether over all or for particular types of care or medical procedures.

**REQUEST FOR PRODUCTION NO. 46.:**

All DOCUMENTS REGARDING the ADC's budget, including all amounts budgeted for HEALTH CARE, for each year from 2007 to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 47.:**

DOCUMENTS SUFFICIENT TO SHOW the actual amounts expended on HEALTH CARE for ADC PRISONERS for each year from 2007 to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 48.:**

All DOCUMENTS REGARDING requests for funding made by the ADC to the Governor or legislature of Arizona from January 1, 2007 to the RESPONSE DATE.

## PRISONERS IN ISOLATION

**REQUEST FOR PRODUCTION NO. 49.:**

All DOCUMENTS REGARDING criticisms; critiques; or identification of possible, perceived, or actual deficiencies in CONDITIONS OF CONFINEMENT for ADC PRISONERS in ISOLATION from January 1, 2009 to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 50.:**

All COMPLAINTS REGARDING CONDITIONS OF CONFINEMENT for PRISONERS in ISOLATION, or the delivery of HEALTH SERVICES to PRISONERS in ISOLATION, made by current or former ADC personnel.

**REQUEST FOR PRODUCTION NO. 51.:**

All DOCUMENTS REGARDING INTERNAL INVESTIGATIONS OR EXTERNAL INVESTIGATIONS REGARDING CONDITIONS OF CONFINEMENT for PRISONERS in ISOLATION from January 1, 2009 to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 52.:**

All DOCUMENTS REGARDING INTERNAL INVESTIGATIONS OR EXTERNAL INVESTIGATIONS REGARDING the delivery of HEALTH SERVICES to PRISONERS in ISOLATION from January 1, 2009 to the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 53.:**

DOCUMENTS SUFFICIENT TO SHOW the duration of confinement in ISOLATION, including but not limited to the mean, median, and maximum length of confinement in ISOLATION for ADC PRISONERS.

**REQUEST FOR PRODUCTION NO. 54.:**

All DOCUMENTS REGARDING the provision of OUTDOOR EXERCISE to PRISONERS in ISOLATION, including but not limited to POLICIES AND PROCEDURES; schedules for the provision of OUTDOOR EXERCISE; DOCUMENTS

SUFFICIENT TO SHOW when and for how long PRISONERS actually received OUTDOOR EXERCISE, including any DOCUMENTS REGARDING cancellation or truncation of scheduled OUTDOOR EXERCISE; plans of the areas in which OUTDOOR EXERCISE is provided; and exercise equipment in the OUTDOOR EXERCISE areas.

**REQUEST FOR PRODUCTION NO. 55.:**

All DOCUMENTS REGARDING exhausted GRIEVANCES REGARDING HEALTH CARE or ISOLATION from January 1, 2010 through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 56.:**

All DOCUMENTS REGARDING GRIEVANCES REGARDING CONDITIONS OF CONFINEMENT in ISOLATION.

**REQUEST FOR PRODUCTION NO. 57.:**

All DOCUMENTS REGARDING the provision of food to PRISONERS in ISOLATION, including but not limited to POLICIES AND PROCEDURES; schedules for delivery of food; menus; nutritional analyses of menus; and DOCUMENTS SUFFICIENT TO SHOW when PRISONERS actually received food and what food they received, including any DOCUMENTS REGARDING deviation from the schedule for delivery of food or from the planned menu.

**DOCUMENTS FROM ADC OFFICIALS**

**REQUEST FOR PRODUCTION NO. 58.:**

All DOCUMENTS authored by or sent from defendant Charles Ryan REGARDING HEALTH CARE.

**REQUEST FOR PRODUCTION NO. 59.:**

All DOCUMENTS authored by or sent from defendant Richard Pratt REGARDING HEALTH CARE.

**REQUEST FOR PRODUCTION NO. 60.:**

All DOCUMENTS authored by or sent from Michael Adu-Tutu REGARDING HEALTH CARE.

**OTHER**

**REQUEST FOR PRODUCTION NO. 61.:**

DOCUMENTS SUFFICIENT TO SHOW the ORGANIZATIONAL STRUCTURE of the ADC for the time period from January 1, 2011 through the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 62.:**

All DOCUMENTS REGARDING HEALTH CARE SHORTAGES.

**REQUEST FOR PRODUCTION NO. 63.:**

For each custodian for whom you produce DOCUMENTS, produce an image of the folder structure, including all sub-folders, of any email accounts for that custodian.

Dated:  June 15, 2012                        **JONES DAY**

                                             By: _Caroline Mitchell_
                                                 Caroline Mitchell (Cal. 143124)*
                                                 Ilham Hosseini (Cal. 256274)*
                                                 Sophia Calderon (Cal. 278315)*
                                                 **JONES DAY**
                                                 555 California Street, 26th Floor
                                                 San Francisco, California 94104
                                                 Telephone:  (415) 875-5712
                                                 Email:     cnmitchell@jonesday.com
                                                            ihosseini@jonesday.com
                                                            scalderon@jonesday.com


                                                 *Admitted *pro hac vice*

                                             Attorneys for Defendants


                                                 Daniel J. Pochoda (Bar No. 021979)
                                                 Kelly J. Flood (Bar No. 019772)
                                                 James Duff Lyall (Bar No. 330045)*
                                                 **ACLU FOUNDATION OF
                                                 ARIZONA**
                                                 3707 North 7th Street, Suite 235
                                                 Phoenix, Arizona 85013
                                                 Telephone:  (602) 650-1854
                                                 Email:     dpochoda@acluaaz.org;
                                                            kflood@acluaz.org
                                                            jlyall@acluaz.org

                                                 *Admitted pursuant to Ariz. Sup. Ct.
                                                 R. 38(f)

                                                 Donald Specter (Cal. 83925)*
                                                 Alison Hardy (Cal. 135966)*
                                                 Sara Norman (Cal. 189536)*
                                                 Corene Kendrick (Cal. 226642)*
                                                 **PRISON LAW OFFICE**
                                                 1917 Fifth Street
                                                 Berkeley, California 94710
                                                 Telephone:  (510) 280-2621
                                                 Email:     dspecter@prisonlaw.com
                                                            ahardy@prisonlaw.com
                                                            snorman@prisonlaw.com
                                                            ckendrick@prisonlaw.com

                                                 *Admitted *pro hac vice*

1

2

3

4

5

6

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
**ACLU NATIONAL PRISON
PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:    dfathi@npp-aclu.org
          afettig@npp-aclu.org

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

*Admitted *pro hac vice*. Not admitted
in DC; practice limited to federal
courts.
**Admitted *pro hac vice*
Daniel C. Barr (Bar No. 010149)
Jill L. Ripke (Bar No. 024837)
James A. Ahlers (Bar No. 026660)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Thomas D. Ryerson (Bar No. 028073)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:    dbarr@perkinscoie.com
          rjipke@perkinscoie.com
          jahlers@perkinscoie.com
          keidenbach@perkinscoie.com
          jhgray@perkinscoie.com
          tryerson@perkinscoie.com
          mdumee@perkinscoie.com

*Attorneys for Plaintiffs Victor Parsons;
Shawn Jensen; Stephen Swartz; Dustin
Brislan; Sonia Rodriquez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

23

24

25

26

27

28

1

2

**ARIZONA CENTER FOR DISABILITY LAW**

3

4

Jennifer Alewelt
Ruth Szanto
Asim Varma
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email:    jalewelt@azdisabilitylaw.org
          rszanto@azdisabilitylaw.org
          avarma@azdisabilitylaw.org

5

6

7

8

9

*Attorneys for Plaintiff Arizona Center for Disability Law*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VICTOR ANTONIO PARSONS' FIRST SET
OF REQUESTS FOR PRODUCTION
2:12-CV-00601-NVW--MEA

1

2                            **CERTIFICATE OF SERVICE**

3          I hereby certify that on June 15, 2012, I served the foregoing document by mail on

4     the following:

5

6          Arizona Attorney General Thomas C. Horne
           Office of the Attorney General
           Michael E. Gotfried
7          Assistant Attorney General
           1275 W. Washington Street
8          Phoenix, AZ  85007-2926
           Telephone: 602-542-4951
9          Facsimile: 602-542-7670

10         Daniel P. Struck
           Kathleen L. Wieneke
11         Timothy J. Bojanowski
           Nicholas D. Acedo
12         Courtney R. Cloman
           Ashlee B. Fletcher
13         Struck Wieneke & Love, PLC
           3100 West Ray Rd., Ste. 300
14         Chandler, AZ  85226
           Telephone: 480-420-1600
15         Facsimile 480-420-1696

16

17

18

19                                                          Sophia Calderón

20    SFI-735993v1

21

22

23

24

25

26

27

28

VICTOR ANTONIO PARSONS' FIRST SET
                                                 OF REQUESTS FOR PRODUCTION
                                                 2:12-CV-00601-NVW--MEA

1    Daniel Pochoda (Bar No. 021979)
     Kelly J. Flood (Bar No. 019772)
2    James Duff Lyall (Bar No. 330045)*
     **ACLU FOUNDATION OF ARIZONA**
3    3707 North 7th Street, Suite 235
     Phoenix, Arizona 85013
4    Telephone: (602) 650-1854
     Email: dpochoda@acluaz.org
5           kflood@acluaz.org
           jlyall@acluaz.org
6    *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7    *Attorneys for Plaintiffs Victor Parsons, Shawn Jensen,*
     *Stephen Swartz, Dustin Brislan, Sonia Rodriguez,*
8    *Christina Verduzco, Jackie Thomas, Jeremy Smith,*
     *Robert Gamez, Maryanne Chisholm, Desiree Licci,*
9    *Joseph Hefner, Joshua Polson, and Charlotte Wells, on*
     *behalf of themselves and all others similarly situated*

10
11    **[ADDITIONAL COUNSEL LISTED ON
     SIGNATURE PAGE]**

12              UNITED STATES DISTRICT COURT

13                DISTRICT OF ARIZONA

14    Victor Parsons; Shawn Jensen; Stephen Swartz;      No. CV 12-00601-PHX-NVW
15    Dustin Brislan; Sonia Rodriguez; Christina             (MEA)
     Verduzco; Jackie Thomas; Jeremy Smith; Robert
16    Gamez; Maryanne Chisholm; Desiree Licci; Joseph
     Hefner; Joshua Polson; and Charlotte Wells, on      **PLAINTIFF VICTOR**
17    behalf of themselves and all others similarly        **ANTONIO PARSONS'**
     situated; and Arizona Center for Disability Law,    **SECOND SET OF**
18                     Plaintiffs,        **REQUESTS FOR**
                               **PRODUCTION OF**
19        v.                            **DOCUMENTS TO**
                                     **DEFENDANTS**
20    Charles Ryan, Director, Arizona Department of
21    Corrections; and Richard Pratt, Interim Division
     Director, Division of Health Services, Arizona
22    Department of Corrections, in their official
     capacities,

23                     Defendants.

24
25
26
27
28

1         Propounding Parties:      Plaintiff Victor Antonio Parsons

2         Responding Party:      Defendants

3         Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Victor

4   Antonio Parsons, by and through undersigned counsel, requests that Defendants respond,

5   within 30 days and produce the following documents for inspection and copying at ACLU

6   Foundation of Arizona, 3707 N. 7th Street, Suite 235, Phoenix, Arizona 85013.

7                       **DEFINITIONS**

8         1.      "ADC" means the Arizona Department of Corrections, including all its

9   subdivisions, agents, employees, contractors, and attorneys.

10         2.      "ADC STAFF" means all persons employed by ADC, including

11   "CORRECTIONAL STAFF" and "HEALTH CARE STAFF."

12         3.      "COMMUNICATIONS" means any transmittal of information from one

13   person or entity to another by any means, including letters, correspondence, notes,

14   memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied

15   or blind copied), electronic mail generated from a hand held personal device including a

16   Blackberry or iPhone, instant messaging, electronic mail generated from business or

17   personal email accounts, internet relay chat, news group, group or collaboration servers,

18   electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings,

19   audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes,

20   teleconference, collaboration servers (including share point servers), web-based or

21   software virtual meetings including Web-X and any other meeting software and share

22   point servers, and oral contact such as face-to-face discussions or meetings, telephone

23   conversations, and voice mail messages.

24         4.      "COMPLAINTS" means any DOCUMENTS, formal or informal,

25   REGARDING specific or general problems, issues, deficiencies, unanswered questions,

26   challenges, shortcomings, disagreements, or requests brought to the attention of the ADC

27   or any ADC STAFF.

28

5.     "CONDITIONS   OF   CONFINEMENT"   means   all   circumstances REGARDING the state of being imprisoned.

6.     "CONTRACTOR"   means   "LOCUM   TENENS   CONTRACTOR"   and "SPECIALTY CONTRACTOR."

7.     "CORRECTIONAL STAFF" means custody staff employed or paid by the ADC to serve in a security or operational capacity.

8.     "COST   CONTAINMENT"   means   contemplated,   discussed,   or   actual actions to restrict, reduce, contain, or limit costs or expenses by DEFENDANTS, the ADC or any personnel working in any capacity for the ADC or the Arizona State Government, including any agents of the foregoing.

9.     "DEATH RECORDS" means any DOCUMENT REGARDING the death of a PRISONER, including audits, REVIEWS, studies, interview notes, videos, audio-recordings, EXTERNAL INVESTIGATIONS or INTERNAL INVESTIGATIONS.

10.     "DESCRIBE"   and   "DESCRIPTION"   means   to   provide   all   available INFORMATION.

11.     "DISCIPLINE"   means   any   formal   or   informal   discipline,   punishment, reprimand, warning, or comment given to any person as a result of substandard or unacceptable conduct.

12.     "DOCUMENT"   and   "DOCUMENTS"   have   the   same   scope   used   in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and DESCRIPTION and every tangible thing that is or has been in the possession, custody, or control of DEFENDANTS and the ADC, to which they have access, or of which they have knowledge, including, but not limited to, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings,

maps, reports, surveys, MINUTES, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device). "DOCUMENT" and "DOCUMENTS" includes, but is not limited to, all DOCUMENTS generated by or maintained in the Director's Project Tracking System, official ADC papers, and the ADC's intranet.

13.     "EMERGENCY HEALTH CARE SERVICES" means treatment or care to address a mental health, medical, or dental injury or illness that is acute, causes substantial pain, and/or and poses a substantial and immediate risk to the life or long term health of a person.

14.     "ENTRY-LEVEL PRACTITIONERS" means unlicensed persons who provide HEALTH CARE to PRISONERS at the ADC subordinate to MID-LEVEL PRACTITIONERS or HEALTH CARE CLINICIANS.

15.     "EXTERNAL INVESTIGATIONS" means investigations, REVIEWS, audits, or studies, whether formal or informal, conducted by a person who is not employed by the ADC or an entity that is not the ADC.  It is immaterial to the definition whether the EXTERNAL INVESTIGATION was conducted at the ADC's behest or direction.

16.     "GRIEVANCES" means COMPLAINTS or requests made by PRISONERS to the ADC, and the exhaustion of claims raised or stated therein.

17.     "HEALTH CARE" means the provision of care, including adequate diet, to address the mental health, medical, or dental needs of a PRISONER, whether those needs arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic or preventive purposes.

18.     "HEALTH CARE CLINICIANS" means persons independently licensed to provide HEALTH CARE to PRISONERS at the ADC facilities, including but not limited to M.D., D.O., D.D.S., and Ph.D. credentialed staff.

1    19.    "HEALTH CARE DIRECTIVES" means DOCUMENTS REGARDING
2  advance medical care directives, living wills, personal directives, advance directives, or
3  instructions of any kind in which individuals specify what actions should or should not be
4  taken for their HEALTH CARE in the event they are no longer able to make decisions due
5  to illness, injury, or incapacity

6    20.    "HEALTH CARE SHORTAGES" means any deficiencies involving
7  HEALTH CARE, including but not limited to a lack of or insufficient number of
8  medicines, drugs, medical supplies, medical equipment, transportation, or HEALTH
9  CARE STAFFING.

10   21.    "HEALTH CARE STAFF" means all staff employed or paid by the ADC,
11 LOCUM TENENS CONTRACTORS, or SPECIALTY CONTRACTORS (other than
12 CORRECTIONAL STAFF) who are responsible for providing HEALTH CARE to ADC
13 PRISONERS, including but not limited to HEALTH CARE CLINICIANS, MID-LEVEL
14 PRACTITIONERS,   ENTRY-LEVEL   PRACTITIONERS,   PHARMACISTS,   and
15 administrative and support staff.

16   22.    "HEALTH CARE STAFFING" means the provision of HEALTH CARE
17 STAFF to provide HEALTH CARE.

18   23.    "HEALTH GRIEVANCES" means requests for HEALTH CARE or
19 COMPLAINTS REGARDING the need for, adequacy of, quality of, or timing of
20 HEALTH CARE made by PRISONERS to the ADC, including but not limited to the
21 submission of Health Needs Request ("HNR") forms and the exhaustion of claims stated
22 therein.

23   24.    "HNR POLICIES AND PROCEDURES" means policies, procedures, or
24 practices, whether written or established through custom or use, REGARDING HNR
25 submissions by PRISONERS, including but not limited to the distribution, disposal,
26 processing, rejection of, responses to, provision of HEALTH CARE pursuant to, and
27 exhaustion of claims raised by such submissions.  This includes policies, procedures, or
28 practices that are in draft form and have not been approved and/or implemented.

25.     "HOSPITALIZED PRISONER" means any PRISONER who is sent to a hospital or other off-site medical or mental health facility, or who is admitted to an on-site hospital, while in the custody of the ADC.

26.     "HOURS OF OPERATION" means the time periods during which a facility, unit, or other ADC facility housing PRISONERS is able to provide HEALTH CARE to PRISONERS by on-site HEALTH CARE STAFF.

27.     "IDENTIFY" and "IDENTIFICATION" with respect to (a) a PRISONER or former PRISONER, means to state the PRISONER'S full name, ADC number, date of birth, current or most recent mental health score (MH-1 through MH-5), medical score (M-1 through M-5), public risk score, institutional risk score, and current housing location (if still in ADC custody) or last known address and telephone number (if no longer in ADC custody); (b) a person other than a PRISONER or former PRISONER, means to state the person's full name and specify whether or not the person is or has been an ADC STAFF member, and if so, to state the staff member's position title, facility location, work schedule, responsibilities, date ADC employment began, date ADC employment terminated, dates of any changes in position titles or responsibilities, DESCRIPTIONS of any changes in position titles or responsibilities and, if the person is not currently employed by ADC, the person's last known address and telephone number; and (c) a third-party contractor or entity means to state the name of the contractor or entity, the type of entity (*e.g.*, corporation, partnership, etc.); its address and telephone number; and any persons YOU are aware of who acted on behalf of that contractor or entity with respect to the events at issue in the discovery request; (d) IDENTIFY in any other context means to provide as much INFORMATION REGARDING the thing to be identified as is in the possession of DEFENDANTS or the ADC.

28.     "INFORMATION" means any knowledge YOU have, any evidence of any type, any facts of which YOU are aware and any inferences or speculation of which YOU are aware, all regardless of the source.  When INFORMATION YOU provide is based solely on inference or speculation, specifically so state in YOUR response.  When

1   providing INFORMATION, provide the names of involved individuals, actions relevant
2   to the requested INFORMATION, dates and times when known, locations, and any other
3   knowledge YOU have about the subject of the discovery request.  When asked to provide
4   INFORMATION about one or more individuals, IDENTIFY the individual or individuals
5   and provide any other INFORMATION YOU have about such person or persons.

6        29.   "INTERNAL INVESTIGATION" means an investigation, REVIEW, audit,
7   study, interview notes, videos, or audio recordings, whether formal or informal, conducted
8   by the ADC.

9        30.   "ISOLATION" means confinement in a cell for 22 hours or more each day;
10  confinement in Eyman-Special Management Unit ("SMU") 1, Eyman-Browning Unit,
11  Florence-Central Unit, Florence-Kasson Unit, or Perryville-Lumley Special Management
12  Area ("SMA"); or confinement in a Complex Detention Unit ("CDU").

13       31.   "JOB PERFORMANCE EVALUATION" means any evaluation, whether
14  formal or informal, of the work of an ADC STAFF member or contractor performing
15  services for the ADC.

16       32.   "LOCUM   TENENS   CONTRACTOR"   means   any   person   or   entity
17  contracting with ADC to provide HEALTH CARE to ADC PRISONERS.

18       33.   "MID-LEVEL   PRACTITIONERS"   means   licensed   professionals   who
19  provide HEALTH CARE to PRISONERS at the ADC under supervision by HEALTH
20  CARE CLINICIANS.

21       34.   "MINUTES" means notes or any other recording reflecting the content of a
22  meeting, whether written contemporaneously with or subsequent to the meeting.

23       35.   "ORGANIZATIONAL STRUCTURE" means the structure of who reports
24  to whom within the ADC up to and including defendant Charles Ryan, including
25  specifically   all   HEALTH   CARE   STAFF   and   each   individual's   job   title   and
26  DESCRIPTION of duties.

27       36.   "OUTDOOR EXERCISE" means periods during which PRISONERS are
28  permitted to exercise in the outdoors.

1      37.    "PHARMACIST" means a professional who practices pharmacy.

2      38.    "POLICIES AND PROCEDURES" means policies, procedures, criteria, or

3  practices, whether written or established through custom or use, including but not limited

4  to policy and procedure manuals, directors' orders, protocols, directives, flowcharts,

5  institution post orders, and any other DOCUMENTS designed to direct the actions of

6  ADC personnel, ADC contractors, and/or PRISONERS.

7      39.    "PRISONER" means a person incarcerated by the ADC.

8      40.    "QUALITY ASSURANCE" means any activities implemented for the

9  purpose of examining, assessing, evaluating, investigating, analyzing, or identifying the

10 quality of a product or service.

11     41.    "REFERRAL" means a recommendation that a PRISONER obtain

12 HEALTH CARE from HEALTH CARE STAFF at ADC or non ADC facilities, whether

13 or not such HEALTH CARE is in fact ever provided.

14     42.    "REFERRED CARE" means HEALTH CARE pursuant to a REFERRAL.

15     43.    "REFERRED PRISONER" means a PRISONER who received a

16 REFERRAL while in the legal custody of the ADC.

17     44.    "REGARDING" or "REGARDED" to any given subject matter means,

18 without limitation, anything that, in whole or in part, analyzes, comments upon,

19 comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences,

20 explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers

21 to, relates to, responds to, states, summarizes, or is in any way relevant to the particular

22 subject matter identified.

23     45.    "RESPONSE DATE" means date upon which YOU respond to these

24 discovery requests, or, if YOU amend or supplement YOUR response, the date of YOUR

25 amendment or supplement.

26     46.    "REVIEWS" means examinations, assessments, evaluations, or

27 investigations performed by or at the direction of ADC STAFF or officials.

28

47.    "SPECIALTY CONTRACTOR" means any person or entity contracting with the ADC to provide HEALTH CARE to PRISONERS who is not a LOCUM TENENS CONTRACTOR.

48.    "STAFFING SCHEDULE" means the days, hours, and/or shifts for which each member of the HEALTH CARE STAFF was scheduled to work, including overtime, on call and call-in coverage.

49.    "SUFFICIENT TO SHOW" means demonstrating or evidencing complete INFORMATION on the requested topic, without the need to produce every DOCUMENT REGARDING the topic.

50.    "YOU," "YOUR," "YOURSELF," and "DEFENDANTS" means defendants Charles Ryan and Richard Pratt, and their predecessors, successors, employees, subordinates, contractors, agents, and attorneys.

## **INSTRUCTIONS**

1.    YOU are required to furnish all DOCUMENTS in YOUR possession, custody, or control, including those DOCUMENTS that are in YOUR possession, custody, or control in the normal course of YOUR employment obligations, and those in the possession, custody or control of your (1) employer; (2) consultants; (3) attorneys; (4) representatives; (5) agents; or (6) any other person acting or purporting to act on YOUR behalf or at YOUR direction, whether doing so directly or at the direction of YOUR subordinates.  Possession, custody, or control includes DOCUMENTS stored in electronic form by third party service providers but accessible to the Defendant, including but not limited to email accounts, FTP servers, portable storage media such as USB drives, cloud storage services such as Dropbox or SharePoint , and online workspaces such as WebEx.

2.    All non-identical copies of every DOCUMENT whose production is sought shall be separately produced.

3.    Each request herein constitutes a request for DOCUMENTS in their entirety, with all enclosures and attachments, and without abbreviation, redaction, or

1   expurgation.   DOCUMENTS attached to each other, including but not limited to, by

2   staple, clip, tape, email attachment, or "Post-It" note, should not be separated, although

3   any page on which a Post-It note covers or obscures text on the DOCUMENT should be

4   produced both with and without the Post-It note.  The production must also include, where

5   applicable, any index tabs, file dividers, designations, binder spine labels, or other similar

6   information as to the source and/or location of the DOCUMENTS.

7       4.   DEFENDANTS shall produce any and all drafts and copies of each

8   DOCUMENT that are responsive to any request, including but not limited to copies

9   containing handwritten notes, markings, stamps, or interlineations.  The author(s) of all

10   hand-written notes should be identified.

11       5.   YOU shall produce all responsive DOCUMENTS as they have been kept in

12   the ordinary course of business.

13       6.   Responsive DOCUMENTS that exist only in paper form shall be organized

14   as they have been kept in the ordinary course of business and shall be produced according

15   to the following protocol:

16       a.   Paper DOCUMENTS shall be scanned and produced in TIFF image

17       form at a resolution sufficient to enable the generation of searchable text using

18       Optical Character Recognition ("OCR").

19       7.   Responsive DOCUMENTS that exist in electronic form, even if such

20   DOCUMENTS also exist in paper form, shall be produced in electronic form according to

21   the following protocol:

22       a.   Electronic DOCUMENTS shall be produced electronically as single

23       page, uniquely and sequentially numbered Group IV TIFF image files of not less

24       than 300 dots per inch resolution, together with DOCUMENT level load files

25       wherein the full text was extracted directly from the native file where possible.

26       b.   For files produced in TIFF image form, each page of a produced

27       DOCUMENT shall have a legible, unique production number electronically

28       "burned" onto the TIFF image in such a manner that information from the source

1   DOCUMENT is not obliterated, concealed, or interfered with, preferably in the

2   lower right corner of the DOCUMENT.  The production number shall contain at

3   least six digits.   There shall be no other legend or stamp placed on the

4   DOCUMENT image, unless a DOCUMENT qualifies for confidential treatment

5   pursuant to the terms of any protective order in this matter, or if the DOCUMENT

6   requires redaction.   In the case of confidential materials as defined by any

7   protective order in this matter, any applicable designation may be "burned" onto

8   the DOCUMENT's image at a location that does not obliterate or obscure any

9   information from the source DOCUMENT, preferably in the lower left corner.

10         c.      Each DOCUMENT image file shall be named with the unique

11   production number of the page of the DOCUMENT in question, followed by the

12   extension ".tif".  File names should not be more than 20 characters long or contain

13   spaces.

14         d.      For files produced in TIFF image format, each page of a

15   DOCUMENT shall be electronically saved as an image file.  If a DOCUMENT is

16   more than one page, the unitization of the DOCUMENT and any attachments

17   and/or affixed notes shall be maintained as they existed in the original

18   DOCUMENT.

19         e.      TIFF images shall be accompanied by a standard load file containing

20   the metadata and other fields identified in Paragraph 7(j) of these Instructions,

21   below.  The load file shall be produced in one of the following industry-standard

22   formats:  (1) Concordance delimited file (".dat"); (2) comma-separated value file

23   (".csv"); or (3) TAB delimited file.  TIFF images shall also be accompanied by

24   either an Opticon delimited cross-reference file (".opt") or IPRO View LFP

25   comma-delimited file showing DOCUMENT breaks and appropriate DOCUMENT

26   unitization.

27         f.      In addition to TIFF images, each production of electronic

28   DOCUMENTS shall include searchable text files corresponding to the TIFF

images for each DOCUMENT.   The full text of each native electronic DOCUMENT, excluding redacted DOCUMENTS, shall be extracted directly from the native file and produced in a DOCUMENT-level related text file (the "Extracted Text"). The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with the unique production number of the first page of the corresponding TIFF DOCUMENT followed by the extension ".txt".   YOU shall also perform OCR on certain types of non-text based static image ESI, such as native PDF image files, and produce the corresponding DOCUMENT-level related text files. Searchable text files shall be generated from Extracted Text where available.

g.   DOCUMENTS shall be produced on optical media (CD or DVD) or external hard drives or similar, readily accessible electronic media (the "Production Media").  Each piece of Production Media shall IDENTIFY a production number corresponding to the party and production with which the DOCUMENTS on the Production Media are associated (e.g., "RYAN 001"), as well as the volume of the material in that production (e.g., "- 001", "-002").   For example, if the first production wave by YOU comprises DOCUMENT images on three hard drives, YOU shall label each hard drive in the following manner: "RYAN 001-001", "RYAN 001-002", and "RYAN 001-003."  The face of each piece of Production Media shall also IDENTIFY:  (1) the production date; and (2) the production number range of the materials contained on the Production Media.

h.   Presentation DOCUMENTS (such as Microsoft PowerPoint DOCUMENTS) shall be produced with one slide per page together with any "Speaker's Notes" or similar pages appended to, or otherwise associated with, each slide. Presentation DOCUMENTS shall also be produced according to all other applicable Instructions set forth in this set of requests.

i.   Unless redaction is required, spreadsheet DOCUMENTS (such as Microsoft Excel DOCUMENTS) shall be produced in native format, together with

a single page TIFF placeholder bearing the legend "Native File Produced" and load files containing the agreed upon metadata, extracted text, production numbers and any applicable confidentiality labels as described above.  If redaction is required, then spreadsheets shall be produced in TIFF image format as set forth above.

j.      For all DOCUMENTS for which metadata exists, the load files described above shall be produced including the following fields:

| Fields for all DOCUMENTS | Description |
| --- | --- |
| BegProd | Beginning production number assigned to each DOCUMENT |
| EndProd | Ending production number assigned to each DOCUMENT |
| BegAttach | Beginning production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| EndAttach | Ending production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| Custodian | The name of the person or source from which the DOCUMENT was obtained |
| FileName | Original file name |
| FilePath | Original file path |
| DocExt | DOCUMENT type as identified by metadata associated with the native DOCUMENT indicating the extension of the application that created the native DOCUMENT (e.g., .doc, .ppt, etc.) |
| HashValue | The unique identifying value assigned to a DOCUMENT based on hash coding algorithms |
| Author | The person or source that originated the DOCUMENT |
| DateCreated | Date that the DOCUMENT was created (as reflected by metadata) |
| LastModifiedDate | Date that the file was last modified (as reflected by metadata) |

| Fields for all DOCUMENTS | Description |
| --- | --- |
| FullText | The path or link to the searchable Extracted or OCR text for a DOCUMENT |
| NativeFile | The path or link to a processed and produced native file, to the extent the production contains native files |
| Confidentiality | The confidentiality designation for the DOCUMENT, as defined by any protective order in this matter |
| **Additional Fields for Email** | **Description** |
| To | All information contained in the "To" field of an email |
| From | All information contained in the "From" field of an email |
| CC | All information contained in the "CC" field of an email |
| BCC | All information contained in the "BCC" field of an email |
| DateSent | Date the email was sent, including month, day and year |
| TimeSent | Time the email was sent, including hour, minute, second and time zone. To the extent this information is already included in the DateSent field in the metadata, YOU need not parse TimeSent as a separate field. |
| DateReceived | Date the email was received, including the month, day and year |
| TimeReceived | Time the email was received, including hour, minute, second and time zone. To the extent this information is already included in the DateReceived field in the metadata, YOU need not parse TimeReceived as a separate field. |
| Subject | Subject or "Re:" line, as stated in the email |

8.     If with respect to any request there are no responsive DOCUMENTS, so state in writing.

9.     The following rules of construction shall be applied herein: (a) the words "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope ; (b) the use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural; (c) the words "any," "all," "each" and "every" all include any, all, each, and every and shall be understood in either their most or least inclusive sense as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; and (d) the use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the DOCUMENT requests all responses that might otherwise be construed to be outside of their scope.

10.     If YOU object to a portion or an aspect of a request, state the grounds for your objection with specificity and respond to the remainder of the DOCUMENT request. If any DOCUMENTS, or portion thereof, are withheld because YOU claim that such information is protected under the attorney-client privilege, work product doctrine, or other privilege or doctrine,  YOU are required to provide a privilege log setting forth the specific basis for the claim of privilege or protection and for each DOCUMENT provide the following:

        a.     the subject matter of the DOCUMENT;

        b.     the title, heading or caption of the DOCUMENT, if any;

        c.     the date appearing on the DOCUMENT or, if no date appears thereon, the date or approximate date on which the DOCUMENT was prepared;

        d.     the type of the DOCUMENT (e.g., whether it is a letter, memorandum, MINUTES of meeting, etc.) and the number of pages of which it consists;

        e.     the identity of the person who signed the DOCUMENT or, if it was not signed, the person who prepared it;

1    f.    the identity of each person to whom the DOCUMENT was addressed

2    and the identity of each person to whom a copy thereof was sent; and

3    g.    the identity of each person who has custody of a copy of each such

4    DOCUMENT.

5    11.    If YOU claim that a portion of a DOCUMENT is protected from disclosure

6    for any reason, produce such DOCUMENT with redaction of only the portion claimed to

7    be protected.  When such redactions for privilege or protection are made, YOU shall place

8    a legend similar to "REDACTION – PRIVILEGE" on the copy of the DOCUMENT

9    produced.   All redactions shall also be included on the privilege log described in

10   Instruction #4.

11   12.    If you object that a request is vague or ambiguous, IDENTIFY the

12   objectionable aspect of the request.

13   13.    If a request cannot be responded to in full, YOU shall respond to the extent

14   possible, specify the reason for YOUR inability to respond to the remainder, and state

15   whatever information or knowledge YOU have REGARDING the portion to which YOU

16   have not responded.

17   14.    If any DOCUMENT called for by these requests has been destroyed, lost,

18   discarded, or is otherwise no longer in your possession, custody, or control, IDENTIFY

19   such DOCUMENT as completely as possible, and specify the date of disposal of the

20   DOCUMENT, the manner of disposal, the reason for disposal, the person authorizing

21   disposal, and the person disposing of the DOCUMENT.

22   15.    These requests are sequentially numbered and each numbered paragraph

23   constitutes a single request.  Defined terms may be capitalized for the convenience of the

24   parties; the definitions herein apply whether or not the term is capitalized.

25   16.    Except where expressly stated, these requests are not limited in any way by

26   geography.

27   17.    These requests shall be deemed continuing in nature in accordance with

28   Rule 26(e) of the Federal Rules of Civil Procedure.  Supplemental responses are required

1    if additional responsive information is acquired or discovered between the time of

2    responding to this request and the time of trial.

3         18.    Unless otherwise specified, the relevant time period, and the period for

4    which YOU are required to provide responsive DOCUMENTS, is from and including

5    January 1, 2011 up to and including the RESPONSE DATE.

6                            **DOCUMENTS REQUESTED**

7    **REQUEST FOR PRODUCTION NO. 1:**

8         All DOCUMENTS, in particular but not exclusively including recordings,

9    transcripts, summaries, memoranda, or notes, REGARDING telephone calls or other

10   COMMUNICATIONS made by ADC CORRECTIONAL or HEALTH CARE STAFF to

11   911 or other emergency response providers where any part of those

12   COMMUNICATIONS REGARDED Victor Parsons, Shawn Jensen, Stephen Swartz,

13   Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith,

14   Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, or

15   Charlotte Wells.

16

17   **REQUEST FOR PRODUCTION NO. 2:**

18        All DOCUMENTS, in particular but not exclusively including recordings,

19   transcripts, summaries, memoranda, or notes, REGARDING telephone calls or other

20   COMMUNICATIONS made by ADC CORRECTIONAL or HEALTH CARE STAFF to

21   911 or other emergency response providers where any part of those

22   COMMUNICATIONS REGARDED any PRISONER and the telephone call occurred on

23   any date between January 1, 2011 and the RESPONSE DATE.

24

25   **REQUEST FOR PRODUCTION NO. 3:**

26        All DOCUMENTS, in particular but not exclusively including reports, memoranda,

27   notes, photographs, films, audiotapes, videotapes, video recordings, or computer records,

28   REGARDING the use of force by ADC CORRECTIONAL STAFF, in particular but not

exclusively including the use of pepper spray or any similar substance, against Victor Parsons, Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, or Charlotte Wells.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS, in particular but not exclusively including reports, memoranda, notes, photographs, films, audiotapes, videotapes, video recordings, or computer records, REGARDING the use of force by ADC CORRECTIONAL STAFF, in particular but not exclusively including the use of pepper spray or any similar substance, against any PRISONER classified as SERIOUSLY MENTALLY ILL on any date between January 1, 2011 and the RESPONSE DATE.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS, in particular but not exclusively including reports, memoranda, notes, Inmate Letters, photographs, films, audiotapes, videotapes, video recordings, or computer records, REGARDING Daniel Porter, #61424, in particular but not exclusively including video recordings of him and/or ADC CORRECTIONAL and HEALTH CARE STAFF at ASPC-Eyman near him at or near the time of his death on or about February 20, 2012, and video recordings of interviews with PRISONERS regarding Daniel Porter's death.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS, in particular but not exclusively including reports, memoranda, notes, photographs, films, audiotapes, videotapes, video recordings, or computer records, REGARDING Anthony Lester, #253529, in particular but not exclusively including video recordings of him and/or ADC CORRECTIONAL or HEALTH CARE STAFF at ASPC-Tucson near him at or near the time of his death on or about July 11, 2010.

**REQUEST FOR PRODUCTION NO. 7:**

All photographs, films, audiotapes, videotapes, video recordings, computer records, "cell extraction videos," or similar videos made by ADC CORRECTIONAL STAFF REGARDING the removal of Victor Parsons, Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, or Charlotte Wells from their cells.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS REGARDING COMMUNICATIONS, including the COMMUNICATIONS themselves, from ADC to Wexford Health Sources, Inc. on or about September 21, 2012, pertaining in any part to deficiencies ADC has perceived in Wexford's delivery of health care. This production should include the September 21, 2012 letter referenced in the Arizona Republic article titled "Arizona Fines Provider of Prison Health Care," written by Craig Harris, published on September 28, 2012, attached as Exhibit A, and available online at http://www.azcentral.com/news/articles/2012/09/28/20120928arizona-fines-provider-prison-health-care.html. This production should include ADC's correspondence to Wexford as well as any internal documentation or correspondence relating to that correspondence.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS REGARDING COMMUNICATIONS, including the COMMUNICATIONS themselves, from ADC to Wexford Health Sources, Inc. on or about September 28, 2012, pertaining in any part to deficiencies ADC has perceived in Wexford's delivery of health care. This production should include the letter notifying Wexford that Wexford has until October 22, 2012 to respond to ADC's letter of September 21, 2012 referenced in the Arizona Republic article titled "Arizona Fines

1    Provider of Prison Health Care," written by Craig Harris, published on September 28,
2    2012, attached as Exhibit A, and available online at
3    http://www.azcentral.com/news/articles/2012/09/28/20120928arizona-fines-provider-
4    prison-health-care.html.   This production should include ADC's correspondence to
5    Wexford as well as any internal documentation or correspondence relating to that
6    correspondence.

7

8    **REQUEST FOR PRODUCTION NO. 10:**

9        All DOCUMENTS REGARDING COMMUNICATIONS, including the
10   COMMUNICATIONS themselves, from Wexford Health Sources, Inc. to ADC.  This
11   production should include the letter from Wexford to Charles Ryan pertaining to
12   deficiencies Wexford perceived in the prior existing ADC health care system and
13   referenced in the Arizona Republic article titled "Arizona Fines Provider of Prison Health
14   Care," written by Craig Harris, published on September 28, 2012, attached as Exhibit A,
15   and available online at
16   http://www.azcentral.com/news/articles/2012/09/28/20120928arizona-fines-provider-
17   prison-health-care.html.   This production should include Wexford's correspondence to
18   ADC as well as any internal documentation or correspondence relating to that
19   correspondence that is available to Defendants.

20

21   **REQUEST FOR PRODUCTION NO. 11:**

22       All other DOCUMENTS, COMMUNICATIONS, audits, evaluations, internal
23   correspondence, memoranda, minutes, and/or "cure notices" REGARDING in any part
24   deficiencies that ADC has perceived in Wexford's delivery of health care.

25       Plaintiffs note that these documents should have been produced previously as
26   responsive to topics 3-6 of the 30(b)(6) Deposition Duces Tecum that was noticed on
27   August 9, 2012, docketed as document 76, and responded to by Defendants on August 27,
28   2012 with a promise to produce all responsive documents.

1  **REQUEST FOR PRODUCTION NO. 12:**

2  All DOCUMENTS and COMMUNICATIONS REGARDING any attempted or

3  completed suicide at any ADC facility in Florence, Arizona between August 20, 2012 and

4  September 3, 2012.

5

6  **REQUEST FOR PRODUCTION NO. 13:**

7  All DOCUMENTS, in particular but not exclusively including photographs and

8  video recordings, REGARDING, depicting, or documenting the physical or mental

9  condition of Victor Parsons, Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia

10  Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne

11  Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, or Charlotte Wells after any of

12  these persons sustained an injury.

13

14  **REQUEST FOR PRODUCTION NO. 14:**

15  All DOCUMENTS that refer or relate to topics 1-16 listed on pages 8-9 of the

16  Notice of 30(b)(6) Deposition Duces Tecum, filed August 28, 2012, docketed as

17  document 98.  These DOCUMENTS should in particular but not exclusively include all

18  the records and reports for the period including January 1, 2011 through October 1, 2012

19  mentioned by Dr. Michael Adu-Tutu during his October 1, 2012 deposition, such as

20  agreements with outside dental providers (including "pool" providers and "registry"

21  providers), notes or memoranda REGARDING Dr. Adu-Tutu's conferences with ADC

22  STAFF, notes or memoranda REGARDING ADC's evaluation of the proposals submitted

23  in response to ADC's Request for Proposal Number ADOC12-00001105, notes or

24  memoranda REGARDING Dr. Adu-Tutu's efforts to recruit dental and other medical

25  providers, notes or memoranda REGARDING exit interviews with dental staff, quality

26  management reports, staffing reports, wait time reports, and equipment maintenance

27  reports.

28

1      Plaintiffs note that these documents should have been produced previously as

2  responsive to 30(b)(6) Deposition Duces Tecum filed August 28, 2012.

3  Dated:  October 12, 2012                    **PERKINS COIE LLP**

4

5                                             By:   s/ Matthew B. du Mée
                                               Daniel C. Barr (Bar No. 010149)
6                                              Jill L. Ripke (Bar No. 024837)
                                               James A. Ahlers (Bar No. 026660)
7                                              Kirstin T. Eidenbach (Bar No. 027341)
                                               John H. Gray (Bar No. 028107)
8                                              Thomas D. Ryerson (Bar No. 028073)
                                               Matthew B. du Mée (Bar No. 028468)
9                                              2901 N. Central Avenue, Suite 2000
                                               Phoenix, Arizona 85012
10                                             Telephone:  (602) 351-8000
                                               Email:    dbarr@perkinscoie.com
11                                                       rjipke@perkinscoie.com
                                                         jahlers@perkinscoie.com
12                                                       keidenbach@perkinscoie.com
                                                         jhgray@perkinscoie.com
13                                                       tryerson@perkinscoie.com
                                                         mdumee@perkinscoie.com

14                                             Daniel Pochoda (Bar No. 021979)
                                               Kelly J. Flood (Bar No. 019772)
15                                             James Duff Lyall (Bar No. 330045)*
                                               **ACLU FOUNDATION OF**
16                                             **ARIZONA**
                                               3707 North 7th Street, Suite 235
17                                             Phoenix, Arizona 85013
                                               Telephone:  (602) 650-1854
18                                             Email:    dpochoda@acluaz.org
                                                         kflood@acluaz.org
19                                                       jlyall@acluaz.org

20                                             *Admitted pursuant to Ariz. Sup. Ct.
                                               R. 38(f)

21

22

23

24

25

26

27

28

78204-0001/LEGAL24896164.1                    -21-

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:     dspecter@prisonlaw.com
           ahardy@prisonlaw.com
           snorman@prisonlaw.com
           ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@npp-aclu.org
           afettig@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted
  in DC; practice limited to federal
  courts.
**Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:     cnmitchell@jonesday.com
           dkiernan@jonesday.com
           scalderon@jonesday.com
           srauh@jonesday.com

*Admitted *pro hac vice*

R. Scott Medsker (D.C. 976405)*
**JONES DAY**
51 Louisiana Avenue, NW
Washington, D.C. 20001-2113
Telephone:  (202) 879-3837
Email:     rsmedsker@jonesday.com

*Admitted *pro hac vice*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:     jlwilkes@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:     kmamedova@jonesday.com
           jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Victor Parsons;
Shawn Jensen; Stephen Swartz; Dustin
Brislan; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2012, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Assistant Arizona Attorney General
Michael.Gottfried@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

*Attorneys for Defendants*

Jennifer Alewelt
Asim Varma
Sarah Kader
ARIZONA CENTER FOR DISABILITY LAW
jalewelt@azdisabilitylaw.org
avarma@azdisabilitylaw.org
skader@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

s/ Delana Freouf

# EXHIBIT A

**October 12, 2012 |**                                      **10:47 am 68°**

## News



- Type Size: **A A A**
- 🖶 **Print**
- ✉ **Email**
- ⭐ **Most Popular**

# Arizona fines provider of prison health care

*by Craig Harris - Sept. 28, 2012 11:26 PM*
*The Republic | azcentral.com*

| Recommend | 42 people recommend this. Sign Up to see what your friends recommend. |

| Tweet | 4 |

The Arizona Department of Corrections has levied a $10,000 fine against Wexford Health Sources Inc., a new private medical-care provider for inmates that is accused of improperly dispensing medicine and wasting state resources.

- **Prison nurse tied to hepatitis C exposure at Buckeye facility**

The DOC called on Wexford to fix staffing problems, properly distribute and document medication for inmates, show a sense of urgency and communicate better with the state when problems occur.

Wexford was fined over the actions of a nurse who caused a hepatitis C scare in August at the Arizona State Prison Complex-Lewis in Buckeye, and for failing to properly report the problem to authorities.

Corrections Director Charles Ryan in a statement said the state's demands, called a cure notification, give the state and Wexford an opportunity to "improve communications and ensure the health care needs of the inmates incarcerated by the State of Arizona are being met."

Ryan was not available to answer questions. Bill Lamoreaux, a DOC spokesman, declined to answer specific questions about the matter.

Wexford was hired after the Republican-controlled Arizona Legislature pushed to privatize inmate health care to save money. The DOC in strongly worded letters to Wexford alleges the company forced the state to use public employees to fix its deficiencies. The amount of wasted tax dollars was not disclosed. Arizona houses close to 40,000 inmates.

Lamoreaux declined to answer if taxpayers were still saving money with Wexford's services.

The Pittsburgh-based company took over inmate care July 1 after winning a $349 million, three-year contract. The company plans to appeal the fine, according to Wexford spokesman Jason Rose. Wexford, in a letter to Ryan, contends the conditions of health care in the state prison system were poor and problems existed prior to privatization.

*The Arizona Republic* learned of the punishment after filing a public records request Friday. The state on Sept. 21 sent a seven-page letter to Wexford outlining the company's alleged deficiencies, according to documents obtained under the Arizona Public Records Law. The state on Friday notified Wexford it had until Oct. 22 to respond to the notice.

In that letter, the DOC says:

A Wexford nurse on Aug. 17, at the Arizona State Prison Complex-Perryville in

Goodyear, improperly administered medication to an inmate by having the inmate "lick the powdered medication from her own hand," instead of putting the medication in a small cup of water.

In August, the state learned that "a significant number of inmates may not have been receiving their medications as prescribed due to expired prescription(s) and inappropriate renewals or refills." The state said Wexford showed a "lack of urgency" to correct the problem, and the state had to deploy staff "to identify inmates in need of medication renewals."

An inmate was found hanging from a sheet in his housing unit in Florence on Aug. 23. The state determined that the inmate had not received his psychotropic medication for the entire month of August, prior to his hanging, and Wexford's failure to deliver the medication was a "significant, non-compliance issue." Records do not indicate if the inmate survived.

On Aug. 27, a nurse hired by Wexford contaminated a vial of insulin, potentially exposing roughly 100 inmates at the state prison in Buckeye to hepatitis C. Another Wexford nurse was aware of the problem Aug. 27, but she did not file an incident report until Sept. 4, violating policy. The state was forced to deploy additional compliance monitoring staff to correct the problem. It said Wexford failed to follow established nursing protocols, mismanaged documents and engaged in inadequate and inaccurate communication.

At the Goodyear prison, meanwhile, a known case of whooping cough, a reportable infectious disease, went unreported to DOC staff and Wexford's state-level management for 30 days, indicating a "lack of urgency" and a "lack of awareness of the situation's potential seriousness."

"This is more proof that privatization is not saving us money, not providing better services and is not any more efficient," said Caroline Isaacs, program director for the prison watchdog group American Friends Service Committee. "While the state clearly had its problems, just inserting another layer to the bureaucracy is no way to address the problems, and it complicates the matter."

Wexford, in a letter to Ryan, said it believed in being held accountable, but added the DOC "must recognize that the system that was in place less than 90 days ago was extremely weak." Wexford also said 34 people who were previously in state prison management positions were hired by the state as monitors, and that has created a void in "leadership and institutional knowledge that Wexford Health is working hard to fill."

Wexford said those monitors are the same people who allowed the system to get to its current state, and they have interfered with Wexford's efforts to provide appropriate health-care services to inmates.

Before the problems in Arizona, Wexford had issues in other states.

Clark County, Wash., declined to renew a contract with Wexford in 2009 at its county jail and juvenile-detention center after complaints that Wexford was not dispensing medications to inmates in a timely fashion.

And New Mexico terminated a statewide contract with Wexford in 2007 after an audit by that state's legislative finance committee found shortages of physicians, dentists and other prison medical staff, and noted that Wexford had failed to issue timely reports on the deaths of 14 inmates the previous year.

- Type Size: A A A
- Print
- Email

MORE FROM AZCENTRAL

- **Most Popular**
- Arizona math teachers feel squeeze (azcentral.com | Arizona Republic Front Page)
- SHARE
- 0 n finds 4 children home alone (azcentral.com | news)
- Teen swigs nitrogen drink, has stomach removed (azcentral.com | thebuzz)
- It may be kind to let go (azcentral.com | Arizona Republic Front Page)

MORE FROM THE WEB

- Here Are the Top 5 Most Miserable States in America (Bloomberg)
- Israelis Moving to Golan Heights As Development Booms (AL-Monitor)
- Would You Fire Someone For Refusing To Wear A "666" Sticker? (OPEN Forum)
- Gas prices and industry earnings: A few things to think about the next time you fill up (ExxonMobil's Perspectives Blog)

® Remaining Views

- Wife forces husband to strip naked, police say (azcentral.com | thebuzz)
- Teachers Avoid Loan Sharks, Using E-Payments (Visa Viewpoints)

[?]



**LATEST NEWS HEADLINES**

- 3 states could legalize marijuana
- Vice president debate: Biden, Ryan exchange blows on various issues
- 2 fatally shot in Prescott Valley apartment
- Drowning victim's body recovered from Padre Canyon
- Turkey detains Syrian jetliner
- Autopsy: 2 shots in head killed Mexican drug lord
- Mexico condemns shooting involving border agent
- Girl, 4, dies during Make-A-Wish trip
- Kirkpatrick-Paton race seen as competitive
- 2 brothers charged with raping drunk boy

Remaining Views