Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Courtney R. Cloman, Bar No. 023155
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-NVW<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION (DOC. 687)** |

This is about Plaintiffs' counsels' mismanagement of this case.  Defendants and the Court have bent over backwards to provide Plaintiffs with discovery they have requested, discovery the Court has deemed needless and excessive.  Plaintiffs' army of lawyers have been fishing for months from a bottomless lake, and yet they still claim they do not have "critical" information that goes "to the very heart" of their case.[1]  Given the amount of discovery Plaintiffs have been provided, only one of two things can be true: either the evidence they were hoping for does not exist (the "smoking gun") or they have failed in their management of timely and efficient discovery.  Neither of these are an excuse to allow Plaintiffs to continue their fishing expedition.    The Court set very precise parameters as to the duration of discovery.  Plaintiffs' counsel were well aware of those parameters.  They need to stop blaming Defendants and the Court, and move on with their case.  For the reasons that follow, the Court should deny Plaintiffs' Motion and award Defendants their attorneys' fees in having to respond.

## I.      DEFENDANTS HAVE NOT OBSTRUCTED DISCOVERY IN THIS CASE

Plaintiffs' strategy all along has been scorched-earth litigation — bombard Defendants with discovery until they give up and agree to a consent decree, à la *Plata/Coleman v. Brown*.  This is readily apparent from the amount of discovery Plaintiffs have taken thus far:

> Defendants have responded to **124 Interrogatories**, including **5,576 pages in response thereto**;
>
> Defendants have responded to **446 Requests for Admissions**;
>
> Defendants have produced **265,144 pages of documents** in response to **208 Requests for Production**;
>
> Plaintiffs have acquired **14,090 pages of documents** in response to **third-party document requests**;
>
> Plaintiffs have taken **42 depositions**, totaling **182 hours and 7,241 pages of transcripts** (and still have two more depositions to go);

---

[1] If that is true, how then can they brazenly assert that inmates "are dying, suffering, and at serious risk of future harm because Defendants' provision of health care and conditions of confinement in isolation are so grossly inadequate" ? (Mot. at 1.)

1
2

> Plaintiffs' experts have spent **50 days touring** ADC facilities, for a total of **428 hours**, reviewing inmate medical records other documents and interviewing inmates.

3   (Exhibit 1.)  Perhaps what is even more remarkable is how much of this discovery took

4   place in the last month of fact discovery.  After the Court denied Defendants' request for a

5   stay of proceedings pending resolution of their appeal from the class certification order,

6   Defendants produced 125,933 pages of documents responsive to Plaintiffs' Requests for

7   Production (approximately 47% of all document production in this case),[2] and Plaintiffs

8   will have deposed 26 witnesses (59% of all depositions).[3]  (Id.) That is a far cry from

9   Plaintiffs' representation to the Court, in opposing Defendants' request for a stay, that

10  discovery was nearly done. Defendants have incurred great expense and burden in

11  responding to Plaintiffs' discovery in this case.[4]

12          Plaintiffs' contention that Defendants have obstructed discovery is patently

13  false.  To distract from the enormity of Defendants' astounding production, Plaintiffs

14  complain about a handful of documents. Their complaints are not well taken, amount to

15  nothing more than finger pointing, and do not undermine the fact that Defendants have

16  been more than accommodating.

17          **A.    Documents Used During Plaintiffs' Depositions**

18          Plaintiffs contend that Defendants questioned "Named Plaintiffs in their

19  depositions about documents Plaintiffs' counsel had not seen before," resulting in their

20  prejudice.  (Motion at 2.)  This broad assertion is based on *one* instance during Plaintiff

21  Polson's deposition on August 23, 2013. (Dkt. # 691, ¶ 3.) Defendants' counsel asked

22  Polson several questions pertaining to his Individual Inmate Detention Records ("IIDR").

23
24          [2] This does not include thousands of pages of documents that Defendants have agreed to produce. (Exhibit 2, ¶ 15.) Since the close of fact discovery, Defendants have produced approximately 20,616 pages of documents. (Id., ¶ 12.)

25          [3] Defendants accommodated twelve of these depositions in a six-day period over the last two weeks of discovery, on just a few days' notice. (Exhibit 1.)

26
27          [4] Plaintiffs accuse Defendants of understaffing document production, and belittle the efforts of Assistant Attorney General Rand. Such attacks are beyond the pale, and as discussed below, Plaintiffs' counsel should be pointing the finger at themselves. Ms. Rand has submitted a Declaration refuting the allegations against her. (Exhibit 2.)

28

The IIDR records days in which Polson refused recreation and was provided meals, and Polson was asked whether he had any reason to dispute the entries.  (Exhibit 5 at 53–62.) Plaintiffs' counsel objected to the line of questioning. (Id.) Defendants' counsel mistakenly believed that these records had been previously disclosed, and upon finding that they had not been, they produced them on September 7, 2013. This was an isolated incident, and Defendants fail to see how Plaintiffs were "prejudiced" (or again, how this has anything to do with the Stipulation).

### B.    Documents Referenced During ADC Depositions

Plaintiffs contend that Defendants failed to produce documents prior to the depositions of Dr. Nicole Taylor, Marlena Bedoya, and Carson McWilliams, prohibiting them from eliciting "substantive testimony" during their depositions.  They fail to tell the whole story.

**Dr. Taylor – Psychiatric Autopsies**. Plaintiffs contend that Defendants should have produced the psychiatric autopsies referred to during Dr. Taylor's deposition. (Mot. at 2.)  Psychiatric autopsies are prepared at the direction of counsel in anticipation of litigation and thus protected from disclosure. (Exhibit 3, ¶ 15.)

**Bedoya – Spreadsheet**.  Plaintiffs state in their Motion that Contract Monitor Bedoya "testified during her September 10, 2013 depositions [sic] about a memorandum she wrote summarizing troublesome trends regarding the administration of sick calls and the management of medical records."  (Mot. at 2.)  But Ms. Bedoya did not testify regarding "troublesome trends," nor does the memorandum she was shown during the deposition contain such language.  In fact, she testified that the memorandum, which is dated April 5, 2013, covers the first month of Corizon's performance under the contract. Ms. Bedoya testified that the spreadsheet she attached to the memorandum "showed which yards and what items needed to be retrained with your staff" because "there were a lot of new hires." (Exhibit 3,¶ 16.) Defendants produced the memorandum, which references the spreadsheet, to Plaintiffs on May 17, 2013. (Id.) Plaintiffs had ample opportunity to request production of the spreadsheet prior to Ms. Bedoya's deposition on

4

1  September 10, 2013, but failed to do so.  (Id.)

2          **McWilliams – Suicide Rate Statistics & Maximum Custody Inmate**

3  **Report.**  Plaintiffs assert that "Carson McWilliams testified that updated statistics

4  compiled by the ADC reveal a change in the suicide rate in ADC facilities."  (Mot. at 2.)

5  This misstates Mr. McWilliams' September 27, 2013 testimony.  McWilliams did not

6  refer to suicide rates during his deposition, only the number of suicides. (Exhibit 3, ¶ 17.)

7  Nonetheless, Defendants have produced statistics on suicides rates per 100,000 inmates

8  with Defendants' Tenth Supplemental Disclosure Statement, served on September 27,

9  2013.  (Id.) And Defendants produced, on June 26, 2013, a chart of all ADC inmates

10  whose deaths were classified as suicides from 2009 to 2013 in response to Plaintiff Wells'

11  Interrogatory No. 1. (Id.) Additionally, ADC issues an Inmate Death Notification on the

12  ADC web site for every inmate death in ADC custody.  (Id.) Thus, the information was

13  readily available to Plaintiffs.  Plaintiffs further contend that McWilliams "testified that

14  the ADC has generated a report listing all prisoners held in isolation units and the amount

15  of time spent by each prisoner."  (Mot. at 2.)  Plaintiffs again mischaracterize

16  McWilliams' testimony. When Plaintiffs asked him whether there are "any reports or

17  documents generated in ADC that analyze or record the length of stays for prisoners in

18  isolation," McWilliams responded, "I don't know of any reports that are just designed to

19  look at length of stay." (Exhibit 3, ¶ 18.)

20        **C.**   **Destroyed Documents**

21          Plaintiffs contend that Defendants have "apparently destroyed" corrective

22  action plans ("CAPs") "that should have been subject to a litigation hold." This is

23  purportedly based on the deposition testimony of Contract Monitor Troy Evans, in which

24  he testified that he "think[s]" the CAPs are purged once they are approved. (Ex. 6 at 88.)

25  They are not destroyed, and Defendants told this to Plaintiffs' counsel during a recent

26  meet and confer.

27        **D.**   **Other Allegedly Non-Produced Documents**

28          Plaintiffs baldly contend in their Motion that "key documents are missing"

from Defendants' production, and cite to the Declaration of Ajmel Quereshi. (Mot. at 9.) Many of the "critical" documents Plaintiffs claim have not been produced by Defendants do not even exist, but instead have been invented by Plaintiffs through tortured readings of the depositions of ADC employees, other documents, while in existence, are not responsive to the discovery requests Plaintiffs cite to, and the alleged absence of other documents were not brought to Defendants' attention until *two days* before the close of discovery. Plaintiffs are hoping they can circumvent the meet-and-confer process, and elicit a production order now despite their lack of diligence. Each production claim is carefully refuted in the attached Declaration. (Exhibit 3.)

Plaintiffs also contend that Defendants "reneged on agreements to produce" documents in light of the Court's order denying the parties' Stipulated Motion. (Mot. at 9.) They are referring to the inspection of approximately 19 boxes of records that have been sitting in Defendants' counsel's office for the past three months. Defendants made inspection of those documents available months ago, and informed Plaintiffs' counsel of their availability for inspection. Yet, Plaintiffs' counsel made no attempt to inspect them. It was only hours after the Court's order denying the parties' Stipulated Motion – which did not even concern the documents made available for inspection – that Plaintiffs' counsel attempted to make arrangements to inspect them. But since discovery was closed, the time for inspection was over. (Exhibit 2, ¶ 11.)

## II.   PLAINTIFFS WERE NOT DILIGENT IN PURSUING DISCOVERY

The reason Plaintiffs sought an open-ended extension to continue raising discovery disputes is so that they can continue conducting more and more discovery. Experience in this litigation has shown, however, that each time a dispute arises and a ruling is issued it results in yet more discovery and more disputes. That is what Plaintiffs are hoping for: more discovery.[5] Plaintiffs' Motion for Reconsideration glosses over the

---

[5] Coincidentally, just last week, ADC received a public records request from Channel 12 News, requesting many of the same documents that Plaintiffs contend they have not received. (Exhibit 7.) The request also seeks disclosure of Defendants' counsels' billing records. (Id.)

scope and nature of the outstanding disputes; they are intentionally vague so that Plaintiffs are not boxed in.  Each forecasted dispute in the Stipulation is explained and refuted in the attached Declaration.  (Exhibit 4.)  But there is a common theme for all them: Plaintiffs could have and should have raised these disputes sooner so that the Court had adequate time to resolve them.  The Court was correct in finding that Plaintiffs were not diligent in presenting them to the Court.

Much of what Plaintiffs demand are documents that were mentioned during one of the twelve depositions Plaintiffs conducted in the last eleven days of discovery, and the majority of them were not requested of Defendants until September 25, 2013 – two days before the close of discovery.  (Exhibit 4.)  Plaintiff waited until the eleventh hour to depose these individuals; there was no reason these depositions could not have been scheduled months ago.  (Id.) More importantly, it is unclear whether the items referenced in those depositions actually exist in the normal course of ADC business.  (Id.) Moreover, the majority of the documents contained in the Stipulation are documents Defendants said they will produce and have been producing.  (Id.) Plaintiffs' assumption that simply because they have not received particular documents equates to a refusal by Defendants to produce them is without support. (Id.)

Many of the documents referenced in the Stipulation have been provided to Plaintiffs through other means, making their renewed requests, duplicative.  (Id.) For example, the majority of the medical records Plaintiffs now want produced, were reviewed by both Plaintiffs' Counsel and Plaintiffs' experts during their expert tours. (Id.) Plaintiffs also demand production of the same information in different form. (Id.) For example, although Defendants have provided monthly MGAR reports for each facility, Plaintiffs demand production of the "e-format" MGAR, despite being advised that the "e-format" contains the same information as the regular MGAR. (Id.)

Defendants only agreed to the stipulation initially because the Court had issued a series of rulings affording Plaintiffs more discovery, and were, frankly, concerned about raising the ire of the Court with respect to yet another discovery dispute.

Defendants were trying to be reasonable, despite the fact that the majority of the items outlined in the stipulation had been brought to Defendants' attention just days before, and the parties had not yet had an opportunity to meet-and-confer on the issue. But the Court is absolutely right: *Plaintiffs* were not diligent in pursuing their discovery in this case, and particularly in taking depositions. Allowing Plaintiffs to re-open disputes and discovery will endorse *their* mismanagement of discovery from the outset.

Regarding the Tenth Discovery Dispute, the merits of Defendants' argument is contained within the Dispute. Defendants did not conceal their intent to stop supplementing Parsons' discovery requests to sandbag Plaintiffs and prevent them from re-issuing additional requests. Defendants informed Plaintiffs that supplementation would not continue once they realized that it was no longer required. (Exhibit 2, ¶ 7.) And when they did, Plaintiffs had more than enough time to raise it with the Court, and they did not. Indeed, they managed to raise other disputes with the Court before the discovery deadline. Obviously, Plaintiffs made the strategic decision to wait until the last day of discovery to coincide with the Stipulation so as to give their position greater weight. But the Court set a specific deadline for disputes to be resolved, and they did not comply with that directive.[6]

---

[6] On September 5, 2013, Plaintiffs' counsel Amy Fettig sent correspondence to Defendants requesting supplementation of Defendants' responses to various discovery requests. Former Plaintiff Parsons' RFPs were among the requests discussed in the correspondence. Tellingly, Ms. Fettig wrote that Plaintiffs have "identified a narrow list of requests that require response and supplementation." She even goes further to state that, "[w]here possible we have also narrowed the scope of these requests or specifically waived further supplementation." (Exhibit 8.) This correspondence came before any discussions between the parties regarding supplementation of former Plaintiff Parsons' Requests. Ms. Fettig then outlined eleven RFPs from former Plaintiff Parsons that Plaintiffs believed required responses or supplementation. This is a far cry from the 38 that Plaintiffs now wish the Court to believe Defendants will not supplement. Therefore, only eleven Parsons-propounded RFPs are at issue here. Plaintiffs use this correspondence requesting "supplementation" to change the original RFPs and request additional documents not encompassed by the original RFP. Plaintiffs also ignore any objections Defendants preserved in relation to such Requests.

1

## **CONCLUSION**

2

For these reasons, Plaintiffs' Motion for Reconsideration should be denied.

3

DATED this 28th day of October 2013.

4

STRUCK WIENEKE & LOVE, P.L.C.

5

6

By /s/ *Daniel P. Struck*

7

Daniel P. Struck
Kathleen L. Wieneke

8

Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo

9

Courtney R. Cloman
Ashlee B. Fletcher

10

Anne M. Orcutt
STRUCK WIENEKE & LOVE, P.L.C.

11

3100 West Ray Road, Suite 300
Chandler, Arizona  85226

12

13

Arizona Attorney General Thomas C. Horne
Office of the Attorney General

14

Michael E. Gottfried
Lucy M. Rand
Assistant Attorneys General

15

1275 W. Washington Street
Phoenix, Arizona 85007-2926

16

17

*Attorneys for Defendants*

18

19

20

21

22

23

24

25

26

27

28

9

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2013, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amy Fettig: | afettig@npp-aclu.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| Daniel Joseph Pochoda: | dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| James Duff Lyall: | jlyall@acluaz.org; gtorres@acluaz.org |
| Jennifer Ann Alewelt: | jalewelt@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Cathleen M. Dooley: | cdooley@azdisabilitylaw.org |
| J.J. Rico: | jrico@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Kelly Joyce Flood: | kflood@acluaz.org; gtorres@acluaz.org |
| Kirstin T. Eidenbach: | keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; docketphx@perkinscoie.com |
| Matthew Benjamin de Mee: | mdumee@perkinscoie.com; cwendt@perkinscoie.com |
| Michael Evan Gottfried: | Michael.gottfried@azag.gov; colleen.jordan@azag.gov; lucy.rand@azag.gov |
| Sara Norman: | snorman@prisonlaw.com |
| Sophia Calderon: | scalderon@jonesday.com; lwong@jonesday.com |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |

David C. Kiernan:       dkiernan@jonesday.com; lwong@jonesday.com

John Laurens Wilkes:    jlwilkes@jonesday.com, dkkerr@jonesday.com

Kamilla Mamedova:       kmamedova@jonesday.com

Jennifer K. Messina:    jkmessina@jonesday.com

Taylor Freeman:         tfreeman@jonesday.com

Sarah Eve Kader:        skader@azdisabilitylaw.org, mlauritzen@azdisabilitylaw.org

Katherine E. Watanabe:  Katherine.Watanabe@azag.gov, susan.oquinn@azag.gov

Amelia M. Gerlicher:    agerlicher@perkinscoie.com;docketPHX@perkinscoie.com,
                        pdrew@perkinscoie.com

Lucy Marie Rand:        Lucy.Rand@azag.gov, Geneva.Johnson-Joksch@azag.gov

Ajmel Quereshi:         aquereshi@npp-aclu.org

        I hereby certify that on this same date, I served the attached document by U.S.
Mail, postage prepaid, on the following, who is not a registered participant of the
CM/ECF System:

        N/A

                                        /s/ Daniel P. Struck