Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email: dpochoda@acluaz.org
        kflood@acluaz.org
        jlyall@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Shawn Jensen, Stephen
Swartz, Dustin Brislan, Sonia Rodriguez,
Christina Verduzco, Jackie Thomas, Jeremy
Smith, Robert Gamez, Maryanne Chisholm,
Desiree Licci, Joseph Hefner, Joshua Polson,
and Charlotte Wells, on behalf of themselves and
all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON
SIGNATURE PAGE]**

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | No. CV 12-00601-PHX-NVW (MEA)<br><br>**PLAINTIFFS' MOTION TO ENFORCE THE COURT'S ORDERS OF OCTOBER 16, 2012 AND NOVEMBER 4, 2013** |

**INTRODUCTION**

Plaintiffs move to enforce the Court's orders of October 16, 2012 (Doc. 186) and November 4, 2013 (Doc. 717) and for sanctions because Defendants refuse to produce: (1) the medical records of prisoners who died in their custody, and (2) medical records of prisoners who have left ADC custody since the document request was made. The Court's November 4, 2013 Order required Defendants to supplement by November 25, 2013 their responses to a set of requests for production of documents that included a request for "death records," a term that has included medical records throughout the course of the parties' dealings in the case.

Defendants now claim, for the first time, that the request for "death records" does not include the medical records of deceased prisoners. [*See* Declaration of Corene Kendrick ("Kendrick Decl.") ¶¶ 26, 28, 29 and Ex. 19][1]  This objection is frivolous. Defendants previously informed the Court that they would produce such medical records (*see* Doc. 179 at 2); the Court has previously ordered Defendants to produce these records (*see* Doc. 186); Defendants have agreed to produce these records (*see* Exs. 5, 6, 12); and in fact they have produced such medical records in previous discovery responses. [*See* Exs. 7-10, 13]

Despite this Court's original order requiring production of death records—including the medical charts—in October 2012, Defendants have refused to produce the medical records of any prisoner who has died within the last 14 months. Plaintiffs moved to compel such records, consistent with the Court's previous orders. [Docs. 186, 673, 687]  The Court ordered Defendants to produce these documents by November 25, 2013. [Doc. 717]  Plaintiffs subsequently narrowed the request for deceased prisoners' medical files to cover only those deaths since March 4, 2013, the date Corizon began providing health care to ADC prisoners. [Ex. 17]

---

[1] All exhibits cited herein are attached to the Kendrick Declaration unless otherwise specified.

These records are critical for the resolution of this case for several reasons. First, the medical files in dispute cover the time period since Corizon took over delivery of health care. Second, if Defendants are not ordered to produce these medical files, by the time this case goes to trial in October 2014, Plaintiffs will be left with death records that are at least two years old by the time of trial. Third, these records will show the constitutionally deficient care performed by Defendants on prisoners with serious health care needs and the extreme harm that continues to result from Defendants' deliberate indifference to the serious health care needs of prisoners. Finally, they will show that Defendants' process for reviewing deaths for quality of care is bankrupt.

In addition, Defendants have now raised a new objection to the production of medical records generally, and are refusing to produce the records of any prisoner who has been released from custody since the request was made. [Kendrick Decl. ¶¶ 24, 26, 29; Exs. 18-19] A prisoner's release status has no bearing on the fundamental questions at issue here regarding the systemic nature of health care at ADC. Accordingly, Defendants' objections to production are groundless.

The Court should enforce its October 16, 2012 and November 4, 2013 Orders by requiring Defendants to (1) produce the medical records of prisoners who have died since March 4, 2013, and (2) produce the medical records of prisoners who were in custody at the time their files were requested. The Court should impose sanctions because Defendants' conduct is in bad faith and not substantially justified. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii).

The parties have met and conferred on two occasions and exchanged correspondence about these issues but have reached an impasse and are unable to resolve them. [Kendrick Decl. ¶¶ 25-30]

**STATEMENT OF FACTS**

Plaintiffs requested "[a]ll documents regarding DEATH RECORDS" on June 15, 2012.[2]  [Ex. 1]  In their response, Defendants made two paragraphs worth of boilerplate objections, but never objected that medical records were not responsive.  [Kendrick Decl. ¶ 3, Ex. 2]

After the Court entered a protective order, Defendants agreed to "disclose medical records of deceased inmates to Plaintiffs within thirty days."  [Defendants' Notice Regarding First Joint Notice of Discovery Dispute, filed October 12, 2012, Doc. 179 at 2]  The Court then ordered production of all death records.  [Doc. 186]  Pursuant to the Order, Defendants produced 54 medical records of deceased prisoners in five different productions.  The last production was on May 1, 2013, five months before the close of discovery.  [Kendrick Decl. ¶ 18, Ex. 13]  The most recent of the deaths for which records were produced occurred on October 8, 2012, five months before Corizon took over.  [*Id.* ¶ 31]  Thus, Plaintiffs have *no* medical records showing the care (or lack thereof) provided to prisoners who died while under Corizon's care.  The evidence Plaintiffs have will be two years old by the time of trial in October 2014.

Plaintiffs also requested to inspect the medical records of deceased prisoners during the expert tours of ADC's prisons.  Prior to each tour, Plaintiffs requested inspection of the medical records of prisoners who had died at the respective institution

---

[2] "Death records" were defined in the request as follows:  "any DOCUMENT REGARDING the death of a PRISONER, including audits, REVIEWS, studies, interview notes, videos, audio-recordings, EXTERNAL INVESTIGATIONS or INTERNAL INVESTIGATIONS."  [Ex. 1 at 2]  "Document" was defined broadly as well to include "every writing or record of every type . . . that is or has been in the possession, custody, or control of DEFENDANTS and the ADC, to which they have access, or of which they have knowledge, including, but not limited to, . . .  memoranda, stenographic notes, handwritten notes . . . ."  [*Id.* at 2]  "Regarding" is defined to "mean[], without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers to, relates to, responds to, states, summarizes, or is in any way relevant to the particular subject matter identified."  [*Id.* at 7]

1    within the last year.  [Ex. 14]  Defendants refused, stating that after a death the prisoners'

2    records were sent to a central location at ADC headquarters.  [Kendrick Decl. ¶ 19]

3        One month after the deadline to propound discovery had passed and two weeks

4    before the close of discovery, Defendants notified Plaintiffs that they would no longer

5    supplement any of Mr. Parsons' discovery requests, including Request No. 40 for death

6    records, because he had paroled.  [*Id.* ¶ 21, Ex. 16]  Plaintiffs moved to compel, in part to

7    obtain the medical records of deceased prisoners.  [Docs. 673, 687]  On November 4,

8    2013, the Court issued an Order requiring Defendants to supplement, by November 25,

9    2013, their response to Parsons' discovery requests to the extent they would have been

10   required had he not paroled.  [Doc. 717 at 4]  Pursuant to that Order and in response to the

11   Court's concern that the request was overbroad, Plaintiffs then narrowed their request for

12   death records to those of prisoners who had died from the day Corizon began providing

13   services, March 4, 2013, to the present.  [Kendrick Decl. ¶ 23, Ex. 17]

14       In their November 25, 2013 production, Defendants produced 116 mortality

15   reviews and 4 psychological autopsies, but *no* medical records of deceased prisoners.  The

16   mortality reviews and psychological autopsies are insufficient standing alone—they

17   contain limited information and in virtually every instance the reviewer found no

18   problems with the care provided prior to the prisoner's death.  [*See* Kendrick Decl. ¶ 24]

19   The medical files also need to be reviewed in order to put the mortality reviews and psych

20   autopsies in context.  Thus, Plaintiffs' experts need to review the corresponding medical

21   charts to analyze the adequacy of the care, and to determine whether ADC's death review

22   process is adequate or a whitewash.[3]

23       Defendants did not provide additional written objections to Parsons' discovery

24   requests and provided no notice after the Court's November 4, 2013 order that they did

25   not intend to continue their historical practice of producing the medical records of

26

27       [3] Defendants have already delayed production beyond the deadline for initial
     expert disclosures on November 8, 2013, and the deadline for supplementation based upon
28   the November 25 production (December 9, 2013).

deceased prisoners as "death records."  Instead, after the incomplete production and during the meet and confer process, defense counsel explained that they were now objecting to the production of the medical files on the grounds that these documents were not included in the original request.  [Kendrick Decl. ¶¶ 26, 28, 29, Ex. 19]

Defendants also refused to produce the medical files of some individuals who are still living.  On August 14, 2013, Plaintiffs requested the most recent volume of the medical chart of specific prisoners in Plaintiff Licci's First Request for Production of Documents, Request Number 4.  On November 25, 2013, while producing some medical files, Defendants explicitly refused to produce 13 medical records on the grounds that the prisoners had paroled and therefore Defendants were not permitted to produce the medical records.  [Kendrick Decl. ¶ 24, 26-28, Exs. 18-19]  Plaintiffs' Counsel requested the legal support for Defendants' position, in light of the protective order entered in this case, but received no response.  [Exs. 18-19]

These files are important so that Plaintiffs' experts can analyze the care provided to the prisoners.  The experts requested files for production based on their review methodology and their tours of the institutions.  The care these prisoners received is evidence of the risk of harm to all class members.  The prisoners were class members at the time their files were requested, and Defendants cannot avoid producing them by waiting until they are released to tell Plaintiffs they will not respond.

Further correspondence and an additional meet-and-confer between the parties failed to resolve these two disputes.  [*Id*. ¶¶ 29, 30]

**ARGUMENT**

**I.     DEFENDANTS MUST PRODUCE THE MEDICAL RECORDS OF DECEASED PRISONERS**

"We begin with the basic proposition that all orders and judgments of courts must be complied with promptly."  *Maness v. Meyers*, 419 U.S. 449, 458 (1975).  As this Court previously ruled, Defendants are obligated to produce the medical records of deceased prisoners.  Defendants engaged in a course of conduct that made this plain, by producing

them previously in response to the same request now at issue.  [Exs. 7-10, 13]  Instead of complying with two court orders, Defendants now block Plaintiffs' access to these critical documents by belatedly asserting a new, untimely, and meritless objection: Defendants now claim that the medical records are not included within scope of the request. Defendants should be estopped from switching positions now, after discovery has closed and Plaintiffs cannot propound new discovery to adapt to Defendants' latest change of heart.  Defendants' bait-and-switch tactic of raising belated and frivolous objections to discovery was rejected by the Court in its November 4, 2013 Order striking down their objection to responding to Parsons' discovery requests.  [Doc. 717]  The Court should similarly see Defendants' latest objections as more of the same foot-dragging behavior. Defendants' objection must be overruled, first because it is inconsistent with two orders of this Court, and second, because it is untimely, having been made 16 months late. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (failure to object within time limit waives objection).

Nor can Defendants' original boilerplate objections save them.  Objections must be "plain enough and specific enough so that the court can understand in what way the [requests] are alleged to be objectionable."  *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981); *Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409 (C.D. Cal. 2005) ("it is well-settled that all grounds for objection must be stated with specificity").  Here Defendants merely alleged, among other things, that the request was vague and overbroad. They did not argue that the medical files were not included in the request.  Instead, their actions in producing medical records showed that they understood the request and were able to comply.  Plaintiffs are prejudiced by this untimely objection, because they relied on Defendants' representations and the deadline for submitting discovery requests has past.

These records are important evidence of the risk of harm that prisoners face from a deficient health care system.  See *Brown v. Plata*, 563 U.S. __, 131 S. Ct. 1910, 1923, 1925 (2011) (noting numerous prisoners' deaths as a result of unconstitutional health

care).  Plaintiffs' experts need access to those records to determine whether unnecessary deaths occurred since Corizon started providing health care.  And they also need to compare those records to the mortality reviews and psychological autopsies that ADC performs to assess whether Defendants have an adequate process for uncovering and correcting lethal mistakes.  *See Madrid v. Gomez*, 889 F. Supp. 1146, 1208, 1258 (N.D. Cal. 1995) (death review process is a "basic procedure that helps medical staff learn from experience and avoid fatal mistakes" in the future.  It is "indispensable to providing adequate care.").  With the mortality reviews and psych autopsies alone, Plaintiffs are forced to make sense out of only part of the puzzle.

## II.   DEFENDANTS MUST PRODUCE MEDICAL FILES FOR CERTAIN PAROLED PRISONERS

Defendants have refused to produce requested medical files for paroled prisoners because they claim they are not permitted to do so "by federal law."  [Kendrick Decl. ¶ 26]  Defense counsel has not provided legal authority for this provision, and there is none.  [Exs. 18-19]  Assuming the Defendants were referring to restrictions on the dissemination of health information in the Health Insurance Portability and Accountability Act (HIPAA), the objection is groundless.  HIPAA permits disclosure of protected health information in litigation when a qualified protective order is in place (45 CFR § 164.512(e)(1)(i)-(ii)(B)), and such an order exists in this case.  [Doc. 454]

Defendants also objected to producing these files on the grounds that the prisoners have paroled and thus are no longer class members. Ex. 19.  Although the individuals are no longer in ADC custody, the care they received while recently in custody is highly relevant evidence of the systemic issues at the heart of this case, namely the risk of harm to current class members.  Defendants have already delayed production so long as to interfere with expert discovery, the prisoners were in custody at the time their files were requested, and Defendants cannot avoid producing the files by running out the clock until after their release.

### III.    THE COURT SHOULD IMPOSE SANCTIONS

The Court should impose sanctions on Defendants because their objections are not substantially justified.  Fed. R. Civ. P. 37(a)(5)(A)(ii).  A party's position is substantially justified only when reasonable people can differ about whether the conduct was appropriate under the relevant rule.  *Reygo Pacific Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir. 1982) *abrogated on other grounds by Cunningham v. Hamilton County*, 527 U.S. 198, 204 (1999); *Tomkins v. Schmid Systems, Inc.*, CV-03-335-TUC-CKJ, 2005 WL 2592576, at *1 (D. Ariz. Oct. 13, 2005).

Defendants have now failed to comply with two court orders to produce the requested documents.  There is no justification for this contumacious conduct.  *See*, *e.g.*, *Arnold v. ADT Security Services, Inc.*, 627 F.3d 716, 721 (8th Cir. 2010) (affirming attorneys' fees award to party moving to compel after responding party failed to comply with earlier order requiring supplemental responses).

### CONCLUSION

For the reasons noted above, the Court should enforce its prior two orders by requiring the production of deceased prisoners' medical records, ordering Defendants to produce all remaining medical files requested in the Licci RFPD, and imposing sanctions.

Dated:  December 13, 2013                **PRISON LAW OFFICE**

By:   s/ Corene Kendrick
    Donald Specter (Cal. 83925)*
    Alison Hardy (Cal. 135966)*
    Sara Norman (Cal. 189536)*
    Corene Kendrick (Cal. 226642)*
    Warren E. George (Cal. 53588)*
    1917 Fifth Street
    Berkeley, California 94710
    Telephone:  (510) 280-2621
    Email:    dspecter@prisonlaw.com
            ahardy@prisonlaw.com
            snorman@prisonlaw.com
            ckendrick@prisonlaw.com
            wgeorge@prisonlaw.com

    *Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
              agerlicher@perkinscoie.com
              keidenbach@perkinscoie.com
              jhgray@perkinscoie.com
              mdumee@perkinscoie.com

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF
ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:     dpochoda@acluaz.org
               kflood@acluaz.org
               jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct.
R. 38(f)

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON
PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@npp-aclu.org
               afettig@npp-aclu.org
               aquereshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted
 in DC; practice limited to federal
 courts.
**Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email:    cnmitchell@jonesday.com
          dkiernan@jonesday.com
          scalderon@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email:    jlwilkes@jonesday.com
          tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone: (212) 326-3498
Email:    kmamedova@jonesday.com
          jkmessina@jonesday.com

*Admitted *pro hac vice*

Kevin Brantley (Cal. 251886)*
**JONES DAY**
3161 Michelson Drive, Suite 800
Irvine, California 92612
Telephone: (949) 851-3939
Email:    kcbrantley@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Dustin Brislan; Sonia
Rodriguez; Christina Verduzco; Jackie
Thomas; Jeremy Smith; Robert Gamez;
Maryanne Chisholm; Desiree Licci; Joseph
Hefner; Joshua Polson; and Charlotte
Wells, on behalf of themselves and all others
similarly situated*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2013, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

*Attorneys for Defendants*

Jennifer Alewelt
Asim Varma
Sarah Kader
J.J. Rico
Cathleen M. Dooley
**ARIZONA CENTER FOR DISABILITY LAW**
jalewelt@azdisabilitylaw.org
avarma@azdisabilitylaw.org
skader@azdisabilitylaw.org
jrico@azdisabilitylaw.org
cdooley@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

s/ Delana Freouf