1  Arizona Attorney General Thomas C. Horne
   Office of the Attorney General
2  Michael E. Gottfried, Bar No. 010623
   Lucy M. Rand, Bar No. 026919
3  Assistant Attorneys General
   1275 W. Washington Street
4  Phoenix, Arizona 85007-2926
   Telephone: (602) 542-4951
5  Fax: (602) 542-7670
   Michael.Gottfried@azag.gov
6  Lucy.Rand@azag.gov

7  Daniel P. Struck, Bar No. 012377
   Kathleen L. Wieneke, Bar No. 011139
8  Rachel Love, Bar No. 019881
   Timothy J. Bojanowski, Bar No. 22126
9  Nicholas D. Acedo, Bar No. 021644
   Courtney R. Cloman, Bar No. 023155
10 Ashlee B. Fletcher, Bar No. 028874
   Anne M. Orcutt, Bar No. 029387
11 STRUCK WIENEKE & LOVE, P.L.C.
   3100 West Ray Road, Suite 300
12 Chandler, Arizona  85226
   Telephone:  (480) 420-1600
13 Fax:  (480) 420-1696
   dstruck@swlfirm.com
14 kwieneke@swlfirm.com
   rlove@swlfirm.com
15 tbojanowski@swlfirm.com
   nacedo@swlfirm.com
16 ccloman@swlfirm.com
   afletcher@swlfirm.com
17 aorcutt@swlfirm.com
   *Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>                          Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>                          Defendants. | NO. 2:12-cv-00601-NVW<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO ENFORCE THE COURT'S ORDERS OF OCTOBER 16, 2012 AND NOVEMBER 4, 2013** |

Pursuant to the Court's December 16, 2013 Order (Dkt. 729), Defendants Charles Ryan and Richard Pratt hereby respond to Plaintiffs' Motion to Enforce the Court's Orders of October 16, 2012 and November 4, 2013 (Dkt. 727).

## I. MEDICAL RECORDS OF DECEASED INMATES

Plaintiffs first contend that they are entitled to the complete "medical records" of deceased inmates. This is based on their assertions that they specifically requested these records, Defendants informed the Court that they would produce these records, and the Court ordered Defendants to produce these records. None of this is accurate. Plaintiffs have misstated the record, and seek to raise an untimely discovery dispute that could have (and should have) been raised before the discovery deadline, in violation of the Court's prior admonition that the time to raise discovery disputes is now closed. (Dkt. 679.) In doing so, Plaintiffs also prematurely abandoned the meet and confer process, and subverted the one-page discovery dispute requirement by titling their pleading a "Motion to Enforce" a non-existent order. The Court has been infinitely patient, and even perhaps indulgent with Plaintiffs' discovery requests (Dkt. 717 at 2), but the Court needs send a clear message and stop these litigation tactics. Defendants' position is substantially justified. *See* Fed.R.Civ.P. 37(a)(5)(A)(ii).

### 1. Plaintiffs did not request the medical records of deceased inmates.

The purported source of Plaintiffs' request is Parsons' First Set of Requests for Production of Documents ("RFP") No. 40, which requests, "**All DOCUMENTS REGARDING DEATH RECORDS**." (Dkt. 728-1 at 20.) The RFP defines "**DEATH RECORDS**" to mean "any DOCUMENT REGARDING the death of a PRISONER." (Dkt. 728-1 at 6.) It defines "**DOCUMENTS**" to mean

> every writing or record of every type and DESCRIPTION and every tangible thing that is or has been in the possession, custody, or control of DEFENDANTS and the ADC, to which they have access, or of which they have knowledge, including, but not limited to, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies . . .

1  (Id.)[1]  A review of the Request and these terms reveals that "death records" does not
2  expressly or impliedly include a deceased inmate's complete medical record. Nowhere in
3  the Request or in any of the definitions do Plaintiffs include "DEATH RECORDS" to
4  include "medical records," even though Plaintiffs could easily have done so. Indeed,
5  Plaintiffs even defined the term "REGARDING" in their definition section. (Id. at 11).
6  They also could have made a separate, specific request ("all medical records of deceased
7  inmates"). Even Plaintiffs do not rely heavily on RFP No. 40, and relegate this argument
8  (and the terms defining RFP No. 40) to a footnote in their Motion, and focus instead on
9  "the course of the parties' dealings in this case." (Dkt. 727 at 2:8-9, at 4:22-28 & 6:28.)

    2. <u>Defendants never previously informed the Court that they would produce complete medical records of deceased inmates.</u>

12    Plaintiffs cite to Defendants' Notice Regarding First Joint Notice of
13  Discovery Dispute to support their contention that "Defendants agreed to 'disclose
14  medical records of deceased inmates to Plaintiffs within thirty days.'" (Dkt. 727 at 2:13-
15  14; Id. at 4:6-8, quoting Dkt. 179 at 2.) Plaintiffs misconstrue the nature of that dispute
16  and take Defendants' words out of context.

17    Although that dispute did concern production of death records under
18  RPF No. 40, the issue before the Court was whether Plaintiffs were required to secure
19  releases before Defendants could produce them. (Dkt. 149.) Defendants believed that the
20  Protective Order did not allow them to produce the death records without a release in part
21  because some of the death records included portions of, or reference to, the deceased
22  inmates' medical records: "[T]o the extent the records contain confidential information
23  regarding the deceased inmates' medical records or reference to their medical records,
24  Defendants will produce those portions upon the issuance of a qualified protective order."
25  (Dkt. 149 at 3:7-10.) After further review of the Protective Order, however, Defendants

---

[1] Defendants objected to this RFP because it was overbroad, vague, ambiguous, not reasonably calculated to lead to admissible evidence, and sought information without a necessary release. (Dkt. 728-1 at 28.)

3

determined that it did qualify as a "qualified protective order," they withdrew their opposition, and they informed that they would produce those portions of medical records contained *within* the death records *without a release*. Defendants did not inform or agree to produce *complete* medical records of deceased inmates in response to RFP No. 40.

> 3. <u>The Court did not previously order Defendants to produce the medical records of deceased inmates.</u>

The Court *never* ordered Defendants to produce the medical records of deceased inmates, as Plaintiffs boldly and repeatedly assert. (See Dkt. 727 at 2:14: "the Court has previously ordered Defendants to produce these records"; Id. at 2:18-20: "Despite the Court's original order requiring production of death records–including the medical charts–in October 2012, Defendants have refused to produce the medical records of any prisoner who has died within the last 14 months"; Id. at 2:22: "The Court ordered Defendants to produce these documents by November 25, 2013"; Id. at 5:27-28: "As this Court previously ruled, Defendants are obligated to produce the medical records of deceased prisoners.")

The Court's October 16, 2012 Order simply granted Plaintiffs' request for relief in the First Joint Notice of Discovery Dispute, which essentially ordered Defendants to produce the medical records *within* the death records without a release:

> In light of Defendants' Notice Regarding First Joint Notice of Discovery Dispute (Doc. 179),
>
> IT IS ORDERED that the First Joint Notice of Discovery Dispute (Doc. 149), treated as a motion to compel discovery by Plaintiffs, and Plaintiffs' Motion to Compel Production of Death Records, etc. (Doc. 183) are granted.

(Dkt. 186.)[2] Plaintiffs' assertion that this Order — which is one of the orders they are seeking to "enforce" — required Defendants to produce complete medical records of deceased inmates is unsupportable.

---

[2] The Order also granted Plaintiffs' motion to compel production of mortality reviews, which had nothing to do with production of deceased inmates' medical records. (Dkt. 183, 185, 186.)

4

Nor did the Court's November 4, 2013 Order address medical records of deceased inmates. That Order granted Plaintiffs' motion to reconsider the Court's previous order denying the Tenth Joint Notice of Discovery Dispute. (Dkt. 717 at 2.) The issue in that Discovery Dispute was whether Defendants were required to continue supplementing all of their responses to Parsons' RFPs even though he had been released from ADC custody. (Dkt. 673.) The dispute did not concern or raise the issue Plaintiffs raise here: whether Defendants are required to produce deceased inmates' medical records under RFP No. 40. (Id.) The Court initially refused to consider the dispute because Plaintiffs did not timely file it. (Dkt. 679.) On reconsideration, the Court ruled as follows:

> Defendants' objection to supplementation of discovery sought in the name of Plaintiff Parson is overruled, and Defendants must supplement their responses to Parsons' discovery requests to the extent they would have to in the absence of that objection.[3]

(Dkt. 717 at 2.) The Court did not find that medical records were included in the definition of "death records" under RFP No. 40, nor did it order Defendants to produce those records. It merely ruled, as a general matter, that Defendants were required to supplement Parsons' discovery responses despite his release from ADC custody.

Plaintiffs use these Orders to dupe the Court into thinking that it ordered something that it did not. Because the Court did not previously order Defendants to produce complete medical records of deceased inmates (indeed the issue was never raised by Plaintiffs), there is no order to "enforce." Plaintiffs' Motion therefore disregards the required discovery-dispute process requiring a one-page pleading filed jointly by the parties, and circumvents the long past deadline to submit discovery disputes.

---

[3] And this supplementation was limited to the Parsons RFP request and narrowed by the September 5, 2013 Letter from Plaintiffs' counsel.

4.      This Discovery Dispute is untimely.

Admittedly, Defendants have produced medical files for deceased inmates in conjunction with RFP No. 40 in the past. (Dkt. 728-1 at 49-74 & 86-90.) The attorneys responsible for document production produced medical files outside the death records for some deceased inmates instead of just those portions that were contained within the death records, even though the production exceeded what was requested. (Dkt. 728-1 at 45 & 83.) Clearly Plaintiffs received the benefit of something they had not asked for and therefore not entitled to.

Well within the discovery period, however, Plaintiffs were put on notice of Defendants' objection to continued production of medical records. On February 7, 2013, Plaintiffs wrote Defendants' counsel a letter, complaining that complete medical files for all deceased inmates had not yet been provided, and demanded the same.[4] (Dkt. 728-1 at 76-79.) On February 11, 2013, Defendants' counsel Ashley Zuerlein responded to Plaintiffs' Letter, objecting to their request and proffering a compromise:

> Defendants object to the production of a 'complete' medical record for each of the identified inmate as it is irrelevant, over broad and unduly burdensome. Some inmates have decades of medical records that can include hundreds of pages. The request for all records is excessive and extremely costly to ADC and Wexford. To date, the copying costs of the medical records produced in response to this request alone exceed $6,000.00. In the interest of resolving this dispute, Defendants will agree to produce medical records one year prior to the date of death. . . .

---

[4] In that letter, Plaintiffs' counsel states that they "clarified" both at the August 30, 2012 meet-and-confer and in an October 16, 2012 Letter that they believed their definition of "death records" included the deceased inmates' complete medical files. (Dkt. 728-1 at 76.) First, their belief, i.e., what they intended, did not transform their formal Request as written and served. Second, Defendants' counsel do not recall any such clarification at the August 30, 2012 meet-and-confer, and Plaintiffs' counsel's self-written "minutes" of that conference do not reflect Plaintiffs' purported clarification. (Ex. 1, ¶ 7.) Third, Plaintiffs' October 16, 2012 Letter requested "complete death records and medical files" of deceased inmates, not "complete death records and complete medical files," and to the extent that the statement can be construed as the latter, it was a request separate and apart from RFP No. 40. (Dkt. 728-1 at 36.) Plaintiffs were not clarifying what they intended to request in RFP No. 40; they were trying to expand it.

6

(Dkt. 728-1 at 83.) Plaintiffs' counsel agreed to this limited production (one year prior to death). (Ex. 2.) Defendants produced an additional batch of deceased inmates' medical records on May 1, 2013, but did not produce any medical records thereafter. Over the course of the next five months of discovery, Plaintiffs remained silent, and did not raise the issue with either Defendants or the Court, even though, as they admit, the medical records produced up to that point involved deaths no later than October 2012. (Dkt. 728 at 8, ¶ 31.) Only now — 7 ½ months after the last production and nearly 3 months after the close of discovery — do they cloak it as a "Motion to Enforce" and raise it with the Court. The time to do so has long expired.

    5. <u>Plaintiffs did not allow the meet-and-confer process to play out.</u>

The parties had a meet and confer on the death records production issue on December 9, 2013. (Dkt. 728 at 8, ¶ 29.) At that meet and confer, Plaintiffs agreed to provide Defendants documentation supporting their position, something they had not done prior, which they did later that afternoon. (Dkt. 728 at 8, ¶ 29; Dkt. 728-1 at 149.) On December 12, 2013, Plaintiffs' counsel inquired about Defendants' position in light of the newly-furnished documents. (Dkt. 728-1 at 151.) Defendants' counsel, who was not in the office, informed that she was still preparing a response and hopeful that she could provide it to Plaintiffs by the end of that day. (Dkt. 728-1 at 152.) Defendants' counsel, however, was unable to conclude her analysis and provide a response by that time. The next morning, and without any notice to Defendants, Plaintiffs filed the Motion to Enforce. (Dkt. 727.) Defendants' counsel had no idea that Plaintiffs intended to file anything with the Court, much less a Motion to Enforce, as it was never mentioned in the meet and confer. In every other discovery dispute, the parties exchanged their written positions formally with an opportunity to review before jointly submitting to the Court. Here, Plaintiffs blindsided Defendants. Defendants' counsel was literally minutes away from providing a response and a compromise offer before Plaintiffs filed their Motion.

As discussed below, this entire dispute could have been avoided. Instead, Plaintiffs prematurely and hastily proceeded with this Motion, resulting in Defendants having to respond in a 48-hour timeframe, the week before Christmas, and on the same day that their expert reports are due. Defendants should not be sanctioned. *See* Fed.R.Civ.P. 37(a)(5)(A)(i) (no sanctions if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action").

### 6. The parties have since reached a compromise.

For the first time in their Motion to Enforce, Plaintiffs informed that they have "narrowed the request for deceased prisoners' medical files to cover only those deaths since March 4, 2013, the date Corizon began providing health care to ADC prisoners." (Dkt. 727 at 2:23-25 & at 5:11-13.) Plaintiffs' counsel did not offer this compromise during the meet and confer, and their contention that it was conveyed in their November 20, 2013 Email (Ex. 17) is simply wrong. That Email did not offer to narrow their request; it simply provided a "prioritized list" of the medical records. (Dkt. 728-1 at 118.) It was not until Plaintiffs filed their Motion to Enforce that they actually "narrowed" the request. To suggest that they made any attempt to do so before filing their Motion is unsupported.

Nonetheless, despite Plaintiffs' failure to formally request complete medical files of deceased inmates and no order requiring Defendants to produce them, Defendants, after receiving Plaintiffs' narrowed compromise, offered to produce the following:

> medical records – for up to one year prior to the date of death – of deceased inmates who died on or after March 4, 2013 (the day Corizon took over) and before or on September 27, 2013 (the close of fact discovery), but not including medical records of those inmates who were incarcerated at a private facility at the time of their death or who were released at the time of their death.

(Ex. 3.) This offer was consistent with the parties' agreement in February 2013, and with Plaintiffs' recent narrowed request. The "one year prior" limitation, first made by Defendants in February 2013, relieves Defendants of the tremendous burden of having to

8

produce medical files of inmates who were incarcerated for many years prior to their death and medical records that are not likely to lead to admissible evidence. On December 18, 2013, the parties negotiated an agreement for this production.[5] (Ex. 4.)

## II. MEDICAL RECORDS OF PAROLED INMATES

Plaintiffs next request the medical files of paroled inmates. This request should be denied outright because Plaintiffs inappropriately piggy-back this dispute onto their deceased inmates' medical records dispute. Plaintiffs are not asking the Court to enforce any prior order requiring Defendants to produce these medical records. This is an entirely new discovery dispute that is subject to the normal discovery-process procedures. Although the parties did meet and confer on this issue, the next step was to file a joint one-page pleading. Instead, Plaintiffs raised this issue as an add-on in their Motion to Enforce, again without any notice to Defendants. If the Court is going to allow Plaintiffs to do this, it might as well rescind the discovery-dispute process that it has set in place; otherwise, it will be inviting Plaintiffs to continue this tactic for all future disputes.

This dispute is also untimely. Defendants' timely objected to the purported request for production – "Any and all HEALTH CARE records for the PRISONERS listed in Exhibit A" – because it sought "the disclosure of . . . confidential or privileged information relating to non-parties to this litigation." (Ex. 6.) Plaintiffs made the request on the last day on which the parties could propound discovery requests (Dkt. 728 at 5, ¶ 20), and Defendants timely objected on September 16, 2013, before the close of

---

[5] Essentially, Defendants will produce only medical records – for up to one year prior to the date of death – of deceased inmates who died on or after March 4, 2013 and before September 27, 2013, but not including medical records of those inmates who were incarcerated at a private facility at the time of their death or who were released at the time of their death (except inmates released early because of his or her medical condition or the inmate died while in the hospital or other medical facility after being transferred directly from an ADC facility to the hospital or other medical facility). If Plaintiffs' expert certifies that they need medical records going beyond one year prior to the date of death, Defendants will produce those medical records for up to another year (and can object to production beyond that time period). Defendants will produce these medical records by January 22, 2013, and the parties will not oppose each other's request to file supplemental expert reports concerning this production. Plaintiffs preserve their ability to raise the issue of whether medical records of inmates who died after September 27, 2013, should be produced, and Defendants preserve their objections.

1  discovery (Ex. 6.) Defendants also informed Plaintiffs' counsel during various expert
2  tours that medical records of released inmates would not be produced for inspection.
3  They continued to object in September and October 2013 as well. (Dkt. 728-1 at 147;
4  Ex. 7.) Yet, Plaintiffs waited until now to raise it. They are foreclosed from doing so.

5        Nonetheless, Defendants have conveyed to Plaintiffs that they are willing to
6  provide these medical records (of only inmates released before September 27, 2013) upon
7  receiving a signed release. (Dkt. 728-1 at 146.) Plaintiffs are not entitled to these records
8  without a release. The paroled inmates are no longer in ADC custody, and therefore no
9  longer members of the class or subclass. Consequently, Plaintiffs' counsel no longer
10 represent these inmates. Thus, they are like any other individual seeking to review their
11 confidential medical records. If a private medical provider wanted to review these records
12 in conjunction with care he or she is providing the paroled inmate now, they too would
13 need to submit a signed release. Plaintiffs' counsel are no different. Defendants are not
14 authorized to disclose confidential medical records of these paroled inmates absent a
15 release. Plaintiffs have provided no legal authority for their position and Defendants are
16 not aware of any. Defendants' position is substantially justified. *See* Fed.R.Civ.P.
17 37(a)(5)(A)(ii).

## **CONCLUSION**

19       For these reasons, Plaintiffs Motion to Enforce should be denied as moot.
20 Plaintiffs' request for medical records of paroled inmates should be stricken as improperly
21 raised, and alternatively denied.

24 / / /

26 / / /

28 / / /

10

DATED this 18th day of December 2013.

            STRUCK WIENEKE & LOVE, P.L.C.


            By /s/ Nicholas D. Acedo
              Daniel P. Struck
              Kathleen L. Wieneke
              Rachel Love
              Timothy J. Bojanowski
              Nicholas D. Acedo
              Courtney R. Cloman
              Ashlee B. Fletcher
              Anne M. Orcutt
              STRUCK WIENEKE & LOVE, P.L.C.
              3100 West Ray Road, Suite 300
              Chandler, Arizona 85226

              Arizona Attorney General Thomas C. Horne
              Office of the Attorney General
              Michael E. Gottfried
              Lucy M. Rand
              Assistant Attorneys General
              1275 W. Washington Street
              Phoenix, Arizona 85007-2926

            *Attorneys for Defendants*

2846879.1

# CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2013, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alison Hardy:          ahardy@prisonlaw.com

Amy Fettig:            afettig@npp-aclu.org

Caroline N. Mitchell:  cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

Corene T. Kendrick:    ckendrick@prisonlaw.com; edegraff@prisonlaw.com

Daniel Clayton Barr:   DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

Daniel Joseph Pochoda: dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org

David Cyrus Fathi:     dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org

Donald Specter:        dspecter@prisonlaw.com

James Duff Lyall:      jlyall@acluaz.org; gtorres@acluaz.org

Jennifer Ann Alewelt:  jalewelt@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

Cathleen M. Dooley:    cdooley@azdisabilitylaw.org

J.J. Rico:             jrico@azdisabilitylaw.org

John Howard Gray:      jhgray@perkinscoie.com; slawson@perkinscoie.com

Kelly Joyce Flood:     kflood@acluaz.org; gtorres@acluaz.org

Kirstin T. Eidenbach:  keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; docketphx@perkinscoie.com

Matthew Benjamin de Mee: mdumee@perkinscoie.com; cwendt@perkinscoie.com

Michael Evan Gottfried: Michael.gottfried@azag.gov; colleen.jordan@azag.gov; lucy.rand@azag.gov

Sara Norman:           snorman@prisonlaw.com

Sophia Calderon:       scalderon@jonesday.com; lwong@jonesday.com

Asim Varma:            avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

| | | |
|---|---|---|
| 1 | David C. Kiernan: | dkiernan@jonesday.com; lwong@jonesday.com |
| 2 | John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| 3 | Kamilla Mamedova: | kmamedova@jonesday.com |
| 4 | Jennifer K. Messina: | jkmessina@jonesday.com |
| 5 | Taylor Freeman: | tfreeman@jonesday.com |
| 6 | Sarah Eve Kader: | skader@azdisabilitylaw.org, mlauritzen@azdisabilitylaw.org |
| 7 | Katherine E. Watanabe: | Katherine.Watanabe@azag.gov, susan.oquinn@azag.gov |
| 8 | Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, pdrew@perkinscoie.com |
| 9 | Lucy Marie Rand: | Lucy.Rand@azag.gov, Geneva.Johnson-Joksch@azag.gov |
| 10 | Ajmel Quereshi: | aquereshi@npp-aclu.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ Nicholas D. Acedo