**EXHIBIT 1**

**EXHIBIT 1**

**From:** Eidenbach, Kirstin (Perkins Coie) [mailto:KEidenbach@perkinscoie.com]
**Sent:** Tuesday, September 04, 2012 5:00 PM
**To:** Courtney Cloman; Michael.gottfried@azag.gov; DNORTHUP@azcorrections.gov
**Cc:** cnmitchell@JonesDay.com; Corene Kendrick (ckendrick@prisonlaw.com); Gray, John H. (Perkins Coie); du Mee,
Matthew B. (Perkins Coie); Jennifer Alewelt (jalewelt@azdisabilitylaw.org); James Lyall (jlyall@acluaz.org)
**Subject:** Meet and Confer

Counsel:

The attached minutes memorialize our recollection of what occurred during the meet and confer held on August 30,
2012.  (Courtney, these minutes do not reflect the items you and I discussed today).

Regards,
Kirstin

**Kirstin Eidenbach | Perkins Coie LLP**
2901 North Central Avenue
Suite 2000
Phoenix, AZ 85012-2788
☎ : 602.351.8034
📠 : 602.648.7045
✉ : KEidenbach@perkinscoie.com

 **Please consider the environment before printing this email. Thank you.**

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department and IRS regulations, we inform you
that, unless expressly indicated otherwise, any federal tax advice contained in this communication (including any
attachments) is not intended or written by Perkins Coie LLP to be used, and cannot be used by the taxpayer, for the
purpose of (i) avoiding penalties that may be imposed on the taxpayer under the Internal Revenue Code or (ii) promoting,
marketing or recommending to another party any transaction or matter addressed herein (or any attachments).

* * * * * * * * * *

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error,
please advise the sender by reply email and immediately delete the message and any attachments without copying or
disclosing the contents. Thank you.

Minutes: Meet and Confer, August 30, 2012

In attendance: John Gray, Kirstin Eidenbach, Matthew DuMee, James Lyall (in person); and Caroline Mitchell and Corene Kendrick (by phone) for Plaintiffs; Courtney Cloman, Anne Orcutt, and Michael Gottfried for Defendants, and Dawn Northup for ADOC (in person)

1) Throughout the meet and confer, Defendants asserted that they were only considering discovery as to the fourteen named plaintiffs, because the class had not yet been certified and therefore information regarding prisoners other than the fourteen named plaintiffs was not relevant. Plaintiffs' counsel reminded them that (i) Judge Wake did not limit discovery and in fact made a point of opening both class certification and merits discovery and (ii) in order to prove system-wide deficiencies to get the class certified, Plaintiffs need access to information from all prisoners who may have suffered from inadequate medical care or unconstitutional conditions of confinement. No resolution was reached.

2) Defendants were not prepared to discuss J. Gray's letter of August 24, 2012, regarding the proposed schedule for 30(b)(6) depositions, citing lack of preparation time. C. Cloman has agreed to address the schedule with T. Bojanowski and they will coordinate with Plaintiffs in a timely manner. Plaintiffs' counsel emphasized the importance of a quick response given that the next deposition is scheduled for September 13, 2012, as well as the upcoming court deadlines.

3) Defendants were not prepared to discuss the issues regarding their objections to the 30(b)(6) topics noticed for September 13, and the responses to the objections set forth in C. Mitchell's August 29, 2012 letter. C. Cloman has agreed to discuss the matter with T. Bojanowski. C. Kendrick sent a letter to Counsel for Defendants on September 2, 2012, clarifying topics and document requests. K. Eidenbach will contact C. Cloman regarding these issues on Tuesday, September 4, 2012, and the parties will discuss again on Tuesday or Wednesday.

4) Plaintiffs' counsel sought assurance that they will be able to prepare their clients for depositions on a date as close to the deposition as possible. D. Northup agreed that this must occur and suggested that if Plaintiffs' counsel has difficulty scheduling legal visits, or if they experience long delays, they should inform her immediately. Defendants will revise their proposed schedule that can accommodate at least 6 hours of deposition preparation the day before (whenever possible) the deposition. Given the difficulties with arranging legal visits on Sundays, deposition preparation will take place Monday through Thursday, with the depositions scheduled for Tuesdays through Friday.

5) Defendants clarified the security procedures that they intend to employ during prisoner depositions, emphasizing that they will defer to the wardens on the level of restraint, if any, necessary for each prisoner. Plaintiffs' position is that prisoners housed in general population should not be cuffed or restrained during depositions, and the prisoners in higher secure management units should be restrained such that they have their hands in front of them, and one hand free or cuffed so that they can write or otherwise communicate with their attorney. Plaintiffs also requested that if any security staff were present, that they be outside the room and unable to hear the substance of the testimony (i.e. visually observing through a one-way mirror or window).

Defendants stated that the level of restraint would be determined on a case by case basis and that the restraints would not interfere with the prisoners' ability to meaningfully and fully participate in the depositions. Defendants assured that every effort would be made to ensure that if prisoners were restrained, they would be restrained in such a manner that they would not be distracted or unable to meaningfully participate in their depositions.

6) Protective Order: See circulated redline for agreed upon changes. Issues that remain in dispute are:

   a) Defendants object to the definition of qualified persons. The parties disagree as to whether counsel for all parties may have access to material produced to all other parties. In particular, Defendants oppose disclosure of some material produced to ACDL being provided to counsel for the Prisoner Plaintiffs;

   b) Defendants wish to bifurcate discovery and preclude Prisoner Plaintiffs access to Defendants' discovery responses to ACDL;

   c) Defendants object to prisoners being shown documents relating to another inmate's confidential information or from another inmate's medical record, and Defendants object to the family of an inmate being shown documents from another inmate's medical record. Further, the parties disagree as to whether a prisoner can consent to the disclosure of his/her own confidential information to other prisoners;

   d) The parties disagree as to whether to allow persons who had pre-litigation access to information to view the information pursuant to the protective order;

   e) The parties disagree as to how to handle redactions. D. Northup reported that ADC's redaction program writes either "confidential" or "security" in the redacted area. She suggested that these indicators would be sufficient to inform Plaintiffs as to the nature of and reason for the redaction. C. Cloman does not know whether her firm's redaction program has the same feature. Plaintiffs stated that for routine redactions, a cover letter explaining those redactions would be sufficient. For example, stating that "all names, social security numbers, dates of birth have been redacted" would be sufficient, and no further explanation would be needed for those redactions. For all other redactions, Plaintiffs insist that they must be given enough information to meaningfully object to redactions.

   f) The parties disagree as to whether to include a provision prohibiting ADC from retaliating against prisoners for their participation in this lawsuit. Defendants have stated that they will not retaliate against a prisoner "based on his/her participation in this litigation," but are otherwise unwilling to provide any other protection relating to discipline for the substance of his/her testimony. Plaintiffs' position is that some protection is necessary to allow open discovery in this case. Plaintiffs also recognize certain admissions or disclosures – for example, disclosure of ongoing criminal activity – could legitimately result in discipline. Plaintiffs' counsel will draft language limiting this provision. Plaintiffs' counsel will draft language limiting this provision. Plaintiffs will look at and refer to Department Order 803, which includes different categories of

violations.   Plaintiffs' position is that only some categories of inmates' disclosed infractions may be investigated.

g) Defendants contend that legally they cannot and will not produce prisoner master files. Defendants stated that inmates are statutorily barred by Ariz. Rev. Stat. § 31-221 from ever seeing their own master file. Defendants further assert that the master files contain no relevant information and that a public Aims report will provide Plaintiffs with all relevant information. Plaintiffs disagree, noting that unless they have a master file to compare an Aims report with, they will have no way to ensure they have been given all relevant information. In addition, the statutory list setting forth the contents of the master file lists several pieces of evidence that Plaintiffs feel are relevant as categories, e.g. reasons for security classification, diagnostics, and disciplinary records. Defendants assert that if Plaintiffs are given access to the master file, documents within it can never been shown to the prisoner, and Defendants are not comfortable with Plaintiffs even referencing the master file as the origin of a given piece of information. Defendants' counsel will provide Plaintiffs' counsel a list of the categories of information included in the mater file and in the Public Aims Report.

7) Plaintiffs' counsel reiterated their request for all death records, which they had proposed in C. Mitchell's letter of August 17, 2012 that Defendants produce no later than August 27, 2012. Defendants questioned the relevance of these records and maintained that they are prohibited from disclosing this information without the consent of the deceased's family. Defendants suggested that Plaintiffs should not need access, at a minimum, to deaths from homicide or natural causes. Plaintiffs stated that death records – including those ostensibly from natural causes, and homicides that may have involved inadequate emergency care – are very relevant to whether inmates receive adequate health care. No resolution was reached, but Plaintiffs agreed to provide a list of the inmates whose death records would be sought to Defendants for review. On August 31, 2012, C. Mitchell sent Defendants a list of deceased inmates whose death records Plaintiffs propose be produced first.

8) Defendants were unprepared to discuss the document requests from Arizona Center for Disability Law, as J. Alewelt requested them to be ready to discuss in a letter dated August 28, 2012, which attached her earlier correspondence, dated August 20, 2012. C. Cloman agreed to coordinate with J. Alewelt regarding these issues on Wednesday, September 5.

**EXHIBIT 2**

**EXHIBIT 2**

**From:** James Lyall [mailto:jlyall@acluaz.org]
**Sent:** Thursday, February 14, 2013 1:17 PM
**To:** Ashley Zuerlein
**Cc:** Parsons Team; Michael E. Gottfried
**Subject:** Meet and Confer, 2/14/13

Counsel,

This is to memorialize our discussion in this morning's meet-and-confer.  Please let me know if this does not reflect your recollection of our discussion in any way, or if you have anything to add or changes to suggest.

**Defendants' production of medical records of deceased prisoners**

    -Counsel for Plaintiffs agreed to Defendants proposal to produce the requested files up to 1 year prior to death, except where Plaintiffs identify prisoners for whom they need additional records
    -When Plaintiffs do require a prisoners' medical files beyond the 1 year prior to death, Defendants will produce those records in a timely manner; Defendants agreed that ADC's Carol Pearson would likely be available to work on production, and that the transition to Corizon would not result in significant delays in production

**-Defendants' supplemental production of Plaintiffs' medical files**

    -Counsel for Defendants confirmed Carol Pearson is working on supplementing production of named plaintiffs' medical files, from early March 2012 up to the present (ie, medical file documents from approximately the past 11 months)

**-Plaintiffs' medical releases for outside providers**

    -Plaintiffs reported having sent file authorization forms, along with requests for outside provider information, to all plaintiffs.  Counsel for Plaintiffs reported recently receiving approximately 6 authorizations back.  Plaintiffs reported some delay in the case of plaintiff            attributable to delays in mail and legal call procedures.  Plaintiffs agreed to forward authorizations and provider information to Defendants as they are received, beginning today.

**-Plaintiffs' preservation depositions**

    -Defendants objected to Plaintiffs' proposed two (2) preservation depositions on the grounds that ADC health care staff reported both inmates were "stable."  Defendants stated they would have to review the medical files before making a determination as to the necessity of preservation depositions.

**-Plaintiffs' letter re mail interference/access to legal calls/retaliation**

-Plaintiffs repeated their concerns regarding reports of ADC staff improperly opening Plaintiffs' legal mail. Defendants repeated their position that such mail may not have been properly marked as legal mail. Plaintiffs explained that all outgoing legal mail sent by counsels' organizations is clearly marked as such.
-Plaintiffs pointed to a recent example, an envelope to Plaintiff Polson's that was improperly opened outside his presence despite being clearly marked as legal mail. Defendants agreed to investigate.
-Counsel for Defendants said ADC treats mail that is from "an attorney, judge, or court" as legal mail. Defendants stated that some mail, such as "advertising", from ACLU and other legal services organizations is not legal mail. Defendants stated that mail to non-plaintiff putative class members is not legal mail because there is "no attorney-client relationship." Plaintiffs disagreed. Both sides agreed we are at an impasse, Plaintiffs to draft one-page dispute for the court.

-Plaintiffs repeated concerns that ADC staff are not allowing for private legal calls outside the presence of staff. Defendants stated they needed more specific information. Defendants will not instruct ADC staff that they cannot be in the same room as inmates during legal calls.

-Plaintiffs requested updates on reports of retaliation against multiple named plaintiffs, as well as continued delays in medical care. Plaintiffs repeated requests for Defendants to investigate. Defendants stated that Plaintiffs should file grievances for medical problems and retaliation claims. Plaintiff expressed concerns regarding the efficacy of the grievance process and noted that the protective order prohibits retaliation against plaintiff prisoners. Both sides agreed we are at an impasse.

If you feel I have missed anything or have any corrections to make, please contact me immediately. Thank you.

James Duff Lyall
*Staff Attorney*
ACLU of Arizona
P.O. Box 17148
Phoenix, AZ 85011-0148
Tel: 602-773-6001
Fax: 602-650-1376
jlyall@acluaz.org
www.acluaz.org



**Because Freedom Can't Protect Itself**

PRIVACY AND CONFIDENTIALITY STATEMENT: This e-mail message and any attachments are intended only for the use of the addressee(s) named above and may contain information that is privileged and confidential. If you are not the intended recipient, any dissemination, distribution, or copying is strictly unauthorized and prohibited. If you received this e-mail message in error, please immediately notify the sender by replying to this e-mail message or by telephone. Thank you.

**EXHIBIT 3**

**EXHIBIT 3**



STRUCK WIENEKE & LOVE        [ 3100 West Ray Road, Suite 300   Chandler, Arizona 85226   480.420.1600   swlfirm.com ]

December 17, 2013

**Daniel P. Struck**
PARTNER

**Kathleen L. Wieneke**
PARTNER

**Rachel Love**
PARTNER

**Timothy J. Bojanowski**
PARTNER

**Christina Retts**
PARTNER

**Jamie D. Guzman**
ASSOCIATE

**Nicholas D. Acedo**
ASSOCIATE

**Tara B. Zoellner**
ASSOCIATE

**Amy L. Nguyen**
ASSOCIATE

**Ashlee B. Fletcher**
ASSOCIATE

**Courtney R. Cloman**
ASSOCIATE

**Anne M. Orcutt**
ASSOCIATE

**Kevin L. Nguyen**
ASSOCIATE

**David C. Lewis**
OF COUNSEL

<u>**VIA EMAIL ONLY**</u>

Jennifer Alewelt:  jalewelt@azdisabilitylaw.org
Caroline N. Mitchell:  cnmitchell@jonesday.com
Donald Specter:  dspecter@prisonlaw.com
David C. Fathi:  dfathi@npp-aclu.org
Amelia Gerlicher:  agerlicher@perkinscoie.com
Corene Kendrick:  ckendrick@prisonlaw.com

Re:     Parsons, et al. v. Ryan and Pratt
        U.S. District Court of Arizona; 2:12-cv-00601

Dear Corene:

    We wish you would have given us the opportunity to provide you our position regarding deceased inmates' medical records prior to filing your Motion to Enforce.  As Lucy mentioned to you last Thursday, she was out of the office that day, and needed additional time to prepare a response to your inquiry. Although we still maintain that you are not entitled to the medical records of deceased inmates, in the spirit of compromise we are willing to produce the medical records – for up to one year prior to the date of death – of those deceased inmates listed in Caroline Mitchell's November 20, 2013 email with the following limitations: (1) no medical records of those inmates who died before March 4, 2013 or after September 27, 2013; (2) no medical records of those inmates who were incarcerated at a private facility at the time of their death; and (3) no medical records of those inmates who were released at the time of their death.  Please let us know by the end of the day if you are willing to agree to this compromise and withdraw that portion of your Motion to Enforce that raises this issue.

                    Sincerely,

                    Ashlee B. Fletcher

                    Ashlee B. Fletcher
                    For the Firm

ABF/ab
cc:    Michael E. Gottfried
       Kelly Dudley
       Lucy Rand

2847158.1

[ Ashlee B. Fletcher | afletcher@swlfirm.com | Direct: 480.420.1631 | swlfirm.com ]

**EXHIBIT 4**

**EXHIBIT 4**

## Nick Acedo

| | |
|---|---|
| **From:** | Nick Acedo |
| **Sent:** | Wednesday, December 18, 2013 2:51 PM |
| **To:** | 'Don Specter'; Ashlee Fletcher; Corene Kendrick; cnmitchell@jonesday.com |
| **Cc:** | Parsons Team; Lucy Rand; Michael E. Gottfried; Fathi, David; agerlicher@perkinscoie.com; jalewelt@azdisabilitylaw.org |
| **Subject:** | RE: Parsons - Death Records |

Don,

Below are terms we can agree to now:

1.    Defendants will produce the death records, including medical records, of deceased inmates who died on or after March 4, 2013. Defendants do not have to produce any additional records of inmates who died prior to March 4, 2013.

Defendants maintain that records for inmates who died after September 27, 2013 do not have to be produced.  Unless you change your position, we will include this issue in our response.

2.    Defendants do not have to produce death records or medical records for prisoners who died at private prisons.

3.    Defendants need only initially produce the medical records one year prior to the date of death, provided that in individual cases Plaintiffs may request medical records from an earlier date if, upon certification by one of Plaintiffs' experts, he or she determine that those earlier records are necessary to complete an evaluation of that individual case.  Defendants may object to the production of those medical records before producing them, and the issue will be resolved by the Court.

4.    Defendants do not have to produce death records or medical records for deaths that occurred after the inmate is released, unless the inmate was released early because of his or her medical condition or the inmate died while in the hospital or other medical facility after being immediately transferred from an ADC facility.

5.    Defendants will not oppose any request to allow supplemental expert reports pertaining to the review of the production discussed herein, provided that Plaintiffs do not oppose the same request by Defendants to allow supplemental expert reports pertaining to the review of the production discussed herein.

At this point, we cannot commit to a production date of January 15, 2014. We are still waiting to hear from the AG's Office. As for any requested deadline to supplement expert reports, instead of setting a specific date, we propose setting it as a certain number of days after the agreed upon production date.

Please let us know what we can agree to so we can include it in our response, which is due in a few hours.



**STRUCK WIENEKE & LOVE**
3100 West Ray Road  Suite 300  Chandler, Arizona 85226

**Nicholas D. Acedo**
**Attorney**
Direct: (480) 420-1609

nacedo@swlfirm.com

**From:** Don Specter [mailto:dspecter@prisonlaw.com]
**Sent:** Wednesday, December 18, 2013 11:10 AM
**To:** Ashlee Fletcher; Corene Kendrick; cnmitchell@jonesday.com
**Cc:** Parsons Team; Lucy Rand; Michael E. Gottfried; Fathi, David; agerlicher@perkinscoie.com;
jalewelt@azdisabilitylaw.org
**Subject:** RE: Parsons - Death Records

Ashlee,

Thank you for your offer to compromise Plaintiffs' Motion to Enforce two prior court orders.  We are willing to stipulate to an order that has the following elements:

      1.    Defendants will produce the medical records of prisoners who have died since March 4, 2013.

      2.    Defendants do not have to produce records for prisoners who died at private prisons.

   3.   Defendants need only initially produce the records one year prior to the date of death, provided that in individual cases Plaintiffs may request and Defendants will produce medical records from an earlier date if Plaintiffs' experts determine that those earlier records are necessary to complete an evaluation of that individual case.

   4.   Defendants do not have to produce records for deaths that occur after the prisoner is released, unless the prisoner was released early because of his or her medical condition or the prisoner died while in the hospital  or other medical facility.

   5.   The records must be produced by January 15, 2014, and Defendants agree to permit supplemental reports by plaintiffs' experts by February 15.

   6.   Plaintiffs do not agree that medical records for prisoners who died after September 27, 2013 do not have to be produced.

Please let me know whether Defendants agree to the above.  Even if we don't have full agreement on all of the above, we should notify the Court of the areas of agreement in order to narrow the issues the court needs to resolve.

Finally, with respect to the first point in your letter, we did provide Defendants multiple opportunities to respond to our request for these records.  We note that after two phone conferences, multiple emails and two missed deadlines by Defendants, we received your position only after the Court issued an order directing you to respond to our motion.

Don

---

**From:** Ashlee Fletcher [mailto:AFletcher@swlfirm.com]
**Sent:** Wednesday, December 18, 2013 9:00 AM
**To:** Don Specter; Corene Kendrick; cnmitchell@jonesday.com
**Cc:** Parsons Team; Lucy Rand; Michael E. Gottfried; Fathi, David; agerlicher@perkinscoie.com;

jalewelt@azdisabilitylaw.org
**Subject:** RE: Parsons - Death Records

Don,

Can you please let us know whether Plaintiffs will agree to our proposed compromise?



STRUCK WIENEKE & LOVE
3100 West Ray Road, Suite 300   Chandler, Arizona 85226

**Ashlee B. Fletcher**
**Attorney**
Direct: (480) 420-1631
afletcher@swlfirm.com
www.swlfirm.com

---

**From:** Don Specter [mailto:dspecter@prisonlaw.com]
**Sent:** Tuesday, December 17, 2013 3:53 PM
**To:** Ashlee Fletcher; Corene Kendrick; cnmitchell@jonesday.com
**Cc:** Parsons Team; Lucy Rand; Michael E. Gottfried; Fathi, David; agerlicher@perkinscoie.com; jalewelt@azdisabilitylaw.org
**Subject:** RE: Parsons - Death Records

Ashlee,

Corene is out of the office and David is unavailable until tomorrow morning.  We will respond to you then.

---

**From:** Ashlee Fletcher [mailto:AFletcher@swlfirm.com]
**Sent:** Tuesday, December 17, 2013 1:52 PM
**To:** Corene Kendrick (ckendrick@prisonlaw.com); cnmitchell@jonesday.com
**Cc:** Parsons Team; Lucy Rand; Michael E. Gottfried; Fathi, David; Don Specter (dspecter@prisonlaw.com); agerlicher@perkinscoie.com; jalewelt@azdisabilitylaw.org
**Subject:** Parsons - Death Records

Counsel,

Please see the attached letter regarding the "death records" issue.  As outlined in the letter, we request a response by the end of business today.  Please feel free to contact us with any questions or concerns.



STRUCK WIENEKE & LOVE
3100 West Ray Road, Suite 300   Chandler, Arizona 85226

**Ashlee B. Fletcher**

**EXHIBIT 5**

**EXHIBIT 5**

1                    **UNITED STATES DISTRICT COURT**

2                    **FOR THE DISTRICT OF ARIZONA**

3                    _____

4
        Victor Parsons, et al., on      )
5       behalf of themselves and all    )
        others similarly situated;      )  No.  **CV 12-00601-PHX-NVW**
6       and Arizona Center for          )
        Disability Law,                 )
7                                       )        **Phoenix, Arizona**
                         Plaintiffs,    )        **November 1, 2013**
8       vs.                             )           **3:07 p.m.**
                                        )
9       Charles Ryan, Director,         )
        Arizona Department of           )
10      Corrections; and Richard        )
        Pratt, Interim Division         )
11      Director, Division of Health    )
        Services, Arizona Department    )
12      of Corrections, in their        )
        official capacities,            )
13                                      )
                         Defendants.    )
14      _____)

15
                  BEFORE:  **THE HONORABLE NEIL V. WAKE**
16                  UNITED STATES DISTRICT JUDGE

17                        (*Motion Hearing*)

18

19

20

21   Official Court Reporter:
     Laurie A. Adams, RMR, CRR
22   Sandra Day O'Connor U.S. Courthouse, Suite 312
     401 West Washington Street, SPC 43
23   Phoenix, Arizona 85003-2151
     (602) 322-7256
24
     Proceedings Reported by Stenographic Court Reporter
25   Transcript Prepared by Computer-Aided Transcription


                    UNITED STATES DISTRICT COURT

──────── November 1, 2013 - Motion Hearing ────────

1      THE COURT:  Yes, please.

2      MR. SPECTER:  It has two values.  It shows whether the

3  care that -- prisoners' mental health care that prisoners who

4  committed suicide were receiving was adequate.

5      THE COURT:  But how would it do that?  I mean, there's   15:52:50

6  going to be a normal rate of suicide, as tragic as it is, in

7  any population including prisoner population.

8      MR. SPECTER:  There are certain suicides you can't do

9  anything about, but there are a lot of times where the prisoner

10  has given indications where he's about to commit suicide and   15:53:09

11  nothing is done.

12      THE COURT:  You think you might find that in these

13  reviews?

14      MR. SPECTER:  Yes.  Exactly, Your Honor.  And if we

15  don't find that but we look at the underlying records and it   15:53:19

16  shows that there was inadequate care, then that's also relevant

17  to whether the system itself can identify and fix problems.

18      THE COURT:  All right.

19      MR. SPECTER:  The second point I'd like to make is a

20  little tangential, but you talked about it with Mr. Struck.   15:53:41

21  And that is the trial date.

22      THE COURT:  What about it?

23      MR. SPECTER:  Well, it's about a year from now, and

24  we're in an injunctive relief case, so it's not just a

25  retrospective look at what's happened.   15:54:06

─────── November 1, 2013 - Motion Hearing ───────

1      THE COURT:  I understand that.  But my point is the

2  lawyers have to have a reasonable time for which they are doing

3  discovery or we never end the discovery.  It's like Zeno's

4  paradox.  You never get to the end.

5      MR. SPECTER:  I fully accept that, Your Honor.  The          15:54:22

6  problem is the discovery cutoff ended more than a year before

7  the trial date.  So we have a year's time in which we can't

8  conduct discovery but the defendants can use whatever

9  information they have about their system.  So when we get to

10  the trial of this matter, our evidence will be basically --      15:54:41

11      THE COURT:  I see that as impractical, improbable,

12  because in fact, A, the lawyers -- you are suing for systemic

13  violations.

14      MR. SPECTER:  Yes, Your Honor.

15      THE COURT:  And it's very improbable that a systemic        15:54:54

16  violation will arise in the few months before the trial.  If it

17  is systemic, it had to have been there for quite a while.  So a

18  reasonable time frame is entirely reasonable to limit the

19  endless discovery.

20      MR. SPECTER:  I agree.  And in the *Plata* case, for        15:55:09

21  example, the Supreme Court affirmed a district court order

22  saying three or four months before trial was reasonable.  Here

23  we're talking about 13 months.

24      THE COURT:  Well --

25      MR. SPECTER:  We don't want to get into the                 15:55:22

UNITED STATES DISTRICT COURT

─────────────── November 1, 2013 - Motion Hearing ───────────────

1  position --

2          THE COURT:  If they offer -- they are going to be

3  required to list their trial documents.  And if they try to

4  list a bunch of documents that you haven't had access to, do

5  you think they are going to get away with that?            15:55:35

6          MR. SPECTER:  I'm glad to hear they won't.

7          But the other problem is the fact they are going to

8  have witnesses testify about the current conditions and we

9  won't have deposed them.  And we won't know what documents they

10  are relying on, and it's -- they are going to come in and     15:55:48

11  say --

12          THE COURT:  I don't know if they are going to do that

13  but I intend to have a trial according to the outline we have

14  laid out that's fair to both sides.

15          MR. SPECTER:  Right, Your Honor.                    15:56:01

16          THE COURT:  That's based on systemic deficiencies.

17  And also, the reason we have to close the discovery because

18  there's other things you all wanted to do.  You wanted to have

19  an opportunity for summary judgment.  We can't be doing

20  discovery while we're doing summary judgment.  And I need a    15:56:19

21  little time to rule on these motions.

22          So the answer is, that was the schedule we set --

23  basically, I'm not remembering all the details, but I thought

24  it was a schedule you all agreed to.

25          MR. SPECTER:  No, we didn't agree.  You set it, Your  15:56:32


UNITED STATES DISTRICT COURT

—————————— November 1, 2013 - Motion Hearing ——————————

1    Honor, and we accepted it, of course.  But regardless, I'm not

2    quibbling with the schedule.  I'm just trying to resolve the

3    problem what do we do about the 13-month lag time between close

4    of discovery and the start of the trial.  How do we make that

5    fair to both sides, as you said?                           15:56:55

6         THE COURT:  You are just assuming they are going to do

7    unreasonable things and I'm going to blink at it.  We take --

8    trials are a practical process.  And I don't see how I should

9    have to worry about improbable hypotheticals.  We set a

10   reasonable trial schedule that allowed to fit in everything    15:57:16

11   people wanted to do before trial.  So other than hearing you

12   say in general you are unhappy about that, I'm not hearing

13   anything specific.

14        MR. SPECTER:  You are right.  It's a little

15   hypothetical, Your Honor.  So I guess our position will be if   15:57:34

16   they introduce evidence of conditions that occur past the close

17   of discovery we will object at the appropriate time, because we

18   will not have had the opportunity to test that evidence.

19        THE COURT:  I will take the motion under advisement.

20   I intend to get something out in writing.  I hoped to get it    15:58:03

21   done today, but -- oh.  Actually, there is one more thing.  Did

22   you have anything more to say?

23        MR. SPECTER:  Yes, Your Honor.

24        THE COURT:  I had a follow-up thing for Mr. Struck so

25   please continue.                                              15:58:16

**EXHIBIT 6**

**EXHIBIT 6**

1  Thomas C. Horne, Attorney General
   State of Arizona
2  Michael E. Gottfried, Bar No. 010623
   Lucy M. Rand, Bar No. 026919
3  Katherine E. Watanabe, Bar No. 027458
   *Assistant Attorneys General*
4  1275 W. Washington Street
   Phoenix, Arizona 85007-2926
5  Telephone: (602) 542-1610
   Fax:          (602) 542-7670
6  Michael.Gottfried@azag.gov
   Lucy.Rand@azag.gov
7  Katherine.Watanabe@azag.gov

8  Daniel P. Struck, Bar No. 012377
   Kathleen L. Wieneke, Bar No. 011139
9  Rachel Love, Bar No. 019881
   Timothy J. Bojanowski, Bar No. 22126
10 Nicholas D. Acedo, Bar No. 021644
   Courtney R. Cloman, Bar No. 023155
11 Ashlee B. Fletcher, Bar No. 028874
   Anne M. Orcutt, Bar No. 029387
12 STRUCK WIENEKE & LOVE, P.L.C.
   3100 West Ray Road, Suite 300
13 Chandler, Arizona  85226
   Telephone:  (480) 420-1600
14 Fax:  (480) 420-1696
   dstruck@swlfirm.com
15 kwieneke@swlfirm.com
   rlove@swlfirm.com
16 tbojanowski@swlfirm.com
   nacedo@swlfirm.com
17 ccloman@swlfirm.com
   afletcher@swlfirm.com
18 aorcutt@swlfirm.com

19 *Attorneys for Defendants*

20           UNITED STATES DISTRICT COURT
                  DISTRICT OF ARIZONA
21

22 Victor Parsons; *et al.*, on behalf of themselves    NO. CV12-0601-PHX-NVW (MEA)
   and all others similarly situated; and Arizona
23 Center for Disability Law,                           **DEFENDANTS' RESPONSE TO
                                                        PLAINTIFF DESIREE
24                              Plaintiffs,             LICCI'*FIRST* SET OF REQUESTS
                                                        FOR PRODUCTION OF
25                      v.                              DOCUMENTS TO DEFENDANTS**

26 Charles Ryan and Richard Pratt, in their
   official capacities,
27
                                Defendants.
28

#3517597

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant Richard Pratt and Defendant Charles Ryan, pursuant to Fed. R. Civ. P. 34 and through undersigned counsel, supplement their Response to Plaintiff Desiree Licci's First Set of Requests for Production of Documents ("RFP") as follows.   As discovery is ongoing, Defendants reserve the right to supplement these responses as necessary.

**<u>GENERAL OBJECTIONS</u>**

The following general objections are continuing in nature and are intended to apply to each discovery request where applicable.

1.     Defendants object to Plaintiff Licci's Requests for Production to the extent they seek information beyond that which is permitted under the Federal Rules of Civil Procedure, the local rules, Orders of Court, or any other applicable rules or orders. Defendants will respond to Plaintiff's Requests for Production in accordance with the provisions of the Federal Rules of Civil Procedure and the case law interpreting the rules of discovery.

2.     Defendants object to Plaintiff's discovery requests to the extent they seek information protected by the attorney-client privilege, the work product doctrine, deliberative process privilege, work product doctrine, settlement privilege, or any other applicable privilege. Defendants' responses to these discovery requests and/or inadvertent production of any items or information so privileged do not constitute a waiver of any applicable privilege, or any other grounds for objecting to the discovery request, and is subject to the parties' clawback agreement.

3.     Defendants object to the extent that these requests for production seek, in whole or in part, the disclosure of confidential, financial, trade, or proprietary information, and/or confidential or privileged information relating to non-parties to this litigation.

4.     Defendants object to the extent that these requests for production seek, in whole or in part, security-sensitive items or information, which if disclosed (without redaction) would jeopardize the safety and security of the prisons, the ADC's employees,

**REQUEST FOR PRODUCTION NO. 3**

The "Standing Medical Order: Toothache/Dental Abscess" referenced in Paragraph 3.0 of Procedure 787 in The Dental Services Technical Manual (January 1, 2010).

**RESPONSE**

Defendants object to this request as duplicative of Parsons' 1st RFP, Request No. 1. Defendants by this reference fully incorporate each and every general objection above.

Without waiving Defendants' objection(s), see:

1.       This document was previously produced as part of Appendix E to the Health Services Technical Manual ("HSTM"), bates numbers ADC010648-011231.

**REQUEST FOR PRODUCTION NO. 4**

Any and all HEALTH CARE records for the PRISONERS listed in Exhibit A attached to this document, entitled "List of Health Care Records Requested (RFP No. 4)."

**RESPONSE**

Defendants object to this request as duplicative, overly broad, and unduly burdensome. Plaintiffs requested copies of 402 inmates' medical records. Plaintiffs requested many of these records be made available for inspection during an expert tour that is going forward. Defendants by this reference incorporate each and every general objection above as if fully set forth in this response.

Without waiving Defendants' objection(s), see:

Defendants are processing this request and will produce those inmates' medical records that were not requested to be provided for inspection on an expert tour that is going forward.

**REQUEST FOR PRODUCTION NO. 5**

The master file for the PRISONERS listed in Exhibit B attached to this document, entitled "List of Master Files Requested (RFP No. 5)."

DATED this 16th day of September, 2013

Thomas C. Horne
ATTORNEY GENERAL

s/ Lucy M. Rand
Lucy M. Rand
Michael E. Gottfried
Katherine E. Watanabe
*Assistant Attorneys General*

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE & LOVE, P.L.C

*Attorneys for Defendants*

This document (with attachments) was served on the following via e-mail this 16 day of September, 2013:

John Laurens Wilkes, Esq.
**JONES DAY**
717 Texas Street, Suite 3300
Houston, TX 77002
*Attorneys for Plaintiffs*

Jennifer A. Alewelt, Esq.
**ARIZONA CENTER FOR DISABILITY LAW**
5025 E. Washington Street, Suite 202
Phoenix, AZ 85034
*Attorneys for Plaintiffs*

Kirstin Tekakawitha Eidenbach, Esq.
**PERKINS COIE LLP**
2901 N. Central Ave., Suite 2000
Phoenix, AZ 85012
*Attorneys for Plaintiffs*

By: s/ Lucy M. Rand
    Lucy M. Rand

**EXHIBIT 7**

**EXHIBIT 7**

**Rand, Lucy**

| | |
|---|---|
| **From:** | Alison Hardy <ahardy@prisonlaw.com> |
| **Sent:** | Friday, October 25, 2013 2:53 PM |
| **To:** | Rand, Lucy; SW&L Parsons Team; Alewelt, Jennifer; Dooley, Cathleen; Kader, Sarah; Rico, JJ; Varma, Asim; Amy Fettig; Fathi, David; Flood, Kelly; Lyall, James; Pochoda, Daniel; Pochoda, Daniel; Quereshi, Ajmel; Brantley, Kevin; Calderon, Sophia; Freeman, Taylor; Kiernan, David; Mamedova, Kamilla; Messina, Jennifer; Mitchell, Caroline; Wilkes, John; Barr, Daniel; du Mee, Matthew; Eidenbach, Kirstin; Gerlicher, Amelia; Gray, John; Corene Kendrick; Sara Norman; Don Specter |
| **Subject:** | RE: Production - PARSONS v. RYAN |

Dear Lucy,

I am writing to confirm our conversation this afternoon re ongoing discovery production.  You indicated that you would try to have the following documents on disk and in the mail to us by tomorrow, but may send them out on Monday. (I suggested that we use Dropbox.com, and you indicated that you would investigate whether you are authorized to use it for this and/or future productions).

1. **Expert Photos:** you stated that you will send out by Monday the following photos:
   a.  Perryville:  Stewart, Vail and Haney
   b.  Phoenix:  Stewart
   c.  Yuma:  Stewart and Wilcox

2. **Cohen's tagged records from Lewis:** you indicated you have not received those records and you have not received a response from Lewis yet about whether they have located those records.  You agreed to check on those records again.

3. **Stewart's tagged records from Tucson:** You have not received the tagged records, however, you have a list of the files you believe Dr. Stewart wanted records from and, instead of producing the tagged records, you will be producing the entire medical record for those prisoners.

   a.  You currently have, and will be sending out soon, the records for:
   Robles, 177363
   Franco 247770
   Duran 271763
   Tapia-Ruiz 274905
   Barr 279899
   Meza 276540
   Mathias 152527

   b.  You do not yet have, but have ordered on a stat basis, the following records:
   Quintanilla, 229303
   Moses 228550
   Long 277229
   Clark 197210
   Warix 210456
   Plowden 269190
   Younan 224054

4. **Williams's tagged records**
   a.  Florence:  You have them are will produce them by Monday

    b.  Perryville: you were told the state had already produced them, but we agreed that that was probably a mistake. You are checking back with your client.

5.  **143 Medical Records (Licci RFP #4, Exh. A.II):** you have produced 19 and will be producing 23 more by Monday. Some of those on the list of 143 have been released, and you will not be producing their files. You will get me a list of those prisoners. You do not know when the remaining files will be forwarded to you, but you will produce them to us as you receive them.

6.  **90 Master Files:** you have four more ready to send us by Monday, leaving 61 that you say you have but must redact. I again indicated that, because there is a protective order, we do not believe it is necessary to redact the files. You indicated that your client is, thus far, unwilling to reconsider that position.

Thanks for your assistance. I will call next week for an update on the continuing production.

Best,
Alison