1  Daniel Pochoda (Bar No. 021979)
   Kelly J. Flood (Bar No. 019772)
2  James Duff Lyall (Bar No. 330045)*
   **ACLU FOUNDATION OF ARIZONA**
3  3707 North 7th Street, Suite 235
   Phoenix, Arizona 85013
4  Telephone: (602) 650-1854
   Email: dpochoda@acluaz.org
5         kflood@acluaz.org
          jlyall@acluaz.org
6  *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7  *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin
   Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
8  *Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci,
   Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of*
9  *themselves and all others similarly situated*

10 **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

11                    UNITED STATES DISTRICT COURT

12                         DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br>Plaintiffs, <br><br>v. <br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br>Defendants. | No. CV 12-00601-PHX-NVW (MEA) <br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO ENFORCE THE COURT'S ORDERS OF OCTOBER 16, 2012 AND NOVEMBER 4, 2013** |

After the Court issued its order requiring expedited briefing, Defendants modified their position and agreed to provide Plaintiffs with some of the medical records of certain deceased prisoners. Thereafter, the parties negotiated the details of the production of those records. The parties' agreement is included in the proposed order filed herewith.

Defendants continue to refuse to produce the medical records of 13 prisoners on the ground that these prisoners have paroled. Plaintiffs seek these records because one of their experts, Dr. Pablo Stewart, believes that they would provide probative evidence. As

Plaintiffs demonstrate below, Defendants have no authority to support their position, and there is substantial authority that contradicts Defendants' position.

Defendants allege Plaintiffs have "blindsided Defendants" by filing the motion and that Plaintiffs did not engage in enough meet-and-confers [Doc. 731 at 7-8], yet they also argue that Plaintiffs should have brought this dispute to the Court months ago, prior to the close of discovery. [*Id*. at 6-7]  Defendants cannot have it both ways, and in any event both of their contentions are groundless.

First, Plaintiffs filed their motion only after two conferences at which Defendants' counsel stated they would not produce these medical records; multiple emails; and two missed deadlines for Defendants to respond as to whether they agreed the parties had reached an impasse or were willing to compromise. [Doc. 727 at 4-5; Kendrick Decl., Doc. 728 at ¶¶ 29, 30]  Despite Defendants' post-hoc protestations that they were "literally minutes away from providing a response and a compromise offer" on December 13 before the motion was filed [Doc. 731 at 7], it was only four days later, after the Court issued an order directing Defendants to respond to the motion on an expedited basis, that Defendants finally contacted Plaintiffs' counsel and offered to compromise on their position. [Doc. 727-1 at 14]

Second, as detailed exhaustively in Plaintiffs' motion and supporting declaration [Doc. 727 at 3-5; Doc. 728 at ¶¶ 3-5, 7-8, 11-18, 20-21, 23-26], ***at no time for more than 16 months*** after Parsons' First Request for Production of Documents, Request Number 40 was initially propounded upon them, did Defendants raise this specific objection to producing medical records of deceased prisoners. Instead, Defendants' attorneys engaged in a clear pattern and practice for more than a year of representing that the deceased prisoners' medical records would be provided to Plaintiffs.[1]  *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (failure to object within

---

[1] Defendants first notified Plaintiffs of this new objection on December 2, 2013, more than two months after the close of discovery, and after the deadline for Plaintiffs' expert reports.

time limit waives objection); *see also Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (discovery objections must be "plain enough and specific enough so that the court can understand in what way the [requests] are alleged to be objectionable"); *Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409 (C.D. Cal. 2005) ("it is well-settled that all grounds for objection must be stated with specificity").  Plaintiffs' attorneys are not psychics and could not have foreseen that Defendants would raise this new and meritless objection that yet again necessitates court involvement so that Defendants will produce discovery.

**Medical Records of Deceased Prisoners**

With regard to the merits of Plaintiffs' motion to compel the deceased prisoners' medical records, on December 18, 2013, the parties agreed to the following.

1. No later than January 22, 2014, Defendants will produce medical records for prisoners who died on or after March 4, 2013, through September 27, 2013. This includes prisoners who died on-site at ADC prison complexes as well as prisoners who died at an outside hospital or other medical facility after being directly transferred from an ADC prison complex.  Plaintiffs preserve their right to litigate the issue of whether Defendants must supplement their discovery responses to include medical records of prisoners who died after September 27, 2013, and Defendants preserve their objections to such production.

2. Defendants do not have to produce any death records for prisoners who died at private prisons.

3. Defendants will produce the medical records dated up to one year prior to the date of death.  In individual cases, Plaintiffs may request medical records for up to another year if Plaintiffs' expert certifies that she/he needs the earlier documents, and Defendants will produce those documents.  Defendants preserve the right to object to production of any documents dated earlier than two years prior to the prisoner's death.

4.     Defendants do not have to produce medical records for prisoners who died after the prisoner's release, unless the prisoner was released early because of his or her medical condition.

5.     Defendants will not oppose Plaintiffs' request to file supplemental expert reports 30 days after the completion of the production of the medical records, and Plaintiffs will not oppose Defendants' request to file supplemental expert reports 30 days after Plaintiffs' supplemental expert reports are served.  [Doc. 731 at fn. 5; Doc. 731-1, Ex. 4]

**Medical Records of Paroled Prisoners**

On August 14, 2013, Plaintiffs requested the most recent volume of the medical chart of specific prisoners in Plaintiff Licci's First Request for Production of Documents, Request Number 4.  On November 25, 2013, while producing some medical files, Defendants explicitly refused to produce 13 medical records on the grounds that the prisoners had since paroled and therefore Defendants were not permitted to produce their medical records.  [Kendrick Decl., Doc. 728 at ¶ 24, 26-28, Exs. 18-19]  During a meet and confer on December 2, 2013, Plaintiffs' counsel requested the legal support for Defendants' position, in light of the protective order entered in this case, but received no response.  [*Id.*]  The parties met and conferred a second time, on December 9, 2013, and they agreed that they were at an impasse regarding the production of parolees' medical records.  [*Id.* ¶ 29, Ex. 20]

Defendants do not dispute the relevance to Plaintiffs' claims of the health care these prisoners received, or failed to receive, before their recent release from ADC.  Nor do they assert that production of these 13 records would be unduly burdensome.  Defendants' only argument is that, because Defendants ran out the clock until these prisoners were released, "[t]he paroled inmates are . . . no longer members of the class or subclass," and "Defendants are not authorized to disclose confidential medical records of these paroled inmates absent a release."  [Doc. 731 at 10]  This argument is unsupported by citation to any authority, and it is frivolous.

-4-

1  As Plaintiffs pointed out in their motion, "HIPAA permits disclosure of protected health information in litigation when a qualified protective order is in place (45 CFR § 164.512(e)(1)(i)-(ii)(B)), and such an order exists in this case. [Doc. 454]" [Doc. 727 at 7] The governing regulation makes no distinction between the protected health information of parties or nonparties; either can be disclosed in response to a discovery request pursuant to a qualified protective order. 45 CFR § 164.512(e)(1)(ii)(B).

Defendants' position is foreclosed by *Coleman v. Brown*, 2013 WL 5348218, No. 2:90-cv-0520-LKK-JFM (E.D. Cal. Sept. 23, 2013), which is materially indistinguishable from this case. In *Coleman*, counsel for the prisoner class sought discovery of medical records of former prisoners who had recently been paroled. Defendant prison officials objected that these persons were no longer class members, and that their privacy interests barred disclosure of their records without individual releases. *Id.* at *1-2. The court ordered disclosure, ruling that the records were relevant to the class claims and noting that "HIPAA's implementing regulations provide for disclosure of health records in this action where such disclosure is governed by a protective order. *See* 45 C.F.R. § 164.512(e)(ii)(B)." *Id*. at *2 n.1.[2]

Similarly, in *Lowe v. Vadlamudi*, No. 08-10269, 2012 WL 1229949, at *5-6 (E.D. Mich. Apr. 12, 2012), the court affirmed a Magistrate Judge's order that a prison medical provider produce non-party medical records subject to qualified protective order. Indeed, courts routinely order the disclosure of non-parties' protected health information in litigation pursuant to a qualified protective order. *See, e.g.*, *Mitchell v. Conseco Life Ins. Co*., No. 8:12-548-TMC, 2013 WL 2407129, at *3-4 (D.S.C. June 3, 2013); *Stallworth v. Brollini*, No. C11-04841 JSW (LB), 2013 WL 2156267, at *2-3 (N.D. Cal. May 17, 2013); *Allstate Ins. Co. v. Balle*, No. 2:10-CV-02205-KJD-RJJ, 2013 WL 244908, at *2 (D. Nev. Jan. 22, 2013); *Tavares v. Lawrence & Memorial Hosp.*, No. 3:11-CV-770 (CSH), 2012 WL 4825376, at *3 (D. Conn. Oct. 10, 2012); *Turnbow v. Life Partners,*

---

[2] The court also ruled that California state law did not bar production of the records. *Id*. at *2-3.

*Inc.*, No. 3:12-cv-00290-HDM (WGC), 2012 WL 3599212, at *5 (D. Nev. Aug. 20, 2012). This Court should similarly order production of these 13 records in this case.[3]

## Conclusion

For the reasons noted above, the Court should enforce its prior two orders by requiring the production of deceased prisoners' medical records, ordering Defendants to produce all remaining medical files requested in the Licci RFPD, and imposing sanctions.

Dated:  December 20, 2013                **PRISON LAW OFFICE**

By:   s/ Corene Kendrick
Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Warren E. George (Cal. 53588)*
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
          ahardy@prisonlaw.com
          snorman@prisonlaw.com
          ckendrick@prisonlaw.com
          wgeorge@prisonlaw.com

*Admitted *pro hac vice*

---

[3] Defendants inexplicably assert that their position is substantially justified. [Doc. 731 at 10]   Defendants are wrong; a position unsupported by any authority is, by definition, *not* substantially justified. *See Beta Sys., Inc. v. United States*, 866 F.2d 1404, 1406 (Fed. Cir. 1989); *see also Travel Sentry, Inc. v. Tropp*, No. 06-CV-6415 (ENV), 2008 WL 2097613, at *3 (E.D.N.Y. May 15, 2008) ("Movants cite no authority--and the Court has located none--to support their contention that their acts and omissions were substantially justified.").

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:     dbarr@perkinscoie.com
           agerlicher@perkinscoie.com
           keidenbach@perkinscoie.com
           jhgray@perkinscoie.com
           mdumee@perkinscoie.com

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:     dpochoda@acluaz.org
           kflood@acluaz.org
           jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@npp-aclu.org
           afettig@npp-aclu.org
           aquereshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:     cnmitchell@jonesday.com
           dkiernan@jonesday.com
           scalderon@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:     jlwilkes@jonesday.com
           tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:     kmamedova@jonesday.com
           jkmessina@jonesday.com

*Admitted *pro hac vice*

Kevin Brantley (Cal. 251886)*
**JONES DAY**
3161 Michelson Drive, Suite 800
Irvine, California 92612
Telephone:  (949) 851-3939
Email:     kcbrantley@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2013, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

*Attorneys for Defendants*

Jennifer Alewelt
Asim Varma
Sarah Kader
J.J. Rico
Cathleen M. Dooley
**ARIZONA CENTER FOR DISABILITY LAW**
jalewelt@azdisabilitylaw.org
avarma@azdisabilitylaw.org
skader@azdisabilitylaw.org
jrico@azdisabilitylaw.org
cdooley@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

s/ S. Neilson

78204-0001/LEGAL28781678.2