1   Daniel Pochoda (Bar No. 021979)
2   Kelly J. Flood (Bar No. 019772)
    James Duff Lyall (Bar No. 330045)*
    **ACLU FOUNDATION OF ARIZONA**
3   3707 North 7th Street, Suite 235
    Phoenix, Arizona 85013
4   Telephone: (602) 650-1854
    Email: dpochoda@acluaz.org
5          kflood@acluaz.org
           jlyall@acluaz.org
6   *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin*
    *Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
8   *Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci,*
    *Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of*
9   *themselves and all others similarly situated*

    **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**
10

11
                        UNITED STATES DISTRICT COURT
12
                             DISTRICT OF ARIZONA
13

14  | Victor Parsons; Shawn Jensen; Stephen Swartz; | No. CV 12-00601-PHX-NVW |
    | Dustin Brislan; Sonia Rodriguez; Christina | (MEA) |
15  | Verduzco; Jackie Thomas; Jeremy Smith; Robert | |
    | Gamez; Maryanne Chisholm; Desiree Licci; Joseph | **MOTION FOR ORDER** |
16  | Hefner; Joshua Polson; and Charlotte Wells, on | **PROHIBITING** |
    | behalf of themselves and all others similarly | **DEFENDANTS FROM** |
17  | situated; and Arizona Center for Disability Law, | **INTERFERING WITH** |
    | | **LEGAL MAIL BETWEEN** |
    | Plaintiffs, | **CLASS COUNSEL AND** |
18  | | **CLASS MEMBERS** |
    | v. | |
19  | | |
    | Charles Ryan, Director, Arizona Department of | |
20  | Corrections; and Richard Pratt, Interim Division | |
    | Director, Division of Health Services, Arizona | |
21  | Department of Corrections, in their official | |
    | capacities, | |
22  | | |
    | Defendants. | |

23

24

25

26

27

28

1

**Table of Contents**

**INTRODUCTION** ................................................................................................ 1

**I.      FACTUAL BACKGROUND** ................................................................... 2

    A.  ADC Has Issued Statewide and Institutional Directives That Correspondence With Plaintiffs' Counsel Should Not Be Treated as Legal Mail. ..................................................................................... 2

    B.  Prison Staff Have Opened and Read Correspondence Between Class Counsel and the Plaintiff Class. ....................................................... 4

    C.  ADC Employees Have Repeatedly Interfered With Named Plaintiffs' Privileged Correspondence With Class Counsel. .................................. 6

**ARGUMENT** ..................................................................................................... 9

**I.      DEFENDANTS' PRACTICE OF ALLOWING STAFF TO READ THE CONTENTS OF LEGAL MAIL BETWEEN CLASS COUNSEL AND CLASS MEMBERS VIOLATES THE FIRST AMENDMENT AND INVADES THE ATTORNEY-CLIENT RELATIONSHIP** .............................. 9

    A.  Established Standards Exist for Reviewing Prisoners' Incoming and Outgoing Legal Mail. ................................................................... 10

    B.  ADC's Legal Mail Policy, Defendants' Directive Targeting Plaintiffs' Counsel, and ADC's Actual Practice Are Inconsistent With *Wolff* and *Thornburgh* .................................................................................. 11

**II.     DEFENDANTS' INTERFERENCE WITH PRIVILEGED LEGAL MAIL INFRINGES UPON THE RIGHTS AND OBLIGATIONS OF PLAINTIFFS' COUNSEL** .................................................................................... 11

    A.  ADC's Policy and Actions Implicate Counsel's First Amendment Rights . 11

    B.  ADC's Directive and Practice Violate the Common Law Right to Confidential Attorney-Client Communications ......................................... 13

    C.  Plaintiffs' Counsel Must Be Able to Vigorously Prosecute This Case........ 14

**CONCLUSION** ................................................................................................. 15

1

## Table of Authorities

2

CASES

3

*A.J. by L.B. v. Kierst,*

4
    56 F.3d 849 (8th Cir. 1995) ...................................................................... 15

5

*Abel v. Miller,*
    824 F.2d 1522 (7th Cir. 1987) .................................................................... 12

6

7

*Al-Amin v. Smith,*
    511 F.3d 1317 (11th Cir. 2008) ............................................................. 9, 10

8

*Cruz v. Beto,*

9
    603 F.2d 1178 (5th Cir. 1979) .................................................................... 12

10

*Davis v. Goord,*

11
    320 F.3d 346 (2d Cir. 2003) ....................................................................... 10

12

*Denius v. Dunlap,*

13
    209 F.3d 944 (7th Cir. 2000) ........................................................................ 9

14

*Dreher v. Sielaff,*
    636 F.2d 1141 (7th Cir. 1980) .................................................................... 13

15

16

*Fisher v. United States,*
    425 U.S. 391 (1976) .................................................................................... 14

17

*Gomez v. Vernon,*

18
    255 F.3d 1118 (9th Cir. 2001) .............................................................. 13, 15

19

*Guajardo-Palma v. Martinson,*
    622 F.3d 801 (7th Cir. 2010) ...................................................................... 15

20

21

*Gulf Oil Co. v. Bernard,*
    452 U.S. 89 (1981) ...................................................................................... 15

22

*Haitian Centers Council, Inc. v. Sale,*

23
    823 F. Supp. 1028 (E.D.N.Y. 1993) .......................................................... 12

24

*In re Primus,*

25
    436 U.S. 412 (1978) .................................................................................... 12

26

*Jean v. Nelson,*
    711 F.2d 1455 (11th Cir. 1983) .................................................................. 12

27

28

*Jensen v. Klecker,*
    648 F.2d 1179 (8th Cir. 1981) ........................................................ 10

*Jones v. Brown,*
    461 F.3d 353 (3d Cir. 2006)........................................................ 9, 10

*Jones v. Caruso,*
    569 F.3d 258 (6th Cir. 2009) ........................................................ 10

*Kaufman v. McCaughtry,*
    419 F.3d 678 (7th Cir. 2005) ........................................................ 10

*Knop v. Johnson,*
    977 F.2d 996 (6th Cir. 1992) ........................................................ 10

*Martyr v. Bachik,*
    755 F. Supp. 325 (D. Or. 1991) ...................................................... 9

*McClendon v. City of Albuquerque,*
    272 F. Supp. 2d 1250 (D.N.M. 2003) .............................................. 12

*NAACP v. Button,*
    371 U.S. 415 (1963) ...................................................................... 12

*Oregon Advocacy Center v. Mink,*
    322 F.3d 1101 (9th Cir. 2003) ......................................................... 1

*Poole v. Cnty. of Otero,*
    271 F.3d 955 (10th Cir. 2001) ........................................................ 9

*Procunier v. Martinez,*
    416 U.S. 396 (1974) .................................................................. 9, 12

*Ramos v. Lamm,*
    639 F.2d 559 (10th Cir. 1980) ...................................................... 10

*Sturm v. Clark,*
    835 F.2d 1009 (3d Cir. 1987)........................................................ 12

*Thornburgh v. Abbott,*
    490 U.S. 401 (1989)...................................................................... 10

*United States v. DeFonte,*
    441 F.3d 92 (2d Cir. 2006) (per curiam).......................................... 13

*Upjohn Co. v. United States,*
    449 U.S. 383 (1981)...................................................................... 13

*Vasquez v. Raemisch*,
    480 F. Supp. 2d 1120 (W.D. Wis. 2007) ...................................................... 14

*Witherow v. Paff*,
    52 F.3d 264 (9th Cir. 1995) ........................................................................ 10

*Wolff v. McDonnell*,
    418 U.S. 539 (1974) ................................................................................... 10

**STATUTES AND RULES**

42 U.S.C. § 10805(a)(1) ................................................................................. 1

Fed. R. Civ. P. 23(g)(1)(E) ............................................................................. 2

Fed. R. Civ. P. Rule 26(g)(4) ......................................................................... 2

**REGULATIONS**

28 C.F.R. § 540.18(c)(1) ............................................................................... 10

45 C.F.R. § 164.508 ..................................................................................... 14

**OTHER AUTHORITIES**

7A FED. PRAC. & PROC. CIV. § 1769.1 (3d ed. 2013) ................................... 14

Tex. Dep't of Crim. Just., Offender Orientation Handbook at 85, *at*
    www.tdcj.state.tx.us/documents/Offender_Orientation_Handbook_English.pdf ....... 10

**INTRODUCTION**

On March 6, 2013, the Court certified this case as a class action and appointed the Prison Law Office, American Civil Liberties Union (ACLU) of Arizona, ACLU National Prison Project, Jones Day, and Perkins Coie LLP as counsel to a class "[a]ll prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices of the ADC." [Doc. 372 at 21-22][1]  Both prior to and since this Court's Order, Defendants' employees have interfered repeatedly with Plaintiffs' counsel's ability to communicate confidentially with named plaintiffs and class members, by directing and permitting staff to open and read clearly-marked legal mail.  Plaintiffs' counsel have tried for almost two years to resolve this problem, to no avail.  [Declaration of Corene Kendrick ("Kendrick Decl."), filed herewith, ¶¶ 5-7, 9, 23-32, 34-35, 53; Exs. 4, 6, 7, 22-32, 45][2]  Defendants escalated their interference with class counsel and class members' communications on September 17, 2013, when the ADC General Counsel signed a statewide instructional memo (hereinafter "Statewide Memo") to prison operations staff specifically targeting prisoner correspondence with five civil rights groups, including the ACLU, Prison Law Office, and ACDL, as "not [] Legal Mail for confidentiality purposes" unless a specific individual attorney's name was listed on the return address.[3]  [Ex. 2]

---

[1] The Arizona Center for Disability Law (ACDL), the state of Arizona's authorized protection and advocacy agency, is a plaintiff in this action asserting the rights of ADC prisoners who are "individuals with mental illness."  *See* Complaint, Doc. 1, ¶¶ 20, 146; *see also* 42 U.S.C. § 10805(a)(1) (empowering protection and advocacy agencies to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness"); *Oregon Advocacy Center v. Mink,* 322 F.3d 1101, 1116 (9th Cir. 2003) (affirming power of protection and advocacy agency to sue on behalf of mentally incapacitated criminal defendants).

[2] All Exhibits are attached to the Kendrick Declaration, unless otherwise specified.

[3] The other two organizations singled out in the memo were the National Association for the Advancement of Colored People (NAACP) and the Justice Project. [Ex. 2]  The NAACP of Maricopa County currently is investigating ADC's treatment of gay, lesbian, bisexual and transgender prisoners, and sent a demand letter on Sept. 9, 2013 to Defendant Ryan threatening to file a lawsuit against the department if improvements were not made to the conditions of confinement for LGBT prisoners.  [Kendrick Decl. ¶ 4; Ex. 3]  The Arizona Justice Project represents prisoners who may have been wrongfully convicted in appeals and collateral attacks on their convictions.

1    Plaintiffs' counsel brought to Defendants' counsel's attention the fact that ADC

2  policy contains no such requirement.  Nevertheless, the envelopes Plaintiffs' counsel use

3  comply with the requirement, as they are clearly stamped as Legal Mail and list specific

4  attorneys' names.  [Ex. 6 at 2-3]  Furthermore, as detailed below, despite Plaintiffs'

5  counsel's compliance with this new directive, prison staff are systematically opening and

6  reading legal mail, removing documents from correspondence, and telling prisoners that

7  any mail with these groups is not legal mail.

8    Defendants' unlawful practice violates prisoners' constitutional and common law

9  right to unobstructed and confidential communication with their counsel.  The chilling

10  effect of ADC General Counsel's Statewide Memo and ADC staff's deliberate practice of

11  not treating these communications as privileged legal mail is adversely affecting counsel's

12  ability to fairly and adequately represent the class's interests and litigate this case to trial,

13  Fed. R. Civ. P. Rule 26(g)(4), and is interfering with the truth-seeking function of this

14  Court.  Given the seriousness of the current and future injury to Plaintiffs and their

15  counsel from Defendants' policy and practice of interfering with and reading their legal

16  mail, Plaintiffs request the Court issue a "further order[] in connection with the

17  appointment" of class counsel, Fed. R. Civ. P. 23(g)(1)(E), to ensure class members and

18  named plaintiffs can communicate freely and confidentially with class counsel.

19  **I.    FACTUAL BACKGROUND**

20      **A.    ADC Has Issued Statewide and Institutional Directives That**
        **Correspondence With Plaintiffs' Counsel Should Not Be Treated as**
21      **Legal Mail.**

22    Defendants promulgated institutional and statewide directives that specifically

23  target Plaintiffs' counsel's mail with the class as non-legal mail, which contradicts

24  Defendants' own existing policies regarding legal mail.  Defendants' official written

25  policy on legal mail states that all incoming mail from attorneys "shall be opened for

26  inspection purposes in the presence of the inmate. Such incoming mail may be scanned in

27  the conducting of an inspection for contraband, but shall not be read or censored by staff."

28  [Ex. 1 (ADC Dep't Order 902, "Inmate Legal Access to the Courts," at 902.11, § 1.4.2.1)]

With regard to prisoners' outgoing mail, "[a]ll outgoing legal documents to an inmate's attorney or to a judge or court (other than letters to an inmate's attorney or to a judge or court, such as pleadings, briefs and motions) shall not be censored, but staff are not prohibited from reading such documents to the extent necessary to establish the absence of contraband." [*Id.* at 902.11, § 1.4.2.2]  ADC's written policies define "attorney" as "an attorney-at-law licensed to practice in any state or federal jurisdiction[,] [w]ho has entered into or may in the future enter into an attorney-client relationship with the inmate or has been appointed to represent the inmate, as evidenced by court record, court order or by the inmate's written authorization." [*Id.* at p. 20]

The newly-issued directives state that mail from five specified legal organizations, including the ACLU, the Prison Law Office, and the ACDL, shall not be treated as privileged legal mail, even if stamped "Legal Mail," unless a specific attorney is listed on the return address. [Exs. 2, 4]  If a specific attorney is not listed, the directives state that letters from these offices will be "opened and inspected by Complex Mail Room Staff, and processed as regular mail"—in other words, staff may "open, inspect, and read" the mail outside the presence of an inmate. [Ex. 46 (ADC Dep't Order 914, "Inmate Mail," at 914.02, § 1.5)]  Immediately upon learning of the new directives, Plaintiffs' counsel sent a letter on September 25, 2013 to Defendants' counsel requesting the memos be rescinded and the described practices be discontinued immediately. [Kendrick Decl. ¶ 5; Ex. 4] Defendants refused. [Ex. 5]

Defendants' directive on incoming legal mail from Plaintiffs' counsel is inconsistent with the ADC's own mail policies, which contain no requirement that incoming legal mail include the name of an attorney in the return address.  Nor does ADC policy suggest that mail from the listed organizations should be treated differently than mail from other law offices. [Ex. 1]  Rather, ADC's written policy states that the staff responsible for processing incoming mail shall make the determination whether mail should be classified as legal mail based on an inspection of the envelope and wisely instructs that "[t]he return address may be indicative of whether the contents of the

envelope constitute legal mail." [*Id*. at 902.11, §1.5]  Under that policy, mail from class counsel to class members should be treated presumptively as privileged legal mail, which may not be read or censored by staff.  [*Id.*]

### B. Prison Staff Have Opened and Read Correspondence Between Class Counsel and the Plaintiff Class.

Although ADC's written mail policy does not specifically require it, Plaintiffs' attorneys *do* list the name of an individual attorney on the envelope when corresponding with prisoners.  Despite this, staff at multiple ADC facilities have read legal mail between Plaintiffs' counsel and their clients, and have done so on the basis of the Statewide Memo and the institutional directives.  Prisoners are being told that *any* mail with these offices is not legal mail, and that the attorneys *appointed by this Court* to represent the prisoners as class members "are not attorneys" because some of them are not members of the State Bar of Arizona. [Kendrick Decl. ¶¶ 10-21, 41, Exs. 8-21, 38]  This is a systemic problem.

For example, barely a month after the issuance of the Statewide Memo, Plaintiffs' counsel learned that Mr. Seymour Abdullah, a class member housed at ASPC-Eyman, attempted to send a letter that was addressed by name and title to Donald Specter (an attorney admitted *pro hac vice* to this Court and a member of the California Bar) as legal mail, but that staff at the Eyman prison complex refused to treat it as legal mail.  [*Id.* ¶¶ 9-10; Exs. 7-8][4]  Initially, Mr. Abdullah was told that all correspondence with the Prison Law Office was not legal mail.  [*Id.* ¶ 10, Ex. 8 at ¶ 3-4]  When he pressed his case with

---

[4] When Mr. Abdullah mailed his declaration [Ex. 8] on November 14, 2013 in an envelope labeled as legal mail and addressed to Prison Law Office Staff Attorney Corene Kendrick, he was told by the same correctional officer that Ms. Kendrick is not an Arizona attorney and therefore the correspondence was not confidential. The officer noted this on the envelope. [Exs. 9-10]  Mr. Abdullah attempted to send a letter as legal mail to Daniel Pochoda, identified on the envelope as an attorney of record in this case and Legal Director at the ACLU of Arizona, to report the problems writing the Prison Law Office, and was told that Mr. Pochoda is not an attorney and that mail sent to the ACLU of Arizona is not legal mail. [Ex. 9]  Mr. Abdullah was transferred from Eyman-Meadows to Florence-South in December, and on December 26, 2013, the Prison Law Office received a letter from Mr. Abdullah that was delivered torn open on two sides and had been crudely taped shut.  [Kendrick Decl. ¶ 12; Ex. 11]

mailroom staff and the law library paralegal, the paralegal invented a new requirement not listed in the Statewide Memo, and told the prisoner that since Mr. Specter was not a member of the Arizona Bar, the letter did not have to be treated as legal mail.  [*Id.*]

Plaintiffs' counsel brought this particular incident to the attention of Defendants' counsel on October 14, 2013, and asked Defendants to clarify immediately with ADC mailroom and law library staff at all prison complexes that the attorneys appointed by this Court to represent the class should not be treated differently based upon whether they are licensed in Arizona.[5]  [Ex. 7]  Plaintiffs' counsel reiterated that any mail to or from their offices should be presumed to be confidential legal mail and treated as such, and again requested all memos to the contrary be rescinded.  [*Id.*]  Defendants have not responded.[6] [Kendrick Decl. ¶ 9]  Since the issuance of the Statewide Memo, staff at Eyman, Florence, Tucson, and Lewis have deemed legal mail sent to or from Plaintiffs' counsel as non-legal mail.  [*Id*. ¶¶ 11- 22, 37-38, 41-42, 46, 49, 52; Exs. 9-21, 34-35, 37-38, 43-44]

These incidents are part of a systemic practice of interfering with prisoners' ability to communicate confidentially with class counsel or, at the very least, are indicative of a reckless lack of oversight of ADC staff.  Plaintiffs' counsel has received letters sent by ADC prisoners in envelopes which were visibly opened and re-taped, have been stamped as "inspected" or "not legal mail," or where the envelopes do not contain complete

_____

[5] An attorney licensed in Arizona and employed by Perkins Coie was deemed by Lewis staff as not an attorney.  [Kendrick Decl. ¶ 43; Exs. 40-41]

[6] In addition to the September 25, October 7, and October 14 letters to Defendants' Counsel regarding the Statewide Memo, on Nov. 27, 2013, Plaintiffs' Counsel Don Specter wrote ADC General Counsel Northup after being copied on an email exchange between Ms. Northup and a local prisoner advocate who contacted her about the Statewide Memo.  Ms. Northup told the advocate that "[t]he 'legal mail' memorandum you reference relates solely to incoming mail.  The process for an inmate to **send** legal mail has not changed. …[T]he direction is to treat **incoming** mail from the ACLU, PLO, NAACP, etc. as legal mail if there is an attorney identified with the organization's address."  [Ex. 45 at 3 (emphasis in original)]

Mr. Specter's two page email to Ms. Northup outlined many of the incidents described in this Motion and the Kendrick Declaration, and requested that "specific direction and training be provided to all mailroom staff so that we can communicate confidentially with our clients… Please let me know early next week whether you are willing to do that, and, if so, what you intend to do to rectify this situation."  [*Id*. at 2] Plaintiffs' counsel have not received a response.  [Kendrick Decl. ¶ 54]

documents with private information such as health care records, grievances, or health needs requests.  [Kendrick Decl. ¶¶ 11-12, 14-15, 17, 39, 47, 50; Exs. 10, 11, 13, 14, 16]

### C.    ADC Employees Have Repeatedly Interfered With Named Plaintiffs' Privileged Correspondence With Class Counsel.

Named Plaintiffs have filed grievances and provided documentation to ADC that their legal mail to and from Plaintiffs' counsel has been opened and read outside their presence and treated as non-legal mail, to no avail.  [Kendrick Decl. ¶¶ 36, 38-42; Exs. 35, 37, 43]  Plaintiffs' counsel have written Defendants at least 13 times since May 2012 regarding interference with legal mail with the named plaintiffs, have attempted to meet and confer about the topic, and have hit a similar wall.  [*Id.* ¶¶ 5, 7, 9, 23-35, 54; Exs. 4, 6, 7, 22-32, 43]  Defendants' counsel have either responded with reflexive denials of any wrongdoing or, more often, not responded at all.

For example, Named Plaintiff Dustin Brislan repeatedly experienced problems with his incoming and outgoing legal mail being opened and read by correctional officers, and his outgoing mail sent to attorneys at the Prison Law Office, ACLU of Arizona, and Perkins Coie returned to him opened by mailroom staff, and told it was not legal mail.  As early as April 2012, only one month after the Complaint was filed, Mr. Brislan filed a grievance with the ADC reporting that mail he had labeled as "legal mail" and sent to his attorney was returned to him marked "return to sender – attempted – not known," but the envelope showed clear evidence of having been opened multiple times outside of his presence and then taped back closed.  [Ex. 33 at 1]  ADC's response did not deny that his legal mail had been opened outside of his presence.  [*Id.* at 2]  Instead, the ADC asserted that prison staff were entitled to open and examine any mail returned by the U.S. Postal Service, even mail labeled as legal mail, to make sure that the prisoner listed in the return address was really the person who had originally attempted to mail the letter.  [*Id.*]

On October 7, 2013, Mr. Brislan tried to send the Prison Law Office 136 pages of documents.  [Kendrick Decl. ¶¶ 38-39; Ex. 35]  First, mailroom staff returned the envelope to Mr. Brislan opened and with the documents out of order, and told him mail to

1   the Prison Law Office is not legal mail.  [*Id.*]  That same day, he re-organized the

2   documents as he had originally done, and asked again that it be sent out as legal mail.

3   [*Id.*]  The package did not arrive at the Prison Law Office until 15 days later.  [*Id.* ¶ 39]

4   When it arrived, it appeared to have been opened and shut back up, there were only about

5   50 pages of documents left in the package.  [*Id.*]

6       An almost identical tampering with outgoing legal mail happened to named

7   plaintiff Robert Gamez, housed in Eyman's Browning Unit.  On November 26, 2013, he

8   sent the Prison Law Office 220 pages of documents and grievances along with a cover

9   letter, [Ex. 43 at ¶¶ 5, 7], but only 35 pages arrived at the attorneys' offices.  [Kendrick

10  Decl. ¶ 47]  Ironically, among the documents removed from Mr. Gamez's package to the

11  Prison Law Office was a grievance he had filed about incoming legal mail from the

12  Arizona Justice Project being opened outside his presence, and the director's level

13  response to the grievance from Defendant Ryan reiterating the directive singling out

14  Plaintiffs' counsel.  [Ex. 43 at ¶ 5]

15      Named Plaintiff Joshua Polson suffered multiple violations of his right to send and

16  receive confidential legal mail.  On January 24, 2013, Plaintiffs' counsel reported to

17  Defendants' counsel that Polson's "legal mail is being opened outside of his presence,"

18  and noted that this issue had been raised for over eight months without a response.  [Ex.

19  25]  On February 5, 2013, Defendants' counsel responded that in the "incidents you have

20  identified, it appears that the correspondence addressed to Plaintiffs was not readily

21  identifiable to staff as legal mail."  [Ex. 26 at 1]  Defendants' counsel promised to "send[]

22  a list of the attorneys and law firms representing Plaintiffs in this case to its mail

23  processing departments" and "make every effort to identify Plaintiffs' legal mail for

24  appropriate processing."  [*Id.* at 2]  Plaintiffs' counsel thought this was an excellent idea,

25  [Ex. 27], but a week after stating they would take productive steps to identify Plaintiffs'

26  counsel, Defendants' attorneys changed their minds and said "ADC will not be amending

27  its legal mail policy to classify outside organizations such as the ACLU, PLO, or ACDL

28  as a legal entity," as "[t]he ACLU is a very large organization."  [Ex. 28 at 2]  Now,

Defendants' counsel has gone even further, specifically targeting Plaintiffs' counsel with their Statewide Memo.

On March 7, 2013 Plaintiffs' counsel reported to Defendants' counsel that staff at Lewis complex had improperly opened Mr. Polson's incoming legal mail outside his presence, and Polson's outgoing legal mail was not being timely delivered.  [Kendrick Decl. ¶ 34, Ex. 31]  On March 18, Defendants' attorney asserted that this was because Mr. Polson had started to refuse legal mail.  [*Id*. ¶ 35, Ex. 32 at 5][7]  The documentation the Attorney General's Office provided as evidence of Mr. Polson's purported refusals were mail transfer logs and Information Reports created by the same correctional officer.  [Ex. 32 at 12-18]  None of the documentation included any signature or other writing by Mr. Polson indicating his desire to refuse legal mail.  Mr. Polson later confirmed that he had not, in fact, refused any legal mail.  [*Id*. at 3-4]

Named Plaintiff Swartz has experienced problems with his legal mail since the issuance of the Statewide Memo. On October 28, 2013, ASPC-Lewis staff gave Named Plaintiff Swartz mail sent to him from the Prison Law Office, with Mr. Specter's name printed in the return address of the envelope.  The envelope had been cut open, and there was a stamp on the envelope that said it was not legal mail.  [Ex. 37 at ¶ 4]  The letter inside had "LEGAL MAIL" printed across the top.  [*Id* at ¶ 5] This letter, along with copies of documents including medical and mental health grievances that Mr. Swartz had sent to counsel to review, were out of order and the papers all smelled of men's cologne.  [*Id.*]  Mr. Swartz filed a grievance about this incident, and was told in reply that "protocol was not followed."  [Ex. 38][8]

---

[7] Such a refusal, however, is impossible under ADC's own policies, which provide prison staff shall "[r]eturn legal correspondence to the sender only if the addressee is no longer an inmate, releasee or parolee, in which case the sender shall be advised of this fact."  [Ex. 1 (ADC DO 902.11 (1.7.4))]

[8] Mr. Swartz had an envelope addressed to the Clerk of this Court returned to him by mailroom staff, stamped "NOT CONSIDERED LEGAL MAIL."  [Kendrick Decl. ¶ 43, Ex. 39]  Mailroom staff returned a letter addressed to the Clerk of the Ninth Circuit Court of Appeals to another prisoner who has experienced problems corresponding with his appointed appellate counsel as well as the Prison Law Office.  [*Id.* ¶¶ 21-22; Ex. 21]

1    In addition to Messrs. Gamez, Brislan, Polson, and Swartz, other named plaintiffs,

2    including Desiree Licci, Jackie Thomas, and Jeremy Smith have reported that their legal

3    mail to and from Plaintiffs' counsel has been opened and read outside their presence, or

4    not delivered to them at all.  [*Id.* ¶¶ 23-25, 51-53, Exs. 22-24, 44]

5                                   **ARGUMENT**

6    **I.    DEFENDANTS' PRACTICE OF ALLOWING STAFF TO READ THE
         CONTENTS OF LEGAL MAIL BETWEEN CLASS COUNSEL AND
7        CLASS MEMBERS VIOLATES THE FIRST AMENDMENT AND
         INVADES THE ATTORNEY-CLIENT RELATIONSHIP**
8

9    The Statewide Memo targeting Plaintiffs' counsel, and the implementation of it,

10   violates prisoners' First Amendment right to communicate with attorneys, and invades the

11   attorney-client privilege.

12   "Regulations and practices that unjustifiably obstruct the availability of

13   professional representation or other aspects of the right of access to the courts are

14   invalid."  *Procunier v. Martinez*, 416 U.S. 396, 419 (1974).  The First Amendment

15   protects the right to hire and consult with an attorney.  *Denius v. Dunlap*, 209 F.3d 944,

16   954 (7th Cir. 2000); *accord, Poole v. Cnty. of Otero*, 271 F.3d 955, 961 (10th Cir. 2001).

17   While limitations may be placed on prisoners' constitutional rights for penological and

18   safety reasons, prisoners retain their right to consult with attorneys, including via

19   privileged legal mail.  *Martyr v. Bachik*, 755 F. Supp. 325, 329 (D. Or. 1991) ("Letters

20   [from prisoners] to attorneys are entitled to protection from censorship under both the first

21   amendment and the attorney-client privilege."); *see also Al-Amin v. Smith*, 511 F.3d 1317,

22   1333-34 (11th Cir. 2008) ("Indeed, given their incarceration and often distance from their

23   attorneys, prisoners' use of the mail to communicate with their attorneys about their

24   criminal cases may frequently be a more important free speech right than the use of their

25   tongues.").  A prisoner's First Amendment right to consult with an attorney is not subject

26   to a requirement that a prisoner suffered an actual injury, because "protection of an

27   inmate's freedom to engage in protected communications is a constitutional end in itself."

28   *Jones v. Brown*, 461 F.3d 353, 359-60 (3d Cir. 2006).

1

### A.    Established Standards Exist for Reviewing Prisoners' Incoming and Outgoing Legal Mail.

2

3    In *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974), the Supreme Court upheld a

4  procedure whereby prison staff checked incoming mail from privileged correspondents for

5  contraband by opening the envelope only in the presence of the prisoner and not reading

6  the contents.  *Id*. at 576-77.  The Court stated that "[a]s to the ability to open the mail in

7  the presence of inmates, this could in no way constitute censorship, since the mail would

8  not be read.  Neither could it chill such communications, since the inmate's presence

9  insures that prison officials will not read the mail."  *Id*. at 577.[9]  With this balanced

10  approach to processing incoming legal mail, the prison's penological interest in security is

11  fully protected without intruding into the attorney-client relationship.  *Al-Amin*, 511 F.3d

12  at 1333.

13    Because "[t]he implications of outgoing correspondence for prison security are of a

14  categorically lesser magnitude than the implications of incoming materials," regulations

15  for outgoing mail – even non-legal mail – must be less intrusive than those for incoming

16  mail.  *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989); *see also Witherow v. Paff*, 52 F.3d

17  264, 265 (9th Cir. 1995) (quoting *Thornburgh*, 490 U.S. at 412, for the proposition that

18  "[w]hen a prison regulation affects outgoing mail as opposed to incoming mail, there must

19  be a 'closer fit between the regulation and the purpose it serves.'").[10]

20

--------

21    [9] After *Wolff*, seven circuits have relied upon its rule that all incoming legal mail
from an attorney may be opened and inspected for contraband in the presence of the
22  prisoner, but not read.  *See Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009); *Al-Amin*,
511 F.3d at 1330-32; *Jones v. Brown*, 461 F.3d at 359; *Kaufman v. McCaughtry*, 419 F.3d
23  678, 686 (7th Cir. 2005); *Davis v. Goord*, 320 F.3d 346, 351-52 (2d Cir. 2003); *Jensen v.
Klecker*, 648 F.2d 1179, 1182-83 (8th Cir. 1981); *Ramos v. Lamm*, 639 F.2d 559, 582
24  (10th Cir. 1980).

    [10] The Federal Bureau of Prisons ("BOP") and the vast majority of state
25  correctional departments expressly prohibit any reading of outgoing legal mail.  The BOP
and many states' policies allow prisoners to seal outgoing legal mail without any
26  inspection by prison personnel.  *See, e.g.* 28 C.F.R. § 540.18(c)(1); *Knop v. Johnson*, 977
F.2d 996, 1015 (6th Cir. 1992) (Consent Decree requiring the Michigan Department of
27  Corrections "shall provide that inmates shall seal all outgoing legal mail which prison
officials shall then cause to be posted unopened in the U.S. mail"); Tex. Dep't of Crim.
28  Just., Offender Orientation Handbook at 85, *at* www.tdcj.state.tx.us/documents/Offender_

**B.    ADC's Legal Mail Policy, Defendants' Directive Targeting Plaintiffs' Counsel, and ADC's Actual Practice Are Inconsistent With *Wolff* and *Thornburgh*.**

Defendants' written policy states that all incoming mail from attorneys "shall be *opened for inspection purposes in the presence of the inmate*. Such incoming mail may be scanned in the conducting of an inspection for contraband, *but shall not be read* or censored by staff." [Ex. 1 at 902.11, § 1.4.2.1 (emphasis added)]  In contrast, the written policy on outgoing mail allows staff to read prisoners' legal mail to attorneys and the courts "to the extent necessary to establish the absence of contraband."  [*Id*. at 902.11, § 1.4.2.2]  Oddly, this policy on outgoing mail is more intrusive than ADC's incoming mail policy, and is not consistent with the *Thornburgh* rule.

ADC General Counsel's Statewide Memo targeting and naming the offices representing the class in this case, and ADC staff's actual practice in processing incoming and outgoing legal mail, also run afoul of the *Wolff* and *Thornburgh* requirements.  As described above at Part I, prison staff have interpreted the memo as a blanket rule that correspondence with certain legal groups – even if attorneys' names are listed on the envelopes and the envelopes are stamped "LEGAL MAIL" – is not legal mail.  ADC, through this directive and its implementation, has imposed this heightened burden solely on communications with a targeted group of legal organizations.  This violates its own policies, and is intended to interfere with the communications between Plaintiffs' counsel and class members.

**II.    DEFENDANTS' INTERFERENCE WITH PRIVILEGED LEGAL MAIL INFRINGES UPON THE RIGHTS AND OBLIGATIONS OF PLAINTIFFS' COUNSEL**

**A.    ADC's Policy and Actions Implicate Counsel's First Amendment Rights.**

Courts disapprove of prison officials' attempts to limit prisoners' communication with attorneys, as the interference also implicates the attorneys' First Amendment rights. These are communications in which "the interests of both parties are inextricably

Orientation_Handbook_English.pdf.

meshed." *Procunier*, 416 U.S. at 409; *see also Sturm v. Clark*, 835 F.2d 1009, 1015 (3d Cir. 1987) (First Amendment claim raised by an attorney whose access to prisoner clients was restricted because she publicized staff misconduct).[11]

Defendants' Statewide Memo targeting correspondence with five specific groups is highly suspicious, as the groups all have something in common: ongoing or potential litigation against ADC. Courts have struck down such ad-hoc requirements that are applicable only to particular attorneys and that have the effect of impeding communications between prisoners and counsel. *See, e.g.*, *McClendon v. City of Albuquerque*, 272 F. Supp. 2d 1250, 1258 (D.N.M. 2003) (newly imposed five-minute limit on calls to class counsel, combined with complete ban on visits by class counsel, would "unjustifiably obstruct the availability of professional representation"); *Haitian Centers Council, Inc. v. Sale*, 823 F. Supp. 1028, 1040 (E.D.N.Y. 1993) (striking down U.S. government's barring of attorneys from advocacy group from meeting with Haitian refugees detained at Guantanamo Bay who were putative class members, while allowing "press, clergy, politicians and other non-lawyers to meet with the Haitians"); *see also Abel v. Miller*, 824 F.2d 1522, 1534 (7th Cir. 1987) (holding a prisoners' rights organization's correspondence could not be barred in response to their criticisms and litigation); *Cruz v. Beto*, 603 F.2d 1178, 1180-81, 1186 (5th Cir. 1979) (affirming judgment against prison officials who cut off access to a particular attorney and punished prisoners who remained her clients); *Jean v. Nelson*, 711 F.2d 1455, 1508-09 (11th Cir. 1983) (holding attorneys

---

[11] In *NAACP v. Button*, 371 U.S. 415, 428 (1963), the Supreme Court held that the NAACP's activities in advising persons of their rights with respect to racial segregation, and soliciting prospective litigants "who seek legal redress for infringements of their constitutionally guaranteed and other rights" fell within the NAACP members' and staff attorneys' First Amendment freedoms of expression and association. The Court extended *Button* in *In re Primus*, 436 U.S. 412, 428 (1978), to apply to a private attorney who solicited a potential litigant for representation by the ACLU, and observed that "[f]or the ACLU, as for the NAACP, 'litigation is not a technique of resolving private differences'; it is 'a form of political expression' and 'political association.'" (quoting *Button*, 371 U.S. at 429, 431); *see also Haitian Centers Council, Inc. v. Sale*, 823 F. Supp. 1028, 1040 (E.D.N.Y. 1993) (relying upon *Primus* to hold the denial of advocacy group's access to Haitian detainees at Guantanamo Bay as violative of the group's speech and associational rights).

for Haitian Refugee Center had a right to inform Haitians detained by Immigration and Naturalization Service of their legal rights), *on rehearing*, 727 F.2d 957 (11th Cir. 1984) (en banc), *rev'd on other grounds*, 472 U.S. 846 (1985); *Dreher v. Sielaff*, 636 F.2d 1141, 1145 (7th Cir. 1980) (holding prison officials should be directed to prepare a plan for reasonable access by staff of Prison Legal Aid program).

### B. ADC's Directive and Practice Violate the Common Law Right to Confidential Attorney-Client Communications.

Defendants' written policies, directive targeting class counsel, and practice of interfering with the confidential exchange of information between class members and Plaintiffs' counsel also runs afoul of the well-established federal common law right of attorney-client privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (noting that the attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law."); *see also Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001) ("[f]ederal common law recognizes a privilege for communications between client and attorney for the purpose of obtaining legal advice, provided such communications were intended to be confidential."). Courts may enforce this privilege independently of any constitutional interests, and prisoners' common law rights pertaining to the privilege are retained during incarceration. *Id.* at 1133 (*citing Pell v. Procunier*, 417 U.S. 817, 822 (1974)); *see also United States v. DeFonte*, 441 F.3d 92, 94 (2d Cir. 2006) (per curiam) (prisoners retain the attorney-client privilege regardless of whether there is a Fourth Amendment expectation of privacy).

As a result of ADC's policies and practices targeting the privileged legal communications between class members and class counsel, Plaintiffs' counsel are operating under the constant threat that Defendants' practice of intercepting and reading legal mail to and from class members is chilling their communications with clients, and could lead to the misuse of confidential information. [Kendrick Decl. ¶ 8] Since the purpose of the attorney-client privilege "is to encourage clients to make full disclosure to their attorneys," if the client fears disclosure of confidential communications, "the client

1   would be reluctant to confide in his lawyer and it would be difficult to obtain fully

2   informed legal advice." *Fisher v. United States*, 425 U.S. 391, 403 (1976).

3         Prisoners are especially vulnerable in this regard, because they are entirely

4   dependent upon the prison to transmit mail to and from their attorneys.  If a prisoner

5   knows that correctional officers will read his or her letters to counsel, the prisoner may not

6   be completely candid with the lawyers.  *Vasquez v. Raemisch*, 480 F. Supp. 2d 1120, 1140

7   (W.D. Wis. 2007) (noting that if prison officials are allowed to read "sensitive legal

8   communications," prisoners may be chilled in expression "out of fear of retaliation or

9   embarrassment.").  This is especially true in a case such as this, which involves claims

10  regarding highly personal medical, mental health, or dental needs, and the conditions of

11  isolation.[12]

12          **C.      Plaintiffs' Counsel Must Be Able to Vigorously Prosecute This Case.**

13        The Court appointed Plaintiffs' counsel to represent the certified class and subclass

14  of prisoners in this case.  [Doc. 372 at 21]  Attorneys appointed to represent a class "must

15  be willing and able to vigorously prosecute the action."  7A Fed. Prac. & Proc. Civ.

16  § 1769.1 (3d ed. 2013).  A basic tenet of good lawyering and vigorously prosecuting a

17  case to completion is that a lawyer should have as much information available to her from

18  her clients as possible.  In a system in which mail is the primary form of communication

19  between clients and their attorneys, letters sent between class members and counsel are

20  critical.

21        Class members use the legal mail system to provide counsel with information

22  related to the claims in this case.  If they are unable to do so confidentially, there is an

23  inadequate exchange of vitally important legal and health information.  As a result of

24  ADC's actions, the effect is that Plaintiffs' counsel has been and will be obstructed from

25  accessing documents and other evidence needed to vigorously prosecute this case.  *See*

26  

---

27        [12] Much of the information contained within prisoners' letters and enclosures
    involve protected health information, the distribution of which within ADC is covered by
28  federal law (45 C.F.R. § 164.508) and the Court's Amended Protective Order [Doc. 454]

1    *Guajardo-Palma v. Martinson*, 622 F.3d 801, 802 (7th Cir. 2010) (explaining that when a

2    prisoner brings a suit against the prison in which he is confined, allowing prison staff to

3    read the prisoner's legal mail "is like a litigant's eavesdropping on conferences between

4    his opponent and the opponent's lawyer."); *see also Gomez*, 255 F.3d at 1125, 1132

5    (upholding injunction against Idaho prison officials and sanctions against their attorneys

6    when prison employees, "implicitly authorized and encouraged" by their counsel, copied

7    letters "on legal letterhead easily identifiable as that of opposing counsel" addressed to

8    prisoners, and gave the letters to lead counsel for the defendant state agency in the class

9    action litigation).

10                                      **CONCLUSION**

11        "[A] district court has both the duty and the broad authority to exercise control over

12   a class action and to enter appropriate orders governing the conduct of counsel and

13   parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *accord, A.J. by L.B. v. Kierst*,

14   56 F.3d 849, 857 (8th Cir. 1995) (conditions of confinement case).  Rule 23(g)(1)(E) of

15   the Federal Rules of Civil Procedure states that a court "may make further orders in

16   connection with the appointment" of class counsel.

17        In light of the foregoing, Plaintiffs request the Court issue an order directing

18   Defendants to rescind the directives targeting Plaintiffs' counsel, and provide specific

19   direction and training to all ADC mailroom and law library staff so that Plaintiffs' counsel

20   can communicate confidentially with their clients.

21

22

23

24

25

26

27

28

Dated:  January 7, 2014

**PRISON LAW OFFICE**

By: */s/ Corene Kendrick*
    Donald Specter (Cal. 83925)*
    Alison Hardy (Cal. 135966)*
    Sara Norman (Cal. 189536)*
    Corene Kendrick (Cal. 226642)*
    1917 Fifth Street
    Berkeley, California 94710
    Telephone:  (510) 280-2621
    Email:   dspecter@prisonlaw.com
             ahardy@prisonlaw.com
             snorman@prisonlaw.com
             ckendrick@prisonlaw.com

    *Admitted *pro hac vice*

    Daniel Pochoda (Bar No. 021979)
    Kelly J. Flood (Bar No. 019772)
    James Duff Lyall (Bar No. 330045)*
    **ACLU FOUNDATION OF ARIZONA**
    3707 North 7th Street, Suite 235
    Phoenix, Arizona 85013
    Telephone:  (602) 650-1854
    Email:   dpochoda@acluaz.org
             kflood@acluaz.org
             jlyall@acluaz.org

    *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

    David C. Fathi (Wash. 24893)*
    Amy Fettig (D.C. 484883)**
    Ajmel Quereshi (Md. 28882)**
    **ACLU NATIONAL PRISON PROJECT**
    915 15th Street N.W., 7th Floor
    Washington, D.C. 20005
    Telephone:  (202) 548-6603
    Email:   dfathi@npp-aclu.org
             afettig@npp-aclu.org
             aquereshi@npp-aclu.org

    *Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
    **Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE, LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
             agerlicher@perkinscoie.com
             keidenbach@perkinscoie.com
             jhgray@perkinscoie.com
             mdumee@perkinscoie.com

Caroline Mitchell (Cal. 143124)*
David C. Kiernan (Cal. 215335)*
Sophia Calderón (Cal. 278315)*
Sarah Rauh (Cal. 283742)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:     cnmitchell@jonesday.com
             dkiernan@jonesday.com
             scalderon@jonesday.com
             srauh@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:     jlwilkes@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:     kmamedova@jonesday.com
           jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Dustin Brislan; Sonia
Rodriguez; Christina Verduzco; Jackie
Thomas; Jeremy Smith; Robert Gamez;
Maryanne Chisholm; Desiree Licci; Joseph
Hefner; Joshua Polson; and Charlotte
Wells, on behalf of themselves and all others
similarly situated*

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that on January 7, 2014 I electronically transmitted the above

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrants:

5

6

Michael E. Gottfried
Katherine E. Watanabe

7

Lucy M. Rand
Assistant Arizona Attorneys General

8

Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov

9

Lucy.Rand@azag.gov

10

Daniel P. Struck
Kathleen L. Wieneke

11

Timothy J. Bojanowski
Rachel Love

12

Nicholas D. Acedo
Courtney R. Cloman

13

Ashlee B. Fletcher
Anne M. Orcutt

14

STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com

15

kwieneke@swlfirm.com
tbojanowski@swlfirm.com

16

rlove@swlfirm.com
nacedo@swlfirm.com

17

ccloman@swlfirm.com
afletcher@swlfirm.com

18

aorcutt@swlfirm.com

19

*Attorneys for Defendants*

20

Asim Varma

21

Sarah Kader
J.J. Rico

22

Cathleen M. Dooley
**ARIZONA CENTER FOR DISABILITY LAW**

23

avarma@azdisabilitylaw.org
skader@azdisabilitylaw.org

24

jrico@azdisabilitylaw.org
cdooley@azdisabilitylaw.org

25

*Attorneys for Plaintiff Arizona Center for Disability Law*

26

s/ S. Neilson

27

28

-19-