# EXHIBIT 25



2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
PHONE: 602.351.8000
FAX: 602.648.7000
www.perkinscoie.com

Matthew B. du Mée
PHONE: (602) 351-8036
FAX:   (602) 648-7028
EMAIL: MduMee@perkinscoie.com

January 24, 2013

*VIA EMAIL*

Michael E. Gottfried, Esq.
Arizona Attorney General's Office
1275 West Washington
Phoenix, Arizona 85007-2926
*Michael.Gottfried@azag.gov*

            Re:    *ACLU: Victor Parsons, et al. v. Charles Ryan, et al.*

Dear Michael:

        We write on behalf of our client, Joshua Polson (187716), who is currently housed at the Lewis Complex.  Mr. Polson has reported to us that his legal mail is being opened outside of his presence.  This practice is in violation of ADC's own policy on legal mail, which states: "All incoming mail, letters, memoranda, and documents, from an inmate's attorney or from a judge or court, shall be opened for inspection purposes in the presence of the inmate.  Such incoming mail may be scanned in the conducting of an inspection for contraband, but shall not be read or censored by staff."  Department Order 902.11, 1.4.2.1.  In addition to violating ADC's written policy, this practice violates our clients' rights to confidential legal counsel.  When an inmate's legal mail is opened outside of his or her presence, neither the inmate nor his or her attorneys have any guarantee that the correspondence is not being read.

        Additionally, our client, Jeremy Smith (129438), has informed us that during his transfer out of isolation, his legal mail file was taken from him, and has not yet been returned.

        The two examples of mail interference in this letter are the latest in a series of complaints we have made to you regarding this issue, which several of our clients at various ADC prisons have experienced.  *See* Nov. 29, 2012 letter, Aug. 2, 2012 letter, and May 25, 2012 letter (attached).  Over the last eight months, we have repeatedly asked you what action you will take to address this issue, and our requests have gone unanswered.  The failure to address the opening

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DALLAS · DENVER · LOS ANGELES · MADISON · NEW YORK
PALO ALTO · PHOENIX · PORTLAND · SAN DIEGO · SAN FRANCISCO · SEATTLE · SHANGHAI · TAIPEI · WASHINGTON, D.C.

Perkins Coie LLP

Michael Godfried
January 24, 2013
Page 2

of legal mail outside of the inmate's presence is particularly egregious because we included with the Nov. 29, 2012 letter a written statement from Ron Credio, the Warden of Eyman Complex, that "all incoming mail is screened for contraband or prohibited items and *then* forwarded to the inmate it is addressed to" (emphasis added).

We request a meet and confer on this issue. We also request that you respond to this letter by Wednesday, January 30. If you remain unwilling to remedy these problems, we will seek intervention by the court.

Please contact me if you have any questions.

Sincerely,

*M. du Mée*

Matthew B. du Mée

MBD/chw

Copy sent via email to
 all Counsel of Record

# EXHIBIT 26



**Tom Horne**
**Attorney General**

Office of the Attorney General
State of Arizona
LIABILITY MANAGEMENT SECTION

Ashley B. Zuerlein
Assistant Attorney General
(602) 542-7620
Ashley.Zuerlein@azag.gov

February 5, 2013

Matthew B. du Mee
Perkins Coie
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
MduMee@perkinscoie.com

>      Re:    *Parsons, et al. v. Ryan, et al.*
>             USDC CV 12-00601-PHX-NVW (MEA)

Dear Counsel:

This letter is to follow-up on your January 24, 2013 letter, regarding the named Plaintiffs' legal mail.

**A.      Legal Mail Processing**

ADC has reviewed of the allegations you identified in your May 25, 2012, August 2, 2012, November 29, 2012 and January 24, 2013 letters. It appears that there have been issues identifying your legal correspondence as "legal mail." Incoming legal mail is processed pursuant to Department Order ("DO") 902.11, Inmate Legal Access to the Courts. Any mail that is <u>not</u> clearly marked as "legal mail" is subject to DO 914, Inmate Mail, and is subject to random inspection to prevent the receipt of contraband and other criminal activity. DO 914, Inmate Mail, 914.02, §1.5. ADC makes every possible effort to maintain the confidentiality of inmate legal mail. In the incidents you have identified, it appears that the correspondence addressed to Plaintiffs was not readily identifiable to staff as legal mail.

ADC inmates receive general correspondence from the ACLU, PLO, ACDL and other similar organizations that do not qualify as legal mail. Please do not assume that ADC mail staff will know the contents of a package based merely upon your return address. Clearly mark any legal mail to an ADC inmate as such, by using the words "**<u>LEGAL MAIL</u>**" on the front of the envelope. Doing so will assist ADC staff to ensure Plaintiffs' mail is treated appropriately.

*Parsons, et al. v. Ryan, et al.*
February 5, 2013
Page 2 of 3

With respect to outgoing legal mail, it is likely that ADC mail staff did not believe that correspondence addressed to the ACLU, PLO or ACDL was in fact legal mail. Unfortunately, the legal mail process is continually subject to abuse. ADC mail staff regularly receives envelops labeled as "legal mail," but addressed to family, friends or non-legal entities. Any outgoing mail that is not addressed to an attorney, judge or the court is returned to the inmate pursuant to DO 902.11, §1.4.5. I urge you to remind your clients to bring any legal mail to the mail room for screening in his or her presence and to clearly identify you as his or her attorney.

In addition, in order to increase the likelihood of identifying Plaintiffs' legal mail, ADC will also be sending a list of the attorneys and law firms representing Plaintiffs in this case to its mail processing departments. ADC will make every effort to identify Plaintiffs' legal mail for appropriate processing, but requires your assistance as well.

With respect to your concerns regarding Warden R. Credio's Inmate Letter Response to Plaintiff, Dustin Brislan, ADC has and will continue to comply with DO 902. Pursuant to DO 902.11, mail staff log any incoming legal mail upon arrival, recording the inmates name, number, housing location and the senders name and address. Legal mail is then delivered and inspected for contraband in the inmate's presence. DO 902.11, §1.4.2.1. Any non-legal mail is screened prior to being delivered to the inmate. DO 914.02. Warden Credio's statement that "all incoming mail is screened for contraband or prohibited items and then forwarded to the inmate it is addressed to" relates to Brislan's receipt of non-legal mail.

Dustin Brislan is currently located at ASPC-Phoenix. Warden Ramos (ASPC-Phoenix) and Deputy Warden Moody (ASPC-Lewis) have both confirmed that ADC is in compliance with DO 902.

## B.     Legal Phone Calls

Pursuant to DO 902.12, legal phone calls of no more than 30 minutes are approved, when reasonable and necessary to do so. ADC has consistently been accommodating Plaintiffs' requests for legal phone calls to the extent it is able. However, ADC may not be able to accommodate all requests due to security, staffing or other institutional needs. Each request for a legal phone call requires ADC to reallocate valuable staff resources and prohibits other inmates from obtaining similar resources. As a result, ADC asks that inmates utilize the legal mail system to the extent it is possible. We ask that in consideration of staffing requirements and the needs of other inmates, you utilize the legal mail system for general legal matters. Of course, if an urgent issue arises, ADC will make every effort to accommodate a legal phone call.

Please let me know if you still believe that a meet and confer is necessary.

Sincerely,

Ashley B. Zuerlein
Assistant Attorney General

CC:    Tim Bojanowski
        Dan Struck
        Kathy Wieneke
        Dawn Northup

#3024310

# EXHIBIT 27



Perkins
Coie

2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
PHONE: 602.351.8000
FAX: 602.648.7000
www.perkinscoie.com

Matthew B. du Mée
PHONE: (602) 351-8036
FAX:   (602) 648-7028
EMAIL  MduMee@perkinscoie.com

February 8, 2013

*VIA EMAIL*

Ashley B. Zuerlein, Esq.
Arizona Attorney General's Office
1275 West Washington
Phoenix, Arizona  85007-2926

      Re:   *Parsons, et al. v. Ryan, et al.*

Dear Ashley:

      Thank you for your February 5 reply to my letter.  We still have several concerns that your letter did not address, and continue to request a meet and confer on these issues, many of which have not been addressed over half a year after they were originally raised. Judge Wake has previously stated that parties should arrange meet and confers within 48 hours, with counsel participating that have decision-making authority.  Therefore, we request a meet and confer on these issues on Monday or Tuesday of next week, with counsel from your side that has the authority to investigate these concerns and take timely corrective action.

<u>Legal Mail</u>

      Your letter focused almost exclusively on our concerns about the handling of legal mail.  Thank you for promising that ADC will send a list of the attorneys and law firms representing Plaintiffs in this case to its mail processing departments.  Though we assume the rules for legal mail apply equally to all inmates, including those who are not Plaintiffs in this case, we trust that this measure will both aid the departments in proper processing and underscore the importance of proper treatment of legal mail.

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DALLAS · DENVER · LOS ANGELES · MADISON · NEW YORK
PALO ALTO · PHOENIX · PORTLAND · SAN DIEGO · SAN FRANCISCO · SEATTLE · SHANGHAI · TAIPEI · WASHINGTON, D.C.

Perkins Coie LLP

Ashley B. Zuerlein, Esq.
February 8, 2013
Page 2

You also note that you have raised this issue with Warden Ramos (ASPC-Phoenix) and Deputy Warden Moody (ASPC-Lewis), who have confirmed that correct procedures are followed. While we appreciate that the issue has been raised with these two high-ranking employees, these confirmations, without any apparent investigation on your part or theirs, do not by themselves assuage our concerns that mail is being interfered with <u>at the mailroom level</u>. Please ensure that Warden Ramos and Deputy Warden Moody, as well as Warden Credio and all other ADC Wardens and Deputy Wardens, understand the importance of legal mail procedures and take appropriate action to ensure that the correct procedure is followed.

We are troubled by your letter's acknowledgment that our legal mail to our named Plaintiffs has been repeatedly opened outside of their presence. You claim that it appears that every instance of legal mail interference reported (including claims that occurred months ago and have never been addressed until now) stemmed from our failure to label our mail as legal mail. However, all of the organizations involved in this case have consistently used envelopes that have our return addresses and are stamped with the words "LEGAL MAIL" on the front of the envelope for legal correspondence.

In addition, DO 912.11, section 1.5 states that ADC staff "shall attempt to make a determination, based on inspection of the envelope, whether the contents constitute legal mail," and are instructed to consider the return address. If there is serious doubt about whether a piece of mail is legal mail, ADC staff "shall contact the Legal Access Monitor for direction." Per ADC policy, there is not a requirement that incoming legal mail be stamped "legal mail," and if the status of a piece of mail is in doubt, ADC staff are supposed to contact the Legal Access Monitor.

Therefore, even if, as you claim, these letters were somehow not properly stamped, the return addresses on the envelopes should have been considered by the staff, and should have shown that this was legal mail, or at the least, raised "serious doubt" about whether the mail was legal mail. Staff therefore should have opened the mail in the inmate's presence, or contacted the Legal Access Monitor.

Finally, you wrote that "ADC inmates receive general correspondence from the ACLU, PLO, ACDL, and similar organizations that do not qualify as legal mail." Are you taking the position that some mail from Plaintiffs' counsel to ADC prisoners does not qualify as legal mail? Please advise. Mail from our organizations to prisoners should be presumed to be legal mail, especially because legal mail is *still screened for contraband,*

Ashley B. Zuerlein, Esq.
February 8, 2013
Page 3

it is simply screened in the presence of the inmate.  In contrast, if legal mail is incorrectly considered general mail, it allows staff the opportunity to read confidential attorney-client communications with impunity.  Therefore, ADC should err towards considering mail from legal advocacy organizations as legal mail, especially in light of the size and complexity of this litigation.

Accordingly, your explanation does not address our concerns.

Legal Phone Calls

Your letter indicates that ADC is often unable to schedule legal calls because of a lack of staff, and requested that the named Plaintiffs use the mail system.  You agreed that "if an urgent issue arises, ADC will make every effort to accommodate a legal phone call."

DO 902.12, section 1.5 states:  "Legal phone calls shall only be denied or suspended due to security concerns, provided that an effective method of legal communication remains available to the inmate."  Where no other effective method of legal communication is available—as is often true because of the slowness and unreliability of the legal mail system—lack of staffing is not an acceptable excuse.

While we do understand the logistical issues raised in your letter, we cannot accept Defendants' promise to accommodate a legal call "if an urgent issue arises."  This position leaves the ability of our Plaintiffs to make a legal phone call up to an ADC employee's subjective determination of what is "urgent" and what is not.  As a result, the ability to make legal calls varies from facility to facility—some of our clients are able to make periodic legal calls while others have been told outgoing legal calls are prohibited unless first requested by an attorney.  Setting aside the issue of whether ADC staff has denied legal calls for urgent matters in the past, your articulation of the policy puts ADC employees and our named Plaintiffs into an untenable situation—in order for our named Plaintiffs to prove that a matter is "urgent" enough to obtain a confidential legal call, they must reveal the confidential matter to Defendant's employees.

Furthermore, the denial of legal calls for non-urgent matters or for staffing reasons will significantly hamper our discovery responses.  Dan Struck has previously suggested that we can coordinate discovery responses with our named Plaintiffs without needing any legal visits.  Doing so only by mail and phone is very difficult, but doing so only by

Ashley B. Zuerlein, Esq.
February 8, 2013
Page 4

mail would remove our ability to have a contemporaneous conversation with our clients, and would make a legal visit an absolute necessity in most cases.

Therefore, we propose the following:  We will continue to instruct our named Plaintiffs to communicate with us by mail (rather than phone) whenever possible, and only ask ADC personnel for legal phone calls on urgent or time-sensitive matters. However, Counsel for Plaintiffs will still have the ability to initiate confidential legal phone calls with our named Plaintiffs as we find it necessary in our professional judgment.  In return, you agree to contact all ADC personnel that review legal phone call requests and instruct them that if our named Plaintiffs request a legal call with us, and state that it is urgent or otherwise time-sensitive, the request should be granted without further inquiry into the circumstances behind the call.  This compromise could address the problems that face both sides.  Is this proposal acceptable to you?

In addition, we have received reports from several named Plaintiffs that ADC staff sometimes stays within earshot of legal phone calls.  This violates DO 902.12 1.7, which demands that staff "not listen to the conversation, but shall maintain visual contact of the inmate when the inmate is in an area where security or information may be compromised," and DO 902.12 1.6, which states that "legal phone calls shall not be monitored or recorded."  Please take steps to ensure that this policy is followed.

Finally, if the issues surrounding interference with the confidentiality of legal mail are resolved, this may reduce the number of legal phone calls requested by our named Plaintiffs, as they will have the assurance that a phone call is not the only method for a confidential communication with their attorney.

<u>Legal Files</u>

I informed you in my January 24 letter that Jeremy Smith (129438), had informed us that during his transfer out of isolation, his legal mail file was taken from him, and has not yet been returned.  Your February 5 reply did not respond to this concern.

Similarly, another named Plaintiff, Jackie Thomas (211267), has recently told us that ADC has taken his property, including his legal file, and has not returned it to him. Please look into these matters and confirm to us that Mr. Smith's and Mr. Thomas' legal files and property are returned.  Also, please confirm that no part of their files was copied or given to any counsel for Defendants.

Ashley B. Zuerlein, Esq.
February 8, 2013
Page 5


<u>Dustin Brislan</u>

You stated that Mr. Brislan is currently located at ASPC-Phoenix.  We agree that Mr. Brislan should be at ASPC-Phoenix.  As Michael Gottfried acknowledged in his August 9, 2012, letter, "it seems likely that [Mr. Brislan] would be appropriate for and benefit from ongoing outpatient mental health treatment," and we continue to request that ADC provides appropriate and ongoing mental health treatment to Mr. Brislan.

However, ADC staff confirmed to Jennifer Alewelt today that Mr. Brislan is not located at ASPC-Phoenix, as you claim, but continues to be located at ASPC-Eyman, in SMU I.  Please confirm that the retaliation Mr. Brislan has told us he is experiencing at ASPC-Eyman will be addressed.

<u>Other Unaddressed Retaliation Issues</u>

The following list of retaliation issues was relayed to Defendants over six months ago on Aug. 2, 2012, and to date, we have received no response.  If you believe that you have responded on any of these issues, please let me know.

<u>Polson</u>, 187716 – problems receiving medical diet, lapses in receiving prescribed medications, interference with his grievances.
<u>Licci</u>, 150051 – repeated "tossing" of her cell, more often after becoming a named Plaintiff than at any other point in her incarceration.
<u>Smith</u>, 129438 – reported that his mail was given to another inmate, who yelled his mother's name and address to other inmates, possibly putting her at risk.
<u>Swartz</u>, 102486 – ongoing delays in receiving prescribed medications.

In addition, since my January 24 letter, two more of our named Plaintiffs have reported retaliatory behavior to us.  Dustin Brislan has told us that he is not being given his prescribed medication, and when he complained about this, the guard told him that he should "Cry to the ACLU, bitch."  Stephen Swartz also believes that prisoners who were involved in a prior attack against him are now being housed in his unit, despite the presence of those prisoners on his "Do Not House With" list.

Ashley B. Zuerlein, Esq.
February 8, 2013
Page 6


As you know, Paragraph 15 of the Protective Order entered by the Court [Dkt. 140] states: "Defendants shall not to [sic] retaliate against inmates for their participation in this litigation."

Please let me when Defendants would like to schedule the meet and confer on this issue.  I am available anytime on Monday or Tuesday.


Very truly yours,

Matthew B. du Mée


MBD/chw


LEGAL25795789.1

# EXHIBIT 28



|   | Office of the Attorney General | Ashley B. Zuerlein |
|---|---|---|
| **Tom Horne**<br>Attorney General | **State of Arizona**<br>LIABILITY MANAGEMENT SECTION | Assistant Attorney General<br>(602) 542-7620<br>Ashley.Zuerlein@azag.gov |

February 12, 2013

Matthew B. du Mee
Perkins Coie
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
MduMee@perkinscoie.com

      Re:   *Parsons, et al. v. Ryan, et al.*
            USDC CV 12-00601-PHX-NVW (MEA)

Dear Mr. de Mee:

This letter is to follow-up on your February 8, 2013 letter, regarding the named Plaintiffs' legal mail.

**A.    Legal Mail Processing**

Do to the lack of specificity in your correspondence to Defendants regarding Plaintiffs' legal mail, ADC can only take administrative precautions to address your concerns. It cannot take any additional steps with regard to specific staff until Plaintiffs provide information to substantiate and identify their claims that staff has violated ADC's legal mail policy. Thus, a meet and confer does not seem to be productive at this time.

In response to your concerns, I am <u>not</u> acknowledging "repeated" violations of ADC's legal mail policy. I am, however, acknowledging <u>your</u> general allegations and concerns. ADC addresses policy violations on a case-by-case basis when it becomes aware a violation has occurred. ADC staff assigned to the mail room are aware of DO 902, but may need to be redirected on occasion. However, until you specify what violations you believe have occurred, ADC is unable to take any further steps to address your concerns. Specific details such as dates, names and the identity of the sender would be helpful in indentifying the error and redirecting staff. Generalized allegations claiming that a violation has occurred at some point in time are difficult to remedy. In accordance with ADC policy, your client should file an inmate grievance so the specific claim can be better addressed through the inmate grievance process.

*Parsons, et al. v. Ryan, et al.*
February 12, 2013
Page 2 of 4

Further, ADC will not be amending its legal mail policy to classify outside organizations such as the ACLU, PLO, or ACDL as a legal entity. Although correspondence from individual attorneys to an inmate qualifies as legal mail, general advertising, promotional or informational mass mailing is not legal mail. The ACLU is a very large organization. Its correspondence to thirteen individual inmates (Parsons is no longer in custody) can hardly account for a significant portion of its mail to approximately 40,000 ADC inmates.

Moreover, several Plaintiffs have disciplinary histories that have alerted ADC to a potential misuse of the legal mail system. In fact, both Polson and Thomas have been found guilty of misusing ADCs mail system in the past. Brislan, Rodriguez, Verduzco, Thomas, Smith, Gamez, Licci, and Polson have each possessed contraband on one or more occasions. Brislan, Thomas, Smith, Gamez, Polson have all tampered with security. Jenson, Thomas, and Gamaz have provided false information to ADC. These type of behaviors require ADC to consistently inspect inmate cells and mail to prevent violence, escape and harmful drug use.

## B.     Legal Phone Calls

ADC is willing to accommodate legal phone calls pursuant to its legal access policy. DO 902, §902.12. The purpose of the policy is to accommodate inmate legal calls for those who are participating in litigation, such as your clients, while allowing the ADC to maintain daily prison operations. The ADC cannot accommodate the previously requested regularly scheduled legal calls without disrupting prison operations.

Moreover, ADC cannot accommodate legal phone calls at the discretion of inmates as proposed by Plaintiffs. If ADC were to deviate from policy and allow Plaintiffs to dictate the timing and conditions of legal phone calls, it would lead other inmates to believe that ADC was discriminating or retaliating against them based on their ligation. It is very important to ADC that it is consistent in its application of policy to each and every inmate. Further, allowing inmates to dictate the daily functions of a prison, by modifying the schedule set by correctional officers creates a security concern and disrupts the orderly operation of the prison. Therefore, ADC cannot grant Plaintiffs additional privileges based upon their inclusion in this litigation. Should an inmate require a legal phone call, he or she may do so by completing a Legal/Emergency Telephone Call Request form. DO 902, §902.12.

With respect to your concerns that correctional officers "stay within earshot of legal phone calls," ADC policy strictly prohibits officers from listening to legal phone calls. Pursuant to DO 902, "[s]taff shall not listen to the conversation, but shall maintain visual contact of the inmate when the inmate is in an area where security or information may be

compromised." DO 902, §902.12, 1.7. All ADC officers are notified of this policy when they begin their employment. Without details as to when, where, or any of the alleged circumstances, ADC is limited as to the remedial measures it can take. It is probable that officers are merely keeping the applicable inmate within their line of sight. Should this be a concern, please provide sufficient details for ADC to identify the violation and take appropriate remedial steps.

**C.     Jeremy Smith (ADC #129438)/ Jackie Thomas (ADC #211267)**

I am in the process of following up on the allegations of Smith and Thomas relating to their legal property. I do not yet have additional information to provide to you. I can, however, confirm that their legal files have not been sent to Defendants' counsel.

**D.     Dustin Brislan (ADC #164993)**

According to ADC's on-line inmate database, Brislan is currently located at ASPC-Eyman, SMU. I am unaware of any "retaliation" against Brislan. As previously discussed, ADC has taken steps to prevent any errors in the handling of Plaintiffs' legal mail. To the extent that you request a specific treatment, I am unable to accommodate your request. All inmates' medical and mental health care must be determined by a physician or mental health professional. Inmates and attorneys are not properly qualified to dictate treatment. ADC will continue to provide medical or mental health treatment as recommended by the applicable professional.

**E.     Retaliation Allegations**

To the extent Plaintiffs dispute a condition of their confinement, we urge them to file a grievance. This is the most effective manner of resolving inmate concerns. If, as you allege, an inmate is having difficulty filing a grievance, please provide our office with sufficient information, such as the date, issue and name of the officer or inmate impeding access, so that we can properly address the matter.

**1.   Swartz**

With respect to Swartz (ADC #102486), I have confirmed that he is appropriately separated from all of the individuals on his Do Not House With ("DNHW") list. Swartz is currently located at ASPC-Lewis, Rast Unit. This unit is physically constructed in such a way that it essentially has two completely separate housing areas. Neither housing area can interact with the other. Both housing sections have separate lunches, recreation, etc. While an inmate on Swartz's DNHW list is also assigned to Rast Unit, he is housed in a completely separate area and cannot have any interaction with Swartz. Further, Swartz's movement was not "retaliatory." At times, ADC has to relocate inmates to accommodate

*Parsons, et al. v. Ryan, et al.*
February 12, 2013
Page 4 of 4

changes in the inmate population and other security concerns that arise.  None of the Plaintiffs have been subject to movement based upon their inclusion in this case.

### 2.  Licci

I am following-up with regard to Licci's allegations regarding more frequent cell searches.  However, all ADC inmates are subject to regular cell searches to maintain security.  Please note that pursuant to DO 708 "[s]earches are conducted as often as necessary to control contraband and to recover missing property, but never for purposes of punishment or harassment. ... Searches are frequent, unannounced, and irregularly timed."  DO 708, §708.01.  It is likely that any change in the frequency of cell searches is coincidental.  However, as a precautionary measure, ADC is investigating.

### 3.  Smith

With respect to your allegations regarding delivery of Smith's mail, I would assume this was merely a mistake.  Without additional information such as a date, and names of the applicable inmate or officer, there is little ADC is able to do to remedy this alleged violation.  Please provide additional information to allow ADC to appropriately respond.

Please let me know if you still believe that a meet and confer is necessary.

Sincerely,

Ashley B. Zuerlein
Assistant Attorney General

CC:    Tim Bojanowski
       Dan Struck
       Kathy Wieneke
       Dawn Northup

#3024310

# EXHIBIT 29



Matthew B. du Mée
PHONE: (602) 351-8036
FAX:    (602) 648-7028
EMAIL: MduMee@perkinscoie.com

2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
PHONE: 602.351.8000
FAX: 602.648.7000
www.perkinscoie.com

February 13, 2013

**VIA EMAIL**

Ashley B. Zuerlein, Esq.
Arizona Attorney General's Office
1275 West Washington
Phoenix, Arizona  85007-2926

Re:   *Parsons, et al. v. Ryan, et al.*

Dear Ashley:

Thank you for your February 12 reply to my letter.  I am glad Defendants are participating in a meet-and-confer tomorrow, because your most recent letter seems to have moved us further away from resolution of several of the issues, as noted below.  A meet and confer will allow us to move these time-sensitive issues towards an expeditious resolution.

Legal Mail Processing

In your February 5 letter, you admitted that "[i]t appears that there have been issues identifying your legal correspondence as 'legal mail.'"  You stated that "[i]n the incidents you have identified, it appears that the correspondence addressed to Plaintiffs was not readily identifiable to staff as legal mail."  Now, you claim that I have not in fact identified incidents, despite your February 5 statement to the contrary, and that you are unaware of "what violations [I] believe have occurred," despite the fact that we provided you with the specific prisoners whose legal mail from our organizations has been interfered with and the approximate dates.  *See* Nov. 29 letter (noting that Mr. Brislan's mail was being "routinely opened outside of his presence").  Many of these claims have

Ashley B. Zuerlein, Esq.
February 13, 2013
Page 2

been ignored by Defendants' counsel for months and obtaining further information could be difficult.

One incident, however, can be verified. In my letter on January 24th, I wrote to you that Joshua Polson had reported that his mail was interfered with. This was apparently one of the incidents that you claimed on February 5th was excusable, because the correspondence "was not readily identifiable to staff as legal mail." I immediately took steps to investigate your claim, and have now procured the original envelope from Mr. Polson. The scan of the attached envelope plainly indicates that it is legal mail. In fact, the envelope was stamped both front and back as "LEGAL MAIL." We require an explanation as to what in your investigation led you to conclude that this correspondence was "not readily identifiable to staff as legal mail," and what steps you will take to ensure this does not happen again.

You also state that ADC has previously disciplined some Plaintiffs for claimed misuse of the mail system, and proceed to recite which named plaintiffs have which disciplinary infractions on their record. Previous disciplinary infractions are irrelevant to an inmate's right to properly handled legal mail—legal mail is still screened for contraband. At best, this argument is a non sequitur. At worst, this argument suggests exactly the type of *ad hoc* approach to the policy that is apparently being practiced by some ADC staff. As you yourself stated, it is "very important to ADC that it is consistent in its application of policy to each and every inmate." DO 902 contains no exceptions for inmates with certain disciplinary histories—legal mail is always to be opened in the inmate's presence. And regardless of the volume of mail sent by organizations like the ACLU, mail marked "Legal Mail" on the envelope must be treated accordingly.

As you admit, mail room staff "may need to be redirected on occasion." We require information regarding what steps Defendants will take to ensure that correspondence from Plaintiffs' counsel will be treated properly in the future.

Legal Phone Calls

Your letter fails to respond to our concerns that an inmate is only granted a legal call at the discretion of the officers, and that those officers have been inappropriately and inconsistently denying legal calls. Therefore, we can only assume that you acknowledge that the current policy makes our named plaintiffs' rights to a legal call hinge upon the

Ashley B. Zuerlein, Esq.
February 13, 2013
Page 3

discretion of ADC staff, and inappropriately requires our named plaintiffs to divulge the nature of their confidential concern in order to convince staff that a call is justified.

Your concerns over possible "disruption" ignore the plain statement of DO 902.12, section 1.5, which only allows the denial or suspension of a legal call "provided that an effective method of legal communication remains available to the inmate." Previously, you allowed for the possibility that legal calls could be made if "urgent," but you now appear to have backtracked on that position. Your shifting approach on this issue proves our point—the policy is vague and inconsistent, and it is being applied inconsistently, possibly in a retaliatory matter. If Defendants' counsel cannot determine what concerns would justify a legal phone call, how are ADC staff supposed to properly interpret the policy?

You also implicitly grant that this policy makes it impossible to put together many of the necessary discovery responses without a legal visit, contrary to what Mr. Struck has argued in the past.

I spoke with Mr. Polson on Monday and he confirmed that the COIII arranging that particular call was outside of the room, out of earshot. However, Mr. Polson stated that he had been housed under eleven other COIIIs, and all eleven of them stayed in the room during his legal calls. Most were within arm's length, and all were close enough to hear his side of the conversation. Although COIII Theodore is properly following policy, I think you would agree that one out of twelve is an unacceptable rate of compliance, and at a minimum, demonstrates a widespread misunderstanding of the policy. We require information regarding what steps Defendants will take to ensure that inmates' legal calls will be treated properly in the future.

<u>Legal Files</u>

Thank you for investigating Mr. Smith's and Mr. Thomas' claims regarding their legal files. Please let me know the results of your investigation. Thank you for confirming that Defendants' counsel have not been given any part of the inmates' legal files.

Ashley B. Zuerlein, Esq.
February 13, 2013
Page 4

<u>Dustin Brislan</u>

In my last letter, I noted that "Dustin Brislan has told us that he is not being given his prescribed medication, and when he complained about this, the guard told him that he should 'Cry to the ACLU, bitch.'" In response, you simply state that "I am unaware of any 'retaliation' against Brislan." Please clarify whether you would consider the behavior complained of to be "retaliation." Please also clarify what investigation, if any, you conducted before making this statement.

You also stated that I was requesting a specific course of treatment. Mr. Brislan's retaliation complaint is not seeking a specific course of treatment. He is seeking to have his prescribed medications properly delivered by staff, and is instead apparently being retaliated against due to his involvement in this case. We require confirmation that you have taken steps to ensure that Mr. Brislan's medications are being properly delivered.

<u>Stephen Swartz</u>

Thank you for confirming that Mr. Swartz is separated from the inmates on his DNHW list. I appreciate you looking into this matter. However, you did not address Mr. Swartz's other serious concern—the delays in receiving his prescribed medications. We require confirmation that you have taken steps to ensure that Mr. Swartz's medications are being properly delivered.

<u>Desiree Licci</u>

Thank you for investigating the frequency of Ms. Licci's cell searches. Please let me know the results of ADC's investigation into this matter.

<u>Jeremy Smith</u>

You stated that you did not have enough information on this incident, which we first reported to Defendants' counsel over six months ago. Here are additional details. On June 28, 2012, after mail was passed out, another inmate (who presumably got a hold of Mr. Smith's mail) called out his name and number, and then Mr. Smith's mother's name and address. Another inmate then yelled out some kind of threat against his mother. He asked to see the supervisor but said nothing was done. Mr. Smith said this happened multiple times.

Ashley B. Zuerlein, Esq.
February 13, 2013
Page 5


<u>Joshua Polson</u>

I spoke with Mr. Polson on Monday and he complained of continued interference with his medications. Please confirm that you have taken steps to ensure that Mr. Polson's medications are being properly delivered.

Mr. Polson also is reporting that in the last week, his medical diet has been denied by kitchen staff. He feels that this may be retaliatory behavior. Mr. Polson also reports that he has written informal complaints regarding these issues but is getting no response. Please confirm that you have taken steps to ensure that Mr. Polson's medical diet is being properly delivered.

To summarize, the issues requiring discussion at tomorrow's meet-and-confer are:

- The proper processing of legal mail, including any investigation you have made into the matter and the steps being taken to ensure proper handling in the future

- Proper handling of legal calls

- Mr. Swartz' medication

- Mr. Brislan's medication

- Mr. Polson's medication and medical diet

Very truly yours,

Matthew B. du Mée

MBD/chw
Enclosures


Copy with enclosures sent via
  email to All Counsel of Record

LEGAL25831867.1



**PRISON LAW OFFICE**
Donald Specter - Director
General Delivery
San Quentin, California 94964-0001

LEGAL MAIL

Joshua Polson
187716
ASPC - Lewis\ Rast
P.O. Box 3600
Buckeye, AZ 85326

L3Z
ZB8



US POSTAGE

ZIP 94901
02   1W
0001362914

LEGAL MAIL

LAW OFFICE

pecter - Director
ral Delivery
California 94964-0001

LEGAL MAIL

Joshua Polson
1877146
ASPC - Lewis\ Rast
P.O. Box 3600
Buckeye, AZ 85326

C 32
2 B 8



U.S. POSTAGE >> PITNEY BOWES

ZIP 94901
02 1W
0001382914 JAN 17 201

$ 001.9C

LEGAL MAIL

# EXHIBIT 30



To:
Cc:
Bcc:
Subject:   Meet and Confer, 2/14/13

**From:** Zuerlein, Ashley [mailto:Ashley.Zuerlein@azag.gov]
**Sent:** Monday, February 25, 2013 4:16 PM
**To:** 'James Lyall'
**Cc:** Parsons Team; Gottfried, Michael; Rand, Lucy; 'Fathi, David'; 'jalewelt@azdisabilitylaw.org'; 'Corene Kendrick'; 'cnmitchell@jonesday.com'; 'mdumee@perkinscoie.com'
**Subject:** RE: Meet and Confer, 2/14/13

Dear Mr. Lyall:

I believe that the issues you raise have already been addressed by Defendants.

As an initial matter, Defendants have repeatedly addressed Plaintiffs' general legal mail issues. Defendants have explained that a "legal mail" stamp itself does not qualify correspondence as legal mail.  It does, however, alert mailroom staff that the correspondence may qualify as legal mail.  Please review DO 902, Inmate Legal Access to the Courts. DO 902 applies to all inmates equally.  No exceptions will be made for the PLO, ACLU, or any other organization.  Legal mail is defined as "[a]ny letters to or from an inmate's **attorney**… or to or from a judge or to or from a court of law."  DO 902.  As I have previously explained, ADC has consulted with mailroom staff regarding the treatment of the named Plaintiffs legal mail.  I have provided a list of the attorneys representing Plaintiffs to mail staff in order to assist them in identifying your correspondence.

ADC acknowledges that correspondence between the named Plaintiffs and Plaintiffs' counsel is entitled to an attorney-client privilege.  However, when the PLO or ACLU send correspondence to an ADC inmate explicitly stating that they do not represent and have no intention of representing the inmate, there is no attorney-client relationship. I do not see a need to discuss this any further.  All mail will be treated according to DO 902.

## I.        Brislan

With respect to Mr. Brislan, Plaintiffs have alleged that at some point he was unable to make legal phone calls, and that "some" of his legal mail was "never received by co-counsel or was returned to him having been opened."  Again, based on discussion with ADC's mail staff, this is not the case.  Any further investigation requires additional information regarding any alleged violations such as when mail was opened and who it was addressed to.

Mike Gottfried has already responded to allegations that Mr. Brislan is not receiving appropriate mental health treatment.  I am in the process of obtaining an updated copy of Mr. Brislan's medical and mental health records.  They will be produced upon receipt.

## II.        Licci

According to Licci, her legal mail has been "opened outside her presence and experiences delays in receiving legal mail from her attorneys.  She also reports having her cell 'tossed' several times in recent months."  (August 2, 2102 Correspondence to Struck from Donald Specter).  As previously discussed, Plaintiffs' general concerns have been addressed with mailroom staff.  If Ms. Licci continues to have issues with her legal mail, please request that she file a grievance stating the date of the correspondence and who it was from.  If possible, please also have her include the name of the officer delivering the mail.

With respect to having her cell "tossed," on its face this does not appear to be retaliation.  Ms. Licci appears to currently be employed with ACI and has previously been found to be in possession of contraband.  Due to the nature of their employment, inmates working with ACI are frequently searched.  There is nothing unusual about cell searches within prison.  I have, however, requested that ADC locate any documentation available regard her cell searches.  I have not yet received this information.

### III.      Swartz

Mr. Swartz appears to allege delays in receiving prescribed medications and discontinuance of mental health prescriptions.  Please see Mr. Swartz's medical and mental health records produced on February 22, 2013.

### IV.      Polson

According to my records, you are alleging that Polson was having continued problems receiving a medical diet.  On February 22, 2013, I produced medical records for Mr. Polson indicating that he has had a dental, mechanical soft diet card since October 2012.

ADC has investigated your February 13, 2013 allegation, that correspondence from Perkins Coie to Mr. Polson dated January 24, 2013, was not treated as legal mail.  This allegation has been found to be incorrect.  On February 1, 2013, Mr. Polson signed for legal correspondence from Perkins Coie.  This letter was appropriately treated as "legal mail."  Please see attached legal mail log.

### V.      Smith

On August 2, 2012 you report that "on June 28, 2012, [Mr. Smith's] incoming mail was given to another inmate who called out his name, his mother's name, and her address; another inmate then yelled out a threat against his mother."  I am unclear on what you would like ADC to do with respect to these allegations.  While ADC seeks to prevent these types of incidents, it is unable to control all inmate behavior.  If Mr. Smith feels that his life is in danger, he can report it to any correctional officer, who will take appropriate steps to ensure his safety. ADC is not in the position to provide security for Mr. Smith's mother. If you feel she is in danger, I would recommend contacting law enforcement authorities.

### VI.      Grievances

While I do not agree with your interpretation of defense counsels' prior statements to the effect that Defendants are unable to "know what's really going on" in the prisons, I am not going to engage in pity bickering.  The PLRA requires that all inmates seeking to file a lawsuit exhaust their administrative remedies through the grievance process.  It is the most efficient method of addressing inmate complaints.  Please use the inmate grievance process for any medical or non-medical issues that may arise.  This case is currently limited to whether or not ADC is providing constitutional medical care to the named plaintiffs.  This case is not the appropriate venue for your legal access claims.  Any challenge to ADC's legal access policies should be brought in a separate lawsuit.

Ashley Zuerlein
Assistant Attorney General
Office of the Attorney General
Liability Management Section
1275 W. Washington
Phoenix, Arizona 85007
Direct: (602) 542-7620
Fax: (602) 542-7670
Ashley.Zuerlein@azag.gov

The information contained in this e-mail is privileged and confidential, intended only for the use of specific individuals and/or entities to which it is addressed.  If you are not one of the intended recipients, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you receive this communication in error, please immediately notify the sender by return e-mail.  Thank you.

**From:** James Lyall [mailto:jlyall@acluaz.org]
**Sent:** Friday, February 22, 2013 4:26 PM
**To:** Ashlee Fletcher; Zuerlein, Ashley
**Cc:** Parsons Team; Gottfried, Michael
**Subject:** RE: Meet and Confer, 2/14/13

Ashley,

To follow up on a few of the points you raise below:

1)   In the meet and confer, Defendants stated that our clients' best recourse for remedying acts of retaliation is to file grievances, given Defendants stated inability to "know what's really going on" in the prisons.  Now you are requesting "documentation" and "additional information…in order to adequately investigate."  We do not understand what documentation or additional information you believe is necessary for you to investigate the specific allegations of retaliation involving Plaintiffs Brislan, Licci, Swartz, Polson, and Smith we've previously described to you.  Please clarify what exactly is lacking in the information provided in our prior correspondence that impedes your ability to investigate those allegations.

2)   Again, please clarify whether any of the investigations we requested in our previous

correspondence regarding retaliation against Plaintiffs Brislan, Licci, Swartz, Polson, and Smith have been or will be initiated, and what if any findings you have made.

3)   Thank you for clarifying your position that attorney-client privilege attaches to our correspondence with putative class members.

4)   Please confirm that any mail from our offices marked "legal mail" – as all outgoing mail to our clients is – will be treated as such in the future.

Please let me know if you have any questions.

Thanks.
James Duff Lyall
*Staff Attorney*
ACLU of Arizona
P.O. Box 17148
Phoenix, AZ 85011-0148
Tel: 602-773-6001
Fax: 602-650-1376
jlyall@acluaz.org
www.acluaz.org



**Because Freedom Can't Protect Itself**

PRIVACY AND CONFIDENTIALITY STATEMENT:  This e-mail message and any attachments are intended only for the use of the addressee(s) named above and may contain information that is privileged and confidential.  If you are not the intended recipient, any dissemination, distribution, or copying is strictly unauthorized and prohibited.  If you received this e-mail message in error, please immediately notify the sender by replying to this e-mail message or by telephone.  Thank you.

**From:** Ashlee Fletcher [mailto:AFletcher@swlfirm.com]
**Sent:** Tuesday, February 19, 2013 8:12 AM
**To:** James Lyall; Ashley Zuerlein
**Cc:** Parsons Team; Michael E. Gottfried
**Subject:** RE: Meet and Confer, 2/14/13

James,

We want to clarify some inaccuracies in your correspondence of February 14, 2013 with respect to the meet and confer which took place earlier in the day.

**Defendants' production of medical records of deceased prisoners**

Defendants also agreed, upon a case-by-case basis, to produce additional documents should they be

reasonable and necessary.

**Plaintiffs' letter re mail interference/access to legal calls/retaliation**

Defendants never stated that  an "attorney-client relationship" did not  exist between non-plaintiff putative class members; rather, we stated if Plaintiffs send mail to any inmate, that is not properly designated as "legal mail", it will not be considered legal mail.  Simply because an envelope is from the ACLU or the Prison Law Office, does not automatically make it legal mail or create an attorney-client relationship.  Defendants also recommend Plaintiffs identify their correspondence as coming from an attorney and not a "director" (such as the envelope Plaintiffs attached to their February 13, 2013 correspondence).  Defendants also recommend that Plaintiffs do not request "general delivery" on their envelopes.  Therefore, we do not agree that an "impasse" exists and suggest that it would not be wise to bother Judge Wake with this issue.

Additionally, with regard to legal phone calls, the location and distance between ADC officers and inmates during legal phone calls depends upon circumstances, taking into account all security and administrative matters.  More importantly, Plaintiffs have not identified any current issue with respect to ADC officers listing to legal phone calls.

Plaintiffs have not provided any documentation to support any of the "retaliatory" acts they have alleged.  Defendants need additional information from plaintiffs in order to adequately investigate these allegations.   We do wish to note, though, that there are often unfounded allegations of retaliation which occur during the course of inmate generated litigation.   Inmate litigants tend to associate aspects of prison that they do not care for, such as cell searches, to the fact that they have a lawsuit or multiple lawsuits pending.   Although we suspect that this is the case in the instances you have notified us about, we will investigate provided that you submit to us enough information to be able to do so.

Finally, Plaintiffs expressed their intention to file three discovery disputes with the court as a result of the meet-and-confer. One with regard to legal mail issues, one with regard to legal phone call issues, and one regarding alleged "retaliatory" conduct by ADC staff.  None of these issues are discovery related, or related to the allegations in Plaintiffs' Complaint.   Moreover, we do not believe that there is actually a dispute to take to the judge.  Thus, a discovery dispute is completely inappropriate.



STRUCK WIENEKE & LOVE
3100 West Ray Road, Suite 300   Chandler, Arizona 85226

**Ashlee B. Fletcher**
Attorney
Direct: (480) 420-1631
afletcher@swlfirm.com
www.swlfirm.com

**From:** James Lyall [mailto:jlyall@acluaz.org]
**Sent:** Thursday, February 14, 2013 1:17 PM
**To:** Ashley Zuerlein
**Cc:** Parsons Team; Michael E. Gottfried
**Subject:** Meet and Confer, 2/14/13

Counsel,

This is to memorialize our discussion in this morning's meet-and-confer.  Please let me know if this does not reflect your recollection of our discussion in any way, or if you have anything to add or changes to suggest.

**Defendants' production of medical records of deceased prisoners**

> -Counsel for Plaintiffs agreed to Defendants proposal to produce the requested files up to 1 year prior to death, except where Plaintiffs identify prisoners for whom they need additional records
> -When Plaintiffs do require a prisoners' medical files beyond the 1 year prior to death, Defendants will produce those records in a timely manner; Defendants agreed that ADC's Carol Pearson would likely be available to work on production, and that the transition to Corizon would not result in significant delays in production

**-Defendants' supplemental production of Plaintiffs' medical files**

> -Counsel for Defendants confirmed Carol Pearson is working on supplementing production of named plaintiffs' medical files, from early March 2012 up to the present (ie, medical file documents from approximately the past 11 months)

**-Plaintiffs' medical releases for outside providers**

> -Plaintiffs reported having sent file authorization forms, along with requests for outside provider information, to all plaintiffs.  Counsel for Plaintiffs reported recently receiving approximately 6 authorizations back.  Plaintiffs reported some delay in the case of plaintiff Polson attributable to delays in mail and legal call procedures.  Plaintiffs agreed to forward authorizations and provider information to Defendants as they are received, beginning today.

**-Plaintiffs' preservation depositions**

> -Defendants objected to Plaintiffs' proposed two (2) preservation depositions on the grounds that ADC health care staff reported both inmates were "stable."  Defendants stated they would have to review the medical files before making a determination as to the necessity of preservation depositions.

**-Plaintiffs' letter re mail interference/access to legal calls/retaliation**

> -Plaintiffs repeated their concerns regarding reports of ADC staff improperly opening Plaintiffs' legal mail.  Defendants repeated their position that such mail may not have been properly marked as legal mail.  Plaintiffs explained that all outgoing legal mail sent by counsels' organizations is clearly marked as such.

-Plaintiffs pointed to a recent example, an envelope to Plaintiff Polson's that was improperly opened outside his presence despite being clearly marked as legal mail.  Defendants agreed to investigate.

-Counsel for Defendants said ADC treats mail that is from "an attorney, judge, or court" as legal mail.  Defendants stated that some mail, such as "advertising", from ACLU and other legal services organizations is not legal mail.  Defendants stated that mail to non-plaintiff putative class members is not legal mail because there is "no attorney-client relationship."  Plaintiffs disagreed.  Both sides agreed we are at an impasse, Plaintiffs to draft one-page dispute for the court.

-Plaintiffs repeated concerns that ADC staff are not allowing for private legal calls outside the presence of staff.  Defendants stated they needed more specific information.  Defendants will not instruct ADC staff that they cannot be in the same room as inmates during legal calls.

-Plaintiffs requested updates on reports of retaliation against multiple named plaintiffs, as well as continued delays in medical care.  Plaintiffs repeated requests for Defendants to investigate.  Defendants stated that Plaintiffs should file grievances for medical problems and retaliation claims.  Plaintiff expressed concerns regarding the efficacy of the grievance process and noted that the protective order prohibits retaliation against plaintiff prisoners.  Both sides agreed we are at an impasse.

If you feel I have missed anything or have any corrections to make, please contact me immediately.  Thank you.

James Duff Lyall
*Staff Attorney*
ACLU of Arizona
P.O. Box 17148
Phoenix, AZ 85011-0148
Tel: 602-773-6001
Fax: 602-650-1376
jlyall@acluaz.org
www.acluaz.org



**Because Freedom Can't Protect Itself**

PRIVACY AND CONFIDENTIALITY STATEMENT:  This e-mail message and any attachments are intended only for the use of the addressee(s) named above and may contain information that is privileged and confidential.  If you are not the intended recipient, any dissemination, distribution, or copying is strictly unauthorized and prohibited.  If you received this e-mail message in error, please immediately notify the sender by replying to this e-mail message or by telephone.  Thank you.

This electronic mail transmission contains information from the law firm

Struck Wieneke & Love, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 420-1600. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

# EXHIBIT 31



Perkins
Coie

2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
PHONE: 602.351.8000
FAX: 602.648.7000
www.perkinscoie.com

Matthew B. du Mée
PHONE: (602) 351-8036
FAX:   (602) 648-7028
EMAIL: MduMee@perkinscoie.com

March 7, 2013

**VIA EMAIL**

Ashley B. Zuerlein, Esq.
Arizona Attorney General's Office
1275 West Washington
Phoenix, Arizona  85007-2926

> **Re:**   ***Parsons, et al. v. Ryan, et al.***

Dear Ashley:

Joshua Polson (ADC # 187716) has reported further incidents of retaliation.  Mr. Polson reports the following:

- Staff continues to deny Mr. Polson his prescribed medications for his mental health issues.  On March 4th, Mr. Polson reported that he had not received his prescribed medications at the 3 AM pill call for the previous eight days.  Mr. Polson has submitted HNRs on this issue before and the problem has not been addressed.  We have repeatedly raised this issue with Defendants and have received no response.

- Mr. Polson continues to be denied his medical diet by staff.

- Mr. Polson was apparently involved in an altercation in the chow hall on or around February 17th.  In that incident, he was punched repeatedly by a guard, who stated that Mr. Polson should "tell this to your lawyer."

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DALLAS · DENVER · LOS ANGELES · MADISON · NEW YORK
PALO ALTO · PHOENIX · PORTLAND · SAN DIEGO · SAN FRANCISCO · SEATTLE · SHANGHAI · TAIPEI · WASHINGTON, D.C.

Perkins Coie LLP

Ashley B. Zuerlein, Esq.
March 7, 2013
Page 2

- After the incident, Mr. Polson twice attempted to send legal mail to me through the legal mail system in the following week, and neither piece has reached me.  Mr. Polson believed that his legal mail was being interfered with, and therefore attempted to send a communication to me via the regular mail system on February 28th.  That correspondence arrived on March 6th.

- Mr. Polson has attempted to submit various grievances but is being told that no grievance forms are available.  His inability to obtain grievance forms prevents him from raising these issues through the traditional channels.

Obviously, these are serious, time-sensitive allegations, and may in part stem from Defendants' failure to address our earlier reports regarding Mr. Polson's medication and misconduct by staff related to Mr. Polson.  Retaliation against a named plaintiff is prohibited by the Protective Order, as well as by applicable law.  Please look into these claims of retaliation and let me know what has been done to address this situation.  Please update me on your progress by **Monday, March 11th.**

Very truly yours,

Matthew B. du Mée

MBD/chw

Copy with enclosures sent via
  email to All Counsel of Record

LEGAL26013323.1

# EXHIBIT 32



Subject:
RE: Time Sensitive: Parsons v. Ryan: 3/7/13 du Mee letter to Ashley Zuerlein

From:
Zuerlein, Ashley
03/21/2013 11:17 AM

To:
'du Mee, Matthew B. (Perkins Coie)', Rand, Lucy, Wendt, Clair (Perkins Coie), Ratter, Barbara, Jordan, Colleen, Johnson-Joksch, Geneva, Ryan, Hillary, Watanabe, Katherine, Gottfried, Michael, 'Struck Wieneke Love', OQuinn, Susan, 'Ajmel Quereshi', 'Alison Hardy ', 'Amy Fettig ', 'Asim Varma ', Barr, Daniel (Perkins Coie), Brookman, Stephen A. (Perkins Coie), 'Caroline Mitchell', 'Corene Kendrick ', 'Daniel Pochoda', 'David C. Fathi ', 'Donald Specter', Eidenbach, Kirstin (Perkins Coie), Freouf, Delana (Perkins Coie), Gerlicher, Amelia Morrow (Perkins Coie), Gray, John H. (Perkins Coie), 'James Duff Lyall', 'Jennifer Alewelt ', 'Jennifer Messina', 'John Laurens Wilkes', 'Kamilla Mamedova', 'Kelly J. Flood ', Lawson, Stephanie (Perkins Coie), Leach, Kaye (Perkins Coie), 'Margaret Landsborough', Mercier, Marla (Perkins Coie), Murphy, Shawne (Perkins Coie), Neilson, Sharon (Perkins Coie), 'Nobuyo Breen', 'Pat Boritza', Podsiadlik, Nicholaus A. (Perkins Coie), 'R. Scott Medsker', 'Sara Norman ', 'Sarah Kader', 'Sarah Rauh ', 'Sophia Calder?n ', Stam, Bea (Perkins Coie)

Cc:
"Gottfried, Michael", "Rand, Lucy"
Show Details

Counsel:

ADC is not interfering with your communication.  Officers are merely seeking to deliver legal mail to you or your clients.  ADC cannot force Polson to communicate with you if he does not wish to do so.  If Polson believes he is having a legal mail or phone call issue, please instruct him to file a grievance.

Ashley Zuerlein
Assistant Attorney General
Office of the Attorney General
Liability Management Section
1275 W. Washington
Phoenix, Arizona 85007
Direct: (602) 542-7620
Fax: (602) 542-7670
Ashley.Zuerlein@azag.gov

The information contained in this e-mail is privileged and confidential, intended only for the use of specific individuals and/or entities to which it is addressed.  If you are not one of the intended recipients, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you receive this communication in error, please immediately notify the sender by return e-mail.  Thank you.

**From:** du Mee, Matthew B. (Perkins Coie) [mailto:MduMee@perkinscoie.com]
**Sent:** Thursday, March 21, 2013 10:02 AM
**To:** Zuerlein, Ashley; Rand, Lucy; Wendt, Clair (Perkins Coie); Ratter, Barbara; Jordan, Colleen; Johnson-Joksch, Geneva; Ryan, Hillary; Watanabe, Katherine; Gottfried, Michael; 'Struck Wieneke Love'; OQuinn, Susan; 'Ajmel Quereshi'; 'Alison Hardy '; 'Amy Fettig '; 'Asim Varma '; Barr, Daniel (Perkins Coie); Brookman, Stephen A. (Perkins Coie); 'Caroline Mitchell'; 'Corene Kendrick '; 'Daniel Pochoda'; 'David C. Fathi '; 'Donald Specter'; Eidenbach, Kirstin (Perkins Coie); Freouf, Delana (Perkins Coie); Gerlicher, Amelia Morrow (Perkins Coie); Gray, John H. (Perkins Coie); 'James Duff Lyall'; 'Jennifer Alewelt '; 'Jennifer Messina'; 'John Laurens Wilkes'; 'Kamila Mamedova'; 'Kelly J. Flood '; Lawson, Stephanie (Perkins Coie); Leach, Kaye (Perkins Coie); 'Margaret Landsborough'; Mercier, Marla (Perkins Coie); Murphy, Shawne (Perkins Coie); Neilson, Sharon (Perkins Coie); 'Nobuyo Breen'; 'Pat Boritza'; Podsiadlik, Nicholaus A. (Perkins Coie); 'R. Scott Medsker'; 'Sara Norman '; 'Sarah Kader'; 'Sarah Rauh '; 'Sophia Calder?n'; Stam, Bea (Perkins Coie)
**Cc:** Gottfried, Michael
**Subject:** RE: Time Sensitive: Parsons v. Ryan: 3/7/13 du Mee letter to Ashley Zuerlein

Ashley,

Thank you for sending these documents.  These documents confirm that COII Perry is violating ADC policy.

ADC DO 902.11 Sec. 1.7.4 instructs staff to "Return legal correspondence to the sender **only** if the addressee is no longer an inmate, releasee or parolee, in which case the sender shall be advised of this fact." (emphasis added)  COII Perry is returning legal mail for other reasons.  Those actions violate this policy, which presumably was adopted to avoid exactly this type of interference with legal mail.

Moreover, COII Perry is returning mail in violation of policy without any sort of inmate signature, which is contrary to the spirit of other ADC policies that actually allow for refusal of incoming legal communications.  *See* ADOC DO 902.12 Sec. 1.9 ("Staff shall **have the inmate complete** the Legal/Emergency Telephone Call Request form to accept or refuse a legal call from the requesting attorney." (emphasis added)).  I want to stress, however, that unlike the legal call policy, the legal mail policy contains **no exceptions for refusal**.  The legal call policy is merely included to demonstrate that (1) some ADC policies do explicitly envision refusal and (2) in those situations, the inmate's signature is required.

COII Perry's violation of this policy (and decision not to collect an inmate signature on a refusal form) also raises further questions about Mr. Polson's outgoing legal mail.  As I have reported to you, Mr. Polson has had three pieces of outgoing legal mail (sent approximately Feb. 18, Feb. 23, and Mar. 15) that have not reached me.  You have taken the position that you will not look into these claims.  I would hope that COII Perry's violation of ADC policy will prompt you to investigate that report of interference as well.

Please confirm with me by close of business Friday afternoon that you have instructed COII Perry and the staff at Rast Unit to deliver Mr. Polson's legal mail to him, per ADC policy.

~Matthew

---

**From:** Zuerlein, Ashley [mailto:Ashley.Zuerlein@azag.gov]
**Sent:** Thursday, March 21, 2013 9:29 AM
**To:** du Mee, Matthew B. (Perkins Coie); Rand, Lucy; Wendt, Clair (Perkins Coie); Ratter, Barbara; Jordan, Colleen; Johnson-Joksch, Geneva; Ryan, Hillary; Watanabe, Katherine; Gottfried, Michael; 'Struck Wieneke Love'; OQuinn, Susan; 'Ajmel Quereshi'; 'Alison Hardy '; 'Amy Fettig '; 'Asim Varma '; Barr, Daniel (Perkins Coie); Brookman, Stephen A. (Perkins Coie); 'Caroline Mitchell'; 'Corene Kendrick '; 'Daniel Pochoda'; 'David C. Fathi '; 'Donald Specter'; Eidenbach, Kirstin (Perkins Coie); Freouf, Delana (Perkins Coie); Gerlicher, Amelia Morrow (Perkins Coie); Gray, John H. (Perkins Coie); 'James Duff Lyall'; 'Jennifer Alewelt '; 'Jennifer Messina'; 'John Laurens Wilkes'; 'Kamilla Mamedova'; 'Kelly J. Flood '; Lawson, Stephanie (Perkins Coie); Leach, Kaye (Perkins Coie); 'Margaret Landsborough'; Mercier, Marla (Perkins Coie); Murphy, Shawne (Perkins Coie); Neilson, Sharon (Perkins Coie); 'Nobuyo Breen'; 'Pat Boritza'; Podsiadlik, Nicholaus A. (Perkins Coie); 'R. Scott Medsker'; 'Sara Norman '; 'Sarah Kader'; 'Sarah Rauh '; 'Sophia Calder?n '; Stam, Bea (Perkins Coie)
**Cc:** Gottfried, Michael
**Subject:** RE: Time Sensitive: Parsons v. Ryan: 3/7/13 du Mee letter to Ashley Zuerlein

Counsel:

Please find attached ADC documentation reflecting Polson's refusal of legal mail.

Ashley Zuerlein
Assistant Attorney General
Office of the Attorney General
Liability Management Section
1275 W. Washington
Phoenix, Arizona 85007
Direct: (602) 542-7620
Fax: (602) 542-7670
Ashley.Zuerlein@azag.gov

The information contained in this e-mail is privileged and confidential, intended only for the use of specific individuals and/or entities to which it is addressed.  If you are not one of the intended recipients, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you receive this communication in error, please immediately notify the sender by return e-mail.  Thank you.

**From:** du Mee, Matthew B. (Perkins Coie) [mailto:MduMee@perkinscoie.com]
**Sent:** Tuesday, March 19, 2013 10:43 AM
**To:** Zuerlein, Ashley; Rand, Lucy; Wendt, Clair (Perkins Coie); Ratter, Barbara; Jordan, Colleen; Johnson-Joksch, Geneva; Ryan, Hillary; Watanabe, Katherine; Gottfried, Michael; 'Struck Wieneke Love'; OQuinn, Susan; 'Ajmel Quereshi'; 'Alison Hardy '; 'Amy Fettig '; 'Asim Varma '; Barr, Daniel (Perkins Coie); Brookman, Stephen A. (Perkins Coie); 'Caroline Mitchell'; 'Corene Kendrick '; 'Daniel Pochoda'; 'David C. Fathi '; 'Donald Specter'; Eidenbach, Kirstin (Perkins Coie); Freouf, Delana (Perkins Coie); Gerlicher, Amelia Morrow (Perkins Coie); Gray, John H. (Perkins Coie); 'James Duff Lyall'; 'Jennifer Alewelt '; 'Jennifer Messina'; 'John Laurens Wilkes'; 'Kamilla Mamedova'; 'Kelly J. Flood '; Lawson, Stephanie (Perkins Coie); Leach, Kaye (Perkins Coie); 'Margaret Landsborough'; Mercier, Marla (Perkins Coie); Murphy, Shawne (Perkins Coie); Neilson, Sharon (Perkins Coie); 'Nobuyo Breen'; 'Pat Boritza'; Podsiadlik, Nicholaus A. (Perkins Coie); 'R. Scott Medsker'; 'Sara Norman '; 'Sarah Kader'; 'Sarah Rauh '; 'Sophia Calder?n '; Stam, Bea (Perkins Coie)
**Cc:** Gottfried, Michael
**Subject:** RE: Time Sensitive: Parsons v. Ryan: 3/7/13 du Mee letter to Ashley Zuerlein

Ashley,

I was finally able to speak with Mr. Polson yesterday afternoon and he confirmed that he has not been refusing legal mail.  He also reported that he sent another piece of legal mail that has not reached me (mailed March 15th), although a copy of that letter he sent through regular mail has arrived.  This makes three pieces of legal mail that we have sent to Mr. Polson that have not been received, and three pieces of legal mail that Mr. Polson has allegedly sent to us that have not been received.  Mr. Polson is hesitant to file grievances on this issue due to the reported retaliatory conduct of the staff at his current unit and his fear of future retaliation.

I understand that your current position is that you will not look into these issues and will not take any action in response to this report or this ongoing problem, but I wanted to update you on the allegations that have been made nevertheless.  Please let me know if your position changes.

~Matthew

**From:** Zuerlein, Ashley [mailto:Ashley.Zuerlein@azag.gov]
**Sent:** Monday, March 18, 2013 10:56 AM
**To:** du Mee, Matthew B. (Perkins Coie); Rand, Lucy; Wendt, Clair (Perkins Coie); Ratter, Barbara; Jordan,

Colleen; Johnson-Joksch, Geneva; Ryan, Hillary; Watanabe, Katherine; Gottfried, Michael; 'Struck Wieneke Love'; OQuinn, Susan; 'Ajmel Quereshi'; 'Alison Hardy '; 'Amy Fettig '; 'Asim Varma '; Barr, Daniel (Perkins Coie); Brookman, Stephen A. (Perkins Coie); 'Caroline Mitchell'; 'Corene Kendrick '; 'Daniel Pochoda'; 'David C. Fathi '; 'Donald Specter'; Eidenbach, Kirstin (Perkins Coie); Freouf, Delana (Perkins Coie); Gerlicher, Amelia Morrow (Perkins Coie); Gray, John H. (Perkins Coie); 'James Duff Lyall'; 'Jennifer Alewelt '; 'Jennifer Messina'; 'John Laurens Wilkes'; 'Kamilla Mamedova'; 'Kelly J. Flood '; Lawson, Stephanie (Perkins Coie); Leach, Kaye (Perkins Coie); 'Margaret Landsborough'; Mercier, Marla (Perkins Coie); Murphy, Shawne (Perkins Coie); Neilson, Sharon (Perkins Coie); 'Nobuyo Breen'; 'Pat Boritza'; Podsiadlik, Nicholaus A. (Perkins Coie); 'R. Scott Medsker'; 'Sara Norman '; 'Sarah Kader'; 'Sarah Rauh '; 'Sophia Calder?n '; Stam, Bea (Perkins Coie)
**Cc:** Gottfried, Michael
**Subject:** RE: Time Sensitive: Parsons v. Ryan: 3/7/13 du Mee letter to Ashley Zuerlein

As I have previously stated, I believe your description of Defendants' response is inaccurate.  However, it is not productive to continue disputing this issue.  I will pass along your request for a legal telephone call with Mr. Polson, but will not continue investigating Mr. Polsons' allegations regarding his legal mail.  Again, please request that your clients file a grievance with respect to any alleged legal access issues.


Ashley Zuerlein
Assistant Attorney General
Office of the Attorney General
Liability Management Section
1275 W. Washington
Phoenix, Arizona 85007
Direct: (602) 542-7620
Fax: (602) 542-7670
Ashley.Zuerlein@azag.gov


The information contained in this e-mail is privileged and confidential, intended only for the use of specific individuals and/or entities to which it is addressed.  If you are not one of the intended recipients, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you receive this communication in error, please immediately notify the sender by return e-mail.  Thank you.

---

**From:** du Mee, Matthew B. (Perkins Coie) [mailto:MduMee@perkinscoie.com]
**Sent:** Monday, March 18, 2013 10:24 AM
**To:** Zuerlein, Ashley; Rand, Lucy; Wendt, Clair (Perkins Coie); Ratter, Barbara; Jordan, Colleen; Johnson-Joksch, Geneva; Ryan, Hillary; Watanabe, Katherine; Gottfried, Michael; 'Struck Wieneke Love'; OQuinn, Susan; 'Ajmel Quereshi'; 'Alison Hardy '; 'Amy Fettig '; 'Asim Varma '; Barr, Daniel (Perkins Coie); Brookman, Stephen A. (Perkins Coie); 'Caroline Mitchell'; 'Corene Kendrick '; 'Daniel Pochoda'; 'David C. Fathi '; 'Donald Specter'; Eidenbach, Kirstin (Perkins Coie); Freouf, Delana (Perkins Coie); Gerlicher, Amelia Morrow (Perkins Coie); Gray, John H. (Perkins Coie); 'James Duff Lyall'; 'Jennifer Alewelt '; 'Jennifer Messina'; 'John Laurens Wilkes'; 'Kamilla Mamedova'; 'Kelly J. Flood '; Lawson, Stephanie (Perkins Coie); Leach, Kaye (Perkins Coie); 'Margaret Landsborough'; Mercier, Marla (Perkins Coie); Murphy, Shawne (Perkins Coie); Neilson, Sharon (Perkins Coie); 'Nobuyo Breen'; 'Pat Boritza'; Podsiadlik, Nicholaus A. (Perkins Coie); 'R. Scott Medsker'; 'Sara Norman '; 'Sarah Kader'; 'Sarah Rauh '; 'Sophia Calder?n '; Stam, Bea (Perkins Coie)
**Subject:** RE: Time Sensitive: Parsons v. Ryan: 3/7/13 du Mee letter to Ashley Zuerlein


Ashley,

We received a piece of mail late last Monday that was returned to us with the claim that Mr. Polson refused it.  On Tuesday morning, I put in a request with COIII Theodore for a legal call to speak with Mr. Polson about this issue. I still have not been granted a legal call, almost a week after my original request.

Given that we have reported significant, ongoing interference with Mr. Polson's legal mail to you, we are somewhat skeptical that Mr. Polson is in fact refusing properly delivered legal mail.  Because we have not been

permitted to speak with him, and our legal mail is being returned, we have no further information about this problem.

As I'm sure you recall, we previously told you that Mr. Polson's legal mail was improperly opened by staff outside of his presence.  In response, you told me you reviewed the allegations and that "there have been issues identifying your legal correspondence as legal mail."  We then sent a scan of the envelope to you, which was clearly marked as legal mail.  You then reversed course and claimed that the legal mail was delivered properly, doing so on the basis of the representations of the staff that allegedly interfered with the mail.

I also reported to you on March 7th, that Mr. Polson sent two pieces of legal mail, on approximately February 18th and February 23rd, that I have still not received.  Mr. Polson eventually resorted to sending mail to me through the regular mail system on February 28th.  Have you looked into this issue?  If so, please describe what you have done to try to address this problem, which arose before Mr. Polson allegedly began refusing legal mail.

~Matthew

---

**From:** Zuerlein, Ashley [mailto:Ashley.Zuerlein@azag.gov]
**Sent:** Monday, March 18, 2013 8:39 AM
**To:** du Mee, Matthew B. (Perkins Coie); Rand, Lucy; Wendt, Clair (Perkins Coie); Ratter, Barbara; Jordan, Colleen; Johnson-Joksch, Geneva; Ryan, Hillary; Watanabe, Katherine; Gottfried, Michael; 'Struck Wieneke Love'; OQuinn, Susan; 'Ajmel Quereshi'; 'Alison Hardy '; 'Amy Fettig '; 'Asim Varma '; Barr, Daniel (Perkins Coie); Brookman, Stephen A. (Perkins Coie); 'Caroline Mitchell'; 'Corene Kendrick '; 'Daniel Pochoda'; 'David C. Fathi '; 'Donald Specter'; Eidenbach, Kirstin (Perkins Coie); Freouf, Delana (Perkins Coie); Gerlicher, Amelia Morrow (Perkins Coie); Gray, John H. (Perkins Coie); 'James Duff Lyall'; 'Jennifer Alewelt '; 'Jennifer Messina'; 'John Laurens Wilkes'; 'Kamilla Mamedova'; 'Kelly J. Flood '; Lawson, Stephanie (Perkins Coie); Leach, Kaye (Perkins Coie); 'Margaret Landsborough'; Mercier, Marla (Perkins Coie); Murphy, Shawne (Perkins Coie); Neilson, Sharon (Perkins Coie); 'Nobuyo Breen'; 'Pat Boritza'; Podsiadlik, Nicholaus A. (Perkins Coie); 'R. Scott Medsker'; 'Sara Norman '; 'Sarah Kader'; 'Sarah Rauh '; 'Sophia Calder?n '; Stam, Bea (Perkins Coie)
**Subject:** RE: Time Sensitive: Parsons v. Ryan: 3/7/13 du Mee letter to Ashley Zuerlein

Counsel:

I have received information that your client, Inmate Polson, has _refused_ at least three items of legal mail this month.

Ashley Zuerlein
Assistant Attorney General
Office of the Attorney General
Liability Management Section
1275 W. Washington
Phoenix, Arizona 85007
Direct: (602) 542-7620
Fax: (602) 542-7670
Ashley.Zuerlein@azag.gov

The information contained in this e-mail is privileged and confidential, intended only for the use of specific individuals and/or entities to which it is addressed.  If you are not one of the intended recipients, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you receive this communication in error, please immediately notify the sender by return e-mail.  Thank you.

---

**From:** du Mee, Matthew B. (Perkins Coie) [mailto:MduMee@perkinscoie.com]
**Sent:** Monday, March 11, 2013 4:55 PM
**To:** Zuerlein, Ashley; Rand, Lucy; Wendt, Clair (Perkins Coie); Ratter, Barbara; Jordan, Colleen; Johnson-Joksch,

Geneva; Ryan, Hillary; Watanabe, Katherine; Gottfried, Michael; 'Struck Wieneke Love'; OQuinn, Susan; 'Ajmel Quereshi'; 'Alison Hardy '; 'Amy Fettig '; 'Asim Varma '; Barr, Daniel (Perkins Coie); Brookman, Stephen A. (Perkins Coie); 'Caroline Mitchell'; 'Corene Kendrick '; 'Daniel Pochoda'; 'David C. Fathi '; 'Donald Specter'; Eidenbach, Kirstin (Perkins Coie); Freouf, Delana (Perkins Coie); Gerlicher, Amelia Morrow (Perkins Coie); Gray, John H. (Perkins Coie); 'James Duff Lyall'; 'Jennifer Alewelt '; 'Jennifer Messina'; 'John Laurens Wilkes'; 'Kamila Mamedova'; 'Kelly J. Flood '; Lawson, Stephanie (Perkins Coie); Leach, Kaye (Perkins Coie); 'Margaret Landsborough'; Mercier, Marla (Perkins Coie); Murphy, Shawne (Perkins Coie); Neilson, Sharon (Perkins Coie); 'Nobuyo Breen'; 'Pat Boritza'; Podsiadlik, Nicholaus A. (Perkins Coie); 'R. Scott Medsker'; 'Sara Norman '; 'Sarah Kader'; 'Sarah Rauh '; 'Sophia Calder?n '; Stam, Bea (Perkins Coie)
**Subject:** RE: Time Sensitive: Parsons v. Ryan: 3/7/13 du Mee letter to Ashley Zuerlein

Ashley,

I believe you mean the two allegations of retaliation reported by Mr. Polson and Mr. Brislan.

Brislan

Mr. Brislan reports that on second shift, on or about January 22, 2013, Guard Uldrich refused to give Mr. Brislan a prescribed supplement and told Mr. Brislan to "Cry to the ACLU about it, bitch."

Polson

As for the Polson incident, Mr. Polson reported that on February 16, 2013, while in the chow hall, he had difficulty obtaining his medical diet (a problem which we have repeatedly reported). A guard reportedly grabbed Mr. Polson and forced him to the ground. Mr. Polson states that the guard punched him, and in doing so, said "tell this to your lawyer." Mr. Polson had not encountered this guard previously and there was no reason for the guard to know that Mr. Polson was represented.

In connection with this incident, Mr. Polson was written up for assault, so although I do not know the guard's name at this time, this should be a sufficient level of detail to carry out further investigation, as I am sure ADC still has the files related to this recent incident. If you feel additional detail is needed, please let me know.

Will you investigate these two examples of retaliation, or are you telling me that Mr. Polson and Mr. Brislan should simply file grievances?

~Matthew

---

**From:** Zuerlein, Ashley [mailto:Ashley.Zuerlein@azag.gov]
**Sent:** Monday, March 11, 2013 4:36 PM
**To:** du Mee, Matthew B. (Perkins Coie); Rand, Lucy; Wendt, Clair (Perkins Coie); Ratter, Barbara; Jordan, Colleen; Johnson-Joksch, Geneva; Ryan, Hillary; Watanabe, Katherine; Gottfried, Michael; 'Struck Wieneke Love'; OQuinn, Susan; 'Ajmel Quereshi'; 'Alison Hardy '; 'Amy Fettig '; 'Asim Varma '; Barr, Daniel (Perkins Coie); Brookman, Stephen A. (Perkins Coie); 'Caroline Mitchell'; 'Corene Kendrick '; 'Daniel Pochoda'; 'David C. Fathi '; 'Donald Specter'; Eidenbach, Kirstin (Perkins Coie); Freouf, Delana (Perkins Coie); Gray, John H. (Perkins Coie); 'James Duff Lyall'; 'Jennifer Alewelt '; 'Jennifer Messina'; 'John Laurens Wilkes'; 'Kamilla Mamedova'; 'Kelly J. Flood '; Lawson, Stephanie (Perkins Coie); Leach, Kaye (Perkins Coie); 'Margaret Landsborough'; Mercier, Marla (Perkins Coie); Murphy, Shawne (Perkins Coie); Neilson, Sharon (Perkins Coie); 'Nobuyo Breen'; 'Pat Boritza'; Podsiadlik, Nicholaus A. (Perkins Coie); 'R. Scott Medsker'; 'Sara Norman '; 'Sarah Kader'; 'Sarah Rauh '; 'Sophia Calder?n '; Stam, Bea (Perkins Coie)
**Subject:** RE: Time Sensitive: Parsons v. Ryan: 3/7/13 du Mee letter to Ashley Zuerlein

Matthew-

I did not speak to Polson personally. Last Thursday or Friday a correctional officer asked Polson what problems he was having filing grievances. He told the officer that he had previously had problems obtaining carbon copy grievances. He confirmed with the officer that he has had access to grievance forms at Rast Unit. I am told that Polson has been receiving grievance paperwork when requested.

Unfortunately, Inmate Polson has not provided specific information sufficient to allow ADC to investigate the two allegations of "retaliation" identified by Polson. Please request that your clients file a grievance identifying any officers involved. Providing information such as the names of individuals involved, dates and the surrounding circumstances will assist ADC in its investigation and allow ADC to remedy any possible violation.

Ashley Zuerlein
Assistant Attorney General
Office of the Attorney General
Liability Management Section
1275 W. Washington
Phoenix, Arizona 85007
Direct: (602) 542-7620
Fax: (602) 542-7670
Ashley.Zuerlein@azag.gov

The information contained in this e-mail is privileged and confidential, intended only for the use of specific individuals and/or entities to which it is addressed. If you are not one of the intended recipients, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please immediately notify the sender by return e-mail. Thank you.

---

**From:** du Mee, Matthew B. (Perkins Coie) [mailto:MduMee@perkinscoie.com]
**Sent:** Monday, March 11, 2013 4:05 PM
**To:** Zuerlein, Ashley; Rand, Lucy; Wendt, Clair (Perkins Coie); Ratter, Barbara; Jordan, Colleen; Johnson-Joksch, Geneva; Ryan, Hillary; Watanabe, Katherine; Gottfried, Michael; 'Struck Wieneke Love'; OQuinn, Susan; 'Ajmel Quereshi'; 'Alison Hardy '; 'Amy Fettig '; 'Asim Varma '; Barr, Daniel (Perkins Coie); Brookman, Stephen A. (Perkins Coie); 'Caroline Mitchell'; 'Corene Kendrick '; 'Daniel Pochoda'; 'David C. Fathi '; 'Donald Specter'; Eidenbach, Kirstin (Perkins Coie); Freouf, Delana (Perkins Coie); Gerlicher, Amelia Morrow (Perkins Coie); Gray, John H. (Perkins Coie); 'James Duff Lyall'; 'Jennifer Alewelt '; 'Jennifer Messina'; 'John Laurens Wilkes'; 'Kamilla Mamedova'; 'Kelly J. Flood '; Lawson, Stephanie (Perkins Coie); Leach, Kaye (Perkins Coie); 'Margaret Landsborough'; Mercier, Marla (Perkins Coie); Murphy, Shawne (Perkins Coie); Neilson, Sharon (Perkins Coie); 'Nobuyo Breen'; 'Pat Boritza'; Podsiadlik, Nicholaus A. (Perkins Coie); 'R. Scott Medsker'; 'Sara Norman '; 'Sarah Kader'; 'Sarah Rauh '; 'Sophia Calder?n '; Stam, Bea (Perkins Coie)
**Subject:** RE: Time Sensitive: Parsons v. Ryan: 3/7/13 du Mee letter to Ashley Zuerlein

Ashley,

Thank you for the update. I had a few follow-up questions.

Thank you for beginning an investigation into Mr. Polson's medication issues. Please keep me informed on your progress.

I am confused by your response on the grievance issues, as you mentioned that Mr. Polson has "confirmed" that there is not a problem. Did you speak with Mr. Polson regarding the availability of grievance forms? From what I understood from Mr. Polson last week, the unavailability of forms was a current problem that Mr. Polson was having, and the issue was a lack of available forms, not a lack of carbon copies. Please let me know when you (or another ADC employee) spoke to Mr. Polson.

As requested on Thursday, please provide an update on your investigation into two of the most serious reports of retaliation – the "cry to the ACLU" comment to Mr. Brislan regarding the denial of his medication, and the "tell this to your lawyer" comment made in connection with an altercation a guard had with Mr. Polson. Please let me know what steps, if any, you have taken to look into these matters. If you are refusing to look into these matters, please clarify that point.

~Matthew

**From:** Zuerlein, Ashley [mailto:Ashley.Zuerlein@azag.gov]
**Sent:** Monday, March 11, 2013 9:30 AM
**To:** du Mee, Matthew B. (Perkins Coie); Rand, Lucy; Wendt, Clair (Perkins Coie); Ratter, Barbara; Jordan, Colleen; Johnson-Joksch, Geneva; Ryan, Hillary; Watanabe, Katherine; Gottfried, Michael; 'Struck Wieneke Love'; OQuinn, Susan; 'Ajmel Quereshi'; 'Alison Hardy '; 'Amy Fettig '; 'Asim Varma '; Barr, Daniel (Perkins Coie); Brookman, Stephen A. (Perkins Coie); 'Caroline Mitchell'; 'Corene Kendrick '; 'Daniel Pochoda'; 'David C. Fathi '; 'Donald Specter'; Eidenbach, Kirstin (Perkins Coie); Freouf, Delana (Perkins Coie); Gerlicher, Amelia Morrow (Perkins Coie); Gray, John H. (Perkins Coie); 'James Duff Lyall'; 'Jennifer Alewelt '; 'Jennifer Messina'; 'John Laurens Wilkes'; 'Kamilla Mamedova'; 'Kelly J. Flood '; Lawson, Stephanie (Perkins Coie); Leach, Kaye (Perkins Coie); 'Margaret Landsborough'; Mercier, Marla (Perkins Coie); Murphy, Shawne (Perkins Coie); Neilson, Sharon (Perkins Coie); 'Nobuyo Breen'; 'Pat Boritza'; Podsiadlik, Nicholaus A. (Perkins Coie); 'R. Scott Medsker'; 'Sara Norman '; 'Sarah Kader'; 'Sarah Rauh '; 'Sophia Calder?n '; Stam, Bea (Perkins Coie)
**Subject:** RE: Time Sensitive: Parsons v. Ryan: 3/7/13 du Mee letter to Ashley Zuerlein

Dear Counsel,

It is my understanding that medical is looking into Polson's allegations regarding missed prescriptions.  I will let you know when I have additional information.

Our legal access monitor has confirmed that Inmate Polson is able to file grievances.  Polson told his CO III that in the *past* he was not given carbon copy grievance forms.  Polson has confirmed that there has not been a problem with this at Rast unit.  His assigned CO III instructed Polson that if he is given a grievance form, Polson will be given a copy.  He is receiving grievance paperwork when requested.  Please instruct your clients to pursue grievances on any other remaining issues.

Ashley Zuerlein
Assistant Attorney General
Office of the Attorney General
Liability Management Section
1275 W. Washington
Phoenix, Arizona 85007
Direct: (602) 542-7620
Fax: (602) 542-7670
Ashley.Zuerlein@azag.gov

The information contained in this e-mail is privileged and confidential, intended only for the use of specific individuals and/or entities to which it is addressed.  If you are not one of the intended recipients, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you receive this communication in error, please immediately notify the sender by return e-mail.  Thank you.

**From:** du Mee, Matthew B. (Perkins Coie) [mailto:MduMee@perkinscoie.com]
**Sent:** Thursday, March 07, 2013 9:43 PM
**To:** Rand, Lucy; Wendt, Clair (Perkins Coie); Zuerlein, Ashley; Ratter, Barbara; Jordan, Colleen; Johnson-Joksch, Geneva; Ryan, Hillary; Watanabe, Katherine; Gottfried, Michael; 'Struck Wieneke Love'; OQuinn, Susan; 'Ajmel Quereshi'; 'Alison Hardy '; 'Amy Fettig '; 'Asim Varma '; Barr, Daniel (Perkins Coie); Brookman, Stephen A. (Perkins Coie); 'Caroline Mitchell'; 'Corene Kendrick '; 'Daniel Pochoda'; 'David C. Fathi '; 'Donald Specter'; Eidenbach, Kirstin (Perkins Coie); Freouf, Delana (Perkins Coie); Gerlicher, Amelia Morrow (Perkins Coie); Gray, John H. (Perkins Coie); 'James Duff Lyall'; 'Jennifer Alewelt '; 'Jennifer Messina'; 'John Laurens Wilkes'; 'Kamilla Mamedova'; 'Kelly J. Flood '; Lawson, Stephanie (Perkins Coie); Leach, Kaye (Perkins Coie); 'Margaret Landsborough'; Mercier, Marla (Perkins Coie); Murphy, Shawne (Perkins Coie); Neilson, Sharon (Perkins Coie);

'Nobuyo Breen'; 'Pat Boritza'; Podsiadlik, Nicholaus A. (Perkins Coie); 'R. Scott Medsker'; 'Sara Norman '; 'Sarah Kader'; 'Sarah Rauh '; 'Sophia Calder?n '; Stam, Bea (Perkins Coie)
**Subject:** RE: Time Sensitive: Parsons v. Ryan: 3/7/13 du Mee letter to Ashley Zuerlein

Lucy,

Thank you for your email.  The denial of prescribed medication necessary to an inmate's mental health is a very serious and time-sensitive concern.  The nature of this problem led me to ask for an update on the progress of defendants' investigation on Monday.  I am not demanding that the investigation be completed by Monday, but we are very concerned about the treatment of Mr. Polson, and would therefore appreciate an update on the progress of the investigation at that point.

Furthermore, I do not think it is unreasonable to ask defendants to update us on the status of a time-sensitive investigation by the end of day Monday, given that we first reported three of these issues **over seven months ago**.

On August 2, 2012, we raised the following concern with defendants:

"**Joshua Polson, #187716, Lewis-Buckley**

Mr. Polson reports continued problems receiving a medical diet, lapses in receiving his prescribed medications, and interference with his grievances."

We have repeatedly raised these three concerns and defendants have steadfastly refused to address them.  (See attached correspondence.)  The one exception is that Ashley Zuerlein stated that she verified on February 22, 2013, that Mr. Polson has a soft diet card.  We agree that Mr. Polson has a soft diet card.  The problem Mr. Polson reports is a failure of staff to carry out his soft diet.  In fact, the alleged problem in each of these instances is staff mistreatment of Mr. Polson.  Mr. Polson alleges that staff is denying him his prescribed medication, his ordered soft food diet, his access to legal mail, and the grievance forms he needs to report these problems.

In the meet and confer on this issue, defendants' counsel stated that Mr. Polson should use the grievance process, ignoring the allegation that his grievances are being interfered with.

Defendants have had 218 days to investigate three of these alleged retaliatory practices of retaliation.  It is in fact reasonable to ask for an "update on your progress" at the conclusion of two business days from today.

In addition, we have heard nothing from Defendants regarding Mr. Brislan's report that he is being denied his prescribed medication and was told to "cry to the ACLU" when he brought this complaint to the guard.  We first brought this to your attention over a month ago on February 8 (see attached correspondence), and have raised it several times since then, with no result.  Again, over the course of the last month, we would expect some progress to have been made in investigating these concerns.

Please have a member of your office update me on the progress of the investigation into Mr. Brislan's and Mr. Polson's allegations by end of day **Monday, March 11**.  If no investigation has been made into either or both inmates' reports, please let me know at that time.  Thank you!

~Matthew

**Matthew du Mée | Perkins Coie LLP**
2901 North Central Avenue
Suite 2000
Phoenix, AZ  85012-2788
PHONE:  602.351.8036
FAX:  602.648.7028
E-MAIL:  MduMee@perkinscoie.com

---

**From:** Rand, Lucy [mailto:Lucy.Rand@azag.gov]
**Sent:** Thursday, March 07, 2013 5:46 PM
**To:** Wendt, Clair (Perkins Coie); Zuerlein, Ashley; Ratter, Barbara; Jordan, Colleen; Johnson-Joksch, Geneva; Ryan, Hillary; Watanabe, Katherine; Gottfried, Michael; 'Struck Wieneke Love'; OQuinn, Susan; 'Ajmel Quereshi'; 'Alison Hardy '; 'Amy Fettig '; 'Asim Varma '; Barr, Daniel (Perkins Coie); Brookman, Stephen A. (Perkins Coie);

'Caroline Mitchell'; 'Corene Kendrick '; 'Daniel Pochoda'; 'David C. Fathi '; 'Donald Specter'; du Mee, Matthew B. (Perkins Coie); Eidenbach, Kirstin (Perkins Coie); Freouf, Delana (Perkins Coie); Gerlicher, Amelia Morrow (Perkins Coie); Gray, John H. (Perkins Coie); 'James Duff Lyall'; 'Jennifer Alewelt '; 'Jennifer Messina'; 'John Laurens Wilkes'; 'Kamilla Mamedova'; 'Kelly J. Flood '; Lawson, Stephanie (Perkins Coie); Leach, Kaye (Perkins Coie); 'Margaret Landsborough'; Mercier, Marla (Perkins Coie); Murphy, Shawne (Perkins Coie); Neilson, Sharon (Perkins Coie); 'Nobuyo Breen'; 'Pat Boritza'; Podsiadlik, Nicholaus A. (Perkins Coie); 'R. Scott Medsker'; 'Sara Norman '; 'Sarah Kader'; 'Sarah Rauh '; 'Sophia Calder?n '; Stam, Bea (Perkins Coie)
**Subject:** RE: Time Sensitive: Parsons v. Ryan: 3/7/13 du Mee letter to Ashley Zuerlein

Matthew,

We will look into the allegations contained in your letter; however, you e-mail arrived after business hours and based on your deadline to respond, this gives us only one day to investigate.  This is hardly reasonable; therefore, we advise you that we likely will not be able to respond to your letter in the time frame requested.

Sincerely,
Lucy M. Rand,
Assistant Attorney General
**OFFICE OF THE ATTORNEY GENERAL**
Department of Corrections Unit
Liability Management Section
1275 West Washington Street
Phoenix, AZ 85007-2926
(602) 542-1610 Operator
**(602) 542-7683 Direct**
(602) 542-7670 FAX
Lucy.Rand@azag.gov

The information contained in this e-mail message is privileged and confidential, intended only for the use of the specific individuals and/or entities to which it is addressed.  If you are not one of the intended recipients, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you received this communication in error, please immediately notify the sender by return e-mail or call (602) 542-7683.  Thank you.

---

**From:** Wendt, Clair (Perkins Coie) [mailto:CWendt@perkinscoie.com]
**Sent:** Thursday, March 07, 2013 5:20 PM
**To:** Zuerlein, Ashley; Ratter, Barbara; Jordan, Colleen; Johnson-Joksch, Geneva; Ryan, Hillary; Watanabe, Katherine; Rand, Lucy; Gottfried, Michael; Struck Wieneke Love; OQuinn, Susan; Ajmel Quereshi; Alison Hardy ; Amy Fettig ; Asim Varma ; Barr, Daniel (Perkins Coie); Brookman, Stephen A. (Perkins Coie); Caroline Mitchell; Corene Kendrick ; Daniel Pochoda; David C. Fathi ; Donald Specter; du Mee, Matthew B. (Perkins Coie); Eidenbach, Kirstin (Perkins Coie); Freouf, Delana (Perkins Coie); Gerlicher, Amelia Morrow (Perkins Coie); Gray, John H. (Perkins Coie); James Duff Lyall; Jennifer Alewelt ; Jennifer Messina; John Laurens Wilkes; Kamilla Mamedova; Kelly J. Flood ; Lawson, Stephanie (Perkins Coie); Leach, Kaye (Perkins Coie); Margaret Landsborough; Mercier, Marla (Perkins Coie); Murphy, Shawne (Perkins Coie); Neilson, Sharon (Perkins Coie); Nobuyo Breen; Pat Boritza; Podsiadlik, Nicholaus A. (Perkins Coie); R. Scott Medsker; Sara Norman ; Sarah Kader; Sarah Rauh ; Sophia Calder?n ; Stam, Bea (Perkins Coie); Wendt, Clair (Perkins Coie)
**Subject:** Time Sensitive: Parsons v. Ryan: 3/7/13 du Mee letter to Ashley Zuerlein

Dear Ms. Zuerlein and Counsel,

Attached please find Mr. du Mee's letter of today's date to Ms. Zuerlein.

Thank you.

**Clair H. Wendt** | **Perkins Coie** LLP

**LEGAL SECRETARY TO MATTHEW B. DU MEE**

2901 N. Central Avenue

Suite 2000

Phoenix, AZ 85012-2788

PHONE: 602.351.8163

FAX: 602.648.7122

E-MAIL: CWendt@perkinscoie.com

 **Please consider the environment before printing this email. Thank you.**

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department and IRS regulations, we inform you that, unless expressly indicated otherwise, any federal tax advice contained in this communication (including any attachments) is not intended or written by Perkins Coie LLP to be used, and cannot be used by the taxpayer, for the purpose of (i) avoiding penalties that may be imposed on the taxpayer under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or any attachments).

* * * * * * * * * *

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

LEGAL MAIL AND REGULAR MAIL TRANSFER FORM AND LOG

**DATE: 03/05/2013    UNIT TRANSFERRED FROM: COMPLEX MAILROOM    UNIT TRANSFERRED TO: RAST**

**TRANSFERRING OFFICER: COW HARP    RECEIVING OFFICER:                DATE/TIME:**

| ADC # | NAME/LOCATION | I/M SIGNATURE | RETURN ADDRESS |
|-------|---------------|---------------|----------------|
| 129438 | SMITH | | PERKINS COIE<br>2901 N CENTRAL AVENUE STE 2000<br>PHOENIX, AZ 85012-2788 |
| 187716 | POLSON | | PERKINS COIE<br>2901 N CENTRAL AVENUE STE 2000<br>PHOENIX, AZ 85012-2788 |
| 102486 | SWARTZ | Refused 3/5/13 Q 1409 Pur to inc idn | PERKINS COIE<br>2901 N CENTRAL AVENUE STE 2000<br>PHOENIX, AZ 85012-2788 |
| 102486 | SWARTZ | | PERKINS COIE<br>2901 N CENTRAL AVENUE STE 2000<br>PHOENIX, AZ 85012-2788 |
| | | | PERKINS COIE<br>2901 N CENTRAL AVENUE STE 2000<br>PHOENIX, AZ 85012-2788 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**NOTE:** Legal mail will be opened and inspected by **STAFF** in the presence of the inmate in accordance with Department Order 909. Staff shall not read or censor this type of correspondence. Do not open the mail until the inmate signs for it. If the inmate refuses the mail, write the word refused in the signature column and return the mail **UNOPENED** to the Complex Mail Room with a copy of the information report.

# LEGAL MAIL AND REGULAR MAIL TRANSFER FORM AND LOG

**DATE: 03/13/13**  UNIT TRANSFERRED FROM: **COMPLEX MAILROOM**  UNIT TRANSFERRED TO: **RAST**

**TRANSFERRING OFFICER: COII FRANCO**  RECEIVING OFFICER: _____  DATE/TIME: _____

| ADC # | NAME/LOCATION | I/M SIGNATURE | RETURN ADDRESS |
|-------|---------------|---------------|----------------|
| 129438 | SMITH ▮ | ▮▮▮ | PRISON LAW OFFICE DONALD SPECTER, ATTORNEY AT LAW GENERAL DELIVERY SAN QUENTIN, CA 94964-0001 |
| 187716 | POLSON ▮ | I'M refused legal mail #13-232-00425 | PRISON LAW OFFICE DONALD SPECTER, ATTORNEY AT LAW GENERAL DELIVERY SAN QUENTIN, CA 94964-0001 |
| 102486 | SWARTZ ▮ | ▮ | CLERK OF THE UNITED STATES DISTRICT COURT EVO A. DECONCINI COURTHOUSE 405 W CONGRESS STREET STE 1500 TUCSON, AZ 85701-5010 |
| 102486 | SWARTZ ▮ | ▮ | PRISON LAW OFFICE DONALD SPECTER, ATTORNEY AT LAW GENERAL DELIVERY SAN QUENTIN, CA 94964-0001 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**NOTE:** Legal mail will be opened and inspected by **STAFF** in the presence of the inmate in accordance with Department Order 909. Staff shall not read or censor this type of correspondence. Do not open the mail until the inmate signs for it. If the inmate refuses the mail, write the word refused in the signature column and return the mail **UNOPENED** to the Complex Mail Room with a copy of the information report.

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Information Report**

| | |
|---|---|
| Report Number | 13.C32.00425 |
| Report Date | 03/14/2013 |
| Page | 1 of 2 |

| | | | |
|---|---|---|---|
| **To** Whiting | **Title** Sgt | | **Unit** Rast |
| **From** Perry | **Title** COII | | **Unit** Rast |

**Subject**
Legal Mail Refused

### Staff Involved

| Employee Name (Last, First M.I.) Perry | Title COII | Badge Number 4407 |
|---|---|---|
| Employee Name (Last, First M.I.) | Title | Badge Number |

### Intel

| Intelligence Category 1 | | Intelligence Category 2 | |
|---|---|---|---|
| Source Type | Source's Last Name | | Source's ADC Number |

### Inmates Involved

| Inmate Name (Last, First M.I.) Polson, Joshua | ADC Number 187716 | Unit Rast | HU/BED ▮ | Involved As: subject |
|---|---|---|---|---|
| Inmate Name (Last, First M.I.) | ADC Number | Unit | HU/BED | Involved As: |

| Time 1300 | Date 03/13/2013 | Location Rast Mail and Property |
|---|---|---|

### Summary

On 03/13/2013 at 1300 hours while passing out incoming legal mail, inmate Polson, J #187716 refused his legal mail. He stated "I don't care who its from and will not sign for any incoming legal mail ." The legal will be returned to Complex Mail to return to Prison Law offcie Donald Specter Director General delivery California 94964-0001. This report was written by COII Perry 4407 on 03/14/2013 at 0800 hours. End of report.

| Employee's Signature *Perry 4407* | Title COII |
|---|---|

### Action Taken

**Comments/Action Taken**

For documentation purposes Inmate continues to refuse legal mail.

| Employee's Signature *Valerpula · Whiting* | Title Sgt |
|---|---|

| Distribution (check all that apply) | Entered into Database |
|---|---|
| ☐ Lt. Torres (Complex) | By |
| ☐ | Date |

**Information Report Supplemental Sheet**

| Report Number | 13·L32·00425 |
|---|---|
| Report Date | 03/14/2013 |
| Page | 2 of 2 |

| To | Date |
|---|---|
| | 3-15·13 |

**Comments/Action Taken**

| Employee's Signature | Job Title |
|---|---|
| | p. #411 ~ |

| To | Date |
|---|---|

**Comments/Action Taken**

| Employee's Signature | Job Title |
|---|---|

| To | Date |
|---|---|

**Comments/Action Taken**

| Employee's Signature | Job Title |
|---|---|

| To | Date |
|---|---|
| | 3/15/13 |

**Comments/Action Taken**

alumed

| Employee's Signature | Job Title |
|---|---|
| a. Com | CON |

Distribution

105-2

LEGAL MAIL AND REGULAR MAIL TRANSFER FORM AND LOG

DATE: 3/15/2013 TRANSFERRED FROM: CX MAILROOM UNIT TRANSFERRED TO:RAST

TRANSFERRING: ARCHULETA #4284   RECEIVING OFFICER:                    DATE/TIME:

| ADC # | NAME/LOCATION | I/M SIGNATURE | RETURN ADDRESS |
|-------|---------------|---------------|----------------|
| 187716 | POLSON | ~~Received Legal mail @ 1200 hrs , R# 13-2322 - 004S7~~ | PERKINS COIE 2901 N. CENTRAL AVENUE, STE 2000 PHX,AZ 85012-2788 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

NOTE: Legal mail will be opened and inspected by STAFF in the presence of the inmate in accordance with Department Order 909. Staff shall not read or censor this type of correspondence. Do not open the mail until the inmate signs for it. If the inmate refuses the mail, write the word refused in the signature column and return the mail UNOPENED to the Complex Mail Room with a copy of the information report.



**ARIZONA DEPARTMENT OF CORRECTIONS**

**Information Report**

| Report Number | 13·C32·00457 |
|---|---|
| Report Date | 03/15/2013 |
| Page | 1 of |

| | | Title | | Unit | |
|---|---|---|---|---|---|
| To | Whiting | Sgt. | | Rast | |
| From | Perry | Title | CoII. | Unit | Rast |

**Subject:** Refused Legal Mail

**Staff Involved**

| Employee Name (Last, First M.I.) | Title | Badge Number |
|---|---|---|
| Perry, R | COII | 4407 |
| Employee Name (Last, First M.I.) | Title | Badge Number |
| | | |

**Intel**

| Intelligence Category 1 | | Intelligence Category 2 | |
|---|---|---|---|
| | | | |

| Source Type | Source's Last Name | Source's ADC Number |
|---|---|---|
| | | |

**Inmates Involved**

| Inmate Name (Last, First M.I.) | ADC Number | Unit | HU/BED | Involved As: |
|---|---|---|---|---|
| Polson, J | 187716 | Rast | ▮▮▮▮ | Subject |
| Inmate Name (Last, First M.I.) | ADC Number | Unit | HU/BED | Involved As: |
| | | | | |

**Summary**

| Time | Date | Location |
|---|---|---|
| 1000 hrs | 03/15/2013 | Rast Mail and Property |

Summary On 03/15/2013 at 1000 hrs I had legal mail for inmate Polson #187716 from Perkins Coie 2901 N Central Avenue Ste 2000 Pnx AZ 85012-2788. When I advised the inmate of his incoming legal mail he asked who is it from, I told him from Perkins Coie at this time he verbally advised me that he was refusing his legal mail. This report was written by CoII Perry #4407 on 03/15/2013 at 1100 hrs. End of report.

| Employee's Signature | Title |
|---|---|
| Perry #4407 | COII |

**Action Taken**

Comments/Action Taken

For documentation & tracking. Inmate Polson continues to refuse legal mail.

| Employee's Signature | Title |
|---|---|
| Valenzuela-Whiting | Sgt |

**Distribution** (Check all that apply)

| | |
|---|---|
| ☐ _____ | Entered into Database |
| ☐ _____ | By _____ |
| ☐ _____ | Date _____ |

105-2
8/6/09

# LEGAL MAIL AND REGULAR MAIL TRANSFER FORM AND LOG

**DATE:** 2-15-2013 **TRANSFERRED FROM:** C9 MAILROOM UNIT **TRANSFERRED TO:** EAST

**TRANSFERRING:** ARCHULETA #4284 **RECEIVING OFFICER:** **DATE/TIME:**

| DPC # | NAME/LOCATION | IM SIGNATURE | RETURN ADDRESS |
|---|---|---|---|
| | Pelston | 4th Avenue Jail | PERKINS COIE 2901 N. CENTRAL AVENUE, STE 2000 PHX, AZ 85012-2788 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

NOTE: Legal mail will be opened and inspected by STAFF in the presence of the inmate in accordance with Department Order 909. Staff shall not read or censor this type of correspondence. Do not open the mail until the inmate signs for it. If the inmate refuses the mail write the word refused in the signature column and return the mail UNOPENED to the Complex Mail Room with a copy of the mail transfer report.

# EXHIBIT 33

ARIZONA DEPARTMENT OF CORRECTIONS

Inmate Letter

Requests are limited to one page and one issue. NO ATTACHMENTS PERMITTED. Please print all information.

| Inmate Name (Last, First M.I.) | ADC Number | Institution/Unit | Date |
|---|---|---|---|
| Brislan Dustin L. | 164993 | Rast 1-C-15 | 04-12-12 |

| To: C.O. III Theodore | Location Rast/Lewis |
|---|---|

State briefly but completely the problem on which you desire assistance. Provide as many details as possible.

This is an informal resolution to solve the following issue: I sent out a legal letter to my attorney (one of my many legal counsel representing me) On the enclope it was clearly labeld "Legal Mail." Today I got the letter back "return to sender Attempted - Not Known" A confidential Legal letter, and it was opend, Not in my presence, taped, opend again taped again, why was it opend?, Not once but twice? My proposed resolution is: To speak to the Unit Deputy Warden, and CIU.

| Inmate Signature | Date 04-12-12 |
|---|---|

Have You Discussed This With Institution Staff?  ☐ Yes   ☐ No

If yes, give the staff member's name:

Distribution: White - Master Record File    Canary - Inmate

916-1
5/13/10

# ARIZONA DEPARTMENT OF CORRECTIONS

## Inmate Letter Response

*For distribution:  Copy of corresponding Inmate Letter must be attached to this response.*

| Inmate Name *(Last, First M.I.)* | ADC Number |
|---|---|
| BRISLAN  DUSTIN L | 164993 |

| Institution/Unit |
|---|
| ASPC Lewis Rast |

| From | Location |
|---|---|
| COIII W Theodore | Rast Building 1 |

This is in response to your inmate letter dated  04/12/2012

You are attempting to resolve the following issue.   You calim to have sent a legal letter to your attorney, clearly marked "legal mail".  The letter was returned from the United States Post Office marked "return to sender-attempted -- not known".  The letter was returned to you opened.

As I explained to you, many inmates attempt to send mail to another inmate by putting an address that doesn't exist as the recipient and the return address is where they really want the letter to go.  Then when it gets returned by the Post Office because it's not deliverable, it gets returned to the actual intended recipient, via the "return address".  Because of that, it is subject to inspection by the mail room and SSU.  Being that it was deemed to be actually your letter, it was returned to you.

Staff was within policy to open your letter.  No action will be taken on this.

End of response.

| Staff Signature  COIII W Theodore | Date  04/16/2012 |
|---|---|

# EXHIBIT 34

1. United States District Court
2. District of Arizona
3.
4. Parsons, et al.,
5.             Plaintiffs,
6. v.                          DECLARATION OF DUSTIN BRISLAN
7. Ryan   et al.,          No. CV 12-00601-NVW-PHX-(MEA)
8.             Defendants
9.
10.        DECLARATION OF DUSTIN BRISLAN
11.
12.        (1.) I, Dustin Brislan, am a named Plaintiff in the above
13. entitled Proceding. I am a prisoner serving a 5 year prison
14. sentence in the Arizona Department of corrections Special
15. Management Unit-1. I am 31 years old and have been in and
16. out of ADC since December 31 2001.
17.        (2.) I agreed to maintain a confidential relationship with
18. my Attornies and have been honest and have respectively
19. maintained our confidential Relationship as Attorney/Client.
20.        (3.) Here at the Special Management Unit-one (SMU-1) The
21. ADC staff do an extremely poor Job managing the incoming
22. and out going legal Mail as Ive visualy observed. When sending
23. out a legal letter I'm ordered to wait untill 2nd (swings) shift
24. to send out my confidential correspondence to my Retained
25. counsel. When giving my letter to the Correctional Staff (which
26. is clearly marked "Legal Mail") The prison gaurd inspects the
27. Legal Correspondence by reading my out going legal letter
28. even though they are told to simply scan it. I am then given

1-of-3

29. back my legal letter so I can enclose it and hand the sealed
30. correspondence back to the Correctional guard. This guard
31. then takes it to some un-known area to log it or have it
32. logged. Although, it is my understanding that the shift supervisor
33. is required to come to my cell front with the Legal Log Book,
34. log the letter in it after a professional inspection stamp the
35. letter and send it out, but this doesn't take place, only some
36. random C.O. II (Correctional Officer II) handles our legal
37. mail which clearly shows un-profession and laziness.
38.        (4.) When legal mail is sent out its to remain sealed and go
39. to the complex mail room where its to be mailed sealed after
40. its checked for ensurance that it is indeed legal mail. All of
41. the legal letter I send are indead legal letters sent to my
42. retained counsel. Yet, my legal letters have been opend. My
43. legal letters have been opend and returned to me, so I would
44. have to seal them in a new envelope and send them out again.
45. These correctional staff clearly violated written policy, and
46. clearly violates my Attorney/client privacy rights. These
47. actions can be extremly destructive to our litigation.
48.        (5.) When legal mail is sent in it is logged at Eyman
49. Complex and here at SMU-1. It is supposed to be brought to me
50. sealed where I sign for it and its contents. The letter is then
51. opend in my presence and inspected where its then given to
52. me. Yet, thats not always how it goes. Many times my legal
53. correspondence has been brought to me opend. Many times as
54. The gaurds have "inspected" my legal mail they've read its
55. contents, clearly violating my Attorney/client privacy rights
56. and their own written policy. This has been an on-going issue
57. and I've written many inmate letters clealy documenting it.
58.        (6.) These correctional staff continue to interfere,

2- of -3

59. delay and blatantly deny the my right to private
60. correspondence with my retained counsel. In every
61. way possible these correctional staff have violated
62. their own Policy and have violated my private communications
63. with my retained counsel and have yet to be punished for
64. their actions. I notified the Defendant Charles Ryan, Robert Patton,
65. The complex warden in 2012, 2013, The Deputy warden 2012, 2013
66. The ADW 2012, 2013, SSU 2012 2013 and many shift supervisors
67. and not one professional investigation has been completed
68. and not one disciplinary process has been conducted. Infact,
69. at one point the complex warden, Lt Burrin and C.O III Suarez
70. approved of correctional staff reading my legal mail. All of
71. this has been documented so theres more than enough proof. This
72. violates several rules and laws and because the violations of my
73. legal mail go on they also scrutinize my regular domestic
74. mail for their sadistic purposes. Its apparent its done for
75. retaliation, spying for gathering and blatent corruption. This is
76. what Ive observed
77.
78.        I, Dustin Brislan, declare under penalty of perjury that
79. this written Declaration is true and correct and is signed
80. and Dated in Florence Arizona Eyman complex october-22-2013
81.
82.                                                    oct 22 201
83.                              Dustin Brislan
84.
85.
86.
87.
88.

                        3-of-3

# EXHIBIT 35

ARIZONA DEPARTMENT OF CORRECTIONS

Inmate Letter

Requests are limited to one page and one issue. NO ATTACHMENTS PERMITTED. Please print all information.

| Inmate Name (Last, First M.I.) | ADC Number | Institution/Unit | Date |
|---|---|---|---|
| Brillun Dustin L. | 164993 | SMU-1 1-12-23 | Oct. 30-2018 |

| To: | Location |
|---|---|
| Director Ryan | Central Office |

State briefly but completely the problem on which you desire assistance. Provide as many details as possible.

On October 7 during day shift I gave to C.O. II Porter a "Legal Mail Package" containing 136 pages of confidential legal documents to be sent to my retained attorney Corene Kendrick at the Prison Law office. On October 7TH, (the same day) the legal package (with another) was returned to me OPEN by C.O. II Alonso! ON october 7TH directly after I was given my open legal package I sent it back out enclosed in a New envelope (As all of my envelopes are they're clearly marked with Attorney name and correct office address with Legal Mail Marked in several areas!) I sent it out and come to find out that it was opend yet again and documents were stolen! They didn't receie the full 136 not even half of the 136, nor did they receie the letter! You know as well as I that thats completely unprofessional and un-acceptable! This has been an on-going issue! I've reported such behaviours on multiple occussions and NOT one thing that your office has been done that I can see! The issue still continues. whats more is my regular mail too has been subject to scrutiny. It too has mysteriously vanished! several expected letters have come up missing. I was expecting Mail from my friend Marylou Brocik that I never got! Just because the mail rooms log the mail you think thats an investigation? surely not! Inbetween the mail room and my room any thing can happen. I never got the letter! Nor have I got many other expected letters. I expect a response from you son? I've written several other times about the exact listed issues above and have yet to receie a response.
— Thanks —

| Inmate Signature | Date |
|---|---|
|  | Oct-30-2018 |

Have You Discussed This With Institution Staff? ☑ Yes ☐ No

If yes, give the staff member's name: You, SSU.

Distribution:  White - Master Record File       Canary - Inmate

# EXHIBIT 36

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Letter Response**

> *For distribution:  Copy of corresponding Inmate Letter must be attached to this response.*

| Inmate Name *(Last, First M.I.)* | ADC Number |
|---|---|
| Brislan | 164993 |

| Institution/Unit |
|---|
| ASPC-Eyman/SMU  1D23 |

| From | Location |
|---|---|
| Sgt. J. Bowers #1982 | SMU Mail & Property |

In response to your Inmate Letter, dated 10/23/2013:

To ensure that your Legal Mail is handled appropriately, you are required to follow the correct procedure for sending Legal Mail.

Legal Mail is collected and recorded by officers during Swing Shift. Do not continue to give outgoing Legal Mail to Day Shift officers.

If you have outgoing legal mail, notify the Swing Shift floor officer (not the Rover) assigned to your area prior to 1600 hours. That person will coodinate Legal Mail collection your area.

Regarding envelopes provided by your attorney, D.O. 914 designates such materials as "unauthorized" and they should be immediately seized by the Swing Shift staff members assigned to deliver and/or inspect outgoing Legal Mail prior to it being sealed and logged.
While I have noticed that much of your mail is being sent out in these envelopes, we have not stopped any sealed, outgoing Legal Mail from leaving the unit.

Thank you for your correspondence.

| Staff Signature | Date |
|---|---|
| *[signature] J. Bowers 1982* | 10/24/2013 |

Distribution:  Original -  Master Record File
Copy - Inmate

916-2
5/14/12

6 of 6

# EXHIBIT 37

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,

Plaintiffs,

v.

Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,

Defendants.

No. CV 12-00601-PHX-NVW (MEA)

**DECLARATION OF STEPHEN SWARTZ**

I, Stephen Swartz, declare:

1.      I am a prisoner housed in the Arizona State Prison Complex – Lewis, Rast Unit. My ADC number is #102486. I am a named plaintiff in this case.

2.      As a named plaintiff, I have an attorney-client relationship with counsel of record. I have signed a retainer with the attorneys.

3.      Prior to the filing of the case and to the present day, I regularly write the attorneys at the ACLU of Arizona, ACLU-National Prison Project, Prison Law Office ("PLO"), and Perkins Coie and Jones Day regarding the course of this litigation, discovery requests directed to me by Defendants, the medical, dental, and mental health care I need, and conditions in custody. I always label the envelopes as "Legal Mail" and address them to an attorney by name. When the attorneys write me back, their envelopes are stamped "Legal Mail" and list an attorney's name on the return address.

4.      On October 28, 2013, during the regular evening mail delivery, I was given an envelope addressed to me from the PLO. The envelope had been cut open, and there was a stamp on the envelope that said this was not legal mail. The envelope had not been opened in my presence. A true and correct copy of the envelope is attached as Exhibit 1.

5.      The letter addressed to me was signed as being from PLO litigation assistant Megan Lynch, under supervision of staff attorney Corene Kendrick. "LEGAL MAIL" is printed at the top of the letter. A redacted copy is attached as Exhibit 2. This letter, along with copies of documents including medical and mental health grievances that I had sent to PLO to review, were out of order and the papers all reeked of a man's cologne.

6.      The envelope's return address has "Donald Specter, Attorney at Law" printed on it. The envelope's postmark is October 22, 2013. Normally when I receive legal mail from the Prison Law Office, it arrives within three or four days of the postmark.

I declare under penalty of perjury that the foregoing is true and correct.

Signed the 5th of November, 2013, in Buckeye, Arizona.

Stephen Swartz, ADC # 102486

# Exhibit 1





Stephen Swartz
ADC 102486
Lewis - Rast, P.O. Box 3600
Buckeye, AZ 85326



LEGAL MAIL







PRISON LAW OFFICE
Donald Specter - Director
General Delivery
San Quentin, California 94964-0001

Exhibit 2



**PRISON LAW OFFICE**

General Delivery, San Quentin, CA 94964-0001
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Rana Anabtawi
Rebekah Evenson
Steven Fama
Warren George
Penny Godbold
Alison Hardy
Corene Kendrick
Kelly Knapp
Millard Murphy
Lynn Wu

# LEGAL MAIL

10/21/2013

Stephen Swartz, ADC 102486
Lewis - Rast
P.O. Box 3600
Buckeye, AZ 85326

Dear Mr. Swartz:



Sincerely,

Megan Lynch
Litigation assistant under Corene Kendrick

Board of Directors
Penelope Cooper, President • Michele WalkinHawk, Vice President •
Marshall Krause, Treasurer • Christiane Hipps • Margaret Johns
Cesar Lagleva • Laura Magnani • Michael Marcum • Ruth Morgan • Dennis Roberts

# EXHIBIT 38

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Informal Complaint Resolution**

Complaints are limited to one page and one issue.
NO ATTACHMENTS PERMITTED.   Please print all information.

| Inmate Name (Last, First M.I.) | ADC Number | Institution/Unit | Date |
|---|---|---|---|
| Swartz, Stephen O | 102486 | Lewis-RAST  2-A-21 | 10/30/2013 |

| To | Location |
|---|---|
| C.O.III  Milliron | Lewis-RAST  Bldg 2/B |

State briefly but completely the problem on which you desire assistance.  Provide as many details as possible.

I am attempting to RESOLVE INFORMALLY the following PROBLEM; There has been two (2) INCIDENTS of My "LEGAL" MAIL being MisHANDLED and/or TAMPERED with.

ON 10/15/13 I POSTED A civil LAWSUIT to the MCSO-Civil UNIT for Service of SUMMONS. ON 10/16/13 said "LEGAL" MAIL was returned to ME by C.O.II Salter VIA 2A/13 CONTROL and the envelop had been STAMPED " NOT Considered LEGAL MAIL per D.O. 902.

The SECOND INCIDENT took place ON 10/28/13 WHEN MY attorneys OF RECORD "PRISON LAW OFFICE" and DONALD SPECTER'S ENVELOPE ADDRESSED to ME and clearly STAMPED "LEGAL MAIL" in Big RED letters, FRONT and back, was delivered along with Regular mail by C.O.II HAMM. Said ENVELOPE, which CONTAINED CONFIDENTIAL legal documents, had been OPENED by Complex Mailroom STAFF, STAMPED " NOT Considered Legal Mail Per D.O 902" and "INSPECTED by #12"

I immediately brought this PROBLEM to C.O.II HAMM's ATTENTION and REQUESTED to speak with Shift Supervisor Lt. Holland who then MADE Copies of said envelope and scanned it to Complex Mailroom requesting an explanation as to why said "LEGAL" mail had been OPENED. NO RESPONSE was given to Lt. Holland as of 10/29/2013

TAMPERING with and denial of POSTING OF LEGAL mail INFRINGES ON the CONSTITUTIONAL guarantees of ACCESS to the Courts and Rights CONFERRED by the 1st, 6th and 14th Amendments of the U.S. CONSTITUTION. I REQUEST THE FOLLOWING RESOLUTION;
1) THAT STAFF RESPONSIBLE BE DISCIPLINED and SANCTIONED UNDER D.O.601
2) THAT ANY and ALL MAIL ADDRESSED to me and MARKED LEGAL or Privileged MAIL be OPENED ONLY IN MY PRESENCE.
3) THAT the A.D.O.C. take action to ensure that this does NOT HAPPEN again with MINE or ANY LEGAL MAIL.

| Inmate Signature | Date |
|---|---|
| Stephen O Swartz | 10/30/2013 |

| Have You Discussed This With Institution Staff? | ☒ Yes   ☐ No |
|---|---|

If Yes, give the staff member Name: C.O.II Salter, Lt. Holland, Lt. Bartram and C.O.II Hamm.

Distribution:   Original - Inmate
                Copy – Grievance Coordinator File

802-11(e)
12/19/12



# ARIZONA DEPARTMENT OF CORRECTIONS

## Inmate Informal Complaint Response

*For Distribution: Copy of Corresponding Inmate Informal Complaint Resolution must be attached to this response.*

| Inmate Name *(Last, First M.I.)* | | ADC Number |
|---|---|---|
| Swartz, Stephen O. | 2-A-21 | 102486 |

| Institution/Unit |
|---|
| ASPC - Lewis, Rast Unit |

| From | Location |
|---|---|
| CO III Milliron | Housing Unit 2 |

I am in receipt of your informal resolution dated 10/30/13 and received 11/4/13 regarding your legal mail issue. In your informal you state that on 10/15/13 you sent "legal mail" to "MCSO - Civil Unit" and it was returned to you from the complex mail room stamped "not considered legal mail." Then on 10/28/13 you received an envelope from "Prison Law Office" stamped "legal mail" but that when you received the envelop it had been opened by complex mail room staff and stamped "not considered legal mail." Proposed resolution is that staff be disciplined.

Investigation: I contacted Lt. Holland. He advised me that per policy in order for mail to be considered "legal mail" whether addressed to or received from a law office, it must have the attorney's name on the envelop. Lt. Holland also stated that your last piece of "legal mail" was from an attorney but was stamped "not legal mail."

Conclusion: Mail sent out was not to a court or Law firm (with attorney's name). The incoming piece of mail from Prison Law Office lacks the attorney's name and was stamped "not considered legal mail." Therefore, it appears property protocol was not followed in either of the incidents. If you feel I have not provided you with an appropriate response you may now file a formal grievance - see attached. End of response.

| Staff Signature | Date |
|---|---|
| | 11/26/13 |

Distribution: ( Original - Inmate
Copy – Grievance Coordinator File

802-12(e)
12/19/12

# EXHIBIT 39

INMATE MAIL: ARIZONA DEPARTMENT OF CORRECTIONS
Inmate _Don Lee J. Pedebes._
ADC# _305 2 70_
Arizona State Prison Complex _Rast Unit-5_
Unit _8-B / P-C 35._
_P.O. Box 3600_
City _Buckeye,_ AZ _85326 ._

FOREVER
FIRST-CLASS
USA

1.00

Clerk of The United States
District Court
Evo A. DeConcini Courthouse
405 W. Congress Street, Ste. 1500
Tucson, Arizona
85701~5010 ?

Corene, Thought you might want to see this Also



PRISON LAW OFFICE
Donald Specter - Director
General Delivery
San Quentin, California 94964-0001



NOT CONSIDERED
LEGAL MAIL
PER POLICY 902

LEGAL MAIL

INSPECTED BY #12

INSPECTED BY #12

Stephen Svartz
ADC 102486
Lewis - Rast, P.O. Box 3600
Buckeye, AZ 85326



Rec. 10/28
regular Mail
Sign



02 1R
0002000843
MAILED FROM ZIP CO

UNITED STATES POSTAGE

# EXHIBIT 40

**ARIZONA DEPARTMENT OF CORRECTIONS**

Inmate Letter

*Requests are limited to one page and one issue. NO ATTACHMENTS PERMITTED. Please print all information.*

| Inmate Name *(Last, First M.I.)* | ADC Number | Institution/Unit | Date |
|---|---|---|---|
| Smith, Jeremy S. | 129438 | Lewis/Buckley/4A27 | 4.2.13 |

| To: | Location |
|---|---|
| CO III Yazzi | CO III's Office 4'A/B |

State briefly but completely the problem on which you desire assistance. Provide as many details as possible. I arrived here in the Iso cell last Friday, 3-29-13. I'm in an ongoing lawsuit. I need to contact 1 of my attorneys, but no one will give me my property. I know one of my lawyers name is Stephen A. Brookman and he's at the law offices of Perkins Coie in Phx, Az. Can I please get a legal call to him to inform him that I moved, ~~my~~ my status, and what happend to me?

Thank you.

NO attorney listed found under the listed name above.

| Inmate Signature | Date |
|---|---|
| Jerry Smith | 4.2.13 |

Have You Discussed This With Institution Staff?  ☐ Yes  ☑ No

If yes, give the staff member's name:

Distribution: Original - Master Record File
Copy - Inmate

916-1
5/14/12

**Confidential Information - Subject to Protective Order**

**PLTF-PARSONS-030479**

# EXHIBIT 41



# Mr. Stephen Andrew Brookman

**Status:** Active ⓘ                                 **Perkins Coie LLP**

**Board Certified Specialization:** None ⓘ

**Areas of Focus:** None

**Section Membership:** None

**Other Jurisdictions:** None

**Other Languages:** None

**Professional Liability Insurance:** Yes ⓘ

**Discipline:** None

## More About Mr. Stephen Andrew Brookman

*Educated at Arizona State, admitted to practice in 2012, admitted to the State Bar of Arizona November 6, 2012.*

**ATTENTION MEMBERS OF THE PUBLIC:**

Please **do not** email lawyers the details of your legal matter. Please contact them to make an appointment to discuss your matter in person. Lawyers have a duty to avoid conflicts and the lawyer you contact by email may already represent someone in your matter.

Copyright ©2004-2013 State Bar of Arizona

# EXHIBIT 42

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Letter Response**

> For distribution: Copy of corresponding Inmate Letter must be attached to this response.

| Inmate Name *(Last, First M.I.)* | ADC Number |
|---|---|
| **SMITH, JEREMY S.** | **129438** |

| Institution/Unit | | |
|---|---|---|
| **ASPC - EYMAN - SMU    1-A-31** | | |

| From | Location |
|---|---|
| **R. Tipton, Librarian II** | **SMUI Resource Center** |

The Library has received your request for legal supplies. However, a review of your account reveals you have no recent legal activity (i.e. legal copies, notary, postage, request for court forms, etc.). Therefore, you do not qualify to receive supplies. You may resubmit when you have a current or active legal matter and insufficient funds to correspond. Per Department Order 902, Inmate Legal Access to the Courts, section 1.5.1, legal supplies are those supplies actually used for qualified and non-qualified legal claims. If you believe that you do still qualify for legal supplies you may provide documentation of recently dated legal work for reconsideration and request an appointment with the paralegal. Thank you.

| Staff Signature | Date |
|---|---|
| *R. T* | 9/6/2013 |

Confidential Information - Subject to Protective Order

PLTF-PARSONS-030480

# EXHIBIT 43

1

2

3

4

5

6                              UNITED STATES DISTRICT COURT

7                                      DISTRICT OF ARIZONA

8

9    Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-NVW
     Dustin Brislan; Sonia Rodriguez; Christina           (MEA)
10   Verduzco; Jackie Thomas; Jeremy Smith; Robert
     Gamez; Maryanne Chisholm; Desiree Licci; Joseph
11   Hefner; Joshua Polson; and Charlotte Wells, on       **DECLARATION OF**
     behalf of themselves and all others similarly        **ROBERT GAMEZ**
12   situated; and Arizona Center for Disability Law,

13                       Plaintiffs,

14              v.

     Charles Ryan, Director, Arizona Department of
15   Corrections; and Richard Pratt, Interim Division
     Director, Division of Health Services, Arizona
16   Department of Corrections, in their official
     capacities,
17
                         Defendants.
18

19

20

21

22

23

24

25

26

27

28

I, Robert Gamez, declare:

1.     I am a prisoner housed in the Arizona State Prison Complex –
Eyman, Browning Unit, 1-Able-Pod 6. My ADC number is 131401. I am a named
plaintiff in this case.

2.     As a named plaintiff, I have an attorney-client relationship with
counsel of record. I have signed a retainer with the attorneys.

3.     For more than two years, in relation to this case, I have sent letters
back and forth with the attorneys at the ACLU-National Prison Project, the ACLU of
Arizona, Arizona Center for Disability Law, and the Prison Law Office about my mental
health care, and the conditions in the Browning unit.  I always use envelopes that say
"Legal Mail" and write an attorney's name.  When the attorneys write me back, their
envelopes are stamped "Legal Mail" and list an attorney's name on the return address.

4.     In late October 2013, I was given a letter sent to me by the Prison
Law Office. The envelope had the name of an attorney, Corene Kendrick, written on the
return address and had "Legal Mail" printed on it. When the correctional officer gave me
envelope, it had already been opened.  The officer told me that my letter was opened
because it was mixed with a different letter the Prison Law Office had sent to another
prisoner housed in Browning Unit, named Mr. Roseberry, and when they opened the letter
to Mr. Roseberry, they also opened the letter addressed to me.

5.     On November 26, 2013, I sent as Legal Mail to the Prison Law
Office, 220 pages of grievances and health needs requests (HNRs) with supporting
documents that I had filed in the past two months. I sent my only copies, the originals, of
the documents.

6.     Among the documents that I included were grievances I had filed
about my legal mail from the Arizona Justice Project being opened. The director's level
response signed by Charles Ryan said that mail from the Justice Project, along with the
NAACP, the ACLU, the Prison Law Office, and ACDL were not legal mail unless an
attorney's name was listed on the envelope.  I wanted my attorneys at the Prison Law

1    Office to see this grievance response.

2         7.    On top of the 220 pages of documents was a cover letter to Ms.

3    Kendrick.

4         8.    In early December, I received a letter from the Prison Law Office

5    returning all of the documents I had sent them.  There were only 35 pages of documents,

6    and the grievances regarding legal mail, among other documents, were not in the package.

7         9.    I have filed a grievance about the November 26, 2013 letter and

8    documents being removed from my outgoing legal mail.

9

10        I declare under penalty of perjury that the foregoing is true and correct.

11

12        Signed January ___7___, 2014, in Florence, Arizona.

13

14                                          Robert Gamez #131401

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

# EXHIBIT 44

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-NVW (MEA) <br><br> **DECLARATION OF JACKIE THOMAS** |

I, Jackie Thomas, declare:

1.      I am a prisoner housed in the Arizona State Prison Complex – Eyman, SMU-I Unit. My ADC number is 211267. I am a named plaintiff in this case.

2.      As a named plaintiff, I have an attorney-client relationship with counsel of record. I have signed a retainer with the attorneys.

3.      For more than two years I have sent letters back and forth with the attorneys at the ACLU of Arizona, Arizona Center for Disability Law, and the Prison Law Office about my mental health care, and the conditions in the SMU-I unit. I always use envelopes that say "Legal Mail" and write an attorney's name. When the attorneys write me back, their envelopes are stamped "Legal Mail" and list an attorney's name on the return address.

4.      In the middle of December 2013, I got a letter from Prison Law Office attorney Corene Kendrick asking if I got the two letters she sent me in October and November. I never received those letters.

5.      Between early September and the middle of December, I sent three letters as legal mail to Ms. Kendrick, but never got a response. I also sent a letter as legal mail to Jennifer Alewelt, an attorney at the Arizona Center for Disability Law, but never got a response from her. I think that Ms. Kendrick and Ms. Alewelt did not get my letters, because they always write me back and tell me when they get letters from me.

6.      I have asked my CO-III several times in November and December for a legal call with Ms. Kendrick but the calls were denied because I didn't fill out the paperwork properly.


I declare under penalty of perjury that the foregoing is true and correct.


Signed the _29th_ of December, 2013, in Florence, Arizona.

*Jackie R. Thomas*
Jackie Thomas, # 211267

# EXHIBIT 45

**Corene Kendrick**

---

| | |
|---|---|
| **From:** | Don Specter |
| **Sent:** | Wednesday, November 27, 2013 4:40 PM |
| **To:** | Corene Kendrick |
| **Subject:** | FW: Status of "Legal Mail" to civil rights agencies. |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

---

**From:** Don Specter [mailto:dspecter@prisonlaw.com]
**Sent:** Wednesday, November 27, 2013 4:39 PM
**To:** 'NORTHUP, DAWN'
**Subject:** RE: Status of "Legal Mail" to civil rights agencies.

Dear Dawn,

I'm glad to hear that the direction to the staff about incoming mail is to treat it as legal mail as long as an attorney's name is listed, even if the attorney is out of state.  Unfortunately, that direction is not being followed.

Prison staff are not interpreting the memo to apply only to incoming mail from our offices, and continue to open envelopes that list attorneys' names on them.  Prisoners at Eyman, Florence, Tucson, Yuma, and Lewis have reported to us that mailroom staff are pointing to the memo as a blanket rule that all mail to or from the PLO, ACDL, or ACLU is not to be treated as legal mail.

The envelopes that PLO and ACLU-NPP use to write prisoners have "Donald Specter, Attorney at Law" and "David C. Fathi, Attorney" written in the return address.  The ACLU of Arizona's envelopes are not pre-printed with attorneys' names, but it is their practice to always handwrite or type the name of the attorney on the return address.  Despite this, prisoners report that PLO and ACLU (both ACLU of Arizona and ACLU-NPP) mail is being delivered to them already opened, and with obvious evidence that the documents have been reviewed and are out of order, or with enclosures referenced in the cover letter removed from the envelope. Among the prisoners willing to go on the record are named plaintiff Swartz at Lewis-Rast, named plaintiff Brislan at Eyman-SMU I. These two are in the process of filing grievances about the opened mail.  We've received complaints about this happening both prior to and after your memo, from prisoners at Eyman (Browning, Rynning, SMU-I), Florence, Yuma, and Tucson. These prisoners fear retaliation and have not yet given us permission to use their names.

With regard to prisoners' outgoing mail to our offices, multiple prisoners report that when they attempt to send mail to our office, mailroom staff return the envelopes and letters to them as not legal mail. Oftentimes the mail has been opened. This has happened to named plaintiffs Swartz and Brislan, and an Eyman-Meadows prisoner. This prisoner (Seymour Abdullah) took a legal package addressed to Don Specter, Attorney at Law to the mailroom to be sent out as legal mail. CO II Grech, a mailroom worker, refused to accept the package, telling the prisoner that mail to or from the Prison Law Office was no longer considered legal mail. He directed the prisoner to the memo as the basis for the refusal. The prisoner pointed out that the package was

addressed specifically to Mr. Specter, an Attorney at Law. Mr. Grech then contacted Betty Uliberri, the Eyman law library contract paralegal, who said that Mr. Specter is not admitted to practice law in Arizona, and therefore the package did not have to be treated as legal mail.  When Mr. Abdullah attempted a few weeks later to mail documents and a letter in an envelope labeled as legal mail and addressed to PLO Staff Attorney Corene Kendrick, he was told by the same correctional officer that Ms. Kendrick is not an Arizona attorney, so the correspondence was not confidential. At the prisoner's request, the officer wrote that on the envelope addressed to Ms. Kendrick, and we have a copy of this envelope.  This is in contradiction to ADC's legal mail policy 902, which at page 20 defines an attorney as "an attorney-at-law licensed to practice in any state or federal jurisdiction[,] who has entered into or may in the future enter into an attorney-client relationship with the inmate or has been appointed to represent the inmate, as evidenced by court record, court order or by the inmate's written authorization."

Other prisoners at Eyman who are concerned about retaliation also report being told this with regard to out of state attorneys appointed as class counsel in this case. Named Plaintiff Swartz recently had an envelope addressed to Ms. Kendrick returned to him on the grounds that letters to PLO are not legal mail, and because Ms. Kendrick is not listed as an attorney. Mr. Swartz explained that she is licensed in California and an attorney on the Parsons case, to no avail.  (Mr. Swartz also had a letter sent to the Clerk of the U.S. District Court returned to him by mailroom staff, stamped "Not Legal Mail.")

We have been told by other prisoners at Lewis and Eyman about being told "PLO isn't legal mail" when attempting to write us. We are in the process of getting permission to use their names.

Mr. Brislan recently attempted to send our office 136 pages of documents regarding his mental health care and conditions in the SMU. He included a cover letter that described how the documents were organized.  First, the mailroom staff returned the materials to him and told him mail to our office is not legal mail. He re-organized the documents as he had originally done so, and asked again that it be sent out as legal mail that same day. The package did not arrive at our office until 15 days after he sent it to us.  When it arrived at our office, it appeared to have been opened and then shut back up. There were only about 50 pages of documents in the package, and none of the documents were in the order that Mr. Brislan described in the cover letter.

We have a sworn declaration from a prisoner at Eyman-Rynning who reports staff opened and read his outgoing correspondence to his court-appointed attorney in a case regarding his religious rights.  He attempted to send this attorney information about his medical care to share with the ACLU, and the mailroom staff removed the documents relating to Parsons v. Ryan as "absolutely illegal" for the prisoner to send out.

We have written to your litigation counsel about this several times, without receiving a response, much less an adequate response, and consequently are preparing a motion on this matter.  But, since you appear willing to take some action in response to Ms. Plews complaints, I thought it might be productive to contact you first.  We request that further specific direction and training be provided to all mailroom staff so that we can communicate confidentially with our clients without fear that ADC staff is interfering with our confidential communications with our clients .  Please let me know early next week whether you are willing to do that, and, if so, what you intend to do to rectify this situation.

Thanks very much, and of course please feel free to call if you want to discuss this further.

Don

2

**From:** NORTHUP, DAWN [mailto:DNORTHUP@azcorrections.gov]
**Sent:** Wednesday, November 27, 2013 1:07 PM
**To:** 'Arizona Prisonwatch'
**Cc:** Dianne Post; Daniel Pochoda; Jennifer Alewelt; Donald Specter; David Fathi; ERWIN, JULIA
**Subject:** RE: Status of "Legal Mail" to civil rights agencies.

Yes, I will task the Legal Access Monitor to review the legal mail policy and process with the Eyman/Meadows mail and property staff.  I agree that abuse of the "legal mail" system should be addressed on a case-by-case basis.  As always, staff is instructed to contact me or the Legal Access Monitor if there are any questions or concerns with an inmate's request to send legal mail.  The direction from my Department is to treat outgoing inmate mail addressed to an attorney representing advocacy groups such as the ACLU, PLO, and NAACP as legal mail, regardless of whether the attorney is licensed in Arizona.  I appreciate you bringing any deviation from this policy to my attention so that it can be addressed with mailroom staff, who are oftentimes new to the post.

Thank You


Dawn Northup
General Counsel
Arizona Department of Corrections
602-542-2323
dnorthup@azcorrections.gov



**From:** Arizona Prisonwatch [mailto:arizonaprisonwatch@gmail.com]
**Sent:** Wednesday, November 27, 2013 12:11 PM
**To:** NORTHUP, DAWN
**Cc:** Dianne Post; Daniel Pochoda; Jennifer Alewelt; Donald Specter; David Fathi
**Subject:** Re: Status of "Legal Mail" to civil rights agencies.

*Yes, thank you, that's very helpful to know. In that case, I believe there is some confusion in the Eyman/Meadows mailroom and/or with some of your folks in legal about what that memo means. I also think some staff are deliberately misleading certain prisoners about their legal mail - such as telling them that Dan and Dianne aren't even registered with the AZ bar. If they think that a particular prisoner is abusing the legal mail system, they should address it directly as that, not invent new barriers to accessing those attorneys. Would you please see that someone clarifies that?  I will do what I can on my end to be more clear with prisoners, in turn, as I know I've been the source of some confusion in the past.*

*Thank you.*

On Wed, Nov 27, 2013 at 11:43 AM, NORTHUP, DAWN <DNORTHUP@azcorrections.gov> wrote:
Ms. Plews:

The "legal mail" memorandum you reference relates solely to incoming mail.  The process for an inmate to **send** legal mail has not changed.  With respect to mail received from various organizations, some of which may or may not be legal, the direction is to treat **incoming** mail from the ACLU, PLO, NAACP, etc. as legal mail if there is an attorney identified with the organization's address.  It is difficult for staff in the Mail and Property Room to discern whether mass mailings received from outside organizations is legal mail if there is no attorney identified on the envelope.  Staff have not been directed not to process legal mail to Dianne Post, Dan Pachoda, or any other out-of-state licensed attorney.  The direction has been to process inmate mail going to, or received from, out-of-state attorneys as legal mail in accordance

with Department Order 902. I reiterate that the policy outlining the process for an inmate to send legal mail to any of the organizations you have identified has not changed. If the inmate references an attorney from one of these organizations as an addressee, the correspondence will be treated as legal mail. If the inmate does not reference an attorney on the envelope for outgoing mail, as has been the policy under 902.11 (1.4.2.2 and 1.4.5), the inmate may request paralegal review of the mail to determine whether it should be processed as legal mail. Not every letter written by an inmate to these organizations is "legal mail." The inmate and the sender simply have to identify an attorney on the envelope to distinguish between regular mail and legal mail.

With regard to confidential PREA reporting, Department Order 125 (125.09) addresses the requirement for sexual assault reporting confidentiality. Inmates currently correspond with the ADC Inspector General, and outside entities such as the FBI, Arizona Attorney General, and various other state and federal agencies on a regular basis. However, such correspondence is not authorized as legal mail, although it is treated as confidential by the Inspector General's Office. Additionally, ADC will soon implement a PREA specific "hot line" that will allow inmates to report confidentially or anonymously allegations of sexual assault or abuse through the Securus phone system.

I hope this clarifies your concerns.

Respectfully,

Dawn Northup
General Counsel
Arizona Department of Corrections
602-542-2323
dnorthup@azcorrections.gov


**From:** Arizona Prisonwatch [mailto:arizonaprisonwatch@gmail.com]
**Sent:** Tuesday, November 26, 2013 2:28 PM
**To:** NORTHUP, DAWN
**Cc:** Dianne Post; Daniel Pochoda; Jennifer Alewelt; Donald Specter; David Fathi
**Subject:** Status of "Legal Mail" to civil rights agencies.

It has recently come to my attention that the DOC legal access monitor, Julia Erwin, wrote a memo on Sept 17 to Mr. Patton stating that "Legal Mail" going to the ACLU, The Prison Law Office, the NAACP, the AZ Disability Law office, and one other entity must be addressed to a bar-registered attorney to be approved as such, that it is not enough for a prisoner to address the agency, per se - and that this is per you. I've also been told that a prisoner was informed they couldn't address legal mail to Dianne Post and Dan Pochoda because neither are not registered with the Arizona Bar, when both are in fact current members, which can be looked up on the AZ Bar website.

If this report of the memo is true, please explain how prisoners can safely, in confidence, report abuse by a CO, or a rape, or constitutional violations of their rights to outside entities responsible for monitoring such things? You should know that the risk of their mail being inspected and them being retaliated against is enough to silence prisoners who are fearful for their safety, and don't wish to invite retaliation by officers of the DOC.

I know that PREA requires prisons to afford prisoners with an accessible way to report rape to an outside entity, witohut having to go through your people. Doesn't the DOC have an interest in seeing other abuses reported, as well - even if not at first to you? If DOC's internal processes were such that prisoners could have confidence in the fairness of investigations, they may not feel the need to inform the rest of us about what's going on.

In any case, if this information is indeed accurate, please consider this as a formal public access request to view the memo in question, as soon as possible. Such a policy is clearly designed to discourage prisoners form

making legitimate contacts with civil rights organizations - where there are attorneys dealing with the correspondence - about constitutional violations. That strikes me as both unethical and unconstitutional. DOC certainly can't claim that the prisoners seeking to write those organizations are abusing the legal mail policy in order to get drugs smuggled in or to secretly order gang hits on anyone. The gang leaders all have their own cell phones to do that with, anyway.

If this is in fact DOC's policy and it stands, I will have to direct prisoners to legislators and media representatives that they can contact under protected mail to ask them to forward info about civil rights violations to these agencies, instead. That will be complicated and burdensome, and may result in many prisoner's concerns being ignored, but I'm not sure what else to do to help them gain safe access to the very civil rights agencies who could help them determine if they have a legal case or not.

So, please let me know whatever the story with legal mial is to these agencies so I don't misinform anyone else. If you have any suggestions as to how else your prisoners can safely communicate with the above entities when they have cause to fear retribution if their mail is read by or shared with their perpetrators, that would be appreciated, too.

Thank you.


--
*Margaret J. Plews, Editor*
*Arizona Prison Watch*
*P.O. Box 20494*
*Phoenix, AZ 85036*
*480-580-6807*


*"Our strategy should be not only to confront empire, but to lay siege to it. To deprive it of oxygen. To shame it. To mock it. With our art, our music, our literature, our stubbornness, our joy, our brilliance, our sheer relentlessness, and our ability to tell our own stories..."*

*- Arundhati Roy*


**Arizona Prison Watch**
arizonaprisonwatch.blogspot.com

**Survivors of Prison Violence - AZ**
azprisonsurvivors.blogspot.com

**Jailhouse Lawyers' Auxiliary Guild - AZ**
jailhouselawauxiliaryaz.blogspot.com

# EXHIBIT 46

| | ARIZONA DEPARTMENT OF CORRECTIONS | CHAPTER:  900<br><br>INMATE PROGRAMS AND SERVICES | OPR:<br><br>OPS |
|---|---|---|---|
| DEPARTMENT ORDER MANUAL | | DEPARTMENT ORDER:  914<br><br>*INMATE MAIL* | SUPERSEDES:<br><br>DO 914 (5/1/08) |
| | | | EFFECTIVE DATE:<br><br>FEBRUARY 26, 2010 |
| | | | REPLACEMENT PAGE REVISION DATE:<br><br>JUNE 8, 2012 |

# TABLE OF CONTENTS

PROCEDURES

914.01      MAIL GENERAL ......................................................................................... 1

914.02      INCOMING MAIL ....................................................................................... 2

914.03      AUTHORIZATION OF COMPACT DISCS AND/OR CASSETTE TAPES .................... 7

914.04      INTER-RELATIONAL MAIL ......................................................................... 8

914.05      OUTGOING MAIL ...................................................................................... 9

914.06      PUBLICATIONS ........................................................................................ 10

914.07      SEXUALLY EXPLICIT MATERIAL ................................................................ 12

914.08      UNAUTHORIZED PUBLICATIONS AND MATERIAL ......................................... 13

914.09      PUBLICATION REVIEW PROCESS ............................................................... 16

914.10      THE OFFICE OF PUBLICATION REVIEW ...................................................... 16

                 IMPLEMENTATION .................................................................................... 17

                 DEFINITIONS ........................................................................................... 18

                 AUTHORITY ............................................................................................. 20

                 ATTACHMENT

CHAPTER: 900 - INMATE PROGRAMS AND SERVICES
DEPARTMENT ORDER: 914 - INMATE MAIL

# PURPOSE

This Department Order establishes regulations, processes and procedures for inmates to send and receive mail, music, and individually reviewed publications.  All mail is processed consistent with postal regulations and the security requirements of correctional facilities. Each publication is individually reviewed consistent with the Department's legitimate penological interest in maintaining the safety, security and orderly operations of the institutions.

# PROCEDURES

914.01      **MAIL GENERAL**

1.1      There is no limitation put on the amount of mail an inmate may receive regardless of custody or detention status, provided the incoming mail meets requirements, does not violate policy, and the mail is not between an inmate and any of the following:

1.1.1      Released offenders currently under community supervision by the Department, excluding members of the inmate's immediate family as defined in this Department Order.

1.1.2      An inmate confined in any local, state or federal correctional facility including, but not limited to county jails, detention centers, halfway houses, privately operated correctional facilities, and juvenile facilities, excluding an inmate's immediate family as defined in this Department Order.

1.1.2.1      Inter-relational mail shall be approved as outlined in section 914.04 of this Department Order.

1.1.3      Current or former Department/Contract Bed employees or current or former Department volunteers, without the Complex Warden's prior written approval.

1.1.4      Minors that are not the inmate's natural or adopted child or minors that do not have parents' or guardians' prior written approval.

1.1.5      Anyone who advises the Warden or Deputy Warden in writing that they do not wish to receive mail from a particular inmate. This request must be documented and filed in the inmate record and through an AIMS entry.

1.1.6      Victim(s) of a crime for which an inmate was convicted and/or their family members when the victim has requested for no communication on a Post-Conviction Notification request in accordance with Department Order #1001, Inmate Release System. Victims that have not formally made the "No Inmate Mail" request may communicate with the inmate or the inmate's family members with prior Warden or Deputy Warden written approval. This request must be documented and filed in the inmate record and through an AIMS entry.

1.1.6.1      Unit/Complex staff shall notify the inmate of the victim's request and that further contact with the victim or his/her family members identified by the victim will result in disciplinary action.

1.2      All outgoing domestic mail shall be sent by pre-stamped envelope only, unless otherwise indicated. Domestic postage stamps are not sold in inmate stores. Only stamps for international mail (i.e. Mexico, Canada) or airmail will be available in the commissary.

1.2.1   Indigent inmates shall be provided with pre-stamped envelopes, or applicable postage for Mexico or Canada, for five one-ounce pieces of first class mail per month. Inmates may receive additional credit for postage for Legal Mail as outlined Department Order #902, <u>Inmate Legal Access to Courts.</u>

1.2.2   All postage required beyond the limits cited in this Department Order and all postage for inmate groups and organizations shall be at the expense of the inmate, group or organization.

1.2.3   Postage stamps shall not be used as negotiable instruments or legal tender as payment for materials ordered from private vendors.

1.2.4   Inmates shall not barter, trade, sell, or exchange postage stamps for any goods or services.

1.2.5   Inmates are subject to the limits for possession of postage stamps as outlined in Attachment A of Department Order #909, <u>Inmate Property</u>.

1.3   Mail room staff shall maintain:

1.3.1   An itemized list of all incoming and outgoing registered, insured and certified mail.

1.3.2   Permanent logs that will be subject to periodic inspections shall consist of:

1.3.2.1   An itemized list of all incoming and outgoing packages, including the name and ADC number of each inmate who sends or receives a package.

1.3.2.2   The name and address of each sender and addressee for each package.

1.3.2.3   A detailed description of the contents of each. For incoming publications, this includes the name and dated information for each publication.

1.3.2.4   The amount of postage or the amount paid to the contract carrier for each outgoing package.

1.3.2.5   The date of the mailing or receipt of each package, expenses incurred in processing the mail, and the name of the staff member who recorded the information.

1.3.3   An electronic log of all incoming and outgoing legal mail to include the date received, inmate name and number, sender, and the date received by the inmate. All Incoming and Outgoing Legal Mail shall be processed as outlined in Department Order #902, <u>Inmate Legal Access to Courts</u>.

## 914.02   INCOMING MAIL

1.1   Upon arrival at a new Department/Contract Bed facility, staff shall provide each inmate with the correct mailing address. It shall be the responsibility of the inmate to notify correspondents of the correct mailing address.

1.2     Incoming Mail addressed to inmates shall have the inmate's complete first and last name, the inmate's name under which he/she is incarcerated (unless legally changed), the inmate's correct ADC number, as well as the inmate's unit name and the appropriate Post Office (PO) Box.

1.3     Incoming Mail shall have a complete return address including the sender's name and the complete street address or PO Box. Mail without a complete return address shall be opened and read to inspect the contents to make a reasonable attempt to ascertain the identity of the sender. If the sender can be identified and the mail does not present any security concerns the mail may be delivered to the inmate. If the sender cannot be verified, the inmate shall receive a notice and the mail held for 90 days before it is destroyed.

1.4     It is the inmate's responsibility to notify correspondents of his/her mailing address, where local U.S. Postmaster practice permits, a U.S. Postal Service (USPS) change of address form shall be completed by the inmate and sent to the USPS. All Department/Contract Bed facilities shall make these forms available. Incoming mail shall be forwarded as follows:

　　1.4.1     Mail that arrives without an inmate ADC number shall be stamped "Return to Sender," and returned.

　　1.4.2     Mail that arrives for an inmate at an institution where the inmate is no longer housed shall be forwarded to the inmate's current institution.

　　1.4.3     When possible, First Class mail belonging to an inmate who is temporarily confined at a hospital or local county jail shall be forwarded.

　　1.4.4     Mail belonging to an inmate who is no longer in physical custody of the Department shall be forwarded up to 30 days after his/her release; provided a forwarding address is available. When no forwarding address is available, the mail shall be stamped "inmate is no longer in custody" and returned to the sender.

　　1.4.5     All mail received for inmates on escape status shall be forwarded to the Criminal Investigation Unit (CIU) for evaluation and processing.

1.5     Designated staff at each unit/complex is authorized to open, inspect and read incoming mail to prevent criminal activity and prevent inmates from receiving contraband or any other material that may be detrimental to the safe and orderly operation of the institution.

　　1.5.1     Upon inspection, incoming mail shall be withheld from an inmate if it meets one or more of the following criteria:

　　　　1.5.1.1     Poses a direct and immediate threat to the security, safety or order of the institution.

　　　　1.5.1.2     Substantially hinders efforts to treat or rehabilitate the inmate; however, legal mail will not be withheld for this purpose.

　　　　1.5.1.3     Threatens the intended recipient.

1.5.1.4     Promotes, aids or abets criminal activity or violation of Department rules, including but not limited to rioting, extortion, escape, illegal drug use, conveyance of contraband, solicitation of funds, violence towards others, and promotes or encourages security threat groups.

1.5.1.5     Has content written in code or that contains hidden messages.

1.5.2     Mail meeting one or more of the criteria in 1.5.1 through 1.5.1.5 of this section shall be forwarded to CIU for review. CIU shall return the mail for delivery within 72 hours unless it is determined that an investigation is required, in which case the mail shall be held. If it is determined that the mail is not to be delivered, the inmate shall be notified unless notification would interfere with the investigation.

1.5.3     When an incoming envelope is stamped "Return to Sender" staff shall open and inspect it for contraband before returning it to the inmate.

1.5.4     Incoming legislative correspondence shall be opened in the presence of the inmate to whom it is addressed and may only be inspected to the extent necessary to establish the presence of contraband.

1.6     Inmates may only receive money orders, cashier's checks or certified checks for deposit into inmates' accounts, in accordance with Department Order #905, <u>Inmate Banking/Money System</u>. No other monetary instrument, including cash, coins or personal checks, shall be deposited into an inmate's account.

1.6.1     Money orders, cashier's checks or certified checks shall be made payable to "The Arizona Department of Corrections for the account of (Inmate's Name and ADC Number)."

1.6.2     Mail Room staff shall deliver a receipt to the inmate and forward all money orders, cashiers checks, cash and personal checks received to the Business Office for processing.

1.6.3     The Business Office/designated staff shall process the monetary instruments that meet the Department requirements and return those that do not meet Department requirements at the inmate recipient's expense.

1.6.4     The Business Office shall notify CIU of any received Internal Revenue Service (IRS) checks. CIU may notify the IRS if deemed appropriate.

1.6.5     Outgoing inmate/IRS correspondence shall contain a notation by staff on the envelope directing the correspondence to the Criminal Investigations Branch at the Service Center to which the correspondence is addressed.

1.7     Unauthorized property or material discovered in incoming mail shall be removed from incoming letters and held as contraband. An inmate Property/Contraband/Disposition, Form 909-6, and Notice to Sender of Rejection of Incoming Mail, Form 909-3, shall be completed and sent to the inmate. Inmates have 90 days to either have item(s) destroyed or returned to the sender. The Department shall not pay for the cost of notifying the sender of the inmate's contraband arrangements or its mailing cost.

1.7.1     The Department shall not pay for the cost of returning unauthorized property or material that includes, but is not limited to:

      1.7.1.1     Used or unused postage stamps.

      1.7.1.2     Stickers, labels, address labels or decorative stamps.

      1.7.1.3     Photos where the non-photo side can be separated (Polaroid's).

      1.7.1.4     Photos of other inmates.

      1.7.1.5     Unknown foreign substances and/or powders.

      1.7.1.6     Oils, perfumes, incense or personal property items.

      1.7.1.7     Lottery tickets or games of chance.

      1.7.1.8     Tax forms.

      1.7.1.9     Battery operated greeting cards, or greeting cards larger than 8 ½" by 11."

      1.7.1.10     Unused Greeting cards, stationary, pens/pencils and/or envelopes.

      1.7.1.11     Unused postcards.

      1.7.1.12     Bookmarks.

      1.7.1.13     Inspirational cards or medals.

      1.7.1.14     Candy, gum, or any food items.

      1.7.1.15     Art, crafts and hobby supplies.

      1.7.1.16     Road maps of Arizona, areas contiguous to Arizona, states that contain the contract prison facilities, and states contiguous to those states where contract prison facilities are located; Public Transportation maps of Arizona and states with contract prison facilities and/or descriptions or photos of Department or contract prison facilities. ("Contiguous", as used in this section, means states surrounding and bordering the subject state. In the example of Arizona, this would mean California, Nevada, Utah, New Mexico, Colorado, and Mexico, or any portion thereof). Any publication containing maps as part of the material will be subject to all publication review requirements.

      1.7.1.17     Calendars.

      1.7.1.18     A printed individual item (not a supplement of an item such as a newspaper), specifically intended for the purpose of advertising or selling merchandise (catalog, circular) for any items that an inmate would not be permitted to receive.

           1.7.1.18.1     Catalogs for publications, compact discs, cassettes and other items inmates would be able to receive shall be processed according to the publication review requirements.

       1.7.1.19    Personal or professional/commercial photographs that feature nudity or sexually explicit acts, as detailed in the DEFINITION section. Photos of current or former Department/Contract Bed employees and/or Department volunteers.

1.8    Newspaper clippings, magazine articles, cartoons or copies of material from the internet may be enclosed within personal mail; however, the content is subject to the publication review process. Internet material containing information about staff or other inmates is unauthorized if it is determined to be a threat to the safe and orderly operation of an institution and/or a threat to the safety of any other person. Inmates are not authorized to receive items from the ADC Net website.

1.9    Inmates may be permitted to view crime scene and/or autopsy photographs in accordance with Department Order #909 Inmate Property.

1.10    Incoming third class/bulk mail and publications will be delivered provided the mail/publication content meets policy guidelines and:

    1.10.1    Is prepaid, as defined by this Department Order;

    1.10.2    Is addressed to a specific inmate or inmates with the correct name, ADC number and housing location.

1.11    Undeliverable Standard Mail shall be returned to the Post Office, if the Post Office will accept it. If the Post Office does not accept the undeliverable mail, it shall be documented in the appropriate log and destroyed/shredded and bagged by staff and placed in a dumpster or other trash container.

1.12    Incoming telegrams or similar urgent mail, including but not limited to, overnight mail shall be delivered within 12 hours unless circumstances make delivery impractical.

1.13    Excluding holidays and weekends, incoming mail shall not be held and shall be delivered within 24 hours unless circumstances make delivery impractical.

1.14    All mail and publications with metal bindings other than staples, including paper clips, binder clips, and other metal fasteners are prohibited. An inmate that receives a metal binding piece of mail and/or publication shall be informed of its arrival and will either decide to have the publication processed as contraband or give his/her written permission to have the binding removed prior to its release to the inmate. Staff shall make note of the removal in the inmate's property file.

    1.14.1    Staples in all mail and publications are prohibited in the following types of housing units:

        1.14.1.1    Death Row.

        1.14.1.2    Administrative or Disciplinary Confinement.

        1.14.1.3    Close Management.

        1.14.1.4    Maximum Management.

        1.14.1.5    Mental Health Treatment Units (Baker and Flamenco)

**914.03**       **AUTHORIZATION OF COMPACT DISCS AND/OR CASSETTE TAPES**

1.1     All compact discs (CD's) and/or cassettes received through the mail shall be new, clear or a cardboard container, in its original wrapper and packaging, and shall not be a re-recording of an original, and shall be consistent with copyright laws. Authorized mail order purchases for inmate in disciplinary detention may be held until inmate is released from detention.

1.2     Envelopes/packages containing incoming CD's and/or cassettes shall have the inmate's complete first and last name, the inmate's name under which he/she is incarcerated unless legally changed, the correct ADC number, institution and unit, and the appropriate Post Office Box. Incoming approved compact discs and/or cassette tapes for inmates in disciplinary detention may be held until the inmate is released from detention.

1.3     Incoming CD's and/or cassettes must come directly from a recognized publisher, distributor or authorized retailer. Family members or friends are not authorized to send CD's and/or cassettes directly to an inmate even if they include a verifiable packing list or invoice. Secondary markets also known as third party vendors, (for example, "eBay," and "Amazon Marketplace"), or any other auction sites are not authorized retailers or distributors for the purpose of this Department Order.

1.4     Cassette tapes and/or CD's commonly referred to as "Books on Tape" are subject to the publication review requirements, as outlined in section 914.09 of this Department Order and shall be included in the total possession limit amount for cassette tapes/discs as outlined in Attachment A of Department Order #909, <u>Inmate Property</u>.

1.5     Inmates may receive correspondence tapes with prior written approval of the unit Deputy Warden. Inmates shall only receive correspondence tapes from an individual on his/her approved visitation list.

        1.5.1     The requesting individual shall submit a written justification to the unit Deputy Warden requesting approval for correspondence tapes indicating that the inmate or visitor has a disability or literacy concern that prevents written correspondence.

        1.5.2     The inmate shall show in advance that he/she is in possession of an operational and authorized appliance with a cassette player.

        1.5.3     Correspondence tapes shall not contain sexually explicit language or any other unauthorized content that would be in violation of this Department Order.

        1.5.4     Correspondence tapes shall be screened at the Complex/Unit Level only and shall not be forwarded to Central Office Publication Review.

1.6     Religious oriented tapes and/or CD's sent through the mail to a specific inmate shall be commercially recorded. Tapes/CD's of religious services being donated by volunteers or outside groups for services or inmate listening shall be pre-screened by the Senior Chaplain to ensure that they are consistent with the guidelines within this Department Order. Volunteers are not authorized to directly provide inmates with recorded material.

1.7     Cash on delivery (COD) orders and contract purchases such as music clubs are prohibited and shall be returned to sender. The Department shall not be responsible for the cost of returning any unauthorized material.

**914.04**        **INTER-RELATIONAL MAIL**

1.1    Inmates that are immediate family members as defined in this Department Order and those that are the verified natural or legally adopted parents of a child are authorized to have inter-relational mail, provided the communication meets the criteria set forth in this Department Order.

1.2    In order to have inter-relational mail privileges, the natural or adoptive parents shall:

1.2.1    Provide the child's birth certificate, and

1.2.2    The relationship can be readily verified by staff, i.e. it is clear in the pre-sentence report or file.

1.3    Inter-relational communication shall not contain communications with or on behalf of any other inmates that do not have inter-relational mail approval.

1.4    Only letters, homemade greeting cards or greeting cards purchased through the inmate store are authorized for inter-relational mail. The transfer of funds and/or any other item is prohibited.

1.5    The sending unit/complex shall verify the inmate's relationship, and shall stamp the outgoing letter as "verified." Letters that have not been verified and approved shall be returned to the inmate sender.

1.6    All inter-relational mail privileges shall be pre-approved by both the requesting and receiving Warden or Deputy Warden. Approvals and denials are at the discretion of the Warden or Deputy Warden and may be revoked when it is in the best interest of institutional security.

1.7    The inmate shall pay postage. Indigent inmates may be provided postage as outlined in section 914.01 of this Department Order.

1.8    Inmates who wish to send mail to an incarcerated immediate family member shall submit the request to their assigned Correctional Officer III who shall verify the relationship.

1.9    The assigned Correctional Officer III or designated staff member at the requesting institution shall:

1.9.1    Complete a Request to Communicate with an Incarcerated Family Member, Form 915-3, as outlined in Department Order #915, <u>Inmate Phone Calls</u>.

1.9.2    Verify that an immediate family relationship exists between the inmates.

1.9.3    Forward the application to the Warden or Deputy Warden for approval/disapproval.

1.9.4    Forward copies of the approved applications to the respective Mail/Property rooms at the requesting and receiving institution.

1.9.5    Advise inmate of disapproved applications, and note all approvals and denials on AIMS.

**914.05          OUTGOING MAIL**

1.1      All outgoing inmate mail shall include on the envelope the inmate's complete first and last name (the name under which he is incarcerated), ADC inmate number, and full return address, including the name of the complex, unit and bed location.

   1.1.1      Institution mailroom staff shall return mail lacking this information to the sending inmate, if known, for a correction.

   1.1.2      If the inmate sender is not known, the correspondence shall be opened to make a reasonable attempt to determine the identity of the inmate sender. If the identity cannot be determined, the mail shall be held in a "Dead Letter" repository for 90 days, pending claim. If no claim is made, the mail shall be processed as unclaimed property.

   1.1.3      Inmates shall seal outgoing mail and place it in locked mailboxes located throughout the institution or in other areas designated by the Warden or Deputy Warden. Mail shall be collected at approximately the same time each workday, except on weekends and holidays, and shall be delivered to the mail room for processing.

      1.1.3.1      Outgoing mail being sent to any elected government official shall be brought to the mailroom unsealed. Staff shall review the envelope for content, but shall not read the contents of the letter.

   1.1.4      **SECTION DELETED**

   1.1.5      Inmates shall not use the complex or unit address to fraudulently identify themselves as employees, agents, or representatives of the Department, complex, unit, or Contract Bed facility.

1.2      Staff who processes outgoing inmate mail may inspect it for contraband, but shall not read or censor mail being sent to:

   1.2.1      The inmate's attorney, a judge, or court.

   1.2.2      Publisher or editor of a newspaper, news magazine or periodical of general distribution, national or international news service or to the station manager of any radio or television stations.

   1.2.3      The Director, Deputy Director or Division Directors of the Department.

   1.2.4      Elected or appointed public officials.

1.3      Staff shall read up to 10% of outgoing mail. Mail may be returned to the inmate, retained by the institution, or removed from the mailing (the balance of which shall be mailed) when the contents or communications:

   1.3.1      Pose a direct and immediate threat to the security, safety or order of the institution.

   1.3.2      May substantially hinder efforts to treat or rehabilitate the inmate.

1.4      Staff shall not stamp or mark the contents of outgoing read mail, rather, the envelope or box shall be stamped or marked as having been inspected and resealed prior to mailing.

1.5     Outgoing inmate mail is subject to being opened and read by staff when there is a reasonable belief that the inmate is using the mail to further a crime or circumvent Department regulations or written instructions. Such mail may include, but is not limited to:

      1.5.1     Descriptions or encouragement of activities that may lead to the use of physical violence.

      1.5.2     Information that involves escape plans and/or activities that violate Department or institution regulations or written instructions.

      1.5.3     Threatens the intended recipient.

      1.5.4     Promotes, aids or abets criminal activity or violation of departmental rules, including but not limited to, rioting, extortion, escape, illegal drug use, conveyance of contraband, solicitation of funds, violence towards others, and promotes or encourages security threat groups.

      1.5.5     Mail written in code or provides instruction on code use.

1.6     Outgoing mail that is read by staff and is determined to be detrimental to the security or safe operation of the institution or that may impede the protection of the public or facilitate criminal activity shall be referred to the Criminal Investigations Unit for further action.

1.7     The Criminal Investigation Unit shall:

      1.7.1     Retain the censored portion of any outgoing mail during any investigation, and then return it to the sender.

      1.7.2     Stamp the uncensored portion of any censored mail to indicate that portions of the mail were censored, and mail it to the recipient unless doing so would interfere with an ongoing investigation.

      1.7.3     The Department may censor the item or determine not to mail the item.

1.8     Mail outlined in 1.7.2 of this section shall be sent within 72 hours, and unless it is determined that such mail is not to be sent. If the mail is not to be sent, the inmate shall be notified of such within 72 hours, unless doing so interferes with an ongoing investigation.

1.9     Excluding holidays and weekends, outgoing mail shall not be held and shall be delivered to the Post Office within 24 hours unless circumstances make delivery impractical.

## 914.06     PUBLICATIONS

1.1     All publications are subject to screening and review and shall meet standards and guidelines as detailed in this Department Order.

1.2     The envelope/container shall have the inmate's complete first and last name under which he/she is incarcerated unless legally changed, the correct ADC number, institution and unit, and the appropriate Post Office Box.

1.3     Publications shall come directly from a recognized publisher, distributor, or authorized retailer, be consistent with copyright laws and shall include a packing list/invoice with all shipments.

    1.3.1     Secondary markets (also known as Third Party Vendors) such as e-Bay and Amazon Marketplace are not authorized retailers or distributors.

    1.3.2     Used publications are authorized provided they meet all incoming publication requirements including coming from a recognized publisher, distributor or retailer or a verifiable organization that donates publications to inmates and are in good condition, free of highlighting, underlining, notes or other marks.

1.4     Non-English publications may be delayed due necessary translation.

1.5     Incoming publications shall be pre-paid. Cash on Delivery (COD) orders and contract purchases such as music or book clubs are prohibited and will be returned to the sender at the inmate's expense. Donated publications not coming in from a recognized publisher, distributor or retailer shall be processed as contraband or donated to an inmate library provided they meet Departmental policy requirements and publication review as set forth in this Department Order.

1.6     Publications shall be forwarded for a 90 day period if the inmate is in custody at a Department or Contract Bed facility, provided there is no state or other governing rules/regulations preventing the forwarding of the publication.

    1.6.1     The inmate shall be responsible for the change of address notifications.

    1.6.2     At the end of the 90-day period, the publications shall be subject to contraband policies and procedures and will no longer be forwarded.

1.7     Inmates are responsible for staying within publication possession limit requirements as outlined in Attachment A of Department Order #909, Inmate Property, and may be subject to disciplinary action for exceeding publication/property limits. Items over the established limit shall be considered contraband.

1.8     Authorization to withdraw funds from an inmate's account for the purchase of a publication does not constitute approval of the publication.

1.9     All publications, including those that are part of a title or series, are reviewed on an individualized basis. Rejection of several issues of any one publication is not sufficient reason to reject a subscription to a publication in its entirety; unless the publication regularly includes sexually explicit material as part or all of its content.

1.10    Unless there is a legitimate correctional concern relating to security, safety, criminal activity or a threat to the orderly operation of the institution, the contents of incoming publications or publications under review shall not be revealed to any non-Publications Review Staff. Only those staff approved to participate in publication review and who have received publication review training, shall be involved in processing, reading and reviewing publications.

1.11    No publication shall be excluded solely on the basis of its appeal to a particular ethnic, racial or religious group.

1.12    Staff shall not remove pages of any publication to make the publication acceptable. Removing pages alters the publication rendering it as contraband. Previously excluded publications that have been re-edited by removing pages or the blocking out of pictures or texts will remain excluded. Staff may remove stapled or perforated items including, but not limited to free product samples, calendars, advertising or promotional items provided that no damage is done to the publication in the removal process.

1.13    Previous decisions to exclude publications, regardless of any subsequent revisions in standards or criteria, remain final. Previously excluded Publications shall not be re-submitted for review or appeal under this Department Order.

1.14    Publications delivered to an inmate in error at any complex/unit prior to and contrary to a First or Second Review may be considered contraband upon official notice from Publication Review Office that the publication has been excluded. Inmates will be provided the options of sending out the material, placing it in long-term storage, or having it destroyed.

1.15    Approved incoming publications in disciplinary detention may be held until the inmate is released from detention.

## 914.07    SEXUALLY EXPLICIT MATERIAL

1.1    In order to assist with rehabilitation and treatment objectives, reduce sexual harassment and prevent a hostile environment for inmates, staff and volunteers, inmates are not permitted to send, receive or possess sexually explicit material. For the purpose of this Departmental Order, sexually explicit material is defined as publications that feature nudity and/or sexual behaviors/acts and/or the publication is promoted based on such depictions.

1.2    Prohibited publications include, but are not limited to:

1.2.1    Publications that contain photographs, drawings, cartoons, animations, pictorials or other facsimiles that show nudity of either gender. (For Nudity see Definitions.)

1.2.2    Publications that contain any of the following acts and behaviors either visually, written or in audio (non-lyric) form:

1.2.2.1    Physical contact by another person with a person's unclothed genitals, pubic area, buttocks or, if such person is a female, breast.

1.2.2.2    Sadomasochistic abuse.

1.2.2.3    Sexual intercourse, vaginal or anal, fellatio, cunnilingus, bestiality or sodomy.

1.2.2.4    Masturbation, excretory functions, and lewd exhibition of the genitals.

1.2.2.5    Incestuous sexual activity.

1.2.2.6    Sexual activity involving an unwilling participant, or a participant who is the subject of coercion, or any sexual activity involving children.

1.3    Publications that contain nudity and/or sexual behaviors/acts for artistic, scientific, medical, educational, or anthropological purposes will be sent to the Office of Publication Review and may be approved on an individualized basis.

1.4      Personal letters are not subject to Publication Review.

1.5      Sexually Explicit Publications will be reviewed and processed as following:

     1.5.1      Within seven calendar days, unit/complex staff shall send the inmate the Complex Level Publications Review/Sexually Explicit Material, Form 914-7 stating that a sexually explicit publication has arrived and will be processed according to contraband policies and procedures, unless a second level review is requested within 20 calendar days of the inmate's actual receipt of the notice of exclusion.

     1.5.2      Inmates may give their request of a second level review to the Complex/Stand-Alone Unit Publication Review staff through Inmate Letter, Form 916-1 within 20 calendar days of the actual receipt of the notice of exclusion. If no second level review is requested within the 20 calendar days, the publication will be returned to sender at the inmate's expense. Publications under second level review will not be returned to sender pending disposition of the appeal.

         1.5.2.1      The Office of Publication Review is considered the second level review for sexually explicit material.

         1.5.2.2      **SECTION DELETED**

         1.5.2.3      Appeal decisions made by the Office of Publication Review are final and exhaust inmates' administrative remedies.

     1.5.3      A Division Director or Director's designee not in the same chain of command as the Office of Publication Review shall complete second level reviews for excluded publications that contain nudity and/or sexual behaviors/acts for artistic, scientific, medical, educational, or anthropological purposes.

**914.08**      **UNAUTHORIZED PUBLICATIONS AND MATERIAL -** Prohibited publications include those that by their nature or content threaten or are detrimental to the security, safety and orderly operation, or discipline of the facility, or inmate rehabilitation, or, are found to facilitate, encourage, incite, promote or instruct in criminal activity or unauthorized prison activity.

1.1      Prohibited publications include, but are not limited to:

     1.1.1      Depictions or descriptions that incite, aid, or abet riots, work stoppages, or means of resistance.

     1.1.2      Instructions or plans on the sending or receiving of prison contraband.

     1.1.3      Depictions or descriptions of street gangs and/or Security Threat Groups (STG), and related gang/STG paraphernalia, including, but not limited to, codes, signs, symbols, photographs, drawings, training material, and catalogs.

CHAPTER:  900 - INMATE PROGRAMS AND SERVICES
DEPARTMENT ORDER:  914 - INMATE MAIL

1.1.4    Pictures, descriptions and instructions regarding the function of locks and/or security devices (e.g. cameras, alarms) or how to bypass or defeat the security functions of these devices.

1.1.5    Depictions, descriptions, instructions on the use of hands, feet, or head as weapons, fighting weapons and techniques, self-defense and martial arts.

1.1.6    Depictions or descriptions, or promotion of drug paraphernalia or instructions for the brewing of alcoholic beverages or the manufacture or cultivation of drugs, narcotics or poisons.

1.1.7    Content that is oriented toward and/or promotes racism and/or religious oppression and the superiority of one race/religion/political group over another, and/or the degradation of one race/religion/political group by another.

1.1.8    Depictions, descriptions or content that instructs on the sale, manufacture, concealment, or construction of ammunition, guns, rifles, bombs, explosives or any other type weaponry; displays, realistic pictures, or cutaway pictures of guns or knives suitable for use in making of reproduction weapons. The mere photograph of a gun or knife in a magazine or publication (e.g. Field and Stream) is not sufficient in and of itself to exclude the publication.

1.1.9    Detailed illustrations, explanations, and/or descriptions of computers/communications systems or electronics.

1.1.10   Depictions, descriptions or content that promotes or instructs on identity theft.

1.1.11   Content that depicts, encourages, or describes methods of escape and/or eluding capture, or contains blueprints, drawings, road maps of Arizona, areas contiguous to Arizona, states that contain the contract prison facilities, and states contiguous to those states where contract prison facilities are located; Public Transportation maps of Arizona and states with contract prison facilities and/or descriptions or photos of Department or contract prison facilities. ("Contiguous", as used in this section, means states surrounding and bordering the subject state. In the example of Arizona, this would mean California, Nevada, Utah, New Mexico, Colorado, and Mexico, or any portion there of.)

1.1.12   Content that contains survival skills that could be used as an aid in eluding capture following an escape.

1.1.13   Gambling strategies and other gambling-related instructional material.

1.1.14   Pictures, depictions, illustrations, explanations, instructions, and/or patterns for tattoos and/or skin modification equipment which would provide, at minimum, visual aids for inmates wishing to reproduce this type of body ornamentation and/or equipment.

1.1.15   Cipher or code or instruct on the usage of code.

1.1.16   Pictures, depictions, illustrations or text that promotes acts of violence, that cause or intends to cause serious criminal injury or harm.

1.1.17   Graphic violence that includes but is not limited to murder, rape, sexual assault, assault, amputation, decapitation, dismemberment, mutilation maiming, disfigurement or cruelty to animals.

1.1.18    Pictures, photographs, illustrations, text or other content that may encourage unacceptable sexual or hostile behaviors, or creates a hostile environment for volunteers including, but not limited to sexual representations of inmates, law enforcement, military, professional medical staff, teachers and Clergy.

1.1.19    Intelligence gathering instruction and/or investigative techniques that may impede the Department's investigative ability.

1.1.20    Military/strategy publications that may circumvent the Department's ability to monitor and control activities/behaviors that may be a violation of law and/or Departmental policy.

1.1.21    Medical publications that may lead to any or all of the following:

   1.1.21.1    Harming of oneself or others;

   1.1.21.2    Impacting clinical test results;

   1.1.21.3    Preventing medical staff from accurately diagnosing medical issues and providing appropriate medical treatment and/or false concerns of a given diagnosis or medical treatment necessities.

1.1.22    Depictions/descriptions/textual content that may create a health and fire risk.

1.1.23    Crime scene/autopsy photos.

1.1.24    Depictions, descriptions or content that promotes and/or instructs on the facilitation of activity that is in violation of departmental policy and/or governmental laws.

1.1.25    Canine search procedures, techniques and scent discrimination.

1.1.26    Instruction on the making of incense.

1.1.27    Depictions, descriptions or content that instructs on the sale, manufacture, concealment, or the construction of tools.

2.1    A publication will not be rejected based upon inclusion of an advertisement promoting of the following if the publication is otherwise permissible and the advertisement is merely incidental to, rather than the focus of, the publication:

   2.1.1    Three-way calling services;

   2.1.2    Pen pal services;

   2.1.3    The purchase of products and services with postage stamps;

   2.1.4    The purchase of products and services that violate Departmental policy;

   2.1.5    Conducting a business while incarcerated.

2.2    Publications that contain detailed content of any subjects listed above may be excluded.

CHAPTER:  900 - INMATE PROGRAMS AND SERVICES
DEPARTMENT ORDER:  914 - INMATE MAIL

**914.09**        **PUBLICATION REVIEW PROCESS**

1.1     The Complex/Stand-Alone Unit Level Publication Review staff shall:

1.1.1    Facilitate the processing of sexually explicit publications as contraband as outlined in section 914.07 of this Department Order.

1.1.2    Forward publications that contain nudity and/or sexual behaviors/acts for artistic, scientific, medical, educational, or anthropological purposes to the Office of Publication Review for disposition.

1.1.3    Approve/release publications that do not require additional review.

1.1.4    Notify inmates of publications that are pending disposition by the Office of Publication Review.

1.1.5    Process inmates' second level review request and notify inmates of their outcome or inform inmates if the request is not within timeframes. Second Review can be requested by inmates through Inmate Letter, Form 916-1 to the assigned Complex/Stand-Alone Unit Level Publication Review staff within 20 calendar days of the inmate's actual receipt of the notice of exclusion.

1.1.6    Distribute copies of Office of Publication Review - Notice of Result, Form 914-6 and a Memorandum of Second Review to inmates affected by either the decision to exclude a publication or the referral for a Second Review. The distribution of these copies shall include inmates presently in possession of excluded publications, or who may in the future possess excluded publications. The excluded publication will be dealt using the same procedures as set forth in section 914.02, subsections 1.7 - 1.7.1 of this Department Order.

1.1.7    Provide the Warden with a copy of any Memorandums of Second Review.

1.1.8    Respond to Inmate Publication Review-Related Letters questions or concerns.

1.1.9    Log all incoming publications that are included as part of Publication Review, noting the specific publication, inmate information, and disposition, and sending the monthly report to the Office of Publication Review.

1.1.10   Maintain log information for a period of two years.

**914.10**        **THE OFFICE OF PUBLICATION REVIEW**

1.1     The Office of Publication Review shall:

1.1.1    Review, process, document and track publications forwarded by the Complex/Stand-Alone Unit Publication Review staff and determine whether to allow or exclude them.

1.1.2    Notify all Wardens and Mail/Property rooms of the decision on each reviewed item.

1.1.3    Complete the Office of Publication Review - Notice of Result form for all reviewed publications. Notices of Reviews for excluded publications must provide a reason for the exclusion.

1.1.4    Send completed Office of Publication Review - Notice of Result form to the Complex/Stand-Alone Unit Publication Review staff for distribution.

1.1.5    Act as second level review for publications that contain nudity or the sexually explicit material as outlined in section 914.07 of this Department Order.

1.1.6    Maintain copies of all Notices of Review for period of three years from the date of exclusion. Excluded publications shall be returned to the complex/unit mailroom within 90 days following the review unless a Second Review has been requested. One copy of an excluded publication will be retained for three years if a Second Review has been completed and the exclusion was upheld.

1.1.7    Compile a monthly list of all excluded publications, which shall be forwarded to all Complex/Stand-Alone Unit Level Publication Review staff and to all Wardens.

1.1.8    Notify all Wardens and Complex/Stand-Alone Unit Level Publication Review staff of pending and completed second reviews.

1.1.9    Prepare a Memorandum of Second Review and appeal packet for publications that inmates have requested a second level review that do not fall under the sexually explicit material as outlined in section 914.07, of this Department Order.

    1.1.9.1    A Division Director or Director's designee not in the same chain of command as the Office of Publication Review shall complete the Memorandum of Second Review to affirm or reverse the original decision. The Memorandum shall be forwarded to all affected inmates through Complex/Stand-Alone Unit Level Publication Review staff. The decision of the Division Director or Director's Designee is final and exhausts inmates' administrative remedies.

    1.1.9.2    Inmates may file grievances on Publication Review process procedural issues. Grievances shall be processed through the inmate's unit to the Central Office Appeals Unit. The appeal response shall only address procedural issues and will not re-consider any decisions to exclude publications.

1.1.10    Forward completed Memorandums of Second Review to Complex/Stand-Alone Unit Level Publications Review staff for distribution.

# IMPLEMENTATION

Within 90 days of the effective date of the Department Order:

- Each Warden shall provide direction for Inmate Mail addressing, at a minimum:

    - Outgoing and incoming mail.

    - Inter-relational mail.

    - Mail Room operations.

    - Mail contraband control.

- Wardens and Deputy Wardens shall update and issue the appropriate direction and Post Orders for mail procedures and processing all types and rates of mail consistent with current USPS requirements mail operations.

Section 914.07, Sexually Explicit Material is not effective until August 26, 2010:

- Until August 26, 2010 the previous Department Order 914, Inmate Mail, Section 914.07, Obscene Material dated May 1, 2008 remains in effect. (See Attachment A)

- Prior to this date inmates:

    - Shall cancel or allow to expire any current subscriptions to commercially published magazines or publications that feature nudity.

    - Shall mail out, destroy or request long-term storage for these publications or any other material that is in violation of this Department Order.

- Inmates may receive disciplinary action if found in the possession of unauthorized commercially published magazines or publications after August 26, 2010. All such items shall be considered contraband and will be subject to seizure.

# DEFINITIONS

**ALTERING** - To change or make different; modify.

**AUDIO BOOK -** A taped reading of a book or book condensation reproduced in audiocassette form.

**CENSOR** - To delete, ban, suppress or withhold portions of mail.

**CONTRABAND** – For the purpose of this Department Order, contraband is defined as any item considered to be a detriment to the safe and orderly operation of an institution or parole office. Contraband includes, but is not limited to:

- Any item that could be used as an aid to escape.

- Any item that could be used to disguise or alter an inmate's appearance.

- Any item of clothing or items for personal use or consumption that are not cleared first through security or the property room of the institution.

- Cameras, video, audio or related equipment, unless authorized by order of written instructions.

- The introduction and/or possession of any separate components that may aid in the use of wireless devices and/or multimedia storage devices. This includes, but may not be limited to:

    - Cell phone chargers.

    - Mobile chargers.

    - Cell phone batteries.

    - Any other item that staff reasonably determines may aid in the use of wireless devices and/or multimedia storage devices.

- Allowable items which are:

- Possessed without permission.

- Discovered in improper locations.

- Over set allowable amounts.

- Obtained in improper manners or methods.

- In altered forms or conditions.

**CORRESPONDENCE TAPES** - Cassette tapes sent or received by an inmate or visitor where there exists a disability or literacy concern that prevents written correspondence.

**CRIMINAL ACTIVITY** - Any activity that violates local, state and federal law, statutes, ordinances, or codes, and constitutes a criminal act under the law.

**CUNNILINGUS** - Oral stimulation of the clitoris or vulva.

**EXCRETORY FUNCTIONS** - The elimination of a body's waste products through defecation and urination.

**FEATURES** - The publication contains nudity on a routine or regular basis or promotes itself based upon such depictions in the case of an individual one-time issue.

**FELLATIO** - Oral stimulation of the penis.

# REST OF PAGE BLANK

THIS PAGE BLANK

CHAPTER:  900 - INMATE PROGRAMS AND SERVICES
DEPARTMENT ORDER:  914 - INMATE MAIL

**FIRST CLASS MAIL** - A class of mail including letters, postcards, and postal cards, all matter wholly or partially in writing or typewriting; includes but is not limited to anything mailable such as bills, invoices, personal correspondence, and some merchandise.

**GENITALIA** – Male and female sexual organs.

**IMMEDIATE FAMILY** - A legal spouse, natural or adopted parents, siblings, natural or adopted children, stepchildren, grandparents, or other verified person primarily responsible for the raising of the inmate in the absence of the inmate in the absence of a parent.

**INCESTUOUS ACTIVITY -** Sexual activity between family members who are forbidden to marry due to their close kinship.

**INFLAMMATORY** - Arousing passion or strong emotion, especially anger and belligerence.

**INTERCOURSE** - The act of having sex.

**INTER-RELATIONAL MAIL** - Letters deliverable by the United States Postal Service written by an inmate to an incarcerated immediate family member, clearly marked with the name and ADC number of the sending and receiving incarcerated immediate family member.

**ILLEGAL CONTRABAND** - Any item, the possession of which in the community or on prison grounds is a felony or misdemeanor, i.e., weapons, explosive devices, drugs, wireless communication devices, multimedia storage devices or other statutorily prohibited item(s).

**LEGISLATIVE CORRESPONDENCE** - Letters to or from a member of the Arizona State Legislature. Mail that is received in envelopes that are clearly marked as official envelopes used by the Arizona State Legislature is considered incoming legislative correspondence.

**MASTURBATION** - Touch or rubbing of sexual organs for the purpose of sexual pleasure. Excitation of one's own or another's genital organs, usually to orgasm, by manual contact or means other than sexual intercourse.

**NUDITY** - Nudity as defined by ARS 13-3501, the showing of the human male or female genitals, pubic area, female breast with less than a fully opaque covering of the nipple, or male or female buttocks with less than a full opaque covering of the anus (e,g., a thong). The anus does not need to be visible.

**PENOLOGICAL** - Relating to the theory and practice of prison management and criminal rehabilitation.

**PERIODICAL CLASS MAIL** - Mail that consists of magazines, newspapers and other publications.

**PREPAID PUBLICATIONS** – Are any type of publication sent to an inmate that has been paid for in advance of delivery to the inmate. Publications not paid for in advance will not be accepted and returned to the sender at the inmate's expense.

**PUBLICATION** - A book, booklet, pamphlet, (or similar document), or a single issue of a magazine, catalog, periodical, newsletter, audio (non music) tapes and CDs. Publication does not include personal letters and personal photographs.

**SADOMASOCHISTIC ABUSE** - As defined by ARS 13-3501means flagellation or torture by or upon a person clad in undergarments, a mask or bizarre costume, or the condition of being fettered, bound or otherwise physically restrained on the part of one so clothed, for the purpose or in the context of sexual gratification or abuse.

**SEXUALLY EXPLICIT MATERIAL** - Any publications, drawing, photograph, film, negative, motion picture, figure, object, novelty device, recording, transcription, or any book, leaflet, catalog, pamphlet, magazine, booklet or other item, the cover or contents of which pictorially depicts nudity of either gender, or that graphically depicts through text any sexually explicit homosexual, heterosexual, or auto-erotic sex acts including fellatio, cunnilingus, masturbation, sadism, sado-masochism, bondage, bestiality, excretory functions, sexual activity involving children, an unwilling participant, or the participant who is the subject of coercion.

**STANDARD MAIL** - Advertising mail that includes advertisements, circulars, newsletters, magazines, small parcels and merchandise and weighs less than 16 ounces.

**STG** - An unofficial term used to denote any type of gang activity in prisons and correctional facilities. The official term for this is Security Threat Group.

**UNAUTHORIZED MATERIAL**- Material that by its nature or content threatens or is detrimental to the security, safety, good order or discipline of the facility, or inmate rehabilitation, or, that is found to facilitate, encourage, incite, promote or instruct in criminal activity or unauthorized prison activity.

**VIOLENCE** - Acts of aggression or abuse that causes or intends to cause criminal injury or harm. These acts include, but are not limited to, murder, rape, sexual assault, assault, and cruelty to animals. Graphic violence would include, but is not limited to, acts of violence that include amputation, decapitation, dismemberment, or mutilation maiming or disfigurement.

{Original Signature on File}

_____

Charles L. Ryan
Director

**ATTACHMENT**
Attachment A – Obscene Material

**FORMS LIST**
914-6, Office of Publication Review - Notices of Result
914-7, Complex Level Publications Review/Sexually Explicit Material

# AUTHORITY

A.R.S. 12-941 et seq, Disposal of Certain Unclaimed Property in Custody of State, City or Town Officers.
A.R.S. 13-2501, Definitions of Contraband.
A.R.S. 13-2505, Promoting Prison Contraband.
A.R.S. 13-3309, Seizure; Exception; Definition.
A.R.S. 13-3501, Obscene Material.
A.R.S. 13-3503, Seizure of Obscene Things; Disposition.
A.R.S. 13-4301 et seq, Forfeiture.
A.R.S. 13-4411.01, Notice of Right to Request Not to Receive Inmate Mail.
A.R.S. 13-4429, Return of Victim's Property; Release of Evidence.
A.R.S. 31-231, Unauthorized Communications.
A.R.S. 31-235, Prisoner correspondence: definitions.

**ATTACHMENT A**
**DEPARTMENT ORDER 914**


## OBSCENE MATERIAL

## (DEPARTMENT ORDER 914, INMATE MAIL, SECTION 914.07, DATED MAY 1, 2008)


**914.07      OBSCENE MATERIAL**

1.1     Publications that contain obscene material may be prohibited and includes material that by its nature or content poses a threat or is detrimental to inmate rehabilitation or is detrimental to the security, safety, good order and discipline of the facility.

1.2     Material may be deemed obscene under applicable constitutional standards. A publication is deemed obscene when ALL of the following apply:

   1.2.1    The average person, applying contemporary state standards, would find that the publication, taken as a whole, appeals to the prurient interest.

   1.2.2    The average person, applying contemporary state standards, would find that the publication depicts or describes, in a patently offensive way, sexual activity as defined in this written instruction.

   1.2.3    The publication, taken as a whole, lacks serious literary, artistic, political or scientific value.

1.3     Prohibited publications include, but are not limited to:

   1.3.1    Publications that contain portrayal of actual or simulated acts or threatened acts of force or violence in a sexual context, including, but not limited to forcible intercourse (rape) or acts of sadomasochism emphasizing the infliction of pain.

   1.3.2    Publications that contain portrayal of actual or simulated acts or behaviors between a human being and an animal.

   1.3.3    Publications that contain portrayal of actual or simulated acts or behaviors in which one of the participants is a minor, or appears to be under the age of 18.

   1.3.4    Publications that include cartoons, animations, or other facsimiles of the above listed acts.