Index to Exhibits

Exhibit 1:          John W. Dovgan Subpoena

Exhibit 2:          Lawrence H. Mendel Subpoena

Exhibit 3:          Joseph V. Penn Subpoena

Exhibit 4:          Richard P. Seiter Subpoena

# EXHIBIT 1

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Arizona

| | | |
|---|---|---|
| Victor Parsons, et al., | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.    CV 12-00601-PHX-NVW |
| Charles Ryan, et al., | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## AMENDED SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   John W. Dovgan, c/o STRUCK WIENEKE & LOVE,  3100 W. Ray Road, Suite 300, Chandler, AZ 85226

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place:  Perkins Coie LLP | Date and Time: |
|---|---|
| 2901 N. Central Avenue, Suite 2000 | |
| Phoenix, Arizona 85012 | 03/06/2014 9:00 am |

The deposition will be recorded by this method:   stenographic

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

Described in Attachment A on or before January 31, 2014, c/o John H. Gray, Perkins Coie LLP, 2901 N. Central Avenue, Suite 2000, Phoenix, AZ 85012, 602-351-8092

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:    01/15/2014

CLERK OF COURT

OR

_____          s/ John H. Gray
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Prisoner Plaintiffs
_____ , who issues or requests this subpoena, are:
John H. Gray, Perkins Coie LLP, 2901 N. Central Avenue, Suite 2000, Phoenix, Arizona 85012, jhgray@perkinscoie.com, 602-351-8092

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:12-cv-00601-NVW

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____      on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____         _____
                                                        *Server's signature*

                                                      _____
                                                        *Printed name and title*

                                                      _____
                                                        *Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: dpochoda@acluaz.org
        kflood@acluaz.org
        jlyall@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Varma (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email:    skader@azdisabilitylaw.org
          avarma@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-NVW (MEA) <br><br><br> **ATTACHMENT A** |

SFI-848543v1

1   I.      INSTRUCTIONS:

2          1.      YOU are required to furnish all DOCUMENTS in YOUR possession,

3   custody, or control, including DOCUMENTS in the custody or control of YOUR

4   (1) employer; (2) consultants; (3) attorneys; (4) representatives; (5) AGENTS; or (6) any

5   other person acting or purporting to act on YOUR behalf or at YOUR direction in

6   connection with THIS LITIGATION, whether doing so directly or at the direction of

7   YOUR subordinates.  Possession, custody, or control includes DOCUMENTS stored in

8   electronic form by third party service providers but accessible to YOU, including but not

9   limited to email accounts, FTP servers, portable storage media such as USB drives, cloud

10  storage services such as Dropbox or SharePoint, and online workspaces such as WebEx.

11         2.      All non-identical copies of every DOCUMENT whose production is sought

12  shall be separately produced.

13         3.      Each request herein constitutes a request for DOCUMENTS in their

14  entirety, with all enclosures and attachments, and without abbreviation, redaction, or

15  expurgation.  DOCUMENTS attached to each other, including but not limited to, by

16  staple, clip, tape, email attachment, or "Post-It" note, should not be separated, although

17  any page on which a Post-It note covers or obscures text on the DOCUMENT should be

18  produced both with and without the Post-It note.  The production must also include, where

19  applicable, any index tabs, file dividers, designations, binder spine labels, or other similar

20  INFORMATION as to the source and/or location of the DOCUMENTS.

21         4.      YOU shall produce any and all drafts and copies of each DOCUMENT that

22  are responsive to any request, other than drafts of YOUR REPORT, including but not

23  limited to copies containing handwritten notes, markings, stamps, or interlineations.  The

24  author(s) of all hand-written notes should be identified.

25         5.      YOU shall produce all responsive DOCUMENTS as they have been kept in

26  the ordinary course of business.

27

28

SFI-848543v1

6.     Responsive DOCUMENTS that exist in electronic form, even if such DOCUMENTS also exist in paper form, shall be produced in electronic form according to the following protocol:

7.

a.     Electronic DOCUMENTS shall be produced electronically as single page, uniquely and sequentially numbered Group IV TIFF image files of not less than 300 dots per inch resolution, together with DOCUMENT level load files wherein the full text was extracted directly from the native file where possible.

b.     For files produced in TIFF image form, each page of a produced DOCUMENT shall have a legible, unique production number electronically "burned" onto the TIFF image in such a manner that INFORMATION from the source DOCUMENT is not obliterated, concealed, or interfered with, preferably in the lower right corner of the DOCUMENT.  The production number shall contain at least six digits.  There shall be no other legend or stamp placed on the DOCUMENT image, unless a DOCUMENT qualifies for confidential treatment pursuant to the terms of any protective order in this matter, or if the DOCUMENT requires redaction.  In the case of confidential materials as defined by any protective order in this matter, any applicable designation may be "burned" onto the DOCUMENT's image at a location that does not obliterate or obscure any INFORMATION from the source DOCUMENT, preferably in the lower left corner.

c.     Each DOCUMENT image file shall be named with the unique production number of the page of the DOCUMENT in question, followed by the extension ".tif".  File names should not be more than 20 characters long or contain spaces.

d.     For files produced in TIFF image format, each page of a DOCUMENT shall be electronically saved as an image file.  If a

SFI-848543v1                                    -2-

1  DOCUMENT is more than one page, the unitization of the DOCUMENT

2  and any attachments and/or affixed notes shall be maintained as they existed

3  in the original DOCUMENT.

4      e.    TIFF images shall be accompanied by a standard load file containing

5  the metadata and other fields identified in Paragraph 7(j) of these

6  Instructions, below.  The load file shall be produced in one of the following

7  industry-standard formats:  (1) Concordance delimited file (".dat");

8  (2) comma-separated value file (".csv"); or (3) TAB delimited file.  TIFF

9  images shall also be accompanied by either an Opticon delimited cross-

10  reference file (".opt") or IPRO View LFP comma-delimited file showing

11  DOCUMENT breaks and appropriate DOCUMENT unitization.

12      f.    In addition to TIFF images, each production of electronic

13  DOCUMENTS shall include searchable text files corresponding to the TIFF

14  images for each DOCUMENT.  The full text of each native electronic

15  DOCUMENT, excluding redacted DOCUMENTS, shall be extracted

16  directly from the native file and produced in a DOCUMENT-level related

17  text file (the "Extracted Text"). The Extracted Text shall be provided in

18  searchable ASCII text format (or Unicode text format if the text is in a

19  foreign language) and shall be named with the unique production number of

20  the first page of the corresponding TIFF DOCUMENT followed by the

21  extension ".txt".  YOU shall also perform OCR on certain types of non-text

22  based static image ESI, such as native PDF image files, and produce the

23  corresponding DOCUMENT-level related text files.  Searchable text files

24  shall be generated from Extracted Text where available.

25      g.    DOCUMENTS shall be produced on optical media (CD or DVD) or

26  external hard drives or similar, readily accessible electronic media (the

27  "Production Media").  Each piece of Production Media shall identify a

28  production number corresponding to the party and production with which

1    the DOCUMENTS on the Production Media are associated (e.g.,

2    "[EXPERT NAME] 001"), as well as the volume of the material in that

3    production (e.g., "- 001", "-002").  The face of each piece of Production

4    Media shall also identify:  (1) the production date; and (2) the production

5    number range of the materials contained on the Production Media.

6    h.    Presentation DOCUMENTS (such as Microsoft PowerPoint

7    DOCUMENTS) shall be produced with one slide per page together with any

8    "Speaker's Notes" or similar pages appended to, or otherwise associated

9    with, each slide. Presentation DOCUMENTS shall also be produced

10   according to all other applicable Instructions set forth in this set of requests.

11   i.    Unless redaction is required, spreadsheet DOCUMENTS (such as

12   Microsoft Excel DOCUMENTS) shall be produced in native format,

13   together with a single page TIFF placeholder bearing the legend "Native

14   File Produced" and load files containing the agreed upon metadata,

15   extracted text, production numbers and any applicable confidentiality labels

16   as described above.  If redaction is required, then spreadsheets shall be

17   produced in TIFF image format as set forth above.

18   j.    For all DOCUMENTS for which metadata exists, the load files

19   described above shall be produced including the following fields:

20

| Fields for all DOCUMENTS | Description |
|---|---|
| BegProd | Beginning production number assigned to each DOCUMENT |
| EndProd | Ending production number assigned to each DOCUMENT |
| BegAttach | Beginning production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any |

28

| | |
|---|---|
| | attachment DOCUMENTS are associated |
| EndAttach | Ending production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| Custodian | The name of the person or source from which the DOCUMENT was obtained |
| FileName | Original file name |
| FilePath | Original file path |
| DocExt | DOCUMENT type as identified by metadata associated with the native DOCUMENT indicating the extension of the application that created the native DOCUMENT (e.g., .doc, .ppt, etc.) |
| HashValue | The unique identifying value assigned to a DOCUMENT based on hash coding algorithms |
| Author | The person or source that originated the DOCUMENT |
| DateCreated | Date that the DOCUMENT was created (as reflected by metadata) |
| LastModifiedDate | Date that the file was last modified (as reflected by metadata) |
| FullText | The path or link to the searchable Extracted or OCR text for a |

| | DOCUMENT |
|---|---|
| NativeFile | The path or link to a processed and produced native file, to the extent the production contains native files |
| Confidentiality | The confidentiality designation for the DOCUMENT, as defined by any protective order in this matter |
| **Additional Fields for Email** | **Description** |
| To | All INFORMATION contained in the "To" field of an email |
| From | All INFORMATION contained in the "From" field of an email |
| CC | All INFORMATION contained in the "CC" field of an email |
| BCC | All INFORMATION contained in the "BCC" field of an email |
| DateSent | Date the email was sent, including month, day and year |
| TimeSent | Time the email was sent, including hour, minute, second and time zone. To the extent this INFORMATION is already included in the DateSent field in the metadata, YOU need not parse TimeSent as a separate field. |
| DateReceived | Date the email was received, including the month, day and year |
| TimeReceived | Time the email was received, including |

| | hour, minute, second and time zone. To the extent this INFORMATION is already included in the DateReceived field in the metadata, YOU need not parse TimeReceived as a separate field. |
|---|---|
| Subject | Subject or "Re:" line, as stated in the email |

8.     If with respect to any request there are no responsive DOCUMENTS, so state in writing.

9.     The following rules of construction shall be applied herein: (a) the words "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; (b) the use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural; (c) the words "any," "all," "each," and "every" all include any, all, each, and every and shall be understood in either their most or least inclusive sense as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; and (d) the use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the DOCUMENT requests all responses that might otherwise be construed to be outside of their scope.

10.     If YOU object to a portion or an aspect of a request, state the grounds for YOUR objection with specificity and respond to the remainder of the DOCUMENT request. If any DOCUMENTS, or portion thereof, are withheld because YOU claim that such INFORMATION is protected under the attorney-client privilege, work product doctrine, or other privilege or doctrine, YOU are required to provide a privilege log

1  setting forth the specific basis for the claim of privilege or protection and for each

2  DOCUMENT provide the following:

3         a.     the subject matter of the DOCUMENT;

4         b.     the title, heading or caption of the DOCUMENT, if any;

5         c.     the date appearing on the DOCUMENT or, if no date appears

6  thereon, the date or approximate date on which the DOCUMENT was prepared;

7         d.     the type of the DOCUMENT (e.g., whether it is a letter,

8  memorandum, minutes of meeting, etc.) and the number of pages of which it

9  consists;

10        e.     the identity of the person who signed the DOCUMENT or, if it was

11  not signed, the person who prepared it;

12        f.     the identity of each person to whom the DOCUMENT was addressed

13  and the identity of each person to whom a copy thereof was sent; and

14        g.     the identity of each person who has custody of a copy of each such

15  DOCUMENT.

16        11.    If YOU claim that a portion of a DOCUMENT is protected from disclosure

17  for any reason, produce such DOCUMENT with redaction of only the portion claimed to

18  be protected.  When such redactions for privilege or protection are made, YOU shall place

19  a legend similar to "REDACTION – PRIVILEGE" on the copy of the DOCUMENT

20  produced.  All redactions shall also be included on the privilege log as described above.

21        12.    If YOU object that a request is vague or ambiguous, identify the

22  objectionable aspect of the request.

23        13.    If a request cannot be responded to in full, YOU shall respond to the extent

24  possible, specify the reason for YOUR inability to respond to the remainder, and state

25  whatever INFORMATION or knowledge YOU have REGARDING the portion to which

26  YOU have not responded.

27        14.    If any DOCUMENT called for by these requests has been destroyed, lost,

28  discarded, or is otherwise no longer in YOUR possession, custody, or control, identify

1   such DOCUMENT as completely as possible, and specify the date of disposal of the

2   DOCUMENT, the manner of disposal, the reason for disposal, the person authorizing

3   disposal, and the person disposing of the DOCUMENT.

4   II.     DEFINITIONS:

5          1.      "ADC" means the Arizona Department of Corrections, including all its

6   subdivisions, AGENTS, employees, CONTRACTORS, and attorneys.

7          2.      "AFFILIATED" means connected in some way.

8          3.      "ASSUMPTIONS" means any representation on which YOU were asked to

9   rely without independent proof or substantiation.  It includes hunches, hypotheses,

10  INFORMATION about prisons, prisoners, health care or any other matter bearing on this

11  case, inferences, presumptions, theories, conditions, presuppositions, alleged historical

12  matter or descriptions of events.

13         4.      "COMMUNICATIONS" means any transmittal of INFORMATION from

14  one person or entity to another by any means, including letters, correspondence, notes,

15  memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied

16  or blind copied), electronic mail generated from a hand held personal device including a

17  Blackberry or iPhone, instant messaging, electronic mail generated from business or

18  personal email accounts, internet relay chat, news group, group or collaboration servers,

19  electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings,

20  audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes,

21  teleconference, collaboration servers (including share point servers), web-based or

22  software virtual meetings including WebEx and any other meeting software and share

23  point servers, and oral contact such as face-to-face discussions or meetings, telephone

24  conversations, and voice mail messages.

25         5.      "CONTRACTORS" means anyone working for an entity pursuant to agreed

26  terms, such as by contract, rather than as an employee.

27         6.      "CORIZON" means the health care provider company that contracted to

28  take over health care for prisoners in the ADC beginning March 4, 2013, and its corporate

1    predecessors or successors, employees, subordinates, CONTRACTORS, AGENTS,

2    attorneys, or anyone else AFFILIATED with it.

3        7.    "DEFENDANTS or their AGENTS" means Defendants Charles Ryan and

4    Richard Pratt, and their predecessors, successors, employees, subordinates,

5    CONTRACTORS, AGENTS, attorneys, or any other person or entity acting in support of

6    the defense of THIS LITIGATION or on their behalf in THIS LITIGATION.

7        8.    "DEFENDANTS' COUNSEL" refers to any of the lawyers or other

8    personnel at the Struck, Weineke & Love, P.L.C. law firm, the Office of the Attorney

9    General of Arizona, or the ADC when acting as counsel for Defendants in THIS

10   LITIGATION.

11       9.    "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule

12   34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or

13   record of every type and description and every tangible thing that is or has been in the

14   possession, custody, or control of DEFENDANTS and the ADC, to which they have

15   access, or of which they have knowledge, including, but not limited to,

16   COMMUNICATIONS, newspaper articles, magazine articles, news articles,

17   correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes,

18   handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase

19   orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-

20   purchase materials, notebooks, diaries, models, devices, pictures, photographs, films,

21   audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys,

22   minutes, data compilations, and statistical compilations, regardless of whether a particular

23   DOCUMENT is privileged or confidential, and regardless of the form of storage

24   (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk

25   or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device).

26   "DOCUMENT" and "DOCUMENTS" includes, but is not limited to, all DOCUMENTS

27   generated by or maintained in the Director's Project Tracking System, official ADC

28   papers, and the ADC's intranet.

10.     "IN CONNECTION WITH YOUR REPORT" means any activity performed by YOU for DEFENDANTS in connection with the preparation of any iteration of YOUR REPORT.

11.     "INFORMATION" means any knowledge, evidence of any type, facts, data, intelligence, speculation or material of any kind relating to the subject matter of the request.

12.     "NAMED PLAINTIFFS" means the individual plaintiffs who filed the Complaint in this matter, as set forth in the caption to this document.

13.     "OTHER EXPERTS" means any expert other than YOU ALONE who has been retained by or is being paid by DEFENDANTS, or is otherwise expected to provide expert testimony in connection with THIS LITIGATION.

14.     "PAYMENT" means compensation of any type, whether actually paid or promised.  It is not limited to compensation for work forming the opinions expressed in YOUR REPORT, but extends to all compensation for YOUR work in connection with YOUR SERVICE AS AN EXPERT, including any study undertaken by YOU and compensation for YOUR testimony.  This includes all COMMUNICATIONS about additional benefits to YOU, if any, even if not to be paid in this case.  "PAYMENT" expressly includes compensation for work done by a person or organization associated with the expert named in this subpoena, even if not done by him.

15.     "RECEIVED OR HAD ACCESS TO" means RECEIVED by YOU ALONE or by anyone acting on YOUR behalf or at YOUR direction in connection with THIS LITIGATION.  This definition includes anything that YOU ALONE (or anyone acting on YOUR behalf or at YOUR direction) had the ability to review, even if only for a limited period of time.

16.     "REFER" means making reference to, related to, consisting of, REFLECTING, concerning, discussing, evidencing, commenting on, describing, constituting, supporting, contradicting or having any logical or factual connection with the matter identified, in whole or in part.

17.     "REFLECT" means to manifest or show, in whole or in part and includes passing references to a subject.

18.     "REGARDING" means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers to, relates to, responds to, states, summarizes, or is in any way relevant to the identified subject.

19.     "SPDS" means Smallwood Prison Dental Services, and its corporate predecessors or successors, employees, subordinates, CONTRACTORS, AGENTS, attorneys, or anyone else AFFILIATED with it.

20.     "THIS LITIGATION" refers to the matter captioned *Parsons v. Ryan*, Docket No. 2:12-cv-00601-NVW, pending in the United States District Court for the District of Arizona, as reflected in the caption set forth at the top of this pleading.

21.     "WEXFORD" means Wexford Health Sources, Incorporated.

22.     "YOU" or "YOUR" mean the individual named in this subpoena and all persons assisting or acting at the direction of that person in connection with THIS LITIGATION.

23.     "YOU ALONE" means only the individual who is named in this subpoena.

24.     "YOUR REPORT" means any REPORT prepared by YOU as an expert report in connection with THIS LITIGATION and served on or about December 18, 2013 by Defendants.  It should be read to include all amendments, updates, rebuttal reports or any other report that adds to, expands upon or varies in any way the content of the REPORT served on December 18, 2013 or the testimony YOU intend to offer in THIS LITIGATION.

25.     "YOUR SERVICE AS AN EXPERT" means everything done by YOU in connection with THIS LITIGATION, including everything for which YOU have or YOU intend to bill DEFENDANTS.

III.  REQUESTS FOR PRODUCTION OF DOCUMENTS:

1.      All DOCUMENTS not previously produced IN CONNECTION WITH YOUR REPORT that contain facts or data that YOU RECEIVED OR HAD ACCESS TO in connection with YOUR SERVICE AS AN EXPERT.

2.      All DOCUMENTS not previously produced that relate to PAYMENT to YOU, YOUR employer or anyone else AFFILIATED with YOU by DEFENDANTS or their AGENTS, regardless of the matter for which YOU were paid.

3.      All notes maintained by YOU in connection with YOUR SERVICE AS AN EXPERT.

4.      All DOCUMENTS that REFLECT or refer to ASSUMPTIONS that YOU made or were asked to make in connection with YOUR SERVICE AS AN EXPERT.

5.      All COMMUNICATIONS with anyone, including any COMMUNICATIONS with any employee of ADC, CORIZON, WEXFORD, or SPDS, or with OTHER EXPERTS retained by DEFENDANTS, in connection with YOUR SERVICE AS AN EXPERT.  This also shall include all COMMUNICATIONS with DEFENDANTS' COUNSEL, if those COMMUNICATIONS (i) relate to compensation for YOUR study or testimony; (ii) identify facts or data that counsel provided and that YOU considered in forming the opinions in YOUR REPORT; or (iii) identify ASSUMPTIONS that counsel provided and that YOU relied on in forming the opinions in YOUR REPORT.

6.      Transcripts of testimony that YOU have given in the last 5 years where the topic of the testimony related to YOUR professional activities.

7.      The dental records for 155 inmates YOU reviewed as referenced in YOUR REPORT at pages 7, 31, 35-38, 53-66 and Exhibit B to YOUR REPORT.

8.      Photographs taken by YOU or reviewed or relied on by YOU in connection with YOUR SERVICE AS AN EXPERT in THIS LITIGATION, except to the extent they appear in the body of YOUR REPORT, this includes similar but not identical images.

9.      All DOCUMENTS relating to the SPDS patient reports for 21 inmates

1    referenced in Exhibit B, page 9 of YOUR REPORT.

2        10.    DOCUMENTS referencing the out-to-court dates for various inmates as

3    reference in Exhibit B, page 11 of YOUR REPORT.

4        11.    AIMS Movement Reports, as referenced in Exhibit B, page 11 of YOUR

5    REPORT.

6        12.    All DOCUMENTS relating to the Dental Instructional Video provided to

7    inmates, as referenced in Exhibit B, page 11 of YOUR REPORT.

8        13.    All DOCUMENTS relating to the charts showing wait times as of

9    November 22, 2013, as referenced on pages 13-16 of YOUR REPORT.

10       14.    ALL DOCUMENTS relating to the "Routine Wait Times-Months" bar

11   chart, appearing on page 15 of YOUR REPORT.

12       15.    ALL DOCUMENTS relating to the March 2013-November 2013 table of

13   Routine Wait Times in months for various ADC facilities, appearing on page 15 of YOUR

14   REPORT.

15       16.    ALL DOCUMENTS relating to the March 2013-November 2013 table of

16   Intake Wait Times in months for various ADC facilities, appearing on page 16 of YOUR

17   REPORT.

18       17.    All "wait time" INFORMATION YOU have had access to.

19       18.    All documents relating to Shanna Bartman (#155161), as referenced on

20   page 17 of YOUR REPORT.

21       19.    All DOCUMENTS relating to extraction and filling data as referenced on

22   pages 21-22 of YOUR REPORT.

23       20.    The data used to generate the charts on pages 66-69 of YOUR REPORT.

24       21.    All DOCUMENTS relating to inmates whom YOU claim have received

25   dental care since Shulman's tour as referenced on page 72 of YOUR REPORT.

26       22.    All of YOUR notes of meetings or interviews with prison unit correctional

27   and healthcare leadership and/or any persons YOU questioned individually or in groups in

28   connection with YOUR SERVICE AS AN EXPERT in THIS LITIGATION, including all

1    DOCUMENTS.

2        23.    All DOCUMENTS relating to "meth mouth" or lack of care prior to custody

3    of ADC prisoners, including DOCUMENTS relating to the prevalence of such conditions

4    in the ADC.

5        24.    All DOCUMENTS relating to ADC policies and procedures that YOU

6    reviewed or had access to in connection with drafting YOUR report.

7        25.    All DOCUMENTS relating to dental emergencies as referenced on page 13,

8    including all DOCUMENTS YOU reviewed to test the assertions of what the dentists and

9    dental assistants YOU spoke to told YOU about the handling of dental emergencies and

10   their transport to local hospitals.

11       26.    All DOCUMENTS on which YOU based YOUR statements REGARDING

12   after-hours care as referenced on page 13 of YOUR REPORT.

13       27.    All DOCUMENTS REFLECTING INFORMATION YOU obtained from

14   Dr. Smallwood.

15       28.  All SPDS DOCUMENTS YOU reviewed REFLECTING or relating to

16   staffing, monthly reports, utilization summaries, or wait times.

17       29.    All PowerPoint presentations, whether in draft or final, that YOU created or

18   reviewed in connection with your retention as an expert in this case.

19       30.    Reports or statements that YOU have drafted in the last 5 years where the

20   topic of the report or statement related to YOUR professional activities. This request

21   includes without limitation the consultations and expert reports referenced in your report

22   at page 1.

23       31.    Any reports or statements that YOU have drafted relating to the dental care

24   provided by an entire institution.

25   Dated:  January 13, 2014

26

27

28

1

**JONES DAY**

2

By: _____
Caroline Mitchell (Cal. 143124)*
Sophia Calderón (Cal. 278315)*
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email:   cnmitchell@jonesday.com
          scalderon@jonesday.com
*Admitted *pro hac vice*

3

4

5

6

7

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:    dbarr@perkinscoie.com
           agerlicher@perkinscoie.com
           keidenbach@perkinscoie.com
           jhgray@perkinscoie.com
           mdumee@perkinscoie.com

8

9

10

11

12

13

14

15

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF
ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:    dpochoda@acluaz.org
           kflood@acluaz.org
           jlyall@acluaz.org

16

17

18

19

20

21

*Admitted pursuant to Ariz. Sup. Ct.
R. 38(f)

22

23

24

25

26

27

28

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:     dspecter@prisonlaw.com
           ahardy@prisonlaw.com
           snorman@prisonlaw.com
           ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON
PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@npp-aclu.org
           afettig@npp-aclu.org
           aquereshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted
 in DC; practice limited to federal
 courts.
**Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:     jlwilkes@jonesday.com
           tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:     kmamedova@jonesday.com
           jkmessina@jonesday.com

*Admitted *pro hac vice*

1

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

Sarah Kader (Bar No. 027147)
Asim Varma (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email:    skader@azdisabilitylaw.org
              avarma@azdisabilitylaw.org

J.J. Rico (Bar No. 021292)
Cathleen M. Dooley (Bar No. 022420)
**ARIZONA CENTER FOR DISABILITY LAW**
100 N. Stone Avenue, Suite 305
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:    jrico@azdisabilitylaw.org
              cdooley@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

# EXHIBIT 2

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | | |
|---|---|---|
| Parsons, et al., | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No.   2:12-cv-00601-NVW |
| Ryan, et al., | ) | |
| _Defendant_ | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:          Lawrence H. Mendel, D.O., FSCP, CCHP c/o Daniel P. Struck

_____
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Jones Day | Date and Time: |
|---|---|
| 325 John H. McConnell Boulevard, Suite 600 Columbus, Ohio  43215-2673 | 03/12/2014 9:30 am |

The deposition will be recorded by this method:   stenographically, and via video and audio

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: Described in Appendix A on or before January 29, 2014 c/o Kristine Kaniclides, Jones Day, 325 John H. McConnell Boulevard, Suite 600, Columbus, Ohio  43215-2673

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    01/07/2014

| CLERK OF COURT | | |
|---|---|---|
| | OR | _Caroline Mitchell_ |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    for Shawn Jensen et al. _____ , who issues or requests this subpoena, are:

Caroline Mitchell, Jones Day, 555 California Street, 26th Floor, San Francisco, CA  94104, email: cnmitchell@jonesday.com; telephone:  415-875-5712

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  2:12-cv-00601-NVW

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

 **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

1  Daniel Pochoda (Bar No. 021979)
   Kelly J. Flood (Bar No. 019772)
2  James Duff Lyall (Bar No. 330045)*
   **ACLU FOUNDATION OF ARIZONA**
3  3707 North 7th Street, Suite 235
   Phoenix, Arizona 85013
4  Telephone: (602) 650-1854
   Email: dpochoda@acluaz.org
5         kflood@acluaz.org
          jlyall@acluaz.org
6  *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7  *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin*
   *Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
8  *Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci,*
   *Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of*
9  *themselves and all others similarly situated*

10 **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

   Sarah Kader (Bar No. 027147)
11 Asim Varma (Bar No. 027927)
   **ARIZONA CENTER FOR DISABILITY LAW**
12 5025 East Washington Street, Suite 202
   Phoenix, Arizona 85034
13 Telephone: (602) 274-6287
   Email:    skader@azdisabilitylaw.org
14           avarma@azdisabilitylaw.org

15 *Attorneys for Plaintiff Arizona Center for Disability Law*

16 **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

17

18                 UNITED STATES DISTRICT COURT

19                     DISTRICT OF ARIZONA

20 Victor Parsons; Shawn Jensen; Stephen Swartz;      No. CV 12-00601-PHX-NVW
   Dustin Brislan; Sonia Rodriguez; Christina         (MEA)
21 Verduzco; Jackie Thomas; Jeremy Smith; Robert
   Gamez; Maryanne Chisholm; Desiree Licci; Joseph
22 Hefner; Joshua Polson; and Charlotte Wells, on     **ATTACHMENT A**
   behalf of themselves and all others similarly
23 situated; and Arizona Center for Disability Law,

24                                Plaintiffs,

           v.
25
   Charles Ryan, Director, Arizona Department of
26 Corrections; and Richard Pratt, Interim Division
   Director, Division of Health Services, Arizona
27 Department of Corrections, in their official
   capacities,
28
                                Defendants.

SFI-848309v1

I.    INSTRUCTIONS:

1.      YOU are required to furnish all DOCUMENTS in YOUR possession, custody, or control, including document custody or control of YOUR (1) employer; (2) consultants; (3) attorneys; (4) representatives; (5) AGENTS; or (6) any other person acting or purporting to act on YOUR behalf or at YOUR direction in connection with THIS LITIGATION, whether doing so directly or at the direction of YOUR subordinates. Possession, custody, or control includes DOCUMENTS stored in electronic form by third party service providers but accessible to YOU, including but not limited to email accounts, FTP servers, portable storage media such as USB drives, cloud storage services such as Dropbox or SharePoint, and online workspaces such as WebEx.

2.      All non-identical copies of every DOCUMENT whose production is sought shall be separately produced.

3.      Each request herein constitutes a request for DOCUMENTS in their entirety, with all enclosures and attachments, and without abbreviation, redaction, or expurgation.  DOCUMENTS attached to each other, including but not limited to, by staple, clip, tape, email attachment, or "Post-It" note, should not be separated, although any page on which a Post-It note covers or obscures text on the DOCUMENT should be produced both with and without the Post-It note.  The production must also include, where applicable, any index tabs, file dividers, designations, binder spine labels, or other similar INFORMATION as to the source and/or location of the DOCUMENTS.

4.      YOU shall produce any and all drafts and copies of each DOCUMENT that are responsive to any request, other than drafts of YOUR REPORT, including but not limited to copies containing handwritten notes, markings, stamps, or interlineations.  The author(s) of all hand-written notes should be identified.

5.      YOU shall produce all responsive DOCUMENTS as they have been kept in the ordinary course of business.

SFI-848309v1

6.    Responsive DOCUMENTS that exist in electronic form, even if such DOCUMENTS also exist in paper form, shall be produced in electronic form according to the following protocol:

7.

a.    Electronic DOCUMENTS shall be produced electronically as single page, uniquely and sequentially numbered Group IV TIFF image files of not less than 300 dots per inch resolution, together with DOCUMENT level load files wherein the full text was extracted directly from the native file where possible.

b.    For files produced in TIFF image form, each page of a produced DOCUMENT shall have a legible, unique production number electronically "burned" onto the TIFF image in such a manner that INFORMATION from the source DOCUMENT is not obliterated, concealed, or interfered with, preferably in the lower right corner of the DOCUMENT. The production number shall contain at least six digits. There shall be no other legend or stamp placed on the DOCUMENT image, unless a DOCUMENT qualifies for confidential treatment pursuant to the terms of any protective order in this matter, or if the DOCUMENT requires redaction. In the case of confidential materials as defined by any protective order in this matter, any applicable designation may be "burned" onto the DOCUMENT's image at a location that does not obliterate or obscure any INFORMATION from the source DOCUMENT, preferably in the lower left corner.

c.    Each DOCUMENT image file shall be named with the unique production number of the page of the DOCUMENT in question, followed by the extension ".tif". File names should not be more than 20 characters long or contain spaces.

d.    For files produced in TIFF image format, each page of a DOCUMENT shall be electronically saved as an image file. If a

DOCUMENT is more than one page, the unitization of the DOCUMENT and any attachments and/or affixed notes shall be maintained as they existed in the original DOCUMENT.

e.    TIFF images shall be accompanied by a standard load file containing the metadata and other fields identified in Paragraph 7(j) of these Instructions, below.  The load file shall be produced in one of the following industry-standard formats:  (1) Concordance delimited file (".dat"); (2) comma-separated value file (".csv"); or (3) TAB delimited file.  TIFF images shall also be accompanied by either an Opticon delimited cross-reference file (".opt") or IPRO View LFP comma-delimited file showing DOCUMENT breaks and appropriate DOCUMENT unitization.

f.    In addition to TIFF images, each production of electronic DOCUMENTS shall include searchable text files corresponding to the TIFF images for each DOCUMENT.  The full text of each native electronic DOCUMENT, excluding redacted DOCUMENTS, shall be extracted directly from the native file and produced in a DOCUMENT-level related text file (the "Extracted Text"). The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with the unique production number of the first page of the corresponding TIFF DOCUMENT followed by the extension ".txt".  YOU shall also perform OCR on certain types of non-text based static image ESI, such as native PDF image files, and produce the corresponding DOCUMENT-level related text files.  Searchable text files shall be generated from Extracted Text where available.

g.    DOCUMENTS shall be produced on optical media (CD or DVD) or external hard drives or similar, readily accessible electronic media (the "Production Media").  Each piece of Production Media shall IDENTIFY a production number corresponding to the party and production with which

the DOCUMENTS on the Production Media are associated (e.g.,
"[EXPERT NAME] 001"), as well as the volume of the material in that
production (e.g., "- 001", "-002").  The face of each piece of Production
Media shall also IDENTIFY:  (1) the production date; and (2) the
production number range of the materials contained on the Production
Media.

h.     Presentation DOCUMENTS (such as Microsoft PowerPoint
DOCUMENTS) shall be produced with one slide per page together with any
"Speaker's Notes" or similar pages appended to, or otherwise associated
with, each slide. Presentation DOCUMENTS shall also be produced
according to all other applicable Instructions set forth in this set of requests.

i.      Unless redaction is required, spreadsheet DOCUMENTS (such as
Microsoft Excel DOCUMENTS) shall be produced in native format,
together with a single page TIFF placeholder bearing the legend "Native
File Produced" and load files containing the agreed upon metadata,
extracted text, production numbers and any applicable confidentiality labels
as described above.  If redaction is required, then spreadsheets shall be
produced in TIFF image format as set forth above.

j.      For all DOCUMENTS for which metadata exists, the load files
described above shall be produced including the following fields:

| Fields for all DOCUMENTS | Description |
| --- | --- |
| BegProd | Beginning production number assigned to each DOCUMENT |
| EndProd | Ending production number assigned to each DOCUMENT |
| BegAttach | Beginning production number assigned to the group of DOCUMENTS to which |

| | |
|---|---|
| | the parent DOCUMENT and any attachment DOCUMENTS are associated |
| EndAttach | Ending production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| Custodian | The name of the person or source from which the DOCUMENT was obtained |
| FileName | Original file name |
| FilePath | Original file path |
| DocExt | DOCUMENT type as identified by metadata associated with the native DOCUMENT indicating the extension of the application that created the native DOCUMENT (e.g., .doc, .ppt, etc.) |
| HashValue | The unique identifying value assigned to a DOCUMENT based on hash coding algorithms |
| Author | The person or source that originated the DOCUMENT |
| DateCreated | Date that the DOCUMENT was created (as reflected by metadata) |
| LastModifiedDate | Date that the file was last modified (as reflected by metadata) |
| FullText | The path or link to the searchable |

| | |
|---|---|
| | Extracted or OCR text for a DOCUMENT |
| NativeFile | The path or link to a processed and produced native file, to the extent the production contains native files |
| Confidentiality | The confidentiality designation for the DOCUMENT, as defined by any protective order in this matter |
| **Additional Fields for Email** | **Description** |
| To | All information contained in the "To" field of an email |
| From | All information contained in the "From" field of an email |
| CC | All information contained in the "CC" field of an email |
| BCC | All information contained in the "BCC" field of an email |
| DateSent | Date the email was sent, including month, day and year |
| TimeSent | Time the email was sent, including hour, minute, second and time zone. To the extent this information is already included in the DateSent field in the metadata, YOU need not parse TimeSent as a separate field. |
| DateReceived | Date the email was received, including the month, day and year |

| TimeReceived | Time the email was received, including hour, minute, second and time zone. To the extent this information is already included in the DateReceived field in the metadata, YOU need not parse TimeReceived as a separate field. |
| Subject | Subject or "Re:" line, as stated in the email |

8.    If with respect to any request there are no responsive DOCUMENTS, so state in writing.

9.    The following rules of construction shall be applied herein: (a) the words "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; (b) the use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural; (c) the words "any," "all," "each," and "every" all include any, all, each, and every and shall be understood in either their most or least inclusive sense as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; and (d) the use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the DOCUMENT requests all responses that might otherwise be construed to be outside of their scope.

10.    If YOU object to a portion or an aspect of a request, state the grounds for YOUR objection with specificity and respond to the remainder of the DOCUMENT request. If any DOCUMENTS, or portion thereof, are withheld because YOU claim that such INFORMATION is protected under the attorney-client privilege, work product doctrine, or other privilege or doctrine, YOU are required to provide a privilege log

setting forth the specific basis for the claim of privilege or protection and for each

DOCUMENT provide the following:

        a.    the subject matter of the DOCUMENT;

        b.    the title, heading or caption of the DOCUMENT, if any;

        c.    the date appearing on the DOCUMENT or, if no date appears

thereon, the date or approximate date on which the DOCUMENT was prepared;

        d.    the type of the DOCUMENT (e.g., whether it is a letter,

memorandum, MINUTES   of meeting, etc.) and the number of pages of which it

consists;

        e.    the identity of the person who signed the DOCUMENT or, if it was

not signed, the person who prepared it;

        f.    the identity of each person to whom the DOCUMENT was addressed

and the identity of each person to whom a copy thereof was sent; and

        g.    the identity of each person who has custody of a copy of each such

DOCUMENT.

11.    If YOU claim that a portion of a DOCUMENT is protected from disclosure

for any reason, produce such DOCUMENT with redaction of only the portion claimed to

be protected.  When such redactions for privilege or protection are made, YOU shall place

a legend similar to "REDACTION – PRIVILEGE" on the copy of the DOCUMENT

produced.  All redactions shall also be included on the privilege log as described above.

12.    If YOU object that a request is vague or ambiguous, IDENTIFY the

objectionable aspect of the request.

13.    If a request cannot be responded to in full, YOU shall respond to the extent

possible, specify the reason for YOUR inability to respond to the remainder, and state

whatever INFORMATION or knowledge YOU have REGARDING the portion to which

YOU have not responded.

14.    If any DOCUMENT called for by these requests has been destroyed, lost,

discarded, or is otherwise no longer in YOUR possession, custody, or control, IDENTIFY

1   such DOCUMENT as completely as possible, and specify the date of disposal of the

2   DOCUMENT, the manner of disposal, the reason for disposal, the person authorizing

3   disposal, and the person disposing of the DOCUMENT.

4   II.     DEFINITIONS:

5       1.      "ADC" means the Arizona Department of Corrections, including all its

6   subdivisions, AGENTS, employees, CONTRACTORS, and attorneys.

7       2.      "AFFILIATED" means connected in some way.

8       3.      "ASSUMPTIONS" means any representation on which YOU were asked to

9   rely without independent proof or substantiation.  It includes hunches, hypotheses,

10   information about prisons, prisoners, medical care or any other matter bearing on this

11   case, inferences, presumptions, theories, conditions, presuppositions, alleged historical

12   matter or descriptions of events.

13       4.      "COMMUNICATIONS" means any transmittal of information from one

14   person or entity to another by any means, including letters, correspondence, notes,

15   memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied

16   or blind copied), electronic mail generated from a hand held personal device including a

17   Blackberry or iPhone, instant messaging, electronic mail generated from business or

18   personal email accounts, internet relay chat, news group, group or collaboration servers,

19   electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings,

20   audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes,

21   teleconference, collaboration servers (including share point servers), web-based or

22   software virtual meetings including Web-X and any other meeting software and share

23   point servers, and oral contact such as face-to-face discussions or meetings, telephone

24   conversations, and voice mail messages.

25       5.      "CONTRACTORS" means anyone working for an entity pursuant to agreed

26   terms, such as by contract, rather than as an employee.

27       6.      "CORIZON" means the health care provider company that contracted to

28   take over health care for PRISONERS in the ADC beginning March 4, 2013, and its

1  corporate predecessors or successors, employees, subordinates, CONTRACTORS,

2  AGENTS, attorneys, or anyone else AFFILIATED with it.

3        7.     "DEFENDANTS or their AGENTS" means Defendants Charles Ryan and

4  Richard Pratt, and their predecessors, successors, employees, subordinates,

5  CONTRACTORS, AGENTS, attorneys, or any other person or entity acting in support of

6  the defense of THIS LITIGATION or on their behalf in THIS LITIGATION.

7        8.     "DEFENDANTS' COUNSEL" refers to any of the lawyers at the Struck,

8  Weineke & Love, P.L.C. law firm, the Office of the Attorney General for Arizona, or the

9  ADC  when acting as counsel for Defendants in THIS LITIGATION.

10       9.     "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule

11 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or

12 record of every type and description and every tangible thing that is or has been in the

13 possession, custody, or control of DEFENDANTS and the ADC, to which they have

14 access, or of which they have knowledge, including, but not limited to,

15 COMMUNICATIONS, newspaper articles, magazine articles, news articles,

16 correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes,

17 handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase

18 orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-

19 purchase materials, notebooks, diaries, models, devices, pictures, photographs, films,

20 audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys,

21 minutes, data compilations, and statistical compilations, regardless of whether a particular

22 DOCUMENT is privileged or confidential, and regardless of the form of storage

23 (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk

24 or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device).

25 "DOCUMENT" and "DOCUMENTS" includes, but is not limited to, all DOCUMENTS

26 generated by or maintained in the Director's Project Tracking System, official ADC

27 papers, and the ADC's intranet.

28

10.    "GRIEVANCE" means the same thing as is meant by the use of the word "grievance" or "grievances" on pages 3, 4, 11, and 15 of YOUR REPORT.

11.    "IN CONNECTION WITH YOUR REPORT" means any activity performed by YOU for DEFENDANTS in connection with the preparation of any iteration of YOUR REPORT.

12.    "NAMED PLAINTIFFS" means the individual plaintiffs who filed the Complaint in this matter, as set forth in the caption to this document.

13.    "OTHER EXPERTS" means any expert other than YOU ALONE who has been retained by or is being paid by DEFENDANTS in connection with THIS LITIGATION.

14.    "PAYMENT" means compensation of any type, whether actually paid or promised. It is not limited to compensation for work forming the opinions expressed in YOUR REPORT, but extends to all compensation for YOUR work in connection with YOUR SERVICE AS AN EXPERT, including any study undertaken by YOU and compensation for YOUR testimony. This includes all COMMUNICATIONS about additional benefits to YOU, if any, even if not to be paid in this case. "PAYMENT" expressly includes compensation for work done by a person or organization associated with the expert named in this subpoena, even if not done by him.

15.    "RECEIVED OR HAD ACCESS TO" means RECEIVED by YOU ALONE or by anyone acting on YOUR behalf or at YOUR direction in connection with THIS LITIGATION. This definition includes anything that YOU ALONE (or anyone acting on YOUR behalf or at YOUR direction) had the ability to review, even if only for a limited period of time.

16.    "REFER" means making reference to, related to, consisting of, reflecting, concerning, discussing, evidencing, commenting on, describing, constituting, supporting, contradicting or having any logical or factual connection with the matter identified, in whole or in part.

17.     "REFLECT" means to manifest or show, in whole or in part and includes passing references to a subject.

18.     "SPDS" means Smallwood Prison Dental Services, and its corporate predecessors or successors, employees, subordinates, CONTRACTORS, AGENTS, attorneys, or anyone else AFFILIATED with it.

19.     "THIS LITIGATION" refers to the matter captioned *Parsons v. Ryan*, Docket No. 2:12-cv-00601-NVW, pending in the United States District Court for the District of Arizona, as reflected in the caption set forth at the top of this pleading.

20.     "WEXFORD" means Wexford Health Sources, Incorporated.

21.     "YOU" or "YOUR" mean the individual named in this subpoena and all persons assisting or acting at the direction of that person in connection with THIS LITIGATION.

22.     "YOU ALONE" means only the individual who is named in this subpoena.

23.     "YOUR REPORT" means any REPORT prepared by YOU as an expert report in connection with THIS LITIGATION and served on December 18, 2013 by Defendants.  It should be read to include all amendments, updates, rebuttal reports or any other report that adds to, expands upon or varies in any way the content of the report served on December 18, 2013 or the testimony YOU intend to offer in THIS LITIGATION.

24.     "YOUR SERVICE AS AN EXPERT" means everything done by YOU in connection with THIS LITIGATION, including everything for which YOU have or YOU intend to bill DEFENDANTS.

III. REQUESTS FOR PRODUCTION OF DOCUMENTS:

1.     All DOCUMENTS not previously produced IN CONNECTION WITH YOUR REPORT that contain facts or data that YOU RECEIVED OR HAD ACCESS TO in connection with YOUR SERVICE AS AN EXPERT.

2.     All DOCUMENTS not previously produced that relate to PAYMENT to YOU, YOUR employer or anyone else AFFILIATED with YOU by DEFENDANTS or

1   their AGENTS, regardless of the matter for which YOU were paid.

2       3.      All notes maintained by YOU in connection with YOUR SERVICE AS AN

3   EXPERT that were not written specifically by YOU ALONE to DEFENDANTS'

4   COUNSEL.

5       4.      All DOCUMENTS that REFLECT or REFER to ASSUMPTIONS that

6   YOU made or were asked to make in connection with YOUR SERVICE AS AN

7   EXPERT.

8       5.      All COMMUNICATIONS with anyone, including any

9   COMMUNICATIONS with any employee of ADC, CORIZON, WEXFORD, or SPDS, or

10  with OTHER EXPERTS retained by DEFENDANTS, in connection with YOUR

11  SERVICE AS AN EXPERT.  This also shall include all COMMUNICATIONS with

12  DEFENDANTS' COUNSEL, if those COMMUNICATIONS (i) relate to compensation

13  for YOUR study or testimony; (ii) identify facts or data that counsel provided and that

14  YOU considered in forming the opinions in YOUR REPORT; or (iii) identify assumptions

15  that counsel provided and that YOU relied on in forming the opinions in YOUR

16  REPORT.

17      6.      TRANSCRIPTS of TESTIMONY that YOU have given in the last 5 years

18  where the topic of the testimony related to YOUR PROFESSIONAL ACTIVITIES.

19
20      7.      All prisoner files YOU reviewed, including the files of "other ADC
    inmates" as referenced in the first full paragraph on page 3 of YOUR REPORT.
21
22      8.      Produce all GRIEVANCES YOU reviewed or relied upon in preparation of

23  YOUR REPORT but did not produce IN CONNECTION WITH YOUR REPORT,

24  including the GRIEVANCES from Phoenix, Yuma, and Lewis referenced at pages 4 and

25  15 of YOUR REPORT and the "random selection of grievances I reviewed during site

26  visits" as referenced on page 11 of YOUR REPORT.

27      9.      All DOCUMENTS, not previously produced IN CONNECTION WITH

28  YOUR REPORT, reflecting the "numerous examples" YOU have seen "that ADC and

1   CORIZON are working together to identify and correct problems," that YOU reference on

2   pages 43-44 of YOUR REPORT.

3      10.   All DOCUMENTS, not previously produced IN CONNECTION WITH

4   YOUR REPORT, reflecting the "response, outcome, and the measureable results that are

5   presently occurring" that YOU claim Dr. Cohen and the OTHER EXPERTS have failed to

6   address, as referenced in the bottom paragraph on page 44 of YOUR REPORT.

7      11.   All DOCUMENTS, not previously produced IN CONNECTION WITH

8   YOUR REPORT, reflecting CORIZON's clinical guidelines for treatment of diseases that

9   YOU relied on to make the statement that such guidelines exist on pages 36-37 of YOUR

10  REPORT.

11     12.   All DOCUMENTS reflecting the "success in their ability to identify and

12  correct problems" referenced in the carryover sentence from the bottom of page 36 to the

13  top of page 37 of YOUR REPORT.

14     13.   All DOCUMENTS reflecting the staffing ratios that YOU contend "are

15  consistent with the guidelines that I am familiar with for correctional facilities" as

16  referenced on page 21 of YOUR REPORT.

17     14.   All DOCUMENTS reflecting "the guidelines that I am familiar with for

18  correctional facilities" as referenced on page 21 of YOUR REPORT.

19     15.   All DOCUMENTS reflecting "the equivalent provider population ratios

20  from primary care organizations" as referenced on page 21 of YOUR REPORT.

21     16.   All DOCUMENTS reflecting with whom YOU spoke on any prison tours in

22  connection with THIS LITIGATION.

23     17.   All DOCUMENTS YOU relied on to conclude that the wait time at Lewis is

24  25 days and that it is 8.33 days at Yuma, as referenced on page 11 of YOUR REPORT.

25     18.   All DOCUMENTS YOU relied on to conclude that "more than half of the

26  encounters were sent directly to providers by the nurses" as referenced on page 11 of

27  YOUR REPORT.

28

19.     All of YOUR notes of meetings or interviews with prison unit correctional and healthcare leadership and/or any persons YOU questioned individually or in groups in connection with YOUR SERVICE AS AN EXPERT in THIS LITIGATION.

20.     All DOCUMENTS YOU relied on to conclude that the "maximum wait time at Yuma during that time was twelve days", as referenced on page 11 of YOUR REPORT.

21.     All DOCUMENTS YOU reviewed to test or assess the accuracy of Martin Winland's representations to YOU about medication renewal, as referenced on page 18 of YOUR REPORT.

22.     All DOCUMENTS YOU reviewed to test or assess the accuracy of representations made to YOU about non-formulary approvals, as referenced on page 19 of YOUR REPORT.

23.     The CareLog database that YOU reference on pages 22-23 of YOUR REPORT.

24.     All DOCUMENTS YOU reviewed to test or assess the accuracy of representations made to YOU about availability and timeliness of specialty consults, as referenced on page 26 of YOUR REPORT.

25.     The specialty referral logs referenced on page 27 of YOUR REPORT.

26.     All DOCUMENTS reflecting the sample size of the data from the 2nd and 3rd quarters of 2013, as referenced on page 29 of YOUR REPORT.

27.     All DOCUMENTS reflecting the number of deaths in 2012 and 2013 at ADC that YOU relied on, as referenced at pages 31-32 of YOUR REPORT.

28.     All outcome data for diabetic and HIV patients, as referenced on page 44 of YOUR REPORT.

29.     All DOCUMENTS reflecting wait time information that reviewed to test or assess the accuracy of the wait time reports YOU reviewed for October and November of 2013, as referenced on page 10 of YOUR REPORT.

30.     The following DOCUMENTS listed on page 9 of Appendix C to YOUR

1   REPORT:

2           (1)  Bureau of Justice Statistics Mortality Data;

3           (2)  Bureau of Justice Statistics Mortality in Local Jails and State Prisons, 2000-

4   2011 – Statistical Tables – August 2013;

5           (3)  Bureau of Justice Statistics State Corrections Expenditures, FY 1982-2010 –

6   Dec 2012 (revised Oct 22, 2013); and

7           (4)  ADC Corrections at a Glance Brochures (January-October 2013)

8           31.    The following DOCUMENTS listed on page 10 of Appendix C to YOUR

9   REPORT:

10          (1)  ADC_M0000002-39, Corizon Asthma Clinical Pathways;

11          (2)  ADC_M0000040-57, Corizon Warfarin Clinical Pathways;

12          (3)  ADC_M0000058-118, Corizon Diabetes Clinical Pathways;

13          (4)  ADC_M0000119-158, Corizon Hypertension Pathways; and

14          (5)  ADC_M0000159-191, Corizon Seizures Clinical Pathways.

15          32.    The following DOCUMENTS listed on page 11 of Appendix C to YOUR

16   REPORT:

17          (1)  ADC_S000292-297, IM Deaths by Reasons 2012;

18          (2)  ADC_S000298-302, IM Deaths by Reasons 2013; and

19          (3)  ADC_M000192, IPC Beds Comparison Spreadsheet.

20          33.    The following DOCUMENTS listed on page 12 of Appendix C to YOUR

21   REPORT:

22          (1)  ADC_M000193, Memo from Joy Lloyd to Corizon Staff re Constituency Svcs;

23   and

24          (2)  ADC_M000194, Arizona Staffing Variances.

25          34.    The medical files and all other documents YOU reviewed relating to the

26   following prisoners, who are referenced by YOU on the cited page of YOUR REPORT:

27          (1)  Patrick Nissely ADC No. 27702, including all DOCUMENTS YOU relied

28   upon to conclude that he has received appropriate medical care, as referenced on page 23

1    of YOUR REPORT;

2            (2)  Michael Velasquez ADC No. 173685, including all DOCUMENTS YOU

3    relied upon to conclude that he has received appropriate medical care, as referenced on

4    page 26 of YOUR REPORT; and

5            (3)  Robert Devine, ADC No. 138222, including all DOCUMENTS YOU relied

6    upon to conclude that he has received appropriate medical care, as referenced on page 40

7    of YOUR REPORT.

8        35.    All DOCUMENTS concerning the NAMED PLAINTIFFS in THIS

9    LITIGATION that YOU REVIEWED or RELIED on that were not previously produced

10   by DEFENDANTS, including but not limited to all DOCUMENTS YOU RELIED on to

11   conclude that any of them has received appropriate medical care, as referenced on pages

12   13-19 of YOUR REPORT.

13       36.    All DOCUMENTS YOU relied upon to conclude that chronic care follow-

14   up intervals "are typically much more frequent than would occur in the community," as

15   referenced on page 22 of YOUR REPORT.

16       37.    All DOCUMENTS YOU reviewed to test or assess the accuracy of

17   representations made to YOU about where ASPC-Lewis prisoners get the majority of

18   medical care, as referenced on page 47 of YOUR REPORT.

19       38.    All DOCUMENTS YOU reviewed to test or assess the accuracy of

20   representations made to YOU about which clinical spaces Dr. Robert Cohen toured at

21   ASPC-Lewis, as referenced on page 47 of YOUR REPORT.

22       39.    All DOCUMENTS, YOU relied upon to conclude that "considerable effort"

23   was undertaken to "correct this problem" and "restore continuity of medication

24   treatment," as referenced on pages 17-18 of YOUR REPORT.

25       40.    All DOCUMENTS YOU relied upon to conclude that "CORIZON has

26   abundant staff and resources to assist with the CQI process," as referenced on page 42 of

27   YOUR REPORT.

28

Dated:  January 7, 2014

**JONES DAY**

By: _Caroline Mitchell_
Caroline Mitchell (Cal. 143124)*
Sophia Calderón (Cal. 278315)*
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:     cnmitchell@jonesday.com
           dkiernan@jonesday.com
           scalderon@jonesday.com
*Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:     dbarr@perkinscoie.com
           agerlicher@perkinscoie.com
           keidenbach@perkinscoie.com
           jhgray@perkinscoie.com
           mdumee@perkinscoie.com

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF
ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:     dpochoda@acluaz.org
           kflood@acluaz.org
           jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct.
R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
          ahardy@prisonlaw.com
          snorman@prisonlaw.com
          ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:    dfathi@npp-aclu.org
          afettig@npp-aclu.org
          aquereshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted
 in DC; practice limited to federal
 courts.
**Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:    jlwilkes@jonesday.com
          tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:    kmamedova@jonesday.com
          jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;*
*Stephen Swartz; Dustin Brislan; Sonia*
*Rodriguez; Christina Verduzco; Jackie*
*Thomas; Jeremy Smith; Robert Gamez;*
*Maryanne Chisholm; Desiree Licci; Joseph*
*Hefner; Joshua Polson; and Charlotte*
*Wells, on behalf of themselves and all others*
*similarly situated*

Sarah Kader (Bar No. 027147)
Asim Varma (Bar No. 027927)
**ARIZONA CENTER FOR**
**DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:    skader@azdisabilitylaw.org
              avarma@azdisabilitylaw.org


J.J. Rico (Bar No. 021292)
Cathleen M. Dooley (Bar No. 022420)
**ARIZONA CENTER FOR**
**DISABILITY LAW**
100 N. Stone Avenue, Suite 305
Tucson, Arizona 85701
Telephone:  (520) 327-9547
Email:    jrico@azdisabilitylaw.org
              cdooley@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability*
*Law*

# EXHIBIT 3

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Arizona

| | | |
|---|---|---|
| Parsons, et al., | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   2:12-cv-00601-NVW |
| Ryan, et al., | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:          Joseph V. Penn, MD, CCHP FAPA c/o Daniel P. Struck

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Jones Day<br>717 Texas, Suite 3300<br>Houston, Texas  77002 | Date and Time:<br><br>03/13/2014 9:30 am |
|---|---|

The deposition will be recorded by this method:   stenographically, and via video and audio

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: Described in Appendix A on or before January 31, 2014 c/o Laurens Wilkes, Jones Day, 717 Texas, Suite 3300, Houston, Texas 77002

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    01/09/2014

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    for Shawn Jensen et al. _____ , who issues or requests this subpoena, are:

Caroline Mitchell, Jones Day, 555 California Street, 26th Floor, San Francisco, CA  94104, email: cnmitchell@jonesday.com; telephone:  415-875-5712

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  2:12-cv-00601-NVW

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

1   Daniel Pochoda (Bar No. 021979)
2   Kelly J. Flood (Bar No. 019772)
    James Duff Lyall (Bar No. 330045)*
    **ACLU FOUNDATION OF ARIZONA**
3   3707 North 7th Street, Suite 235
    Phoenix, Arizona 85013
4   Telephone: (602) 650-1854
    Email: dpochoda@acluaz.org
5          kflood@acluaz.org
           jlyall@acluaz.org
6   *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin
    Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas,
8   Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci,
    Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of
9   themselves and all others similarly situated*

10  **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

11  Sarah Kader (Bar No. 027147)
    Asim Varma (Bar No. 027927)
    **ARIZONA CENTER FOR DISABILITY LAW**
12  5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
13  Telephone: (602) 274-6287
    Email: skader@azdisabilitylaw.org
14         avarma@azdisabilitylaw.org

15  *Attorneys for Plaintiff Arizona Center for Disability Law*

16  **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

17

                    UNITED STATES DISTRICT COURT
18
                         DISTRICT OF ARIZONA
19

20  Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-NVW
    Dustin Brislan; Sonia Rodriguez; Christina           (MEA)
21  Verduzco; Jackie Thomas; Jeremy Smith; Robert
    Gamez; Maryanne Chisholm; Desiree Licci; Joseph
22  Hefner; Joshua Polson; and Charlotte Wells, on       **AMENDED**
    behalf of themselves and all others similarly        **ATTACHMENT A**
23  situated; and Arizona Center for Disability Law,

                             Plaintiffs,
24
           v.
25
    Charles Ryan, Director, Arizona Department of
26  Corrections; and Richard Pratt, Interim Division
    Director, Division of Health Services, Arizona
27  Department of Corrections, in their official
    capacities,
28
                             Defendants.

SFI-848724v1

I.      INSTRUCTIONS:

1.      YOU are required to furnish all DOCUMENTS in YOUR possession, custody, or control, including documents in the custody or control of YOUR (1) employer; (2) consultants; (3) attorneys; (4) representatives; (5) AGENTS; or (6) any other person acting or purporting to act on YOUR behalf or at YOUR direction in connection with THIS LITIGATION, whether doing so directly or at the direction of YOUR subordinates.  Possession, custody, or control includes DOCUMENTS stored in electronic form by third party service providers but accessible to YOU, including but not limited to email accounts, FTP servers, portable storage media such as USB drives, cloud storage services such as Dropbox or SharePoint, and online workspaces such as WebEx.

2.      All non-identical copies of every DOCUMENT whose production is sought shall be separately produced.

3.      Each request herein constitutes a request for DOCUMENTS in their entirety, with all enclosures and attachments, and without abbreviation, redaction, or expurgation.  DOCUMENTS attached to each other, including but not limited to, by staple, clip, tape, email attachment, or "Post-It" note, should not be separated, although any page on which a Post-It note covers or obscures text on the DOCUMENT should be produced both with and without the Post-It note.  The production must also include, where applicable, any index tabs, file dividers, designations, binder spine labels, or other similar INFORMATION as to the source and/or location of the DOCUMENTS.

4.      YOU shall produce any and all drafts and copies of each DOCUMENT that are responsive to any request, other than drafts of YOUR REPORT, including but not limited to copies containing handwritten notes, markings, stamps, or interlineations.  The author(s) of all hand-written notes should be identified.

5.      YOU shall produce all responsive DOCUMENTS as they have been kept in the ordinary course of business.

6.     Responsive DOCUMENTS that exist in electronic form, even if such DOCUMENTS also exist in paper form, shall be produced in electronic form according to the following protocol:

7.

a.     Electronic DOCUMENTS shall be produced electronically as single page, uniquely and sequentially numbered Group IV TIFF image files of not less than 300 dots per inch resolution, together with DOCUMENT level load files wherein the full text was extracted directly from the native file where possible.

b.     For files produced in TIFF image form, each page of a produced DOCUMENT shall have a legible, unique production number electronically "burned" onto the TIFF image in such a manner that INFORMATION from the source DOCUMENT is not obliterated, concealed, or interfered with, preferably in the lower right corner of the DOCUMENT.  The production number shall contain at least six digits.  There shall be no other legend or stamp placed on the DOCUMENT image, unless a DOCUMENT qualifies for confidential treatment pursuant to the terms of any protective order in this matter, or if the DOCUMENT requires redaction.  In the case of confidential materials as defined by any protective order in this matter, any applicable designation may be "burned" onto the DOCUMENT's image at a location that does not obliterate or obscure any INFORMATION from the source DOCUMENT, preferably in the lower left corner.

c.     Each DOCUMENT image file shall be named with the unique production number of the page of the DOCUMENT in question, followed by the extension ".tif".  File names should not be more than 20 characters long or contain spaces.

d.     For files produced in TIFF image format, each page of a DOCUMENT shall be electronically saved as an image file.  If a

1   DOCUMENT is more than one page, the unitization of the DOCUMENT

2   and any attachments and/or affixed notes shall be maintained as they existed

3   in the original DOCUMENT.

4   e.    TIFF images shall be accompanied by a standard load file containing

5   the metadata and other fields identified in Paragraph 7(j) of these

6   Instructions, below.  The load file shall be produced in one of the following

7   industry-standard formats:  (1) Concordance delimited file (".dat");

8   (2) comma-separated value file (".csv"); or (3) TAB delimited file.  TIFF

9   images shall also be accompanied by either an Opticon delimited cross-

10   reference file (".opt") or IPRO View LFP comma-delimited file showing

11   DOCUMENT breaks and appropriate DOCUMENT unitization.

12   f.    In addition to TIFF images, each production of electronic

13   DOCUMENTS shall include searchable text files corresponding to the TIFF

14   images for each DOCUMENT.  The full text of each native electronic

15   DOCUMENT, excluding redacted DOCUMENTS, shall be extracted

16   directly from the native file and produced in a DOCUMENT-level related

17   text file (the "Extracted Text").  The Extracted Text shall be provided in

18   searchable ASCII text format (or Unicode text format if the text is in a

19   foreign language) and shall be named with the unique production number of

20   the first page of the corresponding TIFF DOCUMENT followed by the

21   extension ".txt".  YOU shall also perform OCR on certain types of non-text

22   based static image ESI, such as native PDF image files, and produce the

23   corresponding DOCUMENT-level related text files.  Searchable text files

24   shall be generated from Extracted Text where available.

25   g.    DOCUMENTS shall be produced on optical media (CD or DVD) or

26   external hard drives or similar, readily accessible electronic media (the

27   "Production Media").  Each piece of Production Media shall identify a

28   production number corresponding to the party and production with which

1   the DOCUMENTS on the Production Media are associated (e.g.,

2   "[EXPERT NAME] 001"), as well as the volume of the material in that

3   production (e.g., "- 001", "-002").  The face of each piece of Production

4   Media shall also identify:  (1) the production date; and (2) the production

5   number range of the materials contained on the Production Media.

6   h.      Presentation DOCUMENTS (such as Microsoft PowerPoint

7   DOCUMENTS) shall be produced with one slide per page together with any

8   "Speaker's Notes" or similar pages appended to, or otherwise associated

9   with, each slide. Presentation DOCUMENTS shall also be produced

10   according to all other applicable Instructions set forth in this set of requests.

11   i.      Unless redaction is required, spreadsheet DOCUMENTS (such as

12   Microsoft Excel DOCUMENTS) shall be produced in native format,

13   together with a single page TIFF placeholder bearing the legend "Native

14   File Produced" and load files containing the agreed upon metadata,

15   extracted text, production numbers and any applicable confidentiality labels

16   as described above.  If redaction is required, then spreadsheets shall be

17   produced in TIFF image format as set forth above.

18   j.      For all DOCUMENTS for which metadata exists, the load files

19   described above shall be produced including the following fields:

| Fields for all DOCUMENTS | Description |
| --- | --- |
| BegProd | Beginning production number assigned to each DOCUMENT |
| EndProd | Ending production number assigned to each DOCUMENT |
| BegAttach | Beginning production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any |

| | attachment DOCUMENTS are associated |
|---|---|
| EndAttach | Ending production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| Custodian | The name of the person or source from which the DOCUMENT was obtained |
| FileName | Original file name |
| FilePath | Original file path |
| DocExt | DOCUMENT type as identified by metadata associated with the native DOCUMENT indicating the extension of the application that created the native DOCUMENT (e.g., .doc, .ppt, etc.) |
| HashValue | The unique identifying value assigned to a DOCUMENT based on hash coding algorithms |
| Author | The person or source that originated the DOCUMENT |
| DateCreated | Date that the DOCUMENT was created (as reflected by metadata) |
| LastModifiedDate | Date that the file was last modified (as reflected by metadata) |
| FullText | The path or link to the searchable Extracted or OCR text for a |

| | DOCUMENT |
|---|---|
| NativeFile | The path or link to a processed and produced native file, to the extent the production contains native files |
| Confidentiality | The confidentiality designation for the DOCUMENT, as defined by any protective order in this matter |
| **Additional Fields for Email** | **Description** |
| To | All INFORMATION contained in the "To" field of an email |
| From | All INFORMATION contained in the "From" field of an email |
| CC | All INFORMATION contained in the "CC" field of an email |
| BCC | All INFORMATION contained in the "BCC" field of an email |
| DateSent | Date the email was sent, including month, day and year |
| TimeSent | Time the email was sent, including hour, minute, second and time zone. To the extent this INFORMATION is already included in the DateSent field in the metadata, YOU need not parse TimeSent as a separate field. |
| DateReceived | Date the email was received, including the month, day and year |
| TimeReceived | Time the email was received, including |

| | hour, minute, second and time zone. To the extent this INFORMATION is already included in the DateReceived field in the metadata, YOU need not parse TimeReceived as a separate field. |
|---|---|
| Subject | Subject or "Re:" line, as stated in the email |

8.    If with respect to any request there are no responsive DOCUMENTS, so state in writing.

9.    The following rules of construction shall be applied herein: (a) the words "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; (b) the use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural; (c) the words "any," "all," "each" and "every" all include any, all, each, and every and shall be understood in either their most or least inclusive sense as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; and (d) the use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the DOCUMENT requests all responses that might otherwise be construed to be outside of their scope.

10.    If YOU object to a portion or an aspect of a request, state the grounds for YOUR objection with specificity and respond to the remainder of the DOCUMENT request.  If any DOCUMENTS, or portion thereof, are withheld because YOU claim that such INFORMATION is protected under the attorney-client privilege, work product doctrine, or other privilege or doctrine, YOU are required to provide a privilege log

1   setting forth the specific basis for the claim of privilege or protection and for each

2   DOCUMENT provide the following:

3           a.     the subject matter of the DOCUMENT;

4           b.     the title, heading or caption of the DOCUMENT, if any;

5           c.     the date appearing on the DOCUMENT or, if no date appears

6   thereon, the date or approximate date on which the DOCUMENT was prepared;

7           d.     the type of the DOCUMENT (e.g., whether it is a letter,

8   memorandum, minutes of meeting, etc.) and the number of pages of which it

9   consists;

10          e.     the identity of the person who signed the DOCUMENT or, if it was

11  not signed, the person who prepared it;

12          f.     the identity of each person to whom the DOCUMENT was addressed

13  and the identity of each person to whom a copy thereof was sent; and

14          g.     the identity of each person who has custody of a copy of each such

15  DOCUMENT.

16      11.    If YOU claim that a portion of a DOCUMENT is protected from disclosure

17  for any reason, produce such DOCUMENT with redaction of only the portion claimed to

18  be protected.  When such redactions for privilege or protection are made, YOU shall place

19  a legend similar to "REDACTION – PRIVILEGE" on the copy of the DOCUMENT

20  produced.  All redactions shall also be included on the privilege log as described above.

21      12.    If YOU object that a request is vague or ambiguous, identify the

22  objectionable aspect of the request.

23      13.    If a request cannot be responded to in full, YOU shall respond to the extent

24  possible, specify the reason for YOUR inability to respond to the remainder, and state

25  whatever INFORMATION or knowledge YOU have REGARDING the portion to which

26  YOU have not responded.

27      14.    If any DOCUMENT called for by these requests has been destroyed, lost,

28  discarded, or is otherwise no longer in YOUR possession, custody, or control, identify

1   such DOCUMENT as completely as possible, and specify the date of disposal of the

2   DOCUMENT, the manner of disposal, the reason for disposal, the person authorizing

3   disposal, and the person disposing of the DOCUMENT.

4   II.   DEFINITIONS:

5       1.   "ADC" means the Arizona Department of Corrections, including all its

6   subdivisions, AGENTS, employees, CONTRACTORS, and attorneys.

7       2.   "AFFILIATED" means connected in some way.

8       3.   "ASSUMPTIONS" means any representation on which YOU were asked to

9   rely without independent proof or substantiation.  It includes hunches, hypotheses,

10  INFORMATION about prisons, prisoners, health care or any other matter bearing on this

11  case, inferences, presumptions, theories, conditions, presuppositions, alleged historical

12  matter or descriptions of events.

13      4.   "COMMUNICATIONS" means any transmittal of INFORMATION from

14  one person or entity to another by any means, including letters, correspondence, notes,

15  memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied

16  or blind copied), electronic mail generated from a hand held personal device including a

17  Blackberry or iPhone, instant messaging, electronic mail generated from business or

18  personal email accounts, internet relay chat, news group, group or collaboration servers,

19  electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings,

20  audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes,

21  teleconference, collaboration servers (including share point servers), web-based or

22  software virtual meetings including WebEx and any other meeting software and share

23  point servers, and oral contact such as face-to-face discussions or meetings, telephone

24  conversations, and voice mail messages.

25      5.   "CONTRACTORS" means anyone working for an entity pursuant to agreed

26  terms, such as by contract, rather than as an employee.

27      6.   "CORIZON" means the health care provider company that contracted to

28  take over health care for prisoners in the ADC beginning March 4, 2013, and its corporate

1  predecessors or successors, employees, subordinates, CONTRACTORS, AGENTS,

2  attorneys, or anyone else AFFILIATED with it.

3      7.    "DEFENDANTS or their AGENTS" means Defendants Charles Ryan and

4  Richard Pratt, and their predecessors, successors, employees, subordinates,

5  CONTRACTORS, AGENTS, attorneys, or any other person or entity acting in support of

6  the defense of THIS LITIGATION or on their behalf in THIS LITIGATION.

7      8.    "DEFENDANTS' COUNSEL" refers to any of the lawyers or other

8  personnel at the Struck, Weineke & Love, P.L.C. law firm, the Office of the Attorney

9  General of Arizona, or the ADC  when acting as counsel for Defendants in THIS

10  LITIGATION.

11      9.    "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule

12  34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or

13  record of every type and description and every tangible thing that is or has been in the

14  possession, custody, or control of DEFENDANTS and the ADC, to which they have

15  access, or of which they have knowledge, including, but not limited to,

16  COMMUNICATIONS, newspaper articles, magazine articles, news articles,

17  correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes,

18  handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase

19  orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-

20  purchase materials, notebooks, diaries, models, devices, pictures, photographs, films,

21  audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys,

22  minutes, data compilations, and statistical compilations, regardless of whether a particular

23  DOCUMENT is privileged or confidential, and regardless of the form of storage

24  (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk

25  or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device).

26  "DOCUMENT" and "DOCUMENTS" includes, but is not limited to, all DOCUMENTS

27  generated by or maintained in the Director's Project Tracking System, official ADC

28  papers, and the ADC's intranet.

10. "DOCUMENTS SUFFICIENT TO IDENTIFY" means DOCUMENTS that, individually or collectively, reveal the full name and, if the person is an ADC prisoner, the ADC number of the person referred to.

11. "IN CONNECTION WITH YOUR REPORT" means any activity performed by YOU for DEFENDANTS in connection with the preparation of any iteration of YOUR REPORT.

12. "INFORMATION" means any knowledge, evidence of any type, facts, data, intelligence, speculation or material of any kind relating to the subject matter of the request.

13. "NAMED PLAINTIFFS" means the individual plaintiffs who filed the Complaint in this matter, as set forth in the caption to this document.

14. "OTHER EXPERTS" means any expert other than YOU ALONE who has been retained by or is being paid by DEFENDANTS, or is otherwise expected to provide expert testimony in connection with THIS LITIGATION.

15. "PAYMENT" means compensation of any type, whether actually paid or promised. It is not limited to compensation for work forming the opinions expressed in YOUR REPORT, but extends to all compensation for YOUR work in connection with YOUR SERVICE AS AN EXPERT, including any study undertaken by YOU and compensation for YOUR testimony. This includes all COMMUNICATIONS about additional benefits to YOU, if any, even if not to be paid in this case. "PAYMENT" expressly includes compensation for work done by a person or organization associated with the expert named in this subpoena, even if not done by him.

16. "RECEIVED OR HAD ACCESS TO" means RECEIVED by YOU ALONE or by anyone acting on YOUR behalf or at YOUR direction in connection with THIS LITIGATION. This definition includes anything that YOU ALONE (or anyone acting on YOUR behalf or at YOUR direction) had the ability to review, even if only for a limited period of time.

17.     "REFLECT" means to manifest or show, in whole or in part and includes passing references to a subject.

18.     "REGARDING" means, without limitation, anything that, in whole or in part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes, discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains directly or indirectly to, reflects, refers to, relates to, responds to, states, summarizes, or is in any way relevant to the identified subject.

19.     "REPORT" means the report required by Fed. R. Civ. P. 26(a)(2) or any analogous state court rule.

20.     "SPDS" means Smallwood Prison Dental Services, and its corporate predecessors or successors, employees, subordinates, CONTRACTORS, AGENTS, attorneys, or anyone else AFFILIATED with it.

21.     "THIS LITIGATION" refers to the matter captioned *Parsons v. Ryan*, Docket No. 2:12-cv-00601-NVW, pending in the United States District Court for the District of Arizona, as reflected in the caption set forth at the top of this pleading.

22.     "WEXFORD" means Wexford Health Sources, Incorporated.

23.     "YOU" or "YOUR" mean the individual named in this subpoena and all persons assisting or acting at the direction of that person in connection with THIS LITIGATION.

24.     "YOU ALONE" means only the individual who is named in this subpoena.

25.     "YOUR REPORT" means any REPORT prepared by YOU as an expert report in connection with THIS LITIGATION and served on or about December 18, 2013 by Defendants.  It should be read to include all amendments, updates, rebuttal reports or any other report that adds to, expands upon or varies in any way the content of the report served on December 18, 2013 or the testimony YOU intend to offer in THIS LITIGATION.

26.    "YOUR SERVICE AS AN EXPERT" means everything done by YOU in connection with THIS LITIGATION, including everything for which YOU have or YOU intend to bill DEFENDANTS.

III. REQUESTS FOR PRODUCTION OF DOCUMENTS:

1.    All DOCUMENTS not previously produced IN CONNECTION WITH YOUR REPORT that contain facts or data that YOU RECEIVED OR HAD ACCESS TO in connection with YOUR SERVICE AS AN EXPERT.

2.    All DOCUMENTS not previously produced that relate to PAYMENT to YOU, YOUR employer or anyone else AFFILIATED with YOU by DEFENDANTS or their AGENTS, regardless of the matter for which YOU were paid.

3.    All notes maintained by YOU in connection with YOUR SERVICE AS AN EXPERT.

4.    All DOCUMENTS that REFLECT or refer to ASSUMPTIONS that YOU made or were asked to make in connection with YOUR SERVICE AS AN EXPERT.

5.    All COMMUNICATIONS with anyone, including any COMMUNICATIONS with any employee of ADC, CORIZON, WEXFORD, or SPDS, or with OTHER EXPERTS, in connection with YOUR SERVICE AS AN EXPERT.  This also shall include all COMMUNICATIONS with DEFENDANTS' COUNSEL, if those COMMUNICATIONS (i) relate to compensation for YOUR study or testimony; (ii) identify facts or data that counsel provided and that YOU considered in forming the opinions in YOUR REPORT; or (iii) identify ASSUMPTIONS that counsel provided and that YOU relied on in forming the opinions in YOUR REPORT.

6.    Transcripts of testimony that YOU have given in the last 5 years where the topic of the testimony related to YOUR professional activities.

7.    All REPORTS you have authored in the last 5 years as an expert witness or consultant in litigation.

8.    The Keefe Store OTCs (ADC P000564), referenced on page 13 of Exhibit A to YOUR REPORT.

9.     The Pharmacor Stock Sheets (ADC P000565-579), referenced on page 11 of Exhibit A to YOUR REPORT.

10.     The Eyman SMU I Mental Health Inmate List (ADC P000868-881), referenced on page 13 of Exhibit A to YOUR REPORT.

11.     The AZ Psych DOT KOP Drug List 12/11/13 (ADC P000887), referenced on page 12 of Exhibit A to YOUR REPORT.

12.     Phoenix Alhambra Application for Behavioral Health Service Agency License (ADC P00985-992), referenced on page 13 of Exhibit A to YOUR REPORT.

13.     Phoenix Alhambra License of Level I Sub Acute Agency (ADC P000993), referenced on page 13 of Exhibit A to YOUR REPORT.

14.     IM Deaths by Reason 2012 (ADC S000292-297), referenced on page 13 of Exhibit A to YOUR REPORT.

15.     IM Deaths by Reason 2013 (ADC S000298-302), referenced on page 13 of Exhibit A to YOUR REPORT.

16.     Standards for & Evaluation of Medical & Health Related Facilities and Services Provided to Inmates who are Confined in a State Prison (PAR000611-613), referenced on page 13 of Exhibit A to YOUR REPORT.

17.     Phoenix Alhambra & Aspen Units Validation Survey Report conducted by AZ Department of Health Services – March 27, 2013 (PAR000619-622), referenced on page 13 of Exhibit A to YOUR REPORT.

18.     The "watch individual logs" YOU reviewed and concluded were "completed in keeping with departmental policies and procedures, and are within the standard of care" as referenced on page 72 of YOUR REPORT.

19.     The medical records for the following ADC inmates, as referenced in YOUR REPORT on the cited page:

**ASPC-Tucson (YOUR REPORT, page 5):**

Eric Clark, ADC 180165
David Fletcher, ADC 50457

Charles Gatliff, ADC 160559
Richard Gregg, ADC 229861
Xavier Hernandez, ADC 205654
Carlton Leader, ADC 73740
Vincent Powell, ADC 93198

**ASPC-Lewis** (YOUR REPORT, page 6):

Joseph Aherns, ADC 275930
Justeen Coleman, ADC 253012
Michael Collins, ADC 86924
Mark Deaton, ADC 162533
Norman Flanigan, ADC 177442
Arthur Gaines, ADC 202177
Gary Hall, ADC 207113
Paul Lilly, ADC 92444
Danny Merritt, ADC 216352
Karl Schlobohn, ADC 203606

Prisoners Referenced on Page 11 of Exhibit A to YOUR REPORT:
Daniel DeLeon (189733) medical records (ADC P000445-000563)
David Armijo (232734) medical records (ADC P00001-000164)
James Bennett (237279) medical records (ADC P000165-000319)
Victor Calzada-Gutierrez (254887) medical records (ADC P000320-000444)

20.     The "ten records received for state prisoners who were diagnosed with

mental illness and who were cited as examples of alleged lack of an effective medication

system in Dr. Stewart's report," as referenced on page 35 of YOUR REPORT.

21.     The "randomly selected medical records of state prisoners with identified

'serious mental illness'" that YOU stated "consistently demonstrated documentation of

health needs request forms being completed in writing by these state prisoners and being

reviewed in a timely manner by healthcare staff" as referenced on page 41 of YOUR

REPORT.

22.     All of the "available records" YOU RELIED on to reach the opinion that

"offenders with symptoms of active mental illness are referred, seen, and treated in a

clinically appropriate manner that meets free world and correctional standards of care," as

referenced at page 84 of YOUR REPORT.

23.     The "five randomly selected medical records of state prisoners identified

with 'serious mental illness' from each of the Phoenix, Perryville, Eyman, and Florence facilities" as referenced on page 5 of YOUR REPORT.

24.    The "several Arizona Department of Corrections state prisoner medical records" you reviewed as referenced on page 32 of YOUR REPORT.

25.    All of the "inmate records" YOU RELIED on to conclude that "the Arizona Department of Corrections' suicide precautions and other methods to avoid suicide and self-injurious behavior are within generally accepted standards," as referenced on page 68 of YOUR REPORT.

26.    DOCUMENTS SUFFICIENT TO IDENTIFY the prisoner who was the subject of a major use of force, as referenced on page 17 of YOUR REPORT.

27.    DOCUMENTS SUFFICIENT TO IDENTIFY the "several offenders who were being monitored on suicide precautions," the "offender at Browning who had allegedly swallowed a foreign object," and the "offender with medical issues, who had recently engaged in self-mutilation," as referenced on pages 72-73 of YOUR REPORT.

28.    DOCUMENTS SUFFICIENT TO IDENTIFY the "two prisoners, on separate occasions and for differing non-healthcare reasons," you observed "receive OC spray by trained correctional staff," as referenced on page 81 of YOUR REPORT.

29.    All of the DOCUMENTS YOU RELIED on to conclude that "[i]ndividuals selected for the CB-1 program participate in one-on-one counseling at least once every 30 days and participate in two group sessions a week," as referenced on page 51 of YOUR REPORT.

30.    All of the DOCUMENTS YOU RELIED on to conclude that "[a]ll inmates in the Lumley SMA Stage Program are seen at least once a week by a mental health practitioner in a group or 1:1 session," as referenced on page 57 of YOUR REPORT.

31.    All of YOUR notes of meetings, interviews, or any other COMMUNICATIONS with any person in connection with YOUR SERVICE AS AN EXPERT in THIS LITIGATION.

Dated:  January 9, 2014

JONES DAY

By: _____
Caroline Mitchell (Cal. 143124)*
Sophia Calderón (Cal. 278315)*
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:      cnmitchell@jonesday.com
            dkiernan@jonesday.com
            scalderon@jonesday.com
*Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:      dbarr@perkinscoie.com
            agerlicher@perkinscoie.com
            keidenbach@perkinscoie.com
            jhgray@perkinscoie.com
            mdumee@perkinscoie.com

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
ACLU FOUNDATION OF
ARIZONA
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:      dpochoda@acluaz.org
            kflood@acluaz.org
            jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct.
R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:    dspecter@prisonlaw.com
          ahardy@prisonlaw.com
          snorman@prisonlaw.com
          ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:    dfathi@npp-aclu.org
          afettig@npp-aclu.org
          aquereshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email:    jlwilkes@jonesday.com
          tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone: (212) 326-3498
Email:    kmamedova@jonesday.com
          jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

Sarah Kader (Bar No. 027147)
Asim Varma (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email:     skader@azdisabilitylaw.org
              avarma@azdisabilitylaw.org

J.J. Rico (Bar No. 021292)
Cathleen M. Dooley (Bar No. 022420)
**ARIZONA CENTER FOR DISABILITY LAW**
100 N. Stone Avenue, Suite 305
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:     jrico@azdisabilitylaw.org
              cdooley@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

# EXHIBIT 4

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | | |
|---|---|---|
| Parsons, et al., | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No.   2:12-cv-00601-NVW |
| Ryan, et al., | ) | |
| _Defendant_ | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                        Richard P. Seiter c/o Daniel P. Struck

_____
_(Name of person to whom this subpoena is directed)_

☑ _Testimony:_ **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: ACLU of Missouri<br>454 Whittier Avenue<br>St. Louis, MO  63108 | Date and Time:<br><br>03/12/2014 9:30 am |
|---|---|

The deposition will be recorded by this method:   stenographically, and via video and audio

☑ _Production:_ You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: Described in Appendix A on or before January 31, 2014 c/o Grant Doty ACLU of Missouri, 454 Whittier Avenue, St. Louis, MO  63108, 314/652-3114 ext. 270

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    01/10/2014

| _CLERK OF COURT_ | | OR | |
|---|---|---|---|
| | | | _Caroline Mitchell_ |
| _Signature of Clerk or Deputy Clerk_ | | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_   for Shawn Jensen et al.                                        , who issues or requests this subpoena, are:

Caroline Mitchell, Jones Day, 555 California Street, 26th Floor, San Francisco, CA  94104, email: cnmitchell@jonesday.com; telephone:  415-875-5712

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:12-cv-00601-NVW

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
        (i) is a party or a party's officer; or
        (ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
    (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
    (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
        (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
        (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

    (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

        (i) fails to allow a reasonable time to comply;
        (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
        (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

        (i) disclosing a trade secret or other confidential research, development, or commercial information; or
        (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
        (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
        (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
    (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
        (i) expressly make the claim; and
        (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

1   Daniel Pochoda (Bar No. 021979)
2   Kelly J. Flood (Bar No. 019772)
    James Duff Lyall (Bar No. 330045)*
3   **ACLU FOUNDATION OF ARIZONA**
    3707 North 7th Street, Suite 235
    Phoenix, Arizona 85013
4   Telephone: (602) 650-1854
    Email: dpochoda@acluaz.org
5           kflood@acluaz.org
            jlyall@acluaz.org
6   *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin*
    *Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
8   *Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci,*
    *Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of*
9   *themselves and all others similarly situated*

10  **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

11  Sarah Kader (Bar No. 027147)
    Asim Varma (Bar No. 027927)
    **ARIZONA CENTER FOR DISABILITY LAW**
12  5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
13  Telephone: (602) 274-6287
    Email:    skader@azdisabilitylaw.org
14            avarma@azdisabilitylaw.org

15  *Attorneys for Plaintiff Arizona Center for Disability Law*

16  **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

17

18                UNITED STATES DISTRICT COURT

19                    DISTRICT OF ARIZONA

20  | Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-NVW (MEA) |
|---|---|
21
22  |  | **ATTACHMENT A** |
23  |                    Plaintiffs, | |
24  |                        v. | |
25  | Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
26
27
28  |                    Defendants. | |

I.      INSTRUCTIONS:

1.      YOU are required to furnish all DOCUMENTS in YOUR possession, custody, or control, including DOCUMENTS in the custody or control of YOUR (1) employer; (2) consultants; (3) attorneys; (4) representatives; (5) AGENTS; or (6) any other person acting or purporting to act on YOUR behalf or at YOUR direction in connection with THIS LITIGATION, whether doing so directly or at the direction of YOUR subordinates.  Possession, custody, or control includes DOCUMENTS stored in electronic form by third party service providers but accessible to YOU, including but not limited to email accounts, FTP servers, portable storage media such as USB drives, cloud storage services such as Dropbox or SharePoint, and online workspaces such as WebEx.

2.      All non-identical copies of every DOCUMENT whose production is sought shall be separately produced.

3.      Each request herein constitutes a request for DOCUMENTS in their entirety, with all enclosures and attachments, and without abbreviation, redaction, or expurgation.  DOCUMENTS attached to each other, including but not limited to, by staple, clip, tape, email attachment, or "Post-It" note, should not be separated, although any page on which a Post-It note covers or obscures text on the DOCUMENT should be produced both with and without the Post-It note.  The production must also include, where applicable, any index tabs, file dividers, designations, binder spine labels, or other similar INFORMATION as to the source and/or location of the DOCUMENTS.

4.      YOU shall produce any and all drafts and copies of each DOCUMENT that are responsive to any request, other than drafts of YOUR REPORT, including but not limited to copies containing handwritten notes, markings, stamps, or interlineations.  The author(s) of all hand-written notes should be identified.

5.      YOU shall produce all responsive DOCUMENTS as they have been kept in the ordinary course of business.

SFI-848501v1

6.       Responsive DOCUMENTS that exist in electronic form, even if such DOCUMENTS also exist in paper form, shall be produced in electronic form according to the following protocol:

7.

    a.       Electronic DOCUMENTS shall be produced electronically as single page, uniquely and sequentially numbered Group IV TIFF image files of not less than 300 dots per inch resolution, together with DOCUMENT level load files wherein the full text was extracted directly from the native file where possible.

    b.       For files produced in TIFF image form, each page of a produced DOCUMENT shall have a legible, unique production number electronically "burned" onto the TIFF image in such a manner that INFORMATION from the source DOCUMENT is not obliterated, concealed, or interfered with, preferably in the lower right corner of the DOCUMENT.  The production number shall contain at least six digits.  There shall be no other legend or stamp placed on the DOCUMENT image, unless a DOCUMENT qualifies for confidential treatment pursuant to the terms of any protective order in this matter, or if the DOCUMENT requires redaction.  In the case of confidential materials as defined by any protective order in this matter, any applicable designation may be "burned" onto the DOCUMENT's image at a location that does not obliterate or obscure any INFORMATION from the source DOCUMENT, preferably in the lower left corner.

    c.       Each DOCUMENT image file shall be named with the unique production number of the page of the DOCUMENT in question, followed by the extension ".tif".  File names should not be more than 20 characters long or contain spaces.

    d.       For files produced in TIFF image format, each page of a DOCUMENT shall be electronically saved as an image file.  If a

1    DOCUMENT is more than one page, the unitization of the DOCUMENT

2    and any attachments and/or affixed notes shall be maintained as they existed

3    in the original DOCUMENT.

4    e.    TIFF images shall be accompanied by a standard load file containing

5    the metadata and other fields identified in Paragraph 7(j) of these

6    Instructions, below.  The load file shall be produced in one of the following

7    industry-standard formats:  (1) Concordance delimited file (".dat");

8    (2) comma-separated value file (".csv"); or (3) TAB delimited file.  TIFF

9    images shall also be accompanied by either an Opticon delimited cross-

10    reference file (".opt") or IPRO View LFP comma-delimited file showing

11    DOCUMENT breaks and appropriate DOCUMENT unitization.

12    f.    In addition to TIFF images, each production of electronic

13    DOCUMENTS shall include searchable text files corresponding to the TIFF

14    images for each DOCUMENT.  The full text of each native electronic

15    DOCUMENT, excluding redacted DOCUMENTS, shall be extracted

16    directly from the native file and produced in a DOCUMENT-level related

17    text file (the "Extracted Text"). The Extracted Text shall be provided in

18    searchable ASCII text format (or Unicode text format if the text is in a

19    foreign language) and shall be named with the unique production number of

20    the first page of the corresponding TIFF DOCUMENT followed by the

21    extension ".txt".  YOU shall also perform OCR on certain types of non-text

22    based static image ESI, such as native PDF image files, and produce the

23    corresponding DOCUMENT-level related text files.  Searchable text files

24    shall be generated from Extracted Text where available.

25    g.    DOCUMENTS shall be produced on optical media (CD or DVD) or

26    external hard drives or similar, readily accessible electronic media (the

27    "Production Media").  Each piece of Production Media shall IDENTIFY a

28    production number corresponding to the party and production with which

the DOCUMENTS on the Production Media are associated (e.g., "[EXPERT NAME] 001"), as well as the volume of the material in that production (e.g., "- 001", "-002").  The face of each piece of Production Media shall also IDENTIFY:  (1) the production date; and (2) the production number range of the materials contained on the Production Media.

h.      Presentation DOCUMENTS (such as Microsoft PowerPoint DOCUMENTS) shall be produced with one slide per page together with any "Speaker's Notes" or similar pages appended to, or otherwise associated with, each slide. Presentation DOCUMENTS shall also be produced according to all other applicable Instructions set forth in this set of requests.

i.      Unless redaction is required, spreadsheet DOCUMENTS (such as Microsoft Excel DOCUMENTS) shall be produced in native format, together with a single page TIFF placeholder bearing the legend "Native File Produced" and load files containing the agreed upon metadata, extracted text, production numbers and any applicable confidentiality labels as described above.  If redaction is required, then spreadsheets shall be produced in TIFF image format as set forth above.

j.      For all DOCUMENTS for which metadata exists, the load files described above shall be produced including the following fields:

| Fields for all DOCUMENTS | Description |
| --- | --- |
| BegProd | Beginning production number assigned to each DOCUMENT |
| EndProd | Ending production number assigned to each DOCUMENT |
| BegAttach | Beginning production number assigned to the group of DOCUMENTS to which |

| | |
|---|---|
| | the parent DOCUMENT and any attachment DOCUMENTS are associated |
| EndAttach | Ending production number assigned to the group of DOCUMENTS to which the parent DOCUMENT and any attachment DOCUMENTS are associated |
| Custodian | The name of the person or source from which the DOCUMENT was obtained |
| FileName | Original file name |
| FilePath | Original file path |
| DocExt | DOCUMENT type as identified by metadata associated with the native DOCUMENT indicating the extension of the application that created the native DOCUMENT (e.g., .doc, .ppt, etc.) |
| HashValue | The unique identifying value assigned to a DOCUMENT based on hash coding algorithms |
| Author | The person or source that originated the DOCUMENT |
| DateCreated | Date that the DOCUMENT was created (as reflected by metadata) |
| LastModifiedDate | Date that the file was last modified (as reflected by metadata) |
| FullText | The path or link to the searchable |

| | Extracted or OCR text for a DOCUMENT |
|---|---|
| NativeFile | The path or link to a processed and produced native file, to the extent the production contains native files |
| Confidentiality | The confidentiality designation for the DOCUMENT, as defined by any protective order in this matter |
| **Additional Fields for Email** | **Description** |
| To | All INFORMATION contained in the "To" field of an email |
| From | All INFORMATION contained in the "From" field of an email |
| CC | All INFORMATION contained in the "CC" field of an email |
| BCC | All INFORMATION contained in the "BCC" field of an email |
| DateSent | Date the email was sent, including month, day and year |
| TimeSent | Time the email was sent, including hour, minute, second and time zone. To the extent this INFORMATION is already included in the DateSent field in the metadata, YOU need not parse TimeSent as a separate field. |
| DateReceived | Date the email was received, including the month, day and year |

| TimeReceived | Time the email was received, including hour, minute, second and time zone. To the extent this INFORMATION is already included in the DateReceived field in the metadata, YOU need not parse TimeReceived as a separate field. |
| Subject | Subject or "Re:" line, as stated in the email |

8.     If with respect to any request there are no responsive DOCUMENTS, so state in writing.

9.     The following rules of construction shall be applied herein: (a) the words "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; (b) the use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural; (c) the words "any," "all," "each," and "every" all include any, all, each, and every and shall be understood in either their most or least inclusive sense as necessary to bring within the scope of the requests all responses that might otherwise be construed to be outside of their scope; and (d) the use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the DOCUMENT requests all responses that might otherwise be construed to be outside of their scope.

10.     If YOU object to a portion or an aspect of a request, state the grounds for YOUR objection with specificity and respond to the remainder of the DOCUMENT request. If any DOCUMENTS, or portion thereof, are withheld because YOU claim that such INFORMATION is protected under the attorney-client privilege, work product doctrine, or other privilege or doctrine, YOU are required to provide a privilege log

1   setting forth the specific basis for the claim of privilege or protection and for each

2   DOCUMENT provide the following:

3               a.      the subject matter of the DOCUMENT;

4               b.      the title, heading or caption of the DOCUMENT, if any;

5               c.      the date appearing on the DOCUMENT or, if no date appears

6       thereon, the date or approximate date on which the DOCUMENT was prepared;

7               d.      the type of the DOCUMENT (e.g., whether it is a letter,

8       memorandum, minutes of meeting, etc.) and the number of pages of which it

9       consists;

10              e.      the identity of the person who signed the DOCUMENT or, if it was

11      not signed, the person who prepared it;

12              f.      the identity of each person to whom the DOCUMENT was addressed

13      and the identity of each person to whom a copy thereof was sent; and

14              g.      the identity of each person who has custody of a copy of each such

15      DOCUMENT.

16      11.     If YOU claim that a portion of a DOCUMENT is protected from disclosure

17   for any reason, produce such DOCUMENT with redaction of only the portion claimed to

18   be protected.  When such redactions for privilege or protection are made, YOU shall place

19   a legend similar to "REDACTION – PRIVILEGE" on the copy of the DOCUMENT

20   produced.  All redactions shall also be included on the privilege log as described above.

21      12.     If YOU object that a request is vague or ambiguous, identify the

22   objectionable aspect of the request.

23      13.     If a request cannot be responded to in full, YOU shall respond to the extent

24   possible, specify the reason for YOUR inability to respond to the remainder, and state

25   whatever INFORMATION or knowledge YOU have REGARDING the portion to which

26   YOU have not responded.

27      14.     If any DOCUMENT called for by these requests has been destroyed, lost,

28   discarded, or is otherwise no longer in YOUR possession, custody, or control, identify

1  such DOCUMENT as completely as possible, and specify the date of disposal of the

2  DOCUMENT, the manner of disposal, the reason for disposal, the person authorizing

3  disposal, and the person disposing of the DOCUMENT.

4  II.  DEFINITIONS:

5      1.  "ADC" means the Arizona Department of Corrections, including all its

6  subdivisions, AGENTS, employees, CONTRACTORS, and attorneys.

7      2.  "AFFILIATED" means connected in some way.

8      3.  "ASSUMPTIONS" means any representation on which YOU were asked to

9  rely without independent proof or substantiation.  It includes hunches, hypotheses,

10  information about prisons, prisoners, medical care or any other matter bearing on this

11  case, inferences, presumptions, theories, conditions, presuppositions, alleged historical

12  matter or descriptions of events.

13      4.  "COMMUNICATIONS" means any transmittal of information from one

14  person or entity to another by any means, including letters, correspondence, notes,

15  memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied

16  or blind copied), electronic mail generated from a hand held personal device including a

17  Blackberry or iPhone, instant messaging, electronic mail generated from business or

18  personal email accounts, internet relay chat, news group, group or collaboration servers,

19  electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings,

20  audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes,

21  teleconference, collaboration servers (including share point servers), web-based or

22  software virtual meetings including WebEx and any other meeting software and share

23  point servers, and oral contact such as face-to-face discussions or meetings, telephone

24  conversations, and voice mail messages.

25      5.  "CONTRACTORS" means anyone working for an entity pursuant to agreed

26  terms, such as by contract, rather than as an employee.

27      6.  "CORIZON" means the health care provider company that contracted to

28  take over health care for prisoners in the ADC beginning March 4, 2013, and its corporate

1  predecessors or successors, employees, subordinates, CONTRACTORS, AGENTS,

2  attorneys, or anyone else AFFILIATED with it.

3      7.    "DEFENDANTS or their AGENTS" means Defendants Charles Ryan and

4  Richard Pratt, and their predecessors, successors, employees, subordinates,

5  CONTRACTORS, AGENTS, attorneys, or any other person or entity acting in support of

6  the defense of THIS LITIGATION or on their behalf in THIS LITIGATION.

7      8.    "DEFENDANTS' COUNSEL" refers to any of the lawyers or other

8  personnel at the Struck, Weineke & Love, P.L.C. law firm, the Office of the Attorney

9  General of Arizona, or the ADC  when acting as counsel for Defendants in THIS

10  LITIGATION.

11      9.    "DOCUMENT" and "DOCUMENTS" have the same scope used in Rule

12  34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or

13  record of every type and description and every tangible thing that is or has been in the

14  possession, custody, or control of DEFENDANTS and the ADC, to which they have

15  access, or of which they have knowledge, including, but not limited to,

16  COMMUNICATIONS, newspaper articles, magazine articles, news articles,

17  correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes,

18  handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase

19  orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-

20  purchase materials, notebooks, diaries, models, devices, pictures, photographs, films,

21  audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys,

22  minutes, data compilations, and statistical compilations, regardless of whether a particular

23  DOCUMENT is privileged or confidential, and regardless of the form of storage

24  (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk

25  or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device).

26  "DOCUMENT" and "DOCUMENTS" includes, but is not limited to, all DOCUMENTS

27  generated by or maintained in the Director's Project Tracking System, official ADC

28  papers, and the ADC's intranet.

10.     "GRIEVANCE" means the same thing as is meant by the use of the word "grievance" or "grievances" on pages 3, 4, 11, and 15 of YOUR REPORT.

11.     "IN CONNECTION WITH YOUR REPORT" means any activity performed by YOU for DEFENDANTS in connection with the preparation of any iteration of YOUR REPORT.

12.     "INFORMATION" means any knowledge, evidence of any type, facts, data, intelligence, speculation or material of any kind relating to the subject matter of the request.

13.     "NAMED PLAINTIFFS" means the individual plaintiffs who filed the Complaint in this matter, as set forth in the caption to this document.

14.     "OTHER EXPERTS" means any expert other than YOU ALONE who has been retained by or is being paid by DEFENDANTS in connection with THIS LITIGATION.

15.     "PAYMENT" means compensation of any type, whether actually paid or promised.  It is not limited to compensation for work forming the opinions expressed in YOUR REPORT, but extends to all compensation for YOUR work in connection with YOUR SERVICE AS AN EXPERT, including any study undertaken by YOU and compensation for YOUR testimony.  This includes all COMMUNICATIONS about additional benefits to YOU, if any, even if not to be paid in this case.  "PAYMENT" expressly includes compensation for work done by a person or organization associated with the expert named in this subpoena, even if not done by him.

16.     "RECEIVED OR HAD ACCESS TO" means RECEIVED by YOU ALONE or by anyone acting on YOUR behalf or at YOUR direction in connection with THIS LITIGATION.  This definition includes anything that YOU ALONE (or anyone acting on YOUR behalf or at YOUR direction) had the ability to review, even if only for a limited period of time.

17.     "REFER" means making reference to, related to, consisting of, REFLECTING, concerning, discussing, evidencing, commenting on, describing,

1   constituting, supporting, contradicting or having any logical or factual connection with the

2   matter identified, in whole or in part.

3        18.    "REFLECT" means to manifest or show, in whole or in part and includes

4   passing references to a subject.

5        19.    "REGARDING"  means, without limitation, anything that, in whole or in

6   part, analyzes, comments upon, comprises, concerns, constitutes, contains, describes,

7   discusses, embodies, evidences, explains, identifies, manifests, mentions, pertains directly

8   or indirectly to, reflects, refers to, relates to, responds to, states, summarizes, or is in any

9   way relevant to the identified subject.

10       20.    "SPDS" means Smallwood Prison Dental Services, and its corporate

11  predecessors or successors, employees, subordinates, CONTRACTORS, AGENTS,

12  attorneys, or anyone else AFFILIATED with it.

13       21.    "THIS LITIGATION" refers to the matter captioned *Parsons v. Ryan*,

14  Docket No. 2:12-cv-00601-NVW, pending in the United States District Court for the

15  District of Arizona, as REFLECTED in the caption set forth at the top of this pleading.

16       22.    "WEXFORD" means Wexford Health Sources, Incorporated.

17       23.    "YOU" or "YOUR" mean the individual named in this subpoena and all

18  persons assisting or acting at the direction of that person in connection with THIS

19  LITIGATION.

20       24.    "YOU ALONE" means only the individual who is named in this subpoena.

21       25.    "YOUR REPORT" means any REPORT prepared by YOU as an expert

22  report in connection with THIS LITIGATION and served on or about December 18, 2013

23  by Defendants.  It should be read to include all amendments, updates, rebuttal reports or

24  any other report that adds to, expands upon or varies in any way the content of the report

25  served on December 18, 2013 or the testimony YOU intend to offer in THIS

26  LITIGATION.

27

28

26.     "YOUR SERVICE AS AN EXPERT" means everything done by YOU in connection with THIS LITIGATION, including everything for which YOU have or YOU intend to bill DEFENDANTS.

III.  REQUESTS FOR PRODUCTION OF DOCUMENTS:

1.      All DOCUMENTS not previously produced IN CONNECTION WITH YOUR REPORT that contain facts or data that YOU RECEIVED OR HAD ACCESS TO in connection with YOUR SERVICE AS AN EXPERT.

2.      All DOCUMENTS not previously produced that relate to PAYMENT to YOU, YOUR employer or anyone else AFFILIATED with YOU by DEFENDANTS or their AGENTS, regardless of the matter for which YOU were paid.

3.      All notes maintained by YOU in connection with YOUR SERVICE AS AN EXPERT.

4.      All DOCUMENTS that REFLECT or REFER to ASSUMPTIONS that YOU made or were asked to make in connection with YOUR SERVICE AS AN EXPERT.

5.      All COMMUNICATIONS with anyone, including any COMMUNICATIONS with any employee of ADC, CORIZON, WEXFORD, or SPDS, or with OTHER EXPERTS retained by DEFENDANTS, in connection with YOUR SERVICE AS AN EXPERT.  This also shall include all COMMUNICATIONS with DEFENDANTS' COUNSEL, if those COMMUNICATIONS (i) relate to compensation for YOUR study or testimony; (ii) identify facts or data that counsel provided and that YOU considered in forming the opinions in YOUR REPORT; or (iii) identify ASSUMPTIONS that counsel provided and that YOU relied on in forming the opinions in YOUR REPORT.

6.      Transcripts of testimony that YOU have given in the last 5 years where the topic of the testimony related to YOUR professional activities.

7.      The following DOCUMENTS identified in Exhibit 2 of YOUR REPORT at the cited page:

1    Use of Force/SIR/IR Reports (Exhibit 2 to YOUR REPORT Page 7):

2    Gamez Use of Force Video 1/13/13-13-B02-0180, 13-00498 (ADC S000234);

3    SIR 12-13160 (Eyeman) (ADC S000026-000029);

4    UOF Review 12-A08-6875 (Eyman)(ADC S000030-000049);

5    UofF Review 13-A08-0210 (Eyman) (ADC S000050-000063);

6    UofF Review on Inmate Pettit #181452 (Eyman) (ADC S000064-000083);

7    UofF Reviews 1 of 2 (Perryville) (ADC S000084-000134);

8    UofF Review 2 of 2 (Perryville) (ADC S000135-000164);

9    UofF Review #12-A01-6608 Mowry #159208 (Florence) (ADC S000165-000176);

10   UofF Review #12-A01-8879 Wright #188401 (Florence) (ADC S000177-000188);

11   U ofF Review #12-A01-9261Savala #169554 (Florence) (ADC S000189-000200);

12   UofF Review #13-A01-0214 Martinez #266305 (Florence) (ADC S000201-

13   000210);

14   UofF Review #13-A01-0499 Kubiak #248182 (Florence) (ADC S000211-000220);

15   Florence Use of Force Video (ADC S000233); and

16   Eyman Browning UOF SIR No. 201213036 9/25/12 (ADC S000303-000316).

17   Post Orders (Exhibit 2 to YOUR REPORT, Page 8):

18   Unit Specific Post Order—Browning Unit (ADC S000235-000244);

19   Post Order Restricted Watch Security Officer 36 (5/15/13) (ADC S000245-

20   000248);

21   Post Order Restrict Watch Security Officer 36 (Florence) (ADC S000249-000260);

22   Unit Specific Post Order—Perryville Lumley Unit (ADC S000261); and

23   Restrict Post Order 37 re Max Custody Rovers (ADC S000557-000561).

24   Inmate Assault Data (Exhibit 2 to YOUR REPORT, Page 9):

25   Inmate Assault Data (2/11/13) (ADC S000001-000009);

26   Inmate Assault Data (3/31/13) (ADC S000010-000013);

27   Inmate Assault Data (6/30/13) (ADC S000014-000017);

28   Inmate Assault Data (FY 2014 as of 9/30/13) (ADC S000018-000021);

1  Inmate Assault Data (FY 2014 as of 10/31/13) (ADC S000022-000025);

2  Assault Data monthly by complex FY11 (ADC S000277);

3  Assault Data monthly by complex FY12 (ADC S000278);

4  Assault Data monthly by complex FY13 (ADC S000279); and

5  Assault Data monthly by complex FY11 (ADC S000280).

6  Temperature Data (Exhibit 2 to YOUR REPORT, Page 9):

7  PV Lumpley Temperature Data – Aug 26 2013 (ADC S000221-000223);

8  PV Lumpley Temperature Data – Oct 18 2013 (ADC S000224-000226);

9  PV Lumpley Temperature Data –Sep 12 2013 (ADC S000227-000229); and

10  PV Lumpley Temperature Data –Sep 27 2013 (ADC S000230-000232).

11  Deaths By Reason Documents (Exhibit 2 to YOUR Report Page 9):

12  IM Deaths by Reason 2012 (ADC S000292-000297); and

13  IM Deaths by Reason 2013 (ADC S000298-000302).

14  Miscellaneous (Exhibit 2 to YOUR REPORT, Page 9):

15  ADC Detention/PC Report (as of 11/29/13) PowerPoint re 805 (Protective Custody

16  requests) and placements (ADC S000262-000276);

17  ADC Maximum Custody Profiles Males (ADC S000281-000283);

18  Adult Corrections Systems Statistics (ADC S000284-000285);

19  Mental Health Scores by Gender & Classification spreadsheet (ADC S000556);

20  and

21  Email from R. Patton to D. Northrup re: Rovers (ADC S000562).

22  8.   "Validation of the Arizona Department of Corrections Objective

23  Classification System:  Final Report", Criminal Justice Institute, 2013 by Patricia L.

24  Hardyman, Ph.D., referenced on page 1 note 2 of YOUR REPORT.

25  9.   Arizona Department of Corrections, Mental Health Initiatives and Suicide

26  Prevention Strategies, May 2013, referenced on page 7, note 33 of YOUR REPORT.

27  10.   Use of Force Packets (Form 2 in DO 804) that YOU reviewed, as referenced

28  on page 13 of YOUR REPORT, including but not limited to the list of all incidents

1   between July 1, 2012 and February 5, 2013 and all documents relating to the specific

2   incidents YOU selected.

3        11.    All DOCUMENTS relating to the fifteen incidents YOU selected and the

4   three videos YOU reviewed as referenced on page 13 of YOUR REPORT in the second

5   full paragraph.

6        12.    All DOCUMENTS relating to the Step and Incentive Programs in ADC that

7   is described in Exhibit 5 to YOUR REPORT.

8        13.    All DOCUMENTS relating to the use of force incidents from July 1, 2012

9   to February 5, 2013 referenced in your Exhibit 7.

10       14.    All DOCUMENTS relating to "rovers" as referenced on page 7 of YOUR

11   REPORT, including but not limited to all DOCUMENTS relating to YOUR assertion in

12   footnote 36 that "Correctional officer positions have been reassigned to create "rover"

13   posts at Florence (seven), Eyeman SMU1 (6), Eyeman Browning (6), and Perryville

14   Lumley (1)."

15   Dated:  January 10, 2014

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JONES DAY**

By: *Caroline Mitchell/sx*
Caroline Mitchell (Cal. 143124)*
Sophia Calderón (Cal. 278315)*
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:     cnmitchell@jonesday.com
           scalderon@jonesday.com
*Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:     dbarr@perkinscoie.com
           agerlicher@perkinscoie.com
           keidenbach@perkinscoie.com
           jhgray@perkinscoie.com
           mdumee@perkinscoie.com

Daniel Pochoda (Bar No. 021979)
Kelly J. Flood (Bar No. 019772)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF
ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:     dpochoda@acluaz.org
           kflood@acluaz.org
           jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct.
R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:    dspecter@prisonlaw.com
          ahardy@prisonlaw.com
          snorman@prisonlaw.com
          ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:    dfathi@npp-aclu.org
          afettig@npp-aclu.org
          aquereshi@npp-aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email:    jlwilkes@jonesday.com
          tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone: (212) 326-3498
Email:    kmamedova@jonesday.com
          jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;*
*Stephen Swartz; Dustin Brislan; Sonia*
*Rodriguez; Christina Verduzco; Jackie*
*Thomas; Jeremy Smith; Robert Gamez;*
*Maryanne Chisholm; Desiree Licci; Joseph*
*Hefner; Joshua Polson; and Charlotte*
*Wells, on behalf of themselves and all others*
*similarly situated*

Sarah Kader (Bar No. 027147)
Asim Varma (Bar No. 027927)
**ARIZONA CENTER FOR**
**DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:     skader@azdisabilitylaw.org
               avarma@azdisabilitylaw.org

J.J. Rico (Bar No. 021292)
Cathleen M. Dooley (Bar No. 022420)
**ARIZONA CENTER FOR**
**DISABILITY LAW**
100 N. Stone Avenue, Suite 305
Tucson, Arizona 85701
Telephone:  (520) 327-9547
Email:     jrico@azdisabilitylaw.org
               cdooley@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability*
*Law*