Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Courtney R. Cloman, Bar No. 023155
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>                                        Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br>                                        Defendants. | NO. 2:12-cv-00601-NVW<br><br>**PROPOSED LODGED: Defendants' Response to Plaintiffs' Motion for Order Prohibiting Defendants from Interfering with Legal Mail Between Class Counsel and Class Members** |

Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Courtney R. Cloman, Bar No. 023155
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | NO. 2:12-cv-00601-NVW |
| Plaintiffs, | |
| v. | **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ORDER PROHIBITING DEFENDANTS FROM INTERFERING WITH LEGAL MAIL BETWEEN CLASS COUNSEL AND CLASS MEMBERS** |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | [Oral Argument Requested] |

**INTRODUCTION**

The Court certified a specific list of claims concerning allegations of inadequate healthcare and unlawful conditions of confinement.  (Doc. 372.)  That order was not a gateway to any request for class-wide injunctive relief on claims unrelated to, and not raised in, the Complaint.  Rule 23(g)(1)(E) does not authorize the drastic relief Plaintiffs request in their Motion.  Plaintiffs' legal-mail allegations are also patently false.  ADC staff is not reading Plaintiffs' legal mail or "targeting" Plaintiffs' counsel.  Plaintiffs distort ADC's policies and make false assumptions based on nothing more than photographs of envelopes and self-serving statements to support their contentions.  ADC's legal mail policies are constitutionally sound and adequately protect Plaintiffs' legal correspondence.  Indeed, Plaintiffs allege no actual injury or interference with their case.  This is just another attempt by Plaintiffs to distract from the real issues, smear ADC's name in the media during a pending lawsuit and appeal, rack up their attorneys' fees, and secure a ruling for use in future or other pending litigation that their counsel are involved in.  Plaintiffs' counsel should be ordered to pay Defendants' attorneys' fees and costs for having to respond to their frivolous Motion.

**I.     ADC'S MAIL POLICIES**

**A.     Non-Legal Mail**

ADC policy authorizes designated staff to open, inspect, and read incoming non-legal mail to prevent criminal activity and prevent inmates from receiving contraband or any material that may be detrimental to the safe and orderly operation of the institution.  (Ex. 1, ¶ 5.)  ADC policy also authorizes designated staff to inspect and read outgoing non-legal mail when there is a reasonable belief that the inmate is using the mail to further a crime or circumvent ADC regulations or instructions.  (Id., ¶ 6.) ██████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

███████████████████

1

### B.    Legal Mail

ADC's Department Order ("DO") 902.11 governs the procedure for processing legal mail.  (Ex. 1, ¶ 8.)  It defines "legal mail" as "[a]ny letters to or from an inmate's attorney as defined above, or to or from a judge or to or from a court of law." (Ex. 1, ¶ 9.)  It further defines "attorney" as "[a]n attorney-at-law licensed to practice in any state or federal jurisdiction." (Id.)   Thus, the definition includes both Arizona and non-Arizona attorneys.  (Id.)

Correspondence to or from a law firm, organization, or other entity is not considered legal mail simply because it includes the word "law" or "legal" in its title. (Ex. 1, ¶¶ 11, 38.) This is because ADC's definition of legal mail does not include correspondence from "law firms" or "legal organizations," only an "attorney," a "judge," or a "court of law." (Id.) When mail is sent to or received by an office/organization/ group, without an attorney name listed, it is impossible to confirm the inmate is communicating with an attorney, and therefore whether it is "legal mail."  (Ex. 2, ¶ 8.) Thus, on its face, correspondence from the American Civil Liberties Union ("ACLU"), the Prison Law Office ("PLO"), and the Arizona Center for Disability Law ("ACDL") does not automatically qualify as legal mail under ADC's legal mail policy.  (Ex. 1, ¶¶ 11, 38; Ex. 2, ¶ 17.)

#### 1.    Outgoing legal mail

Inmates must identify outgoing legal mail by writing "Legal Mail" on the lower left-hand corner of the envelope. (Ex. 1, ¶ 12.) Without that designation, it is processed as regular, non-legal mail.  (Id., ¶ 13.)  Unit officers make daily rounds in the units to collect outgoing legal mail from inmates.  (Id., ¶ 20.)  The inmate must hand the outgoing legal mail to the unit officer at that time.  (Id.)  The envelope must be unsealed so that the officer is able to inspect its contents in the inmate's presence.  (Id.)  The officer then inspects – but does not read – the contents for contraband in the inmate's presence. (Id., ¶ 15.)  Only if it is necessary to establish that the contents are not contraband will the officer read the document. (Id.) The officer then seals the envelope, affixes a stamp

2

indicating it is legal mail and that the contents have been inspected, logs it, and then delivers it to the mail room for mailing.[1]  (Id., ¶¶ 14-15, 20.)

Often times, inmates will seal legal mail before handing it to a unit officer for inspection, or they will place their legal mail in the non-legal mail box.[2]  (Ex. 1, ¶ 22.) This is improper and creates extra work and delay.  (Id.)  If a unit officer is handed legal mail that is sealed, he must unseal it in order to conduct a proper inspection.  (Id.) After inspecting the contents in the inmate's presence, the officer will then re-seal the envelope. (Id.)  If an officer finds a piece of mail marked as "legal mail" in the non-legal mail box, it has to be removed, taken back to the inmate's particular housing unit, re-opened in his presence to inspect its contents, and then sent through the appropriate legal mail channels. (Id.) All of this causes additional delay.  (Id.)

    2.    Incoming legal mail

Upon receiving incoming mail, staff must attempt to make a determination, based on an inspection of the envelope, whether the contents constitute legal mail.  (Ex. 1, ¶ 17.) The return address may be indicative of whether the contents of the envelope constitute legal mail; however, staff do not rely solely on the words "legal mail" stamped on the envelope by the sender.  (Id.)  In other words, simply affixing a "legal mail" stamp to an envelope does not automatically qualify it as legal mail.  (Id.)  If there is any serious doubt as to whether the contents of the envelope contain legal mail, designated staff contact the Legal Access Monitor for direction. (Ex. 1, ¶ 17; Ex. 2, ¶ 12.) Correspondence that is determined to be legal mail is taken to the inmate's unit and opened for inspection in the inmate's presence.  (Ex. 1, ¶¶ 15, 17.)  The mail may be scanned during the inspection, but it is "not read or censored by staff."  (Id., ¶ 15.)

---

[1] ████████████████████████████████████████████████████████████████

[2] There are designated mail boxes in each unit for non-legal mail. (Ex. 1, ¶ 21.) In maximum custody units, unit officers conduct rounds similar to the legal-mail round to collect non-legal mail. (Id.)

3.      Inspection of legal mail

The inspection/scanning that is done while processing outgoing and incoming legal mail is accomplished without actually reading the document(s).  (Ex. 1, ¶ 19.)  The mail is scanned only to the extent necessary to determine it does not contain contraband and is actually legal mail. (Ex. 1, ¶ 19; Ex. 2, ¶¶ 9–10.)

**C.      The September 2013 Memorandum**

This resulted in an increase in inmate grievances complaining that their legal mail was not being treated as such. (Ex. 2, ¶ 20.)

4

███████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████     ADC then issued a memorandum to all facilities on September 17, 2013. (Id., ¶ 34.) The Memo did not change or alter ADC policy; rather it clarified the existing definition of legal mail so that staff and inmates had clear direction. (Ex. 1, ¶ 33; Ex. 2, ¶¶ 20–21.)   The Memo stated that incoming correspondence from the PLO, ACLU, ACDL, NAACP, and the Justice Project "*without an individual specific attorney as part of the return address* is not considered Legal Mail." (Doc. 737–1 at 33, emphasis added.) The Memo further explained that correspondence from these five organizations that did identify a specific attorney in the return address should be processed as legal mail, but correspondence that did not list a specific attorney should be processed as non-legal mail. (Id.)  The Memo was posted or available for inmates to review, and staff were available to explain the Memo/policy if an inmate had questions about it.  (Ex. 1, ¶ 35.)

**D.      The Purposes Behind the Legal Mail Policy**

███████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

provides legal mail supplies to indigent inmates regardless of their ability to pay, including paper, writing utensils, and pre-stamped envelopes.   (Ex. 1, ¶ 45.) The envelopes are pre-marked "Legal Mail" and are provided to indigent inmates to correspond with their attorneys or the court regarding their legal claims. (Id.)

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████

## II.   PLAINTIFFS' DISTORTIONS OF ADC'S LEGAL-MAIL POLICY

ADC's legal-mail policy is clear and, as discussed below, legally sound. Plaintiffs, however, make several outrageous assertions (repeatedly) in an attempt to cast that policy as something it is not.  Each one is dispelled below.

### A.   ADC Has Not Directed Mail Room Staff to Treat All Correspondence From Plaintiffs' Counsel as Non-Legal Mail.

Plaintiffs make the unbelievable assertion that "ADC has issued statewide and institutional directives that correspondence with Plaintiffs' counsel should not be treated as legal mail." (Motion at 2:20-21.)  There is absolutely no support for this contention.  Plaintiffs rely on the September 2013 Memo, but the Memo says no such thing.  The Memo, which clarifies ADC policy, states only that correspondence from the listed organizations "without an individual specific attorney as part of the return address" is not considered legal mail.  (Doc. 737–1 at 33, emphasis added.)  It further explains that correspondence that *does* identify a specific attorney in the return address *will* be processed as legal mail.  (Id.)  Any correspondence that does not list a specific attorney is processed as non-legal mail, and is subject to the non-legal mail process.  (Id.)  In other words, the correspondence will be treated as legal mail if it constitutes legal mail, and it will not be treated as legal mail if it does not.  The Memo did not instruct mail room staff to reject *any and all* correspondence from the listed organizations.

Plaintiffs contend that the September 2013 Memo is "inconsistent with the ADC's own mail policies, which contain no requirement that incoming legal mail include the name of an attorney in the return address." (Motion at 3:21-23.)  But as the Memo itself explains, to constitute legal mail under ADC policy, the correspondence must be from an "attorney." (Ex. 1, ¶¶ 9, 37.)  Correspondence from an organization is not, by

7

definition, legal mail, because an organization is not an "attorney." (Id., ¶ 11.) Each piece of correspondence must identify a specific attorney for the correspondence to be treated as legal mail. (Id. ¶ 38.) The Memo did not change ADC policy; it clarified the existing definition of legal mail. (Id., ¶ 33.)

Plaintiffs next assert that Inmate Seymour Abdullah went to the mailroom to send out legal mail, and was told by an ADC staff member that "all correspondence with the Prison Law Office was not legal mail." (Motion at 4:19-20; Doc. 737–1 at 66.) First, inmates do not take outgoing legal mail to the mail room for mailing; instead, as discussed above, it is picked up by staff at the inmate's unit (so that it can be inspected in his presence) and taken to the mail room. (Ex. 1, ¶ 20; Ex. 3, ¶ 8.) Inmate Abdullah's story does not check out. Second, the accused staff member has declared under penalty of perjury that this hearsay statement is false. (Ex. 3, ¶ 7.) That staff member has never advised any inmate that correspondence from the Prison Law Office (or any entity listed in the September Memo) was not legal mail, nor has he heard of anyone refusing to treat all mail from these entities as legal mail. (Id., ¶ 9.)

**B.    The September 2013 Memo Does Not "Target" Plaintiffs' Counsel.**

Plaintiffs also repeat the mantra that their counsel was "targeted" (i.e., included in the Memo) in retaliation for bringing this lawsuit. This contention defies common sense. Plaintiffs are represented not only by the PLO, ACLU, and ACDL, but also by the law firms of Jones Day and Perkins Coie. The latter two law firms are not listed in the Memo. Why would ADC target some but not all? The answer: because ADC was not "targeting" anyone. (Ex. 1, ¶ 39; Ex. 2, ¶¶ 25-26.) ████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████        Plaintiffs' counsel also complained to ADC that certain correspondence sent by them was not being processed as legal mail. (Ex. 1, ¶ 30; Doc. 737-5 at 2-4, 6-8, 10-11; Doc. 737-6 at 2-3, 9-14, 21-29, 33-34, 36-37, 40-41, 44, 45, 46-47.) Thus, the

Memo listed these five organizations because they were causing staff the most confusion *and* because Plaintiffs' counsel (three of the five organizations) specifically inquired about their own correspondence. (Id., ¶¶ 28-34, 38-39.)  In fact, Defendants' informally clarified this requirement to Plaintiffs' counsel months *before* the September Memo (and as early as February 2013).  (Doc. 737–6 at 5, 16, 31, 33-34, 36, 55-56, 99, 101-102.)

### C.   ADC Has Not Informed Mail Room Staff That Correspondence From Out-Of-State Attorneys is Not Legal Mail.

Plaintiffs next contend that inmates "are being told" that correspondence from out-of-state attorneys, like some of their counsel, is not considered legal mail. (Motion at 4:10-13.) This is obviously not ADC policy, which specifically defines "attorney" as "[a]n attorney-at-law licensed to practice in *any* state or federal jurisdiction."  (Ex. 1, ¶ 9, emphasis added.)  To support this contention, Plaintiffs again attach the declarations of Inmate Abdullah, who contends that he attempted to send legal mail to California attorneys "Donald Specter" and "Corene Hendrick," and that he was told by two ADC staff members that it would not be treated as legal mail.  (Doc. 737–1 at 65–68.)  These alleged hearsay statements are flatly contradicted by the declarations of the two ADC staff members he accuses. (Ex. 3, ¶¶ 7–11; Ex. 4, ¶¶ 8–12.) These staff members have never informed *any* inmate that correspondence to or from attorneys not licensed in Arizona is not legal mail, nor have they heard of any other staff member refusing to treat correspondence from non-Arizona attorneys as legal mail.  (Id.) █████

███████████████████████████████████████████████████████████████████
███████████████████████████████████████     ████████████████
██████████████████████████████████████████

---

[3] There is no "Corene Hendrick" licensed as a California attorney. Nor is there a "Bridgette Amiri" licensed in Arizona. Thus, even assuming that Inmate Abdullah is correct in his declaration that mail room staff told him that "neither" of these individuals were "listed as attorneys" (Doc. 737-1 at 68), that is a true statement. Plaintiffs' Motion mentions another alleged incident regarding attorney Daniel Pochoda, but the exhibits they cite to do not support it. (Motion at 4:22-28.) Plaintiffs also assert that "[a]n attorney licensed in Arizona and employed by Perkins Coie was deemed by Lewis staff as not an attorney." (Motion at 10:19-20.) In support, they attach an inmate letter where Plaintiff Smith requested a legal phone call with attorney Stephen Brookman. (Doc. 737-6 at 86.) On the inmate letter it is written "No attorney listed found under the listed name above." First, the writing gives no indication that it was actually written by an ADC staff member.

Plaintiffs also attach an envelope purportedly addressed to "Corene Kendrick, esq. Attorney at Law," one of their counsel. (Doc. 737-1 at 70.) These words are hand written above the typed words "Prison Law Office" and its address. (Id.) Significantly, the words "Corene Kendrick, esq." and "Attorney at Law" appear to be different hand writing, and both of them differ from Inmate Abdullah's hand writing in the return address. (Id.) And the words "Attorney at Law" appear to have been posthumously added, as it is crammed between Ms. Kendrick's name and the words "Prison Law Office." (Id.) On the envelope, there is the handwritten phrase, "checked not listed in Arizona bar." (Id.) Presumably, Plaintiffs attach this envelope to show that ADC rejected legal mail from a California attorney.[4] But even putting aside the authenticity of the envelope itself, there is no evidence that an ADC employee wrote this phrase, particularly in light of ADC's policy. It is just as likely that Inmate Abdullah wrote it in himself.

### D. Plaintiffs' Generic Accusations of Staff Reading Legal Mail are Unsupported.

Under the heading, "Prison Staff Have Opened and Read Correspondence Between Class Counsel and the Plaintiff Class," Plaintiffs make two general, and intentionally ambiguous accusations: (1) "Since the issuance of the Statewide Memo, staff at Eyman, Florence, Tucson, and Lewis have deemed legal mail sent to or from Plaintiffs' counsel as non-legal mail" (Motion at 5:11-13); and (2) "Plaintiffs' counsel has received letters sent by ADC prisoners in envelopes which were visibly opened and re-taped, have been stamped as 'inspected' or 'not legal mail,' or where the envelopes do not contain complete documents with private information" (id. at 5:16-6:2). To support these broad assertions, they string cite 20 declaration paragraphs and 20 exhibits.[5]

---

Regardless, Smith was denied a legal call – not legal mail – with Brookman because at that time Brookman was not the inmate's attorney of record. Inmates are not entitled to "legal calls," even with licensed attorneys, unless they are the inmate's attorney of record. Stephen Brookman has never made an appearance in this case.

[4] Unlike "Corene Hendrick," Corene Kendrick is a licensed California attorney.

[5] This is a motion practice Plaintiffs' counsel repeatedly engages in to circumvent

As a general matter, not one of the avowals or exhibits (or anything associated with Plaintiffs' Motion for that matter) evidences that ADC staff actually read Plaintiffs' legal mail.  In fact, none of the evidence even suggest that legal mail was not inspected in the inmate's presence.  Plaintiffs' heading (and repeated statements to the contrary) are misleading, as even the assertions that follow that heading do not go this far. Plaintiffs simply make the assumption that their legal mail was read because, as they contend, it was opened, inspected, and re-taped.  But even if true, that does not prove that the contents were read. Incoming and outgoing legal mail is inspected/scanned for contraband but not read. (Ex. 1, ¶ 15.)  Obviously, staff must open incoming legal mail to inspect it, and if outgoing legal mail is handed to a unit officer already sealed (which is against ADC policy), it must be opened so that it can be inspected and then re-sealed. (Id., ¶¶ 15, 17, 22.)  Each specific declaration paragraph and exhibit are refuted below.

> Paragraphs 10–11 & Exhibits 8–10: These pertain to Inmate Abdullah's allegations, and are refuted *supra*. In addition, they do not support Plaintiffs' opened-and-inspected allegation. Neither Inmate Abdulla nor the declarant avow that his legal mail was opened or read, and nothing in the photograph of the envelope suggests that it was opened or even inspected.
>
> Paragraph 12 & Exhibit 11: There is nothing showing that ADC did not treat this correspondence as legal mail, nor is there any evidence that ADC staff read the contents ████████████████████████████████████ t ██████████ se Inmate Abdullah presented it to his unit officer already sealed; the unit officer needed to open it to inspect it for contraband.
>
> Paragraph 13 & Exhibit 12:  The declarant does not state how she knows that the envelope sent to Inmate Fierro was delivered to him open, and the photograph of the envelope does not suggest that it was either. Furthermore, there is no evidence that "mail room staff" affixed the words, "Not Per DO 902.11" and "Reroute mail." The declarant also assumes that the mail was processed as non-legal mail and/or it was processed as non-legal mail because it listed a California

the page limitation. It leaves Defendants no choice but to painstakingly review and refute each avowal and exhibit to show that the general assertion they allegedly support is baseless. As a result, Defendants are forced to exceed the page limitation and seek leave to do so.

attorney. It could have been rerouted because the content inside the envelope was not legal mail. Finally, there is no evidence that ADC staff actually read the contents.

Paragraphs 14–15 & Exhibits 13–14: The photographs of the envelopes confirm that the mail was treated as legal mail, as they were stamped "LEGAL MAIL" by ADC staff. They were stamped "INSPECTED" because all outgoing legal mail is inspected for contraband. There is no evidence that ADC staff read the contents. If the envelope from Inmate Spalding appeared to have been cut open across the top it is because he submitted it already sealed and staff had to open it to inspect it for contraband.

Paragraph 16 & Exhibit 15: This mail was properly designated as non-legal mail because it did not indicate that Donald Specter was an attorney. It merely states, "Donald Specter – Director," and it was even sent after the September 2013 Memo and after Plaintiffs' counsel were instructed to indicate if the individual sending is an attorney. As non-legal mail it is opened and subject to being read, but even then there is no evidence that the contents of this envelope were actually read by ADC staff.

Paragraph 17 & Exhibit 16:  The first envelope was properly designated as non-legal mail because it did not indicate that Donald Specter was an attorney. It merely states, "Donald Specter – Director," and it was even sent after the September 2013 Memo and after Plaintiffs' counsel were instructed to indicate if the individual sending is an attorney. As non-legal mail it is opened and subject to being read, but even then there is no evidence that the contents of this envelope were actually read by ADC staff. But there is a bigger problem with this correspondence.  CO Smith did not write her name and badge number on the bottom of the envelope; somebody forged it. (Ex. 5, ¶¶ 9–11.) CO Smith did not work in the mail room on or before the date the envelope was mailed to Plaintiffs' counsel. (Id., ¶ 9.) CO Smith recalls Inmate Larsgard approaching her in the medical unit, and asking for her badge number, which she gave him.  (Id., ¶ 4.) Inmate Larsgard then asked CO Smith if she would sign an envelope to indicate that it was improperly opened; CO Smith declined his request. (Id., ¶¶ 5-6.)  Inmate Larsgard became agitated and walked away.  (Id., ¶ 7.) The signature is a forgery.  Regarding the second envelope,  the photograph confirms that the mail was treated as legal mail, as it was stamped "LEGAL MAIL" by ADC staff.  It was stamped "INSPECTED" because all outgoing legal mail is inspected for contraband. There is no evidence that ADC staff read the contents.

Paragraph 18 & Exhibit 17: The first envelope was properly designated as non-legal mail because it did not indicate that Donald Specter was an attorney. It merely states, "Donald Specter – Director," and it was even sent after the September 2013 Memo and after Plaintiffs' counsel were instructed to

indicate if the individual sending is an attorney. As non-legal mail it is opened and subject to being read, but even then there is no evidence that the contents of this envelope were actually read by ADC staff. Regarding the second envelope, the photograph confirms that the mail was treated as legal mail, as it was stamped "LEGAL MAIL" by ADC staff. It was stamped "INSPECTED" because all outgoing legal mail is inspected for contraband. There is no evidence that ADC staff read the contents.

Paragraph 19 & Exhibit 18: Inmate Mandeville admits that he did not identify Donald Specter as an attorney, only as "the director of the Prison Law Office." Thus, it was not legal mail.

Paragraph 20 & Exhibit 19: Inmate Reeves' belief that staff read his legal mail because he was allegedly seen by a doctor regarding his medical condition two days later is nothing more than speculation. Regarding his cartoon drawings (which is hardly legal in nature), a unit officer conducting an inspection will obviously be able to see if there is a drawing on a piece of paper or words. None of this is evidence that ADC staff read his legal mail.

Paragraphs 21–22 & Exhibits 20–21: Inmate Patterson's accusations do not pertain to "correspondence between class counsel and the plaintiff class," nor do they support the contention that ADC treats correspondence to/from Plaintiffs' counsel as non-legal mail. The allegations pertain to correspondence involving another case and other counsel. Inmate Patterson's contention that he "presented the letter and materials to the property/mail clerk" also contradicts ADC's process for collecting outgoing legal mail, which is collected from the inmate by the unit officer in the unit.[6]

**E.   ADC Has Not Interfered with the Named Plaintiffs' Legal Mail.**

As with their general assertions, Plaintiffs provide no evidence, other than self-serving avowals and/or unsupported assertions, that any of their legal mail was actually read by ADC staff.

1.   <u>Plaintiff Brislan</u>[7]

Paragraph 36, Exhibit 33 & Motion at 5: Plaintiffs attach an unverified Inmate Letter written by Brislan that merely states that he sent a package to his attorney (not specific to this case) and that it was returned to him opened and re-sealed. He does

---

[6] Plaintiffs also cite to Paragraphs 37-39, 41-42, 46-47, 49-50, and 52, and Exhibits 34-35, 37-38, and 43-44, but these concern accusations by the named Plaintiffs and are discussed infra for brevity.

[7] Brislan has been released from ADC custody.

13

not provide a photograph of the envelope, nor does he allege that it was read. The staff response informed that, because it was "return[ed] to sender" by the Post

b

████████████████████████████████████████

There is no evidence that this legal mail was actually read by ADC staff.

Paragraph 37 & Exhibit 34:  Brislan's declaration makes only general and conclusory allegations that unidentified "guards" open and read his mail outside of his presence. He claims that "all of this has been documented" but fails to attach any proof. This is not credible evidence.

Paragraphs 38–39 & Exhibit 35: Plaintiffs attach another unverified Inmate Letter written by Brislan that alleges he sent a package containing 136 pages to Corene Kendrick at the Prison Law Office, but that it was returned and opened and he was forced to re-send it. The declarant states that they later received a package from Brislan, but that it contained approximately 50 pages. There is no proof that ADC staff either read Brislan's legal mail or removed any pages from the envelope. It is pure speculation.

2.    Plaintiff Gamez

Paragraphs 46–49 & Exhibit 43:  Plaintiff Gamez avows that he sent 220 pages of documents to "the Prison Law Office" and the declarant avows that she received only 35 pages of documents. It is pure speculation for Plaintiffs to speculate that ADC staff confiscated these pages. Nonetheless, it appears that the missing documents pertained to legal-mail accusations stemming from other cases and not the allegations in this lawsuit.

3.    Plaintiff Polson

Exhibits 25& 31: These exhibits are letters from Plaintiffs' counsel to Defendants counsel.  One letter merely states: "Mr. Polson has reported to us that his legal mail is being opened outside of his presence." And the other letter states that Polson "twice attempted to send legal mail to me through the legal mail system in the following week, and neither piece has reached me. Mr. Polson believed that his legal mail was being interfered with." There was no evidence attached to support either contention. And the letters themselves are not evidence that ADC read Polson's mail or confiscated it; they are only counsel's unsupported assertions. Furthermore, the allegations

14

were ultimately proven to be false or were so vague and general they could not be investigated. (Doc. 737-6 at 2-25, 43, 45, 47, 54–60.) And the envelopes Plaintiffs' counsel was using to send Polson's legal mail failed to identify an attorney. (Id. at 26-29.)

4.    Plaintiff Swartz

Paragraphs 41–42 & Exhibits 37–38: The mail sent to Plaintiff Swartz by the PLO was not legal mail because it did not identify Donald Specter as an attorney, only as "Director." Thus, it was processed as non-legal mail and opened and inspected not in Swartz's presence. Staff specifically advised Swartz of this in Exhibit 38. Nonetheless, there is no evidence that ADC staff actually read the mail.[8]

5.    Plaintiff Chisholm

Paragraph 50: The declarant states that she received an envelope from Plaintiff Chisholm in December 2013, but that there was not a cover letter, which Chisholm "normally" includes. The declarant goes on to state that she "was concerned that her letter . . . was removed from the package." It is purely speculative to even suggest that ADC staff removed anything from the envelope.

6.    Plaintiff Thomas

Paragraphs 51–53 & Exhibit 44:  The declarant avows that she sent Plaintiff Thomas a letter in September/October 2013, Thomas avows that he sent three letters to the declarant around that same time, and both avow that they did not receive each other's letters. It is pure speculation for Plaintiffs to claim that ADC staff confiscated these letters, much less "opened and read" them.

7.    Plaintiffs Licci and Smith

Paragraphs 23–25 & Exhibits 22–24: These exhibits are letters from Plaintiffs' counsel to Defendants counsel. One letter states that Plaintiff Licci "reports her legal mail is opened outside her presence and experiences delays in receiving legal mail from her attorneys." That same letter states that Plaintiff Smith reported that his "incoming mail" was given to another inmate. There was no evidence attached to support either contention. And the letters themselves are not evidence that ADC read these Plaintiffs' mail; they are only counsel's

---

[8] Plaintiffs contend that Swartz addressed Exhibit 39 to the Clerk of this Court but it was returned to him and stamped "NOT CONSIDERED LEGAL MAIL." (Motion at 8:26-28.) First, the envelope was not sent by Swartz; the return address is another inmate. (Doc. 737-6 at 83.) Second, the inmate did not stamp or write "LEGAL MAIL" on the envelope as required under ADC policy. (Id.) Thus, if the allegations are true, it was returned to the inmate for that reason.

1   unsupported assertions. And Plaintiff Smith's allegation did
    not specify that it involved his legal mail.

2

**III.   PLAINTIFFS' REQUEST FOR RELIEF IS NOT AUTHORIZED**

3

4            Under the guise of Rule 23(g)(1)(E), Plaintiffs request sweeping and drastic

5   relief not related to the allegations in their complaint and not related to the claims certified

6   by the Court.  (Doc. 736–1.)  Those allegations and certified claims pertain to allegations

7   of inadequate healthcare and unlawful conditions of confinement; they do not involve any

8   claim or allegation of legal mail interference.  Rule 23(g)(1)(E) does not authorize

9   Plaintiffs' request for injunctive relief.  The Rule states:  "*In appointing class counsel*, the

10  court . . . may make further orders in connection with the appointment."  (Emphasis

11  added.)  Subsection (g) became effective on December 1, 2003, and the comments to that

12  amendment state that it was intended to "guide the court in assessing proposed class

13  counsel as part of the certification decision" and "provides a framework for selection of

14  class counsel."  *See* Comments to Rule 23(g) 2003 Amendment.  Thus, the purpose of the

15  Rule was to allow courts to include orders necessary for the appointment of class counsel

16  *at the time it appoints class counsel*.  The Rule does not contemplate a categorical catch-

17  all for requests of injunctive relief available to certified classes throughout the duration of

    the lawsuit.

18

19           Allowing Plaintiffs to invoke the Rule here would allow not only this class

20  and subclass but all future certified classes to secure system-wide injunctive relief

21  without: (1) complying with the Prison Litigation Reform Act ("PLRA"), *see* 42 U.S.C.

22  § 1997e(a) (inmates are required to exhaust administrative remedies prior to filing a

23  federal lawsuit challenging the conditions of their confinement); (2) filing a lawsuit; and

24  (3) subjecting the lawsuit to the PLRA's mandatory screening requirement, *see* 42 U.S.C.

25  § 1915A(a) (courts must screen inmate complaints and dismiss if it is frivolous or fails to

26  state a claim).  A certified class could circumvent these statutorily required steps, raise an

27  entirely new claim in an existing litigation, and secure injunctive relief without testing the

    evidence through dispositive motion or a trial.  This is not what the drafters intended.

28

16

Plaintiffs cite *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), for the general proposition that a court has the authority to "exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." (Motion at 15.) But *Gulf Oil* was speaking to a different scenario.  The court there was addressing Rule 23*(d)* and "the scope of a district court's authority to limit communications from named plaintiffs and their counsel to prospective class members."  *Id.* at 91.  The court did not address a district court's authority to enter orders for injunctive relief against a defendant in a class action, nor did it address the meaning of Rule 23(g), which had not yet been added.  Other courts have addressed the propriety of imposing injunctive relief against a defendant during the course of litigation, and rejected those attempts when the relief requested is unrelated to the underlying claims in the lawsuit.  "A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit." *Kaimowitz v. Orlando, Fl.*, 122 F.3d 41, 43 (11th Cir. 1997); *see also Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) ("[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action.").  Plaintiffs should be barred from doing this here.[9]

## IV.    ADC'S LEGAL MAIL POLICIES ARE CONSTITUTIONALLY SOUND AND DO NOT RUN AFOUL PLAINTIFFS' ATTORNEY-CLIENT PRIVILEGE

The attorney client privilege and any constitutional right to consult with an attorney is not absolute.  Indeed, "[s]tanding alone, the attorney-client privilege is merely

---

[9] Although "a nexus between the preliminary relief and the ultimate relief sought is not required" if the request for relief concerns "the prisoner's access to the courts," *Parker v. Adu-Tutu*, CV 10-2747-PHXGMSECV, 2012 WL 3150092, at *2 (D. Ariz. Aug. 2, 2012) (quoting *Prince v. Schriro, et al.*, 2009 WL 1456648, at *4 (D. Ariz. May 22, 2009), citing *Diamontiney v. Borg,* 918 F.2d 793, 796 (9th Cir.1990)), Plaintiffs have intentionally stayed away from any claim that the alleged legal mail interference has implicated their right to access the courts. They have done so because such an accusation requires a showing of actual injury, *Lewis v. Casey*, 518 U.S. 343, 349–51 (1996), something they admittedly have not shown. They cannot have it both ways. Either they cannot raise their claim for injunctive relief in this lawsuit or they must show actual injury.

a rule of evidence; it has not yet been held a constitutional right." *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985). Nonetheless, "[a] prison may adopt regulations which infringe on an inmate's constitutional rights if those regulations are 'reasonably related to legitimate penological interests." *O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). "[T]he prevention of criminal activity and the maintenance of prison security are legitimate penological interests which justify the regulation of both incoming and outgoing prisoner mail." *Id*. at 326. Courts across the country, including the Supreme Court and the Ninth Circuit, have upheld legal mail policies identical/similar to ADC's policies.

First, ADC's policy permitting staff to open and inspect legal mail is constitutionally sound. *See*, *e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 575 (1974) (holding that prison staff may open and inspect legal mail because the "freedom from censorship is not equivalent to freedom from inspection or perusal"); *Altizer v. Deeds*, 191 F.3d 540, 548 (4th Cir. 1999) (upholding policy that permitted staff to open and inspect inmates' legal mail for contraband because "[o]therwise, a prison official would never know that a letter contained the very type of material that, according to the Supreme Court, could rightfully be censored, *i.e.,* correspondence sent by an inmate that would be detrimental to the security, good order, or discipline of the institution; necessary for the protection of the public; or used to facilitate criminal activity"); *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995) (upholding policy of conducting cursory visual inspection of legal mail because it "clearly advances the orderly administration of prisons, the rehabilitation of prisoners, and the security of those receiving the materials"); *Royse v. Superior Court of State of Wash., In & For Walla Walla Cnty.*, 779 F.2d 573, 575 (9th Cir. 1986) (upholding prison's policy of inspecting legal mail to the court for contraband because it "serves an important governmental interest in protecting inmates, prison staff, and court personnel").[10]

---

[10] See also cases cited in Plaintiffs' Motion at 10, footnote 9.

Second, ADC's policy that permits staff to read legal mail, including outgoing legal mail, to the extent necessary to determine whether it is contraband or otherwise poses a threat to the safety of the institution, is valid. *See*, *e.g.*, *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010) (inmate "has no First Amendment right that prevents a guard from opening his mail in his presence and reading it with an eye to determining if illegal conduct is afoot"); *Alitzer*, 191 F.3d at 549 (upholding prison's policy of allowing staff to read outgoing legal mail "if there is reasonable belief that the mail is being used in violation of state law or for purposes that threaten the security of the facility, because it furthered legitimate penological interest in maintaining security, good order, and discipline of the institution"); *Nichols v. Boyd Cnty. Ctr.*, 13-CV-16-HRW, 2013 WL 954167, at *3 (E.D. Ky. Mar. 11, 2013) ("Prison officials may open, read, and inspect legal mail for contraband only in the prisoner's presence."); *Vandenburgh v. Stanton*, CIV S-08-1247DOC CMK, 2010 WL 500463, at *4 (E.D. Cal. Feb. 8, 2010) (upholding policy that permits reading of mail if "there is reasonable suspicion that plans are being formulated by the inmate to send or receive contraband, plot an escape, or engage in any other activity that could jeopardize the security of the facility").

And third, and perhaps most relevant to Plaintiffs' allegations, ADC's policy requiring incoming legal mail to indicate a specific, individual attorney on the envelope has been specifically endorsed by the Supreme Court. In *Wolff*, the Supreme Court upheld a policy, like ADC's policy, that required incoming legal mail to include the name of a specific attorney:

> If prison officials had to check in each case whether a communication was from an attorney before opening it for inspection, a near impossible task of administration would be imposed. We think it entirely appropriate that the State require any such communications to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment. . . . As to the ability to open the mail in the presence of inmates, this could in no way constitute censorship, since the mail would not be read. Neither could it chill such communications, since the inmate's presence insures that prison officials will not read the mail. The possibility that contraband will be enclosed in letters, even those from apparent attorneys, surely warrants

1

2

> prison officials' opening the letters. . . . [W]e think that petitioners, by acceding to a rule whereby the inmate is present when mail from attorneys is inspected, have done all, and perhaps even more, than the Constitution requires.

3

4

418 U.S. at 576-77.  Like the policy in *Wolff*, ADC's policy goes beyond constitutional

5

requirements in requiring that legal mail be inspected in the inmate's presence.  *See also*

6

*Mann v. Adams*, 846 F.2d 589, 590 (9th 1988) (no constitutional violation where

7

incoming mail to ADC inmates from public agencies, public officials, and recognized

8

civil rights groups was not opened in inmate's presence).  Many other courts, including

9

the Ninth Circuit, have upheld similar "specific attorney" requirements.  *See, e.g.*, *Grigsby

10

v. Horel*, 341 F. App'x 314 (9th Cir. 2009) (district court properly granted summary

11

judgment on First Amendment claim based on defendants' alleged opening and reading of

12

inmate's mail "because the mailings were not addressed to or from a particular attorney,

13

and many were to or from public agencies."); *Boswell v. Mayer*, 169 F.3d 384, 388–89

14

(6th Cir. 1999) (upholding prison policy that required mail from Attorney General to

15

include the return address of a licensed attorney); *O'Keefe,* 82 F.3d at 325-27 (holding that

16

mailings to state agencies do not qualify as legal mail); *Jensen v. Klecker*, 648 F.2d 1179,

17

1182–83 (8th Cir. 1981) (letter from ACLU was not privileged legal mail because it was

18

not specifically marked as "originating from an attorney, with that attorneys name and

19

address"); *Sing v. Corr. Corp. of Am.*, CV 12-0379-PHX-GMS, 2012 WL 2913277, at *4

20

(D. Ariz. July 16, 2012) (holding that "mail from a public agency, and not from a

21

particular attorney, does not constitute "legal mail" entitled to greater First Amendment

22

protections").

23

> Plaintiffs cannot seriously dispute the constitutionality of ADC's policies,

24

and instead resort to their distortions of those policies in an attempt to show that staff is

25

not following them.  As discussed above, after cutting through pages of their smoke and

26

mirrors, Plaintiffs provide no credible evidence that ADC staff is reading their legal mail

27

or removing documents, nor do Plaintiffs provide any evidence that ADC has issued a

28

"blanket rule" that all correspondence from their counsel is not considered legal mail

"even if attorneys' names are listed on the envelopes." To the contrary, most of their evidence actually confirms that staff is following ADC policy. The remainder is so speculative, unsupported, and/or contradicted that it should be rejected out of hand.[11]

In addition to the validity of ADC's policies and Plaintiffs' complete failure to establish a contrary practice by ADC staff, Plaintiffs fail to show that they have suffered an injury in fact as a result of the alleged legal mail interference. They contend that they do not need to establish actual harm, but the Supreme Court has rejected this notion. *See Lewis*, 518 U.S. at 349–51 (1996) (imposing actual-injury requirement); *Stanley*, 602 F.3d at 770 ("As to the possibility of a cognizable substantive due process claim under the First Amendment for denial of access to the courts by interfering with his 'legal mail,' the prisoner here does not allege that the guard's conduct in any way affected his access to the courts."); *Meador v. Pleasant Valley State Prison*, 312 F. App'x 954, 955–56 (9th Cir. 2009) (holding that "isolated instance of prison mail room staff inadvertently violating this policy cannot establish an actionable chilling effect"); *Samonte v. Maglinti*, CIV 05-00598 SOM-BMK, 2007 WL 1963697, at *5 (D. Haw. July 3, 2007) (no claim where plaintiff "alleged no actual injury to any real or contemplated action"); *Kelley v. Hinsa*, 2:06-CV-211, 2007 WL 2814949, at *6 (W.D. Mich. Sept. 25, 2007) ("To state a claim for unconstitutional interference with the right of access to the courts, a plaintiff must show that they suffered "actual injury" in a specific case."). Plaintiffs have not explained how exactly ADC's alleged conduct has interfered with their prosecution of this case. Nor have they alleged that it has. Their Motion is perfect proof that it has not, as they coordinated and attached declarations from ten inmates to support their allegations, allegations that are totally unrelated to the underlying claims. There has been no chilling effect.

---

[11] The cases on pages 12-13 of Plaintiffs' Motion, cited for the proposition that "[c]ourts have struck down such ad-hoc requirements that are applicable only to particular attorneys," are inapposite because unlike the facts in those cases, ADC has not imposed a bar to all correspondence to/from Plaintiffs' counsel. Plaintiffs' counsel need only identify themselves on the envelope. This will facilitate the delivery of legal mail and ensure the confidentiality of attorney-client correspondence.

Finally, even if we were to assume that a handful of Plaintiffs' legal correspondence was inadvertently or mistakenly processed as non-legal mail (and even read), these isolated incidents are not sufficient to allege a constitutional violation. *See Nixon v. Sec'y Pennsylvania Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) ("Here, the District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a First Amendment violation."); *Meador v. Pleasant Valley State Prison*, 312 F. App'x 954, 955–56 (9th Cir. 2009) (isolated incident of erroneously opening one piece of mail outside inmate's presence "without a showing of actual injury or improper motive, cannot by itself establish a violation of his right of access to the courts," particularly where nothing in record indicated what letter actually contained and inmate did not contend that he suffered any direct injury, for example retribution, resulting from prison officials reading the letter of learning of its contents); *Guajardo-Palma v. Martinson*, 622 F.3d 801, 805 (7th Cir. 2010) ("An isolated interference with the confidentiality of such communications is different; its effect on prisoners' access to justice is likely to be nil."); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation. Rather, the inmate must show that prison officials "regularly and unjustifiably interfered with the incoming legal mail."); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) ("Defendants admitted to opening one piece of Smith's constitutionally protected legal mail by accident. Such an isolated incident, without any evidence of improper motive or resulting interference with Smith's right to counsel or to access to the courts, does not give rise to a constitutional violation."); *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989) (inadvertent opening of legal mail outside inmate's presence was not actionable constitutional violation); *Medley v. Overton*, CV08-590-PHX-MHMDKD, 2008 WL 2003793, at *2 (D. Ariz. May 8, 2008) ("[A] single instance of inadvertent opening of legal mail outside an inmate's presence, while not to be condoned, is not actionable as a constitutional violation."); *Kalka v. Megathlin*, 10 F.Supp.2d 1117, 1123 (D. Ariz. 1998), *aff'd*, 188 F.3d

22

513 (9th Cir. 1999) ("[S]everal circuits including the Ninth have held that an isolated or occasional opening of legal mail outside the presence of the inmate is not necessarily a constitutional violation.").

## V.   THE   COURT   SHOULD   DENY   PLAINTIFFS'   REQUEST   FOR INJUNCTIVE RELIEF

Plaintiffs' request for injunctive relief should be denied for all of the above reasons and more.  Plaintiffs first request the Court to order Defendants to "immediately process and treat all correspondence between class counsel and class members as confidential legal mail, and not open, read, or otherwise inspect the incoming or outgoing legal mail of class counsel."  (Doc. 736–1 at 1.)  Such an order would repeal what the Supreme Court and Ninth Circuit have held are permissible (opening and inspecting of legal mail, and reading legal mail under narrow circumstances).

Such an order is also inconsistent with the Supreme Court's repeated admonition that courts should defer to the informed discretion of prison administrators when it comes to safety and security issues "because the realities of running a corrections institution are complex and difficult, courts are ill equipped to deal with these problems, and the management of these facilities is confided to the Executive and Legislative Branches, not to the Judicial Branch." *Bell v. Wolfish*, 441 U.S. 520, 548 n.29 (1979); *Norwood v. Vance*, 591 F.3d 1062, 1066 (9th Cir. 2010).

Plaintiffs also ask the Court to "rescind" the September 2013 Memo. Initially, Plaintiffs do not have standing to request such relief on behalf of the NAACP or the Arizona Justice Project, as they are not counsel in this matter.  But more importantly, rescinding the Memo would effectively rescind ADC's definition of "legal mail" and re-write it to include correspondence from any organization or entity.  As discussed above, the Memo simply clarifies and reinforces ADC policy: legal mail includes only correspondence from an "attorney." ██████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████  The Court should again defer to ADC's expertise.

The relief Plaintiffs request is particularly unnecessary because they have been told repeatedly what they and their clients need to do so that their correspondence is treated as legal mail:  simply list a specific, individual attorney on the envelope.  That is it.  This is hardly intrusive and can be easily done.

## VI.   PLAINTIFFS SHOULD BE ORDERED TO PAY DEFENDANTS' ATTORNEYS' FEES AND COSTS

A federal district court has the inherent authority to sanction a party in response to "abusive litigation practices." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  This includes fees against a party or counsel for acting in bad faith, vexatiously, wantonly, or for oppressive reasons.  *Id.* at 961.  A party acts in bad faith by "delaying or disrupting the litigation." *Id.* (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997)).  Similarly, 28 U.S.C. § 1927 permits the imposition of attorneys' fees and costs against counsel for "unreasonably and vexatiously" multiplying the proceedings.

Plaintiffs' Motion was filed in bad faith, and its sole purpose was to distract Defendants from defending the real issues in this case by presenting unfounded

allegations and sending Defendants' counsel on a goose chase.  The Motion is filled with conclusory allegations, allegations that are demonstrably false and not supported by the record.  But they are so serious that Defendants had no choice but to carefully respond to each one of them.  This resulted in significant resources, including attorneys' fees, and pulled ADC staff away from their normal responsibilities to review meaningless photographs of envelopes and to prepare controverting declarations.  One staff member was forced to refute a forgery committed against her. (Ex. 5, ¶¶ 9-11.)  Again, ADC's policies are constitutionally sound and there is no evidence that ADC has read Plaintiffs' legal mail or that ADC targeted their counsel.  These accusations are inflammatory, and it is clear that the intent was to further some other agenda, whether it be defiling ADC's reputation, racking up attorneys' fees, distracting from the issues, or providing fodder for the media or for other future or pending cases.

Plaintiffs' bad faith is further illustrated by the fact that Defendants informed Plaintiffs' counsel many times throughout 2013, even before the September 2013 Memo, about the need to include a specific attorneys' name in their correspondence. (Doc. 737–6 at 5, 16, 31, 33-34, 36, 55-56, 99, 101-102.) This included specifically informing them (as early as February 2013) that they needed to identify Donald Specter as an attorney, not just a director. (Id.) But even after they were informed of this, they continued sending correspondence listing him only as a director, as if to continue creating a record for this Motion.   The Court needs to make clear that such tactics are reprehensible and will not be tolerated.  Plaintiffs should be ordered to pay Defendants' attorneys' fees and costs associated with their Response.

## CONCLUSION

For these reasons, Plaintiffs' Motion should be denied and Defendants awarded their reasonable attorneys' fees and costs.

1       DATED this  27th  day of January 2014.

2                                      STRUCK WIENEKE & LOVE, P.L.C.

3

4                              By /s/ Nicholas D. Acedo
                                   Daniel P. Struck
5                                  Kathleen L. Wieneke
                                   Rachel Love
6                                  Timothy J. Bojanowski
                                   Nicholas D. Acedo
7                                  Courtney R. Cloman
                                   Ashlee B. Fletcher
8                                  Anne M. Orcutt
                                   STRUCK WIENEKE & LOVE, P.L.C.
9                                  3100 West Ray Road, Suite 300
                                   Chandler, Arizona  85226
10
                                   Arizona Attorney General Thomas C. Horne
11                                 Office of the Attorney General
                                   Michael E. Gottfried
12                                 Lucy M. Rand
                                   Assistant Attorneys General
13                                 1275 W. Washington Street
                                   Phoenix, Arizona 85007-2926
14
                                   *Attorneys for Defendants*
15
        2859456.1
16

17

18

19

20

21

22

23

24

25

26

27

28

                                   26

**CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alison Hardy:                  ahardy@prisonlaw.com

Amy Fettig:                    afettig@npp-aclu.org

Caroline N. Mitchell:          cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

Corene T. Kendrick:            ckendrick@prisonlaw.com; edegraff@prisonlaw.com

Daniel Clayton Barr:           DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

Daniel Joseph Pochoda:         dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org

David Cyrus Fathi:             dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

Donald Specter:                dspecter@prisonlaw.com

James Duff Lyall:              jlyall@acluaz.org; gtorres@acluaz.org

Jennifer Ann Alewelt:          jalewelt@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

Cathleen M. Dooley:            cdooley@azdisabilitylaw.org

J.J. Rico:                     jrico@azdisabilitylaw.org

John Howard Gray:              jhgray@perkinscoie.com; slawson@perkinscoie.com

Kelly Joyce Flood:             kflood@acluaz.org; gtorres@acluaz.org

Kirstin T. Eidenbach:          keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; docketphx@perkinscoie.com

Matthew Benjamin de Mee:       mdumee@perkinscoie.com; cwendt@perkinscoie.com

Michael Evan Gottfried:        Michael.gottfried@azag.gov; colleen.jordan@azag.gov; lucy.rand@azag.gov

Sara Norman:                   snorman@prisonlaw.com

Sophia Calderon:               scalderon@jonesday.com; lwong@jonesday.com

Asim Varma:                    avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

27

| | |
|---|---|
| David C. Kiernan: | dkiernan@jonesday.com; lwong@jonesday.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Kamilla Mamedova: | kmamedova@jonesday.com |
| Jennifer K. Messina: | jkmessina@jonesday.com |
| Taylor Freeman: | tfreeman@jonesday.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org, mlauritzen@azdisabilitylaw.org |
| Katherine E. Watanabe: | Katherine.Watanabe@azag.gov, susan.oquinn@azag.gov |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, pdrew@perkinscoie.com |
| Lucy Marie Rand: | Lucy.Rand@azag.gov, Geneva.Johnson-Joksch@azag.gov |
| Ajmel Quereshi: | aquereshi@npp-aclu.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ Nicholas D. Acedo

28