# EXHIBIT 1

# EXHIBIT 1

Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Courtney R. Cloman, Bar No. 023155
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-NVW<br><br>**DECLARATION OF J. ERWIN** |

I, **J. ERWIN**, make the following Declaration:

1.     I am over the age of 18 years and have personal knowledge of and am competent to testify to the matters set forth in this Declaration.

2.     I am employed by the Arizona Department of Corrections ("ADC").   I currently hold the position of Legal Access Monitor.  I have held this position since November 2011.  As ADC's legal access monitor, I am responsible for providing system-wide monitoring and operational oversight of inmates' legal access to courts in furtherance of Department Order ("DO") 902 – Inmate Legal Access to the Courts.  My job duties include, but are not limited to, overseeing the operations of inmate legal access to the courts and supervising contract paralegal activities, meeting and conferring with contract paralegals to ensure they adhere to ADC policy, responding to inmate letters and staff concerning inmate legal access to the courts and ensuring that legal accommodations and arrangements are made for special needs inmates.  I also research, gather, and compile information for the Director and management regarding inmate's legal access to the courts.  Execution of my duties frequently requires me to visit select prison facilities to monitor the activities of the paralegals and oversee the operations of the inmate access to the court system.

3.     I am intimately familiar with ADC's policies and practices pertaining to legal mail and non-legal mail.

**ADC's Non-Legal Mail Policy**

4.     The procedure for processing non-legal mail at ADC is memorialized in DO 914.

5.     DO 914.02.1.5 authorizes designated staff at each unit/complex to open, inspect and read incoming non-legal mail to prevent criminal activity and prevent inmates from receiving contraband or any material that may be detrimental to the safe and orderly operation of the institution.  *See* Ex. 1 (DO 914.02).  Incoming non-legal mail is withheld from an inmate if it poses a direct and immediate threat to the security, safety, or order of the institution, substantially hinders efforts to treat or rehabilitate the inmate, threatens the

intended recipient, promotes, aids or abets criminal activity or violates ADC rules, or has content written in code or that contains hidden messages.  *Id.*

6.     DO 914.05 authorizes designated staff to inspect outgoing non-legal mail for contraband.  *Id*. at 914.05.1.2.  Staff shall read up to 10% of outgoing non-legal mail, and may withhold outgoing non-legal mail that poses a direct and immediate threat to the security, safety or order of the institution, or that substantially hinders efforts to treat or rehabilitate the inmate.  *Id*. at 1.3.  Outgoing non-legal mail is subject to being opened and read by staff when there is a reasonable belief that the inmate is using the mail to further a crime or circumvent ADC regulations or instructions.  *Id*. at 1.5.

█ ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████

### ADC's Legal Mail Policy

8.     The procedure for processing legal mail at ADC is memorialized in DO 902.11.  *See* Ex. 2 (Department Order 902.11).

9.      DO 902.11 defines "legal mail" as, "Any letters to or from an inmate's attorney as defined above, or to or from a judge or to or from a court of law."  *Id*. at pg. 19, Definitions.

10.     DO 902.11 defines "attorney" as, "An attorney-at-law licensed to practice in any state or federal jurisdiction."  *Id*.  This includes both Arizona and non-Arizona attorneys.  *Id*.

11.     Correspondence from or to a law firm, organization, or other entity is not considered legal mail simply because it includes the word "law" or "legal" in its title.  ADC's definition of legal mail does not include "law firms" or "legal organizations."  It includes only attorneys, a judge, or a court of law. Correspondence from the American

3

Civil Liberties Union ("ACLU"), the Prison Law Office ("PLO"), and the Arizona Center for Disability Law ("ACDL") does not automatically qualify as legal mail.

12.    Under DO 902.11, inmates must identify outgoing legal mail by writing "Legal Mail" on the lower left-hand corner of the envelope. Ex. 2 at 1.1.

13.    Outgoing mail not labeled as legal mail is processed as regular, non-legal mail.  *Id.* at 1.2.

14.    All legal mail, outgoing or incoming, is logged. *Id.* at 1.3.

15.    Staff who process incoming or outgoing inmate mail shall:

[G]enerally identify all legal mail and record it on a log by indicating the inmate's name and the sender's name.  [*Id.* at 1.4.1.]

[I]nspect such mail for contraband, stamp the envelope "LEGAL    MAIL,    ARIZONA    DEPARTMENT    OF CORRECTIONS" using a commercial stamp, and log it before it is placed in the envelope and sealed by the inmate.  [*Id.* at 1.4.2.]

[A]ll incoming mail, letters, memoranda, and documents, from an inmate's attorney or from a judge or court, shall be opened for inspection purposes in the presence of the inmate. Such incoming mail may be scanned in the conducting of an inspection for contraband, but shall not be read or censored by staff.  [*Id.* at 1.4.2.1.]

[A]ll outgoing letters to an inmate's attorney or to a judge or court shall be brought to the mail room by the inmate, where the letter shall not be read or censored but shall be inspected for contraband and sealed in the presence of the inmate.  All outgoing legal documents to an inmate's attorney or to a judge or court (other than letters to an inmate's attorney or to a judge or court, such as pleadings, briefs and motions) shall not be censored, but staff are not prohibited from reading such documents to the extent necessary to establish the absence of contraband.  [*Id.* at 1.4.2.2.]

[S]end legal mail as first class mail regardless of the inmate's ability to pay the required postage.  [*Id.* at 1.4.3.]

[S]ubmit names of inmates claiming to have inadequate funds for postage to the Business Office, indicating postage due from the inmate.  The Business Office shall either debit the inmate account or, if there are insufficient funds to pay the postage, place a hold on the inmate account.  [*Id.* at 1.4.4.]

[R]eturn the mail to the inmate if he/she requests mail to be sent as legal mail and it is not to an attorney, judge or court.

4

The inmate may request to have the Paralegal review the mail to determine whether it may be approved as legal mail.  The Paralegal may contact the Legal Access Monitor for direction. [*Id.* at 1.4.5.]

17.     Designated staff who process incoming mail must attempt to make a determination, based on an inspection of the envelope, whether the contents constitute legal mail.  The return address may be indicative of whether the contents of the envelope constitute legal mail.  Designated staff do not rely solely on the words "legal mail" having been stamped on the envelope by the sender – simply affixing a "legal mail" stamp to an envelope does not automatically qualify it as legal mail.  If there is any serious doubt as to whether the contents of the envelope contain legal mail, designated staff must contact the Legal Access Monitor for direction.  *Id.* at 1.5.  If it is determined to be legal mail, it is taken to the inmate's unit and opened for inspection in the inmate's presence.

18.     Staff suspecting abuse of the legal mail designation must advise the Warden or Deputy Warden, who will then take appropriate action following consultation with ADC's General Counsel.  An inmate who intentionally sends personal mail to a private address and falsely claims it is legal mail is subject to disciplinary action.  *Id.* at 1.6.

19.     The inspection/scanning that is done while processing incoming and outgoing legal mail is accomplished without actually reading the document.  The purpose of the inspection/scan is to check for contraband and confirm the mail is of a legal nature. Incoming and outgoing legal mail will only be read if they have a reasonable suspicion that its contents are contraband or otherwise violate ADC regulations.

20.     Unit officers make daily rounds in the unit to collect outgoing legal mail from inmates.  If an inmate wishes to send legal mail, he/she must hand the envelope to the unit officer during the legal mail rounds.  The envelope must be unsealed so that the officer is able to inspect its contents in the inmate's presence.  The officer then seals the

envelope, affixes a stamp indicating it is legal mail and that the contents have been inspected, and then delivers it to the mail room for mailing.

21.     If an inmate wishes to send non-legal mail, there are designated mail boxes in each unit.  In maximum custody units, unit officers conduct rounds similar to the legal mail round to collect non-legal mail.

22.     Often times, inmates will seal legal mail before handing it to a unit officer for inspection, or they will place their legal mail in the non-legal mail box.  This is improper and creates extra work and delay.  If a unit officer is handed legal mail that is sealed, he or she must unseal it in order to conduct a proper inspection.  After conducting the inspection in the inmate's presence, the unit officer will then reseal the envelope.  If a unit officer finds a piece of mail marked as "legal mail" in the non-legal mail box, it has to be removed, taken back to the inmate's particular housing unit, re-opened in his or her presence to inspect its contents, and then sent through the appropriate legal mail channels. This causes additional delay.

**September 2013 Memorandum**

30.     Moreover, it was brought to my attention by ADC Central Office that Plaintiffs' counsel in the Parsons litigation were complaining that certain types of mail sent by them was not being processed as legal mail.

31.     In response to Plaintiffs' counsel's complaints regarding legal mail, I personally drove to the five facilities where the named Plaintiffs were housed, and Yuma, to clarify and further explain the legal mail policy to mail room officers: correspondence from these organizations must identify a specific, individual attorney.  I visited Tucson on September 10, 2013, Eyman on September 12, 2013, Perryville on September 27, 2013, Lewis on October 3, 2013, Yuma on October 7, 2013, and Florence on October 8, 2013.

33.     The Memo did not change or alter the current policy; rather it clarified the existing definition of legal mail so that staff and inmates had clear direction.

1 ████████████████████████████████████████████

2 ████████████████████████

3    35.    The official memo was either posted or available for inmate review at each

4 facility.  Moreover, staff were available to explain the memo/policy if any inmate had

5 questions. 

6 ██ ████████████████████████████████████

7 ████████████████████████████████████████████

8 ████████████████████████████████████████████

9 ██████

10    37.    The Memo reiterated the definition of legal mail and explained that because

11 legal mail is defined as "all letters to/from an inmate's attorney . . .", that a specific

12 attorney needed to be listed/identified on the correspondence for it to be treated as legal

13 mail. *See* Ex. 3.

14    38.    The Memo listed several examples of organizations that frequently send

15 legal mail without identifying an individual as an attorney.  Simply because the

16 organization has been known to assist an inmate with their legal work in the past does not

17 mean all correspondence from that organization is legal mail. Each piece of

18 correspondence must identify a specific attorney in order for the correspondence to be

19 treated as legal mail.

20    39.    The five entities listed in the Memo were organizations that routinely failed

21 to identify a specific attorney, or failed to identify an individual as being an attorney.

22 They were not "targeted" because of any pending or future litigation, as Plaintiffs in this

23 matter contend.  Identifying a specific attorney on legal correspondence – as required

24 under DO 902.11 and clarified in the Memo – applies to all organizations and all legal

25 mail, not just those listed in the Memo.

26    40.    ADC has never directed staff that correspondence from the organizations

27 listed in the Memo is not legal mail, nor has it directed that correspondence to or from

28 attorneys not licensed in Arizona is not legal mail.  Under ADC policy, both DO 902.11

1   and the September 2013 Memo, correspondence from the five listed organizations that

2   identifies a specific attorney – licensed in any state or federal jurisdiction – is considered

3   legal mail.

4   **Purpose of the Legal Mail Policy**

27   45.   As stated in DO 902.09, ADC provides legal mail supplies to indigent

28   inmates regardless of their ability to pay.  If the inmate does not have funds available, a

9

hold shall be placed on the inmate's account. The ADC provided legal supplies include: paper, writing utensils, and pre-stamped envelopes.  The envelopes are pre-marked "Legal Mail" and are provided to indigent inmates to correspond with courts, attorneys, and judges in their qualified/non-qualified legal claims.



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Envelopes Attached to Plaintiffs' Motion**

64.    I have reviewed each envelope attached to Plaintiffs' Motion.

65.    The majority of the envelopes were sent from "Don Specter, Director" and include no indication that Mr. Specter is an attorney.  *See* Doc. 737-2 at 11, 13, 16; 737-6 at 26, 28,76,84.  These envelopes are not legal mail under DO 902.11 because they do not identify Mr. Specter as an attorney.

66.    The envelope contained at Doc. 737-6 at 83 is not legal mail because the inmate failed to write "legal mail" on the envelope as required by DO 902.11.

67.    The various "inspection" and "legal mail" stamps placed on the envelopes by ADC staff, indicate the envelope was inspected/scanned in the inmate's presence – as described above and pursuant to DO 902.11.  *See* Docs. 737-2 at 7, 9, 14, 17.  These stamps do not indicate or suggest that correspondence was opened and inspected outside the inmate's presence, or that the mail was read by staff.

68.    Additionally, I do not believe that ADC staff opened the envelopes in the photographs attached as Exhibit 11 to Plaintiffs' Motion. *See* Doc. 737-2 at 1-3.

13

1

2

3    I declare under penalty of perjury that the foregoing is true and correct.

4    Executed on _____ January 27 ___, 2014.

5

6

7                              J. Erwin

8

9    2858654.1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

# EXHIBIT 1

# EXHIBIT 1

| CORRECTIONS ADC  ARIZONA DEPARTMENT OF CORRECTIONS | CHAPTER:  900  INMATE PROGRAMS AND SERVICES | OPR:  OPS |
|---|---|---|
| DEPARTMENT ORDER MANUAL | DEPARTMENT ORDER:  914  *INMATE MAIL* | SUPERSEDES:  DO 914 (5/1/08) |
| | | EFFECTIVE DATE:  FEBRUARY 26, 2010 |
| | | REPLACEMENT PAGE REVISION DATE:  JUNE 8, 2012 |

# TABLE OF CONTENTS

PROCEDURES

914.01     MAIL GENERAL .................................................................................... 1

914.02     INCOMING MAIL .................................................................................. 2

914.03     AUTHORIZATION OF COMPACT DISCS AND/OR CASSETTE TAPES .................... 7

914.04     INTER-RELATIONAL MAIL ....................................................................... 8

914.05     OUTGOING MAIL ................................................................................. 9

914.06     PUBLICATIONS .................................................................................. 10

914.07     SEXUALLY EXPLICIT MATERIAL ............................................................. 12

914.08     UNAUTHORIZED PUBLICATIONS AND MATERIAL ......................................... 13

914.09     PUBLICATION REVIEW PROCESS ............................................................ 16

914.10     THE OFFICE OF PUBLICATION REVIEW ..................................................... 16

           IMPLEMENTATION .............................................................................. 17

           DEFINITIONS ................................................................................... 18

           AUTHORITY ..................................................................................... 20

           ATTACHMENT

CHAPTER:  900 - INMATE PROGRAMS AND SERVICES
DEPARTMENT ORDER:  914 - INMATE MAIL

1.2.1    Indigent inmates shall be provided with pre-stamped envelopes, or applicable postage for Mexico or Canada, for five one-ounce pieces of first class mail per month. Inmates may receive additional credit for postage for Legal Mail as outlined Department Order #902, Inmate Legal Access to Courts.

1.2.2    All postage required beyond the limits cited in this Department Order and all postage for inmate groups and organizations shall be at the expense of the inmate, group or organization.

1.2.3    Postage stamps shall not be used as negotiable instruments or legal tender as payment for materials ordered from private vendors.

1.2.4    Inmates shall not barter, trade, sell, or exchange postage stamps for any goods or services.

1.2.5    Inmates are subject to the limits for possession of postage stamps as outlined in Attachment A of Department Order #909, Inmate Property.

1.3    Mail room staff shall maintain:

1.3.1    An itemized list of all incoming and outgoing registered, insured and certified mail.

1.3.2    Permanent logs that will be subject to periodic inspections shall consist of:

1.3.2.1    An itemized list of all incoming and outgoing packages, including the name and ADC number of each inmate who sends or receives a package.

1.3.2.2    The name and address of each sender and addressee for each package.

1.3.2.3    A detailed description of the contents of each. For incoming publications, this includes the name and dated information for each publication.

1.3.2.4    The amount of postage or the amount paid to the contract carrier for each outgoing package.

1.3.2.5    The date of the mailing or receipt of each package, expenses incurred in processing the mail, and the name of the staff member who recorded the information.

1.3.3    An electronic log of all incoming and outgoing legal mail to include the date received, inmate name and number, sender, and the date received by the inmate. All Incoming and Outgoing Legal Mail shall be processed as outlined in Department Order #902, Inmate Legal Access to Courts.

**914.02    INCOMING MAIL**

1.1    Upon arrival at a new Department/Contract Bed facility, staff shall provide each inmate with the correct mailing address. It shall be the responsibility of the inmate to notify correspondents of the correct mailing address.

1.2    Incoming Mail addressed to inmates shall have the inmate's complete first and last name, the inmate's name under which he/she is incarcerated (unless legally changed), the inmate's correct ADC number, as well as the inmate's unit name and the appropriate Post Office (PO) Box.

1.3    Incoming Mail shall have a complete return address including the sender's name and the complete street address or PO Box. Mail without a complete return address shall be opened and read to inspect the contents to make a reasonable attempt to ascertain the identity of the sender. If the sender can be identified and the mail does not present any security concerns the mail may be delivered to the inmate. If the sender cannot be verified, the inmate shall receive a notice and the mail held for 90 days before it is destroyed.

1.4    It is the inmate's responsibility to notify correspondents of his/her mailing address, where local U.S. Postmaster practice permits, a U.S. Postal Service (USPS) change of address form shall be completed by the inmate and sent to the USPS. All Department/Contract Bed facilities shall make these forms available. Incoming mail shall be forwarded as follows:

    1.4.1    Mail that arrives without an inmate ADC number shall be stamped "Return to Sender," and returned.

    1.4.2    Mail that arrives for an inmate at an institution where the inmate is no longer housed shall be forwarded to the inmate's current institution.

    1.4.3    When possible, First Class mail belonging to an inmate who is temporarily confined at a hospital or local county jail shall be forwarded.

    1.4.4    Mail belonging to an inmate who is no longer in physical custody of the Department shall be forwarded up to 30 days after his/her release; provided a forwarding address is available. When no forwarding address is available, the mail shall be stamped "inmate is no longer in custody" and returned to the sender.

    1.4.5    All mail received for inmates on escape status shall be forwarded to the Criminal Investigation Unit (CIU) for evaluation and processing.

1.5    Designated staff at each unit/complex is authorized to open, inspect and read incoming mail to prevent criminal activity and prevent inmates from receiving contraband or any other material that may be detrimental to the safe and orderly operation of the institution.

    1.5.1    Upon inspection, incoming mail shall be withheld from an inmate if it meets one or more of the following criteria:

        1.5.1.1    Poses a direct and immediate threat to the security, safety or order of the institution.

        1.5.1.2    Substantially hinders efforts to treat or rehabilitate the inmate; however, legal mail will not be withheld for this purpose.

        1.5.1.3    Threatens the intended recipient.

1.5.1.4    Promotes, aids or abets criminal activity or violation of Department rules, including but not limited to rioting, extortion, escape, illegal drug use, conveyance of contraband, solicitation of funds, violence towards others, and promotes or encourages security threat groups.

1.5.1.5    Has content written in code or that contains hidden messages.

1.5.2    Mail meeting one or more of the criteria in 1.5.1 through 1.5.1.5 of this section shall be forwarded to CIU for review. CIU shall return the mail for delivery within 72 hours unless it is determined that an investigation is required, in which case the mail shall be held. If it is determined that the mail is not to be delivered, the inmate shall be notified unless notification would interfere with the investigation.

1.5.3    When an incoming envelope is stamped "Return to Sender" staff shall open and inspect it for contraband before returning it to the inmate.

1.5.4    Incoming legislative correspondence shall be opened in the presence of the inmate to whom it is addressed and may only be inspected to the extent necessary to establish the presence of contraband.

1.6    Inmates may only receive money orders, cashier's checks or certified checks for deposit into inmates' accounts, in accordance with Department Order #905, Inmate Banking/Money System. No other monetary instrument, including cash, coins or personal checks, shall be deposited into an inmate's account.

1.6.1    Money orders, cashier's checks or certified checks shall be made payable to "The Arizona Department of Corrections for the account of (Inmate's Name and ADC Number)."

1.6.2    Mail Room staff shall deliver a receipt to the inmate and forward all money orders, cashiers checks, cash and personal checks received to the Business Office for processing.

1.6.3    The Business Office/designated staff shall process the monetary instruments that meet the Department requirements and return those that do not meet Department requirements at the inmate recipient's expense.

1.6.4    The Business Office shall notify CIU of any received Internal Revenue Service (IRS) checks. CIU may notify the IRS if deemed appropriate.

1.6.5    Outgoing inmate/IRS correspondence shall contain a notation by staff on the envelope directing the correspondence to the Criminal Investigations Branch at the Service Center to which the correspondence is addressed.

1.7    Unauthorized property or material discovered in incoming mail shall be removed from incoming letters and held as contraband. An inmate Property/Contraband/Disposition, Form 909-6, and Notice to Sender of Rejection of Incoming Mail, Form 909-3, shall be completed and sent to the inmate. Inmates have 90 days to either have item(s) destroyed or returned to the sender. The Department shall not pay for the cost of notifying the sender of the inmate's contraband arrangements or its mailing cost.

1.7.1     The Department shall not pay for the cost of returning unauthorized property or material that includes, but is not limited to:

     1.7.1.1     Used or unused postage stamps.

     1.7.1.2     Stickers, labels, address labels or decorative stamps.

     1.7.1.3     Photos where the non-photo side can be separated (Polaroid's).

     1.7.1.4     Photos of other inmates.

     1.7.1.5     Unknown foreign substances and/or powders.

     1.7.1.6     Oils, perfumes, incense or personal property items.

     1.7.1.7     Lottery tickets or games of chance.

     1.7.1.8     Tax forms.

     1.7.1.9     Battery operated greeting cards, or greeting cards larger than 8 ½" by 11."

     1.7.1.10     Unused Greeting cards, stationary, pens/pencils and/or envelopes.

     1.7.1.11     Unused postcards.

     1.7.1.12     Bookmarks.

     1.7.1.13     Inspirational cards or medals.

     1.7.1.14     Candy, gum, or any food items.

     1.7.1.15     Art, crafts and hobby supplies.

     1.7.1.16     Road maps of Arizona, areas contiguous to Arizona, states that contain the contract prison facilities, and states contiguous to those states where contract prison facilities are located; Public Transportation maps of Arizona and states with contract prison facilities and/or descriptions or photos of Department or contract prison facilities. ("Contiguous", as used in this section, means states surrounding and bordering the subject state. In the example of Arizona, this would mean California, Nevada, Utah, New Mexico, Colorado, and Mexico, or any portion thereof). Any publication containing maps as part of the material will be subject to all publication review requirements.

     1.7.1.17     Calendars.

     1.7.1.18     A printed individual item (not a supplement of an item such as a newspaper), specifically intended for the purpose of advertising or selling merchandise (catalog, circular) for any items that an inmate would not be permitted to receive.

         1.7.1.18.1     Catalogs for publications, compact discs, cassettes and other items inmates would be able to receive shall be processed according to the publication review requirements.

        1.7.1.19    Personal or professional/commercial photographs that feature nudity or sexually explicit acts, as detailed in the DEFINITION section. Photos of current or former Department/Contract Bed employees and/or Department volunteers.

1.8      Newspaper clippings, magazine articles, cartoons or copies of material from the internet may be enclosed within personal mail; however, the content is subject to the publication review process. Internet material containing information about staff or other inmates is unauthorized if it is determined to be a threat to the safe and orderly operation of an institution and/or a threat to the safety of any other person. Inmates are not authorized to receive items from the ADC Net website.

1.9      Inmates may be permitted to view crime scene and/or autopsy photographs in accordance with Department Order #909 Inmate Property.

1.10    Incoming third class/bulk mail and publications will be delivered provided the mail/publication content meets policy guidelines and:

        1.10.1    Is prepaid, as defined by this Department Order;

        1.10.2    Is addressed to a specific inmate or inmates with the correct name, ADC number and housing location.

1.11    Undeliverable Standard Mail shall be returned to the Post Office, if the Post Office will accept it. If the Post Office does not accept the undeliverable mail, it shall be documented in the appropriate log and destroyed/shredded and bagged by staff and placed in a dumpster or other trash container.

1.12    Incoming telegrams or similar urgent mail, including but not limited to, overnight mail shall be delivered within 12 hours unless circumstances make delivery impractical.

1.13    Excluding holidays and weekends, incoming mail shall not be held and shall be delivered within 24 hours unless circumstances make delivery impractical.

1.14    All mail and publications with metal bindings other than staples, including paper clips, binder clips, and other metal fasteners are prohibited. An inmate that receives a metal binding piece of mail and/or publication shall be informed of its arrival and will either decide to have the publication processed as contraband or give his/her written permission to have the binding removed prior to its release to the inmate. Staff shall make note of the removal in the inmate's property file.

        1.14.1    Staples in all mail and publications are prohibited in the following types of housing units:

                1.14.1.1    Death Row.

                1.14.1.2    Administrative or Disciplinary Confinement.

                1.14.1.3    Close Management.

                1.14.1.4    Maximum Management.

                1.14.1.5    Mental Health Treatment Units (Baker and Flamenco)

- Wardens and Deputy Wardens shall update and issue the appropriate direction and Post Orders for mail procedures and processing all types and rates of mail consistent with current USPS requirements mail operations.

Section 914.07, Sexually Explicit Material is not effective until August 26, 2010:

- Until August 26, 2010 the previous Department Order 914, Inmate Mail, Section 914.07, Obscene Material dated May 1, 2008 remains in effect. (See Attachment A)

- Prior to this date inmates:

  - Shall cancel or allow to expire any current subscriptions to commercially published magazines or publications that feature nudity.

  - Shall mail out, destroy or request long-term storage for these publications or any other material that is in violation of this Department Order.

- Inmates may receive disciplinary action if found in the possession of unauthorized commercially published magazines or publications after August 26, 2010. All such items shall be considered contraband and will be subject to seizure.

# DEFINITIONS

**ALTERING** - To change or make different; modify.

**AUDIO BOOK -** A taped reading of a book or book condensation reproduced in audiocassette form.

**CENSOR** - To delete, ban, suppress or withhold portions of mail.

**CONTRABAND –** For the purpose of this Department Order, contraband is defined as any item considered to be a detriment to the safe and orderly operation of an institution or parole office. Contraband includes, but is not limited to:

- Any item that could be used as an aid to escape.

- Any item that could be used to disguise or alter an inmate's appearance.

- Any item of clothing or items for personal use or consumption that are not cleared first through security or the property room of the institution.

- Cameras, video, audio or related equipment, unless authorized by order of written instructions.

- The introduction and/or possession of any separate components that may aid in the use of wireless devices and/or multimedia storage devices. This includes, but may not be limited to:

  - Cell phone chargers.

  - Mobile chargers.

  - Cell phone batteries.

  - Any other item that staff reasonably determines may aid in the use of wireless devices and/or multimedia storage devices.

- Allowable items which are:

- Possessed without permission.

- Discovered in improper locations.

- Over set allowable amounts.

- Obtained in improper manners or methods.

- In altered forms or conditions.

**CORRESPONDENCE TAPES** - Cassette tapes sent or received by an inmate or visitor where there exists a disability or literacy concern that prevents written correspondence.

**CRIMINAL ACTIVITY** - Any activity that violates local, state and federal law, statutes, ordinances, or codes, and constitutes a criminal act under the law.

**CUNNILINGUS** - Oral stimulation of the clitoris or vulva.

**EXCRETORY FUNCTIONS** - The elimination of a body's waste products through defecation and urination.

**FEATURES** - The publication contains nudity on a routine or regular basis or promotes itself based upon such depictions in the case of an individual one-time issue.

**FELLATIO** - Oral stimulation of the penis.

# REST OF PAGE BLANK

# EXHIBIT 2

# EXHIBIT 2

| CORRECTIONS ADC | ARIZONA DEPARTMENT OF CORRECTIONS | CHAPTER:  900<br><br>INMATE PROGRAMS AND SERVICES | OPR:<br><br>DIR |
|---|---|---|---|
| DEPARTMENT ORDER MANUAL | | DEPARTMENT ORDER:  902<br><br>*INMATE LEGAL ACCESS TO THE COURTS* | SUPERSEDES:<br>DO 902 (02/04/11) |
| | | | EFFECTIVE DATE:<br>JULY 6, 2013 |
| | | | REPLACEMENT PAGE REVISION DATE:<br>N/A |

# TABLE OF CONTENTS

**PURPOSE**

**RESPONSIBILITY**

**PROCEDURES**                                                                        PAGE

| | | |
|---|---|---|
| 902.01 | SYSTEM OVERVIEW | 1 |
| 902.02 | LEGAL RESOURCES AND ACCOMMODATIONS | 2 |
| 902.03 | GENERAL RESPONSIBILITY | 3 |
| 902.04 | PARALEGAL ASSISTANCE | 6 |
| 902.05 | QUALIFIED LEGAL CLAIMS COPYING | 9 |
| 902.06 | CHARGES - QUALIFIED LEGAL CLAIMS | 11 |
| 902.07 | NON-QUALIFIED LEGAL CLAIMS SERVICES | 12 |
| 902.08 | SPECIAL NEEDS INMATES | 13 |
| 902.09 | LEGAL SUPPLIES | 14 |
| 902.10 | LEGAL PROPERTY | 14 |
| 902.11 | LEGAL MAIL | 15 |
| 902.12 | LEGAL PHONE CALLS | 17 |
| 902.13 | LEGAL VISITS | 18 |
| | IMPLEMENTATION | 19 |
| | DEFINITIONS | 19 |
| | AUTHORITY | 21 |
| | ATTACHMENTS | |

1.2    Legal materials in excess of the three boxes shall be stored by the Department. In order to store excess legal materials, inmates shall, in the presence of staff:

1.2.1    Seal legal materials in a box, after staff inspection for contraband.

1.2.2    Ensure their name and ADC number are written on the top and side of the box.

1.2.3    Ensure the box of legal material is numbered in the next sequential order.

1.3    Inmates shall store and possess only their own personal legal materials. If staff discovers an inmate is storing or possessing other inmate's legal materials, staff shall return the legal materials to the owner regardless of whether or not disciplinary action is taken.

1.3.1    If it is determined an inmate has drafted legal documents on behalf of another inmate, and those documents are being stored or possessed by the inmate who drafted them, those documents shall be confiscated and not given to the inmate whose name may be listed on the documents.

1.4    When an inmate wishes to exchange one box of legal material for another, the inmate shall:

1.4.1    Notify the Property Officer by Inmate Letter, Form 916-1.

1.4.2    Clearly indicate by number the box(es) to exchange.

1.5    The Property Officer shall exchange the box(es) of legal materials within three work days from the date of receipt of the request, which shall be date stamped as received.

1.6    The legal materials to be exchanged shall be inspected for contraband by staff and sealed in the presence of staff prior to exchange.

1.6.1    Only sealed boxes shall be exchanged.

1.6.2    A Checklist for Storage of Inmate Legal Materials, Form 902-9, shall be used any time legal materials are stored or exchanged.

1.6.3    Completed forms shall be placed in the Inmate Property File within five work days.

1.7    Possession of legal material and/or legal texts or books shall be subject to the quantity limitations in accordance with Department Order #909, Inmate Property.

1.8    Compact discs sent in from attorneys shall be considered as legal materials and barring any security concerns shall be stored in the inmate's legal boxes.

## 902.11    LEGAL MAIL

1.1    Inmates shall identify outgoing legal mail by writing "Legal Mail" on the lower left-hand corner of the envelope.  (See Definitions for guidance on what constitutes "Legal Mail".)

1.2    Outgoing mail not labeled as legal mail shall be processed as regular mail.

1.3    All legal mail, outgoing or incoming, shall be logged.

1.4    Staff who process incoming or outgoing inmate mail shall:

1.4.1    Generally identify all legal mail and record it on a log by indicating the inmate's name and the sender's name.

1.4.2 Inspect such mail for contraband, stamp the envelope "LEGAL MAIL, ARIZONA DEPARTMENT OF CORRECTIONS" using a commercial stamp, and log it before it is placed in the envelope and sealed by the inmate.

1.4.2.1 All incoming mail, letters, memoranda, and documents, from an inmate's attorney or from a judge or court, shall be opened for inspection purposes in the presence of the inmate. Such incoming mail may be scanned in the conducting of an inspection for contraband, but shall not be read or censored by staff.

1.4.2.2 All outgoing letters to an inmate's attorney or to a judge or court shall be brought to the mail room by the inmate, where the letter shall not be read or censored but shall be inspected for contraband and sealed in the presence of the inmate. All outgoing legal documents to an inmate's attorney or to a judge or court (other than letters to an inmate's attorney or to a judge or court, such as pleadings, briefs and motions) shall not be censored, but staff are not prohibited from reading such documents to the extent necessary to establish the absence of contraband.

1.4.3 Send legal mail as first class mail regardless of the inmate's ability to pay the required postage.

1.4.4 Submit names of inmates claiming to have inadequate funds for postage to the Business Office, indicating postage due from the inmate. The Business Office shall either debit the inmate account or, if there are insufficient funds to pay the postage, place a hold on the inmate account.

1.4.5 Return the mail to the inmate if he/she requests mail to be sent as legal mail and it is not to an attorney, judge or court. The inmate may request to have the Paralegal review the mail to determine whether it may be approved as legal mail. The Paralegal may contact the Legal Access Monitor for direction.

1.5 Designated staff who process incoming mail shall attempt to make a determination, based on an inspection of the envelope, whether the contents constitute legal mail. The return address may be indicative of whether the contents of the envelope constitute legal mail. Designated staff shall not rely solely on the words "legal mail" having been stamped on the envelope. If there is any serious doubt as to whether the contents of the envelope contain legal mail, designated staff shall contact the Legal Access Monitor for direction.

1.6 Staff suspecting abuse of the legal mail designation shall advise the Warden or Deputy Warden who shall take appropriate action following consultation with the Department's General Counsel.  An inmate who intentionally sends personal mail to a private address and falsely claims it is legal mail shall be subject to disciplinary action in accordance with Department Order #803, Inmate Disciplinary Procedure.

1.7 When applicable, staff shall take the following steps to locate inmates to whom legal mail is addressed and to forward such mail to the inmate.

1.7.1 Use the Adult Information Management System (AIMS) and inmate records to locate any addressee of legal correspondence who is not located at the institution which received the correspondence, and to locate any inmate who has received legal mail which does not have an ADC number as part of the address.

1.3   <u>Visits Under Court Order</u> - Persons acting under a court order shall contact the appropriate unit staff to arrange a visit with an inmate. An original certified copy of the court order shall be provided by such person to the appropriate unit staff for inclusion in the inmate's Visitation, Institutional and Master File.

# IMPLEMENTATION

Wardens shall provide written direction which addresses the following, at a minimum:

- Identification of designated staff for carrying out responsibilities and processes required by this Department Order.

- Specific process for copying qualified, non-qualified, and non-legal materials.

- Specific process for submission of the Inmate Request for Paralegal Assistance and related documents to include charging for fax service.

- Process for legal resource and text check-out and monitoring, to include a specified period of time for check out.

- Allocation of space for Paralegal activities and/or storage of materials.

The assigned staff member at each institution shall notify the Legal Access Monitor of such directions, for final approval prior to implementation.

# DEFINITIONS

**ACCESS TO THE COURTS** - Inmates shall not be barred from the courts and the Department shall, when written requests are made, actively assist inmates in the preparation and initial filing of (1) direct appeals from the convictions for which they were incarcerated, (2) Habeas petitions, (3) '1983 Civil Rights actions, and (4) Conditions of Confinement actions.

- Active Assistance - Assistance provided to inmates by Paralegals.

- Passive Assistance - Assistance available to inmates through resource materials to which they are directed.

**AGENTS OF AN ATTORNEY** - Individuals who are authorized by a licensed attorney to act on behalf of, for or in place of the attorney, and who are directed to visit an inmate on behalf of, or in place of an attorney.

- To demonstrate a bonafide agency relationship with an attorney, pursuant to this Order, an individual shall have documented (written) authorization by the attorney to act on behalf of, for or in place of the attorney. The written authorization, signed and dated by the attorney shall:

  - Expressly set forth the specific nature of the duty or duties in accordance with which the agent purports to act on behalf of, for or in place of the attorney.

  - Outline the general nature of the visit.

  - Be notarized.

- Agents may include private investigators, licensed in accordance with A.R.S. section 32-2401; Paralegals; law students; secretarial staff and duly appointed process servers.

- Agents shall not include anyone who is on an inmate's visiting list.

**ATTORNEY** - An attorney-at-law licensed to practice in any state or federal jurisdiction.

- Who has entered into or may in the future enter into an attorney-client relationship with the inmate or has been appointed to represent the inmate, as evidenced by court record, court order or by the inmate's written authorization.

- Shall not include anyone who is on the inmate's visiting list.

**CIVIL RIGHTS** - Rights guaranteed by the United States Constitution.

**DEBIT** - An immediate withdrawal of funds from an inmate's account.

**DESIGNATED STAFF** - Any Department Employee(s) appointed by the Warden to be responsible for such duties as outlined in this Department Order.

**HABEAS CORPUS** - A writ by which a party attempts to obtain release from confinement.

**HOLD** - An obligation owed by an inmate which restricts inmate funds until the obligation is collected.

**INITIAL FILING** - The filing of a pleading or petition with a court of law to begin a legal action in court. An initial filing also includes the filing of all notices or other documents which may be required prior to the filing of the pleading or petition, including the initial filing of amended complaints or petitions.

**LEGAL ACCESS MONITOR** - A Department employee with Paralegal training, located in the Legal Services Unit at Central Office.

**LEGAL CALL** - Unmonitored telephone calls made by an inmate to the inmate's attorney or an agent of the attorney, for legal purposes, which have been scheduled according to Department Orders as legal calls. Court-ordered telephonic conferences with the court are also unmonitored calls and are made at the Department's expense on the state's long-distance service, when necessary.

**LEGAL MAIL** - Any letters to or from an inmate's attorney as defined above, or to or from a judge or to or from a court of law.

**NON-QUALIFIED LEGAL CLAIMS** - Any legal claims which do not fall under the definition of QUALIFIED LEGAL CLAIMS. These include divorce, child custody, paternity, name change, etc.

**PARALEGAL** - An independent contractor who has obtained a diploma/degree/certificate from an accredited Paralegal school who has met the American Bar Association (ABA) approval, or possesses three or more years verifiable full-time Paralegal experience. The Department shall contract in accordance with Department Order #302, Contracts and Procurement, to obtain the services of qualified Paralegals. Individuals who have graduated from law school but have never been licensed to practice law in any jurisdiction may serve as Paralegals.

**PETITION** - A written request the court exercise for its authority to redress a wrong.

**PLEADING** - For the purpose of this Department Order, a pleading refers to a Notice of Appeal pursuant to Ariz.R.Crim.P, 31.2; the initial filing of a Petition for Post-Conviction and related forms, pursuant to Ariz.R.Crim.P. 32; a Petition for Review pursuant to Ariz.R.Crim.P. 31.19; a Petition for Review pursuant to Ariz.R.Crim.P. 32.9(c); a Petition for Review pursuant to Ariz.R.Crim.P.31.19 and 32.9(g); a Petition for Writ of Habeas Corpus in state or federal court; and a Civil Rights complaint or Condition of Confinement complaint in state or federal court.

**POST-CONVICTION RELIEF (RULE 32, ARIZONA RULES OF CRIMINAL PROCEDURE)** - The process through which a party seeks relief from a sentence imposed on the party by a court of law.

**QUALIFIED LEGAL CLAIMS** - In the direct appeal, any claim of error; in the Post Conviction Relief proceeding, any non-precluded claim set forth in Ariz.R.Crim.P.32; and in federal court, any claim of error based on a violation of the federal constitution or law. Forms include the Notice of Appeal from the Superior Court (Ariz.R.Crim.P.31.2(a); Notice of Post-Conviction Relief, Request for Preparation of Post-Conviction Relief Record, and Petition for Post-conviction Relief (Ariz.R.Crim.P. 32);Petition for Review (Ariz.R.Crim.P. 32.9(c)); Petition for Review (Ariz.R.Crim.P. 31.19 and 32.9(g)); Petition for a Writ of Habeas Corpus in state or federal court; and a civil rights action or condition of confinement claim (42 U.S.C. ' 1983).

**WRIT** - A written judicial order to perform a specified act or giving authority to have a specified act done.

{Original Signature on File}

_____

Charles L. Ryan
Director

**FORMS LIST**
902-1, Inmate Request for Paralegal Assistance
902-1S, Solicitud De Preso Para Ayuda De Paralegal
902-2, Request/Authorization for Qualified Legal Claim Copying
902-3, Paralegal Activity Log
902-4, Contract Paralegals – Unit Sign-In Log
902-7, Request/Authorization for Non-Qualified/Non-Legal Copying
902-8, Paralegal Meeting Notification
902-9, Checklist for Storage of Inmate Legal Materials

**ATTACHMENTS**
Attachment A, Legal Texts and Resource Material
Attachment B, Court Forms Packets
Attachment C, Federal Appellate/District Courts and State Appellate Courts
Attachment D, Paralegal Assistance Request Process
Attachment E, Qualified Legal Claims Copying Process
Attachment F, Non-Qualified Legal Claims/Non-Legal Copying Process

# AUTHORITY
*Lewis v. Casey,* 116 S. Ct. 2174 (1996)

# EXHIBIT 3

# EXHIBIT 3

# ARIZONA DEPARTMENT OF CORRECTIONS
## LEGAL SERVICES OFFICE
## MEMORANDUM

TO:            Robert Patton, Offender Operation Division Director

FROM:          Julia Erwin, ADOC, Legal Access Monitor

THRU:          Dawn Northup, ADOC, General Counsel

DATE:          09/17/2013

SUBJECT:       Arizona State Prison Complex / Operations
               Legal Mail

It is recommended that per Departmental Order 902.11, specifically subsections 1.4.2.1 and 1.4.2.2, mail arriving from the following entities without an individual specific attorney as part of the return address is not considered Legal Mail for confidentiality purposes:

- NAACP
- Justice Project
- ACLU
- Arizona Center for Disability Law
- Prison Law Office

Definition for legal mail is defined as "All letters to/from an inmate's attorney, to/from a judge or to/from a court of law". A "Legal Mail" stamp placed on envelopes by/from the above entities without a specific attorney included in the address shall not be considered privileged Legal Mail. Mail from the above entities not meeting the above standard should be opened and inspected by Complex Mail Room staff, and processed as regular mail. Mail from these entities that identify a specific attorney in the return address should continue to be processed as Legal Mail. Inmates acting in Propria Persona (Pro Se) should continue to have their documented legal agent's written communications treated with confidentiality privileges.

# EXHIBIT 4

# EXHIBIT 4

# *Memorandum*
## ARIZONA DEPARTMENT OF CORRECTIONS
### ARIZONA STATE PRISON COMPLEX - EYMAN / Operations

**TO:**            All Inmates

**FROM:**        **Sgt. D. McClincy, ASPC-E / Mailroom**

**Through:**     **J. Erwin, ADOC, Legal Access Monitor**

**DATE:**        **09/12/2013**

**SUBJECT:**    **Legal Mail**

Per Departmental Order 902 ss; 902.11.1.4.2.1; ss 902.11.1.4.2.2, and Definitions legal mail is defined as "All letters to/from an inmate's attorney, to/from a judge or to/from a court of law". Mail arriving from the following entities without an individual specific attorney as part of the return address will no longer warrant Legal Mail Confidentiality privileges:

- **NAACP**
- **Justice Project**
- **ACLU**
- **Arizona Center for Disability Law**
- **Prison Law Office**

A "Legal Mail" stamp placed on envelopes by/from the above entities without a specific attorney included in the address shall not be considered privileged Legal Mail. Mail from the above entities not meeting the above standard shall be opened and inspected by Complex Mail Room staff, and processed as regular mail. Mail from these entities with a specific attorney included in the address shall continue to be processed as Legal Mail. Inmates acting in Propria Persona (Pro Se) shall continue to have their documented legal agent's written communications treated with confidentiality privileges.

# EXHIBIT 5

# EXHIBIT 5

# ARIZONA DEPARTMENT OF CORRECTIONS

**Information Report**

Report Number 13-A17-3100

Report Date 11/20/2013

Page 1 of 6

**Staff Involved**

| To | Title | Unit |
|---|---|---|
| McClincy | Sgt. | ASPC-E / CPX |

| From | Title | Unit |
|---|---|---|
| Andrews | CO II | ASPC-E / CPX |

| Subject |
|---|
| **Fraudulent Legal Mail** |

| Employee Name | Title | Badge Number |
|---|---|---|
| Andrews | CO II | 1824 |

| Employee Name | Title | Badge Number |
|---|---|---|
| McClincy | Sgt. | 3072 |

| Intelligence Category 1 | Intelligence Category 2 |
|---|---|
| | |

| Source Type | Source's Last Name | Source's ADC Number |
|---|---|---|
| | | |

**Inmates Involved**

| Inmate Name | ADC Number | Unit | HU/BED | Involved As: |
|---|---|---|---|---|
| ▮ | ▮ | Browning | 4 J 52 | SUBJECT |
| Inmate Name | ADC Number | Unit | HU/BED | Involved As: |
| | | | | SUBJECT |

| Time | Date | Location |
|---|---|---|
| 0930 | 11/20/2013 | ASPC-E / Mail Room |

**Summary**

On the above date and approximate time while processing incoming Legal Mail I, CO II H. Andrews # 1824, discovered a letter addressed to inmate ▮ from Brown and Little P.L.C. Attorneys At Law, 950 W. Elliot Rd. Suite 107, Tempe, AZ 85284 that was unsealed. Inside said envelope was a three page letter with the same letterhead as the address on the envelope. At a glance I noticed on the third line the letter stated" So how are you? I miss you". Upon receiving authorization from Sgt. McClincy I scanned the entire letter". It became apparent that the entire "Legal Mail" letter was a fraudulent scheme by inmate ▮ wife(?) in order to circumvent ADOC policies of scanning all incoming mail (letter attached). It is apparent that ▮ has aquired a red "Legal Mail" stamp, and is producing her own Legal envelopes and letterheads. The second page includes a typed message from a third party that ▮ received for ▮ and retyped for him to read. This meathod of passing information to inmates is known as a boomerang letter.

| Employee's Signature | Title |
|---|---|
| | CO II |

**Comments/Action Taken**

Report for information and documentation.
Browning SSU and Legal Access Monitor, J. Erwin, Central Office, notified. Fraudulent Legal Mail was confiscated, and disposed to Browning Unit property as contraband.

| Employee's Signature | Title |
|---|---|
| | Sgt. |

Distribution (check all that apply)

☐ _____

☐ _____

☐ _____

**Entered Into Data Base**

By _____

Date _____

105-2PF
3/10/00
(40000029)

# ARIZONA DEPARTMENT OF CORRECTIONS

**Information Report**

| Report Number 13-A17-1026 |
| --- |
| Report Date 06/20/2013 |
| Page 1 of 4 |

| To<br>Reyna | Title<br>Lt. | Unit<br>ASPC-E / Operations |
| --- | --- | --- |
| From<br>McClincy, D. | Title<br>Sgt. | Unit<br>ASPC-E / Operations |

| Subject |
| --- |
| Suspiciously Addressed Alleged Legal Mail |

| Employee Name<br>Farr, D. | Title<br>Mail Clerk II | Badge Number<br>N/A |
| --- | --- | --- |
| Employee Name<br>McClincy, D. | Title<br>Sgt. | Badge Number<br>3072 |

| Intelligence Category 1 | | Intelligence Category 2 | |
| --- | --- | --- | --- |

| Source Type | Source's Last Name | | Source's ADC Number |
| --- | --- | --- | --- |

| Inmate Name | ADC Number ██████ | Unit<br>A21 | HU/BED<br>3H03 | Involved As:<br>SUBJECT |
| --- | --- | --- | --- | --- |
| Inmate Name | ADC Number | Unit | HU/BED | Involved As:<br>SUBJECT |
| Time<br>1130 | Date<br>06/20/2013 | | Location<br>ASPC-E / Mail Room | |

**Summary**

On the above date and approximate time prior to conducting incoming mail scans Mail Clerk II D. Farr discovered a suspicious envelope addressed to ████████ of ASPC-E / A21, 3H03. The suspicion was drawn from the hand written address being a Tucson, AZ address (Sylvia Canelos, ESQ, 3902 N. Alvernon Way, Tucson AZ 85718), yet the post mark was from Phoenix, AZ on June 19, 2013. A review of ████████ AIMS/DV01 approved attorney screen revealed no Sylvia Canelos. A review of the Arizona Bar Association website found no such person as Sylvia Canelos. These factors were enough cause to open said envelope without inmate Jones present. Contained therein were personal family photographs and a personal letter with no Legal validity or bearing whatsoever.

| Employee's Signature | Title<br>Sgt. |
| --- | --- |

**Comments/Action Taken**

Report for information and documentation.
 A memo concerning the fraudulent use of DO 902, Inmate's Legal Access to the Courts, and pending disciplinary action for future occurrences was provided inmate ████████

| Employee's Signature | Title<br><br>Sgt. |
| --- | --- |

Distribution (check all that apply)

☐ _____

☐ _____

☐ _____

| Entered Into Data Base |
| --- |
| By_____ |
| Date_____ |

105-2PF
3/10/00
(40000029)

# ARIZONA DEPARTMENT OF CORRECTIONS

## Information Report

| | |
|---|---|
| Report Number | 11A170738 |
| Report Date | 06/22/2011 |
| Page | 1 |

| To O'CONNOR | Title SGT | Unit EYMAN OPS |
|---|---|---|
| From ANDREWS | Title COII | Unit EYMAN OPS |

**Subject**
SUSPICIOUS SUBSTANCE FOUND INCOMING MAIL

**Staff Involved**

| Employee Name  *(Last, First M.I.)* ANDREWS, H | Title COII | Badge Number 1824 |
|---|---|---|
| Employee Name  *(Last, First M.I.)* | Title | Badge Number |

**Intel**

| Intelligence Category 1 | Intelligence Category 2 |
|---|---|
| Source Type | Source's Last Name | Source's ADC Number |

**Inmates Involved**

| Inmate Name  *(Last, First M.I.)* ▌▌▌▌▌▌▌▌ | ADC Number ▌▌▌▌▌ | Unit BROWNING | HU/BED 1B4 | Involved As: INMATE |
|---|---|---|---|---|
| Inmate Name  *(Last, First M.I.)* | ADC Number | Unit | HU/BED | Involved As: |

| Time 0924 | Date 06/22/2011 | Location EYMAN COMPLEX MAIL & PROPERTY ROOM |
|---|---|---|

**Summary**
On the above date and approximate time I, COII Andrews, while logging legal mail became suspicious of an envelope addressed to ▌▌▌▌▌▌▌▌ because it had two return addresses. One address is from Tucson and the other, with the postage, is from Phoenix. Upon further inspection of this envelope I found two pieces of paper stuck together with a unknown substance that appears blue in color in the center. Two days prior an envelope was intercepted detailing how to introduce drugs by mail(refer to IR#11A170724 dated 6/20/2011). Report written by COII Andrews. End of report.

| Employee's Signature | Title COII |
|---|---|

**Comments/Action Taken**
Report for information and documentation.  Envelope and contents secured in evidence bag and forwarded to CIU for further analysis.  Complex and unit SSU notified.

| Employee's Signature | Title |
|---|---|

**Distribution** ( ✓ *Check all that apply*)
- ☐ _____
- ☐ _____
- ☐ _____

**Entered Into Data Base**
By _____
Date _____

105-2
8/6/09

# ARIZONA DEPARTMENT OF CORRECTIONS

## Information Report

| Report Number | 11A170876 |
|---|---|
| Report Date | 07/20/2011 |
| Page | 1 |

| To<br>OCONNOR, C | Title<br>SGT | Unit<br>EYMAN MAIL&PROP |
|---|---|---|
| From<br>ANDREWS, H. | Title<br>CO II | Unit<br>EYMAN MAIL&PROP |

**Subject**
SUSPICIOUS MAIL

### Staff Involved

| Employee Name *(Last, First M.I.)*<br>ANDREWS, H. | Title<br>CO II | Badge Number<br>1824 |
|---|---|---|
| Employee Name *(Last, First M.I.)* | Title | Badge Number |

### Intel

| Intelligence Category 1 | Intelligence Category 2 | |
|---|---|---|
| Source Type | Source's Last Name | Source's ADC Number |

### Inmates Involved

| Inmate Name *(Last, First M.I.)*<br>█████████ | ADC Number<br>██████ | Unit<br>BROWNING | HU/BED<br>1D21 | Involved As:<br>INMATE |
|---|---|---|---|---|
| Inmate Name *(Last, First M.I.)* | ADC Number | Unit | HU/BED | Involved As: |

| Time<br>1022 | Date<br>07/20/2011 | Location<br>EYMAN MAIL & PROPERTY ROOM |
|---|---|---|

### Summary

**Summary**
On the above date and approximate time while logging legal mail I, COII Andrews, came to an envelope addressed to ████ ████████ The envelope appeared suspicious due to the return address zip code(85032) and the US postage stamp zip code(85308) being different.  Upon further investigation, the contents revealed multiple blank tax forms and another inmate's ADC record. End of report.

| Employee's Signature | Title<br>CO II |
|---|---|

### Action Taken

**Comments/Action Taken**
Report for information and documentation.  Envelope and contents forwarded to unit SSU for further investigation.

| Employee's Signature | Title |
|---|---|

**Distribution ( ✓ Check that all apply)**

☐ _____

☐ _____

☐ _____

**Entered Into Data Base**

By _____

Date _____

105-2
8/6/09

# ARIZONA DEPARTMENT OF CORRECTIONS

## Information Report

| | |
|---|---|
| Report Number | 11A170904 |
| Report Date | 07/27/2011 |
| Page | 1 |

| To<br>OCONNOR, C. | Title<br>SGT | Unit<br>EYMAN MAIL&PROP |
|---|---|---|
| From<br>ANDREWS, H. | Title<br>CO II | Unit<br>EYMAN MAIL&PROP |

| Subject |
|---|
| SUSPICIOUS MAIL |

**Staff Involved**

| Employee Name *(Last, First M.I.)*<br>ANDREWS, H. | Title<br>COII | Badge Number<br>1824 |
|---|---|---|
| Employee Name *(Last, First M.I.)* | Title | Badge Number |

**Intel**

| Intelligence Category 1 | Intelligence Category 2 |
|---|---|
| Source Type | Source's Last Name | Source's ADC Number |

**Inmates Involved**

| Inmate Name *(Last, First M.I.)* | ADC Number | Unit<br>BROWNING | HU/BED<br>4K33 | Involved As:<br>INMATE |
|---|---|---|---|---|
| Inmate Name *(Last, First M.I.)* | ADC Number | Unit | HU/BED | Involved As: |

| Time<br>0955 | Date<br>07/27/2011 | Location<br>EYMAN MAIL & PROPERTY ROOM |
|---|---|---|

**Summary**

Summary
On the above date and approximate time while logging legal mail I, COII Andrews, came across an envelope that seemed suspicious. I checked with the Arizona State Bar and could not find the alleged attorney listed. Upon inspecting the contents of the envelope I found a piece of paper with 122 inmate names listed. End of report.

| Employee's Signature | Title<br>COII |
|---|---|

**Action Taken**

Comments/Action Taken
Report for documentation and information. Original letter and envelope forwarded to Sgt. Chavez, SSU Browning Unit. Copy of envelope and letter attached.

| Employee's Signature | Title |
|---|---|

Distribution ( • *Check all that apply*)

☐ _____

☐ _____

☐ _____

| Entered Into Data Base |
|---|
| By _____ |
| Date _____ |

105-2
8/6/09

# ARIZONA DEPARTMENT OF CORRECTIONS

## Information Report

| Report Number | 11A170911 |
|---|---|
| Report Date | 07/28/2011 |
| Page | 1 |

**Staff Involved**

| To<br>OCONNOR, C. | Title<br>SGT | Unit<br>EYMAN MAIL&PROP |
|---|---|---|
| From<br>ANDREWS, H. | Title<br>CO II | Unit<br>EYMAN MAIL&PROP |

| Subject<br>SUSPICIOUS MAIL | | |
|---|---|---|

| Employee Name  *(Last, First M.I.)*<br>ANDREWS, H. | Title<br>CO II | Badge Number<br>1824 |
|---|---|---|
| Employee Name  *(Last, First M.I.)* | Title | Badge Number |

**Intel**

| Intelligence Category 1 | Intelligence Category 2 |
|---|---|
| Source Type | Source's Last Name |

| Source Type | Source's Last Name | Source's ADC Number |
|---|---|---|

**Inmates Involved**

| Inmate Name  *(Last, First M.I.)* | ADC Number | Unit<br>BROWNING | HU/BED<br>1D27 | Involved As:<br>INMATE |
|---|---|---|---|---|
| Inmate Name  *(Last, First M.I.)* | ADC Number | Unit<br>SMU I | HU/BED<br>3A17 | Involved As:<br>INMATE |

| Time<br>0930 | Date<br>07/28/2011 | Location<br>EYMAN MAIL & PROPERTY ROOM |
|---|---|---|

**Summary**

Summary
On the above date and approximate time while processing legal mail I, COII Andrews, became suspicious of two envelopes from the same "alleged attorney". The envelopes were addressed to ███████████████ (currently on mail scan) and ████████████. Upon further inspection, I found blank tax forms in the envelope addressed to ████████ In the envelope addressed to ██████ was a handwritten letter believed to be from ████████████   End of report.

| Employee's Signature | Title<br>COII |
|---|---|

**Action Taken**

Comments/Action Taken
Report for information and documentation.  Envelopes and copy of IR forwarded to SSU.

| Employee's Signature | Title |
|---|---|

Distribution ( ✓ Check all that apply)

☐ _____
☐ _____
☐ _____

| Entered Into Data Base | |
|---|---|
| By | _____ |
| Date | _____ |

105-2
8/6/09

1 of 2

# ARIZONA DEPARTMENT OF CORRECTIONS

## Information Report

| Report Number | 12A170121 |
|---|---|
| Report Date | 01/25/2012 |
| Page | 1 |

| To O'CONNOR, C. | Title SGT | Unit EYMAN OPS |
|---|---|---|
| From ANDREWS, H. | Title COII | Unit EYMAN MAIL&PROP |

**Subject** SUSPICIOUS MAIL

**Staff Involved**

| Employee Name *(Last, First M.I.)* | Title | Badge Number |
|---|---|---|
| Employee Name *(Last, First M.I.)* | Title | Badge Number |

**Intel**

| Intelligence Category 1 | Intelligence Category 2 | |
|---|---|---|
| Source Type | Source's Last Name | Source's ADC Number |

**Inmates Involved**

| Inmate Name *(Last, First M.I.)* | ADC Number | Unit BROWNING | HU/BED 4 I 25 | Involved As: INMATE |
|---|---|---|---|---|
| Inmate Name *(Last, First M.I.)* | ADC Number | Unit | HU/BED | Involved As: |

| Time 1040 | Date 01/25/2012 | Location EYMAN MAIL & PROPERTY |
|---|---|---|

**Summary**

On the above date and approximate time I, COII Andrews, while logging legal mail noticed a suspicious envelope. Upon further investigation I found that the names and address listed on the return address label could not be verified on the Arizona State Bar website.  A search of the envelope found a letter that appears to be gang related business along with lists of other inmates names and numbers. End of report

| Employee's Signature | Title COII |
|---|---|

**Action Taken**

**Comments/Action Taken**

Report for information and documentation.  Contents and envelope forwarded to SSU for further review.

| Employee's Signature | Title |
|---|---|

Distribution ( ✓ *Check all that apply*)

☐ _____
☐ _____
☐ _____

Entered Into Data Base

By _____

Date _____

105-2
8/6/09

# ARIZONA DEPARTMENT OF CORRECTIONS

## Information Report

| Report Number | 12A170196 |
|---|---|
| Report Date | 02/07/2012 |
| Page | 1 |

| | | |
|---|---|---|
| To<br>O'CONNOR, C | Title<br>SGT | Unit<br>COMPLEX MAIL&PROP |
| From<br>ANDREWS, H. | Title<br>CO II | Unit<br>COMPLEX MAIL&PROP |

**Subject**
SUSPICIOUS MAIL

**Staff Involved**

| Employee Name  (Last, First M.I.) | Title | Badge Number |
|---|---|---|
| | | |
| Employee Name  (Last, First M.I.) | Title | Badge Number |
| | | |

**Intel**

| Intelligence Category 1 | Intelligence Category 2 |
|---|---|
| | |

| Source Type | Source's Last Name | Source's ADC Number |
|---|---|---|
| | | |

**Inmates Involved**

| Inmate Name (Last, First M.I.) | ADC Number | Unit | HU/BED | Involved As: |
|---|---|---|---|---|
| ▉▉▉▉▉▉ | ▉▉▉▉ | SMU I | 1C04 | INMATE |
| ▉▉▉▉▉▉ | ▉▉▉▉ | BROWNING | 2E24 | INMATE |

| Time | Date | Location |
|---|---|---|
| 1000 | 02/06/2012 | EYMAN MAIL & PROPERTY ROOM |

**Summary**
On the above date and approximate time I COII Andrews, became suspicious of two pieces of mail with a return address from attorneys offices.  Upon further investigation neither of the names or addresses could be located on the AZ state bar association website and the zip codes did not match where the items were mailed from.  Inspection of the contents of the envelopes revealed several blank tax forms and tax tables hidden in between other documents.  Items placed in contraband for respective unit. End of report.

| Employee's Signature | Title<br>CO II |
|---|---|

**Action Taken**

**Comments/Action Taken**
Report for information and documentation.

| Employee's Signature | Title |
|---|---|

| Distribution ( ✓ Check all that apply) | Entered Into Data Base |
|---|---|
| ☐ _____ | By _____ |
| ☐ _____ | Date _____ |
| ☐ _____ | |

105-2
8/6/09

# ARIZONA DEPARTMENT OF CORRECTIONS

## Information Report

| Report Number | 12A170204 |
|---|---|
| Report Date | 02/09/2012 |
| Page | 1 |

| To<br>O'CONNOR, C. | Title<br>SGT | Unit<br>EYMAN MAIL ROOM |
|---|---|---|
| From<br>ANDREWS, H. | Title<br>CO II | Unit<br>EYMAN MAIL ROOM |

**Subject**
SUSPICIOUS MAIL

**Staff Involved**

| Employee Name  (Last, First M.I.) | Title | Badge Number |
|---|---|---|
| Employee Name  (Last, First M.I.) | Title | Badge Number |

**Intel**

| Intelligence Category 1 | Intelligence Category 2 |
|---|---|
| Source Type | Source's Last Name | Source's ADC Number |

**Inmates Involved**

| Inmate Name  (Last, First M.I.) | ADC Number | Unit<br>BROWNING | HU/BED<br>1 B 49 | Involved As:<br>INMATE |
|---|---|---|---|---|
| Inmate Name  (Last, First M.I.) | ADC Number | Unit | HU/BED | Involved As: |

| Time<br>1000 | Date<br>02/09/2012 | Location<br>EYMAN COMPLEX MAIL & PROPERTY |
|---|---|---|

**Summary**

On the above date and approximate time I, COII Andrews, while processing legal mail became suspicious of a package addressed to ▮▮▮▮▮▮▮▮ The return address zip code does not match the postal zip code.  A search of the Arizona Bar Association website could not locate the attorney listed on the return address.  Furthermore, a search for the address listed showed a UPS store at that location.  End of report.

| Employee's Signature | Title<br>CO II |
|---|---|

**Action Taken**

Comments/Action Taken
Report for documentation.

| Employee's Signature | Title<br>SGT |
|---|---|

Distribution ( ✓ Check that apply)

☐ _____
☐ _____
☐ _____

Entered Into Data Base

By _____

Date _____

105-2
8/6/09

1 of 2

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Information Report**

| Report Number | 12A170352 |
|---|---|
| Report Date | 03/05/2012 |
| Page | |

| | | |
|---|---|---|
| **To** OCONNOR, C | **Title** SGT | **Unit** MAIL & PROPERTY |
| **From** ANDREWS, H. | **Title** CO II | **Unit** MAIL & PROPERTY |

**Subject**
SUSPICIOUS MAIL

**Staff Involved**

| Employee Name *(Last, First M.I.)* | Title | Badge Number |
|---|---|---|
| Employee Name *(Last, First M.I.)* | Title | Badge Number |

**Intel**

| Intelligence Category 1 | Intelligence Category 2 |
|---|---|
| Source Type | Source's Last Name | Source's ADC Number |

**Inmates Involved**

| Inmate Name *(Last, First M.I.)* | ADC Number | Unit BROWNING | HU/BED 4 I 25 | Involved As: INMATE |
|---|---|---|---|---|
| Inmate Name *(Last, First M.I.)* | ADC Number | Unit | HU/BED | Involved As: |

| Time | Date | Location |
|---|---|---|
| 1049 | 03/05/2012 | EYMAN MAIL & PROPERTY |

**Summary**
On the above date and approximate time while processing legal mail I, COII Andrews, came across a suspicious envelope. Upon further review, I found the contents to be what appears as STG communications. Browning Unit SSU, Sgt. Carlson, notified and letter forwarded to Browning Unit SSU. End of report.

| Employee's Signature | Title COII |
|---|---|

**Comments/Action Taken**
Report for information and documentation.  Copy of letter attached to Information Report and copy of information report attached to letter and forwarded to Sgt. Carlson at Browning SSU.

| Employee's Signature | Title |
|---|---|

Distribution ( * Check all that apply)

☐ _____
☐ _____
☐ _____

| Entered Into Data Base |
|---|
| By _____ |
| Date _____ |

105-2
8/6/09

1 of 2

# ARIZONA DEPARTMENT OF CORRECTIONS

## Information Report

| | |
|---|---|
| Report Number | 11A1700739 |
| Report Date | 06/22/2011 |
| Page | 1 |

| To O'CONNOR | Title SGT | Unit EYMAN OPS |
|---|---|---|
| From SCHIAVO | Title COII | Unit EYMAN OPS |

**Subject**
SUSPCIOUS SUBSTANCE FOUND INCOMING MAIL

**Staff Involved**

| Employee Name  (Last, First M.I.) SCHIAVO, M. | Title COII | Badge Number 2782 |
|---|---|---|
| Employee Name  (Last, First M.I.) | Title | Badge Number |

**Intel**

| Intelligence Category 1 | Intelligence Category 2 | |
|---|---|---|
| Source Type | Source's Last Name | Source's ADC Number |

**Inmates Involved**

| Inmate Name  (Last, First M.I.) ▓▓▓▓▓▓▓▓ | ADC Number ▓▓▓▓▓ | Unit BROWNING | HU/BED 1B6 | Involved As: INMATE |
|---|---|---|---|---|
| Inmate Name  (Last, First M.I.) | ADC Number | Unit | HU/BED | Involved As: |

| Time 0924 | Date 06/22/2011 | Location EYMAN COMPLEX MAIL & PROPERTY ROOM |
|---|---|---|

**Summary**
On the above date and approximate time I, COII Schiavo, while logging legal mail became suspicious of an envelope addressed to ▓▓▓▓▓▓▓▓ Upon further inspection of this envelope I found two pieces of paper stuck together with a unknown substance.  Two days prior an envelope was intercepted detailing how to introduce drugs by mail(refer to IR#11A170724 dated 6/20/2011). Report written by COII Schiavo. End of report.

| Employee's Signature | Title COII |
|---|---|

**Action Taken**

**Comments/Action Taken**
Report for information and documentation.  Envelope and contents secured in evidence bag and forwarded to CIU for further analysis.  Complex and unit SSU notified.

| Employee's Signature | Title |
|---|---|

Distribution ( ✓ Check all that apply)

☐ _____
☐ _____
☐ _____

| Entered Into Data Base |
|---|
| By _____ |
| Date _____ |

105-2
8/6/09

1 of 2

**EXHIBIT 10**

**EXHIBIT 10**

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Information Report**

| Report Number | 14-A01-0333 |
|---|---|
| Report Date | 01/16/14 |
| Page | 1 OF 2 |

| To | Title | Unit |
|---|---|---|
| Quintero | Sgt | A01 |
| **From** | **Title** | **Unit** |
| Andazola | COII | A01 |
| **Subject** | | |
| Mail Scan | | |

| Staff Involved | | |
|---|---|---|
| Employee Name *(Last, First M.I)* | Title | Badge Number |
| Andazola | COII | 3240 |
| Employee Name *(Last, First M.I)* | Title | Badge Number |
| | | |

| Intel | | |
|---|---|---|
| Intelligence Category 1 | | Intelligence Category 2 |
| | | |
| Source Type | Source's Last Name | Source's ADC Number |
| | | |

**Inmates Involved**

| Inmate Name *(Last, First M.I)* | ADC Number | Unit | HU/BED | Involved As |
|---|---|---|---|---|
| ▆▆▆▆ | ▆▆▆▆ | A01 | CB4 I07 | Subject |
| Inmate Name *(Last, First M.I)* | ADC Number | Unit | HU/BED | Involved As |
| | | | | |

| Time | Date | Location |
|---|---|---|
| 1130 | 01/16/14 | A01 |

| Summary |
|---|

Summary

On the above date and approximate time, SSU staff intercepted an outgoing envelope addressed to BF Harrison 7753 N. 19th Lane Phoenix Az. 85021 (Unknown) with a return address of ▆▆▆▆▆▆▆▆▆▆▆▆▆ The contents contained three (3) letters headed BF. The first letter from ▆▆▆▆ tells BF he needs his help to make some money and he is giving him instructions on how he wants it done. The second letter is a list of 20 detailed instructions on how to get a cell phone, and drugs in through legal mail. The third is an example drawing of where ▆▆▆▆ wants all the labels placed on the incoming fake legal mail envelope. Also in the envelope was three (3) lables to show how ▆▆▆▆ wants them made so it looks like the lawyers labels. End Report

| Employee's Signature | Title |
|---|---|
| | |

| Action Taken | |
|---|---|

Comments/Action Taken

| Employee's Signature | Title |
|---|---|
| | |

| Distribution *(Check all that apply)* | Entered into Database |
|---|---|
| ☐ _____ | By _____ |
| ☐ _____ | Date _____ |
| ☐ _____ | |

105-2(e)
8/6/09