# EXHIBIT 1

# EXHIBIT 1

# Amy Bender

| | |
|---|---|
| **From:** | Amy Bender |
| **Sent:** | Wednesday, January 29, 2014 8:42 AM |
| **To:** | Amy Bender |
| **Subject:** | FW: Parsons v. Ryan -- Expert Depositions |

**From:** Dan Struck
**Sent:** Wednesday, January 15, 2014 4:13 PM
**To:** 'David Fathi'
**Cc:** Parsons Team; AG Team
**Subject:** RE: Parsons v. Ryan -- Expert Depositions

Thanks David.

As we stated on the call, Defendants insist that if plaintiffs want to raise these issues with the court, they need to do so pursuant to the "one pager" process set forth by Judge Wake. There is no justification for treating this dispute in any other fashion.

In addition, as I don't think you were on the call, in addition to allowing plaintiffs to depose Dr. Dolny, as he should not be treated as an ordinary witness under (b)(4) and is therefore subject to being deposed, unlike the other designees. Finally, we did agree to amend our disclosure to remove the 26(a)(2)(C) designation from Mark Jansen.

Dan



## Daniel P. Struck
Direct: (480) 420-1620
dstruck@swlfirm.com
www.swlfirm.com

**From:** David Fathi [mailto:dfathi@aclu.org]
**Sent:** Wednesday, January 15, 2014 3:33 PM
**To:** Dan Struck
**Cc:** Parsons Team; AG Team
**Subject:** RE: Parsons v. Ryan -- Expert Depositions

Dan,

Thank you for your prompt response to my email. As explained in Don Specter's January 13 letter to you, defendants have failed to produce numerous documents that were relied upon by Drs. Penn, Mendel, Dovgan, and Seiter in preparing their reports, and we do not yet know when, or if, defendants plan to produce them. In addition, it is our position that we are entitled to depose the fifteen additional experts disclosed in Defendants' Eleventh Supplemental (Expert) Disclosure Statement; you have stated your position that, with one exception, we may not depose these witnesses.

Until these issues are resolved, either by agreement or by the Court, it is impossible to know how much of an extension of the expert deposition deadline is needed. We plan to file a motion on these issues, and the other matters discussed in our January 13 meet and confer, by the end of next week.

With respect to expert depositions, we are noticing these depositions with placeholder dates. We are willing to conduct them on alternative dates, if you provide us such dates with reasonable notice and if the deposing attorneys are available.

Thanks very much,

David

David C. Fathi*
Director, ACLU National Prison Project
915 15th St. N.W., 7th Floor
Washington, DC  20005
(202) 548-6603
**Please note new email address:** dfathi@aclu.org

*Not admitted in DC; practice limited to federal courts*

**From:** Dan Struck
**Sent:** Tuesday, January 14, 2014 12:27 PM
**To:** David Fathi
**Cc:** Parsons Team; AG Team
**Subject:** RE: Parsons v. Ryan -- Expert Depositions

David,

We will agree to file a joint motion to extend the deadlines for supplemental reports and expert depositions.

We propose the following dates:

| | |
|---|---|
| Plaintiffs' supplemental expert reports: | February 21, 2014 |
| Defendants' supplemental expert reports: | March 24, 2014 |
| Expert depositions: | April 4, 2014 |

We agree with you that it does not make sense for either side to take the deposition of an expert until after the final reports are completed.   As a result, we probably won't be taking any expert depositions until after February 21st, with the possible exception of Dr. Shulman. (unless you think Dr. Shulman will be supplementing based upon the death records, which seems unlikely to us).

Let me know what you think.

Dan



# Daniel P. Struck

Direct: (480) 420-1620
dstruck@swlfirm.com
www.swlfirm.com

**From:** David Fathi [mailto:dfathi@aclu.org]
**Sent:** Monday, January 13, 2014 6:56 PM
**To:** Elaine Percevecz; Dan Struck
**Cc:** Parsons Discovery Comittee
**Subject:** Parsons v. Ryan -- Expert Depositions

Dan,

We have provided you possible deposition dates for Dr. Shulman. Dr. Wilcox can be available in Salt Lake City on February 12, 13, 19, and 20, and March 3-5. Dr. Cohen can be available in New York City February 20 and 24, and possibly February 3 and 10. We are working to provide you dates for plaintiffs' other experts.

We note that you have asked for dates in February, which we are doing our best to provide. However, we want to point out that the parties have agreed that defendants will produce death records by January 22, and plaintiffs' experts may supplement their reports based on those records by February 21. See Doc. 733 at 4. These supplemental reports will also address the Corrective Action Plans (CAPs) defendants have agreed to produce by the end of January.

We will produce each expert for deposition only once. Therefore, if you want to question our experts on their supplemental reports, you should schedule their depositions after Feb. 21.

On a related subject, the parties' agreement also provides that defendants may serve supplemental expert reports within 30 days of plaintiffs' supplemental expert reports. If plaintiffs' reports are served on Feb. 21, this gives defendants' experts until March 23. The cutoff date for expert depositions is currently March 14. We need to be able to question defendants' experts on these reports, but we do not want to depose each expert more than once. We suggest that the parties present the Court with a stipulated motion to extend the March 14 deadline into early or mid-April, to allow both sides time to depose the experts on their supplemental reports. Please let us know your response.

Thanks very much.

David

This electronic mail transmission contains information from the law firm Struck Wieneke & Love, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or

# Amy Bender

| | |
|---|---|
| **From:** | Courtney Cloman |
| **Sent:** | Friday, January 17, 2014 11:55 AM |
| **To:** | Caroline N Mitchell (cnmitchell@JonesDay.com); Don Specter (dspecter@prisonlaw.com); Fathi, David (dfathi@npp-aclu.org); agerlicher@perkinscoie.com; skader@azdisabilitylaw.org |
| **Cc:** | Parsons Team |
| **Subject:** | Parsons v. Ryan, et al. - Document Production. |

David and Don,

We would like to advise you that today we will be sending out several DVDs containing 1) all documents our office provided to Drs. Dovgan, Mendel, Penn and Seiter, as well as 2) documents they obtained from their independent research and have provided a copy to us. (There is a very small number of documents, we believe are limited to Dr. Mendel that he received directly from Corizon personnel during his tours, and we will produce them to you as soon as we receive them.) We are producing these documents despite the fact that we disagree that these documents are responsive to past discovery requests.

We will be responding in detail to Don Spector's January 13th letter in detail, but to ensure that we can (at minimum) agree and seek Court approval of extending the expert deposition and supplemental report deadline, have been focusing efforts to make sure that the deceased inmates' medical records will be ready for production per our earlier agreement. Our response to Don's letter will follow next week once we are certain that we are on target to complete production of the medical records on January 22nd.

We do not believe that the unresolved issue of deposing the 26(a)(2)(C) witnesses (with the exception of Dr. Dolny, who we agree to permit you to depose; and Mark Jansen, who we are going to amend as he will only be testifying as a fact witness and will not be called to provide opinion testimony), should impede our agreement to extend the expert deposition deadline. We would like to proceed with a joint motion to extend the expert deposition deadlines as previously discussed so that we can get the Court's approval and proceed with some firm deposition dates for the retained experts and Dr. Dolny.

Furthermore, we believe that a one-pager as to whether or not you are entitled to depose the other disclosed 26(a)(2)(C) witnesses will be the most expeditious way to get the Court to consider that issue, since it avoids delays in briefing necessary before an order can be made. If you can provide your portion of the one-pager on that issue, about which we agree we are at an impasse, by the end of the day on Wednesday, we should be able to prepare our responsive portion so that it can be submitted to the Court by the end of next week. If we can submit this quickly, I'm sure we can schedule any 26(a)(2)(C) depositions that the Court permits within the extended expert discovery period.

Thank you,

Courtney



**Courtney R. Cloman**
Attorney

1

# Amy Bender

**From:** Amy Bender
**Sent:** Tuesday, January 28, 2014 5:19 PM
**To:** Amy Bender
**Subject:** FW: Parsons v. Ryan

**From:** Courtney Cloman
**Sent:** Thursday, January 23, 2014 1:36 PM
**To:** 'David Fathi'
**Cc:** Parsons Team
**Subject:** RE: Parsons v. Ryan

David,

Thank you for your email. As we stated in our email on Friday, we intend to provide you with a substantive response to Don Specter's letter of January 13, 2014. However, we were required to focus our attention on the voluminous document production that you have acknowledged you received. Our response to Mr. Specter's letter will be provided later today. We maintain that there is no need to file anything with the Court as we have fulfilled our obligations, even more so now following the large production.

Regarding your proposal in yesterday's email, we cannot agree to a briefing schedule that is so clearly prejudicial to Defendants. A motion is the improper vehicle by which to raise a discovery dispute with the Court. Judge Wake has established a procedure by which to raise these disputes and the parties have abided by that procedure throughout the pendency of this action. There is no justification for bypassing this procedure and in doing so, we believe Plaintiffs are violating the Court's Order. The parties are required to submit a one-pager. We told Plaintiffs this during the meet-and-confer on January 13, 2014. This is not a novel position. We expect Plaintiffs to abide by the Court's Order and would appreciate receiving Plaintiff's portion of the one-pager as soon as possible so that we may add Defendants' portion.

If Plaintiffs insist on ignoring the Court's established procedures and on filing a motion, it is inappropriate for Plaintiffs to demand that Defendants respond to any motion within 5 days of service while Plaintiffs have been preparing for this motion for two weeks. Mr. Specter said during the meet-and-confer that Plaintiffs were going to file a motion. Yet now, after nearly two weeks, Plaintiffs want to require Defendants to respond in only 5 days. We cannot agree to this. Defendants are entitled to the same number of days since the meet-and-confer to respond that Plaintiffs have had in preparing their motion. The only reason we are now facing the deadlines that we are is because Plaintiffs continue to fail to raise issues in a timely manner as evidenced by the fact that Plaintiffs have had the intention of filing a motion for nearly two weeks but have yet to do so. Defendants should not be prejudiced by Plaintiffs delay and should be afforded the right to appropriately respond to any motion.

Please provide us with Plaintiffs' portion for the one-pager so that we can review and include our portion for your review, followed by a joint submission to the Court.

Thank you,

Courtney

**From:** David Fathi [mailto:dfathi@aclu.org]
**Sent:** Wednesday, January 22, 2014 5:03 PM

1

**To:** Courtney Cloman
**Subject:** Parsons v. Ryan

Courtney,

As of today, most of plaintiffs' counsel have received the four disks referenced in your January 17 letter. We have not yet had the opportunity to compare these disks to Don Specter's January 13 letter itemizing the documents defendants failed to produce with their expert reports, and therefore do not concede that defendants' production is complete.

In light of your production of these documents nine days before the deadline for plaintiffs' rebuttal expert reports, we request that you stipulate that plaintiffs' experts may serve supplemental reports based on these documents at the same time they serve supplemental reports based on the death records defendants have agreed to produce by today. See Doc. 733 at 4, lines 4-8.

With regard to our dispute over defendants' expert witnesses, plaintiffs will file a motion late this week or early next week. Because of the urgency of this matter in light of upcoming deadlines established in the scheduling order, we will be asking the Court to expedite the briefing schedule. Please let us know if defendants will stipulate to the following schedule:

Defendants' response filed on the fifth court day after electronic service of plaintiffs' motion
Plaintiffs' reply filed on the third court day after electronic service of defendants' response

Thank you very much.

David C. Fathi*
Director, ACLU National Prison Project
915 15th St.. N.W., 7th Floor
Washington, DC  20005
(202) 548-6603
**Please note new email address:** dfathi@aclu.org

*Not admitted in DC; practice limited to federal courts*

2



Daniel P. Struck
PARTNER

Kathleen L. Wieneke
PARTNER

Rachel Love
PARTNER

Timothy J. Bojanowski
PARTNER

Christina Retts
PARTNER

Jamie D. Guzman
ASSOCIATE

Nicholas D. Acedo
ASSOCIATE

Tara B. Zoellner
ASSOCIATE

Amy L. Nguyen
ASSOCIATE

Ashlee B. Fletcher
ASSOCIATE

Courtney R. Cloman
ASSOCIATE

Anne M. Orcutt
ASSOCIATE

Kevin L. Nguyen
ASSOCIATE

David C. Lewis
OF COUNSEL

January 23, 2014

**VIA EMAIL ONLY**

Sarah Kader:  skader@azdisabilitylaw.org
Caroline N. Mitchell:  cnmitchell@jonesday.com
Donald Specter:  dspecter@prisonlaw.com
David C. Fathi:  dfathi@npp-aclu.org
Amelia Gerlicher:  agerlicher@perkinscoie.com

Re:   Parsons, et al. v. Ryan and Pratt
      U.S. District Court of Arizona; 2:12-cv-00601

Dear Counsel:

This letter responds to Don Specter's of January 13, 2014 to Daniel Struck.  Initially, we note that Mr. Specter suggested that if the documents were provided prior to January 22nd, Plaintiffs would not be prejudiced as their experts would have sufficient time to review the documents prior to the expected completion and production of their supplemental reports by February 26th.  On January 17th, we mailed four DVD-Rs, containing not only the documents mentioned in Mr. Specters' letter, but all documents our office provided to Defendants' experts (excluding formal discovery responses, briefing, deposition transcripts and videos which we believe Plaintiffs already possess), as well as those documents obtained by Drs. Dovgan, Mendel, Penn and Seiter from other sources. Given the fact Plaintiffs' counsel waited until four-weeks after service of Drs. Dovgan, Mendel, Penn and Seiter's initial expert reports to express any concern related to these documents, any prejudice is the result of Plaintiffs' delay.

**I. Documents provided to Drs. Dovgan, Mendel, Penn and Seiter are not responsive to Plaintiffs' discovery requests.**

We take umbrage with Mr. Specter's baseless assertion that we have disregarded any of Judge Wake's orders and the implication that Defendants sand-bagged Plaintiffs by failing to produce documents in response to properly propounded discovery requests, while permitting their retained experts access to the material, which they relied upon for their expert opinions. Further, to the extent that Plaintiffs believe Defendants did not completely respond during fact discovery to the specific requests propounded, Plaintiffs should not have waited three months after the close of fact discovery to raise those issues.  Defendants will not strike any portion of Drs. Dovgan, Mendel, Penn, or Seiters' expert

Parsons, et al. v. Ryan, et al.
January 23, 2014
Page 2

reports. Finally, we note that approximately 40 documents listed by Mr. Specter (totaling less than 600 pages) constitute less than 0.2% of the more than 300,000 pages of documents previously produced by Defendants.

To eliminate unnecessary duplication, we will address each request identified by Mr. Specter in order. We assume the documents and requests identified in Mr. Specter's letter constitute a complete and exhaustive list of items with which Plaintiffs take issue, and that Plaintiffs do not take issue with any document which was not identified nor contend that any documents are responsive to any formal discovery request not explicitly identified.

### A. Plaintiff Parsons' 1st Request for Production.

Request 18 seeks "All DOCUMENTS REGARDING HEALTH CARE statistics of any kind at the ADC, including but not limited to DOCUMENTS that track disease or condition prevalence, outcomes, delays in service, care provided and costs. Defendants objected in part that this request was "vague and ambiguous [and] seeks information that is publically available to Plaintiffs."

The documents numbered ADC_S000292 through ADC_S000302, which were listed by Drs. Mendel and Seiter, are merely computer print outs of inmates reported by ADC as having died while in custody, as a parolee on an active warrant, or on absconder status, with the reported manner of death contained in the ADC Press Releases which Defendants have produced. While the first page of each report provides a total count of the number of names listed on the subsequent pages, Defendants do not believe that a mere count is a "statistic" as that term is used by ADC, and further note that Plaintiffs did not define the term "statistic." Furthermore, to the extent Plaintiffs' circular definitions mean that Request 18 seeks production of statistical documents regarding "the provision of care, including adequate diet, to address the mental health, medical or dental needs of a PRISONER, whether those needs arise as a result of injury, illness, disease, or other trauma, or care provided for diagnostic or preventative purposes" a list of inmates, parolees, absconders who died and their date and preliminary manner of death is not a statistic regarding "HEALTH CARE". (Because the response relating to Dr. Dovgan is the same as our response to Request No. 19, those documents will be addressed in the next paragraph.)

Request 19 seeks "DOCUMENTS SUFFICIENT TO SHOW the HOURS OF OPERATION, STAFFING SCHEDULES, and HEALTH CARE STAFFING LEVELS for each facility operated by ADC from January 1, 2011 through the RESPONSE DATE." With respect to Dr. Dovgan, the Request is limited to DOCUMENTS which Plaintiffs defined as "every writing or record … that is or has been in the possession, custody, or control of DEFENDANTS and the ADC, to which they have access or to which they have knowledge, including, but not limited to newspaper articles," etc. The documents obtained by Dr. Dovgan from

Parsons, et al. v. Ryan, et al.
January 23, 2014
Page 3

Smallwood Prison Dental Services, are not DOCUMENTS as Plaintiffs have defined the term.

Request 40 seeks "all DOCUMENTS REGARDING DEATH RECORDS." Plaintiff has defined DEATH RECORD as "any DOCUMENT REGARDING the death of a PRISONER, including audits, REVIEWS [defined as "examinations, assessments, evaluations, or investigations performed by or at the direction of ADC STAFF or officials"] studies, interview notes, videos, audio-recordings, EXTERNAL INVESTIGATIONS [defined as "investigations, REVIEWS [defined as above], audits, studies, whether formal or informal, conducted by a person who is not employed by ADC or an entity that is not the ADC"] or INTERNAL INVESTIGATIONS [defined as "an investigation, REVIEW, audit, study, interview notes, videos or audio recordings, whether formal or informal, conducted by the ADC."]" Defendants objected to this circular request as being "vague and ambiguous" and have consistently limited production of responsive documents to portions of the HS Technical Manual pertaining to deaths, select forms relating to inmate deaths, ADC Mortality Reviews, Inspector General's (Criminal Investigation Unit and Administrative Investigation Unit) investigation reports, medical records of deceased inmates, and (per court order) Psychological Autopsies. To the extent Plaintiffs believe that lists of deaths in custody or any other documents exists that are "DEATH RECORDS" and were not produced, Plaintiff should have clarified the definition during fact discovery. Additionally, Plaintiffs cannot assert the existence of any prejudice, since the lists of deaths bearing production numbers ADC_S00292 through ADC_S000302, are cumulative summary lists of the prisoner names, date of death, and preliminary manner of death which are contained in other documents produced in response to this Request, and which are also publically released in the Death Notifications published on the ADC Website.

Request 51 seeks "All DOCUMENTS REGARDING INTERNAL INVESTIGATIONS OR EXTERNAL INVESTIGATIONS REGARDING CONDITIONS OF CONFINEMENT for PRISONERS in ISOLATION from January 1, 2009 to the RESPONSE DATE." In his January 13th letter, Mr. Specter twice mischaracterizes this Request as seeking "all documents regarding internal or external investigations regarding the delivery of health services to prisoners in insolation", which is Request 52. Defendants objected to this request and responded that it does not maintain copies of external evaluations that may have been conducted. Dr. Seiter independently obtained Patricia L. Hardyman's "Validation of the Arizona Department of Corrections Objective Classification System: Final Report" during his own internet research, which we recently produced to you bearing production numbers ADC_S000747 through ADC_S000837. As it was publically obtained and was not in the possession, control or custody of Defendants or the ADC, it is not responsive to Request 51. Furthermore, as a study of the ADC Objective Classification System, we do not believe the report can be considered to be one regarding conditions of

Parsons, et al. v. Ryan, et al.
January 23, 2014
Page 4

confinement in maximum custody or detention units. Furthermore, the referenced "Mental Health Initiatives and Suicide Prevention Strategies" was disclosed to Plaintiffs as ADC140132-ADC140148 with Defendants 10th Supplemental Disclosure Statement on September 27, 2013.

Request 52 seeks "All DOCUMENTS REGARDING INTERNAL INVESTIGATIONS OR EXTERNAL INVESTIGATIONS REGARDING THE DELIVERY OF HEALTH SERVICES to PRISONERS in ISOLATION from January 1, 2009 to the RESPONSE DATE." Defendants objected to the Request. With respect to Dr. Seiter's reference by title to "Mental Health Initiatives and Suicide Prevention Strategies," it was previously disclosed as ADC140132-ADC140148. With respect to Dr. Penn, the five referenced NCCHC Accreditation Reports were only located by ADC personnel on December 12th and supplemental copies were produced by Defendants on December 18th on the same DVD-R, which contained Dr. Penn's expert report. Defendants believe their supplement of those documents to be timely, and will continue to supplement and produce additional NCCHC Reports that become available. Furthermore, we note that of the five Complexes listed, Douglas, Tucson, and Yuma do not house maximum custody inmates, and the NCCHC reports focus on health services at the prison complex as a whole and is not limited to inmates in maximum custody or detention units or areas at any complex, including Perryville and Phoenix.

Request 55 seeks "All DOCUMENTS REGARDING exhausted GRIEVANCES REGARDING HEALTH CARE or ISOLATION from January 1, 2010 through the RESPONSE DATE." Defendants objected to this Request as, *inter alia,* overbroad and unduly burdensome" and have consistently limited the responsive materials solely to the named Plaintiffs' medical grievances and grievance files relating to properly and fully exhausted grievances. Plaintiffs have never previously taken issue with that interpretation or narrowing, despite ample opportunities and innumerable "one-pagers." More importantly, however, Request 55, while unlimited in most respects given Plaintiffs extensive use of circular and broad definitions, contains the undefined limiting term "exhausted" which Defendants contend means proper exhaustion through all levels of the grievance process, including the Director's level. The grievances Dr. Mendel obtained at Lewis and Yuma and classified and summarized in his report are not Director's level grievances, but rather initial grievances submitted regarding health care at those complexes. (Dr. Mendel obtained those grievances directly from Corizon personnel and we have directed him to provide us copies so that they may be produced.) Similarly the CAG FAG PBMS report does not report exhausted grievances, but rather the "[n]umber of formal inmate health grievances submitted by inmates at ADC prisons during the reporting month". *See* ADC203297 CONFIDENTIAL CAG FAQ PMBS FY13-June 2013.xlsx at the Definitions worksheet. The documents listed simply are not responsive to this Request. Finally, we note that CAG GAW PBMS data has been previously produced in this litigation, including on October 17th and 28th. It was not until Dr.

Parsons, et al. v. Ryan, et al.
January 23, 2014
Page 5

Mendel requested the data in preparing his report, that we realized it had been inadvertently omitted from the prior productions, and it was produced with a supplemental production of other Corizon reports we similarly identified on December 18, 2013.

      B.  Plaintiff Polson's 1st Request for Production.

  Request 2 seeks production of "All POLICIES AND PROCEDURES REGARDING management or treatment of PRISONERS on SUICIDE WATCH, including but not limited to required frequency of contact with psychiatrists and other HEALTH CARE STAFF and CORRECTIONAL STAFF." Defendants objected that this Request was "vague and ambiguous" and also raised general objections that the requests were overbroad and purported to require production of documents in multiple forms. In response, Defendants produced Department Orders, forms relating to the Department Orders and Post Orders. Plaintiff never took issue with this limitation nor suggested during fact discovery, or in response to any of the six supplemental responses to Plaintiff Polsons' 1st Request for Production, that the term POLICIES AND PROCEDURES would include any training materials. The documents referenced, ADC_S000317 through ADC_S000345 are updated forms and accompaniment of materials previously produced by Defendants as ADC089433 and ADC049646. Therefore Plaintiffs' counsel and experts had sufficient access to the underlying subject matter and content of the materials reviewed by Drs. Penn and Seiter.

  Request 11 seeks production of "DOCUMENTS SUFFICIENT TO SHOW the number and names of all prisoners at each ADC facility and unit classified as 'seriously mentally ill', 'severely mentally ill', MH-3 through MH-5, or any other mental health classification employed by ADC to indicate the presence of mental illness, as of January 1, 2011 and the first day of every third month thereafter." A cursory review of the documents referenced in Dr. Seiter's report is all that is necessary to readily determine that the documents are not responsive to this Request. The "Mental Health Scores by Gender and Classification spreadsheet" refers to ADC13048, which was disclosed on September 27, 2013. (And updated version of the original May 2013 data was provided to Dr. Seiter as ADC_S000556). ADC_S000281 through ADC_S000283 – Maximum Custody Males refers to the objective classification scores by location code relating to most serious current offense, discipline and institutional risk. Neither document is sufficient to show the number and names of inmates at each ADC facility and unit, based upon mental health scores or SMI designation.

  Request 25 seeks "All documents referenced in the ADC Food Service Technical Manual (rev. 7/2/10) related to 'Department Food Specifications' and

Parsons, et al. v. Ryan, et al.
January 23, 2014
Page 6

the 'Standardized Cycle Menu.'".[1] The lesson plans referenced ADC_S000362 through ADC_S000348 and ADC_S000535 through ADC_S000553, relate to Signs and Symptoms of Mental Illness and Suicide Prevention, and we are unaware of any reference to them in the ADC Food Service Technical Manual. Please direct us to any such reference.

Request 32 seeks "All ADC Post Orders, including general Post Orders that apply across ADC and facility specific Post Orders, REGARDING health and welfare checks and mental health contact on PRISONERS in ISOLATION." In addition to their General Objections, Defendants specifically objected to this request as being overbroad, unduly burdensome and vague based upon the term "ISOLATION." Defendants note that they produced a list of all general Post Orders with their Ninth Supplemental Response to Plaintiff Parsons' 1st Request for Production on January 4, 2013 as ADC055042 and that while Plaintiffs had the benefit of that list to request specific Post Orders in effect at specific locations on particular dates, Plaintiffs never clarified Request No. 32. Notably, while Plaintiffs requests are generally unlimited in scope, this request is specifically limited to "health and welfare checks and mental health contact". The Post Orders identified, Post Orders 36 and 37, relate not only to "health and welfare checks and mental health contact" but are for "mental health observation" and/or "security checks." Furthermore, in response to Request 32, Defendants nevertheless responded that they "are still attempting to locate responsive documents and will supplement this response as they are located." *See, e.g.,* Defs' Sixth Supp. Resp. to Polson's 1st RFP at 35. To the extent you consider the documents identified as ADC_S000235 through ADC_S000261 and ADC_S000557 through ADC_S000561, responsive to Request 32, the production of them to you on January 17, 2014 should be considered supplementation of that response.

Request 33 seeks "All ADC Post Orders, including general Post Orders, that apply across ADC and facility-specific Post Orders, for Watch Officers." In addition to their General Objections, Defendants specifically objected that this Request was vague and ambiguous, overly broad and unduly burdensome. Despite those objections, and prior to those Requests being propounded, Defendants produced a list of all general Post Orders by number, ADC055042 through which Plaintiffs could have, but failed to, timely clarify this request. Defendants note that ADC_S000557 through ADC_S000561 is the Post Order for the Maximum Custody Housing Unit Rover Officer who is to be in constant motion and therefore is not a "Watch Officer." Furthermore, in response to Request 32, Defendants nevertheless responded that they "are still attempting to

---

[1] We have been unable to locate any request contained in Plaintiff Polson's 1st Request for Production that could be characterized as seeking production of "all documents regarding health care training provided to health care and custody staff".

Parsons, et al. v. Ryan, et al.
January 23, 2014
Page 7

locate responsive documents and will supplement this response as they are located." *See, e.g.,* Defs' Sixth Supp. Resp. to Polson's 1st RFP at 35. Defendants' production of ADC_S000235 through ADC_S000261 on January 17, 2014 and production of ADC_S000557 through ADC_S000561 is the supplemental production of responsive documents which were not located until Dr. Seiter specifically requested them.

    C.    <u>Plaintiff Jensen's 1st Request for Production</u>.

Request 9 seeks "All draft or final POLICIES AND PRODCEDURES of CORIZON REGARDING the provision of HEALTH CARE to PRISONERS." The term "POLICIES AND PROCEDURES" as defined by Plaintiffs incorporates the term "DOCUMENTS" which Plaintiffs' definition, (and FED. R. CIV. P. 34), limits to documents and things "that is or has been in the possession, custody or control of DEFENDANTS and the ADC." In addition to their General Objections, Defendants Pratt and Ryan specifically objected that this Request "seeks to obtain Corizon documentation not in the possession of the ADC" and advised Plaintiff Jensen that if he wished to obtain such documents, his counsel "must issue a subpoena to Corizon." Defendants nevertheless produced those Corizon documents which were in ADC's possession, control, or custody. The "detailed clinical guidelines" to which Dr. Mendel refers on page 23 of his report are the Corizon proprietary Clinical Pathways documents (ADC_M000002 through ADC_M000191), which were provided by Corizon to Dr. Mendel upon his request, and to our knowledge are still not within ADC's possession, control or custody.

    D. <u>Plaintiff Rodriguez' 1st Set of Interrogatories.</u>

Interrogatory No. 5 was propounded on July 9, 2013 and sought inside temperature data and identification of documents, for the period from "June 1, 2013 through August 31, 2012, and from June 1, 2013 through the date of your response, including July 2013." On August 12, 2013, Defendants responded and objected to this Request. Plaintiffs subsequently advised the Court that their report was limited to "the summer months of 2012 and 2013", which Plaintiffs specified as being June through August. *See* 9th Notice of Discovery Dispute at 1. The random dates for which Dr. Seiter requested and received (including days in September and October 2013) fall outside of the summer period contemplated by the requests. Following the Court's order, on October 11, 2013 Defendants provided a comprehensive response, accompanied by more than 2,500 pages of temperature logs from 2012 through August 8, 2013 for Perryville. To the extent Plaintiffs believe Defendants' response was insufficient because it did not include data beyond that which would have been provided had Defendants not objected on August 12, 2012 that issue should have been timely raised via a meet and confer and such objection at this point is waived.

Parsons, et al. v. Ryan, et al.
January 23, 2014
Page 8

  E.  Plaintiff Licci's 1st Request for Production.

  Request 13 seeks "All DOCUMENTS REGARDING mental health group PROGRAMS scheduled from June 1, 2012 to the present." Plaintiffs' counsel defined PROGRAMS as meaning "a program made available to prisoners in the custody of ADC, including but not limited to rehabilitative, therapeutic, educational, vocational, substance abuse treatment, recreational, re-entry, and faith-based programs; furlough, temporary release, compassionate release, and early release programs; and prison job assignments whether or not for pay." In addition to their General Objections, on September 16, 2013 Defendants objected that this Request was duplication of Plaintiffs' prior subpoena duces tecum (dkt. 76), vague, ambiguous, overly broad and unduly burdensome. Specifically, Defendants directed Plaintiffs to the technical manuals and Post Orders produced in response to Plaintiff Parsons' 1st RFP. To the extent that Plaintiffs believe that Request 13 sought documents and things beyond those interpreted by Defendants, Plaintiffs' counsel should have raised the issue with Defendants prior to the close of fact discovery. Turning to the specific documents Dr. Seiter obtained during his inspection of ASPC-Florence, ADC_S000286 through ADC_S000291, these documents merely confirm information that Drs. Seiter and Mendel obtained from other sources and are substantively identical to documents previously produced bearing production numbers ADC084886 through ADC084903; and, ADC139521 through ADC139527, which include documents that Plaintiffs experts viewed and requested during their own tours at ASPC-Florence.

**II. Defendants do not have an obligation to produce documents cited by their experts.**

  Section II of your letter suggests that a party is obligated to produce any document referenced in a retained experts report, with service of that report. Rule 26(a)(2)(B)(ii) requires identification of the facts or data considered in forming the experts' opinion. If you contend otherwise, please provide us with that authority and supplement your expert reports to include all documents referenced or considered in preparing them, including notes of prisoner interviews along with notes of record reviews conducted at ADC facilities.

  In general, the documents identified in your January 13, 2014 letter by production number were served upon Plaintiffs' counsel on January 17, 2014 and we do not believe there is any need to discuss them further. (We note that those records identified with a PAR prefix were produced or disclosed by your co-Plaintiff the Arizona Center for Disability Law.) In terms of those documents which are not produced, but are listed for the following experts, we provide the following response based upon our understanding, but suggest that during their deposition, you may wish to confirm this with the individual experts.

  A.  Documents and things referenced by Dr. Mendel.

Parsons, et al. v. Ryan, et al.
January 23, 2014
Page 9

<u>Medical files of other prisoners</u> (p.3).  Dr. Mendel is describing that, similar to Plaintiffs' experts, in preparation for writing his report, he conducted medical record reviews during his inspections of the ADC facilities, in addition to those records provided to him from production.  This is similar to the process Plaintiffs expects undertook during their tours last summer.  Just as Plaintiffs did not did not copy all of those records, but only identified selected pages of certain records, Dr. Mendel did not obtain a copy each chart, but rather made notes.  In response to your subpoena, Dr. Mendel will provide his notes from those reviews.  Furthermore, a list of the specific inmates whose charts Dr. Mendel has reviewed at each location is attached, which includes those inmates mentioned in his report, such as ▇▇▇▇▇▇▇▇ (p23).

<u>Grievances from Lewis, Phoenix, and Yuma</u> (pp. 4, 15).  While Dr. Mendel reviewed grievances in general during his site visit, the only ones he obtained and discussed in detail were those from Lewis and Yuma.  Dr. Mendel will be producing them with his response to your subpoena.

<u>Random selection of records at Lewis and Yuma</u> (p.11).  We believe this is the list of records Dr. Mendel reviewed at these sites.  We suggest you inquire with him regarding his selection methodology.

<u>Plaintiffs' recent medical records</u> (pp.13-19).  All documents pertaining to the named Plaintiffs that had not been previously disclosed were included on the DVD-R produced with Dr. Mendel's report on December 18, 2013 as ADC_M000195 through ADC_M000206 and ADC203298 through ADC203347.  While Dr. Mendel may have also reviewed those files during his site inspections, those records were not duplicated.  Pursuant to our prior representations to you and the Court, we are, in the process of obtaining updated records for the named Plaintiffs and will provide them in Defendants' next supplemental disclosure statement, and will periodically supplement those up to the time of trial pursuant to Rule 26(e).

<u>"CareLog" Database</u> (pp.22-23) Dr. Mendel was advised as to the existence and status of the CareLog database project, but did not personally view it or have access to it.  Nevertheless, at your request, we will inquire into its reporting capabilities respond accordingly.

<u>Medical files of</u> ▇▇▇▇▇▇▇▇ <u>and</u> ▇▇▇▇▇▇▇▇ (pp. 26 and 40).  These documents were requested in Plaintiff Licci's Request for Production No. 4, and produced by Defendants as ADC160811 through ADC161109 ▇▇▇▇ and ADC205898 through ADC206231 ▇▇▇▇.

<u>Specialty referral logs</u> (p.27).  We believe these documents are logs maintained by Corizon personnel that Dr. Mendel reviewed during his site

Parsons, et al. v. Ryan, et al.
January 23, 2014
Page 10

inspections. However, they may also refer to monthly data reports provided to Corizon such as the Medical Transports report (*see, e.g.* ADC155096). Additional aggregate data relating to this point is contained in the monthly CAG/FAQ/PMBS reports (*see, e.g.* ADC155097) which were also provided to Dr. Mendel.

BJS Mortality Data and Reports (appendix p.9). While the reports are publically available from the BJS website, both they and the non-public ADC submission were produced on January 17, 2014 as ADC_M000207 through ADC_M000584.

ADC Corrections at a Glance Brochures (appendix p.9). While these documents are published monthly at www.azcorrections.gov, copies of them were produced on January 17, 2014 as ADC_S000563 through ADC_S000582.

B. Documents and things referenced by Dr. Dovgan.

Inmate Dental Records (various pages). While Drs. Mendel and Penn reviewed documents at the ADC sites, Dr. Dovgan requested that those be duplicated and assembled for his review offsite. Aside from documents previously produced at Plaintiffs' request, any and all other records were produced on January 17, 2014 as ADC_D000001 through ADC_D002491; ADC_D002527 through ADC_D002636; and, ADC_D002641 through ADC_D002656.

SPDS Patient Reports (Ex. B, p.9). These documents were produced on January 17, 2014 as ADC_D002497 through ADC_D002517.

Photographs (Ex. B, p.8-9). These documents were produced on January 17, 2014 as ADC166216 through ADC166232.

Out-to-Court dates (Ex. B, p.11) These documents were produced on January 17, 2014 as ADC_D002637 through ADC_D002640.

AIMS Movement Reports (Ex. B, p.11). These documents were produced on January 17, 2014 as ADC_D002657 through ADC_D002832.

Dental Instructional Videos (Ex. B, p.11). These videos were produced to you on September 28, 2012 as ADC018322 through ADC018324.

C. Documents and things referenced by Dr. Penn.

Medical records of SMI inmates at Perryville, Phoenix, Eyman and Florence (p.5). Dr. Penn states "*I have requested the opportunity to review* file randomly selected medical records…." He does not identify them as materials

Parsons, et al. v. Ryan, et al.
January 23, 2014
Page 11

considered in forming the opinions in his December 18, 2013 report. Those records will be provided after they have been collected for Dr. Penn's review. Should he rely upon them for any supplemental report they will be produced.

Several ADC medical records (p.32) is a reference to Plaintiffs medical records, which have previously been produced to you and are identified in Exhibit A to Dr. Penn's report at 3-4, as well as those other charts reviewed by Dr. Penn during his site inspections which are specifically identified at pages 5-6 of his expert report.

"ten records received" (p.35) is a reference to those inmates at ASPC-Yuma which Dr. Stewart reviewed and cited as examples of an ineffective medication system. Upon review, we believe this may be a typo in Dr. Penn's report, as Pablo Stewart only identified nine inmates on pages 32-33 of his report relating to his opinions relating to the efficacy of medication administration. Dr. Penn was provided and reviewed six files that Pablo Stewart reviewed at ASPC-Yuma. Some of these were previously produced in response to Plaintiff Licci's Request for Production No. 4 as ADC159526 through ADC159756 and ADC165882 through ADC165968. The remaining files were previously produced on January 17, 2014 as ADC_P000001 through ADC_P000563.

"Randomly selected medical records" (p.41) is a reference to those charts reviewed by Dr. Penn during his site inspections which are specifically identified on pages 5-6 of his report.

"inmate records" (p.68) are collective references to Plaintiffs medical records, which have previously been produced to you and are identified in Exhibit A at 3-4; the other charts reviewed by Dr. Penn during his site inspections which are specifically identified at pages 5-6 of his expert report; and the suicide autopsy reports, mortality reviews, and investigations identified in Exhibit A to Dr. Penn's report at 8-9.

"mental health watch individual logs" (p.72) is a reference to the Observation Logs which Dr. Penn examined as they were being taken in the watch areas during his site inspections. We believe Plaintiffs experts had similar opportunities to look at those logs and did in fact review such logs while on their respective tours. Similar records have previously been produced as ADC114358 through ADC115859 and ADC136318 through ADC136419. Furthermore, an additional 19 boxes of these were made available for inspection by Plaintiffs' counsel from which only ADC170446 through ADC171284 were selected by Plaintiffs for duplication.

"available records" (p.84) is, we believe, a collective reference to all documents identified in Dr. Penn's report, including Exhibit A thereto.

Parsons, et al. v. Ryan, et al.
January 23, 2014
Page 12

<u>Medical Records reviewed by Dr. Penn</u>.  As with Dr. Mendel, this is similar to the process Plaintiffs own expects undertook during their tours last summer.  Just as Plaintiffs did not did not copy all of those records, but only identified selected pages of certain records, Dr. Penn reviewed the charts on-site as of the date of his visit and did not obtain a copy each chart, but rather made notes.  In response to your subpoena, Dr. Penn will provide his notes from those reviews.

        D.       <u>Documents and things referenced by Dr. Seiter.</u>

<u>Validation study</u> (p.1) is addressed *supra* at 4.  It was also produced on January 17, 2014 as ADC_S000747 through ADC_S000837.

<u>ADC Mental Health Initiatives and Suicide Prevention Strategies</u> (p.2) is addressed *supra* at 4 and was previously disclosed by Defendants as ADC140132-ADC140148.

<u>Use of Force Packets and Videos</u> (p. 13 and Ex. 8) are documents which are specifically identified in Exhibit 2 of Dr. Seiters report at 43-45.  Those pertaining to the named Plaintiffs were previously produced bearing ADC numbers.  Dr. Seiter's random selection was made from the Use of Force SIR summaries which were previously produced as ADC089116 through ADC089379.  The randomly selected materials for the incidents at Eyman, Florence and Perryville were assigned the ADC_S numbers identified on pages 43-45 of Dr. Seiter's report, and those materials were produced to you on January 17, 2014.

Finally, as to your letter dated January 17, 2014, which contained Plaintiffs' attempt to memorialize the January 13, 2014 meet-and-confer, we see the need for clarification on several points.  We recognize that in your letter, you continually fail to distinguish between the two kinds of experts covered by Federal Rule of Civil Procedure 26(a)(2).  The distinction between these two types of experts is vital to any analysis concerning what is required of them.  During the meet and confer, we did not simply disagree that anyone other than the Drs. Penn, Mendel, Seiter and Dovgan need to provide a report.  Rather, we cited Rule 26(a)(2)(B) as the controlling authority of those experts who are required to provide a written report.  We explained that the remaining identified non-retained experts (with the exception of Mark Jansen who we agreed to de-designate) were designated as Rule 26(a)(2)(C) witnesses, as is noted in our 11th Disclosure Statement.  The Rule clearly states that these witnesses are not required to provide written reports.

Parsons, et al. v. Ryan, et al.
January 23, 2014
Page 13

We also explained that due to their designations as Rule 26(a)(2)(C) witnesses, they are to be treated as fact witnesses as to whether they are subject to deposition and document discovery. Plaintiffs exhausted their allotted fact-witness depositions and are not entitled to depose these individuals. You are correct we agreed to produce Dr. Dolny for deposition.

Regarding your request that we strike Defendants' experts' opinions where they relied on interviews with staff, we did not agree that we would strike these opinions if you agreed to strike Plaintiffs' experts' opinions that relied upon interviews with your clients. We simply asked, under your unreasonable premise, whether you would in fact strike your own experts' opinions for that reason. You refused to answer that question.

Finally, we still maintain that because this is a discovery dispute, a one-page dispute statement is required under the Court's Order. If you still believe Court intervention is appropriate, please provide us with Plaintiffs' position for the one-page statement so that we may include Defendants' portion and allow for a joint submission to the Court.

Sincerely,

*Courtney R. Cloman*

Courtney R. Cloman
For the Firm

CRC/
2855604.1

cc: Michael E. Gottfried
Kelly Dudley
Lucy Rand