Index of Exhibits to Declaration of Corene Kendrick

Exhibit 1:          Copy of the #10 sized envelopes used for outgoing correspondence to a
                    prisoner

Exhibit 2:          Copy of larger envelope used when sending numerous documents to a
                    prisoner

Exhibits 3 and 4:   Documents received from Seymour Abdullah (#40697) on January 13,
                    2014

Exhibit 5:          Excerpts of documents received from Kenneth Reed (#108264) on
                    January 31, 2014

Exhibit 6:          Copy of *Protection & Advocacy System, Inc. v. City of Albuquerque*, Case
                    No. Civ. 03-0367 CMA/RLP, Doc. 25

# EXHIBIT 1



**PRISON LAW OFFICE**
Director: Donald Specter, Attorney at Law
General Delivery
San Quentin, CA 94964-0001



Legal Mail

# EXHIBIT 2



PRISON LAW OFFICE
Donald Specter · Director
General Delivery
San Quentin, California 94964-0001



LEGAL MAIL

# EXHIBIT 3

| Inmate Name *(Last, First M.I.)* | ADC Number | Institution/Facility | Case Number |
|---|---|---|---|
| ABDULLAH, SEYMOUR J. | 40697 | Eyman-Meadows | 11/14/13 |

Ms. Katherine E. Watanabe
Assistant Attorney General
1275 W. Washington Street
Phoenix, AZ. 85007

RE: ABDULLAH v. Ryan, # CV-13-0195-PR

Dear Ms. Watanabe:

   ON this day I tried to send you a copy of my brief in this case. However, CO II Grech, mailroom person, sent it back with a Note saying you were NOT an attorney/lawyer. He did NOT say how he came to that conclusion. I don't have the money to independently send it to you.
   ON instructions from Betty Uliberri, the Contract paralegal, CO II Gretch has been messing over my "Legal Mail". He has refused to send out my legal mail to the (1) ACLU, (2) prison Law Office, and, (3) NAACP. Claim they are NOT "legal". He said he got those direction from a memo dated September 12, 2013 from Julia Erwin, Legal Access monitor, to Deputy Director Robert Patton. This memo was backed up by Dawn Northrup, ADOC general Counsel. The MEMO says it is NOT to be given to, or even shown to, prisoners.
   Is the Attorney General's guiding these actions? I'm forced to ask because this same paralegal is refusing to make copies of exhibits, confiscating exhibits to the courts and NOT making enough copies of motions to the courts. And she tell ADOC personell she's support by the Legal Access monitor and Central Office.

Thank you!                         CC; ACLU; Supreme Court,
                                   Prison Law Office,
                                   NAACP

| Signature | Date |
|---|---|
| Seymour J. Abdullah | November 14, 2013 |

UR J. ABDULLAH, #40697

yman - Meadows

x 3300, ID: B. 33

e, Az. 85132

NOT LISTED AS A LAWYER

Ms. Katherine E. Watanabe
Assistant Attorney General
1275 W. Washington Street
Phoenix, Arizona

85007



Tom Horne
Attorney General

Office of the Attorney General
State of Arizona
LIABILITY MANAGEMENT SECTION

Katherine E. Watanabe
Assistant Attorney General
(602) 542-7695
Katherine.Watanabe@azag.gov

December 4, 2013

Seymour J. Abdullah, #40697
ASPC – Eyman/Meadows Unit
P.O. Box 3300
Florence, AZ  85132

RE:    *Abdullah v. Ryan, et al.*
       **SCTMA CV2011-007759**
       **LMS11-0372/G2011-20820**

Mr. Abdullah:

      I received your letter dated November 14, 2013, in which you state that you attempted to send me a copy of your Opening Brief in the above referenced case.  I have been advised that you were unable to send me your Opening Brief because you failed to identify my status as an attorney.  CO II Gresh has been advised of my status, and so long as you identify me as an attorney with the Attorney General's Office, you should not have any further difficulty sending me legal mail.

                    Sincerely,

                    Katherine E. Watanabe
                    Assistant Attorney General

KEW/so
#3630831

# EXHIBIT 4



**ARIZONA DEPARTMENT OF CORRECTIONS**
Inmate Informal Complaint Resolution

*Complaints are limited to one page and one issue. NO ATTACHMENTS PERMITTED. Please print all information.*

| Inmate Name (Last, First M.I.) | ADC Number | Institution/Unit | Date |
|---|---|---|---|
| ABDULLAH, SEYMOUR J. | 40697 | Eyman - Meadows | 10/2/13 |

To CO III Toner, Counselor         Location: Bldg. #10

State briefly but completely the problem on which you desire assistance. Provide as many details as possible.

This morning I took a "LEGAL" package over to the mailroom to be sent out. It was addressed to: Mr. Donald Specter, Esq.
Prison Law Office
General Delivery
San Quentin, CA 94964

Mr. Grech, mailroom worker, refused to take the package, saying the "prison Law Office" was no longer considered "Legal". I asked him who had made that decision and he told me he got a memo, dated 9/12/13, from central office saying it. He pointed to a memo posted on the wall next to his desk saying that was it. He did not let me read the memo, nor would he tell me who signed it. Mr. Specter and the prison Law office is one of class attorneys in our medical lawsuit.

I pointed out that it was addressed to Mr. Donald Specter, an attorney, and pointed out that policy says LEGAL is defined as mail "to an attorney". He said he would take it up front and check the "Arizona Attorney Directory" to see if he was there, per instructions from Betty Uliberri, contract paralegal. Naturally Mr. Specter wouldn't be there because he is an attorney registered with California. CO II Grech still refused to take my "LEGAL MAIL".

This needs to be corrected, now, so I can counsel with our attorney. And I want a copy of that memo and who signed it.
cc: ACLU; prison Law office; File

Inmate Signature: Seymour J. Abdullah     Date: October 2, 2013

Have You Discussed This With Institution Staff?  ☐ Yes  ☐ No
If Yes, give the staff member Name:

Distribution: Original – Inmate
Copy – Grievance Coordinator File

802-11(e)
12/19/12

RECEIVED

# 1

Not listed in
AZ. Bar Direct.
Do not send
per paralegal

The Paralegal is Betty uliberri. She is the one that
told the mailroom guy, CO II Grech. Not to mail my legal mail
to the prison Law office, even when using Mr. Donald specter's
Name. Ms. uliberri uses ADOC's employees at will and with
the approval of the wardens and Director Ryan.



# ARIZONA DEPARTMENT OF CORRECTIONS

## Inmate Informal Complaint Response

*For Distribution: Copy of Corresponding Inmate Informal Complaint Resolution must be attached to this response.*

| Inmate Name *(Last, First M.I.)* | ADC Number |
|---|---|
| ABDULLAH, SEYMOUR J. | 040697 |

| Institution/Unit |
|---|
| ASPC, EYMAN-MEADOWS UNIT |

| From | Location |
|---|---|
| COIII T. TONER | BUILDING 10 ADMINSITRATION |

This is in response to your informal complaint dated 10/2/2013 which I received on 10/03/2013 regarding Meadows Unit Mail and Property staff not allowing you to mail out legal mail addressed to the following:

Mr. Donald Specter, Esq.
Prison Law Office
General Delivery
San Quentin, CA 94964

In your complaint to state the COII Gresh refused to receive your mail stating to you that the "Prison Law Office" was no longer considered "legal". When you inquired as to who made that decision you were told that a memo dated 9/17/2013 was received from Central Office stating the above. You go on to say that COII Gresh pointed to a memo posted on the wall next to his desk. You also state were not permitted to read it or find information regarding it. You go on to say that the mail in question was addressed to Mr. Donald Specter, who is an attorney. You cited policy regarding legal mail to COII Gresh but were unsuccessful in getting your legal mail sent out.

After speaking with you and review of available information the following was found:

Per Department Order 902 Attorney and Legal Mail are defined as follows:

ATTORNEY - An attorney-at-law licensed to practice in any state or federal jurisdiction.

Who has entered into or may in the future enter into an attorney-client relationship with the inmate or has been appointed to represent the inmate, as evidenced by court record, court order or by the inmate's written authorization

LEGAIL MAIL - Any letters to or from an inmate's attorney, or to or from a judge or to or from a court of law.

I found that the memo in question was misinterepereted by COII Gresh whom was redirected to receive your mail addressed to the above attorney.

I found that you were later permitted to send the mail in question out and you required no further assistance regarding this matter.

I consider your complaint resolved. If you wish to move forward with a formal grievance you have five (5) work days from the receipt of this response to forward your grievance along with supporting documentation to the Unit Grievance Coordinator or your COIII. End of Response.

| Staff Signature COII Toney | Date 10/18/13 |
|---|---|

Distribution:   Original – Inmate
Copy – Grievance Coordinator File

*Gwen to i/m on 10/21/13*

802-12(e)
12/19/12

# EXHIBIT 5

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Informal Complaint Resolution**

*Complaints are limited to one page and one issue.*
*NO ATTACHMENTS PERMITTED.* Please print all
information.

| Inmate Name *(Last, First M.I.)* | ADC Number | Institution/Unit | Date |
|---|---|---|---|
| Reed, Kenneth | 108264 | Yuma/Cibola | 10/15/13 |

| To | Location |
|---|---|
| CO III O. Perez | Cibola Unit, Building 4A/B |

State briefly but completely the problem on which you desire assistance.  Provide as many details as possible:

On October 4, 2013, one of my building's housing officers, a CO II M. Lara, delivered to me at my bedspace as regular mail (i.e., already opened and inspected) an envelope which was postmarked September 30, 2013, which contained a copy of a court order, and which bore a return address of:

Clerk, United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 130
401 W. Washington St., SPC-1
Phoenix, AZ 85003-2118

Taped to the back of this piece of mail — affecting to explain why it was being delivered as regular mail and not as legal mail — was a Memorandum dated September 27, 2013, from Julia Erwin, ADOC Legal Access Monitor, to Robert Patton, Offender Operation Division Director.

However, all of what that Memorandum said is irrelevant. The bottom line is that there has been no change to that section of Department Order 902, Inmate Legal Access to the Courts, which governs legal mail: Mail going to or coming from the courts must still be considered as legal mail and therefore be opened only in my presence.

I am thinking that this was an act of retaliation for my having submitted a complaint on September 26, 2013, for a piece of legal mail someone either lost or decided to intentionally with-hold from me.

PROPOSED RESOLUTION:
   A. Give me name of Yuma Complex' mailroom's "Inspector #2"; and
   B. Pay me $100.00 punitive damages to deter Inspector #2 from doing this again.

| Inmate Signature | Date |
|---|---|
| Ken Reed | 10/15/13 |

| Have You Discussed This With Institution Staff? | ☒ Yes | ☐ No |
|---|---|---|

If Yes, give the staff member Name: CO II M. Lara, CO II Castro, CO II Ortiz, Sgt. Vasquez, Sgt. Ruiz

Distribution:   Original - Inmate
                Copy – Grievance Coordinator File

802-11(e)
12/19/12

Exhibit 4

$00.000

ZIP 85003
011D11u4 064

CLERK, UNITED STATES DISTRICT COURT
SANDRA DAY O'CONNOR U.S. COURTHOUSE, SUITE 130
401 W. WASHINGTON ST, SPC-1
PHOENIX, AZ 85003-2118

OFFICIAL BUSINESS

Kenneth W Reed   # 108264
SAN LUIS-AZ-YUMA-ASPC-CIBOLA
CIBOLA UNIT
P.O. BOX 8820
SAN LUIS, AZ  85349

85:34:53:66:34  EC79-



# ARIZONA DEPARTMENT OF CORRECTIONS
## LEGAL SERVICES OFFICE
## MEMORANDUM

**TO:** Robert Patton, Offender Operation Division Director

**FROM:** Julia Erwin, ADOC, Legal Access Monitor

**THRU:** Dawn Northup, ADOC, General Counsel

**DATE:** 09/17/2013

**SUBJECT:** Arizona State Prison Complex / Operations
Legal Mail

Exhibit 1B

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Informal Complaint Response**

*For Distribution: Copy of Corresponding Inmate Informal Complaint Resolution must be attached to this response.*

| Inmate Name *(Last, First M.I.)* | ADC Number |
|---|---|
| REED, KENNETH W. | 108264 |

| Institution/Unit |
|---|
| ASPC-YUMA-CIBOLA |

| From | Location |
|---|---|
| COIII PEREZ, O. | 4A/B COIII |

This is in response to your informal complaint submitted on 10/15/2013 stating that COII Lara delivered a piece of legal mail as regular mail. I COIII Perez spoke to mail and property COII Roach and she stated that it was deliver as regular mail by mistake. COII Lara wrote an information report 13Y09-4567 regarding the open legal mail, it was also inspected by COII Lara and she gave the mail to you.

| Staff Signature | Date |
|---|---|
| COIII *[signature]* O. | 01-08-2014 |

Distribution:   Original - Inmate
                Copy – Grievance Coordinator File

Exhibit 5

# EXHIBIT 6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**PROTECTION & ADVOCACY SYSTEM, INC.,**

       Plaintiff,

vs.                                                                      No. **03-CV-367 MCA/RLP**

**THE CITY OF ALBUQUERQUE**, and
**THE BOARD OF COUNTY COMMISSIONERS**
**OF THE COUNTY OF BERNALILLO,**

       Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION FOR PRELIMINARY INJUNCTION

**THIS MATTER** comes before the Court on Plaintiff's *Motion for Preliminary Injunction* (Doc. No. 2) filed on March 25, 2003. Plaintiff's motion was fully briefed by the parties, and the Court held a hearing on Plaintiffs' motion in Albuquerque, New Mexico on June 6, 2003, at which the parties appeared through counsel. Having considered the pleadings of record, the relevant law, the arguments and evidence presented by counsel, and being otherwise fully advised in the premises, the Court **DENIES** Plaintiff's motion for the reasons stated below.

# I.  FINDINGS OF FACT AND PROCEDURAL BACKGROUND

1.   Plaintiff Protection and Advocacy System, Inc., is a non-profit New Mexico corporation designated by the Governor of the State of New Mexico to serve as New Mexico's protection and advocacy system for individuals with developmental disabilities and individuals with mental illness pursuant to the Developmental Disabilities Assistance and Bill of Rights Act (the DD Act), 42 U.S.C. §§ 15001 to 15115 (West Supp. 2003), and the Protection and Advocacy for Individuals with Mental Illness Act (the PAIMI Act), 42 U.S.C. §§ 10801 to 10851 (1994 & West Supp. 2003).  (Miller Aff. ¶¶ 2-3.)

2.   Plaintiff's statutory duties under the DD Act and the PAIMI Act include:  (1) the pursuit of legal, administrative, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the state and individuals with developmental disabilities who are or who may be eligible for treatment services, or habilitation, or who are being considered for a change in living arrangements; (2) providing information on and referral to programs and services addressing the needs of individuals with developmental disabilities; and (3) investigating incidents of abuse and neglect of individuals with developmental disabilities and individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe the incidents occurred.  See 42 U.S.C. § 15043(a)(2); 42 U.S.C. § 10805(a)(1).  (Miller Aff. ¶¶ 3-5.)

3.   In McClendon v. City of Albuquerque, No. CV 95-24 MV/DJS (D.N.M. filed Jan. 10, 1995), Plaintiff is co-counsel of record for a subclass of plaintiff-intervenors

consisting of residents of the Bernalillo County Detention Center (BCDC) with mental illness and developmental disabilities.  (Miller Aff. ¶¶ 7-8.)

4.      Defendants City of Albuquerque and Board of County Commissioners of the County of Bernalillo are parties to joint-powers agreements which determine their respective duties of funding and operating the BCDC and another correctional facility, the Metropolitan Detention Center (MDC), which recently opened and began housing detainees formerly residing at the BCDC.  (Answer ¶ 9; Ex. A, B, C to Pltf.'s Reply.)

5.      Defendants City of Albuquerque and individually named County Commissioners of the County of Bernalillo are also parties to the <u>McClendon</u> litigation.

6.      Without expressly referring to the DD Act or the PAIMI Act, the *Complaint* in <u>McClendon</u> asserts a broad array of claims under the United States Constitution and various statutes and regulations regarding overcrowding and other conditions at the BCDC, including failure to provide proper psychological and rehabilitative services, and obstructing external investigations of allegations regarding abuse and denial of rights.  (No. CV 95-24, Doc. No. 1, ¶¶ 3.34, 3.43, 3.45, 3.47.)

7.      Plaintiff-Intervenors' *Amended Complaint-in-Intervention* in <u>McClendon</u> asserts claims under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 to 12213; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; the substantive and procedural components of the Due Process Clause of the Fourteenth Amendment to the United States Constitution; the Equal Protection Clause of the Fourteenth Amendment (with respect to both gender and disability); the right of access to the judicial process under the First, Fifth, Sixth,

and Fourteenth Amendments; and the right to be free from cruel and unusual punishment under the Eighth Amendment. The *Amended Complaint-in-Intervention* also asserts claims regarding the BCDC's alleged failure to provide proper services to persons with mental, behavioral, and developmental problems and denial of access to resources and information necessary to challenge the conditions of such persons' confinement. (No. CV 95-24, Doc. No. 150, ¶¶ 103, 107, 142-150, 156.) The *Amended Complaint-in-Intervention* includes a request for injunctive relief "directing Defendants to immediately propose and properly implement a plan to . . . appropriately screen and evaluate for mental and/or developmental disabilities all people brought to the jail," to "ensure that all people with mental and/or developmental disabilities housed in the jail receive appropriate treatment and services, including adequate discharge planning, while there," and to "ensure that classmembers are assured meaningful and effective access to the judicial system and to due process of law whenever Defendants act upon their liberty or property interests." (No. CV 95-24, Doc. No. 150.)

8.     The <u>McClendon</u> litigation was certified as a class action (No. CV 95-24, Doc. No. 237, 257), and the parties to that litigation entered into a series of settlement agreements which provided for the resolution of most of the claims of the class and subclass. (No. CV 95-24, Doc. No. 292, 289, 288, 256, 255, 254, 116, 115.)

9.     The settlement agreement pertaining to the subclass of individuals with mental illness and/or developmental disabilities includes the following terms:

[II.]  D.  The Defendants hereby agree to assure that the expert retained by Plaintiff Intervenors, Dr. Joel Dvoskin, shall have reasonable access to BCDC at least monthly during the next twelve months and that Dr. Dvoskin shall have unrestricted access to any area, any documents not protected by a recognized evidentiary privilege or by applicable confidentiality laws, and to mental health staff and other relevant staff. . . .

.  .  .

[III.]  J.  Defendants shall implement, or cause to be implemented, record keeping practices regarding mediation, evaluation, treatment planning, assessment and evaluation that are consistent with prevailing professional standards.

K.  Defendants shall require UNMHSC to design an adequate quality assurance system regarding psychiatric and other mental health and developmental disability services.  The quality assurance system shall be designed no later than February 1, 1997, and implemented promptly thereafter.

1.  Documents designed to assess the adequacy of the quality of such care shall be generated on a regular basis and, upon request, copies provided to Dr. Dvoskin for assessment and comment, until the quality assurance system is functioning in a manner consistent with prevailing professional standards.

.  .  .

[IV.]  B.  Defendants shall provide an adequate system for investigating residents' allegations of abuse or mistreatment within the jail which is adequate and consistent with prevailing standards.

1.  Adequate investigations by qualified investigators shall be initiated whenever a resident alleges abuse or mistreatment within the jail. The City's independent counsel shall receive notice of all written allegations of abuse or mistreatment made by any resident, and shall oversee the investigations, reporting his findings based upon the investigation.  Reports regarding allegations of abuse or mistreatment shall be provided to quality assurance staff and reported on by the quality assurance system.

.  .  .

    F. Defendants shall comply with the terms of this Settlement Agreement at all temporary and overflow facilities operated by Defendants. However, this Settlement Agreement shall not apply to any permanent facility opened after the opening of the interim facility on the Westside.

    . . .

    The court shall retain continuing jurisdiction to review, modify and enforce this settlement agreement. . . .

(No. CV 95-24, Doc. No. 256.)

  10. The parties to the <u>McClendon</u> litigation also agreed upon the terms of a *Protective Order Regarding Confidentiality* which provided that, subject to the confidentiality conditions spelled out in the order,

> Defendants shall allow counsel for plaintiffs and for plaintiff intervenors to review and obtain photocopies of any and all records that are maintained by any agent of the Bernalillo County Detention Center, including the Medical Services Unit, the Psychiatric Services Unit and the University of New Mexico, concerning any person who is or was a member of the class or subclass in this action. No action by a classmember or subclass member shall be required before releasing the information to plaintiffs' or plaintiff intervenors' counsel. Notwithstanding other provisions of state or federal law, information to be released may include information regarding drug abuse, alcohol abuse, infection with the Human Immunodeficiency Virus, or Sickle Cell Anemia. Persons with knowledge about the records and the issues they describe are also authorized to discuss the classmember and the information in his or her records with counsel for plaintiffs or plaintiff intervenors.

(No. CV 95-24, Doc. No. 254.)

  11. The *Protective Order Regarding Confidentiality* was supplemented by a subsequent order regarding records of the University of New Mexico, which contains similar language. (No. CV 95-24, Doc. No. 292.)

12.     After notice of the parties' settlement agreements was provided to the class members, the <u>McClendon</u> Court entered a *Corrected Order Approving Compromise & Settlement Agreement & Final Judgment of Dismissal with Prejudice* on August 12, 1997, which provides, in relevant part, that:

> all class and subclass members shall be, and hereby are, barred from prosecuting against Defendants any action for declaratory or injunctive relief, whether it be a class action or otherwise, with respect to, based on, or arising from, or for any of the acts, omissions, facts, events, matters, transactions, or occurrences complained of, related to, arising from or referred to in Parts I and III of the Complaint and Plaintiff-Intervenors' Amended Complaint-in-Intervention in this action, including but not limited to the operation, policies or procedures of the Bernalillo County Detention Center, or arising out of the subject matter of this action, which might have been asserted in this action.

(No. CV 95-24, Doc. No. 289.)

13.     Despite the settlement agreements approved in the <u>McClendon</u> Court's *Corrected Order* (No. CV 95-24, Doc. No. 289), and the recent opening of the MDC, the <u>McClendon</u> litigation remains pending due to allegations that the parties have violated the terms of their settlement agreement and/or the Court's rulings in that case.  In particular, there is a pending motion in <u>McClendon</u> entitled *Plaintiff-Intervenors' Motion for an Order to Show Cause and for Further Remedial Relief* which alleges that Defendants are violating numerous provisions of the parties' prior settlement agreement, including those provisions relating to "[i]nadequate investigations of allegations of abuse and of deaths" and "[i]nadequate access to courts."  (No. CV 95-24, Doc. No. 366.)

14.     There also remain ongoing discovery disputes in the <u>McClendon</u> litigation, as evidenced by the *City of Albuquerque's Motion for a Protective Order*, the *Order* by United

States Magistrate Judge Don Svet granting that motion, the *Objections to Magistrate Judge Don Svet's July 10, 2002 Order Granting City of Albuquerque's Motion for Protective Order*, and *Plaintiff-Intervenors' Memorandum in Support of Motion to Compel Production of Documents from Defendants*. (No. CV 95-24, Doc. No. 377, 381, 383, 401.)

15. The ongoing disputes in the McClendon litigation also encompass the issue of whether the scope of that litigation should be expanded to cover the MDC as well as the BCDC. (No. CV 95-24, Doc. No. 370, 394, 395.) The parties represented at the hearing on June 6, 2003, that they scheduled a mediation in the McClendon litigation for Friday, June 13, 2003, to address this very issue.

16. David Otero and Kenneth Ward are individuals with developmental disabilities and/or mental illness who are members of the subclass that Plaintiff represents in the McClendon litigation. These individuals resided at BCDC and reported alleged abuse by BCDC correctional officers between February and April 2002. Messrs. Otero and Ward have authorized Plaintiff to access their records at BCDC, and Plaintiff has determined that they are eligible for Plaintiff's services under the DD Act and/or the PAIMI Act. (Otero Aff.; Ward Aff.; Miller Aff. ¶ 9.)

17. Plaintiff received reports that two other individuals, whom they refer to as "T.F." and "R.M.," committed suicide while residing at BCDC during the time period relevant to Plaintiff's *Complaint* in this action. These deceased individuals were members of the class or subclass that is represented in the McClendon litigation, and Plaintiff has

determined that there is probable cause to believe they were subject to abuse or neglect while residing at BCDC. (Miller Aff. ¶ 10.)

18.     Prior to filing the *Complaint* in this action, Plaintiff requested that counsel for Defendants provide Plaintiff with the results of the investigation of the deaths of T.F. and R.M. as well as the results of the investigations of the alleged abuse of David Otero and Kenneth Ward. (Miller Aff. ¶¶ 10-12; Ex. E, F, H to Pltf.'s Mem.)

19.     The results of these investigations also are the subject of some of the pending discovery motions in the McClendon litigation noted in Paragraph 13 above. (No. CV 94-24, Doc. No. 377, 381, 383, 401.)

20.     Citing confidentiality concerns and the rulings of the McClendon Court, neither Defendants nor their counsel have produced the requested investigation results as of the date of the hearing in this matter on June 6, 2003. (Miller Aff. ¶ 13; Ex. G, I to Pltf.'s Mem..)

21.     Plaintiff also has requested that its staff be permitted to access the MDC in order to carry out its statutory duties under the DD Act and the PAIMI Act. (Miller Aff. ¶ 16.)

22.     As of the date of the hearing in this matter on June 6, 2003, Defendants have denied Plaintiff's request for access to the MDC on the grounds that it has been Defendants' policy and practice not to house detainees in need of acute psychiatric diagnostic/evaluative/treatment services, psychiatric medications, or counseling at the MDC. (Yutzy Aff. ¶ 8-12; Miller Aff. ¶ 16.)

-9-

23.     At the hearing on June 6, 2003, the parties stipulated that Defendants intended to begin transferring detainees who are under the care of Defendants' psychiatric staff to the MDC beginning on June 7, 2003, and that the transfer of all residents of the BCDC to the MDC is expected to be completed within the next few weeks.

24.     At the hearing on June 6, 2003, the parties represented that the issue of Plaintiff's access to the MDC may be addressed at a mediation in the <u>McClendon</u> case that was scheduled for Friday, June 13, 2003.

## II.    <u>LEGAL ANALYSIS AND CONCLUSIONS OF LAW</u>

Both parties have been afforded the opportunity to present evidence and brief the issues raised by Plaintiffs' motion.  Accordingly, the procedural requirements for issuing a temporary restraining order under Fed. R. Civ. P. 65(b) do not apply in this case.  Instead, the Court focuses its inquiry on whether there are grounds for issuing a preliminary injunction pursuant to Fed. R. Civ. P. 65(a).

In the absence of a specific statute that "clearly provides otherwise," the Court evaluates Plaintiff's motion according to traditional equitable principles governing the issuance of preliminary injunctions.    <u>United States v. Oakland Cannabis Buyers' Cooperative</u>, 532 U.S. 483, 496 (2001).  These equitable principles, however, do not provide the Court with the authority "to override Congress' policy choice, articulated in a statute, as to what behavior should be prohibited."  <u>Id.</u> at 497.  Thus, when asked to enforce a statutory mandate, the Court only applies equitable principles in the context of considering the

-10-

advantages and disadvantages of employing the extraordinary remedy of a preliminary injunction over other available methods of enforcing the statute.  See id. at 497-98.

In order to show that the extraordinary remedy of a preliminary injunction is preferable to other methods of enforcement, "[a] party seeking an injunction from a federal court must invariably show that it does not have an adequate remedy at law."  Northern Cal. Power Agency v. Grace Geothermal Corp., 469 U.S. 1306, 1306 (1984) (citing Hillsborough v. Cromwell, 326 U.S. 620, 622 (1946)); accord Sweeten v. Sneddon, 463 F.2d 713, 715 (10th Cir. 1972); Robbins v. Budke, 739 F. Supp. 1479, 1484 (D.N.M. 1990).  In order to establish grounds for preliminary injunctive relief, a movant also must show that it will suffer irreparable injury unless the injunction issues; that the threatened injury to the movant outweighs the harm the injunction may cause to others; that the injunction, if issued, would not be adverse to the public interest; and that there is a substantial likelihood that the movant will succeed on the merits.  See Elam Constr., Inc. v. Reg'l Transp. Dist., 129 F.3d 1343, 1346-47 (10th Cir. 1997); 13 James Wm. Moore, Moore's Federal Practice § 65.22[1][a], at 65-41 to 65-42 (3d ed. 2003).  The burden is on the movant to show that these equitable factors weigh in its favor, see Automated Mktg. Sys, Inc. v. Martin, 467 F.2d 1181, 1183 (10th Cir. 1972), and such a showing must be "clear and unequivocal," SCFC ILC, Inc. v. VISA USA, Inc., 936 F.2d 1096, 1098 (10th Cir. 1991).

When the loss of basic rights guaranteed by the United States Constitution is at stake, a movant's burden may be lessened with respect to three of these factors.  This is so because the loss of basic rights guaranteed by the United States Constitution is presumed to (1)

constitute irreparable injury, (2) outweigh any harm to a defendant that may arise from the inability to engage in constitutionally suspect activity, and (3) be adverse to the public interest. See generally Elrod v. Burns, 427 U.S. 347, 353 (1976) (plurality opinion); ACLU v. Johnson, 194 F.3d 1149, 1163 (10th Cir. 1999); BJS No. 2, Inc., v. City of Troy, 87 F. Supp. 2d 800, 818 (S.D. Ohio 1999); Playboy Enter. v. Meese, 639 F. Supp. 581, 587 (D.D.C. 1986). Consequently, these three factors generally would weigh in favor of granting a preliminary injunction if the movant carries its burden of showing a substantial likelihood that it will prevail on the merits of such a constitutional claim.

In this case, Plaintiff requests two specific forms of preliminary injunctive relief.[1] First, Plaintiff's motion "requests a preliminary injunction requiring Defendants to identify the types of records and information that exists pertaining to the investigations of the deaths of R.M. and T.F. and the allegations of abuse of Kenneth Ward and David Otero, and to produce those documents so that [Plaintiff] may copy them." (Mot. at 1.) Second, Plaintiff's motion "requests a preliminary injunction enjoining Defendants from refusing [Plaintiff] access to the Metropolitan Detention Center . . . and its residents." (Mot. at 1.) The Court addresses each of these requests separately.

---

[1]In its reply brief, Plaintiff states that it also seeks "a declaratory judgment that it is not only entitled to access the MDC but that it is also entitled to access records at the MDC." (Reply at 11.) As the *Motion for Preliminary Injunction* contains no specific request for access to MDC records, however, the Court declines to address that issue in the context of preliminary injunctive relief.

A.     **BCDC Records Regarding R.M., T.F., David Otero, and Robert Ward**

Plaintiff asserts that it is substantially likely to prevail on the merits of its request for

BCDC records regarding the four individuals named above because the DD Act and the

PAIMI Act provide it with a statutory right to these records. The Court assumes for purposes

of analyzing *Plaintiff's Motion for Preliminary Injunction* that Plaintiff has the statutory

authority, and has satisfied all of the statutory prerequisites, to access the records its seeks

concerning the four individuals at issue here. See 42 U.S.C. § 15043(B), (I), (J)(i) (providing

authority for access to records under the DD Act); 42 U.S.C. §§ 10805(a)(1)(A), (a)(4)

(providing authority for access to records under the PAIMI Act). The Court also assumes

for purposes of analysis that the information Plaintiff seeks in its motion falls under the

statutory definitions of the term "record." See 42 U.S.C. § 15043(c) (defining "record"

under the DD Act); 42 U.S.C. § 10806(b)(3) (defining "record" under the PAIMI Act);

Center for Legal Advocacy v. Hammons, 323 F.3d 1262, 1265-66 (10th Cir. 2003) (similar).

Thus, the question before the Court is not whether Plaintiff has a statutory right to access

records under the DD Act and the PAIMI Act, but whether the equities weigh in favor of

enforcing that right by means of the preliminary injunctive relief that Plaintiff seeks in this

case. See Oakland Cannabis Buyers' Cooperative, 532 U.S. at 496-98.

The status of the McClendon litigation is highly relevant to this inquiry because the

record indicates that, in its capacity as co-counsel for the subclass of plaintiff-intervenors in

that case, Plaintiff already has entered into a series of agreements with Defendants that

specifically address the issues of investigatory responsibilities as well as access to records

and information relating to the members of the subclass. (No. CV 95-24, Doc. No. 254, 256, 292.) In conjunction with Plaintiff's efforts to enforce these agreements on behalf of the McClendon subclass, Plaintiff also has made a series of discovery requests in the McClendon litigation, which remain pending and which encompass the very same records that Plaintiff is seeking in its *Motion for Preliminary Injunction* in this case. (No. CV 95-24, Doc. No. 377, 381, 383, 401.)

It follows that Plaintiff is not entitled to preliminary injunctive relief in this case because Plaintiff has not met its burden of showing that it lacks an adequate remedy at law. See Northern Cal. Power Agency, 469 U.S. at 1306 ("[a] party seeking an injunction from a federal court must invariably show that it does not have an adequate remedy at law."). Such a showing is precluded by the fact that Plaintiff is simultaneously pursuing a separate action (in McClendon) to enforce the provisions of its previous agreements with Defendants regarding, among other things, access to records and information. Plaintiff has not demonstrated that such remedies from the McClendon Court are unavailable or merely speculative. Cf. Sweeten, 463 F.2d at 715 (concluding that an individual has an adequate remedy at law when the disputed issue "can be resolved as readily in the criminal case as in a suit for an injunction").

The McClendon settlement agreement for the subclass of individuals with mental illness and/or developmental disabilities expressly provides that: "The court shall retain continuing jurisdiction to review, modify and enforce this settlement agreement." (No. CV 95-24, Doc. No. 256.) Under the particular circumstances of this case, the Court considers

the remedies available to Plaintiff under the framework established in <u>McClendon</u> to be analogous to the administrative remedies that a party typically must exhaust in order to show that preliminary injunctive relief is warranted in this context. "Intervention by the [federal] courts preceding exhaustion of available administrative remedies should be exercised only under circumstances where the facts clearly establish that fundamental rights and interests of the private party are being harmed and cannot be adequately redressed by permitting the administrative process to pursue its course." <u>Franks v. Nimmo</u>, 683 F.2d 1290, 1295 (10th Cir. 1982); <u>see generally</u> 13 James Wm. Moore, <u>supra</u>, § 65.06[4], at 65-23 to 65-24 (discussing similarities between the rule requiring exhaustion of administrative remedies and the rule that a plaintiff may not obtain injunctive relief if an adequate remedy at law is available).

In addition, the <u>McClendon</u> Court's order approving the settlement agreement in that case specifically provides that:

> all class and subclass members shall be, and hereby are, barred from prosecuting against Defendants any action for declaratory or injunctive relief, whether it be a class action or otherwise, with respect to, based on, or arising from, or for any of the acts, omissions, facts, events, matters, transactions, or occurrences complained of, related to, arising from or referred to in Parts I and III of the Complaint and Plaintiff-Intervenors' Amended Complaint-in-Intervention in this action, including but not limited to the operation, policies or procedures of the Bernalillo County Detention Center, or arising out of the subject matter of this action, which might have been asserted in this action.

(No. CV 95-24, Doc. No. 289.) The *Amended Complaint-in-Intervention* filed in <u>McClendon</u>, as well as the settlement agreement in that case, already address issues pertaining to investigatory responsibilities and access to records and information regarding

individuals with mental illness and/or developmental disabilities. (No. CV 95-24, Doc. No. 150, 256.) Thus, the declaratory and injunctive relief requested in this case appears to be based on, or to arise from, the broad category of acts, omissions, facts, events, matters, transactions, or occurrences complained of, related to, arising from, or referred to in the *Amended Complaint-in-Intervention*.

It further appears that, due to its attorney-client relationship with the plaintiff-intervenors in McClendon, Plaintiff is in privity with those plaintiff-intervenors such that it is bound by the parties' agreements in that case. Cf. DeLisle v. Avallone, 117 N.M. 602, 605-06, 874 P.2d 1266, 1269-70 (Ct. App. 1994) (concluding that an attorney was in privity with his client for purposes of applying the doctrine of collateral estoppel); Martin v. Davies, 917 F.2d 336, 339 (7th Cir. 1990) (concluding that a consent decree resulting from a class action involving a class of pretrial detainees was binding on pretrial detainees who were taken into custody after the decree was signed). It follows that Plaintiff has not demonstrated that it is substantially likely to prevail on the merits of its records request because the present action (as it relates to BCDC records) appears to be barred by the preclusive language in the McClendon Court's order approving the parties' settlement agreement in that case.

In light of the framework for resolving disputes of this nature that already exists by virtue of the McClendon case, the Court concludes that the other factors relevant to determining the propriety of granting preliminary injunctive relief weigh in favor of Defendants. Accordingly, the Court denies Plaintiff's request for a preliminary injunction

regarding records and information that exists pertaining to the investigations of the deaths

of R.M. and T.F., and the allegations of abuse of Kenneth Ward and David Otero.

### B.    Access to the Metropolitan Detention Center

*Plaintiff's Motion for Preliminary Injunction* also includes a request for access to the

MDC and the individuals housed therein who may be eligible for Plaintiff's services under

the PAIMI Act and/or the DD Act.  Again, the Court assumes for purposes of analyzing the

*Motion for Preliminary Injunction* that Plaintiff has a statutory right, and had satisfied all

statutory prerequisites, to access facilities under the DD Act and the PAIMI Act.  See 42

U.S.C. § 15043(a)(1)(H) (listing statutory prerequisites for access to facilities under the DD

Act); 42 U.S.C. § 10805(a)(3) (listing statutory prerequisites for access to facilities under the

PAIMI Act).  The Court also assumes for purposes of analysis that all areas of the MDC fall

within the statutory definitions of the term "facilities."  See 42 U.S.C. § 10802(3) (defining

"facilities" under the PAIMI Act to include "jails and prisons");   42 C.F.R. § 51.2 (2002)

(specifying that the term "jails and prisons" in the PAIMI Act includes "all general areas as

well as special mental health or forensic units"); Office of Protection and Advocacy for

Persons with Disabilities v. Armstrong, _____ F. Supp. _____, No. 3:01CV1118 (DJS), 2003

WL 21182648, at *9 (D. Conn. Mar. 31, 2003) (similar).

The Court also notes that these statutory provisions have constitutional underpinnings

in the right of individuals to meaningful access to the courts, as well as Plaintiff's  First

Amendment right "to communicate and consult with the population it was created to serve."

Robbins, 739 F. Supp. at 1485 (citing United Transp. Union v. Mich. Bar, 401 U.S. 576,

-17-

580-81 (1971)); cf. NAACP v. Button, 371 U.S. 415, 428-29 (1963) ("[T]he activities of the NAACP, its affiliates and legal staff shown on this record are modes of expression and association protected by the First and Fourteenth Amendments which Virginia may not prohibit, under its power to regulate the legal profession, as improper solicitation of legal business."); In re Primus, 436 U.S. 412, 424-26 (1978) (similar).

The question presently before the Court, however, is not whether these statutory and constitutional rights exist in this context, but whether the preliminary injunctive relief that Plaintiff seeks in this case is an equitable means of enforcing these rights at this time. See Oakland Cannabis Buyers' Cooperative, 532 U.S. at 496-98. Again, the status of the McClendon litigation is highly relevant to this inquiry.

With respect to the issue of access to MDC, it is less clear that this action would be barred by prior rulings and settlement agreements in McClendon because the McClendon settlement agreement regarding the subclass of persons with mental illness and/or developmental disabilities provides that: "this settlement agreement shall not apply to any permanent facility opened after the opening of the interim facility on the Westside," and the MDC appears to qualify as such a "permanent facility." (No. CV 95-24, Doc. No. 256.) On the other hand, the McClendon settlement agreement also provides that: "The Court shall retain continuing jurisdiction to review, modify and enforce this settlement agreement." And, in practice, Plaintiff is presently using the framework for dispute resolution established in McClendon to seek and obtain rulings on whether the Court in that case should exercise continuing jurisdiction with respect to issues which touch upon the MDC. (No. CV 95-24,

Doc. No. 256, 370, 394, 395.)  In particular, the parties represented at the hearing that the issue of Plaintiff's access to the MDC was scheduled for a mediation in the McClendon case on Friday, June 13, 2003.

At this juncture, the Court determines that Plaintiff has not met its burden of showing that it does not have an adequate remedy at law with respect to the issue of access to the MDC.  The Court further determines that the equities weigh in favor of requiring Plaintiff to exhaust the remedies available under the framework established in the McClendon litigation before preliminary injunctive relief can be granted in this case.  Cf. Northern Cal. Power Agency, 469 U.S. at 1306 ("[a] party seeking an injunction from a federal court must invariably show that it does not have an adequate remedy at law."); Franks, 683 F.2d at 1295 (discussing analogous requirement of exhaustion of administrative remedies); see generally 13 James Wm. Moore, supra, § 65.06[4], at 65-23 to 65-24 (discussing similarities between the rule requiring exhaustion of administrative remedies and the rule that a plaintiff may not obtain injunctive relief if an adequate remedy at law is available).  For these reasons, Plaintiff's *Motion for Preliminary Injunction* must be denied.

## III.  CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff has not clearly established that it lacks an adequate remedy at law or that the equitable factors discussed above weigh in favor of granting a preliminary injunction in this case.  Therefore, Plaintiff's *Motion for Preliminary Injunction* must be denied.  This conclusion makes it unnecessary

for the Court to address whether Plaintiff should be required to post a bond or other security under Fed. R. Civ. P. 65(c).

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion for Preliminary Injunction* (Doc No. 2) is **DENIED**.

**SO ORDERED,** this 18th day of June, 2003, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge