Daniel Pochoda (Bar No. 021979)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: dpochoda@acluaz.org
          jlyall@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-NVW (MEA) <br><br> **PRISONER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ORDER PROHIBITING DEFENDANTS FROM INTERFERING WITH LEGAL MAIL BETWEEN CLASS COUNSEL AND CLASS MEMBERS** |

78204-0001/LEGAL29263577.1

## I. INTRODUCTION

One undisputed fact lies at the heart of this motion: Defendants have singled out class counsel in this case (as well as two other civil rights organizations currently representing ADC prisoners) for restrictions on legal correspondence that do not appear in ADC policy and do not apply to any other attorneys. Defendants admit that, pursuant to these unique restrictions, ADC staff have opened and read confidential attorney-client correspondence between class counsel and the class members this Court has appointed them to represent.

This is not a case that turns on individual episodes of ADC staff intruding into confidential attorney-client correspondence, although there are plenty of those described in Plaintiffs' Motion and supporting evidence. Instead, the challenged practices represent the implementation of a statewide policy memo, approved by ADC's General Counsel and stoutly defended by ADC's counsel in this litigation, that has the primary purpose of invading the attorney-client relationship between the plaintiff class and class counsel. An isolated incident in which a prison staff member violates policy, or an inadvertent intrusion into legal mail, may not rise to the level of a constitutional violation. But the pattern and practice shown here—and its grounding in the September 17, 2013 statewide memo (Doc. 737, Ex. 2)—are something much more than isolated, sporadic, mistaken, or inadvertent episodes.

Based upon these undisputed facts, Plaintiffs request that the motion be granted, and that the Court order Defendants to rescind the statewide memo and all similar directives, and treat correspondence to or from class counsel as they treat all other legal mail.[1]

---

[1] Defendants argue that Plaintiffs request that this Court overturn the entire ADC legal mail policy, and point to the proposed order (Doc. 736-1) submitted by Plaintiffs. [Doc. 765 ("Defs' Br.") at 23] In an abundance of caution, and to make clear that Plaintiffs seek the rescission of the statewide memo, Plaintiffs submit a revised proposed order herewith.

78204-0001/LEGAL29263577.1

## II. DEFENDANTS' ADMISSIONS SHOW THE NEED FOR THIS COURT TO ENTER AN ORDER REGARDING THE STATEWIDE MEMO

Defendants admit they issued a statewide memo that singles out legal mail to or from class counsel, the NAACP, and the Arizona Justice Project for special treatment. [Doc. 765 ("Defs' Br.") at 5] ■

■ Defendants admit that the statewide memo states that mail arriving from class counsel "without an individual specific attorney as part of the return address is not considered Legal Mail" for confidentiality purposes. [Defs' Br. at 5 (emphasis omitted)] Yet Defendants do not dispute Plaintiffs' contention that ADC's written mail policy, Department Order 902, does not require the name of an individual attorney be listed on the envelope of legal mail or the named attorney be labeled as a licensed attorney. [Defs' Br. at 7-8, 24] Rather, Defendants cite back to the statewide memo—not the policy—as the basis for the new requirement, and argue the memo "clarified the existing definition of legal mail" (*Id*. at 8), though this clarification apparently only applies to the listed groups.

Defendants admit that ■

■ Yet despite this damning admission, Defendants admit that mail from the Prison Law Office still was "processed as non-legal mail" because some envelopes' return address "did not indicate that Donald Specter was an attorney" but instead identified him as "Director." [Defs' Br. at 12, 15][2]

---

[2] The Prison Law Office uses two types of envelopes when writing prisoners in jails, juvenile halls, and prisons. One, used for most correspondence, has "Donald Specter, Attorney at Law" printed in the return address. [Declaration of Corene Kendrick, filed herewith ("Kendrick Decl.") ¶ 9, Ex. 1] Larger envelopes are printed with "Donald Specter, Director" in the return address. [*Id*., Ex. 2] Both envelopes are labeled "Legal Mail." [*Id*.] The Prison Law Office receives anywhere from 60 to 300 letters a day from California prisoners in jails, juvenile halls and prisons, private California prisons in Arizona, and ADC institutions, and sends out an equivalent number of responses [*Id*. ¶ 8].

The unique requirements Defendants have imposed on class counsel, in conjunction with ADC's method of verifying the status of attorneys listed on legal mail, have resulted in legal mail being treated erroneously as regular mail, and will continue to have this effect in the future.[3] Defendants state that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This approach is flawed for several reasons.

First, not all attorneys are licensed in the jurisdiction listed in their return address. For example, Plaintiffs' counsel David Fathi has an address in the District of Columbia, but he is a member of the Washington state bar. If mailroom staff searched for him on the D.C. bar's website, they would not find him listed there. Thus, under the current system, mail from Mr. Fathi would be processed as non-legal mail.[4] Second, the system places a

---

To the knowledge of Prison Law Office staff, no other prison, jail, or juvenile system except ADC has ever taken the position that envelopes printed with "Donald Specter, Director" are non-legal mail which must be opened outside the presence of prisoners and read by staff, simply by virtue of the word "Director" rather than the word "Attorney" on the return address. [*Id.* ¶ 11] If this were a situation in which writing "Attorney at Law" on the return address would remediate the interference with legal mail, counsel would do it. But the evidence shows that even when "Attorney at Law" is written on envelopes, the letters are treated as non-legal mail.

[3] The improper treatment of legal mail is not limited to the Prison Law Office. Legal mail sent to and from the ACLU has been opened and read. [*See* Doc. 737 ¶¶ 11, 23, 25, Ex. 9, Ex. at 2, Ex. 24 at 1-2]
After the filing of the instant motion, Plaintiffs' counsel received copies of a grievance response written by ADC staff showing that the statewide memo was incorrectly relied upon as the basis for opening and inspecting a letter sent by the Clerk of this Court to a prisoner [Kendrick Decl. ¶¶ 16-17, Ex. 5] Additionally, since the filing of the motion, Plaintiffs received a copy of a letter sent to a prisoner by an attorney for the state acknowledging that a letter he tried to send her, addressed to her by name and with the title "Assistant Attorney General," was rejected as legal mail because the mailroom staff said there was no record of her being an attorney. [*Id.* ¶¶ 13-14, Ex. 3]

[4] Similarly, Defendants state that "Bridgette Amiri," an attorney to whom Mr. Abdullah addressed legal mail he tried to send to the ACLU of Arizona, is not licensed in Arizona. [Defs' Br. at 9, n.3] This is correct, but illustrates the shortcomings of Defendants' system. Mr. Abdullah misspelled the name of Brigitte Amiri, an attorney with the national ACLU, licensed in New York, who worked *pro hac vice* with the ACLU of Arizona on *Doe v. Arpaio*, 214 Ariz. 237, 150 P.3d 1258 (Ct. App. 2007), a challenge

1  high burden on prisoners with developmental or learning disabilities who may not spell
2  attorneys' names correctly.  Third, the system risks screening out legitimate legal mail
3  because mailroom staff inspecting the letter cannot read the handwriting on the envelope,
4  and, for example, interprets a K to be a H. [Defs' Br. at 9][5]

5  Defendants argue the statewide memo was necessary because ▄▄▄▄▄
6  ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ This raises the question
7  how Defendants can determine class counsel's mail to prisoners is not legal in nature
8  without reading it, but in any event this argument is unavailing.  *See Muhammad v.*
9  *Pitcher*, 34 F.3d 1081, 1083-84 (6th Cir. 1994) (rejecting prison's defense of opening
10 legal mail from Attorney General's office because the actual piece of mail was not
11 confidential).  And every letter sent by class counsel to a prisoner is addressed to an
12 individual by name and ADC number, and is sent in response to a letter from that
13 prisoner, or based on a third party notifying class counsel that the prisoner needs legal
14 assistance or has information that could assist in the litigation.  [Pochoda Decl. ¶ 3;
15 Kendrick Decl. ¶ 7]

16 Defendants admit that since April 2012, Plaintiffs' counsel and prisoners
17 repeatedly complained about intrusion into the confidentiality of legal mail between class
18 members and class counsel, including reading by prison staff.  [Defs' Br. at 2, 5, 8]
19 Defendants admit that Plaintiffs' counsel wrote them at least 13 times since May 2012 and
20 several times requested meet and confers to attempt to address concerns regarding
21 interference with legal mail.  [*Id.* at 8-9]

---

24 to Maricopa County's restriction on female prisoners' access to abortion. [Declaration of Daniel Pochoda ("Pochoda Decl.") ¶¶ 8-9]

26 [5] Defendants argue Mr. Abdullah's outgoing mail to Ms. Kendrick was treated as non-legal mail because there is no "Corene Hendrick" listed on the California State Bar's website. [Defs' Br. at 9]  This makes no sense.  The envelope (Doc. 737, Ex. 10) had Ms. Kendrick's name spelled correctly, as it was written by her assistant. [Kendrick Decl. ¶¶ 11-12]  Mr. Abdullah only misspelled Ms. Kendrick's name in his November 14, 2013 declaration. [Doc. 737, Ex. 9]

Defendants instead respond with declarations by staff denying this wrongdoing, or insinuating that prisoner declarants are lying or forging documents, but this *at most* creates a controverted question of fact.[6]  *See United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 858 (9th Cir. 1992) ("Where factual questions not readily ascertainable from the declarations of witnesses or questions of credibility predominate, the district court should hear oral testimony); *see also Buffalo v. Sunn*, 854 F.2d 1158, 1165 (9th Cir. 1988) (holding the same in the context of a habeas corpus petition). Defendants act as though their contrary declarations settle the matter.  [Defs' Br. at 8, 9, 12].  They do not.

## III. THE COURT HAS THE AUTHORITY TO ISSUE AN ORDER RESCINDING THE STATEWIDE MEMO, AND SHOULD DO SO IMMEDIATELY

### A. This Court Has the Inherent Authority, and Specific Authority Under Rule 23, to Grant the Relief Plaintiffs Seek

Defendants resist relief by arguing that courts have rejected relief requested by a class "when the relief requested is unrelated to the underlying claims of the lawsuit" or where the request "deals with a matter lying wholly outside the issues in the suit." [Defs' Br. at 17]  Plaintiffs are not bringing "unrelated" new claims; they seek to abate

---

[6] For example, Defendants allege that "Inmate Abdullah's story does not check out" because "inmates do not take outgoing legal mail to the mail room for mailing." [Defs' Br. at 8]  However, Defendants also cite the ADC policy governing legal mail which explicitly requires that "[a]ll outgoing letters to an inmate's attorney or to a judge or court *shall be brought to the mail room by the inmate*." [Defs' Br., Ex. 1 ¶ 15 (*quoting* DO 902.11) (emphasis added)]  Therefore, Mr. Abdullah was merely following ADC policy when he took his outgoing legal mail to the mail room in order to send it.  Finally, in a grievance response that Plaintiffs' counsel received after filing this motion, ADC staff acknowledge that mailroom staff improperly refused to process as legal mail a letter that Mr. Abdullah addressed to Mr. Specter at the Prison Law Office because staff "misinterpreted" the statewide memo. [Kendrick Decl. ¶ 14, Ex. 4]
   Since the filing of the motion, Counsel has learned that there was a mistake in the January 7, 2014 declaration (Doc. 737 ¶ 17), in which Counsel referred to an opened envelope as being signed by a correctional officer whose name appeared on the envelope. [Kendrick Decl. ¶ 18]  The prisoner has clarified that Counsel misunderstood his description of what happened in this encounter, and that he, not the officer, wrote the officer's name on the envelope to document to whom he showed the envelope. [*Id.*]  Counsel apologizes to the Court and Defendants for this misinterpretation of events and mistake in the declaration.

1  Defendants' interference with attorney-client communications, which is impeding
2  litigation of the claims already before the Court.[7]  This argument is frivolous.

"All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively. . . ." *Aloe Vera of Am., Inc. v. United States*, 376 F.3d 960, 964-65 (9th Cir. 2004) (*quoting F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001)).  And "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *see also McClendon v. City of Albuquerque*, 272 F. Supp. 2d 1250, 1258-60 (D.N.M. 2003) (in class action challenging jail conditions, court issued an order directing defendant to rescind a recently-enacted policy restricting class counsel's access to prisoner class members).

Not only does the Court have inherent power to issue such orders, Rule 23(g)(1)(E) specifically states that a court "may make further orders in connection with the appointment" of class counsel.[8]  Defendants cite no authority, because there is none, to support their assertion that this subsection gives the Court power only to issue orders "*at the time it appoints class counsel*."  [Defs' Br. at 16]

The Supreme Court has specifically held that class counsel has the right to communicate with class members, absent clear reasons for interference.  *Gulf Oil*, 452 U.S. at 101.  In *Domingo v. New England Fish Co.*, the Ninth Circuit noted that "restrictions [on communications between class members and counsel] are particularly inappropriate where class members have no other effective means to secure counsel."  727

---

[7] *Kaimowitz v. Orlando, Fl.*, 122 F.3d 41 (11th Cir. 1997), and *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14 (4th Cir. 1997), cited by Defendants (Defs' Br. at 17), involved motions seeking substantive relief unrelated to the claims in the case.  Neither case involved a motion seeking to enjoin interference with confidential communications between a certified class and class counsel regarding the claims on which the court had granted class certification.

[8] Merriam-Webster's Dictionary defines the word "further" to mean "to or at a more distant place or time."  *See* http://www.merriam-webster.com/dictionary/further.

1  F.2d 1429, 1441, *modified* 742 F.2d 520 (9th Cir. 1984). The Eighth Circuit applied *Gulf Oil* in an analogous class action challenging conditions at a juvenile detention facility. *A.J. by L.B. v. Kierst*, 56 F.3d 849, 856 (8th Cir. 1995). In that case, defendants barred class counsel from interviewing detained children, pointing to state policies designed to protect juveniles' confidentiality. The court rejected such a restriction absent specific findings that counsel were likely to use abusive tactics or "otherwise compromise the safety of the juveniles and staff." *Id*. at 857-58.

In short, this Court has authority to, and should, reject Defendants' targeting of class counsel's correspondence.

### B. The Prison Litigation Reform Act Does Not Prohibit Such an Order

Defendants try to invoke the Prison Litigation Reform Act, 42 U.S.C. § 1997e, ("PLRA"), to strip this Court of its power to protect Plaintiffs' mail. [Defs' Br. at 16] All of their arguments fail.

First, there is no requirement in the text of the statute[9] that prisoners must exhaust all grievances and file an entirely new lawsuit when they seek the Court's assistance due to interference with legal mail. In *McClendon*, a long-running class action case challenging jail conditions, the court issued an order directing defendants to rescind a policy restricting class counsel's access to prisoner class members, seven years after the class was certified. 272 F. Supp. 2d at 1258-60. The order came weeks after the district court had denied an identical request made in a separate stand-alone suit brought by counsel, on the basis that counsel should instead simply request relief through a motion in the existing class action. [*See* Kendrick Decl., Ex. 6 (*Protection & Advocacy Sys., Inc. v. City of Albuquerque*, Case No. Civ. 03-0367 MCA/RLP, Doc. 25, Memorandum Opinion & Order Denying Motion for Preliminary Injunction, at 18-19 (D.N.M. June 18, 2003))] Second, Defendants ignore that class counsel assert their own rights in this Motion and the

---

[9] A statute cannot, by its silence, abrogate powers vested in the courts by the Federal Rules. *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) (in the absence of clear contrary congressional intent, the Federal Rules of Civil Procedure must be followed).

1  PLRA does not apply to non-prisoners. *See* 42 U.S.C. § 1997e(h). Third, the Court
2  previously found that Defendants waived the defense of failure to exhaust administrative
3  remedies. [Doc. 175 at 8-9]

### C.  Blanket Deference to Prison Administrators is Not Appropriate When Fundamental Rights Are at Stake

Defendants argue the Court should not consider Plaintiffs' evidence of Defendants' interference with attorney-client communications but should instead reflexively defer to ADC's judgment. [Defs' Br. at 23] Although deference might be appropriate with regard to some policies and practices,

> federal courts must take cognizance of the valid constitutional claims of prison inmates. Prison walls do not form a barrier separating prison inmates from the protection of the Constitution. […] Because prisoners retain these rights, "[w]hen a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights."

*Turner v. Safley*, 482 U.S. 78, 84 (1987) (*quoting Procunier v. Martinez*, 416 U.S. 396, 405-06 (1974) (internal citations omitted), *overruled in part on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989)).[10]

The Supreme Court has held that "[r]egulations and practices that unjustifiably obstruct the availability of professional representation . . . are invalid." *Procunier*, 416 U.S. at 419; *see Gluth v. Kangas*, 951 F.2d 1504, 1508 (9th Cir. 1991); *Leeds v. Watson*, 630 F.2d 674, 676 (9th Cir. 1980). In *McClendon* (the jail case with similar facts to these), the court noted that if it ordered Defendants to rescind restrictions on attorney-client communications,

> the only potential harm to Defendants is that inmate allegations of constitutional violations will be brought to the attention of this Court. This is not a legitimate concern. By

---

[10] Defendants suggest there is no constitutional right to attorney-client privilege because "[s]tanding alone, [it] is merely a rule of evidence." [Defs.' Br. at 17-18] Courts have repeatedly recognized that First Amendment rights are at stake when prison officials read confidential communications in legal mail, including but not limited to *Grigsby v. Horel*, 341 F. App'x 314 (9th Cir. 2009), a case cited by Defendants. *See also* Plfs' Mot., (Doc. 736) at 9, 11-13 (summarizing cases).

>contrast, the lives of class and sub-members may be at risk if their attorneys are prevented from investigating their reports of unconstitutional conditions of confinement.

272 F. Supp. 2d at 1259.

For all of these reasons, the Court should order Defendants to rescind the statewide memo, as Plaintiffs are "realistically threatened by a repetition of the experience," which is a constitutional violation. *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). "[S]uch an injury is likely to recur," when "the harm is part of a pattern of officially sanctioned . . . behavior, violative of the plaintiffs' federal rights." *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001) (internal quotation marks and citations omitted), *abrogated on other grounds by Johnson v. Cal.*, 543 U.S. 499 (2005); *see also Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) (upholding claim for injunctive relief when interference with a prisoner's legal mail was pursuant to an "explicit policy").

## IV.   DEFENDANTS MISSTATE THE LAW REGARDING THE READING OF LEGAL MAIL

Defendants misread two Ninth Circuit decisions to try to claim that staff can read legal mail to or from class counsel. [Defs' Br. at 18] The rub is that neither case involved prisoner-attorney correspondence, or raised questions of reading legal mail.[11] In *Royse v. Superior Court*, 779 F.2d 573 (9th Cir. 1986), the court upheld a requirement that mail sent to judges and court personnel be inspected for contraband in the presence of

---

[11] Defendants spend much of their response informing the court of the fact that some prisoners, on occasion, try to misuse legal mail to transmit contraband. [Defs' Br. at 6-7, Ex. 1 ¶¶ 7, 41-63, Ex. 2 ¶¶ 14-19] This is true, but it is pure misdirection. As Defendants' policy states, and their declarations affirm, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Thus, all mail is scanned for contraband. The two key differences between legal and non-legal mail have nothing to do with contraband: First, legal mail may be scanned for contraband, *but not read*. [Defs' Br. at 3-4] Non-legal mail may be opened, inspected, and read. [*Id.* at 1] Thus, any legal mail improperly treated as non-legal mail allows staff to freely read confidential, attorney-client privileged correspondence. Second, legal mail is scanned *in the inmate's presence* to check for contraband. [*Id.* at 2-3] Defendants' statewide memo encourages staff to treat legal mail from the five organizations as non-legal mail, which may be read in its entirety outside of the presence of the inmate under ADC policy. The contraband issue is nothing more than a red herring.

1 prisoners. *Id.* at 574 n.1. The court said it was not deciding if *reading* such mail would
2 violate constitutional rights, because the prisoner had not raised that issue. *Id.* at 575.
3 Moreover, the court noted the prisoner had not presented "any evidence that any mail to
4 an *attorney* has been affected by the contraband inspection." *Id.* at 574 (emphasis added).
5 In *Witherow v. Paff*, 52 F.3d 264 (9th Cir. 1995), the Ninth Circuit upheld a prison policy
6 allowing a "cursory visual inspection" of contents of mail sent to public officials to check
7 for "offensive or dangerous materials." *Id.* at 265-66. The policy "specifically require[d]
8 that the officer not read 'any portion of the contents,'" and the prisoner's "declaration
9 [did] not allege that officials have actually read of any his mail." *Id.* at 266. None of the
10 correspondence in *Witherow* involved the prisoner's attorney.[12]

11 Defendants also cite *Jensen v. Klecker*, 648 F.2d 1179 (8th Cir. 1981), for the
12 proposition that a letter from the ACLU to a prisoner was not privileged legal mail
13 because it was not specifically marked with the attorney's name and address. [Defs' Br.
14 at 20] In fact, the *Jensen* court found that

> a letter from the [ACLU] National Prison Project, bearing the name of an attorney and which was stamped "Lawyer Client Mail Do Not Open Except In Presence of Prisoner" and which was addressed to plaintiff Jensen appears to come well within the definition of attorney-client mail. This would tend to rebut defendants' claim that the mail opened was not clearly marked. Coupled with plaintiffs' assertions that the opening of such mail was done deliberately and on a continuing basis, and contrasted with the defendants' vague claim that in the case of clearly marked mail some mistakes were made, this indicates that some factual issues remain to be resolved on this point.

---

[12] Defendants cite another Ninth Circuit case, *Stevenson v. Koskey*, 877 F.2d 1435 (9th Cir. 1989), for the proposition that inadvertent opening of a prisoner's legal mail outside his presence is not an actionable violation. [Defs' Br. at 22] In fact, that case merely held that the defendant did not cause the violation at issue, not that opening legal mail is permissible. *Stevenson*, 877 F.2d at 1441.

1  *Jensen*, 648 F.2d at 1183; *compare* Doc. 737, Ex. 6 at 2, 3 (copy of ACLU National Prison Project's envelope, bearing the name of David Fathi and stamped "Legal Mail – Open in Presence of Inmate").[13]

Finally, defendants allege that plaintiffs failed to show the "actual injury" required by *Lewis v. Casey*, but that requirement applies when prisoners assert interference with their access to the courts, an argument that, as Defendants concede, Plaintiffs have not made. [Defs' Br. at 17 n.9] Plaintiffs' contention that ADC has violated the First Amendment rights of both class counsel and class members by opening and reading legal mail does not require a showing of actual injury. *Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir. 2008); *Jones*, 461 F.3d at 359-60. In any event, Plaintiffs have alleged, and shown with evidence, actual injury sufficient to satisfy the *Casey* standard. *See Cody v. Weber*, 256 F.3d 764, 768 (8th Cir. 2001) (advantage defendants obtained by reading plaintiff's legal papers constituted actual injury); *Goff v. Nix*, 113 F.3d 887, 892 (8th Cir. 1997) (loss of legal papers constituted actual injury).

## V.  DEFENDANTS FAIL TO ACKNOWLEDGE THAT CLASS COUNSEL'S RIGHTS ARE IMPLICATED BY THE STATEWIDE MEMO

Defendants' primary response to the claims that the challenged policy infringes class counsel's rights is a blanket statement that any notion that counsel has been targeted "defies common sense." [Defs' Br. at 8] But the Supreme Court has recognized that "mail censorship implicates more than the right of prisoners;" it also threatens nonprisoners' interest in communicating with those inside, which "is grounded in the First

---

[13] As additional examples of mis-cited authority, Defendants invoke *Stanley v. Vining*, 602 F.3d 767 (6th Cir. 2010), which observed that a prison guard may read *non-legal* mail in the prisoners' presence. [Defs' Br. at 19] In *Stanley*, the Sixth Circuit emphasized, however, that "there is no allegation that any of the mail read by the prison guard was mail from his lawyer or in any way pertained to legal representation." 602 F.3d at 770. Defendants also cite *Altizer v. Deeds*, 191 F.3d 540 (4th Cir. 1999), as finding the reading of prisoner legal mail to be constitutionally valid. [Defs' Br. at 19] But the quote Defendants attribute to *Altizer* does not appear in that case, which involved a prison policy mandating that "an inmate's outgoing legal mail 'will not be opened, inspected or read in any manner,'" except when there was a reasonable belief of wrongdoing by an individual prisoner. *Altizer*, 191 F.3d at 551.

Amendment's guarantee of freedom of speech." *Procunier*, 416 U.S. at 408-09. The threat to counsel's rights here is especially grave because it arises in the context of the confidential attorney-client relationship; thus Defendants' violation of the attorney-client privilege affects counsel's rights to a confidential attorney-client relationship. *See Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001).

Because mail is often the only feasible way to communicate with prisoners, Defendants' illegal policy has impeded class counsel's ability to communicate with class members. [Pochoda Decl. ¶¶ 2-5; Kendrick Decl. ¶¶ 2-5] At the most basic level, there is no guarantee that legal mail will be delivered to its intended recipient, which prevents counsel from keeping class members reliably informed about the status of their case, and prisoners from conveying the information counsel needs to provide advice and advocacy. [*See, e.g.*, Doc. 737 at ¶¶ 38-39, 48-49, 51-53 (stating that, on multiple occasions, a number of pages were removed from documents sent to class counsel and letters updating named plaintiffs on major developments in the case were not delivered)] More damaging is the reality that class counsel are left with no choice but to reasonably assume each piece of mail could be improperly intercepted by prison officials, thus chilling communications with class members. [*Id.* ¶ 8; Pochoda Decl. ¶ 5; Kendrick Decl. ¶ 5]

Finally, by imposing extra requirements on counsel in this litigation along with two respected civil rights organizations with a history of protecting prisoners' rights, Defendants have imposed a content-based restriction on speech. *See Haitian Ctrs. Council Inc. v. Sale*, 823 F. Supp. 1028, 1040-41 (E.D.N.Y. 1993) (government engaged in viewpoint discrimination when it banned certain legal advocates from contact with Haitian refugees but permitted other parties to offer legal advice); Plfs' Mot. (Doc. 736) at 12-13.[14] Defendants' statewide memo and their practices in carrying it out thus threaten counsel's rights alongside those of the class.

---

[14] Defendants attempt in a brief footnote to explain away the cases Plaintiffs cite for the proposition that prisons may not target particular attorneys, by asserting that those cases only found fault with complete bans on access. [Defs' Br. at 21 n.11] This is simply untrue. One case, for example, found that not only did a ban on attorney visits and

## VI. DEFENDANTS HAVE SHOWN NO BASIS FOR SANCTIONS

Defendants take the extraordinary step of requesting sanctions under the Court's inherent power to sanction those who "willfully abuse judicial processes," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980), or under 28 U.S.C. § 1927, which authorizes sanctions against attorneys who multiply proceedings. [Defs' Br. at 24-25] Those sanctions are only available under the most extreme circumstances and require a showing that a party has acted in bad faith, while sanctions under § 1927 require that a party has acted unreasonably and vexatiously.[15] *Gomez*, 255 F.3d at 1134-35 (affirming award of sanctions against counsel for prison officials who intercepted and read correspondence between prisoners and their counsel).

Defendants ask the Court to find grounds for sanction in the fact that the parties corresponded about the issue long before Plaintiffs filed the instant motion. [Defs' Br. at 25] If this is evidence of bad faith or vexatious conduct, then parties whose rights are violated will have no choice but to immediately initiate legal action. Plaintiffs and class counsel (1) asserted their well-established right to confidential attorney-client communications, (2) attempted multiple times for a year and a half to resolve the issue with Defendants, and (3) had many of their letters and emails ignored, before concluding that there was no alternative but to bring the issue to this Court's attention for resolution. In no way can Plaintiffs' counsels' actions constitute the grounds for sanctions.

---

a five minute limit for phone calls violate constitutional standards, but that "unreasonable limitations" such as the requirement that counsel forgo payment for their services in order to get access to prisoners also violated constitutional standards. *McClendon*, 272 F. Supp. 2d at 1258. Another case cited by Plaintiffs struck down what was originally a complete ban, but later was modified to allow the attorney limited access to clients. *Cruz v. Beto*, 603 F.2d 1178, 1180 (5th Cir. 1979). *Cruz* found that the infringement of counsel's rights continued after partial access was restored. *See id.* at 1186.

[15] Defendants cite to *Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006), but *Leon* involved the imposition of spoliation sanctions after a party deleted more than 2,200 files from his computer during the pendency of the litigation, which is not relevant here.

78204-0001/LEGAL29263577.1                   -13-

## VII. CONCLUSION

In light of the foregoing, and arguments and evidence presented with their Motion, Plaintiffs respectfully request that the Court order Defendants to rescind the statewide memo targeting Plaintiffs' counsels' legal mail, and grant any other relief the Court deems fair and necessary. A revised proposed order is attached.

Dated: February 6, 2014                         **PRISON LAW OFFICE**

By:   s/ Corene Kendrick
     Donald Specter (Cal. 83925)*
     Alison Hardy (Cal. 135966)*
     Sara Norman (Cal. 189536)*
     Corene Kendrick (Cal. 226642)*
     Warren E. George (Cal. 53588)*
     1917 Fifth Street
     Berkeley, California 94710
     Telephone: (510) 280-2621
     Email:   dspecter@prisonlaw.com
              ahardy@prisonlaw.com
              snorman@prisonlaw.com
              ckendrick@prisonlaw.com
              wgeorge@prisonlaw.com

*Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
Jerica L. Peters (Bar No. 027356)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:   dbarr@perkinscoie.com
        agerlicher@perkinscoie.com
        keidenbach@perkinscoie.com
        jhgray@perkinscoie.com
        mdumee@perkinscoie.com
        jpeters@perkinscoie.com

| | |
|---|---|
| 1 | Daniel Pochoda (Bar No. 021979) |
| | James Duff Lyall (Bar No. 330045)* |
| 2 | **ACLU FOUNDATION OF ARIZONA** |
| 3 | 3707 North 7th Street, Suite 235 |
| | Phoenix, Arizona 85013 |
| 4 | Telephone:  (602) 650-1854 |
| | Email:    dpochoda@acluaz.org |
| 5 | jlyall@acluaz.org |
| 6 | *Admitted pursuant to Ariz. Sup. Ct. R. 38(f) |
| 7 | |
| 8 | David C. Fathi (Wash. 24893)* |
| | Amy Fettig (D.C. 484883)** |
| | Ajmel Quereshi (Md. 28882)** |
| 9 | **ACLU NATIONAL PRISON PROJECT** |
| 10 | 915 15th Street N.W., 7th Floor |
| | Washington, D.C. 20005 |
| 11 | Telephone:  (202) 548-6603 |
| | Email:    dfathi@npp-aclu.org |
| 12 | afettig@npp-aclu.org |
| | aquereshi@npp-aclu.org |
| 13 | |
| 14 | *Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts. |
| 15 | **Admitted *pro hac vice* |
| 16 | Caroline Mitchell (Cal. 143124)* |
| | David C. Kiernan (Cal. 215335)* |
| 17 | Sophia Calderón (Cal. 278135)* |
| | **JONES DAY** |
| 18 | 555 California Street, 26th Floor |
| | San Francisco, California 94104 |
| 19 | Telephone:  (415) 875-5712 |
| | Email:    cnmitchell@jonesday.com |
| 20 | dkiernan@jonesday.com |
| | scalderon@jonesday.com |
| 21 | |
| 22 | *Admitted *pro hac vice* |
| 23 | John Laurens Wilkes (Tex. 24053548)* |
| | Taylor Freeman (Tex. 24083025)* |
| | **JONES DAY** |
| 24 | 717 Texas Street |
| | Houston, Texas 77002 |
| 25 | Telephone:  (832) 239-3939 |
| | Email:    jlwilkes@jonesday.com |
| 26 | tfreeman@jonesday.com |
| 27 | *Admitted *pro hac vice* |
| 28 | |

| | |
|---|---|
| 1 | Kamilla Mamedova (N.Y. 4661104)* |
| 2 | Jennifer K. Messina (N.Y. 4912440)*<br>**JONES DAY**<br>222 East 41 Street |
| 3 | New York, New York 10017<br>Telephone: (212) 326-3498 |
| 4 | Email: kmamedova@jonesday.com<br>jkmessina@jonesday.com |
| 5 | *Admitted *pro hac vice* |

Kevin Brantley (Cal. 251886)*
**JONES DAY**
3161 Michelson Drive, Suite 800
Irvine, California 92612
Telephone: (949) 851-3939
Email: kcbrantley@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

# **CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2014, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

*Attorneys for Defendants*

Sarah Kader
Asim Varma
J.J. Rico
ARIZONA CENTER FOR DISABILITY LAW
skader@azdisabilitylaw.org
avarma@azdisabilitylaw.org
jrico@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

　　　　　　　　　　　　　　s/ Delana Freouf