**EXHIBIT 4**

**EXHIBIT 4**

1   Arizona Attorney General Thomas C. Horne
    Office of the Attorney General
2   Michael E. Gottfried, Bar No. 010623
    Lucy M. Rand, Bar No. 026919
3   Assistant Attorneys General
    1275 W. Washington Street
4   Phoenix, Arizona 85007-2926
    Telephone: (602) 542-4951
5   Fax: (602) 542-7670
    Michael.Gottfried@azag.gov
6   Lucy.Rand@azag.gov

7   Daniel P. Struck, Bar No. 012377
    Kathleen L. Wieneke, Bar No. 011139
8   Rachel Love, Bar No. 019881
    Timothy J. Bojanowski, Bar No. 22126
9   Nicholas D. Acedo, Bar No. 021644
    Ashlee B. Fletcher, Bar No. 028874
10  Anne M. Orcutt, Bar No. 029387
    STRUCK WIENEKE & LOVE, P.L.C.
11  3100 West Ray Road, Suite 300
    Chandler, Arizona  85226
12  Telephone:  (480) 420-1600
    Fax:  (480) 420-1696
13  dstruck@swlfirm.com
    kwieneke@swlfirm.com
14  rlove@swlfirm.com
    tbojanowski@swlfirm.com
15  nacedo@swlfirm.com
    afletcher@swlfirm.com
16  aorcutt@swlfirm.com
    *Attorneys for Defendants*

17

                    **UNITED STATES DISTRICT COURT**

18
                         **DISTRICT OF ARIZONA**
19

20  Victor Parsons, *et al.*, on behalf of themselves      NO.  CV12-0601-PHX-NVW
    and all others similarly situated; *et al.*, and
    Arizona Center for Disability Law,

21                                      Plaintiffs,   **DEFENDANTS' FOURTEENTH
                                                      SUPPLEMENTAL DISCLOSURE
22          v.                                        STATEMENT**

23  Charles Ryan, Director; *et al.*,

24                                     Defendants.

25

26          Defendants, through counsel and pursuant to Federal Rule of Civil

27  Procedure 26(a)(1), submit their **Fourteenth** Supplemental Disclosure Statement.

28

    2860367.1

Defendants will supplement and/or amend this disclosure statement as information is discovered.  **Supplemental and/or revised text is shown in bolded font**.

I.      **NAMES, ADDRESSES, AND TELEPHONE NUMBERS OF INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION**

A. INDIVIDUALS WHO WILL BE CALLED TO TESTIFY

1.      Charles Ryan, ADC Director, Defendant
        c/o Struck Wieneke & Love, P.L.C.[1]
        3100 West Ray Road, Suite 300
        Chandler, AZ 85226
        (480) 420-1600
          and
        Office of the Attorney General, State of Arizona
        1275 West Washington Street
        Phoenix, AZ 85007-2926
        (602) 542-1610

        Charles Ryan is the Director of the ADC.  Director Ryan will testify regarding his training and experience in corrections and his role in the development of policies, procedures, training programs, and ADC's strategic vision.  Director Ryan has more than 35 years of experience in the field of corrections.  He has served as Director of the Arizona Department of Corrections since 2009, and prior to that as Deputy Director of Prison Operations, as a prison warden and as a prison administrator.  He possesses in-depth, hands-on  institutional knowledge.  Director Ryan has extensive experience in the development of correctional institution policy including the formulation of the inmate classification system, the staffing, operation and activities of various prison complexes and the development of budgetary requirements.  Director Ryan will testify regarding the centralization of health and mental health care for certain inmate populations.  He  is likely to testify with regard to the maintenance and administration of ADC institutions and programs; ADC policies, procedures, and practices, including those related to medical,

---

[1] All parties listed as care of Struck Wieneke & Love, P.L.C. shall also be in care of the Attorney General's Office, State of Arizona, regardless of whether it is explicitly stated. Further, Struck Wieneke and Love's and the Attorney General's Office's contact information for all parties shall be the same as listed for Director Ryan, unless specifically stated otherwise.

dental and mental health care as well as the provision of adequate care to ADC inmates in compliance with constitutional requirements; the improvements in the delivery of health care to the ADC inmate population; the privatization of the entire health care delivery system, specifically, the taking over of the health care system by Wexford Health Sources ("Wexford") from July 1, 2012 through March 3, 2013, and by Corizon Health on March 4, 2013; ADC facilities' compliance with the National Commission on Correctional Health Care Standards ("NCCHC"), Wexford's compliance during its tenure, and Corizon's compliance after it took over on March 4, 2013; various budgetary issues surrounding the ADC and the overall operation of ADC; his recommendation of policies and programs to the Governor and Legislature for improving corrections programs including health care services; his establishment of employment qualifications for key personnel as well as relevant staffing policies, procedures, levels, and issues with regard to dental, medical, and mental health personnel as well as to any communications with said personnel; financial issues relative to the administration of specialty care to inmates at ADC as well as maximum custody and detention units and conditions of confinement issues in various ADC facilities; exhaustion of the grievance appeal process.  He will also discuss why changes in policies and procedures were made, and will rebut the suggestion that changes were made because of the filing of Plaintiffs' lawsuit.  Director Ryan will testify regarding these areas as they develop up until the time of trial.  Director Ryan will also testify regarding changes implemented throughout ADC regarding the provision of health care and conditions of confinement for those mentally ill inmates in maximum custody or detention units and the positive outcomes resulting from those changes. Director Ryan will testify consistent with his deposition testimony.  Director Ryan will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

> 2.    Richard Pratt, ADC Quality/Clinical Program Evaluation Administrator and former Interim Director, Health Services ("HS") Division, Defendant
> c/o Struck Wieneke & Love, P.L.C.

1          Richard Pratt is the Quality/Clinical Program Evaluation Administrator and

2   the former Interim Division Director of Health Services at ADC.  Please see Exhibit Bates

3   Numbered ADC123458-123461 for Mr. Pratt's credentials and qualifications.  Mr. Pratt

4   was previously deposed and Defendants will rely on his deposition testimony. In addition

5   to his deposition testimony, Mr. Pratt is likely to testify with regard to  policies,

6   procedures, and practices, including those related to medical, dental, mental health care;

7   his knowledge of Plaintiffs' medical, dental and mental health needs requests and

8   Plaintiffs' institutional history as reflected in grievance appeals files; the privatization of

9   the entire health care delivery system, specifically, the taking over of the entire health care

10  system by Wexford; ADC policies and procedures including those related to medical,

11  dental and mental health care as well as the provision of adequate care to ADC inmates in

12  compliance with constitutional requirements; relevant staffing policies, procedures, levels;

13  ADC facilities' compliance with the NCCHC standards; Wexford's compliance during its

14  tenure; compliance with contract requirements by Corizon; and Corizon's  compliance

15  after it took over on March 4, 2013; policies and procedures including those related to

16  medical, dental and mental health care, statistics, reports and historical data relating to

17  mental, medical and dental care,  as well as the provision of adequate care to ADC

18  inmates in compliance with constitutional requirements.

19          3.      Carson McWilliams, ADC Northern Region Operations Director (NROD)

20                  c/o Struck Wieneke & Love, P.L.C.

21          Carson McWilliams is the Northern Region Operations Director of ADC.

22  Please see Exhibit Bates Numbered ADC123449-123451 for his credentials and

23  qualifications. Mr. McWilliams is likely to testify with regard to policies and procedures

24  including those related to medical, dental and mental health care, classification, housing,

25  security,  and operations of ADC Complexes in the Northern Region; a description of the

26  complexes, pods, units and security classifications of each facility; fundraising

27  opportunities and activities at Complexes; implementation of structural changes and

28

programming in ADC facilities; education opportunities and availability to ADC populations; CCTV programing;  implementation of mental health programming at ADC facilities, recreation, employment, and education activities provided to ADC inmates, and the conditions of confinement at ADC facilities, including all matters raised in the court's certification of the class and sub classes as it relates to conditions of confinement, which may include, lighting, food service, recreational activities, mail, food, watch, reading materials and the like; statistics, reports and historical data relating to mental, medical and dental care; and his knowledge of security operations and conditions in maximum custody.

Mr. McWilliams will also testify regarding the changes implemented and anticipated for maximum custody inmates, specifically inmates who are in maximum custody and designated as Seriously Mentally Ill.  Mr. McWilliams will testify that mental health inmates in maximum custody have been clustered in various housing areas and ADC has identified office space for mental health staff in those housing areas.  ADC has built large recreation enclosures for use by multiple inmates at the same time and in some units, recreation fields will be used by 50-60 inmates at a time.  Inmates are working as porters, groundskeepers, maintenance works, kitchen workers and in other various capacities.  Mental health group programming as well as self-help television programs are being offered.  ADC is also starting to facilitate groups to include ADC programs staff with several new groups planned.  Some units include contact visitation.  A stage system is being implemented to allow the evaluation of inmates with the highest phase receiving the most out-of-cell activity.  This system is based on time, participation in programs and the inmate's general behavior.  Religious services are also available.  Plans are being made to expand the outdoor recreation in groups and on recreation fields.  Even more jobs are being identified and inmates will be screened and/or trained to work in those jobs.  Tables are being placed in pods and runs for increased group out-of-cell interaction.  Proposals are being reviewed for various new out-of-cell activities that will increase and encourage positive socialization.  Programs are being reviewed and staff is

1  being trained to facilitate groups with plans to implement those new programs in January
2  2014.  Maximum custody inmates have been reviewed for movement to lower custody
3  levels and placement in open cell blocks, such as CB1 and CB2 in ASPC-Florence's
4  Central Unit.  Plans to open more blocks are scheduled to begin in 2014.  ADC is also
5  currently reviewing housing areas to cluster inmates designated as Seriously Mentally Ill
6  in a more open living environment.  Mr. McWilliams will also testify as to the
7  implementation and positive outcomes related to these changes once the changes have
8  been made.

9       Mr. McWilliams has reviewed the reports of Plaintiffs' experts Eldon Vail
10 and Craig Haney.  Mr. McWilliams will testify regarding the conditions of confinement as
11 alleged by both Mr. Vail and Mr. Haney and as to the conditions of confinement for those
12 inmates in maximum custody or detention units that may change up until the time of
13 trial.  Mr. McWilliams will testify regarding the classification system for mentally ill
14 inmates placed in maximum custody and detention units, specifically but not limited to the
15 fact that ADC's classification system has been reviewed and validated by expert Dr.
16 James Austin through the American Correctional Association and the National Institute of
17 Corrections. Further, every inmate receives an annual classification review, which is an
18 interactive process including the inmate.

19      Mr. McWilliams will also testify regarding the ability of inmates, with the
20 exception of those inmates on Death Row, to earn their way out of maximum custody or
21 detention units and the criteria for such movement.  Mr. McWilliams will testify that there
22 are various groups of mental health inmates in maximum custody or detention units,
23 which each require special considerations in how ADC addresses their housing and
24 movement.  Additionally, Mr. McWilliams will testify regarding the training that all
25 correctional staff receives and the training that staff assigned to mental health units are
26 undergoing, including ASIST Training and other specialized training regarding inmates
27 with mental illness.  Officers are selected to work in those areas of maximum custody
28 housing mentally-ill inmates based on their experience level and demonstrated ability to

6

1  address situations that may arise.  These officers serve 5 years at these posts before

2  rotating in order to provide consistency in these housing areas.  Further, all sergeants and

3  lieutenants will be trained in motivational interviewing as part of crisis intervention

4  training.

5         Mr. McWilliams will also testify regarding the frequency with which

6  inmates have contact with individual staff, whether it be correctional or medical staff.  Mr.

7  McWilliams will testify regarding the opportunity for recreation within the maximum

8  custody and detention units.  Further, maintenance issues throughout ADC are regularly

9  addressed with those issues positing a security or safety concern given higher

10 priority.  Mr. McWilliams will also testify about the maintenance and cleanliness of the

11 complexes; however, there remains the potential for rodent or insect given that inmates

12 are permitted to keep food in their cells and often attempt to keep animals such as ground

13 squirrels and pigeons as pets.

14        Mr. McWilliams will further testify regarding the requirement that staff and

15 visitors to maximum custody and detention units wear safety gear.  He will testify that

16 staff safety is a priority and that the equipment in use today is the direct result of past

17 incidents of violent inmate behavior.  Mr. McWilliams will testify regarding the health

18 and welfare checks that are occurring through ADC for inmates in maximum custody and

19 detention units, including the role of the roving officer whose sole job duty is to conduct

20 such checks.  He will also testify regarding the policies and procedures regarding the use

21 of chemical agents and the circumstances for such use.  He will testify regarding the

22 emphasis ADC places on de-escalation techniques, barring emergency situations requiring

23 immediate response.  Mr. McWilliams will also address conditions of confinement issues

24 raised by named Plaintiffs.

25        Mr. McWilliams will testify as to the current status of all of these areas, the

26 allegations contained in Plaintiffs' expert reports, and changes that may be implemented

27 up until trial.  Mr. McWilliams will testify consistent with his deposition testimony.  Mr.

28 McWilliams will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

7

1

2

    4.     Richard Rowe, M.D., former ADC Quality/Clinical, Medical Program Administrator, HS Division
c/o Struck Wieneke & Love, P.L.C.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

    Dr. Richard Rowe is the HS Division, Quality/Clinical Medical Program Administrator. Please see Exhibit Bates Numbered ADC123462-123463 for his credentials and qualifications.  Dr. Rowe was previously deposed and Defendants will rely on his deposition testimony. In addition to his deposition testimony, Dr. Rowe will testify pursuant to FRCP 26(a)(2)(C) with regard to recommendations made to him by doctors at various ADC facilities and the procedure by which recommendations are made to him; policies, practices, procedures, and processes of the administration of all health care services to inmates housed at ADC; relevant staffing policies and procedures; implementation of structural and programming improvements in ADC facilities; policies and procedures including those related to medical health care as well as the provision of adequate care to ADC inmates in compliance with constitutional requirements; his role in authoring inmate mortality reviews; his involvement in working with outside providers as a result of the ACCHS legislation and privatization legislation.  Dr. Rowe will also testify regarding the mortality reviews he completed.

17

18

19

20

21

    Dr. Rowe will also testify regarding his review of Plaintiff Shawn Jensen's medical records and his opinions regarding the treatment rendered to Jensen.  He will further testify regarding specific allegations made by Mr. Jensen as it relates to his medical care in connection with his treatment for prostate cancer as well as his current prognosis.

22

23

24

25

26

27

    Dr. Rowe will testify regarding his review of Plaintiff Swartz's medical records and his opinions regarding the treatment rendered to Swartz after he was involved in two inmate assaults in 2010.  Specifically, he will testify regarding the follow-up care, medications, and subsequent facial reconstructive surgery.  He will also testify regarding Plaintiff Swartz's allegations that staff screened him with a metal detector after he swallowed metal, did not refer him for an endoscopy, and told him he would have to pass

28

1   the metal.

2          Dr. Rowe will testify regarding his review of Plaintiff Rodriguez's medical

3   records and his opinions regarding the treatment rendered to her.  He will further testify

4   regarding Plaintiff Rodriguez's allegation that she has experienced multiple asthma

5   attacks and breathing problems as a result of her exposure to pepper spray.

6          Dr. Rowe will testify regarding his review of Plaintiff Thomas's medical

7   records and his opinions regarding the treatment provided to him.  He will further testify

8   regarding Plaintiff Thomas's specific allegations that in November 2011, he overdosed on

9   Diclofenac and did not receive medical attention, that he has experienced insomnia and

10  weight loss while in SMU, and was not prescribed a sleep aid.

11         Dr. Rowe will testify regarding his review of Plaintiff Gamez's medical

12  records and his opinions regarding the treatment provided to him.  He will further testify

13  regarding Plaintiff Gamez's specific allegations that his care was managed by a nurse

14  practitioner, he did not receive follow-up tests to confirm that he has frontal lobe

15  dysfunction, and his medications have been denied or delayed.

16         Dr. Rowe will testify regarding his review of Plaintiff Chisholm's medical

17  records and his opinions regarding the treatment provided to her.  He will further testify

18  regarding Plaintiff Chisholm's specific allegations that she was not referred to a

19  cardiologist for eight months despite experiencing chest pains and shortness of breath and

20  did not receive adequate care or testing from outside specialists.

21         Dr. Rowe will testify regarding his review of Plaintiff Licci's medical

22  records and his opinions regarding the treatment provided to her.  He will further testify

23  regarding Plaintiff Licci's specific allegations that she has experienced delays in seeing an

24  oncologist and receiving testing regarding masses on her breasts, mouth, arms, and

25  ovaries, that she experiences extreme discomfort in her cervix that impacts her bowels and

26  results in constipation, and medical staff make false claims in replies to her grievances.

27  Dr. Rowe will also testify regarding Plaintiff Licci's allegation that her port-a-cath may

28  not have been properly flushed.

9

Dr. Rowe will testify regarding his review of Plaintiff Hefner's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Hefner's specific allegations that his vision deteriorated after a nurse gave him expired eye drops, he did not receive eye medication following eye surgery in 2006 and 2008, has not seen an ophthalmologist, and experienced delay in receiving a CT scan following an injury.  He will testify regarding Plaintiff Hefner's allegation that he did not receive adequate treatment after an assault.  Dr. Rowe will also testify regarding Plaintiff Hefner's claim that his requests for a medical diet have been denied.

Dr. Rowe will testify regarding his review of Plaintiff Polson's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Polson's specific allegations that he experienced delays in receiving appropriate care and medications for chronic ear pain.

Dr. Rowe will testify regarding his review of Plaintiff Wells' medical records and his opinions regarding the treatment provided to her.  He will further testify regarding Plaintiff Wells' specific allegations that she was not evaluated by a cardiologist despite repeated complaints of chronic chest pain.

Dr. Rowe will testify regarding his review of Plaintiff Smith's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Smith's specific allegation that he was unable to write HNRs due to a hand injury.

Dr. Rowe will testify regarding his review of Plaintiff Brislan's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Brislan's specific allegation that he has lost weight due to insufficient meals.

In addition to testifying regarding the medical treatment of the named Plaintiffs, Dr. Rowe will also testify regarding the health care provided to the individual inmates specifically referred to by Plaintiffs' experts and whether the care rendered was adequate, appropriate and meets the standard of care up until the time of trial.

5.      Ben Shaw, M.D. (former ADC HS Division, Quality/Clinical, Mental
        Health Monitor (Health Services Coordinator)) , current Mental Health
        Director at Corizon
        c/o Corizon Health

Ben Shaw, M.D., is the former HS Division, Quality/Clinical, Mental Health Monitor (Health Services Coordinator) at ADC, and the current Mental Health Director at Corizon. Dr. Shaw was previously deposed and Defendants will rely on his deposition testimony.  In addition to his deposition testimony, Dr. Shaw will testify with regard to policies and procedures at the time of his employment with ADC, including those related to  mental health needs; the privatization of the entire health care delivery system, specifically, the transition of the entire health care system to Wexford; the transition of the entire health care system to Corizon; the provision of adequate care to ADC inmates in compliance with constitutional requirements, statistics, reports and historical data relating to mental, medical and dental care,  and his current job activities.  Dr. Shaw may also testify regarding his knowledge of the care and treatment of the named Plaintiffs, as well as class members whose care he is familiar with. Dr. Shaw has knowledge of the mental health group programing, the CCTV programing, the activities of the psych associates and other mental health staff, how the telemed program works,  medication distribution, the mental health phases at maximum security facilities, the incentive programs, and the loaner tv and radio programs.

6.      Carol Pearson, ADC HS Contract Monitoring Bureau, Medical Records
        Monitor
        c/o Struck Wieneke & Love, P.L.C

Carol Pearson is the current HS Contract Monitor Bureau Medical Records Monitor and former ADC Medical Records Program Manager at ADC.  Ms. Pearson was previously deposed and Defendants will rely on her deposition testimony.  Ms. Pearson is likely to testify regarding her information with regard to ADC Polices, practices, and procedures, including those related to the organization, storage, maintenance, archiving, and eventual destruction of inmate medical records; and the privatization of the healthcare

delivery system and its impact on medical records management.

7. Juliet Respicio-Moriarty, ADC HS Contract Monitoring Bureau, Inmate Grievance Appeals Investigator
c/o Struck Wieneke & Love, P.L.C.

Juliet Respicio-Moriarty is the current Inmate Grievance Appeals Investigator for ADC. Please see Exhibit Bates Numbered ADC123429-123433 for her credentials and qualifications. Ms. Respicio-Moriarty will testify regarding policies, practices, and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; and her knowledge of Corizon's performance under the Contract with ADC.

8. Kathleen Campbell, ADC HS Contract Monitoring Bureau, Program Evaluation Administrator
c/o Struck Wieneke & Love, P.L.C.

Kathleen Campbell is the current Program Evaluation Administrator for ADC. Please see Exhibit Bates Numbered ADC123435-123438 for her credentials and qualifications. Ms. Campbell will testify regarding policies, practices, and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of oral and dental care; reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; and her knowledge of Corizon's performance under the Contract with ADC.

9. Sam Tardibuono, ADC HS Contract Monitoring Bureau, Contract Compliance Monitor, ASPC-Douglas
c/o Struck Wieneke & Love, P.L.C.

Sam Tardibuono is the current Contract Monitor at ASPC-Douglas. Please see Exhibit Bates Numbered ADC123464-123467 for his credentials and qualifications.

Mr. Tardibuono will testify regarding his monitoring of policies, practices, and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care only as required for monitoring and reporting in the MGAR; his activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; and his knowledge of Corizon's performance under the Contract with ADC.

> 10.  David Robertson, D.O., ADC HS Contract Monitoring Bureau,
> Quality/Clinical, Medical Program Administrator
> c/o Struck Wieneke & Love, P.L.C.

Dr. David Robertson is the current HS Contract Monitoring Bureau, Quality/Clinical, Medical Program Administrator. Please see Exhibit Bates Numbered ADC123413-123418 for his credentials and qualifications. Dr. Robertson will testify pursuant to FRCP 26(a)(2)(C).  He will testify regarding ADC policies, practices, and procedures including those related to medical care, review and investigation of medical grievances, inmate death investigations and mortality reviews, implementation by Corizon of electronic medical records, Corizon's telemedicine system; his knowledge of Plaintiffs' medical health needs and the continuous improvements in the delivery of health care to the ADC inmate population. Dr. Robertson will also testify regarding the mortality reviews he completed.

Dr. Robertson will also testify regarding the medical care provided to Plaintiff Shawn Jensen and that the medical care was appropriate and within the applicable standard of care.  He will further testify regarding specific allegations made by Mr. Jensen as it relates to his medical care in connection with his treatment for prostate cancer as well as his current prognosis.

Dr. Robertson will testify regarding his review of Plaintiff Swartz's medical records and his opinions regarding the treatment rendered to Swartz after he was involved

13

in two inmate assaults in 2010.  Specifically, he will testify regarding the follow-up care, medications, and subsequent facial reconstructive surgery.  He will also testify regarding Plaintiff Swartz's allegations that staff screened him with a metal detector after he swallowed metal, did not refer him for an endoscopy, and told him he would have to pass the metal.

Dr. Robertson will testify regarding his review of Plaintiff Rodriguez's medical records and his opinions regarding the treatment rendered to her.  He will further testify regarding Plaintiff Rodriguez's allegation that she has experienced multiple asthma attacks and breathing problems as a result of her exposure to pepper spray.

Dr. Robertson will testify regarding his review of Plaintiff Thomas's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Thomas's specific allegations that in November 2011, he overdosed on Diclofenac and did not receive medical attention, that he has experienced insomnia and weight loss while in SMU, and was not prescribed a sleep aid.

Dr. Robertson will testify regarding his review of Plaintiff Gamez's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Gamez's specific allegations that his care was managed by a nurse practitioner, he did not receive follow-up tests to confirm that he has frontal lobe dysfunction, and his medications have been denied or delayed.

Dr. Robertson will testify regarding his review of Plaintiff Chisholm's medical records and his opinions regarding the treatment provided to her.  He will further testify regarding Plaintiff Chisholm's specific allegations that she was not referred to a cardiologist for eight months despite experiencing chest pains and shortness of breath and did not receive adequate care or testing from outside specialists.

Dr. Robertson will testify regarding his review of Plaintiff Licci's medical records and his opinions regarding the treatment provided to her.  He will further testify regarding Plaintiff Licci's specific allegations that she has experienced delays in seeing an oncologist and receiving testing regarding masses on her breasts, mouth, arms, and

ovaries, that she experiences extreme discomfort in her cervix that impacts her bowels and results in constipation, and medical staff make false claims in replies to her grievances. Dr. Robertson will also testify regarding Plaintiff Licci's allegation that her port-a-cath may not have been properly flushed.

Dr. Robertson will testify regarding his review of Plaintiff Hefner's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Hefner's specific allegations that his vision deteriorated after a nurse gave him expired eye drops, he did not receive eye medication following eye surgery in 2006 and 2008, has not seen an ophthalmologist, and experienced delay in receiving a CT scan following an injury.  He will testify regarding Plaintiff Hefner's allegation that he did not receive adequate treatment after an assault.  Dr. Robertson will also testify regarding Plaintiff Hefner's claim that his requests for a medical diet have been denied.

Dr. Robertson will testify regarding his review of Plaintiff Polson's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Polson's specific allegations that he experienced delays in receiving appropriate care and medications for chronic ear pain.

Dr. Robertson will testify regarding his review of Plaintiff Wells' medical records and his opinions regarding the treatment provided to her.  He will further testify regarding Plaintiff Wells' specific allegations that she was not evaluated by a cardiologist despite repeated complaints of chronic chest pain.

Dr. Robertson will testify regarding his review of Plaintiff Smith's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Smith's specific allegation that he was unable to write HNRs due to a hand injury.

Dr. Robertson will testify regarding his review of Plaintiff Brislan's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Brislan's specific allegation that he has lost weight due to insufficient meals.

1       In addition to testifying regarding the medical treatment of the named

2   Plaintiffs, Dr. Robertson will also testify regarding the health care provided to the

3   individual inmates specifically referred to by Plaintiffs' experts and whether the care

4   rendered was adequate, appropriate and meets the standard of care.

5       11.    Nicole Taylor, Ph.D., ADC HS Contract Monitoring Bureau,
              Quality/Clinical, Health Services Coordinator (Mental Health Monitor) and
6             former Psychologist III at ASPC-Florence
              c/o Struck Wieneke & Love, P.L.C.
7

8       Nicole Taylor, Ph.D. is the current HS Contract Monitoring Bureau,

9   Quality/Clinical, Health Services Coordinator (Mental Health Monitor). Please see

10  Exhibit Bates Numbered ADC123454-123457 for her credentials and qualifications. Dr.

11  Taylor will testify based on her education, training, qualifications, and experience and

12  review of records of the inmate population. Dr. Taylor will testify regarding ADC

13  policies, practices, and procedures including those related to mental health care and

14  conditions of confinement, including mental health programming offered to inmates

15  housed at ASPC-Eyman, Florence, Lewis, Phoenix, Perryville Tucson and Yuma and any

16  changes to programming that occurs up until trial; the Mental Health Technical Manual

17  and any changes to that Manual that occurs up until trial; her knowledge of Plaintiffs'

18  mental health care needs, specifically the mental health care needs and treatment of named

19  Plaintiffs Dustin Brislan and Robert Gamez; the subsequent transition to Corizon; the

20  provision of adequate care to ADC inmates in compliance with constitutional

21  requirements; relevant staffing policies, procedures, levels and issues with regard to

22  mental health personnel and changes to those policies, procedures and levels up until trial.

23      Dr. Taylor will testify regarding the mental health care provided to and

24  mental health condition of the named Plaintiffs Swartz, Brislan, Thomas, Smith, Gamez,

25  Chisholm, Polson, Rodriguez and Verduzco.  She will testify regarding their allegations

26  related to their mental health care.

27      Specifically, Dr. Taylor will testify regarding her review of Plaintiff Stephen

28  Swartz's records relating to his allegations that despite multiple instances of self-harm, he

16

has received inadequate mental health care while on suicide watch and while housed at SMU.  She will also testify regarding his allegation that he was able to access dangerous objects while on suicide watch.

Dr. Taylor will testify regarding her review of Plaintiff Brislan's records relating to his allegations that he has been placed on suicide watch for extended periods but has not received therapeutic treatment to address his self-harming behavior.  She will also testify regarding his allegation that he was able to access dangerous objects while on suicide watch.

Dr. Taylor will testify regarding her review of Plaintiff Thomas's records relating to his allegations that while he did not have suicidal ideation when he arrived at SMU, his mental condition has deteriorated and he has become suicidal and committed multiple acts of self-harm.  She will also testify regarding Plaintiff Thomas's allegations that he has received minimal mental health care.

Dr. Taylor will testify regarding her review of Plaintiff Smith's records relating to his allegations that his depression has been aggravated by interruptions in his mental health treatment and prolonged incarceration in SMU and that he was not seen by mental health despite reporting mental health problems.

Dr. Taylor will testify regarding her review of Plaintiff Gamez's records relating to his claim that he was not provided adequate mental health services to address his deteriorating mental health. Dr. Taylor will testify regarding her review of Plaintiff Chisholm's records relating to her allegations that her mental health has been adversely impacted by custodial harassment.

Dr. Taylor will testify regarding Plaintiff Polson's records relating to his allegation that his mental health symptoms are caused or worsened by not receiving adequate mental health care and that his suicidal ideation has increased as a result of his housing.

Dr. Taylor will testify regarding her review of Plaintiff Rodriguez's records relating to her allegation that her mental health care primarily involves medication and not

17

therapy. Dr. Taylor will testify regarding her review of Plaintiff Verduzco's records relating to her allegation that she does not receive regular therapy.

Dr. Taylor reviewed the expert reports of Dr. Pablo Stewart, Craig Haney and Eldon Vail. She will testify regarding the mental health status, care and access to mental health care to the inmate population as referenced by Plaintiffs' experts, including any members of the population referenced through supplementation by Plaintiffs' experts and up until trial. Dr. Taylor will testify concerning the treatment of the named plaintiffs up to the time of trial. Dr. Taylor will further testify consistent with her deposition testimony. Dr. Taylor will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

12.    Ron Credio, Warden, ASPC-Eyman
         c/o Struck Wieneke & Love, P.L.C.

Ron Credio is the Warden at ASPC-Eyman. He has been employed with the ADC for over 18 years, starting as a Correctional Officer at ASPC-Eyman/Rynning Unit. He was promoted to the position of Sergeant at ASPC-Florence/Central Unit, Lieutenant at ASPC-Eyman/Meadows Unit, Captain at ASPC-Florence/Picacho and North Unit, Associate Deputy Warden at ASPC-Florence/South Unit, Deputy Warden as ASPC-Phoenix/Globe and Alhambra, and Deputy Warden of Operations at ASPC-Florence. Warden Credio has a Bachelor of Science in Public Safety Administration, Associates Degree in Corrections, and Associates Degree in Management. He is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Eyman, its cell blocks, the inmates housed at ASPC-Eyman, recreation and therapy and behavioral programming at ASPC-Eyman, access to healthcare and the delivery of healthcare to inmates. Warden Credio is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's

management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements; lighting issues, conditions of confinement and management of SMU units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.    Warden Credio will also provide foundational testimony for institutional records.

13.    Gerald Thompson, DW, ASPC-EYMAN-SMU I
c/o Struck Wieneke & Love, P.L.C.

Deputy Warden Gerald Thompson is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Eyman, its cell blocks, the inmates housed at SMU-I, and recreation, therapy and behavioral programming at SMU-I, and access to healthcare and delivery of healthcare to the inmates.    Deputy Warden Thompson is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities;   food service, including nutrition requirements; lighting issues, conditions of confinement and management of SMU units; inmates' access to

programming, visitation, and recreation time; and educational programming available to inmates.    Deputy Warden Thompson will also provide foundational testimony for institutional records.

    14.    Assistant Deputy Warden Munoz, ASPC-Eyman-**Browning Unit**
           c/o Struck Wieneke & Love, P.L.C.

        Assistant Deputy Warden Munoz is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Eyman, its cell blocks, the inmates housed at ASPC-Eyman, recreation and therapy and behavioral programming at ASPC-Eyman, and access to healthcare and delivery of healthcare to the inmates. Assistant Deputy Warden Munoz is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements*;*, lighting issues,  conditions of confinement and management of SMU units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.  Assistant Deputy Warden Munoz will also provide foundational testimony for institutional records.

    15.    Stephen Morris, DW, ASPC-Eyman-Browning Unit (and former DW,
           ASPC-Florence-East)
           c/o Struck Wieneke & Love, P.L.C.

        Deputy Warden Stephen Morris is assigned to the Browning Unit at ASPC-

Eyman, and is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Eyman, its cell blocks, the inmates housed in Browning Unit, recreation at Browning Unit, therapy and behavioral programming at Browning Unit, and access to healthcare and delivery of healthcare to the inmates. Deputy Warden Morris is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; food service, including nutrition requirements;, lighting issues,  alleged sanitation and extermination  issues at their respective facilities; conditions of confinement and management of SMU units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Deputy Warden Munoz will also provide foundational testimony for institutional records.

      16.    Lance Hetmer, Warden, ASPC-Florence
                c/o Struck Wieneke & Love, P.L.C.

Lance Hetmer is the Warden at ASPC-Florence.  He is responsible for the oversight of a multi-custody facility of approximately 4,270 inmates and approximately 1,055 full time staff.  Warden Hetmer began his career with the ADC over 25 year ago as a Correctional Officer at the ASPC-Douglas facility.  He was promoted through the ranks, holding the positions of sergeant, lieutenant and captain.  With each promotion, he gained knowledge and experience in working with all custody levels at ASPC-Safford, Perryville,

and Tucson.  For the last 13 years he has held management positions of Associate Deputy Warden, Deputy Warden, and Deputy Warden of Operations. Warden Hetmer is likely to testify regarding his knowledge of ADC's historical and contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Florence, its cell blocks, the inmates housed in each cell block, recreation for all security levels, therapy and behavioral programming for all security levels, and access to healthcare and delivery of healthcare to the inmates. Warden Hetmer is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues and extermination issues at their respective facilities; food service, including nutrition requirements;, lighting issues, conditions of confinement and management of SMU units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Deputy Warden Hetmer will also provide foundational testimony for institutional records.

17.   Amy Barnes, ADW, ASPC-Florence-Kasson Unit
c/o Struck Wieneke & Love, P.L.C.

Deputy Warden Amy Barnes is assigned to the Kasson Unit at ASPC-Florence, and is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Florence, its cell blocks, the inmates housed in Kasson Unit, recreation at Kasson Unit, therapy and behavioral programming at Kasson Unit, and access to healthcare and delivery of healthcare to the inmates. Deputy Warden Barnes is

additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Deputy Warden Barnes will also provide foundational testimony for institutional records.

18. **Chris Moody**, Warden, ASPC-Lewis **(and former DWOP, ASPC-Lewis)**
c/o Struck Wieneke & Love, P.L.C.

Warden **Chris Moody** is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Lewis, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden **Moody** is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective

23

facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements,; lighting issues; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden **Moody** will also provide foundational testimony for institutional records.

        19.    Alfred Ramos, Warden, **ASPC-Douglas (and former Warden at** ASPC-Phoenix**)**
c/o Struck Wieneke & Love, P.L.C.

        Warden Alfred Ramos is the Warden **at ASPC-Douglas and Former Warden** at ASPC-Phoenix. He began his career in corrections as a group worker at the Yakima County Juvenile Hall in Yakima, Washington.  He ultimately served as a Superintendent in the Washington Correctional system until his retirement in 2003.  In March 2004, Warden Ramos was hired by the ADC and assigned as an Associate Deputy Warden at ASPC-Lewis.  He was promoted in 2011 as Warden at ASPC-Phoenix.  He is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Phoenix **and ASPC-Douglas**, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Ramos is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their

respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements;, lighting issues; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.  Warden Ramos will also provide foundational testimony for institutional records.

      20.     Berry Larson, Warden, ASPC-Winslow
               c/o Struck Wieneke & Love, P.L.C.

      Warden Berry Larson is the Warden at ASPC-Winslow. Warden Larson manages three correctional facilities with a population of 1,943 inmates and 514 staff, 1 close/medium custody unit, 2 minimum custody units, and 50 contract jail beds. She has been in the corrections field for 24 years, holding the positions of Correctional Officer I, Correctional Programs Officer I and II, Correctional Programs Supervisor, Associate Deputy Warden, and Deputy Warden.  She was the Deputy Warden of Programs at the Hutchinson Correctional Facility for the Kansas Department of Corrections for 3 years. In the field of corrections, Warden Larson has worked with male and female inmates, and juvenile offenders.  Additionally, she worked in correctional and probationary boot camps for adults and juveniles. She is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Winslow, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Larson is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and

welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements; lighting issues; conditions of confinement and inmate management; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Larson will also provide foundational testimony for institutional records.

21.    Judy Frigo, Warden, ASPC-Perryville
       c/o Struck Wieneke & Love, P.L.C.

Warden Judy Frigo is the Warden at ASPC-Perryville.  Please see Exhibit Bates Numbered ADC123426-123428 for her credentials and experience. Warden Frigo is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Perryville, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Frigo is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements; lighting issues;   conditions of confinement and management of maximum units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Frigo will also provide foundational testimony for institutional records.

22. James O'Neil, **Warden, ASPC-Phoenix (and former** DWOP, ASPC-Perryville**)**
c/o Struck Wieneke & Love, P.L.C.

Warden James O'Neil is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding **both ASPC-Phoenix and** ASPC-Perryville, **their** housing units, the inmates housed at **ASPC-Phoenix and** ASPC-Perryville, and recreation, therapy and behavioral programming at **both ASPC-Phoenix and** ASPC-Perryville. Warden O'Neil is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.

23. Lyle Broadhead, Warden, ASPC-Safford
c/o Struck Wieneke & Love, P.L.C.

Warden Lyle Broadhead is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Safford, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to inmates. Warden Broadhead is additionally likely to have discoverable information with regard to Plaintiffs' institutional

27

history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and inmate management; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.  Warden Broadhead will also provide foundational testimony for institutional records.

      24.    Therese Schroeder, Warden, ASPC-Tucson
             c/o Struck Wieneke & Love, P.L.C.

      Warden Therese Schroeder is the Warden at ASPC-Tucson.  She is responsible for approximately 1,300 staff and an inmate population of approximately 5,000 inmates.  Warden Schroeder began her corrections career in October 1988.  Her first assignment as a Correctional Officer was at the Echo Unit at ASPC-Tucson.  In 1996 she was promoted to Correctional Officer III, promoted to Correctional Officer IV in 1998, and promoted to Associate Deputy Warden at Tucson/Rincon in 2001.  Warden Schroeder was also the Deputy Warden of the Cimarron Unit and Deputy Warden of Operations at ASPC-Tucson.  In April 2006 she was appointed as the Warden of ASPC-Safford.  In 2008 she was appointed as the Warden at ASPC-Perryville.  She became the Warden of ASPC-Tucson in 2011.  Warden Schroeder has an Associate's Degree in Business Management and has earned ACA's Certified Corrections Executive Certificate.  She is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Tucson, its cell blocks, the inmates housed in each Unit, recreation at each Unit,

therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Schroeder is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements;, lighting issues; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Schroeder will also provide foundational testimony for institutional records.

25.    Laura Escapule, Warden, ASPC-Yuma (and former Warden of ASPC-Winslow)
c/o Struck Wieneke & Love, P.L.C.

Warden Laura Escapule is the Warden at ASPC-Yuma.  She began her career with the ADC in 1996 as a Correctional Officer I at ASPC-Douglas.  In 1998 she was promoted to Correctional Officer III at ASPC-Yuma, followed by a promotion to Correctional Officer IV. In 2005 she was promoted to Deputy Warden at ASPC-Tucson, followed by a promotion to Deputy Warden of Operations in 2007 at ASPC-Yuma. Her current appointment entails supervision and management of a prison complex which employs 1,100 administrative, security and support staff, encompassing 2 minimum custody units, 2 medium custody units and 1 close custody unit.  Warden Escapule is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding

29

ASPC-Florence, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Escapule is additionally likely to have discoverable information with regard to ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and inmate management; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.   Moreover, Warden Escapule will testify regarding the work incentive pay plan ("WIPP") at Yuma which allows inmates to utilize experience, training, and expertise in meaningful employment while support their needs. Warden Escapule will also provide foundational testimony for institutional records.

26.   Robert Parkinson, FHA at ASPC-Florence
c/o Corizon Health

Robert Parkinson is the former Facility Health Administrator for ASPC-Eyman, and current Facility Health Administrator for ASPC-Florence, and is likely to testify regarding his knowledge of ADC's policies and procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Florence including delivery of medications and delivery of mental health care and dental care, and the overall delivery of healthcare to the inmates.

27.   Ann Mullen, FHA at ASPC-Safford
c/o Corizon Health

Ann Mullen is the Facility Health Administrator for ASPC-Safford, and is likely to testify regarding her knowledge of ADC's policies and procedures for delivery of

health care to ADC's inmate population; and the day-to-day operation of health services at Safford including delivery of medications and delivery of mental health care and dental care, and the overall delivery of healthcare to the inmates.

28.     Masood Sirjani, Dental Director at ASPC-Phoenix
        c/o Corizon Health

Masood Sirjani is the Dental Director for ASPC-Phoenix and will testify regarding his knowledge of ADC's policies and procedures for delivery of dental care to ADC's inmate population, the dental intake process for all male ADC inmates at ASPC-Phoenix, triage of dental HNRs, wait times for routine and urgent dental care at ASPC-Phoenix, and the review and resolution of grievances related to dental care, and the overall delivery of healthcare to the inmates.

29.     Deborah Kinder, FHA at ASPC-Douglas
        c/o Corizon Health

Deborah Kinder is the Facility Health Administrator for ASPC-Douglas, and is likely to testify regarding her knowledge of ADC's policies and procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Douglas including delivery of medications and delivery of mental health care and dental care, and the overall delivery of healthcare to the inmates.

30.     Von Marschik, FHA at ASPC-Eyman
        c/o Corizon Health

Von Marschik is the Facility Health Administrator for ASPC-Eyman, and is likely to testify regarding his knowledge of ADC's policies and procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Eyman including delivery of medications and delivery of mental health care and dental care. Mr. Marschik has a lengthy tenure with Corizon Health Services and is also expected to testify regarding his experience and expertise in privatizing health care in correctional settings, and the overall delivery of healthcare to the inmates.

31

31.     Holly Massey, FHA at ASPC-Phoenix
        c/o Corizon Health

Holly Massey is the Facility Health Administrator for ASPC-Phoenix, and is likely to testify regarding her knowledge of ADC's policies and procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Phoenix including delivery of medications and delivery of mental health care and dental care, and the overall delivery of healthcare to the inmates.

32.     Matthew Harvey, FHA at ASPC-Tucson
        c/o Corizon Health

Matthew Harvey is the Facility Health Administrator for ASPC-Tucson, and is likely to testify regarding his knowledge of ADC's policies and procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Tucson including delivery of medications and delivery of mental health care and dental care, and the overall delivery of healthcare to the inmates.

33.     Elsie Stowell, FHA at ASPC-Winslow
        c/o Corizon Health

Elsie Stowell is the Facility Health Administrator for ASPC-Winslow, and is likely to testify regarding her knowledge of ADC's policies and procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Winslow including delivery of medications and delivery of mental health care and dental care, and the overall delivery of healthcare to the inmates.

34.     Angelo Daniels, Deputy Warden of Security Operations
        c/o Struck Wieneke & Love P.L.C.

Angelo Daniels is the Deputy Warden of Security Operations at ADC, and is likely to testify regarding his knowledge of ADC's policies and procedures for oversight of inmate meal preparation and delivery, including accommodation of the religious standards in place for the various faiths to which inmates in ADC custody belong, and provisions of adequate nutritional needs for special diets.  DW Daniels will

also testify regarding his oversight of the Food Services Contract and collaborative relationship with Trinity Services Group in ensuring that adequate nutritional value is provided to inmates through all diets, including the mega sack meals provided to inmates in maximum custody. DW Daniels will testify regarding his oversight of the meals provided to ensure nutritional adequacy, caloric intake and appropriate rotation of food product in the meals. DW Daniels will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

35.     Mark Jansen, Interim Vice President Operations
        c/o Corizon Health

Mark Jansen is the Interim Vice President of Operations for Corizon Health. Please see Exhibit Bates Numbered ADC203360-ADC203362 for his credentials and qualifications.  He is likely to testify regarding his knowledge of the contract between Optimal Phone Interpreters ("OPI") and Corizon to provide language translation services to ADC for assistance in providing health care to Limited English speaking inmates; the availability and usage of that service; and the HIPAA compliance related to that service. He is also expected to testify regarding Corizon's obligations under the Contract with ADC, Corizon's staffing, recruiting, policies, and the provision of medical, mental health and dental health care to ADC's inmate population.

36.     Mark Fleming, PhD, LP, LPCMH, CRC, HSP, CCHP-MH
        c/o Corizon Health, Regional Vice President for Behavioral Health

Dr. Fleming is the Regional Vice President for Behavioral Health for Corizon Health.  Please see Exhibit Bates Numbered ADC203363-ADC203364 for his credentials and qualifications.  Dr. Fleming is expected to testify regarding the mental health care offered to ADC's inmate population.  He is expected to testify regarding Corizon's obligations and performance under the Contract with ADC, Corizon's staffing, recruiting, policies related to the provision of mental health programming to ADC's inmate population and changes to these areas up until the time of trial.   He is expected to testify regarding the systemic delivery of mental health programming, individualized

treatment, Corizon's systems in place for the delivery mental health care, as well as any changes to that delivery and treatment that may occur up until trial.  He will also testify regarding the operational oversight and clinical leadership and support to Corizon staff, ADC and inmates.  He is expected to testify regarding the mental health treatment programming offered to inmates throughout the ADC inmate population and any changes to programming that may occur up until the time of trial.  Dr. Fleming will also testify regarding the individualized mental health treatment regarding named Plaintiffs Swartz, Brislan, Thomas, Smith, Gamez, Chisholm, Polson, Verduzco and Rodriguez.

Based upon his professional training, experience, and review of the chart volumes for the thirteen named Plaintiffs, Dr. Fleming will be called to testify regarding his clinical opinion, that since March 4, 2013, each of the litigants who were seen by a mental health provider, as documented in the chart, received care that is line with clinical best practice approaches.  Dr. Fleming is of the opinion that clinicians used approaches that addressed documented diagnostic concerns.  Specifically, mental health clinicians utilized a standard SOAP note in their documentation that included a mental status exam as well as a clear plan for follow up, there was consistently regular follow up for those on a suicide or mental health watch, psychiatric staff utilized AIMS (Abnormal Involuntary Movement Scale), clinical staff used individual and group therapy modalities in the treatment process, and clinical coordination with medical and psychiatric staff appeared evident.  Dr. Fleming will testify regarding pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

37.   Thomas Buenker, M.D., Regional Psychiatry Director
        c/o Corizon Health

Dr. Buenker is the Regional Psychiatry Director for Corizon Health. Please see Exhibit Bates Numbered ADC203365-ADC203367 for his credentials and qualifications.  Dr. Buenker is expected to testify regarding the psychiatric services provided to the inmate population and the administration of psychotropic medications and

34

any changes to services and administration of psychotropic medications that occur up until trial. He is expected to testify Corizon's staffing, recruiting, policies and practices related to the provision of psychiatric services to ADC's inmate population and changes to these areas that occur up until trial. He is expected to testify as to the psychiatric services provided on a systemic basis as well as individualized treatment provided to inmates, including any changes to that treatment that may occur up until trial.

Dr. Buenker will also testify regarding the individualized mental health treatment regarding named Plaintiffs Brislan, Rodriguez, Thomas, Smith, Gamez, Chisholm, Polson, Swartz, and Verduzco.  Specifically, Dr Buenker will testify regarding his review of Plaintiff Brislan's records relating to his claims that he has received inadequate medication delivery and management, has not been regularly monitored by a psychiatrist, and did not receive needed inpatient mental health care. Dr. Buenker will testify regarding his review of Plaintiff Rodriguez's records relating to her claim that she has experienced inadequate medication delivery and management, inadequate monitoring, and did not receive needed inpatient mental health care. Dr. Buenker will testify regarding his review of Plaintiff Thomas's records relating to his allegations that he has experienced inadequate medication delivery and management, lack of informed consent, long delays in follow-up and psychiatric evaluation, and was not prescribed a sleep aid.  Dr. Buenker will testify regarding his review of Plaintiff Smith's records relating to his allegations that he has experienced inadequate medication delivery and management, inadequate monitoring, and was prescribed medications not indicated for depression without being seen by a doctor or obtaining informed consent.  Dr. Buenker will testify regarding his review of Plaintiff Gamez's records relating to his allegations that he has experienced inadequate medication delivery and management, as well as inadequate monitoring and follow-up.  Dr. Buenker will also testifying regarding Plaintiff Gamez's claim that he was not seen by a psychiatrist from 2007 to 2011.  Dr. Buenker will testify regarding his review of Plaintiff Chisholm's records relating to her allegations that she has experienced inadequate medication delivery and management, inadequate psychiatric care and follow-

35

up, and delay in being seen by psychiatry after she reported having a nervous breakdown. Dr. Buenker will testify regarding his review of Plaintiff Polson's records relating to his allegations that he has experienced inadequate medication delivery and management and sporadic monitoring of his medication levels.  Dr. Buenker will testify regarding his review of Plaintiff Swartz's records relating to his allegations that he experienced inadequate medication delivery and management, inadequate monitoring, was not seen by a psychiatrist despite multiple suicide attempts, and did not receive inpatient treatment. Dr. Buenker will testify regarding his review of Plaintiff Verduzco's records relating to her allegations that she goes for months without seeing a psychiatrist despite displaying multiple symptoms of psychological distress and that she did not receive needed inpatient psychiatric care.

Based upon his professional training, experience and review of the chart volumes for the thirteen named Plaintiffs, Dr. Buenker will be called to testify regarding his clinical opinion that since March 4, 2013 each of the litigants seen by a mental health provider received mental health care consistent with best practices approaches.  Overall, the treatment modalities implemented for the plaintiffs were appropriate for the indicated diagnoses.  Documentation was in the appropriate format and the plan for follow up was appropriately noted and determined by the individual mental health providers.  Mental health staff used both individual and group therapy as part of the treatment.

Dr. Buenker will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

38.   Michael Dolny, Ph.D, Administrative Services Officer V (Research Manager)
c/o Struck Wieneke & Love, P.L.C.

Dr. Dolny is an Administrative Services Officer V (Research Manager) for ADC.  **Please see Exhibit Bates Numbered ADC229839-ADC229842 for his credentials and qualifications.**  Dr. Dolny reviewed the reports of Plaintiffs' expert witnesses in order to assess the sampling methodologies used by those expert witnesses.

Dr. Dolny will testify that there are few statistical claims made in the expert witness reports reviewed.  They contain no hypothesis tests, statistical tests for significance or inferential statistics used.  Nothing in the reports indicates that the findings included are generalizable.  Plaintiffs' experts sampling methodology lacks statistical rigor in that the experts fail to provide what the sampling methodology actually was or how many cases were reviewed to identify the representative cases cited as examples.  There is no way to evaluate the statistical meaning of the representative cases chosen by Plaintiffs' experts.  Dr. Dolny will testify that despite Plaintiff's experts' attempts at outlining their methodologies, it is unclear from the actual data in the reports what the methodology is.  He will further testify that the sample sizes lack precision.  Small sample sizes, even if taken at random, create estimates in the population that also lack precision and lead to large standard errors.  When sample sizes are increased, the standard error is reduced.  Dr. Dolny will also testify that the narrative findings contained in Plaintiffs' experts' reports cannot be generalized to the population.  Dr. Dolny will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

> 39.   Laura Donnelly
> Trinity Services Group
> c/o McCarter & English
> Gregory Cote
> 265 Franklin Street
> Boston, Massachusetts 02110
> (617) 449-6500

Ms. Donnelly is a registered dietician who works for Trinity Services Group, the third-party vendor that supplies food services to ADC.  Ms. Donnelly is expected to testify regarding the nutritional adequacy and caloric requirements and provisions for those inmates in maximum custody and detention units, including but not limited to the adequacy of the mega sack meals provided to those inmates.  Ms. Donnelly will further testify about the collaborative relationship between ADC and Trinity Food Services as it relates to the planning and provision of meals to inmates in maximum

custody and detention units up until the time of trial. Ms. Donnelly will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

     40.    William Smallwood, D.D.S., CEO, Smallwood Prison Dental Servcies
               c/o Smallwood Prison Dental Services
               The Sack Law Firm
               Jeffrey M. Mervis
               8270 Greensboro Drive, Suite 810
               McLean, Virginia 22102
               (703) 883-0102

Dr. Smallwood is the owner of Smallwood Prison Dental Services (SPDS), which subcontracts with Corizon to provide dental services at ADC. A copy of his CV, which explains his education and experience, is attached. Dr. Smallwood has experience in providing prison dental services at several correctional facilities across the country. He understands the challenges that treating inmates in a correctional setting presents and how the circumstances differ from a private practice setting.

Dr. Smallwood will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

Dr. Smallwood reviewed the dental expert report submitted by Dr. Shulman. In Dr. Smallwood's opinion, Dr. Shulman's stated method of selecting his sample, which included inmates "who had one or more scheduled appointments for issues related to pain and swelling" was biased and focused on selecting records of inmates with problems. Dr. Smallwood will testify that in his opinion and based upon the theories of statistics, Dr. Shulman should have made a random selection of records.

Dr. Smallwood will testify that SPDS uses the proprietary Correctional Dental Software (CDS) program to manage dental requests and appointments, monitor wait times, and track dental statistics at ADC. He will testify regarding the available reports and statistics, which include number of requests for dental treatment submitted, current wait times, number of procedures performed, and number of treatment refusals. Dr. Smallwood will testify regarding the current wait times and dental statistics at the time

of trial.  Dr. Smallwood may also perform a live demonstration of the capabilities of the CDS program at trial.

Dr. Smallwood will testify that when SPDS took over the provision of dental care at ADC from Wexford in March 2013, there was a backlog of dental requests. He will testify that by August 2013, nearly all of the backlog was cleared.  He will testify that as of December 2013, the longest average wait time for routine dental care statewide is 1.5 months, which is half the time required by the ADC contract.  He will also testify that as of December 2013, all dental intakes were completed within 30 days statewide. This intake procedure is in compliance with ADC policy as stated in the DSTM at 770.1 and NCCHC standard P-E-06.

Dr. Smallwood will testify that in his opinion, relying on inmate to dentist staffing ratios would not yield the results necessary to effectively manage statewide dental operations for a correctional system of nearly 36,000 inmates such as ADC.  He will testify that determining the appropriate staffing at a correctional dental clinic depends on numerous factors, including (1) whether the facility houses male or female inmates; (2) the security level of the facility; (3) whether the facility serves as a reception center for inmates; (4) the proximity of facilities; and (5) cost for staff types.  He will testify that the bottom line in determining staffing levels is the volume of work that needs to be completed and being able to effectively and timely manage the workload within the standard of care.

Dr. Smallwood will testify that CDS provides him an accurate and up-to-date view of the exact number of dental requests pending at any given time and wait times.  Dr. Smallwood will testify that in addition to CDS, he also relies on input from the regional dental directors at ADC to determine appropriate staffing levels at ADC complexes.  He will testify that he reviews dental staffing, HNR volumes, and wait time reports on a regular basis to review that staffing meets patient needs.  He will testify that he reallocates staffing resources as needed to see that timely service is provided at all ADC complexes.  To achieve this, he employs several dentists who split their time

between multiple complexes.  He also moves dental staff on a temporary basis to other complexes if needed to manage wait times, and SPDS pays for their travel and lodging costs.  He will testify that in his opinion, this approach to staffing is the most efficient and cost-effective way to provide timely and appropriate dental care in a correctional system such as ADC.  He will also testify that in his opinion, dental staffing at ADC is sufficient to meet the needs of the ADC inmate population, as evidenced by low wait times for dental treatment at all complexes statewide.

Dr. Smallwood will testify that he recently hired two dental hygienists, one for the Northern region and one for the Southern region.  He will testify that the dental hygienists travel to the dental clinics within their respective regions based on inmate demand to provide cleanings. He will testify that wait times for routine treatment, which includes cleanings, are 1.5 months or less at all ADC complexes statewide as of December 2013.  He will also testify regarding the current wait times for routine care treatment at the time of trial.

Dr. Smallwood will testify that ADC does not have an "extraction-only" policy.  He will testify that the dentists he employs perform fillings on teeth that can be restored, but that some teeth are non-restorable.  He will testify that in his experience, the incidence of "meth mouth" is high among inmates and that a high percentage of inmates have poor oral hygiene and have never seen a dentist.  He will testify that for an inmate with "meth mouth," extraction is often the only available treatment option.  He will also testify that whether a tooth can be restored is a matter of clinical discretion based upon a review of current x-rays and a clinical examination.

Dr. Smallwood will testify that SPDS dentists are reviewed annually using a peer review process and that he also evaluates dentists based on their productivity to ensure that inmates are provided timely and appropriate dental care.  He will testify that CDS enables him to quickly and easily evaluate the productivity of all dentists he employs.

Dr. Smallwood will testify that dental assistants at ADC have all passed an

examination and possess a certification that permits them to take dental x-rays.  Dr. Smallwood will testify that dental assistants do not perform dental procedures and that a dentist is always on-site at the clinic during clinic hours.  He will testify that dental assistants are evaluated by their supervising dentists.  Dr. Smallwood will testify that in his opinion, having dental assistants triage dental HNRs and take dental x-rays based on a standing order from their supervising dentist is appropriate and within the standard of care.

Dr. Smallwood will also testify that based on his decades of experience in providing correctional dentistry, the NCCHC is the governing industry standard for correctional dentistry.  Dr. Smallwood will testify that the dental classification system outlined in ADC's Dental Services Technical Manual meets NCCHC standard P-E-06, which requires that oral treatment is provided based on a system of established priorities for care.  He will also testify that ADC policies on access to care, intake screening, oral examination, dental sick call, x-rays, referral to specialists, supplies and equipment, infection control, and staffing levels are within NCCHC guidelines as outlined in P-E-06 and Appendix G of the NCCHC Standards for Health Services in Prisons.  He will also testify that ADC policy 770.1, which requires dental intake screening within 7 days and a comprehensive oral examination within 30 days of admission complies with the requirements of NCCHC standard P-E-06.  He will also testify that ADC policy as stated in the contract, which requires that urgent care requests be treated within 72 hours mirrors NCCHC guidelines as set forth in Appendix G of the standards.

Dr. Smallwood will testify that in his opinion, the correct measure of a correctional dental system is not whether it meets an arbitrary staffing ratio but whether it provides timely and appropriate dental care to inmates.  He will testify that in his opinion, SPDS provides timely and appropriate care to ADC inmates.

All of the opinions expressed by Dr. Smallwood herein are to a reasonable degree of dental probability.

41.   Ernest Trujillo, ADC Southern Regions Operations Director (SROD)
c/o Struck Wieneke & Love, P.L.C.

Ernest Trujillo is the Southern Region Operations Director of ADC.  Please see Exhibit Bates Numbered ADC123472-123477 for his credentials and experience. Mr. Trujillo is likely to testify with regard to the delivery of medical, dental and mental health care to the inmates; his activities in ensuring compliance with all Department Orders, Procedural Manuals, Post Orders, and Standard of Operations as they apply to security and operational practices, staff safety, the welfare of the inmate population; his supervision of ADC facilities, including policy and program development and implementation statewide with regard to security operations, inmate programming, and standardization of staffing; ensuring the implementation of the Department's Strategic Plan and other agency initiatives, and standardization of processes and procedures in all facilities.

Mr. Trujillo will also testify regarding the changes implemented for maximum custody inmates, specifically inmates who are in maximum custody and designated as Seriously Mentally Ill.   He will also testify regarding the positive outcomes related to these changes once the changes have been made.

Mr. Trujillo has reviewed the reports of Plaintiffs' experts Eldon Vail and Craig Haney.  Mr. Trujillo will testify regarding the conditions of confinement as alleged by both Mr. Vail and Mr. Haney and as to the conditions of confinement for those inmates in maximum custody or detention units that may change up until the time of trial.  Mr. Trujillo will testify regarding the classification system for mentally ill inmates placed in maximum custody and detention units, specifically but not limited to the fact that ADC's classification system has been reviewed and validated by Dr. James Austin of the American Correctional Association and the National Institute of Corrections. Further, every inmate receives an annual classification review, which is an interactive process including the inmate.   Mr. Trujillo will also testify regarding the ability of inmates, with

42

1   the exception of those inmates on Death Row, to earn their way out of maximum custody

2   or detention units and the criteria for such movement.  Mr. Trujillo will testify that there

3   are various groups of mental health inmates in maximum custody or detention units,

4   which each require special considerations in how ADC addresses their housing and

5   movement.  Additionally, Mr. Trujillo will testify regarding the training that all

6   correctional staff receives and the training that staff assigned to mental health units are

7   undergoing , including ASIST Training and other specialized training regarding inmates

8   with mental illness.  Officers are selected to work in those areas of maximum custody

9   housing mentally-ill inmates based on their experience level and demonstrated ability to

10   address situations that may arise.  These officers serve 5 years at these posts before

11   rotating in order to provide consistency in these housing areas.  Further, all sergeants and

12   lieutenants will be trained in motivational interviewing as part of crisis intervention

13   training.

14         Mr. Trujillo will also testify regarding the frequency with which inmates

15   have contact with individual staff, whether it be correctional or medical staff.  Mr. Trujillo

16   will testify regarding the opportunity for recreation within the maximum custody and

17   detention units.  Further, maintenance issues throughout ADC are regularly addressed

18   with those issues positing a security or safety concern given higher priority.  Mr. Trujillo

19   will testify as to the changes occurring at Perryville Complex – Lumley Unit that affects

20   the programming access and conditions of confinement of mentally ill inmates in that

21   unit.  Mr. Trujillo will also testify regarding the issues related to mentally ill inmates in

22   maximum custody or detention units that are unique to Perryville as the only complex that

23   houses female inmates with exception of George Ward at the Phoenix Complex.

24         Mr. Trujillo will further testify regarding the requirement that staff and

25   visitors to maximum custody and detention units wear safety gear.  He will testify that

26   staff safety is a priority and that the equipment in use today is the direct result of past

27   incidents of violent inmate behavior.  Mr. Trujillo will testify regarding the health and

28   welfare checks that are occurring through ADC for inmates in maximum custody and

detention units, including the role of the roving officer whose sole job duty is to conduct such checks.  He will also testify regarding the policies and procedures regarding the use of chemical agents and the circumstances for such use.  He will testify regarding the emphasis ADC places on de-escalation techniques, barring emergency situations requiring immediate response.  Mr. Trujillo will also address conditions of confinement issues raised by named Plaintiffs.  Particularly, Mr. Trujillo will testify regarding the allegations made by Plaintiff Verduzco relating to the length of the suicide smocks, cell lighting, being awoken by security staff for safety checks, minimal human contact, and being unable to go outside, brush her teeth, or bathe regularly.  He will also testify regarding her claim that after being pepper sprayed, she is stripped naked and hosed down by security staff. Mr. Trujillo will testify regarding Plaintiff Rodriguez's allegations that while on suicide watch she is only allowed to shower twice a week, is not provided toothpaste and a toothbrush, cannot go to recreation, and is not allowed to have reading materials. Mr. Trujillo will testify regarding Plaintiff Chisholm's claims that she experienced custodial harassment.

Mr. Trujillo will testify as to the current status of all of these areas, the allegations contained in Plaintiffs' expert reports, and changes that may be implemented up until trial.  Mr. Trujillo will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

42.   Brian Hanstad, D.M.D., Northern Regional Dental Director and Dental Supervisor ASPC-Perryville
c/o Smallwood Prison Dental Services
The Sack Law Firm
Jeffrey M. Mervis
8270 Greensboro Drive, Suite 810
McLean, Virginia 22102
(703) 883-0102

Dr. Hanstad is the Northern Region Dental Director and the Dental Supervisor for ASPC-Perryville.  Dr. Hanstad will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

44

1    Dr. Hanstad will testify regarding his knowledge of and interactions with

2  named Plaintiffs Maryanne Chisholm and Charlotte Wells related to their dental care.  He

3  will testify that in his opinion, the dental treatment they received was appropriate and

4  within the standard of care.  Dr. Hanstad will testify regarding his review of Plaintiff

5  Stephen Swartz's dental records and his opinions regarding the treatment provided to

6  Swartz relating to his allegations that he had a cracked molar for two years and was told

7  the only option was to extract the tooth.  Dr. Hanstad will testify regarding his review of

8  Plaintiff Polson's dental records and his opinions regarding the treatment provided to

9  Polson relating to his allegations that he experienced long delays in receiving partial

10  dentures and treatment for broken teeth.

11    He may also testify regarding the dental care of other ADC inmates whom

12  he has treated or whose dental records he has reviewed, including whether their dental

13  care was appropriate and within the standard of care.

14    Dr. Hanstad will testify that upon intake, inmates are provided with dental

15  hygiene instruction.   Because of security concerns, special toothbrushes are issued.

16  Inmates are taught how to brush their teeth and how to practice good dental hygiene in the

17  corrections setting.   Inmates are also instructed on how to access dental care through

18  HNRs.

19    Dr. Hanstad will testify regarding ADC policies relating to timeliness of

20  dental intakes, routine care, and urgent care.  He will testify that per ADC policy, inmates

21  receive dental x-rays and a comprehensive oral evaluation within 30 days of intake, unless

22  it has been less than six months since the inmate was previously in ADC custody.   Dr.

23  Hanstad will testify that female inmates go through the dental intake process at Perryville.

24  He will testify that male inmates have their dental intake x-rays taken at Phoenix, but may

25  receive their comprehensive oral examination at their receiving units. Dr. Hanstad will

26  testify that intake wait times are less than 30 days statewide as of December 2013 and will

27  also testify regarding current wait times at the time of trial.

28    Dr. Hanstad will testify that ADC does not have an "extraction-only" policy.

45

He will testify that dentists at ADC perform fillings on teeth that can be restored, but many teeth are non-restorable and cannot be filled.  He will explain hat many inmates come into the system with little or no dental care and poor dental hygiene practices.  He will testify that the incidence of "meth mouth" is very high among inmates in ADC custody, particularly among the female inmates.  He will testify that for an inmate with "meth mouth," extraction is often the only viable treatment option.  He will also testify that whether a tooth can be restored is a matter of clinical discretion based upon a review of current x-rays and a clinical examination.

Dr. Hanstad will testify that inmates may refuse dental care or specific dental treatment and that refusals are to be noted on the refusal form.  He will also testify that ADC policy requires that dentists obtain informed consent from inmates for oral surgery, including extractions.  He will testify that dentists explain the risks and benefits of the procedure, as well as any available treatment alternatives, to the inmate, and the inmate signs the informed consent form if he or she decides to have the procedure performed.  Dr. Hanstad will testify that the informed consent form for oral surgery does not include fillings as an option because many times a filling is not an available treatment alternative if the dentist is recommending an extraction.

Dr. Hanstad will testify that in his opinion, inmate to dentist staffing ratios are not the most appropriate method for determining dental staffing needs.  He will testify that determining the appropriate staffing at a correctional dental clinic depends on factors such as HNR volume and security issues.  He will testify that Perryville receives the highest number of HNRs of any complex statewide, even though it ranks sixth statewide in terms of inmate population. He will testify that dentists at Perryville perform more dental procedures than any other dental clinic statewide.  In addition, Dr. Hanstad will testify that female inmates do not have the same no-show rate as male inmates.  As a result, Perryville's dental staffing needs are different than other complexes.  Dr. Hanstad will also testify that dentists at complexes such as Winslow, Safford, and Douglas, which have smaller, lower custody populations, can generally see more patients per day than

dentists treating higher custody populations at complexes such as Lewis and Eyman. He will testify that maximum custody inmates must be transported by correctional staff to dental appointments in restraints, which lengthens the time in between appointments.

Dr. Hanstad will testify that in his experience, ADC inmates sometimes submit dental HNRs for reasons other than to obtain dental treatment. He will testify that some inmates in maximum custody submit HNRs to get out of their cells. He will testify that at Perryville, the dental department now has a portable dental chair which can be taken to the maximum custody unit to provide dental care on-site. This enables a dentist to treat a maximum custody inmate without having to close down the entire dental clinic due to the inmate's security level. He will also testify that inmates submit dental HNRs claiming they have pain in order to be seen sooner but deny having pain when they are called into the clinic.

Dr. Hanstad will testify that in his opinion, dental staffing at ADC is sufficient to meet the needs of the ADC inmate population, as evidenced by low wait times for dental treatment at all complexes statewide. He will testify that ADC policy requires that urgent care requests be seen within 72 hours and routine care requests within 90 days. He will testify that intake examinations must be performed within 30 days. Dr. Hanstad will testify regarding current dental wait times at the time of trial.

Dr. Hanstad will testify regarding reasons that an inmate may have an extended wait time for dental care, such as being out to court, refusing treatment, or experiencing certain health problems which require clearance from a physician prior to undergoing dental treatment.

Dr. Hanstad will testify that dental assistants at ADC have all passed an examination and possess a certification that permits them to take dental x-rays. He will testify that he has a standing order for his dental assistants to take x-rays to assist him in his clinical evaluation. Dr. Hanstad will testify that dental assistants review the inmate's complaint, take a health history, and take x-rays if needed. He will testify that dental assistants do not perform dental procedures and that a dentist is always on-site at the clinic

1   during clinic hours.  Dr. Hanstad will testify regarding requirements for dental training

2   and supervision under Arizona state law.  Dr. Hanstad will testify that in his opinion,

3   having dental assistants triage dental HNRs and take dental x-rays based on a standing

4   order from their supervising dentist is within the standard of care.

5                 Dr. Hanstad will testify regarding the dental priority classification system in

6   the Dental Services Technical Manual.  He will testify that dental assistants are instructed

7   to classify HNRs mentioning the words "pain" and/or "swelling" and any synonyms as

8   urgent care.  Dr. Hanstad will testify that per ADC policy, urgent care requests must be

9   seen within 72 hours.  He will testify that many urgent care requests are seen the same day

10   or within 24 hours.  He will testify that most dental clinics are open Monday through

11   Friday.  On weekends, nursing staff triage dental HNRs using dental protocols, and

12   inmates experiencing pain and swelling may be seen on sick call outside of dental clinic

13   hours.

14                 Dr. Hanstad will testify that dental assistants receive on-the-job training

15   from the dentists they assist and are evaluated on their triaging skills on an on-going basis.

16   Dr. Hanstad will testify that dentists are evaluated annually through the dental peer review

17   process, which includes chart reviews to assess appropriateness of care provided.  He will

18   testify that dentists are also evaluated on their productivity, which is assessed using the

19   CDS program.  He will testify that all dentists in ADC are licensed in Arizona and must

20   complete continuing education to maintain their licensure.

21                 Dr. Hanstad will testify that dental emergencies are rare at ADC and usually

22   involve broken jaws.  He will testify that dental emergencies are generally referred to

23   outside providers and hospitals.

24                 Dr. Hanstad will testify that SPDS has hired two dental hygienists, one for

25   each region.  The dental hygienists travel to the complexes within their regions depending

26   on inmate demand for cleanings. Dr. Hanstad will testify that wait times for routine care,

27   which includes cleanings, average 1.5 months or less at all ADC complexes statewide as

28   of December 2013.  He will also testify regarding current routine care wait times at the

1    time of trial.

2           Dr. Hanstad will also testify regarding the capabilities of the CDS program.

3    He will testify that CDS provides a real-time snapshot of current dental requests and wait

4    times.  He will testify that inmates on the routine care list are listed in order of longest to

5    shortest waiting time.  If an inmate has been waiting for 90 days or longer, the wait time

6    for that inmate turns red to alert staff. He will testify that he can run reports on the number

7    of HNRs, the numbers of procedures performed, the number of refusals, and average wait

8    times. He will testify that CDS is linked to AIMS so that dental staff has access to

9    accurate information on an inmate's housing location.  If an inmate on the routine care list

10   is transferred to another complex, the inmate is automatically transferred to the routine

11   care list at the receiving complex based on the date of the inmate's original HNR.  He will

12   testify regarding current dental statistics at the time of trial.

13          All of the opinions expressed by Dr. Hanstad herein are to a reasonable

14   degree of dental probability.

15          43.    Winfred Williams, Chief Medical Officer , M.D.
                    c/o Corizon Health
16

17          Winfred Williams is Corizon's current Chief Medical Officer, and will

18   testify pursuant to FRCP 26(a)(2)(C).  He will testify regarding his knowledge of ADC's

19   policies and procedures related to the delivery of medical care to ADC's inmate

20   population; and the implementation and use of the Care Log software at Yuma. Dr.

21   Williams has a lengthy tenure with Corizon Health Services and will also testify regarding

22   his experience and expertise in privatization of health care in correctional settings and

23   Corizon's outcomes measurements in the ADC system.

24          Dr. Williams will also testify regarding his review of Plaintiff Shawn

25   Jensen's medical records and his opinions regarding the treatment rendered to Jensen.  He

26   will further testify regarding specific allegations made by Mr. Jensen as it relates to his

27   medical care in connection with his treatment for prostate cancer as well as his current

28   prognosis.

1    Dr. Williams will testify regarding his review of Plaintiff Swartz's medical

2  records and his opinions regarding the treatment rendered to Swartz after he was involved

3  in two inmate assaults in 2010.  Specifically, he will testify regarding the follow-up care,

4  medications, and subsequent facial reconstructive surgery.  He will also testify regarding

5  Plaintiff Swartz's allegations that staff screened him with a metal detector after he

6  swallowed metal, did not refer him for an endoscopy, and told him he would have to pass

7  the metal.

8    Dr. Williams will testify regarding his review of Plaintiff Rodriguez's

9  medical records and his opinions regarding the treatment rendered to her.  He will further

10  testify regarding Plaintiff Rodriguez's allegation that she has experienced multiple asthma

11  attacks and breathing problems as a result of her exposure to pepper spray.

12    Dr. Williams will testify regarding his review of Plaintiff Thomas's medical

13  records and his opinions regarding the treatment provided to him.  He will further testify

14  regarding Plaintiff Thomas's specific allegations that in November 2011, he overdosed on

15  Diclofenac and did not receive medical attention, that he has experienced insomnia and

16  weight loss while in SMU, and was not prescribed a sleep aid.

17    Dr. Williams will testify regarding his review of Plaintiff Gamez's medical

18  records and his opinions regarding the treatment provided to him.  He will further testify

19  regarding Plaintiff Gamez's specific allegations that his care was managed by a nurse

20  practitioner, he did not receive follow-up tests to confirm that he has frontal lobe

21  dysfunction, and his medications have been denied or delayed.

22    Dr. Williams will testify regarding his review of Plaintiff Chisholm's

23  medical records and his opinions regarding the treatment provided to her.  He will further

24  testify regarding Plaintiff Chisholm's specific allegations that she was not referred to a

25  cardiologist for eight months despite experiencing chest pains and shortness of breath and

26  did not receive adequate care or testing from outside specialists.

27    Dr. Williams will testify regarding his review of Plaintiff Licci's medical

28  records and his opinions regarding the treatment provided to her.  He will further testify

50

regarding Plaintiff Licci's specific allegations that she has experienced delays in seeing an oncologist and receiving testing regarding masses on her breasts, mouth, arms, and ovaries, that she experiences extreme discomfort in her cervix that impacts her bowels and results in constipation, and medical staff make false claims in replies to her grievances. Dr. Williams will also testify regarding Plaintiff Licci's allegation that her port-a-cath may not have been properly flushed.

Dr. Williams will testify regarding his review of Plaintiff Hefner's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Hefner's specific allegations that his vision deteriorated after a nurse gave him expired eye drops, he did not receive eye medication following eye surgery in 2006 and 2008, has not seen an ophthalmologist, and experienced delay in receiving a CT scan following an injury.  He will testify regarding Plaintiff Hefner's allegation that he did not receive adequate treatment after an assault.  Dr. Williams will also testify regarding Plaintiff Hefner's claim that his requests for a medical diet have been denied.

Dr. Williams will testify regarding his review of Plaintiff Polson's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Polson's specific allegations that he experienced delays in receiving appropriate care and medications for chronic ear pain.

Dr. Williams will testify regarding his review of Plaintiff Wells' medical records and his opinions regarding the treatment provided to her.  He will further testify regarding Plaintiff Wells' specific allegations that she was not evaluated by a cardiologist despite repeated complaints of chronic chest pain.

Dr. Williams will testify regarding his review of Plaintiff Smith's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Smith's specific allegation that he was unable to write HNRs due to a hand injury.

Dr. Williams will testify regarding his review of Plaintiff Brislan's medical records and his opinions regarding the treatment provided to him.  He will further testify

regarding Plaintiff Brislan's specific allegation that he has lost weight due to insufficient meals.

In addition to testifying regarding the medical treatment of the named Plaintiffs, Dr. Williams will also testify regarding the health care provided to the individual inmates specifically referred to by Plaintiffs' experts and whether the care rendered was adequate, appropriate and meets the standard of care.

Based upon his professional training, experience, and review of the chart volume for the thirteen named Plaintiffs, Dr. Williams will be called to testify regarding his clinical opinion, that since March 4, 2103, each of the litigants who were seen by a medical provider, as documented in the chart, received care that is in line with clinical best practice approaches.  Overall, clinicians used approaches that addressed documented diagnostic concerns.  Documentation in standard SOAP format included examination findings, treatment plan, and follow up plans.  Follow up was performed as deemed appropriate by the medical provider.

44.   Joseph V. Penn, M.D., CCHP, F.A.P.A.
      UTMB Correctional Managed Care
      200 River Pointe Drive, Suite 200
      Conroe, Texas 77304
      (936) 494-4170

Dr. Penn is certified by the American Board of Psychiatry and Neurology in psychiatry and holds a subspecialty certification in forensic psychiatry and has been retained as an expert witness by Defendants Ryan and Pratt. Dr. Penn is a Certified Correctional Health Care Professional (CCHP), a Clinical Associate Professor of Psychiatry in the Department of Psychiatry and Behavioral Services at the University of Texas Medical Branch, Medical School and is the Director of Mental Health Services, University of Texas Medical Branch Correctional Managed Care.  Dr. Penn will testify consistent with the information and opinions set forth in his CONFIDENTIAL expert report, which is produced herewith as ADC203372 through ADC203515  A list of the documents and things Dr. Penn considered in the preparation of his report is contained

52

therein at ADC203467 through ADC203479.   In addition, Dr. Penn's curricula vitae (including his list of publications he has authored in the past ten years) is produced herewith as ADC203481 through ADC203509.   A list of cases where Dr. Penn has testified during the past four years is produced herewith as ADC203511 through ADC203513 **and an updated list was produced as ADC222041**.   Dr. Penn's fee schedule is produced herewith as ADC203515.

45.     John W. Dovgan, DDS
        3841 E. Thunderbird Road, Ste. 101
        Phoenix, Arizona 85032
        (602) 867-1899

Dr. Dovgan is a dentist licensed to practice in the State of Arizona and has been retained as an expert witness by Defendants Ryan and Pratt.   Dr. Dovgan will testify consistent with the information and opinions set forth in his CONFIDENTIAL expert report, which is produced herewith as ADC2203516through ADC203609.   A list of the documents and things Dr. Dovgan considered in the preparation of his report is contained therein at ADC203599 through ADC203609.   In addition, Dr. Dovgan's **updated** curricula vitae (including his list of publications he has authored in the past ten years) is produced herewith as ADC**222036** through ADC**222040**.   A list of cases where Dr. Dovgan has testified during the past four years is contained therein at ADC**222039** through ADC**222040**.   Dr. Dovgan's fee schedule is also contained therein at ADC**222040**.

46.     Richard P. Seiter, Ph.D.
        205 Topton Way
        St. Louis, Missouri 63105
        (314) 330-0658

Dr. Seiter holds a Ph.D. in Public Administration from The Ohio State University and has been retained as an expert witness by Defendants Ryan and Pratt.   He has served extensively with the Federal Bureau of Prisons, served six additional years as the Director of the Ohio Department of Rehabilitation and Correction, was the first Chief

of the NIC National Academy of Corrections, a full professor and Director of Criminal Justice at St. Louis University, and former Executive Vice President and Chief Corrections Officer for Corrections Corporation of America.  Dr. Seiter is also a past recipient of the E.R. Cass Award by the American Correctional Association (ACA) and the Louie Wainwright Award from the Association of State Correctional Administrators (ASCA).  Dr. Seiter will testify consistent with the information and opinions set forth in his CONFIDENTIAL expert report, which is produced herewith as ADC203610-ADC203762.  In addition, Dr. Seiter's biography and curricula vitae, including a list of cases where Dr. Seiter has testified in the past four years and his fee schedule is produced herewith as ADC203696-ADC203704.  A list of the documents and things Dr. Seiter considered in the preparation of his report is set forth at ADC203706-ADC203716.

      47.    Lawrence H. Mendel, D.O., FSCP, CCHP
               1255 N. Hamilton Road, #71
               Columbus, Ohio 43230
               (614) 471-8151

Dr. Mendel is a certified by the American Osteopathic Board of Family Practice and has been retained as an expert witness by Defendants Ryan and Pratt.  Dr. Mendel is a Fellow of the Society of Correctional Physicians and a Certified Correctional Health Care Professional.  Dr. Mendel has extensive practice as an emergency room physician as well as experience as both a provider and administrator in correctional healthcare settings.  Dr. Mendel served for more than ten years as the Medical Director of the Ohio Department of Rehabilitation and Correction, and has written, presented, and consulted extensively for a variety of governmental and private entities on questions relating to correctional healthcare.  Dr. Mendel also holds a faculty appointment with The Ohio State University as an Assistant Clinical Professor of Family Medicine.  Dr. Mendel will testify consistent with the information and opinions set forth in his CONFIDENTIAL expert report, which is produced herewith as ADC203763-ADC203835 **and his CONFIDENTIAL supplemental report, dated January 31, 2014, which is produced**

**as ADC229802-ADC229807**.  A list of the documents and things Dr. Mendel considered in the preparation of his report (**and January 31, 2014 supplemental report**) is contained therein at ADC203824-ADC203835.  In addition, Dr. Mendel's curricula vitae, including his list of recent publications, is produced herewith as ADC203814–ADC203817.  A list of cases where Dr. Mendel has testified in the past four years is produced herewith as ADC203819-ADC203822.  Dr. Mendel's fee schedule is set forth within the text of his CONFIDENTIAL expert report at ADC203765.

48.     Any and all foundational witnesses, including custodians of records necessary to lay foundation for the admissibility of evidence at trial.

B.  INDIVIDUALS WHO MAY BE CALLED TO TESTIFY

49.     Jeff Hood, ADC Deputy Director
        c/o Struck Wieneke & Love, P.L.C.

Jeff Hood is the Deputy Director of ADC.  Mr. Hood will testify regarding his training and experience in corrections, and with regard to ADC policies and procedures and conditions of confinement; the maintenance and administration of ADC institutions and programs; isolation and conditions of confinement issues in various ADC facilities as well as to ADC's compliance with constitutional requirements for the delivery of healthcare.

50.     James Taylor (former ADC HS Division, Contract Compliance Program
        Evaluation Administrator) Regional Vice President for Corizon
        c/o Corizon Health[2]
        105 Westpark Drive, Suite 200
        Brentwood, Tennessee 37027

James Taylor is the former HS Division, Contract Compliance Program Evaluation Administrator for ADC, and the current Regional Vice President at Corizon. Mr. Taylor is likely to have discoverable information with regard to ADC policies, practices, and procedures at the time of his employment with ADC, including those related to medical, dental and mental health needs; the privatization of the entire health care delivery system, specifically, the transition of the entire health care system to Wexford; the transition of the entire health care system to Corizon; and the provision of adequate care to ADC inmates in compliance with constitutional requirements.

51.     Arthur Gross, ADC HS Contract Monitoring Bureau, Assistant Director
        c/o Struck Wieneke & Love, P.L.C.

Arthur Gross is the current HS Contract Monitoring Bureau Assistant Director. Please see Exhibit Bates Numbered ADC123408-123412 for Mr. Gross's credentials and qualifications. Mr. Gross is likely to have discoverable information with regard to ADC policies and procedures at the time of his employment with ADC, including those related to medical, dental and mental health needs; the transition of the entire health care system to Corizon; the provision of adequate care to ADC inmates in compliance with constitutional and contract requirements; and his activities in reporting to the Director of the ADC, provision of oversight and direction to the monitoring team members responsible for ensuring that Corizon provides required health services to ADC's inmate population.

52.     Martin Winland, ADC HS Contract Monitoring Bureau, Quality/Clinical,
        Pharmacy Monitor (Pharmacist)
        c/o Struck Wieneke & Love, P.L.C.

---

[2] The contact information for all parties listed as in care of Corizon Health shall be the same as that listed for James Taylor, unless specifically stated otherwise.

1        Martin Winland is the current Contract Monitoring Bureau Pharmacy
2  Monitor, taking the place of Paulette Boothby as of June 2013.  He is likely to have
3  discoverable information regarding his knowledge of the PharmaCorr prescription and
4  delivery system and his knowledge of Corizon and PharmaCorr's performance under the
5  Contract with ADC.

6        53.    Julie Jackson, DW, ASPC-Florence
7               c/o Struck Wieneke & Love, P.L.C.

8        Deputy Warden Julie Jackson is likely to testify regarding her knowledge of
9  ADC's contemporary practices and procedures in relation to security operations, including
10  general information regarding ASPC-Florence, its cell blocks, the inmates housed at
11  ASPC-Florence, and recreation, therapy and behavioral programming at ASPC-Florence.
12  Deputy Warden Jackson is additionally likely to have discoverable information with
13  regard to Plaintiffs' institutional history and ADC's policies and procedures, and
14  conditions of confinement with respect to their respective facilities; Plaintiffs'
15  disciplinary, managerial, and behavior issues; practices and policies regarding inmates
16  with gang affiliations as well as ADC's management of gang affiliated inmates; any
17  Plaintiff's protective custody or classification status at any point during their incarceration
18  at ADC as well as the policies and procedures regarding the classification, housing,
19  programming, recreation, morale and welfare programs, and fundraisers; the management
20  of health care at each respective facility, the physical layout of each of their respective
21  facilities; alleged sanitation issues at their respective facilities; conditions of confinement
22  and management of maximum custody units; inmates' access to programming, visitation,
23  and recreation time; and educational programming available to inmates.

24        54.    Sandra Lawrence, DW, ASPC-Lewis-Stiner Unit (and former DW of
25               ASPC-Lewis-Bachman)
               c/o Struck Wieneke & Love, P.L.C.
26

27        Deputy Warden Sandra Lawrence is likely to testify regarding her
28  knowledge of ADC's contemporary practices and procedures in relation to security

operations, including general information regarding ASPC-Lewis/Stiner Unit, its cell blocks, the inmates housed at Stiner Unit, and recreation, therapy and behavioral programming at ASPC-Lewis.  Deputy Warden Lawrence is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.

     55.    Madeleine Perkins, DW, ASPC-Phoenix-Alhambra and Flamenco Units
               (and former DW of ASPC-Lewis-Stiner)
               c/o Struck Wieneke & Love, P.L.C.

       Deputy Warden Madeleine Perkins is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Phoenix/Alhambra and Flamenco Unit, the intake process at Alhambra, its cell blocks, the inmates housed at Alhambra and Flamenco Unit, and recreation, therapy and behavioral programming at ASPC-Alhambra and Flamenco.  Deputy Warden Perkins is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated

inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.

56.     Travis Scott, ADW, ASPC-Phoenix-Alhambra and Flamenco Units
c/o Struck Wieneke & Love, P.L.C.

Deputy Warden Travis Scott is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Phoenix/Alhambra and Flamenco Unit, the intake process at Alhambra, its cell blocks, the inmates housed at Alhambra and Flamenco Unit, and recreation, therapy and behavioral programming at ASPC-Alhambra and Flamenco. Deputy Warden Scott is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement within the maximum custody and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.

57.    Betty Barnes, DW, ASPC-Perryville-San Pedro
       c/o Struck Wieneke & Love, P.L.C

Deputy Warden Betty Barnes is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Perryville/San Pedro Unit, its housing units, the inmates housed at San Pedro Unit, and recreation, therapy and behavioral programming at ASPC-San Pedro.   Deputy Warden Barnes is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and inmate management; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.

58.    Anthony Coleman, (former DW, ASPC-Perryville-Santa Cruz), Current
       Interim FHA, Perryville
       c/o Corizon Health

Mr. Coleman is the current Interim Facility Health Administrator at ASPC-Perryville, and is likely to testify regarding his knowledge of ADC's policies and procedures regarding delivery of health care to ADC's inmate population at ASPC-Perryville; and the day-to-day operation of health services at ASPC-Perryville, including delivery of medication delivery of mental health care and dental care; her knowledge of the relationship between the operational staff at ADC and health care staff at Corizon, and the overall delivery of healthcare to the inmates. Mr. Coleman is likely to testify regarding

1   his knowledge of ADC's practices and procedures in relation to security operations,

2   including general information regarding ASPC-Perryville/Santa Cruz Unit, its housing

3   units, the inmates housed at Santa Cruz Unit, and recreation, therapy and behavioral

4   programming at ASPC-Santa Cruz Unit.  Mr. Coleman is additionally likely to have

5   discoverable information with regard to Plaintiffs' institutional history and ADC's

6   policies and procedures, and conditions of confinement with respect to their respective

7   facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies

8   regarding inmates with gang affiliations as well as ADC's management of gang affiliated

9   inmates; any Plaintiff's protective custody or classification status at any point during their

10  incarceration at ADC as well as the policies and procedures regarding the classification,

11  housing, programming, recreation, morale and welfare programs, and fundraisers; the

12  management of health care at each respective facility, the physical layout of each of their

13  respective facilities; alleged sanitation issues at their respective facilities; conditions of

14  confinement and inmate management; inmates' access to programming, visitation, and

15  recreation time; and educational programming available to inmates.

16      59.    Lacy Scott, DW, ASPC-Perryville-Lumley
17             c/o Struck Wieneke & Love, P.L.C.

18          Deputy Warden Lacy Scott is likely to testify regarding his knowledge of

19  ADC's contemporary practices and procedures in relation to security operations, including

20  general information regarding ASPC-Perryville/Lumley Unit, its cell blocks, the inmates

21  housed at Lumley Unit, and recreation, therapy and behavioral programming at ASPC-

22  Lumley Unit.   Deputy Warden Scott is additionally likely to have discoverable

23  information with regard to Plaintiffs' institutional history and ADC's policies and

24  procedures, and conditions of confinement with respect to their respective facilities;

25  Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding

26  inmates with gang affiliations as well as ADC's management of gang affiliated inmates;

27  any Plaintiff's protective custody or classification status at any point during their

28  incarceration at ADC as well as the policies and procedures regarding the classification,

housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.

60.   Panann Days, ADW, ASPC-Tucson Catalina Unit
      c/o Struck Wieneke & Love, P.L.C.

Deputy Warden Panann Days is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Tucson/Catalina Unit, its cell blocks, the inmates housed at Catalina Unit, and recreation, therapy and behavioral programming at ASPC-Tucson/Catalina Unit. Deputy Warden Days is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and inmate management; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.

61.   Angela Basurto, DWOP, ASPC-Yuma
      c/o Struck Wieneke & Love, P.L.C.

Deputy Warden of Operations Angela Basurto is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security

1   operations, including general information regarding ASPC-Yuma, its cell blocks, the

2   inmates housed at ASPC-Yuma, and recreation, therapy and behavioral programming at

3   ASPC-Yuma.  DWOP Basurto is additionally likely to have discoverable information with

4   regard to Plaintiffs' institutional history and ADC's policies and procedures, and

5   conditions of confinement with respect to their respective facilities; Plaintiffs'

6   disciplinary, managerial, and behavior issues; practices and policies regarding inmates

7   with gang affiliations as well as ADC's management of gang affiliated inmates; any

8   Plaintiff's protective custody or classification status at any point during their incarceration

9   at ADC as well as the policies and procedures regarding the classification, housing,

10  programming, recreation, morale and welfare programs, and fundraisers; the management

11  of health care at each respective facility, the physical layout of each of their respective

12  facilities; alleged sanitation issues at their respective facilities; conditions of confinement

13  and inmate management; inmates' access to programming, visitation, and recreation time;

14  and educational programming available to inmates.

15          62.     Jeri Pepelnjak, CO III at ASPC-Perryville
16                  c/o Struck Wieneke & Love, P.L.C.

17          CO III Pepelnjak is likely to testify regarding her knowledge of Plaintiff

18  Charlotte Wells, including Wells' institutional history and conduct while in incarceration.

19          63.     Dr. Tracy L. Crews, M.D., Former Psychiatrist at ASPC-Perryville
20                  444 N. 44th Street, Suite 400
                    Phoenix, AX 85008
21

22          Dr. Crews is the former Psychiatrist Supervisor at ASPC-Perryville.  Dr.

23  Crews was previously deposed in this case and, if unavailable at the time of trial,

24  Defendants will rely upon her deposition testimony.  Dr. Crews is likely to testify with

25  regard to her knowledge of the mental health needs and treatment of ADC's inmate

26  population, the contemporary mental health services policies and procedures implemented

27  during her tenure at ADC; mental health classifications for ADC inmates; the prescription

28  and delivery of psychiatric medication to ADC inmates; private and group therapy

sessions provided to ADC inmates at ASPC-Perryville. Dr. Crews will also testify regarding the mental health care provided to Plaintiff Christina Verduzco and that the care was not deliberately indifferent. Dr. Crews will testify that Ms. Verduzco has been diagnosed with schizophrenia, paranoid type, personality disorder, prior suicide attempts, poly substance abuse, and has been classified as "SMI". Specifically, Dr. Crews will state that the care provided to Ms. Verduzco is consistent with industry standards.

64. Ingebor Popin, Dental Assistant at ASPC-Perryville
c/o Corizon Health

Ingebor Popin is currently a Dental Assistant at ASPC-Perryville and is likely to testify regarding ADC's policies and procedures related to dental care provided to the ADC inmate population at ASPC-Perryville, including the dental HNR process, triaging of dental HNRs, informed consents for dental surgery, routine dental services provided to ADC's inmate population, and wait times for dental patients.

65. Martha Ortega, Dental Assistant II at ASPC-Phoenix
c/o Corizon Health

Martha Ortega is a Dental Assistant II at ASPC-Phoenix, and is likely to testify regarding her knowledge of ADC's policies and procedures for delivery of dental care to ADC's inmate population; the dental intake process for all male ADC inmates at ASPC-Phoenix; triage of dental HNRs; and dental treatment provided to ADC inmates, including pain evaluations, cleanings, fillings, and extractions.

66. Stephanie Leonard, Psy.D., at ASPC-Perryville/WTU
c/o Corizon Health

Stephanie Leonard, Psy.D. is a Clinical Psychologist currently at ASPC-Perryville/Women's Treatment Unit, and is likely to testify regarding her knowledge of ADC's policies and procedures relating to delivery of mental health care to ADC's inmate population; including prescription and delivery of psychiatric medications to inmates, psychiatric treatment plan implementation and follow-up, and policies and procedures for

1    placement of inmates on mental health and/or suicide watch.

2        67.    Tom A. Fulks, Mental Health Director, at ASPC-Phoenix
3               c/o Corizon Health

4        Tom Fulks is the Mental Health Director currently at ASPC-Phoenix, and

5    formerly at ASPC-Lewis, and is likely to testify regarding his knowledge of ADC's

6    policies and procedures relating to delivery of mental health care to ADC's inmate

7    population; including prescription and delivery of psychiatric medications to inmates,

8    psychiatric treatment plan implementation and follow-up, and policies and procedures for

9    placement of inmates on mental health and/or suicide watch.  Dr. Fulks will also testify

10   regarding his knowledge of the mental health treatment provided to named Plaintiffs

11   during their incarceration an ASPC-Lewis and/or ASPC-Phoenix.  Specifically, Dr. Fulks

12   will testify regarding the mental health treatment provided to Plaintiffs Stephen Swartz

13   and Dustin Brislan.  Dr. Fulks will also testify regarding the implementation of the

14   Phoenix Mission Statement and program model that is being utilized in providing mental

15   health treatment at ASPC-Phoenix.  This program model consists of elective groups that

16   are provided on an as-needed basis or as the clinical needs of the population demand on

17   each individual unit.  The program model also consists of self-study/peer run groups,

18   which are individualized to the particular needs of the population.  Dr. Fulks will testify

19   that the ultimate goal and mission of the program model is to provide inmates with the

20   skills necessary to live independently and become good citizens of the community,

21   whether it be while incarcerated or upon release.  Dr. Fulks will further testify that the

22   goal of the program model is to empower and encourage inmates to be productive,

23   respectful and independent citizens.

24       68.    Natalie Morales, Assistant Director of Nursing, at ASPC-Perryville
25               c/o Corizon Health

26       Natalie Morales is currently the Assistant Director of Nursing at ASPC-

27   Perryville, and is likely to testify regarding her knowledge of the ADC's policies and

28   procedures related to HNR processing and triage, scheduling of inmates on the nurse's

and provider's lines, and response to medical emergencies.

      69.    David Cresap, Director of Nursing at ASPC-Lewis
               c/o Corizon Health

      David Cresap is the current Director of Nursing at ASPC-Lewis, and is likely to testify regarding his knowledge of ADC's policies and procedures for delivery of health care to ADC's inmate population; including delivery of medication, triaging and scheduling inmates for medical appointments, and the methods of delivery of health care to populations with differing custody levels.

      70.    Carl Bynum, Associate Medical Director
               Corizon Health

      Carl Bynum is the Associate Medical Director for Corizon Health, and is expected to testify regarding Corizon's obligations under the Contract with ADC, Corizon's staffing, recruiting, policies, and the provision of medical health care to ADC's inmate population.

      71.    Anthony Medel, ADC HS Contract Monitoring Bureau, Contract
               Compliance Monitor II at ASPC-Yuma
               c/o Struck Wieneke & Love, P.L.C.

      Anthony Medel is the current Contract Monitor for ASPC-Yuma. Please see Exhibit Bates Numbered ADC123403-123407 for his credentials and qualifications. Mr. Medel may testify regarding his monitoring of policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; his activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; his knowledge of Corizon's performance under the Contract with ADC, and information contained within MGAR Reports.

66

1
2
3

    72.    Jessica Raak, ADC HS Contract Monitoring Bureau, Quality/Clinical,
              Program Comp Auditor III (Mental Health Auditor)
              c/o Struck Wieneke & Love, P.L.C.

4
5
6
7
8
9
10
11
12
13

        Jessica Raak is the current Program Compliance Auditor III (mental health auditor) for ADC. Please see Exhibit Bates Numbered ADC123424-123425 for her credentials and qualifications. Ms. Raak will testify regarding policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; and her knowledge of Corizon's performance under the Contract with ADC.

14
15
16

    73.    Jen Mielke-Fontaine, ADC HS Contract Monitoring Bureau, Audit Nurse
              Contract Monitor, ASPC-Florence
              c/o Struck Wieneke & Love, P.L.C.

17
18
19
20
21
22
23
24
25
26
27

        Jen Mielke-Fontaine is the current Audit Nurse Contract Monitor, ASPC-Florence, for ADC. She is also a Contract Compliance Monitor II, ASPC-Florence. Please see Exhibit Bates Numbered ADC123452-123453 for her credentials and qualifications. Ms. Mielke-Fontaine will testify regarding policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; and her knowledge of Corizon's performance under the Contract with ADC.

28

74.   Helena Valenzuela, ADC HS Contract Monitoring Bureau, Contract
      Compliance Monitor at ASPC Phoenix
      c/o Struck Wieneke & Love, P.L.C.

Helena Valenzuela is the current Contract Monitor at ASPC Phoenix. Please see Exhibit Bates Numbered ADC123452-123453 for her credentials and qualifications. Ms. Valenzuela will testify regarding her monitoring of policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; and her knowledge of Corizon's performance under the Contract with ADC.  Ms. Valenzuela will also testify regarding the medical care provided to Plaintiff Shawn Jensen and that the medical care was appropriate and within the applicable standard of care.  She will further testify regarding specific allegations made by Mr. Jensen as it relates to his medical care in connection with his treatment for prostate cancer.  Ms. Valenzuela will also testify that Mr. Jensen's allegations are false, including his allegation that Nurse Carmona manipulated his Foley Catheter and caused his urethra to tear from the bladder neck.  She will testify that this is more likely caused by Mr. Jensen's attempts to pull out his catheter. She will also testify regarding her observations and knowledge of Mr. Jensen's manipulative behavior.

75.   Matthew Musson, ADC HS Contract Monitoring Bureau, Contract
      Compliance Monitor - ASPC-Eyman
      c/o Struck Wieneke & Love, P.L.C.

Matthew Musson is the current Contractor Monitor at ASPC-Eyman for ADC. Please see Exhibit Bates Numbered ADC123447-123448 for his credentials and qualifications. Mr. Musson will testify regarding his monitoring of policies and

68

procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; his activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; his knowledge of Corizon's performance under the Contract with ADC, and information contained within the MGAR Reports.

76.  Terry Allred, ADC HS Contract Monitoring Bureau, Contract Compliance Monitor II – ASPC Lewis
c/o Struck Wieneke & Love, P.L.C.

Terry Allred is the current Contract Monitor at ASPC-Lewis. Please see Exhibit Bates Numbered ADC123470-123471 for his credentials and qualifications. Mr. Allred will testify regarding his monitoring of policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; his activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; reviews for inmate grievance appeal responses and investigations; his knowledge of Corizon's performance under the Contract with ADC, and information contained within MGAR Reports.

77.  Mark Haldane, ADC HS Contract Monitoring Bureau, Contract Compliance Monitor, ASPC-Perryville
c/o Struck Wieneke & Love, P.L.C.

Mark Haldane is the current Contract Monitor at ASPC-Perryville. Please see Exhibit Bates Numbered ADC123419-123421 for his credentials and qualifications. Mr. Haldane will testify regarding his monitoring of policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of

69

mental health care and dental care; his activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; reviews for inmate grievance appeal responses and investigations; his knowledge of Corizon's performance under the Contract with ADC, and information contained within the MGAR Reports.

78.    Marlena Bedoya, ADC HS Contract Monitoring Bureau, Contract
         Compliance Monitor
         c/o Struck Wieneke & Love, P.L.C.

Marlena Bedoya is the current Contract Monitor for ADC. Please see Exhibit Bates Numbered ADC123443-123446 for her credentials and qualifications. Ms. Bedoya will testify regarding her monitoring of policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; her knowledge of Corizon's performance under the Contract with ADC, and information contained within the MGAR Reports.

79.    Vanessa Headstream, ADC HS Contract Monitoring Bureau,
         Quality/Clinical, Health Services Coordinator (Nursing Monitor)
         c/o Struck Wieneke & Love, P.L.C.

Vanessa Headstream is the current Health Services Coordinator (Nursing Monitor) for ADC. Please see Exhibit Bates Numbered ADC123478-123480 for her credentials and experience. Ms. Headstream will testify regarding policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of

mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; and her knowledge of Corizon's performance under the Contract with ADC.

      80.    Yvonne Maese, ADC HS Contract Monitoring Bureau, Quality/Clinical, Program Evaluation Specialist (Audit Nurse) and temporary Contract Compliance Monitor at ASPC-Eyman.
             c/o Struck Wieneke & Love, P.L.C.

      Yvonne Maese is the current Program Evaluation Specialist (audit nurse) for ADC. She is also currently the temporary Contract Compliance Monitor for ASPC-Eyman while Matthew Musson is on military leave.  Please see Exhibit Bates Numbered ADC123481-123483 for her credentials and qualifications. Ms. Maese will testify regarding policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data;, random chart and medication monitoring, and ensuring performance guidelines are met in the clinical setting; and her knowledge of Corizon's performance under the Contract with ADC.

      81.    Julie Carter, Pharmacy Director
             c/o Corizon Health

      Ms. Carter is the Pharmacy Director for Corizon Health and is expected to testify regarding Corizon's obligations under the Contract with ADC, PharmaCorr's services under its contract with Corizon, and the provision of medical and psychiatric medication to ADC's inmate population.

      82.    Jason Reese, Executive Consultant II, Health Services Monitoring Bureau – ADC
             c/o Struck Wieneke & Love, P.L.C.

Mr. Reese is the Executive Consultant II for ADC's Health Services Monitoring Bureau.  He will testify regarding his personal knowledge of an analysis of Corizon's monthly, quarterly and ad hoc statistical reporting under the ADC Contract as well as his personal knowledge of ADC's submissions to the federal government related to the Death in Custody Reporting Program.

83.     Glen Babich, M.D. Associate Administrative Regional Medical Director

c/o Corizon Health

Based upon his professional training, experience, and review of the chart volume for the thirteen named Plaintiffs, Dr. Babich may be called to testify regarding his clinical opinion, that since March 4, 2103, each of the litigants who were seen by a medical provider, as documented in the chart, received care that is in line with clinical best practice approaches.  **Please see Exhibit Bates Numbered ADC229826-ADC229830 for his credentials and qualifications.**  Overall, clinicians used approaches that addressed documented diagnostic concerns.   Documentation in standard SOAP format included examination findings, treatment plan, and follow up plans.  Follow up was performed as deemed appropriate by the medical provider.

C.  INDIVIDUALS WHO MAY HAVE KNOWLEDGE

84.     Victor Parsons, former Arizona Department of Corrections ("ADC") Inmate
#123589, Plaintiff
c/o ACLU Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, Arizona  85013
(603) 650-1854

Victor Parsons is a former Plaintiff in this matter.  Mr. Parsons is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history.

85.     Shawn Jensen, ADC #032465, Plaintiff
        Arizona State Prison Complex ("ASPC")-Tucson-Manzanita Unit
        10000 South Wilmot
        P.O. Box 24401
        Tucson, Arizona  85734-4401
        (520) 574-0024

        Shawn Jensen is a Plaintiff in this matter.  Mr. Jensen is likely to have
discoverable information with regard to the allegations in the Complaint and his medical,
dental, mental health, social, educational, criminal and institutional history.

86.     Stephen Swartz, ADC #102486, Plaintiff
        ASPC-Lewis-Rast Unit
        26700 South Highway 85
        P.O. Box 3600
        Buckeye, Arizona  85326-3600
        (623) 386-6160

        Stephen Swartz is a Plaintiff in this matter.  Mr. Swartz is likely to have
discoverable information with regard to the allegations in the Complaint and his medical,
dental, mental health, social, educational, criminal and institutional history.

87.     Dustin Brislan, ADC #164993, Plaintiff
        ASPC-Eyman-SMU I
        4374 East Butte Avenue
        P.O. Box 4000
        Florence, Arizona  85132-4000
        (520) 868-0201

        Dustin Brislan is a Plaintiff in this matter.  Mr. Brislan is likely to have
discoverable information with regard to the allegations in the Complaint and his medical,
dental, mental health, social, educational, criminal and institutional history.

88.     Sonia Rodriguez, ADC #103830, Plaintiff
        ASPC-Perryville-Lumley Unit
        2105 North Citrus Road
        P.O. Box 3300
        Goodyear, Arizona  85395-0904
        (623) 853-0304

73

1    Sonia Rodriguez is a Plaintiff in this matter. Ms. Rodriguez is likely to have

2    discoverable information with regard to the allegations in the Complaint and her medical,

3    dental, mental health, social, educational, criminal and institutional history.

4        89.    Christina Verduzco, ADC #205576, Plaintiff
5               ASPC-Perryville-Lumley SMA
               2105 North Citrus Road
6               P.O. Box 3300
               Goodyear, Arizona  85395-0904
7               (623) 853-0304

8

9    Christina Verduzco is a Plaintiff in this matter.  Ms. Verduzco is likely to

10   have discoverable information with regard to the allegations in the Complaint and her

11   medical, dental, mental health, social, educational, criminal and institutional history.

12       90.    Jackie Thomas, ADC #211267, Plaintiff
               ASPC-Eyman-SMU I
13             4374 East Butte Avenue
               P.O. Box 4000
14             Florence, Arizona  85132-4000
               (520) 868-0201
15

16

17   Jackie Thomas is a Plaintiff in this matter.  Mr. Thomas is likely to have

18   discoverable information with regard to the allegations in the Complaint and his medical,

19   dental, mental health, social, educational, criminal and institutional history.

20       91.    Jeremy Smith, ADC #129438, Plaintiff
               ASPC-Lewis-Buckley Unit
21             26700 South Highway 85
               P.O. Box 3400
22             Buckeye, Arizona 85326-3400
               (623) 386-6160
23

24   Jeremy Smith is a Plaintiff in this matter.  Mr. Smith is likely to have

25   discoverable information with regard to the allegations in the Complaint and his medical,

26   dental, mental health, social, educational, criminal and institutional history.

27

28

74

92. Robert Gamez, ADC #131401, Plaintiff
    ASPC-Eyman-Browning Unit
    4374 East Butte Avenue
    P.O. Box 3400
    Florence, Arizona  85132-3400
    (520) 868-0201

Robert Gamez is a Plaintiff in this matter.  Mr. Gamez is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history.

93. Maryanne Chisholm, ADC #200825, Plaintiff
    ASPC-Perryville-Santa Cruz Unit
    2105 North Citrus Road
    P.O. Box 3200
    Goodyear, Arizona  85395-0903
    (623) 853-0304

Maryanne Chisholm is a Plaintiff in this matter.  Ms. Chisholm is likely to have discoverable information with regard to the allegations in the Complaint and her medical, dental, mental health, social, educational, criminal and institutional history.

94. Desiree Licci, ADC #150051, Plaintiff
    ASPC-Perryville-San Carlos Unit
    2105 North Citrus Road
    P.O. Box 3700
    Goodyear, AZ 85395-0909
    (623) 853-0304

Desiree Licci is a Plaintiff in this matter.  Ms. Licci is likely to have discoverable information with regard to the allegations in the Complaint and her medical, dental, mental health, social, educational, criminal and institutional history.

95. Joseph Hefner, ADC #203653, Plaintiff
    ASPC-Lewis-Barchey Unit
    26700 South Highway 85
    P.O. Box 3200
    Buckeye, Arizona 85326-3200
    (623) 386-6160

75

Joseph Hefner is a Plaintiff in this matter.  Mr. Hefner is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history.

96.     Joshua Polson, ADC #187716, Plaintiff
        ASPC-Lewis-Rast Unit
        26700 South Highway 85
        P.O. Box 3600
        Buckeye, Arizona 85326-3600
        (623) 386-6160

Joshua Polson is a Plaintiff in this matter.  Mr. Polson is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history.

97.     Charlotte Wells, ADC #247188, Plaintiff
        ASPC-Perryville-Santa Rosa Unit
        2105 North Citrus Road
        P.O. Box 3500
        Goodyear, AZ 85395-0907
        (623) 853-0304

Charlotte Wells is a Plaintiff in this matter.  Ms. Wells is likely to have discoverable information with regard to the allegations in the Complaint and her medical, dental, mental health, social, educational, criminal and institutional history.

98.     Michael Adu-Tutu, M.D., Former ADC Interim Director, HS Division,
        c/o Struck Wieneke & Love, P.L.C.

Dr. Michael Adu-Tutu is a former ADC employee and was the Interim Division Director of Health Services at ADC prior to Mr. Pratt. Dr. Adu-Tutu was deposed in this matter and, if unavailable for trial, Defendants will rely on his deposition testimony. Dr. Michael Adu-Tutu is likely to have discoverable information with regard to all materials authored by him, including the Dental Services Technical Manual and educational programs regarding dental care.

99.   Laurie Berg, ADC HS Division, Executive Staff Assistant
      c/o Struck Wieneke & Love, P.L.C.

Laurie Berg is the current HS Division Executive Staff Assistant and is likely to have discoverable information regarding the maintenance and storage of inmate records while kept at ADC Central Offices.

100.  Thomas Higginson, ADW, ASPC-Eyman-Meadows Unit (and former ADW for ASPC-Eyman-Browning)
      c/o Struck Wieneke & Love, P.L.C.

101.  Ralph Cluff, DW, ASPC-Eyman-Rynning Unit
      c/o Struck Wieneke & Love, P.L.C.

102.  Geralynn Woods, ADW, ASPC-Eyman-Rynning Unit (and former ADW, ASPC-Florence-Central)
      c/o Struck Wieneke & Love, P.L.C.

103.  Jeffrey Freeland, DW, ASPC-Eyman-Cook Unit
      c/o Struck Wieneke & Love, P.L.C.

104.  Randy Ibarra, ADW, ASPC-Eyman-Cook Unit
      c/o Struck Wieneke & Love, P.L.C.

105.  Ed Lao, DW, ASPC-Eyman-Meadows Unit
      c/o Struck Wieneke & Love, P.L.C.

106.  Teresa Hetmer, ADW, ASPC-Eyman-Meadows Unit (and former ADW of ASPC-Douglas-Mohave)
      c/o Struck Wieneke & Love, P.L.C.

107.  Kevin Curran, DWOP, ASPC-Florence
      c/o Struck Wieneke & Love, P.L.C.

108.  Greg Fizer, DW, ASPC-Florence-Central Unit
      c/o Struck Wieneke & Love, P.L.C.

109.  Jeff Van Winkle, DW, ASPC-Florence-South Unit
      c/o Struck Wieneke & Love, P.L.C.

110.  Annemarie Smith-Whitson, ADW, ASPC-Florence-South Unit
      c/o Struck Wieneke & Love, P.L.C.

111.  Ron Lee, DW, ASPC-Florence-North Unit
      c/o Struck Wieneke & Love, P.L.C.

77

112. William Dodds, ADW, ASPC-Florence-North Unit
c/o Struck Wieneke & Love, P.L.C.

113. Thomas Kane, DW, ASPC-Florence-East Unit
c/o Struck Wieneke & Love, P.L.C.

114. April Robinson, DW, ASPC-Florence-Globe Unit
c/o Struck Wieneke & Love, P.L.C.

115. David Summers, ADW, ASPC-Lewis-Stiner Unit
c/o Struck Wieneke & Love, P.L.C.

116. Doug Schuster, DW, ASPC-Lewis-Morey Unit
c/o Struck Wieneke & Love, P.L.C.

117. Brenda Burgess, ADW, ASPC-Lewis-Morey Unit
c/o Struck Wieneke & Love, P.L.C.

118. Kimberly Currier, DW, ASPC-Lewis-Barchey Unit
c/o Struck Wieneke & Love, P.L.C.

119. Brenda Burgess, DW, ASPC-Lewis-Bachman Unit
c/o Struck Wieneke & Love, P.L.C.

120. Terry Hibbard, ADW, ASPC-Lewis-Bachman Unit
c/o Struck Wieneke & Love, P.L.C.

121. Hugh Matson, DW, ASPC-Lewis-Sunrise and Eagle Point Units
c/o Struck Wieneke & Love, P.L.C.

122. Regina Dorsey, DW, ASPC-Lewis-Buckley Unit
c/o Struck Wieneke & Love, P.L.C.

123. John Weiss, ADW, ASPC-Lewis-Buckley Unit
c/o Struck Wieneke & Love, P.L.C.

124. Michael McCarville, DW, ASPC-Lewis-Rast Unit
c/o Struck Wieneke & Love, P.L.C.

125. Norm Twyford, DW Compliance, ASPC-Phoenix
c/o Struck Wieneke & Love, P.L.C.

126. Kelly Pierce, DW, ASPC-Phoenix-Aspen Unit
c/o Struck Wieneke & Love, P.L.C.

127.   Wayne Mooney, DW Compliance, ASPC-Winslow (and former ADW of
       ASPC-Eyman-Cook)
       c/o Struck Wieneke & Love, P.L.C.

128.   Heather Pruett, DW, ASPC-Winslow-Kaibab Unit
       c/o Struck Wieneke & Love, P.L.C.

129.   Rick Morales, ADW, ASPC-Winslow-Kaibab Unit
       c/o Struck Wieneke & Love, P.L.C.

130.   Ed White, DW, ASPC-Winslow-Coronado Unit
       c/o Struck Wieneke & Love, P.L.C.

131.   Vivian Baltierra, DW, ASPC-Winslow-Apache Unit
       c/o Struck Wieneke & Love, P.L.C.

132.   Wayne Wilson, DWOP, ASPC-Douglas (and former DW of ASPC-
       Douglas-Mohave)
       c/o Struck Wieneke & Love, P.L.C.

133.   Bruce Cattell, DW, ASPC-Douglas-Gila Unit
       c/o Struck Wieneke & Love, P.L.C.

134.   Render Gregory, ADW, ASPC-Douglas-Gila Unit
       c/o Struck Wieneke & Love, P.L.C.

135.   Marvin Shatto, DW, ASPC-Douglas-Mohave Unit
       c/o Struck Wieneke & Love, P.L.C.

136.   Mark Jacobson, ADW, ASPC-Douglas-Mohave Unit
       c/o Struck Wieneke & Love, P.L.C.

137.   Robert Langham, DW, ASPC-Douglas-Eggers Unit (and former DW of
       ASPC-Safford-Tonto)
       c/o Struck Wieneke & Love, P.L.C.

138.   Tom Paplawsky, DW, ASPC-Douglas-Papago Unit (and former ADW of
       ASPC-Douglas-Gila)
       c/o Struck Wieneke & Love, P.L.C.

139.   Carol Ortiz, ADW, ASPC-Perryville-Lumley
       c/o Struck Wieneke & Love, P.L.C.

140.   Cindy Neese, DW, ASPC-Perryville-Piestewa Unit
       c/o Struck Wieneke & Love, P.L.C.

141.  Josie James, DW, ASPC-Perryville-Santa Rosa Unit
      c/o Struck Wieneke & Love, P.L.C.

142.  William White, DW, ASPC-Perryville-Santa Maria Unit
      c/o Struck Wieneke & Love, P.L.C.

143.  Andrew Jackson, DW, ASPC-Perryville-San Carlos Unit
      c/o Struck Wieneke & Love, P.L.C.

144.  Jeffrey Hughes, ADW, ASPC-Perryville-San Carlos Unit
      c/o Struck Wieneke & Love, P.L.C.

145.  Meegan Muse, DWOP, ASPC-Safford (and former DW of ASPC-Phoenix-
      Alhambra and Flamenco)
      c/o Struck Wieneke & Love, P.L.C.

146.  Richard Haggard, DW, ASPC-Safford-Tonto Unit (and former ADW of
      ASPC-Safford-Fort Grant)
      c/o Struck Wieneke & Love, P.L.C.

147.  Roxanne Hill, DW, ASPC-Safford-Graham Unit
      c/o Struck Wieneke & Love, P.L.C.

148.  Kim Daniel, DW, ASPC-Safford-Fort Grant Unit
      c/o Struck Wieneke & Love, P.L.C.

149.  Dave Mueller, DWOP, ASPC-Tucson
      c/o Struck Wieneke & Love, P.L.C.

150.  Anna Jacobs, DW, ASPC-Tucson-Rincon and Minors Units
      c/o Struck Wieneke & Love, P.L.C.

151.  Glenn Pacheco, ADW, ASPC-Tucson-Rincon and Minors Units
      c/o Struck Wieneke & Love, P.L.C.

152.  Staci Fay, DW, ASPC-Tucson-Santa Rita Unit (and former ADW of ASPC-
      Eyman-Cook)
      c/o Struck Wieneke & Love, P.L.C.

153.  Linda Forester, DW, ASPC-Tucson-Cimarron Unit
      c/o Struck Wieneke & Love, P.L.C.

154.  Danial Lundberg, DW, ASPC-Tucson-Manzanita Unit
      c/o Struck Wieneke & Love, P.L.C.

155.  Chris Lang, DW, ASPC-Tucson-Winchester Unit
      c/o Struck Wieneke & Love, P.L.C.

156. Linda Vega, DW, ASPC-Tucson-Catalina Unit
c/o Struck Wieneke & Love, P.L.C.

157. Daniella Stemple, DW, ASPC-Tucson-Whetstone Unit
c/o Struck Wieneke & Love, P.L.C.

158. Jo Mountain, DW, ASPC-Tucson-SACRC (Southern Arizona Correctional Release Center)
c/o Struck Wieneke & Love, P.L.C.

159. Teru Osorio, DW Compliance, ASPC-Yuma (and former ADW of ASPC-Yuma-Dakota)
c/o Struck Wieneke & Love, P.L.C.

160. Gerardo Zaragoza, DW, ASPC-Yuma-Cocopah Unit (and former ADW of ASPC-Yuma-La Paz)
c/o Struck Wieneke & Love, P.L.C.

161. Carla Hacker-Agnew, DW, ASPC-Yuma-Cheyenne Unit (and former DW of ASPC-Yuma-La Paz)
c/o Struck Wieneke & Love, P.L.C.

162. Rose Sanders, DW, ASPC-Yuma-Dakota Unit
c/o Struck Wieneke & Love, P.L.C.

163. Robert Bayles, ADW, ASPC-Yuma-Dakota Unit (and former DW of ASPC-Yuma-Cibola)
c/o Struck Wieneke & Love, P.L.C.

164. Tomas Ayala, DW, ASPC-Yuma-La Paz Unit (and former DW of Compliance at ASPC-Yuma)
c/o Struck Wieneke & Love, P.L.C.

165. Felipe Solis, ADW, ASPC-Yuma-La Paz Unit
c/o Struck Wieneke & Love, P.L.C.

166. Edwin Jensen, DW, ASPC-Yuma-Cibola Unit (and former DW of ASPC-Yuma-Cocopah)
c/o Struck Wieneke & Love, P.L.C.

167. Melissa Wallace, ADW, ASPC-Yuma-Cibola Unit
c/o Struck Wieneke & Love, P.L.C.

168. Timothy R. Johnson, M.S., PA-C, at ASPC-Perryville
c/o Corizon Health

169.   Rumaldo Rodriguez, at ASPC-Perryville
       c/o Corizon Health

In addition to the expected testimony listed below, Mr. Rodriguez is expected to testify regarding his interactions with and the medical treatment provided to named Plaintiffs Desiree Licci, Maryanne Chisholm, and Charlotte Wells.

170.   Mary Gillespie, D.A. II, at ASPC-Perryville
       c/o Corizon Health

171.   Vicente O. Enciso, M.D., at ASPC-Perryville
       c/o Corizon Health

In addition to the expected testimony listed below, Dr. Ensico is expected to testify as to his interactions with, knowledge of and medical treatment provided to Plaintiffs Desiree Licci, Maryanne Chisholm, and Charlotte Wells.

172.   Tracy Tolentino, CL.P.N. II, at ASPC-Florence
       c/o Corizon Health

173.   Ralph Mertens, Psych Assoc. II, at ASPC-Eyman
       c/o Corizon Health

In addition to the expected testimony listed below, Dr. Mertens is expected to testify regarding the mental health treatment, including therapy sessions and medication prescriptions and administration provided to inmates at ASPC-Eyman.  Specifically, Dr. Mertens will testify regarding the mental health treatment of Plaintiff Dustin Brislan and the appropriateness of that treatment and that it was within the applicable standard of care.

174.   Mike King, Psych Ass. II, at ASPC-Florence
       c/o Corizon Health

175.   Jessica A. Harrison, M.D. PhD, at ASPC-Tucson
       c/o Corizon Health

176.   Phillip E. Lucas, D.D.S., Dental Director, at ASPC-Safford
       c/o Corizon Health

177.   Quoc V. Luc, LAC–Psych Associate II, at ASPC- Perryville
c/o Corizon Health

178.   Peter Bishop, former D.O., at ASPC-Eyman
c/o Corizon Health

In addition to the expected testimony listed below, Dr. Bishop will testify regarding requests for specific medications made by Plaintiff Jackie Thomas and the reasons for withholding or prescribing certain medications.  He will also testify regarding Plaintiff Thomas's abuse, misuse, and attempted overdose of various medications.

179.   Humberto Sirvent, PN II, Mental Health RN, at ASPC-Phoenix Baker Ward
c/o Corizon Health

180.   Thomas Bell, D.O., former Medical Director, at ASPC-Lewis
c/o Corizon Health

In addition to the expected testimony listed below, Dr. Bell will testify regarding the medical treatment provided to Plaintiff Stephen Swartz.  He will also testify regarding the numerous occasions where Mr. Swartz has swallowed foreign objects such as springs, paperclips and wire and the medical treatment that followed as a result.  He will testify that the medical treatment provided to Mr. Swartz after these incidents was appropriate and within the applicable standard of care.

181.   Troy Garey, D.M.D., at ASPC-Douglas
c/o Corizon Health

182.   Jason Newell, Psychologist II, Mental Health Director, at ASPC-Phoenix
c/o Corizon Health

183.   Kay Mansfield-Blair, PHD, Psychology Associate, at ASPC-Perryville
c/o Corizon Health

184.   Catherine Rosa-Sierra, Psychiatric Associate, at ASPC-Perryville
c/o Corizon Health

185.   John St. Clair, Ph.D., Psychologist III, at ASPC-Perryville
c/o Corizon Health

In addition to the expected testimony listed below, Dr. St. Clair is expected to testify as to the mental health treatment available and provided to the inmates housed at ASPC-Perryville, including Plaintiffs Christina Verduzco, Sonia Rodriguez and Maryanne Chisholm.  He is also expected to testify regarding the programs, medication prescriptions and administration for mental health services at ASPC-Perryville.   Dr. St. Clair is expected to testify that the mental health treatment available and provided to the inmates is appropriate and within the applicable standard of care.

186.   Dale Lee Palmer, former D.O., at ASPC-Perryville
      c/o Corizon Health

In addition to the expected testimony listed below, Dr. Palmer is expected to testify regarding the medical care provided to the inmates housed at ASPC-Perryville and that such medical care is appropriate and within the applicable standard of care. Specifically, Dr. Palmer is expected to testify regarding the medical care, including referrals to outside medical providers, on-site medical appointments and medication prescription and administration for Plaintiffs Maryanne Chisholm and Charlotte Wells.

187.   Sandra Ekeinde, Ph.D. Psychologist II, at ASPC-Phoenix
      c/o Corizon Health

188.   Tamara Lee Porter, C.R.N., Director of Nursing, at ASPC-Tucson
      c/o Corizon Health

189.   Jacqueline Worsley, Psy.D. Psychologist II, at ASPC-Phoenix
      c/o Corizon Health

In addition to the expected testimony listed below, Dr. Worsley is expected to testify regarding the mental health treatment provided to inmates at ASPC-Phoenix. Specifically, Dr. Worsley is expected to testify as to the treatment she provided to Plaintiff Dustin Brislan and that the treatment was appropriate and within the applicable standard of care.

190.   Michael F. Cleary, M.S., Psychiatrist, at ASPC-Phoenix
      c/o Corizon Health

In addition to the expected testimony listed below, Dr. Cleary is expected to testify regarding the mental health treatment provided to inmates at ASPC-Phoenix. Specifically, Dr. Cleary is expected to testify as to the treatment he provided to Plaintiff Dustin Brislan and that the treatment was appropriate and within the applicable standard of care.

191.  Daniel James, Psych Associate, ASPC-Lewis
      c/o Corizon Health

192.  Jose De Los Santos, D.D.S., at ASPC-Perryville
      c/o Corizon Health

193.  Dr. Jesse R, Coons, D.O., Medical Director at ASPC-Safford
      c/o Corizon Health

194.  Irma Paulley, D.D.S., Dental Director at ASPC-Tucson
      c/o Corizon Health

195.  Annette Jasinsky, C.R.N.S. I, former Director of Nursing at ASPC-
      Perryville
      c/o Corizon Health

196.  Sherri Cluff, C.R.N., RN Supervisor at ASPC-Safford
      c/o Corizon Health

197.  Jack Fredrickson, D.D.S., former Dental Director at ASPC-Douglas
      c/o Corizon Health

198.  Andrea Irving, D.O., Medical Director at ASPC-Perryville
      c/o Corizon Health

199.  Joel Turner, Dental Director at ASPC-Douglas
      c/o Corizon Health

200.  David Hill, Dentist at ASPC-Eyman
      c/o Corizon Health

201.  Sean Ziaei, Dentist at ASPC-Eyman and ASPC-Lewis
      c/o Corizon Health

202.  Wallace Rumsey, Physician at ASPC-Eyman
      c/o Corizon Health

85

1
2

203.   Sarah Foxley, Psychologist at ASPC-Eyman
       c/o Corizon Health

3
4

204.   Jamie Kenney, former Psychologist at ASPC-Eyman
       c/o Corizon Health

5

205.   Charles Moore, former Regional Director at ASPC-Eyman
       c/o Corizon Health

6
7

206.   Nicole Bradfield, former RN Supervisor at ASPC-Eyman
       c/o Corizon Health

8
9

207.   Donna Lee Thies, LPN at ASPC-Florence
       c/o Corizon Health

10
11

208.   Carlos Weekly, Dental Director at ASPC-Florence
       c/o Corizon Health

12

209.   John Jang, Dentist at ASPC-Florence
       c/o Corizon Health

13
14

210.   Joanne Curry, Dentist at ASPC-Florence
       c/o Corizon Health

15
16

211.   Phillip Hendrix, Dentist at ASPC-Florence
       c/o Corizon Health

17
18

212.   Shantell Artley, former Director of Nursing at ASPC-Florence
       c/o Corizon Health

19

213.   Zoran Vukcevic, Medical Director at ASPC-Florence
       c/o Corizon Health

20
21

214.   Dragica Lekic, former Psychiatrist at ASPC-Florence
       c/o Corizon Health

22
23

215.   Syed Asad Raza, Psychiatrist at ASPC-Florence
       c/o Corizon Health

24
25

216.   Christine Pereira, Assistant FHA at ASPC-Florence
       c/o Corizon Health

26

217.   Elizabeth McCrehin, former RN Supervisor at ASPC-Florence
       c/o Corizon Health

27
28

218.   Karen Hudson, LPN at ASPC-Perryville
       c/o Corizon Health

219. Kendrick Gray, Dentist at ASPC-Perryville and ASPC-Lewis
c/o Corizon Health

220. Liliana Garcia, Dentist at ASPC-Perryville
c/o Corizon Health

221. Jeffrey Sharp, M.D., at ASPC-Perryville
c/o Corizon Health

222. Ronald Schwartz, Psychiatrist at ASPC-Perryville
c/o Corizon Health

223. Selam Gebre, Clinical Coordinator at ASPC-Phoenix
c/o Corizon Health

224. Robert Kearney, Psychiatric RN Supervisor at ASPC-Phoenix
c/o Corizon Health

225. Richard Christiansen, Director of Nursing at ASPC-Phoenix
c/o Corizon Health

226. Laura Sherman, former Psychiatric Director at ASPC-Phoenix
c/o Corizon Health

227. Ruth Tenrreiro, Psychologist at ASPC-Eyman
c/o Corizon Health

In addition to the expected testimony listed below, Dr. Tenrreiro is expected to testify regarding the mental health treatment provided to inmates. Specifically, Dr. Tenrreiro is expected to testify as to the treatment she provided to Plaintiff Dustin Brislan and that the treatment was appropriate and within the applicable standard of care.

228. Pamela Stein, RN Supervisor at ASPC-Phoenix
c/o Corizon Health

229. Erica Johnson, former Clinical Coordinator at ASPC-Lewis
c/o Corizon Health

230. Laura Hale, Dental Director at ASPC-Lewis
c/o Corizon Health

In addition to the expected testimony listed below, Dr. Hale is a dentist employed by Smallwood Prison Dentistry and is assigned to ASPC–Lewis. Dr. Hale will

87

specifically testify regarding the dental treatment provided to Plaintiff Joshua Polson.  She will testify regarding the dental procedures and work she performed on Mr. Polson's dentures on several different occasions.

231.   Hugh Conway, Dentist at ASPC-Lewis
       c/o Corizon Health

232.   Sundeep Gill, Dentist at ASPC-Eyman
       c/o Corizon Health

233.   Kenneth Merchant, Physician at ASPC-Lewis
       c/o Corizon Health

234.   Christine Sparacino, Psychologist at ASPC-Lewis
       c/o Corizon Health

235.   Charmarie Frantz, Director of Nursing at ASPC-Safford
       c/o Corizon Health

236.   Carolyn Rihanek, Dentist at ASPC-Tucson
       c/o Corizon Health

237.   Hector Vega, Dentist at ASPC-Tucson
       c/o Corizon Health

238.   Lisa Allard, RN at ASPC-Tucson
       c/o Corizon Health

239.   Kevin Lewis, former Medical Director at ASPC-Tucson
       c/o Corizon Health

240.   Robert Winsky, Jr. Psychiatrist at ASPC-Tucson
       c/o Corizon Health

241.   Susan Santa Cruz, former Psychologist at ASPC-Tucson
       c/o Corizon Health

242.   William Brautigam, Psychologist at ASPC-Tucson
       c/o Corizon Health

243.   Cristobal Eblen, Psychologist at ASPC-Tucson
       c/o Corizon Health

244.   Elsie Stowell, Facility Health Administrator at ASPC-Winslow
       c/o Corizon Health

88

245.   Amy Shumway, RN at ASPC-Winslow
       c/o Corizon Health

246.   Kenneth Rice, Dental Director at ASPC-Winslow
       c/o Corizon Health

247.   Robin Boyd, Dentist at ASPC-Winslow
       c/o Corizon Health

248.   Julie Lucek, Director of Nursing at ASPC-Winslow
       c/o Corizon Health

249.   Robert Balda, RN Supervisor at ASPC-Winslow
       c/o Corizon Health

250.   Emily Elmer, RN Supervisor at ASPC-Winslow
       c/o Corizon Health

251.   Daniela Munoz, Clinical Coordinator at ASPC-Yuma
       c/o Corizon Health

252.   Rick Jones, former Dental Director at ASPC-Yuma
       c/o Corizon Health

253.   Deborah Williams, Dentist at ASPC-Yuma
       c/o Corizon Health

254.   James Browning, Dentist at ASPC-Yuma
       c/o Corizon Health

255.   Karen Robles, Director of Nursing at ASPC-Yuma
       c/o Corizon Health

256.   Ed Gogek, Psychiatrist at ASPC-Yuma
       c/o Corizon Health

257.   Deanna McGowan, RN at ASPC-Eyman
       c/o Corizon Health

In addition to the expected testimony listed below, Nurse McGowan is expected to testify regarding her interactions with Plaintiff Jackie Thomas. Specifically, she will testify regarding the programming and group therapy he is currently involved in and the improvements she has seen in his condition as a result.

89

258.  Jodie Clark, RN Supervisor at ASPC-Eyman
      c/o Corizon Health

259.  Glenn Finch, RN Supervisor at ASPC-Eyman
      c/o Corizon Health

260.  Terri Jackson, RN Supervisor at ASPC-Eyman
      c/o Corizon Health

261.  Kelly Mier, RN Supervisor at ASPC-Eyman
      c/o Corizon Health

262.  Gregory Schumacher, Clinical Coordinator, ASPC-Florence
      c/o Corizon Health

263.  Angharad Rees, Director of Nursing, ASPC-Florence
      c/o Corizon Health

264.  Jawad Rias, Psychiatrist, ASPC-Florence
      c/o Corizon Health

265.  Lucy Burciaga, Medical Director, ASPC-Tucson
      c/o Corizon Health

266.  Donna Greenwalt, Clinical Coordinator, ASPC-Perryville
      c/o Corizon Health

267.  ~~Tom Buenker, Psychiatric Director, ASPC-Phoenix~~
      ~~c/o Corizon Health~~

268.  Daniel McDonnell, Psychologist, ASPC-Tucson
      c/o Corizon Health

269.  Sherry Holly-Reps, Psychologist, ASPC-Florence
      c/o Corizon Health

270.  Melissa Knowlton, Psychologist, ASPC-Florence
      c/o Corizon Health

271.  Laura Lee, Clinical Coordinator, ASPC-Winslow
      c/o Corizon Health

272.  Doi Durtschi, RN Supervisor, ASPC-Florence
      c/o Corizon Health

273.  Cherie Getts, RN Supervisor, ASPC-Florence
      c/o Corizon Health

274.   Billie Jo Mason, RN Supervisor, ASPC-Florence
       c/o Corizon Health

275.   Angela Townsend, RN Supervisor, ASPC-Florence
       c/o Corizon Health

276.   Elaine Clayton, RN Supervisor, ASPC-Phoenix
       c/o Corizon Health

277.   Kellie Rogers, FHA, ASPC-Yuma
       c/o Corizon Health

In addition to the expected testimony listed below, Ms. Rogers is likely to testify regarding her knowledge of ADC's policies and procedures for delivery of health care to ADC's inmate population; including delivery of medications, delivery of mental health care and dental care, and the day-to-day operation of health services at Yuma.  Ms. Rogers is also expected to testify regarding the scheduling of health care appointments and Yuma's recent implementation of the Care Log system which electronically tracks and schedules follow up appointments for inmates with chronic care conditions, and the overall delivery of healthcare to the inmates.

278.   Michele Epstein, M.D., Psychiatrist at ASPC-Yuma
       c/o Corizon Health

Dr. Epstein is a psychiatrist at ASPC-Yuma.   Dr. Epstein is expected to testify regarding the mental health treatment provided to inmates at ASPC-Yuma.

279.   Karen Chu, ADC HS Contract Monitoring Bureau, Quality/Clinical, Dental
       Program Manager
       c/o Struck Wieneke & Love, P.L.C.

Karen Chu is the current HS Contract Monitoring Bureau, Quality/Clinical, Dental Program Manager.   Please see Exhibit Bates Numbered ADC123434 for her credentials and qualifications.   Dr. Chu is likely to have discoverable information regarding ADC's policies and procedures related to provision of dental care to the ADC inmate population; her knowledge of Plaintiffs' dental health needs; as well as the provision of adequate care to ADC inmates in compliance with constitutional

requirements; her activities in the review and analysis of dental services provided to ADC's inmate population, review and analysis of inmate charts, and response to inquiries from monitoring staff regarding appropriateness of dental services, practices and protocols.

The above listed witnesses (95-276) are likely to have discoverable information regarding the PROVISION OF DENTAL, MEDICAL AND/OR MENTAL HEALTH CARE PROVIDED TO PLAINTIFFS WHILE INCARCERATED AT ADC FACILITIES; knowledge they may have of Plaintiffs' prior dental, medical, and mental health history as well as the symptoms they complained of or presented while in ADC custody; their experiences with Plaintiffs, as to whether Plaintiffs participated in their own care, missed or refused appointments, were a less than cooperative patient care and whether Plaintiffs were a poor historian with respect to self-reports of dental, medical, and mental history they provided; ADC policies and procedures applicable to the provision of dental, medical, and mental health care to inmates; any and all records they authored or reviewed; the level of care received by ADC inmates; the allegations set forth in Plaintiffs' Complaint.

280.   Dennis P. Eddy, ADC #053476
        ASPC-Eyman-SMU I
        P.O. Box 4000
        Florence, AZ 85132-4000

Dennis Eddy is an inmate incarcerated under the care and custody of the ADC.  Mr. Eddy is likely to have discoverable information with regard to Plaintiff Dustin Brislan's aggressive behavior while incarcerated.

281.   Robert Patton, ADC Division Director of Offender Operations
        c/o Struck, Wieneke & Love, PLC

Mr. Patton has knowledge and information regarding the ADC's operations and security.

282.   Sgt. Whiting, ADC Sergeant at ASPC-Lewis-Rast Unit
        c/o Struck Wieneke & Love PLLC

Sgt. Whiting has knowledge and information regarding Joshua Polson's refusal to receive legal mail from Donald Specter of the PLO on March 13, 2013.

283.   CO II Perry, Correctional Officer at ASPC-Lewis-Rast Unit
c/o Struck Wieneke & Love PLLC

CO II Perry has knowledge and information regarding Plaintiff Joshua Polson's refusal of legal mail from Donald Specter of the PLO on March 13, 2013, and from Perkins Coie on March 15, 2013.

284.   Archuleta, #4284, ADC CO II at ASPC-Lewis-Complex Mailroom
c/o Struck, Wieneke & Love, PLC

CO II Archuleta has knowledge and information regarding Plaintiff Joshua Polson's refusal to receive legal mail from Donald Specter of the PLO on March 13, 2013, and from Perkins Coie on March 15, 2013.

285.   Harp, ADC CO II at ASPC-Lewis-Complex Mailroom
c/o Struck, Wieneke & Love, PLC

CO II Harp has knowledge and information regarding Plaintiff Joshua Polson's refusal to receive legal mail from Donald Specter of the PLO on March 5, 2013.

286.   Franco, ADC CO II at ASPC-Lewis-Complex Mailroom
c/o Struck, Wieneke & Love, PLC

CO II Franco has knowledge and information regarding Joshua Polson's refusal to receive legal mail from Donald Specter of the PLO on March 5, 2013 and other interactions with Polson.

287.   Brian Radford, CO III at ASPC-Eyman/SMU I
c/o Struck, Wieneke & Love, PLC

CO III Brian Radford has knowledge and information regarding ADC's policies and procedures relating to ADC inmates receiving mental health care and conditions of confinement of inmates receiving mental health care at ASPC-Eyman/SMU I.

288.   ADC Captain Karkhoff – ASPC- Perryville
       c/o Struck Wieneke & Love, PLC

Captain Karkhoff is expected to testify regarding his knowledge and observations while assigned to ASPC-Lewis of Plaintiff Stephen Swartz numerous occasions of swallowing foreign objects such as springs, paperclips, and wire.  He will also testify regarding the actions taken following the numerous occasions based on his observations and actions.  He will further testify regarding his knowledge of Plaintiffs Maryanne Chisholm, Desiree Licci, Sonia Rodriguez, Christina Verduzco and Charlotte Wells.

289.   Dr. Wayne G. Thorpe

Dr. Thorpe is expected to testify regarding the facial reconstruction surgery he performed on Plaintiff Stephen Swartz.

290.   Dr. Ronolfo Macabuhay

Dr. Macabuhay is expected to testify regarding the provision of health care provided to Plaintiff Stephen Swartz after Mr. Swartz alleges he suffered from a hernia in 2010.  He is expected to testify that the medical treatment provided to Mr. Swartz was appropriate and within the applicable standard of care.  He is further expected to testify regarding any medical care he provided to Plaintiff Joseph Hefner.

291.   Dr. Brett Barlow

Dr. Barlow is expected to testify regarding the appointment Plaintiff Stephen Swartz had with him. It is expected that Dr. Barlow will discuss that once Mr. Swartz arrived at Dr. Barlow's office, Mr. Swartz refused medical treatment.

292.   All non-objectionable witnesses listed by Plaintiff, even if later withdrawn.

293.   Without waiving objections, all witnesses listed in responses to
       interrogatories or other discovery.

294.   All persons who are deposed in this action.

295.   Defendant anticipates that unlisted individuals who may have relevant information will be identified as discovery progresses, and will supplement at that time.

296.   Defendants reserve the right to supplement this list of potential witnesses as discovery proceeds in this matter.

II.   **A COPY OF OR A DESCRIPTION BY CATEGORY AND LOCATION OF ALL DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND TANGIBLE THINGS THAT DEFENDANTS MAY USE TO SUPPORT THEIR CLAIMS OR DEFENSES**

1.   All Medical Records of Maryanne Chisholm, ADC #200825, in the possession of the ADC, up to the time of trial (ADC000001-ADC000286; **ADC050723-ADC050727;** ADC071361-ADC071393; ADC123341-ADC123378; ADC130**40**-ADC130719; **ADC197417-ADC197424;** ADC222045-222049**; and ADC229674-ADC229745**).

2.   All Medical Records of Robert Gamez, ADC #131401, in the possession of the ADC, up to the time of trial (ADC000287-ADC001254; ADC071394-ADC071573; ADC122219-ADC122289; **ADC197425-ADC197434; ADC197527-ADC198101;** ADC222050-222055; and ADC222152-222241).

3.   All Medical Records of Stephen Swartz, ADC #102486, in the possession of the ADC, up to the time of trial (ADC001256-ADC00228**0**; ADC071794-ADC071919; ADC122465-ADC122565; ADC133730-ADC134801; **ADC197471-ADC197491; ADC198179-ADC198473;** ADC222125-222133**; and, ADC232054-ADC232136**).

4.   All Medical Records of Christina Verduzco, ADC #205576, in the possession of the ADC, up to the time of trial (ADC002289-ADC004373; ADC082495-ADC082671; ADC122720-ADC122866; ADC123390-ADC123400; **ADC197501-ADC197513; ADC198492-ADC198520;** and ADC222137-222138).

5.   All Medical Records of Shawn Jensen, ADC #032465, in the possession of the ADC, up to the time of trial (ADC004374-ADC00506**9**; ADC073108-ADC73149; ADC1232**8**0-ADC123340; **ADC123379-ADC123383;** ADC130309-ADC130339**; ADC197447;** ADC222075-222099; and ADC222242-222310).

6.   All Medical Records of Joseph Hefner, ADC #203653, in the possession of the ADC, up to the time of trial (ADC005070-ADC005374; ADC073799-ADC073889; ADC122290-ADC122337; **ADC197435-ADC197446;**

95

**ADC198102-ADC198123;** ADC222056-222074**; and, ADC231990-ADC232053**).

7.   All Medical Records of Desiree Licci, ADC #150051 in the possession of the ADC, up to the time of trial (ADC005375-ADC005958; ADC071574-ADC071678; ADC122669-ADC122719, **ADC197448-ADC197455; ADC198124-ADC198147;** ADC203298-ADC203347; ADC222100-222113**; and, ADC227864-ADC227923**).

8.   All Medical Records of Joshua Polson, ADC #187716, in the possession of the ADC, up to the time of trial (ADC005959-ADC006564; ADC071742-ADC071793; ADC122338-ADC122370; ADC130287-ADC130308; ADC131368-ADC131405, ADC_M000195-ADC_M000206; and ADC222119).

9.   All Medical Records of Charlotte Wells, ADC #247188, in the possession of the ADC, up to the time of trial (ADC006565-ADC007144; ADC071920-ADC071950; ADC122867-ADC122920; ADC134802-ADC135377; **ADC197514-ADC197526; ADC198521-ADC198953;** and ADC222139-222151).

10.  All Medical Records of Jeremy Smith, ADC #129438, in the possession of the ADC, up to the time of trial (ADC007145-ADC007439; ADC074121-ADC074213; ADC127369-ADC127381; ADC222124**; and, ADC227925-ADC227999**).

11.  All Medical Records of Jackie Thomas, ADC #211267, in the possession of the ADC, up to the time of trial (ADC007440-ADC008295; ADC070949-ADC071360; ADC122921-ADC122973; **ADC197492-ADC197500; ADC198474-ADC198491;** ADC222134-222136; **and ADC229746-ADC229801**).

12.  All Medical Records of Dustin Brislan, ADC #164993, in the possession of the ADC, up to the time of trial (ADC008296-ADC008537; ADC073455-ADC073798; ADC107525-ADC107602; **ADC122075-**ADC122218;**ADC123225-ADC123251; ADC197411-ADC197416;** and ADC222042-222044).

13.  All Medical Records of Sonia Rodriguez, ADC #103830, in the possession of the ADC, up to the time of trial (ADC008538-ADC010121; **ADC073890-ADC074120; ADC122371-ADC122464; ADC123252-ADC123279; ADC123384-ADC123389; ADC197463-ADC197470; and,** **ADC**222120-**ADC**222123).

14. All Medical Records of Victor Parsons, ADC #123589, in the possession of the ADC (ADC010122-ADC010553; ADC071679-ADC071741; and ADC222114-222118).

15. ADC's Dental Services Technical Manual, dated January 1, 2010 (ADC010554-ADC010647).

16. ADC's Health Services Technical Manual, dated January 1, 2010 (ADC010648-ADC011231).

17. ADC's Mental Health Technical Manual, revised December 11, 2009 (ADC011232-ADC011332).

18. ADC's Director's Instruction #307 (ADC011450-ADC011456).

19. ADC's Department Orders (ADC011457-ADC013405 and ADC048480-ADC048639).

20. ADC's Contracted Provider List for Inpatient/Outpatient Specialty Services for 2011 through 2012 (ADC013406-ADC013475).

21. ADC's Corrections At A Glance publications from January 2010 through **October 2013**, and through trial (ADC013703-ADC013760 and ADC050809-ADC050832**; ADC_S000563-ADC_S000582**).

22. ADC's Healthcare Services by Providers Paid through ADC for 2008 through 2011 (ADC013761-ADC013776).

23. ADC's Pharmacy Expense Reporting Chart for 2007 through 2011, (ADC013777-ADC013779).

24. ADC's Health Care Operating Expenditure Summary for 2009 through 2011 (ADC013780-ADC013818).

25. ADC's Health Services Drugs & Medicine Expenditures for 2007 through 2011 (ADC013819-ADC013826)

26. ADC's Mental Health Drugs & Medicine Expenditures for 2007 through 2011 (ADC013827-ADC013836).

27. ADC's Department Orders 801 through 809 (ADC013837-ADC014004).

28. ADC's Department Order 1105 (ADC014005-ADC014010).

29. ADC's Scope of Practice/Principles of Delegation for Nursing Staff, (ADC014011-ADC014033).

97

30.    ADC's Organizational Chart, dated June 2012 (ADC014034-ADC014051 and ADC050860).

31.    ADC's Capacity Report for 2010 (ADC014052-ADC014053).

32.    ADC's Report of Operating Cost for 2010 (ADC014054-ADC014102).

33.    ADC's Contract with Wexford Health Sources, Inc. (ADC014103-ADC016042).

34.    The National Commission on Correctional Health Care's Accreditation Report of the Health Care Services at Arizona State Prison Complex Douglas, Arizona, dated June 26, 2009 (ADC016043-ADC016060).

35.    The National Commission on Correctional Health Care's Accreditation Update Report of the Health Care Services at Arizona State Prison Complex Florence, Arizona, dated November 18, 2011 (ADC016061-ADC016066).

36.    The National Commission on Correctional Health Care's Accreditation Report of the Health Care Services at Arizona State Prison Complex Lewis, Buckeye, Arizona, dated November 12, 2010 (ADC016067-ADC016070).

37.    The National Commission on Correctional Health Care's Continuing Accreditation of the Health Care Services at Arizona State Prison Complex Lewis, Buckeye, Arizona, dated November 17, 2010 (ADC016071-ADC016080).

38.    The National Commission on Correctional Health Care's Certificate of Accreditation of the Health Care Services at Arizona State Prison Complex Yuma, San Luis, Arizona dated, November 2010 (ADC016081-ADC016081).

39.    The National Commission on Correctional Health Care's Continuing Accreditation of the Health Care Services at Arizona State Prison Complex Perryville, Goodyear, Arizona, dated July 2, 2009 (ADC016082-ADC016089).

40.    The National Commission on Correctional Health Care's Continuing Accreditation of the Health Care Services at Arizona State Prison Complex Phoenix, Arizona, dated July 2, 2009 (ADC016090-ADC016096).

41.    The National Commission on Correctional Health Care's Accreditation Report of the Health Care Services at Arizona State Prison Complex Tucson, Arizona, dated June 26, 2009 (ADC016097-ADC016106).

42.     The National Commission on Correctional Health Care's Accreditation Report of the Health Care Services at Arizona State Prison Complex Winslow, Arizona, dated February 27, 2009 (ADC140104-ADC140118).

43.     The National Commission on Correctional Health Care's Continuing Accreditation of the Health Care Services at Arizona State Prison Complex Winslow, Arizona, dated July 2, 2009 (ADC016136-ADC016138).

44.     The National Commission on Correctional Health Care's Accreditation Report of the Health Care Services at Arizona State Prison Complex Yuma, San Luis, Arizona, dated November 12, 2010 (ADC016139-ADC016147).

45.     ADC's Fiscal Year 2012 Training Plan (ADC016187-ADC016216).

46.     ADC's Medical Grievance documents, up to the time of trial regarding Dustin Brislan (ADC016217-ADC016222 and ADC018105-ADC018141).

47.     ADC's Medical Grievance documents regarding Jeremy Smith, up to the time of trial (ADC016449, and ADC017984-ADC018006).

48.     ADC's Medical Grievance documents regarding Stephen Swartz, up to the time of trial (ADC016500-ADC016674 and ADC018072-ADC018104).

49.     ADC's Medical Grievance documents regarding Victor Parsons (ADC016675-ADC016873).

50.     ADC's Medical Grievance documents regarding Joseph Hefner, up to the time of trial (ADC016874-ADC017217 and ADC018046-ADC018071).

51.     ADC's Medical Grievance documents regarding Joshua Polson, up to the time of trial (ADC017217-ADC017485 and ADC017954-ADC017983).

52.     ADC's Medical Grievance documents regarding Robert Gamez, up to the time of trial (ADC017486-ADC017879 and ADC018007-ADC018045).

53.     ADC's Medical Grievance documents regarding Desiree Licci, up to the time of trial (ADC017880-ADC017904 and ADC018142-ADC018164).

54.     ADC's Medical Grievance documents regarding Maryanne Chisholm, up to the time of trial (ADC017905-ADC017906).

55.     ADC's Medical Grievance documents regarding Christina Verduzco, up to the time of trial (ADC017907).

56.     ADC's Medical Grievance documents regarding Shawn Jensen, up to the time of trial (ADC017908).

99

57.   ADC's Medical Grievance documents regarding Charlotte Wells, up to the time of trial (ADC017909-ADC017915).

58.   ADC's Medical Grievance documents regarding Sonia Rodriguez, up to the time of trial (ADC017916-ADC017917).

59.   ADC's Medical Grievance documents regarding Jackie Thomas, up to the time of trial (ADC017918).

60.   ADC Department Order #802, Inmate Grievance System (ADC017919-ADC017949).

61.   ADC Director's Instruction #287, Modification of Department Order 802: Inmate Grievance System (ADC017950-ADC017953).

62.   ADC Inmate Alhambra Reception Orientation Handout regarding access to health care (ADC018165-ADC018166).

63.   ADC Master Store List (ADC018203-ADC018255).

64.   ADC Inmate Video "Using your Security Toothbrush" (ADC018322).

65.   ADC Inmate Video "Cepillo de dientis de seguridad" (ADC018323).

66.   ADC Inmate Video "Emergency Care for Inmates with Wired Jaws" (ADC018324).

67.   ADC's Master file regarding Shawn Jensen (ADC018259-ADC018791 and ADC127455-ADC127468.

68.   ADC's Master file regarding Sonia Rodriguez (ADC018792-ADC019563).

69.   ADC's Master file regarding Christina Verduzco (ADC019564-ADC020121).

70.   ADC's Master file regarding Victor Parsons (ADC020122-ADC020694).

71.   ADC's Master file regarding Robert Gamez (ADC020695-ADC021192).

72.   ADC's Master file regarding Stephen Swartz (ADC021193-ADC021816 and ADC127425-ADC127443).

73.   ADC's Master file regarding Charlotte Wells (ADC021817-ADC021872).

74.   ADC's Master file regarding Joshua Polson (ADC021873-ADC022144; ADC023380-ADC023511; and ADC127405-ADC127424).

75. ADC's Master file regarding Jackie Thomas (ADC022145-ADC022355 and ADC137947-ADC137970).

76. ADC's Master file regarding Jeremy Smith (ADC022356-ADC022504 and ADC023102-ADC023379).

77. ADC's Master file regarding Joseph Hefner (ADC022505-ADC022561 and ADC137882-ADC137946).

78. ADC's Master file regarding Maryanne Chisholm (ADC022562-ADC022703).

79. ADC's Master file regarding Dustin Brislan (ADC022704-ADC023101 and ADC137871-ADC137881).

80. ADC's Master file regarding Desiree Licci (ADC023512-ADC023556 and ADC127444-ADC127454).

81. ADC's Non-Medical Grievance documents regarding Stephen Swartz (ADC023557-ADC023646 and ADC023762-ADC023773).

82. ADC's Non-Medical Grievance documents regarding Joseph Hefner, (ADC023647-ADC023658).

83. ADC's Non-Medical Grievance documents regarding Dustin Brislan (ADC023659-ADC023761).

84. ADC's Non-Medical Grievance documents regarding Joshua Polson (ADC023774-ADC023836).

85. ADC's Non-Medical Grievance documents regarding Jackie Thomas (ADC023837-ADC023841).

86. ADC's Non-Medical Grievance documents regarding Jeremy Smith (ADC023842-ADC023845).

87. ADC's Non-Medical Grievance documents regarding Sonia Rodriguez (ADC023846 and ADC023862).

88. ADC's Non-Medical Grievance documents regarding Maryanne Chisholm (ADC023847).

89. ADC's Non-Medical Grievance documents regarding Charlotte Wells (ADC023848-ADC023853).

90. ADC's Non-Medical Grievance documents regarding Victor Parsons (ADC023854-ADC023861).

91.    ADC's Non-Medical Grievance documents regarding Robert Gamez (ADC023871-ADC024169).

92.    Letter dated March 18, 2011 authored by Dr. Benjamin Shaw-(ADC027717-ADC027726).

93.    ADC Power Point Presentation regarding Mental/Behavioral Health Programs at ASPC-Florence (ADC027727-ADC027758).

94.    ADC's Post Orders for ASPC-Phoenix (ADC028255-ADC028440).

95.    ADC's Post Orders for ASPC-Tucson (ADC028441-ADC028736).

96.    ADC's Post Orders for ASPC-Eyman (ADC028737-ADC028888**; and, ADC_S000235-ADC_S000248**).

97.    ADC's Post Orders for ASPC-Florence (ADC028889-ADC028979; ADC048470-ADC048476**; and, ADC_S000249-ADC_S000260**).

98.    ADC's Post Orders for ASPC-Perryville (ADC029121-ADC029260**; and, ADC_S000261**).

99.    ADC's Post Orders for ASPC-Safford (ADC029261-ADC029490).

100.   ADC's Post Orders for ASPC-Winslow (ADC029491-ADC029566).

101.   ADC's Post Orders for ASPC-Yuma (ADC029567-ADC029649).

102.   ADC's Mental Health Technical Manual, revised August 15, 2011 (ADC031959-ADC032044).

103.   ADC's Health Services Technical Manual, revised February 9, 2012 (ADC048477-ADC048479).

104.   ADC's Food Service Technical Manual, revised July 2, 2010-(ADC040550-ADC040573).

105.   ADC's Diet Reference Manual, revised July 2, 2010 (ADC040574-ADC040609).

106.   ADC's Classification Technical Manual, revised October 28, 2010 (ADC040610-ADC040691).

107.   Replacement Page for ADC's Classification Technical Manual, dated April 13, 2012 (ADC040692).

108. Third-party medical records for Plaintiffs Joseph Hefner (ADC050881-ADC051012), Shawn Jensen (ADC051013-ADC051256), Desiree Licci (ADC051257-ADC051269), and Charlotte Wells (ADC051270-ADC051294).

109. Recordings of phone calls made by Plaintiff Victor Parsons:

      a.     July 25, 2012 call (ADC052216)

      b.     July 25, 2012 call (ADC052217)

      c.     July 26, 2012 call (ADC052218)

110. Documents produced pursuant to Subpoena Duces Tecum to Plaintiffs' expert Jay D. Shulman (JDS000001-JDS000033) for impeachment only.

111. Privatization of All Correctional Health Services Procurement File 120075DC (ADCPROC000001-ADCPRO003366; ADCPRO005487-ADCPRO006689; ADCPRO006902-ADCPRO008236; ADCPRO008366-ADCPRO008717; and ADCPRO008788-ADCPRO010932) specifically including Amendment 2.[3] (ADCPROC010744-ADCPRO010747, ADCPROC010751-ADCPRO010754), Amendment 3 (ADCPROC010456-ADCPRO010464), and the Corizon Proposal (ADCPROC005487-ADCPRO006688).

112. Pre-incarceration medical records for Sonia Rodriguez, Stephen Swartz, Robert Gamez, Joseph Hefner, Shawn Jensen, Desiree Licci, Joshua Polson, Jeremy Smith, Christina Verduzco, and Charlotte Wells (ADC074410-ADC076323; ADC082335-ACD082494; and, ADC082672-ADC082696).

113. Supplemental medical records of inmate Jonathan Tretheway, ADC #137818 (ADC082315-ADC082333).

114. Inmate Letter from Alfred Sheppard, ADC #147672, dated September 8, 2012 (ADC082334).

115. Monitoring and/or recording notification signs posted at inmate telephones for ASPC-Eyman, Florence, Lewis, Perryville, Phoenix, and Tucson, (ADC082697-ADC082737).

116. Medical Records of Maryanne Chisholm from Central Arizona Detention Center (ADC084454-ADC084700).

117. Medical Records of Shawn Jensen from University Medical Center, (ADC084701-ADC084878).

---

[3] Amendment 2 supersedes Amendment 1, as Amendment 1 was not signed.

118. ADC Inmate Legal Mail and Regular Mail Logs dated March 5, 2013, March 13, 2013, and March 15, 2013 (ADC084879-ADC084880**;** and**,** ADC084884-ADC084885).

119. Information Reports ("IR") #13-L32-00425, dated March 14, 2013; and IR #13-L32-00457, dated March 15, 2013, relating to Plaintiff Polson (ADC084881-ADC084883).

120. ASPC-Florence-Central and Kasson Units, ASPC-Phoenix, ASPC-Eyman, and ASPC-Phoenix Mental Health Programs (ADC084886-ADC084920).

121. ASPC-Eyman-Browning Unit Mental Health Program presentation (ADC084921-ADC084928).

122. ASPC-Florence-Central Unit Mental Health Programs summary, dated February 6, 2013, by Amy Barnes (ADC084929-ADC084940).

123. ASPC-Florence's The CB-1 C.U.R.E. bulletin (ADC084941-ADC084942).

124. ASPC-Florence's The Kassonian Times Newsletter (ADC084943-ADC084944).

125. United States Department of Justice, Bureau of Justice Statistics, Mortality in Local Jails and State Prisons, 2000-2010 – Statistical Tables, Report No. NCJ 239911, dated December 2012 (ADC084945-ADC084972).

126. ADC Medical Records~~,~~ Prescription Log~~,~~ of Jonathan Trethewey, ADC #137818 (ADC084981-ADC084984).

127. Employee Recognition Ceremony materials, dated December 13, 2012 (ADC08684-ADC088724).

128. Memorandum from Robert Patton and Richard Pratt to Director Charles Ryan, dated April 30, 2012, regarding Increase of Mental Health for Max Custody (ADC050861-ADC050867).

129. Supplemental ADC Medical Records of Alfred Sheppard, ADC #147672 (ADC089611-ADC091463).

130. Pre-incarceration medical records for Plaintiff Rodriguez from Magellan (ADC091464-ADC091471).

131. Pre-incarceration medical records for Plaintiff Smith from St. Mary's Hospital (ADC091472-ADC091489).

132. Pre-incarceration medical records for Plaintiff Wells from Maryvale Hospital (ADC091490-ADC091591), and West Valley Hospital (ADC091592-ADC091666).

133. Resume of Anthony Medel (ADC123403-ADC123407).

134. Resume of Arthur Gross (ADC123408-ADC123412).

135. Resume of David Robertson (ADC123413-ADC123418).

136. Resume of Mark Haldane (ADC123419-ADC123421).

137. Resume of Helena Valenzuela (ADC123422-ADC123423).

138. Resume of Jessica Raak (ADC123424-ADC123425).

139. Resume of Warden Judy Frigo (ADC123426-ADC123428).

140. Resume of Juliet Respicio-Moriarty (ADC123429-ADC123433).

141. Resume of Karen Chu (ADC123434).

142. Resume of Kathy Campbell (ADC123435-ADC123438).

143. Resume of Marlena Bedoya (ADC123443-ADC123446).

144. Resume of Matthew Musson (ADC123447-ADC123448).

145. Resume of Carson McWilliams (ADC123449-ADC123451).

146. Resume of Jen Mielke-Fontaine (ADC123452-ADC123453).

147. Resume of Nicole Taylor (ADC123454-ADC123457).

148. Resume of Richard Pratt (ADC123458-ADC123461).

149. Resume of Richard Rowe (ADC123462-ADC123463).

150. Resume of Sam Tardibuono (ADC123464-ADC123467).

151. Resume of Terry Allred (ADC123470-ADC123471).

152. Resume of Ernest Trujillo (ADC123472-ADC123477).

153. Resume of Vanessa Headstream (ADC123478-ADC123480).

154. Resume of Yvonne Maese (ADC123481-ADC123483).

155. Selected date Mental Health Levels Statistics Summaries (ADC094392-ADC094491).

156. Plaintiff Brislan's medical records obtained from the Maricopa County Sheriff's Office (ADC107525-ADC107602).

157. Plaintiff Polson's medical records obtained from the Maricopa County Sheriff's Office (ADC107603-ADC107671).

158. Plaintiff Rodriguez' medical records obtained from the Maricopa County Sheriff's Office (ADC107672-ADC107989).

159. Plaintiff Smith's medical records obtained from the Maricopa County Sheriff's Office (ADC117587-ADC117630).

160. Plaintiff Verduzco's medical records obtained from the Arizona State Hospital (ADC127622-ADC128365).

161. Mental Health Observation Records for Plaintiff Verduzco (ADC136318-ADC136419).

162. ADC Commissary Order History for Plaintiff Hefner, for the period from 12/13/2011 to 8/13/2013 (ADC123622-ADC123633).

163. Inmate Employment Application submitted by Plaintiff Hefner, circa August 2013 (ADC127368).

164. Individual Inmate Detention Records for Plaintiff Verduzco (ADC123484-ADC123621).

165. Individual Inmate Detention Records for Plaintiff Polson (ADC136213-ADC136254).

166. Individual Inmate Detention Records for Plaintiff Rodriguez (ADC136255-ADC136314).

167. Individual Inmate Detention Records for Plaintiff Thomas (ADC139901-ADC139903).

168. Individual Inmate Detention Records for Plaintiff Brislan (ADC139904-ADC139938).

169. Individual Inmate Detention Records for Plaintiff Gamez (ADC139939-ADC140027).

170. Individual Inmate Detention Records for Plaintiff Smith (ADC140028-ADC140087).

171.   ADC Health Care Operating Expenditure Summary for FY 2009-FY2014 (ADC139880).

172.   ADC Report of outside medical care billings and amounts paid for named Plaintiffs during the period from FY2009 through February 26, 2012 (ADC139880-ADC139900).

173.   ASPC-Perryville Lumley SMA Inmate Outcount log, dated July 18, 2013 (ADC139481).

174.   Schedule of Weekly Programming for WTU at ASPC-Perryville Lumley SMA, effective July 1, 2013 (ADC139482-ADC139483).

175.   ASPC-Eyman Browning Unit Activity Schedule, updated August 1, 2013 (ADC139516-ADC139518).

176.   ASPC-Florence Kasson Unit Mental Health Program brochure, dated 2013 (ADC139519-ADC139520).

177.   ASPC-Eyman Maximum Custody Step Program Memorandum of Expectations form and Step Matrix, dated March 18, 2013 (ADC139521-ADC139522).

178.   ASPC-Florence Central Unit Mental Health Programming Schedules for July and August 2013 (ADC139525-ADC139528).

179.   ADC's FY2013 Training Plan (ADC0494516-ADC049524).

180.   ADC Corrections Officers Training Academy ("COTA") Curriculum Details (ADC140088-ADC140099).

181.   Photographs of and actual exemplar "Smock" issued to inmates on Watch Status as ASPC-Perryville (ADC140100-ADC140102 – actual "Smock" will be made available for inspection upon request.)

182.   The National Commission on Correctional Health Care's Continuing Accreditation of the Health Care Services at Arizona State Prison Complex Phoenix, Arizona, dated July 30, 2013 (ADC140103)

183.   Governor's Briefing on ADC Mental Health Initiatives and Suicide Prevention Strategies, May 2013 (ADC140132-ADC140148).

184.   Excerpt from Governor's Briefing on Correctional Issues, September 3, 2013 (ADC140149-ADC140184).

185.   Plaintiffs' institutional files, including grievance files, as maintained by any and all correctional institutions in which Plaintiff has been detained.

186. Any and all relevant ADC budgetary documentation in possession of ADC.

187. All deposition transcripts from testimony provided in this matter.

188. Any and all non-objectionable exhibits listed by Plaintiffs, even if later withdrawn.

189. Without waiving objections, any reports prepared by an expert in this case.

190. Plaintiffs' non-objectionable responses to Requests for Production.

191. Plaintiffs' responses to Interrogatories.

192. Plaintiffs' responses to Requests for Admissions.

193. Any and all non-objectionable exhibits offered by any other party, even if later withdrawn.

194. Any and all reports, documents, charts, data, and policies listed on the ADC website, available for viewing and download at http://www.azcorrections.gov/adc/reports/reports1.aspx.

195. ADC Corrections Officers Training Materials regarding Signs and Symptoms of Mental Illness and Suicide Prevention (ADC_S000317-ADC_P000555).

196. AIMS Reports of Named Plaintiffs (ADC_P000580-ADC_P000858).

197. The National Commission on Correctional Health Care's Accreditation Report of the Health Care Services at Arizona State Prison Complex Douglas, Arizona, dated June 28, 2013 (ADC_P000888-ADC_P000901).

198. The National Commission on Correctional Health Care's Accreditation Report of the Health Care Services at Arizona State Prison Complex Perryville, Arizona, dated June 28, 2013 (ADC_P000902-ADC_P000915).

199. The National Commission on Correctional Health Care's Accreditation Update Report of the Health Care Services at Arizona State Prison Complex Perryville, Arizona, dated October 11, 2013 (ADC_P000916-000919).

200. The National Commission on Correctional Health Care's Accreditation Report of the Health Care Services at Arizona State Prison Complex Phoenix, Arizona, dated June 13, 2013 (ADC_P000920-000933).

201. The National Commission on Correctional Health Care's Accreditation Update Report of the Health Care Services at Arizona State Prison Complex Winslow, Arizona, dated November 19, 2013 (ADC_P000960-000964).

202. The National Commission on Correctional Health Care's Accreditation Update Report of the Health Care Services at Arizona State Prison Complex Yuma, Arizona, dated November 3, 2011 (ADC_P000965-000973).

203. The National Commission on Correctional Health Care's Accreditation Update Report of the Health Care Services at Arizona State Prison Complex Douglas, Arizona, dated November 19, 2013 (ADC_P000974-000976).

204. The National Commission on Correctional Health Care's Accreditation Update Report of the Health Care Services at Arizona State Prison Complex Perryville, Arizona, dated November 18, 2013 (ADC_P000977-000979).

205. The National Commission on Correctional Health Care's Accreditation Update Report of the Health Care Services at Arizona State Prison Complex Phoenix, Arizona, dated November 22, 2013 (ADC_P000980-000983).

206. Photographs taken at ASPC-Florence on August 20, 2013 (ADC165980-ADC166048).

207. Photographs taken at ASPC-Lewis on August 21, 2013 (ADC166049-166110).

208. Photographs taken at ASPC-Perryville on August 19, 2013 (ADC166111-ADC166173).

209. Photographs taken at ASPC-Perryville-Lumley on August 19, 2013 (ADC166174-166183).

210. Photographs taken at ASPC-Tucson on August 22, 2013 (August 22, 2013).

211. **Corizon** SPDR Report (ADC_M000001).

212. Suicide Warnings Signs Identification Badge Worn by ADC Personnel (ADC_P000984).

213. ASPC-Tucson HU-7 Time Sheets (ADC_P000859-000865).

214. ASPC-Eyman Special Management Unit 1 Map (ADC_P000866).

215. ASPC-Eyman Mental Health Program Schedule (ADC_P000867).

216. ASPC-Eyman Weekend Recreation Schedule (ADC_P000882).

217. ASPC-Phoenix-Baker Unit Introduction to Baker Mental Program Documentation (ADC_P000883-000886).

218.   ASPC-Florence Central Unit Mental Health Programs and Schedule (ADC_S000286-000291).

219.   Weekly Programming for WTU (ADC139482-139483).

220.   ASPC-Eyman-Browning Unit Activity Schedule (ADC139516-139518).

221.   ASPC-Florence-Kasson Unit Mental Health Program (ADC139519-139520).

222.   Maximum Custody Step Program (ADC139521-139523).

223.   ASPC-Eyman SMU 1 Programming Schedule (ADC139525-139528).

224.   ASPC-Florence Central Unit Maximum Phase Program Plan (ADC054808).

225.   ASPC-Eyman Browning Unit Mental Health Program (ADC084921-084928).

226.   ASPC-Florence Central Unit Mental Health Programs (ADC084929-084940).

227.   Mental Health Classification by Gender (ADC_S000556).

228.   E-mail Thread from Joe Profiri to Ben Shaw, Richard Pratt and Jeff Hood regarding SIR#2012-10629 (AGA_REVIEW_00048313-00048315).

229.   Resume of Thomas Buenker, M.D. (ADC203365-ADC203367).

230.   Resume of Mark Fleming, PhD, LP, LPCMH, CRC, HSP, CCHP-MH (ADC203363-ADC203364).

231.   Resume of Mark Jansen (ADC203360-ADC203362).

232.   CONFIDENTIAL Expert Report of Joseph V. Penn, MD, CCHP, FAPA, regarding Mental Healthcare at the Arizona Department of Corrections, dated December 18, 2013 (ADC203372-ADC203515)**, with updated testimony list, dated January 24, 2014 (ADC222041)**.

233.   Curricula Vitae of Joseph v. Penn, MD, CCHP, FAPA (ADC203481-ADC203509**; and ADC222041**).

234.   CONFIDENTIAL Expert Report of John W. Dovgan, DDS regarding Dental Care at the Arizona Department of Corrections, dated December 18, 2013 (ADC203516 –ADC203609)**, with updated testimony list, dated January 24, 2014 (ADC222036-ADC222040)**.

235.   Curricula Vitae of John W. Dovgan, D.D.S. (**ADC222036-ADC222040**).

236.   CONFIDENTIAL Expert Report of Richard P. Seiter, Ph.D. regarding Condition of Confinement in Maximum Custody Assignment at the Arizona Department of Corrections, dated December 18, 2013 (ADC203610-ADC203762).

237.   Biography and Curricula Vitae of Richard P. Seiter, Ph.D. (ADC203696-ADC203704).

238.   CONFIDENTIAL Expert Report of Lawrence H. Mendel, D.O., FSCP, CCHP regarding Medical Healthcare at the Arizona Department of Corrections, dated December 18, 2013 (ADC203763-ADC203835).

239.   Curricula Vitae of Lawrence H. Mendel, D.O., FSCP, CCHP (ADC203814-ADC203817).

240.   **ADC's Mental Health Technical Manual, revised January 1, 2014 (ADC215544-ADC215610).**

241.   **CONFIDENTIAL Supplemental Expert Report of Lawrence H. Mendel, D.O., FSCP, CCHP regarding Medical Healthcare at the Arizona Department of Corrections, dated January 31, 2013 (ADC229802-ADC229807).**

242.   **Recorded phone calls made by Plaintiff Dustin Brislan, #164993, in the possession of the ADC, up to the time of trial (ADC166308; and, ADC229808).**

243.   **Recorded phone calls made by Plaintiff Maryanne Chisholm, #200825, in the possession of the ADC, up to the time of trial (ADC166309-ADC166326; and, ADC229809-ADC229814).**

244.   **Recorded phone calls made by Plaintiff Robert Gamez, #131401, in the possession of the ADC, up to the time of trial (ADC166327-ADC166329; and, ADC229814).**

245.   **Any recorded phone calls made by Plaintiff Joseph Hefner, #203653, in the possession of ADC, up to the time of trial.  (As of January 24, 2014, no recorded phone calls are known to exist.)**

246.   **Recorded phone calls made by Plaintiff Shawn Jensen, #032465, in the possession of ADC, up to the time of trial (ADC166330-ADC166352; and, ADC229816-ADC229819).**

247. **Recorded phone calls made by Plaintiff Desiree Licci, #150051, in the possession of ADC, up to the time of trial (ADC166353-ADC166355; and, ADC229820).**

248. **Recorded phone calls made by Plaintiff Joshua Polson, #187716, in the possession of ADC, up to the time of trial (ADC166356-ADC166362; and ADC229821).**

249. **Any recorded phone calls made by Plaintiff Sonia Rodriguez, #103830, in the possession of ADC up to the time of trial.  (As of January 24, 2014, no recorded phone calls are known to exist.)**

250. **Recorded phone calls made by Plaintiff Jeremy Smith, #129438, in the possession of ADC, up to the time of trial (ADC166363-ADC166368; and ADC229822).**

251. **Any recorded phone calls made by Plaintiff Stephen Swartz, #102486, in the possession of ADC, up to the time of trial.  (As of January 24, 2014 no recorded phone calls are known to exist.)**

252. **Any recorded phone calls made by Plaintiff Jackie Thomas, #211267, in the possession of ADC, up to the time of trial.  (As of January 24, 2014, no recorded phone calls are known to exist.)**

253. **Recorded phone calls made by Plaintiff Christina Verduzco, #205576, in the possession of ADC, up to the time of trial (ADC229823).**

254. **Recorded phone calls made by Plaintiff Charlotte Wells, #247188, in the possession of ADC, up to the time of trial (ADC166369-ADC166372; and ADC229824-ADC229825).**

255. **ADC Health Services Monitoring Bureau Medical Green-Amber-Red (MGAR) Reports, with Corrective Action Plans, for each Arizona State Prison Complex at issue, for the monitoring months of April 2014, up to the time of trial (ADC208270-ADC211586).**

256. **Resume of Glenn Babich, M.D. (ADC229826-ADC229830).**

257. **ADC reports of Inmate Assault, Self-Harm, & Mortality Data, for the period from February 2013, up to the time of trial (ADC_S000001-ADC_S000025; and ADC229831-ADC229838).**

258. **Resume of Michael Dolny, Ph.D. (ADC229839-ADC229842).**

259. **Quarterly Chronic Conditions Reports submitted by Corizon to ADC for the quarters ending June 30, 2013, up to the time of trial (ADC229843-ADC230591).**

260. **Quarterly Infectious Disease Reports submitted by Corizon to ADC for the quarters ending June 30, 2013, up to the time of trial (ADC230592-ADC230642).**

261. **Quarterly Network Providers Directory Reports submitted by Corizon to ADC for the quarters ending June 30, 2013, up to the time of trial (ADC153885-ADC153891; ADC153905; and, ADC230643-ADC230655).**

262. **Quarterly Utilization Review Reports submitted by Corizon to ADC for the quarters ending September 30, 2013 up to the discontinuation of the report in mid-December 2013 (ADC230656-ADC203747).  (Should this report be re-instated or replaced in the future, Defendants will supplement.)**

263. **Monthly CAG/FAQ/PBMS Reports submitted by Corizon to ADC for the months ending March 31, 2013, up to the time of trial (AGA_Review_00012123.xls; ADC153731-ADC153748; ADC155087; ADC203043; ADC203297; and, ADC230748-ADC230949).**

264. **Monthly Clinical Data Reports submitted by Corizon to ADC for the months ending March 31, 2013, up to the time of trial (AGA_Review_00011818.xls; AGA_Review_00011818-ADC_Review_00011831; ADC153749-ADC153776; ADC153894; ADC203028; and, ADC230950-ADC231218).**

265. **Monthly Health Needs Request (HNR) Appointment Reports submitted by Corizon to ADC for the months ending May 31, 2013, up to the time of trial (ADC122014-ADC122016; ADC122046-ADC122048; ADC122057-ADC122058; ADC153830-ADC153835; ADC153898; ADC155092; ADC203032; and, ADC231219-ADC231253).**

266. **Monthly Dental Utilization Statistics Reports submitted by Corizon to ADC for the months ending April 30, 2013, up to the time of trial (AGA_Review_00016155.xls; ADC108137; ADC236985; ADC155088; ADC203029; ADC203349; and, ADC231257-ADC231264).**

267. **Monthly Hepatitis C Reports submitted by Corizon to ADC for the months ending May 31, 2013, up to the time of trial (ADC153836; ADC153899; ADC203033; ADC203351; and, ADC231265-ADC231279).**

268. **Monthly Hospitalization Statistics Reports submitted by Corizon to ADC for the months ending March 31, 2013, up to the time of trial**

(ADC122018-ADC122045; ADC153839-ADC153850; ADC153902; ADC155074-ADC155076; ADC155094; ADC202927-ADC202929; ADC203034; ADC203061-ADC203062; and, ADC231280-ADC231309).

269. **Monthly Inmate Grievance Reports submitted by Corizon to ADC for the months ending April 30, 2013, up to the time of trial (ADC153809-ADc153829; ADC153897; ADC155090-ADC155091; ADC203031; ADC203035; ADC203042; and, ADC231310-ADC231430).**

270. **Inmate Wait Times Reports submitted by Corizon to ADC for the months ending May 31, 2013, up to the time of trial (ADC122017; ADC153838; ADC153901; ADC155093; ADC203025-ADC203026; ADC203036; ADC203348; and, ADC231431-ADC231439).**

271. **Inmate Dental Wait Times reports submitted by Corizon to ADC for the months ending March 31, 2013, up to the time of trial (AGA_Review_0016156.xls; ADC137998-ADC138005; ADC153794-ADC153796; ADC153896; ADC155089; ADC203030; ADC203350; and, ADC231440-ADC231472).**

272. **Intake Reports submitted by Corizon to ADC for the months ending May 31, 2013, up to the time of trial (ADC122060; ADC153851; ADC153903; ADC155095; ADC203037; ADC203352; and, ADC231473-ADC231481).**

273. **Medical Transports Complex Reports submitted by Corizon to ADC for the months ending March 31, 2013, up to the time of trial (AGA_Review_0011906-AGA_Review_00011913; ADC122049-ADC122056; ADC153797-ADC153804; ADC155064-ADC155073; ADC202930-ADC202955; ADC203000-ADC203014; ADC203039; ADC203044-ADC203050; and, ADC231482-ADC231496).**

274. **Medical Transports Statewide Reports submitted by Corizon to ADC for the months ending May 31, 2013, up to the time of trial (ADC153852-ADC153874; ADC153904; ADC155097-ADC155098; ADC155096; ADC203040; and, ADC231497-ADC231817).**

275. **Monthly Staffing Reports submitted by Corizon to ADC for the months ending March 31, 2013, up to the time of trial (AGA_Review_00019436.xls; AGA_Review_00020573.xls, ADC117064-ADC117074; ADC121167-ADC121178; ADC153805-ADC153808; ADC155099; ADC202956-ADC202974; ADC202975-ADC202996; ADC202998-ADC202999;and, ADC231818-ADC231889).**

276. **Medication Reports submitted by Corizon to ADC for the months ending April 30, 2013, up to the time of trial (AGA_Review_00011900-AGA_Review_00011901; ADC118397-ADC118406; ADC153875-ADC153884; ADC155077-ADC155086; ADC203051-ADC203060; and, ADC231890-ADC231931).**

277. **Medical Malpractice Statistics Reports submitted by Corizon to ADC for the period from April 2013 up to the time of trial (ADC203038; and, ADC231932-ADC231938).**

278. **Certification/Licensing Monthly Update Reports submitted by Corizon to ADC for the months ending April 30, 2013, up to the time of trial (ADC203027; and, ADC231939-ADC231945).**

279. **E-mail from Sandra Temple to Durtschi Doi, dated May 30, 2013, regarding Inmate Letter, with attachments (ADC231946-ADC231953).**

280. **Memorandum from CO IV Cottrell to Northern Regional Operations Director McWilliams re: Action Plan for Implementation of Mental Health WIPP Program at Browning Unit, dated March 25, 2013 (ADC231954-ADC231956).**

281. **ASPC-Eyman Browning Unit WIPP Payroll reports for FY2013 and FY2014 (as of September 25, 2013) (ADC231957-ADC231958).**

282. **ASPC-Eyman Browning Unit Job Application (ADC231959).**

283. **ADC FY2014 Training Plan (ADC231960-ADC231970).**

284. **Health Needs Request from James Miller, ADC#192432, to ASPC-Florence South Unit Medical Staff, dated August 22, 2013 (ADC231971).**

285. **Forwarded Corizon e-mail from Thomas Fulks to Melisa Knowleton regarding Groups, dated August 29, 2013, with attachment (ADC231972-ADC231979).**

286. **Memorandum from Vickie Bybee to Charles Ryan regarding Proposed Corizon Mental Health Plan, dated August 20, 2013 (ADC231980).**

287. **Inmate letter from Todd Edwards, ADC#050290 to D.W. Heat, dated September 12, 2013 (ADC231981).**

288. **Inmate letters from James Newman, ADC#273979 to Medical Administrator, dated December 10, 2013 and December 14, 2013 (ADC231982-ADC231983).**

289. **Approved ADC Position Paper regarding Maximum Custody Population Management (ADC231984-ADC231989).**

290. **Forwarded e-mail from Juliet Respicio-Moriarty to Corizon Facility Health Administrators and Directors of Nursing regarding PPD AIMS Coding "Follow Up Information", dated September 26, 2013 (ADC232137-ADC232140).**

291. **E-mail from Troy Evans to Vickie Bybee and Kathleen Campbell regarding Extra Effort, dated October 23, 2013 (ADC232141).**

292. **E-mail forwarded by Charles Ryan to Lisa Cooper and Maria Guerra-Gonzalez on October 11, 2012 regarding Appreciation (AGA_Review_00064007-AGA_Review_00064008).**

293. **E-mail forwarded by Heather Price to Charles Ryan on November 30, 2012 regarding DO 710 SOAP Note (Letter to Director from Inmate Stokely) with attachments (AGA_Review_00076002-AGA_Review_00076004).**

Defendants anticipate that additional documents and/or tangible evidence will be identified and will seasonably supplement.

## III.   COMPUTATION OF DAMAGES

Defendants are not making any claim for damages.  Defendants will seek any and all recoverable costs and fees should Defendants prevail in this matter.

## IV.   INSURANCE AGREEMENTS

There are no relevant insurance agreements under Fed. R. Civ. P. 26(a)(1)(A)(iv).

DATED this 10th day of February 2014.

STRUCK WIENEKE & LOVE, P.L.C.


By  /s/ Daniel P. Struck
        Daniel P. Struck
        Kathleen L. Wieneke
        Rachel Love
        Timothy J. Bojanowski
        Nicholas D. Acedo
        Ashlee B. Fletcher
        Anne M. Orcutt
        STRUCK WIENEKE & LOVE, P.L.C.
        3100 West Ray Road, Suite 300
        Chandler, Arizona  85226

        Arizona Attorney General Thomas C. Horne
        Office of the Attorney General
        Michael E. Gottfried
        Lucy M. Rand
        Assistant Attorneys General
        1275 W. Washington Street
        Phoenix, Arizona 85007-2926

        *Attorneys for Defendants*

COPIES of the foregoing e-mailed this
10th day of February, to:

Caroline N. Mitchell
cnmitchell@jonesday.com

Sarah Kader
skader@azdisabilitylaw.org

David Cyrus Fathi
dfathi@npp-aclu.org

Donald Specter
dspecter@prisonlaw.com

Amelia Gerlicher
agerlicher@perkinscoie.com


By: /s/ Amy Bender

2863401.1

117