**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| Victor Parsons, et al., on | ) | |
| behalf of themselves and all | ) | |
| others similarly situated; | ) | No.  **CV 12-00601-PHX-NVW** |
| and Arizona Center for | ) | |
| Disability Law, | ) | |
| | ) | **Phoenix, Arizona** |
|              Plaintiffs, | ) | **February 24, 2013** |
| vs. | ) | **3:07 p.m.** |
| | ) | |
| Charles Ryan, Director, | ) | |
| Arizona Department of | ) | |
| Corrections; and Richard | ) | |
| Pratt, Interim Division | ) | |
| Director, Division of Health | ) | |
| Services, Arizona Department | ) | |
| of Corrections, in their | ) | |
| official capacities, | ) | |
| | ) | |
|              Defendants. | ) | |

_____

BEFORE:  **THE HONORABLE NEIL V. WAKE, JUDGE**

(*Motion Hearing*)

Official Court Reporter:
Laurie A. Adams, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 43
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1   For the Plaintiffs:

2           PRISON LAW OFFICE
            By:  **Donald Specter, Esq.**
3           1917 5th Street
            Berkeley, CA 94710

4
            PERKINS COIE LLP
5           By:  **Daniel Barr, Esq.**
            2901 N. Central Ave.
6           Suite 2000
            Phoenix, AZ 85012

7

8   For the Defendants:

9           STRUCK WIENEKE & LOVE, P.L.C.
            By:  **Daniel P. Struck, Esq.**
10          3100 W. Ray Road
            Suite 300
11          Chandler, AZ 85226

12
            OFFICE OF THE ATTORNEY GENERAL - PHOENIX
13          By:  **Michael Gottfried, Esq.**
            1275 W. Washington St.
14          Phoenix, AZ 85007-2926

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

```
 1                      P R O C E E D I N G S

 2           THE COURTROOM DEPUTY:  This is Civil Case 2012-601,

 3   Victor Antonio Parsons, et al., versus Charles L. Ryan, et al.

 4   This is the time set for oral argument.

 5              Counsel, please announce for the record.          16:02:25

 6           MR. SPECTER:  Good afternoon.  Donald Specter from the

 7   Prison Law OFFICE and Daniel Barr from Perkins Coie for the

 8   plaintiffs.

 9           MR. STRUCK:  Your Honor, Daniel Struck from Struck

10   Wieneke & Love, and Michael Gottfried from the Attorney         16:02:37

11   General's office.

12           THE COURT:  I have got so many lawyers on this case

13   for the plaintiffs I can't find you on my list.

14           MR. SPECTER:  Oh.  Me?

15           THE COURT:  What was your name again?               16:03:06

16           MR. SPECTER:  Donald Specter.  Your clerk has my name.

17           THE COURT:  Oh.  Yeah.  Okay.

18              All right.  Well, I do have some thoughts on this

19   based on the reading.  I don't know if -- is there more any of

20   you want to say?                                          16:03:37

21           MR. SPECTER:  I think I would rather have you -- if

22   you have questions, I'd rather --

23           THE COURT:  Well, one reason I set this is so -- it's

24   messy and complicated and I thought there might be some benefit

25   to a little bit of dialogue about it.  Also, I wanted to talk  16:03:54
```

```
1    with you, as I indicated in my order, about moving this trial
2    up.  Part of it is motivated by exactly what is going on with
3    this.
4              MR. SPECTER:  Right.  I'm happy to start, Your Honor.
5              THE COURT:  Well, let me start with some thoughts that    16:04:16
6    you are all free to tell me whether they are right or wrong
7    because they will have varying degrees of confidence.
8              So one is the standard for injunction here is not the
9    same as the standard for -- under the PLRA for lifting a prior
10   decree or consent decree.  In that kind of a case the statute    16:04:54
11   requires the injunction to be lifted based on current
12   conditions if it's at lease a year after the injunction is
13   entered.  That's not the standard here.  The standard here is
14   proof of violation of constitutional rights through systemic
15   inadequacy of health care.  The law of injunctions speaks very    16:05:14
16   clearly to what happens when you have voluntary compliance
17   after the action is filed.  It does not end the lawsuit.  It
18   doesn't moot the lawsuit.  It does not prevent the entry of
19   remedy.  So if a party is sued for an injunction and then they
20   change their conduct in the way that's demanded by the lawsuit,    16:05:39
21   it doesn't mean that they win the lawsuit.
22             Now, there may be -- no.  It doesn't.
23             So that part of this discussion is -- I'm very
24   comfortable about that the defendant is mistaken in their view
25   that they get to prove anything up to the last day of trial to    16:06:00
```

1    defeat plaintiffs' case.  They do not.

2         Now, in this case, we set a fact cutoff and a

3    discovery cutoff closely related to it that actually is more

4    generous to the defendant because it's way past the time the

5    complaint was filed, and that the defendant's theory that                16:06:27

6    everything can be proved up to the last minute would make the

7    entire idea of a case management schedule a joke.  There would

8    be no limit to anything.

9         So the practical need to focus the factual inquiry and

10   to have a meaningful trial and not have perpetual discovery              16:06:55

11   expense makes it necessary to do what we did.  But in any

12   event, the law of injunctions allows -- tracks it in a

13   parallel.

14        So the fact deadline stands.  The discovery deadline

15   stands.  Now, the plaintiffs' suggestion that, well, if you let          16:07:14

16   them get away with this we want to have discovery for another

17   four or five months, the answer is that is not good enough

18   because what that would mean is any time anybody just blows off

19   the case management schedule, they blow off the discovery

20   limit.  So one gets rewarded for violating the Court's orders,           16:07:38

21   and that's not required, nor is it sensible.

22        So I gave you all plenty of time.  There has been

23   excessive discovery in this case.  And this case proves that it

24   is not possible for district judges to calibrate lawsuits

25   exactly the way they should be.  There's plenty of room for              16:08:02

excess, and the only baseline, not a protection but limitation

on this, is having the case over.  So I gave you plenty of

time.  This case is going to be over.  The discovery is

already -- well, some things are still ongoing.

So now, there are other things here.  These 14

experts, first of all, the -- there's two questions.  One is

whether they have to give written reports under Subsection (b)

or just summary reports under Subsection (c).  They clearly

have to give summary reports under Subsection (c).  Maybe I'm

coming at this in maybe a logical sequence rather than a

practical sequence.  But my general sense is, well, a lot of

these do need full reports and don't have them.  But as to the

summary reports, you have to give a summary of the opinions and

the factual basis.

Now, if that's given in a supplemental disclosure

rather than a separate document, that's good enough.  But in

looking at some of these strike me as clearly not good enough

that they don't -- if you have to take a deposition to find out

what the opinion is you have not complied with Subsection (c)

much less Subsection (b).  The whole point of having that there

is so you know what to ask the witness about.  It is not an

adequate response to say, well, I didn't comply with the rules

but come take a deposition and you will find out then what he's

going to say.  That is a violation of the rule and abuse of the

discovery process and not good enough.

16:08:26

16:09:13

16:09:34

16:09:58

16:10:16

1        So at a minimum, I'm disposed to say that for anybody,

2   I'm not sure there are, I will have to work them through, for

3   which Subsection (c) disclosures all that's required, what's in

4   that supplemental disclosure, that's it.  If it's just we're

5   going to talk about this subject, that's not good enough.  That        16:10:42

6   guy doesn't get to offer any opinions, period.  That doesn't

7   comply.  You have to give a summary of the substance of the

8   opinions and the factual basis.

9        So part of me is disposed to say, well, you know, I'm

10  telling you that at trial.  I may hear objections.  I will pull        16:11:04

11  it up.  And if I find something there that says he's going to

12  talk about this subject, the answer will be, objection

13  sustained.  However, the bigger issue is whether full written

14  reports are required.  This breaks into a few areas, like these

15  department physicians or department employees who did not treat        16:11:33

16  any of these plaintiffs but want to say, no, I picked up the

17  file.  I have read the file and I'm going to give opinions,

18  that strikes me as exactly something you should have done the

19  written disclosure for.  That's sort of really what the *Goodman*

20  case was.  Now, *Goodman* was decided under the old rules.        16:11:59

21  There's no doubt about that.  But it parallels the new rule.

22  The new rule basically codified what the *Goodman* case, went

23  along that way.

24        So if we've got people who coincidentally are

25  employees of the Department but are not charged with treating        16:12:21

1  any of these plaintiffs as part of their duties as employee,

2  and expert opinions are going to be offered, that doesn't

3  strike me as something that comes under (c) at all.  That's

4  under (b) and expert opinions should have been offered.

5  Disclosures should have been offered.                        16:12:42

6        Again, I repeat myself.  This schedule was set to have

7  an orderly preparation for trial.  When people blow off the

8  schedule, what they are saying is, to the other lawyer, you

9  know, this time you wanted to use to prepare the rest of your

10 case and get ready?  You don't get to use it for that.  I'm   16:13:01

11 hijacking your time so you can make up for my failure to comply

12 with the rules.  Have a nice day.  Well, the answer is that is

13 plainly wrong and abusive and this Court does not allow it.

14 The rules were beefed up about 20 years ago precisely because

15 judges were not enforcing the rules.  That kind of abuse was   16:13:21

16 pervasive.  It's supposed to be stopped now.

17       So those employees who happen to be physicians, I'm

18 disposed to conclude that they are subject to disclosures under

19 Subsection (b) and they haven't done it, and that's the end of

20 their opinion testimony.                                      16:13:45

21       Now, there's some others here that I guess I have got

22 to walk through.  Let me look at the motion to make sure what I

23 am missing here.  I don't know if this matters anymore, Mr.

24 Struck, but whether it's under Subsection (B) or (C), you have

25 to give the facts that are the basis for the opinions or the   16:14:23

1    summary of the opinion.  It is not enough to give a data dump

2    to say, well, we're giving you thousands of pieces of paper,

3    tens of thousands.  That's not enough.  They are entitled to be

4    directed exactly to what facts the opinion is based on.  And

5    they don't have to take a deposition to run through 10,000      16:14:42

6    documents to find that out.  So I don't know if that actually

7    matters in light of the other conclusions I'm disposed toward.

8           On the issue of events that are happening or will be

9    predicted to be happen as of the time of trial, on the one

10   hand -- well, let me put it this way.  I'm viewing that as      16:15:28

11   mostly a matter of Rule 403 management of trial time and

12   economy and not wasting time.  I'm not disposed to conclude

13   that it's inadmissible and totally irrelevant.  But I don't see

14   it as a defense to an injunction.  It would be relevant to

15   remedies but this trial won't be about remedies.  If I find     16:15:51

16   liability the Department is entitled to make the first

17   proposals for remedies.

18          So on the one hand, I don't see it as technically

19   excluded like we do in suppressing confessions in criminal

20   trials, but I don't see it as very probative.  And I in         16:16:15

21   particular do not want to open a door that entitles or allows

22   or requires the reopening of discovery for it which I think

23   breaks down to plaintiff will not be prejudiced by evidence

24   about things that are happening in the meantime.

25          But let's see.  Yeah.  Oh.  Again, these are             16:16:46

1    to some -- my comments are to some extent intersecting and

2    overlapping, and I guess this is something I will think about a

3    little more.  But the Department's -- these are basically

4    managers and other professional employees that I can see them

5    as having relevant and important evidence about facts.  But at        16:17:50

6    the other end of the spectrum is offering them to give opinions

7    to rebut the plaintiffs' expert opinions.  My gosh, I mean

8    that's exactly expert opinions.  If you are offering to rebut

9    their expert opinion you should have disclosed their opinion

10   and the basis for it.                                                 16:18:12

11        But that's -- I guess I do want to think that through

12   a bit more because it may be affected by what the opinion is.

13   There might be some things that are fairly descriptive of facts

14   and events.  And it's hard to say in the abstract where that

15   boundary line would be.                                              16:18:44

16        So and in particular, to say we've got these folks who

17   are going to testify that your opinions are wrong, that

18   completely deprives the other side of the fair opportunity to

19   know what the expert opinion is and prepare for it, which is

20   exactly what the rule is about.                                      16:19:12

21        So now, having said all this, and frankly, I'm not --

22   a lot of this that I'm disposed toward, I suspect may not be

23   all that important because even though the plaintiffs get to

24   prove that their named plaintiffs have suffered a

25   constitutional injury, that's not enough.  They also have to        16:19:50

1  prove that the reason for that constitutional injury was the

2  general inadequacy of care.  It's not enough if there was just

3  an inadequacy or mistake for them in particular.  And it won't

4  rebut -- it won't end this case to say, well, every one of

5  these people, maybe they had a denial of a constitutional right          16:20:13

6  but it wasn't systemic.  Well, I'm sorry, just the opposite of

7  what I should have said.  It won't be enough to say that they

8  had to contest their particular circumstances in a class

9  action, and it won't be enough to get an injunction to prove

10  that every one of them did have their constitutional rights          16:20:40

11  violated unless the reason the cause for that is the systemic

12  constitutional deficiency, which is what you need for an

13  injunction.

14       So I'm sitting there thinking, you know, the real

15  issue here is, I mean, we're definitely going to have a trial          16:21:00

16  about the named plaintiffs and we're going to inquire into

17  their own claims and circumstances.  But the main event, I

18  think, is going to be the evidence about systemic levels of

19  care and/or lack thereof and the connection between that and

20  constitutional minimums.          16:21:31

21       So I guess part of what I'm saying is even though I am

22  disposed to exclude a lot of these experts, maybe all of them,

23  I have to work through each one.  But I can't guarantee it but

24  my hunch is it may not make a big difference in this trial for

25  the case.  It will shorten the trial, 14 fewer witnesses,          16:21:53

1    although those people may testify, it's just their opinions

2    that we're talking about excluding.

3          So now, I have read your briefs so you all don't have

4    to repeat that.  I suppose since my comments -- the end result

5    of my comments tend to go against the defendant, Mr. Struck, it        16:22:23

6    would be fair for you to have the first chance to tell me why

7    any or all of that is wrong.

8          MR. STRUCK:  Thank you, Your Honor.  And I think I

9    understand the points that you are making, and I'd like to try

10   and address some of them, the first of which being the -- I        16:22:47

11   guess you were talking about how we need to freeze time as of

12   September 26, 2012, and that's going to be the evidence that

13   you are interested in, although there may be other things that

14   come in.  And I think the cases that you are referring to are

15   cases in which the defendants have come in and said, hey, it's        16:23:09

16   all moot now.  You don't need to issue an injunction because we

17   stopped doing it.  That's a little bit different here.

18         We have a situation where we have a change in the

19   health care providers right at the time this lawsuit was filed.

20   We asked the Court to stay to give them an opportunity to get        16:23:29

21   up to speed, because nobody expected that somebody was -- a

22   company was going to be able to come in and take over the

23   health care of 36,000 inmates overnight.  And we all know what

24   happened with Wexford.

25         So now we have a situation where the current health        16:23:46

1    care provider, Corizon, who is doing a very good job, has been

2    in place since March of 2013.  So that gives them roughly five

3    months of evidence with respect to what Corizon is doing

4    regarding the health care, and that is simply unfair and

5    it's -- in order to -- for you to determine that there is a        16:24:07

6    systemic deficiency, you can't really do that in five months.

7            THE COURT:  Well, but the situation, whatever it is,

8    there's no reason to doubt that, well, if there were

9    deficiencies, constitutional deficiencies, why should we assume

10   that they just arose under Wexford as opposed to having been      16:24:40

11   there before when the State of Arizona decided to save money by

12   spending less on prisons.

13           MR. STRUCK:  And, Your Honor, I'm not suggesting there

14   are systemic deficiencies because we don't think there are.

15           THE COURT:  I know.                                        16:24:58

16           MR. STRUCK:  But the argument that we're making is, if

17   there is a systemic deficiency that's caused by the

18   circumstances with respect to a one- or two-month period of

19   time, I don't know to what extent the Court is going to be

20   looking at that very small window of time to determine --         16:25:16

21           THE COURT:  Well, I don't know what I'm going to see.

22   I know there's been an astounding amount of discovery here, but

23   I'm assuming that I'm going to get evidence that describes a

24   broader range of levels of policy and care and expenditure and

25   whatnot, not just a small window of a few months or five months   16:25:38

1    or even just how things were with Wexford.  I don't know.

2    Maybe I should ask Mr. Specter.  When his chance comes, he can

3    speak to that.

4          MR. STRUCK:  And, Your Honor, again, we have

5    maintained, and we even talked about this very issue last          16:25:54

6    November if you recall.  Mr. Specter brought it up with you.

7    And what we told you we would do, and have done it, is we would

8    continue to supplement our disclosures and we would give them

9    this information, which we are going to do.  They are not going

10   to be coming into trial blind.  They are not going to be          16:26:15

11   prejudiced.  We're giving them the good, the bad, and the ugly.

12   We're not just cherry picking as they have accused us of doing.

13          And that is what, you know, we had intended to do up

14   until -- I mean, you haven't ruled yet, obviously, but I see

15   which way you are leaning.  Because we think it's important for   16:26:32

16   the Court to understand what Corizon has accomplished during

17   their short tenure at the time, in October it will be roughly

18   16 months that they have been on board, in terms of staffing,

19   in terms of turnaround times.  Those are all things the Court

20   has been interested in, and you have told us you were          16:26:55

21   interested in that.  And those are continually improving and

22   it's not just because they filed a lawsuit.  It's not just

23   because we need to change our behavior because the plaintiffs

24   filed a lawsuit, which are the cases you are talking about,

25   it's because Corizon has needed that time to get up to speed.    16:27:12

1    So that's the fundamental difference between the injunction

2    cases you are referring to.

3            THE COURT:  Well, take that at face value.  And again,

4    I want to be clear, I'm not taking you as saying there are any

5    constitutional -- well, I'm not.  So but one could view this as    16:27:27

6    saying, since we're not doing it anymore, we probably were

7    doing it before.  If the evidence is, we're going to fix this,

8    that would seem not -- well, as I said, that would seem to go

9    to remedy, not liability.

10           And by the way, you know, if we have this trial and I    16:27:54

11   find liability, then we proceed to a remedy and it could turn

12   out in round two that I conclude that no further remedies are

13   needed.  But this is not that trial.

14           MR. STRUCK:  And I understand what you are saying.

15   But I'm saying some of this evidence, and the evidence what is    16:28:26

16   occurring right now with respect to the MGARs the CAPs,

17   (phonetic) the reporting, between September 26, 2012, up until

18   we file the pretrial statement is all relevant to the liability

19   as well.  It's not just relevant to the remedy.  And I think

20   that you are essentially throwing out very important liability    16:28:46

21   evidence with respect to systemic violations by not

22   entertaining any -- I know you are not saying that you won't

23   listen to it.

24           THE COURT:  What did you think my case management

25   order meant, that there's -- what you are saying is there's no    16:29:02

```
1    boundary ever, not even on the first day of trial.  On the last

2    day of trial you can tell me what happened the day before.

3             MR. STRUCK:  Your Honor, that's not what I felt it

4    meant, but I did -- I have said consistently, and we have

5    argued this point before you on more than one occasion, that          16:29:17

6    what is happening at the time of trial is relevant and it's

7    relevant not just to if you find that there is a constitutional

8    violation --

9             THE COURT:  You know, maybe I shouldn't jump ahead of

10   my own discussion.  I could be wrong about this, but my               16:29:34

11   recollection is that I set that longer schedule at your

12   request, that the plaintiffs wanted an earlier trial date.

13            MR. STRUCK:  Plaintiffs have wanted an earlier trial

14   date.  That is true.

15            THE COURT:  So it is appearing to me now that by             16:29:47

16   accommodating your request, I have put them in an unfair

17   position.  That's one reason I pulled up my calendar and I

18   said, where do I have some time?  As turns out it may be just

19   luck, but it turns out I can create some time in June.

20            MR. STRUCK:  Well, and I will get to that in a second        16:30:08

21   but I would like to address some of the other things that the

22   Court raised.  And I understand what you are saying.  And I

23   can't recall whether it was done at our request or whether you

24   set those dates.  I really can't.  I'd have to go back and

25   look.                                                                 16:30:24
```

1          But we're not prejudicing the plaintiffs because they

2     will be provided with the information.  We're not going to be

3     introducing any information that they didn't have.  And simply

4     because they won the race to trial, they got it here earlier

5     and they knew -- that's one of the reasons why they didn't stay          16:30:41

6     the case when you suggested they stay the case back at the

7     scheduling conference back in July of 2012.  They didn't want

8     to stay it, because they knew that there would be issues with

9     respect to getting a private operator up to speed regarding the

10    health care system.                                                      16:31:04

11          THE COURT:  One of the key reasons I didn't think I

12    should do that is they are alleging a violation of

13    constitutional rights now, and seemed like they have a right to

14    try to prove that.  And so I -- that was a significant reason

15    for me not just pushing this all off.                                    16:31:20

16          Anyway, go ahead, Ms. Struck.  I keep interrupting

17    you.

18          MR. STRUCK:  That's fine.  I understand.

19          But anyway, with respect to the evidence that we would

20    like to present at trial, it's not going to be in the form of           16:31:37

21    anything other than statistics.  I mean, it's going to be, here

22    is how long it takes to get a chronic consult.  We keep

23    statistics on that on a monthly basis.  It's not rocket

24    science.

25          THE COURT:  I thought you were going to offer not just            16:31:58

1    statistics but opinions based on those statistics, you know.

2    If it's just the statistics, I see your perspective on that.

3    But, you know, if you are saying, well, we are giving all this

4    stuff and we want to offer opinions, they don't take anything

5    on faith from you and a trial is not a faith based exercise.          16:32:22

6    So that's the unfairness.  I expected you all, and I appreciate

7    you are giving ongoing data.

8         MR. STRUCK:  And, Your Honor, I think what I

9    understood your preliminary ruling on the witnesses is that

10   you're not going to allow anything that wasn't properly              16:32:41

11   disclosed vis-a-vis the case management conference or the Rule

12   26.  And so it doesn't seem to me that we're going to be able

13   to provide any testimony from either our 26(a)(2)(B) experts or

14   our employees with respect to whether or not, you know,

15   treating a diabetic within this frame of time was within the        16:33:03

16   standard of care.  So --

17        THE COURT:  Well, I am primarily concerned with the

18   unfairness about offering opinions.  They have --

19        MR. STRUCK:  I'd like to -- I'm sorry I interrupted

20   you.                                                                 16:33:24

21        THE COURT:  But what I'm saying is I have got to think

22   this through.  If you just want to have updated data, I

23   expected that anyway so there may not be unfairness in the

24   updated data although there might.  I think there would be

25   unfairness of letting people offer opinions if the other side       16:33:36

1    hasn't had a chance to probe.

2         MR. STRUCK:  And I agree with that, Your Honor.  And I

3    don't think that -- you know, I know that the plaintiffs were

4    concerned about statements in some of the 26(a)(2)(C)

5    disclosures with respect to that.  And I recognize how the

6    Court's ruling on that.

7         I would like to, first of all, say we aren't trying to

8    abuse the discovery prose.  One of the reasons why the

9    26(a)(2)(C) designations were made were because of concerns

10   that when witnesses were to offer testimony at trial, fact

11   witnesses, witnesses that they have deposed and they have asked

12   expert opinions of, when they start to respond to those

13   opinions that we were going to get an objection, Your Honor,

14   they weren't disclosed in 26(a)(2)(C).  So many of those

15   witnesses were to prevent that very thing from occurring.

16        A good example would be the director's deposition.  He

17   spent probably a couple hours with Mr. Specter providing that

18   type of opinion.  He spent a full seven hours deposing Director

19   Ryan and got those opinions.  There's not going to be anything

20   new disclosed at trial that wasn't disclosed in his deposition

21   or in the Disclosure Statement.

22        I also invite the Court to take a look at --

23        THE COURT:  So you are saying, at a minimum, I should

24   allow opinions that are stated in the previously taken

25   depositions?

16:33:50

16:34:07

16:34:26

16:34:52

16:35:06

```
 1            MR. STRUCK:  Yes, Your Honor.  I think so.  How are

 2    they prejudiced by that?

 3            In addition -- and not just the director, but Carson

 4    McWilliams was deposed for, I think, six hours and as all the

 5    expert-type opinions, I mean, just based upon his position he      16:35:25

 6    is an expert in the field and he was asked all of those kinds

 7    of opinions.  And if -- I invite you to look at our disclosure

 8    on him, I think it's five pages long.

 9            We also have disclosed Ernie Trujillo, who will --

10    he's the southern division as opposed to the northern division.    16:35:43

11    He also -- he was not deposed, but his disclosure is about five

12    pages long.  And we wouldn't have them both testify about the

13    same things, but their response --

14            THE COURT:  Oh.  Very good point.  Very good point.

15    And Mr. Specter may not know this, but the state rules in          16:36:01

16    Arizona only allow one expert per issue.  Federal rules don't

17    say that, but I have the same discretion.  I think it's a great

18    rule because I don't have time to listen to duplicative

19    experts.

20            MR. STRUCK:  I don't want to waste your time, Your          16:36:16

21    Honor.  So we're not going to be presenting evidence that's

22    duplicative.  We understand Rule 403.  We understand the

23    importance of your time and the Court's time.  So we don't

24    intend to do that.  But that doesn't mean that there aren't

25    going to be some things that Ernie Trujillo might testify to       16:36:36
```

1    that Carson McWilliams couldn't because Ernie Trujillo oversaw

2    different facilities than Carson McWilliams did.

3         But we think our disclosures on those folks are very

4    good.  And before you rule with respect to individual

5    26(a)(2)(C) designations, I would invite the Court to take a          16:36:56

6    look at our disclosures because I understand what you are

7    saying about certain 26(a)(2)(C)s but there are some that are

8    actually very extensive, in fact, far more extensive than I

9    have ever seen in any case that I have had, and I'm almost

10   exclusively in federal court, in which the plaintiffs are not        16:37:15

11   going to be prejudiced because I understand what you are saying

12   very clearly that if they start to wander away from what they

13   have said in a deposition or what we've said in the disclosure

14   you are going to shut it down.  And I don't intend to

15   antagonize the Court by doing that.                                   16:37:34

16        THE COURT:  That would seem to be a minimum baseline.

17   And I have broader issues as to whether the full discovery

18   would need to be done as to some of them.

19        MR. STRUCK:  Now, and I also think all of those

20   witnesses that I have just mentioned are not 26(a)(2)(B)              16:37:48

21   witnesses.  All of the testimony was gained as a result of the

22   jobs that they have.  It wasn't -- we didn't ask for them to

23   look at anything especially for this trial.  All of their

24   testimony will be with respect to their expertise regarding the

25   jobs that they do every day.  They weren't specially retained.       16:38:08

```
 1    We didn't ask them to look at anything special.

 2              THE COURT:  Well, these physicians --

 3              MR. STRUCK:  I'm sorry, I'm just talking about the

 4    ones that I have specifically mentioned, which are more of

 5    the -- plaintiffs call them isolation.  We don't.  We call them    16:38:21

 6    segregation.  But those witnesses have been disclosed.

 7              Now, in terms of the physicians, I want to point the

 8    Court to something that's very important.  And that is, some of

 9    these doctors who are now contract monitors, because, you know,

10    at one time, ADC, during the relevant period of time, ADC is       16:38:42

11    providing care and then Wexford took over, some of these

12    doctors were actually providers for some of the named

13    plaintiffs.  For example, Dr. Robertson treated plaintiff

14    Jensen down in Tucson.  And he was asked about that in his

15    deposition.  So Dr. Taylor also treated some of these people.      16:39:04

16    So some of these doctors, before they became contract monitors,

17    were actually treating physicians.  So we don't think they

18    should be precluded from being able to testify about whether --

19              THE COURT:  Their own treatment?

20              MR. STRUCK:  Right.                                       16:39:20

21              THE COURT:  I didn't --

22              MR. STRUCK:  And I didn't know if you knew that so I

23    wanted to --

24              THE COURT:  No.  I did not pick that up.

25              MR. STRUCK:  And that's true with some of the other      16:39:26
```

1    doctors as well.  I'm talking ADC monitors for the most part.

2    So with respect to those witnesses, we ask that the Court

3    utilize its discretion at the time of trial as opposed to

4    granting a motion.

5            THE COURT:  I'm really going to try to give you as          16:39:47

6    much direction as possible.  And it may not include going down

7    witness by witness saying you can say this and this but not

8    that or that.  And it is likely to be more general in nature

9    such as what we talked about a minute ago that you can't go

10   beyond your (a)(2)(C) disclosures.  You can't go beyond what's    16:40:11

11   said in the previously taken deposition and other broader

12   direction and then see if you all comply with that.  And if

13   somebody thinks the other guy is not complying I will get an

14   objection and I will rule on it at trial.

15           MR. STRUCK:  It's my understanding -- and you didn't        16:40:33

16   specifically address it but I think I understand what you are

17   saying, with respect to our 26(a)(2)(B) experts, our specially

18   retained experts, that at the time of trial, if they begin to

19   testify about something that's outside the scope of their

20   deposition or outside the scope of their (a)(2)(B) reports you    16:40:51

21   are not going to allow that.

22           THE COURT:  That's garden variety.

23           MR. STRUCK:  And I understand that.  And we don't

24   intend to do that.  We don't intend to -- although, a lot of

25   time experts since they prepare their reports they put in there   16:41:03

1    that my opinions may change, and I think the plaintiffs'

2    experts said the same thing in their reports.  My opinions may

3    change as I get more information.  I think that is what they

4    are complaining about.  I don't think that is a valid basis to

5    just strike an expert.  I think that the Court can deal with        16:41:20

6    that at trial as these folks are testifying.  And I'm sure Mr.

7    Specter will let everyone know if he thinks that our experts

8    are going off the reservation, so to speak.

9            With respect to the trial, Your Honor, we -- just as

10   you have kind of held us to task here with respect to your         16:41:45

11   scheduling order, we took your October 20th trial date to

12   heart.  And I think in your -- one of your prior orders, you

13   say, and as you come back and told us that we didn't -- we

14   should have taken that more seriously, the Court's scheduling

15   order states deadlines are real and that's underlined.  The        16:42:08

16   parties are advised the Court intend to enforce the deadlines

17   set forth in this order and should plan their litigation

18   activities accordingly.

19           THE COURT:  Right.  The question is -- I know moving

20   up a trial can be problematic.                                     16:42:18

21           Mr. Specter, this is a yes or no question.  Would you

22   want to move the trial up?

23           MR. SPECTER:  Yes.

24           MR. STRUCK:  We don't, Your Honor.  And here's one of

25   the main reasons why.  We have a dispositive motion deadline.      16:42:34

1   It's not even actually --

2          THE COURT:  I will move fast on that.

3          MR. STRUCK:  It's going to be a big one.  We're going

4   to move on the whole thing and we think we've got a good shot

5   at it.  We certainly have an opportunity to cut out a lot of          16:42:47

6   claims in this case and shorten this trial, make it cheaper for

7   plaintiffs, make it cheaper for us, and promote judicial

8   economy.

9          So we would like an opportunity to fully brief this as

10  the order set forth, and I think June 13th is when you ordered       16:43:04

11  our reply.  And I think it's going to -- I understand you do

12  move quickly.  I have had you in other cases.  This is a big

13  one, though, and it may take some careful time and thought.

14         That's probably --

15         THE COURT:  I guess you are going to ask me to let you        16:43:22

16  go beyond the 17-page limit.

17         MR. STRUCK:  Yes, Your Honor, we are.  It's a big case

18  right now.  We don't know what the Ninth Circuit -- and that's

19  another issue.  We're still -- we haven't gotten an opinion.

20         THE COURT:  It would be nice if they are going to --         16:43:41

21  whatever they are going to do would just do it.

22         MR. STRUCK:  I agree.  I agree.  And there were -- I

23  don't know what they are going to do.  There were questions

24  with respect to the scope of the claims that were certified and

25  the manner in which it was certified that could have just been      16:43:56

```
1    questions.  I don't know.  I can't predict what they are going

2    to do or when they are going to do it.  I imagine if it was 3-0

3    we would have gotten an opinion already because it was last

4    September.  So it's been some time, and hopefully we'll get --

5            THE COURT:  Let's see.  They argued that in November,      16:44:12

6    right?  Three and-a-half months.  Actually, that's -- three

7    and-a-half months is very short for them.  But this is an

8    unusual case.

9            MR. STRUCK:  We've been tracking it and we have seen

10   opinions have come out of cases that were argued past ours.        16:44:26

11           THE COURT:  But, you know, my working assumption is

12   even if they reverse some part or large part of the class

13   certification, this trial is still going.  And it probably

14   wouldn't change to the extent that plaintiff -- the plaintiff

15   can make -- actually, this is one of the key reasons I           16:44:55

16   certified the class.  The plaintiff can make all these same

17   arguments, the same liability claim, the same relief claim,

18   individually.

19           So. . .

20           MR. STRUCK:  Well, and it may -- I think what it may      16:45:07

21   possibly do, depending on what they do, because I can't

22   predict, it may very well change the claims that are tried.  It

23   may very well change the manner in which the evidence is

24   presented or the claims are presented.  It's hard to say,

25   because we're all just guessing.  But I think more importantly    16:45:26
```

1   is our dispositive motion.

2            And also, Your Honor --

3            THE COURT:  I'm sorry.  What is the trial date I have

4   now?

5            MR. STRUCK:  October 20.                              16:45:37

6            THE COURT:  That's what I thought.  That's about as

7   soon as I can do it unless I could do it in June.

8            MR. STRUCK:  In terms of scheduling, Your Honor, we

9   have told the parties that we have an October 20th trial date.

10           THE COURT:  I know.  But it really boils down to two   16:45:54

11  things.  It's -- all of your witnesses or almost, I don't know,

12  maybe most of them anyway, are in-house witnesses.  They will

13  show up for trial any time you tell them to because you sign

14  their paychecks and they work for you.  The plaintiffs are more

15  likely to have witness problems but they have just told us they  16:46:15

16  would make it happen.

17           So the only other thing is the lawyers.  And you know,

18  if any of you have got a previously set trial that would be a

19  problem for me.  If you just have other stuff, this is an

20  awfully important case.  I might be inclined to say, well, if    16:46:32

21  you have got other things, depos, move it and I will write a

22  note to your other judge if you want.

23           MR. STRUCK:  And, Your Honor, it's more than just

24  that.  I -- both Kathleen Wieneke and I, who are the lead

25  counsel on this case, have trials that are going to end          16:46:51

```
 1    sometime in about two weeks before you are talking about
 2    starting this case.  There is no way we're going to be able to
 3    be completely prepared, fully prepared for this trial in that
 4    short amount of time.
 5         THE COURT:  You guys have trials all the time.  Most      16:47:05
 6    of them go away.
 7         MR. STRUCK:  Neither one of these are going away.
 8    This one's been continued three times already.  It's in front
 9    of Judge Armijo in Albuquerque.  It's a brain injury case.
10    We're about $20 million apart.  So that one is going.         16:47:20
11         You know, with respect to the two named defendants who
12    have a right to be in the courtroom, and Richard Pratt was
13    going to be here every day, based upon the Court's schedule he
14    scheduled a two-week vacation in June.
15         THE COURT:  You know, I understand that.  And I           16:47:40
16    usually do everything I can to accommodate people.  But there's
17    so many people in this I just -- the best I can hope for is to
18    minimize the collateral damage.
19         MR. STRUCK:  And I think it would be by sticking with
20    the October 20th trial date, Your Honor.  Everyone knew that   16:47:57
21    was on their calendar.  Everyone has scheduled their personal
22    lives, their jobs, their schedules around that October 20th
23    trial date.  There is no prejudice to the plaintiffs by waiting
24    until October 20th.  This will allow the Court adequate time in
25    which to review the dispositive motion and rule on it.         16:48:16
```

1       THE COURT:  What it would do, it would undercut, not

2  totally, but in large part what you are telling me about now

3  you want to have rolling discovery that -- rolling proof that

4  never ends.  The sooner we do it the less I have to deal with

5  that.                                                            16:48:35

6       MR. STRUCK:  Well, I think you told me you are not

7  going to be dealing with that unless it's something you really

8  want to hear in which case --

9       THE COURT:  The truth is I told you what my

10 disposition was, but you will get my ruling when you get it.    16:48:47

11      MR. STRUCK:  And I understand what you are saying

12 about folks' schedules.  But it is important, you know, we've

13 got -- Kathleen Wieneke's son is getting married the first week

14 in June in Austin, Texas.  She's going to be out.  I was

15 actually going to go to the wedding because it's the same boy   16:49:03

16 she was pregnant with when she and I tried *Casey versus Lewis*

17 20 years ago.

18      THE COURT:  What a better remembrance than to try this

19 case.

20      MR. STRUCK:  Yeah.  She's not going to miss that.  And   16:49:15

21 we have experts who are -- they are a bear to schedule and not

22 only will we want them to testify but we may very well want

23 them to sit in when the plaintiffs' experts testify.  And their

24 June and July is booked.  So, you know, those aren't -- and

25 they have, you know, they have other cases and other things     16:49:40

1    going on.

2         It's just -- I mean, we have a, with all of our main

3    witnesses, we have all sorts of scheduling nightmares.  And

4    it's just -- it would be prejudicial to the defendants to gear

5    up to get this thing ready to go for trial on June 3rd between        16:49:58

6    now and then.  Honestly, Judge, I just don't think it could be

7    done.

8         THE COURT:  It doesn't surprise me, but on the other

9    hand, when I went with you instead of them on this schedule,

10   you didn't tell me that my fact cutoff, my discovery deadlines      16:50:16

11   were really fictional.  If you had told me that back then, it's

12   likely I would have said something like, oh, I will move your

13   trial up earlier.

14        MR. STRUCK:  And, Your Honor, I don't think -- that's

15   not exactly what we are anticipating here.  But I thought that      16:50:35

16   we have been very open and honest, not only with you, but I

17   know Don Specter and I have had many conversations about that.

18   In fact, I know that he agreed with me at one time that what

19   was happening at the time of trial in terms of health care was

20   very important to the Court.  So we're not trying to pull a         16:50:53

21   fast one on anybody.  And we never intended to do that and

22   don't intend to do it.  And it sounds like you wouldn't let us

23   do it anyway even if we wanted to.

24        But with respect to a June 3rd trial date, it would

25   prejudice defendants to get ready to go that quickly.  We           16:51:11

1   wouldn't be able to really fully adequately brief the

2   dispositive motion.  I don't think you would have enough time

3   to review it.  And with the scheduling conflicts it would be

4   prejudicial.  It would be extremely difficult to get ready for

5   this trial with, you know, three months or three and-a-half        16:51:36

6   months notice, less than three and-a-half months notice on a

7   case that's this big and this important.

8          If you are going -- if your preliminary rulings are

9   going to be as you stated, there's no reason why we can't go on

10  October 20th.  I don't know if you are interested, but I do         16:51:56

11  have a matrix of unavailability.

12         THE COURT:  The truth is, I don't have time because I

13  have another matter backed up, an emergency matter backed up I

14  have to deal with.  I should give Mr. Specter some time.

15         This matrix, is this something you have in writing?          16:52:15

16         MR. STRUCK:  If you are interested, I just have a

17  calendar of conflicts with respect to our witnesses.

18         THE COURT:  No.  That's all right.

19         Mr. Specter.

20         MR. SPECTER:  Well, I think you understand the issues,       16:52:28

21  Your Honor, so I won't belabor many of them.  I just want to

22  make a couple of points.

23         First of all, there's no justification that you have

24  heard from Mr. Struck or in his papers or here today about why

25  they didn't disclose any of these experts on December 18th,        16:52:48

1    which was the date set for that.  So all these 26(a)(2)(C)

2    experts they are talking about should have been disclosed.

3          THE COURT:  You know, there's this technical question

4    of whether it's (B) or (C).

5          MR. SPECTER:  Right.                                16:53:03

6          THE COURT:  At a minimum it's (C).

7          MR. SPECTER:  At a minimum it's (C).

8          THE COURT:  If there's inadequacy of the (C)

9    disclosures, that bounds them.

10         MR. SPECTER:  That's right.                         16:53:10

11         THE COURT:  So then the only other question is, all

12   right, is it really a (B).

13         MR. SPECTER:  In my opinion, Your Honor, most of these

14   are (B).  Some of them are hybrid.  I agree with that.  But at

15   a minimum, I think most of them are (B).  For example, Mr.     16:53:21

16   Trujillo, which Mr. Struck mentioned, on Page 42 of their 14th

17   Disclosure Statement it says, "Mr. Trujillo has reviewed the

18   reports of plaintiffs' experts Eldon Vail and Craig Haney.  Mr.

19   Trujillo will testify regarding the conditions of confinement

20   as alleged by both Mr. Vail and Mr. Haney."  So that's --      16:53:42

21         THE COURT:  You know, I read some of those.  I didn't

22   read all of them.  Is that all they have?

23         MR. SPECTER:  No.  It's five pages, but I mean it's

24   clearly a (B) -- my point is he's clearly going to -- this is

25   clearly expert opinion testimony prepared for litigation       16:53:57

1    because he's rebutting our expert.  So it fits into (B).

2         THE COURT:  Actually, that might be kind of a litmus

3    test issue under the rules.  Have you all looked at that?  And

4    that would be if you are offering an in-house guy who might

5    otherwise be a non-report, limited report guy, if he's going to          16:54:17

6    be offered to rebut the other side's experts as to matters of

7    opinion would that be an automatic disqualification or

8    automatic criterion to bring you into the full report?  That

9    sound is like an issue of law.  I don't know if there's

10   anything out there on that.                                              16:54:44

11        MR. SPECTER:  I don't know, Your Honor.  We haven't

12   looked at that.  I don't want to speculate.  But I haven't seen

13   anything.  The *Goodman* case seems to indicate you can testify

14   as a hybrid.

15        THE COURT:  Well, it depends on what you are saying.              16:54:57

16        MR. SPECTER:  Yes.  That's what I mean.  The treating

17   physician in *Goodman* could offer her testimony as a (C) witness

18   about her treatment, but as soon as she goes beyond that, as

19   you know, it becomes a (B) witness so the Court remanded it and

20   said you have got to write a report.  So that's what we have          16:55:16

21   here mostly.  I mean, some of them are purely (B).  I won't

22   belabor those points, but you have seen the representative

23   samples from the Disclosure Statement.

24        Just one point on the statistics that Mr. Struck is

25   saying he's going to produce to us.  Statistics are important          16:55:35

1  but they are not the whole ball game.

2         THE COURT:  Is there any problem -- I mean, is there

3  any problem with just allowing upgraded statistics, current

4  statistics?  As I said, I -- the unfairness I see is if you --

5  if anybody wants to offer new -- you know, I actually tried          16:55:57

6  some statistical cases when I was a lawyer.  And I have had

7  some here, too.  And there's a lot of bogus statistics out

8  there.

9         MR. SPECTER:  Garbage in and garbage out.

10         THE COURT:  They often don't mean much unless you have     16:56:21

11  a credible expert who can explain the attributed significance

12  and subject to robust cross-examination.

13         MR. SPECTER:  And testing through depositions, right.

14  We agree with that.

15         THE COURT:  So my point is maybe there's no problem in     16:56:37

16  putting the statistics in and some statistics are obviously

17  significant.  Some of these are more data than statistics.

18  They were -- if you have, for example, times for treatment,

19  now, those are data.  Those don't call for statistical

20  analysis.                                                           16:56:58

21         MR. SPECTER:  Right.  They are data points.  But they

22  are not the only data points that you can rely on.  So if you

23  use these data points for, let's say, July of next year we

24  won't have any evidence about how those data points or what

25  they mean in practice to the prisoners.                            16:57:13

1          THE COURT:  What we will presumably have, we will have

2     the disclosed expert testimony about the significance of

3     different data sets.

4          MR. SPECTER:  Right.

5          THE COURT:  And if we see the primary data is                    16:57:26

6     dramatically fallen, well, that might have some significance

7     without an expert.  On the other hand, the question here is

8     fairness to both sides.

9          MR. SPECTER:  Right.

10         THE COURT:  And there may be, since I'm requiring you            16:57:41

11    guys to get all your data that's ongoing, if they are not

12    allowed to bring in experts to testify about this data set,

13    although they can testify about earlier data sets with

14    different inputs, what's unfair about that?

15         MR. SPECTER:  Because they are going to argue from the          16:58:00

16    data set that --

17         THE COURT:  They can argue and their obligation will

18    be to persuade me.  But --

19         MR. SPECTER:  I get your point.  But if the case is

20    going to go up on appeal we're entitled to a fair opportunity      16:58:13

21    to test that data and to test what it means in practice and how

22    it affects the lives of the prisoners in practice.  If they

23    came in there -- I mean, we have statistics from them which

24    said everybody at a certain prison got an appointment within

25    very short time at 100 percent accuracy, we don't believe         16:58:33

1    that's true.  But we're not allowed to go into the prison to

2    prove it.  I mean, you can infer maybe it's not good data.  So

3    if they had said it's 75 percent and in reality it's only 50

4    percent because they are counting the numbers wrong or they

5    don't put in all the data, there are a thousand reasons why the          16:58:52

6    data they can submit to you can be good or bad and we wouldn't

7    know.

8            THE COURT:  Would be like law schools reporting their

9    rates of employment on recent graduates.

10           MR. SPECTER:  Very good point, Your Honor.  Very good          16:59:06

11   point.

12           And so we think that the Court's suggestion that we

13   try the case beginning on June 3rd --

14           THE COURT:  Here's the problem.  Everything Mr. Struck

15   says is entirely believable about reliance on the date I set.          16:59:24

16   And I was thinking about that as a way to mitigate what he's

17   complaining about of the time gap between my discovery deadline

18   and when we'll be at trial.  But he doesn't like it.  So I --

19   you know, I just can't remember when I was practicing law any

20   judge ever accelerating a trial.  Probably would violate some          17:00:06

21   United Nations Human Rights Convention or something.

22           MR. SPECTER:  I don't think so.  I will go to bat for

23   you in the UN if they come and get you.  But I think it's

24   within your discretion and I think it's very --

25           THE COURT:  I do have discretion in injunction          17:00:26

1    matters.  But the problem is I gave you all the time and with

2    hindsight maybe I wished I would have set it earlier.

3            MR. SPECTER:  So if you don't -- we think the June 3rd

4    is a very creative solution to the problem that you understand

5    and we addressed.  That's why we brought the motion.  If you          17:00:41

6    don't do that, we really think you need to open discovery

7    because we'll be severely prejudiced.

8            THE COURT:  You don't need to open discovery if I'm

9    really holding them to that time frame.  And again, as I said

10   in the beginning, I'm seeing -- you get to prove your case.          17:00:57

11           MR. SPECTER:  Yes, Your Honor.

12           THE COURT:  And if you prove your case, and their main

13   defense is rehabilitation, that does not stop the Court from

14   finding liability when you filed your complaint as to the

15   cutoff and then we would proceed to remedies and that would be        17:01:14

16   the orderly time for them to come in and say well, okay, this

17   may have been -- again, this is not a damage case.  It's only

18   an injunction case.  We could come in in a more orderly

19   fashion, give them the full opportunity with you having the

20   opportunity to have the discovery on that and they might             17:01:33

21   persuade me that they have cured everything.  The difference

22   being that you technically won and I will be burdened with the

23   enormous motion for attorney's fees.

24           But so --

25           MR. SPECTER:  Well, and you would issue an injunction        17:01:51

1    I think even if at that point even if --

2         THE COURT:  I guess I would issue.  It would be a

3    generic injunction.

4         MR. SPECTER:  But right, I think that's a -- of

5    course, this is just from my perspective, but it's an unlikely          17:02:07

6    outcome of the trial in my opinion that everything that we

7    think is wrong with the system.  Once you read our expert

8    reports, you will understand, I think, that from our

9    perspective the errors and the problems are systemic.  They are

10   life threatening.  They have created harm to untold number of          17:02:26

11   prisoners including the plaintiffs.  And that's a reason why we

12   strongly want to get this trial heard sooner.  Because in our

13   view the sooner it's heard the sooner we can get relief for our

14   clients.

15        THE COURT:  Well, it's a difference of four months.          17:02:44

16        MR. SPECTER:  Yes, Your Honor, but it makes a big

17   difference for the gap that you have identified.  It really

18   makes it a lot shorter.  The gap is a lot more reasonable

19   between the two things.  I think it's a very good solution to

20   the problem, even though it would inconvenience me as well as          17:03:04

21   my co-counsel as much and our experts.

22        Speaking of the trial, Judge, can I bring up one point

23   to try and make it shorter?  Would it be okay if we do most of

24   the direct testimony, since it's a bench trial, through

25   declaration?          17:03:25

1          THE COURT:  Actually, I have encountered that

2     especially in expert cases where it is often very efficient and

3     more effective to take the expert reports as admitted and then

4     use the time to cross-examine.  Maybe a little bit of setup and

5     not take all the time to present them.  I, frankly, I have had          17:03:46

6     situations where people have stipulated to do it that way.  And

7     I would really invite that here.  That's really a trial

8     management issue that will come up when we have the case

9     management schedule.

10          MR. SPECTER:  Yes, but it makes a big difference          17:04:06

11     because the trial conference is close to the trial date and

12     these declarations which we are going to have to prepare are

13     going to take time.  If you are inclined to do it, I have done

14     this in several other cases.  It really shortens the trial.

15          THE COURT:  I'm not sure I can do that against the          17:04:27

16     objection of any party.

17          MR. SPECTER:  Well, I think you can.  Well, I don't

18     know if they object.

19          THE COURT:  If you all don't object I would welcome

20     that.  It's much easier for me to focus on the report and I          17:04:36

21     understand it and then deal with the cross than to sit and

22     listen to half a day of somebody telling me stuff I can read in

23     the report and understand better.

24          MR. SPECTER:  Right.  And a lot of the information

25     that the experts are relying on to form their opinions which          17:04:53

1   they would have to tell you are very detailed information about

2   what happened to each individual prisoner at this time and we

3   go into case after case after case in the report.

4           THE COURT:  Mr. Struck, were you standing up to agree

5   to that?                                                    17:05:10

6           MR. STRUCK:  No, I wasn't actually, because I wasn't

7   really understanding.  I think you were talking about two

8   different things.  He was talking about preparing declarations

9   which we have never seen.  Were you talking about --

10          THE COURT:  The reports.                            17:05:21

11          MR. STRUCK: -- actual reports?  I would like an

12  opportunity to take a look at that issue before I say yeah or

13  nay.

14          THE COURT:  It would have to be put -- it would either

15  have to be stipulated or it would have to be put in evidentiary  17:05:29

16  form.

17          I do -- I guess I'm not asking you to agree to that

18  now.  As a practical matter I could end up giving you both a

19  trial time amount that you would be highly induced to agree to

20  that, not because I'm being mean but because we're just       17:05:46

21  overwhelmed here.

22          All right.  I do ask you all to dialogue about that.

23  And if you can't reach an agreement, Mr. Specter, you can file

24  a motion.  You should -- but he has a good point.  He's got to

25  be able to see what you are asking.                          17:06:07

1          MR. SPECTER:  We would actually suggest that we agree

2     to a deadline where we exchange those things so that both sides

3     have an opportunity to review them in sufficient time before

4     the trial witness that they can prepare for their

5     cross-examination and hopefully shorten that as well.                    17:06:24

6          THE COURT:  We might do that subject to motions at

7     trial to strike portions of that as insufficiently founded so

8     that nobody would be giving up objections to adequacy of

9     foundation.

10         MR. SPECTER:  I think evidentially, Judge, if the            17:06:40

11    witness comes in and says this is my report or my declaration

12    or whatever it is and everything in it is therefore true or I

13    base my opinion on it I think it's admissible.

14         THE COURT:  Not necessarily for an expert.  It depends

15    on the nature of the opinion and there's facts an expert needs       17:06:56

16    to have knowledge of to evaluate.  And I have done that where I

17    got the expert to admit he didn't know this and that and

18    there's no basis for an opinion after that.

19         MR. SPECTER:  Hopefully that won't happen here.  I

20    pray it won't happen here.                                        17:07:12

21         Did Your Honor want to talk about the time, how much

22    time for the trial or --

23         THE COURT:  No.  We're going to have to deal with that

24    later.  And whatever ruling I make on this will affect that.

25    You know, the practical reality is, it's highly likely that      17:07:23

```
 1    what I'm going to have to do here is what I do in virtually

 2    every civil trial.  The criminal trials I don't have to do it

 3    because they are short.  And that is, figure out, as best I

 4    can, what an amount of time is and give it to you and then I

 5    leave it to you to use that time well.  Unfortunately, I found    17:07:49

 6    that the civil lawyers routinely ask for a multiple of the

 7    amount of time they really need and then when I set them to a

 8    time budget, guess what.  I get efficient trials.  Whereas if I

 9    just give you what you want I have three trials a year.

10            MR. SPECTER:  Okay.                                       17:08:08

11            THE COURT:  So that is what I almost always do on

12    civil trials.  But to do that, I want to have as good an

13    understanding as I can about the issues and witnesses so I'm

14    coming up with an amount of time that gives you what you should

15    have but still forces you to be efficient.                       17:08:22

16            MR. SPECTER:  Sounds like a good balance.  We're

17    perfectly willing to work on that.

18            THE COURT:  Anything else?  I do have another matter

19    that's backed up.

20            MR. SPECTER:  No, Your Honor.  I think that's enough.     17:08:32

21    Thanks.

22            THE COURT:  I will take the motion under advisement.

23    I will try to get an order out as soon as possible, maybe even

24    tomorrow.

25            And oh, with respect to the trial date, well, I don't    17:08:41
```

1    see how I can do that.  I think I have to live with the mistake

2    I made and I will not lose track of the fact that I made that

3    mistake at Mr. Struck's request of setting the late trial date.

4    So I'm going to try to minimize any unfair effect to the

5    plaintiffs for me setting that trial later than I now wish I      17:09:15

6    had.

7             All right.  Very well.  You are all dismissed and the

8    clerk will call the next case.

9             (Proceeding concluded at 5:09 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8                              C E R T I F I C A T E

9

10          I, LAURIE A. ADAMS, do hereby certify that I am duly

11   appointed and qualified to act as Official Court Reporter for

12   the United States District Court for the District of Arizona.

13          I FURTHER CERTIFY that the foregoing pages constitute

14   a full, true, and accurate transcript of all of that portion of

15   the proceedings contained herein, had in the above-entitled

16   cause on the date specified therein, and that said transcript

17   was prepared under my direction and control.

18          DATED at Phoenix, Arizona, this 5th day of March,

19   2014.

20

21                              s/Laurie A. Adams

22                              _____
                                Laurie A. Adams, RMR, CRR

23

24

25