1  Daniel Pochoda (Bar No. 021979)
   James Duff Lyall (Bar No. 330045)*
2  **ACLU FOUNDATION OF ARIZONA**
   3707 North 7th Street, Suite 235
3  Phoenix, Arizona 85013
   Telephone: (602) 650-1854
4  Email: dpochoda@acluaz.org
          jlyall@acluaz.org
5  *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

6  *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
7  *Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of*
8  *themselves and all others similarly situated*

   **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**
9
10 Sarah Kader (Bar No. 027147)
   Asim Varma (Bar No. 027927)
   **ARIZONA CENTER FOR DISABILITY LAW**
11 5025 East Washington Street, Suite 202
   Phoenix, Arizona 85034
12 Telephone: (602) 274-6287
   Email: skader@azdisabilitylaw.org
13        avarma@azdisabilitylaw.org

14 *Attorneys for Plaintiff Arizona Center for Disability Law*

   **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**
15

16                    UNITED STATES DISTRICT COURT
17                         DISTRICT OF ARIZONA

| | |
|---|---|
| 18  Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | No. CV 12-00601-PHX-NVW (MEA)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION** |

78204-0001/LEGAL120273423.2

## I. INTRODUCTION

Defendants have defaulted on the showing necessary for reconsideration. They do not demonstrate that this Court's order was "manifest error" or that there are material "new facts or legal authority that could not have been brought to [the Court's] attention earlier with reasonable diligence." LRCiv 7.2(g). The Court should deny Defendants' request for reconsideration, and reject their plea to extend the relevant fact period by nine months, reopen discovery, and permit additional experts to testify. To do otherwise would result in tremendous prejudice to the Plaintiffs, and a monumental waste of this Court's resources.

This Court correctly recognized that

> [t]he cornerstone of this litigation has been the framework under which the Parties would conduct discovery and gather evidence upon which the Court would decide this case. The centerpiece of that framework was the close of discovery on September 27, 2013. That deadline was oft-repeated and enforced by the Court.

[Doc. 815 at 1-23:27]

Relying on this framework, Plaintiffs took many depositions, reviewed tens of thousands of documents, prepared all of their expert reports, and have even defended a pair of expert depositions. [Declaration of Corene Kendrick ("Kendrick Decl.") ¶ 2, 6] This did not come without cost to the Court either, as it has had to adjudicate numerous discovery disputes during this period. Most or all of this work would have to be repeated for the additional nine-month period if the Court reopened discovery, at exorbitant cost to the parties and causing a significant drain on judicial resources. What is more, all of these additional efforts would take time, even months, after which Defendants could again claim that the evidence is stale, and again seek further discovery. This endless cycle of discovery is precisely what this Court sought to prevent by denying previous requests to extend discovery or stay the case. [*See* Docs. 567, 815 at 1:26-27]

Defendants claim they are surprised and prejudiced by the scheduling order. But Defendants have known for more than two years that there would be a gap between the

1  discovery cut-off and the trial. *See infra*, p. 3. Instead of requesting a modification in the
2  schedule, Defendants repeatedly asked the Court to *hold the line on the September 27 cut-*
3  *off* and have done so themselves. *Id*.

4         Defendants now—for the first time—express concern that the evidence will be
5  "stale" by October. They seek to reopen discovery, notwithstanding the cost. But the
6  obvious solution to Defendants' concern about stale evidence is to advance the trial date.
7  Indeed, the parties are essentially ready for trial now: the few final items of outstanding
8  discovery will be completed by the April cut-off for expert discovery, after which the
9  matter will be ready to be heard.

10         When the Court heard the underlying motion, Defendants claimed that advancing
11  the trial date was not convenient to defense counsel for personal reasons. [Doc. 826-1,
12  Ex. 1 at 29:11-30:7] Now, Defendants claim that holding the trial in October will be even
13  more prejudicial to them. Defendants cannot have it both ways. Their effort to upend the
14  entire case schedule must be rejected, and the Court should instead set a June trial date.
15  As detailed below, it could do so in a way that accommodates any scheduling conflicts
16  Defendants have and without increasing the burden of discovery on either side.

17  **II.     BACKGROUND**

18         Defendants have long known that the Court intended to close fact discovery at least
19  13 months before trial to allow for the orderly progression of experts, summary judgment,
20  and pre-trial preparation. The Court made that clear at its initial scheduling conference in
21  July 2012. [Doc. 57 at 42:21-24, 49:6-14 (proposing May 2013 fact cut-off and fall 2014
22  trial)] In March 2013, Plaintiffs made an unopposed request to extend the discovery cut-
23  off [Doc. 364], which is when the Court confirmed the fall 2014 trial and set a specific
24  date of October 20. [*See* Doc. 388]

25         During that time, Defendants never protested or suggested the cut-off should be
26  extended to account for "current conditions." Instead, they resisted any further extensions
27  of the cut-off, urged this Court to enforce it, and did so themselves, resisting production of
28  documents from the very time period they now want to put in evidence.

1     For example, at a hearing in August 2013, Plaintiffs sought an extension of the
2 discovery cut-off date.  The Court noted that one of the "gross tools available to the Court
3 to incentivize the litigants to prioritize their discovery to what's important is to just set a
4 time limit."  The Court then said "if I give any extension, and I may not give any, it won't
5 be much."  Defendants' responded:

> And we agree, Your Honor.  The deadlines are a great tool.
> They are  in place and we have been following them and we
> can comply.   We   will comply with them as the discovery
> schedule is already set.

9 [Doc. 566 at 40:23-41:1]  Two days later, Plaintiffs' request was denied.  [Doc. 567]
10 Similarly, in an October 2013 filing, Defendants urged the Court to block further
11 discovery, arguing that "[t]he Court set very precise parameters as to the duration of
12 discovery.  Plaintiffs' counsel were well aware of those parameters.  They need to stop
13 blaming Defendants and the Court, and move on with their case."  [Doc. 707 at 2:9-12]
14 Consistent with this, Defendants have vigilantly enforced the discovery cut-off.  [*See, e.g.*,
15 Declaration of Caroline N. Mitchell ("Mitchell Decl."), Ex. 4 (relying on cut-off to refuse
16 to produce psych autopsy that was in draft prior to discovery cut-off and later finalized)]

**III.   ARGUMENT**

  **A.   Defendants Cannot Meet, Nor Do They Even Attempt to Discuss, the
         High Burden Required to Grant a Motion for Reconsideration.**

20     Earlier in this case, the Court warned Defendants that "[m]otions for
21 reconsideration should be granted only in rare circumstances."  [Doc. 175 at 3 (citing
22 *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995))]  Yet
23 Defendants fail to show the "manifest error" or  material "new facts or legal authority that
24 could not have been brought to [the Court's] attention earlier with reasonable diligence"
25 required for the Court to grant a motion for reconsideration. LRCiv 7.2(g).  Instead, they
26 rely on arguments that the Court has already rejected or that Defendants could have made
27 long ago, but elected not to for strategic reasons.  Such arguments do not support
28 reconsideration.  *See In re Zicam Cold Remedy Mktg., Sales Practices, & Prods. Liab.*

1  *Litig.*, 2011 WL 977604, at *2 (D. Ariz. Mar. 18, 2011) (A "request that [the Court] rethink [its] analysis is not the proper subject of a motion to reconsider."); *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (A motion to reconsider "may not be used to raise arguments . . . for the first time when they could reasonably have been raised earlier in the litigation"); *James v. Prudential-Bache Secs. Inc.*, 57 F.3d 1077 (9th Cir. 1995) (Finding that "district court did not abuse its discretion by denying James motion [for reconsideration] . . . when that motion raised arguments that were available to James in 1988 and failed to offer any justification for the delay.").

For example, Defendants still have not offered a reasonable explanation for their failure to comply with the Court's discovery deadline nor agreed to move the trial date up to lessen their alleged prejudice. Instead, Defendants recycle their argument that ongoing evidence of ADC care is relevant in injunctive relief cases and should be admissible at trial. [*Compare* Doc. 794 (asserting same arguments)]

Further, if Defendants thought they would be prejudiced by a September 2013 discovery deadline, the time to raise that issue was when those dates were assigned, not in a motion for reconsideration. In fact, when given the opportunity months ago to discuss the discovery deadline, Defendants decided not to argue that deadline should be extended to account for allegedly-changing prison conditions and instead argued that they intended to follow the discovery schedule as set. [*See* Doc. 566 at 40-41]

Nor are Defendants allegations of surprise credible. As, noted in the Motion to Strike, Plaintiffs complained of the danger of Defendants' cherry-picking post-cut-off evidence [Doc. 753 at 6-7], and this Court clarified its intent to have a trial "according to the outline we have laid out that's fair to both sides" and suggested it would not let Defendants "get away with" using evidence to which they had denied Plaintiffs access. [*See* Doc. 730 at 33:3-5, 33:13-14] Defendants' election to pursue their one-sided strategy and to try to foreclose discovery, instead of asking for or joining Plaintiffs' request to extend the discovery cut-off, is not grounds for reconsideration. Because Defendants' Motion offers no new facts or law, the Motion should be denied. *See*

LRCiv 7.2(g); *see also* Doc. 175 at 3-4 (motion for reconsideration cannot rely on rehashed or previously-available arguments).  To the extent Defendants instead are arguing (without saying) that the Court's decision was "manifest error," that argument is misguided.  The Court has broad latitude to enforce its deadlines in a way that is fair to both parties.  *Brown v. Plata*, 131 S. Ct. 1910, 1935 (2011).

### B.   Granting the Motion Would Severely Prejudice Plaintiffs.

Defendants' proposal would severely prejudice Plaintiffs.  The Court's schedule acted as a meaningful framework for this litigation.  [Doc 815 at 1]  Plaintiffs took their discovery so that they could gather the factual information that would be the subject of the trial and then, near the conclusion of that discovery deposed Defendants' key witnesses and performed expert tours.  Plaintiffs' experts relied on the body of evidence that Defendants made available through the discovery cut-off to write their reports and have now begun to testify in depositions taken by Defendants about those opinions.  [Doc. 754, Exs. 2-5; *see also* Kendrick Decl. ¶¶ 2, 6]

To change all of the rules now to extend the discovery period until July 1 would work a severe prejudice on Plaintiffs.  As this Court noted, "[t]o do so would extend the excessive discovery burden and prevent fair dispositive motion practice."  [Doc. 815 at 4:25-27]  To illustrate the Court's point, Plaintiffs would have to repeat for the additional nine-month period—from September 28, 2013 to July 1, 2014—most of the fact discovery taken for the earlier time period, including re-deposing witnesses.[1]  This was time consuming and costly the first time around and would be a severe burden now.  [Kendrick Decl. ¶¶ 2, 4]  In essence, Plaintiffs would have to catch up in the next three months on

---

[1] In this particular case, there are no good alternatives to re-deposing Defendants' witnesses.  This Court urged Plaintiffs to avoid depositions by seeking the facts to which witnesses would testify in written discovery.  [Doc. 57 at 23:20-24:3]  When Plaintiffs did so, Defendants refused to list the facts and simply referenced their disclosure statement. [Mitchell Decl., Ex. 1 at Responses 1-2 & Ex. 3]  Many of those statements, as this court noted, are "rife with discussion of unspecified future events and generalities devoid of specific facts."  [Doc. 815 at 3:15-16]  For the witnesses whose disclosures were tested against testimony in deposition, it was clear that the witnesses were ill-acquainted with the facts to which they were allegedly going to testify, including Defendant Ryan.  [*See, e.g.*, Doc. 753 at 12, 14 and exhibits cited therein]

1  the work Defendants have been doing (and refusing to produce) for the past six months
2  since the discovery cut-off. As this Court observed, that would "reward disregard of the
3  rules and schedules by imposing great additional burden on the opposing parties."
4  [Doc. 815 at 4:27-28]

5  Under Defendants' proposal, there would also be a repeat of the very costly expert
6  work that has been conducted to date. [*See* Doc. 826 at 13:23-24 ("and both parties may
7  concurrently conduct fact and expert discovery, up until [July 1, 2014])] Plaintiffs'
8  experts would also have to review and analyze the new evidence, re-tour the prisons, re-
9  write reports and be subjected to a second round of depositions. This too creates great
10 prejudice to Plaintiffs by driving up the costs and derailing the orderly approach to trial
11 that the Court's schedule had laid out. [Declaration of Robert L. Cohen ("Cohen Decl.")
12 ¶ 6; Declaration of Todd Randall Wilcox, M.D., M.B.A. ("Wilcox Decl.") ¶ 7; Kendrick
13 Decl. ¶ 4] Moreover, it is not just a financial burden. Plaintiffs' experts understood that
14 the bulk of their work, other than their trial testimony, would be completed by now and
15 have arranged their schedules accordingly. It would work a significant burden on them to
16 implement Defendants' proposed new schedule. [Cohen Decl. ¶ 5; Wilcox Decl. ¶ 6][2]

---

[2] As this Court knows, discovery has been a hotly contested issue in the case. Even when this Court has ordered discovery, the parties have not read those orders the same way and a single dispute can result in repeat trips to the Court. [*See, e.g.*, Doc. 727] Plaintiffs are very concerned that such disputes would continue during any extended discovery period, further driving up costs, wasting the time of counsel and the Court, and making it difficult for Plaintiffs to obtain the full breadth of discovery needed for a fair trial. Additionally, Defendants have had problems producing responsive discovery in a timely manner. For example, the production of death records has been very slow. Plaintiffs requested all death records in a June 2012 request; in October 2012, Defendants agreed to "disclose medical records of deceased inmates to Plaintiffs within thirty days" [Doc. 179 at 2]; a few days later the Court ordered production of all death records [Doc. 186]; Defendants produced some records; on November 4, 2013, the Court again ordered Defendants to produce all death records by November 25, 2013 [Doc. 717], but Defendants did not produce medical records for deceased prisoners, necessitating a return to court. [Doc. 727 at 3-5] Defendants finally agreed to produce medical records for prisoners who died between March 4, 2013 and September 27, 2013, no later than January 22, 2014 [Doc. 733 at 3], long past the deadline for Plaintiffs' experts' reports, necessitating additional supplemental reports. In the same vein, Defendants are still producing the medical records that their experts reviewed to write their initial reports, even though production was required simultaneous with the reports in December 2013. [Kendrick Decl. ¶ 5] In short, Plaintiffs are skeptical that given Defendants' track record of past discovery production, that the additional discovery would be timely made.

**C.  Defendants' Reassertion of Their PLRA Arguments Do No Warrant Reconsideration.**

Defendants claim that they will be prejudiced by keeping the September 27, 2013 discovery cut-off. They argue that the evidence must be current under both the Prison Litigation Reform Act and the mootness doctrine, but "Defendants understand that there must be a cut-off date." [Doc. 826 at 9:3] This concession is fatal to Defendants' argument, because they are admitting that their position actually is nothing more than a quibble with the precise cut-off date established by the Court—a date to which, as noted above, Defendants have never objected until now. Defendants' argument is meritless; it is well established that district courts enjoy broad discretion in managing their dockets and controlling discovery and the presentation of evidence. *See, e.g., Graves v. Arpaio*, 623 F.3d 1043, 1047 (9th Cir. 2010) ("District courts have broad discretion when it comes to trial management."). Here, as noted above, the Court set the schedule to accommodate the need to have expert discovery follow fact discovery, and to accommodate the summary judgment schedule, leading in an orderly way to an October trial.

Defendants point to no authority showing that the cut-off date, and the orderly schedule it imposes, would render the evidence too stale to make a finding of Constitutional violations.[3] To the contrary, the power of district courts to establish a cut-off date for evidence is well settled and was reaffirmed just three years ago in *Brown v. Plata*, 131 S. Ct. 1910 (2011). In *Plata*, the State of California, like Defendants here, argued that the district court "did not allow it to present evidence of current prison conditions" because it established a discovery cut-off "a few months before trial" and ruled that "evidence of 'changed prison conditions' after that date would not be admitted."

---

[3] The PLRA provisions cited by Defendants govern the entry of injunctive relief, not the establishment of a Constitutional violation. Should the Court find Constitutional violations in this case, Defendants will be given the first opportunity to formulate a remedy. *See Lewis v. Casey,* 518 U.S. 343, 362 (1996). This Court has made clear that at that time, "[e]vidence of developments that post-date discovery may be considered for the purpose of crafting remedies, if appropriate." [Doc. 815 at 3]

78204-0001/LEGAL120273423.2           -7-

*Id.* at 1935. The Supreme Court rejected the state's argument, holding that this ruling was "within the sound discretion of the [district] court." *Id.*

Additionally, Defendants feign surprise and cry prejudice because they are being held to the body of evidence that they produced to Plaintiffs during the discovery period, and cannot, at will, inject additional information in the record from the post cut-off period. But, as discussed above, this is a bed of their own making. They elected to resist extension of the discovery cut-off and urge its rigid enforcement, and they elected to enforce it themselves. *See supra*, p. 3. That they now do not like the natural result of what they did—their inability to introduce evidence which Plaintiffs did not have an opportunity to test in discovery—does not equate to prejudice that warrants reconsideration. *See Conway v. A.I. DuPont Hospital For Children*, 2009 WL 1492178, at *7 (E.D. Pa. May 26, 2009) ("It is not the job of courts deciding motions for reconsideration to rescue parties from their strategic litigation choices").

**D.     To Avoid Prejudice to Any Party, the Court Could Advance the Trial Date.**

If the Court takes any action to address Defendants' allegation of prejudice, it should advance the trial date to June, as it previously proposed doing. When the underlying motion was argued, Defendants claimed that advancing the trial date was not convenient to defense counsel, due to counsel's prior personal and professional commitments. [*See* Doc. 826-1, Ex. 1 at 29:11-30:7] Now, after begging the Court to not move up the trial date to June, Defendants claim that holding the trial in October will be prejudicial to them. Defendants cannot have it both ways. Their effort to upend the entire discovery and expert schedule must be rejected, and the Court should instead set a June trial date.

To address Defendants' objections, the Court should rule that if witnesses are out of town, they can testify remotely through a video connection. If any of Defendants' counsel has previously scheduled engagements on a particular date in June, they could request that trial be carried over for a few days, or allow their capable colleagues to be

1  present in court those days.  At the very least, the Court could begin the trial in June by
2  taking the written direct of some of Plaintiffs' witnesses and continue on with cross-
3  examination and additional testimony on a schedule that would account for Defendants'
4  scheduling constraints.

### E.  Defendants Have Offered No Credible Basis for Reconsidering the Ruling Regarding the Experts Whose Opinions They Failed to Timely Disclose.

Three months after the deadline for disclosure of their experts, Defendants seek to disclose additional expert testimony.  Because Defendants offer no reason why this testimony was not timely disclosed, this request should be denied.  *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (Rule 37 provides a "self-executing" and "automatic" sanction of exclusion to encourage timely disclosure); *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005) ("Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders").

Defendants' unsupported argument that Plaintiffs will not be prejudiced by allowing them to supplement the disclosures for Drs. Robertson, Taylor, and Hanstad already has been rejected by the Court.  [Doc. 815 at 4]  The only reason proffered to unwind the Court's carefully crafted schedule and to jettison the requirements of Rule 26 is that Defendants did not follow the rules, but want another bite at the apple.

Even Defendants' own authority does not support them.  *See Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010) (articulating four factors counseling against exclusion, none of which apply here).  Defendants do not even argue the fourth factor – that their failure to timely disclose was not the product of bad faith or willfulness.  [Doc. 826 at 16-17]  They argue that Plaintiffs will not be surprised about voluminous newly disclosed expert testimony because one doctor testified she treated one inmate, plaintiffs identified the doctors as potential witnesses, and medical records were produced.  [*Id.*]  They also claim that two weeks to prepare for and conduct three expert depositions is "ample" time and will not impact trial.  [*Id.* at 16:24-17:1]  If Defendants were correct,

1 expert disclosures almost never would be required, at least not until the eve of dispositive
2 motions. This is a complicated case that requires orderly pretrial procedures to ensure a
3 fair trial.

4 With respect to Dr. Taylor, Defendants seek to offer her expert testimony on
5 Plaintiffs Gamez, Thomas, Verduzco, and Polson. [*Id.* at 15-16] But Dr. Taylor testified
6 that she had no contact with any plaintiffs other than Gamez and Brislan. [Mitchell Decl.,
7 Ex. 2 at 245:18-22 ("I would testify as to my knowledge on Inmate Brislan and Inmate
8 Gamez. I have not, as far as I can tell, had any contact with any of the other plaintiffs.")]
9 Moreover, at her deposition Dr. Taylor was unable to answer basic questions about her
10 contact with Mr. Gamez [*see, e.g.*, *id.* at 253:24-254:1 ("I could have met him six years
11 ago and then not seen him again for four years. I don't know.")], strongly suggesting that
12 her new-found familiarity with him was acquired specifically for purposes of this
13 litigation. This is precisely the kind of expert testimony that requires a report. *See*
14 *Goodman v. Staples the Office Super-Store, LLC*, 644 F.3d 817, 826 (9th Cir. 2011.
15 Dr. Taylor also proposes to testify in rebuttal to plaintiffs' experts [Doc. 826-1, Ex. 6-1 at
16 27-28], which plainly is beyond the scope of her treatment of any patient. Finally,
17 defendants argue that Dr. Taylor can testify regarding plaintiffs Verduzco and Polson
18 because she reviewed their records as part of her responsibilities as Contract Compliance
19 Monitor. [Doc. 826 at 16] It is unnecessary for the Court to consider whether such
20 testimony would be proper pursuant to Rule 26 (Plaintiffs contend it would not) because
21 the evidence submitted suggests only that she randomly reviewed records in this role
22 [Doc. 826-1, Ex. 7 at 37], not that she reviewed the records of plaintiffs Verduzco and
23 Polson. Because Dr. Taylor did not submit a report, her testimony must be excluded.

24 Although he only treated one plaintiff, Defendants propose that Dr. Robertson will
25 testify about his review of medical records and opinions regarding the treatment of eleven
26 additional plaintiffs. For the one plaintiff he had seen, Defendants propose to have
27 Dr. Robertson testify extensively about the records of other doctors, the causation for his
28 conditions, and the generally accepted standard of care. [Doc. 826-1, Ex. 6 at 14]

1  Nothing in the fifteenth supplemental disclosure suggests that Dr. Robertson's proposed
2  testimony was learned from his examination of Mr. Jensen, nor that Dr. Robertson opined
3  on causation or adequacy of care in the course of his treatment.  His testimony is properly
4  excluded.

5  Finally, Dr. Hanstad's proposed testimony also will cover patients whom he never
6  treated, including Swartz and Polson.  [*Id.* at 56]  He proposes to testify about the
7  treatment of other dentists, the ADC's policies and procedures, and his opinions regarding
8  topics related to dental care, such as proper staffing ratios, wait times for treatment and
9  standards of care.  [*Id.* at 56-63]  Defendants previously refused to allow Dr. Hanstad to
10 sit for deposition.  [*See* Doc. 753, Ex. 6]  The fact that his deposition is set for one week
11 prior to the close of expert discovery does not mitigate the prejudice because Plaintiffs'
12 will have no opportunity for their own expert to offer rebuttal.  In any event, because
13 Dr. Hanstad's testimony is duplicative of Dr. Dovgan's, there is no prejudice if the Court
14 excludes cumulative expert testimony.  *See Gibson v. Mohawk Rubber Co.*, 695 F.2d
15 1093, 1101 (8th Cir. 1982) (no prejudice from exclusion of cumulative expert testimony).

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Reconsideration should be denied.

Dated:  March 21, 2014                    **JONES DAY**

By:  s/ Caroline Mitchell
Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:    cnmitchell@jonesday.com
          aamiri@jonesday.com

*Admitted *pro hac vice*

| | |
|---|---|
| 1 | Daniel C. Barr (Bar No. 010149) |
| 2 | Amelia M. Gerlicher (Bar No. 023966)<br>Kirstin T. Eidenbach (Bar No. 027341) |
| 3 | John H. Gray (Bar No. 028107)<br>Matthew B. du Mée (Bar No. 028468) |
| 4 | Jerica L. Peters (Bar No. 027356)<br>**PERKINS COIE LLP** |
| 5 | 2901 N. Central Avenue, Suite 2000<br>Phoenix, Arizona 85012 |
| 6 | Telephone:  (602) 351-8000<br>Email:    dbarr@perkinscoie.com |
| 7 | agerlicher@perkinscoie.com<br>keidenbach@perkinscoie.com |
| 8 | jhgray@perkinscoie.com<br>mdumee@perkinscoie.com |
| 9 | jpeters@perkinscoie.com |
| 10 | Daniel Pochoda (Bar No. 021979)<br>James Duff Lyall (Bar No. 330045)* |
| 11 | **ACLU FOUNDATION OF ARIZONA** |
| 12 | 3707 North 7th Street, Suite 235<br>Phoenix, Arizona 85013 |
| 13 | Telephone:  (602) 650-1854<br>Email:    dpochoda@acluaz.org |
| 14 | jlyall@acluaz.org |
| 15 | *Admitted pursuant to Ariz. Sup. Ct. R. 38(f) |
| 16 | Donald Specter (Cal. 83925)* |
| 17 | Alison Hardy (Cal. 135966)*<br>Sara Norman (Cal. 189536)* |
| 18 | Corene Kendrick (Cal. 226642)*<br>Warren E. George (Cal. 53588)* |
| 19 | **PRISON LAW OFFICE**<br>1917 Fifth Street |
| 20 | Berkeley, California 94710<br>Telephone:  (510) 280-2621 |
| 21 | Email:    dspecter@prisonlaw.com<br>ahardy@prisonlaw.com |
| 22 | snorman@prisonlaw.com<br>ckendrick@prisonlaw.com |
| 23 | wgeorge@prisonlaw.com |
| 24 | *Admitted *pro hac vice* |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

| | |
|---|---|
| 1 | David C. Fathi (Wash. 24893)* |
| | Amy Fettig (D.C. 484883)** |
| 2 | Ajmel Quereshi (Md. 28882)** |
| | **ACLU NATIONAL PRISON** |
| 3 | **PROJECT** |
| | 915 15th Street N.W., 7th Floor |
| 4 | Washington, D.C. 20005 |
| | Telephone: (202) 548-6603 |
| 5 | Email: dfathi@npp-aclu.org |
| | afettig@npp-aclu.org |
| 6 | aquereshi@npp-aclu.org |
| 7 | *Admitted *pro hac vice*. Not admitted in DC; practice limited to federal |
| 8 | courts. |
| | **Admitted *pro hac vice* |
| 9 | |
| | John Laurens Wilkes (Tex. 24053548)* |
| 10 | Taylor Freeman (Tex. 24083025)* |
| | **JONES DAY** |
| 11 | 717 Texas Street |
| | Houston, Texas 77002 |
| 12 | Telephone: (832) 239-3939 |
| | Email: jlwilkes@jonesday.com |
| 13 | tfreeman@jonesday.com |
| 14 | *Admitted *pro hac vice* |
| 15 | Kamilla Mamedova (N.Y. 4661104)* |
| | Jennifer K. Messina (N.Y. 4912440)* |
| 16 | **JONES DAY** |
| | 222 East 41 Street |
| 17 | New York, New York 10017 |
| | Telephone: (212) 326-3498 |
| 18 | Email: kmamedova@jonesday.com |
| | jkmessina@jonesday.com |
| 19 | |
| | *Admitted *pro hac vice* |
| 20 | |
| | Kevin Brantley (Cal. 251886)* |
| 21 | **JONES DAY** |
| | 3161 Michelson Drive, Suite 800 |
| 22 | Irvine, California 92612 |
| | Telephone: (949) 851-3939 |
| 23 | Email: kcbrantley@jonesday.com |
| 24 | *Admitted *pro hac vice* |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By: s/ Sarah Kader
　　Sarah Kader (Bar No. 027147)
　　Asim Varma (Bar No. 027927)
　　5025 East Washington Street, Suite 202
　　Phoenix, Arizona 85034
　　Telephone: (602) 274-6287
　　Email:　skader@azdisabilitylaw.org
　　　　　　avarma@azdisabilitylaw.org

　　J.J. Rico (Bar No. 021292)
　　**ARIZONA CENTER FOR DISABILITY LAW**
　　100 N. Stone Avenue, Suite 305
　　Tucson, Arizona 85701
　　Telephone: (520) 327-9547
　　Email:　jrico@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2014, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

*Attorneys for Defendants*


　　　　　　　　　　　　　　s/ Delana Freouf