**Index of Exhibits to
Declaration of Caroline N. Mitchell**


Exhibit 1:     Excerpts of Defendants' Responses to Plaintiff Sonia Rodriguez's First Set of
Interrogatories, dated August 12, 2013

Exhibit 2:     Excerpts of the deposition of Nicole Taylor, J.D., Ph.D. taken on September 5,
2013

Exhibit 3:     Excerpts of Defendants' Ninth Supplemental Disclosure Statement, dated
August 12, 2013

Exhibit 4:     December 5, 2013 meet and confer letter from Lucy M. Rand to Corene Kendrick
(Redacted)

# Exhibit 1

**to Mitchell Declaration in Support of Plaintiffs'
Opposition to Defendants' Motion for Reconsideration**

Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Katherine E. Watanabe, Bar No. 027458
Lucy M. Rand, Bar No. 026919
Assistant Attorney General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Courtney R. Cloman, Bar No. 023155
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-NVW<br><br>**DEFENDANTS' RESPONSES TO PLAINTIFF SONIA RODRIGUEZ'S FIRST SET OF INTERROGATORIES** |

1    Defendants, pursuant to FED. R. CIV. P. 33 and through counsel, hereby submit

2    their responses to Plaintiff Sonia Rodriguez's First Set of Interrogatories as follows.

3                                    **INTERROGATORIES**

4    **INTERROGATORY NO. 1:**

5    IDENTIFY each witness identified in YOUR DISCLOSURE STATEMENT that

6    YOU may present at trial.

7    **RESPONSE TO INTERROGATORY NO. 1:**

8    **Defendants object that this request is overbroad and unduly burdensome.**

9    **Without waiving these objections, *see* Defendants' Ninth Supplemental Disclosure**

10   **Statement, which delineates the witnesses Defendants will call and may call at trial.**

11   **Defendants will supplement if additional witnesses are identified.**

12   **INTERROGATORY NO. 2:**

13   For each witness identified in YOUR response to Interrogatory No. 1, DESCRIBE

14   in as much detail as known to the witness all facts and INFORMATION pertaining to this

15   litigation that the witness could testify to at trial.  If YOU did not IDENTIFY any

16   witnesses in response to Interrogatory No. 1, for each witness identified in YOUR

17   DISCLOSURE STATEMENT, DESCRIBE in as much detail as known to the witness all

18   facts and INFORMATION pertaining to this litigation that the witness could testify to at

19   trial.

20   **RESPONSE TO INTERROGATORY NO. 2:**

21   **Defendants object that this request is overbroad and unduly burdensome.**

22   **Without waiving these objections, *see* Defendants' Ninth Supplemental Disclosure**

23   **Statement.**

24   **INTERROGATORY NO. 3:**

25   For each witness identified in YOUR response to Interrogatory No. 1, IDENTIFY

26   all DOCUMENTS that support the witness's testimony at trial.  If YOU did not

27   IDENTIFY any witnesses in response to Interrogatory No. 1, for each witness identified

28   in YOUR DISCLOSURE STATEMENT, IDENTIFY all DOCUMENTS that support the

2

1    INFORMATION requested in (a)-(b);

2          (e)      All methods used by ADC, whether formal or informal, to measure the

3    indoor temperatures.

4    **RESPONSE TO INTERROGATORY NO. 5:**

5          **Defendants object that this request is compound, overbroad, unduly**

6    **burdensome, and not likely to lead to the discovery of admissible evidence.  It is also**

7    **beyond the scope of the class claims that have been certified by the court.**

8                    DATED this __12th__ day of August 2013.

9                                          STRUCK WIENEKE & LOVE, P.L.C.

10

11                                  By /s/ Anne M. Orcutt
                                          Daniel P. Struck
12                                        Kathleen L. Wieneke
                                          Rachel Love
13                                        Timothy J. Bojanowski
                                          Nicholas D. Acedo
14                                        Courtney R. Cloman
                                          Ashlee B. Fletcher
15                                        Anne M. Orcutt
                                          STRUCK WIENEKE & LOVE, P.L.C.
16                                        3100 West Ray Road, Suite 300
                                          Chandler, Arizona  85226
17
                                          Arizona Attorney General Thomas C. Horne
18                                        Office of the Attorney General
                                          Michael E. Gottfried
19                                        Katherine E. Watanabe
                                          Lucy M. Rand
20                                        Assistant Attorney General
                                          1275 W. Washington Street
21                                        Phoenix, Arizona 85007-2926

22                                        *Attorneys for Defendants*

23
      COPIES of the foregoing e-mailed this
24     __12th__ day of August, 2013 to:

25    Caroline N. Mitchell
      cnmitchell@jonesday.com
26
      Jennifer Alewelt
27    jalewelt@azdisabilitylaw.org

28

                                          4

# Exhibit 2

**to Mitchell Declaration in Support of Plaintiffs'
Opposition to Defendants' Motion for Reconsideration**

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Victor Parsons; Shawn | ) | No: |
| Jensen; Stephen Swartz; | ) | CV12-00601-PHX-NVW |
| Dustin Brislan; Sonia | ) | (MEA) |
| Rodriguez; Christina | ) | |
| Verduzco; Jackie Thomas; | ) | |
| Jeremy Smith; Robert Gamez; | ) | |
| Maryanne Chisholm; Desiree | ) | |
| Licci; Joseph Hefner; Joshua | ) | |
| Polson; and Charlotte Wells, | ) | |
| on behalf of themselves and | ) | |
| all others similarly | ) | |
| situated; and Arizona Center | ) | |
| for Disability Law, | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| Charles Ryan, Director, | ) | |
| Arizona Department of | ) | |
| Corrections; and Richard | ) | |
| Pratt, Interim Division | ) | |
| Director, Division of Health | ) | |
| Services, Arizona Department | ) | |
| of Corrections, in their | ) | |
| official capacities, | ) | |
| Defendants. | ) | |
| | ) | |

DEPOSITION OF NICOLE TAYLOR, J.D., Ph.D.

September 5, 2013
9:13 a.m.
Phoenix, Arizona

Prepared by:
Marcella Daughtry, RPR
Arizona Certified
Reporter No. 50623

Prepared for:

(Copy)

245

1    which there is special mental health programming for

2    mental health prisoners?

3                    MS. CLOMAN:  Form.

4                    THE WITNESS:  We haven't covered the

5    lower custody programs, MTU and WTU.  I'm not sure if

6    you want to go into those or not.

7        Q    BY MR. FATHI:  Okay.  Let me rephrase my

8    question, and thank you for the clarification.

9                    Have we covered all maximum custody

10   areas where there is special mental health programming

11   for mental health inmates?

12       A    Correct, yes.

13       Q    Okay.  Back to the disclosure statement.  So

14   the next topic on which you are -- we are told you are

15   going to testify is, quote, her knowledge of

16   Plaintiffs' mental health care needs, end quote.  What

17   will be your testimony on that subject?

18                   MS. CLOMAN:  Form.

19                   THE WITNESS:  I would testify as to my

20   knowledge on Inmate Brislan and Inmate Gamez.  I have

21   not, as far as I can tell, had any contact with any of

22   the other plaintiffs.

23       Q    BY MR. FATHI:  And what will be your testimony

24   about Mr. Brislan?

25                   MS. CLOMAN:  Form.

Parsons v. Ryan
**Deposition of Nicole Taylor, J.D., Ph.D. - 9/5/2013**

253

1  reported to you that I do.  So I don't want to misstate

2  the fact that I did talk to inmates; it's just not --

3  not as their clinician.

4      Q    Okay.  Thank you.

5      A    So I just wanted to be clear.

6      Q    So you -- for the last five months you have

7  not seen inmates as a clinician?

8      A    Correct.

9      Q    Okay.  And approximately how many contacts

10  have you had with Mr. Gamez, again putting aside

11  cell-front?

12      A    I would say less than with Mr. Brislan, but I,

13  again, would have to review his chart, because I --

14  it's just not possible for me to track the hundreds of

15  contacts that I've had to know.  I know it's less than

16  Brislan (sic) because I don't know him as well as

17  Brislan, but it's -- I clearly had two, because I saw

18  his response, so I know.  I know I had two one-on-ones,

19  but I'm sure I had more than that with him.  I just --

20      Q    How long would you say you've known

21  Mr. -- Mr. Gamez?

22                MS. CLOMAN:  Form.

23                THE WITNESS:  I'm not sure.

24  With -- with the way that the population works, I could

25  have met him six years ago and then not seen him again

254

1   for four years.  I don't know.  I'd have to go through

2   again to know.

3       Q    BY MR. FATHI:  Okay.  So again with Mr. Gamez,

4   you don't know if you've had more or fewer than ten

5   contacts with him?

6       A    I don't know.

7               MS. CLOMAN:  Whenever you get a chance,

8   David, can we take a break.

9               MR. FATHI:  Sure.

10              MS. CLOMAN:  I don't want to stop you at

11  an inconvenient time.

12              MR. FATHI:  Sure.  This is good.

13              (The deposition was at recess from 3:17

14  p.m. to 3:29 p.m.)

15      Q    BY MR. FATHI:  The next topic on which you

16  will testify is, quote, the privatization of the entire

17  health care system by Wexford, end of quote.  What will

18  be your testimony on that subject?

19              MS. CLOMAN:  Form.

20              THE WITNESS:  Again, that's really hard

21  to answer generally.  I would really need some specific

22  questions to respond to because there's -- that's a

23  very broad topic, and so if you can give me a little

24  direction, I can try to tell you -- you know, it

25  depends on what questions you would be asking to answer

285

1    STATE OF ARIZONA    )
                         )
2    COUNTY OF MARICOPA )

3

4                I, Marcella L. Daughtry, a Certified

5    Reporter, Certificate No. 50623, in the State of

6    Arizona, do hereby certify that the foregoing witness

7    was duly sworn to tell the whole truth; that the

8    foregoing pages constitute a full, true, and accurate

9    transcript of all proceedings had in the foregoing

10   matter, all done to the best of my skill and ability.

11   Pursuant to request, notification was provided that the

12   deposition is available for review and signature.

13

14               I FURTHER CERTIFY that I am not related

15   to nor employed by any of the parties hereto, and have

16   no interest in the outcome.

17

18               WITNESS my hand this 16th day of

19   September, 2013.

20

21                              _____
                                Marcella L. Daughtry
22                              Arizona Certified
                                Reporter No. 50623
23

24

25

# Exhibit 3

**to Mitchell Declaration in Support of Plaintiffs'
Opposition to Defendants' Motion for Reconsideration**

Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Courtney R. Cloman, Bar No. 023155
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
ccloman@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; *et al.*, and Arizona Center for Disability Law, | NO. CV12-0601-PHX-NVW |
| Plaintiffs, | **DEFENDANTS' *NINTH* SUPPLEMENTAL DISCLOSURE STATEMENT** |
| v. | |
| Charles Ryan, Director; *et al.*, | |
| Defendants. | |

Defendants, through counsel and pursuant to Federal Rule of Civil Procedure 26(a)(1), submit their ***Ninth*** Supplemental Disclosure Statement.  Defendants

2791530.1

will supplement and/or amend this disclosure statement as information is discovered. *Supplemental and/or revised text is shown in bolded and italicized font*.

## I.   NAMES, ADDRESSES, AND TELEPHONE NUMBERS OF INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION

### A. *INDIVIDUALS WHO WILL BE CALLED TO TESTIFY*

1. Charles Ryan, ADC Director, Defendant
   c/o Struck Wieneke & Love, P.L.C.[1]
   3100 West Ray Road, Suite 300
   Chandler, AZ 85226
   (480) 420-1600
       and
   Office of the Attorney General, State of Arizona
   1275 West Washington Street
   Phoenix, AZ 85007-2926
   (602) 542-1610

Charles Ryan is the Director of the ADC. *Director Ryan will testify regarding his training and experience in corrections and his role in the development of policies, procedures, training programs, and ADC's strategic vision.  Director Ryan has more than 35 years of experience in the field of corrections.  He has served as Director of the Arizona Department of Corrections since 2009, and prior to that as Deputy Director of Prison Operations, as a prison warden and as a prison administrator.  He possesses in-depth, hands-on institutional knowledge.  Director Ryan has extensive experience in the development of correctional institution policy including the formulation of the inmate classification system, the staffing, operation and activities of various prison complexes and the development of budgetary requirements.  Director* Ryan will testify regarding the centralization of health and mental health care for certain inmate populations.  He  is likely to testify with regard to the maintenance and administration of ADC institutions and programs; ADC policies, procedures, and

---

[1] All parties listed as care of Struck Wieneke & Love, P.L.C. shall also be in care of the Attorney General's Office, State of Arizona, regardless of whether it is explicitly stated.  Further, Struck Wieneke and Love's and the Attorney General's Office's contact information for all parties shall be the same as listed for Director Ryan, unless specifically stated otherwise.

practices, including those related to medical, dental and mental health care as well as the provision of adequate care to ADC inmates in compliance with constitutional requirements; the improvements in the delivery of health care to the ADC inmate population; the privatization of the entire health care delivery system, specifically, the taking over of the health care system by Wexford Health Sources ("Wexford") from July 1, 2012 through March 3, 2013, and by Corizon Health on March 4, 2013; ADC facilities' compliance with the National Commission on Correctional Health Care Standards ("NCCHC"), Wexford's compliance during its tenure, and Corizon's compliance after it took over on March 4, 2013; various budgetary issues surrounding the ADC and the overall operation of ADC; his recommendation of policies and programs to the Governor and Legislature for improving corrections programs including health care services; his establishment of employment qualifications for key personnel as well as relevant staffing policies, procedures, levels, and issues with regard to dental, medical, and mental health personnel as well as to any communications with said personnel; financial issues relative to the administration of specialty care to inmates at ADC as well as isolation and conditions of confinement issues in various ADC facilities; *exhaustion of the grievance appeal process*.  He will also discuss why changes in policies and procedures were made, and will rebut the suggestion that changes were made because of the filing of Plaintiffs' lawsuit.

2.      Richard Pratt, ADC Quality/Clinical Program Evaluation Administrator and former Interim Director, Health Services ("HS") Division, Defendant
c/o Struck Wieneke & Love, P.L.C.

Richard Pratt is the Quality/Clinical Program Evaluation Administrator and the former Interim Division Director of Health Services at ADC.  ***Please see Exhibit Bates Numbered ADC123458-123461 for Mr. Pratt's credentials and qualifications. Mr. Pratt was previously deposed and Defendants will rely on his deposition testimony.*** In addition to his deposition testimony, Mr. Pratt is likely to testify with regard to policies, procedures, and practices, including those related to medical, dental, mental

health care; his knowledge of Plaintiffs' medical, dental and mental health needs requests and Plaintiffs' institutional history as reflected in grievance appeals files; the privatization of the entire health care delivery system, specifically, the taking over of the entire health care system by Wexford; ADC policies and procedures including those related to medical, dental and mental health care as well as the provision of adequate care to ADC inmates in compliance with constitutional requirements; relevant staffing policies, procedures, levels; ADC facilities' compliance with the NCCHC standards; Wexford's compliance during its tenure; compliance with contract requirements by Corizon; and Corizon's  compliance after it took over on March 4, 2013; policies and procedures including those related to medical, dental and mental health care, statistics, reports and historical data relating to mental, medical and dental care,  as well as the provision of adequate care to ADC inmates in compliance with constitutional requirements.

      3.      Carson McWilliams, ADC Northern Region Operations Director (NROD) c/o Struck Wieneke & Love, P.L.C.

Carson McWilliams is the Northern Region Operations Director of ADC. ***Please see Exhibit Bates Numbered ADC123449-123451 for his credentials and qualifications.*** Mr. McWilliams is likely to testify with regard to policies and procedures including those related to medical, dental and mental health care, classification, housing, security,  and operations of ADC Complexes in the Northern Region; a description of the complexes, pods, units and security classifications of each facility; fundraising opportunities and activities at Complexes; ***implementation of structural changes and programming in ADC facilities; education opportunities and availability to ADC populations; CCTV programing;  implementation of mental health programming at ADC facilities, recreation, employment, and education activities provided to ADC inmates, and the conditions of confinement at ADC facilities, including all matters raised in the court's certification of the class and sub classes as it relates to conditions of confinement, which may include, lighting, food service, recreational activities, mail, food, watch, reading materials and the like; statistics, reports and historical data***

4

1  *relating to mental, medical and dental care;  and his knowledge of security operations*

2  *and conditions in maximum custody.*

3        4.     Richard Rowe, M.D., *former* ADC Quality/Clinical, Medical Program
           Administrator, HS Division

4             c/o Struck Wieneke & Love, P.L.C.

5        Dr. Richard Rowe is the HS Division, Quality/Clinical Medical Program

6  Administrator. *Please see Exhibit Bates Numbered ADC123462-123463 for his*

7  *credentials and qualifications.  Dr. Rowe was previously deposed and Defendants will*

8  *rely on his deposition testimony.* In addition to his deposition testimony, **Dr. Rowe** is

9  likely to testify with regard to recommendations made to him by doctors at various ADC

10  facilities and the procedure by which recommendations are made to him; policies,

11  practices, procedures, and processes of the administration of all health care services to

12  inmates housed at ADC; relevant staffing policies **and** procedures; ***implementation of***

13  ***structural and programming improvements in ADC facilities;*** policies and procedures

14  including those related to medical, dental and mental health care as well as the provision

15  of adequate care to ADC inmates in compliance with constitutional requirement*s; his role*

16  *in authoring inmate mortality reviews; his involvement in working with outside*

17  *providers as a result of the ACCHS legislation and privatization legislation*.

18        5.     Ben Shaw, M.D. *(*former ADC HS Division, Quality/Clinical, Mental
           Health Monitor (Health Services Coordinator)*) , current Mental Health*

19             *Director at Corizon*
           c/o Corizon Health

20

21        ***Ben Shaw, M.D., is the former HS Division, Quality/Clinical, Mental***

22  ***Health Monitor (Health Services Coordinator) at ADC, and the current Mental Health***

23  ***Director at Corizon. Dr. Shaw was previously deposed and Defendants will rely on his***

24  ***deposition testimony.  In addition to his deposition testimony, Dr. Shaw will testify with***

25  ***regard to policies and procedures at the time of his employment with ADC, including***

26  ***those related to  mental health needs; the privatization of the entire health care delivery***

27  ***system, specifically, the transition of the entire health care system to Wexford; the***

28  ***transition of the entire health care system to Corizon; the provision of adequate care to***

1  *ADC inmates in compliance with constitutional requirements, statistics, reports and*

2  *historical data relating to mental, medical and dental care,  and his current job*

3  *activities.  Dr. Shaw may also testify regarding his knowledge of the care and treatment*

4  *of the named Plaintiffs, as well as class members whose care he is familiar with. Dr.*

5  *Shaw has knowledge of the mental health group programing, the CCTV programing,*

6  *the activities of the psych associates and other mental health staff, how the telemed*

7  *program works,  medication distribution, the mental health phases at maximum security*

8  *facilities, the incentive programs, and the loaner tv and radio programs.*

9        6.    Carol Pearson, ADC HS ~~Division~~ **Contract Monitoring Bureau**, Medical
10           Records Monitor
             c/o Struck Wieneke & Love, P.L.C

11 Carol Pearson is the current HS Contract Monitor Bureau Medical Records

12 Monitor and former ADC Medical Records Program Manager at ADC.  *Ms. Pearson was*

13 *previously deposed and Defendants will rely on her deposition testimony.  Ms. Pearson*

14 *is likely to testify regarding her information with regard to ADC Polices, practices, and*

15 *procedures, including those related to the organization, storage, maintenance,*

16 *archiving, and eventual destruction of inmate medical records; and the privatization of*

17 *the healthcare delivery system and its impact on medical records management.*

18       7.    Juliet Respicio-Moriarty, ADC HS Contract Monitoring Bureau, Inmate
19           Grievance Appeals Investigator
             c/o Struck Wieneke & Love, P.L.C.

20     *Juliet Respicio-Moriarty is the current Inmate Grievance Appeals*

21 *Investigator for ADC. Please see Exhibit Bates Numbered ADC123429-123433 for her*

22 *credentials and qualifications. Ms. Respicio-Moriarty will testify regarding policies,*

23 *practices, and procedures for provision of health care to ADC's inmate population;*

24 *delivery of medication to inmates; delivery of mental health care and dental care; her*

25 *activities in evaluation of mental health services provided by Corizon, reporting on*

26 *those services with the monitoring MGAR reports; and monitoring and reviewing those*

27 *services for patterns; compilation and analysis of statistical data; ensuring compliance*

28 *with federal and state laws; clinical reviews for inmate grievance appeal responses and*

6

1  *investigations; and her knowledge of Corizon's performance under the Contract with*
2  *ADC.*

3       8.    Kathleen Campbell, ADC HS Contract Monitoring Bureau, Nursing
             Contract Monitor
4            c/o Struck Wieneke & Love, P.L.C.

5            ***Kathleen Campbell is the current Nursing Contract Monitor for ADC.***
6  ***Please see Exhibit Bates Numbered ADC123435-123438 for her credentials and***
7  ***qualifications. Ms. Campbell will testify regarding policies, practices, and procedures***
8  ***for provision of health care to ADC's inmate population; delivery of medication to***
9  ***inmates; delivery of mental health care and dental care; her activities in evaluation of***
10 ***mental health services provided by Corizon, reporting on those services with the***
11 ***monitoring MGAR reports; and monitoring and reviewing those services for patterns;***
12 ***compilation and analysis of statistical data; ensuring compliance with federal and state***
13 ***laws; clinical reviews for inmate grievance appeal responses and investigations; and***
14 ***her knowledge of Corizon's performance under the Contract with ADC.***

15      9.    Sam Tardibuono, ADC HS Contract Monitoring Bureau, Contract Monitor,
             ASPC-Douglas
16           c/o Struck Wieneke & Love, P.L.C.

17           ***Sam Tardibuono is the current Contract Monitor at ASPC-Douglas.***
18 ***Please see Exhibit Bates Numbered ADC123464-123467 for his credentials and***
19 ***qualifications. Mr. Tardibuono will testify regarding policies, practices, and procedures***
20 ***for provision of health care to ADC's inmate population; delivery of medication to***
21 ***inmates; delivery of mental health care and dental care; her activities in evaluation of***
22 ***mental health services provided by Corizon, reporting on those services with the***
23 ***monitoring MGAR reports; and monitoring and reviewing those services for patterns;***
24 ***compilation and analysis of statistical data; ensuring compliance with federal and state***
25 ***laws; clinical reviews for inmate grievance appeal responses and investigations; and***
26 ***her knowledge of Corizon's performance under the Contract with ADC.***

27

28

7

1

2

10.   David Robertson, D.O., ADC HS ~~Division~~ **Contract Monitoring Bureau**, Quality/Clinical, Medical Program Administrator/~~Monitor~~
c/o Struck Wieneke & Love, P.L.C.

3   *Dr. David Robertson is the current HS Contract Monitoring Bureau,*

4   *Quality/Clinical, Medical Program Administrator. Please see Exhibit Bates Numbered*

5   *ADC123413-123418 for his credentials and qualifications. Dr. Robertson will testify*

6   *regarding ADC policies, practices, and procedures including those related to medical*

7   *care, review and investigation of medical grievances, inmate death investigations and*

8   *mortality reviews, implementation by Corizon of electronic medical records, Corizon's*

9   *telemedicine system; his knowledge of Plaintiffs' medical health needs and the*

10   *continuous improvements in the delivery of health care to the ADC inmate population.*

11

12

13

11.   Nicole Taylor, Ph.D., ADC HS ~~Division~~ **Contract Monitoring Bureau**, Quality/Clinical**, Health Services Coordinator (**Mental Health Monitor**)** ~~(Health Services Coordinator)~~ and former Psychologist III and FHA at ASPC-Florence
c/o Struck Wieneke & Love, P.L.C.

14   *Nicole Taylor, Ph.D. is the current HS Contract Monitoring Bureau,*

15   *Quality/Clinical, Health Services Coordinator (Mental Health Monitor). Please see*

16   *Exhibit Bates Numbered ADC123454-123457 for her credentials and qualifications.*

17   *Dr. Taylor will testify regarding ADC policies, practices, and procedures including*

18   *those related to mental health care and conditions of confinement; her knowledge of*

19   *Plaintiffs' mental health care needs; the privatization of the entire health care system*

20   *by Wexford; and the subsequent transition to Corizon; the provision of adequate care to*

21   *ADC inmates in compliance with constitutional requirements; relevant staffing policies,*

22   *procedures, levels and issues with regard to mental health personnel.*

23   12.   Ron Credio, Warden, ASPC-Eyman
c/o Struck Wieneke & Love, P.L.C.

24

25

26

27

*Ron Credio is the Warden at ASPC-Eyman. He has been employed with*

*the ADC for over 18 years, starting as a Correctional Officer at ASPC-Eyman/Rynning*

*Unit.   He was promoted to the position of Sergeant at ASPC-Florence/Central Unit,*

*Lieutenant at ASPC-Eyman/Meadows Unit, Captain at ASPC-Florence/Picacho and*

28

*North Unit, Associate Deputy Warden at ASPC-Florence/South Unit, Deputy Warden as ASPC-Phoenix/Globe and Alhambra, and Deputy Warden of Operations at ASPC-Florence.  Warden Credio has a Bachelor of Science in Public Safety Administration, Associates Degree in Corrections, and Associates Degree in Management. He is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Eyman, its cell blocks, the inmates housed at ASPC-Eyman, recreation and therapy and behavioral programming at ASPC-Eyman, access to healthcare and the delivery of healthcare to inmates.  Warden Credio is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements, lighting issues, conditions of confinement and management of SMU units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Credio will also provide foundational testimony for institutional records.*

13.  Gerald Thompson, DW, ASPC-EYMAN-SMU I
c/o Struck Wieneke & Love, P.L.C.

*Deputy Warden Gerald Thompson is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Eyman, its cell blocks, the*

9

1  *inmates housed at SMU-I, and recreation, therapy and behavioral programming at*
2  *SMU-I, and access to healthcare and delivery of healthcare to the inmates.  Deputy*
3  *Warden Thompson is additionally likely to have discoverable information with regard to*
4  *Plaintiffs' institutional history and ADC's policies and procedures, and conditions of*
5  *confinement with respect to their respective facilities; Plaintiffs' disciplinary,*
6  *managerial, and behavior issues; practices and policies regarding inmates with gang*
7  *affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's*
8  *protective custody or classification status at any point during their incarceration at*
9  *ADC as well as the policies and procedures regarding the classification, housing,*
10  *programming, recreation, morale and welfare programs, and fundraisers; the*
11  *management of health care at each respective facility, the physical layout of each of*
12  *their respective facilities; alleged sanitation issues at their respective facilities;  food*
13  *service, including nutrition requirements, lighting issues, conditions of confinement*
14  *and management of SMU units; inmates' access to programming, visitation, and*
15  *recreation time; and educational programming available to inmates.  Deputy Warden*
16  *Thompson will also provide foundational testimony for institutional records.*

17
18  14.  Assistant Deputy Warden Munoz, ASPC-Eyman

19  *Assistant Deputy Warden Munoz is likely to testify regarding her*
20  *knowledge of ADC's contemporary practices and procedures in relation to security*
21  *operations, including general information regarding ASPC-Eyman, its cell blocks, the*
22  *inmates housed at ASPC-Eyman, recreation and therapy and behavioral programming*
23  *at ASPC-Eyman, and access to healthcare and delivery of healthcare to the inmates.*
24  *Assistant Deputy Warden Munoz is additionally likely to have discoverable information*
25  *with regard to Plaintiffs' institutional history and ADC's policies and procedures, and*
26  *conditions of confinement with respect to their respective facilities; Plaintiffs'*
27  *disciplinary, managerial, and behavior issues; practices and policies regarding inmates*

28

*with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements, lighting issues, conditions of confinement and management of SMU units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Assistant Deputy Warden Munoz will also provide foundational testimony for institutional records.*

15.    Stephen Morris, DW, ASPC-Eyman-Browning Unit (and former DW, ASPC-Florence-East)
c/o Struck Wieneke & Love, P.L.C.

*Deputy Warden Stephen Morris is assigned to the Browning Unit at ASPC-Eyman, and is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Eyman, its cell blocks, the inmates housed in Browning Unit, recreation at Browning Unit, therapy and behavioral programming at Browning Unit, and access to healthcare and delivery of healthcare to the inmates. Deputy Warden Morris is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing,*

11

*programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; food service, including nutrition requirements, lighting issues, alleged sanitation and extermination  issues at their respective facilities; conditions of confinement and management of SMU units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Deputy Warden Munoz will also provide foundational testimony for institutional records.*

16.   Lance Hetmer, Warden, ASPC-Florence
c/o Struck Wieneke & Love, P.L.C.

*Lance Hetmer is the Warden at ASPC-Florence.  He is responsible for the oversight of a multi-custody facility of approximately 4,270 inmates and approximately 1,055 full time staff.  Warden Hetmer began his career with the ADC over 25 year ago as a Correctional Officer at the ASPC-Douglas facility.  He was promoted through the ranks, holding the positions of sergeant, lieutenant and captain.  With each promotion, he gained knowledge and experience in working with all custody levels at ASPC-Safford, Perryville, and Tucson.  For the last 13 years he has held management positions of Associate Deputy Warden, Deputy Warden, and Deputy Warden of Operations. Warden Hetmer is likely to testify regarding his knowledge of ADC's historical and contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Florence, its cell blocks, the inmates housed in each cell block, recreation for all security levels, therapy and behavioral programming for all security levels, and access to healthcare and delivery of healthcare to the inmates. Warden Hetmer is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any*

*Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues and extermination issues at their respective facilities; food service, including nutrition requirements, lighting issues, conditions of confinement and management of SMU units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Deputy Warden Hetmer will also provide foundational testimony for institutional records.*

17.   Amy Barnes, ADW, ASPC-Florence-Kasson Unit
c/o Struck Wieneke & Love, P.L.C.

*Deputy Warden Amy Barnes is assigned to the Kasson Unit at ASPC-Florence, and is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Florence, its cell blocks, the inmates housed in Kasson Unit, recreation at Kasson Unit, therapy and behavioral programming at Kasson Unit, and access to healthcare and delivery of healthcare to the inmates. Deputy Warden Barnes is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and*

13

*management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Deputy Warden Barnes will also provide foundational testimony for institutional records.*

18.    R. Allen Bock, Warden, ASPC-Lewis (and former Warden of ASPC-Yuma)
c/o Struck Wieneke & Love, P.L.C.

*Warden Allen Bock is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Lewis, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Bock is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements, lighting issues; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Bock will also provide foundational testimony for institutional records.*

19.    Alfred Ramos, Warden, ASPC-Phoenix
c/o Struck Wieneke & Love, P.L.C.

*Warden Alfred Ramos is the Warden at ASPC-Phoenix. He began his career in corrections as a group worker at the Yakima County Juvenile Hall in Yakima, Washington.  He ultimately served as a Superintendent in the Washington Correctional*

14

*system until his retirement in 2003.  In March 2004, Warden Ramos was hired by the ADC and assigned as an Associate Deputy Warden at ASPC-Lewis.  He was promoted in 2011 as Warden at ASPC-Phoenix.  He is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Phoenix, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Ramos is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements, lighting issues ; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.  Warden Ramos will also provide foundational testimony for institutional records.*

      20.    Berry Larson, Warden, ASPC-Winslow
                c/o Struck Wieneke & Love, P.L.C.

*Warden Berry Larson is the Warden at ASPC-Winslow. Warden Larson manages three correctional facilities with a population of 1,943 inmates and 514 staff, 1 close/medium custody unit, 2 minimum custody units, and 50 contract jail beds. She has been in the corrections field for 24 years, holding the positions of Correctional Officer I, Correctional Programs Officer I and II, Correctional Programs Supervisor, Associate*

15

*Deputy Warden, and Deputy Warden.  She was the Deputy Warden of Programs at the Hutchinson Correctional Facility for the Kansas Department of Corrections for 3 years. In the field of corrections, Warden Larson has worked with male and female inmates, and juvenile offenders.  Additionally, she worked in correctional and probationary boot camps for adults and juveniles. She is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Winslow, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Larson is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements, lighting issues ; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Larson will also provide foundational testimony for institutional records.*

21.    Yolanda Elliott, Warden, ASPC-Douglas (and former DWOP of ASPC-Douglas)
c/o Struck Wieneke & Love, P.L.C.

*Warden Yolanda Elliott is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Douglas, its cell blocks, the inmates*

16

*housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Elliott is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Elliott will also provide foundational testimony for institutional records.*

22.    Judy Frigo, Warden, ASPC-Perryville
       c/o Struck Wieneke & Love, P.L.C.

*Warden Judy Frigo is the Warden at ASPC-Perryville.  Please see Exhibit Bates Numbered ADC123426-123428 for her credentials and experience. Warden Frigo is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Perryville, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Frigo is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang*

17

*affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements, lighting issues;  conditions of confinement and management of maximum units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Frigo will also provide foundational testimony for institutional records.*

23.    Lyle Broadhead, Warden, ASPC-Safford
c/o Struck Wieneke & Love, P.L.C.

*Warden Lyle Broadhead is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Safford, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to inmates. Warden Broadhead is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming*

18

1    *available to inmates. Warden Broadhead will also provide foundational testimony for*
2    *institutional records.*
3        24.    Therese Schroeder, Warden, ASPC-Tucson
               c/o Struck Wieneke & Love, P.L.C.
4              *Warden Therese Schroeder is the Warden at ASPC-Tucson.  She is*
5    *responsible for approximately 1,300 staff and an inmate population of approximately*
6    *5,000 inmates.  Warden Schroeder began her corrections career in October 1988.  Her*
7    *first assignment as a Correctional Officer was at the Echo Unit at ASPC-Tucson.  In*
8    *1996 she was promoted to Correctional Officer III, promoted to Correctional Officer IV*
9    *in 1998, and promoted to Associate Deputy Warden at Tucson/Rincon in 2001.  Warden*
10   *Schroeder was also the Deputy Warden of the Cimarron Unit and Deputy Warden of*
11   *Operations at ASPC-Tucson.  In April 2006 she was appointed as the Warden of ASPC-*
12   *Safford.  In 2008 she was appointed as the Warden at ASPC-Perryville.  She became*
13   *the Warden of ASPC-Tucson in 2011.  Warden Schroeder has an Associate's Degree in*
14   *Business Management and has earned ACA's Certified Corrections Executive*
15   *Certificate.  She is likely to testify regarding her knowledge of ADC's contemporary*
16   *practices and procedures in relation to security operations, including general*
17   *information regarding ASPC-Tucson, its cell blocks, the inmates housed in each Unit,*
18   *recreation at each Unit, therapy and behavioral programming at each Unit, and access*
19   *to healthcare and delivery of healthcare to the inmates. Warden Schroeder is*
20   *additionally likely to have discoverable information with regard to Plaintiffs'*
21   *institutional history and ADC's policies and procedures, and conditions of confinement*
22   *with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and*
23   *behavior issues; practices and policies regarding inmates with gang affiliations as well*
24   *as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or*
25   *classification status at any point during their incarceration at ADC as well as the*
26   *policies and procedures regarding the classification, housing, programming, recreation,*
27   *morale and welfare programs, and fundraisers; the management of health care at each*
28

19

*respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements, lighting issues;   conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Schroeder will also provide foundational testimony for institutional records.*

25.   Laura Escapule, Warden, ASPC-Yuma (and former Warden of ASPC-Winslow)
c/o Struck Wieneke & Love, P.L.C.

*Warden Laura Escapule is the Warden at ASPC-Yuma.  She began her career with the ADC in 1996 as a Correctional Officer I at ASPC-Douglas.  In 1998 she was promoted to Correctional Officer III at ASPC-Yuma, followed by a promotion to Correctional Officer IV. In 2005 she was promoted to Deputy Warden at ASPC-Tucson, followed by a promotion to Deputy Warden of Operations in 2007 at ASPC-Yuma. Her current appointment entails supervision and management of a prison complex which employs 1,100 administrative, security and support staff, encompassing 2 minimum custody units, 2 medium custody units and 1 close custody unit.  Warden Escapule is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Florence, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Escapule is additionally likely to have discoverable information with regard to ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities;*

20

1  *conditions of confinement and management of maximum custody units; inmates'*
2  *access to programming, visitation, and recreation time; and educational programming*
3  *available to inmates.   Moreover, Warden Escapule will testify regarding the work*
4  *incentive pay plan ("WIPP") at Yuma which allows inmates to utilize experience,*
5  *training, and expertise in meaningful employment while support their needs. Warden*
6  *Escapule will also provide foundational testimony for institutional records.*

7       26.    Gretchen Williams, FHA at ASPC-Perryville
               c/o Corizon Health
8
9       *Gretchen Williams is the current Facility Health Administrator at ASPC-*
10 *Perryville, and is likely to testify regarding her knowledge of ADC's policies and*
   *procedures regarding delivery of health care to ADC's inmate population at ASPC-*
11 *Perryville; and the day-to-day operation of health services at Yuma including delivery*
12 *of medication delivery of mental health care and dental care; her knowledge of the*
13 *relationship between the operational staff at ADC and health care staff at Corizon, and*
14 *the overall delivery of healthcare to the inmates.*
15

16      27.    Robert Parkinson, FHA at ASPC-*Florence*
               c/o Corizon Health
17
18      *Robert Parkinson is the former Facility Health Administrator for ASPC-*
19 *Eyman, and current Facility Health Administrator for ASPC-Florence, and is likely to*
20 *testify regarding his knowledge of ADC's policies and procedures for delivery of health*
21 *care to ADC's inmate population; and the day-to-day operation of health services at*
22 *Yuma including delivery of medications and delivery of mental health care and dental*
23 *care, and the overall delivery of healthcare to the inmates.*

24      28.    Ann Mullen, FHA at ASPC-Safford
               c/o Corizon Health
25

26

27

28

21

1    ***Ann Mullen is the Facility Health Administrator for ASPC-Safford, and is***
2    ***likely to testify regarding her knowledge of ADC's policies and procedures for delivery***
3    ***of health care to ADC's inmate population; and the day-to-day operation of health***
4    ***services at Yuma including delivery of medications and delivery of mental health care***
5    ***and dental car,. and the overall delivery of healthcare to the inmates.***

6    29.    Masood Sirjani, Dental Director at ASPC-Phoenix
           c/o Corizon Health
7

8    ***Masood Sirjani is the Dental Director for ASPC-Phoenix and will testify***
9    ***regarding his knowledge of ADC's policies and procedures for delivery of dental care to***
10   ***ADC's inmate population, the dental intake process for all male ADC inmates at ASPC-***
11   ***Phoenix, triage of dental HNRs, wait times for routine and urgent dental care at ASPC-***
12   ***Phoenix, and the review and resolution of grievances related to dental care, and the***
13   ***overall delivery of healthcare to the inmates.***

14   30.    Cyndy Hale, FHA at ASPC-Yuma
           c/o Corizon Health
15

16   ***Cyndy Hale is the Facility Health Administrator for ASPC-Yuma, and is***
17   ***likely to testify regarding her knowledge of ADC's policies and procedures for delivery***
18   ***of health care to ADC's inmate population; including delivery of medications, delivery***
19   ***of mental health care and dental care, and the day-to-day operation of health services at***
20   ***Yuma.   Ms. Hale is also expected to testify regarding the scheduling of health care***
21   ***appointments and Yuma's recent implementation of the Care Log system which***
22   ***electronically tracks and schedules follow up appointments for inmates with chronic***
23   ***care conditions, and the overall delivery of healthcare to the inmates.***

24   31.    Deborah Kinder, FHA at ASPC-Douglas
           c/o Corizon Health
25

26

27

28

1    ***Deborah Kinder is the Facility Health Administrator for ASPC-Florence,***

2    ***and is likely to testify regarding her knowledge of ADC's policies and procedures for***

3    ***delivery of health care to ADC's inmate population; and the day-to-day operation of***

4    ***health services at Yuma including delivery of medications and delivery of mental health***

5    ***care and dental care, and the overall delivery of healthcare to the inmates.***

6        32.    Von Marschik, FHA at ASPC-Eyman
               c/o Corizon Health
7

8    ***Von Marschik is the Facility Health Administrator for ASPC-Eyman, and***

9    ***is likely to testify regarding his knowledge of ADC's policies and procedures for***

10   ***delivery of health care to ADC's inmate population; and the day-to-day operation of***

11   ***health services at Yuma including delivery of medications and delivery of mental health***

12   ***care and dental care. Mr. Marschik has a lengthy tenure with Corizon Health Services***

13   ***and is also expected to testify regarding his experience and expertise in privatizing***

14   ***health care in correctional settings, and the overall delivery of healthcare to the***

15   ***inmates.***

16       33.    Cameron Lewis, FHA at ASPC-Lewis
               c/o Corizon Health
17

18   ***Cameron Lewis is the Facility Health Administrator for ASPC-Lewis, and***

19   ***is likely to testify regarding his knowledge of ADC's policies and procedures for***

20   ***delivery of health care to ADC's inmate population; and the day-to-day operation of***

21   ***health services at Yuma including delivery of medications and delivery of mental health***

22   ***care and dental care, and the overall delivery of healthcare to the inmates.***

23       34.    Holly Massey, FHA at ASPC-Phoenix
               c/o Corizon Health
24

25

26

27

28

1      ***Holly Massey is the Facility Health Administrator for ASPC-Phoenix, and***
2      ***is likely to testify regarding her knowledge of ADC's policies and procedures for***
3      ***delivery of health care to ADC's inmate population; and the day-to-day operation of***
4      ***health services at Yuma including delivery of medications and delivery of mental health***
5      ***care and dental care, and the overall delivery of healthcare to the inmates.***

6      35.    Patrick Harvey, FHA at ASPC-Tucson
             c/o Corizon Health
7

8      ***Patrick Harvey is the Facility Health Administrator for ASPC-Tucson,***
9      ***and is likely to testify regarding his knowledge of ADC's policies and procedures for***
10     ***delivery of health care to ADC's inmate population; and the day-to-day operation of***
11     ***health services at Yuma including delivery of medications and delivery of mental health***
12     ***care and dental care, and the overall delivery of healthcare to the inmates.***

13     36.    Elsie Stowell, FHA at ASPC-Winslow
             c/o Corizon Health
14

15     ***Elsie Stowell is the Facility Health Administrator for ASPC-Winslow, and***
16     ***is likely to testify regarding her knowledge of ADC's policies and procedures for***
17     ***delivery of health care to ADC's inmate population; and the day-to-day operation of***
18     ***health services at Yuma including delivery of medications and delivery of mental health***
19     ***care and dental care, and the overall delivery of healthcare to the inmates.***

20     37.    ***Angelo Daniels, Deputy Warden of Security Operations***
             ***c/o Struck Wieneke & Love P.L.C.***
21

22     ***Angelo Daniels is the Deputy Warden of Security Operations at ADC, and***
23     ***is likely to testify regarding his knowledge of ADC's policies and procedures for***
24     ***oversight of inmate meal preparation and delivery, including accommodation of the***
25     ***religious standards in place for the various faiths to which inmates in ADC custody***
26     ***belong, and provisions of adequate nutritional needs for special diets.***

27     38.    Vickie Bybee, Vice President of Operations
             Corizon Health
28

24

*Vickie Bybee is the Vice President of Operations for Corizon Health, and is expected to testify regarding Corizon's obligations under the Contract with ADC, Corizon's staffing, recruiting, policies, and the provision of medical, mental health and dental health care to ADC's inmate population.*

39.    *Any and all foundational witnesses, including custodians of records necessary to lay foundation for the admissibility of evidence at trial.*

**B.    INDIVIDUALS WHO MAY BE CALLED TO TESTIFY**

40.    Jeff Hood, ADC Deputy Director
c/o Struck Wieneke & Love, P.L.C.

Jeff Hood is the Deputy Director of ADC.  Mr. Hood **will testify regarding his training and experience in corrections, and with** regard to ADC policies and procedures and conditions of confinement; the maintenance and administration of ADC institutions and programs; isolation and conditions of confinement issues in various ADC facilities as well as to ADC's compliance with constitutional requirements for the delivery of healthcare;

41.    Ernest Trujillo, ADC Southern Regions Operations Director (SROD)
c/o Struck Wieneke & Love, P.L.C.

Ernest Trujillo is the Southern Region Operations Director of ADC.  **Please see Exhibit Bates Numbered ADC123472-123477 for his credentials and experience.** Mr. Trujillo is likely to testify with regard to the delivery of medical, dental and mental health care to the inmates; **his activities in ensuring compliance with all Department Orders, Procedural Manuals, Post Orders, and Standard of Operations as they apply to security and operational practices, staff safety, the welfare of the inmate population; his supervision of ADC facilities, including policy and program development and implementation statewide with regard to security operations, inmate programming, and standardization of staffing; ensuring the implementation of the Department's Strategic Plan and other agency initiatives, and standardization of processes and procedures in all facilities.**

25

42.   James Taylor (*former ADC HS Division, Contract Compliance Program Evaluation Administrator*) *Regional Vice President for Corizon*
c/o Corizon Health[2]
105 Westpark Drive, Suite 200
Brentwood, Tennessee 37027

*James Taylor is the former HS Division, Contract Compliance Program Evaluation Administrator for ADC, and the current Regional Vice President at Corizon. Mr. Taylor  is likely to have discoverable information with regard to ADC policies, practices, and procedures at the time of his employment with ADC, including those related to medical, dental and mental health needs; the privatization of the entire health care delivery system, specifically, the transition of the entire health care system to Wexford; the transition of the entire health care system to Corizon; and the provision of adequate care to ADC inmates in compliance with constitutional requirements.*

43.   Arthur Gross, ADC HS Contract Monitoring Bureau, Assistant Director
c/o Struck Wieneke & Love, P.L.C.

*Arthur Gross is the current HS Contract Monitoring Bureau Assistant Director.  Please see Exhibit Bates Numbered ADC123408-123412 for Mr. Gross's credentials and qualifications. Mr. Gross is likely to have discoverable information with regard to ADC policies and procedures at the time of his employment with ADC, including those related to medical, dental and mental health needs; the privatization of the entire health care delivery system, specifically, the transition of the entire health care system to Wexford; the transition of the entire health care system to Corizon; the provision of adequate care to ADC inmates in compliance with constitutional and contract requirements; and his activities in reporting to the Director of the ADC, provision of oversight and direction to the monitoring team members responsible for ensuring that Corizon provides required health services to ADC's inmate population.*

---

[2]   The contact information for all parties listed as in care of Corizon Health shall be the same as that listed for James Taylor, unless specifically stated otherwise.

26

44. **Martin Winland**, ADC HS ~~Division~~ **Contract Monitoring Bureau**, Quality/Clinical, Pharmacy Monitor **(Pharmacist)**
c/o Struck Wieneke & Love, P.L.C.

*Martin Winland is the current Contract Monitoring Bureau Pharmacy Monitor, taking the place of Paulette Boothby as of May 31, 2013.  He is likely to have discoverable information regarding his knowledge of the PharmaCorr prescription and delivery system and his knowledge of Corizon and PharmaCorr's performance under the Contract with ADC.*

45. Karen Chu, ADC HS ~~Division~~ **Contract Monitoring Bureau**, Quality/Clinical, Dental Program **Manager** ~~Monitor (Dental Program Manager)~~
c/o Struck Wieneke & Love, P.L.C.

*Karen  Chu  is  the  current  HS  Contract  Monitoring  Bureau, Quality/Clinical, Dental Program Manager.  Please see Exhibit Bates Numbered ADC123434 for her credentials and qualifications.  Dr. Chu was previously deposed and Defendants will rely will on her deposition testimony.  Dr. Chu is likely to have discoverable information regarding ADC's policies and procedures related to provision of dental care to the ADC inmate population; her knowledge of Plaintiffs' dental health needs;; as well as the provision of adequate care to ADC inmates in compliance with constitutional requirements; her activities in the review and analysis of dental services provided to ADC's inmate population, review and analysis of inmate charts, and response  to  inquiries  from  monitoring  staff  regarding  appropriateness  of  dental services, practices and protocols .*

46. Julie Jackson, DW, ASPC-Florence
c/o Struck Wieneke & Love, P.L.C.

*Deputy Warden Julie Jackson is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Florence, its cell blocks, the inmates*

27

*housed at ASPC-Florence, and recreation, therapy and behavioral programming at ASPC-Florence. Deputy Warden Jackson is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.*

47.   Chris Moody, DWOP, ASPC-Lewis
c/o Struck Wieneke & Love, P.L.C.

*Deputy Warden Chris Moody is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Lewis, its cell blocks, the inmates housed at ASPC-Lewis, and recreation, therapy and behavioral programming at ASPC-Lewis. Deputy Warden Moody is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and*

28

*fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.*

48.   Sandra Lawrence, DW, ASPC-Lewis-Stiner Unit (and former DW of ASPC-Lewis-Bachman)
c/o Struck Wieneke & Love, P.L.C.

*Deputy Warden Sandra Lawrence is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Lewis/Stiner Unit, its cell blocks, the inmates housed at Stiner Unit, and recreation, therapy and behavioral programming at ASPC-Lewis. Deputy Warden Lawrence is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.*

49.   Madeleine Perkins, DW, ASPC-Phoenix-Alhambra and Flamenco Units (and former DW of ASPC-Lewis-Stiner)
c/o Struck Wieneke & Love, P.L.C.

*Deputy Warden Madeleine Perkins is likely to testify regarding her*

*knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Phoenix/Alhambra and Flamenco Unit, its cell blocks, the inmates housed at Alhambra and Flamenco Unit, and recreation, therapy and behavioral programming at ASPC-Alhambra and Flamenco.   Deputy Warden Perkins is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.*

50.    Travis Scott, ADW, ASPC-Phoenix-Alhambra and Flamenco Units
c/o Struck Wieneke & Love, P.L.C.

*Deputy Warden Travis Scott is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Phoenix/Alhambra and Flamenco Unit, its cell blocks, the inmates housed at Alhambra and Flamenco Unit, and recreation, therapy and behavioral programming at ASPC-Alhambra and Flamenco. Deputy Warden Scott is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary,*

30

*managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement within the maximum custody and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.*

51.   James O'Neil, DWOP, ASPC-Perryville
c/o Struck Wieneke & Love, P.L.C.

*Deputy Warden James O'Neil is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Phoenix/Alhambra and Flamenco Unit, its cell blocks, the inmates housed at ASPC-Perryville, and recreation, therapy and behavioral programming at ASPC-Perryville. Deputy Warden O'Neil is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation,*

1   *and recreation time; and educational programming available to inmates.*

2

3       52.     Betty Barnes, DW, ASPC-Perryville-San Pedro
                 c/o Struck Wieneke & Love, P.L.C

4

5       *Deputy Warden Betty Barnes is likely to testify regarding his knowledge of*

6   *ADC's contemporary practices and procedures in relation to security operations,*

7   *including general information regarding ASPC-Perryville/San Pedro Unit, its cell*

8   *blocks, the inmates housed at San Pedro Unit, and recreation, therapy and behavioral*

9   *programming at ASPC-San Pedro.  Deputy Warden Barnes is additionally likely to have*

10  *discoverable information with regard to Plaintiffs' institutional history and ADC's*

11  *policies and procedures, and conditions of confinement with respect to their respective*

12  *facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and*

13  *policies regarding inmates with gang affiliations as well as ADC's management of gang*

14  *affiliated inmates; any Plaintiff's protective custody or classification status at any point*

15  *during their incarceration at ADC as well as the policies and procedures regarding the*

16  *classification, housing, programming, recreation, morale and welfare programs, and*

17  *fundraisers; the management of health care at each respective facility, the physical*

18  *layout of each of their respective facilities; alleged sanitation issues at their respective*

19  *facilities; conditions of confinement and management of maximum custody units;*

20  *inmates' access to programming, visitation, and recreation time; and educational*

21  *programming available to inmates.*

22

23      53.     Anthony Coleman, DW, ASPC-Perryville-Santa Cruz
                 c/o Struck Wieneke & Love, P.L.C.

24

25      *Deputy Warden Anthony Coleman is likely to testify regarding his*

26  *knowledge of ADC's contemporary practices and procedures in relation to security*

27  *operations, including general information regarding ASPC-Perryville/Santa Cruz Unit,*

28  *its cell blocks, the inmates housed at Santa Cruz Unit, and recreation, therapy and*

32

*behavioral programming at ASPC-Santa Cruz Unit.  Deputy Warden Coleman is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.*

      54.    Lacy Scott, DW, ASPC-Perryville-Lumley
             c/o Struck Wieneke & Love, P.L.C.

*Deputy Warden Lacy Scott is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Perryville/Lumley Unit, its cell blocks, the inmates housed at Lumley Unit, and recreation, therapy and behavioral programming at ASPC-Lumley Unit.  Deputy Warden Scott is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and*

33

*fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.*

55.   Panann Days, ADW, ASPC-Tucson-Cimarron Unit
c/o Struck Wieneke & Love, P.L.C.

*Deputy Warden Panann Days is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Tucson/Cimarron Unit, its cell blocks, the inmates housed at Cimarron Unit, and recreation, therapy and behavioral programming at ASPC-Tucson/Cimarron Unit.  Deputy Warden Days is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.*

56.   Angela Basurto, DWOP, ASPC-Yuma
c/o Struck Wieneke & Love, P.L.C.

*Deputy Warden of Operations Angela Basurto is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security*

34

*operations, including general information regarding ASPC-Yuma, its cell blocks, the inmates housed at ASPC-Yuma, and recreation, therapy and behavioral programming at ASPC-Yuma. DWOP Basurto is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.*

57.     *Jeri Pepelnjak, CO III at ASPC-Perryville*
*c/o Struck Wieneke & Love, P.L.C.*

*CO III Pepelnjak is likely to testify regarding her knowledge of Plaintiff Charlotte Wells, including Wells' institutional history and conduct while in incarceration.*

58.     Dr. Tracy L. Crews, M.D., Former Psychiatrist at ASPC-Perryville
444 N. 44th Street, Suite 400
Phoenix, AX 85008

*Dr. Crews is the former Psychiatrist Supervisor at ASPC-Perryville. Dr. Crews was previously deposed in this case and, if unavailable at the time of trial, Defendants will rely upon her deposition testimony. Dr. Crews is likely to testify with regard to her knowledge of the mental health needs and treatment of ADC's inmate population, the contemporary mental health services policies and procedures implemented during her tenure at ADC; mental health classifications for ADC inmates;*

35

*the prescription and delivery of psychiatric medication to ADC inmates; private and group therapy sessions provided to ADC inmates at ASPC-Perryville.*

59.     Ingebor Popin, Dental Assistant at ASPC-Perryville
c/o Corizon Health

*Ingebor Popin is currently a Dental Assistant at ASPC-Perryville and is likely to testify regarding ADC's policies and procedures related to dental care provided to the ADC inmate population at ASPC-Perryville, including the dental HNR process, triaging of dental HNRs, informed consents for dental surgery, routine dental services provided to ADC's inmate population, and wait times for dental patients.*

60.     Martha Ortega, Dental Assistant II at ASPC-Phoenix
c/o Corizon Health

*Martha Ortega is a Dental Assistant II at ASPC-Phoenix, and is likely to testify regarding her knowledge of ADC's policies and procedures for delivery of dental care to ADC's inmate population; the dental intake process for all male ADC inmates at ASPC-Phoenix; triage of dental HNRs; and dental treatment provided to ADC inmates, including pain evaluations, cleanings, fillings, and extractions.*

61.     Stephanie Leonard, Psy.D., at ASPC-Perryville/WTU
c/o Corizon Health

*Stephanie Leonard, Psy.D. is a Clinical Psychologist currently at ASPC-Perryville/Women's Treatment Unit, and is likely to testify regarding her knowledge of ADC's policies and procedures relating to delivery of mental health care to ADC's inmate population; including prescription and delivery of psychiatric medications to inmates, psychiatric treatment plan implementation and follow-up, and policies and procedures for placement of inmates on mental health and/or suicide watch.*

62.     Tom A. Fulks, Clinical Psychologist, at ASPC-Lewis
c/o Corizon Health

*Tom Fulks is a Clinical Psychologist currently at ASPC-Phoenix, and formerly at ASPC-Lewis, and is likely to testify regarding his knowledge of ADC's policies and procedures relating to delivery of mental health care to ADC's inmate*

36

*population; including prescription and delivery of psychiatric medications to inmates,*

*psychiatric treatment plan implementation and follow-up, and policies and procedures*

*for placement of inmates on mental health and/or suicide watch.*

63.   Natalie Morales, Nurse Supervisor, at ASPC-Perryville
c/o Corizon Health

***Natalie Morales is currently a Nurse Supervisor at ASPC-Perryville, and***

*is likely to testify regarding her knowledge of the ADC's policies and procedures related*

*to HNR processing and triage, scheduling of inmates on the nurse's and provider's*

*lines, and response to medical emergencies.*

64.   David Cresap, Director of Nursing at ASPC-Lewis
c/o Corizon Health

***David Cresap is the current Director of Nursing at ASPC-Lewis, and is***

*likely to testify regarding his knowledge of ADC's policies and procedures for delivery*

*of health care to ADC's inmate population; including delivery of medication, triaging*

*and scheduling inmates for medical appointments, and the methods of delivery of*

*health care to populations with differing custody levels.*

65.   Carl Bynum, Associate Medical Director
Corizon Health

***Carl Bynum is the Associate Medical Director for Corizon Health, and is***

*expected to testify regarding Corizon's obligations under the Contract with ADC,*

*Corizon's staffing, recruiting, policies, and the provision of medical health care to*

*ADC's inmate population.*

66.   Winfred Williams, Chief Medical Officer
Corizon Health

*Winfred Williams is Corizon's current Chief Medical Officer, and likely to testify regarding his knowledge of ADC's policies and procedures related to the delivery of medical care to ADC's inmate population; and the implementation and use of the Care Log software at Yuma. Dr. Williams has a lengthy tenure with Corizon Health Services and will also testify regarding his experience and expertise in privatization of health care in correctional settings.*

    67.    Barry Allen, Pharmacy Director
Corizon Health

*Barry Allen is the Pharmacy Director for Corizon Health, and is expected to testify regarding Corizon's obligations under the Contract with ADC,  PharmaCorr's services under its contract with Corizon, and the provision of medical and psychiatric medication to ADC's inmate population.*

    68.    Anthony Medel, ADC HS Contract Monitoring Bureau, Contract Monitor II at ASPC-Yuma
c/o Struck Wieneke & Love, P.L.C.

*Anthony Medel is the current Contract Monitor for ASPC-Yuma. Please see Exhibit Bates Numbered ADC123403-123407 for his credentials and qualifications. Mr. Medel may testify regarding policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; his activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; his knowledge of Corizon's performance under the Contract with ADC, and information contained within MGAR Reports.*

    69.    Jessica Raak, ADC HS Contract Monitoring Bureau, Quality/Clinical, Program Comp Auditor III (Mental Health Auditor)
c/o Struck Wieneke & Love, P.L.C.

*Jessica Raak is the current Program Compliance Auditor III (mental*

1    *health auditor) for ADC. Please see Exhibit Bates Numbered ADC123424-123425 for*

2    *her credentials and qualifications. Ms. Raak will testify regarding policies and*

3    *procedures for provision of health care to ADC's inmate population; delivery of*

4    *medication to inmates; delivery of mental health care and dental care; her activities in*

5    *evaluation of mental health services provided by Corizon, reporting on those services*

6    *with the monitoring MGAR reports; and monitoring and reviewing those services for*

7    *patterns; compilation and analysis of statistical data; ensuring compliance with federal*

8    *and state laws; clinical reviews for inmate grievance appeal responses and*

9    *investigations; and her knowledge of Corizon's performance under the Contract with*

10   *ADC.*

11         70.    Jen Mielke-Fontaine, ADC HS Contract Monitoring Bureau, Audit Nurse
                  Contract Monitor, ASPC Eyman and Florence
12                c/o Struck Wieneke & Love, P.L.C.

13         *Jen Mielke-Fontaine is the current Audit Nurse Contract Monitor, ASPC*

14   *Eyman and Florence, for ADC. Please see Exhibit Bates Numbered ADC123452-*

15   *123453 for her credentials and qualifications. Ms. Mielke-Fontaine will testify*

16   *regarding policies and procedures for provision of health care to ADC's inmate*

17   *population; delivery of medication to inmates; delivery of mental health care and dental*

18   *care; her activities in evaluation of mental health services provided by Corizon,*

19   *reporting on those services with the monitoring MGAR reports; and monitoring and*

20   *reviewing those services for patterns; compilation and analysis of statistical data;*

21   *ensuring compliance with federal and state laws; clinical reviews for inmate grievance*

22   *appeal responses and investigations; and her knowledge of Corizon's performance*

23   *under the Contract with ADC.*

24         71.    Helena Valenzuela, ADC HS Contract Monitoring Bureau, Contract
                  Monitor at ASPC Phoenix
25                c/o Struck Wieneke & Love, P.L.C.

26         *Helena Valenzuela is the current Contract Monitor at ASPC Phoenix.*

27   *Please see Exhibit Bates Numbered ADC123452-123453 for her credentials and*

28   *qualifications. Ms. Valenzuela will testify regarding policies and procedures for*

39

1  *provision of health care to ADC's inmate population; delivery of medication to inmates;*

2  *delivery of mental health care and dental care; her activities in evaluation of mental*

3  *health services provided by Corizon, reporting on those services with the monitoring*

4  *MGAR reports; and monitoring and reviewing those services for patterns; compilation*

5  *and analysis of statistical data; ensuring compliance with federal and state laws;*

6  *clinical reviews for inmate grievance appeal responses and investigations; and her*

7  *knowledge of Corizon's performance under the Contract with ADC.*

8        72.    Matthew Musson, ADC HS Contract Monitoring Bureau, Contract Monitor - ASPC-Eyman

9                c/o Struck Wieneke & Love, P.L.C.

10        *Matthew Musson is the current Contractor Monitor at ASPC-Eyman for*

11  *ADC. Please see Exhibit Bates Numbered ADC123447-123448 for his credentials and*

12  *qualifications. Mr. Musson will testify regarding policies and procedures for provision*

13  *of health care to ADC's inmate population; delivery of medication to inmates; delivery*

14  *of mental health care and dental care; his activities in evaluation of mental health*

15  *services provided by Corizon, reporting on those services with the monitoring MGAR*

16  *reports; and monitoring and reviewing those services for patterns; compilation and*

17  *analysis of statistical data; ensuring compliance with federal and state laws; clinical*

18  *reviews for inmate grievance appeal responses and investigations; his knowledge of*

19  *Corizon's performance under the Contract with ADC, and information contained*

20  *within the MGAR Reports.*

21        73.    Terry Allred, ADC HS Contract Monitoring Bureau, Quality/Clinical, Contract Monitor – ASPC Lewis

22                c/o Struck Wieneke & Love, P.L.C.

23        *Terry Allred is the current Contract Monitor at ASPC-Lewis. Please see*

24  *Exhibit Bates Numbered ADC123470-123471 for his credentials and qualifications. Mr.*

25  *Allred will testify regarding policies and procedures for provision of health care to*

26  *ADC's inmate population; delivery of medication to inmates; delivery of mental health*

27  *care and dental care; his activities in evaluation of mental health services provided by*

28  *Corizon, reporting on those services with the monitoring MGAR reports; and*

40

*monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; his knowledge of Corizon's performance under the Contract with ADC, and information contained within MGAR Reports .*

74. Mark Haldane, ADC HS Contract Monitoring Bureau, Contract Monitor, ASPC-Perryville
c/o Struck Wieneke & Love, P.L.C.

*Mark Haldane is the current Contract Monitor at ASPC-Perryville. Please see Exhibit Bates Numbered ADC123419-123421 for his credentials and qualifications. Mr. Haldane will testify regarding policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; his activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; his knowledge of Corizon's performance under the Contract with ADC, and information contained within the MGAR Reports.*

75. Marlena Bedoya, ADC HS Contract Monitoring Bureau, Contract Monitor
c/o Struck Wieneke & Love, P.L.C.

*Marlena Bedoya is the current Contract Monitor for ADC. Please see Exhibit Bates Numbered ADC123443-123446 for her credentials and qualifications. Ms. Bedoya will testify regarding policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for*

1  *inmate grievance appeal responses and investigations; her knowledge of Corizon's*
2  *performance under the Contract with ADC, and information contained within the*
3  *MGAR Reports.*

4

5  76.   ***Vanessa Headstream,*** ~~Kathy Campbell,~~ ADC HS ~~Division~~ ***Contract***
      ***Monitoring Bureau***, Quality/Clinical, ***Health Services Coordinator***
6      ***(***Nursing Monitor***)*** ~~(Health Services Coordinator)~~
      c/o Struck Wieneke & Love, P.L.C.
7

8  ***Vanessa Headstream is the current Health Services Coordinator (Nursing***
9  ***Monitor) for ADC. Please see Exhibit Bates Numbered ADC123478-123480 for her***
10  ***credentials and experience. Ms. Headstream will testify regarding policies and***
11  ***procedures for provision of health care to ADC's inmate population; delivery of***
12  ***medication to inmates; delivery of mental health care and dental care; her activities in***
13  ***evaluation of mental health services provided by Corizon, reporting on those services***
14  ***with the monitoring MGAR reports; and monitoring and reviewing those services for***
15  ***patterns; compilation and analysis of statistical data; and her knowledge of Corizon's***
16  ***performance under the Contract with ADC.***

17

18  77.   Patricia Arroyo, ADC HS ~~Division~~ ***Contract Monitoring Bureau***,
      Quality/Clinical**,** ~~Audit Nurse~~ (Program Evaluation Specialist) ***(Audit***
19      ***Nurse)***
      c/o Struck Wieneke & Love, P.L.C.
20

21  ***Patricia Arroyo is the current Program Compliance Auditor III (mental***
22  ***health auditor) for ADC. Ms. Arroyo will testify regarding policies and procedures for***
23  ***provision of health care to ADC's inmate population; delivery of medication to inmates;***
24  ***delivery of mental health care and dental care; her activities in evaluation of mental***
25  ***health services provided by Corizon, reporting on those services with the monitoring***
26  ***MGAR reports; and monitoring and reviewing those services for patterns; compilation***
27  ***and analysis of statistical data; and her knowledge of Corizon's performance under the***
28  ***Contract with ADC.***

42

78. ***Yvonne Maese*** ~~Vanessa Headstream~~, ADC HS ~~Division~~ **Contract Monitoring Bureau**, Quality/Clinical**,** ~~Audit Nurse~~ (Program Evaluation Specialist) *(Audit Nurse)*
c/o Struck Wieneke & Love, P.L.C.

*Yvonne Maese is the current Program Evaluation Specialist (audit nurse) for ADC. Please see Exhibit Bates Numbered ADC123481-123483 for her credentials and qualifications. Ms. Maese will testify regarding policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data;, random chart and medication monitoring, and ensuring performance guidelines are met in the clinical setting; and her knowledge of Corizon's performance under the Contract with ADC.*

C.      *INDIVIDUALS WHO MAY HAVE KNOWLEDGE*

79.      Victor Parsons, former Arizona Department of Corrections ("ADC") Inmate #123589, Plaintiff
c/o ACLU Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, Arizona  85013
(603) 650-1854

Victor Parsons is a *former* Plaintiff in this matter.  Mr. Parsons is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history.

80.      Shawn Jensen, ADC #032465, Plaintiff
Arizona State Prison Complex ("ASPC")-Tucson-Manzanita Unit
10000 South Wilmot
P.O. Box 24401
Tucson, Arizona  85734-4401
(520) 574-0024

43

1

**III.   COMPUTATION OF DAMAGES**

2

Defendants are not making any claim for damages.  Defendants will seek any and

3

all recoverable costs and fees should Defendants prevail in this matter.

4

**IV.   INSURANCE AGREEMENTS**

5

There are no relevant insurance agreements under Fed. R. Civ. P. 26(a)(1)(A)(iv).

6

7

DATED this __12th__ day of August 2013.

8

STRUCK WIENEKE & LOVE, P.L.C.

9

10

By /s/ Anne M. Orcutt
Daniel P. Struck

11

Kathleen L. Wieneke
Rachel Love

12

Timothy J. Bojanowski
Nicholas D. Acedo

13

Courtney R. Cloman
Ashlee B. Fletcher

14

Anne M. Orcutt
STRUCK WIENEKE & LOVE, P.L.C.

15

3100 West Ray Road, Suite 300
Chandler, Arizona  85226

16

Arizona Attorney General Thomas C. Horne

17

Office of the Attorney General
Michael E. Gottfried

18

Katherine E. Watanabe
Lucy M. Rand

19

Assistant Attorneys General
1275 W. Washington Street

20

Phoenix, Arizona 85007-2926

21

*Attorneys for Defendants*

22

23

24

25

26

27

28

# Exhibit 4
## (redacted)

**to Mitchell Declaration in Support of Plaintiffs'
Opposition to Defendants' Motion for Reconsideration**



**TOM HORNE**
**ATTORNEY GENERAL**

**OFFICE OF THE ARIZONA ATTORNEY GENERAL**

**CIVIL DIVISION / LIABILITY MANAGEMENT SECTION**

**LUCY M. RAND**

December 5, 2013

Via electronic mail only
ckendrick@prisonlaw.com

Corene Thaedra Kendrick, Esq.
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916

Re:     *Parsons, et al. v. Ryan, et al.*
         USDC CV 12-00601-PHX-NVW (MEA)

Dear Corene:

This letter responds to your December 3, 2013, letter in which you attempted to memorialize an impromptu after-hours telephone call on December 2, 2013, with Caroline Mitchell, to which you joined.

To be clear, the December 2, 2013, after-6:00 p.m. impromptu telephone call was *NOT* a formal meet and confer as required by the Federal Rules of Civil Procedure 37, Local Rules of Civil Procedure 7.2, and the Court's Order (Dkt. 52, ¶ 6).  Ms. Mitchell immediately called me after receiving my response to her e-mail in which she requested to discuss Defendants' November 25, 2013, production.[1] I had advised Ms. Mitchell that I had missed her calls because I was away from the office and could talk now "quickly"—something Ms. Mitchell and I had done in the past after other productions—or set up a time to talk the next day.[2]  Ms. Mitchell asked to join you in the call.  At no time prior to the call or during the call did you or Ms. Mitchell inform me that your intent was to hold a meet and confer or of the issues to be discussed.  Plaintiffs' failure to provide Defendants notice of a meet and confer and the issues to be discussed denied Defendants the ability to confer prior to the call or to have any co-counsel on the call—even though Plaintiffs had apparently notified their co-counsel of the call and issues to be discussed.  It is unsettling that Plaintiffs mischaracterize this impromptu telephone call as a formal meet and confer and I find it extremely bold that Plaintiffs would consider defending these circumstances to the Court as the basis for a formal meet and confer.

---

[1]   Ms. Mitchell's e-mail was only sent to me and you, and not to Defendants' co-counsel.
[2]   Although Ms. Mitchell left me a voicemail on November 20, 2013, I did not return her call because she then communicated to me via e-mail and there was no longer a need to do so.

Corene Kendrick
*PARSONS v. RYAN, USDC CV12-0601-PHX-NVW*
*Re: Production*
December 5, 2013
Page 2

Below Defendants address your December 3 letter.

## I.    PSYCHOLOGICAL AUTOPSIES

Pursuant to the Court's Order (Dkt. 717), Defendants produced the psychological autopsies from 2011-2013 that were in existence at the time discovery closed, September 27, 2013. Pursuant to the Federal Rules of Civil Procedure 34, Defendants are not required to create documentation for production.  Consistent with the Court's Order and the Federal Rules of Civil Procedure 37, draft psychological autopsies in existence at the close of discovery were not produced unless otherwise ordered to do so by the Court.  Pursuant to the Court's Order (Dkt. 624), Defendants produced three draft psychological autopsies as attachments to e-mails on October 25, 2013. (AGA_Review_00014104-00014106, Joaquin Tamayo #106163; AGA_Review_00022983-00022985, Paul Henderson #247636; and AGA_Review-00102860-00102897, Timothy Ben #186585.)  Consistent with the Court's Order (Dkt. 717), Defendants did not produce any final psychological autopsies created after the close of discovery.  To date, one psychological autopsy was created after the close of discovery.

## II.    MEDICAL RECORDS:

### A.    Dr. Wilcox Tour at ASPC-Florence

Defendants produced the following medical records requested by Plaintiffs' expert, Dr. Wilcox: James Calhoun, #204538, Kyle Chavez, #262243, and Vincent Feracci, #283825.  Plaintiffs do not dispute that these were the only medical records requested.

### B.    Dr. Wilcox Tour at ASPC-Tucson

In accordance with an e-mail request from Donald Specter to Tim Bojanowski on October 24, 2013, Defendants produced the sole medical record of Miguel Ventura, #219103, from January 11, 2011 to October 28, 2013.  Plaintiffs claim for the first time in your December 3rd letter that Dr. Wilcox also requested the medical records of inmates Pedro Guillen, #076248, and Brian Wolf, #173405.  Mr. Specter only requested one medical record and Defendants produced it.

### C.    Dr. Cohen Tour at ASPC-Lewis

Defendants located the medical records tabbed by Dr. Cohen at his ASPC-Lewis tour and produced the documents on December 4, 2013, bates numbers ADC200169-200238.

### D.    Released Inmates

Defendants are prohibited from producing medical records for inmates who have been released.  These inmates are no longer members of the prisoner class and the protective order does not cover them.  If, however, Plaintiffs provide releases for released individuals, Defendants will produce their medical records.  To the extent Plaintiffs have case law holding that released inmates are still a part of the prisoner class, please provide us a copy.

Corene Kendrick
*PARSONS v. RYAN, USDC CV12-0601-PHX-NVW*
*Re: Production*
December 5, 2013
Page 3

Additionally, Defendants are confused as to why Plaintiffs waited until now to raise this issue.  Indeed, Defendants advised Plaintiffs' counsel months ago (Jennifer Alewelt in or about September and Alison Hardy in October) that Defendants would not produce records for released inmates and Plaintiffs failed to object to this position until two days ago.

**E.      Mental Health Document Review**

Your December 3 letter erroneously states that I agreed to provide the complete medical record of Javier Gonzalez, #217498.  I only agreed to produce any page tabbed by Plaintiffs' counsel at the document review of the 19 boxes of mental health dispositions and observations.  Plaintiffs tabbed one page belonging to inmate Gonzalez, which was produced on December 4, 2013, bates number ADC200239.

**F.      Deceased Inmates**

Although it appears Katherine Watanabe produced deceased inmate medical records in response to Parsons' 1st RFP No. 40, that production was improper as RFP No. 40 does not request deceased inmate medical records.  Moreover, the parties never reached an "agreement" to produce deceased inmate medical records in response to Parsons' 1st RFP No. 40.  Plaintiffs' definition of death records does not include medical records.  As such, Defendants will not produce any medical records for deceased inmates in response to Parsons' 1st RFP No. 40.

**III.     CORRECTIVE ACTION PLANS**

Defendants did not produce Corrective Action Plans because the computer-related output logistics have not yet been completed.  As I explained to you in our call, preliminary printouts were generated; however, the reports did not output properly and staff is currently undertaking steps to resolve this issue.

Sincerely,


s/ Lucy M. Rand
Lucy M. Rand,
Assistant Attorney General


LMR/hs

#3630016