Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-NVW<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' EXPERTS AND EXPERT REPORTS** |

## I.     DEFENDANTS HAVE MADE THE NECESSARY SHOWING FOR RECONSIDERATION

"The Court has discretion to reconsider and vacate a prior order." *Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 582 (D. Ariz. 2003). "A motion to reconsider must provide a valid ground for reconsideration by showing two things. First, it must demonstrate some valid reason why the Court should reconsider its prior decision. Second, it must set forth facts or law of a strongly convincing nature to induce the Court to reverse its prior decision." *Bahrs v. Hughes Aircraft Co.*, 795 F. Supp. 965, 967 (D. Ariz. 1992). Manifest error is merely "clear" or "indisputable" error. *Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 282 F.R.D. 216, 231 (D. Ariz. 2012).

Defendants' Motion for Reconsideration made this showing; and the first thirteen pages of Plaintiffs' Response confirmed that they did.[1]

- The Order granting Plaintiffs' Motion to Strike was based, in part, on the Court's belief that Defendants' requested and urged an October 2014 trial date. Defendants' Motion demonstrated that it was the Court that set that date (driven by Plaintiffs' discovery extension request). Plaintiffs did not dispute that in their Response.

- The Order granting Plaintiffs' Motion to Strike was based, in part, on the Court's belief that Defendants concealed their intent to rely on current ADC conditions. Defendants' Motion demonstrated that both parties and the Court have been operating on the assumption that ongoing evidence of ADC care and conditions would be admissible at trial for purposes of liability. Plaintiffs did not dispute that in their Response.

- The Order granting Plaintiffs' Motion to Strike was based, in part, on the Court's belief that there was no authority to allow evidence of current conditions up until the date of trial. Defendants' Motion quoted *Farmer v. Brennan*, which held that an inmate must prove deliberate indifference at the time of summary judgment and during the remainder of the litigation. Plaintiffs did not dispute that in their Response.

---

[1] Plaintiffs are sticklers for the standard on reconsideration when they oppose one, but when *they* seek reconsideration, the impossible standard they paint ceases to exist. Plaintiffs have moved for reconsideration on at least two unfavorable orders before, and neither of them presented new facts, new law, or manifest error; they only urged prejudice. (Doc. 577, 687.) The Court granted both motions. (Doc. 611, 717.)

1

1
2
3
4

- The Order granting Plaintiffs' Motion to Strike was based, in part, on the Court's belief that 18 U.S.C. § 3626(a)(1)(A) does not require evaluation of current conditions. Defendants' Motion for Reconsideration quoted *Hallett v. Morgan*, which held that the statute does include a "current" violation requirement. Plaintiffs did not dispute that in their Response.

5
6
7
8
9

- The Order granting Plaintiffs' Motion to Strike was based, in part, on the Court's belief that the voluntary cessation doctrine precluded Defendants from introducing evidence of changes, modifications, and improvements in ADC healthcare that are reflected in current evidence. Defendants' Motion for Reconsideration, citing several Ninth Circuit cases, pointed out that, because this evidence was not "because of the litigation," the doctrine did not apply, and therefore the evidence was relevant to whether there was still a case or controversy to adjudicate. Plaintiffs did not dispute that in their Response.

10
11

This undisputed showing is more than enough to allow the Court to take a second look at its previous order.

12

## II.   THE CUT-OFF DATE SHOULD BE EXTENDED

13
14
15
16
17
18
19
20
21
22
23
24
25
26

Plaintiffs' concessions not only assist in satisfying the standard for reconsideration, but they all support the relief that Defendants are requesting: to extend the discovery cut-off date from September 27, 2013 to July 1, 2014 (or some time closer to the October 2014 trial date). The last three points are particularly supportive. But Plaintiffs also do not dispute in their Response that: (1) there are at least four categories of data that are directly relevant to Plaintiffs' healthcare claims, and which should be presented to the Court in their most current form (quarterly and monthly healthcare reports, updated medical/institutional files, NCCHC accreditation reports); (2) because of the change in private healthcare providers (twice since this lawsuit was filed), the Court will not have an accurate and complete picture of the current conditions of healthcare at ADC – something Plaintiffs themselves have asserted – and it needs more data in order to make an informed decision as to the adequacy of care; [2] (3) there have been modifications/improvements in conditions and care that will not take effect until after the

27
28

---

[2] Plaintiffs also do not dispute Defendants' charge that they intentionally filed their lawsuit when they knew ADC healthcare was in a state of transition and vulnerable.

2

1    September 2013 cut-off, but which are directly relevant to the issue of liability; and (4) the

2    Court imposed the September 2013 cut-off after Defendants' experts already relied on

3    evidence after that date, depriving them the opportunity to cure it.[3]  Again, Plaintiffs do

4    not dispute any of this.

5         Plaintiffs instead make two arguments: (1) Defendants are hypocrites; and

6    (2) Plaintiffs will be prejudiced.  The first contention is simply not true, and the second is

7    a sham.  Defendants have believed from the outset that they could *supplement* evidence of

8    current conditions up until at least the dispositive motion deadline (as noted in *Farmer*), if

9    not trial.  The Scheduling Order did not specifically address this.  (Doc. 52, 389.)  And the

10   Court and Plaintiffs were under the same impression.[4]  (Doc. 687 at 11, 13-14; Doc. 826

11   at 3–4.)  The Court thereafter ruled that Defendants could *not* supplement with current

12   evidence, and Defendants are asking the Court to reconsider that ruling. As part of that

13   request, Defendants are proposing to alleviate the very prejudice that Plaintiffs alleged if

14   Defendants were allowed to supplement: let them "test" that evidence.  The Court's

15   ruling, however, was too good for Plaintiffs to pass up. Faced with a choice between

16   giving them what they have wanted all along – discovery until July 1 – and fixing the

17   evidence at September 2013, Plaintiffs have chosen the latter and they have done so

18   because they know how patently unfair and prejudicial it is to Defendants, and how one-

19   sided it is in their favor.  The only way they can pull off this charade is to scream

20   prejudice even louder.  The Court should not be fooled.

21        First, they have requested to extend discovery several times, even up to July

22   1, 2014.[5]  (See, e.g., Doc. 559 at 8-10; Doc. 687; Doc. 753 at 9-10.)  In one of those

23

24        [3] Plaintiffs also do not dispute Defendants charge that they waited until after the
     close of fact discovery to raise this issue with the Court.

25        [4] The Court's answer at the November 1, 2013 hearing in response to Plaintiffs'
26   concern about "Defendants' cherry-picking post-cut-off evidence" *confirmed* Defendants'
     belief that it *could* supplement evidence: "If they offer – they are going to be required to
27   list their trial documents. And if they try to list a bunch of documents *that you haven't had
     access to*, do you think they are going to get away with that?"  (Ex. 7, emphasis added.)

28        [5] Plaintiffs relied on *Brown v. Plata*, 131 S. Ct. 1910 (2011), to support their
     requests to extend discovery, arguing that a September 2013 deadline would yield stale

3

1  requests, they even argued that an extension was necessary so that they could acquire the

2  very gross data that Defendants are requesting to supplement:

> The Stipulation to extend the discovery deadline was
> necessary because critical documents relevant to the operation
> of ADC's health care system and the conditions in isolation
> have not been produced. These documents include those
> which contain "gross data" about how the system is operating,
> such as the wait time for processing sick call slips, suicide
> statistics, and the frequency of mental health treatment for
> prisoners in isolation units. Dkt. 674 ¶¶ 5, 7. Other documents
> sought were equally critical, including monitoring reports and
> corrective action plans about important aspects of the health
> care operations at each facility, suicide autopsies (which are
> supposed to be a critical review of events leading up to the
> suicide). . . . As noted above, the discovery sought by
> Plaintiffs is not only relevant, but critical to a full
> understanding of how the ADC operates its health care
> facilities and the effect of the conditions in isolation on the
> well-being of prisoners

12  (Doc. 687 at 7).  They further pointed out that an extension would not be prejudicial

13  "since trial in the case is an entire year away."  (Id. at 8, 10.)

14           How, then, will they be prejudiced now?  They contend that they will have

15  to conduct costly discovery if the cut-off is extended.  But they have been willing and

16  hoping for that opportunity for quite some time.  (Doc. 559 at 8-10; Doc. 687; Doc. 753 at

17  9-10.)  Nevertheless, the discovery will only be as costly as they choose to make it.  They

18  have stated that they need to "test" the supplemental gross data, but that will not require a

19  do-over of all discovery.[6]  And to the extent any discovery needs to be taken, the burden

20  will largely be on Defendants (e.g., depositions, tours, production).  Plaintiffs have had no

21  qualms in the past demanding more and more discovery from Defendants (wanting to take

22  75 depositions, more than 50 expert tours, and requesting hundreds of thousands of pages

23  of documents). The Court can easily set clear limits at the outset and the parties can

24

25  evidence, but now use it against Defendants for the proposition that establishing a cut-off
    date is discretionary and contend that Defendants "point to no authority showing that the
26  cut-off date, and the orderly schedule it imposes, would render the evidence too stale."
    (Doc. 832 at 8.) Plaintiffs cannot have it both ways.
27
         [6] Nine of the twelve expert depositions have yet to be taken. They can be
28  rescheduled.

                                                    4

proceed accordingly.[7]

What Plaintiffs have also not told the Court is that they too have been supplementing their disclosures with post-September 2013 evidence.  They have made <u>five</u> productions, one as recent as two weeks ago (after Defendants' filed their Motion for Reconsideration), disclosing documents created after September 27, 2013.  Defendants have attached a list of these documents as Exhibit 8 for the Court to see.  Notably, all of these disclosures have come via email, and not formally produced with a supplemental disclosure statement.  They are in no position to claim prejudice now.

## III.   <u>PLAINTIFFS' UNTIMELY REQUEST FOR RECONSIDERATION OF A JUNE TRIAL DATE SHOULD BE DENIED</u>

Plaintiffs' request to move up the trial date would compound, not avoid, Defendants' prejudice.  The Court has already determined that it would.  (Doc. 815 at 5: "[T]he Court finds that accelerating the trial date would be unfair due to the reliance by Defendants on the original date.").  Defendants, their counsel, and their witnesses planned according to the October trial date.   Vacations, events, and other trial dates were scheduled throughout June and July, knowing that the October trial date was a firm date.[8]  In addition, Defendant Charles Ryan must attend official engagements throughout June and Defendant Richard Pratt has a scheduled vacation during the second half of June. As Defendants, they have a right to attend trial.

An abrupt trial-date change also leaves everyone with just two months' notice of trial on a case of significant magnitude.  Counsel would have to begin preparing for trial immediately, even though expert discovery is still ongoing and dispositive motions have not yet been filed.  They will have to juggle preparing for what will likely be an eight-week trial at the same time. Moving the trial date up by <u>four months</u> on such

---

[7] The Court should ignore Plaintiffs' threat to wreak discovery-dispute havoc if additional discovery is allowed. (See Doc. 832 at 6 n.2.)

[8] If the Court so requests, counsel can submit a trial conflicts calendar, and the Court and Plaintiffs will see that Plaintiffs' proposal to work around these conflicts is unworkable.

5

short notice is incredibly prejudicial and unfair, as it deprives Defendants valuable preparation time for trial.

Even more fundamentally, Defendants' dispositive motion is not due until April 18, 2014.  (Doc. 388.)  That Motion will not be fully briefed until June 13, 2014 (Doc. 388), <u>ten days</u> <u>after</u> the proposed trial is supposed to begin.  Thus, a June trial date will deprive Defendants due process and their right to file a dispositive motion in this case.  Finally, a June trial date would not cure the prejudice that a September 2013 cut-off poses, as even a June trial would be based on evidence that is eight months old.

## IV.   THE COURT SHOULD GRANT DEFENDANTS' REQUEST FOR LEAVE TO SUPPLEMENT THE DISCLOSURES OF THREE RULE 26(A)(2)(C) WITNESSES

Plaintiffs cite no prejudice to them if Defendants' supplemental disclosures are permitted. And Defendants certainly did argue to the Court that their original disclosures were not the product of bad faith or willfulness. (Ex. 6.) Plaintiffs' remaining specific attacks are unavailing.

### A.   Dr. Taylor

Plaintiffs cite Dr. Taylor's deposition testimony for their claim that during the course of her employment, the only named Plaintiffs she treated or reviewed are Brislan and Gamez.  (Doc. 832 at 10.)  But Plaintiff Thomas' medical records clearly show that Dr. Taylor treated him extensively:, on April 11, 2008, April 14, 2008, April 15, 2008, May 5, 2008, May 8, 2008, June 9, 2008, June 16, 2008, July 3, 2008, July 10, 2008, August 4, 2008, August 14, 2008, September 3, 2008, September 16, 2009, September 17, 2009, December 13, 2009, December 20, 2009, January 3, 2010, January 17, 2010, January 24, 2010, March 7, 2010, March 14, 2010, October 29, 2012, and October 30, 2012.   (Ex. 1.)   More importantly, Dr. Taylor qualified her deposition response noting, "I have not, *as far as I can tell,* had any contact with any of the other Plaintiffs (emphasis added)."  Plaintiffs' reliance on this answer is clearly unreasonable. Moreover, had they had doubts, they could have directed discovery exploring this issue – but they failed to do so.

6

1    Plaintiffs also argue that because, in their opinion, Dr. Taylor was unable to

2   answer basic questions about her contact with Gamez, she is somehow precluded from

3   testifying regarding that treatment. (Doc. 832 at 10.) Plaintiffs offer no legal authority for

4   this position.  As Defendants' supplemental disclosure regarding Dr. Taylor makes clear,

5   she treated Plaintiff Gamez in 2010 and supervised a psych assistant's[9] treatment of him

6   in 2011. (Ex. 2.) During her employment as a treating psychologist for ADC and

7   Wexford, Dr. Taylor treated thousands of ADC inmates.  Not surprisingly, Dr. Taylor was

8   unable to recall specific details regarding her treatment of Plaintiff Gamez, particularly

9   given that Plaintiffs' counsel did not provide her the opportunity during her deposition to

10   review Plaintiff Gamez's records to refresh her recollection as to the treatment she

11   provided to him.

12    Regarding Dr. Taylor's review of Plaintiffs Verduzco and Polson's records

13   as part of her responsibilities as Contract Compliance Monitor, Plaintiffs claim that "the

14   evidence submitted suggests only that she randomly reviewed records in this role [Doc.

15   826-1, Ex. 7 at 37], not that she reviewed the records of plaintiffs Verduzco and Polson."

16   (Doc. 832 at 10.)  This assertion is squarely contradicted by the plain text of Defendants'

17   supplemental disclosure.  Defendants' disclosure statement explicitly states, "Dr. Taylor

18   will testify that during a random pull of inmate records in preparation of completing the

19   September 2013 MGAR, Plaintiff Verduzco's chart *was one of the random records*

20   *selected*" and "Dr. Taylor will also testify that during a random pull of inmate records in

21   preparation of completing the September 2013 MGAR, Plaintiff Polson's chart *was one of*

22   *the random records selected.*"  (Doc. 826-01 at 65-66, emphasis added.)  Clearly, the

23   records of Plaintiffs Verduzco and Polson were pulled during the random audits of records

24   at ASPC-Perryville and ASPC-Eyman for the September 2013 MGAR.  Indeed, the

25   MGARs themselves reflect it.  (Ex. 3.)  Further, Dr. Taylor could not have testified

26   _____

27   [9] Psych Assistant Beverly Yoches was working towards independent licensure in
    2011. As such, Dr. Taylor supervised and reviewed all of Dr. Yoches' notes, including her
    notes regarding her treatment of Plaintiff Gamez, during that time.  Clearly, this was in the
28   scope of her duties as a psychologist not the result of this litigation.

regarding her reviews of the records of Plaintiffs Verduzco and Polson during her deposition because Dr. Taylor was deposed on September 5, 2013, prior to her review of these records during the random contract monitoring audits which occurred thereafter.

### B.   Dr. Robertson

Plaintiffs claim that "[a]lthough he only treated one plaintiff, Defendants propose that Dr. Robertson will testify about his review of medical records and opinions regarding the treatment of eleven additional plaintiffs." (Doc. 832 at 10.) This is not true. Defendants seek reconsideration only of that portion of the Court's Order precluding Dr. Robertson from testifying regarding his treatment and review of the records of Plaintiff Jensen, whom he treated. (Doc. 815 at 3-4; Doc. 826 at 15-16.). Indeed, the only additional testimony Defendants added in their disclosure statement was regarding Jensen. (Doc. 826-01 at 53-55.)

Plaintiffs also assert that "[f]or the one plaintiff he had seen, Defendants propose to have Dr. Robertson testify extensively about the records of other doctors, the causation for his conditions, and the generally accepted standard of care" and that "[n]othing in the fifteenth supplemental disclosure suggests that Dr. Robertson's proposed testimony was learned from his examination of Mr. Jensen, nor that Dr. Robertson opined on causation or adequacy of care in the course of his treatment." (Doc. 832 at 10-11.) As Defendants' supplemental disclosure regarding Dr. Robertson makes clear, Dr. Robertson reviewed the records of other providers, including outside consultants, during the course of his *own* treatment of Plaintiff Jensen. (Doc. 826, Ex. 6 at 14.) In fact, many of the outside treatment records of Plaintiff Jensen from 2009 and 2010 are also signed by Dr. Robertson because it was necessary for him to review them to ensure Plaintiff Jensen was receiving adequate specialty care and to determine the appropriate follow-up care for him at ADC. (Ex. 4.) His opinions regarding causation and adequacy of care stem from these reviews and not as a result of this litigation.

### C.   Dr. Hanstad

Plaintiffs assert that "Dr. Hanstad's proposed testimony also will cover

1    patients whom he never treated – including Swartz and Polson." (Doc. 832 at 11.)  This

2    again is not true.  Defendants seek reconsideration only of the portion of the Court's Order

3    precluding Dr. Hanstad from testifying regarding his treatment of Plaintiffs Chisholm and

4    Wells and their records authored by other dentists which he reviewed during the course of

5    his own treatment of them.  (Doc. 815 at 3-4; Doc. 826 at 15-16.)

6           Plaintiffs next argue that "Defendants previously refused to allow Dr.

7    Hanstad to sit for deposition."  (Doc. 832 at 11.)   But Defendants never stated that

8    Plaintiffs could not depose Dr. Hanstad, only that he – and 12 other witnesses Plaintiffs

9    sought to depose in September 2013 – would be subject to the 25 deposition limit

10   enforced by the Court.  (Ex. 5.)  Plaintiffs chose not to depose him.  They are, however,

11   deposing him on April 2, 2014, and they can easily examine him regarding his

12   supplemental opinions at that time.

13          Plaintiffs next argue that Dr. Hanstad should be precluded from testifying

14   because their expert will not have an opportunity to offer rebuttal.  (Doc. 832 at 11.)

15   Defendants' 26(a)(2)(C) disclosure regarding Dr. Hanstad was served on December 18,

16   2013.  (Doc. 732.)  Plaintiffs' dental expert, Dr. Shulman, has written two rebuttal reports

17   following Defendants' 26(a)(2)(C) disclosure regarding Dr. Hanstad.  (Doc. 770.)[10] Dr.

18   Shulman could have offered rebuttal in his January 31, 2014 or February 24, 2014 reports.

19   His failure to do so is not a valid basis to preclude Dr. Hanstad from testifying as a

20   26(a)(2)(C) expert.  Nonetheless, Defendants have no objection if the Court believes a

21   rebuttal report is necessary following Dr. Hanstad's deposition.

22          Plaintiffs additionally argue that Dr. Hanstad's testimony is duplicative of

23   Dr. Dovgan's and should be excluded as cumulative.  (Doc. 832 at 11.)  Even a cursory

24   glance at Dr. Hanstad's Rule 26(a)(2)(C) disclosure reveals the fallacy of Plaintiffs'

25   argument.  (Doc. 826, Ex. 6 at 56-63.)  Dr. Hanstad is a treating dentist at ADC and a

26   regional dental director.  His opinions as a 26(a)(2)(C) expert are based on his own

27          [10]   Plaintiffs failed to file a Notice of Service with the Court regarding Dr.
28   Shulman's February 24, 2014 supplemental report.

evaluation and treatment of ADC inmates, first-hand knowledge of policies and procedures, his supervision of dental staff, and his actual administration of the delivery of dental care in the northern region.  Dr. Dovgan is an independent expert who toured and inspected ADC facilities, audited dental charts, assessed dental policies and procedures, and interviewed dental, medical, and correctional staff regarding the delivery of dental care to ADC inmates.  Dr. Dovgan's opinions are based upon his findings as an outside evaluator.  While there is some overlap as to the topics of Dr. Hanstad's and Dr. Dovgan's opinions, the substance of their opinions is necessarily distinct as a result of their perspectives as a treating dentist and an independent expert.  Their opinions are neither duplicative nor cumulative of each other.  Regardless, this is an objection to be made at trial.[11]

## **CONCLUSION**

For these reasons, Defendants respectfully request this Court to reconsider its February 26, 2014 order, and grant the relief requested in their Motion.

---

[11] Plaintiffs retained <u>three</u> independent medical experts (Williams, Cohen, Wilcox) to all opine on medical conditions at ADC.

1    DATED this 28<u>th</u> day of March 2014.

2                                        STRUCK WIENEKE & LOVE, P.L.C.

3

4                                        By /s/ Nicholas D. Acedo
                                             Daniel P. Struck
5                                            Kathleen L. Wieneke
                                             Rachel Love
6                                            Timothy J. Bojanowski
                                             Nicholas D. Acedo
7                                            Ashlee B. Fletcher
                                             Anne M. Orcutt
8                                            STRUCK WIENEKE & LOVE, P.L.C.
                                             3100 West Ray Road, Suite 300
9                                            Chandler, Arizona  85226

10                                           Arizona Attorney General Thomas C. Horne
                                             Office of the Attorney General
11                                           Michael E. Gottfried
                                             Lucy M. Rand
12                                           Assistant Attorneys General
                                             1275 W. Washington Street
13                                           Phoenix, Arizona 85007-2926

14                                           *Attorneys for Defendants*

15   2882941.1

16

17

18

19

20

21

22

23

24

25

26

27

28

                                             11

**CERTIFICATE OF SERVICE**

       I hereby certify that on March 28, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amy Fettig: | afettig@npp-aclu.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| Daniel Joseph Pochoda: | dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| James Duff Lyall: | jlyall@acluaz.org; gtorres@acluaz.org |
| Cathleen M. Dooley: | cdooley@azdisabilitylaw.org |
| J.J. Rico: | jrico@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Kirstin T. Eidenbach: | keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; docketphx@perkinscoie.com |
| Jerica L. Peters: | jpeters@perkinscoie.com |
| Matthew Benjamin de Mee: | mdumee@perkinscoie.com; cwendt@perkinscoie.com |
| Michael Evan Gottfried: | Michael.gottfried@azag.gov; colleen.jordan@azag.gov; lucy.rand@azag.gov |
| Sara Norman: | snorman@prisonlaw.com |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| David C. Kiernan: | dkiernan@jonesday.com; lwong@jonesday.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Kamilla Mamedova: | kmamedova@jonesday.com |

12

Jennifer K. Messina:   jkmessina@jonesday.com

Taylor Freeman:   tfreeman@jonesday.com

Sarah Eve Kader:   skader@azdisabilitylaw.org, mlauritzen@azdisabilitylaw.org

Katherine E. Watanabe: Katherine.Watanabe@azag.gov, susan.oquinn@azag.gov

Amelia M. Gerlicher:   agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, pdrew@perkinscoie.com

Lucy Marie Rand:   Lucy.Rand@azag.gov, Geneva.Johnson-Joksch@azag.gov

Ajmel Quereshi:   aquereshi@npp-aclu.org

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/  *Nicholas D. Acedo*

13