Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>　　　　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>　　　　　　　　　　　　　Defendants. | NO. 2:12-cv-00601-NVW<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF RE: MOTION FOR RECONSIDERATION** |

Pursuant to the Court's Order (Dkt. 848) directing Defendants to articulate "with specificity the facts or developments that post-date discovery that are of high-probative value and will be relied upon to establish the absence of liability," Defendants submit the following.

### 1. Corizon Monthly Reports

Defendants seek to introduce as evidence the Corizon reports for October 2013, November 2013, December 2013, January 2014, February 2014, and March 2014. Corizon is required to produce these reports to ADC on a monthly basis, and they include gross data and statistics that are highly relevant to the class allegations certified by the Court. The October 2013 and November 2013 monthly reports were produced on December 18, 2013 with Defendants' Eleventh Supplemental Disclosure Statement ("SDS"); the December 2013 monthly reports were produced on February 10, 2014 with Defendants' Fourteenth SDS; the January 2014 monthly reports were produced on March 26, 2014 with Defendants' Sixteenth SDS, and the February 2014 monthly reports were produced on April 14, 2014 with Defendants' Seventeenth SDS. Defendants will produce the March 2014 monthly reports no later than April 25, 2014, as they are still being reviewed. As discussed below, these monthly reports are extremely relevant to establish the absence of liability.

#### a. Staffing Report

This report lists – for each facility – the full time equivalent ("FTE") positions that are filled, which positions are filled, and the percentage of contractually required positions that are filled, including positions for medical directors, staff physicians, administrators, nurse practitioners, RNs, LPNs, nursing assistants, lab technicians, x-ray technicians, pharmacy technicians, medical records staff, dentists, dental hygienists and assistants, psychiatrists, psychologists, psychological associates and technicians, and other medical staff. This report also lists those employees who were hired and terminated in the month. The staffing reports are relevant to Plaintiffs' class

claims alleging insufficient healthcare staffing and inadequate psychiatric monitoring because of chronic understaffing. And, really, they are relevant to all of the certified healthcare claims because Plaintiffs will likely argue that every alleged inadequacy stems from staffing. These reports will show that ADC's facilities are adequately staffed, and that the certified allegations are not systemwide. For example, the February 2014 report shows that the operating fill rate was 102%.

### b. Inmate Wait Times Report

This report lists – for each facility – the number of scheduled appointments and corresponding wait times (in days) for provider, nursing, dental, and mental health appointments. These reports are relevant to Plaintiffs' class claims alleging failure to provide timely access to healthcare, timely access to basic dental treatment, and necessary mental health treatment. Contrary to Plaintiffs' allegations, these reports will show that wait times fall within constitutional norms, and that any excessive wait times do not stem from a systemwide deficiency, but instead are isolated instances. For example, in February 2014, in eight of the ten facilities, the wait time to see a mental health provider was less than 10 days, the wait time to see a nurse was less than 2.3 days in seven of the ten facilities, and the average wait time to see a dentist for routine care was 30 days.

### c. Dental Wait Times Report

This report lists – for each facility – the wait times for routine dental treatment and treatment upon intake. These reports are relevant to Plaintiffs' class claim alleging failure to provide timely access to basic dental treatment because they refute Plaintiffs' claim that wait times for dental treatment are unconstitutional. For example, in February 2014, the average wait time for routine dental care at all facilities was approximately one month.

### d. Dental Utilization Report

This report lists – for each facility – the number of dental HNRs submitted, dentist patient visits, hygienist patient visits, intake exams, comprehensive exams, x-rays, fillings, simple extractions, surgical extractions, cleanings, dentures completed,

3

prescriptions, no shows, and refusals, and the routine and intake wait times. These reports are relevant to Plaintiffs' class claim alleging failure to provide timely access to basic dental treatment, and an alleged de facto tooth extraction policy, because they refute Plaintiffs' claim that wait times for dental treatment are unconstitutional and that inmates are not given the opportunity for a filing.

### e. Inmate Intake Report

This report lists – for each facility – the average time (in hours) to process newly-admitted/transferred inmates' health needs to ensure continuity of care. These reports are relevant to Plaintiffs' class claims alleging failure to provide timely access to healthcare, care for chronic diseases, medically necessary specialty care, and necessary medication and medical devices. These reports will show that ADC is timely processing inmates' healthcare needs upon admission into ADC custody. For example, in February 2014, inmates at Florence were processed in 24 hours, inmates at Tucson were processed in 12 hours, and inmates at Yuma were processed in 4.6 hours.

### f. Infectious Disease/Monthly Clinical Report

This report lists – for each facility – the total number of inmates with (and newly diagnosed with) various infectious diseases, including HIV, AIDS, Hepatitis A, B, and C, Active Tuberculosis, Tuberculosis, MRSA, and several sexually transmitted diseases. It also lists the number/percentage of inmates who were seen by a provider and who are receiving treatment for these diseases. These reports are relevant to Plaintiffs' class claims alleging failure to provide care for chronic diseases and protection from infectious diseases because it shows the total number of inmates who are receiving treatment for infectious diseases, as compared to the isolated allegations that Plaintiffs rely on; in other words, they will show that there is not a systemic deficiency.

### g. Monitored Conditions Report

This report lists – for each facility – the total number of inmates identified with, and seen by a provider for, cancer, hypertension, seizure disorder, heart disease, respiratory disorder, diabetes, serious mental illness, and pregnancy. It also lists the

4

number of inmates undergoing dialysis at each facility. These reports are relevant to Plaintiffs' class claims alleging failure to provide care for chronic diseases, and inadequate psychiatric monitoring because of chronic understaffing, because it shows the total number of inmates who are receiving treatment, as compared to the isolated allegations that Plaintiffs rely on; in other words, they will show that there is not a systemic deficiency.

### h. Inmate Suicide Report

This report lists the number of inmate suicides at each facility. These reports are relevant to Plaintiffs' class claims alleging failure to provide suicidal and self-harming prisoners basic mental health care, necessary mental health treatment, and extreme social isolation because they show that inmates are not committing suicide at an unconstitutional level. For example, in January 2014 and February 2014 combined, there was only one inmate suicide.

### i. Outside Consult Report

This report lists – for each facility – the number of outside consults approved, scheduled, completed, and pending approval. These reports are relevant to Plaintiffs' class claim alleging failure to provide medically necessary specialty care because they show how many inmates are receiving outside consultations, as compared to the isolated allegations Plaintiffs' rely on; in other words, they will show that there is not a systemic deficiency.

### j. HNR/Appointments Report

This report lists – for each facility – the number of medical, dental, and mental health HNRs (health needs requests) received, appointments scheduled, no shows, refusals, and appointments completed, and the average wait time for an appointment. These reports are relevant to Plaintiffs' class claims alleging failure to provide timely access to health care, timely access to basic dental treatment, insufficient healthcare staffing, and failure to provide necessary mental health treatment because they show the total percentage of HNR requests responded to and resolved timely as compared to the

isolated allegations Plaintiffs' rely on; in other words, they will show that there is not a systemic deficiency and that Defendants are not deliberately indifferent.

### k. Medical Transports Complex Report (Emergency Transports)

This report lists – for each facility – the number of medical emergency off-site transports by ambulance, van, or life flight. It also lists those inmates who were transported, the date and mode of transportation, why they were transported, and where they were transported to. These reports are relevant to Plaintiffs' class claims alleging failure to provide timely emergency treatment and timely access to healthcare because it shows the total number of inmates who received emergency transports/treatment, as compared to the isolated allegations that Plaintiffs rely on; in other words, they will show that there is not a systemic deficiency.

### l. Medical Transports Statewide Report (Outpatient Transports)

This report lists – for each facility – the number of off-site outpatient transports, and a list of those inmates who were transported. These reports are relevant to Plaintiffs' class claims alleging failure to provide medically necessary specialty care and timely access to healthcare because it shows the total number of inmates who received off-site specialty care, as compared to the isolated allegations that Plaintiffs rely on; in other words, they will show that there is not a systemic deficiency.

### m. Hospital Admission Report

This reports lists – for each facility – the number of inmates who were admitted to a hospital, the inmates' names, the length of their stay, the hospital they were admitted to, and the admitted and discharged diagnosis. These reports are relevant to Plaintiffs' class claims alleging failure to provide medically necessary specialty care, timely emergency treatment, and timely access to health care because they show the total number of inmates who are admitted to a hospital to medical treatment, as compared to the isolated allegations Plaintiffs' rely on; in other words, they will show that there is not a systemic deficiency.

### n. Special Accommodations Report

This report lists – for each facility – the number of inmates who are legally blind, deaf, or using wheelchairs, canes, or walkers. These reports are relevant to Plaintiffs' class claims alleging failure to provide necessary medical devices because it shows the total number of inmates who are in need of certain medical devices, as compared to the isolated allegations that Plaintiffs rely on; in other words, they will show that there is not a systemic deficiency.

### o. Medication Report

This report lists – for each facility – the number/percentage of inmates who are prescribed medication, the number/percentage of those inmates who are taking psychotropic medications, and the number of prescriptions issued (medical, psychotropic, and non-formulary). These reports are relevant to Plaintiffs' class claims alleging failure to provide necessary medication and necessary mental health treatment (psychotropic medication) because it shows the total number of inmates who are receiving prescriptions, as compared to the isolated allegations that Plaintiffs rely on; in other words, they will show that there is not a systemic deficiency.

### p. Grievance Report

This report lists – for each facility – the number of grievances filed regarding the quality of medical care, dental care, and mental health care, delay in care, medication, requests to be seen, staff conduct, and requests for off-site treatment. It further lists, for each grievance, the inmate's name, the date the grievance was signed and received, the date it was responded to, and the nature of the response. These reports are relevant to all of Plaintiffs' healthcare claims because they show the limited number of complaints that inmates actually have about the healthcare they are receiving. For example, in February 2014, there were only two grievances submitted that complained about the quality of mental health care, and only one grievance submitted that complained about the quality of dental care. They also show that ADC is responding to the healthcare grievances they do receive, which shows an absence of deliberate indifference.

### q. CAG, FAQ, PBMS Report

The CAG (Corrections at a Glance), FAQ (Frequently Asked Questions), and PBMS (Performance Based Measures System) Report is a compilation of measures that reports the number of: hospital admissions (for each facility); inmates with HIV, AIDS, MRSA (for each facility), Tuberculosis, and Hepatitis C; inmate medical deaths; inmates treated for an emergency condition (for each facility); van, ambulance, and air emergency transports; specialty consults ordered (for each facility); off-site specialty appointments completed (for each facility); AHCCCS applications completed; medical grievances submitted (for each facility); health needs requests received; inmates attending peer education groups; inmate prescriptions; inmates currently undergoing dialysis; inmates assessed by a mental health professional; and inmates diagnosed with an Axis I mental health disorder receiving treatment. These reports are highly relevant for the reasons stated above.

### r. Medical Malpractice and Certification/Licensing Reports

The medical malpractice report identifies any malpractice claims filed against any ADC/Corizon providers. The certification/licensing report identifies board action taken against any ADC/Corizon providers. These reports are relevant to all of Plaintiffs' healthcare claims because they show that, despite their numerous isolated allegations of inadequate healthcare, they simply do not rise to the level of medical malpractice or even license suspension, much less deliberate indifference.

## 2. Corizon Quarterly Reports

Defendants seek to introduce as evidence the Corizon quarterly reports for October 2013–December 2013 and January 2014–March 2014. Corizon is required to produce these reports to ADC on a quarterly basis, and they include the information in the Infectious Disease, Monitored Conditions, and Hospital Admissions Reports for the entire quarter. These reports are relevant for the reasons stated above. Defendants produced the October 2013–December 2013 quarterly reports on February 10, 2014, with their

Fourteenth SDS.  Defendants can produce the January 2014–March 2014 quarterly reports by than April 30, 2014.

### 3. ADC Monthly MGAR Reports

Defendants seek to introduce as evidence the monthly Medical Green Amber Red Reports ("MGAR") for October 2013, November 2013, December 2013, January 2014, February 2014, and March 2014.  The MGARs are generated by the Health Services Monitoring Bureau for each ADC complex regarding levels of compliance with contract criteria and relating to contract performance, timeliness of care, and adherence to ADC policies.  The MGARs measure contract compliance of issues relating to staffing, timeliness of intake assessments, sick call treatment, and mental health treatment, specialty care and devices, emergency services, chronic care, infirmary care, record keeping, medication practices and administration, mental health treatment, facility-transfer screenings (reviewing medications, records, etc.), Corizon's monitoring, and communication with ADC staff regarding inmates' needs.  These performance measures are assessed by ADC's facility monitors, and each measure receives a green, amber, or red score, along with specific notes relevant to the monitor's finding.  These monthly reports are submitted to Corizon for their review, and Corizon provides a proposed Corrective Action Plan ("CAP") in response to reported contract-compliance issues.

These reports are relevant because they track contract performance measures relating to the very subject matters in this lawsuit.  They further demonstrate that ADC is closely monitoring these contract performance measures and taking affirmative steps to cure any contract non-compliance; in other words, they show that Defendants are not deliberately indifferent to inmates' healthcare needs.  Defendants produced the MGARs for October 2013, November 2013, and December 2013 on January 22, 2014.  Defendants can produce the MGARs for January 2014, February 2014, and March 2014 no later than April 25, 2014.

9

### 4.     Named Plaintiffs' Healthcare and Institutional Records

Defendants seek to introduce as evidence the named Plaintiffs' healthcare and institutional records for October 2013, November 2013, December 2013, January 2014, February 2014, and March 2014. Their healthcare records include any medical, dental, and mental health treatment they have received during these months, including provider appointments, outside specialist appointments, laboratory results (including tests to monitor psychotropic medication levels), diagnostic tests, participation in individual/group mental health therapy, prescription medication (including non-formulary) administration records. Their institutional records include detention records (including recreation logs and other out-of-cell time), information reports (documenting non-serious incidents), serious-incident-reports (documenting serious incidents), use-of-force reports (documenting use-of-force incidents), grievances filed, and classification documents.

Plaintiffs' healthcare records are relevant to all of the healthcare claims because they show that they have and are continuing to receive adequate healthcare, and therefore, as representatives of the class they represent, their claims are not based on systemic deficiencies. Plaintiffs' institutional records are relevant to their subclass allegations of lack of recreation, limited property, insufficient nutrition, and extreme social isolation because they show either the limited time in which they were in a maximum custody/watch cell or that the conditions of their confinement during that time did not violate their Eighth Amendment rights because they did receive, for example, adequate recreation or ample out-of-cell time. They also detail the circumstances surrounding any use-of-force incidents involving chemical agents to show there were legitimate penological justifications for the force used, and further provide justification for their placement in maximum custody. The healthcare records for all Plaintiffs except for Smith were produced on April 14, 2014 in Defendants Seventeenth SDS. Defendants can produce the medical records for Smith no later than April 25, 2014.

### 5. <u>NCCHC Accreditation Reports</u>

Defendants seek to introduce as evidence the accreditation issued to ADC's Tucson facility by the National Commission on Correctional Health Care ("NCCHC"). On February 6, 2014, the NCCHC awarded ADC's Tucson facility a Continuing Accreditation with Verification, contingent upon receiving requested compliance verification with several standards. The NCCHC is committed to improving the quality of health care in prisons, and provides standards for the provision of health services based on external peer review. *See* http://www.ncchc.org/about. Accreditation surveys and reports are done for each individual corrections facility. ADC-Tucson was found to be in compliance with 34 of 37 (92%) essential standards and 28 of 29 (97%) important standards. This is relevant to refute Plaintiffs' claims of inadequate healthcare, as the NCCHC has found Tucson to be in compliance with 62 of 66 standards. ADC informally produced this report to Plaintiffs on March 21, 2014, and formally produced it with their Seventeenth SDS on April 14, 2014.

### 6. <u>Corizon Contract Amendments</u>

Defendants seek to introduce as evidence two Amendments to the Corizon contract, executed in February/March 2014. One Amendment provides a roll-out schedule for ADC's Electronic Health Records ("EHR"). EHR is scheduled to go live at ADC-Perryville on April 15, 2014, and at the remaining facilities in subsequent months. The second Amendment modifies the performance measure criteria for the MGARs. These Amendments are relevant to refute Plaintiffs' claims of inadequate healthcare, as they show that ADC is continuing to perfect the care they provide. Defendants produced these Amendments on April 14, 2014, with their Seventeenth SDS.

### 7. <u>Mental Health Services Technical Manual</u>

Defendants seek to introduce as evidence modifications to ADC's Mental Health Services Technical Manual. The Manual was revised on January 1, 2014, and revised procedures for: reporting monthly statistics (Ch. 1, Sec. 2.0); reviewing medical

11

records of inmates arriving into a unit (Ch. 1, Sec. 4.0); re-classification of and treatment for all mental health levels (Ch. 2, Sec. 1.0); management of SMI inmates (Ch. 2, Sec. 2.0); triaging health needs requests (Ch. 2, Sec. 4.0); treatment for MH-3 minors (Ch. 2, Sec. 5.0); mental health watch and follow-up protocol (Ch. 2, Sec. 6.0 & Sec. 8.0); mental health follow-up in peripartum (Ch. 2, Sec. 9.0); treatment for protective custody inmates and inmates in the Men's and Women's Treatment Units (Ch. 2, Sec. 10.0, Ch. 3, Sec. 1.0); programming for maximum custody inmates and inmates in the Behavioral Management Unit and Rincon Mental Health Program (Ch. 3, Sec. 4.0); initial mental health assessment (Ch. 4, Sec. 1.0); mental health treatment plans (Ch. 4, Sec. 3.0); psychological autopsies (Ch. 4, Sec. 5.0); RN follow-ups (Ch. 5, Sec. 2.0); medication management during and after watch (Ch. 5, Sec. 4.0); inmate follow-up after discontinuation of psychiatric medication (Ch. 5, Sec. 8.0); and management of heat intolerance reactions to medications (Ch. 5, Sec. 11.0). Defendants produced this on January 22, 2014.

Within the next two weeks, ADC will be revising the Manual again to correct mainly grammatical issues, and also to provide additional substantive revisions, including: (1) a psychiatric provider is required to follow up with an inmate taking forced medication once every 30 days, with an SMI inmate every 90 days, and all other inmates at least every 180 days; (2) watch follow-up visits will be converted to a range of days rather than a specific date; (3) inmates new to a complex will be seen within 5 days by a psychology associate or psychologist, and inmates new to a unit within a complex will be seen within 30 days; (4) mental health treatment as reflected in DI 326; and (5) procedures for mental health evaluations before beginning Hepatitis C treatment. Defendants can produce this revised Manual no later than April 25, 2014.

The revisions to the Manual are relevant to Plaintiffs' mental health claims because they show that ADC is continuing to perfect the provision of mental health care. It also shows the practices that mental health staff are required to follow.

### 8. Medication Administration Modifications

Defendants seek to introduce evidence of several modifications to medication administration implemented after September 2013: (1) beginning in November 2013, HIV medications are automatically renewed through an automatic renewal system; (2) beginning in March 2014, Corizon is issuing a report mid-month to report expiring medications in the following month, followed by progressive reports on the 1st, 15th, and 25th of the month in which they expire, and a designated nurse is responsible for arranging an appointment with a provider before they actually expire; (3) beginning in October/November 2013, a system was put in place to streamline the approval of non-formulary prescription; and (4) in an effort to reduce self-harming incidents, ADC has increased the types of medications that are "watch swallow" required, and the number of staff to observe the "watch swallow" process, as well as implemented a policy requiring inmates who have overdosed to always take medication through the "watch swallow" process. These modifications are relevant to refute Plaintiffs' class allegations of failure to provide necessary medication, failure to provide necessary mental health treatment (psychotropic medication), and failure to provide suicidal and self-harming inmates basic mental health care because it shows that ADC has taken steps to reduce self-harm incidents.

### 9. Director's Instruction 326

Defendants seek to introduce evidence of Director's Instruction ("DI") 326, which went into effect on March 27, 2014. DI 326 creates a step program for maximum custody inmates that provides them an opportunity for more out-of-cell activities based on their behavior and programming. As they comply with the program's three steps, inmates are afforded greater opportunities for recreation, work, in-cell property, visitation, phone calls, programming, and other out-of-cell time. DI 326 also provides additional treatment/programming for inmates MH-3 and above. This evidence is relevant to refute Plaintiffs' class allegations of failure to provide necessary mental health treatment,

extreme social isolation, and lack of recreation and property because it demonstrates that inmates are receiving adequate treatment, programming, and out-of-cell time. Defendants produced the DI 326 to Plaintiffs on April 8, 2014.

### 10.   Electronic Health Records

Defendants seek to introduce evidence of ADC's EHR system, which is set to roll out at ADC-Perryville on April 15, 2014. Under the system, all health records will be entered electronically beginning on the day that the EHR system is implemented at each facility. The EHR system includes coordination between multiple systems, including outside specialist requests, medication prescriptions, and laboratory orders and results so that these requests can be received instantaneously and tracked electronically. This evidence is relevant to Plaintiffs' class allegations of timely access to healthcare, and failure to provide timely access to medically necessary specialty care and medication, because it shows that ADC is working to perfect timely access to healthcare.

### 11.   Crisis Intervention/Suicide Prevention

Defendants seek to introduce evidence of the recent implementation of crisis intervention/suicide prevention training to staff, and the addition of security "rovers" in certain units. This evidence is relevant to Plaintiffs' mental health claims, including their claims regarding inadequate care for self-harming and suicidal inmates, and extreme social isolation.

### 12.   Capital Improvements to Maximum Custody Recreation Enclosures and Cells

Defendants seek to introduce evidence of capital improvements to certain maximum custody recreation enclosures, including painting the inside of the enclosures white, and installing metal tubing in between the adjoining, mesh-wired enclosures to prevent inmates from breaking through. ADC is also in the process of installing windows in cell doors that previously consisted of an expanded metal front with perforated holes that made visibility into the cell difficult. It is also installing shade awnings for the pill call lines at some facilities. This evidence is relevant to Plaintiffs' class allegations of

failure to provide timely emergency treatment, extreme social isolation, failure to provide suicidal and self-harming prisoners basic mental healthcare, and necessary mental health treatment.

### 13. Group Programming Enclosures

Defendants seek to introduce evidence of modifications to group programming enclosures. ADC is currently in the process of implementing group programming desks (in place of individual enclosures) for maximum custody inmates. The desks have been purchased and they are expected to be delivered around July 1, 2014. This evidence is relevant to Plaintiffs' class allegations of failure to provide necessary mental health treatment and extreme social isolation.

### 14. Defendants' Expert Reports

Defendants seek to introduce as evidence their experts' opinions regarding ADC healthcare and conditions of confinement, including any opinions based on evidence that post-date September 27, 2013.  This would essentially require the admission of this post-September 2013 evidence.  This was the genesis for Plaintiffs' motion to strike these expert opinions. (Doc. 753.) Plaintiffs' motion outlined the evidence relied upon by Defendants' experts in their reports that post-dated the September 27, 2013 discovery deadline, which included: evidence gathered during their expert tours (including interviews with staff and records reviewed),[1] grievances, Corizon reports relating to wait times, staffing, and medication, dental reports, NCCHC update reports, training programs, Plaintiffs' institutional records, facility lay-out maps, time sheets, inmate-death data, detention reports, the EHR system, the CareLog database, cell and recreation enclosure improvements, new programming, and maximum custody modifications.  (Doc. 753–1.)[2] All of this evidence recited in Defendants' expert reports is relevant to Defendants'

---

[1] All of Defendants' expert tours occurred after September 27, 2013. Dr. Penn, Defendants' mental health expert, toured the Yuma facility on March 24, 2014, and supplemented his opinions with that evidence in his March 26, 2014 supplemental expert report.

[2] For brevity, Defendants incorporate that list of evidence herein.

15

defense, as it was specifically relied upon by their experts to formulate their opinions. Defendants produced their experts' reports on December 18, 2013, and their experts' supplemental reports on March 26, 2014.

## CONCLUSION

The aforementioned evidence is directly relevant to establishing the lack of liability in this case, and will provide this Court with a more accurate picture of the provision of healthcare and conditions of confinement at ADC. And allowing Defendants to admit this evidence at trial will alleviate the prejudice resulting from its prior September 2013 cut-off-date ruling. For these reasons, and the reasons articulated in Defendants' Motion for Reconsideration and Reply, Defendants respectfully request an extension of the cut-off date to at least April 1, 2014, to allow for the admission of this evidence at trial.

DATED this 14th day of April 2014.

STRUCK WIENEKE & LOVE, P.L.C.


By /s/  Nicholas D. Acedo
    Daniel P. Struck
    Kathleen L. Wieneke
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    Ashlee B. Fletcher
    Anne M. Orcutt
    STRUCK WIENEKE & LOVE, P.L.C.
    3100 West Ray Road, Suite 300
    Chandler, Arizona  85226

    Arizona Attorney General Thomas C. Horne
    Office of the Attorney General
    Michael E. Gottfried
    Lucy M. Rand
    Assistant Attorneys General
    1275 W. Washington Street
    Phoenix, Arizona 85007-2926

*Attorneys for Defendants*

2890389.1

# CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amy Fettig: | afettig@npp-aclu.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| Daniel Joseph Pochoda: | dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| James Duff Lyall: | jlyall@acluaz.org; gtorres@acluaz.org |
| Cathleen M. Dooley: | cdooley@azdisabilitylaw.org |
| J.J. Rico: | jrico@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Kirstin T. Eidenbach: | keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; docketphx@perkinscoie.com |
| Jerica L. Peters: | jpeters@perkinscoie.com |
| Matthew Benjamin de Mee: | mdumee@perkinscoie.com; cwendt@perkinscoie.com |
| Michael Evan Gottfried: | Michael.gottfried@azag.gov; colleen.jordan@azag.gov; lucy.rand@azag.gov |
| Sara Norman: | snorman@prisonlaw.com |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| David C. Kiernan: | dkiernan@jonesday.com; lwong@jonesday.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Kamilla Mamedova: | kmamedova@jonesday.com |

| | |
|---|---|
| Jennifer K. Messina: | jkmessina@jonesday.com |
| Taylor Freeman: | tfreeman@jonesday.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org, mlauritzen@azdisabilitylaw.org |
| Katherine E. Watanabe: | Katherine.Watanabe@azag.gov, susan.oquinn@azag.gov |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, pdrew@perkinscoie.com |
| Lucy Marie Rand: | Lucy.Rand@azag.gov, Geneva.Johnson-Joksch@azag.gov |
| Ajmel Quereshi: | aquereshi@npp-aclu.org |
| Jessica Jansepar Ross | jross@azdisabilitylaw.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ Nicholas D. Acedo