## Appendix A:  Discovery to Address Specific Facts and Developments

Below, Plaintiffs identify the discovery they request to respond to the specific facts and developments identified in Defendants' supplemental brief (Doc. 851).  For each item below, to the extent Defendants intend to offer expert testimony to establish the item, or comment on its significance, Plaintiffs seek to depose that expert.  Additionally, the requests assume the Court will enforce a cutoff no later than April 1, 2014.  If the Court allows introduction of evidence generated after April 1, then the time period for Plaintiffs' request would extend correspondingly.

**Medical Care**

| New Facts Identified by Defendants | Source of Supporting Evidence | Plaintiffs' Rebuttal Discovery |
|---|---|---|
| In February 2014, at 7 of 10 facilities, wait time to see a nurse was less than 2.3 days. (p. 3) | February 2014 Inmate Wait Times Report | Deposition of 30(b)(6) witness on wait times; Documents[1] showing method to compute and define wait times and documents relied upon to calculate wait times; Corrective Action Plans (CAPs) regarding wait time for 9/27-4/1; Documents from 9/27 to 4/1 discussing changes in wait times. |
| From October 2013 to March 2014 changes were made to (1) automatically renew HIV medications; (2) report expiring medications on a regular schedule and a nurse is tasked with arranging a provider appointment before expiration; (3) streamline non-formulary prescription approval; (4) increase medication that are "watch swallow" and implement "watch swallow" following an overdose.  (p. 13) | **Unidentified** ("Defendants seek to introduce evidence of several modifications to medication administration implemented after September 2013") | Deposition of pharmacy monitor and Corizon nursing director; Documents from 9/27 to 4/1 referring to the identified changes, compliance or failure to comply with changes, and training on same; CAPs regarding medication administration for 9/27 - 4/1; Random sample of medical files of HIV positive prisoners; Names of prisoners whose medication delivery fell within scope of (1)-(4) through 4/1; Tour by Dr. Cohen or Dr. Wilcox. |
| ADC is installing shade awnings for pill call lines at some facilities.  (p. 14) | **Unidentified** ("Defendants seek to introduce evidence of capital improvements") | Documents sufficient to show location of awnings; Tour by Dr. Cohen or Dr. Wilcox |

---

[1] Plaintiffs' requests for documents seek production by ADC and the provider responsible for providing the related care, e.g., Corizon for medical care or Smallwood for dental care.  The word "documents" is defined in Plaintiffs' past discovery requests.

SFI-859163v2

**Mental Health/Isolation**

| New Facts Identified by Defendants | Source of Supporting Evidence | Plaintiffs' Rebuttal Discovery |
|---|---|---|
| In February 2014, in 8 of 10 facilities, wait time to see mental health provider was less than 10 days.  (p. 3) | February 2014 Inmate Wait Times Report | Deposition of 30(b)(6) witness on mental health wait times; Documents showing method to compute and define wait times and documents relied upon to calculate the wait times; CAPs regarding mental health wait time for 9/27-4/1; Documents from 9/27 to 4/1 discussing changes in wait times. |
| In January and February 2014 combined, there was one inmate suicide.  (p. 5) | January and February 2014 Inmate Suicide Report | Documents sufficient to show the cause of death for all deaths in January and February; Suicide rates in November-December 2013, March 2014; Medical records, mortality reviews, and psych autopsies for all prisoners who committed suicide up to 4/1/14 that were not previously produced |
| In February 2014, only two grievances complained about quality of mental health care. (p. 7) | Grievance Report for February 2014 | Inspection of all February 2014 grievances; Data on number of grievances from 9/27/13-4/1/14 |
| The Mental Health Services Technical Manual was updated with 17 substantive policy changes.  (pp. 11-12).[2] | Modifications to the Mental Health Services Technical Manual; | Deposition of 30(b)(6) witness on changes to manual; Documents discussing the 17 substantive changes; documents sufficient to show implementation of the changes; Observation tour of new programs, class member interviews, and record review by Dr. Stewart and Dr. Haney. |

---

[2] Defendants state that they plan to make five additional substantive changes to the manual "[w]ithin the next two weeks," which is obviously beyond the April 1, 2014 cutoff.

| New Facts Identified by Defendants | Source of Supporting Evidence | Plaintiffs' Rebuttal Discovery |
|---|---|---|
| Crisis intervention/suicide prevention training for staff was recently implemented and security "rovers" were added in certain units (p. 14) | **Unidentified** Only references new facts, not source of evidence | Deposition of 30(b)(6) witness on suicide prevention and "rover" position; Documents discussing the changes; Observation tour of new programs and class member interviews by Dr. Haney and Mr. Vail. |
| Pursuant to DI 326 maximum custody inmates have opportunity for out-of-cell activities, based on behavior and programming; additional treatment and programming options for inmates who are MH-3 and above. (p. 13) | Director's Instruction 326, implemented on 3/27/14. | Deposition of 30(b)(6) witness on DI 326; documents discussing the changes in policy; documents sufficient to show implementation of the new policy; Observation tour of new programs and class member interviews by Dr. Haney and Mr. Vail. |
| Capital improvements to maximum custody recreation enclosures and cells, including painting and installation of metal tubing in recreational enclosures.[3] (p. 14) | **Unidentified** ("Defendants seek to introduce evidence of capital improvements . . .") | Deposition of 30(b)(6) witness on exercise available to class members in isolation; Documents discussing the need for the new construction; Documents sufficient to show the budget, timetable, and location of construction and availability of exercise to class members; Observation of new construction by Mr. Vail, Dr. Haney, and Dr. Williams. |
| ADC currently implementing group programming desks (in place of individual enclosures) for maximum custody inmates (p. 15) | **Unidentified** ("Defendants seek to introduce evidence of modifications to group programming enclosures . . .") | Deposition of 30(b)(6) witness on group programming available to class members; Documents discussing the need for the new construction; Documents sufficient to show the budget, timetable, and location of construction and availability of group programming to class members; Observation of new construction by Mr. Vail and Dr. Haney. |

---

[3] Defendants state that they are "in the process" of installing windows on maximum custody cell doors, which obviously runs past the proposed April 1, 2014 cut-off date.

**Dental**

| New Facts Identified by Defendants | Source of Supporting Evidence | Plaintiffs' Rebuttal Discovery |
|---|---|---|
| In February 2014, in 8 of 10 facilities, average wait time to see a dentist for routine care was 30 days, (p. 3) and in February 2014 the average wait time for routine dental care at all facilities "was approximately one month." (p. 3) | February 2014 Inmate Wait Times Report; February 2014 Dental Wait Times Report | The routine care list at each facility as it existed on the day the report was run, including date of request; January list of all dental appointments conducted, including the reason, date of request, and date seen; Approximately 40 dental records per facility of patients recently seen for routine care (selected from above appointment list). |
| In February 2014, only one grievance complained about quality of dental care. (p. 7) | February 2014 Grievance Report | Inspection of all February grievances; Data on grievances from 9/27-4/1. |

**Operational**

| New Facts Identified by Defendants | Source of Supporting Evidence | Plaintiffs' Rebuttal Discovery |
|---|---|---|
| A February 2014 staffing report shows an operating fill rate of 102%. (p. 3) | February 2014 Staffing Report | Deposition of 30(b)(6) witness on health care staffing; Documents sufficient to show if positions and hours are filled by temporary agency staff and/or via overtime hours. Documents sufficient to show the length of time these positions were vacant from 9/27 to 4/1; CAPs regarding staffing from 9/27 to 4/1; Documents from 9/27 to 4/1 discussing staffing. |

SFI-859163v2 4

| New Facts Identified by Defendants | Source of Supporting Evidence | Plaintiffs' Rebuttal Discovery |
|---|---|---|
| In February 2014, Florence inmates were processed in 24 hours; at Tucson in 12 hours; at Yuma in 4.6 hours.  (p. 4) | February 2014 Inmate Intake Report | Names of prisoners who were intakes or transfers to Florence, Tucson, and Yuma in Feb. 2014, and copies of their medical files from date of intake/transfer through April 1; CAPs regarding health care exams at intake/transfer; Documents from 9/27 to 4/1 discussing intake/transfer exams. |
| Accreditation survey found ASPC-Tucson is in compliance with 34 of 37 (92%) essential standards; 28 of 29 (97%) important standards (p. 11) | February 2014 National Commission on Correctional Health Care Accreditation Report | All documents and medical files reviewed by NCCHC auditors; Documents from 9/27 to 4/1 discussing the Tucson audit. |
| Amendments to Corizon contract (1) to modify the performance measure criteria used by ADC in their MGARs; and (2) to provide the schedule for Electronic Health Records.[4]  (p. 11) | February/March 2014 Corizon Contract Amendments | All drafts of proposed changes to the MGAR performance measurements used by ADC; Documents from 9/27 to 4/1 discussing these two changes to the contract. |

---

[4] Defendants state that Perryville will "go live" on April 15, 2014 and other facilities "in subsequent months;" both developments are anticipated after April 1, 2014.