Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-NVW<br><br>**DEFENDANTS' REPLY IN SUPPORT OF SUPPLEMENTAL BRIEFS RE: MOTION FOR RECONSIDERATION** |

The Court provided Plaintiffs an opportunity to detail "the targeted and focused discovery that is necessary to probe [Defendants'] proposed new evidence." (Doc. 848.) Their submission, however, was designed to give the Court a headache: obfuscate the inquiry, overload with a parade of horribles, and hope the Court simply throws its hands up and summarily denies Defendants' Motion out of frustration. Plaintiffs make outrageous and false assertions, including accusing Defendants of attempting to inject "a constant stream of new evidence into this case" (id. at 3:5-6), intending "to have at least some of their experts conduct additional prison tours" (id. at 5:9), and planning "to use an extension of the discovery cut-off to litigate an entirely different time period than that which has been the focus of the litigation" (id. at 5:19-20). None of this is true, of course.[1] In addition, Plaintiffs' proposed discovery, which is relegated to an appendix, is neither targeted nor focused, and it is clearly intended to deter any further consideration of the Court's proposed cut-off date.

Defendants' Motion for Reconsideration and Reply outlined the necessity of extending the liability cut-off date and the severe prejudice Defendants will suffer if it is not extended. They also outlined the post-September 2013 evidence that was extremely relevant/highly probative to their defense of this case. Defendants' Supplemental Briefs articulated, with specificity, what that evidence consisted of and its correlation to specific certified claims. This Reply clears the waters that Plaintiffs have muddied, and provides a

---

[1] During Dr. Seiter's deposition, Plaintiffs' counsel asked him if he had subsequently verified whether Perryville implemented a contact-visit policy; he responded he had not been back to the facility since his tour, and added that he "would like to go back between now and the next time we talk or we go to trial or whatever" so if Plaintiffs' counsel asks him at trial if he had verified certain things following his tour he would be able to answer. (Ex. 1 at 212-215.) Similarly, during Dr. Penn's deposition, he was specifically asked by Plaintiffs' counsel whether he planned "to visit any ADC institutions in connection with this case between now and the trial of this case." (Ex. 2 at 57.) He responded, "I think it would be nice to be able to go back and – and either do a more focused study or survey of facilities where there was a question or concern," but added that he was not sure "whether it can happen." (Id.) As the Court can see, these were remarks by retained experts, not Defendants. They were also those experts' personal hopes. There are no tours scheduled for any of Defendants' experts, nor do Defendants intend to have their experts conduct additional tours for the purpose of acquiring liability evidence for trial given the current cut-off date and the proposed cut-off date.

reasonable, fair, and focused discovery schedule for the Court to adopt.

### A. Defendants' Supplemental Brief Complied with Both the Plain Language and Purpose of the Court's Order.

More than half of Plaintiffs' Response is devoted to re-characterizing the Court's order for supplemental briefing and arguing that Defendants' Supplemental Brief failed to comply. They contend that Defendants were required to itemize each individual newly-proffered fact and explain why they would be prejudiced if the fact was excluded at trial. This is a strained and illogical interpretation of the Court's Order.

Defendants' Motion for Reconsideration exhaustively described not only the highly-probative liability evidence that post-dated the September 27, 2013 fact-discovery deadline, but also explained why Defendants would be severely prejudiced if they were prohibited from introducing that evidence at trial for purposes of liability. (See Doc. 826 at 3–4: explaining why "both parties and the court have been operating on the assumption that ongoing evidence of ADC care and conditions would be admissible at trial for purposes of liability"; at 4–7: discussing why "Evidence of Current Conditions and Care is Necessary to Defend Against a Claim for Prospective Injunctive Relief"; at 8 (detailing and explaining that "Evidence of ADC Healthcare and Conditions After September 2013 is Particularly Relevant to Plaintiffs' Claims"; at 9–13 (providing various reasons why "Precluding More Current Evidence is Severely Prejudicial to Defendants".) Plaintiffs' Response to the Motion did not dispute *any* of this. (Doc. 832; Doc. 839 at 2–4.)

In its April 8, 2014 Order, the Court recognized the prejudice Defendants would suffer if they could not rely on the proffered post-September 2013 evidence. (See Doc. 848 at 2: "[t]he Court recognizes the potential for unfairness in not allowing Defendants' experts to use any evidence or data that post-dates the discovery deadline.") Thus, it stated, it would "consider allowing an extension of that cut-off up to April 1, 2014," after reviewing Defendants' Supplemental Brief "articulating with specificity the facts or developments that post-date discovery that are of high-probative value and will be relied upon to establish the absence of liability." (Id. at 2, emphasis added.) Since

2

Defendants had already listed, generally, what evidence it had sought to offer at trial and described the prejudice it would endure if it was not permitted, they construed the Order as requiring a more refined list and description of the evidence so that Plaintiffs could detail "the targeted and focused discovery that [was] necessary to probe that new evidence," and the Court could decide "whether or not to allow reliance on evidence that post-dates discovery <u>and, if so, what limited discovery will be allowed to probe that evidence</u>." (Id., emphasis added.) Nothing in the Order required Defendants to re-argue prejudice. That point was already made and acknowledged by the Court. Nor did the Order require Defendants to list out every individual fact that was included within a post-September 2013 development.

Consistent with the letter and purpose of the Order, Defendants articulated in detail 16 items of evidence they intend to rely on at trial to establish the absence of liability, and for each item, Defendants explained exactly what the evidence consists of, which class claims it is relevant to, and why it is highly probative of their defense. (Doc. 851, 857.) Significantly, Plaintiffs do not contend that any of Defendants' proffered evidence is not highly probative, and they seemingly admit that the proffered evidence is relevant to "virtually every disputed issue in this case." (Doc. 858 at 4:16-5:8.) Their individual attacks on Defendants' proposed new evidence are unavailing.

### 1. Corizon Monthly and Quarterly Reports, and ADC Monthly MGAR Reports

Plaintiffs contend that merely articulating a "jumble of reports" with a "generic description of what the reports track" with "little or no discussion of what this evidence will specifically show" was insufficient to comply with the Court's Order. (Doc. 858 at 2.) This is a grossly inaccurate characterization of these reports. Defendants identified which reports they wanted to rely on (by date), and for each report they described what data was included in the report, why that data was relevant to Plaintiffs' claims, and why it was necessary for Defendants' defense. Defendants also informed which reports had already been produced (and were in Plaintiffs' possession), and an

3

anticipated production date for the remainder. This description provided the Court with enough information to understand the nature of the reports, and why the reports are highly probative. More importantly, the information allowed Plaintiffs to articulate what discovery they needed to conduct to test this new evidence (which they did in their appendices). Indeed, Defendants have been producing these reports to Plaintiffs for quite some time; they know what they are, and they understand that they are highly probative (as they do not assert otherwise). Defendants have attached the February 2014 Corizon Monthly Reports (Ex. 3), the October 2013–December 2013 Corizon Quarterly Report (Ex. 4), and the October 2013 MGAR Report (Ex. 5), so the Court can see for itself that the relevance (and high-probative value) of this evidence is self-evident.

What Plaintiffs are really arguing is that Defendant should have described the actual data within each report. (Doc. 858 at 2:20-25, 4:13-15.) So, for example, describing the contents of the staffing reports (and their relevance) was not good enough; instead, Defendants should have described what each report said. That would have required Defendants to itemize the operating fill rates for 34 health care positions, for all 10 facilities, for 6 months. And that is just the Corizon monthly staffing report; a similar exercise would have been necessary for the other 17 Corizon monthly reports, some of which contained even more data. Describing the monthly MGAR Reports in this manner would have required an itemization of approximately 90 performance measures, for all 10 facilities, for 6 months. Defendants do not believe that is what the Court contemplated. Doing so would have required hundreds of pages. And it was not necessary to accomplish the purpose of supplemental briefing: to articulate the universe of new evidence and determine what discovery was necessary to test that evidence.

**2. Named Plaintiffs' Healthcare and Institutional Records**

Defendants' Supplemental Brief thoroughly detailed which records they wanted to rely on (by date) and what they included, and explained why they are highly probative. Plaintiffs again complain, however, that Defendants were required to identify a

4

"specific fact from those records that would help their defense." (Doc. 858 at 4:10-12.) Like their complaint about the monthly/quarterly reports, Plaintiffs argue that Defendants should have restated what all of the records say. (Id.) That would have been an impossible task in the time allotted, and it was neither required nor necessary. Plaintiffs themselves are familiar with the happenings of their care and incarceration. The records merely document their care and detention. This was more than sufficient to allow Plaintiffs to articulate the discovery they needed to test this evidence.

### 3. Medication Administration Modifications and Capital Improvements to Maximum Custody Recreation Enclosures and Cells.

With respect to these items of evidence, Plaintiffs argue that Defendants "do not specify the evidence they want to introduce" and provide only "broad topics, with no mention of what that evidence will be." (Doc. 858 at 4:2-9.) But Plaintiffs quote only the lead-in sentences for these items in Defendants' Supplemental Brief, and ignore the specific evidence that Defendants subsequently outlined in detail. (Doc. 851 at 13:3-14, 14:23-28.) Regarding the capital improvements, Plaintiffs further argue that Defendants intend to "offer evidence of developments after April 1, some of which have yet to occur," in contravention of the Court's proposed April 1 cut-off date. (Doc. 5:11-15.) This is also not true. Presumably relying on Defendants' assertions that ADC is "in the process of" modifying cell doors and "installing shade awnings for the pill call lines at some facilities," Defendants clarify for Plaintiffs that they intend only to introduce as evidence the fact that these modifications were conceived prior to April 1, 2014, the plan for those modifications, and any modifications that were in fact completed by April 1, 2014.

### 4. Electronic Health Records, Mental Health Technical Manual, and Group Programming Enclosures

With respect to these items of evidence, Plaintiffs similarly accuse Defendants of attempting to introduce evidence that post-dates the proposed April 1 cut-off. (Doc. 858 at 11-14.) Defendants again clarify for Plaintiffs that they intend only to introduce as evidence the fact that these programs/revisions/modifications were conceived

5

prior to April 1, 2014, a description of, and the plan for, those programs/revisions modifications, and any programs/revisions/modifications that were in effect/completed by April 1, 2014. Regarding the pending revision to the Mental Health Technical Manual that is mentioned at page 12:15-24 of the Supplemental Brief, that revision is now final and effective April 18, 2014. Defendants will disclose that revised Manual to Plaintiffs no later than April 25, 2014. Defendants request that they be permitted to introduce as evidence this revised Manual and the revisions therein.

### 5. All remaining items of evidence

Plaintiffs do not take issue with Defendants' proffer of the February 6, 2014 NCCHC accreditation (Tucson), the Corizon Contract Amendments, Director's Instruction 326, crisis intervention/suicide prevention training, evidence relied upon by Defendants' experts in their reports,[2] the Inmate Assault, Self-Harm, & Mortality Data Reports, or the State Prison Capabilities for Medical, Mental Health and Dental Treatment Services Reports. Defendants should be permitted to introduce this evidence at trial.

### B. The Proposed New Evidence is Amenable to Targeted and Focused Discovery that Can Be Accomplished in a Short Period of Time.

In response to the Court's invitation to "outline targeted and focused discovery that is necessary to probe" Defendants' proffered evidence, Plaintiffs assert that they will have to "redo" all of their previous discovery. This hardly helps the Court, as it is nothing more than a threat to engage in the same unnecessary and burdensome

---

[2] Plaintiffs accurately point out that not all of Defendants' expert tours occurred after September 27, 2013. (Doc. 858 at 4:23-28.) Footnote 1 in Defendants' Supplemental Brief followed the sentence: "Plaintiffs' motion outlined the evidence relied upon by Defendants' experts in their reports that post-dated the September 27, 2013 discovery deadline, which included: evidence gathered during their expert tours . . ." (Doc. 851 at 15:16-18, 15:25-27.) Although the footnote then states, "*All* of Defendants' expert tours occurred after September 27, 2013," this was intended to convey only that "the evidence relied upon by Defendants' experts in their reports that post-dated the September 27, 2013 discovery deadline" derived from tours that occurred "after September 27, 2013." In other words, it should have stated, "All of *these* expert tours occurred after September 27, 2013." As written, Defendants agree that the footnote, standing alone, is inaccurate. Defendants clarify here that some of Defendants' expert tours did occur before September 27, 2013.

6

discovery that the Court has already determined to be excessive and needless. Generally, they request additional depositions, expert tours, document production, and written discovery. Much of what they request is overly broad and vague, and clearly unnecessary. And most of it is not supported with any specific justification or explanation. Defendants understand that Plaintiffs are entitled to take some discovery, and they are willing to comply with what the Court orders. But they ask the Court to consider Defendants' proposed discovery, which is "targeted and focused," in making that decision. Defendants further reiterate that: (1) Plaintiffs elected to file their lawsuit at a time when they knew the provision of care was transitioning to privatization for the first time; (2) Plaintiffs opposed Defendants' request to stay the proceedings to give the private vendor an opportunity to get-up-to speed; (3) prior to the Court's order setting the September 2013 cut-off date, Plaintiffs and the Court had both expected Defendants to rely on current evidence of conditions and care at trial (Doc. 826 at 4-5); (4) Plaintiffs had previously requested to extend fact and expert discovery deadlines to July 2014 (Doc. 559 at 8 n.11 & at 10; Doc. 753 at 10); (4) Defendants will be incredibly prejudiced if the cut-off date is not extended (Doc. 826 at 5-14); and (5) Defendants will be the ones primarily burdened with additional discovery, not Plaintiffs (id. at 15-16).

In light of Plaintiffs' failure to take the Court's Order seriously, they really should not be afforded any of the excessive discovery they have proposed. Nonetheless, Defendants propose the following discovery for the Court's adoption:

### **Corizon Monthly & Quarterly Reports**

- Plaintiffs may conduct one 4-hour Rule 45 deposition of a Corizon employee limited to the creation, explanation, and computation/ methodology of these reports.

### **ADC Monthly MGAR Reports**

- Plaintiffs may conduct one 4-hour Rule 30(b)(6) deposition limited to the creation and explanation of these reports. Plaintiffs already deposed ten contract monitors and their supervisor on these reports.

### Named Plaintiffs' Healthcare and Institutional Records

Defendants do not see the need for any discovery directed at these records, other than producing them, and Plaintiffs do not request any.

### February 2014 NCCHC Accreditation Report

Defendants do not see the need for any discovery directed at this report. Defendants have disclosed the Report to Plaintiffs.

### Corizon Contract Amendments

- Plaintiffs may conduct one 2-hour Rule 30(b)(6) deposition limited to the conception, nature, and scope of these Amendments.

### Mental Health Services Technical Manual

- Plaintiffs may conduct one 4-hour Rule 30(b)(6) deposition limited to the January 1, 2014 and April 18, 2014 revisions to the Manual.

### Medication Administration Modifications

- Plaintiffs may conduct one 4-hour Rule 30(b)(6) deposition limited to the post-September 2013 medication administration modifications identified in Defendants' Supplemental Brief.

### Director's Instruction 326, Crisis Intervention/Suicide Prevention Training, Capital Improvements to Maximum Custody Recreation Enclosures and Cells, and Group Programming Enclosures

- Plaintiffs may conduct one 4-hour Rule 30(b)(6) deposition limited to these subjects.
- Plaintiffs may request photographs of the capital improvements.

### Electronic Health Records

- Plaintiffs may conduct one 2-hour Rule 30(b)(6) deposition limited to the implementation of the EHR system. Plaintiffs already deposed Dr. Robertson about the EHR system and roll-out during his deposition.

### Defendants' Expert Reports

- Plaintiffs may re-depose those Defendants' experts who issue a supplemental expert report expressing opinions based on post-September 2013 evidence, limited to no more than 4 hours each and further limited to the opinions in their new supplemental expert

8

reports.[3]

### Inmate Assault, Self-Harm, & Mortality Data Reports

- Plaintiffs may conduct one 2-hour Rule 30(b)(6) deposition limited to the creation and computation/methodology of these reports.

### State Prison Capabilities for Medical, Mental Health and Dental Treatment Services Report

- Plaintiffs may conduct one 2-hour Rule 30(b)(6) deposition limited to the creation and computation/methodology of these reports.

Plaintiffs request <u>depositions</u> of all witnesses who will testify to this evidence. (Doc. 858–2 at 1.) The above discovery proposal provides adequate coverage for this request. The depositions must be limited in scope and duration.

Plaintiffs request various <u>documents</u> "relating to" or "discussing" these items of evidence. (Doc. 858–1 at 1-5.) This is too broad a request for either Defendants or the Court to consider, and without limitation the request will certainly be abused. Although some documents may be relevant, Plaintiffs should be required to provide more specificity. Regarding the categories of documents listed in Appendix B (Doc. 858–2 at 1-2), Defendants fail to see how many of these documents are relevant to their proffered evidence, and Plaintiffs do not explain how they are.

Plaintiffs request an additional 20 expert <u>tours</u> (at least) and <u>review</u> of at least 1,300 inmate medical files during those tours.[4] (Doc. 858–2 at 2-3.) Both requests are excessive and unnecessary. Defendants fail to understand why Plaintiffs need to conduct any expert tours, much less more than 20 tours, to test the proffered evidence. If they want to review medical files, Defendants can produce those files for their review;

---

[3] If Plaintiffs' experts submit supplemental reports, Defendants similarly request an opportunity to depose them on those new opinions.

[4] Plaintiffs request 6 tours for their medical experts (6 facilities, one expert per tour), 7 tours for their mental health expert, 6 tours for their conditions experts (3 facilities, two experts), and "a tour by Dr. Brie Williams of any isolation units where Defendants allege there was a change in physical plant." (Doc. 858-2 at 2-3.) They further request reviewing 50 charts per tour and review of 50 inmates' dental records "for each of the six largest prisons." (Id.)

9

1 they do not need to review them at the facility and interrupt operations.[5] They can review
2 photographs of physical plant modifications, and if they want to see the modifications first
3 hand, that does not need to be done by three experts (Haney, Vail, and Williams). If the
4 Court permits additional tours, Defendants request that the Court limit the number of
5 tours, the duration of each tour, and the facilities that can be toured. The tours should also
6 be set up so that multiple experts attend the same facility at the same time. If the Court
7 feels that inmate interviews are appropriate during the tours, Defendants will assist in
8 arranging. But the Court should reject Plaintiffs' request to allow their counsel and their
9 experts to conduct roving depositions of ADC and Corizon staff during any tour. This
10 was a point of contention during the first wave of tours, and Defendants did not allow it.[6]

11 Plaintiffs request to propound an additional 35 <u>requests for admission</u> and
12 further request that Defendants "supplement <u>interrogatory responses</u> impacted by the new
13 evidence." These requests are incredibly vague and non-specific; the latter could
14 conceivably encompass every single outstanding interrogatory. Their vagueness should
15 preclude any additional requests or supplementation. To the extent that the Court believes
16 that some RFAs or supplementation is permissible, it should order Plaintiffs to specify
17 which RFAs they would like to propound and which interrogatory responses they feel
18 should be supplemented so that the Court can properly evaluate them. They have already
19 propounded approximately 446 RFAs on Defendants.

20     **C.**    **Defendants' Proposed Discovery Schedule**

21 The aforementioned discovery can and should be concluded by June 1,
22 2014. Defendants will also supplement their expert reports within that time. The current

---

[5] Any additional medical files reviewed should be the updated records of the inmates their experts already reviewed. Or, the records should be chosen at random, not hand-picked by Plaintiffs' counsel.

[6] The Court stated at the August 7, 2012 hearing: "I don't understand these expert tours. They look to me like they are being done in lieu of interrogatories, walking around the prison asking people questions. That's what interrogatories are for. . . . I have not envisioned that that meant walking through all the prisons asking lots of people questions."

10

May 2, 2014 deadline to file dispositive motions and motions challenging expert opinions should be vacated and reset for June 15, 2014 or July 1, 2014. That deadline should follow discovery so that both parties can rely on the newly-discovered evidence, including expert opinions, in drafting their respective motions. These revised deadlines will still preserve the existing dates for the Joint Proposed Pretrial Order (September 26, 2014), the Pretrial Conference (October 6, 2014), and trial (October 20, 2014), since replies on these motions will be due sometime between August 15, 2014 and September 1, 2014.

In the event that the Court denies Defendants' Motion for Reconsideration, <u>or</u> grants the Motion but orders simultaneous briefing and discovery (and therefore keeps the May 2, 2014 dispositive motion deadline), Defendants respectfully request a one week extension of that deadline, until <u>May 9, 2014</u>. A final ruling on this issue will not come down until either April 24 or April 25 (at the earliest), just one week before the current motion deadline. That is not enough time to modify and complete the motions. The ruling will require substantial revisions to the motions, statement of facts, and supporting exhibits. Given the magnitude of this case and the necessity of providing a comprehensive dispositive motion and motions challenging Plaintiffs' experts, a brief extension is critical. Trial is still nearly 6 months away, and the Court has stated that it can rule on the motions quickly. (Doc. 826–1 at 8.)

## **CONCLUSION**

For these reasons, Defendants respectfully request the Court to grant their Motion for Reconsideration, extend the cut-off date to April 1, 2014, allow Defendants to use at trial the evidence identified in their Supplemental Briefs, and, if the Court feels it is necessary, adopt Defendants' proposed discovery and discovery schedule.

In the event the Court denies Defendants' Motion for Reconsideration, or grants the Motion but orders simultaneous briefing and discovery (and therefore keeps the May 2, 2014 dispositive motion deadline), Defendants respectfully request a one week extension of that deadline, until May 9, 2014.

DATED this 23rd day of April 2014.

STRUCK WIENEKE & LOVE, P.L.C.


By /s/ Nicholas D. Acedo
   Daniel P. Struck
   Kathleen L. Wieneke
   Rachel Love
   Timothy J. Bojanowski
   Nicholas D. Acedo
   Ashlee B. Fletcher
   Anne M. Orcutt
   STRUCK WIENEKE & LOVE, P.L.C.
   3100 West Ray Road, Suite 300
   Chandler, Arizona  85226

   Arizona Attorney General Thomas C. Horne
   Office of the Attorney General
   Michael E. Gottfried
   Lucy M. Rand
   Assistant Attorneys General
   1275 W. Washington Street
   Phoenix, Arizona 85007-2926

   *Attorneys for Defendants*

2894217.1

12

# CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amy Fettig: | afettig@npp-aclu.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| Daniel Joseph Pochoda: | dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| James Duff Lyall: | jlyall@acluaz.org; gtorres@acluaz.org |
| Cathleen M. Dooley: | cdooley@azdisabilitylaw.org |
| J.J. Rico: | jrico@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Kirstin T. Eidenbach: | keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; docketphx@perkinscoie.com |
| Jerica L. Peters: | jpeters@perkinscoie.com |
| Matthew Benjamin du Mee: | mdumee@perkinscoie.com; cwendt@perkinscoie.com |
| Michael Evan Gottfried: | Michael.gottfried@azag.gov; colleen.jordan@azag.gov; lucy.rand@azag.gov |
| Sara Norman: | snorman@prisonlaw.com |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| David C. Kiernan: | dkiernan@jonesday.com; lwong@jonesday.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Kamilla Mamedova: | kmamedova@jonesday.com |

| | |
|---|---|
| Jennifer K. Messina: | jkmessina@jonesday.com |
| Taylor Freeman: | tfreeman@jonesday.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org, mlauritzen@azdisabilitylaw.org |
| Katherine E. Watanabe: | Katherine.Watanabe@azag.gov, susan.oquinn@azag.gov |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, pdrew@perkinscoie.com |
| Lucy Marie Rand: | Lucy.Rand@azag.gov, Geneva.Johnson-Joksch@azag.gov |
| Ajmel Quereshi: | aquereshi@npp-aclu.org |
| Jessica Jansepar Ross | jross@azdisabilitylaw.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/  Nicholas D. Acedo