**EXHIBIT 1**

**EXHIBIT 1**

# In The Matter Of:
*Parsons vs.*
*Ryan*

*Richard P. Seiter, Ph.D. - videotaped*
*April 10, 2014*
*Confidential - Subject to Protective Order*

*7330 North 16th Street, Suite A100*
*Phoenix, Arizona  85020*
*602.266.6535 Office    877.266.6535 Toll Free*
*www.glennie-reporting.com*
*office@glennie-reporting.com*



Glennie Reporting Services

Original File 041014rs.txt
Min-U-Script® with Word Index

212

1  and they told me, you can't do it for max custody
2  inmates; it's not allowed.  So I don't know if that is
3  accurate or not -- is what I heard, obviously, and what
4  I recorded -- besides mental health counseling.
5          Now, mental health counseling could be a
6  whole lot of other things.  Anger management could be
7  mental health counseling, and so they might have listed
8  some other things, too.  So I -- I wouldn't say that
9  was the only program they had there in August, no, in
10 addition to mental health counseling.  I don't know
11 what they listed were included under mental health
12 counseling.
13     Q    So page 61, at the top of the page you wrote,
14 "They can also buy ice tickets for 2.10, and they get a
15 bag of ice delivered to their cells."  Do you know if
16 indigent prisoners are able to access ice at
17 Perryville?
18     A    I do not.
19     Q    And then the next paragraph down it says,
20 "Visiting:  All is in visiting area and all is now
21 non-contact."  So this was as of August 2013?
22     A    The week I was there, the day I was there.
23 They will soon add contact visiting.
24     Q    For some stages?
25     A    Yes, in the stage program.  The lowest stage,

213

1  the worst stage, the most restrictive stage did not --
2  was not going to get contact visiting.  As you saw, I
3  think stage 2 got a contact visit, and stage 3, if they
4  behaved, got two contact visits a week.  So they were
5  showing me what they were doing, because in the
6  visiting room at that time, I think they only
7  had -- originally they only had noncontact set up, and
8  they were setting tables up out there so they could
9  initiate the contact visit.
10       Q    But at that time, there was no contact
11  visitation?
12       A    The day I was there.  I might have added it
13  next week.
14       Q    Uh-huh.  So when you wrote in Exhibit 5 about
15  Perryville Lumley stage program, you mentioned that in
16  stage 3 you could have contact visits?
17       A    I think it's stage 2 you could have a contact,
18  couldn't you, and stage 3 you could have two.
19       Q    Well, we can look at it in Exhibit 5.
20       A    Yeah.
21       Q    But at that time at Lumley when you were
22  actually there, they didn't have any noncontact visits?
23       A    Apparently not.  It says there, starts soon.
24  So they -- on that day they hadn't started it, but they
25  were about to start.  As I said, maybe they started the

214

1  next day, maybe the next week.
2      Q    Did you ever go back and verify that they
3  actually have contact visits at Perryville?
4      A    No, I did not.  I have not been back to
5  Perryville.  So I would like to go back between now and
6  the next time we talk or we go to trial or whatever.
7      Q    That's right.  You mentioned that you were
8  thinking of going back maybe sometime this summer?
9      A    I'd like to go back.
10     Q    Uh-huh.  And why -- why do you -- why do you
11 need to tour again?
12     A    Just the reasons you are asking.  I'd like to
13 see the -- one probably is my expert role, but because
14 I'm interested in corrections, I'd like to see all
15 those things that they have done in the whole evolution
16 that they started two years ago or three years ago to
17 the implementation of the director's instructions.  I'd
18 just like to see those.
19     Q    So you feel you need to verify that this
20 evolution you've talked about is actually occurring?
21              MR. BOJANOWSKI:  Form.
22              THE WITNESS:  I'd like to do that.  If
23 in trial when you ask me, have you verified these, I'd
24 like to be able to say yes or no, I have verified it,
25 and they are either doing it or they are not.

215

1   Q   BY MS. FETTIG:  Well, verification is
2   important.
3   A   Trust but verify.
4   Q   Indeed.
5       Let's just go to page 63.  Just take a
6   look at this.  And on page 61 there is a header
7   Florence Central.  If you can take a look at these
8   notes and let me know if these are from your tour of
9   Florence Central or what the genesis of them was.
10  A   I'm sure they're from the tour beginning with
11  a discussion with the warden and leadership and moving
12  into the tour, so I could have taken them in discussion
13  and then along the way.
14  Q   So again on page 63, at the top of the page,
15  third point down, it says, "Staffing is one control
16  officer, one key officer, two floor officers, along
17  with one CO III."  Again, here, we don't see any rover
18  listed.  Do you -- do you know where that rover
19  position would have been?
20  A   No.  It may not have been -- you know, it may
21  have been one of the floor officers, but it also could
22  have been -- I don't think as I saw the post orders and
23  the staffing patterns that they were assigned to a
24  particular housing unit.  They may be in CB1 today, in
25  CB3 in the next day or wherever.  They were totally

222

```
 1  STATE OF ARIZONA    )
                        )
 2  COUNTY OF MARICOPA  )

 3

 4              I, Marcella L. Daughtry, a Certified
 5  Reporter, Certificate No. 50623, in the State of
 6  Arizona, do hereby certify that the foregoing witness
 7  was duly sworn to tell the whole truth; that the
 8  foregoing pages constitute a full, true, and accurate
 9  transcript of all proceedings had in the foregoing
10  matter, all done to the best of my skill and ability.
11  Pursuant to request, notification was provided that the
12  deposition is available for review and signature.

13

14              I FURTHER CERTIFY that I am not related
15  to nor employed by any of the parties hereto, and have
16  no interest in the outcome.

17

18              WITNESS my hand this 11th day of April,
19  2014.
20
21                            _____
                              Marcella L. Daughtry
22                            Arizona Certified
                              Reporter No. 50623
23
24
25
```

**EXHIBIT 2**

**EXHIBIT 2**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>      Plaintiffs,<br>  vs.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>      Defendants. | No. CV12-00601-PHX-NVW (MEA) |

VIDEOTAPE DEPOSITION OF

JOSEPH V. PENN, MD, CCHP, FAPA

April 11, 2014
9:32 a.m.
Phoenix, Arizona

*Glennie Reporting Services, LLC*
7330 North 16th Street
Suite A100
Phoenix, Arizona 85020-5275

602.266.6535
www.glennie-reporting.com

Prepared by:
Carolyn T. Sullivan, RPR
Arizona CR No. 50528

|  |  |
|---|---|
| 1 | me about them. |
| 2 | A. Okay. So as I sit here today, I believe that |
| 3 | all of my opinions are contained in my first report of |
| 4 | December and my supplemental report. I -- I think that's |
| 10:58:35  5 | a fair statement, yes. |
| 6 | Q. Okay, thank you. Have you visited any other |
| 7 | ADC institutions other than the visits we've just |
| 8 | discussed? |
| 9 | A. I don't believe so, no. |
| 10:59:02 10 | Q. Do you plan to visit any ADC institutions in |
| 11 | connection with this case between now and the trial of |
| 12 | this case? |
| 13 | A. I'm not sure if I can answer that. I -- I |
| 14 | would like to. I mean, I think it would be nice to be |
| 10:59:23 15 | able to go back and -- and either do a more focused study |
| 16 | or survey of facilities where there was a question or a |
| 17 | concern. Again, in a perfect world, I would be able to |
| 18 | go to those three facilities that you mentioned. But |
| 19 | it -- it basically boils down to -- to time. And so I |
| 10:59:50 20 | can request it, but whether it can happen in the time |
| 21 | frame, that's a -- that's the ultimate question. |
| 22 | Q. So your answer is you don't know? |
| 23 | A. I think that's fair. I don't know. |
| 24 | Q. Okay. During your tours of ADC institutions, |
| 11:00:13 25 | did you speak with ADC staff? |

JOSEPH V. PENN, MD, CCHP, FAPA - 4/11/14

```
1   STATE OF ARIZONA    )
                        )
2   COUNTY OF MARICOPA  )

3

4           I, CAROLYN T. SULLIVAN, a Certified
5   Reporter, Certificate No. 50528, in the State of Arizona,
6   do hereby certify that the foregoing witness was duly
7   sworn to tell the whole truth; that the foregoing pages
8   constitute a full, true, and accurate transcript of all
9   proceedings had in the foregoing matter, all done to the
10  best of my skill and ability.  Pursuant to request,
11  notification was provided that the deposition is
12  available for review and signature.

13

14          I FURTHER CERTIFY that I am not related to
15  nor employed by any of the parties hereto, and have no
16  interest in the outcome.

17

18          WITNESS my hand this 13th day of April,
19  2014.
```

                                    Carolyn T. Sullivan, RPR
                                    Arizona Certified
                                    Reporter No. 50528