1 | Daniel Pochoda (Bar No. 021979)
2 | James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3 | 3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
4 | Telephone:  (602) 650-1854
Email: dpochoda@acluaz.org
5 |          jlyall@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Varma (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email: skader@azdisabilitylaw.org
         avarma@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | No. CV 12-00601-PHX-NVW (MEA)<br><br>**PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR RECONSIDERATION (DOC. 871)**<br><br>**[REDACTED]** |

78204-0001/LEGAL120950657.1

1    **I.      INTRODUCTION**

2          Pursuant to Local Rule 7.2(g), Plaintiffs request reconsideration of this Court's

3    order, filed April 30, 2014 (Doc. 871), granting in part and denying in part Defendants'

4    Motion for Reconsideration (Doc. 826).  "A motion to reconsider must provide a valid

5    ground for reconsideration by showing two things.  First, it must demonstrate some valid

6    reason why the Court should reconsider its prior decision.  Second, it must set forth facts

7    or law of a strongly convincing nature to induce the Court to reverse its prior decision."

8    *Bahrs v. Hughes Aircraft Co.*, 795 F. Supp. 965, 967 (D. Ariz. 1992).  Here, Plaintiffs

9    request that this Court reconsider its Order only to the extent that the Court declined to

10   authorize prison inspection tours for Plaintiffs' isolation experts, Dr. Craig Haney and

11   Mr. Eldon Vail.[1]  Plaintiffs seek reconsideration of the Court's decision because the

12   unique nature of the isolation sub-class claims necessitates in-person expert tours in order

13   to probe and test the new evidence which the Court's April 30, 2014 Order now allows the

14   Defendants to introduce.

15         In contrast to the health care claims in this case, the claims of the isolation sub-

16   class are not reflected in monthly monitoring reports or data compilations.  Nor does such

17   documentation record or demonstrate the physical plant and environmental changes that

18   Defendants claim have occurred since the original discovery cut-off.[2]  Moreover, the

19   Court's allowance for Plaintiffs to request a "random sampling of inmate files for review"

20   (Order at 3), in lieu of further prison tours, does not allow Dr. Haney and Mr. Vail to test

21   or understand how the Plaintiffs are reacting to and being affected by the conditions of

22   their confinement in isolation vis-à-vis the Defendants' new claims of changed conditions

23   in those units.  Both of Plaintiffs' isolation experts employ methodologies to evaluate

24   conditions of confinement that seek data from the actual inhabitants of the isolation units.

25

26         [1] Plaintiffs met and conferred with Defendants on this issue on May 8, 2014 and
     Defendants have refused to allow the proposed tours.

27         [2] Plaintiffs note that the Court has not allowed Defendants to rely on
     implementation of capital improvements to maximum custody recreation enclosures and

28   cells and group programming enclosures that post-date April 1, 2014.  (Doc. 871 at 2)

1   Plaintiffs' isolation experts do not—and cannot—rely simply on Defendants' written
2   policies in order to test the allegations of changed conditions in the isolation units.

3          Allowing Plaintiffs' isolation experts to engage in targeted tours to evaluate
4   Defendants' claims of changed conditions and programming in the isolation units is
5   critical to the fair and accurate resolution of the isolation claims raised in this case.

6   ████████████████████████████████████████████████████████████████
7   ████████████████████████████████████████████████████████████████
8   ████████████████████████████████████████████████████████████████
9   ██████████████████████████████████[3]

10         Recognizing the compressed schedule faced by all parties in this matter, Plaintiffs
11  propose to narrow the time and manner of the tours of Dr. Haney and Mr. Vail to the bare
12  minimum necessary to allow both experts sufficient time to conduct a cross-section of
13  prisoner interviews, as discussed below.  Plaintiffs propose that Dr. Haney and Mr. Vail
14  inspect Florence Central (including Kasson Unit), Eyman-Browning, Eyman-SMU I, and
15  Perryville Lumley SMA.  Dr. Haney would spend one day at each of the isolation units for
16  a total of four days of inspection and Mr. Vail would spend one day each at Florence
17  Central and Perryville Lumley SMA and a half day each at Eyman-Browning and Eyman-
18  SMU I for a total of three days of inspection.

19  **II.    ARGUMENT**

20         **A.    Defendants' Experts, Fact Witnesses, and Written Policies Allege
                   Sweeping Changes in the Isolation Units since the Original Discovery
21                 Cut-off Date.**

22         Under the Court's April 30, 2014 Order, the Defendants will now be introducing
23  documentary evidence and witness testimony that alleges broad changes in the policies,
24  programming, construction, and physical environment of the isolation units.  For example,

25  _____

26  [3] █████████████████████████████████████████████████████████████
27  ████████████████████████████████████████████████████████████████
28  ██████████████████████████████████████

according to Defendants, the new Director's Instruction ("DI") 326, which went into effect on March 27, 2014, creates:

> [A] step program for maximum custody inmates that provides them an opportunity for more out-of-cell activities based on their behavior and programming.  As they comply with the program's three steps, inmates are afforded greater opportunities for recreation, work, in-cell property, visitation, phone calls, programming, and other out-of-cell time.  DI 326 also provides additional treatment/programming for inmates MH-3 and above.

Defs' Supplemental Brief re: Motion for Reconsideration, at 13 (Doc. 851).  Defendants allege that "this evidence is relevant to refute Plaintiffs' class allegations of failure to provide necessary mental health treatment, extreme social isolation, and lack of recreation and property because it demonstrates that inmates are receiving adequate treatment, programming, and out-of-cell time." *Id*. at 13-14.

Under the Court's Order, Defendants will also be introducing modifications to ADC's Mental Health Services Technical Manual, revised on January 1, 2014, including alterations to policies regarding programming for maximum custody inmates and inmates in the Behavioral Management Unit in Browning.  *Id*. at 11-12.  Defendants allege that these changes demonstrate that "ADC is continuing to perfect the provision of mental health care." *Id*. at 12.

Another new category of evidence the Court allowed under its April 30, 2014 Order is Defendants' Expert Reports which proffer opinions regarding conditions of confinement based on evidence that post-dates September 27, 2013, including "cell and recreation enclosure improvements, new programming, and maximum custody modifications."   Defs' Supplemental Brief re: Motion for Reconsideration, at 15 (Doc. 851).  According to Defendants, "[a]ll of this evidence recited in Defendants' expert report is relevant to Defendants' defenses, as it was specifically relied upon by their experts to formulate their opinions." *Id*. at 15-16.

███████████████████████████████████████████████████████████████

████████████████████████████████████ Indeed, Dr. Penn did not

1    conduct *any* of his tours until after the original discovery cut-off date.  Defs' Mtn for

2    Reconsideration, March 12, 2014, at 12 (Doc. 826).



1

2

3

- ████████

4

5

6

7

8

- ████████

9

10

- ████████

11

12

13

14 ████████

15 ████████

16 ████████

17 ████████

18 ████████

19 ████████

20 ████████

21 ████████

22 ████████

23 ████████

24 ████████

25 ████ [5]

26

27  [5] Appendix 1 of Plaintiffs' Motion to Strike Defendants' Experts and Expert
Reports, January 27, 2014 (Doc. 753-1) provides a comprehensive list of all the
28 information and data Defendants' experts relied upon that was dated after the

The Court's Order allowing evidence beyond the original discovery cut-off also opens the door for Defendants' fact witnesses to testify regarding alleged physical and programmatic changes in the isolation units.  For example, Defendants' 19th Supplemental Disclosures list witnesses who will specifically be testifying to "changes" in the isolation units:

- Carson McWilliams, the Northern Region Operations Director of ADC, will "testify regarding the changes implemented and anticipated for maximum custody inmates, specifically inmates who are in maximum custody and designated as Seriously Mentally Ill."  *See* Fettig Decl., Ex. F (Defendants' Nineteenth Supplemental Disclosure Statement, April 25, 2014) at 5.  Director McWilliams will also testify that "[p]rograms are being reviewed and staff is being trained to facilitate groups with plans to implement those new programs in January 2014.  Maximum custody inmates have been reviewed for movement to lower custody levels and placement in open cell blocks, such as CB1 and CB2 in ASPC-Florence's Central Unit.   Plans to open more blocks are scheduled to begin in 2014.  ADC is also currently reviewing housing areas to cluster inmates designated as Seriously Mentally Ill in a more open living environment.  Mr. McWilliams will testify to security equipment changes like using security chairs for inmate groups in place of individual holding enclosures…. Mr. McWilliams will also testify as to the implementation and positive outcomes related to these changes once the changes have been made." *Id.* at 5-6.  "Mr. McWilliams will testify as to the current status of all of these areas, the allegations contained in Plaintiffs' expert reports, and changes that may be implemented up until trial." *Id.* at 8.

- Ernest Trujillo, the Southern Region Operations Director of ADC, will testify regarding "the changes implemented for maximum custody inmates, specifically inmates who are in maximum custody and designated as Seriously Mentally Ill.  He will also testify regarding the positive outcomes related to these changes once the changes have been made." *Id*. at 53. Mr. Trujillo is also listed as testifying "as to the changes occurring at Perryville Complex – Lumley Unit that affect[] the programming access and conditions of confinement of mentally ill inmates in that unit." *Id.* at 54.

- A substantial number of ADC custody staff are listed as likely to testify regarding "contemporary practices and procedures in relation to security operations" including information related to each facility's "recreation for all security levels, therapy and behavioral programming for all security levels," included in this list are Lance Hetmer, Warden at ASPC-Florence, *id.* at 31; Ron Credio, Warden at ASPC-Eyman, *id.* at 28; Julie Jackson Deputy Warden of ASPC-Florence, *id.* at 71; Deputy Warden Lacy Scott at ASPC Perryville, *id*. at 75; Deputy Warden Gerald Thompson (Eyman-SMU I), *id.* at 29; Assistant Deputy Warden Munoz, ASPC-Eyman-Browning Unit, *id*. at 29; Deputy Warden Stephen Morris ASPC-Eyman-Browning Unit, *id*. at 30; Amy Barnes, ADW, ASPC-Florence-Kasson Unit, *id*. at 32; Judy Frigo, Warden, ASPC-

September 27, 2013 discovery cut-off, as well as all the future plans that informed those expert opinions.

1    Perryville, *id*. at 35-36; and James O'Neil, Warden, ASPC-Phoenix (and former
2    DWOP, ASPC Perryville), *id*. at 36.

3    **B.    In Order to Effectively Test Defendants' Sweeping New Allegations of
       Change in the Isolation Units, Plaintiffs' Experts Need Additional
4      Prison Inspection Tours.**

5            Defendants have alleged sweeping changes in the conditions and programs of the

6    isolation units.  In order to test this evidence effectively vis-à-vis the isolation sub-class

7    claims, Plaintiffs need access to the actual conditions on the ground.  Official documents,

8    such as DI 326 regarding the isolation units provide largely idealized versions of policies

9    and programs rather than a true demonstration of actual day-to-day operation of the

10   programs as experienced by the prisoners themselves.  Policies alone, however, do not

11   demonstrate constitutional conduct.  *See, e.g., Orantes-Hernandez v. Holder*, 321 F.

12   App'x 625, 628 (9th Cir. 2009) ("The government's insistence that the existence of its

13   forms and policies alone obviates the need for the injunction misses the point.  *Orantes I*,

14   *II,* and *III* make it clear that the injunction seeks to remedy the government's actual

15   practices, not just its policies on paper."); *Ware v. Jackson County,* 150 F.3d 873, 882 (8th

16   Cir.1998) ("the existence of written policies of a defendant are of no moment in the face

17   of evidence that such policies are neither followed nor enforced").  As this Court has

18   correctly recognized, "Plaintiffs' claim is that *despite* ADC stated policies, the actual

19   provision of health care in its prison complexes suffers from systemic deficiencies that

20   rise to the level of deliberate indifference." (Doc. 372 at 13 (emphasis in original)).

21           Because policy and practice are frequently not the same thing, on-the-ground

22   investigation is almost always necessary to understand the true operations of a system.  As

23   Dr. Haney observed in his rebuttal report criticizing the methodologies of Defendants'

24   isolation experts Drs. Penn and Seiter:

25
26   
27
28

1

2

3

4   Fettig Decl., Ex. G

5                                            .  Moreover, in contrast to the healthcare claims in this case, there

6   are no monthly monitoring reports, such as the MGARs, or aggregate data compilations,

7   such as staffing reports, which comprehensively capture the conditions of confinement in

8   isolation over time.   Therefore, in-person tours are absolutely critical to ascertain the

9   actual environmental impacts of any changes in the isolation units on the men and women

10  who live there.  And it is impossible to know how these units operate and how effectively

11  they operate without talking to the purported beneficiaries of the alleged new programs

12  created by DI 326 or the Mental Health Technical Manual—the prisoners themselves.  In

13  such a context, photographs and written policies do not give a full picture of actual, on-

14  the-ground conditions.  Therefore, Dr. Haney and Mr. Vail must have access to a cross-

15  section of prisoners in each of the isolation units for both cell-front and in-depth

16  confidential interviews.  And they must be able to witness the programs in operation.

17          Analysis of actual conditions of confinement and the impact of those conditions on

18  prisoners is critical to the isolation claim.  As Mr. Vail observed in his rebuttal report,

19

20                                                                              Fettig Decl.,

21  Ex. H                                                      .  Dr. Haney responded

22  similarly when questioned by defense counsel during his deposition:

23              Q.  In your supplemental report you were critical of defense
            experts, Dr. Penn and Dr. Cider [sic], for not speaking to any
24          inmates during their tours of facilities, why is that?

25              A.  Well, each of them reached conclusions about the effects
            of conditions of confinement on a group of people none of
26          whom they had ever bothered to converse with, and that just
            seemed to me to be problematic in the extreme.

27

28

1   Fettig Decl., Ex. I (Deposition of Dr. Craig Haney, March 14, 2014 ("Haney Dep.")) at
2   160:15-23.

3       Both Dr. Haney and Mr. Vail use prisoner interviews as part of their expert
4   methodology to analyze conditions of confinement and the impact on prisoners.   For
5   example, Mr. Vail interviewed approximately 100 men and women in the isolation units,
6   including 28 individuals interviewed in a confidential setting.   Fettig Decl., Ex. J
7   (Deposition of Eldon W. Vail, February 28, 2014) at 54:9-17.   Dr. Haney interviewed
8   approximately 78 people.   Fettig Decl., Ex. I (Haney Dep.) at 130:3-25, 131:1-6.[6]   A
9   portion of his interviews were also done in a confidential setting that allows for "more in-
10  depth understanding of how prisoners were reacting to and being affected by the condition
11  of confinement."   *Id.* at 47:17-21.   These confidential interviews are based on a
12  questionnaire which Dr. Haney has repeatedly used in facilities with prisoners in isolation
13  across the country which he developed in the 1990s to measure indices of stress and
14  distress based on the extensive scientific literature in the study of psychological stress.   *Id*.
15  at   52:2-25,   53:1-2,   53:20-25,   54:1-21.     Dr. Haney   conducts   interviews   with   the
16  questionnaire in a confidential setting because it allows prisoners to be more candid about
17  their experience in isolation and the symptoms they may be experiencing.   *Id*. at 61:5-17.
18  The type of data collected from the interviews done by Dr. Haney and Mr. Vail is simply
19  not available in written documents produced by ADC.

20      Moreover, the need for in-person evaluation of conditions of confinement is even
21  more critical due to the insufficiency of prisoner records in ADC.   As Dr. Haney observed
22  when questioned about comparing prisoner questionnaire results against ADC medical
23  records:

24          The records were a mess uniformly, uninformative, chaotically
25          organized, contained almost no information many instances,
            so it really wasn't possible to check against any of the
26          information I had acquired.

27  _____

28      [6] Due to the compressed schedule, both of Plaintiffs' isolation experts would
    interview fewer prisoners during the proposed inspections.

1    *Id*. at 67:16-25, 68:1-5.   Dr. Haney further observed that the prisoner records were
2    "woefully incomplete in most instances," so that he "was never sure whether or not what
3    [he] was seeing [was the] full picture".   *Id*. at 147:24-25, 148:1-15.   In such a context, in-
4    person inspection and actual interviews of the prisoners themselves is critical to determine
5    the "full picture" in the isolation units.   Plaintiffs' experts must be able to engage in the
6    rigorous testing that comprehensive in-person interviewing and sampling of prisoner
7    response provides in order to challenge the new evidence the court has just allowed in
8    regarding the isolation claim.   Merely relying upon the written policies and procedures set
9    forth in DI 326, the Mental Health Technical Manual, or what Defendants choose to
10   record in prisoner records is insufficient and incomplete.

11   ## III.    CONCLUSION

12        For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider
13   its refusal to authorize further prison tours to the extent of allowing Plaintiffs' isolation
14   experts to interview prisoners in the isolation sub-class and observe the allegedly changed
15   conditions and programs in the isolation units enumerated above.

16   Dated:  May 14, 2014                              **ACLU NATIONAL PRISON PROJECT**

17

18                                                     By:    s/ Amy Fettig
                                                         David C. Fathi (Wash. 24893)*
19                                                       Amy Fettig (D.C. 484883)**
                                                         Ajmel Quereshi (Md. 28882)**
20                                                       **ACLU NATIONAL PRISON
                                                         PROJECT**
21                                                       915 15th Street N.W., 7th Floor
                                                         Washington, D.C. 20005
22                                                       Telephone:  (202) 548-6603
                                                         Email:    dfathi@npp-aclu.org
23                                                                  afettig@npp-aclu.org
                                                                    aquereshi@npp-aclu.org
24
                                                         *Admitted *pro hac vice*.  Not admitted
25                                                        in DC; practice limited to federal
                                                         courts.
                                                         **Admitted *pro hac vice*
26

27

28

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
Jerica L. Peters (Bar No. 027356)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:     dbarr@perkinscoie.com
           agerlicher@perkinscoie.com
           keidenbach@perkinscoie.com
           jhgray@perkinscoie.com
           mdumee@perkinscoie.com
           jpeters@perkinscoie.com

Daniel Pochoda (Bar No. 021979)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:     dpochoda@acluaz.org
           jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Warren E. George (Cal. 53588)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:     dspecter@prisonlaw.com
           ahardy@prisonlaw.com
           snorman@prisonlaw.com
           ckendrick@prisonlaw.com
           wgeorge@prisonlaw.com

*Admitted *pro hac vice*

1                        Caroline Mitchell (Cal. 143124)*

Amir Q. Amiri (Cal. 271224)*

2                        **JONES DAY**

555 California Street, 26th Floor

3                        San Francisco, California 94104

Telephone:  (415) 875-5712

4                        Email:    cnmitchell@jonesday.com

            aamiri@jonesday.com

5

6                        *Admitted pro hac vice*

7                        John Laurens Wilkes (Tex. 24053548)*

Taylor Freeman (Tex. 24083025)*

8                        **JONES DAY**

717 Texas Street

9                        Houston, Texas 77002

Telephone:  (832) 239-3939

10                       Email:    jlwilkes@jonesday.com

            tfreeman@jonesday.com

11                       *Admitted pro hac vice*

12                       Kamilla Mamedova (N.Y. 4661104)*

Jennifer K. Messina (N.Y. 4912440)*

13                       **JONES DAY**

222 East 41 Street

14                       New York, New York 10017

Telephone:  (212) 326-3498

15                       Email:    kmamedova@jonesday.com

             jkmessina@jonesday.com

16

17                       *Admitted pro hac vice*

18                       Kevin Brantley (Cal. 251886)*

**JONES DAY**

19                       3161 Michelson Drive, Suite 800

Irvine, California 92612

20                       Telephone:  (949) 851-3939

Email:    kcbrantley@jonesday.com

21                       *Admitted pro hac vice*

22                       *Attorneys for Plaintiffs Shawn Jensen;*

*Stephen Swartz; Dustin Brislan; Sonia*

23                       *Rodriguez; Christina Verduzco; Jackie*

*Thomas; Jeremy Smith; Robert Gamez;*

24                       *Maryanne Chisholm; Desiree Licci; Joseph*

*Hefner; Joshua Polson; and Charlotte*

25                       *Wells, on behalf of themselves and all others*

*similarly situated*

26

27

28

**ARIZONA CENTER FOR DISABILITY LAW**

By:   s/ Sarah Kader
Sarah Kader (Bar No. 027147)
Asim Varma (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:    skader@azdisabilitylaw.org
          avarma@azdisabilitylaw.org

J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
**ARIZONA CENTER FOR DISABILITY LAW**
100 N. Stone Avenue, Suite 305
Tucson, Arizona 85701
Telephone:  (520) 327-9547
Email:    jrico@azdisabilitylaw.org
          jross@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on May 14, 2014, I electronically transmitted the above

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrants:

5

6

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand

7

Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov

8

Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

9

Daniel P. Struck

10

Kathleen L. Wieneke
Timothy J. Bojanowski

11

Rachel Love
Nicholas D. Acedo

12

Ashlee B. Fletcher
Anne M. Orcutt

13

Jacob B. Lee
STRUCK WIENEKE, & LOVE, P.L.C.

14

dstruck@swlfirm.com
kwieneke@swlfirm.com

15

tbojanowski@swlfirm.com
rlove@swlfirm.com

16

nacedo@swlfirm.com
afletcher@swlfirm.com

17

aorcutt@swlfirm.com
jlee@swlfirm.com

18

19

*Attorneys for Defendants*

20

21

<u>s/ Delana Freouf</u>

22

23

24

25

26

27

28

78204-0001/LEGAL120950657.1

-14-