Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | NO. 2:12-cv-00601-NVW <br><br> **DEFENDANTS' MOTION TO PRECLUDE PLAINTIFFS' EXPERTS** <br><br> **[ORAL ARGUMENT REQUESTED]** |

Defendants Charles Ryan and Richard Pratt (collectively, "Defendants"), through counsel, hereby move to preclude Plaintiffs' experts Robert L. Cohen, Craig Haney, Jay D. Shulman, Pablo Stewart, Eldon Vail, Todd Randall Wilcox, and Brie Williams from testifying at trial. This Motion is supported by the following Memorandum of Points and Authorities, the attached exhibits, and any oral argument the Court may entertain at the hearing on this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    FACTUAL BACKGROUND

Plaintiffs disclosed seven expert witnesses on March 28, 2014 – Robert L. Cohen, Craig Haney, Jay D. Shulman, Pablo Stewart, Eldon Vail, Todd Randall Wilcox, and Brie Williams. (*See* Individual Named Plaintiffs' Third Supplemental Disclosure Statement, 7:3-18, attached as Exhibit A). These experts are expected to testify "consistent with the information and opinions set forth in their respective Rule 26 disclosures (including any and all supplemental and rebuttal reports and documents relied on therein)." (Exhibit A).

Plaintiffs' experts' opinions are based on incomplete, biased information hand-selected by Plaintiffs' counsel and spoon-fed to their experts. Moreover, although all seven experts purport to opine on systemic deficiencies applicable to the Arizona Department of Corrections ("ADC") as a whole, none of their reports provide any statistical analysis that would justify extrapolation of their opinions from the cherry-picked, non-random, non-representative samples they actually reviewed to the ADC system as a whole. Plaintiffs' counsel acknowledged to the Court that a random sample, free of sampling bias, would provide the best results:

> THE COURT: Sounds like what you are looking for is basically information at the level of general data, that you don't need each and every prisoner with this condition and their name on that list.
>
> MR. FATHI: ***Well, Your Honor, it may be possible if we had a random sampling, that might be accurate***. But our experts need to look at the medical records of, for example, 10 prisoners with HIV disease.
>
> THE COURT: Great. You don't need the list of every prisoner for that.
> MR. FATHI: ***Well, that's true, Your Honor. But we need to generate that sublist in some way that -- in which there's no sampling bias.***

1

1 (*See* Scheduling Conference Transcript, dated November 30, 2012, 35:9-21, attached as

2 Exhibit B) (emphasis added). Nevertheless, Plaintiffs' counsel proceeded to provide

3 Plaintiffs' experts with cherry-picked, biased information calculated to ensure opinions

4 favoring Plaintiffs. Defendants therefore respectfully request that this Court preclude

5 Plaintiffs' experts from testifying at trial.

6   **A.** **The ADC System**

7   ADC operates ten facilities – Douglas, Eyman, Florence, Lewis, Perryville,

8 Phoenix, Safford, Tucson, Winslow, and Yuma. (Doc. #321, Decl. of Def. Richard Pratt,

9 ¶¶3-5). These facilities house approximately 33,000 inmates. (Doc. #321, Decl. of Def.

10 Richard Pratt, ¶¶3-5).

11   **B.** **Robert L. Cohen, M.D. – Medical**

12 ██████████████████████████████████████

13 ████ (*See* Confidential Report of Robert L. Cohen, M.D., dated November 8, 2013, ¶¶1-

14 2, attached as Exhibit C). ████████████████████████

15 ████████████████████████████████████ (Exhibit

16 C, ¶2). ██████████████████████████████

17 ████████ (*See* Deposition of Robert L. Cohen, taken April 4, 2014, 62:16-25,

18 attached as Exhibit D).

19 ██████████████████████████████████████

20 ██████████████████████████████████████

21 ████████ (Exhibit C, ¶3). ██████████████████

22 ██████████████████████████ (Exhibit C, ¶3). ████████

23 ████████████████████████ (Exhibit C, ¶3; Exhibit D, 83:3-8). ████

24 ████████████████████████ (Exhibit D, 85:1-3). ██████

25 ████████████████████████ (Exhibit D, 85:4-6; *see also* Letter

26 dated July 11, 2013, from Corene Kendrick to Ashlee Fletcher, attached as Exhibit E).

27 ██████████████████████████████████████

28

1      ██████████████████████[1] (Exhibit D, 85:7-12; Exhibit E).

2      ███████████████████████████████████████████████

3      ███████████████████████████████████████████████

4      ██████████████████████████████████████████ (Exhibit C,

5 ¶4). In other words, Dr. Cohen did not select a random sampling of records, but asked

6 only for records that would support his ultimate opinions, and the position advocated by

7 Plaintiffs. █████████████████████████████████████████

8      ██████████████ (Exhibit C, ¶4). Dr. Cohen's reports contain no data regarding the

9 prevalence of these conditions among ADC's system-wide population, or comparing the

10 proportions of his sample to the ADC population.

11      ███████████████████████████████████████████████

12      ███████████████████████████████████████████████

13      ██████████████████████████ (Exhibit D, 86:24-88:2, 88:3-89:13). ██

14      ███████████████████████████████████████████████

15      █████████ (Exhibit D, 89:14-90:7). ██████████████████

16      ████████████████████ (Exhibit D, 99:8-12). ██████████

17      ███████████████████████████████████████████████

18      ████████████████████ (Exhibit D, 91:24-92:8).

19      Dr. Cohen reviewed medical records of only 156 inmates. (Exhibit E). ██████

20      ███████████████████████████████████████████████

21      ███████████████████████████████████████████████

22      ███████████████████████████████████████████████

23      ████████████████ (Exhibit D, 134:3-25; Exhibit E).

24      ███████████████████████████████████████████████

25      ███████████████████████████████████████████████

26 (Exhibit D, 92:24-93:1). ███████████████████████

27      [1] ████████████████████████████████████████

28      █████████████████████████████████████

1

2

3    (Exhibit D, 93:2-14, 93:21-94:4).

4    (Exhibit D, 95:11-18).

5

6    (Exhibit D, 95:23-96:5).

7

8

9

10    (Exhibit C, Appendix B).

11

12

13

14 (Exhibit D, 116:4-19).

15    (Exhibit D, 116:20-117:1).

16

17    (Exhibit D, 85:13-21; *see also*

18 Confidential Rebuttal Report of Robert L. Cohen, M.D., dated January 31, 2014, attached

19 as Exhibit F; Confidential Supplemental Report of Robert L. Cohen, M.D., dated February

20 24, 2014, attached as Exhibit G).

21    (Exhibit D, 84:15-25; Exhibits C, F, and G). None of

22 Dr. Cohen's reports contain any statistical analysis of the number of inmates whose health

23 care did not meet community standards. Similarly, none of Dr. Cohen's reports contain

24 any statistical analysis attempting to extrapolate the results of his limited investigation to

25 ADC as a whole.

26    **C.    Craig Haney, Ph.D., J.D. – Conditions of Confinement**

27

28    (*See* Expert Report of Craig Haney, Ph.D., J.D., dated November 7, 2013, ¶2,

4

1   attached as Exhibit H). ████████████████████████████████████████

2   ████████████████████████████████████████████████████████████████████

3   ███████████████████████████████[2] (Exhibit H, ¶9; *see also* Deposition of Craig

4   Haney, taken March 14, 2014, 8:19-9:8, attached as Exhibit I). █████████████

5   ████████████████████████████████████████████████████████████████████

6   ████████ (Exhibit I, 17:21-18:10).

7   ██████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████████

9   ██████████████████████████ (Exhibit H, ¶¶9-12, Appendix C). ████████████

10  ████████████████████████████████████████████████████████████████████

11  ██████████████[3] ████████████████████████████████████████████████████

12  (Exhibit H, Appendix C; Rebuttal Report of Craig Haney, Ph.D., J.D., dated January 31,

13  2014, Appendix A, attached as Exhibit J). There is no indication that Plaintiffs' counsel

14  randomly selected the records.

15  ████████████████████████████████████ (Exhibit I, 36:2-20; *see also* Letter

16  dated July 15, 2013 from Amy Fettig to Struck, Wieneke & Love, attached as Exhibit K).

17  ████████████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████ (Exhibit I,

19  36:14-37:14). ████████████████████████████████████████████████ (Exhibit

20  I, 37:7-14). ████████████████████████████████████████████████████████

21  ████████████████ (Exhibit I, 36:21-37:6).

22

23  _____

    [2] Defendants continue to object to Plaintiffs' (and their experts') use of "isolation"
24  and other similar terms to describe ADC's segregation/maximum custody units.

25      [3] An inmate's "master file" is the combined electronic and official hard copy
    inmate record file maintained by ADC pursuant to A.R.S. § 31-221. It contains such
26  documents as the statement of facts from the committing court, if applicable; judgment
    and commitment documents, including sentence modifications; movement authorizations;
    pre-sentence investigation reports; protective segregation reports; "do not house with"
27  memorandums; final classification actions; final release date confirmations; disciplinary
    reports; Significant Incident Reports ("SIRs"); and other documents related to an inmate's
28  confinement.

1       Although this method appears to utilize a random sampling of inmates to be

2  interviewed at each unit Dr. Haney visited, Dr. Haney did not ensure a statistically

3  significant sample size. Instead, 

4

5  (Exhibit I, 39:6-19).

6

7  (Exhibit I, 40:16-19).

8

9  (Exhibit I, 40:20-41:5).

10  (Exhibit I, 41:6-11).

11

12

13

14  (Exhibit I, 43:10-44:8).

15  (Exhibit

16  I, 44:9-17).

17

18  (Exhibit I, 52:2-22).

19

20  (Exhibit I, 52:14-22).

21

22  (Exhibit I, 60:19-24).

23

24

25  (Exhibit I, 87:5-88:8, 138:12-139:7).

26  (Exhibit I, 87:5-88:8).

27

28  (Exhibit I, 139:8-140:11).

1 ████████████████████████████████████

2 ████████████████████████████████████████

3 █████████████████████████████████████ (Exhibit

4 I, 88:9-24).

5 ████████████████████████████████████████

6 ████ (Exhibit I, 89:9-17). ██████████████████

7 ████████████████████████████████████████

8 ██████ (Exhibit I, 88:25-89:4).

9 ████████████████████████████████████

10 ████████████████████████████████████████

11 ████████████████████████████████████████

12 ████████████████ (Exhibit I, 92:19-93:4, 93:23-94:3). ████

13 ████████████████████████████████████████

14 ████████████████████████████████████████

15 ████████████████████████████████████████

16 █████████████████████████ (Exhibit  I,  105:7-106:15). ████████

17 ████████████████████████████████████████

18 ████████████████████████████████████████

19 █████████████████████ (Exhibit I, 118:16-119:15).

20 ████████████████████████████████████

21 ████████████████████████████████████████

22 ██████ (Exhibit I, 147:24-148:4, 150:7-14). ████████████

23 ████████████████████████████████████████

24 ████████████████████████████████ (Exhibit I, 163:15-

25 164:3). ████████████████████████████████

26 ████████████████████████████████ (Exhibit I, 133:7-21).

27 / / /

28 / / /

7

1    **D.      Jay D. Shulman, D.M.D., M.A., M.S.P.H. – Dental**

2    ████████████████████████████████████████████████████████████

3    (*See* Confidential Expert Report of Jay D. Shulman, DMD, MA, MSPH, dated November

4    8, 2013, p. 1, attached as Exhibit L). ████████████████████████████████

5    ████████████████████████████████████████████████████████████

6    ████████████████████████████████ (Exhibit L, 1-2).

7    ████████████████████████████████████████████████

8    ████████████████████████████ (Exhibit L, [Appendix] C). ████████████

9    ████████████████████████████████████████████████████████████

10   ████████████████ (Exhibit L, 8). ████████████████████████

11   ████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████

13   ████████████████████ (Exhibit L,  8). ████████████████████████

14   ████████████████████████████████████████ (*See* Deposition of Jay D.

15   Shulman, taken March 20, 2014, 22:8-18, attached as Exhibit M).

16   ████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████

18   ████ (Exhibit L,  9). ████████████████████████

19   ████████████████████████████████████████████████████████████

20   (Exhibit L, 9). ████████████████████████████████

21   ████████████████████████████████████ (Exhibit L, 9; Exhibit M, 31:3-

22   13). ████████████████████████████

23   ████████████████ (Exhibit L, 9; Exhibit M, 31:3-13). Dr. Shulman did not take a random

24   sample of inmates who had requested and/or received dental work. ████████████

25   ████████████████████████████████████████████████████████████

26   ████████████████████ (Exhibit M, 73:14-75:1).

27   ████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████████

[4] (Exhibit L, 9; Exhibit M, 34:6-8). ████████████

████████████████████████████████████████████████

██████ (Exhibit L, 9). Dr. Shulman specifically requested records likely to support his ultimate opinions, and the position advocated by Plaintiffs, that ADC's provision of dental care does not meet minimum standards. ████████████████████████ (Exhibit M, 15:14-16).

████████████████████████████████████████

████████████████████████████ (*See* Confidential Rebuttal Expert Report of Jay D. Shulman, DMD, MA, MSPH, dated January 31, 2014, 2, attached as Exhibit N). Nevertheless, Dr. Shulman did not select a random sample. █

████████████████████████████████████████

████████████████████ (Exhibit L, 9). █████████████

████████████████████████████████████████

████████████████████████████████ (Exhibits L and N; *see also* Confidential Supplemental Expert Report of Jay D. Shulman, DMD, MA, MSPH, dated February 24, 2014, attached as Exhibit O).

████████████████████████████ (Exhibit M, 102:7-10).

████████████████████████████ (Exhibit M, 182:11-16). █

████████████████████████████████████████

████████████████████████████████████████

████████████ (Exhibit M, 118:25-119:4, 154:22-25).

**E.    Pablo Stewart, M.D. – Mental Health**

████████████████████████████████████████

██████████████ (*See* Expert Report of Pablo Stewart, M.D., dated November 8, 2013, 1, 8, attached as Exhibit P). ████████████████

---

[4] ████████████████████████████████████

████████████████████

9

1   ██████████████████████████████████████████ (Exhibit

2   P, 8-9).[5]

3   ████████████████████████████████████████████

4   ████████████ (Exhibit P, 9). ███████████████████

5   ████████████████████████████████████████████

6   ██████████████████████ (Exhibit P, [Appendix] C; *see also* Supplemental

7   Expert Report of Pablo Stewart, M.D., dated December 9, 2013, [Appendix] C, attached

8   as Exhibit R; Rebuttal Expert Report of Pablo Stewart, M.D., dated  January 31, 2014,

9   [Appendix] B, attached as Exhibit S; Second Supplemental Expert Report of Pablo

10  Stewart, M.D., dated February 24, 2014, attached as Exhibit T). ████████████

11  ████████████████████████████ (Exhibit P, [Appendix] C; Exhibit R,

12  [Appendix] C; Exhibit S, [Appendix] B; Exhibit T). There is no indication that Plaintiffs'

13  counsel randomly selected the records.

14  ████████████████████████████████████████████

15  ████████████████████████████████████████████

16  ██████████████████████ (Exhibit Q, 73:25-74:10; *see also* Letters dated

17  July 11, July 16, and July 18, 2013, from David Fathi to Struck, Wieneke & Love,

18  attached as Exhibit U). ████████████████████

19  ████████████████████████████████ (Exhibit Q, 74:19-23). ██

20  ██████████████████████████████████ (Exhibit Q, 74:24-

21  75:1). ████████████████████████████████████

22  ████████████ (Exhibit Q, 84:5-10, 84:16-85:17).

23  ████████████████████████████████████████████

24  ████████████████████████████████████████████

25  ████████████ (Exhibit Q, 72:25-73:10, 92:11-18). █████████

26  ————————————
    [5] ███████████████████████████████████████

27  ████████████████████████████████████████████

28  E          .

1    ███████████████████████████ (Exhibit Q, 81:4-10). ██████████

2    ████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████

6    ██████████████████████████████████████████ (Exhibit Q, 81:4-25).

7    ████████████████████████████████████████████████████

8    (Exhibit Q, 76:21-23, 77:6-9). ███████████████████████

9    ███████ (Exhibit Q, 76:24-77:1). ████████████████████

10   ████████████████████████████████████████████████████████████

11   ███████ (Exhibit Q, 76:4-7, 77:2-5). Dr. Stewart's reports contain no statistical analysis

12   supporting his opinions, either analyzing his cherry-picked sample or attempting to

13   extrapolate the sample findings to the ADC population as a whole. Dr. Stewart did not

14   quantify the number of inmates receiving mental health care whose care he believes fell

15   below the standard of care.

16        **F.    Eldon Vail – Corrections**

17   ████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████

19   ███████ (*See* Expert Report of Eldon Vail, dated November 8, 2013, ¶¶1, 11, attached as

20   Exhibit V). ███████████████████████████████████████████

21   ████████████████████████████████████████████████████████████

22   ███████████████████████████████ (Exhibit V, ¶12).

23   ██████████████████████████████████████████████████████████████

24   ████████████████████████████████████ (Exhibit V, ¶16). ████████████

25   ████████████████████████████████████████████████████████████

26   ███████████████████████████████████████████ (Exhibit V, [Appendix] 2;

27   *see also* Rebuttal Declaration of Eldon Vail, dated January 31, 2014, Appendix A,

28   attached as Exhibit W; Supplemental Report of Eldon Vail, dated February 24, 2014,



1   attached as Exhibit X).

2   ████████████████████████ (Exhibit V, [Appendix] 2; Exhibit W,

3   Appendix A).

4

5   (*See* Letter dated July

6   16, 2013 from Amy Fettig to Struck, Wieneke & Love, attached as Exhibit Y; *see also*

7   Deposition of Eldon Vail, taken February 28, 2014, 50:6-11, attached as Exhibit Z).

8

9

10

11

12   (Exhibit Z, 50:15-51:13).

13   (Exhibit Z, 115:9-14).

14

15

16

17   (Exhibit Z, 113:25-114:19).

18

19   (Exhibit Z, 114:15-19).

20

21

22

23

24   (Exhibit Z, 118:16-121:2). He

25   did not conduct any statistical analysis whatsoever.

26

27

28   (Exhibit Z, 126:14-24).



(Exhibit Z, 126:14-24).

(Exhibit Z, 126:25-127:2).

(Exhibit Z, 126:22-24).

Other opinions offered by Mr. Vail suffer from similar lack of foundation.

(Exhibit Z, 133:3-134:6). Mr. Vail certainly has no medical or mental health expertise on which to base this opinion. Additionally, his reports are devoid of any quantification, through statistical analysis or otherwise, the number of days per year in which inmates at ADC facilities, or even the facilities he visited, are subjected to such temperatures.

(Exhibit Z, 141:6-18).

(Exhibit Z, 143:23-144:21).

(Exhibit Z, 144:22-25).

Instead of seeking clarification, Mr. Vail instead simply assumed that twice an hour checks were not being done.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████ (Exhibit Z, 151:8-152:17). Mr. Vail did not quantify the rate of inmates placed in watch cells for reasons other than to guard against inmate self-harm, either in a small sample or extrapolated to the ADC population as a whole.

**G.     Todd Randall Wilcox, M.D., M.B.A., C.C.H.P.-A. – Medical**

███████████████████████████████████████████████

██████████████████████ (*See* Confidential Report of Todd Randall Wilcox, M.D., M.B.A., C.C.H.P.-A, dated November 8, 2013, 1, attached as Exhibit AA). ████████

████████████████████████████ (Exhibit AA, 1).

███████████████████████████████████████████████

███████████████████████████████ (Exhibit AA, 2, Appendix C). ████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████ (Exhibit AA, 3; *see also* Deposition of Todd Randall Wilcox, taken April 10, 2014, 92:10-18, attached as Exhibit BB). ████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████ (Exhibit BB, 95:22-96:13, 96:19-97:16, 98:15-99:7; *see also* Letters dated July 20, August 6, and October 4, 2013 from Corene Kendrick to Ashlee Fletcher, attached as Exhibit CC). ████

█████████████████████████ (Exhibit BB, 87:14-24).

14



1

2 (Exhibit AA, 3).

3 (Exhibit BB, 93:6-20).

4

5 (Exhibit BB, 93:21-94:2).

6

7 (Exhibit BB, 105:15-106:9).

8

9 (Exhibit AA; *see also* Confidential Rebuttal Report of Todd Randall Wilcox,

10 M.D., M.B.A., C.C.H.P.-A, dated January 31, 2014, attached as Exhibit DD; Confidential

11 Supplemental Report of Todd Randall Wilcox, M.D., M.B.A., C.C.H.P.-A, dated April 2,

12 2014, attached as Exhibit EE).

13 (Exhibits AA, DD, and EE).

14 Many of Dr. Wilcox's individual opinions lack foundation.

15

16 (Exhibit BB, 113:3-11).

17 (Exhibit

18 BB, 136:15-19).

19

20 (Exhibit BB, 165:16-166:5).

21

22 (Exhibit BB, 170:18-171:9).

23

24 (Exhibit BB, 176:24-178:15).

25

26

27

28 (Exhibit BB, 181:6-182:11).

15

1

2      (Exhibit BB, 182:15-23).

3

4

5                              (Exhibit BB, 182:24-184:4).

6           **H.      Brie Williams, M.D., M.S. – Geriatric Medical**

7

8          [6] (*See* Expert Report of Brie Williams, M.D., M.S., dated November 8, 2013,

9      attached as Exhibit FF).

10                                                  (Exhibit FF, 1).

11

12                        (Exhibit FF, 2).

13                                                      (*See* Deposition of

14     Brie Williams, taken April 8, 2014, 57:22-25, attached as Exhibit GG).

15

16                              (Exhibit FF; *see also* Supplemental Expert Report of Brie

17     Williams, M.D., M.S., dated December 9, 2013, attached as Exhibit HH; Rebuttal Expert

18     Report of Brie Williams, M.D., M.S., dated January 31, 2014, attached as Exhibit II;

19     Second Supplemental Report of Brie Williams, M.D., M.S., dated February 24, 2014,

20     attached as Exhibit JJ).

21

22

23                                        (Exhibit GG, 21:5-22:3, 55:20-56:6).

24

25     (Exhibit GG, 55:11-13).

26

27     _____

28          [6] The Court did not certify a geriatric sub-class. (Doc. #372).



1     ▮▮▮▮▮▮▮▮▮▮ which

2     Dr. Williams appears to have simply accepted at face value. (Exhibit GG, 80:20-81:4).

5     ▮▮▮▮▮▮ (Exhibit

6     GG, 58:10-21, 60:4-10; *see also* Letter dated August 9, 2013 from David Fathi to Struck,

7     Wieneke & Love, attached as Exhibit KK). ▮▮▮

9     ▮▮▮▮ (Exhibit GG, 59:6-11, 60:14-20, 62:3-10).

10         Dr. Williams did not do any studies or statistical analyses to support her opinions

11     in this matter. ▮▮▮

12     ▮▮▮ (Exhibit GG, 87:6-13).

15     ▮▮▮ (Exhibit GG, 106:7-23). ▮▮▮

17     ▮▮▮ (Exhibit GG, 107:9-14). ▮▮▮

20     ▮▮▮ (Exhibit GG, 120:1-14).

(Exhibit FF, 2).

(Exhibit GG, 159:9-16) (emphasis added). In short, Dr. Williams used the definitions she was told to use, reviewed the documents she was told to review, spoke with whom she was told to speak, and did not go beyond the instructions given to her.

## II.   LEGAL ARGUMENT

### A.   Plaintiffs' Experts Should Be Precluded From Testifying At Trial Because Their Opinions Are Unreliable And Based On Insufficient Facts And Data.

Plaintiffs' experts' proposed testimony, as set forth in their expert reports and deposition testimony, fails to meet Fed. R. Evid. 702's requirement that the testimony be "based on sufficient facts or data." FRE 702(b). Plaintiffs' experts' opinions are therefore unreliable, and Plaintiffs' experts should be precluded from testifying at trial.

Rule 702 assigns the Court the task of ensuring that the testimony of each expert rests on a reliable foundation and is based on scientifically valid principles. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 2799 (1993). "[U]nder the Rules[,] the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id*. at 590, 113 S.Ct. at 2795. In fulfilling this "gatekeeping" function, the Court must determine "whether the reasoning or methodology underlying the testimony is scientifically valid and … whether that reasoning or methodology can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-593, 113 S.Ct. at 2796.[7] The focus of the Court's inquiry is "the scientific validity – and thus the evidentiary relevance and reliability – of the principles that underlie" Plaintiffs' experts' proposed submissions. *Id*. at 594-595, 113 S.Ct. at 2797. *See also Crowley v. Chait*, 322 F.Supp.2d 530 (D.N.J. 2004). Plaintiffs, as the proponents of the expert

_____

[7] *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 119 S.Ct. 1167, 1175 (1999) (holding that expert testimony "requires a valid … connection to the pertinent inquiry as a precondition to admissibility. And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question … the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline") (internal citations and quotations omitted); *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 501 (9th Cir. 1994) (holding that, under Rule 702, "the district court was both authorized and obligated to scrutinize carefully the reasoning and methodology" underlying proffered expert testimony).

testimony, must establish by a preponderance of the evidence that the testimony is reliable, and that it otherwise complies with Rule 702. *U.S. ex rel. Loughren v. UnumProvident Corp.*, 604 F.Supp.2d 259, 264 (D. Mass. 2009).

In *Crowley*, the plaintiff, the appointed receiver of an insolvent insurance company, sued the officers of the insurance company for mismanagement, and sued the accountants responsible for auditing the insurance company for negligence. The defendant accounting firm moved to strike the plaintiff's insurance expert. The defendant argued that the expert merely relied on information that had been spoon-fed to him by the plaintiff's counsel. *Id*. at 542. Specifically, the defendant objected to the fact that the expert was only provided the deposition testimony of certain claims personnel selected by the plaintiff's counsel. *Id*. The district court agreed, noting that "[t]he information upon which an expert bases his testimony must be reliable, and ***the selective furnishing of information by counsel to an expert runs afoul of Fed. R. Evid. 703***, which, in addition to Rule 702, must be considered by a court for *Daubert* purposes." *Id*. (emphasis added). The district court granted the motion to strike as to all opinions of the expert that were based on the selected deposition testimony. *Id*. at 543.

In *Sommerfield v. City of Chicago*, 254 F.R.D. 317 (N.D. Ill. 2008), the plaintiff, a Chicago police officer, sued the city for discrimination and retaliation. The city moved to strike the plaintiffs' expert's report and to preclude the expert from testifying at trial pursuant to *Daubert*. The city argued that the plaintiff's counsel had summarized 11 of the 17 depositions that had been taken in the case, boiling 2,649 pages of transcript down to only 26 pages, approximately 1% of the total available deposition testimony. *Id*. at 322. Additionally, the summaries failed to account for the 956 pages of additional testimony encapsulated in the six depositions that were not included in the summary. *Id*. The expert did not attempt to independently verify that the information in the summaries was accurate, nor did he review the depositions to ensure that there was no other information in them that was relevant to his opinions. *Id*. at 325. Holding that to presume the reliability of the summaries and to allow the expert to testify based on those summaries

"would be an abdication of the screening function *Daubert* and *Kumho Tire* have imposed on district courts," the court struck the expert's report and precluded the expert from testifying to any opinions at trial based on the report. *Id*. at 326-328.[8]

As the Court is aware, this matter involves a large class action lawsuit with a certified class of approximately 33,000 inmates. Plaintiffs' counsel represented to the Court that given the size of the class, a random sample free from sampling bias would provide the best results. (Exhibit B, 35:9-21). Plaintiffs' counsel then turned around and provided Plaintiffs' experts only highly selective information that was not randomly sampled, but that was cherry-picked by Plaintiffs' counsel as in the cases cited above. On the basis of this non-random, non-representative information, Plaintiffs' experts have rendered sweeping opinions purporting to cover the entire class of 33,000 inmates. In this context, the Court's function as "gatekeeper" becomes all the more crucial.

Although it is to be expected that Plaintiffs' counsel will give the evidence a "partisan slant," such biased views of the evidence are "incompatible with the neutrality and evenhandedness" demanded by *Daubert* of the evidence upon which Plaintiffs' experts relied in forming their opinions. *Sommerfield*, 254 F.R.D. at 322. Given the bias inherent in providing only selective information to Plaintiffs' experts, it is no wonder the experts concluded that systemic deficiencies exist in ADC – such conclusions were pre-ordained given the limited information on which they were based. Plaintiffs' experts' opinions lack the reliable foundation required by Rule 702, and Plaintiffs' experts should be precluded from testifying at trial as a result.

### 1.      Robert L. Cohen, M.D.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[8] *See also U.S. v. City of Torrance*, 163 F.R.d. 590, 593 (C.D. Cal. 1995) (observing that the Federal Rules allow for the discovery of documents shown to an expert to "assure[] the independence of the expert's thinking, both her analysis and her conclusions," by minimizing the risk "that the lawyer will do the thinking for the expert, or, more subtly, that the expert will be influenced, perhaps appreciably, by the way the lawyer presents or discusses the information.") (internal citations and quotations omitted).



1 ████████████████████████████████████████████

2 ██████      (Exhibit C, Appendix B).   ████████████████████

3 ████████████████████████████████████████████

4 (Exhibit D, 116:4-117:1).   ████████████████████████

5 ████████████████████████   (Exhibit C, ¶3; Exhibit C, 83:3-8).   ██████

6 ████████████████████████████████████████████ (Exhibit

7 D, 86:24-88:2, 88:8-89:13; Exhibit E).   ██████████████

8 ████████████████████████████████████████████

9 ████████████████████████████████████████ (Exhibit

10 D, 134:15-25).   ██████████████████████████████

11 ████████████████████████████████████████ (Exhibit

12 D, 91:24-92:8).

13      ████████████████████   (Exhibit D, 95:11-18).   ████████

14 ████████████████████████████████████████████

15 ████████████████████████████████████████████

16 ██████████████   (Exhibit  D,  95:23-96:5).   ████████████

17 ████████████████████   (Exhibit D, 96:6-9). Such a data selection process is

18 improper from an expert who is expected to provide his opinions based on reliable data.

19 *Sommerfield*, 254 F.R.D. at 322.

20      Dr. Cohen's opinions are a textbook example of the type of biased, spoon-fed

21 expert opinions at issue in *Crowley* and *Sommerfield*. Dr. Cohen should be precluded from

22 testifying at trial, as the evidence on which his testimony and opinions are based is not

23 reliable, and will not assist the trier of fact.

24           **2.     Craig Haney, Ph.D., J.D.**

25      ████████████████████████████████████   (Exhibit  H,  ¶¶9-12).   ██

26 ████████████████████████████████████████████

27 ████████████████████   (Exhibit H, ¶¶9-12, Appendix C; Exhibit J, Appendix

28 A). Dr. Haney did not request any additional medical records or other documents.   ████

1  ████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████

3  ████████████████████████████ (Exhibit I, 163:15-164:3).

4  ████████████████████████████████████████████████

5  ████████████████████████████████████████████████████

6  ████████████████████████████████████████████████

7  ████████████████████████████ (Exhibit I, 36:2-20; Exhibit K). The few

8  "random" cell-front interviews Dr. Haney conducted do not change this. ████████

9  ████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████ (Exhibit I,

11  39:6-19). Dr. Haney should be precluded from testifying at trial, as the biased and cherry-

12  picked evidence on which his testimony and opinions are based is not reliable, and his

13  opinions will not assist the trier of fact.

14             **3.**     **Jay D. Shulman, D.M.D., M.A., M.S.P.H.**

15  ████████████████████████████████████████████████

16  ████████████████████████████████████████████████████

17  (Exhibit L, 9). In other words, Dr. Shulman did not take a random sample of all inmates

18  who had requested and/or received dental care at an ADC facility, but instead looked for

19  inmates who may have already been experiencing issues in receiving dental care. ██

20  ████████████████████████████████████████████████████

21  ██████████ (Exhibit M, 22:11-18). ████████████████████

22  ██████████████████████████████████████████████ (Exhibit

23  M, 73:14-75:1). ████████████████████████████████████

24  ██████████████████████████ (Exhibit L, 9; Exhibit M, 34:6-8).

25        Dr. Shulman bases his opinions on a review of non-randomly-selected, non-

26  representative dental records for less than 1% of ADC's total inmate population. Many of

27  the records he reviewed were hand-picked by Plaintiffs' counsel, specifically because

28  Plaintiffs' counsel wanted him to review them. Dr. Shulman's opinions are therefore

1  tainted by bias as well, and are unreliable. Dr. Shulman should be precluded from

2  testifying at trial.

3          **4.      Pablo Stewart, M.D.**

4          Dr. Stewart is another textbook example of the type of spoon-fed expert who

5  should not be permitted to testify at trial. ██████████████████████████

6  ███████████████████  (Exhibit P, 9). ████████████████

7  ████████████████████████████████  (Exhibit P, [Appendix] C;

8  Exhibit P, [Appendix] C; Exhibit S, [Appendix] B; Exhibit T). ████████████

9  ██████████████████████  (Exhibit P, [Appendix] C; Exhibit R,

10 [Appendix] C; Exhibit S, [Appendix] B; Exhibit T). ████████████████

11 ██████████████  (Exhibit Q, 76:21-23, 77:6-9). ████████████

12 ██████████████████  (Exhibit Q, 76:24-77:1). ██████████

13 ████████████████████████████████████████

14 ████████████████  (Exhibit Q, 76:4-7, 77:2-5).

15 ████████████████████████████████  (Exhibit

16 Q, 73:25-74:10; Exhibit U). ████████████████████

17 ████████████████████████  (Exhibit Q, 74:24-75:1). ██████

18 ████████████████████████████████████████

19 ████████████████████████████████████████

20 ██████████████████  (Exhibit Q, 84:5-10, 84:16-85:17). ██████

21 ████████████████████████████████████████

22 (Exhibit Q, 84:16-85:17).

23         Plaintiffs' counsel spoon-fed Dr. Stewart the information on which he based his

24 opinions. By his own account, Dr. Stewart did almost no independent investigation

25 whatsoever, but was content to rely entirely on Plaintiffs' counsel to provide him with the

26 necessary information. It is no wonder Dr. Stewart's opinions support Plaintiffs' position,

27 as they are based solely on information and documents selected by Plaintiffs' counsel. Dr.

28 Stewart should be precluded from testifying at trial.

                                          23

1       **5.     Eldon Vail**

2       ████████████████████████████████████████████████████

3       ██████████ (Exhibit V, [Appendix] 2; Exhibit W, Appendix A; Exhibit X). ██████

4       ████████████████████████████████████████████████████

5       ████████████████████████████████ (Exhibit V, [Appendix] 2; Exhibit W,

6       Appendix A; Exhibit X). ████████████████████████████

7       ████████████████████████████████████████████████████

8       ████████████████████████████████████ (Exhibit Z, 50:15-51:13,

9       115:9-14). ██████████████████████████████████ (Exhibit Z,

10      50:15-51:13). ████████████████████ (Exhibit V, ¶16).

11      With such a small well of information from which to draw, it is no surprise that Mr.

12      Vail's opinions are unsupported by any actual data. ██████████████

13      ████████████████████████████████████████████████████

14      ████████████████████████████████████████████████████

15      ████████████████ (Exhibit Z, 113:25-114:19). ████████████

16      ████████████████████████████████████████████████████

17      ████████████████████████████████████ (Exhibit Z, 120:13-15).

18      ████████████████████████████████████████████████████

19      ████████████████████████████████████████████████████

20      ████████████████████████████████████████████████████

21      ████████████████████████████████████████████████████

22      (Exhibit Z, 141:6-18, 151:8-152:17).

23      ██████████████████████████████████████████████████

24      ████████████████████████████████████████████████████

25      ████████████████████████████████████████████████████

26      ████████████████████████████████████████████████████

27      ████████████████████████████ (Exhibit Z, 126:14-127:2). ██████

28      ████████████████████████████████████████████████████

1 ███████████████████████████████████████████████████████

2 ███████████████████████████████████████████████████████

3 ████████████████████████████████████████ (Exhibit Z, 133:3-134:6). ███

4 ███████████████████████████████████████████████████████

5 ███████████████████████████████████████████████████████

6 ████████████████████████████ (Exhibit Z, 143:23-144: 25).

7      Mr. Vail's opinions are based on cherry-picked information, and are unsupported

8 by any actual facts, or by so little fact as to constitute mere speculation. Mr. Vail's

9 testimony is biased and unreliable, as Plaintiffs' counsel hand-selected what little

10 evidence he relies on. Mr. Vail should be precluded from testifying at trial.

11        **6.**    **Todd Randall Wilcox, M.D. M.B.A., C.C.H.P.-A**

12 ███████████████████████████████████████████████

13 ██████████████████████████████████ (Exhibit AA, 2, Appendix C).

14 ███████████████████████████████████████████████████████

15 ███████████████████████████████████████████████████████

16 █████████████████████████████████████████████████ (Exhibit BB,

17 95:22-96:13, 96:19-97:16, 98:15-99:7; Exhibit CC). ██████████████

18 ███████████████ (Exhibit BB, 87:14-24). ████████████

19 ██████████████ (Exhibit AA, 3). ██████████████

20 ███████████████████████████████████████████████████████

21 ███████████████████████████████████████████████████████

22 ███████████████████████████████████████████████████████

23 ████████████████████████ (Exhibit BB, 93:6-94:2).

24      Besides being based on biased information, Dr. Wilcox's opinions lack foundation.

25 ███████████████████████████████████████████████████████

26 ███████████████████████████████████████████████████████

27 ████████████████ (Exhibit BB, 113:3-11, 136:15-19). ████████████

28 ███████████████████████████████████████████████████████



1  ██████████████████████████████████ (Exhibit BB, 165:16-

2  166:5). ███████████████████████████████████████████████

3  █████████████████████████████████████████████████████

4  ████████████ (Exhibit BB, 170:18-171:9). ████████████████████

5  █████████████████████████████████████████████████████

6  ██████████████ (Exhibit BB, 176:24-178:15). ████████████████

7  █████████████████████████████████████████████████████

8  █████████████████████████████████████████████████████

9  █████████████████████████████████████████████████████

10 ██████████████ (Exhibit BB, 181:6-182:11, 182:15-23). █████████

11 █████████████████████████████████████████████████████

12 █████████████████████████████████████████████████████

13 █████████████████████████████████████████ (Exhibit BB, 182:24-

14 184:4).

Dr. Wilcox's opinions are biased and unreliable because they are based almost entirely on information hand-picked by Plaintiffs' counsel, and because he cannot cite to any admissible evidence to support them. Dr. Wilcox should be precluded from testifying at trial.

**7.    Brie Williams, M.D., M.S.**

20 ████████████████████████████████████████████████████

21 ███████████████████████████ (Exhibit FF; Doc. #372). Dr. Williams's opinions, regardless of their foundation, therefore cannot assist the Court in understanding the evidence or determining a fact in issue. *See* FRE 702(a); *Daubert*, 509 U.S. at 591, 113 S.Ct. at 2795 ("Rule 702 further requires that the evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue. This condition goes primarily to relevance. ***Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful***.") (internal citations and quotations omitted)

1  (emphasis added). Dr. Williams should be precluded from testifying at trial on this basis
2  alone.

3      Beyond that, Dr. Williams's opinions lack foundation, as they are based on
4  extremely limited, cherry-picked information provided to her by Plaintiffs' counsel. ▮▮

5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6  (Exhibits FF, HH, II, and JJ). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Exhibit GG, 21:5-22:3,

9  55:20-56:6). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Exhibit GG, 80:20-81:4).

12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14 ▮▮▮▮▮▮▮▮ (Exhibit GG, 58:10-21, 60:4-10; Exhibit KK). ▮▮▮▮▮▮▮

15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16 ▮▮ (Exhibit GG, 59:6-11, 60:14-20, 62:3-10, 159:9-16). Dr. Williams used the definitions
17 she was told to use, reviewed the documents she was told to review, spoke with whom she
18 was told to speak, and did not go beyond the instructions given to her. There can be no
19 doubt that Dr. Williams's testimony is biased, unreliable, and based entirely on the
20 information and documents Plaintiffs' counsel selected for her review. They are lacking
21 completely in independent analysis and investigation, neutrality, and evenhandedness. Dr.
22 Williams should be precluded from testifying at trial as a result.

23      **B.  Plaintiffs' Experts Should Be Precluded From Testifying At Trial
        Because Their Opinions Are Not The Product Of Reliable Principles
24      And Methods.**

25      Plaintiffs' experts' proposed testimony also fails to meet Fed. R. Evid. 702's
26 requirement that the testimony be "the product of reliable principles and methods." FRE
27 702(c). Indeed, "*Daubert*'s requirement that the expert testify to scientific knowledge—
28 conclusions supported by good grounds for each step in the analysis—means that ***any step***

1     ***that renders the analysis unreliable under the Daubert factors renders the expert's***

2     ***testimony inadmissible***." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 745 (3d Cir.

3     1994) (emphasis added). *See also ThermoLife Intern., LLC v. Gaspari Nutrition, Inc.*,

4     2014 WL 99017, *2-10 (D. Ariz. 2014) (granting six *Daubert* motions to strike experts

5     where the experts' opinions were not based on sufficient facts or data, were not the

6     product of reliable principles and methods, and/or were likely to mislead the jury).

7        None of Plaintiffs' experts toured all 10 facilities, none of them reviewed the

8     medical records of all 33,000 ADC inmates, and none of them interviewed every inmate.

9     While this may be understandable in a system of ADC's size, none of Plaintiffs' experts

10    requested or reviewed the random, representative, unbiased sampling Plaintiffs' counsel

11    acknowledged would provide accurate information. (Exhibit B, 35:9-21). None of them

12    conducted any statistical analysis to support their opinions even within the small sample

13    groups each of them reviewed/interviewed/toured. None of them conducted any statistical

14    analysis extrapolating their findings to the ADC system in general.

15       Nevertheless, every one of Plaintiffs' experts purports to opine on ADC's system-

16    wide practices and/or conditions even though none of them has provided a sufficient basis

17    for their attempts to do so. Plaintiffs' experts base their opinions regarding ADC's system-

18    wide practices and conditions on anecdotal evidence and the examples of a few inmates

19    they simply assume apply to the system writ large. Plaintiffs' experts' methods are

20    unreliable, and their conclusions are not supported by good grounds, making their

21    testimony inadmissible at trial. *Paoli*, 34 F.3d at 745.

22       "The applicability of inferential statistics have long been recognized by the courts."

23    *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1020 (5th Cir. 1997).[9] In its most general

24    _____

25        [9] *See also Ratanasen v. State of Cal., Dept. of Health Services*, 11 F.3d 1467, 1471 (9th Cir. 1993) ("We now join other circuits in approving the use of sampling and

26    extrapolation as part of audits in connection with Medicare and other similar programs… To deny public agencies the use of statistical and mathematical audit methods would be to deny them an effective means of detecting abuses in the use of public funds."); *Hilao v.*

27    *Estate of Marcos*, 103 F.3d 767, 782–787 (9th Cir.1996) (approving the use of random sampling and statistical evidence to determine damages); *Scottsdale Memorial Health*

28    *Systems, Inc. v. Maricopa County*, 224 Ariz. 125, 141, 228 P.3d 117, 133 (App. 2010)

sense, "statistics" refers to "the art and science of gaining information from … observations or measurements, expressed as numbers." David H. Kaye and David A. Freedman, *Reference Guide on Statistics* 85 (2d ed., Fed. Judicial Center 2000). Properly-conducted statistical analyses produce samples that are representative of the populations from which they are taken. *Id*. at 100-102. Statistical methods generally satisfy important aspects of the "scientific knowledge" requirement of *Daubert*, as they are generally described in textbooks and journal articles, and are capable of producing useful results when properly applied. *Id*. at 86. Courts have recognized that where the sample is randomly selected and of sufficient size so as to achieve statistical significance to the desired level of confidence in the result, one may confidently draw inferences about the whole from the sample. *Chevron*, 109 F.3d at 1019-1020.[10]

Plaintiffs, however, seem to want to circumvent the time, expense, and effort necessary to conduct proper statistical analysis of ADC's policies and practices by having their experts opine about the ADC system in general terms based solely on unreliable and untested anecdotal evidence – the experts' limited review of medical records, inmate

---

("[W]e conclude the Rules of Civil Procedure permit the superior court to employ statistical sampling and extrapolation in [mass tort cases] if the court finds, based on competent scientific evidence, that the methodology to be employed appropriately takes into account the variables in the claims, addresses the relationships among those variables and uses 'a sample of sufficient size so as to permit a finding that there is a sufficient level of confidence that the results obtained reflect results that would be obtained from trials of the whole.'") (*citing Chevron*, 109 F.3d at 1020)); *Harris v. Pernsley*, 654 F.Supp. 1042, 1049-1050 (E.D. Penn. 1987) (recognizing case that if the proposed settlement were not accepted by the court in a class action case regarding prison conditions, "[s]tatistical evidence would be offered, the expert analysis of which would be complicated, time consuming, and expensive"); *In re Countrywide Financial Corp. Mortgage-Backed Securities Litigation*, 2013 WL 6231713 (C.D. Cal. December 2, 2013) (finding the plaintiff's expert's proposed sampling methodology to meet the requirements for scientific reliability under Rule 702); *U.S. ex rel. Loughren v. UnumProvident Corp.*, 604 F.Supp.2d 259, 261 (D. Mass. 2009) (concluding that extrapolation is a "reasonable method for determining the number of false claims so long as the statistical method is appropriate"); *United States v. Cabrera–Diaz*, 106 F.Supp.2d 234, 240–241 (D.P.R. 2000) (approving the use of a statistical sample and extrapolation in a False Claims Act case).

[10] *See also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1321-1322 (9th Cir. 1995) (on remand) (affirming the district court's exclusion of the plaintiffs' epidemiological experts where the experts could not say that the drug caused the plaintiffs' birth defects because they did not conduct proper statistical studies comparing random samples of the population to support their opinions).

interviews, and facility tours comprising only a small, cherry-picked subset of the total available data. Reliable generalizations about correctional systems, especially one as large as ADC, cannot be made on the basis of such anecdotal evidence without any statistical support. *See, e.g., Porras v. County of Los Angeles*, 2006 WL 4941837, *5 (C.D. Cal. 2006) ("The use of statistics to corroborate anecdotal evidence is a valid and potentially effective approach. But Plaintiffs' execution of this strategy is impotent here. The Court is unable to infer from the fact of court orders [compelling Defendants to provide medical examinations or other care to individual inmates], numerous though they are, that Defendants' jails are generally in violation of the Eighth Amendment. It is distinctly possible that a pattern of systemic failure lurks within this mass of statistics. If so, however, Plaintiffs have left it to the Court to discover any pattern. The Court is unable to do so."); *Henderson v. City and County of San Francisco*, 2006 WL 3507944, *10 (N.D. Cal. 2006) ("[P]laintiffs contend the eighteen grievances submitted by jail inmates show that San Francisco has a systematic policy of deliberate indifference to constitutional violations. The court disagrees. Plaintiffs have selected these eighteen grievances from the more than 200 grievances against staff filed in San Francisco [County Jail No. 2] over a one-year period, during which more than 6000 different inmates were housed in the facility… On plaintiffs' account, then, fewer than one-quarter of one percent of [County Jail No. 2] inmates complain of any kind of force in a year.").

Because none of Plaintiffs' experts selected a random, unbiased, and representative sample of medical, mental health, dental or other records, or extrapolated their findings to the ADC system as a whole through statistical analysis, this Court can have no confidence in any inferences Plaintiffs' experts may draw about ADC from their respective samples. To allow the experts to testify to these opinions at trial would only mislead the Court to Defendants' extreme prejudice. *See* Fed. R. Evid. 403.

(Exhibit N).

1  ████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████

3  (Exhibit L, 9; Exhibit M, 31:3-13). Dr. Shulman did not perform any statistical analysis to

4  extrapolate his findings to the general ADC population (or even to quantify his findings).

5  Plaintiffs should therefore be precluded from presenting this testimony at trial.

6  ████████████████████████████████████████████

7  ██████████████████████ (Exhibit I, 36:2-37:14, 37:15-38:10). ████████

8  ██████████████████████████████████████████ (Exhibit H,

9  Appendix C; Exhibit I, 40:20-41:5; Exhibit J). ████████████████

10  ████████████████████████████████████████████████████

11  ██████████████████████████████████████████ (Exhibit I,

12  39:6-19). ████████████████████████████████████████

13  ████████████████████████████████████████████████████

14  ██████████████████████████████████████████ (Exhibit I,

15  40:20-41:11). ██████████████████████████████████

16  ████████ (Exhibit I, 60:19-24). ██████████████████

17  ██████████████████████████████████████████ (Exhibit I,

18  87:5-88:8,  138:12-139:7) ██████████████████████

19  ██████████████████████████████████ (Exhibit I, 88:9-89:17). ████

20  ████████████████████████████████████████████████████

21  ██████████████████████ (Exhibit I, 92:19-93:4, 93:23-94:3) ████████

22  ████████████████████████████████████████████████████

23  ████████████ (Exhibit I, 105:7-106:15, 147:24-148:4, 150:7-14). Plaintiffs should

24  therefore be precluded from presenting Dr. Haney's testimony at trial.

25  ████████████████████████████████████████████

26  ████████████████████████████████████████████████████

27  ████████████████ (Exhibit D, 91:24-92:8). ████████████████

28  ██████████████████████████████ (Exhibit C, ¶4). ██████████

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████

4 ██████████████████████████████████ (Exhibit C, ¶4). Dr. Cohen should also

5 be precluded from testifying at trial.

6 ████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████

8 ████████████ (Exhibit Q, 72:25-73:10, 76:21-23, 77:6-9, 92:11-18). ████████

9 ████████████████████████████████████████████████████████

10 ██████████████████████████████████ (Exhibit Z, 50:15-51:13). In any event,

11 Mr. Vail did not explain how (or whether) his "randomly" selected sample was

12 representative of the ADC population as a whole. █████████████████

13 ████████████████████████████ (Exhibit AA, p. 3). ████████

14 ████████████████████████████████████████████████████████

15 ████████████ (Exhibit BB, 136:15-19). ████████████████

16 ████████████████████████████████████████████████████████

17 █████████████████████████████████████████ (Exhibit GG,

18 87:6-13, 107:9-14). These experts should be precluded from testifying at trial.

19      Although courts, including the Ninth Circuit, have recognized the value of

20 statistical analysis in a variety of complex cases, including cases alleging systemic Eighth

21 Amendment violations, Plaintiffs' experts have elected not to use such analysis in

22 formulating their opinions. This has not stopped them, however, from attempting to

23 expand their findings from the small, non-random, non-representative sample groups they

24 each evaluated to ADC's 10-facility, 33,000-inmate system.

25      Plaintiffs' experts will undoubtedly refer to their experience in conducting these

26 types of evaluations, but the fact that other courts have let them slide by with shoddy

27 pseudo-science and faulty methodology should not excuse their attempts to do so now.

28 Rule 702 clearly requires that an expert witness's testimony be "the product of reliable

principles and methods." FRE 702(c). Plaintiffs' experts have not applied any recognized scientific methods to reach their conclusions, and have not even explained the non-scientific processes they followed to get from anecdotal evidence obtained from a few ADC inmates about a relatively small number of isolated incidents and a review of less than 1% of the inmates' records to opinions regarding ADC's alleged system-wide deficiencies in 10 facilities housing approximately 33,000 inmates. As the United States Supreme Court observed in *General Elec. Co. v. Joiner*:

> But conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But ***nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.***

*General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 519 (1997) (emphasis added). *See also Daubert*, 43 F.3d at 1316 ("[T]he expert's bald assurance of validity is not enough. Rather, the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology.").

As in *Joiner*, the "analytical gap between the data and the opinion proffered" by Plaintiffs' experts is simply too great here. Plaintiffs' experts appear to expect Defendants and the Court to just take their word for it, without explaining themselves or their methods, simply because they are experts and have done this before. Such "bald assurances" of validity are not enough, and Plaintiffs' experts should be precluded from testifying at trial, as their opinions are not the product of reliable principles and methods.

###    C.    **Alternatively, Plaintiffs Should Be Limited To Presenting The Testimony Of Either Dr. Cohen Or Dr. Wilcox At Trial, As Their Opinions Are Needlessly Cumulative.**

In addition to being based on insufficient facts or data and the product of unreliable principles and methods, Dr. Cohen and Dr. Wilcox's opinions are duplicative of each other, such that allowing both experts to testify would result in the needless presentation of cumulative evidence. FRE 403. As such, Defendants respectfully request that, to the

extent both experts are not precluded from testifying at trial pursuant to Rule 702, the Court require Plaintiffs to select one or the other to testify regarding ADC's health care delivery system, but that the Court preclude Plaintiffs from soliciting testimony from both.

Rule 403 provides that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of … needlessly presenting cumulative evidence." *See also Davis v. Mason County*, 927 F.2d 1473, 1484 (9th Cir. 1991) (holding that the district court did not abuse its discretion in precluding the testimony of one of the defendant's experts as cumulative evidence pursuant to Rule 403 where another of the defendant's experts had already testified on the same topic) (*superseded by statute on other grounds as stated in Davis v. City and County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992)); *U.S. v. Marabelles*, 724 F.2d 1374 (9th Cir. 1984) (same); *Engman v. City of Ontario*, 2011 WL 2463178, *8 (C.D. Cal. 2011) (finding that the opinions rendered by the plaintiffs' dual police procedures and taser experts "appear[ed] to overlap substantially," and that allowing both experts to testify on the issues for which they were designated would be cumulative pursuant to Rule 403, but withholding final judgment on the defendants' motion in limine to preclude the second expert based on the plaintiffs' representation that they would only call the expert at trial if the first witness was unavailable).

Here, Dr. Cohen and Dr. Wilcox's opinions "overlap substantially," such that one or the other should be precluded from testifying at trial (to the extent they are not both precluded pursuant to Rule 702). ████████████████

████████████████████████████ (Exhibit C, ¶1; Exhibit AA, 1-2). Although Plaintiffs may argue that each expert toured and/or reviewed different facilities, neither expert restricted his opinions to those facilities he toured or otherwise reviewed. ████████

████████████████████████████████████████████

████████ (Exhibit C, ¶6; Exhibit AA, 5). These opinions include, but are not limited to, the following:



**Dr. Cohen**

**Dr. Wilcox**

(Exhibit C, ¶¶6-7).

(Exhibit AA, 5).

(Exhibit C, ¶8).

(Exhibit AA, 8).

(Exhibit C, ¶9).

(Exhibit AA, 17, 24).

(Exhibit C, ¶10).

(Exhibit AA, 32-33).

(Exhibit AA, 69).

(Exhibit C, ¶11).

(Exhibit C, ¶12).

(Exhibit AA, 45).

(Exhibit C, ¶13).

(Exhibit AA, 76).

Dr. Cohen and Dr. Wilcox fill the same role, and offer the same opinions. The fact that they both toured and/or reviewed different facilities does not change this. There is simply no need or reason to allow both experts to testify at trial (to the extent they are not precluded pursuant to Rule 702). Rule 403 invests the Court with discretion to preclude expert testimony on the grounds that it will result in needless presentation of cumulative evidence. Defendants respectfully request that the Court exercise that discretion by requiring Plaintiffs to select either Dr. Cohen or Dr. Wilcox to testify at trial, to the extent they are not both precluded pursuant to Rule 702, and to preclude Plaintiffs from soliciting testimony from both experts.

**D.    As A Second Alternative, Plaintiffs' Experts Should Be Precluded From Testifying Regarding Any Facilities They Did Not Tour Or Otherwise Review.**

Although Defendants maintain that Plaintiffs' experts should be precluded from testifying entirely, as their opinions are based on non-random, non-representative, biased samples and are not the product of reliable principles and methods, Defendants respectfully request that the Court preclude any of Plaintiffs' experts that are permitted to testify at trial from offering opinions regarding facilities they did not personally tour or otherwise review. Rule 702 requires that an expert's opinions be based on sufficient facts or data. FRE 702(b); *see also Daubert*, 509 U.S. at 597, 113 S.Ct. at 2799 (holding that Rule 702 requires the trial judge to ensure that an expert's testimony "rests on a reliable foundation"). None of Plaintiffs' experts toured or reviewed the operations all 10 ADC facilities. Consequently, none of Plaintiffs' experts have sufficient facts or data to support opinions regarding conditions of confinement and/or the provision of medical, mental health, and/or dental care in all 10 facilities. Just as a deponent cannot give a reliable estimate about the length of a table he has not seen, an expert logically cannot form reliable opinions regarding conditions of confinement in a facility in which he has never stepped foot, or the operation of which he has not reviewed. The same goes for opinions regarding the provision of medical, mental health, and/or dental care in a particular facility.

Plaintiffs' experts have no foundation whatsoever on which to base opinions regarding facilities they did not visit or otherwise review. At most, each expert has some foundation to support opinions regarding those individual facilities he or she actually toured, and whose operations he or she actually reviewed. Defendants therefore respectfully request that the Court restrict any of Plaintiffs' experts who are permitted to testify at trial to offering opinions about the following facilities:

Robert L. Cohen

Craig Haney

Jay Shulman

Pablo Stewart

Eldon Vail

Todd Randall Wilcox

Brie Williams

## III.   CONCLUSION

Plaintiffs' experts' opinions fail to meet the standards of Fed. R. Evid. 702 in that they are neither based on sufficient facts or data nor the product of reliable principles and methods. As such, Defendants respectfully request that this Court preclude Plaintiffs' experts from testifying at trial. Alternatively, Defendants respectfully request that Plaintiffs' experts' testimony and opinions be limited to testimony and opinions regarding those facilities each expert personally toured, and whose operations each expert personally

/ / /

/ / /

1   reviewed.

2        DATED this 14th day of May 2014.
                                STRUCK WIENEKE & LOVE, P.L.C.
3

4                           By /s/ Daniel P. Struck
                                Daniel P. Struck
5                               Kathleen L. Wieneke
                                Rachel Love
6                               Timothy J. Bojanowski
                                Nicholas D. Acedo
7                               Ashlee B. Fletcher
                                Anne M. Orcutt
8                               STRUCK WIENEKE & LOVE, P.L.C.
                                3100 West Ray Road, Suite 300
9                               Chandler, Arizona  85226

10                              Arizona Attorney General Thomas C. Horne
                                Office of the Attorney General
11                              Michael E. Gottfried
                                Lucy M. Rand
12                              Assistant Attorneys General
                                1275 W. Washington Street
13                              Phoenix, Arizona 85007-2926

14                              *Attorneys for Defendants*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                38

**CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amy Fettig: | afettig@npp-aclu.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| Daniel Joseph Pochoda: | dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| James Duff Lyall: | jlyall@acluaz.org; gtorres@acluaz.org |
| Cathleen M. Dooley: | cdooley@azdisabilitylaw.org |
| J.J. Rico: | jrico@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Kirstin T. Eidenbach: | keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; docketphx@perkinscoie.com |
| Jerica L. Peters: | jpeters@perkinscoie.com |
| Matthew Benjamin de Mee: | mdumee@perkinscoie.com; cwendt@perkinscoie.com |
| Michael Evan Gottfried: | Michael.gottfried@azag.gov; colleen.jordan@azag.gov; lucy.rand@azag.gov |
| Sara Norman: | snorman@prisonlaw.com |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| David C. Kiernan: | dkiernan@jonesday.com; lwong@jonesday.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Kamilla Mamedova: | kmamedova@jonesday.com |

| | |
|---|---|
| Jennifer K. Messina: | jkmessina@jonesday.com |
| Taylor Freeman: | tfreeman@jonesday.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org, mlauritzen@azdisabilitylaw.org |
| Katherine E. Watanabe: | Katherine.Watanabe@azag.gov, susan.oquinn@azag.gov |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, pdrew@perkinscoie.com |
| Lucy Marie Rand: | Lucy.Rand@azag.gov, Geneva.Johnson-Joksch@azag.gov |
| Ajmel Quereshi: | aquereshi@npp-aclu.org |
| Jessica Jansepar Ross | jross@azdisabilitylaw.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ Daniel P. Struck
_____

40