Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-NVW<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION** |

Plaintiffs request reconsideration of the Court's order "declin[ing] to authorize any further prison tours." (Doc. 871, 876.) Their Motion should be denied for the following reasons.

## I. RECONSIDERATION IS IMPROPER

Although LRCiv 7.2(g)(1) permits reconsideration only upon "a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence," Plaintiffs do not even attempt to make this showing, much less argue it. Instead, they are improperly asking the Court to "rethink" its prior ruling. *See Morgal v. Maricopa Cnty. Bd. of Sup'rs*, CIV 07-0670-PHX-RCB, 2012 WL 2368478, at *1 (D. Ariz. June 21, 2012) ("Asking a court to rethink its analysis is not a proper basis for seeking reconsideration."). Even more improper, their request is based either on arguments that were already made in their Response to Defendants' Supplemental Brief, which the Court rejected, or arguments that <u>should have been made</u> in that Response, but were <u>not</u>. *See Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003); *Estrada v. Bashas' Inc.*, CV-02-00591-PHX-RCB, 2014 WL 1319189, at *1 (D. Ariz. Apr. 1, 2014); *Grady v. Bank of Elmwood*, CV11-2060-PHX-JAT, 2012 WL 1848679, at *1 (D. Ariz. May 21, 2012); *Arizona ex rel. Goddard v. Frito-Lay, Inc.*, 273 F.R.D. 545, 558–59 (D. Ariz. 2011).

The Court afforded Plaintiffs an opportunity to "detail[] the targeted and focused discovery" that they felt was necessary in their Response to Defendants' Supplemental Brief. (Doc. 848.) Plaintiffs largely wasted that opportunity, and instead resorted to scare tactics in hopes that the Court would deny Defendants' request to extend the discovery cut-off outright. (Doc. 858, 862.) Plaintiffs' Response included two cursory sentences on the need for additional expert tours (Doc 858 at 6:27-7:3), and their corresponding Appendices included only a handful of requests without any justification. (See, e.g., Doc. 858–1 at 2: "Observation tour of new programs and class member interviews by Dr. Haney and Mr. Vail."; id. at 3: "Observation of new construction by Mr. Vail and Dr. Haney."; Doc. 858–2 at 2-3: "Tours by Plaintiffs' experts that include seeing

the identified facilities . . . [including] isolation tours by Dr. Craig Haney and Eldon Vail of Perryville (SMA), Florence (Central and Kasson), and Eyman (SMU I and Browning).")

Plaintiffs' request for reconsideration, which is nearly ten pages and includes a declaration and ten exhibits, tries to make up for their prior deficiency. It has now resulted in increased attorneys' fees for Defendants and increased expenditure of judicial resources for the Court.[1] The Court should not condone this practice and refuse reconsideration of Plaintiffs' request because it violates well-defined reconsideration standards and is clearly an attempt to bite the apple twice.

## II. ADDITIONAL EXPERT TOURS ARE NOT NECESSARY TO TEST THE PURPORTED EVIDENCE[2]

In its order extending the discovery cut-off to April 2014 and allowing specified discovery to test that evidence, the Court acknowledged the non-necessity of additional expert tours and prohibited them. (Doc. 871 at 3: "The Court also declines to authorize any further prison tours because, as indicated above, Plaintiffs may request a random sampling of inmate files for review.") And in the past it has questioned the value of conducting expert tours and even stopped some of them from moving forward. (Exhibit 2; Doc. 567.)

Under the guise of "broad" and "sweeping changes in the conditions and programs of the [maximum custody] units," Plaintiffs contend that two of their experts must re-tour four units so that they can "probe and test" three categories of post-

---

[1] Coincidentally, the morning after the Court extended the discovery cut-off date to April 1, 2014, Channel 12 News made a public records request for unredacted "billing records related to the litigation Parsons et al. v. Ryan et al. from the law firm Struck Wieneke & Love to the department from October 2013 through April 2014" for an "investigative report." (Exhibit 1.)

[2] Plaintiffs claim that the parties "met and conferred" on this issue and Defendants "refused to allow the proposed tours." (Doc. 876 at 2 n.1.) Not exactly. During that meet and confer, Plaintiffs' counsel asked Defendants' counsel if they would agree to their requested expert tours, which was far broader than what they propose in their Motion for Reconsideration. Defendants' counsel stated that the Court already rejected that request. That was it.

September 2013 evidence: (1) Director's Instruction ("DI") 326 and other unspecified "programming"; (2) the January 1, 2014 revisions to ADC's Mental Health Services Technical Manual ("MHTM"); and (3) modifications to maximum custody cells and recreation enclosures.[3] (Doc. 876 at 2-4, 7–8.) They argue that an "on-the-ground investigation" – i.e., observing the modified structures first hand and interviewing an unspecified number of inmates – is necessary so that they can "understand how the Plaintiffs are reacting to and being affected by" these modifications.[4] (Id. at 8–9.)

Regarding modifications that were made to cells and recreation enclosures prior to April 1, 2014, Defendants fail to see why photographs of these cells/enclosures (which Plaintiffs recently agreed to accept) do not suffice, and Plaintiffs have failed to provide any reason why a first-hand observation is necessary.[5]

Regarding DI 326 and the January 1, 2014 revisions to the MHTM, the Court has already granted Plaintiffs a 4-hour Rule 30(b)(6) deposition on both topics (i.e., on each topic). (Doc. 871 at 2–3.) Plaintiffs have also been provided updated healthcare and institutional files for the named Plaintiffs, and the Court has allowed them a random sampling of non-Plaintiff medical files, and a 4-hour supplemental deposition of any of Defendants' experts who supplement their reports (limited to their supplemental opinions). (Id.) In addition, just several hours before filing this Response, Plaintiffs

---

[3] Plaintiffs also cite to opinions in the reports of Dr. Seiter (Defendants' corrections expert) and Dr. Penn (Defendants' mental health expert). But much of the cited opinions of Dr. Seiter refer to DI 326. Moreover, the Court has already foreclosed Defendants from relying on other "future events or events that are 'in process of being implemented.'" (Doc. 871 at 2:4-5.) Notably, during Dr. Seiter's April 10, 2014 deposition, Plaintiffs' counsel did not let Dr. Seiter testify as to any changes/modifications after September 27, 2013. (Exhibit 4 at 10:21-11:3, 51:11-13, 52:1-2, 65:25, 67:24-68:9.) Dr. Seiter also testified that his post-September 2013 interviews with ADC staff largely covered what he observed during his pre-September 2013 expert tours. (Id. at 82:3-83:23, 85:23-86:2, 89:1-13, 92:17-93:5.)

[4] Contrary to Plaintiffs' assertion, Defendants' corrections expert conducted all of his tours before September 27, 2013. And for the record, Defendants' experts did not speak with inmates during their tours because the inmates are represented by counsel in this certified class action, and therefore doing so would have been improper.

[5] As Plaintiffs themselves acknowledge, Defendants are not permitted to introduce evidence of "forthcoming" modifications. (Doc. 871 at 2:6-9; Doc. 876 at 2 n.2.)

3

demanded production of "documents showing that programs described in ADC and Corizon policies are actually being provided in the isolation units." (Exhibit 3.)[6]

Plaintiffs candidly admit that they want their experts to conduct a poll of inmates during these tours to determine whether DI 326 and the MHTM revisions are actually being implemented. But this presumes that the revised MHTM provisions even pertain to the inmates they interview, and that these inmates have qualified for DI 326 programming. Plaintiffs certainly do not need seven, full-day tours to accomplish this.[7] And if the interviews will be based on a pre-prepared questionnaire, as Plaintiffs say they will be, Plaintiffs can easily send that questionnaire to a fixed number of random inmates with pre-paid return postage, eliminating the need for any tours. This is far less burdensome and expensive than expert tours.

In light of the targeted discovery that the Court has already allowed and the fact that tour polling can be accomplished through other means, it is readily apparent that what Plaintiffs really want to do is interview hundreds of class members about all topics and other issues so that they can attempt to cure the deficiencies outlined in Defendants' Motion for Summary Judgment and *Daubert* Motion, which they conveniently now have in hand, and to support other aspects of their case. The Court wisely predicted that was their end game. (See Doc. 875 at 1-2 n.1: "Additionally, the Court rejects Plaintiffs' assumption in their motion that further discovery will be permitted prior to summary judgment and prior to trial. This supplemental discovery is the only discovery that will be permitted."). Because Plaintiffs' request for more "tours" is really a request to

---

[6] Plaintiffs also deposed Carson McWilliams, ADC's Interim Division Director of Prison Operations, and Plaintiffs' corrections expert extensively about ADC programming for maximum custody inmates. (Exhibit 4 at 83:8-23, 85:23-86:10, 90:22-92:3, 100:14-23, 101:20-106:25, 108:10-110:12, 139:6-140:16, 174:19-176:17, 148:7-149:21; Exhibit 5 at 47:10-54:3, 54:19-58:10, 60:4-61:23, 63:11-72:16, 96:12-100:4, 100:13-103:7, 103:8-104:13, 108:20-111:17, 116:14-117:5, 120:7-19, 129:10-20, 137:6-10, 140:2-141:12, 142:15-143:15, 151:1-152:8, 184:11-185:7, 186:9-16, 187:16-188:9.)

[7] Plaintiffs intentionally do not proffer a number of interviews they would like to conduct, and without a specific number, Defendants cannot respond to the request and the Court cannot meaningfully evaluate it.

conveniently conduct hundreds of inmate interviews and secure declarations and additional evidence for their Responses to Defendants' pending dispositive motions and for trial, the Court should deny it.

### III. ANY ADDITIONAL TOURS MUST BE EXPLICITLY LIMITED IN SCOPE AND DURATION

If the Court allows Plaintiffs to take additional tours, there must be strict guidelines and rules for carrying them out. Without any parameters (or with vague ones), the chances of another discovery dispute on this issue is very likely because Plaintiffs will undoubtedly interpret any order the Court issues as a blanket authorization to do whatever they want once inside the facilities. To minimize the significant burden that expert tours pose on ADC staff – which has been recounted at length in prior pleadings (Doc 532 at 4-5; Doc. 543 at 8-9) – and to maximize the safety and security of the facilities, their staff, and inmates during any tours, Defendants request the following limitations if the Court allows more tours:

- Dr. Haney and Mr. Vail may tour: (1) Florence-Central Unit, (2) Eyman-Browning Unit, (3) Eyman-SMU 1 Unit, and (4) Perryville-Lumley Unit, Special Management Area,[8]

- These experts must take their tours at the same time;

- The tours of Florence-Central Unit, Eyman-Browning Unit, Eyman-SMU 1 Unit, and Perryville-Lumley SMA are limited to 4 hours at each facility;

- Plaintiffs' counsel and experts are not permitted to speak with ADC or Corizon staff during their tours, unless designated by ADC as they did for prior tours (See Doc. 485 at 16–20; Doc. 495);

- Plaintiffs' experts may conduct cell side and/or confidential interviews with a fixed number of inmates determined by the Court,

---

[8] Kasson is a separate building that is part of Florence-Central Unit, and would be included in the Florence-Central Unit tour. Similarly, the Special Management Area ("SMA") at Perryville-Lumley Unit is a stand-alone building but is part of the Lumley Unit. Plaintiffs' tour request for Perryville is limited to SMA. (Doc. 876 at 3:15.)

5

and in accordance with the security rules implemented and followed by the parties during the prior expert tours;

- Any inmate interviews are limited to the subjects of DI 326, the January 1, 2014 MHTM revisions, and modifications to maximum custody cells and recreation enclosures between September 27, 2013 and April 1, 2014; no evidence outside these subjects is permitted either at trial or in response to Defendants' Motion for Summary Judgment;

- Plaintiffs' counsel and experts may not review records during their tours (they do not request to review records in their Motion); and

- Defendants' experts may conduct additional tours of these same facilities and on these same subjects if desired.[9]

## CONCLUSION

For the reasons stated in Section I and II, Plaintiffs' Motion for Reconsideration should be denied. Alternatively, any relief afforded should extend no further than the proposed parameters articulated in Section III.

/ / /

/ / /

/ / /

/ / /

---

[9] Plaintiffs do not oppose this. (Doc. 876 at 3:8-9.)

6

DATED this 19th day of May 2014.

STRUCK WIENEKE & LOVE, P.L.C.

By /s/ Nicholas D. Acedo
    Daniel P. Struck
    Kathleen L. Wieneke
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    Ashlee B. Fletcher
    Anne M. Orcutt
    Jacob B. Lee
    STRUCK WIENEKE & LOVE, P.L.C.
    3100 West Ray Road, Suite 300
    Chandler, Arizona  85226

    Arizona Attorney General Thomas C. Horne
    Office of the Attorney General
    Michael E. Gottfried
    Lucy M. Rand
    Assistant Attorneys General
    1275 W. Washington Street
    Phoenix, Arizona 85007-2926

*Attorneys for Defendants*

2903951.1

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alison Hardy:   ahardy@prisonlaw.com

Amy Fettig:   afettig@npp-aclu.org

Caroline N. Mitchell:   cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

Corene T. Kendrick:   ckendrick@prisonlaw.com; edegraff@prisonlaw.com

Daniel Clayton Barr:   DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

Daniel Joseph Pochoda: dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org

David Cyrus Fathi:   dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org

Donald Specter:   dspecter@prisonlaw.com

James Duff Lyall:   jlyall@acluaz.org; gtorres@acluaz.org

Cathleen M. Dooley:   cdooley@azdisabilitylaw.org

J.J. Rico:   jrico@azdisabilitylaw.org

John Howard Gray:   jhgray@perkinscoie.com; slawson@perkinscoie.com

Kirstin T. Eidenbach:   keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; docketphx@perkinscoie.com

Jerica L. Peters:   jpeters@perkinscoie.com

Matthew Benjamin de Mee: mdumee@perkinscoie.com; cwendt@perkinscoie.com

Michael Evan Gottfried: Michael.gottfried@azag.gov; colleen.jordan@azag.gov; lucy.rand@azag.gov

Sara Norman:   snorman@prisonlaw.com

Asim Varma:   avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

David C. Kiernan:   dkiernan@jonesday.com; lwong@jonesday.com

John Laurens Wilkes:   jlwilkes@jonesday.com, dkkerr@jonesday.com

Kamilla Mamedova:   kmamedova@jonesday.com

8

| | |
|---|---|
| Jennifer K. Messina: | jkmessina@jonesday.com |
| Taylor Freeman: | tfreeman@jonesday.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org, mlauritzen@azdisabilitylaw.org |
| Katherine E. Watanabe: | Katherine.Watanabe@azag.gov, susan.oquinn@azag.gov |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, pdrew@perkinscoie.com |
| Lucy Marie Rand: | Lucy.Rand@azag.gov, Geneva.Johnson-Joksch@azag.gov |
| Ajmel Quereshi: | aquereshi@npp-aclu.org |
| Jessica Jansepar Ross | jross@azdisabilitylaw.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ Nicholas D. Acedo