Daniel Pochoda (Bar No. 021979)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: dpochoda@acluaz.org
        jlyall@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Varma (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
        avarma@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-NVW (MEA) <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION** <br><br> **[REDACTED]** |

78204-0001/LEGAL121038500.1

## I. INTRODUCTION

Defendants' brief illustrates a fundamental misunderstanding of Plaintiffs' request for reconsideration in this matter, and the nature of the evidence pertinent to the isolation claim. Plaintiffs have requested the Court to reconsider its decision *only* as to inspections by the isolation experts, due to the differing nature of the isolation claim as compared to the health care claims. These fundamental differences and the unique need for Plaintiffs' isolation experts to test the new evidence allowed by the Court's April 30, 2014 Order through in-person evaluation were overlooked in that decision. Plaintiffs seek reconsideration in light of the methodology of the isolation experts and the need to evaluate the conditions of confinement in the isolation units as experienced by the actual residents of those units—the prisoners themselves. Plaintiffs have also reviewed Defendants' proposal for parameters on additional isolation unit tours and indicate their agreement with many of those parameters below.

## II. PLAINTIFFS AMPLY MEET THE STANDARD FOR RECONSIDERATION.[1]

Plaintiffs' motion for reconsideration is limited to requesting that the Court review its decision not to allow additional inspections *only* as to Plaintiffs' isolation experts,

---

[1] Curiously, Defendants claim in footnote 2 of their opposition brief that the parties did "not exactly" meet and confer on this issue. [*See* Doc. 911 at 2 n.2] Defendants admit that the parties met and conferred on the subject of additional expert tours, but attempt to discount the discussion on account of the alleged scope of the tours discussed. They fail to provide any explanation or evidence in support of this claim.
The documentary record makes clear that the parties met and conferred on this issue and that Defendants flatly refused to permit the requested inspections. On May 8, 2014, the parties met and conferred regarding Plaintiffs' request for additional tours for their isolation experts. *See* Ex. A (Letter from David Fathi, ACLU National Prison Project, to Dan Struck, Struck, Wieneke and Love, May 9, 2014) at 1 ("The parties could not agree whether Plaintiffs' isolation experts will conduct additional tours[.]") attached to the Declaration of Amy Fettig ("Fettig Decl.") filed herewith. During the meeting, Defendants made clear that they would not allow any additional expert tours. [*Id.* at Ex. B (Letter from Kathleen L. Wieneke, Struck, Wieneke and Love, to David Fathi, ACLU National Prison Project, May 13, 2014) at 2 ("Judge Wake made it clear that additional tours will not be authorized.")] While the parties have continued to discuss the possibility of the production of photographs of the isolation units, the Defendants have remained steadfast that they will allow no additional tours. [*Id.* at Ex. C (Letter from David Fathi, ACLU National Prison Project, to Tim Bojanowski, Struck, Wieneke and Love, May 19, 2014) at 1]

78204-0001/LEGAL121038500.1

1  Dr. Craig Haney and Mr. Eldon Vail.  Plaintiffs do not challenge the Court's decision to
2  disallow additional inspections for the medical, mental health, and dental experts.

3  The health care claims and the isolation claims are not similarly situated with
4  respect to the need for expert inspections.  There are sources of information on the health
5  care claims, such as MGAR reports and staffing rosters, which have no analog with regard
6  to the isolation claim.  Thus, for the isolation sub-class, the nature of proof and expert
7  methodology require a different approach.  [*See* Doc. 876 at 7-10]  Specifically, they
8  require that Dr. Haney and Mr. Vail be able to test how the Plaintiffs are reacting to and
9  being affected by the conditions of their confinement in isolation vis-à-vis the Defendants'
10 new claims of changed conditions in those units.  And the only credible way this can be
11 accomplished is through in-person interviews with the alleged beneficiaries of these new
12 programs and policies—the prisoners themselves.  This requires additional prison
13 inspections.

14 As Defendants noted, Plaintiffs did repeatedly request additional inspections based
15 on Defendants' new evidence in prior briefing.  [Doc. 858 at 6:27-7:3; Doc. 858-1 at 2-3]
16 In its evaluation of these requests, however, the Court did not focus on the difference
17 between the proof required for the health care claim and that required for the isolation
18 claim.  This is a large and complex case and courts in this jurisdiction have acknowledged
19 that motions for reconsideration are appropriate where the Court has "overlooked a
20 material fact."  *Alexie v. Hageland Aviation*, No. 4:07-cv-0031-RRB, 2008 WL 6984137,
21 at *1 (D. Ariz. Feb. 25, 2008).  Here, Plaintiffs have amply demonstrated the "material
22 facts" supporting the need for additional, though limited, inspections by the isolation
23 experts.  [*See* Doc. 876 at 7-10]

24 **III. PLAINTIFFS' EXPERTS REQUIRE INSPECTIONS IN ORDER TO TEST DEFENDANTS' ALLEGATIONS OF CHANGED CONDITIONS IN THE**
25 **ISOLATION UNITS.**

26 Defendants argue that Plaintiffs' isolation experts do not need to test their new
27 isolation evidence through additional inspections because looking at photographs and
28

Defendants' records and asking prisoners to fill out questionnaires should be sufficient.[2] [Doc. 911 at 3-4] But such "proof" does not allow Plaintiffs' experts to test or verify the actual conditions of confinement in ADC isolation units and the actual operation of Defendants' alleged new policies and programs.

As previously noted, Defendants' records as they relate to the isolation claims are insufficient to test the alleged changes in the isolation units. [Doc. 876 at 10] As Dr. Haney observed, the records produced by Defendants were "woefully incomplete in most instances," so that he "was never sure whether or not what [he] was seeing [was the] full picture." [*See* Doc. 877-1, Ex. I, Deposition of Dr. Craig Haney, March 14, 2014 ("Haney Dep.") at 147:24-14815] In order to test Defendants' allegations of policy change, Plaintiffs' experts cannot rely on these records alone. By the same token, simply looking at pictures of alleged physical plant changes to the isolation units does not allow Plaintiffs' experts to evaluate fully how those changes actually impact the environment of the units or whether or not programs and policy changes are actually happening. In-person inspection is necessary for such an evaluation. And pictures of the units do not allow Dr. Haney or Mr. Vail to test or evaluate Defendants' primary new evidence embodied in DI 326, the Mental Health Technical Manual (MHTM) revisions, the reports of Defendants' experts relying on post-September 27, 2013 developments, and fact

---

[2] Defendants also curiously argue that Plaintiffs' proposed inspections will not be productive because "this presumes that the revised MHTM [Mental Health Technical Manual] provisions even pertain to inmates they interview, and that these inmates have qualified for DI 326 programming." [Doc. 911 at 4] But DI 326 on its face applies to the entire maximum custody population: "This Director's Instruction is being implemented to facilitate a process that requires inmates in maximum custody to work through a program utilizing a step system providing the opportunity to participate in jobs, programs and other out of cell activities." [*See* Fettig Decl., Ex. D (Director's Instruction 326, Maximum Custody Population Management (March 27, 2014)) at ADC261959] It also lays out particular programs in particular units, including establishing units where mental health inmates are allegedly being housed. [*Id.* at ADC261961-5] Similarly, the MHTM governs the provision of mental health services; one of the revisions highlighted by Defendants pertains to "programming for maximum custody inmates." [Doc. 851 at 12] Unless Defendants are now claiming that they do not provide mental health services in the isolation units, the MHTM applies to prisoners in those units.

1 witness testimony regarding the current operations of the isolation units. [*See* Doc. 876 at
2 2-7]

3 In any case, the isolation experts' primary reason for additional inspections is not to look at a new exercise cage; it is to conduct in-person interviews with the individuals who are directly affected by the alleged changes – the Plaintiffs. Defendants have argued that deposing 30(b)(6) witnesses or allowing Dr. Haney to mail questionnaires to isolation prisoners rather than conducting the in-person psychological interviews that are central to his expert methodology are a viable alternative to additional inspections. [*See* Doc. 877-1, Ex. I, Haney Dep. at 52:2-53:2, 53:20-24; 54:1-21] This argument fundamentally misunderstands Dr. Haney's expert methodology, the role of a psychological expert or any expert examining isolation's effect on individuals, and the purpose of the interviews. In his work, Dr. Haney is conducting oral interviews to measure how individual prisoners are "reacting to and being affected by the conditions of their confinement." [*Id.* at 47:17-21] Dr. Haney uses the questionnaire to provide a "structured interview format" [*Id.* at 52:14-18] but it is designed for oral interviews in which he establishes a rapport with the individual in order to facilitate candid responses; develops a psycho-social history of the individual; and asks follow-up questions to clarify answers and establish a "larger or deeper understanding of the experience" the prisoners are having in isolation. [*See* Fettig Decl., Ex. E (Dep. of Dr. Craig Haney) at 56:2-24; 59:12-25; 60:1-9] This level of professional analysis and evaluation cannot be accomplished through a written survey.[3] Inspection of the isolation units is therefore critical.[4]

---

[3] Written surveys are especially ineffective with incarcerated populations due to high rates of illiteracy and learning disabilities. For example, a 1994 study by the U.S. Department of Education found that seven out of ten prisoners performed at the lowest levels of literacy, and that prisoners were more likely than those in the general population to have learning disabilities. U.S. Dep't of Educ., *Literacy Behind Prison Walls* (Oct. 1994), available at http://nces.ed.gov/pubs94/94102.pdf at xviii-xix.

[4] Defendants' argument also totally ignores the fact that Plaintiffs' expert, Mr. Vail, does not use questionnaires as part of his methodology. Additionally, Defendants' bizarre and unsupported contention that Plaintiffs' request is really a ploy to conveniently conduct hundreds of inmate interviews and secure declarations [Doc. 911 at 4-5] does not make any sense. If class counsel want to interview class members and

## IV. PLAINTIFFS AGREE TO LIMITATIONS ON THE SCOPE OF THE ISOLATION EXPERTS' TOURS.

Defendants' reflexive assertions of "burden" in this matter are exaggerated.[5] [Doc. 911 at 5]  As the Court is aware, expert inspections are routine in institutional conditions litigation, and the limited inspections plaintiffs are requesting are far less burdensome and intrusive than those approved by courts in other cases. *See, e.g., N.Y. State Assoc. for Retarded Children, Inc. v. Carey*, 706 F.2d 956, 960 (2d Cir. 1983) (discovery order permitting plaintiffs' experts to "take photographs, make observations, take notes, form conclusions and interview any class member, staff member or employee desired outside the presence of defendants" during an institutional inspection was not unduly burdensome), *Morales v. Turman*, 59 F.R.D. 157, 159 (E.D. Tex. 1972) (permitting plaintiffs to conduct participant observation studies inside two Texas Youth Council facilities during which their experts were authorized to live alongside inmates for a period up to 30 days).

Nonetheless, Plaintiffs have already indicated to the Court that the requested inspections will be as abbreviated as possible. [Doc. 876 at 2]  Plaintiffs have also now considered the proposals set forth in Defendants' response brief and can agree to some of the terms requested or proffer alternatives:

- Plaintiffs have already agreed that Dr. Haney and Mr. Vail's tours will be limited to: (1) Florence-Central Unit/Kasson Unit; (2) Eyman-Browning Unit;

---

obtain declarations they have the right to do so; they do not need to use experts to accomplish this legal task.

[5] Although Defendants complain that "what Plaintiffs really want to do is conduct hundreds of inmate interviews" [Doc. 911 at 4-5], and that additional interviews would be overly burdensome, they have simultaneously argued that Plaintiffs' isolation experts should be disqualified because they did not conduct *enough* prisoner interviews in their motion to preclude Plaintiffs' experts. [Doc. 882 at 18-20, 22]

(3) Eyman-SMU I Unit; and (4) Perryville-Lumley, Special Management Area (SMA).

- Plaintiffs will make every effort to schedule the inspections of both Dr. Haney and Mr. Vail during the same dates; however, the compressed time-frame for these tours and the fact that they will take place during the summer months might make it impossible to find common dates for these very busy experts.

- Plaintiffs cannot agree to limit each expert's inspection of these enormous units to just four hours. Such a limited time would not allow for an adequate expert review of the changes to isolation that Defendants have alleged. Plaintiffs have already offered to limit inspections to a single day—just eight hours—at each complex for Mr. Vail. For Dr. Haney, Plaintiffs have also asked for just one day each at Florence Central/Kasson and Perryville SMA, and one day each at SMU I and Browning.[6] Dr. Haney requires a full day at both Eyman and Browning because his confidential interviews take a substantial amount of time. This is so because the interviews explore sensitive psychological issues, and also because the process of bringing prisoners back and forth to the interviews takes a great deal of time in and of itself. For example, during the first July/August 2013 isolation tours, Dr. Haney and Plaintiffs' counsel often had to wait for 15-30 minutes or more between interviews of prisoners due to the time it took to bring prisoners to and from their cells, or due to facility counts during which movement ceases while the count of inmates at the facility is ongoing. Fettig Decl. ¶ 2.

---

[6] These facilities are quite large and house a substantial number of the isolation sub-class. As of May 19, 2014, Eyman-SMU I had 1,051 prisoners and Eyman Browning held 834 prisoners. *See* Ariz. Dep't of Corr., *ADC Institutional Capacity Committed Population* (May 19, 2014), *available at* http://www.azcorrections.gov/adc/PDF/count/05192014%20count%20sheet.pdf.

78204-0001/LEGAL121038500.1          -6-

- Plaintiffs agree to Defendants' condition that the isolation experts would not be permitted to speak with ADC or Corizon staff except for staff designated by Defendants.

- Plaintiffs agree to limit the number of confidential interviews to five prisoners at each of the following units for each of the experts:  1) Florence-Central Unit/Kasson Unit; (2) Eyman-Browning Unit; (3) Eyman-SMU I Unit; and (4) Perryville-Lumley (SMA).  Plaintiffs also agree to conduct such interviews in accordance with the security rules implemented and followed during the prior expert tours.  Plaintiffs cannot estimate the number of cell-front interviews each expert will conduct during his tour because this is entirely dependent upon timing factors that cannot be predicted prior to an inspection, although this number will obviously be limited by the time limits on the tours.  The number of cell-front interviews conducted by each expert does not create additional burden for Defendants because such interviews do not impact Defendants' staffing, as additional staff are not required to supervise these interviews.  For example, staff are present in the housing units whether the expert interviews five prisoners or ten.

- Plaintiffs agree to limit the isolation experts' inspections to the new evidence the Court has now allowed into the case that covers September 27, 2013 to April 1, 2014.  This is the sole purpose for these inspections. Plaintiff detailed that evidence in their brief, including DI 326, the revised MHTM, any modifications to maximum custody cells and recreation enclosures between September 27, 2013 and April 1, 2014; the Defendants' expert reports; and fact witness testimony regarding alleged physical and programmatic changes in the isolation units that post-dates the original discovery cut-off date. [Doc. 876 at 2-7]  Plaintiffs cannot agree to Defendants' proposed limitation of the expert inspections to DI 326, the January 1, 2014 MHTM, and the physical plant changes [Doc. 911 at 6] because it precludes responding to the Defendants'

1   expert reports discussing post-September 27, 2013 developments, which the
2   Court's Order specifically allows into evidence, as well as any other evidence
3   Defendants might now proffer as a result of the Court's Order, or include in any
4   supplemental expert reports that Defendants might proffer prior to the
5   inspections.

6   • Plaintiffs agree that their experts and counsel will not review records during the
7   inspections.

## V. DEFENDANTS' EXPERTS AGREE THAT ON-SITE VERIFICATION OF CHANGED CONDITIONS IN THE ISOLATION UNITS IS NECESSARY.

Both Defendants' experts, Dr. Seiter and Dr. Penn, indicated that they would like to re-tour the facilities to do additional reviews or to verify the new programs on the isolation units. [*See* Doc. 880, Ex. A (Deposition of Richard Seiter) April 10, 2014, at 34:1-7; 214:2-215: 4; and Ex. B. (Deposition of Joseph Penn, April 11, 2014), at 57:10-21] Dr. Seiter said the following:

[redacted]

1  ███
2  ███
3  ███
4  ███
5  ███
6  ███
7  ███
8  Plaintiffs agree with Dr. Seiter that on-the-ground verification of the alleged changes in
9  the isolation units is necessary for this case.

10 **VI.   CONCLUSION**

11       For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider
12 its refusal to authorize further prison tours to the extent of allowing Plaintiffs' isolation
13 experts to interview prisoners in the isolation sub-class and observe the allegedly changed
14 conditions and programs in the isolation units as outlined herein and in Doc. 876.

15 Dated:  May 21, 2014                          **ACLU NATIONAL PRISON PROJECT**

                                               By:   s/ Amy Fettig
                                                  David C. Fathi (Wash. 24893)*
                                                  Amy Fettig (D.C. 484883)**
                                                  Ajmel Quereshi (Md. 28882)**
                                                  **ACLU NATIONAL PRISON PROJECT**
                                                  915 15th Street N.W., 7th Floor
                                                  Washington, D.C. 20005
                                                  Telephone:  (202) 548-6603
                                                  Email:    dfathi@npp-aclu.org
                                                            afettig@npp-aclu.org
                                                            aquereshi@npp-aclu.org

                                                  *Admitted *pro hac vice*. Not admitted
                                                    in DC; practice limited to federal
                                                    courts.
                                                  **Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
Jerica L. Peters (Bar No. 027356)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:   dbarr@perkinscoie.com
             agerlicher@perkinscoie.com
             keidenbach@perkinscoie.com
             jhgray@perkinscoie.com
             mdumee@perkinscoie.com
             jpeters@perkinscoie.com

Daniel Pochoda (Bar No. 021979)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:   dpochoda@acluaz.org
             jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Warren E. George (Cal. 53588)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:   dspecter@prisonlaw.com
             ahardy@prisonlaw.com
             snorman@prisonlaw.com
             ckendrick@prisonlaw.com
             wgeorge@prisonlaw.com

*Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email:   cnmitchell@jonesday.com
              aamiri@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email:   jlwilkes@jonesday.com
              tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone: (212) 326-3498
Email:   kmamedova@jonesday.com
              jkmessina@jonesday.com

*Admitted *pro hac vice*

Kevin Brantley (Cal. 251886)*
**JONES DAY**
3161 Michelson Drive, Suite 800
Irvine, California 92612
Telephone: (949) 851-3939
Email:   kcbrantley@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

| | |
|---|---|
| 1 | **ARIZONA CENTER FOR DISABILITY LAW** |
| 2 | |
| 3 | By:  s/ Sarah Kader |
| 4 | Sarah Kader (Bar No. 027147)<br>Asim Varma (Bar No. 027927) |
| 5 | 5025 East Washington Street, Suite 202<br>Phoenix, Arizona 85034 |
| 6 | Telephone:  (602) 274-6287<br>Email:    skader@azdisabilitylaw.org |
| 7 | avarma@azdisabilitylaw.org |
| 8 | J.J. Rico (Bar No. 021292)<br>Jessica Jansepar Ross (Bar No. 030553) |
| 9 | **ARIZONA CENTER FOR DISABILITY LAW** |
| 10 | 100 N. Stone Avenue, Suite 305<br>Tucson, Arizona 85701 |
| 11 | Telephone:  (520) 327-9547<br>Email:    jrico@azdisabilitylaw.org |
| 12 | jross@azdisabilitylaw.org |
| 13 | *Attorneys for Arizona Center for Disability Law* |

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2014, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

    s/ Delana Freouf