Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>                              Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>                              Defendants. | NO. 2:12-cv-00601-NVW<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY** |

## I. PLAINTIFFS' DISCOVERY REQUESTS GO FAR BEYOND THE SCOPE AND PURPOSE OF THE AUTHORIZED DISCOVERY

Defendants' Supplemental Briefing outlined "with specificity" the post-September 2013 evidence that they intended to rely on to establish the absence of liability. (Doc. 851, 857, 871.)  Plaintiffs' Response to that briefing was their opportunity to detail with precision the "targeted and focused discovery" necessary to probe Defendants' "new" evidence. (Doc. 848 at 2:10-11.) Despite requesting and securing a five-day extension of time, they squandered that opportunity, and instead focused their efforts on defeating any extension of the discovery cut-off date.  (Doc. 852, 854, 858, 862.) The discovery they did request was cursory, vague, and ambiguous.  (Id.)  The Court noted that Plaintiffs' Response did "not sufficiently detail the discovery they wish to conduct," but, "[i]n the interest of fairness," it adopted much of Defendants' proposed discovery, which was reasonable and specific, and authorized at least eleven, 4-hour depositions (and as many as fifteen depositions), and 20 requests for admissions. (Doc. 862 at 8–11.)  The depositions themselves allow Plaintiffs to probe the evidence Defendants submitted.

Because Plaintiffs' request for documents was "impermissibly broad" and merely requested documents "relating to" or "discussing" items of evidence, the Court declined to authorize a "blanket request for production of documents," and ordered the parties to meet and confer to identify the relevant documents necessary for disclosure. (Doc. 871 at 2:24-3:6.)  It did note, however, that "many of the documents articulated in Appendix A" to Plaintiffs' Response were appropriate for disclosure, including "post-September 27, 2013"

> (1) documents supporting the computation and definition of wait times and statistics;
>
> (2) CAPs;
>
> (3) random samples of medical files;
>
> (4) grievances from February 2014;
>
> (5) routine care lists; and
>
> (6) medical/dental appointment lists.

1

(Id. at 2:25-3:1.) The only items on this list that are in dispute are items (1) and (3), and even there the parties agree in principal to some production. The remaining items are not at issue as Plaintiffs have not requested them or Defendants have agreed to produce the documents to Plaintiffs' satisfaction. (Ex. 1.)

Unfortunately, the dispute goes much deeper than this. Despite the Court's narrowing of the potentially discoverable documents — i.e., (1) created after September 27, 2013, (2) articulated in Appendix A to their Response, and (3) narrowed to the types of documents listed by the Court — Plaintiffs seek documents that far exceed these parameters. They want documents dating back to April 1, 2013. They want documents that they did not identify in their Response or Appendices. They want documents that are just as broadly stated as their description in their Response and Appendices. They want documents not contemplated by the Court in its order. The meet and confer process has been a moving target because Plaintiffs change their requests on a whim. Defendants agree that Plaintiffs are entitled to some discovery. They have agreed to produce a substantial amount of information and have otherwise complied with the Court's discovery order regarding requests for admissions and depositions. This dispute comes to the Court because Plaintiffs are once again asking too much, despite the Court's prior admonitions that they have sought needless and burdensome discovery.

The extension Plaintiffs were afforded to file this dispute — until two days <u>after</u> Defendants filed their Motion for Summary Judgment — was requested under the guise of economy: the discovery Plaintiffs would need could potentially be <u>reduced</u> depending on the arguments raised and evidence cited in Defendants' Motion for Summary Judgment. (Doc. 872.) Indeed, that is why the Court granted Plaintiffs an extension: "[B]ecause reviewing Defendants' forthcoming summary judgment motion might narrow the necessary discovery." (Doc. 875 at 1:25-2:2.) But that is not what Plaintiffs did. The real purpose for the extension is now clear: to identify the deficiencies in their case <u>before</u> September 27, 2013, and include in their request for discovery evidence <u>before</u> September 27, 2013, to cure those deficiencies.

2

The purpose of this round of discovery is to test the 16 categories of evidence articulated by Defendants. Each category was defined with specificity, and all of them pertained to evidence created <u>after</u> September 27, 2013. The Court should reject Plaintiffs' attempts to obtain discovery that pre-dates September 27, 2013, that is not "necessary" to test any of the 16 categories of evidence, or, most importantly, that was not mentioned in their Response to the supplemental briefing. (See Doc. 875 at n.1: "[T]he Court rejects Plaintiffs' assumption in their motion that further discovery will be permitted prior to summary judgment and prior to trial. This supplemental discovery is the only discovery that will be permitted.")

**General objection to the number of files requested**. Defendants have agreed to produce approximately <u>335 healthcare files</u>, which include a random sample of 154 healthcare records of inmates to test the October 2013 – March 2014 Corizon monthly reports, a random sample of approximately 35 healthcare records of Seriously Mentally Ill ("SMI") inmates, 80 dental records, and 66 death records. Plaintiffs demand an <u>additional 580 inmate files,</u> for a total of <u>915 files</u>. (Doc. 906, 907.) As a general matter, Defendants object to this additional 580-file production, as it is incredibly burdensome. Based on prior productions, Defendants estimate that the additional 580-file production will comprise more than 100,000 pages of documents, and may take up to 6 months to produce, particularly given the heavy redaction of institutional records for security-sensitive information, and the need to first find where these inmates (and their files) are located. And that does not include the 335 files Defendants have already committed to produce. Defendants' specific objections to the production of these additional 580 inmate files follow.

**1.  Updated healthcare and institutional records of those inmates named in Plaintiffs' experts' reports.**

Plaintiffs request "updated" versions of 363 healthcare files and institutional files that their experts relied upon. (Doc. 906 at 5:12-6:21; Doc. 907–1 at 47-54.) They request each record dating back to the "date of inspection or production." (Id.)

3

All but two of Plaintiffs' 38 experts' tours were taken in July and August 2013. In addition to the collective burden objection as described above, Defendants object to this discovery because Plaintiffs did not request updated healthcare files or complete institutional files (only detention records) in their Response to the Supplemental Brief. (Doc. 858.)  Defendants further object because the requested records go back to July 2013, which exceeds the scope of the Court's order. Finally, Plaintiffs fail to link these updated records to a particular piece of evidence or show a probative relationship.

### 2. Healthcare records of inmates whom Plaintiffs' counsel have brought to Defendants' attention.

Plaintiffs request the healthcare records of 19 inmates whom they reported to Defendants over the course of this litigation as allegedly needing medical attention. (Doc. 906 at 6:22-7:13; Doc. 907–1 at 55.) They request each record dating back to April 1, 2013 ("a year's worth"). (Id.) In addition to the collective burden objection described above, Defendants object to this discovery because Plaintiffs did <u>not</u> make this request in their Response to the Supplemental Brief (Doc. 858), <u>nor</u> did they make a formal categorical request for these types of records before September 27, 2013, despite repeatedly sending "inmate-in-need" letters to Defendants during that time frame. In fact, three of the inmates at issue were brought to Defendants' attention before September 2013 (on June 21, 2013, August 1, 2013, and August 16, 2013), yet Plaintiffs made no request for their healthcare records.[1] (Doc. 907–1 at 55.) Three of the inmates at issue were brought to Defendants' attention <u>after</u> April 1, 2014 (on April 2, 2014 and May 8, 2014), and therefore exceed the scope. (Id.) Moreover, Plaintiffs fail to link these healthcare files to any of the Defendants' post-September evidence as necessary for testing. Finally, Defendants object because the request includes records dating back to April 1, 2013. That exceeds the scope of the Court's order and is not necessary to probe the post-September

---

[1] Attached to three of the nineteen "inmate-in-need" letters, Plaintiffs' counsel actually attached excerpts of the inmates' medical records, indicating that Plaintiffs already have means of obtaining those records without burdening Defendants. (Pls. Ex. 16, letters dated January 22, 2014, March 21, 2014, and May 8, 2014)

4

2013 evidence submitted by Defendants.

### 3. Healthcare records underlying monthly reporting.

As noted above, Defendants have agreed to produce random samples of 154 healthcare files of inmates between September 27, 2013 and April 1, 2014, using Plaintiffs sampling methodology. (Doc. 907-1 at 56-58.) Plaintiffs first request that these medical files go back to April 1, 2013, an additional 6 months beyond the Court's discovery order. (Doc. 906 at 8.) Defendants object to this request because it exceeds the scope of the supplemental discovery order. It does not test the post-September 2013 monthly reports. Moreover, Plaintiffs did not request documents prior to September 27, 2013 in their Response to the Supplemental Brief; and actually, the time frame they requested was September 27, 2013 to April 1, 2014. (Doc. 858-1 and 858-2.)

Plaintiffs next request the production of an <u>unspecified</u> number of healthcare files of inmates "who were dropped" from five conditions in <u>unspecified</u> Monthly Clinical Data Reports. (Doc. 906 at 7–8.) In addition to the collective burden objection described above, Defendants object to this request because it cannot be fulfilled. These reports only list the total number of inmates with a particular condition in a given month, and do not identify the individual inmates. Moreover, the chronic conditions databases cannot retroactively identify inmates who were reported as having a condition in one month but not reported as having a condition in another month. Defendants further object because they are already producing a random sample of 120 inmate files with chronic conditions, and Plaintiffs have the opportunity to depose a Corizon representative on these monthly reports and on the quarterly reports, 4-hours each.

Plaintiffs also request an additional 35 SMI inmate files, and an additional 80 healthcare and 80 institutional files of maximum custody inmates. (Doc. 906 at 7-8.) In addition to the collective burden objection described above, Defendants object because Plaintiffs did not specifically request healthcare files of SMI inmates, or healthcare and institutional files of inmates at the maximum custody units, in their Response to

1 Defendants' Supplemental Brief. Defendants further object because the institutional files are beyond the scope of the Court's supplemental discovery order, and they have not linked these to any of Defendants' specified evidence. Finally, Defendants object because they are already producing 35 SMI inmate files and a random sample of 154 inmate healthcare files, documents relating to the implementation of DI 326, and Plaintiffs have the opportunity to conduct two 4-hour Rule 30(b)(6) depositions regarding DI 326 and the revisions to the Mental Health Technical manual, the very topics that Plaintiffs claim they need these additional files to test.

### 4. Healthcare records of inmates released for medical reasons.

Plaintiffs request the healthcare records of three inmates who were granted parole between September 27, 2013 and April 1, 2014, for medical reasons. (Doc. 906 at 9:3-20.) They request each record "for the year prior to release." (Id.) Defendants object because Plaintiffs did not make this request in their Response to the Supplemental Brief (Doc. 858), nor did they previously request these types of healthcare records prior to the original September 27, 2013 discovery cut-off, despite being advised that at least one inmate was medically-paroled during Wexford's tenure. See http://www.azcorrections.gov/inmate_datasearch/results_Minh.aspx?InmateNumber=049484&LastName=RICHARD&FNMI=J&SearchType=SearchInet

Defendants further object because Plaintiffs fail to link these healthcare files to any of the Defendants' post-September evidence as necessary for testing. Plaintiffs' assertion that they need these records to show that Defendants are "decreasing the statistics on the number of deaths by releasing prisoners shortly before their deaths" is absurd and unsupportable. Inmates who are suffering from a medical condition which, with a reasonable medical certainty, will result in the inmate's death within three months are eligible for parole or commutation of sentence, but only if certain requirements are met and it is ordered by the Board of Executive Clemency and/or Governor.[2] (See

---

[2] The term "medical parole" is not accurate.

6

http://www.azcorrections.gov/Policies/1000/1002.pdf.) *See generally* A.R.S. §§ 31–411, –443. ADC cannot simply release inmates at their convenience. Finally, Defendants object because the request includes records dating back to April 1, 2013, which exceeds the scope of the Court's order and is not necessary to probe the post-September 2013 evidence submitted by Defendants.

### 5. Re-depositions of expert witnesses.

Plaintiffs request an order to re-open the depositions of Defendants' experts to allow them additional questioning about their opinions that were based on post-September 2013 evidence. (Doc. 906 at 9:21-11:9; Doc. 753–1.) Although these opinions were included in their reports before Plaintiffs' originally deposed them, Plaintiffs contend that they refrained from questioning the experts on these opinions because the Court had imposed a September 27, 2013 discovery cut-off (although Defendants' motion to reconsider that ruling was still pending). They request an additional 4 hours of deposition for each of Defendants' experts who do not submit supplemental reports reflecting the evidence itemized in Defendants' supplemental briefing, and 7 total hours of deposition for each of Defendants' experts who do submit supplemental reports reflecting the evidence itemized in Defendants' supplemental briefing (which would include questioning on both their prior reports and new supplemental reports).

Defendants object to this request. At the time of these experts' depositions, Defendants' motion to reconsider the court's order ending discovery at September 27, 2014 was still pending. Three of the depositions (Drs. Mendel, Penn, and Seiter) took place <u>after</u> the Court ordered supplemental briefing, alluding to the fact that it was extending the cut-off to April 1, 2014. (Doc. 848.) And Plaintiffs had all of Defendants' experts' reports in hand. And contrary to their assertions, Plaintiffs' depositions of Defendants' experts were not limited to pre-September 2013 opinions. Plaintiffs' counsel asked each of Defendants' experts about information after September 2013 that they reviewed. (Exhibit 2 at 82:13-83:7; 89:1-90:13; 92:17-93:5; 100:14-25; 172:23-173:6;

7

Exhibit 3 at 26:22-27:17; 27:23-28:24; 37:8-39:11; 39:15-40:19; 40:20-41:13; 41:14-42:19; 42:20-44:21; 44:22-45:24; 45:25-46:20; 46:21-48:1; 107:24-108:19; 129:5-13; 159:15-160:9; 170:18-22; 174:24-175:2; 211:1-213:14; 218:14-220:4; 226:19-229:9; 235:20-238:21; 261:5-21; 266:8-25; Exhibit 4 at 45:16-47:11; 48:16-19:20; 63:24-64:18; 114:11-116:22; 225:11-227:25; Exhibit 5 at 26:17-29:8; 30:10-32:25; 47:17-48:25.) They should not be allowed to conduct four additional 4-hour depositions on information that had available to them before, and on which they picked and chose which topics to inquire about.

### 6. Documents relating to modifications to medication administration.

Plaintiffs request "(1) drafts of the four policy changes (if they existed), and (2) documents sufficient to show training of health care and custody staff on the new policies has occurred." (Doc. 906 at 12:13-15, 13:13-14.) Defendants have reviewed the correspondence between the parties and cannot find where this was squarely addressed by the parties. Defendants agree to produce these non-email documents to the extent that they exist, except for "drafts" of written policies. Such drafts are protected by the deliberative privilege process. *See Assembly of the State of Cal. v. United States Dep't of Commerce,* 968 F.2d 916, 920 (9th Cir. 1992); *National Wildlife Fed'n v. United States Forest Serv.,* 861 F.2d 1114, 1117 (9th Cir. 1988).

### 7. Documents relating to use-of-force incidents involving inmates on psychotropic medication.

Plaintiffs request all "Serious Incident Reports (SIRs) and supporting documentation [including videos] for any use of force on prisoners on psychotropic medication." (Doc. 906 at 13:7-11, 13:15-16.) Defendants object because, although Plaintiffs made a general request for "Significant Incident Reports on use of force in isolation units (including video and use of force reports)" in Appendix B to their Response to the Supplemental Brief (Dkt. 858-2 at 2), there was no such request in Appendix A, nor did they request either videos or use-of-force incidents involving inmates on psychotropic

8

medication.  These documents are also outside the purview of the Court's supplemental discovery order.

Defendants further object because the SIRs are not necessary to test Defendants' specified evidence.  Plaintiffs contend that the SIRs will test the October 2013 – March 2014 monthly Inmate Assault, Self-Harm, & Mortality Data Reports. (Doc. 857 at 2.)  But those reports list only: (1) the number of inmate assaults on staff, and the percentage of staff assaults by maximum custody inmates; (2) the number of self-harm attempts (cutting, overdose, blunt force, hanging, and fires); and (3) the number of inmate deaths resulting from natural causes and suicide. (Doc. 857–1.)  They do not contain any information pertaining to use-of-force incidents (or OC spray in particular), nor do they contain information relating to inmates on psychotropic medication.  Plaintiffs do not articulate why the SIRs and videos – which merely chronicle a specific incident – are necessary to probe the information (total numbers) included in the Inmate Assault, Self-Harm, & Mortality Data Reports."[3]  Moreover, the SIRs do not indicate whether the inmate was on psychotropic medication at the time of the incident.  Even for those inmates who may have been prescribed psychotropic medication at the time (which would have to be determined through corresponding medical records), there is still no way to know whether the inmate actually took the medication that day or even that week.

Finally, Plaintiffs have requested SIRs in the past, and Defendants objected to those requests because of the undue burden and confidential, security-sensitive information contained therein, and instead produced executive summaries.  Producing the entire SIR for each incident is unduly burdensome.[4]

---

[3] Defendants submitted this evidence, in part, to show that inmates assault staff and harm themselves, which, as a general matter, justifies the need for force under certain circumstances, including on inmates on psychotropic medication. (Doc. 857 at 2.) Plaintiffs' claim is that chemical agents should never be employed on an inmate on psychotropic medication under any circumstances.

[4] Production of the entire SIR is burdensome because, in addition to the report itself, SIRS contain detailed accounts of the event by all staff members and inmates who were involved as well as from any witnesses. Description of any force that was used is also documented. Often times, an individual SIR report can exceed twenty pages.

**8.  Documents relating to alleged infectious disease exposures.**

Plaintiffs request "copies of correspondence, memos, or investigations into the September 2013 exposure of Hepatitis C at Lewis prison, and any outbreaks of infectious diseases at the infirmaries at Perryville, Tucson, and Florence prisons." (Doc. 906 at 13:17-14:25.)  This request includes all emails between September 27, 2013 and April 1, 2014, to/from Director Ryan, Richard Pratt, Arthur Gross, and Dr. David Robertson, with unspecified search terms (which Plaintiffs have not provided either Defendants or the Court). (Id.)  Defendants object because Plaintiffs did not request this discovery in their Response to the Supplemental Brief.  Defendants further object because documentation of "any outbreaks of infectious diseases" is entirely too broad and ambiguous. Moreover, Defendants do not know what "September 2013 exposure of Hepatitis C at Lewis prison" they are referring to.

Finally, Defendants object to any production of emails, as doing so would be extremely burdensome given the broad scope of the number of individuals, the time frame, and Plaintiffs' failure to provide any search terms. Defendants' last email production, which covered four custodians, two search terms, and a 15-month period resulted in approximately 103,243 pages.  And as Defendants have explained before, all pages require review prior to production to ensure that no security sensitive information was inadvertently released, which will result in hundreds of hours in attorney/paralegal review.  The Court has previously acknowledged the limited value of such information (Dkt. 594-3 at 14), and with Plaintiffs' ambiguous and broad request, it is apparent that they are once again looking for a needle in the haystack and new discovery that is beyond the scope of the Court's order.

**9.  Documents relating to Corizon monthly reports.**

Plaintiffs request "[a]ny correspondence, memos, or email regarding the quality, sufficiency, or limitations of the data gathered by Corizon and/or ADC for the [Corizon monthly] reports," and "[a]ny written instructions provided to staff who gather,

10

compile, report, or enter data that is used in the reports." (Doc. 906 at 14:26-16:11.) Plaintiffs' request for emails is confined to a time period of September 27, 2013 to April 1, 2014, to/from Director Ryan, Pratt, Gross, and Dr. Robertson, Dr. Nicole Taylor, and Karen Chu, with unspecified search terms (which Plaintiffs have not provided either Defendants or the Court). (Id.) Defendants object to the first request ("regarding the quality, sufficiency, or limitations of the data gathered") because it is too vague and ambiguous. Defendants do not know what Plaintiffs are specifically requesting. Defendants further object to the production of any emails on either subject because it is unduly burdensome, and Plaintiffs do not provide any search terms to evaluate. Plaintiffs also only requested emails in Appendix B to their Response to the Supplemental Brief (which exceeds the Court's order), not in Appendix A.

## **CONCLUSION**

For these reasons, Plaintiffs' Motion to Compel should be denied.

DATED this 21st day of May 2014.

                              STRUCK WIENEKE & LOVE, P.L.C.

                              By /s/ Nicholas D. Acedo
                                  Daniel P. Struck
                                  Kathleen L. Wieneke
                                  Rachel Love
                                  Timothy J. Bojanowski
                                  Nicholas D. Acedo
                                  Ashlee B. Fletcher
                                  Anne M. Orcutt
                                  Jacob B. Lee
                                  STRUCK WIENEKE & LOVE, P.L.C.
                                  3100 West Ray Road, Suite 300
                                  Chandler, Arizona  85226

                                  Arizona Attorney General Thomas C. Horne
                                  Office of the Attorney General
                                  Michael E. Gottfried
                                  Lucy M. Rand
                                  Assistant Attorneys General
                                  1275 W. Washington Street
                                  Phoenix, Arizona 85007-2926

                                  *Attorneys for Defendants*

2904756.1

# CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| Name | Email(s) |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amy Fettig: | afettig@npp-aclu.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| Daniel Joseph Pochoda: | dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| James Duff Lyall: | jlyall@acluaz.org; gtorres@acluaz.org |
| Cathleen M. Dooley: | cdooley@azdisabilitylaw.org |
| J.J. Rico: | jrico@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Kirstin T. Eidenbach: | keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; docketphx@perkinscoie.com |
| Jerica L. Peters: | jpeters@perkinscoie.com |
| Matthew Benjamin de Mee: | mdumee@perkinscoie.com; cwendt@perkinscoie.com |
| Michael Evan Gottfried: | Michael.gottfried@azag.gov; colleen.jordan@azag.gov; lucy.rand@azag.gov |
| Sara Norman: | snorman@prisonlaw.com |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| David C. Kiernan: | dkiernan@jonesday.com; lwong@jonesday.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Kamilla Mamedova: | kmamedova@jonesday.com |

| | |
|---|---|
| Jennifer K. Messina: | jkmessina@jonesday.com |
| Taylor Freeman: | tfreeman@jonesday.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org, mlauritzen@azdisabilitylaw.org |
| Katherine E. Watanabe: | Katherine.Watanabe@azag.gov, susan.oquinn@azag.gov |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, pdrew@perkinscoie.com |
| Lucy Marie Rand: | Lucy.Rand@azag.gov, Geneva.Johnson-Joksch@azag.gov |
| Ajmel Quereshi: | aquereshi@npp-aclu.org |
| Jessica Jansepar Ross | jross@azdisabilitylaw.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ Nicholas D. Acedo