**EXHIBIT 1**

**EXHIBIT 1**



**STRUCK WIENEKE & LOVE**    3100 West Ray Road, Suite 300, Chandler, Arizona 85226 | 480.420.1600 | swlfirm.com

Daniel P. Struck
Partner

Kathleen L. Wieneke
Partner

Rachel Love
Partner

Timothy J. Bojanowski
Partner

Christina Retts
Partner

Jamie D. Guzman
Associate

Nicholas D. Acedo
Associate

Tara B. Zoellner
Associate

Amy L. Nguyen
Associate

Ashlee B. Fletcher
Associate

Anne M. Orcutt
Associate

Kevin L. Nguyen
Associate

Jacob B. Lee
Associate

Mark A. Bracken
Associate

David C. Lewis
Of Counsel

May 16, 2014

***VIA EMAIL ONLY***

David Fathi, Esq.
ACLU
National Prison Project
915 15th Street, NW
7th Floor
Washington, DC 20005-2112

   ***Re:*** ***Parsons, et al. v. Ryan and Pratt***
      ***U.S. District Court of Arizona; 2:12-cv-00601***

Dear David:

   This letter supplements our prior letters on May 13, 2014 and May 15, 2014 and confirms our discussion on May 16, 2014 regarding Plaintiffs' requests for additional discovery. As we noted in our prior correspondence, many of Plaintiffs' requests for additional discovery go far beyond what was contemplated in the Court's April 30, 2014 Order. In a good faith effort to resolve our disputes, we agreed to a follow-up meet and confer telephone conference which was held today.

   We first discussed your proposal regarding how to obtain samples of health care files for seriously mentally ill ("SMI") inmates. As we explained in our May 13, 2014 letter, we offered to provide files of SMI inmates to be selected randomly from the facilities that house SMI inmates (Perryville, Lewis, Yuma, Tucson, Florence, Eyman, and Phoenix) using the total population of these facilities. You reiterated Plaintiffs' request for ten (10) files from each of the seven facilities. In an effort to compromise, we said Defendants are willing to produce a pure random selection from the population of all SMI inmates at each facility based upon the percentages in Plaintiffs' May 12, 2014 letter at page 2. We further explained that we would use a Statistical Package for the Social Sciences ("SPSS") program to randomly select the inmates and could provide more information regarding the SPSS program if you would like that information. You asked how many files would be produced from each facility, and it was explained that we could not tell the exact number at this time because the number produced would be based upon the percentages in Plaintiffs' May 12th letter and the total population of inmates on the designated date.

David Fathi, Esq.
May 16, 2014
Page 2

You acknowledged that Plaintiffs are proposing two different methodologies for selecting files. Plaintiffs propose one methodology for selecting healthcare files, as set forth in Appendix C of the May 12th letter and a different methodology for selecting files for SMI inmates, as set forth at page 3 of the May 12th letter. You again reiterated that Plaintiffs want Defendants to produce SMI files from each facility and were concerned that if the files were randomly chosen from the total population, files may not be produced from every facility. In an attempt to reach a compromise, Defendants agreed to produce a random sample of SMI inmate files from each of the seven facilities based upon the percentages on page 2 of Plaintiffs' May 12th letter, which would result in the production of approximately 25 files. The date range for these files would be from September 27, 2013 to April 1, 2014. Plaintiffs insisted on no less than ten files from each facility at which point the parties were at an impasse.

We then discussed the files identified in Appendix C of the May 12th letter. We explained that we did not believe the special accommodation report was relevant to the claims the Court had certified. After further discussion regarding the potential relevance of the special accommodation files, we agreed to produce these files. We further explained that, in regard to the monthly reports, such as the Monthly Inmate Intake Report, it is uncertain whether we could identify the names of each of the inmates included on the report. By way of example, we explained it may not be possible to identify the 3,883 inmates in the Monthly Inmate Intake Report (ADC267339). We informed you that if we can find documents that identify each of the inmates, we will produce the files using Plaintiffs' protocol, but if there are no documents containing identifying information of the inmates then we will contact you.

We then discussed the email you sent earlier this morning in which you allege there are reports reflecting a significant drop in the number of inmates reported as having various categories of conditions. You explained that you would like a sample of the inmates who were dropped from the reports so you can evaluate whether their removal was medically necessary. We explained that we need you to identify the specific categories of conditions and specific reports you were referring to, so we could evaluate your request. You mentioned diabetes, heart disease, and SMI, but said you did not know if this was an exhaustive list. We informed you that we cannot agree to produce these documents at this time without knowing specifically what you were requesting. Because your May 16 email did not provide us with any details regarding what you were requesting, and you were unable to provide us any specific guidance during our phone conversation, we cannot adequately evaluate your request. So we can evaluate this request, please provide us with a complete list of: (1) the specific categories of conditions you believe show a significant reduction, (2) the specific reports you believe show a significant reduction, and (3) the corresponding Bates number for each report. We cannot agree

David Fathi, Esq.
May 16, 2014
Page 3

to produce documents until we understand exactly what you are requesting we produce.

We then discussed the deposition schedule proposed in your May 6th letter. You deferred to Corene who stated that you are planning to follow the proposed schedule for the last week of May and beginning of June. We explained to you that there may be some conflicts with witnesses who have planned vacations or leave for the birth of a child. I asked you to please contact me to coordinate scheduling depositions, so we can notify the witnesses and determine potential scheduling conflicts. Please send me an email by Monday, May 19, 2014, with proposed dates and times for the depositions. As soon as I receive your proposed dates, I will contact the witnesses and identify any potential conflicts with your proposed dates.

We then discussed the documents you requested in your May 9, 2014 letter, at page 7, to be produced by July 18, 2014. We explained that we had not looked at your request to identify the types of documents that may show any changes that have been implemented and would have to get back to you on this request. We told you, however, that if there are any documents that show any changes that have been implemented, there should not be any problem in producing these documents by your proposed July 18, 2014 deadline. We will need to discuss this issue further if there are problems with the production.

We then discussed the potential scope of documents you requested in your May 9, 2014 letter at page 7. Specifically, we discussed schedules for the Rover position. You said you will agree to a sampling, but you were interested in documents showing whether a Rover actually worked as opposed to just being scheduled. Lucy explained that there are shift logs that show who worked, but those documents would need to be redacted. We agreed to produce two days for each month from October 2013 through March 2014. Please send us the dates you select as soon as possible because this production will require a lot of time and effort to complete.

We then discussed the production of Significant Incident Reports (SIRs) and Use of Force records. We explained that we still did not have an answer regarding the production of these reports.

We then discussed the production of death records. Lucy explained that we will produce the death records for the investigations that are complete. She further explained the challenges in identifying and producing death records for deaths that are still under investigation. We will continue to provide death records on a rolling basis pursuant to our previous agreement.

We then reiterated our position that we cannot agree to produce the files of prisoners discussed by name in experts' reports listed in Exhibit A to the May 12th

David Fathi, Esq.
May 16, 2014
Page 4

Letter or a year of health records for the additional prisoners listed in Exhibit B to the May 12th Letter.

We then discussed the production of dental files. You requested a routine care list and appointment list for each facility so that your expert, Dr. Shulman, may review the lists and identify 20 files from each facility. We explained we had contacted Dr. Smallwood to find out if he could run routine care lists for each facility, but he has been traveling and has not gotten back to us yet. Amelia then explained that, rather than producing a random set of files similar to the methodology we are using to produce medical records, Plaintiffs want a routine care list and appointment list so Dr. Shulman can select 20 files from each facility. We explained that 20 files per facility is too many. The production of 20 files per facility will create a burden upon Defendants since we would then need to produce an additional 100 files on top of the other medical files being produced as a part of our agreement. In an attempt to compromise, we proposed to produce ten files per facility. In response, Amelia requested ten files from Florence and Eyman and 20 files from Perryville, Yuma, and Safford. We agreed to produce routine care lists and appointment lists and informed you that we would follow up with Dr. Smallwood to determine whether it is possible to generate more specific lists that may help us identify potentially relevant documents. We will then confer with you again regarding the production of dental files.

Please let us know if you believe this letter does not accurately reflect our discussion.

Very truly yours,

*[signature]*

Timothy J. Bojanowski
For the Firm

TJB/eap
2903737.1