1  Daniel Pochoda (Bar No. 021979)
   James Duff Lyall (Bar No. 330045)*
2  **ACLU FOUNDATION OF ARIZONA**
   3707 North 7th Street, Suite 235
3  Phoenix, Arizona 85013
   Telephone:  (602) 650-1854
4  Email: dpochoda@acluaz.org
            jlyall@acluaz.org
5  *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

6  *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
7  *Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of*
8  *themselves and all others similarly situated*

   **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**
9
   Sarah Kader (Bar No. 027147)
10 Asim Varma (Bar No. 027927)
   **ARIZONA CENTER FOR DISABILITY LAW**
11 5025 East Washington Street, Suite 202
   Phoenix, Arizona 85034
12 Telephone:  (602) 274-6287
   Email: skader@azdisabilitylaw.org
13         avarma@azdisabilitylaw.org

14 *Attorneys for Plaintiff Arizona Center for Disability Law*

15 **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-NVW (MEA) <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY IN LIGHT OF THE COURT'S ORDER (DOC. 871)** |

**INTRODUCTION**

The central thrust of Plaintiffs' Motion to Compel [Doc. 906] bears repeating in plain language: Defendants cannot have it both ways.

Defendants' strategy is transparent. Throughout this litigation, they have fought tooth and nail to limit class counsel's access to the records of their clients and to the prisons where those clients are held. They now argue that the testimony of Plaintiffs' experts should be excluded because those experts did not review *enough* records or spend *enough* time on prison inspections. [*See, e.g.,* Doc. 882 at 2-3, 21, 30-31, 36-37].

Defendants continue to resist Plaintiffs' reasonable requests for discovery to allow them to test Defendants' allegations that, after years of dysfunction, ADC health care and conditions of confinement in isolation have suddenly improved in the last six months. If Defendants are successful in blocking Plaintiffs' access to information, they can be expected to similarly argue that Plaintiffs did not review enough records to enable them to refute these claims of recent improvement.

Defendants' complaint that Plaintiffs' discovery requests are "incredibly burdensome" rings especially hollow [Doc. 916 at 3], for it was Defendants who asked the Court to allow them to rely on evidence spanning the six-month period from September 27, 2013 through April 1, 2014. Any "burden" involved in providing Plaintiffs discovery to test the evidence for that period is thus entirely of Defendants' own creation. Moreover, Defendants cry "burden" the week after filing a summary judgment motion supported by a 474-page statement of facts [Doc. 892] citing to 40,000 pages of exhibits; it is clear that Defendants are perfectly capable of organizing and producing large volumes of documents when it serves their interests.

Defendants argue that the Court's order extending the cutoff date means that any documents requested by Plaintiffs or produced by Defendants must be dated between September 27, 2013 and April 1, 2014. [Doc. 916 at 3] Defendants provide no citation for this statement because it is not true – the Court has never imposed these arbitrary limits on the documents Plaintiffs may request to test Defendants' new evidence. It is

clear that to test the accuracy of Defendants' new evidence, including data reports and experts' reports, it is necessary for some types of documents to include information that pre-dates September 27. For example, at least one year's worth of documents from a prisoner's health care file (April 1, 2013 – April 1, 2014) would be needed to evaluate whether her medical care improved after September 27. [*See* Doc. 906 at 4:16-20, 7:2-5] How can Plaintiffs test Defendants' claim of improved care without comparing the new records in the medical chart against the baseline of earlier medical records?

Finally, Defendants argue that Plaintiffs should have made these discovery requests with Plaintiffs' Response to the Court's request for supplemental briefing on Defendants' motion for reconsideration. [Doc. 916 at 3, 5] They fail to acknowledge that Plaintiffs' supplemental brief [Doc. 858] was filed over a month ago, prior to any Court ruling on whether to admit post-September 27, 2013 evidence and prior to Defendants' filing of their summary judgment motion and statement of facts, and that the instant discovery motion was authorized explicitly by the Court.[1] [Docs. 871, 875]

Plaintiffs respectfully request that the Court grant in full Plaintiffs' motion to order Defendants to produce additional limited discovery in time for Plaintiffs to be able to use it for their responses to Defendants' dispositive motions, currently due on June 18, 2014.

**I.      Plaintiffs are Not Requesting an Excessive Number of Prisoner Files**

Defendants complain that Plaintiffs are requesting too many prisoner files, even as they simultaneously seek to exclude the testimony of Plaintiffs' experts because they

---

[1] For example, Defendants assert that "Plaintiffs did not specifically request healthcare files of SMI [seriously mentally ill] inmates, or healthcare and institutional files of inmates at the maximum custody units, in their Response to Defendants' Supplemental Brief." Doc. 916 at 5-6. The latter statement is false. [*See* Doc. 858-2 at 2 ("individual detention records and other documentation demonstrating one-on-one counseling, recreation, and other out-of-cell time for prisoners in isolation units")] Plaintiffs did not specifically request healthcare files of SMI prisoners in that document because they instead requested expert tours and record review by their psychiatric expert, Dr. Pablo Stewart. [*See* Doc. 858-1 at 2 ("Observation tour of new programs, class member interviews, and record review by Dr. Stewart"); 858-2 at 2 ("mental health tours by Dr. Pablo Stewart")] After the Court subsequently indicated that it would not authorize additional expert tours [Doc. 871], Plaintiffs instead requested the files of SMI prisoners for Dr. Stewart to review off-site.

1 allegedly did not review *enough* prisoner files. [Doc. 882 at 30 ("Dr. Shulman […] failed to explain how (or even whether) his sample of 300 inmate dental records, consisting of less than 1% of the total ADC inmate population, was representative of the whole."), and at 31 ("Dr. Cohen also admitted that he did not take a random sample of medical records for the inmate populations of the two facilities he visited.")].[2]

Plaintiffs will not rehash the reasons prisoner health care and institutional files are needed, but rather invite the Court's attention to pages 4:12 to 8:2 of their Motion [Doc. 906], and the exhibits referenced therein attached to the May 16, 2014 Fathi Declaration. [Doc. 907] Plaintiffs offered a reasonable approach to the production of health care and institutional files (1) to test the assertions by Defendants that health care and conditions of confinement have greatly improved in the last six months, and (2) to test the accuracy of Defendants' data reports that aggregate data for more than 23,600 prisoner files for a given month.[3] [Doc. 906 at 3-5]

---

[2] The number of files that each of Plaintiffs' experts reviewed were circumscribed by the limitations Defendants placed on expert tours (where much of the experts' file review took place) and on file production. [Declaration of David Fathi, dated May 23, 2014, Ex. 1, Aug. 7, 2013 Hrg. Tr. at 19:4-7 ("I mean, the facilities aren't changing. They don't need to take additional tours. The facilities are staying the same.") and at 23:11-12 ("Why would they tour a facility where none of the plaintiffs are housed?"); *see also* Ex. 2, March 14, 2013 Defendants' Objections to Prisoner Plaintiffs' Request to Enter Defendants' Property for the Purpose of Expert Inspections (Modified), at 3:3-4 ("Defendants object to any expert's tour of a facility that exceeds one day.")] Additionally, the Court imposed limits upon Plaintiffs' experts, issuing an order on August 9, 2013, cancelling all future tours except for three by an isolation expert, [Doc. 567 at 4], and an order on August 30, 2013, allowing Plaintiffs' medical expert to have one tour each of Tucson and Florence. [Doc. 611 at 3]

[3] Defendants note that the number of health care files requested from the universe of prisoners who were dropped from chronic care reports in the past six months was not specified in Plaintiffs' motion. [Doc. 916 at 5] Using the agreed upon methodology for selecting the other sample, [*available at* Doc. 907, Exhibit 5, at 2 (ECF page 45 of Doc. 907-1)], and applying it to the numbers of prisoners dropped from the five requested categories, as listed at Doc. 907 at ¶ 15, it would total only 25 health care files (heart disease patients: 923 person drop, 9 files requested; diabetes patients: 325 person drop, 3 files requested; AIDS patients: 43 person drop, 4 files requested; serious mental illness patients: 1,444 person drop, 7 files requested; MRSA patients: 12 person drop, 2 files requested). These sudden and unexplained decreases in the number of prisoners suffering from various chronic conditions cast significant doubt on the accuracy of Defendants' records; moreover, Plaintiffs must be provided documents to test whether prisoners are being appropriately dropped from these lists.

Plaintiffs' request for certain documents within prisoners' health care and institutional files is summarized as follows:

- Sample of health care files **agreed upon** by parties to test accuracy of October 2013-March 2014 chronic and infectious disease reports;
- **Agreed upon** production of death records of prisoners who died Sept. 27, 2013 to April 1, 2014;
- **Agreed upon** production of dental records only;
- Sample of prisoners "dropped" from chronic and infectious disease reports, October 2013-March 2014;
- Supplement of more recent documents from the files previously reviewed or inspected by Plaintiffs' experts;
- Prisoners for whom Plaintiffs have sent individual advocacy letters to Defendants;
- Prisoners given "imminent danger" release due to terminal illness between 9/27/13 and 4/1/14;
- Health care files of seriously mentally ill prisoners;[4] and,
- Health care and institutional files for prisoners housed in isolation.

## II. Plaintiffs' Other Discovery Requests Are Specific, and Plaintiffs Have Shown the Court How the Discovery Will Be Used to Test Defendants' New Evidence

Plaintiffs' other requests for documents are specific,[5] and Plaintiffs demonstrated to the Court how they will use these documents and why they need them. Again, Plaintiffs will not exhaustively relist the documents and the justifications, [*see* Doc. 906 at 11:1-15:11], but only respond to points raised in Defendants' Response, as follows:

---

[4] Defendants' brief states that they are planning to provide about 35 health care records randomly selected from lists of seriously mentally ill prisoners. [Doc. 916 at 3:13] The parties disagree on the methodology to select these files, which affects the number of files to be reviewed. [Doc. 906 at 7]

[5] Plaintiffs acknowledge that some requests seek "documents sufficient to show" or "related to" a given proposition, but as noted in the Motion at page 11, note 10, this ambiguity results from Defendants' inability to identify relevant documents by name. Another court in this Circuit recently ruled in a class action against a state prison system that Defendants producing documents on a "sufficient to show" and "relating to" basis is a less burdensome alternative to producing all documents on a topic. *Ashker v. Cate*, Case No. 09-cv-05796-CW (NJV), 2013 WL 4026971 at *4-6 (N.D. Cal. July 12, 2013).

**A.  Correspondence, Memos, or Investigations on (1) Exposure of Prisoners to Infectious Diseases and (2) the Quality and Accuracy of Data in Defendants' Reports**

While Defendants object to the production of <u>any</u> emails on the grounds that production is extremely burdensome due to the breadth of each request, Plaintiffs' two requests for emails encompass narrow topics limited by date ranges and custodians. Plaintiffs further offered the use of search terms for each request. The chart below summarizes the limited requests with proposed search terms:

| Start Date | End Date | Custodians | Search Terms 1 | Modifier | Search Terms 2 |
|---|---|---|---|---|---|
| Sept. 27, 2013 | Apr. 1, 2014 | Charles Ryan<br>Richard Pratt<br>Arthur Gross<br>David Robertson | Outbreak<br>Infect!<br>Disease!<br>"Hep! C"<br>HCV<br>Staph!<br>MRSA<br>Scabies | AND | Lewis<br>Perryville<br>Tucson<br>Florence |
| Sept. 27, 2013 | Apr. 1, 2014 | Charles Ryan<br>Richard Pratt<br>Arthur Gross<br>David Robertson<br>Nicole Taylor<br>Karen Chu | Accura!<br>Compil!<br>Review!<br>Quality<br>Sufficien!<br>Limit!<br>Gather<br>Entry<br>Train! | AND | Data<br>Number<br>Report!<br>Stat! |

Defendants' prior and sole production of emails did not include any beyond July of 2013; this current request is a very limited request for more recent materials, made necessary by Defendants' claim that conditions have recently changed. Further, the prior production showed that these emails contain responsive and highly probative evidence that goes to the heart of this litigation. *See, e.g.,* Ex. 3.

The withholding of the limited emails sought here, as well as any additional emails Defendants intend to present at trial, is not justified and substantially prejudices Plaintiffs' opportunity to present and defend their allegations at trial. ADC's 30(b)(6) witness regarding the maintenance of electronic documents testified that emails are maintained on

1 a system with the ability to easily perform the searches requested above. *See* Ex. 4 (Dep.
2 of Curt Czarsty 72:15-73:1). And email on such systems is routinely produced in
3 litigation. See, e.*g., Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 320 (S.D.N.Y.
4 2003) (noting that electronically stored documents maintained in an accessible manner
5 should be produced with the costs borne by the party maintaining the data). Defendants
6 should supplement their production with the requested emails regarding infectious disease
7 outbreaks no later than May 30, and the emails regarding the quality of their reports no
8 later than July 18.

9 If Defendants do not provide the limited email materials sought, Defendants should
10 be bound by the content of the prior email production and precluded from challenging the
11 accuracy of that evidence. Such prohibitions are allowed under this Court's inherent
12 power to control the discovery process and are necessary to ensure that Plaintiffs are
13 afforded the adequate chance to review this specific, relevant evidence that directly bears
14 on material issues. *See* Fed. R. Civ. P. 37(c); *Bartlett v. Mutual Pharmaceutical Co.,* No.
15 08-cv-358-JL, 2009 WL 3614987 at *6 (D.N.H. Nov. 2, 2009) (noting that exclusion of
16 evidence is the most common sanction for failure to timely produce).

17 **1. The Exposure of Prisoners to Infectious Diseases.**

18 Plaintiffs requested documents related to the exposure of prisoners to infectious
19 diseases at four prisons. [Doc. 906 at 12-13] The request necessarily would encompass
20 email, and Plaintiffs have proposed limits and parameters to the search. [*Id*.] Defendants
21 respond that they "do not know what 'September 2013 exposure of Hepatitis C at Lewis
22 prison'" that Plaintiffs refer to. [Doc. 916 at 10] Plaintiffs clarify for the Court and all
23 parties that they had confused the month of ADC's most recent exposure of diabetic
24 prisoners to Hepatitis C (in January 2014) with ADC's previous exposure of diabetic
25 prisoners to Hepatitis C at the same institution in September 2012. [*See* Exhs. 5-8]

26 **2. Quality and Accuracy of the Data in ADC/Corizon Reports.**

27 As described in Plaintiffs' Motion, there are a variety of reports and data post-
28 dating September 27 that on their face do not make sense, show no data for an entire

month, or have extreme fluctuations from month to month. [Doc. 906 at 3:9-21, fn. 6, and 13:27-14:6] Attached as Exhibit 9 are several examples of data reports that on their face are illogical, incorrect, or raise serious questions about the provision of care – that Defendants are now permitted to use as evidence. In order to dig down into the quality and accuracy of the data that ADC and Corizon are touting to the Court and the public as demonstrating a constitutional health care system, Plaintiffs must review memos, quality assurance reports, investigations, and correspondence among ADC officials that evaluate or question the adequacy of the data being reported month to month.

**B.  Use of Force Incidents Involving Prisoners on Psychotropic Medication**

Defendants concede that Plaintiffs requested "Significant Incident Reports [SIRs] on use of force in isolation units (including video and use of force reports)" [*see* Doc. 858-2 at 2], but complain that Plaintiffs subsequently narrowed that request to include only uses of force on prisoners taking psychotropic medications. [Doc. 916 at 8-9] If Defendants prefer to provide the original, broader category of documents and videos, Plaintiffs have no objection.

This request is directly tied to a practice certified by this Court. [Doc. 372 at 18 ("use of chemical agents against inmates on psychotropic medications")] If Defendants are going to use the Inmate Assault, Self-Harm & Mortality data reports to "justif[y] the need for force under certain circumstances, including on inmates on psychotropic medication" [Doc. 916 at 9 n. 3], then Plaintiffs are entitled to the underlying documents to challenge that justification. The SIRs are critical because they allow Plaintiffs' experts to evaluate incidents for inappropriate use of force; to determine whether mental health staff were appropriately involved in an attempt to de-escalate the situation prior to the use of force; and to judge whether chemical agents are being used on prisoners who are obviously actively psychotic or otherwise exhibiting signs of mental illness. Defendants' burden and security arguments are meritless; Defendants were able to produce approximately 4,000 pages of Significant Incident Reports, as well as videos, to their own

expert Richard Seiter. [Ex. 10, Expert Report of Richard P. Seiter, Ph.D., Dec. 18, 2013at ADC203712-13]

### C. Modifications to Medication Administration

Defendants' contention that the draft policies Plaintiffs seek are protected by the "deliberative process privilege" is meritless.[6] Doc. 916 at 8. A document must be both "predecisional" and "deliberative" for the deliberative process privilege to be invoked. *See Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988). A document may be considered "predecisional" when the document is one "prepared in order to assist an agency decision maker in arriving at his decision." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). A "predecisional" document may be considered part of a "deliberative" process only if "the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussions within the agency and thereby undermine the agency's ability to perform its functions." *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987).

Because Defendants make no attempt to show, by affidavit or otherwise, that the draft policies in question meet these stringent requirements, the Court should reject the assertion of privilege. *See Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 257 (D.D.C. 2004) ("Because the applicability of the deliberative process privilege is dependent on the content of each document and the role it plays in the decisionmaking process, an agency's affidavit describing the withheld documents must be specific enough so that the elements of the privilege can be identified"); *Defenders of Wildlife v. U.S. Dep't of Agric.*, 311 F. Supp. 2d 44, 59 (D.D.C. 2004) (draft documents, claimed by defendants to be privileged, were not individually described and therefore the court could not rule on their qualification for deliberative process privilege).

---

[6] In one of the two cases cited by Defendants, the deliberative process privilege was held not to apply. *See Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 923 (9th Cir. 1992).

**III.     Plaintiffs Are Entitled to Additional Deposition Time of Defendants' Experts**

Finally, Defendants argue that Plaintiffs should not have limited their deposition questions to events before September 27, 2013 because "[t]hree of the depositions … took place <u>after</u> the Court ordered supplemental briefing, alluding to the fact that it was extending the cut-off to April 1, 2014. (Doc. 848)" [Doc. 916 at 7 (emphasis in original)] This is false; the Court's order [Doc. 848] said no such thing. The Court did not announce that it would allow evidence after September 27, 2013 until April 30, 2014 [Doc. 871] – nearly three weeks after Plaintiffs' depositions of Defendants' experts were completed. Plaintiffs should not be penalized for their reasonable reliance on the September 27 cutoff date that was in effect when they conducted these depositions.

Defendants additionally contend that Plaintiffs did not limit their questioning to pre-September 2013 opinions, but the very testimony they attach to their brief shows that what Plaintiffs were doing was probing whether documents and information dated after the cut-off reflected the state of the ADC as of September 27, 2013, because that was the operative period. [*See, e.g.*, Doc. 916, Ex. 2 at 82:13-83:7 ("Looking at footnote 24, you note that the inmate count and individual group programming was provided from the November 19th, 2013 interview with -- with Greg Fizer. Did he indicate that these programs that you discussed with him were -- were implemented before September 27th 2013?")]

| | |
|---|---|
| Dated:  May 23, 2014 | Respectfully submitted,<br><br>**ACLU NATIONAL PRISON PROJECT**<br><br>By:  s/ David Fathi<br>David C. Fathi (Wash. 24893)*<br>Amy Fettig (D.C. 484883)**<br>Ajmel Quereshi (Md. 28882)**<br>**ACLU NATIONAL PRISON PROJECT**<br>915 15th Street N.W., 7th Floor<br>Washington, D.C. 20005<br>Telephone:  (202) 548-6603<br>Email:     dfathi@npp-aclu.org<br>              afettig@npp-aclu.org<br>              aquereshi@npp-aclu.org<br><br>*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.<br>**Admitted *pro hac vice*<br><br>Daniel C. Barr (Bar No. 010149)<br>Amelia M. Gerlicher (Bar No. 023966)<br>Kirstin T. Eidenbach (Bar No. 027341)<br>John H. Gray (Bar No. 028107)<br>Matthew B. du Mée (Bar No. 028468)<br>Jerica L. Peters (Bar No. 027356)<br>**PERKINS COIE LLP**<br>2901 N. Central Avenue, Suite 2000<br>Phoenix, Arizona 85012<br>Telephone:  (602) 351-8000<br>Email:     dbarr@perkinscoie.com<br>              agerlicher@perkinscoie.com<br>              keidenbach@perkinscoie.com<br>              jhgray@perkinscoie.com<br>              mdumee@perkinscoie.com<br>              jpeters@perkinscoie.com<br><br>Daniel Pochoda (Bar No. 021979)<br>James Duff Lyall (Bar No. 330045)*<br>**ACLU FOUNDATION OF ARIZONA**<br>3707 North 7th Street, Suite 235<br>Phoenix, Arizona 85013<br>Telephone:  (602) 650-1854<br>Email:     dpochoda@acluaz.org<br>              jlyall@acluaz.org<br><br>*Admitted pursuant to Ariz. Sup. Ct. R. 38(f) |

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Warren E. George (Cal. 53588)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:   dspecter@prisonlaw.com
         ahardy@prisonlaw.com
         snorman@prisonlaw.com
         ckendrick@prisonlaw.com
         wgeorge@prisonlaw.com

*Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email:   cnmitchell@jonesday.com
         aamiri@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email:   jlwilkes@jonesday.com
         tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone: (212) 326-3498
Email:   kmamedova@jonesday.com
         jkmessina@jonesday.com

*Admitted *pro hac vice*

Kevin Brantley (Cal. 251886)*
**JONES DAY**
3161 Michelson Drive, Suite 800
Irvine, California 92612
Telephone: (949) 851-3939
Email: kcbrantley@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**


By:   s/ Sarah Kader
    Sarah Kader (Bar No. 027147)
    Asim Varma (Bar No. 027927)
    5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
    Telephone: (602) 274-6287
    Email: skader@azdisabilitylaw.org
           avarma@azdisabilitylaw.org

    J.J. Rico (Bar No. 021292)
    Jessica Jansepar Ross (Bar No. 030553)
    **ARIZONA CENTER FOR DISABILITY LAW**
    100 N. Stone Avenue, Suite 305
    Tucson, Arizona 85701
    Telephone: (520) 327-9547
    Email: jrico@azdisabilitylaw.org
           jross@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2014, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

                                        s/ S. Lawson