1  Daniel Pochoda (Bar No. 021979)
   James Duff Lyall (Bar No. 330045)*
2  **ACLU FOUNDATION OF ARIZONA**
   3707 North 7th Street, Suite 235
3  Phoenix, Arizona 85013
   Telephone: (602) 650-1854
4  Email: dpochoda@acluaz.org
          jlyall@acluaz.org
5  *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

6  *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco,*
7  *Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson,*
8  *and Charlotte Wells, on behalf of themselves and all others similarly situated*

9  [ADDITIONAL COUNSEL LISTED BELOW]

10 Sarah Kader (Bar No. 027147)
   Asim Varma (Bar No. 027927)
11 **ARIZONA CENTER FOR DISABILITY LAW**
   5025 East Washington Street, Suite 202
12 Phoenix, Arizona 85034
   Telephone: (602) 274-6287
13 Email: skader@azdisabilitylaw.org
          avarma@azdisabilitylaw.org
14
   *Attorneys for Plaintiff Arizona Center for Disability Law*

15 [ADDITIONAL COUNSEL LISTED BELOW]

<div style="text-align:center">UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA</div>

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br>Plaintiffs, <br><br>v. <br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br>Defendants. | No. CV 12-00601-PHX-NVW (MEA) <br><br>**DECLARATION OF TODD RANDALL WILCOX, M.D.** |

78204-0001/LEGAL122407279.1

I, Todd Randall Wilcox, M.D., declare:

1. I am a licensed medical doctor, Board certified in emergency medicine and HIV/AIDS care, and an expert in the field of correctional medicine with over 17 years of experience. I am the Medical Director of the Salt Lake County Jail System.

2. I have been retained by counsel for plaintiffs in the present case to render an opinion on the quality of medical care provided to Arizona state prisoners.

3. I have issued three reports in this case: Confidential Report of Todd Randall Wilcox, November 8, 2013 (attached hereto as Exhibit 1); Confidential Rebuttal Report of Todd Randall Wilcox, January 31, 2014 (attached hereto as Exhibit 2); Confidential Supplemental Report of Todd Randall Wilcox, April 2, 2014 (attached hereto as Exhibit 3). All three documents are my work and constitute true and correct reports of my findings and opinions. I have personal knowledge of the matters set forth on all three reports and if called as a witness I could competently so testify.

**Methodology**

4. I submit this Declaration to clarify my methodology and to place it into context with the methodological approaches currently used by health care correctional professionals.

5. My methodology was straightforward. I reviewed evidence at both the macro level—direct evidence of systemic factors impacting care—and the micro level—evidence regarding individual patient care. For the systemic evidence, I reviewed hundreds of documents, nearly all authored by ADC, Corizon, and Wexford staff and administrators, describing health care in Arizona prisons. I reviewed dozens of depositions of prison staff and administrators and Corizon staff. I toured five prisons to learn the general processes by which care was delivered and to evaluate the physical plant and capabilities.

6. For the individual patient care, I reviewed hundreds of patient charts. Many were chosen randomly from predetermined categories: for example, I directed plaintiffs' counsel to ensure that I was provided with a random selection of charts of chronic care

1  patients from each institution I toured.  I did not know the name of the person who made
2  the random selections or exactly the method they used, but I have reviewed the
3  Declaration of Corene Kendrick and her methodology complies fully with my directions
4  to counsel.

5        7.     Sometimes I reviewed all patient charts in a particular category:  for
6  example, I reviewed the charts of all women who were currently or had recently been
7  pregnant, all patients on dialysis at the Florence facility, and all patient charts reviewed by
8  Dr. Mendel in coming to his expert opinions in this case.  Some of the charts I reviewed
9  on my tours were not pre-selected:  I would pick up charts, reports, and unfiled health care
10 records as I encountered them and carefully review them as I walked through the
11 institutions.  Sometimes I reviewed particular patient charts:  for example, those of the
12 named plaintiffs and sometimes those of patients whose difficulties with health care were
13 described to me on the tours.

14       8.     I reviewed Dr. Cohen's methodology as described in his reports.  It is
15 essentially the same as mine.

16       9.     This does not surprise me in the least.  I would expect our methodologies to
17 be very similar, because this is the industry standard.  I know this because I have
18 extensive experience in evaluating correctional health care at the request of state and local
19 correctional systems.  Over the decades I have been engaged in this field, I have spoken
20 frequently with colleagues regarding their methodologies and approaches to evaluating the
21 sufficiency of correctional health care systems; indeed, I have often worked as part of a
22 team and coordinated my evaluations with other experts.  I have also become familiar
23 with industry practices through my work with the American Jail Association, the
24 American Correctional Association, and the National Institute of Corrections.  I am the
25 president-elect of the Society of Correctional Physicians and as such, I am in frequent
26 touch with correctional health care administrators and auditors around the country.

27
28

10. I further note that Dr. Mendel employs essentially the same methodology: a combination of charts selected from targeted categories (diabetics, HIV patients) as well as specific patients (named plaintiffs).

11. Defendants argue that a random "statistically significant" sampling of health care records for the entire Arizona prison system would be the appropriate methodology to evaluate health care delivery in the system. I disagree for several reasons.

12. First, it is a waste of time and resources to review records of healthy people. In order to evaluate the quality of health care, you need to look at the provision of care, and that means targeting the records of those who need it. I do not know anyone in this field who undertakes a review of health care processes by reviewing records of people who do not need health care. Instead, we examine of records for patients with health care conditions that test the capacity of systems to provide appropriate care: diabetics, hypertensives, people with HIV, pregnant women, people who have died, and so on. Dr. Mendel endorses this view, by positing that an examination of treatment of diabetic patients can tell us how the system functions as a whole. Confidential Expert Report of Lawrence H. Mendel, D.O., December 18, 2013, at 27 (ADC203790).

13. Second, there is no magic formula that a health care expert can use to decide exactly how many patient charts to review when evaluating systemic matters. If you look at every single record in a system with thousands of patients, you have more than enough information to opine about systemic trends, but the task is prohibitively time-consuming and expensive, both in the production of the records and in the time spent reviewing them. The task for all responsible professionals is to determine how many records are appropriate to review in order to render an opinion about systemic performance, and that is how we make use of our expertise.

14. The universality of this approach is demonstrated by the recent discussion in the report issued by the Centers for Medicare & Medicaid Services, a branch of the U.S. Department of Health and Human Services, on quality improvement for purposes of the

1  Affordable Care Act.  It is worth quoting at length the discussion of sampling in that
2  report:

> Healthcare quality improvement work happens in real-world, complex contexts influenced by a myriad of uncontrolled forces. In these situations, the assumptions of classical sampling theory cannot be met, and meeting those assumptions would not be desirable. Therefore, judgment sampling is used for the majority of quality initiatives identified in this strategy. A judgment sample is a type of non-random sample based on the opinion of experts. Judgment sampling relies upon subject matter experts to select useful samples for learning about process performance and the impact of changes over time. In many cases, where the goal is to learn about or improve a specific process or system, judgment samples are the most convenient and economical approach as well as the most technically and conceptually appropriate approach

11 The report is attached as Exhibit 4 to this Declaration.  *See also* Perla and Provost,
12 "Judgment Sampling: A Health Care Improvement Perspective," Q Manage Health Care
13 21:3 at 169-75 (2012); Donabedian, An Introduction to Quality Assurance in Health Care
14 (Oxford: 2003)  (attached as Exhibits 5 and 6 to this Declaration).

15        15.    Third, the methodology defendants urge is bad science.  They appear to
16 argue that the proper approach to determine quality of healthcare in the Arizona prisons is
17 probability analysis that derives from random population sampling with an analysis of
18 statistical variance.  This is a complete miscarriage of statistical theory.

19        16.    Probability analysis is commonly done when you are analyzing a single
20 mathematical variable within a controlled subpopulation and comparing that to a larger
21 population.  However, this type of analysis is impossible to do and misleading to attempt
22 when you have a massively diverse population with a multitude of variables for which you
23 cannot control, such as in healthcare delivery.  Patients are far too complex to apply
24 simple probability statistics.  For example, the presence of an allergy may radically vary
25 the ideal treatment plan from one patient to another that would not be captured by a
26 simple probability statistical analysis.  It requires expert insight to determine that both of
27 the very different treatment plans for these very different patients with the same diagnosis
28 are medically acceptable.

17. Under my methodology, as used in this case and in the many other cases in which I have been hired by plaintiffs, defendants, and corrections officials, I reviewed many dozens of records in numerous major categories of treatment needs and five separate prisons. I reviewed records for hours on end, analyzing the complexity of patient care, until I was confident that additional chart reviews would have diminishing returns because the trends were clear and unmistakable. They were also consistent with the hundreds of other documents I reviewed in this case that described care in this system. I am absolutely confident that the several hundred charts I reviewed gave me an excellent picture of how care is provided in the Arizona prison system.

18. Finally, I had the rare opportunity, in this case, of having a built-in quality assurance measure for my methodology (and by extension Dr. Cohen's), since after issuing my initial Report in this case, I was given the opportunity to review all of the patient charts relied on by Dr. Mendel. Thus, I was able to determine whether the additional information contained in every patient chart that he selected for analysis would alter my opinion. It did not. In fact, the additional 130 records only strengthened my opinions in this case, as I describe in detail in my Supplemental Report.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this _17_ day of June, 2014 in Salt Lake City, Utah.

_____
Todd Randall Wilcox, M.D.

1  **ADDITIONAL COUNSEL:**

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Warren E. George (Cal. 53588)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:  dspecter@prisonlaw.com
        ahardy@prisonlaw.com
        snorman@prisonlaw.com
        ckendrick@prisonlaw.com
        wgeorge@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)**
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:  dfathi@npp-aclu.org
        afettig@npp-aclu.org
        aquereshi@npp-aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
Jerica L. Peters (Bar No. 027356)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:  dbarr@perkinscoie.com
        agerlicher@perkinscoie.com
        keidenbach@perkinscoie.com
        jhgray@perkinscoie.com
        mdumee@perkinscoie.com
        jpeters@perkinscoie.com

78204-0001/LEGAL122407279.1        -6-

| | |
|---|---|
| 1 | Caroline Mitchell (Cal. 143124)* |
| 2 | Amir Q. Amiri (Cal. 271224)* |
| | **JONES DAY** |
| 3 | 555 California Street, 26th Floor |
| | San Francisco, California 94104 |
| 4 | Telephone: (415) 875-5712 |
| | Email: cnmitchell@jonesday.com |
| 5 | aamiri@jonesday.com |


1  Caroline Mitchell (Cal. 143124)*
   Amir Q. Amiri (Cal. 271224)*
2  **JONES DAY**
   555 California Street, 26th Floor
3  San Francisco, California 94104
   Telephone: (415) 875-5712
4  Email:   cnmitchell@jonesday.com
                    aamiri@jonesday.com
5
   *Admitted *pro hac vice*
6
   John Laurens Wilkes (Tex. 24053548)*
7  Taylor Freeman (Tex. 24083025)*
   **JONES DAY**
8  717 Texas Street
   Houston, Texas 77002
9  Telephone: (832) 239-3939
   Email:   jlwilkes@jonesday.com
10                   tfreeman@jonesday.com

11  *Admitted *pro hac vice*

12  Kamilla Mamedova (N.Y. 4661104)*
    Jennifer K. Messina (N.Y. 4912440)*
13  **JONES DAY**
    222 East 41 Street
14  New York, New York 10017
    Telephone: (212) 326-3498
15  Email:   kmamedova@jonesday.com
                     jkmessina@jonesday.com
16
    *Admitted *pro hac vice*
17
    Kevin Brantley (Cal. 251886)*
18  **JONES DAY**
    3161 Michelson Drive, Suite 800
19  Irvine, California 92612
    Telephone: (949) 851-3939
20  Email:   kcbrantley@jonesday.com

21  *Admitted *pro hac vice*

22  *Attorneys for Plaintiffs Shawn Jensen;*
    *Stephen Swartz; Dustin Brislan; Sonia*
23  *Rodriguez; Christina Verduzco; Jackie*
    *Thomas; Jeremy Smith; Robert Gamez;*
24  *Maryanne Chisholm; Desiree Licci; Joseph*
    *Hefner; Joshua Polson; and Charlotte*
25  *Wells, on behalf of themselves and all others*
    *similarly situated*
26

27

28

| | |
|---|---|
| 1 | Sarah Kader (Bar No. 027147) |
| 2 | Asim Varma (Bar No. 027927) <br> **ARIZONA CENTER FOR DISABILITY LAW** |
| 3 | 5025 East Washington Street, Suite 202 <br> Phoenix, Arizona 85034 |
| 4 | Telephone: (602) 274-6287 <br> Email:   skader@azdisabilitylaw.org |
| 5 |           avarma@azdisabilitylaw.org |
| 6 | J.J. Rico (Bar No. 021292) |
| 7 | Jessica Jansepar Ross (Bar No. 030553) <br> **ARIZONA CENTER FOR DISABILITY LAW** |
| 8 | 100 N. Stone Avenue, Suite 305 <br> Tucson, Arizona 85701 |
| 9 | Telephone: (520) 327-9547 <br> Email:   jrico@azdisabilitylaw.org |
| 10 |           jross@azdisabilitylaw.org |
| 11 | *Attorneys for Arizona Center for Disability Law* |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2014, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

s/ Delana Freouf

78204-0001/LEGAL122407279.1          -9-