1  Daniel Pochoda (Bar No. 021979)
   James Duff Lyall (Bar No. 330045)*
2  **ACLU FOUNDATION OF ARIZONA**
   3707 North 7th Street, Suite 235
3  Phoenix, Arizona 85013
   Telephone: (602) 650-1854
4  Email: dpochoda@acluaz.org
           jlyall@acluaz.org
5  *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

6  *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco,*
7  *Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson,*
8  *and Charlotte Wells, on behalf of themselves and all others similarly situated*

9  **[ADDITIONAL COUNSEL LISTED BELOW]**

10 Sarah Kader (Bar No. 027147)
   Asim Varma (Bar No. 027927)
11 **ARIZONA CENTER FOR DISABILITY LAW**
   5025 East Washington Street, Suite 202
12 Phoenix, Arizona 85034
   Telephone: (602) 274-6287
13 Email: skader@azdisabilitylaw.org
           avarma@azdisabilitylaw.org
14
   *Attorneys for Plaintiff Arizona Center for Disability Law*
15 **[ADDITIONAL COUNSEL LISTED BELOW]**

16                UNITED STATES DISTRICT COURT
17                    DISTRICT OF ARIZONA

18 | Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-NVW (MEA)

**DECLARATION OF ELDON VAIL**

Plaintiffs,

v.

Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,

Defendants.

78204-0001/LEGAL122399600.1

I, Eldon Vail, declare:

1. I am a former corrections administrator with nearly thirty-five years of experience working in and administering adult institutions. I served for four years as the Secretary of the Washington State Department of Corrections (WDOC) and seven years as the Deputy Secretary. Before becoming a corrections administrator, I held various line and supervisory level positions in a number of prisons and juvenile facilities in Washington, in addition to serving as a Juvenile Parole Officer and pre-release supervisor. I have served as the Superintendent (Warden) of three adult institutions, including facilities with maximum-security inmates.

2. I am retained by plaintiffs' counsel to offer my opinion regarding the policy and operational practices of the Arizona Department of Corrections (ADC) regarding the use of isolation units. The particular focus of my review has been on the conditions of confinement for inmates housed in the isolation units identified in the Court's Order and on whether the inmates, especially mentally ill inmates, living in those units suffer serious harm or are subject to a substantial risk of serious harm.

3. As I outlined in my prior reports submitted in this case, my opinions are based on several modes of review and analysis. I conducted an extensive review of thousands of pages of documents made available through discovery, including the pleadings in this case, ADC policies, ADC internal reports and materials, declarations, and depositions of ADC and Corizon officials as well as class members, inmate master and medical files, grievance and death records, and ADC training materials.

4. I also conducted a full five days of prison inspections in July and August of 2013. The prisons were: Arizona State Prison Complex–Perryville on July 29, 2013, Arizona State Prison Complex–Florence on July 30 and 31, 2013, and Arizona State Prison Complex–Eyman on August 1 and 2, 2013. These units were selected for my tours because the Court identified them in its definition of the

78204-0001/LEGAL122399600.1

1  isolation subclass in this case.[1]  At each complex I inspected housing units, recreation areas, visitation areas, and any program space allegedly used for group or individual programming on the isolation units.  During these inspections I interviewed over 100 inmates, 28 in a confidential setting.

5.  In addition, my opinions are based upon my substantial experience running correctional institutions and presiding over a statewide prison system for more than a decade, a system that successfully addressed the challenge created by the rapid influx of the mentally ill into the prison environment.  In my 35 years of work in corrections, I spent considerable time working to provide for the proper custody and care of the mentally ill persons sentenced to prison.  Among other accomplishments with this population, I was the Superintendent (and later the Assistant Director with oversight) of the McNeil Island Corrections Center and charged with program design and operation of an intermediate care treatment unit for the mentally ill at that prison.  Later in my career as Secretary and Deputy Secretary, I was responsible for all programs for the mentally ill in all Washington state prisons, including the physical plant design of an expansion that doubled the state's beds for the growing population of mentally ill inmates in that system.  The purpose of that design was to allow inmates to move through progressive custody levels from maximum to minimum and stay out of segregation as much as possible, and it has proved to be effective.  For some of those who did wind up in segregation, we created a high security treatment unit, separate and apart from a regular segregation unit, where they could be safely housed yet receive robust treatment from mental health professionals.  The pioneering work of the McNeil program and Washington's programs overall have been extensively studied by researchers, some of which was cited in my first expert declaration.[2]

---

[1] *See* Order, March 6, 2013, at 22 (Doc. 372).
[2] Expert Declaration of Eldon Vail, signed November 8, 2013, page 3, paragraph 5, lines 23-25 through page 4, line 2; page 4, paragraph 8, lines 19-22; page 14, paragraph 34, line 15 through page 15, line 15; and page 38, paragraph 74, lines 11-18.

78204-0001/LEGAL122399600.1                -2-

6. Also, as indicated in my rebuttal report, "I approached my review of the facts in this case as if I was the new Director of the system seeking the information I would need to identify the nature of the problem(s) and begin to craft solution(s)."[3] I believed then as I do now that my approach is a reliable methodology to understand the operation and the culture of the isolation units in the Arizona Department of Corrections, consistent with methodology used by other correctional experts, and I am confident in the accuracy of the opinions I stated in my previous reports.

7. In selecting inmates to interview in a confidential setting I drew from a pool of prisoners who had been involved in "serious incidents" in the isolation units. This sample allowed me to target my in-depth interviews toward the population with some of the most critical needs due to involvement in self-harm and use of force incidents where chemical spray is deployed. In order to select my confidential interviewees, Plaintiffs' counsel provided me with complete and unedited logs of serious incident reports (SIR) that they received from ADC. The description of what happened in each of those incidents is very brief. From those lists I selected a large number of inmates to interview, based on the factors of race, ethnic origin and the physical location of the class. Those I identified to interview were then pared down by matching my selections with the rosters of prisoners who were currently at the facilities I planned to inspect when I was scheduled to be on site. While this selection process was not random, I had no knowledge of who I was selecting beyond the brief information in Defendants' SIR logs. In my opinion this is a completely reliable and appropriate approach to developing an understanding of the issues in this case.

8. Defendants argue that my use of their SIR logs to select inmates to interview in a confidential setting was somehow biased because it was not entirely

---

[3] Rebuttal report of Eldon Vail, signed January 31, 2014, page 2, lines 12-14.

1 "random." But random sampling was not appropriate for my work in the context of this case, where my task is to determine whether the conditions of confinement in the isolation units put inmates, especially those with mental illness at a risk of harm. In my experience as a corrections administrator, interviewing inmates who experience difficulties in the custodial setting is an excellent tool for stress-testing the system's operations.

9. I also interviewed the named plaintiffs who were in the isolation units at the time of my inspection. Where possible, these interviews were conducted in a confidential setting.

10. In addition to my pre-selected interviews, I also conducted numerous cell front interviews of inmates in every housing unit I inspected. These interview selections were made by me based on who was awake in his/her cell and willing to speak with me.

11. In my experience as a correctional administrator, interviewing inmates is absolutely critical to understand the true functioning of a corrections system.

12. In my evaluation of inmate interviews and the information gathered from these interviews, I give great weight to recurring themes that emerge from these conversations. For example, when isolation sub-class inmates over and over again told me that their opportunity for exercise is cancelled with considerable regularity, the frequency and consistency of the complaint across units and complexes established a threshold of credibility for the allegation that merited my further investigation. All of my opinions regarding the conditions of confinement in the isolation units in ADC are similarly informed by the recurring issues identified in my numerous inmate interviews.

13. In order to substantiate the data gathered from inmate interviews, I reviewed a large volume of documents, including several of the inmate records of the individuals who I interviewed. For example, I verified inmate claims related to recreation cancellation by also reviewing ADC's own documents which supported

the fact that opportunities for exercise are often canceled in the isolation units.[4] Additionally, I reviewed individual logs of inmates in isolation who I interviewed during my inspection, individual Inmate Detention Records produced after my tour, and ADC's internal reports citing the reasons for the cancellations, which were most often due to the shortage of staff. Contrary to Defendants' claim, my opinion regarding the lack of regular exercise for prisoners in isolation is not, "based solely his calculations based on Plaintiffs Gamez and Smiths files (sic)" but rather on the totality of the extensive evidence available to me.[5] This is the same methodology I used for each of my expert conclusions in this case.

14. The methodology I employed in reviewing the conditions of confinement in ADC's isolation units is similar to that I have used in other cases, including my expert review in California for *Coleman v. Brown*. In this Court in *Graves v. Arpaio*, I also used a similar approach without conducting inspections.

15. Attached hereto as Exhibit 1 is my report dated November 8, 2013, including all appendices.

16. Attached hereto as Exhibit 2 is my report dated January 31, 2014, including all appendices.

17. Attached hereto as Exhibit 3 is my report dated February 24, 2014.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of June, 2014 in Olympia, Washington.

_____
Eldon Vail

---

[4] Expert Declaration of Eldon Vail, signed November 8, 2013, page 22, paragraph 29, line 15 through page 23, line 10.
[5] Defendants Motion dated May 14, 2014, page 24, lines 24 and 25.

| | |
|---|---|
| 1 | **ADDITIONAL COUNSEL:** |

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Warren E. George (Cal. 53588)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:   dspecter@prisonlaw.com
         ahardy@prisonlaw.com
         snorman@prisonlaw.com
         ckendrick@prisonlaw.com
         wgeorge@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)**
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:   dfathi@npp-aclu.org
         afettig@npp-aclu.org
         aquereshi@npp-aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
Jerica L. Peters (Bar No. 027356)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:   dbarr@perkinscoie.com
         agerlicher@perkinscoie.com
         keidenbach@perkinscoie.com
         jhgray@perkinscoie.com
         mdumee@perkinscoie.com
         jpeters@perkinscoie.com

| | |
|---|---|
| 1 | Caroline Mitchell (Cal. 143124)* |
| | Amir Q. Amiri (Cal. 271224)* |
| 2 | **JONES DAY** |
| | 555 California Street, 26th Floor |
| 3 | San Francisco, California 94104 |
| | Telephone: (415) 875-5712 |
| 4 | Email: cnmitchell@jonesday.com |
| | aamiri@jonesday.com |
| 5 | |
| | *Admitted *pro hac vice* |
| 6 | |
| | John Laurens Wilkes (Tex. 24053548)* |
| 7 | Taylor Freeman (Tex. 24083025)* |
| | **JONES DAY** |
| 8 | 717 Texas Street |
| | Houston, Texas 77002 |
| 9 | Telephone: (832) 239-3939 |
| | Email: jlwilkes@jonesday.com |
| 10 | tfreeman@jonesday.com |
| 11 | *Admitted *pro hac vice* |
| 12 | Kamilla Mamedova (N.Y. 4661104)* |
| | Jennifer K. Messina (N.Y. 4912440)* |
| 13 | **JONES DAY** |
| | 222 East 41 Street |
| 14 | New York, New York 10017 |
| | Telephone: (212) 326-3498 |
| 15 | Email: kmamedova@jonesday.com |
| | jkmessina@jonesday.com |
| 16 | |
| | *Admitted *pro hac vice* |
| 17 | |
| | Kevin Brantley (Cal. 251886)* |
| 18 | **JONES DAY** |
| | 3161 Michelson Drive, Suite 800 |
| 19 | Irvine, California 92612 |
| | Telephone: (949) 851-3939 |
| 20 | Email: kcbrantley@jonesday.com |
| 21 | *Admitted *pro hac vice* |
| 22 | *Attorneys for Plaintiffs Shawn Jensen;* |
| | *Stephen Swartz; Dustin Brislan; Sonia* |
| 23 | *Rodriguez; Christina Verduzco; Jackie* |
| | *Thomas; Jeremy Smith; Robert Gamez;* |
| 24 | *Maryanne Chisholm; Desiree Licci; Joseph* |
| | *Hefner; Joshua Polson; and Charlotte* |
| 25 | *Wells, on behalf of themselves and all others* |
| | *similarly situated* |
| 26 | |
| 27 | |
| 28 | |

| | |
|---|---|
| 1 | Sarah Kader (Bar No. 027147) |
| 2 | Asim Varma (Bar No. 027927) |
| | **ARIZONA CENTER FOR DISABILITY LAW** |
| 3 | 5025 East Washington Street, Suite 202 |
| | Phoenix, Arizona 85034 |
| 4 | Telephone: (602) 274-6287 |
| | Email: skader@azdisabilitylaw.org |
| 5 | avarma@azdisabilitylaw.org |

Sarah Kader (Bar No. 027147)
Asim Varma (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
  avarma@azdisabilitylaw.org

J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
**ARIZONA CENTER FOR DISABILITY LAW**
100 N. Stone Avenue, Suite 305
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email: jrico@azdisabilitylaw.org
  jross@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2014, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Rachel Love
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
tbojanowski@swlfirm.com
rlove@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

                                                              s/ Delana Freouf