Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | NO. 2:12-cv-00601-NVW <br><br><br> **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR AN ORDER AUTHORIZING *EX PARTE* COMMUNICATIONS WITH FORMER EMPLOYEES OF DEFENDANTS** |

Plaintiffs' request to take *ex parte* interviews of unknown former ADC, Wexford, and Corizon employees is a veiled attempt to conduct untimely *ex parte* discovery, and to use that undisclosed discovery at trial without providing Defendants any opportunity to test it.  Discovery is over, and Plaintiffs have never disclosed any former employee as a trial witnesses, much less the former employees they claim exist in their Motion.  Having just been denied a similar request to depose undisclosed witnesses (Dkt. 991), Plaintiffs frame this request as one involving the propriety of *ex parte* communications with a represented party.  But the real issue, once again, is whether Plaintiffs will be able to use the fruits of those communications as evidence at trial. Because they cannot introduce any gathered information at trial as a result of their noncompliance with the discovery rules and significant resulting prejudice to Defendants, their request for *ex parte* interviews – which would in fact violate Arizona's Rules of Professional Conduct – should be denied.

## I.   <u>BACKGROUND</u>

Plaintiffs' counsel contend that they have been contacted by several former employees "seeking to provide information relevant to this case."  (Dkt. 981 at 2:3-6, 4:10-11.)  They do not identify who these former employees are or how many, nor do they inform when they were contacted, but they presume that they are "whistleblowers" that have "highly probative evidence" and are "seeking to blow the whistle on potential life-threatening governmental abuses."[1]  (Id. at 2:10, 3:4, 7:20-22.)  Although they request only to "interview" these former employees, and acknowledge that they cannot take their depositions at this late stage of the litigation (Id. at 3:27-28: "Plaintiffs are not authorized to take any additional depositions"), they clearly contemplate calling them as witnesses at

---

[1] This suggests one of two things: either Plaintiffs' counsel have already had *ex parte* communications with these former employees regarding the allegations in this lawsuit, or Plaintiffs' counsel are assuming that they are "whistleblowers" and use that term to inflame a negative public reaction and taint the Court's, and the Settlement Judge's, perception of this case prior to the upcoming settlement conference and trial. This is also not the first time Plaintiffs have brought the May 22, 2014 newscast to the Court's attention.  (Dkt. 972.)  It is inadmissible hearsay and should not be considered by the Court for any reason related to this case.

trial. (Id. at 3:8, 6:13-14: referring to them as "potential witnesses" and "percipient witnesses"; 7:22-25: "[A]llowing Plaintiffs' attorneys to interview them *ex parte* best promotes . . . this Court's interest in the efficient and accurate disposition of cases on its docket.").  Indeed, on June 27, 2014, nine months after the close of fact discovery and on the same day they filed their Motion, Plaintiffs supplemented their disclosure statement to include the following trial witnesses:

> Any individuals that voluntarily furnish information relevant to Plaintiffs' case, consistent with the Court's Order on Plaintiffs' Pending Motion for an Order Authorizing *Ex parte* Communications with Former Employees of Defendants and Their Agents (ECF No. 981). Such names shall be supplemented if, and when, made known to Plaintiffs pursuant to Federal Rule of Civil Procedure 26(e) at a later date.

(Dkt. 983; Ex. 1 at 28.)[2]  Plaintiffs ignore this deficiency entirely and distract the Court with the propriety of such *ex parte* communications under Arizona's Rules of Professional Conduct on the assumption that they will be able to use the information at trial if permitted to interview them.  That assumption is wrong.

## II.   PLAINTIFFS' REQUEST FOR ADDITIONAL DISCOVERY IS UNTIMELY AND HIGHLY PREJUDICIAL.

Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires a party to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses."  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  This is a "self-executing" and "automatic" sanction.  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

---

[2] That untimely disclosure still did not even identify former employee Teresa Short, who they reference by name in their Motion, as a trial witness. Nor did Plaintiffs disclose the subject matter and facts as to which these witnesses would testify or any corresponding documentary evidence they may present.

Plaintiffs' request to interview former employees is futile because they cannot be called as trial witnesses. At no time prior to filing their Motion did Plaintiffs include these former employees as potential trial witnesses, and the deadline to do so was September 27, 2013. In addition, Plaintiffs did not disclose these witnesses in response to Defendants' discovery requests seeking the identity of witnesses Plaintiffs may call at trial and the subject matter of their anticipated testimony.[3] (Ex. 2 at 2.) Moreover, Plaintiffs do not inform when they were contacted by, or became aware of, these former employees, a necessary prerequisite for a request of this kind. Plaintiffs filed their lawsuit in March 2012; ADC turned over the provision of healthcare to Wexford on July 1, 2012, and Corizon took over the provision of healthcare on March 3, 2013. Their allegations have been publicly aired and reported on for more than two years. Even the broadcast that featured Teresa Short's allegations – which included an on-camera appearance by, and interview of, one of Plaintiffs' counsel – was released on May 22, 2014 (Dkt. 982–1), over a month before Plaintiffs filed their Motion requesting to interview former employees and disclosing their intent to call them as trial witnesses. Plaintiffs' counsel obviously knew about Short's allegations, and perhaps the existence of other disgruntled former employees, before that time.

Plaintiffs have not provided any explanation as to why they waited until now to disclose even the possibility of these individuals as trial witnesses or to request *ex parte* interviews of them. Discovery is closed; dispositive motions have already been filed; the Court has set and confirmed all pretrial and trial deadlines (Dkt. 995); and trial is just three months away. It appears that they conveniently timed filing their Motion so that the Court would be aware of the allegations – whether or not it allowed Plaintiffs to conduct interviews – while it resolved Defendants' Motion for Summary Judgment, and so the Settlement Conference Judge would be aware of it going into settlement negotiations in just a few weeks.

---

[3] When Defendants asked Plaintiffs to identify their impeachment witnesses, they objected.

4

Aside from the prejudice to Defendants by the mere filing of their Motion, Defendants will be extremely prejudiced if the Court allows Plaintiffs to call any of these former employees at trial.  As even Plaintiffs acknowledge, Defendants will not be able to depose these witnesses before trial.  Nor will they know the substance of their testimony before trial since Plaintiffs are seeking *ex parte* interviews.  Plaintiffs want to conduct back-room discovery and spring it on Defendants at trial with no opportunity to prepare.  The only way to avoid this prejudice is to allow Defendants to depose these former employees and allow their experts to supplement their reports after reviewing their depositions and the healthcare and institutional files of any inmates the former employees discuss.[4]  Defendants may also need to depose those inmates that the former employees discuss, and list them and their treating physicians as trial witnesses.  If accusations are made against other employees (current or former), Defendants should be given an opportunity to depose those employees as we;; and add them as potential trial witnesses.  In other words, the Court must re-open discovery.  There is neither time nor justification to do all of this given the Court's current pre-trial and trial schedule.

Plaintiffs' request to call unidentified and unlimited witnesses at trial that they have not disclosed and without any opportunity for Defendants to depose them should be denied.  *See* Fed. R. Civ. P. 37(c)(1).

### III.   PLAINTIFFS HAVE NOT ESTABLISHED THAT THEIR REQUESTED *EX PARTE* INTERVIEWS OF UNIDENTIFIED FORMER EMPLOYEES COMPLY WITH ER 4.2.

Arizona Rule of Professional Conduct (ER) 4.2 prohibits *ex parte* communications with former employees who had "a managerial responsibility on behalf of the organization," ER 4.2, Comment 2, "whose act or omission in connection with that matter may be imputed to the organization for purposes of civil . . . liability," *id*., "whose statement may constitute an admission on the part of the organization," or who "occupied

---

[4] Again, the number of former employees is unknown, but Plaintiffs candidly admit that they are not only taking calls from former employees but will also actively solicit former employees. (Dkt. 981 at 8:8-10: requesting an order "authorizing Plaintiffs to contact and interview *ex parte* former employees".)

a position giving rise to a plaintiff's claims," *Kaiser v. Am. Tel. & Tel., No.*, CIV 00–724–PHX JWS, 2002 WL 1362054, at *6 (D. Ariz. Apr. 05, 2002); *see also Lang v. Superior Court*, 826 P.2d 1228, 1233 (Ariz. App. 1992) (*ex parte* communications with former employees prohibited if "the acts or omissions of the former employee gave rise to the underlying litigation or the former employee has an ongoing relationship with the former employer in connection with the litigation").

To avoid any ethical violation, Plaintiffs attempt to self-limit their proposed *ex parte* interviews to only those former employees who are not "high ranking officials — that is, officials responsible for creating policy," or who were not "likely . . . exposed to privileged information or information confidential to the defense of the litigation." (Dkt. 981 at 5:15-18.) But without identifying who these former employees are, Defendants and the Court have no way of knowing whether or not the former employee falls into these categories. That is not Plaintiffs' call to unilaterally make.

Plaintiffs also draw the line between those with "policy-making responsibilities" and those who were not responsible for "creating policy," arguing that the latter are fair game. (Dkt. 981 at 5:24, 7:5, 8:10.) But as Plaintiffs have themselves reiterated over and over, and the Court has agreed, their case does not challenge only the constitutionality of written ADC policies created by policy makers (e.g., Defendant Ryan and Defendant Pratt). Instead, "Plaintiffs' claim is that *despite* ADC stated policies, the actual provision of health care in its prison complexes suffers from systemic deficiencies that rise to the level of deliberate indifference." (Dkt. 858 at 6; Dkt. 876 at 8; Dkt. 906 at 2.) And Plaintiffs have argued that what matters is "the actual care that plaintiffs receive and the isolated conditions under which they live," not Defendants' policies and statistics. (*Id.*). Plaintiffs claim that they "do not intend to contact individuals who "occupied a position giving rise to plaintiff's [sic] claims." (Dkt. 981 at 6:1-2.) Yet they rely on individual acts and omissions of current and former employees of ADC and its contractors

to support their claims against Defendants.[5] (See, e.g., Dkt. 1 at ¶¶ 36, 47; Dkt. 294 at 11; Dkt. 858 at 6 n.5; Dkt. 920 at ¶ 6.)  In other words, they allege that there are "practices" throughout ADC that are unconstitutional, and those alleged "practices," e.g., untimely access to health care, are based on the conduct of ADC, Wexford, and Corizon employees responsible for providing healthcare at every level.  Thus, there is no question that these employees occupy positions giving rise to Plaintiffs' claims.  Moreover, if a former employee makes an allegation regarding deficiencies in the care he provided or witnessed other employees providing, those allegations will be used by Plaintiffs to impute liability to ADC for the alleged practices. These are precisely the types of *ex parte* communications that are prohibited.[6]

Finally, because Plaintiffs do not inform as to when they were allegedly contacted by these former employees, Defendants and the Court have no way of knowing whether they were still employed at the time of the contact or continue to have an ongoing relationship with their former employer in connection with this litigation. Thus, the witness' statements could be imputed to the organization or constitute an admission.[7] *See Richards v. Holsum Bakery*, 2009 WL 3740725, No. CV 09-00418, at * 5 (D. Ariz. Nov. 5, 2009) (citing *State ex rel. Arizona Dept. of Health Svcs v. Gottsfield*, 213 Ariz. 583,

---

[5] For example, one Plaintiff alleges that an ADC nurse improperly manipulated his catheter, another Plaintiff alleges that a nurse provided him with expired eye drops, and yet other Plaintiffs repeatedly reference an incident in which a registry nurse hired by Wexford failed to follow protocols when distributing insulin.

[6] This lawsuit is fundamentally different from the example given in *Lang* in which *ex parte* communication with the driver of the vehicle involved in a single vehicle accident would be prohibited, but *ex parte* communication with other employees of the company who were not liable for the accident would be allowed.  This lawsuit involves the provision of health care and conditions of confinement to 34,000 ADC inmates, which is accomplished by thousands of individual healthcare providers, administrators, and correctional staff statewide whose combined acts and omissions make up the alleged practices Plaintiffs contend are unconstitutional.

[7] In addition to the confidentiality concerns raised by Corizon in their Motion to Intervene (Dkt. 1000), the contract between ADC and its contracted healthcare providers contains provisions requiring the contractor and its staff to maintain confidentiality of inmates' health information and records.  Permitting *ex parte* interviews regarding the provision of healthcare during these former employees' tenure may violate these provisions.

586, 146 P.3d 574 (App. 2006)); *Lang*, 170 Ariz. at 607, 826 P.2d at 1233.  *Ex parte* communication is not permitted under such circumstances.

**IV.    CONCLUSION**

        For these reasons, Plaintiffs' request to take additional discovery of former employees of ADC, Wexford, and Corizon should be denied.

        DATED this  9th  day of July 2014.

        STRUCK WIENEKE & LOVE, P.L.C.


By /s/ Daniel P. Struck
    Daniel P. Struck
    Kathleen L. Wieneke
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    Ashlee B. Fletcher
    Anne M. Orcutt
    Jacob B. Lee
    STRUCK WIENEKE & LOVE, P.L.C.
    3100 West Ray Road, Suite 300
    Chandler, Arizona  85226

    Arizona Attorney General Thomas C. Horne
    Office of the Attorney General
    Michael E. Gottfried
    Lucy M. Rand
    Assistant Attorneys General
    1275 W. Washington Street
    Phoenix, Arizona 85007-2926

    *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

     I hereby certify that on July 9, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Ajmel Quereshi:           aquereshi@npp-aclu.org

Alison Hardy:            ahardy@prisonlaw.com

Amelia M. Gerlicher:     agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com

Amir Q. Amiri:          aamiri@jonesday.com; ttualaulelei@jonesday.com

Amy Fettig:             afettig@npp-aclu.org

Asim Varma:            avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

Caroline N. Mitchell:     cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

Corene T. Kendrick:     ckendrick@prisonlaw.com; edegraff@prisonlaw.com

Daniel Clayton Barr:     DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

Daniel Joseph Pochoda: dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org

David Cyrus Fathi:       dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

Donald Specter:         dspecter@prisonlaw.com

James Duff Lyall:        jlyall@acluaz.org; gtorres@acluaz.org

James M. Jellison:       jim@jellisonlaw.com; cindy@schleierlaw.com; kasey@jellisonlaw.com

Jennifer K. Messina:    jkmessina@jonesday.com

Jerica Lynn Peters:     jpeters@perkinscoie.com

Jessica Pari Jansepar Ross:   jross@azdisabilitylaw.org

John Howard Gray:     jhgray@perkinscoie.com; slawson@perkinscoie.com

John Laurens Wilkes:   jlwilkes@jonesday.com, dkkerr@jonesday.com

Jose de Jesus Rico:     jrico@azdisabilitylaw.org

Kamilla Mamedova:    kmamedova@jonesday.com

Kevin C. Brantley:     kbrantley@jonesday.com

9

Kirstin T. Eidenbach:    keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; docketphx@perkinscoie.com

Matthew Benjamin de Mee: mdumee@perkinscoie.com; cwendt@perkinscoie.com

Sara Norman:    snorman@prisonlaw.com

Sarah Eve Kader:    skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org

Taylor Freeman:    tfreeman@jonesday.com

Warren E. George, Jr.:    wgeorge@prisonlaw.com

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ *Daniel P. Struck*

10