1 | Arizona Attorney General Thomas C. Horne
Office of the Attorney General
2 | Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
3 | Assistant Attorneys General
1275 W. Washington Street
4 | Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
5 | Fax: (602) 542-7670
Michael.Gottfried@azag.gov
6 | Lucy.Rand@azag.gov

7 | Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
8 | Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
9 | Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
10 | Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
11 | STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
12 | Chandler, Arizona 85226
Telephone: (480) 420-1600
13 | Fax: (480) 420-1696
dstruck@swlfirm.com
14 | kwieneke@swlfirm.com
rlove@swlfirm.com
15 | tbojanowski@swlfirm.com
nacedo@swlfirm.com
16 | afletcher@swlfirm.com
aorcutt@swlfirm.com
17 | jlee@swlfirm.com

18 | *Attorneys for Defendants*

19 | **UNITED STATES DISTRICT COURT**
20 | **DISTRICT OF ARIZONA**

21 | Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,

22 |

NO. 2:12-cv-00601-NVW

Plaintiffs,

23 | v.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO PRECLUDE PLAINTIFFS' EXPERTS**

24 | Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,

**REDACTED**

25 |

26 |

Defendants.

27 |

28 |

## I.    INTRODUCTION

Plaintiffs have the burden of showing their experts' opinions are relevant and reliable. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Rather than attempt to meet this burden, Plaintiffs argue that their experts were not required to conduct a scientific review, and that Defendants' criticisms of Plaintiffs' experts' methodologies go to the weight of the evidence. Plaintiffs misconstrue Defendants' arguments. Defendants' Motion challenges the reliability and admissibility of Plaintiffs' experts' opinions, not the merits of their opinions or conclusions. To prevail on their claims, Plaintiffs must prove that systemic deficiencies exist. Defendants do not expect Plaintiffs' experts to observe every inmate and review every record, but their opinions must be based on facts that are representative of the entire prison system, extrapolated to systemwide opinions based on reliable principles and methods beyond their own "say so." They are not.

The Court should preclude Plaintiffs' experts from providing their opinions pursuant to *Daubert* and Rule 702 because their opinions are based on insufficient facts and data and are not the product of reliable principles and methods. At a minimum, the Court should limit the scope of their testimony at trial to only the evidence they reviewed, and preclude Plaintiffs from calling multiple, cumulative medical and segregation experts.

## II.   LEGAL ARGUMENT

### A.    The Court Should Disregard The Sham Declarations Of Plaintiffs' Experts.

This Court should disregard the expert declarations submitted by Plaintiffs in support of their Response as sham declarations to the extent they contradict the experts' prior reports and deposition testimony. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-267 (9th Cir. 1991). The sham affidavit rule precludes the use of affidavits by a party opposing summary judgment that clearly and unambiguously contradict the party's prior deposition testimony in order to "create" an issue of fact and avoid summary judgment. *Id.*; *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009). This rule

extends to other contexts as well, including oppositions to motions to preclude expert testimony. *See Weekes v. Ohio Nat. Life Assur. Corp.*, 2011 WL 6140967, *4 (D. Idaho December 9, 2011) (applying the sham affidavit rule to preclude corrections by an expert to his deposition testimony where the corrections flatly contradicted the prior testimony, the expert failed to adequately explain the contradictions, and the expert did not make the corrections until after a motion to exclude the expert had been filed); *see also Bartos v. Penn.*, 2010 WL 1657284, **6-7 (M.D. Penn. April 23, 2010) (applying the sham affidavit rule and granting a motion to strike deposition erratas that flatly contradicted the witnesses' prior sworn testimony).

At least three of Plaintiffs' experts here have provided declarations that flatly contradict their prior reports and/or deposition testimony with regard to their methodology. Their declarations do not explain the contradictions. Moreover, the timing of the changes is suspect, as they contradict the experts' prior testimony after Defendants filed their Motion challenging Plaintiffs' experts' methodologies. The Court should therefore find that the following Plaintiffs' experts' declarations are sham declarations and disregard them in ruling on Defendants' Motion.

### 1. Pablo Stewart

Dr. Stewart claims in his declaration that he selected the prisoners he interviewed in two ways: (1) by requesting that Plaintiffs' counsel compile lists of inmates with mental health needs, who Dr. Stewart then attempted to interview; and (2) by randomly selecting inmates to interview as he walked through the units he toured. These statements are contradicted by Dr. Stewart's deposition testimony:

Q.   REDACTED

A.   REDACTED

Q.   REDACTED

A.   REDACTED

1    (*See* Exhibit Q to Defendants' Motion, 74:19-75:1; *see also* id. at 73:25-74:10, 84:5-85:8).

2    Dr. Stewart never suggested during his deposition that he requested that Plaintiffs'

3    counsel compile lists of inmates with mental health needs. Rather, he stated that REDACTED

4    

5    

6    

7    (Exhibit Q).

8            2.     **Todd Wilcox**

9            Plaintiffs claim that the records Dr. Wilcox reviewed were all selected either at Dr.

10   Wilcox's direction or by Dr. Wilcox himself. In his declaration, Dr. Wilcox claims that he

11   instructed Plaintiffs' counsel to provide him with a random selection of charts of chronic

12   care patients from each facility he toured. In his report, however, Dr. Wilcox specifically

13   states that REDACTED                          (*See* Exhibit AA to Defendants' Motion,

14   3). Dr. Wilcox further testified in his deposition that REDACTED

15   

16           Q.    REDACTED

17   

18   

19           A.    REDACTED

20           Q.    REDACTED

21   

22   

23   

24           A.    REDACTED

25           Q.    REDACTED

26           A.    REDACTED

27           Q.    REDACTED

28           A.    REDACTED

3

Q.   REDACTED

A.   REDACTE

(*See* Exhibit BB to Defendants' Motion, 95:22-96:16; *see also* id. at 97:6-97:24, 98:15-99:7). Dr. Wilcox's declaration flatly contradicts his prior report and deposition testimony with regard to REDACTED

### 3.   Brie Williams

Dr. Williams claims in her declaration that she identified inmates for interviews and records reviews by (1) asking Plaintiffs' counsel to create a list of inmates "[a]t [her] instruction;" and (2) speaking with random inmates she selected herself during her facility tours. In her deposition, however, Dr. Williams testified that REDACTED

Q.   REDACTED

A.   REDACTED

(*See* Exhibit GG to Defendants' Motion, 58:10-21; *see also* id. at 60:4-20, 62:3-10). Dr. Williams's declaration flatly contradicts her deposition testimony by suggesting that REDACTE

### B.   Plaintiffs Have Not Shown By A Preponderance Of The Evidence That Their Experts' Opinions Are Reliable.

Under Rule 702, "the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence," Fed. R. Evid.

702, Advisory Committee Notes, 2000 Amendments (*citing Bourjaily v. United States*, 483 U.S. 171 (1987)). Where a party objects to the admission of an expert witness's opinion on the grounds that the opinion is unreliable and adequately explains why the opinion is unreliable, the "proponent of the opinion has the burden of establishing the ultimate fact of reliability by a preponderance of the evidence." *U.S. v. Frazier*, 387 F.3d 1244, 1274 (11th Cir. 2004) (*citing Daubert*, 509 U.S. at 593 n. 10). Plaintiffs have not satisfied their burden to show the opinions of their expert witnesses are reliable.

There is no bench trial exemption from the *Daubert* standards for relevance and reliability of expert testimony as Plaintiffs suggest. The admissibility standards set forth in *Daubert* and Rule 702 remain the same and are *not* relaxed. *See Attorney Gen. of Okla. v. Tyson Foods, Inc.,* 565 F.3d 769, 779 (10th Cir. 2009) (holding that "*Daubert*'s standards must still be met" in a bench trial); *Seaboard Lumber Co. v. United States,* 308 F.3d 1283, 1302 (Fed. Cir. 2002) (same). Even in a bench trial, a court must make a determination regarding the reliability of a party's experts' opinions. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010); *see also In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) (noting the reliability standard is not lessened in bench trials). Moreover, this Court must rule on the admissibility of the experts' opinions now in light of Defendants' pending Motion for Summary Judgment. If Plaintiffs rely on their experts' opinions to create an issue of fact, those opinions must be admissible, and therefore satisfy *Daubert* and Rule 702. *See Lust By and Through Lust v. Merrell Dow Pharmaceuticals, Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) (affirming the district court's exclusion of the plaintiff's expert pursuant to Rule 702 and *Daubert* and corresponding grant of summary judgment to the defendant due to the plaintiff's failure to present admissible evidence of causation without the expert); *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998) (same).

Plaintiffs' cited authority does not support their position that the admissibility standards for expert testimony are relaxed in a bench trial. In *Biltmore Assocs., L.L.C. v. Thimmesch*, the district court noted expert testimony still must "meet the standard of reliability established in Rule 702," and granted in part the motion to exclude the expert's

opinions. 2007 WL 5662124, at **2, 8, 10 (D. Ariz. Oct. 15, 2007).[1] Plaintiffs must therefore show by a preponderance of the evidence that their experts' opinions are reliable.

Where "an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. National Railroad Passenger Corp.*, 303 F.3d 256, 266-67 (2d Cir. 2002). In evaluating whether Plaintiffs' proposed expert opinions are reliable and therefore admissible, the Court should consider whether:

    (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b)    the testimony is based on sufficient facts or data;

    (c)    the testimony is the product of reliable principles and methods; and

    (d)    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Amorgianos*, 303 F.3d at 265-66. Although these criteria are flexible and may vary from case to case, the court still must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151-52 (1999). This standard applies "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Id.* at 141. Thus, the admissibility standard is the same, and there is no "clear distinction" between scientific and specialized knowledge as Plaintiffs argue.

---

[1] Noting there were "some serious reliability problems" and "some fundamental flaws" with some of the expert's opinions, the court stated it would re-evaluate the reliability of the expert's testimony at trial. *Id.* at *8, 10.

The opinions of Plaintiffs' experts are not based on sufficient facts or data, and are not the product of reliable principles and methods. While "'[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate,'… a district court must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999) (*quoting Daubert,* 509 U.S. at 595). "[C]onclusions and methodology are not entirely distinct from one another." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). Moreover, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.* "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

Plaintiffs' experts have simply substituted their own *ipse dixit* for any reliable method to extrapolate systemwide opinions from a limited and biased subset of information. Although "Defendants do not seriously contest the experts' qualifications," Plaintiffs devote a significant portion of their Response – over eleven pages – discussing each expert's qualifications in an attempt to argue that their opinions are somehow reliable because (1) they say so, i.e. *ipse dixit*, (2) they have offered similar opinions in other actions, and (3) they are the so-called experts. But their experts' qualifications – which were not challenged in the pending Motion – do not presumptively make their opinions reliable.

Plaintiffs' cited authority does not support their position. *Ruiz v. Johnson*, 37 F.Supp.2d 855 (S.D. Tex. 1999), *rev'd and remanded* 243 F.3d 941 (5th Cir. 2001), is an outdated and overruled Texas district court opinion that was decided before Rule 702 was amended in 2000 in response to *Daubert* and *Kumho Tire*. The discussion in that case regarding the objections to the plaintiff's experts was based upon a standard established in *Ruiz v. Estelle*, 679 F.2d 1115, 1133 (5th Cir. 1982), *amended in part, vacated in part,* 688 F.2d 266 (5th Cir. 1982), which was also decided prior to *Daubert* and *Kumho Tire*

and the amendments to Rule 702. Plaintiffs also rely on another outdated California district court decision, *Coleman v. Wilson*, 912 F. Supp. 1282, 1302-1303 (E.D. Cal. 1995), which was also decided before Rule 702 was amended and did not address the same issue raised here – whether Plaintiffs' experts' opinions were reliable and therefore admissible. The other cases Plaintiffs rely upon, *United States v. Sandoval-Mendoza*, 472 F.3d 645 (9th Cir. 2006), and *Wilson v. Maricopa Cnty.*, 2006 WL 3051870 (D. Ariz. 2006), involved opinions pertaining to one person, not an entire prison system.

Plaintiffs' experts' opinions are required to be based on sufficient facts or data and to be the product of reliable principles and methods pursuant to *Daubert* and Rule 702. Because Plaintiffs' experts' reports do not provide any sort of statistical analysis that would justify extrapolation of their opinions from the cherry-picked, non-random, non-representative samples they actually reviewed to the ADC system as a whole, their opinions are not based upon sufficient facts or reliable principles and methods.

### 1.    Robert Cohen

Plaintiffs do not dispute that REDACTED

REDACTED                                (*See* Exhibit D to Defendants' Motion, 62:16-25). Dr. Cohen cannot be both an effective witness and an effective advocate, as the two roles are incompatible. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997) ("[A]pplication of the *Daubert* factors is germane to evaluating whether the expert is a hired gun or a person whose opinion in the courtroom will withstand the same scrutiny that it would among his professional peers."); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 322 (N.D. Ill. 2008) ("The roles of attorney and witness usually are incompatible. A witness is supposed to present the facts without a slant, while an attorney's job is to advocate a partisan view of the significance of the facts. One person trying to do both things is apt to be a poor witness, a poor advocate, or both.") (internal citations and quotations omitted).

Defendants argued that Dr. Cohen's opinions were not based on sufficient facts or data because REDACTED

REDACTED

The only argument Plaintiffs even attempted to address is the manner of selection of the records Dr. Cohen reviewed by stating that Plaintiffs' counsel randomly selected records from several categories of inmates at the two facilities Dr. Cohen visited with various chronic conditions at Dr. Cohen's request. As a preliminary matter, Plaintiffs' counsel's declaration contradicts Dr. Cohen's report, in which he stated that *he* reviewed ADC's monitoring reports and selected the records. (*See* Exhibit C to Defendants' Motion, ¶4). Moreover, Plaintiffs' counsel has just made herself a witness in this case by avowing as to how *she* selected the records. Her selection can only be challenged by examining her under oath. This alone is cause to preclude Dr. Cohen's opinions at trial. Nonetheless, even though Plaintiffs' counsel's stated method may have produced a random sample within each category, it did not produce a random sample of *all* ADC inmates who received medical care. Additionally, Dr. Cohen stated in his report that REDACTED

REDACTED

(Exhibit C, ¶4). Dr. Cohen therefore based his opinions on biased information, without explaining how the experiences of the inmates he reviewed are identical to those of inmates systemwide. Plaintiffs did not even attempt to address Defendants' other criticisms of the evidence on which Dr. Cohen relied.

Defendants further argued that Dr. Cohen's opinions are not the product of reliable principles and methods REDACTED

REDACTED

Although Plaintiffs argued generally that such analysis was not required, and suggested that Plaintiffs' experts'

qualifications are enough to allow the Court to simply accept their conclusions, they did not present any evidence demonstrating that Dr. Cohen's opinions and findings from his review of a few non-randomly-selected inmates at two ADC facilities are indicative of conditions in all 10 ADC facilities housing over 33,000 inmates. Plaintiffs have not met their burden of showing that Dr. Cohen's opinions are reliable, and Dr. Cohen should be precluded from testifying at trial.

**2.     Craig Haney**

Defendants argued that Dr. Haney REDACTED

In his declaration, Dr. Haney admitted that his "empirical investigation was restricted primarily to the facilities that [he] inspected and in which [he] conducted interviews." Dr. Haney offered no explanation, however, as to why his findings based on that admittedly limited review should apply to the entire system. Dr. Haney claims that the use of statistics to demonstrate that the referenced inmates were representative of the entire system and that the same conditions applied systemwide would be "entirely unnecessary (and meaningless)." Rather than explaining why such analysis would be unnecessary and meaningless, however, Dr. Haney simply states that "inferences can be drawn about how a system is functioning by looking at a variety of indicators," without explaining how the reported experiences of less than 100 non-randomly-selected inmates are indicative of the experiences of over 33,000 inmates. Dr. Haney apparently expects Defendants and the Court to simply "take his word for it" based on his experience and qualifications.

The majority of Dr. Haney's lengthy declaration is dedicated to arguing for the collective acceptance of Plaintiffs' experts as a group. He provides very little information

1  to shed light on his own personal efforts. The determination of whether to permit an

2  expert to testify at trial, however, is an individual, and not a collective, determination. The

3  aggregate of Plaintiffs' experts' efforts is irrelevant if Plaintiffs cannot demonstrate that

4  Dr. Haney's own personal opinions are reliable. Plaintiffs have failed to do so, and Dr.

5  Haney should be precluded from testifying at trial accordingly.

6       **3.     Jay Shulman**

7       Defendants argued that Dr. Shulman REDACTED

8

9

10

11  Dr. Shulman's declaration does nothing to address

12  these concerns. Instead, Dr. Shulman, like Plaintiffs' other experts, merely states that his

13  methods were based on his experience. Dr. Shulman's *ipse dixit*, however, is not a reliable

14  basis for his opinions regarding systemwide dental care. Similarly, the fact that Dr.

15  Shulman may have quantified some of his findings does not meet his burden of showing

16  that his sample was representative of the whole or that his findings may properly be

17  applied to ADC in general. Plaintiffs have not met their burden of showing that Dr.

18  Shulman's opinions are reliable, and he should be precluded from testifying at trial.

19       **4.     Pablo Stewart**

20       Dr. Stewart presents one of the most egregious examples of a spoon-fed expert. In

21  their Motion, Defendants argued that Dr. Stewart's opinions REDACTED

22

23

24

25

26

27       Moreover, Defendants argued that Dr. Stewart's opinions are not the product of

28  reliable principles and methods because REDACTED

REDACTED

Dr. Stewart's declaration failed to provide any evidence to remedy these deficiencies. Instead, Dr. Stewart attempted to change his prior statements regarding how the records he reviewed were selected. Moreover, Dr. Stewart did not address how he reached his conclusions about the entire ADC system based on his review of a small number of inmate medical records and interviews, or why he could not have reviewed a random sample of medical records of inmates who have received medical care while incarcerated in ADC facilities. Dr. Stewart simply assured the Court that he is qualified to render his opinions, as if that somehow obviates the need to explain how he arrived at them. Plaintiffs have not carried their burden, and Dr. Stewart should be precluded from testifying at trial.

### 5.     Eldon Vail

Mr. Vail stated in his declaration that he approached his review of ADC's facilities with the assumption that the system was deficient, "as if [he] was the new Director of the system seeking the information he would need to identify the nature of the problem(s) and begin to craft solution(s)." Like Dr. Cohen, Mr. Vail cannot be an effective witness at the same time he is attempting to be an effective advocate. *See Watkins*, 121 F.3d at 991; *Sommerfield*, 254 F.R.D. at 322.

Defendants argued that Mr. Vail did not REDACTED

Mr. Vail's declaration fails to address these deficiencies. Mr. Vail claims that random sampling was not appropriate for his work in the context of this case, but even accepting his claim that it is more useful to look at inmates involved in "serious incidents" than to look at inmates generally, he does not explain *why* random sampling would be

1    inappropriate, or why he could not have taken a random sample of inmates involved in

2    serious incidents. Mr. Vail did not explain why his unspecified method of selecting

3    inmates for review/interview based on race, ethnic origin, and physical location of class

4    members provides a more reliable basis than a random sampling would have. Mr. Vail did

5    not demonstrate how, or even if, his sample was representative of the whole system, or

6    why his findings should apply outside of his sample. Instead, Mr. Vail refers repeatedly to

7    his qualifications and experience, as if to assure the Court that it can accept his opinions.

8    This is insufficient to establish the reliability of his opinions, and he should be precluded

9    from testifying at trial.

10            **6.    Todd Wilcox**

11            Defendants argued that Dr. Wilcox REDACTED

16            In addition to being a contradictory sham declaration, Dr. Wilcox's declaration

17    states that "probability analysis" is too simple to use in a complex setting such as

18    evaluating healthcare, as medical conditions and the required treatment for them vary

19    greatly from patient to patient. Dr. Wilcox's argument misses the point. Regardless of the

20    particular treatment plan that should be in place for a particular patient, Dr. Wilcox could

21    have analyzed the number of inmates who received appropriate care while in ADC

22    custody in comparison to the number of inmates who received inappropriate care. By

23    doing this with a randomly-selected sample that is representative of all inmates who

24    receive healthcare while in ADC custody, Dr. Wilcox would have had a reliable basis

25    (assuming the data justified it) to state that systemic deficiencies exist in ADC. Instead,

26    Dr. Wilcox based his opinions about ADC's systemwide provision of healthcare on his

27    review of five facilities and inmate medical records that were not randomly selected or

28    shown to be representative of the whole. Plaintiffs have failed to meet their burden of

13

1   showing that Dr. Wilcox's opinions are reliable, and he should be precluded from

2   testifying at trial.

3          **7.**    **Brie Williams**

4        As a threshold matter, Dr. Williams's opinions are irrelevant, as she was retained to

5   provide opinions regarding a sub-class, namely geriatric inmates, that this Court did not

6   certify. Plaintiffs attempt to downplay this by submitting Dr. Williams's declaration,

7   which states that she was asked to "provide an opinion on the risks to health posed by

8   isolated confinement as practiced in [ADC]," which Plaintiffs argue is relevant to their

9   claims. Her declaration, however, states that she considers segregation in ADC to pose a

10  substantial risk of harm to geriatric inmates. Moreover, her reports clearly state that REDACTE

11  

12  

13       Dr. Williams testified in her deposition that

14  REDACTED

15       (*See* Exhibit GG to Defendants' Motion, 21:5-22:3). Dr. Williams's

16  testimony does not relate to issues in the case, is not relevant or helpful, and should be

17  excluded on that basis alone.

18       Dr. Williams's opinions are unreliable as well. Defendants argued that Dr.

19  Williams is unable to REDACTED

20  

21       In addition to being a contradictory

22  sham declaration, Dr. Williams's declaration claims that random sampling was not

23  appropriate here because she was not asked to determine prevalence of a condition, but

24  rather the risk of harm to certain inmates. In doing so, Dr. Williams apparently ignores the

25  fact that her report REDACTED

26  

27  

28       Because these inmates were clearly intended

by Dr. Williams to be representative of all geriatric inmates in ADC custody, random sampling is both appropriate and necessary, but was not done by Dr. Williams by her own admission. Nor did she demonstrate that the findings from her small sample actually apply to ADC as a whole, or even to ADC's entire geriatric inmate population. Dr. Williams should be precluded from testifying at trial because Plaintiffs have not met their burden of showing her opinions are reliable.

      **C.**    **The Opinions Of Plaintiffs' Experts Are Needlessly Cumulative.**

Plaintiffs claim that the opinions of Dr. Cohen and Dr. Wilcox are not cumulative because they focus on different facilities and different issues. Even a cursory glance at both experts' reports, however, reveals broad conclusions regarding the ADC system *as a whole*. In addition to the examples cited in Defendants' Motion, consider the following (emphasis added):



15

REDACTED                              REDACTED

         (Exhibit C, ¶16).

                                                      (Exhibit AA,
                                        8).

Clearly, both Dr. Wilcox and Dr. Cohen rendered sweeping opinions that were not restricted to the handful of facilities they each toured. It is also clear that, despite Plaintiffs' claims, Plaintiffs intend to present two medical doctors at trial to give nearly-identical opinions regarding alleged systemic deficiencies of ADC *as a whole*. This type of cumulative evidence is exactly what Fed. R. Evid. 403 is intended to prevent. Given the magnitude of this trial, where the total amount of evidence to be presented is astronomical, *any* duplication of evidence will result in "undue delay, wasting time, or needlessly presenting cumulative evidence" sufficient to substantially outweigh the evidence's probative value and justify exclusion. Fed. R. Evid. 403. To ensure a streamlined and effective trial, the Court must be selective in the evidence to be presented. Allowing both experts to echo one another on the stand impedes this objective.

Additionally, Plaintiffs classify Dr. Haney, Mr. Vail, and Dr. Williams as "isolation" experts in their Response. For the same reasons set forth above, and those outlined in Defendants' Motion, the Court should preclude these individuals from presenting cumulative testimony regarding "isolation."

**D.      At A Minimum, The Court Should Limit Plaintiffs' Experts' Testimony At Trial.**

Alternatively, Dr. Cohen and Dr. Wilcox (and indeed, all of Plaintiffs' experts) should be limited to offering opinions regarding only the facilities they toured or otherwise reviewed. Because none of them toured every facility, reviewed inmate records from every facility, or interviewed inmates from every facility, and because none of them based their opinions on randomly-selected samples that they showed to be representative of the entire system, none of Plaintiffs' experts are qualified to render opinions regarding the systemwide operation of ADC. Instead, Plaintiffs' experts should be limited to offering opinions about the facilities with which they have personal experience, leaving it

16

to the Court to decide whether the experts' findings add up to systemic deficiencies.[2]

Without any factual support, Plaintiffs baldly claim that Defendants prevented Dr. Cohen and Dr. Wilcox from touring the facilities they did not tour. This is absolutely false. Plaintiffs provided detailed demands to Defendants outlining which facilities they wanted each expert to tour and when they wanted the tours to occur. Plaintiffs never pursued tours for Dr. Wilcox of the Lewis, Eyman, Douglas, Safford, or Winslow facilities, nor did they pursue tours for Dr. Cohen of the Phoenix, Perryville, Yuma, or Florence facilities. Defendants accommodated Plaintiffs' requested tours, and never told Plaintiffs that certain experts could not visit certain facilities.[3]

**E.     Plaintiffs' Criticisms Of Defendants' Experts Are A Red Herring.**

In a last-ditch effort to deflect from their experts' own flawed methodologies, Plaintiffs resort to pointing the finger at Defendants' experts. The Court should not entertain such extraneous allegations, which Plaintiffs raised only after their own experts' methodologies were challenged, and only after the deadline to challenge expert testimony had passed. Defendants' experts' methods are not at issue. Moreover, Plaintiffs' accusations are based upon inaccurate generalizations of Defendants' expert witnesses. Plaintiffs argue Defendants' experts employed a methodology similar to Plaintiffs, but fail to show how. This is most likely because Plaintiffs cannot do so, as Defendants' experts

---

[2] Plaintiffs' reliance upon the decisions in *Ruiz*, *Plata*, and *Casey* is misplaced. None of those cases addressed the issue raised here – whether the experts' opinions were duplicative. Plaintiffs' experts should not be permitted to testify in this case regarding allegedly systemic issues simply because other experts were allowed to do so in other cases in which no one objected to it.

[3] Plaintiffs' estoppel argument conflates their scheduling of expert tours, which Defendants fully accommodated, with Defendants' subsequent motion asking that the Court temporarily stay a handful of remaining tours pending resolution of the Rule 23(f) appeal. Although the Court eventually canceled some of Plaintiffs' tours (only three, to be exact), it did so only after it determined that the "the amount of discovery that has taken place, … well exceeded what the Court contemplated, and some of which may have been inefficient or unnecessary." (Doc. #567, 4:10-13). Plaintiffs prioritized the tours they wanted their experts to take, and had every opportunity to conduct other discovery at those facilities their experts did not tour to gauge the healthcare provided at those facilities (including review of MGARs, deposing contract monitors, reviewing healthcare files, etc.). They can only blame themselves if they did not take efficient or adequate discovery, particularly given the amount of discovery they have taken.

all employed a random-sampling review. In fact, Defendants' experts described in detail the random sampling methods they utilized to avoid the selection bias present in Plaintiffs' experts' reports. (*See, e.g.,* Doc. #943-1, Exhibit 6, p. 7 (outlining the methods Dr. Dovgan used to randomly select dental charts for review)).

Plaintiffs' attempts to attack the *number* of files Defendants' experts reviewed miss the point. Plaintiffs' experts' methodology is not flawed because they did not review *enough* records, but because those they did review were spoon-fed to the experts by Plaintiffs' counsel, and were not randomly-selected. It is Plaintiffs' burden to prove their case, not Defendants', and they have woefully failed to do that with the experts they retained. Without reliable expert testimony, Plaintiffs cannot satisfy *their* burden at trial.

## III.    CONCLUSION

For these reasons, the Court should preclude Plaintiffs' experts' testimony at trial.

DATED this 11th day of July 2014.

STRUCK WIENEKE & LOVE, P.L.C.


By /s/ Jacob B. Lee
   Daniel P. Struck
   Kathleen L. Wieneke
   Rachel Love
   Timothy J. Bojanowski
   Nicholas D. Acedo
   Ashlee B. Fletcher
   Anne M. Orcutt
   Jacob B. Lee
   STRUCK WIENEKE & LOVE, P.L.C.
   3100 West Ray Road, Suite 300
   Chandler, Arizona  85226

   Arizona Attorney General Thomas C. Horne
   Office of the Attorney General
   Michael E. Gottfried
   Lucy M. Rand
   Assistant Attorneys General
   1275 W. Washington Street
   Phoenix, Arizona 85007-2926

   *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Ajmel Quereshi:          aquereshi@npp-aclu.org

Alison Hardy:            ahardy@prisonlaw.com

Amelia M. Gerlicher:     agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com

Amir Q. Amiri:           aamiri@jonesday.com; ttualaulelei@jonesday.com

Amy Fettig:              afettig@npp-aclu.org

Asim Varma:              avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

Caroline N. Mitchell:    cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

Corene T. Kendrick:      ckendrick@prisonlaw.com; edegraff@prisonlaw.com

Daniel Clayton Barr:     DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

Daniel Joseph Pochoda:   dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org

David Cyrus Fathi:       dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

Donald Specter:          dspecter@prisonlaw.com

James Duff Lyall:        jlyall@acluaz.org; gtorres@acluaz.org

James M. Jellison:       jim@jellisonlaw.com; cindy@schleierlaw.com; kasey@jellisonlaw.com

Jennifer K. Messina:     jkmessina@jonesday.com

Jerica Lynn Peters:      jpeters@perkinscoie.com

Jessica Pari Jansepar Ross:   jross@azdisabilitylaw.org

John Howard Gray:        jhgray@perkinscoie.com; slawson@perkinscoie.com

John Laurens Wilkes:     jlwilkes@jonesday.com, dkkerr@jonesday.com

Jose de Jesus Rico:      jrico@azdisabilitylaw.org

Kamilla Mamedova:        kmamedova@jonesday.com

19

1   Kevin C. Brantley:          kbrantley@jonesday.com

2   Kirstin T. Eidenbach:       keidenbach@perkinscoie.com; dfreouf@perkinscoie.com;
                                docketphx@perkinscoie.com

3

4   Matthew Benjamin de Mee: mdumee@perkinscoie.com; cwendt@perkinscoie.com

    Sara Norman:               snorman@prisonlaw.com

5
    Sarah Eve Kader:           skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org;
6                              rstarling@azdisabilitylaw.org

7   Taylor Freeman:            tfreeman@jonesday.com

8   Warren E. George, Jr.:     wgeorge@prisonlaw.com

9
        I hereby certify that on this same date, I served the attached document by U.S.
10
    Mail, postage prepaid, on the following, who is not a registered participant of the
11
    CM/ECF System:
12
        N/A
13
                                                /s/ Jacob B. Lee
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28