**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Antonio Parsons, et al.,<br><br>  Plaintiffs,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>  Defendants. | No. CV-12-00601-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendants' Motion to Preclude Plaintiffs' Experts (Docs. 900, 905). Defendants seek to exclude the testimony of all seven of Plaintiffs' experts in their entirety. For the reasons that follow, the motion will be denied without prejudice to renewed specific objections at trial.

**I.    LEGAL STANDARD**

When one party challenges another's evidence, including expert evidence, Rule 104(a), Federal Rules of Evidence, requires the court to determine, by a preponderance of proof, that the evidence is admissible. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 & n.10 (1993). *Daubert* and *Kumho Tire* establish that district courts must "ensure that any and all [expert] testimony . . . is not only relevant, but reliable." *Daubert*, 509 U. S. at 589; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). This does not mean that the party proffering expert testimony must "prove their case twice — they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a

preponderance of evidence that their [experts'] opinions are reliable." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994) (emphasis in original). Rule 702, Federal Rules of Evidence, amended in 2000 to codify *Daubert* and *Kumho Tire*, states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

But again, "the test . . . is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995) (remand decision). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence . . . [that otherwise] meets the standards of Rule 702." *Daubert*, 509 U.S. at 596.

## II.   DISCUSSION

"[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (quoting *Daubert*, 509 U.S. at 597). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565 (citation and quotation marks omitted). The Court must eliminate "unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car*, 738 F.3d 960, 969 (9th Cir. 2013). The Ninth Circuit recently reiterated the appropriate inquiry: "The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful[.]" *Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 813 (9th Cir. 2014) (citing *Alaska Rent-A-Car*, 738 F.3d at 969).

Defendants do not challenge the relevance of Plaintiffs' experts' opinions. Instead, they offer a number of arguments generally attacking the experts' methodology: *e.g.*, they failed to use random sampling of records, reviewed an insufficient number of records, failed to utilize a statistically significant sample size of inmates to draw a random sample, did not perform statistical analyses, or used "cherry-picked information" to form opinions (Doc. 905 at 3-18).[1]  The motion isolates but one aspect of the experts' foundation for their opinions, statistical and sampling validity, and leaves untouched those that rely on other evidence, including Arizona Department of Corrections' written policies, reports, business records, and officials' deposition testimony.

For the moment, the Court defers discussing how best to resolve those challenges. In their motion, Defendants have not "pointed to [any]thing which suggests that a different but nonetheless sensible methodology for selecting files to review would have materially altered the evidence before this court." *Coleman v. Wilson*, 912 F. Supp. 1282, 1303 n.23 (E.D. Cal. 1995).  Further, similar methodologies have been accepted in other cases challenging prison conditions.  *Jama v. Esmor Corr. Servs., Inc.*, 2007 WL 1847385, at *27 (D.N.J. June 25, 2007); *Ruiz*, 37 F. Supp. 2d at 889-92; *Coleman*, 912 F. Supp. at 1303.  But if Defendants' statistical challenges are valid, the experts' failure to employ particular scientific methods in reaching their opinions does not necessarily render all of their testimony unreliable.  Defendants request complete exclusion of Plaintiffs' experts but do not articulate with specificity the opinions that suffer from fatal defects.  All of the challenges rest on the premise that the experts' opinions are based on scientific knowledge.  To some extent Plaintiffs' experts' opinions are also based on specialized knowledge, and none of the experts' backgrounds or qualifications are questioned.  As to the non-statistical opinions, there has been no challenge to the

---

[1] Defendants' challenge Dr. Williams' testimony regarding the impact of isolation on geriatric inmates on the basis that the Court did not certify a sub-class of geriatric inmates.  Her testimony is relevant to whether those conditions pose a substantial risk of serious harm to some inmates in isolation.

sufficiency of the "level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire*, 526 U.S. 151-52; *see also Ruiz v. Johnson*, 37 F. Supp. 2d 885, 889-92 (S.D. Tex. 1999), *rev'd and remanded on other grounds*, 243 F.3d 941 (5th Cir. 2001) (an expert's evaluation of a prison system's quality of medical care, use of force, or protection of inmates is not the type of testimony that necessarily implicates *Daubert's* requirement of scientific methodology.").

Therefore, Defendants' statistical challenge cannot in any event bear the weight of excluding Plaintiffs' experts' opinions entirely.  The experts offered opinions as to aspects of Arizona Department of Corrections' health care system relying on other sources of evidence.  Complete exclusion, therefore, is not an appropriate remedy even if Defendants' statistical arguments were well-taken.

As to the statistical challenges themselves, they may have merit that would exclude or limit some of the specific opinions.  Of course, exclusion of any opinion or limitation on an opinion from lack of scientific validity or reliability will be mandatory. The Court as trier of fact will not have discretion to be persuaded by an opinion that falls short of the minimums of *Daubert* and the Federal Rules of Evidence (thought it may be persuaded to the same conclusion by other admissible evidence).  But at this bench trial, any such ill-founded opinion will become unpersuasive before it falls further to the level of scientific unreliability.  So as a practical matter, it is quite unlikely to matter at trial whether the challenged opinions (or necessary qualifications on opinions) are admitted in evidence or not.  Unfounded opinions will be unpersuasive in any event.

Therefore, it is better to defer ruling on the challenges to admissibility of those opinions to the time of trial or findings of fact and conclusions of law.  This will impose no great burden on Defendants, as they have prepared their counter-experts and will present them anyway. Cross-examination of Plaintiffs' witnesses may not be much more extensive than if these challenges are resolved in their favor before trial.  Even if it does add material burden, the Court will be aided greatly by cross-examination and

understanding of the specific foundational challenges to specific opinions, which this briefing does not fully explicate. That full understanding in context of trial may well render some or many of Defendants' challenges inconsequential. Equally important, the usual need for pre-trial resolution of *Daubert* challenges, to avoid exposing the jury to prejudicial inadmissible evidence, is not present in a bench trial. Practicality and economy overwhelmingly favor hearing the opinions, their bases, the cross-examination, the counter-opinions, and the evidence as a whole. *Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004). The *Daubert* challenges can then be resolved if necessary and with better accuracy.

In their reply, Defendants argue inconsistencies between the experts' reports and their declarations in opposition to this motion. Their cited authority, *Weekes v. Ohio Nat. Life Assur. Corp.*, 2011 WL 6140967 (D. Idaho Dec. 9, 2011), is inapposite to this case. The better view is that the "sham affidavit" rule bars experts from later contradicting their deposition testimony concerning the essential foundation of their opinions. However, explanation that is reconcilable with the earlier deposition testimony is not barred under the sham affidavit rule. Here too it is better to leave these challenges to be resolved after trial and cross-examination. With probing, apparent contradictions may become reasonable amplifications and explanation, or be confirmed as contradictions.

For all these reasons, Defendants' Motion to Preclude Plaintiffs' Experts (Docs. 900, 905) will be denied without prejudice to renewal with specificity at trial. The Court will reconsider this deferral to time of trial if necessary to rule on the pending motion for summary judgment but only if necessary and only *sua sponte*.

Defendants make two final requests. The first is to limit an expert's testimony to the facilities he or she toured. But otherwise admissible testimony based on investigation of some facilities but not all is still probative to some extent and any limitation goes to the weight of the opinions. Moreover, Defendants' strenuous objections to the burdensome nature of the multiple prison tours, the Court's reduction of that burden by

- 5 -

limiting the number of tours, and the experts' reliance on other evidence, which Defendants do not discuss, all weigh against complete exclusion of the opinions. This aspect of Defendants' Motion will be denied.

Defendants also seek to exclude Dr. Cohen's or Dr. Wilcox's testimony as cumulative. Duplicative expert testimony will be excluded, absent leave of the court. Rule 403, Fed. R. Evid. (court may limit cumulative evidence and waste of time). Dr. Cohen and Dr. Wilcox will not be permitted to testify to the same opinions. It appears that they do have some opinions on differing issues. But to the extent their opinions are on the same issues, Plaintiffs must elect which witness will testify on which issue. Once one of them has testified to an opinion, the other will be precluded from testifying to the same opinion. Defendants may raise such objections at trial in light of the testimony given by the other witness.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Preclude Plaintiffs' Experts (Docs. 905, sealed at 900) is **denied without prejudice to renewal at trial**.

Dated this 28th day of July, 2014.

_____
Neil V. Wake
United States District Judge