**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| Victor Parsons, et al., on | ) | |
| behalf of themselves and all | ) | |
| others similarly situated; | ) | No.  **CV 12-00601-PHX-NVW** |
| and Arizona Center for | ) | |
| Disability Law, | ) | |
| | ) | **Phoenix, Arizona** |
| Plaintiffs, | ) | **July 30, 2014** |
| vs. | ) | **3:34 p.m.** |
| | ) | |
| Charles Ryan, Director, | ) | |
| Arizona Department of | ) | |
| Corrections; and Richard | ) | |
| Pratt, Interim Division | ) | |
| Director, Division of Health | ) | |
| Services, Arizona Department | ) | |
| of Corrections, in their | ) | |
| official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

_____

BEFORE:  **THE HONORABLE NEIL V. WAKE, JUDGE**

(_**Motion Hearing**_)

Official Court Reporter:
Laurie A. Adams, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 43
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
 1   For the Plaintiffs:

 2           PERKINS COIE LLP
             By:  Amelia Gerlicher, Esq.
 3           2901 N. Central Avenue
             PO Box 400
 4           Phoenix, AZ 85001-0400

 5           PRISON LAW OFFICE
             By:  Donald Specter, Esq.
 6           1917 5th Street
             Berkeley, CA 94710

 7
             ACLU - Washington DC
 8           By:  David C. Fathi, Esq.
             915 15th Street NW
 9           7th Floor
             Washington, DC 20005

10
     For the Defendants:

11
             STRUCK WIENEKE & LOVE, P.L.C.
12           By: Daniel P. Struck, Esq.
             By: Nicholas D. Acedo, Esq.
13           3100 W. Ray Road
             Suite 300
14           Chandler, AZ 85226

15           ARIZONA ATTORNEY GENERAL'S OFFICE
             By:  Michael Gottfried, Esq.
16           1275 W. Washington Street
             Phoenix, AZ 85007

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

```
 1                    P R O C E E D I N G S
 2          THE COURTROOM DEPUTY:  This is Civil Case 2012-601,
 3   Victor Antonio Parsons, et al., versus Charles L. Ryan, et al.
 4   This is the time set for oral argument.
 5              Counsel, please announce for the record.        13:34:39
 6          MS. GERLICHER:  Amelia Gerlicher of Perkins Coie for
 7   the prisoner --
 8              THE COURT:  Again.
 9          MS. GERLICHER:  Amelia Gerlicher of Perkins Coie for
10   the prisoner plaintiffs.                                   13:34:56
11              THE COURT:  I can't hear your last name.
12          MS. GERLICHER:  Gerlicher, G-E-R.
13          MR. FATHI:  Good afternoon, Your Honor.  David Fathi
14   of the ACLU National Prison Project for the plaintiffs.
15          MR. SPECTER:  Donald Specter for the prisoner        13:35:10
16   plaintiffs.
17          MR. ACEDO:  Good afternoon, Your Honor.  Nicholas
18   Acedo, Dan Struck, and Michael Gottfried on behalf of the
19   defendants.
20              THE COURT:  All right.  Good afternoon, counsel.  13:35:33
21          First, I just want to give a preliminary comment.  I
22   have kept this on track, and I set a very fast goal to rule on
23   this because of the trial date in October.  The trial date in
24   October is critical because we have already had a serious
25   problem in this case with the staleness of evidence that led me 13:36:05
```

1    to reopen discovery on the basis that I had not fully

2    understood the consequence of the trial schedule we originally

3    set.  But delay in trial creates that same problem.

4         And also, the burden and the expense of discovery in

5    this case has gone wildly beyond any control that I have had or          13:36:32

6    could exercise, and it proves the fallacy of the myth that

7    trial judges can manage discovery to make it always

8    appropriate.  The answer is trial judges can manage to set some

9    boundaries.  When other things don't work, at least the case

10   can be brought to an end.  When the case is brought to an end,          13:36:59

11   what may well be inappropriate burdens come to an end as well.

12   So for both of those reasons, I have kept to this schedule and

13   I will hold myself to it as well.

14        We do not have set for hearing now this motion to

15   de-designate documents.  In fact, the response is not filed           13:37:23

16   yet.  I just want to make a brief comment on that, and I don't

17   want to take a lot of time.  And I'm not reaching any

18   conclusion about what was -- I have read the plaintiffs'

19   motion, so I know what they say.  But it was -- and I'm not

20   prejudging this, but it was not my intention that the           13:37:44

21   designation of confidentiality was a blanket process to defer

22   until later the decision of what documents meet either of the

23   two criteria; specific, confidential, client medical

24   information or security.

25        And if I conclude when this is briefed that this was          13:38:03

1    just used as blanket designations to defer until later, I may

2    well just unseal everything, and whenever anybody feels like

3    doing the work to make a motion with a specific demonstration

4    that a specific document should be kept from the public, I will

5    consider it.                                                    13:38:24

6            Now, I have had experience of reading things and

7    finding out when I read the other side's it isn't quite what

8    the other side put it up to be.  So I don't know, but I just do

9    want to be clear that there is a great public interest in this

10   case, and I didn't give anybody a license beyond anything      13:38:40

11   specifically justified to seal filings with the Court.

12           All right.  This is the defendant's motion, so who is

13   going to argue for the defendant?

14           MR. ACEDO:  I am, Your Honor.

15           THE COURT:  You may proceed.                           13:39:01

16           MR. ACEDO:  Thank you.

17           Your Honor, the summary judgment briefing has

18   highlighted two threshold issues that the Court must resolve

19   before it can address the Motion for Summary Judgment and,

20   frankly, before the parties can proceed to trial:  One, whether 13:39:19

21   the named plaintiffs must prove their own claims, that is,

22   whether each of the 17 certified practices currently expose

23   them to a substantial risk of serious harm; and, two, what are

24   the scope of plaintiffs' claims.

25           THE COURT:  Well, I want to explore the generality of  13:39:36

1    that.  In your motion, I think around the middle of the motion,

2    Page 22, you argue for decertification of the class.  And if,

3    in fact -- of course, I certified the class based on the

4    allegations, and if summary judgment is appropriate for the

5    claims as alleged by the individual plaintiffs for a lot or          13:40:02

6    most of them, maybe even all of them, the ones that are

7    presented here, that would leave only -- that would leave no

8    actual injury proven to each of those plaintiffs for whom

9    summary judgment is granted against them.

10         And what would that mean for -- does that mean that        13:40:34

11   they could still have a claim for a knowing or reckless

12   awareness of a systemic unconstitutional danger of specified

13   types that have not been shown to have hurt any of the

14   plaintiffs yet?  What's the consequence of that?  Is the

15   consequence that summary judgment is entered against the           13:41:03

16   plaintiff class, or is the consequence that I should decertify?

17   You touched on both, but you haven't really said what your

18   first choice is.  I'm not sure you have a choice as to what

19   comes first.

20         So, you know, I -- you can answer that or you can fit     13:41:26

21   your answer to that into what you have prepared.  But that's a

22   threshold, very general question on my mind.

23         MR. ACEDO:  I can start with that, Your Honor.

24         If each of the named plaintiffs do not establish that

25   they, in fact, have standing, that is, whether they are            13:41:46

1    currently exposed to substantial risk of serious harm, they

2    don't have standing to proceed on their own behalf, on any

3    individual claims.  They are dismissed, and if all the

4    plaintiffs are dismissed the class and subclass are dismissed

5    as well.                                                    13:42:04

6          The only way in which plaintiffs are dismissed but the

7    class or subclass remains is if --

8          THE COURT:  You know, we do need to be careful here.

9    We're not talking about dismissal.  We're talking about summary

10   judgment.                                                   13:42:22

11         MR. ACEDO:  That's correct.

12         THE COURT:  Which is an adjudication on the merits

13   against the plaintiff.  And what was pleaded through the

14   plaintiffs was very specific claims, claims that might have

15   supported the damage claim but damages were not sought.  Only  13:42:33

16   injunctive relief was sought.  And what I am wondering about

17   first is if those allegations are refuted by the evidence such

18   that summary judgment would be entered against them on their

19   specific allegations, where are we then?  And that would not

20   necessarily answer the question of even if nobody has actually  13:42:57

21   been hurt yet, no plaintiff has been hurt yet, there is an

22   unconstitutional risk that they and everyone else might be hurt

23   maybe the case stays.  But I am really thinking first about

24   this started as a lawsuit by a bunch of individual plaintiffs

25   saying this was done wrong, that was done wrong, this violated  13:43:15

1    my constitutional rights, and your argument is there's no

2    evidence for any of that.  That's what I'm getting at.  And

3    maybe I leave aside to discuss separately if there's no triable

4    issue of any actual injury yet to any named plaintiff, we have

5    to separately discuss whether there is an unconstitutional risk    13:43:40

6    of harm.  It hasn't hit anyone yet but may hit somebody in the

7    future.

8          Go ahead.

9          MR. ACEDO:  As I stated, they each have to show

10   individual standing, and if they don't, summary judgment should    13:43:54

11   be entered in front of the defendants.

12          With respect to the class allegations, at least one

13   class member for each of the certified practices have to show

14   that they have personally been injured.  And that's what the

15   cases in *Simon* say, *Simon*, the United States Supreme Court case   13:44:10

16   in *Simon* and *Lewis versus Casey*.  The class can't continue

17   simply with a shell plaintiff if they, themselves, haven't

18   established standing.  So that's why in our papers we have

19   argued that if they cannot establish personal standing the

20   individual claims go away and the class and subclass claims go    13:44:30

21   away.

22          As far as decertification, Your Honor, you are right.

23   You did certify this case on -- largely in part on those named

24   plaintiffs' declarations.  But we feel we have refuted those

25   declarations, refuted those allegations, and as an alternative,    13:44:50

1    that would be a perfectly legitimate reason for the Court to

2    decertify the class and subclass, which it initially certified

3    based on which has now proven to be false.

4         So that would be a secondary argument as to

5    decertification, but even if you get through decertification          13:45:07

6    what do you have left?  Individual named plaintiffs raising

7    claims on their own behalf.  They still have to show personal

8    standing, which they haven't, and everything goes away.

9         So without standing, that threshold question, the

10   lawsuit can't go forward.  They achieved -- the Court found        13:45:22

11   standing at the Motion to Dismiss stage based on the

12   allegations.  And as *Lujan* and *Lewis versus Casey* make very

13   clear, they can't rely on those allegations at the time of

14   summary judgment.  Right now they have to affirmatively show

15   through evidence that they do, in fact, have standing.              13:45:42

16        Now, plaintiffs would like to hide behind their legal

17   theory.  As they have been trumpeting since the beginning of

18   this lawsuit, it's not about past instances of harm.  It's

19   about the future prospect of harm.  But even with that future

20   prospect of harm, Your Honor, they are not immune from having       13:45:57

21   to show standing.  They still have to show under *Helling*,

22   *Helling* is the case they rely on.  That is a future injunctive

23   case.  But under *Helling* they still have to show the

24   substantial risk is sure or very likely to cause serious

25   illness and needless suffering.  That's still a threshold          13:46:13

```
 1    issue.  And even in Helling, even though that wasn't a class
 2    action, the Court -- that was just a very general proposition
 3    by the Court, and it remanded with specific instructions that,
 4    look, this individual has to show that they are, in fact, at
 5    risk of this harm, not that they have been harmed or being        13:46:32
 6    harmed, but they are, in fact, at risk of being harmed.
 7    Helling involved an inmate who was celled with a cigarette
 8    smoker, smoked five packs a day.  The Court held he's no longer
 9    celled with that inmate, and there's policies in place that
10    prohibit that type of conduct.  So it was indicating, look,       13:46:52
11    it's going to be a tough hill to climb with the plaintiff when
12    he gets back, even on a future harm type claim, but he still
13    has to show standing.
14            And Lewis versus Casey, the example the Court used
15    there was precisely the type of allegation here.                  13:47:06
16            THE COURT:  Well, on a summary judgment level,
17    standing being injury in fact, but injury can be the very high
18    and -- very high risk that injury will happen that hasn't
19    happened yet.
20            MR. ACEDO:  To them.                                      13:47:26
21            THE COURT:  To them.  And, of course, their argument
22    will be, well, there's 33,000 prisoners.  They are all in the
23    same position.  There's a risk and they will all be hurt, and
24    I'm just one of 33,000.  That's with respect to the
25    unacceptable risk of future injury as opposed to the             13:47:41
```

1    retrospective actual injury that you say has been refuted.

2         Go ahead.

3         MR. ACEDO:  Well, on the future prospective harm.

4    They still have to show that it's imminent, actual, and not

5    speculative and out there, not that there's this inadequate                    13:48:00

6    healthcare system.  And *Lewis versus Casey* is right on point in

7    that respect.  The Court said that the plaintiffs, class

8    plaintiffs, can proceed on this theory that, well, the system

9    is broken so therefore they must be at risk.  They still have

10   to show an imminent and actual risk of harm that's not                         13:48:15

11   speculative, that's not abstract but does, in fact, exist.

12        And at the summary judgment stage they were required

13   to provide evidence.  They didn't dispute any -- all but 15, I

14   think, of the 22 statements of fact that pertain directly to

15   their personal allegations, they only disputed 15.  And those                  13:48:36

16   15, if you look at them, they are not genuine disputes.  They

17   didn't get new declarations from any of the named plaintiffs to

18   show, look, we are, in fact, being harmed currently by these

19   practices.  They are hoping that the Court just bypasses

20   standing and proceeds solely on the basis of their expert                      13:48:53

21   opinions that the system is inadequate.  And that's not good

22   enough under *Lujan*, it's not good enough under *Lewis versus*

23   *Casey*, and it's not good enough under *Simon*.  All three cases

24   we cite in our motion and reply.

25        The second issue, Your Honor, that you are going to                       13:49:13

```
1    have to resolve before we go forward is the scope of the

2    plaintiffs' claims.  It's the plaintiffs' position that

3    defendants can't move for summary judgment on any of the 17

4    certified practices.  As you know, this case started out with

5    five claims that they wrote in their complaint, but the Court,      13:49:31

6    after class certification briefing, refined those claims to

7    include 17 specific practices.  The class and subclass don't

8    hold right to those --

9             THE COURT:  I will tell you, I don't mean to hurt

10   anybody's feelings, but I will tell you both that I found the       13:49:49

11   briefing on the class certification to be greatly inadequate on

12   both sides, overbroad or exaggerated.  So what I crafted there

13   was an attempt to do something that seemed to be manageable.

14   But I felt very much disadvantaged by the briefing on the class

15   certification motions.  And to the extent I, with hindsight,        13:50:12

16   may not have done as good a job as I wish, I can change those

17   class certifications at any time before entry of judgment.

18             Go ahead.

19             MR. ACEDO:  A few points on that, Your Honor.

20             You were tasked with a very difficult assignment.  It     13:50:35

21   was a 74-page complaint with over 100 allegations, and you were

22   required to synthesize that into certified practices, and you

23   did.  You certified 17 of them.  Unfortunately, most of those,

24   in defendants' opinion, were still very broad, for example,

25   untimely access to healthcare, untimely access to basic dental     13:50:57
```

1   care.  And from our perspective, that could mean very little or

2   it could mean a lot.  And in our two-plus years of dealing with

3   the plaintiffs in this case, it's their interpretation that it

4   means anything that has anything remotely to do with

5   healthcare; whether it was specified in their complaint,                13:51:18

6   whether it was specified as a practice, whether it was

7   mentioned in their expert reports, or whether it was an

8   allegation in any of the named plaintiffs' declarations.

9        So we set out to discharge our burden of showing a

10   deliberately caring healthcare system.  And that's all we              13:51:34

11   needed to do.  And, yes, our Statement of Facts are 4300

12   paragraphs.  More than half of those are devoted to the named

13   plaintiffs' individual allegations which we culled through the

14   complaint, we culled through their declarations.  We tried to

15   address every one of them and we, in fact, did, we believe.           13:51:53

16   And the remaining paragraphs recorded all of the policies and

17   expert opinions that we have been able to put together from the

18   outset of this case.

19        And it's kind of like a story.  If you start at the

20   top and read through it, which I'm sure you don't have time to        13:52:12

21   do, but it lays out a very compelling case.  And we feel we

22   went probably above and beyond what we were required to do, but

23   at that point the burden shifted to plaintiffs.

24        And I can understand your frustration after reading

25   the response, because we were equally frustrated.  They had 55        13:52:28

1    Statement of Facts and only disputed 125 of our facts.  And we

2    don't feel they complied with the rules by responding to each

3    and every statement.  They unilaterally decided that 98-plus

4    statements were not material, and we disagree with that.  We

5    feel if you look at those, you will agree with us.          13:52:49

6         So we apologize if our statements were -- was long.

7    We did what we thought what we needed to do.  But I think the

8    bigger point is what plaintiffs failed to do.  You cannot read

9    their response, and they don't particularly specifically point

10   you to evidence that will create a genuine issue of dispute on  13:53:10

11   any of the allegations or arguments that we raised.  You have

12   to go through this exercise, each one, that would take you

13   hours to do.  And what they are doing is they are hoping that

14   you either give up at some point, or you just assume that

15   there's enough there.  But they can't do that.  As you pointed  13:53:28

16   out in *Donahoe versus Arpaio*, they can't just loft out this

17   metaphysical abstract of evidence.  They have to say, Your

18   Honor, here's what our allegation was and here's the proof to

19   show it.  And instead, what did they do?  They pointed you to

20   expert opinions, not sworn statements.  They cite to 17 expert  13:53:46

21   reports.  All but two of them are unsworn.

22         THE COURT:  By the way, let me digress for a moment.

23   I really put in great effort to try to give you a ruling on

24   those expert witness motions before today, because I figured it

25   would help the lawyers.  But I noted with respect to some of it  13:54:04

1    I would reconsider, if necessary, to rule on this motion.  And

2    the expert witness motions were -- the briefing was on a very

3    high level of generality and my ruling on was on a high level

4    of generality.  But to the extent I need to dig into more

5    detail to rule on this motion, I will do so.  And I don't -- I          13:54:28

6    have not prejudged anything on this motion by that ruling.

7              MR. ACEDO:  Thank you, Your Honor.

8              THE COURT:  Go ahead.

9              MR. ACEDO:  I think if you just take any one of their

10   statements of fact and look at what it's supported by, they           13:54:42

11   cite to an expert opinion that's very broad and very

12   conclusory.  And if you try to peel back the layers of that

13   opinion and you track it through the dozens of citations that

14   they have, at bottom it comes down to anecdotal evidence,

15   handful of incidents that they summarily conclude is an               13:55:01

16   inadequate healthcare system or proof of that.

17             THE COURT:  Well, let's explore that for a minute.

18   We're here on summary judgment which you all know means that

19   there is no disputable -- reasonably disputable question of

20   fact, that is, there isn't any evidence on one side of the            13:55:20

21   case.  And if there is evidence on both sides of the case then

22   it must go to trial.

23             You only win if there's no evidence for their side of

24   whatever it is we're talking about.  And this raises the

25   question which I guess I was trying to touch on earlier, and          13:55:43

1    that is the connection between the actual plaintiffs and their

2    allegations and the sufficiency of the expert opinion is to

3    defeat summary judgment.

4        If I am persuaded that most or all of the individual

5    plaintiffs lose on summary judgment on all their specific          13:56:07

6    claims, what is the significance of having experts who have

7    gone and expressed these bottom line conclusions about the

8    system in various respects, it's not adequate, but I don't have

9    any plaintiffs who actually themselves were hurt.

10       Under class action law, a case does not become moot if        13:56:37

11   the named plaintiff is moot, or gone, but I will tell you I am

12   troubled about what appears to turn into a judicial general

13   inquiry into how the Department of Corrections runs the prisons

14   not tethered to individual litigants.  Now, in our system of

15   government, we have agencies that do that; executive agencies,      13:57:18

16   maybe even legislative agencies.  But the Courts do not do that

17   in general.  And I am worried, I'm thinking, trying to think

18   through, where do we end up if we have no plaintiffs but we

19   have experts saying this system is bad and everybody, all

20   33,000 prisoners, are at risk.                                      13:57:42

21       I am not seeing this in the cases.  Maybe there are

22   cases that deal with this.  But something I will want to hear

23   from both counsel about as to whether our class action rules

24   that are rather generous in avoiding mootness may be crossing

25   over into a gray area that loses adequate connection with the      13:58:10

1    adjudicatory, that is, individual litigant nature of the

2    federal court.  So of course I only get to that problem if you

3    persuade me that all those people are subject to summary

4    judgment on the specific claims they have pleaded.

5           Now, I articulate this concern for you both, all, to      13:58:44

6    be able to understand and respond to.  So I interrupted you.

7           Go ahead, Mr. Acedo.

8           MR. ACEDO:  You shouldn't be worried at all, Your

9    Honor.  You told both parties more than half a dozen times that

10   if they cannot prove the claims of the class reps, the          13:58:58

11   individual named plaintiffs, the case goes away.  Both parties

12   were on notice, and we focused our defense heavily on that and

13   they apparently didn't.  They apparently ignored what you said.

14   So you shouldn't feel bad at all if, in fact, you conclude that

15   none of the named plaintiffs have standing to proceed and,      13:59:16

16   well, what do we do with these expert opinions, these experts

17   who opine as to the quality of the care.  Well, it goes away.

18   It's not your fault, it's the plaintiffs' counsels' fault for

19   not pursuing exactly what you told them to do.

20          And you are right, it is not the Court's business to     13:59:34

21   conduct audits into institutions.  It's not the Court's

22   business to go around and determine what is some constitutional

23   standard and whether or not inmates fall below or above it, I'm

24   going to decide that it's an inadequate health care system.

25   *Lewis v. Casey* forbids that expressly.  There are other       13:59:55

branches of government that are responsible for that.  And

plaintiffs have made this case a very public case, and the

media has reported on it publicly.  And if the powers that be

would like to do something outside of the courts, that's their

prerogative but it's not the Court's prerogative.                    14:00:14

        Where I had started was --

        THE COURT:  Let's explore that.  If it goes that far,

should the Court then say, well, the plaintiffs have lost the

case.  Judgment will be entered against the plaintiff class.

All 33,000 prisoners will be bound by res judicata, and no       14:00:40

further claims can be brought that are identical to this, or,

should I conclude that the elimination of actual proven injury

to any of these -- actually, I say all the plaintiffs.  Some of

the plaintiffs are really not in play in this motion, but all

the ones we're talking about, should that lead to                14:01:04

decertification saying, hey, you know, this is not adequate

representation to have a bunch of people, all of whom said

things that proved to be either not true or some of them

outright, perhaps, perhaps outright fraudulent.  But they are

not adequate representatives, so we decertify the class.  Of    14:01:24

course, that deprives you of the res judicata that you want,

but so what do you want?

        MR. ACEDO:  Well, it's what they haven't shown, Your

Honor.  If the plaintiffs don't have standing, that is

certainly relevant if not dispositive of whether or not any     14:01:47

inmate in ADC custody is exposed to substantial risk of serious

harm.  These 13 plaintiffs were their poster children.  They

held them out as being -- out of anyone they could have picked,

these were the 13 they picked.  And we went after these 13, and

at the time of class certification we didn't have the

opportunity to depose them.  We didn't have the opportunity to

depose their experts.  But now we have, and as their own

deposition testimony shows, it was all built on a house of

cards.

    THE COURT:  Let me try to restate my --

    MR. ACEDO:  Okay.

    THE COURT:  -- concern, and that is if I were to go as

far as you say and say I'm going to enter judgment against the

class, notwithstanding these opinions by their various experts,

surely that's going to be subject to de novo review on appeal

for any disputable question of fact, at least with respect to

each of the 17 classes or subclasses.  But if I look at the

same concerns that I articulated, lack of any real plaintiff

who has been injured, core values of the federal courts Article

III of the constitution being in play with broad ranging

institutional supervision without real plaintiffs, if I looked

at that and concluded that, well, that's a reason to decertify

the class, that would be a matter that is highly discretionary

with the Court.  And I mean, it's subject to appellate review,

of course, and you can make mistakes along the way.  But the

1    ultimate judgment of whether a matter is suitable for class

2    treatment in light of all the considerations, including those

3    institutional considerations that I have listed, that would

4    seem to be a decision that would be entitled to a fair degree

5    of deference.  If that's the case, and if you do persuade me to        14:04:03

6    go way down the track with you, what's the better course of

7    action in your favor?  Summary judgment or decertification?

8           So lawyers have to make hard choices.  I'm putting it

9    to you.

10          MR. ACEDO:  We would vigorously defend any decision            14:04:26

11   you made in our favor.

12          THE COURT:  I'm asking you what's the better decision?

13          MR. ACEDO:  The better decision, I think, is to enter

14   summary judgment in our favor and find that the plaintiffs have

15   failed to create an issue of fact as to any of the certified         14:04:41

16   practices that, one, the class representatives and named

17   plaintiffs have standing to pursue them; and two, that they

18   have provided enough to create an issue of fact on whether or

19   not these certified practices are system-wide.  And I think if

20   you stack those rulings, that would be the most correct ruling.      14:05:00

21          THE COURT:  Of course what I have here, and again, at

22   a very high level of generality, is both sides are subject to

23   this criticism that both -- we have 10 prisons here and both

24   sides are focusing on the units that are best for them.  They

25   do that on the things they are unhappy about.  You do that on        14:05:25

1   the things you think are doing very well.

2           So where do I go with if there may be a triable issue

3   of fact with respect to some claims, with respect to some units

4   but not the others, do I reshape the class to only go to those

5   units, or do I dismiss it because they didn't prove what they          14:05:51

6   said, which is there is a systemwide deficiency?

7           MR. ACEDO:  You dismiss, Your Honor.  At this stage of

8   the claim to -- at this stage of the game to change the class

9   or subclass or substitute class members, we feel would be

10  error.  It would be inappropriate and unfair to defendants.          14:06:10

11  They controlled their destiny at the outset.  Maybe they were

12  over ambitious.  But their claims is that these alleged

13  deficiencies are systemwide.  Four, five, six, and even nine

14  facilities is not systemwide.  And Footnote 7 in *Lewis versus*

15  *Casey* says it has to be all facilities.                            14:06:29

16          So they had that choice, and they certainly

17  overreached.  And to let them off the hook right now, that

18  would be inappropriate.  And we actually have -- we have

19  litigated this issue before, and we have won this issue.  And I

20  can provide the Court with that citation.                            14:06:46

21          As if you haven't read enough, Your Honor, the case is

22  *Schilling versus Transcor*, 2012 WL 4859020.  And it was a

23  similar conditions case involving inmates being transported and

24  their claim concerned the conditions on the transports.  And

25  their class was certified very broadly, and it was certified.        14:07:13

```
1    And on summary judgment, we won and they moved to decertify the
2    class and Judge Illston in the Northern District of California
3    said no, that's -- we went -- we spent years litigating your
4    claims, and I'm not going to let you get a do-over at this
5    point.  Waste of resources, waste of money, a waste of time.        14:07:37
6          So at this point, Your Honor, to substitute class
7    members or reshape the class --
8          THE COURT:  Well, nobody has asked to substitute class
9    members.  And actually, nobody has specifically asked to
10   reshape the class.  I am just commenting on what appears here     14:07:54
11   kind of recurrently, what I just.  You like the units that do
12   well; they like the units that say do badly.  So what do we do
13   with that?
14         MR. ACEDO:  Well, you go back to what their claim was.
15   It wasn't units, it wasn't facilities.  It wasn't systemwide.     14:08:11
16   And either they win or lose, and in this case they lose.
17         We've got quite a few arguments on the merits of the
18   individual claims, Your Honor, and I could move to those.
19         THE COURT:  You know, the briefing is pretty extensive
20   on that.  I don't -- I'm not going to discourage anything.  We    14:08:33
21   just -- we have a limited amount of time so you have to decide
22   what would benefit from oral presentation, both sides do.
23         MR. ACEDO:  I will stand on those comments and come
24   back when plaintiffs are done.
25         THE COURT:  All right.  Ms. Gerlicher.                       14:08:50
```

1          MS. GERLICHER:  Good afternoon, Your Honor.

2          THE COURT:  You have heard a lot of my concerns, so

3   you can fit your responses into all of them.

4          MS. GERLICHER:  Yes, Your Honor.

5          In one of your comments to Mr. Acedo, you mention that     14:09:04

6   if you take me all the way down that path, I have some

7   concerns.  I'd like to take you back to the beginning of the

8   path.  This is a summary judgment motion, and it must be based

9   on undisputed material facts.  And most fundamentally, their

10  motion is not.  They claim their system does not subject        14:09:22

11  inmates to a substantial risk of serious harm.  Plaintiffs

12  claims it does.  That is a quintessential factual dispute.

13  They did not raise --

14         THE COURT:  What about the individual claims?  I mean,

15  there are things pleaded here, how many, what, a dozen, 13      14:09:37

16  people said I was injured here, I was injured that way, and

17  that's what I certified the class based on.

18         So the first discussion is that which I guess I just

19  discouraged Mr. Acedo from detailing.  I didn't really mean to,

20  but it seems to me to be a distinct point of discussion, but    14:09:58

21  okay, fine, all of our class representatives fell apart.  But

22  we are left with 33,000 people and experts who say they are all

23  at the same risk.  That, to me, is a distinct discussion that

24  we get to if the claims they actually pleaded of historic

25  injuries fail on summary judgment.  I mean, we get to that      14:10:27

```
 1    anyway, but that's all that's left if the actual claims fail,
 2    historic claims.
 3              MS. GERLICHER:  A few points on that, Your Honor.
 4    First, as you noted in both your certification order and the
 5    order on the Motion For Reconsideration, you based your          14:10:42
 6    certification of the class not just on the named plaintiffs'
 7    facts but on the additional voluminous evidence that we
 8    presented to you.  We presented thousands of pages of
 9    additional ADC documents, policies, and declarations from our
10    experts to establish that the risk was systemwide.              14:10:59
11              THE COURT:  There's no conclusion on anything in the
12    class certification.
13              MS. GERLICHER:  Understood, Your Honor.
14              THE COURT:  That would be wrong for the Court to
15    undertake to do it.                                             14:11:09
16              MS. GERLICHER:  I just wanted to point out there are
17    many pieces of evidence that go to showing that there are
18    systemwide policies and procedures that are constitutionally
19    detective, not just the individual experiences of the named
20    plaintiffs.                                                     14:11:25
21              In addition, I'd like to point out a passage from the
22    Ninth Circuit's recent opinion in June where they point out
23    that the complaint does not allege, our complaint, "does not
24    allege that the care provided on any particular occasion to any
25    particular inmate or group of inmates was insufficient, rather, 14:11:39
```

1    the ADC policies and practices of statewide and systemic

2    applications expose all inmates in ADC custody to a substantial

3    risk of serious harm.  This kind of claim is firmly established

4    in our constitutional law."

5            Your Honor, it is your job to --                        14:11:56

6            THE COURT:  You know, it's not very reassuring when

7    the Court of Appeals takes 67 pages to affirm me.

8            MS. GERLICHER:  There were a lot of reasons why you

9    were right, Your Honor.

10           But to your concern about the named plaintiffs, the      14:12:10

11   named plaintiffs' past injuries are evidence of what they have

12   experienced as prisoners of ADC, so evidence of the procedures

13   and the policies that affect them, of the possible consequences

14   of them, and of the risk that they face going forward.  But in

15   addition what has happened to other prisoners throughout ADC is  14:12:30

16   evidence of those policies and the risk going forward as are

17   the observations and opinions that the experts have developed

18   through that observation and the reports and the documents that

19   we have submitted showing other -- ADC's own views of its

20   system and the way it operates and how it creates a substantial  14:12:52

21   risk of serious harm for those inmates.

22           So even if we were unable to show what had happened in

23   the past to these named plaintiffs, each of them continues to

24   have standing to show that they are currently exposed to a

25   substantial risk of serious harm.                                14:13:10

1       Their summary judgment motion was improper for a

2  number of reasons, and it is based fundamentally on disputes of

3  material fact.  It is their burden to show that there are

4  undisputed material facts not to object that we haven't put our

5  entire case in evidence in response to their motion which is        14:13:31

6  what they do in their reply.

7       Their Statement of Facts, as they have said, was 4,327

8  paragraphs long, which violates local rules.  In your June 20th

9  order, you specifically pointed out that responding to that

10  Statement of Facts and disputing summary judgment should not      14:13:47

11  even require reading all of them let alone responding to all of

12  them.  So we took that under advisement, and we chose the most

13  overarching facts, facts that assert things like care was

14  timely provided.

15       THE COURT:  Well, I do feel that when the plaintiff        14:14:02

16  has pleaded specific injury to himself, that's fair game for

17  summary judgment.  And by the way, the Court has many, many,

18  many of these corrections healthcare cases.  We have them all

19  the time.  They are routine, and we have a lot of experience

20  with looking at those claims, looking at the undisputed         14:14:33

21  evidence, which is usually the medical records and other things

22  and granting summary judgment.  I would say almost all of those

23  claims summary judgment is granted for or against the plaintiff

24  because of looking at them.  So the Court, in general, I in

25  particular, have a high comfort level of looking at things       14:14:52

1    saying okay, this is what happened.  That doesn't reach the

2    level of a knowing or reckless disregard of serious risk of

3    injury or even negligence for some of them.

4        So the -- and most of the challenges that are made, I

5    just hesitate to ever use the word "all" because there's so          14:15:18

6    many players in this motion.  But most of these challenges are

7    based on the records of treatment given.  That's not subject to

8    reasonable dispute.  So again, I think that's the place where I

9    start.  I'm not sure where it all goes after that, but the

10   place that I start is these plaintiffs allege actual specific      14:15:41

11   injuries to themselves.  I now have the records, and the

12   question is, are we going to have a trial on that or is it

13   undisputed that the care that they -- or not just care, but

14   most of it is, did not fall to the level of knowing or reckless

15   disregard of constitutional rights.  So --                        14:16:04

16        MS. GERLICHER:  Your Honor, I understand how in many

17   cases it would be true that summary judgment would be

18   appropriate.

19        THE COURT:  I'm not saying that's the end of the game

20   for you, but it is the beginning of the game that I need to do.   14:16:18

21        MS. GERLICHER:  It would seem likely that most of

22   those cases are people looking for compensation for past

23   injuries, in which case it does very much matter exactly what

24   happened to them and whether it was the result in that

25   particular instance of deliberate disregard or other issues.      14:16:33

```
 1    But here, what happened to these named plaintiffs in the past,

 2    they are not seeking compensation directly related to those

 3    injuries that occurred to them in the past.  Those injuries are

 4    evidence --

 5          THE COURT:  Here's the point -- again, I apologize for    14:16:48

 6    interrupting you.  But my starting point is, is there or is

 7    there not any triable issue of fact of any actual past injury?

 8    We still have the question of whether the risk of injury is

 9    actionable even though it hasn't actually cashed out yet.  But

10    that's a distinguish issue.  So that's the first point.  And I   14:17:07

11    will tell you, reading the briefs, I frankly don't see that you

12    are disputing much or -- of what the defendant presents with

13    respect to those allegations of actual past injury.  I don't

14    see you are disputing it, and so that's how I'm taking it.  You

15    need to disabuse me if I am misunderstanding it.  But I fully    14:17:31

16    understand you are arguing the baseline of continuing risk

17    being unconstitutional.

18          MS. GERLICHER:  Your Honor, we do dispute the named

19    plaintiffs' healthcare facts.  If you look at our responses to

20    Paragraphs 205, 614, 1711, 1820, 867, 895, 930, and 980, so we  14:17:45

21    do dispute a number of the specifics.  We dispute a number of

22    the consequences.  The difficulty with the way this was

23    presented is that their facts would go through and say things

24    like on this date this plaintiff saw that doctor.  And you are

25    right, we don't necessarily dispute that although often those   14:18:07
```

1    facts -- it wasn't actually a doctor that was seen, for

2    example.  And we didn't go through the exercise of individually

3    presenting those disputes to you based on your order that we

4    had started before your order came down.  And the issues arise

5    when you start talking about the types of problems that occur          14:18:27

6    to them and why they occur.  And it isn't necessarily true that

7    the plaintiffs have suffered an injury that is causing them a

8    physical harm in the past.  They have suffered an injury in the

9    form of risk.

10       So, for example, Defendant Licci, Plaintiff Licci, a          14:18:46

11   good example where she had multiple worrying masses that

12   suggested that she might have cancer.  She wasn't seen by an

13   oncologist for over a year.  Now, the parties dispute about

14   whether that was appropriate.  But plaintiffs' position is by

15   the time she was seen by an oncologist, had she had cancer, she          14:19:04

16   would not have survived.  And that did happen to other members

17   of the class as is described in several of our expert reports.

18       And that Ms. Licci did not have cancer is fortunate

19   for all concerned, but she was subjected to a risk created by

20   policies and procedure of the system that did not give her          14:19:21

21   appropriate access to specialty care.

22       Your Honor, in addition to their motion or the

23   difficulties in their motion, their reply has additional faults

24   and that it incorrectly states a number of times that we did

25   not dispute facts when we, in fact, did.  So, for example,          14:19:43

UNITED STATES DISTRICT COURT

their arguments on the dental issues state multiple times that

it's undisputed that routine wait times are under two months

and urgent care wait times are under 72 hours.  We specifically

did dispute both the actual wait times and the relevance to the

issues here based on how they are calculated in Facts 173 and

175.  And there was no fact to dispute about actual urgent care

wait times presented in their motion in the first place.

        Similarly, in the isolation section they have a long

cite to facts that were allegedly not disputed but at least

nine of those were, in fact, specifically disputed in our

responsive statement of facts.  So I urge you to consider

carefully everything in their motion where they claim it was

undisputed because in many cases it is, in fact, not.

        They also rely on many facts in their reply that were

never cited in their motion.  As they say, there were over a

thousands facts in their Statement of Facts that weren't cited

in their motion so we focus less on those --

        THE COURT:  Ms. Gerlicher, slow down five miles an

hour.

        MS. GERLICHER:  Yes.  I'm sorry.

        Additionally, in their reply, they argue that you

cannot -- actually, back to their -- the new arguments in their

reply, they use both facts in their Statement of Facts they

have never discussed before.  They also for the first time

discuss our experts who are not mentioned virtually at all in

1    the motion but now bring up a number of criticism and claim

2    that their opinions should not be considered.  But expert

3    opinions are, in fact, admissible to establish disputed issues

4    which is here, the risk of harm and they should not be rejected

5    merely because the underlying evidence was not submitted.          14:21:23

6            The experts specifically opined on the system, so

7    their argument that if we didn't show it was at more than six

8    or nine facilities we shouldn't be allowed to proceed, doesn't

9    make sense in that context.  The staffing and the policies are

10   all centrally established.  In fact, that is one of the few      14:21:44

11   undisputed facts in this case.  And the experts looked at the

12   policies.  They looked at the staffing.  They looked at

13   other -- the way that that plays out on the ground.  They

14   looked at the records and put that all together.  And in some

15   cases it is -- they do point to what might be called anecdotes  14:21:59

16   about what happens because that's --

17           THE COURT:  Actually, most of the problem is this is a

18   cumulation of anecdotes, not all of it, but most of it is that.

19   And I have to figure out what to make of that.  Early on I told

20   you I saw this as a case to be determined on gross data, or at  14:22:16

21   least a lot of it.  But most of what I have is anecdotes from

22   specifically identified files that have been reviewed among

23   37,000 prisoners.  So what do I make of that?  Not all of it,

24   like some of it like staffing levels for dental care, how many

25   dentists per -- what's the ratio per population.  You say it    14:22:52

```
 1   should be 1,000 to 1.  They've got 1600 to 1.  So all right.

 2   Well, I'm digressing.  So let me get back to what you have to

 3   say.

 4          Actually, I do have a question.  Well, actually, my

 5   question is for the end.  So let me hear everything you would        14:23:23

 6   like to say.

 7          MS. GERLICHER:  I would say, Your Honor, the role of

 8   those so-called anecdotes is seen in the expert reports and

 9   that's where, I think, they are useful to you because they have

10   looked at so many records.  They have looked at hundreds of        14:23:37

11   records and they are using anecdotes to illustrate what happens

12   and the types of consequences that you might find.  But overall

13   their opinion is based on what happens with the system and the

14   risk that is created.

15          Moreover --                                                 14:23:53

16          THE COURT:  But, you know, let's go back to that.  I

17   mean, let's just step back and if the thesis is that this

18   system, in various dimensions that we have identified, is so

19   bad that we need federal court to come in and take over, yet

20   none of the 13 plaintiffs have been injured yet on any of those    14:24:17

21   metrics, that really looks bizarre.  If it's that obvious, how

22   come nobody -- how come you haven't found any plaintiff who has

23   been injured?

24          MS. GERLICHER:  Well, Your Honor, some of the

25   plaintiffs that we have found that have been injured the most      14:24:35
```

1    direly are deceased, and they could not be our named

2    plaintiffs.  We chose people who had had serious experiences in

3    the past that exposed them to a substantial risk of serious

4    harm and knowing that the case and the standard is their risk

5    going forward.  And the -- even if those particular named          14:24:55

6    plaintiffs had not experienced an issue in the past, which we

7    very much dispute, there still exists the issue of their

8    current risk.  And their current risk can very much be present

9    based on the experiences of other members of the class, the

10   observations and opinions of the experts, the systemwide          14:25:17

11   documents that are otherwise in the record, and the other

12   evidence that will be presented to you at trial.  At the

13   moment, most of that is all disputed and not an appropriate

14   venue for summary judgment.

15        They argue several times for the subdivision of our          14:25:39

16   claims, that you should issue summary judgment on one or more

17   of the practices.

18        THE COURT:  Well, let me give you a general comment on

19   that.  The way I articulated the classes, some of them are

20   extremely broad.  But I'm really not contemplating going in and   14:25:54

21   subdividing and -- dividing and multiplying.  I'm contemplating

22   calling it the way it is on the evidence on those claims, which

23   again, some of them are extremely broad, so maybe too broad.

24        But I'm not sure where my comment goes other than to

25   say I'm not contemplating recasting this class certification      14:26:28

1   other than I am contemplating decertifying parts, maybe all of

2   it, who knows, as one of the possible consequences of a

3   conclusion that there is no claim for the named plaintiffs.

4   And I -- it's not clear to me that summary judgment for the

5   defendants is the best consequence for that and maybe                14:26:58

6   decertification is.  There's tradeoffs either way.

7        So go ahead.

8        MS. GERLICHER:  Your Honor, our named plaintiffs very

9   much have been injured in the past.  And for the sake of

10  argument we can talk about what happens if they haven't been.        14:27:14

11  But those are very much disputed issues.  And we went through

12  and disputed that the high level and general facts for each of

13  them was raised in the motion, and not all of them were raised

14  in the motion, because you specifically told us that defeating

15  this motion would require disputing one fact for each claim.         14:27:34

16       THE COURT:  Right.  And for the individual plaintiff

17  who pleaded a concrete claim, you have got to come up with

18  something.  And actually, part of the problem with these

19  healthcare -- corrections healthcare, Eighth Amendment

20  healthcare cases, is it is in the nature of those claims that        14:27:51

21  you have to look at what was provided and what was not

22  provided.  And so it's not -- like I said, the Court has

23  extensive experience with those claims.

24       MS. GERLICHER:  And we did dispute at least part of

25  each named plaintiff's issues who were raised in the motion.         14:28:21

1   Again, not all of them were.  We also generally disputed some

2   of the allegations regarding encounters and we disputed facts

3   relating to each of the general claims in the case.  But each

4   individual plaintiff's claim is for a substantial risk of

5   serious harm going forward.  It is not that they were harmed in          14:28:40

6   the past.

7        THE COURT:  Okay.  And, you know, I have said this

8   repeatedly, both to you and to Mr. Acedo, but I am -- the way I

9   am envisioning this, one question I think is your ultimate

10  question is do we go forward with a trial about this risk.  And          14:28:58

11  another question is do we have a trial about the historic

12  injuries alleged or not alleged, and it's appearing to me we

13  don't have a trial about a lot of that but it's also appearing

14  to me you are really not relying on that.  You are relying on

15  the first.                                                               14:29:14

16       MS. GERLICHER:  It's one of the pieces of evidence

17  that we are relying on but it's not the central claim of these

18  named plaintiffs.  Their claim is their risk they are subjected

19  to on a daily basis based on their current conditions.  If they

20  get sick tomorrow, if they have a tooth fall out tomorrow, or            14:29:28

21  if they develop mental illness, or they go to isolation, it's

22  one piece.  And that is why our response is focused so much on

23  the systems and the disputes with how the claims work generally

24  and not about the individual named plaintiffs because they are

25  evidence -- or their past experiences are evidence.  They are            14:29:47

1    not themselves the claims.

2            I'd also like to point out that the prisoner

3    plaintiffs are not the only plaintiffs in this action.  The

4    Arizona Center for Disability Law is also a plaintiff in this

5    action, and they did not challenge ACDL standing.        14:30:01

6            THE COURT:  But their only standing per the statute is

7    for the mental health, correct?  They don't have general

8    statutory standing to litigate anything for any prisoner.  It's

9    only the mental health.

10           MS. GERLICHER:  They are -- I believe the statute    14:30:13

11   allows them to represent the mentally ill prisoners, yes.

12           THE COURT:  Mentally ill, which is actually better

13   than mental health, more precise than mental health.

14           All right.

15           MS. GERLICHER:  On the question of the subdividing the  14:30:26

16   questions and the claims, again, the claims as you have stated

17   in several of your orders are the five general claims in the

18   case; healthcare, medical care, dental care, mental health

19   care, and isolation.  They do not move on mental healthcare.

20   It is actually unclear on what they are moving.  There's a    14:30:49

21   statement in their reply they are only moving on nine of the

22   questions, and we do not know what those are.

23           But part of the reason that we believe you certified

24   those questions is because all of those questions are areas in

25   which care can be unconstitutional.  They work together in    14:31:04

1    establishing an Eighth Amendment violation.  So if one or more

2    of those were removed from the case, it would deprive us of the

3    ability to show that they interact and they, in fact, create

4    unconstitutional conditions which would not make the trial more

5    efficient, it would make it more complicated, I believe, and                14:31:24

6    would not further judicial efficiency.

7            One more point on the issue of how we went about

8    disputing their facts, they complain that we are not -- that

9    we're trying to confuse the Court in presenting too much

10   information.  I just want to point out the irony of claiming        14:31:51

11   that we have put in too many facts in response to their

12   allegedly undisputed facts.  At base, Your Honor, this is a

13   factual dispute about what happened to the named plaintiffs in

14   the past, what happens today, the existence and consequences of

15   the admittedly systemwide policies and practices in the system     14:32:10

16   and how they affect the inmates.  It is a dispute of fact and

17   summary judgment is inappropriate.

18           THE COURT:  All right.  At the end when you win this

19   case, what is the relief you are going to ask the Court to

20   order?                                                              14:32:30

21           MS. GERLICHER:  An injunction that addresses the

22   specific --

23           THE COURT:  What's it going to say?

24           MS. GERLICHER:  It will address your specific findings

25   of fact at trial.                                                  14:32:39

1          THE COURT:  That's not answering my question.  Do you

2     want me to put a receiver in charge of the prison healthcare?

3     Do you want me to do a long laundry list of standards and

4     things that they have to do?  What are you going to be asking

5     me to do?                                                    14:32:55

6          MS. GERLICHER:  I'm not equipped to answer that

7     question with specificity.

8          THE COURT:  Mr. Fathi, is that more up your alley?

9          MR. FATHI:  It is, Your Honor.  Thank you very much.

10         May I speak from here?                                   14:33:07

11         THE COURT:  You may.

12         MR. FATHI:  Under *Lewis versus Casey,* prison officials

13    must be given, once a constitutional violation is found, must

14    be given the first opportunity to formulate a remedy.  And, of

15    course, the remedy, as Ms. Gerlicher said, would have to track  14:33:18

16    the constitutional violations that the Court had actually

17    found.

18         So the first opportunity would go to the defendants

19    but -- to formulate the remedy, but depending on, for example,

20    if you found that the levels of healthcare staffing were so     14:33:33

21    deficient as to violate the Eighth Amendment, there would have

22    to be a plan to somehow increase staffing.  The defendants

23    could propose a number of things.  They could propose a

24    particular staffing plan.  They could propose that a

25    specialized consultant be hired to determine what the staffing  14:33:51

```
 1    needs are.  But it would be in the first instance up to the

 2    defendants to make a proposal.

 3              THE COURT:  But then an awful lot of what you are

 4    arguing here is a long list of very specific treatment

 5    practices.  It's --                                          14:34:07

 6              MR. FATHI:  Let me give another example if I may, Your

 7    Honor.

 8              THE COURT:  Well, go ahead.

 9              MR. FATHI:  Okay.  If, for example, the Court finds

10    that confining people with serious mental illness in isolation 14:34:19

11    violates the Eighth Amendment as virtually every court that has

12    considered -- literally every court that has considered that

13    question has ruled, then the obvious injunction is quite

14    simple, to exclude people with serious mental illness.

15              THE COURT:  And that's all you are claiming with      14:34:36

16    respect to -- well, you have some general stuff, but with

17    respect to people in isolation you are only challenging

18    seriously mentally ill people being in isolation?

19              MR. FATHI:  No, that's not correct, Your Honor.  We're

20    challenging with respect to everyone.  It is particularly the  14:34:50

21    seriously mentally ill who are at risk.

22              THE COURT:  So you are arguing that -- I'm trying to

23    use a neutral word here -- the isolation is per se

24    unconstitutional for any prisoner.

25              MR. FATHI:  We're arguing that the conditions in ADC's 14:35:04
```

1   isolation unit are unconstitutional.

2         THE COURT:  Well, no, then you are telling me that the

3   Court needs to order specific conditions be stopped, which is

4   different.  So what is it?

5         MR. FATHI:  Well, for example, one of the practices          14:35:17

6   the Court certified was the use of pepper spray on prisoners

7   with serious mental illness.

8         THE COURT:  But that's not just isolation.

9         MR. FATHI:  Actually, Your Honor, you did certify it

10  only with regard to isolation.                                     14:35:32

11        THE COURT:  Okay.

12        MR. FATHI:  But I guess the common theme of my answer

13  here, Your Honor, is first of all, any injunction has to be

14  narrowly tailored to the violation that the Court finds.

15  Secondly, the defendants under *Lewis versus Casey* will have the  14:35:44

16  first opportunity to formulate relief.  So it really is

17  difficult to answer with specificity.

18        THE COURT:  Well, I guess forgive me for repeating

19  myself, but the nature of your briefing is a very long laundry

20  list of very specific things that you say are all               14:36:03

21  unconstitutional.  And if that's the finding then I'm going to

22  be issuing a long, long list of don'ts and dos, right?

23        MR. FATHI:  Again, Your Honor, it depends on what your

24  findings are.  Some of them are quite general.

25        THE COURT:  I'm asking what you want.                     14:36:20

1          MR. FATHI:  Okay.

2          THE COURT:  You can't disparage what I might do.  I'm

3     asking what you want.

4          MR. FATHI:  Yes, Your Honor.  We believe that what

5     underlies many of the problems in the healthcare system is          14:36:28

6     chronic and serious understaffing, inadequate numbers of

7     qualified medical, dental, and mental health staff.  So we

8     believe that one of -- an essential remedy will be some way of

9     increasing healthcare staffing.  Now, again, how many

10    psychiatrists and how many M.D.s and how many dentists you need    14:36:51

11    will depend on what the Court's findings are.  It will depend

12    on if the defendants decide to do a staffing analysis that will

13    determine how many of those are needed.  But some increase in

14    healthcare staff is certainly, I think, going to be an

15    essential part of the remedy.                                       14:37:12

16         THE COURT:  All right.  Now, before we let you go, Ms.

17    Gerlicher, well, actually maybe this isn't a question for you

18    either.  But this is a question that I have dreaded asking.

19    How much trial time does the plaintiff contemplate asking for

20    this?                                                               14:37:39

21         MS. GERLICHER:  We are in the process of discussing

22    that, Your Honor, and it depends on how we present the case.

23         MR. SPECTER:  Your Honor, could I address that?

24         THE COURT:  Go ahead.

25         MR. SPECTER:  Well, actually, Your Honor, I think you        14:37:51

1    shouldn't dread it as much as you might hope, because I think

2    we can put in most of our case.  And when we were here last I

3    suggested that we do that mostly not entirely through written

4    declarations by the experts which we have done in several other

5    cases.  If you grant -- if you grant that motion or we come to          14:38:12

6    some agreement, which we haven't yet, then I think --

7            THE COURT:  You know, I do invite that and use the

8    trial time for cross-examination, but I'm not sure I can do

9    that absent stipulation of the parties.

10           MR. SPECTER:  We have authority that says you can and       14:38:29

11   we'll provide that to you absent a stipulation, Your Honor.

12           THE COURT:  Okay.

13           MR. SPECTER:  But given that, my -- our proposal is

14   going to be that we have, let's say, two hours of direct and

15   whatever cross that the defendants want to do, well, both          14:38:45

16   sides, it's reciprocal, two hours of actual live testimony so

17   the Court can actually get a sense of credibility on direct as

18   well as cross.  And then but most of the details and most of

19   the opinions, the detailed opinions will be in the declaration

20   which can be subject to cross.  If that model is acceptable to       14:39:06

21   the Court --

22           THE COURT:  Let's assume that something like that

23   works.

24           MR. SPECTER:  Yes.  Then I think we're talking we have

25   seven experts, two hours apiece for those seven experts and          14:39:16

```
 1    we'll probably call a handful of other witnesses, plus cross of

 2    their witnesses.  So it's not going to be a six-month trial.

 3              THE COURT:  That's not too bad.  I don't know who

 4    wants to answer that question on the other side.  This is just

 5    a ballpark estimate.  How much trial time do you think you are        14:39:35

 6    going to want?  This is sort of, well, your case and your

 7    cross-examination.

 8              MR. STRUCK:  Right, Your Honor.  And it's difficult

 9    and this is an unusual case.  Generally when I'm a defendant I

10    spend a lot less time than the plaintiffs do.  Unfortunately        14:39:53

11    they are trying to use their experts as a funnel for all of the

12    mud that they can come up with that we have to then counter.

13    So I anticipate it will take us at least three times the amount

14    of time the plaintiffs have to put on our case.

15              THE COURT:  All right.  Anything else you want to say?   14:40:32

16              MS. GERLICHER:  I just wanted to close by -- given

17    your concern about the named plaintiffs, Your Honor, I wanted

18    to make it very clear that we did limit our disputes on the

19    plaintiffs based on your order.

20              THE COURT:  Let me ask you, if you feel misled by the     14:40:43

21    order I entered you need to tell me, because I thought I was

22    restating what is always the case and that I didn't think I was

23    making any specific application here that it's in the nature of

24    the claims that you need to show a disputed question of fact.

25    So, for example, in a prisoner healthcare case, there can be        14:41:05
```

1   disputes about collateral things, not collateral but did you

2   see this person here, did that -- but if the broad flow of it

3   establishes a constitutionally adequate care it's not material

4   that you may dispute some details.  So I mean, that's just

5   routine in these prisoner cases.                          14:41:25

6          MS. GERLICHER:  Understood, Your Honor.  And what we

7   did was we took the claim to be the claim for substantial risk

8   of serious harm.  So that was the guiding principle but we also

9   did specifically dispute their general facts about the named

10  plaintiffs.  So they would say things like care was timely    14:41:41

11  appropriate and we would present --

12         THE COURT:  What they said was they got this care,

13  this care, that doc on this day.  Those things you did not

14  dispute.

15         MS. GERLICHER:  They also had specific individual       14:41:53

16  facts that said things like Wells' dental care was appropriate,

17  and we laid out there our reasons why we dispute that.

18         THE COURT:  Frankly, I -- what I took from the briefs

19  was, I have said it before here, I took you to be relying on

20  your claim of systemwide deficiencies on various scores.  And I  14:42:11

21  didn't really think that you were disputing the details.  You

22  weren't relying on the details of your named plaintiffs any

23  more than anybody else among the 33,000 prisoners.

24         MS. GERLICHER:  They are evidence, Your Honor.  If you

25  think differently, I just wanted to clarify.               14:42:32

1          THE COURT:  All right.

2          MS. GERLICHER:  Thank you.

3          THE COURT:  Mr. Acedo.

4          MR. ACEDO:  Just several points, Your Honor.  First

5    one, I think, is most important.  And that is past instances of          14:42:48

6    care absolutely matter in this trial.  Their theory is future

7    risk of harm.  But their evidence to show that there is a

8    future risk of harm is based on these past incidents or

9    allegations of the named plaintiffs.

10          THE COURT:  Well, I clearly was relying on that when I          14:43:08

11   granted the class certification.

12          MR. ACEDO:  And, as they have just conceded, and which

13   we have been arguing, their experts' anecdotal evidence.  If

14   you read their expert opinions, it's even the deposition

15   testimony, even the ADC documents.  They all refer to prior          14:43:21

16   instances, specific instances.  That's why it absolutely does

17   matter.  And when we went through the named plaintiffs'

18   allegations and shown these past instances of -- these past

19   allegations are false, it can't support a theory of future risk

20   of harm.          14:43:41

21          The easiest way to grant a summary judgment, Your

22   Honor, is to look at their expert, unsworn expert reports and

23   you will notice they didn't attach any medical records.  You

24   have got our medical records that our experts relied on.  You

25   have got the medical records that we attached to support our          14:43:56

1    argument that all of their allegations are not true, but they

2    didn't provide any documents, any medical records for you to

3    look at.  And we agree with you, that's what matters.  That's

4    what's indisputable, and they haven't disputed it.  They take

5    comfort in the Ninth Circuit 66-page decision affirming your      14:44:15

6    class certification order, which is pending rehearing en banc.

7    The portions of the opinion they cite to, Your Honor, had

8    nothing to do with standing.  On at least two occasions that I

9    can recall, albeit in footnotes, the Court, the panel, said

10   that they aren't reaching any findings as to the merits of the    14:44:34

11   case.  They were clear on that.  I think plaintiffs are taking

12   liberties, trying to take advantage of that case.

13            THE COURT:  Neither was I.  And so anyway.

14            MR. ACEDO:  They say that they have disputed a lot of

15   issues, but sure they have said that in their response over and    14:44:51

16   over.  But follow the trail, and when you follow the trail it's

17   not supported.  They are trying to use your order as an excuse.

18   Your order simply restated what the local rule said.  The local

19   rule also says that they are required to dispute any issue

20   which they take dispute with, if there's a material fact or        14:45:14

21   they dispute the issue they are supposed to raise it.  They

22   only did 125 of those, and we pointed out just a handful of

23   examples of what are clearly material and they are hiding

24   behind your order.

25            THE COURT:  Well, they have not told me they felt         14:45:27

```
 1    misled by my order.

 2              MR. ACEDO:  They shouldn't have been.

 3              MR. SPECTER:  Your Honor -- I'm sorry.

 4              MR. ACEDO:  They also very subtly mentioned that the

 5    named plaintiffs can achieve standing by pointing to the risk        14:45:41

 6    of harm to other plaintiffs, and that's absolutely foreclosed

 7    by Lewis versus Casey.  They have to show personal standing

 8    even despite the fact that this class is certified.

 9              With regard to the ACDL standing, associational

10    standing, ACDL is not a class representative.  They don't            14:46:00

11    represent the class or the subclass.

12              THE COURT:  I know, but my -- it's been a while since

13    I looked at it, but I thought there was a statute that gave

14    them standing for certain claims.

15              MR. ACEDO:  Well, I'm not sure what statute you are        14:46:12

16    referring to but I can just refer back to the class

17    certification order.  They are not a class representative.

18              THE COURT:  They don't need to be a class

19    representative under -- well, I'm not sure.

20              MR. ACEDO:  Well, to be -- well, there is a division       14:46:24

21    between organizational lawsuits and class actions.  They are

22    different.  My only point, Your Honor, is they are not a class

23    representative.

24              THE COURT:  Right.

25              MR. ACEDO:  So they couldn't continue, for example, on     14:46:34
```

```
 1    representing the medical class, the dental class, or the

 2    isolation class which plaintiffs' counsel concedes does not

 3    include -- isn't entirely mentally ill inmates.

 4         As far as the mental health claims, Your Honor, we did

 5    argue that those mental health plaintiffs also had to show      14:46:53

 6    standing.  And if they can't, and they have not, shown standing

 7    with respect to those claims, the --

 8         THE COURT:  Frankly, there's a lot here.  I don't

 9    recall that you attempted to refute their claims of specific

10    injury.  Did you?  I don't recall that you did.                 14:47:10

11         MR. ACEDO:  Our standing argument related to all of

12    them, and if you review our motion, we did go through the

13    hundreds if not thousands of mental health encounters that the

14    mental health plaintiffs did have.  We did put forth that

15    evidence, and that was enough to discharge our burden and shift 14:47:27

16    it to plaintiffs.

17         I think it's very telling, Your Honor, when you ask

18    them what they want and they can't give you an answer after two

19    and-a-half years.  Their answer was, well, depends on what

20    defendants want.  Well, we're doing everything that -- we feel  14:47:42

21    we're doing everything that is constitutional.  But the fact

22    that they cannot give you a specific answer is very telling.  I

23    will tell you what they want.

24         THE COURT:  Actually, what they want is they and their

25    experts have thrown a whole bunch of stuff up here and says     14:47:56
```

```
 1   Judge, whatever you are persuaded to, that's what we'll be

 2   dealing with.  That's what they have said.

 3             MR. ACEDO:  They were able to muster up increased

 4   staffing.  I will just point out as of April 1st, staffing was

 5   about 17 percent over the contractual requirement.              14:48:12

 6             The final point, Your Honor --

 7             THE COURT:  By the way, I'm sorry.  Before you get to

 8   your final point, you know, the legislature did this

 9   privatization of corrections healthcare.  Did that result in

10   saving money to the state?                                      14:48:29

11             MR. ACEDO:  I couldn't answer that right now, Your

12   Honor.  That's a discussion for the legislatures and the

13   governor.  I don't think that's something that should play

14   into --

15             THE COURT:  Well, it might be relevant, might be      14:48:45

16   relevant to -- it might have inferential value.

17             MR. ACEDO:  Well, they haven't raised that as an

18   issue, so for purposes of the MSJ it's not relevant.

19             THE COURT:  And the next question is from where you

20   all were the first year with Wexford to later with Corizon, did 14:48:59

21   it cost more money?  How much?  And, you know, this may be

22   relevant to the question that you all have briefed which is

23   what's the time frame?  I mean, plaintiffs wants to look at the

24   bad old days under Wexford.  You want to look at the present.

25   I think you are right.  I think we do look at the present and   14:49:22
```

1    the persuasive value of the present.

2         MR. ACEDO:  I forget which hearing it was, Your Honor,

3    but you actually agreed with us that we all know what happened

4    with Wexford and Wexford is irrelevant.  But *Farmer* is directly

5    on point.  *Farmer* says you look at current, current conditions.        14:49:35

6    And as you are aware of, Your Honor, the privatization of

7    healthcare at ADC, that was a new thing.  July 2012 was the

8    first time that healthcare was privatized.  Wexford came in.

9    They had to get their feet settled.  It was a new thing for

10   everybody.  ADC took the initiative to --                                14:50:00

11        THE COURT:  Part of the point is you all don't get to

12   experiment for a year with prisoner constitutional rights.  You

13   don't get a pass.  You have got to have a system that's good

14   from day one.

15        MR. ACEDO:  Well --                                                 14:50:15

16        THE COURT:  Now, it may not have been good at day one

17   so we're looking at where we are now and that is not just

18   promises, intentions, but something concrete and persuasive.

19        MR. ACEDO:  Sure.  And what they have to show, Your

20   Honor, is deliberate indifference.  Wexford was in there July           14:50:25

21   1st.  Corizon came in March 3rd, 2013, about seven months

22   later.  So you are right, we don't get a year tryout.  But what

23   they have to prove is whether ADC was deliberately indifferent.

24   They were aware of issues and did nothing.  And frankly,

25   bringing in a new provider --                                           14:50:46

1          THE COURT:  Frankly -- maybe I shouldn't worry about

2     this.  But if -- well, it might be relevant to the subjective

3     component of deliberate indifference if the State, and I mean

4     the State in the cosmic sense, not management people at the

5     Department of Corrections, if the State decided we just want to      14:51:06

6     spend a lot less money on healthcare for prisoners, that might

7     be relevant and probative to whether there was deliberate

8     indifference unless there's some reasonable basis to think

9     there's already fat in the system.

10          So anyway, I guess it's not briefed so I shouldn't      14:51:20

11     worry about it.

12          MR. ACEDO:  Your Honor, I actually think our Statement

13     of Facts did outline the budget in the recent -- the past three

14     or four years, again, something plaintiffs consider material.

15     But it's obviously material today because you are interested in      14:51:33

16     it.  It's, if I had to guess, in the first 300 paragraphs.  But

17     I did go through --

18          THE COURT:  That is not a specific citation.

19          MR. ACEDO:  My last point, Your Honor, you had asked

20     plaintiffs what they want to do with respect to the isolation      14:51:46

21     claims, whether or not they want -- they are asking for a

22     categorical ban of mentally ill inmates.  Again, they squirmed

23     around that, but that's exactly what they want.  And they are

24     asking you to go back in what you held in *Hampton* and what the

25     other district courts in this district have held, *Freeman*,      14:52:05

1    *Jonas*, *Aguilar*, just to name a few.

2            Unless you have any other questions.

3            THE COURT:  I have never dealt with chronically

4    mentally ill prisoners in isolation.  I suppose it would be

5    very much affected by what the reason is the prisoner's in          14:52:21

6    isolation.  If they are in isolation because they are a grave

7    danger to staff or other prisoners and there's really no other

8    viable way to protect other people maybe you just have to take

9    the cost that goes with having them in isolation.  But if they

10   are in isolation because they won't debrief against a prison       14:52:41

11   gang, that would be a different thing altogether.  Let's put it

12   this way.  It would be a very different consideration.

13           So it may depend on why they are in isolation.  And if

14   you have someone who is chronically mentally ill who is going

15   to deteriorate and you are having them in there to persuade        14:52:58

16   them to cooperate, that wouldn't have the same level of

17   justification as protecting against harm to staff and other

18   prisoners.

19           MR. ACEDO:  Maybe you are right, Your Honor, the

20   subclass has already been certified.  I think this is one of       14:53:11

21   our commonality arguments is that there are individual

22   differences you would have to look at to determine whether the

23   justification applies to a particular inmate.  But I won't go

24   back on that.

25           The Statement of Facts for the budget, Your Honor, 56      14:53:25

1    through 65.

2              THE COURT:  Okay.  Tell me what it says.  Go ahead.

3    You can yield the microphone.

4              MR. ACEDO:  Paragraph 55, ADC's healthcare budget for

5    fiscal year 2014, 131.5 million.                              14:54:00

6              Your Honor, looks like that is the only --

7              THE COURT:  So we don't have the previous budget years

8    in the record?

9              MR. ACEDO:  I don't believe so, Your Honor.

10             THE COURT:  All right.                               14:54:28

11             MR. ACEDO:  If we find it when we get back to the

12   office we'll bring it to your attention.

13             THE COURT:  You know, I'm just kind of reluctant to do

14   that if it's not in the record because I don't want to keep

15   things open.                                                  14:54:38

16             MR. STRUCK:  I just did want to mention in terms of

17   budget, it's important to note that when you are talking about

18   budget prior to privatization and during privatization you are

19   really talking apples and oranges because a large part of the

20   fact that you are referring to are benefits that the State pays 14:54:52

21   that they no longer have to pay.  And that's where a lot of the

22   savings are.

23             THE COURT:  Yes, but they also -- the State now has to

24   pay a profit component that they didn't have to pay before.

25             MR. STRUCK:  The other point I want to mention, I do   14:55:04

1    think -- I believe this is in our Statement of Facts -- but

2    there was an increase for mental health staffing for Corizon of

3    about four million this fiscal year.

4         THE COURT:  Actually, Mr. Acedo, you know, I do have

5    another thought for you.                                    14:55:24

6         However I rule on this, there's going to be a trial.

7    There's parts of this that you didn't move for summary judgment

8    so we are going to have a trial.  It may be -- well, if you do

9    well on this motion, it would be -- most if not all of it would

10   be rather distinct subject matter.  But, well, there has been a   14:55:43

11   massive expenditure of resources on this litigation, and to the

12   extent we could bring things to a trial and Findings of Fact

13   without significantly -- well, a few weeks of trial is going to

14   be real money but it's not a great amount of money compared to

15   what's been expended already.  We could get much more stable   14:56:32

16   resolution, much more reliable resolution, with Findings of

17   Fact after trial than taking a risk with summary judgment.

18        Now, I don't -- I'm not one of those judges who shies

19   away from summary judgment.  Most of the time summary judgment,

20   if it's appropriate, saves the litigants a lot of money.  But   14:56:56

21   in this case it might not.  It might just significantly

22   increase the risk of reversal in coming back in two years for

23   more.

24        So and I --

25        MR. ACEDO:  You are the trier of fact, Your Honor.  I   14:57:16

UNITED STATES DISTRICT COURT

1    mean, that gives you some insulation, a lot more deference on

2    appeal.

3              THE COURT:  That's if I have a trial rather than

4    granting summary judgment.  I know, again, that's one of the

5    reasons why I asked you all about how long.  Sounds like the          14:57:30

6    plaintiffs have a pretty efficient trial plan in mind.

7              MR. ACEDO:  Well, it sounds like what they would like

8    to do is just hand you some pieces of papers that they have

9    written ahead of time and not actually establish the underlying

10   foundations of those expert reports.  And as Mr. Struck said,        14:57:45

11   at least three times' time we would need to cross-examine those

12   experts, go through all of the anecdotal evidence to really

13   show you what they haven't shown you now that those expert

14   opinions are flawed.

15             THE COURT:  I accept that.  But --                          14:58:02

16             MR. ACEDO:  If you are asking --

17             THE COURT:  If we spent three or four weeks in trial

18   that's a lot of trial time, but it's really not all that

19   significant compared to what's been expended in this litigation

20   already.  And I apologize for that.  I just went beyond my           14:58:28

21   ability to control.

22             But if we did that, and then the task is what am I

23   persuaded to rather than digging through every possible

24   inference or conclusion and deciding what it might mean.  It's

25   actually a lot easier thing to look at fact finding as to            14:58:54

1     what's persuasive.  And it is, as I said, it's much, much more

2     stable on review.

3           And -- well, the amorphousness of these claims is

4     problematic whether it's summary judgment or trial, some of the

5     claims.  And I guess it's partly my fault in the broad way I                14:59:21

6     crafted some of these classes.

7           But --

8           MR. ACEDO:  If you are asking --

9           THE COURT:  But if we had the evidence, actual

10    evidence, it sort of falls the way it falls, and that may --          14:59:36

11    the -- sifting out the persuasive evidence may eliminate a lot

12    of the difficulty that I'm hearing and feeling about the

13    breadth of some of these classes so that if there's not a

14    persuasive violation shown it kind of doesn't matter how

15    broadly I wrote the class.  If there is a violation shown, then        15:00:04

16    it's got to be enough to fairly match the class I certified.

17          Well, I can't play this chess game too many moves

18    ahead.  But what I am thinking out loud with you all is the

19    additional cost to everyone may not be worth the significantly

20    increased risk of having to do this over again in two years,          15:00:43

21    especially since we're going to have a trial here anyway, maybe

22    a more limited trial.  And we do act in a principled way, and

23    there's cases that sort of say what I'm saying here, that one

24    can give account to that if you are going to have a trial

25    anyway and it's not burdensome to have the scope of that             15:01:04

1    somewhat broader that you can give account to that in deciding

2    well, we're not going to grant summary judgment.

3            Actually, there's another dimension of that the

4    practicality is often when you are actually hearing the

5    evidence, it gives a better insight to other evidence and that        15:01:21

6    -- you know, I have had cases, I tried cases that when I tried

7    them, I understood it differently from what I thought reading

8    the briefs on summary judgment, including a few that I wished I

9    had granted summary judgment, but because I didn't grasp the

10   real dimension of it on the briefing but at trial I did.              15:01:50

11           So anyway, these comments don't really call for

12   response unless you would like to.

13           MR. ACEDO:  I'd like to.

14           THE COURT:  You may.

15           MR. ACEDO:  Defendants would vehemently object to            15:02:03

16   denying our Motion for Summary Judgment on the prospect of

17   possibly reducing costs down the road.  If you deny or if you

18   grant any portion of our Motion for Summary Judgment that will

19   reduce the time at trial.  That could help facilitate

20   settlement negotiations.  That would take away plaintiffs'            15:02:21

21   attorney's fees on those claims.  That will require plaintiffs

22   to pursue that denial on appeal.  And maybe it's not worth it

23   depending on what happens at trial on the other claims.  So we

24   think that you should, again, look back to what their burden

25   was, how difficult did they make your job to try to rule in          15:02:41

1   their favor.  On the briefing, did they follow the rules.  If

2   they didn't grant summary judgment for us now and however it

3   shakes out, whatever claims are left we go to trial if the

4   parties can't settle beforehand.

5        THE COURT:  Well, to the extent I can -- that I think          15:02:56

6   it's appropriate and I can narrow this in a way that I have an

7   appropriate level of confidence is correct, that's what we do.

8   But if it gets into a gray area, that's -- you know, I have

9   had -- I remember cases when I was a lawyer of talking a really

10  good -- well, I would tell you who it was except I don't want      15:03:21

11  to embarrass anyone, a really really good judge in Superior

12  Court into digging deep.  He denied summary judgment and I came

13  back and said, Judge, if you don't grant summary judgment for

14  me you have to grand it against me.  Will you take another

15  look?  He did and he granted summary judgment for me and that      15:03:37

16  got reversed on appeal because they didn't dig deep enough, not

17  the way he did.

18       That's the way it is.  Even if I may be persuaded of

19  something there could be a very serious risk that the Court of

20  Appeals simply -- they might see it differently or don't dig       15:03:53

21  differently or maybe don't replicate my error.  So it -- I will

22  grant summary judgment where I have a high confidence level

23  it's correct.

24       All right.  I guess you are the moving party so you

25  have the last word.  But actually, did you want to say anything    15:04:15

UNITED STATES DISTRICT COURT

1    further about my last comments?

2            MS. GERLICHER:  I did, Your Honor.

3            THE COURT:  Just come up here.

4            MS. GERLICHER:  Your Honor, on the question of whether

5    the cost of trial if you grant or don't grant summary judgment,    15:04:27

6    many of these issues are overlapping.  And they work together,

7    they interact, and so if you grant summary judgment on some of

8    them it will deprive us of either the opportunity to show how

9    they interact or not, in fact, shorten trial.  So it wouldn't

10   be more economical to have fewer of them.    15:04:47

11           There were a couple other points I wanted to make

12   about what was just said in your earlier comment.  Regarding

13   the time frame, the case we cite on Page 12 of our brief,

14   *Friends of the Earth v. Laidlaw* talk about how post-filing

15   changes doesn't deprive you of the opportunity to evaluate the    15:05:03

16   constitutional conditions at the time of filing.  They go to

17   the scope of the remedy.  The -- and also, the statements

18   regarding staffing and how funding was increased, that was done

19   post April 1st.

20           Finally, regarding our experts, they -- we did not put    15:05:21

21   in the underlying evidence because we were opposing summary

22   judgment, and much of the underlying evidence is already in.

23   But if the care provided to the named plaintiffs is going to be

24   dispositive, Your Honor, we could absolutely -- we would

25   request the opportunity to have our experts opine directly on    15:05:38

```
 1    them for you because we can and we didn't have them do that.

 2              THE COURT:  Well, look, we're not going back.  This

 3    train doesn't have a reverse gear.  So --

 4              MR. SPECTER:  Excuse me, Your Honor, may I just add

 5    something?                                                  15:05:57

 6              THE COURT:  Yes.

 7              MR. SPECTER:  You asked if we were misled by your

 8    order.  I don't want to use -- I will only use the word misled

 9    because you used it first.  I don't ascribe any intent to

10    mislead, but I will describe to you the way we understood your  15:06:10

11    order which was, you said, you know, they had violated the

12    local rules when they submitted all those facts.  You said we

13    shouldn't even read all the facts, and you said to us, you

14    know, you only have to dispute one fact for each claim, and so

15    we did not dispute --                                       15:06:33

16              THE COURT:  Does this go -- the one I'm focusing on

17    now --

18              MR. SPECTER:  Right.

19              THE COURT:  -- is the specific --

20              MR. SPECTER:  Right.                              15:06:43

21              THE COURT:  -- past actual injury claim for the named

22    plaintiffs.

23              MR. SPECTER:  We didn't go through each of the 5,000

24    facts of each of the plaintiffs because of your order.  That's

25    what happened.  And that's why what we did was we took your   15:06:52
```

1   order and we said we'll take one of the facts or some of the

2   facts for each of the named plaintiffs, we will dispute them,

3   but we didn't go through all 4,000 facts.

4        THE COURT:  But you have read -- it isn't 4,000 facts

5   on that.  But again, those materials deal with documented care          15:07:10

6   provided that at least in some instances suggests either

7   delusion or fraud on the part of the named plaintiffs and what

8   they alleged.

9        MR. SPECTER:  No, there can be, for example, Your

10  Honor, the prisoner can say, I request --                              15:07:29

11       THE COURT:  Or incredibly bad memory.  That's a third

12  possibility.

13       MR. SPECTER:  No.  I requested to see the doctor.

14  They don't have it in their records because they didn't write

15  it down, or I filed a grievance and they threw the grievance           15:07:40

16  away.  There are many reasons why there may be a factual

17  dispute.  If we hadn't received your order --

18       THE COURT:  What do you want to do about that?

19       MR. SPECTER:  Well, there are two things -- two

20  alternatives in my view.  One, you can, when you are ruling on         15:07:56

21  the Motion for Summary Judgment, you can take into account the

22  way in which we disputed their facts.

23       THE COURT:  Well, actually, let me help you out.  I

24  have already said this.  I see these cases all the time.  Those

25  claims look like, exactly like, the claims I grant summary            15:08:12

1    judgment against all the time.

2          MR. SPECTER:  Yes, but do they all have --

3          THE COURT:  So if you have something that's going to

4    take me above the other 99.9 percent, you didn't give it to me.

5    And if you want to give it to me I'm disposed to let you do          15:08:26

6    that.

7          MR. SPECTER:  All right.  Let us do that.

8          THE COURT:  How about a week to controvert facts.

9          MR. SPECTER:  There are thousands of facts and we have

10   to have expert opinions.                                             15:08:37

11         THE COURT:  No, no, no.  You don't need expert

12   opinions.  These are facts about what treatment was received,

13   what was given.  And I can -- if these are things based on what

14   look like plain, uncontrovertible, primary facts, not opinions.

15   I don't need any opinions.  And if there is something              15:08:52

16   controverted on that then I certainly don't want you to be

17   misled.  But, you know --

18         MR. SPECTER:  Certainly.

19         THE COURT:  -- this is not expert opinion stuff.  This

20   is, is there any evidence about what was said here because it      15:09:03

21   looks like what I said.

22         MR. SPECTER:  Your Honor, for example --

23         THE COURT:  Again, it doesn't -- under Ms. Gerlicher's

24   argument and your briefs, that's not your case.  You don't

25   feel --                                                            15:09:20

```
1               MR. SPECTER:  Yeah.

2               THE COURT:  -- you are grounded on you stand or fall

3      without that.  So --

4               MR. SPECTER:  We agree with that, Your Honor, but you

5      seem to suggest you might be taking a different view.  And if        15:09:27

6      you are going to take the view you articulated before, then we

7      need an opportunity to, when Mr. Acedo is present and arguing,

8      then we need an opportunity to dispute the facts that we didn't

9      dispute because of your order.

10              That's all we're saying.  I don't mean to make a lot        15:09:48

11     of trouble, but I'm trying to explain to you what we did and

12     why we did it.

13              MR. ACEDO:  Your Honor, could I have the last word?

14              THE COURT:  You may.  Well, you can have the next

15     word.                                                                15:10:05

16              MR. ACEDO:  We have about more than 30 lawyers on this

17     case.  They are proclaimed experts on this.  They have got

18     lawsuits all around the country and for them to come in now and

19     say, we didn't know what to do, give us a second chance,

20     frankly, is outrageous.                                             15:10:23

21              THE COURT:  You know, frankly, this is something I

22     feel like an expert in.  I have seen so many of these prison

23     healthcare things, I have read through so many of them and

24     virtually all of them turn out the way the other side argues,

25     that there's uncontrovertible records of what were done.  It        15:10:37
```

might have been negligence.  It might have been bad.  It's not

intentional reckless disregard and it's summary judgment.

MR. SPECTER:  That's -- I'm sorry to interrupt.

That's why the case that we're -- the theory of our case, which

Ms. Gerlicher articulated and I think you understand --

15:10:54

THE COURT:  I think I do.

MR. SPECTER:  -- is not -- doesn't rely so much

heavily on those past cases.  The only reason I bring this up

is because you seemed inclined in the beginning of the argument

to consider if they don't have a claim for past harm then you

15:11:11

are going to dismiss the case.

THE COURT:  Well, no, what I said is it looked to

me -- I have said this repeatedly so I will say it again.  It

looked to me from your briefs, and I think I have heard it here

today, your argument is these named plaintiffs, they are in the

15:11:27

same position as the other 13,000 people because there's a risk

not that they have been hurt in the past.  So if you want to

tell me you have been misled as to whether they have been hurt

in the past, and I don't want to mislead anybody, but the --

just looking -- and I don't -- there may be some of them but

15:11:43

this is not true if I have to labor through each on a careful

basis.

MR. SPECTER:  Right.

THE COURT:  But in most of them, it looked crystal

clear they were not -- their constitutional rights were not

15:11:57

1   violated in actual -- with resulting in injury.

2        Now, that doesn't -- may not be conclusive, it's not

3   conclusive on the question of whether you can get an injunction

4   for prevention of future injury.

5        MR. SPECTER:  That's right.                          15:12:13

6        THE COURT:  But, I --

7        MR. SPECTER:  That's why they shouldn't be dismissed

8   even if you apply an individual --

9        THE COURT:  I'm not communicating very well.

10       MR. SPECTER:  I'm sorry.                              15:12:23

11       THE COURT:  Because I am talking about whether this

12   case is narrowed for the lack of any evidence of historical

13   injury and only going forward for summary judgment, possibly

14   trial, on your threat of future injury that hasn't been proved

15   to have happened yet to any plaintiff.  I understand that.   15:12:40

16       MR. SPECTER:  Okay.

17       THE COURT:  And I thought that's what Ms. Gerlicher

18   was saying, and I thought that's what your briefs were relying

19   on.  But there's a whole lot there.  I could have missed

20   something.                                                 15:12:52

21       MR. SPECTER:  Right.

22       THE COURT:  So if -- and well, I don't know.  If you

23   feel misled, I'm disposed to give you a brief time.  But I

24   don't need any expert witnesses.  I need some evidence --

25       MR. SPECTER:  Okay.                                   15:13:12

1        THE COURT:  -- that would suggest the bare primary

2   facts presented here are somehow disputable.  They are not

3   disputable in most of the cases that we see.  I mean, frankly,

4   I don't want to put you on the spot, but it appears you have

5   brought on these claims without getting their medical records.   15:13:26

6        MR. SPECTER:  No, we got their medical records.  We

7   had them reviewed by experts.  We have declarations from the

8   prisoners which we filed in support of the Motion For Class

9   Certification.  We had declarations from the experts in support

10  of the Motion For Class Certification based on the review of   15:13:41

11  the records.

12        THE COURT:  I really don't need experts.

13        MR. SPECTER:  I understand, but I'm telling you we

14  didn't just go pick these plaintiffs out of thin air.  And as

15  Ms. Gerlicher said, the ones who have the most serious injury   15:13:54

16  which are cataloged in our expert reports are now dead.

17        THE COURT:  I'm only talking about your named -- these

18  are the named plaintiffs, talking about what the trial would be

19  if it goes forward.

20        MR. SPECTER:  Right.  And we -- the Ninth Circuit and   15:14:12

21  the Supreme Court in *Plata* both said that anybody can get sick

22  tomorrow.

23        THE COURT:  I'm not talking about that.  How many

24  times do I have to say it?

25        MR. SPECTER:  Okay.   15:14:23

1          THE COURT:  I have already acknowledged that for you.

2          MR. SPECTER:  Okay.

3          THE COURT:  I'm talking about whether we have a trial

4   about alleged actual past injuries and it doesn't appear to

5   me -- might be some there but hardly any.                                15:14:33

6          MR. SPECTER:  We don't want to do a trial on past

7   injuries.  We want to have a trial on whether there's a current

8   risk of harm.

9          THE COURT:  And I don't want to impinge on our trial

10  schedule and I don't want to create unnecessary cause for                15:14:46

11  everyone, so I'm going to take you at that.  I'm going to thank

12  you for it, and I'm going to hold you to it and you don't need

13  more time to respond.

14         MR. SPECTER:  Thank you, Your Honor.

15         THE COURT:  Mr. Acedo.                                            15:14:59

16         MR. ACEDO:  I'm not sure if your last statement, Your

17  Honor, just told them you weren't going to allow --

18         THE COURT:  That's correct.  That's what I said.

19         Okay.  All right.  Oh, my gosh.  We have gone for an

20  hour and 45 minutes.  Thank you, counsel.  The matter is taken          15:15:12

21  under advisement and we'll be adjourned.

22         (Proceeding concluded at 3:15 p.m.)

23

24

25

1

2

3

4

5

6                        C E R T I F I C A T E

7

8          I, LAURIE A. ADAMS, do hereby certify that I am duly

9    appointed and qualified to act as Official Court Reporter for

10   the United States District Court for the District of Arizona.

11         I FURTHER CERTIFY that the foregoing pages constitute

12   a full, true, and accurate transcript of all of that portion of

13   the proceedings contained herein, had in the above-entitled

14   cause on the date specified therein, and that said transcript

15   was prepared under my direction and control.

16         DATED at Phoenix, Arizona, this 4th day of August,

17   2014.

18

19                              s/Laurie A. Adams

20                              _____
                                Laurie A. Adams, RMR, CRR

21         _

22

23

24

25