# EXHIBIT 1

# EXHIBIT 1

1  Thomas C. Horne, Arizona Attorney General
   OFFICE OF THE ATTORNEY GENERAL
2  Michael E. Gottfried, Bar No. 010623
   Lucy M. Rand, Bar No. 026919
3  Assistant Attorneys General
   1275 W. Washington Street
4  Phoenix, Arizona 85007-2926
   Telephone:   (602) 542-1610
5  Fax:         (602) 542-7670
   Michael.Gottfried@azag.gov
6  Lucy.Rand@azag.gov

7  Daniel P. Struck, Bar No. 012377
   Kathleen L. Wieneke, Bar No. 011139
8  Rachel Love, Bar No. 019881
   Timothy J. Bojanowski, Bar No. 22126
9  Nicholas D. Acedo, Bar No. 021644
   Ashlee B. Fletcher, Bar No. 028874
10 Anne M. Orcutt, Bar No. 029387
   Jacob B. Lee, Bar No. 030371
11 STRUCK WIENEKE & LOVE, P.L.C.
   3100 West Ray Road, Suite 300
12 Chandler, Arizona  85226
   Telephone:   (480) 420-1600
13 Fax:         (480) 420-1696
   dstruck@swlfirm.com
14 kwieneke@swlfirm.com
   rlove@swlfirm.com
15 tbojanowski@swlfirm.com
   nacedo@swlfirm.com
16 afletcher@swlfirm.com
   aorcutt@swlfirm.com
17 jlee@swlfirm.com

18 *Attorneys for Defendants*

19 **UNITED STATES DISTRICT COURT**

20 **DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>                                      Plaintiffs,<br><br>       v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>                                      Defendants. | NO. CV12-0601-PHX-NVW<br><br>**DECLARATION OF LUCY RAND** |

1    I, Lucy Rand, declare as follows:

2    1.   I am an Assistant Attorney General for the Arizona Attorney General's
Office and represent the State of Arizona, and the Department of Corrections ("ADC")
and its employees. I am an attorney of record for Defendants Charles Ryan and Richard
Pratt in this case. I have personal knowledge of the matters set forth below and am
competent to testify to these matters.

2.   During the time period from September 27, 2013, to April 1, 2014,
sixty-six ADC inmates died:[1] 59 from natural causes; 3 from suicides; 2 from homicides;
and 2 from accidents.

3.   Pursuant to the ADC's policies, a criminal investigation (or "death
investigation") is initiated for every inmate death. (Department Order ("DO") 608,
<u>Criminal Investigations</u>, § 608.07-1.1.) Criminal investigations are also initiated in cases
involving the investigation and prosecution of inmates, employees, visitors, or any other
individuals suspect of committing a crime while in the ADC's jurisdiction. (*Id.* at
Purpose.) Criminal investigations may contain investigative and evidentiary reports,
confidential ADC policies and procedures, operational documents (e.g., staff rosters,
inmate logs, maps and diagrams), and inmate AIMS[2] reports for the deceased and other
inmates. A death investigation may also contain the medical examiner's report, the
toxicology report (if any), and the death certificate.

4.   Also, pursuant to the ADC's policies, an administrative investigation is
initiated for all inmate suicides, unattended natural deaths, and homicides involving
inmates. (DO 601, <u>Administrative Investigations and Employee Discipline</u>,
§ 601.01-1.2.) Administrative investigations are also initiated in cases involving
allegations of misconduct by employees. (*Id.* at Purpose.)

---

[1] Because the instant lawsuit involves inmates receiving health care provided by the ADC and its contractors, one inmate who died in the custody of a private prison, but who received health care services from the ADC and/or its health care contractors, is also included in this figure.

[2] Automated Inmate Management System.

#4096459                                    2

5. I have been advised that there are nearly 11,000 pages of investigative reports for the sixty-six deceased inmates: sixty-six Criminal Investigation Reports (8,700 pages) and sixteen Administrative Investigation Reports (2,275 pages).

6. Investigative reports take considerable time to prepare for production because of the nature of the reports and their formatting. Each report must be individually reviewed and security-sensitive information redacted. Reports typically are single spaced and contain extensive amounts of security-sensitive information, which if revealed likely would threaten the safety and security of the inmates, ADC personnel, the public, and others. For example, every investigative report contains inmate(s) social security numbers, employee identification numbers, prison gang membership identifiers, and potentially other personally identifying information of every person involved in and/or interviewed regarding an inmate's death. Also investigative reports often identify confidential informants, gang intelligence information, correctional operational procedures, prison facility maps and diagrams, and/or facts regarding investigations that if revealed could jeopardize the outcome of the investigations themselves. Consequently, specially trained personnel must spend long, hours carefully reviewing and redacting the reports in preparation for their production.

7. Previously, three people reviewed and redacted approximately 16,186 pages of death investigation records, which were provided in rolling production over the course of 13 months.

8. Based on the number of personnel and the time needed to produce the previous death investigations, Plaintiffs' current request to produce the entire investigative reports of the sixty-six deceased inmates is unduly burdensome. Defendants anticipate this will take hundreds of hours to complete.

. . .

. . .

. . .

#4096459                                3

1  I declare under penalty of perjury that the foregoing is true and correct.
2  Executed on this 6th day of August, 2014.

_____
Lucy Rand