**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Antonio Parsons, et al., | No. CV-12-00601-PHX-NVW |
| Plaintiffs, | **ORDER** |
| v. | |
| Charles L. Ryan, et al., | |
| Defendants. | |

Before the Court is Defendants' Motion for Summary Judgment (Doc. 895, sealed at 902). For the reasons that follow, the motion will be denied.

**I.    Factual Background**

Plaintiffs are thirteen inmates housed in various Arizona Department of Corrections (ADC) complexes and the Arizona Center for Disability Law, which is statutorily empowered to act on behalf of the mentally ill (Doc. 1). Defendants are ADC Director Charles Ryan and ADC Division of Health Services Interim Director Richard Pratt.  Plaintiffs filed this action in March 2012, presenting five claims for relief stemming from Defendants' alleged deliberate indifference in the provision of overall health, medical, dental, and mental health care and to unconstitutional conditions of confinement in the ADC's isolation units (Doc. 1 at ¶¶ 140-149). Plaintiffs seek declaratory and injunctive relief, including an Order compelling Defendants to develop a plan to provide Plaintiffs and the proposed class and subclass with constitutionally adequate health care and protection from unconstitutional conditions of confinement in ADC's isolation units.

In March 2013, this class action was certified on a "voluminous evidentiary record." *Parsons v. Ryan*, 754 F.3d 657, 670 n.12 (9th Cir. 2014) (*Parsons II*), *aff'g Parsons v. Ryan*, 289 F.R.D. 513, 524 (D. Ariz. 2013) (*Parsons I*). This record included declarations from the Named Plaintiffs, four expert declarations, and numerous internal ADC and Wexford documents. After analyzing the evidence and the class certification standard, the Court ultimately certified the following claims.

    **A.**    **Class Claims**

        1.    Failure to provide timely access to health care

        2.    Failure to provide timely emergency treatment

        3.    Failure to provide necessary medication and medical devices

        4.    Insufficient health care staffing (i.e. physicians, psychiatrists, dentists, physicians' assistants, registered nurses, and other qualified clinicians)

        5.    Failure to provide care for chronic diseases and protection from infectious disease

        6.    Failure to provide timely access to medically necessary specialty care

        7.    Failure to provide timely access to basic dental treatment

        8.    Practice of extracting teeth that could be saved by less intrusive means

        9.    Failure to provide mentally ill prisoners medically necessary mental health treatment (i.e. psychotropic medication, therapy, and inpatient treatment)

        10.    Failure to provide suicidal and self-harming prisoners basic mental health care

    **B.**    **Subclass Claims**

        1.    Inadequate psychiatric monitoring because of chronic understaffing

        2.    Use of chemical agents against inmates on psychotropic medications

        3.        Lack of recreation

        4.        Extreme social isolation

        5.        Constant cell illumination

        6.        Limited property

        7.        Insufficient nutrition

*Parsons I*, 289 F.R.D. at 522-523.

Defendants appealed the Court's class certification order pursuant to Rule 23(f) of the Federal Rules of Civil Procedure. The Ninth Circuit entertained the appeal and considered it on an expedited basis; the decision to certify the class was affirmed. *Parsons II*, 754 F.3d at 690. Meanwhile, the parties continued to engage in a prodigious amount of discovery, expending tremendous resources. Discovery having now concluded, Defendants seek summary judgment on the grounds that (1) the Named Plaintiffs received constitutionally adequate medical care and, therefore, lack standing in this action; (2) any deficiencies in the provision of medical care are not system-wide; (3) several certified claims should be dismissed; (4) the Named Plaintiffs received constitutionally adequate dental care; and (5) the conditions of confinement claims fail as a matter of law.

## II.     Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden then shifts to the nonmovant to demonstrate the existence of a factual dispute and

that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III. Medical Care Discussion**

    **A. Standing**

Defendants' primary argument is that the Named Plaintiffs lack standing because none of them have viable deliberate indifference claims. They describe in great detail the medical care each Named Plaintiff received and introduce probative evidence establishing that—for the most part—each was monitored and treated for their respective conditions.[1] But this argument continues to misconstrue the foundation upon which this

---

[1] The Court notes that Defendants' evidence does not establish that Jensen's treatment was constitutionally adequate as a matter of law. For example, Defendants acknowledge that Jensen's first elevated PSA level was in August 2006 and a urology consultation was submitted on January 3, 2007 and approved one week later. But Jensen was not seen by a urologist until August 2009 and was diagnosed with prostate cancer in November 2009. There is no explanation for this delay and no basis to conclude as a matter of law that the delay did not cause harm; specifically, it is arguable that Jensen's cancer could have been detected and treated nearly three years earlier. Defendants' attempt to shift the blame of the delay to Jensen for failing to submit HNRs inquiring about the urology consultation does not succeed as a matter of law. Further, a question of

- 4 -

case was certified and the governing legal standard controlling it.

This action never relied solely upon the experiences of the Named Plaintiffs. *Parsons I*, 289 F.R.D. at 524 ("The remedy in this case would not lie in providing specific care to specific inmates."). As the Court has repeated, and reinforced by the Ninth Circuit, data establishing whether the prison has sufficient resources to provide adequate care is what will underlie the conclusion in this case (Doc. 446, Transcript of April 26, 2013 Hearing at 18:4-6) ("[W]hat will really matter is the systemic data itself as to what resources are being put in[.]"); *see id.* at 19:16-19 ("The evidence that matters about the level of healthcare is going to be gross evidence about budgeting, staffing, number of people being served."). As a result, the Named Plaintiffs would no more be able to win their case by establishing that they had experienced deliberate indifference than Defendants can win by establishing they did not.

Indeed, individual claims for deliberate indifference are distinct from claims for systemic reform in which a plaintiff alleges that many inmates are simultaneously harmed by a single policy. *Mitchell v. Cate*, 2014 WL 3689287, at *6 (E.D.Cal 2014) (citation omitted); *Pride v. Correa*, 719 F.3d 1130, 1137 (9th Cir. 2013); *see also Brown v. Plata*, ––– U.S. –––, ––– n. 3, 131 S.Ct. 1910, 1925 n. 3 (2011).

The Ninth Circuit observed that this case did not challenge the care—or lack thereof—on any particular occasion. *Parsons II*, 754 F.3d at 676. Instead, Plaintiffs challenge the overall risk of harm stemming from inadequate policies and practices, namely staffing. For these reasons, Defendants' reliance on *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), is misplaced because the "injury in fact" is the exposure to the risk of harm left unabated by Defendants' deliberate indifference.[2] This very notion was embraced by the Supreme Court this term. *Susan B. Anthony List v.*

---

fact remains as to whether Jensen received an adequate supply of catheters.

[2] Defendants' Notice of Supplemental Authority (Doc. 1061) will not be considered. All of the cited cases were decided prior to summary judgment briefing. More important, none of the authority alters the Court's conclusion. Plaintiffs' motion to strike the notice will therefore be denied as moot.

- 5 -

*Driehaus*, ––– U.S. ––––, ––––, 134 S. Ct. 2334, 2341 (2014).  Defendants' focus on establishing only that the Named Plaintiffs received constitutionally adequate medical care is relevant but not conclusive.  As the Supreme Court explained in *Plata*:

> Because plaintiffs do not base their case on deficiencies in care provided on any one occasion, this Court has no occasion to consider whether these instances of delay—or any other particular deficiency in medical care complained of by the plaintiffs—would violate the Constitution under *Estelle v. Gamble*, if considered in isolation. Plaintiffs rely on systemwide deficiencies in the provision of medical and mental health care that, taken as a whole, subject sick and mentally ill prisoners in California to "substantial risk of serious harm" and cause the delivery of care in the prisons to fall below the evolving standards of decency that mark the progress of a maturing society. (citations omitted).

*Brown v. Plata*, ––– U.S. ––––, 131 S.Ct. 1910, 1925 n. 3 (2011).

The Ninth Circuit in this case recognized this distinction and reinforced that inmates need not wait until a constitutional harm occurs to seek injunctive relief. *Parsons II*, 754 F.3d at 676-677 (citing *Thomas v. Ponder*, 611 F.3d 1144, 1151 n.5 (9th Cir. 2010)).  For this fundamental reason, establishing that no Named Plaintiff has a viable claim for damages stemming from their own medical treatment does not end the Court's inquiry.

The foregoing should not be misconstrued to mean that the Court is unconcerned with the possibility that the Named Plaintiff's declarations in support of class certification did not, in fact, accurately describe the medical care they received.  But even assuming that each Named Plaintiff received constitutionally adequate medical care, that alone does not prove the absence of systemic deficiencies in the provision of medical care.  And Plaintiffs' allegations always centered on a lack of adequate staffing, which itself results in an allegedly unconstitutional risk of harm.

### B. Statistical Information

Despite the Court's attempt to frame the issues in this case and put the parties on

notice about the type of evidence likely to be most meaningful, Defendants' motion is lacking in argument or evidence establishing that staffing levels are sufficient to provide minimally competent and adequate medical care for the prison population.  They present evidence regarding staffing at three units and argue that Corizon's overall staff numbers exceed its contract requirements (Doc. 902 at 24).  But in response, Plaintiffs point out that the Douglas, Winslow, and Safford Units are among the smallest in the entire prison.  Further, the evidence reflects that Corizon's contract requires 10 medical directors and 10 physicians for the entire prison population (Doc. 937, Ex. 137, Attach. NNNNN at ADC267354).  Defendants' motion does not provide any context for the number of physicians required by the contract.  Further, access to care necessarily requires access to qualified staff and absent from Defendants' motion is any evidence regarding what level of staffing by position satisfies constitutional minima for a prison population of 36,000 and whether their existing staffing meets that standard.

Nor do Defendants offer any authority or evidence to support extrapolating data from three small facilities to the entire prison healthcare system.  The Court is especially hesitant to do so when Defendants acknowledge "temporary staffing shortages" at "certain facilities" without providing any detail about the shortages.  Instead, Defendants argue that *Lewis v. Casey* mandates the entry of summary judgment on their behalf because Plaintiffs must establish a constitutional violation at each ADC facility.  518 U.S. 343, 360 n.7 (1996).  But the Court has determined that there is a lack of evidence regarding *overall staffing* which prevents the Court from concluding as a matter of law that Defendants' staffing is constitutionally sufficient.  Summary judgment must therefore be denied.

### C. Certain Practices

Defendants also move for summary judgment as to certain discrete practices: mitigating infectious diseases, providing medical devices, providing timely emergency treatment, making Health Needs Request (HNR) forms and assistance available, providing medical diets, enforcing an indoor smoking ban, and permitting

unconstitutional watch cell conditions. Some of these issues—access to HNRs and assistance, providing medical diets, enforcing an indoor smoking ban, and permitting unconstitutional watch conditions—were not certified and, therefore, it is problematic to grant summary judgment on claims not directly at issue. These and other discrete proofs of adequate care may well be probative against some of the certified class claims, but such evidence will have to be considered together with all the admitted evidence on the relevant claim.

For those claims that were certified, Defendants fall short of establishing as a matter of law that they are entitled to summary judgment. Most of their argument rests on ADC's written policies to demonstrate that Defendants provide sufficient access to emergency care, medication and medical devices and have sufficient procedures to mitigate the spread of infectious diseases. But Plaintiffs' claim is that despite ADC's policies, its practices are constitutionally deficient. Defendants' policies alone are insufficient to establish the absence of a genuine issue of material fact. This conclusion is bolstered when considering evidence that some nurses are not properly certified to perform CPR, emergency response bags contain insufficient or expired supplies, and several facilities have broken or malfunctioning automated external defibrillators. Additionally, Defendants do not address the companion issues of medication distribution or treatment for chronic illnesses. Therefore, summary judgment must be denied on these piecemeal claims, and they must be evaluated in their entirety at trial.

### D.    Mental Health Care Claims

Defendants do not specifically discuss the certified mental health care claims: failure to provide mentally ill prisoners medically necessary mental health treatment (i.e. psychotropic medication, therapy, and inpatient treatment) and failure to provide suicidal and self-harming prisoners basic mental health care (Certified Claims 9 & 10).

Rather, in summary fashion, Defendants list the number of "encounters" each Named Plaintiff had with healthcare staff, which includes all types of providers, and draws the conclusion that ADC provides constitutionally adequate mental health care.

There is no breakdown or analysis as to the types of encounters each inmate received or the provider level for each encounter. This argument does not exclude a genuine issue of material fact because the number of healthcare encounters alone is insufficient to establish quality care. *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (prisoner does not have to prove that he was completely denied medical care); *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) ("access to medical staff is meaningless unless that staff is competent and can render competent care"). Summary judgment must be denied.

## IV.     Dental Care Claims

Defendants also detail the Named Plaintiff's dental care and argue that none of them were the victim of deliberate indifference and none suffered serious harm. They argue that this, by itself, should compel summary judgment on the dental class claim (Doc. 902 at 45). But, again, this argument overlooks what the class claim actually alleges, which is that systemic deficiencies lead to a failure of timely access to basic dental treatment and the prison has a practice of extracting teeth that could be saved by less intrusive means. The foundation for this claim is a lack of dental staffing, but Defendants provide no argument about staffing levels and whether they are adequate to meet the needs of the prison population.

The evidence reflects that Corizon is contractually required to employ 31.8 dental care providers (consisting of directors, dentists, and hygienists). Dr. Shulman, Plaintiffs' dental care expert, explains that based on the inmate population of 35,342 in September 2013, and assuming that all positions are filled, Corizon's ratio of inmates to dental care provider is 1,111:1. However, the March 2014 staffing report reflects that Corizon was operating with only 5.14 dental directors, 17.94 dentists, and 1.34 dental hygienists, yielding a ratio of 1,472:1, which is nearly 50 percent fewer providers available to see inmates than in 1996 (Doc. 969, Ex. 1, Shulman Report at 12). Defendants fail to come forward with any evidence to establish that the number of contracted dental care providers is sufficient to meet the needs of the prison population. This lack of evidence,

coupled with the vacancies found in the March 2014 staffing report creates an issue of fact for trial as to whether the prison has sufficient dental resources.

Further, alleged inadequate staffing dovetails into Plaintiffs' extraction policy claim. As the Court understands the claim, a lack of adequate staffing leads to the inability to proactively treat dental issues in a timely manner, which results in extraction because by the time an inmate receives dental care, the affected tooth is beyond saving. Therefore, Defendants' evidence that extraction was the appropriate treatment for the Named Plaintiffs may be correct. But that does not prove that inadequate staffing may have delayed necessary treatment short of extraction. Summary judgment on this claim must similarly be denied.

## V.     Conditions of Confinement Claims

Defendants present evidence regarding each of the conditions in ADC's isolation units (Doc. 902 at 45-59). In the Order granting class certification, the Court rejected the notion that each condition would be evaluated in isolation and explicitly considered the conditions in the aggregate. *Parsons I*, 289 F.R.D. at 523 (considering the conditions of confinement claim "in the aggregate instead of [evaluating] each condition on its own"). Proof of the sufficiency of specific services and practices will lean toward the ultimate conclusion Defendants seek. But even assuming that Defendants were entitled to summary judgment on each individual condition, this does not create the absence of a genuine issue of material fact as to whether the totality of the conditions in the isolation units exposes the inmates to a substantial risk of serious harm, namely a lack of social interaction and environmental stimulation.

The Court is persuaded that *Wilson v. Seiter*, 501 U.S. 294, 305 (1991), lays the groundwork for such a claim, particularly in view of the experts' opinions regarding the cumulative effect of these conditions on the inmates confined in the isolation units (Doc. 967, Ex. 1, Stewart Report at 58 ("Isolated confinement – that is, confinement in a cell for more 22 or more hours each day with limited social interaction and environmental stimulation – can be profoundly damages to mental health even for prisoners with no

known mental illness."); Doc. 968, Ex. 1, Vail Report at 10 ("There is broad consensus in the corrections and mental health community that placement of mentally ill inmates in isolation creates a significant risk of harm."). Their conclusions, at a minimum, create an issue of fact for trial, precluding summary judgment on the Subclass claim.

## VI. Decertification

A district court may decertify a class any time before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(3) ("An order that grants or denies class certification may be altered or amended before final judgment."); Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1785.4 (3d ed.) ("Courts have modified or decertified classes at the outset of pretrial, the completion of discovery, after summary judgment in favor of plaintiff class's injunctive claims, but before awarding damages, at the close of plaintiff class's case-in-chief, and at the completion of the trial on the merits.") (footnotes omitted).

Rule 23 articulates the standard for both certification and decertification. *See Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 479 (C.D. Cal. 2008), *aff'd*, 639 F.3d 942 (9th Cir. 2011) ("In considering the appropriateness of decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met.").

The party seeking decertification bears the burden. *See Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 651 (C.D. Cal. 2000) ("A party seeking class certification bears the burden of demonstrating that the proposed class satisfies the four elements of Rule 23(a), as well as the elements of at least one provision of Rule 23(b). It follows, therefore, that a party seeking decertification of a class should bear the burden of demonstrating that the elements of Rule 23 have not been established.") (citations omitted).

For the reasons discussed above, Defendants have at most disputed the accuracy of the Named Plaintiff's declarations. But they do not otherwise dispute the other evidence underlying class certification. Based on the entirety of the record, and upon consideration of the most recent ADC staffing reports, which create an issue of fact as to whether the prison has adequate staffing, the Court declines to decertify the class at this

- 11 -

time.

## VII. Brislan's Status as a Class Representative

The record reflects that Brislan was released from ADC custody (Doc. 902 at 1). As with Named Plaintiff Parsons, the Court concludes that Brislan is not an adequate class representative and he will be dismissed.

## VIII. Usefulness of the Summary Judgment Motion for Trial Preparation

Both sides have the challenge and the opportunity of proving their case or their response the way they think persuasive. Though summary judgment is denied, Defendants have presented some discrete matters about which there may be no conflicting evidence. Plaintiffs dispute the weight of those matters without disputing their truth.

Defendants may prove up subsidiary facts that they think contribute to their case, and Plaintiffs may dispute the weight of such facts. If subsidiary factual contentions are not controverted with actual evidence at trial, the parties are expected to stipulate in the final pre-trial statement that those facts are unopposed, reserving for later the significance to be given to them. If the Court concludes, even in the course of trial, that either side is putting the other side to proof of substantial matters that are not controverted at trial, the Court may impose appropriate consequences for the waste of the Court's time and of the other party's resources. That may include shortening the trial time previously allotted to the offending party.

## IX. Conclusion

For the reasons stated, Defendants' Motion for Summary Judgment (Docs. 895, sealed at 902) must be denied. While it may be probative that the Named Plaintiffs received adequate medical treatment, it does not establish as a matter of law that ADC's healthcare system is staffed to the constitutional minimums.

**IT IS THEREFORE ORDERED:**

(1) Defendants' Motion for Summary Judgment (Docs. 895, sealed at 902) is **denied.**

(2) Plaintiff Brislan is **dismissed** as a Class Representative.

(3) Plaintiffs' Motion to Strike Defendants' Notice of Supplemental Authority (Doc. 1063) is **denied as moot**.

Dated this 7th day of August, 2014.

_____
Neil V. Wake
United States District Judge