Index of Exhibits to the Declaration of Caroline Mitchell

Exhibit 1:    Excerpts of Individual Named Plaintiffs' Fourth Supplemental Disclosure Statement, pages 1-28

Exhibit 2:    Excerpts of Defendants' Nineteenth Supplemental Disclosure Statement, pages 1-108

# EXHIBIT 1

1
2  Daniel Pochoda (Bar No. 021979)
   James Duff Lyall (Bar No. 330045)*
3  **ACLU FOUNDATION OF ARIZONA**
   3707 North 7th Street, Suite 235
4  Phoenix, Arizona 85013
   Telephone:  (602) 650-1854
5  Email: dpochoda@acluaz.org
           jlyall@acluaz.org
6  *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

7  *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,
   Dustin Brislan, Sonia Rodriguez, Christina Verduzco,
8  Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne
   Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson,
9  and Charlotte Wells, on behalf of themselves and all
   others similarly situated*

10 **[ADDITIONAL COUNSEL LISTED ON**
    **SIGNATURE PAGE]**

11             UNITED STATES DISTRICT COURT

12                 DISTRICT OF ARIZONA

13 | Victor Parsons; Shawn Jensen; Stephen Swartz; | No. CV 12-00601-PHX-NVW |
   | Dustin Brislan; Sonia Rodriguez; Christina | (MEA) |
14 | Verduzco; Jackie Thomas; Jeremy Smith; Robert | |
   | Gamez; Maryanne Chisholm; Desiree Licci; Joseph | |
15 | Hefner; Joshua Polson; and Charlotte Wells, on | **INDIVIDUAL NAMED** |
   | behalf of themselves and all others similarly | **PLAINTIFFS' FOURTH** |
16 | situated; and Arizona Center for Disability Law, | **SUPPLEMENTAL** |
   |   | **DISCLOSURE STATEMENT** |
17 |            Plaintiffs, | |
   | | |
18 |      v. | |
   | | |
19 | Charles Ryan, Director, Arizona Department of | |
   | Corrections; and Richard Pratt, Interim Division | |
20 | Director, Division of Health Services, Arizona | |
   | Department of Corrections, in their official | |
21 | capacities, | |
   | | |
22 |            Defendants. | |

23

24         Pursuant to Fed. R. Civ. P. 26(a)(1), named plaintiffs Victor Parsons; Shawn

25 Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie

26 Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph

27 Hefner; Joshua Polson; Charlotte Wells (collectively, "Prison Plaintiffs"), submit their

28 Fourth Supplemental Disclosure Statement. Plaintiffs reserve the right to continue to

supplement or amend its disclosures in accordance with Rule 26 or court order.

Supplemental text is shown in bolded and italicized font.

I.    **NAMES, ADDRESSES, AND TELEPHONE NUMBERS OF INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION**

A.    **INDIVIDUALS WHO WILL BE CALLED TO TESTIFY**

**Named Plaintiffs**

1.    Victor Parsons, Arizona Department of Corrections ("ADC") Inmate #123589
c/o Caroline Mitchell
Jones Day
555 California St., 26th Floor
San Francisco, CA 94104
(415) 875-5712.

Mr. Parsons is an ADC inmate and named plaintiff.  Mr. Parsons is expected to testify with regard to the factual allegations in the Complaint and the provision of medical, mental health and dental care at ADC.

2.    Shawn Jensen, ADC #032465
c/o Jones Day

Mr. Jensen is an ADC inmate and named plaintiff.  Mr. Jensen is expected to testify with regard to the factual allegations in the Complaint and the provision of medical, mental health and dental care at ADC.

3.    Stephen Swartz, ADC #102486
c/o Jones Day

Mr. Swartz is an ADC inmate and named plaintiff.  Mr. Swartz is expected to testify with regard to the factual allegations in the Complaint, the conditions of confinement in the isolation units, and the provision of medical, mental health and dental care at ADC.

4.    Dustin Brislan, former ADC #164993
c/o Jones Day

Mr. Brislan is a former ADC inmate and named plaintiff.  Mr. Brislan is expected

-2-

to testify with regard to the factual allegations in the Complaint, the conditions of confinement in the isolation units, and the provision of medical, mental health and dental care at ADC.

5.      Sonia Rodriguez, ADC #103830
c/o Jones Day

Ms. Rodriguez is an ADC inmate and named plaintiff.  Ms. Rodriguez is expected to testify with regard to the factual allegations in the Complaint, the conditions of confinement in the isolation units, and the provision of medical, mental health and dental care at ADC.

6.      Christina Verduzco, ADC #205576
c/o Jones Day

Ms. Verduzco is an ADC inmate and named plaintiff.  Ms. Verduzco is expected to testify with regard to the factual allegations in the Complaint, the conditions of confinement in the isolation units, and the provision of medical, mental health and dental care at ADC.

7.      Jackie Thomas, ADC #211267
c/o Jones Day

Mr. Thomas is an ADC inmate and named plaintiff.  Mr. Thomas is expected to testify with regard to the factual allegations in the Complaint, the conditions of confinement in the isolation units, and the provision of medical, mental health and dental care at ADC.

8.      Jeremy Smith, ADC #129438
c/o Jones Day

Mr. Smith is an ADC inmate and named plaintiff.  Mr. Smith is expected to testify with regard to the factual allegations in the Complaint, the conditions of confinement in the isolation units and the provision of medical, mental health and dental care at ADC.

9.      Robert Gamez, ADC #131401
c/o Jones Day

1    Mr. Gamez is an ADC inmate and named plaintiff.  Mr. Gamez is expected to

2    testify with regard to the factual allegations in the Complaint, the conditions of

3    confinement in the isolation units, and the provision of medical, mental health and dental

4    care at ADC.

5        10.    Maryanne Chisholm, ADC #200825
                c/o Jones Day
6

7        Ms. Chisholm is an ADC inmate and named plaintiff.  Ms. Chisholm is expected to

8    testify with regard to the factual allegations in the Complaint and the provision of

9    medical, mental health and dental care at ADC.

10       11.    Desiree Licci, ADC #150051
                c/o Jones Day
11

12       Ms. Licci is an ADC inmate and named plaintiff.  Ms. Licci is expected to testify

13   with regard to the factual allegations in the Complaint and the provision of medical,

14   mental health and dental care at ADC.

15       12.    Joseph Hefner, ADC #203653
                c/o Jones Day
16

17       Mr. Hefner is an ADC inmate and named plaintiff.  Mr. Hefner is expected to

18   testify with regard to the factual allegations in the Complaint and the provision of

19   medical, mental health and dental care at ADC.

20       13.    Joshua Polson, ADC #187716
                c/o Jones Day
21

22       Mr. Polson is an ADC inmate and named plaintiff.  Mr. Polson is expected to

23   testify with regard to the factual allegations in the Complaint, the conditions of

24   confinement in the isolation units, and the provision of medical, mental health and dental

25   care at ADC.

26       14.    Charlotte Wells, ADC #247188
                c/o Jones Day
27

28

Ms. Wells is an ADC inmate and named plaintiff.  Ms. Wells is expected to testify with regard to the factual allegations in the Complaint and the provision of medical, mental health and dental care at ADC.

**Defendants**

15.    Charles Ryan, ADC Director, Defendant
c/o Struck Wieneke & Love, P.L.C.
3100 West Ray Road, Suite 300
Chandler, AZ 85226
(480) 420-1600

Office of the Attorney General, State of Arizona
1275 West Washington Street
Phoenix, AZ 85007-2926
(602) 542-1610

Mr. Ryan is ADC Director and defendant in this action.  Mr. Ryan is expected to testify regarding his knowledge and experience as relevant to any of the claims raised by Plaintiffs in the complaint, the provision of health care to ADC prisoners and any other topic for which Defendants have identified him as having knowledge.

16.    Richard Pratt, ADC Quality/Clinical Program Evaluation Administrator and former Interim Director, Health Services ("HS") Division, Defendant
c/o Struck Wieneke & Love, P.L.C.
3100 West Ray Road, Suite 300
Chandler, AZ 85226
(480) 420-1600

Office of the Attorney General, State of Arizona
1275 West Washington Street
Phoenix, AZ 85007-2926
(602) 542-1610

Mr. Pratt is the current Quality/Clinical Program Evaluation Administrator and former Interim Division Director of Health Services at ADC and a defendant in this action.  Mr. Pratt is expected to testify regarding his knowledge and experience as relevant to any of the claims raised by Plaintiffs in the complaint, the provision of health care to ADC prisoners and any other topic for which Defendants have identified him as having knowledge.

Individual Plaintiffs' Expert Witnesses

The following expert witnesses will testify consistent with the information and opinions set forth in their respective Rule 26 disclosures (including any and all supplemental and rebuttal reports and documents relied on therein):

17.  Dr. Robert L. Cohen
     c/o Jones Day

18.  Dr. Craig Haney
     c/o Jones Day

19.  Dr. Jay D. Shulman
     c/o Jones Day

20.  Dr. Pablo Stewart
     c/o Jones Day

21.  Eldon Vail
     c/o Jones Day

22.  Dr. Todd Randall Wilcox
     c/o Jones Day

23.  Dr. Brie Williams
     c/o Jones Day

Deposed Witnesses

24.  David Robertson, D.O., ADC Medical Program Administrator
     c/o Struck Wieneke & Love, P.L.C.

Dr. Robertson was previously deposed, and plaintiffs may rely on his deposition testimony.  Dr. Robertson is expected to testify regarding ADC's monitoring, supervision, and oversight of medical care provided by Wexford Health and Corizon; the provision of medical care at multiple prisons since his time of employment with ADC; the privatization of health care services, quality assurance and review of health care; Corizon's development of an electronic health records system; and all other topics to which he testified in his deposition. Dr. Robertson is also expected to testify with regard to any other topic for which Defendants have identified him as having knowledge.

25.  William Smallwood, D.D.S.
     c/o Smallwood Prison Dental Services ("SPDS")

Dr. Smallwood was previously deposed, and plaintiffs may  rely on his deposition

testimony with regard to written and unwritten dental policies and procedures; tracking and scheduling of dental appointments at ADC facilities; the capabilities and limitations of SPDS' Correctional Dental Software; quality assurance at ADC facilities, including the methods, personnel, policies, and procedures used to ensure that all dental staff provide timely and effective dental care to inmates; the hiring and credentialing of employees who provide dental care at ADC facilities; reports, evaluations, and statistical data regarding the provision of and need for dental care for inmates; changes to the provision of dental care, whether formal or informal, after March 4, 2013; SPDS' relationship with Corizon and ADC, including SPDS' bid for the dental contract and the degree to which ADC or Corizon is involved with SPDS' activities; and the monitoring and oversight by Corizon or ADC over SPDS' provision of dental care at ADC facilities.

26.     Nicole Taylor, Ph.D.  ADC Mental Health Monitor
        c/o Struck Wieneke & Love, P.L.C.

Dr. Taylor was previously deposed, and plaintiffs may rely on her deposition testimony with regard to ADC's monitoring, supervision, and oversight of mental health care provided by Corizon, as well as the provision of mental health care at multiple prisons since her time of employment with ADC, and all other topics to which she testified in her deposition. Dr. Taylor is also expected to testify with regard to any other topic for which Defendants have identified her as having knowledge.

Others Not Deposed

27.     James Taylor, former ADC Contract Compliance Program Evaluation
        Administrator, Regional Vice President for Corizon
        c/o Corizon Inc.

Mr. Taylor was previously the Contract Compliance Program Evaluation Administrator for ADC and currently is Regional Vice President for Corizon, Inc. Plaintiffs will call him to testify regarding ADC's privatization of health care services, and the compliance of Wexford Health and Corizon Inc. to the terms of the contract.  Mr. Taylor is also expected to testify with regard to his current position and the provision of

health care to ADC prisoners.  Mr. Taylor will testify with regard to any other topic for which Defendants have identified him as having knowledge.

## B.    INDIVIDUALS WHO MAY BE CALLED TO TESTIFY

Deposed Persons

28.    Michael Adu-Tutu, M.D.
       c/o Struck Wieneke & Love, P.L.C.

Dr. Adu-Tutu was previously the Health Services Director and Dental Program Manager for ADC. Dr. Adu-Tutu was previously deposed, and plaintiffs may rely on his testimony with respect the provision of dental care at ADC before his departure from ADC, including the dental policies and procedures.  Plaintiffs may also call him to testify at trial regarding ADC's  provision of health care to prisoners in ADC facilities prior to his departure from ADC.

29.    *Terry Allred, ADC Health Services Contract Monitor, ASPC Lewis*
       *c/o Struck Wieneke & Love, P.L.C.*

*Mr. Allred was previously deposed, and Plaintiffs may rely on his testimony with regard to ADC's monitoring, supervision, and oversight of medical care provided by Corizon at ASPC-Lewis, the provision of medical care at multiple prisons since his time of employment with ADC, and any other topic on which he was deposed or for which Defendants have designated him as having knowledge. Plaintiffs may also call him to testify at trial regarding the provision of health care to ADC prisoners.*

30.    Marlena Bedoya, ADC Health Services Contract Monitor
       c/o Struck Wieneke & Love, P.L.C.

Plaintiffs deposed Ms. Bedoya on September 18, 2013 regarding her current position monitoring Corizon's provision of health care, and may  rely on her deposition testimony.  Plaintiffs may call her to testify at trial regarding the provision of health care to ADC prisoners, and any other topic for which Defendants have identified her as having knowledge.

31.     Kathy Campbell, ADC Statewide Nursing Monitor
        c/o Struck Wieneke & Love, P.L.C.

Plaintiffs deposed Ms. Campbell on September 11, 2013 and September 23, 2013 in the capacity of her current position monitoring Corizon's provision of health care, and may rely on her deposition testimony.  Plaintiffs may call her to testify at trial regarding the provision of health care to ADC prisoners, and any other topic for which Defendants have identified her as having knowledge.

32.     Karen Chu, ADC Dental Program Monitor
        c/o Struck Wieneke & Love, P.L.C.

Dr. Chu was previously deposed, and plaintiffs may rely on her deposition testimony with regard to ADC's monitoring, supervision, and oversight of dental care provided by Corizon and SPDS.  Plaintiffs may call her to testify at trial regarding the provision of dental care to ADC prisoners, and any other topic for which Defendants have identified her as having knowledge.

33.     Daniel Conn, Wexford Executive Vice President & Chief Operating Officer
        c/o Wexford Health, Inc.

Plaintiffs deposed Mr. Conn on May 20, 2013 pursuant to the 30(b)(6) deposition subpoena issued to Wexford Health, Inc., regarding the provision of health care to ADC prisoners by Wexford; the termination of the agreement between Wexford and the ADC to provide health care for prisoners; and the cost of complying with the contract between Wexford and the ADC; any Confidentiality agreements, actual or contemplated, between Wexford and the ADC.  Plaintiffs may rely upon his deposition testimony, and may call him to testify at trial.

34.     Dr. Tracy L. Crews, M.D., Former Psychiatrist at ASPC-Perryville
        444 N. 44th Street, Suite 400
        Phoenix, AX 85008

Dr. Crews was previously deposed, and plaintiffs may rely on her deposition testimony with regard to ADC's provision of mental health care to prisoners at ASPC-

Perryville and other prisons.

35.     Carmello Echeveirra, M.D., Wexford Medical Director at ASPC-Lewis
        c/o Wexford Health, Inc.

Dr. Echeverria was previously deposed, and plaintiffs may rely on his deposition testimony with regard to ADC's provision of medical care to prisoners at ASPC-Lewis. Based upon Plaintiffs' understanding, Dr. Echeverria is no longer employed at ASPC-Lewis, but he has not updated his contact information with the Arizona Medical Board. Plaintiffs anticipate that Wexford, Health, Inc. would be able to assist in locating him.

36.     Neil Fisher, M.D. former Wexford Clinical Medical Director
        c/o Wexford Health, Inc.

Plaintiffs deposed Dr. Fisher on October 8, 2013 pursuant to the 30(b)(6) deposition subpoena issued to Wexford Health, Inc., regarding the provision of health care to ADC prisoners by Wexford, and any other topic for which Wexford has designated him the person at Wexford most knowledgeable on the topics.  Plaintiffs may rely upon his deposition testimony, and may call him to testify at trial regarding the provision of health care to ADC prisoners.

37.     ***Troy Evans, ADC Health Services Contract Monitor, ASPC-Safford***
        ***c/o Struck Wieneke & Love, P.L.C.***

***Mr. Evans was previously deposed, and Plaintiffs may rely on his testimony with regard to ADC's monitoring, supervision, and oversight of medical care provided by Corizon at ASPC-Safford, the provision of medical care at multiple prisons since his time of employment with ADC, and any other topic on which he was deposed or for which Defendants have designated him as having knowledge. Plaintiffs may also call him to testify at trial regarding the provision of health care to ADC prisoners.***

38.     Greg Fizer, ADC Deputy Warden of Central Unit
        c/o Struck Wieneke & Love, P.L.C.

Mr. Fizer was deposed, and Plaintiffs may rely on his deposition testimony

regarding policies and procedures and implementation of said policies and procedures for: placement in, retention in, and release from isolation units: out-of-cell time in the isolation units, including but not limited to outdoor exercise; increases and decreases in prisoner privileges while housed in isolation; the provision of food to prisoners in isolation units, monitoring the effects of conditions of confinement in isolation units on prisoners' mental and physical health; the placement of prisoners classified as "seriously mentally ill," "severely mentally ill," MH-3 through MH-5, or any other mental health classification employed by the ADC or Corizon while housed in isolation units; suicide watch procedures in the isolation units. Mr. Fizer's testimony may also include conditions of confinement in the isolation units, including programming available in the units such as mental health, counseling, employment, education, drug treatment, and rehabilitative services; training provided to correctional staff working in isolation units; required correctional staff levels for isolation units, including staffing schedules, posts and job duties. Plaintiffs may call Mr. Fizer to testify at trial regarding the isolation units, and any other topic for which Defendants have identified him as having knowledge.

39.    Arthur Gross, ADC Assistant Director of Monitoring Bureau
       c/o Struck Wieneke & Love, P.L.C.

Plaintiffs deposed Mr. Gross on September 9, 2013 regarding his current position with ADC monitoring Corizon's compliance with the contract to provide all health care, and may rely on his deposition testimony. Plaintiffs may call him to testify at trial regarding Corizon's provision of health care to ADC prisoners, and any other topic for which Defendants have identified him as having knowledge.

40.    **Mark Haldane, ADC Health Services Contract Monitor, ASPC-Perryville**
       **c/o Struck Wieneke & Love, P.L.C.**

**Mr. Haldane was previously deposed, and Plaintiffs may rely on his testimony with regard to ADC's monitoring, supervision, and oversight of medical care provided by Corizon at ASPC-Perryville, the provision of medical care at multiple prisons since**

-11-

1   *his time of employment with ADC, and any other topic on which he was deposed or for*

2   *which Defendants have identified him as having knowledge.  Plaintiffs may also call*

3   *him to testify at trial regarding the provision of health care to ADC prisoners.*

4       41.    Brian Hanstad, Dental Program Manager
5              c/o Corizon Health

6       Dr. Hanstad is one of the Dental Program Managers for the State of Arizona.  Dr.

7   Hanstad is expected to testify about the provision of dental care at ADC facilities; written

8   and unwritten dental policies and procedures, including the dental triaging of inmates for

9   emergent, urgent, or routine dental care, processing of HNRs, scheduling of appointments,

10  intake, staffing, and use of outside dental providers; tracking and scheduling of dental

11  appointments at ADC facilities; the capabilities and limitations of SPDS' Correctional

12  Dental Software; quality assurance at ADC facilities, including the methods, personnel,

13  policies, and procedures used to ensure that all dental staff provide timely and effective

14  dental care to inmates; the hiring and credentialing of employees who provide dental care

15  at ADC facilities; reports, evaluations, and statistical data regarding the provision of and

16  need for dental care for inmates; and changes to the provision of dental care, whether

17  formal or informal, after March 4, 2013.

18      42.    Vanessa Headstream, ADC Health Services Contract Monitor, Nursing Monitor
19             c/o Struck Wieneke & Love, P.L.C.

20      Ms. Headstream was previously deposed, and plaintiffs may rely on her deposition

21  testimony with regard to her monitoring, supervision, and oversight of nursing care at

22  ASPC-Perryville and ASPC-Lewis, as well as the provision of medical care at multiple

23  prisons since her time of employment with ADC, and all other topics to which she

24  testified in her deposition.  Plaintiffs may call her to testify at trial regarding the provision

25  of health care to ADC prisoners, and any other topic for which Defendants have identified

26  her as having knowledge.

27      43.    Karen Ingram, ADC Senior Procurement Specialist
28             c/o Struck Wieneke & Love, P.L.C.

Ms. Ingram was previously deposed, and plaintiffs may rely on her deposition testimony with regard to the evaluation of each proposal submitted to ADC in response to Solicitation No. ADOC12-00001105, privatization for all correctional healthcare.

44.   ***Anthony Medel, ADC Health Services Contract Monitor, ASPC Yuma***
       ***c/o Struck Weineke & Love P.L.C.***

*Mr. Medel was previously deposed, and Plaintiffs may rely on his testimony with regard to ADC's monitoring, supervision, and oversight of medical care provided by Corizon at ASPC-Yuma, the provision of medical care at multiple prisons since his time of employment with ADC, and any other topic on which he was deposed or for which Defendants have identified him as having knowledge.  Plaintiffs may also call him to testify at trial regarding the provision of health care to ADC prisoners.*

45.   ***Jen Mielke-Fontaine, ADC Health Services Contract Monitor, ASPC-***
       ***Florence; previously Audit Nurse Contract Monitor, ASPC Eyman and***
       ***Florence***
       ***c/o Struck Wieneke & Love, P.L.C.***

*Ms. Mielke-Fontaine was previously deposed, and Plaintiffs may rely on her testimony with regard to ADC's monitoring, supervision, and oversight of medical care provided by Corizon at ASPC-Eyman and Florence, the provision of medical care at multiple prisons since her time of employment with ADC, and any other topic on which she was deposed or for which Defendants have identified her as having knowledge. Plaintiffs may also call her to testify at trial regarding the provision of health care to ADC prisoners.*

46.   ***John Mitchell, ADC Health Services Contract Monitor, ASPC-Winslow***
       ***c/o Struck Wieneke & Love, P.L.C.***

*Mr. Mitchell was previously deposed, and Plaintiffs may rely on his testimony with regard to ADC's monitoring, supervision, and oversight of medical care provided by Corizon at ASPC-Winslow, the provision of medical care at multiple prisons since his time of employment with ADC, and any other topic on which he was deposed or for*

*which Defendants have identified him as having knowledge. Plaintiffs may also call*

*him to testify at trial regarding the provision of health care to ADC prisoners.*

47.     Karen Mullenix Wexford Project Operations Director and former Director of Operations in Arizona
c/o Wexford Health, Inc.

Plaintiffs deposed Ms. Mullenix on May 21, 2013 pursuant to the 30(b)(6) deposition subpoena issued to Wexford Health, Inc., regarding the provision of health care to ADC prisoners by Wexford; concerns Wexford had about performance of the contract with ADC to provide health care for prisoners; barriers, obstacles, or difficulties encountered by Wexford in providing healthcare for ADC prisoners and any other topic for which Wexford has designated her the person at Wexford most knowledgeable on the topics. Plaintiffs may rely upon her deposition testimony, and may call her to testify at trial.

48.     ***Juliet Respicio-Moriarty, ADC Inmate Grievance Appeals Investigator***
***c/o Struck Wieneke & Love, P.L.C.***

***Ms. Respicio-Moriarty was previously deposed, and plaintiffs may rely on her testimony with regard to ADC's monitoring, supervision, and oversight of Corizon's processing of inmate grievances and appeals regarding health care, ADC's role in investigating the allegations of inadequate health care made in appeals and grievances, and any other topic on which she was deposed or for which Defendants have identified her as having knowledge. Plaintiffs may also call her to testify at trial.***

49.     Richard Rowe, M.D., ADC Medical Program Manager
c/o Struck Wieneke & Love, P.L.C.

Dr. Rowe was previously deposed, and plaintiffs may rely on his deposition testimony with regard to ADC's provision of medical care statewide at the prisons, and all other topics to which he was designated by Defendants as responsive to the 30(b)(6) request and to which he testified in his deposition. Plaintiffs may call him to testify at trial regarding the provision of health care to ADC prisoners.

50.     Jeffrey Sharp, M.D., ASPC-Perryville
        c/o Corizon Health

Dr. Sharp was previously deposed, and plaintiffs may rely on his deposition testimony with regard to ADC's provision of medical care at multiple prisons across the state, and all other topics to which he testified in his deposition.  Plaintiffs may call him to testify at trial regarding the provision of health care to ADC prisoners.

51.     Ben Shaw, Corizon Mental Health Statewide Director
        c/o Corizon Health

Dr. Shaw was previously deposed, and plaintiffs may rely on his deposition testimony with regard to ADC's provision of mental health care statewide at the prisons, his relevant knowledge and experiences as they relate to Plaintiffs' claims and all other topics to which he was designated by Defendants as responsive to the 30(b)(6) request and to which he testified in his deposition.

52.     Sam Tardibuono, ADC Douglas Monitor
        c/o Struck Wieneke & Love, P.L.C.

Plaintiffs deposed Mr. Tardibuono on September 19, 2013 in the capacity of his current position monitoring Corizon's provision of health care, and may rely on his deposition testimony.  Plaintiffs may call him to testify at trial regarding the provision of health care to ADC prisoners, and any other topic for which Defendants have identified him as having knowledge.

53.     *Jonathon Trethewey, ADC #137818*
        *c/o Jones Day*

*Mr. Trethewey is an ADC inmate and class member.  He was deposed on April 4, 2013 to preserve his testimony for trial.  Mr. Trethewey's deposition testimony may be used with regard to the provision of health care provided to him while in the custody of ADC and/or the use of isolation and the conditions of confinement while in isolation. Mr. Trethewey may also be called to testify at trial regarding the topics on which he was deposed.*

54.    Helena Valenzuela, ADC Health Services Contract Monitor ASPC Phoenix
c/o Struck Wieneke & Love, P.L.C.

Ms. Valenzuela was previously deposed, and plaintiffs may rely on her deposition testimony with regard to her monitoring, supervision, and oversight of nursing care at ASPC-Phoenix, as well as the provision of medical care at multiple prisons since her time of employment with ADC, and all other topics to which she testified in her deposition. Plaintiffs may call her to testify at trial regarding the provision of health care to ADC prisoners, and any other topic for which Defendants have identified him as having knowledge.

55.    Carlos Weekly, Dental Director ASPC-Florence
C/o Corizon Health

Dr. Weekly is one of the Dental Program Managers for the State of Arizona.  Dr. Weekly was previously deposed, and plaintiffs may rely on his deposition testimony. In addition to his deposition testimony, Dr. Weekly is expected to testify about the provision of dental care at ADC facilities; written and unwritten dental policies and procedures, including the dental triaging of inmates for emergent, urgent, or routine dental care, processing of HNRs, scheduling of appointments, intake, staffing, and use of outside dental providers; tracking and scheduling of dental appointments at ADC facilities; the capabilities and limitations of SPDS' Correctional Dental Software; quality assurance at ADC facilities, including the methods, personnel, policies, and procedures used to ensure that all dental staff provide timely and effective dental care to inmates; the hiring and credentialing of employees who provide dental care at ADC facilities; reports, evaluations, and statistical data regarding the provision of and need for dental care for inmates; and changes to the provision of dental care, whether formal or informal, after March 4, 2013.

56.    Winfred Williams, Arizona Chief Medical Officer
c/o Corizon, Inc.

Plaintiffs deposed Mr. Williams on October 10, 2013 regarding his current position

1  as Corizon's Chief Medical Officer for the State of Arizona, and may rely on his

2  deposition testimony.  Plaintiffs may call him to testify at trial regarding Corizon's

3  provision of health care to ADC prisoners, and any other topic for which Defendants have

4  identified him as having knowledge.

5         57.    Martin Winland, ADC Pharmacy Monitor
               c/o Struck Wieneke & Love, P.L.C.
6

7         Plaintiffs deposed Mr. Winland on September 18, 2013 in the capacity of his

8  current position monitoring Corizon's provision of pharmacy services, and may rely on

9  his deposition testimony.  Plaintiffs may call him to testify at trial regarding the provision

10 of pharmacy services to ADC prisoners, and any other topic for which Defendants have

11 identified him as having knowledge.

12 Others Not Deposed

13      ~~Terry Allred, ADC Health Services Contract Monitor, ASPC Lewis~~
        ~~c/o Struck Wieneke & Love, P.L.C.~~
14

15      ~~Mr. Allred is currently ADC's monitor for ASPC-Lewis, and Plaintiffs may call~~

16 ~~him to testify regarding ADC's monitoring, supervision, and oversight of medical care~~

17 ~~provided by Corizon at ASPC-Lewis, the provision of medical care at multiple prisons~~

18 ~~since his time of employment with ADC, and any other topic for which Defendants have~~

19 ~~identified him as having knowledge. Plaintiffs may call him to testify at trial regarding the~~

20 ~~provision of health care to ADC prisoners.~~

21        58.    Patricia Arroyo, ADC Audit Nurse
               c/o Struck Wieneke & Love, P.L.C.
22

23        Plaintiffs may call Ms. Arroyo to testify regarding ADC's monitoring, supervision,

24 and oversight of nursing care provided by Corizon, the provision of nursing care at

25 multiple prisons since her time of employment with ADC, and any other topic for which

26 Defendants have identified her as having knowledge.  Plaintiffs may call her to testify at

27 trial regarding the provision of health care to ADC prisoners.

28

59.     Stephen Bender, ADC Private Prisons Contract Monitor
        c/o Struck Wieneke & Love, P.L.C.

Plaintiffs may call Mr. Bender to testify regarding ADC's monitoring, oversight, and supervision of Corizon's provision of mental health care at ADC prisons, Corizon's compliance with the privatization contract, and any other topics, the provision of health care to ADC prisoners and any other topic for which Defendants have identified him as having knowledge.

60.     Karyn Christie, Safford/Ft. Grant Monitor
        c/o Struck Wieneke & Love, P.L.C.

Plaintiffs may call Ms. Christie regarding her recent employment with ADC monitoring Corizon's provision of health care and the provision of health care to ADC prisoners.

61.     Trudy Dumkrieger, ADC Audit Nurse, Tucson
        c/o Struck Wieneke & Love, P.L.C.

Plaintiffs may call Ms. Dumkrieger to testify regarding ADC's monitoring, supervision, and oversight of nursing care provided by Corizon at ASPC-Tucson and the provision of nursing care at multiple prisons since her time of employment with ADC, and any other topic for which Defendants have identified her as having knowledge.  Plaintiffs may call her to testify at trial regarding the provision of health care to ADC prisoners.

~~Troy Evans, ADC Health Services Contract Monitor, ASPC-Safford~~
~~c/o Struck Wieneke & Love, P.L.C.~~

~~Mr. Evans is currently ADC's monitor for ASPC-Safford, and Plaintiffs may call him to testify regarding ADC's monitoring, supervision, and oversight of medical care provided by Corizon at ASPC-Safford, the provision of medical care at multiple prisons since his time of employment with ADC, and any other topic for which Defendants have identified him as having knowledge.  Plaintiffs may call him to testify at trial regarding the provision of health care to ADC prisoners.~~

~~Mark Haldane, ADC Health Services Contract Monitor, ASPC-Perryville~~

1    ~~c/o Struck Wieneke & Love, P.L.C.~~

2    ~~Mr. Haldane is currently ADC's monitor for ASPC-Perryville, and Plaintiffs may~~

3    ~~call him to testify regarding ADC's monitoring, supervision, and oversight of medical~~

4    ~~care provided by Corizon at ASPC-Perryville, the provision of medical care at multiple~~

5    ~~prisons since his time of employment with ADC, and any other topic for which~~

6    ~~Defendants have identified him as having knowledge. Plaintiffs may call him to testify at~~

7    ~~trial regarding the provision of health care to ADC prisoners.~~

8        62.    Kevin Lewis, Medical Director at ASPC-Tucson
                c/o Corizon Health
9

10       Plaintiffs may call Mr. Lewis to testify regarding his current position as Corizon's

11   Medical Director for ASPC-Tucson and Corizon's provision of health care to ADC

12   prisoners, and any other topic for which Defendants have identified him as having

13   knowledge.

14       ~~Anthony Medel, ADC Health Services Contract Monitor, ASPC Yuma~~
         ~~c/o Struck Wieneke & Love P.L.C.~~
15

16   ~~Mr. Medel is currently ADC's monitor for ASPC-Yuma, and Plaintiffs may call~~

17   ~~him to testify regarding ADC's monitoring, supervision, and oversight of medical care~~

18   ~~provided by Corizon at ASPC-Yuma, the provision of medical care at multiple prisons~~

19   ~~since his time of employment with ADC, and any other topic for which Defendants have~~

20   ~~identified him as having knowledge. Plaintiffs may call him to testify at trial regarding~~

21   ~~the provision of health care to ADC prisoners.~~

22       63.    Donna Mendoza, ADC Audit Nurse, Lewis and Perryville
                c/o Struck Wieneke & Love, P.L.C.
23

24       Ms. Mendoza is currently ADC's audit nurse for ASPC-Lewis and Perryville, and

25   Plaintiffs may call her to testify regarding ADC's monitoring, supervision, and oversight

26   of medical and nursing care provided by Corizon at ASPC-Lewis and Perryville, the

27   provision of nursing care at multiple prisons since her time of employment with ADC, and

28

any other topic for which Defendants have identified her as having knowledge.  Plaintiffs may call her to testify at trial regarding the provision of health care to ADC prisoners.

~~Jen Mielke-Fontaine, ADC Health Services Contract Monitor, ASPC-Florence; previously Audit Nurse Contract Monitor, ASPC Eyman and Florence c/o Struck Wieneke & Love, P.L.C.~~

~~Ms. Mielke-Fontaine is currently ADC's monitor for ASPC-Florence, and previously was an audit nurse for ASPC-Eyman and Florence. Plaintiffs may call her to testify regarding ADC's monitoring, supervision, and oversight of medical care provided by Corizon at ASPC-Eyman and Florence, the provision of medical care at multiple prisons since her time of employment with ADC, and any other topic for which Defendants have identified her as having knowledge.  Plaintiffs may call her to testify at trial regarding the provision of health care to ADC prisoners.~~

~~John Mitchell, ADC Health Services Contract Monitor, ASPC-Winslow c/o Struck Wieneke & Love, P.L.C.~~

~~Mr. Mitchell is currently ADC's monitor for ASPC-Winslow, and Plaintiffs may call him to testify regarding ADC's monitoring, supervision, and oversight of medical care provided by Corizon at ASPC-Winslow, the provision of medical care at multiple prisons since his time of employment with ADC, and any other topic for which Defendants have identified him as having knowledge.  Plaintiffs may call him to testify at trial regarding the provision of health care to ADC prisoners.~~

64.    Matthew Musson, ADC Health Services Contract Monitor, ASPC-Eyman
        c/o Struck Wieneke & Love, P.L.C.

Mr. Musson is currently ADC's monitor for ASPC-Eyman, and Plaintiffs may call him to testify regarding ADC's monitoring, supervision, and oversight of medical care provided by Corizon at ASPC-Eyman, the provision of medical care at multiple prisons since his time of employment with ADC, and any other topic for which Defendants have identified him as having knowledge.  Plaintiffs may call him to testify at trial regarding the provision of health care to ADC prisoners.

65.   Joe Profiri, ADC Director of Contract Beds
      c/o Struck Wieneke & Love, P.L.C.

Plaintiffs may call Mr. Profiri to testify regarding his current position as the Director of all Contract Beds, including but not limited to the compliance of Wexford Health Inc. and Corizon Inc. with the terms of the contract to privatize all health care, the provision of health care to ADC prisoners, and any other topic for which Defendants have identified him as having knowledge.

~~Juliet Respicio-Moriarty, ADC Inmate Grievance Appeals Investigator~~
~~c/o Struck Wieneke & Love, P.L.C.~~

~~Plaintiffs may call her to testify regarding ADC's monitoring, supervision, and oversight of Corizon's processing of inmate grievances and appeals regarding health care, ADC's role in investigating the allegations of inadequate health care made in appeals and grievances, and any other topic for which Defendants have identified her as having knowledge.~~

66.   Christy Somner, Regional Director of Nursing
      c/o Corizon Health

Plaintiffs may call Ms. Somner to testify regarding her current position as Corizon's Director of Nursing for the State of Arizona and Corizon's provision of nursing care to ADC prisoners.

67.   Zoran Vukcevic, Florence Medical Director
      c/o Corizon Health

Plaintiffs may call Mr. Vukcevic to testify regarding his current position as Corizon's Medical Director for ASPC-Florence and Corizon's provision of health care to ADC prisoners, and any other topic for which Defendants have identified him as having knowledge.

68.   SPDS dental staff working in ADC facilities.

Such dental staff may testify about written and unwritten dental policies and

procedures, including the dental triaging of inmates for emergent, urgent, or routine dental care, processing of HNRs, scheduling of appointments, intake, staffing, and use of outside dental providers; tracking and scheduling of dental appointments at ADC facilities; the capabilities and limitations of SPDS' Correctional Dental Software; quality assurance at ADC facilities, including the methods, personnel, policies, and procedures used to ensure that all dental staff provide timely and effective dental care to inmates; and changes to the provision of dental care, whether formal or informal, after March 4, 2013.

69.     Employees of Corizon or ADC with knowledge about the provision of medical, dental or mental health care at ADC facilities.

These witnesses may be called to testify about the actual provision of health care, including any informal policies, procedures, or practices.  As Plaintiffs identify such persons, they will supplement their disclosure statements accordingly.

70.     Designated 30(b)(6) witnesses regarding conditions of confinement in the isolation units

Plaintiffs plan to depose Defendants designated 30(b)(6 witnesses regarding conditions of confinement in the isolation units on September 17 & 18, 2013 and may rely on these witness' deposition testimony. Plaintiffs may also call these witnesses to testify at trial regarding policies, procedures and practices for:  placement in, retention in, and release from isolation units: out-of-cell time in the isolation units, including but not limited to outdoor exercise; increases and decreases in prisoner privileges while housed in isolation; the provision of food to prisoners in isolation units, including but not limited to schedules for delivery of food; deviations from such schedules; menus; and nutritional analyses of menus and implementation of said policies and procedures; monitoring the effects of conditions of confinement in isolation units on prisoners' mental and physical health; the use of force or restraint by ADC staff on prisoners on suicide watch, taking psychotropic medications, or prisoners classified as "seriously mentally ill," "severely mentally ill," MH-3 through MH-5, or any other mental health classification employed by the ADC or Corizon while housed in isolation units.  The witnesses may also be asked to testify about conditions of confinement in the isolation units; including programming

available in the units, including but not limited to mental health, counseling, employment, education, drug treatment, and rehabilitative services; training provided to correctional staff working in isolation units; required correctional staff levels for isolation units, including staffing schedules, posts and job duties.  These witnesses may further be called to testify regarding policies, procedures, and practices for: health care staff monitoring the effects of conditions of confinement in isolation on prisoners' mental and physical health; suicide watch and suicide prevention in isolation units; the referral and transfer of prisoners from isolation units to inpatient mental health facilities, whether operated by the ADC or some other entity; the training provided to health care staff working with prisoners in the isolation units; the involvement of health care staff in the use of force or restraint by ADC staff on prisoner on suicide watch, taking psychotropic medications, or classified as "seriously mentally ill," "severely mentally ill," MH-3 through MH-5, or any other mental health classification employed by the ADC or Corizon while housed in isolation units; the mental health programs available to prisoners in each isolation unit, including but not limited to, group counseling, one-to-one counseling, jobs, and increased recreational and congregate activities;  the provision of health care to prisoners in isolation units;  the provision of health care to prisoners classified as "seriously mentally ill," "severely mentally ill," MH-1 through MH-5, or any other mental health classification employed by the ADC or Corizon while housed in isolation units.  Plaintiffs may also call these witnesses to testify at trial regarding any other topic for which Defendants have identified him or her as having knowledge.

71.     Current and former ADC prisoners with knowledge of the provision of health care at ADC facilities and/or conditions of confinement in the isolation units.

~~Plaintiffs will supplement  this list at a later date.~~

The following witnesses (##~~71-92~~ *72-93*) may be called to testify about their experiences regarding the actual provision of health care in ADC, ADC's use of isolation and conditions of confinement in the isolation units, specific ADC policies and procedures related to isolation units and the implementation of said policies and procedures in specific isolation units, and any other topic for which Defendants have identified him or

her as having knowledge.  As Plaintiffs identify such persons, Plaintiffs will supplement their disclosure statements accordingly.

72.   Gerald Thompson, Deputy Warden, ASPC-Eyman-SMU I
       c/o Struck Wieneke & Love, P.L.C.

73.   Lacy Scott, Deputy Warden, ASPC-Perryville-Lumley
       c/o Struck Wieneke & Love, P.L.C.

74.   Terri Savinen, Associate Deputy Warden, ASPC-Eyman-SMU I
       c/o Struck Wieneke & Love, P.L.C.

75.   Stephen Morris, Deputy Warden, ASPC-Eyman-Browning Unit
       c/o Struck Wieneke & Love, P.L.C.

76.   Antonio Barrios, Deputy Warden, ASPC-Eyman-Browning Unit
       c/o Struck Wieneke & Love, P.L.C.

77.   Jack Heet, Assoc. Deputy Warden, ASPC-Eyman-Browning Unit
       c/o Struck Wieneke & Love, P.L.C.

78.   Lance Hetmer, Warden, ASPC- Florence
       c/o Struck Wieneke & Love, P.L.C.

79.   Amy Barnes, Assoc. Deputy Warden, ASPC-Florence-Central Unit
       c/o Struck Wieneke & Love, P.L.C.

80.   Geralynn Woods, Assoc. Deputy Warden, ASPC-Florence-Central
       c/o Struck Wieneke & Love, P.L.C.

81.   Lacy Scott, Deputy Warden, ASPC-Perryville-Lumley
       c/o Struck Wieneke & Love, P.L.C.

82.   Carol Ortiz, Assoc. Deputy Warden, ASPC-Perryville-Lumly
       c/o Struck Wieneke & Love, P.L.C.

83.   Megan Muse, Deputy Warden, ASPC-Phoenix-Alhambra/Flamenco Unit
       c/o Struck Wieneke & Love, P.L.C.

84.   Travis Scott, Assoc. Deputy Warden, ASPC-Phoenix Alhambra/Flamenco Unit
       c/o Struck Wieneke & Love, P.L.C.

85.   Jeff Hood, ADC Deputy Director
       c/o Struck Wieneke & Love, P.L.C.

86.   Ernest Trujillo, ADC Southern Regions Operations Director (SROD)
       c/o Struck Wieneke & Love, P.L.C.

87.   Carson McWilliams, ADC Northern Region Operations Director (NROD)
       c/o Struck Wieneke & Love, P.L.C.

88.   Ron Credio, Warden, ASPC-Eyman
       c/o Struck Wieneke & Love, P.L.C.

89.    [first name unkown] Munoz, Assistant Deputy Warden, ASPC-Eyman
       c/o Struck Wieneke & Love P.L.C.

90.    Judy Frigo, Warden, ASPC-Perryville
       c/o Struck Wieneke & Love, P.L.C.

91.    Angelo Daniels, Deputy Warden of Security Operations
       c/o Struck Wieneke & Love P.L.C.

92.    Julie Jackson, Deputy Warden, ASPC-Florence
       c/o Struck Wieneke & Love, P.L.C.

93.    James O'Neil, DWOP, ASPC-Perryville
       c/o Struck Wieneke & Love, P.L.C.

94.    Rhonda Jensen
       2403 W. Rancho Dr.
       Phoenix, AZ 85015
       (520) 310-9805

Ms. Jensen may be called to testify regarding her knowledge of the provision of

health care to her husband, named plaintiff Shawn Jensen, and her efforts and interactions

with ADC staff to have him provided care.  Ms. Jensen may also be called to testify

regarding her knowledge of the provision of health care to other prisoners she knows.

95.    Michelle Lependorf
        81 Westcott Road
       Princeton, NJ 08540
       (609) 924-4483

Ms. Lependorf may be called to testify regarding her knowledge of the provision of

health care to her brother, Ferdinand Dix, who died while in custody of ADC.

96.    Caroline Isaacs
       American Friends Service Committee
       103 N. Park Ave., Ste. 111
       Tucson, AZ 85719
       (520) 623-9141

Ms. Isaacs may be called to testify regarding her knowledge of the provision of

health care at ADC facilities, ADC's use of isolation, and the conditions of confinement in

isolation.

97.    Lynn Nau
       c/o Faith Lutheran Church
       801 E. Camelback Rd.

Phoenix, AZ 85012, (602) 264-0015

Ms. Nau may be called to testify regarding her knowledge of the provision of health care at ADC facilities, ADC's use of isolation, and the conditions of confinement in isolation.

98.   Margaret Plews
      Arizona Prison Watch
      P.O. Box 20494
      Phoenix, AZ 85036
      (480) 580-6807

Ms. Plews may be called to testify regarding her knowledge of the provision of health care at ADC facilities, ADC's use of isolation, and the conditions of confinement in isolation.

99.   Doris Schartmueller
      2213 S. Highland Mesa Rd.
      Flagstaff, AZ, 86001
      (520) 256-7576.

Ms. Schartmueller may be called to testify regarding her knowledge of the provision of health care to her spouse, David Wiser, #153309, her efforts and interactions with ADC staff to have him provided care, and his ultimate death.  Ms. Schartmueller may also be called to testify regarding her knowledge of the provision of health care to other prisoners she knows.

100.   *Robert Murray, ADC #94261*
       *ASPC Florence - Central Medical Unit*

*Mr. Murray is currently incarcerated at ASPC Florence.  Mr. Murray may be called to testify regarding the provision of health care provided to him while in the custody of ADC and/or the use of isolation and the conditions of confinement while in isolation.*

101.   *Dean Vocke, former ADC #211077*
       *345 Lakewood Drive*
       *Antioch, IL, 60002*
       *(520) 494-4022*

1
2
3
4

*Mr. Vocke was previously incarcerated at ASPC Winslow and was granted*
*clemency on October 31, 2013.  Mr. Vocke may be called to testify regarding the*
*provision of health care provided to him while in the custody of ADC and/or the use of*
*isolation and the conditions of confinement while in isolation.*

5
6
7

   102.   *Laurie Vocke*
          *345 Lakewood Drive*
          *Antioch, IL, 60002*
          *(520) 494-4022*

8
9
10

*Ms. Vocke may be called to testify regarding her knowledge of the provision of*
*health care to her spouse, Dean Vocke, #211077 and her efforts to have her spouse*
*provided care.*

11
12
13

   103.   *Mark Dehe*
          *37199 Bosley Street*
          *Indio, CA 92203*
          *(760) 831-2931*

14
15
16

*Mr. Dehe may be called to testify regarding his knowledge of the provision of*
*health care to his father, Manfred Dehe, #269783 and his efforts to have his father*
*provided care.*

17
18
19

   104.   *Cassie Rogers*
          *5374 Golden Cascade Drive*
          *Dublin, OH 43016*
          *(602) 710-7991*

20
21
22

*Ms. Rogers may be called to testify regarding her knowledge of the provision of*
*health care to her mother, Gloria Rogers, #085040 and her efforts to have her mother*
*provided care, and her mother's ultimate death while in custody of ADC.*

23
24
25

   105.   *Cody Huggins*
          *1382 N. 87th Pl.*
          *Scottsdale, AZ 85257*
          *(480) 510-0471*

26
27

*Mr. Huggins may be called to testify regarding his knowledge of the provision of*
*health care to his father, Glen Huggins,  #085040, his efforts to have his father*

28

*provided care, and his father's ultimate death shortly after an imminent danger*

*(medical parole) release from ADC custody.*

106. ***Jo Ann Lassell***
***1455 E. Jasper Dr.***
***Chandler, AZ 85225***
***(480) 272-1056***

*Ms. Lassell may be called to testify regarding her knowledge of the provision of health care to her brother, Matthew Putnam, #255310, her efforts to have her brother provided care and Mr. Putnam's ultimate death while in custody of ADC.*

107. All Witnesses Identified *or Produced* by ~~Defendants~~ *ADC or Corizon*.

108. ***Any additional witnesses that come to be known to Plaintiffs as a result of a critical health situation. Such names shall be supplemented if, and when, made known to Plaintiffs pursuant to Federal Rule of Civil Procedure 26(e) at a later date.***

109. ***Any individuals that voluntarily furnish information relevant to Plaintiff's case, consistent with the Court's Order on Plaintiff's Pending Motion for an Order Authorizing Ex Parte Communications with Former Employees of Defendants and their Agents (ECF No. 981). Such names shall be supplemented if, and when, made known to Plaintiffs pursuant to Federal Rule of Civil Procedure 26(e) at a later date.***

110. ***Any additional witnesses that come to be known to Plaintiffs as a result of the limited ongoing discovery. Such names shall be supplemented if, and when, made known to Plaintiffs pursuant to Federal Rule of Civil Procedure 26(e) at a later date.***

## II.   A COPY OF OR A DESCRIPTION BY CATEGORY AND LOCATION OF ALL DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND TANGIBLE THINGS THAT PLAINTIFFS MAY USE TO SUPPORT THEIR CLAIMS OR DEFENSES

*The discovery period in this matter has largely closed and the record is nearly complete. Defendants have been furnished with copies and/or descriptions by category and location of all documents, electronically stored information, and tangible things that Plaintiffs may use to support their claims. This includes all documents, electronically stored information, and tangible things disclosed in Plaintiffs' previous disclosure statements, as well as all documents, electronically stored information, and tangible things made known to Defendants during the pendency of this litigation,*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  June 27, 2014

**JONES DAY**

By:  /s/ Caroline Mitchell
Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:     cnmitchell@jonesday.com

aamiri@jonesday.com

*Admitted *pro hac vice*

Daniel Pochoda (Bar No. 021979)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF
ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:     dpochoda@acluaz.org
jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct.
R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Warren George (Cal. 53588)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:     dspecter@prisonlaw.com
ahardy@prisonlaw.com
snorman@prisonlaw.com
ckendrick@prisonlaw.com
wgeorge@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)*
**ACLU NATIONAL PRISON
PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@npp-aclu.org
           afettig@npp-aclu.org
           aquereshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted
 in DC; practice limited to federal
 courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
Jerica L. Peters (Bar No. 027356)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:     dbarr@perkinscoie.com
           agerlicher@perkinscoie.com
           keidenbach@perkinscoie.com
           jhgray@perkinscoie.com
           mdumee@perkinscoie.com
           jpeters@perkinscoie.com

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:     jlwilkes@jonesday.com
           tfreeman@jonesday.com

*Admitted *pro hac vice*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:     kmamedova@jonesday.com
                jkmessina@jonesday.com

*Admitted *pro hac vice*

Kevin Brantley (Cal. 251886)*
**JONES DAY**
3161 Michelson Drive, Suite 800
Irvine, California 92612
Telephone:  (949) 851-3939
Email:     kcbrantley@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Dustin Brislan; Sonia
Rodriguez; Christina Verduzco; Jackie
Thomas; Jeremy Smith; Robert Gamez;
Maryanne Chisholm; Desiree Licci; Joseph
Hefner; Joshua Polson; and Charlotte
Wells, on behalf of themselves and all others
similarly situated*

1

2

## **CERTIFICATE OF SERVICE**

3      I hereby certify that on June 27, 2014, I e-mailed a copy of the above document to

4  the following parties:

5                          Michael E. Gottfried
                         Katherine E. Watanabe
6                          Lucy M. Rand
                   Assistant Arizona Attorneys General
7                    Michael.Gottfried@azag.gov
                     Katherine.Watanabe@azag.gov
8                        Lucy.Rand@azag.gov

9                          Daniel P. Struck
                         Kathleen L. Wieneke
10                       Timothy J. Bojanowski
                              Rachel Love
11                         Nicholas D. Acedo
                          Ashlee B. Fletcher
12                          Anne M. Orcutt
                              Jacob B. Lee
13              STRUCK WIENEKE, & LOVE, P.L.C.
                        dstruck@swlfirm.com
14                       kwieneke@swlfirm.com
                      tbojanowski@swlfirm.com
15                         rlove@swlfirm.com
                         nacedo@swlfirm.com
16                       afletcher@swlfirm.com
                         aorcutt@swlfirm.com
17                          jlee@swlfirm.com

18                     *Attorneys for Defendants*

19                            Asim Varma
                             Sarah Kader
20                             J.J. Rico
                         Jessica Jansepar Ross
21            ARIZONA CENTER FOR DISABILITY LAW
                     avarma@azdisabilitylaw.org
22                   skader@azdisabilitylaw.org
                     jrico@azdisabilitylaw.org
23                   jross@azdisabilitylaw.org

24      *Attorneys for Plaintiff Arizona Center for Disability Law*

25

26

27                                   /s/ Lillian Wong
                                      Lillian Wong
28   SFI-863410v1

-4-

# EXHIBIT 2

Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; *et al.*, and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director; *et al.*, <br><br> Defendants. | NO.  CV12-0601-PHX-NVW <br><br><br> **DEFENDANTS' NINETEENTH SUPPLEMENTAL DISCLOSURE STATEMENT** |

Defendants, through counsel and pursuant to Federal Rule of Civil

Procedure 26(a)(1), submit their **Nineteenth** Supplemental Disclosure Statement.

Defendants will supplement and/or amend this disclosure statement as information is discovered. **Supplemental and/or revised text is shown in bolded font**.

I.      NAMES, ADDRESSES, AND TELEPHONE NUMBERS OF INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION

A. INDIVIDUALS WHO WILL BE CALLED TO TESTIFY

1.      Charles Ryan, ADC Director, Defendant
        c/o Struck Wieneke & Love, P.L.C.[1]
        3100 West Ray Road, Suite 300
        Chandler, AZ 85226
        (480) 420-1600
          and
        Office of the Attorney General, State of Arizona
        1275 West Washington Street
        Phoenix, AZ 85007-2926
        (602) 542-1610

Charles Ryan is the Director of the ADC. Director Ryan will testify regarding his training and experience in corrections and his role in the development of policies, procedures, training programs, and ADC's strategic vision. Director Ryan has more than 35 years of experience in the field of corrections. He has served as Director of the Arizona Department of Corrections since 2009, and prior to that as Deputy Director of Prison Operations, as a prison warden and as a prison administrator. He possesses in-depth, hands-on institutional knowledge. Director Ryan has extensive experience in the development of correctional institution policy including the formulation of the inmate classification system, the staffing, operation and activities of various prison complexes and the development of budgetary requirements. Director Ryan will testify regarding the centralization of health and mental health care for certain inmate populations. He is likely to testify with regard to the maintenance and administration of ADC institutions and programs; ADC policies, procedures, and practices, including those related to medical,

---

[1] All parties listed as care of Struck Wieneke & Love, P.L.C. shall also be in care of the Attorney General's Office, State of Arizona, regardless of whether it is explicitly stated. Further, Struck Wieneke and Love's and the Attorney General's Office's contact information for all parties shall be the same as listed for Director Ryan, unless specifically stated otherwise.

1   dental and mental health care as well as the provision of adequate care to ADC inmates in

2   compliance with constitutional requirements; the improvements in the delivery of health

3   care to the ADC inmate population; the privatization of the entire health care delivery

4   system, specifically, the taking over of the health care system by Wexford Health Sources

5   ("Wexford") from July 1, 2012 through March 3, 2013, and by Corizon Health on March

6   4, 2013; ADC facilities' compliance with the National Commission on Correctional

7   Health Care Standards ("NCCHC"), Wexford's compliance during its tenure, and

8   Corizon's compliance after it took over on March 4, 2013; various budgetary issues

9   surrounding the ADC and the overall operation of ADC; his recommendation of policies

10  and programs to the Governor and Legislature for improving corrections programs

11  including health care services; his establishment of employment qualifications for key

12  personnel as well as relevant staffing policies, procedures, levels, and issues with regard

13  to dental, medical, and mental health personnel as well as to any communications with

14  said personnel; financial issues relative to the administration of specialty care to inmates

15  at ADC as well as maximum custody and detention units and conditions of confinement

16  issues in various ADC facilities; exhaustion of the grievance appeal process.   He will also

17  discuss why changes in policies and procedures were made, and will rebut the suggestion

18  that changes were made because of the filing of Plaintiffs' lawsuit.   Director Ryan will

19  testify regarding these areas as they develop up until the time of trial.   Director Ryan will

20  also testify regarding changes implemented throughout ADC regarding the provision of

21  health care and conditions of confinement for those mentally ill inmates in maximum

22  custody or detention units and the positive outcomes resulting from those changes.

23  Director Ryan will testify consistent with his deposition testimony.   Director Ryan will

24  testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

25          2.      Richard Pratt, ADC Quality/Clinical Program Evaluation Administrator and
26                  former Interim Director, Health Services ("HS") Division, Defendant
                    c/o Struck Wieneke & Love, P.L.C.
27

28

Richard Pratt is the Quality/Clinical Program Evaluation Administrator and the former Interim Division Director of Health Services at ADC.  Please see Exhibit Bates Numbered ADC123458-123461 for Mr. Pratt's credentials and qualifications.  Mr. Pratt was previously deposed and Defendants will rely on his deposition testimony. In addition to his deposition testimony, Mr. Pratt is likely to testify with regard to   policies, procedures, and practices, including those related to medical, dental, mental health care; his knowledge of Plaintiffs' medical, dental and mental health needs requests and Plaintiffs' institutional history as reflected in grievance appeals files; the privatization of the entire health care delivery system, specifically, the taking over of the entire health care system by Wexford; ADC policies and procedures including those related to medical, dental and mental health care as well as the provision of adequate care to ADC inmates in compliance with constitutional requirements; relevant staffing policies, procedures, levels; ADC facilities' compliance with the NCCHC standards; Wexford's compliance during its tenure; compliance with contract requirements by Corizon; and Corizon's  compliance after it took over on March 4, 2013; policies and procedures including those related to medical, dental and mental health care, statistics, reports and historical data relating to mental, medical and dental care,  as well as the provision of adequate care to ADC inmates in compliance with constitutional requirements.

   3.   Carson McWilliams, ADC Northern Region Operations Director (NROD)
        c/o Struck Wieneke & Love, P.L.C.

Carson McWilliams is the Northern Region Operations Director of ADC. Please see Exhibit Bates Numbered ADC123449-123451 for his credentials and qualifications. Mr. McWilliams is likely to testify with regard to policies and procedures including those related to medical, dental and mental health care, classification, housing, security,  and operations of ADC Complexes in the Northern Region; a description of the complexes, pods, units and security classifications of each facility; fundraising opportunities and activities at Complexes; implementation of structural changes and

4

programming in ADC facilities; education opportunities and availability to ADC populations; CCTV programing;  implementation of mental health programming at ADC facilities, recreation, employment, and education activities provided to ADC inmates, and the conditions of confinement at ADC facilities, including all matters raised in the court's certification of the class and sub classes as it relates to conditions of confinement, which may include, lighting, food service, recreational activities, mail, food, watch, reading materials and the like; statistics, reports and historical data relating to mental, medical and dental care; and his knowledge of security operations and conditions in maximum custody.

Mr. McWilliams will also testify regarding the changes implemented and anticipated for maximum custody inmates, specifically inmates who are in maximum custody and designated as Seriously Mentally Ill.  Mr. McWilliams will testify that mental health inmates in maximum custody have been clustered in various housing areas and ADC has identified office space for mental health staff in those housing areas.  ADC has built large recreation enclosures for use by multiple inmates at the same time and in some units, recreation fields will be used by 50-60 inmates at a time.  Inmates are working as porters, groundskeepers, maintenance works, kitchen workers and in other various capacities.  Mental health group programming as well as self-help television programs are being offered.  ADC is also starting to facilitate groups to include ADC programs staff with several new groups planned.  Some units include contact visitation.  A step system is being implemented to allow the evaluation of inmates with the highest step receiving the most out-of-cell activity.  This system is based on time, participation in programs and the inmate's general behavior.  Religious services are also available.  Plans are being made to expand the outdoor recreation in groups and on recreation fields.  Even more jobs are being identified and inmates will be screened and/or trained to work in those jobs.  Tables are being placed in pods and runs for increased group out-of-cell interaction.  Proposals are being reviewed for various new out-of-cell activities that will increase and encourage positive socialization.  Programs are being reviewed and staff is being trained to facilitate

groups with plans to implement those new programs in January 2014. Maximum custody inmates have been reviewed for movement to lower custody levels and placement in open cell blocks, such as CB1 and CB2 in ASPC-Florence's Central Unit. Plans to open more blocks are scheduled to begin in 2014. ADC is also currently reviewing housing areas to cluster inmates designated as Seriously Mentally Ill in a more open living environment. Mr. McWilliams will testify to security equipment changes like using security chairs for inmate groups in place of individual holding enclosures. Additionally, he will testify regarding the cutting of windows in solid cell doors in inmate housing with mental health issues to enhance observation. In some cases this involves facilitating groups with inmates unrestrained. Mr. McWilliams will also testify as to the implementation and positive outcomes related to these changes once the changes have been made.

Mr. McWilliams has reviewed the reports of Plaintiffs' experts Eldon Vail and Craig Haney. Mr. McWilliams will testify regarding the conditions of confinement as alleged by both Mr. Vail and Mr. Haney and as to the conditions of confinement for those inmates in maximum custody or detention units that may change up until the time of trial. Mr. McWilliams will testify regarding the classification system for mentally ill inmates placed in maximum custody and detention units, specifically but not limited to the fact that ADC's classification system has been reviewed and validated by expert Dr. James Austin through the American Correctional Association and the National Institute of Corrections. Further, every inmate receives an annual classification review, which is an interactive process including the inmate.

Mr. McWilliams will discuss the concepts and terminology he observed at a training course on working with difficult/violent offenders at the National Institute of Corrections – states participating in the training had numerous, different classifications and terms for inmates housed in their highest custody prisons. He will also testify that Arizona uses a concept of four custodies, minimum, medium, close and maximum. Mr. McWilliams will also testify regarding the ability of inmates, with the exception of those inmates on Death Row, to earn their way out of maximum custody or detention units and

1   the criteria for such movement.  Mr. McWilliams will testify that there are various groups

2   of mental health inmates in maximum custody or detention units, which each require

3   special considerations in how ADC addresses their housing and movement.  Additionally,

4   Mr. McWilliams will testify regarding the training that all correctional staff receives and

5   the training that staff assigned to mental health units are undergoing, including ASIST

6   Training and other specialized training regarding inmates with mental illness.  Officers are

7   selected to work in those areas of maximum custody housing mentally-ill inmates based

8   on their experience level and demonstrated ability to address situations that may

9   arise.  These officers serve 5 years at these posts before rotating in order to provide

10   consistency in these housing areas.  Further, all sergeants and lieutenants will be trained in

11   motivational interviewing as part of crisis intervention training.

12         Mr. McWilliams will also testify regarding the frequency with which

13   inmates have contact with individual staff, whether it be correctional or medical staff.  Mr.

14   McWilliams will testify regarding the opportunity for recreation within the maximum

15   custody and detention units.  Further, maintenance issues throughout ADC are regularly

16   addressed with those issues positing a security or safety concern given higher

17   priority.  Mr. McWilliams will also testify about the maintenance and cleanliness of the

18   complexes; however, there remains the potential for rodent or insect given that inmates

19   are permitted to keep food in their cells and often attempt to keep animals such as ground

20   squirrels and pigeons as pets.

21         Mr. McWilliams will further testify regarding the requirement that staff and

22   visitors to maximum custody and detention units wear safety gear.  He will testify that

23   staff safety is a priority and that the equipment in use today is the direct result of past

24   incidents of violent inmate behavior.  Mr. McWilliams will testify regarding the health

25   and welfare checks that are occurring through ADC for inmates in maximum custody and

26   detention units, including the role of the roving officer whose sole job duty is to conduct

27   such checks.  He will also testify regarding the policies and procedures regarding the use

28   of chemical agents and the circumstances for such use.  He will testify regarding the

emphasis ADC places on de-escalation techniques, barring emergency situations requiring immediate response.  Mr. McWilliams will also address conditions of confinement issues raised by named Plaintiffs.

Mr. McWilliams will testify as to the current status of all of these areas, the allegations contained in Plaintiffs' expert reports, and changes that may be implemented up until trial.  Mr. McWilliams will testify consistent with his deposition testimony.  Mr. McWilliams will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

4.     Richard Rowe, M.D., former ADC Quality/Clinical, Medical Program
       Administrator, HS Division
       c/o Struck Wieneke & Love, P.L.C.

Dr. Richard Rowe is the HS Division, Quality/Clinical Medical Program Administrator.  Please see Exhibit Bates Numbered ADC123462-123463 for his credentials and qualifications.  Dr. Rowe was previously deposed and Defendants will rely on his deposition testimony. In addition to his deposition testimony, Dr. Rowe will testify pursuant to FRCP 26(a)(2)(C) with regard to recommendations made to him by doctors at various ADC facilities and the procedure by which recommendations are made to him; policies, practices, procedures, and processes of the administration of all health care services to inmates housed at ADC; relevant staffing policies and procedures; implementation of structural and programming improvements in ADC facilities; policies and procedures including those related to medical health care as well as the provision of adequate care to ADC inmates in compliance with constitutional requirements; his role in authoring inmate mortality reviews; his involvement in working with outside providers as a result of the ACCHS legislation and privatization legislation.  Dr. Rowe will also testify regarding the mortality reviews he completed.

Dr. Rowe will also testify regarding his review of Plaintiff Shawn Jensen's medical records and his opinions regarding the treatment rendered to Jensen.  He will further testify regarding specific allegations made by Mr. Jensen as it relates to his medical care in connection with his treatment for prostate cancer as well as his current

1    prognosis.

2              Dr. Rowe will testify regarding his review of Plaintiff Swartz's medical

3    records and his opinions regarding the treatment rendered to Swartz after he was involved

4    in two inmate assaults in 2010.  Specifically, he will testify regarding the follow-up care,

5    medications, and subsequent facial reconstructive surgery.  He will also testify regarding

6    Plaintiff Swartz's allegations that staff screened him with a metal detector after he

7    swallowed metal, did not refer him for an endoscopy, and told him he would have to pass

8    the metal.

9              Dr. Rowe will testify regarding his review of Plaintiff Rodriguez's medical

10   records and his opinions regarding the treatment rendered to her.  He will further testify

11   regarding Plaintiff Rodriguez's allegation that she has experienced multiple asthma

12   attacks and breathing problems as a result of her exposure to pepper spray.

13             Dr. Rowe will testify regarding his review of Plaintiff Thomas's medical

14   records and his opinions regarding the treatment provided to him.  He will further testify

15   regarding Plaintiff Thomas's specific allegations that in November 2011, he overdosed on

16   Diclofenac and did not receive medical attention, that he has experienced insomnia and

17   weight loss while in SMU, and was not prescribed a sleep aid.

18             Dr. Rowe will testify regarding his review of Plaintiff Gamez's medical

19   records and his opinions regarding the treatment provided to him.  He will further testify

20   regarding Plaintiff Gamez's specific allegations that his care was managed by a nurse

21   practitioner, he did not receive follow-up tests to confirm that he has frontal lobe

22   dysfunction, and his medications have been denied or delayed.

23             Dr. Rowe will testify regarding his review of Plaintiff Chisholm's medical

24   records and his opinions regarding the treatment provided to her.  He will further testify

25   regarding Plaintiff Chisholm's specific allegations that she was not referred to a

26   cardiologist for eight months despite experiencing chest pains and shortness of breath and

27   did not receive adequate care or testing from outside specialists.

28             Dr. Rowe will testify regarding his review of Plaintiff Licci's medical

9

records and his opinions regarding the treatment provided to her.  He will further testify regarding Plaintiff Licci's specific allegations that she has experienced delays in seeing an oncologist and receiving testing regarding masses on her breasts, mouth, arms, and ovaries, that she experiences extreme discomfort in her cervix that impacts her bowels and results in constipation, and medical staff make false claims in replies to her grievances. Dr. Rowe will also testify regarding Plaintiff Licci's allegation that her port-a-cath may not have been properly flushed.

Dr. Rowe will testify regarding his review of Plaintiff Hefner's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Hefner's specific allegations that his vision deteriorated after a nurse gave him expired eye drops, he did not receive eye medication following eye surgery in 2006 and 2008, has not seen an ophthalmologist, and experienced delay in receiving a CT scan following an injury.  He will testify regarding Plaintiff Hefner's allegation that he did not receive adequate treatment after an assault.  Dr. Rowe will also testify regarding Plaintiff Hefner's claim that his requests for a medical diet have been denied.

Dr. Rowe will testify regarding his review of Plaintiff Polson's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Polson's specific allegations that he experienced delays in receiving appropriate care and medications for chronic ear pain.

Dr. Rowe will testify regarding his review of Plaintiff Wells' medical records and his opinions regarding the treatment provided to her.  He will further testify regarding Plaintiff Wells' specific allegations that she was not evaluated by a cardiologist despite repeated complaints of chronic chest pain.

Dr. Rowe will testify regarding his review of Plaintiff Smith's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Smith's specific allegation that he was unable to write HNRs due to a hand injury.

Dr. Rowe will testify regarding his review of Plaintiff Brislan's medical

10

1   records and his opinions regarding the treatment provided to him.  He will further testify

2   regarding Plaintiff Brislan's specific allegation that he has lost weight due to insufficient

3   meals.

4           In addition to testifying regarding the medical treatment of the named

5   Plaintiffs, Dr. Rowe will also testify regarding the health care provided to the individual

6   inmates specifically referred to by Plaintiffs' experts and whether the care rendered was

7   adequate, appropriate and meets the standard of care up until the time of trial.

8       5.      Ben Shaw, M.D. (former ADC HS Division, Quality/Clinical, Mental
                Health Monitor (Health Services Coordinator)) , current Mental Health
9               Director at Corizon
                c/o Corizon Health
10

11          Ben Shaw, M.D., is the former HS Division, Quality/Clinical, Mental Health

12   Monitor (Health Services Coordinator) at ADC, and the current Mental Health Director at

13   Corizon. Dr. Shaw was previously deposed and Defendants will rely on his deposition

14   testimony.  In addition to his deposition testimony, Dr. Shaw will testify with regard to

15   policies and procedures at the time of his employment with ADC, including those related

16   to   mental health needs; the privatization of the entire health care delivery system,

17   specifically, the transition of the entire health care system to Wexford; the transition of the

18   entire health care system to Corizon; the provision of adequate care to ADC inmates in

19   compliance with constitutional requirements, statistics, reports and historical data relating

20   to mental, medical and dental care,  and his current job activities.  Dr. Shaw may also

21   testify regarding his knowledge of the care and treatment of the named Plaintiffs, as well

22   as class members whose care he is familiar with. Dr. Shaw has knowledge of the mental

23   health group programing, the CCTV programing, the activities of the psych associates and

24   other mental health staff, how the telemed program works,  medication distribution, the

25   mental health phases at maximum security facilities, the incentive programs, and the

26   loaner tv and radio programs.

27

28

6.     Carol Pearson, ADC HS Contract Monitoring Bureau, Medical Records
       Monitor
       c/o Struck Wieneke & Love, P.L.C

Carol Pearson is the current HS Contract Monitor Bureau Medical Records Monitor and former ADC Medical Records Program Manager at ADC.  Ms. Pearson was previously deposed and Defendants will rely on her deposition testimony.  Ms. Pearson is likely to testify regarding her information with regard to ADC Polices, practices, and procedures, including those related to the organization, storage, maintenance, archiving, and eventual destruction of inmate medical records; and the privatization of the healthcare delivery system and its impact on medical records management.

7.     Juliet Respicio-Moriarty, ADC HS Contract Monitoring Bureau, Inmate
       Grievance Appeals Investigator
       c/o Struck Wieneke & Love, P.L.C.

Juliet Respicio-Moriarty is the current Inmate Grievance Appeals Investigator for ADC. Please see Exhibit Bates Numbered ADC123429-123433 for her credentials and qualifications. Ms. Respicio-Moriarty will testify regarding policies, practices, and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; and her knowledge of Corizon's performance under the Contract with ADC.

8.     Kathleen Campbell, ADC HS Contract Monitoring Bureau, Program
       Evaluation Administrator
       c/o Struck Wieneke & Love, P.L.C.

Kathleen Campbell is the current Program Evaluation Administrator for ADC. Please see Exhibit Bates Numbered ADC123435-123438 for her credentials and qualifications. Ms. Campbell will testify regarding policies, practices, and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates;

delivery of oral and dental care; reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; and her knowledge of Corizon's performance under the Contract with ADC.

   9.  Sam Tardibuono, ADC HS Contract Monitoring Bureau, Contract
       Compliance Monitor, ASPC-Douglas
       c/o Struck Wieneke & Love, P.L.C.

    Sam Tardibuono is the current Contract Monitor at ASPC-Douglas. Please see Exhibit Bates Numbered ADC123464-123467 for his credentials and qualifications. Mr. Tardibuono will testify regarding his monitoring of policies, practices, and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care only as required for monitoring and reporting in the MGAR; his activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; and his knowledge of Corizon's performance under the Contract with ADC.

   10.  David Robertson, D.O., ADC HS Contract Monitoring Bureau,
       Quality/Clinical, Medical Program Administrator
       c/o Struck Wieneke & Love, P.L.C.

    Dr. David Robertson is the current HS Contract Monitoring Bureau, Quality/Clinical, Medical Program Administrator. Please see Exhibit Bates Numbered ADC123413-123418 for his credentials and qualifications. Dr. Robertson will testify pursuant to FRCP 26(a)(2)(C).  He will testify regarding ADC policies, practices, and procedures including those related to medical care, review and investigation of medical grievances, inmate death investigations and mortality reviews, implementation by Corizon of electronic medical records, Corizon's telemedicine system; his knowledge of Plaintiffs' medical health needs and the continuous improvements in the delivery of health care to the ADC inmate population. Dr. Robertson will also testify regarding the mortality

1    reviews he completed.

2           Dr. Robertson will also testify regarding the medical care provided to

3    Plaintiff Shawn Jensen and that the medical care was appropriate and within the

4    applicable standard of care.  He will further testify regarding specific allegations made by

5    Mr. Jensen as it relates to his medical care in connection with his treatment for prostate

6    cancer as well as his current prognosis.

7           Specifically, Dr. Robertson will testify that it was within his regular duties

8    as a physician to provide medical treatment to inmates, and he specifically provided

9    medical treatment to Inmate Jensen during the period of October 2009 through August

10   2010.  As part of that treatment, he would also review the medical records of other

11   providers, including outside consultants, and these records would be included in the chart.

12   Dr. Robertson will testify that the care and treatment he provided to Plaintiff Jensen for

13   prostate cancer and follow-up care from October 2009 through August 2010, as well as

14   the care provided by the outside providers was to a reasonable degree of medical

15   probability within the standard of care generally accepted for the care and treatment for

16   persons with Plaintiff Jensen's medical issues.  Dr. Robertson will testify consistent with

17   the content of the treatment records he authored and/or reviewed during the course of his

18   treatment of Plaintiff Jensen as contained in the medical records produced in this case and

19   referenced as Bates Numbers ADC004374-ADC005069;  ADC073108-ADC73149;

20   ADC074716-074959;  ADC084701-084878;  ADC123280-ADC123340;  ADC123379-

21   ADC123383;      ADC130309-ADC130339;      ADC197447;      ADC222075-222099;

22   ADC222242-222310; and, ADC232228-232229.

23          Dr. Robertson will testify that Jensen underwent a radical prostatectomy on

24   7/15/10 at Mountain Vista Medical Center.   See medical record ADC004889.   Dr.

25   Robertson will testify that following his surgery, Plaintiff Jensen submitted an HNR on

26   7/30/10 stating that his catheter was leaking.  ADC005045.  He was evaluated by a nurse

27   who replaced his catheter bag.  Id.  On 7/31/10, Plaintiff Jensen submitted another HNR

28   stating that his catheter was constantly leaking.  ADC005044.  On 8/1/10, Jensen was seen

on the nursing line, and the nurse offered to call a doctor to check on changing him to a larger catheter, but Jensen declined.  ADC004629.  Jensen stated that he "just wanted to take it out."  Id.  On 8/2/10, Jensen was seen again for leakage, and the provider ordered irrigation of the catheter.  ADC004628.  The irrigation was performed with no improvement.  Id.  On 8/4/10, an outside urology consult was requested for Jensen.  ADC004680.  On 8/5/10, Jensen was examined at Mountain Vista Medical Center, and the Foley catheter was found to be outside of the bladder in the pelvic cavity.  ADC004684, ADC004682.  Jensen elected to undergo surgery for closure of the bladder, replacement of the Foley catheter, and reconstruction of his bladder neck.  ADC004684, ADC004682-83.

Dr. Robertson will testify that in his opinion, Jensen needed to undergo multiple surgeries to remedy contracture of his bladder neck as a likely result of scarring from the prostatectomy he underwent in July 2010 and not as a result of damage from a nurse's improper adjustment of Jensen's Foley catheter in August 2010 as alleged by Jensen.  Dr. Robertson will testify that there is no evidence that a nurse improperly irrigated his catheter or caused damage to his urethra and bladder neck as alleged by Jensen.  In addition, Jensen presented to medical with leakage around his catheter and little return into the bag, which indicates that the Foley was not in his bladder at the time he presented to medical.  Dr. Robertson will testify that in his opinion, Jensen himself could have manipulated the catheter and likely resulted in the catheter coming out of the bladder and causing damage to his bladder neck.  Dr. Robertson will also testify that infection, such as the testicular infection Jensen experienced, is a potential complication of undergoing any surgery.

Dr. Robertson will also testify regarding Jensen's receipt of chemotherapy medications.  Specifically, Dr. Robertson will testify that on 2/26/10, Jensen was prescribed Degarelix, a hormonal therapy used in the treatment of prostate cancer, and received the first injection on 3/3/10.  ADC004958.  Jensen received the second injection on 4/7/10.  ADC004840.  Degarelix was ordered for Jensen in May 13, 2010, but ADC

1   was informed by the pharmacy that the medication was unavailable from the manufacturer

2   due to a product recall and would not be available until mid-June at the earliest.

3   ADC004838, ADC004837, ADC004836.   Jensen was scheduled to receive the third

4   injection of Degarelix on July 14, 2010, but he underwent a radical prostatectomy on

5   7/15/10, and the shots were discontinued.  ADC004911.

6          In addition, Dr. Robertson will testify that Jensen received adequate catheter

7   supplies following his prostatectomy and there is no evidence in his chart to support his

8   claim that he was provided only one condom catheter for 55 days.

9          Dr. Robertson will testify that the medical treatment he provided to Jensen

10  was timely and adequate.

11         Dr. Robertson will testify regarding his review of Plaintiff Swartz's medical

12  records and his opinions regarding the treatment rendered to Swartz after he was involved

13  in two inmate assaults in 2010.  Specifically, he will testify regarding the follow-up care,

14  medications, and subsequent facial reconstructive surgery.  He will also testify regarding

15  Plaintiff Swartz's allegations that staff screened him with a metal detector after he

16  swallowed metal, did not refer him for an endoscopy, and told him he would have to pass

17  the metal.

18         Dr. Robertson will testify regarding his review of Plaintiff Rodriguez's

19  medical records and his opinions regarding the treatment rendered to her.  He will further

20  testify regarding Plaintiff Rodriguez's allegation that she has experienced multiple asthma

21  attacks and breathing problems as a result of her exposure to pepper spray.

22         Dr. Robertson will testify regarding his review of Plaintiff Thomas's

23  medical records and his opinions regarding the treatment provided to him.  He will further

24  testify regarding Plaintiff Thomas's specific allegations that in November 2011, he

25  overdosed on Diclofenac and did not receive medical attention, that he has experienced

26  insomnia and weight loss while in SMU, and was not prescribed a sleep aid.

27         Dr. Robertson will testify regarding his review of Plaintiff Gamez's medical

28  records and his opinions regarding the treatment provided to him.  He will further testify

16

1  regarding Plaintiff Gamez's specific allegations that his care was managed by a nurse
2  practitioner, he did not receive follow-up tests to confirm that he has frontal lobe
3  dysfunction, and his medications have been denied or delayed.

4  Dr. Robertson will testify regarding his review of Plaintiff Chisholm's
5  medical records and his opinions regarding the treatment provided to her. He will further
6  testify regarding Plaintiff Chisholm's specific allegations that she was not referred to a
7  cardiologist for eight months despite experiencing chest pains and shortness of breath and
8  did not receive adequate care or testing from outside specialists.

9  Dr. Robertson will testify regarding his review of Plaintiff Licci's medical
10 records and his opinions regarding the treatment provided to her. He will further testify
11 regarding Plaintiff Licci's specific allegations that she has experienced delays in seeing an
12 oncologist and receiving testing regarding masses on her breasts, mouth, arms, and
13 ovaries, that she experiences extreme discomfort in her cervix that impacts her bowels and
14 results in constipation, and medical staff make false claims in replies to her grievances.
15 Dr. Robertson will also testify regarding Plaintiff Licci's allegation that her port-a-cath
16 may not have been properly flushed.

17 Dr. Robertson will testify regarding his review of Plaintiff Hefner's medical
18 records and his opinions regarding the treatment provided to him. He will further testify
19 regarding Plaintiff Hefner's specific allegations that his vision deteriorated after a nurse
20 gave him expired eye drops, he did not receive eye medication following eye surgery in
21 2006 and 2008, has not seen an ophthalmologist, and experienced delay in receiving a CT
22 scan following an injury. He will testify regarding Plaintiff Hefner's allegation that he did
23 not receive adequate treatment after an assault. Dr. Robertson will also testify regarding
24 Plaintiff Hefner's claim that his requests for a medical diet have been denied.

25 Dr. Robertson will testify regarding his review of Plaintiff Polson's medical
26 records and his opinions regarding the treatment provided to him. He will further testify
27 regarding Plaintiff Polson's specific allegations that he experienced delays in receiving
28 appropriate care and medications for chronic ear pain.

17

1    Dr. Robertson will testify regarding his review of Plaintiff Wells' medical
2  records and his opinions regarding the treatment provided to her.  He will further testify
3  regarding Plaintiff Wells' specific allegations that she was not evaluated by a cardiologist
4  despite repeated complaints of chronic chest pain.

5    Dr. Robertson will testify regarding his review of Plaintiff Smith's medical
6  records and his opinions regarding the treatment provided to him.  He will further testify
7  regarding Plaintiff Smith's specific allegation that he was unable to write HNRs due to a
8  hand injury.

9    Dr. Robertson will testify regarding his review of Plaintiff Brislan's medical
10  records and his opinions regarding the treatment provided to him.  He will further testify
11  regarding Plaintiff Brislan's specific allegation that he has lost weight due to insufficient
12  meals.

13    In addition to testifying regarding the medical treatment of the named
14  Plaintiffs, Dr. Robertson will also testify regarding the health care provided to the
15  individual inmates specifically referred to by Plaintiffs' experts and whether the care
16  rendered was adequate, appropriate and meets the standard of care.

17    11.  Nicole Taylor, Ph.D., ADC HS Contract Monitoring Bureau,
          Quality/Clinical, Health Services Coordinator (Mental Health Monitor) and
18        former Psychologist III at ASPC-Florence
19        c/o Struck Wieneke & Love, P.L.C.

20    Nicole Taylor, Ph.D. is the current HS Contract Monitoring Bureau,
21  Quality/Clinical, Compliance Monitor II (Mental Health Monitor). Please see Exhibit
22  Bates Numbered ADC123454-123457 for her credentials and qualifications.   Due to
23  privatization, the Health Services Monitoring Bureau was created, and Dr. Taylor
24  subsequently transitioned from direct care into a monitoring position.  Dr. Taylor will
25  testify based on her education, training, qualifications, and experience and review of
26  records of the inmate population. All opinions expressed are to a reasonable degree of
27  psychological probability. Dr. Taylor will testify regarding ADC policies, practices, and
28  procedures including those related to mental health care and conditions of confinement,

including mental health programming offered to inmates housed at ASPC-Eyman, Florence, Lewis, Phoenix, Perryville, Tucson and Yuma and any changes to programming that occurs up until trial; the Mental Health Technical Manual and any changes to that Manual that occurs up until trial; her knowledge of Plaintiffs' mental health care needs, specifically the mental health care needs and treatment of named Plaintiffs Dustin Brislan and Robert Gamez; the subsequent transition to Corizon; the provision of adequate care to ADC inmates in compliance with constitutional requirements; relevant staffing policies, procedures, levels and issues with regard to mental health personnel and changes to those policies, procedures and levels up until trial.

Dr. Taylor will testify that during the time that she was providing direct care that she was involved in the conception and development of many of the mental health programs currently running in the Maximum Custody units.  Specifically, she helped to identify the population, location, and programming of the Kasson Wing One program, CB-1 Mental Health program, and the specialized mental health programming at Browning and SMU I.  She will testify that she has continued to be actively involved in the implementation and strategic planning related to the mental health programs and transitional program for maximum custody inmates as a whole.

Dr. Taylor will testify that in the course of her current position that she routinely reviews a random sample of approximately 200 charts located at various Complexes to assess contract compliance and timeliness regarding triage, referrals, mental health treatment plans, contacts with mental health staff, review by psychiatric providers of inmates on psychotropic medications, and reentry planning.  She reports her findings to Corizon and ADC leadership.  She will also testify that in the course of her position that she reviews the specific mental health MGAR findings at each of the seven (7) corridor complexes.  Additionally, she reviews all Mental Health grievances and the corresponding medical record documentation.

Dr. Taylor will testify regarding the mental health care provided to and mental health condition of the named Plaintiffs Swartz, Brislan, Thomas, Smith, Gamez,

1   Chisholm, Polson, Rodriguez and Verduzco.  She will testify regarding their allegations

2   related to their mental health care.

3          Specifically, Dr. Taylor will testify regarding her review of Plaintiff Stephen

4   Swartz's records relating to his allegations that despite multiple instances of self-harm, he

5   has received inadequate mental health care while on suicide watch and while housed at

6   SMU.  She will also testify regarding his allegation that he was able to access dangerous

7   objects while on suicide watch.

8          Dr. Taylor will testify regarding her review of Plaintiff Brislan's records

9   relating to his allegations that he has been placed on suicide watch for extended periods

10   but has not received therapeutic treatment to address his self-harming behavior.  She will

11   also testify regarding his allegation that he was able to access dangerous objects while on

12   suicide watch.  She will testify that she was a treating Psychologist at Eyman during the

13   periods in 2006, 2007, and 2008 that Plaintiff Brislan was housed there and provided

14   treatment to him as documented in his medical records produced at ADC008296-

15   ADC008537;   ADC073455-ADC073798;   ADC107525-ADC107602;   ADC122075-

16   ADC122218;ADC123225-ADC123251;   ADC197411-ADC197416;   ADC222042-

17   222044; and ADC232208-10.  Dr. Taylor will testify that her treatment of Brislan during

18   those time periods, to a reasonable degree of psychological probability, met the applicable

19   standard of care.  She will also testify that she has reviewed his medical record in her

20   current role as a monitor for responses to the grievances he filed.

21          Dr. Taylor will testify regarding her review of Plaintiff Thomas's records

22   relating to his allegations that while he did not have suicidal ideation when he arrived at

23   SMU, his mental condition has deteriorated and he has become suicidal and committed

24   multiple acts of self-harm.  She will also testify regarding Plaintiff Thomas's allegations

25   that he has received minimal mental health care.  She will testify that she was a treating

26   Psychologist at Eyman from 2006 to 2010 and provided treatment to Plaintiff Thomas.

27   She will also testify that she reviewed his medical records after he filed a lawsuit in

28   December 2007 against her that was deemed unfounded and was dismissed.  See Cano v.

Taylor, et al., 739 F.3d 1214 (2014).  Additionally, Dr. Taylor will testify regarding her treatment of Thomas during 2008, 2009, and 2012.  Dr. Taylor will testify consistent with the content of the treatment records she authored and/or reviewed during the course of her treatment of Plaintiff Thomas.  See ADC007440-ADC008295; ADC070949-ADC071360; ADC122921-ADC122973;        ADC197492-ADC197500;        ADC198474-ADC198491; ADC222134-222136; ADC229746-ADC229801; and, ADC232244-232251.

Specifically, Dr. Taylor will testify regarding the following:

Dr. Taylor first treated Plaintiff Thomas on April 11, 2008 during a thirty minute mental health watch.  ADC008242.  On April 14, 2008, Dr. Taylor treated Plaintiff while he was on suicide watch.  ADC008245.  He advised that he was feeling good and was ready to return to his housing unit.  Id.  Dr. Taylor recommended he be returned.  Id.  The following day, on April 15, 2008, Dr. Taylor saw Thomas again during a thirty minute mental health watch.  ADC008237.

Dr. Taylor next saw Thomas on May 5, 2008 and May 8, 2008 during a thirty minute mental health watch.  ADC008207, ADC008205.  Additionally, Dr. Taylor treated Thomas on May 7, 2008.    ADC008216, ADC008206, ADC008203, and ADC008200.

Dr. Taylor also treated Thomas in June 2008.  Specifically, she treated him on June 9, 2008.  ADC008197.  During this encounter, Thomas advised that he was doing okay and that he was staying out of trouble and off watch.  She treated him again on June 16, 2008.  ADC008196.  During this encounter, he advised that he was "doing good."  Id.

Dr. Taylor treated Thomas again in July 2008.  She saw him on July 3, 2008 where he advised he was not going to hurt himself.  ADC008195.  She saw Thomas again on July 10, 2008.  ADC008193.

Dr. Taylor continued to treat Thomas in August of 2008.  She saw him on August 4, 2008 and he advised that he was "doing well now."  ADC008191.  She treated him again on August 14, 2008.  ADC008190.

Dr. Taylor treated Thomas in September 2008.  Specifically, she saw him on

21

1   September 3, 2008 and he advised he was ready to come off of watch.  ADC008188.  Dr.

2   Taylor took Thomas off watch at this time.  Id.  Dr. Taylor continued to treat Thomas in

3   October 2008.  ADC008186, ADC008183. During this visit he advised that he was "angry

4   because of the noise" and that he was ready for thirty minute watches.  Id.  Dr. Taylor

5   approved this request.  ADC008178.

6          Dr.   Taylor   treated   Thomas   again   on   September   16,

7   2009. ADC008147.  Thomas advised that he "just doesn't like the pod" he is in.  Id.  He

8   stated he is ready for thirty minute watches.  Id.  Dr. Taylor recommended a regular

9   follow-up  as  a  result  of  this  visit  and  advised  he  is  ready  for  thirty  minute

10   watches.  Id.  Dr. Taylor saw Thomas the following day, September 17, 2009, during a

11   cell front interview.  ADC008146.  During this visit, Thomas advising that he was doing

12   well and is ready for thirty minute watches.  Id.  Dr. Taylor scheduled a regular follow-up

13   as  a  result  of  this  visit.  Id.   Dr. Taylor  also  placed  Thomas  on  suicide  watch  on

14   September 17, 2009.  ADC008142.

15          Dr. Taylor next saw Thomas on December 13, 2009 during a cell front

16   interview.  ADC008132.  During this encounter, Thomas indicated he did not want to go

17   on suicide watch.  Id.  Dr. Taylor recommended a regular follow-up as a result of this

18   visit.  Id. Dr. Taylor treated Thomas again on December 20, 2009 while he was housed at

19   Eyman SMU II.  ADC008125.  He indicated that the problems he was having occurred at

20   SMU I.  Id.  She recommended a regular follow up as a result of this visit. Id.

21          Dr. Taylor treated Thomas again on January 3, 2010.   ADC008114.  Dr.

22   Taylor   next   saw   Thomas   on   January   17,   2010   during   a   cell   front

23   interview.  ADC008094.  Thomas refused to interact with her.  Id.  Dr. Taylor again saw

24   Thomas on January 24, 2010 at a cell front visit.  ADC008089.  He refused to speak to her

25   indicating, "I don't want to see you devil woman."  Id.   She recommended a regular

26   follow up as a result of this visit.  Id.

27          Dr. Taylor will also testify that on March 7, 2010, she attempted to conduct

28   a cell visit with Thomas, but he was sleeping and would not get up to speak to her.

ADC008053.  Dr. Taylor conducted a cell front visit again with Thomas on March 14, 2010.  ADC008071.  He initially refused to speak with her and then attempted to engage in inappropriate conversation stating, "kill yourself" and "If I could get my hands on you, I would burn your face off."  Id.  She recommended a regular follow up as a result of both March encounters.  Id.

Dr. Taylor treated Thomas again in 2012.  On October 29, 2012, Dr. Taylor saw Thomas on a thirty minute mental health watch.  ADC071106.  During that encounter, Thomas advised that he would not participate in any programs at SMU I and that he wanted to stay on watch.  Id.  Dr. Taylor saw Thomas again on October 30, 2012 where he indicated he was still suicidal.  ADC071105, ADC071186.  Dr. Taylor then placed him on ten minute checks.  Id.

Dr. Taylor will testify to a reasonable degree of psychological probability that her treatment of Plaintiff Thomas met the standard of care.

Dr. Taylor will testify regarding her review of Plaintiff Smith's records relating to his allegations that his depression has been aggravated by interruptions in his mental health treatment and prolonged incarceration in SMU and that he was not seen by mental health despite reporting mental health problems.

Dr. Taylor will testify regarding her review of Plaintiff Gamez's records relating to his claim that he was not provided adequate mental health services to address his deteriorating mental health. Dr. Taylor will testify regarding her review of Plaintiff Chisholm's records relating to her allegations that her mental health has been adversely impacted by custodial harassment.

Additionally, Dr. Taylor will testify regarding her treatment of Gamez.  She will testify that she was a treating Psychologist at Florence during the period of 2010 to 2012 that Plaintiff Gamez was housed there and provided treatment to him.  She will also testify that she has reviewed his chart in her current role as a monitor for responses to a grievance he filed.  Dr. Taylor will testify consistent with the content of the treatment records she authored and/or reviewed during the course of her treatment of Plaintiff

23

Gamez.   See   ADC000287-ADC001254;   ADC071394-ADC071573;   ADC122219-ADC122289;   ADC197425-ADC197434;   ADC197527-ADC198101;   ADC222050-222055; ADC222152-222241; and ADC232221-24.

Dr. Taylor first treated Gamez on July 1, 2010, for a 30-minute one-on-one mental-health follow-up.  ADC001028.  Gamez told to her: "I'm doing alright. I sleep ok, and eating is ok.  I don't want meds.  I don't want to be a zombie.  I wish I could get counseling for my anger issues, also my disillusions [sic] like hearing and seeing things.  I want to learn to block the voices."  Id.  Dr. Taylor objectively observed that Gamez appeared alert and oriented," his mood appeared euthymic; and his affect was normal.  Id.  Gamez denied any suicidal or homicidal ideations, but reported vague auditory and/or visual hallucinations.  Id.  Dr. Taylor diagnosed Gamez with a psychotic disorder, but assessed no observable symptoms.  Id.  Dr. Taylor planned to continue monitoring and charting his condition.  Id.

Dr. Taylor provided follow-up care to Gamez on August 26, 2010, during another 30-minute one-on-one session.  Id.  Gamez told her that he believed he has schizophrenia, stating: "I am very paranoid.  Id.  He reported losing 40 lbs since 2003 and feeling underweight.  Id.  He told her about trying to get prisoners out of "lock down," because he believed it makes people worse and is inhumane.  Id.  He also told her, "My mind deteriorates, and I can't concentrate. I want to get to a yard.  I don't want meds."  Id.  Dr. Taylor again observed that Gamez again appeared alert and oriented, his mood appeared euthymic, and his affect was normal.  Id.  Gamez denied having any suicidal or homicidal ideation, and auditory or visual hallucinations.  Id.  Dr. Taylor diagnosed a psychotic disorder but assessed no observable symptoms.  Id.  Dr. Taylor planned to continue monitoring and charting his condition.  Id.

During both her July 1, 2010 and August 26, 2010 encounter with Gamez, he informed Dr. Taylor that he did not want any medication.  Dr. Taylor will testify she did not refer Gamez to psychiatry for this reason.  She will testify that this decision was the result of Gamez's own wishes and was within the standard of care.

24

1     On September 7, 2010, Gamez submitted a health needs request, which in
2 addition to other complaints, stated that he was having panic attacks, depression, anxiety,
3 and paranoia.  ADC0000794.  In response, Dr. Taylor treated Gamez on September 9,
4 2010, during another 30-minute one-on-one session.  ADC001027.  Gamez told her that
5 he believed he has schizophrenia, stating, "I am very paranoid."  Id.  He also told her "My
6 mind deteriorates, and I can't concentrate. I want to get to a yard. I don't want meds."  Id.
7 Dr. Taylor observed that Gamez again appeared alert and oriented, his mood euthymic,
8 and his affect was normal.  Id.  Gamez denied having any suicidal or homicidal ideation,
9 and any auditory or visual hallucinations.  Id.  Dr. Taylor again diagnosed a psychotic
10 disorder but assessed no observable symptoms.  ADC001028.  Dr. Taylor will testify that
11 on September 9, 2010, Gamez first indicated to Dr. Taylor that he would be open to taking
12 medications.  It was at this time that Dr. Taylor referred Gamez to psychiatry.  Id.  In
13 addition to his psychiatric referral, Dr. Taylor planned to continue monitoring and
14 charting his condition.  Id.

15     Dr. Taylor will testify to a reasonable degree of psychological probability
16 that her treatment of Plaintiff Gamez met the standard of care.

17     Psych Assistant, Beverly Yoches, treated Gamez on October 7, 2011, during
18 a cell-front session.  ADC001240.  Although Gamez subjectively reported that his mood
19 was "anxious," the psych assistant noted that he was alert and attentive, his concentration
20 was good, his affect normal, and his thought was logical.  Id.  She noted that he was not
21 threatening or banging, and that he denied he was a danger to others or self.  Id.  Because
22 Gamez told her he was "tired of waiting to see the doctor," she planned to follow up to
23 ensure that his placement on the psych line, and continue monitoring him pursuant to
24 policy.   Id.   After the Psych assistant treated Gamez, her notes were reviewed and
25 approved by Dr. Taylor in the course and scope of Taylor's job duties.  Indeed, Dr. Taylor
26 reviewed all notes by Dr. Yoches during this time.  Dr. Taylor will testify that during the
27 month of October 2011, Gamez was seen by psychiatry.  ADC198017-020.

28     Psych Assistant, Beverly Yoches, followed up with Gamez on November 4,

25

1    2011 during a cell-front session.  ADC001236.  The psych associate reported that his

2    mood was euthymic, and again noted that he was alert and attentive, his concentration was

3    good, his affect normal, his thought was logical, and he denied having any suicidal or

4    homicidal ideation.  Id.  They further noted that he was not threatening or banging, and

5    assessed that he denied he was a danger to others or self.  Id.  Gamez told them, "I'm

6    alright . . . up and down."  Id.  The psych associate recommended to Gamez that he submit

7    a HNR if he needs psych services in the future, and planned to continue monitoring his

8    condition pursuant to policy.  Id.  After the Psych assistant treated Gamez, her notes were

9    reviewed and approved by Dr. Taylor in the course and scope of Taylor's job duties.

10   Indeed, Dr. Taylor reviewed all notes by Dr. Yoches during this time.  Dr. Taylor will

11   testify that during the month of November 2011, Gamez was seen by a psychiatrist.

12   ADC198013-014.

13          Dr. Taylor will testify to a reasonable degree of psychological probability

14   that the aforementioned treatment provided to Plaintiff Gamez met the standard of care.

15          Dr. Taylor will testify regarding Plaintiff Polson's records relating to his

16   allegation that his mental health symptoms are caused or worsened by not receiving

17   adequate mental health care and that his suicidal ideation has increased as a result of his

18   housing.

19          Dr. Taylor will testify regarding her review of Plaintiff Rodriguez's records

20   relating to her allegation that her mental health care primarily involves medication and not

21   therapy. Dr. Taylor will testify regarding her review of Plaintiff Verduzco's records

22   relating to her allegation that she does not receive regular therapy.

23          Dr. Taylor will testify that during a random pull of inmate records in

24   preparation of completing the September 2013 MGAR, Plaintiff Verduzco's chart was one

25   of the random records selected.  ADC154196-200.  She will testify that Jessica Raak, the

26   mental health auditor, reviewed Verduzco's chart and that Dr. Taylor reviewed the results

27   of Ms. Raak's audit.  Dr. Taylor's review of the audit revealed that her treatment was

28   compliant with five of the six compliance measures.  Specifically, Verduzco's HNRs had

26

been triaged within 24 hours of receipt; any referrals she had to a psychiatrist or psychiatric mid-level provider resulted in her being seen within seven days of the referral; any mental health treatment plans had been updated within the last ninety days; and she was being seen by mental health staff according to policy.  Verduzco does not have a release plan so the discharge compliance measure did not apply to her.  As such, Dr. Taylor will testify to a reasonable degree of psychological probability that the care being provided to Plaintiff Verduzco in September 2013 fell within the standard of care.

Dr. Taylor will also testify that during a random pull of inmate records in preparation of completing the September 2013 MGAR, Plaintiff Polson's chart was one of the random records selected.  ADC154074-78.  She will testify that her review of Polson's record revealed that his treatment was compliant with five of the six compliance measures.   Specifically, his HNR's had been triaged within 24 hours of receipt; any referrals he had to a psychiatrist or psychiatric mid-level provider resulted in him being seen within seven days of the referral, any mental health treatment plans had been updated within the last ninety days; and he was seen by mental health staff according to policy. Polson does not have a release plan so the discharge compliance measure did not apply to him.  As such, Dr. Taylor will testify to a reasonable degree of psychological probability that the care being provided to Plaintiff Polson in September 2013 fell within the standard of care.

Dr. Taylor reviewed the expert reports of Dr. Pablo Stewart, Craig Haney and Eldon Vail.  She will testify regarding the mental health status, care and access to mental health care to the inmate population as referenced by Plaintiffs' experts, including any members of the population referenced through supplementation by Plaintiffs' experts and up until trial.  Dr. Taylor will testify concerning the treatment of the named plaintiffs up to the time of trial.  Dr. Taylor will further testify consistent with her deposition testimony.   Dr. Taylor will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

12.     Ron Credio, Warden, ASPC-Eyman
        c/o Struck Wieneke & Love, P.L.C.

Ron Credio is the Warden at ASPC-Eyman. He has been employed with the ADC for over 18 years, starting as a Correctional Officer at ASPC-Eyman/Rynning Unit. He was promoted to the position of Sergeant at ASPC-Florence/Central Unit, Lieutenant at ASPC-Eyman/Meadows Unit, Captain at ASPC-Florence/Picacho and North Unit, Associate Deputy Warden at ASPC-Florence/South Unit, Deputy Warden as ASPC-Phoenix/Globe and Alhambra, and Deputy Warden of Operations at ASPC-Florence. Warden Credio has a Bachelor of Science in Public Safety Administration, Associates Degree in Corrections, and Associates Degree in Management. He is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Eyman, its cell blocks, the inmates housed at ASPC-Eyman, recreation and therapy and behavioral programming at ASPC-Eyman, access to healthcare and the delivery of healthcare to inmates.  Warden Credio is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements;, lighting issues, conditions of confinement and management of SMU units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.   Warden Credio will also provide foundational testimony for institutional records.

13.   Gerald Thompson, DW, ASPC-EYMAN-SMU I
      c/o Struck Wieneke & Love, P.L.C.

Deputy Warden Gerald Thompson is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Eyman, its cell blocks, the inmates housed at SMU-I, and recreation, therapy and behavioral programming at SMU-I, and access to healthcare and delivery of healthcare to the inmates. Deputy Warden Thompson is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities;  food service, including nutrition requirements; lighting issues, conditions of confinement and management of SMU units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Deputy Warden Thompson will also provide foundational testimony for institutional records.

14.   Assistant Deputy Warden Munoz, ASPC-Eyman-Browning Unit
      c/o Struck Wieneke & Love, P.L.C.

Assistant Deputy Warden Munoz is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Eyman, its cell blocks, the inmates housed at ASPC-Eyman, recreation and therapy and behavioral programming at ASPC-Eyman, and access to healthcare and delivery of healthcare to the inmates.

29

Assistant Deputy Warden Munoz is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements;, lighting issues,  conditions of confinement and management of SMU units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.  Assistant Deputy Warden Munoz will also provide foundational testimony for institutional records.

15.     Stephen Morris, DW, ASPC-Eyman-Browning Unit (and former DW, ASPC-Florence-East)
c/o Struck Wieneke & Love, P.L.C.

Deputy Warden Stephen Morris is assigned to the Browning Unit at ASPC-Eyman, and is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Eyman, its cell blocks, the inmates housed in Browning Unit, recreation at Browning Unit, therapy and behavioral programming at Browning Unit, and access to healthcare and delivery of healthcare to the inmates. Deputy Warden Morris is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification

30

status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; food service, including nutrition requirements;, lighting issues, alleged sanitation and extermination issues at their respective facilities; conditions of confinement and management of SMU units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Deputy Warden Munoz will also provide foundational testimony for institutional records.

      16.    Lance Hetmer, Warden, ASPC-Florence
               c/o Struck Wieneke & Love, P.L.C.

      Lance Hetmer is the Warden at ASPC-Florence. He is responsible for the oversight of a multi-custody facility of approximately 4,270 inmates and approximately 1,055 full time staff. Warden Hetmer began his career with the ADC over 25 year ago as a Correctional Officer at the ASPC-Douglas facility. He was promoted through the ranks, holding the positions of sergeant, lieutenant and captain. With each promotion, he gained knowledge and experience in working with all custody levels at ASPC-Safford, Perryville, and Tucson. For the last 13 years he has held management positions of Associate Deputy Warden, Deputy Warden, and Deputy Warden of Operations. Warden Hetmer is likely to testify regarding his knowledge of ADC's historical and contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Florence, its cell blocks, the inmates housed in each cell block, recreation for all security levels, therapy and behavioral programming for all security levels, and access to healthcare and delivery of healthcare to the inmates. Warden Hetmer is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies

regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues and extermination issues at their respective facilities; food service, including nutrition requirements;, lighting issues, conditions of confinement and management of SMU units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Deputy Warden Hetmer will also provide foundational testimony for institutional records.

17.   Amy Barnes, ADW, ASPC-Florence-Kasson Unit
       c/o Struck Wieneke & Love, P.L.C.

Deputy Warden Amy Barnes is assigned to the Kasson Unit at ASPC-Florence, and is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Florence, its cell blocks, the inmates housed in Kasson Unit, recreation at Kasson Unit, therapy and behavioral programming at Kasson Unit, and access to healthcare and delivery of healthcare to the inmates. Deputy Warden Barnes is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum

32

custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Deputy Warden Barnes will also provide foundational testimony for institutional records.

18.   Chris Moody, Warden, ASPC-Lewis (and former DWOP, ASPC-Lewis)
c/o Struck Wieneke & Love, P.L.C.

Warden Chris Moody is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Lewis, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Moody is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements;, lighting issues; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Moody will also provide foundational testimony for institutional records.

19.   Alfred Ramos, Warden, ASPC-Douglas (and former Warden at ASPC-Phoenix)
c/o Struck Wieneke & Love, P.L.C.

Warden Alfred Ramos is the Warden at ASPC-Douglas and Former Warden

33

at ASPC-Phoenix. He began his career in corrections as a group worker at the Yakima County Juvenile Hall in Yakima, Washington.  He ultimately served as a Superintendent in the Washington Correctional system until his retirement in 2003.   In March 2004, Warden Ramos was hired by the ADC and assigned as an Associate Deputy Warden at ASPC-Lewis.  He was promoted in 2011 as Warden at ASPC-Phoenix.  He is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Phoenix and ASPC-Douglas, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Ramos is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements;, lighting issues; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.  Warden Ramos will also provide foundational testimony for institutional records.

20.     Berry Larson, Warden, ASPC-Winslow
          c/o Struck Wieneke & Love, P.L.C.

Warden Berry Larson is the Warden at ASPC-Winslow. Warden Larson manages three correctional facilities with a population of 1,943 inmates and 514 staff, 1 close/medium custody unit, 2 minimum custody units, and 50 contract jail beds. She has

34

been in the corrections field for 24 years, holding the positions of Correctional Officer I, Correctional Programs Officer I and II, Correctional Programs Supervisor, Associate Deputy Warden, and Deputy Warden.  She was the Deputy Warden of Programs at the Hutchinson Correctional Facility for the Kansas Department of Corrections for 3 years. In the field of corrections, Warden Larson has worked with male and female inmates, and juvenile offenders.  Additionally, she worked in correctional and probationary boot camps for adults and juveniles. She is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Winslow, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Larson is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements;, lighting issues; conditions of confinement and inmate management; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Larson will also provide foundational testimony for institutional records.

    21.    Judy Frigo, Warden, ASPC-Perryville
              c/o Struck Wieneke & Love, P.L.C.

Warden Judy Frigo is the Warden at ASPC-Perryville.  Please see Exhibit Bates Numbered ADC123426-123428 for her credentials and experience. Warden Frigo is

likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Perryville, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Frigo is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements;, lighting issues;   conditions of confinement and management of maximum units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Frigo will also provide foundational testimony for institutional records.

22.     James O'Neil, Warden, ASPC-Phoenix (and former DWOP, ASPC-Perryville)
c/o Struck Wieneke & Love, P.L.C.

Warden James O'Neil is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding both ASPC-Phoenix and ASPC-Perryville, their housing units, the inmates housed at ASPC-Phoenix and ASPC-Perryville, and recreation, therapy and behavioral programming at both ASPC-Phoenix and ASPC-Perryville.   Warden O'Neil is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement

36

with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.

23.   Lyle Broadhead, Warden, ASPC-Safford
c/o Struck Wieneke & Love, P.L.C.

Warden Lyle Broadhead is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Safford, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to inmates. Warden Broadhead is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and inmate management; inmates' access to programming, visitation, and recreation time; and educational programming

37

1  available to inmates.  Warden Broadhead will also provide foundational testimony for

2  institutional records.

3      24.    Therese Schroeder, Warden, ASPC-Tucson
              c/o Struck Wieneke & Love, P.L.C.
4

5          Warden Therese Schroeder is the Warden at ASPC-Tucson.   She is

6  responsible for approximately 1,300 staff and an inmate population of approximately

7  5,000 inmates.  Warden Schroeder began her corrections career in October 1988.  Her first

8  assignment as a Correctional Officer was at the Echo Unit at ASPC-Tucson.  In 1996 she

9  was promoted to Correctional Officer III, promoted to Correctional Officer IV in 1998,

10  and promoted to Associate Deputy Warden at Tucson/Rincon in 2001.  Warden Schroeder

11  was also the Deputy Warden of the Cimarron Unit and Deputy Warden of Operations at

12  ASPC-Tucson.  In April 2006 she was appointed as the Warden of ASPC-Safford.   In

13  2008 she was appointed as the Warden at ASPC-Perryville.  She became the Warden of

14  ASPC-Tucson in 2011.   Warden Schroeder has an Associate's Degree in Business

15  Management and has earned ACA's Certified Corrections Executive Certificate.  She is

16  likely to testify regarding her knowledge of ADC's contemporary practices and

17  procedures in relation to security operations, including general information regarding

18  ASPC-Tucson, its cell blocks, the inmates housed in each Unit, recreation at each Unit,

19  therapy and behavioral programming at each Unit, and access to healthcare and delivery

20  of healthcare to the inmates. Warden Schroeder is additionally likely to have discoverable

21  information with regard to Plaintiffs' institutional history and ADC's policies and

22  procedures, and conditions of confinement with respect to their respective facilities;

23  Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding

24  inmates with gang affiliations as well as ADC's management of gang affiliated inmates;

25  any Plaintiff's protective custody or classification status at any point during their

26  incarceration at ADC as well as the policies and procedures regarding the classification,

27  housing, programming, recreation, morale and welfare programs, and fundraisers; the

28  management of health care at each respective facility, the physical layout of each of their

38

respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements,; lighting issues; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Schroeder will also provide foundational testimony for institutional records.

25.     Laura Escapule, Warden, ASPC-Yuma (and former Warden of ASPC-Winslow)
        c/o Struck Wieneke & Love, P.L.C.

Warden Laura Escapule is the Warden at ASPC-Yuma.  She began her career with the ADC in 1996 as a Correctional Officer I at ASPC-Douglas.  In 1998 she was promoted to Correctional Officer III at ASPC-Yuma, followed by a promotion to Correctional Officer IV. In 2005 she was promoted to Deputy Warden at ASPC-Tucson, followed by a promotion to Deputy Warden of Operations in 2007 at ASPC-Yuma. Her current appointment entails supervision and management of a prison complex which employs 1,100 administrative, security and support staff, encompassing 2 minimum custody units, 2 medium custody units and 1 close custody unit.  Warden Escapule is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Florence, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Escapule is additionally likely to have discoverable information with regard to ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and inmate management; inmates'

access to programming, visitation, and recreation time; and educational programming available to inmates.   Moreover, Warden Escapule will testify regarding the work incentive pay plan ("WIPP") at Yuma which allows inmates to utilize experience, training, and expertise in meaningful employment while support their needs. Warden Escapule will also provide foundational testimony for institutional records.

26.    Robert Parkinson, FHA at ASPC-Florence
       c/o Corizon Health

Robert Parkinson is the former Facility Health Administrator for ASPC-Eyman, and current Facility Health Administrator for ASPC-Florence, and is likely to testify regarding his knowledge of ADC's policies and procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Florence including delivery of medications and delivery of mental health care and dental care, and the overall delivery of healthcare to the inmates.

27.    Ann Mullen, FHA at ASPC-Safford
       c/o Corizon Health

Ann Mullen is the Facility Health Administrator for ASPC-Safford, and is likely to testify regarding her knowledge of ADC's policies and procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Safford including delivery of medications and delivery of mental health care and dental care, and the overall delivery of healthcare to the inmates.

28.    Masood Sirjani, Dental Director at ASPC-Phoenix
       c/o Corizon Health

Masood Sirjani is the Dental Director for ASPC-Phoenix and will testify regarding his knowledge of ADC's policies and procedures for delivery of dental care to ADC's inmate population, the dental intake process for all male ADC inmates at ASPC-Phoenix, triage of dental HNRs, wait times for routine and urgent dental care at ASPC-Phoenix, and the review and resolution of grievances related to dental care, and the overall

delivery of healthcare to the inmates.

29.    Deborah Kinder, FHA at ASPC-Douglas
       c/o Corizon Health

Deborah Kinder is the Facility Health Administrator for ASPC-Douglas, and is likely to testify regarding her knowledge of ADC's policies and procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Douglas including delivery of medications and delivery of mental health care and dental care, and the overall delivery of healthcare to the inmates.

30.    Von Marschik, FHA at ASPC-Eyman
       c/o Corizon Health

Von Marschik is the Facility Health Administrator for ASPC-Eyman, and is likely to testify regarding his knowledge of ADC's policies and procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Eyman including delivery of medications and delivery of mental health care and dental care. Mr. Marschik has a lengthy tenure with Corizon Health Services and is also expected to testify regarding his experience and expertise in privatizing health care in correctional settings, and the overall delivery of healthcare to the inmates.

31.    Holly Massey, FHA at ASPC-Phoenix
       c/o Corizon Health

Holly Massey is the Facility Health Administrator for ASPC-Phoenix, and is likely to testify regarding her knowledge of ADC's policies and procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Phoenix including delivery of medications and delivery of mental health care and dental care, and the overall delivery of healthcare to the inmates.

32.    Matthew Harvey, FHA at ASPC-Tucson
       c/o Corizon Health

Matthew Harvey is the Facility Health Administrator for ASPC-Tucson, and is likely to testify regarding his knowledge of ADC's policies and procedures for delivery

of health care to ADC's inmate population; and the day-to-day operation of health services at Tucson including delivery of medications and delivery of mental health care and dental care, and the overall delivery of healthcare to the inmates.

33.   Elsie Stowell, FHA at ASPC-Winslow
      c/o Corizon Health

Elsie Stowell is the Facility Health Administrator for ASPC-Winslow, and is likely to testify regarding her knowledge of ADC's policies and procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Winslow including delivery of medications and delivery of mental health care and dental care, and the overall delivery of healthcare to the inmates.

34.   Angelo Daniels, Deputy Warden of Security Operations
      c/o Struck Wieneke & Love P.L.C.

Angelo Daniels is the Deputy Warden of Security Operations at ADC, and is likely to testify regarding his knowledge of ADC's policies and procedures for oversight of inmate meal preparation and delivery, including accommodation of the religious standards in place for the various faiths to which inmates in ADC custody belong, and provisions of adequate nutritional needs for special diets.  DW Daniels will also testify regarding his oversight of the Food Services Contract and collaborative relationship with Trinity Services Group in ensuring that adequate nutritional value is provided to inmates through all diets, including the mega sack meals provided to inmates in maximum custody. DW Daniels will testify regarding his oversight of the meals provided to ensure nutritional adequacy, caloric intake and appropriate rotation of food product in the meals. DW Daniels will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

35.   Mark Jansen, Interim Vice President Operations
      c/o Corizon Health

Mark Jansen is the Interim Vice President of Operations for Corizon Health. Please see Exhibit Bates Numbered ADC203360-ADC203362 for his credentials and

42

qualifications.  He is likely to testify regarding his knowledge of the contract between Optimal Phone Interpreters ("OPI") and Corizon to provide language translation services to ADC for assistance in providing health care to Limited English speaking inmates; the availability and usage of that service; and the HIPAA compliance related to that service. He is also expected to testify regarding Corizon's obligations under the Contract with ADC, Corizon's staffing, recruiting, policies, and the provision of medical, mental health and dental health care to ADC's inmate population.

    36.    Mark Fleming, PhD, LP, LPCMH, CRC, HSP, CCHP-MH
           c/o Corizon Health, Regional Vice President for Behavioral Health

    Dr. Fleming is the Regional Vice President for Behavioral Health for Corizon Health.  Please see Exhibit Bates Numbered ADC203363-ADC203364 for his credentials and qualifications.  As part of his employment, Dr. Fleming attends weekly, monthly, and quarterly quality assurance meetings.  He conducts quarterly leadership meetings for the lead psychologists at the ADC complexes during which he provides training on subjects such as the DSM V and ethical issues in charting.  He also holds weekly individual mentoring sessions with the lead psychologists.  He is responsible for performing annual peer reviews of the lead psychologists.  Dr. Fleming supervises three licensed associate counselors who are working towards independent licensure.  He provides training to mental health staff on conducting group programming and then observes their delivery of the programming.

    Dr. Fleming conducts site visits of all ADC complexes, during which he meets with the lead psychologists and other mental health staff, reviews inmate charts, and tours the units.  During his site visits, Dr. Fleming conducts random chart audits and also reviews charts identified by the ADC contract monitors.

    Dr. Fleming provides clinical treatment to ADC inmates statewide on an as-needed basis and has provided treatment to inmates at Eyman and Winslow.

    Dr. Fleming reviews the results of the MGARs completed by the ADC

43

contract monitors, as well as additional information provided by the ADC mental health monitors.  In addition, Dr. Fleming reviews monthly chart audits conducted by the lead psychologists.  Dr. Fleming also reviews data and logs for compliance with ADC policy and the contract and to include in Corizon's monthly report to ADC.

Dr. Fleming will testify based on his education, training, qualifications, and experience, as well as his review and knowledge of inmate records, reports, and data during the course of his employment.  Dr. Fleming is expected to testify regarding the mental health care offered to ADC's inmate population.  Dr. Fleming is also expected to testify regarding quality assurance reviews and activities, contract compliance and monitoring, training and reviews of mental health staff, and statistical data relating to the provision of mental health care to ADC inmates.  He is expected to testify regarding Corizon's obligations and performance under the Contract with ADC, Corizon's staffing, recruiting, policies related to the provision of mental health programming to ADC's inmate population and changes to these areas up until the time of trial.   He is expected to testify regarding the systemic delivery of mental health programming, individualized treatment, Corizon's systems in place for the delivery mental health care, as well as any changes to that delivery and treatment that may occur up until trial.  He will also testify regarding the operational oversight and clinical leadership and support to Corizon staff, ADC and inmates.   He is expected to testify regarding the mental health treatment programming offered to inmates throughout the ADC inmate population and any changes to programming that may occur up until the time of trial.  Dr. Fleming will also testify regarding the individualized mental health treatment regarding named Plaintiffs Swartz, Brislan, Thomas, Smith, Gamez, Chisholm, Polson, Verduzco and Rodriguez.

Based upon his professional training, experience, and review of the chart volumes for the thirteen named Plaintiffs, Dr. Fleming will be called to testify regarding his clinical opinion, that since March 4, 2013, each of the litigants who were seen by a mental health provider, as documented in the chart, received care that is line with clinical

best practice approaches.  Dr. Fleming is of the opinion that clinicians used approaches that addressed documented diagnostic concerns.  Specifically, mental health clinicians utilized a standard SOAP note in their documentation that included a mental status exam as well as a clear plan for follow up, there was consistently regular follow up for those on a suicide or mental health watch, psychiatric staff utilized AIMS (Abnormal Involuntary Movement Scale), clinical staff used individual and group therapy modalities in the treatment process, and clinical coordination with medical and psychiatric staff appeared evident.  Dr. Fleming will testify regarding pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

37.   Thomas Buenker, M.D., Regional Psychiatry Director
       c/o Corizon Health

Dr. Buenker is the Regional Psychiatry Director for Corizon Health. Please see Exhibit Bates Numbered ADC203365-ADC203367 for his credentials and qualifications.  Dr. Buenker previously worked half-time as the Director of Psychiatry at ASPC-Phoenix.  In his current position, Dr. Buenker provides clinical treatment to ADC inmates on an as-needed basis.  Dr. Buenker has treated inmates through telepsychiatry at Yuma and has also treated inmates on-site at Eyman.   He interviews applicants for psychiatry positions statewide and provides mentoring and training for new employees. He conducts site visits to ADC complexes three days a week to supervise psychiatrists and psychiatric nurse practitioners and to monitor compliance with ADC policies and the contract.  Dr. Buenker is responsible for performing annual peer reviews of psychiatrists at ADC, which include record audits.  Dr. Buenker approves non-formulary drug requests for psychotropic medications and is a member of the PMRB committee.

Dr. Buenker will testify based on his education, training, qualifications, and experience, as well as his review and knowledge of inmate records, reports, and data during the course of his employment.  Dr. Buenker is expected to testify regarding the psychiatric services provided to the inmate population and the administration of

45

1  psychotropic medications and any changes to services and administration of psychotropic

2  medications that occur up until trial. He is expected to testify Corizon's staffing,

3  recruiting, policies and practices related to the provision of psychiatric services to ADC's

4  inmate population and changes to these areas that occur up until trial. He is expected to

5  testify as to the psychiatric services provided on a systemic basis as well as individualized

6  treatment provided to inmates, including any changes to that treatment that may occur up

7  until trial. Dr. Buenker is also expected to testify regarding quality assurance reviews and

8  activities, contract compliance and monitoring, training and reviews of psychiatric staff,

9  and statistical data relating to the provision of mental health care and psychotropic

10  medications to ADC inmates.

11        Dr. Buenker will also testify regarding the individualized mental health

12  treatment regarding named Plaintiffs Brislan, Rodriguez, Thomas, Smith, Gamez,

13  Chisholm, Polson, Swartz, and Verduzco. Specifically, Dr Buenker will testify regarding

14  his review of Plaintiff Brislan's records relating to his claims that he has received

15  inadequate medication delivery and management, has not been regularly monitored by a

16  psychiatrist, and did not receive needed inpatient mental health care. Dr. Buenker will

17  testify regarding his review of Plaintiff Rodriguez's records relating to her claim that she

18  has experienced inadequate medication delivery and management, inadequate monitoring,

19  and did not receive needed inpatient mental health care. Dr. Buenker will testify regarding

20  his review of Plaintiff Thomas's records relating to his allegations that he has experienced

21  inadequate medication delivery and management, lack of informed consent, long delays in

22  follow-up and psychiatric evaluation, and was not prescribed a sleep aid. Dr. Buenker

23  will testify regarding his review of Plaintiff Smith's records relating to his allegations that

24  he has experienced inadequate medication delivery and management, inadequate

25  monitoring, and was prescribed medications not indicated for depression without being

26  seen by a doctor or obtaining informed consent. Dr. Buenker will testify regarding his

27  review of Plaintiff Gamez's records relating to his allegations that he has experienced

28  inadequate medication delivery and management, as well as inadequate monitoring and

46

follow-up.  Dr. Buenker will also testifying regarding Plaintiff Gamez's claim that he was not seen by a psychiatrist from 2007 to 2011.  Dr. Buenker will testify regarding his review of Plaintiff Chisholm's records relating to her allegations that she has experienced inadequate medication delivery and management, inadequate psychiatric care and follow-up, and delay in being seen by psychiatry after she reported having a nervous breakdown. Dr. Buenker will testify regarding his review of Plaintiff Polson's records relating to his allegations that he has experienced inadequate medication delivery and management and sporadic monitoring of his medication levels.  Dr. Buenker will testify regarding his review of Plaintiff Swartz's records relating to his allegations that he experienced inadequate medication delivery and management, inadequate monitoring, was not seen by a psychiatrist despite multiple suicide attempts, and did not receive inpatient treatment. Dr. Buenker will testify regarding his review of Plaintiff Verduzco's records relating to her allegations that she goes for months without seeing a psychiatrist despite displaying multiple symptoms of psychological distress and that she did not receive needed inpatient psychiatric care.

Based upon his professional training, experience and review of the chart volumes for the thirteen named Plaintiffs, Dr. Buenker will be called to testify regarding his clinical opinion that since March 4, 2013 each of the litigants seen by a mental health provider received mental health care consistent with best practices approaches.  Overall, the treatment modalities implemented for the plaintiffs were appropriate for the indicated diagnoses.  Documentation was in the appropriate format and the plan for follow up was appropriately noted and determined by the individual mental health providers.  Mental health staff used both individual and group therapy as part of the treatment.

Dr. Buenker will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

38.  Michael Dolny, Ph.D, Administrative Services Officer V (Research Manager)
c/o Struck Wieneke & Love, P.L.C.

47

Dr. Dolny is an Administrative Services Officer V (Research Manager) for ADC.  Please see Exhibit Bates Numbered ADC229839-ADC229842 for his credentials and qualifications.  Dr. Dolny reviewed the reports of Plaintiffs' expert witnesses in order to assess the sampling methodologies used by those expert witnesses.  Dr. Dolny will testify that there are few statistical claims made in the expert witness reports reviewed. They contain no hypothesis tests, statistical tests for significance or inferential statistics used.   Nothing in the reports indicates that the findings included are generalizable. Plaintiffs' experts sampling methodology lacks statistical rigor in that the experts fail to provide what the sampling methodology actually was or how many cases were reviewed to identify the representative cases cited as examples.  There is no way to evaluate the statistical meaning of the representative cases chosen by Plaintiffs' experts.  Dr. Dolny will testify that despite Plaintiff's experts' attempts at outlining their methodologies, it is unclear from the actual data in the reports what the methodology is.   He will further testify that the sample sizes lack precision.  Small sample sizes, even if taken at random, create estimates in the population that also lack precision and lead to large standard errors. When sample sizes are increased, the standard error is reduced.  Dr. Dolny will also testify that the narrative findings contained in Plaintiffs' experts' reports cannot be generalized to the population.   Dr. Dolny will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

39.    Laura Donnelly
       Trinity Services Group
       c/o McCarter & English
       Gregory Cote
       265 Franklin Street
       Boston, Massachusetts 02110
       (617) 449-6500

Ms. Donnelly is a registered dietician who works for Trinity Services Group, the third-party vendor that supplies food services to ADC.  Ms. Donnelly is expected to testify regarding the nutritional adequacy and caloric requirements and

48

1   provisions for those inmates in maximum custody and detention units, including but not

2   limited to the adequacy of the mega sack meals provided to those inmates.  Ms. Donnelly

3   will further testify about the collaborative relationship between ADC and Trinity Food

4   Services as it relates to the planning and provision of meals to inmates in maximum

5   custody and detention units up until the time of trial. Ms. Donnelly will testify pursuant to

6   Federal Rule of Civil Procedure 26(a)(2)(C).

7       40.   William Smallwood, D.D.S., CEO, Smallwood Prison Dental Servcies
              c/o Smallwood Prison Dental Services
8             The Sack Law Firm
              Jeffrey M. Mervis
9             8270 Greensboro Drive, Suite 810
              McLean, Virginia 22102
10            (703) 883-0102
11

12  Dr. Smallwood is the owner of Smallwood Prison Dental Services (SPDS),

13  which subcontracts with Corizon to provide dental services at ADC. A copy of his CV,

14  which explains his education and experience, is attached.  Dr. Smallwood has experience

15  in providing prison dental services at several correctional facilities across the country.  He

16  understands the challenges that treating inmates in a correctional setting presents and how

17  the circumstances differ from a private practice setting.

18  Dr. Smallwood will testify pursuant to Federal Rule of Civil Procedure

19  26(a)(2)(C).

20  Dr. Smallwood reviewed the dental expert report submitted by Dr. Shulman.

21  In Dr. Smallwood's opinion, Dr. Shulman's stated method of selecting his sample, which

22  included inmates "who had one or more scheduled appointments for issues related to pain

23  and swelling" was biased and focused on selecting records of inmates with problems.  Dr.

24  Smallwood will testify that in his opinion and based upon the theories of statistics, Dr.

25  Shulman should have made a random selection of records.

26  Dr. Smallwood will testify that SPDS uses the proprietary Correctional

27  Dental Software (CDS) program to manage dental requests and appointments, monitor

28

49

1    wait times, and track dental statistics at ADC.  He will testify regarding the available

2    reports and statistics, which include number of requests for dental treatment submitted,

3    current wait times, number of procedures performed, and number of treatment refusals.

4    Dr. Smallwood will testify regarding the current wait times and dental statistics at the time

5    of trial.  Dr. Smallwood may also perform a live demonstration of the capabilities of the

6    CDS program at trial.

7            Dr. Smallwood will testify that when SPDS took over the provision of

8    dental care at ADC from Wexford in March 2013, there was a backlog of dental requests.

9    He will testify that by August 2013, nearly all of the backlog was cleared.  He will testify

10   that as of December 2013, the longest average wait time for routine dental care statewide

11   is 1.5 months, which is half the time required by the ADC contract.  He will also testify

12   that as of December 2013, all dental intakes were completed within 30 days statewide.

13   This intake procedure is in compliance with ADC policy as stated in the DSTM at 770.1

14   and NCCHC standard P-E-06.

15           Dr. Smallwood will testify that in his opinion, relying on inmate to dentist

16   staffing ratios would not yield the results necessary to effectively manage statewide dental

17   operations for a correctional system of nearly 36,000 inmates such as ADC.  He will

18   testify that determining the appropriate staffing at a correctional dental clinic depends on

19   numerous factors, including (1) whether the facility houses male or female inmates; (2)

20   the security level of the facility; (3) whether the facility serves as a reception center for

21   inmates; (4) the proximity of facilities; and (5) cost for staff types.  He will testify that the

22   bottom line in determining staffing levels is the volume of work that needs to be

23   completed and being able to effectively and timely manage the workload within the

24   standard of care.

25           Dr. Smallwood will testify that CDS provides him an accurate and up-to-

26   date view of the exact number of dental requests pending at any given time and wait

27   times.  Dr. Smallwood will testify that in addition to CDS, he also relies on input from the

28   regional dental directors at ADC to determine appropriate staffing levels at ADC

complexes.  He will testify that he reviews dental staffing, HNR volumes, and wait time reports on a regular basis to review that staffing meets patient needs.  He will testify that he reallocates staffing resources as needed to see that timely service is provided at all ADC complexes.   To achieve this, he employs several dentists who split their time between multiple complexes.  He also moves dental staff on a temporary basis to other complexes if needed to manage wait times, and SPDS pays for their travel and lodging costs.  He will testify that in his opinion, this approach to staffing is the most efficient and cost-effective way to provide timely and appropriate dental care in a correctional system such as ADC.  He will also testify that in his opinion, dental staffing at ADC is sufficient to meet the needs of the ADC inmate population, as evidenced by low wait times for dental treatment at all complexes statewide.

Dr. Smallwood will testify that he recently hired two dental hygienists, one for the Northern region and one for the Southern region.  He will testify that the dental hygienists travel to the dental clinics within their respective regions based on inmate demand to provide cleanings. He will testify that wait times for routine treatment, which includes cleanings, are 1.5 months or less at all ADC complexes statewide as of December 2013.  He will also testify regarding the current wait times for routine care treatment at the time of trial.

Dr. Smallwood will testify that ADC does not have an "extraction-only" policy.  He will testify that the dentists he employs perform fillings on teeth that can be restored, but that some teeth are non-restorable.  He will testify that in his experience, the incidence of "meth mouth" is high among inmates and that a high percentage of inmates have poor oral hygiene and have never seen a dentist.  He will testify that for an inmate with "meth mouth," extraction is often the only available treatment option.  He will also testify that whether a tooth can be restored is a matter of clinical discretion based upon a review of current x-rays and a clinical examination.

Dr. Smallwood will testify that SPDS dentists are reviewed annually using a peer review process and that he also evaluates dentists based on their productivity to

1  ensure that inmates are provided timely and appropriate dental care.  He will testify that
2  CDS enables him to quickly and easily evaluate the productivity of all dentists he
3  employs.

4          Dr. Smallwood will testify that dental assistants at ADC have all passed an
5  examination and possess a certification that permits them to take dental x-rays.  Dr.
6  Smallwood will testify that dental assistants do not perform dental procedures and that a
7  dentist is always on-site at the clinic during clinic hours.  He will testify that dental
8  assistants are evaluated by their supervising dentists.  Dr. Smallwood will testify that in
9  his opinion, having dental assistants triage dental HNRs and take dental x-rays based on a
10  standing order from their supervising dentist is appropriate and within the standard of
11  care.

12          Dr. Smallwood will also testify that based on his decades of experience in
13  providing correctional dentistry, the NCCHC is the governing industry standard for
14  correctional dentistry.  Dr. Smallwood will testify that the dental classification system
15  outlined in ADC's Dental Services Technical Manual meets NCCHC standard P-E-06,
16  which requires that oral treatment is provided based on a system of established priorities
17  for care.  He will also testify that ADC policies on access to care, intake screening, oral
18  examination, dental sick call, x-rays, referral to specialists, supplies and equipment,
19  infection control, and staffing levels are within NCCHC guidelines as outlined in P-E-06
20  and Appendix G of the NCCHC Standards for Health Services in Prisons.  He will also
21  testify that ADC policy 770.1, which requires dental intake screening within 7 days and a
22  comprehensive oral examination within 30 days of admission complies with the
23  requirements of NCCHC standard P-E-06.  He will also testify that ADC policy as stated
24  in the contract, which requires that urgent care requests be treated within 72 hours mirrors
25  NCCHC guidelines as set forth in Appendix G of the standards.

26          Dr. Smallwood will testify that in his opinion, the correct measure of a
27  correctional dental system is not whether it meets an arbitrary staffing ratio but whether it
28  provides timely and appropriate dental care to inmates.  He will testify that in his opinion,

SPDS provides timely and appropriate care to ADC inmates.

All of the opinions expressed by Dr. Smallwood herein are to a reasonable degree of dental probability.

41.    Ernest Trujillo, ADC Southern Regions Operations Director (SROD)
c/o Struck Wieneke & Love, P.L.C.

Ernest Trujillo is the Southern Region Operations Director of ADC.  Please see Exhibit Bates Numbered ADC123472-123477 for his credentials and experience. Mr. Trujillo is likely to testify with regard to the delivery of medical, dental and mental health care to the inmates; his activities in ensuring compliance with all Department Orders, Procedural Manuals, Post Orders, and Standard of Operations as they apply to security and operational practices, staff safety, the welfare of the inmate population; his supervision of ADC facilities, including policy and program development and implementation statewide with regard to security operations, inmate programming, and standardization of staffing; ensuring the implementation of the Department's Strategic Plan and other agency initiatives, and standardization of processes and procedures in all facilities.

Mr. Trujillo will also testify regarding the changes implemented for maximum custody inmates, specifically inmates who are in maximum custody and designated as Seriously Mentally Ill.  He will also testify regarding the positive outcomes related to these changes once the changes have been made.

Mr. Trujillo has reviewed the reports of Plaintiffs' experts Eldon Vail and Craig Haney.  Mr. Trujillo will testify regarding the conditions of confinement as alleged by both Mr. Vail and Mr. Haney and as to the conditions of confinement for those inmates in maximum custody or detention units that may change up until the time of trial.  Mr. Trujillo will testify regarding the classification system for mentally ill inmates placed in maximum custody and detention units, specifically but not limited to the fact that ADC's classification system has been reviewed and validated by Dr. James Austin of the

American Correctional Association and the National Institute of Corrections. Further, every inmate receives an annual classification review, which is an interactive process including the inmate.  Mr. Trujillo will also testify regarding the ability of inmates, with the exception of those inmates on Death Row, to earn their way out of maximum custody or detention units and the criteria for such movement.  Mr. Trujillo will testify that there are various groups of mental health inmates in maximum custody or detention units, which each require special considerations in how ADC addresses their housing and movement.  Additionally, Mr. Trujillo will testify regarding the training that all correctional staff receives and the training that staff assigned to mental health units are undergoing , including ASIST Training and other specialized training regarding inmates with mental illness.  Officers are selected to work in those areas of maximum custody housing mentally-ill inmates based on their experience level and demonstrated ability to address situations that may arise.  These officers serve 5 years at these posts before rotating in order to provide consistency in these housing areas.  Further, all sergeants and lieutenants will be trained in motivational interviewing as part of crisis intervention training.

Mr. Trujillo will also testify regarding the frequency with which inmates have contact with individual staff, whether it be correctional or medical staff.  Mr. Trujillo will testify regarding the opportunity for recreation within the maximum custody and detention units.  Further, maintenance issues throughout ADC are regularly addressed with those issues positing a security or safety concern given higher priority.  Mr. Trujillo will testify as to the changes occurring at Perryville Complex – Lumley Unit that affects the programming access and conditions of confinement of mentally ill inmates in that unit.  Mr. Trujillo will also testify regarding the issues related to mentally ill inmates in maximum custody or detention units that are unique to Perryville as the only complex that houses female inmates with exception of George Ward at the Phoenix Complex.

Mr. Trujillo will further testify regarding the requirement that staff and visitors to maximum custody and detention units wear safety gear.  He will testify that

54

staff safety is a priority and that the equipment in use today is the direct result of past incidents of violent inmate behavior.  Mr. Trujillo will testify regarding the health and welfare checks that are occurring through ADC for inmates in maximum custody and detention units, including the role of the roving officer whose sole job duty is to conduct such checks.  He will also testify regarding the policies and procedures regarding the use of chemical agents and the circumstances for such use.  He will testify regarding the emphasis ADC places on de-escalation techniques, barring emergency situations requiring immediate response.  Mr. Trujillo will also address conditions of confinement issues raised by named Plaintiffs.  Particularly, Mr. Trujillo will testify regarding the allegations made by Plaintiff Verduzco relating to the length of the suicide smocks, cell lighting, being awoken by security staff for safety checks, minimal human contact, and being unable to go outside, brush her teeth, or bathe regularly.  He will also testify regarding her claim that after being pepper sprayed, she is stripped naked and hosed down by security staff. Mr. Trujillo will testify regarding Plaintiff Rodriguez's allegations that while on suicide watch she is only allowed to shower twice a week, is not provided toothpaste and a toothbrush, cannot go to recreation, and is not allowed to have reading materials. Mr. Trujillo will testify regarding Plaintiff Chisholm's claims that she experienced custodial harassment.

Mr. Trujillo will testify as to the current status of all of these areas, the allegations contained in Plaintiffs' expert reports, and changes that may be implemented up until trial.  Mr. Trujillo will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

42.   Brian Hanstad, D.M.D., Northern Regional Dental Director and Dental
Supervisor ASPC-Perryville
c/o Smallwood Prison Dental Services
The Sack Law Firm
Jeffrey M. Mervis
8270 Greensboro Drive, Suite 810
McLean, Virginia 22102
(703) 883-0102

55

1    Dr. Hanstad is the Northern Region Dental Director and the Dental

2  Supervisor for ASPC-Perryville.   Please see Exhibit Bates Numbered ADC255799-

3  ADC255800 for his credentials and qualifications.  All opinions are stated to a reasonable

4  degree of dental probability.  Dr. Hanstad will testify pursuant to Federal Rule of Civil

5  Procedure 26(a)(2)(C).

6    Dr. Hanstad will testify regarding his knowledge of and interactions with

7  named Plaintiffs Maryanne Chisholm and Charlotte Wells related to their dental care.  He

8  will testify that in his opinion, the dental treatment they received was appropriate and

9  within the standard of care.  Dr. Hanstad will testify regarding his review of Plaintiff

10  Stephen Swartz's dental records and his opinions regarding the treatment provided to

11  Swartz relating to his allegations that he had a cracked molar for two years and was told

12  the only option was to extract the tooth.  Dr. Hanstad will testify regarding his review of

13  Plaintiff Polson's dental records and his opinions regarding the treatment provided to

14  Polson relating to his allegations that he experienced long delays in receiving partial

15  dentures and treatment for broken teeth.

16    Specifically, Dr. Hanstad will testify that he treated Plaintiff Chisholm from

17  2011 to 2013.  See Plaintiff Chisholm's medical records as produced at ADC000001-

18  ADC000286;  ADC050723-050727;  ADC071361-ADC071393;  ADC084454-084700;

19  ADC123341-ADC123378;       ADC130340-ADC130719;       ADC197417-ADC197424;

20  ADC222045-222049; ADC229674-ADC229745; and ADC232211-20.  Dr. Hanstad will

21  testify that he saw Chisholm on 12/30/11 for a pain evaluation, during which he diagnosed

22  her with recurrent decay well below the gumline on tooth #18.  ADC071375.   He

23  prescribed antibiotics and scheduled her for an extraction in two weeks.  ADC071375.

24  Chisholm returned to the dental clinic on 1/12/12 but refused extraction of tooth #18.

25  ADC071375.  She was counseled on the consequences of refusing treatment and signed a

26  refusal, stating she was "afraid of jaw breakage."  ADC071375, ADC000155.

27    Dr. Hanstad will testify that he saw Chisholm on 1/15/13 and that she

28  reported picking at tooth #14 due to her OCD.  ADC071374-75.  A periapical x-ray

56

1    showed signs of extreme tampering with a foreign object, and he observed Chisholm had

2    sheared enamel off that tooth.  ADC071375.  Chisholm reported no prior problems with

3    tooth #14.  Id.  A temporary filling was placed, and Chishom was instructed not to pick at

4    the tooth.  ADC071374.  She was seen for follow-up on 1/22/13 for placement of a

5    permanent filling on tooth #14.  Id.  Dr. Hanstad observed inflammation in the area and a

6    defect in the filling, consistent with her tampering with the area.  Id.  He again instructed

7    her not to use improper objects to clean her teeth.  Id.

8         Dr. Hanstad will testify that his recommendation to extract tooth #18 was

9    within the standard of care due to the level of decay observed being well below the

10   gumline.  Dr. Hanstad will testify that there is no support for Chisholm's claim that she

11   was told the only available treatment was to pull her teeth and that he in fact placed a

12   filling on tooth #14.  Dr. Hanstad will testify consistent with the content of the treatment

13   records he authored and/or reviewed during the course of his treatment of Plaintiff

14   Chisholm.  He will testify that his treatment of Chisholm was within the standard of care.

15        Dr. Hanstad will testify regarding his treatment of Plaintiff Wells in 2013

16   and his review of records of treatment provided by other dentists at ADC during the

17   course of his own treatment of Wells.  See ADC006565-ADC007144; ADC082671-

18   082696;  ADC091490-091666;  ADC071920-ADC071950;  ADC122867-ADC122920;

19   ADC134802-ADC135377;     ADC197514-ADC197526;     ADC198521-ADC198953;

20   ADC222139-222151; and ADC232257-59.  He will testify that he saw Wells on 2/7/13

21   for a cracked molar.  ADC197519.  He diagnosed her with a fracture of tooth #13 and

22   placed a filling.  Id.  Wells submitted an HNR dated 2/28/13 stating that the filling was

23   causing her pain.  ADC197525.  She was seen for a pain evaluation on 3/6/13 and refused

24   treatment, stating "my tooth is not hurting any more."  ADC197521.  She submitted an

25   HNR dated 6/9/13 requesting a filling on a cracked lower front tooth and was placed on

26   the routine care list.  ADC197524.  She submitted an HNR on 8/8/13 regarding pain in her

27   upper tooth.  ADC197523.  She was seen for a pain evaluation on 8/9/13 and reported

28   pain on tooth #13.  ADC197519-18.  Dr. Garcia noted that the filling on #13 was intact

1    and explained that pain was likely due either to traumatic occlusion or necrosis of the

2    nerve.   Id.   Wells was prescribed ibuprofen for pain and instructed to return for an

3    extraction if her symptoms persisted.  ADC197518.  On 8/29/13, she submitted an HNR

4    regarding pain in her upper tooth.  ADC197522.  She was seen for a pain evaluation on

5    8/30/13 and requested that tooth #13 be pulled.  ADC197518.  Dr. Garcia planned to

6    extract #13, but when Dr. Garcia touched tooth #14 with the periodontal explorer, Wells

7    jumped out of the chair and complained of pain on tooth #14.  Id.  Dr. Garcia instructed

8    Wells to return to the clinic when she could identify which tooth was causing her pain.  Id.

9    On 9/11/13, Wells returned to the clinic and was seen by Dr. Hanstad.  ADC197517.  She

10   pointed to tooth #13 and reported that it "hurts when I bite things."  Id.  Dr. Hanstad noted

11   that past intermittent pulpitis due to a deep fill on tooth #13 had progressed to irreversible

12   pulpitis.   Id.   He extracted tooth #13.   Id.   Dr. Hanstad will testify consistent with the

13   content of the treatment records he authored and/or reviewed during the course of his

14   treatment of Plaintiff Wells.

15          Dr. Hanstad will testify that his placement of a filling on tooth #13 was

16   within the standard of care.  He will testify that the filling was deep and that given Wells'

17   continued complaints on pain in the tooth and the progression of decay to irreversible

18   pulpitis, his extraction of tooth #13 was within the standard of care.  He will also testify

19   that there is no evidence in Wells' chart to support her claim that a dentist cracked an

20   adjacent tooth while attempting to place a filling.

21          He may also testify regarding the dental care of other ADC inmates whom

22   he has treated or whose dental records he has reviewed, including whether their dental

23   care was appropriate and within the standard of care.

24          Dr. Hanstad will testify that upon intake, inmates are provided with dental

25   hygiene instruction.   Because of security concerns, special toothbrushes are issued.

26   Inmates are taught how to brush their teeth and how to practice good dental hygiene in the

27   corrections setting.   Inmates are also instructed on how to access dental care through

28   HNRs.

1          Dr. Hanstad will testify regarding ADC policies relating to timeliness of
2    dental intakes, routine care, and urgent care.  He will testify that per ADC policy, inmates
3    receive dental x-rays and a comprehensive oral evaluation within 30 days of intake, unless
4    it has been less than six months since the inmate was previously in ADC custody.  Dr.
5    Hanstad will testify that female inmates go through the dental intake process at Perryville.
6    He will testify that male inmates have their dental intake x-rays taken at Phoenix, but may
7    receive their comprehensive oral examination at their receiving units. Dr. Hanstad will
8    testify that intake wait times are less than 30 days statewide as of December 2013 and will
9    also testify regarding current wait times at the time of trial.

10          Dr. Hanstad will testify that ADC does not have an "extraction-only" policy.
11    He will testify that dentists at ADC perform fillings on teeth that can be restored, but
12    many teeth are non-restorable and cannot be filled.  He will explain hat many inmates
13    come into the system with little or no dental care and poor dental hygiene practices.  He
14    will testify that the incidence of "meth mouth" is very high among inmates in ADC
15    custody, particularly among the female inmates.  He will testify that for an inmate with
16    "meth mouth," extraction is often the only viable treatment option.  He will also testify
17    that whether a tooth can be restored is a matter of clinical discretion based upon a review
18    of current x-rays and a clinical examination.

19          Dr. Hanstad will testify that inmates may refuse dental care or specific
20    dental treatment and that refusals are to be noted on the refusal form.  He will also testify
21    that ADC policy requires that dentists obtain informed consent from inmates for oral
22    surgery, including extractions.  He will testify that dentists explain the risks and benefits
23    of the procedure, as well as any available treatment alternatives, to the inmate, and the
24    inmate signs the informed consent form if he or she decides to have the procedure
25    performed.  Dr. Hanstad will testify that the informed consent form for oral surgery does
26    not include fillings as an option because many times a filling is not an available treatment
27    alternative if the dentist is recommending an extraction.

28          Dr. Hanstad will testify that in his opinion, inmate to dentist staffing ratios

59

1    are not the most appropriate method for determining dental staffing needs.  He will testify

2    that determining the appropriate staffing at a correctional dental clinic depends on factors

3    such as HNR volume and security issues.   He will testify that Perryville receives the

4    highest number of HNRs of any complex statewide, even though it ranks sixth statewide

5    in terms of inmate population. He will testify that dentists at Perryville perform more

6    dental procedures than any other dental clinic statewide.  In addition, Dr. Hanstad will

7    testify that female inmates do not have the same no-show rate as male inmates.  As a

8    result, Perryville's dental staffing needs are different than other complexes.  Dr. Hanstad

9    will also testify that dentists at complexes such as Winslow, Safford, and Douglas, which

10   have smaller, lower custody populations, can generally see more patients per day than

11   dentists treating higher custody populations at complexes such as Lewis and Eyman.  He

12   will testify that maximum custody inmates must be transported by correctional staff to

13   dental appointments in restraints, which lengthens the time in between appointments.

14           Dr. Hanstad will testify that in his experience, ADC inmates sometimes

15   submit dental HNRs for reasons other than to obtain dental treatment.  He will testify that

16   some inmates in maximum custody submit HNRs to get out of their cells.  He will testify

17   that at Perryville, the dental department now has a portable dental chair which can be

18   taken to the maximum custody unit to provide dental care on-site.  This enables a dentist

19   to treat a maximum custody inmate without having to close down the entire dental clinic

20   due to the inmate's security level.  He will also testify that inmates submit dental HNRs

21   claiming they have pain in order to be seen sooner but deny having pain when they are

22   called into the clinic.

23           Dr. Hanstad will testify that in his opinion, dental staffing at ADC is

24   sufficient to meet the needs of the ADC inmate population, as evidenced by low wait

25   times for dental treatment at all complexes statewide.  He will testify that ADC policy

26   requires that urgent care requests be seen within 72 hours and routine care requests within

27   90 days.  He will testify that intake examinations must be performed within 30 days.  Dr.

28   Hanstad will testify regarding current dental wait times at the time of trial.

Dr. Hanstad will testify regarding reasons that an inmate may have an extended wait time for dental care, such as being out to court, refusing treatment, or experiencing certain health problems which require clearance from a physician prior to undergoing dental treatment.

Dr. Hanstad will testify that dental assistants at ADC have all passed an examination and possess a certification that permits them to take dental x-rays. He will testify that he has a standing order for his dental assistants to take x-rays to assist him in his clinical evaluation. Dr. Hanstad will testify that dental assistants review the inmate's complaint, take a health history, and take x-rays if needed. He will testify that dental assistants do not perform dental procedures and that a dentist is always on-site at the clinic during clinic hours. Dr. Hanstad will testify regarding requirements for dental training and supervision under Arizona state law. Dr. Hanstad will testify that in his opinion, having dental assistants triage dental HNRs and take dental x-rays based on a standing order from their supervising dentist is within the standard of care.

Dr. Hanstad will testify regarding the dental priority classification system in the Dental Services Technical Manual. He will testify that dental assistants are instructed to classify HNRs mentioning the words "pain" and/or "swelling" and any synonyms as urgent care. Dr. Hanstad will testify that per ADC policy, urgent care requests must be seen within 72 hours. He will testify that many urgent care requests are seen the same day or within 24 hours. He will testify that most dental clinics are open Monday through Friday. On weekends, nursing staff triage dental HNRs using dental protocols, and inmates experiencing pain and swelling may be seen on sick call outside of dental clinic hours.

Dr. Hanstad will testify that dental assistants receive on-the-job training from the dentists they assist and are evaluated on their triaging skills on an on-going basis. Dr. Hanstad will testify that dentists are evaluated annually through the dental peer review process, which includes chart reviews to assess appropriateness of care provided. He will testify that dentists are also evaluated on their productivity, which is assessed using the

61

1   CDS program.  He will testify that all dentists in ADC are licensed in Arizona and must

2   complete continuing education to maintain their licensure.

3          Dr. Hanstad will testify that dental emergencies are rare at ADC and usually

4   involve broken jaws.  He will testify that dental emergencies are generally referred to

5   outside providers and hospitals.

6          Dr. Hanstad will testify that SPDS has hired two dental hygienists, one for

7   each region.  The dental hygienists travel to the complexes within their regions depending

8   on inmate demand for cleanings. Dr. Hanstad will testify that wait times for routine care,

9   which includes cleanings, average 1.5 months or less at all ADC complexes statewide as

10  of December 2013.  He will also testify regarding current routine care wait times at the

11  time of trial.

12         Dr. Hanstad will also testify regarding the capabilities of the CDS program.

13  He will testify that CDS provides a real-time snapshot of current dental requests and wait

14  times.  He will testify that inmates on the routine care list are listed in order of longest to

15  shortest waiting time.  If an inmate has been waiting for 90 days or longer, the wait time

16  for that inmate turns red to alert staff. He will testify that he can run reports on the number

17  of HNRs, the numbers of procedures performed, the number of refusals, and average wait

18  times. He will testify that CDS is linked to AIMS so that dental staff has access to

19  accurate information on an inmate's housing location.  If an inmate on the routine care list

20  is transferred to another complex, the inmate is automatically transferred to the routine

21  care list at the receiving complex based on the date of the inmate's original HNR.  He will

22  testify regarding current dental statistics at the time of trial.

23         All of the opinions expressed by Dr. Hanstad herein are to a reasonable

24  degree of dental probability.

25      43.   Winfred Williams, Chief Medical Officer , M.D.
              c/o Corizon Health
26

27         Winfred Williams is Corizon's current Chief Medical Officer, and will

28  testify pursuant to FRCP 26(a)(2)(C).  He will testify regarding his knowledge of ADC's

policies and procedures related to the delivery of medical care to ADC's inmate population; and the implementation and use of the Care Log software at Yuma. Dr. Williams has a lengthy tenure with Corizon Health Services and will also testify regarding his experience and expertise in privatization of health care in correctional settings and Corizon's outcomes measurements in the ADC system.

Dr. Williams will also testify regarding his review of Plaintiff Shawn Jensen's medical records and his opinions regarding the treatment rendered to Jensen. He will further testify regarding specific allegations made by Mr. Jensen as it relates to his medical care in connection with his treatment for prostate cancer as well as his current prognosis.

Dr. Williams will testify regarding his review of Plaintiff Swartz's medical records and his opinions regarding the treatment rendered to Swartz after he was involved in two inmate assaults in 2010. Specifically, he will testify regarding the follow-up care, medications, and subsequent facial reconstructive surgery. He will also testify regarding Plaintiff Swartz's allegations that staff screened him with a metal detector after he swallowed metal, did not refer him for an endoscopy, and told him he would have to pass the metal.

Dr. Williams will testify regarding his review of Plaintiff Rodriguez's medical records and his opinions regarding the treatment rendered to her. He will further testify regarding Plaintiff Rodriguez's allegation that she has experienced multiple asthma attacks and breathing problems as a result of her exposure to pepper spray.

Dr. Williams will testify regarding his review of Plaintiff Thomas's medical records and his opinions regarding the treatment provided to him. He will further testify regarding Plaintiff Thomas's specific allegations that in November 2011, he overdosed on Diclofenac and did not receive medical attention, that he has experienced insomnia and weight loss while in SMU, and was not prescribed a sleep aid.

Dr. Williams will testify regarding his review of Plaintiff Gamez's medical records and his opinions regarding the treatment provided to him. He will further testify

63

regarding Plaintiff Gamez's specific allegations that his care was managed by a nurse practitioner, he did not receive follow-up tests to confirm that he has frontal lobe dysfunction, and his medications have been denied or delayed.

Dr. Williams will testify regarding his review of Plaintiff Chisholm's medical records and his opinions regarding the treatment provided to her. He will further testify regarding Plaintiff Chisholm's specific allegations that she was not referred to a cardiologist for eight months despite experiencing chest pains and shortness of breath and did not receive adequate care or testing from outside specialists.

Dr. Williams will testify regarding his review of Plaintiff Licci's medical records and his opinions regarding the treatment provided to her. He will further testify regarding Plaintiff Licci's specific allegations that she has experienced delays in seeing an oncologist and receiving testing regarding masses on her breasts, mouth, arms, and ovaries, that she experiences extreme discomfort in her cervix that impacts her bowels and results in constipation, and medical staff make false claims in replies to her grievances. Dr. Williams will also testify regarding Plaintiff Licci's allegation that her port-a-cath may not have been properly flushed.

Dr. Williams will testify regarding his review of Plaintiff Hefner's medical records and his opinions regarding the treatment provided to him. He will further testify regarding Plaintiff Hefner's specific allegations that his vision deteriorated after a nurse gave him expired eye drops, he did not receive eye medication following eye surgery in 2006 and 2008, has not seen an ophthalmologist, and experienced delay in receiving a CT scan following an injury. He will testify regarding Plaintiff Hefner's allegation that he did not receive adequate treatment after an assault. Dr. Williams will also testify regarding Plaintiff Hefner's claim that his requests for a medical diet have been denied.

Dr. Williams will testify regarding his review of Plaintiff Polson's medical records and his opinions regarding the treatment provided to him. He will further testify regarding Plaintiff Polson's specific allegations that he experienced delays in receiving appropriate care and medications for chronic ear pain.

64

1   Dr. Williams will testify regarding his review of Plaintiff Wells' medical

2   records and his opinions regarding the treatment provided to her.  He will further testify

3   regarding Plaintiff Wells' specific allegations that she was not evaluated by a cardiologist

4   despite repeated complaints of chronic chest pain.

5   Dr. Williams will testify regarding his review of Plaintiff Smith's medical

6   records and his opinions regarding the treatment provided to him.  He will further testify

7   regarding Plaintiff Smith's specific allegation that he was unable to write HNRs due to a

8   hand injury.

9   Dr. Williams will testify regarding his review of Plaintiff Brislan's medical

10   records and his opinions regarding the treatment provided to him.  He will further testify

11   regarding Plaintiff Brislan's specific allegation that he has lost weight due to insufficient

12   meals.

13   In addition to testifying regarding the medical treatment of the named

14   Plaintiffs, Dr. Williams will also testify regarding the health care provided to the

15   individual inmates specifically referred to by Plaintiffs' experts and whether the care

16   rendered was adequate, appropriate and meets the standard of care.

17   Based upon his professional training, experience, and review of the chart

18   volume for the thirteen named Plaintiffs, Dr. Williams will be called to testify regarding

19   his clinical opinion, that since March 4, 2103, each of the litigants who were seen by a

20   medical provider, as documented in the chart, received care that is in line with clinical

21   best practice approaches.  Overall, clinicians used approaches that addressed documented

22   diagnostic concerns.  Documentation in standard SOAP format included examination

23   findings, treatment plan, and follow up plans.  Follow up was performed as deemed

24   appropriate by the medical provider.

25   44.   Joseph V. Penn, M.D., CCHP, F.A.P.A.
         UTMB Correctional Managed Care
26       200 River Pointe Drive, Suite 200
         Conroe, Texas 77304
27       (936) 494-4170

28

65

Dr. Penn is certified by the American Board of Psychiatry and Neurology in psychiatry and holds a subspecialty certification in forensic psychiatry and has been retained as an expert witness by Defendants Ryan and Pratt. Dr. Penn is a Certified Correctional Health Care Professional (CCHP), a Clinical Associate Professor of Psychiatry in the Department of Psychiatry and Behavioral Services at the University of Texas Medical Branch, Medical School and is the Director of Mental Health Services, University of Texas Medical Branch Correctional Managed Care. Dr. Penn will testify consistent with the information and opinions set forth in his December 18, 2013 CONFIDENTIAL expert report, which is produced herewith as ADC203372 through ADC203515. A list of the documents and things Dr. Penn considered in the preparation of his report is contained therein at ADC203467 through ADC203479. In addition, Dr. Penn's curricula vitae (including his list of publications he has authored in the past ten years) is produced herewith as ADC203481 through ADC203509. A list of cases where Dr. Penn has testified during the past four years is produced herewith as ADC203511 through ADC203513 and an updated list was produced as ADC222041. Dr. Penn's fee schedule is produced herewith as ADC203515.

Dr. Penn will also testify consistent with the information and opinions set forth in his March 26, 2014 CONFIDENTIAL supplemental expert report, which is produced herewith as ADC261843 through ADC261875. A list of the additional documents and things that Dr. Penn considered in the preparation of his supplemental expert report is contained therein at ADC261876 through ADC261883.

45.     John W. Dovgan, DDS
        3841 E. Thunderbird Road, Ste. 101
        Phoenix, Arizona 85032
        (602) 867-1899

Dr. Dovgan is a dentist licensed to practice in the State of Arizona and has been retained as an expert witness by Defendants Ryan and Pratt. Dr. Dovgan will testify consistent with the information and opinions set forth in his December 18, 2013

CONFIDENTIAL expert report, which is produced herewith as ADC2203516through ADC203609.   A list of the documents and things Dr. Dovgan considered in the preparation of his report is contained therein at ADC203599 through ADC203609.   In addition, Dr. Dovgan's updated curricula vitae (including his list of publications he has authored in the past ten years) is produced herewith as ADC222036 through ADC222040. A list of cases where Dr. Dovgan has testified during the past four years is contained therein at ADC222039 through ADC222040.  Dr. Dovgan's fee schedule is also contained therein at ADC222040.

Dr. Dovgan will also testify consistent with the information and opinions set forth in his March 26, 2014 CONFIDENTIAL supplemental expert report, which is produced herewith as ADC261914 through ADC261926.   A list of the additional documents and things that Dr. Dovgan considered in the preparation of his supplemental expert report is contained therein at ADC261927 through ADC261930.

     46.    Richard P. Seiter, Ph.D.
              205 Topton Way
              St. Louis, Missouri 63105
              (314) 330-0658

Dr. Seiter holds a Ph.D. in Public Administration from The Ohio State University and has been retained as an expert witness by Defendants Ryan and Pratt.  He has served extensively with the Federal Bureau of Prisons, served six additional years as the Director of the Ohio Department of Rehabilitation and Correction, was the first Chief of the NIC National Academy of Corrections, a full professor and Director of Criminal Justice at St. Louis University, and former Executive Vice President and Chief Corrections Officer for Corrections Corporation of America.  Dr. Seiter is also a past recipient of the E.R. Cass Award by the American Correctional Association (ACA) and the Louie Wainwright Award from the Association of State Correctional Administrators (ASCA).  Dr. Seiter will testify consistent with the information and opinions set forth in his December 18, 2013 CONFIDENTIAL expert report, which is produced herewith as ADC203610-ADC203762.   In addition, Dr. Seiter's biography and curricula vitae,

67

1   including a list of cases where Dr. Seiter has testified in the past four years and his fee

2   schedule is produced herewith as ADC203696-ADC203704.  A list of the documents and

3   things Dr. Seiter considered in the preparation of his report is set forth at ADC203706-

4   ADC203716.

5           Dr. Seiter will also testify consistent with the information and opinions set

6   forth in his March 26, 2014 CONFIDENTIAL supplemental expert report, which is

7   produced herewith as ADC261884 through ADC261912.   A list of the additional

8   documents and things that Dr. Seiter considered in the preparation of his supplemental

9   expert report is contained therein at ADC261913.

10

11          47.     Lawrence H. Mendel, D.O., FSCP, CCHP
                    1255 N. Hamilton Road, #71
12                  Columbus, Ohio 43230
                    (614) 471-8151
13

14          Dr. Mendel is a certified by the American Osteopathic Board of Family

15   Practice and has been retained as an expert witness by Defendants Ryan and Pratt.  Dr.

16   Mendel is a Fellow of the Society of Correctional Physicians and a Certified Correctional

17   Health Care Professional.   Dr. Mendel has extensive practice as an emergency room

18   physician as well as experience as both a provider and administrator in correctional

19   healthcare settings.  Dr. Mendel served for more than ten years as the Medical Director of

20   the Ohio Department of Rehabilitation and Correction, and has written, presented, and

21   consulted extensively for a variety of governmental and private entities on questions

22   relating to correctional healthcare.  Dr. Mendel also holds a faculty appointment with The

23   Ohio State University as an Assistant Clinical Professor of Family Medicine.  Dr. Mendel

24   will testify consistent with the information and opinions set forth in his December 18,

25   2013 CONFIDENTIAL expert report, which is produced herewith as ADC203763-

26   ADC203835 and his CONFIDENTIAL supplemental report, dated January 31, 2014,

27   which is produced as ADC229802-ADC229807.  A list of the documents and things Dr.

28   Mendel considered in the preparation of his report (and January 31, 2014 supplemental

68

report) is contained in his December 18, 2013 CONFIDENTIAL expert report at ADC203824-ADC203835.  In addition, Dr. Mendel's curricula vitae, including his list of recent publications, is produced herewith as ADC203814–ADC203817.  A list of cases where Dr. Mendel has testified in the past four years is produced herewith as ADC203819-ADC203822.  Dr. Mendel's fee schedule is set forth within the text of his December 18, 2013 CONFIDENTIAL expert report at ADC203765.

Dr. Mendel will also testify consistent with the information and opinions set forth in his March 26, 2014 CONFIDENTIAL second supplemental expert report, which is produced herewith as ADC261931 through ADC261943.  A list of the additional documents and things that Dr. Mendel considered in the preparation of his second supplemental expert report is contained therein at ADC261944 through ADC261949.

48.     Any and all foundational witnesses, including custodians of records necessary to lay foundation for the admissibility of evidence at trial.

B.   INDIVIDUALS WHO MAY BE CALLED TO TESTIFY

49.     Jeff Hood, ADC Deputy Director
c/o Struck Wieneke & Love, P.L.C.

Jeff Hood is the Deputy Director of ADC.  Mr. Hood will testify regarding his training and experience in corrections, and with regard to ADC policies and procedures and conditions of confinement; the maintenance and administration of ADC institutions and programs; isolation and conditions of confinement issues in various ADC facilities as well as to ADC's compliance with constitutional requirements for the delivery of healthcare.

50.     James Taylor (former ADC HS Division, Contract Compliance Program Evaluation Administrator) Regional Vice President for Corizon
c/o Corizon Health[2]
105 Westpark Drive, Suite 200
Brentwood, Tennessee 37027

---

[2]   The contact information for all parties listed as in care of Corizon Health shall be the same as that listed for James Taylor, unless specifically stated otherwise.

James Taylor is the former HS Division, Contract Compliance Program Evaluation Administrator for ADC, and the current Regional Vice President at Corizon. Mr. Taylor is likely to have discoverable information with regard to ADC policies, practices, and procedures at the time of his employment with ADC, including those related to medical, dental and mental health needs; the privatization of the entire health care delivery system, specifically, the transition of the entire health care system to Wexford; the transition of the entire health care system to Corizon; and the provision of adequate care to ADC inmates in compliance with constitutional requirements.

51.    Arthur Gross, ADC HS Contract Monitoring Bureau, Assistant Director
c/o Struck Wieneke & Love, P.L.C.

Arthur Gross is the current HS Contract Monitoring Bureau Assistant Director. Please see Exhibit Bates Numbered ADC123408-123412 for Mr. Gross's credentials and qualifications. Mr. Gross is likely to have discoverable information with regard to ADC policies and procedures at the time of his employment with ADC, including those related to medical, dental and mental health needs; the transition of the entire health care system to Corizon; the provision of adequate care to ADC inmates in compliance with constitutional and contract requirements; and his activities in reporting to the Director of the ADC, provision of oversight and direction to the monitoring team members responsible for ensuring that Corizon provides required health services to ADC's inmate population.

52.    Martin Winland, ADC HS Contract Monitoring Bureau, Quality/Clinical,
Pharmacy Monitor (Pharmacist)
c/o Struck Wieneke & Love, P.L.C.

Martin Winland is the current Contract Monitoring Bureau Pharmacy Monitor, taking the place of Paulette Boothby as of June 2013. He is likely to have discoverable information regarding his knowledge of the PharmaCorr prescription and delivery system and his knowledge of Corizon and PharmaCorr's performance under the Contract with ADC.

53.     Julie Jackson, DW, ASPC-Florence
        c/o Struck Wieneke & Love, P.L.C.

Deputy Warden Julie Jackson is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Florence, its cell blocks, the inmates housed at ASPC-Florence, and recreation, therapy and behavioral programming at ASPC-Florence. Deputy Warden Jackson is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.

54.     Sandra Lawrence, DW, ASPC-Lewis-Stiner Unit (and former DW of
        ASPC-Lewis-Bachman)
        c/o Struck Wieneke & Love, P.L.C.

Deputy Warden Sandra Lawrence is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Lewis/Stiner Unit, its cell blocks, the inmates housed at Stiner Unit, and recreation, therapy and behavioral programming at ASPC-Lewis.  Deputy Warden Lawrence is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective

71

facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.

      55.   Madeleine Perkins, DW, ASPC-Phoenix-Alhambra and Flamenco Units
            (and former DW of ASPC-Lewis-Stiner)
            c/o Struck Wieneke & Love, P.L.C.

Deputy Warden Madeleine Perkins is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Phoenix/Alhambra and Flamenco Unit, the intake process at Alhambra, its cell blocks, the inmates housed at Alhambra and Flamenco Unit, and recreation, therapy and behavioral programming at ASPC-Alhambra and Flamenco.  Deputy Warden Perkins is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of

72

1   confinement and management of maximum custody units; inmates' access to

2   programming, visitation, and recreation time; and educational programming available to

3   inmates.

4        56.    Travis Scott, ADW, ASPC-Phoenix-Alhambra and Flamenco Units

5                 c/o Struck Wieneke & Love, P.L.C.

6        Deputy Warden Travis Scott is likely to testify regarding his knowledge of

7   ADC's contemporary practices and procedures in relation to security operations, including

8   general information regarding ASPC-Phoenix/Alhambra and Flamenco Unit, the intake

9   process at Alhambra, its cell blocks, the inmates housed at Alhambra and Flamenco Unit,

10  and recreation, therapy and behavioral programming at ASPC-Alhambra and Flamenco.

11  Deputy Warden Scott is additionally likely to have discoverable information with regard

12  to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of

13  confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial,

14  and behavior issues; practices and policies regarding inmates with gang affiliations as well

15  as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or

16  classification status at any point during their incarceration at ADC as well as the policies

17  and procedures regarding the classification, housing, programming, recreation, morale and

18  welfare programs, and fundraisers; the management of health care at each respective

19  facility, the physical layout of each of their respective facilities; alleged sanitation issues

20  at their respective facilities; conditions of confinement within the maximum custody and

21  management of maximum custody units; inmates' access to programming, visitation, and

22  recreation time; and educational programming available to inmates.

23       57.    Betty Barnes, DW, ASPC-Perryville-San Pedro

24                c/o Struck Wieneke & Love, P.L.C

25       Deputy Warden Betty Barnes is likely to testify regarding her knowledge of

26  ADC's contemporary practices and procedures in relation to security operations, including

27  general information regarding ASPC-Perryville/San Pedro Unit, its housing units, the

28  inmates housed at San Pedro Unit, and recreation, therapy and behavioral programming at

ASPC-San Pedro. Deputy Warden Barnes is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and inmate management; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.

58.    Anthony Coleman, (former DW, ASPC-Perryville-Santa Cruz), Current Interim FHA, Perryville
c/o Corizon Health

Mr. Coleman is the current Interim Facility Health Administrator at ASPC-Perryville, and is likely to testify regarding his knowledge of ADC's policies and procedures regarding delivery of health care to ADC's inmate population at ASPC-Perryville; and the day-to-day operation of health services at ASPC-Perryville, including delivery of medication delivery of mental health care and dental care; her knowledge of the relationship between the operational staff at ADC and health care staff at Corizon, and the overall delivery of healthcare to the inmates. Mr. Coleman is likely to testify regarding his knowledge of ADC's practices and procedures in relation to security operations, including general information regarding ASPC-Perryville/Santa Cruz Unit, its housing units, the inmates housed at Santa Cruz Unit, and recreation, therapy and behavioral programming at ASPC-Santa Cruz Unit. Mr. Coleman is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective

74

facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and inmate management; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.

59.    Lacy Scott, DW, ASPC-Perryville-Lumley
c/o Struck Wieneke & Love, P.L.C.

Deputy Warden Lacy Scott is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Perryville/Lumley Unit, its cell blocks, the inmates housed at Lumley Unit, and recreation, therapy and behavioral programming at ASPC-Lumley Unit.    Deputy Warden Scott is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.

75

60.    Panann Days, ADW, ASPC-Tucson Catalina Unit
       c/o Struck Wieneke & Love, P.L.C.

Deputy Warden Panann Days is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Tucson/Catalina Unit, its cell blocks, the inmates housed at Catalina Unit, and recreation, therapy and behavioral programming at ASPC-Tucson/Catalina Unit.  Deputy Warden Days is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and inmate management; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.

61.    Angela Basurto, DWOP, ASPC-Yuma
       c/o Struck Wieneke & Love, P.L.C.

Deputy Warden of Operations Angela Basurto is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Yuma, its cell blocks, the inmates housed at ASPC-Yuma, and recreation, therapy and behavioral programming at ASPC-Yuma. DWOP Basurto is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates

76

1  with gang affiliations as well as ADC's management of gang affiliated inmates; any
2  Plaintiff's protective custody or classification status at any point during their incarceration
3  at ADC as well as the policies and procedures regarding the classification, housing,
4  programming, recreation, morale and welfare programs, and fundraisers; the management
5  of health care at each respective facility, the physical layout of each of their respective
6  facilities; alleged sanitation issues at their respective facilities; conditions of confinement
7  and inmate management; inmates' access to programming, visitation, and recreation time;
8  and educational programming available to inmates.

9     62.    Jeri Pepelnjak, CO III at ASPC-Perryville
10           c/o Struck Wieneke & Love, P.L.C.

11     CO III Pepelnjak is likely to testify regarding her knowledge of Plaintiff
12  Charlotte Wells, including Wells' institutional history and conduct while in incarceration.

13     63.    Dr. Tracy L. Crews, M.D., Former Psychiatrist at ASPC-Perryville
14           444 N. 44th Street, Suite 400
           Phoenix, AX 85008
15

16     Dr. Crews is the former Psychiatrist Supervisor at ASPC-Perryville.   Dr.
17  Crews was previously deposed in this case and, if unavailable at the time of trial,
18  Defendants will rely upon her deposition testimony.  Dr. Crews is likely to testify with
19  regard to her knowledge of the mental health needs and treatment of ADC's inmate
20  population, the contemporary mental health services policies and procedures implemented
21  during her tenure at ADC; mental health classifications for ADC inmates; the prescription
22  and delivery of psychiatric medication to ADC inmates; private and group therapy
23  sessions provided to ADC inmates at ASPC-Perryville.  Dr. Crews will also testify
24  regarding the mental health care provided to Plaintiff Christina Verduzco and that the care
25  was not deliberately indifferent.   Dr. Crews will testify that Ms. Verduzco has been
26  diagnosed with schizophrenia, paranoid type, personality disorder, prior suicide attempts,
27  poly substance abuse, and has been classified as "SMI".  Specifically, Dr. Crews will state
28  that the care provided to Ms. Verduzco is consistent with industry standards.

64.    Ingebor Popin, Dental Assistant at ASPC-Perryville
       c/o Corizon Health

Ingebor Popin is currently a Dental Assistant at ASPC-Perryville and is likely to testify regarding ADC's policies and procedures related to dental care provided to the ADC inmate population at ASPC-Perryville, including the dental HNR process, triaging of dental HNRs, informed consents for dental surgery, routine dental services provided to ADC's inmate population, and wait times for dental patients.

65.    Martha Ortega, Dental Assistant II at ASPC-Phoenix
       c/o Corizon Health

Martha Ortega is a Dental Assistant II at ASPC-Phoenix, and is likely to testify regarding her knowledge of ADC's policies and procedures for delivery of dental care to ADC's inmate population; the dental intake process for all male ADC inmates at ASPC-Phoenix; triage of dental HNRs; and dental treatment provided to ADC inmates, including pain evaluations, cleanings, fillings, and extractions.

66.    Stephanie Leonard, Psy.D., at ASPC-Perryville/WTU
       c/o Corizon Health

Stephanie Leonard, Psy.D. is a Clinical Psychologist currently at ASPC-Perryville/Women's Treatment Unit, and is likely to testify regarding her knowledge of ADC's policies and procedures relating to delivery of mental health care to ADC's inmate population; including prescription and delivery of psychiatric medications to inmates, psychiatric treatment plan implementation and follow-up, and policies and procedures for placement of inmates on mental health and/or suicide watch.

67.    Tom A. Fulks, Mental Health Director, at ASPC-Phoenix
       c/o Corizon Health

Tom Fulks is the Mental Health Director currently at ASPC-Phoenix, and formerly at ASPC-Lewis, and is likely to testify regarding his knowledge of ADC's policies and procedures relating to delivery of mental health care to ADC's inmate

1   population; including prescription and delivery of psychiatric medications to inmates,

2   psychiatric treatment plan implementation and follow-up, and policies and procedures for

3   placement of inmates on mental health and/or suicide watch.  Dr. Fulks will also testify

4   regarding his knowledge of the mental health treatment provided to named Plaintiffs

5   during their incarceration an ASPC-Lewis and/or ASPC-Phoenix.  Specifically, Dr. Fulks

6   will testify regarding the mental health treatment provided to Plaintiffs Stephen Swartz

7   and Dustin Brislan.  Dr. Fulks will also testify regarding the implementation of the

8   Phoenix Mission Statement and program model that is being utilized in providing mental

9   health treatment at ASPC-Phoenix.  This program model consists of elective groups that

10  are provided on an as-needed basis or as the clinical needs of the population demand on

11  each individual unit.  The program model also consists of self-study/peer run groups,

12  which are individualized to the particular needs of the population.  Dr. Fulks will testify

13  that the ultimate goal and mission of the program model is to provide inmates with the

14  skills necessary to live independently and become good citizens of the community,

15  whether it be while incarcerated or upon release.  Dr. Fulks will further testify that the

16  goal of the program model is to empower and encourage inmates to be productive,

17  respectful and independent citizens.

18      68.    Natalie Morales, Assistant Director of Nursing, at ASPC-Perryville
19             c/o Corizon Health

20          Natalie Morales is currently the Assistant Director of Nursing at ASPC-

21  Perryville, and is likely to testify regarding her knowledge of the ADC's policies and

22  procedures related to HNR processing and triage, scheduling of inmates on the nurse's

23  and provider's lines, and response to medical emergencies.

24      69.    David Cresap, Director of Nursing at ASPC-Lewis
25             c/o Corizon Health

26          David Cresap is the current Director of Nursing at ASPC-Lewis, and is

27  likely to testify regarding his knowledge of ADC's policies and procedures for delivery of

28  health care to ADC's inmate population; including delivery of medication, triaging and

79

scheduling inmates for medical appointments, and the methods of delivery of health care to populations with differing custody levels.

70.    Carl Bynum, Associate Medical Director
       Corizon Health

Carl Bynum is the Associate Medical Director for Corizon Health, and is expected to testify regarding Corizon's obligations under the Contract with ADC, Corizon's staffing, recruiting, policies, and the provision of medical health care to ADC's inmate population.

71.    Anthony Medel, ADC HS Contract Monitoring Bureau, Contract
       Compliance Monitor II at ASPC-Yuma
       c/o Struck Wieneke & Love, P.L.C.

Anthony Medel is the current Contract Monitor for ASPC-Yuma. Please see Exhibit Bates Numbered ADC123403-123407 for his credentials and qualifications. Mr. Medel may testify regarding his monitoring of policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; his activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; his knowledge of Corizon's performance under the Contract with ADC, and information contained within MGAR Reports.

72.    Jessica Raak, ADC HS Contract Monitoring Bureau, Quality/Clinical,
       Program Comp Auditor III (Mental Health Auditor)
       c/o Struck Wieneke & Love, P.L.C.

Jessica Raak is the current Program Compliance Auditor III (mental health auditor) for ADC. Please see Exhibit Bates Numbered ADC123424-123425 for her credentials and qualifications. Ms. Raak will testify regarding policies and procedures for

provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; and her knowledge of Corizon's performance under the Contract with ADC.

73.    Jen Mielke-Fontaine, ADC HS Contract Monitoring Bureau, Audit Nurse Contract Monitor, ASPC-Florence
c/o Struck Wieneke & Love, P.L.C.

Jen Mielke-Fontaine is the current Audit Nurse Contract Monitor, ASPC-Florence, for ADC. She is also a Contract Compliance Monitor II, ASPC-Florence. Please see Exhibit Bates Numbered ADC123452-123453 for her credentials and qualifications. Ms. Mielke-Fontaine will testify regarding policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; and her knowledge of Corizon's performance under the Contract with ADC.

74.    Helena Valenzuela, ADC HS Contract Monitoring Bureau, Contract Compliance Monitor at ASPC Phoenix
c/o Struck Wieneke & Love, P.L.C.

Helena Valenzuela is the current Contract Monitor at ASPC Phoenix. Please see Exhibit Bates Numbered ADC123452-123453 for her credentials and qualifications. Ms. Valenzuela will testify regarding her monitoring of policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates;

81

delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; and her knowledge of Corizon's performance under the Contract with ADC.  Ms. Valenzuela will also testify regarding the medical care provided to Plaintiff Shawn Jensen and that the medical care was appropriate and within the applicable standard of care.  She will further testify regarding specific allegations made by Mr. Jensen as it relates to his medical care in connection with his treatment for prostate cancer.  Ms. Valenzuela will also testify that Mr. Jensen's allegations are false, including his allegation that Nurse Carmona manipulated his Foley Catheter and caused his urethra to tear from the bladder neck.  She will testify that this is more likely caused by Mr. Jensen's attempts to pull out his catheter.  She will also testify regarding her observations and knowledge of Mr. Jensen's manipulative behavior.

75.    Matthew Musson, ADC HS Contract Monitoring Bureau, Contract
       Compliance Monitor - ASPC-Eyman
       c/o Struck Wieneke & Love, P.L.C.

Matthew Musson is the current Contractor Monitor at ASPC-Eyman for ADC. Please see Exhibit Bates Numbered ADC123447-123448 for his credentials and qualifications. Mr. Musson will testify regarding his monitoring of policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; his activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; his knowledge of Corizon's performance under the Contract with ADC, and information

82

contained within the MGAR Reports.

76.     Terry Allred, ADC HS Contract Monitoring Bureau, Contract Compliance
        Monitor II – ASPC Lewis
        c/o Struck Wieneke & Love, P.L.C.

Terry Allred is the current Contract Monitor at ASPC-Lewis. Please see Exhibit Bates Numbered ADC123470-123471 for his credentials and qualifications. Mr. Allred will testify regarding his monitoring of policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; his activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; reviews for inmate grievance appeal responses and investigations; his knowledge of Corizon's performance under the Contract with ADC, and information contained within MGAR Reports.

77.     Mark Haldane, ADC HS Contract Monitoring Bureau, Contract Compliance
        Monitor, ASPC-Perryville
        c/o Struck Wieneke & Love, P.L.C.

Mark Haldane is the current Contract Monitor at ASPC-Perryville. Please see Exhibit Bates Numbered ADC123419-123421 for his credentials and qualifications. Mr. Haldane will testify regarding his monitoring of policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; his activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; reviews for inmate grievance appeal responses and investigations; his knowledge of Corizon's performance under the Contract with ADC, and information contained within the MGAR Reports.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

78.     Marlena Bedoya, ADC HS Contract Monitoring Bureau, Contract
        Compliance Monitor
        c/o Struck Wieneke & Love, P.L.C.

Marlena Bedoya is the current Contract Monitor for ADC. Please see Exhibit Bates Numbered ADC123443-123446 for her credentials and qualifications. Ms. Bedoya will testify regarding her monitoring of policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; her knowledge of Corizon's performance under the Contract with ADC, and information contained within the MGAR Reports.

79.     Vanessa Headstream, ADC HS Contract Monitoring Bureau,
        Quality/Clinical, Health Services Coordinator (Nursing Monitor)
        c/o Struck Wieneke & Love, P.L.C.

Vanessa Headstream is the current Health Services Coordinator (Nursing Monitor) for ADC. Please see Exhibit Bates Numbered ADC123478-123480 for her credentials and experience. Ms. Headstream will testify regarding policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; and her knowledge of Corizon's performance under the Contract with ADC.

80.     Yvonne Maese, ADC HS Contract Monitoring Bureau, Quality/Clinical,
        Program Evaluation Specialist (Audit Nurse) and temporary Contract

84

Compliance Monitor at ASPC-Eyman.
c/o Struck Wieneke & Love, P.L.C.

Yvonne Maese is the current Program Evaluation Specialist (audit nurse) for ADC. She is also currently the temporary Contract Compliance Monitor for ASPC-Eyman while Matthew Musson is on military leave.  Please see Exhibit Bates Numbered ADC123481-123483 for her credentials and qualifications. Ms. Maese will testify regarding policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data;, random chart and medication monitoring, and ensuring performance guidelines are met in the clinical setting; and her knowledge of Corizon's performance under the Contract with ADC.

81.    Julie Carter, Pharmacy Director
       c/o Corizon Health

Ms. Carter is the Pharmacy Director for Corizon Health and is expected to testify regarding Corizon's obligations under the Contract with ADC, PharmaCorr's services under its contract with Corizon, and the provision of medical and psychiatric medication to ADC's inmate population.

82.    Jason Reese, Executive Consultant II, Health Services Monitoring Bureau –
       ADC
       c/o Struck Wieneke & Love, P.L.C.

Mr. Reese is the Executive Consultant II for ADC's Health Services Monitoring Bureau.  He will testify regarding his personal knowledge of an analysis of Corizon's monthly, quarterly and ad hoc statistical reporting under the ADC Contract as well as his personal knowledge of ADC's submissions to the federal government related to the Death in Custody Reporting Program.

85

83.     Glen Babich, M.D. Associate Administrative Regional Medical Director

c/o Corizon Health

Based upon his professional training, experience, and review of the chart volume for the thirteen named Plaintiffs, Dr. Babich may be called to testify regarding his clinical opinion, that since March 4, 2103, each of the litigants who were seen by a medical provider, as documented in the chart, received care that is in line with clinical best practice approaches.  Please see Exhibit Bates Numbered ADC229826-ADC229830 for his credentials and qualifications.  Overall, clinicians used approaches that addressed documented diagnostic concerns.  Documentation in standard SOAP format included examination findings, treatment plan, and follow up plans.  Follow up was performed as deemed appropriate by the medical provider.

C.  INDIVIDUALS WHO MAY HAVE KNOWLEDGE

84.     Victor Parsons, former Arizona Department of Corrections ("ADC") Inmate
#123589, Plaintiff
c/o ACLU Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, Arizona  85013
(603) 650-1854

Victor Parsons is a former Plaintiff in this matter.  Mr. Parsons is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history.

85.     Shawn Jensen, ADC #032465, Plaintiff
Arizona State Prison Complex ("ASPC")-Tucson-Manzanita Unit
10000 South Wilmot
P.O. Box 24401
Tucson, Arizona  85734-4401
(520) 574-0024

Shawn Jensen is a Plaintiff in this matter.  Mr. Jensen is likely to have discoverable information with regard to the allegations in the Complaint and his medical,

dental, mental health, social, educational, criminal and institutional history.

86.   Stephen Swartz, ADC #102486, Plaintiff
ASPC-Lewis-Rast Unit
26700 South Highway 85
P.O. Box 3600
Buckeye, Arizona  85326-3600
(623) 386-6160

Stephen Swartz is a Plaintiff in this matter.  Mr. Swartz is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history.

87.   Dustin Brislan, ADC #164993, Plaintiff
ASPC-Eyman-SMU I
4374 East Butte Avenue
P.O. Box 4000
Florence, Arizona  85132-4000
(520) 868-0201

Dustin Brislan is a Plaintiff in this matter.  Mr. Brislan is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history.

88.   Sonia Rodriguez, ADC #103830, Plaintiff
ASPC-Perryville-Lumley Unit
2105 North Citrus Road
P.O. Box 3300
Goodyear, Arizona  85395-0904
(623) 853-0304

Sonia Rodriguez is a Plaintiff in this matter. Ms. Rodriguez is likely to have discoverable information with regard to the allegations in the Complaint and her medical, dental, mental health, social, educational, criminal and institutional history.

89.   Christina Verduzco, ADC #205576, Plaintiff
ASPC-Perryville-Lumley SMA
2105 North Citrus Road
P.O. Box 3300

87

Goodyear, Arizona  85395-0904
(623) 853-0304

Christina Verduzco is a Plaintiff in this matter.  Ms. Verduzco is likely to have discoverable information with regard to the allegations in the Complaint and her medical, dental, mental health, social, educational, criminal and institutional history.

90.    Jackie Thomas, ADC #211267, Plaintiff
       ASPC-Eyman-SMU I
       4374 East Butte Avenue
       P.O. Box 4000
       Florence, Arizona  85132-4000
       (520) 868-0201

Jackie Thomas is a Plaintiff in this matter.  Mr. Thomas is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history.

91.    Jeremy Smith, ADC #129438, Plaintiff
       ASPC-Lewis-Buckley Unit
       26700 South Highway 85
       P.O. Box 3400
       Buckeye, Arizona 85326-3400
       (623) 386-6160

Jeremy Smith is a Plaintiff in this matter.  Mr. Smith is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history.

92.    Robert Gamez, ADC #131401, Plaintiff
       ASPC-Eyman-Browning Unit
       4374 East Butte Avenue
       P.O. Box 3400
       Florence, Arizona  85132-3400
       (520) 868-0201

Robert Gamez is a Plaintiff in this matter.  Mr. Gamez is likely to have discoverable information with regard to the allegations in the Complaint and his medical,

dental, mental health, social, educational, criminal and institutional history.

93.   Maryanne Chisholm, ADC #200825, Plaintiff
ASPC-Perryville-Santa Cruz Unit
2105 North Citrus Road
P.O. Box 3200
Goodyear, Arizona  85395-0903
(623) 853-0304

Maryanne Chisholm is a Plaintiff in this matter.  Ms. Chisholm is likely to have discoverable information with regard to the allegations in the Complaint and her medical, dental, mental health, social, educational, criminal and institutional history.

94.   Desiree Licci, ADC #150051, Plaintiff
ASPC-Perryville-San Carlos Unit
2105 North Citrus Road
P.O. Box 3700
Goodyear, AZ 85395-0909
(623) 853-0304

Desiree Licci is a Plaintiff in this matter.   Ms. Licci is likely to have discoverable information with regard to the allegations in the Complaint and her medical, dental, mental health, social, educational, criminal and institutional history.

95.   Joseph Hefner, ADC #203653, Plaintiff
ASPC-Lewis-Barchey Unit
26700 South Highway 85
P.O. Box 3200
Buckeye, Arizona 85326-3200
(623) 386-6160

Joseph Hefner is a Plaintiff in this matter.  Mr. Hefner is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history.

96.   Joshua Polson, ADC #187716, Plaintiff
ASPC-Lewis-Rast Unit
26700 South Highway 85
P.O. Box 3600

89

Buckeye, Arizona 85326-3600
(623) 386-6160

Joshua Polson is a Plaintiff in this matter.  Mr. Polson is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history.

97.     Charlotte Wells, ADC #247188, Plaintiff
        ASPC-Perryville-Santa Rosa Unit
        2105 North Citrus Road
        P.O. Box 3500
        Goodyear, AZ 85395-0907
        (623) 853-0304

Charlotte Wells is a Plaintiff in this matter.  Ms. Wells is likely to have discoverable information with regard to the allegations in the Complaint and her medical, dental, mental health, social, educational, criminal and institutional history.

98.     Michael Adu-Tutu, M.D., Former ADC Interim Director, HS Division,
        c/o Struck Wieneke & Love, P.L.C.

Dr. Michael Adu-Tutu is a former ADC employee and was the Interim Division Director of Health Services at ADC prior to Mr. Pratt. Dr. Adu-Tutu was deposed in this matter and, if unavailable for trial, Defendants will rely on his deposition testimony. Dr. Michael Adu-Tutu is likely to have discoverable information with regard to all materials authored by him, including the Dental Services Technical Manual and educational programs regarding dental care.

99.     Laurie Berg, ADC HS Division, Executive Staff Assistant
        c/o Struck Wieneke & Love, P.L.C.

Laurie Berg is the current HS Division Executive Staff Assistant and is likely to have discoverable information regarding the maintenance and storage of inmate records while kept at ADC Central Offices.

90

100. Thomas Higginson, ADW, ASPC-Eyman-Meadows Unit (and former ADW for ASPC-Eyman-Browning)
c/o Struck Wieneke & Love, P.L.C.

101. Ralph Cluff, DW, ASPC-Eyman-Rynning Unit
c/o Struck Wieneke & Love, P.L.C.

102. Geralynn Woods, ADW, ASPC-Eyman-Rynning Unit (and former ADW, ASPC-Florence-Central)
c/o Struck Wieneke & Love, P.L.C.

103. Jeffrey Freeland, DW, ASPC-Eyman-Cook Unit
c/o Struck Wieneke & Love, P.L.C.

104. Randy Ibarra, ADW, ASPC-Eyman-Cook Unit
c/o Struck Wieneke & Love, P.L.C.

105. Ed Lao, DW, ASPC-Eyman-Meadows Unit
c/o Struck Wieneke & Love, P.L.C.

106. Teresa Hetmer, ADW, ASPC-Eyman-Meadows Unit (and former ADW of ASPC-Douglas-Mohave)
c/o Struck Wieneke & Love, P.L.C.

107. Kevin Curran, DWOP, ASPC-Florence
c/o Struck Wieneke & Love, P.L.C.

108. Greg Fizer, DW, ASPC-Florence-Central Unit
c/o Struck Wieneke & Love, P.L.C.

109. Jeff Van Winkle, DW, ASPC-Florence-South Unit
c/o Struck Wieneke & Love, P.L.C.

110. Annemarie Smith-Whitson, ADW, ASPC-Florence-South Unit
c/o Struck Wieneke & Love, P.L.C.

111. Ron Lee, DW, ASPC-Florence-North Unit
c/o Struck Wieneke & Love, P.L.C.

112. William Dodds, ADW, ASPC-Florence-North Unit
c/o Struck Wieneke & Love, P.L.C.

113. Thomas Kane, DW, ASPC-Florence-East Unit
c/o Struck Wieneke & Love, P.L.C.

114. April Robinson, DW, ASPC-Florence-Globe Unit
c/o Struck Wieneke & Love, P.L.C.

91

115. David Summers, ADW, ASPC-Lewis-Stiner Unit
c/o Struck Wieneke & Love, P.L.C.

116. Doug Schuster, DW, ASPC-Lewis-Morey Unit
c/o Struck Wieneke & Love, P.L.C.

117. Brenda Burgess, ADW, ASPC-Lewis-Morey Unit
c/o Struck Wieneke & Love, P.L.C.

118. Kimberly Currier, DW, ASPC-Lewis-Barchey Unit
c/o Struck Wieneke & Love, P.L.C.

119. Brenda Burgess, DW, ASPC-Lewis-Bachman Unit
c/o Struck Wieneke & Love, P.L.C.

120. Terry Hibbard, ADW, ASPC-Lewis-Bachman Unit
c/o Struck Wieneke & Love, P.L.C.

121. Hugh Matson, DW, ASPC-Lewis-Sunrise and Eagle Point Units
c/o Struck Wieneke & Love, P.L.C.

122. Regina Dorsey, DW, ASPC-Lewis-Buckley Unit
c/o Struck Wieneke & Love, P.L.C.

123. John Weiss, ADW, ASPC-Lewis-Buckley Unit
c/o Struck Wieneke & Love, P.L.C.

124. Michael McCarville, DW, ASPC-Lewis-Rast Unit
c/o Struck Wieneke & Love, P.L.C.

125. Norm Twyford, DW Compliance, ASPC-Phoenix
c/o Struck Wieneke & Love, P.L.C.

126. Kelly Pierce, DW, ASPC-Phoenix-Aspen Unit
c/o Struck Wieneke & Love, P.L.C.

127. Wayne Mooney, DW Compliance, ASPC-Winslow (and former ADW of
ASPC-Eyman-Cook)
c/o Struck Wieneke & Love, P.L.C.

128. Heather Pruett, DW, ASPC-Winslow-Kaibab Unit
c/o Struck Wieneke & Love, P.L.C.

129. Rick Morales, ADW, ASPC-Winslow-Kaibab Unit
c/o Struck Wieneke & Love, P.L.C.

130. Ed White, DW, ASPC-Winslow-Coronado Unit
c/o Struck Wieneke & Love, P.L.C.

131. Vivian Baltierra, DW, ASPC-Winslow-Apache Unit
c/o Struck Wieneke & Love, P.L.C.

132. Wayne Wilson, DWOP, ASPC-Douglas (and former DW of ASPC-Douglas-Mohave)
c/o Struck Wieneke & Love, P.L.C.

133. Bruce Cattell, DW, ASPC-Douglas-Gila Unit
c/o Struck Wieneke & Love, P.L.C.

134. Render Gregory, ADW, ASPC-Douglas-Gila Unit
c/o Struck Wieneke & Love, P.L.C.

135. Marvin Shatto, DW, ASPC-Douglas-Mohave Unit
c/o Struck Wieneke & Love, P.L.C.

136. Mark Jacobson, ADW, ASPC-Douglas-Mohave Unit
c/o Struck Wieneke & Love, P.L.C.

137. Robert Langham, DW, ASPC-Douglas-Eggers Unit (and former DW of ASPC-Safford-Tonto)
c/o Struck Wieneke & Love, P.L.C.

138. Tom Paplawsky, DW, ASPC-Douglas-Papago Unit (and former ADW of ASPC-Douglas-Gila)
c/o Struck Wieneke & Love, P.L.C.

139. Carol Ortiz, ADW, ASPC-Perryville-Lumley
c/o Struck Wieneke & Love, P.L.C.

140. Cindy Neese, DW, ASPC-Perryville-Piestewa Unit
c/o Struck Wieneke & Love, P.L.C.

141. Josie James, DW, ASPC-Perryville-Santa Rosa Unit
c/o Struck Wieneke & Love, P.L.C.

142. William White, DW, ASPC-Perryville-Santa Maria Unit
c/o Struck Wieneke & Love, P.L.C.

143. Andrew Jackson, DW, ASPC-Perryville-San Carlos Unit
c/o Struck Wieneke & Love, P.L.C.

144. Jeffrey Hughes, ADW, ASPC-Perryville-San Carlos Unit
c/o Struck Wieneke & Love, P.L.C.

145. Meegan Muse, DWOP, ASPC-Safford (and former DW of ASPC-Phoenix-Alhambra and Flamenco)
c/o Struck Wieneke & Love, P.L.C.

146. Richard Haggard, DW, ASPC-Safford-Tonto Unit (and former ADW of ASPC-Safford-Fort Grant)
c/o Struck Wieneke & Love, P.L.C.

147. Roxanne Hill, DW, ASPC-Safford-Graham Unit
c/o Struck Wieneke & Love, P.L.C.

148. Kim Daniel, DW, ASPC-Safford-Fort Grant Unit
c/o Struck Wieneke & Love, P.L.C.

149. Dave Mueller, DWOP, ASPC-Tucson
c/o Struck Wieneke & Love, P.L.C.

150. Anna Jacobs, DW, ASPC-Tucson-Rincon and Minors Units
c/o Struck Wieneke & Love, P.L.C.

151. Glenn Pacheco, ADW, ASPC-Tucson-Rincon and Minors Units
c/o Struck Wieneke & Love, P.L.C.

152. Staci Fay, DW, ASPC-Tucson-Santa Rita Unit (and former ADW of ASPC-Eyman-Cook)
c/o Struck Wieneke & Love, P.L.C.

153. Linda Forester, DW, ASPC-Tucson-Cimarron Unit
c/o Struck Wieneke & Love, P.L.C.

154. Danial Lundberg, DW, ASPC-Tucson-Manzanita Unit
c/o Struck Wieneke & Love, P.L.C.

155. Chris Lang, DW, ASPC-Tucson-Winchester Unit
c/o Struck Wieneke & Love, P.L.C.

156. Linda Vega, DW, ASPC-Tucson-Catalina Unit
c/o Struck Wieneke & Love, P.L.C.

157. Daniella Stemple, DW, ASPC-Tucson-Whetstone Unit
c/o Struck Wieneke & Love, P.L.C.

158. Jo Mountain, DW, ASPC-Tucson-SACRC (Southern Arizona Correctional Release Center)
c/o Struck Wieneke & Love, P.L.C.

159. Teru Osorio, DW Compliance, ASPC-Yuma (and former ADW of ASPC-Yuma-Dakota)
c/o Struck Wieneke & Love, P.L.C.

160. Gerardo Zaragoza, DW, ASPC-Yuma-Cocopah Unit (and former ADW of ASPC-Yuma-La Paz)
c/o Struck Wieneke & Love, P.L.C.

161. Carla Hacker-Agnew, DW, ASPC-Yuma-Cheyenne Unit (and former DW of ASPC-Yuma-La Paz)
c/o Struck Wieneke & Love, P.L.C.

162. Rose Sanders, DW, ASPC-Yuma-Dakota Unit
c/o Struck Wieneke & Love, P.L.C.

163. Robert Bayles, ADW, ASPC-Yuma-Dakota Unit (and former DW of ASPC-Yuma-Cibola)
c/o Struck Wieneke & Love, P.L.C.

164. Tomas Ayala, DW, ASPC-Yuma-La Paz Unit (and former DW of Compliance at ASPC-Yuma)
c/o Struck Wieneke & Love, P.L.C.

165. Felipe Solis, ADW, ASPC-Yuma-La Paz Unit
c/o Struck Wieneke & Love, P.L.C.

166. Edwin Jensen, DW, ASPC-Yuma-Cibola Unit (and former DW of ASPC-Yuma-Cocopah)
c/o Struck Wieneke & Love, P.L.C.

167. Melissa Wallace, ADW, ASPC-Yuma-Cibola Unit
c/o Struck Wieneke & Love, P.L.C.

168. Timothy R. Johnson, M.S., PA-C, at ASPC-Perryville
c/o Corizon Health

169. Rumaldo Rodriguez, at ASPC-Perryville
c/o Corizon Health

In addition to the expected testimony listed below, Mr. Rodriguez is expected to testify regarding his interactions with and the medical treatment provided to named Plaintiffs Desiree Licci, Maryanne Chisholm, and Charlotte Wells.

170.   Mary Gillespie, D.A. II, at ASPC-Perryville
       c/o Corizon Health

171.   Vicente O. Enciso, M.D., at ASPC-Perryville
       c/o Corizon Health

In addition to the expected testimony listed below, Dr. Ensico is expected to testify as to his interactions with, knowledge of and medical treatment provided to Plaintiffs Desiree Licci, Maryanne Chisholm, and Charlotte Wells.

172.   Tracy Tolentino, CL.P.N. II, at ASPC-Florence
       c/o Corizon Health

173.   Ralph Mertens, Psych Assoc. II, at ASPC-Eyman
       c/o Corizon Health

In addition to the expected testimony listed below, Dr. Mertens is expected to testify regarding the mental health treatment, including therapy sessions and medication prescriptions and administration provided to inmates at ASPC-Eyman.  Specifically, Dr. Mertens will testify regarding the mental health treatment of Plaintiff Dustin Brislan and the appropriateness of that treatment and that it was within the applicable standard of care.

174.   Mike King, Psych Ass. II, at ASPC-Florence
       c/o Corizon Health

175.   Jessica A. Harrison, M.D. PhD, at ASPC-Tucson
       c/o Corizon Health

176.   Phillip E. Lucas, D.D.S., Dental Director, at ASPC-Safford
       c/o Corizon Health

177.   Quoc V. Luc, LAC–Psych Associate II, at ASPC- Perryville
       c/o Corizon Health

178.   Peter Bishop, former D.O., at ASPC-Eyman
       c/o Corizon Health

In addition to the expected testimony listed below, Dr. Bishop will testify regarding requests for specific medications made by Plaintiff Jackie Thomas and the

reasons for withholding or prescribing certain medications. He will also testify regarding Plaintiff Thomas's abuse, misuse, and attempted overdose of various medications.

179. Humberto Sirvent, PN II, Mental Health RN, at ASPC-Phoenix Baker Ward
c/o Corizon Health

180. Thomas Bell, D.O., former Medical Director, at ASPC-Lewis
c/o Corizon Health

In addition to the expected testimony listed below, Dr. Bell will testify regarding the medical treatment provided to Plaintiff Stephen Swartz. He will also testify regarding the numerous occasions where Mr. Swartz has swallowed foreign objects such as springs, paperclips and wire and the medical treatment that followed as a result. He will testify that the medical treatment provided to Mr. Swartz after these incidents was appropriate and within the applicable standard of care.

181. Troy Garey, D.M.D., at ASPC-Douglas
c/o Corizon Health

182. Jason Newell, Psychologist II, Mental Health Director, at ASPC-Phoenix
c/o Corizon Health

183. Kay Mansfield-Blair, PHD, Psychology Associate, at ASPC-Perryville
c/o Corizon Health

184. Catherine Rosa-Sierra, Psychiatric Associate, at ASPC-Perryville
c/o Corizon Health

185. John St. Clair, Ph.D., Psychologist III, at ASPC-Perryville
c/o Corizon Health

In addition to the expected testimony listed below, Dr. St. Clair is expected to testify as to the mental health treatment available and provided to the inmates housed at ASPC-Perryville, including Plaintiffs Christina Verduzco, Sonia Rodriguez and Maryanne Chisholm. He is also expected to testify regarding the programs, medication prescriptions and administration for mental health services at ASPC-Perryville. Dr. St. Clair is expected to testify that the mental health treatment available and provided to the inmates

is appropriate and within the applicable standard of care.

186.   Dale Lee Palmer, former D.O., at ASPC-Perryville
c/o Corizon Health

In addition to the expected testimony listed below, Dr. Palmer is expected to testify regarding the medical care provided to the inmates housed at ASPC-Perryville and that such medical care is appropriate and within the applicable standard of care. Specifically, Dr. Palmer is expected to testify regarding the medical care, including referrals to outside medical providers, on-site medical appointments and medication prescription and administration for Plaintiffs Maryanne Chisholm and Charlotte Wells.

187.   Sandra Ekeinde, Ph.D. Psychologist II, at ASPC-Phoenix
c/o Corizon Health

188.   Tamara Lee Porter, C.R.N., Director of Nursing, at ASPC-Tucson
c/o Corizon Health

189.   Jacqueline Worsley, Psy.D. Psychologist II, at ASPC-Phoenix
c/o Corizon Health

In addition to the expected testimony listed below, Dr. Worsley is expected to testify regarding the mental health treatment provided to inmates at ASPC-Phoenix. Specifically, Dr. Worsley is expected to testify as to the treatment she provided to Plaintiff Dustin Brislan and that the treatment was appropriate and within the applicable standard of care.

190.   Michael F. Cleary, M.S., Psychiatrist, at ASPC-Phoenix
c/o Corizon Health

In addition to the expected testimony listed below, Dr. Cleary is expected to testify regarding the mental health treatment provided to inmates at ASPC-Phoenix. Specifically, Dr. Cleary is expected to testify as to the treatment he provided to Plaintiff Dustin Brislan and that the treatment was appropriate and within the applicable standard of care.

191. Daniel James, Psych Associate, ASPC-Lewis
c/o Corizon Health

192. Jose De Los Santos, D.D.S., at ASPC-Perryville
c/o Corizon Health

193. Dr. Jesse R, Coons, D.O., Medical Director at ASPC-Safford
c/o Corizon Health

194. Irma Paulley, D.D.S., Dental Director at ASPC-Tucson
c/o Corizon Health

195. Annette Jasinsky, C.R.N.S. I, former Director of Nursing at ASPC-Perryville
c/o Corizon Health

196. Sherri Cluff, C.R.N., RN Supervisor at ASPC-Safford
c/o Corizon Health

197. Jack Fredrickson, D.D.S., former Dental Director at ASPC-Douglas
c/o Corizon Health

198. Andrea Irving, D.O., Medical Director at ASPC-Perryville
c/o Corizon Health

199. Joel Turner, Dental Director at ASPC-Douglas
c/o Corizon Health

200. David Hill, Dentist at ASPC-Eyman
c/o Corizon Health

201. Sean Ziaei, Dentist at ASPC-Eyman and ASPC-Lewis
c/o Corizon Health

202. Wallace Rumsey, Physician at ASPC-Eyman
c/o Corizon Health

203. Sarah Foxley, Psychologist at ASPC-Eyman
c/o Corizon Health

204. Jamie Kenney, former Psychologist at ASPC-Eyman
c/o Corizon Health

205. Charles Moore, former Regional Director at ASPC-Eyman
c/o Corizon Health

206.   Nicole Bradfield, former RN Supervisor at ASPC-Eyman
       c/o Corizon Health

207.   Donna Lee Thies, LPN at ASPC-Florence
       c/o Corizon Health

208.   Carlos Weekly, Dental Director at ASPC-Florence
       c/o Corizon Health

209.   John Jang, Dentist at ASPC-Florence
       c/o Corizon Health

210.   Joanne Curry, Dentist at ASPC-Florence
       c/o Corizon Health

211.   Phillip Hendrix, Dentist at ASPC-Florence
       c/o Corizon Health

212.   Shantell Artley, former Director of Nursing at ASPC-Florence
       c/o Corizon Health

213.   Zoran Vukcevic, Medical Director at ASPC-Florence
       c/o Corizon Health

214.   Dragica Lekic, former Psychiatrist at ASPC-Florence
       c/o Corizon Health

215.   Syed Asad Raza, Psychiatrist at ASPC-Florence
       c/o Corizon Health

216.   Christine Pereira, Assistant FHA at ASPC-Florence
       c/o Corizon Health

217.   Elizabeth McCrehin, former RN Supervisor at ASPC-Florence
       c/o Corizon Health

218.   Karen Hudson, LPN at ASPC-Perryville
       c/o Corizon Health

219.   Kendrick Gray, Dentist at ASPC-Perryville and ASPC-Lewis
       c/o Corizon Health

220.   Liliana Garcia, Dentist at ASPC-Perryville
       c/o Corizon Health

221.   Jeffrey Sharp, M.D., at ASPC-Perryville
       c/o Corizon Health

222.   Ronald Schwartz, Psychiatrist at ASPC-Perryville
c/o Corizon Health

223.   Selam Gebre, Clinical Coordinator at ASPC-Phoenix
c/o Corizon Health

224.   Robert Kearney, Psychiatric RN Supervisor at ASPC-Phoenix
c/o Corizon Health

225.   Richard Christiansen, Director of Nursing at ASPC-Phoenix
c/o Corizon Health

226.   Laura Sherman, former Psychiatric Director at ASPC-Phoenix
c/o Corizon Health

227.   Ruth Tenrreiro, Psychologist at ASPC-Eyman
c/o Corizon Health

In addition to the expected testimony listed below, Dr. Tenrreiro is expected to testify regarding the mental health treatment provided to inmates.  Specifically, Dr. Tenrreiro is expected to testify as to the treatment she provided to Plaintiff Dustin Brislan and that the treatment was appropriate and within the applicable standard of care.

228.   Pamela Stein, RN Supervisor at ASPC-Phoenix
c/o Corizon Health

229.   Erica Johnson, former Clinical Coordinator at ASPC-Lewis
c/o Corizon Health

230.   Laura Hale, Dental Director at ASPC-Lewis
c/o Corizon Health

In addition to the expected testimony listed below, Dr. Hale is a dentist employed by Smallwood Prison Dentistry and is assigned to ASPC–Lewis.  Dr. Hale will specifically testify regarding the dental treatment provided to Plaintiff Joshua Polson.  She will testify regarding the dental procedures and work she performed on Mr. Polson's dentures on several different occasions.

231.   Hugh Conway, Dentist at ASPC-Lewis
c/o Corizon Health

232.  Sundeep Gill, Dentist at ASPC-Eyman
      c/o Corizon Health

233.  Kenneth Merchant, Physician at ASPC-Lewis
      c/o Corizon Health

234.  Christine Sparacino, Psychologist at ASPC-Lewis
      c/o Corizon Health

235.  Charmarie Frantz, Director of Nursing at ASPC-Safford
      c/o Corizon Health

236.  Carolyn Rihanek, Dentist at ASPC-Tucson
      c/o Corizon Health

237.  Hector Vega, Dentist at ASPC-Tucson
      c/o Corizon Health

238.  Lisa Allard, RN at ASPC-Tucson
      c/o Corizon Health

239.  Kevin Lewis, former Medical Director at ASPC-Tucson
      c/o Corizon Health

240.  Robert Winsky, Jr. Psychiatrist at ASPC-Tucson
      c/o Corizon Health

241.  Susan Santa Cruz, former Psychologist at ASPC-Tucson
      c/o Corizon Health

242.  William Brautigam, Psychologist at ASPC-Tucson
      c/o Corizon Health

243.  Cristobal Eblen, Psychologist at ASPC-Tucson
      c/o Corizon Health

244.  Elsie Stowell, Facility Health Administrator at ASPC-Winslow
      c/o Corizon Health

245.  Amy Shumway, RN at ASPC-Winslow
      c/o Corizon Health

246.  Kenneth Rice, Dental Director at ASPC-Winslow
      c/o Corizon Health

247.  Robin Boyd, Dentist at ASPC-Winslow
      c/o Corizon Health

248.  Julie Lucek, Director of Nursing at ASPC-Winslow
      c/o Corizon Health

249.  Robert Balda, RN Supervisor at ASPC-Winslow
      c/o Corizon Health

250.  Emily Elmer, RN Supervisor at ASPC-Winslow
      c/o Corizon Health

251.  Daniela Munoz, Clinical Coordinator at ASPC-Yuma
      c/o Corizon Health

252.  Rick Jones, former Dental Director at ASPC-Yuma
      c/o Corizon Health

253.  Deborah Williams, Dentist at ASPC-Yuma
      c/o Corizon Health

254.  James Browning, Dentist at ASPC-Yuma
      c/o Corizon Health

255.  Karen Robles, Director of Nursing at ASPC-Yuma
      c/o Corizon Health

256.  Ed Gogek, Psychiatrist at ASPC-Yuma
      c/o Corizon Health

257.  Deanna McGowan, RN at ASPC-Eyman
      c/o Corizon Health

In addition to the expected testimony listed below, Nurse McGowan is expected to testify regarding her interactions with Plaintiff Jackie Thomas. Specifically, she will testify regarding the programming and group therapy he is currently involved in and the improvements she has seen in his condition as a result.

258.  Jodie Clark, RN Supervisor at ASPC-Eyman
      c/o Corizon Health

259.  Glenn Finch, RN Supervisor at ASPC-Eyman
      c/o Corizon Health

260.  Terri Jackson, RN Supervisor at ASPC-Eyman
      c/o Corizon Health

103

261. Kelly Mier, RN Supervisor at ASPC-Eyman
c/o Corizon Health

262. Gregory Schumacher, Clinical Coordinator, ASPC-Florence
c/o Corizon Health

263. Angharad Rees, Director of Nursing, ASPC-Florence
c/o Corizon Health

264. Jawad Rias, Psychiatrist, ASPC-Florence
c/o Corizon Health

265. Lucy Burciaga, Medical Director, ASPC-Tucson
c/o Corizon Health

266. Donna Greenwalt, Clinical Coordinator, ASPC-Perryville
c/o Corizon Health

267. Daniel McDonnell, Psychologist, ASPC-Tucson
c/o Corizon Health

268. Sherry Holly-Reps, Psychologist, ASPC-Florence
c/o Corizon Health

269. Melissa Knowlton, Psychologist, ASPC-Florence
c/o Corizon Health

270. Laura Lee, Clinical Coordinator, ASPC-Winslow
c/o Corizon Health

271. Doi Durtschi, RN Supervisor, ASPC-Florence
c/o Corizon Health

272. Cherie Getts, RN Supervisor, ASPC-Florence
c/o Corizon Health

273. Billie Jo Mason, RN Supervisor, ASPC-Florence
c/o Corizon Health

274. Angela Townsend, RN Supervisor, ASPC-Florence
c/o Corizon Health

275. Elaine Clayton, RN Supervisor, ASPC-Phoenix
c/o Corizon Health

276. Kellie Rogers, FHA, ASPC-Yuma
c/o Corizon Health

1    In addition to the expected testimony listed below, Ms. Rogers is likely to
2  testify regarding her knowledge of ADC's policies and procedures for delivery of health
3  care to ADC's inmate population; including delivery of medications, delivery of mental
4  health care and dental care, and the day-to-day operation of health services at Yuma.  Ms.
5  Rogers is also expected to testify regarding the scheduling of health care appointments
6  and Yuma's recent implementation of the Care Log system which electronically tracks
7  and schedules follow up appointments for inmates with chronic care conditions, and the
8  overall delivery of healthcare to the inmates.

9    277.   Michele Epstein, M.D., Psychiatrist at ASPC-Yuma
10              c/o Corizon Health

11    Dr. Epstein is a psychiatrist at ASPC-Yuma.   Dr. Epstein is expected to
12  testify regarding the mental health treatment provided to inmates at ASPC-Yuma.

13    278.   Karen Chu, ADC HS Contract Monitoring Bureau, Quality/Clinical, Dental
14              Program Manager
15              c/o Struck Wieneke & Love, P.L.C.

16    Karen Chu is the current HS Contract Monitoring Bureau, Quality/Clinical,
17  Dental Program Manager.   Please see Exhibit Bates Numbered ADC123434 for her
18  credentials and qualifications.   Dr. Chu is likely to have discoverable information
19  regarding ADC's policies and procedures related to provision of dental care to the ADC
20  inmate population; her knowledge of Plaintiffs' dental health needs;, as well as the
21  provision of adequate care to ADC inmates in compliance with constitutional
22  requirements; her activities in the review and analysis of dental services provided to
23  ADC's inmate population, review and analysis of inmate charts, and response to inquiries
24  from monitoring staff regarding appropriateness of dental services, practices and
25  protocols.

26    The above listed witnesses (95-276) are likely to have discoverable
27  information regarding the PROVISION OF DENTAL, MEDICAL AND/OR MENTAL
28  HEALTH CARE PROVIDED TO PLAINTIFFS WHILE INCARCERATED AT ADC

105

1  FACILITIES; knowledge they may have of Plaintiffs' prior dental, medical, and mental

2  health history as well as the symptoms they complained of or presented while in ADC

3  custody; their experiences with Plaintiffs, as to whether Plaintiffs participated in their own

4  care, missed or refused appointments, were a less than cooperative patient care and

5  whether Plaintiffs were a poor historian with respect to self-reports of dental, medical, and

6  mental history they provided; ADC policies and procedures applicable to the provision of

7  dental, medical, and mental health care to inmates; any and all records they authored or

8  reviewed; the level of care received by ADC inmates; the allegations set forth in

9  Plaintiffs' Complaint.

10        279.   Dennis P. Eddy, ADC #053476
11               ASPC-Eyman-SMU I
                 P.O. Box 4000
12               Florence, AZ 85132-4000

13        Dennis Eddy is an inmate incarcerated under the care and custody of the

14  ADC.  Mr. Eddy is likely to have discoverable information with regard to Plaintiff Dustin

15  Brislan's aggressive behavior while incarcerated.

16        280.   Robert Patton, ADC Division Director of Offender Operations
17               c/o Struck, Wieneke & Love, PLC

18        Mr. Patton has knowledge and information regarding the ADC's operations

19  and security.

20        281.   Sgt. Whiting, ADC Sergeant at ASPC-Lewis-Rast Unit
21               c/o Struck Wieneke & Love PLLC

22        Sgt. Whiting has knowledge and information regarding Joshua Polson's

23  refusal to receive legal mail from Donald Specter of the PLO on March 13, 2013.

24        282.   CO II Perry, Correctional Officer at ASPC-Lewis-Rast Unit
25               c/o Struck Wieneke & Love PLLC

26        CO II Perry has knowledge and information regarding Plaintiff Joshua

27  Polson's refusal of legal mail from Donald Specter of the PLO on March 13, 2013, and
28

106

from Perkins Coie on March 15, 2013.

283.   Archuleta, #4284, ADC CO II at ASPC-Lewis-Complex Mailroom
c/o Struck, Wieneke & Love, PLC

CO II Archuleta has knowledge and information regarding Plaintiff Joshua Polson's refusal to receive legal mail from Donald Specter of the PLO on March 13, 2013, and from Perkins Coie on March 15, 2013.

284.   Harp, ADC CO II at ASPC-Lewis-Complex Mailroom
c/o Struck, Wieneke & Love, PLC

CO II Harp has knowledge and information regarding Plaintiff Joshua Polson's refusal to receive legal mail from Donald Specter of the PLO on March 5, 2013.

285.   Franco, ADC CO II at ASPC-Lewis-Complex Mailroom
c/o Struck, Wieneke & Love, PLC

CO II Franco has knowledge and information regarding Joshua Polson's refusal to receive legal mail from Donald Specter of the PLO on March 5, 2013 and other interactions with Polson.

286.   Brian Radford, CO III at ASPC-Eyman/SMU I
c/o Struck, Wieneke & Love, PLC

CO III Brian Radford has knowledge and information regarding ADC's policies and procedures relating to ADC inmates receiving mental health care and conditions of confinement of inmates receiving mental health care at ASPC-Eyman/SMU I.

287.   ADC Captain Karkhoff – ASPC- Perryville
c/o Struck Wieneke & Love, PLC

Captain Karkhoff is expected to testify regarding his knowledge and observations while assigned to ASPC-Lewis of Plaintiff Stephen Swartz numerous occasions of swallowing foreign objects such as springs, paperclips, and wire.  He will also testify regarding the actions taken following the numerous occasions based on his

observations and actions.  He will further testify regarding his knowledge of Plaintiffs Maryanne Chisholm, Desiree Licci, Sonia Rodriguez, Christina Verduzco and Charlotte Wells.

288.   Dr. Wayne G. Thorpe

Dr. Thorpe is expected to testify regarding the facial reconstruction surgery he performed on Plaintiff Stephen Swartz.

289.   Dr. Ronolfo Macabuhay

Dr. Macabuhay is expected to testify regarding the provision of health care provided to Plaintiff Stephen Swartz after Mr. Swartz alleges he suffered from a hernia in 2010.  He is expected to testify that the medical treatment provided to Mr. Swartz was appropriate and within the applicable standard of care.  He is further expected to testify regarding any medical care he provided to Plaintiff Joseph Hefner.

290.   Dr. Brett Barlow

Dr. Barlow is expected to testify regarding the appointment Plaintiff Stephen Swartz had with him. It is expected that Dr. Barlow will discuss that once Mr. Swartz arrived at Dr. Barlow's office, Mr. Swartz refused medical treatment.

291.   All non-objectionable witnesses listed by Plaintiff, even if later withdrawn.

292.   Without waiving objections, all witnesses listed in responses to interrogatories or other discovery.

293.   All persons who are deposed in this action.

294.   Defendant anticipates that unlisted individuals who may have relevant information will be identified as discovery progresses, and will supplement at that time.

295.   Defendants reserve the right to supplement this list of potential witnesses as discovery proceeds in this matter.

III.    **COMPUTATION OF DAMAGES**

Defendants are not making any claim for damages.  Defendants will seek any and all recoverable costs and fees should Defendants prevail in this matter.

IV.    **INSURANCE AGREEMENTS**

There are no relevant insurance agreements under Fed. R. Civ. P. 26(a)(1)(A)(iv).

DATED this __25th__ day of April 2014.

STRUCK WIENEKE & LOVE, P.L.C.


By /s/ Timothy J. Bojanowski
Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226

Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried
Lucy M. Rand
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926

*Attorneys for Defendants*

COPIES of the foregoing e-mailed
this __25th__ day of April, to:

Caroline N. Mitchell
cnmitchell@jonesday.com

Sarah Kader
skader@azdisabilitylaw.org

David Cyrus Fathi
dfathi@npp-aclu.org

Donald Specter
dspecter@prisonlaw.com

135

1    Amelia Gerlicher
     agerlicher@perkinscoie.com
2

3    By: /s/ Amy Bender
     2894787.1
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28