Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DJH<br><br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO DE-DESIGNATE DOCUMENTS AS CONFIDENTIAL** |

We are just nine weeks from trial, in the thick of trial preparation and pre-trial matters for this major class-action lawsuit, and Plaintiffs are seeking to immediately release documents to the public—documents that *they* already have and have had for a long time—allegedly on the public's behalf. This has nothing to do with trial or Plaintiffs' ability to try their case. They claim no prejudice. It is a non-issue solely intended to distract Defendants from preparing their defense. Defendants attempted to resolve this dispute on the sidelines, but Plaintiffs insisted on bringing it before the Court. Their Motion should be denied.

## I. RELEVANT PROCEDURAL HISTORY

### A. Plaintiffs' Litigation Strategy: Scorched-Earth Litigation

Since the inception of this lawsuit, Plaintiffs' counsel have bombarded Defendants and the Court with discovery and disputes. Armed with more than thirty lawyers (another one added today) from four organizations and two national law firms, their objective has been to keep Defendants and their counsel busy and distracted from defending this case. For example, in the middle of expert discovery and an 18,500-page production, Plaintiffs' counsel filed a lengthy motion accusing ADC staff of interfering with their legal mail and asked the Court to order sweeping changes to ADC's legal-mail policies, an issue not in this case. (Doc. 736.) The Court denied their motion, finding it to be "exaggerated" and "inappropriate," and ordered Plaintiffs to pay Defendants their "substantial fees" in having to respond to it. (Doc. 766, 796.) In less than 2 ½ years, there are nearly 1,100 docket entries on the Court's docket, due largely to Plaintiffs' excessive motions practice. In addition, Plaintiffs have taken more than 60 depositions and 55 expert tours of ADC facilities, and Defendants have been forced to produce more than 569,000 pages of documents—167,413 pages since June 1, 2014 (and 2,600 pages tomorrow). The Court recently acknowledged that "the burden and the expense of discovery in this case has gone wildly beyond any control that I had or could exercise." (Ex. 1 at 4.) The burden and expense of that discovery has fallen largely, if not entirely, on ADC.

**B.     The Protective Order, Designation of Confidential Information, and Production of Documents**

Because this case involves prison litigation and broadly challenges the healthcare and conditions of confinement at ADC, the parties stipulated to a Protective Order at the outset so that certain information could quickly flow between the parties during discovery with guaranteed confidentiality.  (Doc. 140, 454; Ex. 2 at 53-54; Ex. 3 at 31, 43-44.)[1] Plaintiffs' counsel demanded the confidentiality of "Protected Health Information of prisoners during discovery" (Doc. 49–2, ¶ 2), and Defendants sought confidentiality of information that could compromise the safety and security of ADC facilities, staff, and inmates.  The Protective Order provides:

> 1. All protected health information and security information produced in discovery in this action shall be regarded as confidential information and subject to this Protective Order. For the purpose of this Protective Order, the term "confidential information" shall refer to documents, or portions thereof, discovery responses, testimony, and copies, notes, extracts, written summaries or written descriptions of such material. "Protected health information" . . . is defined by the Health Insurance Portability and Accountability Act, 45 C.F.R. § 160.103 and includes information covered by A.R.S. § 12–2294. The term "security information" refers to all documents that would threaten the safety and security of a person or institution if disclosed without protective conditions. . . .
>
> \*     \*     \*
>
> 3. Any party or third party may designate material as confidential information. The designation of material as confidential shall be made by placing or fixing on the first page of the material . . . the words "Confidential Information – Subject to Protective Order."

(Doc. 454, ¶¶ 1, 3.)  If material is designated as confidential, it may only be disclosed to certain individuals, e.g., counsel for the parties, experts retained by the parties, and the Court.[2]  (Id., ¶¶ 5-6.)

---

[1] The parties stipulated to the original Protective Order in September 2012. (Doc. 140.) That Protective Order was amended in May 2013 to remove a provision not relevant here. (Doc. 399, 416, 439, 449, 454.) References to the "Protective Order" in this Response are to the Amended Protective Order (Doc. 454), and the provisions cited therein are identical to the provisions in the original Protective Order.

[2] The named Plaintiffs may view confidential information only if (1) it is their own

Many of the productions in this case have included thousands of pages, and were required to be made on an expedited basis or when other matters (pleadings, depositions, tours, expert reports, or other discovery) were due. To minimize costs and still produce the documents on a timely basis, Defendants' counsel would scan the documents, convert them into a pdf file, and burn them onto a single disc. Many, if not most or all, of the documents ("or portions thereof") in a given production included "Protected health information" or "security information." As a result, and because all of the documents were produced on a single disc, the disc was labeled "Confidential Information – Subject to Protective Order," as required under the Protective Order, and the same designation was automatically placed in the footer of each page using the pdf software, simultaneous with the batch application of production numbers for all documents being produced on a single date.

Admittedly, not every page within each document included confidential information, but the Protective Order does not require a page-by-page designation. So long as there is confidential information within a document, that document may be designated as confidential. (Doc. 454, ¶ 3.) And although there could be entire documents within a production disc that do not include confidential information, they were unintentionally designated confidential (because of the designation on the disc cover or document footer) because the production disc as a whole did include other documents with confidential information. The only alternative to this efficient production method would have been to print copies of each document received from ADC, manually review each page of each document for confidential information, hand-stamp individual pages that contained confidential information, and produce thousands of hard copies of pages to Plaintiffs. This would have required hundreds if not thousands of additional hours,

---

medical records, or (2) it originated from them (i.e., a written statement by that Plaintiff). (Doc. 454, ¶ 5d.) The purpose of this limitation was to "protect the safety and security of all inmates by prohibiting dissemination of inmate or informant information to other inmates, including other Plaintiffs, and in circumstances where Plaintiffs to this action include verified members of different and opposing security threat groups." (Id.)

increased discovery costs dramatically, and resulted in delayed disclosures. At no point did Plaintiffs object to Defendants' designation method.

### C. Prior Requests to Seal and/or De-Designate Confidential Documents

As mentioned above, Defendants have produced more than 569,000 pages of documents in this case. Plaintiffs have relied on those documents to support many of their pleadings. Most of those documents were designated confidential. Over the course of this litigation, Plaintiffs have moved to seal pleadings containing confidential information <u>24 times</u>, all of which were granted by the Court. (Doc. 241, 247, 333, 337, 374, 376, 540, 547, 579, 581, 585, 587, 588, 592, 597, 603, 694, 695, 738, 742, 755, 761, 785, 796, 800, 802, 860, 866, 878, 897, 908, 914, 921, 923, 952, 962, 973, 979, 989, 991, 1006, 1031, 1017, 1025, 1043, 1071.) Each time, Plaintiffs' justification was that the documents included personal health information and/or other information Defendants designated confidential.[3] They never challenged the initial decision to designate these documents as confidential in their motion to seal.

Prior to this dispute, Plaintiffs sought to de-designate specific documents on only three prior occasions.[4] <u>First</u>, in November 2012, Plaintiffs' counsel approached Defendants regarding 33 specific documents designated as confidential and asked if they could be filed under seal in conjunction with their motion for class certification. (Ex. 4.) Defendants reviewed the specified documents, agreed to the public filing of some of them, and requested that the remaining documents remain under seal because they included confidential security information. (Doc. 241, 270.) The parties followed the process outlined in LRCiv 5.6(d), and the Court granted the request to seal them. (Doc. 276.) On the <u>second</u> occasion, in August 2013, Plaintiffs' counsel sought de-designation of two

---

[3] Under the Protective Order, "[a]ny confidential information filed with the Court shall be filed under seal." (Doc. 454, ¶ 4.)

[4] Contrary to Plaintiffs' assertion, they did not "repeatedly" attempt de-designation of the documents at issue now or generally. (See Doc. 1041 at 2:20: "Plaintiffs repeatedly tried to obtain Defendants' agreement on the de-designation . . ."; Id. at 2:27-28.) There were only three prior discussions regarding de-designation, relating to specific and limited documents.

4

documents they obtained pursuant to a third-party subpoena, and in which they designated as confidential. (Doc. 593.) Defendants objected to the de-designation, not because it was protected under the Protective Order, but because Plaintiffs' counsel had acquired the documents from the third-party based upon Plaintiffs' counsel's agreement that the documents would remain confidential. (Doc. 627.) The Court granted the motion, finding that Plaintiffs' counsel's agreement did not overcome the presumption of public disclosure. (Doc. 657.) The last occurrence, in May 2014, involved the de-designation of expert deposition transcripts. (Doc. 1042-1 at 13–17; Ex. 5.) The parties had designated as confidential their corresponding experts' reports. Those reports discuss in detail the healthcare of specific inmates. The experts' depositions also recount the healthcare of specific inmates. Plaintiffs sought Defendants' consent to de-designate all expert depositions, but Defendants did not consent because doing so would have violated the Protective Order. Plaintiffs threatened to file a motion with the Court (Id. at 17), but never did.

### D.     Summary Judgment Briefing

Defendants filed their Motion for Summary Judgment on May 14, 2014. (Doc. 889-892, 902, 937.) That Motion was accompanied by 205 Exhibits with an additional 209 Attachments to those Exhibits, totaling approximately 39,293 pages. (Doc. 886.) Just one day prior to that deadline, the Court ordered Defendants to submit the Exhibits on a disc instead of filing them electronically. (Doc. 873.) Nearly all of the Exhibits had been previously designated confidential by Defendants at the time of production because they contained "Protected health information" and/or "security information." Thus, Defendants moved to file their Exhibit disc under seal, as well as unredacted versions of their Motion for Summary Judgment and Statement of Facts. (Doc. 887.) Plaintiffs did not object to filing anything under seal, and the Court granted Defendants' request. (Doc. 897.) Defendants subsequently requested leave to file Corrected versions of their Statement of

Facts and Exhibits, and to file them under seal.[5] (Doc. 928, 930.) Plaintiffs again did not object to filing the Exhibits under seal, and the Court granted Defendants' request. (Doc. 935, 937, 938–1.)

Plaintiffs filed their Response to the Motion for Summary Judgment on July 11, 2014. (Doc. 1014.) They attached 75 Exhibits to their Statement of Facts (Doc. 1020), containing approximately 859 pages, and moved to seal 59 of those Exhibits because they included "confidential protected health information" as well as "information that Defendants have designated as Confidential under the Protective Order." (Doc. 1017.) Their motion to seal did not contend that any of the documents should not have been designated as confidential. (Id.) The Court granted their motion to seal these Exhibits. (Doc. 1025.)

### E. Plaintiffs' Counsel's Initial and Changing Request for De-Designation of Summary Judgment Briefing

This dispute began on June 30, 2014. Plaintiffs' counsel informed Defendants that they planned to seek de-designation of certain Exhibits attached to their Motion for Class Certification, their Motion to Strike Defendants' Experts and Expert Reports, Defendants' Motion for Summary Judgment (only 38 Exhibits and 7 attachments), their Response to Defendants' Motion to Preclude Experts, and a handful of recently produced emails. (Doc. 1042–1 at 7–10.) Plaintiffs proposed to redact from these documents inmates' identifying information, the telephone numbers and addresses of witnesses, and security information. (Id.) Defendants' counsel informed that they were open to discussing the proposed redactions after several upcoming pleading and production deadlines had passed. (Id. at 6–7.)

In response, Plaintiffs' counsel stated that the matter was "urgent" and threatened to file a motion to de-designate "all of the materials associated with the summary

---

[5] The Corrected Statement of Facts corrected scrivener's errors in several record citations (there were more than 4,300 statements of fact), and the Corrected Exhibits added several pages of exhibits that were inadvertently omitted from the original Exhibit disc. (Doc. 928.)

6

judgment briefing, subject to minimal redactions" that week if Defendants did not agree. (Id. at 6.) Defendants responded that they were "willing to work" with Plaintiffs to redact and unseal the documents, but that they needed to agree on a reasonable time frame to get it done. (Id. at 5.) Plaintiffs' counsel replied that they wanted to complete the de-designation process of "the MSJ briefing, including all of the supporting documents and the exhibits referenced in it, even if filed elsewhere in the record . . . and the exhibits attached to [her] declaration in [opposition to] MSJ by next Friday." (Id. at 4.) Thus, not only did Plaintiffs expand the scope of the immediate de-designation (from just 38 Exhibits and 7 attachments to *all* 205 Exhibits *and* 209 Attachments, *and all* of Plaintiffs' Exhibits, both attached to and referenced in their response and controverting and supplemental statement of facts), but they wanted the redaction of these 40,000 pages to happen in one week.

Defendants could not commit to that one-week time frame, particularly because that week was the last week (and the second of only two weeks) that Defendants had to respond to Plaintiffs' 47-page Response to their Motion for Summary Judgment (Doc. 962), an endeavor that required all hands on deck. Defendants proposed beginning the redaction process on September 22, 2014, in light of the enormity of Plaintiffs' request, and the fact that the ensuing 8 weeks were consumed with many deadlines/obligations:

- Reply in Support of Motion for Summary Judgment (July 28)
- Settlement Conference Memorandum (July 29)
- Oral Argument on Motion for Summary Judgment (July 30)
- Production of 82,224 pages of documents (July 3 – August 11)[6]
- Settlement Conference (August 5)
- Nine depositions (July 24, 29; August 1, 7, 11, 12)

---

[6] Defendants have made the following productions in the last 6 weeks: July 3: 19,203 pages; July 11: 4,526 pages; July 17: 6,789 pages; July 18: 837 pages; July 25: 6,594 pages; July 28: 4,594 pages; July 29: 38,067 pages; Aug 4: 777 pages; Aug 8: 480 pages; Aug 11: 357 pages.

7

1        • Four expert tours (August 11, 12, 13, 14)

2        • Four expert reports (August 29; September 19)

3        • Motions In Limine (September 5)

4        • Exchange of Trial Exhibits (September 5)

5        • Proposed Final Pretrial Order (September 8)

6        • Response to Motions In Limine (September 17)

7        • Joint Pretrial Statement (September 19)

8        • Proposed Findings of Fact and Conclusions of Law (September 19)

In response, Plaintiffs filed this Motion to De-Designate. (Doc. 1041.) It does not specifically identify which documents they would like de-designated, but instead ambiguously refers to

> all documents attached to or referenced in Defendants' Motion for Summary Judgment (the "Motion") [Doc. 902] and all related and responsive documents and exhibits, including Defendants' Corrected Statement of Facts [Doc. 937], Plaintiffs' Response to Defendants' Motion for Summary Judgment [Doc. 1018], and Plaintiffs' Response to Defendants' Separate Statement of Facts [Doc. 1020], as well as any documents Defendants may subsequently file in connection with the Motion.

(Id. at 2:3-7.) From this, Defendants can discern that Plaintiffs request the de-designation of (1) Defendants' Motion for Summary Judgment, Corrected Statement of Facts, and all 205 Exhibits and 209 Attachments, and (2) Plaintiffs' Response to Defendants' Motion for Summary Judgment, and Plaintiffs' Response to Defendants' Corrected Statement of Facts. What is unclear is Plaintiffs' request for documents "referenced in" Defendants' Motion for Summary Judgment. Plaintiffs have not identified these documents. Defendants also do not know what is included as far as "all related and responsive documents and exhibits" to the items in the group of pleadings in (2) above. Presumably, this refers to the 75 Exhibits Plaintiffs attached to their Response to the Motion for Summary Judgment (although they do not include their Separate Statement of Facts as one of the documents). But their broad language seemingly encompasses much more. Their Response to the Motion for Summary Judgment and Response to Defendants'

8

Corrected Statement of Facts not only referenced specific attached Exhibits, but also cited exhibits and documents that were previously filed with the Court in conjunction with other pleadings.[7] And there are literally hundreds of documents that are "related" to the specifically-cited Exhibits and previously filed documents. For example, the expert reports discuss many documents, most all of which are confidential. Defendants do not know how far Plaintiffs' request goes.

## II.  LEGAL ARGUMENT

Plaintiffs contend that "[m]ost of the documents" designated confidential by Defendants "in the course of this litigation" "never qualified for confidential treatment in the first place." (Doc. 1041 at 2:15-16, 3:2-3.) Aside from the fact that this assertion is (1) unsupported (and false) and (2) contradicted by the fact that Plaintiffs have only challenged a handful of confidentiality designations before this dispute and have relied on the designations to seal documents themselves on 24 occasions, this Motion is limited, by Plaintiffs, to the de-designation of confidential documents associated *with the summary judgment briefing*. (Doc. 1041 at 2: "Plaintiffs request de-designation of the Subject Documents."; see also id. at 8:13-14.) The confidential designation of those documents is the only issue before the Court.

### A.  The Summary Judgment Documents are Protected Under the Protective Order.

Plaintiffs begin with an incorrect assertion: "The documents are not confidential under the protective order." (Doc. 1014 at 3:19-20; see also id. at 4:3-4: "The documents that Plaintiffs seek to de-designate fall under neither category.") This is undermined by (1) their subsequent admissions that "*Most* of the Subject Documents, however, do not contain information that qualifies as 'protected health information,'" and, "The Subject Documents, however, contain *little* or no such [security] information" (Doc. 1014 at 4:15-

---

[7] For example, in support of the assertion in their Response to the Motion for Summary Judgment, "Failure to provide emergency treatment," Plaintiffs cite to: "[PSSOF ¶¶ 20-22; see Doc. 965 (Cohen), Ex. 1 ¶¶ 160-173, 176-182, 235, 238, 241-243, and App. C ¶¶ 108-110; Ex. 3 ¶¶ 91-95, 99-101, 128-136; Doc. 966 (Wilcox), Ex. 1 at 36-38; see also infra pages 15, 20-21]." (Doc. 1014 at pg. 7:11-13.)

16, 5:7-9), and (2) their acknowledgment that none of the documents can be de-designated unless they first redact Protected health and security information (Id. at 3:15-18, 4:21-23, 5:10-14, 7:11-13, 7:23-24). The Court should reject Plaintiffs' assertion out of hand.

The fact of the matter is that most of the summary judgment Exhibits *do* qualify as confidential under the Protective Order because they contain confidential information. For example:

- DOSF, Exhibits 1-121, 155, 190-204 (67% of Defendants' Exhibits), are the named Plaintiffs' medical records.

- DSOF, Ex. 154, 156-158, are discovery responses by the named Plaintiffs, which include discussions about their healthcare treatment.

- DSOF, Ex. 122 and 189, are the declarations of Defendants' healthcare experts, which discuss the healthcare treatment of the named Plaintiffs.

- DSOF, Ex. 159-160, are snippets from the expert report of Plaintiffs' dental expert, which discuss dental treatment of the named Plaintiffs and other inmates.

- Attached to Ex. 137, the declaration of Defendant Richard Pratt, are MGARs, which discuss the healthcare treatment of non-Plaintiff inmates, medical grievances, which discuss healthcare treatment of a named Plaintiff, and medical grievance reports, which list inmates by names and the nature of their medical issue (DSOF, Ex. 137, Att. NN-PP, QQ-ZZ, EEEE-HHHH, KKKK-OOOO).

These Exhibits undeniably qualify as "Protected health information." [8]

Many of Defendants' Exhibits also contain "security information." For example:

- DSOF, Ex. 123 and/or 138, are the declarations of Defendants' conditions experts, which discuss and/or attach restricted portions of ADC's use-of-force policy, photographs of units and cells, inmates' mental healthcare, and watch post orders.

- DSOF, Ex. 124-136, 139-153, are the named Plaintiffs' master record files, use-of-force incident reports, and serious incident reports, which typically contain the identification of inmates

---

[8] "Protected health information" is defined as "individually identifiable health information," and "health information" is any information that "[r]elates to past, present or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual." 45 C.F.R. § 160.103.

10

>who could be retaliated against for their role in an incident, are members of a Security Threat Group, or are confidential informants; next-of-kin information; staffing patterns; do-not-house information; and employee identification numbers.

The only Exhibits left are excerpts from deposition transcripts from the named Plaintiffs, the parties' experts, and ADC staff. (DSOF, Ex. 161-188, 205.) The depositions have been treated as confidential because most of the witnesses were asked to discuss confidential information. The following Exhibits contain excerpts that discuss the healthcare treatment of inmates, including the named Plaintiffs themselves: DSOF, Ex. 169, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183. This assuredly proves that nearly all of the Exhibits associated with Defendants' summary judgment briefing contain confidential information, and those that do not likely derived from depositions that included confidential information elsewhere.

Even a cursory glance at the Exhibits Plaintiffs attached to their Response to the Motion for Summary Judgment show that at least 27 of them include "Personal health information" or "security information." [9] (Ex. 7-11, 21-25, 28-33, 62-66, 68, 71-75.) If Plaintiffs believed that any of their Exhibits with confidential designations were not confidential, they were required to file a notice with the Court at the time they were filed, which would have then prompted Defendants to either withdraw the designation or file a motion to seal them with justification. *See* LRCiv 5.6(d). But Plaintiffs did not do this, and filed them under seal without any notice or objection to the confidentiality designations. (Doc. 1017.) They cannot complain now.

### B. The Safety and Security of Human Beings Outweighs the Public's Right to Access Information.

Although they say it is for the public, Plaintiffs' counsel are moving to de-designate information produced during discovery so that *they* can use the information publicly. (Doc. 1041 at 3:14-15.) They would like to either use the information in other pending cases or assist in creating another one-sided exposé about ADC healthcare on the

---

[9] Of their 75 Exhibits, 16 were deposition excerpts, and 7 were documents (Ex. 30-32, 62-65) produced by Plaintiffs.

1  eve of trial (which explains their urgency).[10] Nonetheless, the public *does* have access to
2  nearly all of the information through Arizona's public records laws. *See* A.R.S. § 39–121
3  *et seq*. Indeed, Plaintiffs' counsel, the media, and third parties have made public records
4  requests repeatedly during the pendency of this lawsuit to obtain information that has been
5  produced by Defendants to Plaintiffs' counsel. (Ex. 6.) For example, one media outlet
6  requested the MGARs and CAPs for March 2013 through April 2014, and "[a]ll additional
7  reports, records, memos or correspondence between Corizon and the Department about
8  the provision of healthcare at the Department's facilities" between March 2013 and April
9  2013. (Id., public records requests dated October 24, 2013 and May 22, 2014.) That same
10 media outlet included a copy of the November 2013 MGAR with an article it published on
11 August 1, 2014, just one day after the oral argument on Defendants' Motion for Summary
12 Judgment. *See* http://www.azcentral.com/story/news/investigations/2014/08/01/12news-
13 another-death-sentence/13494875/. Thus, not only does the public have access to the
14 information, but they have been given the information when they asked for it.

15 Some information is exempt by statute. For example, ADC is prohibited from
16 disclosing records "[r]evealing the identity of a confidential informant," "[e]ndangering
17 the life or physical safety of a person," or "[j]eopardizing an ongoing criminal
18 investigation." A.R.S. § 31–221(C). Inmates are also prohibited from viewing other
19 inmates' records, and an inmate is only permitted to view their own automated summary
20 record file one time per year. A.R.S. § 31–221(E)–(F). State and federal law also prohibit
21 ADC from releasing inmate medical records to the public without their consent or court
22 order. *See* 42 U.S.C. § 1320d et seq.; 45 C.F.R. §§ 160.103, 164.520, 164.512; A.R.S.
23 §§ 12–2292, 2294. Granting a blanket de-designation of all documents would give the
24 public information that they otherwise would not have access to by statute.

---

[10] News stories regarding ADC healthcare have coincidentally aired just before or during the pendency of major hearings or motions in this case, many of which included quotes or appearances by Plaintiffs' counsel.

1    Nevertheless, courts routinely hold that the public's right to access information
2    does not extend to HIPPA-qualifying information, *see*, *e.g.*, *L.B. ex rel. Brock v. Wells
3    Fargo & Co. Health Plan*, 3:13CV176, 2013 WL 4775304, at *2 (W.D.N.C. Sept. 5,
4    2013); *Woods v. Smith*, CIV.A. H-11-2485, 2013 WL 655731, at *8 (S.D. Tex. Feb. 20,
5    2013), *aff'd*, 554 F. App'x 332 (5th Cir. 2014); *Hendon v. Baroya*, 1:05-CV-01247-AWI,
6    2012 WL 6087535, at *3 (E.D. Cal. Dec. 6, 2012), <u>or</u> information that threatens the safety
7    and security of a prison, its staff, or its inmates, *see*, *e.g.*, *Mitchell v. Cate*, 2014 WL
8    1671589, at *3 (E.D. Cal. 2014); *Fosselman v. Evans*, 2011 WL 939616, at *2 (N.D. Cal.
9    2011); *Guillen v. Owens*, 2011 WL 5882554, at *4 (D. Ariz. 2011); *Salerno v. Munoz*,
10   2011 WL 2600519, at *2 (D. Ariz. 2011); *Arteaga v. Alameida*, 2007 WL 3105419, at *1
11   (E.D. Cal. 2007).  Indeed, this Court has recognized the importance of keeping such
12   information sealed, and has sealed this very information 40 times in this lawsuit. (See pg.
13   4:8-11; Doc. 325, 369, 421, 549, 601, 654, 675, 764, 844, 868, 897, 923, 935, 1010,
14   1051.)

15   Plaintiffs believe that protected health information can be disclosed to the public if
16   they redact inmate names and numbers.  Defendants take no position on whether doing so
17   violates state and federal law.  Regarding security information, however, Defendants have
18   a significant interest that it remain under seal and that interest outweighs the public's right
19   to access.  As discussed below, Defendants should have an opportunity to propose
20   redactions to security information, confer with Plaintiffs' counsel, and any dispute should
21   be resolved on a case-by-case basis by the Court.  The Supreme Court and the Ninth
22   Circuit have repeatedly instructed courts to defer to the informed discretion of prison
23   administrators when it comes to safety and security issues "because the realities of
24   running a corrections institution are complex and difficult, courts are ill equipped to deal
25   with these problems, and the management of these facilities is confided to the Executive
26   and Legislative Branches, not to the Judicial Branch." *Bell v. Wolfish*, 441 U.S. 520, 548
27   n.29 (1979); *Norwood v. Vance*, 591 F.3d 1062, 1066 (9th Cir. 2010).  And, as noted
28   above, courts recognize that information which poses a threat to the safety of a facility, its

staff, or its inmates can be withheld from public view.[11]

### C. Plaintiffs' Request for a Blanket De-Designation is Unreasonable and Unworkable.

Defendants agree that there are portions of documents submitted in conjunction with the summary judgment briefing that can be de-designated. Not every one of the 40,000 pages includes confidential information. Defendants also agree that the parties can redact the confidential information and de-designate the documents with redactions. But what Plaintiffs are asking for is an across-the-board de-designation of unspecified documents, and allowing Defendants only "5 business days" to review these documents for "security information." Requesting the de-designation of all documents falling within their ambiguous definition of "Subject Documents" (whatever that means) without allowing Defendants ample time to carefully review the documents for "security information"—i.e., information that "would threaten the safety and security of a person or institution if disclosed"—is reckless and irresponsible. ADC staff (and there are only two full-time staff members that are responsible for redactions) must review each page to ensure that it does not include information that could threaten the lives of any individual. (Ex. 7, ¶¶ 5, 8.) That simply cannot be done in five days. (Id., ¶ 10.) Placing such an immediate deadline would also require ADC to put aside the 292 other pending public records requests, and place this request at the front of the line. (Id., ¶ 6.)

### D. Defendants Propose a Reasonable Solution.

The Court should order the following:

- Plaintiffs must provide Defendants a specific list of documents, with corresponding bates numbers, that they seek to de-designate;[12]

---

[11] Plaintiffs' general assertion that there is no information contained within the summary judgment briefing that "pose[s] a security threat to current or past ADC employees" (Doc. 1041 at 7:5) is simply not true, and it ignores the threat to the facilities and inmates. The Court should not make a blanket judgment on this issue, but instead should require the parties to make proposed redactions, and resolve any outstanding disputes on a case-by-case basis.

[12] Since this Motion is limited to the summary judgment briefing, the list should be limited to documents specifically cited in or attached to the summary judgment briefing, and not extend to all documents produced in this litigation.

14

- If the Court believes that redaction of inmate identifiers discharges the statutory obligation to keep protected health information confidential, Plaintiffs must make those redactions, as it is their request and interest in de-designating these documents;

- Defendants may submit proposed redactions of security information to Plaintiffs. If Plaintiffs disagree with any proposed redactions, the parties shall meet and confer within 72 hours and try to resolve the disagreement;

- If the parties cannot agree to a redaction, they may submit the specific disagreements to the Court in a joint filing, and the Court will decide on a redaction-by-redaction basis whether the information should be redacted or not redacted.

As for the amount of time allowed to submit proposed redactions (which is really the heart of this dispute), ADC estimates that it will take two employees working full time (8 hours a day) approximately 2 ½ months to complete proposed redactions to approximately 40,000 pages. (Ex. 7, ¶¶ 9, 10.) And that assumes that these two employees can discharge their other responsibilities, which they cannot. (Id., ¶ 11.) Defendants do not see why that process should start before the end of trial, which both parties are currently preparing for. Plaintiffs' claim of urgency is unavailing, particularly where they have sealed the exact same information in the past, they did not object to Defendants' sealing of the documents when they were filed (and in fact moved to seal their own summary judgment documents), they waited approximately 2 ½ months after Defendants filed their Exhibits to raise this issue with the Court, and the public has access to (or already has) many of the same documents and the media has been reporting freely on the information throughout this litigation. Plaintiffs' proposed 5 days is unfair and impossible.

**CONCLUSION**

For these reasons, Plaintiffs' Motion should be denied. Alternatively, the Court should adopt Defendants' proposed plan for de-designation.

DATED this 14th day of August 2014.

                              STRUCK WIENEKE & LOVE, P.L.C.

                      By /s/ Daniel P. Struck
                         Daniel P. Struck
                         Kathleen L. Wieneke
                         Rachel Love
                         Timothy J. Bojanowski
                         Nicholas D. Acedo
                         Ashlee B. Fletcher
                         Anne M. Orcutt
                         Jacob B. Lee
                         STRUCK WIENEKE & LOVE, P.L.C.
                         3100 West Ray Road, Suite 300
                         Chandler, Arizona 85226

                         Arizona Attorney General Thomas C. Horne
                         Office of the Attorney General
                         Michael E. Gottfried
                         Lucy M. Rand
                         Assistant Attorneys General
                         1275 W. Washington Street
                         Phoenix, Arizona 85007-2926

                         *Attorneys for Defendants*

2932997.1

16

# CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Ajmel Quereshi: | aquereshi@npp-aclu.org |
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com; docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amir Q. Amiri: | aamiri@jonesday.com; ttualaulelei@jonesday.com |
| Amy Fettig: | afettig@npp-aclu.org |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| Daniel Joseph Pochoda: | dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| James Duff Lyall: | jlyall@acluaz.org; gtorres@acluaz.org |
| James M. Jellison: | jim@jellisonlaw.com; cindy@schleierlaw.com; kasey@jellisonlaw.com |
| Jennifer K. Messina: | jkmessina@jonesday.com |
| Jerica Lynn Peters: | jpeters@perkinscoie.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kamilla Mamedova: | kmamedova@jonesday.com |
| Kevin C. Brantley: | kbrantley@jonesday.com |

| | | |
|---|---|---|
| 1 | Kirstin T. Eidenbach: | keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; docketphx@perkinscoie.com |
| 2 | | |
| 3 | Matthew Benjamin de Mee: | mdumee@perkinscoie.com; cwendt@perkinscoie.com |
| 4 | Sara Norman: | snorman@prisonlaw.com |
| 5 | Sarah Eve Kader: | skader@azdisabilitylaw.org; mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org |
| 6 | Taylor Freeman: | tfreeman@jonesday.com |
| 7 | Warren E. George, Jr.: | wgeorge@prisonlaw.com |

    I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

    N/A

                                  /s/  Daniel P. Struck