# EXHIBIT 1

# EXHIBIT 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

———————————

| | |
|---|---|
| Victor Parsons, et al., on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | ) ) ) No.  **CV 12-00601-PHX-NVW** ) ) |
| Plaintiffs, | ) **Phoenix, Arizona** |
| vs. | ) **July 30, 2014** ) **3:34 p.m.** ) |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

BEFORE:  **THE HONORABLE NEIL V. WAKE, JUDGE**

(*Motion Hearing*)

Official Court Reporter:
Laurie A. Adams, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 43
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

4

```
 1    to reopen discovery on the basis that I had not fully
 2    understood the consequence of the trial schedule we originally
 3    set.  But delay in trial creates that same problem.
 4            And also, the burden and the expense of discovery in
 5    this case has gone wildly beyond any control that I have had or    13:36:32
 6    could exercise, and it proves the fallacy of the myth that
 7    trial judges can manage discovery to make it always
 8    appropriate.  The answer is trial judges can manage to set some
 9    boundaries.  When other things don't work, at least the case
10    can be brought to an end.  When the case is brought to an end,    13:36:59
11    what may well be inappropriate burdens come to an end as well.
12    So for both of those reasons, I have kept to this schedule and
13    I will hold myself to it as well.
14            We do not have set for hearing now this motion to
15    de-designate documents.  In fact, the response is not filed    13:37:23
16    yet.  I just want to make a brief comment on that, and I don't
17    want to take a lot of time.  And I'm not reaching any
18    conclusion about what was -- I have read the plaintiffs'
19    motion, so I know what they say.  But it was -- and I'm not
20    prejudging this, but it was not my intention that the    13:37:44
21    designation of confidentiality was a blanket process to defer
22    until later the decision of what documents meet either of the
23    two criteria; specific, confidential, client medical
24    information or security.
25            And if I conclude when this is briefed that this was    13:38:03
```

UNITED STATES DISTRICT COURT

# EXHIBIT 2

# EXHIBIT 2

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

Victor Antonio Parsons, et al.,    )
                                   )
                                   )
                     Plaintiffs,   )
                                   )
        vs.                        )   NO. CV 12-601 PHX-NVW
                                   )
Charles L. Ryan, et al.,           )   Phoenix, Arizona
                                   )   July 20, 2012
                                   )   10:20 a.m.
                     Defendants.   )
_____)


REPORTER'S TRANSCRIPT OF PROCEEDINGS

(Scheduling Conference)

BEFORE THE HONORABLE NEIL V. WAKE


Court Reporter:          Merilyn A. Sanchez, CRR
                         Sandra Day O'Connor U.S. Courthouse
                         401 W. Washington Street SPC-37
                         Phoenix, Arizona   85003-2118
                         (602) 322-7250

Proceedings taken by stenographic court reporter
Transcript prepared by computer-aided transcription

```
 1   some of the facts either way before we can have productive
 2   discussions.
 3           THE COURT:  I'm willing to leave that date blank now.
 4   I do that in normal cases to break through the barriers to
 5   communication that exist in a lot of cases and also to force
 6   everybody to think about the case at the same time.  But this
 7   is an unusual case, so I'm going to leave that blank for now.
 8   Maybe later on as we've progressed, I'll discuss it with you.
 9   And if there have not been earnest settlement discussions, then
10   I'll set -- I'll make you do it.  But I agree, it's too early
11   to set a deadline now.
12           MR. SPECTER:  Thank you, Your Honor.
13           THE COURT:  And I think that's everything.
14           Anything else, Ms. Wieneke?
15           MS. WIENEKE:  Yes, Your Honor.  Two issues.  One is
16   that we've been asked to produce medical records from inmates.
17   And we do require releases for the production of those records.
18   So --
19           THE COURT:  Yes.  That's pretty customary.
20           Any problem with that, Mr. Specter?
21           MR. SPECTER:  Yes, Your Honor, we need, as -- we need
22   the medical records to prove our case, both for the class
23   certification motion and for the ultimate trial.  So what
24   usually we propose, and have done in many other cases, is get
25   the medical records under a protective order.
```

1          THE COURT:  Well, with respect to your clients, your

2     named plaintiffs.

3          MR. SPECTER:  We already have those records,

4     Your Honor.

5          THE COURT:  So what are we talking about here?

6          MR. SPECTER:  We are talking about proving systemic

7     problems, which means we have to get records of other prisoners

8     or we can't prove perspective systemic problems on the basis of

9     14 prisoners.

10         THE COURT:  Actually, you know what I've done in the

11    previous one of these cases I've had, after the class

12    certification, when they are class members, it's a lot easier

13    to deal with that.

14         MR. SPECTER:  Yes, you're right, Your Honor, but it's

15    a little of a chicken and egg problem, because to prove

16    systemic patterns and practices, you need to look at records to

17    show that they are doing things in certain ways.  So, in other

18    words, to do that, you need to look at the records.  So, in

19    order to do that, to make that proof, you kind of need the

20    records.

21         So I think that the protective order method will allow

22    protection of the privacy interests of the prisoners, while

23    allowing us access to the information we need to give you to

24    show that there's sufficient common problems to merit class

25    certification.

**EXHIBIT 3**

**EXHIBIT 3**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

---

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>            Plaintiffs,<br><br>vs.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>            Defendants. | No.  **CV 12-00601-PHX-NVW**<br><br>**Phoenix, Arizona**<br>**November 30, 2012**<br>**2:00 p.m.** |

BEFORE:  **THE HONORABLE NEIL V. WAKE**
UNITED STATES DISTRICT JUDGE

(*Scheduling Conference*)

Official Court Reporter:
Laurie A. Adams, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 43
Phoenix, Arizona 85003-2151
(602) 322-7256
Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

November 30, 2012 - Discovery Management Conference

1   your memorandum that you anticipated as either -- I don't know

2   if they were imminent or approaching disputes.  Frankly, I

3   don't remember all the details.  Where do we stand on those?

4   And I am hoping perhaps that you all can have a new dialogue

5   very promptly about those things.  And if they can't promptly

6   be resolved, they can be presented under my discovery dispute

7   process.

8           What do you think about that, Mr. Fathi?

9           MR. FATHI:  That's fine, Your Honor.  I would like to

10  just mention a couple of them if that's acceptable.

11          THE COURT:  Go ahead.

12          MR. FATHI:  Perhaps the most pressing, if we are to

13  meet the deadlines the Court has set and we all want and expect

14  to meet, is a resolution to the defendants' position that they

15  will not produce records relating to prisoners other than the

16  named plaintiffs without individual releases.

17          As we discussed in our memorandum, the HIPAA

18  regulations are absolutely clear that protected health

19  information can be disclosed without an individual release in

20  response to a discovery request as long as a qualified

21  protective order is in place.  And the defendants have

22  previously agreed that the protective order you entered in this

23  case is a HIPAA-qualified protective order.  So there is, in

24  our view, no reason for the defendants to refuse to disclose

25  that information.

November 30, 2012 - Discovery Management Conference

1        MR. FATHI:  Absolutely, Your Honor.  But we are very

2   concerned by Mr. Struck's position that until and unless the

3   class is certified individual releases are required.

4        THE COURT:  He has just retrenched from that.

5        MR. FATHI:  I believe his position was that individual

6   releases are not required only after the class is certified.

7        THE COURT:  I'm sorry.  Is that what you said, Mr.

8   Struck?

9        MR. STRUCK:  Your Honor, I didn't say that.  What I

10   said was the requests, as they are today, are overbroad, unduly

11   burdensome for us to produce them prior to the class

12   certification.  So that's -- we will endeavor to work with the

13   plaintiffs to figure out exactly what it is they want, because

14   right now their requests are extremely broad what their experts

15   need and try and come up with what it is, come up with a

16   methodology for obtaining that information so if and when the

17   class is certified we can obtain that information for them.

18   Because if the class isn't certified, I don't believe they are

19   entitled to all that information.

20        THE COURT:  I am concerned about that, too.  Until the

21   class is certified, you have got, what, 15 named plaintiffs?

22        MR. FATHI:  14, Your Honor.

23        THE COURT:  And that's what this lawsuit is about.

24   And we have all agreed that this other discovery is not really

25   pertinent or necessary to the class certification.  However, I

─── November 30, 2012 - Discovery Management Conference ───

 1   think what I want you all -- I want you all --  you know, I

 2   want you all to dialogue and explore this because I want to

 3   have it ready to go.  And it may be that it just doesn't matter

 4   whether they can get this all done or not, that by the time you

 5   all understand this we'll be close to or have a ruling on the

 6   class certification.

 7          And I'm more concerned about -- I'm really not worried

 8   about the individual consents.  I am worried about not

 9   burdening the defendants with a lot of production that is just

10   grossly related rather than finely related to what their

11   experts' methodologies and plans are going to be.

12          MR. SPECTER:  We understand that, Your Honor, and we

13   will work with the defendants.

14          Could -- are you going to set a hearing for the

15   argument on the class certification motion?

16          THE COURT:  You know, I will.  I just -- I will have

17   to look at my calendar.  I think I have got a lot of trials at

18   that time.  We'll e-mail with you and pick a time that you all

19   can do, but it will almost certainly be on a Friday because

20   that's when I have my civil motions.

21          MR. SPECTER:  So as Mr. Fathi said, that's -- the

22   scheduling of that is important to the rest of the case, as

23   know, as you just identified.

24          THE COURT:  Well, Nick, pull up the calendar.  And how

25   are we on Friday, January 18?

**EXHIBIT 4**

**EXHIBIT 4**

**From:** Gray, John H. (Perkins Coie) [mailto:JHGray@perkinscoie.com]
**Sent:** Thursday, November 08, 2012 9:02 AM
**To:** Tim Bojanowski; Dan Struck; Kathy Wieneke
**Cc:** Gerlicher, Amelia Morrow (Perkins Coie); Eidenbach, Kirstin (Perkins Coie); Fettig, Amy; Parsons Team
**Subject:** Motion to Seal
**Importance:** High

Counsel,

As required by the Local Rules, we are providing you a list of Plaintiffs' proposed class certification exhibits that we believe Defendants may have designated confidential under the protective order. Portions of some of the documents listed below (highlighted and bolded) are already available to the public, so Plaintiffs do not believe they need to be sealed or redacted. Plaintiffs take no stance on the remaining documents.

Please let me know by **3:00 p.m. today** which of these documents, if any, Defendants believe should be sealed or redacted under the Ninth Circuit's standard. Depending on the documents Defendants identify, Plaintiffs would be willing to file a joint motion or stipulation to seal, provided that Defendants prepare redacted public versions of the documents and draft the portions of the motion to seal explaining why certain documents should be sealed.

Thank you in advance for your cooperation.

Monitoring reports

**Letter from Joe Profiri to Karen Mullenix, Sept. 21, 2012 (ADC027854 - 69)**

Letter from Karen Mullenix to Joe Profiri, Oct. 1, 2012 (ADC027941 –43)

Memo from Ben Shaw to Joe Profiri, Aug. 13, 2012 (ADC027770 - 71).

Memo from Paulette Boothby to Joe Profiri, Aug. 17, 2012 (ADC027794 - 804)

Memorandum from Dennis Kendall to Joe Profiri. August 17, 2012 (ADC028107-10)

Memo from Terry L. Allred to Joe Profiri, Aug. 13, 2012 (ADC028112 -14)

Memo from Helena Valenzuela to Joe Profiri, Aug. 13, 2012 (ADC028140-42)

3

Memo from Karyn Christie to Joe Profiri, (ADC028148 – 49)

Memo from Dennis Kendall to Joe Profiri, Aug. 13, 2012 (ADC028123 –26)

Memo from Kathy Campbell to Joe Profiri, Aug. 20, 2012 (ADC028159 –61)

Memo from Kathy Campbell to Joe Profiri, Aug. 20, 2012 (ADC028128 - 29)

Memo from Kathy Campbell to Joe Profiri, August 13, 2012 (ADC028143)

Memo from Vanessa Headstream to Joe Profiri, Aug. 17, 2012 (ADC028144 – 46)

**Memo from John Mitchell to Joe Profiri, Aug. 10, 2012 (ADC028163)**

**Memo from John Mitchell to Joe Profiri, Aug. 13, 2012 (ADC028164 –65)**

Memo from Dennis Chenail to Joe Profiri, Aug. 13, 2012 (ADC028167)

Memo from Vanessa Headstream to Joe Profiri, Aug. 17, 2012 (ADC028168 - 70)

Memo from John Mitchell to Joe Profiri, Aug. 17, 2012 (ADC028171 –72)

Memo from Dennis G. Chenail to Joe Profiri, August 20, 2012 (ADC028173)

Contract Monitoring Bureau Report, 8/8-8/13.12 (ADC028081-91)

Weekly Non-Compliance Report, ASPC-Perryville, Aug. 13, 2012 (ADC028131 – 33)

#### Other

Letter from Deputy Warden McCarville to [redacted] Alcaraz, April 27, 2011 (ADC025768 - 70).

Email from Sumi Erno to Karen Mullenix and Linda Maschner dated 9/5/12, subject: "LPN Nwaohia" (ADC027911)

Memo from  Karen Mullenix to Joe Profiri, Jeff Hood, and Dan Conn dated Sept. 17, 2012 (ADC027890-96)

Wexford Health Sources Inmate Wait Times (ADC028020 - 22)

Wexford Vacancies Report (July 31, 2012) (ADC028188)

#### Death records/investigations

Memo from O. Valencia to Warden Hetmer, March 26, 2012 – Death Investigation of Phothong (ADC026930-45)

Death Investigation of William Sexton (ADC025110 - 38)

Death Investigation of Brenda Todd (ADC024171 - 221)

Death Investigation of Alvin Rhodes (ADC024949 - 82)

Death Investigation of Joseph Venegas (ADC025140 - 71)

Death Investigation of Otto Munster (ADC026957 - 7022)

ADC Internal Investigation Report, April 26, 2012 (ADC026964 - 93)

# EXHIBIT 5

# EXHIBIT 5

**LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT**



**VIA ELECTRONIC MAIL ONLY**

May 6, 2014

Timothy Bojanowski
Struck Weineke & Love
3100 West Ray Road
Chandler, AZ 85226
Email: tbojanowski@swlfirm.com

**Re: *Parsons v. Ryan, et al.***

AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TII FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
*DIRECTOR*
*ATTORNEY AT LAW**

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS*

Dear Mr. Bojanowski:

I write to memorialize our meet and confer this morning regarding the confidentiality of the deposition transcripts of Dr. Joseph Penn and Dr. Richard Seiter. As stated during the call, Plaintiffs' position remains that the confidentiality of the transcripts is governed by the Court's Amended Protective Order which covers only "protected health information" and "security information." Dkt. 454, at 1-2. To address Defendants' concerns, I proposed that the parties redact the names and ADC numbers of any prisoners mentioned in the transcripts, as well as the names of ADC staff, if Defendants can justify the latter on security-related grounds. Defendants, in response, maintain their position that the entirety of the deposition transcripts are confidential, given that the transcripts repeatedly discuss the contents of Dr. Seiter's and Dr. Penn's expert reports, which Defendants designated as confidential.

Please let me know if you think I have mischaracterized our discussion. Additionally, please let me know if Defendants' position is the same regarding the transcripts of their other experts. If I have not received a response within 48 hours, Plaintiffs will assume that Defendants' position regarding the other transcripts is consistent with that outlined above.

Best,

Ajmel Quereshi
Staff Counsel
National Prison Project
American Civil Liberties Union
915 15th Street, N.W., 7th Floor
Washington, DC 20005
Telephone: (202) 715-0838
Email: aquereshi@aclu.org

# EXHIBIT 6

# EXHIBIT 6

**LEGAL DEPARTMENT**
**NATIONAL PRISON**
**PROJECT**





ADC
LEGAL SERVICES

September 20, 2012

Ms. Karyn Klausner, Esq.
General Counsel
Arizona Department of Corrections
1601 W. Jefferson
Phoenix, AZ 85007

AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
*DIRECTOR*
*ATTORNEY AT LAW\**

*\*NOT ADMITTED IN DC;*
*PRACTICE LIMITED TO*
*FEDERAL COURTS*

**RE:** Public Records Request

Dear Ms. Klausner:

Pursuant to Arizona's Public Records Law, A.R.S. § 39-121 *et seq.*, the
National Prison Project of the ACLU Foundation ("NPP") hereby requests
the right to examine and copy, or to be furnished with copies, of certain
public records in the possession of the Arizona Department of Corrections
("ADOC").

Arizona Public Records Law carries with it a presumption that all records are
"open to the public for inspection as public records." *Carlson v. Pima
County,* 141 Ariz. 487,490,687 P.2d 1242 (1984). If this request is denied in
part or in whole, please justify any redactions by referencing the specific
grounds on which information is withheld under the Public Records Law. All
segregable portions of otherwise exempt material must be produced. We
reserve the right to appeal your decision to withhold any information.

## RECORDS REQUESTED

Please note, for purposes of this request, the following definitions apply:

A. The term **"prisoner"** refers to any person in the legal custody of
the Arizona Department of Corrections, regardless of status
(including but not limited to pre-trial or post-conviction status)
and regardless of the nature of the facility where the person is held
(including, without limitation, governmentally-operated facilities
and contract facilities).

B. The term **"isolated confinement"** refers to the practice of holding
a person in an isolation cell for an average of 22 hours or more per
day for any period exceeding 15 days, irrespective of the

terminology used for such confinement by the Arizona Department of Corrections.

C. The term **"policies and procedures"** refers to policies, procedures, regulations, guidelines, manuals, directives, rules, and regulations.

Please provide the following records:

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

1. Records showing the number of prisoners who are currently held in isolated confinement.

2. Records showing the number of prisoners who have been held in isolated confinement within the past year.

3. Records showing the number of prisoners who have a current diagnosis of mental illness and who are currently held in isolated confinement.

4. Records showing the number of prisoners who have a current diagnosis of mental illness and have been held in isolated confinement within the past year.

5. Records showing the number of prisoners who have a current diagnosis of mental retardation and who are currently held in isolated confinement.

6. Records showing the number of prisoners who have a current diagnosis of mental retardation and have been held in isolated confinement within the past year.

7. Records showing the racial breakdown of prisoners who are currently held in isolated confinement.

8. Records showing the racial breakdown of prisoners who have been held in isolated confinement within the past year.

9. Records showing the number of prisoners who are younger than 22 years old and who are currently held in isolated confinement.

10. Records showing the number of prisoners who are younger than 22 years old and who have been held in isolated confinement within the past year.

2

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

11. Records showing the number of prisoners who are younger than 19 years old and who are currently held in isolated confinement.

12. Records showing the number of prisoners who are younger than 19 years old and who have been held in isolated confinement within the past year.

13. Records showing the mean, median, and maximum length of stay of prisoners in isolated confinement.

14. All policies and procedures governing isolated confinement of prisoners, including but not limited to (1) policies for placement in and removal or step-down from isolated confinement, and (2) conditions (including, for example and without limitation: property, exercise, visitation, access to programming, telephone calls; medical and mental health treatment) in isolated confinement.  Include both agency-wide policies and policies specific to single facilities or groups of facilities (including, without limitation, governmentally-operated and privately-operated facilities).

15. All studies or other analyses that have been performed, sponsored, or supported by the Arizona Department of Corrections to measure the fiscal costs of the isolated confinement of prisoners or to compare the costs of isolated confinement to other forms of incarceration.

## PROCESSING & FEES

These records are not sought for any commercial purpose.  NPP is a non-profit civil rights organization and this information will inform our nationwide investigation on solitary confinement in light of growing concerns over the value of the practice and its long-term effects on inmates.  Nonetheless, we agree to reimburse you for reasonable costs associated with producing the requested information.  If that amount will exceed $20, please let me know what it will be *before you incur the costs*.

You may contact us when the records have been compiled, or if there are ways we can narrow the request to expedite processing.  However, if we do not hear from you within twenty-one (21) days, we will deem the request denied.

Thank you very much for your prompt attention to this matter.

**Please direct all subsequent correspondence to:**

Jacob Goldsmith
425 Massachusetts Avenue NW #1227
Washington, D.C.20001
Telephone: 240-426-1539
jg233@law.georgetown.edu.

Sincerely,

Gabriel B. Eber
Staff Counsel
ACLU National Prison Project
915 15th St., NW, 7th Floor
Washington, DC 20005
Tel: 202-548-6601
Fax: 202-393-4931

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

4

## RYAN, CHARLES

| | |
|---|---|
| **From:** | DONNA LEONE HAMM <middlegroundprisonreform@msn.com> |
| **Sent:** | Wednesday, May 22, 2013 8:49 PM |
| **To:** | RYAN, CHARLES; NORTHUP, DAWN |
| **Subject:** | Compare/Review Contracts |

Mr. Ryan:

**Pursuant to public records laws, I am requesting a copy of the current contract with Corizon and a copy of the contract that exisited with Wexford until March 2013. This would include documents which list all deliverables required of each contractor during the period they were/are under contract with the state or with the Arizona DOC.**

**I would like to examine these documents prior to purchase. Please advise when they are ready for my review.**

**Thank you.**

**Donna Leone Hamm, Judge (Ret.)**
**Criminal Justice Consultant**
**Executive Director**
**Middle Ground Prison Reform**
**(480) 966-8116**
**MIDDLE GROUND HAS BEEN ARIZONA'S PREMIER ADVOCACY ORGANIZATION PROTECTING THE RIGHTS OF THE INCARCERATED SINCE 1983**

1



August 5, 2013

**VIA E-MAIL ONLY**

Kathy McCanna
Kathryn mccanna@azdhs.gov

RE:   Public Records Request – Standards and evaluation of health related facilities and services provided to inmates confined in a state prison

Dear Ms. McCanna:

The Arizona Center for Disability Law (Center) is the federally mandated Protection and Advocacy System (P&A) for the state of Arizona   As the federally mandated P&A, we have broad authority to advocate for the rights of individuals with disabilities in the state.

Pursuant to the Arizona Public Records Act, A.R.S. § 39-121 *et seq.*, please provide our office with copies of the following information and documents dated from January 1, 2008 to the date of this letter regarding the role of the Arizona Department of Health Services (ADHS) in the standards and evaluation of health related facilities and services provided to inmates confined in a state prison operated by the Arizona Department of Corrections (ADC):

1.   Any and all ADHS policies, classifications, or adopted standards regarding health related facilities and services provided to inmates

2.   Any and all reviews, reports, surveys, or evaluations conducted by ADHS at any ADC facility regarding compliance with the adopted standards

3.   Any and all reviews, reports, surveys, or evaluations submitted by ADC and maintained by ADHS pursuant to A.R.S. § 36-402(A)(10)

4.   Any and all deficiencies reported by and to ADHS regarding health related facilities and services provided to inmates at ADC including any and all plans to correct such deficiencies

---

5025 E. Washington Street, Suite 202
Phoenix, Arizona 85034-2005
(602) 274-6287 (Voice/TTY) – (602) 274-6779 (Fax)
www.azdisabilitylaw.org

100 N. Stone Avenue, Suite 305
Tucson, Arizona 85701
(520) 327-9547 (Voice) -- (520) 884-0992 (Fax)
(877) 327-7754 (TTY)

Kathy McCanna
August 5, 2013
Page 2

Please forward the requested documents **within 30 days** (by September 3, 2013) to:

Jennifer A. Alewelt, Staff Attorney
Arizona Center for Disability Law
5025 E. Washington St., Suite 202
Phoenix, AZ 85034

The Center is a non-profit organization and has a limited budget. We do not charge our clients for our services and most of our clients are low income. Therefore, we are requesting that your agency waive any costs associated with reproducing these documents. If you are unable to do this, please notify our office of the waiver denial and the cost of reproduction *prior* to copying the records.

If you deny all or any part of this request, please cite the legal authority or other justification for your refusal to release this information to the Center and provide me with an index of the withheld information. A.R.S. § 39-121.01(D)(2).

Thank you for your time and anticipated cooperation with this request. If you foresee any difficulty in meeting the requested deadline, please contact me at 602-274-6287 as soon as possible.

Sincerely,

Jennifer Alewelt

Jennifer A. Alewelt
Staff Attorney

## LAMOREAUX, BILL

| | |
|---|---|
| **From:** | Halloran, Wendy [whalloran@kpnx.com] |
| **Sent:** | Thursday, October 24, 2013 7:15 PM |
| **To:** | LAMOREAUX, BILL; RYAN, CHARLES; NICK, DOUG |
| **Subject:** | Media Request From Wendy Halloran at KPNX 12 News |

**Follow Up Flag:**     Follow up
**Flag Status:**        Flagged

Hello Director Ryan, Bill and Doug,

Pursuant to Arizona's Public Records Law, A.R.S. § 39-121 *et seq.*, 12 News/KPNX-TV of Phoenix, Arizona, ("12 News") more specifically, Investigative Reporter Wendy Halloran hereby requests the right to examine and copy, or to be furnished with copies, certain public records in the possession of the Arizona Department of Corrections (hereafter the "Department").

Arizona Public Records Law carries with it a presumption that all records are "open to the public for inspection as public records." *Carlson v. Pima County*, 141 Ariz. 487,490,687 P.2d 1242 (1984). If the request is denied in part or in whole, please justify any redactions by referencing the specific grounds on which the information is withheld under the Public Records Law. All severable portions of otherwise exempt material must be produced. 12 News reserves the right to appeal your decision to withhold any information.

These records are sought for the purpose of informing the public. 12 News is a news-gathering organization and this information will help the public understand the operations of the Department. Nevertheless, we agree to reimburse you for reasonable costs associated with producing the requested information. If that amount will exceed $75, please let us know what it will be <u>before you incur the costs</u>. If your agency does not maintain the records below, please advise who does and include the proper custodian's name and address when possible.

We seek the following records (including in written, electronic, audio, video, CD, or other format) in the custody of the Department:

a. The quarterly and monthly monitoring memos and reports, known as MGAR reports (short for Monitoring Green-Amber-Red reports), that are prepared by staff in the Department's Health Services Contract Monitoring Bureau, for all Department facilities from March 1, 2013 through the present.

b. All corrective action plans prepared by the Department's healthcare contractor, Corizon Health Inc. (hereafter "Corizon"), in response to the MGAR reports.

c. All additional reports, records, memos or correspondence between Corizon and the Department about the provision of healthcare at the Department's facilities from March 1, 2013 through the present, including those that discuss healthcare staffing levels .

d. All bills from Corizon to the Department and all records of payment from the Department to Corizon since Jan. 1, 2013.

e.  All bills related to the litigation *Parsons et al. v. Ryan et al.* from the law firm Struck Wieneke & Love to the Department and all records of payment related to the litigation *Parsons et al. v. Ryan et al.* from the Department to the law firm Struck Wieneke & Love .

Please comply with this request on or before November 10, 2013. *See* A.R.S. § 39-121(D)(1) and (E) (public records must be furnished "promptly"). If there are ways we can narrow the request to expedite processing, let us know. Otherwise, we may deem the request denied.

Thank you very much for your prompt attention. Should you have any questions, you may contact me by phone at 602-526-0640 or by email at whalloran@12news.com

Best Regards,

Wendy Halloran

*Wendy Halloran*
Investigative Reporter        **12 NEWS/KPNX-TV**
P:  602 444-1357              **200 E. Van Buren Street**
C:  602 526-0640             **Phoenix, AZ 85004-2238**
whalloran@12news.com



**From:** Halloran, Wendy [mailto:whalloran@kpnx.com]
**Sent:** Thursday, May 01, 2014 6:52 PM
**To:** LAMOREAUX, BILL; NICK, DOUG; RYAN, CHARLES
**Subject:** Media Request from Wendy Halloran at 12 News

Dear Director Ryan, Bill and Doug,

I hope this finds you well. I am going to need a supplement to my prior request for records.

I will need the current billing records related to the litigation Parsons et al. v. Ryan et al. from the law firm Struck Wieneke & Love to the department from October 2013 through April 2014, including both the outside law firms and expert witnesses.

My request did not cover that time frame, so I need more recent information on how much money has been spent defending this class action lawsuit.

Please let me know how soon you can make these records available for inspection and copying. I am working on an investigative report and will be calling soon with details and seeking comment, if you can. Which I realize, because of the pending litigation you might not be able to.

Please let me know about the current billing records at your earliest convenience.

Best Regards,

Wendy Halloran

*Wendy Halloran*
Investigative Reporter          **12 NEWS/KPNX-TV**
P: 602 444-1357                 **200 E. Van Buren Street**
C: 602 526-0640                 **Phoenix, AZ 85004-2238**
whalloran@12news.com



-----Original Message-----
**From:** Halloran, Wendy [whalloran@kpnx.com]
**Sent:** Thursday, May 22, 2014 04:08 PM US Mountain Standard Time
**To:** RYAN, CHARLES; PRATT, RICHARD; NICK, DOUG; LAMOREAUX, BILL
**Subject:** Media Request from Wendy Halloran at 12 News

Hello Director Ryan, Mr. Pratt, Bill and Doug,

Pursuant to Arizona's Public Records Law, A.R.S. § 39-121 *et seq.*, 12 News/KPNX-TV of Phoenix, Arizona, ("12 News") more specifically, Investigative Reporter Wendy Halloran hereby requests the right to examine and copy, or to be furnished with copies, certain public records in the possession of the Arizona Department of Corrections (hereafter the "Department").

Arizona Public Records Law carries with it a presumption that all records are "open to the public for inspection as public records." *Carlson v. Pima County*, 141 Ariz. 487,490,687 P.2d 1242 (1984). If the request is denied in part or in whole, please justify any redactions by referencing the specific grounds on which the information is withheld under the Public Records Law. All severable portions of otherwise exempt material must be produced. 12 News reserves the right to appeal your decision to withhold any information.

These records are sought for the purpose of informing the public. 12 News is a news-gathering organization and this information will help the public understand the operations of the Department.

We seek the following records (including in written, electronic, audio, video, CD, or other format) in the custody of the Department:

a. The quarterly and monthly monitoring memos and reports, known as MGAR reports (short for Monitoring Green-Amber-Red reports), that are prepared by staff in the Department's Health Services Contract Monitoring Bureau, for all Department facilities from November 1, 2013 through the present.

b. All corrective action plans prepared by the Department's healthcare contractor, Corizon Health Inc. (hereafter "Corizon"), in response to the MGAR reports.

c.  All additional reports, records, memos or correspondence between Corizon and the Department about the provision of healthcare at the Department's facilities from November 1, 2013 through the present, including those that discuss healthcare staffing levels .

d.  All bills from Corizon to the Department and all records of payment from the Department to Corizon since November 1, 2013.

e.  All bills related to the litigation *Parsons et al. v. Ryan et al.* from the law firm Struck Wieneke & Love to the Department and all records of payment related to the litigation *Parsons et al. v. Ryan et al.* from the Department to the law firm Struck Wieneke & Love from April 18, 2014 to the present.

Please comply with this request on or before June 22, 2014. *See* A.R.S. § 39-121(D)(1) and (E) (public records must be furnished "promptly"). If there are ways we can narrow the request to expedite processing, let us know. Otherwise, we may deem the request denied.

Thank you very much for your prompt attention. Should you have any questions, you may contact me by phone at 602-526-0640 or by email at whalloran@12news.com

Best Regards,

Wendy Halloran

*Wendy Halloran*
Investigative Reporter
P:  602 444-1357
C:  602 526-0640
whalloran@12news.com

**12 NEWS/KPNX-TV**
**200 E. Van Buren Street**
**Phoenix, AZ 85004-2238**



| From: | NORTHUP, DAWN <DNORTHUP@azcorrections.gov> |
|-------|--------------------------------------------|
| Sent: | Wednesday, July 02, 2014 11:57 AM |
| To: | Arizona Prisonwatch |
| Subject: | Re: Public Access Request: Deaths in Custody: FY 2013 & FY 2014 |

Ms Plews:

I forwarded your public records request to Mary Ondreyco, ADC's Public Access Administrator, for review and response.

Thank You

Dawn Northup

Sent from my iPad

On Jul 1, 2014, at 2:24 PM, "Arizona Prisonwatch" <arizonaprisonwatch@gmail.com> wrote:

> Please make available for my review the Criminal Investigative Unit reports of all deaths in AZ
> DOC custody that warranted such investigation in fiscal years 2013 and 2014.
>
> Please also make available for my review the causes of death, where determined, for each
> prisoner who died in AZ DOC custody in fiscal years 2013 and 2014.
>
>
> Thank you.
>
> Margaret Jean Plews
>
>
>
> --
> *Margaret J. Plews, Editor*
> *Arizona Prison Watch*
> *P.O. Box 20494*
> *Phoenix, AZ 85036*
> *480-580-6807*
>
>
> *"Our strategy should be not only to confront empire, but to lay siege to it. To deprive it of*
> *oxygen. To shame it. To mock it. With our art, our music, our literature, our stubbornness,*
> *our joy, our brilliance, our sheer relentlessness, and our ability to tell our own stories..."*
>
> *- Arundhati Roy*

**Arizona Prison Watch**

1

**From:** "Halloran, Wendy" <whalloran@kpnx.com>
**Date:** July 17, 2014 at 16:14:04 MST
**To:** "RYAN, CHARLES" <CRYAN@azcorrections.gov>, "LAMOREAUX, BILL" <BLAMOREA@azcorrections.gov>, "NICK, DOUG" <DNICK@azcorrections.gov>, "PRATT, RICHARD" <RPRATT@azcorrections.gov>
**Cc:** "Faris, Mark E." <MFARIS@gannett.com>, "Phillips, Mark" <mphillips@12news.com>
**Subject: Media Request from Wendy Halloran at 12 News**

Dear Doug and Bill,

Pursuant to Arizona's Public Records Law, A.R.S. § 39-121 *et seq.*, 12 News/KPNX-TV of Phoenix, Arizona, ("12 News") more specifically, Investigative Reporter Wendy Halloran hereby requests the right to examine and copy, or to be furnished with copies, certain public records in the possession of the Arizona Department of Corrections (hereafter the "Department").

Arizona Public Records Law carries with it a presumption that all records are "open to the public for inspection as public records." *Carlson v. Pima County*, 141 Ariz. 487,490,687 P.2d 1242 (1984). If the request is denied in part or in whole, please justify any redactions by referencing the specific grounds on which the information is withheld under the Public Records Law. All severable portions of otherwise exempt material must be produced. 12 News reserves the right to appeal your decision to withhold any information.

These records are sought for the purpose of informing the public. 12 News is a news-gathering organization and this information will help the public understand the operations of the Department.

We seek the following records (including in written, electronic, audio, video, CD, or other format) in the custody of the Department: Any and all correspondence. I believe most of this is via email.

- Correspondence for the last year between Director Charles Ryan and/or the ADC legislative liaison Will Barnow and the Governor's office (specifically Brewer's Chief of Staff Scott Smith) and correspondence between Ryan/Barnow and Representative John Kavanagh.
- Correspondence between ADC and Corizon regarding allegations of noncompliance with the healthcare contract going back to when Corizon's contract started.
- Director Charles Ryan's emails with the words Corizon or contract where the sender/recipient is Terry Stewart, the former ADC director. I would like the last two years.
- emails from/to Richard Pratt, Nicole Taylor and David Robertson that have the words "suicide," "emergency response," or "death" in them dating back to 2010.

Please comply with this request on or before August 17, 2014. *See* A.R.S. § 39-121(D)(1) and (E) (public records must be furnished "promptly"). If there are ways we can narrow the request to expedite processing, let us know. Otherwise, we may deem the request denied.

Thank you very much for your prompt attention. Should you have any questions, you may contact me by phone at 602-526-0640 or by email at whalloran@12news.com

Best Regards,

Wendy Halloran

*Wendy Halloran*
Investigative Reporter
P: 602 444-1357
C: 602 526-0640
whalloran@12news.com

**12 NEWS/KPNX-TV**
**200 E. Van Buren Street**
**Phoenix, AZ 85004-2238**



**EXHIBIT 7**

**EXHIBIT 7**

1   Arizona Attorney General Thomas C. Horne
    Office of the Attorney General
2   Michael E. Gottfried, Bar No. 010623
    Lucy M. Rand, Bar No. 026919
3   Assistant Attorneys General
    1275 W. Washington Street
4   Phoenix, Arizona 85007-2926
    Telephone: (602) 542-4951
5   Fax: (602) 542-7670
    Michael.Gottfried@azag.gov
6   Lucy.Rand@azag.gov

7   Daniel P. Struck, Bar No. 012377
    Kathleen L. Wieneke, Bar No. 011139
8   Rachel Love, Bar No. 019881
    Timothy J. Bojanowski, Bar No. 22126
9   Nicholas D. Acedo, Bar No. 021644
    Ashlee B. Fletcher, Bar No. 028874
10  Anne M. Orcutt, Bar No. 029387
    Jacob B. Lee, Bar No. 030371
11  STRUCK WIENEKE & LOVE, P.L.C.
    3100 West Ray Road, Suite 300
12  Chandler, Arizona  85226
    Telephone:  (480) 420-1600
13  Fax:  (480) 420-1696
    dstruck@swlfirm.com
14  kwieneke@swlfirm.com
    rlove@swlfirm.com
15  tbojanowski@swlfirm.com
    nacedo@swlfirm.com
16  afletcher@swlfirm.com
    aorcutt@swlfirm.com
17  jlee@swlfirm.com

18  *Attorneys for Defendants*

19              **UNITED STATES DISTRICT COURT**
20                  **DISTRICT OF ARIZONA**

21  Victor Parsons, *et al.*, on behalf of themselves      NO. 2:12-cv-00601-DJH
    and all others similarly situated; and Arizona
22  Center for Disability Law,
                                      Plaintiffs,          **DECLARATION OF MARY**
23          v.                                             **ONDREYCO**

24  Charles Ryan, Director, Arizona Department
    of Corrections; and Richard Pratt, Interim
25  Division Director, Division of Health Services,
    Arizona Department of Corrections, in their
26  official capacities,
                                      Defendants.
27

28

1           I, **MARY ONDREYCO**, make the following Declaration:

2      1.    I am over the age of 18 years and am competent to testify to, and have

3  personal knowledge of, the matters set forth in this Declaration.

4      2.    I am the Public Records Administrator for the Arizona Department of

5  Corrections (ADC), and I have held this position for nearly two years. I am also a

6  licensed attorney in Arizona.

7      3.    I manage ADC's Public Access Department, which receives and responds to

8  public records requests. *See* A.R.S. § 39–121 *et seq*.

9      4.    In addition to responding to public records requests, the Public Access

10  Department serves walk-in customers, assists other departments with records production,

11  provides records to members of the public to review and copy, handles internet inquiries

12  for information not necessarily related to public records requests, and fields telephone

13  calls from the public and other departments and agencies.

14      5.    The Public Access Department currently has two full-time staff members.

15      6.    There are approximately 292 public records requests currently pending, and

16  new requests are received daily.

17      7.    The records responsive to a public records request can vary from a few

18  pages, which might take only 15 minutes to process, to thousands of pages, which may

19  include photographs, audio, and video records. ADC is currently processing one public

20  records request which requires ADC to process (review and redact) approximately eight

21  boxes of records.

22      8.    The length of time required to review and redact a document depends on the

23  nature of the document, whether it is handwritten or typed, and the type of information it

24  contains. Reviewing for security sensitive information is time and labor intensive, as it

25  often requires the reviewer to make a judgment call, analyze the information, and make

26  determinations as to whether public release of the information could jeopardize the safety

27  or security of the facility, the staff, and/or the inmates.

28

9. I have been asked to estimate how long it would take my staff to review and redact 40,000 pages of documents.

10. I estimate that it would take two people 83 days to review and redact 40,000 pages of records, working eight hours a day, solely redacting records, at an average rate of two minutes per page.

11. However, it would not be possible for my two staff members to work exclusively for eight hours a day on this project in light of the other responsibilities of the Public Access Department, including serving walk-in customers and fielding internet and telephonic inquiries from the public and other departments and agencies. In actuality, it would likely take twice as long as I have estimated.

12. In addition, this estimate does not include the time necessary to download the redacted records onto a CD or other medium.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 14, 2014.

Mary Ondreyco

3