Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DJH<br><br><br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO PRESENT DIRECT EXPERT TESTIMONY BY DECLARATION** |

## I. INTRODUCTION

The "complexity of the issues" Plaintiffs tout as a justification for submitting direct expert testimony by declaration is the very reason their request should be denied. This is an enormous, complicated lawsuit, and Plaintiffs' entire case rests upon their experts' opinions. Plaintiffs' proposed procedure is nothing more than a thinly-veiled attempt to present their entire case through attorney-prepared expert declarations that will actually prolong the length of trial by extending the time needed for cross and re-direct examination, and allow them to circumvent several evidentiary rulings and admit otherwise inadmissible evidence. Plaintiffs' eleventh-hour request is improper and should be denied.

## II. LEGAL ARGUMENT

### A. Plaintiffs' Eleventh-Hour Request To Change The Mode Of Trial Is Extremely Prejudicial To Defendants.

Plaintiffs filed suit in this matter in March 2012. (Doc. #1.) Although the parties have litigated numerous issues before the Court since then, Plaintiffs did not mention their desire to use attorney-prepared expert declarations in lieu of live direct testimony until February 24, 2014, nearly two full years later, during an unrelated hearing. (Doc. #822, 38:22-25.) Plaintiffs then did not file a motion seeking a Court ruling on the issue until August 8, 2014, just two months before trial in this matter is set to begin. (Doc. #1068).

With their Motion, Plaintiffs seek to fundamentally alter the way in which trial will be conducted. Although Plaintiffs have apparently intended to use this procedure all along, Defendants have not, and will be forced to change their trial strategy on the eve of trial if Plaintiffs' Motion is granted. Such a last-minute change will be highly prejudicial to Defendants, and will give Plaintiffs an unfair tactical advantage.

### B. Presentation Of Direct Expert Testimony By Declaration Is Purely Discretionary.

Plaintiffs' Motion improperly suggests that the presentation of direct expert testimony by declaration is somehow required by the Ninth Circuit. (*See, e.g.,* Doc. #1068, 2:20-21 ("The Ninth Circuit Has Ordered Presentation of Direct Testimony by

1

Written Declaration, Even Over a Party's Objection.").) This is simply not true. The use of written declarations in lieu of live direct examination is, at best, ***purely discretionary***. The cases Plaintiffs cite make this clear. *See, e.g., In re Adair*, 965 F.2d 777, 779 (9th Cir. 1992) ("The use of written testimony 'is an accepted and encouraged technique for shortening bench trials.'") (quoting *Phonetele, Inc. v. American Tel. & Tel. Co.*, 889 F.2d 224, 232 (9th Cir. 1989)) (emphasis added);[1] *In re Gergely*, 110 F.3d 1448, 1452 (9th Cir. 1997) (holding that district court "did not abuse its discretion in adhering to" its pretrial order requiring written declarations). Indeed, some courts have concluded that written declarations in lieu of live examination can be error. *See*, *e.g.*, *U.S. v. American Tel. & Tel. Co.*, 83 F.R.D. 323, 339 (D.D.C. 1979) (holding that a "blanket order" requiring the use of written declarations in lieu of live direct testimony for all witnesses would be improper); *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 313 (7th Cir. 1986) (holding that the use of interrogatory responses in lieu of live direct testimony was erroneous). Contrary to their heading, Plaintiffs have not cited a single decision in which the Ninth Circuit "ordered" a party to submit direct expert testimony via written declaration or otherwise required the use of that procedure where the district court did not first exercise its discretion in deciding to follow it.

The cases Plaintiffs rely upon to support their request are further distinguishable from the present case. As discussed more below, this is an extraordinary constitutional case with wide-ranging implications. By comparison, none of the cited cases involved complex constitutional issues, nor did they purport to resolve claims against an entire state-wide prison system involving 10 facilities and over 33,000 inmates. Rather, the cited

---

[1] The district court in *Adair* ordered the use of written declarations in lieu of live direct testimony pursuant to a local rule of the Central District of California that expressly permitted (but again did not require) the use of that procedure. No such rule exists in the District of Arizona. Moreover, regardless of its use elsewhere in the Ninth Circuit, Plaintiffs have not cited to a single District of Arizona case in which written declarations were used at trial in lieu of live direct testimony, let alone a case in which the use of such a procedure was ordered over one party's objection, or in which one side was permitted to introduce its entire case-in-chief through the use of attorney-prepared expert declarations.

cases are run-of-the-mill cases that turned on non-expert (eyewitness or party) witnesses. *See Adair*, 965 F.2d at 778-779 (bankruptcy); *Gergely*, 110 F.3d at 1450 (bankruptcy); *Kuntz v. Sea Eagle Diving Adventures Corp.*, 199 F.R.D. 665, 672 (personal injury); *Sanders v. Ayers*, 2008 WL 4224554, *2 (E.D. Cal. Sept. 12, 2008) (ineffective assistance of counsel); *In re Geller*, 170 B.R. 183, 184 (S.D. Fla. 1994) (bankruptcy); *Saverson v. Levitt*, 162 F.R.D. 407 (D.D.C. 1995) (employment). In addition, none of the cases cited were class-action lawsuits, none specifically addressed the use of direct ***expert*** testimony by declaration (as opposed to the use of direct testimony in general), and none discussed the propriety of allowing a party to put in his or her entire case via attorney-prepared expert declarations, as Plaintiffs intend to do here.

Additionally, the cases cited by Plaintiffs involved long-standing, pre-existing courtroom procedures or pretrial orders that were challenged by one party, rather than cases in which, as here, one party sought to change the way in which trial would be conducted on the eve of trial with no standing order in place. *See, e.g., Adair*, 965 F.2d at 779 (noting the bankruptcy court's standard procedure requiring that direct testimony be presented by written declaration); *Gergely*, 110 F.3d at 1451 (noting the bankruptcy court's pretrial order requiring the use of written declarations for all witnesses); *Kuntz*, 199 F.R.D. at 666 (noting the district court's civil bench trial procedures that required the use of direct testimony by affidavit or declaration); *Geller*, 170 B.R. at 184 (noting the bankruptcy court's standard pretrial order that required the submission of direct testimony by written declaration); *Saverson*, 162 F.R.D. at 407 (noting the district court's scheduling order that required the submission of direct testimony by written declaration).[2] No such standard order or trial procedure exists in this District or in this case.

---

[2] Although *Phonetele*, 889 F.2d at 225, was an antitrust case involving several corporate defendants, it did not involve a party attempting to introduce their entire case through attorney-prepared expert declarations. Moreover, the court did not hold that the use of written declarations in lieu of live direct examination of witnesses was in any way required.

3

Plaintiffs cite to Judge Wake's Proposed Final Pretrial Order for Bench Trials to suggest that Judge Wake encouraged the use of written declarations in lieu of live direct examination testimony. The Proposed Order, however, is merely a stock order used by several District Judges that requires the parties to "discuss and report on all available procedures that might be used to expedite trial," including, among others, "presenting direct expert testimony through summary or written reports." It does not impose a blanket order in all cases, nor does it even suggest that the Court would order the parties to present direct expert testimony through attorney-prepared declarations if one or more of them were opposed to doing so.

Plaintiffs previously raised this issue twice with Judge Wake. On both occasions, Judge Wake expressed a personal hesitation to order the parties to substitute attorney-prepared declarations in lieu of live expert direct examination testimony ***unless the parties stipulated to it***. (*See* Doc. #1058, 42:7-9; Doc. #822:39:15-16.) Defendants do not stipulate to this procedure. The Court's use of written declarations in lieu of live direct examination is not required – by the District of Arizona, the Ninth Circuit, or any other federal jurisdiction – but is purely discretionary. For the reasons set forth below, this Court should exercise its discretion by denying Plaintiffs' request.

    **C.    The Court Should Require Live Direct Examination.**

        **1.    This case is too important to be decided on attorney-prepared expert declarations.**

Plaintiffs have made it clear from the beginning of this lawsuit that they intend to present their case-in-chief almost exclusively through their seven experts. (*See, e.g.,* Doc. #335, 35:5-7, 41:9-11; Doc. #446, 37:15-22; Doc. #551, 10:10-13, 11:3-6; Doc. #822, 38:7-9, 41:10-13.) Their Motion for Class Certification relied heavily on expert declarations that discussed, for example, specific inmate healthcare, but did not attach actual medical records. (Doc. #1058, 66:1-11.) Their Response to Defendants' Motion for Summary Judgment did not bother to defend the named Plaintiffs' individual allegations of harm, which Defendants refuted in their Motion and Separate Statement of Facts, but

1 instead relied entirely on their experts' conclusory opinions about ADC's healthcare in general. (Doc. #1023, 5:20, 6:8-14.) Plaintiffs also admitted to the Court at the hearing on Defendants' Motion for Summary Judgment that they intend to present most, if not all, of their case at trial through their experts. (Doc. #1058, 41:16-20, 41:25-42:6.) This case, however, is not suitable for evidence via written expert declarations.

The breadth of this class-action lawsuit is extraordinary. It is a challenge to both the provision of healthcare and to the conditions of confinement within ADC. The class consists of more than 33,000 inmates across ten ADC facilities state-wide. The Court certified ten alleged health care practices, encompassing medical care, dental care, and mental health care, and seven alleged conditions of confinement, which Plaintiffs contend violate their Eighth Amendment rights. Plaintiffs demand an overhaul of nearly every aspect of inmate healthcare at ADC. They seek to implement unreasonable and unrealistic standards that exceed constitutional standards, and which go beyond even the level of care that non-incarcerated individuals receive or have access to. Plaintiffs also seek to eliminate policies pertaining to maximum custody inmates ADC believes are necessary for the safety and security of its facilities, staff, and inmates. For example, they seek to prohibit ADC staff from deploying chemical agents on inmates on psychotropic medication under any circumstance, even if the inmate is in the process of committing suicide, or assaulting another inmate or staff member (Doc. #240-1, 163-164, ¶ 48; Doc. #292-1, 14, ¶ 32; Doc. #331, 1 n.1), and they seek a categorical ban on placement of any inmate with mental illness in a maximum custody unit. (Doc. #1058, 39:9-14.)

Plaintiffs' counsel are pursuing claims that mirror litigation currently ongoing in California regarding challenges to the medical and mental health care provided to California inmates. These lawsuits have gone on for decades. *See Brown v. Plata*, 131 S.Ct. 1910 (2011). A recent report from the Associated Press states that California taxpayers have spent more than $200 million on inmate lawsuits over the past 15 years, $182 million of which paid for the inmates' attorneys and experts. (*See* http://bigstory.ap.org/article/ap-exclusive-inmate-lawsuits-cost-calif-200m.) The Governor of

5

California highlighted the financial drain these lawsuits have caused the State, and noted that there are "hundreds of lawyers wandering around the prisons looking for problems." (*Id*.) According to an article published by the Wall Street Journal, California has spent more than $1 billion on new prison medical facilities, and provides "better medical attention in prison than they would in their own neighborhoods," yet they are still beholden to the injunctions. *See* http://online.wsj.com/news/articles/SB10001424052702304799404579153812943219656. The article also noted that "California spends $17,924 per prisoner on medical treatment—four times what the federal government spends in its prisons and three times New York's rate." (*Id*.) These cases resulted in the release of more than 40,000 inmates because the State of California was not able to keep up with the injunctions they unsuspectingly entered into many years ago. *See Brown*, 131 S.Ct. at 1923.

Given the magnitude of this case, including the potential ramifications for the citizens and taxpayers of the State of Arizona, it is imperative that the Court hear the best evidence possible. Allowing Plaintiffs to submit their case on the basis of attorney-prepared declarations does not advance this goal.

**2. Attorney-prepared declarations deprive the Court of the opportunity to fully and fairly assess witness credibility.**

Witness credibility is even more critical in this case because Plaintiffs intend to present most or all of their case-in-chief through their experts. The credibility of Plaintiffs' experts in particular will be a focal point at trial. Plaintiffs' medical expert Robert Cohen describes himself as a "prisoners' rights advocate" and a "prisoners' rights activist." (Ex. A at 62:16-25.) Dr. Cohen also testified at his deposition that Plaintiffs' counsel drafted his declaration in support of class certification, and that he merely reviewed and signed it. (Exhibit A, 115:1-20.) Plaintiffs' mental health expert Pablo Stewart testified that he spent only 5.75 hours preparing his 14-page declaration in support of class certification, which included review of four depositions of Defendants' witnesses, nine letters and emails, Chapter 5 of the ADC Mental Health Technical Manual, and the

6

1 Declarations of five named Plaintiffs, but did *not* include review of the mental health
2 records of a single inmate. (Ex. B at 48:3-12, 48:25-49:13; Doc. #240-1, 18-59.)

3       Plaintiffs also previously submitted declarations that were called into doubt by
4 Judge Wake. At the summary judgment stage, Defendants refuted the allegations made by
5 the named Plaintiffs in the Complaint and in their declarations submitted in support of
6 class certification. Plaintiffs did not defend their allegations in their Response. At the
7 hearing on the Motion, Judge Wake questioned the credibility of the named Plaintiffs'
8 declarations, stating that the "documented care provided … at least in some instances
9 suggests either delusion or fraud on the part of the named Plaintiffs and what they
10 alleged." (Doc. #1058, 61:5-8.)

11       Allowing Plaintiffs to submit attorney-prepared declarations in lieu of live direct
12 examination testimony will hamper, if not eliminate entirely, the Court's ability to assess
13 the credibility of their experts. Judge Wake recognized the importance of assessing – in
14 person – the credibility of Plaintiffs' experts in ruling on Defendants' *Daubert* challenges:

> As to the statistical challenge themselves, they may have merit that would exclude or limit some of the specific opinions. Of course, exclusion of any opinion or limitation on an opinion from lack of scientific validity or reliability will be mandatory… Therefore, it is better to defer ruling on the challenges to admissibility of those opinions to the time of trial or findings of fact and conclusions of law.

20 (Doc. #1040, 4:12-14, 22-23; *see also* Doc. #1040, 5:8-9 ("The *Daubert* challenges can
21 then be resolved if necessary and with better accuracy.").) Thus, when Defendants
22 challenged the bases of Plaintiffs' experts' opinions, Judge Wake expressed some
23 skepticism regarding their foundation, but wanted to hear the testimony for himself, rather
24 than reading the attached reports. Judge Wake also deferred ruling on Defendants'
25 contention that Plaintiffs' experts' declarations submitted in support of their response to
26 Defendants' motion were sham declarations, preferring instead to hear the testimony at

7

trial.[3] (Doc. #1040, 5:10-18.)

The Court's ability to resolve these issues will be hampered, if not eliminated entirely, if Plaintiffs' experts are permitted to simply respond to questions on cross-examination by saying, "It's in my declaration." The Court cannot fully and fairly assess the experts' credibility by reading declarations prepared by Plaintiffs' attorneys rather than the experts themselves.

### 3. Plaintiffs' proposed procedure will not save time at trial, and will prejudice Defendants.

Although Plaintiffs claim submission of direct examination testimony through written declarations will result in a more efficient trial, they are incorrect. Defendants fully expect, based on Plaintiffs' experts' past submissions (i.e., declarations in support of class certification and expert reports), that the opinions expressed in the experts' direct examination declarations will set forth sweeping opinions regarding the ADC system as a whole based primarily on anecdotal evidence regarding a comparatively small number of inmates. The declarations themselves, however, will no doubt be expansive tomes prepared over a period of weeks, if not months, chronicling in excruciating detail every fact Plaintiffs can possibly identify that might paint Defendants in a bad light, whether admissible or not:

---

[3] Specifically, Defendants argued that experts Pablo Stewart, Todd Wilcox, and Brie Williams admitted to interviewing inmates and/or reviewing records of inmates chosen by Plaintiffs' counsel and spoon-fed to them, but then claimed otherwise in their declarations. **Dr. Stewart** claimed in his declaration that he selected the prisoners he interviewed during his facility tours, but testified in his deposition that he had no input in deciding who to interview. (Doc. #1011, 2:18-3:7.) Rather, he testified that Plaintiffs' counsel simply provided him with names of inmates. (Doc. #1011, 3:3-7.) **Dr. Wilcox** claimed in his declaration that he instructed Plaintiffs' counsel to provide him with a random selection of charts, but explicitly stated in his report that he did not review a random sample. (Doc. #1011, 3:9-13.) Dr. Wilcox further testified in his deposition that he did not know who selected many of the records he reviewed, or how they were selected, but that he did not select them. (Doc. #1011, 3:14-4:5.) **Dr. Williams** claimed in her declaration that she identified the inmates she interviewed, and whose records she reviewed. (Doc. #1011, 4:8-12.) At her deposition, however, she testified that she did not choose those names. (Doc. #1011, 4:11-20.)

> MR. SPECTER: I think evidentially, Judge, if the witness comes in and says this is my report or my declaration or whatever it is and everything in it is therefore true or I base my opinion on it I think it's admissible.

(Doc. #822, 41:10-13.)

On cross examination, Defendants will then be required to go through each and every avowal and opinion line-by-line to raise objections and rebut the experts' opinions to avoid a closing argument from Plaintiffs to the effect that "Because Defendants did not dispute Facts A, B, and C and Opinions X, Y, and Z, those facts and opinions are undisputed, and the Court should enter judgment for Plaintiffs as to those issues." Thus, cross examination would be exponentially longer than would otherwise be required. Plaintiffs would then require additional time for re-direct examination as they attempt to rehabilitate their experts on each and every point raised by Defendants during cross examination. Any time savings realized by not requiring Plaintiffs' experts to testify live during direct examination would be eclipsed in short order.

Requiring Plaintiffs' experts to testify live would eliminate these issues before they occurred by forcing Plaintiffs' experts to be more concise, accurate, and succinct in their testimony. This would in turn reduce the time needed for cross and re-direct examination. It would also ensure that Plaintiffs' experts' testimony is truly their own, and would require them to defend their opinions, rather than allowing them to hide behind a declaration/persuasive brief prepared for them by Plaintiffs' counsel.

Moreover, allowing Plaintiffs to simultaneously submit their experts' direct examination testimony through attorney-prepared declarations would allow Plaintiffs to subvert the Court's previous ruling regarding duplicative expert testimony. In its Order denying Defendants' Motion to Preclude, the Court precluded overlapping opinions expressed by Dr. Cohen and Dr. Wilcox. Specifically, the Court held:

> Dr. Cohen and Dr. Wilcox will not be permitted to testify to the same opinions … [t]o the extent their opinions are on the

9

> same issues, Plaintiffs must elect which witness will testify on which issue. Once one of them has testified to an opinion, the other will be precluded from testifying to the same opinion. Defendants may raise such objections at trial in light of the testimony given by the other witness.

(Doc. #1040, 6:6-12.)

Written declarations will allow Plaintiffs an opportunity to submit duplicative testimony from Dr. Cohen and Dr. Wilcox in violation of the Court's Order, while depriving Defendants of the opportunity to raise an effective objection, since the expert declarations would be filed with the Court at the same time they were exchanged with Defendants, i.e., before Defendants had the opportunity to review them. (Doc. #1068, 2:7-9.) Although the Court may sustain an objection and decline to consider the duplicative information, the bell will have already been rung.

### D. Defendants Should Be Permitted To Cross-Examine Plaintiffs' Experts Without Time Restrictions.

Should the Court decide to grant Plaintiffs' Motion, Defendants respectfully request that the Court not set any time limits on Defendants' cross examination. At the hearing on Defendants' Motion for Summary Judgment, Plaintiffs' counsel suggested that any time allowed for live direct examination in conjunction with the written declarations be reciprocal – i.e., if Plaintiffs are allowed two hours of live direct testimony, Defendants should be allowed two hours of live cross examination. (Doc. #1058, 42:13-20.)

Such an arrangement would be fundamentally unfair. If their Motion is granted, Plaintiffs would undoubtedly submit expansive declarations from their experts prepared over weeks, if not months, such that Defendants could not possibly mount an effective cross examination in only two hours with only four days' advance notice. As such, to the extent the Court is inclined to grant Plaintiffs' Motion, Defendants respectfully request that it place no time limits on Defendants' subsequent cross examination.

///

///

## III. CONCLUSION

Contrary to Plaintiffs' suggestion, the use of attorney-prepared declarations in lieu of live direct examination testimony is purely discretionary. The Court should exercise its discretion by denying Plaintiffs' Motion, as live direct examination of Plaintiffs' experts will allow the Court to fully and fairly evaluate the experts' credibility, which is of utmost importance in this case given the potentially sweeping ramifications for the State of Arizona and its taxpaying citizens. Moreover, granting Plaintiffs' Motion will not save time at trial, but will actually prolong the time needed for trial, while at the same time unduly prejudicing Defendants. Alternatively, if Plaintiff's Motion is granted, Defendants should be permitted to conduct a full cross examination without limitation as to time.

DATED this 25th day of August 2014.

STRUCK WIENEKE & LOVE, P.L.C.


By /s/Jacob B. Lee
    Daniel P. Struck
    Kathleen L. Wieneke
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    Ashlee B. Fletcher
    Anne M. Orcutt
    Jacob B. Lee
    STRUCK WIENEKE & LOVE, P.L.C.
    3100 West Ray Road, Suite 300
    Chandler, Arizona 85226

    Arizona Attorney General Thomas C. Horne
    Office of the Attorney General
    Michael E. Gottfried
    Lucy M. Rand
    Assistant Attorneys General
    1275 W. Washington Street
    Phoenix, Arizona 85007-2926

    *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Ajmel Quereshi: | aquereshi@npp-aclu.org |
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com; docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amir Q. Amiri: | aamiri@jonesday.com; ttualaulelei@jonesday.com |
| Amy Fettig: | afettig@npp-aclu.org |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| Daniel Joseph Pochoda: | dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org |
| Dara Levinson: | daralevinson@jonesday.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| James Duff Lyall: | jlyall@acluaz.org; gtorres@acluaz.org |
| James M. Jellison: | jim@jellisonlaw.com; cindy@schleierlaw.com; kasey@jellisonlaw.com |
| Jennifer K. Messina: | jkmessina@jonesday.com |
| Jerica Lynn Peters: | jpeters@perkinscoie.com |

| | | |
|---|---|---|
| 1 | | |
| 2 | Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| 3 | John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| 4 | John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| 5 | Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| 6 | | |
| 7 | Kamilla Mamedova: | kmamedova@jonesday.com |
| 8 | Kevin C. Brantley: | kbrantley@jonesday.com |
| 9 | Kirstin T. Eidenbach: | keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; |
| 10 | | docketphx@perkinscoie.com |
| 11 | Matthew Benjamin de Mee: | mdumee@perkinscoie.com; cwendt@perkinscoie.com |
| 12 | Sara Norman: | snorman@prisonlaw.com |
| 13 | Sarah Eve Kader: | skader@azdisabilitylaw.org; mlauritzen@azdisabilitylaw.org; |
| 14 | | rstarling@azdisabilitylaw.org |
| 15 | Taylor Freeman: | tfreeman@jonesday.com |
| 16 | | |
| 17 | Warren E. George, Jr.: | wgeorge@prisonlaw.com |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ *Jacob B. Lee*