Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>                           Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>                           Defendants. | NO. 2:12-cv-00601-DJH<br><br><br>**DEFENDANTS' MOTIONS IN LIMINE** |

Pursuant to the Court's July 3, 2014 Order (Doc. 995), Defendants submit the following motions in limine:

## Motion in Limine No. 1:

### Preclude Any Exhibits that Plaintiffs Have Not Previously Disclosed.

After the close of discovery and two weeks before Plaintiffs filed their Response to Defendants' Motion for Summary Judgment, Plaintiffs removed all previously identified trial exhibits from their disclosure statements and replaced them with the following vague catch-all:

> The discovery period in this matter has largely closed and the record is nearly complete. Defendants have been furnished with copies and/or descriptions by category and location of all documents, electronically stored information, and tangible things that Plaintiffs may use to support their claims. This includes all documents, electronically stored information, and tangible things disclosed in Plaintiffs' previous disclosure statements, <u>as well as all documents, electronically stored information, and tangible things made known to Defendants during the pendency of this litigation</u>, consistent with the requirements of Federal Rule of Civil Procedure 26, including all information included in productions by the parties and third parties, <u>and all information made known to defendants in all other writings in this proceeding</u>.

(Ex. A at 28-29, emphasis added).  In other words, Plaintiffs deleted their 419 trial exhibits, and instead disclosed that they would rely on anything "made known to Defendants during the pendency of this litigation."[1]  (Id.)  Then, relying on this generic umbrella and in support of their Response to Defendants' Motion for Summary Judgment, Plaintiffs attached 42 exhibits that were never identified in their prior disclosure statements.  (Doc. 1050 at 6.)  They obviously intend to rely on exhibits at trial that also have not been specifically identified and disclosed in accordance with Fed.R.Civ.P. 26, under the guise of this catch-all statement.

Rule 26 requires each party to "provide to the other parties" a "copy—or description by category and location—of all documents, electronically stored information,

---

[1] On September 4, 2014, Plaintiffs served their Fifth Supplemental Disclosure Statement. (Ex. B.) That Disclosure Statement has no trial exhibits listed, and includes a slightly modified version of the aforementioned catch-all that contemplates future unidentified documents that they intended on disclosing and "information produced with expert reports or at depositions." (Id.)

and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed.R.Civ.P. 26(a)(1)(A)(ii). The purpose of Rule 26(a)(1)(A)(ii) "is not merely to apprise the opposing party of the existence of documents; it is to tell the opposing party which documents may be used at trial." *Robert Kubicek Architects & Associates, Inc. v. Bosley*, CV-11-2112-PHX-DGC, 2013 WL 998222, *1 (D. Ariz. Mar. 13, 2013). Defendants are not required to "sift through every document in its possession that might possibly be relevant to Plaintiffs' claims and assume they all will be presented at trial." *Id.* (quoting *Johnson v. United Parcel Serv., Inc.*, 236 F.R.D. 376, 378 (E.D. Tenn. 2006)). "Rule 26 puts the burden on the party intending to present a document to notify the other party of its intent to do so." *Johnson*, 236 F.R.D. at 378 (E.D. Tenn. 2006) (cited with approval in *McCollum v. UPS Ground Freight Inc.*, CV11-0961 PHX DGC, 2013 WL 105225, *3 (D. Ariz. Jan. 9, 2013)).

Plaintiffs' trial-exhibit disclosure clearly fails to comply with the plain language of Rule 26 and its intended purpose. Rule 26(a)(1)(A)(ii) expressly requires the parties to disclose either a copy or "a description by category and location" of all documents it may use to support its claims. A general statement regarding "all information made known to defendant" does not describe by category and location what documents Plaintiffs may use to support their claims. Instead, this catch-all leaves Defendants to guess what documents Plaintiffs intend to use at trial and allows Plaintiffs an opportunity to sandbag Defendants with previously unidentified documents or other evidence. This severely prejudices Defendants and deprives them the opportunity to adequately prepare for trial. *See Merisant Co. v. McNeil Nutritionals, LLC*, 242 F.R.D. 303, 311 (E.D. Pa. 2007) ("[A] party cannot introduce a document as evidence while denying the opponent sufficient discovery with respect to the surrounding circumstances and substance of the document.") (quotation omitted). Instead, they must speculate as to what evidence will be presented in Plaintiffs' case-in-chief. This is contrary to the purpose of Rule 26 disclosures: to prevent unnecessary surprise and inform the other parties which documents may be used to

2

1    support its claims or defenses.  *See Melczer v. Unum Life Ins. Co. of Am.*, 259 F.R.D. 433,

2    436 (D. Ariz. 2009); *McCollum*, 2013 WL 105225 at *3 (quoting S. Gensler, Federal

3    Rules of Civil Procedure, Rules and Commentary, at 495 (West 2011)).  If substituting

4    lists of specifically identified documents with general statements regarding anything

5    "made known" during the litigation was permissible, there would be no need for Rule 26's

6    disclosure requirement.

7            Removing identified exhibits on the eve of trial is the epitome of hiding the ball.

8    Plaintiffs' decision to do this was deliberate and calculated, and designed not only

9    sandbag Defendants at trial, but also to backdoor evidence that they failed to timely

10   disclose (either intentionally or unintentionally).  The Court should not condone such

11   gamesmanship. Therefore, Defendants request that the Court issue a pretrial Order

12   excluding any and all exhibits that Plaintiffs may rely upon at trial that were not

13   specifically identified in Plaintiffs' disclosure statements, pursuant to Fed.R.Civ.P.

14   37(c)(1).  *See Yeti by Molly Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1107 (9th Cir.

15   2001) (disclosure violation not substantially justified or harmless should be automatically

16   excluded); *Merch. Transaction Sys., Inc. v. Nelcela, Inc.,* CV 02-1954-PHX-MHM, 2009

17   WL 2355807, *4 (D. Ariz. July 28, 2009) ("The exclusion of non-disclosed evidence is

18   automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or

19   harmless.").

20                              **Motion in Limine No. 2:**

21   **Preclude Unidentified Witnesses, Inadequately Disclosed Witnesses, Witnesses Who**

22                **Lack First-Hand Knowledge, and Untimely Disclosed Witnesses.**

23           Defendants request that the Court exclude:  (1) all witnesses who Plaintiffs have

24   not identified by name in their disclosure statements; (2) all witnesses who Plaintiffs

25   failed to adequately disclose the substance of their testimony; (3) all witnesses who lack

26   first-hand personal knowledge regarding the provision of healthcare at ADC; and (4) all

27   untimely disclosed witnesses.

28

                                            3

1        <u>Unidentified Witnesses</u>. Rule 26 requires the disclosure of the "name and, if

2   known, the address and telephone number of each individual likely to have discoverable

3   information – along with the subjects of that information – that the disclosing party may

4   use to support its claims or defenses, unless the use would be solely for impeachment."

5   Fed.R.Civ.P. 26(a)(1)(A)(i).   Plaintiffs listed the following unidentified individuals in

6   their disclosure statement who they may call to testify at trial:

       72.     SPDS dental staff working in ADC facilities.

       73.     Employees of Corizon or ADC with knowledge about the provision
             of medical, dental or mental health care at ADC facilities.

       75.     Current and former ADC prisoners with knowledge of the provision
             of health care at ADC facilities and/or conditions of confinement in the
             isolation units.

       117.  Any additional witnesses that come to be known to Plaintiffs as a
           result of a critical health situation. Such names shall be supplemented if, and
           when, made known to Plaintiffs pursuant to Federal Rule of Civil Procedure
           26(e) at a later date.

       118.  Any individuals that voluntarily furnish information relevant to
           Plaintiff's case. Such names shall be supplemented if, and when, made
           known to Plaintiffs pursuant to Federal Rule of Civil Procedure 26(e) at a
           later date.

       119.  Any additional witnesses that come to be known to Plaintiffs as a
           result of the limited ongoing discovery. Such names shall be supplemented
           if, and when, made known to Plaintiffs pursuant to Federal Rule of Civil
           Procedure 26(e) at a later date.

(Ex. B at 23, 29.)

     These broad, generic lists of categories of witnesses do not satisfy the disclosure

requirements of Rule 26.  *See Smith v. Pfizer Inc*., 265 F.R.D. 278, 283 (M.D. Tenn.

2010).   The plain language of the rule requires the disclosure of "*the name*… of each

individual likely to have discoverable information." Fed.R.Civ.P. 26(a)(1)(A)(i)

(emphasis added).  "It is not sufficient to identify witnesses through the use of a collective

description, such as 'employees or representatives of the defendant." *Smith*, 265 F.R.D. at

283 (quoting 6 Moore's Federal Practice, § 26.22[4][a] [i] (3d ed.)).  The purpose of the

Federal Rules of Civil Procedure is to avoid the very surprise and undue prejudice caused by Plaintiffs' vague and inadequate disclosures. *See* Fed.R.Civ.P. 26, Advisory Committee Notes to 1983 Amendment ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.") (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

Inadequately Disclosed Witnesses and Witnesses Without First-Hand Knowledge. The Court should also preclude Plaintiffs from calling the following witnesses—inmate family members and prisoner-rights activists—because the substance of their testimony was not adequately disclosed and/or they lack personal knowledge regarding the care provided to Plaintiffs or other inmates:

**96. Rhonda Jensen**

Ms. Jensen may be called to testify regarding her knowledge of the provision of health care to her husband, named plaintiff Shawn Jensen, and her efforts and interactions with ADC staff to have him provided care. Ms. Jensen may also be called to testify regarding her knowledge of the provision of health care to other prisoners she knows.

**97. Michelle Lependorf**

Ms. Lependorf may be called to testify regarding her knowledge of the provision of health care to her brother, Ferdinand Dix, who died while in custody of ADC.

**98. Caroline Isaacs**
American Friends Service Committee

Ms. Isaacs may be called to testify regarding her knowledge of the provision of health care at ADC facilities, ADC's use of isolation, and the conditions of confinement in isolation.

**99. Lynn Nau**
c/o Faith Lutheran Church

Ms. Nau may be called to testify regarding her knowledge of the provision of health care at ADC facilities, ADC's use of isolation, and the conditions of confinement in isolation.

5

**100. Margaret Plews**
Arizona Prison Watch

Ms. Plews may be called to testify regarding her knowledge of the provision of health care at ADC facilities, ADC's use of isolation, and the conditions of confinement in isolation.

**101.  Doris Schartmueller**

Ms. Schartmueller may be called to testify regarding her knowledge of the provision of health care to her spouse . . ., her efforts and interactions with ADC staff to have him provided care, and his ultimate death. Ms. Schartmueller may also be called to testify regarding her knowledge of the provision of health care to other prisoners she knows.

**103.  Laurie Vocke**

Ms. Vocke may be called to testify regarding her knowledge of the provision of health care to her spouse . . . and her efforts to have her spouse provided care.

**104.  Mark Dehe**

Mr. Dehe may be called to testify regarding his knowledge of the provision of health care to his father . . . and his efforts to have his father provided care.

**105.  Cassie Rogers**

Ms. Rogers may be called to testify regarding her knowledge of the provision of health care to her mother . . . and her efforts to have her mother provided care, and her mother's ultimate death while in custody of ADC.

**106.  Cody Huggins**

Mr. Huggins may be called to testify regarding his knowledge of the provision of health care to his father . . ., his efforts to have his father provided care, and his father's ultimate death shortly after an imminent danger (medical parole) release from ADC custody.

**107.  Jo Ann Lassell**

Ms. Lassell may be called to testify regarding her knowledge of the provision of health care to her brother . . . [and] her efforts to have her

6

brother provided care while in custody of ADC.

(Ex. B at 24-27.)

The purported testimony of each of these witnesses is ambiguous and unknown. They merely claim that their testimony will involve "the provision of health care" either to an inmate or in general.  There is no date range or specific care referenced.  Defendants attempted to elicit the actual substance of these witnesses' testimony through interrogatories (Ex. C), but those discovery requests were met with unfulfilled promises to disclose the substance of their testimony at some future time.  (Ex. D.)  Defendants repeatedly demanded that Plaintiffs follow through with those promises (Ex. E), but Plaintiffs never did (Ex. B), and now Defendants are left with nothing more than vague disclosures that these witnesses' testimony will have something to do with healthcare. Therefore, Plaintiffs should be precluded from eliciting any testimony from these witnesses for their failure to comply with Rule 26.  *See* Fed.R.Civ.P. 37(c)(1).

It also appears that these witnesses' testimony will be based upon inadmissible hearsay (i.e. what they were told by inmates), *see* Fed.R.Evid. 802, and improper opinion testimony, see Fed.R.Evid. 701.  Their testimony should also be excluded under Rule 403 because it is unduly prejudicial, may confuse the issues, waste time, unnecessarily delay trial and result in the presentation of cumulative evidence.

<u>Untimely Disclosed Witnesses</u>.  Plaintiffs have listed former inmate Dean Vocke as a trial witness.  (Ex. B at 26.)  The Court has already precluded this individual from providing testimony in this case because he was not timely disclosed. (Doc. 991.) Plaintiffs also list as trial witnesses inmates Velasquez, Ammirato, Armenta, Leslie, Wakeman, Chavez, Velarde, and Cain.  (Ex. B at 27-28.)  Plaintiffs did not disclose these witnesses until yesterday, September 4, 2014, after the close of discovery and long after Plaintiffs' counsel had knowledge of them.  With discovery closed, Defendants have no opportunity to depose these inmates or otherwise test the veracity of anything they may testify to. This was precisely the reason the Court precluded Vocke's testimony. (Doc.

986, 991.)  These inmates should be precluded from testifying for the same reason.

Accordingly, Defendants request that the Court issue a pretrial Order excluding testimony from the aforementioned witnesses.

### Motion in Limine No. 3:

### Preclude Wexford PowerPoint Presentation and Associated Testimony.

The Legislature privatized correctional health services at ADC in April 2011.  *See* 2011 Ariz. Legis. Serv. 1st  Sess., Ch. 278 (H.B. 2011).  Wexford took over the provision of health services at ADC on July 1, 2012.  (Doc. 936, at ¶ 68.)  After that date, ADC monitored and audited Wexford's performance to ensure compliance with contractual requirements.  (*Id.* at ¶ 97.)

In September 2012, ADC issued a Cure Notice and Sanction Letter to Wexford, noting Wexford's noncompliance with certain terms of the contract.  (*Id.* at ¶ 72.)  Upon receiving the Notice, Wexford was required to provide ADC a plan of action to correct the deficiencies.  (*Id.*)  A meeting was arranged for November 7, 2012, whereby Wexford representatives were supposed to present their plan of action to ADC officials.  (Id. at ¶¶ 72-73.) But instead of presenting a corrective action plan at that meeting, Wexford representatives  showed  up  with  a  PowerPoint  presentation  that  criticized  ADC's healthcare system and monitoring of Wexford. (*Id.* at ¶ 73.) Wexford presented only "parts of" the PowerPoint and refused to provide ADC with a copy of the presentation. (*Id.* at ¶¶ 74-75.)  The presentation was a "one-way communication" that was intended to be "an exit strategy" because of this lawsuit.  (*Id*. at ¶¶ 74, 76, 80.) The day after the presentation, Wexford informed ADC that it wanted to discontinue providing health services and sever its contract with ADC.  (*Id.* at ¶ 79.)

The PowerPoint is replete with incorrect and unverifiable allegations (*Id.* at ¶ 77), and it was clearly created to deflect any liability from Wexford. It also makes blanket legal conclusions unsupported with fact.  Even Wexford's Director of Operations testified that the presentation was not a judgment on the constitutionality of the healthcare system because "obviously" she is "not a legal expert." (Ex. F at  111:11-19.)  To the extent that

1    the conclusions are based on anything, it is the allegations raised in Plaintiffs' Complaint.

2    For example, it alleges:

3            Numerous, longstanding access to care deficiencies as cited in
             the ADC's current class action lawsuits… Current ADC class
4            action lawsuits note multiple practices falling below industry
             standards… Current ADC class action lawsuits note multiple
5            practices falling below industry standards… As illustrated by
             the current class action lawsuits, the ADC allowed – even
6            encouraged – staff to 'cut corners,' even though the resulting
             practices were illegal and often outside the employee's
7            particular scope of practice… ADC processes resulted in a
             tremendous potential for medication errors, which are
8            prevalent throughout the current class action lawsuits… ADC
             failed to create an effective tracking and scheduling system (as
9            noted in the current ADC class action lawsuits)… Processes
             and practices outlined in detail in the ADC's current class
10           action lawsuits remain present… the ADC has not shared any
             improvement plans with Wexford Health… ACLU lawsuits,
11           combined with inflammatory and inaccurate press coverage,
             result in the potential for an increased number of malpractice
12           lawsuits… The current class action lawsuits are accurate.

13   (Doc. 590, Ex. 2.)

14        The PowerPoint and any associated testimony should be excluded because it:

15   (1) contains multiple levels of hearsay under Fed.R.Evid. 802; (2) is improper opinion

16   testimony under Fed.R.Evid. 701; (3) is confusing, needlessly cumulative, and unfairly

17   prejudicial under Fed.R.Evid. 403; and (4) lacks foundation or authentication under

18   Fed.R.Evid. 901.

19        First, the PowerPoint contains multiple levels of inadmissible hearsay.  Fed.R.Evid.

20   802.  The PowerPoint by its very nature is an out-of-court statement offered for the truth

21   of the matter asserted.  It is not admissible as a party admission because Wexford is not a

22   defendant to this action and was not acting on ADC's behalf when it made the statements.

23   *See* Fed.R.Evid. 801(d). Defendants have never agreed to the statements made in the

24   presentation, and soon after the presentation the relationship between ADC and Wexford

25   ended.  (Doc. 936 at ¶¶ 79-80.)  The presentation also does not fall within any of the

26   hearsay exceptions. *See* Fed.R.Evid. 803 & 804. "The primary justification for the

27   exclusion of hearsay is the lack of any opportunity for the adversary to cross-examine the

28   absent declarant whose out-of-court statement is introduced into evidence." *Anderson v.*

1   *U. S.*, 417 U.S. 211, 220 (1974).  Here, Defendants have no opportunity to cross-examine

2   an identifiable declarant regarding the statements in the PowerPoint or challenge the

3   unfounded legal and factual conclusions asserted therein.  It is unclear who made the out-

4   of-court statements included in the PowerPoint, because it was created by "multiple"

5   individuals and only one of those individuals has been identified.  (Ex. F at 95:3-8.)

6          Second, any testimony associated with the presentation is inadmissible hearsay and

7   improper opinion testimony.  A lay witness is limited to only offering opinions that are

8   based on the witness's perception, helpful to understanding the witnesses' testimony or

9   determining a fact in issue, or not based on specialized knowledge within the scope of

10  Rule 702. Fed.R.Evid. 701.  Any testimony regarding the opinions asserted in the

11  presentation is improper under Rule 701.  For example, the presentation opines:  "Health

12  care program non-compliant with industry standards and constitutional requirements."

13  (*See* Doc. 590, Ex. 1 at WEXFORD 000001; Doc. 590, Ex. 2 at WEXFORD 000010.)

14  There is absolutely no foundation to support this opinion.  As a Wexford representative

15  later explained, "obviously, I'm not a legal expert, I can't give [a] legal definition of those

16  word[s]."  (Ex. F at 111:6-19.)

17         Third, any probative value of the PowerPoint is substantially outweighed by the

18  unfair prejudice it will cause Defendants, and because it will confuse the issues, waste

19  time, and present cumulative evidence.  *See* Fed.R.Evid. 403; *see also Rogers v. Raymark*

20  *Indus., Inc.*, 922 F.2d 1426, 1430 (9th Cir. 1991).  The court has considerable discretion in

21  performing a Rule 403 balancing test.  *See Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir.

22  1996).  The PowerPoint is unfairly prejudicial because it is based upon hearsay and

23  Defendants have no opportunity to cross-examine and determine the veracity and basis for

24  the opinions expressed in the presentation. In addition, it contains multiple conclusory

25  opinions that are based, in part, upon allegations in Plaintiffs' Complaint (including

26  allegations that have been refuted at the summary judgment stage). In other words, it is

27  based upon Plaintiffs' own *ipse dixit*.  As noted above, the PowerPoint makes numerous

28  references to this lawsuit as the basis for its conclusions. It also includes multiple

10

incomplete comments that are confusing and misleading without any context or explanation. Any statements regarding the standard, type, or quality of care are cumulative and should be introduced through other more reliable sources, such as medical records and testimony from healthcare providers and recipients.

Finally, Plaintiffs cannot establish that the PowerPoint is authentic or provide sufficient foundation for its admissibility. The authentication of a document requires "evidence sufficient to support a finding that the matter in question is what its proponent claims." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532-33 (9th Cir. 2011) (quoting Fed.R.Evid. 901(a)). The source of each of the statements in the presentation and basis for each conclusion is also unverified and unclear. Accordingly, Defendants request that the Court issue a pretrial Order excluding the admission of the Wexford PowerPoint and any other related documents or testimony.

### Motion in Limine No. 4:

### Preclude Any Evidence That Predates Privatization of Correctional Health Services.

Defendants request that the Court exclude all healthcare evidence that predates the privatization of ADC healthcare because this evidence is outdated and irrelevant to whether Plaintiffs are currently receiving constitutionally adequate care. This evidence should be excluded under Fed.R.Evid. 402 and 403.

As the U.S. Supreme Court has explained, a future-risk-of-harm claim seeking injunctive relief "should be determined in light of the prison authorities' *current* attitudes and conduct." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994) (quotation omitted and emphasis added); *see also Green v. Mansour*, 474 U.S. 64, 73 (1985) (injunctive relief only proper if there is a "continuing violation of federal law"); *Casey v. Lewis*, 834 F.Supp. 1477, 1546–47 (D. Ariz. 1993) (district court considered evidence of prison conditions at time of trial). Because Plaintiffs are seeking prospective injunctive relief, any evidence predating privatization is too remote in time and irrelevant to whether Plaintiffs are currently receiving adequate care and whether they will receive adequate care in the future. Moreover, the provision of healthcare at ADC has been provided by

11

private vendors since July 2012.  Because ADC now contracts with a third-party vendor, any conduct, policies, or procedures that predate the privatization of health services are not relevant to Plaintiffs' claims that they are exposed to a *future* risk of harm.  And any injunction in this case will be based on the care provided by that private vendor.  Limiting evidence to the privatization period will also narrow the scope of trial and reduce its length.  *See* Fed.R.Evid. 403.

Accordingly, Defendants request that the Court issue a pretrial Order excluding any healthcare evidence prior to July 1, 2012, when ADC contracted with a third-party to provide correctional health services.

In the alternative, Defendants request that the Court exclude any healthcare evidence that predates January 1, 2011.  Throughout the course of discovery, the parties agreed to and limited their discovery responses to that date.  (Ex. G.)  That was an agreed upon date that the parties believed captured the most relevant evidence.  As a result, there has been little, if any, discovery regarding events prior to January 1, 2011.  At a minimum, Plaintiffs should be precluded from introducing evidence that predates the 2-year statute of limitations applicable to this lawsuit.  *See* A.R.S. § 12-542.  Because Plaintiffs filed their Complaint on March 22, 2012, any allegation prior to March 22, 2010, should be precluded.  *See Purnell v. Arrow Fin. Services, LLC*, 05-CV-73384, 2009 WL 1508340, *1 (E.D. Mich. 2009) (granting motion to exclude evidence predating the one-year statute of limitations on plaintiff's claims).

## CONCLUSION

Defendants respectfully request that the aforementioned evidence be excluded at trial.

/ / /

/ / /

/ / /

12

DATED this 5th day of September 2014.

STRUCK WIENEKE & LOVE, P.L.C.


By /s/ Daniel P. Struck
        Daniel P. Struck
        Kathleen L. Wieneke
        Rachel Love
        Timothy J. Bojanowski
        Nicholas D. Acedo
        Ashlee B. Fletcher
        Anne M. Orcutt
        Jacob B. Lee
        STRUCK WIENEKE & LOVE, P.L.C.
        3100 West Ray Road, Suite 300
        Chandler, Arizona  85226

        Arizona Attorney General Thomas C. Horne
        Office of the Attorney General
        Michael E. Gottfried
        Lucy M. Rand
        Assistant Attorneys General
        1275 W. Washington Street
        Phoenix, Arizona 85007-2926

        *Attorneys for Defendants*

13

**CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Ajmel Quereshi:          aquereshi@npp-aclu.org

Alison Hardy:            ahardy@prisonlaw.com

Amelia M. Gerlicher:     agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com

 Amir Q. Amiri:          aamiri@jonesday.com; ttualaulelei@jonesday.com

Amy Fettig:              afettig@npp-aclu.org

Asim Varma:              avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

Caroline N. Mitchell:    cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

Corene T. Kendrick:      ckendrick@prisonlaw.com; edegraff@prisonlaw.com

Daniel Clayton Barr:     DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

Daniel Joseph Pochoda:dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org

Dara Levinson:           daralevinson@jonesday.com

David Cyrus Fathi:       dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

Donald Specter:          dspecter@prisonlaw.com

James Duff Lyall:        jlyall@acluaz.org; gtorres@acluaz.org

James M. Jellison:       jim@jellisonlaw.com; cindy@schleierlaw.com; kasey@jellisonlaw.com

Jennifer K. Messina:     jkmessina@jonesday.com

Jerica Lynn Peters:      jpeters@perkinscoie.com

Jessica Pari Jansepar Ross:   jross@azdisabilitylaw.org

John Howard Gray:        jhgray@perkinscoie.com; slawson@perkinscoie.com

 John Laurens Wilkes:    jlwilkes@jonesday.com, dkkerr@jonesday.com

Jose de Jesus Rico:      jrico@azdisabilitylaw.org

Kamilla Mamedova:        kmamedova@jonesday.com

14

| | |
|---|---|
| 1 | Kevin C. Brantley: |
| 2 | Kirstin T. Eidenbach: |
| 3 | |
| 4 | Matthew Benjamin de Mee: |
| 5 | Sara Norman: |
| 6 | Sarah Eve Kader: |
| 7 | Taylor Freeman: |
| 8 | Warren E. George, Jr.: |

Kevin C. Brantley:    kbrantley@jonesday.com

Kirstin T. Eidenbach:    keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; docketphx@perkinscoie.com

Matthew Benjamin de Mee: mdumee@perkinscoie.com; cwendt@perkinscoie.com

Sara Norman:    snorman@prisonlaw.com

Sarah Eve Kader:    skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org

Taylor Freeman:    tfreeman@jonesday.com

Warren E. George, Jr.:    wgeorge@prisonlaw.com

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ Daniel P. Struck

15