1  Daniel Pochoda (Bar No. 021979)
   James Duff Lyall (Bar No. 330045)*
2  **ACLU FOUNDATION OF ARIZONA**
   3707 North 7th Street, Suite 235
3  Phoenix, Arizona 85013
   Telephone: (602) 650-1854
4  Email: dpochoda@acluaz.org
        jlyall@acluaz.org
5  *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

6  *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia*
   *Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith,*
7  *Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner,*
   *Joshua Polson, and Charlotte Wells, on behalf of themselves and all*
8  *others similarly situated*

   **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**
9
   Sarah Kader (Bar No. 027147)
10 Asim Varma (Bar No. 027927)
   **ARIZONA CENTER FOR DISABILITY LAW**
11 5025 East Washington Street, Suite 202
   Phoenix, Arizona 85034
12 Telephone: (602) 274-6287
   Email: skader@azdisabilitylaw.org
13        avarma@azdisabilitylaw.org

14 *Attorneys for Plaintiff Arizona Center for Disability Law*

   **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**
15
                    UNITED STATES DISTRICT COURT
16
                        DISTRICT OF ARIZONA
17
   Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-DJH
18 Dustin Brislan; Sonia Rodriguez; Christina
   Verduzco; Jackie Thomas; Jeremy Smith; Robert
19 Gamez; Maryanne Chisholm; Desiree Licci; Joseph      **PLAINTIFFS' RESPONSE IN**
   Hefner; Joshua Polson; and Charlotte Wells, on        **OPPOSITION TO**
20 behalf of themselves and all others similarly         **DEFENDANTS'**
   situated; and Arizona Center for Disability Law,      **[*EXPEDITED*] MOTION TO**
21                                                        **PRECLUDE PLAINTIFFS'**
                    Plaintiffs,                           **TRIAL EXHIBITS**
22
          v.
23
   Charles Ryan, Director, Arizona Department of
24 Corrections; and Richard Pratt, Interim Division
   Director, Division of Health Services, Arizona
25 Department of Corrections, in their official
   capacities,
26
                    Defendants.
27

28

Defendants' motion attempts to engage this Court in a game of "gotcha," as they grasp for any opportunity to preclude this case of great public importance from being tried on its merits.  Defendants ask this Court to impose on Plaintiffs a crippling and improper sanction for technical difficulties and what amounts to at most an interpretive error made by Plaintiffs' counsel, which has already been entirely remedied.[1]  Contrary to the hyperbole and drama of their motion, Defendants have been able to access virtually all of Plaintiffs' exhibits since Friday morning.  Every exhibit on Plaintiffs' exhibit list included a specific description, and nearly every exhibit was either Bates numbered (most of which are Defendants' own documents) or was clearly identified as a deposition exhibit, discovery response, or some other document provided to Defendants long ago in the course of this litigation.  And although Defendants already had their own copies of the vast majority of the exhibits, Plaintiffs delivered another full set of copies of all their exhibits Wednesday afternoon.  Plaintiffs' prompt remedy of any arguable error precludes any credible allegation of prejudice.  Defendants' motion lacks factual merit and legal foundation, and it wastes valuable time that the parties should be spending preparing for trial.  For the reasons set forth below, Defendants' motion should be denied in full.

## Background

The parties met, as ordered, on September 5, 2014 to exchange and begin de-duplicating exhibit lists.  Both parties came to the meeting with lists over two hundred pages long.[2]  The vast majority—around 3,600 out of 3,800—of Plaintiffs' exhibits have

---

[1] Defendants' motion fails to mention that they did not comply with the Court's order in its entirety either—for example, they failed to provide testimony times for the 300-plus witnesses on their witness list as required, and they used individual exhibit designations to refer to potentially dozens of recorded inmate phone calls *en masse*.  But because Plaintiffs realize that the process of preparing a joint pretrial statement involves many moving targets and is most expeditiously accomplished through reasonable negotiations between the parties rather than unnecessary filings, Plaintiffs requested that Defendants simply remedy the situation rather than bringing the Defendants' failure to the Court's attention.

[2] The large lists are due, in part, to the listing, by both parties, of all medical records reviewed by Plaintiffs' experts as separate exhibits.  Similarly, medical records, master files, grievance files, and other named Plaintiff records are all listed separately, for each of the 14 named Plaintiffs.  The parties are in the process of agreeing to consolidate

been previously produced or exchanged in this litigation, such as documents labeled by Bates number, deposition exhibit number, discovery response title, or the like.  [Gerlicher Decl. Ex. A][3]  Defendants have all these exhibits.  The remainder consists primarily of documents that are otherwise readily available, such as public documents and medical records reviewed at Defendants' facilities.

During the September 5 meeting, the parties worked through general issues regarding the various categories of documents.  Access to all documents on either list was available during the meeting.  [Declaration of Kirstin Eidenbach ("Eidenbach Decl.") ¶ 3]  Since that time, paralegals from both parties have been working on de-duplicating and developing standardized categories.  [Gerlicher Decl. ¶ 5]  The vast majority of exhibits on the parties' lists are duplicates, as would be expected given the emphasis on medical records, institutional policies, and other ADC documents.  Because the lists overlap so substantially, the final list of exhibits for the Court will be significantly different than either list prepared in advance of the September 5 meeting.  As copies of the exhibits will be made available to the Court on September 19, Plaintiffs anticipate categorizing the exhibits using common categories and de-duplicating them before preparing a comprehensive, ordered list with associated numbered exhibits.  Plaintiffs believed that the Court's order was intended to facilitate creation of this later list, and that spending several days collecting all documents on a list that would soon change would neither further that end nor benefit either party.  [Gerlicher Decl. ¶ 5]

---

and reduce some of these categories.  [Declaration of Amelia M. Gerlicher ("Gerlicher Decl.") ¶ 3]

[3] Plaintiffs attach portions of the exhibit list as produced to Defendants on September 5 showing how documents were identified for Defendants.  In an abundance of caution, Plaintiffs have sorted the document by Bates number or other identifier, showing those documents for which no number was provided, as well as a selection (approximately 40 out of the remaining 265 pages) of information provided to plaintiffs regarding other types and categories of documents.  Out of an abundance of caution, Plaintiffs are avoiding publicly filing the entire document showing medical records and other potentially sensitive information, but can provide the complete document to the Court upon request.  Plaintiffs also note that through further de-duplication, review, and consolidation in consultation with Defendants, the list continues to shorten.

Nevertheless, following Defendants' request for a copy of the exhibits on Friday, Plaintiffs began compiling them.  The task of finding and marking over 3,800 files for printing to PDF then transferring files to other media would take several days, and presenting the files in the categories that the parties were simultaneously discussing would further delay the process.[4]  Because Defendants already had copies of the exhibits, Plaintiffs believed that arranging the exhibits for the Court was the paramount goal, and the ongoing de-duplication process made designating exhibits for transfer premature.  Accordingly, Plaintiffs wrote Defendants on Monday that they did not believe transferring files at this juncture would be productive.  [Doc 1109, Defs.' Ex. A]

On Tuesday morning, Defendants informed Plaintiffs of their position that the pre-trial order required, under penalty of exclusion, that another copy of the exhibits be delivered to them.  Plaintiffs immediately began the process of printing documents to transferrable media, but even after the documents were marked, the processing time for our document review software to export all the documents to PDF was over 18 hours.  On Tuesday afternoon, at a previously scheduled meet and confer, Plaintiffs told Defendants that all the documents could be provided by Wednesday or could be produced on a rolling basis beginning later that day.  Defendants did not at that time indicate that this was unsatisfactory or that they intended to file a motion with the Court.  [Gerlicher Decl. ¶ 7]

On Tuesday evening, the first installment of documents was sent to Defendants via a File Transfer Protocol ("FTP").  [Gerlicher Decl. Ex. B]  The parties have used the same protocol to exchange documents on other occasions, and Plaintiffs have used it with consistent success in this case and others.  The documents were checked before transmittal and were in working order.[5]  The following morning, Defendants informed Plaintiffs'

---

[4]  The parties directed their paralegals to develop a common categorization scheme, as the draft lists were significantly different, and the lists presented to the Court must be categorized.  A basic category list was agreed to late Monday afternoon.

[5]  Contrary to Defendants' suggestion that only a handful of exhibits were sent on Tuesday evening, Plaintiffs provided over 2800 MB of exhibits, plus all the discovery responses.  That was why the files took so long to upload and download.  [Gerlicher Decl. Ex. B]

paralegal that they were unable to access the exhibits, explaining that they received an error message consistent with either their inability to download a complete file or technical difficulties in extracting the files.  Plaintiffs immediately agreed to provide the documents on a hard drive, which was couriered to Defendants at 2:40 p.m. on Wednesday afternoon.  [Gerlicher Decl. Ex. C][6]

**Argument**

## I.    DEFENDANTS HAVE NOT BEEN PREJUDICED BY PLAINTIFFS' SUBSTANTIAL COMPLIANCE WITH THE COURT'S ORDER

Plaintiffs' late full compliance with the Court's order is regrettable, and Plaintiffs express sincere apologies for any frustration, but Plaintiffs' tardiness is harmless and non-prejudicial.  The Ninth Circuit considers several factors to determine whether a violation of a discovery deadline is justified or harmless, including "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010).  These factors, individually and collectively, compel the conclusion that any violation was harmless.

### A.    Defendants are neither prejudiced nor surprised by Plaintiffs' exhibits, and Plaintiffs have acted in good faith.

Defendants claim (at 5) they are "extremely prejudiced" because Plaintiffs did not provide additional copies of exhibits and they were supposedly prevented from reviewing, redacting, or developing objections by September 19.  This is a dramatic exaggeration: Defendants ignore the reality that they had substantially ***all*** of Plaintiffs' exhibits before the Court's deadline, and none of the evidence could surprise Defendants.

---

[6] Plaintiffs have continued to de-duplicate their own list over the past few days.  In addition, the documents were pulled from our document review system and named using a standard format, which prevented multiple copies of the same exhibit from being saved twice.  Accordingly, while Plaintiffs have produced files for all exhibits that may be used, the total number of files is smaller than the total number of lines on the exhibit list exchanged on Friday.  [Gerlicher Decl. ¶ 10]

First, even before receiving the hard drive full of documents on Wednesday,[7] Defendants had access to virtually all of the exhibits on Plaintiffs' list already.  Contrary to Defendants' suggestion that they must search in a morass of undifferentiated documents for those matching Plaintiffs' descriptions, every document produced in this case has a Bates number, and all commonly available document software—including Concordance, the platform that defendants have previously indicated they use—allows searching by Bates number.  For Defendants to suggest they are incapable of finding a document when given the Bates number is absurd.

Second, for the small number of documents on the exhibit list without Bates numbers (about 235), little if any prejudice could be claimed from the failure to provide additional copies on September 5.  [*See* Gerlicher Decl. Ex. A]  Of those,

- 67 are Defendants' own discovery responses;

- 37 are medical records in Defendants' possession that have not been produced in this litigation, but were reviewed by Plaintiffs' experts.  The parties discussed these entries on Friday, and agreed to stipulate that Plaintiffs did not need to subpoena these documents in order to place them into evidence.  [Eidenbach Decl. ¶ 4]  Accordingly, Defendants' need not review those documents before September 19, but, even if they should wish to do so, they have access to all ADC medical records;[8]

- 19 are deposition exhibits, where the deposition number was provided;

- 7 are advocacy letters regarding specific prisoners sent directly to Defendants' counsel;

- 16 are publicly available web pages or publications; and

---

[7]  Defendants make much of their effort to download documents on Tuesday night, implying that it was somehow Plaintiffs' fault that the effort was unsuccessful.  However, the error messages sent to Plaintiffs and provided to the Court in Defs.' Ex. D are consistent with errors displayed when a file has downloaded improperly or the files were not properly arranged for decompression, issues that cannot be blamed entirely on Plaintiffs.  [Doc. 1109]  It should also be noted that the sheer size of the files is both the reason that it took most of the day to prepare them, and one more reason that Plaintiffs believed that Defendants would not want duplicate copies of *every* exhibit.

[8]  Approximately 40 more documents are records reviewed by Plaintiffs' medical expert Dr. Cohen.   The Cohen designation was inadvertently removed along with Plaintiffs' internal notes when the list was transferred to Defendants, which Plaintiffs acknowledge makes these documents more difficult to identify.   Although these documents were previously produced (at PLTF-PARSONS 031934-031980), in the interest of avoiding conflict, Plaintiffs withdraw these exhibits.

- 20 are Plaintiffs' expert reports, the same reports that the Court unsealed last week.

All of these documents are readily identifiable by Defendants, and all of these documents have been reviewed or discussed in some capacity at several stages of this litigation.  To the extent assorted other documents were included on the list without Bates ranges, ***Plaintiffs offered to immediately make those documents available if Defendants could not find them***. Defendants never made such a request. That Defendants instead poured through 3,800 lines of exhibits to pick out a handful that they could not identify for the Court does not mean they were unable to work with the vast majority of the exhibits on the list.

Third, while Defendants complain about the sheer number of documents, the substantial overlap of documents means that Defendants in reality have far fewer than 3,800 documents to review.  Moreover, the identification of duplicates can only rationally be accomplished by first reviewing the ***lists*** that have document descriptions and categories.  No one could expect to de-duplicate thousands of documents by simply looking at each document and deciding if he has seen it before.  Given that the de-duplication work must be done before reviewing new documents, Defendants' suggestion that they have been losing ground ever since Friday is unfounded.

Fourth, Defendants' argument that they do not have time to redact documents is similarly without merit.  The majority of exhibits on Plaintiffs' list are medical records, reports by ADC and its contractors, and emails about healthcare, none of which likely contain security information.  Moreover, the Protective Order in this case provides that security information is redacted prior to disclosure to Plaintiffs, and indeed the documents produced to Plaintiffs concerning isolation and maximum custody issues contain significant redactions already.  That Defendants do not believe they previously properly redacted records does not mean they are prejudiced by a delay in receiving copies of Plaintiffs' exhibits at this juncture (even if they could not access the exhibits in the interim, which, as explained above, they could).

Finally, the delay in receiving additional copies of the exhibits need not delay Defendants in developing objections.  Even had Defendants lacked access to their own copies of the documents, much of the work on objections must logically be done using the categories and descriptions on the exhibit list.  For example, over 1,200 of the documents are medical records, death investigations, and mortality reviews produced by Defendants.  Any objections to the content of those records would logically occur repeatedly, and should be expressed and decided on a common basis.  At the very least, this work could easily have started several days before reviewing any individual documents.

In short, Defendants' claims of prejudice because they did not receive a curated set of exhibits, most of which were already in their possession, until four days (two of which were business days) after they believed they should have received them amount to nothing more than hyperbole.  In a case of this magnitude, and when deadlines collide as they have in the past couple of weeks, interpretive and technical errors are unavoidable.  In fact, one of the stipulations to which the parties agreed at Friday's meet and confer was to permit all parties to rectify harmless errors without an ensuing kerfuffle, a stipulation Defendants clearly did not take to heart.  [Eidenbach Decl. ¶ 5]  Plaintiffs believed in good faith that the order was intended to ensure that both parties had the exhibits, not to require the parties to engage in several days of work to provide ***additional*** copies of documents the parties already possessed.  To extent the latter was required, it has been accomplished, well in advance of any prejudice caused to defendants.

**B.     Pre-trial preparations have not been disrupted, and the trial will be unaffected.**

All other pre-trial negotiations and exchanges are on schedule.  Drafts of the pre-trial statement were exchanged on time on September 8, and Plaintiffs continue to cooperate with Defendants to deliver required documents and information pursuant to the Court's order.  As described above, between Defendants' existing copies of the exhibits and the details on the exhibit list, Defendants' situation over the past four days was not substantially different than it would have been had Plaintiffs provided copies of the

1    exhibits earlier.  By contrast, briefing on this motion has taken both parties away from

2    trial preparations, a decision entirely in Defendants' hands.

3    **II.    DEFENDANTS' PROPOSED SANCTIONS ARE UNREASONABLE AND**

4    **CONTRARY TO LAW.**

5         Defendants argue that this Court has no choice but to enforce Judge Wake's July 3

6    order to impose a crippling sanction on plaintiffs.  Defendants are incorrect.  This Court

7    has discretion to enforce its own orders. *See In re Baycol Prods. Litig.*, 596 F.3d 884, 888

8    (8th Cir. 2010) ("District courts have broad discretion in establishing and enforcing

9    deadlines and in maintaining compliance with discovery and pretrial orders."); Fed. R.

10   Civ. P. 16(f) ("the court *may* issue any just orders") (emphasis added).

11        More importantly, the standard employed by the Ninth Circuit for determining the

12   propriety of sanctions counsels against excluding any of Plaintiffs' trial exhibits.  In this

13   Circuit, courts consider "whether a sanction is proper under a five-factor test analyzing:

14   1) the public's interest in expeditious resolution of litigation; 2) the court's need to

15   manage its docket; 3) the risk of prejudice to the defendants; 4) the public policy favoring

16   disposition of cases on their merits; 5) the availability of less drastic sanctions." *Wendt v.*

17   *Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997).  As described above, Defendants

18   cannot satisfy any of these factors to justify the imposition of the crippling sanctions they

19   request.

20        Most importantly, public policy is paramount in this case.  This litigation aims to

21   resolve the constitutionality of medical, dental, and mental health care and conditions of

22   confinement in ADC prisons.  For more than two years, both sides have worked tirelessly

23   to illuminate the most important issues so that this Court could decide the merits of this

24   case.  To exclude Plaintiffs' evidence at this stage based on Defendants' "gotcha" tactics

25   would be tantamount to dismissal. *Cf. Foman v. Davis*, 371 U.S. 178, 181 (1962) ("It is

26   too late in the day and entirely contrary to the spirit of the Federal Rules of Civil

27   Procedure for decisions on the merits to be avoided on the basis of such mere

28

1   technicalities.").  Defendants have not justified the propriety of any sanctions, much less a

2   sanction of such extreme measure.

3          Defendants cite no law in support of their extreme request, and indeed there is

4   none.   The cases Defendants cite relate to entirely new evidence that was untimely

5   disclosed, and ultimately weigh against sanctions that would drastically affect the trial.

6   *See AZ Holding LLC v. Frederick,* 2009 WL 2432745, *6 (D. Ariz. Aug. 10, 2009)

7   (declining to exclude expert disclosed 30 days late, and instead limiting expert testimony);

8   *see also Wong v. Regents of University of California*, 410 F.3d 1052, 1060 (9th Cir. 2004)

9   (affirming exclusion of entirely new evidence presented on summary judgment).  Nothing

10  on Plaintiffs' exhibit list could have surprised Defendants.   As described above, the

11  documents Plaintiffs intend to use to prove their case at trial have been previously

12  disclosed and used on numerous occasions; the vast majority are documents Plaintiffs

13  obtained ***from Defendants*** during discovery.   Cases imposing sanctions for failure to

14  strictly adhere to discovery deadlines involve extreme violations and bad faith, neither of

15  which is present here.  *See, e.g., Bodley v. Macayo Restaurants, LLC,* 2008 WL 2039277

16  (D. Ariz. May 12, 2008) (excluding plaintiffs' trial exhibits where counsel failed to

17  participate in the pre-trial order process at all, derailing the pre-trial conference, and

18  following numerous other violations of court orders); *see also In re Diamond Benefits Life*

19  *Ins. Co.*, 2006 WL 616625, at *6 (D. Ariz. Mar. 10, 2006) ("[T]he imposition of

20  preclusive sanctions may be tantamount to dismissal of a plaintiffs' claims . . .   Under

21  those circumstances, mere negligent conduct is insufficient to impose the severe sanction

22  of exclusionary sanctions, and a showing of bad faith is required.").  As the *Wong* court

23  notes, "[d]eadlines must not be enforced mindlessly."  410 F.3d at 1060.  Defendants'

24  motion suggests just such enforcement.

25                                **Conclusion**

26         Plaintiffs ask this Court to look beyond Defendants' hyperbole to see the

27  cooperative and productive pre-trial negotiations that have occurred since the timely

28

exchange of the parties' draft joint pretrial statements and to permit such cooperation to move forward by denying Defendants' motion in full.

Dated:  September 11, 2014

PERKINS COIE LLP

By:   s/ Daniel C. Barr
Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
Jerica L. Peters (Bar No. 027356)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
          agerlicher@perkinscoie.com
          keidenbach@perkinscoie.com
          jhgray@perkinscoie.com
          mdumee@perkinscoie.com
          jpeters@perkinscoie.com

Daniel Pochoda (Bar No. 021979)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:    dpochoda@acluaz.org
          jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Warren E. George (Cal. 53588)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
          ahardy@prisonlaw.com
          snorman@prisonlaw.com
          ckendrick@prisonlaw.com
          wgeorge@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Qureshi (Md. 28882)**
**ACLU NATIONAL PRISON
PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:    dfathi@npp-aclu.org
          afettig@npp-aclu.org
          aqureshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted
  in DC; practice limited to federal
  courts.
**Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
Dara Levinson (Cal. 274923)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:    cnmitchell@jonesday.com
          aamiri@jonesday.com
          daralevinson@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:    jlwilkes@jonesday.com
          tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:    kmamedova@jonesday.com
          jkmessina@jonesday.com

*Admitted *pro hac vice*

1
2
3
4

Kevin Brantley (Cal. 251886)*
**JONES DAY**
3161 Michelson Drive, Suite 800
Irvine, California 92612
Telephone:  (949) 851-3939
Email:    kcbrantley@jonesday.com

*Admitted *pro hac vice*

5
6
7
8
9

*Attorneys for Plaintiffs Shawn Jensen;*
*Stephen Swartz; Sonia Rodriguez; Christina*
*Verduzco; Jackie Thomas; Jeremy Smith;*
*Robert Gamez; Maryanne Chisholm;*
*Desiree Licci; Joseph Hefner; Joshua*
*Polson; and Charlotte Wells, on behalf of*
*themselves and all others similarly situated*

10

**ARIZONA CENTER FOR DISABILITY**
**LAW**

11
12

By:   s/ Sarah Kader

13
14
15

Sarah Kader (Bar No. 027147)
Asim Varma (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:     skader@azdisabilitylaw.org
           avarma@azdisabilitylaw.org

16
17
18
19
20

J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
**ARIZONA CENTER FOR**
**DISABILITY LAW**
100 N. Stone Avenue, Suite 305
Tucson, Arizona 85701
Telephone:  (520) 327-9547
Email:     jrico@azdisabilitylaw.org
           jross@azdisabilitylaw.org

21
22

*Attorneys for Arizona Center for Disability*
*Law*

23
24
25
26
27
28

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on September 11, 2014, I electronically transmitted the above

3   document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4   Notice of Electronic Filing to the following CM/ECF registrants:

5

Michael E. Gottfried
6                    Katherine E. Watanabe
Lucy M. Rand
7              Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
8                  Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov
9

Daniel P. Struck
10                  Kathleen L. Wieneke
Rachel Love
11                 Timothy J. Bojanowski
Nicholas D. Acedo
12                   Ashlee B. Fletcher
Anne M. Orcutt
13                    Jacob B. Lee
STRUCK WIENEKE, & LOVE, P.L.C.
14                 dstruck@swlfirm.com
kwieneke@swlfirm.com
15                   rlove@swlfirm.com
tbojanowski@swlfirm.com
16                  nacedo@swlfirm.com
afletcher@swlfirm.com
17                 aorcutt@swlfirm.com
jlee@swlfirm.com
18

19                 *Attorneys for Defendants*

20                                      s/ D. Freouf

21

22

23

24

25

26

27

28