Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DJH<br><br><br>**DEFENDANTS' REPLY IN SUPPPORT OF (*EXPEDITED*) MOTION TO PRECLUDE PLAINTIFFS' TRIAL EXHIBITS**<br><br>[Expedited Consideration and Oral Argument Requested] |

This is not a "game" and Plaintiffs are clearly not taking the Court's July 3, 2014 Pretrial Order seriously. The trial-exhibit exchange was not a suggestion, it was an order of the Court designed to prevent one party from taking advantage of another. Plaintiffs failed to comply by the ordered deadline and still have not complied one week past due. The Court should not allow Plaintiffs to thumb their nose at a court order and get away with it. The automatic sanction should be swiftly applied.

### A. Plaintiffs' Counsel's Excuses for Failing to Comply With the Court's Order Are Disingenuous.

Plaintiffs' counsel admit that they did not provide Defendants copies of their trial exhibits on September 5, 2014, as required by the Court's July 3 Order, and instead offer excuses for their noncompliance. (Doc. 995, ¶ 10.)

Their first excuse is "interpretive error." (Doc. 1113 at 2:4.) They contend that they interpreted the July 3 Order to require only the exchange of exhibit *lists*, not copies of exhibits, to allow the parties to prepare and submit to the Court a "comprehensive, ordered" master trial exhibit list. (Id. at 3:16-20.) Such an interpretation could only be reached if they did not read the Court's Order, which plainly states that the parties must "exchange *copies of all exhibits* to be used at trial." (Doc. 995, ¶ 10, emphasis added.) There is no excuse. There are more than 30 attorneys, from four organizations and two national law firms, as counsel of record for Plaintiffs in this case. Collectively, they have more than 150 years of experience, and they are self-proclaimed experts in prison class-action litigation. (Doc. 236-240.) Local counsel—attorneys with Perkins Coie and the ACLU Foundation of Arizona—practice in this District on a daily basis and have tried many civil cases.[1] (Ex. 1.) To say that they did not know they had to exchange *copies* of their trial exhibits before trial is absurd. It is also undermined by the fact that they promised to send Defendants copies of their trial exhibits at the September 5 meeting, a promise they did not fulfill.[2]

---

[1] Perkins Coie was recently named class action group of the year. (Ex. 1.)

[2] Although the July 3 Order, which incorporates Judge Wake's standard Proposed Final Pretrial Order form, also requires the parties to list, in their joint Proposed Final

1

1 Plaintiffs also blame "technical difficulties" on their failure to comply. (Doc. 1113
2 at 2:4.) This excuse is equally disingenuous. Plaintiffs are referring to their defective
3 electronic transfer attempt on Tuesday night, September 9, 2014. But that attempted
4 transfer—of only approximately 10% of their trial exhibits—was made <u>four days after</u> the
5 Court's ordered deadline. (Id. at 4:19-5:3.) It is no excuse for their failure to provide
6 Defendants copies of their trial exhibits by September 5, 2014. Indeed, their excuse
7 initially was that they did not think they needed to provide copies, and when Defendants
8 demanded copies they said it was too much work to produce. Moreover, there would have
9 been no technical issues had Plaintiffs provided Defendants copies of their exhibits on
10 September 5 during the exchange meeting, a time when Defendants could have viewed
11 and ensured access to all of the exhibits.

**B.  Defendants Are, and Continue to Be, Prejudiced by Plaintiffs' Failure to Comply With the Court's Order.**

Plaintiffs invoke defenses of substantial compliance, good faith, harmlessness, and lack of prejudice or surprise, relying on Rule 37(c)-sanction cases for violations of "discovery deadline[s]." (Doc. 1113 at 5, 9-10.) None of these apply. The Court's July 3 Order provides the sanction—exclusion of all trial exhibits not exchanged by September 5, 2014—and it is self-executing and automatic. (Doc. 995, ¶ 10.) Plaintiffs contend that the sanction is "unreasonable." (Doc. 1113 at 9:3.) Judge Wake apparently believes that it is entirely reasonable and warranted, as it is a standard provision in his order setting final pretrial conference. *See* http://www.azd.uscourts.gov/sites/default/files/judge-orders/NVW_%20Ord%20set%20FPTC%20-%20CV.pdf. In fact, *every* district court judge in this District that has a standard order setting final pretrial conference includes this

---

Pretrial Order, their trial exhibits in groups according to subjects of proof and without duplication, those are requirements separate and apart from the Court's order to exchange copies of trial exhibits. (Doc. 995, ¶¶ 5, 10(b).) Of course, an exhibit list is helpful to accomplish that goal, but, as discussed in Defendants' Motion and below, the exchange of trial exhibits serves a much different purpose—the objection, verification, and redaction of evidence to be admitted at trial—which cannot be accomplished with merely a list. Plaintiffs obviously do not stand by their Order interpretation any longer, as they "immediately began the process of printing documents to transferable media" after Defendants directed them to the Order. (Doc. 1113 at 4:10-13.)

provision and self-executing sanction. *See* http://www.azd.uscourts.gov/judges/judges-orders. Clearly, this is a thoughtful and appropriate sanction.

Nevertheless, their defenses are empty. Plaintiffs' counsel contends that their failure to comply was harmless and did not prejudice Defendants because: (1) Defendants had "access" to "the vast majority" of their trial exhibits on September 5; and (2) their noncompliance has been "entirely remedied."

### 1. Plaintiffs' failure to provide copies of their trial exhibits on September 5 has prejudiced Defendants to an extreme degree.

That is not hyperbole; it is a fact. The parties had only 14 days to review each other's trial exhibits and make necessary redactions, stipulations, and objections. Defendants provided Plaintiffs their trial exhibits on September 5, affording them the full 14 days to review, redact, stipulate and/or object to Defendants' exhibits. Plaintiffs provided Defendants nothing, even after promising they would send their exhibits later that day. Because Plaintiffs have more than 3,800 trial exhibits comprising at least 269,539 pages of documents (the equivalent of 90 full Bankers Boxes®) (Ex. 2, ¶ 14), each one of those 14 days was critical to complete this process, and if it is not completed by September 19, Defendants have waived their redactions and objections, which will result in the admission of otherwise inadmissible adverse evidence at trial (and an extended trial) and possibly harm to ADC staff and inmates due to the public release of sensitive security information. It also deprives Defendants valuable time to review Plaintiffs' exhibits and prepare their defense. The actual prejudice that Plaintiffs' noncompliance has and will cause is supported by the fact that it has compelled nearly every district court judge in this District to require exclusion of trial exhibits not timely exchanged.

Plaintiffs argue that their noncompliance was harmless because Defendants already had in their possession the "vast majority" of the documents through discovery and Plaintiffs gave them an exhibit list to help find them. First, if this was a valid argument it would render meaningless the Court's order requiring the parties to exchange copies of

3

trial exhibits by a set deadline. There would be no reason to exchange copies because every trial exhibit is presumably in both parties' possession because only timely disclosed discovery documents may be used as trial exhibits. As discussed above, Plaintiffs were required to provide Defendants copies of their trial exhibits for good reason.

Second, merely providing an exhibit list shifts an extraordinary burden onto Defendants, as they would have to take the time to go through each of their identified 3,800 exhibit entries on Plaintiffs' list, find that document on Defendants' system, remove and organize the documents, and compile a separate exhibit file. Indeed, Plaintiffs admit in their Response that they themselves did not do this because "[t]he task of finding and marking over 3,800 files for printing to PDF then transferring files to other media would take several days." (Doc. 1113 at 4:2-3.) They are blatantly shifting their burden onto Defendants because it is too burdensome for them, and then telling the Court that Defendants could have easily done it themselves. The July 3 Order contemplated that Defendants would be able to walk out of the September 5 meeting with copies of Plaintiffs' trial exhibits in hand so that they could immediately begin their review process. Instead, they got a list that required them to waste valuable days locating documents that were "reviewed or discussed in some capacity" (id. at 7:3) during the pendency of this 2 ½ year litigation before they could even start that process, and incurred the opportunity cost of not being able to complete the other portions required for submission of a Proposed Final Pretrial Order.

Third, even with documents in their possession and an exhibit list with bates numbers, Defendants have no way to insure that the documents Plaintiffs intend to introduce at trial as exhibits have not been modified or altered in any way. Plaintiffs ignore this prejudice entirely.

Fourth, even Plaintiffs admit that Defendants do not have all of Plaintiffs' trial exhibits in their possession (by their count, approximately 235 exhibits), requiring

Defendants' counsel to spend even *more* time locating and copying these documents before they can begin their review, redaction, and objection process.[3]

The net effect of Plaintiffs' failure to timely provide copies of their trial exhibits is the loss of critical time for Defendants to prepare a thorough and adequate defense. That results in the denial of a fair trial and due process of law. Plaintiffs attempt to minimize the amount of time needed to review, redact, and object, but they are simply wrong. True, non-relevant security information was redacted prior to disclosure, but there is still relevant security information that was not redacted because it is relevant to the claims and defenses at issue. Plaintiffs' speculation that "medical records, reports by ADC and its contractors, and emails about healthcare" "likely" do not contain security information that must be redacted does not relieve ADC of its duty to ensure that there is no information that, if released to the public, could jeopardize the safety and security of its facilities, staff, and inmates. Every page must be reviewed, as safety is paramount. Finally, Plaintiffs' contention that Defendants could have started objecting to Plaintiffs' exhibits based on their exhibit list is baffling. Defendants cannot review documents for alterations without having the documents. They cannot ensure that a document is complete (when no bates range is provided in the list) without having the documents. And they cannot make redactions to an exhibit without having the documents.[4]

---

[3] Plaintiffs do not dispute the incompleteness of their original exhibit list (Doc. 1109 at 6:17-7:5), that makes it impossible to ascertain certain exhibits, and in fact it prompted them to issue a revised exhibit list on September 11, 2014, six days after the exchange deadline. They also incorrectly assert that some of the documents on their list are easily retrievable by Defendants. For example, on page 25 of Plaintiffs' exhibit list (Doc. 1115-1 at 16, 57), Plaintiffs list "Inmate Records from 'Inmate Datasearch' webpage" for eight different inmates. These documents do not have a production number listed and were not provided in the materials transmitted by Plaintiffs' counsel. Furthermore, Plaintiffs did not identify when these reports were generated or whether they are the "quick info" or "full info" reports for the specified inmates. Thus, Plaintiffs' description fails to identify exactly what they intend to introduce into evidence, which precludes Defendants from being able to consider a potential stipulation, or identify specific objections.

[4] Plaintiffs contend that Defendants cannot claim surprise by any of their trial exhibits because they presumably have them somewhere. Defendants are surprised that, even after putting Plaintiffs on notice with their Motions in Limine, Plaintiffs' exhibit list reveals that they still intend on introducing exhibits that were not properly disclosed.

### 2. Plaintiffs Have Not Remedied the Situation.

Plaintiffs contend that Defendants are no longer prejudiced because they "delivered a full set of copies of all their exhibits Wednesday afternoon." (Doc. 1113 at 2:12-13.) Even if we assume that this is true—i.e., Plaintiffs delivered to Defendants a complete, accessible, and organized set of their trial exhibits—it does not erase the prejudice already incurred. This delivery occurred at 4:00 p.m. on September 10, 2014, five days after they were due.[5] That is five days lost, more than a third of the time afforded for the review process, and time Defendants cannot get back. More importantly, Plaintiffs still have not provided Defendants with a set of trial exhibits that allows them to begin their review process.

A courier delivered a hard drive at Defendants' counsel's office at approximately 4:00 p.m. on Wednesday, September 10, 2014. (Ex. 2, ¶ 10; Ex. 3; Ex. 4.) The hard drive contained 17,837 files, far more than the 4,000 files that Plaintiffs' counsel initially stated comprised all of their trial exhibits. (Id., ¶ 12.) Of those files, 12,508 files are one-page PDF documents. (Id., ¶ 14.) Since Plaintiffs have informed that they have only approximately 3,800 trial exhibits, Defendants are left to figure out which one-page PDF files comprise a single exhibit. The PDF file names do not reference an exhibit number or an identifier on their exhibit list, and bates ranges included in the PDF file name do not correspond to bates ranges of a particular exhibit on their list. (Id., ¶¶ 12, 14, 16, 17, 19.) Thus, Defendants cannot simply word search the bates range to find the exhibit. The PDF files also do not correspond to the order of exhibits on their exhibit list. (Id.) Essentially, Plaintiffs have dumped 269,000 pieces of paper in Defendants' lap. This is an unacceptable practice. Defendants estimate that it will take approximately 200 hours to go through the files and link them to a described exhibit on Plaintiffs' exhibit list. (Id., ¶ 23.) Defendants cannot begin their review process until that is done.[6]

---

[5] Plaintiffs incompletely assert that the hard drive was "couriered to Defendants at 2:40 p.m." and are simply wrong in asserting that it was only "four days (two of which were business days)" late. (Doc. 1113 at 5:4, 8:10-11.)

[6] As just one example, Defendants identified a 2,300-page document on Plaintiffs'

6

This data dump—which Plaintiffs held out as being everything to the Court—was not everything. On September 11, 2014, at 2:47 p.m., Plaintiffs' counsel electronically sent Defendants' counsel additional trial exhibits. (Ex. 5.) This raises yet another issue. By ignoring the Court's September 5 deadline, Plaintiffs are submitting trial exhibits on a rolling basis after that deadline without consequence. Plaintiffs originally stated that they had approximately 3,500 exhibits. Their Response, filed after their September 10 data dump, informed that they had more than 3,800 Exhibits. And the number of exhibits continued to grow on September 11.[7] Plaintiffs' failure to comply with the Court's order, and their continued refusal to provide Defendants an accessible and organized set of documents has derailed Defendants' trial preparation and their ability to meet existing deadlines. Plaintiffs cannot plausibly contend that they are acting in good faith.

### C.     Plaintiffs Should Be Precluded From Introducing Any Trial Exhibits.

As discussed above, the sanction is automatic and self-executing. The Court's Order provides all the authority needed. Plaintiffs' factual distinction of cases cited by Defendants is irrelevant because Defendants cited those cases for the indisputable legal proposition that district courts have control over their dockets, and that a pretrial order is one way to maintain control. Plaintiffs' public policy argument—that this case involves constitutional issues and has been pending for 2 ½ years—is also unavailing. It is contrary to public policy to proceed to trial against a defendant when the plaintiff has

---

exhibit list that seemingly suggests a stipulation to its admissibility—a named Plaintiffs' medical record. (Ex. 2, ¶¶ 17-18.) The exhibit list identifies 21 ranges of bates numbers for that document. (Id.) Defendants' counsel searched Plaintiffs' hard drive for these bates ranges; however, many of those bates ranges (more than 1,000 pages) do not exist on the hard drive. (Id.) Of the approximately 900 pages Defendants were actually able to locate for this document, nearly a third of them are not properly part of the exhibit as described, and the remaining 600 pages needed to be combined from more than 450 separate PDF files. (Id.) Since more than 1,000 pages of this single exhibit are not on the hard drive, Defendants are unable to ascertain exactly how many more pages in addition to the 269,000 provided, remain outstanding across all of the exhibits mentions on Plaintiffs' list.

[7] Just before the filing of this Reply, Plaintiffs' counsel informed that they have reduced their number of trial exhibits. Defendants' counsel are still in the process of comparing Plaintiffs' latest exhibit list with their original exhibit list. But Defendants still cannot fully verify anything without actual copies of their trial exhibits.

intentionally deprived them the opportunity to defend themselves. Whether by blunder or disdain for the Court's Order, no public policy requires the Court to ignore Plaintiffs' counsel's deliberate refusal to comply with a Court Order to save their case. Plaintiffs' contention that a preclusion sanction would be "crippling" is undermined by their argument that many of their exhibits are duplicative of Defendants' exhibits.[8] Nonetheless, Plaintiffs do not proffer a less intrusive sanction; they want no sanctions for their violation. The preclusion of Plaintiffs' trial exhibits is the least intrusive sanction and it should be imposed here. Even if Plaintiffs provided Defendants a complete and organized set of trial exhibits that match their revised exhibit list today, it would be impossible for Defendants to complete their review process by the September 19 deadline.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[8] Plaintiffs' counsel were sticklers for the expert testimony deadlines and successfully moved to preclude Defendants from introducing certain expert testimony, despite the fact that Defendants argued they would not be prejudiced by the untimely disclosure back in March 2014. (Doc. 753, 794, 797, 815, 826, 832, 839, 848.) Plaintiffs also criticize Defendants for failing to include certain information in their draft of the Proposed Final Pretrial Order ("PFPO"). (Doc. 1113 at 2 n.1.) But the draft was just that—a draft—and it was timely submitted. The deadline to file a completed PFPO is September 19, 2014.

DATED this 12th day of September 2014.

STRUCK WIENEKE & LOVE, P.L.C.


By /s/ Daniel P. Struck
   Daniel P. Struck
   Kathleen L. Wieneke
   Rachel Love
   Timothy J. Bojanowski
   Nicholas D. Acedo
   Ashlee B. Fletcher
   Anne M. Orcutt
   Jacob B. Lee
   STRUCK WIENEKE & LOVE, P.L.C.
   3100 West Ray Road, Suite 300
   Chandler, Arizona 85226

   Arizona Attorney General Thomas C. Horne
   Office of the Attorney General
   Michael E. Gottfried
   Lucy M. Rand
   Assistant Attorneys General
   1275 W. Washington Street
   Phoenix, Arizona 85007-2926

   *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Ajmel Quereshi: | aquereshi@npp-aclu.org |
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amir Q. Amiri: | aamiri@jonesday.com; ttualaulelei@jonesday.com |
| Amy Fettig: | afettig@npp-aclu.org |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| Daniel Joseph Pochoda: | dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org |
| Dara Levinson: | daralevinson@jonesday.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| James Duff Lyall: | jlyall@acluaz.org; gtorres@acluaz.org |
| James M. Jellison: | jim@jellisonlaw.com; cindy@schleierlaw.com; kasey@jellisonlaw.com |
| Jennifer K. Messina: | jkmessina@jonesday.com |
| Jerica Lynn Peters: | jpeters@perkinscoie.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kamilla Mamedova: | kmamedova@jonesday.com |

| | | |
|---|---|---|
| Kevin C. Brantley: | kbrantley@jonesday.com | |
| Kirstin T. Eidenbach: | keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; docketphx@perkinscoie.com | |
| Matthew Benjamin de Mee: | mdumee@perkinscoie.com; cwendt@perkinscoie.com | |
| Sara Norman: | snorman@prisonlaw.com | |
| Sarah Eve Kader: | skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org | |
| Taylor Freeman: | tfreeman@jonesday.com | |
| Warren E. George, Jr.: | wgeorge@prisonlaw.com | |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ Daniel P. Struck