Daniel Pochoda (Bar No. 021979)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email: dpochoda@acluaz.org
        jlyall@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Varma (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email: skader@azdisabilitylaw.org
        avarma@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-DJH |
| Plaintiffs, | **PLAINTIFFS' RESPONSES IN OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE** |
| v. | **[REDACTED]** |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

**Plaintiffs' Response in Opposition to Defendants' Motion in Limine No. 1:**

**Preclude Any Exhibits that Plaintiffs Have Not Previously Disclosed.**

The documents that Defendants seek to strike are largely documents they themselves produced in the course of this litigation.  This has absolutely no basis in the Federal Rules of Civil Procedure.  This is not a case where Plaintiffs squirreled away key documents and later tried to use them at trial, without first producing them during discovery.  That is the situation in the cases Defendants cite, which is why those cases have no application here.

Defendants are laboring under the misconception that every anticipated trial exhibit must be included in an amendment to the Initial Disclosure Statement.  That is why they have opted to amend theirs 22 times.  [*See* Doc. 1110]  But nothing in Rule 26 requires that, and Plaintiffs' decision not to follow suit with a score of supplemental initial disclosures is not a bar to the introduction of exhibits at trial.  Rule 26(e), which covers supplementation of both initial disclosures and discovery provides for supplementation "**if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.**"

Because all of the exhibits Plaintiffs have listed in their pretrial exhibit list have been made known through such a process, mostly through Defendants' own production of the documents, Plaintiffs were not required to amend the initial disclosure statement to list each individual document.  Court after court has refused to exclude documents produced during discovery for this very reason, because Rule 26(e) is satisfied where information is produced in writing or "otherwise made known to the parties."  *See Westefer v. Snyder*, 422 F.3d 570, 584 (7th Cir. 2005) (finding that affidavits filed in connection with summary judgment were sufficient to apprise defendant of new theory of case, such that supplementation pursuant to Rule 26(e) unnecessary); *EEOC v. Lennar Homes of Ariz., Inc.*, No. 03-cv-1827, 2006 WL 1734594, *3 (D. Ariz. June 23, 2006) (finding that damages computations contained in expert reports were sufficient to discharge duty to supplement initial disclosures pursuant to Rule 26(e)); *Parra v. Bashas', Inc.*, No. 02-cv-

0591, 2005 WL 6182338, *11 (D. Ariz. Aug. 29, 2005) (holding no duty to supplement under Rule 26(e) where information was produced to opposing party, albeit in different form than what was introduced at trial, noting that "disclosure of the information in any form put Plaintiffs on notice of what evidence and documents Defendants intended to rely upon in this matter."), *rev'd on other grounds,* 536 F.3d 975 (9th Cir. 2008).

## A.   PLAINTIFFS HAVE NOT FAILED TO MAKE DISCLOSURES REQUIRED BY THE FEDERAL RULES OF CIVIL PROCEDURE.

Defendants are confused about the three types of disclosures required by Rule 26: (1) initial disclosures; (2) pretrial disclosures; and (3) the duty to supplement discovery responses.   Defendants' motion is based on Rule 26(a)(1), which relates to initial disclosures.   These disclosures are required even *before* the beginning of the discovery period to alert the opposing party to the basis of the claims and defenses relevant in the action.   Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii).   As such, they simply do not apply to the present situation.

Citing the inapplicable initial disclosure rule, Defendants complain that Plaintiffs have not identified with particularity each of the exhibits Plaintiffs intend to use at trial. But Rule 26(a)(1) contains no such requirement.   Instead, it is intended to "accelerate the exchange of basic information about the case" at the outset of litigation.   *See* Fed. R. Civ. P. 26 advisory committee's note (1993 amendments, subdivision (a)).   Because discovery follows initial disclosures and because parties are deemed to have notice of what is produced, there is "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition." *See* Fed. R. Civ. P. 26 advisory committee's note (1993 amendments, subdivision (3)).   In other words, production in discovery *is* the disclosure.

The particular descriptions Defendants seek are required, but not until the pretrial disclosure statement. Fed. R. Civ. P. 26(a)(3).   Pretrial disclosures require that a party list each of the witnesses and exhibits on which it intends to rely at trial.   Fed. R. Civ. P.

26(a)(3)(A)(i)-(iii).   Indeed, unlike Defendants' motion, the pretrial disclosure is the subject of this Court's recent order.  [*See* Doc. 1126]

Defendants cite cases that are not applicable to the facts here because they involve a party who either failed to produce evidence during the discovery period or concealed evidence known to it until the final pretrial conference.  *See, e.g., Melczer v. UNUM Life Ins. Co.*, 259 F.R.D 433, 434 (D. Ariz. 2009) (Undisputed that as of the close of discovery the "Defendants had copies of the [contested evidence] and were aware of their relevance at this time, [but] provided neither the documents themselves nor a written description of the documents to Plaintiffs.").[1]  Defendants do not claim that Plaintiffs have hidden any evidence.  To the contrary, the very language with which they take issue in Plaintiffs' supplemental disclosure makes clear that only disclosed evidence will be used at trial.

Accordingly, Defendants' complaint that the amended disclosure statement is inadequate misses the mark.  What Defendants describe as "vague" and "generic"[2] is language that deliberately tracks the language of Rule 26(e), and confirms that the documents Plaintiffs intend to rely on are precisely the type that Rule 26(e) deems Defendants to have notice of.  In short, Plaintiffs are in full compliance with their disclosure obligations.  *See AFL Telecomm., LLC v. SurpluseEQ.com Inc.*, 946 F. Supp. 2d. 928, 945 (D. Ariz. 2013) (no requirement to supplement disclosures where the

---

[1] *See also Johnson v. United Parcel Service*, 236 F.R.D. 376, 377 (2006) (Plaintiffs presented over 100 documents at the final pretrial conference "relating to events that occurred … since the close of discovery"); *McCollum v. UPS Ground Freight Inc.*, 2013 WL 105225 at *2 (D. Ariz. Jan. 9, 2013) (Defendants failure to disclose the identity of a witness until the eve of trial despite having "known from the beginning of this case that [such] a witness…may be used to support their defense).

[2] *See* Doc. 1100 at 1:7 and 1:17.  Compare Fed. R. Civ. Proc. 26(e) with the language from Plaintiffs' Supplemental Disclosure:

"The discovery period in this matter has largely closed and the record has largely closed and the record is nearly complete.  Defendants have been furnished with copies and/or descriptions by category and location of all documents, electronically stored information, and tangible things that Plaintiffs may use to support their claims.  This includes all documents, electronically stored information, and tangible things disclosed in Plaintiffs' previous disclosure statements, as well as all documents, electronically stored information and tangible things made known to Defendants during the pendency of this litigation, consistent with the requirements of Federal Rule of Civil Procedure 26, including all information included in productions by the parties and third parties, and all information made known to defendants in all other writings in this proceeding."

1   additional information "'has been made known to the other parties during the discovery

2   process or in writing.'" (quoting Fed. R. Civ. P. 26(e)).

3   **B.    DEFENDANTS MISCONSTRUE PLAINTIFFS' SUPPLEMENTAL**

4   **DISCLOSURE AS A PRETRIAL DISCLOSURE.**

5          Defendants complain that Plaintiffs "obviously intend to rely on exhibits at trial

6   that also have not been specifically identified and disclosed in accordance with Fed. R.

7   Civ. P. 26, under the guise of this catch-all statement." [Doc. 1100 at 1:20-22]  Plaintiffs

8   intend no such thing.  More importantly, Rule 26 does not require that trial exhibits be

9   "specifically identified" until the pretrial disclosure statement, due 30 days before trial

10  (unless otherwise ordered by the Court).  *See generally* Fed. R Civ. P. 26(a)(3).  Here, the

11  pretrial disclosure statement is due this Friday, September 19, 2014, and Plaintiffs intend

12  to fully comply with its requirements.   Defendants' own cases make the distinction

13  between initial and pretrial disclosures clear.  *See Johnson*, 236 F.R.D. at 377 ("Closer to

14  trial, Rule 26 also requires disclosure of the names and contact information of all

15  witnesses and identification of all documents or exhibits that will be offered at trial.")

16  (citing Fed. R. Civ. P. 26(a)(3)(A)).   Nevertheless, Defendants have filed their Motion,

17  conflating  the  pretrial  requirements  of  Rule  26(a)(3)  with  the  initial  disclosure

18  requirements of Rule 26(a)(1).

19         Though  Defendants  have  filed  nearly  two  dozen  lengthy  initial  disclosure

20  statements during the course of this litigation, listing each individual document they may

21  rely on, such voluminous disclosures are not required by the Federal Rules.  Plaintiffs

22  should not be punished for choosing to hew to the requirements of the Rules.  Pursuant to

23  this Court's order that the parties exchange draft pretrial orders and exhibit lists, Plaintiffs

24  provided Defendants with their exhibit list that identifies each document Plaintiffs intend

25  to rely on at trial and the parties have been comparing exhibit lists since September 5,

26  2014, attempting to de-duplicate those lists.  Any objection should be directed to the

27

28

pretrial exhibit lists the parties have exchanged, not initial disclosures and supplements thereto.

For these reasons, Defendants' Motion in Limine No. 1 should be denied.

**Plaintiffs' Response in Opposition to Defendants' Motion in Limine No. 2:**

**Preclude Unidentified Witnesses, Inadequately Disclosed Witnesses, Witnesses Who**

**Lack First-Hand Knowledge, and Untimely Disclosed Witnesses.**

This motion, which seeks to preclude Plaintiffs from calling eleven witnesses,[3] is infected with the same misunderstanding of a party's disclosure obligations under Rule 26 as Defendants' first motion.  Namely, Defendants appear to believe the only way to disclose a lay witness is to name that witness in some variant of the Initial Disclosure Statement.  That simply is not the law.  Indeed, the Advisory Committee notes make this plain:

> There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, *as when a witness not previously disclosed is identified during the taking of a deposition . . .*

Fed. R. Civ. P. advisory committee's note (1993 amendments, subdivision (e)) (emphasis added).  As shown below, all of the witnesses Defendants seek to exclude were made known to them and none of them should be stricken.

**A.    PLAINTIFFS SATISFACTORILY IDENTIFIED AND TIMELY DISCLOSED ALL WITNESSES THEY INTEND TO RELY ON AT TRIAL.**

Defendants first contend that various categories of witnesses referenced in Plaintiffs' initial disclosure statements should be precluded, apparently on a blanket basis.  Their attack is directed at categorical descriptions of the individuals who provide health care and other services that are the subject of this litigation.  These disclosures were made by category, because when Plaintiffs made the disclosure, they did not know each individual's name.  In the course of the litigation, such individuals were identified.  But Defendants do not tie their request to Plaintiffs' witness list for trial and give the Court no

---

[3]  The motion is directed at several other witnesses as well, but only 11 appear on Plaintiffs' witness list.  [*See* Declaration of Caroline N. Mitchell in Support of Plaintiffs' Opposition to Defendants' Motions in Limine ("Mitchell Decl."), Ex. 3]  Thus, the motion is moot as to the remaining individuals.

tools to determine whether individuals who happen to fall into these categories were adequately disclosed within the meaning of Rule 26.[4]

The eleven actual individuals who Defendants seek to strike illustrate the flaw in Defendants' motion:

1.   ███████████:

Not only did Defendants have adequate notice of ███████████, **they subpoenaed her**.  [*See* Doc. 610]  A witness who is subpoenaed by a party is, by definition, "known to the parties."  Fed. R. Civ. P. Adv. Committee Notes (1993 Amendments, subdivision (e)).  Federal Rule of Civil Procedure 26 requires nothing more, nor did Judge Wake impose any order requiring additional disclosures beyond those required by Rule 26.  To strike Ms. ████ as undisclosed would be error under these circumstances.  Plaintiffs' witness list discloses the full substance of her expected testimony.  Thus, Plaintiffs have complied with the pretrial disclosure requirements of Rule 26(a)(3).  The witness list summarizes her testimony as follows:

> Ms. ████ will testify regarding the delays in deficiencies in medical care provided to her husband, plaintiff ██████████ from 2009 through April 1, 2014, placing him at substantial risk of serious harm.  Specifically, Ms. ████ will testify regarding her efforts and interactions with ADC staff to have him provided care, and her efforts to ensure that he had an adequate supply of catheters.

[Mitchell Decl., Ex. 3 at 4]  This summary addresses Defendants' complaints:  it contains specific dates, details what aspects of the prisoner's healthcare the witness will testify to,

---

[4]  Defendants cite *Smith v. Pfizer, Inc.*, 265 F.R.D. 278, 283 (M.D. Tenn. 2010) for the proposition that "broad, generic lists of categories of witnesses do not satisfy the disclosure requirements of Rule 26" and that "It is insufficient to identify witnesses through the use of a collective description, such as 'employees or representatives of the defendant.'" Mot. at 4.  Defendants fail to draw the Court's attention to the ultimate holding in the *Pfizer* case.  The court there reasoned that the categorical listing of employees was harmless because "defendants [] have knowledge regarding the information possessed by their own employees and representatives." *Id.* at 284 (declining to preclude those employee witnesses that were listed by category from testifying).

1   and establishes that the testimony is based on personal knowledge.  Defendants' objection

2   regarding inadequate disclosure and personal knowledge has no basis in fact or law.

3         Initial disclosures are just that, initial.  Such disclosures are "not witness lists for

4   trial."  *El Camino Res., Ltd. v. Huntingon Nat'l Bank*, Case No. 1:07-cv-598, 2009 WL

5   1228680, *3 (W.D. Mich. Apr. 30, 2009).  The "identification of testifying witnesses at

6   trial" is not the function of initial disclosures.  *Id.*  Rather, "the purpose of Rule 26(a)(1)

7   initial disclosures 'is to give the opposing party information as to the identification and

8   location of persons with knowledge, so that they can be contacted in connection with the

9   litigation....'"  *Id.* (*quoting Biltrite Corp. v. World Road Markings, Inc.*, 202 F.R.D. 359,

10  362 (D. Mass. 2001)).  Here, Plaintiffs' disclosure statements gave Defendants such

11  notice.  [*See* Mitchell Decl., Ex. 1 at 15, Ex. 2 at 24; Doc. 1100, Ex. A at 25, Ex. B at 24]

12  A more complete narrative of Ms. ███████  testimony is not required in an initial

13  disclosure statement and Plaintiffs' pretrial disclosure statement provides the level of

14  detail necessary to satisfy Plaintiffs' obligations under Rule 26(a)(3).  [*See* Mitchell Decl.,

15  Ex. 3 at 4]

16        2.   ████████████████████████████████████████████

17

18        Defendants claim that these witnesses were not disclosed prior to the close of

19  discovery and thus should be precluded from trial.[5]  The argument fails, however, because

20  each of these witnesses was previously disclosed before the applicable discovery period

21  closed.

22        For example, Mr. ███████ was disclosed in Dr. Robert Cohen's Rule 26(a)(2)(B)

23  expert disclosure, dated November 8, 2013.  [*See* Doc. 1104, Ex. 1 ¶ 77, App. C ¶¶ 50-51]

24  Dr. Cohen's report analyzes Mr. ███████  medical treatment at length, opining on the

25  substandard care Mr. ███████ received from the ADC.  [*See id*].  Such disclosure is

26

27        [5] Defendants do not explain how their argument squares with the fact that scores
    of witnesses they placed on their draft witness list were never disclosed to Plaintiffs
28  during discovery.

sufficient to put Defendants on notice "as to the identification and location of persons with knowledge, so that they can be contacted in connection with the litigation. . . ." *Biltrite Corp.*, 202 F.R.D. at 362.

Similarly, Dr. Todd Wilcox's Rule 26(a)(2)(B) expert disclosure addresses the level of healthcare Mr. ███████ and Mr. ██████ received as prisoners in the ADC [*see* Doc. 1104, Ex. 4 at 4, 51, 55-57, 83, Appx. C], and Dr. Haney's Rule 26(a)(2)(B) disclosure emphasizes the treatment of ████ [*see* Doc. 1104, Ex. 17 ¶¶ 99-100] and ██████ [*see id.* ¶¶ 101-102, 105-106, Appx. C].[6]

Witnesses ████████ and ████████ relevance were disclosed to defendants in the course of discovery as well.  Both are listed in Eldon Vail's 26(a)(2)(B) expert disclosure, [*see* Doc. 1104, Ex. 14 at Ex. 2, p. 5] and Defendants were notified of Mr. Vail's intent to interview Ms. ██████ on July 16, 2013 [*see* Mitchell Decl., Ex. 5].  Finally witness ██████ was interviewed by Dr. Haney during his Rule 26(b) prison inspection.  [Mitchell Decl. ¶ 14]  Because this interview was conducted in the presence of Defense counsel, they learned of Mr. ██████ relevancy *at the same time* as Plaintiffs.

Because the identify of these witnesses was made known to Defendants during the course of discovery and/or disclosed in writing, there is no Rule 26(e) requirement that Plaintiffs supplement the disclosure.  *See AFL Telecomm., LLC v. SurpluseEQ.com Inc.*, 946 F. Supp. 2d 928, 945 (D. Ariz. 2013).  Defendants had sufficient notice to depose them or seek other methods of discovery.  Indeed, the fact that Plaintiffs' expert witnesses focused on the medical files of several of these witnesses was a strong signal to Defendants of the relevance of any testimony the witnesses may provide.  Defendants' choice to not pursue discovery regarding these witnesses is not grounds for precluding them from testifying.

For these reasons, Defendants' Motion in Limine No. 2 should be denied.

---

[6] Additionally, Defendants were informed that Dr. Haney would interview these witnesses by letter, dated July 15, 2013.  [Mitchell Decl., Ex. 4]

**Plaintiffs' Response in Opposition to Defendants' Motion in Limine No. 3:**

**Preclude Wexford PowerPoint Presentation and Associated Testimony.**

Defendants seek to prevent this Court from reviewing a highly reliable internal document that details significant systemic failures in the ADC healthcare system, the 2012 "Wexford PowerPoint Presentation" [Doc. 593, Ex. 2].

Defendants concede that the Wexford PowerPoint was authored by Wexford officials and medical leadership in 2012, at a time when Wexford had "t[aken] over the provision of health services at ADC." [Doc. 1100 at 8]  The PowerPoint presentation analyzes discrete elements of Defendants' healthcare system and reports—from the insider perspective of the people actually providing healthcare in the prisons—serious systemwide inadequacies.

The PowerPoint identifies a lack of "proper intake screening process," such that prisoners were not even being screened or treated for the highly infectious disease Tuberculosis.  [Doc. 593, Ex. 2 at WEXFORD 000023-25]  It explains that "ADC failed to maintain and provide appropriate medical records – a vital instrument of health care," and cites prisons that were "months to years behind in filing inmate medical records" or where "[m]edical records were disorganized" and lacked crucial documents, such as hospital discharge records.  [*Id.* at WEXFORD 000027]

The PowerPoint describes how ADC "failed to comply" with basic standards for chronic care, including by failing to "properly monitor" or treat Hepatitis C, and "incorrect dosing of medications, inappropriate medication combinations," and other problems that place prisoners "at risk for med-resistant HIV."  [*Id.* at WEXFORD 000029-30, 000033, 000035]

The PowerPoint reports that prisoners coming back from hospitalizations do not receive proper care; some who "should have been returned to an infirmary/health care unit ended up back in their cells."  [*Id.* at WEXFORD 000037]

The PowerPoint also identified a "backlog of thousands of authorized-but-not completed consultations [with offsite specialists] dating back to 2008."  [*Id.* at

1   WEXFORD 000040]   One prisoner "had a May 2012 CT that showed a lymphoma;

2   patient receive no [follow up] care until Wexford Health took over the contract in July."

3   [*Id.*]   In multiple other cases, "patients with abnormal chest x-rays had advanced studies

4   approved but never completed."   [*Id.*]

5          With respect to medication for psychiatric patients, the PowerPoint describes

6   inappropriate medication management practices that "increase[] the risk of suicide."   [*Id.*

7   at WEXFORD 000088]   It also describes inadequate monitoring of mental health patients

8   in segregated housing, stating that ADC failed to comply with an "essential standard" in

9   this respect.   [*Id.* at WEXFORD 000092]

10          The PowerPoint detailed systemwide failures to hire sufficient numbers of

11   healthcare staff, identifying an "excessive" number of vacancies and a high turnover.   [*Id.*

12   at WEXFORD 000103]   For the staff who were present, Wexford noted many were "poor

13   performers:   untrained, unmotivated, unengaged" who have "negative attitudes" and

14   explains that "ADC never held employees accountable for their poor work performance."

15   [*Id.* at WEXFORD 000110, 000125]   The PowerPoint describes how prison nurses in

16   particular are so poorly trained and supervised that they engaged in practices that Wexford

17   auditors found to be "unacceptable and extremely dangerous," such as medication

18   delivery practices for which "[a] nurse can lose his/her license."   [*Id.* at WEXFORD

19   000058-59]

20          Ultimately, the Wexford team determined, the ADC's healthcare system is

21   "broken" and the allegations contained in the complaint in this case are "accurate."

22   [Doc. 593, Ex. 1 at WEXFORD 000003]

23          The PowerPoint presentation was written by persons knowledgeable about the

24   quality of healthcare in Defendants' prison system.   As we explain below, the PowerPoint

25   presentation is a statement of Defendants' agent and a business record, and therefore falls

26   into two well-recognized exceptions to the hearsay rule.   It is also admissible for its

27   effects on Defendants; that is, to demonstrate that Defendants were made aware of the

28   alleged deficiencies in the healthcare system, a key component of the deliberate

indifference test. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (deliberate indifference analysis looks to whether an "official knows of and disregards an excessive risk to inmate health or safety"). There is no basis for keeping the PowerPoint out of the record in this bench trial.

The evidence already in the record establishes the admissibility of the PowerPoint. But even if it did not, Plaintiffs must be provided the opportunity at trial to call the necessary witnesses or obtain the testimony to establish admissibility.

> 1.   The PowerPoint is a Nonhearsay Statement of an Agent

The PowerPoint is admissible as the statement of Defendants' agent, Wexford. Defendants contend that Wexford "was not acting on ADC's behalf when it made the statements" and ADC "never agreed to the statements." [Doc. 1100 at 9] But that is not the standard—under Federal Rule of Evidence 801(d)(2)(D): "A statement that meets the following conditions is not hearsay: . . . The statement is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."

Under Rule 801(d)(2)(D), Wexford's PowerPoint is admissible against the Defendants *even if* Defendants did not specifically authorize the precise statement made, so long as "(1) [] there was an agency relationship between [Wexford] and [ADC]; (2) that [Wexford's] statements were made during the course of that relationship; and (3) [] the statements concerned matters within the scope of [Wexford's] agency." *See Hill v. Opus Corp*., 464 B.R. 361, 375 n.63 (C.D. Cal. 2011).

An agent is one who "act[s] on the principal's behalf and [is] subject to the principal's control." Restatement (Third) of Agency § 1.01 (2006). To form an agency relationship, both the principal and the agent must manifest assent to the principal's right to control the agent. *Id*.

The Ninth Circuit recently observed that "certain relationships [] *imply* an authority to speak on certain occasions." *United States v. Bonds,* 608 F.3d 495, 503 (9th Cir. 2010) (citing *Hanson v. Waller*, 888 F.2d 806, 814 (11th Cir. 1989) ("lawyers have implied

1   authority to speak outside of court on matters related to the litigation")).  Whether an

2   independent contractor such as Wexford is speaking as agent depends upon "'a fact-based

3   inquiry applying common law principles of agency.'"  *Bonds*, 608 F.3d at 504 (citing

4   *NLRB v. Friendly Cab Co., Inc.*, 512 F.3d 1090, 1096 (9th Cir. 2008)).  "The existence of

5   an agency relationship" is a matter that "must be proved by substantial evidence but not

6   by a preponderance of the evidence." *Hilao v. Estate of Marcos*, 103 F.3d 767, 775 (9th

7   Cir. 1996).

8           The evidence in this case demonstrates that Wexford was Defendants' agent for

9   purposes of providing prison healthcare and reporting on the quality of prison healthcare.

10          The relationship between Wexford and Defendants in this case was described by

11  the Ninth Circuit:

> Arizona law requires the Director of the ADC to "provide medical and health services" for the approximately 33,000 inmates in ten prison facilities who depend on the state for all basic needs. [] Ariz.Rev.Stat. Ann. § 31–201.01; see also *id.* at § 41–1604 (providing that "the director shall be responsible for the overall operations and policies for the department"). To satisfy the duty imposed by statute on its director, ADC has promulgated extensive statewide policies governing health care and conditions of confinement that apply to all of the inmates in its custody, all of its staff, and all of its facilities. []

> Since July 2012, ADC has contracted with private entities to provide medical, dental, and mental-health care services to inmates. Specifically, ADC hired Wexford Health Services from July 1, 2012 through March 3, 2013, at which point it replaced Wexford with Corizon, Inc., its current partner. ADC's private contractors are required by the plain terms of their agreements to follow all ADC policies, and work with ADC to implement additional policies governing such matters as health care staffing, access to prescriptions, emergency care, and dental care. The contractors'' full compliance with statewide ADC policy is constantly monitored by ADC officials.

24  *Parsons v. Ryan*, 754 F.3d 657, 662 (9th Cir. 2014).

25          As this Court has held, the contract with Wexford did not "absolve" Defendant

26  Ryan of his "obligation to ensure the provision of medical care is constitutionally

27  adequate."  [Doc. 175 at 10] Rather, Defendants remain ultimately responsible "for any

28  constitutional deprivation that occurs" while Wexford is providing care. *Id.* (citing *West*

-13-

*v. Atkins*, 487 U.S. 42, 56 (1988) ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody").  To that end, Defendants' contract with Wexford required that Wexford report to ADC about the quality of prison healthcare, and Wexford did so.  [Mitchell Decl., Ex. 6 (Conn Dep.) at 137:9-14 (part of Wexford contract required "regular reporting by Wexford to the ADC concerning quality issues for the delivery of health care")]

In short, Defendants intended for Wexford to perform an essential function on Defendants' behalf.  By entering a contract whereby Wexford provides prison healthcare subject to Defendants' control, Defendants clearly manifested their intent to enter an agency relationship.

The PowerPoint presentation analyzing the quality of prison healthcare was plainly "within the scope" of that agency relationship.  Fed. R. Evid. 801(d)(2)(D).  Indeed, Wexford was contractually obligated to not only provide health care, but also to report to ADC about the quality of prison healthcare.  [Mitchell Decl., Ex. 6 (Conn Dep.) at 111:11-112:17; 137:9-14]

Defendants concede that the PowerPoint was created at a time when the relationship existed.  [Doc. 1100 at 8 (Wexford "took over the provision of health services at ADC on July 1, 2012" and that relationship terminated only *after* Wexford presented the PowerPoint to Defendants)]

Accordingly, all elements of the Rule 801(d)(2)(D) showing have been met:  the PowerPoint presentation is "offered against an opposing party" and was "made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  *Accord Howard v. Abdellatif*, 2008 WL 5411775, *4 (W.D. Mich. Dec. 23, 2008) (in case against jail, statements of independent contractor doctor admissible "as admissions under Rule 801(d)(2)(D)"); *see also Beck v. Haik*, 377 F.3d 624, 639-40 (6th Cir. 2004) (holding that a consultant's statements were admissible against a county defendant under FRE 801(d)(2)(D), and noting that "courts confronting similar factual situations have tended to hold contractors and advisors to fall within the 'agency'

relationship contemplated by [the rule]"), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009); *Globe Savings Bank, F.S.B. v. U.S.*, 61 Fed. Cl. 91, 94–95 (2004) (admitting deposition testimony of the former director of the Analysis and Evaluation Division of the Federal Savings and Loan Insurance Corporation under FRE 801(d)(2)(D)); *Coast Federal Bank, F.S.B. v. U.S.*, 48 Fed. Cl. 402, 448 (2000) (admitting reports from Goldman Sachs & Co. and plaintiff's external auditor as FRE 801(d)(2)(D) party admissions), *aff'd on reh'g en banc*, 323 F.3d 1035 (Fed. Cir. 2003).

        2.   <u>The PowerPoint is Admissible as a Business Record</u>

The PowerPoint presentation is also admissible as a business record. "A record of an act, event, condition, opinion, or diagnosis" is admissible pursuant to the business records exception to the hearsay rule if:

> (A)   the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B)   the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C)   making the record was a regular practice of that activity;
>
> (D)   all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E)   neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

The PowerPoint presentation meets all of these elements.

        (A)   The PowerPoint was drafted by persons with knowledge (high-level Wexford officials, including its Director of Operations, Corporate Medical Director, and others) at or around the time of the events discussed therein. [Mitchell Decl., Ex. 6 (Conn Dep.) at 29:17-30:24 (each Wexford employee who presented a section of the PowerPoint drafted that section); Doc. 593, Ex. 2 at WEXFORD 000005-6, 000015-20, 000050-52,

000076-77, 000081-82, 000100-101, 000121-122, (describing credentials of drafters of each section)]  The PowerPoint was drafted "based upon the experiences of the authors of each section" and based on standard audits regularly performed as part of the contract. [Mitchell Decl., Ex. 6 (Conn Dep.) at 154:2-155:25; Mitchell Decl., Ex. 7 (Fisher Dep.) at 96:10-20; Mitchell Decl., Ex. 9 (Mullenix Dep.) at 106:9-107:15]

(B) and (C)   The PowerPoint is a record kept in the course of Wexford's regularly conducted activity (reporting) [Mitchell Decl., Ex. 6 (Conn Dep.) at 154:8-155:7], and making reports on the quality of healthcare was a regular practice of Wexford under its contract with ADC.  [Mitchell Decl., Ex. 6 (Conn Dep.) at 137:9-14]

(D)   The witnesses who have already testified about the creation of the PowerPoint—Conn, Fisher, and Mullenix—are high level Wexford officials involved in drafting and delivering the PowerPoint, and are therefore qualified to testify about its preparation.  *Supra* at 15(A).

(E)   Neither the source of the document nor its method of preparation indicate a lack of trustworthiness.  Rather, the PowerPoint was created by the very people Defendants chose to run, and report about the quality of, healthcare, and was created based on the knowledge of Wexford's leading professionals and audits regularly conducted in the course of Wexford's contract with ADC.  *Supra* at 10, 15(A).

Accordingly, the testimony already given during depositions establishes that the PowerPoint is a business record admissible under Fed. R. Evid. 803(6).  Moreover, out of an abundance of caution, Plaintiffs also seek to call at trial Wexford's custodian of records, who can also testify that the PowerPoint is a business record.

Defendants baldly assert that they have had "no opportunity to cross-examine an identifiable declarant regarding the statements in the PowerPoint  . . ."  [Doc. 1100 at 10] But Defendants *did* cross examine Wexford's number two official, Daniel Conn [*see* Mitchell Decl., Ex. 6 (Conn Dep.) at 3-4 (index to examination)] and Wexford's Director of Operations Karen Mullenix, an author of the PowerPoint [*see* Mitchell Decl., Ex. 8 (Mullenix Dep.) 3-4 (index to examination)] and Wexford's Utilization Management

Medical Director Dr. Neil Fisher, another author of the PowerPoint [*see* Mitchell Decl., Ex. 7 (Fisher Dep.) at p. 2-3 (index to examination)].  Mr. Conn—and the PowerPoint itself—identified the names and titles of each of the other authors of the PowerPoint slides; Defendants simply chose not to depose them.

Defendants also claim that the PowerPoint contains "improper opinion testimony" [Doc. 1100 at 10], but Federal Rule of Evidence 803(6) specifically provides that business records may contain "[a] record of an act, event, condition, *opinion*, or diagnosis." (emphasis added).  *See also Pekelis v. Transcontinental & Western Air, Inc.*, 187 F.2d 122, 130 (2d Cir. 1951) *certiorari denied* 341 U.S. 951 (report of company accident investigation board admissible; opinions or conclusions in a business record are admissible if the subject matter calls for a professional opinion and is given by one with the required competence).  The Wexford contract—and the Governor's office—both required Wexford to report about the quality of healthcare.  By its very nature, a report about the quality of healthcare calls for a professional opinion.  Moreover, the persons who gave the opinions were high-level doctors, nurses and executives in charge of delivering, overseeing and monitoring care—the very individuals whom Defendants themselves chose to run the prison healthcare system.  Defendants can hardly claim that Wexford lacks competence to give opinions that Defendants *requested* they provide.

Defendants cast aspersions on the motives and competency of the authors of the PowerPoint, citing not to actual evidence but to "facts" that are actually Defendants' self-serving statement of "undisputed" facts in support of their failed summary judgment motion.  [Doc. 1100 at 8]  But while Defendants are free to argue at trial about the weight that should be given to the PowerPoint that they commissioned—or to any of its authors' opinions—they have failed to identify any factual or legal basis for *excluding* the document.  This will be a bench trial, and the Court is well-equipped to review the evidence and afford it whatever weight is appropriate in light of the totality of evidence that is presented at trial.  *See Harris v. Rivera*, 454 U.S. 339, 346-47 (1981) (per curiam)

(recognizing "well-established presumption" that in a bench trial "the judge [has] adhered to basic rules of procedure" and is equipped to disregard irrelevant or improper evidence).

### 3.   The PowerPoint is admissible for its Effect on Defendants

Not only is the PowerPoint fully admissible under Rules 801(d)(2)(D) and 803(6), it is also admissible to show the "effect on the listener." *United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991).  Defendants acknowledge that Wexford presented to them certain portions of the PowerPoint.  [Doc. 1100 at 8; *see also* Mitchell Decl., Ex. 9 (Gross Dep.) at 5:15-20, 28:12-29:8, 30:15-20 (ADC's Assistant director responsible for the Health Monitoring Bureau testifies that he recognizes PowerPoint presentation and that portions of it were presented by Wexford officials to ADC staff including defendants Ryan and Pratt); Mitchell Decl., Ex. 6 (Conn Dep.) at 20:21-22:6 (PowerPoint presented at meeting attended by Defendants Ryan and Pratt)]  This is critical, because the deliberate indifference analysis looks to whether an "official *knows of* and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837 (emphasis added). Accordingly, the fact that Defendants were put on notice of the problems stated in the PowerPoint is highly relevant to the case, and the PowerPoint is admissible to show its effect on the listener (Defendants).

### 4.   The PowerPoint Presentation is not Prejudicial (FRE 403)

Defendants' contention that the PowerPoint "is unfairly prejudicial" rests on their (false) assertion that they did not have an opportunity to cross-examine its creators. Defendants had that opportunity in the past during depositions of the authors of the PowerPoint, and, depending on which witnesses ultimately testify, they may be presented with another such opportunity at trial.

Defendants also claim that the PowerPoint is prejudicial because it includes opinions based on Plaintiffs' Complaint.  [Doc. 1100 at 10]  There is no evidence to support that assertion.  On its face, the PowerPoint *analyzes* the allegations in the Complaint and makes independent findings about their veracity, and the deposition

1   testimony shows that the findings in the report are based on the knowledge of Wexford's

2   health care team and their internal audits.  *Supra* at 10-11.[7]

3        The PowerPoint is highly relevant to the quality of care provided by Defendants,

4   and to Defendants' knowledge of serious deficiencies in the healthcare system, both issues

5   that are key to the Eighth Amendment claims in this case.  Its probative value therefore

6   vastly outweighs any speculative prejudice.

7        5.    Authenticity (FRE 901)

8        Defendants also raise an authenticity objection [Doc. 1100 at 11], but ignore that

9   Wexford's officials have already authenticated the document.   The document was

10  produced by Wexford pursuant to subpoena, and bears a Wexford bates-stamp.  Donald

11  Conn, Wexford's executive vice president and chief operating officer, authenticated the

12  PowerPoint as the document created by Wexford and used as part of a presentation he and

13  other executives delivered to the ADC and to the Governor's office.  [Mitchell Decl.,

14  Ex. 6 (Conn Dep.) at 9:12-10:3 (Conn's title and responsibilities); *id.* at 18:20-21:9

15  (authenticating the PowerPoint); *id.* at 29:17-30:24 (PowerPoint created by the high-level

16  Wexford officials whose names appear on the document); *see also* Mitchell Decl., Ex. 7

17  (Fisher Dep.) at 6:15-19, 13:20-14:1, 15:17-19 (Wexford's director for utilization

18  management authenticates the slides in the PowerPoint); Mitchell Decl., Ex. 8 (Mullenix

19  Dep.) at 94:17-95:23, 106:4-23 (Wexford's Director of operations authenticates the

20  PowerPoint); Mitchell Decl., Ex. 9 (Gross Dep.) at 5:15-20, 28:12-18 (ADC assistant

21  director authenticates PowerPoint)]

22

23

24

25        [7] Defendants also assert that the PowerPoint is "cumulative."  [Doc. at 10]  But
26  "cumulative" evidence is evidence that "replicates other admitted evidence," *United
    States v. Ives*, 609 F.2d 930, 933 (9th Cir. 1979), and Defendants do not identify any
27  evidence that is "replicated" by the PowerPoint.  While Plaintiffs agree that the evidence
    in support of their allegations about systemic deficiencies in prison healthcare is
28  overwhelming, Defendants have vigorously contested that point.  The Court may not
    exclude evidence just because it bolster's Plaintiffs' theory of the case.

-19-

1        This testimony provides more than enough "evidence sufficient to support a

2    finding that the matter in question is what its proponent claims." *Las Vegas Sands, LLC v.*

3    *Nehme*, 632 F.3d 526, 532-33 (9th Cir. 2011) (citation omitted); Fed. R.Evid. 901(a).

4        Defendants' Motion in Limine No. 3 must be denied.

1    **Plaintiffs' Response in Opposition to Defendants' Motion in Limine No. 4:**

2  **Preclude Any Evidence That Predates Privatization of Correctional Health Services.**

3        Defendants ask the Court to exclude all "healthcare evidence" that pre-dates the

4  July 1, 2012 privatization of ADC healthcare services, on the ground that such evidence is

5  "irrelevant to whether Plaintiffs are currently receiving constitutionally adequate care."

6  [Doc. 1100 at 11:16-17]   Because this case was filed March 22, 2012, Defendants are

7  asking the Court to exclude all evidence of ADC healthcare as it existed *at the time the*

8  *case was filed*, and for months thereafter.   Defendants fail to cite a single case in which

9  anything remotely resembling the extraordinary order they seek has been granted.   Their

10  motion is meritless and must be denied.[8]

11  **A.    Pre-privatization events are relevant to Defendants' deliberate indifference.**

12        As a threshold matter, privatization marked no sharp discontinuity in ADC's

13  provision of healthcare to prisoners.   As this Court has already ruled, privatization does

14  not "absolve" Defendant Ryan of his "obligation to ensure the provision of medical care is

15  constitutionally adequate."   [Doc. 175]   Even after privatization, ADC employees remain

16  actively involved in the provision of healthcare.   [*See* Mitchell Decl., Ex. 10 (Taylor Dep.)

17  at 277:13-25 (testimony of ADC Mental Health Monitor that she has "worked with

18  Corizon to identify and come up with a plan" to address areas in which she believes

19  mental health care falls below constitutional requirements)]

20        The pre-privatization state of ADC healthcare is highly relevant to Plaintiffs'

21  Eighth Amendment claims.   The Eighth Amendment is violated when prison officials,

22  acting with deliberate indifference, expose prisoners to a "substantial risk of serious

23  harm."   *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).   To establish deliberate

24  indifference, prisoners must show that officials "know[] of and disregard [] an excessive

25

---

26      [8]  Because Defendants refer only to "healthcare evidence," they apparently do not seek to exclude evidence relevant to Plaintiffs' challenge to conditions of confinement in ADC's isolation units.   [*See* Compl. ¶¶ 90-100, 148-149 (Doc. 1)]   Thus, granting Defendants' motion would require the Court to determine whether each piece of evidence is "healthcare evidence" subject to the cutoff date Defendants seek, or "isolation evidence" not subject to the cutoff, needlessly complicating and prolonging the trial.

1  risk to inmate health or safety." *Id.* at 837.  Whether prison officials have such knowledge

2  "is a question of fact subject to demonstration in the usual ways, including inference from

3  circumstantial evidence."  *Id.* at 842.  Thus, prisoners can show knowledge by showing

4  that the risk was "'*longstanding*, pervasive, well-documented, or *expressly noted by*

5  *prison officials in the past.*'"  *Id.* (emphasis added).

6     Accordingly, deficiencies in ADC health care predating privatization, and

7  Defendants' knowledge of those deficiencies, are highly relevant to an essential element

8  of Plaintiffs' Eighth Amendment claim.  To exclude this evidence would be error. [9]

9  **B.     The parties did not agree to limit discovery to any particular date.**

10    Defendants next urge the Court to exclude any healthcare evidence that pre-dates

11 January 1, 2011, on the ground that "[t]hroughout the course of discovery, the parties

12 agreed to and limited their discovery responses to that date."  [Doc. 1100 at 12:11-12]

13 This is false.  While the parties agreed to January 1, 2011 as the default starting state for

14 discovery requests *if no other date was specified*, both parties routinely requested and

15 received older documents in discovery.  [*See, e.g.,* Mitchell Decl., Ex. 11 (Def. Charles

16 Ryan's First Req. for Prod. of Docs. and Things to Pl. Maryanne Chisholm, July 30, 2012)

17 at 8:21-22 (seeking "all documents of any and all medical providers with whom Plaintiffs

18 treated during the ten (10) years before Plaintiff's incarceration"); *id*. at 9:18 (seeking

19 medical records "since January 1, 2010")].  Indeed, Defendants' own exhibit list includes

20 documents dating as far back as 2009.  [*See* Mitchell Decl. Ex 12]

21 **C.     Defendants' Statute of Limitations Argument is Without Merit**

22    As their final fallback position, Defendants ask the Court to exclude evidence prior

23 to March 22, 2010.  Defendants contend that any "allegation" before that date is barred by

24 _____

25     [9]  While Defendants accurately quote *Farmer* for the proposition that an Eighth
    Amendment injunctive claim must be evaluated "in light of the prison authorities' current
26  attitudes and conduct" [Doc. 1100 at 11:20-21], they omit the balance of that sentence, in
    which the Court defines "current" as "their attitudes and conduct *at the time suit is*
27  *brought* and persisting thereafter."  511 U.S. at 845 (emphasis added).  This suit was
    brought in March 2012, before ADC's privatization of healthcare.  And as explained
28  above, pre-privatization events are directly relevant to Defendants' current deliberate
    indifference.

the statute of limitations, evidently premised on their persistent mistaken belief that Plaintiffs' "allegations" are distinct instances of past harm.  *See Parsons v. Ryan,* 754 F.3d 657, 685 n.31 (9th Cir. 2014) ("The named plaintiffs allege that they are all exposed to a substantial risk of serious harm, not that their particular experiences in the past violated the Eighth Amendment").  Where, as here, Plaintiffs allege that Defendants currently place prisoners at a substantial risk of serious harm, specific examples of previous injuries are evidence directly relevant to proving Defendants' policies and practices exposing Plaintiffs to that risk, as well as Defendants' deliberate indifference, notwithstanding any statute of limitations.[10]

Moreover, allegations of conduct occurring prior to the limitations period are actionable if they are part of a "continuing violation" of the plaintiffs' rights.  *Sosa v. Hiraoka*, 920 F.2d 1451, 1455 (9th Cir. 1990). When a civil rights plaintiff "seeks injunctive relief against an ongoing violation, he or she is not barred from seeking relief . . . by the statute of limitations."  *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002).  Defendants' practices of exposing prisoners to risk of medical, mental health, and dental harm, as well as harm from isolated confinement, are longstanding and ongoing, and thus neither any of Plaintiffs' "claims" nor any evidence regarding particular allegations is barred.  *See, e.g., Evans v. Cnty. of San Diego*, No. 06-cv-0877, 2008 WL 842459 (S.D. Cal. Mar. 27, 2008) (applying continuing violation analysis to claim of deliberately indifferent jail medical care).

Defendants' Motion in Limine No. 4 must be denied.

---

[10] The sole statute of limitations case cited by Defendants involved a claim for damages for past conduct, not a claim for injunctive relief against ongoing violations of Constitutional rights.  *Purnell v. Arrow Fin. Servs,* LLC, No. 05-cv-73384, 2009 WL 1508340 (E.D. Mich. May 29, 2009).

1    Dated:  September 17, 2014              **JONES DAY**

2

3                                           By:    s/ Caroline N. Mitchell
                                                Caroline Mitchell (Cal. 143124)*
4                                               Amir Q. Amiri (Cal. 271224)*
                                                Dara Levinson (Cal. 274923)*
5                                               555 California Street, 26th Floor
                                                San Francisco, California 94104
6                                               Telephone:  (415) 875-5712
                                                Email:    cnmitchell@jonesday.com
7                                                         aamiri@jonesday.com
                                                          daralevinson@jonesday.com

8                                           *Admitted *pro hac vice*

9                                           Daniel C. Barr (Bar No. 010149)
                                            Amelia M. Gerlicher (Bar No. 023966)
10                                          Kirstin T. Eidenbach (Bar No. 027341)
                                            John H. Gray (Bar No. 028107)
11                                          Matthew B. du Mée (Bar No. 028468)
                                            Jerica L. Peters (Bar No. 027356)
12                                          **PERKINS COIE LLP**
                                            2901 N. Central Avenue, Suite 2000
13                                          Phoenix, Arizona 85012
                                            Telephone:  (602) 351-8000
14                                          Email:    dbarr@perkinscoie.com
                                                      agerlicher@perkinscoie.com
15                                                    keidenbach@perkinscoie.com
                                                      jhgray@perkinscoie.com
16                                                    mdumee@perkinscoie.com
                                                      jpeters@perkinscoie.com
17
                                            Daniel Pochoda (Bar No. 021979)
18                                          James Duff Lyall (Bar No. 330045)*
                                            **ACLU FOUNDATION OF**
19                                          **ARIZONA**
                                            3707 North 7th Street, Suite 235
20                                          Phoenix, Arizona 85013
                                            Telephone:  (602) 650-1854
21                                          Email:    dpochoda@acluaz.org
                                                      jlyall@acluaz.org
22
                                            *Admitted pursuant to Ariz. Sup. Ct.
23                                          R. 38(f)

24

25

26

27

28

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Warren E. George (Cal. 53588)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
             ahardy@prisonlaw.com
             snorman@prisonlaw.com
             ckendrick@prisonlaw.com
             wgeorge@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)**
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:    dfathi@npp-aclu.org
             afettig@npp-aclu.org
             aquereshi@npp-aclu.org

*Admitted *pro hac vice*.  Not admitted
  in DC; practice limited to federal
  courts.
**Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:    jlwilkes@jonesday.com
             tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone: (212) 326-3498
Email: kmamedova@jonesday.com
      jkmessina@jonesday.com

*Admitted *pro hac vice*

Kevin Brantley (Cal. 251886)*
**JONES DAY**
3161 Michelson Drive, Suite 800
Irvine, California 92612
Telephone: (949) 851-3939
Email: kcbrantley@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY
LAW**

By:   s/ Sarah Kader
      Sarah Kader (Bar No. 027147)
      Asim Varma (Bar No. 027927)
      5025 East Washington Street, Suite 202
      Phoenix, Arizona 85034
      Telephone: (602) 274-6287
      Email: skader@azdisabilitylaw.org
            avarma@azdisabilitylaw.org

      J.J. Rico (Bar No. 021292)
      Jessica Jansepar Ross (Bar No. 030553)
      **ARIZONA CENTER FOR
      DISABILITY LAW**
      100 N. Stone Avenue, Suite 305
      Tucson, Arizona 85701
      Telephone: (520) 327-9547
      Email: jrico@azdisabilitylaw.org
            jross@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability
Law*

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I hereby certify that on September 17, 2014, I electronically transmitted the above |
| 3 | document to the Clerk's Office using the CM/ECF System for filing and transmittal of a |
| 4 | Notice of Electronic Filing to the following CM/ECF registrants: |

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

s/ D. Freouf