**Index of Exhibits to Declaration of Caroline N. Mitchell**

Exhibit 1:   Individual Named Plaintiffs' Initial Disclosure Statement, dated June 29, 2012 **[FILED UNDER SEAL]**

Exhibit 2:   Individual Named Plaintiffs' Second Supplemental Disclosure Statement, dated September 6, 2013 **[FILED UNDER SEAL]**

Exhibit 3:   Individual Named Plaintiffs' draft pre-trial witness list, exchanged with Defendants on September 9, 2014 **[FILED UNDER SEAL]**

Exhibit 4:   Letter dated July 15, 2013 sent to defense counsel regarding Craig Haney's Rule 26 inspection of the Florence, Eyman, and Perryville prisons **[FILED UNDER SEAL]**

Exhibit 5:   Letter dated July 16, 2013 sent to defense counsel regarding Eldon Vail's Rule 26 inspection of the Florence, Eyman, and Perryville prisons **[FILED UNDER SEAL]**

Exhibit 6:   Excerpts of Deposition of Daniel L. Conn, dated May 20, 2013

Exhibit 7:   Excerpts of Deposition of Neil A. Fisher, M.D., dated October 8, 2013

Exhibit 8:   Excerpts of Deposition of Karen D. Mullenix, dated May 21, 2013

Exhibit 9:   Excerpts of Deposition of Arthur Gross, dated September 9, 2013

Exhibit 10:   Excerpts of Deposition of Nicole Taylor, dated September 5, 2013

Exhibit 11:   Defendant Charles Ryan's Request for Production of Documents to Plaintiff Maryanne Chisholm, dated July 30, 2012

Exhibit 12:   Excerpts of Defendants' exhibit list, produced to Plaintiffs on September 12, 2014 **[FILED UNDER SEAL]**

# EXHIBIT 1

# [FILED UNDER SEAL]

# EXHIBIT 2

# [FILED UNDER SEAL]

# EXHIBIT 3

# [FILED UNDER SEAL]

# EXHIBIT 4

# [FILED UNDER SEAL]

# EXHIBIT 5

# [FILED UNDER SEAL]

# EXHIBIT 6

```
 1                  DONALD L. CONN

 2            UNITED STATES DISTRICT COURT
                 DISTRICT OF ARIZONA
 3
                      - - - - -
 4
    VICTOR PARSONS; SHAWN    )
 5  JENSEN; STEPHEN SWARTZ;  )
    DUSTIN BRISLAN; SONIA    )
 6  RODRIGUEZ; CHRISTINA     )
    VERDUZCO; JACKIE THOMAS; )
 7  JEREMY SMITH; ROBERT     )
    GAMEZ; MARYANNE CHISHOLM;)
 8  DESIREE LICCI; JOSEPH    )
    HEFNER; JOSHUA POLSON;   )
 9  and CHARLOTTE WELLS, on  )
    behalf of themselves and )
10  all others similarly     )
    situated; and ARIZONA    )
11  CENTER FOR DISABILITY    )
    LAW,                     )
12                           )
              Plaintiffs,    )
13                           )
              vs.            ) No. CV 12-00601-PHX-NVW
14                           ) (MEA)
    CHARLES RYAN, DIRECTOR,  )
15  ARIZONA DEPARTMENT OF    )
    CORRECTIONS; and RICHARD )
16  PRATT, INTERIM DIVISION  )
    DIRECTOR, DIVISION OF    )
17  HEALTH SERVICES, ARIZONA )
    DEPARTMENT OF            )
18  CORRECTIONS, in their    )
    official capacities,     )
19                           )
              Defendants.    )
20
                      - - - - -
21
              DEPOSITION OF DANIEL L. CONN
22                  May 20, 2013
                  Pittsburgh, PA
23

24  Reported By: Michelle Hall

25  Job No: 61601
```

1                DONALD L. CONN

2   COUNSEL PRESENT (CONT.):

3   For the Plaintiff, Arizona Center for
    Disability Law (via telephone):
4
        Jennifer A. Alewelt, Esq.
5       Arizona Center for Disability Law
        5025 East Washington Street
6       Phoenix, AZ  85034

7   For the Defendants:

8       Tim Bojanowski, Esq.
        Struck Wieneke & Love
9       3100 West Ray Road
        Chandler, AZ  85226
10
    For Wexford Health Sources, Incorporated, and
11  the Witness:

12      Brandi C. Blair, Esq.
        Jones Skelton & Hochuli
13      2901 North Central Avenue
        Phoenix, AZ  85012
14

15

16

17

18

19

20

21

22

23

24

25

1                     DONALD L. CONN

2                       I N D E X

3                     - - - - -

4            WITNESS:   DANIEL L. CONN

5

6   E X A M I N A T I O N:              PAGE

7

8   BY MR. FATHI                        6

9   BY MR. BOJANOWSKI                   134

10  BY MR. FATHI                        168

11

12  E X H I B I T S:

13

14  EXHIBIT 1                           18

15  EXHIBIT 2                           55

16  EXHIBIT 3                           65

17  EXHIBIT 4                           87

18  EXHIBIT 5                           89

19  EXHIBIT 6                           94

20  EXHIBIT 7                           96

21  EXHIBIT 8                           97

22

23

24

25

1              DONALD L. CONN

2      A.    I do not.

3      Q.    Okay.  Now, at various points today

4  I'm going to be asking you about documents, and

5  when I use that term, I'm defining it very

6  broadly to include any form of written

7  communication.  So if I ask about documents,

8  that includes e-mails, letters, handwritten

9  notes, PowerPoint slides, anything at all

10  that's written.  Okay?

11      A.    Okay.

12      Q.    What is your current position with

13  Wexford?

14      A.    I am executive vice president, chief

15  operating officer.

16      Q.    And how long have you held that

17  position?

18      A.    Probably four years.

19      Q.    And what are your duties in that

20  position?

21      A.    My duties are to make sure from the

22  operations perspective that we are doing what

23  we're supposed to be doing and providing the

24  health care that we need to to our clients.

25      Q.    Would it be accurate to describe you

1                    DONALD L. CONN

2    as second in command?

3         A.    That is correct.

4         Q.    And you're based here in the

5    Pittsburgh office; correct?

6         A.    Yes, I am.

7                    MS. ALEWELT:  My apologies.

8    I'm having a little difficulty hearing the

9    deponent for some reason.  I can hear David

10   quite clearly, but, my apologies.  I'm not sure

11   if we can adjust the location of the phone

12   or --

13                   MR. FATHI:  Yes.  We've just

14   moved the phone, and please let us know if that

15   continues to be a problem.  Okay?

16                   MS. ALEWELT:  Thank you,

17   David.  My apologies.

18                   MR. FATHI:  No.  Not at all.

19   BY MR. FATHI:

20        Q.    Have you ever held any other

21   positions with Wexford?

22        A.    Yes, I have.

23        Q.    And what were they?

24        A.    I was the director of accounting; I

25   was the chief financial officer; I was the

1                    DONALD L. CONN

2    trip you made to Arizona in connection with

3    this contract?

4         A.    I believe so.  There could have been

5    another trip in December, but as far as dates

6    go, I'm not 100 percent sure.  It might have

7    been December instead of late November, but

8    yes.

9         Q.    And how long were those trips?

10        A.    Some of the trips would be two days.

11   Most were more than one day, but there were a

12   couple that might have been one day.  But the

13   majority of them were more than one day.

14        Q.    And what was the longest trip that

15   you made?

16        A.    Longest trip, four days.

17        Q.    And which one was that, if you

18   remember?

19        A.    Probably the one in October.

20                    (Wexford Exhibit No. 1 was

21   marked for identification.)

22        Q.    Mr. Conn, I'm showing you what we

23   will mark as Exhibit 1.  This is pages Bates

24   stamped Wexford 1 through 131.

25                    Have you seen this document before?

1                    DONALD L. CONN

2         A.    Yes, I have.

3         Q.    Can you tell me what it is?

4         A.    It is a PowerPoint presentation with

5    a summary first two pages that was presented to

6    ADC.

7         Q.    And you'll see on the very first

8    page it says, "Meeting with the Arizona

9    Governor's Office November 8, 2012."  Do you

10   see that?

11        A.    I do.

12        Q.    Did this presentation take place on

13   or about November 8, 2012?

14        A.    Yes.

15        Q.    Were you present for this

16   presentation?

17        A.    I was present.

18        Q.    How did this meeting or presentation

19   come about?

20        A.    Let me -- let me clarify something.

21   This meeting with the Arizona Governor's

22   Office, that -- this did not occur with the

23   Governor's Office.  Just so -- it says that.

24   But this whole presentation was not done with

25   the Governor's Office.  I just want to clarify

1                     DONALD L. CONN

2    that.  It was done with the ADC.

3         Q.    Okay.  Was there one meeting or two?

4         A.    There were two.

5         Q.    Okay.  What was the first one?

6         A.    The first meeting was a presentation

7    with the ADC in which we, my team, presented to

8    the ADC this presentation (indicating) and the

9    subjects involved in it.

10        Q.    Okay.  If you look at Page 4, which

11   appears to be the title page of the PowerPoint,

12   it's actually dated -- it's actually dated

13   November 7, 2012.

14        A.    Yes.  November 7 was with the ADC,

15   and then we had a meeting the day after with

16   the Governor's Office of which this was not

17   presented (indicating).

18        Q.    Okay.  So let's take those one at a

19   time.

20        A.    Sure.

21        Q.    At the November 7 meeting, was that

22   where the PowerPoint presentation at Pages 4

23   through 131 was presented?

24        A.    That is correct.

25        Q.    Now, how did that meeting come

Page 21

1                        DONALD L. CONN

2    about?

3         A.    We, Wexford, were working with the

4    ADC to do the things that we needed to do as

5    part of the contract, and we, in doing so, we

6    came upon some things that we needed to discuss

7    with the ADC and put out in more detail, so we

8    presented them with our findings after being in

9    the contract since July 1.

10        Q.    And was this meeting initiated by

11   Wexford or by ADC?

12        A.    This meeting was probably more

13   initiated from Wexford.

14        Q.    Now, staying with the November 7

15   meeting for the moment --

16        A.    Yes.

17        Q.    -- where did that meeting take

18   place?

19        A.    That meeting took place at the ADC

20   offices.

21        Q.    And that's in Phoenix?

22        A.    Yes.

23        Q.    And about how long did it last?

24        A.    I want to say it lasted two-and-

25   a-half to three hours.

1                    DONALD L. CONN

2        Q.    Who was present from the ADC?

3        A.    The director, Director Ryan; Deputy

4   Director Hood.

5        Q.    Was Richard Pratt present?

6        A.    Yes.

7        Q.    Was Ben Shaw present?

8        A.    Yes.

9        Q.    Was anyone else from ADC present

10  that you can recall?

11       A.    I believe Dr. -- I believe there was

12  a doctor from their side that was there.  I

13  can't recall the name at this moment.  There

14  also was a procurement person from ADC in the

15  room, Leon.  I forget the last time.

16       Q.    Leon is the procurement person?

17       A.    Correct.

18       Q.    Was there anyone from the Governor's

19  Office present at the November 7 meeting?

20       A.    No.

21       Q.    Was there any kind of sign-in sheet

22  or roster of attendees for this meeting?

23       A.    I do not recall, but I don't think

24  so.  But I do not recall.

25       Q.    Now, at the November 7 meeting, who

Page 29

1                    DONALD L. CONN

2    Whether there was one particular person, I

3    don't -- we did not have one particular person

4    taking notes, but everybody pretty much took

5    notes.

6         Q.    Were notes or minutes circulated

7    after the meeting?

8         A.    No.  I don't believe so.  I do not

9    recall.

10        Q.    Is there any record of what was said

11   at the meeting other than this PowerPoint?

12        A.    I do not believe so.

13        Q.    Did you take notes at the meeting?

14        A.    I did take some notes, yes.

15        Q.    Do you still have those notes?

16        A.    I -- I am sure I do somewhere.

17        Q.    Who created these PowerPoint slides?

18        A.    Each of the individual team members

19   that presented, and then, of course, we have

20   one person in the office that pulls it all

21   together and --

22        Q.    The person who pulled it all

23   together, was that essentially a clerical task?

24        A.    Yes.

25        Q.    So, for example, I'm looking at

1              DONALD L. CONN

2    Page Wexford 1, II, Provider and Other Clinical

3    Issues.  Do you see that?

4         A.    I do.

5                   MS. BLAIR:  I think that was a

6    different meeting, however, if you recall.

7                   MR. FATHI:  I'm sorry.  All

8    right.

9    BY MR. FATHI:

10        Q.    Let's look at Page Wexford 81.

11        A.    Okay.

12        Q.    And this is a title page Mental

13   Health Issues; correct?

14        A.    Correct.

15        Q.    And it has the name of Ron Smith;

16   correct?

17        A.    Correct.

18        Q.    So do I understand that Dr. Smith

19   prepared the slides in this section?

20        A.    Correct.

21        Q.    So each Wexford person who presented

22   a given section prepared the slides for that

23   section?

24        A.    Correct.

25        Q.    Was there any overall review of the

```
 1                    DONALD L. CONN
 2   that you refer to as being between the lawyers?
 3        A.    Yes.
 4        Q.    Are some of those documents from the
 5   year 2013?
 6        A.    Yes.
 7        Q.    And just to be clear, what you are
 8   referring to are documents between Wexford's
 9   lawyers and ADC's lawyers?
10        A.    Correct.
11        Q.    At what point did Wexford make the
12   final decision to terminate the contract?
13        A.    We explained when we met with the
14   Governor's Office, we explained to them that we
15   felt there was a breach of contract, and that
16   we were here to talk to them because we felt
17   that we did not get anywhere with the ADC.
18              And it was decided at the end of
19   that meeting that we would do a presentation, a
20   PowerPoint presentation, because the chief of
21   staff at that point in time said, I'm curious,
22   I would like to know what's causing you to feel
23   this way, and, you know, what are the issues?
24   So the idea was that we were going to do a
25   PowerPoint presentation for the Governor's
```

1              DONALD L. CONN

2    Office, not ADC, because we explained to them

3    that ADC already knows these issues, we talk to

4    them all the time, and we walked out of there

5    that way.

6              But a week later it was determined

7    that after the Governor's Office I'm supposing

8    spoke to the ADC that it would not happen that

9    way; that if we're going to give a

10   presentation, we would have to give it to the

11   ADC.  And then we argued back that, you know,

12   we need someone from the Governor's Office to

13   be in attendance or be a part of this because

14   we've already done this in pieces.

15             And it turned out that's how the

16   November 7 and November 8 meetings, that's why

17   that occurred.

18        Q.    I see.  So the meeting at which you

19   expressed Wexford's view that there was a

20   breach of contract was the meeting with

21   Ms. Klein and the other person from the

22   Governor's Office?

23        A.    Correct.

24        Q.    How did you characterize the breach

25   of contract at that time?

```
 1                 DONALD L. CONN

 2      Q.    And who would provide those reports?

 3      A.    Usually, they would go through Karen

 4  Mullenix.  And they would be produced either in

 5  Karen Mullenix's shop there or produced from

 6  our office here in Pittsburgh because of

 7  systems wherever it may be and given to her,

 8  and then she would go ahead and pass those on.

 9      Q.    Okay.  So as part of the contract,

10  there was a requirement for regular reporting

11  by Wexford to the ADC concerning quality issues

12  for the delivery of health care; is that

13  correct?

14      A.    I believe so, yes.

15      Q.    And you're saying that those reports

16  were, in fact, provided to the ADC when they

17  were --

18      A.    No.  In some cases some of those

19  reports were not.  But that was in a discussion

20  with ADC, and that was agreed upon why it

21  wasn't being able to be given and all that kind

22  of stuff.  So that's the -- pretty much the

23  gist of it.

24      Q.    During the course or the content of

25  any of those reports, was it ever mentioned
```

1        DONALD L. CONN

2      Q.    Okay.  Now, when the PowerPoint

3  presentation was put together, I think you

4  testified that it was based upon the

5  experiences of the authors of each section; is

6  that correct?

7      A.    That's correct.

8      Q.    Was there an audit that was

9  performed with regard to the issues in the

10  PowerPoint that was presented to ADC at any

11  time before the PowerPoint was presented?

12            MS. BLAIR:  Form.  Foundation.

13      A.    Those, the pieces of the PowerPoint,

14  were things that were discussed each week.  Not

15  the PowerPoint in totality, but pieces of the

16  PowerPoint each week.

17      Q.    So if I understand your testimony

18  correctly, there was no audit performed by

19  Wexford with regard to the issues in the

20  PowerPoint that was presented to ADC before the

21  PowerPoint was presented?

22      A.    No.  No.  That's -- that's not what

23  I said.  What I said was there were audits done

24  by all the people that were part of the

25  presentation.

Page 155

1                    DONALD L. CONN

2        Q.    I see.

3        A.    In fact, numerous times depending on

4    what time they were out there, and that's how

5    they were able to gather the information to be

6    able to present with their expertise through

7    the PowerPoint.

8        Q.    Okay.  Were these audits done -- I

9    guess I'm trying to get at were the audits

10   provided to ADC in a written form?

11       A.    I do not know that.

12       Q.    Okay.  And I think you said

13   Ms. Mullenix would know specifically about

14   audits?

15       A.    Correct.

16       Q.    And the purpose of these weekly

17   meetings and audits and such are to try and

18   improve the delivery of health care systemwide;

19   is that right?

20       A.    Correct.

21       Q.    So having these meetings is not

22   necessarily a problem.  It's meant to advance

23   better care to the inmate population; right?

24       A.    That's supposed to be the purpose,

25   yes.

Page 173

1

2  COMMONWEALTH OF PENNSYLVANIA     )  E R R A T A
   COUNTY OF ALLEGHENY             )   S H E E T
3

4  VICTOR PARSONS, et al.
   vs.
5  CHARLES RYAN, DIRECTOR, ARIZONA DEPARTMENT OF
   CORRECTIONS, et al.
6

7       I, DANIEL L. CONN, have read the
   foregoing pages of my deposition given on
8  May 20, 2013, and wish to make the following,
   if any, amendments, additions, deletions or
9  corrections:

10 Pg. No.  Line No.    Change and reason for
   change:
11

12 _____  _____  _____

13 _____  _____  _____

14 _____  _____  _____

15 _____  _____  _____

16 _____  _____  _____

17 _____  _____  _____

18 _____  _____  _____

19
   In all other respects the transcript is true
20 and correct.

21                  _____
                         DANIEL L. CONN
22

   Subscribed and sworn to before me this
23 _____ day of _____, 2013.

24 _____
             Notary Public                  (MLH)
25

1

2    COMMONWEALTH OF PENNSYLVANIA)
     COUNTY OF ALLEGHENY          )

3

4            I, Michelle L. Hall, a notary public
     in and for the Commonwealth of Pennsylvania, do
5    hereby certify that the witness, DANIEL L.
     CONN, was by me first duly sworn to testify the
6    truth, the whole truth, and nothing but the
     truth; that the foregoing deposition was taken
7    at the time and place stated herein; and that
     the said deposition was recorded
8    stenographically by me and then reduced to
     typewriting under my direction, and constitutes
9    a true record of the testimony given by said
     witness, all to the best of my skill and
10   ability.

11           I further certify that the inspection,
     reading and signing of said deposition were not
12   waived by counsel for the respective parties
     and by the witness and if after 30 days the
13   transcript has not been signed by said witness
     that the witness received notification and has
14   failed to respond and the deposition may then
     be used as though signed.

15           I further certify that I am not a
16   relative, or employee of either counsel, and
     that I am in no way interested, directly or
17   indirectly, in this action.

18           IN WITNESS WHEREOF, I have hereunto
     set my hand and affixed my seal of office this
19   31st day of May, 2013.

20

21

22                   S/Michelle L. Hall
                     ---------------------------
23

24                   ---------------------------

25

# EXHIBIT 7

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
|         Plaintiffs, | ) |
|     vs. | ) |
| | ) |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | ) ) ) ) ) ) ) |
| | ) |
|         Defendants. | ) |
| | ) |

No. CV12-00601-
PHX-NVW (MEA)

30(b)(6) DEPOSITION
OF
WEXFORD HEALTH
SOURCES, INC.

Continuation of
Docket No. 436

NEIL A. FISHER, MD

(Topics 7-10)

October 8, 2013
9:03 a.m.
Phoenix, Arizona

Glennie Reporting Services
7330 North 16th Street
Suite A100
Phoenix, Arizona 85020-5275

602.266.6535
www.glennie-reporting.com

Prepared by:
Carolyn T. Sullivan, RPR
Arizona CR No. 50528

Parsons v. Ryan
30(b)(6)  Deposition of Wexford Health Sources, Inc. Neil A. Fisher, M.D.  - 10/8/2013

Page 2

1                     I N D E X

2    WITNESS                                          PAGE

3    NEIL A. FISHER, MD

4         Examination by Ms. Kendrick                    4
          Examination by Ms. Cloman                     75
5         Further Examination by Ms. Kendrick          147

6

7    REQUESTED DOCUMENTS                       PAGE   LINE

8    By Ms. Kendrick                            151     15

9

10                  INDEX TO EXHIBITS

11   Description                                       Page

12   Exhibit 436 Potential Whooping Cough (Pertussis)   55
                 diagnosis at Perryville - Inmate
13               9/14/12 email from Neil Fisher to
                 Thomas Lehman
14               CONFIDENTIAL INFORMATION -
                 SUBJECT TO PROTECTIVE ORDER
15
     Exhibit 437 9/25/12 email from Karen Mullenix      57
16               to Dan Conn
                 Subject:  ADC contacts CDC
17               WEXFORD 000208

18   Exhibit 438 Perryville Pertussis Review,           60
                 September 14, 2012
19               CONFIDENTIAL INFORMATION -
                 SUBJECT TO PROTECTIVE ORDER
20

21           REFERENCE TO EXHIBITS PREVIOUSLY MARKED
22
                     No.      Page
23
                     164      63
24                   167      13
                     173      72
25                   272      66

GLENNIE REPORTING SERVICES
www.glennie-reporting.com - 602.266.6535

Parsons v. Ryan
30(b)(6)  Deposition of Wexford Health Sources, Inc. Neil A. Fisher, M.D.  - 10/8/2013

Page 3

1              30(b)(6) DEPOSITION OF

2          ARIZONA DEPARTMENT OF CORRECTIONS

3              (NEIL A. FISHER, MD)

4          The 30(b)(6) deposition of Arizona

5   Department of Corrections (NEIL A. FISHER, MD) was taken

6   on October 8, 2012, commencing at 9:03 a.m., at the law

7   office of PERKINS COIE LLP, 2901 North Central Avenue,

8   Suite 2000, Phoenix, Arizona, before CAROLYN T. SULLIVAN,

9   a Certified Reporter, Certificate No. 50528, for the

10  State of Arizona.

11

    APPEARANCES:
12
    For all Plaintiffs except Arizona Center for Disability
13  Law:

14      PRISON LAW OFFICE
        Corene Kendrick, Esq.
15      Staff Attorney
        General Delivery
16      San Quentin, California 94964

17
    For Defendants:
18
        STRUCK WIENEKE & LOVE, P.L.C.
19      Courtney Cloman, Esq.
        3100 West Ray Road
20      Suite 300
        Chandler, Arizona 85226
21

22  For Wexford Health Sources, Inc.:

23      JELLISON LAW OFFICES, PLLC
        James M. Jellison, Esq.
24      3101 North Central Avenue
        Suite 1090
25      Phoenix, Arizona 85012

Parsons v. Ryan
30(b)(6)  Deposition of Wexford Health Sources, Inc. Neil A. Fisher, M.D.  - 10/8/2013

Page 6

1      A.    Great.

2      Q.    Also, you should not guess or speculate, but

3   I'm entitled to ask you for your best estimate or your

4   best memory of facts.

5      A.    Yes.

6      Q.    And also, anytime you need to take a break,

7   just let me know.  I just ask that you don't do it when a

8   question is pending before you've answered the question.

9      A.    Yes.

10      Q.    And are you on any medications or is there any

11   reason today why you wouldn't be able to testify fully?

12      A.    No.

13      Q.    Okay.  So what is your current position with

14   Wexford?

15      A.    I'm the corporate director for utilization

16   management for Wexford.

17      Q.    And is that a nationwide position or is that

18   just for Arizona contracts?

19      A.    A nationwide position.

20      Q.    When did you start working for Wexford?

21      A.    I worked for them in the past, and then I've

22   recently started reworking with them on August 13th of

23   2012.

24      Q.    Okay.  Where did you work before August 13th,

25   2012?

Parsons v. Ryan
30(b)(6)  Deposition of Wexford Health Sources, Inc. Neil A. Fisher, M.D.  - 10/8/2013

Page 13

1    thought you were better qualified to answer some of these

2    questions.  So if I ask you a question that doesn't sound

3    like 7 through 10, it's from those areas.

4              MS. KENDRICK:  And I can give you a

5    transcript if you'd like.

6              MR. JELLISON:  No.  That's largely in

7    keeping with our understanding.  Dr. Fisher is prepared

8    to testify as a 30(b)(6) witness on 7, 8, 9, and 10.  And

9    we understood from Ms. Mullenix's deposition that there

10   were some clinical issues she could not answer that

11   Dr. Fisher can.

12             However, I don't know that you had seen it,

13   but I'll reiterate the objections that Ms. Blair made in

14   a March 2013 letter.  Number one, we expect the time

15   limit to be observed.  But also, We're giving our best

16   testimony in light of the fact that we don't have the

17   documentation that we otherwise might have had for these

18   kinds of topics.

19             MS. KENDRICK:  Sure.  Okay.

20        Q.   BY MS. KENDRICK:  So first exhibit I want to --

21   this is a document that was previously marked as Exhibit

22   167 in a prior deposition.  Do you recognize this

23   document?

24        A.   I do not recognize the first two pages or pages

25   1, 2, 3.  I do not recognize that.  But the slide set, I

Parsons v. Ryan
30(b)(6)  Deposition of Wexford Health Sources, Inc. Neil A. Fisher, M.D.  - 10/8/2013

Page 14

1    do recognize.

2        Q.    And on the first page of the document under

3    Roman numeral II -- this cover sheet says:  Meeting with

4    the Arizona Governor's Office.  And Roman numeral II

5    lists you and Thomas Lehman as presenting.  Did you speak

6    at a meeting with the Arizona Governor's Office on

7    November 8th?

8        A.    No.

9        Q.    The fourth page of the document says:  Meeting

10   with the Arizona Department of Corrections November 7th,

11   2012.  It's on a PowerPoint slide.

12       A.    Yes.

13       Q.    Were you at that meeting?

14       A.    Yes.

15       Q.    And did you speak at that meeting?

16       A.    Yes.

17       Q.    Do you know who went to the November 8th

18   meeting at the Governor's Office?

19       A.    I believe it was Mark Hale and Dan Conn.

20       Q.    So on the cover sheet, back to here, it says

21   that you and Mr. Lehman were going to talk about provider

22   and other clinical issues.

23       A.    Yes.

24       Q.    Did you talk about all of these issues at your

25   November 7th presentation?

Parsons v. Ryan
30(b)(6)  Deposition of Wexford Health Sources, Inc. Neil A. Fisher, M.D.  - 10/8/2013

Page 15

1          A.      Yes.

2          Q.      If you turn to the slide that has the number

3     Wexford 21 in the bottom right corner.

4          A.      Yes.

5          Q.      It's actually number 18.  The number on the

6     bottom says 21.  So you need to go back a few pages.

7     That page.

8          A.      Okay.

9          Q.      Did you present these slides?  Your name is on

10    the previous slide, Wexford 0020.  It says:  Credentials

11    & experience (Fisher).

12         A.      The slide set was a combination of myself and

13    Dr. Lehman presenting.

14         Q.      So he presented some of these topics, and you

15    presented others?

16         A.      It was a coordinated effort.

17         Q.      Did you and Mr. Lehman work together to draft

18    slides that covered this section of the presentation?

19         A.      Yes, we worked together.

20         Q.      Did you draft this slide that's Wexford 021

21    that says Introduction at the top?

22         A.      I was involved with the -- with this slide.

23         Q.      And what was the basis for your conclusion that

24    ADC had none of these components of constitutionally

25    mandated correctional health care?

Parsons v. Ryan
30(b)(6)  Deposition of Wexford Health Sources, Inc. Neil A. Fisher, M.D.  - 10/8/2013

Page 96

1      Q.     Did someone else in the group that helped you

2  create the slides tell you that there were no nursing

3  clinical procedures manual?

4      A.     Martha Ingram and Glenn Thomas.

5      Q.     Did they tell you in preparing these slides

6  which facilities did not have nursing clinical procedures

7  manuals?

8      A.     I did not hear -- I don't remember them saying

9  specifically which facilities.

10     Q.     Did they inform you in the process of creating

11  these slides who they asked to get this information from?

12     A.     I could only say a way a typical audit is

13  done -- I was not on the sites with them at the time of

14  their audits.  But certainly the way that Wexford audits

15  are done is these are multi-day reviews by a standardized

16  checklist of what should be occurring to meet NCCHC

17  standards.  And where the slides are talking about the

18  rate of passing, the rate of passing overall was 68

19  percent if I remember the slide correctly.  That is very,

20  very low.

21     Q.     So you're speaking just from what's normally

22  done on a Wexford audit, not from that Martha Ingram and

23  Glenn Thomas told you what happened on their audit; is

24  that correct?

25     A.     We did not break it down site by site by site.

Parsons v. Ryan
30(b)(6)  Deposition of Wexford Health Sources, Inc. Neil A. Fisher, M.D.  – 10/8/2013

Page 154

```
 1   STATE OF ARIZONA    )
                         )
 2   COUNTY OF MARICOPA  )

 3

 4              I, CAROLYN T. SULLIVAN, a Certified

 5   Reporter, Certificate No. 50528, in the State of Arizona,

 6   do hereby certify that the foregoing witness was duly

 7   sworn to tell the whole truth; that the foregoing pages

 8   constitute a full, true, and accurate transcript of all

 9   proceedings had in the foregoing matter, all done to the

10   best of my skill and ability.  Pursuant to request,

11   notification was provided that the deposition is

12   available for review and signature.

13

14              I FURTHER CERTIFY that I am not related to

15   nor employed by any of the parties hereto, and have no

16   interest in the outcome.

17

18              WITNESS my hand this 15th day of October,

19   2013.

20

21

22                          Carolyn T. Sullivan, RPR
                            Arizona Certified
                            Reporter No. 50528
23

24

25
```

# EXHIBIT 8

```
 1              KAREN D. MULLENIX

 2         UNITED STATES DISTRICT COURT
              DISTRICT OF ARIZONA
 3
                   - - - - -
 4
    VICTOR PARSONS; SHAWN      )
 5  JENSEN; STEPHEN SWARTZ;    )
    DUSTIN BRISLAN; SONIA      )
 6  RODRIGUEZ; CHRISTINA       )
    VERDUZCO; JACKIE THOMAS;   )
 7  JEREMY SMITH; ROBERT       )
    GAMEZ; MARYANNE CHISHOLM;  )
 8  DESIREE LICCI; JOSEPH      )
    HEFNER; JOSHUA POLSON;     )
 9  and CHARLOTTE WELLS, on    )
    behalf of themselves and   )
10  all others similarly       )
    situated; and ARIZONA      )
11  CENTER FOR DISABILITY      )
    LAW,                       )
12                             )
            Plaintiffs,        )
13                             )
            vs.                ) No. CV 12-00601-PHX-NVW
14                             ) (MEA)
    CHARLES RYAN, DIRECTOR,    )
15  ARIZONA DEPARTMENT OF      )
    CORRECTIONS; and RICHARD   )
16  PRATT, INTERIM DIVISION    )
    DIRECTOR, DIVISION OF      )
17  HEALTH SERVICES, ARIZONA   )
    DEPARTMENT OF              )
18  CORRECTIONS, in their      )
    official capacities,       )
19                             )
            Defendants.        )
20
                   - - - - -
21
          DEPOSITION OF KAREN D. MULLENIX
22              May 21, 2013
              Pittsburgh, PA
23

24  Reported By: Michelle Hall

25  Job No: 61602
```

1               KAREN D. MULLENIX

2    COUNSEL PRESENT (CONT.):

3    For the Plaintiff, Arizona Center for
     Disability Law (via telephone):
4
          Jennifer A. Alewelt, Esq.
5         Arizona Center for Disability Law
          5025 East Washington Street
6         Phoenix, AZ  85034

7    For the Defendants:

8         Tim Bojanowski, Esq.
          Struck Wieneke & Love
9         3100 West Ray Road
          Chandler, AZ  85226
10
     For Wexford Health Sources, Incorporated, and
11   the Witness:

12        Brandi C. Blair, Esq.
          Jones Skelton & Hochuli
13        2901 North Central Avenue
          Phoenix, AZ  85012
14

15

16

17

18

19

20

21

22

23

24

25

```
 1              KAREN D. MULLENIX

 2                  I N D E X

 3                 - - - - -

 4         WITNESS:  KAREN D. MULLENIX

 5

 6   E X A M I N A T I O N:              PAGE

 7

 8   BY MR. FATHI                          5

 9   BY MR. BOJANOWSKI                   142

10   BY MR. FATHI                        170

11

12   E X H I B I T S:

13

14   EXHIBIT 9                           25

15   EXHIBIT 10                          27

16   EXHIBIT 11                          76

17   EXHIBIT 12                          78

18   EXHIBIT 13                          81

19   EXHIBIT 14                          86

20   EXHIBIT 15                          91

21   EXHIBIT 16                          93

22   EXHIBIT 17                         149

23

24

25
```

Page 94

KAREN D. MULLENIX
1

2    requires that we provide sick call for

3    emergencies on Saturdays and Sundays and

4    holidays, Section 2.7.2.6."  Do you see that?

5        A.    Yes.

6        Q.    Now, is this document about one of

7    the situations you just described, or is this

8    an additional situation?

9        A.    I believe this is one of the ones I

10   was describing.  I believe -- yes, as I read

11   further down the string, this appears that this

12   occurred at the Lewis facility, and that was

13   one of the two that I was referring to.

14       Q.    Okay.  So this string describes the

15   Lewis incident that you talked about earlier?

16       A.    Yes.

17       Q.    Okay.  Thank you.  I'm going to show

18   you now what we marked yesterday as Exhibit 1.

19       A.    Okay.

20       Q.    And first I want to ask you about

21   the first three pages, Wexford 1, 2, and 3.

22       A.    Okay.

23       Q.    Now, limiting ourselves just to

24   those three pages, have you seen this document

25   before?

1                KAREN D. MULLENIX

2       A.    Yes.

3       Q.    Who created this document?

4       A.    It was created by a multitude, or I

5   should say multiple, individuals.

6       Q.    Were you involved in creating this

7   document?

8       A.    Yes.

9       Q.    And, again, I'm talking just about

10  the first three pages.

11      A.    Uh-huh.

12      Q.    What was your role in creating this

13  document?

14      A.    I was involved in those discussions

15  leading up to determining the section headings

16  for this particular proposal.

17      Q.    So were there any particular

18  portions of this document you authored, or were

19  you an author of the entire thing?

20      A.    I primarily contributed to the first

21  section, the introduction, and the subsections

22  under that item.  And I also worked on

23  Section 8, the conclusion.

24      Q.    Uh-huh.

25      A.    And I had input, verbal input, into

1                    KAREN D. MULLENIX

2    notes circulated to the group?

3         A.    No.

4         Q.    Who created these PowerPoint slides?

5         A.    It was a combination, again, of the

6    author under the section, Wendelyn Pekich, and

7    then, again, the group as a whole met and gave

8    verbal input.

9         Q.    Were you the primary author of any

10   of these individual slides?

11        A.    The one where it talks about my

12   experience and my background, my credentials.

13        Q.    So that's Wexford 6?

14        A.    Yes.  Yes.  I was the sole author of

15   that particular slide.  Everything else was,

16   again, discussed as a group.  There was input

17   as a group, and then we decided how to direct

18   the verbiage and put it on the document.

19        Q.    And were you a member of that group?

20        A.    Yes.

21        Q.    So would you say that you had input

22   into the creation of this entire PowerPoint?

23        A.    Yes.

24        Q.    And what were the sources of

25   information that went into this document?

1

2    COMMONWEALTH OF PENNSYLVANIA)
     COUNTY OF ALLEGHENY          )

3

4           I, Michelle L. Hall, a notary public
     in and for the Commonwealth of Pennsylvania, do
5    hereby certify that the witness, KAREN D.
     MULLENIX, was by me first duly sworn to testify
6    the truth, the whole truth, and nothing but the
     truth; that the foregoing deposition was taken
7    at the time and place stated herein; and that
     the said deposition was recorded
8    stenographically by me and then reduced to
     typewriting under my direction, and constitutes
9    a true record of the testimony given by said
     witness, all to the best of my skill and
10   ability.

11          I further certify that the inspection,
     reading and signing of said deposition were not
12   waived by counsel for the respective parties
     and by the witness and if after 30 days the
13   transcript has not been signed by said witness
     that the witness received notification and has
14   failed to respond and the deposition may then
     be used as though signed.

15

16          I further certify that I am not a
     relative, or employee of either counsel, and
     that I am in no way interested, directly or
17   indirectly, in this action.

18          IN WITNESS WHEREOF, I have hereunto
     set my hand and affixed my seal of office this
19   3rd day of June, 2013.

20

21

22                   S/Michelle L. Hall
                     ---------------------------
23

24                   ---------------------------

25

# EXHIBIT 9

Parsons v. Ryan
Deposition of Arthur Gross - 9/9/2013

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn ) | No: |
| Jensen; Stephen Swartz; ) | CV12-00601-PHX-NVW |
| Dustin Brislan; Sonia ) | (MEA) |
| Rodriguez; Christina ) | |
| Verduzco; Jackie Thomas; ) | |
| Jeremy Smith; Robert Gamez; ) | |
| Maryanne Chisholm; Desiree ) | |
| Licci; Joseph Hefner; Joshua ) | |
| Polson; and Charlotte Wells, ) | |
| on behalf of themselves and ) | |
| all others similarly ) | |
| situated; and Arizona Center ) | |
| for Disability Law, ) | |
|           Plaintiffs, ) | |
|     v. ) | |
| Charles Ryan, Director, ) | |
| Arizona Department of ) | |
| Corrections; and Richard ) | |
| Pratt, Interim Division ) | |
| Director, Division of Health ) | |
| Services, Arizona Department ) | |
| of Corrections, in their ) | |
| official capacities, ) | |
|           Defendants. ) | |
| ) | |

(SUBJECT TO PROTECTIVE ORDER)
DEPOSITION OF ARTHUR GROSS
September 9, 2013
9:22 a.m.
Phoenix, Arizona

Prepared by:
Marcella Daughtry, RPR
Arizona Certified
Reporter No. 50623

Prepared for:

(Copy)

Parsons v. Ryan
Deposition of Arthur Gross - 9/9/2013

Page 5

1                        ARTHUR GROSS,

2    called as a witness herein, having been first duly

3    sworn by the shorthand reporter to speak the truth and

4    nothing but the truth, was examined and testified as

5    follows:

6

7                        EXAMINATION

8    BY MS. KENDRICK:

9        Q    How are you doing?

10       A    Okay.

11       Q    Good.  My name is Corene Kendrick, and I'm one

12   of the attorneys for the prisoners plaintiffs in the

13   case of Parsons v. Ryan, and I am here to take your

14   deposition today, so I was just wondering, to start

15   off, if you could state your name and title and

16   business address for the record.

17       A    Arthur Gross, assistant director for

18   Department of Corrections responsible for the Health

19   Monitoring Bureau.  Current address, 1831 West

20   Jefferson, Phoenix, I think it's 85007.

21                MS. KENDRICK:  Okay.  You guys will

22   stipulate to accept service at trial if he's no longer

23   working for the Department?

24                MR. STRUCK:  As long as he's not out of

25   state.

Parsons v. Ryan
Deposition of Arthur Gross - 9/9/2013

Page 28

1   Wexford kept raising about the monitors with Mr. Ryan?

2       A    I don't believe I did.

3       Q    And are you aware of anyone from Wexford

4   raising them directly with Mr. Ryan or with Mr. Hood?

5       A    Based on what I'm reading here in this Exhibit

6   165, yes, I assume that's the nature of this letter.

7       Q    Okay.  But separate from seeing this letter,

8   you don't have any personal knowledge of Wexford staff

9   directly speaking to Mr. Ryan about problems with

10  monitors?

11      A    No.

12      Q    I'm handing you an exhibit that was previously

13  labeled as 167.  And just by glancing at it, do you

14  recognize this document?  Have you seen it before?

15      A    The document?

16      Q    Have you seen it before either as a document

17  or displayed on a screen as a PowerPoint?

18      A    Yes.

19      Q    On the first page it refers to a meeting on

20  November 8th with the Arizona governor's office.  Were

21  you present at that meeting?

22      A    No.  And the answer to a previous question is

23  Dr. Neil Fisher.

24      Q    All right.  If you could turn to the page

25  that's labeled Wexford 4 in the bottom, and it refers

Parsons v. Ryan
Deposition of Arthur Gross - 9/9/2013

Page 29

1    to a meeting with the Arizona Department of Corrections

2    on November 7th, 2012.  Were you at that meeting?

3         A    Yes, I was.

4         Q    And at that meeting, Wexford staff presented

5    this PowerPoint?

6                        MR. STRUCK:  Form.

7                        THE WITNESS:  Portions of this

8    PowerPoint was presented.

9         Q    BY MS. KENDRICK:  Did they give it to you as a

10   written document similar to how you are looking at it

11   today?

12        A    No.

13        Q    After this meeting, did you have additional

14   follow-up meetings with Wexford to address the problems

15   they raised in this PowerPoint?

16                       MR. STRUCK:  Form.

17                       THE WITNESS:  No, not specifically.

18        Q    BY MS. KENDRICK:  Do you remember how long

19   this presentation was that Wexford did, approximately?

20        A    Approximately four hours.

21        Q    After they made their presentation, did the

22   Department present its side of the matter or offer any

23   sort of verbal response to it?

24                       MR. STRUCK:  Form.

25                       THE WITNESS:  Not at that meeting.

Parsons v. Ryan
Deposition of Arthur Gross - 9/9/2013

Page 30

1      Q    BY MS. KENDRICK:  Okay.  As they were

2  presenting, were ADC staff responding or challenging

3  points made by Wexford?

4      A    Not that I recall, other than minor comments

5  or clarification of information that was being

6  submitted, but it wasn't -- it wasn't a debate.  It was

7  a presentation.

8      Q    After the four hours were up, did you and

9  other ADC staff who were there meet separately to

10  discuss what you had just been presented for four

11  hours?

12     A    There was conversation followed afterwards.

13     Q    Without Wexford people present?

14     A    Correct.

15     Q    Did the Department staff -- well, let me step

16  back.

17              You stated you were there.  Who else was

18  there from the Department?

19     A    Director Ryan, Deputy Director Hood, myself,

20  Richard Pratt, Dr. Rowe.

21     Q   Dr. Rowe is Dr. --

22     A   Dr. Richard Rowe --

23     Q   Okay.

24     A   -- from the Department of Corrections.  I

25  believe Dr. Robertson, Paulette Boothby.  I could state

Parsons v. Ryan
Deposition of Arthur Gross - 9/9/2013

Page 132

1  STATE OF ARIZONA    )
                       )
2  COUNTY OF MARICOPA  )

3

4               I, Marcella L. Daughtry, a Certified

5  Reporter, Certificate No. 50623, in the State of

6  Arizona, do hereby certify that the foregoing witness

7  was duly sworn to tell the whole truth; that the

8  foregoing pages constitute a full, true, and accurate

9  transcript of all proceedings had in the foregoing

10 matter, all done to the best of my skill and ability.

11 Pursuant to request, notification was provided that the

12 deposition is available for review and signature.

13

14              I FURTHER CERTIFY that I am not related

15 to nor employed by any of the parties hereto, and have

16 no interest in the outcome.

17

18              WITNESS my hand this 23rd day of

19 September, 2013.

20

21                       _____
                         Marcella L. Daughtry, RPR
22                       Reporter No. 50623

23

24

25

# EXHIBIT 10

Parsons v. Ryan
Deposition of Nicole Taylor, J.D., Ph.D. - 9/5/2013

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Victor Parsons; Shawn | ) | No: |
| Jensen; Stephen Swartz; | ) | CV12-00601-PHX-NVW |
| Dustin Brislan; Sonia | ) | (MEA) |
| Rodriguez; Christina | ) | |
| Verduzco; Jackie Thomas; | ) | |
| Jeremy Smith; Robert Gamez; | ) | |
| Maryanne Chisholm; Desiree | ) | |
| Licci; Joseph Hefner; Joshua | ) | |
| Polson; and Charlotte Wells, | ) | |
| on behalf of themselves and | ) | |
| all others similarly | ) | |
| situated; and Arizona Center | ) | |
| for Disability Law, | ) | |
|              Plaintiffs, | ) | |
|    v. | ) | |
| Charles Ryan, Director, | ) | |
| Arizona Department of | ) | |
| Corrections; and Richard | ) | |
| Pratt, Interim Division | ) | |
| Director, Division of Health | ) | |
| Services, Arizona Department | ) | |
| of Corrections, in their | ) | |
| official capacities, | ) | |
|              Defendants. | ) | |
| | ) | |

DEPOSITION OF NICOLE TAYLOR, J.D., Ph.D.

September 5, 2013
9:13 a.m.
Phoenix, Arizona

Prepared by:
Marcella Daughtry, RPR
Arizona Certified
Reporter No. 50623

Prepared for:

(Copy)

GLENNIE REPORTING SERVICES
(602) 266-6535   www.glennie-reporting.com

Parsons v. Ryan
Deposition of Nicole Taylor, J.D., Ph.D. - 9/5/2013

Page 277

1    you out, but at Kasson, where that's kind of our lowest

2    denominator, that may not get you out.  So that's why

3    each of them are different.

4        Q    To your knowledge, has a prisoner ever been

5    terminated from the Kasson program for misbehavior?

6        A    I can't think of any specific ones.

7        Q    To your knowledge, has a prisoner ever been

8    terminated from CB-1 program for misbehavior?

9        A    Yes, they have.  I can't think of the specific

10   names, but I know they have had one or two stabbings

11   there, and my understanding is those individuals were

12   removed.

13       Q    I think you testified that you anticipate

14   being able to testify a year from now that the care

15   provided to ADC inmates meets constitutional

16   requirements.  Is that correct?

17                   MS. CLOMAN:  Form.

18                   THE WITNESS:  That is my expectation,

19   yes.

20       Q    BY MR. FATHI:  Could you testify to that

21   effect today?

22       A    I think there are areas that need improvement

23   before I could testify to that today, and those are the

24   pieces that I have worked with Corizon to identify and

25   come up with a plan.

Parsons v. Ryan
Deposition of Nicole Taylor, J.D., Ph.D. - 9/5/2013

```
                                                    Page 285

 1   STATE OF ARIZONA    )
                         )
 2   COUNTY OF MARICOPA  )

 3

 4               I, Marcella L. Daughtry, a Certified

 5   Reporter, Certificate No. 50623, in the State of

 6   Arizona, do hereby certify that the foregoing witness

 7   was duly sworn to tell the whole truth; that the

 8   foregoing pages constitute a full, true, and accurate

 9   transcript of all proceedings had in the foregoing

10   matter, all done to the best of my skill and ability.

11   Pursuant to request, notification was provided that the

12   deposition is available for review and signature.

13

14               I FURTHER CERTIFY that I am not related

15   to nor employed by any of the parties hereto, and have

16   no interest in the outcome.

17

18               WITNESS my hand this 16th day of

19   September, 2013.

20

21                         _____

                           Marcella L. Daughtry

22                         Arizona Certified

                           Reporter No. 50623

23

24

25
```

# EXHIBIT 11

1   Arizona Attorney General Thomas C. Horne
    Office of the Attorney General
2   Michael E. Gottfried, Bar No. 010623
    Assistant Attorney General
3   1275 W. Washington Street
    Phoenix, Arizona 85007-2926
4   Telephone: (602) 542-4951
    Fax: (602) 542-7670
5   Michael.Gottfried@azag.gov

6   Daniel P. Struck, Bar No. 012377
    Kathleen L. Wieneke, Bar No. 011139
7   Timothy J. Bojanowski, Bar No. 22126
    Nicholas D. Acedo, Bar No. 021644
8   Courtney R. Cloman, Bar No. 023155
    Ashlee B. Fletcher, Bar No. 028874
9   STRUCK WIENEKE, & LOVE, P.L.C.
    3100 West Ray Road, Suite 300
10  Chandler, Arizona  85226
    Telephone:  (480) 420-1600
11  Fax:  (480) 420-1696
    dstruck@swlfirm.com
12  kwieneke@swlfirm.com
    tbojanowski@swlfirm.com
13  nacedo@swlfirm.com
    ccloman@swlfirm.com
14  afletcher@swlfirm.com

15  *Attorneys for Defendants*

16              **UNITED STATES DISTRICT COURT**

17                 **DISTRICT OF ARIZONA**

18  Victor Parsons; Shawn Jensen; Stephen          NO. 2:12-cv-00601-NVW
    Swartz; Dustin Brislan; Sonia Rodriguez;
19  Christina Verduzco; Jackie Thomas; Jeremy
    Smith; Robert Gamez; Maryanne Chisholm;       **DEFENDANT CHARLES RYAN'S**
20  Desiree Licci; Joseph Hefner; Joshua Polson;  **FIRST REQUEST FOR**
    and Charlotte Wells, on behalf of themselves  **PRODUCTION OF DOCUMENTS**
21  and all others similarly situated; and Arizona **AND THINGS TO PLAINTIFF**
    Center for Disability Law,                    **MARYANNE CHISHOLM**
22
                                    Plaintiffs,
23
                    v.
24
25  Charles Ryan, Director, Arizona Department
    of Corrections; and Richard Pratt, Interim
26  Division Director, Division of Health Services,
    Arizona Department of Corrections, in their
27  official capacities,

28                                  Defendants.

    2658850.1

PROPOUNDING PARTY:  **Charles Ryan**

RESPONDING PARTY:  **Maryanne Chisholm, and counsel of record**

SET NO.:  **ONE**

Pursuant to FED. R. CIV. P. 34, Defendant Charles Ryan, through counsel, requests that Plaintiff Maryanne Chisholm respond to the following Request for Production of Documents and Things in writing and in accordance with the following definitions and instructions, and serve those responses and objections, if any, to counsel for Defendant.

Unless provided otherwise, the time and place for production are:

DATE:  **Thirty (30) days from the date of service**

PLACE:  **Struck Wieneke & Love, P.L.C.**
**3100 W. Ray Road, Suite 300**
**Chandler, Arizona 85226**

The following list sets forth the items to be produced, either by individual item or by category and describes each item and category with reasonable particularity.

The response shall state, with respect to each item or category, that production and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for objection shall be stated.  To the extent that Plaintiffs only object to a portion of the request, documents shall be produced in response to the portion not objected to.

The documents or things sought by this Request include documents and things in the possession, custody or control of the party or person, his attorneys and all agents, servants, representatives, employees, investigators and others who may have obtained custody of the documents and things on behalf of the opposing party or his attorneys.

This request is intended to be of a continuing nature, and if additional materials are discovered at a later date, they should be forwarded to the undersigned counsel.  This request should include any and all documentation of any nature or kind

2

relative to the incidents which are the subject of this action, investigation relative thereto, your claims for injuries and damages resulting therefrom, your claims for injunctive or declaratory relief, and documents referred to or relating in any way whatsoever to your answers to interrogatories or those matters set forth in your Complaint.

## INSTRUCTIONS FOR PREPARATION

A.      All information is to be divulged that is in the possession, custody, or control of the Plaintiff, her attorneys, investigators, agents, employees, or other representatives of the named party.

B.      The terms "you," or "your," shall mean the Plaintiff to whom this request is directed.

C.      The term "Plaintiff" or "Class Representative" shall mean Maryanne Chisholm, as well as any other individual(s) subsequently named to serve in that capacity.

D.      The term "Plaintiffs" shall mean both the Class Representatives as named parties to this litigation, as well as all other individuals who are potentially members of any class or sub-class, as is or will be defined in Plaintiffs' operative Complaint and/or Motion for Class Certification.

E.      The term "Healthcare" shall mean the events which occurred relating to the delivery of healthcare services including but not limited to medical care, dental care, mental health care and pharmacy services, the alleged denial of which forms the basis of this lawsuit, unless otherwise specified.

F.      "ADC" shall mean and refer to Arizona Department of Corrections, its prison facilities, officers, employees, agents, designees, representatives, and assigns.

G.      The terms "document" or "documents" are meant to include every writing and record of every type and description whether original or a copy, in the possession of or known to Plaintiffs including but not limited to correspondence, handwritten notes, memoranda, computer print-outs, photographs, films, photographic reproductions, tapes and records of all types, corporate minutes, books, pamphlets, rules, regulations,

3

schedules, pictures, voice recordings, and every other device or medium on or through which information of any type is transmitted, recorded or preserved.  This includes all magnetically kept or computer generated information such as hard disks, floppy disks, email, etc.

H.      To the extent additional Class Representatives are identified, named in this action or additional inmates are identified by Plaintiffs pursuant to Fed. R. Civ. P. 26(e), supplemental responses to these requests shall be provided for those individuals within 30 days of their identification or disclosure, without request by Defendants.

I.      If any request is not answered fully and completely on the grounds of a claimed privilege or protection from discovery, the claimed privilege or protection is to be identified in writing on or before the date an answer is required with respect to each such request and the following information set forth:

    1.      the type of privilege or protection asserted and the reason(s) you contend the document is privileged or protected;

    2.      the factual basis for the claim of privilege or protection;

    3.      the nature of the document (i.e., letter, memorandum, etc.);

    4.      the subject matter of the document;

    5.      the date of the document;

    6.      the author of the document and the author's title or position;

    7.      the recipient of the document and the recipient's title or position;

    8.      the identity of all persons who have seen the document, including their title and position;

    9.      the identity of all persons mentioned in the document, including their title and position; and

    10.     the length of the document (i.e., number of pages).

J.      If any document referring or relating to any matter about which these requests inquire was formerly in the possession, custody or control of the party to whom this discovery is addressed and has since been lost or destroyed, the party to whom this

4

discovery is addressed shall submit, in lieu of each such document, as written statement which:

> 1.  identifies the document by providing its author(s), addressee(s), recipient(s), title, date, subject matter, number of pages, and identifies all persons whomever possessed copies; and
>
> 2.  states when and how the document was lost or destroyed, and if destroyed, identifies each person have knowledge concerning such destruction or loss and the person(s) requesting and performing such destruction, the reasons for such destruction, and identifies each document evidencing the document's prior existence and/or facts concerning its destruction.

K.    The term "employee" shall include any former employee of the named Defendants.

L.    "All" and "each" mean "each and every."

M.    "All documents relating to" refers to all documents that pertain, refer, constitute, concern, affect, explain, discuss, mention or otherwise involve, reflect upon, are connected with, or are relevant to the subject matter of the particular request for production of documents.

N.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request the broadest range of responses.

O.    "Communication" means the transmittal of thoughts, ideas, data or information between persons or from one location to another by any means.

P.    "Date" means the exact day, month or year, or, if the exact day, month and year is not known, the closest approximation thereof.

Q.    "Person" means any natural person and any business, legal or governmental entity or association, including, but not limited to, firms, partnerships, associations,

corporations and divisions, departments or other units thereof, joint ventures, syndicates, or governmental agencies, departments, boards, or bureaus, or any other entity.

R.     "Representative" means any person, including Plaintiff's attorneys, agents, and employees, who act, has at any time acted, or has at any time by any person been requested or solicited to act, at Plaintiff's request, for Plaintiff's benefit or on Plaintiff's behalf.

S.     "Relating to," "relate," "concern," "concerning," "indicating," or "reflecting" means referring to, having any relationship to, pertaining to, consisting of, referring to, describing, discussing, containing, mentioning, citing, summarizing, analyzing, evidencing or constituting evidence of, or bearing any logical or factual connection with the matter discussed, whether in whole or in part.

T.     "Identify" or "identity" used with reference to an individual means to state his or her full name, present or last known address, present or last known position and business affiliation, and employer, title, and position at the time in question.

U.     "Identify" or "identity" used with reference to a writing means to state the date, author, type of document (e.g., letter, memorandum, telegram, chart, note, application, e-mail, etc.) or other means of identification, and its present location or custodian.  If any such document is no longer in Plaintiff's possession or subject to its control, state what disposition was made of it.

V.     "Identify" or "identity" used with reference to an oral communication, means conference, conference or meeting, the identity of all parties to the communication, conference or meeting, and to state the subject matter of the communication, conference or meeting, and the general substance of what was said and/or transpired

W.     "Incident" shall mean the allegations contained within the complaint that involve or describe a constitutional deprivation of adequate healthcare, conditions of confinement, or other constitutional infirmities as alleged by plaintiffs and class representatives.

**REQUESTS FOR PRODUCTION**

**REQUEST NO. 1.**    All documents referring or relating to any criminal or civil charges brought against Plaintiffs and the Class Representatives - and all current or former inmates you have disclosed pursuant to FED. R. CIV. P. 26 or may seek to call at trial - by any jurisdiction, not limited to, any charges brought while such Plaintiffs were juveniles, including documents reflecting the outcome of any such charges.

**REQUEST NO. 2.**    All documents referring or relating all past employment of Plaintiffs and Class Representatives, including, but not limited to, all personnel files, employee reviews, and termination records.

**REQUEST NO. 3.**    All documents that refer or relate to the incident, involving Plaintiffs, including, but not limited to, all communications of any kind between any other Plaintiff and any current or former ADC, state department of corrections, county or municipality jail or lock-up, or ADC employee, representative, agent, and/or any other person acting on behalf of those entities regarding any aspect of Plaintiffs' incarceration or healthcare.

**REQUEST NO. 4.**    Any and all communications of the Plaintiffs with any current or former inmate or witness that plaintiffs have disclosed, any current or former inmate or witness identified in discovery, any inmate or witness plaintiffs may call at trial, attorneys (excluding counsel for this matter), media, family members, friends, other inmates/detainees, or any other person regarding the allegations in the Complaint.

**REQUEST NO. 5.**    Medical and legal information relative to any injury or condition any of the Plaintiffs claim they incurred as a result of the conditions of their incarceration or healthcare including:

      a.      bills for medical, mental health and related treatments;

b.    hospital records, ECGs, EKGs, MRIs, x-rays, CT scans, results of tests and treatments rendered;

c.    medical records and reports of doctors and other medical practitioners, examination, treatment and findings for injuries sustained as a result of the incident;

d.    court orders, and documents.

**REQUEST NO. 6.**    All documents relied upon in drafting or supporting any allegations contained in the Complaint.

**REQUEST NO. 7.**    Any and all oral, written or recorded statements or admissions made or claimed to have been made by any party or witness relating to ADC.

**REQUEST NO. 8.**    Any and all documents gathered by you from any party or non-party to this litigation in response to a medical records request, Public Records Act Request, Privacy Act request or  Freedom of Information Act request (or other records obtained under any similar open governance law), which have not previously been provided to Defendants.

**REQUEST NO. 9.**    Please produce all documents of any and all medical providers with whom Plaintiffs treated during the ten (10) years before Plaintiff's incarceration.

**REQUEST NO. 10.**    Please produce any and all journals, diaries, chronologies, notes, memos, letters, correspondence, email communications, or other documents drafted by Plaintiffs or anyone on Plaintiffs' behalf that refer to, describe, or document the incident that is the subject of this lawsuit.

**REQUEST NO. 11.**  Please produce any and all correspondence, letters, memoranda, email communications, complaints, grievances, grievance responses, and requests for service responses, that Plaintiffs received from the ADC or any State of Arizona employee (or former employee) related to the allegations contained in Plaintiff's Complaint.

**REQUEST NO. 12.**  Please produce any and all exhibits Plaintiffs intend to offer or introduce at trial or hearing under Federal Rules of Evidence 801(d)(2), as related to testimony offered or elicited from any ADC employee, former employee or representative.

**REQUEST NO. 13.**  Any and all medical records and reports, medical bills, hospital records, ECGs, EKGs, MRIs, x-rays, CT scans, results of tests and documentation of treatments rendered, care provided, examinations or testing conducted as provided by any medical provider, hospital, physician, doctor, nurse, nurse practitioner, specialist, physician's assistant, therapist, chiropractor, physical therapist, occupational therapist, psychiatrist, psychologist, counselor, mental health care provider and/or counselor seen by Plaintiffs and Class Representatives - and all current or former inmates you have disclosed pursuant to Fed. R. Civ. P. 26 or may seek to call at trial - since January 1, 2010, whether or not Plaintiffs contend that the treatment, care, examination or testing relates to the incident in question.

**REQUEST NO. 14.**  Expert witnesses' documentation, including:

    a.    reports, summaries, notations, and correspondence relative to each expert's examination, investigation, and findings; and

    b.    résumé or curriculum vitae of each expert contacted by you, including educational background and field of expertise; and

    c.    all the documentation furnished to each expert; and

    d.    laboratory and other reports of findings of tests and investigation of any

1  nature or kind.

2

3  **REQUEST NO. 15.**  Any and all documents or things which have not previously been

4  disclosed by you pursuant to Fed. R. Civ. P. 26 and which you may use at the time of trial

5  for purposes of impeachment.

6

7  **REQUEST NO. 16.**  Any and all documents or things relating to the allegations in the

8  Complaint that any plaintiff was provided with substandard medical care by ADC.

9

10  **REQUEST NO. 17.**  Any and all documents or things relating to the allegations in the

11  Complaint that any plaintiff was provided with substandard mental health care by ADC.

12

13  **REQUEST NO. 18.**  Any and all documents or things relating to the allegations in the

14  Complaint that any plaintiff was provided with substandard dental care by ADC.

15

16  **REQUEST NO. 19.**  Any and all documents or things demonstrating unconstitutional

17  conduct by ADC with regard to the conditions of confinement at any ADC prison facility.

18

19  **REQUEST NO. 20.**  Any and all documents or things relating to the factual allegations

20  set forth in the Complaint, or pertaining to the conditions of confinement experienced by

21  Class Representatives establishing the condition as common, typical or representative of

22  the conditions of confinement experienced by any other plaintiff.

23

24  **REQUEST NO. 21.**  Any and all documents which form the basis of Class

25  Representatives claim that the provision of medical care experienced by Class

26  Representatives is common, typical or representative of the medical care experienced by

27  any other plaintiff.

28

**REQUEST NO. 22.** Any and all documents which form the basis of class representatives claim that the provision of mental healthcare experienced by Class Representatives is common, typical or representative of the mental healthcare experienced by any other plaintiff.

**REQUEST NO. 23.** Any and all documents which form the basis of class representatives claim that the provision of dental care experienced by Class Representatives is common, typical or representative of the dental care experienced by any other plaintiff.

**REQUEST NO. 24.**  Any and all documents which form the basis of a claim that ADC employed an insufficient number of staff to address and/or provide medical, mental health, or dental services to inmates.

**REQUEST NO. 25.**  Any and all documents which form the basis of a claim that ADC failed to provide medication and or medical devices to inmates.

1

2

DATED this 30th day of July, 2012

STRUCK WIENEKE, & LOVE, P.L.C.

3

4

5

By /s/ Timothy J. Bojanowski

Daniel P. Struck
Kathleen L. Wieneke
Timothy J. Bojanowski
Nicholas D. Acedo
Courtney R. Cloman
Ashlee B. Fletcher
STRUCK WIENEKE, & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226

6

7

8

9

10

Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried
Assistant Attorney General
1275 W. Washington Street
Phoenix, Arizona 85007-2926

11

12

13

*Attorneys for Defendants*

14

15

16

COPIES of the foregoing e-mailed to
all counsel of record per the attached list
this 30th day of July, 2012.

17

18

By:   /s/*Kimberly Shadoan*

19

2671661.1

20

21

22

23

24

25

26

27

28

12

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amy Fettig: | afettig@npp-aclu.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| Daniel Joseph Pochoda: | dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; mtartaglia@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| Ilham A. Hosseini: | ihosseini@jonesday.com; areyes@jonesday.com |
| James Anthony Ahlers: | jahlers@perkinscoie.com; docketphx@perkinscoie.com; jroe@perkinscoie.com |
| James Duff Lyall: | jlyall@acluaz.org; gtorres@acluaz.org |
| Jennifer Ann Alewelt: | jalewelt@azdisabilitylaw.org; emyers@azdisabilitylaw.org; mlauritzen@azdisabilitylaw.org |
| Jill Louise Ripke: | jripke@perkinscoie.com; jgable@perkinscoie.com |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Kelly Joyce Flood: | kflood@acluaz.org; gtorres@acluaz.org |
| Kirstin T. Eidenbach: | keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; docketphx@perkinscoie.com |
| Matthew Benjamin de Mee: | mdumee@perkinscoie.com; cwendt@perkinscoie.com |
| Michael Evan Gottfried: | Michael.gottfried@azag.gov; colleen.jordan@azag.gov; lucy.rand@azag.gov |
| Sara Norman: | snorman@prisonlaw.com |
| Sophia Calderon: | scalderon@jonesday.com; lwong@jonesday.com; |
| Thomas Dean Ryerson: | tryerson@perkinscoie.com; docketphx@perkinscoie.com; rboen@perkinscoie.com |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; mlauritzen@azdisabilitylaw.org |
| Sarah Rauh: | srauh@jonesday.com; treyes@jonesday.com |
| David C. Kiernan: | dkiernan@jonesday.com |

13

# EXHIBIT 12

# [FILED UNDER SEAL]