Arizona Attorney General Thomas C. Horne
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <div align="right">Plaintiffs,</div> v. <br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <div align="right">Defendants.</div> | NO. 2:12-cv-00601-DJH <br><br><br> **DEFENDANTS' TRIAL BRIEF** |

# TABLE OF CONTENTS

**Page**

I.    BACKGROUND                                                                                    1

II.   GENERAL LEGAL PRINCIPLES APPLICABLE TO ALL CLAIMS                        5

    A.   The Named Plaintiffs Must Prove Actual Injury, Including the
        Imminent Injury Requirement, to Satisfy Article III Standing.                5

    B.   Even if Plaintiffs Establish They Have Standing, They Must Show
        Systemwide Constitutional Violations.                                        6

    C.   The Policy or Custom Requirement of *Monell* Applies to an Action
        Seeking Injunctive Relief.                                                   8

    D.   ADC's Current Conditions and Care Matter Most in Resolving
        Plaintiffs' Claims.                                                          10

    E.   The Two-Year Statute of Limitations Renders Untimely Any
        Constitutionally Deficient Care Given Prior to March 22, 2010.               11

    F.   ADC Policies Cannot Establish the Eighth Amendment Standard of
        Care.                                                                        12

III.  SPECIFIC LEGAL PRINCIPLES APPLICABLE TO MEDICAL,
      DENTAL, AND MENTAL HEALTH CARE CLAIMS                                        13

    A.   The Eighth Amendment Standard                                               13

        1.   The Subjective Prong:  deliberate indifference                        13

            a.   Negligence is not enough.                                      13

            b.   A difference of opinion between medical experts fails
                to prove deliberate indifference.                              14

        2.   The Objective Prong: substantial risk of serious harm                 14

            a.   Delays that do not cause harm, or result from a
                prisoner's conduct, do not violate the Eighth
                Amendment.                                                     15

            b.   The frequency of healthcare "encounters" between
                inmates and ADC staff is highly probative.                     15

            c.   Prisoner healthcare that exceeds community standards
                should not be considered violative of the Eighth
                Amendment.                                                     16

    B.   Additional Legal Issues Pertinent to Plaintiffs' Dental Claims              17

IV.   SPECIFIC LEGAL PRINCIPLES APPLICABLE TO CONDITIONS OF
      CONFINEMENT CLAIMS                                                           17

i

|   |   | | **Page** |
|---|---|---|---|
| A. | Plaintiffs' Conditions Claims Must be Analyzed Individually. | | 17 |
| B. | The Separation of Powers Doctrine Requires Deference to Prison Administrators. | | 19 |
| C. | Prison Officials May Authorize the Use of Chemical Spray Against Any Recalcitrant Inmates, Including Those on Psychotropic Medication. | | 20 |
|   | 1. | Use of force claims are governed by the malicious or sadistic standard. | 20 |
|   | 2. | Chemical spray is a valuable law enforcement tool, and its use should not be categorically banned against inmates on psychotropic medications. | 21 |
|   | 3. | An inmate's mental state or medication does not exempt him from a particular use of force when justified. | 22 |
| D. | Low-Watt, Cell Illumination at Certain Maximum-Security Housing Units Does Not Violate the Eighth Amendment. | | 23 |
| E. | ADC's Restricted-Movement Meal Plan is Nutritionally Adequate and Constitutional. | | 24 |
| F. | The Opportunities for Social Interaction Preclude an Eighth Amendment "Extreme Isolation" Claim. | | 25 |
| G. | Outdoor Recreation Can Be Constitutionally Limited for High-Custody Inmates. | | 25 |
| H. | Personal Property (Leisure Items) Can Be Constitutionally Restricted for Subclass Inmates. | | 26 |
| V. | CLASS DECERTIFICATION ISSUES | | 27 |

1

## **TABLE OF AUTHORITIES**

2

**Page**

**Cases**

*Aguilar v. Schriro*
   2006 WL 2471830 (D. Ariz. 2006) .................................................................. 25
*Allen v. Bosley*
   253 Fed.Appx. 658 (9th Cir. 2007) ................................................................. 21
*Anderson v. Cnty. of Kern*
   45 F.3d 1310 (9th Cir. 1995) ..................................................................... 25, 26
*Arenberg v. Ryan*
   2011 WL 53060 (D. Ariz. Jan. 7, 2011) ......................................................... 11
*Armstrong v. Davis*
   275 F.3d 849 (9th Cir. 2001) .......................................................................... 27
*Austin v. Pennsylvania Dep't of Corrections*
   876 F.Supp. 1437 (E.D. Pa. 1995) ................................................................... 9
*Baptisto v. Ryan*
   2006 WL 798879 (D. Ariz. Mar. 28, 2006) .................................................... 23
*Baptisto v. Ryan*
   2005 WL 2416356 (D. Ariz. Sept. 30, 2005) ............................................. 26, 27
*Barnett v. Centoni*
   31 F.3d 813 (9th Cir. 1994) ............................................................................ 26
*Bates v. United Parcel Serv., Inc.*
   511 F.3d 974 (9th Cir. 2007) ............................................................................ 6
*Beard v. Banks*
   548 U.S. 521 (2006) ....................................................................................... 26
*Bell v. Wolfish*
   441 U.S. 520 (1979) ....................................................................................... 20
*Bermudez v. Ryan*
   2006 WL 2547345 (D. Ariz. 2006) ................................................................. 25
*Brown v. Plata*
   131 S.Ct. 1910 (2011) ................................................................................ 6, 19
*Burgess v. Raya*
   2013 WL 4459867 (E.D. Cal. 2013) ............................................................... 22
*Cano v. Taylor*
   739 F.3d 1214 (9th Cir. 2014) ........................................................................ 15
*Carr v. Tousley*
   2009 WL 1514661 (D. Idaho 2009) ................................................................ 23
*Casey v. Lewis*
   834 F.Supp. 1477 (D. Ariz. 1993) ............................................................... 9, 11
*Chappell v. Mandeville*
   706 F.3d 1052 (9th Cir. 2013) ........................................................................ 18
*Chavarria v. Stacks*
   102 Fed. App'x 433 (5th Cir. 2004) ................................................................ 23
*Chhoun v. Woodford*
   2005 WL 1910930 (N.D. Cal. 2005) ............................................................... 26
*Cholla Ready Mix, Inc. v. Civish*
   382 F.3d 969 (9th Cir. 2004) .......................................................................... 11
*City of Canton v. Harris*
   489 U.S. 378 (1989) ......................................................................................... 8
*Clay* v. *Miller*
   626 F. 2d 345 (CA4 1980) .............................................................................. 18

1

**Page**

*Clement v. Gome*
298 F.3d 898 (9th Cir. 2002) ............................................................ 13, 21

*Coleman v. Brown*
938 F.Supp.2d 955 (E.D. Cal. 2013) ....................................................... 9

*Coleman v. Schwarzenegger*
922 F.Supp.2d 882 (N.D. Cal. 2009) ....................................................... 8

*Crawford v. Bennett*
2008 WL 5429892 (D. Mont. 2008) ........................................................ 15

*Cunningham v. Jones*
667 F.2d 565 (6th Cir.1982) .............................................................. 24

*Davidson v. Scully*
114 F.3d 12 (2d Cir.1997) ............................................................... 24

*Dean v. Coughlin*
804 F.2d 207 (2nd Cir. 1986) ............................................................. 6

*Deorle v. Rutherford*
272 F.3d 1272 (9th Cir. 2001) ........................................................... 22

*Drummond v. City of Anaheim*
343 F.3d 1052 (9th Cir. 2003) ........................................................... 22

*Dukes v. Wal–Mart, Inc.*
509 F.3d 1168 (9th Cir. 2007) ........................................................... 27

*Eccleston v. Oregon ex rel. Oregon Dep't of Corr.*
168 F. App'x 760 (9th Cir. 2006) ........................................................ 21

*Eckerhart v. Hensley*
475 F.Supp. 908 (W.D. Mo. 1979) .......................................................... 9

*Estelle* v. *Gamble*
429 U. S. 97 (1976) ........................................................ 5, 13, 15, 16

*Farmer v. Brennan*
511 U.S. 825 (1994) ................................................................ passim

*Finley v. Parker*
253 Fed.Appx. 634 (9th Cir. 2007) ....................................................... 17

*Foster v. Runnels*
554 F.3d 807 (9th Cir. 2009) ............................................................ 17

*Franklin v. Smalls*
2013 WL 941569 (S.D. Cal. Mar. 8, 2013 ................................................. 23

*Freemon v. Ryan*
2011 WL 5169342 (D. Ariz. 2011) ......................................................... 25

*Garnica v. Washington Dep't of Corrections*
2013 WL 4094324 (W.D. Wash. 2013) ...................................................... 24

*Gen. Tel. Co. of Sw. v. Falcon*
457 U.S. 147 (1982) .................................................................... 27

*Gibson v. Cnty. of Washoe*
290 F.3d 1175 (9th Cir. 2002) ........................................................... 13

*Graves v. Arpaio*
633 F.Supp.2d 834 (D. Ariz. 2009) ...................................................... 26

*Green v. Ferrell*
801 F.2d 765 (5th Cir. 1986) ........................................................... 24

*Green v. Los Angeles Cnty. Superintendent of Sch.*
883 F.2d 1472 (9th Cir. 1989) .......................................................... 12

*Green v. Mansour*
474 U.S. 64 (1985) ..................................................................... 10

*Hafer v. Melo*
502 U.S. 21 (1991). ..................................................................... 9

iv

**Page**

*Halla v. Schriro*
   2006 WL 3735983 (D. Ariz. 2006) ................................................................. 9

*Hallett v. Morgan*
   296 F.3d 732 (9th Cir. 2002) ....................................................................... 16

*Hampton v. Ryan*
   2006 WL 3497780 (D. Ariz. 2006) (J. Wake), *aff'd*, 288 Fed.Appx.
   404 (9th Cir. 2008) ................................................................ 23, 24, 25, 26

*Harrison v. Bledsoe*
   2010 WL 186804 (M.D. Pa. 2010) ............................................................... 26

*Hartsfield v. Colburn*
   491 F.3d 394 (8th Cir. 2007) ....................................................................... 15

*Helling v. McKinney*
   509 U.S. 25 (1993) ................................................................................ 13, 14

*Henderson v. City and County of San Francisco*
   2006 WL 3507944 (N.D. Cal. 2006) .............................................................. 7

*Hoptowit v. Ray*
   682 F.2d 1237 (9th Cir. 1982) ............................................................... 19, 20

*Howard v. Nunley*
   2010 WL 3785536 (E.D. Cal. 2010) ............................................................. 22

*Howard v. Nunley*
   465 F. App'x 669 (9th Cir. 2012) ................................................................ 21

*Hudson v. McMillian*
   503 U.S. 1 (1992) ........................................................................................ 20

*Hudson v. Palmer*
   468 U.S. 517 (1983) .................................................................................... 26

*Hunt v. Dental Dep't*
   865 F.3d 198 (9th Cir. 1989) ......................................................................... 8

*Johnson v. Bd. of Regents of Univ. of Georgia*
   263 F.3d 1234 (11th Cir. 2001) ................................................................... 27

*Johnson v. California*
   543 U.S. 499 (2005) .................................................................................... 19

*Jonas v. Schriro*
   2006 WL 2772641 (D. Ariz. Sept. 25, 2006) ......................................... 23, 25

*Jose v. Thomas*
   2012 WL 2091527 (D. Ariz. 2012) .............................................................. 23

*Knox v. Davis*
   260 F.3d 1009 (9th Cir. 2001) ..................................................................... 12

*Kress v. CCA of Tennessee, LLC*
   694 F.3d 890 (7th Cir. 2012) ....................................................................... 10

*Lanzeiri v. Stewart*
   2005 WL 2449998 (D. Ariz. Sept. 30, 2005) ............................................... 14

*LeMaire v. Maass*
   12 F.3d 1444 (9th Cir. 1993) ....................................................................... 24

*Lerajjareanra-O-Kel-ly v. Johnson*
   2009 WL 1513285 (D. Idaho 2009) ............................................................. 26

*Lewis v. Casey*
   518 U.S. 343 (1996) .................................................................................. 5, 6

*Lierboe v. State Farm Mut. Auto. Ins. Co.*
   350 F.3d 1018 (9th Cir. 2003) ..................................................................... 27

*Los Angeles County v. Humphries*
   131 S.Ct. 447 (2010) .................................................................................... 8

*Lovell v. Brennan*
   728 F.2d 560 (1st Cir. 1984) ....................................................................... 10

**Page**

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) ............................................................. 6
*Madrid v. Gomez*
889 F.Supp. 1146 (N.D. Cal. 1995) .................................... 6
*Maloney v. Ryan*
2013 WL 3945921 (D. Ariz. July 31, 2013)...................... 24
*Mauro v. Arpaio*
188 F.3d 1054 (9th Cir. 1999) ........................................ 26
*McBride v. Frank*
2009 WL 2591618 (E.D. Wis. Aug. 21, 2009).................. 23
*McGee v. Gold*
2010 WL 5300805 (D. Vt. 2010) .................................... 23
*McGuckin v. Smith*
974 F.2d 1050 (9th Cir. 1992 .......................................... 15
*Miles v. Daniels*
231 Fed.Appx. 591 (9th Cir. 2007) ................................... 8
*Monell v. Dep't of Soc. Servs.*
436 U.S. 658 (1978) ..................................................... 8, 12
*Neal v. NaturalCare, Inc.*
2014 WL 346639 (C.D. Cal. Jan. 30, 2014) .................... 27
*Norwood v. Vance*
591 F.3d 1062 (9th Cir. 2010) .................................... 19, 20
*Ortega-Melendres v. Arpaio*
836 F. Supp. 2d 959 (D. Ariz. 2011), *aff'd sub nom.*, 695 F.3d
990 (9th Cir. 2012) ........................................................ 27
*Oviatt v. Pearce*
954 F.2d 1470 (9th Cir. 1992) ........................................... 8
*Parsons v. Ryan*
754 F.3d 657 (9th Cir. 2014) ............................................. 3
*Peralta v. Dillard*
744 F.3d 1076 (9th Cir. 2014) ......................................... 15
*Pinkston v. Fierro*
315 Fed. Appx. 628 (9th Cir. 2009) ................................. 21
*Porras v. County of Los Angeles*
2006 WL 4941837 (C.D. Cal. 2006) .................................. 7
*Randle v. Miranda*
315 F. App'x. 645 (9th Cir. 2009)..................................... 21
*Rector v. City & Cnty. of Denver*
348 F.3d 935 (10th Cir. 2003) ........................................ 27
*Rhodes v. Chapman*
452 U.S. 337 (1981) ................................................... 17, 19
*Rotondo v. Ryan*
2012 WL 424384 (D. Ariz. 2012) .................................... 23
*Ruiz v. Estelle*
679 F.2d 1115 (5th Cir. 1982) ........................................ 16
*Schuenke v. Wisconsin Dep't of Corrections*
2013 WL 2558251 (W.D. Wis. 2013) .............................. 12
*Shannon v. Babb*
103 F. App'x 201 (9th Cir. 2004)..................................... 12
*Shapley v. Nevada Bd. of State Prison Comm'rs*
766 F.2d 404 (9th Cir. 1985) ......................................... 15
*Sherman-Bey v. Cate*
2012 WL 6864600 (C.D. Cal. 2012) ................................ 13

vi

**Page**

*Silverstein v. Federal Bureau of Prisons*
559 Fed.Appx. 739 (10th Cir. 2014) .................................................. 18
*Simon v. E. Ky. Welfare Rights Org.*
426 U.S. 26 (1976) ........................................................................... 6
*Smith v. Grounds*
2010 WL 4700219 (N.D. Cal. 2010) ................................................ 15
*Smith v. Wade*
461 U.S. 30 (1983) ........................................................................... 13
*Snow v. McDaniel*
681 F.3d 978 (9th Cir. 2012) ........................................................... 14
*Sostre v. McGinnis*
442 F.2d 178 (2d Cir. 1971) ............................................................ 24
*Soto v. Dickey*
744 F.2d 1260 (7th Cir. 1984) ......................................................... 21
*Spain v. Procunier*
600 F.2d 189 (9th Cir. 1979) ................................................ 18, 21, 25
*Stewart v. Stewart*
60 F. App'x. 20 (9th Cir. 2003) ....................................................... 22
*Stockton v. Tyson*
2011 WL 5118456 (E.D. Cal. 2011) ................................................ 26
*Sze v. I.N.S.*
153 F.3d 1005 (9th Cir. 1998) ......................................................... 11
*Thompson v. City of Chicago*
472 F.3d 444 (7th Cir. 2006) ........................................................... 12
*Tillery v. Owens*
719 F.Supp. 1256 (W.D. Pa. 1989) ................................................... 9
*Toguchi v. Chung*
391 F.3d 1051 (9th Cir. 2004) ......................................................... 14
*Trevino v. Gates*
99 F.3d 911 (9th Cir. 1996) .............................................................. 8
*Turner v. Safley*
482 U.S. 78 (1987) ........................................................................... 19
*Turner v. Upton*
2013 WL 4852689 (M.D. Ga. 2013) ................................................ 26
*U.S. Parole Comm'n v. Geraghty*
445 U.S. 388 (1980) .......................................................................... 8
*Vasquez v. Frank*
290 Fed.Appx. 927 (7th Cir. 2008) .................................................. 23
*Walker v. Woodford*
593 F. Supp. 2d 1140 (S.D. Cal. 2008) ............................................ 23
*Washington v. Harper*
494 U.S. 210 (1990) ......................................................................... 19
*Webb v. Goord*
340 F.3d 105 (2nd Cir. 2003) ............................................................ 6
*Westways World Travel, Inc. v. AMR Corp.*
265 F. App'x 472 (9th Cir. 2008) .................................................... 27
*Whitley v. Albers*
475 U.S. 312 (1986) .................................................................... 20, 21
*Whren v. United States*
517 U.S. 806 (1996) ......................................................................... 12
*Wills v. Terhune*
404 F.Supp.2d 1226 (E.D. Cal. 2005) .............................................. 23

**Page**

*Wilson v. Meeks*
   52 F.3d 1547 (10th Cir. 1995) ........................................................................ 12
*Wilson v. Seiter*
   501 U.S. 294 (1991) ........................................................... 13, 17, 18, 19, 20
*Wilson v. Timko*
   972 F.2d 1348 (9th Cir. 1992) ...................................................................... 26
*WMX Techs., Inc. v. Miller*
   104 F.3d 1133 (9th Cir. 1997) ...................................................................... 15
*Wood v. Housewright*
   900 F.2d 1332 (9th Cir. 1990) ...................................................................... 14
*Yoon v. Hickman*
   171 Fed. Appx. 541 (9th Cir. 2006) ............................................................. 15


**Statutes**

42 U.S.C. § 1988 ................................................................................................ 11
A.R.S. § 12–542 ................................................................................................ 11
A.R.S. § 32–1291 .............................................................................................. 17


**Other Authorities**

Ariz.Adm.Code § R4-11-701 ............................................................................ 17
Ariz.Adm.Code § R4-11-702 ............................................................................ 17
Ninth Circuit Model Jury Instructions, 9.25 (Eighth Amendment – Prisoner's
   Claim Re Conditions of Confinement/Medical Care) .................................... 19


**Rules**

Rule 23(c)(1)(C), Federal Rules of Civil Procedure ........................................ 27

## I.   BACKGROUND[1]

**The Arizona Department of Corrections**. ADC incarcerates approximately 34,000 inmates in 10 facilities statewide.  Each facility has a different inmate population and different staffing levels. For instance, Eyman, Florence, Lewis, Perryville, Phoenix, Tucson, and Yuma are considered corridor facilities because of their proximity to Phoenix and Tucson; Douglas, Safford, and Winslow are not corridor facilities, and house healthier, low custody inmates; Florence and Eyman house inmates on condemned row, Security Threat Groups ("STG"), and sex offenders; Lewis houses primarily protective custody inmates; and Perryville houses all female inmates.  Although ADC's policies governing health care and conditions of confinement apply to all facilities and inmates, the implementation of those policies can vary and/or lead to different results depending on the specific needs of an inmate and the surrounding circumstances.  Nine ADC facilities are accredited by the National Commission on Correctional Health Care ("NCCHC").

**Healthcare Privatization.**  The Arizona Legislature privatized ADC's healthcare in 2011, and beginning on July 1, 2012, Wexford Health Services took over the provision of healthcare.  Under its contract with ADC, Wexford was obligated to provide medical, dental, and mental health care, and to follow all ADC policies.  ADC's Health Services Contract Monitoring Bureau oversees contract compliance and quality/clinical care. On March 4, 2013, Corizon Inc. took over the provision of healthcare, and continues to provide healthcare today. Corizon provides monthly and quarterly reports to ADC documenting various aspects of healthcare, including staffing, wait times, specialty care, medication, chronic care, and appointments. Smallwood Prison Dental Services is a separate private entity that provides dental care to ADC inmates.

**Maximum Custody Inmates.** ADC inmates who are classified as maximum custody are generally required to remain in their cells for up to 22 hours per day.[2]  These

---

[1] The following information derives from Defendants' Motion for Summary Judgment, Statement of Facts, and other pleadings filed in this case.

1

cells are known as "maximum custody cells."  All of the maximum custody cells have sufficient ventilation, and either a perforated cell front, a vision panel in the door or cell wall, a sky light, and/or a window looking outside, and many of them have double-beds and house two inmates.  Inmates are permitted to leave their cell to shower (for 30 minutes, three times per week), and for recreation (6 hours weekly), non-contact visits, out-of-cell programming and social activities, work opportunities, and opportunities to visit and/or speak with healthcare, program, security, and religious staff. They also have telephone privileges and access to appliances such as televisions, cassette players, and headphones.  Some maximum custody cells have 24-hour illumination (7-watt night light) so that staff can confirm the inmate's welfare while sleeping. To compensate for decreased energy needs, male inmates in maximum custody are provided a slightly lower caloric intake meal plan (2,657 calories per day on average) that meets the Recommended Daily Allowance nutrient standards of the National Academies of Science–National Research Council.

**The Complaint**.  On March 22, 2012, fourteen ADC inmates and the Arizona Center for Disability Law ("ACDL") filed a Complaint, alleging inadequate healthcare and cruel and unusual conditions of confinement, in violation of the Eighth Amendment. The Defendants are ADC Director Charles Ryan, and the Division Director of ADC's Health Services Contract Monitoring Bureau, Richard Pratt. They are both sued solely in their official capacities.  Plaintiffs seek declaratory and injunctive relief only, and their counsel request their attorneys' fees and costs.

---

[2] An inmate can be classified as "maximum custody" if he or she committed a serious underlying offense, committed violent, disruptive, or riotous acts while incarcerated, escaped or attempted to escape, or poses a serious threat to the security of the institution or themselves.

**Class Certification**.  On March 6, 2013, the district court certified one class with 10 certified healthcare claims, and one subclass with 7 certified conditions-of-confinement claims:[3]

## Class Claims

i.     Failure to provide timely access to health care;
ii.    Failure to provide timely emergency treatment;
iii.   Failure to provide necessary medication and medical devices;
iv.    Insufficient health care staffing;
v.     Failure to provide care for chronic diseases and protection from infectious disease;
vi.    Failure to provide timely access to medically necessary specialty care;
vii.   Failure to provide timely access to basic dental treatment;
viii.  Practice of extracting teeth that could be saved by less intrusive means;
ix.    Failure to provide mentally ill prisoners medically necessary mental health treatment (i.e., psychotropic medication, therapy, and inpatient treatment); and
x.     Failure to provide suicidal and self-harming prisoners basic mental health care.

## Subclass Claims

i.     Inadequate psychiatric monitoring because of chronic understaffing;
ii.    Use of chemical agents against inmates on psychotropic medications;
iii.   Lack of recreation;
iv.    Extreme social isolation;
v.     Constant cell illumination;
vi.    Limited property; and
vii.   Insufficient nutrition.

Defendants appealed the class-certification order, and it was affirmed by a three-judge panel of the Ninth Circuit. *See Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014).[4] Defendants' petition for rehearing en banc is still pending.

---

[3] The class is comprised of "[a]ll prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices of the ADC." The subclass includes "[a]ll prisoners who are now, or will in the future be, subjected by the ADC to isolation, defined as confinement in a cell for 22 hours or more each day."

[4] The opinion, authored by Judge Reinhardt, relied heavily on the Named Plaintiffs' and expert declarations, which were, at that juncture, largely unrebutted because of the small window for class discovery. Plaintiffs disclosed their experts just days before filing their motion for class certification. Defendants did not have an opportunity to depose Plaintiffs or their experts, nor did they have an opportunity to investigate the foundation for their experts' conclusory opinions.

3

1
2
3
4
5
6
7
8
9

**Summary Judgment and *Daubert* Motions.**   Defendants moved for summary judgment on Plaintiffs' claims.  (Doc. 902.)  Although the motion was ultimately denied, Judge Wake repeatedly expressed skepticism about Plaintiffs' claims. (Doc. 1058 at 6-8, 17-21, 26-28, 31-34, 40-41, 61-62, 64-67.)  Judge Wake also noted the possibility that Plaintiffs' personal allegations were not truthful (Doc. 1065 at 6: "The foregoing should not be misconstrued to mean that the Court is unconcerned with the possibility that the Named Plaintiff's declarations in support of class certification did not, in fact, accurately describe the medical care they received"), and he was less restrained in highlighting the gap between Plaintiffs' sworn declarations and their actual medical records:

10
11
12

> THE COURT: [B]ut again, those materials deal with documented care provided that at least in some instances suggests either delusion or fraud on the part of the named plaintiffs and what they alleged.

13

> \*      \*      \*

14

> THE COURT: Or incredibly bad memory. That's a third possibility.

15

> \*      \*      \*

16
17
18

> THE COURT: Well, actually, let me help you out. I have already said this. I see these cases all the time. Those claims look like, exactly like, the claims I grant summary judgment against all the time.

19

> MR. SPECTER:  Yes, but do they all have --

20

> THE COURT:  So if you have something that's going to take me above the other 99.9 percent, you didn't give it to me.

21
22
23

(Doc. 1058 at 60-61; id. at 18: "this is not adequate representation to have a bunch of people, all of whom said things that proved to be either not true or some of them outright, perhaps, perhaps outright fraudulent.")

24
25
26
27

Ultimately, Judge Wake's desire to obtain a "stable result" by deferring all claims to trial—suggesting his ruling had more to do with practicality than crediting any of Plaintiffs' evidence—carried the day.  (Doc. 1058 at 54: "However I rule on this, there's going to be a trial…to the extent we could bring things to a trial…[w]e could get much

28

1   more stable resolution, much more reliable resolution, with Findings of Fact after trial

2   than taking a risk with summary judgment."; id. at 55-56: "rather than digging through

3   every possible inference or conclusion and deciding what it might mean.  It's actually a lot

4   easier thing to look at fact finding as to what's persuasive. And it is, as I said, it's much,

5   much more stable on review."; id. at 56: "But what I am thinking out loud with you all is

6   the additional cost to everyone may not be worth the significantly increased risk of having

7   to do this over again in two years, especially since we're going to have a trial here

8   anyway…".)

9       Defendants also moved to strike Plaintiffs' retained experts because their opinions

10  are unreliable and based on non-random, cherry-picked anecdotal evidence.  (Doc. 900.)

11  Judge Wake noted that Defendants' argument "may have merit that would exclude or

12  limit some of the specific opinions" but denied the motion because he wanted to hear the

13  testimony for himself, rather than read the attached reports.  (Doc. 1040 at 4-5.)  Judge

14  Wake also deferred ruling on Defendants' contention that Plaintiffs' experts' declarations

15  were sham declarations, preferring instead to hear the testimony at trial. (Doc. 1011 at 2-

16  4; Doc. 1040 at 5.)

17  **II.    GENERAL LEGAL PRINCIPLES APPLICABLE TO ALL CLAIMS**

18      **A.    The Named Plaintiffs Must Prove Actual Injury, including the
19             Imminent Injury Requirement, to Satisfy Article III Standing.**

20  Article III's actual injury requirement must be satisfied in all federal cases,

21  including inmate lawsuits alleging inadequate healthcare and future risk of harm. *See*

22  *Lewis v. Casey*, 518 U.S. 343, 350 (1996) ("If—to take another example from prison

23  life—a healthy inmate who had suffered no deprivation of needed medical treatment were

24  able to claim violation of his constitutional right to medical care, see *Estelle* v. *Gamble,*

25  429 U. S. 97, 103 (1976), simply on the ground that the prison medical facilities were

26  inadequate, the essential distinction between judge and executive would have disappeared:

27  it would have become the function of the courts to assure adequate medical care in

28  prisons.").  "[E]ven named plaintiffs who represent a class 'must allege and show that

5

they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 40 n.20 (1976). To establish standing, a class representative must show that their exposure to the alleged risk of harm is "concrete and particularized," "actual or imminent, not conjectural or hypothetical," and "fairly traceable" to the certified practices. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). And each Plaintiff must make this showing at trial "supported adequately by the evidence." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).[5]

**B.    Even If Plaintiffs Establish They Have Standing, They Must Show Systemwide Constitutional Violations.**

"Systemic" is the moniker favored by Plaintiffs' counsel and their experts to describe everything they see. But to prevail on their systemwide claims, they must show that each certified practice actually exists across the entire ADC system, i.e., at *all ten* ADC facilities. *Lewis*, 518 U.S. at 360 n.7; *see also Webb v. Goord*, 340 F.3d 105, 109 (2nd Cir. 2003) ("But, taken together, the claims do not establish the existence of a policy or practice existing throughout the DOCS system, or within a single DOCS facility").[6] Subpar treatment at one, two, or even a majority of facilities will not establish a "systemic deficiency" throughout all 10 ADC facilities.[7] The Central District of California

_____

[5] Plaintiffs' "systemic deficiencies" theory does not relieve them of Article III standing requirements essential to the exercise of federal court jurisdiction. The footnote in *Brown v. Plata*, 131 S.Ct. 1910, 1925, n.3 (2011), that they rely on is the essence of dicta, as it involved the propriety of a prisoner-release order stemming from undisputed overcrowding (190% of design capacity) that permeated California prisons, and no Article III argument was before the Court (as it was in *Lewis v. Casey*).

[6] Unlike the class action in *Madrid v. Gomez*, 889 F.Supp. 1146 (N.D. Cal. 1995), which challenged the constitutionality of healthcare and certain conditions at a single California facility (Pelican Bay), or the single facility challenge to healthcare provided at the Bedford Hills Correctional Facility in *Dean v. Coughlin*, 804 F.2d 207 (2nd Cir. 1986), this action seeks class relief against all 10 ADC facilities.

[7] Plaintiffs have not substantiated their class claims with statistical data showing clear and injury-producing patterns at all 10 facilities. Judge Wake has noted this deficiency: "Actually, most of the problem is this is a cumulation of anecdotes, not all of it, but most of it is that. And I have to figure out what to make of that. Early on I told you I saw this as a case to be determined on gross data, or at least a lot of it. But most of what I have is anecdotes from specifically identified files that have been reviewed among 37,000 prisoners. So what do I make of that?" (Doc. 1058 at 31.)

confronted and rejected a similar certified class action lawsuit challenging policies relating to the delivery of health care at the Los Angeles County Jail, after reviewing 13 inmate declarations and 36,654 court orders (during a five-year period) compelling the sheriff's department to provide inmate heathcare services:

> Plaintiffs have offered some very troubling accounts of mistreatment. However, *these are small in number and are not corroborated by any statistical pattern*. Although Defendants dispute the facts surrounding this alleged mistreatment, these facts are not material for purposes of the class action. *They are not material because even if the Court accepts these accounts as true, they remain insufficient to establish systemic inadequacy in violation of the Eighth Amendment*. Plaintiffs offer a mere thirteen examples, grossly insufficient to establish a pattern of conduct for purposes of demonstrating a systemic failure. According to Plaintiffs, 200,000 inmates flow through Defendants' jail system each year. (Complaint ¶ 20.) The tiny selection offered by Plaintiffs tells no particular story of a systemic failure. Similarly, the inmate complaint forms offered by Plaintiffs are varied in their particulars. *The Court cannot infer a systemic failure from such a small and varied array of data*.

*Porras v. County of Los Angeles*, 2006 WL 4941837, at *4 (C.D. Cal. 2006) (emphasis added); [8] *see also Henderson v. City and County of San Francisco*, 2006 WL 3507944, at *10 (N.D. Cal. 2006) ("plaintiffs contend the eighteen grievances submitted by jail inmates show that San Francisco has a systematic policy of deliberate indifference to constitutional violations. The court disagrees. Plaintiffs have selected these eighteen grievances from the more than 200 grievances against staff filed in San Francisco county jail no 2 over a one-year period, during which more than 6000 different inmates were housed in the facility.").

---

[8] When provided the statistics regarding court orders mandating healthcare, the *Porras* court stated: "The use of statistics to corroborate anecdotal evidence is a valid and potentially effective approach. But Plaintiffs' execution of this strategy is impotent here. The Court is unable to infer from the fact of court orders, numerous though they are, that Defendants jails are generally in violation of the Eighth Amendment. It is distinctly possible that a pattern of systemic failure lurks within this mass of statistics. If so, however, Plaintiffs have left it to the Court to discover any pattern. The Court is unable to do so." *Id*. at *5.

It was Plaintiffs' burden to define their proposed healthcare class and subclass, *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 408 (1980), and they did so very broadly, targeting all 10 ADC facilities for "systemic deficiencies." This presents a substantial evidentiary obstacle they cannot overcome at trial. *Cf. Coleman v. Schwarzenegger*, 922 F.Supp.2d 882, 922 (N.D. Cal. 2009) ("we conclude that clear and convincing evidence establishes that crowding [190% of design capacity] is the primary cause of the unconstitutional denial of medical and mental health care to California's prisoners.").

### C.   The Policy or Custom Requirement of *Monell* Applies to an Action Seeking Injunctive Relief.

A constitutional claim challenging a policy or practice requires proof that the policy or custom is the "moving force behind the constitutional violation." *City of Canton v. Harris,* 489 U.S. 378, 389 (1989); *Oviatt v. Pearce*, 954 F.2d 1470, 1481 (9th Cir. 1992); *see generally Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Liability "may not be predicated on isolated or sporadic incidents" and "[t]he custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled'" policy. *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell,* 436 U.S. at 691). In other words, isolated and sporadic instances of inadequate treatment by subordinate ADC staff is insufficient to hold Defendants liable. *See Hunt v. Dental Dep't,* 865 F.3d 198, 200 (9th Cir. 1989) (ADC director not liable for delay in providing dentures to inmate, as he "cannot be held vicariously liable for the fault of personnel at Florence"); *see also Miles v. Daniels*, 231 Fed.Appx. 591, at *592 (9th Cir. 2007) ("Finally, unlike the medical staff as to whom a triable issue was found in *Hunt,* Daniels is a prison administrator not directly entrusted with inmates' medical care.").

This causation requirement applies with equal force to this action for injunctive relief, *see Los Angeles County v. Humphries*, 131 S.Ct. 447, 452 (2010) ("[C]laims for prospective relief, like claims for money damages, fall within the scope of the 'policy or custom' requirement. Nothing in § 1983 suggests that the causation requirement contained in the statute should change with the form of relief sought"), because Director Ryan and

Mr. Pratt are sued solely in their official capacities, which is just another way of pleading against the State of Arizona. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Thus, when Plaintiffs complain of medical or dental staffing ratios at different ADC prison complexes, such alleged practices—assuming they reflect ADC policy—must be shown to result in unconstitutional harm.[9]  This will be exceedingly difficult, if not impossible, for Plaintiffs to establish given: (1) the presence of inmate wait times for medical care in most facilities that are better than what free world patients experience; and (2) the absence of evidence that inmates are routinely—on a systemic basis—suffering serious harm or even facing a substantial risk of serious harm. For example, if the evidence shows that the wait time for routine dental care (cleanings, fillings, non-pain procedures) is between two weeks and 1.5 months at all ten ADC facilities—and that such a brief delay is unlikely to routinely cause irreversible tooth decay[10]—the presence of staffing vacancies or ratios less than desired by Plaintiffs' expert is inconsequential and compels the entry of judgment in Defendants' favor on the dental staffing claim.[11]

---

[9] Independent of the policy-causation issue, because no or very few medical staff vacancies exist at any ADC facilities, and the staffing ratios are within acceptable ranges, this certified issue should be resolved in favor of Defendants. *See Casey v. Lewis*, 834 F.Supp. 1477, 1486, 1546 (D. Ariz. 1993) (ADC was not deliberately indifferent to medical needs when it "had a 13.9% overall medical staff vacancy rate" at the time of trial); *see also Coleman v. Brown*, 938 F.Supp.2d 955, 984–85 (E.D. Cal. 2013) (mental health staff vacancy rate of 29% was unacceptably high; per 2009 staffing plan, vacancy rate should not exceed 10%).

[10] As Judge Murguia stated in rejecting a similar argument: "It is common knowledge that tooth decay is not a condition that necessarily calls for immediate care. Dr. Sears considered a filling to be routine care for which an inmate is placed on a routine care list...there is no evidence to show that [defendants] knew that his teeth were decaying more rapidly than expected and that they were deliberately indifferent by disregarding his needs." *Halla v. Schriro*, 2006 WL 3735983, at *5 (D. Ariz. 2006).

[11] *See Austin v. Pennsylvania Dep't of Corrections*, 876 F.Supp. 1437, 1449 (E.D. Pa. 1995) ("The ratio of one registered nurse per 100 inmates is the same as that approved for SCI–Pittsburgh in [*Tillery v. Owens*, 719 F.Supp. 1256, 1290 (W.D. Pa. 1989)] (approving staffing plan of eighteen registered nurses for population over 1800)"); *Eckerhart v. Hensley*, 475 F.Supp. 908, 920 (W.D. Mo. 1979) (staffing recommendations of plaintiffs' experts "are instructive and useful in determining constitutional minima, but they are not dispositive.").

D.    **ADC's Current Conditions and Care Matter Most in Resolving Plaintiffs' Claims.**

The United States Supreme Court has made clear that *current* evidence of prison conditions is probative, if not necessary, to establish a future-risk-of-harm claim:

> In a suit such as petitioner's, insofar as it seeks injunctive relief to prevent a substantial risk of serious injury from ripening into actual harm, "the subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct," their attitudes and conduct at the time suit is brought and persisting thereafter. An inmate seeking an injunction on the ground that there is "a contemporary violation of a nature likely to continue," must adequately plead such a violation; to survive summary judgment, he must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future. In so doing, the inmate may rely, in the district court's discretion, on developments that postdate the pleadings and pretrial motions, as the defendants may rely on such developments to establish that the inmate is not entitled to an injunction. If the court finds the Eighth Amendment's subjective and objective requirements satisfied, it may grant appropriate injunctive relief.

511 U.S. at 845–46 (internal citations omitted). This holding is consistent with longstanding precedent that injunctive relief is only proper if there is a "continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 73 (1985); *Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991) ("When there is no continuing violation of federal law, injunctive relief is not part of a federal court's remedial powers.").

Because the essence of Plaintiffs' claims call on whether the *current* conditions and care at ADC meet constitutional minima, evidence of current conditions is the most relevant. *See Farmer*, 511 U.S. at 845; *see also Kress v. CCA of Tennessee, LLC*, 694 F.3d 890, 893 (7th Cir. 2012) (affirming district court's grant of summary judgment in favor of private prison facility because inmates failed to present evidence of any current and ongoing constitutional violations); *Lovell v. Brennan*, 728 F.2d 560, 562–63 (1st Cir. 1984) (affirming district court's dismissal of class claims challenging conditions of

10

confinement based on current conditions, not conditions at time of or pre-dating suit); *Arenberg v. Ryan*, CV 10-2228-PHX-MHM, 2011 WL 53060, at *4 (D. Ariz. Jan. 7, 2011) ("In attempting to establish either eligibility for an injunction or that a party is not entitled to injunctive relief, the parties may rely on developments that postdate the pleadings and pretrial motions."); and *Casey*, 834 F.Supp. at 1546–47 (district court considered evidence of prison conditions at time of trial).

Plaintiffs have, in the past, suggested that current evidence of conditions and care cannot save Defendants from liability under the voluntary cessation doctrine. That doctrine, however, is relevant only to the mootness defense, which Defendants have not raised. Nonetheless, voluntary cessation applies *only* if the changes arose "*because of* the litigation." *Sze v. I.N.S.*, 153 F.3d 1005, 1008 (9th Cir. 1998). Plaintiffs cannot make this connection, as the evidence at trial will show that the changes, modifications, and/or improvements in ADC healthcare and conditions that are reflected in the current evidence are not "because of" Plaintiffs' lawsuit, but because of circumstances outside this litigation, including: the statutory privatization of healthcare which started in 2009 and the contractual provisions requiring certain levels of care, and the transitions of two private healthcare providers (Wexford in July 2012 and Corizon in March 2013). *See Sze*, 153 F.3d at 1008 (rejecting voluntary cessation argument that action occurred because plaintiffs "drew particular attention" to the case because it "demonstrated no more than correlation" and not causation).

### E. The Two-Year Statute of Limitations Renders Untimely Any Constitutionally Deficient Care Given Prior to March 22, 2010.

Congress has never legislated a statute of limitations period for Section 1983 actions and the courts, pursuant to 42 U.S.C. § 1988, look to analogous state statutes. *Cholla Ready Mix, Inc. v. Civish,* 382 F.3d 969, 974 (9th Cir. 2004). The analogous Arizona statute is A.R.S. § 12–542, which provides a 2-year statute of limitations. Because the Complaint was filed on March 22, 2012, any claim accruing prior to March 22, 2010 should be barred as untimely, dismissed, and evidence associated

therewith not considered in connection with any of the individual or class claims asserted. The continuing-tort theory, which is rarely applied in § 1983 cases outside the discrimination context, *see Green v. Los Angeles Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1480 (9th Cir. 1989), does not apply because Plaintiffs cannot establish the requisite close relationship between the timely and untimely medical acts, most of which involve discrete incidents by different medical staff, under different employers, and at different facilities and units.  *See*, *e.g.*, *Shannon v. Babb*, 103 F. App'x 201, 201–02 (9th Cir. 2004), *Knox v. Davis*, 260 F.3d 1009, 1013-14 (9th Cir. 2001).

### F.    ADC Policies Cannot Establish the Eighth Amendment Standard of Care.

Plaintiffs cannot prove unconstitutional conduct under the Eighth Amendment by relying on the failure to comply with, or enforce, ADC policies.  For example, if ADC had a written policy requiring sutures to be provided by certified plastic surgeons rather than general physicians, or a policy requiring 3 hours of daily outdoor exercise and massage therapy for subclass inmates, Plaintiffs could not cite such policy as establishing the constitutional standard of care. ADC's policy ideals do not equate with a constitutional violation.[12]  *See Whren v. United States,* 517 U.S. 806, 815 (1996); *see also Thompson v. City of Chicago*, 472 F.3d 444, 455 (7th Cir. 2006) ("Whether Officer Hespe's conduct conformed with the internal CPD General Orders concerning the use of force on an assailant was irrelevant to the jury's determination of whether his actions…were 'objectively reasonable' under the Fourth Amendment."); *Wilson v. Meeks,* 52 F.3d 1547, 1554 (10th Cir. 1995) (holding that "violation of a police department regulation is insufficient for liability under section 1983" for excessive force); *Schuenke v. Wisconsin Dep't of Corrections*, 2013 WL 2558251, at \*5 (W.D. Wis. 2013) ("whether prison

---

[12] This issue should not be confused with Plaintiffs' burden under *Monell* to prove an Eighth Amendment violation as the result of an ADC policy or custom. Plaintiffs' theory in this case is that ADC—regardless of its written policies—has a *de facto* policy or custom of providing deliberately indifferent healthcare. (Doc. 372 at 13.) Plaintiffs remain free (and are obligated) to attempt to prove an allegedly *de facto* policy of constitutionally inadequate health care; they simply cannot utilize ADC's written policies as the functional equivalent of the constitutional standard of care.

officials are enforcing the state policies correctly is irrelevant" to show Eighth Amendment violation).

**III.    SPECIFIC LEGAL PRINCIPLES APPLICABLE TO MEDICAL, DENTAL, AND MENTAL  HEALTH CARE CLAIMS**

**A.    The Eighth Amendment Standard**

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Helling v. McKinney*, 509 U.S. 25, 33–35 (1993); *Wilson v. Seiter*, 501 U.S. 294, 302–303 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002).

**1.    The Subjective Prong: deliberate indifference.**

Deliberate indifference exists only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 at 837.  Even "an official's failure to alleviate a significant risk that he should have perceived but did not" is not deliberate indifference.  *Id.* at 838; *see also Gibson v. Cnty. of Washoe,* 290 F.3d 1175, 1188 (9th Cir. 2002).  The deliberate indifference standard approximates the criminal recklessness standard in criminal law.  *Farmer*, 511 U.S. at 839–40.  It is essentially one of purposeful cruelty, *Sherman-Bey v. Cate*, 2012 WL 6864600, at *3 (C.D. Cal. 2012), and the rough equivalent to the heavy burden a litigant faces in proving a claim for punitive damages under Section 1983.  *Smith v. Wade*, 461 U.S. 30, 53–56 (1983).

**a.    Negligence is not enough.**

Negligence (breach of the standard of care for the medical profession), or even gross negligence, is not enough to establish an Eighth Amendment violation.  *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely

13

1   because the victim is a prisoner."); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir.

2   1990) ("mere malpractice, or even gross negligence, does not suffice").

### b.   A difference of opinion between medical experts fails to prove deliberate indifference.

A difference of opinion concerning appropriate medical care—either between a physician and the prisoner, or between medical professionals—does not amount to deliberate indifference.  *Snow v. McDaniel,* 681 F.3d 978, 987 (9th Cir. 2012); *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).  This "reasonable-disagreement" principle was recently reflected by Judge Campbell in a decision recognizing that prison authorities may constitutionally choose one of two (or more) alternatives in scheduling prioritized medical or dental care:

> Plaintiff would have the Court conclude that the delays necessitated by the ADOC schedule evince deliberate indifference on the part of Defendants, but the Court cannot do so. With a large and growing prison population, Defendants necessarily must schedule dental care and other services, providing emergency care before routine care and providing routine care on a scheduled basis. Plaintiff essentially argues for a different policy-providing routine care on the basis of greatest need rather than on the basis of when the care is sought. In addition to the fact that Plaintiff presents no evidence that he would have received more prompt care under such a policy (that his dental needs were greater than those of other inmates), a disagreement with the wisdom or compassion of Defendants' scheduling policy does not establish that Defendants acted with deliberate indifference. Even if a jury could conclude that Defendants' scheduling of Plaintiff's care was negligent, or grossly negligent, Plaintiff would not establish the required mental intent.

*Lanzeiri v. Stewart*, 2005 WL 2449998, at *6 (D. Ariz. Sept. 30, 2005).

### 2.   The Objective Prong: substantial risk of serious harm.

The Eighth Amendment's objective prong requires not just exposure to a risk of harm, but exposure to a "*substantial* risk" that could result in "*serious* harm."  *Farmer*, 511 U.S. at 834.  A substantial risk is one that is "sure or very likely to cause serious illness and needless suffering" and gives rise to "sufficiently imminent dangers."  *Helling*, 509 U.S. at 33-34.  A potential harm is serious if it "could result in further significant

14

injury or the unnecessary and wanton infliction of pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

### a. Delays that do not cause harm, or result from a prisoner's conduct, do not violate the Eighth Amendment.

Mere delays in receiving healthcare generally does not violate the Eighth Amendment. *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Moreover, delays attributable to a prisoner's failure to show up for appointments, and refusals of treatment, are not of constitutional dimensions. *Yoon v. Hickman*, 171 Fed. Appx. 541, *542 (9th Cir. 2006); *Hartsfield v. Colburn*, 491 F.3d 394, 396–98 (8th Cir. 2007). Of course, with certain medical or dental procedures, such as a fitting for dentures, some delay may be medically necessary. *See*, *e.g.*, *Smith v. Grounds*, 2010 WL 4700219, at *2 (N.D. Cal. 2010) (rejecting Eighth Amendment claim based on similar time lapse for extraction/denture work because "the fabrication process for complete and partial dentures is a multi-step process involving a number of clinical and laboratory steps, each dependent upon the other"); *Crawford v. Bennett*, 2008 WL 5429892, at *9 (D. Mont. 2008) (dentist testimony that "a delay between a patient's extraction and fitting partial dentures is often recommended to allow healing of soft tissue and bone which can take up to six months or longer.").

### b. The frequency of healthcare "encounters" between inmates and ADC staff is highly probative.

When evaluating whether the medical treatment afforded an inmate has satisfied constitutional minima, the Ninth Circuit has emphasized the number of medical visits as some evidence of the prison's attentiveness to an inmate's care. *See*, *e.g.*, *Cano v. Taylor*, 739 F.3d 1214, 1217 (9th Cir. 2014) ("The record is replete with health need request forms filed by [inmate] and the record indicates that [inmate] was seen by mental health care employees regularly for his complaints"); *see generally Estelle v. Gamble,* 429 U.S. 97, 107 (1976). As outlined in Defendants' Motion for Summary Judgment, most of the

named Plaintiffs were seen and treated *hundreds* of times by healthcare professionals in the two-year period preceding this lawsuit (Doc. 902 at 18-20), and it was likely this realization that caused Judge Wake to chide Plaintiffs' counsel: "I don't want to put you on the spot, but it appears you have brought on these claims without getting their medical records." (Doc. 1058 at 66.)

c.  **Prisoner healthcare that exceeds community standards should not be considered violative of the Eighth Amendment.**

That this action resembles a sweeping audit of ADC's entire healthcare system, with Plaintiffs' experts applying a myopic scrutiny that the Mayo Clinic would find difficult to endure, cannot supplant Plaintiffs' obligation to prove criminally reckless treatment under the Eighth Amendment. ADC's healthcare should not be measured by community standards or "best practices" preferred by Plaintiffs' experts, but by the deliberate-indifference standard explained in *Farmer* and *Estelle*.  For instance, evidence showing that ADC inmate wait times at the majority of its 10 facilities are far *less* than what the average American faces when scheduling an appointment with his or her physician[13] falls far short of deliberate indifference.  *See Ruiz v. Estelle*, 679 F.2d 1115, 1149 (5th Cir. 1982) ("The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves, nor the therapy that Medicare and Medicaid provide for the aged or the needy. It prohibits only 'deliberate indifference to serious medical needs.'"); *see also Hallett v. Morgan*, 296 F.3d 732, 745 (9th Cir. 2002) ("dental services at the Prison were acceptable even under the usual standard of care in nonprison settings").

---

[13] A random survey conducted by a national physician search and consulting firm recently found that the average wait time to schedule an appointment with a doctor (specializing in cardiology, dermatology, obstetrics-gynecology, orthopedic surgery and family practice) in 15 major metropolitan areas was 18.5 days. http://www.merritthawkins.com/uploadedFiles/MerrittHawkings/Surveys/mha2014waitsurvPDF.pdf

1

**B.      Additional Legal Issues Pertinent to Plaintiffs' Dental Claims**

2        Plaintiffs criticize the role played by dental assistants, but neither the Eighth

3   Amendment nor Arizona law prohibit dental assistants, working under the supervision of

4   a dentist, from classifying a dental need as urgent or routine. *See, e.g*., A.R.S. § 32–1291

5   (duties of dental assistant include exposing radiographs for dental diagnostic purposes and

6   polishing the natural and restored surfaces of teeth under the general supervision of a

7   dentist); Ariz.Adm.Code R4-11-701 (functions of dental assistants).[14]  Inmates may also

8   be given the choice between an immediate extraction of a tooth or waiting for a filling

9   without offending the Eighth Amendment. *Finley v. Parker*, 253 Fed.Appx. 634, *636

10  (9th Cir. 2007) (dental assistant "presented [inmate] with a choice between immediate

11  extraction of the chipped tooth or waiting for a filling. Such a choice does not demonstrate

12  deliberate indifference.").

13  **IV.   SPECIFIC LEGAL PRINCIPLES APPLICABLE TO CONDITIONS OF
        CONFINEMENT CLAIMS**

14

15        The standard for Eighth Amendment conditions claims is the same as the standard

16  for healthcare claims:   Plaintiffs must show that they are deprived of something

    "sufficiently serious"—i.e., "when the prison official's act or omission results 'in the

17  denial of 'the minimal civilized measure of life's necessities''—and that Defendants are

18  deliberately indifferent.  *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting

19  *Farmer*, 511 U.S. at 834; *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

20

        **A.      Plaintiffs' Conditions Claims Must Be Analyzed Individually.**

21        Although Plaintiffs succeeded in persuading the Court that their conditions claims

22  should be collectively considered for Eighth Amendment purposes, the Supreme Court's

23  decision in *Wilson v. Seiter*, 501 U.S. 294 (1991) was very careful in identifying the types

24  of claims warranting combination treatment:

25

26

27        ———————————————

           [14] *See also* Ariz.Adm.Code § R4-11-702 (limitations on procedures or functions

28  performed by a dental assistant under supervision).

17

*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise— for example, a low cell temperature at night combined with a failure to issue blankets. Compare *Spain* v. *Procunier,* 600 F. 2d 189, 199 (CA9 1979) (outdoor exercise required when prisoners otherwise confined in small cells almost 24 hours per day), with *Clay* v. *Miller,* 626 F. 2d 345, 347 (CA4 1980) (outdoor exercise not required when prisoners otherwise had access to dayroom 18 hours per day). To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

*Wilson*, 501 U.S. at 304-05 (emphasis in original).

Most of Plaintiffs' conditions' theories are disparate or unrelated to producing a "single, identifiable human need such as food, warmth or exercise" as emphasized by *Wilson*.  The single human need of "food" is related to Plaintiffs' caloric intake/nutrition claim, but this has little or nothing to do with exercise, warmth, or the use of pepper spray in dealing with recalcitrant inmates.[15]  *See also Chappell v. Mandeville*, 706 F.3d 1052, 1061 (9th Cir. 2013).

Moreover, the "totality-of-conditions" theory applies only when each individual condition does "not" establish an Eighth Amendment violation.  *Wilson*, 501 U.S. at 304–

---

[15] Plaintiffs believe that their "environmental stimulation" allegation allows the Court to consider all of their conditions allegations in combination. But that is precisely the type of "seamless web" and "amorphous" combination denounced in *Wilson.*

One circuit court that has considered, and rejected, a similar "environmental stimulation" theory is the Tenth Circuit in *Silverstein v. Federal Bureau of Prisons*, 559 Fed.Appx. 739 (10th Cir. 2014). The challenge was directed at the BOP's supermax facility in Colorado, with the inmate relying on Dr. Haney's review of his records and expert opinions of sensory deprivation and psychological injury.  Noting that the Tenth Circuit has "not definitively determined whether a lack of social contact and environmental stimulation rises to an Eighth Amendment violation," the court held that even if such a claim exists, the inmate's living conditions were not unconstitutional because he was not devoid of either social contact or environmental stimuli. *Id.* at 755.  It specifically found that he "has art supplies, reading materials, and multiple libraries; corresponds with others; has access to radio, television, digital music channels, and closed circuit programming from which he may take courses; can communicate with other inmates; and has indoor and outdoor recreation. He also has daily interaction, however limited, with a variety of prison staff." *Id.* at 755-56.

18

05. It does not apply when, as here, each individual condition *is* constitutional. *See Hoptowit v. Ray*, 682 F.2d 1237, 1246-47 (9th Cir. 1982) ("A number of conditions, each of which satisfy Eighth Amendment requirements, cannot in combination amount to an Eighth Amendment violation."). In other words, two constitutional conditions cannot add up to an unconstitutional deprivation. Plaintiffs' pursuit of "broad prison reform" cannot be done under the guise of an Eighth Amendment challenge. *Id.*

**B.    The Separation of Powers Doctrine Requires Deference to Prison Administrators.**

The reasonable-relationship test of *Turner v. Safley,* 482 U.S. 78 (1987), applies to Plaintiffs' conditions-of-confinement claims, as such claims impinge upon specific legitimate penological interests of prison authorities.[16] "We made quite clear that the standard of review we adopted in *Turner* applies to all circumstances in which the needs of prison administration implicate constitutional rights…" *Washington v. Harper*, 494 U.S. 210, 224 (1990); *Rhodes,* 452 U.S. at 346 ("Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification'"); *Norwood v. Vance*, 591 F.3d 1062, 1067 (9th Cir. 2010) ("Prison officials are entitled to deference whether a prisoner challenges excessive force or conditions of confinement."); Ninth Circuit Model Jury Instructions, 9.25 (Eighth Amendment – Prisoner's Claim Re Conditions of Confinement/Medical Care). Under the *Turner* test, a policy or practice is not violative if it is "reasonably related to legitimate penological interests." 482 U.S. at 89.

*Turner* deference is consistent with the deference that the Court must give prison officials in Eighth Amendment cases:

---

[16] Plaintiffs previously relied on *Johnson v. California*, 543 U.S. 499, 511 (2005), for the notion that *Turner* deference only applied to First Amendment claims. Plaintiffs are mistaken, as *Johnson* involved an Equal Protection claim by a California inmate challenging CDCR's racial segregation policy, and rejected CDCR officials' invitation to replace the strict scrutiny standard of racial classifications with deferential review. 543 U.S. at 509. It did not involve an Eighth Amendment claim, and the more recent *Plata* overcrowding case Plaintiffs have touted throughout this litigation recognized the need for judicial deference to prison administrators. 131 S.Ct. at 1928 ("Courts must be sensitive to the…need for deference to experienced and expert prison administrators.").

It is well established that judges and juries must defer to prison officials' expert judgments. In *Bell v. Wolfish,* the Supreme Court explained:

"[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and maintain institutional security."

Six years later, the Court spelled out that deference requires "that neither judge *nor jury* freely substitute **\*1067** their judgment for that of officials who have made a considered choice." The Court confirmed that *Bell* remains good law in *Farmer v. Brennan,* its seminal opinion on challenges to conditions of confinement, which twice cited *Bell* with approval.

*Norwood*, 591 F.3d at 1066-67 (quoting *Farmer*, 511 U.S. at 845, 847; *Whitley v. Albers,* 475 U.S. 312, 322 (1986); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).[17]

## C.    Prison Officials May Authorize the Use of Chemical Spray Against Any Recalcitrant Inmates, Including Those on Psychotropic Medication.

### 1.    Use of force claims are governed by the malicious or sadistic standard.

That a prisoner may be subject to various uses of force, including chemical spray, when he fails to comply with officer orders, is not a static *condition* of confinement; instead, use-of-force incidents involve dynamic or changing events depending on the conduct of the prisoner, and the circumstances surrounding which may or may not warrant escalating uses of force. The appropriate Eighth Amendment standard in prisoner use of force cases is the malicious and sadistic standard articulated in *Whitley v. Albers*, 475 U.S. 312 (1986).   The Supreme Court made this point abundantly clear in *Hudson v. McMillian,* 503 U.S. 1, 6–7 (1992), where it stated: "we hold that *whenever prison officials stand accused of using excessive physical force* in violation of the Cruel and

---

[17] Plaintiffs' effort to advance an "environmental stimulation" theory under *Wilson*, if successful, would also effectively violate the separation of powers doctrine and equip prison reform activists with a catch-all, buzz-phrase enabling them to criticize and demand changes to any prison conditions with which they disagreed by claiming they all relate to the professed need for "environmental stimulation." *Hoptowit*, 682 F.2d at 1246–47.

1    Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley:* whether

2    force was applied in a good-faith effort to maintain or restore discipline, or maliciously

3    and sadistically to cause harm."  (Emphasis added).  This standard applies equally when

4    the use of force is chemical spray. [18]  *See Allen v. Bosley*, 253 Fed.Appx. 658 (9th Cir.

5    2007); *Clement v. Gomez*, 298 F.3d 898, 903-04 (9th Cir. 2002).

6           **2.      Chemical spray is a valuable law enforcement tool, and its use**
           **should not be categorically banned against inmates on**
7           **psychotropic medications.**

8          Plaintiffs' request for a categorical ban on chemical spray against inmates on

9    psychotropic medications regardless of the circumstances is contrary to Ninth Circuit

10   precedent that repeatedly affirms summary judgment decisions where guards use the spray

11   in a good faith manner to restore discipline or order.  *See, e.g., Howard v. Nunley*, 465 F.

12   App'x 669, 670 (9th Cir. 2012); *Randle v. Miranda*, 315 F. App'x. 645, *646 (9th Cir.

13   2009); *Pinkston v. Fierro*, 315 Fed. Appx. 628 (9th Cir. 2009); *see also Allen*,

14   253 Fed.Appx. at 658; *Eccleston v. Oregon ex rel. Oregon Dep't of Corr.,* 168 F. App'x

15   760, 761 (9th Cir. 2006); *Clement*, 298 F.3d at 903-04; *Spain v. Procunier*, 600 F.2d 189,

16   196 (9th Cir. 1979).

17         Plaintiffs' attempt to condemn a policy that merely authorizes the use of pepper

18   spray in any circumstance represents unchartered territory, as no court has ever

19   categorically forbidden the use of chemical spray as unconstitutional per se.  (Doc. 240-1

20   at 163–164, ¶ 48; Doc. 292-1 at 14, ¶ 32; Doc. 331 at 1 n.1.)  *See Soto v. Dickey*, 744 F.2d

21   1260, 1270 (7th Cir. 1984) ("The Supreme Court has never held, nor have we or any other

22   court of appeals, so far as we can determine, that the use of tear gas or a chemical agent is

23   a per se violation of the Eighth Amendment . . . .").  Indeed, the Ninth Circuit rejected a

24   similar claim brought against ADC Director Stewart for having a policy that *authorized*

25   the use of pepper spray against recalcitrant inmates:

26   _____

27         [18] Plaintiffs previously relied on *Thomas v. Bryant*, 614 F.3d 1288, 1305–06 (11th
     Cir. 2010), to argue that a deliberate indifference applied when reviewing ADC's policy
     allowing chemical spray, but that case specifically held that prison officials had waived
28   the more stringent "sadistic and malicious" standard required by *Whitley*.

1
2
3
4
5
6

Stewart's complaint fails to meet this requirement. The administrators' alleged policy of spraying prisoners with pepper spray for refusing to follow directions falls within the wide-ranging zone of deference accorded to prison officials in shaping 'prophylactic or preventive measures intended to reduce the incidence of ... breaches of prison discipline.' Likewise, allegations that the administrators authorized corrections officers to dispense pepper spray across entire pod areas whenever an individual prisoner acts in a disruptive manner, and that they authorized the use of an 'Israeli fogger' device, both fail to show that excessive force was used.

7

*Stewart v. Stewart*, 60 F. App'x. 20, at *22 (9th Cir. 2003); *see also Howard v. Nunley*,

8

2010 WL 3785536, at *3 (E.D. Cal. 2010) (J. Wake, visiting) ("The use of mace, tear gas

9

or other chemical agent of the like nature when reasonably necessary to ... subdue

10

recalcitrant prisoners does not constitute cruel and inhuman punishment.").

11

**3.    An inmate's mental state or medication does not exempt him from a particular use of force When Justified.**

12

13

The fact that an inmate has a mental illness or is taking psychotropic medications

14

does not constitutionally exempt the use of OC spray from this progression.  *See Deorle v.*

15

*Rutherford,* 272 F.3d 1272, 1283 (9th Cir. 2001) ("We do not adopt a per se rule

16

establishing two different classifications of suspects: mentally disabled persons and

17

serious criminals"); *Drummond v. City of Anaheim*, 343 F.3d 1052, 1059 (9th Cir. 2003)

18

("some force was surely justified in restraining [mentally ill arrestee] so that he could not

19

injure either himself or the arresting officers.").  The district court in *Burgess* recently

20

rejected a similar challenge to the use of chemical spray against an inmate with a pre-

21

existing asthma and bronchitis condition: "Contrary to Plaintiff's position, the U.S.

22

Constitution does not require prison personnel to seek an inmate's permission or verify

23

whether the inmate has any medical peculiarities which make him particularly susceptible

24

to its effects, before using the spray."  *Burgess v. Raya*, 2013 WL 4459867, at *7 (E.D.

25

Cal. Aug. 16, 2013).

26
27
28

**D.    Low-Watt, Cell Illumination at Certain Maximum-Security Housing Units Does Not Violate the Eighth Amendment.**

Plaintiffs' challenge to cell illumination is foreclosed by *Hampton v. Ryan*, 2006 WL 3497780 (D. Ariz. 2006) (J. Wake), *aff'd*, 288 Fed.Appx. 404 (9th Cir. 2008), and other Ninth Circuit precedent. *Hampton* involved this Court's review of the security illumination policy for SMU II.  The Court concluded:

> The prison has a legitimate penological interest in 24–hour cell lighting. The lighting allows correction officers to conduct regular security checks on the inmates while maintaining officer safety. Additionally, the lighting ensures that an inmate is never in complete darkness and thus may be observed at any time, resulting in him being less likely to manufacture contraband materials. According to the evidence, unlike the lights in *Keenan,* 83 F.3d at 1090–91, the lights in the instant case are significantly dimmed at night and Plaintiff covers his eyes in order to sleep. The 24–hour lighting is not punitive in nature, and the evidence demonstrates that the 24–hour cell lighting, which is dimmed at night, does not deprive Plaintiff of the minimal civilized measure of life's necessities.

*Id*. at *13. Other courts in this District have rejected virtually identical lighting claims involving the same ADC facilities under scrutiny here.  *See Jose v. Thomas*, 2012 WL 2091527, at *6 (D. Ariz. 2012); *Rotondo v. Ryan*, 2012 WL 424384, at *13 (D. Ariz. 2012); *Jonas v. Schriro*, 2006 WL 2772641, at *3 (D. Ariz. Sept. 25, 2006); *Baptisto v. Ryan*, 2006 WL 798879, at **18-21 (D. Ariz. Mar. 28, 2006).[19]

---

[19] *See also Vasquez v. Frank*, 290 Fed.Appx. 927, 929 (7th Cir. 2008) (constant light from 9-watt fluorescent bulb does not constitute an "extreme deprivation"); *Chavarria v. Stacks,* 102 Fed. App'x 433 (5th Cir. 2004) (holding that prison policy requiring 24-hour illumination of cells in administrative segregation, which allegedly caused an inmate to suffer sleep deprivation, did not violate the Eighth Amendment); *Franklin v. Smalls*, 2013 WL 941569, at *7-8, 18-20 (S.D. Cal. Mar. 8, 2013 (constant light from 7-watt fluorescent bulb was not excessively bright so as to be unconstitutional); *see also McGee v. Gold*, 2010 WL 5300805, at *5 (D. Vt. 2010) (10-watt incandescent bulb); *McBride v. Frank*, 2009 WL 2591618, at *5 (E.D. Wis. Aug. 21, 2009) (9-watt fluorescent bulb does not objectively deny the "minimal civilized measure of life's necessities."); *Carr v. Tousley*, 2009 WL 1514661, at *19 (D. Idaho 2009) (9-watt bulb); *Walker v. Woodford*, 593 F. Supp. 2d 1140, 1152 (S.D. Cal. 2008) (7–watt compact fluorescent bulb as bright as a 40-watt incandescent bulb); *Wills v. Terhune*, 404 F.Supp.2d 1226, 1230–31 (E.D. Cal. 2005) (holding 24-hour illumination by 13-watt bulb constitutional because it was not of the type that caused "grave sleeping problems" and, there was no evidence in the medical records that he suffered symptoms from the lighting conditions).

23

E.     **ADC's Restricted-Movement Meal Plan is Nutritionally Adequate and Constitutional.**

Plaintiffs' challenge to the nutritional adequacy of ADC's meal plan (aka the Megasack or restricted-movement meal plan) is insufficient to prove an Eighth Amendment violation: "the Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." *LeMaire v. Maass,* 12 F.3d 1444, 1456 (9th Cir. 1993) (citation omitted).   In fact, two recent decisions from this Court have rejected virtually identical "caloric intake" challenges to the same restricted-movement meal plan. *See Gamez v. Ryan,* No. CV10-2663-PHX-JWS (MEA), Dkt. No. 86 at 6 (D. Ariz. Dec. 21, 2012); *Maloney v. Ryan*, 2013 WL 3945921, at *6-8 (D. Ariz. July 31, 2013).

Judge Wake rejected a nearly identical claim in *Hampton*:

> An STG inmate receives a 2800 calorie diet because of his less active lifestyle. The diet consists of 100 to 200 less calories than that received by inmates in general population. Plaintiff eats three meals a day Monday through Friday, and two on Saturday and Sunday. Plaintiff testified that at one time he lost 35 pounds, dropping to 120 pounds…The summary judgment evidence indicates that Plaintiff is receiving 2800 calories a day. Plaintiff asserts that his weight dropped down to 120 pounds. Based on Plaintiff's statements, there is a question of fact as to whether Plaintiff was always provided sufficient calories. However, Defendants are entitled to summary judgment because there is no evidence that any dietary deprivation was not a product of deliberate indifference. Plaintiff is scheduled to receive 2800 calories a day, which is sufficient for a sedentary inmate. There is no evidence that any of the Defendants knew that Plaintiff may possibly have been receiving less than the scheduled calories. Based on the evidence, Defendants were not deliberately indifferent to Plaintiff's needs and are entitled to summary judgment on Plaintiff's dietary claim.

2006 WL 3497780, at *15 (citations omitted).[20]

---

[20] *See also Garnica v. Washington Dep't of Corrections*, 2013 WL 4094324, at *12 (W.D. Wash. 2013) ("According to Mr. Jackson, 2700 calories is well above the recommendations set out by the USDA Dietary Reference Intakes (DRIs)"); *Green v. Ferrell,* 801 F.2d 765, 770–71 (5th Cir. 1986) (finding two meals a day sufficient if nutritionally and calorically adequate); *Sostre v. McGinnis,* 442 F.2d 178, 186, 193–94 (2d Cir. 1971) (finding diets of 2,800 to 3,300 calories per day constitutionally adequate), *overruled on other grounds in Davidson v. Scully,* 114 F.3d 12 (2d Cir.1997); and *Cunningham v. Jones,* 667 F.2d 565, 566 (6th Cir.1982) (finding one meal a day for 15

24

1

2

**F.      The Opportunities for Social Interaction Preclude an Eighth Amendment "Extreme Isolation" Claim.**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

Neither the Supreme Court nor the Ninth Circuit have ever held that "environmental stimulation" is an "identifiable human need."  In fact, the Ninth Circuit has held that "administrative segregation, even in a single cell for twenty-three hours a day, is within the terms of confinement ordinarily contemplated by a sentence." *Anderson v. County of Kern,* 45 F.3d 1310, 1316 (9th Cir. 1995).  Moreover, courts in this district have repeatedly upheld the conditions in ADC's maximum custody units.  *See*, *e.g.*, *Freemon v. Ryan*, 2011 WL 5169342, at *16 (D. Ariz. 2011) ("The undisputed evidence shows that Plaintiff has opportunities for limited social contact and, therefore, is not isolated to a degree that would violate the Eighth Amendment."); *Hampton*, 2006 WL 3497780, at *12 (the solitary confinement to which certain inmates are subjected does not put them in total isolation); *Jonas*, 2006 WL 2772641, at *4 (plaintiff failed to show that social interaction was constitutionally inadequate in SMU II, where inmates are allowed one non-contact visit per week for a maximum of two hours, with up to four visitors at one time, and one five-minute phone call per week, have contact with staff and are permitted to see prison and religious counselors, may have a radio and a television, and may pursue individual educational courses from their cells.); *Aguilar v. Schriro*, 2006 WL 2471830, at *3 (D. Ariz. 2006) (same, plus plaintiffs had access to mental health services); *Bermudez v. Ryan*, 2006 WL 2547345, at *3 (D. Ariz. 2006) (same).

21

**G.      Outdoor Recreation Can Be Constitutionally Limited for High-Custody Inmates.**

22

23

24

25

26

The Ninth Circuit and numerous decisions from this District have rejected virtually identical Eighth amendment claims advancing the notion that prisoners should receive more than five (5) hours of outdoor recreation time each week.  *See*, *e.g.*, *Spain*, 600 F.2d at 199 (no constitutional violation where lockdown prisoners allowed "one hour per day, five days a week unless inclement weather, unusual circumstances, or disciplinary needs

27

28

days, where the meal contained 2,000 to 2,500 calories and was sufficient to maintain health, constitutionally adequate).

made that impossible."); *Graves v. Arpaio*, 633 F.Supp.2d 834, 848 (D. Ariz. 2009) (J. Wake) ("Court found that one hour per day, four days per week, would satisfy the constitutional minimum" for general population, pretrial detainees); *Baptisto*, 2006 WL 798879, at * 21, 34-35; *Hampton*, 2006 WL 3497780, at *14 ("the current provision of six hours per week of outdoor recreational activity does not result in a deprivation of the minimal civilized measure of life's necessities").

### H.   Personal Property (Leisure Items) Can Be Constitutionally Restricted for Subclass Inmates.

Prison authorities have broad discretion in regulating what they deem to be contraband among high-custody prisoners. *See Hudson v. Palmer,* 468 U.S. 517, 526 (1983); *Beard v. Banks*, 548 U.S. 521, 525–26 (2006); *Mauro v. Arpaio,* 188 F.3d 1054, 1063 (9th Cir. 1999). Courts have routinely rejected similar claims brought by high-custody inmates challenging the type or amount of property they can possess in their cells. *See Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994); *Wilson v. Timko,* 972 F.2d 1348 (9th Cir. 1992); *Turner v. Upton*, 2013 WL 4852689, at *5, 12 (M.D. Ga. 2013); *Harrison v. Bledsoe*, 2010 WL 186804, *5-6 (M.D. Pa. 2010); *Stockton v. Tyson*, 2011 WL 5118456, at *3 (E.D. Cal. 2011) ("Plaintiff's claims that he was deprived of personal property, including reading material, and was denied out of cell relief do not show that he was deprived of something sufficiently serious"); *Lerajjareanra-O-Kel-ly v. Johnson,* 2009 WL 1513285, at *2 (D. Idaho 2009) ("None of the property identified by [segregation inmate] as being denied or confiscated rises to the level of the minimal civilized measure of life's necessities."); and *Chhoun v. Woodford*, 2005 WL 1910930, at *10 (N.D. Cal. 2005) ("One cannot seriously say that living without these amenities for 90 days deprived Chhoun of the minimal civilized measure of life's necessities."). Judge Bolton reached the same conclusion when faced with a similar Eighth Amendment claim of an inmate at SMU-II: "It is irrelevant for Eighth Amendment purposes what criteria prison officials use to limit Plaintiff's access to music and reading materials, as the Court can find no case

26

1    where depriving an inmate of such materials amounted to cruel and unusual punishment."

2    *Baptisto*, 2005 WL 2416356, at *14 (D. Ariz. 2005).

3    **V.    CLASS DECERTIFICATION ISSUES**

4           A district court may decertify any portion of its class certification order before final

5    judgment. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see generally*

6    Fed.R.Civ.P. 23(c)(1)(C).   If the Court determines that the named Plaintiffs have not

7    established that they currently have standing to proceed on the certified claims, then the

8    Court must decertify the class, the subclass, and/or the corresponding certified claims, and

9    dismiss the case.  *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th

10   Cir. 2003) (vacating district court's certification of class when named plaintiff did not

11   have standing to proceed on class claim); *Rector v. City & Cnty. of Denver,* 348 F.3d 935,

12   950 (10th Cir. 2003) (remanding to district court for decertification after finding that

13   named plaintiffs did not have standing); *Johnson v. Bd. of Regents of Univ. of Georgia*,

14   263 F.3d 1234, 1268 (11th Cir. 2001) ("For the reasons discussed above, none of the

15   named Plaintiffs has standing to seek prospective injunctive relief. Accordingly, these

16   Plaintiffs could not serve as representatives for a class seeking that relief, and the district

17   court did not abuse its discretion by decertifying the class."); *Neal v. NaturalCare, Inc.*,

18   2014 WL 346639, at **5-6 (C.D. Cal. Jan. 30, 2014) (decertifying class and dismissing

19   complaint where it relied on plaintiff's "false assertion of standing to certify the class");

20   *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 989 (D. Ariz. 2011), *aff'd sub nom.*,

21   695 F.3d 990 (9th Cir. 2012) (noting that "the class may then be decertified or partially

22   de-certified" if it is later determined that named plaintiffs lack standing).   "A district

23   court's decision to decertify a class is subject to 'very limited review' and will be reversed

24   only upon a 'strong showing that the district court's decision was a clear abuse of

25   discretion.'" *Westways World Travel, Inc. v. AMR Corp.*, 265 F. App'x 472, 475 (9th Cir.

26   2008) (quoting *Dukes v. Wal–Mart, Inc.*, 509 F.3d 1168, 1175 (9th Cir. 2007) (quoting

27   *Armstrong v. Davis,* 275 F.3d 849, 867 (9th Cir. 2001))).

28

1         DATED this 19th day of September 2014.

2                           STRUCK WIENEKE & LOVE, P.L.C.

3

4                     By /s/ Daniel P. Struck

5                       Daniel P. Struck
                    Kathleen L. Wieneke
                    Rachel Love

6                       Timothy J. Bojanowski
                    Nicholas D. Acedo

7                       Ashlee B. Fletcher
                    Anne M. Orcutt

8                       Jacob B. Lee
                    STRUCK WIENEKE & LOVE, P.L.C.

9                       3100 West Ray Road, Suite 300
                    Chandler, Arizona  85226

10

11                      Arizona Attorney General Thomas C. Horne
                    Office of the Attorney General

12                      Michael E. Gottfried
                    Lucy M. Rand

13                      Assistant Attorneys General
                    1275 W. Washington Street

14                      Phoenix, Arizona 85007-2926

15                      *Attorneys for Defendants*

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Ajmel Quereshi:        aquereshi@npp-aclu.org

Alison Hardy:          ahardy@prisonlaw.com

Amelia M. Gerlicher:   agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com

Amir Q. Amiri:         aamiri@jonesday.com; ttualaulelei@jonesday.com

Amy Fettig:            afettig@npp-aclu.org

Asim Varma:            avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

Caroline N. Mitchell:  cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

Corene T. Kendrick:    ckendrick@prisonlaw.com; edegraff@prisonlaw.com

Daniel Clayton Barr:   DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

Daniel Joseph Pochoda: dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org

Dara Levinson:         daralevinson@jonesday.com

David Cyrus Fathi:     dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

Donald Specter:        dspecter@prisonlaw.com

James Duff Lyall:      jlyall@acluaz.org; gtorres@acluaz.org

James M. Jellison:     jim@jellisonlaw.com; cindy@schleierlaw.com; kasey@jellisonlaw.com

Jennifer K. Messina:   jkmessina@jonesday.com

Jerica Lynn Peters:    jpeters@perkinscoie.com

Jessica Pari Jansepar Ross:   jross@azdisabilitylaw.org

John Howard Gray:      jhgray@perkinscoie.com; slawson@perkinscoie.com

John Laurens Wilkes:   jlwilkes@jonesday.com, dkkerr@jonesday.com

Jose de Jesus Rico:    jrico@azdisabilitylaw.org

Kamilla Mamedova:      kmamedova@jonesday.com

1   Kevin C. Brantley:        kbrantley@jonesday.com

2   Kirstin T. Eidenbach:     keidenbach@perkinscoie.com; dfreouf@perkinscoie.com;
                              docketphx@perkinscoie.com
3
4   Matthew Benjamin de Mee: mdumee@perkinscoie.com; cwendt@perkinscoie.com

5   Sara Norman:              snorman@prisonlaw.com

    Sarah Eve Kader:          skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org;
6                             rstarling@azdisabilitylaw.org

7   Taylor Freeman:           tfreeman@jonesday.com

8   Warren E. George, Jr.:    wgeorge@prisonlaw.com

9
            I hereby certify that on this same date, I served the attached document by U.S.
10  Mail, postage prepaid, on the following, who is not a registered participant of the
    CM/ECF System:
11
12          N/A

13                                               /s/ Daniel P. Struck

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            30