# APPENDIX 2

## PLAINTIFFS' SECTION

**D.    CONTESTED ISSUES OF FACTS AND LAW**

    **1.    The following are the material issues of fact to be tried and decided:**

**Issue #1:**  Whether Defendants were deliberately indifferent to the health and well-being of Plaintiffs in the Plaintiff Class and created a substantial risk of serious harm by failing to provide timely access to health care to prisoners in the custody of the ADC.

    **Plaintiffs Contend:**  Defendants know of and have disregarded the substantial risk of serious harm posed to Plaintiffs by the failure to deliver timely access to health care.  Prisoners' HNRs, through which they request medical care, are not properly triaged and processed, wait times for medical care are overly long and are not adequately tracked.  Follow up care is not systematically delivered.  Facilities for treatment of patients provide inadequate equipment, supplies and space for Defendants to provide timely access to health care.  Medication systems are not reliable, timely and accurate.  The ADC has adopted standards that do not meet acceptable standards for timeliness of delivery of care.  Inadequate staffing and insufficient systems for arrangements for emergency and specialty care results in delays and denials of care.  The failure to timely deliver medical care is exacerbated and contributed to by the failure of Defendants' health records systems to adequately track and document prisoner health care.  Plaintiffs contend that Defendants are acting with deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial:  (1) Plaintiffs' expert reports; (2) the reporting by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners, their family members, and advocates; (4) media reports; (5) notification by Plaintiffs' counsel and Plaintiffs'

experts; and (6) governmental investigations of deaths and other serious conditions. Plaintiffs contend that Defendants have failed to remedy the inadequacies of the ADC's access to health care in response to all of the information made known to them.

**Defendants Contend:** Defendants provided and currently provide a level of health care to ADC inmates complying with and exceeding constitutional minima under the Eighth Amendment. ADC's processes for identifying and monitoring inmate health care needs are reasonable, ADC staff are responsive, health care staffing is adequate to timely meet health care needs, average wait times are reasonable, grievances are minimal, and the care provided does not rise to the level of deliberate indifference— whether evaluated objectively or subjectively. ADC's facilities are accredited and certified by accrediting organizations and their policies are compliant with the relevant standard of care. Plaintiffs cannot prove that any ADC health care personnel were both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and that such staff actually drew such an inference. Moreover, to the extent any unconstitutional care was ever delivered (formerly or currently), Plaintiffs cannot show that such occurrences were so widespread that they could be deemed to reflect ADC policy or custom, and/or that any shortcomings were systemic throughout all ADC facilities and affected all class members in such a way as to violate the deliberate indifference standard. Defendants further contend that Plaintiffs will be unable to satisfy the actual injury requirement of Article III. Defendants will prove the foregoing via ADC policies and procedures, statistical data, the testimony of ADC and Corizon professionals, inmate medical and institutional records and testimony, expert opinions, benchmarking data, and other relevant evidence as set forth in the

uncontested and contested material facts section of the Joint Pretrial Statement

**Issue #2:** Whether Defendants were deliberately indifferent to the health and well-being of Plaintiffs in the Plaintiff Class and created a substantial risk of serious harm by failing to provide timely emergency treatment to prisoners in the custody of the ADC.

**Plaintiffs Contend:** Defendants knew of and disregarded the substantial risk of serious harm posed to prisoners by the failure to deliver timely access to emergency care. All of the deficits identified in Issue No. 1 also contribute to the failure to provide timely and adequate emergency treatment to Plaintiffs. Plaintiffs contend that Defendants are acting with deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial: (1) Plaintiffs' expert reports; (2) the reporting by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners, their family members, and advocates; (4) media reports; (5) notification by Plaintiffs' counsel and Plaintiffs' experts; and (6) governmental investigations of deaths and other serious conditions. Plaintiffs contend that Defendants have failed to remedy the inadequacies of the ADC's emergency treatment in response to all of the information made known to them.

**Defendants Contend:** ADC policies providing for timely access to emergency care and treatment are constitutional, and ADC practices in providing such care are reasonable. Personnel at all 10 ADC facilities are trained on emergency responses, are adequately equipped to respond, and as a matter of course provide emergency care frequently and in a timely manner. Corizon provides emergency medical and mental health coverage 24 hours a day, seven days a week, as well as access to 911 services.

Additionally, Corizon maintains continual onsite nursing staff, who are able to contact offsite medical, dental, and mental health practitioners for consultation. The same contentions in No. 1 also apply to further explain why ADC's emergency care is timely and constitutional. To the extent any particular incident may fall short of constitutional minima, such incident(s) are not so widespread so as to constitute an ADC policy or custom, and do not amount to any systemic deficiencies permeating all ADC facilities and inmates. Defendants will prove the foregoing via ADC policies and procedures, statistical data, the testimony of ADC and Corizon professionals, inmate medical and institutional records and testimony, expert opinions, benchmarking data, and other relevant evidence as set forth in the uncontested and contested material facts section of the Joint Pretrial Statement.

**Issue #3:**   Whether Defendants were deliberately indifferent to the health and well-being of Plaintiffs in the Plaintiff Class and created a substantial risk of serious harm by failing to provide necessary medication and medical devices to prisoners in the custody of the ADC.

**Plaintiffs Contend:**   Defendants knew of and disregarded the substantial risk of serious harm posed to prisoners by the failure to provide necessary medication and medical devices to prisoners.  Defendants have failed to provide necessary medication and medical devices, in adequate quantities, to prisoners despite repeated HNRs and other requests for medication and/or medical devices that had been prescribed but not delivered.  Further, prisoners often have their medications abruptly started and stopped and/or inappropriately delayed. Powerful medications with significant side effects are prescribed to prisoners without the prisoner first being seen by a doctor, thereby placing the prisoner at substantial risk of

serious harm. Plaintiffs assert that prisoners are not adequately monitored for adverse side effects of medications to determine if the prescribed medications are having the appropriate effect. Plaintiffs also assert that the ADC dispenses expired medications to prisoners, again placing the prisoner at substantial risk of serious harm. Plaintiffs contend that Defendants are acting with deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial: (1) Plaintiffs' expert reports; (2) the reporting by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners, their family members, and advocates; (4) media reports; (5) notification by Plaintiffs' counsel and Plaintiffs' experts; and (6) governmental investigations of deaths and other serious conditions. Plaintiffs contend that Defendants have failed to remedy the inadequacies of the ADC's medication and medical devices system in response to all of the information made known to them.

**Defendants Contend:** ADC's medication policies and practices are reasonable and do not rise to the level of an Eighth Amendment violation. The large volume of monthly prescriptions dispensed by ADC pharmacists underscores the rarity of adverse incidents, and the absence of any policy or any systemic deficiency. Inmate prescriptions are timely provided, adequately tracked and side-effects monitored, prescriptions are timely renewed, and ADC policies are pursuant to legitimate penological objectives such as the need to guard against inmate abuse of certain medications via "watch swallow" and "keep on person" procedures. The same contentions in No. 1 also apply to further explain why ADC's medication care is timely and constitutional. Medical devices are provided where medically necessary and where legitimate penological objectives can be met. Defendants will

78204-0001/LEGAL123452505.1

prove the foregoing via ADC policies and procedures, statistical data, the testimony of ADC and Corizon professionals, inmate medical and institutional records and testimony, expert opinions, benchmarking data, and other relevant evidence as set forth in the uncontested and contested material facts section of the Joint Pretrial Statement.

**Issue #4:**  Whether Defendants were deliberately indifferent to the health and well-being of Plaintiffs in the Plaintiff Class and created a substantial risk of serious harm by insufficiently staffing the health care facilities provided for prisoners in the custody of the ADC.

**Plaintiffs Contend:**  There have long been, and continue to be, systemic issues in the staffing structure of the health care facilities provided by the ADC and Defendants knew of and disregarded the substantial risk of serious harm posed to prisoners by the failure to provide adequate staffing. Plaintiffs assert that ADC does not ensure that its staff are properly qualified, trained, and supervised to provide timely and quality health care. Plaintiffs further assert that Defendants do not ensure that prison health care facilities contain adequate staff to prisoner ratios such that prisoners are not afforded constitutionally adequate access to health care and face a substantial risk of serious harm.  Plaintiffs contend that Defendants are acting with deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial: (1) Plaintiffs' expert reports; (2) the reporting by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners, their family members, and advocates; (4) media reports; (5) notification by Plaintiffs' counsel and Plaintiffs' experts; and (6) governmental investigations of deaths and other serious conditions.  Plaintiffs contend that

78204-0001/LEGAL123452505.1

Defendants have failed to remedy the inadequacies of the ADC's staffing policies in response to all of the information made known to them.

**Defendants Contend:**  ADC facilities are adequately staffed, and staffing levels do not rise to the level of any constitutional violation, particularly when measured against comparable data and ratios.  There is no recognized standard of care which dictates minimum staffing ratios for correctional settings.  ADC and Corizon have implemented improvements to increase staff hiring and retention and reduce vacancies. Defendants further contend health care treatment performance is the best yardstick for measuring whether staffing levels are adequate, and the reasonable wait time data, scarcity of grievances and adverse incidents demonstrate the constitutional adequacy of health care staffing throughout ADC facilities. The same contentions in No. 1 also apply to further explain why ADC's staffing levels and delivery of care are constitutional. Defendants have utilized telemedicine, registry and locum tenes to assist in serving the health care needs of its inmate populations, particularly in more remote locations or for harder to fill positions.   Defendants will prove the foregoing via ADC policies and procedures, statistical data, the testimony of ADC and Corizon professionals, inmate medical and institutional records and testimony, expert opinions, benchmarking data, and other relevant evidence as set forth in the uncontested and contested material facts section of the Joint Pretrial Statement.

**Issue #5:**  Whether Defendants were deliberately indifferent to the health and well-being of Plaintiffs in the Plaintiff Class and created a substantial risk of serious harm by failing to provide care for chronic diseases and protection from infectious diseases to prisoners in the custody of the ADC.

**Plaintiffs Contend:**   Defendants knew of and disregarded the substantial risk of serious harm posed to prisoners by the failure to provide care for chronic diseases and protection from infectious diseases.  Plaintiffs further dispute that the ADC's policies regarding chronic care and infectious disease are within the standard of care.  Plaintiffs assert that Defendants have consciously disregarded the risk of the spread of infectious disease as a result of Defendants inadequate efforts to prevent such disease in ADC facilities and control outbreaks when such diseases inflict the prisoner population.  This is attributable to an array of factors, including inadequate staffing, inadequate training, failure to properly treat prisoners who are at risk of spreading infectious diseases, and inadequate medical records management.  Plaintiffs contend that Defendants are acting with deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial:  (1) Plaintiffs' expert reports; (2) the reporting by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners, their family members, and advocates; (4) media reports; (5) notification by Plaintiffs' counsel and Plaintiffs' experts; and (6) governmental investigations of deaths and other serious conditions.  Plaintiffs contend that Defendants have failed to remedy the inadequacies of the ADC's policies regarding chronic diseases and protection from infectious diseases in response to all of the information made known to them.

**Defendants Contend:**   ADC's policies governing chronic care treatment, and preventing the spread of infectious diseases are reasonable and do not rise to the level of a constitutional violation.  ADC medical and security staff receive extensive training on chronic care conditions, treatment, and responses (e.g., to acute manifestations of chronic illnesses,

-8-

adverse reactions to medications, suicide prevention), ADC's chronic care appointments are timely and adequately tracked, with medication policies and distribution satisfying constitutional minima. With respect to infectious diseases, medical areas, living areas, and cells are cleaned and inspected daily, and an exterminator sprays cells, showers, and housing unit common areas on a monthly basis. Cells are cleaned prior to an inmate being newly assigned to a cell, including bunk mattress cleaning/exchange/replacement depending on the cleanliness or condition of the previously used mattress. Furthermore, ADC has specific policies, procedures, and training in place that deal with the prevention, surveillance, and treatment of suspected or confirmed communicable diseases. The same contentions in No. 1 also apply to further explain why ADC's chronic care clinics, policies governing sanitation and infectious diseases, and delivery of care are constitutional. Defendants will prove the foregoing via ADC policies and procedures, statistical data, the testimony of ADC and Corizon professionals, inmate medical and institutional records and testimony, expert opinions, benchmarking data, and other relevant evidence as set forth in the uncontested and contested material facts section of the Joint Pretrial Statement.

**Issue #6:**  Whether Defendants were deliberately indifferent to the health and well-being of Plaintiffs in the Plaintiff Class and created a substantial risk of serious harm by failing to provide timely access to medically necessary specialty care to prisoners in the custody of the ADC.

**Plaintiffs Contend:**  Defendants knew of and disregarded the substantial risk of serious harm posed to prisoners by the failure to deliver timely access to medically necessary specialty care.  Plaintiffs further dispute that the ADC's policies regarding the provision of specialty are

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

within the standard of care.  Plaintiffs assert that prisoners are not referred to medically necessary specialty care in a timely fashion and that the delays in accessing specialty care place prisoners at substantial risk of serious harm. Plaintiffs contend that Defendants are acting with deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial:  (1) Plaintiffs' expert reports; (2) the reporting by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners, their family members, and advocates; (4) media reports; (5) notification by Plaintiffs' counsel and Plaintiffs' experts; and (6) governmental investigations of deaths and other serious conditions.  Plaintiffs contend that Defendants have failed to remedy the inadequacies of the ADC's policies regarding specialty care in response to all of the information made known to them.

**Defendants Contend:**  ADC provides timely and reasonable access to specialty care, and such access does not rise to the level of a constitutional violation. Corizon provides and reports on Specialty Medical Appointments (consisting of on-site specialty care, outside specialist appointments, and telemedicine appointments), has completed 9,478 specialty care appointments in the year prior to April 1, 2014, averaging more than 950 appointments a month in each of the six months since October 1, 2013. Most of the specialty care is provided where ADC operations physically transport one or more inmate to an outside specialist medical practice for evaluation and treatment. The large volume of monthly outside specialty consultations underscores the absence of any policy or any systemic deficiency. Moreover, to the extent certain Plaintiffs or class members claim they were not seen by outside specialists or were not seen quickly enough, such claims reflect a difference of opinion between

-10-

78204-0001/LEGAL123452505.1

ADC/Corizon professionals and the inmates as to the proper course of treatment, and do not amount to deliberate indifference. The same contentions in No. 1 also apply to further explain why ADC's provision of access to specialty care is timely and constitutional. Defendants will prove the foregoing via ADC policies and procedures, statistical data, the testimony of ADC and Corizon professionals, inmate medical and institutional records and testimony, expert opinions, benchmarking data, and other relevant evidence as set forth in the uncontested and contested material facts section of the Joint Pretrial Statement.

**Issue #7:**  Whether Defendants were deliberately indifferent to the health and well-being of Plaintiffs in the Plaintiff Class and created a substantial risk of serious harm by failing to provide timely access to basic dental treatment to prisoners in the custody of the ADC.

**Plaintiffs Contend:**  Plaintiffs contend that Defendants have a long-standing practice of failing to provide Plaintiffs with timely access to basic dental care, which results in a substantial risk of serious harm.  The failure to provide such care stems from a failure to provide appropriate levels of staffing, failing to secure fully qualified staff and failing properly to train and supervise staff who are hired properly.  It also stems from dental policies that are not within the appropriate standard of care, including policies that fail to provide for adequate tracking and triaging of dental conditions and that allow dental personnel to perform tasks for which they are not qualified, resulting in *inter alia,* improper triage and assignment of prisoners needing urgent care to routine care wait lists.  Plaintiffs contend that Defendants practices do not comply with NCCHC standard P-E-06. Defendants fail to adequately track wait times and use skewed methodologies to make wait time seem artificially low, when in fact long

wait times for both routine and urgent dental care place Plaintiffs at substantial risk of serious harm.  Plaintiffs also contend that Defendants extract teeth without offering Plaintiffs other options that could preserve their teeth.  Plaintiffs also contend that Defendants fail to obtain proper informed consent with respect to dental procedures.  Plaintiffs contend that Defendants are acting with deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial:  (1) Plaintiffs' expert reports; (2) the reporting by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners, their family members, and advocates; (4) media reports; (5) notification by Plaintiffs' counsel and Plaintiffs' experts; and (6) governmental investigations of deaths and other serious conditions. Plaintiffs contend that Defendants have failed to remedy the inadequacies of the ADC's provision of dental care in response to all of the information made known to them.

**Defendants Contend:**  ADC provides timely and responsive basic dental care to inmates, and such access does not rise to the level of a constitutional violation. ADC's dental policies are reasonable, and its contractual requirements with Corizon/Smallwood requiring urgent care within 72 hours and routine care within 90 days exceed constitutional standards. Corizon/Smallwood's computer system of tracking wait times and appointments provides accurate data to ADC and allows follow up care and appointments to be monitored.  Inmates are provided with dental education at intake and free dental hygiene material to assist in their dental care. Defendants' triaging policies and practices are adequate to timely respond to inmate dental needs, that dental wait times are better than free world wait times and clearly constitutional, and that the progression of tooth

-12-

decay is unlikely to ever be affected by any isolated misclassifications of an urgent need as a routine need because routine wait times are, on average, less than 1.5 months. Moreover, to the extent certain Plaintiffs or class members claim they were not seen by dentist quickly enough, such claims reflect a difference of opinion between dental professionals and the inmates as to the proper course of treatment, and do not amount to deliberate indifference. The same contentions in No. 1 also apply to further explain why ADC's provision of access to dental care is timely and constitutional. Defendants will prove the foregoing via ADC policies and procedures, statistical data, the testimony of ADC and Corizon/Smallwood professionals, inmate medical and institutional records and testimony, expert opinions, benchmarking data, and other relevant evidence as set forth in the uncontested and contested material facts section of the Joint Pretrial Statement.

**Issue #8:** Whether Defendants were deliberately indifferent to the health and well-being of Plaintiffs in the Plaintiff Class and created a substantial risk of serious harm by instituting a practice of extracting the teeth of prisoners in the custody of ADC, where the teeth could be saved by less intrusive means.

**Plaintiffs Contend:** Plaintiffs contend that rather than providing tooth-preserving dental options to Plaintiffs, Defendants resort to an "extract" or nothing option that forces Plaintiffs to choose between losing a tooth and suffering.  Plaintiffs contend that Defendants are acting with deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial: (1) Plaintiffs' expert reports; (2) the reporting by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners,

their family members, and advocates; (4) media reports; (5) notification by Plaintiffs' counsel and Plaintiffs' experts; and (6) governmental investigations of deaths and other serious conditions.

**Defendants Contend:**   ADC's dental practices are reasonable, there exists no "de facto extraction" policy, and ADC dental treatment practices and actual performance in caring for inmates does not rise to the level of a constitutional violation.   The treatment of each tooth that resides in each ADC inmate's mouth is managed on a case-by-case basis, its restorability following a cavity or tooth decay must be evaluated by a personal examination and x-rays, and is not susceptible to Plaintiffs' or Dr. Shulman's sweeping "extraction" theory. Moreover, to the extent certain Plaintiffs or class members disagree with the individual judgment of the treating dentist as to the restorability of a given tooth or dental procedure, such claims reflect a difference of opinion between dental professionals and the inmates as to the proper course of treatment, and do not amount to deliberate indifference. The same contentions in No. 1 also apply to further explain why ADC's provision of access to dental care is timely, and its dental treatment reasonable and constitutional. Defendants will prove the foregoing via ADC policies and procedures, statistical data, the testimony of ADC and Corizon/Smallwood professionals, inmate medical and institutional records and testimony, expert opinions, benchmarking data, and other relevant evidence, particularly Dr. Shulman's admissions concerning his failure to examine any x-rays, and his unwillingness to criticize the individual judgment exercised by the treating dentist.

**Issue #9:**   Whether Defendants were deliberately indifferent to the health and well-being of Plaintiffs in the Plaintiff Class and created a substantial risk of serious harm by failing to provide mentally ill prisoners medically

necessary mental health treatment (i.e., psychotropic medication, therapy, and inpatient treatment).

**Plaintiffs Contend:** Plaintiffs contend that Defendants have a longstanding policy and practice of failing to provide mentally ill prisoners with necessary mental health care.  This failure includes inadequate numbers of adequately qualified mental health care staff; inadequate follow-up and infrequent contact with qualified mental health staff; inadequate history-taking, exploration of symptoms, mental status exams, and risk assessments; poor documentation and inadequate and incomplete medical records; dangerous prescribing practices and inadequate medication systems; the failure to adequately monitor prisoners who are taking psychotropic medications; inadequate monitoring and management of medication therapeutic levels and side effects; inadequate access to care; the failure to provide adequate mental health programming; the failure to provide access to inpatient mental health treatment for those who need it; the failure to create, maintain, and update adequate mental health treatment plans; the failure to take adequate steps to prevent heat injury or death for mentally ill prisoners; the failure to provide language interpretation for mental health treatment; the failure to protect prisoners against self-harm and suicide; perfunctory and inadequate mortality reviews and psychological autopsies; the inappropriate use of psychiatry via videolink; the inappropriate use of isolated confinement on the mentally ill; the inappropriate use of chemical agents on the mentally ill; the failure to provide adequate mental health care to patients who are seriously ill and highly symptomatic; the inadequate mental health care of the named plaintiffs; and inadequate monitoring and oversight of the provision of mental health care in ADC.  All of these failures result in a substantial risk of serious harm to prisoners with mental

78204-0001/LEGAL123452505.1

illness. Plaintiffs contend that Defendants are acting with deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial: (1) Plaintiffs' expert reports; (2) the reporting by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners, their family members, and advocates; (4) media reports; (5) notification by Plaintiffs' counsel and Plaintiffs' experts; and (6) governmental investigations of deaths and other serious conditions. Plaintiffs contend that Defendants have failed to remedy the inadequacies of the ADC's mental health treatment in response to all of the information made known to them.

**Defendants Contend:** ADC's provision of mental health care treatment is timely, reasonable, and does not rise to the level of a constitutional violation. The mental health treatment is governed, in part by the mental Health Technical Manual ("MHTM") dated January 1, 2014, and revised April 14, 2014. Although the written version was revised April 14, 2014, many of the practices were implemented before April 14, 2014. Mental health professionals are extensively trained and medications are timely prescribed and monitored. HNRs requesting non-emergency mental health services are referred to the relevant mental health staff within twenty four hours of receipt of the HNR form, with mental health staff required to review HNRs requesting mental health services upon receipt, and to respond to HNRs requesting non-emergency mental health services within five working days. Mental health staff are required to respond to HNRs indicating serious mental health symptoms or complaints within twenty four hours by conducting a face-to-face evaluation. ADC/Corizon has policies governing suicide-prevention, watch cells, and other mental health programming that are reasonable and constitutional. Corizon provides

comprehensive mental health services, including suicide and mental health watches, initial and ongoing evaluations and assessments, development and periodic review of individual treatment plans, psychiatric services, psychotropic medication evaluations, administration and follow-ups, individual and group psychotherapy, specialized psycho-educational groups and other special programs, psychological autopsies, discharge and transitional planning, proper documentation, and consultation with medical, support and custodial staff on treatment and programming concerns. To the extent certain Plaintiffs or class members disagree with the methods or treatment provided by mental health professionals, such claims reflect a difference of opinion between mental health professionals and the inmates as to the proper course of treatment, and do not amount to deliberate indifference. The same contentions in No. 1 also apply to further explain why ADC's mental health programming is timely and constitutional. Defendants will prove the foregoing via ADC policies and procedures, statistical data, the testimony of ADC and Corizon professionals, inmate medical and institutional records and testimony, expert opinions, benchmarking data, and other relevant evidence.

**Issue #10:**  Whether Defendants were deliberately indifferent to the health and well-being of Plaintiffs in the Plaintiff Class and created a substantial risk of serious harm by failing to provide suicidal and self-harming prisoners basic mental health care.

  **Plaintiffs Contend:** There have long been, and continue to be, systemic deficiencies  in providing suicidal and self-harming prisoners basic mental health care.  Defendants knew of these deficiencies and disregarded the resulting substantial risk of serious harm.  Plaintiffs dispute that the ADC's policies regarding the provision of mental health care to suicidal and

self-harming prisoners are within the standard of care.  Plaintiffs assert that the ADC's deficient policies with respect to suicidal and self-harming prisoners exacerbate the mental health afflictions of such prisoners.  These policies include, but are not limited to, placing suicidal and self-harming prisoners in isolation, using chemical agents on suicidal and self-harming prisoners, not providing adequate therapy or mental health care for suicidal and self-harming prisoners, dangerous and inadequate watch practices, and disregarding the substantial risk of serious harm posed to suicidal and self-harming prisoners as a result of ADC policies.  Plaintiffs further assert that ADC has failed to ensure that each of its facilities provide an adequate level of mental health services to provide adequate care to suicidal and self-harming inmates.  Plaintiffs contend that Defendants are acting with deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial: (1) Plaintiffs' expert reports; (2) the reporting by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners, their family members, and advocates; (4) media reports; (5) notification by Plaintiffs' counsel and Plaintiffs' experts; and (6) governmental investigations of deaths and other serious conditions.  Plaintiffs contend that Defendants have failed to remedy the inadequacies of the ADC's treatment of suicidal and self-harming prisoners in response to all of the information made known to them.

**Defendants Contend:**  In addition to Defendants' contentions on No. 10 above, all ADC staff receive extensive training in the identification and management of suicidal inmates. Staff also receives training on how to identify inmates who may be at risk for suicide; how to identify how risk times, locations, and methods for suicide; how to identify incidents and

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

situations that may trigger a suicide attempt; how to identify possible signs of suicidal intent; the role of the Department staff in preventing inmate suicide and the Department's policy on inmate suicide prevention. Suicide risk assessment includes, but is not limited to: triggers for prior self-harm, loss of relationship, isolation, threats or perceived threats from others; suicide risk factors including previous suicide attempts, family members who have attempted or completed suicide, history of depression or other mental health problems, history of chronic substance abuse or dependence, history of serious medical problems or medical problems affecting body image or lifestyle, history of violence and poor coping skills; signs of suicide attempt as examples of inflicting self-injury, communicating suicidal intent or plan, making final arrangements, hopelessness, depression, anxiety, apprehension, social withdrawal, unexpected or unexplained improvement in mood after period of depressed mood, disorientation, unusual or disorganized thinking, anger/hostility, agitation, under the influence of mind or mood altering substances. To the extent certain Plaintiffs or class members disagree with the methods or treatment provided by mental health professionals, such claims reflect a difference of opinion between mental health professionals and the inmates as to the proper course of treatment, and do not amount to deliberate indifference. The same contentions in No. 1 also apply to further explain why ADC's mental health programming is timely and constitutional. Defendants will prove the foregoing via AC policies and procedures, statistical data, the testimony of ADC and Corizon professionals, inmate medical and institutional records and testimony, expert opinions, benchmarking data, and other relevant evidence.

-19-

**Issue #11:**  Whether the methodologies used by Plaintiffs' experts, namely the validity of the experts' statistical and sampling validity, are sufficiently sound to render their opinions credible.

**Plaintiffs Contend:**  Plaintiffs contend that the methodologies used by their experts are sufficiently sound to render the expert opinions credible. Defendants have only challenged Plaintiffs' experts' methodology, not the qualifications or relevance of their opinions.  Additionally, Defendants only target one aspect of the experts' foundations for their opinions, the statistical and sampling validity underlying the opinions.   However, similar methodologies have been accepted in other cases challenging prison conditions and Defendants have not identified a competing methodology that would have had a material impact on the expert opinions.  Further, Plaintiffs assert that the remaining foundations for the expert opinions, including ADC written policies, reports, business records and deposition testimony are sufficient to support the opinions of the experts.

**Defendants Contend:** The methodologies used by Plaintiffs' experts fail to comply with Fed.R.Evid. 702 and *Daubert*, as explained in Defendant's Motion to Preclude, Doc. 900 & 905. More specific grounds for exclusion of the opinions of Plaintiffs' experts will be set forth at trial.

**Issue #12:**  Whether Defendants were deliberately indifferent to the health and well-being of Plaintiffs in the Plaintiff Class and created a substantial risk of serious harm by failing to exclude seriously mentally ill prisoners from conditions of confinement in the isolation units which are known to be harmful to such individuals.

**Plaintiffs Contend:**   Defendants knew of and disregarded the substantial risk of serious harm posed to Plaintiffs by the failure to exclude seriously mentally ill prisoners from the isolation units.   Solitary or isolated

confinement creates a serious risk of harm for all human beings but especially for those with serious mental illness. An abundant body of research has documented the pain and suffering that prisoners endure and the risk of harm that they confront when subjected to isolated confinement. Additionally, there are sound theoretical and demonstrated reasons why prisoners who suffer from serious mental illness would have a more difficult time tolerating the painful experience of isolated confinement and thus be placed at even greater risk of serious harm. The conditions of confinement in ADC's isolation units, including extreme social isolation, lack of property, inadequate exercise, inadequate nutrition, constant illumination, the use of chemical agents on prisoners with mental illness, and inadequate psychiatric monitoring due to chronic understaffing, pose a substantial risk of serious harm to prisoners exposed to such conditions. Moreover, ADC holds hundreds of prisoners who have been diagnosed as suffering from serious mental illness (SMI) in the isolation units, and ADC prisoners may remain in the isolation units for more than 20 years. Plaintiffs contend that Defendants are acting with deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial: (1) Plaintiffs' expert reports addressing the isolation issue; (2) the reporting that was done by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners, family members, and advocates; (4) ADC policies and practices and existing documentation of same; (5) media reports; (6) governmental investigations of deaths and documentation of suicide rates and self-harm; (7) academic and industry writings on this topic; (8) Significant Incident Reports and accompanying videos. Plaintiffs contend that Defendants are acting with deliberate indifference based on Defendants' policies and practices related to isolation

78204-0001/LEGAL123452505.1

and Defendants' failure to remedy the conditions for prisoners in isolation units in response to all of the information made known to them.

**Defendants Contend:**   An inmate's serious mental illness does not disqualify him or her from maximum-security housing conditions that result from disciplinary hearings or otherwise legitimate security classifications. Plaintiffs' position reflects an objection to segregation housing ever being an appropriate placement for mentally ill inmates, yet the Supreme Court and Ninth Circuit do not espouse that view, and have held that lockdown conditions in a cell for up to 23 hours per day is within the range of acceptable conditions of an inmate's sentence. Moreover, Plaintiffs' environmental stimulation theory is factually and legally flawed, and has not been accepted by the courts. Each of the "conditions" of confinement challenged by Plaintiffs (outdoor recreation, nutrition, alleged isolation, the use of chemical spray, cell illumination, and property) has been upheld as constitutional, and no court has ever allowed a litigant to combine any such components as a basis for asserting any basis human need for "environmental stimulation."   Additionally, Plaintiffs' position suggests a public policy judgment that segregation housing should be categorically banned in all cases for mentally ill inmates, whereas ADC's mental health treatment is managed on a case by case basis, with housing placement determined in accordance with well-established and lawful criteria. To the extent certain Plaintiffs or class members disagree with housing assignment, they either waived such objections or are precluded from challenging such placement in light of the Due Process hearing they received, and/or such claims reflect a difference of opinion that does not amount to deliberate indifference. The same contentions in No. 1 also apply to further explain why ADC's mental health programming and housing placement decisions

are constitutional. Defendants will prove the foregoing via ADC policies and procedures, statistical data, the testimony of ADC and Corizon professionals, inmate medical and institutional records and testimony, expert opinions, benchmarking data, and other relevant evidence.

**Issue #13:** Whether Defendants were deliberately indifferent to the health and well-being of Plaintiffs in the Plaintiff Class and created a substantial risk of serious harm by subjecting prisoners in the isolation sub-class to harm due to the conditions of confinement in the isolation units.

**Plaintiffs Contend:** Defendants knew of and disregarded the substantial risk of serious harm posed to Plaintiffs by the conditions of confinement in the isolation units. All of the facts identified in Issue #12 above establish the substantial risk of serious harm created by the conditions of confinement for prisoners in the isolation units. Plaintiffs contend that Defendants are acting with deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial: (1) Plaintiffs' expert reports addressing the isolation issue; (2) the reporting that was done by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners, family members, and advocates; (4) ADC policies and practices and existing documentation of same; (5) media reports; (6) governmental investigations of deaths and documentation of suicide rates and self-harm; (7) academic and industry writings on this topic; (8) Significant Incident Reports and accompanying videos. Plaintiffs contend that Defendants are acting with deliberate indifference based on Defendants' policies and practices related to isolation and Defendants' failure to remedy the conditions for prisoners in isolation units in response to all of the information made known to them.

**Defendants Contend:** See response to No. 13 above.

**Issue #14:**  Whether Defendants were deliberately indifferent to the health and well-being of Plaintiffs in the Plaintiff Class and created a substantial risk of serious harm by subjecting prisoners in the isolation sub-class to harm due to the extreme social isolation and minimal environmental stimulation in the isolation units.

**Plaintiffs Contend:** Defendants knew of and disregarded the substantial risk of serious harm posed to Plaintiffs by the conditions of confinement in the isolation units.   All of the facts identified in Issue #12 above establish the substantial risk of serious harm created for prisoners by the extreme social isolation and minimal environmental stimulation, including minimal property, in the isolation units.  Plaintiffs contend that Defendants are acting with deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial:  (1) Plaintiffs' expert reports addressing the isolation issue; (2) the reporting that was done by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners, family members, and advocates; (4) ADC policies and practices and existing documentation of same; (5) media reports; (6) governmental investigations of deaths and documentation of suicide rates and self-harm; (7) academic and industry writings on this topic; (8) Significant Incident Reports and accompanying videos.   Plaintiffs contend that Defendants are acting with deliberate indifference based on Defendants' policies and practices related to isolation and Defendants' failure to remedy the conditions for prisoners in isolation units in response to all of the information made known to them.

**Defendants Contend:** See response to No. 13 above.

**Issue #15:**  Whether Defendants were deliberately indifferent to the health and well-being of Plaintiffs in the Plaintiff Class and created a substantial

-24-

risk of serious harm by depriving prisoners in the isolation units of minimally adequate exercise.

**Plaintiffs Contend:**   Defendants knew of and disregarded the substantial risk of serious harm posed to Plaintiffs by the conditions of confinement in the isolation units.   Plaintiffs contend that prisoners in the isolation units are denied adequate exercise to preserve physical and mental health, placing them at substantial risk of serious harm, including aggravation of chronic medical conditions such as hypertension, osteoarthritis, and diabetes.   Plaintiffs contend that Defendants are acting with deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial: (1) Plaintiffs' expert reports addressing the isolation issue; (2) the reporting that was done by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners, family members, and advocates; (4) ADC policies and practices and existing documentation of same; (5) media reports; (6) governmental investigations of deaths and documentation of suicide rates and self-harm; (7) academic and industry writings on this topic; (8) Significant Incident Reports and accompanying videos.   Plaintiffs contend that Defendants are acting with deliberate indifference based on Defendants' policies and practices related to isolation and Defendants' failure to remedy the conditions for prisoners in isolation units in response to all of the information made known to them.

**Defendants Contend:**  ADC's provision of outdoor recreation of at least 5 hours per week exceeds the constitutional minimum Unless canceled for emergencies, weather, or declined by the inmate, inmates incarcerated at the five "isolation" housing units receive five hours of outdoor recreation per week (one hour per day, M-F), or two hours a day, three days per week

78204-0001/LEGAL123452505.1

(for a total of 6 hours), which precludes them from establishing a viable Eighth Amendment conditions claim. *See* Trial Brief.

**Issue #16:**  Whether Defendants were deliberately indifferent to the health and well-being of Plaintiffs in the Plaintiff Class and created a substantial risk of serious harm by subjecting prisoners in the isolation units to constant cell illumination.

**Plaintiffs Contend:**    Defendants knew of and disregarded the substantial risk of serious harm posed to Plaintiffs by the conditions of confinement in the isolation units.   Prisoners in the isolation units are subjected to 24-hour illumination, which interferes with sleep and creates an increased risk of functional and cognitive impairment, falls, and early mortality.   Plaintiffs contend that Defendants are acting with deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial:  (1) Plaintiffs' expert reports addressing the isolation issue; (2) the reporting that was done by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners, family members, and advocates; (4) ADC policies and practices and existing documentation of same; (5) media reports; (6) governmental investigations of deaths and documentation of suicide rates and self-harm; (7) academic and industry writings on this topic; (8) Significant Incident Reports and accompanying videos.    Plaintiffs contend that Defendants are acting with deliberate indifference based on Defendants' policies and practices related to isolation and Defendants' failure to remedy the conditions for prisoners in isolation units in response to all of the information made known to them.

**Defendants Contend:** The security lighting at the segregation housing units in question (Eyman, Browning, Perryville, and Florence) is

dimmed at night with the equivalent of a child's nightlight. In those units where illumination remains on during the night, the security light must remain on to afford correctional staff visibility into the cell to confirm the inmate's welfare while sleeping, and to rule out nighttime misconduct. Such security-based lighting practices are imposed for legitimate penological reasons and do not violate the Eighth Amendment. See Trial Brief.

**Issue #17:**   Whether Defendants were deliberately indifferent to the health and well-being of Plaintiffs in the Plaintiff Class and created a substantial risk of serious harm by depriving prisoners in the isolation units of adequate nutrition.

**Plaintiffs Contend:**   Defendants knew of and disregarded the substantial risk of serious harm posed to Plaintiffs by the conditions of confinement in the isolation units.   Prisoners in the isolation units are fed only twice a day on a haphazard schedule, and do not receive sufficient nutrition to sustain health or normal activity.   Plaintiffs contend that Defendants are acting with deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial:  (1) Plaintiffs' expert reports addressing the isolation issue; (2) the reporting that was done by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners, family members, and advocates; (4) ADC policies and practices and existing documentation of same; (5) media reports; (6) governmental investigations of deaths and documentation of suicide rates and self-harm; (7) academic and industry writings on this topic; (8) Significant Incident Reports and accompanying videos.   Plaintiffs contend that Defendants are acting with deliberate indifference based on Defendants policies and practices related to isolation

78204-0001/LEGAL123452505.1

and Defendants' failure to remedy the conditions for prisoners in isolation units in response to all of the information made known to them.

**Defendants Contend:** ADC's restricted-movement meal plan is constitutional, as it provides the necessary allotted calories for the sedentary lifestyle of the Subclass inmates, and streamlines the distribution of meals to two times per day. Such a meal plan has been upheld as constitutional, and Plaintiffs cannot show either the objective or subjective elements of deliberate indifference to prove an Eighth Amendment violation.

**Issue #18:** Whether Defendants were deliberately indifferent to the health and well-being of Plaintiffs in the Plaintiff Class and created a substantial risk of serious harm by using chemical agents against prisoners on psychotropic medications in the isolation units.

**Plaintiffs Contend:**   Defendants knew of and disregarded the substantial risk of serious harm posed to Plaintiffs by the use of chemical agents on prisoners who are taking psychotropic medications.   Such treatment results in the gratuitous infliction of pain and can aggravate the prisoner's mental illness.  Plaintiffs contend that Defendants are acting with deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial: (1) Plaintiffs' expert reports addressing the isolation issue; (2) the reporting that was done by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners, family members, and advocates; (4) ADC policies and practices and existing documentation of same; (5) media reports; (6) governmental investigations of deaths and documentation of suicide rates and self-harm; (7) academic and industry writings on this topic; (8) Significant Incident Reports and accompanying videos.   Plaintiffs contend that Defendants are acting with deliberate

-28-

indifference based on Defendants policies and practices related to isolation and Defendants' failure to remedy the conditions for prisoners in isolation units in response to all of the information made known to them.

**Defendants Contend:** ADC's policy does not, and need not, exempt inmates who are on psychotropic medication from the use of chemical spray when the occasion justifies it. The policy of spraying prisoners with pepper spray for refusing to follow directions falls within the wide-ranging zone of deference accorded to prison officials, and fails to satisfy either the sadistic and malicious standard Defendants contend applies under *Whitley v. Albers*, 475 U.S. 312 (1985) and *Hudson v. McMillian,* 503 U.S. 1 (1992), or the deliberate indifference standard Plaintiffs contend applies under *Farmer v. Brennan*, 511 U.S. 825 (1994). Moreover, ADC's policies regarding the use of chemical spray are reasonable and more fully detailed at DSOF at ¶¶ 614-643.

**Issue #19:**  Whether Defendants were deliberately indifferent to the health and well-being of Plaintiffs in the Plaintiff Class and created a substantial risk of serious harm by failing to provide adequate psychiatric monitoring because of chronic understaffing in the isolation units.

**Plaintiffs Contend:**   Defendants knew of and disregarded the substantial risk of serious harm posed to Plaintiffs by the conditions of confinement in the isolation units.   Defendants provide inadequate psychiatric monitoring of prisoners in the isolation units, thus failing to detect the development and exacerbation of mental illness that predictably results from the extreme social isolation and environmental deprivation in these units.  Plaintiffs contend that Defendants are acting with deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial:  (1) Plaintiffs' expert reports

addressing the isolation issue; (2) the reporting that was done by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners, family members, and advocates; (4) ADC policies and practices and existing documentation of same; (5) media reports; (6) governmental investigations of deaths and documentation of suicide rates and self-harm; (7) academic and industry writings on this topic; (8) Significant Incident Reports and accompanying videos.   Plaintiffs contend that Defendants are acting with deliberate indifference based on Defendants policies and practices related to isolation and Defendants' failure to remedy the conditions for prisoners in isolation units in response to all of the information made known to them.

**Defendants Contend:** ADC provides adequate psychiatric monitoring of Subclass inmates, and such monitoring and staffing does not rise to the level of a constitutional violation. The same contentions in No. 1 also apply to further explain why ADC's mental health monitoring and staffing is appropriate and constitutional. Defendants will prove the foregoing via ADC policies and procedures, statistical data, the testimony of ADC and Corizon professionals, inmate medical and institutional records and testimony, expert opinions, benchmarking data, and other relevant evidence as set forth in the uncontested and contested material facts section of the Joint Pretrial Statement.

2.    **The following are the issues of law to be determined:**

Plaintiffs object that Defendants did not inform Plaintiffs that they were contesting Plaintiffs' Uncontested Issues of Law #3-21 below, or send their contentions, until 7:46 PM on the day the document had to be filed, thus preventing Plaintiffs from developing a more detailed response.

**Issue #1:** Whether Defendants are aware of, and are acting with deliberate indifference to, the substantial risk of serious harm and injury faced by the

named plaintiffs and the plaintiff class because of the deficiencies in and attendant risks from health care provided by Defendants?

**Plaintiffs Contend:** Defendants are acting with such deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial: (1) Plaintiffs' expert reports; (2) the reporting by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners, their family members, and advocates; (4) media reports; (5) notification by Plaintiffs' counsel and Plaintiffs' experts; and (6) governmental investigations of deaths and other serious conditions. Plaintiffs contend that Defendants have failed to remedy the inadequacies in health care in response to all of the information made known to them.

**Defendants Contend:** ADC policies and practices evince a responsive and reasonable health care system, and do not rise to the level of a constitutional violation. The same contentions in No. 1 also apply to further explain why ADC's health care is timely and constitutional. Defendants will prove the foregoing via ADC policies and procedures, statistical data, the testimony of ADC and Corizon professionals, inmate medical and institutional records and testimony, expert opinions, benchmarking data, and other relevant evidence as set forth in the uncontested and contested material facts section of the Joint Pretrial Statement.

**Issue #2:** Whether Defendants are aware of, and are acting with deliberate indifference to, the substantial risk of serious harm faced by named plaintiffs and plaintiff class members, including but not limited to those with serious mental illness, who are or may be subjected to custody in isolation

because of the conditions imposed upon prisoners in isolation in the Arizona Department of Corrections?

**Plaintiffs Contend:**   Defendants are acting with such deliberate indifference, based on all of the evidence provided in the following, which will be submitted in admissible form at trial:  (1) Plaintiffs' expert reports addressing the isolation issue; (2) the reporting that was done by and for Defendants in connection with Wexford and Corizon contracts; (3) reports from prisoners, family members, and advocates; (4) media reports; (5) governmental investigations of deaths; (6) evidence of rates of self-harm and suicide in isolation; (7) academic and industry writings on this topic; (8) ADC policies and practices and documentation; (9) Significant Incident Reports and videos of same.  Plaintiffs contend that Defendants are acting with deliberate indifference based on Defendants policies and practices related to isolation and Defendants' failure to remedy the conditions for prisoners in isolation units in response to all of the information made known to them.

**Defendants Contend:**   Defendants' policies and practices are appropriate and do not rise to the level of a constitutional violation. Defendant incorporate their contentions with respect to Issues #12 and 13 above.

**Issue #3:** Whether it is the law of the case that Defendants waived the exhaustion of remedy defense in the Tolling Agreement executed on November 7, 2011? [Doc. 175 at 6-9]

**Plaintiffs Contend**: This Court held that "the Tolling Agreement's exhaustion waiver applies to the claims presented in Plaintiffs' Complaint," despite Defendants' "case of buyer's remorse," which apparently is still ongoing.  [Doc. 175 at 7-8]  *See* Plaintiffs' Trial Brief.

**Defendants Contend:** This issue is contested.

**Issue #4:** Whether it is the law of the case that ADC's duty to provide constitutionally adequate care to named plaintiffs and the plaintiff class is non-delegable and Defendants are "still ultimately liable for any constitutional deprivation that occurs?" [Doc. 175 at 9-10]

    **Plaintiffs Contend:**   This Court held that the delegation of care "does not absolve Ryan of his obligation to ensure the provision of medical care is constitutionally adequate," and "a prison or jail facility that contracts with a private party to perform an obligation is still ultimately liable for any constitutional deprivation that occurs." [Doc. 175 at 9-10]  *See* Plaintiffs' Trial Brief.

    **Defendants Contend:**  The State's non-delegable duty to provide constitutionally acceptable health care—a tort concept—does not equate with the State's liability under 42 U.S.C. § 1983. Also, the law of the case doctrine generally does not apply to pretrial rulings.

**Issue #5:** Whether it is the law of the case that if Plaintiffs prove that Defendants have put the Plaintiffs at substantial risk of serious future harm to which Defendants are deliberately indifferent, as a result of specified statewide ADC policies and practices that govern the overall conditions of health care services and confinement, then Plaintiffs have satisfied the requirement of commonality? *Parsons v. Ryan*, 754 F.3d 657, 676-85 (9th Cir. 2014).

    **Plaintiffs Contend:**   The Ninth Circuit has stated "[w]hat all members of the putative class and subclass have in common is their alleged exposure, as a result of specified statewide ADC policies and practices that

govern the overall conditions of health care services and confinement, to a substantial risk of serious future harm to which the defendants are allegedly deliberately indifferent." *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014). *See* Plaintiffs' Trial Brief.

**Defendants Contend:** Defendants' petition for rehearing with the Ninth Circuit is pending, and no appellate mandate has issued. The law of the case doctrine also generally does not apply to pretrial rulings, and class orders are "inherently tentative" under Rule 23(c)(1)(C). Plaintiffs' statement also mischaracterizes the interplay between the 8th Amendment standard, *Monell,* and Rule 23 class certification principles. The statement further confuses the variable constitutional standards applicable to conditions of confinement claims, mistakenly assumes the challenge to the use of pepper spray is governed by deliberate indifference, and omits that reasonable measures to abate a risk can defeat Eighth Amendment liability.

**Issue #6:** Whether it is the law of the case that if Plaintiffs prove that Defendants have put the Plaintiffs at substantial risk of serious future harm to which Defendants are deliberately indifferent, as a result of specified statewide ADC policies and practices that govern the overall conditions of health care services and confinement, then they have satisfied the requirement of typicality? *Parsons v. Ryan*, 754 F.3d 657, 685-86 (9th Cir. 2014).*Parsons*, 754 F.3d at 685-86.

**Plaintiffs Contend:** The Ninth Circuit has stated that "the named plaintiffs are all inmates in ADC custody. Each declares that he or she is being exposed, like all other members of the putative class, to a substantial risk of serious harm by the challenged ADC policies and practices. . . . . The named plaintiffs thus allege "the same or [a] similar injury" as the rest of the

putative class; they allege that this injury is a result of a course of conduct that is not unique to any of them; and they allege that the injury follows from the course of conduct at the center of the class claims." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (internal citation omitted). The Ninth Circuit further stated that "[f]urther, given that ***every*** inmate in ADC custody is highly likely to require medical, mental health, and dental care, each of the named plaintiffs is similarly positioned to all other ADC inmates with respect to a substantial risk of serious harm resulting from exposure to the defendants' policies and practices governing health care." *Id.* at 685-86. *See* Plaintiffs' Trial Brief.

**Defendants Contend:**  Defendants' petition for rehearing with the Ninth Circuit is pending, and no appellate mandate has issued. The law of the case doctrine also generally does not apply to pretrial rulings, and class orders are "inherently tentative" under Rule 23(c)(1)(C).   Plaintiffs' statement also mischaracterizes the interplay between the 8th Amendment standard, *Monell,* and Rule 23 class certification principles. The statement further confuses the variable constitutional standards applicable to conditions of confinement claims, mistakenly assumes the challenge to the use of pepper spray is governed by deliberate indifference, and omits that reasonable measures to abate a risk can defeat Eighth Amendment liability.

**Issue #7:**  Whether it is the law of the case that if Plaintiffs prove that there are uniform changes in statewide ADC policy and practices that would remedy the injury to the Plaintiffs class, the relief sought conforms to Federal Rule of Civil Procedure 23(b)(2)? *Parsons v. Ryan*, 754 F.3d 657, 686-89 (9th Cir. 2014).

78204-0001/LEGAL123452505.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Plaintiffs Contend:** The Ninth Circuit found that the declaratory and injunctive relief sought by Plaintiffs "unquestionably satisfied" the requirements of Rule 23(b)(2) because "every inmate in the proposed class is allegedly suffering the same (or at least a similar) injury and that injury can be alleviated for every class member by uniform changes in statewide ADC policy and practice." *Parsons v. Ryan*, 754 F.3d 657, 689 (9th Cir. 2014). *See* Plaintiffs' Trial Brief.

**Defendants Contend:** A petition for rehearing is pending in the Ninth Circuit, and no appellate mandate has issued. Also, the law of the case doctrine generally does not apply to pretrial rulings, and class orders are "inherently tentative" under Rule 23(c)(1)(C). Moreover, language in the appellate court's opinion suggesting possible outcomes was either tentative, dicta, or non-binding on the district court depending on the type of evidence presented at trial and the merits of each side's case.

**Issue #8:** Whether it is the law of that case that Plaintiffs have standing because they allege exposure to a substantial risk of serious future harm to which Defendants are deliberately indifferent? *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them."); *see also Parsons v. Ryan*, 754 F.3d at 676 (quoting *Helling*, 509 U.S. at 33).

**Plaintiffs Contend:** This Court has repeatedly rejected Defendants' standing arguments, including in its orders on the Motion to Dismiss [Doc. 175] and on the Motion for Summary Judgment [Doc. 1062]. The Ninth Circuit also clear that the Named Plaintiffs, like the rest of the Class, allege a substantial risk of serious harm, so Plaintiffs cannot lack standing on the

basis of the details of past medical care.  The evidence will show at trial that all Class members, including the Named Plaintiffs, are subjected to a substantial risk of serious harm by Defendants' indifference.  Furthermore, Defendants' claims that Plaintiffs failed to dispute Defendants' statement of facts are false.  Plaintiffs were instructed by the Court that they did not even need to ***read*** all of the facts in Defendants' non-compliant statement, which was filled with thousands of immaterial facts.  *See* Plaintiffs' Trial Brief.

**Defendants Contend:**  A plaintiff, even a class representative, must prove standing at the time of trial to proceed; an allegation is not enough. Plaintiffs also failed to dispute nearly all of the statements of fact supporting Defendants' Motion for Summary Judgment, which establish that the do not have standing; consequently they did not have standing then and they have waived any assertion of standing now. Finally, a petition for rehearing is pending in the Ninth Circuit, and no appellate mandate has issued. Also, the law of the case doctrine generally does not apply to pretrial rulings, and class orders are "inherently tentative" under Rule 23(c)(1)(C). Moreover, mere pleading allegations are insufficient to control subsequent proceedings on the merits.

**Issue #9:** Whether it is the law of the case that the Plaintiffs class is so numerous that joinder of all members is impracticable? *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014).

**Plaintiffs Contend:** Incredibly, Defendants, ***who did not even contest numerosity in their class certification briefing*** [Doc. 321] now claim for the first time that this is a contested issue.  This contention is spurious and frivolous, especially because the class has over 30,000

-37-

members.  Regardless, this Court and the Ninth Circuit found numerosity was present.  *See* Plaintiffs' Trial Brief.

**Defendants Contend:**  A petition for rehearing is pending.

**Issue # 10:**  Whether it is the law of the case that Plaintiffs are capable of fairly and adequately protecting the interests of the Plaintiff class pursuant to Federal Rule of Civil Procedure 23(a)(4)?   *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014).

**Plaintiffs Contend:** When Defendants fought class certification, they did not challenge the adequacy of any of the Named Plaintiffs, except Victor Parsons, who was dismissed because he had left prison.  [Doc. 321]  This Court certified the class and the Named Plaintiffs as class representatives, as did the Ninth Circuit.  On summary judgment, Defendants challenged the adequacy of five more Named Plaintiffs [Doc. 895 at 1-2], and lost on four out of five [Doc. 1065].  (Plaintiff Brislan was dismissed because he had left prison).  *See* Plaintiffs' Trial Brief.

**Defendants Contend:**   A petition for rehearing is pending in the Ninth Circuit, and no appellate mandate has issued. Also, the law of the case doctrine generally does not apply to pretrial rulings, and class orders are "inherently tentative" under Rule 23(c)(1)(C). Moreover, mere pleading allegations are insufficient to control subsequent proceedings on the merits, particularly where testimony, medical records and admissions of Plaintiffs reveal inadequacy of representation.

**Issue #11:**  Whether this action is maintainable as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1) and 23(b)(2)?

78204-0001/LEGAL123452505.1

**Plaintiffs Contend:** Both this Court and the Ninth Circuit have held that this action is maintainable as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1) and 23(b)(2).  *See* Plaintiffs' Trial Brief.

**Defendants Contend:**  This is contested.  See above.

**Issue #12:**  Whether the Eighth Amendment is violated when prison officials, acting with deliberate indifference, expose prisoners to a substantial risk of serious harm and injury? *Farmer v. Brennan*, 511 U.S. 8225, 828 (1994).  "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that official acted or failed to act despite his knowledge of a substantial risk of serious harm and injury. *Id.* at 842.

**Plaintiffs Contend:** Defendants do not deny that Plaintiffs' statement is an accurate statement of the law, they merely allege it is "incomplete" and "selective."  *Farmer* is the law, and Plaintiffs' statements are accurate, as further demonstrated in Plaintiffs' Trial Brief.

**Defendants Contend:**   Plaintiffs' statement is an incomplete, selective, and therefore misleading statement of law.  The statement omits corollary standard of care principles from *Estelle v. Gamble* that negligence or even gross negligence is insufficient, the objective and subjective components of the *Farmer* standard, and numerous other issues set forth in Defendants' Trial Brief.

**Issue #13:**  Whether "[t]he Eighth Amendment requires that prison officials provide a system of ready access to adequate medical care. Prison officials show deliberate indifference to serious medical needs if prisoners are unable to make their medical problems known to the medical staff. Access to the

-39-

medical staff has no meaning if the medical staff is not competent to deal with the prisoners' problems. The medical staff must be competent to examine prisoners and diagnose illnesses. It must be able to treat medical problems or to refer prisoners to others who can. Such referrals may be to other physicians within the prison, or to physicians or facilities outside the prison if there is reasonably speedy access to these other physicians or facilities. In keeping with these requirements, the prison must provide an adequate system for responding to emergencies. If outside facilities are too remote or too inaccessible to handle emergencies promptly and adequately, then the prison must provide adequate facilities and staff to handle emergencies within the prison. These requirements apply to physical, dental and mental health"? *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982).

**Plaintiffs Contend:** Defendants do not deny that Plaintiffs' statement is an accurate statement of the law, they merely allege it is "incomplete" and "selective." *Hoptowit* is the law, and Plaintiffs' statements are accurate, as further demonstrated in Plaintiffs' Trial Brief.

**Defendants Contend:** Plaintiffs' statement is an incomplete, selective, and therefore misleading statement of law. The statement omits corollary standard of care principles from *Estelle v. Gamble* that negligence or even gross negligence is insufficient, the objective and subjective components of the *Farmer* standard, other elements from *Hoptowit v. Ray* describing the need for judicial deference to prison authorities, and numerous other issues set forth in Defendants' Trial Brief.

**Issue #14:** Whether "[c]ourts have focused on the presence or absence of six basic, essentially common sense, components of a minimally adequate prison mental health care delivery system. …The six components are: (1) a

systematic program for screening and evaluating inmates to identify those in need of mental health care; (2) a treatment program that involves more than segregation and close supervision of mentally ill inmates; (3) employment of a sufficient number of trained mental health professionals; (4) maintenance of accurate, complete and confidential mental health treatment records; (5) administration of psychotropic medication only with appropriate supervision and periodic evaluation; and (6) a basic program to identify, treat, and supervise inmates at risk for suicide." *Coleman v. Wilson*, 912 F. Supp. 1282, 1298 & n. 10 (E.D. Cal. 1995).

**Plaintiffs Contend:**  Although Defendants apparently do not agree with *Coleman*, *Coleman*'s statement of the consensus of courts is accurate and is applicable to this case.  Just because *Coleman* was not mentioned in two Ninth Circuit cases does not mean that it has been rejected or called into question in any way.  Defendants' citation of *Doty* hardly supports its proposition, as *Doty* recognized that the requirements for mental health needs were the same as those for physical health needs.  *See* Plaintiffs' Trial Brief.

**Defendants Contend:**  Such factors are not universally accepted or binding, may violate Article III standing and separation of powers principles, and did not play any part in the Ninth Circuit's recent analysis of an inmate's mental health challenge in *Cano v. Taylor*, 739 F.3d 1214 (9th Cir. 2014), or the class action in *Hallett v. Morgan*, 296 F.3d 732, 746-50 (9th Cir. 2002). The Ninth Circuit does not require a prison's mental health program to adhere to or contain specific elements. *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) ("we now hold that the requirements for mental health care are the same as those for physical health care needs").

**Issue #15:** Whether some conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need"? *Wilson v. Seiter*, 501 U.S. 294, 305 (1991) (internal quotation marks and emphasis omitted).

**Plaintiffs Contend:** Defendants do not deny that the quote from *Wilson* is accurate, and it is the law. Defendants omit other human needs that have been recognized by the courts. Defendants' argument that Plaintiffs' claims do not relate to food, warmth, or exercise are absurd – among other claims, Plaintiffs have claimed that prisoners in isolation receive inadequate food and have inadequate opportunities to exercise. *See Scarver v. Litscher*, 371 F. Supp. 2d 986, 1001 (W.D. Wis. 2005) (conditions including 24-hour illumination, near-constant cell confinement, and infrequent human interaction "could have a mutually enforcing effect causing the deprivation of a prisoner's basic human need for social interaction and sensory stimulation"). Plaintiffs' claims do satisfy *Wilson*, as outlined in Plaintiffs' Trial Brief.

**Defendants Contend:** Statement is incomplete and misleading, as the *Wilson* court stressed that the single, identifiable human need must relate to a need such as food, warmth, or exercise, and as such is inapplicable to this case. See Defendants' Trial Brief.

**Issue #16:** Whether isolated confinement of prisoners with serious mental illness violates the Eighth Amendment? *See, e.g., Casey v. Lewis*, 834 F. Supp. 1477, 1548, 1550 (D. Ariz. 1993).

**Plaintiffs Contend:** Defendants do not deny that the citation is accurate and that it is the law. Other courts have held the same. *See, e.g.,*

*Coleman v. Wilson*, 912 F. Supp. 1282, 1320-21 (E.D. Cal. 1995); *Madrid v. Gomez*, 889 F. Supp. 1146, 1265-66 (N.D. Cal. 1995).  Unconstitutional confinement is unconstitutional regardless of "other factors." *See* Plaintiffs' Trial Brief.

**Defendants Contend:**  Plaintiffs' statement is unqualified, fails to take into account individual circumstances, legitimate penological justifications, and other factors warranting high-custody conditions. See Defendants' Reply in support of MSJ and Trial Brief.

**Issue #17:** Whether sleep "undoubtedly counts as one of life's basic needs"? *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999).  Moreover, whether "[t]here is no legitimate penological justification for requiring [inmates] to suffer physical and psychological harm by living in constant illumination. This practice is unconstitutional?" *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996) (internal citation and quotation omitted).

**Plaintiffs Contend:** Defendants acknowledge that sleep is one of life's basic needs.  Defendants claim that the language from *Keenan* should be limited to its context, but the case clearly says that there is *no* legitimate penological justification, not that "maximum-security inmates" are an exception.  Moreover, the Ninth Circuit recently held in *Grenning v. Miller-Stout*, 739 F.3d 1235, 1238-39 (9th Cir. 2014) that exposure to 24-hour illumination for 13 days in SMU states an Eighth Amendment claim.  *See* Plaintiffs' Trial Brief.

**Defendants Contend:**  First sentence is correct, but language from *Keenan* is taken out of context (as it is tied to the subjective sleeping experience of the inmate in *Keenan*) and fails to account for maximum-

security inmates as explained by the District Court in *Hampton*, and Ninth Circuit in precedent.

**Issue #18:** Whether the use of chemical agents like pepper spray on mentally ill prisoners can violate the Eighth Amendment? *Thomas v. Bryant*, 614 F.3d 1288, 1310-11 (11th Cir. 2010) (use of chemical agents on prisoner with mental illness "constituted an extreme deprivation sufficient to satisfy the objective prong" of the Eighth Amendment); *Coleman v. Brown*, 2014 WL 1400964, at \*7 (E.D. Cal. Apr. 10, 2014) (describing use of force, including pepper spray, on mentally ill prisoners as "horrific" and finding continuing Eighth Amendment violation).

**Plaintiffs Contend:** Defendants' attempts to distinguish *Thomas* and *Coleman* are unavailing, and those cases should be applied here. When policy predictably inflicts gratuitous harm, it is evaluated under deliberate indifference, not "malicious and sadistic" standard. Jordan v. Gardner, 986 F.2d 1521 (9th Cir. 1993) (when policy predictably inflicts gratuitous harm, it is evaluated under deliberate indifference, not "malicious and sadistic" standard). Defendants call for deference in their trial brief and rely here on *Spain v. Procunier*, 600 F.2d 189, 193-194 (9th Cir. 1979), but in that case, then-Judge Anthony Kennedy counseled that "[m]echanical deference to the findings of state prison officials in the context of the eighth amendment would reduce that provision to a nullity in precisely the context where it is most necessary." *See* Plaintiffs' Trial Brief.

**Defendants Contend:** Both cases apply the wrong standard due to party waiver (*Thomas*), or due to the nature of the longstanding injunction under review (*Coleman*), and neither is binding in this case. Binding Supreme Court law in *Hudson v. McMillan*, and Ninth Circuit law in *Spain*

-44-

*v. Procunier*, *Stewart v. Stewart*, and other cases in Defendants' Trial Brief set forth the proper standards.

**Issue #19:** Whether "[a]dequate food is a basic human need protected by the Eighth Amendment. While prison food need not be tasty or aesthetically pleasing, it must be adequate to maintain health"? *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996)  (citation and quotation omitted); see also Graves, 2008 WL 4699770, at *46 (D. Ariz. Oct. 22, 2008) (finding violation of pretrial detainees' constitutional right to adequate nutrition).

**Plaintiffs Contend:** Defendants' acknowledgment that food is a basic need and make no effort to distinguish the cases listed, which hold that adequate nutrition is a constitutional right for prisoners. *See* Plaintiffs' Trial Brief.

**Defendants Contend:**  Incomplete and misleading. The adequacy of food (caloric intake) was addressed by this District in *Hampton*, and other cases cited in Defendants' Trial Brief.

**Issue #20:** Whether is "[e]xercise is one of the most basic human necessities protected by the Eighth Amendment. Like food, it is a basic human need protected by the Eight Amendment"? *Thomas v. Ponder*, 611 F.3d 1144 (9th Cir. 2010) (citation and quotation marks omitted).

**Plaintiffs Contend:** Prisoners' right to exercise is protected by the Eighth Amendment. *See Toussaint v. McCarthy*, 597 F. Supp. 1388, 1402, 1412 (N.D. Cal. 1984) (requiring a minimum of eight hours of outdoor exercise per week for prisoners in segregation), *aff'd in part and rev'd in part on other grounds*, 801 F.2d 1080 (9th Cir. 1986).  Defendants try to mask the fact that they do not contest this issue, but it is clear that this issue

should have been listed as uncontested.  Instead, Defendants admit the law is correct but argue about how *much* exercise is constitutionally mandated, which was not part of the issue.  The amount of exercise needed – and the *type* of exercise needed – to reach constitutional minima is an issue for trial, but prisoners in the ADC receive a constitutionally inadequate amount of exercise, as further explained in Plaintiffs' Trial Brief.

**Defendants Contend:**  Incomplete and misleading.  An inmate in segregation may constitutionally receive as little as 4-5 hours of outdoor exercise each week.

**Issue #21:** Whether the court can award costs of suit and reasonable attorneys' fees and litigation expenses to a prevailing party pursuant to 42 U.S.C. § 1988?

**Plaintiffs Contend:** Once again, Defendants are deliberately being obtuse in straining to "contest" an issue they have no reason to contest.  The issue says that the court "can" award attorneys' fees and costs and Defendants say that a court "has discretion" to award attorneys' fees.  This fact should be considered uncontested.

**Defendants Contend:**  A court has discretion to award reasonable and necessary attorney's fees under 42 U.S.C. 1988, and ordinarily should award taxable costs under 28 U.S.C. 1920.

78204-0001/LEGAL123452505.1