# APPENDIX 5

**DEFENDANTS' LIST OF WITNESSES WHO SHALL BE CALLED TO TESTIFY AT TRIAL**

| Witness | Statement of Testimony | Direct | Cross | Other Witnesses |
|---|---|---|---|---|
| Charles Ryan **(fact and expert)** c/o Struck Wieneke & Love, P.L.C. 3100 W. Ray Road, Suite 300 Chandler, AZ 85226 and Office of the Attorney General, State of Arizona 1275 West Washington Street Phoenix, AZ 85007-2926 | Charles Ryan is the Director of the ADC. Director Ryan will testify regarding his training and experience in corrections and his role in the development of policies, procedures, training programs, and ADC's strategic vision. Director Ryan has more than 35 years of experience in the field of corrections. He has served as Director of the Arizona Department of Corrections since 2009, and prior to that as Deputy Director of Prison Operations, as a prison warden and as a prison administrator. He possesses in-depth, hands-on institutional knowledge. Director Ryan has extensive experience in the development of correctional institution policy including the formulation of the inmate classification system, the staffing, operation and activities of various prison complexes and the development of budgetary | | 6* 3* for Ps | Defendants do not anticipate calling *any* witness to testify to the same content as another Defense witness. |

requirements. Director Ryan will testify regarding the centralization of health and mental health care for certain inmate populations. He is likely to testify with regard to the maintenance and administration of ADC institutions and programs; ADC policies, procedures, and practices, including those related to medical, dental and mental health care as well as the provision of adequate care to ADC inmates in compliance with constitutional requirements; the improvements in the delivery of health care to the ADC inmate population; the privatization of the entire health care delivery system, specifically, the taking over of the health care system by Wexford Health Sources ("Wexford") from July 1, 2012 through March 3, 2013, and by Corizon Health on March 4, 2013; ADC facilities' compliance with the National Commission on Correctional Health Care Standards ("NCCHC"), Wexford's compliance during its tenure, and Corizon's compliance

1

after it took over on March 4, 2013; various budgetary issues surrounding the ADC and the overall operation of ADC; his recommendation of policies and programs to the Governor and Legislature for improving corrections programs including health care services; his establishment of employment qualifications for key personnel as well as relevant staffing policies, procedures, levels, and issues with regard to dental, medical, and mental health personnel as well as to any communications with said personnel; financial issues relative to the administration of specialty care to inmates at ADC as well as maximum custody and detention units and conditions of confinement issues in various ADC facilities; exhaustion of the grievance appeal process.  He will also discuss why changes in policies and procedures were made, and will rebut the suggestion that changes were made because of the filing of Plaintiffs' lawsuit.  Director Ryan will testify regarding these areas as

| | | | | | |
|---|---|---|---|---|---|
| | | they develop up until the time of trial. Director Ryan will also testify regarding changes implemented throughout ADC regarding the provision of health care and conditions of confinement for those mentally ill inmates in maximum custody or detention units and the positive outcomes resulting from those changes. Director Ryan will testify consistent with his deposition testimony. Director Ryan will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). | | | |
| | Richard Pratt **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | Richard Pratt is Assistant Director of the ADC Health Services Contract Monitoring Bureau and the Quality/Clinical Program Evaluation Administrator and also formerly served as the Interim Division Director of Health Services at ADC. Please see Exhibit Bates Numbered ADC123458-123461 for Mr. Pratt's credentials and qualifications. Mr. Pratt was previously deposed and Defendants will rely on his deposition | | 8* 3* for Ps | |

testimony. In addition to his deposition testimony, Mr. Pratt is likely to testify with regard to policies, procedures, and practices, including those related to medical, dental, mental health care; his knowledge of Plaintiffs' medical, dental and mental health needs requests and Plaintiffs' institutional history as reflected in grievance appeals files; the privatization of the entire health care delivery system, specifically, the taking over of the entire health care system by Wexford; ADC policies and procedures including those related to medical, dental and mental health care as well as the provision of adequate care to ADC inmates in compliance with constitutional requirements; relevant staffing policies, procedures, levels; ADC facilities' compliance with the NCCHC standards; Wexford's compliance during its tenure; compliance with contract requirements by Corizon; and Corizon's compliance after it took

| | | | | | |
|---|---|---|---|---|---|
| | | over on March 4, 2013; policies and procedures including those related to medical, dental and mental health care, statistics, reports and historical data relating to mental, medical and dental care, as well as the provision of adequate care to ADC inmates in compliance with constitutional requirements. | | | |
| | Carson McWilliams **(fact and/or expert)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Carson McWilliams is the ADC Division Director of Offender Operations, and formerly was the Northern Region Operations Director of ADC. Please see Exhibit Bates Numbered ADC123449-123451 for his credentials and qualifications. Mr. McWilliams is likely to testify with regard to policies and procedures including those related to medical, dental and mental health care, classification, housing, security, and operations of ADC Complexes in the Northern Region; a description of the complexes, pods, units and security classifications of each facility; fundraising opportunities and activities at Complexes; | | 8* 3* for Ps | |

5

| | | | | |
|---|---|---|---|---|
| | implementation of structural changes and programming in ADC facilities; education opportunities and availability to ADC populations; CCTV programing; implementation of mental health programming at ADC facilities, recreation, employment, and education activities provided to ADC inmates, and the conditions of confinement at ADC facilities, including all matters raised in the court's certification of the class and sub classes as it relates to conditions of confinement, which may include, lighting, food service, recreational activities, mail, food, watch, reading materials and the like; statistics, reports and historical data relating to mental, medical and dental care; and his knowledge of security operations and conditions in maximum custody.<br><br>Mr. McWilliams will also testify regarding the changes implemented and anticipated for maximum custody inmates, specifically inmates who are in maximum custody and designated | | | |

as Seriously Mentally Ill. Mr. McWilliams will testify that mental health inmates in maximum custody have been clustered in various housing areas and ADC has identified office space for mental health staff in those housing areas. ADC has built large recreation enclosures for use by multiple inmates at the same time and in some units, recreation fields will be used by 50-60 inmates at a time. Inmates are working as porters, groundskeepers, maintenance works, kitchen workers and in other various capacities. Mental health group programming as well as self-help television programs are being offered. ADC is also starting to facilitate groups to include ADC programs staff with several new groups planned. Some units include contact visitation. A step system is being implemented to allow the evaluation of inmates with the highest step receiving the most out-of-cell activity. This system is based on time, participation in programs and

the inmate's general behavior. Religious services are also available. Plans are being made to expand the outdoor recreation in groups and on recreation fields. Even more jobs are being identified and inmates will be screened and/or trained to work in those jobs. Tables are being placed in pods and runs for increased group out-of-cell interaction. Proposals are being reviewed for various new out-of-cell activities that will increase and encourage positive socialization. Programs are being reviewed and staff is being trained to facilitate groups with plans to implement those new programs in January 2014. Maximum custody inmates have been reviewed for movement to lower custody levels and placement in open cell blocks, such as CB1 and CB2 in ASPC-Florence's Central Unit. Plans to open more blocks are scheduled to begin in 2014. ADC is also currently reviewing housing areas to cluster

inmates designated as Seriously Mentally Ill in a more open living environment. Mr. McWilliams will testify to security equipment changes like using security chairs for inmate groups in place of individual holding enclosures. Additionally, he will testify regarding the cutting of windows in solid cell doors in inmate housing with mental health issues to enhance observation. In some cases this involves facilitating groups with inmates unrestrained. Mr. McWilliams will also testify as to the implementation and positive outcomes related to these changes once the changes have been made.

Mr. McWilliams has reviewed the reports of Plaintiffs' experts Eldon Vail and Craig Haney. Mr. McWilliams will testify regarding the conditions of confinement as alleged by both Mr. Vail and Mr. Haney and as to the conditions of confinement for those inmates in maximum custody or detention units that may change up until the time of trial. Mr.

McWilliams will testify regarding the classification system for mentally ill inmates placed in maximum custody and detention units, specifically but not limited to the fact that ADC's classification system has been reviewed and validated by expert Dr. James Austin through the American Correctional Association and the National Institute of Corrections. Further, every inmate receives an annual classification review, which is an interactive process including the inmate.

Mr. McWilliams will discuss the concepts and terminology he observed at a training course on working with difficult/violent offenders at the National Institute of Corrections – states participating in the training had numerous, different classifications and terms for inmates housed in their highest custody prisons. He will also testify that Arizona uses a concept of four custodies, minimum, medium, close and maximum. Mr. McWilliams will also testify

regarding the ability of inmates, with the exception of those inmates on Death Row, to earn their way out of maximum custody or detention units and the criteria for such movement. Mr. McWilliams will testify that there are various groups of mental health inmates in maximum custody or detention units, which each require special considerations in how ADC addresses their housing and movement. Additionally, Mr. McWilliams will testify regarding the training that all correctional staff receives and the training that staff assigned to mental health units are undergoing, including ASIST Training and other specialized training regarding inmates with mental illness. Officers are selected to work in those areas of maximum custody housing mentally-ill inmates based on their experience level and demonstrated ability to address situations that may arise. These officers serve 5 years at these posts before rotating in order to provide

consistency in these housing areas. Further, all sergeants and lieutenants will be trained in motivational interviewing as part of crisis intervention training.

Mr. McWilliams will also testify regarding the frequency with which inmates have contact with individual staff, whether it be correctional or medical staff. Mr. McWilliams will testify regarding the opportunity for recreation within the maximum custody and detention units. Further, maintenance issues throughout ADC are regularly addressed with those issues positing a security or safety concern given higher priority. Mr. McWilliams will also testify about the maintenance and cleanliness of the complexes; however, there remains the potential for rodent or insect given that inmates are permitted to keep food in their cells and often attempt to keep animals such as ground squirrels and pigeons as pets.

Mr. McWilliams will further testify regarding the requirement that staff

and visitors to maximum custody and detention units wear safety gear. He will testify that staff safety is a priority and that the equipment in use today is the direct result of past incidents of violent inmate behavior. Mr. McWilliams will testify regarding the health and welfare checks that are occurring through ADC for inmates in maximum custody and detention units, including the role of the roving officer whose sole job duty is to conduct such checks. He will also testify regarding the policies and procedures regarding the use of chemical agents and the circumstances for such use. He will testify regarding the emphasis ADC places on de-escalation techniques, barring emergency situations requiring immediate response. Mr. McWilliams will also address conditions of confinement issues raised by named Plaintiffs.

Mr. McWilliams will testify as to the current status of all of these areas, the

| | | | | | |
|---|---|---|---|---|---|
| | | allegations contained in Plaintiffs' expert reports, and changes that may be implemented up until trial. Mr. McWilliams will testify consistent with his deposition testimony. Mr. McWilliams will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). | | | |
| | Richard Rowe **(fact and/or expert)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Dr. Richard Rowe was the former HS Division, Quality/Clinical Medical Program Administrator. Please see Exhibit Bates Numbered ADC123462-123463 for his credentials and qualifications. Dr. Rowe was previously deposed and Defendants will rely on his deposition testimony. In addition to his deposition testimony, Dr. Rowe will testify pursuant to FRCP 26(a)(2)(C) with regard to recommendations made to him by doctors at various ADC facilities and the procedure by which recommendations are made to him; policies, practices, procedures, and processes of the administration of all health care services to inmates housed at ADC; relevant staffing policies and | 6 | 1 | |

14

procedures; implementation of structural and programming improvements in ADC facilities; policies and procedures including those related to medical health care as well as the provision of adequate care to ADC inmates in compliance with constitutional requirements; his role in authoring inmate mortality reviews; his involvement in working with outside providers as a result of the ACCHS legislation and privatization legislation. Dr. Rowe will also testify regarding the mortality reviews he completed.

Dr. Rowe will also testify regarding his review of Plaintiff Shawn Jensen's medical records and his opinions regarding the treatment rendered to Jensen. He will further testify regarding specific allegations made by Mr. Jensen as it relates to his medical care in connection with his treatment for prostate cancer as well as his current prognosis.

Dr. Rowe will testify regarding his review of Plaintiff Swartz's medical

records and his opinions regarding the treatment rendered to Swartz after he was involved in two inmate assaults in 2010. Specifically, he will testify regarding the follow-up care, medications, and subsequent facial reconstructive surgery. He will also testify regarding Plaintiff Swartz's allegations that staff screened him with a metal detector after he swallowed metal, did not refer him for an endoscopy, and told him he would have to pass the metal.

Dr. Rowe will testify regarding his review of Plaintiff Rodriguez's medical records and his opinions regarding the treatment rendered to her. He will further testify regarding Plaintiff Rodriguez's allegation that she has experienced multiple asthma attacks and breathing problems as a result of her exposure to pepper spray.

Dr. Rowe will testify regarding his review of Plaintiff Thomas's medical records and his opinions regarding the treatment provided to him. He will further testify regarding Plaintiff

| | | | | |
|---|---|---|---|---|
| | | Thomas's specific allegations that in November 2011, he overdosed on Diclofenac and did not receive medical attention, that he has experienced insomnia and weight loss while in SMU, and was not prescribed a sleep aid.<br><br>Dr. Rowe will testify regarding his review of Plaintiff Gamez's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Gamez's specific allegations that his care was managed by a nurse practitioner, he did not receive follow-up tests to confirm that he has frontal lobe dysfunction, and his medications have been denied or delayed.<br><br>Dr. Rowe will testify regarding his review of Plaintiff Chisholm's medical records and his opinions regarding the treatment provided to her.  He will further testify regarding Plaintiff Chisholm's specific allegations that she was not referred to a cardiologist for eight months | | |

17

despite experiencing chest pains and shortness of breath and did not receive adequate care or testing from outside specialists.

Dr. Rowe will testify regarding his review of Plaintiff Licci's medical records and his opinions regarding the treatment provided to her. He will further testify regarding Plaintiff Licci's specific allegations that she has experienced delays in seeing an oncologist and receiving testing regarding masses on her breasts, mouth, arms, and ovaries, that she experiences extreme discomfort in her cervix that impacts her bowels and results in constipation, and medical staff make false claims in replies to her grievances. Dr. Rowe will also testify regarding Plaintiff Licci's allegation that her port-a-cath may not have been properly flushed.

Dr. Rowe will testify regarding his review of Plaintiff Hefner's medical records and his opinions regarding the treatment provided to him. He will further testify regarding Plaintiff

Hefner's specific allegations that his vision deteriorated after a nurse gave him expired eye drops, he did not receive eye medication following eye surgery in 2006 and 2008, has not seen an ophthalmologist, and experienced delay in receiving a CT scan following an injury. He will testify regarding Plaintiff Hefner's allegation that he did not receive adequate treatment after an assault. Dr. Rowe will also testify regarding Plaintiff Hefner's claim that his requests for a medical diet have been denied.

Dr. Rowe will testify regarding his review of Plaintiff Polson's medical records and his opinions regarding the treatment provided to him. He will further testify regarding Plaintiff Polson's specific allegations that he experienced delays in receiving appropriate care and medications for chronic ear pain.

Dr. Rowe will testify regarding his review of Plaintiff Wells' medical records and his opinions regarding the

treatment provided to her. He will further testify regarding Plaintiff Wells' specific allegations that she was not evaluated by a cardiologist despite repeated complaints of chronic chest pain.

Dr. Rowe will testify regarding his review of Plaintiff Smith's medical records and his opinions regarding the treatment provided to him. He will further testify regarding Plaintiff Smith's specific allegation that he was unable to write HNRs due to a hand injury.

Dr. Rowe will testify regarding his review of Plaintiff Brislan's medical records and his opinions regarding the treatment provided to him. He will further testify regarding Plaintiff Brislan's specific allegation that he has lost weight due to insufficient meals.

In addition to testifying regarding the medical treatment of the named Plaintiffs, Dr. Rowe will also testify regarding the health care provided to the individual inmates specifically

| | | | | |
|---|---|---|---|---|
| | referred to by Plaintiffs' experts and whether the care rendered was adequate, appropriate and meets the standard of care up until the time of trial. | | | |
| Ben Shaw **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Ben Shaw, M.D., is the former HS Division, Quality/Clinical, Mental Health Monitor (Health Services Coordinator) at ADC, and the current Corizon Mental Health Director at ASPC-Phoenix. Dr. Shaw was previously deposed and Defendants will rely on his deposition testimony. In addition to his deposition testimony, Dr. Shaw will testify with regard to policies and procedures at the time of his employment with ADC, including those related to mental health needs; the privatization of the entire health care delivery system, specifically, the transition of the entire health care system to Wexford; the transition of the entire health care system to Corizon; the provision of adequate care to ADC inmates in compliance with constitutional requirements, statistics, | 6 | 1 | |

21

| | | | | | |
|---|---|---|---|---|---|
| | | reports and historical data relating to mental, medical and dental care, and his current job activities. Dr. Shaw may also testify regarding his knowledge of the care and treatment of the named Plaintiffs, as well as class members whose care he is familiar with. Dr. Shaw has knowledge of the mental health group programing, the CCTV programing, the activities of the psych associates and other mental health staff, how the telemed program works, medication distribution, the mental health phases at maximum security facilities, the incentive programs, and the loaner tv and radio programs. | | | |
| | Carol Pearson **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | Carol Pearson is the current HS Contract Monitor Bureau Medical Records Monitor and former ADC Medical Records Program Manager at ADC. Ms. Pearson was previously deposed and Defendants will rely on her deposition testimony. Ms. Pearson is likely to testify regarding her information with regard to ADC Polices, practices, and procedures, | 2 | 1 | |

| | | | | | |
|---|---|---|---|---|---|
| | | including those related to the organization, storage, maintenance, archiving, and eventual destruction of inmate medical records; and the privatization of the healthcare delivery system and its impact on medical records management. | | | |
| | Juliet Respicio-Moriarty **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | Juliet Respicio-Moriarty is the current Inmate Grievance Appeals Investigator for ADC. Please see Exhibit Bates Numbered ADC123429-123433 for her credentials and qualifications. Ms. Respicio-Moriarty will testify regarding policies, practices, and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with | 2 | 1 | |

23

| | | | | | |
|---|---|---|---|---|---|
| | | federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; and her knowledge of Corizon's performance under the Contract with ADC. | | | |
| | Kathleen Campbell **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | Kathleen Campbell is the current Contract Compliance Program Evaluation Administrator for ADC. Please see Exhibit Bates Numbered ADC123435-123438 for her credentials and qualifications. Ms. Campbell will testify regarding policies, practices, and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of oral and dental care; reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; and her knowledge of Corizon's performance under the Contract with ADC. | 4 | 3 | |
| | Sam Tardibuono **(fact)** c/o Struck | Sam Tardibuono was formerly the Contract Monitor at ASPC-Douglas. | 2 | 1 | |

24

| | | | | | |
|---|---|---|---|---|---|
| Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | Please see Exhibit Bates Numbered ADC123464-123467 for his credentials and qualifications. Mr. Tardibuono will testify regarding his monitoring of policies, practices, and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care only as required for monitoring and reporting in the MGAR; his activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; and his knowledge of Corizon's performance under the Contract with ADC. | | | |
| David Robertson (**fact and/or expert**) c/o Struck Wieneke & Love, P.L.C. | Dr. David Robertson is the current HS Contract Monitoring Bureau, Quality/Clinical, Medical Program Administrator. Please see Exhibit Bates Numbered ADC123413-123418 | | 3* 3* for Ps | |

| | | | | | |
|---|---|---|---|---|---|
| 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 | 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | for his credentials and qualifications. Dr. Robertson will testify pursuant to FRCP 26(a)(2)(C).  He will testify regarding ADC policies, practices, and procedures including those related to medical care, review and investigation of medical grievances, inmate death investigations and mortality reviews, implementation by Corizon of electronic medical records, Corizon's telemedicine system; his knowledge of Plaintiffs' medical health needs and the continuous improvements in the delivery of health care to the ADC inmate population. Dr. Robertson will also testify regarding the mortality reviews he completed. Dr. Robertson will also testify regarding the medical care provided to Plaintiff Shawn Jensen and that the medical care was appropriate and within the applicable standard of care. He will further testify regarding specific allegations made by Mr. Jensen as it relates to his medical care in connection with his treatment for | | | |

prostate cancer as well as his current prognosis.

Specifically, Dr. Robertson will testify that it was within his regular duties as a physician to provide medical treatment to inmates, and he specifically provided medical treatment to Inmate Jensen during the period of October 2009 through August 2010. As part of that treatment, he would also review the medical records of other providers, including outside consultants, and these records would be included in the chart. Dr. Robertson will testify that the care and treatment he provided to Plaintiff Jensen for prostate cancer and follow-up care from October 2009 through August 2010, as well as the care provided by the outside providers was to a reasonable degree of medical probability within the standard of care generally accepted for the care and treatment for persons with Plaintiff Jensen's medical issues. Dr. Robertson will testify consistent with the content of the treatment

records he authored and/or reviewed during the course of his treatment of Plaintiff Jensen as contained in the medical records produced in this case and referenced as Bates Numbers ADC004374-ADC005069; ADC073108-ADC73149; ADC074716-074959; ADC084701-084878; ADC123280-ADC123340; ADC123379-ADC123383; ADC130309-ADC130339; ADC197447; ADC222075-222099; ADC222242-222310; and, ADC232228-232229.

Dr. Robertson will testify that Jensen underwent a radical prostatectomy on 7/15/10 at Mountain Vista Medical Center. See medical record ADC004889. Dr. Robertson will testify that following his surgery, Plaintiff Jensen submitted an HNR on 7/30/10 stating that his catheter was leaking. ADC005045. He was evaluated by a nurse who replaced his catheter bag. Id. On 7/31/10, Plaintiff Jensen submitted another HNR stating that his catheter was

28

constantly leaking. ADC005044. On 8/1/10, Jensen was seen on the nursing line, and the nurse offered to call a doctor to check on changing him to a larger catheter, but Jensen declined. ADC004629. Jensen stated that he "just wanted to take it out." Id. On 8/2/10, Jensen was seen again for leakage, and the provider ordered irrigation of the catheter. ADC004628. The irrigation was performed with no improvement. Id. On 8/4/10, an outside urology consult was requested for Jensen. ADC004680. On 8/5/10, Jensen was examined at Mountain Vista Medical Center, and the Foley catheter was found to be outside of the bladder in the pelvic cavity. ADC004684, ADC004682. Jensen elected to undergo surgery for closure of the bladder, replacement of the Foley catheter, and reconstruction of his bladder neck. ADC004684, ADC004682-83.

Dr. Robertson will testify that in his opinion, Jensen needed to undergo

| | | |
|---|---|---|

multiple surgeries to remedy contracture of his bladder neck as a likely result of scarring from the prostatectomy he underwent in July 2010 and not as a result of damage from a nurse's improper adjustment of Jensen's Foley catheter in August 2010 as alleged by Jensen.   Dr. Robertson will testify that there is no evidence that a nurse improperly irrigated his catheter or caused damage to his urethra and bladder neck as alleged by Jensen.   In addition, Jensen presented to medical with leakage around his catheter and little return into the bag, which indicates that the Foley was not in his bladder at the time he presented to medical.   Dr. Robertson will testify that in his opinion, Jensen himself could have manipulated the catheter and likely resulted in the catheter coming out of the bladder and causing damage to his bladder neck.   Dr. Robertson will also testify that infection, such as the testicular infection Jensen experienced, is a

potential complication of undergoing any surgery.

Dr. Robertson will also testify regarding Jensen's receipt of chemotherapy medications. Specifically, Dr. Robertson will testify that on 2/26/10, Jensen was prescribed Degarelix, a hormonal therapy used in the treatment of prostate cancer, and received the first injection on 3/3/10. ADC004958. Jensen received the second injection on 4/7/10. ADC004840. Degarelix was ordered for Jensen in May 13, 2010, but ADC was informed by the pharmacy that the medication was unavailable from the manufacturer due to a product recall and would not be available until mid-June at the earliest. ADC004838, ADC004837, ADC004836. Jensen was scheduled to receive the third injection of Degarelix on July 14, 2010, but he underwent a radical prostatectomy on 7/15/10, and the shots were discontinued. ADC004911.

In addition, Dr. Robertson will testify

31

that Jensen received adequate catheter supplies following his prostatectomy and there is no evidence in his chart to support his claim that he was provided only one condom catheter for 55 days.

Dr. Robertson will testify that the medical treatment he provided to Jensen was timely and adequate.

Dr. Robertson will testify regarding his review of Plaintiff Swartz's medical records and his opinions regarding the treatment rendered to Swartz after he was involved in two inmate assaults in 2010. Specifically, he will testify regarding the follow-up care, medications, and subsequent facial reconstructive surgery. He will also testify regarding Plaintiff Swartz's allegations that staff screened him with a metal detector after he swallowed metal, did not refer him for an endoscopy, and told him he would have to pass the metal.

Dr. Robertson will testify regarding his review of Plaintiff Rodriguez's medical records and his opinions

regarding the treatment rendered to her.  He will further testify regarding Plaintiff Rodriguez's allegation that she has experienced multiple asthma attacks and breathing problems as a result of her exposure to pepper spray. Dr. Robertson will testify regarding his review of Plaintiff Thomas's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Thomas's specific allegations that in November 2011, he overdosed on Diclofenac and did not receive medical attention, that he has experienced insomnia and weight loss while in SMU, and was not prescribed a sleep aid.

Dr. Robertson will testify regarding his review of Plaintiff Gamez's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Gamez's specific allegations that his care was managed by a nurse practitioner, he did not receive follow-up tests to confirm that he has

frontal lobe dysfunction, and his medications have been denied or delayed.

Dr. Robertson will testify regarding his review of Plaintiff Chisholm's medical records and his opinions regarding the treatment provided to her. He will further testify regarding Plaintiff Chisholm's specific allegations that she was not referred to a cardiologist for eight months despite experiencing chest pains and shortness of breath and did not receive adequate care or testing from outside specialists.

Dr. Robertson will testify regarding his review of Plaintiff Licci's medical records and his opinions regarding the treatment provided to her. He will further testify regarding Plaintiff Licci's specific allegations that she has experienced delays in seeing an oncologist and receiving testing regarding masses on her breasts, mouth, arms, and ovaries, that she experiences extreme discomfort in her cervix that impacts her bowels and

results in constipation, and medical staff make false claims in replies to her grievances.   Dr. Robertson will also testify regarding Plaintiff Licci's allegation that her port-a-cath may not have been properly flushed.

Dr. Robertson will testify regarding his review of Plaintiff Hefner's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Hefner's specific allegations that his vision deteriorated after a nurse gave him expired eye drops, he did not receive eye medication following eye surgery in 2006 and 2008, has not seen an ophthalmologist, and experienced delay in receiving a CT scan following an injury.  He will testify regarding Plaintiff Hefner's allegation that he did not receive adequate treatment after an assault.   Dr. Robertson will also testify regarding Plaintiff Hefner's claim that his requests for a medical diet have been denied.

Dr. Robertson will testify regarding his review of Plaintiff Polson's medical records and his opinions regarding the treatment provided to him. He will further testify regarding Plaintiff Polson's specific allegations that he experienced delays in receiving appropriate care and medications for chronic ear pain.

Dr. Robertson will testify regarding his review of Plaintiff Wells' medical records and his opinions regarding the treatment provided to her. He will further testify regarding Plaintiff Wells' specific allegations that she was not evaluated by a cardiologist despite repeated complaints of chronic chest pain.

Dr. Robertson will testify regarding his review of Plaintiff Smith's medical records and his opinions regarding the treatment provided to him. He will further testify regarding Plaintiff Smith's specific allegation that he was unable to write HNRs due to a hand injury.

Dr. Robertson will testify regarding

| | | | | | |
|---|---|---|---|---|---|
| | | his review of Plaintiff Brislan's medical records and his opinions regarding the treatment provided to him. He will further testify regarding Plaintiff Brislan's specific allegation that he has lost weight due to insufficient meals.<br><br>In addition to testifying regarding the medical treatment of the named Plaintiffs, Dr. Robertson will also testify regarding the health care provided to the individual inmates specifically referred to by Plaintiffs' experts and whether the care rendered was adequate, appropriate and meets the standard of care. | | | |
| | Nicole Taylor **(fact and/or expert)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | Nicole Taylor, Ph.D. is the current HS Contract Monitoring Bureau, Quality/Clinical Mental Health Administrator. Please see Exhibit Bates Numbered ADC123454-123457 for her credentials and qualifications. Due to privatization, the Health Services Monitoring Bureau was created, and Dr. Taylor subsequently transitioned from direct care into a monitoring position. Dr. Taylor will | 10* | 3 | |

testify based on her education, training, qualifications, and experience and review of records of the inmate population. All opinions expressed are to a reasonable degree of psychological probability. Dr. Taylor will testify regarding ADC policies, practices, and procedures including those related to mental health care and conditions of confinement, including mental health programming offered to inmates housed at ASPC-Eyman, Florence, Lewis, Phoenix, Perryville, Tucson and Yuma and any changes to programming that occurs up until trial; the Mental Health Technical Manual and any changes to that Manual that occurs up until trial; her knowledge of Plaintiffs' mental health care needs, specifically the mental health care needs and treatment of named Plaintiffs Dustin Brislan and Robert Gamez; the subsequent transition to Corizon; the provision of adequate care to ADC inmates in compliance with constitutional

requirements; relevant staffing policies, procedures, levels and issues with regard to mental health personnel and changes to those policies, procedures and levels up until trial.

Dr. Taylor will testify that during the time that she was providing direct care that she was involved in the conception and development of many of the mental health programs currently running in the Maximum Custody units. Specifically, she helped to identify the population, location, and programming of the Kasson Wing One program, CB-1 Mental Health program, and the specialized mental health programming at Browning and SMU I. She will testify that she has continued to be actively involved in the implementation and strategic planning related to the mental health programs and transitional program for maximum custody inmates as a whole.

Dr. Taylor will testify that in the course of her current position that she

routinely reviews a random sample of approximately 200 charts located at various Complexes to assess contract compliance and timeliness regarding triage, referrals, mental health treatment plans, contacts with mental health staff, review by psychiatric providers of inmates on psychotropic medications, and reentry planning. She reports her findings to Corizon and ADC leadership. She will also testify that in the course of her position that she reviews the specific mental health MGAR findings at each of the seven (7) corridor complexes. Additionally, she reviews all Mental Health grievances and the corresponding medical record documentation.

Dr. Taylor will testify regarding the mental health care provided to and mental health condition of the named Plaintiffs Swartz, Brislan, Thomas, Smith, Gamez, Chisholm, Polson, Rodriguez and Verduzco. She will testify regarding their allegations related to their mental health care.

Specifically, Dr. Taylor will testify regarding her review of Plaintiff Stephen Swartz's records relating to his allegations that despite multiple instances of self-harm, he has received inadequate mental health care while on suicide watch and while housed at SMU.  She will also testify regarding his allegation that he was able to access dangerous objects while on suicide watch.

Dr. Taylor will testify regarding her review of Plaintiff Brislan's records relating to his allegations that he has been placed on suicide watch for extended periods but has not received therapeutic treatment to address his self-harming behavior.  She will also testify regarding his allegation that he was able to access dangerous objects while on suicide watch.  She will testify that she was a treating Psychologist at Eyman during the periods in 2006, 2007, and 2008 that Plaintiff Brislan was housed there and provided treatment to him as documented in his medical records

41

produced at ADC008296-ADC008537; ADC073455-ADC073798; ADC107525-ADC107602; ADC122075-ADC122218;ADC123225-ADC123251; ADC197411-ADC197416; ADC222042-222044; and ADC232208-10.  Dr. Taylor will testify that her treatment of Brislan during those time periods, to a reasonable degree of psychological probability, met the applicable standard of care.  She will also testify that she has reviewed his medical record in her current role as a monitor for responses to the grievances he filed.

Dr. Taylor will testify regarding her review of Plaintiff Thomas's records relating to his allegations that while he did not have suicidal ideation when he arrived at SMU, his mental condition has deteriorated and he has become suicidal and committed multiple acts of self-harm.  She will also testify regarding Plaintiff Thomas's allegations that he has

received minimal mental health care. She will testify that she was a treating Psychologist at Eyman from 2006 to 2010 and provided treatment to Plaintiff Thomas. She will also testify that she reviewed his medical records after he filed a lawsuit in December 2007 against her that was deemed unfounded and was dismissed. See Cano v. Taylor, et al., 739 F.3d 1214 (2014). Additionally, Dr. Taylor will testify regarding her treatment of Thomas during 2008, 2009, and 2012. Dr. Taylor will testify consistent with the content of the treatment records she authored and/or reviewed during the course of her treatment of Plaintiff Thomas. See ADC007440-ADC008295; ADC070949-ADC071360; ADC122921-ADC122973; ADC197492-ADC197500; ADC198474-ADC198491; ADC222134-222136; ADC229746-ADC229801; and, ADC232244-232251.

Specifically, Dr. Taylor will testify regarding the following:

Dr. Taylor first treated Plaintiff Thomas on April 11, 2008 during a thirty minute mental health watch. ADC008242. On April 14, 2008, Dr. Taylor treated Plaintiff while he was on suicide watch. ADC008245. He advised that he was feeling good and was ready to return to his housing unit. Id. Dr. Taylor recommended he be returned. Id. The following day, on April 15, 2008, Dr. Taylor saw Thomas again during a thirty minute mental health watch. ADC008237.

Dr. Taylor next saw Thomas on May 5, 2008 and May 8, 2008 during a thirty minute mental health watch. ADC008207, ADC008205. Additionally, Dr. Taylor treated Thomas on May 7, 2008. ADC008216, ADC008206, ADC008203, and ADC008200.

Dr. Taylor also treated Thomas in June 2008. Specifically, she treated him on June 9, 2008. ADC008197. During this encounter, Thomas advised that he was doing okay and that he was staying out of trouble and

off watch.  She treated him again on June 16, 2008.  ADC008196.  During this encounter, he advised that he was "doing good."  Id.

Dr. Taylor treated Thomas again in July 2008.  She saw him on July 3, 2008 where he advised he was not going to hurt himself.  ADC008195.  She saw Thomas again on July 10, 2008.  ADC008193.

Dr. Taylor continued to treat Thomas in August of 2008.  She saw him on August 4, 2008 and he advised that he was "doing well now."  ADC008191.  She treated him again on August 14, 2008.  ADC008190.

Dr. Taylor treated Thomas in September 2008.  Specifically, she saw him on September 3, 2008 and he advised he was ready to come off of watch. ADC008188.  Dr. Taylor took Thomas off watch at this time.  Id.

Dr. Taylor continued to treat Thomas in October 2008.  ADC008186, ADC008183.  During this visit he advised that he was "angry because of the noise" and that he was ready for

thirty minute watches.  Id.  Dr. Taylor approved this request.  ADC008178.

Dr. Taylor treated Thomas again on September 16, 2009.  ADC008147.  Thomas advised that he "just doesn't like the pod" he is in.  Id.  He stated he is ready for thirty minute watches.  Id.   Dr. Taylor recommended  a regular follow-up as a result of this visit and advised he is ready for thirty minute watches.  Id.   Dr. Taylor saw Thomas the following day, September 17, 2009, during a cell front interview.  ADC008146.  During this visit, Thomas advising that he was doing well and is ready for thirty minute watches.  Id.  Dr. Taylor scheduled a regular follow-up as a result of this visit.  Id.   Dr. Taylor also placed Thomas on suicide watch on September 17, 2009.  ADC008142.  Dr. Taylor next saw Thomas on December 13, 2009 during a cell front interview.  ADC008132.  During this encounter, Thomas indicated he did not want to go on suicide watch.  Id.  Dr. Taylor recommended a regular

follow-up as a result of this visit.  Id.
Dr. Taylor treated Thomas again on
December 20, 2009 while he was
housed at Eyman SMU II.
ADC008125.  He indicated that the
problems he was having occurred at
SMU I.  Id.  She recommended a
regular follow up as a result of this
visit. Id.

Dr. Taylor treated Thomas again on
January 3, 2010.  ADC008114.  Dr.
Taylor next saw Thomas on January
17, 2010 during a cell front interview.
ADC008094.  Thomas refused to
interact with her.  Id.  Dr. Taylor
again saw Thomas on January 24,
2010 at a cell front visit.
ADC008089.  He refused to speak to
her indicating, "I don't want to see
you devil woman."  Id.  She
recommended a regular follow up as a
result of this visit.  Id.

Dr. Taylor will also testify that on
March 7, 2010, she attempted to
conduct a cell visit with Thomas, but
he was sleeping and would not get up
to speak to her. ADC008053.  Dr.

Taylor conducted a cell front visit again with Thomas on March 14, 2010.  ADC008071.  He initially refused to speak with her and then attempted to engage in inappropriate conversation stating, "kill yourself" and "If I could get my hands on you, I would burn your face off."  Id.  She recommended a regular follow up as a result of both March encounters.  Id.

Dr. Taylor treated Thomas again in 2012.  On October 29, 2012, Dr. Taylor saw Thomas on a thirty minute mental health watch.  ADC071106.  During that encounter, Thomas advised that he would not participate in any programs at SMU I and that he wanted to stay on watch.  Id.  Dr. Taylor saw Thomas again on October 30, 2012 where he indicated he was still suicidal.  ADC071105, ADC071186.  Dr. Taylor then placed him on ten minute checks.  Id.

Dr. Taylor will testify to a reasonable degree of psychological probability that her treatment of Plaintiff Thomas met the standard of care.

Dr. Taylor will testify regarding her review of Plaintiff Smith's records relating to his allegations that his depression has been aggravated by interruptions in his mental health treatment and prolonged incarceration in SMU and that he was not seen by mental health despite reporting mental health problems.

Dr. Taylor will testify regarding her review of Plaintiff Gamez's records relating to his claim that he was not provided adequate mental health services to address his deteriorating mental health. Dr. Taylor will testify regarding her review of Plaintiff Chisholm's records relating to her allegations that her mental health has been adversely impacted by custodial harassment.

Additionally, Dr. Taylor will testify regarding her treatment of Gamez. She will testify that she was a treating Psychologist at Florence during the period of 2010 to 2012 that Plaintiff Gamez was housed there and provided treatment to him. She will

also testify that she has reviewed his chart in her current role as a monitor for responses to a grievance he filed. Dr. Taylor will testify consistent with the content of the treatment records she authored and/or reviewed during the course of her treatment of Plaintiff Gamez.    See    ADC000287-ADC001254;    ADC071394-ADC071573;    ADC122219-ADC122289;    ADC197425-ADC197434;    ADC197527-ADC198101;    ADC222050-222055; ADC222152-222241;    and ADC232221-24.

Dr. Taylor first treated Gamez on July 1, 2010, for a 30-minute one-on-one mental-health    follow-up. ADC001028.    Gamez told to her: "I'm doing alright. I sleep ok, and eating is ok.  I don't want meds.  I don't want to be a zombie.  I wish I could get counseling for my anger issues, also my disillusions [sic] like hearing and seeing things.  I want to learn to block the voices." Id.  Dr. Taylor    objectively    observed    that

Gamez appeared alert and oriented," his mood appeared euthymic; and his affect was normal.  Id.  Gamez denied any suicidal or homicidal ideations, but reported vague auditory and/or visual hallucinations.  Id.  Dr. Taylor diagnosed Gamez with a psychotic disorder, but assessed no observable symptoms.  Id.  Dr. Taylor planned to continue monitoring and charting his condition.  Id.

Dr. Taylor provided follow-up care to Gamez on August 26, 2010, during another 30-minute one-on-one session.  Id.  Gamez told her that he believed he has schizophrenia, stating: "I am very paranoid.  Id.  He reported losing 40 lbs since 2003 and feeling underweight.  Id.  He told her about trying to get prisoners out of "lock down," because he believed it makes people worse and is inhumane.  Id.  He also told her, "My mind deteriorates, and I can't concentrate.  I want to get to a yard.  I don't want meds."  Id.  Dr. Taylor again observed that Gamez again appeared alert and

oriented, his mood appeared euthymic, and his affect was normal. Id.  Gamez denied having any suicidal or homicidal ideation, and auditory or visual hallucinations.  Id.  Dr. Taylor diagnosed a psychotic disorder but assessed no observable symptoms.  Id. Dr. Taylor planned to continue monitoring and charting his condition. Id.

During both her July 1, 2010 and August 26, 2010 encounter with Gamez, he informed Dr. Taylor that he did not want any medication.  Dr. Taylor will testify she did not refer Gamez to psychiatry for this reason. She will testify that this decision was the result of Gamez's own wishes and was within the standard of care.

On September 7, 2010, Gamez submitted a health needs request, which in addition to other complaints, stated that he was having panic attacks, depression, anxiety, and paranoia. ADC0000794.  In response, Dr. Taylor treated Gamez on September 9, 2010, during another

30-minute one-on-one session. ADC001027. Gamez told her that he believed he has schizophrenia, stating, "I am very paranoid." Id. He also told her "My mind deteriorates, and I can't concentrate. I want to get to a yard. I don't want meds." Id. Dr. Taylor observed that Gamez again appeared alert and oriented, his mood euthymic, and his affect was normal. Id. Gamez denied having any suicidal or homicidal ideation, and any auditory or visual hallucinations. Id. Dr. Taylor again diagnosed a psychotic disorder but assessed no observable symptoms. ADC001028. Dr. Taylor will testify that on September 9, 2010, Gamez first indicated to Dr. Taylor that he would be open to taking medications. It was at this time that Dr. Taylor referred Gamez to psychiatry. Id. In addition to his psychiatric referral, Dr. Taylor planned to continue monitoring and charting his condition. Id.

Dr. Taylor will testify to a reasonable degree of psychological probability

that her treatment of Plaintiff Gamez met the standard of care.

Psych Assistant, Beverly Yoches, treated Gamez on October 7, 2011, during a cell-front session. ADC001240. Although Gamez subjectively reported that his mood was "anxious," the psych assistant noted that he was alert and attentive, his concentration was good, his affect normal, and his thought was logical. Id. She noted that he was not threatening or banging, and that he denied he was a danger to others or self. Id. Because Gamez told her he was "tired of waiting to see the doctor," she planned to follow up to ensure that his placement on the psych line, and continue monitoring him pursuant to policy. Id. After the Psych assistant treated Gamez, her notes were reviewed and approved by Dr. Taylor in the course and scope of Taylor's job duties. Indeed, Dr. Taylor reviewed all notes by Dr. Yoches during this time. Dr. Taylor will testify that during the month of

54

October 2011, Gamez was seen by psychiatry. ADC198017-020.

Psych Assistant, Beverly Yoches, followed up with Gamez on November 4, 2011 during a cell-front session. ADC001236. The psych associate reported that his mood was euthymic, and again noted that he was alert and attentive, his concentration was good, his affect normal, his thought was logical, and he denied having any suicidal or homicidal ideation. Id. They further noted that he was not threatening or banging, and assessed that he denied he was a danger to others or self. Id. Gamez told them, "I'm alright . . . up and down." Id. The psych associate recommended to Gamez that he submit a HNR if he needs psych services in the future, and planned to continue monitoring his condition pursuant to policy. Id. After the Psych assistant treated Gamez, her notes were reviewed and approved by Dr. Taylor in the course and scope of Taylor's job duties. Indeed, Dr.

Taylor reviewed all notes by Dr. Yoches during this time. Dr. Taylor will testify that during the month of November 2011, Gamez was seen by a psychiatrist. ADC198013-014.

Dr. Taylor will testify to a reasonable degree of psychological probability that the aforementioned treatment provided to Plaintiff Gamez met the standard of care.

Dr. Taylor will testify regarding Plaintiff Polson's records relating to his allegation that his mental health symptoms are caused or worsened by not receiving adequate mental health care and that his suicidal ideation has increased as a result of his housing.

Dr. Taylor will testify regarding her review of Plaintiff Rodriguez's records relating to her allegation that her mental health care primarily involves medication and not therapy.

Dr. Taylor will testify regarding her review of Plaintiff Verduzco's records relating to her allegation that she does not receive regular therapy.

Dr. Taylor will testify that during a

random pull of inmate records in preparation of completing the September 2013 MGAR, Plaintiff Verduzco's chart was one of the random records selected. ADC154196-200.   She will testify that Jessica Raak, the mental health auditor, reviewed Verduzco's chart and that Dr. Taylor reviewed the results of Ms. Raak's audit.   Dr. Taylor's review of the audit revealed that her treatment was compliant with five of the six compliance measures. Specifically, Verduzco's HNRs had been triaged within 24 hours of receipt; any referrals she had to a psychiatrist or psychiatric mid-level provider resulted in her being seen within seven days of the referral; any mental health treatment plans had been updated within the last ninety days; and she was being seen by mental health staff according to policy.   Verduzco does not have a release plan so the discharge compliance measure did not apply to her.  As such, Dr. Taylor will testify

to a reasonable degree of psychological probability that the care being provided to Plaintiff Verduzco in September 2013 fell within the standard of care.

Dr. Taylor will also testify that during a random pull of inmate records in preparation of completing the September 2013 MGAR, Plaintiff Polson's chart was one of the random records selected.   ADC154074-78. She will testify that her review of Polson's record revealed that his treatment was compliant with five of the six compliance measures. Specifically, his HNR's had been triaged within 24 hours of receipt; any referrals he had to a psychiatrist or psychiatric mid-level provider resulted in him being seen within seven days of the referral, any mental health treatment plans had been updated within the last ninety days; and he was seen by mental health staff according to policy.  Polson does not have a release plan so the discharge compliance measure did not apply to

| | | | | | |
|---|---|---|---|---|---|
| | | him.  As such, Dr. Taylor will testify to a reasonable degree of psychological probability that the care being provided to Plaintiff Polson in September 2013 fell within the standard of care. Dr. Taylor reviewed the expert reports of Dr. Pablo Stewart, Craig Haney and Eldon Vail.  She will testify regarding the mental health status, care and access to mental health care to the inmate population as referenced by Plaintiffs' experts, including any members of the population referenced through supplementation by Plaintiffs' experts and up until trial. Dr. Taylor will testify concerning the treatment of the named plaintiffs up to the time of trial. Dr. Taylor will further testify consistent with her deposition testimony.  Dr. Taylor will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). | | | |
| | Ron Credio **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West | Ron Credio is the Warden at ASPC-Eyman. He has been employed with the ADC for over 18 years, starting as a Correctional Officer at ASPC- | 4 | 1 | |

| Ray Road, Suite 300 Chandler, AZ 85226 | Eyman/Rynning Unit. He was promoted to the position of Sergeant at ASPC-Florence/Central Unit, Lieutenant at ASPC-Eyman/Meadows Unit, Captain at ASPC-Florence/Picacho and North Unit, Associate Deputy Warden at ASPC-Florence/South Unit, Deputy Warden as ASPC-Phoenix/Globe and Alhambra, and Deputy Warden of Operations at ASPC-Florence. Warden Credio has a Bachelor of Science in Public Safety Administration, Associates Degree in Corrections, and Associates Degree in Management. He is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Eyman, its cell blocks, the inmates housed at ASPC-Eyman, recreation and therapy and behavioral programming at ASPC-Eyman, access to healthcare and the delivery of healthcare to inmates. Warden Credio is | | | |

additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements;, lighting issues, conditions of confinement and management of

| | | | | |
|---|---|---|---|---|
| | | SMU units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Credio will also provide foundational testimony for institutional records. | | | |
| | Gerald Thompson **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | Deputy Warden Gerald Thompson is currently the Deputy Warden of Operations at ASPC-Lewis, and formerly the Deputy Warden of ASPC-Eyman, SMI I. He is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding both ASPC-Lewis and ASPC-Eyman, their cell blocks, the inmates housed at SMU-I, and recreation, therapy and behavioral programming at SMU-I, and access to healthcare and delivery of healthcare to the inmates at both the Eyman and Lewis Complexes.  Deputy Warden Thompson is additionally likely to have discoverable information with regard to Plaintiffs' institutional | 2 | 1 | |

history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements;, lighting issues, conditions of confinement and management of SMU units; inmates' access to programming, visitation, and

| | | | | |
|---|---|---|---|---|
| | | recreation time; and educational programming available to inmates. Deputy Warden Thompson will also provide foundational testimony for institutional records. | | | |
| | Vahnita Munoz **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | Assistant Deputy Warden Vahnita Munoz is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Eyman, its cell blocks, the inmates housed at ASPC-Eyman, recreation and therapy and behavioral programming at ASPC-Eyman, and access to healthcare and delivery of healthcare to the inmates. Assistant Deputy Warden Munoz is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies | 2 | 1 | |

| | | | | |
|---|---|---|---|---|
| | regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements;, lighting issues, conditions of confinement and management of SMU units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Assistant Deputy Warden Munoz will also provide foundational testimony for institutional records. | | | |
| Stephen Morris | Deputy Warden Stephen Morris is | 2 | 1 | |

| | | |
|---|---|---|
| **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | currently assigned to the Central Unit at ASPC-Florence, and was previously assigned to the Browning Unit as ASPC-Eyman. He is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding both ASPC-Eyman and ASPC-Florence, their cell blocks, the inmates housed in the Browning and Central Units, recreation at the Browning and Central Units, therapy and behavioral programming at the Browning and Central Units, and access to healthcare and delivery of healthcare to the inmates. Deputy Warden Morris is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang | |

66

| | | | | | |
|---|---|---|---|---|---|
| | | affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; food service, including nutrition requirements;, lighting issues, alleged sanitation and extermination issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Deputy Warden Munoz will also provide foundational testimony for institutional records. | | | |
| | Greg Fizer (fact) c/o Struck Wieneke & | Greg Fizer  is the Warden at ASPC-Florence.   He is responsible for the | 4 | 1 | |

| | | |
|---|---|---|
| Love, P.L.C. 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | oversight of a multi-custody facility of approximately 4,270 inmates and approximately 1,055 full time staff. Prior to his promotion, Warden Fizer was the Deputy Warden assigned to the Florence-Central Unit where he oversaw and was instrumental in the formation of the CB-2, Kasson-Mental Health, and CB-1 Mental Health Programs. Warden Fizer is likely to testify regarding his knowledge of ADC's historical and contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Florence, its cell blocks, the inmates housed in each cell block, recreation for all security levels, therapy and behavioral programming for all security levels, and access to healthcare and delivery of healthcare to the inmates. Warden Fizer is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and | |

conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues and extermination issues at their respective facilities; food service, including nutrition requirements;, lighting issues, conditions of confinement and management of SMU units; inmates' access to programming, visitation, and recreation time; and educational

| | | | | |
|---|---|---|---|---|
| | | programming available to inmates. Deputy Warden Fizer will also provide foundational testimony for institutional records. | | | |
| | Frederick Burch **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | Deputy Warden Frederick Burch is assigned to the Central Unit at ASPC-Florence, and is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Florence, its cell blocks, the inmates housed in each cellblock at the Central Unit, including the Kasson Unit, recreation at each cellblock of the Central Unit, including the Kasson Unit, therapy and behavioral programming at each cellblock of the Central Unit, including the Kasson Unit, and access to healthcare and delivery of healthcare to the inmates. Deputy Warden Burch is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and | 2 | 1 | |

conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Deputy Warden Burch will also provide foundational testimony for

| | | | | |
|---|---|---|---|---|
| | institutional records. | | | |
| Chris Moody **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | Warden Chris Moody is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Lewis, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Moody is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at | 4 | 1 | |

| | | | | | |
|---|---|---|---|---|---|
| | | ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements;, lighting issues; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Moody will also provide foundational testimony for institutional records. | | | |
| | Alfred Ramos **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | Warden Alfred Ramos is the Warden at ASPC-Douglas and Former Warden at ASPC-Phoenix. He began his career in corrections as a group worker at the Yakima County Juvenile Hall in Yakima, Washington. He ultimately served as a | 2 | 1 | |

73

Superintendent in the Washington Correctional system until his retirement in 2003. In March 2004, Warden Ramos was hired by the ADC and assigned as an Associate Deputy Warden at ASPC-Lewis. He was promoted in 2011 as Warden at ASPC-Phoenix. He is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Phoenix and ASPC-Douglas, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Ramos is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and

| | | | | |
|---|---|---|---|---|
| | policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements;, lighting issues; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Ramos will also provide foundational testimony for institutional records | | | |
| Berry Larson | Warden Berry Larson is the Warden | 2 | 1 | |

| | | | | |
|---|---|---|---|---|
| **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | at ASPC-Winslow. Warden Larson manages three correctional facilities with a population of 1,943 inmates and 514 staff, 1 close/medium custody unit, 2 minimum custody units, and 50 contract jail beds. She has been in the corrections field for 24 years, holding the positions of Correctional Officer I, Correctional Programs Officer I and II, Correctional Programs Supervisor, Associate Deputy Warden, and Deputy Warden. She was the Deputy Warden of Programs at the Hutchinson Correctional Facility for the Kansas Department of Corrections for 3 years. In the field of corrections, Warden Larson has worked with male and female inmates, and juvenile offenders. Additionally, she worked in correctional and probationary boot camps for adults and juveniles. She is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC- | | | |

76

Winslow, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Larson is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout

| | | | | | |
|---|---|---|---|---|---|
| | | of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements;, lighting issues; conditions of confinement and inmate management; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Larson will also provide foundational testimony for institutional records. | | | |
| | Judy Frigo **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | Warden Judy Frigo is the Warden at ASPC-Perryville. Please see Exhibit Bates Numbered ADC123426-123428 for her credentials and experience. Warden Frigo is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Perryville, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of | 4 | 1 | |

healthcare to the inmates. Warden Frigo is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements;, lighting issues; conditions of

| | | | | | |
|---|---|---|---|---|---|
| | | confinement and management of maximum units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Frigo will also provide foundational testimony for institutional records. | | | |
| | James O'Neil **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | Warden James O'Neil is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding both ASPC-Phoenix and ASPC-Perryville, their housing units, the inmates housed at ASPC-Phoenix and ASPC-Perryville, and recreation, therapy and behavioral programming at both ASPC-Phoenix and ASPC-Perryville. Warden O'Neil is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, | 2 | 1 | |

| | | | | | |
|---|---|---|---|---|---|
| | | and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. | | | |
| | Lyle Broadhead **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West | Warden Lyle Broadhead is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general | 2 | 1 | |

| | | | | |
|---|---|---|---|---|
| Ray Road, Suite 300 Chandler, AZ 85226 | information regarding ASPC-Safford, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to inmates. Warden Broadhead is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each | | | |

| | | | | |
|---|---|---|---|---|
| | | respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and inmate management; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Broadhead will also provide foundational testimony for institutional records. | | |
| | Therese Schroeder **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | Warden Therese Schroeder is the Warden at ASPC-Tucson. She is responsible for approximately 1,300 staff and an inmate population of approximately 5,000 inmates. Warden Schroeder began her corrections career in October 1988. Her first assignment as a Correctional Officer was at the Echo Unit at ASPC-Tucson. In 1996 she was promoted to Correctional Officer III, promoted to Correctional Officer IV in 1998, and promoted to Associate Deputy Warden at Tucson/Rincon in 2001. Warden Schroeder was also the Deputy Warden of the Cimarron Unit | 4 | 1 |

and Deputy Warden of Operations at ASPC-Tucson. In April 2006 she was appointed as the Warden of ASPC-Safford. In 2008 she was appointed as the Warden at ASPC-Perryville. She became the Warden of ASPC-Tucson in 2011. Warden Schroeder has an Associate's Degree in Business Management and has earned ACA's Certified Corrections Executive Certificate. She is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Tucson, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Schroeder is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with

respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements;, lighting issues; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Warden Schroeder will also provide

| | | | | |
|---|---|---|---|---|
| | foundational    testimony    for institutional records. | | | |
| Laura Escapule **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | Warden Laura Escapule is the Warden at ASPC-Yuma.  She began her career with the ADC in 1996 as a Correctional Officer I at ASPC-Douglas.  In 1998 she was promoted to Correctional Officer III at ASPC-Yuma, followed by a promotion to Correctional Officer IV. In 2005 she was promoted to Deputy Warden at ASPC-Tucson, followed by a promotion to Deputy Warden of Operations in 2007 at ASPC-Yuma. Her current appointment entails supervision and management of a prison complex which employs 1,100 administrative, security and support staff, encompassing 2 minimum custody units, 2 medium custody units and 1 close custody unit.  Warden Escapule is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC- | 4 | 1 | |

Florence, its cell blocks, the inmates housed in each Unit, recreation at each Unit, therapy and behavioral programming at each Unit, and access to healthcare and delivery of healthcare to the inmates. Warden Escapule is additionally likely to have discoverable information with regard to ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and inmate management; inmates' access to programming, visitation, and recreation time; and

| | | | | | |
|---|---|---|---|---|---|
| | | educational programming available to inmates. Moreover, Warden Escapule will testify regarding the work incentive pay plan ("WIPP") at Yuma which allows inmates to utilize experience, training, and expertise in meaningful employment while support their needs. Warden Escapule will also provide foundational testimony for institutional records. | | | |
| | Carolyn Mackey **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Carolyn Mackey Is the current Facility Health Administrator for ASPC-Florence, and is likely to testify regarding her knowledge of ADC's and Corizons's policies and procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Florence including delivery of medications and delivery of mental health care and dental care, and the overall delivery of healthcare to the inmates. | 4 | 1 | |
| | Ann Mullen **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, | Ann Mullen is the Facility Health Administrator for ASPC-Safford, and is likely to testify regarding her knowledge of ADC's and Corizon's | 2 | 1 | |

88

| | | | | |
|---|---|---|---|---|
| Tempe, AZ 85284 | policies and procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Safford including delivery of medications and delivery of mental health care and dental care, and the overall delivery of healthcare to the inmates. | | | |
| Masood Sirjani **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Masood Sirjani is the Dental Director for ASPC-Phoenix and will testify regarding his knowledge of ADC's, Corizon's and Smallwood Prison Dental Services'policies and procedures for delivery of dental care to ADC's inmate population, the dental intake process for all male ADC inmates at ASPC-Phoenix, triage of dental HNRs, wait times for routine and urgent dental care at ASPC-Phoenix, and the review and resolution of grievances related to dental care, and the overall delivery of healthcare to the inmates. | 3 | 1 | |
| Deborah Kinder **(fact)** c/o Corizon Health 950 W. Elliot Road, | Deborah Kinder is the Facility Health Administrator for ASPC-Douglas, and is likely to testify regarding her knowledge of ADC's policies and | 3 | 1 | |

| | | | | |
|---|---|---|---|---|
| Suite 220, Tempe, AZ 85284 | procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Douglas including delivery of medications and delivery of mental health care and dental care, and the overall delivery of healthcare to the inmates. | | | |
| Troy Evans **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300 Chandler, AZ 85226 | Troy Evans is the current Contract Monitor at ASPC-Douglas. Mr. Evans will testify regarding his monitoring of policies, practices, and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care only as required for monitoring and reporting in the MGAR; his activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; and his knowledge of Corizon's performance | 1 | | |

90

| | | | | |
|---|---|---|---|---|
| | under the Contract with ADC. | | | |
| Matthew Musson **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Matthew Musson is the Facility Health Administrator for ASPC-Eyman, and is likely to testify regarding his knowledge of ADC's and Corizon's policies and procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Eyman including delivery of medications and delivery of mental health care and dental care. Matthew Musson was previously the Contractor Monitor at ASPC-Eyman for ADC. Please see Exhibit Bates Numbered ADC123447-123448 for his credentials and qualifications. Mr. Musson will testify regarding his monitoring of policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; his activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and | 3 | 1 | |

91

| | | | | | |
|---|---|---|---|---|---|
| | | monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; his knowledge of Corizon's performance under the Contract with ADC, and information contained within the MGAR Reports. | | | |
| | Albert Fredenthal **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Albert Fredenthal is the Facility Health Administrator for ASPC-Phoenix, and is likely to testify regarding his knowledge of ADC's and Corizon's policies and procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Phoenix including delivery of medications and delivery of mental health care and dental care, and the overall delivery of healthcare to the inmates. | 2 | 1 | |
| | Tamara Porter **(fact)** c/o Corizon Health 950 W. Elliot Road, | Tamara Porter is the Facility Health Administrator for ASPC-Tucson, and is likely to testify regarding her knowledge of ADC's and Corizon's | 3 | 1 | |

92

| | | | | |
|---|---|---|---|---|
| Suite 220, Tempe, AZ 85284 | policies and procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Tucson including delivery of medications and delivery of mental health care and dental care, and the overall delivery of healthcare to the inmates. | | | |
| Elsie Stowell **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Elsie Stowell is the Facility Health Administrator for ASPC-Winslow, and is likely to testify regarding her knowledge of ADC's and Corizon's policies and procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Winslow including delivery of medications and delivery of mental health care and dental care, and the overall delivery of healthcare to the inmates. | 2 | 1 | |
| Sheldon Epstein **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | 1 | 1 | |

93

| | | | |
|---|---|---|---|
| Angelo Daniels **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Angelo Daniels is currently the Deputy Warden at the Red Rock Correctional Center and formerly the Deputy Warden of Security Operations at ADC. He is likely to testify regarding his knowledge of ADC's policies and procedures for oversight of inmate meal preparation and delivery, including accommodation of the religious standards in place for the various faiths to which inmates in ADC custody belong, and provisions of adequate nutritional needs for special diets. DW Daniels will also testify regarding his oversight of the Food Services Contract and collaborative relationship with Trinity Services Group in ensuring that adequate nutritional value is provided to inmates through all diets, including the mega sack meals provided to inmates in maximum custody. DW Daniels will testify regarding his oversight of the meals provided to ensure nutritional adequacy, caloric intake and appropriate rotation of | 2 | 1 |

94

| | | | | | |
|---|---|---|---|---|---|
| | | food product in the meals. DW Daniels will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). | | | |
| | Mark Jansen **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Mark Jansen is the Vice President of Operations for Corizon Health. Please see Exhibit Bates Numbered ADC203360-ADC203362 for his credentials and qualifications. He is likely to testify regarding his knowledge of the contract between Optimal Phone Interpreters ("OPI") and Corizon to provide language translation services to ADC for assistance in providing health care to Limited English speaking inmates; the availability and usage of that service; and the HIPAA compliance related to that service. He is also expected to testify regarding Corizon's obligations under the Contract with ADC, Corizon's staffing, recruiting, policies, and the provision of medical, mental health and dental health care to ADC's inmate population. He is expected to testify regarding how Corizon determined the staffing levels | 6 | 3 | |

95

| | | | | |
|---|---|---|---|---|
| | | needed for the ADC contract, changes Corizon has made to staffing during the contract, and a comparison of Corizon's staffing levels in Arizona versus staffing levels in other states. He is expected to testify concerning Corizon's compliance with NCCHC standards regarding staffing and provision of medical care to the inmate population. He is also expected to testify regarding the content and review of Corizon monthly and quarterly reports. Mr. Jensen was deposed on August 11, 2014 and will testify consistent with his deposition testimony. Mr. Jansen will also testify concerning MGAR reports, monitoring of the contract by ADC, and how the monitoring in Arizona compares to monitoring at other Corizon locations across the country. | | | |
| | Mark Fleming (**fact**) c/o Corizon Health 950 W. Elliot Road, Suite 220, | Dr. Fleming is the the Mental Health Director and Regional Vice President for Behavioral Health for Corizon Health. Please see Exhibit Bates Numbered ADC203363-ADC203364 | 6 | 1 | |

| | | | | |
|---|---|---|---|---|
| Tempe, AZ 85284 | for his credentials and qualifications. As part of his employment, Dr. Fleming attends weekly, monthly, and quarterly quality assurance meetings. He conducts quarterly leadership meetings for the lead psychologists at the ADC complexes during which he provides training on subjects such as the DSM V and ethical issues in charting.  He also holds weekly individual mentoring sessions with the lead psychologists.  He is responsible for performing annual peer reviews of the lead psychologists.  Dr. Fleming supervises three licensed associate counselors who are working towards independent licensure.  He provides training to mental health staff on conducting group programming and then observes their delivery of the programming.

Dr. Fleming conducts site visits of all ADC complexes, during which he meets with the lead psychologists and other mental health staff, reviews inmate charts, and tours the units. | | | |

97

During his site visits, Dr. Fleming conducts random chart audits and also reviews charts identified by the ADC contract monitors.

Dr. Fleming provides clinical treatment to ADC inmates statewide on an as-needed basis and has provided treatment to inmates at Eyman and Winslow.

Dr. Fleming reviews the results of the MGARs completed by the ADC contract monitors, as well as additional information provided by the ADC mental health monitors. In addition, Dr. Fleming reviews monthly chart audits conducted by the lead psychologists. Dr. Fleming also reviews data and logs for compliance with ADC policy and the contract and to include in Corizon's monthly report to ADC.

Dr. Fleming will testify based on his education, training, qualifications, and experience, as well as his review and knowledge of inmate records, reports, and data during the course of his employment. Dr. Fleming is expected

to testify regarding the mental health care offered to ADC's inmate population.   Dr. Fleming is also expected to testify regarding quality assurance reviews and activities, contract compliance and monitoring, training and reviews of mental health staff, and statistical data relating to the provision of mental health care to ADC inmates.   He is expected to testify regarding Corizon's obligations and performance under the Contract with ADC, Corizon's staffing, recruiting, policies related to the provision of mental health programming to ADC's inmate population and changes to these areas up until the time of trial.   He is expected to testify regarding the systemic delivery of mental health programming, individualized treatment, Corizon's systems in place for the delivery mental health care, as well as any changes to that delivery and treatment that may occur up until trial.   He will also testify regarding the operational oversight and clinical

| | | | | |
|---|---|---|---|---|
| | leadership and support to Corizon staff, ADC and inmates. He is expected to testify regarding the mental health treatment programming offered to inmates throughout the ADC inmate population and any changes to programming that may occur up until the time of trial. Dr. Fleming will also testify regarding the individualized mental health treatment regarding named Plaintiffs Swartz, Brislan, Thomas, Smith, Gamez, Chisholm, Polson, Verduzco and Rodriguez.<br><br>Based upon his professional training, experience, and review of the chart volumes for the thirteen named Plaintiffs, Dr. Fleming will be called to testify regarding his clinical opinion, that since March 4, 2013, each of the litigants who were seen by a mental health provider, as documented in the chart, received care that is line with clinical best practice approaches. Dr. Fleming is of the opinion that clinicians used approaches that addressed | | | |

| | | documented diagnostic concerns. Specifically, mental health clinicians utilized a standard SOAP note in their documentation that included a mental status exam as well as a clear plan for follow up, there was consistently regular follow up for those on a suicide or mental health watch, psychiatric staff utilized AIMS (Abnormal Involuntary Movement Scale), clinical staff used individual and group therapy modalities in the treatment process, and clinical coordination with medical and psychiatric staff appeared evident. Dr. Fleming will testify regarding pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). | | | |
| Thomas Buenker **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Dr. Buenker is the Regional Psychiatric Director for Corizon Health. Please see Exhibit Bates Numbered ADC203365-ADC203367 for his credentials and qualifications. Dr. Buenker previously worked half-time as the Director of Psychiatry at ASPC-Phoenix. In his current position, Dr. Buenker provides | 6 | 1 | |

101

clinical treatment to ADC inmates on an as-needed basis.  Dr. Buenker has treated inmates through telepsychiatry at Yuma and has also treated inmates on-site at Eyman.   He interviews applicants for psychiatry positions statewide and provides mentoring and training for new employees.   He conducts site visits to ADC complexes three days a week to supervise psychiatrists and psychiatric nurse practitioners and to monitor compliance with ADC policies and the contract.   Dr. Buenker is responsible for performing annual peer reviews of psychiatrists at ADC, which include record audits.   Dr. Buenker approves non-formulary drug requests for psychotropic medications and is a member of the PMRB committee.

Dr. Buenker will testify based on his education, training, qualifications, and experience, as well as his review and knowledge of inmate records, reports, and data during the course of his employment.  Dr. Buenker is expected

to testify regarding the psychiatric services provided to the inmate population and the administration of psychotropic medications and any changes to services and administration of psychotropic medications that occur up until trial. He is expected to testify Corizon's staffing, recruiting, policies and practices related to the provision of psychiatric services to ADC's inmate population and changes to these areas that occur up until trial. He is expected to testify as to the psychiatric services provided on a systemic basis as well as individualized treatment provided to inmates, including any changes to that treatment that may occur up until trial. Dr. Buenker is also expected to testify regarding quality assurance reviews and activities, contract compliance and monitoring, training and reviews of psychiatric staff, and statistical data relating to the provision of mental health care and psychotropic medications to ADC inmates.

| | | | | |
|---|---|---|---|---|
| | | Dr. Buenker will also testify regarding the individualized mental health treatment regarding named Plaintiffs Brislan, Rodriguez, Thomas, Smith, Gamez, Chisholm, Polson, Swartz, and Verduzco. Specifically, Dr Buenker will testify regarding his review of Plaintiff Brislan's records relating to his claims that he has received inadequate medication delivery and management, has not been regularly monitored by a psychiatrist, and did not receive needed inpatient mental health care. Dr. Buenker will testify regarding his review of Plaintiff Rodriguez's records relating to her claim that she has experienced inadequate medication delivery and management, inadequate monitoring, and did not receive needed inpatient mental health care. Dr. Buenker will testify regarding his review of Plaintiff Thomas's records relating to his allegations that he has experienced inadequate medication delivery and management, lack of informed | | |

consent, long delays in follow-up and psychiatric evaluation, and was not prescribed a sleep aid. Dr. Buenker will testify regarding his review of Plaintiff Smith's records relating to his allegations that he has experienced inadequate medication delivery and management, inadequate monitoring, and was prescribed medications not indicated for depression without being seen by a doctor or obtaining informed consent. Dr. Buenker will testify regarding his review of Plaintiff Gamez's records relating to his allegations that he has experienced inadequate medication delivery and management, as well as inadequate monitoring and follow-up. Dr. Buenker will also testifying regarding Plaintiff Gamez's claim that he was not seen by a psychiatrist from 2007 to 2011. Dr. Buenker will testify regarding his review of Plaintiff Chisholm's records relating to her allegations that she has experienced inadequate medication delivery and management, inadequate psychiatric

care and follow-up, and delay in being seen by psychiatry after she reported having a nervous breakdown. Dr. Buenker will testify regarding his review of Plaintiff Polson's records relating to his allegations that he has experienced inadequate medication delivery and management and sporadic monitoring of his medication levels. Dr. Buenker will testify regarding his review of Plaintiff Swartz's records relating to his allegations that he experienced inadequate medication delivery and management, inadequate monitoring, was not seen by a psychiatrist despite multiple suicide attempts, and did not receive inpatient treatment. Dr. Buenker will testify regarding his review of Plaintiff Verduzco's records relating to her allegations that she goes for months without seeing a psychiatrist despite displaying multiple symptoms of psychological distress and that she did not receive needed inpatient psychiatric care.

Based upon his professional training,

| | | | | | |
|---|---|---|---|---|---|
| | | experience and review of the chart volumes for the thirteen named Plaintiffs, Dr. Buenker will be called to testify regarding his clinical opinion that since March 4, 2013 each of the litigants seen by a mental health provider received mental health care consistent with best practices approaches. Overall, the treatment modalities implemented for the plaintiffs were appropriate for the indicated diagnoses. Documentation was in the appropriate format and the plan for follow up was appropriately noted and determined by the individual mental health providers. Mental health staff used both individual and group therapy as part of the treatment. Dr. Buenker will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). | | | |
| | Michael Dolny **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West | Dr. Dolny is an Administrative Services Officer V (Research Unit Manager) for ADC. Please see Exhibit Bates Numbered ADC229839-ADC229842 for his | 2 | 1 | |

| | | | | |
|---|---|---|---|---|
| Ray Road, Suite 300, Chandler, AZ 85226 | credentials and qualifications. Dr. Dolny reviewed the reports of Plaintiffs' expert witnesses in order to assess the sampling methodologies used by those expert witnesses. Dr. Dolny will testify that there are few statistical claims made in the expert witness reports reviewed. They contain no hypothesis tests, statistical tests for significance or inferential statistics used. Nothing in the reports indicates that the findings included are generalizable. Plaintiffs' experts sampling methodology lacks statistical rigor in that the experts fail to provide what the sampling methodology actually was or how many cases were reviewed to identify the representative cases cited as examples. There is no way to evaluate the statistical meaning of the representative cases chosen by Plaintiffs' experts. Dr. Dolny will testify that despite Plaintiff's experts' attempts at outlining their methodologies, it is unclear from the actual data in the reports what the | | | |

| | | | | | |
|---|---|---|---|---|---|
| | | methodology is.   He will further testify that the sample sizes lack precision.  Small sample sizes, even if taken at random, create estimates in the population that also lack precision and lead to large standard errors.  When sample sizes are increased, the standard error is reduced.  Dr. Dolny will also testify that the narrative findings contained in Plaintiffs' experts' reports cannot be generalized to the population.   Dr. Dolny will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). | | | |
| | Laura Donnelly Trinity Services Group **(fact)** c/o McCarter & English Gregory Cote 265 Franklin Street Boston, Massachusetts 02110 | Ms. Donnelly is a registered dietician who works for Trinity Services Group, the third-party vendor that supplies food services to ADC.  Ms. Donnelly is expected to testify regarding the nutritional adequacy and caloric requirements and provisions for those inmates in maximum custody and detention units, including but not limited to the adequacy of the mega sack meals provided to those inmates.   Ms. Donnelly will further testify about the | 1 | 1 | |

| | | | | |
|---|---|---|---|---|
| | collaborative relationship between ADC and Trinity Food Services as it relates to the planning and provision of meals to inmates in maximum custody and detention units up until the time of trial. Ms. Donnelly will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). | | | |
| William Smallwood **(fact and/or expert)** c/o Smallwood Prison Dental Services The Sack Law Firm Jeffrey M. Mervis 8270 Greensboro Drive, Suite 810 McLean, Virginia 22102 | Dr. Smallwood is the owner of Smallwood Prison Dental Services (SPDS), which subcontracts with Corizon to provide dental services at ADC. A copy of his CV, which explains his education and experience, is attached.  Dr. Smallwood has experience in providing prison dental services at several correctional facilities across the country.  He understands the challenges that treating inmates in a correctional setting presents and how the circumstances differ from a private practice setting. Dr. Smallwood will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). Dr. Smallwood reviewed the dental | 6 | 2 | |

expert report submitted by Dr. Shulman. In Dr. Smallwood's opinion, Dr. Shulman's stated method of selecting his sample, which included inmates "who had one or more scheduled appointments for issues related to pain and swelling" was biased and focused on selecting records of inmates with problems. Dr. Smallwood will testify that in his opinion and based upon the theories of statistics, Dr. Shulman should have made a random selection of records.

Dr. Smallwood will testify that SPDS uses the proprietary Correctional Dental Software (CDS) program to manage dental requests and appointments, monitor wait times, and track dental statistics at ADC. He will testify regarding the available reports and statistics, which include number of requests for dental treatment submitted, current wait times, number of procedures performed, and number of treatment refusals. Dr. Smallwood will testify regarding the current wait times and

dental statistics at the time of trial. Dr. Smallwood may also perform a live demonstration of the capabilities of the CDS program at trial.

Dr. Smallwood will testify that when SPDS took over the provision of dental care at ADC from Wexford in March 2013, there was a backlog of dental requests.  He will testify that by August 2013, nearly all of the backlog was cleared.  He will testify that as of December 2013, the longest average wait time for routine dental care statewide is 1.5 months, which is half the time required by the ADC contract.  He will also testify that as of December 2013, all dental intakes were completed within 30 days statewide.  This intake procedure is in compliance with ADC policy as stated in the DSTM at 770.1 and NCCHC standard P-E-06.

Dr. Smallwood will testify that in his opinion, relying on inmate to dentist staffing ratios would not yield the results necessary to effectively manage statewide dental operations

112

for a correctional system of nearly 36,000 inmates such as ADC. He will testify that determining the appropriate staffing at a correctional dental clinic depends on numerous factors, including (1) whether the facility houses male or female inmates; (2) the security level of the facility; (3) whether the facility serves as a reception center for inmates; (4) the proximity of facilities; and (5) cost for staff types. He will testify that the bottom line in determining staffing levels is the volume of work that needs to be completed and being able to effectively and timely manage the workload within the standard of care.

Dr. Smallwood will testify that CDS provides him an accurate and up-to-date view of the exact number of dental requests pending at any given time and wait times. Dr. Smallwood will testify that in addition to CDS, he also relies on input from the regional dental directors at ADC to determine appropriate staffing levels at ADC

complexes.  He will testify that he reviews dental staffing, HNR volumes, and wait time reports on a regular basis to review that staffing meets patient needs.  He will testify that he reallocates staffing resources as needed to see that timely service is provided at all ADC complexes.  To achieve this, he employs several dentists who split their time between multiple complexes.  He also moves dental staff on a temporary basis to other complexes if needed to manage wait times, and SPDS pays for their travel and lodging costs.  He will testify that in his opinion, this approach to staffing is the most efficient and cost-effective way to provide timely and appropriate dental care in a correctional system such as ADC.  He will also testify that in his opinion, dental staffing at ADC is sufficient to meet the needs of the ADC inmate population, as evidenced by low wait times for dental treatment at all complexes statewide.

Dr. Smallwood will testify that he

recently hired two dental hygienists, one for the Northern region and one for the Southern region. He will testify that the dental hygienists travel to the dental clinics within their respective regions based on inmate demand to provide cleanings. He will testify that wait times for routine treatment, which includes cleanings, are 1.5 months or less at all ADC complexes statewide as of December 2013. He will also testify regarding the current wait times for routine care treatment at the time of trial.

Dr. Smallwood will testify that ADC does not have an "extraction-only" policy. He will testify that the dentists he employs perform fillings on teeth that can be restored, but that some teeth are non-restorable. He will testify that in his experience, the incidence of "meth mouth" is high among inmates and that a high percentage of inmates have poor oral hygiene and have never seen a dentist. He will testify that for an inmate with "meth mouth," extraction is often the

only available treatment option.   He will also testify that whether a tooth can be restored is a matter of clinical discretion based upon a review of current x-rays and a clinical examination.

Dr. Smallwood will testify that SPDS dentists are reviewed annually using a peer review process and that he also evaluates dentists based on their productivity to ensure that inmates are provided timely and appropriate dental care.  He will testify that CDS enables him to quickly and easily evaluate the productivity of all dentists he employs.

Dr. Smallwood will testify that dental assistants at ADC have all passed an examination and possess a certification that permits them to take dental x-rays.   Dr. Smallwood will testify that dental assistants do not perform dental procedures and that a dentist is always on-site at the clinic during clinic hours.   He will testify that dental assistants are evaluated by their supervising dentists.   Dr.

Smallwood will testify that in his opinion, having dental assistants triage dental HNRs and take dental x-rays based on a standing order from their supervising dentist is appropriate and within the standard of care.

Dr. Smallwood will also testify that based on his decades of experience in providing correctional dentistry, the NCCHC is the governing industry standard for correctional dentistry. Dr. Smallwood will testify that the dental classification system outlined in ADC's Dental Services Technical Manual meets NCCHC standard P-E-06, which requires that oral treatment is provided based on a system of established priorities for care. He will also testify that ADC policies on access to care, intake screening, oral examination, dental sick call, x-rays, referral to specialists, supplies and equipment, infection control, and staffing levels are within NCCHC guidelines as outlined in P-E-06 and Appendix G of the NCCHC Standards for Health Services in Prisons. He

| | | | | | |
|---|---|---|---|---|---|
| | | will also testify that ADC policy 770.1, which requires dental intake screening within 7 days and a comprehensive oral examination within 30 days of admission complies with the requirements of NCCHC standard P-E-06.  He will also testify that ADC policy as stated in the contract, which requires that urgent care requests be treated within 72 hours mirrors NCCHC guidelines as set forth in Appendix G of the standards.<br><br>Dr. Smallwood will testify that in his opinion, the correct measure of a correctional dental system is not whether it meets an arbitrary staffing ratio but whether it provides timely and appropriate dental care to inmates.  He will testify that in his opinion, SPDS provides timely and appropriate care to ADC inmates.<br><br>All of the opinions expressed by Dr. Smallwood herein are to a reasonable degree of dental probability. | | | |
| | Ernest Trujillo **(fact)** c/o    Struck | Ernest Trujillo is the current Northern Region Operations Director of ADC, | 4 | 1 | |

| | | | | |
|---|---|---|---|---|
| Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | and previously held the same position in the Southern Region. Please see Exhibit Bates Numbered ADC123472-123477 for his credentials and experience. Mr. Trujillo is likely to testify with regard to the delivery of medical, dental and mental health care to the inmates; his activities in ensuring compliance with all Department Orders, Procedural Manuals, Post Orders, and Standard of Operations as they apply to security and operational practices, staff safety, the welfare of the inmate population; his supervision of ADC facilities, including policy and program development and implementation statewide with regard to security operations, inmate programming, and standardization of staffing; ensuring the implementation of the Department's Strategic Plan and other agency initiatives, and standardization of processes and procedures in all facilities. Mr. Trujillo will also testify regarding the changes implemented for | | | |

maximum custody inmates, specifically inmates who are in maximum custody and designated as Seriously Mentally Ill.   He will also testify regarding the positive outcomes related to these changes once the changes have been made.

Mr. Trujillo has reviewed the reports of Plaintiffs' experts Eldon Vail and Craig Haney.  Mr. Trujillo will testify regarding the conditions of confinement as alleged by both Mr. Vail and Mr. Haney and as to the conditions of confinement for those inmates in maximum custody or detention units that may change up until the time of trial.   Mr. Trujillo will testify regarding the classification system for mentally ill inmates placed in maximum custody and detention units, specifically but not limited to the fact that ADC's classification system has been reviewed and validated by Dr. James Austin of the American Correctional Association and the National Institute of Corrections.  Further, every inmate

receives an annual classification review, which is an interactive process including the inmate. Mr. Trujillo will also testify regarding the ability of inmates, with the exception of those inmates on Death Row, to earn their way out of maximum custody or detention units and the criteria for such movement. Mr. Trujillo will testify that there are various groups of mental health inmates in maximum custody or detention units, which each require special considerations in how ADC addresses their housing and movement. Additionally, Mr. Trujillo will testify regarding the training that all correctional staff receives and the training that staff assigned to mental health units are undergoing, including ASIST Training and other specialized training regarding inmates with mental illness. Officers are selected to work in those areas of maximum custody housing mentally-ill inmates based on their experience level and demonstrated ability to address

situations that may arise. These officers serve 5 years at these posts before rotating in order to provide consistency in these housing areas. Further, all sergeants and lieutenants will be trained in motivational interviewing as part of crisis intervention training.

Mr. Trujillo will also testify regarding the frequency with which inmates have contact with individual staff, whether it be correctional or medical staff. Mr. Trujillo will testify regarding the opportunity for recreation within the maximum custody and detention units. Further, maintenance issues throughout ADC are regularly addressed with those issues positing a security or safety concern given higher priority. Mr. Trujillo will testify as to the changes occurring at Perryville Complex – Lumley Unit that affects the programming access and conditions of confinement of mentally ill inmates in that unit. Mr. Trujillo will also testify regarding the issues related to

mentally ill inmates in maximum custody or detention units that are unique to Perryville as the only complex that houses female inmates with exception of George Ward at the Phoenix Complex.

Mr. Trujillo will further testify regarding the requirement that staff and visitors to maximum custody and detention units wear safety gear. He will testify that staff safety is a priority and that the equipment in use today is the direct result of past incidents of violent inmate behavior. Mr. Trujillo will testify regarding the health and welfare checks that are occurring through ADC for inmates in maximum custody and detention units, including the role of the roving officer whose sole job duty is to conduct such checks. He will also testify regarding the policies and procedures regarding the use of chemical agents and the circumstances for such use. He will testify regarding the emphasis ADC places on de-escalation techniques,

barring emergency situations requiring immediate response. Mr. Trujillo will also address conditions of confinement issues raised by named Plaintiffs. Particularly, Mr. Trujillo will testify regarding the allegations made by Plaintiff Verduzco relating to the length of the suicide smocks, cell lighting, being awoken by security staff for safety checks, minimal human contact, and being unable to go outside, brush her teeth, or bathe regularly. He will also testify regarding her claim that after being pepper sprayed, she is stripped naked and hosed down by security staff. Mr. Trujillo will testify regarding Plaintiff Rodriguez's allegations that while on suicide watch she is only allowed to shower twice a week, is not provided toothpaste and a toothbrush, cannot go to recreation, and is not allowed to have reading materials. Mr. Trujillo will testify regarding Plaintiff Chisholm's claims that she experienced custodial harassment.

| | | | | |
|---|---|---|---|---|
| | Mr. Trujillo will testify as to the current status of all of these areas, the allegations contained in Plaintiffs' expert reports, and changes that may be implemented up until trial.  Mr. Trujillo will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). | | | |
| Brian Hanstad **(fact and/or expert)** c/o Smallwood Prison Dental Services The Sack Law Firm Jeffrey M. Mervis 8270 Greensboro Drive, Suite 810 McLean, Virginia 22102 | Dr. Hanstad is the Northern Region Dental Director and the Dental Supervisor for ASPC-Perryville.  Please see Exhibit Bates Numbered ADC255799-ADC255800 for his credentials and qualifications.  All opinions are stated to a reasonable degree of dental probability.  Dr. Hanstad will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). Dr. Hanstad will testify regarding his knowledge of and interactions with named Plaintiffs Maryanne Chisholm and Charlotte Wells related to their dental care.  He will testify that in his opinion, the dental treatment they received was appropriate and within the standard of care.  Dr. Hanstad will | 4 | 2 | |

testify regarding his review of Plaintiff Stephen Swartz's dental records and his opinions regarding the treatment provided to Swartz relating to his allegations that he had a cracked molar for two years and was told the only option was to extract the tooth.    Dr. Hanstad will testify regarding his review of Plaintiff Polson's dental records and his opinions regarding the treatment provided to Polson relating to his allegations that he experienced long delays in receiving partial dentures and treatment for broken teeth.

Specifically, Dr. Hanstad will testify that he treated Plaintiff Chisholm from 2011 to 2013.    See Plaintiff Chisholm's medical records as produced at ADC000001-ADC000286;    ADC050723-050727; ADC071361-ADC071393; ADC084454-084700;    ADC123341-ADC123378;    ADC130340-ADC130719;    ADC197417-ADC197424;    ADC222045-222049; ADC229674-ADC229745;    and

ADC232211-20.   Dr. Hanstad will testify that he saw Chisholm on 12/30/11 for a pain evaluation, during which he diagnosed her with recurrent decay well below the gumline on tooth #18.   ADC071375.   He prescribed antibiotics and scheduled her for an extraction in two weeks. ADC071375.   Chisholm returned to the dental clinic on 1/12/12 but refused extraction of tooth #18. ADC071375.   She was counseled on the consequences of refusing treatment and signed a refusal, stating she was "afraid of jaw breakage." ADC071375, ADC000155.

Dr. Hanstad will testify that he saw Chisholm on 1/15/13 and that she reported picking at tooth #14 due to her OCD.   ADC071374-75.   A periapical x-ray showed signs of extreme tampering with a foreign object, and he observed Chisholm had sheared enamel off that tooth. ADC071375.   Chisholm reported no prior problems with tooth #14.  Id.  A temporary filling was placed, and

Chisholm was instructed not to pick at the tooth.  ADC071374.  She was seen for follow-up on 1/22/13 for placement of a permanent filling on tooth #14.  Id.  Dr. Hanstad observed inflammation in the area and a defect in the filling, consistent with her tampering with the area.  Id.  He again instructed her not to use improper objects to clean her teeth.  Id.

Dr. Hanstad will testify that his recommendation to extract tooth #18 was within the standard of care due to the level of decay observed being well below the gumline.  Dr. Hanstad will testify that there is no support for Chisholm's claim that she was told the only available treatment was to pull her teeth and that he in fact placed a filling on tooth #14.   Dr. Hanstad will testify consistent with the content of the treatment records he authored and/or reviewed during the course of his treatment of Plaintiff Chisholm.   He will testify that his treatment of Chisholm was within the standard of care.

Dr. Hanstad will testify regarding his treatment of Plaintiff Wells in 2013 and his review of records of treatment provided by other dentists at ADC during the course of his own treatment of Wells. See ADC006565-ADC007144; ADC082671-082696; ADC091490-091666; ADC071920-ADC071950; ADC122867-ADC122920; ADC134802-ADC135377; ADC197514-ADC197526; ADC198521-ADC198953; ADC222139-222151; and ADC232257-59. He will testify that he saw Wells on 2/7/13 for a cracked molar. ADC197519. He diagnosed her with a fracture of tooth #13 and placed a filling. Id. Wells submitted an HNR dated 2/28/13 stating that the filling was causing her pain. ADC197525. She was seen for a pain evaluation on 3/6/13 and refused treatment, stating "my tooth is not hurting any more." ADC197521. She submitted an HNR dated 6/9/13 requesting a filling on a cracked lower front tooth and was placed on the

129

routine care list.  ADC197524.  She submitted an HNR on 8/8/13 regarding pain in her upper tooth.  ADC197523.  She was seen for a pain evaluation on 8/9/13 and reported pain on tooth #13.  ADC197519-18.  Dr. Garcia noted that the filling on #13 was intact and explained that pain was likely due either to traumatic occlusion or necrosis of the nerve.  Id.  Wells was prescribed ibuprofen for pain and instructed to return for an extraction if her symptoms persisted.  ADC197518.  On 8/29/13, she submitted an HNR regarding pain in her upper tooth.  ADC197522.  She was seen for a pain evaluation on 8/30/13 and requested that tooth #13 be pulled.  ADC197518.  Dr. Garcia planned to extract #13, but when Dr. Garcia touched tooth #14 with the periodontal explorer, Wells jumped out of the chair and complained of pain on tooth #14.  Id.  Dr. Garcia instructed Wells to return to the clinic when she could identify which tooth was causing her pain.  Id.  On

9/11/13, Wells returned to the clinic and was seen by Dr. Hanstad. ADC197517. She pointed to tooth #13 and reported that it "hurts when I bite things." Id. Dr. Hanstad noted that past intermittent pulpitis due to a deep fill on tooth #13 had progressed to irreversible pulpitis. Id. He extracted tooth #13. Id. Dr. Hanstad will testify consistent with the content of the treatment records he authored and/or reviewed during the course of his treatment of Plaintiff Wells.

Dr. Hanstad will testify that his placement of a filling on tooth #13 was within the standard of care. He will testify that the filling was deep and that given Wells' continued complaints on pain in the tooth and the progression of decay to irreversible pulpitis, his extraction of tooth #13 was within the standard of care. He will also testify that there is no evidence in Wells' chart to support her claim that a dentist cracked an adjacent tooth while attempting to place a filling.

He may also testify regarding the dental care of other ADC inmates whom he has treated or whose dental records he has reviewed, including whether their dental care was appropriate and within the standard of care.

Dr. Hanstad will testify that upon intake, inmates are provided with dental hygiene instruction. Because of security concerns, special toothbrushes are issued. Inmates are taught how to brush their teeth and how to practice good dental hygiene in the corrections setting. Inmates are also instructed on how to access dental care through HNRs.

Dr. Hanstad will testify regarding ADC policies relating to timeliness of dental intakes, routine care, and urgent care. He will testify that per ADC policy, inmates receive dental x-rays and a comprehensive oral evaluation within 30 days of intake, unless it has been less than six months since the inmate was previously in ADC custody. Dr. Hanstad will

testify that female inmates go through the dental intake process at Perryville. He will testify that male inmates have their dental intake x-rays taken at Phoenix, but may receive their comprehensive oral examination at their receiving units. Dr. Hanstad will testify that intake wait times are less than 30 days statewide as of December 2013 and will also testify regarding current wait times at the time of trial.

Dr. Hanstad will testify that ADC does not have an "extraction-only" policy. He will testify that dentists at ADC perform fillings on teeth that can be restored, but many teeth are non-restorable and cannot be filled. He will explain hat many inmates come into the system with little or no dental care and poor dental hygiene practices. He will testify that the incidence of "meth mouth" is very high among inmates in ADC custody, particularly among the female inmates. He will testify that for an inmate with "meth mouth," extraction

is often the only viable treatment option.  He will also testify that whether a tooth can be restored is a matter of clinical discretion based upon a review of current x-rays and a clinical examination.

Dr. Hanstad will testify that inmates may refuse dental care or specific dental treatment and that refusals are to be noted on the refusal form.  He will also testify that ADC policy requires that dentists obtain informed consent from inmates for oral surgery, including extractions.  He will testify that dentists explain the risks and benefits of the procedure, as well as any available treatment alternatives, to the inmate, and the inmate signs the informed consent form if he or she decides to have the procedure performed.  Dr. Hanstad will testify that the informed consent form for oral surgery does not include fillings as an option because many times a filling is not an available treatment alternative if the dentist is recommending an extraction.

134

Dr. Hanstad will testify that in his opinion, inmate to dentist staffing ratios are not the most appropriate method for determining dental staffing needs.  He will testify that determining the appropriate staffing at a correctional dental clinic depends on factors such as HNR volume and security issues.  He will testify that Perryville receives the highest number of HNRs of any complex statewide, even though it ranks sixth statewide in terms of inmate population. He will testify that dentists at Perryville perform more dental procedures than any other dental clinic statewide.  In addition, Dr. Hanstad will testify that female inmates do not have the same no-show rate as male inmates.  As a result, Perryville's dental staffing needs are different than other complexes.  Dr. Hanstad will also testify that dentists at complexes such as Winslow, Safford, and Douglas, which have smaller, lower custody populations, can generally see more patients per day than dentists treating

higher custody populations at complexes such as Lewis and Eyman. He will testify that maximum custody inmates must be transported by correctional staff to dental appointments in restraints, which lengthens the time in between appointments.

Dr. Hanstad will testify that in his experience, ADC inmates sometimes submit dental HNRs for reasons other than to obtain dental treatment. He will testify that some inmates in maximum custody submit HNRs to get out of their cells. He will testify that at Perryville, the dental department now has a portable dental chair which can be taken to the maximum custody unit to provide dental care on-site. This enables a dentist to treat a maximum custody inmate without having to close down the entire dental clinic due to the inmate's security level. He will also testify that inmates submit dental HNRs claiming they have pain in order to be seen sooner but deny

having pain when they are called into the clinic.

Dr. Hanstad will testify that in his opinion, dental staffing at ADC is sufficient to meet the needs of the ADC inmate population, as evidenced by low wait times for dental treatment at all complexes statewide. He will testify that ADC policy requires that urgent care requests be seen within 72 hours and routine care requests within 90 days. He will testify that intake examinations must be performed within 30 days. Dr. Hanstad will testify regarding current dental wait times at the time of trial.

Dr. Hanstad will testify regarding reasons that an inmate may have an extended wait time for dental care, such as being out to court, refusing treatment, or experiencing certain health problems which require clearance from a physician prior to undergoing dental treatment.

Dr. Hanstad will testify that dental assistants at ADC have all passed an examination and possess a

certification that permits them to take dental x-rays.  He will testify that he has a standing order for his dental assistants to take x-rays to assist him in his clinical evaluation.  Dr. Hanstad will testify that dental assistants review the inmate's complaint, take a health history, and take x-rays if needed.  He will testify that dental assistants do not perform dental procedures and that a dentist is always on-site at the clinic during clinic hours.  Dr. Hanstad will testify regarding requirements for dental training and supervision under Arizona state law.  Dr. Hanstad will testify that in his opinion, having dental assistants triage dental HNRs and take dental x-rays based on a standing order from their supervising dentist is within the standard of care.

Dr. Hanstad will testify regarding the dental priority classification system in the Dental Services Technical Manual.  He will testify that dental assistants are instructed to classify HNRs mentioning the words "pain"

| | | | |
|---|---|---|---|
| and/or "swelling" and any synonyms as urgent care.   Dr. Hanstad will testify that per ADC policy, urgent care requests must be seen within 72 hours.   He will testify that many urgent care requests are seen the same day or within 24 hours.   He will testify that most dental clinics are open Monday through Friday.   On weekends, nursing staff triage dental HNRs using dental protocols, and inmates experiencing pain and swelling may be seen on sick call outside of dental clinic hours.<br><br>Dr. Hanstad will testify that dental assistants receive on-the-job training from the dentists they assist and are evaluated on their triaging skills on an on-going basis.   Dr. Hanstad will testify that dentists are evaluated annually through the dental peer review process, which includes chart reviews to assess appropriateness of care provided.   He will testify that dentists are also evaluated on their productivity, which is assessed using the CDS program.  He will testify that | | | |

all dentists in ADC are licensed in Arizona and must complete continuing education to maintain their licensure.

Dr. Hanstad will testify that dental emergencies are rare at ADC and usually involve broken jaws. He will testify that dental emergencies are generally referred to outside providers and hospitals.

Dr. Hanstad will testify that SPDS has hired two dental hygienists, one for each region. The dental hygienists travel to the complexes within their regions depending on inmate demand for cleanings. Dr. Hanstad will testify that wait times for routine care, which includes cleanings, average 1.5 months or less at all ADC complexes statewide as of December 2013. He will also testify regarding current routine care wait times at the time of trial.

Dr. Hanstad will also testify regarding the capabilities of the CDS program. He will testify that CDS provides a real-time snapshot of current dental

| | | | | | |
|---|---|---|---|---|---|
| | | requests and wait times.  He will testify that inmates on the routine care list are listed in order of longest to shortest waiting time.  If an inmate has been waiting for 90 days or longer, the wait time for that inmate turns red to alert staff. He will testify that he can run reports on the number of HNRs, the numbers of procedures performed, the number of refusals, and average wait times. He will testify that CDS is linked to AIMS so that dental staff has access to accurate information on an inmate's housing location.  If an inmate on the routine care list is transferred to another complex, the inmate is automatically transferred to the routine care list at the receiving complex based on the date of the inmate's original HNR. He will testify regarding current dental statistics at the time of trial.  All of the opinions expressed by Dr. Hanstad herein are to a reasonable degree of dental probability. | | | |
| | Winfred Williams **(fact and/or expert)** | Winfred    Williams    is    Corizon's current  Chief  Medical  Officer,  and | 4 | 3 | |

| | | |
|---|---|---|
| c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | will testify pursuant to FRCP 26(a)(2)(C). He will testify regarding his knowledge of ADC's policies and procedures related to the delivery of medical care to ADC's inmate population; and the implementation and use of the Care Log software at Yuma. Dr. Williams has a lengthy tenure with Corizon Health Services and will also testify regarding his experience and expertise in privatization of health care in correctional settings and Corizon's outcomes measurements in the ADC system. Dr. Williams will testify consistent with his deposition. He will also testify as to the adequacy of staffing and monitoring by ADC. Dr. Williams will also testify regarding his review of Plaintiff Shawn Jensen's medical records and his opinions regarding the treatment rendered to Jensen. He will further testify regarding specific allegations made by Mr. Jensen as it relates to his medical care in connection with his treatment for prostate cancer as well | | | |

142

as his current prognosis.

Dr. Williams will testify regarding his review of Plaintiff Swartz's medical records and his opinions regarding the treatment rendered to Swartz after he was involved in two inmate assaults in 2010. Specifically, he will testify regarding the follow-up care, medications, and subsequent facial reconstructive surgery. He will also testify regarding Plaintiff Swartz's allegations that staff screened him with a metal detector after he swallowed metal, did not refer him for an endoscopy, and told him he would have to pass the metal.

Dr. Williams will testify regarding his review of Plaintiff Rodriguez's medical records and his opinions regarding the treatment rendered to her. He will further testify regarding Plaintiff Rodriguez's allegation that she has experienced multiple asthma attacks and breathing problems as a result of her exposure to pepper spray.

Dr. Williams will testify regarding his review of Plaintiff Thomas's medical

records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Thomas's specific allegations that in November 2011, he overdosed on Diclofenac and did not receive medical attention, that he has experienced insomnia and weight loss while in SMU, and was not prescribed a sleep aid.

Dr. Williams will testify regarding his review of Plaintiff Gamez's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Gamez's specific allegations that his care was managed by a nurse practitioner, he did not receive follow-up tests to confirm that he has frontal lobe dysfunction, and his medications have been denied or delayed.

Dr. Williams will testify regarding his review of Plaintiff Chisholm's medical records and his opinions regarding the treatment provided to her.  He will further testify regarding

Plaintiff Chisholm's specific allegations that she was not referred to a cardiologist for eight months despite experiencing chest pains and shortness of breath and did not receive adequate care or testing from outside specialists.

Dr. Williams will testify regarding his review of Plaintiff Licci's medical records and his opinions regarding the treatment provided to her. He will further testify regarding Plaintiff Licci's specific allegations that she has experienced delays in seeing an oncologist and receiving testing regarding masses on her breasts, mouth, arms, and ovaries, that she experiences extreme discomfort in her cervix that impacts her bowels and results in constipation, and medical staff make false claims in replies to her grievances. Dr. Williams will also testify regarding Plaintiff Licci's allegation that her port-a-cath may not have been properly flushed.

Dr. Williams will testify regarding his review of Plaintiff Hefner's medical

records and his opinions regarding the treatment provided to him. He will further testify regarding Plaintiff Hefner's specific allegations that his vision deteriorated after a nurse gave him expired eye drops, he did not receive eye medication following eye surgery in 2006 and 2008, has not seen an ophthalmologist, and experienced delay in receiving a CT scan following an injury. He will testify regarding Plaintiff Hefner's allegation that he did not receive adequate treatment after an assault. Dr. Williams will also testify regarding Plaintiff Hefner's claim that his requests for a medical diet have been denied.

Dr. Williams will testify regarding his review of Plaintiff Polson's medical records and his opinions regarding the treatment provided to him. He will further testify regarding Plaintiff Polson's specific allegations that he experienced delays in receiving appropriate care and medications for chronic ear pain.

Dr. Williams will testify regarding his review of Plaintiff Wells' medical records and his opinions regarding the treatment provided to her.  He will further testify regarding Plaintiff Wells' specific allegations that she was not evaluated by a cardiologist despite repeated complaints of chronic chest pain.

Dr. Williams will testify regarding his review of Plaintiff Smith's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Smith's specific allegation that he was unable to write HNRs due to a hand injury.

Dr. Williams will testify regarding his review of Plaintiff Brislan's medical records and his opinions regarding the treatment provided to him.  He will further testify regarding Plaintiff Brislan's specific allegation that he has lost weight due to insufficient meals.

In addition to testifying regarding the medical treatment of the named

| | | | | | |
|---|---|---|---|---|---|
| | | Plaintiffs, Dr. Williams will also testify regarding the health care provided to the individual inmates specifically referred to by Plaintiffs' experts and whether the care rendered was adequate, appropriate and meets the standard of care.<br><br>Based upon his professional training, experience, and review of the chart volume for the thirteen named Plaintiffs, Dr. Williams will be called to testify regarding his clinical opinion, that since March 4, 2103, each of the litigants who were seen by a medical provider, as documented in the chart, received care that is in line with clinical best practice approaches. Overall, clinicians used approaches that addressed documented diagnostic concerns.  Documentation in standard SOAP format included examination findings, treatment plan, and follow up plans.  Follow up was performed as deemed appropriate by the medical provider. | | | |
| | Joseph V. Penn **(expert)** UTMB | Dr. Penn is certified by the American Board of Psychiatry and Neurology in | 8 | 3 | |

| | | | | |
|---|---|---|---|---|
| Correctional Managed Care 200 River Pointe Drive, Suite 200 Conroe, Texas 77304 | psychiatry and holds a subspecialty certification in forensic psychiatry and has been retained as an expert witness by Defendants Ryan and Pratt. Dr. Penn is a Certified Correctional Health Care Professional (CCHP), a Clinical Associate Professor of Psychiatry in the Department of Psychiatry and Behavioral Services at the University of Texas Medical Branch, Medical School and is the Director of Mental Health Services, University of Texas Medical Branch Correctional Managed Care. Dr. Penn will testify consistent with the information and opinions set forth in his December 18, 2013 CONFIDENTIAL expert report, which is produced herewith as ADC203372 through ADC203515. A list of the documents and things Dr. Penn considered in the preparation of his report is contained therein at ADC203467 through ADC203479. In addition, Dr. Penn's curricula vitae (including his list of publications he has authored in the past ten years) is | | | |

| | | | | |
|---|---|---|---|---|
| | produced herewith as ADC203481 through ADC203509. A list of cases where Dr. Penn has testified during the past four years is produced herewith as ADC203511 through ADC203513 and an updated list was produced as ADC222041. Dr. Penn's fee schedule is produced herewith as ADC203515.<br><br>Dr. Penn will also testify consistent with the information and opinions set forth in his March 26, 2014 CONFIDENTIAL supplemental expert report, which is produced herewith as ADC261843 through ADC261875. A list of the additional documents and things that Dr. Penn considered in the preparation of his supplemental expert report is contained therein at ADC261876 through ADC261883. | | | |
| John W. Dovgan **(expert)** 3841 E. Thunderbird Road, Ste. 101 Phoenix, Arizona 85032 | Dr. Dovgan is a dentist licensed to practice in the State of Arizona and has been retained as an expert witness by Defendants Ryan and Pratt. Dr. Dovgan will testify consistent with the information and opinions set forth | 8 | 3 | |

in his December 18, 2013 CONFIDENTIAL expert report, which is produced herewith as ADC2203516through ADC203609. A list of the documents and things Dr. Dovgan considered in the preparation of his report is contained therein at ADC203599 through ADC203609. In addition, Dr. Dovgan's updated curricula vitae (including his list of publications he has authored in the past ten years) is produced herewith as ADC222036 through ADC222040. A list of cases where Dr. Dovgan has testified during the past four years is contained therein at ADC222039 through ADC222040. Dr. Dovgan's fee schedule is also contained therein at ADC222040.

Dr. Dovgan will also testify consistent with the information and opinions set forth in his March 26, 2014 CONFIDENTIAL supplemental expert report, which is produced herewith as ADC261914 through ADC261926. A list of the additional documents and things that Dr.

| | | | | |
|---|---|---|---|---|
| | | Dovgan considered in the preparation of his supplemental expert report is contained therein at ADC261927 through ADC261930. | | | |
| | Richard P. Seiter **(expert)** 205 Topton Way St. Louis, Missouri 63105 | Dr. Seiter holds a Ph.D. in Public Administration from The Ohio State University and has been retained as an expert witness by Defendants Ryan and Pratt. He has served extensively with the Federal Bureau of Prisons, served six additional years as the Director of the Ohio Department of Rehabilitation and Correction, was the first Chief of the NIC National Academy of Corrections, a full professor and Director of Criminal Justice at St. Louis University, and former Executive Vice President and Chief Corrections Officer for Corrections Corporation of America. Dr. Seiter is also a past recipient of the E.R. Cass Award by the American Correctional Association (ACA) and the Louie Wainwright Award from the Association of State Correctional Administrators (ASCA). Dr. Seiter will testify consistent with the | 8 | 3 | |

| | | | | |
|---|---|---|---|---|
| | information and opinions set forth in his December 18, 2013 CONFIDENTIAL expert report, which is produced herewith as ADC203610-ADC203762. In addition, Dr. Seiter's biography and curricula vitae, including a list of cases where Dr. Seiter has testified in the past four years and his fee schedule is produced herewith as ADC203696-ADC203704. A list of the documents and things Dr. Seiter considered in the preparation of his report is set forth at ADC203706-ADC203716. Dr. Seiter will also testify consistent with the information and opinions set forth in his March 26, 2014 CONFIDENTIAL supplemental expert report, which is produced herewith as ADC261884 through ADC261912. A list of the additional documents and things that Dr. Seiter considered in the preparation of his supplemental expert report is contained therein at ADC261913. | | | |
| Lawrence H. Mendel | Dr. Mendel is a certified by the | 8 | 3 | |

153

| | | | | |
|---|---|---|---|---|
| **(expert)** 1255 N. Hamilton Road, #71 Columbus, Ohio 43230 | American Osteopathic Board of Family Practice and has been retained as an expert witness by Defendants Ryan and Pratt. Dr. Mendel is a Fellow of the Society of Correctional Physicians and a Certified Correctional Health Care Professional. Dr. Mendel has extensive practice as an emergency room physician as well as experience as both a provider and administrator in correctional healthcare settings. Dr. Mendel served for more than ten years as the Medical Director of the Ohio Department of Rehabilitation and Correction, and has written, presented, and consulted extensively for a variety of governmental and private entities on questions relating to correctional healthcare. Dr. Mendel also holds a faculty appointment with The Ohio State University as an Assistant Clinical Professor of Family Medicine. Dr. Mendel will testify consistent with the information and opinions set forth in his December 18, 2013 | | | |

154

CONFIDENTIAL expert report, which is produced herewith as ADC203763-ADC203835 and his CONFIDENTIAL supplemental report, dated January 31, 2014, which is produced as ADC229802-ADC229807. A list of the documents and things Dr. Mendel considered in the preparation of his report (and January 31, 2014 supplemental report) is contained in his December 18, 2013 CONFIDENTIAL expert report at ADC203824-ADC203835. In addition, Dr. Mendel's curricula vitae, including his list of recent publications, is produced herewith as ADC203814–ADC203817. A list of cases where Dr. Mendel has testified in the past four years is produced herewith as ADC203819-ADC203822. Dr. Mendel's fee schedule is set forth within the text of his December 18, 2013 CONFIDENTIAL expert report at ADC203765.

Dr. Mendel will also testify consistent with the information and opinions set

| | forth in his March 26, 2014 CONFIDENTIAL second supplemental expert report, which is produced herewith as ADC261931 through ADC261943. A list of the additional documents and things that Dr. Mendel considered in the preparation of his second supplemental expert report is contained therein at ADC261944 through ADC261949. | | | |

KEY

*= Defendants will question this witness during Plaintiffs' case in chief, but may call him again in Defendants' case if necessary. The anticipated time is duplicative of the time noted in Plaintiffs' section.

*= Plaintiffs object to Defendants' unilateral assertion that they will call these witnesses during Plaintiffs' case in chief and call them again if necessary. Plaintiffs are listing cross-examination times they will use in the event the Court allows Defendants to call these witnesses.

SFI-620873401v1

**DEFENDANTS' LIST OF WITNESSES WHO MAY BE CALLED TO TESTIFY AT TRIAL**

| Witness | Statement of Testimony | Direct | Cross | Other Witnesses |
|---------|------------------------|--------|-------|-----------------|
| Joe Profiri **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Joe Profiri is the Southern Region Operations Director of ADC. He formerly oversaw the ADC Contract Beds Units, as well as early stages of ADC health services privatization, including the implementation of contract monitoring reports and activities, the design and implementation of the Monthly Green Amber Red (MGAR) reporting system and its effectiveness to assure contract compliance, and the issuance of the cure letter and follow-up regarding corrective actions.  Mr. Profiri is likely to testify with regard to the delivery of medical, dental and mental health care to the inmates, including his oversight of Wexford to the extent it is deemed relevant; his activities in ensuring compliance with all Department Orders, Procedural Manuals, Post Orders, and Standard of Operations as they apply to security and operational practices, staff safety, the welfare of the inmate population; his supervision of ADC facilities, including policy and | 2 | 1 | |

program development and implementation statewide with regard to security operations, inmate programming, and standardization of staffing; ensuring the implementation of the Department's Strategic Plan and other agency initiatives, and standardization of processes and procedures in all facilities.

Mr. Profiri will also testify regarding the current programming implemented for maximum custody inmates as a result of DI 326 and other initiatives.  Mr. Profiri will testify that ADC has built large recreation enclosures for use by multiple inmates at the same time at Perryville. Pursuant to DI 326, opportunities provided to Perryville-Lumley maximum custody inmates (eligibility based on step in the program) includes but is not limited to: individual and group programming, expanded library services, expanded commissary and property opportunities, expanded religious gathering opportunities and physical plant improvements.  He will also testify regarding security issues

| | | | | |
|---|---|---|---|---|
| | related to management of maximum custody inmates and opportunities Perryville-Lumley maximum custody inmates have for socialization. Further, he will testify regarding mental health programming opportunities and care provided to Perryville-Lumley maximum custody inmates.<br><br>Mr. Profiri will testify as to the current status of all of these areas, the allegations contained in Plaintiffs' expert reports, and changes that may be implemented at Perryville-Lumley pursuant to DI 326 up until trial. Mr. Profiri was present during the Court-ordered supplemental maximum custody site inspections along with Plaintiffs' experts Dr. Haney and Mr. Vail (and Defendants' expert, Dr. Seiter) in August 2014, and will testify regarding what he observed and heard during those inspections, including the areas reviewed, the inmates and staff interviewed, the information he provided, and the conditions he personally observed. | | | |
| Roy Cheriyan | Mr. Cheriyan is the Chaplin at ASPC- | 30 | 30 | |

| | | | mins. | mins. | |
|---|---|---|---|---|---|
| **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Florence and has served in this role since October 2013.  He is expected to testify regarding the religious services offered to maximum custody inmates housed in cell blocks 1-4 of ASPC-Florence's Central Unit.   He will testify that inmates in steps 1-3 are provided the opportunity to participate in religious services and that the following services are held each month. Native American talking circle is held every other Tuesday and Wednesday. During the talking circle, inmates engage in smudging (burning of dried herbs) and talking collectively as a group.  Catholic services are held every Thursday evening.   Muslim prayer is held every other Friday.   Multi-Faith services (Aztec and Asatru) are held every Wednesday and Thursday. Messianic Jewish services are held every other Thursday.   Christian services are held every Saturday and Mr. Cheriyan leads this service.  All services, except the talking circle, are held in the Chapel. Mr. Cheriyan will also testify that in addition to the services described above, | | | |

3

he also walks all cell blocks in central unit once approximately every three weeks and asks inmates if they would like to speak or pray with him.  He also asks about any religious needs the inmates may have.  Additionally, Mr. Cheriyan walks the hospital units once a week and speaks and prays to the inmates housed there.

In addition to the religious services described above, Mr. Cheriyan will also testify that AA and NA classes are available for inmates in the Step 3 phase and are held every Thursday.

All services discussed above last for approximately one hour each session, this does not include the time it takes for the inmate to go through security and arrive at the service or the time it takes him to return to his cell.

Finally, Mr. Cheriyan will testify that he loans inmates religious books if they ask.  Inmates may ask Mr. Cheriyan personally or through a kite.  Mr. Cheriyan will also testify that inmates are permitted to purchase religious items though vendors approved by ADC.

| | | | | |
|---|---|---|---|---|
| Vince Parker **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Mr. Parker is the librarian at ASPC-Florence.   Mr. Parker is expected to testify regarding the library programming offered to maximum custody inmates participating in the step program.  Mr. Parker will testify that all inmates in the step program (Steps 1, 2, and 3) have the opportunity to utilize library services.  Inmates in the Steps 1, 2, and 3 phases may receive library services to their cell.  Specifically, they may request a book catalog from the library, choose a book, and submit a lending library book request for the book. Each cell block has ten copies of the book catalog for inmates to reference.   Inmates may also purchase book catalogs if they desire.   Once a week, requested books are delivered to every cell block.  When an inmate has finished a book, he will provide it to a yard officer who will then drop it in one of the book drops located in every cell block.  If the inmate passes by a book drop on his way to recreation, chow, or other activity, he also has the option of dropping the book in the book drop | 30 mins. | 30 mins. | |

| | | | | | |
|---|---|---|---|---|---|
| | | himself.<br><br>Mr. Parker will further testify that inmates in the Step 3 program are permitted to physically go to the library for 1 hour each week.  Inmates may utilize this hour however they see fit. Inmates may read or browse books or visit one of the many displays Mr. Parker puts on each month.  These displays range from a variety of educational topics such as Ancient Egypt to the Titanic.<br><br>Parker will also testify that the Florence library currently has over 13, 000 books in circulation and that their book catalog is renewed each year.  Due to the generous amount of donations Parker has received by reaching out to libraries and bookstores in the community,  the Florence library is privileged to serve as a repository for all ADC prison complexes.<br><br>Finally, Parker will testify that Step 3 inmates are permitted to work in the library. | | | |
| | Jose Jaimes **(fact)** c/o Struck | These COIIIs and COIV Gardner will testify regarding the COIII- and COIV- | 30 mins. | 30 mins. | |

6

| | | | | |
|---|---|---|---|---|
| Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | led programming provided to maximum custody and restrictive housing inmates at Eyman-Browning; Eyman-SMUI; Florence-Central; and, Perryville-Lumley units pursuant to DI 326 and as observed (in part) by Plaintiffs' experts Dr. Haney and Mr. Vail (as well as Defendants' expert, Dr. Seiter) during Court ordered tours that occurred in from August 11-14, 2014.   They will testify regarding the historical progression of programming provided at their respective facilities both pre- and post- DI 326.   They will testify regarding frequency of programming, content of programming, subject matter of programming, curriculum, class size, participation selection, attendance levels, nature and extent of programming, security provided during programming, feedback from inmates regarding programming, goals of programming, requirements of programming, permitted and prohibited conduct during programming, availability of in-cell programming and television programming, logistics of programming | | | |

| | | and effects of programming on inmate conduct. They may also testify regarding their personal experience in providing that training to the maximum custody and restrictive housing inmate population, as well as their personal observations of the inmate response since the COIII- and COIV-led programming commenced for maximum custody and restrictive housing inmates. | | | |
|---|---|---|---|---|---|
| | Michael Smith **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | See above. | 30 mins. | 30 mins. | |
| | Joseph Bendell **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | See above. | 30 mins. | 30 mins. | |
| | Larry Gardner | See above. | 30 | 30 | |

| | | | | |
|---|---|---|---|---|
| c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | mins. | mins. | |
| Karen Hellman **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Ms. Hellman has been employed by ADC for more than ten years and is currently the Program Administrator for Counselling & Treatment Services.  Ms. Hellman will testify regarding the programming provided to maximum custody inmates within the ADC system pursuant to DI 326.  She will testify regarding the historical progression of programming provided at these facilities both pre- and post- DI 326, regarding topics that were addressed by ADC personnel during Court ordered tours that occurred in from August 11-14, 2014 for Plaintiffs' experts Dr. Haney and Mr. Vail (as well as Defendants' expert, Dr. Seiter).  She will also testify regarding frequency of programming, content of programming, subject matter of programming, curriculum, class size, participation selection, attendance levels, | 1 | 1 | |

nature and extent of programming, security provided during programming, feedback from inmates regarding programming, goals of programming, requirements of programming, permitted and prohibited conduct during programming, availability of in-cell programming and television programming, logistics of programming and effects of programming on inmate conduct.

Ms. Hellman will also testify regarding selection of curriculum which is an evidence and cognitive based, goal-directed, client-centered model that guides inmates' pro-social behavior through written self-reflection.  She will testify that ADC uses two series from Interactive Journaling; Courage to Change and the Life Skills series.  The six topics that are included in the curriculum include the following Courage to Change (Social Values, Responsible Thinking, Self-Control, Substance Abuse) and Life Skills (Core Skills, Feelings).  Additionally, ADC offers evidence and cognitive based

| | | | | |
|---|---|---|---|---|
| | Socialization classes and the Thinking for Change curriculum. The curriculum offered to maximum custody inmates has both mandatory and optional programs to include self-study and classroom settings based upon an inmate's level of maximum custody/restrictive housing and progression through the DI326 Step Program. | | | |
| Jeff Hood **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Jeff Hood is the Deputy Director of ADC. Mr. Hood will testify regarding his training and experience in corrections, and with regard to ADC policies and procedures and conditions of confinement; the maintenance and administration of ADC institutions and programs; isolation and conditions of confinement issues in various ADC facilities as well as to ADC's compliance with constitutional requirements for the delivery of healthcare. Mr. Hood will testify concerning the privatization of health care at ADC, the transition from Wexford to Corizon as the vendor, budget issues and contract compliance | 2 | | |

| | | | | |
|---|---|---|---|---|
| | | monitoring by ADC. | | | |
| James Taylor **(fact)** c/o Corizon Health 105 Westpark Drive, Suite 200 Brentwood, Tennessee 37027 | | James Taylor is the former HS Division, Contract Compliance Program Evaluation Administrator for ADC, and the current Regional Vice President at Corizon.  Mr. Taylor  is likely to have discoverable information with regard to ADC policies, practices, and procedures at the time of his employment with ADC, including those related to medical, dental and mental health needs; the privatization of the entire health care delivery system, specifically, the transition of the entire health care system to Wexford; the transition of the entire health care system to Corizon; and the provision of adequate care to ADC inmates in compliance with constitutional requirements. | 2 | 1 | |
| Arthur Gross **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | Arthur Gross was formerly the HS Contract Monitoring Bureau Assistant Director.   Please see Exhibit Bates Numbered ADC123408-123412 for Mr. Gross's credentials and qualifications. Mr. Gross is likely to have discoverable information with regard to ADC policies and procedures at the time of his | 1* | 3 | |

| | | | | | |
|---|---|---|---|---|---|
| | | employment with ADC, including those related to medical, dental and mental health needs; the transition of the entire health care system to Corizon; the provision of adequate care to ADC inmates in compliance with constitutional and contract requirements; and his activities in reporting to the Director of the ADC, provision of oversight and direction to the monitoring team members responsible for ensuring that Corizon provides required health services to ADC's inmate population. | | | |
| | Martin Winland **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Martin Winland is the current Contract Monitoring Bureau Pharmacy Monitor, taking the place of Paulette Boothby as of June 2013.  He is likely to have discoverable information regarding his knowledge of the PharmaCorr prescription and delivery system and his knowledge of Corizon and PharmaCorr's performance under the Contract with ADC. | 1 | 1 | |
| | Juli Jackson **(fact)** c/o Struck Wieneke & Love, P.L.C. | Deputy Warden of Operations Juli Jackson is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to | 1 | 1 | |

| | | |
|---|---|---|
| 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | security operations, including general information regarding ASPC-Florence, its cell blocks, the inmates housed at ASPC-Florence, and recreation, therapy and behavioral programming at ASPC-Florence. DWOP Jackson is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective | |

| | | | | |
|---|---|---|---|---|
| | | facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. | | |
| | Jeff VanWinkle **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Deputy Warden VanWinkle is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Eyman, its cell blocks, the inmates housed at SMU-I, and recreation, therapy and behavioral programming at SMU-I, and access to healthcare and delivery of healthcare to the inmates. Deputy Warden VanWinkle is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated | 1 | 1 |

| | | | | | |
|---|---|---|---|---|---|
| | | inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; food service, including nutrition requirements; lighting issues, conditions of confinement and management of SMU units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. Deputy Warden VanWinkle will also provide foundational testimony for institutional records. | | | |
| | Sandra Lawrence **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, | Deputy Warden Sandra Lawrence is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Winslow- | 1 | 1 | |

16

| | | | | | |
|---|---|---|---|---|---|
| Chandler, AZ 85226 | Kaibab and ASPC-Lewis-Stiner and Bachman Unit, its cell blocks, the inmates housed at the Kaibab, Bachman and Stiner Units, and recreation, therapy and behavioral programming at both ASPC-Winslow and ASPC-Lewis. Deputy Warden Lawrence is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged | | | |

| | | | | | |
|---|---|---|---|---|---|
| | | sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. | | | |
| | Staci Fay **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Deputy Warden Staci Fay is currently the Deputy Warden is assigned to the Browning Unit at ASPC-Eyman. Previously she was Deputy Warden of the Santa Rita and Rincon Units at ASPC-Tucson and an Assistant Deputy Warden at the Cook Unit at ASPC-Eyman.  DW Fay is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding both ASPC-Tucson and ASPC-Eyman, their cell blocks, the inmates housed in Browning Unit, recreation at Browning Unit, therapy and behavioral programming at Browning Unit, and access to healthcare and delivery of healthcare to the inmates at both ASPC-Eyman and Tucson. Deputy Warden Fay | 1.5 | 1 | |

is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; food service, including nutrition requirements;, lighting issues, alleged sanitation and extermination issues at their respective facilities; conditions of confinement and management of SMU units; inmates' access to programming, visitation, and recreation time; and

| | | | | |
|---|---|---|---|---|
| | educational programming available to inmates. Deputy Warden Fay will also provide foundational testimony for institutional records. | | | |
| Travis Scott **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Deputy Warden Travis Scott is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding both the ASPC-Lewis-Stiner Unit and the ASPC-Phoenix/Alhambra and Flamenco Unit, the intake process at Alhambra, their cell blocks, the inmates housed at the Alhambra, Flamenco and Stiner Units, and recreation, therapy and behavioral programming at ASPC-Phoenix and ASPC-Lewis. Deputy Warden Scott is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as | 1 | 1 | |

| | | | | |
|---|---|---|---|---|
| | | ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. | | |
| | Carol Ortiz **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Deputy Warden Carol Ortiz is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Phoenix/Alhambra and Flamenco Unit, the intake process at Alhambra, its cell blocks, the inmates housed at Alhambra | 1 | 1 |

and Flamenco Unit, and recreation, therapy and behavioral programming at ASPC-Alhambra and Flamenco. Deputy Warden Ortiz is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement within the maximum custody and management of maximum custody units;

| | | | | |
|---|---|---|---|---|
| | inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. | | | |
| Jo Chiu **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Associate Deputy Warden Jo Chiu is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Phoenix-Alhambra and Flamenco Units, the intake process at Alhambra, its cell blocks, the inmates housed at the Alhambra and Flamenco Units, and recreation, therapy and behavioral programming at ASPC-Alhambra and Flamenco.  Deputy Warden Chiu is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities;  Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated | 1 | 1 | |

| | | | | |
|---|---|---|---|---|
| | | inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement within the maximum custody and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. | | |
| | Elizabeth Oros **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Deputy Warden Elizabeth Oros is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Perryville/San Pedro Unit, its housing units, the inmates housed at San Pedro Unit, and recreation, therapy and | 1 | 1 |

behavioral programming at ASPC-San Pedro. Deputy Warden Oros is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and inmate management; inmates' access to programming, visitation, and recreation time; and educational programming

| | | | | |
|---|---|---|---|---|
| | available to inmates. | | | |
| Sandra Walker **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | 1 | |
| David Summer **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | 1 | |
| Brenda Burgess **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | 1 | |
| Brian Roberts **(fact)** | | 1 | 1 | |

| | | | | |
|---|---|---|---|---|
| c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | | |
| Kimberly Currier **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | 1 | |
| Terry Hibbard **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | 1 | |
| John Weiss **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West | | 1 | 1 | |

27

| | | | | |
|---|---|---|---|---|
| Ray Road, Suite 300, Chandler, AZ 85226 | | | | |
| Michael McCarville **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | 1 | |
| Keith Smith **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Security Operations Administrator Keith Smith has filled the position previously titled, Deputy Warden of Security Operations, which was previously filled by Angel Daniels.  Mr. Smith is likely to testify regarding his knowledge of ADC's policies and procedures for oversight of inmate meal preparation and delivery, including accommodation of the religious standards in place for the various faiths to which inmates in ADC custody belong, and provisions of adequate nutritional needs for special diets.   Mr. Smith will also testify regarding his oversight of the Food | 1 | 1 | |

28

| | | | | |
|---|---|---|---|---|
| | Services Contract and collaborative relationship with Trinity Services Group in ensuring that adequate nutritional value is provided to inmates through all diets, including the mega sack meals provided to inmates in maximum custody. Mr. Smith will testify regarding his oversight of the meals provided to ensure nutritional adequacy, caloric intake and appropriate rotation of food product in the meals. | | | |
| Anthony Coleman (fact) c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Mr. Coleman is the current Facility Health Administrator at ASPC-Perryville, and is likely to testify regarding his knowledge of ADC's and Corizon's policies and procedures regarding delivery of health care to ADC's inmate population at ASPC-Perryville; and the day-to-day operation of health services at ASPC-Perryville, including delivery of medication delivery of mental health care and dental care; her knowledge of the relationship between the operational staff at ADC and health care staff at Corizon, and the overall delivery of healthcare to the inmates. Mr. Coleman is likely to testify | 1 | 1 | |

regarding his knowledge of ADC's practices and procedures in relation to security operations, including general information regarding ASPC-Perryville/Santa Cruz Unit, its housing units, the inmates housed at Santa Cruz Unit, and recreation, therapy and behavioral programming at ASPC-Santa Cruz Unit. Mr. Coleman is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each

| | | respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and inmate management; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. | | | |
|---|---|---|---|---|---|
| | Lacy Scott **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Deputy Warden Lacy Scott is likely to testify regarding his knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Perryville/Lumley Unit, its cell blocks, the inmates housed at Lumley Unit, and recreation, therapy and behavioral programming at ASPC-Lumley Unit. Deputy Warden Scott is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding | 1 | 1 | |

inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and management of maximum custody units; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates.

Ms. Scott was present during the Court-ordered supplemental maximum custody site inspections along with Plaintiffs' experts Dr. Haney and Mr. Vail (and Defendants' expert, Dr. Seiter) in August 2014, and will testify regarding what she observed and heard during those inspections, including the areas

| | | | | | |
|---|---|---|---|---|---|
| | | reviewed, the inmates and staff interviewed, the information he provided, and the conditions he personally observed. | | | |
| | Panann Days **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Deputy Warden Panann Days is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding both the ASPC-Tucson/Catalina and Manzanita Units, their cell blocks, the inmates housed at the Catalina and Manzanita Units, and recreation, therapy and behavioral programming at ASPC-Tucson/Catalina and Manzanita Units. Deputy Warden Days is additionally likely to have discoverable information with regard to Plaintiffs' institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective | 1 | 1 | |

| | | | | | |
|---|---|---|---|---|---|
| | | custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and inmate management; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. | | | |
| | Carla Hacker-Agnew **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Deputy Warden of Operations Carla Hacker-Agnew is likely to testify regarding her knowledge of ADC's contemporary practices and procedures in relation to security operations, including general information regarding ASPC-Yuma, its cell blocks, the inmates housed at ASPC-Yuma, and recreation, therapy and behavioral programming at ASPC-Yuma. DWOP Hacker-Agnew is additionally likely to have discoverable information with regard to Plaintiffs' | 1 | 1 | |

| | | institutional history and ADC's policies and procedures, and conditions of confinement with respect to their respective facilities; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADC's management of gang affiliated inmates; any Plaintiff's protective custody or classification status at any point during their incarceration at ADC as well as the policies and procedures regarding the classification, housing, programming, recreation, morale and welfare programs, and fundraisers; the management of health care at each respective facility, the physical layout of each of their respective facilities; alleged sanitation issues at their respective facilities; conditions of confinement and inmate management; inmates' access to programming, visitation, and recreation time; and educational programming available to inmates. | | | |
| Jeri Pepelnjak **(fact)** c/o Struck Wieneke | CO III Pepelnjak is likely to testify regarding her knowledge of Plaintiff Charlotte Wells, including Wells' | 1 | 1 | |

| | | | | |
|---|---|---|---|---|
| & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | institutional history and conduct while in incarceration. | | | |
| Dr. Tracy L. Crews **(fact)** 444 N. 44th Street, Suite 400 Phoenix, AX 85008 | Dr. Crews is the former Psychiatrist Supervisor at ASPC-Perryville.   Dr. Crews was previously deposed in this case and, if unavailable at the time of trial, Defendants will rely upon her deposition testimony.   Dr. Crews is likely to testify with regard to her knowledge of the mental health needs and treatment of ADC's inmate population, the contemporary mental health services policies and procedures implemented during her tenure at ADC; mental health classifications for ADC inmates; the prescription and delivery of psychiatric medication to ADC inmates; private and group therapy sessions provided to ADC inmates at ASPC-Perryville.   Dr. Crews will also testify regarding the mental health care provided to Plaintiff Christina Verduzco and that the care was not deliberately indifferent.   Dr. Crews will testify that | 1 | 1 | |

| | | | | | |
|---|---|---|---|---|---|
| | | Ms. Verduzco has been diagnosed with schizophrenia, paranoid type, personality disorder, prior suicide attempts, poly substance abuse, and has been classified as "SMI". Specifically, Dr. Crews will state that the care provided to Ms. Verduzco is consistent with industry standards. | | | |
| | Ingebor Popin **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Ingebor Popin is currently a Dental Assistant at ASPC-Perryville and is likely to testify regarding ADC's policies and procedures related to dental care provided to the ADC inmate population at ASPC-Perryville, including the dental HNR process, triaging of dental HNRs, informed consents for dental surgery, routine dental services provided to ADC's inmate population, and wait times for dental patients. | 1 | 1 | |
| | Martha Ortega **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Martha Ortega is a Dental Assistant II at ASPC-Phoenix, and is likely to testify regarding her knowledge of ADC's policies and procedures for delivery of dental care to ADC's inmate population; the dental intake process for all male ADC inmates at ASPC-Phoenix; triage | 45 mins. | 30 mins. | |

| | | | | |
|---|---|---|---|---|
| | of dental HNRs; and dental treatment provided to ADC inmates, including pain evaluations, cleanings, fillings, and extractions. | | | |
| Stephanie Leonard **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Stephanie Leonard, Psy.D. is a Clinical Psychologist currently at ASPC-Perryville/Women's Treatment Unit, and is likely to testify regarding her knowledge of ADC's policies and procedures relating to delivery of mental health care to ADC's inmate population; including prescription and delivery of psychiatric medications to inmates, psychiatric treatment plan implementation and follow-up, and policies and procedures for placement of inmates on mental health and/or suicide watch. <br><br> Additionally, Leonard will testify regarding her treatment of Plaintiff Verduzco and that the treatment she provided was appropriate and within the applicable standard of care. Specifically, she will testify that during her February 21, 2014 visit, Verduzco acknowledged she was currently on suicide watch because she had | 45 mins. | 30 mins. | |

| | | | | | |
|---|---|---|---|---|---|
| | | "swallowed some stuff." Verduzco denied wanting to hurt herself and denied suicidal ideations. She expressed interest in wanting to go back to her cell. Her suicide watch was discontinued. [ADC263158]. | | | |
| | Tom A. Fulks **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Tom Fulks is the Mental Health Director currently at ASPC-Phoenix, and formerly at ASPC-Lewis, and is likely to testify regarding his knowledge of ADC's policies and procedures relating to delivery of mental health care to ADC's inmate population; including prescription and delivery of psychiatric medications to inmates, psychiatric treatment plan implementation and follow-up, and policies and procedures for placement of inmates on mental health and/or suicide watch. Dr. Fulks will also testify regarding his knowledge of the mental health treatment provided to named Plaintiffs during their incarceration an ASPC-Lewis and/or ASPC-Phoenix. Specifically, Dr. Fulks will testify regarding the mental health treatment provided to Plaintiffs Stephen Swartz and Dustin Brislan. Dr. Fulks | 2 | 1 | |

39

| | | | | |
|---|---|---|---|---|
| | | will also testify regarding the implementation of the Phoenix Mission Statement and program model that is being utilized in providing mental health treatment at ASPC-Phoenix. This program model consists of elective groups that are provided on an as-needed basis or as the clinical needs of the population demand on each individual unit. The program model also consists of self-study/peer run groups, which are individualized to the particular needs of the population. Dr. Fulks will testify that the ultimate goal and mission of the program model is to provide inmates with the skills necessary to live independently and become good citizens of the community, whether it be while incarcerated or upon release. Dr. Fulks will further testify that the goal of the program model is to empower and encourage inmates to be productive, respectful and independent citizens. \ | | | |
| | Natalie Morales **(fact)** c/o Corizon Health 950 W. | Natalie Morales is currently the Assistant Director of Nursing at ASPC-Perryville, and is likely to testify regarding her knowledge of the ADC's | 2 | 1 | |

40

| | | | | |
|---|---|---|---|---|
| Elliot Road, Suite 220, Tempe, AZ 85284 | policies and procedures related to HNR processing and triage, scheduling of inmates on the nurse's and provider's lines, and response to medical emergencies. | | | |
| David Cresap **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | David Cresap is the current Director of Nursing at ASPC-Lewis, and is likely to testify regarding his knowledge of ADC's policies and procedures for delivery of health care to ADC's inmate population; including delivery of medication, triaging and scheduling inmates for medical appointments, and the methods of delivery of health care to populations with differing custody levels. | 2 | 1 | |
| Carl Bynum **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Carl Bynum is the Associate Medical Director for Corizon Health, and is expected to testify regarding Corizon's obligations under the Contract with ADC, Corizon's staffing, recruiting, policies, and the provision of medical health care to ADC's inmate population. | 2 | 1 | |
| Anthony Medel **(fact)** c/o Corizon | Anthony Medel is the current Facility Health Administrator at ASPC-Yuma and was formerly the Contract Monitor | 1 | 1 | |

41

| | Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | for ASPC-Yuma. Please see Exhibit Bates Numbered ADC123403-123407 for his credentials and qualifications. He is likely to testify regarding his knowledge of ADC's and Corizon's policies and procedures for delivery of health care to ADC's inmate population; and the day-to-day operation of health services at Yuma including delivery of medications and delivery of mental health care and dental care, and the overall delivery of healthcare to the inmates. Mr. Medel may testify regarding his former monitoring of policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; his current and former activities in evaluation of mental health services provided by Corizon, reporting on those services currently to the Corizon Regional Office and formerly with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance | | | |

42

| | | | | | |
|---|---|---|---|---|---|
| | | with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; his knowledge of Corizon's performance under the Contract with ADC, and information contained within MGAR Reports. | | | |
| | Jessica Raak **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Jessica Raak is the current Program Compliance Auditor III (mental health auditor) for ADC. Please see Exhibit Bates Numbered ADC123424-123425 for her credentials and qualifications. Ms. Raak will testify regarding policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; and her | 1 | 1 | |

| | | | | |
|---|---|---|---|---|
| | knowledge of Corizon's performance under the Contract with ADC. | | | |
| Jen Mielke-Fontaine **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Jen Mielke-Fontaine is the current Audit Nurse Contract Monitor, ASPC-Florence, for ADC. She is also a Contract Compliance Monitor II, ASPC-Florence.  Please see Exhibit Bates Numbered ADC123452-123453 for her credentials and qualifications. Ms. Mielke-Fontaine will testify regarding policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; and her knowledge of Corizon's performance under the Contract with ADC. | 1 | 1 | |
| Helena Valenzuel | Helena Valenzuela is the current | 1 | 1 | |

44

| | | | | |
|---|---|---|---|---|
| a **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Contract Monitor at ASPC Phoenix. Please see Exhibit Bates Numbered ADC123452-123453 for her credentials and qualifications. Ms. Valenzuela will testify regarding her monitoring of policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; and her knowledge of Corizon's performance under the Contract with ADC. Ms. Valenzuela will also testify regarding the medical care provided to Plaintiff Shawn Jensen and that the medical care was appropriate and within the applicable standard of care. She will further testify regarding specific allegations made by | | | |

| | | | | | |
|---|---|---|---|---|---|
| | | Mr. Jensen as it relates to his medical care in connection with his treatment for prostate cancer.  Ms. Valenzuela will also testify that Mr. Jensen's allegations are false, including his allegation that Nurse Carmona manipulated his Foley Catheter and caused his urethra to tear from the bladder neck.  She will testify that this is more likely caused by Mr. Jensen's attempts to pull out his catheter. She will also testify regarding her observations and knowledge of Mr. Jensen's manipulative behavior. | | | |
| | Sarah Cartwright **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Sarah Cartwright is the current Contractor Monitor at ASPC-Eyman for ADC.  Ms. Cartwright will testify regarding her monitoring of policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; his activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical | 1 | 1 | |

46

| | | | | | |
|---|---|---|---|---|---|
| | | data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; his knowledge of Corizon's performance under the Contract with ADC, and information contained within the MGAR Reports. | | | |
| | Terry Allred **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Terry Allred is the current Contract Monitor at ASPC-Lewis. Please see Exhibit Bates Numbered ADC123470-123471 for his credentials and qualifications. Mr. Allred will testify regarding his monitoring of policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; his activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; reviews for inmate grievance appeal responses and investigations; his knowledge of | 1 | 1 | |

| | | | | | |
|---|---|---|---|---|---|
| | | Corizon's performance under the Contract with ADC, and information contained within MGAR Reports. | | | |
| | Mark Haldane **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Mark Haldane is the current Contract Monitor at ASPC-Perryville. Please see Exhibit Bates Numbered ADC123419-123421 for his credentials and qualifications. Mr. Haldane will testify regarding his monitoring of policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; his activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; reviews for inmate grievance appeal responses and investigations; his knowledge of Corizon's performance under the Contract with ADC, and information contained within the MGAR Reports. | 1 | 1 | |
| | Marlena Bedoya | Marlena Bedoya is the current Contract | 1 | 1 | |

| | | | | |
|---|---|---|---|---|
| **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Monitor for ADC. Please see Exhibit Bates Numbered ADC123443-123446 for her credentials and qualifications. Ms. Bedoya will testify regarding her monitoring of policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; ensuring compliance with federal and state laws; clinical reviews for inmate grievance appeal responses and investigations; her knowledge of Corizon's performance under the Contract with ADC, and information contained within the MGAR Reports. | | | |
| Vanessa Headstream **(fact)** c/o Struck Wieneke & Love, P.L.C. | Vanessa Headstream is the current Health Services Coordinator (Nursing Monitor) for ADC. Please see Exhibit Bates Numbered ADC123478-123480 for her credentials and experience. Ms. | 2 | 1 | |

49

| | | | | |
|---|---|---|---|---|
| 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Headstream will testify regarding policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data; and her knowledge of Corizon's performance under the Contract with ADC. | | | |
| Yvonne Maese **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Yvonne Maese is the current Program Evaluation Specialist (audit nurse) for ADC. She is also currently the temporary Contract Compliance Monitor for ASPC-Eyman while Matthew Musson is on military leave. Please see Exhibit Bates Numbered ADC123481-123483 for her credentials and qualifications. Ms. Maese will testify regarding policies and procedures for provision of health care to ADC's inmate population; delivery of medication to inmates; delivery of | 2 | 1 | |

| | | | | | |
|---|---|---|---|---|---|
| | | mental health care and dental care; her activities in evaluation of mental health services provided by Corizon, reporting on those services with the monitoring MGAR reports; and monitoring and reviewing those services for patterns; compilation and analysis of statistical data;, random chart and medication monitoring, and ensuring performance guidelines are met in the clinical setting; and her knowledge of Corizon's performance under the Contract with ADC. | | | |
| | Julie Carter **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Ms. Carter is Corizon's Pharmacy Director and is expected to testify consistent with her deposition. She will also testify regarding Corizon's obligations under the Contract with ADC, PharmaCorr's services under its contract with Corizon, and the provision of medical and psychiatric medication to ADC's inmate population. | 1.5 | 1 | |
| | Jason Reese **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West | Mr. Reese is the Executive Consultant II for ADC's Health Services Monitoring Bureau.  He will testify regarding his personal knowledge of an analysis of Corizon's monthly, quarterly and ad hoc | 1.5 | 1 | |

51

| | | | | | |
|---|---|---|---|---|---|
| Ray Road, Suite 300, Chandler, AZ 85226 | statistical reporting under the ADC Contract as well as his personal knowledge of ADC's submissions to the federal government related to the Death in Custody Reporting Program. | | | | |
| Glen Babich **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Based upon his professional training, experience, and review of the chart volume for the thirteen named Plaintiffs, Dr. Babich may be called to testify regarding his clinical opinion, that since March 4, 2103, each of the litigants who were seen by a medical provider, as documented in the chart, received care that is in line with clinical best practice approaches.   Please see Exhibit Bates Numbered ADC229826-ADC229830 for his credentials and qualifications. Overall, clinicians used approaches that addressed documented diagnostic concerns.   Documentation in standard SOAP format included examination findings, treatment plan, and follow up plans.   Follow up was performed as deemed appropriate by the medical provider. | 1 | 1 | | |
| Shawn Jensen **(fact)** c/o ACLU | Shawn Jensen is a Plaintiff in this matter.   Mr. Jensen is likely to have | | 4* 1-2* | | |

52

| | | | | |
|---|---|---|---|---|
| Foundation of Arizona 3707 North 7th Street, Suite 235 Phoenix, Arizona 85013 | discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history. | | for Ps | |
| Stephen Swartz (fact) c/o ACLU Foundation of Arizona 3707 North 7th Street, Suite 235 Phoenix, Arizona 85013 | Stephen Swartz is a Plaintiff in this matter.  Mr. Swartz is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history. | | 4* 1-2* for Ps | |
| Dustin Brislan (fact) c/o ACLU Foundation of Arizona 3707 North 7th Street, Suite 235 Phoenix, Arizona 85013 | Dustin Brislan is a Plaintiff in this matter.  Mr. Brislan is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history. | | 4* 1-2* for Ps | |
| Sonia Rodriguez (fact) c/o ACLU Foundation of | Sonia Rodriguez is a Plaintiff in this matter. Ms. Rodriguez is likely to have discoverable information with regard to | | 3* 1-2* for | |

| | | | | |
|---|---|---|---|---|
| Arizona 3707 North 7th Street, Suite 235 Phoenix, Arizona 85013 | the allegations in the Complaint and her medical, dental, mental health, social, educational, criminal and institutional history. | | Ps | |
| Christina Verduzco **(fact)** c/o ACLU Foundation of Arizona 3707 North 7th Street, Suite 235 Phoenix, Arizona 85013 | Christina Verduzco is a Plaintiff in this matter.  Ms. Verduzco is likely to have discoverable information with regard to the allegations in the Complaint and her medical, dental, mental health, social, educational, criminal and institutional history. | | 2* 1-2* for Ps | |
| Jackie Thomas **(fact)** c/o ACLU Foundation of Arizona 3707 North 7th Street, Suite 235 Phoenix, Arizona 85013 | Jackie Thomas is a Plaintiff in this matter.  Mr. Thomas is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history. | | 4* 1-2* for Ps | |
| Jeremy Smith **(fact)** c/o ACLU Foundation of Arizona 3707 | Jeremy Smith is a Plaintiff in this matter.  Mr. Smith is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, | | 3* 1-2* for Ps | |

54

| | | | | |
|---|---|---|---|---|
| North 7th Street, Suite 235 Phoenix, Arizona 85013 | educational, criminal and institutional history. | | | |
| Robert Gamez **(fact)** c/o ACLU Foundation of Arizona 3707 North 7th Street, Suite 235 Phoenix, Arizona 85013 | Robert Gamez is a Plaintiff in this matter. Mr. Gamez is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history. | | 4* 1-2* for Ps | |
| Maryanne Chisholm **(fact)** c/o ACLU Foundation of Arizona 3707 North 7th Street, Suite 235 Phoenix, Arizona 85013 | Maryanne Chisholm is a Plaintiff in this matter. Ms. Chisholm is likely to have discoverable information with regard to the allegations in the Complaint and her medical, dental, mental health, social, educational, criminal and institutional history. | | 4* 1-2* for Ps | |
| Desiree Licci **(fact)** c/o ACLU Foundation of Arizona 3707 North 7th Street, | Desiree Licci is a Plaintiff in this matter. Ms. Licci is likely to have discoverable information with regard to the allegations in the Complaint and her medical, dental, mental health, social, educational, criminal and institutional | | 4* 1-2* for Ps | |

55

| | | | | |
|---|---|---|---|---|
| 1<br>2<br>3 | Suite 235<br>Phoenix,<br>Arizona<br>85013 | history. | | | |
| 4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12 | Joseph<br>Hefner<br>**(fact)**<br>c/o ACLU<br>Foundatio<br>n of<br>Arizona<br>3707<br>North 7th<br>Street,<br>Suite 235<br>Phoenix,<br>Arizona<br>85013 | Joseph Hefner is a Plaintiff in this matter.  Mr. Hefner is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history. | 4*<br>1-2*<br>for<br>Ps | |
| 13<br>14<br>15<br>16<br>17<br>18<br>19<br>20 | Joshua<br>Polson<br>**(fact)**<br>c/o ACLU<br>Foundatio<br>n of<br>Arizona<br>3707<br>North 7th<br>Street,<br>Suite 235<br>Phoenix,<br>Arizona<br>85013 | Joshua Polson is a Plaintiff in this matter.  Mr. Polson is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history. | 2*<br>1-2*<br>for<br>Ps | |
| 21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | Charlotte<br>Wells<br>**(fact)**<br>c/o ACLU<br>Foundatio<br>n of<br>Arizona<br>3707<br>North 7th<br>Street,<br>Suite 235<br>Phoenix, | Charlotte Wells is a Plaintiff in this matter.  Ms. Wells is likely to have discoverable information with regard to the allegations in the Complaint and her medical, dental, mental health, social, educational, criminal and institutional history. | 4*<br>1-2*<br>for<br>Ps | |

| | | | | |
|---|---|---|---|---|
| Arizona 85013 | | | | |
| Vicente O. Enciso **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | In addition to the expected testimony listed below, Dr. Ensico is expected to testify as to his interactions with, knowledge of and medical treatment provided to Plaintiffs Desiree Licci, Maryanne Chisholm, and Charlotte Wells. | 1 | 1 | |
| Peter Bishop **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | In addition to the expected testimony listed below, Dr. Bishop will testify regarding requests for specific medications made by Plaintiff Jackie Thomas and the reasons for withholding or prescribing certain medications. He will also testify regarding Plaintiff Thomas's abuse, misuse, and attempted overdose of various medications. | 45 mins. | 30 mins. | |
| Thomas Bell **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | In addition to the expected testimony listed below, Dr. Bell will testify regarding the medical treatment provided to Plaintiff Stephen Swartz. He will also testify regarding the numerous occasions where Mr. Swartz has swallowed foreign objects such as springs, paperclips and wire and the medical treatment that followed as a | 45 mins. | 30 mins. | |

57

| | | | | |
|---|---|---|---|---|
| | | result.  He will testify that the medical treatment provided to Mr. Swartz after these incidents was appropriate and within the applicable standard of care. | | |
| | John St. Clair **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | In addition to the expected testimony listed below, Dr. St. Clair is expected to testify as to the mental health treatment available and provided to the inmates housed at ASPC-Perryville, including Plaintiffs Christina Verduzco, Sonia Rodriguez and Maryanne Chisholm.  He is also expected to testify regarding the programs, medication prescriptions and administration for mental health services at ASPC-Perryville.   Dr. St. Clair is expected to testify that the mental health treatment available and provided to the inmates is appropriate and within the applicable standard of care. Specifically, he will testify regarding his treatment of Plaintiff Verduzco and that the treatment he provided was appropriate and within the applicable standard of care.  He will testify that during his March 14, 2014 encounter with Verduzco, he assessed and determine the level of watch she needed | 1 | 1 |

| | | | | | |
|---|---|---|---|---|---|
| | | pursuant to a clinical assessment. [ADC263149]. He will also testify that this same day, he conducted a cell front visit checklist where he noted that Verduzco engaged in the session with more interest than previous sessions and that they spoke about her hallucinations and her goals. He will also testify that during this encounter, Verduzco denied any current DTS/DTO. [ADC263148] He will also testify that during a March 14, 2014 cell-front check, he noted that Verduzco was showing improvement in stability and that there were no signs of DTS /DTO ideation reported. As a result, he removed Verduzo from 10 min. watch. [ADC263144]. Further, he will testify that on March 17, 2014 he conducted a cell-front visit with Verduzco. During this visit, he noted that Verduzo had a complete thought process and that they spoke about her goals and anger. He will testify that as a result of this encounter, and Verduzco's progress, he removed her from watch. [ADC263145]. | | | |
| | Dale Lee Palmer | In addition to the expected testimony | 1 | 1 | |

59

| | | | | |
|---|---|---|---|---|
| **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | listed below, Dr. Palmer is expected to testify regarding the medical care provided to the inmates housed at ASPC-Perryville and that such medical care is appropriate and within the applicable standard of care. Specifically, Dr. Palmer is expected to testify regarding the medical care, including referrals to outside medical providers, on-site medical appointments and medication prescription and administration for Plaintiffs Maryanne Chisholm and Charlotte Wells. | | | |
| Jacqueline Worsley **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | In addition to the expected testimony listed below, Dr. Worsley is expected to testify regarding the mental health treatment provided to inmates at ASPC-Phoenix.  Specifically, Dr. Worsley is expected to testify as to the treatment she provided to Plaintiff Dustin Brislan and that the treatment was appropriate and within the applicable standard of care. | 30 mins. | 30 mins. | |
| Michael F. Cleary **(fact)** c/o Corizon Health 950 W. | In addition to the expected testimony listed below, Dr. Cleary is expected to testify regarding the mental health treatment provided to inmates at ASPC- | 30 mins. | 30 mins. | |

| | | | | |
|---|---|---|---|---|
| Elliot Road, Suite 220, Tempe, AZ 85284 | Phoenix. Specifically, Dr. Cleary is expected to testify as to the treatment he provided to Plaintiff Dustin Brislan and that the treatment was appropriate and within the applicable standard of care. | | | |
| Jeffrey Sharp **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Sharp is a medical doctor at ASPC-Perryville. In addition to the testimony outlined below, he will also testify regarding his treatment of Plaintiff Wells' cardiac issues. Specifically, he will testify that on October 16, 2013, he submitted an outside consult request for a cardiology follow-up. [ADC227820; ADC263204]. Additionally, Sharp will testify regarding his treatment of Plaintiff Rodriguez and that the treatment he provided to her was appropriate and within the standard of care. Specifically, Sharp will testify regarding his treatment of Plaintiff Rodriguez. Specifically, he will testify that on February 1, 2014 she received an Albuterol inhaler and prescription through June 3, 2014. [ADC263066]. Sharp will testify that in February and March 2014, Rodriguez received her Albuterol medication. | 1 | 1 | |

[ADC263066, ADC263062].

He will also testify that on December 9, 2013, he reviewed Rodriguez's labs (CBC, Estrogen levels, FSH/LH Panel, PT/INR, CA 125, TSH, & VB12, FOL PANE) from November 27, 2013 and all looked appropriate. [ADC22756; ADC227585-587]. Additionally, he will testify that in March 2014, Rodriguez received the following mental health medications: Geodon, Cogentin, and Prolixin. [ADC263062; ADC263062; ADC263062]. He will testify that all treatment he provided to Rodriguez was appropriate and within the applicable standard of care.

Sharp will also testify regarding his treatment of Plaintiff Verduzco's asthma. Specifically, he will testify that on January 15, 2014, Verduzco received an Albuterol inhaler and that the prescription was good through August 15, 2014. [ADC263130 ADC263125 ADC232253]. He will further testify that she received additional Albuterol inhalers on February 1, 2014; March 1, 2014; and March 13, 2014; and April 1,

| | | | | | |
|---|---|---|---|---|---|
| | | 2014.   [ADC263165,   ADC263161, ADC263167,   ADC263159]. Additionally, he will testify that on March 13, 2014; March 20, 2014; April 7, 2014 Verduzco received Alvesco to treat her asthma condition. [ADC263159].<br><br>In addition to the medications Verduzco received for her asthma condition, Dr. Sharp will also testify that on March 13, 2014, he saw Verduzco for a chronic care follow up regarding her asthma. [ADC263124].<br><br>Sharp will also testify regarding his review of Plaintiff Rodriguez's medical records.  Specifically, he will testify that on December 9, 2013, he reviewed Rodriguez's labs from November 27, 2013 and all looked okay.  [ADC22756; ADC227585-587]. | | | |
| | Ronald Schwartz **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | In addition to the expected testimony described below, Schwartz will testify regarding his treatment of Plaintiff Rodriguez.  He will testify that his treatment of Rodriguez was appropriate and within the applicable standards of care.  Specifically, he will testify that on | 1 | 1 | |

63

November 13, 2013 he treated Rodriguez. During this encounter, he noted that her focus was better, but that her medication was ineffective because she was still feeling depressed (although she reported less anxiety). She reported that her Geodon medication was helping with anxiety, but not her mood. Schwartz advised Rodriguez to shift away from inappropriate and excessive use of the HNR process. [ADC227629]. Schwartz will also testify regarding his February 26, 2014 encounter with Rodriguez. During this encounter, Schwartz discussed medication changes with Rodriguez and noted that she was confused about what medications she has been on previously. [ADC263053]. Schwartz will also testify regarding Rodriguez's medication regimen. He will testify that in October 2013, November 2013, February 2014, March 2014, and April 2014 Rodriguez received Geodon. [ADC263072, ADC263074, ADC263062, ADC263066, ADC263074]. He will also testify that in October 2013,

February 2014, March 2014, and April 2014, Rodriguez received Prozac. [ADC263072, ADC263073, ADC263063, ADC263065, ADC263064, ADC263070. He will also testify that in October 2013, February 2014, March 2014, and April 2014, Rodriguez received Buspar. [ADC263072, ADC26073, ADC263063, ADC263061, ADC263073, ADC263065, ADC263073, ADC263061, ADC263063, ADC263072]. He will also testify that in February 2014, March 2014, and April 2014 Rodriguez received Congentin. [ADC263072, ADC263073, ADC263061, ADC263073, ADC263064]. He will also testify that in February and March 2014, Rodriguez received Haldol injections. [ADC263063; ADC263074; ADC263065]. He will also testify that in April 2014, Rodriguez received a Prolixin injection. [ADC263072].

Additionally, Schwartz will testify regarding the mental health treatment he provided to Plaintiff Verduzco.

| | | | | |
|---|---|---|---|---|
| | Specifically, he will testify regarding Verduzco's medication regimen and prescriptions he provided her.  He will testify that the prescriptions he prescribed to Verduzco were appropriate and within the applicable standard of care.  Specifically, He will testify to her medication regimen from October 2013- April 2014.  These medications include: Divalproex, Depakote, Cogentin, Haldol, Fluoxetine, and Haloperidol. [ADC256942, ADC256943, ADC256943, ADC256943, ADC263132, ADC263127 ADC263169, ADC232255, ADC263132, ADC263127, ADC263168, ADC232254, ADC263131, ADC263126, ADC263168, ADC232253, ADC263133, ADC263128, ADC263169, ADC232255, ADC263132, ADC263127, ADC263168, ADC232254, ADC263132, ADC263127, ADC263169, ADC232255, ADC263133, ADC263128, ADC263169, ADC232255, ADC263153, | | | |

| | | | | |
|---|---|---|---|---|
| | ADC263131,                     ADC263126, ADC263167,                     ADC23225,3 ADC198519]. Dr. Schwartz will also testify regarding Verduzco's treatment plan and that all treatment he provided to Verduzco was appropriate and within the applicable standard of care.   He will testify regarding his March 5, 2014 exam of Verduzco where he conducted an abnormal involuntary movement scale to determine whether she was experiencing any neurological issues as a result of the medication she was prescribed. [ADC263153, ADC263152].   He will also testify the results of the exam indicated she had no neurological issues as a result of her medication regimen. | | | |
| Ruth Tenrreiro **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | In addition to the expected testimony listed below, Dr. Tenrreiro is expected to testify regarding the mental health treatment provided to inmates. Specifically, Dr. Tenrreiro is expected to testify as to the treatment she provided to   Plaintiffs   Gamez   and   Polson regarding their mental health conditions. She  will  testify  that  the  treatment  she | 45 mins. | 30 mins. | |

provided was appropriate and within the applicable standard of care. Specifically, she will testify that on October 4, 2013, she treated Gamez. [ADC222239.] During this encounter, Gamez was on a ten minute suicide watch, but stated he was "doing better now" and was "just having a bad day yesterday." She will additionally testify that Gamez stated he might consider taking medications. Additionally, Tenrreiro will testify that she saw Gamez on October 11, 2013 during a one-on-one cell front visit. [ADC222233]. During this encounter, she will testify that he denied taking medications but acknowledged he has a medication appointment next Tuesday. He also requested pencil and paper to write to his attorneys.

Additionally, she will testify that she treated Polson on February 26, 2014 during a one-on-one encounter at Polson's cell. During this encounter, Tenrreiro will testify that Polson complained of being depressed and inquired into why he was being pulled out of the mental health program.

| | | | | | |
|---|---|---|---|---|---|
| | | [ADC263410]. Tenrreiro saw Polson again on March 5, 2014. Polson expressed frustration with his attempts to get Wellbutrin. He also reported a loss of appetite. He expressed interest in obtaining a job. After this encounter, Tenrreiro inquired with the Sergeant regarding assigning Polson a job and referred Polson to the next available psychiatry line to address his medication concerns. [ADC263409]. | | | |
| | Laura Hale **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | In addition to the expected testimony listed below, Dr. Hale is a dentist employed by Smallwood Prison Dentistry and is assigned to ASPC–Lewis. Dr. Hale will specifically testify regarding the dental treatment provided to Plaintiff Joshua Polson. She will testify regarding the dental procedures and work she performed on Mr. Polson's dentures on several different occasions. | 1 | 1 | |
| | Deanna McGowan **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, | In addition to the expected testimony listed below, Nurse McGowan is expected to testify regarding her interactions with Plaintiff Jackie Thomas. Specifically, she will testify regarding the programming and group | 30 mins. | 30 mins. | |

| | | | | |
|---|---|---|---|---|
| Tempe, AZ 85284 | therapy he is currently involved in and the improvements she has seen in his condition as a result. | | | |
| Jodie Clark **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | In addition to the expected testimony listed below, Clark will testify regarding her response to Plaintiff Polson's HNR dated November 23, 2013. [ADC232170] Specifically, she will testify that on November 23, 2013, Polson submitted an HNR stating he was involved in the Parsons v. Ryan case. Clark will testify that although he requested to be seen about his "medication" and "by dental" he did not specify what problem he was having. In response, Clark will testify that she advised Polson that he received all his KOP medications for that month and that she had referred him to psych regarding medication changes. [ADC232170] | 30 mins. | 30 mins. | |
| Kellie Rogers **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, | In addition to the expected testimony listed below, Ms. Rogers is likely to testify regarding her knowledge of ADC's policies and procedures for delivery of health care to ADC's inmate population; including delivery of | 45 mins. | 30 mins. | |

| | | | | |
|---|---|---|---|---|
| Tempe, AZ 85284 | medications, delivery of mental health care and dental care, and the day-to-day operation of health services at Yuma. Ms. Rogers is also expected to testify regarding the scheduling of health care appointments and Yuma's recent implementation of the Care Log system which electronically tracks and schedules follow up appointments for inmates with chronic care conditions, and the overall delivery of healthcare to the inmates. | | | |
| Michele Epstein **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Dr. Epstein is a psychiatrist at ASPC-Yuma.  Dr. Epstein is expected to testify regarding the mental health treatment provided to inmates at ASPC-Yuma. | 30 mins. | 30 mins. | |
| Karen Chu **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Karen Chu is the current HS Contract Monitoring Bureau, Quality/Clinical, Dental Program Manager.  Please see Exhibit Bates Numbered ADC123434 for her credentials and qualifications.  Dr. Chu is likely to have discoverable information regarding ADC's policies | 30 mins. | 30 mins. | |

| | | | | |
|---|---|---|---|---|
| | | and procedures related to provision of dental care to the ADC inmate population; her knowledge of Plaintiffs' dental health needs;; as well as the provision of adequate care to ADC inmates in compliance with constitutional requirements; her activities in the review and analysis of dental services provided to ADC's inmate population, review and analysis of inmate charts, and response to inquiries from monitoring staff regarding appropriateness of dental services, practices and protocols. | | |
| | Karen Mansfield-Blair **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Dr. Mansfield-Blair is a Psychologist at ASPC-Perryville. She will testify regarding her treatment of Chisholm's mental health conditions and that the treatment she provided was appropriate and within the applicable standard of care. Specifically, she will testify that on January 13, 2014, she conducted a chart review of Chisholm's mental health chart and developed a new treatment plan. [ADC229735; ADC262625]. | 30 mins. | 30 mins. | |
| | John Keck **(fact)** | Mr. Keck is a Certified Nurse | 45 | 30 | |

| | | | | |
|---|---|---|---|---|
| c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Practitioner at ASPC-Perryville.  He will testify regarding his treatment of Chisholm's mental health conditions as well as to her medication regimen.  He will testify that the treatment he provided was appropriate and within the applicable standard of care. Specifically, Mr. Keck will testify that on October 8, 2013, he saw Chisholm one-on-one for a psychiatric follow up.    During this encounter, Chisholm advised that she stopped taking Lamictal because she was concerned about the symptoms.   Later during the encounter, however, Chisholm stated she would like to start Lamictal.  Mr. Keck also suggested she start on Prazosin.  Chisholm was started on both. [ ADC229742; ADC229682 ].  Mr. Keck will testify that Chisholm signed an informed consent form for the Prazosin.  [ADC229743]. Additionally, Mr. Keck will testify that in October 2013 Chisholm received Prozac and Buspar.  [ADC229682].  In December 2013, Chisholm received Lamictal.  [ADC229678]. Mr. Keck will also testify regarding his | mins. | mins. | |

| | | | | | |
|---|---|---|---|---|---|
| | | encounter with Chisholm on January 9, 2014 when he saw her for a psychiatric follow-up. [ ADC229736; ADC262627]. During this encounter, Chisholm stated she wanted to discontinue her Lamictal medication, but remain on Prozac, Busbar, and Prazosin.  A follow up was scheduled for 6-8 weeks.   Keck will testify that in January 2014, Chisholm received Buspar, Prazosin, and Prozac. [ADC229680]. Finally, Mr. Keck will testify that he saw Chisholm on April 1, 2014 for a psychiatric follow-up because Chisholm was not taking her medications as prescribed.   [ADC262626].   Chisholm stated she wanted to restart her Lamictal due to increased depression.  Mr. Keck will testify that as a result, he re-started Chisholm on Lamictal and scheduled a follow-up for 6-8 weeks.  [ADC262626]. | | | |
| | Brandi Ramey **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, | Ms. Ramey is a licensed practical nurse at ASPC-Perryville.   She will testify regarding   numerous   refusals   she witnessed Chisholm sign.  Specifically, she will testify that Chisholm refused her Lamictal medication every day from | 45 mins. | 30 mins. | |

| | | | | |
|---|---|---|---|---|
| Tempe, AZ 85284 | January 2, 2014 – January 6, 2014. [ADC229737   ADC262628; ADC262632; ADC229740 ADC262631; ADC229739 ADC262630; ADC229738 ADC262629]. | | | |
| A. Nunn **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Nurse Nunn was a registered nurse at ASPC-Perryville.   She will testify regarding her contacts with Plaintiff Chisholm.  Specifically, she will testify that on November 12, 2013, she witnessed Chisholm sign a refusal to submit to treatment after Chisholm refused to be seen for her chronic care visit.  [ADC229705]. | 15 mins. | 30 mins. | |
| Pridhvi Yelamanchill **(fact)** Cardia Arrhythrmic Institute 10238   E Hampton Ave, Mesa,  AZ 85209 | Dr. Yelamanchill is a medical doctor at the   Cardica   Arrhythrmic   Institute ("CAI").   He will testify regarding his treatment of Plaintiff Wells' cardiac issues.   Specifically, he will testify regarding his March 13, 2014 encounter with Wells.  On March 13, 2014, Wells was seen at CAI for evaluation of chest pain.   [ADC263181 - ADC263183; ADC263203] It was recommended that she   proceed   with   stress   testing, echocardiogram and follow up. He also recommended  a  venous  ultrasound  of | 45 mins. | 30 mins. | |

| | | | | | |
|---|---|---|---|---|---|
| | | her lower extremities to evaluate for any varicose veins and venous insufficiency that were causing her leg pains. He discussed with Plaintiff Wells blood pressure management by increasing the dose of ACE inhibitor. Nitroglycerin was also recommended as needed for her chest pain and to continue aspirin and Plavix. | | | |
| | Bertram Hurowitz **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Dr. Hurowitz is a medical doctor at ASPC-Perryville.   He will testify regarding his treatment of Plaintiff Wells' cardiac issues and that the treatment he provided was appropriate and within the standard of care. Specifically, he will testify that on March 14, 2014 and March 25, 2014 he submitted a consult request for Wells to have a stress and echo test. [ADC263203;         ADC263179]. Additionally, he will testify that on March 25, 2014, he saw Wells for a chronic care follow-up and she reported no chest pain.  [ADC263175]. | 45 mins. | 30 mins. | |
| | Alicia Zavala **(fact)** c/o Corizon | Ms. Zavala is a nurse practitioner at ASPC-Perryville.   She will testify regarding her medical treatment of | 30 mins. | 30 mins. | |

76

| | | | | |
|---|---|---|---|---|
| Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Plaintiff Wells and that the treatment she provided was appropriate and within the standard of care.  Specifically, she will testify that on February 25, 2014, she saw Wells for a follow-up regarding her complaints of shortness of breath. Plaintiff Wells denied any shortness of breath or chest pain at this visit. Her lungs were clear, gait was normal and her speech was normal.  [ADC263176]. | | | |
| Kamal Rastogi **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Dr. Rastogi is a medical doctor at ASPC-Eyman.  He will testify regarding his treatment of Plaintiff Smith's mental health condition**s**.  He will testify that the treatment he provided to Smith was appropriate and within the standard of care.    Specifically,  he  will  testify regarding Smith's medication regimen. For example, Dr. Rastogi will testify that on November 13, 2013, he saw Smith for  a  psychiatric  follow  up. [ADC227994].   Smith advised he had previously taken Lithium with good results.   Dr. Rastogi prescribed Smith 300 mg of Lithium at bedtime and scheduled a follow-up for 4-8 weeks. [ADC227994; ADC227927]. | 45 mins. | 30 mins. | |

Dr. Rastogi will also testify that he saw Plaintiff Smith on January 24, 2014. [ADC227989].   During this encounter Smith complained that lithium upsets his stomach and that he has been refusing it. Dr. Rastogi kept Smith on the Lithium, but also prescribed him Paxil. [ADC227926].     Smith signed an informed consent form for the Paxil. [ADC227991].

Additionally, Dr. Rastogi will testify regarding his treatment of Plaintiff Polson's mental health conditions as well as to his medication regimen.  He will testify that the treatment he provided to Polson was appropriate and within the applicable standard of care. Specifically, he will testify that he saw Polson one-on-one on October 31, 2013. At this time, he was not taking his medications as prescribed and had not taken his medication for the prior three weeks.  Dr. Rastogi will also testify that on October 31, 2013, she discontinued his Lithium prescription.  [ADC232145] Dr. Rastogi will testify that she saw Polson again, one-on-one, on December

11, 2013. [ADC232195] Again, he was not taking his medications as prescribed. Dr. Rastogi will also testify that in February and March 2014, Polson was receiving Mirtazaphine. [ADC263418-19; ADC263388; ADC232234; ADC263045; ADC263416 ]. Dr. Rastogi will testify that Polson signed an informed consent for this medication on February 11, 2014. [ADC263412]. Dr. Rastogi will also testify that on February 11, 2014, he saw Polson one-on-one. [ADc263412]. His treatment was discussed and a follow-up with the Psychiatric Nurse and Psychiatric MHNP was scheduled.

Additionally, he will testify that on March 19, 2014, he saw Polson one-on-one. [ADC263407]. Polson was taking his medications as prescribed and reported no side effects. He will further testify that they discussed treatment options, potential risks, and benefits. At this time, Dr. Rastogi will testify that he discontinued Polson's Mirtazaphine and prescribed Wellbutrin 100 mg twice a day for 180 days after Polson advised

| | | | | | |
|---|---|---|---|---|---|
| | | him that Wellbutrin was the only medication that worked for him on the streets. [ADC263388; ADC263408]. Dr. Rastogi will testify that he placed a non-formulary drug request for Wellbutrin on March 19, 2014. [ADC263408]. He will also testify that in March and April 2014 Polson received his Wellbutrin medications. [ADC263388, ADC263045]. Dr. Rastogi will also testify regarding Plaintiff Thomas' medication regimen and the changes he made to Thomas' prescriptions. He will testify that any changes he made to Thomas' medication were appropriate and within the applicable standard of care. Specifically, he will testify that on March 14, 2014, he increased Thomas' Paxil dosage and prescribed Thomas Cogentin. [ADC263423]. | | | |
| | Eliza Homer **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, | Ms. Homer is a Psych Associate at ASPC-Eyman and will testify regarding her treatment of Plaintiff Smith's mental health conditions. She will testify that the treatment she provided to Smith was appropriate and within the standard of | 45 mins. | 30 mins. | |

| | |
|---|---|
| Tempe, AZ 85284 | care. Specifically, he will testify that he saw Plaintiff Smith on December 20, 2013, one-one-one, cell-front. [ADC227992]. Ms. Homer will testify that Smith inquired into his mental health score and voiced interest in participating in groups. Plaintiff Smith expressed concern that his mental health score would inhibit inclusion into these groups. Homer will testify that he noted he would follow up to determine what Smith's mental health score was. |

Additionally, Ms. Homer will testify regarding his treatment of Plaintiff Polson's mental health issues. Specifically, he will testify to the following encounters he had with Polson. On December 11, 2013, Ms. Homer saw Polson one-on-one. During this encounter, Polson exercised good concentration and his thought structure was normal. He presented within normal limits. He expressed interest in participating in group programming and advised he had completed the PTSD and anger courses. [ADC232193]. On December 30, 2013, Ms. Homer saw

| | | | | |
|---|---|---|---|---|
| | | Polson one-on-one. During this encounter, Polson denied any suicidal or homicidal ideations and presented within normal limits. He requested a change in his medication. Ms. Homer noted he had just been seen by Dr. Rastogi on Decemeber 11, 2013. Polson also expressed interested in having a cellmate and obtaining a job. [ADC232194].<br><br>On February 4, 2014, Ms. Homer saw Polson one-on-one. He was alert, logical, and in a good mood. He expressed dissatisfaction with his medications and stated he had not had medications since December 11, 2013. Ms. Homer noted he would check to ensure Polson was on the psych line. [ADC263415]. | | |
| | Theodore Carter **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Mr. Carter is a Psych Associate at ASPC-Eyman. He will testify regarding his mental health treatment of Plaintiff Gamez and that the treatment he provided was appropriate and within the standard of care. Specifically, he will testify that on October 7, 2013, he saw Gamez while he was on mental health watch. [ADC222231]. During this | 45 mins. | 30 mins. | |

encounter, Mr. Carter will testify that Gamez presented as stable and articulate and that he reported he was doing well and denied any current mental health problems. [ADC222237]. He will also testify that on October 11, 2013, he discontinued Gamez's 30 minute mental health watch. [ADC222231].

Mr. Carter will also testify that on October 21, 2013, he saw Plaintiff Gamez while Gamez attended a session of anger management. [ADC222230]. During this encounter, they discussed the difference between aggression and assertiveness.

Mr. Carter saw Gamez again on October 28, 2013 while Gamez attended another anger management session. [ADC222229]. They discussed anger triggers and a recent event that escalated Gamez's anger to an "8". Mr. Carter noted that Gamez was functioning better and scheduled a follow-up for November 4, 2013.

On February 10, 2014, Mr. Carter saw Gamez again for a mental health follow up. [ADC262711]. Gamez talked about

writing his memoir and exercising.  Mr. Carter will also testify that Gamez discussed first noticing depression at age nine. Mr. Carter noted that Gamez was not ready for mental health groups due to his history of staff assault and verbal inmate altercation which is what occurred when Gamez was given the opportunity to participate in the mental health pod.  Mr. Carter will also testify that he noted Gamez would be seen appropriately every two weeks and that their discussions would focus on anger management and depression.  Finally, during this session, Mr. Carter will testify that he educated Gamez on thought logic and irrational thinking. [ADC262711].

Finally, Mr. Carter will testify that he saw Gamez on March 11, 2014. [ADC262779, ADC262707].   During this encounter, Gamez reported that he was doing well and that he was currently taking Effexor. Mr. Carter will testify that Gamez expressed desire to move to a yard and engage in activities and possible employment.

| | | | | |
|---|---|---|---|---|
| Lynn Flowers **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Dr. Flowers is a Psychologist at ASPC-Eyman.  He will testify regarding his mental health treatment of Plaintiff Gamez.  He will testify that the treatment he provided to Gamez was appropriate and within the standard of care.  Specifically, he will testify that on February 18, 2014, he saw Gamez one-one.  [ADC262709].  During this encounter, Gamez stated that he has anxiety and severe depression. He stated his medications were discontinued several months ago because they did not help him and he was having side effects. He complained that the correctional officers make up evidence and that he was sentenced for a crime he did not commit.  Dr. Flowers will further testify that, during this encounter, he discussed coping strategies and anger management with Gamez.  Moreover, he updated Gamez's treatment plan, referred him to psychiatry, and scheduled a one month follow-up. | 45 mins. | 30 mins. | |
| Joan Butler **(fact)** c/o Corizon | Ms. Butler is a mental health nurse practitioner at ASPC- Eyman.  She will testify regarding her treatment of | 45 mins. | 30 mins. | |

| | | | | |
|---|---|---|---|---|
| Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Gamez's mental health conditions and that the treatment she provided was appropriate and within the standard of care. Specifically, she will testify that on March 13, 2014, Gamez reported that his Vistaril medication made him distracted and angry. [ADC262708]. He requested that it be discontinued. Ms. Butler will also testify that she saw Gamez on April 8, 2014 for a follow-up. [ADC262778]. During this encounter, he denied suicidal thoughts or psychosis. | | | |
| Ralph Mertens **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Dr. Mertens is a Psychologist at ASPC-Eyman. He will testify regarding his treatment of Plaintiff Gamez's mental health conditions and that the treatment he provided was appropriate and within the standard of care. Specifically, he will testify that on October 8, 2013, he treated Gamez while he was on a 30 minute mental health watch. During this encounter, Gamez stated he had had a bad day and threatened to hurt himself, but that he was feeling better now and was stable. [ADC222236]. He voiced intentions to submit an HNR regarding his medications. Dr. Mertens will also | 45 mins. | 30 mins. | |

| | | | | | |
|---|---|---|---|---|---|
| | | testify regarding his one-on-one encounter with Gamez on October 9, 2013. [ADC222235]. Gamez described himself as good and ready to come off of watch. Dr. Martens referred Gamez to the psychiatrist line. Finally, Dr. Mertens will testify regarding his one-on-one encounter with Gamez on October 10, 2013. During this encounter, Dr. Mertens will testify that Gamez stated he was feeling much better and that he claimed "I have a bunch of legal paperwork I have to do." [ADC222234]. | | | |
| | Thomas Rawa **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Dr. Rawa is a psychiatrist at ASPC-Eyman. He will testify regarding prescriptions he prescribed to Plaintiff Polson and that all prescriptions were appropriately prescribed and within the standard of care. He will testify that he prescribed Polson with Lithium and that Polson received his lithium medications in October and November 2013. [ADC232157; ADC232155]. | 30 mins. | 30 mins. | |
| | Todd McHaney **(fact)** c/o Corizon | Dr. McHaney is a dentist as ASPC-Eyman. He will testify regarding his treatment of Polson's dental issues and | 30 mins. | 30 mins. | |

| | | | | |
|---|---|---|---|---|
| Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | that the treatment he provided was appropriate and within the standard of care. Specifically, he will testify that on January 2, 2014, he treated Polson after Polson complained he was unable to chew his food with his partial. [ADC232147; ADC263393; ADC232146]. Dr. McHaney will testify that because Polson failed to bring the partial to the appointment, he was unable to adjust/evaluate his ability to use his partial. During this encounter, he also placed a restrictive diet order for Polson for a chopped fine diet. [ADC232162]. | | | |
| Shari Castle **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Ms. Castle is a licensed practical nurse at ASPC-Eyman. She will testify regarding her treatment of Plaintiff Polson's asthma and that all treatment she provided was appropriate and within the standard of care. She will testify that on March 9, 2014, Polson was brought to medical after he complained of exacerbated asthma after playing basketball the following day. [ADC263390. She noted a Peak flow 350 SVN was started and a SVN twice a day for three days as needed was | 30 mins. | 30 mins. | |

| | | | | | |
|---|---|---|---|---|---|
| | | prescribed to Polson. Nurse Castle will also testify that she scheduled him to be seen on nurse's line the next day. | | | |
| | Kel Lee Harling **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Dr. Harling is a dentist at ASPC-Eyman. He will testify regarding his treatment of Polson's dental issues and that the treatment he provided was appropriate and within the standard of care. Specifically, he will testify that he treated Polson on January 22, 2014 after Polson submitted an HNR complaining that his partials were hurting. [ADC263392] Dr. Harling will testify that during his exam, he determined that Polson's partials fit adequately. [ADC263392-93   ADC232147]. Dr. Harling will testify he was unable to identify sore spots because Polson had not been wearing the partials. Dr. Harling will also testify that he advised Polson to wear them before the appointment so Dr. Harling could see where the spots were. Dr. Harling also noted that Polson's oral hygiene was poor and that his partials were very dirty. Dr. Harling will testify that he advised Polson to brush twice a day and | 45 mins. | 30 mins. | |

| | | | | | |
|---|---|---|---|---|---|
| | | also floss.   Dr. Harling   noted that Polson was not brushing at night. | | | |
| | Josephone Bracamonte **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Ms. Bracamonte is a Dental Assistant at ASPC-Eyman.   She will testify that on November 6, 2013, she responded to an HNR Polson submitted on November 2, 2013.    In the HNR, Polson requested renewal of his dental mechanical soft diet.   Ms. Bracamonte responded and advised Polson that as of October 9, 2013, he was on a waiting list for an evaluation.   She also advised him that his diet cannot be renewed until it expires and it does not expire until November 15, 2013.  [ADC232178]. | 45 mins. | 30 mins. | |
| | Jason Willyerd **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Mr. Willyerd is a Psych Associate at ASPC-Eyman. He will testify regarding his treatment of Plaintiff Polson's mental health conditions and that all treatment he provided was appropriate and within the applicable standard of care. Specifically, he will testify that on January 14, 2014, he treated Polson. He will testify that during this encounter, Polson expressed frustration with his food and requested to see a psychiatrist regarding his medications.  As a result of | 45 mins. | 30 mins. | |

| | | | | |
|---|---|---|---|---|
| | this request, Mr. Willyerd will testify that he referred Polson to the psychiatrist line. [ADC232192].<br><br>Additionally, Mr. Willyerd will testify regarding his treatment of Plaintiff Thomas.  He will testify that the treatment he provided to Thomas was appropriate and within the applicable standard of care. Specifically, he will testify that on January 2, 2014 he referred Thomas to the Psych line after Thomas requested medication to deal with his depression.   [ADC229785].  Additionally, Mr. Willyerd will testify that on January 6, 2014, he saw Thomas one-on-one.   During this encounter, Thomas noted problems with his psych medications and expressed interested in talking to his mother. [ADC229784]. | | | |
| J. Williams **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Ms. Williams is a Psych Associate at ASPC-Eyman and will testify regarding her treatment of Plaintiff Polson's mental health conditions.   She will testify that all treatment she provided to Polson was appropriate and within the applicable standard of care. Specifically, she will testify   that on | 45 mins. | 30 mins. | |

| | | | | | |
|---|---|---|---|---|---|
| | | April 8, 2014, she conducted a one-on-one cell front visit with Polson. He was alert and normal. She will testify that during this encounter, Polson reported that he was not experiencing any SIH, IDTS, DTO.  During this encounter Ms. Williams will also testify that Wellbutrin was ordered for Polson on March 25, 2014 and it was scheduled to be delivered the following day. [ADC263405]. | | | |
| | Erin Corridon **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Dr. Corridon is a medical doctor at ASPC-Eyman. She will testify regarding medication she prescribed to Polson and his medication regimen.  She will also testify that the medication prescribed to Polson was appropriate and within the applicable standard of care. Specifically, she will testify that Polson received his Albuterol medication in November, December 2013 and January 2014 [ADC232157, ADC232155, ADC232154, ADC263420-21, ADC263045]. | 30 mins. | 30 mins. | |
| | Christine Salas **(fact)** c/o Corizon | Ms. Salas is a licensed practical nurse at ASPC-Eyman.  She will testify regarding her treatment of Plaintiff | 30 mins. | 30 mins. | |

| | | | | | |
|---|---|---|---|---|---|
| Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Polson's medical conditions. She will testify that all treatment she provided to Polson was appropriate and within the applicable standard of care. Specifically, she will testify that on February 21, 2014, she treated Polson. During this encounter, Polson explained he was refusing his medications because he doesn't like the way they make him feel. [ADC263404]. As a result, Nurse Salas referred Polson to psychiatry. [ADC263404]. | | | | |
| Brittany Bombardieri **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Ms. Bombardieri is a Psych Tech at ASPC-Eyman. She will testify regarding her responses to many of Polson's HNRs. Specifically, Ms. Bombarieri will testify that on November 13, 2013, Polson submitted an HNR regarding his medication. [ADC232172]. In response, on November 18, 2013, Ms. Bombarieri referred him to psychiatry. Ms. Bombardieri will also testify that on November 23, 2013, Polson submitted an HNR stating he was out of allergy medication for his ear infections. [ADC232171]. Ms. Bombardieri will | 30 mins. | 30 mins. | |

testify that he responded to Polson's HNR the next day and advised Polson that the pharmacy had just filled his Claritin prescription on November 3, 2013 and thus he was not out of medication. [ADC232171].

Ms. Bombardieri will also testify regarding his treatment of Polson and that all treatment he provided Polson was appropriate and within the standard of care. Specifically, Ms. Bombardieri will testify that on November 28, 2013, in response to an HNR Polson submitted regarding his medication, he saw Polson one-on-one. During this encounter, he will testify that Polson was cooperative, logical, and appropriate. Polson requested medication during this encounter and Ms. Bombarieri will testify that he scheduled Polson to see a psychiatrist and referred him to a psych associate. [ADC232197]. Ms. Bombardieri will also testify that on November 30, 2013, he saw Polson one-on-one and scheduled him to see a psychiatrist. [ADC232197]. Finally, Ms. Bombardieri will testify that on

| | | | | |
|---|---|---|---|---|
| | | December 9, 2013, he saw Polson one-on one.   During this encounter, he advised Polson that he was scheduled to see a psychiatrist on December 11, 2013. [ADC232196]. | | |
| | Daphne Bortell **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Ms. Bortell is a patient care technician at ASPC-Lewis.  She will testify regarding her review of Plaintiff Hefner's medical records.   Specifically, she will testify that on November 23, 2013, she re-submitted an ophthalmology consult to Dr.  Merchant  for  Plaintiff  Hefner. [ADC232005].  She will testify that this consult referral was appropriate and within the applicable standard of care. | 15 mins. | 30 mins. |
| | William Holder **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Mr. Holder is a family nurse practitioner at ASPC-Tucson.    Mr.  Holder  will testify   regarding   his   treatment   of Plaintiff Jensen and that the treatment he provided to Jensen was appropriate and within the applicable standard of care. Specifically, he will testify that on November 27, 2013, Jensen was seen by Hemotology/Oncology for a prostate cancer follow-up and that a bone scan was  recommended. [ADC262848].  He will further testify that the request for a | 45 mins. | 30 mins. |

bone scan was received on December 5, 2013 and that Dr. Williams approved the bone scan on December 9, 2013. [ADC262848]. As a result, Jensen was scheduled for a bone scan at University Medical Center on December 18, 2013. [ADC262848].

Mr. Holder will also testify that on January 9, 2014, a request for Jensen to have a urology consult to follow up on his elevated PSA was received by ADC. [ADC262846-47]. The consult was approved on January 21, 2014 and his appointment was scheduled for March 26, 2014 with Dr. Guzman at Comprehensive Health Center. [ADC262846-47].

Mr. Holder will also testify that on February 24, 2014, ADC received a request for a Hemotology/Oncology consultation follow-up for Jensen's elevated PSA levels. [ADC262846]. The consult was approved on February 25, 2014 by Dr. Vo and Jensen was scheduled for March 11, 2014 at the Arizona Cancer Center. [ADC262846]. Mr. Holder will also testify that on

| | | | | | |
|---|---|---|---|---|---|
| | | March 21, 2014, ADC received a consult request for a CT of Jensen's abdomen and pelvis as recommended by his oncologist. [ADC262845]. The request was approved. [ADC262845]. Additionally, Mr. Holder will testify that on March 21, 2014, ADC received a request for a nuclear bone scan as recommended by Jensen's oncologist. [ADC262845]. The request was approved. [ADC262845]. Finally, Mr. Holder will testify that on March 21, 2014, ADC received a request for a CT scan of Jensen's chest and right hip as recommended by his oncologist. [ADC262846]. It was approved. [ADC262846]. | | | |
| | Jordana Katz **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Dr. Katz is a Psych Associate at ASPC-Perryville. She is expected to testify regarding the mental health treatment he provided to Plaintiff Verduzco on March 19, 2014. Specifically, she will testify that during his cell front interview with Verduzco, she stated she was feeling great and that healthy coping skills were discussed. She recommended to continue to meet with Verduzco regularly. | 45 mins. | 30 mins. | |

97

[ADC263143.  She will testify that the treatment he provided to Verduzco was appropriate and within the applicable standard of care.

Additionally, Dr. Katz will testify regarding his treatment of Plaintiff Rodriguez on the following occasions:

On October 9, 2013, Dr. Katz saw Rodriguez one-on-one for thirty minutes. She will testify that Rodriguez reported feeling "down" and wanted to sleep. She noted that her daughter had been writing her on a regular basis with updates on Rodriguez's children.   Dr. Katz reviewed a book chapter on co-occuring disorders with Rodriguez.   Rodriguez identified missing her family as a main trigger for drug use.  [ADC227633].

On November 6, 2013, Dr. Katz saw Rodriguez in group programming. During this session, the group described and discussed confidentiality and the group rules.   Rodriguez and the other attending inmates completed an activity where they were asked to decide if specific coping skills were health or unhealthy.  The group discussed coping

skills they have used in the past and efficiency of these skills.  Dr. Katz noted that Rodriguez participated and showed an effort to learn. [ADC227630]

On December 4, 2013, Dr. Katz saw Rodriguez in group programming. During this session, the group completed the "magic key" exercise where they discussed the one thing money cannot buy, but would make them happy. Inmates were asked to discuss. Rodriguez stated she would be happy to have regular contact with her children and grandchildren.  [ADC227627]

On December 11, 2013, Dr. Katz saw Rodriguez in group programming.  The group discussed healthy coping skills to mage depression and stress during the upcoming holiday season. The inmates were asked to share coping skills.  The group also decorated Christmas cards to be sent out to their families. [ADC227626]

On January 8, 2014, Dr. Katz saw Rodriguez in group programming.  The group completed a mask making exercise where inmates created two

masks – one for how they feel inside and one for how they are perceived.   The group then discussed the meaning of the different masks and how they feel wearing each.  Dr. Katz will testify that Rodriguez attended, participated, and actively contributed during the class. [ADC227624].

On January 15, 2014, Dr. Katz saw Rodriguez one-on-one for fifteen minutes.   Rodriguez reported that she was doing good and that she was currently working as a pod porter which kept her busy and provided her with money.  [ADC227623].

On January 29, 2014, Dr. Katz saw Rodriguez in group therapy.  Rodriguez attended and participated. [ADC263059].

Additionally, Dr. Katz will testify regarding her treatment of Plaintiff Verduzco and that the treatment she provided was appropriate and within the applicable standard of care. Specifically, she will testify that during her one-on-one interview with Verduzco on March 19, 2014, she stated she was

| | | | | | |
|---|---|---|---|---|---|
| | | feeling great and that healthy coping skills were discussed. She recommended continuing to meet with Verduzco regularly. [ADC263143] | | | |
| | Christy Somner **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Ms. Somner is Corizon's Regional Director of Nursing and is expected to testify consistent with her deposition. | 1 | 1 | |
| | Jennifer Anderson **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Ms. Anderson is a registered nurse at ASPC-Perryville.  She is expected to testify regarding the mental health treatment she provided to Plaintiff Verduzco on March 3 and March 17, 2014.  She will testify that the care she provided was appropriate and within the standard of care.  Specifically, she will testify that during a psychiatric follow-up session on March 3, 2014, Verduzco denied any self-destructive or violent ideation or side effects.  She will further testify that during this encounter, Verduzco acknowledged she was receiving her medication as ordered, was | 45 mins. | 30 mins. | |

taking her medication as prescribed and that the medication was effective. She will further testify that Verduzco was given a Haldol injunction during this visit and that a follow-up appointment was scheduled for additional injections. [ADC263154]. Ms. Anderson will also testify regarding her March 17, 2014 encounter with Verduzco. Specifically, she will testify that she was seen in a watch cell for her scheduled Haldol injection and that she was assessed for watch status earlier that day by psychology. [ADC263146]. Finally, Ms. Anderson will testify that on March 31, 2014 she saw Verduzco for a follow-up exam. [ADC263138]. During this exam, she noted that Verduzco denied hallucinations and delusions. It was also noted that Verduzco was taking her medications as prescribed.

Additionally, Ms. Anderson will testify regarding her treatment of Plaintiff Rodriguez and that the treatment she provided was appropriate and within the standard of care. Specifically, she will testify that on October 2, 2013;

November 4, 2013; December 3, 2013; and December 30, 2013 she administered a Haldol injection to Rodriguez. [ADC227634, ADC227632, ADC227631, ADC227628, ADC227625] Moreover, she will testify that on December 20, 2013, treated Rodriguez. During this encounter, Rodriguez was compliant with her medications, noted she was sad because of the Holidays, but stated she was doing okay. [ADC227625]. Finally, she will testify that on October 30, 2013 and November 10, 2013, she responded to two HNRs from Rodriguez where she scheduled Rodriguez to be seen regarding her medications. [ADC227615, ADC227614].

Anderson will also testify regarding the mental health treatment she provided to Plaintiff Verduzco. She will testify that the treatment she provided was appropriate and within the applicable standard of care. Specifically, she will testify that during a psychiatric follow-up session on March 3, 2014, Verduzco denied any self-destructive or violent

ideation or side effects.  She will further testify that during this encounter, Verduzco acknowledged she was receiving her medication as ordered, was taking her medication as prescribed and that the medication was effective. She will further testify that Verduzco was given a Haldol injunction during this visit and that a follow-up appointment was scheduled for additional injections. [ADC263154].   Anderson will also testify regarding her March 17, 2014 encounter with Verduzco.  Specifically, she will testify that she saw Verduzco while Verduzco was on watch and that she administered Verduzco's scheduled Haldol injection.  She will also testify that Verduzco was assessed for watch status earlier that day by psychology. [ADC263146].  Finally, Anderson will testify that on March 31, 2014 she saw Verduzco for a follow-up exam. [ADC263138].   During this exam, she noted that Verduzco denied hallucinations and delusions.  It was also noted that Verduzco was taking her medications as prescribed.

| | | | | |
|---|---|---|---|---|
| Marci Kyle **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | She will testify regarding the mental health treatment provided to Plaintiff Verduzco and that the treatment she provided was appropriate and within the standard of care.  She will testify that she treated Verduzco on the following dates:  February 21, 2014 [ADC263157];  February 26, 2014 [ADC263155];  March 12, 2014 [ADC263151];  March 13, 2014 [ADC263150];  March 20, 2014 [ADC263142];  March 26, 2014 [ADC263140];  March 28, 2014 [ADC263139]. Ms. Kyle will testify that on February 21, 2014, she met with Verduzco for approximately 20 minutes.  She informed her she was glad she was off watch and that she is doing good.  She appeared stable and stated she would work on her impulsivity and try to think things through.  [ADC263157]. Ms. Kyle will also testify that on February 26, 2014, she saw Verduzco for approximately 20 minutes.  She advised she was doing okay, but that she was "bored."  She appeared stable and | 45 mins. | 30 mins. | |

Ms. Kyle encouraged her to do exercise routines in her cell and to write her family and friends to help distract her when hallucinations appear. [ADC263155].

Ms. Kyle will also testify that on March 12, 2014, she saw Verduzco after a correctional officer noticed scratches on her wrist. She admitted that she used her fingernail on her arm because she was upset, but denied any suicide attempt. Although Verduzco appeared stable, Ms. Kyle placed her on 10 minute watch per protocol for safety. [ADC263151].

Ms. Kyle will testify that on March 13, 2014, she saw Verduzco. She advised she was having a bad day and that she heard voices telling her she was going to die. [ADC263150].

Ms. Kyle will testify that on March 20, 2014, Verduzco participated in group programming. She noted that she was showing progress and that she will continue in group. [ADC263142].

Ms. Kyle will testify that on March 26, 2013, she saw Verduzco for approximately 20 minutes. She advised

| | | | | | |
|---|---|---|---|---|---|
| | | that she felt inspired because a poem she wrote was published in the monthly newsletter.  She stated that she felt stable.  [ADC263140].<br><br>Finally, Ms. Kyle will testify that on March 28, 2014, she saw Verduzco for approximately 20 minutes.  She noted that she felt good, but was annoyed with her neighbor.  She admitted to knowing she is impulsive and needs to think about consequences before acting out. [ADC263139]. | | | |
| | Richelle Ramirez **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Ms. Ramirez is nurse practitioner at ASPC-Perryville.    She  will  testify regarding her treatment of Plaintiff Verduzco  and  that  the  treatment  she provided  to  Verduzco  was  appropriate and  within  the  applicable  standard  of care.  Specifically,  she  will  testify  to Verduzco's  medication  regimen.    Ms. Ramirez  will  testify  that  Verduzco received  her  Prozac  prescription  in January, February, and March of 2014. [ADC232253,          ADC26316, ADC263167]. She will also testify that Verduzco received Haldol injections on the following dates:    January 21, 2014 | 30 mins. | 30 mins. | |

| | | | | |
|---|---|---|---|---|
| | | [ADC232253]; February 26, 2014 [ADC263167]; March 27, 2014 [ADC263167]. She will also testify that Verduzco received her Albuterol inhaler in January and February 2014, and that she received an adequate supply for these two months. [ADC263130, ADC263125, ADC263167, ADC232253, ADC263164]. Ms. Ramirez will also testify that Verduzco received her Depakote prescription in January, February, March, and April 2014. [ADC263132, ADC263127, ADC263168, ADC232254, [ADC232253, ADC263130, ADC263125, ADC263167]. She will also testify that Verduzco received her Cogentin prescription in January, February, and March 2014. [ADC263130, ADC263125, ADC232253, ADC263167]. | | |
| | Heather Sullivan **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, | Ms. Sullivan is a licensed practical nurse at ASPC-Perryville. Sullivan is expected to testify regarding the asthma treatment he provided to Plaintiff Verduzco. Specifically, Ms. Sullivan will testify regarding her encounter with | 30 mins. | 30 mins. | |

| | | | | |
|---|---|---|---|---|
| Tempe, AZ 85284 | Verduzco on March 7, 2014. Ms. Sullivan will testify that during this exam for Verduzco's asthma, Verduzco's respirations were unremarkable and her lunch sounds were clear. [ADC263134]. | | | |
| Isabela Musial **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Dr. Musial is a medical doctor at ASPC-Perryville. She is expected to testify regarding the asthma treatment she provided to Plaintiff Verduzco. Specifically, she will testify regarding several prescriptions she wrote for Verduzco (2/11/14; 3/1/14; 3/13/14) for nasal spray and Qvar inhalers. [ADC263130, ADC263125, ADC232253, ADC263130, ADC263125, ADC263169, ADC232253, ADC263161, ADC263167]. | 30 mins. | 30 mins. | |
| Brian Radford **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | CO III Brian Radford has knowledge and information regarding ADC's policies and procedures relating to ADC inmates receiving mental health care and conditions of confinement of inmates receiving mental health care at ASPC-Eyman/SMU I. | 45 mins. | 30 mins. | |

109

| | | | |
|---|---|---|---|
| Dr. Wayne G. Thorpe **(fact)** 3085 E. Parkview Drive Gilbert, AZ 85295 | Dr. Thorpe is expected to testify regarding the facial reconstruction surgery he performed on Plaintiff Stephen Swartz. | 45 mins. | 30 mins. | |
| (fact) Witnesses necessary to authenticate or to lay foundation for admissibility of documents or any person necessary to establish the foundation for the admission of any Rule 1006 | Witnesses will testify that documents are authentic and/or provide foundation to admit certain documents, such as foundation showing that certain documents are admissions or fall within recognized exceptions to the hearsay rule. These witnesses are not yet named because the need for these witnesses will depend largely on stipulations to the authenticity and admissibility of certain documents. | | | |

   \* = Defendants marked several witnesses with a "\*" without explaining what that means. To the extent Defendants intend the "\*" to have the same meaning as for the witnesses on their "will call" list, Plaintiffs object to Defendants' unilateral assertion that they will call these witnesses during Plaintiffs' case in chief and call them again if necessary. Plaintiffs are listing cross-examination times they will use in the event the Court allows Defendants to call these witnesses.

**DEFENDANTS' LIST OF WITNESSES WHO ARE UNLIKELY TO BE CALLED TO TESTIFY AT TRIAL**

| Witness | Statement of Testimony | Direct | Cross | Other Witnesses |
|---|---|---|---|---|
| Sgt. Whiting **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Sgt. Whiting has knowledge and information regarding Joshua Polson's refusal to receive legal mail from Donald Specter of the PLO on March 13, 2013. | | 1 | |
| CO II Perry **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | CO II Perry has knowledge and information regarding Plaintiff Joshua Polson's refusal of legal mail from Donald Specter of the PLO on March 13, 2013, and from Perkins Coie on March 15, 2013. | | 1 | |
| CO II Archuleta **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | CO II Archuleta has knowledge and information regarding Plaintiff Joshua Polson's refusal to receive legal mail from Donald Specter of the PLO on March 13, 2013, and from Perkins Coie on March 15, 2013. | | 1 | |
| CO II Harp **(fact)** c/o Struck | CO II Harp has knowledge and information regarding Plaintiff Joshua Polson's refusal to | | 1 | |

| | | | | | |
|---|---|---|---|---|---|
| Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | receive legal mail from Donald Specter of the PLO on March 5, 2013. | | | | |
| CO II Franco **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | CO II Franco has knowledge and information regarding Joshua Polson's refusal to receive legal mail from Donald Specter of the PLO on March 5, 2013 and other interactions with Polson. | | 1 | | |
| Gowan **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Gowan is a registered nurse at ASPC-Eyman and will testify that on October 14, 2013, he witnessed Polson refuse his lithium medication. [ADC232152 -232153] | | 1 | | |
| Laurie Berg **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | Laurie Berg is the current HS Division Executive Staff Assistant and is likely to have discoverable information regarding the maintenance and storage of inmate records while kept at ADC Central Offices. | | 1 | | |
| Edward Shuman, ADW, Eyman **(fact)** c/o Struck | Mr. Shuman, and the below listed Wardens, Deputy Wardens and Assistant Deputy Wardens are all Wardens, in some capacity, at | | 1 | | |

1

| | |
|---|---|
| Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | various ADOC facilities. They are likely to have discoverable information with regard to Plaintiffs' institutional history and ADOC's policies and procedures, including those relating to dental, medical, mental health care, and conditions of confinement with respect to their respective facilities; their knowledge of Plaintiffs' medical, dental and mental health needs requests, grievances, and all matters relevant to the allegations set forth in Plaintiffs' Complaint; Plaintiffs' disciplinary, managerial, and behavior issues; practices and policies regarding inmates with gang affiliations as well as ADOC's management of gang affiliated inmates; any Plaintiff's protective custody or segregation status at any point during their incarceration at ADOC as well as the policies and procedures regarding the implementation of protective custody or segregation; the management of health care at each respective facility, including the management of inmate records and prior history within the system at ADOC; the policies, procedures and process by which Health Needs Request forms are managed; the physical layout of each of their respective facilities; alleged sanitation issues at their |

2

| | | | | | |
|---|---|---|---|---|---|
| | | respective facilities; conditions of confinement within the isolation/SMU units of their respective, applicable facilities as well as management of isolation/SMU units; inmates' access to programming, visitation, and recreation time; the allegations set forth in Plaintiffs' Complaint. | | | |
| | Joshua Karkhoff* **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | In addition to the above, Associate Deputy Warden Karkhoff is expected to testify regarding his knowledge and observations while assigned to ASPC-Lewis of Plaintiff Stephen Swartz numerous occasions of swallowing foreign objects such as springs, paperclips, and wire.  He will also testify regarding the actions taken following the numerous occasions based on his observations and actions.  He will further testify regarding his knowledge of Plaintiffs Maryanne Chisholm, Desiree Licci, Sonia Rodriguez, Christina Verduzco and Charlotte Wells. | | 1 | |
| | Ron Lee **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, | | | 1 | |

3

| | | | | |
|---|---|---|---|---|
| Chandler, AZ 85226 | | | | |
| Jeffrey Freeland **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Shannon Thielman, ADW, Eyman **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Ed  Lao,  DW, Eyman **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Kevin Curran; DWOP, Eyman **(fact)** | | | 1 | |

| | | | |
|---|---|---|---|
| c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | |
| Annemarie Smith-Whitson; DW, Florence **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | |
| April Robinson, DW, Florence **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | |
| William Dodds; Compliance DW, Phoenix **(fact)** c/o Struck Wieneke & Love, P.L.C. | | 1 | |

| | | | | |
|---|---|---|---|---|
| 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | | |
| Doug Schuster, DW, Lewis **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Brenda Burgess, ADW, Lewis **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Kimberly Currier,  DW, Lewis **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |

| | | | | |
|---|---|---|---|---|
| Terry Hibbard, ADW, Lewis **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Regina Dorsey,   DW, Lewis **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| John     Weiss, ADC,   ADW, Lewis **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Michael McCarville,DW, Lewis **(fact)** | | | 1 | |

7

| | | | | |
|---|---|---|---|---|
| c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | | |
| Norm Twyford, DW Compliance, Phoenix **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Kelly Pierce, DW, Phoenix **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Wayne Mooney, DW, Winslow **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, | | | 1 | |

| | | | | |
|---|---|---|---|---|
| Suite 300, Chandler, AZ 85226 | | | | |
| Heather Pruett, DW, Winslow **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Rick Morales, ADW, Winslow **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Vivian Baltierra, DW, Winslow **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |

| | | | |
|---|---|---|---|
| Wayne Wilson, DWOP, Douglas **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | |
| Bruce Cattell, CW, Douglas **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | |
| Render Gregory, ADW, Douglas **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | |
| Marvin Shatto, DW, Douglas **(fact)** c/o Struck Wieneke & Love, P.L.C. | | 1 | |

| | | | |
|---|---|---|---|
| 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | |
| Mark Jacobson, ADW, Douglas **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | |
| Robert Langham, DW, Douglas **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | |
| Tom Paplawsky, DW, Douglas **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | |
| Carol Ortiz, ADW, | | 1 | |

| | | | | |
|---|---|---|---|---|
| Perryville **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | | |
| Cindy Neese, DW, Perryville **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Andrew Jackson, DW, Perryville c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Meegan Muse, DWOP, Safford **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, | | | 1 | |

12

| | | | |
|---|---|---|---|
| Suite 300, Chandler, AZ 85226 | | | |
| Richard Haggard, DW, Safford **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | |
| Roxanne Hill, DW, Safford **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | |
| Kim Daniel, DW, Safford **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | |
| Dave Mueller, DWOP, Tucson | | 1 | |

| | | | | |
|---|---|---|---|---|
| **(fact)**<br>c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | | |
| Anna Jacobs, DW, Tucson **(fact)**<br>c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Glenn Pacheco, ADW, Tucson **(fact)**<br>c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Linda Vega, DW, Tucson **(fact)**<br>c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, | | | 1 | |

14

| | | | |
|---|---|---|---|
| Suite 300, Chandler, AZ 85226 | | | |
| Daniella Stemple, DW, Tucson **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | |
| Teru Osorio, DW, Yuma **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | |
| Gerardo Zaragoza, DW, Yuma **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | 1 | |
| Carla Hacker-Agnew, DW, | | 1 | |

| | | | | |
|---|---|---|---|---|
| Yuma **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | | |
| Rose Sanders, DW, Yuma **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Jeffrey Rode, ADC, Eyman **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Benjamin Gieron, ADW, Florence **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West | | | 1 | |

16

| | | | | |
|---|---|---|---|---|
| Ray Road, Suite 300, Chandler, AZ 85226 | | | | |
| Ramil Aguilar, ADW, Lewis **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Tomas Ayala, DW, Yuma **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Felipe Solis, ADW, Yuma **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Edwin Jensen, DW, Yuma | | | 1 | |

| | | | | |
|---|---|---|---|---|
| **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | | |
| Melissa Wallace, ADW, Yuma **(fact)** c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | | | 1 | |
| Dennis P. Eddy ASPC-Eyman-SMU I **(fact)** P.O. Box 4000 Florence, AZ 85132-4000 | Dennis Eddy is an inmate incarcerated under the care and custody of the ADC.  Mr. Eddy is likely to have discoverable information with regard to Plaintiff Dustin Brislan's aggressive behavior while incarcerated. | | 1 | |
| Timothy R. Johnson, M.S.,  PA-C, Perryville **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | In addition to the specific testimony outlined below for certain health care witnesses, Mr. Johnson and the remaining   health care witnesses listed hereafter,  intend to testify regarding their specific health care positions including any and all roles, duties, and | | 1 | |

18

| | | | | | |
|---|---|---|---|---|---|
| | responsibilities regarding same and specific to their individual facility or facilities. | | | | |
| Rumaldo Rodriguez **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | In addition to the expected testimony listed above, Mr. Rodriguez is expected to testify regarding his interactions with and the medical treatment provided to named Plaintiffs Desiree Licci, Maryanne Chisholm, and Charlotte Wells. | | | 1 | |
| Dr. Ronolfo Macabuhay **(fact)** 26700 S U.S. Highway 85 Buckeye, AZ 85326 | In addition to the expected testimony listed above, Dr. Macabuhay is expected to testify regarding the provision of health care provided to Plaintiff Stephen Swartz after Mr. Swartz alleges he suffered from a hernia in 2010.   He is expected to testify that the medical treatment provided to Mr. Swartz was appropriate and within the applicable standard of care.   He is further expected to testify regarding any medical care he provided to Plaintiff Joseph Hefner. | | | 1 | |
| Dr. Brett Barlow **(fact)** 3559 E. Patrick St. Gilbert, AZ 85295 | In addition to the expected testimony listed above, Dr. Barlow is expected to testify regarding the appointment Plaintiff Stephen Swartz had with him. It is expected that Dr. Barlow will discuss that once Mr. Swartz arrived at Dr. Barlow's office, Mr. Swartz refused medical treatment. | | | 1 | |
| Tracy Tolentino, | | | | 1 | |

| | | | | |
|---|---|---|---|---|
| CL.P.N. II, Florence **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | | |
| Ralph Mertens **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | In addition to the expected testimony listed above, Dr. Mertens is expected to testify regarding the mental health treatment, including therapy sessions and medication prescriptions and administration provided to inmates at ASPC-Eyman.  Specifically, Dr. Mertens will testify regarding the mental health treatment of Plaintiff Dustin Brislan and the appropriateness of that treatment and that it was within the applicable standard of care. | | 1 | |
| Mike King, Psych Ass. II, Florence **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Jessica A. Harrison, M.D., PhD, Tucson **(fact)** | | | 1 | |

| | | | | |
|---|---|---|---|---|
| c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | | |
| Phillip E. Lucas, D.D.S., Dental Director, Safford **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Quoc V. Luc, Psych Associate II, Perryville **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Humberto Sirvent, PN II, Mental Health RN, Phoenix **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, | | | 1 | |

| | | | | |
|---|---|---|---|---|
| AZ 85284 | | | | |
| Troy Garey, D.M.D., Douglas **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Jason Newell, Psychologist II, Mental Health Director, Phoenix **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Kay Mansfield-Blair, Psychology Associate, Perryville **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Catherine Rosa-Sierra, | | | 1 | |

| | | | | |
|---|---|---|---|---|
| Psychiatric Associate, Perryville **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | | |
| Sandra Ekeinde, PhD., Psychology Associate, Perryville **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Tamara Lee Porter, C.R.C., Direcotr of Nursing, Tucson **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Daniel James, Psych Associate, Lewis **(fact)** | | | 1 | |

| | | | |
|---|---|---|---|
| c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | |
| Jose De Los Santos, D.D.S., Perryville **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | 1 | |
| Dr. Jesse R. Coons, D.O., Medical Direcotr, Safford **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | 1 | |
| Irma Paulley, D.D.S., Dental Director, Tucson **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | 1 | |

| | | | |
|---|---|---|---|
| Annette Jasinsky, former Director of Nursing **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | 1 | |
| Sherri Cluff, RN Supervisory , Safford **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | 1 | |
| Jack Fredrickson, D.D.S., former Dental Director, Douglas **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | 1 | |
| Andrea Irving, D.O, Medical Direcot, | | 1 | |

| | | | | |
|---|---|---|---|---|
| Perryville **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | | |
| Joel Turner, Dental Director, Douglas **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| David Hill, Dentist, Eyman **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Sean Ziaei, Dentist, Eyman and Lewis **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |

26

| | | | |
|---|---|---|---|
| Wallace Rumsey, Physician, Eyman **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | 1 | |
| Sarah Foxley, Psychologist, Eyman **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | 1 | |
| Jamie Kenney, former Psychologist, Eyman **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | 1 | |
| Charles Moore, former regional Director, Eyman **(fact)** c/o Corizon | | 1 | |

| | | | | |
|---|---|---|---|---|
| Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | | |
| Nicole Bradfield, former RN Supervisor, Eyman **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Donna Lee Thies, LPN, Florence **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Carlos Weekly, Dental Director at Florence **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |

28

| | | | | |
|---|---|---|---|---|
| John Jang, Dentist, Florence **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Joanne Curry, Dentist, Florence **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Phillip Hendrix, Dentist, Florence **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Shantell Artley, former Director of Nursing, Florence **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite | | | 1 | |

| | | | | |
|---|---|---|---|---|
| 220, Tempe, AZ 85284 | | | | |
| Zoran Vukcevic, Medical Director, Florence **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Dragica Lekic, former Psychiatrist, Florence **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Syed Asad Raza, Psychiatrist, Florence **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Christine Pereira, Assistant FHA, | | | 1 | |

| | | | | |
|---|---|---|---|---|
| Florence **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | | |
| Elizabeth McCrehin, Former RN Supervisor, Florence **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Karen Hudson, LPN, Perryville **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Kendrick Gray, Dentist, Perryville and Lewis **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |

| | | | | |
|---|---|---|---|---|
| Liliana Garcia, Dentist, Perryville **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Selam Gebre, Clinical Coordinator, Phoenix **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Robert Kearney, Psychiatric RN Supervisor, Phoenix **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Richard Christiansen, Director of Nursing, Phoenix | | | 1 | |

| | | | | |
|---|---|---|---|---|
| **(fact)**<br>c/o Corizon Health<br>950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | | |
| Laura Sherman, former Psychiatric Director, Phoenix **(fact)** | | | 1 | |
| Hugh Conway, Dentist, Lewis **(fact)**<br>c/o Corizon Health<br>950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Sundeep Gill, Dentist, Eyman **(fact)**<br>c/o Corizon Health<br>950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Kenneth Merchant, Physician, Lewis **(fact)** | | | 1 | |

| | | | | |
|---|---|---|---|---|
| c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | | |
| Christine Sparacino, Psychologist, Lewis **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Charmarie Frantz, Director of Nursing, Safford **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Carolyn Rihanek, Dentist, Tucson **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |

| | | | | |
|---|---|---|---|---|
| Hector Vega, Dentist, Tucson **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Lisa Allard, RN, Tucson **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Kevin Lewis, Former Medical Director, Tucson **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Robert Winsky, Jr., Psychiatrist , Tucson **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, | | | 1 | |

| | | | | |
|---|---|---|---|---|
| AZ 85284 | | | | |
| Susan Santa Cruz, Former Psychologist, Tucson **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| William Brautigam, Psychologist, Tucson **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Cristobal Eblen, Psychologist, Tucson **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Elsie Stowell, FHA, Winslow **(fact)** c/o Corizon Health | | | 1 | |

| | | | | |
|---|---|---|---|---|
| 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | | |
| Amy Shumway, RN, Winslow **(fact)**<br>c/o Corizon Health<br>950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Kenneth Rice, Dental Director **(fact)**<br>c/o Corizon Health<br>950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Robin Boyd, Dentist, Winslow **(fact)**<br>c/o Corizon Health<br>950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Julie Lucek, Director of Nursing, Winslow **(fact)**<br>c/o Corizon | | | 1 | |

| | | | | |
|---|---|---|---|---|
| Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | | |
| Robert Balda, RN Supervisor, Winslow **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Emily Elmer, RN Supervisor, Winslow **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Daniela Munoz, Clinical Coordinator, Yuma **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |

| | | | | |
|---|---|---|---|---|
| Rick Jones, former Dental Director, Yuma **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Deborah Williams, Dentist, Yuma **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| James Browning, Dentist, Yuma **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Karen Robles, Director of Nursing, Yuma **(fact)** c/o Corizon Health 950 W. Elliot | | | 1 | |

| | | | |
|---|---|---|---|
| Road, Suite 220, Tempe, AZ 85284 | | | |
| Ed Gogek, Psychiatrist , Yuma **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | 1 | |
| Glenn Finch, RN Supervisor, Eyman **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | 1 | |
| Terri Jackson, RN Supervisor, Eyman **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | 1 | |
| Kelly Mier, RN Supervisor, Eyman **(fact)** | | 1 | |

| | | | | |
|---|---|---|---|---|
| c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | | |
| Gregory Schumacher, Clinical Coordinator, Florence **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Angharad Rees, Director of Nursing, Florence **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Jawad Rias, Psychiatrist **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Lucy Burciaga, | | | 1 | |

| | | | | |
|---|---|---|---|---|
| Medical Director, Florence **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | | |
| Donna Greenwalt, Clinical Coordinator, Perryville **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Daniel McDonnell, Psychologist, Tucson **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Sherry Holly-Reps, Psychologist, Tucson **(fact)** c/o Corizon Health 950 W. Elliot | | | 1 | |

| | | | |
|---|---|---|---|
| Road, Suite 220, Tempe, AZ 85284 | | | |
| Melissa Knowlton, Psychologist, Tucson **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | 1 | |
| Laura Lee, Clinical Coordinator, Winslow **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | 1 | |
| Doi Durtschi, RN Supervisor at Florence **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | 1 | |
| Cherie Getts, RN Supervisor at Florence | | 1 | |

43

| | | | |
|---|---|---|---|
| **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | |
| Billie Jo Mason, RN Supervisor at Florence **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | 1 | |
| Angela Townsend, RN Supervisor at Florence **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | 1 | |
| Elaine Clayton, RN Supervisor at Phoenix **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | 1 | |

44

| | | | | |
|---|---|---|---|---|
| Steven Caruso, PhD at Eyman **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | Caruso is a doctor at ASPC-Eyman. He will testify regarding his treatment of Plaintiff Gamez's mental health conditions and that the treatment he provided was appropriate and within the standard of care. Specifically, he will testify that on October 3, 2013, he saw Gamez while he was on suicide watch and authorized him to come off suicide watch. [ADC222232]. | | 1 | |
| Pamela Stein, RN Supervisor at Phoenix **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Erica Johnson, former clinical coordinator at Lewis **(fact)** c/o Corizon Health 950 W. Elliot Road, Suite 220, Tempe, AZ 85284 | | | 1 | |
| Michael Adu-Tutu **(fact)** | Dr. Michael Adu-Tutu is a former ADC | | 1 | |

| | | | | | |
|---|---|---|---|---|---|
| c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | employee and was the Interim Division Director of Health Services at ADC prior to Mr. Pratt. Dr. Adu-Tutu was deposed in this matter and, if unavailable for trial, Defendants will rely on his deposition testimony. Dr. Michael Adu-Tutu is likely to have discoverable information with regard to all materials authored by him, including the Dental Services Technical Manual and educational programs regarding dental care. | | | | |
| Victor Parsons (fact) c/o ACLU Foundation of Arizona 3707 North 7th Street, Suite 235 Phoenix, Arizona 85013 | Victor Parsons is a former Plaintiff in this matter. Mr. Parsons is likely to have discoverable information with regard to the allegations in the Complaint and his medical, dental, mental health, social, educational, criminal and institutional history. | | 1-2 | | |
| Ron Lee (fact) c/o Struck Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | DW Lee may testify regarding his knowledge of the operations at ASPC-Eyman Rynning and APSC Florence-North Unit, including the provision of health care from the operations side, security issues, programming, and his interaction with any named Plaintiffs who were housed in these units . | | 1 | | |
| Regina Dorsey (fact) c/o Struck | DW Dorsey may testify regarding her knowledge of the operations at ASPC-Lewis Rast and Buckley Units, including the | | 1 | | |

| Wieneke & Love, P.L.C. 3100 West Ray Road, Suite 300, Chandler, AZ 85226 | provision of health care from the operations side, security issues, programming, and her interaction with any named Plaintiffs who were housed in these units . | | | |
|---|---|---|---|---|

SFI-620873404v1

47