1  Arizona Attorney General Thomas C. Horne
   Office of the Attorney General
2  Michael E. Gottfried, Bar No. 010623
   Lucy M. Rand, Bar No. 026919
3  Assistant Attorneys General
   1275 W. Washington Street
4  Phoenix, Arizona 85007-2926
   Telephone: (602) 542-4951
5  Fax: (602) 542-7670
   Michael.Gottfried@azag.gov
6  Lucy.Rand@azag.gov

7  Daniel P. Struck, Bar No. 012377
   Kathleen L. Wieneke, Bar No. 011139
8  Rachel Love, Bar No. 019881
   Timothy J. Bojanowski, Bar No. 022126
9  Nicholas D. Acedo, Bar No. 021644
   Ashlee B. Fletcher, Bar No. 028874
10 Anne M. Orcutt, Bar No. 029387
   Jacob B. Lee, Bar No. 030371
11 STRUCK WIENEKE & LOVE, P.L.C.
   3100 West Ray Road, Suite 300
12 Chandler, Arizona 85226
   Telephone: (480) 420-1600
13 Fax: (480) 420-1696
   dstruck@swlfirm.com
14 kwieneke@swlfirm.com
   rlove@swlfirm.com
15 tbojanowski@swlfirm.com
   nacedo@swlfirm.com
16 afletcher@swlfirm.com
   aorcutt@swlfirm.com
17 jlee@swlfirm.com

18 *Attorneys for Defendants*

19               **UNITED STATES DISTRICT COURT**
20                  **DISTRICT OF ARIZONA**

21 Victor Parsons, *et al.*, on behalf of themselves     NO. 2:12-cv-00601-DJH
   and all others similarly situated; and Arizona
22 Center for Disability Law,
                              Plaintiffs,
23          v.                                           **DEFENDANTS' REPLY IN**
                                                         **SUPPORT OF MOTION TO**
24 Charles Ryan, Director, Arizona Department            **ENFORCE COURT ORDER RE:**
   of Corrections; and Richard Pratt, Interim           **PLAINTIFFS' TRIAL EXHIBITS**
25 Division Director, Division of Health Services,
   Arizona Department of Corrections, in their          [Expedited Ruling Requested]
26 official capacities,
                              Defendants.
27

28

1    "[N]o later than 5:00 pm on Friday, September 19, 2014," Plaintiffs were required

2    to produce to Defendants "a complete Exhibit List organized by exhibit number, which

3    corresponds to a complete portfolio of exhibits." (Doc. 1126 at 2:21-23.)  This required

4    one, final and superseding ("a" "complete") set of trial exhibits, with the exhibits

5    identified and "organized" by "exhibit number[s]." (Id.)  Providing Defendants five hard

6    drives, a flash-key, and two data download transfers over the course of 10 days—with

7    different and/or duplicative exhibits, and multiple revised exhibit lists identifying exhibits

8    by reference numbers—and leaving Defendants to figure out what exhibits Plaintiffs will

9    be introducing at trial, does not comply *at all* with the Court's directive.  Plaintiffs are

10    playing a shell game, and each day Defendants have spent (and continue to spend)

11    untangling this mess is a day they have been deprived of trial preparation.  No interest is

12    more paramount than a defendant's right to a fair trial.  This is the very reason why the

13    Court's July 3, 2014 and September 16, 2014 Orders impose self-executing and automatic

14    sanctions for noncompliance.  The Court should enforce those Orders now.[1]

15   **I.      PLAINTIFFS' UNTIMELY TRIAL EXHIBITS SHOULD BE EXCLUDED.**

16        **A.      Plaintiffs Did Not Comply With the Court's Orders.**

17        Plaintiffs contend that they "substantially complied" with the Court's orders

18    because Defendants had the "vast majority" of the trial exhibits in some form prior to the

19    September 19, 5:00 p.m. deadline.  Nothing in the Court's orders, however, suggest

20    anything less than *full* compliance—i.e., providing Defendants one, final and superseding

21    ("a" "complete") set of trial exhibits, identified and organized by exhibit numbers.  In

22    fact, Plaintiffs raised this same substantial-compliance defense in response to Defendants'

23    Motion to Preclude Plaintiffs' Trial Exhibits (Doc. 1113), and that defense was rejected

24    ───────────────

25    [1] Plaintiffs contend that Defendants do not identify the 805 exhibits that were
     untimely. Not true. Defendants identified these untimely exhibits at Doc. 1153–1 *and*
     Doc. 1162–14. Plaintiffs know which exhibits are at issue as they allegedly undertook

26    their own analysis of these same exhibits. (Doc. 1174 at 3:25-4:7; Doc. 1176.) Defendants
     join Plaintiffs' request to submit the September 19, 4:55 p.m. hard drives in non-electronic

27    format so that it is in the record.  If there is a dispute as to whether a trial exhibit was
     timely provided, the parties and the Court can verify if it was by reviewing these hard

28    drives.

1    by the Court (Doc. 1126).[2]  That is why the Court issued its September 16 Order and gave

2    Plaintiffs a second chance with a specific directive:  full compliance.  Plaintiffs'

3    contention that they (once again only) substantially complied is an admission that they did

4    *not* comply.  That is the end of the inquiry, and the automatic sanction of exclusion

5    follows.

6           Plaintiffs' substantial-compliance argument is nonetheless invalid. Plaintiffs

7    contend that they "already had substantially complied with the order three days ahead of

8    the deadline" because they "delivered two drives to Defendants" on September 16 that

9    included all of their trial exhibits "numbered with reference numbers." (Doc. 1174 at 2:3-

10   6.)  This is spin that, even on its face, does not substantially comply with the Court's

11   Order.  The sequence of events is as follows:

12

| Date | Description |
|---|---|
| September 5, 2014 | Defendants provided Plaintiffs an exhibit list and a hard drive containing all of their trial exhibits. Plaintiffs provided only an exhibit list, and despite assurances that they would send Defendants their trial exhibits later that day they did not do so. (Doc. 1109 at 2-3; Doc. 1109–1 at 5.) Moreover, the exhibit list was incomplete (e.g., a description with no bates range) and did not comply with the Court's order (exhibits listed by document type rather than listed in groups according to subject). (Doc. 1109 at 6-7; Doc. 1109–1 at 15-24.) The exhibits were also not assigned an exhibit number or a reference number. (Id.) This was the catalyst for Defendants' first Motion to Preclude Plaintiffs' Trial Exhibits. (Doc. 1109.) |
| September 9, 2014 at approximately 6:00 p.m. | Plaintiffs sent Defendants a data download transfer containing 362 files, just 10% of the files containing their trial exhibits. (Doc. 1109 at 3-4; Doc. 1109-1 at 8.) Defendants were unable to open or view any of these files. (Id.) |

25

26

27      [2] Plaintiffs had argued that providing an exhibit list on September 5 substantially complied with the Court's July 3 Pretrial Order because the actual exhibits had been exchanged through the course of discovery and therefore Defendants already had the "vast

28   majority" of the exhibits in their possession.  (Doc. 1113).

2

| Date | Description |
|------|-------------|
| September 10, 2014 at approximately 4:00 p.m. | Defendants received a hard drive from Plaintiffs containing 17,837 files (approximately 269,000 pages); 12,508 files consisted of only one page. (Doc. 1117 at 7; Doc. 1117–1 at 5-12.) These files were not identified by a corresponding exhibit number or exhibit list identifier. (Id.) |
| September 11, 2014 at 2:47 p.m. | Plaintiffs sent Defendants a data download transfer containing an additional 5 files.  (Doc. 1117–1 at 10.) |
| September 15, 2014 at 10:27 a.m. | Defendants informed the Court that they had still not received a complete and organized set of Plaintiffs' trial exhibits.  (Doc. 1124.) |
| September 15, 2014 at 4:14 p.m. | Plaintiffs sent Defendants a new exhibit list. (Doc. 1175–1 at 3.) There were 2,844 exhibits listed, identified only by "reference numbers." (Ex. 1, ¶ 7.) Plaintiffs demanded to know— within 16 minutes ("before 4:30")—whether they could deliver a hard drive of exhibits sometime after 5:00 p.m. or the following morning. (Doc. 1175–1 at 3.) Because Defendants were not willing to compel office staff to stay overtime until whatever time the drive would be completed and delivered, Defendants deferred to a next-day delivery. |
| September 16, 2014, sometime before 10:00 a.m. | Defendants received a hard drive and a flash-key. The hard drive contained 2,794 files, which were identified only by Plaintiffs' reference numbers, not exhibit numbers. (Ex. 1, ¶ 8.) The flash-key contained 57 video files. (Id.)  There were 78 exhibits listed on the September 15 exhibit list that were neither on the hard drive nor the flash-key. (Id.) |
| September 16, 2014 at 5:41 p.m. | The Court ordered Plaintiffs to provide Defendants "a complete Exhibit List organized by exhibit number, which corresponds to a complete portfolio of exhibits no later than 5:00 pm on Friday, September 19, 2014." (Doc. 1126.) |

3

| Date | Description |
|------|-------------|
| September 19, 2014 at 4:52 p.m. | Plaintiffs emailed Defendants another revised exhibit list. (Doc. 1161–1 at 2.) This list included 2,785 exhibits, separated into six groups, and each exhibit was given an exhibit number. (Ex. 1, ¶ 9.) The email informed that a hard drive with exhibits would be arriving momentarily, but that not all of the exhibits in Group 2 were on the hard drive. (Doc. 1161–1 at 2.) |
| September 19, 2014 at 4:55 p.m. | Defendants received two hard drives containing 1,966 exhibits. (Doc. 1161 at 2.) The first drive had folders for exhibits in Groups 1 and 3, which were identified by exhibit number, and a third folder labeled "2.1_ Healthcare_Indiv," which included exhibits identified only by reference number. (Ex. 1, ¶ 10.) The second drive had folders for exhibits in Groups 4, 5, and 6, all of which were identified by exhibit number. (Id.) |
| September 19, 2014 at 7:07 p.m. | Defendants received a hard drive containing 2,716 exhibits, still less than the 2,785 exhibits identified on the September 19 exhibit list. The exhibits in the folders for Groups 1, 3, 4, 5, and 6 were the same as the exhibits in the corresponding folder groups on the 4:55 p.m. hard drive. (Ex. 1, ¶ 11.) The exhibits in the folder for Group 2.1, however had 464 more exhibits than the corresponding folder group on the 4:55 p.m. hard drive. (Id.) And there was a new folder, labeled "2_Healthcare" that had 286 exhibits. (Id.) Nevertheless, these 750 new exhibits, still left a deficit of 55 exhibits in Group 2 (including Group 2.1) which were not provided, along with 14 other exhibits in Groups 1, 3, 4, 5, and 6 for a total of 69 exhibits listed by Plaintiffs which they failed to ever provide copies to Defense counsel. (Id.) |

This sequence of events does not constitute substantial compliance. The Court's September 16 Order required Plaintiffs to submit "a" "complete" "portfolio of exhibits" corresponding to "a" "complete Exhibit List" "organized by exhibit number." Plaintiffs delivered five hard drives, a flash-key, and two data download transfers, over the course of 10 days, that included different and/or duplicative exhibits. Seven dumps of data with no instruction, explanation, or idea as to what constituted Plaintiffs' trial exhibits is not substantial compliance. Defendants were left to analyze each dump, comparing the

1    thousands of exhibits/files in each, and, through process of elimination, try to determine

2    which exhibits comprised Plaintiffs' trial exhibits, a task even Plaintiffs have not

3    undertaken. The Court's September 16 Order requiring Plaintiffs to provide a final,

4    complete, and superseding set of exhibits was intended to *avoid* this.

5         Plaintiffs try to narrow the scope by pointing to the September 16 hard drive and

6    flash key as the operative trial exhibits.  There are several reasons why this data dump did

7    not constitute substantial compliance.  Plaintiffs sent these trial exhibits to Defendants

8    *before* the Court's September 16 Order.  After the Order issued, Plaintiffs did not inform

9    Defendants that these trial exhibits complied with the order, nor did they inform that they

10   would be sending another hard drive that did comply with the Court's Order.  Instead,

11   Defendants waited for three days in limbo, assuming that a new, complete and

12   superseding hard drive would be forthcoming, as the Order contemplated.  Defendants did

13   not waste time trying to figure out the differences in trial exhibits on the September 16

14   hard drive and flash key and the prior hard drives and data download transfers.  The Order

15   required a superseding, complete and final set of exhibits.  Plaintiffs did just that: they

16   sent Defendants two hard drives on September 19 at 4:55 p.m.  Defendants reasonably

17   relied on these hard drives—the only hard drives timely received after the Court's

18   September 16 Order—as being Plaintiffs' complete and final set of trial exhibits,

19   superseding all prior trial exhibits.  As a result, they did not waste time analyzing the

20   September 16 hard drive.  Instead, they focused on the September 19, 4:55 p.m. hard

21   drives as the operative trial exhibits.  Plaintiffs' contention—for the first time in their

22   October 3, 2014 Response, two weeks after the deadline—that the operative trial exhibits

23   were those delivered on September 16 is inconsistent with their prior representations. And

24   it does not give Defendants those three days back to prepare for trial.

25        In addition to being the only timely trial exhibits provided after the Court's

26   September 16 Order, Defendants relied on the September 19, 4:55 p.m. hard drives

27   because, as Plaintiffs themselves indicated in their September 19, 4:52 p.m. email, the

28   exhibits on those hard drives were different from the September 16 trial exhibits. (Doc.

1161–1 at 2: "we have undertaken to review the list, correct errors, combine documents consistent with past agreements, and rename the exhibit files in the court's format.") Plaintiffs try to down play the significance of those changes in their Response,[3] but the fact of the matter is that Defendants were entitled to a "complete" set of trial exhibits and the September 16 trial exhibits were not complete.  The September 16 exhibits, which were not identified by exhibit numbers, were modified and in Plaintiffs' own words the September 19 trial exhibits were "better and more user-friendly" and the "cleanest possible copy of the exhibits."  (Doc. 1174 at 2:8, 5:1; see also Doc. 1174 at 2:12: "an improved set.")  That is what the Order required and that is what Defendants were entitled to.  Providing Defendants an incomplete, unorganized, and unclean set of exhibits is not substantial compliance.

The September 16 trial exhibits were incomplete, ambiguous, and delivered prior to the Court's Order.  The September 19, 7:07 p.m. trial exhibits were untimely.[4]  The *only* exhibits that Plaintiffs timely provided Defendants *after* the Court's September 16 was their September 19, 4:55 p.m. hard drives.  Those are the operative trial exhibits and any exhibits not included on those hard drives should be excluded.[5]

**B.     The Sanction is Automatic and Self-Executing.**

Plaintiffs' attempt to argue no prejudice is foreclosed by the Court's *second* warning that the failure to comply "will results in automatic sanctions and exclusion of evidence."  (Doc. 1126 at 2:12-13.)  In addition, Plaintiffs provide no response to the

---

[3] Plaintiffs state that the September 19, 4:55 p.m. trial exhibits were "slightly rearranged (to remove unneeded items and combine like exhibits) and renumbered according to the Court's numbering format."  (Doc. 1174 at 3:18-21.) They also state that they did this "voluntarily" and for Defendants' "benefit" (Doc. 1174 at 2:7, 4:21-5:1.) Plaintiffs, however, were ordered to do this.

[4] Plaintiffs do not even attempt to argue that these trial exhibits are controlling or substantially complied with the Court's Order. Plaintiffs' contention that they waited to send a revised list until Friday because they were hoping for stipulations to reduce and/or combine exhibits is an excuse.  Submitting a complete set of exhibits was a requirement separate and apart from any stipulations made by the parties in the Pretrial Proposed Order ("PTPO").

[5] Plaintiffs admit that they have failed to *ever* provide Defendants 27 of these 805 trial exhibits, even after the September 19, 7:07 hard drive.  (Doc. 1176 at 2, ¶¶ 3-5.)

1    significant prejudice outlined by Defendants' in their Motion:  Plaintiffs had a complete

2    set of Defendants' trial exhibits 14 days longer than Defendants had a complete set of

3    Plaintiffs trial exhibits, giving Plaintiffs more time to prepare for trial.  (Doc. 1161 at

4    3:15-24.)  That admitted prejudice in and of itself justifies exclusion.  Defendants' trial

5    preparation continues to be stifled until this Motion is resolved, as they do not know

6    which exhibits are admissible and which are excluded.  Each day lost is detrimental and

7    irreversible.  And that continued prejudice is the direct result of Plaintiffs' failure to fully

8    comply with the Court's multiple Orders.  The prejudice of not having a concrete set of

9    Plaintiffs' trial exhibits is also compounded by the fact that, on June 27, 2014, Plaintiffs

10   intentionally removed from their Disclosure Statement all exhibits that they intended to

11   admit at trial, in violation of Fed.R.Civ.P. 26(a)(3)(A)(iii), leaving Defendants entirely in

12   the dark as to what to expect.  (See Defendants' Motion in Limine No. 1, Doc. 1100.)

13   Plaintiffs' hide-the-ball strategy is contrary to the Rules of Procedure, the Court's

14   Scheduling Order (Doc. 52), and fundamental principles of fairness, and should not be

15   condoned.

16          Plaintiffs' argument that Defendants managed to lodge objections to the 805

17   untimely trial exhibits misses the point entirely.  Defendants scrambled to get those

18   additional objections done, at great expense and time, because they had to; if they did not

19   raise objections and this Motion is denied, those objections were waived.  It took many

20   lawyers and several days to accomplish, which took valuable time away from trial

21   preparation.[6]  Meanwhile, Plaintiffs' counsel were able to use this additional time to

22

23          [6] When Defendants' counsel received the untimely hard drive at 7:07 p.m. on
     September 19, they were in the midst of finalizing the parties' Proposed Final Pretrial

24   Order (Doc. 1143). That filing occurred shortly before midnight and both parties were
     working diligently to get it filed on time.  The brunt of that work occurred after 7:00 p.m.,

25   with counsel for both parties feverishly exchanging drafts and revisions up until filing.
     Defendants received the untimely hard drive right in the thick of it.  Because it was a

26   Friday, only staff working on the Proposed Final Pretrial Order were asked to stay past
     5:00 p.m. There was not staff available to begin downloading and analyzing the untimely
     hard drive.  Again, that was because Plaintiffs did not deliver the untimely hard drive until

27   after working hours.  Staff began downloading and analyzing the exhibits on the timely
     4:55 p.m. hard drive on Monday, September 22.  That process took three days. Attorneys

28   began reviewing and making objections on Thursday, September 25. Staff then began

1    prepare for trial.  This unfairness is apparent and there is no less-intrusive sanction to cure

2    that prejudice.[7]  In addition, by refusing to sanction Plaintiffs simply because Defendants'

3    counsel employed herculean efforts to lodge timely objections, so as not to disrupt the

4    Court's other deadlines (Defendants could have deferred filing objections until securing a

5    ruling), the Court would be rewarding Plaintiffs' conduct and punishing Defendants'

6    efforts.  Finally, the prejudice in having to lodge objections to these 805 trial exhibits

7    extends beyond Defendants and their counsel; the taxpayers in this State are left to foot

8    the bill for the fees incurred in having to undertake that task.  Plaintiffs' counsel should be

9    ordered to reimburse the State for these fees to quell that separate and distinct prejudice.

10   **CONCLUSION**

11   For these reasons, Plaintiffs 819 untimely trial exhibits (noted at Doc. 1153–1 and

12   Doc. 1162–14 and acknowledged by Plaintiffs) should be excluded.  Plaintiffs' counsel

13   should also be ordered to reimburse the State for the fees and costs incurred in having to

14   lodge objections to these untimely trial exhibits.  Defendants further request an expedited

15   ruling so that Defendants can prepare accordingly for trial, which remains set to begin on

16   October 21, 2014.

17

18   _____

19   manually comparing the exhibits on the 4:55 pm hard drive with the exhibits on the
     untimely 7:07 hard drive. This was a prolonged process because Plaintiffs did not only
     provide the exhibits for the limited exhibit groups which they knew did not copy
20   correctly, but also provided duplicative sets of five other groups of exhibits, effectively
     hiding the ball and forcing Defendants' counsel to expend a significant amount of time
21   which otherwise would be have been spent on trial preparation, comparing the two drives
     to discern which exhibits were among the set that did not copy correctly. Plaintiffs never
22   provided an explanation. That process, which started on September 25, took two days.
     Defendants then spent the weekend, September 27 through September 29, making
23   objections to these 805 untimely exhibits.

24   Plaintiffs complain that Defendants' objections were over 2,000 pages. But that is
     because Plaintiffs listed 2,735 trial exhibits and, unlike Plaintiffs' objections, Defendants'
25   objections were specific and narrowly tailored. When Defendants asked Plaintiffs for a list
     of Defendants' exhibits that they objected to, Plaintiffs did not oblige.

26   [7] The prejudice is compounded by the fact that Plaintiffs' improper Rule 32
     designations of 20 witnesses (Doc. 1167) forced Defendants' counsel to spend
27   considerable time and resources to lodging tentative objections to these designations in the
     event the Court ordered them, time they could have spent preparing for trial and time
28   Plaintiffs' counsel did spend preparing for trial.

8

1    DATED this 6th day of October 2014.

2                                              STRUCK WIENEKE & LOVE, P.L.C.

3

4                                              By /s/ Daniel P. Struck
                                                  Daniel P. Struck
5                                                 Kathleen L. Wieneke
                                                  Rachel Love
6                                                 Timothy J. Bojanowski
                                                  Nicholas D. Acedo
7                                                 Ashlee B. Fletcher
                                                  Anne M. Orcutt
8                                                 Jacob B. Lee
                                                  STRUCK WIENEKE & LOVE, P.L.C.
9                                                 3100 West Ray Road, Suite 300
                                                  Chandler, Arizona  85226
10
                                                  Arizona Attorney General Thomas C. Horne
11                                                Office of the Attorney General
                                                  Michael E. Gottfried
12                                                Lucy M. Rand
                                                  Assistant Attorneys General
13                                                1275 W. Washington Street
                                                  Phoenix, Arizona 85007-2926
14
                                                  *Attorneys for Defendants*
15
     2960914.1
16

17

18

19

20

21

22

23

24

25

26

27

28

9

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Ajmel Quereshi:          aquereshi@npp-aclu.org

Alison Hardy:            ahardy@prisonlaw.com

Amelia M. Gerlicher:     agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com

Amir Q. Amiri:           aamiri@jonesday.com; ttualaulelei@jonesday.com

Amy Fettig:              afettig@npp-aclu.org

Asim Varma:              avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

Brenna Durkin:           bdurkin@azdisabilitylaw.org

Caroline N. Mitchell:    cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

Corene T. Kendrick:      ckendrick@prisonlaw.com; edegraff@prisonlaw.com

Daniel Clayton Barr:     DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

Daniel Joseph Pochoda:   dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org

Dara Levinson:           daralevinson@jonesday.com

David Cyrus Fathi:       dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

Donald Specter:          dspecter@prisonlaw.com

James Duff Lyall:        jlyall@acluaz.org; gtorres@acluaz.org

James M. Jellison:       jim@jellisonlaw.com; cindy@schleierlaw.com; kasey@jellisonlaw.com

Jennifer K. Messina:     jkmessina@jonesday.com

Jerica Lynn Peters:      jpeters@perkinscoie.com

Jessica Pari Jansepar Ross:   jross@azdisabilitylaw.org

John Howard Gray:        jhgray@perkinscoie.com; slawson@perkinscoie.com

John Laurens Wilkes:     jlwilkes@jonesday.com, dkkerr@jonesday.com

Jose de Jesus Rico:      jrico@azdisabilitylaw.org

10

1   Kamilla Mamedova:        kmamedova@jonesday.com

2   Kevin C. Brantley:        kbrantley@jonesday.com

3   Kirstin T. Eidenbach:     keidenbach@perkinscoie.com; dfreouf@perkinscoie.com;
                              docketphx@perkinscoie.com
4
    Matthew Benjamin de Mee: mdumee@perkinscoie.com; cwendt@perkinscoie.com
5
    Sara Norman:              snorman@prisonlaw.com
6
    Sarah Eve Kader:          skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org;
7                             rstarling@azdisabilitylaw.org

8   Taylor Freeman:           tfreeman@jonesday.com

9   Warren E. George, Jr.:    wgeorge@prisonlaw.com

10

11          I hereby certify that on this same date, I served the attached document by U.S.
    Mail, postage prepaid, on the following, who is not a registered participant of the
    CM/ECF System:
12
            N/A
13
                                              /s/ Daniel P. Struck
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28