# REDACTED EXHIBIT 2 TO THE DECLARATION OF DANIEL C. BARR [DOC. 1140]



# Arizona Department of Corrections

1601 WEST JEFFERSON
PHOENIX, ARIZONA 85007
(602) 542-5497
www.azcorrections.gov



JANICE K. BREWER
GOVERNOR

CHARLES L. RYAN
DIRECTOR

Hand Delivered, Electronic Mail, and
Certified Mail – Return Receipt Requested

September 21, 2012

Karen Mullenix, Director
Wexford Health Sources .
1850 N. Central Avenue, Suite 1050
Phoenix, Arizona 85004

Re:   Written Cure Notification - Contract No. 120075DC

Dear Ms. Mullenix:

The purpose of this letter is notify you of details of non-compliance, required corrective actions, and timeline for action to the above referenced contract between Wexford Health Sources ("Wexford") and the Arizona Department of Corrections ("ADC").

The action is being made in accordance with the contract's Special Terms and Conditions, Section 2.19 Contract Monitoring General Requirements, paragraph 2.19.5, which states:

> If non-compliance issues, other than those identified in Subsection 2.19.6, are identified during a quarterly audit required under Section 2.20, or any other monitoring activity, the Department Monitoring Staff shall provide a written cure notice to the Contractor's Arizona CEO and Area Manager regarding the details of the non-compliance, the required corrective action, and the period of time allowed to bring performance back into compliance with Contract requirements.

> If, at the end of the specified time period, the Contractor has complied with the cure notice requirements, the Department shall take no further action. (2.19.5.1)

> If, however, the Contractor has not complied with the cure notice requirements, the Department Contract Monitor shall notify the Contractor's Arizona CEO and Area Manager in writing that the matter shall be referred to the Chief Procurement Officer to take action against the Contractor, including but not limited to monetary sanctions, suspension, refusal to renew, or termination of the Contract. (2.19.5.2)



EXHIBIT NO. 70
Sharp
10-9-12

- 1 -

Confidential Information - Subject to Protective Order

ADC027854

Several events detailing significant issues of non-compliance are described below:

### 1. August 17, 2012, ASPC-Perryville/Lumley Unit

On August 17, 2012, Wexford nursing personnel were distributing medication on Lumley Unit - Yard 24 to include "watch swallow" medications. In accordance with "watch swallow" protocols, certain medications in powder form require administration to be completed via "floating" the medication in a small cup of water, which the patient drinks. During this distribution of medication, Wexford nurses depleted their stock of cups prior to completing medication distribution to the inmate population. Wexford nurses failed to stop the medication line and retrieve additional plastic cups, as would have been appropriate. Rather than refilling the supply of cups, a Wexford nurse placed the powdered "watch swallow" medication in an inmate's hand, directing the inmate to lick the powdered medication from her own hand.

This improper administration of medication instigated disorderly behavior by the affected inmate, requiring a security response. The nurses' disregard for proper protocol in administering this inmate's medication and their disrespect for the inmate are significant non-compliance issues that require corrective action.

### 2. August 22, 2012, Medication Expiration Report (Statewide)

During the month of August 2012, ADC conducted random reviews of prescriptions, utilizing the Medication Expiration Report published by Wexford for July 1 – August 11, 2012. In completing this review, ADC learned that a significant number of inmates may not have been receiving their medications as prescribed due to expired prescription(s) and inappropriate renewals or refills. Approximately 8,358 prescriptions required review and potential renewal to ensure inmates received their required medications.

Wexford's lack of communication to its field supervisors regarding the necessary process for reviewing the Medication Expiration Report for renewal of medication, together with Wexford's delayed response and lack of urgency to correct the identified problem, contributed to this significant non-compliance issue. Specifically, during a meeting on August 22, 2012, between ADC's Monitoring Bureau leadership and Wexford Regional and Corporate personnel, it was apparent, based on statements from Wexford's Corporate Pharmacist, Denise Mervis, Pharm.D., that Wexford was aware of the expired medication issue, but had not taken adequate, if any, action to correct it. In this meeting, Dr. Mervis referred to the expired medication renewals as a critical issue.

When asked on August 22, 2012 what actions Wexford had undertaken to correct this problem, Wexford leadership advised that they intended to conduct an initial review of the July 1, 2012 – August 11, 2012 Medication Expiration Report beginning August 27, 2012. Wexford's decision to wait five days to begin reviewing the Medication Expiration Report was an inadequate response to a significant issue of grave concern to ADC. As a result of Wexford's delayed response, ADC deployed State resources on August 23, 2012 to ADC prison complexes statewide to review various data sources in an effort to identify inmates in need of medication renewal and to ensure that renewal actually occurred. Multiple ADC prison complexes also enhanced security vigilance by increasing the rate of security checks to 30-minute intervals on all inmates to ensure the well-being of the inmate population.

- 2 -

Confidential Information - Subject to Protective Order001

### 3. August 23, 2012, ASPC-Florence/Central Unit

On August 23, 2012, an inmate was found hanging from a sheet in his housing location. ADC staff removed the sheet, placed the inmate on a gurney, and arranged for air transport to an outside hospital. The inmate (MH-3) was last seen by an ADC psychiatrist provider on May 1, 2012. At that time, the provider prescribed lithium carbonate, a "watch swallow" medication used as a mood stabilizer, for 180 days. Medication Administration Records (MARs) showed this inmate received his medication in May, June, and July. On July 18, 2012, during a psychiatric follow-up, the inmate reported that the lithium carbonate had been helpful in stabilizing his mood. During ADC's investigation of this incident, ADC determined that this inmate had not received his psychotropic medication for the first 23 days of August 2012, as evidenced by the fact that no MAR had been generated. Failing to deliver psychotropic medication as prescribed is a significant, non-compliance issue.

### 4. August 27, 2012, ASPC-Lewis/Morey Unit

On August 27, 2012, between approximately 0600 and 0630 hours, while conducting diabetic insulin line in the medical unit at ASPC – Lewis – Morey Unit, Licensed Practical Nurse (LPN) N. Nwaohia contaminated a vial of insulin being used on the line. This contamination occurred when LPN Nwaohia drew insulin with a syringe for a Hepatitis-C positive inmate from a vial of "Regular" insulin and injected this insulin into the inmate. Utilizing the same syringe, she then drew a second dose of insulin from a vial of "Lantus" insulin and injected the secondary dose into the same inmate. LPN Nwaohia's actions contaminated the multi-dose "Lantus" vial. This vial was then utilized to provide insulin to other insulin dependent inmates.

Despite Wexford's Nurse Lindsay Stephen becoming aware of this information on August 27, 2012, Ms. Stephen did not file an Incident Report on the event, in accordance with ADC policy, until September 4, 2012. Rather, on August 27, 2012, she disposed of the insulin vials thought to have been involved in the contamination event and failed to notify Wexford management or appropriate ADC staff of the contamination event or her actions in destroying the insulin vials.

Wexford Site Manager Sumi Erno reported contacting Wexford Regional Manager Linda Maschner on August 28, 2012, to report the incident to her. Ms. Erno reported being directed by Ms. Maschner to begin identifying Insulin Dependent Diabetes Mellitus (IDDM) inmates so that baseline testing for Hepatitis-C could commence. As a precaution, baseline testing was also conducted for HIV. (The index inmate, although known to be positive for Hepatitis-C, was subsequently tested for both Hepatitis-C and HIV.) Pending receipt of those test results, plans were implemented to test all inmates potentially exposed through this event for both Hepatitis-C and HIV. Test results for the index inmate later confirmed him as positive for Hepatitis-C and negative for HIV.

Also, on August 28, 2012, upon direction of Wexford Management, Wexford RN Supervisor Sienkiewicz contacted AB Staffing, the subcontracted employer of LPN Nwaohia. Ms. Sienkiewicz reportedly advised AB Staffing that LPN Nwaohia would be prohibited from performing nursing services in support of Wexford contracts in the state. Wexford requested that AB Staffing file a complaint with the Arizona State Board of Nursing regarding LPN Nwaohia's actions. One week later, on September 4, 2012, while following up at ADC's request, Wexford learned that no complaint regarding LPN Nwaohia had been received by the Board. Wexford Regional Manager Maschner then formally submitted the complaint on the afternoon of September 4, 2012.

- 3 -

Confidential Information - Subject to Protective Order002
ADC027856

In identifying IDDM inmates, Ms. Erno initially reported on August 28, 2012, as having 105 inmates at Lewis that receive insulin. This number later changed to 103, following review of a spreadsheet created by Wexford medical personnel at the Lewis Complex listing inmates receiving insulin at Lewis. In review of this list, duplication of some inmates was noted, thus the 103 number derived from this list was determined questionable.

Additionally, the Department received a report from Wexford generated from the online reporting system of their subcontracted Pharmacy (Diamond Pharmacy Service) on September 5, 2012, which reflected 91 inmates receiving insulin at Lewis. In an email coinciding with the provision of this report, Wexford Director Karen Mullenix, stipulated that the report was generated by Wexford's Site Manager at Lewis (Sumi Erno) and that she (Mullenix) had concerns with the validity of the information Ms. Erno had provided thus far.

On September 5, 2012, during a meeting with inmates at ASPC-Lewis, an additional 9 inmates not previously identified by Wexford were added to the list of those potentially exposed.

Due to the continued fluctuation of information from Wexford and the lack of systems in place to readily identify insulin dependent/chronic care inmates, ADC deployed additional compliance monitoring staff to ASPC-Lewis on September 5, 6, & 7. Wexford did not deploy additional resources to the site until September 6, 2012. It was not until Friday, September 7, 2012, that the total population of insulin dependent inmates and the subset of potentially exposed inmates were identified with certainty. Further, baseline testing of this population was not completed until September 10, 2012, despite Wexford's earlier reporting that this had been completed on September 4, 2012.

The failure to follow established nursing protocols, poor record keeping, mismanagement of documentation, inadequate and inaccurate communication, lack of timely managerial or administrative support, and failure to ensure that corrective action had been completed represent serious issues of non-compliance.

### 5. September 13, 2012, ASPC-Perryville/Santa Rosa Unit

On September 13, 2012, at approximately 1715 hours, Wexford Director Karen Mullenix notified ADC of a possible case of pertussis (whooping cough) at ASPC-Perryville. Wexford management did not know the name(s) or number(s) of inmate(s) affected, or the unit(s) identified with the reported case. Wexford's notification of the reported pertussis case was inadequate and inconsistent. Further, without sufficient factual detail of the incident, Wexford reported no action plan to address the situation.

Ms. Mullenix further reported that Wexford's Dr. Palmer spoke to both the County and State Health Departments about the case. She also reported that Dr. Bell (Regional Medical Manager) was called about this issue two days prior, September 11, 2012, and although he was aware of the potential diagnosis, that information had not been communicated to either Ms. Mullenix or the ADC Site Monitors. ADC Audit Nurse Mendoza contacted Wexford facility personnel and determined that an inmate tested positive for pertussis on August 13, 2012, approximately 30 days prior to Wexford's notification to ADC. ADC Audit Nurse Mendoza also confirmed the inmate's name, number and location.

- 4 -

In a phone conversation later that evening with Site Manager Deb Cherry and Richard Pratt, ADC Interim Assistant Director, Health Services Monitoring Bureau, it was reported that Dr. Palmer had seen the inmate who tested positive for pertussis approximately 10 days prior to Wexford's notification to ADC. Ms. Cherry also advised she was aware of this issue up to 10 days prior and failed to advise either Ms. Mullenix or ADC Site Monitors at that time. During ADC's investigation, Ms. Cherry speculated that the patient may have unknowingly contracted the disease through inmate visitation in the past few weeks, as the inmate was later contacted by her visitor to advise she or her child had been diagnosed with pertussis. Ms. Cherry also reported that Dr. Palmer contacted the County Health Department regarding the case and that she ordered 25 test kits from the Maricopa County Health Department to test any additional suspected cases of pertussis. That, in fact, was not the case. Ms. Cherry sent an "undeliverable" e-mail to the County's website, requesting the test kits.

A known case of a reportable infectious disease went unreported to ADC staff and Wexford State Level Management for 30 days, indicating a lack of urgency, a lack of awareness of the situation's potential seriousness, a breakdown of communication between field personnel and management, or all of the above. Further, Wexford's failure to independently engage in developing a plan by which to identify/confirm current and future suspected cases of pertussis is a significant non-compliance issue.

## Required CURE actions

The aforementioned significant events have necessitated ADC to substantially supplement Wexford with personnel resources, operational modifications, and specific direction that should not be expected and are not required under this contract. ADC expects Wexford to effect sustained, systemic operational improvements in the management and delivery of health care services to ADC inmates. ADC is not contractually obligated to deploy its resources to manage Wexford's day-to-day, as well as crisis operations.

The following non-compliance issues, as identified here and/or in previously provided monitoring reports, require corrective action:

STAFFING: Inadequate staffing levels in multiple program areas at multiple locations

1.    Inadequate support from corporate staff to field staff during normal and crisis operations

2.    Staffing levels creating inappropriate scheduling gaps in on-site medical coverage, including In-Patient Component

3.    Staffing levels forcing existing staff to work excessive hours, creating fatigue risks

MEDICATION/DOCUMENTATION: Incorrect, incomplete, inconsistent medication administration or documentation of care provided

4.    Quantitative decrease in routine institutional care: backlog of prescription medication expiration review

5.    Incorrect or incomplete pharmacy prescriptions (medication not matching chart order, wrong dosage)

Confidential Information - Subject to Protective Order004                                                     ADC027858

6.   Inappropriate discontinuation/change of medication

7.   Inconsistent non-formulary medication approval process

8.   Inconsistent or contradictory medication refill and/or return procedures

9.   Inadequate pharmacy reports

10.  Inconsistent documentation of Medication Administration Records (MARs)

11.  Inconsistent provision of release, transfer, and/or renewal medications

12.  Inability to readily identify specific groups of inmates or chronic conditions based upon medications prescribed (e.g., diabetics)

SENSE OF URGENCY RESPONSE, and COMMUNICATION: ADC deployment of resources to intervene in healthcare operations as a result of corporate inaction

13.  Inadequate/untimely communication between field staff, corporate staff, and ADC

14.  Lack of responsiveness and/or lack of awareness of incident urgency and reporting requirements

15.  Quantitative decrease in routine institutional care: backlog of chart reviews

16.  Quantitative decrease in routine institutional care: backlog of provider line appointments

17.  Quantitative decrease in routine institutional care: untimely handling of Health Needs Requests

18.  Quantitative decrease in routine institutional care: backlog/cancellation of outside specialty consultations

19.  Unresponsive approach to ADC inquiries on patient information

20.  Unresponsive approach to inmate grievance process

ADC expects Wexford to provide a proposed corrective action plan for all of the identified deficiencies by October 1, 2012. Although Wexford is afforded 7, 30, 60, or 90 days to complete corrective action, it is ADC's expectation that Wexford will begin corrective action on all identified deficiencies immediately. Corrective action must be ongoing throughout the 90-day cure period, and Wexford must regularly demonstrate to ADC Contract Monitors that corrective action is ongoing and being completed throughout the 90-day cure period.

This letter shall also serve as a demand for Right to Assurance in accordance with section 8.1 of the Uniform Terms and Conditions, that it is Wexford's intent to perform and comply with all provisions of the contract. Accordingly, Wexford has ten (10) calendar days from the date of this letter to respond to the demand for assurance.

Confidential Information - Subject to Protective Order005                    ADC027859

In accordance with the contract's Special Terms and Conditions, Section 2.19 Contract Monitoring General Requirements, paragraph 2.19.7, Wexford has ten (10) calendar days from the date of this letter to submit a written appeal of this Cure Notice.

Wexford's failure to provide written assurance of its intent to perform and comply with all contractual provisions within ten (10) calendar days, or its failure to cure all deficiencies noted herein within ninety (90) calendar days from the date of this letter may, at the State's option, be the basis for terminating the contract under the Uniform Terms and Conditions or other rights and remedies available by law or provided by the contract.

Sincerely,

Joe Profiri
Contract Beds Operations Director
Arizona Department of Corrections

Enclosures:   Cure Matrix Monitoring Report
              Cure Matrix Monitoring Summary Report

c:   Charles L. Ryan, Director - ADC
     Jeff Hood, Deputy Director - ADC
     Dawn Northup, General Counsel - ADC
     Michael Kearns, Division Director, Administrative Services - ADC
     Richard Pratt, Interim Assistant Director, Health Services - ADC
     Leon George, Chief Procurement Officer - ADC
     Mark W. Hale, President and Chief Executive Officer - Wexford
     Daniel L. Conn, Executive Vice President and COO - Wexford
     John Froehlich, Vice President of Finance - Wexford

- 7 -

Confidential Information - Subject to Protective Order006    ADC027860

## ADC HEALTH SERVICES CONTRACT MONITORING BUREAU
## WEXFORD HEALTH SOURCES COMPLIANCE DEFICIENCY CURE NOTICE

Report Date:

| # | ITEM | Douglas | Eyman | Florence | Lewis | Perryville | Phoenix | Safford | Tucson | Winslow | Yuma |
|---|------|---------|-------|----------|-------|------------|---------|---------|--------|---------|------|
| 1 | Inadequate support from corporate staff to field staff during normal and crisis operations | | | | | | | | | | |
| 2 | Staffing levels creating inappropriate scheduling gaps in on-site medical coverage, including In-Patient Component | | | | | | | | | | |
| 3 | Staffing levels forcing existing staff to work excessive hours, creating fatigue risks | | | | | | | | | | |
| 4 | Quantitative decrease in routine institutional care: backlog of prescription medication expiration review | | | | | | | | | | |
| 5 | Incorrect or incomplete pharmacy prescriptions (medication not matching chart order, wrong dosage) | | | | | | | | | | |
| 6 | Inappropriate discontinuation/change of medication | | | | | | | | | | |
| 7 | Inconsistent non-formulary medication approval process | | | | | | | | | | |
| 8 | Inconsistent or contradictory medication refill and/or return procedures | | | | | | | | | | |
| 9 | Inadequate pharmacy reports | | | | | | | | | | |
| 10 | Inconsistent documentation of Medication Administration Records (MARs) | | | | | | | | | | |

Page 1 of 2

Confidential Information - Subject to Protective Order007

ADC027861

## ADC HEALTH SERVICES CONTRACT MONITORING BUREAU
## WEXFORD HEALTH SOURCES COMPLIANCE DEFICIENCY CURE NOTICE

Report Date:

| # | ITEM | Douglas | Eyman | Florence | Lewis | Perryville | Phoenix | Safford | Tucson | Winslow | Yuma |
|---|------|---------|-------|----------|-------|------------|---------|---------|--------|---------|------|
| 11 | Inconsistent provision of release, transfer, and/or renewal medications | | | | | | | | | | |
| 12 | Inability to readily identify specific groups of inmates or chronic conditions based upon medications prescribed (e.g., diabetics) | | | | | | | | | | |
| 13 | Inadequate/untimely communication between field staff, corporate staff, and ADC | | | | | | | | | | |
| 14 | Lack of responsiveness and/or lack of awareness of incident urgency and reporting requirements | | | | | | | | | | |
| 15 | Quantitative decrease in routine institutional care: backlog of chart reviews | | | | | | | | | | |
| 16 | Quantitative decrease in routine institutional care: backlog of provider line appointments | | | | | | | | | | |
| 17 | Quantitative decrease in routine institutional care: untimely handling of Health Needs Requests | | | | | | | | | | |
| 18 | Quantitative decrease in routine institutional care: backlog/ cancellation of outside specialty consultations | | | | | | | | | | |
| 19 | Unresponsive approach to ADC inquiries on patient information | | | | | | | | | | |
| 20 | Unresponsive approach to inmate grievance process | | | | | | | | | | |

Page 2 of 2

Confidential Information - Subject to Protective Order008

ADC027862

**ADC HEALTH SERVICES CONTRACT MONITORING BUREAU**
**WEXFORD HEALTH SOURCES COMPLIANCE DEFICIENCY CURE NOTICE**

| # | ITEM | ISSUES | LOCATION | ONGOING FINDINGS AND ASSOCIATED CURE ACTIONS, BY LOCATION | G/A/R? |
|---|------|--------|----------|-----------------------------------------------------------|--------|
| 1 | Inadequate support from corporate staff to field staff during normal and crisis operations. Due to be cured within: 7 calendar days | No visible evidence of additional Wexford corporate staff support in the field during crisis operations. No immediate plan of action provided in the event of unexpected events. Lack of guidance from corporate staff to local staff in the field. Written directives are unclear, inconsistent, or in conflict with verbal directions. | 1. ASPC-DOUGLAS 2. ASPC-EYMAN 3. ASPC-FLORENCE 4. ASPC-LEWIS 5. ASPC-PERRYVILLE 6. ASPC-PHOENIX 7. ASPC-SAFFORD 8. ASPC-TUCSON 9. ASPC-WINSLOW 10. ASPC-YUMA | | 1) 2) 3) 4) 5) 6) 7) 8) 9) 10) |
| 2 | Staffing levels creating inappropriate scheduling gaps in on-site medical coverage, including In-Patient Component. Due to be cured within: 90 calendar days | Staffing patterns are not in compliance with contract requirements. On-site coverage not fully maintained between shifts, with total lack of coverage for some shifts. | 1. ASPC-DOUGLAS 2. ASPC-EYMAN 3. ASPC-FLORENCE 4. ASPC-LEWIS 5. ASPC-PERRYVILLE 6. ASPC-PHOENIX 7. ASPC-SAFFORD 8. ASPC-TUCSON 9. ASPC-WINSLOW 10. ASPC-YUMA | | 1) 2) 3) 4) 5) 6) 7) 8) 9) 10) |
| 3 | Staffing levels forcing existing staff to work excessive hours, creating fatigue risks. Due to be cured within: 30 calendar days | Due to existing staffing levels not held to appropriate standards, some nursing staff is working excessive hours. Back-to-back shifts creating high potential for fatigue and less-than-satisfactory patient care. | 1. ASPC-DOUGLAS 2. ASPC-EYMAN 3. ASPC-FLORENCE 4. ASPC-LEWIS 5. ASPC-PERRYVILLE 6. ASPC-PHOENIX 7. ASPC-SAFFORD 8. ASPC-TUCSON 9. ASPC-WINSLOW 10. ASPC-YUMA | | 1) 2) 3) 4) 5) 6) 7) 8) 9) 10) |

Page 1 of 7

ADC HEALTH SERVICES CONTRACT MONITORING BUREAU
WEXFORD HEALTH SOURCES COMPLIANCE DEFICIENCY CURE NOTICE

| # | ITEM | ISSUES | LOCATION | ONGOING FINDINGS AND ASSOCIATED CURE ACTIONS, BY LOCATION | G/A/R? |
|---|------|--------|----------|-----------------------------------------------------------|--------|
| 4 | Quantitative decrease in routine institutional care: backlog of prescription medication expiration review. Due to be cured within: 30 calendar days | Expiring Medication Review report not being reviewed for medication expiration. Results may lead to Inmates going without prescribed meds. | 1. ASPC-DOUGLAS<br>2. ASPC-EYMAN<br>3. ASPC-FLORENCE<br>4. ASPC-LEWIS<br>5. ASPC-PERRYVILLE<br>6. ASPC-PHOENIX<br>7. ASPC-SAFFORD<br>8. ASPC-TUCSON<br>9. ASPC-WINSLOW<br>10. ASPC-YUMA | | 1)<br>2)<br>3)<br>4)<br>5)<br>6)<br>7)<br>8)<br>9)<br>10) |
| 5 | Incorrect or incomplete pharmacy prescriptions (medication not matching chart order, wrong dosage) Due to be cured within: 30 calendar days | Prescriptions written for the wrong dosage. Prescriptions written for medications that do not match the order in the medical chart. Illegible documentation. | 1. ASPC-DOUGLAS<br>2. ASPC-EYMAN<br>3. ASPC-FLORENCE<br>4. ASPC-LEWIS<br>5. ASPC-PERRYVILLE<br>6. ASPC-PHOENIX<br>7. ASPC-SAFFORD<br>8. ASPC-TUCSON<br>9. ASPC-WINSLOW<br>10. ASPC-YUMA | | 1)<br>2)<br>3)<br>4)<br>5)<br>6)<br>7)<br>8)<br>9)<br>10) |
| 6 | Inappropriate discontinuation/ change of medication Due to be cured within: 30 calendar days | Changes made in inmate meds without treatment plan, appointment log or SOAPE notes. | 1. ASPC-DOUGLAS<br>2. ASPC-EYMAN<br>3. ASPC-FLORENCE<br>4. ASPC-LEWIS<br>5. ASPC-PERRYVILLE<br>6. ASPC-PHOENIX<br>7. ASPC-SAFFORD<br>8. ASPC-TUCSON<br>9. ASPC-WINSLOW<br>10. ASPC-YUMA | | 1)<br>2)<br>3)<br>4)<br>5)<br>6)<br>7)<br>8)<br>9)<br>10) |

ADC – September 20, 2012

Page 2 of 7

ADC027864

ADC HEALTH SERVICES CONTRACT MONITORING BUREAU
WEXFORD HEALTH SOURCES COMPLIANCE DEFICIENCY CURE NOTICE

| # | ITEM | ISSUES | LOCATION | ONGOING FINDINGS AND ASSOCIATED CURE ACTIONS, BY LOCATION | G/A/R? |
|---|------|--------|----------|-----------------------------------------------------------|--------|
| 7 | Inconsistent non-formulary medication approval process<br><br>Due to be cured within:<br>30 calendar days | Non-Formulary Drug Requests are not being made, or incorrectly requested, resulting in delay of medication to the inmate. | 1. ASPC-DOUGLAS<br>2. ASPC-EYMAN<br>3. ASPC-FLORENCE<br>4. ASPC-LEWIS<br>5. ASPC-PERRYVILLE<br>6. ASPC-PHOENIX<br>7. ASPC-SAFFORD<br>8. ASPC-TUCSON<br>9. ASPC-WINSLOW<br>10. ASPC-YUMA | | 1)<br>2)<br>3)<br>4)<br>5)<br>6)<br>7)<br>8)<br>9)<br>10) |
| 8 | Inconsistent or contradictory medication refill and/or return procedures<br><br>Due to be cured within:<br>30 calendar days | Medication refill procedures and return procedures have been modified repeatedly and are unclear, leading to gaps in medications for inmates. | 1. ASPC-DOUGLAS<br>2. ASPC-EYMAN<br>3. ASPC-FLORENCE<br>4. ASPC-LEWIS<br>5. ASPC-PERRYVILLE<br>6. ASPC-PHOENIX<br>7. ASPC-SAFFORD<br>8. ASPC-TUCSON<br>9. ASPC-WINSLOW<br>10. ASPC-YUMA | | 1)<br>2)<br>3)<br>4)<br>5)<br>6)<br>7)<br>8)<br>9)<br>10) |
| 9 | Inadequate pharmacy reports<br><br>Due to be cured within:<br>60 calendar days | A review of inmates without medication requires examining both Expiring Medication Report and On-Line Reporting data; subcontractor (Diamond) software system is very slow to access. Inability to obtain desired reports from Wexford in a timely manner. | 1. ASPC-DOUGLAS<br>2. ASPC-EYMAN<br>3. ASPC-FLORENCE<br>4. ASPC-LEWIS<br>5. ASPC-PERRYVILLE<br>6. ASPC-PHOENIX<br>7. ASPC-SAFFORD<br>8. ASPC-TUCSON<br>9. ASPC-WINSLOW<br>10. ASPC-YUMA | | 1)<br>2)<br>3)<br>4)<br>5)<br>6)<br>7)<br>8)<br>9)<br>10) |

ADC – September 20, 2012

Confidential Information - Subject to Protective Order011

ADC027865

**ADC HEALTH SERVICES CONTRACT MONITORING BUREAU**
**WEXFORD HEALTH SOURCES COMPLIANCE DEFICIENCY CURE NOTICE**

| # | ITEM | ISSUES | LOCATION | ONGOING FINDINGS AND ASSOCIATED CURE ACTIONS, BY LOCATION | G/A/R? |
|---|------|--------|----------|-----------------------------------------------------------|--------|
| 10 | Inconsistent documentation of Medication Administration Records (MARs) <br><br> Due to be cured within: 30 calendar days | Failure to provide a current MAR for patients on medication. Medication orders or refusals in chart do not match MAR. MARs completed prior to medication delivery. | 1. ASPC-DOUGLAS<br>2. ASPC-EYMAN<br>3. ASPC-FLORENCE<br>4. ASPC-LEWIS<br>5. ASPC-PERRYVILLE<br>6. ASPC-PHOENIX<br>7. ASPC-SAFFORD<br>8. ASPC-TUCSON<br>9. ASPC-WINSLOW<br>10. ASPC-YUMA | | 1)<br>2)<br>3)<br>4)<br>5)<br>6)<br>7)<br>8)<br>9)<br>10) |
| 11 | Inconsistent provision of release, transfer, and/or renewal medications <br><br> Due to be cured within: 30 calendar days | Inmates are discharged/ released/transferred without medications. | 1. ASPC-DOUGLAS<br>2. ASPC-EYMAN<br>3. ASPC-FLORENCE<br>4. ASPC-LEWIS<br>5. ASPC-PERRYVILLE<br>6. ASPC-PHOENIX<br>7. ASPC-SAFFORD<br>8. ASPC-TUCSON<br>9. ASPC-WINSLOW<br>10. ASPC-YUMA | | 1)<br>2)<br>3)<br>4)<br>5)<br>6)<br>7)<br>8)<br>9)<br>10) |
| 12 | Inability to readily identify specific groups of inmates or chronic conditions based upon medications prescribed (e.g., diabetics) <br><br> Due to be cured within: 30 calendar days | No reliable data source to identify exact number of chronic care inmates. | 1. ASPC-DOUGLAS<br>2. ASPC-EYMAN<br>3. ASPC-FLORENCE<br>4. ASPC-LEWIS<br>5. ASPC-PERRYVILLE<br>6. ASPC-PHOENIX<br>7. ASPC-SAFFORD<br>8. ASPC-TUCSON<br>9. ASPC-WINSLOW<br>10. ASPC-YUMA | | 1)<br>2)<br>3)<br>4)<br>5)<br>6)<br>7)<br>8)<br>9)<br>10) |

ADC - September 20, 2012

Confidential Information - Subject to Protective Order012

ADC027866

## ADC HEALTH SERVICES CONTRACT MONITORING BUREAU
## WEXFORD HEALTH SOURCES COMPLIANCE DEFICIENCY CURE NOTICE

| # | ITEM | ISSUES | LOCATION | ONGOING FINDINGS AND ASSOCIATED CURE ACTIONS, BY LOCATION | G/A/R? |
|---|------|--------|----------|-----------------------------------------------------------|--------|
| 13 | Inadequate/untimely communication between field staff, corporate staff, and ADC. Due to be cured within: 7 calendar days | Wexford field staff failed to notify ADC or Wexford corporate on a significant medical event. | 1. ASPC-DOUGLAS<br>2. ASPC-EYMAN<br>3. ASPC-FLORENCE<br>4. ASPC-LEWIS<br>5. ASPC-PERRYVILLE<br>6. ASPC-PHOENIX<br>7. ASPC-SAFFORD<br>8. ASPC-TUCSON<br>9. ASPC-WINSLOW<br>10. ASPC-YUMA | | 1)<br>2)<br>3)<br>4)<br>5)<br>6)<br>7)<br>8)<br>9)<br>10) |
| 14 | Lack of responsiveness and/or lack of awareness of incident urgency and reporting requirements. Due to be cured within: 7 calendar days | Reviewing records for expiring medications not responded to by Wexford with the urgency the situation warranted. Wexford field staff failed to make public health notifications on a potential infectious outbreak and may have delayed ADC notification by up to 30 days | 1. ASPC-DOUGLAS<br>2. ASPC-EYMAN<br>3. ASPC-FLORENCE<br>4. ASPC-LEWIS<br>5. ASPC-PERRYVILLE<br>6. ASPC-PHOENIX<br>7. ASPC-SAFFORD<br>8. ASPC-TUCSON<br>9. ASPC-WINSLOW<br>10. ASPC-YUMA | | 1)<br>2)<br>3)<br>4)<br>5)<br>6)<br>7)<br>8)<br>9)<br>10) |
| 15 | Quantitative decrease in routine institutional care: backlog of chart reviews. Due to be cured within: 60 calendar days | Excessive inmate medical records are pending provider review and medication renewals, lacking signatures. New arrivals and transfers are not receiving timely chart reviews. | 1. ASPC-DOUGLAS<br>2. ASPC-EYMAN<br>3. ASPC-FLORENCE<br>4. ASPC-LEWIS<br>5. ASPC-PERRYVILLE<br>6. ASPC-PHOENIX<br>7. ASPC-SAFFORD<br>8. ASPC-TUCSON<br>9. ASPC-WINSLOW<br>10. ASPC-YUMA | | 1)<br>2)<br>3)<br>4)<br>5)<br>6)<br>7)<br>8)<br>9)<br>10) |

ADC—September 20, 2012

Page 5 of 7

ADC027867

**ADC HEALTH SERVICES CONTRACT MONITORING BUREAU**
**WEXFORD HEALTH SOURCES COMPLIANCE DEFICIENCY CURE NOTICE**

| # | ITEM | ISSUES | LOCATION | ONGOING FINDINGS AND ASSOCIATED CURE ACTIONS, BY LOCATION | G/A/R? |
|---|------|--------|----------|-----------------------------------------------------------|--------|
| 16 | Quantitative decrease in routine institutional care: backlog of provider line appointments <br><br> Due to be cured within: <br> 60 calendar days | Chronic care inmates not being seen on regular intervals. Psych inmates not being seen at regular intervals. New arrivals not being seen as required. Appointment wait times are excessive. | 1. ASPC-DOUGLAS <br> 2. ASPC-EYMAN <br> 3. ASPC-FLORENCE <br> 4. ASPC-LEWIS <br> 5. ASPC-PERRYVILLE <br> 6. ASPC-PHOENIX <br> 7. ASPC-SAFFORD <br> 8. ASPC-TUCSON <br> 9. ASPC-WINSLOW <br> 10. ASPC-YUMA | | 1) <br> 2) <br> 3) <br> 4) <br> 5) <br> 6) <br> 7) <br> 8) <br> 9) <br> 10) |
| 17 | Quantitative decrease in routine institutional care: untimely handling of Health Needs Requests <br><br> Due to be cured within: <br> 7 calendar days | HNRs are not triaged within 24 hours. | 1. ASPC-DOUGLAS <br> 2. ASPC-EYMAN <br> 3. ASPC-FLORENCE <br> 4. ASPC-LEWIS <br> 5. ASPC-PERRYVILLE <br> 6. ASPC-PHOENIX <br> 7. ASPC-SAFFORD <br> 8. ASPC-TUCSON <br> 9. ASPC-WINSLOW <br> 10. ASPC-YUMA | | 1) <br> 2) <br> 3) <br> 4) <br> 5) <br> 6) <br> 7) <br> 8) <br> 9) <br> 10) |
| 18 | Quantitative decrease in routine institutional care: backlog/ cancellation of outside specialty consultations <br><br> Due to be cured within: <br> 60 calendar days | Inmates previously (under ADC) approved for outside specialty consults inappropriately canceled by Wexford. Wexford approval process proves to be excessively delayed, or responded to in a manner which does not provide adequate and continuing care for the inmate. | 1. ASPC-DOUGLAS <br> 2. ASPC-EYMAN <br> 3. ASPC-FLORENCE <br> 4. ASPC-LEWIS <br> 5. ASPC-PERRYVILLE <br> 6. ASPC-PHOENIX <br> 7. ASPC-SAFFORD <br> 8. ASPC-TUCSON <br> 9. ASPC-WINSLOW <br> 10. ASPC-YUMA | | 1) <br> 2) <br> 3) <br> 4) <br> 5) <br> 6) <br> 7) <br> 8) <br> 9) <br> 10) |

ADC– September 20, 2012

Confidential Information - Subject to Protective Order014

ADC027868

ADC HEALTH SERVICES CONTRACT MONITORING BUREAU
WEXFORD HEALTH SOURCES COMPLIANCE DEFICIENCY CURE NOTICE

| # | ITEM | ISSUES | LOCATION | ONGOING FINDINGS AND ASSOCIATED CURE ACTIONS, BY LOCATION | C/A/R? |
|---|------|--------|----------|-----------------------------------------------------------|--------|
| 19 | Unresponsive approach to ADC inquiries on patient information<br><br>Due to be cured within:<br>7 calendar days | Wexford staff demonstrating reluctance to release information to ADC staff, including Health Services Monitoring Bureau and Constituent Services, either through intervention with the patient, or response to inmate family, friends, or advocates.  Wexford current hospitalization report is not current/complete, information does not correlate with known in-patient inmate population. | 1. ASPC-DOUGLAS<br>2. ASPC-EYMAN<br>3. ASPC-FLORENCE<br>4. ASPC-LEWIS<br>5. ASPC-PERRYVILLE<br>6. ASPC-PHOENIX<br>7. ASPC-SAFFORD<br>8. ASPC-TUCSON<br>9. ASPC-WINSLOW<br>10. ASPC-YUMA | 1)<br>2)<br>3)<br>4)<br>5)<br>6)<br>7)<br>8)<br>9)<br>10) | 1)<br>2)<br>3)<br>4)<br>5)<br>6)<br>7)<br>8)<br>9)<br>10) |
| 20 | Unresponsive approach to inmate grievance process<br><br>Due to be cured within:<br>30 calendar days | Wexford not processing grievances within timeframes. | 1. ASPC-DOUGLAS<br>2. ASPC-EYMAN<br>3. ASPC-FLORENCE<br>4. ASPC-LEWIS<br>5. ASPC-PERRYVILLE<br>6. ASPC-PHOENIX<br>7. ASPC-SAFFORD<br>8. ASPC-TUCSON<br>9. ASPC-WINSLOW<br>10. ASPC-YUMA | 1)<br>2)<br>3)<br>4)<br>5)<br>6)<br>7)<br>8)<br>9)<br>10) | 1)<br>2)<br>3)<br>4)<br>5)<br>6)<br>7)<br>8)<br>9)<br>10) |

ADC – September 20, 2012

Page 7 of 7

Confidential Information - Subject to Protective Order015



**Wexford Health**
SOURCES INCORPORATED

October 1, 2012

Mr. Joe Profiri
Contract Beds Operations Director
Arizona Department of Corrections
1601 West Jefferson
Phoenix, Arizona 85007

**Subject: Wexford Health Sources written assurance of intent to perform**

Dear Mr. Profiri:

This letter is Wexford Health Sources' response to that portion of your September 21, 2012 letter regarding Written Cure Notification - Contract No. 120075DC that requested written assurance from Wexford of our intent to perform under the Contract. We hereby assure the Arizona Department of Corrections (ADC) that Wexford intends to perform and comply with all contractual provisions.

Pursuant to Section 8.1 of the Uniform Terms and Conditions of the contract, Wexford's agreement with the State includes a Right to Assurance clause. That clause provides as follows:

> *8.1. Right to Assurance. If the State in good faith has reason to believe that the Contractor does not intend to, or is unable to perform or continue performing under this Contract, the Procurement Officer may demand in writing that the Contractor give a written assurance of intent to perform. Failure by the Contractor to provide written assurance within the number of Days specified in the demand may, at the State's option, be the basis for terminating the Contract under the Uniform Terms and Conditions or other rights and remedies available by law or provided by the contract.*

With regard to the letter's request that we "cure all deficiencies noted herein within ninety (90) calendar days from the date of this letter," we note that the 90-day timeframe is not reasonable for certain of the identified problems, but assure the ADC that we do intend to cure the deficiencies within reasonable and appropriate timeframes. As indicated in previous communications with the ADC, we are willing to discuss and agree upon reasonable and appropriate timeframes for these "cures" and suggest we continue our meetings in this regard at your earliest opportunity[1].

Your request for an assurance from Wexford came combined with a written cure notification. Please note that our current correspondence addresses only the ADC's request for the written assurance; and that as authorized in the ADC's September 28 letter to Karen Mullenix, we will respond separately to the Cure Notice, by no later than October 22.

Under the circumstances outlined below, Wexford does not believe ADC has a good faith reason to believe Wexford does not intend to perform under our contract. As indicated in our September 26 e-mail to Director Ryan, the majority of the problems Wexford now faces are long-standing issues, embedded into ADC health care policy and philosophy, and which existed well before Wexford Health

---

[1] As we discuss in more detail below and will discuss in greater detail in the response to the Cure Letter, we assure ADC that we intend to cure the deficiencies listed in the Cure Letter. However, Section 8.1 of the Uniform Terms and Conditions sets no deadlines, and we commit to reasonable and appropriate timeframes.

425 HOLIDAY DRIVE | FOSTER PLAZA TWO | PITTSBURGH, PA 15220 | P: 412-937-8590 | F: 412-937-8599 | WWW.WEXFORDHEALTH.COM

Confidential Information – Subject to Protective Order

ADC027941

Joe Profiri, Contract Beds Operations Director, Arizona Department of Corrections
Subject: Wexford Health Sources written assurance of intent to perform

October 1, 2012
Page 2 of 3

assumed responsibility for the program on July 1, 2012. Indeed, on several occasions before our receipt of your demand for assurance, we discussed with the ADC our assessment of the extremely poor condition of its health care system.

Importantly, the severity of these inadequacies, which was (or should have been) well known to ADC, was not communicated to Wexford (or any of the bidders) during the procurement process. The ADC failed to accurately disclose to bidders the dysfunctional condition of its inmate health care system. Based on the limited information available through site visits and responses to submitted questions, no bidder could have anticipated the degree of problems within the ADC inmate health care system.

For example, while the Request for Proposal (RFP) data included the number of actual non-filled positions, the information did not indicate that in addition, the ADC was also using an extraordinarily high volume of agency and PRN pool personnel in order to be able to provide required health care services. The number of vacancies also increased dramatically between the time the ADC provided data through the RFP process (October 2011) and Wexford beginning its contract eight months later on July 1, 2012. Without accurate, up-to-date information, Wexford did not have, and could not have had, an appropriate understanding of the large number of positions it would have to fill with permanent personnel upon assuming responsibility for the system.

The ADC compounded the staff vacancy issue by announcing its intention to hire both the first and second levels of site management personnel from each prison complex to form its contract monitoring team; by prohibiting Wexford from extending job offers to incumbent site managers until the make-up of the contract monitoring team had been confirmed; and by not allowing Wexford to make counteroffers to attempt to retain incumbent site management staff. The ADC's actions not only added thirty-four unforeseen management vacancies to the already larger-than-indicated list of positions Wexford needed to fill; but also sent a negative signal to other incumbent site personnel, as they learned that no experienced management personnel would be left in place after contract transition.

Section 2.17.4.1 of the RFP required the Contractor to "give Department employees displaced by this Contract first consideration for employment in comparable positions to those they currently hold." Given this statement, Wexford reasonably expected that we would be able to hire the majority of the incumbent Complex Managers (or their immediate subordinates) to continue their site management roles under Wexford. In addition to the RFP language, both industry standards and Wexford's prior experience in successfully assuming responsibility for statewide inmate health programs led us to believe that we would be able to employ the incumbent complex managers. In our experience in many systems around the country, the ADC's actions in this regard are extraordinary.

By retaining existing health care management staff, the ADC caused at least two material differences and problems for Wexford. First, the ADC created an institutional leadership and knowledge void for Wexford. Second, the ADC deprived Wexford of a resource that was and is crucial to Wexford's immediate success under the contract. This issue is so important that if the ADC had disclosed during the RFP process its intent to retain these individuals and not permit them to remain as the Complex Managers, Wexford would have bid the contract in a completely different manner, and may have chosen not to submit a bid.

In addition, by retaining former health care management staff to become "watchdogs" over their replacements, the ADC created an innately adversarial relationship for the employees hired by Wexford from the State to continue to work at the ADC facilities. These former site leaders are experienced Complex Managers used to performing as such, and they have no experience in performing as Contract Monitors. Wexford is finding that many of the Contract Monitors are ignoring the established chain of command and giving instructions directly to Wexford line personnel (which

WEXFORD HEALTH SOURCES, INC. | 425 HOLIDAY DRIVE | FOSTER PLAZA TWO | PITTSBURGH, PA 15220 | P: 412-937-8590 | F: 412-937-8599 | WWW.WEXFORDHEALTH.COM

Joe Profiri, Contract Beds Operations Director, Arizona Department of Corrections
Subject: Wexford Health Sources written assurance of intent to perform

October 1, 2012
Page 3 of 3

instructions often conflict with the instructions from Wexford personnel). This frequent and ongoing interference by the former site leaders is not contemplated or permitted by our contract; undermines the authority of the new Complex Managers; results in confusion and/or conflicted loyalties among line staff; negatively affects staff productivity on multiple levels; and increases the time and resources required to solve identified issues.

Based on its experience in this sector of the health care delivery market, Wexford relied upon the availability of first- and second-level site management personnel to continue to work as our Complex Managers. Wexford planned to merge their knowledge of the ADC system with our clinical programs and implementation expertise to form a powerful tool that could have had immediate positive impact on the existing ADC health care system. Unfortunately, because the individuals now empowered to point out deficiencies are the very same individuals who allowed the system to deteriorate in the first place, the ADC has formed nothing but a negative, counterproductive, and even destructive environment.

The issues described in the preceding paragraphs are examples, and account for many of the problems Wexford is having, but admittedly not all of the problems. However, the State brought Wexford in to act as an agent of change and improvement. Wexford absolutely has the financial capacity, resources, and experience to perform that function, and will bring these resources to bear to address the issues raised in the cure letter. However, the ADC (through all levels of its staff, including the Contract Monitors) must allow us to do the job we were contracted to do. If the ADC affords Wexford the time and opportunity to implement a solid foundation of Arizona-specific staff, policies, and programs, we can partner with the State to make Arizona's program one of the nation's leading correctional health care programs.

This is what is necessary in order to "cure" the ADC health care system. Given the sub-standard condition and documented deficiencies already existent in the ADC health care delivery system — and for which the State has already been sued on numerous occasions, including the recent class action suits filed by the American Civil Liberties Union, Prison Law Office, *et al* — curing many of these issues will take longer than ninety days. The ADC is well aware that Wexford is already working diligently to address these issues. As noted above, under all of these circumstances, the ADC does not have a good faith reason to believe that Wexford does not intend to perform under our contract.

Please let me know if you have any questions about this letter. Wexford looks forward to continuing to work with the Department on the delivery of health care services to ADC inmates.

Sincerely,

Karen Mullenix
Director of Operations
Office: 480-696-7541
Email: kmullenix@wexfordhealth.com

WEXFORD HEALTH SOURCES, INC. | 425 HOLIDAY DRIVE | FOSTER PLAZA TWO | PITTSBURGH, PA 15220 | P: 412-937-8590 | F: 412-937-8599 | WWW.WEXFORDHEALTH.COM

**From:**          CHU, KAREN <KCHU@azcorrections.gov>
**Sent:**          Tuesday, January 15, 2013 12:56 AM
**To:**            PROFIRI, JOE
**Subject:**        RE: update

Oh btw, I am glad to hear you report directly to the Director.  That clears things up for me!  Have a good night.

---

**From:** PROFIRI, JOE
**Sent:** Monday, January 14, 2013 9:10 PM
**To:** CHU, KAREN
**Subject:** Re: update

Understood Karen. There's only so much you can do with your schedule and everyone's expectations should be in line with the time allotted.

With respect to wait times, I immediately go to staffing levels and are they where they need to be. I anticipate there to be a correctional standard and that's what we should be the reasonable expectation we endeavor to have the vendor meet.

Your points/focus as described are on target with the direction I believe we need to be heading. If that helps you it helps me.

With respect to new dentists; it begs to question why the vendor isn't completing orientation. Don't hold your breath in getting notice from Wexford on start dates. I get a weekly staffing report from them and will forward it to you. You may find some of the information in it useful in your efforts to coordinate with new dentists.

You are wise to be cognizant of office politics. I'm a direct report to the Director and will remain engaged with medical until he says otherwise. You shouldn't be questioned or otherwise chastised for my inclusion in your correspondence. It's also appropriate that you focus on the public facilities. There are no pressing concerns in the privates and with few exceptions on the medical side they provide good medical and dental care. It's beneficial to have a clinical perspective and when things improve elsewhere, I look forward to your perspective. Though, I will ensure you're engaged with the new activation.

Joe

Sent from my iPad

On Jan 14, 2013, at 1:47, "CHU, KAREN" <KCHU@azcorrections.gov> wrote:

> The new forms and other changes are only being worked on at this time.  Everything will have to be formatted with all the details worked out without missing anything.  I want to be very careful so things won't have to be changed again. Nothing has been submitted to Jim/ Richard/Wexford yet. In other words, nothing is pending.  I will keep you posted so you can assist in timeliness.
>
> And yes, I am struggling with the compressed time.  The conflict is...what should take a week, takes me a month! There are only 5 days in the week, and I only work 4 days a month.  It takes forever to get anything done. I am trying not to make this job bigger than it is.  But when I see deficiencies, it is difficult to ignore them. In reality, there are quite a bit of things that can be improved on.  There are many unnecessary details in the Dental Technical Manual and missing important concepts.  Sometimes, too many details can get us into trouble.  For now, we will address the most pressing matters.  For example, most grievance appeals point out that inmates are ignored and have long wait times especially since their teeth are in a very poor conditions.  We plan on devising a system to avoid this problem. Patients who have more urgent conditions will be put on a priority list...my point is... changes will take much longer than I would like. Is this the stuff you could help with? Please help me, help you,

**CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER**

help me!

Another thing I would like to do is to orient new dentists coming into the system. It would be great if I could orient them around their start date.  I would like them to start off on the right foot rather than looking at old chart entries that have old bad habits. Last week, I contacted Lynnette Haygood of Wexford HR expressing my desire for notifications of new dentists and their start dates.  When I followed up with her a few days ago, she said she is working on it and will get back to me .  Cross your fingers with this one.  For some reason, I have doubt regarding her helpfulness. It's been over a week already. This also relates to the new facility opening in January 2014. I agree with you about stepping in early. Please keep me posted on the progress.

I would really like to visit the other private prisons, however, Richard wants me to focus on the Wexford prisons unless there are urgent matters at other private prisons.  If we clear it with Richard, let's coordinate our schedules. I am still observing and learning the ways of the central office.  In fact, I am not sure if I should  cc you on emails to Jim and Richard.  Are you still involved with Wexford as far as monitoring since the the hiring of Art?  I do not want to step over anyone.  As we all know, office politics are always delicate.

Have a good night.

Karen

---

**From:** PROFIRI, JOE
**Sent:** Sunday, January 13, 2013 11:07 AM
**To:** CHU, KAREN
**Subject:** Re: update

I absolutely agree with you Karen.

Reduction of risk in all regards is of major importance and ultimately results in cost savings over time. I believe reduction of liability, not only from a licensure standpoint, but also from a tort perspective is our obligation to the taxpayers who employ us.

Are there policy and (new) form changes pending? I'd be interested in following up on that as I've experienced far to often such things pending beyond what can be best described as a reasonable period of time. Or if this is something you're working on; as it would be very understandable how difficult it will be to complete such a task with your compressed schedule, I may be of resource and would be glad to assist in any non-clinical aspect and/or prompt the vendor to facilitate certain aspects of such changes.

If you're interested in touring any of our private prisons and reviewing their dental operations, let me know and we'll coordinate our schedules. I typically am on-site at each of them at least once per month. I have a new one under construction currently that is scheduled for activation January 2014. It would be great to get you in at the beginning of that one rather than having to undo established practices that may be contrary to those desired later.

As to your late hours; I can relate. I'm a night owl. At a point in my career, I worked an overnight shift. I don't think I ever grew out of it. I too find it a very productive time and uniquely suited for me to have great clarity.

I hope you've enjoyed the weekend and a good nights sleep comes to you.

Joe

Sent from my iPad

On Jan 13, 2013, at 3:32, "CHU, KAREN" <KCHU@azcorrections.gov> wrote:

CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER

Joe,

Thank you for your reply. Changes will evolve slowly as to not shock the dentists; especially the ones who have been in the system for a long long time. As we all know, not everyone is open to change. However, changes should be made for the dentists' own protection from liability and for improved patient care. Once any new forms or policies are finalized, we may roll them out in just 1 or 2 complexes to test them. What do you think?

Btw, I am up again...LATE, not early. Sometimes I have strange sleeping habits. This is the best time for myself so I can get things done without interruption. I will be paying for it tomorrow.

Karen Chu, DMD
Dental Monitor
Redacted

**From:** PROFIRI, JOE
**Sent:** Saturday, January 12, 2013 12:28 PM
**To:** CHU, KAREN
**Subject:** RE: update

Karen,

I appreciate your perspective and engagement of the vendor in seeking operational improvements. Improvement is a never ending process and having multiple perspectives is of great benefit in any process improvement model.

You were working late or early depending on ones perspective. Hope you caught up on your sleep.....

Joe

-----Original Message-----
**From:** CHU, KAREN
**Sent:** Saturday, January 12, 2013 02:39 AM US Mountain Standard Time
**To:** PRATT, RICHARD, TAYLOR, JIM, GROSS, ARTHUR
**Cc:** PROFIRI, JOE
**Subject:** update

Richard, Jim, Art:

I was in Yuma this past Thursday. Dr. Sandhu and I are working on changing some procedures, dental forms and charting forms. The plan is to modify/simplify operations/procedures and forms by removing superfluous details and adding details that are currently missing that are necessary to bring us up today's industry standard.

Some examples include:

1. Adding Informed Consents for treatment
2. Inmate will sign his/her medical history
3. Standardizing a method to keep track of treatment priority sequence for each patient
4. Periodontal disease (gum disease) is very prevalent, however, it is rarely addressed in treatment plans is typically not treated. Typical treatment would be deep cleanings called "scaling and root planing"
5. Perhaps make state wide: Latex free dental clinics
6. Triage shall be completed by a nurse if a dentist unavailable. Dental assistants are not qualified and can cause more harm than good.

I will be sure to review any form changes or Dental Technical Manual changes to Jim prior to implementing.

Please let me know if you have any questions, suggestions, or comments. I always welcome feedback.

Karen Chu, DMD
Dental Monitor
Redacted

CONFIDENTIAL INFORMATION - SUBJECT TO PROTECTIVE ORDER          AGA_Review_00094916