Daniel Pochoda (Bar No. 021979)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: dpochoda@acluaz.org
        jlyall@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Varma (Bar No. 027927)
Brenna Durkin (Bar No. 027973)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
        avarma@azdisabilitylaw.org
        bdurkin@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-DJH |
| Plaintiffs, | **STIPULATION** |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

Plaintiffs and Defendants (collectively, "the Parties") hereby stipulate as follows:

**I.      INTRODUCTION AND PROCEDURAL PROVISIONS**

1.      Plaintiffs are prisoners in the custody of the Arizona Department of Corrections ("ADC"), an agency of the State of Arizona, who are incarcerated at one of the state facilities located in the State of Arizona, and the Arizona Center for Disability Law ("ACDL").

2.      Defendants are Charles Ryan, Director of ADC, and Richard Pratt, Interim Division Director, Division of Health Services of ADC.  Both Defendants are sued in their official capacities.

3.      The Court has certified this case as a class action.  The class is defined as "All prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices of the ADC."  The subclass is defined as "All prisoners who are now, or will in the future be, subjected by the ADC to isolation, defined as confinement in a cell for 22 hours or more each day or confinement in the following housing units: Eyman–SMU 1; Eyman–Browning Unit; Florence–Central Unit; Florence–Kasson Unit; or Perryville–Lumley Special Management Area."

4.      The purpose of this Stipulation to settle the above captioned case.  This Stipulation governs or applies to the 10 ADC complexes: Douglas, Eyman, Florence, Lewis, Perryville, Phoenix, Safford, Tucson, Winslow and Yuma. This Stipulation does not apply to occurrences or incidents that happen to class members while they do not reside at one of the 10 ADC complexes.

5.      Defendants deny all the allegations in the Complaint filed in this case.  This Stipulation does not constitute and shall not be construed or interpreted as an admission of any wrongdoing or liability by any party.

6.      Attached to this Stipulation as Exhibit A is a list of definitions of terms used herein and in the performance measures used to evaluate compliance with the Stipulation.

**II.   SUBSTANTIVE PROVISIONS**

　　　**A.   Health Care.**

　　　7.   Defendants shall request that the Arizona Legislature approve a budget to allow ADC and its contracted health services vendor to modify the health services contract to increase staffing of medical and mental health positions.  This provision shall not be construed as an agreement by Plaintiffs that this budgetary request is sufficient to comply with the terms of this Stipulation.

　　　8.   Defendants shall comply with the health care performance measures set forth in Exhibit B.  Clinicians who exhibit a pattern and practice of substantially departing from the standard of care shall be subject to corrective action.

　　　9.   **Measurement and reporting of performance measures:** Compliance with the performance measures set forth in Exhibit B shall be measured and reported monthly at each of ADC's ten (10) complexes as follows.

　　　　　a.  The performance measures analyzed to determine ADC substantial compliance with the health care provisions of this Stipulation shall be governed by ADC's MGAR format.   Current MGAR performance compliance thresholds used to measure contract compliance by the contracted vendor shall be modified pursuant to a contract amendment to reflect the compliance measures and definitions set forth in Exhibit B.

　　　　　b.  The parties shall agree on a protocol to be used for each performance measure, attached as Exhibit C.  If the parties cannot agree on a protocol, the matter shall be submitted for mediation or resolution by the District Court.

　　　10.   The measurement and reporting process for performance measures, as described in Paragraph 9, will determine (1) whether ADC has complied with particular performance measures at particular complexes, (2) whether the health care provisions of this Stipulation may terminate as to particular performance measures at particular

complexes, as set forth in the following sub-paragraphs.

     a. **Determining substantial compliance with a particular performance measure at a particular facility:** Compliance with a particular performance measure identified in Exhibit B at a particular complex shall be defined as follows:

          i. For the first twelve months after the effective date of this Stipulation, meeting or exceeding a seventy-five percent (75%) threshold for the particular performance measure that applies to a specific complex, determined under the procedures set forth in Paragraph 9;

          ii. For the second twelve months after the effective date of this Stipulation, meeting or exceeding an eighty percent (80%) threshold for the particular performance measure that applies to a specific complex, determined under the procedures set forth in Paragraph 9;

          iii. After the first twenty four months after the effective date of this Stipulation, meeting or exceeding an eighty-five percent (85%) threshold for the particular performance measure that applies to a specific complex, determined under the procedures set forth in Paragraph 9.

     b. **Termination of the duty to measure and report on a particular performance measure:** ADC's duty to measure and report on a particular performance measure, as described in Paragraph 9, terminates if:

          i. The particular performance measure that applies to a specific complex is in compliance, as defined in sub-paragraph A of this Paragraph, for eighteen months out of a twenty-four month period; and

ii. The particular performance measure has not been out of compliance, as defined in sub-paragraph A of this Paragraph, for three or more consecutive months within the past 18- month period.

c. The duty to measure and report on any performance measure for a given complex shall continue for the life of this Stipulation unless terminated pursuant to sub-paragraph B of this Paragraph.

11.     Defendants or their contracted vendor(s) will approve or deny all requests for specialty health care services using InterQual or another equivalent industry standard utilization management program.   Any override of the recommendation must be documented in the prisoner's health care chart, including the reason for the override.

12.     Defendants or their contracted vendor(s) will ensure that:

a. All prisoners will be offered an annual influenza vaccination.

b. All prisoners with chronic diseases will be offered the required immunizations as established by the Centers for Disease Control.

c. All prisoners ages 50 to 75 will be offered annual colorectal cancer screening.

d. All female prisoners age 50 and older will be offered a baseline mammogram screening at age 50, then every 24 months thereafter unless more frequent screening is clinically indicated.

13.     Defendants or their contracted vendor(s) will implement a training program taught by Dr. Brian Hanstad, or another dentist if Dr. Hanstad is unavailable, to train dental assistants at ADC facilities about how to triage HNRs into routine or urgent care lines as appropriate and to train dentists to evaluate the accuracy and skill of dental assistants under their supervision.

14.     For prisoners who are not fluent in English, language interpretation for healthcare encounters shall be provided by a qualified health care practitioner who is proficient in the prisoner's language, or by a language line interpretation service.

15.     If a prisoner who is taking psychotropic medication suffers a heat intolerance reaction, all reasonably available steps will be taken to prevent heat injury or illness. If all other steps have failed to abate the heat intolerance reaction, the prisoner will be transferred to a housing area where the cell temperature does not exceed 85 degrees Fahrenheit.

16.     Psychological autopsies shall be provided to the monitoring bureau within thirty (30) days of the prisoner's death and shall be finalized by the monitoring bureau within fourteen (14) days of receipt. When a toxicology report is required, the psychological autopsy shall be provided to the monitoring bureau within thirty (30) days of receipt of the medical examiner's report. Psychological autopsies and mortality reviews shall identify and refer deficiencies to appropriate managers and supervisors including the CQI committee. If deficiencies are identified, corrective action will be taken.

**B.     Maximum Custody Prisoners.**

17.     Defendants shall request that the Arizona Legislature approve a budget to allow ADC to implement DI 326 for all eligible prisoners.  This provision shall not be construed as an agreement by Plaintiffs that this budget request is sufficient to comply with the terms of this Stipulation.

18.     Defendants shall comply with the maximum custody performance measures set forth in Exhibit D.

19.     **Measurement and reporting of performance measures:** Compliance with the performance measures set forth in Exhibit D shall be measured and reported monthly as follows.

a.  The performance measures analyzed to determine ADC substantial compliance with the Maximum Custody provisions of this Stipulation

shall be governed by the protocol used for each performance measure attached as Exhibit E.  If the parties cannot agree on a protocol, the matter shall be submitted for mediation or resolution by the District Court.

20.     The measurement and reporting process for performance measures, as described in Paragraph 19, will determine (1) whether ADC has complied with particular performance measures at particular units, (2) whether the Maximum Custody provisions of this Stipulation may terminate as to particular performance measures at particular units, as set forth in the following sub-paragraphs.

a. **Determining substantial compliance with a particular performance measure at a particular unit:** Compliance with a particular performance measure identified in Exhibit D at a particular unit shall be defined as follows:

i. For the first twelve months after the effective date of this Stipulation, meeting or exceeding a seventy-five percent (75%) threshold for the particular performance measure that applies to a specific unit, determined under the procedures set forth in Paragraph 19;

ii. For the second twelve months after the effective date of this Stipulation, meeting or exceeding an eighty percent (80%) threshold for the particular performance measure that applies to a specific unit, determined under the procedures set forth in Paragraph 19;

iii. After the first twenty four months after the effective date of this Stipulation, meeting or exceeding an eighty-five percent (85%) threshold for the particular performance measure that

applies to a specific unit, determined under the procedures set forth in Paragraph 19.

    b. **Termination of the duty to measure and report on a particular performance measure:** ADC's duty to measure and report on a particular performance measure, as described in Paragraph 19, terminates if:

        i. The particular performance measure that applies to a specific unit is in compliance, as defined in sub-paragraph A of this Paragraph, for eighteen months out of a twenty-four month period; and

        ii. The particular performance measure has not been out of compliance, as defined in sub-paragraph A of this Paragraph, for three or more consecutive months within the past eighteen-month period.

    c. The duty to measure and report on any performance measure for a given unit shall continue for the life of this Stipulation unless terminated pursuant to sub-paragraph B of this Paragraph.

21. Seriously Mentally Ill (SMI) prisoners are defined as those prisoners who have been determined to be seriously mentally ill according to the criteria set forth in the ADC SMI Determination Form (Form 1103-13, 12/19/12), which is attached hereto as Exhibit F and is incorporated by reference as if fully set forth herein. For purposes of this Stipulation, "intellectual disabilities," as defined by the current version of the Diagnostic and Statistical Manual of Mental Disorders (DSM), shall be added to the list of qualifying diagnoses on Form 1103.13. This definition shall govern this Stipulation notwithstanding any future modification of Form 1103.13 or ADC's definition of "Seriously Mentally Ill." All prisoners determined to be SMI in the community shall also be designated as SMI by ADC.

22.     ADC maximum custody prisoners housed at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, and Perryville-Lumley Special Management Area (Yard 30) units, shall be offered out of cell time, incentives, programs and property consistent with DI 326 and the Step Program Matrix, but in no event shall be offered less than 6 hours per week of out-of-cell exercise.  Defendants shall implement DI 326 and the Step Program Matrix for all eligible prisoners and shall maintain them in their current form for the duration of this Stipulation. In the event that Defendants intend to modify DI 326 and the Step Program Matrix they shall provide Plaintiffs' counsel with thirty (30) days' notice. In the event that the parties do not agree on the proposed modifications, the dispute shall be submitted to Magistrate Judge David Duncan who shall determine whether the modifications effectuate the intent of the relevant provisions of the Stipulation.

23.     Prisoners who are MH3 or higher shall not be housed in Florence Central-CB5 or CB7 unless the cell fronts are substantially modified to increase visibility.

24.     All prisoners eligible for participation in DI 326 shall be offered at least 7.5 hours of out-of-cell time per week.  All prisoners at Step II shall be offered at least 8.5 hours of out-of-cell time per week, and all prisoners at Step III shall be offered at least 9.5 hours of out-of-cell time per week.  The out of cell time set forth in this paragraph is inclusive of the six hours of exercise time referenced in Paragraph 22.  Defendants shall ensure that prisoners at Step II and Step III of DI 326 are participating in least one hour of out-of-cell group programming per week.

25.     In addition to the out of cell time, incentives, programs and property offered pursuant to DI 326 and the Step Program Matrix for prisoners housed at maximum custody units specified in ¶ 24 above, ADC maximum custody prisoners designated as SMI pursuant to ¶ 21 above, shall be offered an additional ten hours of unstructured of out of cell time per week; an additional one hour of out-of-cell mental health programming per week; one hour of additional out of cell pyschoeducational programming per week;

and one hour of additional out of cell programming per week.  Time spent out of cell for exercise, showers, medical care, classification hearings or visiting shall not count toward the additional ten hours of out of cell time per week specified in this Paragraph.  All prisoners received in maximum custody will receive an evaluation for program placement within 72 hours of their transfer into maximum custody, including to properly identify all SMI prisoners.

26.    If out of cell time offered pursuant to ¶¶ 24 or 25 above is limited or cancelled for legitimate operational or safety and security reasons such as an unexpected staffing shortage, inclement weather or facility emergency lockdown, Defendants shall make every reasonable effort to ensure that amount of out of cell time shall be made up for those prisoners who missed out of cell time. The out of cell time provided pursuant to paragraph 24 above, may be limited or canceled for an individual prisoner if the Warden, or his/her designee if the Warden is not available, certifies in writing that allowing that prisoner such out of cell time would pose a significant security risk. Such certification shall expire after thirty (30) days unless renewed in writing by the Warden or his/her designee.

27.    Defendants shall maintain the following restrictions on the use of pepper spray and other chemical agents on any maximum custody prisoner classified as SMI, and in the following housing areas:  Florence-CB-1 and CB-4; Florence-Kasson (Wings 1 and 2); Eyman-SMU I (BMU); Perryville-Lumley SMA; and Phoenix (Baker, Flamenco, and MTU).

a.    Chemical agents shall be used only in case of imminent threat.   An imminent threat is any situation or circumstance that jeopardizes the safety of persons or compromises the security of the institution, requiring immediate action to stop the threat. Some examples include, but are not limited to: an attempt to escape, on-going physical harm or active physical resistance. A decision to use chemical agents shall be based on

more than passive resistance to placement in restraints or refusal to follow orders. If the inmate has not responded to staff for an extended period of time, and it appears that the inmate does not present an imminent physical threat, additional consideration and evaluation should occur before the use of chemical agents is authorized.

b. All controlled uses of force shall be preceded by a cool down period to allow the inmate an opportunity to comply with custody staff orders. The cool down period shall include clinical intervention (attempts to verbally counsel and persuade the inmate to voluntarily exit the area) by a mental health clinician, if the incident occurs on a weekday between 8:00 a.m. and 4:00 p.m.  At all other times, a qualified health care professional (other than a LPN) shall provide such clinical intervention. This cool down period may include similar attempts by custody staff.

c. If it is determined the inmate does not have the ability to understand orders, chemical agents shall not be used without authorization from the Warden, or if the Warden is unavailable, the administrative duty officer.

d. If it is determined an inmate has the ability to understand orders but has difficulty complying due to mental health issues, or when a mental health clinician believes the inmate's mental health issues are such that the controlled use of force could lead to a substantial risk of decompensation, a mental health clinician shall propose reasonable strategies to employ in an effort to gain compliance, if the incident occurs on a weekday between 8:00 a.m. and 4:00 p.m.  At all other times, a qualified health care professional (other than a LPN) shall propose such reasonable strategies.

e. The cool down period may also include use of other available resources/options such as dialogue via religious leaders, correctional

1                counselors, correctional officers and other custody and non-custody

2                staff that have established rapport with the inmate.

3       28.    All maximum custody prisoners shall receive meals equivalent in caloric

4 and nutritional content to the meals received by other ADC prisoners.

5 **III.    MONITORING AND ENFORCEMENT**

6       29.    Plaintiffs' counsel and their experts shall have reasonable access to the

7 institutions, staff, contractors, prisoners and documents necessary to properly evaluate

8 whether Defendants are complying with the performance measures and other provisions

9 of this Stipulation.  The parties shall cooperate so that plaintiffs' counsel has reasonable

10 access to information reasonably necessary to perform their responsibilities required by

11 this Stipulation without unduly burdening defendants. If the parties fail to agree, either

12 party may submit the dispute for binding resolution by Magistrate Judge David Duncan.

13 Defendants shall also provide, on a monthly basis during the pendency of the Stipulation,

14 copies of a maximum of ten (10) individual Class Members' health care records, and a

15 maximum of five (5) individual Subclass Members' health care and institutional records,

16 such records to be selected by Plaintiffs' counsel.  The health care records shall include:

17 treatment for a twelve (12) month period of time from the date the records are copied.

18 Upon request, Defendants shall provide the health care records for the twelve months

19 before those originally produced.  In addition, Defendants shall provide to Plaintiffs on a

20 monthly basis a copy of all health care records of Class Members who died during their

21 confinement at any state operated facility (whether death takes place at the facility or at a

22 medical facility following transfer), and all mortality reviews and psychological autopsies

23 for such prisoners.  The records provided shall include treatment for a twelve (12) month

24 period prior to the death of the prisoner.  Upon request, Defendants shall provide the

25 health care records for the twelve months before those originally produced.  The parties

26 will meet and confer about the limit on the records that Plaintiffs can request once the

27 ADC electronic medical records system is fully implemented.

28

30.     In the event that counsel for Plaintiffs alleges that Defendants have failed to substantially comply in some significant respect with this Stipulation, Plaintiffs' counsel shall provide Defendants with a written statement describing the alleged non-compliance ("Notice of Substantial Non-Compliance").  Defendants shall provide a written statement responding to the Notice of Substantial Non-Compliance within thirty (30) calendar days from receipt of the Notice of Substantial Non-Compliance and, within thirty (30) calendar days of receipt of Defendants' written response, counsel for the parties shall meet and confer in a good faith effort to resolve their dispute informally.

31.     In the event that a Notice of Substantial Non-Compliance pursuant to ¶ 30 of this Stipulation cannot be resolved informally, counsel for the parties shall request that Magistrate Judge John Buttrick mediate the dispute.  In the event that Magistrate Judge Buttrick is no longer available to mediate disputes in this case, the parties shall jointly request the assignment of another Magistrate Judge, or if the parties are unable to agree, the District Judge shall appoint a Magistrate Judge. If the dispute has not been resolved through mediation in conformity with this Stipulation within sixty (60) calendar days, either party may file a motion to enforce the Stipulation in the District Court.

32.     Plaintiffs' counsel and their experts shall have the opportunity to conduct no more than twenty (20) tour days per year of ADC prison complexes. A "tour day" is any day on which one or more of plaintiffs' counsel and experts are present at a given complex.  A tour day shall last no more than eight hours.  No complex will be toured more than once per quarter.  Tours shall be scheduled with at least two weeks' advance notice to defendants.  Defendants shall make reasonable efforts to make available for brief interview ADC employees and any employees of any contractor that have direct or indirect duties related to the requirements of this Stipulation. The interviews shall not unreasonably interfere with the performance of their duties.  Plaintiffs' counsel and their experts shall be able to have confidential, out-of-cell interviews with prisoners during these tours.  Plaintiffs' counsel and their experts shall be able to review health and other

1   records of class members, and records of mental health and other programming, during
2   the tours.  Plaintiffs' counsel and their experts shall be able to review any documents that
3   form the basis of the MGAR reports and be able to interview the ADC monitors who
4   prepared those reports.

5        33.    With the agreement of both parties, Plaintiffs may conduct confidential
6   interviews with prisoners, and interviews of ADC employees or employees of ADC's
7   contractors, by telephone.

8        34.    Defendants shall notify the Ninth Circuit Court of Appeals of the settlement
9   of this case and of their intention to withdraw the petition for rehearing en banc in case
10  number 13-16396, upon final approval of the Stipulation by the District Court. Defendants
11  agree not to file a petition for writ of certiorari with the United States Supreme Court
12  seeking review of the Ninth Circuit's judgment in case number 13-16396.

13  **IV.   RESERVATION OF JURISDICTION**

14       35.    The parties consent to the reservation and exercise of jurisdiction by the
15  District Court over all disputes between and among the parties arising out of this
16  Stipulation. The parties agree that this Stipulation shall not be construed as a consent
17  decree.

18       36.    Based upon the entire record, the parties stipulate and jointly request that the
19  Court find that this Stipulation satisfies the requirements of 18 U.S.C. § 3626(a)(1)(A) in that
20  it is narrowly drawn, extends no further than necessary to correct the violation of the Federal
21  right, and is the least intrusive means necessary to correct the violation of the Federal right of
22  the Plaintiffs.  In the event the Court finds that Defendants have not complied with the
23  Stipulation, it shall in the first instance require Defendants to submit a plan approved by the
24  Court to remedy the deficiencies identified by the Court.  In the event the Court subsequently
25  determines that the Defendants' plan did not remedy the deficiencies, the Court shall retain
26  the power to enforce this Stipulation through all remedies provided by law, except that the
27  Court shall not have the authority to order Defendants to construct a new prison or to hire a

28

specific number or type of staff unless Defendants propose to do so as part of a plan to remedy a failure to comply with any provision of this Stipulation.  In determining the subsequent remedies the Court shall consider whether to require Defendants to submit a revised plan.

**V.      TERMINATION OF THE AGREEMENT.**

37.     To allow time for the remedial measures set forth in this Stipulation to be fully implemented, the parties shall not move to terminate this Stipulation for a period of four years from the date of its approval by the Court.  Defendants shall not move to decertify the class for the duration of this Stipulation.

**VI.     MISCELLANEOUS PROVISIONS**

38.     Information produced pursuant to this Stipulation shall be governed by the Amended Protective Order (Doc. 454).

39.     This Stipulation constitutes the entire agreement among the parties as to all claims raised by Plaintiffs in this action, and supersedes all prior agreements, representations, statements, promises, and understandings, whether oral or written, express or implied, with respect to this Stipulation.  Each Party represents, warranties and covenants that it has the full legal authority necessary to enter into this Stipulation and to perform the duties and obligations arising under this Stipulation.

40.     This is an integrated agreement and may not be altered or modified, except by a writing signed by all representatives of all parties at the time of modification.

41.     This Stipulation shall be binding on all successors, assignees, employees, agents, and all others working for or on behalf of Defendants and Plaintiffs.

42.     Defendants agree to pay attorneys' fees and costs incurred in the underlying litigation of the subject lawsuit in the total amount of $ 4.9 million.  Defendants agree to deliver payment of $ 1 million within 14 days of the effective date of the Stipulation, and $ 3.9 million by July 15, 2015. The parties agree that payment of these fees and costs

represents full satisfaction of all claims for fees and costs incurred through the effective date of the Stipulation.

43.    In the event that Plaintiffs move to enforce any aspect of this Stipulation and the Plaintiffs are the prevailing party with respect to the dispute, the Defendants agree that they will pay reasonable attorneys' fees and costs, including expert costs, to be determined by the Court.  The parties agree that the hourly rate of attorneys' fees is governed by 42 U.S.C. § 1997e(d).

44.    Plaintiffs' counsel shall be compensated for work reasonably performed or costs incurred to monitor or enforce the relief set forth in this Stipulation up to $ 250,000 per calendar year. In exchange for Plaintiffs' agreement to a cap on the amount of fees, Defendants shall not dispute the amount sought unless there is an obvious reason to believe that the work was unreasonable or the bill is incorrect. The amount of $ 250,000 will be prorated for the portion of the calendar year between the effective date of the Stipulation and the start of the next calendar year.  Plaintiffs' counsel shall submit an invoice for payment quarterly along with itemized time records and expenses.  Defendants shall pay the invoice within thirty (30) days of receipt.  This limitation on fees and costs shall not apply to any work performed in mediating disputes before the Magistrate pursuant to paragraphs 22, 29, and 31 above, or to any work performed before the District Court to enforce or defend this Stipulation.

Dated this 9ᵗʰ day of October, 2014.

**APPROVED:**

_____                    Date: 10·9·14
Charles Ryan,
Director, Arizona Department of Corrections

_____                    Date: 10/9/14
Richard Pratt
Interim Division Director, Division of Health Services,
Arizona Department of Corrections

1

**PRISON LAW OFFICE**                      **STRUCK, WIENEKE, & LOVE, P.L.C.**

2

By: _s/ Donald Specter_                    By: _s/ Daniel P. Struck_

3
Donald Specter (Cal. 83925)*              Daniel P. Struck (Bar No. 012377)
Alison Hardy (Cal. 135966)*               Kathleen L. Wieneke (Bar No. 011139)

4
Sara Norman (Cal. 189536)*                Rachel Love (Bar No. 019881)
Corene Kendrick (Cal. 226642)*            Timothy J. Bojanowski (Bar No. 22126)

5
Warren E. George (Cal. 53588)*            Nicholas D. Acedo (Bar No. 021644)
1917 Fifth Street                         Ashlee B. Fletcher (Bar No. 028874)

6
Berkeley, California 94710                Anne M. Orcutt (Bar No. 029387)
Telephone:  (510) 280-2621               Jacob B. Lee (Bar No. 030371)

7
Email:    dspecter@prisonlaw.com          3100 West Ray Road, Suite 300
          ahardy@prisonlaw.com            Chandler, Arizona 85226

8
          snorman@prisonlaw.com           Telephone:  (480) 420-1600
          ckendrick@prisonlaw.com         Email:    dstruck@swlfirm.com

9
          wgeorge@prisonlaw.com                     kwieneke@swlfirm.com
                                                    rlove@swlfirm.com

10
*Admitted *pro hac vice*                            tbojanowski@swlfirm.com
                                                    nacedo@swlfirm.com

11
                                                    afletcher@swlfirm.com
                                                    aorcutt@swlfirm.com

12
                                                    jlee@swlfirm.com

13
David C. Fathi (Wash. 24893)*             Arizona Attorney General
Amy Fettig (D.C. 484883)**                Thomas C. Horne

14
Ajmel Quereshi (Md. 28882)**              Office of the Attorney General
**ACLU NATIONAL PRISON**                  Michael E. Gottfried

15
**PROJECT**                               Lucy M. Rand
915 15th Street N.W., 7th Floor           Assistant Attorneys General

16
Washington, D.C. 20005                    1275 W. Washington Street
Telephone:  (202) 548-6603                Phoenix, Arizona 85007-2926

17
Email:    dfathi@npp-aclu.org             Telephone:  (602) 542-4951
          afettig@npp-aclu.org            Email:    Michael.Gottfried@azag.gov

18
          aquereshi@npp-aclu.org                    Lucy.Rand@azag.gov

19
*Admitted *pro hac vice*.  Not admitted    *Attorneys for Defendants*
 in DC; practice limited to federal

20
 courts.
**Admitted *pro hac vice*

21

22

23

24

25

26

27

28

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 23966)
Kirstin T. Eidenbach (Bar No. 27341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
Jerica L. Peters (Bar No. 027356)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:   dbarr@perkinscoie.com
            agerlicher@perkinscoie.com
            keidenbach@perkinscoie.com
            jhgray@perkinscoie.com
            mdumee@perkinscoie.com
            jpeters@perkinscoie.com

Daniel Pochoda (Bar No. 021979)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:    dpochoda@acluaz.org
            jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
Dara Levinson (Cal. 274923)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:    cnmitchell@jonesday.com
            aamiri@jonesday.com
            daralevinson@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:    jlwilkes@jonesday.com
            tfreeman@jonesday.com

*Admitted *pro hac vice*

-17-

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:    kmamedova@jonesday.com
              jkmessina@jonesday.com

*Admitted *pro hac vice*

Kevin Brantley (Cal. 251886)*
**JONES DAY**
3161 Michelson Drive, Suite 800
Irvine, California 92612
Telephone:  (949) 851-3939
Email:    kcbrantley@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez;
Christina Verduzco; Jackie Thomas;
Jeremy Smith; Robert Gamez; Maryanne
Chisholm; Desiree Licci; Joseph Hefner;
Joshua Polson; and Charlotte Wells, on
behalf of themselves and all others
similarly situated*

**ARIZONA CENTER FOR**
**DISABILITY LAW**

By:   *s/ Sarah Kader*
　　　Sarah Kader (Bar No. 027147)
　　　Asim Varma (Bar No. 027927)
　　　Brenna Durkin (Bar No. 027973)
　　　5025 East Washington Street, Suite
　　　202
　　　Phoenix, Arizona 85034
　　　Telephone:  (602) 274-6287
　　　Email:    skader@azdisabilitylaw.org
　　　　　　　avarma@azdisabilitylaw.org
　　　　　　　bdurkin@azdisabilitylaw.org

　　　J.J. Rico (Bar No. 021292)
　　　Jessica Jansepar Ross (Bar No.
　　　030553)
　　　**ARIZONA CENTER FOR**
　　　**DISABILITY LAW**
　　　100 N. Stone Avenue, Suite 305
　　　Tucson, Arizona 85701
　　　Telephone:  (520) 327-9547
　　　Email:    jrico@azdisabilitylaw.org
　　　　　　　jross@azdisabilitylaw.org

*Attorneys for Arizona Center for*
*Disability Law*

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2014, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Katherine E. Watanabe
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Katherine.Watanabe@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

s/ Delana Freouf