1  Daniel Pochoda (Bar No. 021979)
   James Duff Lyall (Bar No. 330045)*
2  **ACLU FOUNDATION OF ARIZONA**
   3707 North 7th Street, Suite 235
3  Phoenix, Arizona 85013
   Telephone: (602) 650-1854
4  Email: dpochoda@acluaz.org
          jlyall@acluaz.org
5  *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

6  *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith,*
7  *Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all*
8  *others similarly situated*

   **[ADDITIONAL COUNSEL LISTED BELOW]**
9
   Sarah Kader (Bar No. 027147)
10 Asim Varma (Bar No. 027927)
   Brenna Durkin (Bar No. 027973)
11 **ARIZONA CENTER FOR DISABILITY LAW**
   5025 East Washington Street, Suite 202
12 Phoenix, Arizona 85034
   Telephone: (602) 274-6287
13 Email: skader@azdisabilitylaw.org
          avarma@azdisabilitylaw.org
14        bdurkin@azdisabilitylaw.org

15 *Attorneys for Plaintiff Arizona Center for Disability Law*

   **[ADDITIONAL COUNSEL LISTED BELOW]**
16

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-DKD <br><br> **DECLARATION OF DONALD SPECTER IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND NON-TAXABLE COSTS** |

78204-0001/LEGAL124439674.1

I, Donald Specter, declare:

1.     I am an attorney licensed to practice in the State of California, and admitted to this Court *pro hac vice*. I am the Executive Director of the Prison Law Office, and an attorney of record to the Plaintiffs in this case. If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge. I offer this declaration in support of Plaintiffs' Motion for Attorneys' Fees and Costs, filed pursuant to Federal Rule of Civil Procedure 23(h)(1).

2.     The Prison Law Office engages in class action and other impact litigation to improve the conditions of prisons and jails for adults and children, represents individual prisoners, educates the public about prison conditions, and provides technical assistance to attorneys throughout the country. I joined the Prison Law Office in 1979, and became its executive director in 1984. I have litigated numerous large-scale prisoner and parolee class actions for the last 30 years, including successfully arguing before the U.S. Supreme Court in *Brown v. Plata*, 563 U.S. ___, 131 S. Ct. 1910 (2011) (holding the court-mandated population limit for California prisons was necessary to remedy violations of prisoners' constitutional rights to adequate medical and mental health care) and *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206 (1998) (unanimously holding the Americans with Disabilities Act applies to state prisoners). Other class action and impact litigation cases brought by myself and the Prison Law Office involving the rights of prisoners include *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1993) (action challenging conditions, psychiatric and medical care, and HIV discrimination at California Medical Facility); *Madrid v. Gomez*, 889 F. Supp. 1146 (N.D. Cal. 1995) (action challenging conditions, medical and mental health care, guard brutality, due process, personal safety, and access to law libraries at Pelican Bay State Prison); *Coleman v. Wilson*, 912 F. Supp. 1282 (E.D. Cal. 1995) (statewide class action on the adequacy of mental health care in California prisons); *Clark v. California*, 123 F.3d 1267 (9th Cir. 1997) (statewide class action on behalf of developmentally disabled California prisoners under the Americans with Disabilities Act); *Armstrong v. Wilson*, 124 F.3d 1019 (9th Cir.

1997) (statewide class action on behalf of physically disabled California prisoners under the Americans with Disabilities Act and the Rehabilitation Act); *Plata v. Schwarzenegger*, C-O1-1351 TEH (N.D. Cal. 2001) (statewide class action challenging inadequacy of California prisoner health care); *Valdivia v. Davis,* 206 F.Supp.2d 1068 (E.D. Cal. 2002) (statewide class action challenging the lack of due process in California Board of Prison Terms parole revocation proceedings); *Perez v. Tilton*, C-05-5241 JSW (N.D. Cal. 2005) (statewide class action challenging inadequacy of California prisoner dental care); *Farrell v. Tilton*, Alameda County Sup. Ct. No. 3079344 (2003) (taxpayer action to reform the conditions of confinement for wards under the jurisdiction of the Division of Juvenile Justice [formerly California Youth Authority]).

3. The Prison Law Office, the American Civil Liberties Union Foundation National Prison Project ("ACLU-NPP"), the American Civil Liberties Union Foundation of Arizona ("ACLU-AZ"), Perkins Coie LLP ("Perkins Coie"), Jones Day, and Arizona Center for Disability Law ("ACDL") (collectively, "counsel") have been working for more than three years on this matter. The Prison Law Office and ACLU-NPP specialize in the specific area of prisoners' rights. Jones Day and Perkins Coie specialize in complex litigation and trial practice. Counsel from the Arizona Center for Disability Law and ACLU-AZ specialize in civil rights litigation. The attorneys from each of these organizations devoted their considerable skill to helping Plaintiffs achieve a satisfactory resolution to this litigation.

4. Counsel are committed to the vigorous, effective, and efficient prosecution of the interests of the Plaintiff class (the "Class") of more than 33,000 prisoners in the custody of the Arizona Department of Corrections ("ADC"), and the subclass.[1] Prior to and since filing the complaint in this action in March 2012, counsel have dedicated thousands of hours and hundreds of thousands of dollars to litigating Plaintiffs' claims and gathering necessary evidence to prove the case at trial. Counsel will continue to commit

---

[1] ACDL is a separate Plaintiff in this case, and represents itself. The Court did not appoint ACDL to represent the Class or Subclass.

78204-0001/LEGAL124439674.1                    -2-

1  substantial resources to the representation of the Class in monitoring Defendants'
2  compliance with the Settlement Agreement [Doc. 1185].

3       5.    Before filing the case, I sent a detailed demand letter to Defendant Ryan,
4  describing the results of our investigation into the conditions of confinement in ADC's
5  isolation units, and the profound shortcomings in ADC's delivery of medical, dental, and
6  mental health care.  [Doc. 74-1, Ex. 2]  After negotiations, our office and ADC entered
7  into a tolling agreement to determine whether it would be possible to resolve the case
8  without litigation.  [*Id*., Ex. 1]  However, Defendant Ryan terminated the agreement in
9  early 2012 and the Complaint was filed on March 22, 2012.  [Doc. 1]

10      6.    This case alleged systemic failures by Defendants Ryan and Pratt to provide
11 minimally adequate health care and constitutional conditions of confinement to the
12 prisoners in ADC's custody.  Plaintiffs alleged that Defendants, through ADC policies and
13 practices, provided prisoners with grossly inadequate medical care, dental care, and
14 mental health care, and subjected prisoners to unconstitutional conditions of confinement
15 in ADC's isolation units.  Plaintiffs also alleged that Defendants were aware of and
16 deliberately indifferent to the fact that ADC's systemic deficiencies place all prisoners at
17 substantial risk of serious harm, in violation of the Eighth Amendment.  To remedy this
18 violation, Plaintiffs requested declaratory and injunctive relief addressing at a minimum
19 healthcare staffing, access, screening, emergency responses, medications, supplies,
20 chronic care, environmental conditions, mental health treatment, quality assurance, and
21 conditions in isolation.

22      7.    When it certified this case as a class action in March 2013, the Court
23 defined the Class as "[a]ll prisoners who are now, or will in the future be, subjected to the
24 medical, mental health, and dental care policies and practices of the ADC."  [Doc. 372
25 at 22] The Court certified ten practices related to the provision of health care:  (1) failure
26 to provide timely access to health care; (2) failure to provide timely emergency treatment;
27 (3) failure to provide necessary medication and medical devices; (4) insufficient health
28 care staffing; (5) failure to provide care for chronic diseases and protection from

Case 2:12-cv-00601-ROS Document 1207 Filed 12/16/14 Page 5 of 13

infectious disease; (6) failure to provide timely access to medically necessary specialty care; (7) failure to provide timely access to basic dental treatment; (8) extracting teeth that could be saved by less intrusive means; (9) failure to provide mentally ill prisoners medically necessary mental health treatment (i.e., psychotropic medication, therapy, and inpatient treatment); and (10) failure to provide suicidal and self-harming prisoners basic mental health care. [*Id.*]

8. The Court also certified a Subclass consisting of "[a]ll prisoners who are now, or will in the future be, subjected by the ADC to isolation, defined as confinement in a cell for 22 hours or more each day or confinement in the following housing units: Eyman–SMU 1; Eyman–Browning Unit; Florence–Central Unit; Florence–Kasson Unit; or Perryville–Lumley Special Management Area." [*Id.* at 22] With respect to the Subclass, the Court certified seven practices: (1) inadequate psychiatric monitoring because of chronic understaffing; (2) use of chemical agents against prisoners on psychotropic medications; (3) lack of recreation; (4) extreme social isolation; (5) constant cell illumination; (6) limited property; and (7) insufficient nutrition. [*Id.* at 23]

9. In order to discharge the burden of proof for the Class and Subclass, Plaintiffs had to demonstrate deliberate indifference to medical, dental, and mental health needs and conditions of confinement that create a substantial risk of serious harm to the Class and Subclass. At the time Plaintiffs moved for class certification, they estimated the size of the Class to be more than 33,000 prisoners and the size of the Subclass to be approximately 3,000 prisoners. [Doc. 294 at 10] Plaintiffs had to gather evidence regarding four discrete but related subjects: the provision of medical, dental, and mental health care at all 10 Arizona State Prison Complexes (ASPCs), plus the conditions in five isolation units. In the course of litigation, three different entities provided health care to prisoners: (1) ADC itself; (2) its first health care contractor, Wexford Health Services ("Wexford"); and (3) its second health care contractor, Corizon, Inc.

10. In order to gather information regarding systemic practices that put all prisoners at substantial risk of serious harm, Plaintiffs issued multiple discovery requests,

1  and Defendants produced more than 400,000 pages of documents, including prisoner
2  health care records, data reports, and emails.  Plaintiffs' counsel took 62 depositions of
3  ADC, Corizon, and Wexford employees and ADC prisoners, and defended 23 depositions.
4  The Court's docket contains more than 1,200 entries.

5         11.  Plaintiffs retained experts on correctional dental, medical, and mental health
6  care, and on the use of solitary confinement.  These experts each toured ADC prisons to
7  visually inspect the facilities, to interview prisoners and staff, and to review health care
8  and central file records.  Each of these experts toured multiple prisons and wrote reports
9  regarding their findings.  By the time of settlement, the experts had reviewed more than
10 one thousand health care and central files; had conducted 38 separate tours of institutions;
11 and had written 31 separate expert reports, including four that were filed in support of
12 Plaintiffs' class certification motion.  [Doc. 292, Exs. B-E; Doc. 1104, Exs. 1-21;
13 Doc. 1138, Exs. 1, 6, 7, 9]

14        12.  Plaintiffs' counsel also had to repeatedly compel Defendants to comply with
15 discovery, and to then seek further clarification from the Court when enforcing the
16 Court's discovery orders.  [*See, e.g.*, with regard to the production of medical records,
17 Docs. 186, 673, 687, 727, 1056; *see also* Doc. 1137-2, Ex. B, for a listing of key rulings
18 by the Court]  For example, Named Plaintiff Victor Parsons propounded two sets of
19 requests for document production and one set of interrogatories in June 2012.  [*See*
20 Doc. 673, Exs. 1, 2, and 3]  His discovery requests sought critical materials regarding the
21 central issues in the case.  After propounding his discovery, Parsons was released from
22 prison on November 26, 2012.  In its order certifying the plaintiff class, this Court
23 dismissed Parsons as a named plaintiff due to his release from ADC custody.  [Doc. 372]
24 For months after Parsons' release, Defendants supplemented their responses to his
25 discovery requests at least 13 times, including at least seven times after the Court
26 dismissed him from the case.  After the last date for propounding discovery, the
27 Defendants took the position that they no longer had to supplement their responses to
28 discovery made in Parsons' name, not because there were not additional responsive

materials, but because he had been dismissed. Plaintiffs moved to compel, and the Court ultimately overruled Defendants' objection. [Doc. 717]

13. In the course of this litigation, the Court issued two separate orders extending the discovery period, which required Plaintiffs' counsel to repeat much of the discovery. In its original scheduling order of July 2012, the Court set May 31, 2013 as the deadline for completion of all fact discovery. [Doc. 52 at 2] On January 30, 2013, Defendants abruptly notified the Court and Plaintiffs that their first health care contractor, Wexford, would be replaced by Corizon, effective March 4, 2013. [Doc. 344] As a result of this unforeseen (by Plaintiffs) circumstance, Plaintiffs asked the Court to extend the discovery cut-off date by six months. [Doc. 364] The Court extended the deadline for fact and expert discovery to September 27, 2013. [Docs. 388, 389]

14. After the Court ruled in February 2014 that Defendants and their experts could not rely upon evidence that post-dated September 27, 2013 [Doc. 815], Defendants filed a motion requesting the discovery cut-off be extended to July 1, 2014, so that more current information regarding the state of health care and isolation units could be presented at trial in October 2014. [Doc. 826] Plaintiffs proposed that rather than extend the discovery cut-off deadline, which would result in yet another costly cycle of discovery, the Court instead move the trial date up to June 2014. [Doc. 832 at 8-9] The Court maintained the October 2014 trial date, and ordered the discovery cut-off date be extended to include information through April 1, 2014, which resulted in Plaintiffs' counsel conducting another round of discovery, including expert tours by two isolation experts, and health care file reviews by the medical, dental, and mental health experts. [Docs. 848, 871]

15. Defendants' Motion for Summary Judgment [Doc. 891] rested upon a 475 page document that included 4,327 "undisputed" facts. [Docs. 873, 937] After Plaintiffs' counsel had spent an enormous amount of time responding to the motion and Defendants' statement of facts, the Court on its own motion held that this statement of facts "greatly

1  exceeds Local Rule 56.1(a)" and instructed Plaintiffs that they did not have to controvert
2  (or read) every one of the 4,327 facts. [Doc. 962 at 1-2]

3         16.    Finally, in preparing the joint pretrial order Defendants simply cut and
4  pasted the vast majority of the facts they submitted in their summary judgment motion
5  into their "uncontested facts" section of the joint pretrial statement, forcing Plaintiffs'
6  counsel to engage in the tedious and time-consuming process of responding to each one of
7  these facts, the vast majority of which were immaterial to the case. [Docs. 1162-2, 1162-
8  3]

9         17.    Plaintiffs have prevailed on all critical motions and appeals. The Court
10 denied Defendants' Motion to Dismiss on October 10, 2012, rejecting Defendants'
11 arguments on standing, exhaustion of administrative remedies and failure to state a claim.
12 [Doc. 175]  On March 6, 2013, the Court granted Plaintiffs' Motion for Class
13 Certification. [Doc. 372] Defendants sought interlocutory review of the Court's class
14 certification order, and on June 5, 2014, a Ninth Circuit panel unanimously affirmed the
15 district court's order. *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014). Defendants filed a
16 Petition for Rehearing En Banc that currently is pending. The Court denied Defendants'
17 *Daubert* motion to exclude the opinions of all of Plaintiffs' experts on July 28, 2014, and
18 denied Defendants' motion for summary judgment. [Doc. 1040, 1065]

19         18.    The parties have stipulated that Defendants will pay Plaintiffs' counsel $4.9
20 million total for fees and costs. [Doc. 1185 at ¶ 42] Because Plaintiffs' counsel is not
21 charging class members a fee for their services, counsel's fee is based purely on the
22 parties' stipulation. The amount of time and money actually expended by Plaintiffs'
23 counsel in litigating this case far exceeds the amount Defendants have agreed to pay.
24 Plaintiffs' counsel spent a total of $466,709 in non-expert costs. Each member of the
25 litigation team maintained contemporaneous records showing the time worked on the case
26 and provided a detailed description of the work. I have reviewed each office's summary
27 of attorney/paralegal time and costs, after exercising billing judgment to exclude hours
28 that were redundant, excessive, or otherwise unnecessary. I believe that they are

exceeds Local Rule 56.1(a)" and instructed Plaintiffs that they did not have to controvert (or read) every one of the 4,327 facts. [Doc. 962 at 1-2]

16. Finally, in preparing the joint pretrial order Defendants simply cut and pasted the vast majority of the facts they submitted in their summary judgment motion into their "uncontested facts" section of the joint pretrial statement, forcing Plaintiffs' counsel to engage in the tedious and time-consuming process of responding to each one of these facts, the vast majority of which were immaterial to the case. [Docs. 1162-2, 1162-3]

17. Plaintiffs have prevailed on all critical motions and appeals. The Court denied Defendants' Motion to Dismiss on October 10, 2012, rejecting Defendants' arguments on standing, exhaustion of administrative remedies and failure to state a claim. [Doc. 175] On March 6, 2013, the Court granted Plaintiffs' Motion for Class Certification. [Doc. 372] Defendants sought interlocutory review of the Court's class certification order, and on June 5, 2014, a Ninth Circuit panel unanimously affirmed the district court's order. *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014). Defendants filed a Petition for Rehearing En Banc that currently is pending. The Court denied Defendants' *Daubert* motion to exclude the opinions of all of Plaintiffs' experts on July 28, 2014, and denied Defendants' motion for summary judgment. [Doc. 1040, 1065]

18. The parties have stipulated that Defendants will pay Plaintiffs' counsel $4.9 million total for fees and costs. [Doc. 1185 at ¶ 42] Because Plaintiffs' counsel is not charging class members a fee for their services, counsel's fee is based purely on the parties' stipulation. The amount of time and money actually expended by Plaintiffs' counsel in litigating this case far exceeds the amount Defendants have agreed to pay. Plaintiffs' counsel spent a total of $466,709 in non-expert costs. Each member of the litigation team maintained contemporaneous records showing the time worked on the case and provided a detailed description of the work. I have reviewed each office's summary of attorney/paralegal time and costs, after exercising billing judgment to exclude hours that were redundant, excessive, or otherwise unnecessary. I believe that they are

1  reasonable and fair in light of the enormous obstacles present this hard-fought case and
2  the significant amount of time and resources Plaintiffs' counsel invested in this case, to
3  the exclusion of engaging in other impact litigation.

4      19.    For example, subtracting the $466,709 in costs from the $4.9 million
5  Defendants have agreed to pay, results in a $4,433,291 balance attributed to attorney time.
6  Calculated at the PLRA attorney billing rate of $213/hour, the State is paying for 20,814
7  hours of time and labor for three years' worth of litigation.  Plaintiffs' counsel spent well
8  in excess of this number of hours litigating this case, such that the amount to be paid is
9  even more reasonable when considering the scope of this class action.

10     20.    Similarly, Defendants' agreement to pay up to $250,000 per year for
11 monitoring fees and costs is very reasonable under the circumstances.  Plaintiffs' counsel
12 will have to monitor ten different prison facilities on four distinct subjects, including the
13 time and expense of out-of-state travel.

14     I declare under the penalty of perjury that the foregoing is true and correct.
15     Executed this 16th day of December, 2014, in Berkeley, California.

      *s/ Donald Specter*
      Donald Specter

**ADDITIONAL COUNSEL:**

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Warren E. George (Cal. 53588)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:   dspecter@prisonlaw.com
           ahardy@prisonlaw.com
           snorman@prisonlaw.com
           ckendrick@prisonlaw.com
           wgeorge@prisonlaw.com

*Admitted *pro hac vice*


Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
Kirstin T. Eidenbach (Bar No. 027341)
John H. Gray (Bar No. 028107)
Matthew B. du Mée (Bar No. 028468)
Jerica L. Peters (Bar No. 027356)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:   dbarr@perkinscoie.com
         agerlicher@perkinscoie.com
         keidenbach@perkinscoie.com
         jhgray@perkinscoie.com
         mdumee@perkinscoie.com
         jpeters@perkinscoie.com

Daniel Pochoda (Bar No. 021979)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:   dpochoda@acluaz.org
         jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ajmel Quereshi (Md. 28882)**
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:   dfathi@npp-aclu.org
         afettig@npp-aclu.org
         aquereshi@npp-aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
Dara Levinson (Cal. 274923)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email: cnmitchell@jonesday.com
aamiri@jonesday.com
daralevinson@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email: jlwilkes@jonesday.com
tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone: (212) 326-3498
Email: kmamedova@jonesday.com
jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

Sarah Kader (Bar No. 027147)
Asim Varma (Bar No. 027927)
Brenna Durkin (Bar No. 027973)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email:   skader@azdisabilitylaw.org
         avarma@azdisabilitylaw.org

J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
**ARIZONA CENTER FOR DISABILITY LAW**
100 N. Stone Avenue, Suite 305
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:   jrico@azdisabilitylaw.org
         jross@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

# **CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2014, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

s/ S. Neilson