MR Roberto Carrasco Gamez # 131401
ASPC-EYMAN-SMU-I
P.O. Box 4000-Florence, Az 85132

FILED / RECEIVED / LODGED / COPY
JAN 0 2 2015
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ____ DEPUTY

UNITED STATE DISTRICT COURT
DISTRICT OF ARIZONA

Victor Parsons et AL,
Plaintiff(s)

v.

Charles L. Ryan et AL,
Defendant(s)

CASE NO. 12-cv-0601 PHX DKD

Plaintiff Gamez "OBJECTS" to ("the Parties") proposed Settlement pursuant to Court Order dkt. 1205

COMES NOW, NAMED PLAINTIFF GAMEZ, in propria persona, hereby submits his "OBJECTION" to ("the Parties") proposed settlement, For the reasons set forth in the Memorandum of Points and Authorities Attached

Respectfully Submitted this 31 day of Dec 2014
UNDER PENALTY OF PERJURY

MR Roberto Carrasco Gamez # 131401
ASPC-EYMAN-SMU-I
P.O. Box 4000- Florence, AZ 85132

MEMORANDUM OF POINTS AND AUTHORITY

Named Plaintiff Gamez "objects" to Defendant Ryan and Pratt's use of the above Litigation as a springboard to entice the state Legislation. In the course of settling this matter Def. Ryan has served it's own interest by requesting greater and greater budget.

Arizona Department of Corrections ("ADC") has strategically acquiesced the Lawsuit (As demonstrated by it's practices), After years of terrorizing its seriously Mentally Ill ("SMI") prisoners. Extended periods of time in isolation only serves to deteriorate, aggravates behavior and does not reduce Recidivism or improve behavior patterns. The sad truth is, that thousands of ("SMI") prisoners were knowingly abused and tortured by ADC personnel over at lease 20 years. In essence, the extreme social isolative and sensory deprivative conditions have transmuted into a death sentence for several ("SMI") prisoners.

ADC has now elected to capitulate by offering a proposed settlement, which appears to be a means to stop the ACLU and it's quikers from further exposing it's "Abuse and Torture Allegations" (inter Nia).

In Casey v. Lewis 834 F. Supp 1477 (D. Ariz 1994), ("SMI") prisoners Eighth Amendment rights were being trampled by ADC's policys and practices that placed ("SMI") prisoners in Long-term isolation instead of treating their Mental illness. ("The Parties") in Casey stipulated that:

"UNDER NO CIRCUMSTANCES SHALL ISOLATION BE USED AS AN ALTERNATIVE TO MENTAL HEALTH CARE"

(See: Plaintiff Gamez' Exhibit A Casey Stipulation)

Despite ADC's stipulation they continued to violate prisoner's rights. One would think after 20 years ADC would adhere to its own stipulation, which has again brought us to the Parson's Class Action.

Prior to Parson's, ADC had a variety of written policys that prohibited the Use of Force against ("SMI") prisoners despite these written policys ("ADC") did not adhere to them. ("SMI") prisoners in isolation are being subject to the most dehumanizing experiences, while Line-Officers, supervisors and Medical personnel laughed, joked and commonly fabricated it's written reports to justify its Use of Force. Fully catatonic prisoners have become a easy target for victimization due to their inability to articulate their complaints, besides who's going to guard the unguarded.

The installment of surveillance cameras in all its Maximum Custody prisons are not indifferent to ("the parties") stipulation. Without surveillance cameras in its Maximum Custody prisons, not even a **4.9 million dollar settlement** will substantially deter ADC from engaging in it's "pepper-spray sporting events". Real deterrence will come from prompt reprimand including prosecution. There is no independent oversight of internal investigation. The Officers who engage in the "pepper-spray sporting events" are not effected by the proposed settlement and in due time will abandon its current sting.

As commonly held views of criminal offenders "as wild and threatening" have shaped societys perception on prisoners, ("ADC") has ignored all but the most egregious Officer-on-Inmate beatings. ("ADC") personnel is not held accountable for its abusive misconduct and instead has assumed a notion

of "Total Immunity"

Hand held video recordings have proven to be insufficient because they do not document blind spots, usually don't record what initiated the incident and often end up missing when incriminating. It is within this backdrop that ADC personnel have covered-up its Excessive force. (See Plaintiff's Exhibit B (Gamez's Recommendation)

Any additional funding for the surveillance equipment should come from revenue that is gained from substandard or overpriced services to prisoners (e.g. Keefe commissary, phone services etc.)

For the foregoing reason Mr. Gamez Respectfully dissents to any proposed stipulation

Respectfully Submitted this 31 day of Dec 2014

("THE WOUNDED")

MR. Roberto Carrasco Gamez
# 131401 4A46
ASPC-EYMAN SMU I
P.O. Box 4000 Florence, AZ
85132

Certificate of Service

Copies of the foregoing were Efiled This day of 2014

# EXHIBIT A



6

Casey v. Lewis
PC-AZ-004-005

Edward G. Hochuli, Bar #004566
Kathleen L. Wieneke, Bar #011139
Daniel P. Struck, Bar #012377
JONES, SKELTON & HOCHULI
2901 North Central Avenue
Suite 800
Phoenix, Arizona 85012
(602) 263-1700

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE STATE OF ARIZONA

FLETCHER CASEY, JR., et al., on behalf of themselves and all others similarly situated,

Plaintiff,

v.

SAMUEL A. LEWIS, Director, Arizona Department of Corrections, et al.,

Defendant.

NO. CIV 90-54 PHX CAM (Lead)

CIV 91-1808 PHX CAM (Consolidated)

PARTIES' STIPULATED JOINT PROPOSAL FOR INJUNCTIVE RELIEF FOR MENTAL HEALTH

CHARLES L. ARNOLD, guardian ad litem on behalf of H.B.,

Plaintiff,

v.

SAMUEL LEWIS, director; MARY VERMEER, deputy warden, Santa Maria-Perryville; DAVID FERNANDEZ, M.D., Arizona Department of Corrections, in their official capacities,

Defendants.

The Arizona Department of Corrections (ADOC) shall implement mental health policies and procedures that provide

JONES, SKELTON & HOCHULI
ATTORNEYS AT LAW
2901 NORTH CENTRAL AVENUE
SUITE 800
PHOENIX, ARIZONA 85012
TELEPHONE (602) 263-1700

treatment services, trained and qualified mental health care staff, and facilities and equipment in quantity and quality to maintain adequate mental health care for seriously mentally ill prisoners in keeping with professionally recognized health care standards. Such policies and procedures shall mandate but not be limited to the following:

A. Mental Health Care Generally

1. The ADOC shall ensure that prisoner grievances about mental health care services delivery are reviewed at least monthly by the Mental Health Program Manager, other prisoner correspondence concerning mental health services are reviewed by the Mental Health Program Manager on a randomly selected basis at least monthly, and problems affecting the quality and quantity of mental health care addressed.

2. The ADOC shall ensure that all mental health services provided are documented in a mental health chart maintained by the Division of Health Services and that the mental health chart is made available to the psychiatrist or psychologist whenever he/she sees a prisoner.

B. Identification of seriously mentally ill prisoners

1. The ADOC shall develop and implement policies and procedures which ensure that seriously mentally ill prisoners are identified, including review of all available

JONES, SKELTON & HOCHULI
ATTORNEYS AT LAW
2901 NORTH CENTRAL AVENUE
SUITE 800
PHOENIX, ARIZONA 85012
TELEPHONE (602) 263-1700

8

records and interviews by a health care professional[1] upon admission to the ADOC or transfer from one ADOC facility to another.

2. Intake Procedures:

a. Medical (including mental health) records shall be reviewed by health staff within twenty-four (24) hours (excluding weekends and legal holidays) of receipt of prisoners at any ADOC institution, and, where appropriate, timely referral made to a mental health professional[2] for evaluation.

b. The ADOC shall ensure that prisoners whose available records or oral reports reveal a history of serious mental health problems or who have received mental health treatment in a non-prison health facility are seen and evaluated by an appropriate health care professional within twenty four (24)hours (excluding weekends and legal holidays) of their entry to an ADOC institution and by a mental health professional within seventy two (72) hours (excluding weekends and legal holidays).

[1]Health care professional includes a registered nurse, physicians' assistant or physician.

[2]Mental health professional includes a psychiatrist, psychiatric physician assistant, licensed clinical psychologist, mental health therapist, psychology associate, psych registered nurse, and clinical social worker (MSW).

JONES, SKELTON & HOCHULI
ATTORNEYS AT LAW
2901 NORTH CENTRAL AVENUE
SUITE 800
PHOENIX, ARIZONA 85012
TELEPHONE (602) 263-1700

c. The ADOC shall provide appropriate psychological testing that may pick up either a major deficiency in intellectual functioning or psychological distress.

d. When appropriate the ADOC shall employ best efforts to obtain the past psychiatric records of prisoners.

3. Identification and Treatment of Prisoners with Mental Health Care Problems

a. The ADOC shall ensure that prisoners requesting mental health services shall have their requests reviewed by a mental health professional within twenty four (24) hours and appropriate mental health treatment, including on-going services, be developed and provided. On weekends and legal holidays these requests shall be reviewed by at a minimum a licensed practical nurse with telephone consultation with a mental health professional where appropriate. Such requests shall be reviewed by a mental health professional no later than the next working day and appropriate mental health treatment, including on-going services, be developed and provided.

b. The ADOC shall ensure that, at a minimum, a health care professional in consultation with a mental health professional conducts a face-to-face evaluation of a prisoner who has a serious psychological symptom or complaint within twenty-four (24) hours and that he/she be

JONES, SKELTON & HOCHULI
ATTORNEYS AT LAW
2901 NORTH CENTRAL AVENUE
SUITE 800
PHOENIX, ARIZONA 85012
TELEPHONE (602) 263-1700

provided appropriate mental health treatment in a timely fashion.

C. Programming for Mentally Ill Prisoners

1. The ADOC shall develop and implement policies and procedures that ensure that seriously mentally ill prisoners receive appropriate mental health services to address their mental health needs.

2. The ADOC shall ensure that, in the event behavioral modification programs for seriously mentally ill prisoners are implemented, they are run by staff trained in mental health care and in the specific behavioral modification program in use.

3. The ADOC shall provide mental health programming at the Special Programs Unit (SPU) to include one-on-one counseling and group therapy.

4. The ADOC shall not house prisoners who are seriously mentally ill in a facility without appropriate mental health services.

D. Treatment of Psychiatric Emergencies

1. The ADOC shall implement policies and procedures that ensure the identification and treatment of suicidal prisoners. Internal Management Policy No. 301.25, effective August 23, 1989, attached hereto and incorporated herein, is such a policy. The term "mental health/health care staff" as used in IMP No. 301.25 shall include both mental health and health care staff.

JONES, SKELTON & HOCHULI
ATTORNEYS AT LAW
2901 NORTH CENTRAL AVENUE
SUITE 800
PHOENIX, ARIZONA 85012
TELEPHONE (602) 263-1700

JONES, SKELTON & HOCHULI
ATTORNEYS AT LAW
2901 NORTH CENTRAL AVENUE
SUITE 800
PHOENIX, ARIZONA 85012
TELEPHONE (602) 263-1700

E. Use of Isolation[3]

1. The ADOC shall ensure that under no circumstances shall isolation be used as an alternative to mental health care.

2. The ADOC shall develop and implement policies and procedures to ensure that prisoners who are exhibiting symptoms of serious mental illness are not placed in isolation cells in a non-treatment facility, unless it is an emergency, there is <u>absolutely no other</u> place to put them and where clinically appropriate procedures for transfer to a mental health facility are initiated no later than forty eight (48) hours from placement in the isolation cell.

3. The ADOC shall ensure that acutely seriously mentally ill prisoners placed in isolation are seen by a mental health professional within twenty-four (24) hours (excluding weekends or legal holidays) of their placement in isolation and on weekends or legal holidays at a minimum by a licensed practical nurse within twenty four (24) hours in consultation with a mental health professional, with appropriate follow up by a mental health professional on the next working day.

4. The ADOC shall ensure that a seriously mentally ill prisoner removed from isolation shall receive timely and appropriate follow-up mental health treatment.

---

[3]This term is being used in place of the term "lockdown" as used in the court's Findings of Fact and Conclusions of Law regarding Mental Health.

F. Medication

1. The ADOC shall develop and implement policies and procedures which ensure that prisoners receiving psychotropic medications are properly monitored:

a. The ADOC shall ensure that prisoners receive their psychotropic medications within a medically appropriate time frame.

b. The ADOC shall ensure that prisoners receive a face-to-face interview before being prescribed psychotropic medications.

c. The ADOC shall ensure that prisoners obtaining refills of psychotropic medications receive a face-to-face interview with a health or mental health professional.

d. The ADOC shall ensure that prisoners do not have their psychotropic medications discontinued based on blood levels without a face-to-face evaluation by a psychiatrist.

e. The ADOC shall ensure that a prisoner on psychotropic medication shall be interviewed face-to-face by a mental health professional concerning any non-compliance with his medication regimen within a reasonable period of time after the non-compliance is known.

2. The ADOC shall ensure that prisoners who are transferred shall continue to receive medications administered at the transferring institution for mental health reasons

JONES, SKELTON & HOCHULI
ATTORNEYS AT LAW
2901 NORTH CENTRAL AVENUE
SUITE 800
PHOENIX, ARIZONA 85012
TELEPHONE (602) 263-1700

pending evaluation and treatment by the appropriate health care professional at the receiving institution.

G. Staffing

1. The ADOC shall anticipate the need for additional mental health staff based on projected increases in authorized prison beds.

2. The ADOC shall develop recruitment incentives for mental health staff positions which are difficult to fill.

3. The ADOC shall ensure that a licensed clinical psychologist supervises the clinical work of the non-medical mental health professionals.

4. The ADOC shall ensure a that psychiatrist is responsible for supervising the clinical aspects of the psychiatric component of the mental health program.

5. The ADOC shall ensure that a mental health professional, with sufficient and appropriate education and experience, is responsible for administering the mental health program.

6. The ADOC shall maintain at least one half-time psychiatric position at the SMU.

7. The ADOC shall maintain at least one full-time psychiatrist position at the Tucson facility.

8. The ADOC shall maintain at least one full-time psychiatric nurse position at the Perryville facility.

JONES, SKELTON & HOCHULI
ATTORNEYS AT LAW
2901 NORTH CENTRAL AVENUE
SUITE 800
PHOENIX, ARIZONA 85012
TELEPHONE (602) 263-1700

9. The ADOC shall maintain at least one full-time psychiatrist position at the Perryville facility.

10. The ADOC shall maintain at least two full-time psychiatrist positions at the Florence area complexes.

11. The ADOC shall ensure that psychiatric coverage at the Douglas facility occurs at least monthly when inmates needing psychiatric care are located there, and in any event, a psychiatrist shall consult with the mental health and health care staff at Douglas at least monthly.

12. The ADOC shall increase the number of psychological associate and licensed clinical psychologist positions assigned to health services beyond the January 1992 levels and assign them in a manner which best serves the serious mental health needs of the prisoner population.

13. The ADOC shall ensure that an additional two psychological associate positions assigned to health services beyond the number present in January 1992 be designated for ASPC-Florence, ASPC- Eyman, ASPC-Tucson, ASPC-Perryville.

H. Housing

1. The ADOC shall develop appropriate seclusion rooms for the special housing units such as the Special Program Unit (SPU). The new SPU is scheduled to come on line in 1995.

JONES, SKELTON & HOCHULI
ATTORNEYS AT LAW
2901 NORTH CENTRAL AVENUE
SUITE 800
PHOENIX, ARIZONA 85012
TELEPHONE (602) 263-1700

2. The ADOC shall not utilize the socialization chair or behavior pens.

I. Equal Protection

1. The ADOC shall develop and implement policies and procedures to ensure that mental health programming for female prisoners is specific to their needs and is in parity with the mental health programming provided to the men.

2. The ADOC shall assure that seriously mentally ill female prisoners, pursuant to A.R.S. Secs. 31-226 and 226.01, are transfered to a facility for involuntary commitment commensurate to the level of mental health care provided at Baker Ward for men.

J. Conclusion

This joint stipulated proposal is submitted pursuant to this court's order dated April 14, 1993. By submitting this stipulation, the parties do not concede any matters decided by the trial court, nor do they waive any right to appeal any final order issued in this matter or in any matter consolidated herein.

DATED this 3rd day of June, 1994.

JONES, SKELTON & HOCHULI

By [signature]
Edward G. Hochuli
Kathleen L. Wieneke
Daniel P. Struck
2901 North Central Avenue
Suite 800

JONES, SKELTON & HOCHULI
ATTORNEYS AT LAW
2901 NORTH CENTRAL AVENUE
SUITE 800
PHOENIX, ARIZONA 85012
TELEPHONE, (602) 263-1700

16

Phoenix, Arizona 85012
Attorneys for Defendants

By [signature]
Alice L. Bendheim
Attorney at Law
1542 West McDowell Road
Phoenix, Arizona 85007
Co-Counsel for Plaintiff
and
Adjoa Aiyetoro, of counsel
National Conference of Black Lawyers
1875 Connecticut Avenue, N.W.
Suite 400
Washington, D.C. 20009
(202)723-1662
and
Stuart H. Adams, Jr.
ACLU National Prison Project
1875 Connecticut Avenue, N.W.
Suite 410
Washington, D.C. 20009
Attorneys for Plaintiffs

COPY of the foregoing delivered this 3rd day of June, 1994, to:

Honorable Carl A. Muecke
UNITED STATES DISTRICT COURT
230 North First Avenue
Phoenix, Arizona 85025

COPY of the foregoing mailed this 3rd day of June, 1994, to:

Leslie Cohen
ARIZONA CENTER FOR LAW IN THE PUBLIC INTEREST
3208 East Fort Lowell, Suite 106
Tucson, Arizona 85716
Attorneys for Plaintiff H.B.

Sonia D. Overholser
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL

JONES, SKELTON & HOCHULI
ATTORNEYS AT LAW
2901 NORTH CENTRAL AVENUE
SUITE 800
PHOENIX, ARIZONA 85012
TELEPHONE (602) 263-1700

15 South Fifteenth Avenue, 4th Floor
Phoenix, Arizona 85007

Lynda Carpenter-Poulsen

JONES, SKELTON & HOCHULI
ATTORNEYS AT LAW
2901 NORTH CENTRAL AVENUE
SUITE 800
PHOENIX, ARIZONA 85012
TELEPHONE (602) 263-1700

# EXHIBIT B

Plaintiff Gamez's Recommendations.

1. Implement a policy and practice that prevents Serious Mentally ill ("SMI") prisoners from getting involved with the disciplinary system, to avoid extended stays in ADC's Maximum Custody

2. Review the disciplinary sentence(s) of all ("SMI") prisoners for the purpose of removing prisoners from ADC's Maximum Custody.

3. Install security cameras to cover all unmonitored areas consistent with right of privacy and Hippa.

4. Adjust each camera that demonstrates a pattern of "Freezing" to improve motion detection sensitivity,

5. Establish a written preventive maintenance schedule for lens cleaning, camera refocusing and replacement of faulty cameras

6. Modify the video surveillance retention policy and procedure to clarify the responsibility to provide notice to the video retention officer to preserve a video by the Unit supervisor from the investigator's responsibility to request a copy of the video for the investigation

# EXHIBIT 1

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Informal Complaint Resolution**

*Complaints are limited to one page and one issue. NO ATTACHMENTS PERMITTED. Please print all information.*

| Inmate Name (Last, First M.I.) | ADC Number | Institution/Unit | Date |
|---|---|---|---|
| Gamez, Robert C | 131401 | ASPC-Eyman, SMU I | 24 Nov. 14 |

| To | Location |
|---|---|
| CO III B Smith | 4A46 |

State briefly but completely the problem on which you desire assistance. Provide as many details as possible.

I am attempting to informally resolve the following problem. I am designated SMI as defined in ADC SMI Determined Form (Form 1103-13, 12/19/12) and Diagnostic and Statistical Manual of Mental Disorders (DSM). I am eligible for property consistent with behavioral health custody step program matrix to include a loaner T.V.; mandatory programs as outlined pursuant to D.I. 326 (Attachment N)

In addition to the general privileges and incentives afforded to prisoners under D.I. 326, all SMI prisoners in maximum custody shall receive

(1) 10 hours of unstructured out-of-cell time per week

(2) 1 hour of additional out-of-cell mental health programming per week

(3) 1 hour of additional out of cell psycho-educational programming per week

(4) 1 hour of additional out of cell programming per week

Unfortunately SMU-I fails to substantially comply with the performance measures to abate the debilitating isolative conditions. Resolution: provide the proper programs & incentives as described above. Furthermore install surveillance cameras in the pods to ensure substantial compliance.

This informal resolution was hand delivered to Martinez on 24 Nov. 14

Inmate Signature: [signature] Date: 24 Nov. 14

Have You Discussed This With Institution Staff? ☒ Yes ☐ No

If Yes, give the staff member Name: HNK

Distribution: Original - Inmate
Copy – Grievance Coordinator File

802-11
12/19/12



21 of 29

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Informal Complaint Response**

*For Distribution: Copy of Corresponding Inmate Informal Complaint Resolution must be attached to this response.*

| Inmate Name (Last, First M.I.) | ADC Number |
|---|---|
| Gamez, Robert 4 A 46 | 131401 |

| Institution/Unit |
|---|
| ASPC EYMAN/ SMU I |

| From | Location |
|---|---|
| COIII B Smith | 4 A/D |

I am in receipt of your Inmate Informal Complaint Resolution dated November 24, 2014 in regards to SMI Issues which was received in my office on November 26, 2014.

To investigate your issue I have reviewed all of the available information to include the documentation you have provided.

You claim that you are designated SMI as defined by ADC form 1103-13, and as such, are eligible for certain property, privliges and incentives. Furthermore, you request cameras be installed in the pods to ensure compliance.

After discussing this issue with medical and reviewing your AIMS file, it was discovered that you, however, are not SMI and are not entitled to the SMI incentives outlined in your complaint. There is also no policy requiring cameras in the pods, therefore, no policy is being broken or violated.

This resolves your issue.

If you feel that your issue is not resolved at my level, you have five (5) work days from receipt of this response to submit a Formal Grievance to the unit COIV Grievance Coodinator using the Inmate Grievance, Form 802-1 and/or the Inmate Grievance -GF Supplement, Form 802-7.

------------------------------End of Response------------------------------

* Backdated

| Staff Signature | Date |
|---|---|
| Smith | 12.8.14 |

Distribution: Original - Inmate
Copy – Grievance Coordinator File

802-12(e)
12/19/12

did NOT receive A response from COII D. Smith within 15 work days. There are I am now forward with my grievance on 24 Nov 14 handdelivered CO II Martinez

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Grievance**

| Received By | Smith |
|---|---|
| Title | COIII |
| Badge Number 1082 | Date 12.22.14 |

*Note: You may appeal the Grievance Coordinator's decision to the Warden/Deputy Warden/Administrator by filing form 802-3, within 10 calendar days of receipt of this notice.*

A Informal Resolution. SMI

| Inmate Name (Last, First M.I.) | GAMEZ, Robert | ADC Number | 131980 | Date | 22 Dec 14 |
|---|---|---|---|---|---|
| Institution/Facility | ASPC-E | Case Number | unprocessed | | |
| To: | Richard Pratt | | | | |

Description of Grievance *(To be completed by the Inmate)*

I AM designated ("SMI") As defined in ADC SMI Determined form (form 1103-13, 12/19/12) And Diagnostic & statistical Manual of Mental Disorder (DSM) I AM eligible for property consistent with behavioral health Custody step program Matrix to include a Loaned T.V. Mandatory programs As outlined pursuant to D.I 326 (Attachment N) In addition to the general privileges & incentives afforded to prisoners under D.I 326, All SMI prisoners in MAX Custody shall receive (1) 10 hour of unstructured Out of Cell time per week (2) hours of Additional out of Cell MH programming (3) 1 hour of Additional Out of cell psycho-educational programming per week (4) 1 hour of Additional Out of Cell programming per week Unfortunately SMU I fails to substantially comply with the performance Measures to abate the debilitating isolative Conditions

Proposed Resolution *(What informal attempts have been made to resolve the problem? What action(s) would resolve the problem?)*

Resolution Adequate Mental Health Care
Attached forms include prior Attempts to rectify problem herein to:
1 Informal Resolution 24 Nov. 14 2 HNR 24 Nov. 14

This Grievance & Attached forms were signed & received by the Above Officer

| Inmate's Signature | Date 22 Dec 14 | Grievance Coordinator's Signature COIV G. Hernandez | Date 12-30-14 |
|---|---|---|---|

Action taken by ______________________ Documentation of Resolution or Attempts at Resolution.

| Staff Member's Signature | Badge Number | Date |
|---|---|---|
| | | |



23 of 29

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Letter Response**

***For distribution: Copy of corresponding Inmate Letter must be attached to this response.***

| Inmate Name *(Last, First M.I.)* | ADC Number |
| --- | --- |
| Gamez, Robert | 131401 |

Institution/Unit
ASPC-E/SMU I

| From | Location |
| --- | --- |
| COIII J. Rieffer | ASPC-E/SMU I |

I am in receipt of your grievance dated 12/22/2014.

Your grievance in reference to excessive spray is returned as unprocessed for the following reason(s):

You failed to adhere to the time frames as outlined in DO802. You received a response to your informal resolution dated 11/25/2014 dated by your COIII on 12/12/2014. You did not file your Grievance until 12/22/2014. Per DO802 you have 5 days in which to proceed to the Grievance stage and you failed to do so. Based on this, you have exhausted all administrative remedies on this matter.

802.02 INFORMAL COMPLAINT RESOLUTION

1.1 Inmates shall attempt to resolve their complaints through informal means including, but not limited to, discussion with staff in the area most responsible for the complaint or through the submission of an Inmate Informal Complaint Resolution, Form 802-11.

1.2 In the event that an inmate is unable to resolve their complaint through informal means, he/she may submit an Informal Complaint on an Inmate Informal Complaint Resolution form, Form 802-11, to the Correctional Officer (CO) III in their respective unit. The Informal Complaint must be submitted within 10 workdays from the date of the action that caused the complaint. The inmate shall attach copies of all documentation to support his/her complaint.

802.03 FORMAL GRIEVANCE PROCESS

1.1 An inmate may file a Formal Grievance should he/she be unable to resolve their complaint informally. The inmate has five workdays from receipt of the response from the CO III to submit a Formal Grievance to the Grievance Coordinator using the Inmate Grievance, Form 802-1.

If you would like to review the policy (DO802) in its entirety, you may do so by requesting it through the Resource Library. Your new grievance can be processed when you have complied with Department Order 802.

End of response. * Never received Informal Response until I received this I/M letter response. Informal response was submitted to CO III Reffer after I filed my Grievance

| Staff Signature | Date |
| --- | --- |
| [signature] | 12/30/2014 |

Distribution: Original - Central Office Master File
Copy - Inmate
Copy - Institutional File

916-2
5/13/10



# EXHIBIT 2

25 of 29

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Informal Complaint Resolution**

*Complaints are limited to one page and one issue. NO ATTACHMENTS PERMITTED. Please print all information.*

| Inmate Name (Last, First M.I.) | ADC Number | Institution/Unit | Date |
|---|---|---|---|
| Gamez, Robert C | 131401 | ASPCE-SMU I | 25 Nov. 14 |

| To | Location |
|---|---|
| COIII D. Smith | 4A46 |

State briefly but completely the problem on which you desire assistance. Provide as many details as possible.

I Am Attempting to informally resolve problem. ADC has shown a deliberate indifference to prisoners Serious health Needs and have demonstrated A systemic deficience in its failure to supervise, hire, train and investigate the Excessive use of Pepper Spray Against prisoners who suffer from Mental health Disorders.

The Supervisory Officials failure to institute adequate prison policies for minimizing the effects of pepper spray on "MH" prisoners without ensuring ADC staff are trained, supervised and that the excessive use of forces are adequately investigated may lead to liability.

On 19 Nov 14, This incident stems from COIII Quegi Administrating Excessive pepper spray on I/M Castillo. At Approx 1200 am the prisoners in 4A Ble and 5 banging on their cell doors to Attract the Attention of staff due to I/M Castillo feeling suicidal. Mr Castillo made several request to speak to Mental health and COIII D. Smith whos office is located next to 4A Ble cluster, despite the entire cluster banging on their cell doors to Attract the Attention of its Rover ADC personnel failed to respond in a Reasonable time. Approx 4 hours Later I/M Castillo fell, detached was discovered by COIII Quegi covered in blood, immediately thereafter COIII Quegi began pepper spraying I/M Castillo. I immediately experienced A suffocating tightness in my throat and chest causing severe respiration and heart problems, gagging, vomiting, panic Attacks & psychological distress. The fumes, vapors combined with an serious Medical need i.e. Asthmatic caused an adverse health effect. During Nurse Lord subsequent Med pass I requested A Breathing treatment to Abate the Adverse health effect I was denied. The use of pepper spray could have been prevented with Adequate suicide prevention safeguards.

Resolution: Adequate suicide prevention safeguards; adequate use of pepper spray decontamination safeguards

| Inmate Signature | Date |
|---|---|
| [signature] | 25 Nov. 14 |

Have You Discussed This With Institution Staff? ☒ Yes ☐ No

If Yes, give the staff member Name: Medical; Nurse; Sgt Johnson

Distribution: Original - Inmate
Copy – Grievance Coordinator File

802-11
12/19/12

This Informal Resolution was handdelivered to FAMC 0025 Nov. 14



26 of 29

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Informal Complaint Response**

*For Distribution: Copy of Corresponding Inmate Informal Complaint Resolution must be attached to this response.*

| Inmate Name (Last, First M.I.) | ADC Number |
|---|---|
| Gamez, Robert 4 A 46 | 131401 |
| Institution/Unit ASPC EYMAN/ SMU I | |

| From | Location |
|---|---|
| COIII B Smith | 4 A/D |

I am in receipt of your Inmate Informal Complaint Resolution dated November 25, 2014 in regards to staff training issues which was received in my office on November 28, 2014.

To investigate your issue I have reviewed all of the available information to include the documentation you have provided.

You claim that ADC has failed to properly train staff in the appropriate uses of pepper spray and that use of pepper spray on other inmates caused you severe respiratory and heart problems. You also claim that if staff had been propery trained to handle mental health inmates, staff would not have had to resort to the use of pepper spray, thus preventing your issue.

ADC staff are trained to keep the institution running in a safe and orderly operation. Training is conducted in an on-going manner and is tracked continually. Pepper spray is used at the discrection of the officer to prevent an inmate from harming themselves or others, or to stop an act of immediate threat. Decontamination efforts are made with exhaust fans and medical is offered to any inmate that is effected.

I find that no policy was violated during this act.

This resolves your issue.

If you feel that your issue is not resolved at my level, you have five (5) work days from receipt of this response to submit a Formal Grievance to the unit COIV Grievance Coodinator using the Inmate Grievance, Form 802-1 and/or the Inmate Grievance -GF Supplement, Form 802-7.

----------End of Response----------

*Illegal backdated

| Staff Signature | Date |
|---|---|
| [signature] | 12-12-14 |

Distribution: Original - Inmate
Copy – Grievance Coordinator File

802-12(e)
12/19/12

I did not receive a response from C/O Smith within 15 workdays therefore I am moving forward with my grievance. 26 Nov 14

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Grievance**

| Received By | Smith |
|---|---|
| Title | CO III |
| Badge Number 9282 | Date 12.22.14 |

*Note: You may appeal the Grievance Coordinator's decision to the Warden/Deputy Warden/Administrator by filing form 802-3, within 10 calendar days of receipt of this notice.*

Excessive spray

Hand delivered C/O Smith A Informal Resolution

| Inmate Name (Last, First M.I.) Gamez R | ADC Number 131401 | Date 22 Dec 14 |
|---|---|---|
| Institution/Facility ASPC-E | Case Number unprocessed | |
| To: DW | | |

**Description of Grievance** *(To be completed by the inmate)*

ADC has shown a deliberate indifference to prisoners serious health needs & have demonstrated a systemic deficience in its failure to supervise hire train & investigate the excessive use of pepper spray against prisoners who suffer from Mental health Disorders. The Supervisory Officials failure to institute adequate prison policies for minimizing the effects of pepper spray on "MH" prisoners without ensuring ADC staff are trained supervised that the excessive use of force are adequately investigated may lead to liability. On 19 Nov 14 C/O Eaker administrated excessive pepper spray on I/M Castillo. At aprox. 1200 AM the prisoners in 4 Able and Sweet banging on their cell doors to attract the attention of staff due to I/M Castillo feeling suicidal. Mr Castillo made several request to speak to Mental Health. C/O B Smith (whose office is located next to 4 Able cluster) despite the entire cluster banging on their cell doors to attract the attention of C/O Baker ADC personnel failed to respond in a reasonable time. Aprox (20) hours later I/M Castillo fully dehydrated was discovered by C/O Eaker, sprayed in blood immediately thereafter C/O Eaker began pepper spraying I/M Castillo I immediately experienced a suffocating tightness in my throat & chest causing severe respiratory & heart problems

**Proposed Resolution** *(What informal attempts have been made to resolve the problem? What action(s) would resolve the problem?)*

Resolution: Adequate suicide prevention safeguards. Adequate use of pepper spray decontamination safeguards. Attached forms hereto (1. Informal Resolution 25 Nov 14 2. HNR 19 Nov 14)

The Grievance & Attached forms were signed & received by the Above Officer

| Inmate's Signature [signature] | Date 22 Dec 14 | Grievance Coordinator's Signature CO IV J. Hernandez | Date 12-30-14 |
|---|---|---|---|

Action taken by _______________ Documentation of Resolution or Attempts at Resolution.

| Staff Member's Signature | Badge Number | Date |
|---|---|---|
| | | |

Initial Distribution - White and Canary - Grievance Coordinator; Pink - Inmate
Final Distribution - White - Inmate; Canary - Grievance File

802-1
7/13/09

28 of 29

Excessive Pepper Spray

Recd/ Smith
Title CO III
Badge# 9282 Date 12-22-14

ARIZONA DEPARTMENT OF CORRECTIONS

Inmate Grievance - GF Supplement

| Inmate Name (Last, First M.I.) | ADC Number | Institution/Facility | Case Number |
|---|---|---|---|
| Gamez, Robert C | 131901 | ASPC-E | |

gagging, vomiting, panic attacks & psychological distress. The fumes, vapors combined with a serious medical need i.e. Asthmatic, caused an adverse health effect. During Nurse Lord's subsequent med pass I requested a breathing treatment to abate the adverse health effect. I was denied. The use of pepper spray could have been prevented with adequate suicide prevention safeguards

Signature

Date 22 Dec 14

INITIAL DISTRIBUTION - Committee Recommendation - All copies to Grievance Advisory Committee
FINAL DISTRIBUTION - White and Pink - Inmate, Canary - Grievance File

INITIAL DISTRIBUTION - GF Supplement - White and Canary - Grievance Coordinator, Pink - Inmate
FINAL DISTRIBUTION - White - Inmate, Canary - Grievance File

802-7
7/13/09

29 of 29

**ARIZONA DEPARTMENT OF CORRECTIONS** 

*For distribution: Copy of corresponding Inmate Letter must be attached to this response.*

## Inmate Letter Response

| Inmate Name *(Last, First M.I.)* | ADC Number |
|---|---|
| Gamez, Robert | 131401 |

Institution/Unit
ASPC-E/SMU I

| From | Location |
|---|---|
| COIII J. Rieffer | ASPC-E/SMU I |

I am in receipt of your grievance dated 12/22/2014.

Your grievance in reference to SMI is returned as unprocessed for the following reason(s):

You failed to adhere to the time frames as outlined in DO802. You received a response to your informal resolution dated 11/24/2014 dated by your COIII on 12/8/2014. You did not file your Grievance until 12/22/2014. Per DO802 you have 5 days in which to proceed to the Grievance stage and you failed to do so. Based on this, you have exhausted all administrative remedies on this matter.

802.02 INFORMAL COMPLAINT RESOLUTION

1.1 Inmates shall attempt to resolve their complaints through informal means including, but not limited to, discussion with staff in the area most responsible for the complaint or through the submission of an Inmate Informal Complaint Resolution, Form 802-11.

1.2 In the event that an inmate is unable to resolve their complaint through informal means, he/she may submit an Informal Complaint on an Inmate Informal Complaint Resolution form, Form 802-11, to the Correctional Officer (CO) III in their respective unit. The Informal Complaint must be submitted within 10 workdays from the date of the action that caused the complaint. The inmate shall attach copies of all documentation to support his/her complaint.

802.03 FORMAL GRIEVANCE PROCESS

1.1 An inmate may file a Formal Grievance should he/she be unable to resolve their complaint informally. The inmate has five workdays from receipt of the response from the CO III to submit a Formal Grievance to the Grievance Coordinator using the Inmate Grievance, Form 802-1.

If you would like to review the policy (DO802) in its entirety, you may do so by requesting it through the Resource Library. Your new grievance can be processed when you have complied with Department Order 802.

End of response.

* Never received Informal response until I received this I/M Letter response. Informal response was submitted to CO III Rieffer by CO III Smith after I filed my Grievance

| Staff Signature | Date |
|---|---|
| [signature] | 12/30/2014 |

Distribution: Original - Central Office Master File
Copy - Inmate
Copy - Institutional File

916-2
5/13/10