IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

RE: <u>Parsons v. Ryan</u>, cv 12-00601-PHX-DKD

<u>LETTER TO THE COURT</u>:

1. The following letter to the Court is purposed to voice the concerns of prisoners housed in one of the maximum custody units that is subject to this Court's settlement review in <u>Parsons v. Ryan</u>, cv 12-00601-PHX-DJC (2014).

2. Each of the following statements are from prisoners confined in the Arizona Department of Corrections (ADC), Eyman Complex, Browning Unit, Florence, Arizona. Specifically housed on condemned row, which is located on Wing three, George/Henry Cluster, in Browning Unit.

3. The following paragraphs will voice the concerns experienced by the person named:

4. I, Scott Douglas Nordstrom, ADC #86114, have read the Stipulation and Exhibits filed on 10/14/14 (DKT 1185-1) and recognize that the ADC is not meeting the requirements agreed upon therein.

5.  Specifically, I am a "Step III" according to Directors Instruction (DI)/Step Program matrix and am not being afforded the "minimum of 9.5 hours out-of-cell time per week" (see Maximum Custody Outcome Measures (MCOM), and Exhibit D p.38 #1, and Final Measure Exhibit E p.41 #1).

6.  Nor am I provided the "at least one hour of out-of-cell group programming a week" (see MCOM Exhibit D p.38 #2 and Final Measure Exhibit E p.41 #2).

7.  Browning Food Service has not increased the caloric/nutritional contents of meals served (Browning Unit continues to serve a "Brunch Sack" at 5:00 a.m. and one "Hot tray/Cold tray" at 5:00 p.m.)(see Final Measure Exhibit E p.42 #4).

8.  An overriding concern we want the Court to consider and address is the fact that the Settlement/stipulation does not take into consideration that the ADC refuses to acknowledge that it's "condemned row" population - housed in maximum custody - are being forced to participate in a DI (326/step program matrix) that condemned row prisoners are Statutorily prohibited from (see Arizona Revised Statutes (A.R.S.) §31-240 (A) and (B)).

9.  Specifically, A.R.S.§ 31-240 (B) prohibits "prisoners sentenced to death" from participating in "educational programs" listed in §31-240 (A). Yet, according to DI 326/step program matrix - what the stipulation is grounded on - "educational programming" is mandatory in order to move up in steps/privileges or out of maximum custody.

10. Moreover, the ADC's "Step Program" is designed to provide all individuals housed in "maximum custody" the path way - through participation in class' - out of maximum custody. Yet, for all of death row the step programs forced application, and exemplary adherence, will never open the door out of maximum custody.

11. Additionally, Browning Unit Administration only provides, for condemned row, one programming class every 10 weeks for 10 individuals at a time. With a population of 125 + it will realistically take 1½ to 2 years to move up one step in the step program. Likewise, new arrivals are automatically started off at "step I" and cannot move up in steps until they have attended class programming. Only after completion of programming will they be offered more out-of-cell time, incentives, programs and property, etc, (see Stipulation Exhibit D #6).

12. I, Charles Rienhardt, ADC #84033, am writing this letter in regards to the <u>Parsons v. Ryan</u> case on behalf of the Arizona death row population housed at the maximum custody unit Browning. We are housed here for no other reason then our sentence of death, but are held to the same lockdown disciplinary polices that are designed to correct the inmate that cannot maintain on an open yard.

13. Because of a meaningless classification system for death row we will never be afforded the opportunity to leave this unit. But at the same time are having a step/matrix program forced upon us, including <u>classes</u> to obtain basic outdoor recreation. Classes that could very well be used against us by the State durring our appeals.

14. For instance, the State could call the class teacher or teachers to testify at any stage of our appeals that we are mentally competent to be executed, and provide certificates to verify that we completed verious classes. If we refuse these classes we are subjected to disciplinary sanctions, such as, our power being turned off for 30 days, loss of store, phone, and visits while never being able to obtain the outside recreation.

15. We all have ongoing criminal appeals in the State and Federal Courts and are represented by counsel, who very well could be arguing mitigation or mental incompetence on their clients behalf. It appears that the ACLU or the ADC did not take this into consideration, that death row is housed in a maximum custody unit, when they were making deals with the State on "mandatory classes" in order to advance in a step program to obtain outside recreation.

16. I, Michael Apelt, ADC #80735, am not receiving the out-of-cell time (9½ hours) that the ADC agreed to provide in the settlement/stipulation in <u>Parsons v. Ryan</u>. Moreover, when the ADC "cancels" outside recreation the floor officers are signing the out-of-cell tracking form as "refused" (see form for December 28, 2014). I never "refuse" outside recreation and am not being allowed to sign the out-of-cell tracking form. It appears the ADC is documenting false information for this Court's review (see Final Measure Exhibit E p.41-44 #'s 1-8).

17. I, Bryan Wayne Hulsey, ADC #102543, arrived at Browning Unit (death row) on August 28, 2014. After initial watch I was placed in general population on September 4, 2014. On that day durring orientation CO III Stitt told me that I would be starting out as a step/phase I; and would advance in steps as long as I

5

did not incur any disciplinary infractions within 30 days. However, I have been ticket free for over 124 days and have not advanced in steps, because I am not being allowed to participate in the prerequisite classes.

18.  In the 124 days I have been here not once have I been offered outside recreation. Nor have I refused recreation, but the floor officer continually writs "refused" on the "out-of-cell tracking sheet". The only out-of-cell time I am afforded is to shower three times a week.

19.  I, Pete Van Winkle, ADC #159162, was told that death row is exempt from participating in the beneficial parts of DI 326, such as: out-of-cell time at the restraint pod tables; out-of-cell pod time, access to the Basketball courts, etc. But, we are held to <u>all</u> of the disciplinary and restrictive portions of ADC policy DI 326. This is inherently unfair as condemned row is the only portion of the population in Browning Unit that has no way to program out of this Unit.

20.  I, Tracy A. Hampton, ADC #85819, bring to the Court's attention that on the day of writing and submitting this letter to the Court, the ADC has not initiated a dietary change that increases our caloric intake to that which is comparable to the general population yards. In fact, multiple officers and other

ADC staff are complaining about having to pass it out at all, stating they will "be forced to make a choice between feeding us breakfast or giving us recreation, it cannot be both." Neither breakfast or recreation is a privilege, let alone to be disregarded due to inconvenience. This is the constant mindset we are up against.

21. I, Beau J. Greene, ADC #123048, want to bring to the Court's attention that neither side involved in <u>Parsons v. Ryan</u> settlement took into consideration, that in order for the ADC to comply with the additional time for out-of-cell recreation, the ADC will have to start recreation eariler (6:00-30 a.m.). Per ADC property policy (D.O. 909) "maximum custody units" are prohibited from possessing the following winter/summer clothing: Winter Jackets, Thermal Underwear, stocking cap or gloves. Summer: any head covering such as ball cap, boonie hat style; sunglasses with both UVA and UVB protection (all these item's are authorized at lower custody units that the condemned row population would be allowed to possess if not housed in a maximum custody unit).

22. I, Eric Mann, ADC # 45676, submitted a Health Needs Request (HNR) on July 27, 2014 for severe daily headaches, migrains, and photosensitivity. I was seen by a nurse approximately one week

later where my vitals were checked; blood was drawn on September 30, 2014. The results returned on October 2, 2014. By December 22, 2014, when I had not been seen by the Doctor, I resubmitted a HNR requesting to see the Doctor. To date I have not been seen for the extreme pain I am experiencing.

23. Another example of continued medical indifference is that on April 2, 2014 I submitted an HNR for a complete eye exam and to address an ongoing issue of photosensitivity that causes me severe pain through migrains. I was finally seen by eye Doctor <u>eight months later</u> on December 21, 2014. However, the eye Doctor was indifferent to my attempts to address the photosensitivity/migrains issue, and simply refused to talk about it. I am still suffering with extreme migrains. Both above issues are documented with medical and my attorneys of record.

## CONCLUSION

24. From our perspective the ADC is not complying with the settlement/stipulation, as set forth above. And, the death row population is caught up in a Catch-22 situation that the ADC refuses to acknowledge or consider.

24. We - the unnamed class action Plaintiff's in this action, on ADC's death row housed in a maximum custody unit - respectfully

request the Court consider our plight and order the ADC to establish a Death Row Management Plan that will fairly consider the problems listed in this letter.

25. The foregoing is a true and accurate discription of the issues experienced by the following ADC prisoners:

x _____
Pete Van Winkle #159162

x _____
Charles Reinhardt #84033

x _____
Bryan W. Hulsey #102543

x _____
Cody Martinez #151281

x _____
Eric Mann #45676

x _____
Ruben Garza #190487

x _____
John Cruz #194940

x _____
Jose Acuna #234064

x _____
Benjamin Cota #137044

x _____
Tracy A. Hampton #85819

x _____
Shad Armstrong #155617

x _____
Michael Apelt #80735

x _____
Eldon Shurz #43800

x _____
Beau J. Greene #123048

x _____
Efrin Medina #121384

x _____
Theodore Washington #65973

x _____
Manuel Ovante #251126

x _____
Scott D. Nordstrom #86114

RESPECTFULLY SUBMITTED this 15th day of January, 2015.

x _____
Scott D. Nordstrom #86114

9

Scott D. Nordstrom 86114
ASPC-E/Browning H-45
P.O. Box 3400
Florence, AZ 85132

Jan. 15, 2015

U.S. DISTRICT COURT
ARIZONA

Dear clerk of the court:

Attached you will find a letter to the court from prisoners incarcerated in the Arizona Department of Corrections. Please file/submit this letter on our behalf in Parsons V. Ryan, CV 12-00601-PHX-DKD.

Thank you for your time and assistance in this matter.

X Scott Nordstrom
Scott D. Nordstrom
ADC # 86114

cc: /sdn



PRESORTED
FIRST CLASS

Scott D. Nordstrom
\#
Arizona State Prison Complex - Eyman
Browning H-45
P.O. Box 3400
Florence, AZ 85132

ARIZONA DEPARTMENT
OF CORRECTIONS
LEGAL MAIL

U.S. DISTRICT COURT
Clerk of the Court
401 W. Washington St., Ste 130, SPC 1
Phoenix, AZ 85003-2118

LEGAL MAIL
1/15/15