Parsons v. Ryan CV12-00601-PHX-DKD

Cary VanDerMeulen, #289748
ASPC Douglas - Eggers
P.O. Box 5001
Douglas, AZ 85608-5001

Clerk of the
U.S. District Court, District of Arizona
401 W. Washington St. Ste 130 SPC-1
Phoenix, Arizona 85003-2118

My experience while at ADC concerning the health and safety of inmates has been wide and varied. From attempting to obtain treatment as simple as Pepto-Bismol for distress/discomfort caused by tainted (probably mishandled) food which was apparently beyond the ability of medical here to stock/

RE: Parsons v Ryan

provide, to having received a tetnus shot due to lack of concern regarding the dangerous condition of facilities. In this case, the rusty (pointed) end of a screw, protruding from the 'hanging' area for clothes in a "strip-shack", routinely used for strip searches. Despite bringing this to the attention of a CO (Corrections Officer), a Sergeant, and subsequently, a Lieutenant, the dangerous condition remains to this day (months later), waiting for its next 'victim'.

In the 'middle' of these experiences,

RE: Parsons v. Ryan            3 of 16

I did suffer from back / muscle spasms to such a degree of nerve impingement that I was hardly ambulatory and was offered a wheel-chair. Despite having requested chiropractic care such as I have received since 1994 for back and neck injuries sustained in automobile accidents, I was refused as not being "life-threatening" — just contributing to long-term atrophy and debility... was offered a shot of 'ibuprofen derivative' which had no effect on the pain, nor any relief for

RE: Parsons v. Ryan                                 4 of 16

inability to move / comfortably stand from a seated position or to walk without severe 'shooting' pains and muscle spasms.

In the interum, the cancerous 'growth' on my leg (similiar to the ones I've already had removed) continues to enlarge; the only treatment received for it (since coming to ADC at the end of March, 2014) being an attempt to 'freeze' it off with a "home-remedy" kit, and the subsequent denial of any antibiotic ointment for the anticipated 'scabbing' of the wound.

RE: Parsons v. Ryan                               5 of 16

So much for the 'minor' ailments I've suffered here at ADC. More to the point of the case at hand in Parsons v. Ryan, there are two "measures" specified in the "Settlement Agreement" which have continued to be ignored/denied by the providers here at ADC (to this day), despite (repeated) attempts to rectify or obtain any remedial action:
(as specified in Exhibit B)

Measure #47 - A Medical Provider will communicate the results of the diagnostic study to the inmate upon request and within seven calendar days of the date of request.

RE: Parsons v. Ryan                                    6 of 16

The provider here at A.D.C. asked that I give blood for diagnostic testing, primarily due to my age of 59, for which I was told that a whole "battery" of testing would be done. I specifically asked if the results would be "shared" with me prior to consenting to having my blood drawn, to which I was told, "Yes", it would. Subsequently, I was informed that I was HIV negative (which I pretty much knew to be the case), but as to any further results, was told that I would have to wait for the Provider

RE: Parsons v. Ryan                                           7 of 16

to inform me. Such was not forthcoming, and as of 9/5 (2014) I once again made verbal request of medical to provide me with the results, to which I received a (written) reply of "All lab normal". On 9/19, I filed an "HNR" specifically requesting the actual results, "as promised" at a minimum, and a review of said results with the patient in a 'professional' manner would be preferable. No response from medical has been had to date, although an attempt was made by them to obtain another 'specimen' for further / continued

RE: Parsons v. Ryan                              8 of 16

diagnostics (without any consulting of the patient) which was refused by myself for lack of any such degree of professionalism (and failure to provide previous results).

I attempted to follow-up on my request for test results with an "Informal Resolution" presented (on 10/17) to my CO III (counselor) which was denied (refused) due to it being "medically" related... as with most things at ADC, any attempts at resolution or remedial action come to naught, as evidenced by this and by

RE: Parsons v. Ryan                                9 of 16

<u>Measure #71</u> - inmates with diagnosed and documented diseases <u>or</u> <u>conditions</u> that <u>necessitate</u> a special diet will be provided the diet, if <u>clinically indicated</u> (emphasis provided)

In this regard, since seeing a medical provider at the outset of my stay at ADC, I apprised them of a medically-indicated diet (without meat) that I had followed for years prior to my arrival. (That, along with the fact that ADC relieved me of a course of antibiotics I had been prescribed at county jail, which should not be interrupted once started, as such is medically unsound.)

RE: Parsons v. Ryan            10 of 16

Both of these conditions were ignored (despite a fever of over 100° that they themselves ascertained).

In the case of the diet, I was told that such was a "religious diet" and would not be handled by medical... I specifically requested a chaplain's visit, but that was ignored also and I was deprived of an adequate/appropriate diet for the duration of my stay at Alhambra (intake), as well as it being an ongoing problem to this day as I don't eat meat (which predominates the meals) and

RE: Parsons v Ryan                                    11 of 16

am still being refused an appropriate diet that is readily available to inmates. The ramifications of the process of my writing to various parties here at ADC are too extensive to convey in this brief correspondence, but I'll try to cover the highlights of them.

NOTE: Copies of all such writings are available.

Aside from my numerous letters to the Chaplain(s) over my many months here (the average response time being a month), I have appealed to the FHA (Health Administrator) repeatedly

RE: Parsons v. Ryan                    12 of 16

concerning this matter (and even have a "Grievance" outstanding).

What has been addressed in my letters to the FHA is the medically-indicated necessity of the diet and the potential reaction to drugs that I've shown a genetic predisposition to...

I have remained drug-free to date as a result of dietary constraints, largely resultant from my eliminating and refusing to eat meat.

I have been able to obtain my test results (from 2010) which clearly show my physiological condition

RE: Parson v. Ryan                                    13 of 16

of "high" cardiac-reactive protein levels and "high" cholesterol levels (specifically bad LDL) associated with the consumption of meat/meat products, and the "after results" when meat was eliminated from my diet, where these "high-risk" indicators were reduced to 'normal' levels. Even in the face of these test results which were provided her, the FHA has still continued to refuse to approve a medically-indicated meat-free (vegetarian) diet.

RE: Parsons v. Ryan    14 of 16

I believe the test results provided her meet the criteria of "clinically indicated" (test results from Sonora Quest Labs) as specified in Measure #71, and is certainly a condition which has long-term (medical) implications if not attended to...

I have only been able to maintain such a (meatless) regimen by not eating the (only) food offered me, although a substitute is readily available as is provided to 'vegan' inmates.

RE: Parsons v. Ryan                                      15 of 16

Additionally, the Office of Mr. Charles Ryan has been apprised of this situation twice over during my stay; once by a letter from my wife to him (certified), and once by myself (as 'legal' mail). In both instances, he has passed the information along to other administrators who have only deferred to the FHA or Chaplain Services, who continue to drag-out or deny any action.

    I hope this serves to describe the situation at ADC that prevails. Despite (any) legal remedies that are to take place, I believe it will prove

RE: Parsons v. Ryan                    16 of 16

to be difficult to rectify an attitude that is evidently "entrenched" in (disfunctional) bureacratic behavior when it comes to providing for the care and well-being of the inmates.

    If I can be of any further assistance in providing details or copies of correspondence concerning these matters, please dont hesitate to call upon me.

Sincerely,

Clay R. Uuddu Much