Arizona State Prison Complex - Eyman
P.O. Box 3400 / S.M.U. II
Florence, Arizona 85132
"Class member", and Party in Interest

RECEIVED ___ COPY ___
JAN 23 2015
CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

January 20, MMXV

United States District Court
District of Arizona, Clerk
401 W. Washington Str., Ste. 130, SPC 1
Phoenix, Az. 85003-2118

To: Whom this may concern
Re: 'Statement of Record'
Ref: Settlement / Stipulations
Case #: Parsons, V. Ryan, CV 12-00601-PhX-DJH

As a "Life"time Resident of the Arizona Department of Corrections (ADC) — this is personal to me. However, I understand that this is not about my "personal issue(s)", and while I feel that the "decisions" have already been made and that nothing I can say will change them (¶ 40), I do want my concerns and points of interest on Record in this matter.

There is alot of ambiguity in the Language of the Stipulations and agreed upon measures... But this may possibly be due, in part, to PLRA Regulations? None-the-less, the following Points of Interest and concerns are what stand out to me as a "Class Member":

I. Fairness

(a) I would take nothing away from the Stipulations and agreed upon measures; But it has been made clear that the surest way to be treated fairly, decently, and to enjoy any constitutional protections in ADC — is to become SMI as soon as possible.

(b) It seems that little, or no, major interest or concern was given to the fact that certain Max. Custody practices, policies, or traditions — by design, are known attributing factors to one becoming SMI ; i.e.

1. (i) the Removal of any and all Reflective surfaces (mirrors) in Max. custody xxx forcing
2. one to go months, years, never seeing one's own face; (ii) the absence of anything in the
3. Rec. Pen enclosures at SxMxU I or Browning (SxMxU II), and the policy disallowing anything
4. to be brought out to the Rec. Pens (a book, or chess board, or deck of cards, pen, paper, etc.) xx
5. that would encourage one to want to come out of their cell and go stand in any of these
6. Rec. Pens for 2.5 hours, 3 times a week; (iii) failing to sell or allow approved music
7. listening devices (which people who can not afford tv's, may be able to afford) in Max.
8. custody xxx when all other Inmates are allowed and given access to such devices (walk-
9. man cassette players are allowed in Max. custody — But are only sold to every custody except
10. Max. custody); (iv) systematically and routinely leaving Inmates locked inside of shower
11. enclosures for upwards of an hour to a hour in half xxx forcing Inmates to regularly
12. Refuse showers to avoid such treatment [this is mainly a SxMxU II issue]; (v) cell lights
13. Remaining on 24/7 in SxMxU II; (vi) the suspension of visitation privileges (at all custody
14. levels) for "non-visitation" incident infractions xxx this was never done 15 years ago; and; (vii)
15. the deeply ingrained level of disrespect, disregard, and poor social skills by staff working in
16. SxMxU I and SxMxU II xxx where Inmates whole existence is completely reliant on staff.
17.    None of these things were addressed where the goal was supposedly "Improvement of
18. Max. custody and the treatment of Inmates therein xx"?
19.
20. II. Issues of Concern
21.    (a) It deeply concerns me that so much confidence, reliance, and acceptance was
22. placed in D.I. 326 by Plaintiffs' counsels (¶ 22); D.I. 326 is unconstitutional on
23. its face. Specifically: the "Restrictive Status Housing Program" (RSHP) and the treatment
24. of Inmates in this program, and; the fact that nothing done to an Inmate, as far as
25. placement, in Max. custody is "appealable or grievable." This includes placement in RSHP
26. as well as placement in Central Unit or SxMxU II, and movement in between.
27. Due to the inhuman treatment of Inmates in RSHP, placement in such is atypical and
28.

1. so drastically different than any other placement in Max. Custody, and; Because there is such a
2. significant (hardship) difference between placement in Central Unit (where inmates are allowed move-
3. -ment free of restraints, allowed to work and get jobs, allowed to participate in group religious services,
4. allowed contact visits with friends and family xxx etc.), and placement in SMU I (where inmates are
5. not allowed to do or participate in any of those things) — "Due Process" is implicated
6. (Sandin V. Conner, 515 U.S. 472 (1995); Wolff V. McDonnell, 418 U.S. 94 (1974); Wilkinson V. Austin, 545 U.S.
7. 209 (2005)).

8.     (B.) I have reasonable concerns pertaining to the "termination of the duty to measure
9. and report" clauses in the stipulations at issue (¶¶ 10(B) and 20(B)). If ADC was capable
10. of monitoring themselves and/or taking "corrective actions" on their own, simply because it's right —
11. we wouldn't be here. I know from 18 years of experience in ADC that, yes, ADC will remain
12. in compliance — for a few months, or a couple of years xxx and then treatment and policies
13. will once again deteriorate outside the bounds of constitutionality. Take the above mentioned
14. RSHP; the federal courts deemed ADC use of "Violence Control Units" (VCU) unconstitutional
15. and made ADC get rid of them. Years later, ADC has re-employed VCU's, except now, it's called
16. "Restrictive Housing", and it's way more harsher and worst than VCU ever was!
17. It's sad enough that all of these stipulations/measures will likely go away in 4 years (¶ 37);
18. the fact that monitoring, "measuring and reporting", can be terminated after 18 months inspires no
19. confidence in the seriousness and effectiveness of this settlement.

20.     (C.) "Caloric and nutritional content" are nonsensical words in this context pertaining
21. to Max. custody meals. We know what foods we are fed and allowed at other custody levels
22. and what the portions "look like" — But because we are fed significantly different, and less food
23. than other custody levels, it is impossible for us to know or judge any "caloric or nutritional"
24. changes.

25. Then, there was also a complete overreaction by ADC to a isolated incident in 2012 which led
26. to the Departments irrational action of removing all fruits and certain vegetables, and sugar
27. from the menus; as well as removing 1/3 of the food and drink items from the commissary
28.

3 of 5

1. list — in all Max. Custody Units only. As if by punishing all Max. Custody Inmates somehow
2. resolved the problem. Personally, I believe that there is little or no nutritional value in 70%
3. of the food served to us in Max. Custody (the diet consist mostly of frozen vegetables — with any
4. nutritional value and all of the taste boiled out of them) — especially with the removal of all
5. (fresh) fruit, and the only vegetables that couldn't be boiled down to nothing.
6. We, Max. Custody Inmates, just want all of those things back and to be able to get fed and eat
7. like all of the other Inmates in ADC Custody.
8.   (d.) (i) there is no Language guaranteeing Representation after the fact; (ii) there is
9. no clause allowing for the Inmates — those of us actually affected, to be able to check
10. into or look into the "monitoring" to see if anything is actually "being monitored" and/or to
11. see what's being "said", verses what's actually being done; (iii) there are no provisions
12. giving Inmates access or an avenue to speak out and/or to contact any of the persons
13. "doing the monitoring"; and/or to be able to report specific violations that may give rise to
14. "significant non-compliance ..." (Yes. there are provisions for "tours" and such. But Inmates
15. can not call for, nor schedule tours, nor guarantee that they will get to see or speak to
16. anyone when a tour does occur).
17. Given that there is no Language allowing for this Lawsuit to ever be brought up or pursed
18. again, there should be safeguards and assurances for those of us who have to live here long
19. after everyone is paid and goes home.
20.
21. III. Closing
22.     Over all:
23. This is not a complaint. As I said earlier, I would take nothing away from the Settlement/
24. Stipulations. I just feel that the only "Class" benefitting and getting any relief from
25. this Settlement is the "SMI Class", as opposed to all like and similarly situated Inmates.
26. However, I feel that the Attorneys' for the plaintiffs' deserve the $4.9 million agreed upon,
27. and more. They have done more than anyone else has for us in this system. Regardless of
28.

how minimal and temporary I believe this relief to be.

Thank you.

                                    Respectfully,

                                    [signature]                    1-20-15
                                    DaJuan Williams #124315,        Date
                                    "Class Member", and Party in Interest.

Original and copy mailed,
January 20, 2015    to:    United States District Court
                           District of Arizona, Clerk
                           401 W. Washington St., Ste. 130, SPC 1
                           Phoenix, Az. 85003-2118

Copies of the foregoing mailed
January 20, 2015    to:    Prison Law Office
                           1917 Fifth Street
                           Berkeley, CA. 94710


                           ACLU National Prison Project
                           915 15th Street, N.W., 7th Floor
                           Washington, D.C. 20005


                           Struck, Wieneke, & Love, P.L.C.
                           3100 W. Ray Rd., Ste. 300
                           Chandler, Az. 85226


                           Office of the Attorney General
                           1275 W. Washington St.
                           Phoenix, Az. 85007-2926