Kenneth W. Reed #108264
ASPC-Tucson/Winchester
P.O. Box 24407
Tucson, AZ 85734-4407
Class-Member Plaintiff

```
 ____ FILED        ____ LODGED
 ____ RECEIVED     ____ COPY

        JAN 28 2015

 CLERK U S DISTRICT COURT
    DISTRICT OF ARIZONA
 BY                    DEPUTY
```

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Victor Parsons et al. on behalf of
themselves and others similarly situated;
and

Arizona Center for Disability Law,

                    Plaintiffs

            v.

Charles Ryan et al.

                    Defendants

No. CV 12-00601 PHX DKD

CLASS-MEMBER PLAINTIFF
REED'S OBJECTIONS AND
COMMENTS TO PROPOSED
SETTLEMENT AGREEMENT

   **COMES NOW** Class-Member Plaintiff Kenneth W. Reed, in propria persona as the undersigned (hereinafter "Plaintiff Reed"), and as he was seemingly given the prerogative to do pursuant to the "Notice to All ADC Prisoners" which recently appeared on his prison facility's bulletin board [Dkt. #1204 at p. 9], submits his objections and comments to the Stipulation [Dkt. #1185] which the parties' attorneys have put before the Court to ratify.

   Plaintiff Reed's objections and comments are detailed with particularity in the Memorandum which follows.

# MEMORANDUM

## A. Inadequacy of Measures to Monitor Administration of Inmate Grievance Procedure

The Arizona Department of Corrections ("ADOC") implemented Department Order ("DO") 802, Inmate Grievance Procedure, to serve the following purpose.

> The Department provides inmates with access to an Inmate Grievance Procedure to provide opportunity for informal resolution and formal review of an issue impacting conditions of confinement or institutional life which personally affect the inmate grievant. This Department Order provides timely, administrative remedies to inmate complaints which might otherwise unnecessarily burden the courts.

(emphasis added) [Attachment A (DO 802 at p. 1)]. The ADOC's Inmate Grievance Procedure is trichotomous and so describes three separate processes: one for complaints involving non-medical issues, one for complaints involving medical issues, and one for complaints of sexual abuse [id.]. Medical grievances are a three-tiered process: an informal complaint, the formal grievance itself, and a director-level appeal [id. (respectively, DO 802.02, 802.06 and 802.07)]. Recognizing that an inmate's ability to obtain the health care that he or she might be in need of, but which might have been wrongly denied, often depends on that inmate's ability to win relief through the Inmate Grievance Procedure, attorneys for Plaintiffs (hereinafter "Attorneys") are proposing to monitor the efficacy of the Inmate Grievance Procedure through a performance measure which they wrote into their Stipulation as Quality Improvement Measure #26 [Dkt. #1185-1 at Exhibit B (p. 9)]. However, that performance measure, as it would be evaluated under its corresponding protocol, will not produce a meaningful result.

.   .   .

1. <u>Proposed Performance Measure Will Not Produce Meaningful Assessment of Promptitude With Which Medical Grievances Are Addressed</u>

   a. <u>Disposition of Informal Complaints Not to be Monitored</u>

As a prerequisite to the filing of a formal grievance, inmates are required to submit an informal complaint to their assigned correctional programs officer[1] [Attachment A (DO 802.02)]. Whereafter, the correctional programs officer must, for those medical issues raised in an informal complaint, contact the appropriate medical staff to attempt to resolve the complaint and provide a response to the inmate within 15 work-days [id. (DO 802.02 §§ 1.3.2, & 1.3.3)]. However, this step in the process is problematic: firstly, because it unavoidably precipitates a HIPAA[2] violation whenever, in their response to such an inquiry, medical staff members divulge privileged physician-patient information to the correctional programs officer; and secondly, because policy does not require medical staff to be cooperative, but merely presumes they will be so. Even though the Inmate Grievance Procedure imposes a time limit for the correctional programs officer to respond to the inmate's informal complaint, it does not impose upon medical staff any timeliness requirement to respond to the correctional programs officer's inquiry. Based upon his own extensive experience, the accuracy of which can be corroborated by examining the ADOC's own records, medical staff rarely respond to such inquiries with the requisite degree of alacrity and often never respond at all.

---

[1] Correctional programs officers are referred to throughout the Inmate Grievance Procedure as "CO III's" [Attachment A (DO 802 passim)].

[2] Health Insurance Portability and Accountability Act (1996), codified at 42 U.S.C. § 1320d and 45 CFR 160 et seq.

While acknowledging that the question of HIPAA violations was ever without the scope of Attorneys' inquiry into the condition of the ADOC's inmate health care system, Plaintiff Reed ~~would object to the absence~~ of any performance measure and protocol which would enable Attorneys to monitor medical staff's involvement in the Inmate Grievance Procedure at the pre-grievance informal complaint resolution level.

### b. Medical Grievance Processing by ADOC Staff Not Monitored

Under the ADOC's Inmate Grievance Procedure, unit grievance coordinators must, upon receiving an inmate's medical grievance, first process[3] it and then "immediately" forward it to the contract Facility Health Administrator [Attachment A (DO 802.06 §1.1.)]. However, the Inmate Grievance Procedure does not prescribe any degree of promptitude with which a grievance coordinator must process a medical grievance or define what is intended by the word "immediately" [ibid.]. Based upon his own extensive experience, the accuracy of which can be corroborated by examining the ADOC's own records, Plaintiff Reed avers that the processing and forwarding of inmates' medical grievances can take a week or more. Attorneys have overlooked monitoring this step of the medical grievance process. Plaintiff Reed would object to the absence of any performance measure and protocol which would enable Attorneys to monitor the processing of inmates' medical grievances by the ADOC's own unit grievance coordinators.

.   .   .

---

[3] To process an Inmate Grievance the assigned unit grievance coordinator must first screen it for completeness and timeliness, and then enter it into his or her log.

### C. Proposed Monitoring of Responses to Grievances by Health Services Contractor Will be Unavailing

Under the terms of its contract with the State of Arizona, Corizon, L.L.C. (hereinafter "Corizon"), agreed to administer that much of the ADOC's Inmate Grievance Procedure which concerns the investigation and disposition of inmates' medical grievances; a task which Corizon delegates to its Facility Health Administrators. According to that policy, Corizon's Facility Health Administrators shall —within 15 work-days of receipt— investigate the complaint, prepare a written response and return the completed grievance to the grievance coordinator [Attachment A (DO 802.06 §1.1.)].

To evaluate compliance with the Inmate Grievance Procedure, Attorneys proposed the following standard

> Responses to health care grievances will be completed within 15 working days of receipt (by health care staff) of the grievance.

[Dkt. #1185-1 at Exhibit B (Quality Improvement Measure #26 at p. 9)], for which they proposed the following protocol

> At each facility, a minimum of 10 grievances per month are randomly selected from the grievance logs. Grievances received during the preceding 30 days will be reviewed for timeliness of responses.

[id. at Exhibit C (Quality Improvement Measure #26 at p. 21)]. However, compliance reviews conducted under this performance measure and corresponding protocol will be meaningless for the simple reason that the documents which are described in the Source of Review (viz; "grievance logs maintained by security staff")[4]

---

[4] Unit Coordinator Grievance Log, ADOC form 802-9 [Attachment A (DO 802, Forms List at p. 10)].

do not contain the necessary tracking information. Said grievance logs [5] list the dates medical grievances are processed and forwarded to the Facility Health Administrator. Quite understandably, the time for a Facility Health Administrator to respond to an Inmate Grievance does not begin to run until he or she receives it [Attachment A (DO 802.06 § 1.1.)]. Once again, policy requires grievance coordinators to record the date a medical grievance is <u>sent</u> to the Facility Health Administrator, but lacks any provision for recording the date it is actually <u>received</u> by health services staff; nor is there a space on the Unit Coordinator Grievance Log for that information. Based upon his own extensive experience, the accuracy of which can be corroborated by examining the ADOC's own records, Plaintiff Reed avers that Facility Health Administrators have claimed not to have received his Inmate Grievances — sent from one office to another (via institutional mail) <u>on the same prison complex</u> — for times ranging from days to weeks. With no records being kept to gainsay them, Facility Health Administrators can always make an untimely grievance response into a timely one by simply adjusting the date they say the grievance was received. Accordingly, Plaintiff Reed objects to the proposed Quality Improvement Measure #26 as an inadequate method of monitoring Corizon's compliance with the ADOC's Inmate Grievance Procedure.

### d. <u>Lack of Plan to Monitor Medical Grievance Appeals</u>

Under the ADOC's Inmate Grievance Procedure, inmates are allowed to seek the director's review of any response to a medical grievance that they

---

[5] Ditto Note 4.

deem unsatisfactory [Attachment A (DO 802.07)]. As grievance coordinators were required to do with medical grievances going to a Facility Health Administrator, they are likewise required to process and dispatch medical grievance appeals going to the director, "immediately" [id. (DO 802.07 § 1.1.)]. And as before, there is no prescription as to what degree of promptitude a grievance coordinator must act [ibid.].

Notwithstanding the foregoing, however, the Inmate Grievance Procedure imposes no time limit on the director to conduct his or her investigation and to write a response to an inmate's director-level medical grievance appeal [Attachment A (DO 802.07)]. As but a few examples of the director's insouciance regarding his responses, Plaintiff Reed provides the following information which he has extracted from his own files,[6] ~~but~~ which can easily be verified by examining the ADOC's own grievance records:

| Inmate Grievance Case No. | Director Appeal Submitted | Director Appeal Answered | Elapsed Time |
|---|---|---|---|
| Y09-337-011 | 6/7/11 | 7/26/11 | 49 days |
| Y09-073-011 | 8/12/11 | still unanswered ⟶ | 41 MONTHS and counting |
| Y09-074-011 | 8/10/11 | 10/3/11 | 54 days |
| Y09-106-011 | 1/13/12 | 3/30/12 | 70 days |
| C14-045-014 | 5/27/14 | 10/13/14 | 149 days |
| C14-046-014 | 5/27/14 | 7/1/14 | 35 days |
| C41-035-014 | 10/10/14 | still unanswered ⟶ | 112 days and counting |
| C41-038-014 | 10/30/14 | still unanswered ⟶ | 92 days and counting |

---

[6] Disposition of medical grievance appeals is (as it has always been) within the exclusive domain of the director's office. And because the inmate health services contractor does not participate in the director's decisionmaking process, it is of no moment that half of the data precede the effective date of Corizon's contract.

To emphasize what was said before in the prologue to this topic, an inmate's access to adequate health care sometimes depends upon his or her ability to obtain timely relief through the Inmate Grievance Procedure. But throughout the time the inmate must wait for an answer from the director's office — all the while his or her medical condition may be worsening — the inmate is being denied access to the health care he or she might have been wrongly denied to begin with. Accordingly, Plaintiff Reed objects to Attorneys' failure to devise and to include in their Stipulation any performance measure and protocol which would enable them to monitor the ADOC's compliance with its own Inmate Grievance Procedure at the director's level.

## 2. Absence of Scrutiny Reaching to Integrity With Which Health Services Contractor is Administering Inmate Grievance Procedure

As was already said before, Corizon agreed to administer that much of the ADOC's Inmate Grievance Procedure which pertains to the investigation and disposition of inmates' medical grievances; a task which Corizon delegates to its Facility Health Administrators. However, the ADOC has not been requiring Corizon to administer its Inmate Grievance Procedure in good faith; nor does Corizon require that of its Facility Health Administrators. Consequently, Corizon and its employees are corruptly administering the Inmate Grievance Procedure, and are rendering decisions which cannot be called anything other than fraudful.

### a. First Incident

According to one of the ADOC's health care policies, Department Order 1101, Inmate Access to Health Care, Plaintiff Reed's chronic care medications were supposed to have been automatically reordered by Corizon's provider so that

-8-

treatment for his chronic illness would continue without interruption [Attachment B (DO 1101. 07 §1.1.4.)]. However, on March 8, 2014, Plaintiff Reed took the last of his chronic care medications, expecting that refills therefor would be imminently forthcoming; on March 16, 2014, Plaintiff Reed submitted an Health Needs Request ("HNR") to inform medical staff that he had not received those chronic care medications refills [Attachment C1]; and on March 21, 2014, Plaintiff Reed sent an Inmate Letter inquiry to the Yuma Complex' Facility Health Administrator ("FHA") Kelli Rogers [Attachment C2]. However, affecting to thwart Plaintiff Reed's prosecution of an Inmate Grievance, Assistant FHA Madeline Lowell, who was answering for and on behalf of FHA K. Rogers, falsely stated that, "All of your medications have been refilled" (emphasis added to quoted text) [Attachment C3]. Whereas, in truth, Plaintiff Reed's chronic care medications were not renewed until April 11, 2014, after his records were reviewed by a different provider at a different prison facility [Attachment C4].

## b. Second Incident

On April 2, 2014, Plaintiff Reed had to submit a "Refusal to Submit to Treatment" form when medical staff tried to force him to take two medications which, when taken together, would make him dangerously dizzy. However, because medical staff were refusing to give him a file copy of that form and because he knew it was their practice to alter such forms after they were executed, Plaintiff Reed refused to sign that Refusal to Submit to Treatment form; whereupon, said Refusal to Submit to Treatment form was submitted with two witnesses' signatures to verify that Plaintiff Reed had indeed refused to sign it. However, as Plaintiff Reed would subsequently discover, as he was expecting them to do, and as was their wonted practice, medical staff

altered that April 2, 2014, Refusal to Submit to Treatment form to suit their and Corizon's purposes before putting it in Plaintiff Reed's medical chart.

On April 21, 2014, after having satisfied the procedural prerequisites therefor, Plaintiff Reed filed Inmate Grievance #14-C14-046 to complain about the fraudful alteration of his April 2, 2014, Refusal to Submit to Treatment form [Attachment D1]. However, affecting to make the record appear that Plaintiff Reed's Inmate Grievance #14-C14-046 was completely unfounded, FHA Tamara Porter disclaimed that Plaintiff Reed's April 2, 2014, Refusal to Submit to Treatment form was even in his medical record [Attachment D2]. On May 15, 2014, because he was being kept from examining his medical records,[7] and because he was pressed by a five-day deadline to do so, Plaintiff Reed had to submit his director-level appeal of Inmate Grievance #14-C14-046, without having been able to ascertain the verity of FHA Porter's response; that is, whether his April 2, 2014, Refusal to Submit to Treatment form was or was not in his medical record. But, during the medical records review session he was eventually allowed on June 10, 2014[8] — nearly a month after his director-level appeal of Inmate Grievance #14-C14-046 was submitted — Plaintiff Reed discovered that April 2, 2014, Refusal to Submit to Treatment form in his medical chart, properly filed exactly where it was supposed to have been, under the correct tab-divider. And just as he had known it would be, that April 2, 2014, Refusal to Submit to Treatment form was fraudfully altered after it was witnessed [Attachment D3].

---

[7] Under prison policy, to wit, Department Order 1104.02 § 1.3.9., prisoners are allowed to examine their medical records once each quarter. However, after having submitted such a request on January 24, 2014, Plaintiff Reed was not allowed to examine his medical records until June 10, 2014.

[8] Ditto Note 7.

## c. Third Incident

On June 3, 2014, Plaintiff Reed submitted an HNR asking that certain accommodations be made to ameliorate the side effects of the chronic care medications he had been prescribed. A few days later, that HNR was returned to Plaintiff Reed; rejected by some anonymous medical staff member who had decided not to allow him to see a provider regarding this chronic care related issue. On June 23, 2014, after satisfying the procedural prerequisites therefor, Plaintiff Reed submitted to FHA T. Porter his Inmate Grievance #C14-089-014 to complain about the wrongful disposition of his June 3, 2014, HNR. However, Plaintiff Reed never received any answer to that grievance because — unbeknownst to him — FHA T. Porter had rejected it. On August 7, 2014, as of when he had not received any answer or any word about his grievance having been rejected, Plaintiff Reed invoked a little-known provision of the Inmate Grievance Procedure, which allows grievants to proceed to the next level of review in the absence of a response, and did thusly submit his director-level appeal of Inmate Grievance #C14-089-014. On September 12, 2014, Plaintiff Reed received his unanswered director-level appeal of Inmate Grievance #C14-089-014 which had been returned to him "Unprocessed per Corizon repeat or duplicate complaint" [Attachment E]. But, not having been the subject matter of any prior grievance, Plaintiff Reed's complaint about the wrongful disposition of his June 3, 2014, HNR was, in truth, unique to Inmate Grievance #C14-089-014. Nevertheless, to avoid having to address that issue so presented, FHA T. Porter falsified the record in those grievance proceedings to say otherwise.

In sum, these three incidents — which are typical of similar occurrences that have been reported to the writer by his fellow inmates — show a pattern:

That Corizon's Facility Health Administrators are not administering the ADOC's Inmate Grievance Procedure in good faith, and, to avoid having to address legitimate complaints, are fabricating untruths and falsifying records. Accordingly, Plaintiff Reed objects to the absence of any performance measure and protocol which would enable Attorneys to monitor the integrity with which the health services contractor, Corizon, is administering the ADOC's Inmate Grievance Procedure.

**B. Health Services Contractor Has Been Avoiding Duty to Provide Health Care by Keeping Population Uninformed**

The delivery of health care to Arizona's prisoners is governed by several policies: In general, by the ADOC's Department Order 1101, Inmate Access to Health Care, and Department Order 1103, Inmate Mental Health Care, Treatment and programs; but with more specificity in the ADOC's Health Services Technical Manuals. Department Orders 1101 and 1103 — which merely outline some of the health services that are available, and describe the procedures to be followed — are being made available to the general population. Whereas, the ADOC's Health Services Technical Manuals, which more completely describe what health services are to be provided, are not, as a matter of course, being made available to the general population.

In theory, inmates can obtain access to any non-restricted technical manuals under the provisions of Department Order 101.12 § 1.5. However, when the ADOC turned over its inmate health care system to Corizon, it also consigned custody and control of its Health Services Technical Manuals to Corizon and its administrators. Contrary to what the ADOC originally intended when DO 101.12 § 1.5. was originally promulgated, Corizon's

administrators have not been as forthcoming with allowing inmates access to those technical manuals and treat them as if they were secret documents.[9]

To cite one example of how important having access to the Health Services Technical Manuals can be, Department Order 1101, Inmate Access to Health Care, says nothing about administering physical examinations to prisoners [see Attachment B]. Whereas, Health Services Technical Manual 1101 states that all inmates over 55 years of age must be offered an annual physical, while chronic care patients must be given an annual physical, regardless of age [Attachments F.1 & F.2]. But by keeping the population ignorant of these provisions, inmates will never know what should have been offered to some and what should have been given to others.

The last physical examination Plaintiff Reed received was circa May-June 2010. Plaintiff Reed is 67 years old and has been, since June 2010, a chronic care patient. Additionally, Plaintiff Reed's informal survey of more than 50 of his fellow prisoners, all of whom were more than 55 years old and many of whom were diagnosed with chronic illnesses, revealed that only a couple were ever given a physical examination, but never annually.

Plaintiff Reed submits that Attorneys have completely overlooked the health service contractor's non-compliance with those provisions contained in policy, to wit, Health Services Technical Manual 1101, which require of it and its medical providers to administer annual physical examinations.

Plaintiff Reed submits also that the cloak of secrecy with which Corizon guards their Health Service Technical Manuals has been allowing

---

[9] For more than four months, Plaintiff Reed has been involved in a dispute with Corizon's administrators over his request for access to Health Services Technical Manual 1101. Said controversy is the gravamen of Inmate Grievance #C41-001-015 which is now on appeal at the Director's office.

Corizon to escape its contractual obligations; a situation which Attorneys ought to remedy.

**WHEREFORE**, for those reasons stated herein, Plaintiff Read objects to the Court's ratification of the parties' stipulation in its present form.

Written and otherwise prepared for filing this 20th day of January, 2015.

Kenneth W. Read

Kenneth W. Read
Class-Member Plaintiff Pro-Se

ATTACHMENT   A

| | | | |
|---|---|---|---|
| CORRECTIONS ADC | ARIZONA DEPARTMENT OF CORRECTIONS | CHAPTER: 800<br><br>INMATE MANAGEMENT | OPR:<br><br>DIR<br>OPS |
| | DEPARTMENT ORDER MANUAL | DEPARTMENT ORDER: 802<br><br>*INMATE GRIEVANCE PROCEDURE* | SUPERSEDES:<br><br>DO 802 (12/19/12) |
| | | | EFFECTIVE DATE:<br><br>DECEMBER 12, 2013 |
| | | | REPLACEMENT PAGE REVISION DATE:<br><br>NOVEMBER 17, 2014 |

# TABLE OF CONTENTS

PURPOSE

RESPONSIBILITY

PROCEDURES                                                                                    PAGE

802.01   GENERAL INFORMATION ................................................................................ 1

802.02   INFORMAL COMPLAINT RESOLUTION .................................................................. 2

802.03   FORMAL GRIEVANCE PROCESS (NON-MEDICAL) ................................................... 3

802.04   FIRST LEVEL APPEAL TO THE WARDEN (NON-MEDICAL) ........................................ 3

802.05   APPEALS TO THE DIRECTOR (NON-MEDICAL) ...................................................... 4

802.06   FORMAL GRIEVANCE PROCESS (MEDICAL) ......................................................... 4

802.07   APPEALS TO THE DIRECTOR (MEDICAL) ............................................................ 5

802.08   INTERSTATE COMPACT AND CONTRACT BED GRIEVANCES ..................................... 6

802.09   SEXUAL OFFENSE GRIEVANCE ........................................................................ 7

802.10   REJECTED AND UNPROCESSED GRIEVANCE(S) .................................................... 8

802.11   PROTECTION AGAINST REPRISAL .................................................................... 8

802.12   ORIENTATION AND TRAINING ......................................................................... 9

802.13   REPORTING AND RECORDS REQUIREMENTS ....................................................... 9

   DEFINITIONS ........................................................................................................... 9

   CROSS-REFERENCE INDEX ...................................................................................... 10

   AUTHORITY ........................................................................................................... 10

   ATTACHMENTS

CHAPTER: 800 - INMATE MANAGEMENT
DEPARTMENT ORDER: 802 - INMATE GRIEVANCE PROCEDURE

# PURPOSE

The Department provides inmates with access to an Inmate Grievance Procedure to provide opportunity for informal resolution and a formal review of an issue impacting conditions of confinement or institutional life which personally affect the inmate grievant. This Department Order provides timely, administrative remedies to inmate complaints which might otherwise unnecessarily burden the courts.

# RESPONSIBILITY

All Department staff are responsible for promoting meaningful dialogue and timely written communication with inmates to resolve inmate complaints and disputes at the lowest possible level in the organization and at the earliest possible opportunity.

The Division Director for Offender Operations is responsible for the overall operation of the Inmate Grievance Procedure. Under the direction of the General Counsel, the Central Office Appeals Unit Administrator and Appeals Officers are responsible for monitoring the effectiveness of the procedure and ensuring all appeals are presented to the Director for review. Wardens are responsible for ensuring they serve as the first level of appeal in the grievance process, and Department staff follow all procedures outlined in this Department Order.

# PROCEDURES

802.01          **GENERAL INFORMATION**

1.1      The Inmate Grievance Procedure is designed to address inmate complaints related to any aspect of institutional life or condition of confinement which directly and personally affects the inmate grievant including Department Orders, Director's Instructions, Post Orders, Technical Manuals, and written instructions, procedures and the actions of staff.

1.2      The following are not grievable under the Inmate Grievance Procedure:

1.2.1      Actions of the Governor or State Legislature.

1.2.2      Decisions of the Board of Executive Clemency.

1.2.3      Judicial proceedings or decisions of the Courts.

1.3      The Inmate Grievance Procedure does not serve as a duplicate appeal process or substitute appeal process for the following, which have independent appeal processes:

1.3.1      Disciplinary Hearing Process outlined in Department Order #803, Inmate Discipline Procedure.

1.3.2      Publication Screening and Review outlined in Department Order #914, Inmate Mail.

1.3.3      Protective Segregation outlined in Department Order #805, Protective Custody.

1.3.4      Security Threat Group Validation outlined in Department Order #806, Security Threat Groups (STGs).

1.3.5      Classification action outlined in Department Order #801, Inmate Classification.

1.4      Inmates who attempt to file grievances and appeals for actions outlined in 1.3 of this section will be instructed to follow the appeal process outlined in the specific Department Order or written instruction. Appeals to the Central Office Appeals Unit on these actions may be considered only if the primary issue is outside the scope of the established appeals process.

CHAPTER: 800 - INMATE MANAGEMENT
DEPARTMENT ORDER: 802 - INMATE GRIEVANCE PROCEDURE

1.5     Pursuant to the Prison Litigation Reform Act of 1996 (PLRA), inmates shall completely exhaust the Department's internal grievance and administrative processes prior to filing any complaint with any State Board or Federal Court.

1.6     Inmates may utilize the Inmate Grievance Procedure regardless of their disciplinary status, housing location or classification. Appropriate provisions shall be made to ensure inmates who are not fluent in English, persons with disabilities, inmates with low literacy levels, the elderly and the mentally ill have access to the Inmate Grievance Procedure.

1.7     Wardens shall ensure there are no barriers for inmate access to Inmate Grievance forms and inmates have the ability to file grievances and appeals in a timely and confidential manner.

1.8     Inmates are not required to use the formal Inmate Grievance Procedure to submit a verbal or written emergency complaint.

    1.8.1   An emergency is a condition which, if processed through the normal grievance time frames, would subject the inmate to substantial risk of medical harm, personal injury or cause other serious and irreparable harm.

    1.8.2   Any emergency complaint received by staff shall be immediately evaluated through the chain of command to determine whether it is an emergency as defined in 1.8.1 of this section and requires immediate response outside of the Inmate Grievance Procedure time frames.

1.9     Inmates may file grievances and appeals directly to the Warden when the content of the grievance is of a nature which would pose a threat to the safety of the inmate, staff, or other inmates if the grievance were filed through established procedures.

1.10    Unless notified of an extension of time frames, expiration of any time limit for a response at any stage in the process shall entitle the inmate grievant to move to the next step in the process. Extensions at any step in the grievance process shall not exceed 15 workdays, with the exception of section 802.09 of this Department Order.

    1.10.1  If an inmate does not receive a response within the time period specified, his/her time to proceed to the next stage of the grievance process is the same as if he/she had received a response. The time to proceed to the next stage of the grievance process begins to run the day after a response was due back to the inmate.

1.11    The maximum length of time for completion of the grievance process is 120 calendar days from initiation of the Formal Grievance process to final disposition.

## 802.02    INFORMAL COMPLAINT RESOLUTION

1.1     Inmates shall attempt to resolve their complaints through informal means including, but not limited to, discussion with staff in the area most responsible for the complaint or through the submission of an Inmate Informal Complaint Resolution, Form 802-11.

1.2     In the event an inmate is unable to resolve their complaint through informal means, he/she may submit an Informal Complaint on an Inmate Informal Complaint Resolution form to the Correctional Officer (CO) III in their respective unit. The Informal Complaint must be submitted within ten workdays from the date of the action which caused the complaint. The inmate shall attach copies of all documentation to support his/her complaint.

1.3     The CO III shall:

    1.3.1   Investigate and attempt to resolve the complaint informally.

       1.3.2   Provide a response to the inmate within 15 workdays using the Inmate Informal Complaint Response, Form 802-12.

       1.3.3   For Medical Informal Complaint Resolutions, contact the appropriate medical staff to attempt to resolve the complaint and to respond to the inmate's Informal Complaint.

1.4     The inmate may file a Formal Grievance if he/she is dissatisfied with the Inmate Informal Complaint Response from the CO III. In the event the CO III has not attempted to resolve the problem for the inmate, the grievance shall be returned to the CO III for further action.

## 802.03    FORMAL GRIEVANCE PROCESS (NON-MEDICAL)

1.1     An inmate may file a Formal Grievance should he/she be unable to resolve their complaint informally. The inmate has five workdays from receipt of the response from the CO III to submit a Formal Grievance to the unit CO IV Grievance Coordinator using the Inmate Grievance, Form 802-1 and/or the Inmate Grievance-GF Supplement, Form 802-7.

1.2     The inmate shall place a single complaint with related issues on a single Inmate Grievance form. If the inmate includes multiple unrelated issues on a single form or submits a duplicate complaint, the submission of the grievance shall be rejected and returned to the inmate as unprocessed.

1.3     The inmate shall submit the Inmate Grievance form to the unit CO IV Grievance Coordinator. The unit CO IV Grievance Coordinator shall log and assign a number to each Inmate Grievance form using the Unit Coordinator Grievance Log, Form 802-9.

1.4     The unit CO IV Grievance Coordinator may request an additional investigation be conducted and may assign any unit staff member to the investigation to aid in the resolution of the grievance. The inmate shall be notified in writing of any extensions.

1.5     Within 15 workdays following receipt of the Formal Grievance, the Deputy Warden shall issue a written response to the inmate.

       1.5.1   The written response to the inmate shall include:

           1.5.1.1   A summarization of the inmate's complaint.

           1.5.1.2   A description of what action was taken to investigate the complaint.

           1.5.1.3   A summary of the findings.

           1.5.1.4   The decision and supporting rationale in reaching the decision.

       1.5.2   The decision from the unit level shall either be "Resolved" or "Not Resolved."

       1.5.3   Should the response indicate the grievance is "Not Resolved" due to a Department written instruction, the specific Department Order, Director's Instruction, or Post Order or other written instruction or directive shall be noted in the response.

       1.5.4   The Deputy Warden shall sign the written response to the inmate. Any attachments shall remain with the original grievance form.

## 802.04    FIRST LEVEL APPEAL TO THE WARDEN (NON-MEDICAL)

1.1     Within five workdays of receiving the Formal Grievance response from the Deputy Warden, the inmate may elect to appeal the decision by submitting an Inmate Grievance Appeal, Form 802-3 and/or the Inmate Grievance-GF Supplement form to the Warden.

1.2     The Warden shall review the inmate's Formal Grievance and Informal Complaint Resolution, the investigation and the response signed by the Deputy Warden. The Warden may return the inmate's Formal Grievance to the Deputy Warden or the unit CO IV Grievance Coordinator for an additional investigation.

1.3     Within 20 workdays, the Warden or designee shall issue a written response to the inmate which either affirms or reverses the decision of the Deputy Warden. Should the Warden reverse the decision of the Deputy Warden, the Warden shall provide the inmate with written notification of what corrective action is being taken.

1.4     The Warden's office shall ensure appropriate remedies for valid grievances are provided, which may include, but not limited to, changes in unit and institution procedures, recommendations for changes to Department Orders or Director's Instructions and corrective action taken on the inmate specific issue, such as correction to the inmate's account, location of lost property, etc.

1.5     Each institution has the authority to adjust grievance claims for inmate property loss which have an adjusted value up to and including $450 per occurrence. The inmate must initiate the claim by filing an Inmate Grievance form. Resolution shall be in accordance with the established Risk Management Procedures.

1.6     Medical Grievances may not be appealed to the Warden.

**802.05     APPEALS TO THE DIRECTOR (NON-MEDICAL)**

1.1     Within five workdays from the date the inmate received the decision of the Warden the inmate may elect to appeal the decision of the Warden to the Director. Inmates may not file an appeal to the Director until the Inmate Grievance Procedure within their assigned unit and institution has been exhausted.

1.2     The inmate shall submit the Inmate Grievance Appeal form to the unit CO IV Grievance Coordinator who shall log, process and forward all documents to the Central Office Appeals Officer within five workdays of receiving the appeal from the inmate.

1.3     The Central Office Appeals Officer may return any Grievance Appeals to the unit CO IV Grievance Coordinator for further investigation or which does not meet the requirements of this Department Order.

1.4     Within 30 calendar days of receiving the Inmate Grievance Appeal, the Central Office Appeals Officer shall prepare a response and submit it to the Director for signature.

1.5     The Director may delegate signature authority for any and all Grievance Appeal responses.

1.6     The decision of the Director is final and constitutes exhaustion of all remedies within the Department.

**802.06     FORMAL GRIEVANCE PROCESS (MEDICAL)**

1.1     An inmate may file a Formal Grievance should he/she be unable to resolve their complaint informally. The inmate has five workdays from receipt of the response from the CO III/IV or responsible medical staff to submit a Formal Grievance to the unit CO IV Grievance Coordinator using the Inmate Grievance form. Upon receipt of any Medical Grievance, the unit CO IV Grievance Coordinator shall immediately forward the Formal Grievance form to the Contract Facility Health Administrator. Within 15 workdays of receipt, the Contract Facility Health Administrator shall:

CHAPTER: 800 - INMATE MANAGEMENT
DEPARTMENT ORDER: 802 - INMATE GRIEVANCE PROCEDURE

    1.1.1    Investigate the complaint.

    1.1.2    Prepare a written response to the inmate's Formal Grievance. The written response to the inmate shall include:

        1.1.2.1    A summarization of the inmate's complaint.

        1.1.2.2    A description of what action was taken to investigate the complaint to include the date and content if a personal meeting with the inmate was conducted.

        1.1.2.3    A summary of findings.

        1.1.2.4    The decision and supporting rationale in reaching the decision.

            1.1.2.4.1    The decision from the unit level shall either be "Resolved" or "Not Resolved."

    1.1.3    Maintain a copy of the inmate's Formal Grievance and return the completed grievance in a sealed envelope to the unit COIV Grievance Coordinator clearly marked with the inmate's name, Arizona Department of Corrections (ADC) number, housing unit location, and the Grievance number.

        1.1.3.1    The unit CO IV Grievance Coordinator shall utilize the Grievance number on the envelope to close out their tracking log and forward the completed Formal Grievance to the inmate in the sealed envelope.

## 802.07    APPEALS TO THE DIRECTOR (MEDICAL)

    1.1    Within five workdays of receiving the Formal Grievance response from the Contract Facility Health Administrator, the inmate may elect to appeal the decision by submitting an Inmate Grievance Appeal form to the Director. The unit CO IV Grievance Coordinator shall immediately log, process and forward the original Medical Grievance Appeal with supporting documentation to the Health Services Contract Monitoring Bureau, Grievance Appeals Investigator for processing and investigation.

    1.2    The Grievance Appeals Investigator for Health Services Contract Monitoring Bureau shall:

        1.2.1    Review all Medical Grievance Appeals in consultation with the Assistant Director for Health Services Contract Monitoring Bureau and contracted Health Services staff, as necessary.

        1.2.2    Prepare a response and submit it to the Director for signature.

        1.2.3    Maintain a copy of the completed Inmate Grievance Appeal and return the completed Inmate Grievance Appeal in a sealed envelope to the unit CO IV Grievance Coordinator clearly marked with the inmate's name, ADC number, housing unit location, and Inmate Grievance Appeal number.

            1.2.3.1    Email copies to the Contract Facility Health Administrator and the ADC Contract Compliance Monitor.

        1.2.4    The unit CO IV Grievance Coordinator shall utilize the Inmate Grievance Appeal number on the envelope to close out their tracking log and forward the completed Inmate Grievance Appeal to the inmate in the sealed envelope.

1.3     Rationale used to reach decisions pertaining to Inmate Grievance Appeals shall be included in the response sent to the inmate, with a copy to the Contract Facility Health Administrator and the ADC Contract Compliance Monitor, and shall specify whether the Grievance Appeal is:

     1.3.1     Granted.

     1.3.2     Denied.

1.4     The Director may delegate signature authority for any and all Grievance Appeal responses.

1.5     The decision of the Director is final and constitutes exhaustion of all remedies within the Department.

## 802.08     INTERSTATE COMPACT AND CONTRACT BED GRIEVANCES

1.1     Inmates housed out-of-state through Interstate Compact Agreements or assigned to a Contract Bed facilities in-state or out-of-state shall be provided an opportunity to file Inmate Grievances and Appeals.

1.2     Inmate shall first attempt to resolve issues using the Informal and Formal Grievance Procedures made available to them at the institution and/or State in which they are housed. Complaints shall be addressed to the facility or jurisdiction where the inmate is being housed. Private prison Wardens shall notify the Contract Beds Bureau Monitor of all Formal Grievances regarding issues specifically related to an action by the private prison, and how it was resolved. Documentation shall be maintained as part of the Inmate Grievance record.

1.3     Interstate Compact Inmates – For inmates transferred through Interstate Compact, the Interstate Compact Supervisor shall act in the capacity of the Deputy Warden and shall complete all steps outlined in section 802.03 of this Department Order. The Central Office Security Operations Administrator or designee shall act in the capacity of the Warden for the first level of the Inmate Grievance Appeals as outlined in section 802.04 of this Department Order.

1.4     Inmates assigned to private prisons – For inmates housed in private prisons, whether in-state or out-of- state, the private prison Warden shall ensure the contracted facility has a meaningful grievance procedure which affords inmates the opportunity to resolve issues at the local level.

     1.4.1     The private prison Program Supervisor shall act in the capacity of the CO IV Grievance Coordinator as outlined in section 802.03 of this Department Order.

     1.4.2     The private prison Warden shall act in the capacity of the Deputy Warden as outlined in section 802.03 of this Department Order. The private prison Warden, in consultation with the Contract Beds Bureau Deputy Warden Monitor, shall provide written Formal Grievance response to the inmate.

     1.4.3     The Contract Beds Bureau Support Administrator or designee shall act in the capacity of Warden for first level Inmate Grievance Appeals as outlined in section 802.05 of this Department Order.

     1.4.4     The Contracted Facility Health Administrator shall be responsible to respond to inmate health care grievances.

1.5     Consideration shall be given to inmates being housed out-of-state; the time frames for filing Inmate Grievances and Appeals may be waived accordingly.

**802.09**    **SEXUAL OFFENSE GRIEVANCE** – Staff receiving an Informal Complaint or Formal Grievance at any level that describes activity which may be in violation of the Prison Rape Elimination Act (PREA) 0f 2003, 24 U.S.C.A. 15601 through 15609 shall immediately initiate Department Order #125, <u>Sexual Offense Reporting</u> and notify the shift commander who shall notify the unit Deputy Warden or institution Warden.

1.1    The exhaustion of administrative remedies consist of the following (an agency shall be exempt from this standard if it does not have administrative procedures to address Inmate Grievances regarding sexual abuse):

1.1.1    The Department shall not impose a time limit when an inmate may submit a grievance regarding an allegation of sexual abuse.

1.1.2    The Department may apply otherwise applicable time limits to any portion of a grievance which does not allege an incident of sexual abuse.

1.1.3    The Department shall not require an inmate to use any informal grievance process or to otherwise attempt to resolve with staff an alleged incident of sexual abuse.

1.1.4    Nothing in this section of the Department Order shall restrict the ability of the Department to defend against an inmate's lawsuit on the ground that the applicable statute of limitation has expired.

1.1.5    The Complex Grievance Coordinator shall ensure an inmate who alleges sexual abuse may submit a grievance without submitting it to a staff member who is the subject of the complaint; and such grievance is not referred to a staff member who is the subject of the complaint.

1.2    <u>Final Decisions/Extensions</u>

1.2.1    The Warden or designee shall issue a final decision on the merits of any portion of a grievance alleging sexual abuse within 90 workdays of the initial filing of the grievance. Computation of the 90 workday time period shall not include time consumed by inmates in preparing any administrative appeal.

1.2.2    The Complex Grievance Coordinator may claim an extension of time to respond, of up to 70 workdays, if the normal time period of 90 workdays for response is insufficient to make an appropriate decision. The Department shall notify the inmate in writing of any such extension and provide a date by which a decision will be made.

1.2.3    At any level of the administrative process, including the final level, if the inmate does not receive a response within the time allotted for reply, including any properly noticed extension, the inmate may consider the absence of a response to be a denial at that level.

1.3    <u>Third Parties</u>

1.3.1    Third parties, including fellow inmates, staff members, family members, attorneys, and outside advocates, shall be permitted to assist inmates in filing requests for administrative remedies relating to allegations of sexual abuse, and shall also be permitted to file such requests on behalf of inmates.

1.3.2   If a third party files such a request on behalf of an inmate, the facility may require as a condition of processing that the alleged victim agree to have the request filed on his or her behalf, and may also require the alleged victim to personally pursue any subsequent steps in the administrative remedy process.

1.3.3   If the inmate declines to have the request processed on his or her behalf, the Department shall document the inmate's decision.

1.4   Emergency Grievance(s)

1.4.1   After receiving an emergency grievance or an Informal Complaint alleging an inmate is subject to a substantial risk of imminent sexual abuse, the Complex Grievance Coordinator or staff member receiving the complaint shall immediately forward the grievance (or any portion thereof, which alleges the substantial risk of imminent sexual abuse) to a level of review at which immediate corrective action may be taken, shall provide an initial response within 48 hours, and the Warden or designee shall issue a final decision within five calendar days.

1.4.2   The Warden or designee shall document the initial response and final decision, the determination whether the inmate is in substantial risk of imminent sexual abuse, and the action taken in response to the emergency grievance. Copies shall be forwarded to both Legal Services and the Department PREA Coordinator.

1.4.3   The Department may discipline an inmate for filing a grievance related to alleged sexual abuse only where the Department can demonstrate the inmate filed the grievance with malicious intent.

**802.10    REJECTED AND UNPROCESSED GRIEVANCE(S)**

1.1   The following Informal Complaint(s), Formal Grievance(s), or Appeal(s) shall be rejected and returned to the inmate as unprocessed:

1.1.1   Threatens serious bodily harm to staff, inmates or the general public.

1.1.2   Raises multiple unrelated issue(s) on a single form.

1.1.3   A duplicate Complaint, Grievance or Appeal.

1.1.4   Raises an issue previously addressed through the grievance process.

1.1.5   Filed past the time frame requirement unless there are extenuating circumstances (i.e., inmates not aware of property losses until after returning from court, a hospital or a Criminal Detention Unit).

1.2   Prior to returning unprocessed Informal Complaints, Formal Grievances or Appeals, Grievance Coordinators shall annotate on the document the specific reason for the rejection.

**802.11    PROTECTION AGAINST REPRISAL**

1.1   Retaliation or the threat of retaliation for use of the Inmate Grievance Procedure is strictly prohibited. The inmate may pursue any alleged or threatened retaliation through the Inmate Grievance Procedure. Employees found to be in violation of this section shall receive disciplinary action as outlined in Department Order #601, <u>Administrative Investigations and Employee Discipline</u>.

1.2   Failure of an inmate to substantiate his/her grievance allegations shall not, by itself, be used as grounds to initiate disciplinary action against the inmate. If it is found the inmate has intentionally falsified information in the Informal Complaint, Formal Grievance or Appeal, the unit CO IV Grievance Coordinator may recommend disciplinary action after consultation with the Central Office Appeals Administrator.

1.3     Staff responses to inmate Informal Complaints, Formal Grievances and Appeals shall be professional and shall not include any demeaning or degrading language or inappropriate remarks.

1.4     All documents relating to the Inmate Grievance Procedure are confidential and shall not be shared with any other inmate or staff member outside of the investigative and appeal process.

802.12     ORIENTATION AND TRAINING

1.1     A written explanation and instructions for the use of the Inmate Grievance Procedure shall be made available to all staff.   Both an oral and written explanation of the Inmate Grievance Procedure shall be made available to all new staff at Employee Orientations and shall be included in the Correctional Officer Training Academy (COTA) curriculum.

1.2     Inmates shall receive a written and oral explanation of the Inmate Grievance Procedure in reception centers and as part of the orientation process in any subsequent facility.

802.13     REPORTING AND RECORDS REQUIREMENTS

1.1     The Warden shall designate staff at their institution and ensure Deputy Wardens designate a staff member at their unit to record and enter information regarding Inmate Grievances into the Monthly Statistical Report, Form 802-10.

1.2     The Central Office Appeals Administrator shall collect and review Monthly Statistical Report form data and evaluate the effectiveness of the grievance process.

1.3     The Central Office Appeals Administrator shall conduct an annual assessment of the Inmate Grievance Procedure. Comments shall be solicited from staff and inmates and shall be summarized in the assessment report. This report shall be due on or before June 30 of each year and shall reflect information for the preceding fiscal year.

1.4     The unit CO IV Grievance Coordinator at each unit and Appeals Officer at Central Office shall maintain all grievance records to include "unprocessed grievances" in a confidential and secure storage area.  Inmate Grievances and Appeals are confidential and shall not be included in the Inmate Master File or any institutional file.

1.5     Inmate Grievance records shall be maintained for five years following the date of the last appeal response.

# DEFINITIONS

GRIEVANCE - A complaint filed by an inmate related to any aspect of institutional life or conditions of confinement which personally affects the inmate grievant.

INFORMAL RESOLUTION - Any attempt to resolve a complaint prior to attempting to resolve the issue through a formal process.

MEDICAL GRIEVANCE - A complaint related to medical issues, including but not limited to medical, dental, or mental health services and related medical staff.

UNPROCESSED - A condition which results from the paper work addressing a particular issue being returned to an inmate without being assigned a case number or being processed in any manner.

**WORKDAY** – For the purpose of this Department Order, a workday is Monday through Friday, 8:00 AM to 5:00 PM, including any time the employee is absent from work. State observed holidays are not included as workdays.


{Original Signature on File}

_____

Charles L. Ryan
Director


**ATTACHMENTS**
Attachment A - Standard Grievance Process
Attachment B - Medical Grievance Process (Non-Emergency)

**FORMS LIST**
802-1, Inmate Grievance
802-2S, Inmate Grievance (Spanish)
802-3, Inmate Grievance Appeal
802-4S, Inmate Grievance Appeal (Spanish)
802-7, Inmate Grievance-GF Supplement
802-9, Unit Coordinator Grievance Log
802-10, Monthly Statistical Report
802-11, Inmate Informal Complaint Resolution
802-12, Inmate Informal Complaint Response


# CROSS-REFERENCE INDEX

Department Order #108, Americans with Disabilities Act Compliance
Department Order #809, Earned Incentive Program
Department Order #904, Inmate Religious Activities/Marriage Requests
Department Order #916, Inmate Communications

# AUTHORITY

28 CFR Part 40, Order 957-81, Standards for Inmate Grievance Procedures.



ATTACHMENT A
DEPARTMENT ORDER 802

**Inmate Grievance – Standard Grievance Process**

Inmate determines a grievable issue exists.

Inmate attempts Informal Resolution.

Is the resolution acceptable?

**Yes**

**No**

End process.

Inmate files written grievance.

Unit CO IV Grievance Coordinator review forms.

Is the grievance filled out completely and correctly?

**Yes**

Unit CO IV Grievance Coordinator logs in grievance assigns case # and investigates to determine the facts.

**No**

Return grievance to inmate with instructions to re-submit the grievance after corrections are made, noting the time frame in which to do so.

Unit CO IV Grievance Coordinator submits the grievance to the Deputy Warden within the specified time frame.

Is the response from the Deputy Warden acceptable?

The Deputy Warden or designee investigates and provides a written response within the specified time frame.

**Yes**

End process.

**No**

Inmate submits Appeal to the Warden via the unit CO IV Grievance Coordinator within specified time frames.

The Warden or designee investigates and provides a written response within the specified time frame.

The Director or designee investigates and provides a written response within the specified time frame.

Inmate submits Appeal to the Director via the unit CO IV Grievance Coordinator within specified time frames.

**No**

Is the response from the Warden acceptable?

**Yes**

End process.

Is the response from the Director acceptable?

**No**

The administrative remedies for the grievance have been exhausted.

**YES**

End process.

DECEMBER 12, 2013

ATTACHMENT B
DEPARTMENT ORDER 802

**Inmate Grievance – Medical Grievance (Non – Emergency)**



DECEMBER 12, 2013

# ATTACHMENT   B

| ADC Logo | ARIZONA DEPARTMENT OF CORRECTIONS | CHAPTER: 1100<br><br>INMATE HEALTH SERVICES | OPR:<br><br>HS |
|---|---|---|---|
| | | **DEPARTMENT ORDER: 1101**<br><br>*INMATE ACCESS TO HEALTH CARE* | SUPERSEDES:<br><br>DO 1101 (08/22/97)<br>DI 261 (06/18/08)<br>DI 296 (10/20/10)<br>DI 307 (04/19/12) |
| DEPARTMENT ORDER MANUAL | | | EFFECTIVE DATE:<br><br>DECEMBER 19, 2012 |
| | | | REPLACEMENT PAGE REVISION DATE:<br><br>N/A |

# TABLE OF CONTENTS

PURPOSE

RESPONSIBILITY

APPLICABILITY

PROCEDURES                                                                                         PAGE

1101.01      GUIDELINES ................................................................................................ 1
1101.02      CHARGING .................................................................................................. 2
1101.03      APPOINTMENTS ......................................................................................... 2
1101.04      OUTSIDE SPECIALITY CARE CLINICAL APPOINTMENTS ............................. 5
1101.05      DETENTION ................................................................................................ 6
1101.06      EMERGENCIES ........................................................................................... 7
1101.07      CHRONIC ILLNESSES ................................................................................. 8
1101.08      EXTRAORDINARY LIFE SUPPORT MEASURES .............................................. 9
1101.09      TERMINAL ILLNESSES ............................................................................... 12
1101.10      DENTAL SERVICES .................................................................................... 12
1101.11      VETERANS ADMINISTRATION .................................................................... 16
1101.12      REFUSAL OF TREATMENT .......................................................................... 17
1101.13      INMATE HUNGER STRIKES (JULY 10, 2000) .............................................. 18
1101.14      PRESCRIPTIONS ........................................................................................ 20
1101.15      TRANSGENDER INMATES ........................................................................... 21
              IMPLEMENTATION ...................................................................................... 22
              DEFINITIONS .............................................................................................. 22
              AUTHORITY ................................................................................................ 26
              ATTACHMENTS

CHAPTER: 1100 – INMATE HEALTH SERVICES
DEPARTMENT ORDER:  1101 – INMATE ACCESS TO HEALTH CARE

# PURPOSE

This Department Order requires inmates to be provided opportunities for reasonable and appropriate access to medical and dental health care at reasonable fees. The Department Order also requires appropriate and uninterrupted health care be provided to inmates with chronic health conditions. Security, program, transportation and health staff cooperate and coordinate their activities to provide scheduled health and emergency health treatment.

References to health care professional (i.e., Health Services, Mental Health Services, and Dental Services) are referring to the Health Services Contractor or their sub-contractors unless otherwise stated.

# RESPONSIBILITY

The Assistant Director for ADC Health Services Contract Monitoring Bureau shall hold the Contractor providing Health Services accountable to ensure all inmates are provided access to scheduled and emergency (as needed) health care, and are not refused health care treatment due to financial reasons.

Health care shall be delivered through a joint effort of Health Services staff and security operations. Health Services staff are subject to the same security regulations as other Department employees. Clinical decisions and actions regarding health care services provided to inmates are the sole responsibility of qualified health care professionals.

Wardens, Deputy Wardens, and Administrators are responsible for ensuring security/transportation staff transport inmates for scheduled and emergency health care, and for ensuring appropriate security escort is provided when inmates are transported by ambulance.

The ADC Financial Services Bureau Administrator is responsible for providing a quarterly report relating to health care fees assessed to inmates to the Director and the ADC Assistant Director for Health Services Contract Monitoring Bureau.

# APPLICABILITY - This Department Order applies to medical and dental health care services provided for inmates.  For additional information concerning inmate health care functions, programs and controls, refer to the following Department Orders and NCCHC Standards:

- #108, Americans with Disabilities Act (ADA) Compliance.

- #1102, Communicable Disease and Infection Control.

- #1103, Inmate Mental Health Care, Treatment and Programs.

- #1104, Inmate Medical Records.

- #1105, Inmate Mortality Review.

- National Commission on Correctional Health Care 2008 Standards for Health Services in Prisons.

# PROCEDURES

1101.01      GUIDELINES

1.1      The Health Services Contractor shall ensure providers have available to them the resources to provide a community standard of health care and appropriate referrals for inmates who appear for treatment.

1.1.1      Medications or restricted medical diets are available when medically necessary.

1.1.2    Interviews and treatment of inmates occur in private to the maximum extent possible to preserve confidentiality of the inmate-provider relationship.

1.1.3    When an inmate's behavior poses a danger to self or others, security staff shall monitor visits by health personnel with continuous, unimpaired, visual observations.

1.2    Condemned inmates shall not be transported off institutional grounds for routine medical appointments without the local Contract Health Site Manager coordinating transport with the Complex Warden at a minimum of 48 hours in advance to the medical appointment.

**1101.02    CHARGING**

1.1    The Contract Health Site Manager shall ensure Health Services staff forwards the original Appointment List, Form 1101-13 to the institution's business office each day.

1.2    The Institution's Business Manager shall:

1.2.1    Deduct the health fee from each inmate's account and deposit the monies in the State's General Fund within 30 calendar days.

1.2.1.1    If the inmate does not have sufficient funds in his/her account to pay the health fee, the Business Manager shall place a "hold" on the inmate's account for future debiting when funds become available.

1.2.2    Deduct, from all deposits into an inmate's account, including wages and mail money, any amounts on hold for health fees.

1.2.3    Ensure, when an inmate returns to custody after being released, but before his/her sentence has expired, any pre-existing obligations are posted to the inmate's account.

1.3    The Health Services Contractor shall submit statistical reports in accordance with the Health Services contract.

1.4    The Chief Financial Officer shall collect monthly statistics relating to health fees assessed to inmates (including fees collected and fees debited) and prepare a quarterly report to the ADC Assistant Director for Health Services Contract Monitoring Bureau, due by the 10th workday following the end of the quarter.

**1101.03    APPOINTMENTS**

1.1    Inmates (including parole violators and releasees returned to custody) may access Health Services of a NON-EMERGENCY nature by making an appointment, for which there may be a charge. To make an appointment, inmates shall:

1.1.1    Complete the Health Needs Request (HNR), Form 1101-10ES.

1.1.2    Deposit the Health Needs Request form in the appropriately labeled drop box.

1.2    Health Services staff shall:

1.2.1   Collect Health Needs Request forms from drop boxes daily, as designed by the Contract Health Site Manager. Such a schedule shall include the requirement for a daily pick-up and shall not interfere with, or delay the scheduling of inmate appointments.

1.2.2   Separate Triage Health Needs Request forms by discipline. Each discipline shall prepare an Appointment List form utilizing the Inmate Health System or similar system for each workday.

    1.2.2.1   Health Needs Request forms requesting non-emergency Mental Health or Dental Services shall be referred to the relevant mental health or dental staff in the appropriate unit within 24 hours of receipt of the Health Needs Request form.

    1.2.2.2   In the event a Health Needs Request form indicates a serious mental health emergency, nursing staff shall contact available mental health staff, including on-call mental health staff, if after-hours, weekends and holidays.

    1.2.2.3   In the event a Health Needs Request form indicates a serious dental emergency, nursing staff shall contact available dental staff, including on-call dental staff, after-hours, weekends and holidays.

1.2.3   Provide, at least 18 hours prior to the scheduled appointment, a copy of the Appointment List form to each unit.

1.2.4   Retain the original Appointment List form for reference by Health Services staff.

1.3   Mental health staff shall:

1.3.1   Review Health Needs Request forms requesting Mental Health Services upon receipt of such Health Needs Request forms.

1.3.2   Review Health Needs Request forms received during weekends and/or holidays no later than the next working day.

1.3.3   Respond to Health Needs Request forms requesting non-emergency Mental Health Services with a specific Plan of Action (HNR Section IV) within five working days.

1.3.4   Respond within 24 hours of receipt of Health Needs Request form indicating serious mental health symptoms or complaints by conducting a face-to-face evaluation.

    1.3.4.1   During weekends and/or holidays a health care professional may conduct the face-to-face evaluation and consult with the on-call mental health staff.

    1.3.4.2   Suicide attempts, threats or verbalizations shall be handled according to Department Order #807, Inmate Suicide Prevention, Precautionary Watches and Maximum Behavioral Control Restraints.

1.4     Dental health staff:

    1.4.1     Review Health Needs Request forms requesting Dental Services upon receipt of such HNRs.

    1.4.2     Review Health Needs Request forms received during weekends and/or holidays no later than the next working day.

    1.4.3     Respond to Health Needs Request forms requesting non-emergency Dental Services with a specific Plan of Action (HNR Section IV) written within five working days.

    1.4.4     Respond within 24 hours of receipt of dental emergency (pain) Health Needs Request form indicating serious dental symptoms or complaints by conducting a face to face evaluation.

        1.4.4.1     During weekend and/or holidays a health care professional may conduct the face-to-face evaluation and consult with the on-call dentist.

1.5     The shift supervisor or representative shall:

    1.5.1     Upon electronic receipt of the copied Appointment List form, ensure security staff notify the inmate of the date and time of his/her medical appointment and return the completed Appointment List form signed by each inmate on the list to the Health Unit.

    1.5.2     Be the only person who may request an unscheduled medical examination, consisting of an emergency examination/mental health assessment or a non-emergency "security-need-to-know" examination, for which the inmate shall not be charged.

        1.5.2.1     If, after the unscheduled medical examination, a treatment plan is prepared with the inmate's consent, Health Services staff shall have the inmate sign the Emergency Appointment List form for which the inmate shall be charged a health fee.

        1.5.2.2     If, after the unscheduled medical examination, a treatment plan is prepared, but the inmate does not consent to it, Health Services staff shall counsel the inmate and ensure information (regarding the treatment plan, the inmate's refusal to consent to treatment, the counseling provided to the inmate, and instructions about appropriate housing relative to the health findings) is placed in the Medical Record, and shall not charge a health fee.

        1.5.2.3     Ensure inmates who refuse to consent to a treatment plan are returned to the appropriate housing area in accordance with instructions provided by Health Services staff.

1.6     Health Services staff shall:

    1.6.1     Retain the Appointment List form in the Health Unit after it is signed and returned by the shift supervisor.

1.6.2    Have each inmate who appears for an appointment sign the Appointment List form.

1.6.3    Retain a copy of the original Appointment List form after it has been signed by each inmate.

1.6.4    Forward the original Appointment List form to the institution's Business Office daily.

1.7    Health Services staff shall notify the shift supervisor within four hours about inmates who do not appear for their scheduled appointments. Upon being notified, the shift supervisor shall:

1.7.1    Investigate and determine why the inmate failed to appear for the appointment and notify the Health Unit.

1.7.2    If the inmate refuses to keep the on-site appointment and refuses treatment, security staff shall bring the inmate, if compliant, to the Health Unit and health staff shall counsel the inmate on risks of refusing the appointment. If he/she still refuses the appointment, ask the inmate to sign the Refusal to Submit to Treatment, Form 1101-4 (Negativa de Someterse a Tratamiento, Form 1101-4S).

1.7.2.1    If the inmate refuses to sign the form, Health Services staff shall have two independent witnesses attest to the refusal by signing the form.

1.7.3    If the inmate agrees to the appointment and there is not sufficient time for health staff to conduct the appointment the inmate shall be rescheduled.

1.8    Health Services staff shall submit to the appropriate Deputy Warden or Administrator each workday an Information Report, Form 105-2, listing missed appointments for which the Health Unit has received no explanation or otherwise remain unresolved.

1.9    The Deputy Warden or Administrator shall investigate the circumstances of each unresolved missed appointment, and take appropriate action, ensuring the information regarding the missed appointment is transmitted to the Contract Health Site Manager for inclusion in the Medical Record within seven workdays.

1.10    Health Services staff shall reschedule the appointment if treatment is still needed.

1101.04    OUTSIDE SPECIALITY CARE CLINICAL APPOINTMENTS

1.1    When a health care provider has determined an outside specialist appointment is required for diagnosis or treatment of an inmate, the health staff shall:

1.1.1    Explain the clinical need to the inmate.

1.1.2    Complete an Inmate Outside Consultation Appointment Agreement, Form 1101-74.

1.1.3    Ask the inmate to sign the Inmate Outside Consultation Appointment Agreement form.

1.2    If the inmate refuses to sign the Inmate Outside Consultation Appointment Agreement form (e.g., chooses not to go to a specialty appointment):

       1.2.1     The health staff shall inform the inmate no specialty appointment will be made.

       1.2.2     An informed refusal shall be documented in the Medical Record.

1.3     If the inmate agrees and signs the Inmate Outside Consultation Appointment Agreement form:

       1.3.1     The appointment shall be made and scheduling shall proceed according to routine procedures.

1.4     If, on the scheduled appointment day, the inmate refuses to go to the appointment or refuses to be seen by the consultant at the specialty clinic, the security staff shall issue a disciplinary ticket to the inmate utilizing the Inmate Disciplinary Report, Form 803-1, in accordance with Department Order #803, <u>Inmate Discipline System</u>.

1.5     If charges are billed to the Department for the refused appointment, the information shall be forwarded to the unit Disciplinary Officer for restitution of charges incurred.

## 1101.05     DETENTION

1.1     The shift supervisor shall:

       1.1.1     Notify health staff within one hour after an inmate is placed in detention as outlined in Department Order #804, <u>Inmate Behavior Control.</u>

       1.1.2     Notify health staff immediately if an inmate placed in detention is injured or appears to be ill, and follow up by submitting the Detention Assignment Checklist, Form 804-1.

       1.1.3     Allow inmates assigned to detention to submit a Health Needs Request form in accordance with the institution's post orders.

1.2     The Contract Health Site Manager shall:

       1.2.1     Require nursing staff, upon notification, to immediately review the inmate's Medical Record to determine if any health issue exists which would be impacted by the detention status; document their findings in the Medical Record; add their signature, date and time on the Medical Record; and respond appropriately.

       1.2.2     Require nursing staff, when the notification includes information the inmate is injured or appears to be ill, to conduct an immediate hands-on assessment (for which there is no health fee).

       1.2.3     Require health staff to visit an inmate placed in detention within 24 hours of notification by the shift supervisor (for which there is no health care fee). Health staff shall visit inmates in detention/segregation based on the following NCCHC Standards for which a Post Order shall be published identifying what NCCHC Standards is to be followed for detention/Special Management Units for the complex:

          1.2.3.1     P-E-09 "SEGREGATED INMATES".

1.2.3.1.1    Inmates under extreme isolation with little or no contact with other individuals are monitored daily by health staff and at least once a week by mental health staff.

1.2.3.1.2    Inmates who are segregated and have limited contact with staff or other inmates are monitored three days a week by medical or mental health staff.

1.2.3.1.3    Inmates who are allowed periods of recreation or other routine social contact among themselves while being segregated from the general population are checked weekly by medical or mental health staff.

1.2.3.2    Rounds shall be documented on Daily Isolation Flow Sheet, Form 1102-9.

1.2.3.3    Should circumstances, such as, an extreme shortage of health staff or a disturbance, preclude health staff from making a required visit, security staff shall provide the escort and supervision necessary to ensure access to health care.

1.2.4    Require mental health staff to visit an acutely Seriously Mentally Ill inmate placed in isolation or a lock-down cell within 24 hours of notification to Health Unit staff by the shift commander, except on weekends and holidays when the inmate shall be seen by a nurse within 24 hours, in consultation with a mental health staff. Mental health staff shall visit with Seriously Mentally Ill inmates in detention/isolation three times a week.

1.2.5    Require mental health staff to follow-up with a face-to-face visit with a Seriously Mentally Ill inmate on the first working day following the inmate's placement in isolation, and ensure timely and appropriate follow-up mental health treatment upon the inmate's release from isolation.

1.2.6    Require Health Services staff, when an inmate's housing, custody status or severity of illness precludes reporting to the Health Unit, to make daily visits to observe the inmate's health status and provide or coordinate any treatment required (for which there is no health fee).

## 1101.06    EMERGENCIES

1.1    Health Services staff shall:

1.1.1    Add the inmate's name on the Appointment List form (ER) for the day.

1.1.2    Provide appropriate health care (for which there may be a charge), immediately, when necessary, or during the appointment.

1.1.3    Obtain verbal authorization from the ADC Assistant Director for Health Services Contract Monitoring Bureau or designee prior to the off-site transportation of a condemned inmate.

    1.2    Wardens, Deputy Wardens and Administrators shall ensure:

        1.2.1    Security and/or transportation staff exerts every reasonable effort to transport inmates for emergency and scheduled health treatment.

        1.2.2    Appropriate security escort is provided if an inmate is in need of emergency treatment and is transported by an ambulance.

## 1101.07    CHRONIC ILLNESSES

    1.1    Physicians, Physician's Assistants, Director of Nursing and nurses shall:

        1.1.1    Ensure the Chief of Security and the shift commander are given brief written instructions about the appropriate intervention for each medical emergency which may arise from a chronic condition existing in the institution.

        1.1.2    Ensure allergic substances, including medications, are recorded - in red ink - within the Medical Record file, i.e., on the problem list, medical history form, the outside front cover of the Medical Record jacket and the chronic condition card.

        1.1.3    Inmates with a chronic condition(s) must be entered into the Inmate Health System Monitored Condition Data base, or similar tracking system, to ensure inmates with a chronic condition(s) is seen on a regularly scheduled basis, as ordered by the health care provider.

        1.1.4    Re-order medications and treatments for inmates with chronic conditions in a timely manner so the inmates receive the necessary treatment for their chronic conditions without interruption or unnecessary delay.

        1.1.5    Notify the Contract Health Site Manager when a movement is required in order to provide a special assignment or special housing to accommodate an inmate's chronic condition.

    1.2    The Contract Health Site Manager shall:

        1.2.1    When notified of a movement requirement:

            1.2.1.1    Arrange for an intra-facility movement, when appropriate.

            1.2.1.2    The Contract Health Site Manager shall coordinate with their chain of command and Offender Services Bureau to initiate inmate movement for medical reasons.

            1.2.1.3    Notify the Deputy Warden or Administrator.

        1.2.2    Ensure special arrangements are made for treatment or delivery of medications immediately after being notified of such a need by the supervising Physician or Director of Nursing.

        1.2.3    Chronic Condition Reporting shall be in accordance with the Contract Reporting Requirements.

1.3      Medical Records Clerks shall ensure the appropriate colored label, as described in the Medical Records Technical Manual, is placed in the Medical Record file pertaining to each inmate with a chronic condition.

1.4      For further information regarding movement of chronically ill inmates, see Department Order #108, Americans with Disabilities Act (ADA) Compliance.

**1101.08**      **EXTRAORDINARY LIFE SUPPORT MEASURES** – The Department and the Health Services staff shall ensure all efforts are taken to maintain the inmate's life while on the prison complex.

1.1      During the receiving unit orientation or at the inmate's Correctional Plan Review, the Correctional Officer III (CO III) shall interview the inmate and ensure (via signature as witness):

    1.1.1      Inmates read, or have read to them, the Right to Medical Care Directive forms.

    1.1.2      Inmates sign acknowledgment of their Right to Medical Care Directives forms.

    1.1.3      All COMPLETED Medical Care Directive forms, including the Acknowledgement form, are forwarded to the inmate's medical and institutional records and a copy is provided to the inmate.

        1.1.3.1      The Medical Records Clerk shall file the forms into the Legal/Administrative section of the Medical Record.

        1.1.3.2      The Medical Records Clerk shall notate on the front of the Medical Record which forms have been signed by the inmate and date.

        1.1.3.3      The Institution Offender Information Unit shall file the forms in the inmate file.

1.2      The CO III shall also complete the following steps during the orientation or Corrections Plan interview:

    1.2.1      Meet with the inmate and provide them with all Medical Care Directive forms and attachments.

        1.2.1.1      The Medical Care Directive forms and attachments to be provided or read to the inmate are as follows:

            1.2.1.1.1      Revocation of Medical Care Directives, Form 1101-90;

            1.2.1.1.2      Durable Health Care Power of Attorney, Form 1101-97;

            1.2.1.1.3      Living Will (End of Life Care), Form 1101-98;

            1.2.1.1.4      Inmate Acknowledgement of Rights, Form 1101-99;

            1.2.1.1.5      Attachment A - WHO DECIDES? / QUIEN DECIDES?;

            1.2.1.1.6      Attachment B – Definitions of Medical Care Directive Forms.

1.2.2     Explain to the inmate how to complete the forms as referenced in 1.2.1.1 above.

      1.2.2.1     To assist the CO III in explaining the Medical Care Directives forms, the CO III shall be provided with standardized explanations of the Medical Care Directive forms being provided to the inmate (See Attachment B, Definitions of Medical Care Directive Forms).

      1.2.2.2     To assist the inmate in understanding the purpose of the Medical Care Directives forms, the inmate may read or have read to them Attachment A, "WHO DECIDES? / QUIEN DECIDES?".

      1.2.2.3     The CO III shall inform the inmate of the completed forms which have to be signed in the presence of the CO III. The CO III shall forward the completed forms (signed by inmate and witness signature by CO III) to the Medical Records Clerk and Institution Offender Information Unit. If the inmate does not want to complete the forms at that time, he/she may take the forms to review and notify the CO III by Inmate Letter, Form 916-1 requesting an appointment to meet with the CO III to finalize the forms.

      1.2.2.4     The CO III shall document in the Adult Inmate Management System (AIMS), comment code DT08 1 AC to indicate when the Medical Care Directive forms are given to the inmate. The DT08 comments shall be entered as follows: Under Action enter A; under TYPE, enter AC, Sequence 01 and enter the Comment "MCD forms provided" and the Date/CO III initials.

1.2.3     Upon receiving the completed Medical Care Directives forms, the Medical Records Clerk shall:

      1.2.3.1     Enter DT08 1 ###### (ADC number) M2 when Living Will form is signed by inmate.

| ACTION | TYPE | SEQUENCE | COMMENTS |
|--------|------|----------|----------|
| A | M2 | 01 | LW SIGNED/ DATE/INITIALS |

      1.2.3.2     Enter DT08 1 ###### (ADC number) M3 when Power of Attorney form is signed by inmate.

| ACTION | TYPE | SEQUENCE | COMMENTS |
|--------|------|----------|----------|
| A | M3 | 01 | POA SIGNED/ DATE/INITIALS |

1.2.4     The Medical Records Clerk shall file the completed Medical Care Directives in the Legal/Administrative section of the Medical Record. The Medical Records Clerk shall note on the front cover of the Medical Record which forms are in the chart and date signed.

CHAPTER: 1100 – INMATE HEALTH SERVICES
DEPARTMENT ORDER:  1101 – INMATE ACCESS TO HEALTH CARE

1.2.5    This is a onetime interview/documentation process for each inmate, except the inmate may request to change the original or subsequent decisions at any time.  The CO III shall inform the inmate he/she may at any time sign, modify or revoke any or all of the forms provided by submitting an Inmate Letter form to the CO III.

1.2.6    The CO III shall be responsible for providing the inmate with the necessary forms when any changes are requested in writing by Inmate Letter form.

1.2.7    If an inmate desires to modify and/or revoke any or all of the Medical Care Directives, he/she shall submit an Inmate Letter form to the CO III.  The CO III shall interview the inmate and provide the inmate with Revocation of Medical Care Directives (MCD) form.

    1.2.7.1    In the event of a modification, the CO III shall provide the inmate with the appropriate form(s) he/she wishes to change, and then allow the inmate to make the change(s), and then forward the form to the Institution Offender Information Unit and Medical Records Clerk in the assigned unit with a copy for the inmate.

        1.2.7.1.1    Under Action enter A; under TYPE, enter AC, Sequence 01 and enter the Comment "MCD forms modified & forwarded to MRL" and the date/CO III initials.

    1.2.7.2    In the event of a revocation(s), the CO III shall provide the inmate with the Revocation of Medical Directives form, allow the inmate to complete it, sign it (both inmate and CO III), and then forward the completed form to the Institution Offender Information Unit and the Medical Records Clerk who in turn shall stamp the Directive "REVOKED".

        1.2.7.2.1    Under Action enter A; under TYPE, enter AC, Sequence 01 and enter the Comment "MCD revocation form updated and forwarded to MRL" and the date/CO III initials.

    1.2.7.3    In the event of a modification and/or revocation, the Medical Records Clerk in the assigned unit shall update the inmate's AIMS records accordingly. The Medical Records Clerk shall:

        1.2.7.3.1    Enter DT08 1 ###### (ADC number) M4 when Living Will is revoked by the inmate.

| ACTION | TYPE | SEQUENCE | COMMENTS |
|---|---|---|---|
| A | M4 | 01 | LW REVOKED/ DATE INITIALS |

        1.2.7.3.2    Enter DT08 1 ###### (ADC number) M5 when Power of Attorney is revoked by inmate.

| ACTION | TYPE | SEQUENCE | COMMENTS |
|---|---|---|---|
| A | M5 | 01 | POA REVOKED/ DATE INITIALS |

1.3      An inmate's Pre-Hospital Care Directive or "Do Not Resuscitate (DNR)" request does NOT apply to security staff.  A "Do Not Resuscitate" is for use only by outside health care providers, hospitals and/or hospice facilities.  Health staff and correctional staff are obligated to engage life-saving measures to any inmate in physical distress regardless of the cause.

1.4      When Emergency Medical Staff (EMT/Paramedic) arrive the inmate shall be transported to the appropriate community emergency hospital.

**1101.09**      **TERMINAL ILLNESSES** – The Health Services Contractor shall provide on-site hospice care or arrange with the contracted community hospitals for the management of terminally ill inmates by:

1.1      Requesting copies of the "Do Not Resuscitate" procedures used at the hospital providing patient services for the terminally ill inmate.

1.2      Providing written notification to the hospital the Department shall not object to a "Do Not Resuscitate" order if:

1.2.1      The order is written as a medical order by the physician.

1.2.2      The hospital has a written procedure for such an order.

1.2.3      The hospital procedures are the same for all patients.

1.3      Developing a liaison with the hospital and monitoring the condition of inmates who are hospitalized in critical condition.

1.3.x      Providing a copy of the inmate's declaration upon admission to a hospital.

**1101.10**      **DENTAL SERVICES**

1.1      <u>Initial Treatment</u>

1.1.1      Within seven days of entering the system, all inmates shall have the following performed:

1.1.1.1      A Panorex x-ray or two bite wing x-ray.

1.1.1.2      A dental exam consisting of either the screening of the x-rays or visual examination by the dentist or hygienist.

1.1.1.3      Oral hygiene instruction and a soft tissue exam on those patients seen by a dentist/dental hygienist.

1.1.2      Dentists shall classify all patients according to dental treatment needs via the visual exams or screening of the Panorex x-ray, as follows:

1.1.2.1      Class I - No further treatment.

1.1.2.2      Class II - Routine treatment needed.  (Second priority)

1.1.2.3      Class III – immediate need. (First priority)

1.1.3    All Class III patients who have had only a screening of the x-rays shall be seen by a dentist within thirty days from the date of screening for oral hygiene instruction and soft tissue exam supporting x-ray, and necessary treatment at the receiving facility.

    1.1.3.1    The examination notice shall advise the patient a "no show" shall be treated as a refusal of treatment unless he/she advises the dentist/hygienist of some other reason for the "no show."

    1.1.3.2    A Class III patient who fails to show for an appointment and further fails to contact the dentist shall institute a new request for treatment.

    1.1.3.3    Minor inmates shall have the right to refuse treatment.  Such refusals shall be referred to the minor inmate's caseworker.

1.1.4    All patients classified as I or II and who request treatment at the receiving facility shall be seen by the dentist within three months from date of screening.  The dentist shall:

    1.1.4.1    Chart all treatment which is required in the dental chart when first contact is made with the patient.  The treatment plan shall not be completed until clinical examination has occurred.

    1.1.4.2    Outline the treatment plan in sequential order of the treatment phase.

    1.1.4.3    Determine the extent of treatment, including extractions, restorations, periodontal treatment, prosthesis and consultation with referral to a recognized specialist in dentistry (e.g., an oral surgeon or orthodontist).

    1.1.4.4    Take and record a dental/medical history on the dental chart when the patient is first seen.

    1.1.4.5    Record a complete charting of all existing restoration and missing teeth on the dental chart upon initial contact with the patient.

    1.1.4.6    Place a color label on the upper left corner of the dental folder to indicate class status, as indicated below. This determination may initially be made via screening of the Panorex x-ray or initial visual exam by either the dentist or hygienist.

        1.1.4.6.1    Class I – Green.

        1.1.4.6.2    Class II -- Yellow.

        1.1.4.6.3    Class III – Red.

    1.1.4.7    Place a color label of blue next to the classification label of red or yellow to indicate the patient has refused treatment, and indicate the refusal date.  The inmate shall then have to initiate request for any further treatment.

    1.1.4.8    Alter all classification in the dental chart and color label accordingly as work progresses to indicate new classification.

1.1.4.9     Record all treatment rendered in the dental chart. Included shall be the date, facility, tooth number, treatment rendered, anesthesia (amount and type) and signature of dentist/hygienist providing treatment. The name stamp shall be used next to the provider's signature.

1.1.4.10     Enter any medication prescribed in the Medical Record in the appropriate area.

1.2     <u>Pre-Existing Orthodontic Treatment</u> - The Department shall ensure inmates entering an institution upon commitment are currently undergoing orthodontic treatment shall not have treatment interrupted or changed without the written approval of the orthodontist or dentist of record.

1.2.1     A complete history shall be obtained, including dentist of record, date treatment started and course of treatment to date.

1.2.2     The history information shall be provided to the Statewide Dental Director immediately upon compilation.

1.2.3     No treatment shall be performed, other than in an emergency situation, unless authorized by the Statewide Dental Director.

1.2.4     If authorized, the dentist or orthodontist of record shall be contacted by the dentist and/or dental hygienist, and any necessary arrangements shall be made for follow-up treatment.

1.2.5     <u>Prosthesis</u> - Each dental unit shall maintain a Dental Prosthetic List, Form 1101-15, containing names of inmates requesting full or partial dentures, or who are found to be in need of them.

1.2.5.1     Prostheses shall be assigned according to the following priorities:

1.2.5.1.1     <u>First Priority</u> - Given to inmates requiring full dentures in order to be able to chew.

1.2.5.1.2     <u>Second Priority</u> - Given to inmates requiring partial dentures due to not being able to properly chew because of a large number of missing teeth or non-occluding teeth (inmates with less than six posterior occluding natural teeth).

1.2.5.1.3     Dentists shall exercise their best professional judgment in determining the actual need for removal, repair or replacement of dentures, and shall not simply respond to a demand for such services.

1.2.5.2     Inmates requesting replacement of existing prostheses supplied at State expense shall be examined by a dentist, who shall determine if a remake is needed.

1.2.5.2.1   If the dentist determines an inmate has damaged a prosthesis in an attempt to obtain a replacement, the dentist shall take disciplinary action against the inmate for damage of State property.

1.2.5.2.2   Replacement of inmate-damaged prostheses shall require the approval of the Statewide Dental Director.

1.2.5.3   Full or partial prostheses provided by the State shall not be replaced routinely until five years have elapsed since the insertion of the prosthesis, and then only if the examining dentist deems it necessary.

1.2.5.4   State-purchases lost or broken prostheses shall not be replaced routinely until the waiting list for a prosthesis is exhausted, or approval is obtained from the Statewide Dental Director.

1.2.5.5   A partial prosthesis made at State expense remains State property until the inmate leaves the jurisdiction of the Department.

1.2.5.6   Partial dentures and anterior flippers shall not be provided for cosmetic or aesthetic reasons.

1.2.5.7   Replacement or repair of gold crowns, porcelain crowns, fixed bridges or gold inlays shall not be provided.

1.3   <u>Emergency Dental Care</u> - The dentist at each institution shall prepare an on-call schedule for each month, in accordance with Department Order #512, <u>Employee Assignments, Work Hours, Compensation and Leave</u>.

1.3.1   Should a dental emergency arise outside of regular client hours, a member of the on-duty health staff shall notify the on-call dentist to arrange for the provision of necessary treatment.

1.3.2   The on-call dentist shall keep the institution informed as to where he/she can be reached for emergency calls.

1.3.3   For institutions which utilize Dental Services, the dentist shall be available for emergency calls.

1.3.4   The Statewide Dental Director shall be available for consultation at any time.

1.4   <u>Fracture of Facial Bones</u> - Inmates examined for facial injury shall be referred to the on-duty or on-call dentist/hygienist for examination and any necessary treatment for fractures of facial bones.

1.4.1   Depending on the circumstances of the case and the presence or absence of non-facial conditions, the dentist/hygienist shall evaluate the case and advise on treatment/disposition accordingly.

1.4.2   For institutions which utilize Dental Services, the dentist shall be called to evaluate the case and advise on treatment/disposition accordingly.

1.5     <u>Outside Dental Treatment</u> - All outside dental treatment or specific laboratory work, except for emergencies, shall receive prior approval from the Statewide Dental Director.

    1.5.1     Prior to arranging treatment by outside dental providers or specific dental laboratory work, the staff or dentist shall submit a request for such contract work to the Statewide Dental Director. The request shall contain sufficient information to allow for proper evaluation of the request.

    1.5.2     Upon receipt, the Statewide Dental Director shall evaluate the request and approve or disapprove it. The Statewide Dental Director shall thereupon, immediately notify the dentist making the request of the disposition.

    1.5.3     All outside dental treatment plans in excess of fifty dollars total cost shall have the prior approval of the Statewide Dental Director.

        1.5.3.1     A Dental Chart, Form 1101-1, shall be completed and sent to the Statewide Dental Director for review of the request.

        1.5.3.2     Disposition of the request shall be noted on the form, which shall then be forwarded to the provider.

    1.5.4     Upon completion of the outlined treatment, the form shall be returned to the Statewide Dental Director, indicating date(s) of completion of treatment.

## 1101.11     VETERANS ADMINISTRATION

1.1     All inmates who report serving in the United States Armed Forces shall complete a Veterans Administration (VA) Benefits Information form, available through the Health Unit or CO III.

1.2     All Medical Records of inmates who have served in the Armed Forces shall be marked with the VA stamp on the external face of the record jacket.

1.3     When any Physician or Physician's Assistant elects to refer an inmate to a regional VA Medical Center for health care which is not available within the Department, the Contract Health Site Manager or designee shall be notified.

1.4     The Contract Health Site Manager, with the approval of the Medical Director for Health Services shall:

    1.4.1     Substantiate all of the VA eligibility criteria are met in consultation with the Warden.

    1.4.2     Immediately forward completed consultation forms to the person responsible for scheduling appointments.

    1.4.3     Refer inmates eligible for medical treatment to the VA Medical Center with a consultation form completed by the Physician or Physician's Assistant.

**1101.12        REFUSAL OF TREATMENT**

1.1    Non-Life Threatening -  When an inmate with a medical condition is not life-threatening refuses medical treatment, health staff shall:

1.1.1    Explain to the inmate the consequences of not receiving treatment.

1.1.2    Complete a Refusal to Submit to Treatment form in the inmate's presence, and file it in the Unit Medical Record.

1.1.3    Ask two staff members, if the inmate refuses to sign the form, to witness the inmate's refusal and sign the form, indicating the inmate's refusal.

1.1.4    Honor the inmate's preference, if the inmate continues to refuse medical treatment.

1.1.5    Notify the Warden, Deputy Warden or Administrator the inmate has refused medical treatment for a condition which is not life-threatening.

1.1.6    Provide staff with instructions on how to respond to future medical situations involving the inmate who refused treatment.

1.1.7    Thoroughly document the situation for future reference and litigation which may occur, and be prepared to testify if subpoenaed to do so.

1.2    Life-Threatening – When an inmate with a medical condition is life-threatening refuses medical treatment, health staff shall:

1.2.1    Immediately notify the Contract Health Site Manager.

1.2.2    Explain to the inmate the consequences of not receiving treatment.

1.2.2.1    If the inmate is mentally incompetent, health staff shall request the inmate be admitted to a tertiary provider or transferred to ASPC-Phoenix, Alhambra B Ward, whichever best serves the inmate's emergent need, in accordance with Department Order #1103, Inmate Mental Health Care, Treatment and Programs.

1.2.3    Complete a Refusal to Submit to Treatment form in the inmate's presence, if the inmate continues to refuse treatment. The form shall be placed in the Medical Record.

1.2.4    Thoroughly document the situation for future reference and litigation which may occur, and be prepared to testify if subpoenaed to do so.

1.2.5    Provide medical treatment if a court orders treatment to be provided.

1.2.6    If the court does not order treatment, and the inmate continues to refuse treatment, honor the inmate's preference.

1.2.7    The Contract Health Site Manager shall:

1.2.7.1      Immediately advise the Health Services Regional Manager and the ADC Contract Monitor the inmate has refused medical treatment for a condition which is life-threatening.

1.2.7.2      Immediately advise the Warden, Deputy Warden or Administrator the inmate has refused medical treatment for a condition which is life-threatening, and provide instructions on how to respond to future medical situations involving the inmate who refused medical treatment.

1.2.7.3      Ensure a Significant Incident Report is completed in accordance with Department Order #105, Information Reporting, and a copy of the report is forwarded to the Warden, Deputy Warden or Administrator.

1.2.8      The Health Services Contractor shall immediately contact the Department's General Counsel to coordinate with the Attorney General's Office to obtain a court order to provide necessary treatment.

1.2.8.1      The Department's General Counsel shall contact the Office of the Attorney General to request a petition of the court for an order mandating the Department to provide necessary treatment to the inmate.

**1101.13**      **INMATE HUNGER STRIKES (JULY 10, 2000)** – The Department recognizes an inmate may refuse nutrition as a hunger strike to achieve a personal objective. The Department shall attempt to resolve any issues which may lead an inmate to attempt a hunger strike; however, the Department shall not violate or overturn any Department written instructions, guidelines or procedures to stop the hunger strike.

1.1      Department and Health Services staff shall monitor the health and welfare of an inmate engaged in a hunger strike and shall ensure legal and medical procedures are pursued to preserve the inmate's life.

1.2      An inmate shall be considered to be on a hunger strike when:

1.2.1      The inmate communicates the fact to staff and is observed by staff to be refraining from eating for a period of time, ordinarily in excess of 72 hours.

1.2.2      Staff observe the inmate to be refraining from eating for a period in excess of 72 hours. When staff considers it prudent to do so, a referral for medical evaluation may be made without waiting 72 hours.

1.3      The appropriate staff member shall report the hunger strike using a Significant Incident Report, Form 105-3 in accordance with Department Order #105, Information Reporting. Health Services staff shall report the hunger strike through their chain of command.

1.4      In consultation with the appropriate management staff, Wardens may attempt to address any issues raised by the inmate; however, no Department written instructions, procedures or guidelines shall be violated in addressing the issue(s).

1.4.1      The Warden or designee shall contact the Senior Chaplain of the institution and arrange for a Chaplain to visit the inmate.

1.4.1.1     The Chaplain shall attempt to determine if any religious issues are involved, or if the inmate's wishes to be visited by a qualified religious leader of the inmate's chosen religion.

1.4.1.2     The Chaplain shall advise the Warden and the Pastoral Activities Administrator of any religious issues associated with the hunger strike and arrange the pastoral visit if the inmate requests one.

1.5     When notified an inmate is engaged in a hunger strike, the appropriate Health Services staff shall examine the inmate and conduct an initial evaluation.

1.5.1     Health staff shall establish the inmate's base line weight and vital signs, conduct a standard automated chemistry panel, a routine urinalysis and a chronic disease history.

1.5.2     A Psychiatrist or Psychologist shall administer a mental health assessment as to the inmate's capacity to make decisions.

1.5.2.1     If, as a result of the mental health assessment, the inmate is found to not have the capacity to make decisions, legal proceedings shall be initiated by the Legal Services/Discovery Unit to obtain a court order for forced care.

1.5.2.2     If an inmate, initially found to have the capacity to make decisions, is later determined to not have the capacity to make decisions, the Legal Services/Discovery Unit shall initiate appropriate legal proceedings to obtain a court order for forced care.

1.6     If the inmate is determined to have the capacity to make decisions his/her medical status shall be monitored as follows:

1.6.1     The inmate shall be moved to a single occupant cell and shall be provided with three meals per day and an adequate supply of drinking water.

1.6.2     Security staff shall confiscate store purchased food or other private food supplies from the inmate. Confiscated items shall be held for the duration of the hunger strike. The inmate shall not be allowed to purchase any food items from the inmate store while under hunger strike management.

1.6.3     Health Services staff shall take and record the inmate's weight and vital signs at least once every 24 hours. Other medical procedures, including mental health assessments, shall be repeated as medically indicated.

1.6.4     The inmate shall be monitored in accordance with the Health Services Technical Manual. At the discretion of the inmate's treating physician, the inmate shall undergo additional medical and lab testing.

1.6.4.1     An interdisciplinary clinical staffing panel as outlined in the Health Services Technical Manual shall determine any potential issues and attempt to resolve them. The inmate shall be informed of the medical consequences of the hunger strike and shall be asked to sign a Refusal to Submit to Treatment form acknowledging understanding the consequences.

1.7    When the appropriate Health Services staff considers it medically mandatory, the Health Services supervising physician or his/her designee shall ensure the inmate is admitted to an acute care facility for observation and/or treatment.

1.8    The Health Services, through the Legal Services/Discovery Unit, shall notify the Department's General Counsel Office advising of the need to begin preparing a court order for involuntary forced feeding, if necessary, at least 72 hours prior to hospitalization.

   1.8.1   If the appropriate Court orders forced feeding, the inmate shall remain in an acute care facility for appropriate forced treatment.

   1.8.2   Any needed forced treatment shall be terminated if/when the inmate ends the hunger strike, or voluntarily consumes sufficient nutrition to sustain life and prevent serious harm as determined by a physician.

   1.8.3   If the Court orders the Department to honor the wishes of the inmate, the inmate shall remain in an acute care facility for observation and/or treatment. The Department shall follow the order of the court.

1.9    A declared hunger strike shall be documented as terminated upon the inmate's ingestion of food, excluding water and medication, for a sufficient period of time as determined by a physician.

   1.9.1   When the physician has determined supervision is no longer necessary, the decision shall be documented and supervision shall end.

## 1101.14    PRESCRIPTIONS

1.1    Health care providers shall:

   1.1.1   Prescribe medications for inmates as needed.

   1.1.2   Provide injections to inmates when a prescription requires periodic intra-muscular injections.

      1.1.2.1    The syringe and medication shall not be issued to the inmate.

1.2    Medications shall be dispensed in accordance and compliance with all State and Federal laws governing the practice of pharmacy.

1.3    Dispensing Medications

   1.3.1   Inmates may possess no more than a 30-day supply of medications, not to include some psychotropic medications or any controlled substances.

   1.3.2   Upon receipt of medications from a pharmacy, a nurse shall document such receipt and make the medications available to inmates.

   1.3.3   Non-medical Department staff may deliver prescriptions to the inmate, provided all medications are signed for by the inmate and accountability is ensured.

CHAPTER: 1100 – INMATE HEALTH SERVICES
DEPARTMENT ORDER:  1101 – INMATE ACCESS TO HEALTH CARE

**1101.15**        **TRANSGENDER INMATES**

1.1     <u>Initial Health Assessment</u>

1.1.1     In the event an inmate has clear visible physical characteristics aimed at achieving gender reassignment, or their gender is unknown, determination of physical gender shall be conducted by medical practitioners in a private setting.

1.1.2     In the event the inmate refuses evaluation to determine gender by the medical practitioner, a completed and signed medical refusal form shall be required with documentation on the inmate's Medical Record.

1.1.2.1     The medical practitioner shall notify the Contract Health Site Manager.

1.1.2.2     The Contract Health Site Manager shall notify the Reception Center Deputy Warden and advise a medical hold shall be placed on the inmate pending completion of the gender determination. The inmate is to remain at the Reception Center pending the gender evaluation.

1.1.2.3     The medical practitioner shall attempt to complete a physical examination daily for two consecutive business days. A medical refusal form shall be completed on each occasion and shall be documented in the inmate's Medical Record.  If after the second attempt the inmate continues to refuse the medical practitioner shall notify the Contract Health Site Manager.

1.1.2.4     The Contract Health Site Manager shall convene an Ad Hoc Transgender Committee staffing meeting consisting of the Reception Center Deputy Warden, supervising Physician, supervising Psychologist, and the Director of Nursing (or the designees of each listed above) within two business days of the second refusal of the inmate to submit to a physical examination.

1.1.2.4.1     The Transgender Committee shall review and discuss inmate's continued refusal to participate in gender determination, identify alternatives to acquiring inmate's cooperation and ensure all methods and means of securing inmate's cooperation are utilized.

1.1.2.4.2     The Transgender Committee shall meet with the inmate to attempt to gain the inmate's willing cooperation in determining his/her gender. If the inmate continues not to cooperate, the Committee shall advise the inmate a forced examination shall be conducted.  The inmate shall be given 24 hours to reconsider his/her decision not to cooperate.  Minutes of the meeting shall be filed in the legal section of the inmate's Medical Record.

                1.1.2.4.3      The Contract Health Site Manager shall reconvene the Committee after 24 hours to record the inmate's decision. If the inmate agrees to cooperate the physician's examination shall be conducted. If the inmate continues to refuse, a refusal form shall be completed and a forced examination shall be scheduled to determine the inmate's gender.

# IMPLEMENTATION

Within 90 days of the effective date of this Department Order, the ADC Assistant Director for Health Services Contract Monitoring Bureau shall update the following Technical Manuals, which shall address, at a minimum:

- Intermittent Self-Catheterization and Self-Colostomy Management.

- Dental Services.

  - Routine and Emergency Care.

  - Orthodontics.

  - Protheses.

  - Fractures of Facial Bones.

  - Outside Services.

- Nursing Operations and Seasonal Nursing Pools.

- Pharmacy Services.

# DEFINITIONS

**ANTERIOR FLIPPER** - A plastic partial replacing one or more missing anterior teeth.

**APPOINTMENT LIST** - A roster prepared daily by Health Services staff indicating all scheduled inmate appointments for medical, mental and/or dental health care.

**BRIDGE** - A partial denture anchored to adjacent teeth which fill a gap.

**CHRONIC CONDITION** - One of the following health conditions, which are coded as shown the Medical Record file:

- ADA Qualified Inmates Requiring Regular Examinations and/or Treatment (Universal Handicapped Sticker) - An inmate who has a disability, as defined by 42 U.S.C.' 12102(2) of the Americans with Disabilities Act, for which regular examinations and/or treatment are related to a qualifying disability under the Act. Health care providers shall determine whether such examinations and/or treatment are related to the qualifying disability.

- Allergies (Red) - An abnormal response to any substance.

- <u>Cancer</u> (Yellow) - A current or past malignancy.

- <u>Developmentally Disabled</u> (Brown with White stripe) - An inmate whose mental retardation, cerebral palsy, epilepsy, or autism results in substantial functional limitations in the areas of self-care, ability to communicate, and mobility, making necessary the ongoing provision of special Health Services.

- <u>Diabetes</u> (Dark Blue) - Diabetes mellitus.

- <u>Heart Disease</u> (Light Blue) - Current or past disease which requires on-going treatment and/or supervision.

- <u>Hypertension</u> (Dark Green) - High blood pressure which requires treatment and/or dietary intervention.

- <u>Mental Illness</u> (Brown) - Serious mental illness, as defined in Department Order #1103, <u>Inmate Mental Health Care, Treatment and Programs</u>.

- <u>Mentally Impaired</u> (Brown With White Dot) - An intelligence quotient (IQ) of less than 70.

- <u>Positive Purified Protein Derivative Skin Test</u> (PPD) (Black with White dot) - A positive tuberculosis skin test.

- <u>Respiratory Disease</u> (Orange) - An asthmatic condition, emphysema, chronic bronchitis and/or chronic obstructive pulmonary disease.

- <u>Seizure Disorder</u> (Purple) - A generalized tonic-clonic seizure (grand mal), a partial seizure (psychomotor) or an absence seizure (petit mal).

- <u>Seriously Mentally Ill</u> (Brown) - Emotional or behavioral functioning in adults which meets criteria established by the Arizona Department of Health Services, Division of Behavioral Health Services checklist.

- <u>Tuberculosis</u> (Black) - Active and/or inactive tuberculosis.

**CHRONIC CONDITIONS REQUIRING REGULAR EXAMINATIONS AND/OR TREATMENT** - Cancer, diabetes, hypertension, seizure disorder, heart disease, respiratory disease, tuberculosis, HIV/AIDs, serious mental illness (and other mental illnesses of inpatients at the Alhambra Special Psychiatric Hospital and the Flamenco Mental Health Center,) or any condition requiring regular examinations and/or treatment which are directly related to a qualifying disability, as defined by 42 U.S.C. '12102(2) of the Americans with Disabilities Act. Arizona Department of Corrections health care providers shall determine whether regular examinations and/or treatment are directly related to a qualifying disability.  There is no health care fee for these conditions.

**CROWN** - Artificial substitute for portion of tooth external to the gum.

**DECLARATION** - A "Declaration of Intent to Limit Extraordinary Life-Support Procedures," Form 1101-9, signed by an inmate and two witnesses.  A completed declaration establishes the inmate's intent to limit extraordinary life support procedures intended only to prolong the dying process would otherwise be administered for an incurable and terminal medical condition.

**EMERGENCY** - An inmate's current health condition which receives immediate attention.

**FIXED BRIDGE** - Bridge cemented in place and non-removable.

CHAPTER: 1100 – INMATE HEALTH SERVICES
DEPARTMENT ORDER:  1101 – INMATE ACCESS TO HEALTH CARE

**HEALTH CARE FEE** - A charge not to exceed $5.00 (currently $4.00) which is deducted from the account of an inmate, parole violator or other return-to-custody inmate, for each health care appointment and emergency treatment initiated or required by a Health Needs Request (including, but not limited to, treatment of injuries incurred due to the inmate's misconduct and injuries sustained during the inmate's recreational/leisure activity or work assignment). No one shall waive the payment of health care fees, except in the following situations:

- Inmates whose health visits are initiated by medical, dental or mental health staff.

- Inmates whose visit to a health care provider is due to a referral from another provider.

- Inmates assigned to reception centers.

- Minor inmates.

- Pregnant inmates.

- Seriously mentally ill inmates.

- Developmentally disabled inmates who are assigned to the Special Programs Unit.

- Inmates who are assigned to Housing Unit 8 at ASPC-Florence, Central Unit.

- Inmates who are inpatients at the Alhambra Special Psychiatric Hospital at ASPC-Phoenix.

- Inmates who are inpatients at the Flamenco Mental Health Center at ASPC-Phoenix.

- Inmates who undergo follow-up health treatment specifically for their chronic conditions, per provider request.

- Inmates undergoing administrative examinations are required by Department Order, such as:

  - Physical examinations for assignment to statewide driver, fire-fighting crew, and the kitchen.

  - Physical examinations of inmates who are returned to custody.

  - Response to suicide prevention/watch or progressive/maximum behavior control.

**HEALTH NEEDS REQUEST** - Health Needs Request (HNR) Form 1101-10ES, used by inmates to make an appointment for non-emergency health care.

**HEALTH NEEDS REQUEST (HNR) (Emergency)** - Form 1101-11 or Peticion de Necesidades Medicas (Solo Para Uso de Peticiones Comunes), Form 1101-11S, used by inmates to make an appointment for emergency health care.

**HUMAN IMMUNODEFICIENCY VIRUS (HIV)** - A virus which infects and destroys certain white blood cells, thereby undermining a person's immune system which normally combats infections and disease.  HIV may be symptomatic or asymptomatic.

**LIFE SUPPORT SYSTEM** - Devices or machines such as mechanical ventilators provide necessary bodily functions for medical patients.

**LIFE THREATENING** - A medical condition which could, in a physician's opinion, lead to an inmate's death if not treated.

**MEDICAL APPOINTMENT** - A scheduled time for an inmate to see a health care provider, nurse or attend a one-on-one mental health appointment, mental health group, dental appointment or specialty clinic.

**MEDICAL FURLOUGH** - Any authorized absence of an inmate from an institution for medical reasons.

**MEDICAL ORDER** - A document signed by the attending physician who outlines the type of medical treatment to be given an inmate. The medical order becomes part of the patient's hospital record.

**MEDICAL STAFF** – Health care providers, including physicians, physician's assistants, nurses and Directors of nurses.

**NON-EMERGENCY** - An inmate's current health condition which does not require immediate attention and for which a request is generated by a Health Needs Request form. This includes review of the Medical Record.

**PROSTHESIS** - Full or partial dentures (false teeth).

**PROVIDER** – Health care professional's approved by the Assistant Director for the ADC Health Services Contract Monitoring Bureau to examine an inmate and administer/order health treatment. Included are Physicians, Psychiatrists, Psychologists, Dentists, Physician Assistants, Director of Nurses, Psychologist Associates, Mental Health Assistants, and Nurses.

**RECEPTION CENTER** - One of the following facilities is used to receive new commitments:

- ASPC-Phoenix, Alhambra Reception and Treatment Center: Adult male inmates.

- ASPC-Florence, Cell Block 6: Adult male inmates sentenced to death.

- ASPC-Perryville, Santa Maria: Adult female inmates, adult female inmates sentenced to death and minor female inmates sentenced as adults.

- ASPC-Tucson, Rincon: Minor male inmates sentenced as adults.

**RELEASE** - The following types of release, in accordance with Department Order #1001, Inmate Release System:

- Compassionate Leave.

- Discretionary Release.

- Emergency Parole.

- Earned Release Credit Date Release.

- Home Arrest.

- Mandatory Release.

- Provisional Release.

- Parole.

- Temporary Release.

- Work Furlough.

**SERIOUSLY MENTALLY ILL** - Emotional or behavioral functioning in adults which meets criteria established by the Arizona Department of Health Services, Division of Behavioral Health Services checklist.

**SUPERVISING PHYSICIAN** - The Department's lead physician at a correctional institution.

**VETERANS ADMINISTRATION ELIGIBLE** - An inmate who served in the U.S. Armed Forces and/or has a service-connected disability as qualified by the Veterans Administration.

{Original Signature on File}

_____

Charles L. Ryan
Director

**ATTACHMENTS**
Attachment A – WHO DECIDES? / QUIEN DECIDES? - Spanish
Attachment B – Definitions of Medical Care Directive Forms

**FORMS LIST**
1101-1, Dental Chart
1101-4, Refusal To Submit To Treatment
1101-4S, Negativa A Someterse A Tratamiento
1101-9, Declaration of Intent to Limit Life-Support Procedures
1101-10ES, Health Needs Request (HNR) (Non-Emergency)
1101-11, Health Needs Request (HNR) (Emergency)
1101-11S, Peticion de Necesecidades Medicas (Solo Para Uso de Peticiones de Emergencia)
1101-13, Appointment List
1101-15, Dental Prosthetic List
1101-74, Inmate Outside Consultation Appointment Agreement
1101-90, Revocation of Medical Care Directives
1101-97, Durable Health Care Power of Attorney
1101-98, Living Will (End of Life Care)
1101-99, Inmate Acknowledgement of Rights

# AUTHORITY

A.R.S. 9-499.02, Standards for Curb Ramps.

A.R.S. 31-201.01, Duties of the Director; Tort Actions; Medical Treatment Costs.

A.R.S. 31-224, Transfer of Prisoner.

A.R.S. 32-1968, Dispensing Prescription-Only Drugs; Prescription Orders; Renewals; Labels; Misbranding.

A.R.S. 36-2523, Records of Registrants.

A.R.S. 36-2525, Prescription Orders.

A.R.S. 41-1492 et seq, Arizonans with Disabilities Act of 1992.

Americans with Disabilities Act of 1990, Titles I-V

28 C.F.R. Part 35.130 et. seq., Nondiscrimination on the Basis of Disability by State and Local Government Services

U.S. Civil Rights Act of 1964

Architectural Barriers Act of 1968

Rehabilitation Act of 1973

ATTACHMENT A
DEPARTMENT ORDER 1101

## WHO DECIDES? / QUIEN DECIDES?
### The following may be read to/by an inmate

If you get hurt or sick in prison, so sick you can't talk or answer at all. Who will make your medical decisions? It's very important for you to choose a person to make those decisions for you, just in case.

You can fill out forms ahead of time to decide. These forms are called your "Medical Care Directives". They allow YOU to decide who will make decisions for you and what decisions you want them to make. They give YOU control over your medical decisions, so there's no confusion later in case you can't talk or answer.

(As long as you can still talk, answer, nod you head, blink you eye or communicate at all with doctors and nurses, your Medical Care Directives are not needed.)

If you choose NOT to complete your Medical Care Directives, Arizona Law says who can make medical decisions for you, in the following order:

1. The patient's spouse (unless you are legally separated);

2. An adult child of the patient; if more than one adult child, consent is by a majority "vote";

3. The patient's parent;

4. If unmarried, the patient's domestic partner;

5. The patient's brother or sister;

6. A close friend of the patient (someone showing special care/concern and knows the patient's health care views);

7. The patient's attending physician after consulting the hospital's ethics committee;

8. Patient's physician in consultation with a second physician.

No one can make you complete your Medical Care Directives. It is your right; however, whether you use this right is completely your decision. You can talk to anyone you trust before deciding whether or not to complete the forms. You are allowed to look at the forms first, in private, before deciding what to do. You can set up and change your Medical Care Directives at any time. Contact your CO III for further information.

DECEMBER 19, 2012

ATTACHMENT A
DEPARTMENT ORDER 1101

## QUIEN DECIDE? (WHO DECIDES?)
Lo siguiente puede ser leido pare un Preso/o por un Preso

Dice lo siguiente: Si se lastima o se enferma de gravedad al grado que no pueda hablar o comunicarse en lo absoluto, y no responde en el tiempo que está en la prisión, QUIEN es responsable de tomar decisiones sobre su condición médica en caso necesario.

Existe una forma que usted puede llenar por adelantado que se llama (DECISIONES DE CUIDADO DE SALUD). Al llenar esta forma da su autorización a la persona designada para sus decisiones médicas por usted.  En esta forma usted deja por escrito las indicaciones que quiere que se hagan en caso de que no pueda hablar o responder del todo si esto llegara a pasar estaría todo listo y no existiera ninguna confusión.

Si usted todavía se puede comunicar hablando, moviendo la cabeza, parpadeando los ojos en fin comunicándose con los doctores, y enfermeras.  No sería necesario utilizar a la persona designada para sus decisiones médicas.

Si usted decide no llenar esta forma (DECISIONES DE CUIDADO DE SALUD) en Ingles (**Medical** Care Directives) La Ley de Arizona le asignan a una persona para usted que decida en su condición médica en el orden de siguiente:

1.  Cónyuge del paciente/preso (*si está legalmente separado no puede ser su cónyuge).*

2.  El hijo mayor del paciente/preso que sea adulto; Si más de un hijo adulto, consentimiento es por una mayoría de "Voto".

3.  Si no está casado el pareja/preso pareja con quien vive.

4.  Padre(s) del paciente/preso.

5.  El hermano o (a) del paciente/preso.

6.  Un amigo cercano (alguien que demuestre que lo quiere y se preocupa por el paciente y el comité ético del hospital.

7.  El doctor que lo está atendiendo en el hospital y el comité ético del hospital.

8.  El doctor del paciente con una segunda opinión.

Nadie lo puede obligar a llenar esta forma es su derecho y su decisión es completamente suya, puede hablar con alguien que sea de su completa confianza antes que decida qué es lo que va a hacer.

Ya que llene la forma (DECISIONES DE CUIDADO DE SALUD) si usted decide hacer algún cambio lo puede hacer en cualquier momento.

Solamente necesita comunicárselo a su Oficial de Correcciones II (CO II) para hacer estos cambios.

DECEMBER 19, 2012

ATTACHMENT B
DEPARTMENT ORDER 1101

## Definitions of Medical Care Directive Forms

1. Living Will (End of Life Care):

This form allows you to tell *medical personnel* how you wish to be cared for in the event you have a terminal illness, go into an irreversible coma and/or are diagnosed as being in a persistent vegetative state. It puts in writing your medical decisions so the doctors can treat you according to your personal choices. It allows you to specifically tell doctors what choices you have made for yourself even if you cannot communicate verbally.

2. Durable Health Care Power of Attorney:

This form is used if you wish to select a person, *other than another inmate,* to make future health care decisions for you if you become too ill and cannot communicate those decisions for yourself. The person you choose should be someone you trust who can make these decisions when you are unable to do so, then the State makes the choice by a list set forth in the Arizona statues. (See "Who Decides?")

3. Revocation of Medical Care Directives:

This form is used to allow you to revoke or modify any or all of the Medical Care Directives you have provided. You are permitted at any time to change directives presently in place or add or change any directives not presently chosen.

NOTE:  THESE FORMS DO NOT APPLY TO SITUATIONS INSIDE OF THE INSTITUTIONS WHERE STAFF MAY HAVE TO RENDER AID TO AN INMATE ATTEMPTING SELF-HARM OR WHO MAY HAVE BEEN THE VICTIM OF AN ASSAULT OR ACCIDENT CAUSING INJURY.

DECEMBER 19, 2012

**ATTACHMENT   C1**

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Health Needs Request (HNR)**

Date: _____
Time: _____
Initials: _____

| SECTION I |
|---|

| Inmate Name/Nombre (Last, First M.I.) (Apellido, Nombre, Inicial) | ADC Number/Número de ADC | Date/Fecha |
|---|---|---|
| Reed, Kenneth | 108264 | 3/16/14 |

| Cell/Bed Number/Celda/Número de Cama | Unit/Unidad | P.O. Box/Apartado Postal | Institution/Facility/Instalación: ASPC |
|---|---|---|---|
| 4A 49 | Cibola | 8820 | Yuma |

You are required to be truthful. Failure to be cooperative and any abuse of the health care system or its staff could cause a delay in delivery of care to you and others, and may result in disciplinary action (Use this form to describe only one problem or issue at one time). [Se le exige diga la verdad. La falta de cooperación y cualquier abuso del sistema del cuidado de la salud o del personal podría retrasar la asistencia de este cuidado para usted y para otros y puede dar lugar a una acción disciplinaria (Use este formulario para describir un problema a la vez!]

---

**SECTION II**

**AREA OF INTEREST** (Check only one block below)/**AREA DE INTERES** (MARQUE UN ESPACIO SOLAMENTE) ☐ Medical/Médica ☐ Dental ☐ FHA ☒ Pharmacy/Farmacia ☐ Mental Health/Salud Mental ☐ Eyes/Ojos ☐ Other (specify)/Otros (especifique) _____

PLEASE PRINT! Describe your medical/dental treatment issue need in the space below. Be clear and specific. NO ADDED PAGES. [¡POR FAVOR, ESCRIBA EN IMPRENTA! Describa su tratamiento o necesidad médica/dental en el espacio de abajo. Describa claramente y sea específico. ¡NO USE MAS HOJAS!]

Last refills (30-day supply) for the following chronic care medications were delivered to me on February 6, 2014: Hydrochlorothiazide Rx 27919435

Enalapril Maleate Rx 27919428

Chronic care medications are supposed to be refilled automatically by medical staff who should have delivered them (my next refills) to me some time around March 8, 2014.

I have not yet received either refill. What is the problem?

I understand that, per ARS 31-201.01, I will be charged a $4.00 Health Service fee (excluding exemptions granted by statute) for the visit that I am herein requesting. I further understand that by paying this fee I do not have the right to dictate treatment or who provides treatment. [Entiendo que de acuerdo con ARS 31-201.01 se me cobrará una cuota por el servicio médico de $4.00 por la cita que aquí estoy pidiendo (excluyendo las exenciones otorgadas por la ley). Además entiendo que al pagar esta cuota no tengo el derecho a imponer el tratamiento o quien lo proporcione.] No visit being requested — no charge for inquiry.

Inmate's Signature/Firma del prisionero    Ken Reed

**REMOVE THE GOLDENROD COPY AND PLACE THE REMAINDER IN THE HEALTH NEEDS REQUEST DROP BOX**[SEPARE LA COPIA DE COLOR AMARILLO OBSCURO Y DEJE LAS DEMAS EN EL BUZON PETICION DE NECESIDADES MÉDICAS]

---

**SECTION III**

**REFERRAL BY MEDICAL STAFF/REFERENCIA MEDICA** ☐ Medical/Médica ☐ Dental ☒ Pharmacy/Farmacia ☐ FHA ☐ Mental Health/Salud Mental ☐ Eyes/Ojos ☐ Other/Otros (specify) (especifique)

Comments/Comentarios    refill

| Staff Signature Stamp/Firma del empleado | Date/Fecha | Time/Hora |
|---|---|---|
|  | 3/16 | 2345 |

---

**SECTION IV**

**PLAN OF ACTION/PLAN DE ACCION**

| Staff Signature Stamp/Firma del empleado | Date/Fecha | Time/Hora |
|---|---|---|
|  |  |  |

Distribution: White/Blanca - Health Unit/Unidad de Salud, Canary, Pink & Goldenrod - Inmate/Amarillo Canario, Rosa y Amarillo Obscur - Prisonero

This document is a translation from original text written in English. This translation is unofficial and is not binding on this state or a political subdivision of this state. [Este documento es una traducción de texto original escrito en inglés. Esta traducción no es oficial y no compromete a éste estado ni una subdivisión política de este estado.]

1101-10ES
12/19/12

# ATTACHMENT   C2

ARIZONA DEPARTMENT OF CORRECTIONS

Inmate Letter

Requests are limited to one page and one issue. NO ATTACHMENTS PERMITTED. Please print all information.

| Inmate Name (Last, First M.I.) | ADC Number | Institution/Unit | Date |
|---|---|---|---|
| Reed, Kenneth | 108264 | Yuma/Cibola | 3/21/14 |

To: Ms. Kelli Rogers
Facility Health Administrator

Location: Inmate Health Services (Corizon, Inc.)
Yuma Complex

State briefly but completely the problem on which you desire assistance. Provide as many details as possible.

SUBJECT: Second Inquiry re Chronic Care Medication Refills

On March 16, 2014, I submitted an Health Needs Request ("HNR") to ask why neither of my chronic care prescriptions has yet been refilled this month; see copy of that HNR 3/16/14 enclosed. Two days later, on March 18, 2014, I received the yellow and pink copies from my HNR 3/16/14 without any answer to my question written on it; see again, copy of my HNR 3/16/14, enclosed.

Because I did not receive any answer to my question, I am now writing to you for one: Having not yet received refills for my chronic care medications which are supposed to come automatically, "What is the problem?"

RECEIVED
MAR 26 2014
BY: ............................

enclosure (HNR 3/16/14)

| Inmate Signature | Date |
|---|---|
| Ken Reed | 3/21/14 |

Have You Discussed This With Institution Staff?  ☐ Yes  ☐ No

If yes, give the staff member's name:

Distribution:  White - Master Record File      Canary - Inmate

916-1
4/15/04

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Health Needs Request (HNR)**

Date: _____
Time: _____
Initials: _____

| Inmate Name/Nombre *(Last, First M.I.) (Apellido, Nombre, Inicial)* | | ADC Number/Número de ADC | Date/Fecha |
|---|---|---|---|
| Reed, Kenneth | | 108264 | 3/16/14 |

| Cell/Bed Number/Celda/Número de Cama | Unit/Unidad | P.O. Box/Apartado Postal | Institution/Facility/Instalación: ASPC |
|---|---|---|---|
| 4A 49 | Cibola | 8820 | Yuma |

You are required to be truthful. Failure to be cooperative and any abuse of the health care system or its staff could cause a delay in delivery of care to you and others, and may result in disciplinary action (Use this form to describe only one problem or issue at one time). [*Se le exige diga la verdad. La falta de cooperación y cualquier abuso del sistema del cuidado de la salud o del personal podría retrasar la asistencia de este cuidado para usted y para otros y puede dar lugar a una acción disciplinaria (Use este formulario para describir un problema a la vez!)*]

**AREA OF INTEREST**(*Check only one block below*)**/AREA DE INTERES** *(MARQUE UN ESPACIO SOLAMENTE)* ☐ Medical/Médica  ☐ Dental  ☐ FHA
☒ Pharmacy/Farmacia  ☐ Mental Health/Salud Mental  ☐ Eyes/Ojos  ☐ Other *(specify)*/Otros *(especifique)* _____

PLEASE PRINT! Describe your medical/dental treatment issue need in the space below. Be clear and specific. NO ADDED PAGES. [¡POR FAVOR, ESCRIBA EN IMPRENTA! Describa su tratamiento o necesidad médica/dental en el espacio de abajo. Describa claramente y sea específico. ¡NO USE MÁS HOJAS!]

Last refills (30-day supply) for the following chronic care medications were delivered to me on February 6, 2014: Hydrochlorothiazide  Rx 27919435

Enalapril Maleate  Rx 27919428

Chronic care medications are supposed to be refilled automatically by medical staff who should have delivered them (my next refills) to me some time around March 8, 2014.

I have not yet received either refill. What is the problem?

I understand that, per ARS 31-201.01, I will be charged a $4.00 Health Service fee *(excluding exemptions granted by statute)* for the visit that I am herein requesting. I further understand that by paying this fee I do not have the right to dictate treatment or who provides treatment. [Entiendo que de acuerdo con ARS 31-201.01 se me cobrará una cuota por $4.00 por la cita que aquí estoy pidiendo *(excluyendo las exenciones otorgadas por la ley)*. Además entiendo que al pagar esta cuota no tengo el derecho a imponer el tratamiento o quien lo proporcione.]  No visit being requested — no charge for inquiry.

Inmate's Signature/Firma del prisionero   *Ken Reed*

**REMOVE THE GOLDENROD COPY AND PLACE THE REMAINDER IN THE HEALTH NEEDS REQUEST DROP BOX[SEPARE LA COPIA DE COLOR AMARILLO OBSCURO Y DEJE LAS DEMAS EN EL BUZON PETICION DE NECESIDADES MÉDICAS]**

**REFERRAL BY MEDICAL STAFF/REFERENCIA MEDICA** ☐ Medical/Médica  ☐ Dental  ☒ Pharmacy/Farmacia  ☐ FHA
☐ Mental Health/Salud Mental  ☐ Eyes/Ojos  ☐ Other/Otros *(specify)* *(especifique)*

Comments/Comentarios   refill

RECEIVED
MAR 26 2014
BY: _____

| Staff Signature Stamp/Firma del empleado | Date/Fecha 3/16 | Time/Hora |
|---|---|---|

| PLAN OF ACTION/PLAN DE ACCION |
|---|
| |
| |

| Staff Signature Stamp/Firma del empleado | Date/Fecha | Time/Hora |
|---|---|---|

Distribution: White/Blanca - Health Unit/Unidad de Salud, Canary, Pink & Goldenrod - Inmate/Amarillo Canario, Rosa y Amarillo Obscur - Prisonero

This document is a translation from original text written in English. This translation is unofficial and is not binding on this state or a political subdivision of this state. [Este documento es una traducción de texto original escrito en inglés. Esta traducción no es oficial y no compromete a este estado ni una subdivisión política de este estado.]

1101-10ES

ATTACHMENT   C3

# CORIZON™

## HNR / INMATE LETTER RESPONSE/GRIEVANCE RESPONSE

| Inmate Name *(Last, First M.I.)*: | ADC #: |
|---|---|
| **Reed, Kenneth** | **108264** |
| | Grievance case number |

**Institution/ Unit / Housing:** _ASPC-YUMA_ /CIBOLA

| From: | Location / Unit: |
|---|---|
| **Madeline Lowell** | **ASPC- YUMA / Corizon Health** |
| **Assistant Facility Health Administrator** | |

Mr. Reed,

   All of your medications have now been refilled.  If you have this problem again please let me know.  Please submit an HNR to speak to the provider as many of your medications expire in April.

Per DOC policy, clinical decisions and actions regarding health care services provided to you are the sole responsibility of qualified health care professionals.  You do not have the right to dictate treatment or who provides it.

If you have further medical concerns, please submit a Health Needs Request form.

**Staff Signature:** _MLowell_   **Date:** 3/26/14

# ATTACHMENT   C4

# MEDICATION ADMINISTRATION RECORD

Facility: ASPC-T Manzanita

Month: April 2014

| Init. | Drug – Dose – Mode – Interval | HR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ⊗ | Enalapril Maleate 10 mg T PO daily x 180 days | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | Prescriber Holder  Start Date   Order Date 4-11-14   Stop Date | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| ⊗ | Hydrochlorothiazide 25 mg take one po daily | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | Prescriber Holder  Start Date   Order Date 4-11-14   Stop Date | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| ⊗ | APAP-ASA-Caff 250-250-65 mg take two tabs po, prn q 6° x 90 days NOT to exceed 8 tabs daily | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | Prescriber Holder  Start Date   Order Date 4-11-14   Stop Date | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| ⊗ | Naproxen 375 mg take 1 po Bid prn x 90 days | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | Prescriber Holder  Start Date   Order Date 4-11-14   Stop Date | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | Prescriber  Start Date   Order Date   Stop Date | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | Prescriber  Start Date   Order Date   Stop Date | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

Diagnosis: Migraines, HTN
Allergies: NKDA

DOB/Inmate #: 108264   Location: 209-48

Name: Reed, Kenneth   4461

DC 50 REV 4/10

595

# ATTACHMENT   D1

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Grievance**

| | |
|---|---|
| Note: You may appeal the Grievance Coordinator's decision to the Warden/Deputy Warden/Administrator by filing form 802-3, within 10 calendar days of receipt of this notice. | Received By _UKa_ |
| | Title _CoIV_ |
| | Badge Number _6048_    Date _4-21-14_ |

| Inmate Name (Last, First M.I.) | ADC Number | Date |
|---|---|---|
| Reed, Kenneth | 108264 | 4/21/14 |

| Institution/Facility | Case Number |
|---|---|
| Tucson/Manzanita | 14-C14-046 |

To: Tamara Porter, Acting Facility Health Administrator, Tucson

**Description of Grievance** (To be completed by the inmate)

**A. Nature of Complaint**

This grievance, in the particular, is being preferred against medical staff at the Arizona Department of Corrections' ("ADOC's") Cibola Unit for their fraudful recordskeeping practices but, in its wider application, is being brought to effect a change in policy to prevent such frauds from being committed again against all other inmates throughout the ADOC; see Department Order 802.01 § 1.1, 802.04 and Attachment B.

**B. Factual Basis of Claims**

On April 2, 2014, due to circumstances which are not at issue herein, I was compelled to refuse the administration of certain drugs. When RN R. Jarrett gave me the Refusal to Submit to Treatment form,

<CONTINUED ON GF SUPPLEMENTS>

**Proposed Resolution** ( What informal attempts have been made to resolve the problem? What action(s) would resolve the problem?)

**A. Efforts to Resolve Problem**

Submitted Inmate Informal Complaint Resolution dated April 3, 2014 "A", to CO III O. Perez; see Exhibit 2. On April 15, 2014, I received an Inmate Informal Complaint Response which was dated April 14, 2014, and which had been e-mailed to me from CO III Perez, NOT resolving complaint; Exhibit 3.

<CONTINUED ON LAST PAGE GF SUPPLEMENT>

| Inmate's Signature | Date | Grievance Coordinator's Signature | Date |
|---|---|---|---|
| Ken Reed | 4/21/14 | | |

Action taken by _CRN Tamara Porter_     Documentation of Resolution or Attempts at Resolution.

see Corizon Inmate Grievance Response (on GF Supplement form)
dated 5/1/14
< prefixed hereto >

| Staff Member's Signature | Badge Number | Date |
|---|---|---|
| | | |

Initial Distribution - White and Canary - Grievance Coordinator; Pink - Inmate
Final Distribution - White - Inmate; Canary - Grievance File

802-1
12/19/12

ARIZONA DEPARTMENT OF CORRECTIONS

Grievance — Page 2 of 3

-Inmate Grievance - GF Supplement

| Inmate Name (Last, First M.I.) | ADC Number | Institution/Facility | Case Number |
|---|---|---|---|
| Reed, Kenneth | 108264 | Tucson/Manzanita | 14-C14-046 |

## Description of Grievance (continued)

### B. Factual Basis of Claims (continued)

I wrote my reason for refusal in the space provided, "REASON FOR REFUSAL"; see Exhibit 1A (demonstrative recreation). When RN Jarrett told me to sign the form, I asked about getting a copy; but when RN Jarrett told me that I would not be given a copy, I refused to sign it. RN Jarrett then signed that selfsame Refusal to Submit to Treatment form on the first "Witness's Signature" line and got medical security officer CO II G. Phillips to sign it on the second "Witness's Signature" line. When I last saw that Refusal to Submit to Treatment form, it was entirely blank except for what I had written after "REASON FOR REFUSAL" and the two witnesses' signatures (plus dates and times) — no boxes were checked and nothing was otherwise written in the first, second, third or fourth sections; see Exhibit 1B (demonstrative recreation). Moreover, as the absence of any markings and notations on that original Refusal to Submit to Treatment form correctly reflected, no oral explanation was given as to what treatment was being offered and why it was deemed necessary to administer it in the manner being demanded of me, no advisement was given as to possible consequences of refusal, and no "patient education" was provided.

However, that April 2, 2014, Refusal to Submit to Treatment form was afterwards altered to say a lot of different things than when it was witnessed; Exhibit 1C (copy of actual form as it now exists).

### C. Actionable Claims

Throughout history our business and legal communities have recognized that a person's best protection against the fraudful invasion of his or her legal rights and financial obligations is to obtain a copy of whatever document he or she might have put his or her signature to. Proof that the ADOC recognizes the fundaments of this principle can be found throughout its policies that require inmates to be given file copies of their Inmate Letters (ADOC form 916-1), their Health Needs Requests (ADOC form 1101-10ES), their Inmate Informal Complaint Resolutions (ADOC form 802-11(e)), their Inmate Grievances and appeals (ADOC forms 802-1 & 802-3) and such and so forth. How-

<CONTINUED ON NEXT PAGE GF SUPPLEMENT>

| Signature | Date |
|---|---|
| Ken Reed | 4/21/14 |

INITIAL DISTRIBUTION - GF Supplement - White and Canary - Grievance Coordinator, Pink - Inmate
FINAL DISTRIBUTION - White - Inmate, Canary - Grievance File

802-7
2/1/13

ARIZONA DEPARTMENT OF CORRECTIONS

Inmate Grievance - GF Supplement

Grievance        Page 3 of 3

| Inmate Name *(Last, First M.I.)* | ADC Number | Institution/Facility | Case Number |
|---|---|---|---|
| Reed, Kenneth | 108264 | Tucson/Manzanita | 14-C14-046 |

## Description of Grievance (continued)

### c. Actionable Claims (continued)

ever, ADOC policy, to wit, Inmate Access to Health Care, Department Order 1101, does not impose any similar requirement upon its Health Services Contractor to give its patients a copy of any Refusal to Submit to Treatment form (ADOC form 1101-04) they might be required to submit; nor, ADOC policy notwithstanding, is it the Health Services Contractor's practice to do so. Consequently, this is an open invitation for medical staff to fraudfully alter these documents after they are signed and submitted, to make them say whatever they might want to suit their purposes.

### 1. Fraud as Common Law Tort

Fraud, as a civil wrong, is actionable in the courts under the common law.

### 2. Fraud as a Crime

The fraudful alteration of official ADOC records is a crime under A.R.S. §13-2407(A)(1).

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## Proposed Resolution (continued)

### B. Action Which Would Resolve Problem

1. Name fraudfeasor(s) who altered April 2, 2014, Refusal to Submit to Treatment form after it was witnessed;

2. Refer this matter to the Office of the Arizona Attorney General for possible criminal prosecution;

3. Discontinue fraudful practice of altering documents after they are submitted; and

4. Revise policy and forms to require that inmates be given a copy of the Refusal to Submit to Treatment form when it is executed.

\\\\\\\\\\\ END /////////

| Signature | Date |
|---|---|
| Ken Reed | 4/21/14 |

INITIAL DISTRIBUTION - GF Supplement - White and Canary - Grievance Coordinator, Pink - Inmate
FINAL DISTRIBUTION - White - Inmate, Canary - Grievance File

802-7
2/1/13

## Exhibits 1A, 1B & 1C

Refusal to Submit to Treatment

Dated 4/2/14

Copy of form requested;
Medical is supposed to send



**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Informal Complaint Resolution**

Complaints are limited to one page and one issue.   Please print all information.

| INMATE NAME *(Last, First M.I.) (Please print)* | ADC NUMBER | INSTITUTION/UNIT | DATE *(mm/dd/yyyy)* |
|---|---|---|---|
| Reed, Kenneth | 108264 | Yuma/Cibola | 4/3/14A |

| TO | LOCATION |
|---|---|
| CO III O. Perez | Cibola Unit, Building 4A/B |

State briefly but completely the problem on which you desire assistance.  Provide as many details as possible.

On April 2, 2014, due to circumstances which are not a part of this complaint, I was com-pelled to refuse the administration of certain drugs. When RN R. Jarrett gave me the Refusal to Submit to Treatment form, I wrote my "Reason for Refusal" in the space provided (fourth out-lined section, down from top of page). Then, when RN Jarrett told me to sign the form, I asked about getting a copy; however, when RN Jarrett told me that I would not be given a copy, I refused to sign it. RN Jarrett then signed that Refusal to Submit to Treatment form on the first "Witness's Signature" line and got CO II G. Phillips to sign it on the second "Wit-ness's Signature" line. When I last saw that Refusal to Submit to Treatment form, it was EN-TIRELY BLANK except for what I had written after "Reason for Refusal" and the two witnesses' signatures (plus date and time): no boxes were checked and nothing was otherwise written in the first, second, third or fourth sections. However, that form has since been altered to say a lot of different things than when it was witnessed. This is called fraud, and fraud is a crime.

I require a copy of everything I sign as a precaution to prevent frauds being committed against me. But knowing in advance what they were going to do, medical staff (Corizon Health, Inc, employees) refused to give me a copy of that Refusal to Submit to Treatment form so that they would be free to alter it in whatever manner would suit their nefarious purposes.

PROPOSED   RESOLUTION

    A. Name fraudfeasor(s) who altered Refusal to Submit to Treatment form after it was witnessed;

    B. Provide me a copy of fraudfully altered Refusal to Submit to Treatment form so that I can file a civil lawsuit against the perpetrator(s);

    C. Refer this matter to the Arizona Attorney General's Office for criminal prosecution; and

    D. Discontinue fraudful practices and change policy if necessary, to provide inmates with a copy of Refusal to Submit to Treatment forms when executed.

| INMATE SIGNATURE | DATE *(mm/dd/yyyy)* |
|---|---|
| Ken Reed | 4/3/14A |

Have you discussed this with institution staff?   ☐ Yes   ☐ No

If yes, give the staff member name:

Distribution:   Original - Inmate
Copy – Grievance Coordinator File

802-11(e)
8/21/13

Cota Perez O.
04/03/14



**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Informal Complaint Response**

| | For Distribution: Copy of Corresponding Inmate Informal Complaint Resolution must be attached to this response. |
|---|---|

| Inmate Name (Last, First M.I.) | ADC Number |
|---|---|
| REED, KENNETH W. | 108264 |

| Institution/Unit |
|---|
| ASPC-YUMA-CIBOLA |

| From | Location |
|---|---|
| COIII PEREZ, O. | 4 A-B-C COIII OFFICE |

I am in receipt of your informal complaint dated 04/03/2014, regarding a medical refusal. I COIII Perez, spoke with COII Phillips (medical security) and she stated that no medical refusal was altered and that you refused to take your medication, also refused to signed the medical refusal to submit treatment. RN R. Jarrett and COII Phillips signed the medical refusal to submitt treatment as witness. I am unable to resolve your issue. I have forwarded a copy of your complaint to the Corizon Inc. Complex Site Manager, Kelly Rogers. I consider your issue to be unresolved.

You may submit a formal grievance within 5 work days, in accordance with Department Order 802.

| Staff Signature | Date |
|---|---|
| *[signature]* O. Cory | 04-14-2014 |

Distribution:   Original - Inmate
Copy -- Grievance Coordinator File

802-12(e)
12/12/13

# ATTACHMENT   D2

Received 14th hours 5/8/14

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Grievance - GF Supplement**

| Inmate Name *(Last, First M.I.)* | ADC Number | Institution/Facility | Case Number |
|---|---|---|---|
| Reed, Kenneth | 108264 | ASPC-Tucson / Manzanita | 14-C14-046 |

CORIZON
INMATE GRIEVANCE RESPONSE

This is a response to your Inmate Grievance dated 4/21/14. Your grievance was received in the Tucson office of Corizon Inmate Health Services on 4/28/14.

Your primary area of grievance is a refusal.

Your concern has been reviewed by medical and it was determined that the most current refusal found in your chart is for 10/7/13 and you did not sign the refusal. Copies of your medical records cannot be given to you per DOC policy.

This grievance has been addressed. This has resolved your concern.

TP/ds
[16642]

YOU MAY APPEAL THIS DECISION TO THE DIRECTOR BY REQUESTING APPEAL FORM GF-2.

| Signature | Date |
|---|---|
| Tamara Porter, CRN
Director of Nursing | 05/01/2014 |

INITIAL DISTRIBUTION - Committee Recommendation - All copies to Grievance Advisory Committee
FINAL DISTRIBUTION - White and Pink - Inmate, Canary - Grievance File

INITIAL DISTRIBUTION - GF Supplement - White and Canary - Grievance Coordinator, Pink - Inmate
FINAL DISTRIBUTION - White - Inmate, Canary - Grievance File

Returned to I/M on 5/8/14
Revoked by DTS

802-7
7/13/09

# ATTACHMENT   D3

**ARIZONA DEPARTMENT OF CORRECTIONS**

Refusal to Submit to Treatment

I have been advised that it is necessary for me to undergo the following:

| Evaluation | Treatment *(Check box and specify)* |
|---|---|
| ☐ Dental examination | ☐ Dental procedure _____ |
| ☐ Nursing assessment | ☐ Nursing procedure _____ |
| ☐ Mental Health assessment/treatment | ☐ Medical procedure _____ |
| ☐ Medical Provider evaluation | ☑ Medication  enalapril, hydrochlorothiazide |
| ☐ Emergency assessment for | |
| _____ | ☐ Injection _____ |
| ☐ Outside medical appointment | ☐ Emergency treatment _____ |
| ☐ NPO/PREP for _____ | ☐ Lab   ☐ X-ray |
| ☐ Other _____ | |

Related to (diagnosis or procedure) _____

Consequences of Refusal *(Check all that might apply)*

| | |
|---|---|
| ☐ Pain | ☑ Worsening of this disease |
| ☐ Stomach (GI) Distress | ☐ Permanent loss of control:   Bowel and/or Bladder |
| ☐ Infection | ☐ Permanent need for life sustaining machinery or equipment |
| ☐ Permanent loss of mobility | *(Dialysis, Ventilator, Oxygen, Tracheotomy)* |
| ☑ Stroke and/or Heart attack | ☐ Loss of sense(s): *(please circle)* |
| ☐ Irreversible coma | hearing   sight   touch   taste   smell |
| ☐ Death | ☐ Impaired skin integrity: *(bed sores, scars, etc.,)* |
| ☐ Inability to fully evaluate, treat or diagnosis | ☐ Loss of body part(s) *(specify)* |
| ☐ Other _____ | ☐ Deterioration of Mental Status |

FRAUDFULLY ALTERED DOCUMENT
False entries added after it was witnessed.

☑ Patient education has been provided by nursing staff at the time of the refusal to ensure the inmate is making an informed refusal.

☑ ADC Health Services may seek reimbursement directly from the inmate for any money lost to outside clinics or hospitals for late cancellations as a result of this refusal.

☑ It has been fully explained to me the effect and nature of this treatment.  Although my failure to follow this advice may seriously imperil my life or health, I nevertheless refuse to submit to recommended treatment.  I assume full responsibility for the risks and consequences involved in my decision and specifically release the Arizona Department of Corrections from any and all liability for those risks and consequences.  I also understand, however, that at any time I change my mind, I may seek treatment again.

IM Refused to sign Refusal

☑ REASON FOR REFUSAL:  Forcing me to take both medications same time makes me dangerously dizzy

| Inmate Signature Refused to sign | Initials | Date | Time |
|---|---|---|---|
| Witness's Signature  W. ___ RN | | Date 4/2/14 | Time 1224 pm |
| Witness's Signature *(needed if inmate refuses to sign)*  Daniel Taylor  DANIEL TAYLOR RN | | Date 4.2.14 | Time 1224 |

INSTRUCTIONS: Make a checkmark in the box or boxes which apply to the refusal.  Where there are choices, circle the most appropriate answer.  If none of the choices or boxes are appropriate, write in the OTHER box the reason which applies.  Under the consequences section, check ALL areas which might apply as a consequence of refusing.  Consequences not listed can be written in the blank lines marked "OTHER".  Complete a SOAP note documenting all education given to the inmate.  IF THE CHARGE SECTION DOES NOT APPLY WRITE IN N/A.  A single witness is needed unless I/M refuses to sign form, then two witnesses are needed.  The second witness may be non-medical ADC staff.

| Inmate Name *(Last, First M.I.)* | ADC Number |
|---|---|
| Reed, Kenneth | 108264 |
| Date of Birth  2/9/48 | Facility/Unit  ASPC-Yuma (Cibola) |

SECTION 3, CONSENTS/REFUSALS

1101-4
12/19/12

# ATTACHMENT    E

## ARIZONA DEPARTMENT OF CORRECTIONS

**Inmate Grievance Appeal**

*(To be completed by staff member initially receiving appeal)*

| | |
|---|---|
| The inmate may appeal the Warden's, Deputy Warden's or Administrator's decision to the Director by requesting the appeal on this form. | Received by: _TRENO_ Title: _CPJ/_ Badge #: _____ Date: _8/7/14_ |

**PLEASE PRINT**

| Inmate's Name *(Last, First, M.I.)* | ADC No. | Date |
|---|---|---|
| Reed, Kenneth | 108264 | 8/7/14 |

| Institution | Case Number — UNKNOWN |
|---|---|
| Tucson/Winchester | (Grievance not answered; not otherwise told) C14-089-014 |

TO: **Charles L. Ryan, Director ADOC**

I am appealing the decision of **N/A (unanswered grievance being advanced)** for the following reasons:

The underlying medical grievance was submitted on June 23, 2014, and was forwarded to the Manzanita Unit for processing on June 26, 2014. According to DO 802.06 §1.1., Acting Facility Health Administrator ("FHA") T. Porter had 15 working days to respond. Because I am being kept from knowing the exact date upon which Acting FHA Porter received my grievance, I am being forced to guess that she would have received it on or about July 7, 2014, for to surmise; that the time for her to answer would have expired on July 28 2014. Having allowed a reasonable amount of time (one week) for an answer to reach me, and having not received one, I am invoking my right under DO 802.01 §1.10. to proceed to the next level of review.

| Inmate's Signature | Date | Grievance Coordinator's Signature | Date |
|---|---|---|---|
| Ken Reed | 8/7/14 | | |

| Response To Inmate By: | Location |
|---|---|

*Unprocessed per Corizon repeat or duplicate complaint*

| Staff Signature | Date |
|---|---|
| COIV — [signature] | 9-8-14 |

*Received rejected director-level appeal 0830 hours 9/12/14*

DISTRIBUTION:
INITIAL:   White & Canary - Grievance Coordinator
           Pink - Inmate
FINAL:     White - Inmate
           Canary - Grievance File

802-3P
2/14/00

**ARIZONA DEPARTMENT OF CORRECTIONS**

Inmate Grievance

| Received By CCIII Wood |
|---|
| Title CCIII |
| Badge Number | Date 6/23/14 |

Note: You may appeal the Grievance Coordinator's decision to the Warden/Deputy Warden/Administrator by filing form 802-3, within 10 calendar days of receipt of this notice.

| Inmate Name (Last, First M.I.) Reed Kenneth | ADC Number 108264 | Date 6/23/14 (transferred) |
|---|---|---|
| Institution/Facility Tucson/Manzanita Winchester | Case Number | |

To: Tamara Porter, Acting Facility Health Administrator, Tucson Complex

**Description of Grievance** (To be completed by the inmate)

A. Nature of Complaint

This is a medical grievance that is being submitted against Corizon, LLC, and medical staff at the Manzanita Unit for their failure to attend to my medical needs; see Department Order 802.06.

B. The Facts

In June of 2010 I was diagnosed as hypertensive. Since then I have been (as I am now) prescribed two medications to treat this condition: hydrochlorothiazide and enalapril maleate. However, these two medications have side effects. The hydrochlorothiazide is a diuretic which, because it stimulates the secretion of urine, causes the body to have to excrete these

<CONTINUED ON GF SUPPLEMENTS>

**Proposed Resolution** (What informal attempts have been made to resolve the problem? What action(s) would resolve the problem?)

A. Efforts to Resolve Problem

Submitted Inmate Informal Complaint Resolution dated June 9, 2014, to CO III F. Savin; see Exhibit 2. Received Inmate Informal Complaint Response dated June 12, 2014, from CO III Savin NOT resolving this problem; see Exhibit 3.

<CONTINUED ON LAST PAGE GF SUPPLEMENT>

| Inmate's Signature Ken Reed | Date 6/23/14 | Grievance Coordinator's Signature | Date |
|---|---|---|---|

| Action taken by ___ | Documentation of Resolution or Attempts at Resolution. |
|---|---|

| Staff Member's Signature | Badge Number | Date |
|---|---|---|

Initial Distribution - White and Canary - Grievance Coordinator;  Pink - Inmate
Final Distribution - White - Inmate;  Canary - Grievance File

802-1
12/19/12

ARIZONA DEPARTMENT OF CORRECTIONS

Inmate Grievance - GF Supplement

Grievance          Page 2 of 4

| Inmate Name *(Last, First M.I.)* | ADC Number | Institution/Facility | Case Number |
|---|---|---|---|
| Reed, Kenneth | 108264 | Tucson/Winchester ~~Manzanita~~ | |

Description of Grievance (continued)

B. The Facts (continued)

excessive quantities of urine being secreted which is called diuresis. And to accomodate my need to urinate more frequently than the average person — which the average correctional officer may not believe is urgent — I was previously issued a Duty/Special Needs Order which said, "IM needs access to bathroom at all times." Additionally, one or the other of these two medications, or, perhaps, both acting together are affecting my metabolism in some way that lowers my body temperature and causes me to feel cold nearly always. During the day I can dress more warmly and stay active; however, at night when I am inactive, I get so cold with only one blanket I cannot sleep past three or four o'clock in the morning. For nearly four years I have been living with this problem; and at every chronic care evaluation since April 19, 2011, I have complained about it repeatedly. But no provider has yet deigned to address this problem, always dismissing my complaint as attributable to "old age." Nevertheless, my medical chart shows 26 body temperature readings since I have been taking the hydrochloro-thiazide and enalapril maleate; only five at 98.6°F or above and all of the other 21 below normal.

On June 3, 2014, I submitted a Health Needs Request ("HNR") to request the issuance of a Duty/Special Needs Order which would provide that I not be denied access to toilet facilities and to have an extra blanket; Exhibit 1. However, without calling me in for an examination to assess my medical needs my request was summarily denied for several patently false or otherwise ridiculous reasons which their author failed to sign his or her name to:

1. "Chronic use of a diuretic does not cause diuresis."

That a diuretic causes diuresis is a no-brainer, even for a lay person. To say that a diuretic does not cause diuresis is ridiculously contradictory. Such a statement coming from a medical professional would not only be irresponsible, but evinces a gross lack of competence.

<CONTINUED ON NEXT PAGE GF SUPPLEMENT>

| Signature | Date |
|---|---|
| Ken Reed | (recd) 6/23/14   ~~6/19/14~~ (transferred) |

INITIAL DISTRIBUTION - GF Supplement - White and Canary - Grievance Coordinator, Pink - Inmate
FINAL DISTRIBUTION - White - Inmate, Canary - Grievance File

802-7
2/1/13

ARIZONA DEPARTMENT OF CORRECTIONS

Inmate Grievance - GF Supplement                    Grievance          Page 3 of 4

| Inmate Name (Last, First M.I.) | ADC Number | Institution/Facility | Case Number |
|---|---|---|---|
| Reed, Kenneth | 108264 | Tucson/~~Manzanita~~ Winchester | |

Description of Grievance (continued)

B. The Facts (continued)

2. "Requests are not supported by chart"

A bald-faced lie: See Duty/Special Needs Order dated April 24, 2013; and see also entries throughout medical chart showing 21 of 26 body temperature readings taken on and after June 29, 2010, as below normal.

3. "Last temperature 99.0° F"

Yes, this is true: The last temperature reading recorded in my chart was indeed 99.0°F on April 22, 2014, which according to my notes was slightly elevated because I was fighting off a cold. However, this person who wrote this unsigned comment was merely looking for an excuse to deny my request: He or she deliberately chose this one unusually high temperature reading from my chart as a cover-up rather than reveal the fact that 21 of the previous 25 temperature readings are abnormally low.

C. Actionable Claims

1. Fraud

The false reporting that my "Requests are not supported by chart" whereas my requests are fully supported by documents and data in my chart constitutes the tort of fraud.

2. Medical Malpractice

The summary dismissal of my request for those things that I am needing to mitigate the side effects of the medications that are being prescribed to me, without having conducted an examination of me or a thorough examination of my medical records, to make a reasoned assessment of my needs constitutes the tort of professional negligence which is otherwise known as medical malpractice.

⟨CONTINUED ON NEXT PAGE GF SUPPLEMENT⟩

| Signature | Date |
|---|---|
| Ken Reed | 6/23/14  ~~6/19/14~~ (Transferred) |

INITIAL DISTRIBUTION - GF Supplement - White and Canary - Grievance Coordinator, Pink - Inmate
FINAL DISTRIBUTION - White - Inmate, Canary - Grievance File

802-7
2/1/13

**ARIZONA DEPARTMENT OF CORRECTIONS**

Inmate Grievance - GF Supplement                    Grievance                    Page 4 of 4

| Inmate Name *(Last, First M.I.)* | ADC Number | Institution/Facility | Case Number |
|---|---|---|---|
| Reed, Kenneth | 108264 | Tucson, ~~Manzanita~~ Winchester | |

Description of Grievance (continued)

    C. Actionable Claims (continued)

        3. Constitutional Tort - Deliberate Indifference to Medical Needs

    The deliberate indifference to my serious medical needs violates rights which are secured to me under the Eighth and Fourteenth Amendments to the United States Constitution.

- - - - - - - - - - - - - - - - - - - - - - - - - - -

Proposed Resolution (continued)

    B. Action Which Would Resolve Problem

        1. Write Duty/Special Needs Order as I requested in my Health Needs Request dated June 3, 2014;

                OR

        2. Provide examination to assess medical needs and make suitable accommodations to mitigate side effects of prescribed medications.

\\ \\ \\ \\ \\ \\ \\ \\ \\ \\ \\ \\ END / / / / / / / / / /

| Signature | Date |
|---|---|
| Ken Reed | 6/23/14 |

INITIAL DISTRIBUTION - <u>Committee Recommendation</u> - All copies to Grievance Advisory Committee
FINAL DISTRIBUTION - White and Pink - Inmate, Canary - Grievance File

INITIAL DISTRIBUTION - <u>GF Supplement</u> - White and Canary - Grievance Coordinator, Pink - Inmate
FINAL DISTRIBUTION - White - Inmate, Canary - Grievance File

802-7P
2/14/00

ARIZONA DEPARTMENT OF CORRECTIONS

Health Needs Request (HNR)

Date: _____
Time: _____
Initials: _____

**SECTION/SECCION I**

| Inmate Name/Nombre (Last, First M.I.) (Apellido, Nombre, Inicial) | ADC Number/Número de ADC | Date/Fecha |
|---|---|---|
| Reed, Kenneth | 108264 | 6/3/14 |

| Cell/Bed Number/Celda/Número de Cama | Unit/Unidad | P.O. Box/Apartado Postal | Institution/Facility/Instalación: ASPC |
|---|---|---|---|
| 5A14L | Manzanita | 24400 | Tucson |

You are required to be truthful. Failure to be cooperative and any abuse of the health care system or its staff could cause a delay in delivery of care to you and others, and may result in disciplinary action (Use this form to describe only one problem or issue at one time). *[Se le exige diga la verdad. La falta de cooperación y cualquier abuso del sistema del cuidado de la salud o del personal podría retrasar la asistencia de este cuidado para usted y para otros y puede dar lugar a una acción disciplinaria (Use este formulario para describir un problema a la vez]*

**SECTION/SECCION II**

AREA OF INTEREST*(Check only one block below)*/AREA DE INTERES*(MARQUE UN ESPACIO SOLAMENTE)* ☒ Medical/Médica ☐ Dental ☐ FHA ☐ Pharmacy/Farmacia ☐ Mental Health/Salud Mental ☐ Eyes/Ojos ☐ Other *(specify)/Otros (especifique)* _____

[PLEASE PRINT! Describe your medical/dental treatment issue need in the space below. Be clear and specific. NO ADDED PAGES. ¡POR FAVOR, ESCRIBA EN IMPRENTA! Describa su tratamiento o necesidad médica/dental en el espacio de abajo. Describa claramente y sea específico. ¡NO USE MAS HOJAS!]

Rewrite Duty/Special Needs Order (expired)
due to side-effects of antihypertensive medications
1) Not to deny access to toilet   (diuresis)
2) Extra blanket   (hypothermia)

I understand that, per ARS 31-201.01, I will be charged a $4.00 Health Service fee *(excluding exemptions granted by statute)* for the visit that I am herein requesting. I further understand that by paying this fee I do not have the right to dictate treatment or who provides treatment. [Entiendo que de acuerdo con ARS 31-201.01 se me cobrará una cuota por el servicio médico de $4.00 por la cita que aquí estoy pidiendo *(excluyendo las exenoiones otorgadas por la ley)*. Además entiendo que al pagar esta cuota no tengo el derecho a imponer el tratamiento o quien lo proporcione.]

Inmate's Signature/Firma del prisionero   Ken Reed

REMOVE THE GOLDENROD COPY AND PLACE THE REMAINDER IN THE HEALTH NEEDS REQUEST DROP BOX[SEPARE LA COPIA DE COLOR AMARILLO OBSCURO Y DEJE LAS DEMAS EN EL BUZON PETICION DE NECESIDADES MÉDICAS]

**SECTION/SECCION III**

REFERRAL BY MEDICAL STAFF/REFERENCIA MEDICA ☐ Medical/Médica ☐ Dental ☐ Pharmacy/Farmacia ☐ FHA ☐ Mental Health/Salud Mental ☐ Eyes/Ojos ☐ Other/Otros *(specify) (especifique)*

Comments/Comentarios

To provider review

| Staff Signature Stamp/Firma del empleado | Date/Fecha | Time/Hora |
|---|---|---|
| | 6-04-14 | 0715 |

**SECTION/SECCION IV**

PLAN OF ACTION/PLAN DE ACCION   Chronic use of diuretic does not cause diuresis requests are not supported by chart documentation. Last temperature 99.0°F.   6-5-14 CP

| Staff Signature Stamp/Firma del empleado | Date/Fecha | Time/Hora |
|---|---|---|

Distribution: White/Blanca - Health Unit/Unidad de Salud, Canary, Pink & Goldenrod - Inmate/Amarillo Canario, Rosa y Amarillo Obscur - Prisonero

This document is a translation from original text written in English. This translation is unofficial and is not binding on this state or a political subdivision of this state. [Este documento es una traducción de texto original escrito en ingles. Esta traducción no es oficial y no compromete a éste estado ni una subdivisión política de este estado.]

Exhibit 11

1101-10ES
10/1/09

**ARIZONA DEPARTMENT OF CORRECTIONS**

Inmate Informal Complaint Resolution

*Complaints are limited to one page and one issue. NO ATTACHMENTS PERMITTED. Please print all information*

| Inmate Name (Last, First M I) | ADC Number | Institution/Unit | Date |
|---|---|---|---|
| Reed, Kenneth | 108264 | Tucson/Manzanita | 6/9/14 |

| To | Location |
|---|---|
| CO III Savio | Building 4, Manzanita Unit |

State briefly but completely the problem on which you desire assistance. Provide as many details as possible.

On June 3, 2014, I submitted a Health Needs Request ("HNR") to have a Duty/ Special Needs Order rewritten. However, on June 7, 2014 — without having been called in to be examined and to have my medical needs assessed by a provider — I received an <u>unsigned</u> response (presumably written my nursing staff) saying that my request was denied.

PROPOSED RESOLUTION:

A. Provide proper examination and assessment of medical needs, and

B. Write Duty/Special Needs Order as requested or as otherwise indicated by results of examination and assessment.

| Inmate Signature | Date |
|---|---|
| Ken Reed | 6/9/14 |

Have You Discussed This With Institution Staff?   ☐ Yes   ☐ No

If Yes, give the staff member Name:   CO II Smith 5589   06/09/14

Distribution   Original - Inmate
Copy - Grievance Coordinator File

802-11(e)
12/19/12

Exhibit 2

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Informal Complaint Response**

| | For Distribution:  Copy of Corresponding Inmate Informal Complaint Resolution must be attached to this response. |
|---|---|

| Inmate Name (Last, First M.I.) | ADC Number |
|---|---|
| Reed, Kenneth | 108264 |

| Institution/Unit |
|---|
| ASPC-TUCSON MANZANITA |

| From | Location |
|---|---|
| CO III SAVIO | ASPC-TUCSON MANZANITA |

In response to your informal resolution dated 06/09/14 in which you claim was unsigned by the provider and denied. The section below was not signed but I have spoken to Nursing Supervisor Watson at Manzanita medical who advised me that your Health Needs Request was answered and denied on 06/05/14 but was signed after the comment ( Chronic use of as directed does does not cause durress request are not supported by chart documentation last temperature 99.0 dated 06-05-14.) the signiture could not be verified. Also after her review again she has also denied your request for a special needs request for (1) Not to Deny access to toilet, (2) Extra blanket. Your had a previous special needs order was from 04/12/13 to 04/12/14.

| Staff Signature | Date |
|---|---|
| | 06/12/14 |

Distribution:    Original - Inmate
Copy – Grievance Coordinator File

802-12(e)
12/19/12

Exhibit 3

# ATTACHMENT  F1

| | Treatment Plans | OPR:<br>Medical Program Manager /<br>Nursing Program Manager |
|---|---|---|
| Arizona Department of Corrections | | Auth: |
| Health Services Technical Manual | HSTM<br>Chapter 5<br>Section 1.4. | Supersedes: HSTM 5.1.4.<br>June 15, 2008<br>Effective Date:<br>January 1, 2010 |

**REFERENCES:**     ARIZONA REVISED STATUTES 36-201.01 (G)
                    DEPARTMENT ORDER 1101
                    NCCHC STANDARD: P-G-01

**PURPOSE:**  To insure that inmates with chronic conditions or conditions that require regular visits receive ongoing multidisciplinary care.

**RESPONSIBILITY:**  It is the responsibility of the health care provider to develop an individualized treatment plan at the time of diagnosis.  It is the responsibility of the Medical Records Librarians to provide data regarding tracked conditions to provider staff for performance of required health care.

1.0.    <u>Identification at Reception</u> of inmates requiring ongoing care.
1.1.    Reception personnel will complete the screening process immediately upon arrival to the facility to include a medical history.  A physical examination  will be done within the first seven days after arrival of the inmate.  Screening tests for tuberculosis (PPD) must be completed.  Immediate health care needs must be identified and addressed.  All chronic conditions and conditions that require ongoing care are to be identified on the problem list.
1.2.    Mental Health will complete initial evaluations and assign needs scores in accordance with their policies.

2.0.    <u>Periodic examinations</u>
2.1.    All inmates over 55 years of age will be offered an annual physical examination.
2.2.    All inmates with chronic conditions or other monitored conditions will have an annual physical.
2.3.    Inmates with chronic or monitored conditions will be examined at least every six months.  Diabetic inmates will be seen at least once a quarter.  A treatment plan must be documented.

3.0.    Inmates who have been identified with chronic or monitored conditions will have a <u>treatment plan</u> that includes:
-       Frequency of follow-up examinations.

166

- Type and frequency of diagnostic testing.
- Therapeutic medications and modalities.
- Patient education given.

4.0.    Every inmate will have a <u>Problem List</u> which is used by the provider to:
-    Record all chronic conditions.
-    List special care needs required due to altered mental states.
-    Identify those patients having physical impairments such as:  Loss of hearing or sight; Mobility issues; ADA accommodations needed; Positive PPDs and treatment completed date.
-    Record provider determined changes to status
4.1    The provider is responsible for the accuracy and updating of this form.
4.2.    Problems shall be numbered on the left margin as they are entered.  The numbering system is to be used to aid in referring to individual problems when documenting a visit. When/if a problem listed is resolved; the provider will make an entry indication resolution of the issue.  That entry will be dated and initialed by the provider.  The problem list will <u>not</u> be renumbered.
4.3.    When a provider reviews the problem list the date of review will be entered in pencil and initialed in pencil in the lower right corner of the form.

5.0    <u>Master List of chronic conditions</u>
5.1.    A data base of all chronic conditions will be maintained by Health Services in accordance with this Manual and A.R.S. 36-201.01 (G), and Department Order 1101.
5.2    Medical records staff at each facility will provide a list (that has been derived from the Monitored Care Database) of inmates needing follow-up care to the medical units.
5.3    Date of the next appointment for chronic clinics will noted on the inter-facility transfer summary and on the appointment flow sheet in each medical record.

ATTACHMENT   F2

| | Non-Emergency Health Issues | OPR:<br>Medical Program Manager &<br>Nursing Program Manager |
|---|---|---|
| Arizona Department of Corrections | | Auth: gg |
| Health Services Technical Manual | HSTM<br>Chapter 5<br>Section 3.0. | Supersedes:<br>HSTM 5.3.0. dtd<br>June 15, 2008<br>Effective:<br>January 1, 2010 |

**REFERENCES:**     Arizona Revised Statutes. 31-201.01.
NCCHC STANDARD P-A-01
NCCHC STANDARD P-E-01
NCCHC STANDARD P-E-04
NCCHC STANDARD P-E-07
NCCHC STANDARD P-G-01

**PURPOSE:**  To provide general description of the responsibilities for providing periodic health care to those in the inmate-patient population who do not require emergent attention.

**RESPONSIBILITY:**  It is the responsibility of the FHA to ensure that healthcare is provided in a timely fashion.  It is the responsibility of the Operations staff to ensure that inmates are not impeded in their efforts to access healthcare services.

**1.0**  Non-emergency Health Needs:
1.1. Non-emergency service requests are generated by a Health Needs Request.  Also, services may be provided on a routine scheduled basis for an identified Chronic Care condition.
1.2.  Sick Call and appointment treatment and care must comply with the plan of care response entered into section IV of the HNR.

**2.0.**  Medical and Mid-Level Provider Line
2.1.  When treating inmates during scheduled appointments with Health Care Professionals, more than one medical issue or complaint may be addressed as found to be clinically necessary in accordance with the determination of the provider.
2.2. Chronic Condition/Chronic disease is an illness or condition that affects an individual's well-being for an extended interval, and generally is not curable, but can be managed to provide optimum functioning within any limitations the condition imposes on the individual.
a.  Inmates with a designated Chronic Condition as defined in DO 1101,

176

(e.g., Diabetes, Hypertension, Cardiac Disease, TB/positive PPD, COPD/Asthma, Seizure, HIV/AIDs, or Cancer) will be scheduled routinely 3 to 12 months based upon current guidelines and health status for a chronic condition evaluation.

3.0. Nurses' Line
3.1.  Nurses' Line will be held for follow-up encounters as ordered by the  Provider as well as routine services such as annual TB testing, vital sign checks, educational services, and wound care.
3.2.     Nurses line will not be canceled except for security reasons.  When canceled or disrupted for security reasons, the Nursing staff will immediately review scheduled inmates main complaint. If determined that delay would jeopardize the health of specific inmates, the supervising CRNS shall coordinate with the Major of Security/Shift Commander to arrange to examine and treat the inmate(s) if at all possible within the bounds of safety.

4.0  Periodic Medical Appointments
4.1.  Nursing staff have the responsibility to schedule a. routine follow-up; and  Chronic Care visits for the inmate population; and  routine lab work; and physical exams in accordance with current policies.

5.0.  Physical Examinations:
5.1.  Chronic Condition: The unit provider is responsible to ensure that physical examinations are conducted on inmates who have been identified and documented as having a chronic condition (as defined by Department Order 1101) at their scheduled chronic condition clinic appointment with the medical provider.   The senior nursing staff member on each unit will ensure that these inmates are scheduled to receive an annual physical at their scheduled appointment with the medical provider.

5.2.  Inmates 55 years of age or older: the senior nursing staff member on each unit will schedule inmates who are 55 years of age or older to have an annual physical examination by a medical provider.  Those inmates who are 55 years of age and older shall be identified via computer print-out obtained from Medical Records personnel for yearly Physical Examination.

5.3.  Inmates under 55 years of age without a chronic condition: inmates will be scheduled for a physical examination following submission of an HNR.  This visit will require charging of the authorized co-pay amount in accordance with Department Orders.

6.0.     Special Physical Examinations:
6.1     Inmates who have been identified to be assigned as Food Service/Kitchen Workers must be medically cleared prior to assignment to the position in accordance with specifications of the Food Service Technical Manual.   Known HIV positive inmates shall not be cleared for assignment to a kitchen.   Food Service staff/inmate workers with any contagious illnesses are not to be allowed to work in any capacity that may present a health threat to the food service operation and that hygienic food-handling practices are followed.  All cleared inmates are considered cleared for kitchen duty as they move from complex to complex unless a medical entry has been made in the AIMS database.

6.2.     These inmates will be identified to the unit's medical staff by the WIPP or CO III. Health Services staff shall review the medical record (or perform a physical examination if the record indicates a need for a face to face evaluation) to ensure there is no danger posed by the inmate's performance of the assigned duty.

Written and otherwise prepared for filing this 20th day of January, 2015.

*Kenneth W Reed*
Kenneth W. Reed
Class Member Plaintiff *Pro Se*

## CERTIFICATE OF FILING AND SERVICE

Given to prison mailroom personnel this date for mailing, in accordance with prison policy and established institutional procedures, will be an envelope which will contain, possibly among other things, the original and two copies of the foregoing Objections and Comments, and which is correctly addressed to the Clerk of the United States District Court for the District of Arizona. Plaintiff intends for, and expects that the Clerk of Court will file this original document upon receipt, deliver a copy to the assigned judge, and return to him the extra copy, conformed.

Also given to prison mailroom staff this date for mailing, in accordance with prison policy and established institutional procedure, will be another twelve envelopes which will each contain one copy of the foregoing Objections and Comments, and which are each separately addressed to:

Mr. Thomas C. Horne
Arizona Attorney General
Office of the Arizona Attorney General
1275 W. Washington St.
Phoenix, AZ 85007-2926
Attorney for Defendants

Mr. Michael P. Struck et al.
Attorneys at Law
Struck, Weineke & Love, P.L.C.
3100 W. Ray Rd., Suite 300
Chandler, AZ 85226
Attorneys for Defendants

Ms. Sarah Kader, Mr. Asim Varma & Ms. Brenna Durkin
Attorneys at Law
Arizona Center for Disability Law
5025 E. Washington St., Suite 202
Phoenix, AZ 85034
Attorneys for Plaintiff Arizona Center for Disability Law

Mr. Jose de Jesus Rico and Ms. Jessica Janespar Ross
Attorneys at Law
Arizona Center for Disability Law
100 N. Stone Ave., Suite 305
Tucson, AZ 85701
Attorneys for Plaintiff Arizona Center for Disability Law

Mr. Donald Specter et al.
Attorneys at Law
Prison Law Office
1917 Fifth Street
Berkeley, CA 94710
Attorneys for Plaintiff Class

Mr. Daniel C. Barr et al.,
Attorneys at Law
Perkins Coie, L.L.P.
2901 N. Central Ave., Suite 2000
Phoenix, AZ 85012
Attorneys for Plaintiff Class

Messrs. Daniel Pochoda and James D. Lyall
Attorneys at Law
ACLU Foundation of Arizona
3707 N. 7th Street, Suite 235
Phoenix, AZ 85013
Attorneys for Plaintiff Class

Mr. David C. Fathi, Ms. Amy Fettig & Mr. Ajmel Quereshi
Attorneys at Law
ACLU National Prison Project
915 15th Street N. W., 7th Floor
Washington, DC 20005
Attorneys for Plaintiff Class

Ms. Caroline Mitchell, Mr. Amir Q. Amiri & Ms. Dara Levinson
Attorneys at Law
Jones Day
555 California St., 26th Floor
San Francisco, CA 94104
Attorneys for Plaintiff Class

Messrs. John L. Wilkes and Taylor Freeman
Attorneys at Law
Jones Day
717 Texas Street
Houston, TX 77002
Attorneys for Plaintiff Class

Ms. Kamilla Mamedova & Ms. Jennifer Messina
Attorneys at Law
Jones Day
222 E. 41 Street
New York, NY 10017
Attorneys for Plaintiff Class

Mr. Kevin Brantley
Attorney at Law
Jones Day
3161 Michelson Dr., Suite 800
Irvine, CA 92612
Attorney for Plaintiff Class

By: _Kenneth W Reed_

Date: January 26, 2015