FILED

FOR PUBLICATION

APR 21 2015

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| VICTOR ANTONIO PARSONS; SHAWN JENSEN; STEVE SWARTZ; DUSTIN BRISLAN; SONIA RODRIGUEZ; CHRISTINA VERDUZCO; JACKIE THOMAS; JEREMY SMITH; ROBERT CARRASCO GAMEZ, Jr.; MARYANNE CHISHOLM; DESIREE LICCI; JOSEPH HEFNER; JOSHUA POLSON; CHARLOTTE WELLS; ARIZONA CENTER FOR DISABILITY LAW, | No. 13-16396<br><br>D.C. No. 2:12-cv-00601-NVW<br>District of Arizona,<br>Phoenix |
| Plaintiffs - Appellees, | ORDER |
| v. | |
| CHARLES L. RYAN and RICHARD PRATT, | |
| Defendants - Appellants. | |

Before: REINHARDT, NOONAN, and WATFORD, Circuit Judges.

The panel voted to deny the petition for rehearing en banc; the petition was subsequently withdrawn. The full court was so notified.

A judge then requested a vote on whether to rehear the matter en banc.  The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc reconsideration.  FED. R. APP. P. 35.

Judge Ikuta's dissent from denial of rehearing en banc is filed concurrently with this Order.

The mandate shall issue forthwith.

FILED

APR 21 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Parsons v. Ryan*, No. 13-16396

IKUTA, Circuit Judge, with whom KOZINSKI, O'SCANNLAIN, CALLAHAN, BEA, and M. SMITH, Circuit Judges, join, dissenting from the denial of rehearing en banc:

The Supreme Court has established two straightforward principles that are applicable to this appeal.  First, before certifying a class, a court must ensure that all members of the potential class have the same sort of claim, and that the claim is susceptible to classwide resolution.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Second, a prisoner does not have an Eighth Amendment claim merely because the prisoner is incarcerated in a prison with a defective medical system.  *See Lewis v. Casey*, 518 U.S. 343, 349–51 (1996); *cf. Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Today, the court turns its back on both of these principles by leaving in place the opinion of a three-judge panel that affirms the certification of a class consisting of *every one* of the 33,000 prisoners incarcerated in the Arizona prison system on the theory that each of those prisoners has a common claim for an Eighth Amendment violation.  I dissent from our failure to

1

take this opinion en banc in order to vacate it.[1]

The preliminary record in this case reveals serious systemwide problems with healthcare in the Arizona prison system.  But the record does not establish that every one of the 33,000 prisoners in the Arizona prisons has a serious medical need, *see Estelle*, 429 U.S. at 104–06, and faces a similar substantial risk of serious harm due to defendants' alleged deliberate indifference to this need, *see Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  Rather, the evidence in the record shows a diverse group of prisoners with different health conditions and needs who require different levels of medical care.  While all prisoners in some sense are exposed to the same systemic inadequacies of the Arizona prisons' medical facilities, that exposure alone does not give rise to an Eighth Amendment claim.  *See Estelle*, 429

---

[1]After the panel issued its opinion in this case, but before the mandate issued, the Arizona Department of Corrections (ADC) and the certified class of prisoners settled the substantive dispute underlying the interlocutory appeal of the class certification order.  Specifically, the ADC agreed to implement a detailed remedial program to correct deficiencies in the medical, dental, and mental health care available in its prison facilities.  After the district court approved this settlement, the ADC moved for the panel to vacate its opinion.  The panel denied this motion.  Order Denying Motion for Vacatur, *Parsons v. Ryan*, No. 13-16396 (9th Cir. Feb. 26, 2015), ECF No. 72.  Although we can no longer use en banc review to correct the errors in the opinion because the case became moot before the mandate had issued, we can vacate the decision to avoid having the panel's serious misinterpretations of Supreme Court Eighth Amendment and class action jurisprudence become the law of our circuit.  *See United States v. Payton*, 593 F.3d 881, 886 (9th Cir. 2010).

U.S. at 103; *see also Lewis*, 518 U.S. at 349–51.

Despite the lack of any support in the record, the panel nevertheless affirms the certification of this diverse class of prisoners—even though not all members of the class have an Eighth Amendment claim, let alone a common claim—in defiance of *Dukes*, *Lewis*, and the Supreme Court's Eighth Amendment jurisprudence. *See Dukes*, 131 S. Ct. at 2551; *Lewis*, 518 U.S. at 349–51; *Wilson v. Seiter*, 501 U.S. 294, 297–300 (1991); *Estelle*, 429 U.S. at 104–06; *Farmer*, 511 U.S. at 832–34. The panel also creates a circuit split with the Third Circuit. *See Rouse v. Plantier*, 182 F.3d 192 (3d Cir. 1999) (Alito, J.). By refusing to vacate this opinion and thereby designating it as the law of our circuit, the court endorses a view of the Eighth Amendment and class actions that is at odds with the binding authority of the Supreme Court.

## I

Thirteen inmates in custody throughout the Arizona prison system brought a class action suit (under Rule 23 of the Federal Rules of Civil Procedure) against senior officials in the Arizona Department of Corrections (ADC) in March 2012. *Parsons v. Ryan* (*Parsons II*), 754 F.3d 657, 662–63 (9th Cir. 2014). They alleged that through its various systemwide practices and policies regarding prisoners' medical, dental, and mental health care, the ADC is "deliberately indifferent" to the

resulting "significant injury and substantial risk of serious harm" to all prisoners in

violation of the Eighth Amendment.  Dist. Ct. Dkt. 1 (Complaint) ¶ 26.  The

prisoners identified ten such practices, "including inadequate staffing, outright

denials of care, lack of emergency treatment, failure to stock and provide critical

medication, grossly substandard dental care, and failure to provide therapy and

psychiatric medication to mentally ill inmates," *Parsons II*, 754 F.3d at 663, and

provided several examples that illustrated how the practices inflicted harm on

individual prisoners, *see id.* at 664–67 & nn.5–9.  As one would expect in a class

so large, the different injuries alleged varied widely depending on the specific

medical needs of each prisoner.  For instance, prisoners with chronic health

problems alleged they were given incorrect or expired medications; prisoners with

acute medical needs alleged they did not receive timely emergency services;

prisoners with dental needs alleged they were denied necessary permanent fillings

or other dental treatment; and prisoners with mental health needs alleged they did

not receive the monitoring and treatment they required due to inadequate staffing.

*Id.*

Plaintiffs moved to certify a class consisting of all approximately 33,000

prisoners in the ten ADC prisons.  *Id.* at 662–63; Dist. Ct. Dkt. 1 ¶¶ 101–02.  They

supplemented their allegations in the complaint with a number of documents

4

obtained from the ADC in discovery.  These documents included internal reviews and exchanges between ADC officials and independent contractors that revealed serious dysfunction in the ADC healthcare system.  *See Parsons II*, 754 F.3d at 668–69.  In addition, plaintiffs submitted four expert reports that criticized the ADC's healthcare system.  *Id.* at 669–72.  The experts offered their opinion that the practices and policies placed four specific groups of prisoners at substantial risk of serious harm:  (1) prisoners who require medical care, (2) prisoners who need dental care, (3) prisoners who require mental health care, and (4) prisoners in solitary confinement.  *Id.*

The district court concluded that Rule 23(a)'s threshold requirements of numerosity, commonality, typicality, and adequacy of representation[2] were each met and certified a class of all 33,000 prisoners.[3]  *Parsons v. Ryan* (*Parsons I*), 289

---

[2]Rule 23(a) of the Federal Rules of Civil Procedure provides:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

[3]The district court also certified a subclass of approximately 3,000 prisoners

(continued...)

5

F.R.D. 513, 516, 520–25 (D. Ariz. 2013).  The panel agrees, reasoning that
plaintiffs "identified questions of law or fact common to the class," because
plaintiffs had alleged a cognizable Eighth Amendment theory that "ADC policies
and practices of statewide and systemic application expose all inmates in ADC
custody to a substantial risk of serious harm."  *Parsons II*, 754 F.3d at 675–76.
The panel describes how the identified ADC policies and practices are "the 'glue'
that holds together the putative class and the putative subclass; either each of the
policies and practices is unlawful as to every inmate or it is not."  *Id.* at 678.
Because the plaintiffs identified ADC healthcare policies that applied throughout
the prison system, the panel distinguishes *Dukes* on the ground that the plaintiffs
there had failed to establish a systemwide policy that affected each member of the
class.  *Id.* at 681 (claiming that unlike *Dukes*, this case "looks to whether current
conditions in ADC facilities create a risk of future harm, not to the varied reasons
for millions of decisions made in the past").

In short, the panel:  (1) identifies systemic problems with aspects of the
ADC healthcare system, (2) claims that such problems violated all prisoners'

[3](...continued)
in isolation units.  *Parsons I*, 289 F.R.D. at 516, 525.  Because plaintiffs alleged
and produced evidence of a number of practices and policies specific to the
isolation units, *Parsons II*, 754 F.3d at 671–72, the certification of that subclass
does not raise the concerns I discuss here.

Eighth Amendment rights because all prisoners are exposed to the same system, and (3) accordingly holds that this common hazard could be resolved by a common answer, namely, by deciding whether the ADC's healthcare system violates the Constitution.  In reaching this conclusion, the panel misunderstands both Rule 23 and the Eighth Amendment.

## II

Because a class action "merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010), it is necessary to understand the Supreme Court's explanation of both the law of class certification and the framework for the underlying Eighth Amendment claim.

## A

Rule 23 of the Federal Rules of Civil Procedure is a procedural rule that permits courts to aggregate the legal claims of multiple parties into a class action when it is efficient and fair to do so.  *See Dukes*, 131 S. Ct. at 2551 n.5; *Shady Grove*, 559 U.S. at 408.  Because it is no more than a claim aggregation device, Rule 23 has no effect on the substance of the claims or plaintiffs' burden of proof, *see* 28 U.S.C. § 2072(b); *Dukes*, 131 S. Ct. at 2561 (recognizing that "the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any

7

substantive right'"), and consequently each member in a class must have a potentially viable claim.

Because the purpose of Rule 23 is efficiency, class certification under Rule 23 is appropriate only when a large number of plaintiffs share similar potentially viable claims whose "truth or falsity" can be resolved one way or the other "in one stroke," thus making a single suit more efficient than multiple ones. *Dukes*, 131 S. Ct. at 2551. That is what Rule 23(a)(2) means when it requires plaintiffs to show that "there are questions of law or fact common to the class."[4] *Id.* at 2550–51. Put another way, a class lacks the necessary cohesion if a single answer will not "resolve an issue that is central to the validity of each one" of the class members' claims. *Id.* at 2551.

To assess whether the class is sufficiently cohesive to satisfy Rule 23(a)(2), a court must conduct a "rigorous analysis" to determine whether the evidence and law support the plaintiffs' commonality theory. *Id.* The commonality analysis will often overlap with plaintiffs' merits contentions. *Id.* at 2551–52. In this case,

---

[4]The key issue in this case is plaintiffs' failure to establish commonality. Because the panel's analysis of the typicality question shares the same infirmities as its commonality analysis, *see Parsons II*, 754 F.3d at 685–86; *see also Dukes*, 131 S. Ct. at 2551 n.5 (noting that the typicality and commonality inquiries "tend to merge" (internal quotation marks omitted)), this dissent focuses solely on the commonality analysis.

plaintiffs' underlying claim and theory of commonality is that the ADC's defective healthcare system is violating or will violate the Eighth Amendment rights of every prisoner. *Parsons II*, 754 F.3d at 681. So the question becomes whether every prisoner has a potential Eighth Amendment claim, whether those claims raise a common question that is central to the validity of each claim, and whether that question can be answered "yes" or "no" in one stroke.

## B

To assess whether plaintiffs have satisfied Rule 23(a)(2), it is necessary to understand when a prison healthcare problem rises to the level of an Eighth Amendment violation.

As the Supreme Court has explained, "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Farmer*, 511 U.S. at 837. An alleged denial of adequate healthcare may amount to the "'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment," *Estelle*, 429 U.S. at 104 (citation omitted), only if a prisoner can show that: (1) the prisoner had a "serious medical need[]," *id.*; (2) the official was deliberately indifferent to that need, *id.*, and (3) as a result, the prisoner faced a "substantial risk of serious harm," *Farmer*, 511 U.S. at 834. Deliberate indifference means the official was "aware of facts from which the

9

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The Supreme Court has made clear that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105.  In *Estelle* for instance, a prisoner alleged that he suffered a disabling back injury and incapacitating pain that was exacerbated when the prison authorities failed to adequately diagnose or treat his condition, *id.* at 98–101, 107; in short, it was "a crude attempt to challenge the system of administering medical care in the prison" where the prisoner was confined, *id.* at 109 (Stevens, J., dissenting).  The majority rejected this claim, stating that "[a]t most" the allegedly inadequate treatment the prisoner received amounted to "medical malpractice," not "cruel and unusual punishment." *Id*. at 107.

Since then, the Supreme Court has clarified that an Eighth Amendment violation does not arise merely by being incarcerated in a prison with defective systems. *See Lewis*, 518 U.S. at 349–51.  In *Lewis*, 22 inmates of various Arizona prisons brought a class action "on behalf of all adult prisoners who are or will be incarcerated" by the ADC on the ground that the ADC's substandard library and legal support programs deprived the prisoners of their constitutional "rights of

10

access to the courts and counsel." *Id.* at 346.  The district court agreed and entered

a detailed injunction requiring the ADC to make "sweeping changes" at both a

macro and micro level to the challenged system. *Id.* at 347–48.

The Supreme Court reversed, finding that the prisoners' allegations

regarding the inadequacies of the prison's legal program failed to meet the

"constitutional prerequisite" that these inadequacies had caused them "actual

injury." *Id.* at 349, 351 (explaining that the requirement that a prisoner "must

show actual injury" to sufficiently allege a constitutional violation "derives

ultimately from the doctrine of standing, a constitutional principle that prevents

courts of law from undertaking tasks assigned to the political branches").  The

Court noted that the distinction between the role of the courts and that of the

political branches of government "would be obliterated if, to invoke intervention of

the courts, no actual or imminent harm were needed, but merely the status of being

subject to a governmental institution that was not organized or managed properly."

*Id.* at 350.  The Court concluded that merely being a prisoner in an institution with

a defective legal assistance program or library does not constitute actual or

imminent harm. *See id.* at 351.  Rather, the prisoner would have to "go one step

further and demonstrate that the alleged shortcomings in the library or legal

assistance program hindered his efforts to pursue a legal claim." *Id.*

11

Critically, the Court analogized a prison's legal system to a prison's healthcare system, and noted that merely being a prisoner in an institution with a defective medical care system did not constitute an actual injury or raise a constitutional claim. *Id.* at 350. Because *Estelle* established no constitutional right to a prison hospital, "a healthy inmate who had suffered no deprivation of needed medical treatment" could not "claim violation of his constitutional right to medical care, simply on the ground that the prison medical facilities were inadequate." *Id.* (citation omitted). Otherwise, courts would be usurping the responsibility of ensuring adequate medical care in prisons, which would erase "the essential distinction between judge and executive." *Id.*

Although the Court in *Lewis* did not have to analyze whether the district court had erred in certifying the class of prisoners, *Lewis* explicitly relied on *Estelle* to confirm that a claim "that the prison medical facilities were inadequate" does not by itself establish deliberate indifference to a substantial risk of serious injury. *Id.* As the Court elsewhere explained, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation" can be identified. *Wilson*, 501 U.S. at 305. The Eighth Amendment requires a prisoner to articulate how a particular deficit creates a substantial risk of serious harm in light of the serious medical needs of that prisoner or group of

12

prisoners.  *See Estelle*, 429 U.S. at 104.

III

Putting the Eighth Amendment and Rule 23 frameworks together, the plaintiffs here must establish that each prisoner in Arizona (the proposed class) has an Eighth Amendment deliberate indifference claim raising a common question that can be resolved "in one stroke." *Dukes*, 131 S. Ct. at 2551.  But all Arizona prisoners do not share a common Eighth Amendment claim for at least two reasons.

A

First, the proposed class here includes healthy prisoners who, under *Lewis*, cannot assert an Eighth Amendment claim merely because they are housed in an institution with a defective medical system.  *See* 518 U.S. at 349–51; *see also Parsons II*, 754 F.3d at 678–79 (acknowledging that the proposed class includes prisoners who are currently healthy).  Because the proposed class includes healthy prisoners who have no claim, there is no commonality.

The panel holds that even healthy prisoners, who are not presently in need of medical, dental, or mental health treatment, may become ill at some point in their incarceration and therefore have the same Eighth Amendment claim as each of their fellow inmates.  *Parsons II*, 754 F.3d at 678–79 (claiming that any prisoner

13

"could easily fall ill, be injured, need to fill a prescription, require emergency or specialist care, crack a tooth, or require mental health treatment").  But this risk is too attenuated for an Eighth Amendment claim.  *See Farmer*, 511 U.S. at 834 (holding that an Eighth Amendment deliberate indifference claim requires an "objectively, sufficiently serious" deprivation and the prison officials must "have a sufficiently culpable state of mind" in being deliberately indifferent to such deprivation (internal quotation marks omitted)); *Estelle*, 429 U.S. at 104 (holding that a deliberate indifference claim requires a "serious medical need[]").  If a plaintiff who is the victim of medical malpractice due to a poorly functioning prison healthcare system does not have an Eighth Amendment claim, *Estelle*, 429 U.S. at 107, a plaintiff who is in perfect health with no need for medical assistance does not have one either.  Indeed, the panel's broad and loose formulation of the common claim (because all prisoners may have medical needs in the future, the defective medical system creates a substantial risk of serious injury to each prisoner) is equally applicable to any prison condition: under the panel's theory, for example, because all prisoners may at some point in the future want to bring a legal claim, a subpar legal assistance program violates the constitutional rights of each prisoner.  This was the very approach rejected in *Lewis*.

To avoid this fatal flaw in the class, the panel theorizes that the prisoners

14

here are bringing a different type of Eighth Amendment claim altogether: an institutional reform Eighth Amendment claim. *See Parsons II*, 754 F.3d at 676. According to the panel, while a prisoner can bring an Eighth Amendment claim because "the care provided on any particular occasion to any particular inmate (or group of inmates) was insufficient," both the Supreme Court and our court have recognized that prisoners can also bring an institutional reform Eighth Amendment claim when a prison system's "policies and practices of statewide and systemic application expose all inmates . . . to a substantial risk of serious harm." *Id.*

Although the panel asserts that "[t]his kind of claim is firmly established in our constitutional law," *id.*, none of the cases cited by the panel discusses or recognizes an institutional reform Eighth Amendment claim that has different elements than those set forth in *Farmer v. Brennan*. *Brown v. Plata*, 131 S. Ct. 1910 (2011), upon which the panel relies, did not adjudicate an Eighth Amendment claim or consider the appropriate scope of a class action. Rather, *Plata* examined whether a three-judge panel had exceeded its authority in issuing a remedial order under the Prison Litigation Reform Act of 1995 (PLRA) in two consolidated cases, *Coleman v. Brown* (involving a class action by the class of seriously mentally ill persons in California prisons) and *Plata v. Brown* (involving the class of state prisoners with serious medical conditions in which the state "conceded that

15

deficiencies in prison medical care violated prisoners' Eighth Amendment rights"). *Id.* at 1922–23, 1926.  But even if the class certification issue had been before the Court, *Plata* involved the certification of two discrete classes:  those prisoners with "serious mental disorders," and those with "serious medical conditions."  *Id.* at 1922.  These discrete classes may have sufficiently similar serious medical needs to meet the standard in *Farmer* in a way the proposed class here does not.

The panel also points to Supreme Court and Ninth Circuit cases which it argues held that institutional reform claims were separate, and had different elements, than individual Eighth Amendment claims.  *Parsons II*, 754 F.3d at 677 (citing *Helling v. McKinney*, 509 U.S. 25 (1993); *Graves v. Arpaio*, 623 F.3d 1043 (9th Cir. 2010); and *Wallis v. Baldwin*, 70 F.3d 1074 (9th Cir. 1995)).  But none of these cases addressed the panel's "two-types-of-Eighth Amendment claims" theory.  Prisoners who are exposed to a disease-causing agent, such as second-hand smoke, *Helling*, 509 U.S. at 35, asbestos-containing material, *Wallis*, 70 F.3d at 1076–77, or high temperatures that induced heat-related illness in pretrial detainees taking psychotropic medications, *Graves*, 623 F.3d at 1049–50, may meet the standard in *Farmer* and can bring such an Eighth Amendment claim.  But the prisoners in this case are exposed only to the ADC's policy, which is not alleged to be itself pathogenic, and is insufficient to constitute an Eighth Amendment

violation in light of *Lewis*.  Accordingly, because the proposed class here includes

healthy prisoners who do not have an Eighth Amendment claim (or a nonexistent

institutional reform Eighth Amendment claim), it does not meet Rule 23's

commonality requirement under *Dukes*.

### B

Second, the panel's attempted formulation of a common Eighth Amendment

claim fails because even those prisoners who are not healthy do not have the

sufficiently similar serious medical needs necessary to raise a common Eighth

Amendment issue under *Dukes*.  The expert testimony, which the panel cites at

length, *Parsons II*, 754 F.3d at 669–72, shows only that a range of inmates with

different medical needs may be able to demonstrate deliberate indifference to a

substantial risk of serious harm based on a range of different policies.  Dr. Cohen, a

prison healthcare expert, identified a number of medical care practices that pose "a

substantial risk of serious harm *to prisoners who require medical care*." *Id.* at 669

(emphasis added).  No evidence established that all prisoners presently require

medical care.  Similarly, Dr. Stewart, an expert in correctional mental health care,

opined that ADC mental health practices give rise to "a substantial risk of serious

harm *to prisoners who require mental health care*."  *Id.* at 671 (emphasis added).

Again, not all prisoners presently require mental health care.  Moreover, because

17

the prisoner with severe depression and the prisoner with a cavity require different levels of care, the former may receive care inconsistent with Eighth Amendment requirements (and thus have an Eighth Amendment claim) while the latter does not.

Because of the diversity of needs of prisoners, a more targeted analysis is required to determine whether a particular policy manifests deliberate indifference to a specific type of medical (or dental or mental health) need.  And so the question of whether the ADC's conduct violates the Eighth Amendment rights of these prisoners cannot be answered in a single stroke, because there can be no common answer to questions regarding the seriousness of the medical need and the adequacy of the care for the full range of prisoners.  The panel's attempted formulation of a question common to all classes of prisoners (whether "ADC policies and practices of statewide and systemic application expose all inmates in ADC custody to a substantial risk of serious harm," *Parsons II*, 754 F.3d at 676) does not survive *Dukes*.  The Court acknowledged that the proposed class in *Dukes* could formulate common questions ("Do our managers have discretion over pay? Is that an unlawful employment practice?") but held that "[r]eciting these questions is not sufficient to obtain class certification," because doing so did not establish that the class members suffered the same kind of violation.  131 S. Ct. at 2551.

18

The panel's common question here suffers from the same flaw.

This is not to say, as the panel claims, that such a targeted analysis means that "Eighth Amendment claims can *never* be brought in the form of a class action." *Parsons II*, 754 F.3d at 675–76. To the contrary, the panel itself recognizes that the district court here may have been able to certify "numerous separate classes or subclasses, separating out groups of policies and practices." *Id.* at 679 n.21. If each prisoner in such a subgroup could raise a common Eighth Amendment claim that can be answered in one stroke, certification of that subclass may very well have been appropriate under Rule 23. *Dukes*, 131 S. Ct. at 2551. But just because there may be subclasses of prisoners that can state common questions that can be resolved in one stroke as to each specific group does not mean that certification of a class of *every* prisoner in the Arizona prison system is permissible under *Dukes*.

Furthermore, the Third Circuit has expressly rejected the theory that prisoners with diverse medical needs have a common Eighth Amendment claim of the sort endorsed by the panel. In *Rouse v. Plantier*, then-Judge Alito (writing for the court) reversed the district court's summary judgment order in favor of a class of all past, present, and future diabetic prisoners who pressed an Eighth Amendment medical care claim. 182 F.3d at 194, 198. *Rouse* noted that the record

19

showed that "not all insulin-dependent diabetics require the same level of medical care," *id.* at 198, and that it was therefore "possible that conduct that violates the Eighth Amendment rights of the unstable [diabetics] may not violate the constitutional rights of the stable [diabetics]," *id.* at 199. *Rouse* observed that the "constitutional right asserted by the plaintiff class—the Eighth Amendment right of a prisoner to be free from deliberate indifference to his or her serious medical needs—is one that obviously varies depending on the medical needs of the particular prisoner." *Id.* Accordingly, "[i]n light of the diverse medical needs of, and the different level of care owed to, each group of plaintiffs," and because the nature of the Eighth Amendment claim "varies depending on the medical needs of the particular prisoner," *Rouse* held that the district court erred in holding that all members of the proposed class could allege a general claim of deliberate indifference. *See id.* The court noted that "there may be one or more subgroups of plaintiffs as to whom particular aspects of the care allegedly provided was not consistent with Eighth Amendment requirements and other subgroups as to whom particular aspects of the care was constitutionally adequate." *Id.* Consequently, the Third Circuit sent the case back to the district court to "consider the individual needs of each relevant subgroup of plaintiffs," to evaluate "the appropriate level of care due under the Eighth Amendment," and only then to "determine whether the

defendants' actions with respect to each of these matters and with respect to each relevant subgroup of plaintiffs were consistent with the requisite level of care owed under the Eighth Amendment at the times in question." *Id.*

Here, the panel takes the opposite approach. Where the Third Circuit held it was error to conclude "on a wholesale basis" that different types of diabetic prisoners had "alleged a violation of their Eighth Amendment rights," *id.* at 198, the panel here holds that the district court correctly aggregated the Eighth Amendment claims of all prisoners in the ADC, in all their medical diversity, on the basis of a general claim of deliberate indifference, *Parsons II*, 754 F.3d at 678–79. And where *Rouse* recognized that a different level of care was due to each group of diabetic prisoners to avoid violating their Eighth Amendment rights, and required the district court to carefully calibrate what would constitute deliberate indifference as to each subclass of prisoner, *Rouse*, 182 F.3d at 199, the panel here opts for the one-size-fits all model of Eighth Amendment jurisprudence, even though the diversity of the prisoners' medical needs was established by the record. *See, e.g.*, *Parsons II*, 754 F.3d at 664. In light of *Dukes*, the approach adopted by *Rouse* is correct, and the approach adopted by the panel is not. *See Dukes*, 131 S. Ct. at 2551–52.

C

21

In short, under Rule 23 and the Eighth Amendment, the 33,000 prisoners in the Arizona prison system do not have an Eighth Amendment claim that raises a common question.  The record does not show that every prisoner—the healthy as well as the sick—has (1) a serious medical need, such that (2) the ADC's alleged deliberate indifference (through their systemic practices and policies), (3) placed each prisoner at a substantial risk of serious harm.  *See Farmer*, 511 U.S. at 834; *Estelle*, 429 U.S. at 106.  Rather, the record shows that the constitutional rights of various subgroups of prisoners to be free from deliberate indifference to serious medical needs "varies depending on the medical needs of the particular prisoner," *Rouse*, 182 F.3d at 199, and does not raise a question that can be answered in one stroke.  The panel's contrary holding is wrong.

## IV

The plaintiffs here have identified significant problems with medical care in the Arizona prison system.  Every prisoner or group of prisoners that faces a substantial risk of serious injury from these deficiencies is entitled to raise an Eighth Amendment claim.  In fact, there are a number of smaller classes or subclasses that might comply with Rule 23.  For example, the complaint alleged that "[d]efendants have a policy and practice of not providing prisoners with the full course of their medication, not providing prisoners medication as prescribed or

22

in a timely fashion, and inappropriately starting and stopping medication."
*Parsons II*, 754 F.3d at 664. A subclass of prisoners who are currently receiving medication might all face a sufficiently similar substantial risk of harm to satisfy Rule 23(a)(2), because there is the requisite fit between the legal theory, evidence, and the governing law. Indeed, the panel notes that the district court could "have certified numerous separate classes or subclasses, separating out groups of policies and practices." *Id.* at 679 n.21.

But *Dukes* and the Eighth Amendment cases require such a tailored approach; it is not just one option among many. Here the panel certifies a class that on its face lacks the requisite commonality: it includes healthy prisoners who have no Eighth Amendment claims, as well as prisoners with diverse medical needs whose claims must be considered individually. Their claims cannot be answered "yes or no" in one stroke. The panel's broad and general formulation of the prisoners' claim—because all Arizona prisoners are subject to the same defective medical system, they face a substantial risk of a serious harm, regardless of the myriad individual differences across a prisoner population, *Parsons II*, 754 F.3d at 678—is based on a misreading of Rule 23 and the Supreme Court's Eighth Amendment jurisprudence, and also conflicts with the Third Circuit. And by leaving this decision in place, the court establishes this misreading as the law of

our circuit.  I dissent from the circuit's unfortunate acquiescence to an opinion that is directly contrary to Supreme Court precedent.