1  Daniel Pochoda (Bar No. 021979)
   James Duff Lyall (Bar No. 330045)*
2  **ACLU FOUNDATION OF ARIZONA**
   3707 North 7th Street, Suite 235
3  Phoenix, Arizona 85013
   Telephone: (602) 650-1854
4  Email: dpochoda@acluaz.org
           jlyall@acluaz.org
5  *Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

6  *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia
   Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith,*
7  *Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner,*
   *Joshua Polson, and Charlotte Wells, on behalf of themselves and all*
8  *others similarly situated*

   **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**
9
   Sarah Kader (Bar No. 027147)
10 Asim Dietrich (Bar No. 027927)
   Brenna Durkin (Bar No. 027973)
11 **ARIZONA CENTER FOR DISABILITY LAW**
   5025 East Washington Street, Suite 202
12 Phoenix, Arizona 85034
   Telephone: (602) 274-6287
13 Email: skader@azdisabilitylaw.org
           adietrich@azdisabilitylaw.org
14         bdurkin@azdisabilitylaw.org

15 *Attorneys for Plaintiff Arizona Center for Disability Law*

16 **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

   UNITED STATES DISTRICT COURT
17
   DISTRICT OF ARIZONA
18

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-DKD |
| Plaintiffs, | **MOTION TO COMPEL DEFENDANTS TO AFFORD REASONABLE ACCESS TO HEALTH AND VIDEO RECORDS** |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Under the Stipulation settling this action, plaintiffs are entitled to "reasonable access" to documents necessary to monitor defendants' compliance with the performance measures and other provisions of the Stipulation. [Doc. 1185, ¶ 29 (Stipulation)] The parties are required to cooperate to afford plaintiffs reasonable access "to information reasonably necessary to perform their responsibilities without unduly burdening defendants." [*Id.*] Under this provision, plaintiffs have requested that defendants provide reasonable access to the plaintiff class members' health records and to "use of force" videos. The parties have met and conferred in good faith, and defendants have refused to provide the requested access. [Declaration of Alison Hardy in Support of Plaintiffs' Motion to Compel ("Hardy Decl."), ¶¶ 4-11] Accordingly, plaintiffs move to compel reasonable access to the health records and to the videotapes.

## BACKGROUND

### 1.    Health Records

Under the Stipulation, both plaintiffs and defendants have a role in monitoring defendants' compliance with the remedial measures set forth in the Stipulation. Defendants employ Corizon Health Services, Inc. ("Corizon")[1] to deliver medical, mental health and dental care to prisoners in their custody. The Stipulation requires defendants to monitor Corizon's compliance with the performance measures using randomly selected charts, and to provide those audit reports to plaintiffs on a monthly basis. In addition, defendants must provide plaintiffs and their experts with reasonable access to "the institutions, staff, contractors, prisoners and documents" so that plaintiffs may evaluate defendants' compliance with the Stipulation. [Doc. 1185, ¶ 29]

---

[1] Corizon Health Services, Inc. is the private contractor ADC hired to provide medical, mental health, and dental care to prisoners in its custody. Corizon is not a defendant in this matter because the duty to provide constitutionally adequate healthcare and constitutionally suitable conditions of confinement is a duty ADC cannot delegate. ADC is the responsible party regardless of who they hire to provide care [*See* Doc. 175 at 10 (Order Denying Defendants' Motion to Dismiss)]

1        At the time the parties negotiated the Stipulation, defendants used a paper health

2   record, but had plans to implement an electronic health record.  Accordingly, pending that

3   implementation, the parties agreed that defendants would, upon request each month,

4   produce to plaintiffs 15 class member health records covering a set period, as well as the

5   records for all prisoners who had died.  However, recognizing that the health records

6   system would soon be transformed with the transfer to an electronic record, the parties

7   agreed to "meet and confer about the limit on the records that Plaintiffs can request once

8   the ADC [Arizona Department of Corrections] electronic medical records system is fully

9   implemented."  [Doc. 1185, ¶ 29]

10       Since the Stipulation was reached, defendants have adopted the electronic health

11   record system (referred to as "eOMIS"), and it has been implemented at all ten state

12   prisons.   The electronic records are now cloud-based and can be accessed using a

13   password from any computer with access to the Internet.  Defendants' counsel, for

14   example, has her own password and access to the health records.  [Hardy Decl., ¶ 9]

15   During prison site visits, defendants provide plaintiffs with access to the electronic health

16   records by allocating several laptop computers to plaintiffs and their experts, and

17   supplying the necessary passwords.  [Hardy Decl., ¶ 2]

18       Before implementation of the electronic health record, defendants copied the

19   records into PDF documents and provided those to plaintiffs each month via electronic

20   transfer.  To date, for example, defendants have produced 77 health records for deceased

21   class members, generated in part or completely from the electronic system.  Each record is

22   produced as a non-searchable PDF document consisting of hundreds, and in many cases,

23   thousands of pages, many of which are template pages that include little to no substance.

24       Plaintiffs' medical expert, Dr. Todd Wilcox, has reviewed 72 of these PDF health

25   records.  Tragically, he has uncovered a pattern of noncompliance with the Stipulation

26   that is resulting in needless patient suffering and, in some cases, avoidable death.

27   [Declaration of Todd Wilcox, M.D ("Wilcox Decl."), ¶ 7]  Through this process, he has

28   also found that the review of the records in this format is extraordinarily time-consuming

and laborious.   Having used the electronic record while visiting ASPC-Tucson, Dr. Wilcox estimates that review of the PDF records takes from two to four times as long as an online review would take, because unlike the online record the PDF record is not searchable and lacks hyperlinks.  [*Id.*, ¶ 4]

When Dr. Wilcox began his review of the health records, and in particular the death records, in order to advise plaintiffs regarding the scheduled mediation, he alerted plaintiffs' counsel to the unreasonable and unnecessary burden posed by reviewing the records in PDF form.  Accordingly, and in light of the Stipulation's provision regarding renegotiation of the limit of records following implementation of the electronic record, plaintiffs wrote defendants requesting that Dr. Wilcox be provided temporary remote access to the ADC's electronic health record.  [Hardy Decl., ¶ 3, Ex. 1 (1/19/16 Ltr. from D. Specter to L. Rand)]  As Mr. Specter explained in the accompanying email, lack of remote access to the record was "negatively affecting [plaintiffs'] ability to prepare for the mediation."  [*Id.* (1/19/16 Email from D. Specter to L. Rand and D. Struck)]

The response was swift and concise.  Within an hour, defendants responded, "Plaintiffs and their experts may not have remote access to the eOMIS system."  [*Id.*, ¶ 4, Ex. 2 (1/19/16 Email from L. Rand to D. Specter)]

Following further exchanges, defendants offered to discuss possible alternatives that would facilitate review of the records.   [*Id.* (1/19/16 email from L. Rand to D. Specter)]  Defendants subsequently proposed inserting "bookmarks" into the lengthy files to facilitate navigation through the record, and provided a prototype record to plaintiffs' counsel.  [*Id.*, ¶ 7, Ex. 4]  By defendants' admission, inserting the bookmarks into a single record took more than half an hour, and defendants indicated they were not offering to perform this operation on other records.  [*Id.*]

Plaintiffs provided a copy of the bookmarked record to plaintiffs' expert for review, and he concluded it was not a significant improvement.  [*Id.* ¶ 8]  Plaintiffs requested that, as an alternative, defendants investigate the feasibility of creating a "mini-database" of selected records that preserves the search and organization functions that

1    exist in the online records system.  [*Id.*, ¶ 6, Ex. 3]  Defendants agreed to investigate this

2    option with the health records software vendor.  [*Id.*]

3        During a series of phone calls, defendants identified what they considered as two

4    impediments to providing plaintiffs with online access.  First, they represented that the

5    online health records contained confidential custody information.  However, defendants'

6    counsel subsequently acknowledged after reviewing the records that there is no

7    confidential custody information in the health records.  [*Id.*, ¶¶ 9-10, Ex. 5]  Second,

8    defendants claimed that ADC had no authority to provide remote access because the

9    records system belonged to Corizon.  Review of the ADC contracts, however, make clear

10    that the health records "are the property of the state."  [*Id.*]

11        Defendants have maintained that plaintiffs should have access to only the 15

12    requested records per month, and the death records.  [*Id.*, ¶ 4, Ex 2 (1/19/16 Email from L.

13    Rand to D. Specter)]  They fail, however, to state why plaintiffs' counsel should not have

14    access to class members' health records, which are covered by a Protective Order

15    (Doc. 454), now that the electronic record is available.

16        Ultimately, defendants refused to provide plaintiffs and/or their experts with

17    remote access to the class members' health records or with a "mini-database" of selected

18    records.  [*Id.*, ¶ 11, Ex. 6]

19        **2.    Use of Force Video Recordings**

20        The Stipulation imposes restrictions on use of pepper spray and other chemical

21    agents on certain inmates based upon mental health classification and housing.

22    [Doc. 1185, ¶ 27][2]  Under Performance Measure # 9, defendants monitor compliance with

23    this provision.  [Doc. 1185, Ex. D]  Defendants' Use of Force Reports regularly reference

24    the use of video recording during these incidents.  [*See* Hardy Decl., ¶ 14, Ex. 9 (9/18/15

---

26    [2] These include requirements that chemical agents be used only in cases of
27    imminent threat; that all controlled uses of force be preceded by a cool-down period, with
clinical intervention by mental health staff; and that if it is determined that the prisoner
does not have the ability to understand orders, chemical agents shall not be used without
28    authorization from the Warden or administrative duty officer.  [*Id.*]

1  Ltr. from A. Fettig to L. Rand)]  Before the Stipulation was reached, defendants routinely

2  produced use of force recordings during the discovery process.  [*See e.g., id.*, ¶ 13, Ex 7]

3  Plaintiffs' custody expert, Eldon Vail, reviewed these videos and relied upon them in

4  forming his opinion that defendants' use of force practices created a risk of unnecessary

5  harm.  [*See* Doc. 1104-7, at 3-6 (Supplemental Report of Eldon Vail, Feb. 24, 2014)]

6        Since August 6, 2015, plaintiffs have repeatedly sought all relevant use of force

7  videos recorded in compliance with Performance Measure #9.[3]  Over a span of four

8  months, plaintiffs requested defendants to produce the use of force videos at least ten

9  times.  [Hardy Decl., ¶¶ 13 and 14, Exs. 8 and 9]  Defendants have refused to produce the

10 videos to plaintiffs.  [*Id.*]

11       Two and a half months after the initial request, defendants asserted, for the first

12 time, that neither the production of nor access to the videos were required under the

13 Stipulation.  [*Id.*, ¶ 14, Ex. 9 (10/23/15 Ltr. from L. Rand to K. Eidenbach)]  Defendants

14 stated that at the most, upon request, plaintiffs may review them while onsite during one

15 of the twenty days allocated for onsite monitoring, or a time agreed upon by defendants'

16 counsel.  Defendants did not provide any support for their assertion that production is not

17 required.  [*Id.*, ¶ 14, Ex. 9 (10/23/15 Ltr. from L. Rand to K. Eidenbach)]

18       Since then, defendants have maintained their position that plaintiffs "must make an

19 affirmative request to view the videos and specify the complex(es) requested and the

20 months requested." [*Id.*, ¶ 14, Ex. 9 (12/1/15 Ltr. from L. Rand to K. Eidenbach)]

21 Defendants have steadfastly refused to provide the digital recordings to plaintiffs, despite

22 the fact that such recordings were provided to plaintiffs' during discovery in this action.

23      *//*

24      *//*

25

26     [3] "All use of force incidents involving maximum custody prisoners classified as SMI, and in the following housing areas: Florence-CB-1 and CB-4; Florence-Kasson

27 (Wings 1 and 2); Eyman-SMU I (BMU); Perryville-Lumley SMA; and Phoenix (Baker, Flamenco, and MTU), conform to the policies for use of force set forth in ¶ 27 (a)-(e) of

28 the Stipulation."

**ARGUMENT**

I.   **Remote Access to Health Records is Necessary for Plaintiffs' Counsel to Meaningfully Monitor Defendants' Compliance with the Stipulation.**

The Stipulation requires defendants to afford plaintiffs' counsel and experts "reasonable access" to the information "necessary to properly evaluate whether Defendants are complying with the performance measures and other provisions of this Stipulation." [Doc. 1185, ¶ 29]  It further requires the parties to cooperate so that plaintiffs' counsel has "reasonable access to information reasonably necessary to perform their responsibilities." [*Id.*]

Defendants must comply with and monitor over 100 health care performance measures (HCPM) under the Stipulation involving access to medical, dental and mental health care. To evaluate whether defendants are in compliance, plaintiffs conduct 20 days of prison monitoring tours per year, review the monthly and tour-related document productions, including the defendants' monitoring reports, and review health records.

Adequate access to the health records is vital to evaluate defendants' compliance with many of the health care performance measures.  For example, the performance measures assess whether class members are seen by a nurse within one day of arrival at an intake facility (HCPM # 33); whether class members are seen by a medical provider within two days of arrival at an intake facility (HCPM # 34); whether sick call slips are screened by a nurse within a day of receipt (HCPM # 35); whether patients are seen timely by a nurse, and then by a medical provider after nurse triage (HCPM # 37, 39, 40 and 41); and whether patients placed on suicide watch are regularly seen by qualified mental health staff (HCPM #94).  Plaintiffs cannot evaluate whether defendants are complying with these measures without reviewing class members' health records.

Now that defendants have a statewide electronic health record system, it is no longer reasonable to restrict plaintiffs' access to 15 health records monthly and death records, all in PDF format.  The records that ADC provides plaintiffs each month, as generated from the electronic health record system, are considerably longer than the paper records previously used and consist of PDF documents that are often thousands of pages

1    long.  These pages, some of which are scans of documents with handwritten entries,

2    cannot be searched for content.  They lack the hyperlink function that permits efficient

3    review of records that are referenced in progress notes.  Any concerns about breaching

4    confidentiality are addressed by the existing Protective Order, which requires the parties

5    to maintain the confidentiality of the records.  Review of the PDF records as currently

6    produced by defendants is painstaking and onerous.  It is also completely unnecessary.

7        Dr. Wilcox has, thus far, reviewed dozens of health records for patients who died

8    during 2015, using the PDF records.  He estimates that having access to the electronic

9    records would cut his review time by at least a half and likely much more.  As he

10   described it, one can build a pyramid using a thousand slaves, or one well-placed crane.

11   [Wilcox Decl., ¶ 6]  Defendants' refusal to permit plaintiffs' experts access to the class

12   members' electronic health records, which can be easily accessed via cloud-based

13   technology, is obstructive and unreasonable.

14       This issue has become particularly urgent for several reasons.  First, in his limited

15   review of the records thus far, Dr. Wilcox has uncovered a pattern of significant

16   noncompliance that is causing class members to suffer great harm, and in some cases

17   death.  Plaintiffs are currently preparing for a mediation before Magistrate Judge Buttrick

18   addressing defendants' failure to comply with the Stipulation. If the parties are unable to

19   resolve the issues through mediation, the parties will proceed to an evidentiary hearing.

20   Plaintiffs must have reasonable access to the health records in order to provide the Court

21   with the best evidence regarding defendants' compliance with the stipulation, and to

22   demonstrate that the failure to comply is causing serious injury to the class.

23       Second, the review of these records is enormously expensive.  Plaintiffs have paid

24   tens of thousands of dollars to their experts thus far simply to have records reviewed in

25   this remedial phase.  These expenses are only the beginning if the parties proceed to

26   litigation, as the experts will have to review more records and draft lengthy expert reports

27   for the hearing.  Under the Stipulation, plaintiffs' compensation for monitoring

28   compliance at the ten ADC facilities is capped at $250,000 per year.  [Doc. 1185, ¶ 44]

1   The actual cost of monitoring thus far has vastly exceeded that sum for the first year of
2   monitoring.   Defendants should not be able to force plaintiffs to continue to spend
3   enormous sums to have records reviewed when there is a much more reasonable and
4   economical alternative.

5       Accordingly, plaintiffs and their experts should be granted remote access to the
6   electronic health records in order to meaningfully monitor defendants' compliance with
7   the Stipulation.

8
9   **II.     Copies of Use of Force Videos are Necessary for Plaintiffs' Counsel to
        Meaningfully Monitor Defendants' Compliance with the Stipulation.**

10      Under the Stipulation, defendants must obey certain requirements when using
11  chemical agents, including pepper-spray, in incidents involving prisoners who are serious
12  mentally ill (SMI) or housed in certain units.  [Doc. 1185, ¶ 27]  Plaintiffs seek access to
13  information necessary to evaluate compliance, including the use of force videos.

14      Defendants' refusal to provide copies of the use of force videos unreasonably
15  stymies plaintiffs' ability to access the videos to monitor defendants' compliance with the
16  Stipulation.  According to plaintiffs' expert, the videos are the best evidence of whether
17  defendants are complying with the Stipulation's use-of-force requirements, and provide
18  vital information that is simply not available from a review of the paper record.
19  [Declaration of Eldon Vail ("Vail Decl."), ¶¶ 3-4]

20      It is irrational and obstructive to require plaintiffs and their experts to travel to
21  Arizona just to view use of force digital recording that can be viewed on any computer.
22  Further, the expectation that plaintiffs' counsel take time from their prison tours to review
23  the videos is unreasonable given that defendants have produced copies of these videos in
24  the past. Accordingly, defendants should be ordered to provide copies of the use of force
25  videos under Paragraph 29 of the Stipulation.

26
27
28

**III.     Allowing Plaintiffs to Have Remote Access to Medical Records and Producing Use of Force Videos is Not Unduly Burdensome.**

In order for plaintiffs to have remote access to the health records, defendants simply need to provide them with a password and a hyperlink.  Not only is the burden on the defendants minimal, it would actually benefit them by eliminating the responsibility of spending hours printing, and then organizing hundreds, sometimes thousands, of pages of health records.

Similarly, defendants could easily add the use of force recordings to their monthly document productions to measure compliance, and produce them as they did during the discovery phase of this action.[4]

**Conclusion**

Given the fact that it would be less burdensome for the defendants to provide plaintiffs a password for remote access to the ADC electronic health record system than the current process, and that use of force videos could easily be added to their monthly document productions to measure compliance, defendants can identify no legitimate reason to withhold these documents from class counsel.  Therefore, plaintiffs request that the Court enter an order compelling Defendants to provide remote access to the electronic health records and, at plaintiffs' request each month, to produce use of force videos.

---

[4] Tellingly, defendants do not assert that producing these vital documents would be unduly burdensome; they merely assert (wrongly) that their production is not required by the Stipulation.

Respectfully submitted this 22nd day of February, 2016.

**PRISON LAW OFFICE**

By: *s/ Alison Hardy*
Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:     dspecter@prisonlaw.com
           ahardy@prisonlaw.com
           snorman@prisonlaw.com
           ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Jamelia Natasha Morgan (N.Y. 5351176)**
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@npp-aclu.org
           afettig@npp-aclu.org
           jmorgan@aclu.org

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
             agerlicher@perkinscoie.com
             jhgray@perkinscoie.com

Daniel Pochoda (Bar No. 021979)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:    dpochoda@acluaz.org
             jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, P.C.**
P. O. Box 91398
Tucson, Arizona 85752
Telephone:  (520) 477-1475
Email:    kirstin@eidenbachlaw.com

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
Dara Levinson (Cal. 274923)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:    cnmitchell@jonesday.com
             aamiri@jonesday.com
             daralevinson@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:    jlwilkes@jonesday.com
             tfreeman@jonesday.com

*Admitted *pro hac vice*

-11-

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone: (212) 326-3498
Email:    kmamedova@jonesday.com
            jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY
LAW**


By:   *s/ Sarah Kader*
         Sarah Kader (Bar No. 027147)
         Asim Dietrich (Bar No. 027927)
         Brenna Durkin (Bar No. 027973)
         5025 East Washington Street, Suite 202
         Phoenix, Arizona 85034
         Telephone: (602) 274-6287
         Email:    skader@azdisabilitylaw.org
                     adietrich@azdisabilitylaw.org
                     bdurkin@azdisabilitylaw.org

         J.J. Rico (Bar No. 021292)
         Jessica Jansepar Ross (Bar No. 030553)
         **ARIZONA CENTER FOR
         DISABILITY LAW**
         100 N. Stone Avenue, Suite 305
         Tucson, Arizona 85701
         Telephone: (520) 327-9547
         Email:    jrico@azdisabilitylaw.org
                     jross@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability
Law*

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that on February 22, 2016, I electronically transmitted the above

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrants:

5

6

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

7

8

9

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

10

11

12

13

14

15

16

17

*Attorneys for Defendants*

18

19

20

s/ Alison Hardy

21

22

23

24

25

26

27

28

-13-