Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DKD<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO AFFORD REASONABLE ACCESS TO HEALTH AND VIDEO RECORDS**<br><br>**[Oral Argument Requested]** |

Defendants file this Response in opposition to Plaintiffs' Motion to Compel Defendants to Afford Reasonable Access to Health and Video Records (Dkt. 1506).

## I. INTRODUCTION

Defendants currently provide Plaintiffs' counsel reasonable access to those inmate healthcare records they are required to provide under the terms of the Stipulation. Under the guise of requesting *more* reasonable access to those healthcare records, Plaintiffs' Motion is really a request to re-write the terms of the Stipulation to allow them unfettered and unrestricted access to the healthcare records of all 40,000 Arizona Department of Corrections ("ADC") inmates. Plaintiffs' buyer's remorse is not a basis to alter or undo the terms of the Stipulation that were bargained-for by the parties and approved by the Court.

Plaintiffs' request is also extreme and unnecessary. They claim their demand is "simple" because it only requires Defendants to "provid[e] [Plaintiffs and their experts] with a password and a hyperlink."[1] (Dkt. 1506 at 10). Not so. Compliance with Plaintiffs' demand will create a myriad of security concerns and place confidential and sensitive inmate healthcare records at serious risk of being compromised. That risk far outweighs Plaintiffs' claim that it is time-consuming for *one* of their experts to review records in the PDF format (apparently Plaintiffs' counsel and other experts do not have any difficulty). (Dkt. 1507-1 at 3). Plaintiffs' Motion should be denied in its entirety.[2]

---

[1] Plaintiffs originally requested only that *one* of their experts, Todd Wilcox, be provided *temporary* remote access to ADC's electronic medical record (eOMIS) ("we ask that Dr. Wilcox be provided immediate access, via a VPN or equivalent, on a temporary basis"). (Dkt. 1507-1 at 4-5). When defense counsel inquired whether Plaintiffs were requesting access only to certain inmates' records, Plaintiffs' counsel responded, "Yes – we would like access to the records for the patients who died, and the patients for whom we have made records requests." *See* Ex. 1 (Declaration of Lucy Rand) at ¶10. Since that time, Plaintiffs request has escalated to a demand that all of Plaintiffs' counsel, and their experts, have unfettered access to eOMIS. (Dkt. 1506 at 9).

[2] Defendants also question whether a motion to compel is the appropriate vehicle to raise these issues with the Court. Plaintiffs' counsel informed Defendants' counsel that they contacted the Court and were told to file their request as a motion to compel. Defendants are unsure what exactly Plaintiffs' counsel relayed to the Court, but, as discussed below, request a different protocol going forward on how to present these disputes to the Court, in order to promote judicial economy and reduce fees.

1

## II. THE PARTIES DID NOT MEET AND CONFER REGARDING USE OF FORCE VIDEOS PRIOR TO PLAINTIFFS FILING THEIR MOTION

Fed.R.Civ.P. 37(a)(1) requires parties to meet and confer prior to bringing a motion to compel. While the parties exchanged some correspondence regarding the use of force videos, there was never a meet and confer on this issue. (Ex. 1 at ¶20). As such, Plaintiffs' demand, with respect to the use of force videos, is improperly before the Court and should be stricken. Defendants request the Court order the parties to participate, in good faith, in a meet-and-confer and re-submit the issue if a resolution cannot be obtained. If, however, the Court wants Defendants to respond to the use-of-force arguments, without first participating in a good faith meet-and-confer with Plaintiffs, Defendants will do so at the Court's request.

## III. THE STIPULATION ONLY ALLOWS PLAINTIFFS ACCESS TO 15 INMATE HEALTHCARE RECORDS AND "REASONABLE ACCESS" TO OTHER DOCUMENTS.

The Stipulation provides:

> Plaintiffs' counsel and their experts shall have reasonable access to the institutions, staff, contractors, prisoners and *documents necessary to properly evaluate whether Defendants are complying with the performance measures and other provisions of this Stipulation*. The parties shall cooperate so that plaintiffs' counsel has reasonable access to information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants. (Dkt. 1185 at 12, emphasis added).

With respect to inmate healthcare records, the Stipulation elsewhere limits the *number* of records that Plaintiffs have access to: on a monthly basis Plaintiffs may select ten (10) individual Class Members' healthcare records, and five (5) individual Subclass Members' healthcare and institutional records. (Dkt. 1185 at 12). Since March 18, 2015, each month Plaintiffs have provided Defendants with a list of fifteen inmates whose healthcare records they would like to review. (Ex. 1. at ¶3). And each month, defense counsel provides Plaintiffs' counsel with the requested records in PDF format. *Id.* It was not until January 2016, after over a year of providing documents in this format, Plaintiffs

2

1 claimed their access to these records was unreasonable.[3]

2 Additionally, while not required to do so under the Stipulation, Defendants allow Plaintiffs' counsel to access eOMIS during all of their twenty annual tours (160 hours). (Ex. 1 at ¶6). Defendants have granted Plaintiffs' counsel this access so they can "check" the Compliance Green Amber Red ("CGAR") reports for accuracy. *Id*. at ¶7. Importantly, this access is heavily monitored by defense counsel. *Id*. at ¶6. Defense counsel and ADC personnel are present, at all times, to monitor each computer. *Id*. All computers provided to Plaintiffs' counsel for their review are secure computers. *Id*. Since providing Plaintiffs' counsel access to eOMIS, and in addition to the 254 records they've received on a monthly basis pursuant to the Stipulation, they have viewed an additional 1,355 inmate medical records during the tours – substantially more than what Defendants are required to provide under the Stipulation. *Id*. at ¶7. Add to that, Plaintiffs have demanded and Defendants have produced over 330,000 additional documents under the "reasonable access" provision of the Stipulation (meeting minutes, heat logs, housing information, language logs, maximum custody documentation, etc.) in just 13 months. *Id*. at ¶8. This number is significant because, in the nearly three-year litigation, Defendants had produced approximately 550,000 documents. *Id*. at ¶9. Defendants have not only given Plaintiffs more than reasonable access to those documents they are entitled to under the Stipulation, but they have gone above and beyond the requirements of the Stipulation and provided them more inmate healthcare records. Plaintiffs, however, want access to all medical records.[4]

---

[3] Each facility implemented the electronic medical record system at different times, on a rolling basis. (Ex. 1 at ¶5). The first facility, Perryville, went live on April 15, 2014, and the remaining facilities followed (Tucson, June 26, 2014; Florence, July 30, 2014; Lewis, October 14, 2014; Eyman, November 11, 2014; Yuma, December 9, 2014; Winslow, January 27, 2015; Douglas, February 17, 2015; Safford, March 2, 2015; Globe, April 14, 2015; Ft. Grant/Apache, April 28, 2015; Phoenix, May 12, 2015. (June 24 Go-live dates correspondence). *Id*.

[4] While Plaintiffs claim the Stipulation anticipated providing Plaintiffs with access to eOMIS, they take the provision in the Stipulation they rely on out of context. The Stipulation states: "The parties will meet and confer about the *limit* on the records that Plaintiffs can request once the ADC electronic medical records system is fully implemented." (Dkt. 1185 at 12, emphasis added). The Stipulation does not discuss the

### A. Plaintiffs Conflate the "Reasonable Access" Provision with the Provision that Limits the Number of HealthCare Records they are Entitled to.

Defendants agreed to provide Plaintiffs "reasonable access" to "documents necessary to properly evaluate whether Defendants are complying with the performance measures and other provisions of th[e] Stipulation", but expressly limited the number of healthcare records Plaintiffs would be entitled to on a monthly basis to fifteen. (Dkt. 1185 at 12). Moreover, the "reasonable access" provision of the Stipulation applies only to *documents necessary to properly evaluate whether Defendants are complying with the performance measures. Id.* Cherry-picked records, selected by Plaintiffs' counsel, are not documents Plaintiffs need to properly evaluate whether Defendants are complying with the performance measures. As explained below, Plaintiffs have a fundamental misunderstanding of how to monitor compliance with the Stipulation.

To date, Plaintiffs' counsel have sent Defendants five "notices of non-compliance", totaling 249 pages, and detailing claims Plaintiffs believe amount to substantial non-compliance under the Stipulation. Instead of notifying Defendants of non-compliant performance measures (the only way to show Defendants are substantially non-compliant with the Stipulation), Plaintiffs' correspondence are comprised of anecdotal complaints by inmates. But individual inmates' dissatisfaction or disagreement with their care has no bearing on whether Defendants are substantially complying with the performance measures in the Stipulation. And compliance with the Stipulation is not determined through a review of individual inmate complaints, but rather through compliance with the performance measures reported in the monthly CGAR reports. As was Plaintiffs' habit during litigation, they ignore the bigger, relevant picture – the state of healthcare at ADC – and instead remain in the weeds, digging for anecdotal nuggets in an improper attempt to overcome the fact Defendants are substantially complying with the agreed-upon performance measures.

---

format in which the records must be produced, nor does it anticipate, at all, that Plaintiffs would be provided unlimited remote access to the electronic medical records.

Providing Plaintiffs' counsel with reasonable access to documents necessary to properly evaluate whether Defendants are complying with the Stipulation is already occurring as Plaintiffs have unlimited access to eOMIS to "check" the CGAR results during their 20 allotted annual tours (160 hours). For example, during the most recent tours in Yuma, Plaintiffs brought seven lawyers. (Ex. 1 at ¶18). Each day, some would tour the facility while others spent hours reviewing records in eOMIS. *Id*. This is more than reasonable access that goes beyond what is required under the Stipulation. Plaintiffs' desire to review every healthcare record for every ADC inmate is unreasonable, unnecessary, and further evidences their misplaced understanding of compliance under the Stipulation. Providing Plaintiffs with the unfettered access they request would only further this inappropriate and counter-productive practice.

**B.     The PDF Files of Inmate Health Care Records Are Easy to Navigate and Review**

After being downloaded from eOMIS, inmate healthcare records are put into a PDF form and produced to Plaintiffs. Plaintiffs' claim that the PDF files are non-workable, is exaggerated. (Ex. 1. at ¶3). Plaintiffs simply refuse to learn and understand the PDF files. Defense counsel has offered numerous solutions to Plaintiffs' alleged difficulties with the PDF files, but because Plaintiffs' counsel are not interested in a solution, each were dismissed as not good enough. *Id*. at ¶¶11-16.

In defense counsel's January 19, 2016 correspondence, counsel offered to work with Plaintiffs so that their expert could understand the records. (Ex. 1 at ¶12; Dkt. 1507-1 at 7) ("If Plaintiffs' expert needs help understanding the format of the medical records produced, we have someone that can do that"). Plaintiffs never responded. Defense counsel also suggested using Adobe Acrobat Pro, to create bookmarks and provided Plaintiffs' counsel with a sample PDF using the bookmarks.[5] (Ex. 1 at ¶13). Defense counsel informed Plaintiffs' counsel that for one of the largest records produced thus far

---

[5] To show the ease at which bookmarking can be done, the sample provided was an example of the most voluminous record using liberal bookmarking. (Ex. 1 at ¶13).

5

(6,000 pages), it only took her 37 minutes to bookmark the sections in great detail. (Ex. 1 at ¶13). Defense counsel even offered to bookmark all records provided to Plaintiffs' counsel going forward. (Ex. 1 at ¶15). Plaintiffs' counsel, without explanation, said this was not good enough. *Id.* Defense counsel also suggested the use of a "mini-database" of records and explored this option with both Corizon and the software developer of eOMIS[6]. (Ex. 1 at ¶16). The instant Motion followed. *Id.* at 8.

Plaintiffs' argument is nothing more than a complaint from one expert that the records are too large and take too long to review. But Plaintiffs' counsel habitually request records from the system's sickest patients. Those records are inherently long because those inmates have received extensive treatment. Thus, the volume of the records is not the result of the production format, but rather is the result of the type of inmates Plaintiffs request records for. Regardless, and contrary to Plaintiffs' claims, the PDF files are user-friendly, searchable, and organized by subject (HNRS, consults, SOAP, etc.), just as any paper record would be.[7]

## IV. **PROVIDING PLAINTIFFS WITH REMOTE ACCESS TO EOMIS POSES SIGNIFICANT SAFETY AND SECURITY CONCERNS**

Plaintiffs argue that because providing them with remote access is simple, faster, and less burdensome than the current production process, Defendants should just do it. But Plaintiffs ignore the grave security risks that come with unsupervised access to sensitive information such as inmate health care records. By providing Plaintiffs with unrestricted remote access, Defendants cannot guarantee Plaintiffs will operate on a secured server or that the confidential healthcare information will not be hacked or altered either intentionally or negligently. Allowing access from machines that do not meet the various security criteria presents both security and availability threats to eOMIS and the patient data within as there is an inability to ensure security of the machine being used to

---

[6] This option ultimately proved to be unworkable after consultation with the software developer for eOMIS. (Dkt. 1507-1 at 11,20).

[7] Screenshots of the bookmarks for the 6,000 page record are attached to Ex. 1 (Declaration of Lucy Rand).

access the data. *See* Exhibit 2 (Declaration of Corizon Chief Information Security Officer J. Arthur at ¶5. There is also an inability to limit the user capabilities for those viewing records on non-Corizon machines. *Id*. at ¶6. And Defendants cannot control the amount of people who will receive the username and passwords (Plaintiffs' counsel, their staff, their experts, and their experts' staff) – the possibilities are limitless. Further, there is an inability to prevent data edits or settings changes that could impact patient care, whether intentional or inadvertent. *Id*. at ¶7. Because of the way eOMIS is designed, allowing a user access creates the possibility that the user could accidentally or intentionally change data within the system that could impact patient care. *Id*. Finally, Corizon's licensing agreement does not allow access to third parties.[8] *Id*. at ¶8. The agreement further provides that Corizon must "provide a secure network for their servers if such servers are used over the internet or an internal network." *Id*. Corizon cannot guarantee compliance with the agreement if access is granted as Plaintiffs request. *Id*. The amount of uncertainty that comes with providing Plaintiffs' counsel the unsupervised access they request is not outweighed by their desire to review more records faster.

## V. PROVIDING PLAINTIFFS WITH UNFETTERED ACCESS WILL SUBSTANTIALLY AND UNNECESSARILY INCREASE COSTS

That Defendants are "forcing" Plaintiffs to spend "enormous sums to have records reviewed", as Plaintiffs claim, is untrue. To the contrary, allowing Plaintiffs unfettered access will result in a significant increase in fees to both sides.

First, it is important to note that Plaintiffs have demanded more money to monitor compliance, despite clear language in the Stipulation prohibiting any increase. *See* Exhibit. 3 (December 23, 2015 correspondence from Specter to Rand requesting an increase in fees). If Plaintiffs' counsel cannot adequately budget their current $250,000 allotment, allowing them access to *all* healthcare records would just further increase their spending spree.

---

[8] The courtesy access provided to Plaintiffs' counsel during the tours is not considered third party access as it is done on secure, Corizon computers in the presence of authorized users and staff.

7

1 For example, since the inception of the Stipulation, Plaintiffs have sent Defendants "individual health care needs" letters for over 201 inmates – the vast majority of which were unsubstantiated. (Ex. 1 at ¶19). If Plaintiffs were given unlimited access to inmate healthcare records, Defendants would be inundated with letters which require an investigation and a response. Because this takes time away from providing healthcare and ensuring compliance with the performance measures, it is counter-productive. Providing Plaintiffs' counsel with the access they request would only further their venture to dig up anecdotal information, rather than focusing on whether Defendants are in compliance with agreed-upon performance measures – the only relevant inquiry under the Stipulation.

Finally, though Plaintiffs claim they have paid their experts tens of thousands of dollars to review records, Defendants sincerely question whether this record review is necessary in light of Plaintiffs' misplaced view of compliance under the Stipulation. (Dkt. 1506 at 8). And Defendants are not "forcing" Plaintiffs to review these records, as they claim. *Id*. at 9. To the contrary, Defendants have encouraged Plaintiffs to focus on compliance with the performance measures, and not on individual inmate's claims that they disagree with the treatment they are receiving.

## VI.   **RESOLUTION OF FUTURE DISCOVERY DISPUTES**

Without first consulting Defendants, Plaintiffs' counsel unilaterally contacted this Court, ex parte, regarding this dispute. *See* Exhibit 4 (February 24, 2016 Correspondence between Struck and Specter). While Plaintiffs claim they were informed to file a motion to compel, Defendants propose a more efficient process in which to bring "discovery disputes" before the Court. Defendants propose that the parties, after meeting and conferring, schedule a joint conference call with the Court to explain the issue. The Court can then order briefing if it feels it is necessary. To file and brief a motion to compel on every disagreement is inefficient and will lead to an inundation of motions for this Court to decide.

## VII.   **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Compel should be denied.

DATED this 10th day of March 2016.

STRUCK WIENEKE & LOVE, P.L.C.


By /s/ Ashlee B. Fletcher
Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona 85226

Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried
Lucy M. Rand
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Ajmel A. Quereshi: | aquereshi@npp-aclu.org |
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amir Q. Amiri: | aamiri@jonesday.com; ttualaulelei@jonesday.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Brenna Lynne Durkin: | bdurkin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| Daniel Joseph Pochoda: | dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org |
| Dara Levinson: | daralevinson@jonesday.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| James Duff Lyall: | jlyall@acluaz.org; gtorres@acluaz.org |
| Jennifer K. Messina: | jkmessina@jonesday.com |
| Jerica Lyn Peters: | jpeters@perkinscoie.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kamilla Mamedova: | kmamedova@jonesday.com |
| Kirstin T. Eidenbach: | keidenbach@perkinscoie.com; dfreouf@perkinscoie.com; |

|   |   |   |
|---|---|---|
| | | docketphx@perkinscoie.com |
| | Sara Norman: | snorman@prisonlaw.com |
| | Sarah Eve Kader: | skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org |
| | Taylor Lee Freeman: | tfreeman@jonesday.com |

     I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

    N/A

                                           /s/ Ashlee B. Fletcher