Daniel Pochoda (Bar No. 021979)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: dpochoda@acluaz.org
        jlyall@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia
Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith,
Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner,
Joshua Polson, and Charlotte Wells, on behalf of themselves and all
others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
Brenna Durkin (Bar No. 027973)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
        adietrich@azdisabilitylaw.org
        bdurkin@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-DKD <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DEFENDANTS TO AFFORD REASONABLE ACCESS TO HEALTH AND VIDEO RECORDS** |

**INTRODUCTION**

As defendants acknowledge, plaintiffs' counsel and plaintiffs' experts are entitled to reasonable access to information necessary "to properly evaluate whether Defendants are complying with the performance measures and other provisions of this Stipulation." [Doc. 1185 (Stipulation) ¶ 29]

Plaintiffs seek reasonable access to class members' health records via a virtual private network ("VPN") or equivalent, and to video recordings of defendants' use of force. Defendants claim that plaintiffs' request for remote access to the health records is "extreme and unnecessary," and cite security concerns for denying the access. As explained below, plaintiffs are willing to accommodate defendants' security concerns, and remote access is not only reasonable, but is the only rational option for reviewing these records now that defendants have fully implemented an electronic record statewide.

Defendants refused to respond substantively regarding plaintiffs' request for the video recordings, maintaining, incorrectly, that plaintiffs had an obligation to meet and confer, yet failed to do so. Defendants have accordingly waived their opportunity to respond, and the motion should be granted.

I.    **DEFENDANTS SHOULD BE ORDERED TO PROVIDE PLAINTIFFS' COUNSEL WITH REMOTE ACCESS TO THE HEALTH RECORDS**

A.    **Access to the Health Records is Reasonable, Necessary so that Plaintiffs' Counsel Can Monitor Compliance, and Not Unduly Burdensome**

Paragraph 29 of the Stipulation provides that plaintiffs' counsel and experts "shall have reasonable access" to information necessary to evaluate whether defendants are complying with the Performance Measures and other provisions of the Stipulation. That paragraph further specifies that "Defendants *shall also* provide" fifteen health care records to plaintiffs upon request, on a monthly basis, and, "*in addition*," on a monthly basis, all health care records of Class Members who died. [Doc. 1185 (Stipulation) ¶ 29 (emphasis added)] Thus, the Stipulation clearly sets forth that plaintiffs' counsel and their experts are entitled to *both* the information necessary to evaluate compliance (without unduly

1    burdening defendants) *and* production of a sample of records each month that includes

2    health records for those class members who died in custody.

3        Defendants suggest, without support, that the Stipulation's provision requiring

4    "reasonable access" to information necessary to evaluate compliance somehow excludes

5    health records from the body of documents necessary to evaluate defendants' compliance,

6    such that plaintiffs' access to health records under the Stipulation must be limited to the

7    monthly production.[1]   Defendants have missed the point.   The Stipulation balances the

8    plaintiffs' interest in obtaining information necessary to monitor compliance against the

9    defendants' interest avoiding an undue burden when providing access to that information.

10   So, before the defendants had implemented a statewide electronic health record, the

11   parties agreed to limit the number of records that defendants would be required to

12   *physically produce* each month, so that the state would not be required to scan and

13   forward more than fifteen records each month, along with the death records.

14       The parties also agreed to meet and confer about the limit once the electronic

15   record was implemented.  [Doc. 1185 ¶ 29]  Clearly, with implementation of an electronic

16   record, the burden of reproducing individual records substantially changes.  Whereas with

17   the paper record, providing plaintiffs with access to the records created a substantial

18   burden on defendants, who must download, Bates-stamp and forward the files, providing

19   plaintiffs access to the electronic record via a virtual private network creates no such

20   burden.

21       Reviewing class member records is necessary to properly evaluate whether

22   defendants are complying with the performance measures.   Under the Stipulation,

23   defendants' Monitoring Bureau is required to monitor compliance with 103 performance

24   measures at each of the ten ADC state prisons on a monthly basis.  [*Id.*, Ex. C]  Of the 103

25   performance measures, 88 measures require the monitors to review a sample of health

26

27       [1]  Defendants acknowledge that they have permitted plaintiffs' counsel to review records
     online, during prison site visits, but insist this is *not* required under the Stipulation.  [Defendants'
28   Response at 3]

records from each prison "yard." [*Id.*]  In practice, this means that the monitors are reviewing and making compliance assessments regarding *hundreds* of health records at each of the ten prison complexes, every month.

The CGAR reports generally list the files reviewed, and indicate whether the monitors concluded the records demonstrate compliance.  The only reliable way for plaintiffs to evaluate whether defendants are complying with the performance measures, is to spot check for accuracy the data underlying the CGAR reports that defendants provide to plaintiffs on a monthly basis.  This data consists of the health records at issue.

Before the electronic health record was implemented, there was no reasonable avenue for plaintiffs' counsel to perform these spot-checks on a regular basis without unduly burdening defendants.  Now that the electronic health record is fully implemented, however, plaintiffs should be able to access the health records remotely, as this poses virtually no burden on defendants.[2]

In addition, as fully set forth in plaintiffs' motion, defendants' monthly production of health records as printed out from the electronic system is unwieldy, and unnecessarily complicates the review of the records.  This is particularly true for the death records, which are often several thousand pages.  Defendants claim that they offered to organize the PDF documents by creating "bookmarks" in those records already provided, as well as all future productions.  Plaintiffs' counsel does not recall this offer, and indeed, defendants' counsel specifically wrote to plaintiffs, when suggesting the bookmarked sample, that the sample "did not represent a promise on the part of Defendants" to provide the bookmarks shown in the sample.  [*See* Ex. 4 to Hardy Declaration in Support of Motion]  In any case, plaintiffs' expert concluded that the bookmarks did not substantially improve the accessibility of the record.  Remote access to the electronic record, with its

---

[2]  Plaintiffs suggested, as an alternative to providing plaintiffs with full access to the record, that defendants download a subset of health records into a "mini-library" that preserved the structure, searchability and hyperlink features found in the electronic record. Defendants declared this was not possible, leaving access to the full record the only option.

searchability and hyperlink features, will make review of the records substantially more efficient for plaintiffs' counsel and experts.

## B. Any Legitimate Security Concerns Regarding Remote Access Can Be Worked Out Between the Parties

Plaintiffs' counsel are willing to work with defendants to address any legitimate security concerns implicated in affording plaintiffs' counsel with remote access to the records. Defendants set forth the following concerns: (1) that they will not be able to guarantee that plaintiffs' counsel and experts will operate the health records on a secured server, or that confidential health care information will not be "hacked or altered either intentionally or negligently;" (2) that defendants will not be able to control the number of people who will receive usernames and passwords; (3) that their system has no capacity to prevent data edits or settings changes, so plaintiffs' counsel and experts could "accidentally or intentionally" change data within the system, impacting patient care; (4) that Corizon's licensing agreement does not allow access to third parties.

As to the final objection, ADC's Request for Proposal and Contract Amendment regarding the Electronic Medical Record makes it clear that the health records "are the property of the state."  [Declaration of Alison Hardy in Support of Plaintiffs' Reply ¶ 2, Ex. 1 (ADC014196; RFP at 75, Sec. 2.10.25.10)]   Amendment No. 3 to the contract regarding implementation of the electronic health record, clearly contemplates that Corizon will disclose information to third parties at ADC's direction, and consistent with HIPAA.  [*Id.* ¶ 3, Ex. 2 (ADC263219) (Corizon agrees to "Enter into a written agreement with any agent or subcontractor that will have access to [health information] that is created, received, maintained, or transmitted by [Corizon] pursuant to which agent or subcontractor agrees to be bound by same restrictions… that apply to [Corizon]….)] Corizon had no authority to enter into a licensing agreement that bars it from allowing, with ADC authorization, third parties access to the health care information.

As to the first three issues, all can be addressed by a Stipulation reached by the parties, in consultation with the parties' information technology experts.   Plaintiffs'

counsel's Computer and Security Consultant opines that the Prison Law Office's computer infrastructure either is now, or could likely be configured to meet the security concerns outlined by defendants' security officer and is available to ensure that security needs are addressed.  [Declaration of Bryan Pappas ("Pappas Decl.") ¶ 3]  Plaintiffs' counsel will stipulate that counsel and plaintiffs' experts will access the ADC health records only using a secured server, and will not permit anyone other than designated members of the plaintiffs' counsel team to access the records.  The records, in electronic form, will also be subject to the existing Protective Order.  [Doc. 454]

Regarding concerns that plaintiffs' counsel and experts could intentionally or unintentionally alter the records, plaintiffs' expert opines that it is likely that "read-only" access could be created for remote VPN users.  [Pappas Decl. ¶ 9]  However, if it is not possible to engineer access for plaintiffs' counsel and experts on a "read only" basis, then plaintiffs' counsel will also stipulate they will not intentionally alter any health record, and that should then unintentionally alter a health record, they will immediately notify defendants.  If it is true that users are able to unintentionally alter the health record, then this is a risk run by *any* user, not just plaintiffs, and defendants must have a system for addressing that issue.  Interestingly, this is not an issue that was ever discussed with plaintiffs' counsel or their experts when they were afforded access to the electronic health record while on site at the prison complexes.

C.     **Providing Plaintiffs' Counsel and Experts with Remote Access Will Promote Efficiency and Decrease Costs for Both Parties**

Defendants also assert that providing plaintiffs' counsel with access to the electronic record will increase costs because, they believe, plaintiffs' counsel will inundate defendants with letters advocating on behalf of patients, based on review of the health care records.  Defendants attempt to support this by pointing to the individual advocacy letters that plaintiffs' counsel have submitted on behalf of class members with health care complaints.  According to defendants, they have investigated these inquiries and found that the majority were not substantiated, and they apparently believe that

1  plaintiffs' counsel will scan random records looking for additional advocacy
2  opportunities, increasing their workload.

3      Defendants are simply wrong. Currently, when class members raise what appear to
4  be urgent or emergent health concerns, plaintiffs' counsel must advocate on behalf of the
5  class member, based on the class member's expressed concerns, and without the ability to
6  check the record in advance. With access to the health record, plaintiffs' counsel will be
7  able to review the class member's record in advance to determine whether it supports the
8  class member's complaint before advocating for care. Far from creating more work for
9  defendants, access to the records will enable plaintiffs' counsel to do necessary ground
10  work before engaging in advocacy on behalf of individual class members, and result in
11  less work for defendants.

12
13  ## II.   DEFENDANTS SHOULD BE ORDERED TO PRODUCE THE USE OF FORCE VIDEOS

14      Defendants failed to respond to plaintiffs' motion seeking production of the use of
15  force videos, claiming plaintiffs failed to meet and confer on the issue. Defendants'
16  attempt to graft a meet-and-confer requirement onto the Stipulation is without merit. The
17  Stipulation sets forth a procedure for resolution of disputes over production of documents,
18  and that procedure does not require a meet and confer. [*See* Doc 1185 ¶ 29 ("If the parties
19  fail to agree, either party may submit the dispute for binding resolution by Magistrate
20  Judge David Duncan")][3]

21      The parties have had extensive correspondence on this issue since August of 2015.
22  [*See* Doc. 1506, Motion at 4-5] Defendants have been unyielding in their refusal to
23  produce the use of force videos. The issue is ripe for decision and no purpose would be
24  served by further delay.

25
26

27      [3] When the parties intended to impose a meet-and-confer requirement, they knew
   how to do so. [*See* Stipulation, ¶ 30 (requiring meet and confer following service of
28  Notice of Substantial Non-Compliance)]

1    Tellingly, defendants present *no* argument why the use of force videos should not

2    be produced.   While defendants complain about the monitoring costs incurred by

3    plaintiffs' counsel (Def. Br. at 7-8), they fail to explain why plaintiffs' counsel and their

4    experts should be required to travel to ADC prisons to view these videos, rather than

5    having the videos produced to plaintiffs' counsel for off-site review, as they routinely

6    were produced earlier in this litigation.   [*See* Doc. 1509, Declaration of Eldon Vail]   By

7    declining to respond to plaintiffs' substantive arguments, defendants should be deemed to

8    have consented to the granting of the motion.   *See Giorgis v. Ogden,* 2009 WL 3571355,

9    at *3 (D. Ariz. 2009).

10                                      **CONCLUSION**

11   Defendants should be ordered to produce the use of force videos without further

12   delay, and to provide plaintiffs' counsel and plaintiffs' experts remote access to the health

13   records after the parties' technology experts resolve any legitimate technology security

14   issues.

15   Date:  March 18, 2016                    **PRISON LAW OFFICE**

16
                                             By:  *s/ Alison Hardy*
17                                               Donald Specter (Cal. 83925)*
                                                 Alison Hardy (Cal. 135966)*
18                                               Sara Norman (Cal. 189536)*
                                                 Corene Kendrick (Cal. 226642)*
19                                               1917 Fifth Street
                                                 Berkeley, California 94710
20                                               Telephone:  (510) 280-2621
                                                 Email:    dspecter@prisonlaw.com
21                                                         ahardy@prisonlaw.com
                                                         snorman@prisonlaw.com
22                                                         ckendrick@prisonlaw.com

23                                               *Admitted *pro hac vice*

24

25

26

27

28

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Jamelia Natasha Morgan (N.Y. 5351176)**
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:    dfathi@npp-aclu.org
              afettig@npp-aclu.org
              jmorgan@aclu.org

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
              agerlicher@perkinscoie.com
              jhgray@perkinscoie.com

Daniel Pochoda (Bar No. 021979)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:    dpochoda@acluaz.org
              jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, P.C.**
P. O. Box 91398
Tucson, Arizona 85752
Telephone:  (520) 477-1475
Email:    kirstin@eidenbachlaw.com

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
Dara Levinson (Cal. 274923)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email:   cnmitchell@jonesday.com
         aamiri@jonesday.com
         daralevinson@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
Taylor Freeman (Tex. 24083025)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email:   jlwilkes@jonesday.com
         tfreeman@jonesday.com

*Admitted *pro hac vice*

Kamilla Mamedova (N.Y. 4661104)*
Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone: (212) 326-3498
Email:   kmamedova@jonesday.com
         jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By: _s/ Sarah Kader_
     Sarah Kader (Bar No. 027147)
     Asim Dietrich (Bar No. 027927)
     Brenna Durkin (Bar No. 027973)
     5025 East Washington Street, Suite 202
     Phoenix, Arizona 85034
     Telephone:  (602) 274-6287
     Email:    skader@azdisabilitylaw.org
            adietrich@azdisabilitylaw.org
            bdurkin@azdisabilitylaw.org

     J.J. Rico (Bar No. 021292)
     Jessica Jansepar Ross (Bar No. 030553)
     **ARIZONA CENTER FOR DISABILITY LAW**
     100 N. Stone Avenue, Suite 305
     Tucson, Arizona 85701
     Telephone:  (520) 327-9547
     Email:    jrico@azdisabilitylaw.org
            jross@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

1

**<u>CERTIFICATE OF SERVICE</u>**

2

      I hereby certify that on March 18, 2016, I electronically transmitted the above

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrants:

5

6

                Michael E. Gottfried
                 Lucy M. Rand

7

Assistant Arizona Attorneys General
      Michael.Gottfried@azag.gov
        Lucy.Rand@azag.gov

8

9

                Daniel P. Struck
          Kathleen L. Wieneke

10

                Rachel Love
        Timothy J. Bojanowski
         Nicholas D. Acedo

11

          Ashlee B. Fletcher
           Anne M. Orcutt

12

             Jacob B. Lee
STRUCK WIENEKE, & LOVE, P.L.C.

13

        dstruck@swlfirm.com
      kwieneke@swlfirm.com

14

         rlove@swlfirm.com
    tbojanowski@swlfirm.com

15

        nacedo@swlfirm.com
      afletcher@swlfirm.com

16

        aorcutt@swlfirm.com
         jlee@swlfirm.com

17

18

        *Attorneys for Defendants*

19

20

          <u>  s/ Alison Hardy               </u>

21

22

23

24

25

26

27

28