Daniel Pochoda (Bar No. 021979)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email: dpochoda@acluaz.org
        jlyall@acluaz.org
*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email: skader@azdisabilitylaw.org
        adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-DKD |
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF SERVICE OF REMEDIATION PLAN PURSUANT TO COURT ORDER, DKT. 1583** |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

Plaintiffs have reviewed the remediation plan set forth in Exhibit 1 to Defendants' Notice of Service of Remediation Plan Pursuant to Court Order, Dkt. 1583 (the "Remediation Plan").   Plaintiffs submit the following comments regarding the Remediation Plan and request that the Court enter an order directing Defendants to implement the Remediation Plan, with one exception, as set forth below.

## I.   DEFENDANTS' REMEDIATION PLAN IS VAGUE, LACKS MEASURABILITY, AND LARGELY FAILS TO ADDRESS THE ROOT CAUSES OF THEIR SUBSTANTIAL NONCOMPLIANCE.

Plaintiffs have grave concerns about the viability of Defendants' Remediation Plan. This plan takes broad strokes to deficiencies in Defendants' performance that need very specific remedies.   Medical and correctional staff, along with the compliance monitors, need a specific plan that explains, step by step, how to implement and monitor the performance measures in the Stipulation (Docs. 1185 and 1185-1).   That is not the plan Defendants have submitted.

Defendants' Remediation Plan does not set forth measurable benchmarks by which progress toward compliance can be measured.   It lacks the specificity to be understood and implemented by those charged with ensuring compliance.   Certainly, if the Remediation Plan were a project guide, it would be woefully deficient.

Most importantly, Defendants fail to address the root cause of their noncompliance —significant and chronic understaffing—in any meaningful way.   While Defendants make some mention of increased staffing, how and when they plan to make these increases remains unclear.   As Plaintiffs have repeatedly explained, Defendants' staffing vacancies and insufficient staffing ratios underlie nearly all of Defendants' substantial noncompliance.   ("Many of [ADC's] deficiencies are rooted in staffing shortages." [Declaration of Todd R. Wilcox ("Wilcox Decl."), Doc. 1539, ¶ 9]   Dr. Todd Wilcox found that ADC's current staffing levels are "below what is required to meet minimum performance standards."   [Wilcox Decl. ¶ 11]   Dr. Pablo Stewart expressed similar concerns regarding mental health staffing levels, noting that throughout this case he has been "struck by the extreme and chronic shortage of mental health staff." [Exhibit A to

the Expert Report of Pablo Stewart, M.D. ("Stewart Report"), Doc. 1538-1, ¶ 18; *see generally* Stewart Report ¶¶ 17-25])  Without a clear plan to remedy staffing shortages, it is highly unlikely that the Remediation Plan will guide Defendants into compliance.

For these reasons, Plaintiffs are skeptical that Defendants' plan will result in compliance with the specified performance measures.  If this skepticism turns out to be warranted, Plaintiffs will request that the Court require a more detailed and substantive plan.   At this time, however, Plaintiffs request that the Court direct Defendants to implement the Remedial Plan, with the exception of their proposal regarding Performance Measure 85.

## II.   DEFENDANTS' PLAN TO REMEDY NONCOMPLIANCE WITH PERFORMANCE MEASURE 85 SHOULD BE REJECTED.

Performance Measure 85 requires that "MH-3D prisoners shall be seen by a mental health provider within 30 days of discontinuing medications."   Under the Stipulation, "MH[mental health]-3D" is defined as "[i]nmates who have been recently taken off of psychotropic medications and require follow up to ensure stability over time." [Doc. 1185-1 at 5]  As Plaintiffs' psychiatric expert explains, it is "essential that a patient who discontinues psychotropic medication be closely followed by a psychiatrist in case the patient decompensates and medications need to be restarted. . . . [Defendants'] chronic failure to monitor prisoners who are currently prescribed, or have recently discontinued, psychotropic medication presents a significant risk of serious harm."  [Stewart Report at 12, ¶¶ 28, 29]

When Plaintiffs filed their Motion to Enforce the Stipulation, Defendants had been noncompliant with this Performance Measure at every single prison complex for ten consecutive months.  [*See* Doc. 1535 at 16]  Defendants' own documents repeatedly attribute their chronic noncompliance with Performance Measure 85 to a shortage of mental health staff. [*See, e.g.*, Doc. 1560, Ex. 19 (ADCM199348 (noting, in connection with finding of noncompliance at Eyman, "we actively [sic] recruiting for our vacant 1.0 FTE psych [nurse practitioner] and telepsych positions")); Doc. 1560, Ex. 11

(ADCM228309 (noting, in connection with finding of noncompliance at Florence, "Florence complex is currently short two [mental health] providers. . . . The conintued [sic] need to recruit additional providers is still in place and is a huge need")); Doc. 1560, Ex. 19 (ADCM199656 (noting, in connection with finding of noncompliance at Tucson, a "severe provider shortage")); *see also* Stewart Report at 9-10, ¶ 24 (Defendants' staffing documents show that contract fill rate for mental health nurse practitioners ranged from 26% to 49% over a nine-month period)]  However, rather than remedy this acknowledged staffing shortage, Defendants propose to simply reclassify MH-3D prisoners, thereby removing them from the protection of this Performance Measure.  This is evasion, not compliance.[1]

The definition of the MH-3D classification set forth in the Stipulation is taken verbatim from Defendants' own Mental Health Technical Manual, where it has remained unchanged for more than two years.  [*See* Mental Health Technical Manual, April 18, 2014 (Declaration of David C. Fathi ("Fathi Decl."), Ex. 1); Mental Health Technical Manual, June 18, 2015 (Fathi Decl., Ex. 2)]  Defendants do not explain why they have just now suddenly discovered "numerous inmates" whom they allege are erroneously classified as MH-3D, and whom they propose to reclassify so that they are no longer protected by this Performance Measure.  Significantly, Defendants' documents cited above make no mention of such erroneous classification as a cause of Defendants' noncompliance with Performance Measure 85.  And Defendants do not explain how multiple psychiatric providers at multiple prison complexes happened to make enough identical classification errors to account for ten consecutive months of noncompliance at all complexes.[2]

---

[1] In addition to Performance Measure 85, MH-3D prisoners are also protected by Performance Measure 86.

[2] The cause cited by Defendants—"[w]hen medications have been added or removed, the psychiatric providers were not changing the score accordingly" (Doc. 1609-1 at 13)—would be just as likely to result in *under*-classification of prisoners as MH-3D.

In short, Defendants have entirely failed to justify these reclassifications, which may deprive hundreds of mental health patients of protections provided by the Stipulation. They have also failed to explain how their remedial plan will lead to compliance.

Accordingly:

1.     The Court should reject Defendants' proposed remedial plan for this Performance Measure, and order them to submit a revised remedial plan that does not involve the reclassification of MH-3D prisoners to deprive them of the protections of this Measure.

In the alternative, the Court should permit Plaintiffs to conduct discovery on the following subjects:

(1)    when and by whom the "numerous inmates" erroneously classified MH-3D were discovered;

(2)    how many prisoners Defendants believe to be erroneously classified MH-3D, broken down by prison complex;

(3)    whose errors led to these erroneous classifications, and what disciplinary or other corrective action has been taken;

(4)    how many prisoners formerly classified as MH-3D have been reclassified, and to what mental health classifications; and

(5)    how many prisoners are currently classified as MH-3D.[3]

2.     The Court should order Defendants to provide Plaintiffs with a list of all former MH-3D prisoners who have been reclassified, stating for each prisoner the date of reclassification and the prisoner's new classification, so that Plaintiffs can verify that these changes are consistent with the mental health classifications set forth in the Stipulation.  Plaintiffs and their experts should be given access to these prisoners' medical records so that they can ascertain, for example, whether prisoners were reclassified after individual evaluations by mental health staff, or instead were reclassified en masse.[4]

---

[3] On March 22, 2016, Defendants informed Plaintiffs that 2,457 prisoners were classified MH-3D.  [Fathi Decl., Ex. 3, at 3]

[4] Plaintiffs' motion for remote access to class members' medical records (Doc. 1506) remains pending before the Court.  [See Doc. 1582 (the Court "explains its view that Defendants must facilitate access for Plaintiffs' counsel to the electronic medical records which are now in use in the prison system")]

3.     The Court should order Defendants to adhere to the mental health classifications set forth in the Stipulation (*see* Doc. 1185-1 at 4-5) in classifying prisoners and in monitoring compliance with the Performance Measures.   [*See id.* at 3 ("For purposes of the performance measures, the following definitions will be used")][5]

THEREFORE, Plaintiffs request the Court enter an order directing Defendants to implement their Remediation Plan (with the exception of Performance Measure 85), and for such further relief as the Court deems just and necessary.  A proposed form of order is lodged with this Response.

Dated: June 20, 2016            **EIDENBACH LAW, P.C.**

By:   s/ Kirstin T. Eidenbach
     Kirstin T. Eidenbach (Bar No. 027341)
     P. O. Box 91398
     Tucson, Arizona 85752
     Telephone:  (520) 477-1475
     Email:    kirstin@eidenbachlaw.com

     Daniel C. Barr (Bar No. 010149)
     Amelia M. Gerlicher (Bar No. 023966)
     John H. Gray (Bar No. 028107)
     **PERKINS COIE LLP**
     2901 N. Central Avenue, Suite 2000
     Phoenix, Arizona 85012
     Telephone:  (602) 351-8000
     Email:    dbarr@perkinscoie.com
               agerlicher@perkinscoie.com
               jhgray@perkinscoie.com

---

[5] Defendants' claim that "Yuma has maintained compliance for the past two months" (Doc. 1609-1 at 12) is plainly wrong; Defendants' own chart shows that Yuma's compliance rate in April 2016 was 67%, well below the compliance threshold of 80%. Defendants' claims of compliance at Perryville are invalid because they are based on grossly insufficient sample sizes.  The Stipulation requires that ten MH-3D records be reviewed at each of Perryville's seven yards, for a total of 70 (Doc. 1185-1 at 32), but Defendants claim compliance based on samples of eight (February) and seven (March) at the entire Perryville complex.   Plaintiffs will shortly file a motion challenging Defendants' erroneous monitoring methodology in a number of areas.

Daniel Pochoda (Bar No. 021979)
James Duff Lyall (Bar No. 330045)*
**ACLU FOUNDATION OF
ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:    dpochoda@acluaz.org
              jlyall@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct.
R. 38(f)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
              ahardy@prisonlaw.com
              snorman@prisonlaw.com
              ckendrick@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Jamelia Natasha Morgan (N.Y.
5351176)**
**ACLU NATIONAL PRISON
PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:    dfathi@npp-aclu.org
              afettig@npp-aclu.org
              jmorgan@aclu.org

*Admitted *pro hac vice*.  Not admitted
  in DC; practice limited to federal
  courts.
**Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:    cnmitchell@jonesday.com
               aamiri@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:    jlwilkes@jonesday.com

*Admitted *pro hac vice*

Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:    jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

1
2

**ARIZONA CENTER FOR DISABILITY LAW**

3

By:   s/ Maya Abela

4

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)

5

5025 East Washington Street, Suite 202
Phoenix, Arizona 85034

6

Telephone:  (602) 274-6287
Email:    skader@azdisabilitylaw.org

7

adietrich@azdisabilitylaw.org

8

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)

9

Jessica Jansepar Ross (Bar No. 030553)
Maya Abela (Bar No. 027232)

10

**ARIZONA CENTER FOR DISABILITY LAW**

11

177 North Church Avenue, Suite 800
Tucson, Arizona 85701

12

Telephone:  (520) 327-9547
Email:

13

rdalyrooney@azdisabilitylaw.org
jrico@azdisabilitylaw.org

14

jross@azdisabilitylaw.org
mabela@azdisabilitylaw.org

15

*Attorneys for Arizona Center for Disability Law*

16
17
18
19
20
21
22
23
24
25
26
27
28

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on June 20, 2016, I electronically transmitted the above

3  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4  Notice of Electronic Filing to the following CM/ECF registrants:

5

6                              Michael E. Gottfried
                              Lucy M. Rand
7                        Assistant Arizona Attorneys General
                        Michael.Gottfried@azag.gov
                              Lucy.Rand@azag.gov
8
                              Daniel P. Struck
9                          Kathleen L. Wieneke
                              Rachel Love
10                        Timothy J. Bojanowski
                          Nicholas D. Acedo
11                          Ashlee B. Fletcher
                            Anne M. Orcutt
12                            Jacob B. Lee
                     STRUCK WIENEKE, & LOVE, P.L.C.
13                        dstruck@swlfirm.com
                          kwieneke@swlfirm.com
14                          rlove@swlfirm.com
                        tbojanowski@swlfirm.com
15                          nacedo@swlfirm.com
                          afletcher@swlfirm.com
16                          aorcutt@swlfirm.com
                              jlee@swlfirm.com
17
18                        *Attorneys for Defendants*

19
                                             s/ D. Freouf
20

21

22

23

24

25

26

27

28