1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                          DISTRICT OF ARIZONA

8

9   Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-DKD
    Dustin Brislan; Sonia Rodriguez; Christina
10  Verduzco; Jackie Thomas; Jeremy Smith; Robert
    Gamez; Maryanne Chisholm; Desiree Licci; Joseph      **[PROPOSED] ORDER**
11  Hefner; Joshua Polson; and Charlotte Wells, on
    behalf of themselves and all others similarly
12  situated; and Arizona Center for Disability Law,

13                  Plaintiffs,

14         v.

15  Charles Ryan, Director, Arizona Department of
    Corrections; and Richard Pratt, Interim Division
16  Director, Division of Health Services, Arizona
    Department of Corrections, in their official
17  capacities,

18                  Defendants.

19         After considering the arguments of counsel, the evidence submitted, and the record

20  in this case and good cause appearing, the Court hereby GRANTS Plaintiffs' Motion to

21  Enforce the Stipulation.  Pursuant to the parties' Stipulation [Doc. 1185 at ¶ 36], the Court

22  hereby ORDERS:

23         No later than 21 days from the entry of this Order, the parties shall submit to the

24  Court a jointly-negotiated and agreed upon proposed monitoring guide detailing the

25  methodology to be used to measure all Stipulation requirements and performance

26  measures in Defendants' Compliance Green-Amber-Red ("CGAR") reports.  If the parties

27  cannot agree upon the methodology to be used for a particular performance measure or

28  Stipulation requirement, then each party shall separately file its proposed methodology for

1   that particular requirement with the Court, and the Court shall determine the methodology
2   to be used.

3       No later than 30 days from the Court's approval or order regarding the proposed
4   monitoring guide, Defendants shall file with the Court a notification certifying that they
5   have trained Defendants' health contract monitors on the use of the monitoring guide, and
6   that its use has been implemented in all prisons.

7       With regard to the specific issues raised in the Motion to Enforce the Stipulation,
8   the Court hereby issues the following relief:

9       1.    Defendants shall monitor and report monthly each institution's compliance
10  with the requirements contained in Paragraphs 12, 14, and 15 of the Stipulation.

11      a.   Paragraph 12:   Defendants shall measure compliance with the
12      requirements regarding the provision of preventative care by using the
13      same methodology contained within their proposed monitoring guide
14      [Kendrick Decl., Ex. 17 at 88] for Performance Measure 61.

15      b.   Paragraph 14:  Defendants shall measure compliance with the language
16      interpretation requirement for health care encounters by randomly
17      selecting each month, from each prison unit ("yard"), a minimum of ten
18      medical records of prisoners who do not speak English.

19      c.   Paragraph 16:  Defendants shall maintain a list of prisoners who are
20      taking psychotropic medications.  In each of the months of May, June,
21      July, August, and September, Defendants shall draw a random sample of
22      ten such prisoners from each yard, and examine their medical records to
23      determine whether the prisoner has suffered a heat intolerance reaction.
24      For each prisoner who has suffered a heat intolerance reaction,
25      Defendants shall document the steps taken to prevent heat injury or
26      illness.

27

28

2.     Defendants shall monitor compliance with all mental health performance measures that require that an act occur "every X days,"[1] by using the same methodology contained within their proposed monitoring guide for medical performance measures. [Kendrick Decl. Ex. 17 at 79-80]  Specifically, Defendants shall measure the time elapsed between occurrences of the act, and not only whether the act occurred in the previous X days.

3.     The Stipulation clearly defines the terms "seen" or "seen by" [Doc. 1185-1 at 5].  Defendants shall adhere to that definition, and may not consider group counseling sessions, segregation visits, suicide watch checks, or any other cell-front interactions as health care encounters that are compliant with the Stipulation's requirements that a patient be "seen."[2]

4.     Defendants shall monitor compliance with medical and mental health performance measures regarding intake screenings at all ten ADC institutions,[3] by using the same methodology currently used for monitoring compliance with these measures.

5.     "Three calendar months" is not synonymous with "90 days."  Defendants shall monitor performance measures that call for an act occur within a specified number of days, or to occur at intervals of a specified number of days, by counting the number of days, not the number of calendar months.[4]

6.     Performance Measure 85:  Defendants shall monitor compliance with this performance measure using the Stipulation's agreed methodology.  [Doc. 1185-1 at 32] Specifically, Defendants shall randomly select ten records of MH-3D prisoners at each yard, and shall review all of those records for compliance with this performance measure.

---

[1]   The relevant performance measures are PMs 73, 77, 80-88, 90, and 92.
[2]   The relevant performance measures are PMs 73, 74, 76, 80-92, and 94.  PM 92 explicitly provides for group counseling sessions, and therefore such group sessions may be counted as compliant for purposes of PM 92 only.
[3]   The relevant performance measures are PMs 33, 34, 75, and 76.
[4]   The relevant performance measures are PMs 49-51, 53, 54, 73, 77, 80-88, 90, and 92.

7.      Performance Measure 86:   Defendants shall monitor this performance measure by ascertaining the date on which the prisoner discontinued psychotropic medications, and determining whether the prisoner was seen by a mental health clinician within 90 days of that date, and every 90 days thereafter for a minimum of six months.

8.      Performance Measure 94:   When reviewing a prisoner's medical record to determine compliance with this performance measure, Defendants shall confirm that the prisoner was seen every day he or she was on mental health or suicide watch, regardless of whether the prisoner's time on watch spanned more than one calendar month.

9.      Performance Measure 95:   This performance measure requires that prisoners who have been removed from suicide or mental health watch be seen by specified mental health staff at three specified intervals.   When reviewing a prisoner's medical record to determine compliance, Defendants shall count as compliant only cases in which they have verified that all three contacts have occurred as required.

10.     Performance Measure 98:   Defendants shall monitor compliance with the required response timeframes for all categories of mental health HNRs set forth in the ADC Mental Health Technical Manual (rev. 4/18/14), Chapter 2, Section 5.0, as specified in the Stipulation.  [Doc. 1185-1 at 35]

The Court finds that the relief ordered herein is narrowly drawn, extends no further than necessary to correct the violation of federal rights, and is the least intrusive means necessary to correct the violation of the federal rights.

IT IS SO ORDERED.