Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | NO. 2:12-cv-00601-DKD <br><br> **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO ENFORCE THE STIPULATION (DKT. 1663)** |

Defendants have worked and are continuing to work with their contracted health care vendor, Corizon, to improve compliance with each Health Care Performance Measure (HCPM) that falls below the appropriate compliance threshold.[1]  Whenever a CGAR Report indicates that a HCPM is below the required compliance thresholds in the Stipulation, the appropriate medical personnel at each facility are required to submit Corrective Action Plans (CAPs) that are designed to remedy any issues and improve compliance.  Although Defendants have fallen below the compliance thresholds for some HCPMs, there is absolutely no evidence to support Plaintiffs' outrageous claims of "gross and dangerous deficiencies" or that class members are in "grave danger."  (*See* Dkt. 1663 at 2.)  As Defendants explained to Plaintiffs, the compliance findings for HCPM Nos. 47, 80, 81, and 94 were primarily the result of medical and mental health providers failing to properly document their contacts with the inmates, not a failure to provide necessary medical care.  (*See* June 22, 2016 Letter from Lucy M. Rand, attached as Exhibit A.)  Defendants have taken appropriate corrective actions to improve compliance with each of these HCPMs and have made significant improvements so that HCPM Nos. 80, 81 and 94 will consistently exceed the 80% compliance threshold.

**I.    Compliance with HCPM Nos. 47, 80, 81, and 94.**

   **a.    HCPM No. 80**

According to HCPM No. 80:  "MH-3A prisoners shall be seen a minimum of every 30 days by a mental health clinician."  (Dkt. 1185-1 at 13.)  Plaintiffs allege that Defendants are non-compliant with this HCPM only at the Lewis and Tucson prison complexes.  (Dkt. 1663 at 3.)  Lewis has steadily increased its compliance with this HCPM over the past year and obtained 84% compliance in the last CGAR report in June 2016.  Tucson has also steadily increased its compliance with this HCPM over the past

---

[1] The compliance threshold increased from 75% to 80% in March 2015. (*See* Dkt. 1185 at ¶ 10.)  Although Plaintiffs' Motion references CGAR results from February 2015, Defendants did not begin measuring and reporting compliance with the HCPMs under the Stipulation until March 2015 because the Stipulation was not effective until February 18, 2015.  (*See* Dkt. 1455.)

1

year and obtained 75% compliance in the last two CGAR reports in May and June 2016.

In order to increase compliance, Lewis and Tucson have implemented new tracking and scheduling systems. Defendants have worked to improve the database of MH-3A prisoners, so mental health clinicians are aware of the MH-3A inmates that are at their facility. A mental health gatekeeper has been designated at Lewis and Tucson to maintain the mental health database and schedule visits with MH-3A inmates. The gatekeeper ensures that the databases for Lewis and Tucson are updated with the daily clinical contacts, and inmates movements are tracked in real time. In addition, Corizon began utilizing telepsychology services at Lewis and Tucson in June 2016 and a full-time tele-psychologist was hired in June to provide coverage at Lewis. Corizon has also invested in additional teleservices equipment, such as laptops, cameras, and monitoring systems.

Since Lewis implemented a new tracking and scheduling system, it achieved 84% compliance in June 2016 and is expected to meet or exceed this compliance level in July 2016. Tucson also implemented a new tracking system and has provided additional support and training with the tracking and scheduling to further improve compliance. As a result of the new tracking and scheduling system and additional training, Tucson's compliance has steadily improved. Defendants expect Tucson to meet the 80% compliance threshold in August 2016.

     **b.**    **HCPM No. 81**

According to HCPM No. 81: "MH-3A prisoners who are prescribed psychotropic medications shall be seen a minimum of every 90 days by a mental health provider." (Dkt. 1185-1 at 13.) Plaintiffs allege that Defendants are non-compliant with this HCPM only at the Lewis and Tucson prison complexes. (Dkt. 1663 at 3.) Since January 2016, Lewis was compliant ever month except March 2016 (78%), and Tucson was compliant every month except February (74%). Therefore, these facilities have only fallen 1% and 2% below the required compliance threshold.

As mentioned above, Lewis and Tucson have implemented new tracking and scheduling systems. Defendants have worked to improve the database of MH-3A

2

prisoners, so mental health clinicians are aware of the MH-3A inmates that are at their facility. A mental health gatekeeper has been designated at Lewis and Tucson to maintain the mental health database and schedule visits with MH-3A inmates. The gatekeeper ensures that the databases for Lewis and Tucson are updated with the daily clinical contacts, and inmates movements are tracked in real time. In addition, Corizon began utilizing telepsychology services at Lewis and Tucson in June 2016 and a full-time tele-psychologist was hired in June to provide coverage at Lewis. Corizon has also invested in additional teleservices equipment, such as laptops, cameras, and monitoring systems.

In order to further improve access to care for maximum security inmates at Lewis, three telepsychiatry units and an additional telemedicine cart were added. These additional teleservices help remedy continued issues with transporting maximum security inmates for mental health appointments. In addition, Corizon hired a Regional Psychiatry Director, who began work on June 14, 2016, who is responsible for overseeing psychiatric providers to ensure continuity of care and scheduling.

The implementations described above have been effective, as Lewis and Tucson have only fallen below the compliance thresholds by 1% or 2% this year. Lewis fell 2% below the compliance threshold in March 2016 (78%), but the tracking and scheduling issue was promptly remedied through additional support and training. Since Lewis implemented the new tracking and scheduling system, it achieved 92% compliance in June 2016 and is expected to again exceed the 80% compliance threshold in July 2016. Similarly, Tucson has consistently exceeded the compliance threshold every month this year except February 2016 (74%), in which it fell below the required compliance threshold by only 1%. Defendants determined that this isolated incident was the result of a scheduling issue that was promptly remedied. Since implementing the new tracking and scheduling system, Tucson achieved 98% compliance for June 2016 and is expected to again exceed the 80% compliance threshold in July 2016. Therefore, Defendants expect this HCPM will continue to remain in compliance and is therefore substantially compliant with the Stipulation.

### c. HCPM No. 94

According to HCPM No. 94: "All prisoners on a suicide or mental health watch shall be seen daily by a licensed mental health clinician or, on weekends or holidays, by a registered nurse." (Dkt. 1185-1 at 14.) Plaintiffs allege that Defendants are non-compliant with this HCPM only at the Eyman, Florence, and Tucson prison complexes. (Dkt. 1663 at 4.) Defendants have found that the non-compliant findings were primarily the result of documentation issues. In order to correct any documentation, tracking, and scheduling issues, the Corizon Regional Director of Nursing completed a statewide "Reboot" training for nursing staff. After this training, Defendants have seen significant improvements with this HCPM.

Since January 2016, Eyman has been compliant every month, except March 2016 (75%) and May 2016 (65%), and was 90% compliant in the last CGAR report in June 2016. Similarly, since January 2016, Florence has been compliant every month, except May 2016 (70%), and was 100% compliant in June 2016. Defendants expect this HCPM will continue to remain compliant at Eyman and Florence as a result of the changes made to tracking and scheduling systems and additional training for staff.

Tucson has also improved its compliance with this HCPM and obtained 80% compliance in March 2016 and 90% compliance in April 2016, and has taken further actions to ensure its compliance is on par with the other complexes that are consistently 90% to 100% compliant with this HCPM. The two months of non-compliance in May 2016 and June 2016 were due to an unlicensed clinician, who has a license in another stated in which she previously worked, but had not yet received her Arizona license. As a result, her contacts did not count towards compliance. Defendants expect this HCPM will continue to remain compliant at Tucson because the licensure issues and documentation issues have now been remedied.

As mentioned above, Defendants have worked to improve the database of MH-3A prisoners, so mental health clinicians are aware of the MH-3A inmates that are at their facility. A mental health gatekeeper has been designated at Eyman, Florence, and Tucson

4

to maintain the mental health database. The gatekeeper ensures that the databases for Eyman, Florence, and Tucson are updated with the daily clinical contacts, and inmates movements are tracked in real time. In addition, this gatekeeper also manages the watch logs to ensure daily follow-up visits with prisoners on suicide or mental health watch by a licensed mental health clinician. Further, it appears the implementations described above are effective, as Eyman achieved 90% in June, Florence achieved 100% in June, and Tucson achieved 100% in June.

### d. HCPM No. 47

According to HCPM No. 47: "A Medical Provider will communicate the results of the diagnostic study to the inmate upon request and within seven calendar days of the date of the request." (Dkt. 1185-1 at 11.) Plaintiffs allege that Defendants are non-compliant with this HCPM at all prison complexes. (Dkt. 1663 at 3.) Defendants' investigation regarding the CGAR findings for this HCPM found that while inmates may have been timely scheduled for a medical provider appointment to occur within the requisite seven calendar days, some inmates' appointments were rescheduled so that the medical provider could see an inmate who presented with higher acuity needs. Defendants also found the medical provider often communicated the diagnostic service results to the inmate within the required timeframe, but failed to properly and consistently document the communication. For example, a complex may be found non-compliant if the monitor is unable to read the medical provider's handwriting and verify the communication is from a licensed medical provider. Therefore, despite the CGAR findings, inmates are receiving necessary and appropriate care. Nevertheless, Defendants are holding medical personnel accountable for improving compliance with this HCPM.

Defendants have taken the following corrective actions: In June 2016, Corizon began communicating diagnostic service results to inmates upon request through a written Inmate Communique. A medical provider appointment is also scheduled, when necessary, as a follow-up to the written communication. These written communications will ensure that the medical provider timely communicates the results of diagnostic testing

5

to the inmate upon request and that the communication is accurately documented for monitoring purposes.

In order to improve proper documentation, Corizon also implemented new procedures that ensure proper and consistent documentation of the medical provider's communications with inmates. For example, medical providers are required to legibly sign and stamp their communications with inmates. Further, the Director of Nursing at each prison complex is now accountable to perform a "trust and verify" check of the HNR Log to ensure all requests are addressed. Finally, each Site Medical Director received additional training as to the CGAR process and is tasked with holding medical providers accountable for compliance with this HCPM. As a result, Defendants expect the compliance findings for this HCPM will continue to improve so that all complexes meet or exceed the 80% compliance threshold.

## II. Plaintiffs' Request for Relief Exceeds the Scope of the Stipulation.

Plaintiffs demand relief that exceeds the scope of relief that is permitted in the Stipulation. The Stipulation expressly states, in relevant part:

> In the event the Court finds that Defendants have not complied with the Stipulation, it shall in the first instance require Defendants to submit a plan approved by the Court to remedy the deficiencies identified by the Court. In the event the Court subsequently determines that the Defendants' plan did not remedy the deficiencies, the Court shall retain the power to enforce this Stipulation through all remedies provided by law, except that the Court shall not have the authority to order Defendants to construct a new prison or to hire a specific number or type of staff unless Defendants propose to do so as part of a plan to remedy a failure to comply with any provision of this Stipulation. In determining the subsequent remedies the Court shall consider whether to require Defendants to submit a revised plan.

(Dkt. 1185 at ¶ 36.) Therefore, if the Court finds Defendants have not complied with HCPM Nos. 47, 80, 81, or 94, it must first require Defendants to submit a plan to remedy any deficiencies identified by the Court. Accordingly, Defendants will prepare and submit a plan for the Court's approval to remedy any deficiencies with HCPM No. 47 at all prison complexes. Defendants have already improved compliance with HCPM No. 80 at the Lewis and Tucson complexes; HCPM No. 81 at the Lewis and Tucson complexes; and HCPM No. 94 at the Eyman, Florence, and Tucson complexes. The CGAR findings

6

for these HCPMs are now above the 80% compliance threshold. Therefore, it is unnecessary and would be a waste of the Court's and the parties' time and resources to order Defendants to submit any further plans to remedy deficiencies for these HCPMs, which now exceed the 80% compliance threshold.

DATED this 6th day of September 2016.

STRUCK WIENEKE & LOVE, P.L.C.


By /s/Daniel P. Struck
   Daniel P. Struck
   Kathleen L. Wieneke
   Rachel Love
   Timothy J. Bojanowski
   Nicholas D. Acedo
   Ashlee B. Fletcher
   Anne M. Orcutt
   Jacob B. Lee
   STRUCK WIENEKE & LOVE, P.L.C.
   3100 West Ray Road, Suite 300
   Chandler, Arizona 85226

   Arizona Attorney General Mark Brnovich
   Office of the Attorney General
   Michael E. Gottfried
   Lucy M. Rand
   Assistant Attorneys General
   1275 W. Washington Street
   Phoenix, Arizona 85007-2926

   *Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com; docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amir Q. Amiri: | aamiri@jonesday.com; ttualaulelei@jonesday.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| Daniel Joseph Pochoda: | dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| Jennifer K. Messina: | jkmessina@jonesday.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Kirstin T. Eidenbach: | kirstin@eidenbachlaw.com |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org; mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org |

1
2   I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:
3
    N/A
4
                                /s/Daniel P. Struck
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28