Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org
dpochoda@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,

Plaintiffs,

v.

Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,

Defendants.

No. CV 12-00601-PHX-DKD

**PLAINTIFFS' BRIEF REGARDING CELLFRONT MENTAL HEALTH ENCOUNTERS**

## INTRODUCTION

The Court has directed the parties to file supplemental briefs regarding "'cell front/segregation visits' including, but not limited to, the frequency with which [they are] used." [Doc. 1673 at 8][1]

The Stipulation defines "seen" as follows:

> Interaction between a patient and a Medical Provider, Mental Health Provider or Mental Health Clinician that involves a treatment and/or exchange of information in a confidential setting. *With respect to Mental Health staff, means an encounter that takes place in a confidential setting outside the prisoner's cell*, unless the prisoner refuses to exit his or her cell for the encounter.

[Doc. 1185-1 at 5 (emphasis added)]

Before the Court is a straightforward question of contract interpretation. The Court must determine whether a cellfront encounter, in which the patient is locked in a cell with the clinician standing outside, is "an encounter that takes place in a confidential setting outside the prisoner's cell." Plainly, it is not. Defendants' practice of counting cellfront encounters as satisfying the Stipulation's requirement that a patient be "seen" is accordingly impermissible.

**Defendants' use of cellfront mental health encounters.**

The following Performance Measures (PM) require that a patient be "seen": 73, 74, 76, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 94, and 95. [*See* Doc. 1185-1 at 13-15] Of these, Defendants' Monitor Guide explicitly states that the requirement of being "seen" can be satisfied by a cellfront "segregation visit" or "suicide watch" for PM 80, 82, 86, 87, 89, 91, 92, 94, and 95. [*See* Doc. 1626-2 at 111-129][2] It is unclear whether Defendants similarly count cellfront encounters for the remaining PMs requiring that a patient be "seen." Defendants have recently reiterated that they count a prisoner on

---

[1] The Court has also directed the parties to "explain[] 'hard lockdown' … including, but not limited to, the frequency with which [it] is used." [Doc. 1673 at 8] Plaintiffs have no information on "hard lockdown" and thus are unable to provide the information requested by the Court.

[2] Page numbers cited are those assigned by the ECF system.

suicide watch as being "seen" if she receives a cellfront encounter. [*See* Doc. 1644-1, ¶¶ 13, 16]

The cellfront mental health encounters witnessed by Plaintiffs' psychiatric expert, Dr. Pablo Stewart, lasted between three and five minutes, which is not long enough for meaningful mental health treatment (Doc. 1104-2 at 40, 45). Dr. Stewart's investigation revealed multiple instances of mental health patients being seen primarily or exclusively at cellfront. [*See, e.g.,* Doc. 1104-6 at 52-53 (noting "cellfront visit" with 22 year old patient on suicide watch; he was taken off watch that day and was not seen again by mental health staff before hanging himself. The ADC mortality review concluded that "there were signs of suicide present that were not acted upon"); Doc. 1538-1 at 96-97 (psychotic patient seen by mental health staff only three times in six months, all at cellfront); 99-100 (patient who was psychotic and suicidal seen by psychiatrist only at cellfront); 105-06 (patient with long history of psychosis and dementia seen at cellfront while on suicide watch)]

Dr. Stewart described his attempts to communicate with ADC prisoners while standing outside their cells:

> During my inspections of seven ADC facilities, I found it extremely difficult to communicate with prisoners while standing in front of their cells. Due to background noise and the barrier of a solid cell door, it was difficult for me to hear the prisoner, and to make myself heard. I often had to shout my questions to the patients, which were then easily overheard by custody staff, which further inhibited the patients from being open and honest with me. Sometimes the only way to communicate verbally was to talk through the tiny space at the side of the cell door, meaning that it was impossible to talk with the prisoner while simultaneously maintaining eye contact through the window in the cell door. Observation of facial expressions and body language is an important part of any clinical encounter, but I found it very difficult to do while speaking to prisoners at cell-side. In addition, in some units I was required by ADC staff to wear a plastic visor covering my entire face, which made effective communication impossible.
>
> In no sense can a cell-side encounter be considered a confidential setting. During my inspection tours, many of the prisoners with whom I spoke had cellmates who were just a few feet away while I was attempting to communicate with the prisoner. In addition, ADC custody staff were often close

> enough to hear what I was saying. Finally, it seems likely that prisoners in adjacent cells were sometimes able to overhear, especially given that both the prisoner and I often had to raise our voices to make ourselves heard.

[Doc. 1627, ¶¶ 16-17]

**Cellfront encounters do not provide confidentiality and are thus inappropriate for mental health evaluation or treatment, particularly for patients who are potentially suicidal.**

The critical importance of confidentiality for mental health evaluation and treatment in prison is universally recognized:

> The importance of private space for confidential doctor-patient interactions cannot be overstated. Inmates with mental illness may be vulnerable or targeted by other inmates. Without the assurance of privacy, some patients may not seek mental health services or adhere to treatment.

American Psychiatric Association, *Psychiatric Services in Correctional Facilities* (3d ed. 2016), at 13. Similarly, the National Commission on Correctional Health Care, *Standards for Mental Health Services in Correctional Facilities* (2008), Standard MH-A-09, "Privacy of Care," requires that "[p]sychological assessments and mental health services are conducted in private, without being observed or overheard by staff or inmates," and that "[c]linical encounters take place in a clinical setting," noting that "[t]he patient-clinician relationship may be eroded if privacy is not provided during clinical encounters."

Indeed, Defendants' own Mental Health Technical Manual provides that "[i]ndividual sessions by mental health clinicians shall not be conducted at the inmate's cell front, and shall be conducted in a private, confidential setting." [*See* Declaration of David C. Fathi, Ex. 1] Defendants have not explained how this requirement can be reconciled with their practice of counting cellfront encounters as satisfying the Stipulation's requirement that patients be "seen."

The inappropriateness of cellfront encounters for mental health treatment is similarly recognized by prison officials in other states. For example, Indiana Department of Corrections policy provides that "[m]ental health evaluations of offenders with a(n)

identified mental health need(s) must be done in a location which affords the offender confidentiality; the evaluation may not be done at the offender's cell front." *Indiana Prot. & Advocacy Servs. Comm'n v. Comm'r, Indiana Dep't of Correction*, No. 1:08-CV-01317-TWP, 2012 WL 6738517, at *13 (S.D. Ind. Dec. 31, 2012) (quoting policy). Pennsylvania Secretary of Corrections John Wetzel recently testified that "he was aware that cell-side visits by mental health staff with [Restricted Housing Unit] inmates were flawed and that the DOC policy has since been changed to correct this problem." *Shoatz v. Wetzel*, No. 2:13-CV-0657, 2016 WL 595337, at *9 (W.D. Pa. Feb. 12, 2016).

Finally, federal courts have repeatedly recognized the inappropriateness of cellfront mental health encounters:

> "Cell front" interviews conducted on rounds provide little privacy to inmates. Given this lack of privacy, it is difficult for mental health staff to develop a relationship of trust with inmates and to gain full insight into the inmate's mental condition.

*Jones'El v. Berge*, 164 F. Supp. 2d 1096, 1106 (W.D. Wis. 2001). And in the course of concluding that mental health care at the Maricopa County Jail violated the Eighth and Fourteenth Amendments, the court found:

> Some of the seriously mentally ill pretrial detainees are housed in the psychiatric unit at the Lower Buckeye jail, and the most seriously mentally ill of those are housed in cells that do not permit psychiatrists and pretrial detainees to have visual contact while communicating or to have private therapeutic communications. Mental health staff frequently provide cell-side treatment without privacy in other housing units as well.

*Graves v. Arpaio*, No. CV-77-0479-PHX-NVW, 2008 WL 4699770, at *31 (D. Ariz. Oct. 22, 2008). *See also Coleman v. Brown*, No. CIV. S-90-520 LKK, 2014 WL 3842914, at *206 (E.D. Cal. July 25, 2014), *appeal dismissed* (Jan. 14, 2015) ("Clinical contacts with the social worker occurred at cell front and were nonconfidential, despite the sensitive nature of the content of the contacts. … This patient did not receive adequate treatment based upon available documentation") (special master report).

Dr. Stewart explains that "[i]t is completely inappropriate to evaluate an inmate at the cell front."

> These cell front visits do not allow for any confidentiality. This regularly results in the mentally ill inmate withholding critical clinical information, with potentially lethal results. This is especially true when evaluating a potentially suicidal inmate. The standard of care in the community as well as custody settings is to evaluate potentially suicidal inmates in a confidential setting.
>
> In fact, allowing a potentially suicidal inmate to come out of an isolation cell to be evaluated by a clinician in their office can be therapeutic. Dr. Taylor states that seeing a prisoner on suicide watch in a confidential setting "poses significant security risks and may result in decompensation of the inmate." It is highly implausible that a confidential visit with a clinician would result in decompensation. I have seen a number of inmates on suicide watch in a confidential setting and have never observed any decompensation as a result.
>
> As for the alleged security risks, the clinician's office should already be free of any objects that might be used as a weapon, as these clinicians should be seeing all of their patients in their offices. In addition, when I toured various ADC prisons, I observed locked enclosures in clinicians' offices where the patient could be confined. This allows for a confidential interaction while keeping the patient in a safe and secure environment. Performing an evaluation of a potentially suicidal inmate at the cell front is an extremely dangerous practice and falls far below the standard of care.

[Doc. 1657, ¶¶ 5-7]

## CONCLUSION

A cellfront encounter plainly does not constitute "an encounter that takes place in a confidential setting outside the prisoner's cell." [*See* Doc. 1185-1 at 5] Moreover, such encounters are dangerous and potentially lethal, as the lack of confidentiality may cause the patient to withhold critical information from the clinician. Defendants' practice of counting cellfront encounters as satisfying the requirement that a patient be "seen" is inconsistent with the unambiguous language of the Stipulation and is accordingly impermissible.

Dated: September 20, 2016

**ACLU NATIONAL PRISON PROJECT**

By: s/ David C. Fathi
David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Jamelia Natasha Morgan (N.Y. 5351176)**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email: dfathi@aclu.org
afettig@aclu.org
jmorgan@aclu.org

*Admitted pro hac vice. Not admitted in DC; practice limited to federal courts.
**Admitted pro hac vice

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email: dbarr@perkinscoie.com
agerlicher@perkinscoie.com
jhgray@perkinscoie.com

Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org
dpochoda@acluaz.org

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email: dspecter@prisonlaw.com
ahardy@prisonlaw.com
snorman@prisonlaw.com
ckendrick@prisonlaw.com

*Admitted *pro hac vice*

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, P.C.**
P. O. Box 91398
Tucson, Arizona 85752
Telephone: (520) 477-1475
Email: kirstin@eidenbachlaw.com

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email: cnmitchell@jonesday.com
aamiri@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email: jlwilkes@jonesday.com

*Admitted *pro hac vice*

Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone: (212) 326-3498
Email: jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By: s/ Maya Abela

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
rdalyrooney@azdisabilitylaw.org
jrico@azdisabilitylaw.org
jross@azdisabilitylaw.org
mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2016, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

s/ D. Freouf