**EXHIBIT B**

**EXHIBIT B**

1    Arizona Attorney General Mark Brnovich
     Office of the Attorney General
2    Michael E. Gottfried, Bar No. 010623
     Lucy M. Rand, Bar No. 026919
3    Assistant Attorneys General
     1275 W. Washington Street
4    Phoenix, Arizona 85007-2926
     Telephone: (602) 542-4951
5    Fax: (602) 542-7670
     Michael.Gottfried@azag.gov
6    Lucy.Rand@azag.gov

7    Daniel P. Struck, Bar No. 012377
     Kathleen L. Wieneke, Bar No. 011139
8    Rachel Love, Bar No. 019881
     Timothy J. Bojanowski, Bar No. 022126
9    Nicholas D. Acedo, Bar No. 021644
     Ashlee B. Fletcher, Bar No. 028874
10   Anne M. Orcutt, Bar No. 029387
     Jacob B. Lee, Bar No. 030371
11   STRUCK WIENEKE & LOVE, P.L.C.
     3100 West Ray Road, Suite 300
12   Chandler, Arizona 85226
     Telephone: (480) 420-1600
13   Fax: (480) 420-1696
     dstruck@swlfirm.com
14   kwieneke@swlfirm.com
     rlove@swlfirm.com
15   tbojanowski@swlfirm.com
     nacedo@swlfirm.com
16   afletcher@swlfirm.com
     aorcutt@swlfirm.com
17   jlee@swlfirm.com

18   *Attorneys for Defendants*

19                  UNITED STATES DISTRICT COURT
20                      DISTRICT OF ARIZONA

21   Victor Parsons, *et al.*, on behalf of themselves       NO. 2:12-cv-00601-DKD
     and all others similarly situated; and Arizona
22   Center for Disability Law,
                                       Plaintiffs,
23                    v.                                      **DECLARATION OF NICOLE
                                                             TAYLOR, Ph.D., J.D., CCHP-MH**
24   Charles Ryan, Director, Arizona Department
     of Corrections; and Richard Pratt, Interim
25   Division Director, Division of Health Services,
     Arizona Department of Corrections, in their
26   official capacities,
                                       Defendants.
27

28

1     I, **NICOLE TAYLOR,** make the following Declaration:

2     1.     I am over the age of 18 years and have personal knowledge of and am

3 competent to testify to the matters set forth in this Declaration.

4     2.     I am currently the Mental Health Director and a Mental Health Monitor for

5 the Arizona Department of Corrections.

6     3.     I am responsible for monitoring compliance with mental health performance

7 measures in the *Parsons* Stipulation, including Health Care Performance Measure Nos.

8 73-99.

9     **Cell Front Visit**

10     4.     A cell front or segregation visit is when mental health staff consult with an

11 inmate, while outside the inmate's cell. During a cell front visit, mental health staff are

12 able to communicate with inmates through the cell doors or through tray slots that are

13 used to pass food trays or other approved items. Watch cells also contain large clear

14 windows so the inmate is fully visible to correctional, medical, and mental health staff.

15 Mental health staff are able to see and speak to inmates at their cell front like they would

16 if the inmate was in a temporary holding enclosure for a medical or mental health care

17 visit. As a result, mental health staff are able, if necessary, to complete a full mental

18 health evaluation during cell front visits because they are able to see and speak with the

19 inmate.

20     5.     These cell front visits only occur when necessary to protect the health and

21 safety of the inmate or the mental health staff. These visits are necessary when the

22 inmate is (1) refuses to exit his or her cell, (2) on a suicide or mental health watch for his

23 or her own health and safety, or (3) confined to his or her cell as a result of a serious

24 safety or security incident that requires inmates to be confined to their cells during a unit

25 or complex lockdown.

26     **Cell Front Visit When Inmate Refuses to Exit Cell**

27     6.     As explained in my July 29, 2016 Declaration (Doc. 1644-1), cell front or

28 segregation visits do not count as being "seen" unless the inmate refuses to exit his or her

1

cell for the encounter.  This methodology is consistent with the Stipulation's definition of "seen."  It follows that if an inmate is seen cell front/segregation visit, the file will not be marked compliant unless it is specifically noted that the inmate refused to come out of the cell.

**Cell Front Visit When Inmate is on Suicide or Mental Health Watch**

7.      Inmates are placed on suicide watch when there is a risk of self-destructive (i.e. self-harm) or suicidal behaviour.  They may be placed on suicide watch by a shift commander, mental health care staff, or health services and can only be removed by a licensed mental health provider.

8.      Inmates on suicide watch are placed in watch cells.  All designated watch cells must provide full visibility so staff can observe the inmate on continuous, ten-minute or 30-minute watches.

9.      As explained in my July 29, 2016 Declaration (Doc. 1644-1), inmates are also considered "seen" for a cell front visit if they are on suicide watch.  Pulling inmates on suicide watch out of their cells poses significant security risks and may result in decompensation of the inmate.  For example, to see inmates on suicide watch outside their cell, the inmate must be cuffed up and walked to an office.  This requires an inmate to walk past other inmates while in a suicide smock. Once in the office, the inmate is exposed to a variety of items he/she can use to harm him/herself such as paperclips, staples, pens, etc.  The suicide cells are routinely searched and cleaned to ensure there are no items that can be used for self-harm available to the inmate.  Offices are not subject to these strict safety measures.

10.     As such, seeing inmates on suicide watch is most appropriately and safely done in a cell front/segregation visit. If an inmate is need of a contact outside of the suicide watch pod, then this would be done on a case by case basis.

11.     Under Performance Measure 94, inmates on suicide watch are considered "seen" when seen in a cell front/segregation visit.  Plaintiffs take no issue with this methodology being used for this measure.

2

**Cell Front Visit When There is a Lockdown**

12.     As explained in my July 29, 2016 Declaration (Doc. 1644-1), the only other time a file would be marked as compliant with being "seen" cell front/segregation visit, and the inmate did not refuse to come out, is when inmates are on hard lockdown. During hard lockdowns, no inmates may leave their cells. This has to be noted in the documentation and the monitors confirm it occurred. These situations are extremely rare.

13.     It is my understanding that security staff refer to a "hard lockdown" as a lockdown that affects an entire complex for an extended period of time. The mental health monitors, however, have also included some lockdowns that may only affect a specific unit for an extended period of time as "hard lockdowns" while auditing because many of the units within the Arizona State Prison System are the size of a typical prison complex. Therefore, my reference to "hard lockdowns" in my July 29, 2016 Declaration referred to lockdowns that may affect a unit or an entire complex for an extended period of time.

14.     Thus, for an inmate to be marked as seen for a mental health contact the following four steps must occur: (1) there is a unit or complex lockdown that prevents the inmate from being transported for a scheduled encounter, (2) the lockdown is documented in the inmate's contact, (3) the monitor is able to confirm the lockdown occurred, and (4) the mental health encounter occurs at the inmate's cell front and is documented in the inmate's records. If all of these steps are verified, then, and only then, is the inmate counted as being "seen" and the contact is marked compliant.

15.     The mental health monitors on average review around 250 charts per complex each month at the seven corridor facilities (Eyman, Florence, Lewis, Perryville, Phoenix, Tucson, and Yuma) that house inmates who are MH-3 or above. On average, the monitors review a total of 1,750 charts each month. Over the last 17 months of monitoring (March 2015 – July 2016), the mental health monitors have audited approximately 30,000 charts.

16.     The mental health monitors could only recall between six and eight instances in which all four steps above occurred and a contact was marked compliant during a lockdown.  Therefore, the instances when a cell front visit is counted as being "seen" during a lockdown is less than 0.026% (8/30,000) of all mental health contacts reviewed.

17.     Because these instances are rare and cannot be foreseen, these contacts are marked compliant in order to encourage mental health staff to contact inmates during the rare instances when there is a lockdown in a unit or complex for an extended period of time that would prevent the inmate from being contacted otherwise.  During a lockdown, it is better for an inmate to receive a cell front visit, rather than no visit at all.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of September, 2016.

NICOLE TAYLOR, PH.D., J.D., CCHP-MH

4