CV-12-00601-PHX-DKD, August 26, 2016

1              **UNITED STATES DISTRICT COURT**

2              **FOR THE DISTRICT OF ARIZONA**

3                    _____

4

**Victor Antonio Parsons, et al.,**      )

5                                         )
                    Plaintiffs,           )   CV-12-00601-PHX-DKD

6                                         )
                    vs.                   )   Phoenix, Arizona

7                                         )
                                          )   August 26, 2016

8    **Charles L. Ryan, et al.,**         )   4:05 p.m
                                          )

9                    Defendants.          )
     _____)

10

11

12

13   **BEFORE:  THE HONORABLE DAVID K. DUNCAN, MAGISTRATE JUDGE**

14              **TRANSCRIPT OF PROCEEDINGS**

15                 **STATUS HEARING**

16

17

18

19

20

21   Transcriptionist:
     **Elaine Cropper**

22   Sandra Day O'Connor U.S. Courthouse
     401 West Washington Street, SPC 35

23   Phoenix, Arizona  85003-2150
     602.322.7245/(fax) 602.322.7253

24

25   Proceedings Recorded by Electronic Sound Recording
     Transcript Produced by Transcriptionist

                    United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

1                              **APPEARANCES**

2

For the Plaintiffs:
3              **AMY B. FETTIG, ESQ.**
               ACLU - Washington, D.C.
4              915 15th St. NW, 7th Fl.
               Washington, DC  20005
5              202.548.6609/(fax) 202.393.4931

6              **KIRSTIN T. EIDENBACH, ESQ.**
               Eidenbach Law, P.C.
7              P.O. Box 91398
               Tucson, AZ  85752
8              520.477.1475

9              **MAYA STOCK ABELA, ESQ.** (Present telephonically)
               Arizona Center for Disability Law - Tucson, AZ
10             177 N. Church Ave., Ste. 800
               Tucson, AZ  85701
11             520.327.9547/(fax) 520.884.0992

12  For the Defendants:
               **DANIEL P. STRUCK, ESQ.**
13             Struck, Weineke & Love, P.L.C.
               3100 W. Ray Rd., Ste. 300
14             Chandler, AZ  85226
               480.420.1600/(fax) 480.420.1695
15

16             **LUCY M. RAND, ESQ.**
               Office of the Attorney General
16             15 South 15th Avenue
               Phoenix, AZ  85007
17             602.542.7683/(fax) 602.542.7670

18

19

20

21

22

23

24

25

                    United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

<u>**P R O C E E D I N G S**</u>

(Court was called to order by the courtroom deputy.)

(Proceedings begin at 4:05 p.m.)

THE COURT:  Thank you.  Please be seated.

COURTROOM DEPUTY:  Civil case number 12-601, *Parsons,
et al. v. Ryan, et al.*, on for a status hearing.

THE COURT:  Would counsel please state their
appearances for the record?

MS. FETTIG:  Amy Fettig for the plaintiffs, Your
Honor.

MS. EIDENBACH:  Kirstin Eidenbach also for the
plaintiffs.

THE COURT:  Thank you very much.

MS. ABELA:  Maya Abela for Arizona --

MR. STRUCK:  Dan Struck.  I'm sorry, Your Honor.
There is someone on the phone.

THE COURT:  Who is on the phone?

MS. ABELA:  Maya Abela for Arizona Center for
Disability Law.

THE COURT:  Thank you.

MR. STRUCK:  Dan Struck and Lucy Rand for the
defendants.

THE COURT:  Thank you very much.  Thank you, all, for
being here and for submitting what you've submitted.

Ms. Rand, I've taken a look at what you have just

United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

1   sent over at 3:44.  I can't say that I've fully digested it but

2   at least it allows me to understand what your point is and so I

3   will use that as we go through, as I told you we would.

4          We have a couple items on the agenda, but the first

5   one we're going to do is track through the tables that the

6   respective parties have submitted, each of these items, and go

7   through and find out whether or not there remains a

8   disagreement, rule on that disagreement, and provide, in those

9   cases where there is a willingness on the defendant to provide

10  the documents, obtain a date certain for those documents.

11         So the first one we turn to is March 2015 in which it

12  now has the highlighting that the defendant has produced in

13  which they say that this has never been -- that this is new

14  material that's not been the subject of a request previously.

15         I guess I have to ask a question.  The obligation to

16  produce the information to determine whether or not there's

17  been compliance with the stipulation is, I assumed from

18  Exhibit E, for instance, with maximum custody where it was

19  delineated in the exhibit to the stipulation about and what

20  kind of documents that would be requested.

21         So at the get-go you had this original request but

22  then I am certain that the parties have worked back and forth

23  to try to make sure that they continue to be efficient in what

24  they are asking for and that if, as I imagined, it did happen,

25  there was further education about what particular documents

United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

 1   could be relevant to the question of whether or not there is a

 2   compliance with a stipulated performance measure.  There would

 3   be some modifications but it also didn't seem to me, in the

 4   context of such a big production, that it should always be --

 5   or that it should necessarily be that you would agree that

 6   we're talking about these certain documents and then down the

 7   road say, "Oh, by the way, there are also these other ones we

 8   haven't been talking about that we're expecting as well," and

 9   maybe that's just a process of time, that you get through it

10   after a while that you come to a common understanding that is

11   what is expected.

12          But that is the first issue that we see for March

13   2015.  And so I think that if it's been -- the issue has

14   been -- or the question has been posed by the highlighting of

15   the defendant saying -- so that I don't put words in your

16   mouth, that these are -- all documents requested in which

17   plaintiffs already requested documents but then added on to the

18   request as of yesterday are highlighted in yellow.

19          So the defendants are taking the view that the

20   entirety of the March 2015 Eyman missing documents, that the

21   first they learned of this was in the plaintiffs' submission

22   this week.

23          And so I guess I should first ask, Ms. Rand, did I

24   fairly restate what your position is with respect to March of

25   2015?

CV-12-00601-PHX-DKD, August 26, 2016

1        MS. RAND:  Yes, Your Honor.  We are not actually

2  objecting to the documents.  We just wanted the Court to know

3  that this is how it progresses, is that one day they say, "We

4  need these documents for this month."  And then the next day

5  they give you a whole different list and wonder why you haven't

6  produced them.  And so that's why we're just saying that

7  bringing it to the Court's attention, that these requests morph

8  over time.

9        We're not objecting to the fact that we -- we're not

10  objecting and saying that we should not produce them.  We're

11  just bringing it to --

12        THE COURT:  Okay.  Well, I appreciate that.

13        So with respect to the March 2015 program attendance

14  sign-in for non-SMI and program attendance sheets for SMI,

15  Mental Health and 326, when would you be in a position to give

16  those missing documents to the plaintiffs?

17        MS. RAND:  Well, Your Honor, I think it might be

18  efficient to say that I've talked to the plaintiffs informally

19  and there's only a few documents that we've put in here that we

20  noted that we have already produced.  As far as all of the

21  documents within this entire exhibit, we are able to produce

22  those by I believe it's June -- I'm sorry, not June, October 14

23  I believe is the Friday.  If it's not, we are saying by October

24  15 but I think it's actually the 14th, the Friday.

25        And so we've already discussed that and we're saying

United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

1    that we can produce it, produce all of these documents by that

2    date.

3              THE COURT:  All of them on the entire exhibit that

4    you've submitted?

5              MS. RAND:  Yes, except for a couple items that we

6    said that we already produced.

7              THE COURT:  I see.

8              And what does plaintiffs think about that?

9              MS. FETTIG:  Well, Your Honor, we welcome the October

10   15 date.  I do want to clarify a few things, however.

11             We've always requested the same documents, and that

12   is the documents that underlie the compliance findings for the

13   maximum custody performance measures, known as the maximum

14   custody notebooks.  What is outlined in the chart that we

15   provided to the Court is an extreme granular view of everything

16   that has been produced and has not been produced, that is the

17   typical customary documentation in those max custody notebooks.

18             As the chart demonstrates, we've gotten some

19   documentation but others is missing.  We wanted to provide the

20   Court with a very holistic view of the type of documents that

21   we're looking for, what's been produced, what hasn't.

22             Ms. Rand did approach us prior to the beginning of

23   this hearing and mentioned the October 15 date for a full

24   production through June 2016 of the missing documents and we

25   think that that is appropriate.

United States District Court

8

CV-12-00601-PHX-DKD, August 26, 2016

1      I would say that we have not had an opportunity to

2  discuss the documents that defendants say that we have received

3  that we say we haven't.  We did do -- we found that we did have

4  an error last week which I am very sorry for.  But that

5  prompted us to do a complete re-audit of every single document

6  this week.  The list that we provided is the list that we have.

7  It may be that there was a downloading mistake that could have

8  happened or sometimes defendants have thought they produced

9  something to us that we didn't actually get.

10     So I would ask that if we find we don't have the

11 document, and I will gladly look again once Ms. Rand tells me

12 that there are documents that we have received, I would like to

13 ask that those be reproduced.

14     And when we check our documents, we check them from

15 every counsel so we're checking the ACLU office, the PLO

16 office.  There may have been a downloading mistake in one

17 office but I don't think that happens across that many offices,

18 but we do welcome the full production.

19     I would say in the future, we would hope that

20 defendants' counsel would provide us their reports more in

21 advance than 15 minutes before the hearing, because I would

22 like to fully react to this document and have not been able to

23 give it the attention that I normally would do.  But a full

24 production by March 15 would satisfy our production needs for

25 June 2016.

United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

1    What I am concerned about, though, going forward, and

2    we discussed this in our hearing last week, is that we need a

3    regularlized efficient timely production of these documents so

4    that we can do our job which is to analyze the findings of

5    compliance.  We haven't been able to do that in a way that we

6    need to because of the delay in production.  And we are talking

7    about the same documents repeated week -- or month after month

8    after month.  These are documents that are given to the wardens

9    to make their compliance findings in a packet.  It should not

10   be that difficult to produce these documents because they are

11   already gathered and produced for the compliance findings.  If

12   it is that difficult, that raises other questions for us.

13   THE COURT:  Well, we did talk about it at the last

14   hearing and the State did say that they thought that they would

15   be able to get exactly on that track perhaps in part because of

16   the additional resources that they are bringing to the table

17   that they talked about.  I think that it is contemplated that

18   this will become more routine, that it will be just more

19   mechanized in terms of what is expected and the timetable.

20   That's what I understood from the State at the last hearing.

21   That's correct.

22   MS. RAND:  Yes, Your Honor.  We are going to get on a

23   more regular schedule with that.  I do want to highlight that

24   the documentation that we produce is hundreds of thousands of

25   pages.  It's not --

United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

1          THE COURT:  I appreciate that but it is helpful to be
2   at the granular state for both sides and for me.  The only
3   other thing that I would drop a footnote is that if there are
4   issues that survive, what is going to be the next discussion
5   that you're going to have about this where you say that all
6   documents are missing.  I don't know exactly what that is; "all
7   documents" is undefined to me.  So you would need to tell me
8   what that is so that I could fully engage on the subject.

9          But I think what should happen is that in terms of
10  these two tables, that you should continue the discussion that
11  you had here today which I have to do what they do at the House
12  of Commons and that is slap the table.  I'm very thankful that
13  you were able to do that because it is more efficient for you
14  to do it because in terms of granular knowledge, you all have
15  that right now.  I will, if necessary, get there.

16         But to the extent that I'm in a work in progress on
17  that, I can do inefficient things that neither side would like
18  but you can maybe correct or corral against that by deciding
19  yourselves as the most informed people about what is the best
20  thing to do until I get to that stage.  Maybe I won't have to
21  get to that stage.  Maybe you can solve it all yourselves.

22         So I think what should happen with respect to the
23  documents that you say you already provided, you will give
24  some time now to the plaintiffs to take a look at that and to
25  double-check to make sure that they don't already have them.

United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

```
 1   If they say they don't already have them, they will let you

 2   know and then you'll say, "Well, here's where we think we did,"

 3   and you'll be able to work that out.  If there are still issues

 4   on that, we'll put it off, these two tables, until the next

 5   time that we meet for our monthly meeting.  That seems to make

 6   sense on this agenda item.

 7           Does everybody agree with that?

 8           MS. RAND:  Well, actually, Your Honor, the number of

 9   pages that we're talking about is only a couple of pages.  So

10   if they say that we did not produce them, we will, in fact,

11   reproduce them.  There's not a reason for us not to do that.

12           THE COURT:  Okay.  Well, I'm not in favor of making

13   things more difficult.  An extra copy would be fine.

14           The next issue is one that we talked about last time

15   with respect to Mr. Fathi's concern about the idea that there

16   were people who were deemed to be worthy of employment

17   sanctions and the question about whether or not they have

18   participated in the assembling of data that was provided to the

19   plaintiff's.

20           MS. RAND:  Okay.  Your Honor, we obtained the

21   information that you requested.  And out of the employees that

22   were sanctioned, there's only one officer.  His name is -- or

23   should I specify it? -- officer that we have noted that -- I'm

24   sorry.  I apologize.  Let me backtrack.  There's one

25   probationary officer who we did not renew his contract with and
```

United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

1   he was charged with falsification of a record.  But it was not

2   any type of record related to monitoring.  It was just a single

3   correctional service journal log where he and another officer

4   had apparently switched positions.  But he still recorded the

5   time as his.

6        So that's what is -- that's the only allegation

7   there.  And we are going through the documents.  It occurred in

8   relationship to the Cynthia Apkaw death and so we are going

9   through all of the documents that have the officer's name and

10  we can provide a list of that later.  We, unfortunately, were

11  not able to get through all of the documents to find his --

12  where he has participated in some way in monitoring the max

13  custody performance measures.

14       So he was a front-line officer so he was the officer

15  that would, let's say, go up to the inmate and say, "Would you

16  like to go out to rec?" and then write it on the form.  Or he

17  might be the officer that somebody says, "I have a refusal to

18  go to rec.  Would you come and witness this?"

19       And so those are the type of entries that that

20  officer might have made.

21       THE COURT:  Over what time period?

22       MS. RAND:  The -- I do.  I believe that it was --

23  well, during the time that is relevant to the monitoring, it

24  would be March 2015 through the beginning of December 2015 at

25  Perryville only.

United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

1          THE COURT:  So among all of the people that were the

2    potential subjects of discovery that the plaintiff's were

3    interested in because of their concern that there might have

4    been a taint from people who had engaged in inappropriate

5    behavior in an employment context, that they may have done

6    dishonorable things in the reporting context, your research has

7    produced that there was one potential such person and that to

8    the extent that that person was involved, it was in the

9    reporting of the what would be perhaps called the source

10   document rather than a compilation.  Is that fair to say?

11         MS. RAND:  Yes.  That's correct.  And, actually, I

12   misspoke.  There's actually two individuals, one related to

13   each of the different deaths that you asked us to look into.

14   So I was only speaking as to the Cynthia Apkaw death.

15         THE COURT:  All right.  So the total question was, if

16   I am -- and I don't -- I'll give the plaintiffs a chance to

17   correct it because I don't want to re-formulate a question at

18   the risk of not addressing what their concern was.  But as I

19   appreciated the concern, it was what people whom have been

20   sanctioned for employment misconduct were involved in the

21   reporting requirements pursuant to the stipulation?

22         MS. RAND:  That's correct.

23         THE COURT:  So now I understand you to say that there

24   were two people?

25         MS. RAND:  That's correct.  There's one officer that

United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

1   was also involved at Florence-Kasson and I have not found any

2   entries for that person.  I'm looking for the entries.  All I'm

3   saying is that I am unsure of whether they are in any entries

4   but there's a possibility that they could have because they are

5   considered a front line officer.  But I don't know whether he

6   actually worked in the same locations as where they were

7   actually performing the max custody monitoring, so I only got

8   through part of the officer that was in the Apkaw death, not in

9   the Saba death.

10           THE COURT:  All right.  And in the second officer's

11  situation, what is the time period that that person could have

12  potentially been involved in assembling materials that were

13  part of the production to plaintiffs with respect to monitoring

14  compliance with the stipulation?

15           MS. RAND:  The potential time period would have been

16  March 2015 through the end of February, '16.

17           THE COURT:  Okay.  And you, at this point, don't know

18  this with respect to the second individual, the full scope of

19  that person's potential participation in -- or effect on

20  documents relevant to reporting on the performance measures; is

21  that correct?

22           MS. RAND:  That's correct.  I started poring through

23  the documents but I haven't found the individual's name yet but

24  I haven't completed the review as well.

25           THE COURT:  All right.

United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

 1          Mr. Struck?

 2          MR. STRUCK:  One of the issues that I think the Court

 3   needs to be aware of, there's more than one source document

 4   that they look at when they are putting together these.  So

 5   it's going to take some time to take a look at the source

 6   documents that were provided and ensure that the documentation

 7   that the ultimate score relied on wasn't prepared by this

 8   particular officer.  And if it was, whether there isn't some

 9   other source document that would confirm that, for example,

10   out-of-cell time is primarily what we're talking about because

11   the officers are usually the ones that are -- one of the source

12   documents is there's a cell front sheet that they mark down for

13   out-of-cell time.

14          But there's other documentation that can be reviewed

15   to determine whether or not that actually occurred even if this

16   officer was involved.  So it's going to take a little bit of

17   time to figure that out if, in fact, this officer was involved

18   in preparing those face sheets.

19          THE COURT:  Okay.  Let me make an observation that

20   may be misinformed so I will give you an opportunity to say if

21   you do think it is misinformed, either of you.  But we seem to

22   know now that there were two individuals involved.  We know

23   that these people are no longer involved.  We know that we are

24   in August of 2016 and we know that there was a time limit where

25   with respect to one of these officers, it was December of 2015,

United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

1    which is the end, and then March of 2016 for the other.

2            And so we know that across the board there were

3    issues with respect to compliance on these performance

4    measures; but really because of the passage of time, I wonder

5    whether it's really worth the candle of going into this further

6    because going forward, we know that they can't continue to be

7    involved in a way that would taint the process because they are

8    no longer there.

9            And so that's just my rough observations about this,

10   that I would ask the plaintiffs to respond to.

11           MS. FETTIG:  Yes, Your Honor.  We are actually

12   concerned about the prior compliance findings as well as the

13   compliance findings going forward.

14           What I would say is that the idea that 21 staff

15   involved in the fraudulent cover-up involving two of our

16   clients, the suicides in the Kasson unit and Perryville, that

17   only two of them were actually unit level staff, I'm somewhat

18   skeptical of.  What I would ask is that defendants actually get

19   a declaration to this effect.  We are very uncertain of

20   unsupported statements by counsel.  We got burned in the

21   medical records situation.  We would prefer to go forward with

22   more assurance and actual declaration to the effect that these

23   21 staff members, none of them were unit level staff involved

24   in daily documentation and that there were just two that were.

25           THE COURT:  Well, I think that's -- I think that's

United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

1   what she just said.  Do you adopt what . . .

2          MR. STRUCK:  There is only two.  I just -- I take

3   exception to the reference to getting burned.

4          THE COURT:  Well, I don't want to fan the flames of

5   the fire unnecessarily but I will say that I am kind of

6   inclined to accept counsel's representation in Court.  I expect

7   people to mean what they say and to say what they feel they are

8   informed to say, and that if it happens in front of me that I

9   see that somebody has not done that, then you can be assured

10  that there will be a fire.

11         But until we get to that point, I am thinking that it

12  is appropriate to take the representation of counsel, and it

13  sounds to me like they have said what you are concerned about,

14  and that is they have said that there have been two people and

15  that's all and if it turns out that that is not true and that

16  counsel should have known that that wasn't true, then there's

17  going to be a fire that is going to be burning and I'm going to

18  be interested in that fire.

19         But until we get to that point, I don't think we need

20  to have statements of counsel because I think it's very clear

21  to counsel on both sides that everybody has an obligation of

22  diligence and candor with respect to not only dealing with the

23  Court but in dealing with one another.

24         So I appreciate what you said but it seems like we've

25  got that issue tied up now.

United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

1    MS. FETTIG:  Well, I'm not concerned about counsel's

2  candor.  What I am concerned about is that someone be

3  accountable to what counsel is told.  Those are two different

4  things and we believe that bringing in a serious declaration,

5  someone saying something under oath perhaps brings out a

6  greater level of candor and carefulness than an undeclared

7  statement.

8    THE COURT:  Well, there may be times in this case

9  where that is appropriate.  I don't think that's appropriate in

10  this case and there may be other cases where that's appropriate

11  with this fact set but that's not this case.  And so I won't

12  pursue that.

13    The next issue that I wanted to address was the

14  timing of the read-only access.  You said you were going to

15  find out about that, Mr. Struck?

16    MR. STRUCK:  Yes, Your Honor.  I found out yesterday

17  from Assistant General Counsel of Corizon that September 19 is

18  going to be the day that they believe it will be ready to go

19  live, that they will have an opportunity to do whatever

20  software engineering they need to do, test it and plaintiff

21  should have access by September 19.

22    THE COURT:  Will there be steps that plaintiffs will

23  need to take either by way of obtaining hardware, software, or

24  training to be able to go live on that date, do you know?

25    MR. STRUCK:  I am not aware of that.  Whether or not

United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

1    they need any software or hard -- I mean I'm assuming they

2    already have the hardware.  I know that we -- we can have

3    discussions prior to that date to make sure that they are ready

4    to go.

5              THE COURT:  Okay.  Would you do that and make sure

6    that so that on the 19th that it's not, "Oh, now we're ready to

7    go so we'll schedule your training in two weeks," or, "You need

8    to get this thing and you have to order it."  I would like it

9    so that on the 19th when you say "live," it is live.

10             MR. STRUCK:  Okay.

11             With respect to -- I mean, I know plaintiffs' counsel

12   have access to the records when they go on their tour so they

13   are familiar with -- and they are also familiar from other

14   jurisdictions.

15             THE COURT:  Oh, I see.

16             MR. STRUCK:  With that particular software so -- but

17   we'll make sure that there isn't anything that they need to do,

18   any purchasing that needs to be done for them to be able to

19   access it.

20             THE COURT:  Okay.  Thank you.

21             Anything plaintiffs wanted to say about that date?

22             MS. FETTIG:  That date works for us and we appreciate

23   that, the Court's concern.

24             THE COURT:  Thank you.

25             And by the way, on dates, it is -- the Friday is the

United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

1   14th -- or 15th of October is a Saturday, so the date that

2   we're talking about for the production would be the Friday, the

3   14th, just to make sure that the record is clear about that.

4              So are there other issues that the Court should

5   address today?

6              MS. FETTIG:  Your Honor, we just wanted to clarify

7   some issues related to the mediation and the Court's order.

8              THE COURT:  Yes.

9              MS. FETTIG:  It is our understanding that we will

10  move forward in the general way that mediation has been

11  conducted in the past and we just wanted to let the Court know

12  that there are two matters.  One has already gone to a meet and

13  confer.  One will go to a meet and confer on Tuesday.  If there

14  are remaining issues after the meet and confer, we would expect

15  those issues to be combined and go to mediation in front of

16  Judge Bade --

17             THE COURT:  Bade.

18             MS. FETTIG:  Bade.

19             THE COURT:  I'm not being -- I will tell you that

20  when she first -- when I first met her, I mispronounced her

21  name because I knew somebody who pronounced the name like you

22  did.  It took me a while and so I had only just quickly

23  corrected you because I wish somebody had corrected me.

24             MS. FETTIG:  I appreciate it.  Would be far better to

25  be wrong in front of you than her.

United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

1          THE COURT:  I think she would be understanding.  But

2    after a while, probably people notwithstanding good intentions,

3    they do get tired of people.  I'm sure I've mispronounced your

4    name and Mr. Fathi's name pretty routinely.  How do you say it

5    by the way?

6          MS. FETTIG:  Fettig.

7          THE COURT:  Yours I think I'm better at.

8          How about Mr. Fathi?

9          MS. FETTIG:  Fathi is correct.  You're doing well.

10          THE COURT:  Okay.

11          What I talked about last time was that you all would

12    try to confer and come up with a schedule that perhaps you

13    could memorialize on paper about where things stood so that it

14    would be a timetable that everybody knew about so that we knew

15    what was in the pipeline and where it was and what was ready to

16    be dealt with by me.

17          I do and am hoping to get out if not this weekend,

18    the first of next week, the order on the construction of some

19    of the disagreed upon or where you need guidance on what the

20    stipulation means.

21          I'll get that out very soon.  Actually, there are a

22    couple of issues that I kind of had hoped that I might be able

23    to pose today but then as I think about it I don't know that I

24    have -- I don't have everybody here to talk about that.

25          So I may issue an order that addresses 90 percent of

CV-12-00601-PHX-DKD, August 26, 2016

1    what you asked me to consider and then I may ask a couple of

2    questions in that order to make sure that I am fully

3    understanding what you're talking about and fully understanding

4    of the context.

5         But I didn't mean to cut you off with respect to what

6    you were saying about the mediation.  Are there other issues

7    that you have need to hear from me about that?

8         MS. FETTIG:  You've clarified it and so would it be

9    helpful for us, for example, at the first September meeting if

10   there is a mediation that we expect to go forward and have a

11   date for, to give you a timeline on that to keep you informed

12   of where we are?

13        THE COURT:  Yes.  I don't think there's any -- I

14   mean, you know, as you know from what I've said in the past, I

15   don't intend, and haven't ever wanted, to be involved in the

16   mediation process with respect to knowing what is going on

17   there.  But I do think it's okay for me to know about what the

18   timetable is and what issues are presented, because the issues

19   that are presented are recorded in a filed motion to enforce.

20   So we know what issues generally.  I don't know exactly when

21   you get to the mediations, how you might refine those and maybe

22   decide some are more important than others.  I don't know about

23   that, but at least it would be a way for us to keep an idea

24   about what issues are likely to -- or what issues are being

25   addressed and where they are in the pipeline.

United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

1      And, again, if you could sometime meet and confer

2  about coming up with something in paper that is a timeline of

3  the issues that have been presented to mediation.  Mediation

4  has resolved them or mediation didn't resolve them, they are

5  before me, where they are in that process, how you would like

6  to move forward.

7      Because I've given you the ability in the past to

8  control the briefing schedule on that and oral argument

9  schedule and so, again, with so many players involved, I think

10 that that makes sense for you to do it and you can, in that

11 same document, propose those dates, show it to me and we can on

12 an ongoing basis, continue to revise it so that we're staying

13 on top of it and maybe also you could use one of these

14 printed-out sheets that is a calendar or something and you

15 could put on it also our monthly meetings.  And so everybody

16 knew what would be the most efficient way to think about the

17 time that the lawyers have already carved out with respect to

18 any issues that arise.  That's what I was just thinking.

19      MS. FETTIG:  Thank you, Your Honor.  That sounds

20 enormously helpful actually.

21      THE COURT:  Okay.  All right.

22      Anything else from plaintiffs?

23      MS. FETTIG:  No, Your Honor.

24      THE COURT:  From defendants?

25      MS. RAND:  Your Honor, I just wanted to go on the

United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

1    record and say that there's just one item that is on the items

2    of documents to be produced.  I said I didn't object to any of

3    it.  The only thing I wanted to mention is that there's what

4    they call activity schedules and sometimes they separate them

5    out and I'm not sure if they separated it out.

6              THE COURT:  Which page are you on your exhibit?

7              MS. RAND:  I think I may be mistaken.  Sorry.

8              THE COURT:  Oh, there are no page numbers.  Add page

9    numbers.

10             MS. RAND:  It would be the third page from the back I

11   think or second page from the back.

12             THE COURT:  Okay.  So this is the one that at the

13   very top has Log and Property Logs for HICs (phonetic)?

14             MS. RAND:  That's correct.  I just wanted to clarify

15   just in case it's contained separately in here in another area

16   that the activity schedules for SMI, non-SMI programming.

17   Sometimes they are actually one document and so I just wanted

18   to clarify that in case there's any dispute about it later, but

19   I think they combined it in one in that location but I, for

20   some reason, had a recollection that they separated it in

21   another location but maybe I'm mistaken.

22             MS. FETTIG:  I think it does vary by facility

23   actually.  That's why we have recorded it that way, because

24   we're not clear sometimes.

25             MS. RAND:  Right.  So if it does come up to an issue,

United States District Court

25

CV-12-00601-PHX-DKD, August 26, 2016

1    we're not trying to avoid production.  It's just that we

2    sometimes -- and I think it did change over the course of time

3    that it was two and then it became one and at different times

4    for different complexes so I just wanted to clarify that.

5              THE COURT:  Okay.  All right.

6              Well, anything else?

7              MS. RAND:  No, Your Honor.

8              THE COURT:  Okay.  Thank you, all, very much for

9    coming in.  I appreciate it and I'll look forward to the

10   product of your continued discussions about this and the

11   efficient consideration of how to move forward.

12             We'll see you in about 10 days' time.  Thanks very

13   much.

14             MS. RAND:  Thank you.

15             MS. FETTIG:  Thank you, Your Honor.

16             MS. ABELA:  Thank you.

17        (Proceedings concluded at 4:38 p.m.)

18

19

20

21

22

23

24

25

United States District Court

CV-12-00601-PHX-DKD, August 26, 2016

C E R T I F I C A T E

     I, ELAINE M. CROPPER, court-approved transcriber, certify that the foregoing is a correct transcript, to the best of my skill and ability, from the official electronic sound recording of the proceedings in the above-entitled matter.

     DATED at Phoenix, Arizona, this 18th day of October, 2016.


                                 s/Elaine M. Cropper
                            _____

                                  Elaine M. Cropper

United States District Court