Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org
         dpochoda@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia
Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith,
Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner,
Joshua Polson, and Charlotte Wells, on behalf of themselves and all
others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
         adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-DKD <br><br> **PLAINTIFFS' STATEMENT REGARDING DEFENDANTS' AUGUST 2016 CGAR DATA AND DEFENDANTS' ONGOING NONCOMPLIANCE WITH THE STIPULATION** |

LEGAL133532052.1

1    In anticipation of the parties' November 9, 2016 Status Conference, this Court
2    ordered Plaintiffs to provide:

3    • Responses to the Defendants' August 2016 CGAR data for the 12 Performance
4      Measures found noncompliant on May 20, 2016 (Doc. 1583);

5    • An updated FRE 1006 summary of the CGAR data; and

6    • Comments on Defendants' newly submitted remedial plan addressing the
7      Performance Measures found noncompliant on October 7, 2016.

8    [*See* Orders dated October 7 and October 27, 2016 (Docs. 1709 and 1727)]  Accordingly,
9    Plaintiffs submit the following statement, with a summary of the CGAR data attached as
10   Exhibit 1 to the Declaration of Corene Kendrick.

11   **I.     INTRODUCTION**

12   **A.     Defendant's Remediation Plans Are Plainly Inadequate**

13   The Court noted in the October 5, 2016 status hearing that Defendants' June 13,
14   2016 "remediation plan . . . does seem to be failing . . ." and the Court noted that there
15   needed to be "in the next reporting period some real valid change."  [Transcript of Oct. 5,
16   2016 Status Conference ("10/5/16 Tr.") at 7:1-15]  The Court also stated, "I'm letting
17   everybody know that if things don't go well in August, that then we will be talking about
18   the next step with respect to how to proceed on the ninth of November."  [*Id*. at 65:8-11]

19   Unsurprisingly, and unfortunately, the August 2016 CGAR reports show yet again
20   that Defendants' June remedial plan for the 12 measures found non-compliant in May
21   2016 is not achieving the transformative improvements repeatedly promised by
22   Defendants.  Rather, the most recent data confirm the Court's previously articulated
23   concern that the remedial plan was not specific or focused, and that it was inadequate and
24   vague.  [*See, e.g.*, Amended Transcript of June 24, 2016 Status Conference ("6/24/16
25   Tr.") at 4:9-10, 5:14, 6:4-7, 7:6-7]

26   Defendant's recently submitted remedial plan (Doc. 1729), addressing three
27   additional noncompliant measures, suffers from many of the deficiencies of their previous
28   remedial plan.  Most critically, Defendants' plan does not address the fact that their

1   contract with Corizon lacks adequate staffing levels on the ground where Corizon's
2   overworked and under-resourced health care staff attempt to deliver health care to
3   patients, nor does it address chronic health professional vacancies.  Rather, their Remedial
4   Plan is that Corizon will hire its own compliance monitors to do their own independent
5   audits of performance.  [Doc. 1729 at 3]  Using scarce resources to hire more bean-
6   counters instead of badly needed clinical staff is exactly the wrong approach.

7        Nineteen months after the Stipulation took effect, Defendants continue to fail to
8   address in any meaningful way their ongoing and substantial noncompliance.  In the
9   meantime, prisoners continue to experience needless suffering and harm due to
10  Defendants' noncompliance and failure to provide a constitutionally adequate health care
11  system.

12       **B.    Defendants' Remedial Plans Fail to Address Critical Staffing Issues**

13       Plaintiffs previously brought to the Court's attention that Defendants' chronic and
14  severe shortages of health care staff were the cause of the systemic noncompliance
15  reflected in the monthly CGAR reports, and that Defendants' own documents
16  acknowledged that these chronic shortages of staff were the primary contributing factor to
17  noncompliance.  [*See, e.g.*, Doc. 1668 at 4 (citing monthly CQI meeting minutes from
18  multiple institutions)]

19       These shortages continue and are nothing less than shocking.  [Declaration of
20  Corene Kendrick in Support of Plaintiffs' Statement Regarding Defendants' August 2016
21  CGAR Data and Defendants' Ongoing Noncompliance with the Stipulation ("Kendrick
22  Decl.") ¶ 5, Ex. 2 (September 2016 Staffing Report, ADCM659629-ADCM659639)]  At
23  six of the ten state facilities, the Medical Director position (a physician position), is
24  vacant.  [*Id.*]  Statewide, the system has a 37% vacancy rate for staff physicians, and at
25  Tucson, a prison with over 5000 prisoners, all 3.5 physician positions are vacant.  [*Id.*]
26  The statewide vacancy rate for psychologists is 59%.  [*Id.*]

27       Defendants' quality improvement meeting minutes illustrate the impact of these
28  critical shortages on patient care.  [*See, e.g.*, Ex. 3, **Douglas** CQI meeting minutes, at

ADCM660425, June 8, 2016 (report on prison's performance on standards related to access to care and sick call found "Nursing numbers and Provider numbers were down because of Provider vacancies"); *id.* at ADCM661439 and 661441, July 13, 2016 (audit of access to care on every yard found "we are at 13%.  This is due to the patient not seen by provider within the 14 day period.  We are so low because of the lack of providers" and regarding Douglas prison's noncompliance with Performance Measure 95,[1] the noncompliance was because "Psych Associate has been covering 3 complexes and just missed follow up"); Ex. 4, **Eyman** CQI meeting minutes, at ADCM660429, June 15, 2016 (16 open vacancies); at ADCM661637, September 20, 2016 ("We have identified that with the loss of the providers listed below there is a high probability of accruing both provider line and chronic care backlog"); Ex. 5, **Florence** CQI meeting minutes at ADCM660438, June 2, 2016 (chronic care backlog of 283 patients); *id.* at ADCM661457, July 1, 2016 (Florence "had audits for chronic care back in December where Dr. Johnson and her found a lot of discrepancies.  Dr. Johnson and Susan wrote up a plan to clean up these discrepancies… Due to management role-over this task was not completed…"); Ex. 6, **Lewis** CQI meeting minutes at ADCM660451-55 and 660460-61, June 16, 2016 (chronic care backlog of 192 patients, psychology backlog of 307 patients, psychiatry backlog of 248 patients; only nine (9) provider appointments for the month of May when 2,212 HNRs were filed and 1,094 nursing appointments occurred the same month and "currently seeking a provider"); *id.* at ADCM661463-65, July 5, 2016 (chronic care backlog of 254 patients; grievances are increasing due to decreased provider coverage); Ex. 7, **Perryville** CQI meeting minutes at ADCM661486, July 12, 2016 (increased backlog for psychiatry and provider lines); Ex. 8 **Phoenix** CQI meeting minutes at ADCM661493, July 20, 2016 (there was an "increase in informal grievances this month

---

[1] Performance Measure 95 requires "Only licensed mental health staff may remove a prisoner from a suicide or mental health watch.  Any prisoner discontinued from a suicide or mental health watch shall be seen by a mental health provider, mental health clinician, or psychiatric registered nurse between 24 and 72 hours after discontinuation, between seven and ten days after discontinuation, and between 21 and 24 days after discontinuation of the watch."

due to turnover in leadership"); Ex. 9 **Tucson** CQI meeting minutes at ADCM661505, July 7, 2016 ("we lost two of our Providers in June…" and chronic care backlog of 629 patients, provider backlog of 117 patients, mental health backlog of 102 patients); Ex. 10 **Winslow** CQI meeting minutes at ADCM661513, July 13, 2016 (compliance with Performance Measure 94[2] is "still at 0%, if tele-psych was available daily, would not be a problem"); Ex. 11 **Yuma** CQI meeting minutes at ADCM661516, July 18, 2016 ("FHA Johnson stated that the complex is behind on nurse sick call. It is hard to catch the backlog up with the current staffing and matrix"); at ADCM661695, September 15, 2016 ("Provider staffing continues to be an issue. We have two providers for all five yards")]

    **C.**     **Further Relief is Necessary to Ensure Plaintiffs Receive Constitutionally Adequate Care.**

The Court has patiently given Defendants multiple second chances and third chances to show their remedial plans will bear fruit. The results are in, and to the extent there are any improvements, they are sporadic and unsustainable. Based on the clearly documented failure of the June remedial plans developed by Defendants, and the patent inadequacy of the October remedial plans, the time has come for the Court to take action.

Defendants will not be able to achieve and maintain compliance until they create a realistic and detailed plan to develop a sustainable and functional health care system that will bring them into compliance with the requirements of the Stipulation. The foundation of this plan must address the staffing shortage—both the high vacancy rate for health care positions and the failure to allocate sufficient health care positions for the number of patients in the system.

---

[2] Performance Measure 94 requires "All prisoners on a suicide or mental health watch shall be seen daily by a licensed mental health clinician or, on weekends or holidays, by a registered nurse." The Court found Defendants noncompliant for Performance Measure 94 at Eyman, Florence, and Tucson prisons. [Doc. 1709] *See infra* page 15 regarding PM 94.

1          **1.      This Court has the Authority to Order a Staffing Plan**

2          The U.S. Supreme Court has held that a court's inherent power to order a

3    noncompliant party to develop remedial plans to achieve compliance includes the court's

4    ability to direct the party to include certain tasks and deadlines in the plan, because the

5    court "retains the authority, and the responsibility, to make further amendments to the

6    existing order or any modified decree it may enter as warranted by the exercise of its

7    sound discretion." *Brown v. Plata*, 563 U.S. 493, 131 S. Ct. 1910, 1946 (2011).  When

8    ordering a party to develop a remedial plan to come into compliance with a settlement or

9    past court orders, "the court is entitled to give some guidance . . . and set some deadlines

10   for compliance." *Armstrong v. Davis*, 275 F.3d 849, 873 (9th Cir. 2001).

11         **2.      The Stipulation Permits a General Order for a Staffing Plan**

12         This Court has expressed concern that the language of the Stipulation is a barrier to

13   issuing any order regarding staffing.  It is not.  The Stipulation contemplates that the

14   Court will have plenary authority to remedy non-compliance, permitting this Court "to

15   enforce this Stipulation through all remedies provided by law."  The sole restriction on

16   this Court's authority is that it "shall not have the authority to order Defendants to

17   construct a new prison or to hire *a specific number or type of* staff unless Defendants

18   propose to do so as part of a plan to remedy a failure to comply with any provision of this

19   Stipulation."  [Doc. 1185 ¶ 36 (emphasis added)]

20         It is a bedrock principle of contract law that the unambiguous language of a

21   contract will be enforced as written.  *See Bank One Corp. v. Indus. Comm'n of Ariz.*, 244

22   P.3d 571, 574 (Ariz. Ct. App. 2010) ("[W]hen parties bind themselves by a lawful

23   contract, the terms of which are clear and unambiguous, we must give effect to the

24   contract as written.").  In interpreting contracts, the Court must give meaning to every

25   word.  *Scholten v. Blackhawk Partners*, 909 P.2d 393, 396 (Ariz. Ct. App. 1995) ("a

26   contract should be construed to give effect to all of its provisions and to prevent any of the

27   provisions from being rendered meaningless").  By the terms of the parties' contract, the

28   Court cannot, in the absence of a plan from Defendants, issue an order to hire a *specific*

*number* or *type of staff*.  By excluding one certain type of staffing order from the Court's quiver, the Stipulation by implication permits  general staffing orders.   To read the provision to bar all staffing orders is to read the terms "specific number" and "type of" out of the contract.  Had the parties intended to restrict the Court from making any orders regarding staffing, the Stipulation would read, the Court "shall not have the authority to order Defendants to construct a new prison or *to hire staff*."  That is not the language the parties agreed to.

Moreover, the Court retains the authority to use all remedies provided by law to enforce the Stipulation, *including* the authority to order Defendants to "hire a *specific number or type* of staff," so long as the Court is ordering Defendants to comply with a plan they put forth.  [Doc. 1185 ¶ 36]  In the absence of such a plan, this Court may not order defendants to, for example, hire five physicians at every prison.  *However, nothing in the Stipulation bars this Court from ordering Defendants to develop a staffing plan*. The Stipulation provides that, when the Court finds noncompliance, as here, "it shall in the first instance *require Defendants to submit a plan approved by the Court to remedy the deficiencies* identified by the Court."  [*Id.* ¶ 36 (emphasis added)]

That health care staffing is deficient is manifest, as demonstrated in Defendants' own documents, including staffing reports, CQI minutes and Corrective Action Plans, as well as in Expert Reports from Drs. Pablo Stewart and Todd Wilcox.  [Doc. 1538-1 at 7-12; Doc. 1539 at 12-14]   Given the obvious staffing deficiencies, the terms of the Stipulation both contemplate and authorize this Court to order Defendants to develop a plan to increase staffing.

## II.   DEFENDANTS' AUGUST 2016 AUDITS SHOW THAT THEY ARE STILL NONCOMPLIANT IN MOST AREAS WHERE THE COURT HAS FOUND THEM NONCOMPLIANT

Defendants' CGAR data show that they have not achieved anything approaching system-wide compliance with the performance measures for which the Court has found them noncompliant.

**A.    Measures Found Noncompliant on May 20, 2016 (Doc. 1583)**

The Court found Defendants noncompliant with 12 performance measures on May 20, 2016.  Defendants continue to be noncompliant in many of these areas, as seen in the following charts summarizing compliance.  Noncompliant scores are highlighted in yellow; the numbers speak for themselves. In the few cases in which Defendants' August figures purport to show compliance, these figures are often meaningless—the result of Defendants' stubborn refusal to comply with the Court's orders on monitoring methodology.

PERFORMANCE MEASURE 11 (medication provided w/in 2 days after it is prescribed, or same day if STAT):  Found noncompliant at Eyman, Florence, Lewis, Tucson, Winslow, and Yuma.

Defendants continue to struggle at Eyman, Florence, Lewis, and Tucson prisons to achieve sustained compliance with this performance measure.

|          | Jan | Feb | Mar | April | May | June | July | Aug |
|----------|-----|-----|-----|-------|-----|------|------|-----|
| Eyman    | 58  | 66  | 62  | 66    | 60  | 68   | 50   | 66  |
| Florence | 78  | 77  | 80  | 70    | 72  | 78   | 70   | 77  |
| Lewis    | 42  | 38  | 30  | 36    | 48  | 60   | 63   | 73  |
| Tucson   | 78  | 78  | 66  | 73    | 81  | 77   | 76   | 80  |
| Winslow  | 87  | 90  | 90  | 90    | 93  | 93   | 90   | 87  |
| Yuma     | 68  | 78  | 83  | 72    | 83  | 80   | 93   | 87  |

[Kendrick Decl., Ex. 1 at 1]

PERFORMANCE MEASURE 13 (medication renewals without lapse or interruption):  Found noncompliant at Douglas, Eyman, Florence, Lewis, Perryville, Tucson, and Yuma.

Defendants continue to be noncompliant at Florence, Lewis, and Perryville, and have only achieved one month's worth of recent compliance at Douglas and Eyman prisons.

|             | Jan | Feb | Mar | April | May | June | July | Aug |
|-------------|-----|-----|-----|-------|-----|------|------|-----|
| Douglas     | 88  | 84  | 97  | 97    | 95  | 64   | 72   | 93  |
| Eyman       | 79  | 76  | 82  | 65    | 72  | 83   | 58   | 86  |
| Florence    | 56  | 70  | 58  | 69    | 55  | 70   | 44   | 77  |
| Lewis       | 80  | 80  | 76  | 67    | 73  | 56   | 70   | 69  |
| Perryville  | 43  | 52  | 50  | 72    | 63  | 65   | 51   | 63  |
| Tucson      | 66  | 75  | 89  | 71    | 89  | 86   | 92   | 90  |
| Yuma        | 98  | 98  | 84  | 84    | 92  | 92   | 82   | 90  |

[*Id.*]

PERFORMANCE MEASURE 14 (medication refills without lapse or interruption):  Found noncompliant at Douglas, Eyman, Florence, Lewis, Perryville, Tucson, and Yuma.

Defendants appear to have improved at most institutions, although a compliance level of 7% at Florence in July is shocking.

|             | Jan | Feb | Mar | April | May | June | July | Aug |
|-------------|-----|-----|-----|-------|-----|------|------|-----|
| Douglas     | 80  | 85  | 90  | 93    | 100 | 100  | 100  | 86  |
| Eyman       | 48  | 11  | 31  | 14    | 97  | 83   | 85   | 92  |
| Florence    | 66  | 31  | 58  | 45    | 96  | 92   | 7    | 97  |
| Lewis       | 19  | 7   | 8   | 9     | 95  | 84   | 94   | 92  |
| Perryville  | 62  | 78  | 60  | 82    | 100 | 98   | 100  | 94  |
| Tucson      | 67  | 63  | 65  | 55    | 86  | 84   | 83   | 100 |
| Yuma        | 38  | 50  | 56  | 46    | 100 | 95   | 93   | 88  |

[*Id.* at 1-2]

PERFORMANCE MEASURE 37 (seen by RN within 24 hours of HNR):  Found noncompliant at Eyman, Florence, Lewis, Tucson, Winslow, and Yuma.

Defendants continue month after month to be noncompliant at all of the institutions identified by the Court, with the exception of Winslow.  In their recent Correction Action Plans, Defendants acknowledge that noncompliance is related to lack of adequate staffing. [*See* Kendrick Decl., Ex. 12, Tucson CAP: "Site has identified high volume issues on specific units that have caused roll overs on some days.  Sick call lines have exceeded 30 plus and presented challenges for same day appointment being met…DON will then deploy nursing support for the day to address the extended sick call lines.  In the absence

of nursing staff, supervisors to include the DON will be tasked to support extended lines."
(ADCM661845); Ex. 13, Lewis CAP: "Site has identified high volume issues on specific
units that has caused roll over on some days.  Sick call lines have exceeded 30 plus and
presented challenges for same day appointment being met… sick call nurses will pull their
line and identify if the scheduled appointments will exceed their ability to see all listed
patients, the nursing supervisor or DON will be contacted.  DON will then deploy nursing
support for the day to address the extended sick call lines." (ADCM661790-661791); Ex.
14, Yuma CAP: "Not enough nursing staff to see the HNR sick call line within 24 hours
of receipt of the triaged HNR.  Nursing would hand pick who they wanted to see and not
looking at the longest standing appointment to get them seen first….  Nursing staff from
other complexes will be coming to assist is [sic] cleaning up backlogs so nurse lines can
be maintained." (ADCM661879 and ADCM661886)]

|  | Jan | Feb | Mar | April | May | June | July | Aug |
|---|---|---|---|---|---|---|---|---|
| Eyman | 60 | 52 | 48 | 22 | 36 | 28 | 46 | 54 |
| Florence | 48 | 55 | 63 | 62 | 68 | 61 | 77 | 80 |
| Lewis | 38 | 42 | 28 | 42 | 32 | 24 | 21 | 35 |
| Perryville | 70 | 72 | 70 | 48 | 52 | 56 | 66 | 54 |
| Tucson | 59 | 75 | 74 | 64 | 80 | 61 | 70 | 51 |
| Winslow | 93 | 87 | 80 | 80 | 90 | 80 | 97 | 93 |
| Yuma | 66 | 54 | 52 | 40 | 42 | 20 | 42 | 34 |

[Kendrick Decl., Ex. 1 at 2]

PERFORMANCE MEASURE 39 (routine provider referrals seen within 14 days):
Found noncompliant at Eyman, Florence, Lewis, Perryville, and Tucson.

Defendants continue to be noncompliant at all of the institutions identified by the
Court, and in several cases with abysmal scores below 50%.[3]  The CAPs cite short-

_____

[3] Illustrating Plaintiffs' concern that moving staff from one institution to another
prison to address noncompliance issues was robbing Peter to pay Paul (*see* Doc. 1668 at
5), Yuma prison has been noncompliant on Performance Measure 39 for seven of the
eight months of 2016.  [*Id*. at 2]

|  | Jan | Feb | Mar | April | May | June | July | Aug |
|---|---|---|---|---|---|---|---|---|
| Yuma | 74 | 64 | 66 | 67 | 84 | 51 | 51 | 42 |

staffing as an impediment to compliance.  [*See* Ex. 14, Yuma: "Nursing staff were seeing patients on nurse line and sending the patients to provider line for referral without giving nursing interventions and treatment a chance to work for effectiveness… Not enough providers to cover the needs of the patients." (ADCM661868 and ADCM661880)]

|           | Jan | Feb | Mar | April | May | June | July | Aug |
|-----------|-----|-----|-----|-------|-----|------|------|-----|
| Eyman     | 65  | 69  | 49  | 33    | 79  | 60   | 59   | 46  |
| Florence  | 77  | 78  | 64  | 54    | 63  | 66   | 60   | 41  |
| Lewis     | 100 | 75  | 97  | 100   | 95  | 71   | 100  | 75  |
| Perryville| 54  | 54  | 52  | 44    | 48  | 66   | 33   | 51  |
| Tucson    | 59  | 50  | 80  | 69    | 78  | 58   | 54   | 69  |

[Ex. 1, at 2.]

PERFORMANCE MEASURE 46 (provider will review and act on diagnostic reports within 5 days):  Found noncompliant at Douglas, Eyman, Florence, Lewis, Perryville, Phoenix, Tucson, and Yuma.

Defendants continue to be noncompliant at all of these institutions; to the extent they have achieved compliance of 80% or higher, it has not been sustained for more than a month or two.

|           | Jan | Feb | Mar | April | May | June | July | Aug |
|-----------|-----|-----|-----|-------|-----|------|------|-----|
| Douglas   | 67  | 100 | 90  | 84    | 88  | 67   | 78   | 78  |
| Eyman     | 74  | 74  | 42  | 72    | 86  | 78   | 82   | 82  |
| Florence  | 32  | 44  | 42  | 37    | 35  | 47   | 48   | 43  |
| Lewis     | 84  | 79  | 72  | 72    | 88  | 76   | 86   | 84  |
| Perryville| 46  | 58  | 28  | 32    | 38  | 40   | 32   | 60  |
| Phoenix   | 61  | 78  | 80  | 82    | 82  | 82   | 76   | 81  |
| Tucson    | 55  | 52  | 60  | 62    | 36  | 51   | 57   | 50  |
| Yuma      | 65  | 52  | 84  | 82    | 76  | 82   | 80   | 78  |

[*Id.* at 2-3]

PERFORMANCE MEASURE 54 (chronic care patients seen as specified, no longer than every 180 days):  Found noncompliant at Eyman, Florence, Lewis, Perryville, Phoenix, Tucson, and Yuma.

Defendants appear to be making improvements, although recent backsliding at Eyman and Tucson are cause for concern.

|  | Jan | Feb | Mar | April | May | June | July | Aug |
|---|---|---|---|---|---|---|---|---|
| Eyman | 82 | 82 | 96 | 94 | 74 | 82 | 66 | 86 |
| Florence | 70 | 67 | 45 | 87 | 88 | 92 | 92 | 97 |
| Lewis | 96 | 92 | 89 | 92 | 83 | 78 | 89 | 84 |
| Perryville | 68 | 76 | 72 | 88 | 86 | 94 | 96 | 92 |
| Phoenix | 96 | 87 | 90 | 97 | 98 | 100 | 96 | 98 |
| Tucson | 53 | 63 | 66 | 81 | 81 | 80 | 69 | 76 |
| Yuma | 80 | 72 | 44 | 96 | 96 | 90 | 92 | 98 |

[*Id.* at 3]

PERFORMANCE MEASURE 66 (provider rounds at least every 72 hours in infirmary):  Found noncompliant at Florence, Lewis, and Tucson.

Defendants continue to be noncompliant, as any level of compliance has been short-lived.  Tucson's performance from May through August is shockingly low on a performance measure that is critically important to the well-being of the most vulnerable and sickest class members.

|  | Jan | Feb | Mar | April | May | June | July | Aug |
|---|---|---|---|---|---|---|---|---|
| Florence | 90 | 90 | 90 | 80 | 50 | 70 | 80 | 100 |
| Lewis | 100 | 80 | 80 | 70 | 30 | 30 | 60 | 90 |
| Tucson | 80 | 80 | 70 | 80 | 30 | 40 | 20 | 20 |

[*Id.* at 3]

PERFORMANCE MEASURE 85 (MH-3D seen w/in 30 days of discontinuing medication):  Found noncompliant at Eyman, Florence, Lewis, Perryville, Tucson, and Yuma.  While Perryville purports to show recent improvement, the Court has found Defendants' monitoring methodology for this measure invalid.  [Doc. 1673 at 5-6]  These numbers are accordingly meaningless.

|  | Jan | Feb | Mar | April | May | June | July | Aug |
|---|---|---|---|---|---|---|---|---|
| Eyman | 75 | 17 | 22 | 75 | 80 | 75 | 45 | 86 |
| Florence | 17 | 22 | 57 | 33 | 57 | 75 | 63 | 47 |
| Lewis | 0 | 18 | 0 | 14 | 29 | 58 | 44 | 36 |
| Perryville | 75 | 88 | 100 | 100 | 100 | 100 | 91 | 85 |

|          | Jan | Feb | Mar | April | May | June | July | Aug |
|----------|-----|-----|-----|-------|-----|------|------|-----|
| Tucson   | 0   | 33  | 6   | 28    | 38  | 23   | 50   | 63  |
| Yuma     | 50  | 80  | 100 | 67    | 50  | 50   | 100  | 93  |

[Ex. 1 at 3-4]

PERFORMANCE MEASURE 92 (MH-3 & higher in max custody seen by clinician 1:1 or group every 30 days):  Found noncompliant at Eyman, Florence, Lewis, Perryville, and Tucson.

While some institutions have shown recent improvement, the backsliding at Perryville raises doubts whether this improvement can be sustained.  Moreover, it is not clear whether Defendants are complying with the Court's ruling that the requirement that a patient be "seen" is not satisfied by a cellfront encounter.  [*See* 10/5/16 Tr. at 9:22-10:6]

|            | Jan | Feb | Mar | April | May | June | July | Aug |
|------------|-----|-----|-----|-------|-----|------|------|-----|
| Eyman      | 85  | 95  | 100 | 85    | 70  | 78   | 84   | 94  |
| Florence   | 95  | 100 | 95  | 85    | 95  | 95   | 100  | 95  |
| Lewis      | 70  | 70  | 50  | 30    | 30  | 52   | 80   | 96  |
| Perryville | 90  | 70  | 50  | 70    | 100 | 100  | 80   | 72  |
| Tucson     | 100 | 60  | 50  | 50    | 100 | 100  | 100  | 100 |

[Ex. 1 at 4]

PERFORMANCE MEASURE 93 (Weekly rounds by MH staff of MH-3 & higher in max custody):  Found noncompliant at Eyman, Florence, Lewis, and Tucson.

As the Court has previously observed, this appears to be the one measure in which Defendants have shown improvement that has been sustained for multiple months.

|          | Jan | Feb | Mar | April | May | June | July | Aug |
|----------|-----|-----|-----|-------|-----|------|------|-----|
| Eyman    | 63  | 37  | 45  | 90    | 100 | 95   | 90   | 100 |
| Florence | 90  | 100 | 90  | 100   | 89  | 100  | 100  | 100 |
| Lewis    | 100 | 90  | 100 | 90    | 100 | 89   | 100  | 100 |
| Tucson   | 67  | 100 | 100 | 100   | 100 | 100  | 100  | 100 |

[*Id.*]

PERFORMANCE MEASURE 98 (MH HNRs responded to w/in timeframes in MHTM):  Found noncompliant at Eyman, Florence, Lewis, and Winslow.

Plaintiffs have notified Defendants that their monitoring methodology for this measure is inconsistent with the plain language of the Stipulation. [Ex. 15 (Oct. 27 letter) at 6-7] Defendants' purportedly compliant scores are accordingly invalid. Moreover, Defendants' own Corrective Action Plans show ongoing compliance issues with this measure.[4]

|            | Jan | Feb | Mar | April | May | June | July | Aug |
|------------|-----|-----|-----|-------|-----|------|------|-----|
| Eyman      | 85  | 93  | 73  | 48    | 62  | 70   | 94   | 80  |
| Florence   | 80  | 94  | 92  | 72    | 74  | 84   | 94   | 80  |
| Lewis      | 64  | 67  | 79  | 83    | 79  | 82   | 87   | 87  |
| Perryville | 79  | 95  | 77  | 76    | 74  | 59   | 78   | 82  |
| Tucson     | 76  | 85  | 45  | 61    | 62  | 74   | 82   | 87  |
| Winslow    | 64  | 81  | 63  | 56    | 50  | 50   | 95   | 100 |

[Ex. 1 at 4]

## B.   Measures Found Noncompliant on October 7, 2016 (Doc. 1709)

The Court found Defendants noncompliant with three performance measures (47, 80, and 94)[5] on October 7, 2016. [Doc. 1709] The Court ordered Defendants to submit their plan for compliance by October 27, 2016, and Plaintiffs to respond by November 7, 2016. [*Id.*] As explained above, Defendants' Remedial Plan (Doc. 1729) for these measures suffers from many of the same deficiencies as their previous remedial plan.

### 1.   Performance Measure 47

This measure requires "[a] Medical Provider will communicate the results of the diagnostic study to the inmate upon request and within seven calendar days of the date of

---

[4] [*See, e.g.*, Kendrick Decl., Ex. 16, ADCM661781-661782 ("HNRs have not been responded to within timeframes… HNRs are not being referred to [mental health] timely") (Florence); Ex. 17, ADCM661813 ("HNRs have not been responded to within timeframes") (Perryville)]

[5] Performance Measure 47 requires "A Medical Provider will communicate the results of the diagnostic study to the inmate upon request and within seven calendar days of the date of the request." Performance Measure 80 requires "MH-3A prisoners shall be seen a minimum of every 30 days by a mental health clinician." Performance Measure 94 requires "All prisoners on a suicide or mental health watch shall be seen daily by a licensed mental health clinician or, on weekends or holidays, by a registered nurse." [Doc. 1185-1]

the request." [Doc. 1185-1 at 11]  The Court found Defendants noncompliant with this performance measure at all 10 prisons. [Doc. 1709]

Defendants' Remedial Plan states that they have created a new report that will compile all Health Needs Requests (HNRs) that are requesting the results of diagnostic studies. [Doc. 1729 at 3-4]  They also state that as of June 2016, they have centralized the collection of HNRs at Florence, Tucson, Lewis, and Winslow, but it is unclear how this relates to or will impact the provider's ability to convey the results of a diagnostic study to patients.

In any event, these changes in collecting and compiling HNR requests, which began in June, appear to have had a minimal or no impact upon Defendants' level of compliance.  In fact, Tucson prison, one of the institutions with the new centralized processing system, achieved a record low of 6% compliance in August.  It is unclear whether Safford prison is correctly measuring this performance measure, given the multitude of "N/A" findings.

|  | Jan | Feb | Mar | April | May | June | July | Aug |
|---|---|---|---|---|---|---|---|---|
| Douglas | 0 | 57 | 57 | 42 | 67 | 67 | 88 | 89 |
| Eyman | 41 | 42 | 45 | 41 | 27 | 65 | 32 | 38 |
| Florence | 53 | 22 | 33 | 26 | 38 | 53 | 31 | 49 |
| Lewis | 43 | 25 | 47 | 52 | 53 | 51 | 61 | 56 |
| Perryville | 83 | 40 | 7 | 15 | 38 | 44 | 72 | 61 |
| Phoenix | N/A | 100 | 100 | 100 | 0 | 100 | 67 | 100 |
| Safford | N/A | N/A | N/A | N/A | 100 | N/A | N/A | 100 |
| Tucson | 27 | 27 | 18 | 33 | 21 | 15 | 29 | 6 |
| Winslow | N/A | N/A | 0 | 100 | 100 | 50 | 100 | 50 |
| Yuma | 74 | 27 | 42 | 47 | 35 | 50 | 59 | 66 |

[Ex. 1 at 5]

## 2.    Performance Measure 80

This measure requires "MH-3A prisoners shall be seen a minimum of every 30 days by a mental health clinician." [Doc. 1185-1 at 13]  The Court found Defendants

noncompliant with this performance measure at Lewis and Tucson prison.  [Doc. 1709 at 1]

While Defendants report compliance at both institutions in August, these numbers are based upon Defendants' failure to comply with the Court's orders on monitoring methodology.  The Court has ruled that cellfront contacts do not satisfy the requirement that a patient be "seen."  [10/5/16 Tr. at 9:22-10:6]  The Court has further ruled that, with the exception of Performance Measure 92, group contacts do not satisfy the requirement that a patient be "seen."  [Doc. 1673 at 4-5][6]

In the August 2016 CGAR for the Lewis prison, Defendants counted 63 of 75 records as compliant, yielding a purported compliance score of 84%.  However, in five of those records Defendants impermissibly counted cellfront contacts as compliant; in another three, they improperly counted group contacts.  Correctly counting these eight records as noncompliant yields a score of 73.33%, below the compliance threshold of 80%.  [*See* Kendrick Decl. ¶¶ 21-23, Exs. 18 and 19]

|  | Jan | Feb | Mar | April | May | June | July | Aug |
|---|---|---|---|---|---|---|---|---|
| Lewis | 68 | 73 | 80 | 79 | 78.95 | 84 | 87 | 84 |
| Tucson | 63 | 66 | 62 | 67 | 75 | 75 | 76 | 91 |

[Ex. 1 at 5]

### 3.     Performance Measure 94

This measure requires "[a]ll prisoners on a suicide or mental health watch shall be seen daily by a licensed mental health clinician or, on weekends or holidays, by a registered nurse."  [Doc. 1185-1 at 34]  The Court found Defendants noncompliant with this measure at Eyman, Florence, and Tucson prisons.

---

[6] Defendants appear to believe that the mere pendency of a motion for reconsideration relieves them of their obligation to obey the Court's order.  It does not. *See Fairbaugh v. Life Ins. Co. of N. Am.*, 872 F. Supp. 2d 174, 181 (D. Conn. 2012), *supplemented* (Aug. 20, 2012) ("[The defendant's] obligation to comply is not excused by the filing of the motions for reconsideration of the order....") (internal quotation marks, citation omitted).

Here too, the illusion of compliance is made possible only by Defendants' disregard of the Court's orders.  Of the eight records Defendants counted as compliant at Florence in August, two impermissibly counted cellfront encounters; thus, Defendants' actual score at Florence is a failing 60%.  [Kendrick Decl. ¶¶ 24-25, Ex. 20]  Similarly, of the ten files Defendants counted as compliant at Tucson in August, seven counted cellfront encounters, so Tucson's true compliance rate is a dismal 30%.  [*Id.* ¶¶ 26-27, Ex. 21]

|  | Jan | Feb | Mar | April | May | June | July | Aug |
|---|---|---|---|---|---|---|---|---|
| Eyman | 75 | 70 | 75 | 100 | 65 | 90 | 85 | 95 |
| Florence | 80 | 70 | 100 | 100 | 70 | 100 | 100 | 80 |
| Tucson | 60 | 20 | 80 | 90 | 70 | 30 | 100 | 100 |

[Ex. 1 at 5]

Moreover, the Perryville prison, which was compliant for the first three months of 2016, has been noncompliant for four of the last five months, demonstrating once again that shifting resources from one institution to another to put out fires is not a sustainable way to achieve systemic reform.[7]

|  | Jan | Feb | Mar | April | May | June | July | Aug |
|---|---|---|---|---|---|---|---|---|
| Perryville | 90 | 90 | 80 | 30 | 40 | 100 | 50 | 70 |

[*Id.*]

## CONCLUSION

Plaintiffs request that this Court immediately order Defendants to propose a plan to increase health care staffing to levels that are sufficient to ensure that patients in the ADC are able to access health care consistent with constitutional standards and the performance measures agreed upon in this action.

---

[7] Defendants' CAPs show ongoing compliance problems with this performance measure. [*See* Kendrick Decl., Ex 17 ADCM661811 ("All prisoners on watch were not seen daily by a licensed mental health clinician. The nursing staff did not see the inmates on the weekend") (Perryville); Ex. 12 ADCM661850 ("The site has identified a scheduling issue that placed an unlicensed person to complete suicide watches") (Tucson)]

1   Dated:  November 7, 2016                    **PRISON LAW OFFICE**

2

3                                     By:  _s/ Corene Kendrick_
                                         Donald Specter (Cal. 83925)*
                                         Alison Hardy (Cal. 135966)*
4                                        Sara Norman (Cal. 189536)*
                                         Corene Kendrick (Cal. 226642)*
5                                        Rita Lomio (Cal. 254501)*
                                         1917 Fifth Street
6                                        Berkeley, California 94710
                                         Telephone:  (510) 280-2621
7                                        Email:    dspecter@prisonlaw.com
                                                   ahardy@prisonlaw.com
8                                                  snorman@prisonlaw.com
                                                   ckendrick@prisonlaw.com
9                                                  rlomio@prisonlaw.com

10                                       *Admitted _pro hac vice_

11                                       David C. Fathi (Wash. 24893)*
                                         Amy Fettig (D.C. 484883)**
12                                       Jamelia Natasha Morgan (N.Y.
                                         5351176)**
13                                       **ACLU NATIONAL PRISON
                                         PROJECT**
14                                       915 15th Street N.W., 7th Floor
                                         Washington, D.C. 20005
15                                       Telephone:  (202) 548-6603
                                         Email:    dfathi@npp-aclu.org
16                                                 afettig@npp-aclu.org
                                                   jmorgan@aclu.org
17
                                         *Admitted _pro hac vice_.  Not admitted
18                                        in DC; practice limited to federal
                                          courts.
19                                       **Admitted _pro hac vice_

20                                       Kirstin T. Eidenbach (Bar No. 027341)
                                         **EIDENBACH LAW, PLLC**
21                                       P. O. Box 91398
                                         Tucson, Arizona 85752
22                                       Telephone:  (520) 477-1475
                                         Email:    kirstin@eidenbachlaw.com
23
                                         Kathleen E. Brody (Bar No. 026331)
24                                       Daniel Pochoda (Bar No. 021979)
                                         **ACLU FOUNDATION OF
25                                       ARIZONA**
                                         3707 North 7th Street, Suite 235
26                                       Phoenix, Arizona 85013
                                         Telephone:  (602) 650-1854
27                                       Email:    kbrody@acluaz.org
                                                   dpochoda@acluaz.org
28

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
          agerlicher@perkinscoie.com
          jhgray@perkinscoie.com

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:    cnmitchell@jonesday.com
          aamiri@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:    jlwilkes@jonesday.com

*Admitted *pro hac vice*

Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41st Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:    jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARIZONA CENTER FOR DISABILITY LAW**

By:   *s/ Maya Abela*

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:     skader@azdisabilitylaw.org
               adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone:  (520) 327-9547
Email:
    rdalyrooney@azdisabilitylaw.org
               jrico@azdisabilitylaw.org
               jross@azdisabilitylaw.org
               mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that on November 7, 2016, I electronically transmitted the above

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrants:

5

6

Michael E. Gottfried
Lucy M. Rand

7

Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

8

9

Daniel P. Struck
Kathleen L. Wieneke

10

Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo

11

Ashlee B. Fletcher
Anne M. Orcutt

12

Jacob B. Lee
Mark A. Bracken

13

STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com

14

kwieneke@swlfirm.com
rlove@swlfirm.com

15

tbojanowski@swlfirm.com
nacedo@swlfirm.com

16

afletcher@swlfirm.com
aorcutt@swlfirm.com

17

jlee@swlfirm.com
mbracken@swlfirm.com

18

19

*Attorneys for Defendants*

20

s/ D. Freouf

21

22

23

24

25

26

27

28