michael J. Coton
ASPC Lewis/Stiner 5A20
P.O. Box 3100
Buckeye, AZ 85326

# Exhibit 1

Motion for Sanctions, not yet filed in
Superior Court, in support of motion
for Declaratory judgment/Novel issue
of Constitutional Law/Conditions
of Confinement

1 of 40

NOT Yet filed in Superior Court

Michael J. Cohn #288721

ASPC Lewis / STINER 5A20

P.O. Box 3100

Buckeye, AZ 85326

1 / 16

Hon. Sherry Stephens / clerk of the Superior Ct.

175 W. Washington

Phoenix, AZ 85003

Re: Document list, motion for Sanctions (CR2013-114147-001

ms/sir:

Please find enclosed the documents as Listed:

1) motion for sanctions/Declaration in support/memorandum of points, etc.

2) motion to Compel evidence

3) motion for reinstatement of counsel.

4) Exhibits A-F, Evidence of medically inadequate prison/risk of harm.

5) Exhibit G, Petitioner's documentation of risk of medical harm.

6) Exhibit H. Letter from ALeph Institute encouraging self-advocacy.

Respectfully Submitted,

Michael J. Lol

Petitioner, Pro Per

2 of 60

Michael J. Cohw #288721

ASPC Lewis / STINER 5A20

P.O. Box 3100

Buckeye, AZ 85326

Superior Court of Arizona, Maricopa County

| State of Arizona | Case no. CR2013-714177-001 |
| Plaintiff | |
| V. | motion for sanctions |
| Michael J. Cohw | |
| Defendant, Petitioner Pro Per | Hon. Sherry Stephens |

Per Az. rules of the Supreme Court, E.R. 3.4, 3.8, 8.3, 8.4, ARcP 26.8(b) petitioner respectfully requests sanctions against Blaine Gadow, Dep. Co. ATTNY/ASST A.G. and Wm. Montgomery, Maricopa Co ATTORNEY. Petitioner asserts that he has a reasonable expectation that the State obeys the law, when it does not do so it should be held accountable. This is in the Public Interest. Petitioner asserts that nothing in this motion intends to abrogate his responsibility in this matter. Petitioner asserts that it is in the Public Interest that this matter be brought to the Court's attention. Petitioner alleges the following:

1) Suppression of mitigating/exculpatory evidence. E.R. 3.4, 3.8, 8.4. ARA 26.8(b)

2) Trespass upon Petitioner's 1st, 4th, 5th, 6th, 8th and 14th Amendment rights + Comparable State Constitutional Rights (U.S. Constitution). 42 US(3 1983, 1985, 1986.

3) Nonfeasance. Failure to enact a duty (ies).

4) Attempted murder by suppression of conditions of Confinement (medical care), in the Az. Dept. of Corrections. ARS 13-202. 3B. The sentence cannot be cruel or unusual and relevant factors must be considered. (Parsons v. Ryan 289 FRD 513 (DAriz12) aff'd 754 F.3d 657 (9th Cir) 2014)

5) Corruption, Aiding and abetting the above.

1
2 of 10

Petitioner asserts that the violations above are egregious and "shock the conscience," The violations above are ongoing and continue to impact petitioner at this time, constituting ongoing violations of rights and cumulative error, The Prosecutor acted under the color of state law.

Remedies Requested

1) Compensatory damages in the Range of $300,000 to $1 million.

and/or 2) Appointment of a "Special Prosecutor" to investigate all of Mr. Montgomery's Cases since his assuming office to the present for similarly suppressed evidence.

and/or 3) Referral of this matter to the State Bar of Arizona for further investigation, and Sanctions as appropriate.

and/or 4) Mitigation hearings for all inmates that have evidence suppressed, withheld, etc. as in this case,

and/or 5) Attorneys fees in Case #PB2013-1274 & CV2014-9377 & CR2013-114197001

Note: Petitioner respectfully requests the court Listen to the recordings withheld from the tribunal. As described in the accompanying memorandum of points and authorities in support of this motion, the interviews of Murray Dock and Sharon Petterson, not only offer mitigating evidence, but are also exculpatory as they challenge the credibility of Murray Dock and Patti Heldman who alleged in the presentence letters that Michael Cohn verbally abused his wife. The Presentence Letters/Presentence report have not been refuted to date, will likely mitigate victim impact and give further weight that petitioner was mentally deficient or otherwise impaired at the time of his offense. (Americans with Disabilities Act).

6) WITNESS LIST:

   A. Wm, Montgomery, Maricopa CO. ATTNY.

   B. Blaine Gadow, Esq. Dep.Co. ATTNY.

   C. Amanda Martin, Esq. Public Defender, Maricopa Co.

   D. John Heinzelman, Detective, Scottsdale, P.D.

   E. Murray Dock, Personal Representative, Estate of
     Linda Cohn, Blue Ash, Ohio.

   F. Patti Dock Heldman, Personal Representative, Estate of
     Linda Cohn, Cincinnati, Ohio.


   I certify that the contents herein are true and correct
to the best of my knowledge and understanding as a pro
se litigant, entitled to liberal interpretation of his
pleadings,


   Respectfully submitted,   Date:

   _Michael J. Cohn_   — Blaine Gadow, Esq, #5, A.G.

   Michael J. Cohn, Pro Per   1275 W, Washington

      Phoenix, AZ 85007

Original mailed to:   on:   — Wm, Montgomery, Maricopa Co, ATNY

Clerk of the Superior Ct.   301 W, Jefferson, 5th Fln

301 W. Jefferson   Phoenix, AZ 85003

Phoenix, AZ 85003

   Copies to:   on:   Amanda Martin, Esq.

Hon. Sherry K. Stephens   Ofc, of the Public Defender

175 W, Madison   620 W. Jackson #4015

Phoenix, AZ 85003   Phoenix, AZ 85003

        B  (Next Page)   5 of 60

Scott Dosek, Esq,
GBM
1850 N, Central Ave, #500
Phoenix, AZ 85004
   Attorney for Petitioner's Civil Case

Hon, Andrew Klein, Probate Judge
125 W, Washington #103
Phoenix, AZ 85003


Prison Law Office
General Delivery
San Quentin, CA 94964
   ATTN, L, Graham, Legal asst,
      For C, Kendrick, Esq,
      class Action Attorneys for Inmates/Plaintiffs in
   Parsons v, Ryan, 2012,
Note; I will be requesting class action assistance on behalf of
all inmates similarly situated,


Tracey Westerhausen, Esq,
Debus, Kazan + Westerhausen
 335 E, Palm Ln,
  Phoenix, AZ 85004
   Knapp Counsel for Petitioner

Table of Authorities

in Support of Motion For Sanctions

STATUTES

1) ARIZONA Rules of the Supreme Court P 42

  A) E.R. 3.4, Fairness to Opposing Party & Counsel

  B) E.R. 3.8 Special Duties of the Prosecutor

  C) E.R. 8.3 Reporting misconduct

  D) E.R. 8.4 Misconduct

2) ARIZONA Board of Behavioral Health Examiners

  A) ARS § 32 - 3251 [15] (J) (K)(N)(AE) Unprofessional conduct

3) ARIZONA Board of Dental Examiners

  A) ARS § 32 - 1202 (N) conduct detrimental to public safety.

  B) ARS § 32 - 1263, id. (D) Failure to report conduct detrimental to public safety.

4) ARIZONA Rules Of The Supreme Court 81 JC Judicial conduct

  A) Oath of Office to uphold the Constitution(s).

  B) Canon 1 - Integrity of Judiciary

  C) Canon 2 Avoidance of Impropriety and its appearance.

  D) Canon 3 - Impartiality and diligently.

  E) Canon 4 - Improving the Administration of Justice.

5) Americans with Disabilities Act / Rehabilitation Act.

  A) 42 USC § 1201, et seq. (1990), ADA

  B) 29 USC § 794, et seq. Rehabilitation Act.

6) Civil Rights Actions (with / without conspiracy) against State and Local Officials.

  A) 42 USC § 1983; 1985, 1986 (civil rights recourse)

Table of Authorities (CONT)

7) Civil Rights of INSTITUTIONALIZED Persons ACT (CRIPA)

  A) 42 USC § 1997

8) Administrative Procedures ACT

  A) 5 U.S.C. § 706. Entitlement to Judicial Review

9) Criminal ENTERPRISE

  A) ARS § 13-305-306. Breach of duty and Reckless

    Tolerance of that Breach.

10) Due Process Statute / case law

  A) 5th, 6th and 14th Amendments of the U.S. Constitution

  B) U.S. v. Torres, 563 F3d 731 (8th Cir. 2009).

    Sentencing manipulation violates due process.

11) Right to Liberty / happiness / Property

  A) Preamble of the U.S. Constitution

  B) 5th Amendment, U.S. Constitution

Case Law

1) U.S. v. Torres, ibid. Sentencing manipulation

2) ELROD v. BURNS, 427 U.S. 347, 373 96 Sct.

   2673 (1976). Continuing deprivation of Constitutional

   Rights Constitutes "irreparable harm."

3) Rodriguez v. Robbins, 715 F3d 1127 (9th Cir. 2013).

  "Generally, public interest concerns are implicated when

  a constitutional right has been violated, because all

  citizens have a stake in upholding the Constitution."

4) Huddleston v. U.S. 415 U3 831, 39 LEd 782, 94

   Sct. 1262 (1974)

   - "Rule of Lenity" requires that doubts be

   resolved in favor of defendant when there is

   ambiguity in Penal Statutes / Sentencing guidelines /

                    2      8 of 60

Table of authorities, Cont.

criminal statutes.

5) U.S. v. Rivera 682 F3d 1223 (9th cir, 2013)
   "ambiguities in the Plea Agreement must be
   construed in the defendant's favor,"

6) Tower v. Glover, 467 US 914, 81 LEd 2d. 758,
   SCt. 2820 (1984).

7) Buckley v. Fitzsimmons, 509 US 259, 125 LEd 2d
   209, 113 SCt. 2606 (1993), Prosecutors not held immune
   from 42 USC §1983 damages claims alleging Fabrication
   of evidence and false statements, (Sentencing manipulation
   as well as manipulating verdict, in my opinion, mc).

8) U.S. v. Ghertler, 605 F3d 1256 (11th cir, 2010),
   "a defendant has a right to not be sentenced based
   on false or unreliable information."

9) Marshall v. Hendricks, 307 F3d 36 (3rd cir, 2002)
   - Prosecutorial misconduct is not harmless when
   it render's defendant's evidence worthless,

10) Anderson v. Creighton, 483 US 635, 641, 107, Sct.
   3034 (1987) Reasonable officer standard for
   qualified immunity of a State official.

11) Kalina v. Fletcher, 522 US, 118, 131 118 Sct. 502
   (1997), No prosecutorial immunity for acts not directly
   related to presenting a case in court,

12) Harlow v. Fitzgerald, 457 S.Ct. U.S. 800, 817-18,
   102. Sct. 2727, Qualified immunity does not
   extend to officials sued in their official capacities
   under the "color of state law," in federal civil
   Rights cases.

3         9 of 60

*Next 2 pages*

Table of Authorities Cont.

Treatises

1) Boston, J. + Manville, D. Prisoners' Self-Help Litigation Manual, 4th Ed. Oceana, 2010.

2) Columbia Human Rights Law Review, A Jailhouse Lawyers manual, 6th Ed., 2005.

3) Mushlin, M., Rights of Prisoners, 4th Ed., West 2009.

4) Branham, L.S., The Law and Policy of Sentencing and Corrections in a Nutshell, 9th Ed., West 2013.

5) Webster, Merriam, Dictionary of Law, 2011,

Medical Care Authorities, etc.

Next 2 pages from 2:16 CV3134-DLR-ESW
U.S. Dist. Ct.

1) Hellins v. McKinney, 509 U.S. 25, 31-32, 33 (1993). The 8th amendment protects against conditions that pose an unreasonable risk of future harm, as well as those that are currently causing harm.

2) ACLU, Litigating Prison and Jail Conditions, 2010, Washington, D.C.

3) Morissette, E, 2., Personal Injury and the Law of Torts for Paralegals, Wolters Kluwer, 3rd Ed., New York, 2014

4) Pennsylvania Dept. of Corrections, 524 US. 206, 118 S.CT. 1952 The Americans with Disabilities Act applies to prisoners.

Michael J. Cohn, Ed.D. #288721
ASPC Lewis/Stiner 5A20
P.O. Box 3100
Buckeye, AZ 85326          10 of 60

11

Michael D. Cohn 288721   2;16 CV 3199 DLR-ESW

Supplemental to CR2013-115Y147-001 motion for Sanctions

## TABLE OF AUTHORITIES

0) Exhibit 0 - Class Action Complaint (Parsons, et al. v. Ryan, et al.)

1) Exhibit 1 - Plaintiff's motion to Enforce Stipulation. 2:12 CV 601-DJH

2) Exhibit 2 - STIPULATION; 2:12 CV 601-DJH

3) Exhibit 3 - Fairness Hearing Transcript 2:12 CV 601-DKD

4) Exhibit A — Charles Ryan Letter to Medical STAFF

5) Exhibit B - AZ. Republic Column /12-5-15

6) Exhibit C - Expose' of Corizon Health (Prison Legal News 3/2014)

7) Exhibit D - ACLU Press Release - Class action affirmed

8) Exhibit E - AZ Republic Column - 3/16

9) Exhibit F - AZ Republic Column - 9/11/14

10) 8th Amendment, U.S. Constitution... Freedom from cruel and Unusual punishment. Supercedes ART.2 §1 of AZ Const. Victim's Rights

11) Rhodes v. Chapman, 452 US 337, 69 L Ed 2d 59 Sct 2392 (1981) Practices that inflict unnecessary pain are prohibited.

12) Apprendi v. New Jersey, 530 US 466, 147 L Ed 2d 435, 120 Sct 2348 (2000)

13) Ring v. Arizona, 536 US 584, 153 L Ed 2d 556, 122 Sct 2428 (2002)

14) U.S. v. Kelsor, 665 F3d 684 (6th Cir. 2011). Double jeopardy clause protects against multiple punishments for the same offense

15) 14th Amendment, U.S. Consti, Equal Protection clause, State's behavior burdens a fundamental right.

16) Elrod v. Burns 427 US.(1976) 347, 373, 96 2673. Ongoing Violation of constitutional rights constitutes Harm, in and of itself.

17) Parsons v. Ryan, 289 F.R.D., 513 (D. Ariz. 2013), aff'd 754 F. 3d 657 (9th Cir. 2014).

18) ARS§13-305+306, criminal Enterprise

19) ARS§46-451-457, Adult Protective Services

20) 18 USC §§ 1961-1968 RICO, et al,

21) 42 USC §1983, 1985, 1986, Civil Rights Violations / Recourse

11 of 60

Cohn      2:16 CV-3734-DLR-ESW (D.Ariz.)


Table of Authorities (cont.

22) 3:16 CV 2355-DLR-ESW Cohn v. Ryan, 2015, unpublished

23) 2:15 CV 267-DLR-ESW, Cohn v. Ryan, unpublished

24) 28 USC §1361, Mandamus

25) Case # D.O. 16-0109A, Arizona Board of Osteopathic medical Examiners, Complaint Pending includes petitioner's documentation of exhaustion of internal remedies.

9535 E. Doubletree Ranch Rd.

Scottsdale, AZ 85258    Tel. 480 657-7703

26) ARS ct. 42, E.R. 3.4 model code of Professional Conduct, Fairness to opposing parties and counsel. The A.G. has a duty to not obstruct Justice and should report the ongoing crimes of his client(s) to the prosecutor for possible investigation. As described in motion to Enforce Stipulation, crimes are reported/documented and should be reported to the proper authorities. The A.G. has an affirmative duty to protect victim's rights, even if the victims are confined in ADC (See Exhibit 1 above), also ARS § 41-191.06 Victims Rights Program (Statute does not exclude inmates).

27) 2:16 CV 2963 DLR (ESW) PHX, Cohn v. State of AZ/ Corizon Health, unpublished

28) Presidential Oath of Office. The alleged homicides by Corizon Health, establish Corizon Health as an enemy of the people.

28) ARIZONA AGENCY Handbook, ATTORNEY General, 2013

## Declaration
### IN SUPPORT OF Motion for Sanctions

I Michael J. Cohn, Inmate confined in the Arizona Dept. of Corrections declare as follows:

1) I am the Petitioner in this matter,

2) In the settlement conference of 11/2013 I disclosed that I was disabled,

   A. My medical condition was described, mental health as well

   B. The consensus of the parties was that I am not dangerous to the community,

3) What was not disclosed,

   A. Murray Dock was interviewed on about 3/27/13 by Det. John Heinzelman of Scottsdale, P.D.

   1. Murray Dock admitted that Linda Cohn had called him several days prior to the offense telling him that I was suicidal and paranoid, Linda has asked for help, but Murray Dock, a former pharmacist and currently a dentist offered no meaningful assistance, He never heard me abuse Linda,

   B. Sharon Petterson, a former patient of Dr. Linda Cohn was similarly interviewed. She admitted that Linda was a strong, professional woman who would not put up with abuse (words to that effect). She further admitted that she could tell when Linda talked to me on the telephone that Linda loved me (words to that effect).

   C. The above interviews refute the victim impact, which alleged I was verbally abusive to Linda,

   D. Murray Dock has an ethical/statutory obligation to protect public safety, It matter of public

interest; Murray Deck enacted nonfeasance in this matter, allegedly.

E) The inadequate medical care of the Az. Dept. of Corrections was NOT disclosed.

   1. This matter was in the Public Domain at least by Dec. 2011. (AZ. Republic, 12/5/11).

   2. The Parsons V. Ryan case was filed in 2012, alleging malpractice, negligence and wrongful deaths by Az. Dept. of Corrections and its contracted vendor(s), particularly, Corizon Health. This was public information.

4) The issues in 3) above were NOT disclosed at the mitigation/sentencing hearing by the County attorney, or by the police. (E.R. 3.8. E.R. 3.4. ER. 8.4).

5) Petitioner agreed to plead guilty and accepted a plea agreement. The conditions of confinement were NOT disclosed as part of the plea agreement.

6. Petitioner, upon incarceration, continued with mental health treatment (celexa), etc. and was recently discharged from mental health care. His condition has been rehabilitated.

7. Upon incarceration, petitioner pursued legal studies and researched his case. He discovered the statutes above and began to question the prosecutor's obligations in this/related matter(s).

8. Concurrently, petitioner was sued in Probate and Civil court by the Personal Representatives of the Estate of Linda Cohn. A settlement was reached on July 20, 2016. Petitioner deferred filing for sanctions as this matter may have gone to trial and Gadow, Heinzelman and Montgomery may have been called as witnesses.   , 14 of 60

9) Petitioner has been subjected to inadequate medical care for his rare, sacral mass as described in the settlement conference. He has yet to see a specialist for a post-biopsy consult, etc. (5/24/16). It has taken 2, plus years to get to the point of having a meaningful treatment plan for his condition, including stenosis at L4, L5 which may require surgery, depending on the outcome of treatment for the sacral lesion.

10) Petitioner, as a result of personal experience and Legal Studies, assists many other inmates with their Legal/medical problems. As a former healthcare provider/executive (behavioral health) he is well-informed on standards of care, quality assurance, etc. He has certificates, post-confinement in Civil Litigation and Torts/Personal injury in addition to his professional background.

11) Petitioner alleges/asserts the Prosecutor intelligently, maliciously, knowingly and voluntarily withheld the mitigating/exculpatory evidence above for political reasons ... to appease the victims who wanted a greater sentence and to appear "tough on crime," (malicious intent).

12) In 18 States, with less Draconian statutes, the model penal Code definition of insanity applies. Petitioner may well have been acquitted in those states. As it is agreed that he is not dangerous to the community, the Prosecutor could have recommended house arrest/community supervision.

13) By subjecting petitioner to ADC medical care, I allege that the Prosecutor is using ADC's medical negligence as a weapon to murder petitioner under

a sophisticated scheme to deprive him of his constitutional right to not be exposed to "risk of harm." (Helling v. McKinney, 509 at 33, set. 1993). (8th amndt., U.S. Const.).

14) By failing to disclose the admissions of Murray Dock and Sharon Patterson on the record, petitioner was advised by Judge Klein [the Prosecutor's] in the civil case settlement conference against bringing these issues up in trial. (CV2014-9377; CV2013-1274). The prosecutor thus prejudiced petitioner's case.

15) At the least, the county attorney and his deputy/(ies) aid and abet the criminal enterprise, torture and homicide of inmates by the State of AZ. and its accomplice/accessory Corizon Health, allegedly as described in Parsons v. Ryan and the Public Domain. They fail to object to the conditions of confinement or bring them to the court's attention for purposes of reasonable accommodations in sentencing (Americans With Disabilities Act, inadequate services are the same as exclusion from services), See Branham, the Law and Policy of Sentencing and Corrections in a Nutshell).

16) The above nonfeasances (cumulative error) deprive petitioner of his 1st, 4/5th, 5th, 8th and 14th amendment Constitutional rights, manipulating his sentence. U.S. v. Torres, 563 F3d 731 (8th Cir. 2009), Sentencing manipulation violates due process. The 1st amendment includes the "right to read." Petitioner was provided no information in writing about medical care in ADC describing objectively these conditions, which may have affected his decision to accept the plea agreement.

16 of 60

17) Depending on the outcome of this case, petitioner will consider his post conviction relief options.

18) Ongoing deprivation of constitutional rights constitutes irreparable harm in and of itself, Since a monetary amount has been or is in the process of being distributed to the Estate of Linda Cohn, a monetary value can be assigned to the damages requested by petitioner. Elrod V. Burns 427 US, 347, 373, 96 2673, Sct, (1976), (ongoing deprivation of constitutional rights constitutes irreparable harm). 42 USC § 1983, 1985, 1986, civil rights with and without conspiracy.

I declare, under penalty of perjury that the contents herein are true and correct to the best of my knowledge and understanding as a Pro Per/Se lit, gout entitled to liberal interpretation of his pleadings.

Respectfully submitted,                    Date:

Michael J, Cohn

Michael J, Cohn, ProPer

19) The Prosecutor(s) do not have immunity in this matter, allegedly, 42 USC § 1985; Buckley v. Fitzsimmons 509 U.S. 259, 269, (1993); Romano v. Bible 169 F3d 1182, 1186 (9th civ, 1999); see Buckley, 509 U.S. at 273; Americans with Disability Act/ 14th amendr, U.S Const, AZ-Agency Handbook, 2013, 13.3.4 - 13.4,

Memorandum of Points and Authorities
in support of Motion for Sanctions.

This is a motion for Sanctions under ARS.t. 42 ER, 3, 7, 3.8 +
8, 4 brought by a State Prisoner who is presently serving
a sentence for which all mitigating evidence has not been brought
to the tribunal. Petitioner requests monetary damages, review
of all cases of the County Attorney for similar suppression of
evidence and mitigation hearings for inmates found to have mitigating
evidence suppressed in their cases. Petitioner further asserts he
is being deprived of adequate medical care for a serious medical
condition due to confinement to a medically inadequate prison
exposing him to risk of future harm as a result of withheld
evidence. The actions of the prosecutor as described herein
and the motion for Sanctions and declaration in support of
the motion for Sanctions constitute multiple, ongoing
Constitutional errors implicating irreparable harm. The
cumulative error doctrine applies Anvther justifying relief.

Statement of Facts

The county attorney failed to present the following mitigating/
exculpatory evidence to the tribunal prior to sentencing.

1) Witness statements obtained telephonically by Det. John
   Heinzelman of Scottsdale P.D.

   A) Interview of Dr. murray Dock

   B) Interview of Sharon Petterson

   C) Det. Heinzelman also did not present the above to the tribunal.

2) The medical care deficiencies of the Arizona Department of
   Corrections (ADC).

The above evidence is in the control of the prosecutor

18 of 60

ARGUMENT

POINT 1

Timing of the motion for Sanctions

Petitioner asserts the timing of this motion is proper for the following reasons:

1) Petitioner's mental deficiency has been rehabilitated. He is able to set forth his pleadings adequately.

2) Petitioner has given ADC ample opportunity to provide adequate medical care for his serious medical condition. At this time, he is compelled to bring this matter to the court's attention as he is still threatened with harm due to inadequate medical care.

3) Cases PB2013-1274 and CV-2014-9377 were settled on July 20, 2016. Had those matters not been settled, The Co. Attorney, his Deputy and Det. Heinzelman would likely be called as witnesses for one side or the other at the trial. Monies to be paid to the Estate of Linda Cohn amount to approximately $800,000 ± $100,000 after all distributions. Petitioner did not know the amount of monetary damages to request in this instant case until the settlement/trial process concluded.

POINT II

ETHICS Rules ARSct. 42 ER, 38, 3.4, 8.4

1) 3.8 "The Prosecutor in a criminal case shall:

(A) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and in connection with sentencing, disclose to the defense and to the tribunal all

2        19 of 60

unprivileged mitigating evidence known to the ~~prosecutor of~~ all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal."

– In this matter, the prosecutor gave the witness interviews at issue to defense counsel, but not to the tribunal.

– The prosecutor did not provide either defense or tribunal the medical deficiencies of ADC. E.R. 3, 4

2) E.R. 3, 4 (a) A Lawyer shall <u>not</u> unlawfully obstruct another party's access to evidence or ~~conceal~~ unlawfully alter, destroy or conceal a <u>document or other material</u> having evidentiary value, a Lawyer shall <u>not</u> counsel or ~~advise~~ assist another person to do any such act;

– The prosecutor did <u>not</u> provide defense counsel the medical deficiencies of ADC. (concealment).

– The prosecutor aided/abetted Det. Heinzelman's concealment of witness interviews from the tribunal by not insisting he present them to the tribunal prior to sentencing.

3) E.R. 8.4 Misconduct. A lawyer shall not;

(a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(d) engage in conduct that is prejudicial to the administration of Justice.

(f) Knowingly assist a judge or judicial officer in conduct that is a violation of applicable Code of Judicial Conduct or other

— The prosecutor, by withholding mitigating/exculpatory, evidence as described in the Motion for Sanctions, declaration in support of the motion for sanctions and herein manifested deceit, prejudice to the administration of justice and caused the Judge to violate Canons I, II & III of ARS ct, 81, model Code of Judicial Conduct (impartiality, integrity, diligence and impropriety). The prosecutor manifested "sentencing manipulation" that affected defendant, counsel for the defendant and the judge. U.S. v. Torres, ibid (see Table of Authorities).

## POINT III
### CONSTITUTIONAL VIOLATIONS

Petitioner alleges violations of his 1st, 14th, 5th, 6th, 8th ~~and~~ amendment Constitutional Rights and comparable ART. 2. rights of the Arizona Constitution.

A. Petitioner alleges he is/has been threatened with "irreparable harm. Petitioner asserts that deprivation of adequate medical (care by prison officials is a violation of his 8th amendment rights. Estelle v. Gamble, 429 U.S. 97, 105, 97 Sct. 285 (1976); Parsons v. Ryan, 2012, ibid, Cohn v. Ryan, 2:16 CV - 3134 PLR-ESW, (unpublished); Az. Board of Osteopathic Medical Examiners # DO16 - 0109A (unpublished); Parsons v. Ryan, 2016 CV.601 DKD, motion to Enforce Stipulation; ACLU, Prison & Litigation 2010.

B. Petitioner alleges his sentence exceeds what may have been mitigated, but for the prosecutor, et al's nonfeasance. He has been deprived of free speech (1st amndt) as advised by Judge Andrew Klein in Case PB2013 - 12741 CV14-9377, Settlement conference, bringing the witness statements

4.   21 of 60

described herein if presented in trial at this time would likely result in a greater punitive damage.

c. Petitioner was deprived of his 1st amendment "right to read" as the prosecutor provided no information about the ADC medical care that was in the public domain prior to the settlement conference of 11/2013. (Toston v. Thurmer, 689 F3d 828 (7th Civ. 2012) wrote, Freedom of speech implies freedom to read.

D. As the sentence is still in place, petitioner alleges that he was and is currently deprived of his 5th, 6th + 14th Amendment due process rights (U.S. v. Joures, 563 F3d, 731 (8th Civ. 2009). Sentencing manipulation violates due process.

E. By withholding the mitigating/exculpatory evidence from the beginning of the case, petitioner was subject to a fundamentally unfair judicial process. (ARSct. 42 E.R. 3.4, 3.8, 8.4; ARSct. 8.1, Canons I, II & III), Rivera v. Illinois _US_ 173 LEd2d 320, 129 Sct. 1446 (2009). The Due process clause safeguards the fundamental elements of fairness in a criminal trial; U.S. v. Ghertler, 605 F3d 1239 (11th Civ. 2010). A defendant has a right to not be sentenced based on false or unreliable information. The allegations that petitioner was verbally abusive to his wife would have been refuted, but for the withholding of the evidence at issue.

## POINT III

### DISCRIMINATION

Petitioner disclosed his disability status to the court and prosecution at the settlement conference of 11/2013. The Americans with Disabilities Act and the Rehabilitation Act

provide safeguards against Disparate treatment, Disparate impact and failure to make reasonable accommodations for petitioner's disabilities. Rehabilitation Act of 1973, § 504, 29 USC § 794(a); Title II, Americans with Disabilities Act, 42 USC §§1231, et seq., Bonner v. Lewis, 857 F2d 559 (9th Cir. 1988) (§ 504).

Petitioner asserts the Prosecutor's withholding the conditions of confinement from the tribunal/defendant constituted Disparate treatment. Other non-dangerous, non-repetitive defendents have received sentences to community supervision/House arrest. The case of State of Arizona v. Thomas O'brien, former Bishop of the Phoenix Catholic Diocese, Mr. O'brien killed a man, was alleged to have aided the abuse of many children and adults by Priests under his supervision and failed to report abuse to the authorities. Mr. O'brien served his sentence on house arrest where he could obtain his own medical care. Petitioner could have been similarly sentenced by Writ of Habeas Corpus at the time of sentencing. Petitioner is classified as non-dangerous/non-repetitive, is disabled with a chronic condition and was sentenced to a medically inadequate prison, allegedly murdering inmates at the rate of one per week by medical negligence (Parsons v. Ryan, 2012, Prison Legal News, 3/2014), with no effort on the part of the prosecutor to avoid discrimination, (malicious intent).

## POINT IV

## Inadequate Prison Medical Care

The 8th Amendment of the United States Consti. protects citizens from cruel and unusual punishment includes inadequate prison medical care/risk of future serious harm (Helling v. McKinney

509 U.S. 25, 31-32-33 (1993); Estelle v. Gamble, 429 U.S. 97, 104 (1976). The Parsons v. Ryan, 2012 class action suit, aff'd by the 9th Circuit protects all current and future ADC inmates from inadequate medical care. The State resists compliance with the 2015 settlement in this matter and the ACLU, et al, have returned to court with a motion to enforce stipulation (2:12 CV 601-DKD, (4/11/16) D. ARIZ). The State's resistence exposes petitioner to risk of harm, violating his 8th amndt. rights, ongoing, continuously. This also violates the ADA and §504 of the Rehabilitation Act. By not bringing these issues to the tribunal prior to sentencing the prosecutor misled the court per ARS §13-702.35; relevant factors must be considered regarding cruel and unusual punishment as no sentence can be cruel or unusual. As the 8th Amendment of the U.S. CONST. supercedes Arizona's mandatory sentencing laws, an alternative to incarceration in ADC should have been considered. (14th Amndt., equal protection clause).

At the time of sentencing, petitioner had a reasonable expectation of adequate medical care. Petitioner speculated at the time of sentencing that a sentence greater than 10 years would be a likely death sentence, given his conditions without adequate medical care life expectancy is threatened.

POINT V

Cumulative Error

Petitioner asserts that the suppression of Murray Dock's, Sharon Peterson's interviews would, along with suppression of inadequate medical care in ADC constitute cumulative error. yielding the denial of his

CONSTITUTIONAL right to a fundamentally fair judicial process. U.S. v. El-mazain, 664 F3d, 467 (5th cir. 2011) U.S. v. Lindsey, 634 F3d 541 (9th cir. 2011).

### POINT VI

### INTERVIEW OF MURRAY DOCK

On or about 3/27/13 Det. John Heinzelman of the Scottsdale P.D. interviewed Murray Dock, D, Ph, DDS., brother of Linda Dock Cohn. Mr. Dock admitted that Linda Cohn had called him some days prior to the offense and asked him for help as michael was suicidal and paranoid, Mr. Dock offered no meaningful assistance offering only the comment "get him to the doctor" or words to that effect, stating the obvious. Per statute and public policy and professional ethics Mr. Dock has an duty/obligation to protect public safety. (ARS §32-1202 (N) any conduct or practice that constitutes a danger to the health, welfare or safety of the patient or the public, Mr. Dock's nonfeasance aided/abetted Michael's offense callies into question criminal, gross or comparative negligence (Webster, Dictionary of law, 2011); ARS §13-105(d) Criminal negligence... means with respect to a result or to a circumstance described by statute defining an offense, that a person fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation - Murray Dock admitted he had never heard Michael Cohn verbally abuse Linda Cohn.

(Next Page)

25 OF 60

Rather than give Murray Dock a pass in this matter, Det. Heinzelman should have investigated Murray Dock's culpability. By failing to bring this to the tribunal prior to sentencing, the Prosecutor prejudiced/manipulated the sentencing process (U.S. v. Torres, ibid.). By failing to bring this issue to the Court earlier in the case, petitioner was deprived of a fundamentally fair judicial process. (Rivera v. Illinois, ibid).

### POINT VII

### INTERVIEW of Shavon Petterson

Sharon Petterson was interviewed by Det. John Heinzelman of Scottsdale P.D. telephonically on or about 3/27/13. Ms. Petterson stated that she had been a patient of Linda Cohn's for some years. She noted that Linda was a strong, independent woman who would not tolerate abuse. She further noted that she observed Linda during phone calls and could clearly see she loved him (emphatic). By concealing this information from the tribunal, the prosecutor deprived petitioner the opportunity to refute allegations that he verbally abuse Linda Cohn, thereby mitigating his sentence to a lesser amount of time.

### POINT VIII

The Court's role in this matter is clear. By oath of office, the Court must uphold the Constitution of the U.S.A. By Canons I, II & III of AR sct. 81 model Code of Judicial Conduct, the Court must act with integrity, with impartiality and avoid impropriety or its appearance. The Maricopa Co. Attorney's Nonfeasance in this matter is outrageous, unconscionable and shocks the conscience. It appears the Prosecutor was more interested in appeasing the

Victims who are wealthy and wanted a greater penalty. If this is his customary court practice he routinely prejudices cases.

The Court has the authority to award sanctions including monetary damages. (Arizona Rules of the Supreme Court, et seq.). A review of the prosecutor's cases is warranted. Mitigation hearings for those adversely affected by the Prosecutor's nonfeasance are justified. A review by an independent special prosecutor makes sense, to avoid any conflict of interest or its appearance. The prosecutor has no immunity, in this matter. (AZ. Agency Handbook 2013)

As a former prosecutor, I expect this Court would want to hold the current County attorney to the highest standards. At best, the Co. attny's work was sloppy/shoddy in this case... at worst it is criminal as he aids and abets the abuse/neglect of prisoners (ARS § 46-451-457, Adult Protective Services).


For the reasons set forth in this document and those attached, the court should grant petitioner's motion in all its respects.


Respectfully Submitted,

Michael J. Cohn

Michael J. Cohn, Pro Per

Michael J. Cohn ##288721
ASPC Lewis / STINER 5A20
P.O. Box 3100
Buckeye, AZ 85326

Superior Court of ARIZONA, Maricopa County

| State of ARIZONA | Case No. CR2013-114147-001 |
| Vs | Motion for Court Order to Compel |
| Michael J. Cohn | evidence |
| Defendant/ Petitioner, Pro Per | (Hon.) Sherry K. Stephens |

Petitioner herein requests that the Court order the Scottsdale Police Department to submit a Compact Disc Recording and a transcript of said recording of the interviews of Murray Doyle & Sheron Peterson by Detective Heinzelman on or about 3/27/13. Petitioner respectfully requests this action for the following reasons:

1) The integrity of the chain of custody will be preserved

2) It is unlikely the Scottsdale Police Department will comply with a request for the above from petitioner.

3) It is unlikely the Scottsdale Police Department will respond to a subpoena from the petitioner.

For the reasons above, the court should grant petitioner's motion in its entirety.

Respectfully submitted,                    Date:

Michael J. Cohn

Michael J. Cohn, Pro Per

Notice of Service

Note: contact info, for Scottsdale Police Dept.
   chief of the Scottsdale Police Dept.
      8401 E. Indian School Rd.
      Scottsdale, AZ 85251


Original mailed to: on:
Clerk of the Court
201 W. Jefferson
Scottsdale, AZ 85003


Copies to: on:
Wm. Montgomery, Co. Attny.
301 W. Jefferson, 5th Flr.
Phoenix, AZ 85003


Hon. Sherry K. Stephens
   175 W. Madison
      Phoenix, AZ 85003


Blaine Gadow, A.A.G.
1275 W. Washington
Phoenix, AZ 85007


Amanda Martin, Esq.
620 W. Jackson # 4015
Phoenix, AZ 85003

Michael J. Cohn #288721
ASPC Lewis / Stiner 5B20
P.O. Box 3100
Buckeye, AZ 85326

Superior Court of Arizona, Maricopa County

State of Arizona      Case No. CR2013-114147-001

v.      Motion For Reinstatement

Michael J. Cohn      of Counsel)

Defendant, Petitioner, Pro Per      (Hon. Sherry K. Stephens)

Petitioner respectfully requests that the Court order the reinstatement of Amanda Martin, Esq., Office of the Public Defender as counsel of record for the specific purpose of representing petitioner in his "motion for sanctions" against the County Attorney, et al. Petitioner makes this request for the following reasons.

1) Ms. Martin represented petitioner in his criminal case and is already familiar with this matter.

2) Ms. Martin reported to me that she had listened to the recordings in question in its entirety.

3) Ms. Martin interacts with the County Attorney's Office routinely and has standing with that office.

4) Ms. Martin has represented cases before this court and her credibility and integrity are known to this court.

     For the reasons stated above, the Court should grant petitioner's motion in its entirety.

     Respectfully submitted.

     Michael J. Cohn

     Michael J. Cohn, Pro Per

Notice of Service

Original mailed to: on:
clerk of the Court
201 W. Jefferson
Phoenix, AZ 85003


copies to:   on:
Hon. Sherry k. Stephens
175 W. Madison
Phoenix, AZ 85003


Wm. Montgomery, Co, Attny.
301 W. Jefferson, 5th Flr.
Phoenix, AZ 85003


Blaine Gadow, N.H.G.
1275 W. Washington
Phoenix, AZ 85007


Amanda Mautin, Esq,
620 W, Jackson #4015
Phoenix, AZ 85003

# Exhibit A

Charles Ryan Letter
to medical staff
re: medical care deficiencies
11/6/2009



# Arizona Department of Corrections

1601 WEST JEFFERSON
PHOENIX, ARIZONA 85007
(602) 542-5497
www.azcorrections.gov



JANICE K. BREWER
GOVERNOR

CHARLES L. RYAN
DIRECTOR

November 6, 2009

To All ADC, Health Services Staff:

I received an anonymous letter expressing concerns with the medical staff's ability to provide ADC inmates with constitutionally mandated health care. Below please find my comment or response to each anonymous allegation.

*On several separate RECENT dates, numbers of prison health care workers have had phone conversations/face to face conversations and group meetings with and other messages given to individuals in one, two or all three levels of administration controlling the prison health care system.*

*In the same vein, various notices and protests have been elevated over the past few years with conditions getting worse and worse.*

*To wit:*

*WE ARE DANGEROUSLY FAR BEHIND IN OUR WORK OF PROVIDING HEALTH CARE TO INMATES IN THE CUSTODY OF THE STATE.*
*SPECIFICALLY:*
*CHRONIC CARE VISITS, ACCESS TO CARE VIA NSG LINE / DR LINE / AND THE HEALTH NEED RESPONSE SYSTEM HAVE FALLEN FAR BELOW OUR OWN POLICY STANDARDS AS WELL AS ACCEPTED NATIONAL STANDARDS OF PRISON HEALTH CARE.*

*THERE ARE STACKS AND STACKS OF CHARTS NEEDING HCP REVIEW THAT NEVER GET CAUGHT UP. THERE ARE NUMBERS OF INMATES WITH REAL HEALTH CARE NEEDS THAT ARE UNATTENDED*

I have directed Dr Adu-Tutu and his staff to complete an assessment of the current health care status of the Department and establish a plan of action to alleviate any delays or obstacles to providing constitutionally mandated health care to our inmate population with the resources available.

*THIS IS DUE TO A STEADY DIMINUNITION IN NUMBERS OF PHYSICIANS, MID-LEVEL PRACTITIONCERS, NURSING AND PHARMACY PERSONNEL.*

*WE HAD CERTAIN RATIOS OF PERSONNEL TO INMATES INCLUDING MD/HCP DAYS PER WEEK PER UNIT UNTIL ABOUT 5 YEARS AGO.*
*OVER THE PAST SEVERAL YEARS WE HAVE LOST NUMEROUS: PHYSCIANS, MIK-LEVEL HEALTH CARE PROVIDERS, NURSES, NURSING ASSISTANTS AND WHOLE PHARMACY UNITS.*

*COMPLEXES HAVE BEEN LEFT WITH EXTREMELY LOW LEVELS OF COVERAGE: AT TIMES SOME UNITS HANE NONE.*
*POSITIONS AMONG PHYSICIANS, HCP'S, NURSING AND PHARMACY HAVE BEEN ELEIMINATED AS POSITIONS ARE LOST OR UNFILLED AND THE SALARIES DIVERTED THROUGH ADMINISTRATIVE MANIPULATION.*

*WE DESPARATELY NEED ADDITIONAL MD/HCP/NSG/PHARMACY PEOPLE SERVING IN OUR COMPLEXES.*

I understand the frustration and concern being felt by medical staff at this time. I am also cognizant of the fact all State agencies and employees are facing similar challenges as is ADC given the current State budget deficit/projections. As a Department, medical is not the only segment of ADC being considered for privatization. A Request for Information (RFI) is being written to be forwarded to DOA to consider the privatization of one or more ADC prison complexes. All ADC employees are experiencing the stress of uncertainty with respect to the possibility of privatization and the possible loss of state employment.

Anonymous Letter
November 6, 2009
Page 2

I have approved 21 positions for immediate recruitment. The positions authorized to hire include physicians, nurses, pharmacy staff, dental staff, mental health and medical record staff. We will continue to evaluate our vacancies in Health Services to ensure critical positions are identified, prioritized and recruited within the frame work of ADCs budget.

*RISK MANAGEMENT NEEDS TO BE AWARE AND INVOLVED AS WE ARE FAILING TO MEET OUR OWN POLICY STANDARDS AS WELL AS NATIONAL PRISON STANDARDS.*

*These are recurring themes, INCREASINGLY STRIDENT, throughout the ADOC system of health care for the past 4-5 years during which we have unitedly, consistently, and repeatedly reported such shortcomings to administrators at the local and central levels of ADOC. We have written group letters repeatedly, certified letters to the Director, individual emails, and had numerous face to face conversations about the conditions of our prison health system.*

*We have staff spread way too thin.. all with INCREASING LEVELS of job requirement in amount, intensity and complexity.*

*Over the years the State of Arizona has reduced it state employee positions authorized because of budget restrains, efficiency reviews and/or re-organization of Agencies. The Department of Corrections also experienced lost positions due to legislative action, efficiency reviews and/or re-organization. Health Services has lost numerous positions since 2002 as a result of the above actions. Worth noting, of the positions lost only one (1) physician position and one (1) mid-level position were abolished, both assigned to central office.*

*During this time of increasing concern regarding constitutional mandate, professional liability and increased demand for objective documentation, we have lost many critically needed people.*

*There has been a lack of aggressive recruiting.*

*These now is no recruiting as we are faced with loss of State Employment.*

I understand the frustration and fear being felt by medical staff at this time. I am also cognizant of the fact all State agencies and employees are facing similar challenges as is ADC given the current State budget deficit/projections. As a Department, medical is not the only segment of ADC being considered for privatization. A Request for Information (RFI) is being written to be forwarded to DOA to consider the privatization of one or more ADC prison complexes. All ADC employees are experiencing the stress of uncertainty with respect to the possibility of privatization and the possible loss of state employment.

*There currently is an administrative plan to transfer all our sickest inmates to xxxxxxx.*

I have approved a plan to house our most medically and mental health needy inmates at the Tucson prison as a cost savings measure. The plan's objective is to reduce outside transports from other complexes and position our most medically needy inmates closer to contracted specialty and hospital services. Additionally, Tucson would provide mental health services and programming to a targeted population requiring such services reducing the high use mental health population in other complexes. To implement the plan it will require transferring of positions and staff from other complexes to the Tucson prison to support the higher medical and mental health acuity of inmate population housed there.

*Simultaneously cutting our contracted rate of reimbursement to hospital systems that handle our referrals for hospital and specialty care in that area from 1.9 x ahccs reimbursement rates to 1.0 x ahccs reimbursement rates.*

The rate reduction was a Legislative action include in House Bill 2010 and will become law November 23, 2009. ADC is working behind the scenes in establishing alternative plans for the provision of speciality and hospital services to our inmate population.

7   10 of 26    34 of 20

Anonymous Letter
November 6, 2009
Page 3

*We are feeling an increasing sense that our efforts are futile, of imminent disaster, of negative stress and of overwhelming personal and professional vulnerability.*

I understand the frustration and fear that stems from staff shortages, budget restraints, perceived future job loss given the possibility of privatization of segments of the Department. I urge all ADC staff to continue the great work that they are accomplishing and stay the course. There is no question we will be challenged in the months and years ahead to accomplish more with less given the current budget deficit / projections. However I feel confident the ADC team will once again step up to the challenges ahead and will emerge a more leaner and efficient agency.

*Sincerely we remain,*
*The people in the front lines, trying to provide needed health care (the right to which has been legally preserved) to those individuals in State custody.*

I prefer to communicate with employees by name. However, if you would rather call me, my telephone number is (602) 542-5225.

As always my door is open to all ADC staff. You are also welcome to send me an email to express your concerns or provide recommendations to improve the Arizona Department of Corrections.

Sincerely,

Charles L. Ryan
Director

CLR:JT:lb

11 of 26

Exhibit B

A2. Republic Column
Dated 12/5/18
Expose' of ADOC Medical
Deficiencies

- Type Size:
-
-
-
-
- SHARE    ▪
-

# Prison inmates in Arizona crying foul over medical care

# State to investigate medical allegations

by **Bob Ortega** Dec. 5, 2011 11:06 PM
The Arizona Republic

177 people recommend this.

Tweet 39

To stave off a lawsuit, Arizona's Department of Corrections has agreed to investigate scores of complaints by inmates that they are routinely denied medical care for weeks or months even for severe, life-threatening conditions. Inmates who have lost sight, had body parts amputated or been severely disfigured, among other gruesome examples, say proper medical care could have prevented needless suffering.

Based on those allegations, a legal coalition has accused the state of chronically and systemically denying medical and mental-health care to inmates, violating state and federal laws and the U.S. Constitution.

The Prison Law Office, a legal-advocacy group for prisoners nationwide, also charges that lack of care may contribute to a prison suicide rate in Arizona that is more than double the national average, with 14 reported suicides in the fiscal year that ended last June.

Interviews with current and former prisoners and dozens of inmate letters of complaint obtained by *The Arizona Republic* raise similar concerns.

Corrections officials say they have found no evidence of systemic problems, although they say that pending plans to privatize prison health care have made it harder to fill medical-staff vacancies and that rule changes two years ago that cut payment levels to outside contractors also crimped access to care.

But prisoner advocates say the problems are longer-standing.

Allegations made by inmates, prisoner advocates and attorneys include:

A diabetic prisoner, while waiting months for insulin, lost sight completely in one eye and partially in the other.

An epileptic who wasn't given his medications suffered repeated seizures for weeks.

A man with a growth on his penis was denied medical treatment for two years. Doctors ultimately diagnosed a cancerous tumor on his penis; the organ had to be amputated, and doctors told him the cancer had spread to his stomach.

An inmate with a cancerous growth on his lip waited seven months for treatment. Most of his lip and mouth were removed, leaving him permanently disfigured.

Prison medical staff members have repeatedly denied treatment to Tucson inmate Horace Sublett for Kaposi's sarcoma, a cancer, despite documentation, including from the VA hospital in Phoenix and other outside doctors confirming that the Navy veteran, 82, has the disease.

Prisoners with emphysema, end-state renal disease and other illnesses reported being denied treatment or medication, leading to complications and permanent side effects.

Corrections officials maintain that they provided appropriate care in these cases. Karyn Klausner, the department's general counsel, said inmates' loss of sight, amputation of the penis and disfiguring facial surgery were not related to any delays in treatment.

Donald Specter, executive director of the San Quentin, Calif.-based Prison Law Office, described his group's concerns in an Oct. 12 letter to state Corrections Director Charles Ryan.

"State prison officials are deliberately indifferent to the serious health-care needs of prisoners and to the prisoners' unnecessary and significant pain, suffering and even deaths," Specter wrote.

That letter, which lists dozens of specific allegations without naming the inmates affected and which has been obtained by *The Republic*, asked Ryan to agree to a court injunction to address problems as a way of avoiding a lawsuit in federal court.

In May, Specter and the Prison Law Office won landmark litigation against the California Department of Corrections. In a 5-4 decision, the U.S. Supreme Court required California to release about 30,000 prisoners to alleviate unconstitutional prison overcrowding.

On Nov. 17, Arizona's Department of Corrections signed an agreement to investigate the medical claims, and the California group agreed to delay any lawsuit for three months.

But, so far, Ryan said, "We don't see any systemic indication of problems or evidence of deliberate indifference."

Ryan added that the department demanded the group provide inmates' names so it could verify or disprove the claims.

Specter said his group is asking inmates whether they are willing to be identified. Many prisoners fear retaliation for speaking out.

The department doesn't deny there are problems.

"Are there instances where an inmate didn't receive medications or treatment in a timely fashion? Yes," Klausner said. "But is it systemic? No."

The Prison Law Office noted that in 2009, the Arizona State Prison Complex-Eyman in Florence had only one half-time psychiatrist for more than 1,000 patients who were on mental-health medications. As of last month, that position was vacant.

Earlier this year, inmates at the Arizona State Prison Complex-Perryville often weren't seen by mental -health staff for six months or more, according to staff quoted in the group's letter.

"We're out of compliance with our own policies," Michael Breslow, then- deputy medical director for psychiatry, warned Ryan in a Sept. 13, 2009, e-mail obtained by the law group through an Information Act request. "The lack of treatment represents an escalating danger to the community, the staff and the inmates," Breslow said.

Staff shortages also affect medical care. Both the Arizona State Prison Complex-Tucson and the Eyman unit, which house more than 5,100 prisoners each, are supposed to have five doctors on staff. In April, Eyman had two doctors and a third working half-time; Tucson had two, according to department staffing reports.

Ryan and Klausner said Corrections has improved mental-health and medical care in recent months. Ryan said Corrections provided six hours of training in suicide prevention, crisis intervention and emergency response to 8,806 staff members who have direct contact with inmates.

That training follows, among other incidents, the July 2010 suicide of Tony Lester, a mentally ill inmate at the Tucson prison. An internal investigation found that officers stood by for 23 minutes without intervening after Lester slit his throat, wrists and groin with razor blades that he wasn't supposed to have.

Ryan also said Corrections has filled 172 health-care and mental-health positions since June 23 -- including vacancies for doctors at the Eyman and Tucson prisons.

However, the overall medical-staff vacancy rate has barely budged. In April, 23 percent of positions were unfilled. As of the end of November, 22 percent were unfilled, according to staffing reports.

Ryan said the department also has reduced the waiting time for inmates who require medical treatment outside the prisons -- from an average of 77 days early last year to an average of 49 days as of this month.

But inmates say months-long waits for care and denials of prescribed medicine and medical supplies continue to be routine.

"It's a real big problem, and they're keeping it hush-hush," former inmate Eric Wright said in an interview. Wright was released from the state prison in Tucson last month after serving more than four years on drug charges. Wright said a doctor prescribed back surgery in 2008 for an injury he suffered in prison.

"Nothing in my sentence called for the death penalty," said former inmate Martin Feldman, 67, who also had difficulties receiving timely prison medical care for osteomyelitis (a chronic bone infection) and obstructed coronary arteries. Feldman recently was released after serving nearly two years for a drug violation.

Corrections spokesman Barrett Marson declined to comment on Wright's and Feldman's cases, saying Corrections had to retrieve their medical records from archives.

Some of the shortfall in medical care stemmed from legislation lawmakers advocated as cutting costs.

In mid-2009, the Republican-led Arizona Legislature passed laws requiring Corrections to privatize prison medical care and to pay providers at a rate no higher than that paid by the Arizona Health Care Cost Containment System, the state's Medicare provider.

According to Corrections officials, within months of that law's passage, there were negative repercussions:

Health-care employees, figuring their jobs were on the chopping block, started leaving in droves. Corrections spent $5.3 million less on full-time health-care staff salaries this past fiscal year than two years earlier, a 13.5 percent drop. The department has used temporary, part-time workers to partially close that gap. And many contract providers such as Carondelet Health Network stopped doing business with Corrections, saying the reimbursement rates were too low. Ryan said the department eventually found other providers.

These issues are not new. In January 2009, well before lawmakers acted, more than one in four health -care positions was vacant, and the waiting time for outside medical care averaged 11 weeks, according to the department.

In the fiscal year ending last June, Corrections spent $111.3 million, or an average of $3,258 per inmate, on health care, down 27 percent from $140.5 million, or an average of $4,482 per inmate, two years earlier.

In recent years, inmates have reported scores of incidents to prisoner advocates such as the Arizona Justice Project, which helps inmates with wrongful convictions; Middle Ground Prison Reform, a prisoner-rights group; Lynn Nau, who runs a prison ministry for Faith Lutheran Church in Phoenix; Margaret Plews, a Phoenix activist who monitors treatment of prisoners; and Rep. Cecil Ash, a Republican lawmaker from Mesa who is involved in sentencing and correctional issues.

Ash said some of the letters he has received "really give me cause for worry ... that the state could have some serious lawsuits on its hands."

16 of 26      40 of 60

Many alleged incidents also suggest that often, denying basic care not only causes prolonged pain and suffering but makes it far more expensive once doctors treat the patients.

Carlos Archuleta, a Tucson inmate, said he begged repeatedly for help after being bitten in the groin by a spider last June. After four days, he was transported to a hospital for an emergency operation to remove infected fluid and tissue. Doctors had to resuscitate him after his heart stopped during the operation, and Archuleta was kept in the hospital six days.

"The doctor said if they'd left it one more day, he'd be dead. Just because they're inmates doesn't mean you should treat them this way," said his mother, Guadalupe Lopez. She added, "If he'd gotten proper medical care on day one, taxpayers wouldn't have had to pay for an emergency surgery and the hospital stay."

Corrections' spokesman Marson said "appropriate care was provided" to Archuleta.

The bottom line isn't just that prisoners, like anyone else, should have access to adequate medical care, said Caroline Isaacs, director of the American Friends Service Committee's Tucson office, which monitors state prisons. "Ninety percent of them will get out of prison, so treating HIV or hepatitis C or whatever they have prevents a public- health risk, or they'll get out and get on AHCCCS and we're paying for it anyway."

- Type Size:
-
-
-
-
-
-

MORE FROM AZCENTRAL                          MORE FROM THE WEB

- 
    (azcentral.com | news)                           (Bankrate.com)
- 
  (azcentral.com | news)
-                                             (Wetpaint Entertainment)
      (azcentral.com | thebuzz)
-                                             (Newsmax.com)
         (azcentral.com |
  scottsdale)                                      (HealthCentral.com)
-                                                (StyleBistro)

  (azcentral.com | cardinals)

Exhibit C
3/15/14

Prison Legal News Expose'
Re: Corizon Healthcare

Corizon Needs a Checkup: Problems with Privatized Correctional Healthcare

JULY 14, 2014
Login (/users/login/) or Sign up (/users/register/)

# Prison Legal News (/)

*Dedicated to Protecting Human Rights*

# Corizon Needs a Checkup: Problems with Privatized Correctional Healthcare

Loaded on MARCH 15, 2014 by Greg Dober (/news/author/greg-dober/) published in Prison Legal News March, 2014 (/news/issue/25/3/), page 1
Filed under Private Prisons (/search/?selected_facets=tags:Private%20Prisons), Wackenhut/Geo Group (/search/?selected_facets=tags:Wackenhut/Geo%20Group), CMS (/search/?selected_facets=tags:CMS), Prison Health Services (/search/?selected_facets=tags:Prison%20Health%20Services), Wexford Health Services (/search/?selected_facets=tags:Wexford%20Health%20selected_facets=tags:CMS), Prison Health Services (/search/?selected_facets=tags:Medical%20Misconduct), Medication (/search/?selected_facets=tags:Medication), Dynamic Medical Neglect (/search/?20Services), Medical Misconduct (/search/?selected_facets=tags:Medical%20Misconduct), Medication (/search/?selected_facets=tags:Medication), Misdiagnosis (/search/?selected_facets=tags:Misdiagnosis), selected_facets=tags:Systemic%20Medical%20Neglect), Prison Contractors (/search/?selected_facets=tags:Prison Contractors), Medical Neglect/Malpractice (/search/?selected_facets=tags:Medical%20Neglect/Malpractice). Location: United States of America (/search/?selected_facets=tags:United%20States%20of%20America),
Medical Neglect/Malpractice (/search/?selected_facets=tags:Medical%20Neglect/Malpractice). Location: United States of America (/search/?selected_facets=tags:location:United)

Corizon, the nation's largest for-profit medical services provider for prisons, jails and other detention facilities, was formed in June 2011 through the merger of Prison Health Services (PHS) and Correctional Medical Services (CMS).

In April 2013, the debt-rating agency Moody's downgraded Corizon's nearly $360 million worth of debts to a rating of B2 – an indication the company's debt is highly speculative and a high credit risk. According to Moody's, the rating downgrade was due to an "expectation of earnings volatility following recent contract losses, margin declines from competitive pricing pressure on new and renewed contracts, and Moody's belief that Valitás [Corizon's parent corporation] will be unable to restore metrics to levels commensurate with the prior B1 rating over the near to intermediate term."

Valitás Health Services is majority owned by Beecken Petty O'Keefe & Company, a Chicago-based private equity management firm. Beecken's other holdings are primarily in the healthcare industry.

On September 23, 2013, Moody's again downgraded Corizon's debt rating and changed the company's rating outlook from "stable" to "negative." The following month Corizon announced that it had replaced CEO Rich Hallworth with Woodrow A. Myers, Jr., the former chief medical officer at WellPoint Health. Hallworth, who had been appointed Corizon's CEO in 2011, previously served as the president and CEO of PHS. At the same time that Hallworth was replaced, Corizon president Stuart Campbell also stepped down.

## Prison Medical Care for Profit

According to Corizon's website, the company provides healthcare services at over 530 correctional facilities serving approximately 378,000 prisoners in 28 states. In addition, Corizon employs around 14,000 staff members and contractors. The company's corporate headquarters is located in Brentwood, Tennessee and its operational headquarters is in St. Louis, Missouri.

The 2011 merger that created Corizon involved Valitás Health Services, the parent company of CMS, and America Service Group, the parent company of PHS. The Nashville Business Journal reported the deal was valued at $250 million.

"Corizon's vision is firmly centered around service – to our clients, our patients and our employees," Campbell said at the time. "To that we add the insight of unparalleled experience assisting our client partners, and caring professionals serving the unique healthcare needs of [incarcerated] patients."

Corizon has around $1.5 billion in annual revenue and contracts to provide medical services for the prison systems in 13 states. The company also contracts with numerous cities and counties to provide healthcare to prisoners held in local jails; some of Corizon's larger municipal clients include Atlanta, Philadelphia and New York City (including the Rikers Island jail). Additionally, the company has its own in-house pharmacy division, PharmaCorr, Inc.

The prison healthcare market has flourished as state Departments of Corrections and local governments seek ways to save money and reduce exposure to litigation. [See: PLN, May 2012, p.22]. Only a few major companies dominate the industry. Corizon's competitors include Wexford Health Sources, Armor Correctional Health Services, NaphCare, Correct Care Solutions and Centurion Managed Care – the latter being a joint venture of MHM Services and Centene Corporation. Around 20 states outsource all or some of the medical services in their prison systems.

As Corizon is privately held, there is little transparency with respect to its internal operations and financial information, including costs of litigation when prisoners (or their surviving family members) sue the company, often alleging inadequate medical care.

For example, when Corizon was questioned by the news media in Florida during a contract renewal, the company initially tried to prevent the release of its litigation history, claiming it was a "trade secret."

In 2012, Corizon agreed to settle a lawsuit filed against PHS – one of its predecessor companies – by Prison Legal News, seeking records related to the resolution of legal claims against the firm in Vermont. Based on the records produced pursuant to that settlement, PHS paid out almost $1.8 million in just six cases involving Vermont prisoners from 2007 to 2011. [See: PLN, Dec. 2012, p.16].

Companies like Corizon provide healthcare in prisons and jails under the HMO model, with an emphasis on cutting costs – except that prisoners have no other options to obtain medical treatment except through the contractor.

## Arizona DOC

A former Corizon nurse had her license suspended and is currently under investigation by the Arizona State Board of Nursing for incompetence. In January 2014, nurse Patricia Talboy was accused of contaminating vials of insulin at three units at the ASPC-Lewis prison, potentially exposing two dozen prisoners to HIV or hepatitis.

Talboy reportedly used a needle to stick prisoners' fingers to check their blood sugar levels. She then used the same needle to draw insulin from vials of the medication utilized for multiple prisoners, possibly contaminating the insulin in the vials. After placing the vials back into inventory, other staff members may have unknowingly used them to dispense insulin.

"Every indication is that the incident is the result of the failure by one individual nurse to follow specific, standard and well-established nursing protocols when dispensing injected insulin to 24 inmates," Arizona Department of Corrections (ADC) director Charles L. Ryan said in a January 9, 2014 statement.

Talboy's failure to follow procedures was discovered after a prisoner told a different nurse about the issue. Corizon reportedly delayed three days before publicly reporting the incident; in a press release, the company admitted that one of its nurses had been involved in "improper procedures for injections." Talboy received her nursing license in August 2012 and became an RN in June 2013; as a rookie nurse, Corizon likely paid her less than more experienced nurses.

Following the insulin-related incident, the company was ordered to develop a comprehensive plan that includes "supplemental training and competency testing procedures for blood glucose testing and administration of insulin," as well as "nurse-peer reporting education to ensure professional accountability" and "patient awareness education on injection protocols."

Granted, Corizon isn't alone with respect to such incidents. In August 2012, a nurse employed by the ADC's previous medical services contractor, Wexford Health Sources, contaminated the insulin supply at ASPC-Lewis through improper injection protocols, potentially exposing 112 prisoners to hepatitis C. [See: PLN, July 2013, p.1].

Share
(http://www.facebook.com/sharer.php?
status=Corizon%20Needs%20a%20Checkup:%20Problems%20with%20Problems%20Privatized%20with%20Health+care%20/+1/confirm?

Corizon Needs a Checkup: Problems with Privatized Correctional Healthcare | Prison Legal News - Page 3 of 11

Corizon has a three-year, approximately $370 million contract to provide medical care in Arizona state prisons, which began in March 2013. The contract award generated controversy because former ADC director Terry Stewart was hired by Corizon as a consultant; current director Charles Ryan had previously worked under Stewart, raising a potential conflict of interest. Ryan denied any improprieties.

According to a report by the American Friends Service Committee released in October 2013, titled "Death Yards: Continuing Problems with Arizona's Correctional Health Care," medical services in Arizona prisons did not improve after Corizon replaced Wexford as the ADC's healthcare contractor. "Correspondence from prisoners; analysis of medical records, autopsy reports, and investigations; and interviews with anonymous prison staff and outside experts indicate that, if anything, things have gotten worse," the report stated.

"Death Yards"

### Florida DOC

In 2013, the Florida Department of Corrections (FDOC) awarded Corizon a five-year, $1.2 billion contract to provide medical services to state prisoners in north and central Florida. Wexford Health Sources was contracted to provide similar services in the southern region of the state for $240 million. [See: PLN, June 2013, p.24]. The wholesale privatization of healthcare in Florida's prison system followed a 2011 legislative decision to disband the state's Correctional Medical Authority, which had oversight over prison medical care. [See: PLN, May 2012, p.36].

The contracts were part of the Republican administration's initiative to expand privatization of government services, including prison management and healthcare, in spite of previous setbacks. In 2006, PHS withdrew two months into an almost $800 million contract to provide medical care to Florida prisoners; at that time, the company said the contract was not cost-effective and claimed it would lose money.

The 2013 contract awards to Corizon and Wexford followed a two-year legal fight. In 2011, AFSCME Florida and the Federation of Physicians and Dentists/Alliance of Healthcare and Professional Employees filed suit challenging the prison healthcare contracts, in an effort to protect the jobs of nearly 2,500 state workers.

On June 21, 2013 the First District Court of Appeals approved the privatization of medical care in FDOC facilities, overturning a ruling by the Leon County Circuit Court. The appellate court noted in its decision that "The LBC [Legislative Budget Committee] simply moved funds from different line items within the Department's Health Services' program, providing additional funds for contracts that the Department otherwise had the authority to enter." See: Crews v. Florida Public Employers Council 79, 113 So.3d 1063 (Fla. Dist. Ct. App. 1st Dist. 2013).

Under the terms of the FDOC's contract with Corizon, the company must provide medical care to Florida state prisoners for 7% less than it cost the FDOC in 2010. When entering into the contract, state officials apparently had few concerns about the numerous lawsuits previously filed against Corizon, and no hard feelings toward the company's predecessor, PHS, when it terminated its 2006 contract to provide medical services to Florida prisoners because it wasn't profitable.

"Most people feel, 'as long as they achieve their 7 percent savings who cares how they treat inmates?'" noted Michael Hallett, a professor of criminology at the University of North Florida.

### Florida Counties

In a September 6, 2012 unpublished ruling, the Eleventh Circuit Court of Appeals affirmed a $1.2 million Florida jury verdict that found Corizon – when it was operating as PHS – had a policy or custom of refusing to send prisoners to hospitals. The Court of Appeals held it was reasonable for jurors to conclude that PHS had delayed medical treatment in order to save money. See: Fields v. Corizon Health, 490 Fed.Appx. 174 (11th Cir. 2012).

The jury verdict resulted from a suit filed against Corizon by former prisoner Brett A. Fields. In July 2007, Fields was being held in the Lee County, Florida jail on two misdemeanor convictions. After notifying PHS staff for several weeks that an infection was not improving, even with antibiotics that had been prescribed, Fields was diagnosed with MRSA. PHS did not send him to a hospital despite escalating symptoms, including uncontrolled twitching, partial paralysis and his intestines protruding from his rectum. A subsequent MRI scan revealed that Fields had a severe spinal compression; he was left partly paralyzed due to inadequate medical care.

The Eleventh Circuit wrote that PHS "enforced its restrictive policy against sending prisoners to the hospital," and noted that a PHS nurse who treated Fields at the jail "testified that, at monthly nurses' meetings, medical supervisors 'yelled a lot about nurses sending inmates to hospitals.'" Further, PHS "instructed nurses to be sure that the inmate had an emergency because it cost money to send inmates to the hospital."

At trial, the jury found that PHS had a custom or policy of deliberate indifference that violated Fields' constitutional right to be free from cruel and unusual punishment. The jurors concluded that Fields had a serious medical need, PHS was deliberately indifferent to that serious medical need, and the company's actions proximately caused Fields' injuries. The jury awarded him $700,000 in compensatory damages and $500,000 in punitive damages. [See: PLN, March 2013, p.54; Aug. 2011, p.24].

More recently, the estate of a 21-year-old prisoner who died at a jail in Manatee County, Florida filed a lawsuit in October 2013 against the Manatee County Sheriff's Office and Corizon, the jail's healthcare provider. The complaint accuses the defendants of deliberate indifference to the serious medical needs of Joven Frazier and violating his rights under the Eighth Amendment.

In February 2009, Frazier was incarcerated at the Manatee County Jail; at the time of his medical intake screening, staff employed by Corizon, then operating as PHS, noted that his health was unremarkable. Frazier submitted a medical request form in July 2009, complaining of severe pain in his left shoulder and arm, and a PHS nurse gave him Tylenol.

Throughout August and September 2009, Frazier submitted five more medical requests seeking treatment for his arm and shoulder. "It really hurts! HELP!" he wrote in one of the requests. PHS employees saw him and recorded his vital signs. Despite the repeated complaints, Frazier was never referred to a doctor or physician assistant; on September 9, 2009 his treatment was documented as routine but he was placed on the "MD's list."

An X-ray was taken on September 17, 2009 to rule out a shoulder fracture. The X-ray was negative for a fracture, and Frazier was not referred to a doctor. He submitted two more medical requests that month and five requests in October 2009 seeking treatment for his increasingly painful condition. The complaint alleges that in total, Frazier submitted 13 medical request forms related to pain over a period of three months; he was seen by a nurse each time but not examined by a physician.

On October 29, 2009, Frazier received an X-ray to determine if he had a tendon injury. An MRI was recommended and he was transported to a hospital where an MRI scan revealed a large soft tissue mass on his shoulder. A doctor at the hospital, concerned that the mass was cancerous, recommended additional tests.

After being diagnosed with osteosarcoma, a form of bone cancer, Frazier was returned to the jail and subsequently treated at the Moffitt Cancer Center, where he received chemotherapy, medication and surgery. Despite this aggressive treatment the cancer progressed and Frazier's left arm was amputated. The cancer continued to spread, however, and he was diagnosed with lung cancer in June 2011. He died within three months of that diagnosis, on September 18, 2011.

In a letter to the attorney representing Frazier's estate, Florida oncologist Howard R. Abel wrote that the lack of treatment provided by Corizon at the Manatee County Jail constituted "gross negligence and a reckless disregard to Mr. Frazier's right to timely and professionally appropriate medical care."

The lawsuit filed by Frazier's estate claims that Corizon was aware of his serious medical condition but failed to provide adequate treatment. In addition, the complaint contends the company has a widespread custom, policy and practice of discouraging medical staff from referring prisoners to outside medical practitioners and from providing expensive medical tests and procedures. Finally, the lawsuit states that "Corizon implemented these widespread customs, policies and practices for financial reasons and in deliberate indifference to [the] serious medical needs of Frazier and other inmates incarcerated at Manatee County Jail."

On January 10, 2014, U.S. District Court Judge James Moody denied Corizon's motion to dismiss the case. The company had argued that the allegations in the lawsuit failed to assert sufficient facts to establish deliberate indifference, amounted only to medical negligence and were insufficient to establish gross negligence, and failed "to adequately allege a policy or custom that violated Frazier's rights." Judge Moody disagreed, finding the claims set forth in the complaint were "sufficient to establish a constitutional violation."

The Manatee County Sheriff's Office had better luck with its motion to dismiss. The Sheriff argued the complaint did not establish facts indicating that the jail had a similar practice – like Corizon – of providing deliberately indifferent medical care to prisoners. The court agreed and dismissed the claims against the Sheriff's Office; the claims against Corizon remain pending. See: Jenkins v. Manatee County Sheriff, U.S.D.C. (M.D. Fla.), Case No. 8:13-cv-02776-JSM-TGW.

44 of 60

  20 of 26

Exhibit D
6/5/2014

ACLU Press Release
Re: Class Action AFFIRMED
9th Cir.

232   21 of 26

# 33,000 Arizona Prisoners Now Can Sue State over Health Care, Solitary Confinement

Share

June 5, 2014

FOR IMMEDIATE RELEASE
CONTACT: 212-549-2666, media@aclu.org

SAN FRANCISCO – Today the U.S. Court of Appeals for the Ninth Circuit unanimously ruled that the American Civil Liberties Union and the Prison Law Office can move forward with a lawsuit against the state of Arizona on behalf of all 33,000 prisoners in the state's 10 prisons and all future prisoners. The ruling is critical to obtaining necessary systemic changes to conditions of confinement in the Arizona Department of Correction (ADC), and is a key victory for civil rights plaintiffs throughout the country.

"The State of Arizona has long ignored the basic needs of people confined in its prisons, including the constitutional mandate to provide adequate health care. Prisoners have suffered unnecessarily and even died while waiting for basic care," said David Fathi, Director of the National Prison Project at the ACLU, who argued the case for the prisoners in the Court of Appeals. "This ruling brings us closer to requiring the executive and legislative branches to end their neglect and indifference once and for all."

The groups filed the federal lawsuit in 2012, challenging years of inattention to the health needs of state prisoners and improper and excessive use of solitary confinement, resulting in serious harms and unnecessary deaths. Judge Neil V. Wake of the U.S. District Court in Phoenix certified the case as a class action in March 2013; today's decision affirms that ruling.

The Court of Appeals listed failing to hire enough medical staff, failing to fill prescriptions, denying inmates access to medical specialists, adopting a de facto "extraction only" policy for dental issues, and depriving suicidal and mentally ill inmates access to basic mental health care.

The Court allowed the ACLU and the Prison Law Office to represent the prison population in Arizona as a class because all the prisoners shared a common interest in not being subjected to a "substantial risk of serious harm resulting from exposure to the [ADC's] policies and practices governing health care." "The Court rejected the state's arguments that the prisoners don't have enough in common to warrant class action status, adding that the state had a "fundamental misunderstanding" of the law:

> [G]iven that every inmate in ADC custody is likely to require medical, mental health, and dental care, each of the named plaintiffs is similarly positioned to all other ADC inmates with respect to a substantial risk of serious harm resulting from exposure to the defendants' policies and practices governing health care.

(cover)

46 of 60

22 of 26

Exhibit E

ARIZONA Republic Columns (ADC / inmate
ABUSE ) Deaths / Torture

We have an obligation to feed, clothe, shelter and care for them. As evil as they may or may not be.

Recently, the lawyers who filed the original lawsuit have gone back to court seeking mediation over what they call "lapses in medical care that are at best cruel and at worst lethal."

David C. Fathi, director of the ACLU's National Prison Project, told me, "More than a year after the settlement went into effect, ADC remains grossly out of compliance with many of its most basic requirements. These provisions — to which ADC freely agreed — are critical to the health and safety of the men, women and children in Arizona's prisons. If ADC does not quickly come into compliance, we will have no choice but to ask the federal court to enforce our clients' constitutional right to minimally adequate health care."

All of this costs the state money, of course. Meaning it costs *us* money.

All of which could be saved if we just lived up to our obligation.

And as for those who tell me — as they always do — that they wish *they* had it as good as people in prison, I'll believe that as soon as I see a line of people forming at the maximum-security facility at Florence, asking to get in.



**EJ MONTINI**
week of
3/11/16
ed.montini
@arizonarepublic.com
Tel: 602-444-8978

# Wait ... we pay the health-care costs for killers in Ariz.?

Yes, we pay for the health care of killers. And rapists. And child molesters. Armed robbers. Drug dealers. Spousal abusers. Thieves. Con men. And so on.

We do the same for anyone in prison. We give them a place to live. We feed them. And when they get sick, we take care of them.

At least, we're supposed to.

In 2012, the American Civil Liberties Union, the ACLU of Arizona and the California-based Prison Law Office filed a lawsuit against the Arizona Department of Corrections over what it claimed was inadequate medical, mental-health and dental care for prisoners, as well as challenging the use of solitary confinement in Arizona prisons.

The suit covered roughly 33,000 inmates in 10 state-run prisons. The state denied there was a problem.

But Don Specter, director of the Prison Law Office, said its evidence was "a powerful indictment of some of the practices in the Arizona Department of Corrections, and there needs to be a fundamental shift in how the state approaches some of these issues."

In 2014, shortly before a trial was to begin, the state agreed to reform its prison health-care system and pay more than $5 million in attorneys' fees under a class action settlement.

There was to be increased staffing, shorter wait times and more.

You don't like this, do you?

I've lived in Arizona a long time, and just about every time I write about someone in jail or in prison, the reaction I get from many people is that we should let the no-good scum rot.

Only it's usually phrased in less polite language.

Well, we can't do that. And more to the point, we shouldn't. Putting a person in prison is taking responsibility for him or her. It's like we adopt them and then ground them to their room. Permanently.

Exhibit F

# State

**Lottery,** A4
**Stocks,** A13
**Opinions,** A14, 15
**Letters,** A15
**Obituaries,** A10, 11

RIZONAREPUBLIC.COM ‖ **NEWS.AZCENTRAL.COM**



**EJ MONTINI**

ed.montini
@arizonarepublic.com
**Tel:** 602-444-8978

9/17/14

# eaves short



NICK OZA/THE REPUBLIC

...y during the renaming ceremony for
...n naming-rights fees for nine years.

## ...l in deal's 1st year

Coyotes formally changed
the name of their venue to
the Gila River Arena, from
Jobing.com Arena.

The change means
about $600,000 for the city,
but that won't be counted in
the initial period of the
management agreement.
And, that money accounts
for significantly less than
the two main income sourc-
es: events and parking.

In the first year of the

## Reasons why we should treat prison inmates like dogs

f there is any justice left in this world,
the state of Arizona will begin treating
its prison inmates like dogs.

Two cases working their way
through the system prove the state's
contractual responsibility to do this, the
legal justification for it, and our un-
questioned, absolute moral obligation.

The cases are nearly identical, except
that one involves humans and one involves,
well, dogs.

The canine case you're familiar with.

Maricopa County sheriff's detectives in-
vestigated the deaths of 20 animals at the
Green Acre Dog Boarding facility near Gil-
bert, and recommended felony and misde-
meanor charges against owners and care-
takers.

Maricopa County Attorney Bill Montgo-
mery said Wednesday that his office will
take a few weeks to decide whether to pros-
ecute.

It's a matter of custodial neglect.

Once a kennel owner agrees to house the
dog and to care for it, he or she has a legal
obligation to do so, barring some unfore-
seen accident. (Which is what the owners
claim.)

The same is true in a state prison.

Few convicted criminals receive the
death penalty. And even if they do, the state
is obligated to take care of them until the
sentence is carried out.

In 2012, a lawsuit was filed alleging that
the DOC has not done that, to a horrifying
degree. This week, the plaintiffs in the
case, who are represented by the American
Civil Liberties Union's National Prison Pro-
ject, the ACLU of Arizona, the Prison Law
Office, Jones Day, Perkins Coie LLP and
the Arizona Center for Disability Law, re-
leased some of the reports they have to
back up their case.

One of their experts, Dr. Robert Cohen,
claimed that many inmates who were said
to have died of natural causes actually had

49 of 60

25 of 26

deal, Glendale had expect-
ed 23 concerts and other
non-hockey events at the
arena, but only eight were
staged. The city gets ticket

**See GLENDALE, Page A8**

# unty
# 5.4%

tions are mailed out in Feb-
ruary by the Maricopa
County assessor. Tax bills
lag valuations by about 18
months so property owners
can appeal their valuations
if they think they are too
high.

Homeowners who do
not receive their bill this
month can visit treasurer-
.maricopa.gov or call 602-
506-8511 to check their bills
or to verify that their mail-
ing addresses are current.

received "grossly deficient" medical care.
A press release from the group says an in-
mate dies each week in Arizona prisons be-
cause of such neglect.

To which the first reader to leave a mes-
sage about this on my voice mail will say:
"So what?"

I understand the sentiment. I have heard
it again and again over the years.

The argument goes that if a convict does
something bad enough to send him to pris-
on then anything that happens to him while
behind bars is no one's fault but his own.
Whereas the dogs who were confined at
Green Acre were innocent victims.

I get the rationale. But it's wrong.

When we send someone to prison, we are
accepting responsibility not only for that
person's incarceration, but for his or her
well-being. The punishment we hand out is
confinement, not medical neglect that can
lead to death.

The state tried to have the lawsuit tossed
and failed. The case is scheduled for trial in
October. In a written statement a while
back, Department of Corrections officials
said, "The allegations are not accurate, and
the Department of Corrections looks for-
ward to vigorously challenging them and
presenting our case at trial."

We'll see.

Some of the examples of inmates suffer-
ing from inadequately treated illnesses like
cancer are gruesome. We're better than
that. At least we should be.

If we don't treat human beings at least as
well as we treat canines, then our justice
system has gone to the dogs.





50 of 60
26 of 26

Exhibit G

Michael J. Cohn #288721
ASPC Lewis/Stiner 5A20
P.O. Box 3100
Buckeye, AZ 85326

United States District Court, Arizona

| Michael J. Cohn | 2:16 CV 3134-DLR-ESW |
| Petitioner, Pro Se | Petition for Writ of Mandamus, etc. |
| v. | |
| State of Arizona, et al, | Supplemental Exhibit |
| Respondents | (Hon. Douglas Rayes/Eileen Willett) |

Petitioner herein submits documentation of his personal
medical case ... ongoing deprivation of adequate medical
care for a serious medical issue. Also included is
documentation (3 director's responses) of administrative
remedies exhaustion.

.

Respectfully submitted,
Michael J. C

Original efiled to: on: 9/22/16
Clerk of the U.S Dist. Ct.
        also
Attorney General, AZ via
General Order 14-17

51 of 60

1 of 10

*Note: Date of incarceration 2/25/14, mass in spine was present at this time. mc*

# PRISON LAW OFFICE

General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Rana Anabtawi
Steven Fama
Alison Hardy
Corene Kendrick
Margot Mendelson
Millard Murphy
Lynn Wu

BY EMAIL ONLY

September 1, 2016

Ms. Lucy Rand, Assistant Attorney General
Office of the Arizona Attorney General
1275 West Washington Street
Phoenix, AZ 85007-2926
Lucy.Rand@azag.gov

RE:  Parsons v. Ryan, 2:12-CV-00601
ADC Prisoner in Need of Immediate Medical Care
Michael Cohn, 288721, Lewis - Stiner

Dear Ms. Rand:

I write regarding Mr. Cohn, an ADC prisoner with urgent health concerns in need of immediate medical attention. Mr. Cohn has an abscess and mass on his spine, but has not received adequate follow up care from a diagnostic procedure.

According to Mr. Cohn, he had a biopsy on his spinal abscess on 5/24/16, but never received a follow up appointment or treatment plan, in violation of Performance Measures 46 and 47. His current *also 50 & 30 53?* reported symptoms include severe pain, intermittent instability, difficulty sleeping, spasticity, and occasional inability to walk or stand. Mr. Cohn submitted an HNR requesting follow up with the orthopedic surgeon on 8/9/16, followed by an informal complaint to start the grievance process on 8/16/16. The response to the HNR states, "you will be scheduled," but Mr. Cohn still has not been seen or provided the results of his biopsy. .

We request that Mr. Cohn be immediately scheduled to be told the results of the biopsy, and for a follow up appointment to develop a treatment plan for the abscess on his spine, pursuant to Performance Measure 46.

Thank you for your attention to this matter.

Sincerely,

/s/ Corene Kendrick

Corene Kendrick, Staff Attorney

*Note: It took 2.5 years to get to this point. There is also severe stenosis at L4/L5 that may be part of the cause of symptoms. mc*

cc:  Mr. Cohn
Counsel of Record

*52 of 60*

Board of Directors
Penelope Cooper, President • Michele WalkinHawk, Vice President
Marshall Krause, Treasurer • Christiane Hipps • Margaret Johns
Cesar Lagleva • Laura Magnani • Michael Marcum • Ruth Morgan • Dennis Roberts

*2 of 12*

COPY only

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Informal Complaint Resolution**

*Complaints are limited to one page and one issue.
NO ATTACHMENTS PERMITTED. Please print all
information.*

| Inmate Name *(Last, First M.I.)* | ADC Number | Institution/Unit | Date |
|---|---|---|---|
| Cohn, Michael J | 288721 | SP20 Lewis/Stiner | 8/16/16 |

| To | Location |
|---|---|
| FHA | CompSex |

State briefly but completely the problem on which you desire assistance. Provide as many details as possible.

1) Ongoing Deprivation of Adequate medical Care. (Parsons v. Ryan, motion to enforce Stipulation (4/11/16).)
2) Deprivation of post biopsy follow-up. Biopsy (5/24/16.
3) Failure of Ende & Care coordinators to immediately file follow-up request post biopsy results.
4) Exceeding agreed upon time frames (60 days for routine care, 30 days for urgent care).
5) Inadequate Specialist network resulting in delay of Care.
6) Criminal Enterprise, ARS §13-3050306 (indy Black, Ronaldo, Maldonado, et al.
7) Per policy D.O. 608-02,1,2 it is required that the FHA report this crime of staff operations to the Criminal Investigations Unit.

| Inmate Signature | Date |
|---|---|
| M. J. Col | 8/16/16 |

| Have You Discussed This With Institution Staff? | ☑ Yes | ☐ No |
|---|---|---|

If Yes, give the staff member Name: Malichinski, D.O., Ende, NP, Weiss, DW
Hutton, CO IV, Roque', CO IV

Distribution: Original - Inmate
Copy – Grievance Coordinator File

802-11(e)
12/19/12

53 of 60

4 of 16

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Grievance**

*Prior level response not received in time*
*from B.C.*
*9/7/16 due*
*Filed 9/11/16*

| | RECEIVED BY |
|---|---|
| | L. Gligorgadod |
| | **TITLE** |
| | Co II |
| | **BADGE NUMBER** 4051 | **DATE** (mm/dd/yyyy) 9-8-16 |

> **Note:** You may appeal the Grievance Coordinator's decision to the Warden/Deputy Warden/Administrator by filing form 802-3, within 10 calendar days of receipt of this notice

| INMATE NAME (Last, First M.I.) (Please print) | ADC NUMBER | DATE (mm/dd/yyyy) |
|---|---|---|
| Cohn, Michael J. | 288721 | 09/08/16 |

| INSTITUTION/FACILITY | CASE NUMBER |
|---|---|
| Lewis / Stiner 2 B 20 | |

**TO: GRIEVANCE COORDINATOR**

**Description of Grievance** *(To be completed by the Inmate)*

1) Ongoing deprivation of adequate medical care. Violation of performance measures 41 & 47 (Parsons v. Ryan) 5-#33
2) Inadequate specialist network.
3) Failure to report criminal exposure per Policy 608.12, 4.2, to C.I.U.
4) Ende, NP states Care Coordinator LaVere improperly closed my case/specialist consult on 8/15/16 or words to that effect, Date of list, which, 9/7/16
5) Unprofessional Conduct, Failure to do what is needed for pt. needs.

**Proposed Resolution** *(What informal attempts have been made to resolve the problem? What action(s) would resolve the problem?)*

1) Letter to Superior Court documenting failures in medical access so I can obtain my own medical care.
2) Criminal Investigation of failures related to PM's 5-3 + 300+ 306 on criminal failure to report.

| Inmate's Signature | Date | Grievance Coordinator's Signature | Date |
|---|---|---|---|
| M.J. Cohn mc | 9/8/16 mc | | |

**Action taken by Documentation of Resolution or Attempts at Resolution.**

| Staff Member's Signature | Badge Number | Date |
|---|---|---|
| | | |

DISTRIBUTION: INITIAL: White and Canary or Copies – Grievance Coordinator; Pink or Copy - Inmate
FINAL: White – Inmate; Canary – Grievance File    *8 of 10*    802-1
12/12/13



# Arizona Department of Corrections

1601 WEST JEFFERSON
PHOENIX, ARIZONA 85007
(602) 542-5497
www.azcorrections.gov



DOUGLAS A. DUCEY
GOVERNOR

CHARLES L. RYAN
DIRECTOR

## MEDICAL GRIEVANCE APPEAL:  TO THE DIRECTOR

Inmate Name: COHN, MICHAEL          ADC No.: 288721          Case No.: L02-085-015

Institution: ASPC-LEWIS/STINER          Date Received: March 25, 2016

I have reviewed your Grievance Appeal wherein you state 1) that you have not been seen for a follow up appointment with an ophthalmologist as recommended and 2) you wish to be transferred to house arrest so you can get your own medical care.

Your Grievance Appeal has been investigated including a review of your medical records. Based on our findings, your appeal is denied. The reasons for this decision are:

1.  Your medical records indicate that you were scheduled with an ophthalmologist 12/18/15. The report received from the clinic visit states that you have open angle glaucoma and the recommendation was made for you to be seen again in six (6) months.  Your intraocular pressures (IOP) were measured and were normal at 15.

   *3 months.*
   *— have a*
   *copy of the*
   *order.*

2.  The Court has decided that you serve your sentence under the custody of the Arizona Department of Corrections. Per Department Order 802.01.1.2, "Judicial proceedings or decisions of the Courts are not grievable under the Inmate Grievance Procedure". Therefore, your request to be transferred to "house arrest" will not be addressed within this response.

3.  Please submit a Health Needs Request (HNR) if you have additional medical concerns. .

This response concludes the medical grievance process per Department Order 802.06 Medical Appeals to the Director.

Charles L. Ryan, Director          5/6/16
                                    Date

cc:  Facility Health Administrator, ASPC-Lewis
     C.O. Inmate File

*55 of 60*

*6 of 10*





# Arizona Department of Corrections

1601 WEST JEFFERSON
PHOENIX, ARIZONA 85007
(602) 542-5497
www.azcorrections.gov

DOUGLAS A. DUCEY
GOVERNOR

**MEDICAL GRIEVANCE APPEAL:  TO THE DIRECTOR**

CHARLES L. RYAN
DIRECTOR

Inmate Name: <u>COHN, MICHAEL</u>          ADC No.: <u>288721</u>          Case No.: <u>L02-021-016</u>

Institution: <u>ASPC-LEWIS/STINER</u>          Date Received: <u>March 21, 2016</u>

I have reviewed your Grievance Appeal wherein you state 1) that you have not had a biopsy as recommended by an MRI completed 10/01/15; 2) time frames have still been exceeded; 3) negligence is ongoing; and 4) per policy, a crime shall be reported to C.I.U.

Your Grievance Appeal has been investigated including a review of your medical records. Based on our findings, your appeal is denied. The reasons for this decision are:

1. Your medical records indicate you have a history of a hemangioma of the sacrum. You had an MRI of the lumbar spine completed 10/01/15 and a follow up orthopedic appointment occurred 03/03/16. After reviewing the MRI report the orthopedic specialist made a recommendation to biopsy the sacral mass. A routine biopsy consult was submitted 03/24/16 and is awaiting an appointment date from the specialist's office. The time frame for completion of a routine consult is sixty (60) days from the request date; therefore compliance with timeframes is noted. We found no evidence to substantiate your allegations of abuse and neglect or that a crime has been committed.

2. Please submit a Health Needs Request (HNR) if you have additional medical concerns. .

This response concludes the medical grievance process per Department Order 802.06 Medical Appeals to the Director.

*[handwritten annotations in left margin: "5 months exceeds time frame" ; "urgent — 30 days! is malignancy is possible! or abscess"]*

*[handwritten annotations in right margin: "Should be urgent."]*

_____          _____
Charles L. Ryan, Director                                      Date   5/6/16

cc:  Facility Health Administrator, ASPC-Lewis
      C.O. Inmate File

*[handwritten: "7 of 10"]*

*[handwritten: "56 of 60"]*



# Arizona Department of Corrections

1601 WEST JEFFERSON
PHOENIX, ARIZONA 85007
(602) 542-5497
www.azcorrections.gov



GLAS A. DUCEY
GOVERNOR

## MEDICAL GRIEVANCE APPEAL:  TO THE DIRECTOR

CHARLES L. RYAN
DIRECTOR

Inmate Name: <u>COHN, MICHAEL</u>          ADC No.: <u>288721</u>          Case No.: <u>L02-001-016</u>

Institution: <u>ASPC-LEWIS/STINER</u>                    Date Received: <u>March 11, 2016</u>

I have reviewed your Grievance Appeal concerning the following: 1) the Facility Health Administrator fraudulently states that you cannot have a copy of your MRI report; 2) HIPAA supersedes the Department's regulations and Corizon health policies; 3) interference with medical care; 4) noncompliance with the Parsons vs. Ryan settlement; 5) copying costs cannot be used as an excuse, nor can inconvenience; and 6) obstructing litigation only inflames potential litigants

Your Grievance Appeal has been investigated including a review of your medical records. Based on our findings, your appeal is denied. The reasons for this decision are:

*Hipan supersedes a Dept. Regulation*

1. Chapter 8, Section 4.0 of the Health Services Technical Manual (HSTM) addresses Inmate Access to Health Record Information.  As stated by the Facility Health Administrator, the site medical staff cannot give you a copy of your medical records. You can request to review your medical record in person by submitting an Inmate Letter to the Medical Records Librarian and/or submit an Inmate Letter to Corizon's Medical Records Program Manager requesting a copy of specific records. *— I requested this and was denied. See enclosed response 12/21/65*

2. Please submit a Health Needs Request (HNR) if you have additional medical concerns.

*out of time frem*

This response concludes the medical grievance process per Department Order 802.06 Medical Appeals to the Director.

By _____
Charles L. Ryan, Director

_____5/10/16_____
Date

cc:  Facility Health Administrator, ASPC-Lewis
     C.O. Inmate File

*8 of 10*

*57 of 60*

Page 1 of 1

Serving Flagstaff and northern Arizona

# Lawyers: Arizona isn't improving health care for prisoners

FEBRUARY 29, 2016 5:29 PM • JACQUES BILLEAUD ASSOCIATED PRESS

PHOENIX (AP) — Attorneys who won a settlement in a class-action lawsuit over the quality of health care in Arizona's prisons say the state is dragging its feet in carrying out the improvements it promised when it agreed to resolve the case.

The lawyers contend health care in the state's prisons hasn't improved since the October 2014 settlement, saying Arizona has dramatically inflated its compliance figures and failed to carry out many requirements called for by the agreement.

The requirements include having sick inmates see registered nurses within 24 hours of requesting help and having medical providers tend to inmates with chronic diseases as specified by their treatment programs.

A hearing over the lawyers' complaints is scheduled Tuesday before U.S. Magistrate John Buttrick.

The settlement was won on behalf of 33,000 Arizona inmates after some complained that their cancer went undetected or they were told to pray to be cured after begging for treatment.

As part of the settlement, state officials agreed to seek more money from the Legislature to increase health care staffing, offer cancer screenings to certain prisoners, follow requirements in treating patients with chronic diseases, and provide more out-of-cell time to prisoners kept in isolated cells.

The Legislature gave the Department of Corrections an additional $6.6 million in health care funding last year in response to the settlement.

Don Specter, one of the attorneys for the inmates, said another problem is that the people monitoring the state's compliance are employees of the Arizona Department of Corrections.

"They aren't trained," Specter said. "They don't have specific instructions, and their interpretations of what the agreement requires are often wrong."

Andrew Wilder, a spokesman for the Arizona Department of Corrections, declined to comment.

The lawsuit against Arizona Corrections Director Charles Ryan and another prison official alleged the failure of medical personnel at one prison to diagnose the metastasized cancer of one inmate resulted in his liver enlarging to the belly size of a pregnant woman at full term.

It said another inmate with a history of prostate cancer had to wait more than two years for a biopsy, and nothing was done for a prisoner who suffered from depression and told staff



members he was suicidal before killing himself.

Prison officials have denied the allegations and didn't acknowledge any wrongdoing when making the settlement.

The prisoners who filed the lawsuit weren't seeking monetary damages and instead asked for a court order declaring that Arizona's prisons violated the Eighth Amendment right of inmates against cruel and unusual punishment.

End of Document