WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Antonio Parsons, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Charles L Ryan, et al.,<br><br>    Defendants. | No. CV-12-00601-PHX-DKD<br><br>**ORDER** |

The outstanding issues from the November 9, 2016 Status Conference are addressed below.

**1.   Date Calculations and Performance Measure 86.**

The parties have informed the Court that they cannot resolve their impasse about every "X" days and PM 86 and that this dispute is not covered by their pending meet-and-confer about the Monitoring Manual. (Docs. 1717, 1718, 1719, 1731, 1732)

After a careful review of the parties' briefing, the Court appreciates the nuances left untouched by the earlier Order. (Doc. 1673) To expand on the issues, the Court revives hypothetical Inmate PM86, whose medication was discontinued on January 10 and is, therefore, reclassified. (*Id.* at 6) First, it appears that the parties do not agree on when to start measuring PM 86: when his medication was discontinued or when he was reclassified. Under its plain language, PM 86 applies to MH-3D prisoners "for a minimum of six months after discontinuing medication." (Doc. 1185-1 at 14, 32)

1  Accordingly, the start date for calculating compliance is the date that medication is
2  discontinued.

3  As previously noted, Inmate PM86 discontinued medication on January 10 and,
4  therefore, must be seen by a mental health clinician by April 10 and again by July 10.  If
5  he was seen by April 10 and his record is selected for review in May or June, then it is
6  compliant with PM 86 in May and June even though he was not seen in those months.
7  (*Id*.)  However, this explanation does not address the situation where Inmate PM86 is
8  seen on April 15 (i.e., untimely) and his record is selected for review in May or June.
9  How should compliance be assessed for May and June?  Nor does it resolve when his
10 second visit is due: July 10 or July 15?  Another hypothetical not explicitly decided by
11 the Stipulation is the result when Inmate PM86 is seen on March 15 (i.e., ahead of
12 schedule).  Is his second visit due on June 15 or July 10?

13 Because the parties have not been able to answer these questions, the Court does
14 so as follows.  As noted above, measuring compliance for Inmate PM86 starts on January
15 10.  If Inmate PM86 is seen by a mental health clinician on April 10, his April, May, and
16 June records are compliant without any additional visits.

17 In contrast, if Inmate PM86 is seen by a mental health clinician on April 15 (or
18 any other day after April 10), his April, May, and June records are not compliant.  And
19 his second visit must occur by July 10 (i.e., 90 days from when he should have been seen
20 the first time).  If Inmate PM86 is instead seen on March 15 (or any date ahead of the
21 April 10 deadline), then his March, April, and May records are compliant without any
22 additional visits.  And his second visit must occur by June 15 (i.e., a minimum of 90 days
23 after he was first seen).

24 Although this timing analysis is based on the language of Performance Measure
25 86, the Court expects that this same structure for monitoring compliance will be applied
26 to other performance measures with similar issues.  However, if these additional
27 hypotheticals do not address all of the scenarios confronting the parties, they may submit
28 additional scenarios for the Court's consideration.

**2.     Potentially Outstanding Items.**

The Court asks both parties to provide an update on the following matters:

- Performance Measure 85 and reclassification of inmates from MH-3D to MH-3E;
- Maximum custody notebook document production issues;
- Production of documents demonstrating Defendants' response to raw CGAR data; and
- Status of "Access to Videos & Electronic Medical Records" (Doc. 1506) and the provision of paper medical records.

If these issues remain outstanding, the Parties shall so advise the Court.  The Court further notes that Plaintiffs did not respond to Defendants' proposed reporting procedures for demonstrating compliance with Paragraphs 12, 14, and 15 of the Stipulation.  (Doc. 1703)  The Court will provide Plaintiffs an opportunity to do so at the same time as the update on the above noted matters.

**3.     Remediation Plans.**

*First Remediation Plan*.  At the May 18, 2016 status conference, the Court ordered Defendants to submit a remediation plan for a delineated list of facilities and performance measures ("First Non-Compliant PMs").  (Docs. 1582, 1583).  Defendants did so ("First Remediation Plan").  (Doc. 1608)  After providing Defendants with notice of its concerns, the Court adopted the First Remediation Plan.  (Doc. 1619)

The Court has reviewed the data from three months of Defendants' operations under the First Remediation Plan.  (Docs. 1739, 1743)  After reviewing this information, the Court has "determine[d] that the Defendants' [First Remediation] plan did not remedy the deficiencies" for the First Non-Compliant PMs.  (Stipulation at ¶36)

The Court has "the power to enforce this Stipulation through all remedies provided by law."[1]  (*Id*.)  Accordingly, the Court will require Defendants to use the health care

---

[1] There are, of course, express limitations on this power and, as the Court has repeatedly noted, these limitations have removed staffing increases–the most efficient and effective tool–from the Court's remedial toolbox.

- 3 -

services in the community to ensure compliance with the First Non-Compliant PMs. Specifically, Defendants shall use all available community health care services including, but not limited to, commercial pharmacies, community-based practitioners, urgent care facilities, and hospitals (collectively, "Outside Providers") to provide the health care services required in the Stipulation's Performance Measures. This shall happen immediately following the expiration of the time-frame detailed in each PM. For example, if a PM requires Defendants to provide an inmate with a specific type of care within 24 hours (or 14 days), then Defendants shall have this inmate seen by an appropriate Outside Provider in hour 25 (or day 15).

The Court notes that these requirements only apply when Defendants are not able to comply with the Stipulation's Performance Measures using the procedures detailed in their remediation plan. In other words, if Defendants can comply with the Stipulation without using Outside Providers, then they are under no obligation to use Outside Providers. Defendants also remain free to remediate deficiencies through the obvious and efficient measure denied to the Court ("the Court shall not have the authority to order Defendants to . . . hire a specific number or type of staff <u>unless Defendants propose to do so</u> as part of a plan to remedy a failure to comply with any provisions of the Stipulation" Stipulation at pp. 13-14) (emphasis added). However, the current data show that Defendants have not been able to meet the Performance Measures by using their current procedures or by adopting the First Remediation Plan. Accordingly, the Court must order these additional measures to ensure compliance with the First Non-Compliant PMs. The Court considered and rejected requiring the Defendants to submit a revised plan because of its concerns, expressed earlier on the record, about Defendants' grasp of the problem at hand, the failure, abject in some cases, of its first remediation plan to deliver compliance, and the health and safety danger posed by continued failures to meet the Performance Measures. See Stipulation at ¶36: "In determining subsequent remedies the Court shall consider whether to require Defendants to submit a revised plan."

*Second Remediation Plan.* Pursuant to the Court's Order, Defendants submitted a

- 4 -

remediation plan for PM 47, 80, 94 ("Second Remediation Plan"). (Doc. 1709, 1729, 1739) At the November 9, 2016 status conference, Defendants informed the Court that, depending on the PM and facility, the changes detailed in the Second Remediation Plan were implemented between April and August 2016. Defendants requested another 60 days with the Second Remediation Plan to determine whether it is sufficient to establish compliance. The Court will provide Defendants with those additional 60 days and will determine the sufficiency of the Second Remediation Plan then.

**IT IS ORDERED** that the Parties shall employ the timing convention explained by the Court in this Order.

**IT IS ORDERED** that 14 days from the date of this Order, both parties shall inform the Court of the status of the above-listed potentially outstanding items. Further, Plaintiffs shall respond to Defendants' proposal detailed in Doc. 1703.

**IT IS ORDERED** that, effective thirty days from this Order, when Defendants are not able to comply with the requirements of the Stipulation's Performance Measures using their current procedures, Defendants shall use all available community health care services including, but not limited to, commercial pharmacies, community-based practitioners, urgent care facilities, and hospitals to provide the health care services required in the Stipulation's Performance Measures for the facilities listed in the First Remediation Plan for which the August data demonstrated compliance below the 80% benchmark.

Dated this 10th day of November, 2016.

_____
David K. Duncan
United States Magistrate Judge