Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
Mark A. Bracken, Bar No. 026532
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
mbracken@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | NO. 2:12-cv-00601-DKD <br><br><br> **DEFENDANTS' MOTION FOR CLARIFICATION** |

Defendants request clarification regarding the Court's order regarding Date Calculations and Performance Measure (PM) 86 in its November 10, 2016 Order. (Doc. 1754 at 1-2.) Although the Court addressed calculating compliance with PM 86, it is unclear how the November 10, 2016 Order (Doc. 1754) and the September 6, 2016 Order (Doc. 1673) apply to the other performance measures (PM) that require actions to occur every 90 days, 180 days, or year, including PMs 28, 29, 54, 59, 77, 81, 82, 83, 84, 86, 88, and 102. Defendants want to confirm that they are monitoring these measures consistent with the Court's prior orders (Docs. 1673 and 1754).

**An Action Every 90 Days, 180 Days, or Year**

Although the Court stated that "the start date for calculating compliance [with PM 86] is the date that medication is discontinued," the Court did not clarify the start date for calculating compliance with the PMs that require actions to occur every 90 days, 180 days, or year. (*See* Doc. 1754 at 2.) The parties continue to disagree regarding whether the start date for calculating compliance is the last action or contact or the second-to-last action or contact. Defendants calculate compliance based on the last action or contact. Plaintiffs contend that the monitors should look back to the action or contact prior to the last action or contact (i.e. second-to-last action or contact). This procedure becomes an issue when the last action occurred prior to the auditing month. (*See* Doc. 1719 at 3-4 (explaining that there are two general scenarios in which Defendants will audit actions that must occur every X days).)

Defendants monitor consistent with the Court's September 6, 2016 Order. The Court explained that the "clock starts on the day an action occurs and the clock runs for X days." (Doc. 1673 at 4.) The Court held that "the plain language of the Stipulation requires monthly reporting." (Doc. 1673 at 7.) The Court further explained when considering whether monitors need to report actions that may cover more than one month that "the plain language of the Stipulation requires monthly reporting." (*Id*.) This same rationale applies to PMs that must occur every 90 days, 180 days, or year, because these PMs span more than one month. Otherwise, Defendants would be reporting compliance

1

based on actions in a prior month (including actions from up to 11 months ago), rather than the month that is being audited.

By way of example, PM 77 requires mental health treatment plans for MH-3 prisoners to be updated "a minimum of every 12 months." (Doc. 1185-1 at 31.) Because this measure spans more than one month, like PM 94 (Doc. 1673 at 6-7), it would appear on more than one monthly status report. If the last treatment plan was completed on January 10, 2015, then the next treatment plan should be completed no later than January 10, 2016. In order to audit this PM, the monitor looks back and finds the date of the last treatment plan update. The clock then starts on the day of the last update and continues to runs for the next 12 months. If the treatment plan is updated on January 5, 2016, five days early, the record would be compliant in January 2016 through December 2016. If the treatment plan is updated on January 15, 2016, five days late, the record would be noncompliant in January 2016, but then compliant in February 2016 through December 2016. If the treatment plan is updated on March 15, 2016, then the record would be noncompliant in January 2016, February 2016, and March 2016, but compliant in April 2016 through February 2017 (after the treatment plan is updated).   In other words, if the last treatment plan was updated on March 15, 2016, and the monitor is auditing April 2016, the record is compliant because the next update to the treatment plan is not due until March 2017.   Defendants believe this methodology is consistent with the Court's September 6, 2016 Order, because the Court recognized that an action may be untimely and noncompliant one month and then compliant the next month[1] and agreed "the plain language of the Stipulation requires monthly reporting." (*See* Doc. 1673 at 6-7.)

According to Plaintiffs, in the example provided above, if Defendants are auditing in April 2016 and the last treatment plan was updated on March 15, 2016, the monitors should look all the way back to the prior treatment plan completed January 10, 2015 to

---

[1] The Court found that an inmate, who must be seen every 90 days, was compliant in March, April, and June, but noncompliant in May, when the inmate was seen on February 10 and May 25. (Doc. 1673 at 6.)

1   determine whether the record is compliant in April 2016 through February 2017.  Under
2   this methodology, Plaintiffs contend that the record should be marked noncompliant in
3   April 2016, although a treatment plan was updated on March 15, 2016.

4         The problem with Plaintiffs' methodology is that it does not accurately report
5   compliance with the PM for the month that is being audited.  Because compliance with
6   this PM spans multiple months, there are multiple months in which it can be marked
7   compliant or noncompliant.  If the monitors follow Plaintiffs' methodology, they will be
8   reporting noncompliance in April 2016 with a measure that was already captured as
9   noncompliant in three different monthly reports (January 2016, February 2016, and March
10  2016).  This alleged noncompliance finding is also misleading because it would appear as
11  though the treatment plan is still not updated as of April 2016, even though the treatment
12  plan was updated on March 15, 2016.  This procedure does not accurately report the
13  current status of the care provided during the audited month.  If the Court were to accept
14  this procedure, the CGAR reports would no longer capture compliance on a monthly basis
15  as required under the plain language of the Stipulation.  (*See* Doc. 1673 at 7.)  According
16  to Plaintiffs, if the March 15, 2016 treatment plan is noncompliant, the record remains
17  noncompliant for the next eleven months.  If this same report is audited today in
18  November 2016, this record would still be marked noncompliant, according to Plaintiffs,
19  although the treatment plan was updated back in March 2016.

20        Moreover, under Plaintiffs' methodology, the parties and the Court would need to
21  wait over a year to evaluate whether there has been any improvement with this PM.  If
22  Defendants need to develop a remedial plan to correct the noncompliance, the Court and
23  the parties would have to wait at least a year to determine whether the remedial plan
24  corrected the problem, as all subsequent months would be marked noncompliant.  This
25  example further illustrates how Plaintiffs' proposed methodology fails to accurately
26  reflect the monthly status of compliance with the PM.  Rather than being a monthly
27  report, the CGAR findings would become a 90 day, 180 day, or one year report,
28  depending on the PM.

**Performance Measure 86**

The Court's Order states that it "expects that this same structure for monitoring compliance [with PM 86] will be applied to other performance measures with similar issues." (Doc. 1754 at 2.)  It is difficult, however, to apply the Court's Order to other performance measures because PM 86 is unique, as it requires conduct to occur a minimum of every 90 days "for a minimum of six months after discontinuing medication." (Doc. 1185-1 at 32.)   Although the methodology set forth in the Court's November 11, 2016 Order is feasible for PM 86, it does not work for the other PMs that require an action to occur every 90 days, 180 days, or 1 year.  The Court's examples, although helpful for evaluating compliance with PM 86, do not provide clarification regarding monitoring other PMs that require an action to occur every 90 days, 180 days, or year.   PM 86 is the only PM that requires an action to occur every 90 days within a six month window of time.  No other PM requires the monitor to look at multiple dates to determine compliance.  In PM 86 the monitor will look at (1) the date the medication is discontinued, and (2) the dates the inmate is seen within 6 months of discontinuation. Although the Court clarified that "the start date for measuring compliance with PM 86 is the date that the medication is discontinued," it did not clarify the start date for measuring compliance with the other PMs requiring an action to occur every 90 days, 180 days, or 1 year. (*See* Doc. 1754 at 2.)

## CONCLUSION

Accordingly, Defendants request a Court Order clarifying that the start date for measuring compliance with PMs that must occur every 90 days, 180 days, or year is the date of the last action or contact and/or providing examples showing how the Court believes PM 77 should be audited.

/ / /

/ / /

/ / /

/ / /

DATED this 22nd day of November 2016.

STRUCK WIENEKE & LOVE, P.L.C.


By /s/Daniel P. Struck
    Daniel P. Struck
    Kathleen L. Wieneke
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    Ashlee B. Fletcher
    Anne M. Orcutt
    Jacob B. Lee
    Mark A. Bracken
    STRUCK WIENEKE & LOVE, P.L.C.
    3100 West Ray Road, Suite 300
    Chandler, Arizona  85226

    Arizona Attorney General Mark Brnovich
    Office of the Attorney General
    Michael E. Gottfried
    Lucy M. Rand
    Assistant Attorneys General
    1275 W. Washington Street
    Phoenix, Arizona 85007-2926

    *Attorneys for Defendants*

5

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alison Hardy:               ahardy@prisonlaw.com

Amelia M. Gerlicher:        agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com

Amir Q. Amiri:              aamiri@jonesday.com; ttualaulelei@jonesday.com

Amy B. Fettig:              afettig@npp-aclu.org

Asim Varma:                 avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

Caroline N. Mitchell:       cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

Corene T. Kendrick:         ckendrick@prisonlaw.com; edegraff@prisonlaw.com

Daniel Clayton Barr:        DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

Daniel Joseph Pochoda:dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org

David Cyrus Fathi:          dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

Donald Specter:             dspecter@prisonlaw.com

Jennifer K. Messina:        jkmessina@jonesday.com

Jessica Pari Jansepar Ross:   jross@azdisabilitylaw.org

John Howard Gray:           jhgray@perkinscoie.com; slawson@perkinscoie.com

John Laurens Wilkes:        jlwilkes@jonesday.com, dkkerr@jonesday.com

Jose de Jesus Rico:         jrico@azdisabilitylaw.org

Kathleen E. Brody           kbrody@acluaz.org

Kirstin T. Eidenbach:       kirstin@eidenbachlaw.com

Maya Abela                  mabela@azdisabilitylaw.org

Rose Daly-Rooney:           rdalyrooney@azdisabilitylaw.org

Sara Norman:                snorman@prisonlaw.com

Sarah Eve Kader:            skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org

6

Rita K. Lomio:          rlomio@prisonlaw.com

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Daniel P. Struck