Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
Mark A. Bracken, Bar No. 026532
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
mbracken@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DJH<br><br><br>**DEFENDANTS' NOTICE REGARDING MAXIMUM CUSTODY SUBCLASS DEFINITION AND INAPPLICABILITY TO CLOSE CUSTODY CLASSIFICATION** |

Defendants, through counsel and pursuant to this Court's Order dated November 8, 2016 (Doc. 1745), hereby provide evidence demonstrating that: (1) ASPC Florence Central CB 1, 3, and 4 units (with the exception of 42 cells in the CB4 basement) currently house close custody classified inmates instead of maximum custody inmates; and (2)  the quantity and nature of out-of-cell time afforded to close custody inmates at Florence Central CB 1, 3, and 4, is substantially more advantageous than privileges afforded to maximum custody.  As a result, these close custody inmates do not fall under either the purview of DI 326 which governs maximum custody out-of-cell activities, programs and jobs, or the Stipulation as related to maximum custody inmates.

I.   **THE MAXIMUM CUSTODY SUBCLASS DOES NOT INCLUDE CLOSE CUSTODY INMATES**

At issue is whether the Subclass Definition ordered by the Court in its March 6, 2013, Class Certification Order (Doc. 373 at 22) and Paragraph 3 of the Stipulation (Doc. 1185) encompasses inmates also classified as close custody but housed at the following facilities/unit locations enumerated in the Stipulation: Eyman-Browning; Eyman- SMUI; Florence-Central Unit; Florence-Kasson, and Perryville-Lumley Special Management Area (Yard 30).  Stipulation (Doc. 1185 at ¶ 22).

Close custody classified inmates housed at the enumerated facilities/locations are not encompassed by either the Subclass definition (Doc. 372 at 22) or the Stipulation (Doc. 1185 at ¶ 22).  First, the Subclass is clearly defined as "[a]ll prisoners who are now, or will in the future be, subjected by the ADC to isolation, defined as confinement in a cell for 22 hours or more each day of confinement in the following housing units:  Eyman-SMU I;  Eyman-Browning Unit;  Florence-Central Unit;  Florence-Kasson Unit;  or Perryville-Lumley Special Management Area."   (Doc. 372 at 22).    The prison facilities/units listed in the Subclass Definition specifically designated all of the maximum custody facilities in the ADC system.  Close Custody units/facilities were not enumerated or contemplated.  (Doc. 372 at 22; Doc. 1745 at 2).  Add to this, the Subclass Definition is predicated on those inmates in "isolation" – defined as confined in a cell for 22 hours or

1

more a day.  As explained below, close custody inmates at Florence Central CB 1, 3, and 4 are offered at a minimum, 15.5 hours of out-of-cell time per week exceeds the "isolation" definition.

Second, the Stipulation requiring application of DI 326 to the Subclass specifically applies to "ADC maximum custody prisoners housed at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, and Perryville-Lumley Special Management Area (Yard 30). (Doc. 1185 at ¶¶ 22, 24).  No mention of close custody classified inmates is stated, intended, or contemplated by the Stipulation provisions in this regard.  There is no "or" in the enumerated Stipulation paragraphs that allow for classifications other than maximum custody inmates housed in the enumerated facilities/units to be covered by the Stipulation.

Third, the Maximum Custody Outcome Measures pertain to "[a]ll maximum custody prisoners at Eyman-Browning, Eyman-SMU I, Florence-Central, Florence-Kasson, and Perryville-Lumley Special Management Area.") (Doc. 1185-1 at 38-45; Doc. 1745 at 2).  The Maximum Custody Outcome Measures do not apply to close custody inmates housed at facilities that also house maximum custody inmates.  During the negotiation of the Stipulation, Florence Central housed closed custody inmates in CB 2.  If they sought or intended to include close custody as part of the Stipulation, certainly they would have attempted to do so clearly, and specifically.  Plaintiffs' mission to unjustifiably expand the scope of the "Isolation" Subclass definition and thus the applicability of the Stipulation almost two years in, must fail.

As this Court has already noted, "it is clear from the history and plain language of the Subclass Definition and the Maximum Custody Outcome Measures and the related protocols that the subclass certification focused on isolation and maximum custody not housing in enumerated units." (Doc. 1745 at 2).  Therefore, neither the Subclass Definition, nor the Stipulation governing Maximum Custody conditions of confinement, apply to close custody classified inmates housed at facilities that may also house maximum custody inmates.

As demonstrated below, close custody classified inmates housed at Florence-Central CB 1, 3, and 4, are provided out-of-cell opportunities that exceed those out-of-cell opportunities provided to maximum custody inmates per DI 326 and the Stipulation.  To find that the Stipulation (and thus monitoring requirements) also encompass close custody inmates otherwise housed at maximum custody facilities, allows Plaintiffs a fresh start and a new lawsuit to <u>now</u> challenge and monitor conditions of confinement for close custody classified inmates.  This was never the lawsuit filed by Plaintiffs, intended by Plaintiffs, or contemplated by the Parties in resolving the lawsuit as related to the "Isolation" (the term used by Plaintiffs not Defendants) Subclass. Rather, Plaintiffs' clear aim was always the elimination or reduction of maximum custody.  Plaintiffs cannot now attack what they first sought to achieve, perpetuating this litigation beyond the bounds of the underlying litigation. Close custody for inmates housed at Florence Central CB 1, 3, and 4 is not "maximum custody" called by a new name.

## II.   CLOSE CUSTODY OUT-OF-CELL CONDITIONS OF CONFINEMENT AT FLORENCE-CENTRAL CB 1, 3 AND 4

ADC operates ten (10) different prison complexes: Douglas, Eyman, Florence, Lewis, Perryville, Phoenix, Safford, Tucson, Winslow, and Yuma.   Decl. of C. McWilliams at ¶ 19, Exh. 1 hereto.  On November 21, 2016, there were 42,516 inmates in the ADC system.  *Id*. at ¶ 20.  Of the total ADC inmate population as of November 21, 2016, there were 3,156 inmates classified as maximum custody.  *Id*. at ¶ 21. On this same date, there were 578 cells classified as close custody at Florence Central (single bunk cells).  *Id*. at ¶ 22.

Out of cell time for maximum custody inmates is prescribed by DI 326 and the Stipulation (Doc. 1185 at ¶¶ 22, 24, 25).  *Id*. at ¶ 34.  Per DI 326 and the Stipulation, maximum custody inmates housed at the institutions enumerated in the Stipulation are to be provided out of cell time as follows:

- DI 326 Step I – 7.5 hours of out-of-cell time per week (inclusive of 6 hours of out-of-cell recreation)

3

- DI 326 Step II – 8.5 hours of out-of-cell time per week (inclusive of 6 hours of out-of-cell recreation and at least one hour of out-of-cell group programming per week)
- DI 326 Step III – 9.5 hours of out-of-cell time per week (inclusive of 6 hours of out-of-cell recreation and at least one hour of out-of-cell group programming per week)
- SMI maximum custody inmates – time commiserate with DI 326 Step levels I-III noted above plus:
  o 10 additional hour of unstructured out-of-cell time per week;
  o 1 additional hour of out-of-cell mental health programming per week;
  o 1 additional hour of out-of-cell psychoeducational programming per week; and
  o 1 additional hour of out-of-cell programing per week;
    ▪ This combines for a total of 20.5, 21.5, or 22.5 hours out-of-cell per week for SMI Maximum Custody inmates depending on DI 326 step level.

*Id.* at ¶ 35.

While at the time the Stipulation was signed by the Parties, Florence Central CB 1, CB 3, and CB 4 housed maximum custody inmates, these locations now house close custody inmates (with the exception of 42 cells in the CB 4 basement).[1]  *Id.* at ¶ 36.  Close custody classification affords inmates at this custody level with increased opportunity for out-of-cell time and socialization as compared to maximum custody as explained below. Id. at ¶ 37.  As evidence, close custody inmates housed at Florence Central CB 1, CB 3, and CB 4 are offered the following time out-of-cell per week.  Id. at ¶ 38.

---

[1] Florence Central CB 2 was close custody at the time the Stipulation was signed and remains the same to date. Florence-Kasson does not house any close custody inmates.

- **CB 1 – (includes Mental Health inmates of which 6 inmates are SMI)**
  - Recreation - Big field recreation – 2.5 hours on Saturday from 0700-0930, 2.5 hours on Tuesday from 0700-0930, and 2.5 hours on Thursday from 1200-1430 (7.5 hours per week)
  - *SMI ONLY - Social Activity – Building Relationships – 2 hours on Sundays through Thursdays from 830-1030 (10 hours per week)
  - Education – 3 hour blocks, Monday through Friday (15 hours per week)
  - Library – 1 hour blocks, Monday through Friday (5 hours per week)
  - Horticulture Class – 3-5 hour blocks, five days a week (15 to 25 hours a week)
  - Programming –
    - Re-Entry (Merging 2 Worlds) – 1 hour on Wednesdays at 1200 (11 inmates) (1 hour per week)
    - Substance Use/AA – 1 hour on Thursdays (50 inmates) (1 hour a week)
    - Think MH (mental health facilitated) – 1 hour on Mondays and Fridays from 930-1030 (1 hour per week)
    - Lifers MH (mental health facilitated) – 1 hour on Wednesdays from 930-1030 (1 hour per week)
  - Dinner in chow hall – approximately 30 minutes out-of-cell per day (3.5 hours per week)
  - Religious group worship – Group worship to include option to participate in one group per week to include Talking Circle, Multi-Faith, Catholic Service, Jumah Prayer, General Worship (1 hour per week)
  - Showers – three showers a week for approximately 30 minutes (approximately 1.5 hours per week)

- o Store - Out-of-cell time to pick up purchases at the store window one day a week on Wednesday from 0700-1500 (Time varies but includes walking from the housing unit to the store)
- o Visitation - (at least 2 hours per week – contact visits)
- o **Total average hours offered per week of out-of-cell time for non-SMI inmates - (varies depending on programming participation)[2] = 50.5 plus hours per week before participation in programming or WIPP job program.**
- o **Total average hours offered per week of out-of-cell time for SMI inmates - (varies depending on programming participation)[3] = 60.5 plus hours per week before participation in programming or WIPP job program.**
- **CB 3 – (no SMI inmates)**
  - o Recreation - Big field recreation – 2.5 hours on Friday from 0700-0930, 2.5 hours on Monday from 1200-1430, and 2.5 hours on Wednesday from 1200-1430 (7.5 hours per week)
  - o Education – 3 hour blocks, Monday through Friday (15 hours per week)
  - o Library – 1 hour blocks, Monday through Friday (5 hours per week)
  - o Horticulture Class – 3-5 hour blocks, five days a week (15 to 25 hours a week)
  - o Programming –
    - ▪ Re-Entry (Merging 2 Worlds) – 1 hour on Tuesdays at 0900 and 1200 (11 inmates/10 inmates) (1 hour per week)

---

[2] A close custody inmate may elect not to participate in programming/education. This figure excludes programming from the calculation for this reason, but includes education for illustration.

[3] A close custody inmate may elect not to participate in programming/education. This figure excludes programming from the calculation for this reason, but includes education for illustration.

- ▪ Cognitive Behavior (Think 4 Change) – 1 hour on Thursdays at 0900 and 1200 (12 inmates/13 inmates) (1 hour per week)
  - ▪ Substance Use/AA – 1 hour on Thursdays (50 inmates) (1 hour a week)
- o Dinner in chow hall – approximately 30 minutes out-of-cell per day (3.5 hours per week)
- o Religious group worship – Group worship to include option to participate in one group per week to include Bible Study, Talking Circle, Multi-Faith, Catholic Service, Jumah Prayer, General Worship (1 hour per week)
- o Showers – three showers a week for approximately 30 minutes (approximately 1.5 hours per week)
- o Store - out-of-cell time to pick up purchases at the store window one day a week on Tuesday from 0700-1500 (Time varies but includes walking from the housing unit to the store)
- o Visitation - (at least 2 hours per week – contact visits)
- o **Total average hours offered per week of out-of-cell time for non-SMI inmates - (varies depending on programming participation)[4] = 50.5 plus hours per week before participation in programming or WIPP job program.**
- • <u>**CB 4 – (no SMI inmates)**</u>
  - o Recreation - Big field recreation – 2.5 hours on Thursday from 0700-0930, 2.5 hours on Monday from 1200-1430, and 2.5 hours on Tuesday from 1200-1430 (7.5 hours per week)
  - o Education – 3 hour blocks, Monday through Friday (15 hours per week)

---

[4]A close custody inmate may elect not to participate in programming/education. This figure excludes programming from the calculation for this reason, but includes education for illustration.

- o Library – 1 hour blocks, Monday through Friday (5 hours per week)
- o Horticulture Class – 3-5 hour blocks, five days a week (15 to 25 hours a week)
- o Programming -
    - ▪ Re-Entry  (Merging 2 Worlds)  – 1 hour on Wednesdays at 1200 (11 inmates) (1 hour per week)
    - ▪ Substance Use/AA – 1 hour on Thursdays (50 inmates) (1 hour a week)
- o Dinner in chow hall – approximately 30 minutes out-of-cell per day (3.5 hours per week)
- o Religious group worship – Religious group worship – Group worship to include option to participate in one group per week to include Bible Study, Talking Circle, Multi-Faith, Catholic Service, Jumah Prayer, General Worship (1 hour per week)
- o Showers – three showers a week for approximately 30 minutes (approximately 1.5 hours per week)
- o Store - Out-of-cell time to pick up purchases at the store window one day a week on Wednesday from 0700-1500 (Time varies but includes walking from the housing unit to the store)
- o Visitation - (at least 2 hours  per week – contact visits)
- o **Total average hours offered per week of out-of-cell time for non-SMI inmates - (varies depending on programming participation)[5] = 50.5 plus hours per week before participation in programming or WIPP job program.**

*Id.* at ¶ 38.

---

[5] A close custody inmate may elect not to participate in programming/education. This figure excludes programming from the calculation for this reason, but includes education for illustration.

8

1       In sum, the 50.5 hours of out-of-cell and pro-socialization opportunities afforded to

2   non-SMI close custody inmates housed at Florence Central CB 1, 3, and 4 (60.5 for SMI

3   close custody inmates) is <u>substantially increased</u> as compared to the 7.5, 8.5, and 9.5

4   hours of out-of-cell and pro-socialization opportunities per week afforded to maximum

5   custody inmates at steps I, II and III of DI 326.   Close custody opportunities for SMI

6   inmates also greatly exceed the 20.5, 21.5, and 22.5 hours of out-of-cell and pro-

7   socialization opportunities per week afforded to maximum custody inmates at steps I, II

8   and III of DI 326 triple-fold.  Close custody is not maximum custody by a different name.

9       In addition to pure hours counting, there are additional opportunities close custody

10   inmates enjoy that are increased at this lowered custody level.   For example, movement

11   for close custody classification inmates is less restrictive than movement for maximum

12   custody classified inmates as close custody inmates are not required to be in restraints

13   during movement. *Id*. at ¶ 39.

14       Recreation is different too.  The close custody inmates housed in Florence Central

15   CB 1, 3, and 4 recreate in large groups on the Central Unit recreation field that can

16   accommodate up to 120 inmates. *Id*. at ¶ 40.  The Central Unit recreation field provides a

17   variety of open-yard recreation equipment and facilities to include a basketball court,

18   volleyball court, track, par exercise course and equipment, covered tables, all-purpose

19   recreation field, water fountain, and thermos jugs for water.  *Id*. at ¶ 41.  This open yard

20   location with the stated amenities substantially exceeds the recreation enclosure size and

21   amenities afforded to maximum custody inmates.  Add to this, close custody inmates are

22   afforded 7.5 hours per week of large group recreation versus maximum custody inmates

23   are afforded 6 hours per week of out-of-cell recreation.

24       In addition to increased recreation opportunities, close custody inmates are

25   afforded a wide variety of programming options that address reentry, substance abuse, and

26   mental health needs.   In line with Stipulation requirements related to SMI maximum

27   custody inmates (Doc. 1185 at ¶ 25) are afforded 10 hours a week of out-of-cell social

28   activity in addition to mental health programming.  But the pro-social opportunities do not

stop there.  Just like all close custody inmates in CB 1, 3, and 4, SMI close custody inmates housed in CB 1 (currently there are six SMI inmates) may participate in education (15 hours per week), go to the library (5 hours a week), go to dinner in the chow hall with the other inmates (3.5 hours per week), go to group religious gatherings (1 hour per week), go to the store to pick up purchased items, participate in the horticulture class (15 to 25 hours per week), go to contact visitation for 2 hours per week, or even work one of the numerous WIPP jobs for out of cell time averaging 30 hours per week. *Id.* at ¶¶ 38, 42-43.

WIPP job assignments are another vital component to increased opportunities provided to close custody inmates at Florence Central.  Two hundred seventy-six (276) close custody inmates (including CB 2 close custody inmates) currently work 20 WIPP positions to include:  Education Tutor (15 inmates); Clerk (2 inmates); Clerk Store (3 inmates); Clerk Kitchen (3 inmates); Cook (20 inmates); Cook Helper (11 inmates); Kitchen Helper (61 inmates); Inmate Barber (5 inmates); Staff Barber (2 inmates); Laundry Labor (6 inmates); Porter Admin. (2 inmates); Porter Building (54 inmates); Porter Education (1 inmate); Porter Health Unit (6 inmates); Groundskeeper (32 inmates); Shoeshine (3 inmates); Painter (3 inmates); Maintenance Carpenter (22 inmates); Maintenance Helper (8 inmates); CAC Horticulture Class (17 inmates).  *Id.*  The close custody inmates who participate in the WIPP jobs program work, on average, thirty hours per week, with most assignments ranging from twenty (20) to forty (40) hours per week. Thus, the total time out of cell ranges set forth above for Florence Central CB 1, 3 and 4 close custody inmates increases by twenty (20) to forty (40) hours per week if the inmate is working and taking advantage of the other ample opportunities for out-of-cell time, education, and programming.

In sum, there is a substantial difference between the out-of-cell time and socialization opportunities afforded to close custody inmates at Florence Central CB 1, 3, and 4 as compared to maximum custody.  Life changes substantially for the better in close custody as time out-of-cell and pro-socialization opportunities increase for those inmates

who have demonstrated an ability to successfully progress to a more open yard setting. Inmates recreate in large groups for longer time periods, they move about the facility unrestrained, all visits are contact visits, they can go to school for 3 hour blocks – 5 days a week, they can continue to participate in reentry and mental health programming, they can work – out of the unit, they can go to the library, go to the store, join religious groups, and eat together as a unit. All movement without restraints. Close custody is not maximum custody by a different name. The differences and opportunities are real and they are substantial. The definition of "Isolation" as advanced by Plaintiffs– locked down 22 hours a day - is certainly not what close custody is. The Subclass definition and the Stipulation requirements related to maximum custody and DI 326 <u>do not apply</u> to close custody classified inmates.

## III.    <u>MAXIMUM CUSTODY REDUCTION PLAN</u>

The progression of Florence Central CB 1, 3, and 4 to close custody classification and all the opportunities afforded as a result, evidences success. ADC continues with its long-term plan to reduce inmates classified as maximum custody while maintaining a safe environment for staff and the inmate population. *Id*. at ¶ 44. ADC's reduction plan is not an attempt to forego or sidestep the requirements of the Stipulation as related to maximum custody requirements. *Id*. at ¶ 45.

Close custody is an extremely common designation throughout the United States with respect to housing inmates who do not require max custody status. *Id*. at ¶ 44. As evidence, prior to the creation of the Stipulation, Florence Central had already transferred CB 2 to close custody with a long term plan of continuing such efforts as maximum custody inmates successfully completed the DI 326 maximum custody program. *Id*. at ¶ 46. This provided the maximum custody population at Florence Central with motivation, opportunity and "proof" that successful behavioral modification while classified as maximum custody could result in successful progression to close custody which offers increased opportunities for out-of-cell time, group socialization, and jobs. *Id*. at ¶ 47. In

11

fact, as described above, reducing an inmate's custody level necessarily increases potential out-of-cell time. *Id.*

ADC's reduction plan is also a response to the national trend of providing more out of cell time for inmate populations and almost two years of demonstrated success in the implementation of the tiered system of maximum custody management set forth by DI 326. *Id.* at ¶ 48. As a result of the successful implementation of DI 326, staff and inmates have forged a relationship and management environment that has as a whole, been a positive progression in the daily operations of the maximum custody units, albeit staff and labor intensive. *Id.* at ¶ 49. Indeed, as set forth above, close custody classification provides inmates substantial opportunity for increased out-of-cell opportunities, group socialization, and jobs, as compared to maximum custody. *Id.* at ¶ 50.

The reduction plan seeks to carefully and individually screen inmates currently classified as maximum custody for appropriate candidacy for override to close custody housing at the following locations: Perryville-Lumley SMU (Yard 30) (condemned row and Yard 30 inmates for consideration), Florence Central, Lewis-Rast, Eyman-Browning (condemned row and STG step down program inmates for consideration), Eyman-SMUI (sex offender and general population inmates for consideration) as already afforded by ADC's inmate classification system – Department Order 801. *Id.* at ¶ 51, 25-33. Maximum custody inmates in these specified locations will be individually screened to determine whether they are appropriate candidates for promotion to a close custody setting within the maximum custody units, including creation of a complex level review committee to screen inmates to be overridden down to close custody (Deputy Warden of Operations, Unit Deputy Warden and Classification COIV participate in the committee). *Id.* at ¶ 52-53.

Screening will be based upon behavior and discipline, excluding those with staff assaults with injury, assaults with a weapon, and multi-on-one inmate assaults that resulted in significant injury excluding those inmates who for a period of at least a one year with no major rule violations or two years without any violent major rule violations.

1   *Id.* at ¶ 54.  Focus will be applied to inmates with less than six months remaining to

2   increase their pro-social interactions with others as well as reentry programs.  *Id.* at ¶ 55.

3   Additionally, policy changes are under consideration to allow for inmates serving life

4   sentences to be considered for close custody housing in maximum custody units after one

5   year of incarceration versus the current two year time requirement.  *Id.* at ¶ 56.

6   Furthermore, consideration will be given for inmates designated as SMI or have MH

7   scores of 3 or above to participate in close custody by clustering these populations in pods

8   together to provide a gradual reintroduction to general population while still providing

9   necessary security to prevent predatory behavior towards them.  *Id.* at ¶57.

10       The management of inmates promoted to close custody classification will occur in

11   smaller settings within the maximum custody institutions which will in turn aide in the

12   process of transitioning the inmates to lower custody and larger population settings,

13   creating a greater chance of future success on larger yards, at lower custody levels, and

14   eventually, in the community, versus return to maximum custody.  *Id.* at ¶58. Finally, the

15   Perryville-Lumley SMU (Yard 3) maximum custody reduction plan will include careful

16   and individualized custody review, followed by a gradual phase-in period for approved

17   inmates through the end of 2016. *Id.* at ¶ 59.

18       In sum, this plan is for continued success in the management of maximum custody

19   inmates, providing greater opportunity for inmates to progress to lower custody levels,

20   promoting positive pro-social behavior and success both while incarcerated and upon

21   release.  It is not a side step around, or avoidance of the Stipulation requirements.  Rather,

22   it is simply, progress.

23   **IV.   <u>CONCLUSION</u>**

24       Based upon the foregoing, Defendants respectfully request this Court find that

25   neither the definition of the Subclass nor the Stipulation apply to close custody inmates

26   housed at Florence Central CB 1, 3, and 4, or any maximum custody facility where the

27   time out-of-cell for close custody inmates in no way, shape or form, can be defined as

28   "isolation" or confinement to a cell for 22 or more hours a day.  Close custody inmates

incarcerated at maximum custody facilities enjoy substantially more advantageous opportunities for time out-of-cell, programming and education, group worship and meal opportunities, work opportunities, and generalized increased pro-socialization.

DATED this 22nd day of November, 2016.

                                     STRUCK WIENEKE & LOVE, P.L.C.


                                     By /s/ Daniel P. Struck                    
                                          Daniel P. Struck
                                          Kathleen L. Wieneke
                                          Rachel Love
                                          Timothy J. Bojanowski
                                          Nicholas D. Acedo
                                          Ashlee B. Fletcher
                                          Anne M. Orcutt
                                          Jacob B. Lee
                                          Mark A. Bracken
                                          STRUCK WIENEKE & LOVE, P.L.C.
                                          3100 West Ray Road, Suite 300
                                          Chandler, Arizona  85226

                                          Arizona Attorney General Mark Brnovich
                                          Office of the Attorney General
                                          Michael E. Gottfried
                                          Lucy M. Rand
                                          Assistant Attorneys General
                                          1275 W. Washington Street
                                          Phoenix, Arizona 85007-2926

                                          *Attorneys for Defendants*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alison Hardy:               ahardy@prisonlaw.com

Amelia M. Gerlicher:        agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com

Amir Q. Amiri:              aamiri@jonesday.com; ttualaulelei@jonesday.com

Amy B. Fettig:              afettig@npp-aclu.org

Asim Varma:                 avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

Caroline N. Mitchell:       cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

Corene T. Kendrick:         ckendrick@prisonlaw.com; edegraff@prisonlaw.com

Daniel Clayton Barr:        DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

Daniel Joseph Pochoda:dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org

David Cyrus Fathi:          dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

Donald Specter:             dspecter@prisonlaw.com

Jennifer K. Messina:        jkmessina@jonesday.com

Jessica Pari Jansepar Ross:   jross@azdisabilitylaw.org

John Howard Gray:           jhgray@perkinscoie.com; slawson@perkinscoie.com

John Laurens Wilkes:        jlwilkes@jonesday.com, dkkerr@jonesday.com

Jose de Jesus Rico:         jrico@azdisabilitylaw.org

Kathleen E. Brody           kbrody@acluaz.org

Kirstin T. Eidenbach:       kirstin@eidenbachlaw.com
Maya Abela                  mabela@azdisabilitylaw.org

Rose Daly-Rooney:           rdalyrooney@azdisabilitylaw.org

Sara Norman:                snorman@prisonlaw.com

Sarah Eve Kader:            skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org

Rita K. Lomio:              rlomio@prisonlaw.com

15

1    I hereby certify that on this same date, I served the attached document by U.S.
2    Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

3        N/A

4                                              /s/Daniel P. Struck

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28