Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
Mark A. Bracken, Bar No. 026532
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
mbracken@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DKD<br><br>**DECLARATION OF MICHAEL GIARDINA, ACP** |

I, **MICHAEL GIARDINA, ACP** make the following Declaration:

1. I am over the age of 18 years and am competent to testify to, and have personal knowledge of, the matters set forth in this Declaration.

2. I received my B.A. in Economics in 1994. Starting in 1995, I began my career as a paralegal in Washington, D.C. I successfully passed the Certified Legal Assistant Examination offered by the National Association of Legal Assistants in January 2006, at which point I earned my Certified Paralegal (CP) designation. In January 2011, I successfully completed the requirement of the National Association of Legal Assistants and earned the designation of Advanced Certified Paralegal (APC) in Discovery. In June 2015, I successful completed the requirement of the National Association of Legal Assistants and earned the designation of Advanced Certified Paralegal in E-Discovery. The National Association of Legal Assistants requires that an individual seeking to maintain a designation as a Certified or Advanced Certified Paralegal must complete 50 hours of continuing legal education, at least five of which must be in ethics, every five years.

3. I am an active member in the Maricopa County Association of Paralegals, the Arizona Paralegal Association, the National Association of Legal Assistants, and the International Legal Technology Association.

4. During my career, I have worked in litigation firms with nationwide practices located in Washington, D.C., Baltimore, Maryland, and Phoenix, Arizona. I have eighteen years of experience as a litigation paralegal supporting attorneys with cases proceeding to trial in both state and federal courts and administrative proceedings in Alaska, Arizona, California, Delaware, the District of Columbia, Kentucky, Hawaii, Illinois, Indiana, Maryland, New Mexico, North Carolina, Ohio, and, Virginia.

5. As a paralegal, particularly one with a background in economics, I am familiar with the standards and best practices relevant to the preparation of summary exhibits including but not those used to prove the content under Fed. R. Evid. 1006 and similar state rules.

1

6. I have been directed to review the Declaration of Amy Fettig [Doc. 1757] and in particular Exhibit 2, thereto [Doc. 1757-1 at pages 31-32].

7. I initially note that neither the Declaration nor the summary chart specifically identify the source of the documents which are purportedly summarized. It appears that the summary is based upon individual Arizona Department of Corrections Form 801-19(e), Maximum Custody Daily Out of Cell Time Tracking Forms, which were provided in Maximum Custody Notebooks that were produced for each of the Maximum Custody Units. (Because the

8. The Maximum Custody Daily Out of Cell Time Tracking Forms, are compiled on a weekly basis for each inmate, and list out of cell time for Meals (breakfast, lunch and dinner); Recreation Enclosures; WIPP Work/Job; Mental Health Group/Therapy; Programming Classes/Groups; Education Classes/Library; Religious Services; SMI Unstructured Out of Cell Time; and, Other Out of Cell Time.

9. Security Staff assigned to the Day and Swing shift completes the chart when out of cell time is offered, the duration of the time offers, and indicates any cancellations or refusals. The back of each form includes a comment section where inmates or staff members document refusals and where reasons for cancellation of activities can be noted. True and correct copies of the Maximum Custody Daily Out of Cell Time Tracking forms for the Florence-CB Kasson during January 2015 are attached hereto as Attachment A (under seal.)

10. The same of document used is limited only to those 10 inmates for each measure monitored during the one week of the month.

11. Because the selection of inmates is random, such as picking every $n^{th}$ name from a list it is possible, and even likely at certain units, that an SMI inmate will be picked for monitoring, both for measures relating to all maximum custody inmates, as well as for monitoring performance measures related only to SMI inmates.

2

12. For example, in January 2016 at the Florence-CB Kasson, five inmates who were picked for SMI monitoring, also appeared on the list for the all max custody inmates monitoring list.

13. When assembling Plaintiffs' exhibit, it is apparent that Plaintiffs double-counted the recreation opportunities offered and refused for those SMI inmates, who were randomly selected for both the SMI-specific, as well as the general max custody monitoring lists in a particular month. For example, in January 2011, there were only a total of fifteen (15) unique inmates selected for monitoring, whose Daily Out of Cell Time Tracking Reports were provided at Florence – CB Kasson. Among that total population, out of cell recreation in the recreation enclosures was only offered a total of 45 times. Yet, in reporting the "Total Rec Periods Offered"; "Total Refusals"; and, "Percentage of Refusals", Plaintiffs double-counted 15 of the offered time periods in the Recreation Enclosures and ten refusals. Double-counting these numbers is misleading as it necessarily inflates all three of these values.

14. Additionally, Plaintiffs' Rates of Refusal of Programs Summary is subject to the same infirmity as their Rates of Refusal of Recreation due to double-counting of SMI Inmates who were selected for both SMI and general-maximum custody monitoring samples. When double-counting is eliminated, there were only 70 out of cell "Programs" opportunities offered in Florence-CB Kasson during the January 2016 monitoring period.

15. Additionally, I am aware that Maximum Custody Performance Measures 1 and 6 do not make any distinction between out of cell time for recreation and programs. However, Plaintiff fails to provide any meaningful comparison as to the total number of hours offered and refused irrespective of the reason for out of cell time for all max custody inmates, to permit any reasonable assessment of the percentage of time refused by inmates.

16. Similarly, Plaintiff's report fails to make any specific comparison for refusals of out of cell group programming (Performance Measure 2); unstructured out of

3

cell time, additional out of cell mental health programming, additional out of cell psycho-educational programming, and additional out of cell programming per week (Performance Measure 8). Without providing a specific breakdown, there can be no meaningful conclusions drawn as to the nature or extent of the refusals.

17. Finally, Plaintiff's summary ignores that fact that a significant amount of the inmates actually signed their own refusals. In January 2016, at least ten of the fifteen inmates selected for monitoring at Florence-CB Kasson signed their own refusals of out of cell time. *See* Attach A at ADCM631373; ADCM631375; ADCM631427; ADCM631429; ADCM631431; ADCM631433; ADCM631435; ADCM631437; ADCM631441; ADCM631443; Moreover, certain inmates chose to voluntarily document why they refused certain out of cell opportunities, for example, noting it was "to[o] cold" or they were expecting "a visit". *See, e.g.,* Attach A. at ADCM631433.

18. Additionally, I have been directed to review the reports for the sixteen use-of-force incidents which are extracted and submitted as Exhibit 5 to the Declaration of Amy Fettig.

19. Upon reviewing each of the documents identified by Plaintiffs, and comparing them to the CGAR reports which list the specific reports reviewed for compliance, it is apparent that the following six incidents, while included in the Maximum Custody Notebooks were not considered by the monitor in determining compliance with Maximum Custody Performance Measure 9: SIR 15-03197 (February or March 2015 incident at Perryville-Lumley); SIR 15-05693 (April 27, 2015 incident at Florence-Central Unit); SIR 15-10577 (July 31, 2015 incident at Perryville-Lumley); SIR 15-11599 (August 19, 2015 incident at Perryville-Lumley); SIR 16-01974 (February 7, 2016 incident at Florence-CB Kasson); and, SIR 16-08252 (June 6, 2016 incident at Perryville-Lumley).

20. Moreover, the 10 incidents identified by Plaintiffs involving non-SMI which were monitored all occurred only at Perryville-Lumley. Eight of those ten reports

4

1  occurred in months, where there was 100% reported compliance at ASPC-Perryville with Maximum Custody Performance Measure No. 9. Two of those reports occurred in the March 2016 monitoring period, where only ten of thirteen use of force incidents were found to be in compliance with that Performance Measure, and it is impossible from the CGAR notes to determine how the 77% compliance rate in March 2016 at Perryville would change if these reports were removed.

21. It is readily apparent, however, that Plaintiffs have not identified any instance where a use-of-force incident involving chemical agents against a non-SMI inmate at ASPC-Phoenix, ASPC-Eyman, or ASPC-Lewis was reported or monitored.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 29, 2016.

Michael Giardina, ACP
Advanced Certified Paralegal

3276319

# ATTACHMENT A

# **FILED UNDER SEAL**