1  Kathleen E. Brody (Bar No. 026331)
   Daniel Pochoda (Bar No. 021979)
2  **ACLU FOUNDATION OF ARIZONA**
   3707 North 7th Street, Suite 235
3  Phoenix, Arizona 85013
   Telephone: (602) 650-1854
4  Email: kbrody@acluaz.org
           dpochoda@acluaz.org
5
   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia*
6  *Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith,*
   *Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner,*
7  *Joshua Polson, and Charlotte Wells, on behalf of themselves and all*
   *others similarly situated*
8
   **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**
9
   Sarah Kader (Bar No. 027147)
10 Asim Dietrich (Bar No. 027927)
   **ARIZONA CENTER FOR DISABILITY LAW**
11 5025 East Washington Street, Suite 202
   Phoenix, Arizona 85034
12 Telephone: (602) 274-6287
   Email: skader@azdisabilitylaw.org
13         adietrich@azdisabilitylaw.org
14 *Attorneys for Plaintiff Arizona Center for Disability Law*

15 **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

16

17            **UNITED STATES DISTRICT COURT**

18               **DISTRICT OF ARIZONA**

19 Victor Parsons; Shawn Jensen; Stephen Swartz;      No. CV 12-00601-PHX-DKD
   Dustin Brislan; Sonia Rodriguez; Christina
20 Verduzco; Jackie Thomas; Jeremy Smith; Robert
   Gamez; Maryanne Chisholm; Desiree Licci; Joseph
21 Hefner; Joshua Polson; and Charlotte Wells, on     **PLAINTIFFS' MOTION TO**
   behalf of themselves and all others similarly      **MODIFY STIPULATION**
22 situated; and Arizona Center for Disability Law,    **UNDER FEDERAL RULE OF**
                                                       **CIVIL PROCEDURE 60(b)(5)**
23                  Plaintiffs,                        **AND FOR FURTHER RELIEF**

24         v.                                          **(ORAL ARGUMENT**
   Charles Ryan, Director, Arizona Department of      **REQUESTED)**
25 Corrections; and Richard Pratt, Interim Division
   Director, Division of Health Services, Arizona
26 Department of Corrections, in their official
   capacities,
27
                   Defendants.
28

LEGAL133712457.1

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 1

I.    THE STIPULATION PERMITS A GENERAL ORDER FOR A STAFFING PLAN. ................................................................................. 1

II.   THE COURT SHOULD GRANT PLAINTIFFS' MOTION TO MODIFY THE STIPULATION. ........................................................... 5

    A.   The Court Has the Equitable Power to Modify the Stipulation Under Rule 60(b)(5). ....................................................................... 5

    B.   Defendants' Ongoing Noncompliance Makes Modification of the Stipulation Necessary to Achieve the Purposes of the Stipulation and Promote the Public Interest. ..................................... 7

        1.   The Scale, Scope, and Degree of Defendants' Substantial Noncompliance Is An Unforeseen Obstacle That Makes the Stipulation Unworkable. ............................... 9

        2.   Modification is Necessary to Achieve the Purposes of the Stipulation. ..................................................................... 12

        3.   Continuing to Limit the Scope of the Court's Remedial Power Is Detrimental to the Public Interest. ......................... 13

    C.   Plaintiffs' Proposed Modification is Suitably Tailored to Address the Unforeseen Obstacles to Enforcement of the Stipulation. ...................................................................................... 14

CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

<u>**CASES**</u>

*Absher Constr. Co. v. N. Pac. Ins. Co.*,
   861 F. Supp. 2d 1236 (W.D. Wash. 2012) ..................................................... 4

*Armstrong v. Brown*,
   768 F.3d 975 (9th Cir. 2014) ...................................................................... 10

*Aztar Corp. v. U.S. Fire Ins. Co.*,
   224 P.3d 960 (Ariz. Ct. App. 2010) ............................................................. 3

*Ball v. Rodgers*,
   No. CV 00–67–TUC–EHC, 2010 WL 797146 (D. Ariz. Mar. 8, 2010) ..................... 10

*Bellevue Manor Assoc. v. United States*,
   165 F.3d 1249 (9th Cir. 1999) ................................................................. 6, 8

*Brown v. Plata*,
   563 U.S. 493 (2011) .................................................................................. 9

*Clark v. Coye*,
   60 F.3d 600 (9th Cir. 1995) ........................................................................ 5

*David C. v. Leavitt*,
   242 F.3d 1206 (10th Cir. 2001) ................................................................... 8

*Frew v. Hawkins*,
   540 U.S. 431 (2004) .............................................................................. 6, 10

*Goodman v. Newzona Inv. Co.*,
   421 P.2d 318 (Ariz. 1966) ....................................................................... 2, 3

*Holland v. New Jersey Dep't of Corr.*,
   246 F.3d 267 (3d Cir. 2001) ....................................................................... 8

*Kelly v. Wengler*,
   822 F.3d 1085 (9th Cir. 2016) ..................................................................... 8

*Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Auth.*,
   564 F.3d 1115 (9th Cir. 2009) ..................................................................... 7

*Nammo Talley Inc. v. Allstate Ins. Co.*,
   99 F. Supp. 3d 999, 1004 (D. Ariz. 2015) ...................................................... 3

*Nicacio v. U.S. Immigr. & Naturalization Serv.*,
   797 F.2d 700 (9th Cir. 1985) ....................................................................... 5

*Orantes-Hernandez v. Gonzales*,
   504 F. Supp. 2d 825 (C.D. Cal. 2007), *aff'd sub nom. Orantes-
   Hernandez v. Holder*, 321 F. App'x 625 (9th Cir. 2009) ................................... 8

1

2

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

3

**CASES**

4

*Rosebrock v. Mathis,*
  745 F.3d 963 (9th Cir. 2014), *cert. denied sub nom. Rosebrock v.*

5
  *Hoffman,* 135 S. Ct. 1893, 191 L. Ed. 2d 762 (2015) .................................... 11

6

*Rufo v. Inmates of Suffolk Cty. Jail,*
  502 U.S. 367 (1992) ................................................................................... passim

7

*Salazar v. Buono,*

8
  559 U.S. 700 (2010) ...................................................................................... 5, 6

9

*Scholten v. Blackhawk Partners,*
  909 P.2d 393 (Ariz. Ct. App. 1995) ................................................................. 3

10

*SEC v. McCarthy,*

11
  322 F.3d 650 (9th Cir. 2003) ........................................................................... 4

12

*Serv. Steel Warehouse Co., L.P. v. McDonnel Grp., LLC,*
  Civ. Action No. 14-1416, 2016 WL 128152 (E.D. La. Jan. 11, 2016) ........................... 4

13

*Thompson v. U.S. Dep't of Hous. & Urban Dev.,*

14
  404 F.3d 821 (4th Cir. 2005) ........................................................................... 11

15

*Trustees of the Aftra Health & Retirement Funds v. KTVU, Inc.,*
  No. C-93-0370 MHP, 1996 WL 721831 (N.D. Cal. Dec. 3, 1996) ............................... 4

16

*United States v. Asarco Inc.,*

17
  430 F.3d 972 (9th Cir. 2005) ............................................................................ 6

18

*United States v. Swift & Co.,*
  286 U.S. 106 (1932) ......................................................................................... 8

19

*Valdivia v. Schwarzenegger,*

20
  599 F.3d 984 (9th Cir. 2010) ............................................................................ 6

21

*Vanguards of Cleveland v. City of Cleveland,*
  23 F.3d 1013 (6th Cir. 1994) ............................................................................ 8

22

23

**OTHER AUTHORITIES**

24

Federal Rule of Civil Procedure 60(b)(5) ........................................................... passim

25

Thomas H. Oehmke & Joan M. Brovins, 1 *Commercial Arbitration* § 2:31

26
  (2016) .............................................................................................................. 3

27

28

**INTRODUCTION**

By Stipulation dated October 9, 2014 and filed on October 14, 2014 [Doc. 1185, the "Stipulation"], which was approved and adopted by this Court on February 18, 2015 [Doc. 1458], the parties settled this case. The Stipulation requires Defendants to address issues identified by Plaintiffs in the Complaint, and sets forth performance measures to assess Defendants' compliance. Almost two years into enforcement of the Stipulation, the Court has found that Defendants are noncompliant on numerous performance measures at multiple prisons, and that Defendants have failed to propose and implement remedial plans that can successfully ameliorate the continuing problems. The Court has noted repeatedly that an increase in the levels of health care staff is essential to compliance with the performance measures. Therefore, Plaintiffs, by and through undersigned counsel, now respectfully request that the Court (a) interpret the Stipulation, according to the parties' intent, to permit the Court to order general staffing increases to address ongoing noncompliance, and order such relief, and (b) additionally, to resolve any future uncertainty regarding the limits of the Court's power, modify Paragraph 36 of the Stipulation pursuant to Federal Rule of Civil Procedure 60(b)(5) to remove the language that limits its power to make orders pertaining to increased staffing.

**ARGUMENT**

**I.      THE STIPULATION PERMITS A GENERAL ORDER FOR A STAFFING PLAN.**

Plaintiffs renew their arguments set forth in their Statement Regarding Defendants' August 2016 CGAR Data and Defendants' Ongoing Noncompliance with the Stipulation, dated November 7, 2016 [Doc. 1739], and formally move for an order requiring Defendants to develop and implement a plan to increase staffing levels to ensure compliance with the performance measures at issue. As the Court is aware, the Stipulation contains a provision retaining the Court's "power to enforce this Stipulation through all remedies provided by law, except that the Court shall not have the authority to

order Defendants to construct a new prison or to hire a *specific number* or *type of* staff unless Defendants propose to do so as part of a plan to remedy a failure to comply" with the Stipulation.  [Doc. 1185 at ¶ 36 (emphasis added); *see also* Doc. 1458-1 at 6]  The Court has interpreted this provision to prohibit it from ordering any staffing increases whatsoever.  Plaintiffs maintain that the plain language of the provision evinces the parties' intent to permit the Court to order general staffing increases, so long as the Court does not require specific numbers or types of staff to be hired.

As noted, Plaintiffs have raised this issue before.  [*See* Doc. 1739 at 6-7]  While the Court did not make a final ruling on the issue, at the most recent conference, the Court observed:

> Because of my participation in the negotiations for – that resulted in the agreement to the stipulation, I do believe that I have a clear understanding of the limitation that is set forth in the stipulation with respect to what I can do, and I do not think that I can, as plaintiffs again invite me to do, act to address what I think is the legitimate cause of the failure of performance measures, and that is staffing issues.  . . . I read the arguments that plaintiffs articulate, but it is not consistent with what my impression was of the parties' understanding at the time that the stipulation was negotiated.

[Transcript of Nov. 9, 2016 Status Conference ("11/9/16 Tr.") at 5:23-6:10]

Plaintiffs respectfully disagree with the Court's interpretation of the Stipulation.  Plaintiffs submit that the parties intended that the Court be permitted to make general staffing orders.  Furthermore, Plaintiffs contend that the Court's reliance on its own "impression" of what the parties' "understandings" were during negotiations is misplaced, and that reliance on such "impressions" is contrary to law.

First, it is a fundamental principle of contract law that the plain language of the contract is the best representation of the parties' intent during negotiations.  *See Goodman v. Newzona Inv. Co.*, 421 P.2d 318, 320 (Ariz. 1966) ("The intent of the parties, as ascertained by the language used, must control the interpretation of a contract.  It is not within the province or power of the court to alter, revise, modify, extend, rewrite or remake an agreement.  Its duty is confined to the construction or interpretation of the one

which the parties have made for themselves."). It follows that "[w]here the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto." *Id.*

In light of this principle, it "is improper for a judge to use his or her own understanding to determine whether a contractual term is ambiguous" because the "court's proper and primary function" is to enforce the meaning that the parties intended. *Nammo Talley Inc. v. Allstate Ins. Co.*, 99 F. Supp. 3d 999, 1004 (D. Ariz. 2015) (citing *Taylor v. State Farm Mut. Auto Ins. Co*., 854 P.2d 1134, 1140 (Ariz. 1993)); *see also* Thomas H. Oehmke & Joan M. Brovins, 1 *Commercial Arbitration* § 2:31 (2016) ("when the parties make a settlement agreement in the presence of a judge, but its terms are not memorialized on the record, the judge court [sic] cannot adopt that judge's own understanding of the agreement (reducing it to a judgment) if the specific terms of the agreement are disputed."). Thus, Plaintiffs respectfully submit that it is an error for the Court to supplant what is made clear by the language of the provision itself with its own interpretation of what the parties intended the contract provision to mean.

Specifically, the plain language of the Stipulation unambiguously provides that absent a proposed remedial plan from the Defendants, the Court may not order the Defendants to "hire a *specific number* or *type of* staff." [Doc. 1185 at ¶ 36 (emphasis added)] A second well-established canon of contract interpretation dictates that courts must attempt to give meaning to every word in a contract, and avoid interpretations that render a word superfluous. *Scholten v. Blackhawk Partners*, 909 P.2d 393, 396 (Ariz. Ct. App. 1995) ("a contract should be construed to give effect to all of its provisions and to prevent any of the provisions from being rendered meaningless"); *Aztar Corp. v. U.S. Fire Ins. Co.*, 224 P.3d 960, 975 (Ariz. Ct. App. 2010) ("It is a cardinal rule of contract interpretation that we do not construe one term of a contract to essentially render meaningless another term."). As Plaintiffs have previously argued, by removing from the Court's toolbox the option to order the Defendants to hire *specific numbers* or *types of* staff, the Stipulation therefore leaves intact the Court's authority to order *general* staffing

increases, with Defendants to initially determine the numbers and appropriate allocation of the positions.  The Court's prior interpretation, which prevents it from addressing staffing at all, renders the terms "specific number" and "type of" superfluous and meaningless.[1]  *See, e.g.*, *Trustees of the Aftra Health & Retirement Funds v. KTVU, Inc.*, No. C-93-0370 MHP, 1996 WL 721831, at *5 (N.D. Cal. Dec. 3, 1996) (use of qualifier to define services covered by contract "more than suggests that there are services which are not covered"); *Absher Constr. Co. v. N. Pac. Ins. Co*., 861 F. Supp. 2d 1236, 1249 (W.D. Wash. 2012) (rejecting interpretation of contract that "effectively wr[o]te the word 'ongoing' out of the policy" because "if this were the parties' intent, there would be no need to include the word 'ongoing' as a modifier of the word 'operations'").

The Court's interpretation of the Stipulation also fails to take into account differences in the language of the Stipulation which demonstrate the parties' intent.  In the same sentence of the Stipulation where staffing is addressed, the parties agreed that "the Court shall not have the authority to order Defendants to construct a new prison . . ." with no qualifiers or modifiers to the clause.  [Doc. 1185 at ¶ 36]  *See Serv. Steel Warehouse Co., L.P. v. McDonnel Grp., LLC*, Civ. Action No. 14-1416, 2016 WL 128152, at *5 (E.D. La. Jan. 11, 2016) ("When a party varies its language in a contract, courts interpreting the contract presume that the use of different terms signifies a different meaning"); *see also SEC v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) ("the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words").  The parties chose to include the modifiers "specific number" and "type of" to the language in the clause on staffing, but included no such qualifiers in the limitation on prison construction, which appears earlier in the sentence.

---

[1]  In addition, Plaintiffs note that nothing in the Stipulation prohibits the Court from ordering the Defendants to create a remedial plan which includes increased staffing. The Court's ability to do so is manifest in the Stipulation, as it expressly permits the Court to order staffing increases once the Defendants propose a remedial plan that includes increased staffing.  [Doc. 1185 at ¶ 36]

This demonstrates that the parties did not intend to place an absolute restriction on the Court's power to order general staffing orders, as they did with prison construction.

This Court has repeatedly observed that the obvious remedy for Defendants' persistent noncompliance with the Stipulation is an increase in health care staff.   [11/9/16 Tr. at 6:12]   Because the intent of the parties, as evidenced by the plain language of the Stipulation, was to permit the Court to order general staffing increases, Plaintiffs formally move for an order that, consistent with the Stipulation and the parties' intent, requires staffing increases.

## II.    THE COURT SHOULD GRANT PLAINTIFFS' MOTION TO MODIFY THE STIPULATION.

Additionally, to resolve any future ambiguity regarding the limits of the Court's remedial power, this Court has the authority and obligation to modify the Stipulation and should exercise that authority here and delete the provision of Paragraph 36 that the Court has interpreted as completely tying its hands.

### A.    The Court Has the Equitable Power to Modify the Stipulation Under Rule 60(b)(5).

Under the Court's traditional equitable power, it may modify an order granting injunctive relief when changed circumstances warrant such relief.  This is because "[a] court must find prospective relief that fits the remedy to the wrong or injury that has been established." *Salazar v. Buono*, 559 U.S. 700, 718 (2010) (citing *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932) ("A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need.")).  "A court which issues an injunction retains jurisdiction to modify the terms of the injunction if a change in circumstances so requires." *Nicacio v. U.S. Immigr. & Naturalization Serv.*, 797 F.2d 700, 706 (9th Cir. 1985); *see also Clark v. Coye*, 60 F.3d 600, 606 (9th Cir. 1995) ("a federal court which has imposed an injunction also retains the power to suspend or modify it").  Because prospective relief "is drafted in light of what the court believes will be the future course of events, . . . a court must never ignore significant changes in the law or

circumstances underlying an injunction lest the decree be turned into an 'instrument of wrong.'" *Salazar*, 559 U.S. at 714-15 (citing C.A. Wright, A.R. Miller & M. Kane, 11A Fed. Prac. & Proc. Civ. § 2961 (2d ed. 1995) [hereinafter "Wright & Miller"] (quoting *Swift & Co.*, 286 U.S. at 115)).

Federal Rule of Civil Procedure 60(b)(5) "codifies the courts' traditional authority, inherent in the jurisdiction of the chancery, to modify or vacate the prospective effect of their decrees." *United States v. Asarco Inc.*, 430 F.3d 972, 978-79 (9th Cir. 2005) (internal citations omitted).  Rule 60(b)(5) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . [when] the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable.

Fed. R. Civ. P. 60(b)(5).  As the Supreme Court explained in *Rufo*, Rule 60(b)(5) applies to consent decrees because while a "consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature . . . it is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 378 (1992); *see also Frew v. Hawkins*, 540 U.S. 431, 437, 440 (2004) ("Consent decrees have elements of both contracts and judicial decrees" and may be modified under Rule 60(b) if "it is no longer equitable that the judgment should have prospective application") (citation omitted).  Rule 60(b)(5) applies to stipulated orders as well.  Although the order at issue in this matter is called a "Stipulation" and not a "Consent Decree," the difference in the nomenclature is irrelevant. The Ninth Circuit has held that *Rufo*'s "flexible approach" to modification of orders and judgments applies to all motions brought under the equitable provision of Rule 60(b)(5), and thus it applies to the Stipulation here.  *See Bellevue Manor Assoc. v. United States*, 165 F.3d 1249, 1255 (9th Cir. 1999); *Valdivia v. Schwarzenegger*, 599 F.3d 984, 994 (9th Cir. 2010) (applying *Rufo* test to motion to modify injunction).

The *Rufo* Court explained that a "flexible approach" to modification is particularly appropriate to consent decrees in institutional reform cases because such decrees "reach beyond the parties involved directly in the suit and impact on the public's right to the sound and efficient operation of its institutions."   *Rufo*, 502 U.S. at 381 (citations omitted).  In such cases, the "ability of a district court to modify a decree in response to changed circumstances [is] all the more important . . . [b]ecause such decrees often remain in place for extended periods of time, [and] the likelihood of significant changes occurring during the life of the decree is increased." *Id.* at 380-81.

**B.    Defendants' Ongoing Noncompliance Makes Modification of the Stipulation Necessary to Achieve the Purposes of the Stipulation and Promote the Public Interest.**

Modification of the Stipulation is warranted based on the facts of this case.   In *Rufo*, the Supreme Court laid out a two-part inquiry for determining if modification of a consent decree pursuant to Rule 60(b)(5) is appropriate:

> [A] party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree.  If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance.

502 U.S. at 383.

The moving party "may meet its initial burden by showing either a significant change either in factual conditions or in law." *Id.* at 384.   Modifications may be warranted when "changed factual conditions make compliance with the decree substantially more onerous," "a decree proves to be unworkable because of unforeseen obstacles," or "enforcement of the decree without modification would be detrimental to the public interest." *Id.* at 384-85 (citations omitted).   In addition, the "failure of substantial compliance with the terms of a consent decree can qualify as a significant change in circumstances" that justifies extension or modification of a decree. *Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Auth.*, 564 F.3d 1115, 1120-21 (9th Cir. 2009) (citing *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821,

1   828-29 (4th Cir. 2005)); *see also Kelly v. Wengler*, 822 F.3d 1085, 1098 (9th Cir. 2016)

2   ("substantial violation of a court order constitutes a significant change in factual

3   circumstances"); *David C. v. Leavitt*, 242 F.3d 1206, 1212 (10th Cir. 2001) (holding

4   substantial noncompliance after four years of enforcement was "unforeseen

5   circumstance[] [which] provide[s] an objective basis for equitable intervention by this

6   court to rescue, if necessary, the purposes of the agreement"); *Vanguards of Cleveland v.*

7   *City of Cleveland*, 23 F.3d 1013, 1020 (6th Cir. 1994) (finding noncompliance with

8   performance goal is a "significant change in circumstances which warrants revision of the

9   consent decree"); *Holland v. New Jersey Dep't of Corr.*, 246 F.3d 267, 270 (3d Cir. 2001)

10   (noting that "it is settled that a court does have inherent power to enforce a consent decree

11   in response to a party's non-compliance, and to modify a decree in response to changed

12   conditions," and remanding to district court for fact finding as to whether extension of

13   decree was warranted).[2]

14          Further, a modification is appropriate when necessary to effectuate the purpose of a

15   decree or injunction.  The Supreme Court recently reiterated that a court

16              retains the authority, and the responsibility, to make further
                amendments to the existing order or any modified decree it
17              may enter as warranted by the exercise of its sound discretion.
                'The power of a court of equity to modify a decree of
18              injunctive relief is long-established, broad, and flexible.' A
                court that invokes equity's power to remedy a constitutional
19              violation by an injunction mandating systemic changes to an
                institution has the continuing duty and responsibility to assess
20              the efficacy and consequences of its order. Experience may
                teach the necessity for modification or amendment of an
21              earlier decree. To that end, the [district] court must remain
                open to a showing or demonstration by either party that the
22

23          [2] Prior to *Rufo*, most courts applied a more stringent standard, taken from *United*
     *States v. Swift & Co.*, 286 U.S. 106 (1932), which, in denying a motion to modify, had
24   warned that "[n]othing less than a clear showing of grievous wrong evoked by new and
     unforeseen conditions should lead us to change what was decreed after years of litigation
25   with the consent of all concerned." *Id.* at 119.  In *Rufo*, the Supreme Court expressly
     moved away from the "grievous wrong" requirement in favor of a flexible approach.  For
26   a detailed discussion of the evolution of the standard, *see Orantes-Hernandez v. Gonzales,*
     504 F. Supp. 2d 825, 828-29 (C.D. Cal. 2007), *aff'd sub nom. Orantes-Hernandez v.*
27   *Holder*, 321 F. App'x 625 (9th Cir. 2009); *Bellevue Manor Associates v. United States*,
     165 F.3d 1249, 1254 (9th Cir. 1999) (summarizing the Ninth Circuit's pre-*Rufo* test for
28   relief under Rule 60(b)(5)).

1
2

      injunction *should be altered to ensure that the rights and interests of the parties are given all due and necessary protection.*

3

*Brown v. Plata*, 563 U.S. 493, 542-43 (2011) (quoting *New York State Ass'n for Retarded*

4

*Children, Inc. v. Carey*, 706 F.2d 956, 967, 969 (2nd Cir. 1983)) (emphasis added,

5

internal citations omitted).

6
7

        **1.**    **The Scale, Scope, and Degree of Defendants' Substantial Noncompliance Is An Unforeseen Obstacle That Makes the Stipulation Unworkable.**

8

      The parties find themselves almost two years into the life of the Stipulation, and

9

the Defendants have been found substantially noncompliant at multiple facilities for many

10

of the performance measures that evaluate the most central and fundamental areas of

11

operation of a constitutionally adequate correctional health care system.  [Docs. 1583,

12

1709]  The Court made 68 findings of substantial noncompliance in its May 2016 order,

13

and 15 additional findings in its October 2016 order.[3]  As the Court noted at the last

14

conference in this matter, the plans submitted by the Defendants in June have patently

15

failed to remedy the performance measures identified as noncompliant in May, and the

16

October remedial plans are similarly inadequate to address the three new areas of

17

noncompliance.  [11/9/16 Tr. at 8:5-24; Doc. 1762 at 1, 2]

18

      Both correctional health care experts and the Court agree that significant staffing

19

increases are necessary to remedy the violations.  [*See, e.g.*, March 30, 2016 Declaration

20

of Dr. Pablo Stewart, M.D., Doc. 1538-1 at ¶¶ 17-18 ("The provision of sufficient

21

numbers of qualified mental health staff is the foundation of any minimally adequate

22

prison mental health care system.  [. . .]  Throughout my involvement in this case, from

23

2012 to the present, I have been struck by the extreme and chronic shortage of mental

24

 

25
26
27
28

    [3]  The Court found Defendants noncompliant on 12 different measures, but for each performance measure, multiple institutions were noncompliant as follows:  PM 11 (6 prisons); PM 13 (7 prisons); PM 14 (7 prisons); PM 37 (6 prisons); PM 39 (5 prisons); PM 46 (8 prisons); PM 54 (7 prisons); PM 66 (3 prisons); PM 85 (6 prisons); PM 92 (5 prisons); PM 93 (4 prisons); PM 98 (4 prisons) .  [Doc. 1583 at 2] The sum is 68 separate findings of substantial noncompliance.    Similarly the October order's findings of noncompliance included: PM 47 (10 prisons); PM 80 (2 prisons); PM 94 (3 prisons).  [Doc. 1709 at 1]

1   health staff in ADC.  For example, in the ten full days I have spent inspecting mental

2   health care in seven ADC prisons, I do not believe I have ever seen a psychiatrist.  This is

3   extraordinary and completely unprecedented in my professional experience."); April 5,

4   2016 Declaration of Dr. Todd Wilcox, M.D., MBA, Doc. 1539 at ¶¶ 11-12 ("[I]t is clear

5   to me that the Arizona Department of Corrections healthcare staffing is below what is

6   required to meet minimum performance standards.  [. . .] Until ADC addresses its staffing

7   deficiencies head-on, prisoners will continue to suffer from neglect and inadequate care,

8   and in some cases, they will die unnecessarily.  Without sufficient staff, the system will

9   not be able to carry out basic quality review to identify and remedy systemic

10  deficiencies."); *see also* 11/9/16 Tr. at 6:11-25]  Even Defendants and their contracted

11  health care employees admit that inadequate staffing is at the root of their failure to meet

12  the benchmarks of the Stipulation.  [*See, e.g.*, Doc. 1610 at 3-4 (citing Defendants'

13  documents); Doc. 1668 at 4 (citing CQI meeting minutes); Doc. 1739 at 3-5 (citing

14  Defendants' September 2016 Staffing Report and CQI meeting minutes)]

15       But notably, none of Defendants' remedial plans contain the significant staffing

16  increases that are necessary to address the violations.  Instead, Defendants assert only that

17  their contracted vendor Corizon will increase recruiting efforts, [*see, e.g.*, Doc. 1609-1 at

18  13], or that Corizon will hire its own auditors to double-check the work of Defendants'

19  auditors.  [Doc. 1729 at 3]  This wholly inadequate response to such profound and

20  ongoing noncompliance is a sufficient basis to justify modifying the Stipulation.  *See*

21  *Armstrong v. Brown*, 768 F.3d 975, 978-79 (9th Cir. 2014) (detailing repeated

22  modifications to the remedial plan made by the district court due to defendant prison

23  system's ongoing weak or nonexistent attempts to comply with its requirements); *Ball v.*

24  *Rodgers*, No. CV 00–67–TUC–EHC, 2010 WL 797146, *8 (D. Ariz. Mar. 8, 2010)

25  (granting in part plaintiffs' motion to modify injunction where defendants failed to

26  provide adequate in-home and community-based services under the Medicaid Act); *see*

27  *also Frew*, 540 U.S. at 440 ("Federal courts are not reduced to approving consent decrees

28  and hoping for compliance.  Once entered, a consent decree may be enforced.").

Under *Rufo*, a moving party must meet a "heavy burden" for Rule 60(b)(5) relief in situations where "a party anticipated changing conditions that would make performance of the decree more onerous but nevertheless agreed to the decree." 502 U.S. at 385. In such a situation, the moving party must "convince a court that it agreed to the decree in good faith, made a reasonable effort to comply with the decree, and should be relieved of the undertaking under Rule 60(b)." *Id*. However, that principle is inapplicable here. While Plaintiffs anticipated at the time the Stipulation was entered into that some level of noncompliance by Defendants might occur, the scope, degree, and duration of the Defendants' actual noncompliance was not and could not reasonably be expected by Plaintiffs. *See Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821, 828, 834 (4th Cir. 2005) (in housing discrimination case, noting there was nothing in the record to suggest that the parties "anticipated the exceptional magnitude" of the "Defendants' non-compliance," and holding that "Defendants' near total failure to comply with the terms of the Consent Decree was an unanticipated change of circumstance that warranted modifying the Consent Decree").

An underlying assumption of the Stipulation was that the Defendants would make a good faith effort to comply.[4] Further, the parties assumed that Defendants would devote the requisite resources to do so.[5] Indeed, as the Stipulation demonstrates, the parties contemplated that Defendants would address staffing as a primary means of improving other areas of performance. For example, Defendants were required to request additional funding for staffing, but this request was not to be considered sufficient for compliance with the Stipulation. [Doc. 1185 at ¶ 7 ("Defendants shall request that the Arizona

---

[4] *See Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014), *cert. denied sub nom. Rosebrock v. Hoffman*, 135 S. Ct. 1893, 191 L. Ed. 2d 762 (2015) (noting that it is "presume[d] that a government entity is acting in good faith when it changes its policy"). Accordingly, Plaintiffs could not reasonably have anticipated the depth and breadth of Defendants' noncompliance at the time the Stipulation was executed.

[5] *See Rufo*, 502 U.S. at 392-93 ("[f]inancial constraints may not be used to justify the creation or perpetuation of constitutional violations"); *Thompson*, 404 F.3d at 829 ("Defendants would not have subjected themselves to the district court's contempt powers by agreeing to do something they knew they would not be able to do.").

1   Legislature approve a budget to allow ADC and its contracted health services vendor to
2   modify the health services contract to increase staffing of medical and mental health
3   positions. *This provision shall not be construed as an agreement by Plaintiffs that this*
4   *budgetary request is sufficient to comply with the terms of this Stipulation*.") (emphasis
5   added)] The first four performance measures address staffing directly. [Doc. 1185-1 at 8]
6   Additionally, the Stipulation contemplates that Defendants could propose remedial plans
7   that contained staffing increases where necessary, which would become court-ordered
8   once Defendants proposed such a plan. [Doc. 1185 at ¶ 36 ("[T]he Court shall not have
9   the authority to order Defendants . . . to hire a specific number or type of staff *unless*
10  *Defendants propose to do so as part of a plan to remedy a failure to comply* with any
11  provision of this Stipulation.") (emphasis added)]

12          Defendants' deliberate choice not to propose remedial plans with sufficient staffing
13  increases has the effect of shielding them from having to address staffing at all, since the
14  Court has interpreted the Stipulation as divesting it of authority to order any staffing
15  changes whatsoever absent such a plan from Defendants. In light of the broad consensus
16  among experts and repeated admissions from Defendants themselves as to the necessity of
17  staffing increases, Defendants' course of (in)action could not reasonably be expected by
18  the Plaintiffs.

19          As Plaintiffs did not anticipate this occurrence, Plaintiffs are not subject to the
20  "heavy burden" contemplated by *Rufo*. 502 U.S. at 385. However, even if Plaintiffs were
21  subject to the higher burden, they would meet it because they "agreed to the decree in
22  good faith, [gave Defendants a reasonable time] to comply [with the decree], and should
23  be relieved of the [restriction] under Rule 60(b)." *Id.*

## 2.      Modification is Necessary to Achieve the Purposes of the Stipulation.

26          Modification is necessary because the main purpose of the Stipulation—to provide
27  constitutionally adequate medical, mental health, and dental care in ADC facilities—
28  cannot be effectuated without additional health care and custody staff. Plaintiffs'

Complaint alleged, and monitoring of the Stipulation has uncovered, persistent deficiencies in medical and mental health care including inadequate monitoring and follow-up for health conditions, severe backlogs for examinations and treatment by medical professionals, lack of suicide prevention and other mental health services, and abrupt and medically inappropriate medication changes and cessations.  As the parties, experts, and the Court have all acknowledged, many of these problems cannot be alleviated without staffing increases—there simply are not enough people on the ground to provide minimally adequate care.  Modifying the Stipulation to permit the Court to impose the best and most efficient remedy—staffing increases—is the surest way to promote the overriding purpose of the Stipulation.

### 3. Continuing to Limit the Scope of the Court's Remedial Power Is Detrimental to the Public Interest.

Furthermore, enforcement of the Stipulation without the requested modification will be detrimental to the public interest.  As in *Rufo*, the Stipulation here "reach[es] beyond the parties involved directly in the suit and impact[s] on the public's right to the sound and efficient operation of its institutions."  502 U.S at 381 (internal quotation marks and citation omitted).  Assuming the parties here initially agreed upon the limitation on the Court's remedial powers in the Stipulation, it is undeniable that the provision, as construed by the Court, now impairs the effective, efficient, and lawful functioning of Arizona's public correctional institutions, to the detriment of both those inside and the general public.  Because the Court considers its hands tied, it has fashioned a remedy requiring Defendants to use outside community providers when Defendants are unable to achieve compliance inside state facilities.  [11/9/16 Tr. at 9:5-9; Doc. 1754 at 4] Defendants' objections to this order [*see* Doc. 1779] will be resolved if the Stipulation is modified to permit this Court to order that Defendants increase staffing levels.  Such a modification will both serve the purpose of providing constitutionally adequate care to people in ADC facilities, and facilitate sound operations of public institutions.

1   For these reasons, Plaintiffs have met their burden of demonstrating that changed

2   circumstances justify modification of the Stipulation.

3       **C.    Plaintiffs' Proposed Modification is Suitably Tailored to Address the**

4       **Unforeseen Obstacles to Enforcement of the Stipulation.**

5       Finally, modification is appropriate because the proposed change to the Stipulation

6   is "suitably tailored" to the changed circumstance.  *Rufo*, 502 U.S. at 383, 391 (holding

7   that the proposed modification must be "tailored to resolve the problems created by the

8   change in circumstances").  After more than four and a half years of litigation, and almost

9   two years into enforcement of the Stipulation, the Court has a clear understanding of the

10  areas of noncompliance, the challenges Defendants face in implementing lasting and

11  systemic reform, and the remedies needed to achieve compliance.  As noted above, the

12  Court has spent a significant amount of time reviewing compliance data and briefing by

13  the parties.  [*See, e.g.*, Doc. 1700; Doc. 1728; Doc. 1739; Doc. 1743][6]  The Court also has

14  reviewed expert opinions extensively documenting Defendants' noncompliance.  *See*

15  *supra* pages 9-10.  Indeed, even Defendants, in staffing reports and quality improvement

16  meeting minutes, repeatedly concede that staffing shortages hinder necessary services for

17  class members.  *See id.*

18      Additionally, the Court has given Defendants multiple opportunities to present

19  appropriate and effective remedial plans, and has found that those plans utterly fail to

20  bring Defendants into compliance with the Stipulation.  [*See* Doc. 1762 at 1, 2 (finding

21  that "Defendants have had ample opportunity to present, apply, and retool their own

22  remedial plans" and that, in light of the failure of those plans, "the Court must, pursuant to

23  the Stipulation, impose its own remediation plan to assure that the Class Plaintiffs receive

24  the Stipulation's promised care.")]

25

26  ─────────────

27  [6] Some data is provided directly to the Court and not filed on the docket.  For
    example, Plaintiffs' October status report and summary of discovery disputes also was not

28  filed on the docket, but at the Court's request was emailed directly to the Court's
    chambers and opposing counsel.

After reviewing Defendants' filings, at the most recent conference, the Court reiterated its position that staffing increases would be the "the most effective tool in [its] toolbox." [11/9/16 Tr. at 9:3]  The Court further observed:

> [T]he obvious measure for remediation that would address this specific problem, . . . is staffing issues.  It's – staffing issues are – are manifest in the minutes of the supervising meetings, and it also just is plainly a matter of common sense; that if people are not being seen as required by the performance measure, if they're not receiving the – the treatment or the actions that they're required because they're – in a certain amount of time, it's simply because there aren't enough people to do it.  And whether it's the medical providers or whether it's people in the prison who can't shuttle the inmates to the appropriate place . . . that's all staffing, seems to be manifestly what is the cause.

[*Id.* at 6:12-24]

There is no doubt that lack of health care staffing is the root of the continuing problems and that increasing the number of staff is the most straightforward, efficient and cost effective solution to Defendants' ongoing constitutional violations.  However, acting on its belief that it does not have the authority to address staffing through its orders, the Court has fashioned another remedy, using providers in the community "to provide services on an emergent basis." [11/9/16 Tr. at 9:9]  The Court noted that it "didn't think [that remedy] was going to be as efficient or as economic" as staffing changes, but that it was "the only one [the Court] ha[s] been able to conclude that could work." [*Id*. at 9:4-6]  Plaintiffs submit that modification of the Stipulation to delete the provisions of Paragraph 36 that the Court believes completely bars its power to order staffing increases is the most narrowly tailored remedy here.

Because changed circumstances necessitate modification of the Stipulation, and the requested modification is suitably tailored, the Court should grant Plaintiffs' Motion.  A proposed order is being lodged concurrently herewith.

## CONCLUSION

Plaintiffs respectfully request that the Court (a) interpret the Stipulation, according to the parties' intent, to permit the Court to order general staffing increases to address

ongoing noncompliance, and order such staffing, and (b) additionally, to resolve any future uncertainty regarding the limits of the Court's power, modify Paragraph 36 of the Stipulation pursuant to Federal Rule of Civil Procedure 60(b)(5) to remove the language that limits its power to make orders pertaining to increased staffing.

Dated:  December 1, 2016                    **PRISON LAW OFFICE**


By:  _s/ Donald Specter_
Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita Lomio (Cal. 254501)*
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
              ahardy@prisonlaw.com
              snorman@prisonlaw.com
              ckendrick@prisonlaw.com
              rlomio@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Jamelia Morgan (N.Y. 5351176)**
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:    dfathi@npp-aclu.org
              afettig@npp-aclu.org
              jmorgan@aclu.org

*Admitted *pro hac vice*.  Not admitted
  in DC; practice limited to federal
  courts.
**Admitted *pro hac vice*

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, PLLC**
P. O. Box 91398
Tucson, Arizona 85752
Telephone:  (520) 477-1475
Email:    kirstin@eidenbachlaw.com

Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:    kbrody@acluaz.org
              dpochoda@acluaz.org

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
              agerlicher@perkinscoie.com
              jhgray@perkinscoie.com

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:    cnmitchell@jonesday.com
              aamiri@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:    jlwilkes@jonesday.com

*Admitted *pro hac vice*

Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41st Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:    jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;*
*Stephen Swartz; Sonia Rodriguez; Christina*
*Verduzco; Jackie Thomas; Jeremy Smith;*
*Robert Gamez; Maryanne Chisholm;*
*Desiree Licci; Joseph Hefner; Joshua*
*Polson; and Charlotte Wells, on behalf of*
*themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By: ___s/ Maya Abela___

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:     skader@azdisabilitylaw.org
           adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone:  (520) 327-9547
Email:
   rdalyrooney@azdisabilitylaw.org
   jrico@azdisabilitylaw.org
   jross@azdisabilitylaw.org
   mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

1

## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on December 1, 2016, I electronically transmitted the above

3  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4  Notice of Electronic Filing to the following CM/ECF registrants:

5

6                           Michael E. Gottfried
                             Lucy M. Rand
7                    Assistant Arizona Attorneys General
                        Michael.Gottfried@azag.gov
8                          Lucy.Rand@azag.gov

9                            Daniel P. Struck
                           Kathleen L. Wieneke
10                             Rachel Love
                          Timothy J. Bojanowski
11                          Nicholas D. Acedo
                            Ashlee B. Fletcher
12                            Anne M. Orcutt
                              Jacob B. Lee
13                           Mark A. Bracken
                    STRUCK WIENEKE, & LOVE, P.L.C.
14                        dstruck@swlfirm.com
                          kwieneke@swlfirm.com
15                          rlove@swlfirm.com
                        tbojanowski@swlfirm.com
16                         nacedo@swlfirm.com
                          afletcher@swlfirm.com
17                         aorcutt@swlfirm.com
                            jlee@swlfirm.com
18                        mbracken@swlfirm.com

19                       *Attorneys for Defendants*

20                                          s/ D. Freouf
                                    _____
21

22

23

24

25

26

27

28