1 Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
2 **ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
3 Phoenix, Arizona 85013
Telephone: (602) 650-1854
4 Email: kbrody@acluaz.org
           dpochoda@acluaz.org
5
*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia*
6 *Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith,*
*Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner,*
7 *Joshua Polson, and Charlotte Wells, on behalf of themselves and all*
*others similarly situated*
8 **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

9 Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
10 **ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
11 Phoenix, Arizona 85034
Telephone: (602) 274-6287
12 Email: skader@azdisabilitylaw.org
           adietrich@azdisabilitylaw.org
13
*Attorneys for Plaintiff Arizona Center for Disability Law*
14 **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br>Plaintiffs, <br><br>v. <br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br>Defendants. | No. CV 12-00601-PHX-DKD <br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT REGARDING THE SUBCLASS DEFINITION** |

LEGAL133737841.1

1  Plaintiffs file this response to Defendants' Notice Regarding the Sub-Class
2  Definition (Doc. 1775) in response to the Court's Order dated November 8, 2016
3  (Doc. 1745). This dispute arises from Defendants' refusal to produce the healthcare and
4  institutional records of two subclass members, one housed in Florence-Central Unit and
5  one in Eyman-SMU I. [*See* Declaration of Amy Fettig in Support of Plaintiffs' Response
6  to Defendants' Statement Regarding the Subclass Definition, Ex. A]  The Stipulation
7  provides that each month Plaintiffs may request and Defendants shall provide "a
8  maximum of five (5) individual subclass Members' health care and institutional records."
9  [Doc. 1185, ¶ 29]  Defendants refuse to produce these records because they claim a
10 change in classification status—not housing status—excludes the two plaintiffs from the
11 subclass. Defendants misconstrue the definition of the subclass and should be ordered to
12 produce these records without further delay[1].

## I. DEFENDANTS MISCONSTRUE THE SUBCLASS DEFINITION

The Court crafted the subclass definition in its March 6, 2013 Class Certification Order. [Doc. 372 at 22]  This same definition was used in the Stipulation. [(Doc. 1185 at 1]  It is axiomatic that "[t]he interpretation of a settlement agreement is governed by principles of state contract law." *Botefur v. City of Eagle Point*, 7 F.3d 152, 156 (9th Cir. 1993) (*quoting Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1990)).  The starting point for interpreting a contract is the plain meaning of the contractual language, and courts may rely on dictionary definitions to construe words contained in a contract. *See, e.g.*, *Poland v. Martin*, 761 F.2d 546, 548 (9th Cir. 1985).  Likewise, the starting point for interpreting a court order is the plain meaning of the text. *In re Cement and Concrete Antitrust Litig.*, 817 F.2d 1435, 1442-43 (9th Cir. 1987) (starting with the plain language of the class definition in reviewing a lower court's interpretation of an existing class definition), *vacated on other grounds*, 940 F.2d 1583 (9th Cir. 1991).

---

[1] Although Plaintiffs have electronic access to the class medical records through eOMIS, no such access is available for the plaintiffs' institutional files, also known as the "MRF".

The definition of the subclass here is very straightforward:

> The subclass is defined as "All prisoners who are now, or will in the future be, subjected by the ADC to isolation, defined as confinement in a cell for 22 hours or more each day *or* confinement in the following housing units: Eyman-SMU I; Eyman-Browning Unit; Florence-Central Unit; Florence-Kasson Unit; or Perryville-Lumley Special Management Area.

[Stipulation ¶ 3 (emphasis added) (Doc. 1185)] Defendants' filing alters this definition by substituting the word "of" for the word "or" italicized above. [Defs.' Br. at 1 (Doc. 1775)] The word "or" in this definition is central to its meaning. Here "or" is "used as a function word to indicate an alternative <coffee or tea> <sink or swim>." *See* Merriam-Webster, http://www.merriam-webster.com/dictionary/or (last visited Nov. 29, 2016). Interpreting the plain language of the Stipulation, the subclass includes all prisoners who are **either** "subjected by the ADC to isolation, defined as confinement in a cell for 22 hours or more each day" **or** those prisoners who are subject to "confinement in the following housing units: Eyman-SMU I; Eyman-Browning Unit; Florence-Central Unit; Florence-Kasson Unit; or Perryville-Lumley Special Management Area." The subclass is therefore defined as both prisoners subjected to certain conditions (isolation) and those housed in the enumerated units.[2] Plaintiffs are therefore entitled to both the disputed records because both prisoners are housed in the enumerated units, Florence-Central and Eyman-SMU I.

## II. DEFENDANTS PROVIDE INSUFFICIENT EVIDENCE REGARDING CONDITIONS IN CLOSE CUSTODY

Defendants argue that they do not have to produce the plaintiffs' records because both are now classified as "close custody" rather than "maximum custody." [Defs.' Br. at 1-11) (Doc. 1775)] As discussed above, this argument misconstrues the actual subclass definition. It is also misleading. First, although one of the plaintiffs in question is at

---

[2] Defendants claim that Florence-Central CB 2 already housed prisoners in closed custody at the time the Stipulation was negotiated. [Defs.' Br. at 2] Even if this was the case, CB 2 was not carved out of the Stipulation's subclass definition which clearly includes all of Florence-Central.

LEGAL133737841.1 -2-

1 Eyman-SMU I, Defendants have only submitted evidence to the court regarding Florence-
2 Central housing units CB 1, CB 3, and CB 4. [*Id*.] Defendants provide no evidence that
3 prisoners held at SMU I are classified to close custody.

4 Second, although Defendants produce a laundry list of possible out-of-cell time for
5 close custody prisoners at Florence-Central that equals 50.5 (non-SMI) or 60.5 (SMI)
6 hours out-of-cell, they do not indicate the number of prisoners who are actually able to
7 take advantage of those hours. Defendants indicate that there are 578 cells classified as
8 close custody at Florence Central, but they do not indicate how many prisoners are
9 actually allowed to participate in education classes, library, horticulture class, or other
10 programming. [*Id*. at 3-8] Are all 578 prisoners able to participate in horticulture class or
11 are there just a few spots? We do not know. Also, many of the activities listed, such as
12 visitation, religious services, trips to commissary, do not apply to all prisoners. [*Id*.]
13 Some prisoners have no visitors, some have no money for commissary, and others are not
14 part of a religious group.

15 Although close custody clearly has some improved aspects to maximum custody,
16 those in close custody are guaranteed only 15.5 hours out-of-cell per week. [Defs.' Br.
17 at 2] This is quite a bit different than the 50.5 Defendants showcase in their brief—and
18 only 90 minutes a week different than isolation as defined by the Stipulation as
19 "confinement in a cell for 22 hours or more each day." [Stipulation ¶ 3 (Doc. 1185)]

20
21 **III. DEFENDANTS ASK THE COURT TO BASE ITS RULING ON A POSSIBLE POLICY CHANGE**

22 Defendants ask this court to find that: "neither the definition of the Subclass nor
23 the Stipulation apply to close custody inmates housed at Florence Central CB 1, 3 and 4,
24 *or any maximum custody facility* where the time out-of-cell for close custody inmates in
25 no way, shape or form, can be defined as "isolation" or confinement to a cell for 22 or
26 more hours a day." [Defs.' Br. at 13 (emphasis added)] As already noted, Defendants cite
27 no evidence whatsoever for any facility other than Florence-Central CB 1, 3, and 4, and
28 appear to base this overly-broad claim on a "maximum custody reduction plan" cited for

1  the first time in their brief. [*Id*. at 11-13]  The actual plan is not produced.  Instead, the
2  brief is peppered with conjecture rather than concrete actions: "Perryville-Lumley SMU
3  (Yard 30) (condemned row and Yard 30 inmates for consideration)"; "…policy changes
4  are under consideration to allow for inmates serving life sentences to be considered for
5  close custody housing in maximum custody units…"; "Focus will be applied to inmates
6  with less than six months remaining…"; "…consideration will be given for inmates
7  designated as SMI or have [sic] MH scores of 3 or above to participate in close custody by
8  clustering these populations in pods…"  [*Id.*]  Defendants provide no evidence of when
9  these changes might occur; what the changes will actually be; or how many prisoners they
10 might actually impact.

11       While reducing the number of prisoners in isolation or solitary confinement is an
12 important and necessary goal, and Plaintiffs agree with Defendants that such actions are
13 part of a "national trend" (Defs.' Br. at 12), such conjectural plans and policies do not
14 obviate the fact that the plain language of the Stipulation includes a sub-class that is
15 defined both in terms of functional conditions and housing unit.  *See* Section I above.
16 Moreover, as in the case of a claim for mootness, conjectural changes to policy and
17 practice, or those that are of recent vintage or unsupported by evidence are not sufficient
18 to support court action.  *See, e.g.*, *Gluth v. Kangas*, 951 F.2d 1504, 1507 (9th Cir. 1991)
19 (ADC's claim that mere promulgation of a new legal access policy mooted prisoners
20 claims was "overreaching;" case was not moot where ADC "provided no facts to support
21 its claim that the inmate access situation had changed at all"); *Casey v. Lewis*, 834 F.
22 Supp. 1477, 1547 (D. Ariz. 1993) (where pilot policies could be eliminated or not
23 expanded state-wide or staff positions eliminated, prisoners' medical/dental claims not
24 mooted by ADC's plan developed since the filing of the action).

25       For these reasons, the Court should order the Defendants to comply with the terms
26 of the Stipulation and its definition of the subclass and produce the requested subclass
27 records at Florence Central and Eyman-SMU I.

28

| | |
|---|---|
| Dated: December 1, 2016 | **ACLU NATIONAL PRISON PROJECT** |

By: ___s/ Amy Fettig___
David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Jamelia Natasha Morgan (N.Y. 5351176)**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email: dfathi@aclu.org
afettig@aclu.org
jmorgan@aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org
dpochoda@acluaz.org

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email: dspecter@prisonlaw.com
ahardy@prisonlaw.com
snorman@prisonlaw.com
ckendrick@prisonlaw.com
rlomio@prisonlaw.com

*Admitted *pro hac vice*

| | |
|---|---|
| 1 | Daniel C. Barr (Bar No. 010149) |
| 2 | Amelia M. Gerlicher (Bar No. 023966) |
|   | John H. Gray (Bar No. 028107) |
| 3 | **PERKINS COIE LLP** |
|   | 2901 N. Central Avenue, Suite 2000 |
| 4 | Phoenix, Arizona 85012 |
|   | Telephone:  (602) 351-8000 |
| 5 | Email:     dbarr@perkinscoie.com |
|   |           agerlicher@perkinscoie.com |
| 6 |           jhgray@perkinscoie.com |

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:     dbarr@perkinscoie.com
           agerlicher@perkinscoie.com
           jhgray@perkinscoie.com

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, PLLC**
P. O. Box 91398
Tucson, Arizona 85752
Telephone:  (520) 477-1475
Email:     kirstin@eidenbachlaw.com

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:     cnmitchell@jonesday.com
           aamiri@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:     jlwilkes@jonesday.com

*Admitted *pro hac vice*

Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:     jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**


By: <u>s/ Maya Abela</u>
Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
rdalyrooney@azdisabilitylaw.org
jrico@azdisabilitylaw.org
jross@azdisabilitylaw.org
mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2016, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
Mark A. Bracken
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
mbracken@swlfirm.com

*Attorneys for Defendants*

                                          s/ D. Freouf