Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org
       dpochoda@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
       adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br>Plaintiffs, <br><br>v. <br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br>Defendants. | No. CV 12-00601-PHX-DKD <br><br>**PLAINTIFFS' STATUS UPDATE IN RESPONSE TO COURT'S ORDER (DOC. 1754)** |

LEGAL133750401.1

In its November 10, 2016 order, this Court ordered the parties to provide updates regarding the following issues that it thought may have been outstanding:

- Performance Measure 85 and reclassification of inmates from MH-3D to MH-3E;
- Maximum custody notebook document production issues;
- Production of documents demonstrating Defendants' response to raw CGAR data; and
- Status of "Access to Videos & Electronic Medical Records" (Doc. 1506) and the provision of paper medical records.

[Doc. 1754 at 3]

The Court further ordered Plaintiffs to respond to Defendants' proposed reporting procedures (Doc. 1703) for demonstrating compliance with Paragraphs 12, 14, and 15 of the Stipulation. [Doc. 1754 at 3] Plaintiffs provided the Court with their position regarding Paragraphs 12, 14, and 15 on November 15, 2016.[1] [*See* Doc. 1755 at 21-22}

## I. DEFENDANTS' INACCURATE COMPLIANCE FIGURES

As an initial matter, Plaintiffs wish to bring to the Court's attention that Defendants have asserted compliance levels for performance measures in filings with the Court that their own documentation contradicts. Furthermore, they have now started "re-issuing" CGAR reports from past months where they were noncompliant, that now show rates of compliance higher than previously reported. As detailed in Plaintiffs' November 15, 2016 Statement, (Doc. 1755), Defendants unilaterally changed their monitoring methodology in ways that substantially and artificially inflate their compliance scores for multiple performance measures, and calls into question the accuracy of the results compared to past months. [*See id*. at 7-16] Defendants have conceded that they have made these changes, but see no problem in this profound change in their methodology, and the impact it has on assessing the validity of the new results. [*See* Doc. 1743 at 4; Doc. 1783 at 5-6]

For example, in their November 7, 2016 Supplemental Status Report Regarding August 2016 Compliance Rates, (Doc. 1743), Defendants represented to the Court that

---

[1] Defendants filed a Response to Plaintiffs' Statement Regarding the Monitoring Guide on November 29, 2016. [*See* Doc. 1782 at 17-18]

LEGAL133750401.1

1  their compliance rate with PM 14 at Florence prison in the month of July was 95%.[2]
2  [Doc. 1743 at 8]  However, the CGARs that Defendants had provided and were available
3  for the month of July 2016 at Florence showed a compliance rate of 7%.  [*See* Declaration
4  of Corene Kendrick ("Kendrick Decl."), filed herewith, Ex. 1 at ADCM604950-51; *see*
5  *also* Doc. 1739 at 9; Doc. 1740-1 at 2]   Defendants previously reported this 7%
6  compliance rate for Florence for the month of July to the Court, (Doc. 1700 at 3), but
7  asserted, without any evidentiary proof or a sworn declaration, that this shockingly low
8  rate of compliance at Florence was due to "a documentation error because a log was not
9  filled out correctly."  [*Id.*]  Two weeks after filing their Supplemental Status Report with
10 the Court showing 95% compliance at Florence, Counsel for Defendants provided
11 Plaintiffs on November 18, 2016 with a "Reissued" CGAR for July 2016 for PM 14 at
12 Florence, which now showed 95% compliance.   [Kendrick Decl. ¶ 2, Ex. 1 at
13 ADCM662686-87]  The Reissued CGAR had deleted the previous entry of 8/30/16 10:36
14 a.m. by monitor Erin Barlund, with a new entry but with the exact same date and time.
15 [*Id.* ¶ 2, *compare* Ex. 1 at ADCM662686-87 *with* Ex. 1 at ADCM603950-51]  Normally
16 when Defendants' monitors enter information for the same CGAR measure on different
17 dates and/or times, there are separate entries.  [Kendrick Decl. ¶ 3, Ex. 2 at ADCM585099
18 (June 2016 Lewis report for PM 96 that shows two separate entries for the same
19 performance measure, entered at different times by different monitors)]  It is unclear why
20 the "recalculation" of information months after Ms. Barlund's first entry would not result
21 in separate date/time stamped entries.

22     In this same Supplemental Status Report, Defendants also reported high rates of
23 compliance with PM 66, which requires that medical providers see infirmary patients at a

---

[2] The Court found Defendants noncompliant with PM 14 at seven prisons, including Florence. [Doc. 1583 at 2] PM 14 requires that "Any refill for a chronic care or psychotropic medication that is requested by a prisoner between three and seven business days prior to the prescription running out will be completed in a manner such that there is no interruption or lapse in medication.

minimum of every 72 hours. [Doc. 1743 at 12-13] Specifically, Defendants asserted the following rates of compliance for this performance measure in 2016:

| Facility | Jan. | Feb. | Mar. | April | May | June | July | Aug. |
|---|---|---|---|---|---|---|---|---|
| Florence | 90 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Lewis | 100 | 86 | 80 | 70 | 100 | 100 | 100 | 100 |
| Tucson | 80 | 80 | 70 | 90 | 80 | 80 | 70 | 90 |

[*Id.* at 12]

However, Defendants' own CGARs directly contradict these rosy numbers. [*See* Kendrick Decl. Ex. 3 (Florence CGARs for PM 66); Ex. 4 (Lewis CGARs for PM 66); Ex. 5 (Tucson CGARs for PM 66)] As detailed in Plaintiffs' Statement, Defendants continue to be noncompliant on this performance measure. [Doc. 1739 at 12] The chart below is a duplicate of the one previously filed by Plaintiffs, [*id.*] but with different shading. In the chart below, the highlighted boxes indicate the entries for which Defendants offered the Court wholly different data than what was in their CGARs:

| Facility | Jan | Feb | Mar. | April | May | June | July | Aug. |
|---|---|---|---|---|---|---|---|---|
| Florence | 90 | 90 | 90 | 80 | 50 | 70 | 80 | 100 |
| Lewis | 100 | 80 | 80 | 70 | 30 | 30 | 60 | 90 |
| Tucson | 80 | 80 | 70 | 80 | 30 | 40 | 20 | 20 |

[Doc. 1739 at 12, *see also* Kendrick Decl. Exs. 3-5]

Finally, in their November 7, 2016 Supplemental Status Report, (Doc. 1743), Defendants represented to the Court that the following were the compliance rates for Performance Measure 98 at ASPC-Winslow:

    January 2016:    100%

    February 2016:    100%

    March 2016:    87%

| | | |
|---|---|---|
| 1 | April 2016: | 100% |
| 2 | May 2016: | 100% |

[Doc. 1743 at 16]

These representations were false.  According to Defendants' own CGAR reports, the actual compliance levels were as follows:

| | | |
|---|---|---|
| | January 2016: | 64.29% |
| | February 2016: | 81.25% |
| | March 2016: | 63.16% |
| | April 2016: | 55.56% |
| | May 2016: | 50% |

[Kendrick Decl. Ex. 6]  In other words, rather than being compliant for all five months as Defendants claimed, Winslow was *non*compliant for four out of five months.[3]

These are but the latest examples of Defendants' practice of repeatedly providing falsely inflated compliance figures to the Court.  [*See, e.g.*, Doc. 1680 (pointing out multiple false claims of compliance); Doc. 1739 at 15-17 (Defendants counted cellfront encounters as satisfying the requirement that a patient be "seen," in violation of the Court's orders and the Stipulation)][4]

**II.   PM 85 AND RECLASSIFICATION OF INMATES FROM MH-3D TO MH-3E**

Defendants have produced some, although not all, of the documents requested by Plaintiffs regarding Defendants' recent reclassification of approximately 1,000 prisoners from MH-3D to MH-3E.  With regard to Performance Measure 85, it remains Plaintiffs'

---

[3] PM 98 requires that "[m]ental Health HNRs [Health Needs Request forms] shall be responded to within the timeframes set forth in the Mental Health Technical Manual (MHTM) (rev. 4/18/14), Chapter 2, Section 5.0."  [Doc. 1185-1 at 15]  In the CGAR reports, Performance Measure 98 is also referred to as Mental Health Performance Measure 26.

[4] Plaintiffs further note that Defendants' compliance figures for PM 98 were calculated using a methodology that the Court has found to be inconsistent with the requirements of the Stipulation.  [*See* Doc. 1673 at 8]

1  position that Defendants' monitoring methodology is inconsistent with the Stipulation and
2  the Court's orders. [*See* Doc. 1755 at 18]

### III.  MAXIMUM CUSTODY NOTEBOOK DOCUMENT PRODUCTION ISSUES

#### A.  Max Custody Notebooks

Plaintiffs attach as Exhibit A to the Declaration of Amy Fettig ("Fettig Decl."), filed herewith, an updated chart of the missing production of Max Custody Performance Measure monitoring documents from March 2015 to June 2016 that Defendants have not yet produced. [Fettig Decl. Ex. A] Defendants previously agreed to produce all missing maximum custody documents by October 14, 2016 during the hearing before the Court on August 26, 2016. It is Plaintiffs' position that any findings of compliance based on documents Defendants failed to produce should be presumptively found non-compliant.

In order to keep the Court apprised of ongoing production issues, Plaintiffs also attach a chart of missing production of Max Custody Performance Measure monitoring documents from July 2016 to the present that Defendants have not yet produced. [Fettig Decl. Ex. B]

#### B.  Missing Use of Force Videos & Conflicting Statements from Defendants

Problems with the use of force videos and compliance findings have recently come to light. During a conference call with Defendants on October 28, 2016, Defendants' counsel Lucy Rand stated that some of the videos produced were not actually relied upon in the monitoring process. In particular, Ms. Rand disputed that any stationary/security camera footage would have been viewed by the monitor. At the same time, Carson McWilliams, Division Director for Offender Operations, indicated that such footage would be viewed by the monitor if it existed. As a result of this admission and contradictory statements by the Defendants, on November 3, Plaintiffs sent a letter to Defendants requesting that they audit the videos produced to the Plaintiffs and provide a signed declaration as to which videos were actually used in to make previously reported CGAR compliance findings. Plaintiffs also requested that in the future, Defendants

1 produce any use of force videos (hand-held and/or stationary/security) actually relied upon by monitors in making CGAR compliance findings. [*See* Fettig Decl. Ex. C] Defendants did not respond to this letter, so Plaintiffs sent another letter reiterating this request and detailing problems with use of force video production on November 10. [*See* Fettig Decl. Ex. D] Plaintiffs have received no response to either letter.

Defendants' counsel's admission and the subsequent contradictory statements made to Plaintiffs raise grave concerns about the integrity of the documents produced and the monitoring process itself. These concerns have increased with the long-delayed but now mostly complete production of the use of force documents through June 2016. Now that Plaintiffs' counsel has been able to review almost all of the documents for that review period, inexplicable contradictions in the record have arisen. In Plaintiffs' correspondence with Defendants on November 10 was enclosed a chart entitled "Use of Force Incidents – Production Issues," where inconsistencies and contradictions in the document and video production were clearly identified. [*See* Fettig Decl. Ex. E]

Plaintiffs' counsel's review of all the records found approximately 133 use of force incidents where ADC records are inconsistent as to whether or not a video was taken during a Use of Force incident.[5] [*See* Fettig Decl. Ex. E (identifying by color code: Use of force incidents where documentation references a video but no video is produced (yellow); documentation says there was no video but a video was produced (pink); documentation included stationary video footage but based on a review of that footage/reports there is handheld footage available (blue); and incidents where we are awaiting documentation (red))]

In some cases, ADC records indicated that a video corresponding to a particular use of force incident was available, but ADC did not produce one or more of the videos related to the use of force incident. [*See* Fettig Decl. Ex. E at 1] In other cases ADC's own records are inconsistent, for example, where the supporting use of force

---

[5] Plaintiffs are still awaiting some documentation so a firm number is not possible at this time.

LEGAL133750401.1 -6-

1 documentation included conflicting statements on whether the use of force incident was
2 captured on video. [*Id.* at 2]  In other cases ADC back-up documentation stated that a
3 particular use of force video *was not available*, but ADC then produced a video. [*Id.*]  In
4 still other cases, ADC records stated that video footage from a handheld camera *was*
5 *available*, but then failed to produce the handheld video camera footage. [*Id.*]

6 The primary purpose of producing records, documentation, and use of force videos
7 is to allow Plaintiffs' counsel the opportunity to review these materials to determine
8 whether the monitor made the appropriate compliance determinations.  Producing videos
9 that were never reviewed by the monitors for compliance determinations—or failing to
10 produce videos that actually were relied upon—undermines Plaintiffs' ability to
11 accurately assess the CGAR compliance findings.

12 Given the voluminous and baffling problems with the use of force compliance
13 production, and the statements of Defendants' own counsel, it is Plaintiffs' position that
14 that Defendants must audit the videos produced to the Plaintiffs and provide a signed
15 declaration as to which videos were actually used to support the CGAR compliance
16 findings, and determine if any use of force videos were not produced to Plaintiffs that
17 were part of the compliance findings.

### IV. PRODUCTION OF DOCUMENTS DEMONSTRATING DEFENDANTS' RESPONSE TO RAW CGAR DATA

20 Plaintiffs have requested "all documents reflecting or discussing errors,
21 inaccuracies, or inconsistencies in Defendants' or Corizon's monitoring of compliance
22 with the Stipulation's Performance Measures" pursuant to Paragraph 29 of the Stipulation.
23 The parties have discussed the issue with the Court in past hearings, and at the Court's
24 direction have communicated about the issue.

25 Defendants produced on November 22, 2016 the "CGAR-CAP Rebuttals" in their
26 possession for the months of September through November 2016. [Kendrick Decl. ¶ 8]
27 Throughout November, the parties negotiated about searching the email of Defendant
28 Pratt and Dr. Nicole Taylor. [*Id.* ¶ 10]  The parties exchanged their proposed search

1  terms. [*Id.* Exs. 7-8] Plaintiffs agreed to have Defendants use their shorter list of key
2  word search terms in an initial search, but that Plaintiffs reserved the right to request
3  additional search terms be used in a subsequent search if the quick search didn't result in
4  meaningful responses. [*Id.*] Defendants estimated that they would be able to provide the
5  documents uncovered from their shorter list of search words by December 16, 2016. [*Id.*
6  Ex. 9]

**V.  STATUS OF "ACCESS TO VIDEOS & ELECTRONIC MEDICAL RECORDS" (DOC. 1506) AND THE PROVISION OF PAPER MEDICAL RECORDS**

With regard to videos, see Part III above.

With regard to paper medical records, on October 21, 2016, the parties met and conferred and agreed that Defendants would continue to produce Bates-stamped PDFs of the complete records of deceased prisoners along with the other death records. [Kendrick Decl. ¶ 11, Ex. 10 at 2] Plaintiffs reserved the right to request a Bates-stamped PDF of the complete record of a living prisoner, on a monthly basis, but promised to make such requests rare and reasonable. [*Id.*] In the October and November 2016 monthly document requests, Plaintiffs have not requested Bates-stamped paper medical records of any living prisoner from Defendants. [*Id.* ¶ 12]

With regard to electronic health records for Plaintiffs' consultants/experts, Plaintiffs requested that the parties meet and confer the week of December 5, to discuss that issue as well as additional log-ins for employees of Plaintiffs' counsel. [Kendrick Decl. ¶ 13, Ex. 10] Plaintiffs hope the parties will be able to update the Court on this discussion, and report progress on this matter at the December 14, 2016 status conference.

. . .
. . .
. . .
. . .
. . .
. . .

| | | |
|---|---|---|
| 1 | Dated: December 2, 2016 | **PRISON LAW OFFICE** |
| 2 | | |
| 3 | | By: _s/ Corene Kendrick_<br>Donald Specter (Cal. 83925)*<br>Alison Hardy (Cal. 135966)* |
| 4 | | Sara Norman (Cal. 189536)*<br>Corene Kendrick (Cal. 226642)* |
| 5 | | Rita Lomio (Cal. 254501)*<br>1917 Fifth Street |
| 6 | | Berkeley, California 94710<br>Telephone: (510) 280-2621 |
| 7 | | Email: dspecter@prisonlaw.com<br>ahardy@prisonlaw.com |
| 8 | | snorman@prisonlaw.com<br>ckendrick@prisonlaw.com |
| 9 | | rlomio@prisonlaw.com |
| 10 | | *Admitted *pro hac vice* |
| 11 | | David C. Fathi (Wash. 24893)*<br>Amy Fettig (D.C. 484883)** |
| 12 | | Jamelia Natasha Morgan (N.Y. 5351176)** |
| 13 | | **ACLU NATIONAL PRISON PROJECT** |
| 14 | | 915 15th Street N.W., 7th Floor<br>Washington, D.C. 20005 |
| 15 | | Telephone: (202) 548-6603<br>Email: dfathi@npp-aclu.org |
| 16 | | afettig@npp-aclu.org<br>jmorgan@aclu.org |
| 17 | | |
| 18 | | *Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts. |
| 19 | | **Admitted *pro hac vice* |
| 20 | | Kirstin T. Eidenbach (Bar No. 027341)<br>**EIDENBACH LAW, PLLC** |
| 21 | | P. O. Box 91398<br>Tucson, Arizona 85752 |
| 22 | | Telephone: (520) 477-1475<br>Email: kirstin@eidenbachlaw.com |
| 23 | | |
| 24 | | Kathleen E. Brody (Bar No. 026331)<br>Daniel Pochoda (Bar No. 021979) |
| 25 | | **ACLU FOUNDATION OF ARIZONA** |
| 26 | | 3707 North 7th Street, Suite 235<br>Phoenix, Arizona 85013 |
| 27 | | Telephone: (602) 650-1854<br>Email: kbrody@acluaz.org |
| 28 | | dpochoda@acluaz.org |

LEGAL133750401.1 -9-

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:  dbarr@perkinscoie.com
         agerlicher@perkinscoie.com
         jhgray@perkinscoie.com

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email:  cnmitchell@jonesday.com
         aamiri@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email:  jlwilkes@jonesday.com

*Admitted *pro hac vice*

Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3498
Email:  jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By:  *s/ Maya Abela*
    Sarah Kader (Bar No. 027147)
    Asim Dietrich (Bar No. 027927)
    5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
    Telephone:  (602) 274-6287
    Email:    skader@azdisabilitylaw.org
              adietrich@azdisabilitylaw.org

    Rose A. Daly-Rooney (Bar No. 015690)
    J.J. Rico (Bar No. 021292)
    Jessica Jansepar Ross (Bar No. 030553)
    Maya Abela (Bar No. 027232)
    **ARIZONA CENTER FOR DISABILITY LAW**
    177 North Church Avenue, Suite 800
    Tucson, Arizona 85701
    Telephone:  (520) 327-9547
    Email:
        rdalyrooney@azdisabilitylaw.org
        jrico@azdisabilitylaw.org
        jross@azdisabilitylaw.org
        mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

# **CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2016, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
Mark A. Bracken
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
mbracken@swlfirm.com

*Attorneys for Defendants*

                                                       s/ D. Freouf