## Index of Exhibits to Declaration
## of Amy Fettig

**Exhibit A**    Chart of missing production of Max Custody Performance Measure monitoring documents from March 2015 to June 2016 **(FILED UNDER SEAL)**

**Exhibit B**    Chart of missing production of Max Custody Performance Measure monitoring documents from July 2016 to present **(FILED UNDER SEAL)**

**Exhibit C**    November 3, 2016 letter from A. Fettig to L. Rand and R. Love with email cover sheet (excluding attached draft of monitoring guide)

**Exhibit D**    November 10, 2016 letter from A. Fettig to L. Rand with email cover sheet

**Exhibit E**    Chart entitled "Use of Force Incidents – Production Issues," sent with the letter dated November 10, 2016 from A. Fettig to L. Rand **(FILED UNDER SEAL)**

# EXHIBIT A
# FILED UNDER SEAL

# EXHIBIT B
# FILED UNDER SEAL

# **EXHIBIT C**

# Amy Fettig

| | |
|---|---|
| **From:** | Amy Fettig |
| **Sent:** | Thursday, November 03, 2016 11:18 AM |
| **To:** | 'Rand, Lucy'; Elaine Percevecz; Corene Kendrick; David Fathi; Don Specter; Alison Hardy (ahardy@prisonlaw.com); skader@azdisabilitylaw.org; rlomio@prisonlaw.com; Maya Abela; Jennifer Onka; Megan Lynch; laura@prisonlaw.com |
| **Cc:** | Zuerlein, Ashley; Munoz, Lupe; RICHARD PRATT (rpratt@azcorrections.gov); Dr. Nicole Taylor; Dan Struck; Tim Bojanowski; Parsons Team |
| **Subject:** | RE: PARSONS - Draft Monitoring Guide - Max Custody |
| **Attachments:** | 2016.03.11 Ltr to Defs - Monitoring Guide - Max Custody.pdf; ADC Monitoring Guide - Max Custody Performance Measures - DRAFT - 10-31-16.docx |

Dear Counsel:

I am attaching a letter regarding our call on October 28 discussing the draft Monitoring Guide max custody measures. I am also attaching a redline of Defendants' 10/21 draft of max custody performance measures (MC PM) ##1-8. The draft of MC PM #9 (use of force) is based on Plaintiff's re-draft of the measure and incorporates issues discussed on October 28.

We look forward to discussing more at our scheduled call on November 7 at 1 pm/3 pm. We can use this number:

(866) 962-6634
participant: 90541073#

Amy

---

**From:** Rand, Lucy [mailto:Lucy.Rand@azag.gov]
**Sent:** Friday, October 28, 2016 1:07 PM
**To:** Amy Fettig; Elaine Percevecz; Corene Kendrick; David Fathi; Don Specter; Alison Hardy (ahardy@prisonlaw.com); skader@azdisabilitylaw.org; rlomio@prisonlaw.com; Maya Abela; Jennifer Onka; Megan Lynch; laura@prisonlaw.com
**Cc:** Zuerlein, Ashley; Munoz, Lupe; RICHARD PRATT (rpratt@azcorrections.gov); Dr. Nicole Taylor; Dan Struck; Tim Bojanowski; Parsons Team
**Subject:** RE: PARSONS - Draft Monitoring Guide Revised 10-21-16

Somehow there was confusion and we were on a different call. We all are calling in now.

Thank you.



Lucy M. Rand, Assistant Attorney General
ARIZONA ATTORNEY GENERAL'S OFFICE
**Direct: 602-542-7683**
Secretary: 602-542-2470
Lucy.Rand@azag.gov

NOTICE: This e-mail, including attachment(s), is the property of the Office of the Arizona Attorney General and contains information that may be PRIVILEGED, CONFIDENTIAL, or otherwise exempt from disclosure by law. It is intended only for the recipients to whom it is addressed. If you receive this communication in error, immediately notify the sender at the e-mail address shown above or call (602) 542-2470, and delete the original message. Thank you.

---

**From:** Amy Fettig [mailto:afettig@aclu.org]
**Sent:** Friday, October 28, 2016 10:06 AM

**To:** Elaine Percevecz; Corene Kendrick; David Fathi; Don Specter; Alison Hardy (ahardy@prisonlaw.com); skader@azdisabilitylaw.org; rlomio@prisonlaw.com; Maya Abela; Jennifer Onka; Megan Lynch; laura@prisonlaw.com
**Cc:** Rand, Lucy; Zuerlein, Ashley; Munoz, Lupe; RICHARD PRATT (rpratt@azcorrections.gov); Dr. Nicole Taylor; Dan Struck; Tim Bojanowski; Parsons Team
**Subject:** RE: PARSONS - Draft Monitoring Guide Revised 10-21-16

Hi All,

We're on the line for the Monitoring Guide discussions today at 10 am. Here is the number again, in case you need it:

(866) 962-6634
participant: 90541073#

---

**From:** Elaine Percevecz [mailto:EPercevecz@swlfirm.com]
**Sent:** Wednesday, October 26, 2016 1:05 PM
**To:** Corene Kendrick; David Fathi; Don Specter; Amy Fettig; Alison Hardy (ahardy@prisonlaw.com); skader@azdisabilitylaw.org; rlomio@prisonlaw.com; Maya Abela; Jennifer Onka; Megan Lynch; laura@prisonlaw.com
**Cc:** Lucy Rand; Zuerlein, Ashley (Ashley.Zuerlein@azag.gov); lupe.munoz@azag.gov; RICHARD PRATT (rpratt@azcorrections.gov); Dr. Nicole Taylor; Dan Struck; Tim Bojanowski; Parsons Team
**Subject:** PARSONS - Draft Monitoring Guide Revised 10-21-16

Counsel:

At Tim Bojanowski's request, I have attached the Word version of the October 21, 2016 draft Monitor Guide, a PDF of which was sent to you on that date.

Sincerely,

Elaine



**Elaine Percevecz**
Legal Assistant to Timothy J. Bojanowski
**STRUCK WIENEKE & LOVE, PLC**
3100 W. Ray Road | Suite 300
Chandler, AZ 85226

P: (480) 420-1619 | epercevecz@swlfirm.com | www.swlfirm.com

---

This electronic mail transmission contains information from the law firm Struck Wieneke & Love, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 420-1600. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

LEGAL DEPARTMENT
NATIONAL PRISON PROJECT



## Via Email Only

November 3, 2016

Ms. Lucy Rand
Office of Arizona Attorney General
1275 W. Washington
Phoenix AZ 85007
Lucy.Rand@azag.gov

Rachel Love
Struck, Wieneke & Love, PLC
3100 West Ray Road
Chandler, AZ 85226
rlove@swlfirm.com

AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

**RE: Maximum Custody Performance Measures, Monitoring Methodology, October 28, 2016 Call,** *Parsons v. Ryan*, **Civ-12-00601-DKD**

Dear Counsel:

This letter serves as a follow-up to the conference call between Plaintiffs' counsel and Defendants held on Friday, October 28, 2016, during which the Maximum Custody Performance Measures (MC PM) were discussed. The parties discussed proposed substantive edits to MC PM Number 9 at length. Because ADC staff had not reviewed the edits to MC PM #9 produced by Plaintiffs, the parties agreed to continue discussions regarding methodology after that review.

Plaintiffs also indicated that they would provide a line edit of Defendants' October 21, 2016 version of MC PM ##1-8 in order to expedite the process. That line edit is attached, along with a slightly updated version of MC PM #9 based on our October 28 call. These have been combined into one Word document for convenience.

In addition to specific edits on the MC PM Monitoring Guide, Plaintiffs' counsel also writes to express our views and raise objections with respect to statements Defendants made regarding the definition, scope, and related methodology that govern monitoring for Maximum Custody Performance Measure No. 9.

1. *Definition Scope of Stipulation ¶ 27(a)-(e)*

Paragraph 27 of the Stipulation provides as follows: "Defendants shall maintain the following restrictions on the use of pepper spray and other chemical agents on any maximum custody prisoner classified as SMI, and in

the following housing areas: Florence-CB-1 and CB-4; Florence-Kasson (Wings 1 and 2); Eyman-SMU I (BMU); Perryville-Lumley SMA; and Phoenix (Baker, Flamenco, and MTU)."

On the October 28th conference call, Defendants informed Plaintiffs' counsel of their contention that Paragraph 27 of the Stipulation ***only*** applies to maximum custody prisoners classified as SMI who are housed in one of the enumerated facilities.

Plaintiffs' counsel disagree with this interpretation of the Stipulation and Maximum Custody Performance Measure No. 9. It is Plaintiffs' counsels' position that the Stipulation covers ***all*** maximum custody prisoners classified as SMI, as well as those maximum custody prisoners housed in the enumerated ADC facilities.

Plaintiffs' counsel's interpretation both adheres to the plain language of the Stipulation text and remains true to the express intentions of the Plaintiffs during settlement negotiations. First, the plain language of the Stipulation states that "restrictions on the use of pepper spray and other chemical agents" apply to "any maximum custody prisoner classified as SMI" "***and*** in the following housing areas: Florence-CB-1 and CB-4; Florence-Kasson (Wings 1 and 2); Eyman-SMU I (BMU); Perryville-Lumley SMA; and Phoenix (Baker, Flamenco, and MTU)." Stipulation ¶ 27(emphasis added). In interpreting a settlement agreement, courts "rely on basic principles of state contract law." *Harps v. Cty. of Los Angeles*, 8 F. App'x 771, 772 (9th Cir. 2001) (quoting *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989)). The starting point for interpreting a contract is the plain meaning of the contractual language, and courts may rely on dictionary definitions to construe words contained in a contract. *See, e.g.*, *Universal Bank v. Northland Ins. Co.*, 8 F. App'x 784, 785–86 (9th Cir. 2001).

The word "and" is "used to join words or groups of words" and means "added to" or "plus." *See And*, Merriam-Webster (last visited Oct. 31, 2016), http://www.merriam-webster.com/dictionary/and. Defendants' interpretation would not join, or add to, the two clauses quoted above. Instead, the Defendants' interpretation would render superfluous the word "and" contained in Paragraph 27. Such an interpretation is disfavored in light of the well-known principle of contract law that calls for courts to construe contract terms in such a way so as not to render a portion of the contract superfluous. *See, e.g.*, *United States v. Spear*, 753 F.3d 964, 967–68 (9th Cir. 2014) (declining to adopt government's construction of the terms of a plea agreement where doing so would render portions of the plea agreement superfluous).

Defendants' tortured reading of the requirements of the Stipulation's use of force requirements also makes no practical sense and does not reflect the intentions of the parties during settlement. Both parties are well aware that maximum custody SMI prisoners are housed throughout Defendants' facilities. At the time of settlement, the enumerated facilities held many of the most troubled prisoners in maximum custody, some of whom are SMI. However, many of these prisoners, such as those in the SMU-I BMU, often have diagnoses such as personality disorders. These prisoners are not designated SMI but nonetheless have serious mental health needs that require additional supports. That is why the Stipulation covers all SMI prisoners in maximum security units and those particularly troubled prisoners in the enumerated facilities.

Defendants' new interpretation of Paragraph 27 of the Stipulation also flies in the face of the CGAR monitoring and reporting for the past year and a half. Use of force incidents reported in the CGAR reports and documents produced to support compliance findings have consistently included maximum security prisoners who are SMI and are housed outside the enumerated units, as well as non-SMI prisoners housed in the enumerated units. Indeed, the CGAR reporting and the documents produced gave Plaintiffs no indication that Defendants were operating on an inaccurate understanding of the requirements of MC PM #9. Based on the CGAR reports, it is clear that Defendants' monitors share Plaintiffs' clear interpretation of the Stipulation.

## *II. Production of Use of Force Videos*

Defendants's Counsel, Ms. Rand, indicated on the October 28th conference call that the videos produced to Plaintiffs' counsel were not—or were not necessarily—relied on by the monitors responsible for determining compliance with Maximum Custody Performance Measure No. 9. In particular, Ms. Rand disputed that any stationary/security camera footage would have been viewed by the monitor. At the same time, Carson McWilliams, Division Director for Offender Operations indicated that such footage would be viewed by the monitor if it existed.[1] These statements by Defendants—made almost two years into monitoring in this case and after producing video footage under the Court's order—are deeply concerning.

The primary purpose of producing records, documentation, and use of force videos is to allow Plaintiffs' counsel the opportunity to review these materials to determine whether the monitor made the appropriate compliance determinations. Producing videos that were never reviewed by the monitors

---

[1] According to Director McWilliams, the level of security camera coverage varies across facilities.

for compliance determinations undermines Plaintiffs' ability to accurately assess the CGAR findings. We therefore request that Defendants audit the videos produced to the Plaintiffs and provide a signed declaration as to which videos were actually used in to make previously reported CGAR compliance findings. We also request that in the future Defendants produce any use of force videos (hand-held and/or stationary/security) actually relied upon by monitors in making CGAR compliance findings.

    We look forward to working cooperatively with Defendants to address these issues and concerns.

Sincerely,

Amy Fettig
Deputy Director, ACLU National Prison Project

cc:     All counsel

# **EXHIBIT D**

# Amy Fettig

| | |
|---|---|
| **From:** | Jennifer Onka |
| **Sent:** | Thursday, November 10, 2016 3:48 PM |
| **To:** | Alison Hardy; Amy Fettig; Anne M. Orcutt; Ashlee Fletcher; Ashley Zuerlein; bkeogh@azcorrections.gov; Caroline N. Mitchell; Corene Kendrick; Dan Struck; Daniel Barr; Daniel Pochoda; David Fathi; Dawn Northup; Don Specter; Elaine Percevecz; Jamelia Morgan; Kirstin Eidenbach; laura@prisonlaw.com; Lucy Rand; Lupe Munoz; Maya Abela; Megan Lynch; Michael Gottfried; Richard Lee Pratt; skader@azdisabilitylaw.org; Tim Bojanowski |
| **Subject:** | Parsons v. Ryan - Use-of-force video production |
| **Attachments:** | 2016.11.10 Ltr to Rand - Use of Force Video Production - FINAL.pdf; Exhibit 1 - Use of Force Incidents - Production issues.xlsx |

Dear counsel,

Please see the attached correspondence from Amy Fettig.

Thank you,
Jennifer

**Jennifer Onka**
Paralegal
National Prison Project of the ACLU
915 15th St. NW, 7th Floor
Washington, DC 20005
▪ 202.548.6602 ▪ jonka@aclu.org
www.aclu.org



BECAUSE FREEDOM CAN'T PROTECT ITSELF

*This message may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system.*

1

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT



AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

<u>Via Email Only</u>

November 10, 2016

Ms. Lucy Rand
Office of Arizona Attorney General
1275 W. Washington
Phoenix AZ 85007
Lucy.Rand@azag.gov

**RE: Maximum Custody Document Production, Use of Force Documentation,** *Parsons v. Ryan*, **Civ-12-00601-DKD**

Dear Ms. Rand:

This letter follows on my recent correspondence on November 1 and November 3, 2016 related to the production of the maximum custody monitoring documents and the production of use of force videos.

In our review of the use of force documents we have identified unexpected problems and inconsistencies with the production of the use of force videos. We note that you raised a problem with that production during our October 28th conference call when you stated that some of the videos produced were not actually relied upon in the monitoring process. This raises grave concerns about the integrity of the documents produced and the monitoring process itself. Indeed, in our review of both the videos produced and the underlying documents we are finding problems that are difficult to explain. I am attaching as Exhibit 1, a chart entitled, "Use of Force Incidents – Production Issues," where we've identified inconsistencies in the documents and videos produced.

In some cases, ADC records indicated that a video corresponding to a particular use of force incident was available, but ADC did not produce one or more of the videos related to the use of force incident. *See, e.g.,* ADCM274990, ADCM274995 (SIR #15-03128), ACDM275210, ADCM275214, ADCM275218 (SIR #15-02974); ADCM387008 (SIR #16-01974); ADCM387502 (SIR #15-13253); ADCM466122, ADCM466127 (SIR #16-03467); ADCM321184, ADCM321241, ADCM321244 (SIR #15-11599); ADCM321502, ADCM321504, ADCM321507 (SIR #15-14224); ADCM585803, ADCM585810 (SIR #15-15323); ADCM425351(CGAR), ADCM620277, ADCM620366, ADCM620372 (SIR #16-02056). Our review of all the records found approximately 133 use of force incidents where ADC

records indicate that there has been a UOF incident, but for which ADC failed to produce a video.[1]  *See* Exhibit 1 (identifying by color code: Use of force incidents where documentation references a video but no video is produced (yellow); documentation says there was no video but a video was produced (pink); documentation included stationary video footage but based on a review of that footage/reports there is handheld footage available (blue); and incidents where we are awaiting documentation (red)).

The 133 missing use of force videos include cases where ADC's own records are inconsistent, or where, for example, supporting use of force documentation included conflicting statements on whether the use of force incident was captured on video. *See, e.g.*, ADCM541890, ADCM541980, ADCM541983, ADCM541987 (SIR #16-07031); ADCM465195, ADCM465357, ADCM465360, ADCM465365 (SIR #16-05941); ADCM466124, ADCM466151 (SIR #16-03846); ADCM538090, ADCM632244, ADCM632247, ADCM632251 (SIR #16-08505); ADCM463445, ADCM631835 (SIR #16-05689); ADCM121697 (SIR #15-05693); ADCM496429, ADCM629693 (SIR #16-06704).

Defendants' supporting documentation for use of force incidents is also at times inconsistent. For example, in some cases, ADC back-up documentation stated that a particular use of force video *was not available*, but ADC then produced a video. *See, e.g.*, ADCM630688 (SIR #16-08045) (handheld camera); ADCM464438, ADCM464628, ADCM464631 (SIR #16-02341) (stationary and handheld camera); ADCM541886, ADCM541909 (SIR #16-06518) (stationary and handheld). In other cases, ADC records stated that video footage from a handheld camera *was available*, but then failed to produce the handheld video camera footage, *see, e.g.*, ADCM275933 (SIR #15-09346) (ADC documents indicate a handheld camera was used, but only video from stationary camera produced); ADCM467012 (SIR #15-02180) (video footage produced only from stationary camera, but video footage from stationary camera shows handheld camera); ADCM466367, ADCM466412 (SIR #16-04884) (same); ADCM321898, ADCM321967 (SIR #15-15386) (same).

The voluminous problems with this production finds support in your own statements regarding the videos produced to us on October 28, 2016. That is why we requested that Defendants audit the videos produced to the Plaintiffs and provide a signed declaration as to which videos were actually used to support the CGAR compliance findings in our November 3rd letter. We reiterate that request and hope that Exhibit 1 and the many problems and

---

[1] We are still awaiting some documentation so a firm number is not possible at this time.

inconsistencies it identifies will assist in this review. We also suggest that a conference call between the parties would be helpful in this regard.

We look forward to working cooperatively with Defendants to address these issues and concerns.

Sincerely,

Amy Fettig
Deputy Director, ACLU National
Prison Project

cc:     All counsel

3

# EXHIBIT E
# <u>FILED UNDER SEAL</u>