Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org
       dpochoda@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
       adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-DKD <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR CLARIFICATION (DOC. 1774)** |

LEGAL133821078.1

Performance Measures 73, 77, 80, 81, 82, 83, 84, 87, 88, 90, and 92, all of which relate to mental health care, each require that a specified clinical event or encounter occur a minimum of "every 30 days," "every 90 days," or "every 180 days." [*See* Doc. 1185-1 at 13-15][1] The rationale for these requirements was explained by Dr. Pablo Stewart, the board-certified psychiatrist who consulted with plaintiffs' counsel in formulating the remedies they would seek regarding mental health care during the settlement of this case:

> Mental illnesses, like physical illnesses, are dynamic conditions that change over time. Acute conditions may appear and worsen, and even chronic conditions, like Schizophrenia, wax and wane over the course of the illness. For this reason, it is essential that patients with mental illness receive periodic assessments of their clinical condition and treatment modifications, if required by their clinical presentation, from qualified mental health professionals.
>
> The frequency with which the patient needs to be seen varies according to the patient's condition, and that frequency itself may need to be adjusted depending on the course of the illness. The Stipulation recognizes this principle by requiring that patients be seen by different levels of mental health staff and at different frequencies depending upon their illness. ***What is uniform, however, is the requirement that the patient be seen repeatedly and periodically.***
>
> \* \* \*
>
> ***It is essential that the patient be seen periodically so that the course of his or her illness and the ongoing efficacy of any treatment can be properly evaluated. This is particularly vital for patients who are prescribed psychotropic medications. It is critically important that these patients are seen on a regular basis so that the effectiveness of the medication can be assessed and any toxicity or side effects promptly detected and addressed.***

[Doc. 1627, ¶¶ 5-8 (emphasis added)]

The language "every 90 days" self-evidently requires that the event or encounter in question occur *repeatedly* at 90-day intervals. *See* Webster's Third New International

---

[1] Defendants base their argument entirely on PM 77 which requires, for one category of patients, that treatment plans be updated "every 12 months." [*See* Doc. 1774 at 3-4] In fact, PM 77 is the *only* mental health Performance Measure involving a 12-month interval; the vast majority involve intervals of either 30 or 90 days, with two involving intervals of 180 days. [*See* Doc. 1185-1 at 13-15]

LEGAL133821078.1

Dictionary Unabridged (1981) (defining "every" as "being each in a succession of intervals (~ few days)"); Macmillan Dictionary ("every" is "used for showing how often something happens or how far apart things are, especially when there is a regular time or distance between them").[2]  Case law similarly recognizes that the term "every X days" means that the act is performed repeatedly.  *See White v. Mitchell*, 759 P.2d 1327, 1330 (Ariz. Ct. App. 1988) (in assessing compliance with regulation requiring vehicle inspection "every 90 days," court examines time elapsed between multiple inspections); *cf. Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014) (considering the burden imposed by a requirement to register with the police "every 90 days").

Consistent with all these authorities, the Court recognized that "every X days" means that the act must occur more than once:

> In keeping with the plain language of the Stipulation, the Court concludes that an action that must occur every X days means that, in essence, a clock starts on the day an action occurs and that clock runs for X days. **Before the end of that clock X days later, the action must occur again.**

[Doc. 1673 at 4 (emphasis added)]

Thus, for example, to monitor compliance with PM 82 ("MH-3B prisoners shall be seen a minimum of every 90 days by a mental health clinician"), the monitor must determine the most recent two dates on which the patient was seen by the clinician.  If those two dates are more than 90 days apart, the record is noncompliant.  The record is also noncompliant if more than 90 days have elapsed since the patient was last seen.[3]

Notwithstanding the Court's order, Defendants continue to stubbornly insist that the requirement that a patient be seen "every 90 days" is satisfied as long as the patient has been seen one single time in the 90 days before the record is reviewed—even if the

---

[2] http://www.macmillandictionary.com/us/dictionary/american/every   (last visited December 6, 2016).

[3] Defendants devote two unintelligible pages to trying to make compliance with the plain language of these Performance Measures appear difficult and complicated. [*See* Doc. 1774 at 3-4]  It is not.  Indeed, it is Defendants' Rube Goldberg monitoring methodology that is needlessly complex (as well as inconsistent with the Stipulation), assessing compliance differently for identically-situated patients.  *See* pp. 4-5, *infra*.

1 patient was *never seen previously in the entire 20-month life of the Stipulation.* This
2 interpretation cannot be reconciled with the plain language of the Stipulation; as
3 Dr. Stewart explains, it is also medically dangerous:

> It is my understanding that ADC takes the position that the Stipulation's requirement that (for example) "MH-3B prisoners shall be seen a minimum of every 90 days by a mental health clinician" (Performance Measure 82) is satisfied if the patient has been seen by a clinician on a single occasion. This is an extraordinary and very dangerous assertion. … I am not aware of any mental health professional taking the position that it is sufficient that a patient with an ongoing mental illness be evaluated or treated only on a single occasion. Such a position does not meet any standard of care with which I am familiar and is completely indefensible.

10 [Doc. 1627, ¶¶ 7, 10] Dr. Stewart's expert opinion on this issue is entirely uncontradicted.
11      Defendants' arguments in favor of this Orwellian position—that "every 90 days"
12 really means "once"—are meritless. Defendants repeatedly quote the Court's statement
13 that "the plain language of the Stipulation requires monthly reporting," but that out-of-
14 context snippet does not assist them. The Court was discussing PM 94, which requires
15 that "all prisoners on a suicide or mental health watch shall be seen daily by a licensed
16 mental health clinician or, on weekends or holidays, by a registered nurse," and the issue,
17 as stated by the Court, was "whether the reporting covers either the entire period that a
18 prisoner is on a suicide or mental health watch (which may cover more than one month) or
19 whether the report is for a calendar month." [Doc. 1673 at 6-7] The Court's statement in
20 that context plainly has no application to Performance Measures requiring that an action
21 occur "every 90 days" which, as Defendants concede, *cannot be monitored* without
22 looking at data from more than one calendar month. [*See* Doc. 1644 at 6 ("some health
23 care Performance Measures require a determination of whether an inmate was seen within
24 90 or 180 days. Obviously, this determination cannot be made by looking at a thirty-day
25 period")][4]

---

[4] Defendants also quote from the Court's discussion of PM 86. [*See* Doc. 1774 at 3 n.1 (quoting Doc. 1673 at 6)] But as Defendants concede, "it is difficult … to apply the Court's Order to other Performance Measures because PM 86 is unique, as it requires conduct to occur a minimum of every 90 days 'for a minimum of six months after discontinuing medication.'

1      Defendants' bizarre position is contradicted by their own monitoring methodology on other Performance Measures. Performance Measure 66 requires that "[i]n an IPC [infirmary], a Medical Provider encounters [sic] will occur at a minimum every 72 hours." [Doc. 1185-1 at 12] In monitoring that Performance Measure, Defendants do exactly what they refuse to do here: measure the interval between two encounters, and count the file as noncompliant if that interval exceeds 72 hours. [*See* Declaration of David C. Fathi, Ex. 1]

       Defendants complain that compliance with the plain language of the Stipulation will require them to "look all the way back" to determine whether the clinical contacts occurred with the required frequency. [Doc. 1774 at 3] But the question is not whether Defendants will look at data from months prior to the audit month—it is undisputed that they will, even under their proposed methodology. [*See id.* ("In order to audit this PM, the monitor looks back and finds the date of the last treatment plan update")] The only question is whether Defendants may unilaterally change the Stipulation's requirement that a patient be seen "every 90 days" to a requirement that she be seen "once within the last 90 days." They may not.

       Defendants' methodology is not only in violation of the Stipulation and the Court's order; it is also internally inconsistent, assessing compliance differently for identically-situated patients:

> Imagine that the May monitoring sample of medical records for PM 82 ("MH-3B prisoners shall be seen a minimum of every 90 days by a mental health clinician") includes two prisoners, one of whom was last seen on May 1, the other on April 30. For the prisoner seen on May 1, Defendants will verify that the prisoner was seen on another occasion no more than 90 days previously—that is, was seen "every 90 days." For the prisoner last seen on April 30, however, Defendants count the record as compliant as long as the April 30 date is no more than 90 days from the date of the monitor's review. ***In other words, the first patient must be seen twice for the record to be compliant; the second patient will be deemed to***

---

Although the methodology set forth in the Court's November 11, 2016 Order is feasible for PM 86, ***it does not work for the other PMs that require an action to occur every 90 days, 180 days, or 1 year."*** [Doc. 1774 at 5 (internal citation omitted, emphasis added)]

LEGAL133821078.1                          -4-

*have been seen "every 90 days" even if he was seen only once.*

[Doc. 1654 at 4 (emphasis added)]

## CONCLUSION

The Court has repeatedly admonished Defendants that "the plain language of the Performance Measure" is controlling. [Doc. 1673 at 8] Defendants agreed to a series of Performance Measures requiring that certain clinical encounters occur "every X days," and absent a modification of the Stipulation, they are bound by those requirements. [*Id.*] To comply with the plain language of these Performance Measures, Defendants must measure the interval between two occurrences of the required encounters. The Court should order them to do so.

Dated: December 9, 2016　　　　　　　　**ACLU NATIONAL PRISON PROJECT**

By: ___s/ David C. Fathi___
David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Jamelia Natasha Morgan (N.Y. 5351176)**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:　dfathi@aclu.org
　　　　afettig@aclu.org
　　　　jmorgan@aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:　dbarr@perkinscoie.com
　　　　agerlicher@perkinscoie.com
　　　　jhgray@perkinscoie.com

Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:    kbrody@acluaz.org
             dpochoda@acluaz.org

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
             ahardy@prisonlaw.com
             snorman@prisonlaw.com
             ckendrick@prisonlaw.com
             rlomio@prisonlaw.com

*Admitted *pro hac vice*

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, PLLC**
P. O. Box 91398
Tucson, Arizona 85752
Telephone:  (520) 477-1475
Email:    kirstin@eidenbachlaw.com

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:    cnmitchell@jonesday.com
             aamiri@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:    jlwilkes@jonesday.com

*Admitted *pro hac vice*

LEGAL133821078.1                              -6-

Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone: (212) 326-3498
Email: jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By:  s/ Maya Abela
    Sarah Kader (Bar No. 027147)
    Asim Dietrich (Bar No. 027927)
    5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
    Telephone: (602) 274-6287
    Email: skader@azdisabilitylaw.org
           adietrich@azdisabilitylaw.org

    Rose A. Daly-Rooney (Bar No. 015690)
    J.J. Rico (Bar No. 021292)
    Jessica Jansepar Ross (Bar No. 030553)
    Maya Abela (Bar No. 027232)
    **ARIZONA CENTER FOR DISABILITY LAW**
    177 North Church Avenue, Suite 800
    Tucson, Arizona 85701
    Telephone: (520) 327-9547
    Email:
      rdalyrooney@azdisabilitylaw.org
      jrico@azdisabilitylaw.org
      jross@azdisabilitylaw.org
      mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2016, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
Mark A. Bracken
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
mbracken@swlfirm.com

*Attorneys for Defendants*

                        s/ D. Freouf