Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org
       dpochoda@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
       adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-DKD <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' STATEMENT REGARDING UNRESOLVED ISSUES RELATED TO DEFENDANTS' PROPOSED MONITORING GUIDE AND METHODOLOGY TO MEASURE COMPLIANCE WITH THE STIPULATION [DOC. 1755]** |

LEGAL133837724.1

Plaintiffs respectfully submit this reply in support of Plaintiffs' Statement Regarding Unresolved Issues Related to Defendants' Proposed Monitoring Guide and Methodology to Measure Compliance with the Stipulation.  [Doc. 1755][1]

## I.   DEFENDANTS MAY NOT FUNDAMENTALLY AND UNILATERALLY CHANGE THE MONITORING METHODOLOGY TWENTY MONTHS INTO THE LIFE OF THE STIPULATION.

For the entire life of the Stipulation, Defendants have monitored their compliance using a binary methodology under which each individual patient file is determined to be either compliant or noncompliant with the Performance Measure in question in a given month.  Neither party has ever questioned or challenged this aspect of the monitoring methodology.

But after the Court found them noncompliant with numerous Performance Measures at multiple institutions, Defendants decided that the appropriate response was not to improve the delivery of health care, but instead to use a different methodology that will significantly inflate their compliance scores.  Thus, in November 2016, without consulting Plaintiffs, Defendants adopted an entirely different methodology that, rather than assessing compliance for each patient file, purports to assess globally whether an entire prison complex is compliant—without regard to the care received (or not received) by individual patients.

Plaintiffs have demonstrated that the parties' course of performance during the twenty months of the Stipulation renders Defendants' unilateral changes impermissible. [*See* Doc. 1755 at 7-10][2]   Defendants entirely fail to respond to this argument; accordingly, the Court should deem the argument to be conceded by Defendants.  *See Contawe v. Cty. of San Mateo*, No. 15-CV-00222-JD, 2015 WL 9311919, at *4 (N.D. Cal.

---

[1]  The fact that this reply does not address every issue discussed in Doc. 1755 is not to be construed as a waiver of any argument contained therein, or as a concession of the merit of any of Defendants' contentions.  Plaintiffs are prepared to address these issues orally at the hearing scheduled for December 14, 2016.

[2]  Page citations are to the page numbers assigned by the ECF system.

1    Dec. 23, 2015) ("the Court will deem conceded any arguments of defendants to which

2    plaintiff has not meaningfully responded").

3         Defendants' contention that this eleventh-hour Hail Mary was not motivated by a

4    desire to inflate their compliance scores lacks all credibility.  Defendants themselves have

5    provided an example of how the same level of performance will lead to a dramatically

6    higher compliance score under their newly-minted methodology.  [*See* Doc. 1743 at 5

7    (compliance score would go from 0% to 97%)]  Plaintiffs have provided similar examples.

8    [*See* Doc. 1755 at 14 (score would go from 50% to 80%)]

9         Defendants' argument that the change is motivated solely by a desire to "identify

10   the specific problems … so that Corizon can prioritize and focus their resources on

11   improving compliance" also fails to pass the laugh test.  [Doc. 1782 at 6]  Defendants may

12   obviously collect whatever data they wish and use it in whatever way they please for

13   training, quality improvement, and other purposes.  What they may not do is unilaterally

14   change the way they assess compliance or noncompliance for the purposes of the

15   Stipulation in this case.

16   **II.   DEFENDANTS' REFUSAL TO ACKNOWLEDGE THAT CELLFRONT**
     **ENCOUNTERS DO NOT SATISFY THE REQUIREMENT THAT A**
17   **PATIENT BE "SEEN."**

18        Consistent with the Court's order dated November 8, 2016 [Doc. 1745 at 1],

19   Plaintiffs have repeatedly asked that Defendants insert, in a prominent location in the

20   Monitor Guide, a statement that cellfront encounters do not satisfy the requirement that a

21   patient be "seen" unless (1) the institution is on lockdown, or (2) the patient refuses to exit

22   his or her cell.  Defendants refuse.

23        Defendants claim that they "have included this language in each of the specific

24   performance measures to which it applies."  [Doc. 1782 at 12]  But this is false—there are

25   numerous additional Performance Measures, in addition to those cited by Defendants, that

26   require that a patient be "seen"; Defendants do not claim that the necessary language is

27

28

1  included for these Performance Measures.³  Moreover, the language currently included in

2  the Monitor Guide is all but unintelligible; it certainly does not clearly communicate the

3  substance of the Court's order:

> A contact may be documented in multiple electronic entries,
> including, but not limited to: individual contact, segregation
> visit (refusal or lockdown), group note, treatment plan (with a
> clinical contact), scheduled sick call, unscheduled sick call,
> suicide watch (refusal, lockdown, or conducted in confidential
> setting), etc.

8  [Doc. 1756-1 at 650]

9      Given that complying with Plaintiffs' simple request would impose no burden

10  whatsoever, the only plausible explanation for Defendants' refusal is that the Monitors are

11  not, in fact, instructed to comply with the Court's order on the meaning of the requirement

12  that a patient be "seen"—an explanation made more plausible by the fact that Monitors

13  continue to incorrectly count cellfront encounters as satisfying this requirement, in

14  violation of the Court's order.  [*See* Doc. 1739 at 16-17]

15  **Performance Measure 78**

16      The Court has repeatedly admonished Defendants that "the plain language of the

17  Performance Measure" is controlling.  [Doc. 1673 at 8]  In Performance Measure 78,

18  Defendants agreed that "*[e]ach record* that is reviewed for treatment plan compliance will

19  also be reviewed for a face-to-face SOAPE note dated the same date" [Doc. 1185-1 at 31

20  (emphasis added)], and so that is what they must do.  For each record reviewed under

21  Performance Measure 77, Defendants must ascertain whether the most recent treatment

22  plan update was done after a face-to-face clinical encounter.  Defendants admit that they

23  are not complying with the plain language of this Performance Measure.  [*See* Doc. 1782

24  at 12]

---

27      ³ Defendants cite Performance Measures 76, 80, 82, 86, 87, 89, 91, 92, 94, and 95.
[Doc. 1782 at 12]  They omit Performance Measures 73, 74, 81, 83, 84, 85, 88, and 90,
28  which also require that the patient be "seen."  [*See* Doc. 1185-1 at 13-14]

**Performance Measure 85**

Defendants do not deny that the parties had reached an agreement on a monitoring methodology for this Performance Measure, which Defendants then repudiated.  [*See* Doc. 1755 at 18; Doc. 1782-1 at 1-2]  The language to which the parties had agreed was "a sample of 10 inmates per yard who were due a contact in the monitored month is selected."[4]  By contrast, the language unilaterally adopted by Defendants is "Ten (10) records (if available) with medication discontinuation follow up contacts due *or completed* in the monitored month will be selected for review at each yard." [Doc. 1756-1 at 654 (emphasis added)]

This Performance Measure assesses whether patients who have discontinued psychotropic medication are seen by a mental health provider within 30 days of that discontinuation.  If more than 30 days have elapsed and the patient has not yet been seen, the record is coded as noncompliant.  Therefore, selecting a sample of records in which the required contact has already occurred will tend to artificially inflate the compliance score.  The Court should order Defendants to honor their agreement and use the compliance methodology to which the parties had agreed.

**Performance Measure 86**

Defendants concede that their current monitoring methodology for Performance Measure 86 is inconsistent with the Court's orders.  [*See* Doc. 1782 at 14 ("The methodology for PM 86 will be revised in accordance with the Court's November 10 Order.")]  More than a month after the Court's order, Defendants have yet to provide any such revision to Plaintiffs.

**Performance Measure 91**

This Performance Measure exemplifies Defendants' persistent belief that if they don't like the language to which they have agreed, they are free to substitute something

---

[4] The parties agreed that "'due a contact in the monitored month' includes those patients who should have received a contact in a previous month, but have not yet received that contact." [Doc. 1756-1 at 83]

1    entirely different.  The Court has previously disabused Defendants of this notion, making
2    clear that "the plain language of the Performance Measure" is controlling.  [Doc. 1673 at
3    8]  It should do so again now.

4        This Performance Measure requires that "MH-5 prisoners who are actively
5    psychotic or actively suicidal shall be seen by a mental health clinician or mental health
6    provider daily."  [Doc. 1185-1 at 33]  So that is what Defendants must monitor.  But
7    Defendants have chosen instead to monitor something entirely different: "a sample of *all*
8    inmates who were on a continuous watch during the monitored month."  [Doc. 1782 at 15
9    (emphasis in original)][5]

10       It is obvious that being "actively psychotic or actively suicidal" is not the same as
11   being "on a continuous watch."  While Plaintiffs agree that "an inmate who is 'actively
12   psychotic' or 'actively suicidal' should be placed on a continuous watch" [Doc. 1782 at
13   16], the eight suicides that have taken place in ADC so far this year make it painfully clear
14   that this does not always occur.[6]

15       If, as Defendants assert, their current Monitor is not qualified to determine from the
16   medical record whether a patient was actively suicidal or actively psychotic, then the
17   monitoring must be performed by a person who is so qualified.  Defendants' assertion of
18   burden is meritless; monitoring this Performance Measure requires reviewing ten records
19   each month at a single facility.  [*See* Doc. 1755 at 20 n.15]  Defendants must be ordered to
20   comply with this Performance Measure as written.

---

[5]  Defendants' assertion in their brief is inconsistent with their own Monitor Guide, which states that Defendants monitor patients who were "determined to be actively psychotic or suicidal on a continuous watch."  [Doc. 1756-1 at 662]  In either case, Defendants are not monitoring what the Performance Measure requires.

[6]  ADC's announcements of some of these suicides can be found here:
https://corrections.az.gov/article/inmate-death-notification-abdullah
https://corrections.az.gov/article/inmate-death-notification-orona
https://corrections.az.gov/article/inmate-death-notification-perales
https://corrections.az.gov/article/inmate-death-notification-carnes
https://corrections.az.gov/article/inmate-death-notification-saba
https://corrections.az.gov/article/inmate-death-notification-aguilar-0

**Performance Measure 98**

This Performance Measure requires that emergency HNRs be responded to "immediately upon receipt," and urgent HNRs within 24 hours of receipt or triage of the HNR.  [Doc. 1755 at 20]  For months Defendants simply refused to comply with these requirements; on September 6, 2016, the Court ordered them to do so.  [*See* Doc. 1673 at 8]

To determine whether an HNR is responded to "immediately upon receipt" or within 24 hours, it is obviously essential to know the time at which the HNR was received or triaged.  But Defendants stubbornly refuse to require that this information be recorded by the Monitor.  [*See* Doc. 1782-1 at 1, 2]  Once again, Defendants' refusal to comply with this simple and burden-free request raises the inference that the Monitors are not actually measuring whether the HNRs are responded to within the timeframes required by this Performance Measure.  The Court should, for the second time, order Defendants to comply with this Performance Measure.

## III.   DEFENDANTS' REFUSAL TO COMPLY WITH PARAGRAPH 15 OF THE STIPULATION

This paragraph applies whenever "a prisoner who is taking psychotropic medication suffers a heat intolerance reaction."  [Doc. 1185 at ¶ 15]  Once again, Defendants read into this provision a restriction that does not exist, announcing they will comply with the Stipulation's requirements only with regard to patients who "report[] the [heat intolerance] reaction to security staff or medical personnel."  [Doc. 1782 at 17]  As Dr. Stewart has explained, many patients do not realize they are suffering from heat-related illness [Doc. 1755 at 22; Doc. 1104-2 at 47-48 (Decl. of Pablo Stewart, M.D.)]; it is therefore absurd for Defendants to expect patients to walk up to prison staff and announce "I am suffering from a heat intolerance reaction."  Defendants should be ordered to comply with this Stipulation provision as written.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

Defendants should be ordered to comply with the Stipulation as set forth above and in Plaintiffs' previous filing [Doc. 1755].

Dated:  December 12, 2016

**ACLU NATIONAL PRISON PROJECT**

By:   s/ David C. Fathi

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Jamelia Natasha Morgan (N.Y. 5351176)**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:    dfathi@aclu.org
              afettig@aclu.org
              jmorgan@aclu.org

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
              agerlicher@perkinscoie.com
              jhgray@perkinscoie.com

Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:    kbrody@acluaz.org
              dpochoda@acluaz.org

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
          ahardy@prisonlaw.com
          snorman@prisonlaw.com
          ckendrick@prisonlaw.com
          rlomio@prisonlaw.com

*Admitted *pro hac vice*

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, PLLC**
P. O. Box 91398
Tucson, Arizona 85752
Telephone:  (520) 477-1475
Email:    kirstin@eidenbachlaw.com

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:    cnmitchell@jonesday.com
          aamiri@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:    jlwilkes@jonesday.com

*Admitted *pro hac vice*

Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:    jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;*
*Stephen Swartz; Sonia Rodriguez; Christina*
*Verduzco; Jackie Thomas; Jeremy Smith;*
*Robert Gamez; Maryanne Chisholm;*
*Desiree Licci; Joseph Hefner; Joshua*
*Polson; and Charlotte Wells, on behalf of*
*themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By:  s/ Maya Abela
    Sarah Kader (Bar No. 027147)
    Asim Dietrich (Bar No. 027927)
    5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
    Telephone:  (602) 274-6287
    Email:   skader@azdisabilitylaw.org
            adietrich@azdisabilitylaw.org

    Rose A. Daly-Rooney (Bar No. 015690)
    J.J. Rico (Bar No. 021292)
    Jessica Jansepar Ross (Bar No. 030553)
    Maya Abela (Bar No. 027232)
    **ARIZONA CENTER FOR DISABILITY LAW**
    177 North Church Avenue, Suite 800
    Tucson, Arizona 85701
    Telephone:  (520) 327-9547
    Email:
        rdalyrooney@azdisabilitylaw.org
            jrico@azdisabilitylaw.org
            jross@azdisabilitylaw.org
            mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that on December 12, 2016, I electronically transmitted the above

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrants:

5

6

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General

7

Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

8

9

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love

10

Timothy J. Bojanowski
Nicholas D. Acedo

11

Ashlee B. Fletcher
Anne M. Orcutt

12

Jacob B. Lee
Mark A. Bracken

13

STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com

14

kwieneke@swlfirm.com
rlove@swlfirm.com

15

tbojanowski@swlfirm.com
nacedo@swlfirm.com

16

afletcher@swlfirm.com
aorcutt@swlfirm.com

17

jlee@swlfirm.com
mbracken@swlfirm.com

18

19

*Attorneys for Defendants*

20

s/ D. Freouf

21

22

23

24

25

26

27

28