| | |
|---|---|
| 1 | Kathleen E. Brody (Bar No. 026331) |
| | Daniel Pochoda (Bar No. 021979) |
| 2 | **ACLU FOUNDATION OF ARIZONA** |
| | 3707 North 7th Street, Suite 235 |
| 3 | Phoenix, Arizona 85013 |
| | Telephone: (602) 650-1854 |
| 4 | Email: kbrody@acluaz.org |
| |       dpochoda@acluaz.org |
| 5 | |
| 6 | *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith,* |
| 7 | *Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated* |
| 8 | **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]** |
| 9 | Sarah Kader (Bar No. 027147) |
| 10 | Asim Dietrich (Bar No. 027927) |
| | **ARIZONA CENTER FOR DISABILITY LAW** |
| 11 | 5025 East Washington Street, Suite 202 |
| | Phoenix, Arizona 85034 |
| 12 | Telephone: (602) 274-6287 |
| | Email: skader@azdisabilitylaw.org |
| 13 |       adietrich@azdisabilitylaw.org |
| 14 | *Attorneys for Plaintiff Arizona Center for Disability Law* |
| | **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]** |

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br>Plaintiffs, <br><br>v. <br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br>Defendants. | No. CV 12-00601-PHX-DKD <br><br> **PLAINTIFFS' MOTION FOR CONTEMPT OR FURTHER REMEDIAL ORDERS** |

Plaintiffs, by and through undersigned counsel, respectfully request that the Court find Defendants in civil contempt of court for obstructing Plaintiffs' counsel's monitoring efforts through their employees' threats and intimidation of class members in clear violation of this Court's orders. Plaintiffs further request that the Court expeditiously vindicate the rights of the Plaintiff class and compensate those injured by the contempt by rescinding all disciplinary actions against these class members on Plaintiffs' November 1-2, 2016, tour of the Tucson prison complex; allowing Plaintiffs to reschedule a two-day tour of the facility; directing Defendants to notify class members that they will not be subject to retaliation for communicating with Plaintiffs' counsel; directing Defendants to notify staff and class members that there should not be any retaliatory action taken against class members who communicate with Plaintiffs' counsel, and awarding Plaintiffs attorneys' fees and costs. In the alternative, Plaintiffs move, pursuant to the Court's inherent authority, Paragraph 35 of the Stipulation, and its direction at the November 2 hearing [Doc. 1734], for a remedial order issuing the same relief. A proposed order is attached.

**FACTUAL BACKGROUND**

The "Monitoring and Enforcement" provisions of the Court-ordered settlement in this case grant Plaintiffs' counsel "reasonable access to the institutions [and] prisoners . . . necessary to properly evaluate whether Defendants are complying with the performance measures and other provisions of this Stipulation." [Doc 1185 at 11 ¶ 29.] The parties are required to "cooperate so that plaintiffs' counsel has reasonable access to information reasonably necessary to perform their responsibilities required by this Stipulation …." [*Id.*] Plaintiffs' counsel are allotted no more than 20 days per year to gather information at Arizona prisons. [*Id.* at 12 ¶ 32]

On November 1-2, 2016, Plaintiffs' counsel toured the Tucson prison complex. On the second day of the tour, in the Rincon unit, two of Plaintiffs' counsel walked up and down a run of cells, speaking to prisoners through their locked cell doors. [Transcript of November 2, 2016 (hereafter "Tr.") at 3:20-4:1] A deputy warden stood "in very close

1  proximity to attorney-client communications, and he took pictures of the cells on the run
2  and announced near the end of our visit that everyone on the run would be ticketed." [*Id.*
3  at 4:3-7; *see also* Declaration of Kirstin Eidenbach filed herewith at 1 ¶¶ 5-6]

4       Counsel moved to another run of cells, where the same deputy warden "announced
5  that everyone on the run would be ticketed, and he again took pictures of all the runs."
6  [Tr. at 4:9-12; *see also* Eidenbach Dec. at 1 ¶ 6]  His exact words both times were "ticket
7  everyone." [Tr. at 10:10-15; *see also* Eidenbach Dec. at 1-2 ¶¶ 6 and 9]

8       "Ticketing" is a form of discipline that involves issuing a prisoner a "ticket" for a
9  disciplinary infraction, resulting in a loss of privileges or time credits.  In this case, the
10 deputy warden was talking about issuing disciplinary sanctions for petty infractions, such
11 as not putting a shirt on quickly enough, or items out of place in the cell. [Tr. at 8:19-9:2;
12 *see also* Eidenbach Dec. at 1 ¶ 6]

13       As a result of these actions, "many of our clients refused to talk to us, and a couple
14 of them indicated to us that they were afraid to talk to us for fear of further retaliation in
15 addition to the tickets that had been announced, which they felt were retaliatory at the
16 time." [Tr. at 4:13-17; *see also* Eidenbach Dec. at 2 ¶¶ 11-12]

17       These were not the first indications that prisoners in Tucson feared staff retaliation
18 for talking to Plaintiffs' counsel.  On the prior day, another of Plaintiffs' counsel in the
19 Rincon unit had "been told by two of our clients that [they were told] they'd better say the
20 right thing during the tour or their lives would be made hell." [Tr. at 4:19-21]

21       Plaintiffs' counsel determined that the chilling effect of the threats against the
22 prisoners made "our tours pointless.  We can't get information about how individuals'
23 medical care is being provided . . . if people will not talk to us because they fear
24 retaliation." [*Id.* at 9:22-10:3]  They sought intervention by the Court in a telephonic
25 hearing on November 2, 2016.

26       At the hearing, the Court heard the direct testimony of Plaintiffs' counsel regarding
27 the events on the tour.  Defendants did not dispute that the actions she described took
28 place. [*Id.* at 7:14-16 ("we're not disputing what she said she heard or what she said

occurred").] The Court, after hearing arguments from both parties, determined that the wholesale nature of the threat to "ticket everyone" and its immediate proximity in time and place to the monitoring activities of Plaintiffs' counsel made it impossible for Plaintiffs' counsel to carry out their Court-ordered monitoring: "[T]he application of these infractions across everybody who's participating in these interviews can reasonably be seen to chill the environment for full disclosure. And so I cannot allow that to continue." [*Id.* at 15:5-9] Thus, Defendants' employees' actions violated the Stipulation's requirements of reasonable access: "I will not abide any kind of chill in the air that obstructs the disclosure of information in an attorney-client context that is necessary for the enforcement of the stipulation here." [*Id.* at 14:5-8]

At the November 2 hearing, the Court approved the parties' agreement to provide a letter to Plaintiff class members assuring them that they would not face retaliation for communicating with Plaintiffs' counsel. [Doc. 1734, Minute Order of Nov. 2, 2016] The Court directed Plaintiffs' counsel to file a motion regarding the request for a rescheduled tour and compensation for costs of the cancelled tour. [*Id; see also* Tr. at 16:14-18 ("I will put off to another time when I have the opportunity to allow both sides to present their respective views on whether or not the conduct here warrants a fee shift . . . .")]

On November 8, 2016, Plaintiffs' counsel wrote to Defendants' counsel, asking Defendants to stipulate to (a) an order to distribute a letter from the warden of the Tucson prison complex apologizing for staff conduct and making assurances that no retaliation has occurred or will occur for communications with Plaintiffs' counsel; (b) an order to Arizona prison staff directing them not to threaten, harass, or retaliate against any prisoner for communicating with Plaintiffs' counsel, with accompanying training; (c) two additional tour days at the Tucson complex; and (d) compensation for attorney time and expenses from the Tucson tour of November 1-2. Over one month later, Plaintiffs have received no response.

///

///

-3-

**ARGUMENT**

When defendant officials violate court orders, the district court has "broad power to fashion a remedy." *See Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 16 (1971); *see also Brown v. Plata*, 563 U.S. 493, 511 (2011) ("Courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration"); *Hutto v. Finney*, 437 U.S. 678, 690 (1978) ("federal courts are not reduced to issuing injunctions against state officers and hoping for compliance. Once issued, an injunction may be enforced").

Such powers include finding a party in contempt of court. *Hutto*, 473 U.S. at 690-691. Civil contempt occurs when a court order is "specific and definite" and the party against whom it is directed "fail[s] to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). To succeed on a civil contempt motion, plaintiffs must "show by clear and convincing evidence that [the nonmoving party] violated the [court order] beyond substantial compliance, and that the violation was not based on a good faith and reasonable interpretation of the [order]." *Wolfard Glassblowing Co. v. Vanbragt,* 118 F.3d 1320, 1322 (9th Cir. 1997).

Civil contempt "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999) (quotation omitted). A "full-blown evidentiary hearing" is not required; civil contempt may be properly found "without a hearing and based solely upon briefing by the parties." *Id.* at 96 (citation omitted).

Contempt in this case is clear: the Court issued a "specific and definite" order granting Plaintiffs' counsel reasonable access to class members in order to monitor Defendants' implementation of the Court-ordered settlement. Defendants blatantly disregarded this order: their high-level employees, in the presence of their own lawyers, intentionally and unreasonably interfered with Plaintiffs' counsel's work and took affirmative steps that chilled communication between Plaintiffs' counsel and class

members. Because the order was specific, the violation was unreasonable, and the evidence of Defendants' employees' actions clear and convincing, the Court should find Defendants in contempt and issue sanctions accordingly.

In the alternative, the Court has the power even absent a contempt finding to issue identical relief: order Defendants to rescind any disciplinary actions taken in conjunction with Plaintiffs' monitoring activities at the Tucson complex; grant Plaintiffs' counsel two tour days not to count against the annual cap; and grant Plaintiffs' counsel attorneys' fees and costs for the cancelled Tucson trip not to count against the annual fee cap. [*See* Doc. 1458, Attachment 1 ("The Court shall retain the power to enforce this Stipulation through all remedies provided by law….")]

**I.    DEFENDANTS HAVE COMMITTED CIVIL CONTEMPT BY KNOWINGLY AND BLATANTLY VIOLATING THE COURT-ORDERED SETTLEMENT AGREEMENT.**

**A.    The Court issued a "specific and definite" order to allow Plaintiffs' counsel reasonable access to prisoners.**

The Court-ordered Stipulation settling this case requires Defendants to provide Plaintiffs' counsel "reasonable access to the institutions [and] . . . prisoners . . . necessary to properly evaluate" Defendants' compliance with the settlement. [Doc 1185 at 11 ¶ 29] It further requires that the parties "shall cooperate so that plaintiffs' counsel has reasonable access to information reasonably necessary to perform their responsibilities requires by this Stipulation . . . ." [*Id.*] The Court ordered the parties to comply with the Stipulation and retained the power to enforce it. [Doc. 1458 at 4 and attachment 1] The Stipulation "shall be binding on all successors, assignees, employees, agents, and all others working for or on behalf of Defendants and Plaintiffs." [Doc. 1185 at 14 ¶ 41]

The requirements of the Stipulation could not be clearer: in specific, unambiguous language, the Court ordered Defendants and their employees to allow Plaintiffs' counsel reasonable access to prisoners, and ordered them to cooperate in this endeavor. *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d at 695 (for contempt to issue, court order in question must be "specific and definite").

**B.  Clear and convincing evidence demonstrates that Defendants and their employees acted in blatant violation of the Court's orders.**

Defendants' employees' actions at the Tucson prison were the exact opposite of reasonable and cooperative. Instead of allowing reasonable access, they sought to punish class members who spoke – or might potentially speak – to Plaintiffs' counsel. Instead of cooperating in counsel's lawful monitoring activities, they threatened disciplinary sanctions against all class members who had just been interviewed and those who were about to be approached for an interview by their own lawyers.

Plaintiffs have provided clear and convincing evidence of these violations. *Wolfard Glassblowing Co.,* 118 F.3d at 1322 (evidence of contempt must be "clear and convincing"). The direct evidence presented to the Court at the November 2 telephonic hearing is that Plaintiffs' counsel saw a deputy warden take pictures of all the cells in the area where she was attempting to interview clients and announce that every prisoner would be disciplined. [Tr. at 4:3-7; Eidenbach Dec. at 1-2 ¶¶ 5-9] She further testified that a deputy warden took the same actions in the next area prior to her interviews, and that subsequently many prisoners she approached refused to talk to her, some expressing fear of ongoing retaliation. [Tr. at 4:9-17; Eidenbach Dec. at 2 ¶¶ 11-12] Defendants did not dispute that those actions were taken. [Tr. at 7:15-16 ("we're not disputing what she said she heard or what she said occurred")]

Defendants' employees' actions cannot be seen as a reasonable interpretation of the order to provide Plaintiffs' counsel with reasonable access to prisoners. *Wolfard Glassblowing Co.,* 118 F.3d at 1322 (party seeking contempt must show violation "was not based on a good faith and reasonable interpretation" of the court order). The blanket statement that *all* prisoners would be disciplined – both those who spoke to counsel and those not yet approached – coupled with the simultaneity of the threats and the attorney-client interviews are at best a blatant and unreasonable disregard of the chilling effect of such threats, and at worst a bad faith effort to obstruct monitoring in this case.

To avoid contempt, Defendants must "take all reasonable steps within [their] power

to comply" with the Court's orders. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d at 695. A reasonable step towards compliance would include instructing all staff – particularly high-level administrative staff such as deputy wardens and particularly staff who escort Plaintiffs' counsel on tours – in their duties under the Stipulation. Defendants' clear failure to do so was reflected in the actions of their high-level employee on the Tucson tour and their failure to immediately remedy the situation and provide assurances of non-repetition and remediation. Defendants as well as their employees have violated the Stipulation.

The Court has in fact already determined that the threats and intimidating actions taken on the Tucson tour obstructed Plaintiffs' counsel from performing their Court-ordered monitoring responsibilities. [Tr. at 15:5-9 ("the application of these infractions across everybody who's participating in these interviews can reasonably be seen to chill the environment for full disclosure. And so I cannot allow that to continue."), 14:5-8 ("I will not abide any kind of chill in the air that obstructs the disclosure of information in an attorney-client context that is necessary for the enforcement of the stipulation here.")]

Civil contempt is thus appropriate. Given the straightforward factual background and the clarity of the Court's conclusions, no evidentiary hearing is needed to further delay remediation of the harms already incurred.

## II. SANCTIONS ARE NECESSARY TO COMPENSATE PLAINTIFFS AND ENSURE FUTURE COMPLIANCE WITH THIS COURT'S ORDERS.

Civil contempt sanctions are employed "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *U.S. v. United Mine Workers,* 330 U.S. 256, 303-04 (citations omitted). In the present case, Plaintiffs seek compensation for the injuries sustained to class members and to counsel's ability to carry out the monitoring tasks set forth in the Stipulation.

Court-ordered sanctions are necessary here because Defendants have long demonstrated a pattern of obfuscating serious problems and disregarding Court direction. In determining the nature and extent of sanctions against Defendants, this Court should

take these prior serious contraventions into account. *See Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 516 (9th Cir. 1992) (taking into account Defendants' "flagrant contempt" in affirming the propriety of a high fine as a civil sanction).

Defendants' foot-dragging and disregard for this Court's directions is evident most recently in their advancement of a clearly inadequate remediation plan in response to their ongoing grave failures to meet essential performance measures. The Court voiced serious concerns over deficiencies in Defendants' plan (which included "generalized statements . . . ranging from the absurd"), but allowed Defendants to proceed. [Transcript of June 24, 2016 Status Conference, at 5:14; *see also id.* at 6:3-7 (expressing "little confidence to believe that what [Defendants] are proposing is knowledgeable enough about the problem, specific enough, and has enough focus on it in the defendant's side of the house to make sure that it has a reasonable shot of accomplishing what we want to do"); Doc. 1619 at 1] Predictably, the plan failed utterly to remediate the grave inadequacies in care. [Transcript of Nov. 9, 2016 Status Hearing, at 5:16-20:25] The Court was then forced to devise an alternative remedy: "Defendants have had ample opportunity to present, apply, and retool their own remedial plans" but having failed to do so effectively, "the Court must, pursuant to the Stipulation, impose its own remediation plan to assure that the Class Plaintiffs receive the Stipulation's promised care." [Doc. 1762 at 1, 2] Defendants then challenged the Court-ordered remedy. [Doc. 1779] The Court should also consider Defendants' repeated factual misrepresentations to Plaintiffs' counsel and the Court in determining whether contempt is appropriate. [*See* Doc. 1795 at 1-4]

As a result of this pattern of intransigence and the flagrant nature of the violations on the Tucson tour, Plaintiffs submit that the following remedies are justified and minimally needed in order (1) to compensate the Plaintiff class for harms suffered as a result of Defendants' noncompliance with the Court's orders and (2) to stop ongoing harms and to prevent future noncompliance to the detriment of the Plaintiff class. *See Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983) (two purposes of civil contempt are to compensate the moving party for injuries arising from

noncompliance and to compel obedience to the court's order (internal citations omitted));  *see also Lance v. Plummer*, 353 F.2d 585, 591-92 (5th Cir. 1965), *cert. denied*, 384 U.S. 929 (1966) (district court could properly use its coercive civil contempt authority to prohibit deputy sheriff who had violated civil rights injunction from acting as a law enforcement officer until the officer satisfied the court that he would comply with the injunction in good faith).

### A.   The Court should order any disciplinary actions rescinded

Plaintiffs seek remediation for the victims of the Defendants' violations, a well-established remedy for civil contempt.  *See*, *e.g.*, *Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 539 F.3d 1039, 1042 (9th Cir. 2008) (civil contempt remedies are "to compensate. . . for losses sustained").  Specifically, Plaintiff request that the Court order that any disciplinary sanctions taken against any class member on the two runs in the Rincon Unit that were threatened with tickets be rescinded.  This order would apply to warnings as well as tickets.

The Court has already expressed an understanding that such an order is necessary and indicated a willingness to issue it: "This broad brush assessment of a sanction to somebody who is participating in an interview, if you want to make sure that people have their shirts on and they're not obstructing their cells, do that on some day other than when the interview's scheduled." [Tr. at 18:1-5; *see also id. at* 20:12-14 ("Pictures, sanctioning people for things that you say happen every day, again, pick some other day to do it.  Don't do it on the day that the tour is scheduled"); 21:1-5 ("[y]ou don't take pictures in a way that happens only on the day of the tour.  You don't sanction people, everybody on the line on the day of the tour, because it's reasonable for people to think that that's associated with retaliation").]

### B.   The Court should order compensatory tour days to replace those lost due to Defendants' retaliatory actions

Concerned about retaliation against prisoners, Plaintiffs' counsel suspended the tour of Tucson on November 2.  Defendants' actions had already rendered that morning's

work largely "pointless": "We can't get information about how individuals' medical care is being provided . . . if people will not talk to us because they fear retaliation." [Tr. at 9:22-10:3]   The utility of the prior day's work is also in question, given that other prisoners had reported on November 1 being threatened to "say the right thing during the tour or their lives would be made hell." [*Id.* at 4:19-21]

Accordingly, the Court should allow Plaintiffs' counsel two make-up days to tour the Tucson complex, without counting against the annual cap of 20 tour days or the limit of one visit per quarter per prison. [Doc. 1185 at 13 ¶ 32]   These dates should be scheduled after Defendants issue the letter that they promised to send, assuring class members that they may speak freely to counsel without fear of retaliation. [Tr. at 17:2-4]

After Plaintiffs' counsel asserted the need for such make-up dates at the November 2 telephonic hearing, the Court noted that Defendants' actions "warrant[] some relief along that measure." [*Id.* at 16:4-13]

### C. The Court should order attorneys' fees and costs

Plaintiffs seek attorneys' fees and costs, a standard remedy for civil contempt. *Perry v. O'Donnell,* 759 F.2d 702, 705 (9th Cir. 1985) ("the trial court should have the discretion to analyze each contempt case individually and decide whether an award of fees and expenses is appropriate as a remedial measure").

The Court should order attorneys' fees and costs to Plaintiffs' counsel to compensate for the expense of the November 1-2 tour that their obstruction derailed as well as the costs of litigating the present motion. Such fees are justified, among other reasons, to coerce future compliance. *See Hutto*, 437 U.S. at 691-92 (attorneys' fees justified to "'incline the [defendant] to act in such a manner that further protracted litigation about the prisons will not be necessary'") (citation omitted). An award of attorneys' fees and costs is also justified as compensation for the time and costs of Plaintiffs' counsel in responding to Defendants' noncompliance with the Court's orders, separate from any award of compensatory damages. *Kelly v. Wengler*, 822 F.3d 1085, 1098, 1103-04 (9th Cir. 2016) (affirming award of attorneys' fees and costs for contempt

-10-

litigation in post-judgment prison conditions cases); *Perry*, 759 F.2d at 704-06 (affirming award of attorneys' fees and costs in civil contempt proceeding as a remedial measure).

### III. ABSENT A FINDING OF CONTEMPT, THE COURT SHOULD ORDER COMPENSATION TO PLAINTIFFS' COUNSEL AND CLASS MEMBERS WHO WERE INJURED BY THE VIOLATIONS

Even if the Court determines that a contempt order is not appropriate, the same relief is warranted to enforce the terms of the Stipulation. [*See* Doc. 1185 at ¶ 35; Doc. 1458, Att. 1 ("[t]he Court shall retain the power to enforce this Stipulation through all remedies provided by law….")]

### CONCLUSION

Plaintiffs respectfully request that the Court find Defendants in contempt of Court and issue appropriate sanctions: rescind all disciplinary actions taken against prisoners on Plaintiffs' November 1-2, 2016, tour of the Tucson prison complex; allow Plaintiffs to reschedule a two-day tour of the facility; distribute a copy of the Court's contempt order to all class members at the Tucson prison with a letter from the Warden apologizing for staff contact and advising that no retaliation has occurred or will occur for communications with Plaintiffs' counsel; direct all ADC staff that such retaliation is improper and not tolerated; direct Defendants to post any Order the Court issues; and award Plaintiffs attorneys' fees and costs for the cancelled trip and for this Motion. A proposed order is attached.

///
///
///
///
///
///
///
///
///

Dated: December 14, 2016

**PRISON LAW OFFICE**

By: _s/ Corene Kendrick_
Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita Lomio (Cal. 254501)*
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email: dspecter@prisonlaw.com
ahardy@prisonlaw.com
snorman@prisonlaw.com
ckendrick@prisonlaw.com
rlomio@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Jamelia Morgan (N.Y. 5351176)**
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email: dfathi@npp-aclu.org
afettig@npp-aclu.org
jmorgan@aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, PLLC**
P. O. Box 91398
Tucson, Arizona 85752
Telephone: (520) 477-1475
Email: kirstin@eidenbachlaw.com

Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org
dpochoda@acluaz.org

|   |   |
|---|---|
| 1 | Daniel C. Barr (Bar No. 010149) |
| 2 | Amelia M. Gerlicher (Bar No. 023966) |
|   | John H. Gray (Bar No. 028107) |

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:  dbarr@perkinscoie.com
        agerlicher@perkinscoie.com
        jhgray@perkinscoie.com

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email:  cnmitchell@jonesday.com
        aamiri@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email:  jlwilkes@jonesday.com

*Admitted *pro hac vice*

Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3498
Email:  jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

|     |     |
| --- | --- |
| 1   | **ARIZONA CENTER FOR DISABILITY LAW** |
| 2   |     |
| 3   | By: *s/ Maya Abela* |
| 4   | Sarah Kader (Bar No. 027147)<br>Asim Dietrich (Bar No. 027927) |
| 5   | 5025 East Washington Street, Suite 202<br>Phoenix, Arizona 85034 |
| 6   | Telephone: (602) 274-6287<br>Email:  skader@azdisabilitylaw.org |
| 7   | adietrich@azdisabilitylaw.org |
| 8   | Rose A. Daly-Rooney (Bar No. 015690)<br>J.J. Rico (Bar No. 021292) |
| 9   | Jessica Jansepar Ross (Bar No. 030553)<br>Maya Abela (Bar No. 027232) |
| 10  | **ARIZONA CENTER FOR DISABILITY LAW** |
| 11  | 177 North Church Avenue, Suite 800<br>Tucson, Arizona 85701 |
| 12  | Telephone: (520) 327-9547<br>Email: |
| 13  | rdalyrooney@azdisabilitylaw.org<br>jrico@azdisabilitylaw.org |
| 14  | jross@azdisabilitylaw.org<br>mabela@azdisabilitylaw.org |
| 15  | *Attorneys for Arizona Center for Disability Law* |

-14-

**CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2016, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
Mark A. Bracken
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
mbracken@swlfirm.com

*Attorneys for Defendants*

s/ Corene Kendrick