Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
Mark A. Bracken, Bar No. 026532
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
mbracken@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | NO. 2:12-cv-00601-DKD <br><br> **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR RELIEF FROM FINAL ORDER ENFORCING STIPULATION (DKT. 1754)** <br><br> **[Request for Expedited Hearing and Ruling]** |

For the following reasons, the Court should reject Plaintiffs' arguments opposing Defendants' Motion and grant relief.[1]

**1. Plaintiffs Distort the Stipulation's 80% compliance requirement.**

Plaintiffs essentially adopt the Court's conclusion that the Stipulation already requires 100% compliance, not 80% compliance. They contend:

> (a) Paragraph 8 ("Defendants *shall comply* with the health care performance measures") and the individual performance measures (e.g., "Sick call inmates *will be seen* by an RN within 24 hours after an HNR is received") mandate 100% compliance.
>
> (b) Paragraph 10.a.ii merely defines "substantial compliance."
>
> (c) Paragraph 10 only "outlines when Defendants' duty to measure and report on a particular performance measure is terminated," and has nothing to do with compliance.

(Dkt. 1806 at 10-15.) As discussed in Defendants' Motion (which Plaintiffs ignore), they are wrong on all three points.

Although Paragraph 8 states that Defendants "shall comply" with the healthcare performance measures, Paragraph 10.a.ii defines what it means to comply. That definition could not be clearer: "Compliance with a particular performance measure … shall be defined as … meeting or exceeding an eighty percent (80%) threshold for the particular performance measure…" (Dkt. 1185 at 3, ¶ 8, at 4, ¶ 10.a.ii.) Defendants are not rewriting anything, as Plaintiffs contend. (Dkt. 1806 at 13:1.) The definition is in the Stipulation. The mandatory language in the performance measures does not alter this

---

[1] Plaintiffs do not dispute that Defendants may appropriately challenge the Court's November 10, 2016 Order under Fed.R.Civ.P. 60. Therefore, there is no jurisdictional basis to not consider Defendants' Motion for Relief From Final Order. Plaintiffs point out that the court in *Juanes v. Lyzwinski*, 8:10-CV-459 ATB, 2013 WL 3713419, at **5-6 & n.6 (N.D. N.Y. July 12, 2013), ultimately denied relief under Rule 60(b), but they concede that the court first recognized it was a procedurally proper motion. *Id.* at *3. Plaintiffs also seemingly agree that the Motion appropriately relies on Rule 60(b)(6) ("any other reason that justifies relief"); they merely contest that Defendants met their burden under that Subsection. Defendants' Motion sets forth in detail the "extraordinary circumstances" justifying relief (the Court acted beyond its authority and failed to permit or consider public-safety evidence). The Court's *ultra vires* Order also supports a "jurisdictional error" under Rule 60(b)(4), *Dietz v. Bouldin*, 794 F.3d 1093, 1096 (9th Cir. 2015), or, at least, an "inadverten[t]" or "mistake[n]" one under Rule 60(b)(1).

1

definition. The performance measures simply define the *conduct* agreed upon by the parties. Though they are stated in declarative terms ("will maintain" or "will be seen"), they need to be. If they weren't, they would be meaningless (e.g., "may be addressed" or "may be seen").

Nor are Defendants "selectively quoting from Paragraph 10." (Dkt. 1086 at 11:1-2.) Although Paragraph 10.a starts off with the phrase, "Determining *substantial* compliance with a particular performance measure at a particular facility" (emphasis added), the Paragraph goes on to define only one word: "**Compliance** … shall be defined as…" (Dkt. 1185 at 4, ¶ 10.a., emphasis added) Plaintiffs' interpretation would require the Court to rewrite the Stipulation to say: "**Substantial** compliance … shall be defined as…" That is not the language the parties agreed to. This distinction does not matter anyway because Plaintiffs admit that substantial compliance is "the equivalent of compliance." (Dkt. 1086 at 11:7-9.)

Finally, the definition of compliance in Paragraph 10 does more than serve as a guide to remediation (Paragraph 30) and termination (Paragraph 10.b). The 80% benchmark also "determine[s] … whether ADC has complied with particular performance measures…" (Dkt. 1185 at 3, ¶ 10.) That again is expressly stated in the Stipulation. Plaintiffs fail to address it at all.

Plaintiffs contend that an 80% compliance rate would allow Defendants to "knowingly provide inadequate care 20% of the time." (Dkt. 1806 at 12:25.) This is a twisted (and baseless) conclusion.[2] Regardless of the Stipulation, the Eighth Amendment imposes upon Defendants a duty to provide constitutionally adequate healthcare to all inmates. That constitutional duty is separate and apart from their obligations under the Stipulation, which are set by the performance measures and

---

[2] The Response actually states: "Defendants' apparent claim … that they may knowingly provide inadequate care 20% of the time [] is the very definition of deliberate indifference." (Dkt. 1806 at 12:23-26.) This is not Defendants' position at all. Defendants do not and have never intentionally provided inadequate care to any class member. Nor would they.

2

compliance provisions. Those measures and provisions are *not* constitutionally required minimums; the performance measures *exceed* constitutional minimums (and care available to most who are not in prison). So, for example, an inmate in the 20% category does not necessarily receive constitutionally inadequate care if they are not seen within 24 hours of submitting an HNR, as required by PM 37. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976) (not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment"); *id*. ("an inadvertent failure to provide adequate medical care cannot be said to constitute" a constitutional violation). They still receive care (and constitutionally adequate care), though not within the strict timeframes called for by the performance measures. Plaintiffs' contention also ignores the reality that medical staff do not know in real time what percentage of inmates are seen within the required timeframes.[3] To suggest that they turn inmates away once they hit 80% compliance is not only baseless and contrary to their constitutional duty, but impossible to knowingly (or intentionally) do.

### 2. The Court's Order effectively rewrites the Stipulation to require 100% compliance.

Plaintiffs contend the Court's Order is valid because it imposes a "less intrusive remedy" than the Stipulation requires, and effectively gives Defendants *more* time to comply with the performance measures. (Dkt. 1806 at 10-15.) It's not and it doesn't. The Order requires 100% compliance (which is *more than* 80% compliance) in just an extra hour or day (which is effectively no additional time at all). Therefore, it is *more intrusive*, not less. Their contention also misses the point. The Court's Order modifies the Stipulation's timeframes and compliance rate (for example: from 80% within 24 hours–to 100% within 25 hours) and requires Defendants to abide by those *new*

---

[3] Plaintiffs do not contest that medical staff have no idea, in real time, when they have reached the 80% threshold. (Dkt. 1806 at 15:13-19.) They flippantly say it's "irrelevant." (Id.) But if they agree that medical staff do not know when they have reached 80%, then they cannot accuse medical staff of knowingly providing inadequate care 20% of the time." (Id. at 12:25.) Thus, Defendants' point is compelling and exposes Plaintiffs' scare tactic for what it is.

requirements. The Court cannot, by law (and therefore under the Stipulation), rewrite or add provisions to the Stipulation. (Dkt. 1185 at 13, ¶ 36: court only has the "power to enforce this Stipulation through all remedies provided by law."). *See Olliver/Pilcher Ins., Inc. v. Daniels*, 715 P.2d 1218, 1221 (Ariz. 1986); *Isaak v. Massachusetts Indem. Life Ins. Co.*, 623 P.2d 11, 14 (Ariz. 1981); *Goodman v. Newzona Inv. Co.*, 421 P.2d 318, 320 (Ariz. 1966).[4]

### 3. Defendants did not misrepresent the scope of the Court's Order.

Plaintiffs' accusations of gross misrepresentation seek only to distract the Court from the merits of the arguments. The scope of the Court's Order is not in dispute (as to which performance measures and complexes it applies to). Defendants did not state or suggest the Order applied to more than what it did. Defendants' primary challenge is to the Court's authority to modify a performance measure's timeframe and compliance rate. Obviously, that challenge is directed only at those performance measures that have timeframes (PM 11, PM 13, PM 37, PM 39, PM 46, PM 54, PM 66, PM 85, PM 92), (Dkt. 1185-1 at 8-14), which happens to be all nine performance measures implicated by the Court's Order. Defendants' secondary challenge involves the logistical and security issues that the Court's Order creates. The Motion makes clear that this challenge pertains only to those performance measures that could require ADC to transport inmates outside the complex, most obviously PM 37, PM 39, PM 54, PM 66, PM 85, and PM 92. (Id.) Although the Motion discusses PM 37 and PM 39 as examples, the logistical and security issues pertain to any performance measure that could require outside transports. The Motion does not represent anything more or less.

Plaintiffs contend that Defendants have "inflate[d] the numbers" because they asserted that there were 23,805 HNRs submitted in August 2016, which represents HNRs

---

[4] Plaintiffs contend these cases are "inapposite," but they simply recite the decisions' ultimate holdings. (Dkt. 1806 at 9:20-28.) Defendants cite them for the undisputed proposition recognized in each one that the Court cannot, as a matter of law, unilaterally modify a contract. Plaintiffs do not dispute that general proposition.

4

submitted at every complex, but the Court's Order only applies to five complexes.[5] (Dkt. 1806 at 13:24, 14:9-17.) Defendants do not disagree that the Order does not apply to all ten complexes, and they never said anything to the contrary. The declaration submitted in support of the Motion demonstrates that there were 10,311 medical HNRs submitted by inmates from the four implicated complexes in August 2016. (Dkt. 1779-1 at 34-35, ¶ 35.) That number does not include dental or mental health HNRs. (Id., ¶ 14.) The number of HNRs at these complexes does not diminish the logistical and security issues that persist under the Order (or Defendants' argument).

Plaintiffs contend that Defendants "misrepresent[ed] PM 37's requirements" by stating that every HNR must result in the inmate being seen by an RN within 24 hours, when really an RN only needs to see those inmates who have been designated to the nursing sick call line. (Dkt. 1806 at 14:18-15:3.) Defendants do not disagree that PM 37 applies only to "[s]ick call inmates." (Dkt. 1185-1 at 10.) That is a prerequisite, and one that is universally understood, including by the Court. (See Ex. 1 at 10: "at hour 25 everybody who wasn't seen in those first 24 hours will be seen by an RN"; id. at 17: "if you're not seen by an RN within 24 hours in hour 25, all those who were not seen in the first 24 hours have to go to some other provider, urgent care, the emergency room, someplace else. They have to be seen by an RN. So all of those people will have to be seen by an RN.") Defendants did not think, in the interest of brevity, qualifying the word "inmates" with the phrase "sick call" was necessary. Nonetheless, that omission hardly is a misrepresentation of the scope of the Court's Order.

///

///

---

[5] PM 37 actually only applies to *four* complexes: Eyman, Lewis, Tucson, and Yuma. It does not apply to Perryville. The Court's Order states that it applies to the "facilities listed in the First Remediation Plan for which the August data demonstrated compliance below the 80% benchmark." (Dkt. 1754 at 5.) Perryville was not part of the First Remediation Plan. (Dkt. 1583 at 2; Dkt. 1608; Dkt. 1608-1; Dkt. 1609; Dkt. 1609-1; Dkt. 1668 at 10.)

5

### 4. Plaintiffs do not contest the security and safety risks that are inherent in the Court's Order.

The threat to public safety the Court's outside-transport Order poses is so apparent that Plaintiffs do not even bother to challenge it. Plaintiffs' concession should give the Court pause before affirming its Order. Plaintiffs only complaint is that Defendants should not be permitted to utilize security staff that is necessary to ensure compliance with other aspects of the Stipulation (e.g., programming and out-of-cell time) to comply with the Court's outside-transport Order. That argument corroborates the serious logistical ramifications of the Court's Order raised by Defendants. It will effectively require ADC to hire more security staff, something not even contemplated in the Stipulation. Plaintiffs say so themselves: "they must hire more custody staff and procure more vehicles." (Dkt. 1806 at 16:15-16.) Nonetheless, hiring more security staff to ensure compliance with complex performance measures (and overall institutional security) so that existing staff can escort inmates offsite for medical treatment still does not eliminate the safety risks involved in those transports (even with security).

### 5. Defendants should be given the opportunity to present evidence at a hearing.

There shouldn't be any dispute that the Court has the authority to temporarily stay its Order and set an evidentiary hearing. *See Oliva v. Sullivan*, 958 F.2d 272, 273 (9th Cir. 1992) ("District courts have inherent power to control their dockets."). Plaintiffs instead focus their argument on the purported "oral notice" Defendants received at the November 9, 2016 hearing, which permitted them to "respond orally" at that hearing. (Dkt. 1806 at 17.) What Defendants request, however, is an opportunity to present *evidence* to the Court demonstrating why the Court's outside-transport Order is a security threat and impossible to comply with. Defendants did not have that opportunity at the November hearing, when they first learned that the Court was on the verge of issuing the Order and the Court intimated it would permit Defendants to brief the issue (and then rescinded). Unlike the district court in *Armstrong v. Brown*, 768 F.3d 975, 980 (9th Cir.

6

2014), the Court did not allow Defendants "to submit a further written response." (Dkt. 1762.) And, in this instance, before issuing such a drastic order, the Court should hear actual testimony, not just read submissions.[6] Simply put, Defendants are entitled to substantive and procedural due process of law, and a transitory opportunity to "respond orally" in the heat of the moment at an unrelated hearing does not suffice.

Plaintiffs argue that any prejudice was mitigated because the Court postponed the effective date of the Order by 30 days and will consider the instant Rule 60 Motion. But these are not adequate substitutes for the presentation of live testimony, which will allow the Court to discern the credibility of the witnesses and ask them questions that could hopefully lead to a better understanding of the issues and possibly alternative plans. Moreover, since the Court has already issued its ruling, it has created a much higher burden for Defendants to overcome.

Defendants brought their Rule 60 Motion, not to "impede and delay enforcement of the Stipulation" or because they are "unwilling to address" the challenges facing them, as Plaintiffs contend (Dkt. 1806 at 5:13-16), but because they wanted an opportunity to address an Order they never had an opportunity to substantively oppose. And given the uncontested security ramifications that come with the Order, the Court should grant them that opportunity.

For these reasons, the Court should grant Defendants their requested relief.[7] (Dkt. 1779 at 10:10-17.)

---

[6] Plaintiffs fault Defendants for failing to provide "specific data or information" regarding the number of sick call inmates subject to PM 37 in August 2016, or evidence "quantifying how many class members could not be seen through existing staffing, by bringing in outside nurses, and/or through the use of telemedicine." (Dkt. 1806 at 15:4-12.) They also fault Defendants for failing to provide evidence showing that alternatives to outside transports would "not eliminate the need to transport inmates off-site." (Id. at 16:19-25.) This is precisely the type of evidence Defendants would like to present at an evidentiary hearing (and which they were deprived from presenting up to this point). Defendants believe the Court would also benefit from hearing evidence regarding ADC and Corizon's staffing efforts and challenges, and plans that have been put in place since the Court's Order.

[7] Plaintiffs' Response includes an independent Motion to Modify the Order Under Federal Rule of Civil Procedure 60(a). (Dkt. 1806 at 1, 5:24-6:3, 18:14-20:21.) Defendants will timely respond to that Motion separately.

DATED this 15th day of December 2016.

        STRUCK WIENEKE & LOVE, P.L.C.


By /s/Daniel P. Struck
   Daniel P. Struck
   Kathleen L. Wieneke
   Rachel Love
   Timothy J. Bojanowski
   Nicholas D. Acedo
   Ashlee B. Fletcher
   Anne M. Orcutt
   Jacob B. Lee
   Mark A. Bracken
   STRUCK WIENEKE & LOVE, P.L.C.
   3100 West Ray Road, Suite 300
   Chandler, Arizona  85226

   Arizona Attorney General Mark Brnovich
   Office of the Attorney General
   Michael E. Gottfried
   Lucy M. Rand
   Assistant Attorneys General
   1275 W. Washington Street
   Phoenix, Arizona 85007-2926

   *Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amir Q. Amiri: | aamiri@jonesday.com; ttualaulelei@jonesday.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| Daniel Joseph Pochoda: | dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| Jennifer K. Messina: | jkmessina@jonesday.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Kirstin T. Eidenbach: | kirstin@eidenbachlaw.com |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org |

Rita K. Lomio: rlomio@prisonlaw.com

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Daniel P. Struck

10