WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Antonio Parsons, et al., | No. CV-12-0601-PHX-DKD |
| Plaintiffs, | |
| v. | **ORDER** |
| Charles L Ryan, et al., | |
| Defendants. | |

Following the December 14, 2016 Status Hearing, the Court took several matters under advisement. There are also several motions pending before the Court. This Order addresses some of these outstanding matters.

**Calculating Dates**

The Court has issued two Orders addressing how to calculate whether Defendants are compliant with the Stipulation's requirement that certain PMs occur at regular intervals. (Docs. 1673, 1754) Defendants have asked for further clarification, noting that the Court's previous Orders have not clarified the question of how to document the months in between mandated appointments which, in turn, depends on how far the look-back period must go. (Doc. 1774) As Defendants requested, the Court will illustrate using PM 77 which states in full:

> Mental health treatment plans shall be updated a minimum of every 90 days for MH-3A, MH-4, and MH-5 prisoners, and a minimum of every 12 months for all other MH-3 prisoners.

Doc. 1185-1 at 13, 31. The Court concludes that, if the month under review does not require any health care, the monitor must look back two visits. The oldest reviewed visit

is the baseline and will be used to determine if the most recent visit was timely. If the most recent visit was timely, then the intervening months are compliant. If the most recent visit was untimely (measured by looking to the previous visit), then the intervening months are non-compliant.

To illustrate this, Inmate PM77 is classified as MH-3A (or MH-4 or MH-5), his previous two appointments were on May 14 and August 24, and his records are reviewed in September. The May appointment date shows that the August appointment was untimely. Because the August appointment was beyond the three month interval required by PM 77, his September record must be marked as non-compliant.[1] By contrast, if his previous two appointments were May 24 and August 14, then his August appointment was timely and his September record must be marked as compliant.

If the parties continue to need interpretation and examples of how to calculate dates, the Court remains amenable to providing guidance in situations not addressed by the Court's prior instructions.

Performance Measure 78. At the December 14, 2016 Hearing, the Court took under advisement the parties' dispute over enforcement of PM 78 which, by its plain language, is inextricably intertwined with PM 77.

In the Stipulation, the parties agreed to the following protocol for PM 78:

> Each record that it reviewed for treatment plan compliance [under PM77] will also be reviewed for a face-to-face SOAPE note dated the same date.

(Doc. 1185-1 at 31) The parties disagree about the universe of records to review under PM 78. Plaintiffs argue that the Stipulation requires that every PM 77 record also be subject to PM 78 review. (Doc. 1755 at 17) Defendants counter that the monitors should limit their review to the subset of PM 77 records where a visit occurred. (Doc. 1782 at 12-13)

---

[1] The Court notes that his October record would also be non-compliant and his November visit must occur by November 14 in order to be considered compliant. *See* Doc. 1754 at 2.

- 2 -

1   The Court understands the logic of Defendants' position and agrees with Plaintiffs that the Stipulation requires "each record" to be reviewed. Accordingly, the Court concludes that each record from PM 77 must be reviewed for compliance with PM 78. If a treatment plan exists, that inmate's record must be marked as compliant or not complaint with PM 78's requirements. If no treatment plan exists, that inmate's record must be marked as n/a (or some other comparable notation).

**Performance Measure 27.**

At the December 14, 2016 Status Hearing, the Court took under advisement the parties' dispute about how to determine compliance with PM 27. The PM states:

> Each ASPC facility will conduct monthly CQI meetings, in accordance with NCCHC Standard P-A-06.

(Doc. 1185-1 at 21) The protocol for determining compliance is:

> Monthly CQI meeting minutes. Monthly CQI minutes will be provided by the contracted vendor.

(*Id.*) It is undisputed that NCCHC Standard P-A-06 ("The Standard") requires quarterly meetings that address certain topics.

The parties cannot agree how to resolve the tension between the monthly meetings required by the plain language and the quarterly meetings required by The Standard. Defendants' position is that they are compliant when they conduct monthly meetings and only one meeting per quarter must contain all of the topics required by The Standard. (Doc. 1782 at 7) Plaintiffs argue that the Stipulation requires monthly meetings which are only compliant if they meet the requirements of The Standard. (Doc. 1755 at 10-11)

The Court concludes that the Stipulation requires monthly meetings where the content is dictated by The Standard.[2]

**Close Custody.**

The Court ordered Defendants to provide "competent, admissible evidence

---

[2] Defendants do not explain, nor does the Monitoring Guide capture, how a monthly review by a monitor could accurately capture quarterly compliance. *See* Doc. 17601 at 47.

- 3 -

demonstrating that (1) the enumerated facilities no longer house maximum custody inmates and (2) the conditions of close custody are substantially different from maximum custody such that close custody inmates would not otherwise qualify for protection under DI-326." (Doc. 1745 at 2)  In response, Defendants described various out-of-cell opportunities that are available to close custody inmates and argue that this increase means that their conditions are substantially different from maximum custody inmates.[3] (Doc. 1775 at 4-11)  Defendants have also informed the Court that Florence Central CB 1, 3, and 4 housed maximum custody inmates at the time of the Stipulation but now only house close custody inmates.  (Doc. 1808 at 4)

Plaintiffs counter that the definition of subclass has two parts: those in maximum custody "or" those housed in specific units and they are entitled to review records for both categories of inmates.  They also argue that the Defendants have not provided sufficient evidence to support their claim that close custody inmates have substantially different conditions than maximum custody inmates.  (Doc. 1792)

The Court agrees that Defendants have only described the potentially available programming available to close custody inmates at a subset of the units enumerated in the subclass definition.  In other words, Defendants have provided a theoretical explanation of what close custody inmates may experience without showing that any particular inmate actually has experienced these out-of-cell options.  This is not sufficient to show that inmates classified as close custody are subject to substantially different conditions than maximum custody inmates.  As a result, the Court concludes that close custody inmates are subject to substantially similar conditions as maximum custody inmates and, therefore, are part of the Subclass.

Defendants provide a different type of information about a subset of close custody inmate when they state that there are currently 276 close custody inmates who work in 20

---

[3] Defendants also indicate that they are developing a maximum custody reduction plan.  (Doc. 1775 at 12-14)  It appears that they are not seeking relief based on the development of this plan but are instead notifying the Court of this plan.  (Doc. 1808 at 5-6)

- 4 -

different positions for, on average, 30 hours per week.  (Doc. 1775 at 11)  Defendants provide the job title and how many inmates work in that position.  The specificity of this information makes it clear that a close custody inmate who works in this program does, in fact, experience substantially different conditions than the Subclass.  Accordingly, any close custody inmate who works at least 20 hours a week in the job program described by Defendants will not be considered a member of the Subclass.  The Court acknowledges that this raises additional questions such as how many weeks of work are required and does 20 hours/week mean an average or a minimum?  The Court asks the parties to meet-and-confer to develop a workable solution and, if that cannot be done, to notify the Court so that a definition can be developed.

**IT IS THEREFORE ORDERED** that the Monitoring Guide shall be updated to reflect compliance for PMs 27, 77, and 78 as described herein.

**IT IS ORDERED** that any inmate classified as close custody who works at least 20 hours/week is not a member of the Stipulation's Subclass.  Within 21 days of the date of this Order, the parties shall notify the Court that they have developed a methodology for implementing this Order or that they require the Court's assistance to do so.

**IT IS ORDERED** that all close custody inmates who are not part of the above-mentioned job program are members of the Stipulation's Subclass.

Dated this 23rd day of December, 2016.

_____
David K. Duncan
United States Magistrate Judge