Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
Mark A. Bracken, Bar No. 026532
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
mbracken@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | NO. 2:12-cv-00601-DKD |
| Plaintiffs, | |
| v. | **STATUS UPDATE** |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

Pursuant to this Court's December 23, 2016 Order (Dkt. 1831), Defendants provide the Court with an update regarding:  (1) changes to monitoring items contained in Paragraph 14 of the Stipulation; and (2) inaccurate/re-audited measures.

## I.   MONITORING CHANGES TO PARAGRAPH FOURTEEN

Defendants proposed several changes to the eOMIS software to assist in monitoring the items outlined in Paragraph 14.  The Court suggested these changes be implemented within thirty days of December 14, 2016 and requested Defendants advise whether thirty days was sufficient.  Unfortunately, according to the software developer, Marquis, the changes cannot be completed within thirty days.  Defendants will, however, have changes necessary to monitor these items implemented by February 9, 2017.

## II.   INACCURATE REPORTING ALLEGED BY PLAINTIFFS

In Plaintiffs' Status Update in Response to the Court's Order (Dkt. 1795) and Plaintiffs' Reply in Support of Plaintiffs' Motion to Enforce Stipulation (Dkt. 1680), Plaintiffs accuse Defendants of "repeatedly providing falsely inflated compliance figures to the Court."  *See* Dkt. 1795 at 5.   During the December 14, 2016 Status Hearing, the Court ordered the parties to advise how the inaccurate reporting occurred (Plaintiffs have also provided inaccurate numbers to the Court) and what steps have been taken to assure that such errors will not reoccur.  *See* Dkt. 1831 at 4.  Outlined below is an explanation regarding the CGAR numbers raised by Plaintiffs, as well as an explanation regarding additional re-audited CGARS.

### A.   Measures Raised by Plaintiffs

#### 1.   Performance Measure 14, Florence, July 2016  (Dkt. 1795 at 4)

Performance Measure 14 requires that refills for chronic care or requested by a prisoner between three and seven business days prior to the prescription running out be completed in a timely manner such that there is no interruption or lapse in medication. *See* Dkt. 1185-1 at 8.   In July 2016 at Florence, this measure only received 7% compliance. *See* Dkt. 1795 at 3.    Subsequently, it was discovered that the pharmacy log for July was incomplete, which explained the low 7% score.  As such, on October 5, 2016,

1

1    a re-audit was completed which revealed that 95% of refills requested between 3 – 7

2    business days before expiration were actually received without lapse.   As such, this

3    measure was in compliance for this month.

4         Additionally, Plaintiffs question why the re-audited CGARs would not result in

5    separate date/time stamped entries to reflect the new monitor and new date/time the re-

6    audited CGAR was published.   An explanation regarding this "back-dating" issue is

7    outlined below.

8         If it is necessary for a measure to be re-audited, the current monitor will re-audit

9    the data for the relevant month based on the data/information from that relevant month.

10   *See* Exhibit 1 (Declaration of K. Campbell) at ¶3.   The re-audited data is then input into

11   the CGAR before the revised version is produced to Plaintiffs.   *Id*. at ¶4.   Problematically,

12   however, the IT Department was not updating the CGAR with the revised information.

13   *Id*. at ¶5.   Specifically, they were not including the name of the monitor who conducted

14   the re-audit nor were they including the time and date of the re-audit.   *Id*.   Instead, the IT

15   Department was simply replacing the re-audited CGAR with the prior.   *Id*.   Defendants

16   learned of this problem and have instructed those inputting revised CGARs into the

17   system to not replace the CGAR and instead to create a new entry that details who

18   conducted the re-audit and the time and date the re-audit was conducted.   *Id*. at ¶6.   These

19   addendums will be included with the original entry so that all information as to who

20   originally monitored the measure and who re-audited the measure will be captured.   *Id*.

21              2.   **Performance Measure 66 (Dkt. 1795 at 4)**

22        Plaintiffs are correct that Defendants relied on incorrect compliance rates for this

23   measure in their November 7, 2016 Supplemental Status Report to the Court.   *See* Dkt.

24   1743 at 12 – 13.   Defense Counsel inadvertently inserted the compliance numbers for PM

25   65, instead of 66.   But Plaintiffs also provided the Court with inaccurate numbers for this

26   measure.   Specifically, when advising the Court of Defendants' error, Plaintiffs claimed

27   Defendants cited specific compliance rates which were never cited by Defendants.   *See*

28   Dkt. 1742 at 12; Dkt.1795 at 4.

### 3. **Performance Measure 80 (Dkt. 1680 at 3)**

In Plaintiffs' Reply in support of their Motion to Enforce the Stipulation (Dkt. 1680), Plaintiffs claim "Defendants falsely state [in their Response to Plaintiffs' Motion] (Dkt. 1676) that findings for [Performance Measure 80] 'are now above the 80% compliance threshold.'"   *Id.* at 3.   But Defendants' statement in their Response was accurate.   Indeed, Lewis has scored above 80% since June and Tucson has scored above 80% since August.   Because Defendants' Response was filed in September, Defendants were accurate in stating that PM 80 at these facilities was above the 80% compliance threshold at that time.

### 4. **Performance Measure 94 (Dkt. 1680 at 4)**

On September 14, 2016, Defendants filed a Notice of Errata regarding their Response to Plaintiffs' Motion to Enforce.   *See* Dkt. 1682.   In that Notice, Defendants corrected errors made in Defendants' Response to Plaintiffs' Motion to Enforce the Stipulation (Dkt. 1676).   *Id*.   Defendants explained to the Court that Defense counsel relied upon inaccurate CGAR results and some preliminary information for the July 2016 CGAR findings for PM 94.   *Id*. at 2.   Specifically, Defendants advised the Court that Eyman and Florence were not compliant in February 2016 and that Tucson achieved 100% in May, not June 2016.   *Id*. at 2.

While Plaintiffs claim Defendants inaccurately reported that Eyman, Florence, and Tucson are now above the 80% compliance threshold, Plaintiffs are mistaken.   Defendants correctly stated that Eyman and Florence have been above 80% since June and that Tucson has been above 80% since July.   And the October results confirm these facilities maintained compliance in September and October.   (ADCM701408; ADCM701453; ADCM701674; ADCM750385; ADCM750433; ADCM750647.)

Thus, Defendants incorrectly reported compliance percentages to the Court on three occasions.   Defendants believe these errors occurred by incorrectly relying on the wrong "row" in Defendants' excel spreadsheet of compliance data, similar to the errors made by Plaintiffs' counsel.   *See* Dkt. 1831.   Defendants would never intentionally

mislead this Court into believing measures are performing at higher rates than they actually are.   In fact, Plaintiffs have also provided the Court with inaccurate numbers. But, because Defendants understand mistakes occur, they do not believe Plaintiffs' mistakes were done intentionally.   Defendants do understand, however, that the Court relies on the compliance rates reported by the parties and will carefully review all compliance rates before they are reported to the Court.  Defendants' counsel apologize to the Court and counsel for any confusion and inconvenience these errors have caused.

### B.   Additional Re-Audited Measures

#### 1.   Performance Measures 94, 95, and 98

Due to the auditing errors described below, PMs 94, 95, and 98 were re-audited from March 2015 – June 2016 for the Winslow Complex.  *See* Exhibit 2 (Declaration of N. Taylor) at ¶4.   Each of these measures was originally audited by the Compliance Monitor for Winslow, John Mitchell.  *Id*. at ¶4.    While Plaintiffs only voiced concerns regarding PM 98, Defendants provide the Court with a summary regarding all three re-audits.

For PM 94, charts were marked non-compliant when the inmate was seen by a Psych Associate.   *Id*. at ¶7.   Unfortunately, there was confusion regarding the Psych Associate's level of licensure.  *Id*.  When it was determined she had an active AZ license, as defined in the Stipulation, and that her contacts should be counted compliant pursuant to this measure's requirements, her contacts were re-audited.  *Id.*

For PM 95, Mr. Mitchell was incorrectly including compliance data from prior and/or subsequent months.  *Id*. at ¶8.  This irrelevant data was eliminated and the measure was re-audited.  *Id*.  Additionally, charts were incorrectly marked non-compliant because the above referenced Psych Associate was discontinuing watches.  *Id*.  Again, when it was determined she had an active AZ license, and therefore was allowed to discontinue watches pursuant to this measure, those contacts were re-audited.   *Id*.

For PM 98, Mr. Mitchell thought this measure required a five *calendar* day timeframe when it requires a five *working* day timeframe.  *Id*. at ¶9.  As such, many

4

HNRs were marked non-compliant when they were actually completed within the required time frame. *Id*. Additionally, he was inadvertently monitoring only whether a clinician responded rather than whether "mental health staff" responded, as this measure requires. This measure was therefore re-audited. *Id*. The re-audited CGARS accurately depict compliance for Winslow for the above referenced measures during the reporting month. *Id*.

To ensure the Court has full disclosure of all re-audited measures to date, the following chart outlines all measures for which re-audits were performed:

| HC PM # Revised/Reissued | CGAR DATE | COMPLEX | DATE REISSUED | BATES |
|---|---|---|---|---|
| HC PM #40 | 2015-03 | Eyman | 01/19/16 | ADCM273956-64 |
| HC PM #66 | 2015-10 | Lewis | 01/19/16 | ADCM274525 |
| HC PM #14 | 2016-07 | Florence | 11/18/16 | ADCM662686-87 |
| MC PM #9 | 2016-07 | Phoenix | 11/18/16 | ADCM722445-50 |
| HC PM #45 | 2016-09 | Tucson | 12/01/16 | ADCM722908-14 |
| HC PM #31 | 2015-04 | Florence | 12/27/16 | ADCM757517 |
| HC PM #31 | 2015-04 – 2015-06 | Lewis | 12/27/16 | ADCM757518-20 |
| HC PM #31 | 2015-07 | Eyman | 12/27/16 | ADCM757521 |
| HC PM #31 | 2015-09 | Tucson | 12/27/16 | ADCM757522 |
| HC PM #31 | 2015-10 | Lewis | 12/27/16 | ADCM757523 |
| HC PM #31 | 2015-11 | Douglas | 12/27/16 | ADCM757524 |
| HC PM #31 | 2015-11 | Florence | 12/27/16 | ADCM757525 |
| HC PM #31 | 2015-12 | Eyman | 12/27/16 | ADCM757526 |
| HC PM #31 | 2016-03 – 2016-04 | Tucson | 12/27/16 | ADCM757527-28 |
| HC PM #94, 95, 98 | 2015-03 – 2016-06[1] | Winslow | 12/28/16 | ADCM757529-559 |

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1] There were no changes for May and September 2015.

5

DATED this 28th day of December 2016.

STRUCK WIENEKE & LOVE, P.L.C.


By /s/Daniel P. Struck
     Daniel P. Struck
     Kathleen L. Wieneke
     Rachel Love
     Timothy J. Bojanowski
     Nicholas D. Acedo
     Ashlee B. Fletcher
     Anne M. Orcutt
     Jacob B. Lee
     Mark A. Bracken
     STRUCK WIENEKE & LOVE, P.L.C.
     3100 West Ray Road, Suite 300
     Chandler, Arizona  85226

     Arizona Attorney General Mark Brnovich
     Office of the Attorney General
     Michael E. Gottfried
     Lucy M. Rand
     Assistant Attorneys General
     1275 W. Washington Street
     Phoenix, Arizona 85007-2926

     *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 28, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alison Hardy:                ahardy@prisonlaw.com

Amelia M. Gerlicher:         agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com

Amir Q. Amiri:               aamiri@jonesday.com; ttualaulelei@jonesday.com

Amy B. Fettig:               afettig@npp-aclu.org

Asim Varma:                  avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

Caroline N. Mitchell:        cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

Corene T. Kendrick:          ckendrick@prisonlaw.com; edegraff@prisonlaw.com

Daniel Clayton Barr:         DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

Daniel Joseph Pochoda:dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org

David Cyrus Fathi:           dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

Donald Specter:              dspecter@prisonlaw.com

Jennifer K. Messina:         jkmessina@jonesday.com

Jessica Pari Jansepar Ross:   jross@azdisabilitylaw.org

John Howard Gray:            jhgray@perkinscoie.com; slawson@perkinscoie.com

John Laurens Wilkes:         jlwilkes@jonesday.com, dkkerr@jonesday.com

Jose de Jesus Rico:          jrico@azdisabilitylaw.org

Kathleen E. Brody            kbrody@acluaz.org

Kirstin T. Eidenbach:        kirstin@eidenbachlaw.com

Maya Abela                   mabela@azdisabilitylaw.org

Rose Daly-Rooney:            rdalyrooney@azdisabilitylaw.org

Sara Norman:                 snorman@prisonlaw.com

Sarah Eve Kader:             skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org

7

1    Rita K. Lomio:          rlomio@prisonlaw.com

2

3          I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

4

5          N/A

6                                        /s/Daniel P. Struck

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28