Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br> <br>Plaintiffs, <br> <br>v. <br> <br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br> <br>Defendants. | NO. 2:12-cv-00601-DKD <br> <br> <br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO MODIFY STIPULATION (Dkt. 1790)** <br> <br>**[Evidentiary Hearing Requested]** |

**INTRODUCTION**

The Court should deny Plaintiffs' Motion to Modify Stipulation (Dkt. 1790) in total.  The Court has already determined that the Stipulation does not allow it to order general staffing increases.  Plaintiffs' request for reconsideration is untimely and improper and provides no persuasive basis for a contrary interpretation.  The plain language of the Stipulation is consistent with Defendants' intent and position from the outset of this litigation, and the Court's specific recall during the negotiations—the Court is not authorized to order any staffing (general or specific).

Plaintiffs' alternative request to modify the Stipulation is also foreclosed by the plain language of the Stipulation—it is *not* a consent decree subject to judicial modification.  Thus, the Court does not have the power to modify the terms of the Stipulation, much less the authority to write-out an express limitation on its authority.  Only the parties can agree to mutually modify the Stipulation.  Even if the Court had such authority, Plaintiffs have failed to satisfy *their* burden of showing that their proposed modification—deleting the no-staffing provision—is authorized.  That burden required Plaintiffs to establish a significant change in circumstance. Though they loft various reasons why they would like to see the provision removed, none of them constitutes legal grounds to modify the Stipulation in that material way.  Plaintiffs have buyer's remorse, but their belated regrets are not a legitimate basis for such a material modification.  Nor are their general assertions of substantial noncompliance, their professed desire to effectuate the purpose of the Stipulation, or their purported effort to somehow respect the public interest (as they have argued, without legal support). The legal prerequisite to modification—a significant change in circumstance—is entirely missing.

The relief Plaintiffs seek is drastic.  If the Stipulation is transformed into a consent decree, contrary to its explicit disclaimer that it is not, and/or if the Court grants itself the authority to order more staff, despite an express limitation, then the whole reason for entering into the agreement in the first place is gone.  That is inequitable and unfair and a

1

violation of Defendants' due process rights.[1]  If the Court is inclined to consider taking such a drastic step, then Defendants request it first set an evidentiary hearing so that they can further refute Plaintiffs' allegations and the Court can make specific findings on the record.  *See Johnson v. Robinson*, 987 F.2d 1043, 1050 (4th Cir. 1993) ("To modify a consent decree to impose new obligations, a district court must at a minimum (1) provide specific notice that it is contemplating the imposition of obligations in addition to those contained in the decree; (2) allow the parties an opportunity to present relevant evidence on the need for the additional obligations and the proper character of those obligations; and (3) issue specific findings that support a determination that modification is warranted."); *see also Hughes v. United States*, 342 U.S. 353, 357-58 (1952).

## I.    THE COURT SHOULD DENY PLAINTIFFS' DUPLICATIVE REQUEST TO RECONSIDER THEIR GENERAL STAFFING PLAN INTERPRETATION.

Plaintiffs once again argue that the Stipulation permits the Court to order "general staffing increases."  (Dkt. 1790 at 6:6.)  The Court has already rejected this argument at least twice.  (Transcript of 9/8/16 Status Conference at 7:24-25 ["The stipulation bars me from ordering the hiring of additional personnel."]; Transcript of 11/9/16 Status Conference at 6:1-24 ["I do not think that I can, as plaintiffs again invite me to, act to address … staffing issues.  I don't think I can provide the remedy the plaintiffs continue to ask for under the terms … of the stipulation.  And I've told you all that before … I cannot address that"].)  These were not tentative rulings, as Plaintiffs suggest.  (Dkt. 1790 at 6:8-9.)  The Court was very clear and definitive.

Plaintiffs' request is really a motion for reconsideration. (Dkt. 1790 at 5:21 ["Plaintiffs *renew* their arguments set forth in their Statement Regarding Defendants'

---

[1]  Defendants never would have entered into this Stipulation without the language expressly limiting court-ordered staffing increases. (See Ex. 1, 2, 3.)  It is a material term of this contract and its evisceration would obliterate one of the most fundamental provisions of the Stipulation. Furthermore, contrary to Plaintiffs' allegation, the evisceration of this critical provision does not transform the Stipulation into a consent decree; rather, it results in either specific performance litigation or proceeding to trial on the merits, at Defendants' election.

1   August 2016 CGAR Data … As noted, Plaintiffs *have* raised this issue *before*"], citing

2   Dkt. 1739 at 6-7, emphasis added.)   If raised under LRCiv 7.2(g), their December 1

3   request is untimely if taken from either the Court's September 8 or November 9 rulings.

4   *See* LRCiv 7.2(g)(2) (motion for reconsideration must be filed within 14 days).   If made

5   pursuant to Fed.R.Civ.P. 60(b), it is improper because Plaintiffs do not set forth any

6   argument that encompasses the grounds for relief under that Rule and merely "disagree

7   with the Court's interpretation of the Stipulation." (Dkt. 1790 at 6:18.)   *See Ctr. for*

8   *Biological Diversity v. Norton*, 304 F. Supp. 2d 1174, 1178 (D. Ariz. 2003) ("It is not the

9   proper function of a Rule 60(b) motion to reargue matters that have already been

10  litigated.").   For these reasons alone, the Court should summarily deny Plaintiffs'

11  reconsideration request.   *See Am. Ironworks & Erectors Inc. v. N. Am. Constr. Corp.*, 248

12  F.3d 892, 899 (9th Cir. 2001) (district court does not abuse its discretion by denying a

13  Rule 60(b) motion where movant merely reargues issues raised previously).

14          Impropriety aside, the plain language of the Stipulation—which Defendants agree

15  is the best indicator of the parties' intent—categorically rejects any authority for the Court

16  to order "general staffing increases." (Dkt. 1790 at 6:6, 7:28.)   Under the Stipulation, the

17  Court cannot order Defendants "to hire a specific number or type of staff."   (Dkt. 1185,

18  ¶ 36.)  It is hard to fathom—and Plaintiffs do not even attempt to show—what a "general

19  staffing order" would look like.  The reality is that any order pertaining to staffing *must* be

20  specific as to the number and/or type of staff to have any meaning; otherwise, compliance

21  with a general order to "increase staff" could be accomplished by hiring a (one)

22  receptionist or groundskeeper (non-healthcare staff).  That is meaningless.  *See Scholten v.*

23  *Blackhawk Partners*, 909 P.2d 393, 396 (Ariz. App. 1995) ("[A] contract should be

24  construed to give effect to all its provisions and to prevent any of the provisions from

25  being rendered meaningless.").  Thus, the Stipulation can only mean one thing:  the Court

26  cannot issue *any* order pertaining to staffing because to do so it would *have* to be specific

27

28

3

1    as to the number and/or type of staff.  That is expressly prohibited.[2]

2          Plaintiffs' reliance on other construction principles to cast doubt on what is and

3    should be obvious from the Stipulation's plain language is futile.  Citing *Taylor v. State*

4    *Farm Mut. Auto Ins. Co.*, 854 P.2d 1134 (Ariz. 1993), they first contend that the Court

5    cannot rely on what it heard and saw first-hand during its involvement in the settlement

6    negotiations.[3]  *Taylor* does not support that contention.  In explaining the proper

7    application of the parol evidence rule in Arizona, the court in *Taylor* rejected the more

8    restrictive view—that parol evidence may be used "only upon a finding that some

9    language in the contract is unclear, ambiguous, or vague."  854 P.2d at 1138.  The court

10   explained the inherent danger of that approach:  "what appears plain and clear to one

11   judge may not be so plain to another[,] and the judge's decision, uninformed by context,

12   may not reflect the intent of the parties."  *Id*.  The better rule, the court concluded, "is that

13   the judge first considers the offered evidence and, if he or she finds that the contract

14   language is 'reasonably susceptible' to the interpretation asserted by its proponent, the

15   evidence is admissible to determine the meaning intended by the parties."  *Id*. at 1140.

16   Under that approach, "the parol evidence rule is not violated because the evidence is not

17   being offered to contradict or vary the meaning of the agreement.  To the contrary, it is

18   being offered to explain what the parties truly may have intended."  *Id*.  This approach

19   also avoids a court's "often irresistible temptation to automatically interpret contract

20   language as he or she would understand the words" under the guise of ruling that the

21   language is unambiguous.  *Id*. at 1139.

22   _____

23         [2] A general order would also be unlawful and unenforceable.  *See* Fed.R.Civ.P.
     65(d) (an injunction must "state its terms specifically" and "describe in reasonable detail
24   … the act … required"); 18 U.S.C. § 3626(a)(1)(A) (prospective relief in prisoner cases
     must be "narrowly drawn" and "extend[] no further than necessary to correct the violation
25   of the Federal right"); *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989)
     ("Civil contempt is appropriate only when a party fails to comply with a court order that is
26   both specific and definite.").

27         [3] This refers to the Court's statement that Plaintiffs' "general staffing"
     interpretation is "not consistent with what [its] impression was of the parties'
28   understanding at the time that the stipulation was negotiated." (Transcript of 11/9/16
     Status Conference at 6:8-9.)

The Court's recall of the settlement negotiations—which is entirely consistent with what Defendants intended (Ex. 1, ¶¶ 9-11; Ex. 2, ¶ 11; Ex. 3, ¶ 14)—did not violate these principles. The Court is not resorting to its own interpretation of the Stipulation's no-staffing provision. The Court is relying on first-hand knowledge of what the parties actually intended that provision to mean. That knowledge is not inconsistent with the plain language of the provision, and it is reasonably susceptible to Defendants' interpretation. Therefore, it was not improper for the Court to consider what it actually knew (not its "own understanding" of what the provision means without that insight) to determine what the parties intended.[4]  *See Wald v. Crabb*, 1 CA-CV 15-0352, 2016 WL 2653586, at *2 (Ariz. App. May 10, 2016) (settlement judge properly "reviewed her notes and specifically recalled" whether term was part of settlement agreement). In fact, Plaintiffs agreed for this Court to resolve disputes stemming from the Stipulation precisely because "his constructive participation in the settlement negotiations has provided him with a unique ability to effectuate the parties' intent." (Dkt. 1186 at 2.)

Plaintiffs next argue that the Court's interpretation renders the words "specific number" and "type of" superfluous. But as discussed above, these words are precisely what give the provision meaning (and enforceability). A general order to increase staff is meaningless if the Court does not direct the kind and quantity. In other words, the Court cannot order an increase in staff without specifying the number and type.

Plaintiffs next point out that the "no prison" exception immediately preceding the no-staffing provision is not similarly modified either by number or type. (See Dkt. 1185, ¶ 36 ["the Court shall not have the authority to order Defendants to construct a new prison"].) But Plaintiffs do not explain why the absence of a modifier to the no-prison provision means the no-staffing provision should be interpreted more narrowly.

_____

[4] The Court should be able to take judicial notice of its own actual knowledge, pursuant to Fed.R.Evid. 201. Furthermore, Plaintiffs do not proffer any parol evidence of their own to support their narrow interpretation of the Stipulation's no-staffing provision. Thus, the Court has the plain language of the Stipulation, its own recall of the negotiations, and Defendants' stated intent to draw from.

Moreover, unlike the cases Plaintiffs rely on, this is not a situation involving *related* but different words or phrases that indicate the drafters intended to give the words different meanings. *See S.E.C. v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) ("'Applications' are distinct from 'actions.' The two words are not interchangeable. Congress's use of the word 'application,' rather than 'action,' in § 21(e) is significant."); *Serv. Steel Warehouse Co., L.P. v. McDonnel Group, LLC*, CV 14-1416, 2016 WL 128152, at *5 (E.D. La. Jan. 11, 2016) ("Further, because the bond includes two different forms of compensatory language, the text of the bond suggests that "labor and material" is distinct from "sum or sums as may be justly due each claimant" after suit is filed."). The exceptions for no "prison" and no "staff" are different matters altogether.

Plaintiffs know full well what the parties intended: a prohibition on any order to increase staff. That is obvious from the plain language of the Stipulation and common sense. The Court should again reject Plaintiffs' unsupported interpretation to the contrary. *See Taylor*, 854 P.2d at 1139 ("At what point a judge stops listening to testimony that white is black and that a dollar is fifty cents is a matter for sound judicial discretion and common sense.").

## II.   THE COURT SHOULD DENY PLAINTIFFS' REQUEST TO MODIFY THE STIPULATION.

### A.   The Court Does Not Have the Power to Modify the Stipulation.

Because the plain language of the Stipulation prohibits the Court from ordering "general staffing increases," Plaintiffs alternatively ask the Court to "delete" the provision altogether. (Dkt. 1790 at 9:13.) The Court cannot do this. Plaintiffs' authorities confirm that a court's power to modify extends only to consent decrees and court-ordered injunctions.[5] The Stipulation is neither one.

---

[5] *See Salazar v. Buono*, 559 U.S. 700, 708, 714-19 (2010) (court has equitable authority to modify a court-ordered injunction); *Frew v. Hawkins*, 540 U.S. 431, 441 (2004) (court may modify a "consent decree" under Rule 60(b)(5)); *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992) (same); *United States v. Asarco Inc.*, 430 F.3d 972, 979 (9th Cir. 2005) (same); *Clark v. Coye*, 60 F.3d 600, 606 (9th Cir. 1995) ("[A] federal court which has *imposed an injunction* also retains the power to suspend or modify it.") (Emphasis added); *Nicacio v. U.S. I.N.S.*, 797 F.2d 700, 706 (9th Cir. 1985)

6

Defendants' obligations under the Stipulation did not result from any finding of wrongdoing or unlawfulness (Dkt. 1185, ¶ 5), nor do they derive from a court-ordered injunction. The Stipulation is a negotiated settlement agreement voluntarily entered into by the parties. (Dkt. 1185.) Thus, the Court does not have "equitable" authority to modify it. *See Salazar*, 559 U.S. at 714 (equitable authority to modify extends to court-ordered injunctive relief); *Clark*, 60 F.3d at 606 (same).

The Court also does not have the authority to modify the Stipulation pursuant to Rule 60(b)(5) because it is not a consent decree. A consent decree "is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo*, 502 U.S. at 378. Plaintiffs absolutely know that Defendants consistently refused their overtures to enter into a consent decree, dating back to the outset of this litigation. (Ex. 1, ¶¶ 4-5, 8.) The Court also knows that Defendants refused to entertain the idea of a consent decree. (Id., ¶¶ 5-6.)

Although a consent decree was a non-starter, Defendants did agree to end the litigation through a creative resolution, whereby Defendants agreed to perform certain measures for a finite period of time, and the Court (which was the settlement judge at the time) agreed to resolve any disputes concerning allegations of non-compliance. To make clear that the parties were not entering into a consent decree, they: (1) titled the agreement a "Stipulation"; (2) they specifically agreed therein that the "Stipulation shall not be construed as a consent decree"; and (3) they agreed that the Stipulation "may not be altered or modified, except by a writing signed by all representatives of all parties at the

---

("[A] court which *issues an injunction* retains jurisdiction to modify the terms of the injunction if a change in circumstances so requires.") (Emphasis added).

Plaintiffs cite *Bellevue Manor Associates v. United States*, 165 F.3d 1249 (9th Cir. 1999), and *Valdivia v. Schwarzenegger*, 599 F.3d 984 (9th Cir. 2010), to suggest that modification authority extends to settlement agreements. But *Bellevue* involved a court-ordered injunction and merely applied the standard for evaluating Rule 60(b)(5) motions, as announced in *Rufo*, outside the institutional reform context. 165 F.3d at 1251, 1255 & n.5. *Valdivia* similarly applied the *Rufo* standard to a court-imposed injunction. 599 F.3d at 994.

1    time of modification." (Ex. 2, ¶¶ 10, 12; Ex. 3, ¶¶ 13-15; Dkt. 1185 at 1 & ¶¶ 35, 40.)

2         Plaintiffs argue that the parties' description of their agreement as a "Stipulation"

3    and not a "Consent Decree" is irrelevant "nomenclature." (Dkt. 1790 at 10:22-23.)  That

4    position is entirely inconsistent with Plaintiffs' other arguments that the plain language of

5    the Stipulation does matter and controls.  The title of the agreement is a Stipulation, not a

6    consent decree, because the parties did not agree to enter into a consent decree.

7         Plaintiffs do not even mention or discuss the express disclaimer in the Stipulation

8    that it "shall not be construed as a consent decree."[6]  That disclaimer is proof positive that

9    the parties did *not* desire for or expect the Stipulation to be enforceable as a judicial

10   decree subject to Rule 60(b)(5) or judicial modification.[7] (Ex. 2, ¶ 10; Ex. 3, ¶ 13.)  *See*

11   *Rufo*, 502 U.S. at 378.  And if there was any doubt, the parties expressly precluded the

12   Court from modifying the terms of the Stipulation.  (Ex. 2, ¶ 12; Ex. 3, ¶ 15; Dkt. 1185,

13   ¶ 40.)  Plaintiffs also fail to raise or discuss that provision.

14        Even if the Court had the theoretical authority to modify the Stipulation, such

15   authority still would not permit the Court to remove the no-staffing provision in order to

16   allow it to order more staffing.  Any authority the Court has derives from the Stipulation

17   (as agreed upon by the parties).  The Stipulation expressly *limits* the Court's authority in

18   at least one significant respect: "the Court shall not have the authority to order Defendants

---

[6] It is troubling that Plaintiffs fail to bring this to the Court's attention, and that they chose not to make any consent-decree argument in their Motion (other than their cursory "nomenclature-is-irrelevant" argument) despite its obvious relevance and the certainty that Defendants would challenge it in their Response. That intentional choice has precluded Defendants from responding to any particular arguments they may have (if any). The Court should strike any arguments they attempt to raise for the first time in their Reply. *See Expeditors MJG Enters., Inc. v. Cloyd*, No. CV-10-0086-PHX-MHM, 2010 WL 3842222, *6 n.1 (D. Ariz. Sept. 27, 2010) (striking arguments and evidence raised for the first time in a reply because non-moving party did not have the opportunity to respond to them).

[7] The relief Plaintiffs seek—for the Court to remove the no-staffing provision—also does not fit in the *Rufo*/Rule 60(b)(5) framework, which, by its terms, applies only when a party who is obligated to perform under a consent decree seeks to get out from that obligation for equitable reasons. *See* Fed.R.Civ.P. 60(b)(5) (court may "relieve a party … from a final judgment, order, or proceeding" if "applying it prospectively is no longer equitable"); *see also Jeff D. v. Kempthorne*, 365 F.3d 844, 853 (9th Cir. 2004).

8

to … hire a specific number or type of staff."  (Dkt. 1185, ¶ 36; Dkt. 1458 at 6.)  It would be *in*equitable and unjust for the Court to invoke any general authority it may have to remove the bargained-for express limitations on that authority.

**B.    Plaintiffs Have Not Met Their Burden of Establishing a Significant Change in Circumstances Warranting Modification.**

To modify the Stipulation, Plaintiffs have the burden of showing "a significant change either in factual conditions or the law." *Rufo*, 502 U.S. at 384.  Significant change includes "changed factual conditions [that] make compliance with the decree substantially more onerous." *Id*.  If a significant change exists, modification is appropriate if the "decree proves to be unworkable because of unforeseen obstacles … or when enforcement of the decree without modification would be detrimental to the public interest."  *Id*. at 384-85.  Plaintiffs argue that modification is appropriate here because: (1) there has been substantial noncompliance with the Stipulation; (2) it is necessary to achieve the Stipulation's purpose; and (3) the absence of a modification is detrimental to the public interest.  As discussed below, these are not valid bases to delete the no-staffing provision. Plaintiffs' request to modify the Stipulation is supported "by nothing more than the notion [it is] 'no longer convenient to live with,' which does not warrant Rule 60(b)(5) relief under *Rufo*." *Smith v. Bd. of Educ. of Palestine-Wheatley Sch. Dist.*, 769 F.3d 566, 574 (8th Cir. 2014).

**1.    Substantial noncompliance is not an adequate basis to modify the Stipulation.**

Plaintiffs first contend that Defendants' purported "substantial noncompliance" with the performance measures qualifies as a significant change in circumstance that authorizes deletion of the no-staffing provision.  This argument fails for two reasons. First, noncompliance is not a "factual condition[] [that] make[s] compliance with the decree substantially more onerous."  *Rufo*, 502 U.S. at 384.  It's a conclusion of noncompliance.  Plaintiffs' theory is that inadequate staffing has caused noncompliance. Following that theory, inadequate staffing would be the "factual condition[] [that] make[s]

9

1    compliance with the decree substantially more onerous.  *Id.*  *Rufo*, however, requires a

2    "change[]" in factual conditions that was "unforeseen."  Plaintiffs cannot say that the

3    current staffing levels were an unforeseen change.  From the outset of this litigation,

4    throughout its course, and to the present, Plaintiffs have asserted that Defendants' staffing

5    is inadequate.  And they expressly agreed—notwithstanding that firmly-held belief—that

6    the Court could not order more staffing as part of the Stipulation.  Thus, Plaintiffs'

7    argument cannot be based on an unforeseeable change in staffing levels.  They certainly

8    have not provided any evidence that staffing has *decreased* in any material way.

9        None of the cases Plaintiffs cite support their substantial-noncompliance argument.

10   (Dkt. 1790 at 11:24-12:13.)  Those cases hold only that substantial noncompliance may

11   justify *the extension of a consent decree's time frame*.[8]  Plaintiffs are not seeking to do

12   that.  Thus, substantial noncompliance is not a basis to delete the no-staffing provision.

13   Plaintiffs cite no authority that supports the type of modification they request.

14       Second, Plaintiffs have not established that Defendants are in substantial

15   noncompliance with the Stipulation.  They point out that the Court has made 83 findings

16   of substantial noncompliance (based on 15 performance measures (PMs) at multiple

17   facilities).  But these 83 findings are only a small percentage of the total reported PMs

18   required to be reported under the Stipulation each month.  There are 112 PMs in total

19   under the Stipulation, most of which are applicable at all 10 ADC complexes.  (Dkt.

20   1185.)  The total universe of reported measures each month is 846.  (Ex. 3, ¶ 52.)  The

21
22       [8] *See Labor/Cmty. Strategy Ctr. v. Los Angeles County Metro. Transp. Auth.*, 564
     F.3d 1115, 1120-21 (9th Cir. 2009) ("The failure of substantial compliance with the terms
     of a consent decree can qualify as a significant change in circumstances that would justify
23   the decree's temporal extension."); *see also Kelly v. Wengler*, 822 F.3d 1085, 1098 (9th
     Cir. 2016) (district court's "extension of the settlement agreement" for substantial
24   noncompliance was "within the court's inherent power"); *David C. v. Leavitt*, 242 F.3d
     1206, 1213 (10th Cir. 2001) ("[T]he district court's conclusion that the Agreement should
25   be modified to extend the term of the Agreement was not an abuse of discretion.");
     *Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1020 (6th Cir. 1994) ("The
26   district court's conclusion that without the modification extending the life of the consent
     decree for two more years, the number of minorities in supervisory ranks of the City's
27   Division of Fire would regress is not clearly erroneous."); *Holland v. New Jersey Dept. of
     Corr.*, 246 F.3d 267, 284 (3d Cir. 2001) ("Courts have extended a decree … when one
28   party was in substantial non-compliance with the decree.").

1    Court has previously found Defendants to be non-compliant on only 83 out of the total

2    846 measures, or 10% of the total measures required to be reported under the Stipulation.

3    (Id., ¶ 53.)  The Court has *not* found Defendants to be in substantial non-compliance with

4    the remaining 90% of the total measures required to be reported under the Stipulation.

5         Moreover, the Court's 83 findings of non-compliance were based on data from

6    June 2016 or earlier.  More recent compliance reporting in the August, September, and

7    October 2016 CGARs shows that of the 83 findings of non-compliance, 50 were in

8    compliance in August 2016, 54 were in compliance in September 2016, and 53 were in

9    compliance in October 2016.  (Ex. 3, ¶ 56.)  This leaves only 33 findings of non-

10   compliance for August 2016, 29 findings of non-compliance for September 2016, and 30

11   findings of non-compliance for October 2016 out of 846 total reported measures for each

12   month. (Id., ¶ 57.)  Overall, Defendants were compliant with 689 out of the 846 total

13   reported measures, or 81%, for August 2016.  (Id., ¶ 58.)  Defendants were compliant with

14   734 out of the 846 total reported measures, or 87%, for September 2016. (Id.)  Defendants

15   were compliant with 723 out of the 846 total reported measures, or 85%, for October

16   2016. (Id.) The recent CGAR results show that contrary to Plaintiffs' assertions,

17   Defendants are substantially compliant with the Stipulation as a whole, and that

18   compliance rates for the few measures the Court has previously found to be in non-

19   compliance are trending upward.  And recent statistics from Corizon's monthly reporting

20   show that the scope and breadth of healthcare services provided to ADC inmates is

21   staggering—in October 2016 alone, ADC inmates had 90,325 healthcare encounters with

22   a qualified health care professional.  (Ex. 4, ¶¶ 9-133.)

23        In addition, Defendants have implemented an innovative change in the way

24   inmates request and receive healthcare.  In response to the Court's November 10, 2016

25   Order requiring that Defendants transport inmates to outside providers if they cannot be

26   seen within 24 hours, Defendants instituted the open clinic concept, which functions as an

27   open sick call system for inmates in minimum, medium, and close custody.  (Ex. 3, ¶¶ 60,

28   63.)  Rather than submitting Health Needs Requests ("HNRs") in collection boxes, these

11

inmates may now proceed directly to the health unit during open clinic hours (which have been extended to 12 hours a day, 7 days a week) and present an HNR to medical staff, who triage the HNR with the inmate and determine whether the inmate needs to be seen immediately by nursing or referred to an appropriate provider.  (Id., ¶¶ 60-67.)  This new process has been so successful that there is no longer any backlog in inmates being seen within 24 hours of submission of an HNR. (Id., ¶ 72.)  Defendants expect that compliance rates for PM 37, which have historically been low, will improve dramatically for December 2016 and remain compliant in future months.  (Id., ¶ 73.)

At a minimum, Defendants' improved compliance with the few measures previously found to be non-compliant and the changes in the process by which inmates request and receive healthcare warrant an evidentiary hearing to obtain evidence on the current state of healthcare at ADC before the Court makes any sweeping changes to the Stipulation.

## 2. Failed remedial attempts is not an adequate basis to modify the Stipulation.

Plaintiffs next argue that Defendants' failure to include increased staffing in its remedial plans allows the Court to delete the no-staffing provision.  (Dkt. 1790 at 14:15-28.)  The three cases they cite do not support this novel proposition.  *Frew* did not involve the modification of a consent decree.  The sole issue was whether the Eleventh Amendment bars enforcement of a consent decree entered into by state officials.  540 U.S. at 430.  In holding that it does not, the court simply recounted that states may utilize Rule 60(b)(5) and *Rufo*'s framework to modify a consent decree if it chooses.  *Id*. at 438-42.  The court in *Armstrong v. Brown*, 768 F.3d 975 (9th Cir. 2014), did not address either Rule 60(b)(5) or *Rufo*'s application.  There, the court only addressed whether the district court erred in modifying an injunction without a hearing, and if the modified injunction violated the PLRA.  *Id*. at 980-82.  And finally, in *Ball v. Rodgers*, CV 00-67-TUC-EHC, 2010 WL 797146, at **2-5 (D. Ariz. Mar. 8, 2010), the district court held only that the defendant's attempt to comply with a court-ordered injunction fell short of what was

1    ordered, and therefore ordered the defendant to do what it was ordered to do again. There

2    were no modifications of the original injunction, much less a modification because of a

3    failed remediation plan.   *Id.*   None of these cases—or the substance of Defendants'

4    remediation plan—authorize the Court to delete the no-staffing provision.

5            On May 20, 2016, the Court ordered Defendants to submit a remedial plan as to 12

6    performance measures at certain facilities.   (Dkt. 1583.) Defendants submitted their

7    remedial plan on June 13, 2016, pointing out that results from the plan, even if fully

8    implemented and put in place at the beginning of July, would not be reflected until at least

9    September, due to the nature of the monitoring cycle.   (Dkt. 1608 at 2.)   During the

10   hearing on September 8, 2016 regarding the remedial plan, Defendants' counsel noted that

11   additional time would be necessary to see improvement in compliance rates from the plan,

12   but the Court nonetheless made a finding that Defendants' remedial plan had failed and on

13   November 10, 2016 ordered that Defendants transport inmates to outside providers if the

14   inmates were not seen within the required timeframes (e.g, 24 hours, 14 days, etc.).

15   (Transcript of 09/08/16 Status Hearing at 12:5-13:7; Dkt. 1754 at 3-4.) Unlike in

16   *Armstrong*, which involved decades of continued and repeated noncompliance despite

17   multiple opportunities for correction, here Defendants were given the opportunity to

18   submit only one remedial plan as to the 12 performance measures at issue in the May 20,

19   2016 Order, and their performance was evaluated only a few months later, before the

20   effects of the plan could be fully realized.   Moreover, here the Stipulation has been in

21   effect for less than two years, and Defendants are already compliant with 85% of the total

22   performance measures under the Stipulation and have shown improved compliance on the

23   majority of the 15 measures previously found non-compliant.

24            **3.      To "effectuate the purpose" of the Stipulation is not an adequate**
                        **basis to modify it.**
25

26          Relying on *Brown v. Plata*, 563 U.S. 493, 543 (2011), Plaintiffs contend that the

27   Court can modify the Stipulation "when necessary to effectuate [its] purpose," and that

28   since Defendants cannot fully comply with the terms of the Stipulation without staffing

increases, modifying the Stipulation to delete the no-staffing provision "is the surest way to promote the overriding purpose of the Stipulation [providing constitutionally adequate medical, mental health, and dental care]." (Dkt. 1790 at 12:14-13:5, 16:24-17:10.) *Brown* does not create any such rule.

The passage in *Brown* cited by Plaintiffs relates to the three-judge court's ruling to reduce the California inmate population within two years.[9] 563 U.S. at 541-43. The state argued that two years was not enough time to comply. *Id.* After concluding that the three-judge court did not err in establishing the two-year deadline (particularly because the state did not object), the court noted that the state could move to modify the order if it made the requisite "showing" "that the injunction should be altered." *Id.* at 542-43. The court admonished that the three-judge court "must remain open to appropriate modification" and give any such requests "serious consideration." *Id.* at 544-45. Thus, in context, the court did *not* hold that modification is appropriate if it is necessary to effectuate the intent of the parties' agreement. It reaffirmed that a party must make the requisite "showing or demonstration … that the injunction should be altered" [a significant change in circumstance] and that a court "must remain open" to those requests "to ensure that the rights and interests of the parties are given all due and necessary protection." *Id.* at 542-43.[10]

In addition to no legal support, Plaintiffs' factual assertions are overstated. Defendants' substantial compliance with the Stipulation belies their contention that compliance "cannot be effectuated without additional health care and custody staff." (Dkt. 1790 at 16:28.) And their repeated contention—based primarily on their own experts' opinions—that more staffing will "fix" the situation have yet to be tested. That is precisely why an evidentiary hearing is needed.[11] Defendants also note that the

---

[9] "Under the PLRA, only a three-judge court may enter an order limiting a prison population." *Brown*, 563 U.S. at 512 (citing 18 U.S.C. § 3626(a)(3)(B)).

[10] Plaintiffs' argument is further undermined by the fact that *Brown* did not cite *Rufo* at all. And like *Rufo*, *Brown* involved a consent decree.

[11] Plaintiffs contend that Defendants "admit that inadequate staffing is at the root of

Stipulation addresses not only medical and mental health care, but also dental care and conditions of confinement. Plaintiffs do not allege "persistent deficiencies" in performance measures pertaining to dental care or conditions of confinement, much less a need for increased staffing in these two areas. (Dkt. 1790 at 17:1-8)  Finally, the purpose of the Stipulation must be contemplated in conjunction with the plain terms of the Stipulation, which explicitly prohibit the Court from ordering more staffing.  Thus, modifying the Stipulation to remove that limitation directly undermines the Stipulation and ignores Defendants' "rights and interests."  *See Brown*, 563 U.S. at 542-43.

### 4.      The public interest is not an adequate basis to modify the Stipulation.

Relying on *Rufo*, Plaintiffs argue that a modification is authorized because "enforcement of the Stipulation without the requested modification will be detrimental to the public interest." (Dkt. 1790 at 17:13-14.)  Once again, Plaintiffs quote *Rufo* out of context.  In adopting a flexible approach, the court observed:

> The Courts of Appeals have also observed that the public interest is a particularly significant reason for applying a flexible modification standard in institutional reform litigation because such decrees "reach beyond the parties involved directly in the suit and impact on the public's right to the sound and efficient operation of its institutions."

502 U.S. at 381 (emphasis added).  In other words, the court adopted a flexible standard because decrees involving institutions "reach beyond the parties involved directly in the suit."  *Id*.  Although *Rufo* later states that modification is appropriate "when enforcement of the decree without modification would be detrimental to the public interest," 502 U.S. at 760, in context, it is clear a significant change in circumstances is a prerequisite to modification separate and apart from considering the impact of not ordering a

their failure to meet the benchmarks of the Stipulation." (Dkt. 1790 at 14:10-14.) But an examination of the "evidence" they rely on for that proposition reveal mostly statements by a handful of staff that point out staffing *vacancies*, not the need for additional staffing. Again, an evidentiary hearing will allow Defendants to demonstrate the efforts Corizon has made to hire more staff (and fill the existing vacant positions) and the challenges they face. Defendants cannot force people to accept employment, and hiring more staff will not mean 100% compliance.

modification.  To support this proposition, the court cited *Duran v. Elrod*, 760 F.2d 756, 759-61 (7th Cir. 1985), and recognized that the modification in that case was "allowed to avoid pretrial release of accused violent felons."  *Rufo*, 502 U.S. at 385.  Indeed, *Duran* held that: "When an equity decree affects other people besides the parties to it, the judge must take account of the interest of those people—the public interest—in his decision whether to grant or deny equitable relief."  760 F.2d at 759.  Thus, *Rufo* still requires a significant change in circumstances before a modification can be considered; it is only once Plaintiffs have made that showing that a court should consider the public's interest in the absence of the proposed modification.  *See United States v. Jefferson County, Ala.*, CV-74-S-17-S, 2013 WL 4482970, at *16 (N.D. Ala. Aug. 20, 2013) (quoting *Rufo*) ("According to the Supreme Court, modification based on factual change may be warranted … 'when enforcement of the decree without modification would be detrimental to the public interest.'"); *Freeman v. City of Fayetteville*, 971 F. Supp. 971, 974 (E.D. N.C. 1997) ("Changes in factual circumstances warrant modification or termination of a consent judgment … where enforcement of the decree 'would be detrimental to the public interest.'") (quoting *Rufo*).  Plaintiffs have not made that initial showing.

If anything, the modification—deleting the no-staffing provision to allow the Court to order additional staffing—is contrary to the public's interest.  The Supreme Court has long held that federal courts should "respect the role of states in the administration of their correctional systems." *Johnson*, 987 F.2d at 1050 (citing *Bell v. Wolfish,* 441 U.S. 520, 547 (1979)).  That deference "extends not only to internal security concerns, but also to the comprehensive planning and commitment of resources that are 'peculiarly within the province of the legislative and executive branches of government.'" *Id*. (quoting *Procunier v. Martinez,* 416 U.S. 396, 405 (1974)).  Even *Rufo* recognized that such deference is appropriate when considering whether to modify a consent decree involving correctional reform.  502 U.S. at 391-92.  That deference is appropriate here.

**C.    The Proposed Modification is Not Suitably Tailored to Resolve What Plaintiffs Contend is a Change in Circumstance.**

If "a moving party has met its burden of establishing either a change in fact or in law warranting modification of a consent decree, the district court should determine whether the proposed modification is suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 391.  In deciding whether a proposed modification is suitably tailored, "the focus should be on whether the proposed modification is tailored to resolve the problems created by the change in circumstances. A court should do no more[.]"  *Id*.  A proposed modification "should not strive to rewrite a consent decree[.]"  *Id*.  Plaintiffs' Motion is largely non-responsive to this inquiry. They repeat that there has been substantial noncompliance, the speculative cause of which is inadequate staffing, and that Defendants' remedial plans have not provided for more staffing.  These are all refuted above.  Deleting the no-staffing provision is a drastic response to the minimal substantial noncompliance findings in the short amount of time Defendants have had thus far.  And it would effectively give the Court unfettered discretion to order staffing. That result is disproportionate to the circumstance. It also comes with significant financial implications. "Financial constraints … are a legitimate concern of government defendants in institutional reform litigation and therefore are appropriately considered in tailoring a consent decree modification."  *Rufo*, 502 U.S. at 392-93.  The Court cannot adequately determine whether the proposed modification is suitably tailored without at least holding an evidentiary hearing to learn about the resulting financial burden.

## CONCLUSION

For these reasons, Plaintiffs' Motion to Modify Stipulation (Dkt. 1790) should be denied.

17

DATED this 4th day of January 2017.

STRUCK WIENEKE & LOVE, P.L.C.


By /s/Nicholas D. Acedo
    Daniel P. Struck
    Kathleen L. Wieneke
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    Ashlee B. Fletcher
    Anne M. Orcutt
    Jacob B. Lee
    STRUCK WIENEKE & LOVE, P.L.C.
    3100 West Ray Road, Suite 300
    Chandler, Arizona  85226

    Arizona Attorney General Mark Brnovich
    Office of the Attorney General
    Michael E. Gottfried
    Lucy M. Rand
    Assistant Attorneys General
    1275 W. Washington Street
    Phoenix, Arizona 85007-2926

    *Attorneys for Defendants*

18

**CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amir Q. Amiri: | aamiri@jonesday.com; ttualaulelei@jonesday.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| Daniel Joseph Pochoda: | dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| Jennifer K. Messina: | jkmessina@jonesday.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Kirstin T. Eidenbach: | kirstin@eidenbachlaw.com |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org |

19

1   Rita K. Lomio:          rlomio@prisonlaw.com

2

3          I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

4

5          N/A

6                                        /s/Nicholas D. Acedo

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28