**EXHIBIT 1**

**EXHIBIT 1**

Arizona Attorney General Mark Brnovich
OFFICE OF THE ATTORNEY GENERAL
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>    Plaintiffs,<br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>    Defendants. | NO. 2:12-cv-00601-DKD<br><br>**DECLARATION OF MARK BRACKEN** |

I, **MARK BRACKEN**, make the following Declaration:

1. I am over the age of 18 years and have personal knowledge of and am competent to testify to the matters set forth in this Declaration.

2. During the post-Stipulation monitoring period in this litigation, Plaintiffs' counsel have conducted 23 facility tours.

3. As counsel for Defendants, I attended the November 1-2, 2016 prison tours at the Arizona State Prison Complex – Tucson ("ASPC-Tucson").

4. At the beginning of each tour, counsel for Plaintiffs and Defendants met in the administrative training office at the facility.

5. On November 1, 2016, once all of Plaintiffs' counsel arrived (at about 9:05 am), I asked them where they wanted to tour. Plaintiffs' counsel provided me a list of inmates who they wanted to speak with and units they wanted to visit.

6. This was the first time Defendants' counsel and Arizona Department of Corrections ("ADC") staff knew these specifics.

7. Plaintiffs' counsel split into three groups: one group visited Rincon Minors Unit; one group visited the In-Patient Care Center ("IPC") and Housing Units 7 and 8 in Rincon Unit; and one group visited Cimarron Unit.

8. I accompanied Plaintiffs' counsel Alison Hardy (Prison Law Office) and Chris Carlsen (Arizona Center for Disability Law) as they toured Rincon IPC, and Housing Units 7 and 8.

9. During our November 1 tour, Ms. Hardy interviewed various Corizon medical staff and inmates.

10. Neither Ms. Hardy nor Mr. Carlsen informed me, or anyone else in our tour group, of any alleged intimidation or retaliation occurring during that tour.

11. I also did not observe any conduct suggesting the inmates were uncomfortable speaking to their attorneys or felt threatened by ADC staff. Ms. Hardy and Mr. Carlsen were able to speak to all inmates who were available to meet with them.

12. During my portion of the tour on November 1, only three issues arose, which were immediately discussed and resolved between counsel. The first issue pertained to the end-time of the tour; the second issue pertained to Ms. Hardy speaking with an inmate on the recreation yard around the corner of a building out of eyesight; and the third issue pertained to Ms. Hardy's aggressive treatment of certain medical staff (resulting in one nurse leaving in tears). Plaintiffs' counsel never made any allegation of staff intimidation or retaliation.

13. The next morning, on November 2, 2016, before the tours began, I personally addressed the aggressive-questioning issue with Plaintiffs' counsel. I relayed to them that some medical staff believed Plaintiffs' counsels' questions were aggressive and abusive, and that one staff member was brought to tears. I reminded them that many of the medical staff are new to their positions, may not be familiar with this litigation, and are not accustomed to being interviewed by attorneys while trying to do their work. I also reminded Plaintiffs' counsel that they should allow Defendants' counsel an opportunity to first approach medical staff and ensure they are available for a brief interview, so that inmate care is not interrupted. Despite the opportunity, Plaintiffs' counsel did not raise any allegation of staff intimidation or retaliation occurring the day before.

14. The tour then continued. After lunch, around 12:30 pm, I asked Plaintiffs' counsel where they wanted to tour that afternoon. Plaintiffs' counsel Kirstin Eidenbach told me they had an urgent matter that needed to be addressed before the tours continued. I returned to their room a few minutes later with AAG Rand, Defendants' counsel Jacob Lee, AAG Ashley Zuerlein, ASPC-Tucson Warden Alfred Ramos, Southern Region Operations Director ("SROD") Tara Diaz, Northern Region Operations Director Ernest Trujillo, and Assistant Director Health Services Contract Monitoring Bureau Richard Pratt.

15. Plaintiffs' counsel told us they were suspending the remainder of the tour due to allegations of intimidation and retaliation by staff against inmates. Specifically, Ms. Eidenbach stated she overheard Deputy Warden ("DW") Jason Monson order staff to

3

1  "ticket them all."  She further stated inmates would no longer speak with them (that day)
2  after DW Monson gave this order.

3        16.    Ms. Eidenbach then told us that two inmates had allegedly told Ms. Hardy
4  during her interviews the day before (November 1) that a correctional officer told them to
5  answer the questions correctly or he would make their lives "a living hell."  Although Ms.
6  Hardy had multiple opportunities on November 1, and prior to the tour on November 2, to
7  inform me of any alleged inmate intimidation issues, she never did.  We asked Plaintiffs'
8  counsel if they had any further information regarding the alleged intimidation on
9  November 1, but they did not want to identify the inmates and would only say they were
10 in Rincon Unit, Building 7 or 8 (as those were the last two buildings Ms. Hardy visited the
11 day before).  They would not be more specific.  When asked, Plaintiffs' counsel did not
12 know when the alleged events occurred, where specifically these events occurred, or
13 which officer made the alleged threats.

14       17.    I told Plaintiffs' counsel that Defendants took their allegations very
15 seriously and wanted to work with them to continue the tours because Defendants had
16 spent considerable time and resources organizing them.  I also urged Plaintiffs' counsel to
17 continue touring other Units in ASPC-Tucson (outside of Rincon Unit).  Plaintiffs'
18 counsel said they would consider touring other Units, but wanted to discuss the issue with
19 the Court before making a final decision.

20       18.    On November 2, 2016, at approximately 1:30 p.m., we participated in a
21 conference call with the Court.  The following individuals were present during the call:
22 AAG Lucy Rand, Defendants' counsel Jacob Lee, AAG Ashley Zuerlein, ASPC-Tucson
23 Warden Alfred Ramos, SROD Tara Diaz, Northern Region Operations Director
24 ("NROD") Ernest Trujillo, Assistant Director Health Services Contract Monitoring
25 Bureau Richard Pratt, myself, and all Plaintiffs' attorneys who were on the tour that day.
26 The conference call was conducted with all of these individuals huddled around a phone,
27 talking into a speaker. As evidenced by the transcript of the call, Plaintiffs' counsel,
28 Kirsten Eidenbach and Allison Hardy spoke over Ashley Zuerlein when she attempted to

4

advise the Court that she was on the runs when these alleged comments were made and that she did not hear them.

19. I have reviewed Plaintiffs' Motion for Contempt (Dkt. 1819). In their Motion, Plaintiffs claim "Defendants did not dispute that the actions described [by Kirstin Eidenbach during the November 2, 2016 call with the Court] took place." (*Id.* at 3.) Plaintiffs support that statement with a comment I made during the call, where I stated, "we're not disputing what she said she heard or what she said occurred." As described above, however, the conference call was conducted in a chaotic setting; my comments are taken out of context. What I meant by my comment was that I could not dispute what Ms. Eidenbach claimed she heard or what she claimed occurred, because I was not present in the unit at that time and no investigation had been done. I was therefore not in a position to argue that she mis-heard (or did not hear) what she claimed she heard. I could only assume, for purposes of the call, that she heard what she heard, and argue there was no evidence that the comments were made in retaliation for inmates speaking with Plaintiffs' counsel (because there was none; there was only speculation). My subsequent comments during the call demonstrate that we did dispute Ms. Eidenbach's allegations (that any threat was made by staff). And our subsequent investigation revealed that no threat was made.

20. After the call, we continued to discuss this issue with Plaintiffs' counsel and again gave them an opportunity to continue the Tucson tour. Plaintiffs' counsel declined our multiple invitations to continue the tour.

21. I have accompanied Plaintiffs' counsel on approximately 14 facility tours during the course of this litigation and observed the conduct of the Wardens, Deputy Wardens, and other staff on these tours.

22. I have observed Wardens, Deputy Wardens, and other supervisory employees use their cell phones to photograph operational and security issues they observe during the tours.

1   I declare under penalty of perjury that the foregoing is true and correct.
2   Executed this 4th day of January, 2017.

*/s/ Mark Bracken*
_____
MARK BRACKEN

28  3270516.1