## Index of Exhibits to Declaration
## of David C. Fathi

**Exhibit 1**     October 2016 CGAR report for PM 94 at Eyman **(FILED UNDER SEAL)**

**Exhibit 2**     October 2016 CGAR report for PM 94 at Florence **(FILED UNDER SEAL)**

**Exhibit 3**     October 2016 CGAR report for PM 94 at Tucson **(FILED UNDER SEAL)**

**Exhibit 4**     December 28, 2016 letter from Plaintiffs' counsel to Defendants' counsel

**Exhibit 5**     December 30, 2016 letter from Plaintiffs' counsel to Defendants' counsel

**Exhibit 6**     Plaintiffs' request and Defendants' response regarding production of memorandum created by Dr. Lynn Calcote, Corizon Regional Mental Health Director, for ADC monitors regarding the meaning of "seen"

**Exhibit 7**     December 23, 2016 letter from Plaintiffs' counsel to Defendants' counsel

# EXHIBIT 1

# FILED UNDER SEAL

# EXHIBIT 2

# FILED UNDER SEAL

# EXHIBIT 3

# FILED UNDER SEAL

# EXHIBIT 4



PRISON LAW OFFICE
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

December 28, 2016

Mr. Daniel Struck
Struck, Wieneke & Love, P.L.C.
3100 West Ray Road, Suite 300
Chandler, AZ 85226
dstruck@swlfirm.com

RE: *Parsons v. Ryan*, Defendants' Compliance With Doc. 1754

Dear Mr. Struck,

I write regarding the parties' telephone conference today regarding the new "open clinic" concept that Defendants have stated is designed to comply with the Court's November 10 Order (Doc. 1754). Thank you for providing us the written notices and making your clients available to offer a further explanation of how it is designed to work.

As we explained on the call, while the open clinic appears to be designed to comply with the Order with regard to Performance Measure 37 at Eyman, Lewis, Tucson, and Yuma prisons, we are unclear how this clinic is applicable to, or complies with, the Court's order with regard to the other eight performance measures (PM 11 – Eyman, Florence, Lewis; PM 13 – Florence, Lewis, Perryville; PM 39 – Eyman, Florence, Lewis, Perryville, Tucson; PM 46 – Douglas, Florence, Perryville, Tucson, Yuma;  PM 54 – Tucson; PM 66- Tucson; PM 85 – Florence, Lewis, Tucson; PM 92 – Perryville).  You stated that this concept was designed to address PM 37, but may also have an impact on PM 39.  <u>We asked that you provide us an update by the end of the week about how Defendants are complying with the Court's Order with respect to the other eight measures, and how such compliance is being monitored</u>.

Mr. Pratt explained that with regard to PM 37 and the open clinic, Defendants determine compliance with the Order by looking at whether there is a backlog, and that Corizon has developed a tracking sheet or dashboard that shows every HNR, the time it was submitted, and when the prisoner was seen.  He stated that we will be able to see this dashboard/tracking system next week when we are at Lewis prison.  Dr. Taylor explained that with regard to PMs 85 and 92, Corizon developed a "dashboard" similar to that used for PM 37, showing which prisoners are close to hitting the 30 day time limit, and that telepsychiatry services will be used if there are any prisoners who are not seen within 30 days.  Both Mr. Pratt and Dr. Taylor stated that initial information shows that the timeframes of these three Performance Measures are not being exceeded with these new systems.  <u>We asked that we be provided with the dashboard documents or any other documents that show compliance or noncompliance for PMs 37, 85, and 92.  You stated that Defendants would provide this as soon as possible and at the latest prior to the next status conference hearing scheduled for January 11, 2017</u>.

Board of Directors
Penelope Cooper, President • Michele WalkinHawk, Vice President
Marshall Krause, Treasurer • Christiane Hipps • Margaret Johns
Cesar Lagleva • Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

Mr. Dan Struck<br>
RE: Compliance With Doc. 1754<br>
December 28, 2016<br>
Page 2

   Finally, during the call we provided you a memo sent to prisoners at Florence by the Deputy Warden of the South Unit, which appears to contradict the notices you provided us that stated prisoners could come to open clinic any time between 7 am and 7 pm. You were not familiar with this memo, and we expressed our concerns that the memo limits prisoners' access to nurse's line to only a two-hour window. <u>We request that you provide us with clarification as to the discrepancy, and whether Florence prisoners would have their HNRs accepted and would be seen, or if they would be turned away, if they came to the open clinic outside their two hour window.</u>

   Thank you for your attention to this matter. We look forward to receiving the additional information that you will be providing.

              Sincerely yours,

              */s/ Corene Kendrick*

              Corene Kendrick

cc:  Counsel of Record

# EXHIBIT 5

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT



BY EMAIL ONLY

December 30, 2016

Daniel P. Struck
Struck, Wieneke & Love
3100 West Ray Road, Suite 300
Chandler, AZ 85226
dstruck@swlfirm.com

    Re: Parsons v. Ryan

Dear Dan:

AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

As you are aware, the Court has on several occasions ruled that the monitoring methodology employed by Defendants for some Performance Measures is invalid and must be changed. We write with several requests related to the Court's rulings.

First, we request that Defendants provide Plaintiffs and the Court a revised version of the Monitoring Guide that incorporates all of the past agreements between the parties, and the changes ordered by the Court. (These agreements and ordered changes are listed below).[1] We request that we also be provided a "track changes" red-line version of the Guide, or in the alternative, a Microsoft Word version of the Guide so that we can run a comparison of the current Guide against past versions.

Second, we request that Defendants work with us and the Court to develop a system by which in the future Defendants submit proposed changes to the Monitoring Guide and protocol to the Court and to Plaintiffs. *See* 12/14/16 Tr. at 15:20-23, 16:8-12 ("[M]y view is that you don't get to make a unilateral change without having it presented to the Court and having me have the chance to do what Paragraph 9B provides for me to do, and that is to determine what protocol should be employed. [. . .] I don't like the idea of change in the protocol . . . that is unilateral, and I don't like the change in protocol that is – in some instances a diversion or a departure from previous conduct because it interferes with my belief that I need to reduce variables.") We proposed to the Court that it order a notification process modeled upon Arizona administrative law requirements for state agencies to notify the public of regulatory and rule changes. *See* Doc. 1755-1. We would like to discuss our proposal prior to the next status hearing on January 11, 2017, or at the hearing itself.

---

[1] You told the Court at the Dec. 14, 2016 Status Hearing that the monitoring methodology for PM 86 had been revised and agreed to provide that revision to Plaintiffs, but to date a revised version has not been provided. *See* 12/14/16 Tr. at 46:7-23.

1

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Third, we request that Defendants ensure that a complete record has been kept since March 2015, and will be kept going forward, listing all individual health care records that were reviewed by the monitors in creating the CGARs, so that there is an audit trail to confirm the accuracy of the reports, and to assist in performing re-audits of past CGARs.

Finally, we request that Defendants recalculate compliance scores for all Performance Measures for which the Court has ruled that Defendants' monitoring methodology is invalid, using the methodology required by the Court. Such recalculations are necessary for all months in which Defendants used a methodology that has been invalidated by the Court. This request includes the following Performance Measures:

Health Care Performance Measures (hereinafter "PM") 16, 27, 35, 66, 67, 69, 89, 91, 93, 94, 95; Isolation Performance Measures 6 and 8 (Doc. 1831 at 1-2) (invalidating Defendants' "partial credit" method of calculating compliance).

PM 27 (Doc. 1833 at 3).

PM 33, 34, 75, 76 (Doc. 1673 at 2-3) ("intake" PMs apply to all newly-arrived inmates, including revoked parolees).

PM 35 (Doc. 1831 at 2).

PM 44 (Doc. 1831 at 2).[2]

PM 60, 61 (Doc. 1831 at 2).

PM 73, 74, 76, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 94, 95 (Doc. 1745 at 1) (cellfront encounters do not satisfy the requirement that a patient be "seen" except in specified circumstances).

PM 73, 74, 76, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 94, 95 (Doc. 1673 at 4-5) (group contacts do not satisfy the requirement that a patient be "seen").

PM 73, 77, 80, 81, 82, 83, 84, 86, 87, 88, 89, 90, 92 (Doc. 1673 at 4; Doc. 1833 at 1-2) ("every X days").

PM 78 (Doc. 1833 at 3-5).

PM 85 (Doc. 1673 at 5-6; Doc. 1831 at 2).

---

[2] PM 46 and PM 52 have two-part "review and act upon" requirements identical to that set forth in PM 44. Accordingly, the methodology for PM 46 and 52 must be modified to come into compliance with the Court's order regarding PM 44, and past compliance figures for PM 46 and 52 must be recalculated using the correct methodology.

2

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

      PM 86 (Doc. 1673 at 6; Doc. 1754 at 1-2; Doc. 1831 at 2).

      PM 98 (Doc. 1673 at 8; Doc. 1831 at 2).

      Paragraphs 12, 14, and 15 of the Stipulation (Doc. 1673 at 1-2).

We also request that Defendants recalculate compliance scores for all Performance Measures for which the parties have negotiated a change in methodology:

      PM 17:  (Doc. 1626-1 at 80; Doc. 1626-2 at 37; Doc. 1756-1 at 53)

      PM 21:  (Doc. 1626-1 at 80; Doc. 1626-2 at 41; Doc. 1756-1 at 38)

      PM 24:  (Doc. 1626-1 at 81; Doc. 1626-2 at 44)

      PM 25:  (Doc. 1626-1 at 81; Doc. 1626-2 at 45; Doc. 1756-1 at 54, 79)

      PM 39:  (Doc. 1626-1 at 25-26, 31, 46; Doc. 1626-2 at 60-61)

      PM 40:  (Doc. 1626-1 at 27, 32-33, 46; Doc. 1626-2 at 62)

      PM 41:  (Doc. 1626-1 at 27, 32-33; Doc. 1626-2 at 63)

      PM 48:  (Doc. 1626-1 at 47-48, 52; Doc. 1626-2 at 72-73)

      PM 49:  (Doc. 1626-1 at 47-48, 53, 63; Doc. 1626-2 at 74-75)

      PM 50:  (Doc. 1626-1 at 48-49, 63; Doc. 1626-2 at 76-77)

      PM 51:  (Doc. 1626-1 at 48-49, 55-56; Doc. 1626-2 at 78-79)

      PM 54:  (Doc. 1626-1 at 49-50, 56; Doc. 1626-2 at 83-84)

      PM 100:  (Doc. 1626-2 at 134; Doc. 1756-1 at 57, 85; Doc. 1782 at 19-20)

      PM 101:  (Doc. 1626-2 at 135; Doc. 1756-1 at 57-58, 85; Doc. 1782 at 19-20)

We request a response to this letter by January 9, 2017, so that we may promptly raise these issues with the Court if necessary.

Very truly yours

David C. Fathi

Cc:   All counsel

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

4

# EXHIBIT 6

## SUPPLEMENTAL DOCUMENTS
### December 15, 2016

| | Documents | Date Requested | Request Notes: | Request Response Notes: |
|---|---|---|---|---|
| 19 | All documents demonstrating policies and practices in the Minors Units at Tucson and Perryville which establish out-of-cell time, exercise, education, and all other programming on a weekly and/or monthly basis. | 11/15/16 | | 11/17/16 RESPONSE: The Stipulation does not require monitoring of Tucson Minors.  Until such time as the Court requires the monitoring of minors, Defendants are not required to produce this documentation, as it is not "information reasonably necessary to perform [Plaintiffs'] responsibilities required by this Stipulation". (Dkt. 1185 at 12.) |
| 20 | All documents reflecting, discussing, or establishing policies and/or practices around "enhance security" in the maximum custody units. | 11/15/16 | | 11/17/16 RESPONSE: All policies and practices related to "enhanced security" have been requested, if any, Defendants will update their response. |
| 21 | All documents reflecting, discussing, or establishing policies and/or practices related to refusals of programming, exercise, and/or other out-of-cell time for prisoners in maximum custody units. | 11/15/16 | | 11/17/16 RESPONSE:  All policies and practices related to refusals of programming, exercise/recreation and/or other out-of-cell time for inmates in max custody units is contained within DI 326 or the CGAR Monitoring Guide, which has already been produced to Plaintiffs. |
| 22 | All documents reflecting, discussing, or establishing policies and/or practices related to programming and out-of-cell time for prisoners on the death row unit. | 11/15/16 | | 11/17/16 RESPONSE: All policies and practices related to programming and out-of-cell time for condemned row inmates is contained within DI 326, which has already been produced to Plaintiffs. |
| 23 | All written direction or instructions provided to ADC or Corizon staff regarding the meaning of the term "seen" in Performance Measures 73-99, including but not limited to the written memorandum referred to by Dr. Calcote during a meeting with plaintiffs' counsel at ASPC-Tucson on November 2, 2016. | 12/15/16 | | **12/16/16 RESPONSE: OBJECTION:  To the extent these documents even exist, this request is overly broad, vague and ambiguous, irrelevant, and not required to be produced under the Stipulation, as it is not "information reasonably necessary to perform [Plaintiffs'] responsibilities required by this Stipulation". (Dkt. 1185 at 12.)  OBJECTION: To the extent these documents even exist, this request contemplates producing documents that are protected by the attorney-client and/or work-product privileges. OBJECTION: To the extent these documents even exist, these documents are unduly burdensome to produce and are likely maintained by a large number of individuals and; therefore, are not maintained and/or organized in such a manner as to be readily or easily obtainable without undue effort and disruption to the prison and/or medical staff.** |

17

# EXHIBIT 7

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT



AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

December 23, 2016

**BY ELECTRONIC MAIL ONLY**

Lucy Rand
**OFFICE OF THE ARIZONA ATTORNEY GENERAL**
1275 West Washington Street
Phoenix, AZ 85007-2926
Lucy.Rand@azag.gov

   Re:  *Parsons v. Ryan*

Dear Lucy:

*Missing mortality records*

It appears that Defendants have not produced the following documents pertaining to prisoners who have died by suicide in ADC facilities:

- Armando Aguilar (died 3/9/16)
    - Psychological autopsy
    - Mortality Review

- Donald Whitaker (died 5/3/16)
    - Psychological autopsy
    - Mortality Review

- Pete Perales (died 9/17/16)
    - Mortality Review

- Alejandro Orona (died 11/23/16)
    - Psychological autopsy
    - Mortality Review
    - Medical Examiner Report
    - Medical record

Production of these documents is required by Paragraph 29 of the Stipulation (and, in the case of medical examiner reports, by agreement of the parties). Please produce these documents without further delay.

We acknowledge your statement in response to our December 15, 2016 document request that you have produced the mortality review for Mr. Aguilar and the mortality review and psychological autopsy for Mr. Whitaker, but after

a thorough search we are unable to locate these documents. Kindly produce them or, if you continue to believe they have already been produced, please provide the Bates numbers assigned to these documents.

*Written instructions to staff regarding meaning of "seen"*

Our December 15, 2016 document request seeks "[a]ll written direction or instructions provided to ADC or Corizon staff regarding the meaning of the term 'seen' in Performance Measures 73-99, including but not limited to the written memorandum referred to by Dr. Calcote during a meeting with plaintiffs' counsel at ASPC-Tucson on November 2, 2016." We do not believe your objections to this request are meritorious; for example, Dr. Calcote's memorandum is plainly not protected by the attorney-client privilege or work product doctrine; our request for it is not "vague and ambiguous," and its production would not be "unduly burdensome."

Based upon your response, it is our understanding that you decline to produce any documents in response to this request; accordingly, we will ask Judge Duncan to order production. Please let us know if our understanding is incorrect.

Very truly yours,

David C. Fathi

cc:     All counsel

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

2