Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org
         dpochoda@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia
Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith,
Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner,
Joshua Polson, and Charlotte Wells, on behalf of themselves and all
others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
         adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-DKD |
| Plaintiffs, | **PLAINTIFFS' MOTION TO ENFORCE THE STIPULATION** |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

LEGAL134131393.1

Plaintiffs, by and through their undersigned counsel, hereby move this Court to exercise its inherent powers and those outlined in the Stipulation (Doc. 1185 ¶¶ 35-36) to enforce the terms of the Stipulation and order Defendants to take immediate and substantial action to remedy gross and dangerous deficiencies within their health care system that continue to prevent the provision of adequate health care and place class members in grave danger of serious harm or death.

## INTRODUCTION

Nearly two years after the Stipulation took effect, Defendants remain grossly out of compliance with its terms.  In the Stipulation's second year, Defendants are required to be at least 80% compliant with all of the performance measures.  [*Id.* ¶ 10.a.ii.; *see also id.* ¶ 20.a.ii.]  Their own data continue to demonstrate a substantial lack of compliance.

On July 29, 2016, Plaintiffs served a Notice of Substantial Non-Compliance ("July Notice") on Defendants with regard to Performance Measures 31, 35, 39, 40, 44, 50, 51, 52, 55, 73, 74, 76, 80, 86, 87, 88, and 94-99.  That Notice is attached as Exhibit 1 to the Declaration of David C. Fathi ("Fathi Decl."), filed herewith.  On October 4, 2016, Plaintiffs served a Notice of Substantial Non-Compliance ("October Notice," (hereinafter collectively referred to with the July Notice as "Notices")) with respect to Performance Measures 4, 37, 45, and 73.  [Fathi Decl., Ex. 2]  On August 29, 2016 and November 3, 2016, Defendants responded to these notices.  [*Id.*, Exs. 3 and 4]  Thereafter the parties conducted meet and confers on September 29 and November 30, 2016 to try to resolve the disputes in the Notices.  Although Plaintiffs withdrew their Notice of Substantial Non-Compliance for two Performance Measures, the parties otherwise reached impasse.  [Doc. 1827]  On December 19, 2016, the parties mediated the issues raised by both Notices before Magistrate Judge Bade, which resulted in Plaintiffs partially withdrawing their Notice with respect to two additional Performance Measures.  [*Id.*]  This motion follows.

1
2

## I.   DEFENDANTS ARE SUBSTANTIALLY NON-COMPLIANT WITH NUMEROUS PERFORMANCE MEASURES AT MULTIPLE PRISON COMPLEXES

3
4
5
6
7
8
9
10

The Court has defined substantial non-compliance under the Stipulation to mean failing to meet "the threshold that is required by the Stipulation for a particular complex for a particular reporting period." [9/8/2016 Hr'g Tr. at 30:9-11; *see also* Doc. 1583 at 1:24-2:5][1]  This means that substantial noncompliance is defined by the percentage of compliance Defendants report in their monthly compliance reports, or CGARs.  The Court further clarified that a single month below the compliance threshold for a given reporting period at a given complex amounts to substantial noncompliance.  [9/8/2016 Hr'g Tr. at 31:2-12]

11
12
13
14
15
16
17

The Notices presented Plaintiffs' analysis of Defendants' reporting data, highlighting the complexes and months that were substantially noncompliant under the Stipulation for each listed performance measure.  The July Notice only contained data through May 2016, and the October Notice only contained data through July 2016.[2] Given the significant lapse in time between service of the Notices and this motion, Plaintiffs have updated the charts here to include the most recent compliance data that has been made available to Plaintiffs at the time of filing, from October 2016.

18
19
20
21
22
23
24
25

Additionally, the Parties have been litigating disputes regarding the methodology Defendants use to compile and analyze their monitoring data, and disputes regarding Defendants' unilateral changes to their methodology for some performance measures resulting in "partial credit" or improvements in previously non-compliant measures.  The Court has issued multiple orders, finding Defendants' monitoring methodology to be invalid in numerous respects, and finding that Defendants cannot unilaterally change the way they evaluate performance.  [*See, e.g*., Docs. 1673, 1745, 1754, 1831, 1833]  In light of these rulings, much of Defendants' self-reported compliance data may understate the

26

---

27
[1] All citations to the Court's docket are to the page numbers assigned by the Court's Electronic Case Filing system.

28
[2] Defendants provide Plaintiffs with the CGAR monitoring reports for a given month at least 45 days after the end of the month.

degree of substantial non-compliance, as it was calculated using methodologies that the Court has found to be inconsistent with the Stipulation.

**A.     July 29, 2016 Notice of Non-Compliance**

Plaintiffs notified Defendants on July 29, 2016 that their compliance results indicated substantial noncompliance with a multitude of performance measures.

**Performance Measure 35**:  All inmate medications (KOP and DOT) will be transferred with and provided to the inmate or otherwise provided at the receiving prison without interruption.  While Defendants' figures purport to show compliance for a few months at some institutions in more recent months, these figures were calculated using a methodology that the Court recently found incomplete.   The Court invalidated Defendants' methodology of counting medical records as compliant if the prisoner received medication on the date of transfer, in light of the fact that not all medications are prescribed for daily use.  [Doc. 1831 at 2]

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 35 at the following complexes:  Eyman, Florence, Lewis, Phoenix, Tucson, and Yuma.  [Fathi Decl., Ex. 1 at 3]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Eyman | 47 | 88 | 56 | 74 | 60 | 76 | 72 | 80 | 86 | 54 |
| Florence | 50 | 40 | 24 | 45 | 36 | 48 | 42 | 43 | 53 | 69 |
| Lewis | 0 | 0 | 48 | 57 | 49 | 33 | 47 | 35 | 31 | 32 |
| Phoenix | 80 | 100 | 60 | 64 | 67 | 71 | 43 | 89 | 75 | 44 |
| Tucson | 16 | 13 | 39 | 24 | 19 | 27 | 19 | 16 | 14 | 10 |
| Yuma | 76 | 58 | 77 | 75 | 86 | 86 | 82 | 84 | 89 | 94 |

**Performance Measure 39**:  Routine provider referrals will be addressed by a Medical Provider and referrals requiring a scheduled provider appointment will be seen within fourteen calendar days of the referral.

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 39 at Yuma.[3]  [Fathi Decl., Ex. 1 at 3]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Yuma | 74 | 64 | 66 | 67 | 84 | 51 | 51 | 42 | 47 | 63 |

**Performance Measure 40**:  Urgent provider referrals are seen by a Medical Provider within 24 hours of the referral.

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 40 at Eyman, Florence, Lewis, and Tucson.  [Fathi Decl., Ex. 1 at 3-4][4]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Eyman | 80 | 32 | 58 | 33 | 71 | 34 | 13 | 13 | 83 | 85 |
| Lewis | N/A | 50 | 50 | N/A | 100 | N/A | N/A | 40 | 100 | N/A |
| Tucson | 57 | 20 | 50 | 33 | 14 | 50 | 0 | 83 | 100 | N/A |

**Performance Measure 44**:  Inmates returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital shall have the hospital's treatment recommendations reviewed and acted upon by a medical provider within 24 hours.[5]

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 44 at Douglas, Eyman, Florence, Lewis, and Tucson.  [Fathi Decl., Ex. 1 at 4]

---

[3]  Defendants have already been found by the Court to be substantially noncompliant with Performance Measure 39 at Eyman, Florence, Lewis, Perryville, and Tucson.  [Doc. 1583 at 2]

[4]  Plaintiffs withdrew their notice with respect to Florence at the December 19, 2016 mediation.  [*See* Doc. 1827]

[5]  The Court recently found that Defendants' methodology for this performance measure was incomplete in that Defendants only evaluated whether a discharge recommendation was reviewed.  The Court ruled that Defendants must also evaluate whether the provider documented taking action, or "if there is a documented reason explaining why the prescribed treatment was rejected."  [*See* Doc. 1831 at 2]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Douglas | 60 | N/A | 50 | 80 | 100 | 78 | 14 | 80 | 92 | 100 |
| Eyman | 87 | 72 | 60 | 28 | 50 | 37 | 44 | 46 | 72 | 85 |
| Florence | 67 | 79 | 70 | 61 | 70 | 60 | 58 | 89 | 84 | 91 |
| Lewis | 68 | 47 | 78 | 88 | 70 | 80 | 71 | 29 | 48 | 38 |
| Tucson | 88 | 61 | 88 | 79 | 57 | 85 | 81 | 77 | 95 | 100 |

**Performance Measure 50**:  Urgent specialty consultations and urgent specialty diagnostic services will be scheduled and completed within 30 calendar days of the consultation being requested by the provider.

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 50 at Florence and Tucson.  [Fathi Decl., Ex. 1 at 4][6]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Florence | 71 | 59 | 66 | 62 | 65 | 77 | 72 | 76 | 78 | 93 |

**Performance Measure 51**:  Routine specialty consultations will be scheduled and completed within 60 calendar days of the consultation being requested by the provider.

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 51 at Eyman, Florence, Lewis, Tucson, and Yuma.  [Fathi Decl., Ex. 1 at 4-5]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Eyman | 92 | 96 | 98 | 78 | 78 | 82 | 52 | 76 | 89 | 72 |
| Florence | 89 | 90 | 79 | 76 | 79 | 66 | 80 | 82 | 80 | 77 |
| Lewis | 76 | 75 | 79 | 89 | 70 | 78 | 84 | 82 | 80 | 96 |
| Tucson | 75 | 53 | 75 | 64 | 65 | 70 | 81 | 77 | 84 | 82 |
| Yuma | 83 | 55 | 94 | 64 | 72 | 50 | 89 | 67 | 74 | 66 |

**Performance Measure 52**:  Specialty consultation reports will be reviewed and acted on by a Provider within seven calendar days of receiving the report.[7]

---

[6]  Plaintiffs have withdrawn their Notice with regard to Tucson.

[7]  PM 52 contains similar two part "reviewed and acted upon" language as PM 44, and therefore Defendants' methodology for evaluating compliance with this performance measure must similarly accord with that ordered by the Court.  [*See* n.5, *supra*.]

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 52 at Florence, Perryville, Tucson, and Yuma.  [Fathi Decl., Ex. 1 at 5]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Florence | 37 | 63 | 45 | 40 | 24 | 45 | 50 | 61 | 56 | 71 |
| Perryville | 91 | 76 | 26 | 81 | 72 | 76 | 79 | 70 | 70 | 82 |
| Tucson | 46 | 61 | 61 | 55 | 45 | 43 | 47 | 42 | 39 | 13 |
| Yuma | 79 | 64 | 88 | 63 | 72 | 83 | 87 | 81 | 80 | 98 |

**Performance Measure 55**:  Disease management guidelines will be implemented for chronic diseases.

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 55 at Eyman, Florence, Tucson, and Yuma.  [Fathi Decl., Ex. 1 at 5][8]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Eyman | 80 | 80 | 68 | 90 | 74 | 78 | 66 | 88 | 86 | 84 |
| Tucson | 76 | 63 | 78 | 74 | 79 | 69 | 68 | 69 | 100 | 81 |

**Performance Measure 73**:  All MH-3 minor prisoners shall be seen by a licensed mental health clinician a minimum of every 30 days.[9]

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance

---

[8] Plaintiffs withdrew their notice with respect to Florence and Yuma at the December 19, 2016 mediation.  [*See* Doc. 1827]

[9] A number of Performance Measures require that a patient be "seen" by mental health staff.  The Stipulation defines "seen" as "an encounter that takes place in a confidential setting outside the prisoner's cell, unless the prisoner refuses to exit his or her cell for the encounter."  [Doc. 1185-1 at 5]

The Court has ruled that group contacts do not satisfy the requirement that a patient be "seen" except for Performance Measure 92 (which is not at issue here).  [Doc. 1673 at 4-5]  The Court has also ruled that cellfront contacts do not satisfy the requirement that the patient be "seen" unless the facility is on lockdown, or the patient refuses to exit his or her cell.  [Doc. 1745 at 1]  Nevertheless, as of the August 2016 CGAR data, Defendants continued to count both of these kinds of encounters as satisfying the requirement that a patient be "seen," in violation of the Court's orders.  [*See* Doc. 1739 at 15-17]  Defendants' self-reported compliance figures are therefore presumptively invalid for any Performance Measure requiring that the patient be "seen."

1   Measure 73 at Tucson.  [Fathi Decl., Ex. 1 at 5]  While Defendants' figures purport to
2   show compliance for recent months, these figures were calculated using a methodology
3   that the Court has invalidated.  [See Doc. 1760-1 at 104 (monitor guide); Doc. 1816 at 4
4   n.3 (pointing out that Defendants' monitor guide does not specify that cellfront encounters
5   are not to be counted for PM 73); Doc. 1831 at 1 ("THE COURT FINDS the language
6   regarding cell-front visits as proposed by Defendants is acceptable but it must be applied
7   to all applicable Performance Measures")]

8          Moreover, the Court ruled more than four months ago that group contacts do not
9   satisfy the requirement that a patient be "seen" except for Performance Measure 92.
10  [Doc. 1673 at 4-5]  In violation of this ruling, Defendants continue to count group
11  contacts as satisfying PM 73's requirement that the patient be "seen."  [See Fathi Decl.,
12  Ex. 5 (p. 98 of 1/10/17 Monitor Guide)]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Tucson | 70  | 60  | 20  | 40    | 100 | 100  | 90   | 90  | 100  | 100 |

15  **Performance Measure 74**:   All female prisoners shall be seen by a licensed
16  mental health clinician within 5 working days of return from a hospital post-partum.

17         Plaintiffs notified Defendants that they had failed to meet the required threshold for
18  compliance, and therefore were in substantial noncompliance, with Performance
19  Measure 74 at Perryville.  [Fathi Decl., Ex. 1 at 5-6]  While Defendants' figures purport to
20  show compliance for recent months, these figures were calculated using a methodology
21  that the Court has invalidated.  [See Doc. 1760-1 at 105 (monitor guide); Doc. 1816 at 4
22  n.3 (pointing out that Defendants' monitor guide does not specify that cellfront encounters
23  are not to be counted for PM 74); Doc. 1831 at 1 ("THE COURT FINDS the language
24  regarding cell-front visits as proposed by Defendants is acceptable but it must be applied
25  to all applicable Performance Measures")]  Moreover, on this Performance Measure, like

26

27

28

PM 73, Defendants impermissibly count group contacts as satisfying the requirement that the patient be "seen." [*See* Fathi Decl., Ex. 5 (p. 100 of 1/10/17 Monitor Guide)][10]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Perryville | 60 | 75 | 100 | 100 | 75 | 100 | 100 | 100 | N/A | 100 |

**Performance Measure 80**:  MH-3A prisoners shall be seen a minimum of every 30 days by a mental health clinician.

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 80 at Perryville.[11]  [Fathi Decl., Ex. 1 at 6]  While Defendants' figures purport to show compliance for recent months, these figures were calculated using a methodology that the Court has invalidated.  Defendants' monitor guide continues to count group contacts for PM 80.  [*See* Doc. 1760-1 at 113; Doc. 1739 at 15-16 (Defendants' August 2016 CGARs wrongly counted group contacts and cellfront encounters as satisfying PM 80)]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Perryville | 87 | 90 | 81 | 78 | 79 | 93 | 77 | 81 | 90 | 97 |

**Performance Measure 86**:  MH-3D prisoners shall be seen a minimum of every 90 days by a mental health clinician for a minimum of every 6 months after discontinuing medication.

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 86 at Tucson.  [Fathi Decl., Ex. 1 at 6]  While Defendants' figures purport to show compliance for recent months, these figures were calculated using a methodology

---

[10]  The notation "N/A" indicates that the Performance Measure was not applicable to the facility in question for the month indicated—in this case, presumably because no female prisoners returned from the hospital post-partum in September.  Such a month—in which the Performance Measure does not require Defendants to take any action – does not satisfy the Stipulation's definition of "compliance" (*see* Doc. 1185 ¶ 10.a.), and therefore cannot be counted as a compliant month.

[11]  Defendants have been found by the Court to be substantially noncompliant with respect to Performance Measure 80 at Lewis and Tucson.  [Doc. 1709 at 1]

that the Court has invalidated.  More than four months ago, the Court found Defendants' monitoring methodology for Performance Measure 86 to be inconsistent with the Stipulation.  [Doc. 1673 at 6:9-12]  The Court provided further guidance in its order of November 10, 2016.  [Doc. 1754 at 1-2]  Defendants have admitted that their methodology is inconsistent with the Court's order.  [*See* Doc. 1782 at 14 ("The methodology for PM 86 will be revised in accordance with the Court's November 10 order.")]  On December 14, the Court ordered that "the measure must be compliant with the Court's November 10, 2016 Order."  [Doc. 1831 at 2]  Nevertheless, Defendants continue to employ the same methodology the Court invalidated in September 2016.  [*See* Doc. 1760-1 at 122-23]  In addition, Defendants' monitor guide continues to count group contacts for this Performance Measure, in violation of the Court's September 2016 order.  [*Id.* at 122]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Tucson | 71 | 71 | 74 | 81 | 90 | 94 | 95 | 94 | 94 | 92 |

**Performance Measure 87**:  MH-4 prisoners shall be seen by a mental health clinician for a 1:1 session a minimum of every 30 days.

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 87 at Perryville.  [Fathi Decl., Ex. 1 at 6]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Perryville | 85 | 90 | 90 | 70 | 70 | 100 | 55 | 90 | 85 | 100 |

**Performance Measure 88**:  MH-4 prisoners who are prescribed psychotropic medications shall be seen by a mental health provider a minimum of every 90 days.

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 88 at Tucson.  [Fathi Decl., Ex. 1 at 7]  While Defendants' figures purport to show compliance for recent months, these figures were calculated using a methodology that the Court has invalidated.  [*See* Doc. 1760-1 at 125 (monitor guide for PM 88);

Doc. 1816 at 3-4 & n.3 (pointing out that Defendants' monitor guide does not specify that cellfront encounters are not to be counted for PM 88); Doc. 1831 at 1 ("THE COURT FINDS the language regarding cell-front visits as proposed by Defendants is acceptable but it must be applied to all applicable Performance Measures.")]

In addition, Defendants continue to count this PM as satisfied as long as the patient has been seen once within the previous 90 days.  [*See* Doc. 1760-1 at 125 ("If the contact occurred in any month prior to the monitored month, look to see if the inmate was seen 90 days or less before the last day of the monitored month.")]  The Court has ruled that this methodology is invalid.  [*See* Doc. 1833 at 1-2]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Tucson | 90 | 90 | 70 | 70 | 100 | 90 | 100 | 100 | 100 | 100 |

**Performance Measure 94**:  All prisoners on a suicide or mental health watch shall be seen daily by a licensed mental health clinician or, on weekends or holidays, by a registered nurse.

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 94 at Perryville and Winslow.[12]  [Fathi Decl., Ex. 1 at 7]  Defendants' October 2016 figures were calculated using their newly-invented "partial credit" methodology [*see* Doc. 1760-1 at 132], which the Court has invalidated.  [*See* Doc. 1831 at 1-2]  While Defendants awarded themselves an 85% compliance score at Perryville using this method (reflected in the chart below), using the binary method ordered by the Court (and previously used throughout the life of the Stipulation) yields a failing compliance score of **40%.**  [*See* Fathi Decl. ¶ 8; *see also* Doc. 1739 at 16-17 (Defendants' August 2016 CGARs wrongly counted cellfront encounters as satisfying PM 94)][13]

_____

[12]  Defendants have previously been found by the Court to be substantially noncompliant with Performance Measure 94 at Eyman, Florence, and Tucson.  [Doc. 1709 at 1]

[13]  Defendants recently submitted "re-audited" scores for Winslow for this Performance Measure, giving themselves the following scores:  January 2016, 75%;

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Perryville | 90 | 90 | 80 | 30 | 40 | 100 | 50 | 70 | 60 | 85 |
| Winslow | 0 | N/A | 0 | 0 | 0 | 100 | 100 | 25 | 100 | 100 |

**Performance Measure 95**:  Only licensed mental health staff may remove a prisoner from a suicide or mental health watch.  Any prisoner discontinued from a suicide or mental health watch shall be seen by a mental health provider, mental health clinician, or psychiatric registered nurse between 24 and 72 hours after discontinuation, between seven and ten days after discontinuation, and between 21 and 24 days after discontinuation of the watch.

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 95 at Lewis, Tucson, and Winslow.  [Fathi Decl., Ex. 1 at 7]  As with PM 94, Defendants' October 2016 figures were calculated using their newly-invented "partial credit" methodology [*see* Doc. 1760-1 at 134], which the Court has invalidated.  [*See* Doc. 1831 at 1-2][14]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Lewis | 80 | 80 | 60 | 70 | 70 | 90 | 90 | 100 | 90 | 100 |
| Tucson | 70 | 30 | 70 | 90 | 100 | 40 | 90 | 100 | 90 | 88 |
| Winslow | 0 | 0 | N/A | N/A | 0 | N/A | N/A | 100 | 100 | N/A |

**Performance Measure 97**:  A mental health provider treating a prisoner via telepsychiatry shall be provided, in advance of the telepsychiatry session, the prisoner's intake assessment, most recent mental health treatment plan, laboratory reports (if

---

February 2016, **50%;** March 2016, **50%;** April 2016, **33%;** May 2016, **60%;** and June 2016, 100%.  [Fathi Decl., Ex. 7]  Even these figures overstate Defendants' compliance, as Defendants' "re-audit" did not obey the Court's ruling that cellfront contacts are not to be counted except in specified circumstances.  [*See id.*, Ex. 8 at 1; Doc. 1745 at 1]

[14] Defendants recently submitted "re-audited" scores for Winslow for this Performance Measure, giving themselves the following scores:  January 2016, **60%;** February 2016, **25%;** March 2016, N/A; April 2016, **0%;** May 2016, **0%;** and June 2016, N/A.  [Fathi Decl., Ex. 7]  As with PM 94, Defendants' "re-audit" did not comply with the Court's ruling that cellfront contacts are not to be counted except in specified circumstances.  [*See id.*, Ex. 8 at 1; Doc. 1745 at 1]

applicable), physician orders, problem list, and progress notes from the prisoner's two most recent contacts with a mental health provider.

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 97 at Lewis.  [Fathi Decl., Ex. 1 at 8]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Lewis | 47 | 56 | 33 | 80 | 77 | 73 | 80 | 81 | 80 | 82 |

**Performance Measure 98**:  Mental health HNRs shall be responded to within the timeframes set forth in the Mental Health Technical Manual (MHTM) (rev. 4/18/14), Chapter 2, Section 5.0.

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 98 at Perryville and Tucson.[15]  [Fathi Decl., Ex. 1 at 8]  On September 6, 2016, the Court found Defendants' monitoring methodology for Performance Measure 98 to be noncompliant with the Stipulation.  [Doc. 1673 at 8]  On December 14, the Court again found Defendants' monitoring methodology for this Performance Measure to be inconsistent with the Stipulation.  [*See* Doc. 1831 at 2 ("IT IS ORDERED that, because the Stipulation requires that Defendants respond to mental health needs according to the enumerated timeframes, the Monitoring Guide must require that a compliant record has documented start and end times.")]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Perryville | 79 | 95 | 77 | 76 | 74 | 59 | 78 | 82 | 88 | 74 |
| Tucson | 76 | 85 | 45 | 61 | 62 | 74 | 82 | 87 | 91 | 84 |

---

[15]  Defendants have previously been found by the Court to be in substantial noncompliance with respect to Performance Measure 98 at Eyman, Florence, Lewis, and Winslow.  [Doc. 1583 at 2]

### B.   October 4, 2016 Notice of Non-Compliance

Plaintiffs served Defendants with the October Notice, using the rubric established by the Court to measure substantial noncompliance, notifying them of substantial noncompliance with the following performance measures.  [Fathi Decl., Ex. 2]

**Performance Measure 4**:  Infirmary staffing will be maintained with a minimum staffing level of 2 RNs on duty in the infirmary at all times at Tucson & Florence infirmaries and a minimum of one RN on duty in the infirmary at all times at Perryville and Lewis infirmaries.

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 4 at Florence.  [Fathi Decl., Ex. 2 at 1]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Florence | 100 | 100 | 90 | 83 | 100 | 57 | 48 | 74 | 97 | 100 |

**Performance Measure 37**:  Sick call inmates will be seen by an RN within 24 hours after an HNR is received (or immediately if identified with an emergent need, or on the same day if identified as having an urgent need).

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 37 at Perryville.[16]  [Fathi Decl., Ex. 2 at 1-2]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Perryville | 70 | 72 | 70 | 48 | 52 | 56 | 66 | 54 | 57 | 59 |

**Performance Measure 45**:  On-site diagnostic services will be provided the same day if ordered STAT or urgent, or within 14 calendar days if routine.

---

[16] Defendants have previously been found substantially noncompliant with Performance Measure 37 at Eyman, Florence, Lewis, Tucson, Winslow, and Yuma. [Doc. 1583 at 2]

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 45 at Florence, Lewis, Tucson, and Yuma. [Fathi Decl., Ex. 2 at 2]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Florence | 100 | 85 | 95 | 78 | 80 | 82 | 52 | 67 | 82 | 80 |
| Lewis | 91 | 34 | 85 | 69 | 92 | 69 | 85 | 78 | 80 | 81 |
| Tucson | 76 | 91 | 88 | 97 | 89 | 71 | 70 | 79 | 79 | 77 |
| Yuma | 82 | 96 | 90 | 84 | 90 | 74 | 74 | 84 | 84 | 82 |

**Performance Measure 73**:  All MH-3 minor prisoners shall be seen by a licensed mental health clinician a minimum of every 30 days.

Plaintiffs notified Defendants that they had failed to meet the required threshold for compliance, and therefore were in substantial noncompliance, with Performance Measure 73 at Perryville.  [Fathi Decl., Ex. 2 at 2]  While Defendants' figures purport to show compliance in August 2016, these figures were calculated using a methodology that the Court has invalidated.  *See* p. 7 *supra.*

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|
| Perryville | 100 | 100 | 100 | 100 | 50 | 0 | 0 | 100 | N/A | N/A |

## II.    RELIEF REQUESTED

The Court has the authority to issue any relief "provided by law," not otherwise prohibited by the Stipulation.  [Doc. 1185 ¶ 36]  Without attempting to "'micro manage' the [Defendants'] activities," this Court can "give some guidance" as to what an acceptable remedial plan must include, the level of specificity the Court will find persuasive, and "deadlines for compliance."  *Armstrong v. Davis*, 275 F.3d 849, 873 (9th Cir. 2001).

Plaintiffs request that the Court order Defendants to develop a *meaningfully specific and detailed* plan to permanently remedy their continued substantial noncompliance with the Performance Measures that includes concrete steps that will be taken to definitively demonstrate compliance and to hold Defendants accountable.

1   Dated:  January 13, 2017                **ACLU NATIONAL PRISON PROJECT**

2

3                                   By:   David C. Fathi
                                        David C. Fathi (Wash. 24893)*
4                                       Amy Fettig (D.C. 484883)**
                                        Jamelia Natasha Morgan (N.Y.
5                                       5351176)**
                                        915 15th Street N.W., 7th Floor
6                                       Washington, D.C. 20005
                                        Telephone:  (202) 548-6603
7                                       Email:     dfathi@aclu.org
                                                   afettig@aclu.org
8                                                  jmorgan@aclu.org

9                                       *Admitted pro hac vice.  Not admitted
                                         in DC; practice limited to federal
10                                        courts.
                                        **Admitted pro hac vice
11
                                        Daniel C. Barr (Bar No. 010149)
12                                      Amelia M. Gerlicher (Bar No. 023966)
                                        John H. Gray (Bar No. 028107)
13                                      **PERKINS COIE LLP**
                                        2901 N. Central Avenue, Suite 2000
14                                      Phoenix, Arizona 85012
                                        Telephone:  (602) 351-8000
15                                      Email:     dbarr@perkinscoie.com
                                                   agerlicher@perkinscoie.com
16                                                 jhgray@perkinscoie.com

17                                      Kathleen E. Brody (Bar No. 026331)
                                        Daniel Pochoda (Bar No. 021979)
18                                      **ACLU FOUNDATION OF
                                        ARIZONA**
19                                      3707 North 7th Street, Suite 235
                                        Phoenix, Arizona 85013
20                                      Telephone:  (602) 650-1854
                                        Email:     kbrody@acluaz.org
21                                                 dpochoda@acluaz.org

22

23

24

25

26

27

28

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
          ahardy@prisonlaw.com
          snorman@prisonlaw.com
          ckendrick@prisonlaw.com
          rlomio@prisonlaw.com

*Admitted *pro hac vice*

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, PLLC**
P. O. Box 91398
Tucson, Arizona 85752
Telephone:  (520) 477-1475
Email:    kirstin@eidenbachlaw.com

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:    cnmitchell@jonesday.com
          aamiri@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:    jlwilkes@jonesday.com

*Admitted *pro hac vice*

Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:    jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By:   s/ Maya Abela
      Sarah Kader (Bar No. 027147)
      Asim Dietrich (Bar No. 027927)
      5025 East Washington Street, Suite 202
      Phoenix, Arizona 85034
      Telephone:  (602) 274-6287
      Email:    skader@azdisabilitylaw.org
                adietrich@azdisabilitylaw.org

      Rose A. Daly-Rooney (Bar No. 015690)
      J.J. Rico (Bar No. 021292)
      Jessica Jansepar Ross (Bar No. 030553)
      Maya Abela (Bar No. 027232)
      **ARIZONA CENTER FOR DISABILITY LAW**
      177 North Church Avenue, Suite 800
      Tucson, Arizona 85701
      Telephone:  (520) 327-9547
      Email:
        rdalyrooney@azdisabilitylaw.org
        jrico@azdisabilitylaw.org
        jross@azdisabilitylaw.org
        mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on January 13, 2017, I electronically transmitted the above

3   document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4   Notice of Electronic Filing to the following CM/ECF registrants:

5

6                          Michael E. Gottfried
                           Lucy M. Rand
7                   Assistant Arizona Attorneys General
                      Michael.Gottfried@azag.gov
8                       Lucy.Rand@azag.gov

9                          Daniel P. Struck
                         Kathleen L. Wieneke
10                           Rachel Love
                        Timothy J. Bojanowski
11                        Nicholas D. Acedo
                          Ashlee B. Fletcher
12                          Anne M. Orcutt
                            Jacob B. Lee
13              STRUCK WIENEKE, & LOVE, P.L.C.
                        dstruck@swlfirm.com
14                      kwieneke@swlfirm.com
                         rlove@swlfirm.com
15                    tbojanowski@swlfirm.com
                        nacedo@swlfirm.com
16                      afletcher@swlfirm.com
                        aorcutt@swlfirm.com
17                        jlee@swlfirm.com

18                    *Attorneys for Defendants*

19
                                      s/ D. Freouf
20

21

22

23

24

25

26

27

28