## Index of Exhibits to Declaration
## of David C. Fathi

**Exhibit 1**    July 29, 2016 Notice of Substantial Non-Compliance

**Exhibit 2**    October 4, 2016 Notice of Substantial Non-Compliance

**Exhibit 3**    August, 29, 2016, response from Defendants to Plaintiffs' July 29, 2016 Notice of Substantial Non-Compliance

**Exhibit 4**    November 3, 2016, response from Defendants to Plaintiffs' October 4, 2016 Notice of Substantial Non-Compliance

**Exhibit 5**    Excerpt from Defendants' January 10, 2017 Monitor Guide, provided by Defendants to Plaintiffs on January 10, 2017

**Exhibit 6**    October 2016 CGAR report for PM 94 at ASPC-Perryville **(FILED UNDER SEAL)**

**Exhibit 7**    document showing Defendants' "re-audited" CGAR scores for Performance Measures 94 and 95 for ASPC-Winslow for January through June 2016 **(FILED UNDER SEAL)**

**Exhibit 8**    January 4, 2017 email from Defendants' counsel Ashlee Fletcher to David Fathi

# EXHIBIT 1



Director:
Donald Specter

Managing Attorney:
Sara Norman

Staff Attorneys:
Rana Anabtawi
Steven Fama
Alison Hardy
Corene Kendrick
Margot Mendelson
Millard Murphy
Lynn Wu

## PRISON LAW OFFICE
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

**VIA EMAIL ONLY**

July 29, 2016

Ms. Lucy Rand, Assistant Attorney General
Office of the Arizona Attorney General
1275 West Washington Street
Phoenix, AZ 85007-2926
Lucy.Rand@azag.gov

> RE:   *Parsons v. Ryan*, CV-12-0601-DMD
>        Notice of Noncompliance

Dear Ms. Rand,

Pursuant to Paragraph 30 of the Stipulation, Plaintiffs write to notify you of Defendants' substantial noncompliance with the Stipulation. These areas of noncompliance are in addition to the performance measures for which the Court found Defendants noncompliant [Doc. 1583], and those outlined in our May 23, 2016 Notice. Defendants' CGAR reports show that through May 2016, ADC continues to be substantially noncompliant and/or incapable of sustained compliance for the performance measures identified by the Court. The inclusion of the performance measures below does not mean that we believe Defendants are in compliance with all other performance measures, nor do we waive our right to raise Defendants' noncompliance with measures not discussed below in a future notice.

**Performance Measure 31:** Mortality reviews will identify and refer deficiencies to appropriate managers and supervisors, including CQI committee, and corrective action will be taken.

Defendants are substantially noncompliant with this Stipulation requirement at Douglas, Eyman, Florence, Lewis, Perryville, Tucson, Winslow, and Yuma.

The noncompliance is manifest in one of two ways: first, because of the audit score on its face; and second, because of a failure to properly monitor this measure. The areas shaded in yellow show Defendants' failure to comply with the Stipulation's baseline requirement of 75% in January and February, or the 80% requirement in March and April. The areas shaded in blue are indicative of Defendants' failure to properly monitor this requirement. The finding of "N/A" for those months and those institutions is incorrect and is contradicted by the institutions' CQI committee minutes that showed mortality reviews were done at the CQI meetings for the

Board of Directors
Penelope Cooper, President • Michele WalkinHawk, Vice President
Marshall Krause, Treasurer • Christiane Hipps • Margaret Johns
Cesar Lagleva • Laura Magnani • Michael Marcum • Ruth Morgan • Dennis Roberts

Ms. Lucy Rand
*Parsons v. Ryan*
Notice of Noncompliance
July 29, 2016
Page 2

particular month, but the monitor failed to include them in the CGAR.  The failure to monitor a performance measure violates Paragraph 10 of the Stipulation.

|            | Jan. | Feb. | Mar. | April | May |
|------------|------|------|------|-------|-----|
| Douglas    | N/A  | 100  | N/A  | N/A   | N/A |
| Eyman      | 100  | 100  | N/A  | 0     | N/A |
| Florence   | 100  | 100  | 67   | N/A   | N/A |
| Lewis      | N/A  | 0    | N/A  | N/A   | N/A |
| Perryville | N/A  | N/A  | N/A  | N/A   | N/A |
| Tucson     | 100  | 0    | 33   | 40    | N/A |
| Winslow    | N/A  | N/A  | N/A  | N/A   | N/A |
| Yuma       | N/A  | 100  | N/A  | N/A   | N/A |

Douglas
- March CQI meeting – 1 death was reviewed.  ADCM496922

Eyman
- March CQI meeting – 2 deaths were reviewed.  ADCM496930
- May CQI meeting – 3 deaths were reviewed.  ADCM497201-05

Florence
- April CQI meeting – 12 deaths were reviewed. ADCM497123-36
- May CQI meeting – 9 deaths were reviewed. ADCM497212-16

Lewis
- January CQI meeting – 4 deaths were reviewed.  ADCM496822-23
- March CQI meeting – 4 deaths were reviewed.  ADCM496954-55
- April CQI meeting – 1 death was reviewed.  ADCM497152
- May CQI meeting – 1 death was reviewed. ADCM497228-29

Perryville
- March CQI meeting – 1 death was reviewed. ADCM496963

Tucson
- May CQI meeting – 4 deaths were reviewed.  ADCM497267

Winslow
- May CQI meeting – 1 death was reviewed. ADCM497272

Yuma
- March CQI meeting – 1 death was reviewed. ADCM496992

**Performance Measure 35**:  All inmate medications (KOP and DOT) will be transferred with and provided to the inmate or otherwise provided at the receiving prison without interruption.

    Defendants are substantially noncompliant with this Stipulation requirement at Eyman, Florence, Lewis, Phoenix, Tucson, and Yuma.

|          | Jan. | Feb. | Mar. | April | May |
|----------|------|------|------|-------|-----|
| Eyman    | 47   | 88   | 56   | 74    | 60  |
| Florence | 50   | 40   | 24   | 45    | 36  |
| Lewis    | 0    | 0    | 48   | 57    | 49  |
| Phoenix  | 80   | 100  | 60   | 64    | 67  |
| Tucson   | 16   | 13   | 39   | 24    | 19  |
| Yuma     | 76   | 58   | 77   | 75    | 86  |

**Performance Measure 39**:  Routine provider referrals will be addressed by a Medical Provider and referrals requiring a scheduled provider appointment will be seen within fourteen calendar days of the referral.

    Defendants are substantially noncompliant with this Stipulation requirement at Yuma.[1]

|      | Jan. | Feb. | Mar. | April | May |
|------|------|------|------|-------|-----|
| Yuma | 74   | 64   | 66   | 67    | 84  |

**Performance Measure 40**:  Urgent provider referrals are seen by a Medical Provider within 24 hours of the referral.

    Defendants are substantially noncompliant with this Stipulation requirement at Eyman, Florence, Lewis, and Tucson.

|          | Jan. | Feb. | Mar. | April | May |
|----------|------|------|------|-------|-----|
| Eyman    | 80   | 32   | 58   | 33    | 71  |
| Florence | 71   | 100  | 100  | 71    | 75  |
| Lewis    | N/A  | 50   | 50   | N/A   | 100 |

---

[1] The Court has already found Defendants substantially noncompliant with PM 39 at Eyman, Florence, Lewis, Perryville, and Tucson.  Doc. 1583 at 2.

|         | Jan. | Feb. | Mar. | April | May |
|---------|------|------|------|-------|-----|
| Tucson  | 57   | 20   | 50   | 33    | 14  |

**Performance Measure 44**:  Inmates returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital shall have the hospital's treatment recommendations reviewed and acted upon by a medical provider within 24 hours.

Defendants are substantially noncompliant with this Stipulation requirement at Douglas, Eyman, Florence, Lewis, and Tucson.

|          | Jan. | Feb. | Mar. | April | May |
|----------|------|------|------|-------|-----|
| Douglas  | 60   | N/A  | 50   | 80    | 100 |
| Eyman    | 87   | 72   | 60   | 28    | 50  |
| Florence | 67   | 79   | 70   | 61    | 70  |
| Lewis    | 68   | 47   | 78   | 88    | 70  |
| Tucson   | 88   | 61   | 88   | 79    | 57  |

**Performance Measure 50**: Urgent specialty consultations and urgent specialty diagnostic services will be scheduled and completed within 30 calendar days of the consultation being requested by the provider.

Defendants are substantially noncompliant with this Stipulation requirement at Florence and Tucson.

|          | Jan. | Feb. | Mar. | April | May |
|----------|------|------|------|-------|-----|
| Florence | 71   | 59   | 66   | 62    | 65  |
| Tucson   | 85   | 73   | 78   | 72    | 71  |

**Performance Measure 51**: Routine specialty consultations will be scheduled and completed within 60 calendar days of the consultation being requested by the provider.

Defendants are substantially noncompliant with this Stipulation requirement at Eyman, Florence, Lewis, Tucson, and Yuma.

|          | Jan. | Feb. | Mar. | April | May |
|----------|------|------|------|-------|-----|
| Eyman    | 92   | 96   | 98   | 78    | 78  |
| Florence | 89   | 90   | 79   | 76    | 79  |
| Lewis    | 76   | 75   | 79   | 89    | 70  |
| Tucson   | 75   | 53   | 75   | 64    | 65  |

|  | Jan. | Feb. | Mar. | April | May |
|---|---|---|---|---|---|
| Yuma | 83 | 55 | 94 | 64 | 72 |

**Performance Measure 52**: Specialty consultation reports will be reviewed and acted on by a Provider within seven calendar days of receiving the report.

Defendants are substantially noncompliant with this Stipulation requirement at Florence, Perryville, Tucson, and Yuma.

|  | Jan. | Feb. | Mar. | April | May |
|---|---|---|---|---|---|
| Florence | 37 | 63 | 45 | 40 | 24 |
| Perryville | 91 | 76 | 26 | 81 | 72 |
| Tucson | 46 | 61 | 61 | 55 | 45 |
| Yuma | 79 | 64 | 88 | 63 | 72 |

**Performance Measure 55**: Disease management guidelines will be implemented for chronic diseases.

Defendants are substantially noncompliant with this Stipulation requirement at Eyman, Florence, Tucson, and Yuma.

|  | Jan. | Feb. | Mar. | April | May |
|---|---|---|---|---|---|
| Eyman | 80 | 80 | 68 | 90 | 74 |
| Florence | 63 | 60 | 53 | 90 | 85 |
| Tucson | 76 | 63 | 78 | 74 | 79 |
| Yuma | 70 | 78 | 64 | 96 | 96 |

**Performance Measure 73**: All MH-3 minor prisoners shall be seen by a licensed mental health clinician a minimum of every 30 days.

Defendants are substantially noncompliant with this Stipulation requirement at Tucson.

|  | Jan. | Feb. | Mar. | April | May |
|---|---|---|---|---|---|
| Tucson | 70 | 60 | 20 | 40 | 100 |

**Performance Measure 74**:  All female prisoners shall be seen by a licensed mental health clinician within five working days of return from a hospital post-partum.

Defendants are substantially noncompliant with this Stipulation requirement at Perryville.

|            | Jan. | Feb. | Mar. | April | May |
|------------|------|------|------|-------|-----|
| Perryville | 60   | 75   | 100  | 100   | 75  |

**Performance Measure 76**:  If the initial mental health assessment of a prisoner during initial intake is not performed by licensed mental health staff, the prisoner shall be seen by a mental health clinician within fourteen days of his or her arrival into ADC.

Defendants are substantially noncompliant with this Stipulation requirement at Perryville.

|            | Jan. | Feb. | Mar. | April | May |
|------------|------|------|------|-------|-----|
| Perryville | N/A  | N/A  | N/A  | 0     | 0   |

**Performance Measure 80**:  MH-3A prisoners shall be seen a minimum of every 30 days by a mental health clinician.

Defendants are substantially noncompliant with this Stipulation requirement at Perryville.[2]

|            | Jan. | Feb. | Mar. | April | May |
|------------|------|------|------|-------|-----|
| Perryville | 87   | 90   | 81   | 78    | 79  |

**Performance Measure 86:**  MH-3D prisoners shall be seen a minimum of every 90 days by a mental health clinician for a minimum of six months after discontinuing medication.

Defendants are substantially noncompliant with this Stipulation requirement at Tucson.

|        | Jan. | Feb. | Mar. | April | May |
|--------|------|------|------|-------|-----|
| Tucson | 71   | 71   | 74   | 81    | 90  |

**Performance Measure 87**:  MH-4 prisoners shall be seen by a mental health clinician for a 1:1 session a minimum of every 30 days.

Defendants are substantially noncompliant with this Stipulation requirement at Perryville.

|            | Jan. | Feb. | Mar. | April | May |
|------------|------|------|------|-------|-----|
| Perryville | 85   | 90   | 90   | 70    | 70  |

---

[2] Plaintiffs notified you of ADC's noncompliance with PM 80 at Lewis and Tucson in our May 23, 2016 Notice of Noncompliance.

**Performance Measure 88**: MH-4 prisoners who are prescribed psychotropic medications shall be seen by a mental health provider a minimum of every 90 days.

Defendants are substantially noncompliant with this Stipulation requirement at Tucson.

|        | Jan. | Feb. | Mar. | April | May |
|--------|------|------|------|-------|-----|
| Tucson | 90   | 90   | 70   | 70    | 100 |

**Performance Measure 94:** All prisoners on a suicide or mental health watch shall be seen daily by a licensed mental health clinician or, on weekends or holidays, by a registered nurse.

Defendants are substantially noncompliant with this Stipulation requirement at Perryville and Winslow.[3]

|            | Jan. | Feb. | Mar. | April | May |
|------------|------|------|------|-------|-----|
| Perryville | 90   | 90   | 80   | 30    | 40  |
| Winslow    | 0    | N/A  | 0    | 0     | 0   |

**Performance Measure 95:**  Only licensed mental health staff may remove a prisoner from a suicide or mental health watch.  Any prisoner discontinued from a suicide or mental health watch shall be seen by a mental health provider, mental health clinician, or psychiatric registered nurse between 24 and 72 hours after discontinuation, between seven and ten days after discontinuation, and between 21 and 24 days after discontinuation of the watch.

Defendants are substantially noncompliant with this Stipulation requirement at Lewis, Tucson, and Winslow.

|         | Jan. | Feb. | Mar. | April | May |
|---------|------|------|------|-------|-----|
| Lewis   | 80   | 80   | 60   | 70    | 70  |
| Tucson  | 70   | 30   | 70   | 90    | 100 |
| Winslow | 0    | 0    | N/A  | N/A   | 0   |

///
///
///

---

[3] Plaintiffs notified you of ADC's noncompliance with PM 94 at Eyman, Florence, and Tucson in our May 23, 2016 Notice of Noncompliance.

**Performance Measure 96**:  A reentry/discharge plan shall be established no later than 30 days prior to release from ADC for all prisoners who are MH-3 or above.

Defendants are substantially noncompliant with this Stipulation requirement at Phoenix.

|          | Jan. | Feb. | Mar. | April | May |
|----------|------|------|------|-------|-----|
| Phoenix  | 100  | 67   | 67   | 73    | 100 |

**Performance Measure 97**: A mental health provider treating a prisoner via telepsychiatry shall be provided, in advance of the telepsychiatry session, the prisoner's intake assessment, most recent mental health treatment plan, laboratory reports (if applicable), physician orders, problem list, and progress notes from the prisoner's two most recent contacts with a mental health provider.

Defendants are substantially noncompliant with this Stipulation requirement at Lewis.

|       | Jan. | Feb. | Mar. | April | May |
|-------|------|------|------|-------|-----|
| Lewis | 47   | 56   | 33   | 79    | 77  |

**Performance Measure 98**:  Mental health HNRs shall be responded to within the timeframes set forth in the Mental Health Technical Manual (MHTM) (rev. 4/18/14), Chapter 2, Section 5.0.

Defendants are substantially noncompliant with this Stipulation requirement at Perryville and Tucson.[4]

|            | Jan. | Feb. | Mar. | April | May |
|------------|------|------|------|-------|-----|
| Perryville | 79   | 95   | 78   | 76    | 74  |
| Tucson     | 76   | 85   | 45   | 61    | 62  |

**Performance Measure 99**: Peer reviews shall be conducted as set forth in the MHTM (rev. 4/18/14), Chapter 1, Section 3.0.

Defendants are substantially noncompliant with this Stipulation requirement at Florence.

|          | Jan. | Feb. | Mar. | April | May |
|----------|------|------|------|-------|-----|
| Florence | N/A  | 0    | 0    | N/A   | N/A |

---

[4] The Court found Defendants noncompliant with PM 98 at Eyman, Florence, Lewis, and Winslow. Doc. 1583 at 2.

Ms. Lucy Rand
*Parsons v. Ryan*
Notice of Noncompliance
July 29, 2016
Page 9

We look forward to receiving your response within the next 30 days.

Sincerely yours,

*/s/ Corene Kendrick*

Corene Kendrick
Staff Attorney

cc:    Counsel of Record

# EXHIBIT 2

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT



AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

October 4, 2016

**BY ELECTRONIC MAIL ONLY**

Michael Gottfried
Lucy Rand
**OFFICE OF THE ARIZONA ATTORNEY GENERAL**
1275 West Washington Street
Phoenix, AZ 85007-2926
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

> Re:    *Parsons v. Ryan*
>        *Notice of Substantial Noncompliance*

Dear Counsel:

Pursuant to Paragraph 30 of the Stipulation, we write to notify you of Defendants' substantial noncompliance with the Stipulation.  The areas of noncompliance identified below are in addition to those previously identified. The identification in this letter of certain institutions and Performance Measures does not mean that Plaintiffs believe Defendants are in compliance with other Performance Measures or at other institutions not so identified, and does not waive Plaintiffs' right to assert Defendants' noncompliance with other Performance Measures or at other institutions in a future notice.

**Performance Measure 4**:  Infirmary staffing will be maintained with a minimum staffing level of 2 RNs on duty in the infirmary at all times at Tucson & Florence infirmaries and a minimum of one RN on duty in the infirmary at all times at Perryville and Lewis infirmaries.

Defendants are substantially noncompliant with this Performance Measure at Florence:

|          | Jan | Feb | Mar | April | May | June | July |
|----------|-----|-----|-----|-------|-----|------|------|
| Florence | 100 | 100 | 90  | 83    | 100 | 57   | 48   |

**Performance Measure 37**:  Sick call inmates will be seen by an RN within 24 hours after an HNR is received (or immediately if identified with an emergent need, or on the same day if identified as having an urgent need).

Defendants are substantially noncompliant with this Performance Measure at Perryville:

|           | Jan | Feb | Mar | April | May | June | July |
|-----------|-----|-----|-----|-------|-----|------|------|
| Perryville | 70 | 72 | 70 | 48 | 52 | 56 | 66 |

**Performance Measure 45**:  On-site diagnostic services will be provided the same day if ordered STAT or urgent, or within 14 calendar days if routine.

Defendants are substantially noncompliant with this Performance Measure at Florence, Lewis, Tucson, and Yuma:

|          | Jan | Feb | Mar | April | May | June | July |
|----------|-----|-----|-----|-------|-----|------|------|
| Florence | 100 | 85 | 95 | 78 | 80 | 82 | 52 |
| Lewis    | 91 | 34 | 85 | 69 | 92 | 69 | 85 |
| Tucson   | 76 | 91 | 88 | 97 | 89 | 71 | 70 |
| Yuma     | 82 | 96 | 90 | 84 | 90 | 74 | 74 |

**Performance Measure 73**:  All MH-3 minor prisoners shall be seen by a licensed mental health clinician a minimum of every 30 days.

Defendants are substantially noncompliant with this Performance Measure at Perryville:

|           | Jan | Feb | Mar | April | May | June | July |
|-----------|-----|-----|-----|-------|-----|------|------|
| Perryville | 100 | 100 | 100 | 100 | 50 | 0 | 0 |

We look forward to your response on or before November 3, 2016.

Very truly yours,

David C. Fathi

cc:      All counsel

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

# EXHIBIT 3



**OFFICE OF THE ARIZONA ATTORNEY GENERAL**

**MARK BRNOVICH**
**ATTORNEY GENERAL**

**STATE GOVERNMENT DIVISION**
**LIABILITY MANAGEMENT SECTION**

**LUCY M. RAND**
**ASSISTANT ATTORNEY GENERAL**
**DIRECT LINE: (602) 542-7683**
**EMAIL:** Lucy.Rand@azag.gov

August 29, 2016

**VIA ELECTRONIC MAIL**:

Corene Kendrick
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
CKendrick@prisonlaw.com

      Re:    **Plaintiffs' July 29, 2016 Notice of Noncompliance**
               *PARSONS, et al. v. RYAN, et al., USDC CV12-00601-DKD*

Dear Corene:

      This letter responds to your July 29, 2016 letter to Defendants alleging noncompliance under the Stipulation regarding Health Care Performance Measure ("HC PM") Nos. 31, 35, 39, 40, 44, 50, 51, 52, 55, 73, 74, 76, 80, 86, 87, 88, 94, 95, 96, 97, 98, and 99.

      For the reasons set forth below, Defendants are in compliance with HC PM Nos. 31 (Douglas, Eyman, Florence, Lewis, Perryville, Tucson, Winslow and Yuma), 51 (Eyman, Florence, and Yuma), 74 (Perryville), 76 (Perryville), 80 (Perryville), 86 (Tucson), 87 (Perryville), 88 (Lewis), 94 (Perryville and Yuma), 95 (Lewis and Winslow), 96 (Phoenix), 98 (Perryville), and 99 (Florence). ADC is on course to terminate its monitoring and reporting requirements under the Stipulation for these HC PMs in March 2017 or soon thereafter. As explained below, Defendants have been and are taking actions to improve compliance with HC PM Nos. 35, 39, 40, 44, 50, 51 (Lewis, Tucson), 52, 55 (Eyman, Florence, Tucson, Yuma), 95 (Tucson), 97, and 98.

      In some instances, Plaintiffs misstate or over-exaggerate Defendants' alleged noncompliance with the HC PMs. A few isolated instances of non-compliance are not sufficient to establish "Defendants have failed to *substantially* comply in some *significant* respect with [the] Stipulation." (*See* Dkt. 1185 at ¶ 30 (emphasis added).) Defendants are in compliance if the HC PMs meet or exceed 75% compliance during the first twelve months, 80% compliance during the second twelve months, and 85% compliance thereafter. (Dkt. 1185 at ¶ 10.) ADC's duty to measure and report compliance with the HC PMs terminates, as to each specific complex, when the complex is in compliance for 18 out of 24 months and has not been out of compliance for three or

Corene Kendrick
*PARSONS, et al. v. RYAN, et al.*, USDC CV12-00601-DKD
Re:  Response to 7/29/16 Notice of Non-compliance re: HC PMs
August 29, 2016
Page 2

more consecutive months within the past 18 months.  (*Id*. at ¶ 10(b).)  Therefore, Plaintiffs' letter does not address "substantial noncompliance" as to each performance measure discussed herein.

Nevertheless, Defendants are aware of the HC PMs and complexes that are not reaching the desired compliance thresholds.  Defendants have worked with medical and security personnel to develop corrective action plans ("CAPs") to address the noncompliance and believe the issues with the HC PMs have been remedied or will be remedied with the plans developed.  The actions Defendants have been and are taking to increase compliance are discussed below.

The corrective actions are not exhaustive and are subject to revision in order to ensure inmates are receiving timely and adequate care.  Defendants continue to work with medical and security personnel at each facility to identify the cause of any non-compliant findings and develop CAPs that will remedy any issues.  There are often various factors that will affect compliance, including, but not limited to, adequate documentation, source records, inmate populations, available resources, allocation and management of resources, and organizational structure.  For example a corrective action that is successful at one unit or complex many not be successful at another unit or complex because of differences in the size or physical plant of the unit or complex, the inmate populations, or the allocation and management of resources.  Therefore, further investigation may result in additional or alternative corrective actions.  Because this process is ongoing and corrective actions are subject to adjustment and change, the corrective actions noted below are not exhaustive and may be revised without prior notice.

    **1.**      **HC PM #31:** *Mortality reviews will identify and refer deficiencies to appropriate managers and supervisors, including CQI committee and corrective action will be taken.* (Douglas, Eyman, Florence, Lewis, Perryville, Tucson, Winslow, and Yuma)

Plaintiffs allege Defendants are noncompliant with HC PM #31 because (1) the CGAR scores fall below the compliance thresholds, and (2) Defendants are failing to properly monitor this measure.  (Kendrick 7/29/16 Letter at 1-2.)  As explained below, Defendants are consistently performing above the compliance thresholds for HC PM #31 at all facilities.  As a result, Defendants are on course to terminate their monitoring and reporting requirements under the Stipulation for this HC PM in March 2017.

First, Defendants' scores on their face are compliant with this HC PM at Douglas, Eyman, Florence, Lewis, Perryville, Tucson, Winslow, and Yuma.  As explained below, after receiving Plaintiffs' July 29, 2016 notice, Defendants evaluated the monitoring process and re-audited this performance measure at Douglas, Eyman, Florence, Lewis, Perryville, Tucson, Winslow, and Yuma from January 2016 through May 2016.  This second review (or re-audit) followed the revised auditing procedure discussed below.  Defendants found that Florence and Perryville have been 100% compliant each month.  Eyman has been 100% compliant each month except May 2016. Lewis has been compliant each month except March 2016.  Douglas, Tucson, Winslow and Yuma have been compliant for every month since March 2015.

Corene Kendrick
*PARSONS, et al. v. RYAN, et al.*, USDC CV12-00601-DKD
Re:  Response to 7/29/16 Notice of Non-compliance re: HC PMs
August 29, 2016
Page 3

The updated findings are as follows:

| Threshold / Facility | 75% Jan-16 | 75% Feb-16 | 80% Mar-16 | 80% Apr-16 | 80% May-16 | 80% Jun-16 |
|---|---|---|---|---|---|---|
| Douglas[1] | N/A | 100% | 100% | N/A | N/A | N/A |
| Eyman[2] | 100% | 100% | 100% | 100% | 67% | 100% |
| Florence[3] | 100% | 100% | 100% | 100% | 100% | 100% |
| Lewis[4] | 100% | N/A | 75% | 100% | 100% | 100% |

---

[1]  Douglas
   • March CQI meeting (03/08/16, pg. 4) – 1 death was reviewed. ADCM496922
       *Finding is 1/1 = **100%**.  No deficiencies noted – 287351.*

[2]  Eyman
   • March CQI meeting (03/17/16, pg. 3) – 2 deaths were reviewed ADCM496930
       *Finding is 2/2 = **100%**.  No deficiencies noted – 202466 (final review); deficiencies discussed 126715 (first review).*

   • April CQI meeting (04/14/16, pg. 3) – 1 death reviewed.
       *Finding 1/1 = **100%**.  No deficiencies noted – 271101 (final review).*

   • May CQI meeting (05/18/16, pg. 5) –3 deaths were reviewed ADCM497201-05
       *Finding 2/3 = **67%**. No deficiencies noted – 258876; deficiencies discussed – 127279; MH recommendations not discussed – 126715 (final review).*

[3]  Florence
   • March CQI meeting (03/17/16, pgs. 6-13) – 12 deaths were reviewed.
       *Findings 12/12 = **100%**.  No deficiencies noted – 299704, 150691, 035199, 131344, 214729, 143811, 032212, 039532, and 214729; deficiencies discussed – 269765, 038108, and 093140.*

   • April CQI meeting (04/07/16, pgs. 6-18) – 12 deaths were reviewed. ADCM497123-36
       *Findings 12/12 = **100%**.  No deficiencies noted – 143811, 032212, 039532, and 131344; deficiencies discussed – 233612, 038108, 250763, 146482, 146482, 269765, 035199, and 093140.*

   • May CQI meeting (05/05/16, pgs. 5-9) – 8 deaths were reviewed.  (#250763 is listed twice, as a second review, then as a final review) ADCM497212-16
       *Findings 8/8 = **100%**. No deficiencies noted – 244195, 214729, 046620, 143811, and 046620; deficiencies discussed – 230314, 250763, and 038108.*

[4]  Lewis
   • January CQI meeting (01/13/16, pgs. 6-7) – 4 deaths were reviewed. ADCM496822-23
       *Finding is 4/4 = **100%**. No deficiencies noted – 190207, 087952, and 174305; deficiencies discussed – 180507.*

Corene Kendrick
*PARSONS, et al. v. RYAN, et al.*, USDC CV12-00601-DKD
Re:  Response to 7/29/16 Notice of Non-compliance re: HC PMs
August 29, 2016
Page 4

| Threshold / Facility | 75% Jan-16 | 75% Feb-16 | 80% Mar-16 | 80% Apr-16 | 80% May-16 | 80% Jun-16 |
|---|---|---|---|---|---|---|
| Perryville[5] | N/A | N/A | 100% | N/A | N/A | 100% |
| Tucson[6] | 100% | 100% | 100% | 100% | 100% | 100% |
| Winslow[7] | N/A | N/A | N/A | N/A | 100% | 100% |
| Yuma[8] | N/A | 100% | 100% | N/A | N/A | 100% |

- February CQI meeting – no mortality reviews completed – N/A
- March CQI meeting – 4 deaths were reviewed. ADCM496954-55
  *Finding is 3/4 = **75%**.  No deficiencies noted – 087952, 138436, and 089908; deficiencies not discussed – 030464.*

- April CQI meeting (04/13/16, pg. 10) – 1 death was reviewed. ADCM497152
  *Finding is 1/1 = **100%**.  No deficiencies noted – 190207.*

- May CQI meeting (05/11/16, pgs. 9-10) – 1 death was reviewed. ADCM497228-29
  *Finding is 1/1 = **100%**.  No deficiencies noted – 288990.*

[5]  Perryville
- March CQI meeting (03/08/16, pg. 3) – 1 death was reviewed. ADCM496963
  *Finding is 1/1 = **100%**.  No deficiencies noted – 200826.*

[6]  Tucson
- February CQI meeting (02/04/16, pgs. 2-3) – 6 deaths were reviewed.
  *Finding is 6/6 = **100%**.  No deficiencies noted - 069597, 251101, 243978, 29714, 177261, and 043658.*

- March CQI meeting (3/03/16, pg. 3) – 1 death reviewed.
  *Finding 1/1 = **100%**.  Deficiencies discussed – 240083.*

- April CQI meeting (04/14/16, pgs. 3-4) – 9 deaths reviewed.
  *Finding 9/9 = **100%**.  No deficiencies noted – 039471, 073896, 281242, and 065972; deficiencies discussed – 204527, 095308, 077204, 243978, and 065957.*

- May CQI meeting (05/23/16, pg. 3) – 4 deaths were reviewed. ADCM497267
  *Finding is 4/4 = **100%**. No deficiencies noted – 250417; deficiencies discussed – 239931, 204527, and 177261.*

[7]  Winslow
- May CQI meeting (05/18/16, pg. 3) – 1 death was reviewed.  ADCM497272
  *Finding is 1/1 = **100%**.  No inmate information provided in minutes; however, Bobby Pittman, #208591, died on March 21, 2016, and he was last housed at Winslow.*

[8]  Yuma
- March CQI meeting (03/10/16, pg. 4) – 1 death was reviewed. ADCM496992
  *Finding is 1/1 = **100%**.  No deficiencies noted – 029515.*

Corene Kendrick
*PARSONS, et al. v. RYAN, et al.*, USDC CV12-00601-DKD
Re:  Response to 7/29/16 Notice of Non-compliance re: HC PMs
August 29, 2016
Page 5

Surely Plaintiffs will agree that being noncompliant for one month at two different complexes does not constitute substantial noncompliance.

Second, Plaintiffs mistakenly claim Defendants are failing to properly monitor this measure. (Kendrick 7/29/16 Letter at 1.)  Plaintiffs' concerns regarding the monitoring of this measure are based on a lack of understanding regarding the mortality review process, the CQI Meeting Minutes, and how this HC PM is monitored.  CQI meetings occur the next month after data has occurred. Accordingly, the CQI meeting that occurs in August of 2016 will discuss the events and/or data that occurred in July of 2016.  Further, there are generally three mortality reviews: first review, second review, and final review.  The initial reviews are based on information obtained from the complexes and are not final because they do not include an autopsy or the coroner's report regarding the cause of death.  HC PM #31 measures compliance related to the final mortality review.  Because the CQI Meeting Minutes do not always indicate whether the mortality review is the first review, second review, or final review, the following changes have been made to ensure the CQI Meeting Minutes in the future will accurately report what was reviewed and discussed:

> The Regional CQI Director will obtain the morbidity/mortality (MM) information while attending and participating in all mortality review meetings.  The CQI Director will attend CQI meetings to ensure that up-to-date MM information is shared and reviewed.   The Facility Health Administrator (FHA) will ensure that the CQI Meeting Minutes reflect the same, and the CQI Director and Director of Operations (DO) are required to complete a monthly trust and verify prior to submission to the ADC monitor for review.   The Regional Director of Nursing (RDON) has created a standard template for the CQI meeting minutes that will be used statewide to ensure that all of the mandatory information is documented.   The "First Review" requires documentation in the minutes that there was a death and to document pending recommendations.   The "Final Report" documents the findings and communicates areas of concern.

Previously, the CGAR findings were based on the first mortality reviews, instead of being based on the final mortality reviews that have deficiencies to report and discuss at the CQI meetings.  If a final mortality review did not have deficiencies to report and discuss, that file was not included in the "universe" of reviewed mortalities.  Beginning in August 2016, CGAR audits will include all CQI mortality reviews, which will be noted as (1) reviewed without deficiencies, (2) pending final review and recommendations, (3) reviewed with recommendations that were discussed, or (4) reviewed with recommendations that were not discussed.  Those final mortality reviews with recommendations that were not discussed at the CQI meeting will constitute a negative finding.

Corene Kendrick
*PARSONS, et al. v. RYAN, et al.*, USDC CV12-00601-DKD
Re:  Response to 7/29/16 Notice of Non-compliance re: HC PMs
August 29, 2016
Page 6

   2.      **HC PM #35:** *All inmate medications (KOP and DOT) will be transferred with and provided to the inmate or otherwise provided at the receiving prison without interruption.* (Eyman, Florence, Lewis, Phoenix, Tucson, and Yuma)

   The Phoenix complex originates the majority of the inmate transfers statewide.  The complex has completed a detailed review of the "inter-system" transfer process through internal investigations that reviewed the inmate tracking database as well as an ongoing CQI study of same.

   In order to increase compliance with HC PM #35 at Phoenix, which is the primary intake facility and "sending complex," a nurse prints the inmate profile sheets, compares the movement sheet and bags of medication, and signs the patient profile sheets verifying that medications match the medication inmate profile sheets. Tamper resistant tape is used on the envelope after the verification process.  The lead inventory coordinator ensures there are no medications left behind from the prior day. Notifications of completion and/or any issues are made to FHA/AFHA/DON by 10:00 am the following morning.

   If an inmate arrives at a complex without his/her medication in hand, the intake nurse will ask custody to check his/her property the same day.  If the medications are not in property, the intake nurse will complete an incident report (IR) and notify the complex FHA and/or the DON. The complex FHA and/or DON will in turn reach out to the "sending" complex FHA and/or DON and verify medication.  The FHA and/or DON at the receiving and sending complex will report the IR to the complex Warden.  If medications are available using stock medication, the inmate will receive stock medication until his/her medication arrives from the "sending" complex.   If medications are not available via stock medication, then back up pharmacy will be used.

   The RDON is conducting additional training at all complexes to ensure "inter system" transfer forms are used for receipt of inmates to minimize any documentation errors.  Corizon has also requested a hard stop fix to the electronic medical record (EMR) to ensure that nurses are checking the "reviewed/verified medication button" to indicate that they have reviewed/verified medications received with the inmate.

   In addition, a designated intake nurse has been assigned to several larger complexes receiving larger numbers of inter-system transfers to increase compliance.

   Defendants believe these corrective actions will increase compliance with this performance measure.  Compliance has increased at Eyman (May 2016 – 60% to June 2016 – 76%), Phoenix (May 2016 – 67% to June 2016 – 71%), Tucson (May 2016 – 19% to June 2016 – 27%), and Yuma (April 2016 – 75% to May-June 2016 – 86%).  Defendants expect compliance to improve at Florence and Lewis in July and August 2016, as these corrective actions are made.

Corene Kendrick
*PARSONS, et al. v. RYAN, et al.*, USDC CV12-00601-DKD
Re: Response to 7/29/16 Notice of Non-compliance re: HC PMs
August 29, 2016
Page 7

**3.     HC PM #39:** *Routine provider referrals will be addressed by a Medical Provider and referrals requiring a scheduled provider appointment will be seen within fourteen calendar days of the referral.* (Yuma)

Defendants' compliance with HC PM #39 has been close to or just above the compliance thresholds for this performance measure since March 2015. The average compliance finding over the past 16 months has been 72%. Nevertheless, Defendants have been and are taking the following steps to increase compliance above the current 80% compliance threshold:

Inmates at Yuma will be scheduled for a provider appointment by the nurse at the time of the nursing encounter and/or referred to the provider for recommendations and/or verbal orders. The FHA and/or DON will follow up each day to identify inmates requiring appointments and maintain compliance. Scheduled provider appointments at Yuma will be completed daily. If an appointment needs to be rescheduled, the FHA will be notified of the reason, and it will be documented in the inmate's chart. The complex FHA and/or DON will also notify the Site Medical Director (SMD) each day if any appointments are out of compliance.

**4.     HC PM #40:** *Urgent provider referrals are seen by a Medical Provider within 24 hours of the referral.* (Eyman, Florence, Lewis, and Tucson)

Urgent provider referrals are seen the same day and documented by nursing staff. However, Defendants have found that findings of non-compliance with this HC PM are often the result of nursing staff failing to properly document encounters with the medical providers. Although the nurses document the medical provider's verbal orders, they often fail to indicate in the medical records that the provider reviewed and approved the order. As a result, the facility does not receive credit for compliance with this measure. In order to increase compliance with this HC PM, Corizon has provided additional nursing education statewide.

**5.     HC PM #44:** *Inmates returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital shall have the hospital's treatment recommendations reviewed and acted upon by a medical provider within 24 hours.* (Douglas, Eyman, Florence, Lewis, and Tucson)

In order to increase compliance with this HC PM, all complex medical leadership, including the FHA, SMD, DON, and Mental Health Lead participate in a mandatory daily meeting or "huddle." At these daily meetings, the medical leadership reviews any complex ER transports and/or any hospitalized inmates. The complex FHA receives a daily summary of all ER send outs, daily hospital report, and an ADC movement report. The FHA is responsible for ensuring that any inmate listed on these reports is seen each day. The FHA will then report on his findings the next day at the "huddle."

Defendants have seen improvement as Lewis has increased its compliance over the last four months (March 2016 – 78%; April 2016 – 88%; May 2016 –70%; and June 2016 – 80%), Douglas

Corene Kendrick
*PARSONS, et al. v. RYAN, et al.*, USDC CV12-00601-DKD
Re: Response to 7/29/16 Notice of Non-compliance re: HC PMs
August 29, 2016
Page 8

has increased its compliance over the last three months (April 2016 – 80%; May 2016 – 100%; June 2016 – 78%), and Tucson increased its compliance in June 2016 to 85%. Defendants are confident that Eyman will also increase compliance as it begins to implement these daily "huddles" and hold the FHA accountable for improving compliance with this HC PM.

> **6.    HC PM #50:** *Urgent specialty consultations and urgent specialty diagnostic services will be scheduled and completed within 30 calendar days of the consultation being requested by the provider.* (Florence and Tucson)

Overall, Defendants have been compliant with this HC PM statewide. Florence and Tucson have been found non-compliant only as the compliance threshold increased to 80% in March 2016. Prior to March 2016, Tucson was only found non-compliant with this threshold twice. Nevertheless, Defendants have been and are taking the following steps to increase compliance.

An internal analysis discovered that the primary issue with compliance with this HC PM relates to specific consults in the area of infectious disease. Offsite providers in Florence and Tucson have recently become undependable and have canceled several clinics. In response, Corizon has contracted with a new infectious disease provider as well as an HIV specialist to provide additional resources. It is challenging to contract with outside providers willing to provide specialty consultants to inmates. Corizon is currently collaborating with multiple offsite providers in an effort to obtain additional providers and establish onsite clinics. These additional resources will assist in appointment availability to meet the compliance threshold.

In addition, consult status logs are reviewed weekly by the Utilization Management team and the information is shared with the Clinical Coordinator and complex leadership to review for compliance. The Clinical Coordinator will also run weekly reviews and identify pending consults that have been difficult to schedule or have been canceled. The Clinical Coordinator will communicate with the FHA to address any issues in real time.

> **7.    HC PM #51:** *Routine specialty consultations will be scheduled and completed within 60 calendar days of the consultation being requested by the provider.* (Eyman, Florence, Lewis, Tucson, and Yuma)

As Plaintiffs' counsel is aware, Defendants' duty to measure and report compliance with the HC PMs terminates, as to each specific complex, when the complex is in compliance for 18 out of 24 months and has not been out of compliance for three or more consecutive months within the past 18 months. (Dkt. 1185 at ¶ 10(b).) Although a few complexes have not met the compliance thresholds since they increased to 80% in March 2016, Defendants are still on course to terminate its monitoring and reporting requirements for HC PM #51 at Eyman, Florence and Yuma in March 2017. These complexes have only been noncompliant three or four times since March 2015.

Nevertheless, Defendants have been and are taking corrective actions to increase compliance with this HC PM at Eyman, Florence, Lewis, Tucson, and Yuma. An internal analysis discovered

Corene Kendrick
*PARSONS, et al. v. RYAN, et al.*, USDC CV12-00601-DKD
Re:  Response to 7/29/16 Notice of Non-compliance re: HC PMs
August 29, 2016
Page 9

that the primary issue with compliance with this HC PM relates to specific consults in the areas of infectious disease, dermatology, and optometry. Offsite providers have recently become undependable and have canceled several clinics. As a result, Corizon has contracted with several new providers to provide additional resources. It is challenging to contract with outside providers willing to provide specialty consultants to inmates. Corizon is currently collaborating with multiple offsite providers in an effort to obtain additional providers and establish onsite clinics. These additional resources will assist in appointment availability to meet the compliance threshold.

Optometry consults were backlogged due to an increase in referrals that were unable to complete their specialty consults because of delays in nurses conducting visual acuity exams prior to the referral. This backlog has been corrected through nursing education and a review of the current list of inmates scheduled for optometry.

In addition, consult status logs are reviewed weekly by the Utilization Management team and the information is shared with the Clinical Coordinator and complex leadership to review for compliance. The Clinical Coordinator will also run weekly reviews and identify pending consults that have been difficult to schedule or have been canceled. The Clinical Coordinator will communicate with the FHA to address any issues in real time.

**8.    HC PM #52:** *Specialty consultation reports will be reviewed and acted on by a Provider within seven calendar days of receiving the report.* (Florence, Perryville, Tucson, and Yuma)

Defendants have discovered that many of the non-compliant findings were the result of documentation issues, not because the medical providers were not reviewing and acting upon the specialty consultation reports within the required time limits. Because consult reports were not date stamped, the monitors had to use the date of the consult, which can be more than seven days from the consultation report. In order to increase compliance, each complex will ensure that all medical records receive a date stamp and the Clinical Coordinator will be held accountable for ensuring that the consult reports are reviewed within compliance standards. The Clinical Coordinator will elevate any issues to the FHA if there are any providers who are not timely reviewing consult reports. In addition, the Associate Regional Medical Director (ARMD), SMD, DO and/or FHA will follow up no less than three times each week to ensure that there are no pending consult reports for review.

Defendants have found that compliance is improving with this HC PM. Compliance has improved from May to June 2016 from 24% to 45% at Florence, 72% to 76% at Perryville, and 72% to 83% at Yuma. Defendants are confident that Tucson will also increase compliance as Corizon increases accountability and implements the above corrective actions.

Corene Kendrick
*PARSONS, et al. v. RYAN, et al.*, USDC CV12-00601-DKD
Re:  Response to 7/29/16 Notice of Non-compliance re: HC PMs
August 29, 2016
Page 10

      **9.**       **HC PM #55:** *Disease management guidelines will be implemented for chronic diseases.* (Eyman, Florence, Tucson, and Yuma)

      Overall, Defendants have been compliant with HC PM #55 statewide.  Yuma has been compliant with this HC PM most months.[9]  Florence drastically improved its compliance, as it has increased from 53% in March 2016 to 90%, 85%, and 90% from April to June 2016.  Nevertheless, Defendants have been and are taking the following steps to increase and maintain compliance at Eyman, Tucson, and all other complexes.

      In order to increase and maintain compliance, a Chronic Care RN and/or designee has been assigned at each complex to maintain a chronic care database and track and schedule chronic care patients. The Chronic Care RN and/or designee is responsible for maintenance of the chronic care data, ensuring proper scheduling, and ensuring that follow up testing is complete.  The implementation of an EMR allows the Chronic Care RN and medical leadership to more easily verify the chronic care database.

      Any refusal of any component of the chronic care process shall be documented, and the inmate will be automatically scheduled at the next chronic visit based on the recommended guidelines. Components of chronic care include, but are not limited to, laboratory testing, EKGs, eye exams, physical examination, onsite testing or off-site monitoring, and evaluations.  Any cancellations or no shows will be rescheduled as soon as reasonably possible.

      In addition, all complexes have been provided updated disease management guidelines to place in all patient exam rooms as a reference for all providers.

      **10.**       **HC PM #73:** *All MH-3 minor prisoners shall be seen by a licensed mental health clinician a minimum of every 30 days.* (Tucson)

      Overall, Defendants have been compliant with HC PM #73 statewide.  Tucson has only been found non-compliant six times over the last 16 months and has been compliant the last two months (May and June 2016) and is expected to be compliant in July 2016.  Nevertheless, Defendants have been and are taking actions to increase and maintain compliance.

      In the past, the mental health staff shared responsibility of ensuring MH-3 minor prisoners were seen every 30 days.  Now, a specific staff member is assigned to the complex to ensure all MH-3 minor prisoners are seen every 30 days and no one is missed.  A Psychology Associate has been directly assigned as coordinator of services to this complex.  This has resulted in achieving 100% compliance in May and June of 2016, and is expected to meet compliance in July 2016. Additionally, Defendants have developed a treatment group of all minors who will be transitioning into general population within six months to help prepare them for the transition.  Defendants have

---

[9]    Except June 2015, September 2015, and March 2016.

Corene Kendrick
*PARSONS, et al. v. RYAN, et al.*, USDC CV12-00601-DKD
Re: Response to 7/29/16 Notice of Non-compliance re: HC PMs
August 29, 2016
Page 11

also initiated a workgroup in concert with operations to develop a program to focus on minor-to-general population transition.

Defendants expect to maintain their compliance above the 80% threshold and anticipate this HC PM will be removed from monitoring in March 2017.

**11.    HC PM #74:** *All female prisoners shall be seen by a licensed mental health clinician within five working days of return from a hospital post-partum.* (Perryville)

This HC PM has only been out of compliance at Perryville two times in the past 16 months. These findings were based on one inmate being out of compliance due to a very low sample size. It was at 100% in June, and Defendants anticipate this HC PM will be removed from monitoring in March 2017.

Nevertheless, Defendants have been and are taking the following steps to maintain compliance. In order to increase communication among medical staff and ensure compliance, the medical staff has been advised to notify the DON and Mental Health Lead of all postpartum returns from off-site encounters. Post-partum hospital discharges are also discussed in the management daily "huddle" to ensure that follow-up appointments are scheduled within compliance guidelines. All staff have also been re-educated on the policy and expectations. These internal processes and systems have proved successful, as subsequent audits for this measure were within compliance guidelines four of the last five months.

**12.    HC PM #76:** *If the initial mental health assessment of a prisoner during initial intake is not performed by licensed mental health staff, the prisoner shall be seen by a mental health clinician within fourteen days of his or her arrival into ADC.* (Perryville)

This HC PM has only been missed three times in 16 months. Further investigation discovered that during the deficient months, an unlicensed staff member was working in intake by mistake. This staff member has been re-assigned and only licensed staff work in intake now which has resolved all issues with this HC PM. All staff have been re-educated on the policy and expectations. The lead psychologist ensures only licensed staff work in intake. These internal processes and systems have proved successful, as the subsequent audits for this measure were within compliance. Defendants were 100% compliant in June 2016. Defendants anticipate this HC PM will be removed from monitoring in March 2017.

**13.    HC PM #80:** *MH-3A prisoners shall be seen a minimum of every 30 days by a mental health clinician.* (Perryville)

This HC PM was only out of compliance by one chart for the months of April and May. As a result, Perryville fell out of compliance by only 1% (to 79%). During the deficient months, the non-compliant findings were due to clinicians seeing inmates on time, but not documenting these contacts in a timely matter. All staff have been re-educated on the policy and expectations. In addition, the lead psychologist ensures regular reviews of charts are documented correctly and all

Corene Kendrick
*PARSONS, et al. v. RYAN, et al.*, USDC CV12-00601-DKD
Re:  Response to 7/29/16 Notice of Non-compliance re: HC PMs
August 29, 2016
Page 12

staff has signed acknowledgments that they will enter notes within 24 hours of contact.  These internal processes and systems have proved successful, as the subsequent audits for this measure were within compliance.  Perryville achieved 93% compliance in June 2016, and Defendants believe that the documentation issue specific to Perryville has been resolved.  Defendants anticipate this HC PM will be removed from monitoring in March 2017.

**14.      HC PM #86:** *MH-3D prisoners shall be seen a minimum of every 90 days by a mental health clinician for a minimum of six months after discontinuing medication.* (Tucson)

Tucson has shown significant improvement with this HC PM and has been in compliance over the past three months.  The most recent CGAR finding in June 2016 was 94%. Tucson's performance issues from January to March 2016 were related to vacant staff positions and an ineffective case management tracking system.  The psychology associate positions have now been filled as of August 28, 2016.  The system for scheduling patient appointments has also been improved by following the system that has proven effective at Phoenix and Yuma.  In addition, a Data Technician position has been created and filled to manage the caseload schedules.  This allows Tucson to more effectively schedule patients within the appropriate timeframes.  As a result, it has been able to maintain compliance for the last three months.  Defendants believe the scheduling issues have been resolved at this complex.  Defendants anticipate this HC PM will be removed from monitoring in June 2018.

**15.      HC PM #87:** *MH-4 prisoners shall be seen by a mental health clinician for a 1:1 session a minimum of every 30 days.* (Perryville)

Perryville has policies and procedures in place that are normally followed and result in compliant findings. During the deficient months, Perryville incurred lower findings due to clinicians seeing inmates on time, but not documenting these contacts in a timely manner. All staff have been re-educated on the policy and expectations.  In addition, the lead psychologist ensures regular reviews of charts are documented correctly and all staff signed acknowledgments that they will enter notes within 24 hours of contact.  These internal processes and systems have proved successful, as the subsequent audits for this measure were within compliance.

Defendants believe this scheduling issue has been resolved at this complex. Perryville has been in compliance four of the last six months, including 100% in the most recent month, June.  The only times Perryville failed to meet compliance was due to the documentation errors.   Defendants anticipate this HC PM will be removed from monitoring in March 2017.

**16.      HC PM #88:** *MH-4 prisoners who are prescribed psychotropic medications shall be seen by a mental health provider a minimum of every 90 days.*  (Tucson)

Tucson has been in compliance four of the last seven months.  The lower compliance findings in March and April (70%) were due to the scheduler failing to appropriately schedule the patients within timeframes.  A Data Technician position has been created and filled to manage the

Corene Kendrick
*PARSONS, et al. v. RYAN, et al.*, USDC CV12-00601-DKD
Re:  Response to 7/29/16 Notice of Non-compliance re: HC PMs
August 29, 2016
Page 13

caseload schedules allowing a more effective case management approach.  As a result, Tucson was able to attain compliance after the implementation of the case management system that has proven effective at Phoenix and Yuma.

Defendants believe this scheduling issue has been resolved at this complex.  Tucson achieved 100% in May and 90% in June.  Defendants anticipate this HC PM will be removed from monitoring in March 2017.

17.     **HC PM #94:** *All prisoners on a suicide or mental health watch shall be seen daily by a licensed mental health clinician or, on weekends or holidays, by a registered nurse.* (Perryville and Winslow)

At Perryville, there is a policy and procedure in place which is normally followed well. Compliance has been achieved in five of the last seven months.  During the deficient months, non-compliance was due to clinicians seeing inmates on time, but failing to document these contacts in a timely manner. All staff have been re-educated on the policy and expectations, and the staff failing to provide timely documentation have received corrective action. In addition, the lead psychologist ensures regular reviews of charts are documented correctly and all staff signed acknowledgments that they will enter notes within 24 hours of contact.  The result was 100% compliance in June. Defendants believe the documentation issue at Perryville has been resolved and anticipate this HC PM will be removed from monitoring in March 2017.

As for Winslow, we determined that there was an auditing error that has occurred since the beginning of the Stipulation.  We will be providing corrected CGARs for these months.  Winslow achieved 100% compliance in June.

Nevertheless, the following actions have been taken to increase and maintain compliance at Winslow.  Inmates placed on watch are transferred immediately to a corridor facility where they may be seen by a licensed clinician.  Winslow is also currently using tele-psychology as a means of evaluating patients placed on suicide watch for those patients who are not transferred immediately. Additionally, the patients are seen immediately by an RN to provide on-site evaluation and contact until the patient's expedited transfer.

18.     **HC PM #95:** *Only licensed mental health staff may remove a prisoner from a suicide or mental health watch. Any prisoner discontinued from a suicide or mental health watch shall be seen by a mental health provider, mental health clinician, or psychiatric registered nurse between 24 and 72 hours after discontinuation, between seven and ten days after discontinuation, and between 21 and 24 days after discontinuation of the watch.* (Lewis, Tucson, and Winslow)

Lewis has only been found non-compliant with HC PM #95 three times in the past 16 months.  The non-compliance findings at Lewis were primarily the result of documentation issues. Defendants have also seen increased compliance after adjustments were made to the mental health staff leadership.  Defendants believe the documentation issue at Lewis has been resolved as it

Corene Kendrick
*PARSONS, et al. v. RYAN, et al.*, USDC CV12-00601-DKD
Re: Response to 7/29/16 Notice of Non-compliance re: HC PMs
August 29, 2016
Page 14

achieved 90% in June. Defendants anticipate this HC PM will be removed from monitoring at Lewis in March 2017.

At Tucson, the recent staffing of four vacant Psychology Associate positions in the last two months has greatly assisted in meeting compliance standards. In addition, the Mental Health Lead has made adjustments to assignments for mental health staff to ensure appropriate licensed professionals are conducting watch checks. The Mental Health Lead is conducting daily verifications that ensure all inmates on watch are seen by licensed staff. The lead further requires email verification from assigned staff members daily to ensure all watch contacts have been completed within the standard.

As for Winslow, Defendants determined that there was an auditing error and will be providing corrected CGARs for this HC PM. Inmates on suicide watch at Winslow are transferred to another complex with appropriate licensed Mental Health staff because it does not currently have an appropriately licensed Mental Health provider onsite.

**19.     HC PM #96:** *A reentry/discharge plan shall be established no later than 30 days prior to release from ADC for all prisoners who are MH-3 or above.* (Phoenix)

There is a policy and procedure in place at Phoenix that is normally followed well. During the months of February (67%), March (67%), and April (73%) non-compliance resulted because the planning notes and sessions did not occur within the required timeframes. The staff who were identified as continuing to struggle with this finding were not only re-educated, but a specific team meeting was held that focused on a trust and verify process of release planning, as well as strategies for improving performance. Schedules of all releasing inmates have been identified and Mental Health leadership is monitoring and following up with staff to ensure compliance. These internal processes and systems have proved successful, as the subsequent June (100%) audit for this measure exceeds the compliance thresholds. July 2016 is expected to yield the same level of compliance. Defendants believe that the release planning tracking issues have been resolved at Phoenix, and it has maintained 100% compliance for the past two months. Defendants anticipate this HC PM will be removed from monitoring in March 2017.

**20.     HC PM #97:** *A mental health provider treating a prisoner via telepsychiatry shall be provided, in advance of the telepsychiatry session, the prisoner's intake assessment, most recent mental health treatment plan, laboratory reports (if applicable), physician orders, problem list, and progress notes from the prisoner's two most recent contacts with a mental health provider.* (Lewis)

In order to ensure that many inmates are being seen in a timely manner, multiple tele-psychiatry lines have been run simultaneously. While the staff was focusing on the patient contact, some of the intake forms were not scanned into eOMIS prior to the contact with the Psychiatric Provider. Although Defendants do not believe this has negatively affected patient care, Defendants are continuing to improve compliance with this HC PM. Further investigation has discovered that

Corene Kendrick
*PARSONS, et al. v. RYAN, et al.*, USDC CV12-00601-DKD
Re:  Response to 7/29/16 Notice of Non-compliance re: HC PMs
August 29, 2016
Page 15

there was not a clear understanding regarding the development and timing for packets for telepsychiatry services.  The process review found packet preparation was being completed the same day and forwarded to the provider just prior to provider line being executed.  The supporting CNA/Mental Health Aid have been educated, and corrective action was taken to ensure the supporting documentation is generated and forwarded to the Mental Health provider no later than a day before scheduled appointments.  Defendants expect this HC PM to improve as a result of these corrective actions.

      **21.**       **HC PM #98:** *Mental health HNRs shall be responded to within the timeframes set forth in the Mental Health Technical Manual (MHTM) (rev. 4/18/14), Chapter 2, Section 5.0.* (Perryville and Tucson)

      The compliance issues with HC PM #98 are the result of changes to NCCHC requirements and the MHTM.  The provision of the MHTM that Defendants are required to follow under the Stipulation is out of date and not in line with NCCHC requirements and ADC's current practices.  This continual requirement to adhere to a process that is not being utilized, as it is inconsistent with NCCHC requirements, has caused significant issues with compliance that are not related to actual patient care.

      **22.**       **HC PM #99:** *Peer reviews shall be conducted as set forth in the MHTM (rev. 4/18/14), Chapter 1, Section 3.0.* (Florence)

      Defendants do not believe this HC PM is non-compliant.  Defendants anticipate this HC PM will be removed from monitoring in March 2017.  The non-compliance findings in February and March 2016 were due to Corizon's policies and procedures regarding Peer Reviews being different than the outdated MHTM (rev. 4/18/14).  Corizon's policy required the peer review to be completed by a peer, and the MHTM stated it would be completed by the Psychiatric Director.  This issue has been resolved.

      Please feel free to contact me regarding any questions or comments you may have.

      Sincerely,

      *Lucy M. Rand*

      Lucy M. Rand,
      Assistant Attorney General

cc:    Brad Keogh
      Richard Pratt
      Michael Gottfried
      Daniel Struck
      Timothy Bojanowski

# EXHIBIT 4



STRUCK WIENEKE & LOVE     3100 West Ray Road, Suite 300, Chandler, Arizona 85226 | **480.420.1600** | swlfirm.com

November 3, 2016

Daniel P. Struck
Partner

Kathleen L. Wieneke
Partner

Rachel Love
Partner

Timothy J. Bojanowski
Partner

Christina Retts
Partner

Nicholas D. Acedo
Partner

Amy L. Nguyen
Partner

Tara B. Zoellner
Associate

Ashlee B. Fletcher
Associate

Anne M. Orcutt
Associate

Kevin L. Nguyen
Associate

Jacob B. Lee
Associate

Mark A. Bracken
Associate

Erica L. Gadberry
Associate

**_VIA ELECTRONIC MAIL ONLY_**
David C. Fathi
National Prison Project
915 15th Street, NW
7th Floor
Washington, DC  20005-2112

Re:     *PARSONS v. RYAN*
        *Defendants' Response to Plaintiffs' October 4, 2016*
        *Notice of Substantial Noncompliance*

Dear David:

This letter responds to Plaintiffs' October 4, 2016 Notice of Substantial Noncompliance regarding Health Care Performance Measure ("HCPM") Nos. 4, 37, 45 and 73.

**HCPM 4** (Florence):  *Infirmary staffing will be maintained with a minimum staffing level of 2 RNs on duty in the infirmary at all times at Tucson & Florence infirmaries ….*

Corizon inadvertently submitted unreconciled schedules showing 13 vacant shifts in June and 15 vacant shifts in July for infirmary nurses at Florence.  These vacancies are managed at the site level to redirect or otherwise assign available nurses to those vacancies that would not normally be assigned to that shift. Once those vacant shifts are filled with alternate staff, a complete schedule is posted and referred to as the "reconciled" schedule. This reconciled schedule is intended to be the source document for compliance monitoring and verification of performance measure #4. Unfortunately, in June and July 2016, Corizon submitted the unreconciled staffing schedules, which contained the open/vacant shifts.  Although this measure was found non-compliant, the vacant shifts were filled, as shown in the reconciled schedules.  This documentation error has been corrected, and the Corizon compliance monitor will conduct follow-up reviews to ensure all shifts are filled and the correct schedule is submitted to the monitors.

David C. Fathi
November 3, 2016
Page 2

As Plaintiffs are aware, Florence was only noncompliant with this performance measure twice (June and July 2015) in the first year.  Although Florence was found noncompliant the last three months (June, July, August 2016), Defendants do not believe this performance measure is substantially noncompliant because the noncompliant findings were the result of a documentation error and were isolated and sporadic.

**HCPM 37** (Perryville):  *Sick call inmates will be seen by an RN within 24 hours after an HNR is received (or immediately if identified with an emergent need, or on the same day if identified as having an urgent need).*

Perryville continues to hover around the compliance threshold because it has some units that regularly meet or exceed the compliance threshold and some units that are not meeting the compliance threshold.  In order to improve compliance, the HNR process was centralized in June 2016.  With this centralization, there will be one individual responsible for triaging all HNRs.

In addition, if there is an inmate on the nurse line who needs to be rescheduled, the nursing staff will write an Incident Report, explaining the reason for rescheduling the inmate.  At the end of their shifts, Charge Nurses will check to see how many inmates need to be rescheduled for the following day.  To assist the nursing staff at Perryville with these corrective actions, the Corizon Compliance monitor will conduct 30-day post implementation reviews to ensure the above corrective actions are effective.

**HCPM 45** (Florence, Lewis, Tucson, Yuma):  *On-site diagnostic services will be provided the same day if ordered STAT or urgent, or within 14 calendar days if routine.*

The recent non-compliant findings at Florence, Lewis, Tucson, and Yuma were primarily caused by issues with the eOMIS interface for documenting labs and problems with refrigerating and transporting specimens to the labs in a timely manner, which resulted in unusable lab specimens.  To address these problems, Corizon recently changed lab vendors and is working to improve the eOMIS interface.

The nursing staff and providers are also now reviewing daily reports that list all outstanding diagnostic services.  These reports show the inmate name, original encounter date, lab type and priority, provider name, and the number of days since the services were ordered. These reports are reviewed daily to identify any inmates who need diagnostic services and ensure compliance.

David C. Fathi
November 3, 2016
Page 3

Corizon has also made the following changes to its procedures:  The Site Medical Director (SMD) will adjust the way orders are written to reflect "special" and, in the comments, the instructions will be listed for the day the lab will be drawn.  The yard nurse is responsible for all STAT labs, and if a yard nurse is not available, the inmate will be transferred to the HUB.  If a STAT x-ray is ordered during business hours, the yard nurse will call and speak to the x-ray Technician and inform security of the need to transfer the inmate to the HUB.  If a STAT x-ray is ordered after hours, the provider will determine if the inmate needs to be sent offsite or, if appropriate, complete the x-ray the next business day.  All STAT labs will be done by the yard nurse, and if a yard nurse is not available, the inmate will be transferred to the HUB. If a STAT lab is ordered after hours, the provider will determine if the inmate needs to be sent offsite or, if appropriate, complete the lab the next business day.  A Corizon Compliance monitor will conduct a 30-day post implementation review to ensure the above corrective actions are effective.

**HCPM  73** (Perryville):  *All MH-3 minor prisoners shall be seen by a licensed mental health clinician a minimum of every 30 days.*

Perryville has been 100% compliant with this performance measure every month since March 2015, except May, June, and July 2016.  The reason the compliance percentage was so low during these months was because there were only two MH-3 minors at Perryville in May 2016 and only one MH-3 minor at Perryville in June and July 2016. During these three months, the Lead Psychologist, who was responsible for contacting the minors at Perryville, failed to timely document her contacts.  Although she reported that she contacted the minors, she failed to properly document her contacts.

The documentation errors have been remedied. A new Lead Psychologist has been hired to work at Perryville.  The new Lead has experience working as an interim Lead, has an MBA, and has demonstrated superior organizational skills.  The Lead posts a weekly schedule for each mental health staff member.  These schedules show the associated caseload to which they are expected to adhere.  In addition, the new Lead has implemented a case management tracking system that has been successfully used at other facilities.  A mental health clerk has also been trained in the operation of this system to assist the Lead Psychologist.  Finally, the Regional Office is overseeing the tracking of this performance measure, and the charts for any minors are being reviewed at the Regional Office every week.  Perryville returned to 100% compliance in August 2016 and is expected to maintain compliance, as the above corrective actions were implemented in mid-September.

David C. Fathi
November 3, 2016
Page 4


      In short, these noncompliant findings are the result of one clinician failing to make notes for one inmate.  Therefore, Defendants do not believe Perryville is substantially noncompliant with this performance measure.

      Please let us know if you have any questions or if you would like to discuss.

      Sincerely,

      Daniel P. Struck

DPS/eap

cc:    All counsel

# EXHIBIT 5



Arizona Department
of Corrections

ARIZONA DEPARTMENT OF CORRECTIONS

Health Services Contract Monitoring Bureau

# Monitor Guide

# Duties & Responsibilities

Draft Revised: 1/10/17

**PERFORMANCE MEASURES**

Health Care Performance Measure No. 73
Stipulation Category: Mental Health (01)

CGAR Category: Mental Health (C) 01

| Performance Measure: |
| --- |
| All MH-3 minor prisoners shall be seen by a licensed mental health clinician a minimum of every thirty (30) days.* |

| CGAR Question: |
| --- |
| Are all MH-3 minor prisoners being seen by a licensed mental health clinician a minimum of every thirty (30) days? |

| Source of Records/Review: |
| --- |
| AIMS DA14 Batch Report (randomized). |

**Methodology:**

- Ten (10) records (if available) will be selected from the randomized report for MH 3 minor inmates at Tucson and Perryville.
- Review eOMIS, in the Mental Health tab, for the most recent contact by a licensed clinician. A monthly list of licensed mental health clinicians is obtained from the health services contractor.
- The last two contacts by a licensed clinician will be reviewed to determine whether the contacts were no more than 30 days apart.  If the contacts were 30 days or less apart, then the date of the most recent contact will be recorded, and it will be coded as compliant.  If they are more than 30 days apart, then it will be coded as non-compliant.  If the contact occurred in the monitored month, then look to see if the preceding contact occurred within thirty days or less. If the preceding contact was more than thirty days, then "TF" is recorded and it is coded as non-compliant. If there is no contact in the monitored month, then the date of the last contact is recorded and it is coded as non-compliant.
- A contact may be documented in multiple electronic entries, including, but not limited to: individual contact, segregation visit (refusal or lockdown), group note, scheduled sick call, unscheduled sick call, suicide watch (refusal, lockdown, or conducted in confidential setting), etc.
- If there is a gap in contacts, review the external Movement Screen in AIMS (DI24, Shift + F5) to determine whether the inmate was out to court, out to hospital, or otherwise out of

Draft Revised: 1/10/17

**PERFORMANCE MEASURES**

the facility.   (Or in eOMIS, from the Prison tab, click on the shortcuts "Population Tracking", and click on the link "External Movements" to view the date the inmate arrived back at the facility.)



Draft Revised: 1/10/17

**PERFORMANCE MEASURES**

Health Care Performance Measure No. 74
Stipulation Category: Mental Health (02)

CGAR Category: Mental Health (C) 02

| |
|---|
| **Performance Measure:**<br><br>All female inmates shall be seen by a licensed mental health clinician within five (5) working days of return from a hospital post-partum. |
| **CGAR Question:**<br><br>Are all female prisoners being seen by a licensed mental health clinician within five (5) working days of return from a hospital post-partum? |
| **Source of Records/Review:**<br><br>Inpatient Hospital Report. |
| **Methodology:**<br><br><ul><li>If there are more than ten (10) post-partum women during the monitored month, then the inpatient hospital report will be randomized, and up to ten (10) post-partum women will be reviewed. Otherwise, all post-partum women will be reviewed for compliance.</li><li>Determine the date the inmate arrived back at the facility by either (1) reviewing the external Movement Screen in AIMS (DI24, Shift + F5), (2) in eOMIS, from the Prison tab, clicking on the shortcuts "Population Tracking", and clicking on the link "External Movements, or (3) checking "Return from Offsite" note in eOMIS under Nursing Encounters.</li><li>Then review eOMIS, in the Mental Health tab, to determine if the inmate was seen within five (5) business days of arriving back from the hospital.</li><li>A contact may be documented in multiple electronic entries, including, but not limited to: individual contact, segregation visit (refusal or lockdown), group note, scheduled sick call, unscheduled sick call, suicide watch (refusal, lockdown, or conducted in confidential setting), etc.</li><li>Then ensure that the contact was completed by a licensed mental health clinician. A monthly list of licensed mental health clinicians is obtained from the health services contractor.</li></ul> |

Draft Revised: 1/10/17

# EXHIBIT 6


# FILED UNDER SEAL

# EXHIBIT 7


# FILED UNDER SEAL

# EXHIBIT 8

**David Fathi**

| | |
|---|---|
| **From:** | Ashlee Fletcher <AFletcher@swlfirm.com> |
| **Sent:** | Wednesday, January 04, 2017 7:32 PM |
| **To:** | David Fathi; Dan Struck; Kirstin Eidenbach; Lucy Rand |
| **Cc:** | 'Don Specter'; 'Corene Kendrick'; 'Alison Hardy'; 'Laura Graham'; 'Rita Lomio'; Amy Fettig; Jennifer Onka; 'Maya Abela'; 'Jessica Ross'; 'Rose Daly-Rooney'; 'Kathy Brody'; Tim Bojanowski; Rachel Love; Anne Orcutt; Munoz, Lupe; Elaine Percevecz; ROwens1 @azcorrections.gov; RPratt@azcorrections.gov; NTaylor@azcorrections.gov; Brad Keogh; Michael E. Gottfried; Parsons Team; McWilliams, Carson; 'TRUJILLO, ERNEST' |
| **Subject:** | RE: Defendants' status update (Doc. 1838) |

David,

No, the re-audits did not employ the methodology in Dkts. 1673 and 1745 as these orders were issued after the re-audit date.

Thank you,

Ashlee

**From:** David Fathi [mailto:dfathi@aclu.org]
**Sent:** Wednesday, January 04, 2017 9:17 AM
**To:** Ashlee Fletcher <AFletcher@swlfirm.com>; Dan Struck <DStruck@swlfirm.com>; Kirstin Eidenbach <kirstin@eidenbachlaw.com>; Lucy Rand <Lucy.Rand@azag.gov>
**Cc:** 'Don Specter' <dspecter@prisonlaw.com>; 'Corene Kendrick' <ckendrick@prisonlaw.com>; 'Alison Hardy' <ahardy@prisonlaw.com>; 'Laura Graham' <laura@prisonlaw.com>; 'Rita Lomio' <rlomio@prisonlaw.com>; Amy Fettig <afettig@aclu.org>; Jennifer Onka <jonka@aclu.org>; 'Maya Abela' <mabela@azdisabilitylaw.org>; 'Jessica Ross' <jross@azdisabilitylaw.org>; 'Rose Daly-Rooney' <rdalyrooney@azdisabilitylaw.org>; 'Kathy Brody' <kbrody@acluaz.org>; Tim Bojanowski <TBojanowski@swlfirm.com>; Rachel Love <RLove@swlfirm.com>; Anne Orcutt <AOrcutt@swlfirm.com>; Munoz, Lupe <lupe.munoz@azag.gov>; Elaine Percevecz <EPercevecz@swlfirm.com>; ROwens1@azcorrections.gov; RPratt@azcorrections.gov; NTaylor@azcorrections.gov; Brad Keogh <bkeogh@azcorrections.gov>; Michael E. Gottfried <Michael.Gottfried@azag.gov>; Parsons Team <ParsonsTeam@swlfirm.com>; McWilliams, Carson <CMcWilli@azcorrections.gov>; 'TRUJILLO, ERNEST' <ETRUJILL@azcorrections.gov>
**Subject:** RE: Defendants' status update (Doc. 1838)

Ashlee,

May I please have a response to my question?

Thanks very much.

David C. Fathi*
Director, ACLU National Prison Project
915 15th St. N.W., 7th Floor
Washington, DC  20005
(202) 548-6603
dfathi@aclu.org
@DavidCFathi

1

*Not admitted in DC; practice limited to federal courts

---

**From:** Ashlee Fletcher [mailto:AFletcher@swlfirm.com]
**Sent:** Thursday, December 29, 2016 11:52 AM
**To:** David Fathi; Dan Struck; Kirstin Eidenbach; Lucy Rand
**Cc:** 'Don Specter'; 'Corene Kendrick'; 'Alison Hardy'; 'Laura Graham'; 'Rita Lomio'; Amy Fettig; Jennifer Onka; 'Maya Abela'; 'Jessica Ross'; 'Rose Daly-Rooney'; 'Kathy Brody'; Tim Bojanowski; Rachel Love; Anne Orcutt; Munoz, Lupe; Elaine Percevecz; ROwens1@azcorrections.gov; RPratt@azcorrections.gov; NTaylor@azcorrections.gov; Brad Keogh; Michael E. Gottfried; Parsons Team; McWilliams, Carson; 'TRUJILLO, ERNEST'
**Subject:** RE: Defendants' status update (Doc. 1838)

David,

Yes we do.  I'm looking into your second question and will respond when I receive the necessary information.

Thanks,

Ashlee

**From:** David Fathi [mailto:dfathi@aclu.org]
**Sent:** Thursday, December 29, 2016 9:45 AM
**To:** Ashlee Fletcher <AFletcher@swlfirm.com>; Dan Struck <DStruck@swlfirm.com>; Kirstin Eidenbach <kirstin@eidenbachlaw.com>; Lucy Rand <Lucy.Rand@azag.gov>
**Cc:** 'Don Specter' <dspecter@prisonlaw.com>; 'Corene Kendrick' <ckendrick@prisonlaw.com>; 'Alison Hardy' <ahardy@prisonlaw.com>; 'Laura Graham' <laura@prisonlaw.com>; 'Rita Lomio' <rlomio@prisonlaw.com>; Amy Fettig <afettig@aclu.org>; Jennifer Onka <jonka@aclu.org>; 'Maya Abela' <mabela@azdisabilitylaw.org>; 'Jessica Ross' <jross@azdisabilitylaw.org>; 'Rose Daly-Rooney' <rdalyrooney@azdisabilitylaw.org>; 'Kathy Brody' <kbrody@acluaz.org>; Tim Bojanowski <TBojanowski@swlfirm.com>; Rachel Love <RLove@swlfirm.com>; Anne Orcutt <AOrcutt@swlfirm.com>; Munoz, Lupe <lupe.munoz@azag.gov>; Elaine Percevecz <EPercevecz@swlfirm.com>; ROwens1@azcorrections.gov; RPratt@azcorrections.gov; NTaylor@azcorrections.gov; Brad Keogh <bkeogh@azcorrections.gov>; Michael E. Gottfried <Michael.Gottfried@azag.gov>; Parsons Team <ParsonsTeam@swlfirm.com>; McWilliams, Carson <CMcWilli@azcorrections.gov>; 'TRUJILLO, ERNEST' <ETRUJILL@azcorrections.gov>
**Subject:** RE: Defendants' status update (Doc. 1838)

Ashlee,

Thank you for your response.  Do Defendants plan to provide this information to the Court, as Judge Duncan directed?

And may I please have a response to my second question?

David C. Fathi*
Director, ACLU National Prison Project
915 15th St. N.W., 7th Floor
Washington, DC  20005
(202) 548-6603
dfathi@aclu.org
@DavidCFathi

2

*Not admitted in DC; practice limited to federal courts

---

**From:** Ashlee Fletcher [mailto:AFletcher@swlfirm.com]
**Sent:** Thursday, December 29, 2016 11:39 AM
**To:** David Fathi; Dan Struck; Kirstin Eidenbach; Lucy Rand
**Cc:** 'Don Specter'; 'Corene Kendrick'; 'Alison Hardy'; 'Laura Graham'; 'Rita Lomio'; Amy Fettig; Jennifer Onka; 'Maya Abela'; 'Jessica Ross'; 'Rose Daly-Rooney'; 'Kathy Brody'; Tim Bojanowski; Rachel Love; Anne Orcutt; Munoz, Lupe; Elaine Percevecz; ROwens1@azcorrections.gov; RPratt@azcorrections.gov; NTaylor@azcorrections.gov; Brad Keogh; Michael E. Gottfried; Parsons Team; McWilliams, Carson; 'TRUJILLO, ERNEST'
**Subject:** RE: Defendants' status update (Doc. 1838)

David,

As with Paragraph 14, the programming changes for Paragraph 15 will be available February 9, 2017.

Thanks,

Ashlee

**From:** David Fathi [mailto:dfathi@aclu.org]
**Sent:** Thursday, December 29, 2016 8:04 AM
**To:** Dan Struck <DStruck@swlfirm.com>; Kirstin Eidenbach <kirstin@eidenbachlaw.com>; Lucy Rand <Lucy.Rand@azag.gov>
**Cc:** 'Don Specter' <dspecter@prisonlaw.com>; 'Corene Kendrick' <ckendrick@prisonlaw.com>; 'Alison Hardy' <ahardy@prisonlaw.com>; 'Laura Graham' <laura@prisonlaw.com>; 'Rita Lomio' <rlomio@prisonlaw.com>; Amy Fettig <afettig@aclu.org>; Jennifer Onka <jonka@aclu.org>; 'Maya Abela' <mabela@azdisabilitylaw.org>; 'Jessica Ross' <jross@azdisabilitylaw.org>; 'Rose Daly-Rooney' <rdalyrooney@azdisabilitylaw.org>; 'Kathy Brody' <kbrody@acluaz.org>; Tim Bojanowski <TBojanowski@swlfirm.com>; Rachel Love <RLove@swlfirm.com>; Ashlee Fletcher <AFletcher@swlfirm.com>; David Fathi <dfathi@aclu.org>; Anne Orcutt <AOrcutt@swlfirm.com>; Munoz, Lupe <lupe.munoz@azag.gov>; Elaine Percevecz <EPercevecz@swlfirm.com>; ROwens1@azcorrections.gov; RPratt@azcorrections.gov; NTaylor@azcorrections.gov; Brad Keogh <bkeogh@azcorrections.gov>; Michael E. Gottfried <Michael.Gottfried@azag.gov>; McWilliams, Carson <CMcWilli@azcorrections.gov>; 'TRUJILLO, ERNEST' <ETRUJILL@azcorrections.gov>
**Subject:** Defendants' status update (Doc. 1838)

Dan:

At the December 14 status hearing, the Court asked Defendants to provide an update, within fourteen days, on their timetable to comply with Paragraph 15 of the Stipulation. *See* 12/14/16 Transcript at 76:19-77:6. Please let us know whether and when Defendants intend to comply with the Court's request.

Also, please specify whether the "re-audits" of PM 94, 95, and 98 at ASPC-Winslow employed the methodology required by the Court's orders. *See* Doc. 1673 at 8 (PM 98); Doc. 1745 at 1 (PM 94 and 95).

Thanks very much.

David C. Fathi*
Director, ACLU National Prison Project
915 15th St. N.W., 7th Floor

3

Washington, DC  20005
(202) 548-6603
dfathi@aclu.org
@DavidCFathi

*Not admitted in DC; practice limited to federal courts

---

This electronic mail transmission contains information from the law firm Struck Wieneke & Love, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 420-1600. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.