Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org
          dpochoda@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia
Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith,
Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner,
Joshua Polson, and Charlotte Wells, on behalf of themselves and all
others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
          adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-DKD <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR RELIEF FROM ORDER RE: CLOSE CUSTODY (DKT. 1833)** |

1

**INTRODUCTION**

Before the Court is Defendants' motion for relief from the Court's ruling regarding the definition of the subclass (Doc. 1833).  For the reasons set forth below, Defendants' motion should be denied.

**PROCEDURAL HISTORY**

The Stipulation provides the following definition of the subclass:

> The subclass is defined as "[a]ll prisoners who are now, or will in the future be, subjected by the ADC to isolation, defined as confinement in a cell for 22 hours or more each day *or* confinement in the following housing units:  Eyman-SMU I; Eyman-Browning Unit; Florence-Central Unit; Florence-Kasson Unit; or Perryville-Lumley Special Management Area.

[Stipulation ¶ 3 (emphasis added) (Doc. 1185)]  This definition was proposed by Plaintiffs (Doc. 235 at 2, 21) and accepted by the Court in its March 6, 2013 Class Certification Order.  [Doc. 372 at 22]  The present dispute arises from Defendants' stubborn refusal to recognize the plain language of this subclass definition.

The Stipulation provides that each month, Plaintiffs may request and Defendants shall provide "a maximum of five (5) individual Subclass Members' health care and institutional records[.]"  [Doc. 1185 ¶ 29]  Pursuant to this provision, Plaintiffs have requested the records of one prisoner housed in Florence-Central and another in Eyman-SMU I.  Defendants refused to produce these records because they claim that these units, which have long been classified as maximum custody, have recently been reclassified as close custody.  [Doc. 1792 at 2]  Defendants contend that this change in nomenclature excludes these two plaintiffs from the subclass.

In response, on November 8, 2016 the Court ordered the Defendants to provide "competent, admissible evidence demonstrating that (1) the enumerated facilities no longer house maximum custody inmates and (2) the conditions of close custody are substantially different from maximum custody such that close custody inmates would not otherwise qualify for protection under DI-326."  [Doc. 1745 at 2]  On November 22, 2016 Defendants filed their response with a laundry list of theoretically possible out-of-cell

time for prisoners housed at Florence Central CB 1, CB 3, and CB 4.  They provided no evidence regarding how many prisoners (if any) actually receive the out-of-cell time described, and provided no evidence regarding Eyman SMU 1, Perryville-Lumley Special Management Area, or any other unit.  [Doc. 1775]  On December 1, 2016, Plaintiffs filed their response, pointing out the insufficiency of the evidence provided by Defendants and their misinterpretation of the plain language of the subclass definition.  [Doc. 1792]

On December 23, 2016 this Court issued an order, in which it concluded:

> Defendants have provided a theoretical explanation of what close custody inmates may experience without showing that any particular inmate actually has experienced these out-of-cell options.  This is not sufficient to show that inmates classified as close custody are subject to substantially different conditions than maximum custody inmates.  As a result, the Court concludes that close custody inmates are subject to substantially similar conditions as maximum custody inmates and, therefore, are part of the Subclass.

[Doc. 1833 at 4]  By contrast, the Court ruled, "any inmate classified as close custody who works at least 20 hours/week is not a member of the Stipulation's subclass." [Doc. 1833 at 5]  On January 6, 2017, Defendants' filed a "Motion for Relief from Order Re: Close Custody (Dkt. 1833)" arguing that this ruling was "unreasonable and erroneous."  [Doc. 1847 at 4]

## ARGUMENT

## I.    THERE IS NO BASIS FOR RESCINDING THE COURT'S ORDER.

As an initial matter, it is not clear under what legal framework Defendants seek relief.  Defendants cite Federal Rule of Civil Procedure 60(b) without acknowledging that the subsections of Rule 60 cover distinct factual scenarios and have distinct tests.  For Rule 60(b)(6), "[a] movant seeking relief under Rule 60(b)(6) must show extraordinary circumstances justifying the reopening of a final judgment." *Jones v. Ryan*, 733 F.3d 825, 833 (9th Cir. 2013) (internal quotation marks and citations omitted); *see also Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010) ("We use Rule 60(b)(6) sparingly as an equitable remedy to prevent manifest injustice." (internal quotation marks and citation omitted)).  Nowhere in Defendants' brief do they even assert, let alone present evidence

1    of, such "extraordinary circumstances;" rather, their brief is largely a rehash of arguments

2    already presented to the Court in their initial brief on November 22, 2016.  [Doc. 1775]

3         More fundamentally, Rule 60(b) cannot be employed here because the rule does

4    not apply to non-final orders.  *See, e.g.*, *Seawright v. State*, No. CV 11-1304-PHX-JAT,

5    2013 WL 4430928, at *2 (D. Ariz. Aug. 16, 2013); *Baker v. Fair, Isaac & Co.*, No. CIV-

6    03-0525-PCT-RCB, 2007 WL 641539, at *1 (D. Ariz. Feb. 27, 2007), *aff'd in part sub*

7    *nom. Baker v. Experian Info. Sols., Inc.*, 293 F. App'x 529 (9th Cir. 2008); *Connors v.*

8    *Iquique U.S.L.L.C.*, C05–334JLR, 2005 WL 3007127, at *7 (W.D. Wash. Nov. 9, 2005)

9    (citing *City of Los Angeles v. Santa Monica BayKeeper*, 254 F.3d 882, 886-87 (9th Cir.

10   2001)).  This is made abundantly clear by the fact that Rule 60(b) is entitled "Grounds for

11   Relief from a Final Judgment, Order, or Proceeding."  Fed. R. Civ. P. 60(b).  Moreover,

12   Rule 60(b)'s Advisory Committee Notes emphasize that the adjective 'final' applies not

13   only to 'judgment,' but to 'order' and 'proceeding' as well.  Fed. R. Civ. P. 60 advisory

14   committee's note (West 2016).  The Court's determination that Defendants' evidence was

15   "not sufficient to show that inmates classified as close custody are subject to substantially

16   different conditions than maximum custody inmates[,]" (Doc. 1833 at 4) clearly falls

17   outside the ambit of Rule 60(b).

18        Defendants' filing is really a thinly-disguised motion for reconsideration.  But here

19   too, they cannot possibly meet the high standard required.  Local Rule of Civil

20   Procedure 7.2(g)(1) provides:

21             The Court will ordinarily deny a motion for reconsideration of
               an Order absent a showing of manifest error or a showing of
22             new facts or legal authority that could not have been brought
               to its attention earlier with reasonable diligence.  Any such
23             motion shall point out with specificity the matters that the
               movant believes were overlooked or misapprehended by the
24             Court, any new matters being brought to the Court's attention
               for the first time and the reasons they were not presented
25             earlier, and any specific modifications being sought in the
               Court's Order.  No motion for reconsideration of an Order
26             may repeat any oral or written argument made by the movant
               in support of or in opposition to the motion that resulted in the
27             Order.  Failure to comply with this subsection may be grounds
               for denial of the motion.
28

1    "Motions for reconsideration are disfavored and should be granted only in rare

2    circumstances." *United States v. Vistoso Partners*, No. CV10–0444 PHX DGC, 2011 WL

3    2550387, at *1 (D. Ariz. June 27, 2011). *Accord Estrada v. Bashas' Inc*., No. CV–02-

4    00591–PHX–RCB, 2014 WL 1319189, at *2 (D. Ariz. Apr. 1, 2014) ("The granting of a

5    motion for reconsideration is an extraordinary remedy which should be used sparingly")

6    (internal quotation marks omitted); *Ross v. Arpaio*, No. CV 05–4177–PHX–MHM (ECV),

7    2008 WL 1776502, at *1 (D. Ariz. Apr. 15, 2008) ("Motions for reconsideration should

8    be granted only in rare circumstances"). Such "rare circumstances" have not been shown

9    by the Defendants here.

10   Regardless of what framework the Court applies, for the reasons discussed below,

11   the Defendants' arguments have no merit. While Defendants accuse the Court of

12   "redefin[ing] the subclass" (Doc. 1847 at 4) it is *Defendants* who are doing so, seeking to

13   exclude housing units that are explicitly included in the subclass definition simply by

14   changing their label from "maximum custody" to "close custody." The Court properly

15   disallowed this gamesmanship, and its order should not be disturbed.

16   **II.    DEFENDANTS ARGUMENTS ARE WITHOUT MERIT.**

17        **A.    Defendants' arguments have already been considered and rejected by
             the Court.[1]**

18   Defendants recycle their argument that the subclass should only be considered to

19   include individual prisoners whom they label "maximum custody." [Doc. 1847 at 1-3]

20

21   _____

22   [1] A motion for reconsideration is not a proper vehicle to recycle arguments that
     have already been considered and rejected by the Court. *See* LRCiv 7.2(g)(1) ("No

23   motion for reconsideration of an Order may repeat any oral or written argument made by
     the movant in support of or in opposition to the motion that resulted in the Order");

24   *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985) (motion for reconsideration
     was properly denied "because, as [the District Court] noted, it presented no arguments that

25   had not already been raised[.]"); *Garcia v. Glendale Police Dep't*, No. CV 11–02260–
     PHX–JAT, 2014 WL 2197027, at *2 (D. Ariz. May 27, 2014), *aff'd sub nom. Garcia v.

26   Solomon*, 623 F. App'x 486 (9th Cir. 2015) (motions for reconsideration denied when
     "[t]he arguments in Plaintiff's Motions are nothing more than re-arguments of the facts

27   previously presented to the Court"); *Collins v. D.R. Horton, Inc*., 252 F. Supp. 2d 936,
     938 (D. Ariz. 2003) (motion for reconsideration is not "the time to ask the Court to rethink
     what it has already thought"); *Yount v. Salazar*, 933 F. Supp. 2d 1215, 1236 (D. Ariz.

28   2013) ("Mere disagreement with an order is an insufficient basis for reconsideration.").

1   But this argument has already been rejected by the Court.  [*See* Doc. 1833 at 4 (holding
2   that "a theoretical explanation of what close custody inmates may experience without
3   showing that any particular inmate actually has experienced these out-of-cell options" is
4   "not sufficient to show that inmates classified as close custody are subject to substantially
5   different conditions than maximum custody inmates.")]

6        Despite the plain language of the subclass definition, Defendants stubbornly persist
7   in arguing that the subclass consists only of prisoners who are confined in their cell "22
8   hours or more each day" or, put another way, receive 14 hours a week of out-of-cell time
9   or less.  They then argue that any prisoner receiving 15.5 hours a week (or presumably
10  14.5 hours, or 14 hours and one minute) must be excluded from the subclass.  [Doc. 1847
11  at 1-3]  It was precisely to avoid this kind of gamesmanship that Plaintiffs proposed (and
12  the Court accepted) a subclass definition that included both conditions of confinement *and*
13  housing location.  [Doc. 235 at 2, 21]  The Court properly rejected Defendants' argument
14  and found that the conditions for the newly-minted "close custody" prisoners are
15  "substantially similar" to those for maximum custody prisoners, and that those prisoners
16  therefore remain in the subclass.

17       **B.    Defendants' remaining arguments are without merit.**

18       Defendants complain that the Court "should not have required Defendants to
19  provide statistics of the close custody inmate's [sic] actual out-of-cell time," adding that
20  they "were under no obligation to monitor" out-of-cell time in Florence-Central unit.
21  [Doc. 1847 at 2-3]  This contention is absurd, in light of the fact that Florence-Central is
22  explicitly included in the subclass definition.  [Doc. 1185 ¶ 3]  Because Defendants are
23  seeking to evade the plain language of the subclass definition, the Court properly required
24  them to produce evidence of an actual and substantial change in conditions in the units in
25  question.  Defendants' evidentiary default is no one's fault but their own.

26

27

28

Defendants further argue that DI 326 and the language of the Maximum Custody Outcome Measure Protocol somehow alter the subclass definition.[2]  [Doc. 1847 at 1-2]  But this confuses and conflates the subclass definition with Defendants' substantive obligations under the Stipulation.  As the Court has pointed out, the subclass definition is an order of the Court (Doc. 1745 at 2); it is not affected by the Stipulation's substantive provisions.

Finally, Defendants argue that the Court's ruling is "erroneous because typicality and adequacy would be lacking under Rule 23(a)(3) and (4)" since the original sub-class representatives were not housed in "close custody" status.  [Doc. 1847 at 4]  They make this claim in a single sentence without any supporting authority; accordingly the argument is waived.  *See Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 986-87 (9th Cir. 2011) (rejecting assertion unsupported by "argument or legal authority").  Significantly, the Ninth Circuit has already rejected Defendants' Rule 23 arguments.  *Parsons v. Ryan*, 754 F.3d 657, 685-86 (9th Cir. 2014).  Moreover, the Stipulation bars Defendants from challenging class certification.  [Stipulation ¶ 34 (Doc 1185 at 13)]

Defendants ignore the fact that the Court has actually granted them some exceptions to the subclass definition by finding that "any close custody inmate who works at least 20 hours a week in the job program described by Defendants will not be

---

[2]  A motion for reconsideration may not be based upon arguments that the moving party could, with reasonable diligence, have presented earlier.  Local Rule of Civil Procedure 7.2(g)(1) provides: "The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority *that could not have been brought to its attention earlier with reasonable diligence*." (emphasis added).  Numerous decisions of this Court amplify this requirement. *See, e.g.*, *Yount*, 933 F. Supp. 2d at 1236 (motions for reconsideration "are disfavored and will be granted only upon a showing of manifest error or new facts or legal authority that could not have been raised earlier with reasonable diligence") (internal quotation marks omitted); *Garcia v. Regis Corp.*, No. CV09–1282–PHX–DGC, 2011 WL 2357761, at *1 (D. Ariz. June 15, 2011) (same); *Schackart v. Ryan*, No. CV 03–287–TUC–DCB, 2009 WL 1257144, at *2 (D. Ariz. May 5, 2009) ("A motion to reconsider 'may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'") (*quoting Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).  Defendants had ample opportunity to present evidence and legal authority supporting their contention that units other than Florence Central, such as Eyman-SMU I and Perryville-Lumley SMA, are now close custody in their original filing and their reply, but failed to do so (Doc. 1775; Doc. 1808).

1   considered a member of the Subclass." [Doc. 1833 at 5] This is based on the Court's

2   finding that the evidence provided by Defendants in this narrow instance was sufficiently

3   concrete and specific in contrast to the "theoretical explanation" provided for other

4   prisoners in Florence-Central. [Doc. 1833 at 4-5] It remains Plaintiffs' position that all

5   prisoners housed in the enumerated units in the subclass are part of the subclass regardless

6   of out-of-cell time. [Doc. 1792] The Court, however, found that the evidence provided

7   by Defendants in the narrow circumstances of prisoners who work twenty plus hours a

8   week justified exclusion from the subclass. [Doc. 1833 at 4-5] This ruling was based on

9   the evidence before the Court and Defendants have proffered no evidence to refute the

10  Court's judgment.

11                              **CONCLUSION**

12      For all of these reasons Defendants' motion should be denied.[3]

13  Dated: January 20, 2017                    **ACLU NATIONAL PRISON PROJECT**

14

15                                  By:   _s/ Amy Fettig_
                                         David C. Fathi (Wash. 24893)*
16                                       Amy Fettig (D.C. 484883)**
                                         Jamelia Natasha Morgan (N.Y.
17                                       5351176)**
                                         915 15th Street N.W., 7th Floor
18                                       Washington, D.C. 20005
                                         Telephone: (202) 548-6603
19                                       Email:   dfathi@aclu.org
                                                  afettig@aclu.org
20                                                jmorgan@aclu.org

21                                       *Admitted _pro hac vice_. Not admitted
                                          in DC; practice limited to federal
22                                        courts.

23                                       **Admitted _pro hac vice_

24

25

26   _____

     [3] On January 13, Defendants filed a "Notice and Request for Temporary
27   Suspension of Order Regarding Close Custody re: 1833 Order." [Doc. 1869] This
     document consists of approximately one-half page of text and entirely fails to address the
28   legal standard for a stay; indeed, it cites no case law, statutes, or rules whatsoever. It is
     also unsupported by any declarations or other evidentiary material. Defendants' request is
     frivolous and should be summarily denied.

Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
**ACLU FOUNDATION OF
ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:    kbrody@acluaz.org
               dpochoda@acluaz.org

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
               ahardy@prisonlaw.com
               snorman@prisonlaw.com
               ckendrick@prisonlaw.com
               rlomio@prisonlaw.com

*Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
               agerlicher@perkinscoie.com
               jhgray@perkinscoie.com

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, PLLC**
P. O. Box 91398
Tucson, Arizona 85752
Telephone:  (520) 477-1475
Email:    kirstin@eidenbachlaw.com

1    Caroline Mitchell (Cal. 143124)*
     Amir Q. Amiri (Cal. 271224)*
2    **JONES DAY**
     555 California Street, 26th Floor
3    San Francisco, California 94104
     Telephone: (415) 875-5712
4    Email:    cnmitchell@jonesday.com
               aamiri@jonesday.com
5
     *Admitted *pro hac vice*
6
     John Laurens Wilkes (Tex. 24053548)*
7    **JONES DAY**
     717 Texas Street
8    Houston, Texas 77002
     Telephone: (832) 239-3939
9    Email:    jlwilkes@jonesday.com

10   *Admitted *pro hac vice*

11   Jennifer K. Messina (N.Y. 4912440)*
     **JONES DAY**
12   222 East 41 Street
     New York, New York 10017
13   Telephone: (212) 326-3498
     Email:    jkmessina@jonesday.com
14
     *Admitted *pro hac vice*
15
     *Attorneys for Plaintiffs Shawn Jensen;*
16   *Stephen Swartz; Sonia Rodriguez; Christina*
     *Verduzco; Jackie Thomas; Jeremy Smith;*
17   *Robert Gamez; Maryanne Chisholm;*
     *Desiree Licci; Joseph Hefner; Joshua*
18   *Polson; and Charlotte Wells, on behalf of*
     *themselves and all others similarly situated*
19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARIZONA CENTER FOR DISABILITY LAW**

By: _s/ Maya Abela_
Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email:   skader@azdisabilitylaw.org
         adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
   rdalyrooney@azdisabilitylaw.org
   jrico@azdisabilitylaw.org
   jross@azdisabilitylaw.org
   mabela@azdisabilitylaw.org

_Attorneys for Arizona Center for Disability Law_

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2017, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

s/ D. Freouf