Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org
dpochoda@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,

Plaintiffs,

v.

Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,

Defendants.

No. CV 12-00601-PHX-DKD

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO MODIFY STIPULATION AND FOR FURTHER RELIEF [DOC. 1790]**

## ARGUMENT

### I. THE COURT SHOULD GRANT PLAINTIFFS' MOTION FOR A GENERAL STAFFING ORDER.

#### A. The Stipulation Permits a General Order for a Staffing Plan.

The Court should grant Plaintiffs' Motion and hold that, consistent with the plain language of the Stipulation, the Court is permitted to order general staffing increases at ADC because the plain language is the best representation of the parties' intent during negotiations. *Goodman v. Newzona Inv. Co.*, 421 P.2d 318, 320 (Ariz. 1966). As set forth in Plaintiffs' Motion, the plain language of the Stipulation makes clear that the parties did not intend the far-reaching limitation on the Court's authority that Defendants now advocate. The Stipulation gives the Court broad remedial power to enforce the Stipulation, so long as the Court does not order Defendants "to hire a *specific number* or *type of* staff." [Doc. 1185 ¶ 36 (emphasis added)][1] Nothing in the Stipulation precludes the Court from ordering *general* staffing increases. In opposition, Defendants first make cursory and largely unsupported arguments about the plain language of the Stipulation, and then resort to extrinsic evidence to support their construction of the Stipulation. [Doc. 1842 at 6-7][2] The Court should reject Defendants' interpretation in full.

Defendants argue that the Stipulation cannot be read to permit a general staffing order because "it is hard to fathom" what a general staffing order would look like. [Doc. 1842 at 4] Thus, they argue, any staffing order by the Court would necessarily include specific numbers or types of staff, which is prohibited by the Stipulation. [*Id.*] Defendants further theorize that a "general order to 'increase staff'" would be untenable because Defendants could accomplish compliance by hiring an additional groundskeeper or receptionist rather than health care staff. [*Id.*] Finally, they argue that a general order would be unenforceable and unlawful. [*Id.* at 5 n.2] These arguments plainly fail.

---

[1] The Stipulation also prohibits the Court from ordering that Defendants construct a new prison. [Doc. 1185 ¶ 36]

[2] All page citations to the Court's docket are to the Electronic Case Filing system's page numbers and not to those of the document(s) therein.

It is not at all difficult to imagine what a general staffing order would look like because the Stipulation itself provides an example of one. By its plain language, the Court may order that Defendants hire specific numbers or types of staff if "Defendants propose to do so as part of a plan to remedy a failure to comply" with the Stipulation. [Doc. 1185 ¶ 36] Therefore, an order regarding staffing could require Defendants to undertake a health care staffing needs assessment and submit a proposed staffing plan for the Court's consideration and approval. Or, the Court could identify targeted objectives designed to ensure compliance with performance measures (e.g., requiring Defendants to hire sufficient staff to screen all HNRs within 24 hours, or sufficient staff to ensure a provider sees all routine referrals within 14 days), while leaving to Defendants the details of how many and what types of staff are needed to meet these objectives. This is fully consistent with the terms of the Stipulation, and is the same remedial plan process the Court has utilized for many other areas of substantial noncompliance in this case.

Defendants' argument that a general staffing order would violate Rule 65(b) and the Prison Litigation Reform Act ("PLRA") for lack of specificity and narrowness is also unfounded. Indeed, Supreme Court and Ninth Circuit precedent clearly favor the remedial plan process, repeatedly upholding orders requiring state defendants to propose remedial plans against challenges on the basis of narrowness and intrusiveness. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010) ("Allowing defendants to develop policies and procedures to meet the ADA's requirements is precisely the type of process that the Supreme Court has indicated is appropriate for devising a suitable remedial plan in a prison litigation case.") (citations omitted); *Armstrong v. Brown*, 768 F.3d 975, 983 (9th Cir. 2014) ("The court may provide guidance and set clear objectives, but it may not attempt to micro manage prison administration . . . .") (internal quotation marks and citations omitted); *Graves v. Arpaio*, 623 F.3d 1043, 1047 (9th Cir. 2010) ("Federal-state comity requires a district court to give prison officials an opportunity to propose remedies; the Constitution does not also dictate the precise timing for that proposal or how that proposal should be submitted for consideration by the court.").

Finally, Defendants' "groundskeeper" argument assumes their own bad faith in response to a general staffing order. Defendants would be well aware that the Court's objective in crafting such an order is to address noncompliance with healthcare performance measures. Plaintiffs hope and assume that Defendants would act in good faith to comply with a court order that expressly is intended to further compliance with the Stipulation. *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) ("We presume that a government entity is acting in good faith when it changes its policy . . . .").

### B. Defendants May Not Use Extrinsic Evidence To Supersede the Plain Language of the Stipulation.

Because the plain language of the Stipulation supports Plaintiffs' interpretation, Defendants resort to extrinsic evidence in an attempt to supersede that language. Relying on declarations from defense counsel and Defendants Ryan and Pratt, Defendants argue that they would not have entered into the Stipulation if it permitted the Court to address staffing in any way—"be it specific or generalized"—and that the Court should interpret the Stipulation accordingly. [*See* Doc. 1842-1 ¶¶ 9-11; Doc. 1842-2 ¶ 11; Doc. 1842-3 ¶ 14] But extrinsic evidence, including evidence "'of antecedent understandings and negotiations,'" may not be used to contradict the plain language of a contract. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1138 (Ariz. 1993) (quoting 3 Arthur L. Corbin, Corbin on Contracts § 573, at 357 (1960)). The plain language of the Stipulation is not "reasonably susceptible" to Defendants' current interpretation, and thus the Court should not consider the declarations. *Id.* at 1140 (quotation marks and citation omitted) (observing that evidence is admissible to determine parties' intent if "the contract language is 'reasonably susceptible' to the interpretation asserted by its proponent").

Even if the Court finds that extrinsic evidence may be appropriate here, the uncorroborated statements of defense counsel and Defendants do not clarify the intent of the parties. *See Wilson Arlington Co. v. Prudential Ins. Co. of Am.*, 912 F.2d 366, 370 (9th Cir. 1990) ("If parties to an agreement could not rely on written words to express their consent to the express terms of that agreement, those words would become little

more than sideshows in a circus of self-serving declaration as to what the parties to the agreement really had in mind."). Plaintiffs understood the remedial limitation to be a compromise, which would enable the Court to address staffing while reserving discretion to the Defendants with respect to the numbers and types of staff necessary to fulfill their obligations under the Stipulation. [Declaration of Donald Specter, filed concurrently herewith, ¶ 4 ("Specter Decl."); Declaration of David C. Fathi, filed concurrently herewith, ¶¶ 6-7 ("Fathi Decl.")] Regardless of what *Defendants'* intent may have been during negotiations, the integrated written agreement is the final manifestation of the *parties'* mutual intent. As the Court noted in adopting the Stipulation, "No settlement is perfect. A compromise of hotly contested issues will leave each side wanting, receiving something less than their highest and best expectations." [Doc. 1458 at 2] Because the parties' respective intents may shift as the "give-and-take" process of negotiation ensues, it is the agreed-upon terms that govern. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) ("As the 'offspring of compromise,' settlement agreements will necessarily reflect the interests of both parties to the settlement.") (citation omitted).

Defendants also claim that because this Court was present at the settlement negotiations, and its recollections allegedly align with Defendants' interpretation of the Stipulation, the Court's reliance on its own "impression" of the parties' intent from the negotiations is appropriate and consistent with the parol evidence rule. [Transcript of Nov. 9, 2016 Status Conference ("11/9/16 Tr.") at 6:9; Doc. 1842 at 5-6] However, the parol evidence rule is not concerned with the Court's own recollections, but with the parties' introduction of extrinsic evidence. Moreover, as explained previously, "[w]here the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto." *Goodman*, 421 P.2d at 320. Thus, while the Court may consider the context of a contract before determining whether to admit a parties' extrinsic evidence, it may not use its "own understanding to determine whether a contractual term is ambiguous" in the first place. *Nammo Talley Inc. v. Allstate Ins. Co.*, 99 F. Supp. 3d 999, 1004 (D. Ariz. 2015) (citing

*Taylor*, 854 P.2d at 1140). That is precisely what Defendants ask the Court to do here. Defendants cite only one case in support of this request. But that case is non-precedential and easily distinguishable. There, the Arizona Court of Appeals held that the lower court had not abused its discretion by consulting its notes from a settlement negotiation to determine whether a *missing* term was part of the settlement agreement. *Wald v. Crabb*, No. 1 CA-CV 15-0352, 2016 WL 2653586, at *2 (Ariz. Ct. App. May 10, 2016). This is drastically different from what Defendants want the Court to do here: to rely on Defendants' and the Court's recollections about the meaning of an *existing* term in the final integrated agreement that is not, on its face, ambiguous or susceptible to Defendants' interpretation.[3] Because the language of the Stipulation is clear, neither Defendants' representations nor the Court's recollections can be used to contradict or rewrite it.

**C. Plaintiffs' Motion Is Timely.**

Defendants argue that Plaintiffs' Motion is "really a motion for reconsideration" because Plaintiffs have raised this issue before, and therefore that the Motion should be denied as untimely because it was not filed within 14 days of the Court's decisions or with an appropriate reason under Rule 60(b). [Doc. 1842 at 3-4] However, contrary to Defendants' assertions, Plaintiffs never made a formal motion regarding the Court's authority to address staffing, the question was not fully briefed, and the Court never issued a written order. [11/9/16 Tr. at 5:19-6:25; Transcript of Sept. 8, 2016 Status Conference at 7:18-8:4] Instead, Plaintiffs submitted the issue in preparation for a status conference in which the Court considered remedial plans to address substantial noncompliance by Defendants. [Doc. 1739 at 6-7] Plaintiffs formally move now for the first time.

[3] Defendants also highlight that the parties stipulated that this Court's "constructive participation in the settlement negotiations has provided him with a unique ability to effectuate the parties' intent in any future proceedings." [Doc. 1842 at 6 (citing Doc. 1186 at 2)] It is well established that a trial judge who presides over a complex case thereby gains valuable understanding of the issues. *See*, *e.g.*, *Armstrong*, 768 F.3d at 986 ("The ongoing, intractable nature of this litigation affords the district court considerable discretion in fashioning relief."). But the Court's familiarity with the issues in the case because of its role in the settlement negotiations is distinct from the question whether its recollections from the negotiations should override the plain language of the Stipulation.

Even if the Court were to construe Plaintiffs' Motion as seeking reconsideration of prior decisions, the Court should hear the Motion. Recognizing "the long-term and wide-ranging impact of [its] rulings," this Court has previously reconsidered arguments first made at a status conference after the parties had briefed the issue and the Court had ruled. [Doc. 1745 at 2-3 (setting a briefing schedule regarding the Stipulation's definition of "seen" after expiration of the 14-day reconsideration period)] Especially given that this issue has not been fully briefed and the Court has not issued a written order, Plaintiffs respectfully ask that the Court afford Plaintiffs the same opportunity here.

## II. THE COURT SHOULD GRANT PLAINTIFFS' MOTION TO MODIFY THE STIPULATION.

In the interest of resolving future ambiguity about the Court's remedial power, Plaintiffs request that the Court exercise its authority to modify the Stipulation to clarify that it may order general staffing increases. As set forth in Plaintiffs' Motion, the Court may modify or vacate a "final judgment, order, or proceeding" under Rule 60(b)(5) when "applying it prospectively is no longer equitable." Supreme Court and Ninth Circuit law is clear that this Rule permits courts to modify consent decrees and other injunctions. *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 378 (1992). Defendants agree that the Court may modify "consent decrees and court-ordered injunctions," but argue that because the settlement agreement is referred to as a "Stipulation," it is neither. [Doc. 1842 at 7-9] They also argue that Plaintiffs have not met their burden that modification is warranted under *Rufo*. [*Id.* at 10-18] These arguments have no merit.

### A. The Court Has Broad Remedial Power to Enforce the Stipulation Even If It Is Not a Consent Decree.

The main thrust of Defendants' argument is that the Stipulation is not a consent decree, and thus *Rufo* does not apply. Defendants vigorously contend that they would have never entered into a consent decree or "anything that 'looks, acts or quacks' like a consent decree," and thus the Court should not treat it as such. [Doc 1842-1 ¶ 6] This argument is a red herring, misconstruing both Plaintiffs' Motion and the underlying law.

First, nowhere does Plaintiffs' Motion argue that the Stipulation is a consent decree. Plaintiffs do not seek to contradict the plain language of the Stipulation, which states that it "shall not be construed as a consent decree" (Doc. 1185 ¶ 35), and Defendants' declarations attempting to prove this point are an unnecessary distraction (*see* Doc. 1842-1 ¶¶ 4-8; Doc. 1842-2 ¶ 10; Doc. 1842-3 ¶ 13).[4] Rather, the Stipulation is a settlement agreement between the parties that provided prospective relief to the Plaintiffs, was approved by this Court after a fairness hearing, and was memorialized by the Court's signing of a joint proposed Order. [Doc. 1188; Doc. 1458, Att. 1] The Stipulation and the memorializing Order expressly provided the Court with broad remedial powers to enforce the Stipulation, with the exception of ordering prison construction and the staffing limitations at issue here. [Doc. 1185 ¶¶ 35-36; Doc. 1458, Att. 1] That the parties jointly sought approval of the settlement and continued enforcement power by the Court belies Defendants' argument that the Stipulation is not subject to the Court's equitable powers, with or without the title "consent decree." [*See also* Specter Decl. ¶ 3; Fathi Decl. ¶ 5] And the Order memorializing the settlement stated that the Stipulation complies with the PLRA requirement that the relief "is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A); Doc. 1458, Att. 1. This language would be unnecessary had the parties intended the Stipulation to be a private settlement not subject to court enforcement. 18 U.S.C. § 3626(c)(2)(A).

Second, Defendants misunderstand the scope of *Rufo* and its progeny. [Doc. 1842 at 8] Indeed, subsequent Ninth Circuit law has made clear that the Court's equitable power, and thus Rule 60(b)(5), applies to all orders and judgments with prospective application, including not only consent decrees but also court-ordered and stipulated

[4] Plaintiffs also challenge Defendants' suggestion that Plaintiffs somehow hoodwinked Defendants and the Court by failing to raise this provision in the original Motion. Because the Stipulation need not be entitled a "consent decree" to be covered by Rule 60(b)(5) and *Rufo*, Plaintiffs withheld nothing from the Court or Defendants, nor precluded Defendants from making any relevant arguments.

injunctions, as well as private settlements. *See Valdivia v. Schwarzenegger*, 599 F.3d 984, 986, 994 (9th Cir. 2010) (discussing *Rufo*'s application to motion to modify injunction arising out of parties' stipulation); *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1255 (9th Cir. 1999) (holding that "*Rufo* sets forth a general, flexible standard for all petitions brought under the equity provision of Rule 60(b)(5)" and applying *Rufo* to court-ordered injunction in a private commercial case); *Brown v. Plata*, 563 U.S. 493, 542 (2011) (modifying a stipulated injunction).[5] Therefore, the Stipulation is subject to modification under *Rufo*.

**B. Defendants' Noncompliance Is a Changed Circumstance Warranting Modification of the Decree.**

The parties agree that the Court may modify a consent decree or injunction where there has been "a significant change either in factual conditions or in law." *Rufo*, 502 U.S. at 384. Plaintiffs can meet that burden by showing that "changed factual conditions make compliance with the decree substantially more onerous," "a decree proves to be unworkable because of unforeseen obstacles," or "enforcement of the decree without modification would be detrimental to the public interest." *Id.* at 384 (citations omitted). Defendants argue that noncompliance is not an adequate basis for modification, that any staffing issues were foreseen by Plaintiffs, and that Plaintiffs have not demonstrated substantial noncompliance. Defendants are wrong on all counts.

First, Ninth Circuit law holds that a party's failure to comply with an injunction or decree *is* an unforeseen circumstance that justifies modification. *See Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Auth.*, 564 F.3d 1115, 1120-21 (9th Cir. 2009) ("The failure of substantial compliance with the terms of a consent decree can

---

[5] Defendants incorrectly argue that *Plata* is irrelevant because it concerned a consent decree. [Doc. 1842 at 15 n.10] The injunction at issue was styled as a Stipulation for Injunctive Relief. *Plata*, 563 U.S. at 514-15. Plaintiffs respectfully request that the Court take judicial notice of the stipulated injunction pursuant to Federal Rule of Evidence 201. *See Plata v. Davis*, No. C-01-1351-TEH (N.D. Cal. June 13, 2002) [Doc. 68], *available at* https://www.clearinghouse.net/chDocs/public/PC-CA-0018-0005.pdf. Defendants also mistakenly argue that the injunction in *Valdivia* was court-ordered rather than by stipulation. [Doc. 1842 at 6-7 n.5]

qualify as a significant change in circumstances that would justify the decree's temporal extension.") (citations omitted); *see also Kelly v. Wengler*, 822 F.3d 1085, 1098 (9th Cir. 2016) ("[S]ubstantial violation of a court order constitutes a significant change in factual circumstances.") (citations omitted).[6] Defendants' argument that those authorities are distinguishable because the parties sought time extensions of the decrees, rather than changes to substantive provisions, also fails. [Doc. 1842 at 11] Defendants provide no authority to support their assertion that the type of modification sought is relevant to the threshold question of whether noncompliance is a changed circumstance. Defendants' attempt to distinguish these cases also falls flat because, at its core, temporal extension of the consent decree amounts to modification and expansion of the Court's jurisdiction. *Labor/Cmty. Strategy Ctr.*, 564 F.3d at 1120 ("Because the decree contains an express expiration date for the court's retention of jurisdiction, any change to that date entails a modification of the decree."). Plaintiffs here seek clarification of one provision, not extension of the entire decree. This change would ensure that the Stipulation aligns with the parties' original intent about the Court's authority, not expand it.

Additionally, Defendants' argument that staffing needs were anticipated, and thus cannot constitute changed circumstances, also fails. [Doc. 1842 at 10-11] As Plaintiffs previously explained, the degree, scope and scale of Defendants' noncompliance was unforeseen, as was Defendants' refusal to make voluntarily substantial staffing changes given the identified need. [Doc. 1790 at 13-16] Moreover, Defendants' argument, if valid, would indicate that they believed that their failure to abide by the Stipulation was completely foreseeable. This would amount to an admission that Defendants had engaged in settlement talks in bad faith, or at least that they foresaw their inability to substantially comply with the terms of the Stipulation and agreed to it anyway. Finally, the record in

[6] These cases and others where plaintiffs sought modification undermine Defendants' suggestion that the modification framework applies only to parties who are obligated to perform under a consent decree and seek to avoid that obligation. [Doc. 1842 at 9 n.7] *See Armstrong v. Brown*, 768 F.3d 975, 986 (9th Cir. 2014); *Thompson v. Enomoto*, 915 F.2d 1383, 1388 (9th Cir. 1990).

this case is clear that Plaintiffs have demonstrated Defendants' substantial noncompliance. [*See*, *e.g.*, Doc. 1583; Doc 1709][7]

### C. Modification is Necessary to Effectuate the Purpose of the Stipulation and Promote the Public Interest.

Contrary to Defendants' assertions, the Court may consider the purpose of the Stipulation, as well as the public interest, in deciding whether modification of the Stipulation is appropriate. Defendants take issue with Plaintiffs' reliance on *Plata* for the principle that the Court may modify an injunction where necessary to effectuate its purpose. [Doc. 1842 at 14-15 (citing *Plata*, 563 U.S. at 543)] Plaintiffs do not argue, as Defendants contend, that *Plata* "create[d]" the rule [*id.* at 15], nor is it the only authority for the principle.[8] An order requiring Defendants to develop a staffing plan to effectuate the health care objectives of the Stipulation is within the equitable power of the Court.

As to consideration of the public interest, *Rufo* is crystal clear: modification is appropriate "when enforcement of the decree without modification would be detrimental to the public interest." *Rufo*, 502 U.S. at 384; *see also Asarco*, 430 F.3d at 972, 979 (9th Cir. 2005) ("[I]f the movant cites significantly changed factual conditions, . . . it must additionally show that the changed conditions make compliance with the consent decree more onerous, unworkable, or detrimental to the public interest.") (internal quotation marks and citations omitted). Defendants accuse Plaintiffs of seeking modification based on the threat to the public interest alone, without identifying a prerequisite change in circumstances. [Doc. 1842 at 16-17] Plaintiffs make no such argument. As detailed in

---

[7] Defendants also argue that, at a minimum, they are entitled to an evidentiary hearing to demonstrate their efforts to address noncompliance without additional staffing. [Doc. 1842 at 15-16 & n.11] The Court has before it already all of the evidence it needs to conclude that there is substantial noncompliance and that staffing increases are the most "efficient" and "effective" remedy. [*See, e.g.*, 11/9/16 Tr. at 6:11-25, 9:2-9] Defendants' representations at the January 11, 2017 hearing regarding the open clinic do not change this determination. No further hearing on this point is necessary.

[8] *See Thompson v. Enomoto*, 915 F.2d 1383, 1388 (9th Cir. 1990) ("A district court has the power to modify a consent decree if experience with the administration of the decree shows the need for modification in order to accomplish the primary goals of the decree.").

their Motion and above, Plaintiffs identified Defendants' unanticipated substantial noncompliance and refusal to address staffing independently as unforeseen changed circumstances. [Doc. 1790 at 13-16]

### D. Plaintiffs' Proposed Modification Is Suitably Tailored to Address the Unforeseen Obstacles to Enforcement of the Stipulation.

Finally, as set forth in Plaintiffs' Motion, the proposed modification is suitably tailored to the changed circumstances and unforeseen obstacles to enforcement of the Stipulation. Plaintiffs are not asking the Court to "rewrite" the Stipulation but to account for Defendants' substantial noncompliance and unwillingness to address staffing voluntarily during implementation. This remedy is narrowly tailored in light of Defendants' failure to develop adequate remedial plans on their own despite numerous opportunities to do so. Defendants are correct that financial constraints are "are a legitimate concern of government defendants in institutional reform litigation and therefore are appropriately considered in tailoring a consent decree modification." *Rufo*, 502 U.S. at 392-93. But Defendants omit a critical component of *Rufo*'s holding: that "[f]inancial constraints may not be used to justify the creation or perpetuation of constitutional violations." *Id.* at 392. The modification Plaintiffs seek will permit the Court to fashion what it has identified as the most efficient and effective remedy to address Defendants' continuing and substantial noncompliance.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their Motion to Modify the Stipulation and for Further Relief.

Dated: January 20, 2017

**PRISON LAW OFFICE**

By: *s/ Donald Specter*

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita Lomio (Cal. 254501)*
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email: dspecter@prisonlaw.com
ahardy@prisonlaw.com
snorman@prisonlaw.com
ckendrick@prisonlaw.com
rlomio@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Jamelia Morgan (N.Y. 5351176)**
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email: dfathi@npp-aclu.org
afettig@npp-aclu.org
jmorgan@aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, PLLC**
P. O. Box 91398
Tucson, Arizona 85752
Telephone: (520) 477-1475
Email: kirstin@eidenbachlaw.com

Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org
dpochoda@acluaz.org

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email: dbarr@perkinscoie.com
agerlicher@perkinscoie.com
jhgray@perkinscoie.com

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email: cnmitchell@jonesday.com
aamiri@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email: jlwilkes@jonesday.com

*Admitted *pro hac vice*

Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3498
Email: jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By: *s/ Maya Abela*

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
rdalyrooney@azdisabilitylaw.org
jrico@azdisabilitylaw.org
jross@azdisabilitylaw.org
mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2017, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

s/ D. Freouf