Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DKD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR RELIEF FROM ORDER RE: CLOSE CUSTODY (DKT. 1833)** |

Despite the procedural posture of this Motion and Plaintiffs' own affirmations throughout the post-judgment proceedings, Plaintiffs now take inconsistent positions to argue that Defendants have no right to Rule 60(b) relief. Instead of engaging Defendants on the overlooked material facts and law, however, Plaintiffs resort to ad hominem arguments and misstatements of Defendants' positions. At the same time, Plaintiffs have not responded to the material fact that all class members are, by definition, outside the Subclass based on their guaranteed out-of-cell time alone. This and the reasons below entitle Defendants to relief.

# I. THE COURT'S FINAL ORDER WAS SUBJECT TO RULE 60(B) RELIEF.

## A. Post-Settlement Orders are Final.

In determining whether an order is final, the Ninth Circuit has rejected Plaintiffs' literal argument that it must be "the last order possible to be made in a case," adopting instead "a practical approach rather than a technical construction." *United States v. Washington*, 761 F.2d 1404, 1406 (9th Cir. 1985). The need for a practical approach to the finality rule is "particularly true when post-judgment orders are involved" because "[t]he policy against and the probability of piecemeal review is not as decisive a consideration after judgment as before judgment since the underlying dispute is already settled." *Id.* "Moreover, unless [post-judgment] orders are found final, there is often little prospect that further proceedings will occur to make them final." *Id.*; *accord United States v. One 1986 Ford Pickup*, 56 F.3d 1181, 1185 (9th Cir. 1995) (stating a contrary result 'would eliminate any opportunity for review.'"); Wright, A. Miller & E. Cooper, Finality-Post-Judgment Orders, 15B Fed. Prac. & Proc. Juris. § 3916 (2d ed.). The Ninth Circuit has also consistently held that post-judgment enforcement orders are final for purposes of appeal. *See*, *e.g.*, *Natural Res. Def. Council, Inc. v. S.W. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (post-judgment order modifying injunction and lifting stay was final and appealable); *Kittitas Reclamation District v. Sunnyside Valley Irrigation District*, 626 F.2d 95, 98-99 (9th Cir. 1980) (appellate review of final order issued pursuant to district court's continuing jurisdiction over consent decree in water rights case); *Washington*, 761

1  F.2d at 1406 (post-judgment remedial order issued pursuant to a district court's continuing
2  jurisdiction over injunction was a final order for purposes of appeal under § 1291 instead
3  of an interlocutory order under § 1292 and Rule 54(b)).

4        This approach translates easily to the unique settlement in this case. Though a
5  judgment was never entered, the Parties' Stipulation is the congruent marker. As part of
6  that Stipulation, the Court has limited authority to enforce its terms. When the Court
7  exercises that authority, as it did in its December 23, 2016 Order regarding close custody,
8  there is no subsequent event (like a judgment) that will render that order any more final.
9  Thus, the parties should have the opportunity to challenge that Order under Rule 60, like
10 any other post-judgment order, before it decides whether to appeal. *See Juanes v.*
11 *Lyzwinski*, 8:10-CV-459 ATB, 2013 WL 3713419, at *3 (N.D. N.Y. July 12, 2013)
12 (acknowledging that Rule 60(b) is appropriate motion to challenge order enforcing
13 settlement agreement); *see also Gastile v. Virga*, 15-16294, 2016 WL 6520090, at *1 (9th
14 Cir. Nov. 3, 2016) (order granting motion to enforce settlement agreement is a "final
15 decision" for purposes of jurisdiction under 28 U.S.C. § 1291).

16       **B.    Plaintiffs Have Taken Inconsistent Positions.**

17       In response to Defendants' previous Rule 60(b) Motion for Relief from the Court's
18 November 10, 2016 outside-transport order, Plaintiffs did not assert that Rule 60(b) was
19 an inappropriate or improper procedural vehicle. (Doc. 1806 at 8.) Plaintiffs even
20 acknowledged that the November 10, 2016 Order was a remedial order and *cross-moved*
21 for relief under Rule 60(a). (Doc. 1806 at 5, 18-20). Plaintiffs then urged the Court to
22 grant them the relief they requested in their Rule 60(a) motion in its order ruling on
23 Defendants' Rule 60(b) motion. (Doc. 1881 at 3.) Indeed, the simple fact that Plaintiffs
24 have responded to this Motion without a Court order not only suggests that Rule 60(b) is
25 the proper procedural vehicle, but their response waives any claim that this Motion should
26 be decided as an interlocutory order under Rule 7.2(g) instead. *See* Rule 7.2(g) ("No
27 response may be filed unless ordered by the Court . . . ."). If anything, Plaintiffs should
28 be judicially estopped from taking an inconsistent position now to deny Defendants relief

under Rule 60(b). *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (explaining judicial estoppel "is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."); *see also New Hampshire v. Maine,* 532 U.S. 742, 750 (2001) (noting judicial estoppel forbids use of intentional self-contradiction to obtain an unfair advantage) (citation omitted). In filing this Rule 60(b) Motion, Defendants have also detrimentally relied on Plaintiffs' prior affirmations that Rule 60 relief was appropriate to challenge the Court's enforcement orders by delaying an immediate appellate review of the Order. *See Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1023 (D. Ariz. 2003) ("Equitable estoppel involves . . . an affirmative misrepresentation of a present fact or state of facts and detrimental reliance by another person.") (citation omitted).

## II. PLAINTIFFS FAILED TO RESPOND TO THE OVERLOOKED FACTS AND LAW.

In a string of legal citations, Plaintiffs argue that Defendants are not entitled to relief because "rare circumstances" do not exist. But Plaintiffs fail to identify why relief is not warranted, or identify any legal authority that makes it inappropriate to request relief based on material, overlooked and/or misapprehended facts and application of the correct legal standards. To the contrary, relief should be granted under such circumstances because it serves the purposes for which such motions are intended—to avoid error and injustice—regardless of whether the motions fall within the ambit of Rule 7.2(g) or Rule 60(b).[1] *See Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 586 (D. Ariz. 2003).

Moreover, Defendants have not "recycled" any arguments by asking the Court to address the *undisputed* and material fact that all close-custody inmates are "guaranteed 15.5 hours of out-of-cell [time] per week," as that fact alone necessarily places all close

---

[1] Plaintiffs incorrectly contend that Defendants did specify what Rule 60(b) ground should apply. Defendants cited Fed.R.Civ.P. 60(b)(6) and argued that reconsideration was justified under the circumstances.

3

custody inmates outside the plain and ordinary definition of the Subclass. (Doc. 1847 at 4.) By overlooking that fact and applying a "substantially similar" test instead of the Subclass definition's plain language, the Court effectively reduced the threshold number of hours that defines the Subclass and substituted it with an arbitrary standard of 20-plus hours-per-week of work programming. (Doc. 1847 at 4-5.) This was error that imposes upon Defendants new and unduly burdensome requirements to monitor and account for every out-of-cell activity of an entire class of inmates never contemplated by the Stipulation or performance measures. This reason alone justifies relief.

Moreover, Plaintiffs have conceded relief on that ground because they failed to respond to the argument that these overlooked facts and law place *all* of close custody inmates outside the Subclass. *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008); *see also*, *e.g.*, *Arden v. E. Coast Assemblers, Inc.*, CIV 14-2290-PHX-MHB, 2016 WL 454462, at *2 (D. Ariz. Feb. 5, 2016) ("In their Response, Plaintiffs fail to respond to this argument and appear to concede that the Court lacks specific jurisdiction over the Individual Defendants, but instead argue that the Court has general jurisdiction."); *Lucero v. Ruby*, CIV 09-0363-PHXDKD, 2011 WL 1654309, at *2 (D. Ariz. May 3, 2011) (finding plaintiffs' response failed to "address Defendant's arguments . . . and thus it may be assumed that Plaintiff concedes this point.").

### III. PLAINTIFFS MISCONSTRUE DEFENDANTS' OTHER ARGUMENTS.

#### A. Close Custody Status Is Not the Same as Maximum Custody.

Plaintiffs incorrectly contend that "close-custody" is merely a change in "nomenclature" and that Defendants should not be allowed to remove maximum custody inmates from the Subclass by changing their "label." Defendants have never taken that position. Nor do Plaintiffs' arguments accurately portray the facts.

To be clear, Defendants have always maintained that "close custody" is an entirely separate and distinct custody status, which entitles the inmate to *more* out-of-cell time, privileges, and benefits than maximum custody inmates have. (Doc. 1775 at 4-12, Section II.) Inmates are not arbitrarily given "close custody" status, but must earn that status

through good behavior and by meeting performance criteria demonstrating their ability to safely handle less supervision *and more out-of-cell time*. (Doc. 1775 at 12-14, Section III.) Plaintiffs' contention that close custody status was only a change in "label" and not substance is untrue. They have offered no evidence to support their contrary allegations.

Plaintiffs' challenge to the ADC's legitimate classification of close custody inmates at facilities that continue to incarcerate maximum custody inmates raises another point. Plaintiffs should not be protesting the benefits that the close custody classification offers inmates because that custody level provides *far greater* opportunities for out-of-cell time, communal gathering, visitation, job opportunities, and educational opportunities than that to which they would be entitled under the "status quo" (i.e., keeping all inmates at "maximum custody" status for Plaintiffs to monitor at whim). (Doc. 1775-1, ¶¶ 19-59.) Indeed, without reclassifying qualified inmates to close custody status, ADC is statutorily prohibited from using education funds to assist them to earn their GED. *See* A.R.S. § 31-240(C) ("The director shall not spend the education services budget monies for education programs dedicated to prisoners who are sentenced to death or life imprisonment or who are classified as maximum custody.").

Under the guise of "enforcement," however, Plaintiffs ask the Court to second-guess the professional judgment of ADC officials with respect to how it should define its custody levels and manage the safety and security of its inmate population, in violation of well-established principles that such prison management decisions are entitled to significant deference. *See Pell v. Procunier*, 417 U.S. 817, 827 (1974) ("In the judgment of the state corrections officials, this visitation policy will permit inmates to have personal contact with those persons who will aid in their rehabilitation, while keeping visitations at a manageable level that will not compromise institutional security. Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."); *accord Turner v. Safley,* 482 U.S. 78, 89 (1987)

(explaining prison administrators must be allowed "to adopt innovative solutions to the intractable problems of prison administration"); *see*, *e.g.*, *Robino v. Iranon*, 145 F.3d 1109, 1110 (9th Cir. 1998) (deferring to decision of prison officials, made pursuant to EEOC settlement agreement, to provide female-only posts to prevent sexual misconduct). Adopting Plaintiffs' argument is not only unreasonable for that reason, but it will only result in the unnecessary prolonging of the Court's management of this case for a classification of inmates never contemplated by the parties' Stipulation.

### B. Defendants' Evidence Is Not Theoretical.

The evidence that Defendants have provided is not "theoretical." Nor was it disputed. Plaintiffs have provided *no* evidence to refute the fact that close custody inmates are offered, on average, approximately 50.5 plus hours of out-of-cell time each week before work and educational programming. (Doc. 1775-1, ¶ 38.) They also do not dispute that the out-of-cell time offered to close custody inmates *actually reduces* the time that the inmates are "*subjected by the ADC* to . . . confinement in a cell for 22 or more hours each day," regardless of their actual time spent outside the cell. (Doc. 1185, ¶ 3, emphasis added.)

It was error for the Court to rely solely on statistics of "actual" out-of-cell time for two other reasons. First, the undisputed 15.5 hours of guaranteed out-of-cell time each week necessarily places all close custody inmates beneath the threshold provided in the Subclass by definition. Second, actual time is not a reliable measure in every instance, as inmates can voluntarily forego the available programming and choose to remain in the cell for reasons wholly unrelated to ADC policy. Under the Court's actual out-of-cell time standard, however, those inmates would be brought into the Subclass—even though they are not being "subjected by the ADC" to confinement in their cell during that time.[2]

---

[2] For instance, if a medium custody inmate catches the flu and remains in his cell for 23 hours each day for several days, or decides he would rather read a book and watch television than go outside for recreation, he would fall within the Subclass definition based on actual out-of-cell time alone, even though he was not subjected by any ADC policy to remain in his cell that long. Obviously, the parties never intended to include such an inmate in the definition of the Subclass. The same reasoning applies to close custody.

### C. Defendants Are Not Requesting to Alter the Subclass Definition.

Plaintiffs also incorrectly contend that Defendants seek to use DI 326 to redefine the Subclass. As Defendants have maintained throughout this litigation, DI 326 is further evidence that the parties' settlement intended monitoring of the Subclass to include *only* maximum custody inmates located at the enumerated facilities. The Court agreed, finding that the Subclass definition, the Stipulation, the attached performance measures, procedural history, and the parties' post-Stipulation monitoring unequivocally show the parties did not intend to define the Subclass based on "housing in enumerated facilities." (Doc. 1745 at 2.) Plaintiffs did not seek reconsideration of that ruling, and they misstate the record by asserting that the Court has already rejected that definition.

### D. Defendants Are Not Asking for Decertification.

Finally, Defendants are not challenging the Court's certification by arguing that adequacy and typicality would be lacking if the Order stands because there are no named Plaintiffs to represent the interests and claims of close custody inmates. Defendants properly cited: (1) law: Rules 23(a)(3) and (4), Fed.R.Civ.P., setting forth typicality and adequacy as half of the necessary elements for class certification; and (2) facts: the Subclass representatives' affidavits, to support their argument. The issue is not waived.

### IV. CONCLUSION

For the reasons stated above and in their Motion, Defendants respectfully request reconsideration of the Court's Order that included close custody inmates in the Subclass.

///
///
///
///
///
///
///
///

DATED this 27th day of January 2017.

           STRUCK WIENEKE & LOVE, P.L.C.

           By /s/Daniel P. Struck
              Daniel P. Struck
              Kathleen L. Wieneke
              Rachel Love
              Timothy J. Bojanowski
              Nicholas D. Acedo
              Ashlee B. Fletcher
              Anne M. Orcutt
              Jacob B. Lee
              Mark A. Bracken
              STRUCK WIENEKE & LOVE, P.L.C.
              3100 West Ray Road, Suite 300
              Chandler, Arizona  85226

              Arizona Attorney General Mark Brnovich
              Office of the Attorney General
              Michael E. Gottfried
              Lucy M. Rand
              Assistant Attorneys General
              1275 W. Washington Street
              Phoenix, Arizona 85007-2926

              *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com; docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amir Q. Amiri: | aamiri@jonesday.com; ttualaulelei@jonesday.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| Daniel Joseph Pochoda: | dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| Jennifer K. Messina: | jkmessina@jonesday.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Kirstin T. Eidenbach: | kirstin@eidenbachlaw.com |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org; mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org |

Rita K. Lomio:                rlomio@prisonlaw.com

     I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

    N/A

                                /s/Daniel P. Struck