Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DKD<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO ENFORCE THE STIPULATION (DKT. 1863)** |

## I. INTRODUCTION

While styled as a "Motion to Enforce" based on Defendants' alleged substantial non-compliance, Plaintiffs' Motion is really an attempt to explain away Defendants' compliant scores by fallaciously claiming Defendants utilized invalidated monitoring methodology in violation of Court Orders. Because Defendants are substantially compliant with the majority of measures raised by Plaintiffs, Plaintiffs' only option to convince the Court otherwise is to attack the monitoring methodology. Plaintiffs' last ditch effort fails, as detailed below, and their Motion should be denied.

## II. SPECIFIC PERFORMANCE MEASURES[1]

The below three issues, while overlooked by Plaintiffs, are imperative in determining whether Defendants are in substantial non-compliance. First, during the December 19, 2016 Mediation, Plaintiffs agreed to withdraw their Notice of Non-Compliance for measures at facilities that had achieved compliance for four months or more. (Dkt.1827) As such, any measure raised by Plaintiffs that has maintained compliance for four months or more should not have been subject to this Motion, based on Plaintiffs' prior agreement. Despite this, Plaintiffs included these measures in their Motion. Based on Plaintiffs' prior concessions, and based on scoring above 80%, Defendants have remedied any problem, and the Court should not order a remediation plan. Second, as recognized by Plaintiffs in their Motion, the Court has defined substantial compliance to mean "meeting the threshold that's required by the stipulation for the particular complex in a particular reporting period." *See* Exhibit 1 (9/8/2016 Hr'g Tr. at 30:9-11; Dkt. 1583 at 1:24-2:5). It follows then that meeting the threshold compliance for a particular complex in a particular reporting month must be substantial compliance. Thus, Plaintiffs' Motion should be denied for any facility currently meeting 80% for any particular measure.

---

[1] The November CGARs were produced to Plaintiffs on January 19, 2017. While Plaintiffs did not have this data when their Motion was filed, Defendants include this data to provide the Court with the most accurate and up-to-date picture of how these measures are performing.

1

Finally, Plaintiffs are under the assumption – although they fail to cite to any Court Order or other authority in support – that after the Court orders a measure should be audited in a particular fashion, Defendants are required to retroactively re-audit that performance measure at all facilities for every month since the inception of the Stipulation. But, contrary to Plaintiffs' desires, the only comments by the Court regarding this are as follows:

> I guess I have to say something more about the prospective versus retrospective. You know, I guess I think that because we are in a situation where we know the past was noncompliant and we're hopeful to be in a situation where we are going to be in compliance getting monthly updates, why does it matter so much that we focus on retrospective *as long as we are applying every interpretation that I -- decision that I give you with respect to how to count things going forward*. . .

*See* Exhibit 2 (10/5/2016 Hr'g Tr. At 28:20 – 29:4)

### A. July 29, 2016 Notice of Non-Compliance

**Performance Measure 35:** *All inmate medications (KOP and DOT) will be transferred with and provided to the inmate or otherwise provided at the receiving prison without interruption.*

Plaintiffs allege Defendants are in substantial non-compliance with this measure at Eyman, Florence, Lewis, Phoenix, Tucson, and Yuma. (Dkt. 1863 at 4). Defendants are in substantial compliance at Yuma because Yuma is currently compliant and has been for seven months.

| Prison   | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|----------|-----|-----|-----|-------|-----|------|------|-----|------|-----|-----|
| Eyman    | 47  | 88  | 56  | 74    | 60  | 76   | 72   | 80  | 86   | 54  | 64  |
| Florence | 50  | 40  | 24  | 45    | 36  | 48   | 42   | 43  | 53   | 69  | 63  |
| Lewis    | 0   | 0   | 48  | 57    | 49  | 33   | 47   | 35  | 31   | 32  | 32  |
| Phoenix  | 80  | 100 | 60  | 64    | 67  | 71   | 43   | 89  | 75   | 44  | 67  |
| Tucson   | 16  | 13  | 39  | 24    | 19  | 27   | 19   | 16  | 14   | 10  | 50  |
| Yuma     | 76  | 58  | 77  | 75    | 86  | 86   | 82   | 84  | 89   | 94  | 87  |

2

While Plaintiffs claim that any compliance was calculated using an invalidated monitoring methodology, Plaintiffs' argument is misplaced. (Dkt. 1863 at 4). The Court's Order regarding methodology for this measure was issued on December 14, 2016. (Dkt. 1831 at 2). As such, Defendants could not have implemented the court-ordered methodology until January 2017, and none of the above percentages were calculated using an invalidated method.

For Eyman, Florence, Lewis, Phoenix, and Tucson, Defendants discovered inconsistencies as to where inmates store their Keep on Person ("KOP") medications. For example, many inmates keep their medication in their property. After transfer, however, it can take several days before an inmate's property arrives at his/her new facility. Defendants are looking to processes at other facilities that have achieved and maintained compliance in order to implement similar practices at the above facilities.

**Performance Measure 39:** *Routine provider referrals will be addressed by a Medical Provider and referrals requiring a scheduled provider appointment will be seen within fourteen calendar days of the referral.*

Plaintiffs allege Defendants are in substantial non-compliance with this measure at Yuma.

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|-----|
| Yuma   | 74  | 64  | 66  | 67    | 84  | 51   | 51   | 42  | 47   | 63  | 72  |

At Yuma, non-compliance is attributed largely to provider referrals not occurring within the requisite timeframe. To increase compliance, Defendants are utilizing Telemed providers to assist with laboratory and x-ray review. Additionally, the Site Medical Director will monitor eOMIS each day to ensure providers are reviewing referrals and taking appropriate action. All providers have been instructed to check their home units each day to ensure all laboratory results and x-rays with abnormal findings have been appropriately acted upon.

///

///

3

**Performance Measure 40:** *Urgent provider referrals are seen by a Medical Provider within 24 hours of the referral.*

Plaintiffs allege Defendants are in substantial non-compliance with this measure at Eyman, Lewis, and Tucson. Defendants are in substantial compliance with this measure at Lewis and Tucson, as both are currently in compliance and have been for three and four months, respectively.[2]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Eyman | 80 | 32 | 58 | 33 | 71 | 34 | 13 | 13 | 83 | 85 | 65 |
| Lewis | N/A | 50 | 50 | N/A | 100 | N/A | N/A | 40 | 100 | N/A | 88 |
| Tucson | 57 | 20 | 50 | 33 | 14 | 50 | 0 | 83 | 100 | N/A | 86 |

Several processes have been implemented to increase compliance at Eyman. First, internal reporting, which will outline the pending urgent referrals, will be provided to each yard on each shift. Nurse Supervisors will be tasked with ensuring inmates get scheduled, and providers will then review the report to verify all inmates were timely addressed. Both nurses and providers will be given sample reports and will receive training on how to access and utilize them.

**Performance Measure 44:** *Inmates returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital shall have the hospital's treatment recommendations reviewed and acted upon by a medical provider within 24 hours.*

Plaintiffs allege Defendants are in substantial non-compliance with this measure at Douglas, Eyman, Florence, Lewis, and Tucson. Defendants are in substantial compliance at Eyman and Tucson because they are currently in compliance and have been for two and three months, respectively.

/ / /

/ / /

---

[2] Defendants disagree with Plaintiffs' unreasonable position that an "N/A" month cannot be counted as compliant. (Dkt. 1863, fn. 10). Certainly, it is not substantial non-compliance.

4

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Douglas | 60 | N/A | 50 | 80 | 100 | 78 | 14 | 80 | 92 | 100 | 57 |
| Eyman | 87 | 72 | 60 | 28 | 50 | 37 | 44 | 46 | 72 | 85 | 89 |
| Florence | 67 | 79 | 70 | 61 | 70 | 60 | 58 | 89 | 84 | 91 | 76 |
| Lewis | 68 | 47 | 78 | 88 | 70 | 80 | 71 | 29 | 48 | 38 | 43 |
| Tucson | 88 | 61 | 88 | 79 | 57 | 85 | 81 | 77 | 95 | 100 | 80 |

While Plaintiffs claim that any compliance was calculated using an invalidated monitoring methodology of counting medical records compliant if the inmate received medication on the day of the transfer, Plaintiffs' argument is misplaced.[3]

To increase compliance at Lewis, all off-site medical returns will now be processed at the HUB before the inmate is returned to his yard.  Additionally, Nursing Supervisors will immediately notify providers of hospital returns and ensure discharge recommendations are available. And, all verbal communications between providers and hospital treating physicians will be documented in eOMIS, including their course of action, even if no treatment is recommended.

At Douglas and Florence, when an inmate returns from the hospital or ER, the on-duty provider will review his discharge recommendations.  If a provider is unavailable (outside business hours), then the on-duty nurse will review the discharge recommendations and contact the on-call provider for verbal authorization of medications, if necessary.  The provider will then see the inmate the following business day. Additionally, correspondence will be sent to providers and nursing staff with instructions on what to do when an inmate returns from the hospital or ER.  Also, at Florence, the Director of Nursing is working with security to ensure that all returns are seen in medical before the inmate is returned to his or her yard.  For example, hospital discharges will be distributed to all yards by Unit Management.

---

[3] *See,* discussion under PM 35, *supra*.

**Performance Measure 50:** *Urgent specialty consultations and urgent specialty diagnostic services will be scheduled and completed within 30 calendar days of the consultation being requested by the provider.*

Plaintiffs allege Defendants are substantially non-compliant with this measure at Florence.

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Florence | 71 | 59 | 66 | 62 | 65 | 77 | 72 | 76 | 78 | 93 | 71 |

Florence's non-compliance with this measure is the result of untimely receipt of reports/results from outside providers. When there is a delay in response from an outside provider, it cuts into the time site providers have to review reports/results. To increase compliance, the Clinical Coordinator is continually contacting outside providers in an attempt to receive reports/results in a timely manner.

**Performance Measure 51:** *Routine specialty consultations will be scheduled and completed within 60 calendar days of the consultation being requested by the provider.*

Plaintiffs allege Defendants are substantially non-compliant with this measure at Eyman, Florence, Lewis, Tucson, and Yuma. Defendants are in substantial compliance at Florence, Lewis, and Tucson as these facilities are currently in compliance. Lewis and Tucson have been in compliance for five and three months, respectively.

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Eyman | 92 | 96 | 98 | 78 | 78 | 82 | 52 | 76 | 89 | 72 | 66 |
| Florence | 89 | 90 | 79 | 76 | 79 | 66 | 80 | 82 | 80 | 77 | 81 |
| Lewis | 76 | 75 | 79 | 89 | 70 | 78 | 84 | 82 | 80 | 96 | 89 |
| Tucson | 75 | 53 | 75 | 64 | 65 | 70 | 81 | 77 | 84 | 82 | 88 |
| Yuma | 83 | 55 | 94 | 64 | 72 | 50 | 89 | 67 | 74 | 66 | 82 |

The inconsistent scores at Eyman and Yuma are due, in part, to canceled optometry appointments and clinics by outside providers.

/ / /

/ / /

6

**Performance Measure 52:** *Specialty consultation reports will be reviewed and acted on by a Provider within seven calendar days of receiving the report.*

Plaintiffs claim Defendants are substantially non-compliant with this measure at Florence, Perryville, Tucson, and Yuma. Defendants are in substantial compliance with this measure at Yuma because it is currently compliant and has been in compliance for six months. While Plaintiffs claim PM 52 "must similarly accord with that ordered by the Court" for PM 44, Plaintiffs fail to cite to any Court order requiring this or any request they made to have this methodology apply to PM 52. (Dkt. 1863 at 6).

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Florence | 37 | 63 | 45 | 40 | 24 | 45 | 50 | 61 | 56 | 71 | 69 |
| Perryville | 91 | 76 | 26 | 81 | 72 | 76 | 79 | 70 | 70 | 82 | 71 |
| Tucson | 46 | 61 | 61 | 55 | 45 | 43 | 47 | 42 | 39 | 13 | 57 |
| Yuma | 79 | 64 | 88 | 63 | 72 | 83 | 87 | 81 | 80 | 98 | 93 |

With respect to Florence, Perryville, and Tucson, in the recent weeks, Defendants have concentrated efforts toward resolving issues at these facilities – beginning with an internal analysis to discover best-in-class practices and replicate those statewide. New daily and weekly reporting, as well as training programs, have been implemented to ensure compliance levels are maintained.

**Performance Measure 55:** *Disease management guidelines will be implemented for chronic diseases.*

Plaintiffs claim Defendants are substantially non-compliant with this measure at Eyman and Tucson. Defendants are in substantial compliance at Tucson, as it is currently in compliance and has been for three months. Additionally, Eyman has been compliant three of the last four months.

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Eyman | 80 | 80 | 68 | 90 | 74 | 78 | 66 | 88 | 86 | 84 | 76 |
| Tucson | 76 | 63 | 78 | 74 | 79 | 69 | 68 | 69 | 100 | 81 | 82 |

**Performance Measure 73:** *All MH-3 minor prisoners shall be seen by a licensed mental health clinician a minimum of every 30 days.*

Plaintiffs claim Defendants are substantially non-compliant with this measure at Tucson. Defendants are in substantial compliance at Tucson, as Tucson is currently in compliance and has been for seven months.

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Tucson | 70 | 60 | 20 | 40 | 100 | 100 | 90 | 90 | 100 | 100 | 100 |

To explain away the consistently high scores for this measure at Tucson, Plaintiffs argue it is because Defendants continue to count group and cell-front contacts as satisfying the requirement that an inmate be seen, in violation of Court orders. (Dkt. 1863 at 7).

With respect to group contacts, Plaintiffs rely on the Court's September 6, 2016 Court Order ordering that group counseling does not count as being "seen." (Dkt. 1673 at 4 – 5). But Plaintiffs do not tell the whole story. The Court first ruled on this issue on September 6, 2016 (Dkt. 1673 at 4 – 5). At the September 8, 2016 Status Conference, Defense counsel notified the Court there were several issues with the Court's order that needed clarification or reconsideration. (Ex. 1, p. 22:4-25.) The Court directed the parties to attempt to meet and confer and provide a notice regarding any unresolved issues. (*Id*.) Based on the Court's instructions, in Defendants' Proposed Agenda Items for the October 5, 2016 Status Conference, Defendants requested clarification/reconsideration regarding the portion of the Court's September 6, 2016 Order regarding group contacts. (Dkt. 1673 at 5.) At the October 5, 2016 status conference, Defendants made an oral motion for reconsideration regarding the Court's September 6, 2016 order regarding group contacts. (Ex. 2, pp. 26:13-28:10.) The Court took the motion under advisement and later requested further briefing. (Dkt. 1745 at 2-3.) The Court accepted Defendants' request for reconsideration "because of the long-term and wide-ranging impact of these rulings." (Dkt. 1745 at 2-3.) Plaintiffs filed a Response on November 22, 2016. (Dkt. 1772.). During the January 11, 2017 hearing, the Court ruled that group contacts do not count as

8

being "seen." (*See* Exhibit 3, 1/11/17 Tr., pp. 10:18-11:23).  With respect to cell-front contacts, on November 8, 2016, the Court ruled that a cell-front visit is compliant with the Stipulation if an inmate refuses to leave the cell or if the prison is on lockdown, but that a cell-front visit is not compliant with the Stipulation if an inmate is on suicide watch.  (Dkt. 1745 at 1).

So, while Plaintiffs claim "as of the August 2016 CGAR data, Defendants continued to count both these kinds of encounters as satisfying the requirement that a patient be 'seen,' in violation of the Court's Orders" (Dkt. 1863 at 7, n.9), as detailed above, the orders were not issued until November 2016 and January 2017.  How then, could Defendants have complied with them in August?

Further, while Plaintiffs claim Defendants' monitoring guide does not specify that cell-front encounters are not to be counted for PM 73[4], Plaintiffs rely on an outdated version of the monitoring guide.  (Dkt. 1863 at 8).  Indeed, on January 18, 2017, Defendants submitted the final[5] monitoring guide which includes the following language:

> Any performance measure that requires being "seen" cannot be done in a group setting unless expressly stated in the performance measure.

*See* Exhibit 4, 1/18/2017 Redlined Monitoring Guide at 11.

> For all mental health measures in which an inmate is required to be "seen," any contact done cell front may only be counted as a contact if there is a refusal or a lockdown.

*See* Exhibit 5, 1/10/2017 Redlined Monitoring Guide at 11.

Additionally, both PM 73 & 74 include the requisite language regarding cell-front encounters.  *Id*. at 98, 100.  And because an agreement to include this language was made on January 10, 2017, before Plaintiffs filed their Motion, it is confusing why they included such accusations.  *See* Exhibit 6 (January 10, 2017 e-mail correspondence from A. Orcutt

---

[4] Plaintiffs' statement is inaccurate as cell-fronts *can* be counted if the inmate refuses to come out of his/her cell or there is a lockdown.

[5] The monitoring guide is final, but as the Court has recognized, is a living document subject to change.  (Ex. 3 at pp.9:2 – 7).

9

to D. Fathi).

**Performance Measure 74:** *All female prisoners shall be seen by a licensed mental health clinician within 5 working days of return from a hospital post-partum.*

Plaintiffs claim Defendants are substantially non-compliant with this measure at Perryville. Defendants are substantially compliant, as Perryville is currently in compliance and has been for six months.[6]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Perryville | 60 | 75 | 100 | 100 | 75 | 100 | 100 | 100 | N/A | 100 | 100 |

**Performance Measure 80:** *MH-3A prisoners shall be seen a minimum of every 30 days by a mental health clinician.*

Plaintiffs allege Defendants are in substantial non-compliance with this measure at Perryville. Defendants are substantially compliant, as Perryville is currently in compliance and has been for four months.[7]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Perryville | 87 | 90 | 81 | 78 | 79 | 93 | 77 | 81 | 90 | 97 | 97 |

**Performance Measure 86:** *MH-3D prisoners shall be seen a minimum of every 90 days by a mental health clinician for a minimum of every 6 months after discontinuing medication.*

Plaintiffs allege Defendants are in substantial non-compliance with this measure at Tucson. Defendants are substantially compliant, as Tucson is currently in compliance and has been for eight months.

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Tucson | 71 | 71 | 74 | 81 | 90 | 94 | 95 | 94 | 94 | 92 | 92 |

Plaintiffs claim Defendants have monitored this performance measure using a monitoring methodology that the Court invalidated. (Dkt. 1863 at 9 – 10). Again,

---

[6] Regarding Plaintiffs' allegations regarding counting group and cell-front contacts as being "seen", see discussion under PM 73, *supra*.

[7] Regarding Plaintiffs' allegations regarding counting group and cell-front contacts as being "seen", see discussion under PM 73, *supra*.

Plaintiffs fail to tell the whole story. On September 6, 2016, the Court issued an Order regarding performance measures requiring that an action occur every X days. (Dkt. 1673 at 4). In preparation for the October 5, 2016 Status Conference, Defendants added "Clarification Regarding Court's September 6, 2016 Order" to their list of proposed agenda items. (Defendants' Proposed Agenda Items for October 5, 2016 Conference). Specifically, Defendants advised:

> The parties disagree as to how the Court ordered Defendants to monitor performance measures that require an event to occur "every X days." Plaintiffs contend the Court agreed with their interpretation. In its Order, however, the Court provided examples showing how these measures are to be monitored. (*See* Dkt. 1673 at 4 & 6.) Because the Court's examples are consistent with the way Defendants monitor these measures, it is Defendants' position they are correctly monitoring compliance with the measures that require an event to occur "every X days." *Id.*

At the Conference, Plaintiff's counsel, David Fathi, informed the Court, "We don't agree that the defendants are monitoring consistent with your order but it's possible that there is a misunderstanding between the parties based on the Court's Order. . . so I would propose that we speak – the parties try to work it out and then if that is not successful, then we could do as the Court suggests, but I would ask for a little bit of extra time to try to accomplish that." (Ex. 2 at 25:3 – 13). The Court ordered that if, within 14 days, one side still thinks the issue of calculation needed to be addressed, to file a document with examples of how the other side is not complying with the examples provided by the Court. *Id*. at 25:14 – 19. The parties submitted briefs containing examples of how they believed the Court's Order should be interpreted. (Dkts. 1717 – 1719). On November 10, 2016, the Court issued an Order addressing date calculations and Performance Measure 86. (Dkt. 1754). The Court acknowledged "the nuances left untouched by the earlier Order" and ordered that the start date for calculating compliance for PM 86 is the date that medication is discontinued. *Id*. at 1 - 2.

///

///

11

As such, Defendants could not comply with the Court's Order until December 2016. And both Plaintiffs' counsel (noting there was a misunderstanding with the Order) and the Court (noting nuances remained untouched by its Order) recognized the ambiguity of the September 6, 2016 Order. For Plaintiffs to now claim – inaccurately – that Defendants defied the September 6 Order when both parties were unsure of its meaning is disingenuous.[8]

**Performance Measure 87:** *MH-4 prisoners shall be seen by a mental health clinician for a 1:1 session a minimum of every 30 days.*

Plaintiffs allege Defendants are in substantial non-compliance at Perryville. Defendants are in substantial compliance, as Perryville is currently compliant and has been for four months.

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Perryville | 85 | 90 | 90 | 70 | 70 | 100 | 55 | 90 | 85 | 100 | 100 |

**Performance Measure 88:** *MH-4 prisoners who are prescribed psychotropic medications shall be seen by a mental health provider a minimum of every 90 days.*

Plaintiffs allege Defendants are in substantial non-compliance with this measure at Tucson. Defendants are in substantial compliance at Tucson, as Tucson is currently compliant and has been for seven months.

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Tucson | 90 | 90 | 70 | 70 | 100 | 90 | 100 | 100 | 100 | 100 | 90 |

///

---

[8] Plaintiffs further claim, "Defendants have admitted that their methodology is inconsistent with the Court's Order." (Dkt. 1863 at 10) On November 15, 2016, Plaintiffs filed a Statement Regarding Monitoring Guide. (Dkt. 1755). In that filing, Plaintiffs claimed Defendants' monitoring guide "remains noncompliant with the Court's November 10 Order." *Id.* at 18. But the monitoring guide referenced by Plaintiffs was sent less than a day after the Court's November 10 Order and Defendants had not had the opportunity to evaluate the effect of the Order on the methodology. (Dkt. 1782 at 14). Indeed, the requisite language was added during the next mental health revisions to the monitoring guide. [January 6, 2017 Monitoring Guide]. Plaintiffs' conclusion that Defendants were intentionally defying a Court order is unreasonable, as is Plaintiffs' claim that Defendants continue to count group contacts (Dkt. 1863 at 10), for the same reasons discussed under PM 86, *supra*.

1 Plaintiffs again attempt to explain away these high scores by claiming Defendants continue to employ a methodology invalidated by the Court. (Dkt. 1863 at 9 – 10). For the same reasons discussed above, Plaintiffs are wrong. *See* discussion under PM 73 and PM 86 *supra*.[9]

**Performance Measure 94:** *All prisoners on a suicide or mental health watch shall be seen by a licensed mental health clinician or, on weekends or holidays, by a registered nurse.*

Plaintiffs allege Defendants are substantially non-compliant with this measure at Perryville and Winslow. Defendants are in substantial compliance at Perryville and Winslow because both are currently in compliance and have been for two and three months, respectively.

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Perryville | 90 | 90 | 80 | 30 | 40 | 100 | 50 | 70 | 60 | 85 | 80 |
| Winslow | 0 | N/A | 0 | 0 | 0 | 100 | 100 | 25 | 100 | 100 | 100 |

Here, Plaintiffs claim the October numbers for Perryville were calculated using a method that has been invalidated by the Court. (Dkt. 1863 at 11). Because the Court did not invalidate this methodology until December 14, 2016, Defendants were not utilizing an invalidated method when calculating the above scores.[10]

**Performance Measure 95:** *Only licensed mental health staff may remove a prisoner from a suicide or mental health watch. Any prisoner discontinued from a suicide or mental health watch shall be seen by a mental health provider, mental health clinician, or psychiatric registered nurse between 24 and 72 hours after discontinuation, between seven and ten days after discontinuation, and between 21 and 24 days after discontinuation of the watch.*

Plaintiffs allege Defendants are substantially non-compliant with this measure at Lewis, Tucson, and Winslow. Defendants are substantially compliant at each of these facilities, as they are all currently in compliance and have been for six, five, and six

---

[9] Unlike PMs 73 and 74, because PM 88 looks to psychiatry notes, adding the Court's language regarding other types of contacts would be inaccurate. As such, the group contacts language was added to the introduction.

[10] Plaintiffs' argument alleging Defendants utilized an invalidated methodology regarding cell-front encounters is incorrect. *See,* discussion of PM 73, *supra*.

13

months, respectively.  Plaintiffs' claims regarding Defendants' monitoring methodology are, again, incorrect.[11]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lewis | 80 | 80 | 60 | 70 | 70 | 90 | 90 | 100 | 90 | 100 | 100 |
| Tucson | 70 | 30 | 70 | 90 | 100 | 40 | 90 | 100 | 90 | 88 | 100 |
| Winslow | 0 | 0 | N/A | N/A | 0 | N/A | N/A | 100 | 100 | N/A | N/A |

**Performance Measure 97:** *A mental health provider treating a prisoner via telepsychiatry shall be provided, in advance of the telepsychiatry session, the prisoner's intake assessment, most recent mental health treatment plan, laboratory reports (if applicable), physician orders problem list, and progress notes from the prisoner's two most recent contacts with a mental health provider.*

Plaintiffs allege Defendants are in substantial non-compliance with this measure at Lewis.  Defendants are in substantial compliance because Lewis is currently compliant and has been for five months.

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lewis | 47 | 56 | 33 | 80 | 77 | 73 | 80 | 81 | 80 | 82 | 81 |

**Performance Measure 98:** *Mental health HNRs shall be responded to within the timeframes set forth in the Mental Health Technical Manual (MHTM) (rev. 4/18/14), Chapter 2, Section 5.0.*

Plaintiffs allege Defendants are substantially non-compliant with this measure at Perryville and Tucson.  Defendants are in substantial compliance, as both Perryville and Tucson are currently in compliance, and Tucson has been in compliance for the last five months.

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Perryville | 79 | 95 | 77 | 76 | 74 | 59 | 78 | 82 | 88 | 74 | 82 |
| Tucson | 76 | 85 | 45 | 61 | 62 | 74 | 82 | 87 | 91 | 84 | 85 |

///

---

[11] *See*, discussion of PM 94, *supra*.

14

Plaintiffs claim Defendants monitored using an invalidated methodology. Again, Plaintiffs fail to tell the whole story. On November 15, 2016, Plaintiffs filed a "Statement re: Unresolved Issues related to the Monitoring Guide." (Dkt. 1755). With respect to PM 98, Plaintiffs requested that, in addition to recording the date of receipt and triage of the HNR, Defendants also record the time. *Id*. at 20. Defendants responded on November 29, 2016, that nothing in the Stipulation requires Defendants to record the time of receipt and triage of the HNR. (Dkt. 1782 at 16). At the December 14, 2016 Status Conference, the Court ordered that start and end times must be documented. (Dkt. 1831 at 2). None of the above scores were calculated by a method invalidated by the Court, as the Court did not rule on the issue until December 14, 2016 – making it impossible for Defendants to implement until January 2017.[12]

**B.     October 4, 2016 Notice of Non-Compliance**

**Performance Measure 4:** *Infirmary staffing will be maintained with a minimum staffing level of 2 RNs on duty in the infirmary at all times at Tucson & Florence infirmaries and a minimum of one RN on duty in the infirmary at all times at Perryville and Lewis infirmaries.*

Plaintiffs allege Defendants are non-compliant with this measure at Florence. Defendants are in substantial compliance, as Florence is currently compliant and has been for three months.

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|--------|-----|-----|-----|-------|-----|------|------|-----|------|-----|-----|
| Florence | 100 | 100 | 90 | 83 | 100 | 57 | 48 | 74 | 97 | 100 | 93 |

**Performance Measure 37:** *Sick call inmates will be seen by an RN within 24 hours after an HNR is received (or immediately if identified with an emergent need, or on the same day if identified as having an urgent need).*

Plaintiffs allege Defendants are in substantial non-compliance with this measure at Perryville.

---

[12] Interestingly, during the January 26, 2017 hearing on the Monitoring Guide, Plaintiffs' counsel, David Fathi, advised the Court he believed the Court's Order regarding monitoring this measure was confusing. Yet, in their Motion, Plaintiffs urge the Court to find the opposite – that the Order is clear and Defendants are in violation.

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Perryville | 70 | 72 | 70 | 48 | 52 | 56 | 66 | 54 | 57 | 59 | 70 |

Defendants anticipate this measure will see improvements, beginning with the December 2016 numbers due to the implementation of the open clinic concept. Indeed, since its implementation at Perryville, Perryville has no nurse line backlog.

**Performance Measure 45:** *On-site diagnostic services will be provided the same day if ordered STAT or urgent, or within 14 calendar days if routine.*

Plaintiffs allege Defendants are in substantial non-compliance at Florence, Lewis, Tucson, and Yuma. Importantly, the chart Plaintiffs rely on in their Motion is inaccurate (Dkt. 1863 at 15). The correct results are contained in the below chart.[13] Defendants are in substantial compliance at Florence, Tucson, or Yuma, as all are currently compliant, and Florence and Yuma have been compliant for three and four months, respectively.

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Florence | 100 | 85 | 95 | 78 | 80 | 82 | 52 | 67 | 82 | 80 | 83 |
| Lewis | 91 | 34 | 85 | 69 | 92 | 69 | 85 | 78 | 80 | 81 | 69 |
| Tucson | 76 | 91 | 88 | 97 | 89 | 71 | 70 | 79 | 79 | 77 | 80 |
| Yuma | 82 | 96 | 90 | 84 | 90 | 74 | 74 | 84 | 84 | 82 | 90 |

Periodic non-compliance with this measure at Lewis is attributed to provision of laboratory services to more secure housing units. Specifically, due to additional security constraints in these housing units, laboratory technicians were not reporting in real time. As such, site leadership is collaborating with security leadership to ensure higher security inmates' laboratory results are recorded in conjunction with the visit. To increase compliance with this measure at Tucson, a running log will be placed in each unit to track all ordered laboratory results.

---

[13] Plaintiffs incorrectly state Tucson achieved 79% in September 2016 when it achieved 86%, and that Tucson achieved 77% in October when it achieved 73%. [ADCM722911-912; ADCM750678-679]

16

**Performance Measure 73:** *All MH-3 minor prisoners shall be seen by a licensed mental health clinician a minimum of every 30 days.*

Plaintiffs allege Defendants are in substantial non-compliance at Perryville. Defendants are in substantial compliance, as Perryville is currently in compliance and has been for four months. Plaintiffs' claim that Defendants monitored using invalidated methodology is wrong.[14]

| Prison | Jan | Feb | Mar | April | May | June | July | Aug | Sept | Oct | Nov |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Perryville | 100 | 100 | 100 | 100 | 50 | 0 | 0 | 100 | N/A | N/A | N/A |

### III. CONCLUSION

Based on the foregoing, Plaintiffs' Motion should be denied.

RESPECTFULLY SUBMITTED this 27th day of January 2017.

        STRUCK WIENEKE & LOVE, P.L.C.

        By /s/Daniel P. Struck
          Daniel P. Struck
          Kathleen L. Wieneke
          Rachel Love
          Timothy J. Bojanowski
          Nicholas D. Acedo
          Ashlee B. Fletcher
          Anne M. Orcutt
          Jacob B. Lee
          Mark A. Bracken
          STRUCK WIENEKE & LOVE, P.L.C.
          3100 West Ray Road, Suite 300
          Chandler, Arizona 85226

          Arizona Attorney General Mark Brnovich
          Office of the Attorney General
          Michael E. Gottfried
          Lucy M. Rand
          Assistant Attorneys General
          1275 W. Washington Street
          Phoenix, Arizona 85007-2926

        *Attorneys for Defendants*

---

[14] *See* discussion under PM 73, *supra*.

# CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com; docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amir Q. Amiri: | aamiri@jonesday.com; ttualaulelei@jonesday.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| Daniel Joseph Pochoda: | dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| Jennifer K. Messina: | jkmessina@jonesday.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Kirstin T. Eidenbach: | kirstin@eidenbachlaw.com |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org; mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org |

Rita K. Lomio: rlomio@prisonlaw.com

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Daniel P. Struck