WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Antonio Parsons, et al.,<br>        Plaintiffs,<br>v.<br>Charles L. Ryan, et al.,<br>        Defendants. | No. CV-12-0601-PHX-DKD<br><br>**ORDER** |

Defendants moved for Rule 60(b) relief from the Court's November 10, 2016 Order ("Outside Provider Order"). (Doc. 1779) Defendants frame their argument in two parts: (1) the Court's order impermissibly modified the Stipulation's timeframe and compliance rates and (2) the Court did not appreciate the ensuing logistical and security issues and they should be permitted to present testimony on this matter. (Doc. 1779, 1821 at 5, 7) Before briefing on this motion was complete, Defendants filed a Notice of Appeal. (Doc. 1817) The Court retains jurisdiction of this matter under Federal Rule of Appellate Procedure 4(a)(4)(B)(i).

<u>Procedural Background and Jurisdiction</u>. As an initial matter, the Court notes that, without explanation, Defendants have formulated their motion as one for relief under Rule 60(b)(1), (4), and (6). (Doc. 1779 at 2) As Plaintiffs' note, these sections of Rule 60(b) are mutually exclusive and subject to different standards. (Doc. 1806 at 8) Defendants do not explain or justify their attempt to use multiple subsections and do not

analyze their claim under any particular standard. (Docs. 1779, 1821) Instead, they argue that "Plaintiffs do not dispute that Defendants may appropriately challenge the Court's November 10, 2016 order under Fed. R. Civ. P. 60. Therefore, there is not jurisdictional basis to not consider Defendants' Motion." Doc. 1821 at n.1.

First, the Court notes that any perceived waiver by Plaintiffs does not eliminate the Court's duty to ensure the procedural jurisdictional propriety of Defendants' pending motion. On first review, it appears that Federal Rule of Civil Procedure 60(b) may not be the most appropriate vehicle for challenging the Court's order because this matter is not post-judgment in the traditional sense of the word because no judge or jury entered judgement and the challenged order is not necessarily "final" as contemplated by Rule 60(b).[1]  28 U.S.C. § 1291; *Catlin v. U.S.*, 324 U.S. 229, 233 (1945) ("A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.").

Nevertheless, the Court has concluded that the parties are entitled to some mechanism for the Court to review its orders interpreting the Stipulation. *U.S. v. Washington*, 761 F.2d 1404, 1406 (9th Cir. 1985). Accordingly, the Court will assume that Defendants' motion under Rule 60(b) is proper when, as here, the Court's Order is an exercise of its remedial authority pursuant to Paragraph 36 of the Stipulation.[2] (Doc. 1185 at 14-15)

However, Defendants have attempted to bootstrap their argument into multiple subsections of Rule 60(b) without any explanation or analysis. (Doc. 1779 at 2:1) This will not suffice. Defendants have not explained how the Outside Provider Order is a void judgment and so the Court concludes that Defendants are not entitled to relief under Rule 60(b)(4) which, by its plain language, is limited to "void judgments." Defendant's

---

[1] Because the underlying Order is already on appeal, this Court invites the Court of Appeals to consider the paucity of guidance about the particular procedural landscape of a case where, like here, the Court is overseeing the enforcement of an on-going settlement.

[2] Motions for Reconsideration under LRCiv. 7.2(g) may be a more appropriate vehicle to request the Court's review of its other orders.

- 2 -

motion also does not explain which subsection of Rule 60(b)(1)–mistake, inadvertence, surprise, or excusable neglect–would apply and so the Court will consider this claim waived. (Doc. 1779)  Accordingly, the Court will construe Defendants' motion as one for relief under Rule 60(b)(6)'s catch-all provision.  Thus, the question is whether Defendants have shown "extraordinary circumstances" such that they are entitled to relief. *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

<u>Application of Order</u>.  Before evaluating Defendants' arguments, it is worth reiterating the scope of the Outside Provider Order. (Doc. 1754 at 4)  The Court is not ordering Defendants to use Outside Providers in the first instance.  The Court expects Defendants can and should use all of their internal resources first and foremost to comply with the Stipulation.  Using internally available resources should provide the most expeditious and effective care to Class Members.  Some of these resources are described by Defendants' remediation plans.  Other resources, like hiring sufficient staff, are not in a remediation plan but remain a viable solution that Defendants can (and probably should) implement on their own.  It is only when Defendants' internal resources are insufficient that the Court's Order to use Outside Providers takes effect.  In other words, if Defendants comply with the Stipulation using on-site resources, then the Court's Order on Outside Providers would not apply.  It is only when Defendants cannot provide on-site resources to Class Members that the Court's Order on Outside Providers becomes applicable.

<u>The Stipulation was not modified</u>.[3]  Defendants claim that the Court cannot mandate 100% compliance with the Stipulation because the Stipulation only requires that

---

[3] A parallel argument emerged in and out of footnotes. Defendants argue that "a 100% compliance rate is simply not possible" and "that impossibility is why Defendants could not and did not agree to it." Doc. 1779 at 7, n.3. Plaintiffs argue that this is tantamount to an admission of deliberate indifference. Doc. 1806 at 12. Defendants counter that "the reality [is] that medical staff do not know in real time what percentage of inmates are seen within the required timeframes" and could not knowingly or intentionally do so. (Doc. 1821 at 4) These arguments raise the specter of a constitutional claim against both sets of Defendants or a breach of contract claim by the State against Corizon. Because neither claim is before the Court, these arguments will remain footnoted.

- 3 -

1  Defendants meet the substantial compliance thresholds, currently set at 80% and soon to
2  rise to 85%. (Doc. 1779 at 5) Plaintiffs counter that the Stipulation requires Defendants
3  to provide 100% compliance and that the Stipulation's definition of "substantial
4  compliance" only describes the trigger for the Stipulation's enforcement measures not the
5  cap for the Court's involvement. (Doc. 1806 at 10-13)

6  Both parties use the plain language of Paragraphs 8, 9, and 10 of the Stipulation to
7  bolster their arguments. (Doc. 1185 at 3-4) After extensive consideration and analysis,
8  the Court has concluded that these three paragraphs use the terms "compliance" and
9  "substantial compliance" in contradictory ways that cannot be reconciled simply by
10 reference to the plain language. Accordingly, the Court must turn to the Stipulation's
11 intent. *See, e.g.*, Williston on Contracts 4th, §§ 32:7, 32:9.

12 As the Court has repeatedly explained, the Court understands that the Stipulation
13 requires 100% compliance with the performance measures and that the graduated
14 compliance rates are the trigger for the imposition of a remediation plan. (Doc. 1767 at
15 17-19) Put another way, the Court understands that the Stipulation requires 100%
16 compliance and, therefore, its Order on Outside Providers requires Defendants to pursue
17 100% compliance.

18 Defendants' argument that the Stipulation only requires 80% compliance conflates
19 the Defendants' obligation to provide healthcare with the Court's authority to require
20 them to do so. In other words, there is a delta between the Court's authority and the
21 Stipulation's requirement: the Court cannot impose remedial measures if Defendants fall
22 below the Stipulation's 100% requirement but satisfy the Stipulation's substantial
23 compliance percentages. Here, the Court has not exceeded its authority to impose
24 remedial measures because the facilities and performances measures at issue were
25 undoubtedly below the requisite threshold.[4]

---

[4] It is undisputed that the Court has not imposed or threatened sanctions for compliance rates above the Stipulation's substantial compliance thresholds. As a result, it is unclear whether Defendants have suffered any harm sufficient to establish standing to pursue this claim.

- 4 -

Defendants again raise the argument that the directive to use Outside Providers violates the Stipulation's limitation on the Court's ability to order Defendants to "hire a specific number or type of staff." Outside Providers are community healthcare providers who are not on Defendants' payroll. (Docs. 1754 at 4, 1767 at 10-11) This is categorically different than ordering an increase in staffing. Defendants' argument departs from the plain understanding of simple words in our language. No person obtaining a prescription at a pharmacy or seeing a doctor at an emergency room or urgent care is "hire[ing]" that healthcare provider.

Risk flowing from the Court's Order. Finally, Defendants argue that the Court's Order creates a heretofore-ignored level of risk and cost which the Court cannot appreciate without testimony. (Docs. 1779 at 7-10, 1779-1) Again, the Court notes that by timely providing the requisite care, the Defendants have had, and continue to have, the ability to avoid the Court-ordered use of Outside Providers. Moreover, the Court issued its Order after it had balanced the risk and cost that could arise from its Order against the health and well-being of Class Members, individuals to whom Defendants have a contractual duty under the Stipulation. The Defendants entered into the Stipulation to resolve a lawsuit which alleged extreme indifference to the healthcare needs of the Plaintiff Class – allegations which included loss of life and permanent injury. The inability of Defendants to meet the healthcare requirements of their own Stipulation, as supported by Plaintiffs' submissions showing continued Class Member harm, shows that the Court is addressing a risk to health and safety by means that are necessary and balanced notwithstanding Defendants claim of other security risks. Defendants can address those risks in both instances. They can adequately address the healthcare requirements of those within their care or they will need to accomplish that task using the only reasonable alternative available to the Court – providing those services via Outside Providers. The Court must focus on achieving the requirement of the Stipulation with the tools available to it.

<u>Compliance with PRLA</u>.  When drafting the Stipulation, the parties requested reference to the language found in 18 U.S.C. § 3626(a)(1)(A) and the Court affirmed that the relief provided therein "is narrowly drawn, extends no further than necessary to correct the violation of the Federal right and is the least intrusive means necessary to correct the violation of the Federal right."  (Docs. 1185 at ¶ 36; Doc. 1458 at 6, Attachment 1).  ("PLRA findings")

Plaintiffs, in response to the Court's first exercise of its authority under Paragraph 36 of the Stipulation, moved to modify the Court's Order under Federal Rule of Civil Procedure 60(a) so that the Court could add PLRA findings.  Noting that the Ninth Circuit has not explicitly ruled on the necessity of any such findings, Plaintiffs moved to correct the order in an abundance of caution.  (Doc. 1806 at 18)  Subsequently, Defendants filed a Notice of Appeal, thereby limiting this Court's ability to make any such modification.  (Doc. 1817)  Plaintiffs suggest that the Court should refer to PLRA findings in this Order thereby rendering their motion moot.  The Court will adopt this suggestion.

<u>Conclusion</u>.  As described above, the Court concludes that Defendants have not met their burden for demonstrating "extraordinary circumstances" such that they are entitled to relief under Federal Rule of Civil Procedure 60(b)(6).  The Court further concludes that its Order on Outside Providers was narrowly drawn, extended no further than necessary to correct the violation of the Federal right, and was the least intrusive means necessary to correct the violation of the Federal right as required by 18 U.S.C. § 3626(a)(1)(A).

**IT IS THEREFORE ORDERED** that Defendants' Motion for Relief as a Motion for Reconsiderations is denied.  (Doc. 1779)

. . .

. . .

. . .

1    **IT IS FURTHER ORDERED** that Plaintiff's Motion to Modify the Order under
2    Federal Rule of Civil Procedure 60(a) is denied as moot.  (Doc. 1806)
3    Dated this 6th day of February, 2017.

David K. Duncan
United States Magistrate Judge

1. **IT IS FURTHER ORDERED** that Plaintiff's Motion to Modify the Order under Federal Rule of Civil Procedure 60(a) is denied as moot.  (Doc. 1806)

Dated this 6th day of February, 2017.

David K. Duncan
United States Magistrate Judge