WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Antonio Parsons, et al., | No. CV-12-0601-PHX-DKD |
| Plaintiffs, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

The Stipulation's Subclass is defined as "[a]ll prisoners who are now, or will in the future be, subjected by the ADC to isolation, defined as confinement in a cell for 22 hours or more each day or confinement in the following housing units: Eyman-SMU 1; Eyman-Browning Unit; Florence-Central Unit; Florence-Kasson Unit; or Perryville-Lumley Special Management Unit." (Doc. 1185 at 2) These inmates were historically considered maximum custody inmates, and the plain language of the Stipulation grafted additional characteristics onto inmates who might be confined in one of the five enumerated units. In November of 2016, over two years after the Stipulation's creation, Defendants informed the Court of a new category of inmates—close custody—and argued that the difference between inmates categorized as close custody and maximum custody was so substantial that close custody inmates should be excluded from the Subclass as defined in Paragraph 3 of the Stipulation. (Doc. 1185 at 2, 1745 at 2) In order to more fully understand this new category, the Court ordered Defendants to

provide competent and admissible evidence to bolster their contention. (Doc. 1745 at 3) After full briefing on this matter, the Court concluded that most close custody inmates were "subject to substantially similar conditions as maximum custody inmates and, therefore, are part of the Subclass." (Doc. 1833 at 4) The Court further concluded that some close custody inmates—those who worked at least 20 hours/week—were not part of the Subclass and ordered the parties to develop a methodology for implementation. (Doc. 1833 at 5) Defendants have challenged this ruling. (Doc. 1847)

Procedural Posture. Defendants have moved for relief from the Court's Order under Federal Rule of Civil Procedure 60(b)(6). (Doc. 1847) Plaintiffs argue that the Court should construe Defendants' motion as one for reconsideration. (Doc. 1880 at 3-4)

As noted in another order entered contemporaneously with this one, the appropriate method for challenging the Court's rulings in this matter is relatively unclear. Both Federal Rule of Civil Procedure 60(b) and LR Civ. 7.2(g) are candidates. Under either high standard, however, Defendants are not entitled to relief.

Out-of-cell Time. The Subclass is defined as those who are "subjected to isolation, defined as confinement in a cell for 22 hours or more each day." (Doc. 1185 at ¶ 3) Defendants argue that the Court overlooked the "undisputed fact" that close custody inmates are guaranteed 15.5 hours of out-of-cell time a week and that this distinction necessarily removes close custody inmates from the Subclass. (Doc. 1847 at 4) But Defendants evidence focused on offered or potentially available out-of-cell time and did not provide admissible evidence to support the claim of 15.5 hours of guaranteed out-of-cell time. Accordingly, the Court did not err in failing to consider it. Moreover, the Court notes that the actual difference in out-of-cell time between 15.5 hours/week (close custody) and 14 hours/week (Subclass) amounts to just under 13 minutes each day. This is a distinction without a difference.

Working Inmates. Defendants argue that the Court redefined the Subclass. (Doc. 1847 at 4) It appears that Defendants have based this argument on a misunderstanding of the Court's Order. In concluding that any inmate who worked "at least" 20 hours a week

- 2 -

1 was not part of the Subclass, the Court understood that this could be an average and
2 asked the parties to develop a workable way to monitor based on that definition. (Doc.
3 1833 at 5:5-8) Theoretically, this definition could very well apply to capture Defendants'
4 hypothetical inmate who works 19.5 hours/week.[1] (Doc. 1833 at 4:23-24) Moreover, the
5 Court understood that working 20 hours/week was in addition to other out-of-cell
6 opportunities.

<u>Typicality and Adequacy</u>.  Finally, Defendants argue that none of the Subclass Representatives were categorized as close custody and so the subclass would lose its typicality and adequacy.  This argument fails for two reasons.  First the Court will not permit Defendants to allow their own changes to maximum and close custody status to defeat class certification at this late stage.  Moreover, Defendants failed to present competent and admissible evidence demonstrating that typicality and adequacy would be lacking if certain close custody inmates were included in the Subclass.[2]  Accordingly, Defendants are not entitled to relief.

Because it appears that Defendants have misunderstood the Court's Order, it is worth reiterating that the Court is not requiring Defendants to re-categorize close custody inmates as maximum custody inmates for correctional purposes.  Instead, the Court has indicated who counts as part of the Subclass for the purpose of monitoring compliance with the Stipulation.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Relief from Order Re: Close Custody is denied.  (Doc. 1847)

. . .

. . .

. . .

---

[1] If the parties' discussions on creating a workable application of the Court's Order uncover that working 19.5 hours/week is actually a better benchmark, the Court would be amenable to considering this method.

[2] If, as Defendants claim, close custody inmates receive additional out-of-cell time, then it seems that these inmates' files would easily demonstrate compliance with the Maximum Custody Outcome Measures. (Doc. 1185-1 at 38-45)

- 3 -

**IT IS FURTHER ORDERED** that Defendants' Notice and Request for Temporary Suspension of Order Regarding Close Custody is denied.  (Doc. 1869)

Dated this 6th day of February, 2017.

David K. Duncan
United States Magistrate Judge