Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>　　　　　　　　　　　　　Plaintiffs,<br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br>　　　　　　　　　　　　　Defendants. | NO. 2:12-cv-00601-DKD<br><br>**DEFENDANTS' MOTION FOR CLARIFICATION** |

Defendants Charles Ryan and Richard Pratt respectfully request the Court to (1) clarify statements it made at the February 8, 2017 Status Hearing regarding Defendants' duty to inform which Performance Measures, if any, they will recalculate, and (2) issue a written order outlining the scope of that duty and any underlying rulings. Defendants have listed below four questions they believe will assist the Court in crafting a written order and, more importantly, give guidance as to what is expected of them going forward. Defendants further request that the parties and the Court discuss these questions at the upcoming March 8, 2017 Status Hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

At the February 8, 2017 Status Hearing, the Court acknowledged that the parties needed guidance on when Performance Measures enter and exit the Stipulation's three-step remediation phase. In the course of that discussion, and to the best of counsels' recollection, the Court ordered Defendants to advise whether they were going to re-audit any of the Performance Measures that were subject to Plaintiffs' Motion to Enforce (Dkt. 1863). Though it was unclear at the time, counsel presumed that directive was given because of an underlying conclusion (implicit in its order) that any month prior to a ruling interpreting monitoring methodology ("interpretive ruling") could not be counted as compliant unless the Performance Measure was re-audited retroactively using the Court-ordered methodology and received a compliant score. As Defendants endeavored to determine whether they were going to re-audit any Performance Measures, the scope of the Court's Order became less clear, as did its underlying premise.

Defendants ordered a copy of the Transcript hoping it would shed some light on the issue. (Dkt. 1928.) As they waited for that transcript, they also waited for a minute entry setting forth what transpired at the Status Hearing and any orders they must comply with. The Court issued its Minute Entry on February 21, 2017. (Dkt. 1933.) The Minute Entry did not, however, clarify the scope of the Court's February 8 Order (to give notice whether Defendants were going to re-audit), nor did it include any definitive ruling on whether interpretive rulings were retroactive:

1

> Argument is heard regarding Plaintiffs' Motion to Enforce the Stipulation (Doc. 1863) which identifies additional performance measures. IT IS ORDERED within one week Defendants shall file a notice with the Court informing it which performance measures they believe warrant remediation (perhaps employing any recharacterization of the data in light of the Court's interpretive rulings) and whether or not they have included their remediation proposals in their response (Doc. 1900).

(Dkt. 1933 at 3.)

Counsel received the transcript later that day and feverishly reviewed it for direction. (Exhibit 1.) Unfortunately, that only caused more confusion and provoked more questions for Defendants. After deferring on ruling when a Performance Measure enters and exits the Stipulation's remediation phase, which the Court noted was "complicated" by its "previous rulings on how the performance measures are measured," (Exhibit 1 at 41:19-23), the Court stated:

> And otherwise in that interim period we'll continue to proceed on an ad hoc basis, which means a couple of things that I should also say about data collection generally in response to what the defendants have said in their paper preparatory to this hearing. Do you abjure any desire to recalculate data based upon the Court's new interpretations? I'm, as you know, embracive of the idea of trying to work with as much current data as I can so the fact that we're not fixing things in the past is not so abhorrent to me.

> But I also want defendants to understand that they can't have the benefit of those months that they haven't recalculated with respect to the exit procedures. So you can't count those months as being incompliant when I know they have not been proved to be so. I don't know whether they are compliant or not, but you all have the burden, I think, of demonstrating to me that you were compliant. And if you don't recalculate a month based upon the Court's latter adopted view of how that calculation should have been done, you can't use it to get out. Those months become non-countable. So that would be, I guess, giving you a heads up, a fair warning, about what the consequence is of not reworking that data down the road.

(Id. at 44:4-21, 44:22-45:17.) This, seemingly, is a general warning that if Defendants do not "recalculate a month" for certain Performance Measures, they cannot rely on it. The Court returned to the subject following a break and said:

2

And so I think what I will do, what you all have told me already is that with respect to the performance measures identified in [1863], there are a number of those that the defendants concede that they need to impose or suggest to the Court a remediation plan. And then there are others in which the defendants argue that the data that was collected under the then understanding of how the data should be collected did not produce a basis for any further remediative plan and the plaintiffs, of course, object.

I will, with respect to this category, where there is the defendants' view that they are in compliance because of the data that was collected under the previously operating scheme, that -- and where plaintiffs say that it is invalid because it does not include tabulations of data based upon the Court's current method, what I will do is I will give the defendants a week to do the following. …

***

What I will ask defendants to do is a week from today, file a notice with the Court informing it of the following two things: First, what performance measures they believe that the Court should require them to propose for remediation measures. So those may be some in which you have decided to concede that they were not in compliance and that it's warranted for plaintiffs to ask for remediation on those measures based upon an understanding on your own part that may reflect what I previously said in that there's a potential downside of not making an intelligent decision about whether you want to really recalculate. <u>And if you do recalculate, you might get a benefit of that. But if you don't recalculate it will be counted against you at the end and maybe counted against you here at the beginning. I'm undecided about that point</u>.

***

And then with respect to the category that I started with, and that is the ones where potentially you would not be in compliance based upon the data, decide whether in some of those cases, that you think it makes sense for you to go ahead and recalculate or to concede. If you recalculate, you get the potential benefit if it shows that you are in compliance, and you can use that down the road.

But that is how I <u>think</u> I will deal with the conundrum that I think is visited upon the circumstances of the case in light of the fact that we have changed the procedure for measuring performance.

(Exhibit 1 at 55:19-56:9, 56:19-57:7, 57:25-58:6, 58:7-10, emphasis added.) Nothing more was said on the issue at the hearing.

3

The Court's statements raise several questions. Without answers, Defendants are unsure how to proceed, and therefore request clarification from the Court.

**1.     Did the Court conclude that all interpretive rulings are retroactive?** In other words, did the Court rule that once it issues an order involving monitoring methodology—e.g., Dkt. 1673, 1745, 1754, 1831, 1833—that order applies to months *prior to* the issuance of the order, or does it only apply *prospectively* (which Defendants do not dispute)? The Court did not expressly rule either way. Although the Court ordered Defendants to advise if they were going to "recalculate or to concede" and gave a general warning about the possible consequences if Defendants do not "recalculate a month," (Exhibit 1 at 45:13, 58:4), it did not specify whether those recalculations must be done to months before and/or after an interpretive ruling. Indeed, retroactive application was not an issue before the Court. (See Dkt. 1911 at 6 n.8, Plaintiffs' Reply in Support of Motion to Enforce: "Defendants falsely claim that Plaintiffs' motion seeks to require them to re-audit CGAR scores for months prior to the Court's orders. … However, this question is not presented by Plaintiffs' motion, which with a single exception … concerns Defendants' failure to comply with the Court's orders after they were issued.")

Defendants believe interpretive rulings should only be prospective, not retroactive. Retroactive application would not only remove any incentive from Plaintiffs to work proactively with Defendants, but it would give Plaintiffs an incentive to *not* raise any methodology issues until Defendants request termination of a Performance Measure. For example, Defendants monitor a Performance Measure utilizing a specific methodology; Plaintiffs disagree with the methodology but do not bring it to the Court or Defendants' attention, leaving Defendants to believe there is no issue; after posting compliance numbers for 18 out of 24 months and seeking to terminate the Performance Measure, Plaintiffs then contest the methodology; the Court agrees, applies that ruling retroactively, and Defendants are required to start a new 24-month period of compliance using the new methodology. This would be an unfair scenario that rewards Plaintiffs for lying in wait.

Requiring Defendants to recalculate prior months as each interpretive ruling is issued will also divert valuable resources away from monthly monitoring duties. It currently takes approximately 45 days of full-time work to complete monitoring of a single month. If the monitors are required to re-audit prior months while simultaneously monitoring current months, there will be even more lag time for data on current months. That delay is unquantifiable, as it depends on which Performance Measures need to be re-audited and how many. In the end, prolonged delay is counter-productive and contrary to the goals of the Stipulation.[1]

**2.     If the Court rules that its interpretive rulings are retroactive, to what extent are they retroactive?** In other words, how many months prior to the issuance of an interpretive ruling must Defendants recalculate or concede noncompliance? Defendants cannot determine *if* they will re-audit prior months unless they know how far back they must go. If the Court rules that its interpretive rulings are retroactive, they should at most only be retroactive to the month in which Plaintiffs brought it to the Court's attention. That would remove any incentive for Plaintiffs to delay resolution of a methodology dispute and incentivize them to work proactively if they perceive an issue. Moreover, limited retroactive application is more feasible and attainable for Defendants to re-audit.

**3.     If the Court rules that its interpretive rulings are retroactive, which Performance Measures do they apply to?** In other words, does the ruling apply only to those Performance Measures that are at issue in the notice of non-noncompliance or motion to enforce? Or does it apply to any Performance Measure that is hypothetically impacted? Defendants cannot determine if they will re-audit prior months unless they know how many Performance Measures they must re-audit.

///

///

---

[1] Defendants can further explain this at the March 8 Status Hearing.

5

**4.     What are the benefits/ramifications if Defendants do/do not re-audit prior months?** The Court stated, if Defendants do not re-audit, they "can't use it to get out." (Exhibit 1 at 45:14-15.) But it's unclear if the Court was referring to exiting the remediation phase or termination of the Performance Measure. The Court was also equivocal about the benefits and consequences of re-auditing/not re-auditing: "And if you do recalculate, you <u>might</u> get a benefit of that. But if you don't recalculate it will be counted against you at the end and <u>maybe</u> counted against you here at the beginning. <u>I'm undecided about that point</u>. … If you recalculate, you get the <u>potential</u> benefit if it shows that you are in compliance, and you can use that down the road." (Exhibit 1 at 57:4-7, 58:4-6.) Defendants are uncertain if they will get any benefit if they elect to re-audit; is the benefit contingent on whether a re-audit produces a compliant score or is the benefit contingent on whether the Court will accept the score (which they are uncertain it will do)? Defendants are also unsure what it is the Court is "undecided about." Is it still deciding whether a non-recalculated month will be "counted against" Defendants at "the end," "at the beginning," or both, and what do those two markers represent (the beginning and end of what)?

**CONCLUSION**

For these reasons, Defendants respectfully request a written order and clarification of these issues.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

6

DATED this 22nd day of February 2017.

STRUCK WIENEKE & LOVE, P.L.C.

By /s/Timothy J. Bojanowski
Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
Mark A. Bracken
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona 85226

Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried
Lucy M. Rand
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amir Q. Amiri: | aamiri@jonesday.com; ttualaulelei@jonesday.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| Daniel Joseph Pochoda: | dpochoda@acluaz.org; danpoc@cox.net; gtorres@acluaz.org |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| Jennifer K. Messina: | jkmessina@jonesday.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Kirstin T. Eidenbach: | kirstin@eidenbachlaw.com |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org |

| | |
|---|---|
| 1 | Rita K. Lomio: rlomio@prisonlaw.com |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Timothy J. Bojanowski