Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org
         dpochoda@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia
Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith,
Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner,
Joshua Polson, and Charlotte Wells, on behalf of themselves and all
others similarly situated*

**[ADDITIONAL COUNSEL LISTED BELOW]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
         adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED BELOW]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-DKD |
| Plaintiffs, | **DECLARATION OF PABLO STEWART, M.D.** |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

**I, PABLO STEWART, M.D., DECLARE:**

1.      I am a physician licensed to practice in California and Hawaii and a board-certified psychiatrist, with a specialty in clinical and forensic psychiatry.  My background and experience as relevant to my expert testimony in this proceeding have previously been provided to the Court. (*See* Doc. 1538-1 at 3-6).

2.      I have reviewed the rates of refusal for group programming (for the SMI population this includes 10 hours of unstructured time; and the out-of-cell group programming required under the Stipulation each week), and exercise time for those members of the isolation population in this case who are seriously mentally ill (SMI).  *See* Exhibit 1 (a chart of monthly rates of refusal for recreation and programming time for both the SMI and non-SMI max custody population in ADC based on data from compliance documentation provided by Defendants, created by Plaintiffs' counsel, and provided for my review).  In a clinical setting, we expect some occasional refusals from an SMI population, but aggregate rates of refusal for the population above 30% to 40% must be addressed as a clinical failure (indicator of less than adequate clinical care), as must persistent patterns of refusal in individual patients.  In the Arizona Department of Corrections (ADC), the extremely high rate of refusals for both programs and out-of-cell time and the pervasiveness of the refusals over time and at multiple facilities raise serious concerns from a clinical perspective.  Most facilities for most months are recording refusal rates over 50% and several reach 70% or greater for program refusals, and 80 to 90% for out-of-cell exercise refusals.  Such refusal rates are stunning in any population, and also undermine any contention that provisions to ameliorate damaging levels of isolation for individuals with SMI are being successfully implemented by ADC.

3.      The high rate of refusals across the various activities in the SMI isolation population indicated in Exhibit 1 is a clear clinical red flag.  As an initial matter, such refusal rates are strong evidence that the SMI population is undertreated and subjected to inadequate mental health care as a whole.  The medical literature, often termed "adherence to treatment," supports the fact that sicker patients tend to have the most

difficulty with treatment regimes.  For psychiatric patients, refusals of treatment tend to be correlated to higher levels of acuity.  In other words, the sicker the mental health patient, the more likely s/he is to refuse treatment.  Given my first-hand knowledge of ADC's mental health care system developed during the course of this litigation, inspection of facilities, interviews with prisoners and staff, and review of medical records and other documents, I am certain that the acuity of mental health problems in the prisoner population and the lack of adequate mental health treatment is one of the underlying factors leading to the high rates of program and out-of-cell time refusal in the isolation units.

4.      If program and socialization activities were refused at the rates recorded for the SMI isolation population in ADC at a comparable clinical setting in the community, there would be an immediate response by the mental health care staff to reduce the refusal rate.  Such refusal rates would be seen as a clinical failure (an indicator of less than adequate clinical care) immediately subject to a quality assurance process to determine the factors causing the refusal rates and proposals for corrective action.

5.      In addition to patient acuity and inadequate mental health care, other typical causes for high refusal rates in a correctional mental health setting include the clinical activities occurring in a non-confidential setting; the time of the treatment program interfering with other activities (e.g., commissary, yard time, visiting, etc.); the quality of the programming being poor, including poor skill sets of the clinician; previous attendance in the same group program in the recent past; the group not being pertinent to the inmate's mental illness; the inmate being too disorganized to participate (often indicating a need for a higher level of care); the lack of a positive relationship with the treatment provider; custody staff discouraging people from coming out of their cells; fear of officers or other inmates and the failure to create a safe environment for the patient. Often, high refusal rates are a combination of clinical and custody staff factors that undermine the participation of individuals with SMI in their own treatment.

6.      A key intervention to promote adherence to treatment is to ensure positive relationships with treatment providers.  The medical literature establishes that a lack of a positive relationship between patient and clinician is often a key driver of refusals and non-adherence across medical practice.  In the ADC refusal rate data, Perryville-Lumley (SMA) has some months with unacceptably high refusal rates for programming, but that facility has generally performed better than the others in 2016.  *See* Ex. 1 at 2.  The population at Perryville-Lumley (SMA) is much smaller than the other isolation facilities and this likely allows clinicians to engage more readily in the type of relationship-building between clinician and patient necessary for effective treatment of individuals with SMI.  Amongst other issues to consider, ADC should evaluate clinical resources as part of an effort to address the patterns of treatment refusals in the SMI population.

7.      For individuals with SMI who are subjected to isolation conditions, refusal to adhere to care and refusal to socialize or leave one's cell can sometimes be a symptom of their disease.  But it is not acceptable for mentally ill inmates to regularly refuse to leave their cells to participate in care and activities.  These are symptoms of uncontrolled, undertreated disease that must be addressed.  It is incumbent upon the clinicians, and the staff as a whole, to address the factors undermining the care and treatment of these patients.  Failure to work with SMI individuals to ensure they adhere to treatment is unacceptable medical practice in both corrections and the community.  Indeed, failure to reduce refusals and establish adherence to treatment creates an unacceptable risk of harm for the SMI population in isolation; their diseases will likely get worse if they continue to go untreated and undertreated.

8.      In my opinion ADC must take immediate action to reduce the refusal rates substantially in the SMI population in isolation.  ADC should immediately undertake a quality assurance process to identify likely causes of the refusals, including both medical and custody issues.  Given the persistence of the refusals over time and the widespread nature of the refusal rates across facilities it is also my opinion that the system needs

outside expert guidance on how to identify the underlying problems and what corrective actions to take to effectively reduce the rates of refusal.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this first day of February, 2017.

Pablo Stewart, M.D.

1

**ADDITIONAL COUNSEL:**

2          David C. Fathi (Wash. 24893)*
           Amy Fettig (D.C. 484883)**
3          Jamelia Natasha Morgan (N.Y.
           5351176)**
           **ACLU NATIONAL PRISON**
4          **PROJECT**
           915 15th Street N.W., 7th Floor
5          Washington, D.C. 20005
           Telephone:  (202) 548-6603
6          Email:      dfathi@npp-aclu.org
                       afettig@npp-aclu.org
7                      jmorgan@aclu.org

8          *Admitted *pro hac vice*.  Not admitted
            in DC; practice limited to federal
9           courts.
            **Admitted *pro hac vice*

10
            Daniel C. Barr (Bar No. 010149)
11          Amelia M. Gerlicher (Bar No. 023966)
            John H. Gray (Bar No. 028107)
12          **PERKINS COIE LLP**
            2901 N. Central Avenue, Suite 2000
13          Phoenix, Arizona 85012
            Telephone:  (602) 351-8000
14          Email:      dbarr@perkinscoie.com
                       agerlicher@perkinscoie.com
15                     jhgray@perkinscoie.com

16          Kathleen E. Brody (Bar No. 026331)
            Daniel Pochoda (Bar No. 021979)
17          **ACLU FOUNDATION OF**
            **ARIZONA**
18          3707 North 7th Street, Suite 235
            Phoenix, Arizona 85013
19          Telephone:  (602) 650-1854
            Email:      kbrody@acluaz.org
20                     dpochoda@acluaz.org

21          Kirstin T. Eidenbach (Bar No. 027341)
            **EIDENBACH LAW, P.C.**
22          P. O. Box 91398
            Tucson, Arizona 85752
23          Telephone:  (520) 477-1475
            Email:      kirstin@eidenbachlaw.com

24

25

26

27

28

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:     dspecter@prisonlaw.com
           ahardy@prisonlaw.com
           snorman@prisonlaw.com
           ckendrick@prisonlaw.com

*Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:     cnmitchell@jonesday.com
           aamiri@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:     jlwilkes@jonesday.com

*Admitted *pro hac vice*

Jennifer K. Messina (N.Y. 4912440)*
**JONES DAY**
222 East 41 Street
New York, New York 10017
Telephone:  (212) 326-3498
Email:     jkmessina@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR
DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:    skader@azdisabilitylaw.org
              adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR
DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone:  (520) 327-9547
Email:
     rdalyrooney@azdisabilitylaw.org
         jrico@azdisabilitylaw.org
         jross@azdisabilitylaw.org
         mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability
Law*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 22, 2017, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

s/ D. Freouf