1  Kathleen E. Brody (Bar No. 026331)
   Daniel Pochoda (Bar No. 021979)
2  **ACLU FOUNDATION OF ARIZONA**
   3707 North 7th Street, Suite 235
3  Phoenix, Arizona 85013
   Telephone:  (602) 650-1854
4  Email: kbrody@acluaz.org
         dpochoda@acluaz.org
5
   *Attorneys for Plaintiffs Shawn Jensen, Stephen*
6  *Swartz, Sonia Rodriguez, Christina Verduzco,*
   *Jackie Thomas, Jeremy Smith, Robert Gamez,*
7  *Maryanne Chisholm, Desiree Licci, Joseph*
   *Hefner, Joshua Polson, and Charlotte Wells, on*
8  *behalf of themselves and all others similarly*
   *situated*
9  **[ADDITIONAL COUNSEL LISTED ON**
   **SIGNATURE PAGE]**
10

11                 UNITED STATES DISTRICT COURT

12                      DISTRICT OF ARIZONA

13  Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-DKD
    Dustin Brislan; Sonia Rodriguez; Christina
14  Verduzco; Jackie Thomas; Jeremy Smith; Robert
    Gamez; Maryanne Chisholm; Desiree Licci; Joseph    **PRISONER PLAINTIFFS'**
15  Hefner; Joshua Polson; and Charlotte Wells, on      **MOTION AND**
    behalf of themselves and all others similarly       **MEMORANDUM IN**
16  situated; and Arizona Center for Disability Law,    **SUPPORT OF MOTION**
                                                        **FOR PRELIMINARY**
17                    Plaintiffs,                       **INJUNCTION**

18       v.

    Charles Ryan, Director, Arizona Department of
19  Corrections; and Richard Pratt, Interim Division   **ORAL ARGUMENT**
    Director, Division of Health Services, Arizona      **REQUESTED**
20  Department of Corrections, in their official
    capacities,
21
                      Defendants.
22

23

24

25

26

27

28

<u>**MOTION FOR PRELIMINARY INJUNCTION**</u>

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Shawn Jensen seeks to preliminarily enjoin Defendants from denying him critical medical care for his life-threatening disease.  Prisoner Plaintiffs respectfully request this Court to issue an order requiring Defendants to stop denying his urologist's request for a full body scan with x-rays and to stop preventing his medical providers from developing a medical treatment plan based upon the body scan results.

This Motion is based on the accompanying Memorandum; the Report of Todd Randall Wilcox, M.D., M.B.A., C.C.H.P.-A, dated February 23, 2017 attached hereto as Exhibit A; and on the argument of counsel, the documents on file in this case, and such other evidence as may be presented at or before any hearing.

<u>**MEMORANDUM**</u>

**I.      INTRODUCTION**

Named Plaintiff Shawn Jensen is 68 years old.  He suffers from prostate cancer that has metastasized and is now life-threatening.  Prisoner Plaintiffs seek a preliminary injunction to stop Defendants from preventing him from receiving medically necessary care for his cancer.  Defendants' policy and practice of denying Mr. Jensen his medically necessary full body scan with x-rays is preventing Mr. Jensen's medical team from staging his cancer and developing a treatment plan for his life-threatening condition, and denies him his right to be free from cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

**II.     STATEMENT OF FACTS**

As explained at length in Dr. Todd Wilcox's Expert Reports (Doc. 1104-1, Exs. 4-6), and in his updated February 23, 2017 report attached hereto, Mr. Jensen's medical care in the ADC for his life-threatening cancer has for years been marked by lengthy and inexcusable delays and a failure to develop any kind of coherent treatment plan. Mr. Jensen's situation is now extremely dire.  His urologist has recommended that he have a bone scan on an urgent basis so that his cancer can be "re-staged."  Staging is the

1    process of determining the extent of disease and the risk for recurrence.  It allows for

2    development of a treatment plan based on those risks.  At this point, a bone scan is

3    critical, and Mr. Jensen's treatment plan cannot be developed without one.   On

4    February 16, 2017, however, Defendants' health care contractor, Corizon, denied the bone

5    scan.  Accordingly, Prisoner Plaintiffs seek an immediate order requiring Defendants to

6    provide a bone scan and develop a treatment plan for Mr. Jensen.

7         Plaintiffs' Expert Dr. Todd Wilcox has reviewed Mr. Jensen's medical record on

8    several occasions, and has repeatedly placed Defendants on notice of Mr. Jensen's serious

9    medical needs.  [*See* Wilcox Report, Nov. 3, 2013, Doc 1104-1 at 267 (Mr. Jensen

10   suffered "severe complications" after radical prostatectomy in 2010); Wilcox Rebuttal

11   Report, Jan. 31, 2014, Doc 1104-1 at 328-329 (noting defendants took three years to

12   perform a biopsy after Mr. Jensen's initial lab test suggesting cancer); Wilcox

13   Supplemental Report, April 2, 2014, Doc 1104-1 at 357-364 (Expert "alarmed" to find

14   that defendants had failed to develop a treatment plan for Mr. Jensen, who had been

15   showing signs of cancer recurrence for a year)]

16        In his April 2014 Report, Dr. Wilcox set forth additional information about

17   Mr. Jensen's diagnosis:

18
19
20
21
22
23
24
> Prostate cancer is the second leading cause of cancer death in American men, behind only lung cancer, killing approximately 30,000 men a year.  While prostate cancer grows more slowly than other cancers, this does not mean that it should be ignored or untreated.   It is a type of cancer that often metastasizes to nearby internal organs and the bones, and can result in devastating and crippling injuries or death.   For example, prostate cancer, if untreated, can metastasize to the liver, causing acute liver failure, which is incredibly painful and usually results in death.  Additionally prostate cancer cells often metastasize to the bones closest to the prostate: the hips, pelvis, spine, or femur (thighbone).

25   [Doc 1104-1 at 358]  Following treatment for prostate cancer, Dr. Wilcox explained,

26   patients should have their serum prostate specific antigen (PSA) measured every three

27   months to detect possible cancer recurrence, as many recurrences following initial

28   treatment can be treated successfully.  [*Id.*]  Certain risk factors are associated with a

1    greater likelihood of recurrence, and with a more aggressive form of prostate cancer.

2    Those factors include being older and overweight.  Mr. Jensen has both risk factors.  [*Id.*

3    at 359]

4       In April 2014, Dr. Wilcox wrote that, despite Mr. Jensen's significant risk factors

5    for cancer recurrence, Defendants had failed to appropriately monitor him, and after he

6    showed signs of relapse, failed to provide him with necessary treatment.  [*Id.* at 359]

7    Dr. Wilcox found that Defendants failed to perform PSA tests every three months, and it

8    appears he had had only two such tests between 2010 and 2013.  [*Id.*]  One test showed

9    his PSA test results were twelve times higher than would have been the normal limit

10   following a prostatectomy.  [*Id.*]  Dr. Wilcox opined that Defendants should have

11   immediately referred Mr. Jensen to a qualified specialist for examination to develop a

12   treatment plan.  [*Id.*]

13      According to Dr. Wilcox, the two most common options would be to either provide

14   full pelvic radiation therapy or androgen deprivation therapy, such as Lupron.  [*Id*. at 359-

15   360]  But neither of these options was provided.  [*Id.* at 360]  Instead, throughout 2013,

16   Mr. Jensen saw several different urologists, one of whom recommended Lupron, and

17   underwent two bone scans, but still no treatment plan was initiated, despite the fact that

18   his PSA continued to rise.  [*Id.* at 360-361]

19      Dr. Wilcox found that, as of January 24, 2014, Mr. Jensen had not seen an

20   oncologist or had a cancer treatment developed.  He concluded that Mr. Jensen's case had

21   been dangerously mismanaged, disorganized, and delayed, and fell well below the

22   standard of care.  [*Id.* at 363]

23      Three years later, Dr. Wilcox again reviewed Mr. Jensen's record.  He found that

24   virtually nothing about the patient's care had changed.  He had seen several different

25   urologists, which further fragmented his care in that none of the current consultants

26   seemed to have records or complete history relevant to Mr. Jensen's prostate cancer.

27   When these records were requested, follow up would then change to a different urologist

28

1    who would either overlook the prostate cancer issue or request records to understand his

2    previous treatment.

3    **III.    LEGAL STANDARD**

4    "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to

5    succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of

6    preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an

7    injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 555

8    U.S. 7, 129 S. Ct. 365, 374 (2008).  Under the Ninth Circuit's sliding scale approach, a

9    stronger showing of one of these elements may offset a weaker showing of another, and

10   thus "serious questions going to the merits and a balance of hardships that tips sharply

11   towards the plaintiff can support issuance of a preliminary injunction, so long as the

12   plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is

13   in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131,

14   1135 (9th Cir. 2011) (internal quotations omitted).

15   **IV.    ARGUMENT**

16   The Court should grant a preliminary injunction because Plaintiff has an

17   overwhelming likelihood of success on the merits.   There can be no dispute that

18   Mr. Jensen's metastasized prostate cancer constitutes a serious medical need.  Defendants'

19   refusal to provide medically necessary treatment, including the critical diagnostic bone

20   scan, constitutes deliberate indifference in violation of the Eighth Amendment.   The

21   balance of hardships tips sharply in Plaintiff's favor, and an injunction is clearly in the

22   public interest.

23         **A.    Plaintiff Has an Overwhelming Likelihood of Success on the Merits of**
            **His Claim that Defendants have been Deliberately Indifferent to His**
24         **Serious Medical Need in Violation of the Eighth Amendment.**

25   It is well-established that "deliberate indifference to serious medical needs of

26   prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the

27   Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation

28   omitted).  Such indifference may be "manifested by prison doctors in their response to the

-4-

1  prisoner's needs…." *Id.*  In the Ninth Circuit, a plaintiff alleging deliberate indifference

2  must first "show a serious medical need by demonstrating that failure to treat a prisoner's

3  condition could result in further significant injury or the unnecessary and wanton

4  infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle*,

5  429 U.S. at 104) (internal quotation marks omitted).  Second, he or she "must show the

6  defendant's response to the need was deliberately indifferent." *Id.*  This second prong "is

7  satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or

8  possible medical need and (b) harm caused by the indifference." *Id.*

9

10  ### 1.   Mr. Jensen's Metastatic Cancer Constitutes a Serious Medical Need

11  Mr. Jensen will undoubtedly succeed in demonstrating that his metastatic cancer

12  constitutes a serious medical need.  The failure to treat his cancer will result in serious

13  harm: according to Dr. Todd Wilcox, who has reviewed Mr. Jensen's medical records

14  repeatedly over the last three years, Mr. Jensen's cancer is life-threatening, will continue

15  to spread and could kill him if he is not treated.  [Ex. A generally]  It is difficult to

16  imagine a more serious medical need.

17

18  ### 2.   Defendants Have Been Deliberately Indifferent to Mr. Jensen's Need for Medical Care

19  Plaintiff's showing that Defendants have been deliberately indifferent to his needs

20  is likewise overwhelming.  "[D]eliberate indifference to medical needs may be shown by

21  circumstantial evidence when the facts are sufficient to demonstrate that a defendant

22  actually knew of a risk of harm." *Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir.

23  2003) (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

24  For the last seven years since his prostatectomy, Mr. Jensen has been seen by

25  multiple primary care providers and by consultants who are all aware of this cancer

26  diagnosis. [Ex. A at 1-3]  For more than three years, Dr. Wilcox's reports have repeatedly

27  informed Defendants of the life-threatening deficiencies in Mr. Jensen's care.

28

1

2

**B.      Plaintiff Has Suffered and Will Continue to Suffer Irreparable Harm if Defendants Fail to Provide the Necessary Treatment for his Prostate Cancer**

3      Mr. Jensen has already suffered irreparable harm, and continued failure to perform

4   necessary tests and develop an adequate treatment plan will likely result in the spread of

5   his cancer, and possibly his death.

6

7

**C.      The Balance of Hardships Tips in Plaintiffs' Favor and a Preliminary Injunction is in the Public Interest.**

8      The balance of hardships tips sharply in Plaintiff's favor as he continues to suffer

9   serious and irreversible harm so long as Defendants deprive him of medically necessary

10   care for his cancer.   The hardship placed on Defendants by requiring them to provide

11   medically necessary care is infinitesimal when compared with the hardship Mr. Jensen

12   faces if denied medically necessary care.

13      The rule in the Ninth Circuit is that "serious questions going to the merits and a

14   balance of hardships that tips sharply towards the plaintiff can support issuance of a

15   preliminary injunction, so long as the plaintiff also shows that there is a likelihood of

16   irreparable injury and that the injunction is in the public interest." *See Alliance for the*

17   *Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotations

18   omitted).   Those showings have been made here on all counts, and the Court should issue

19   a preliminary injunction.[1]

20      A preliminary injunction is also in the public interest, as the Ninth Circuit has

21   made clear that "'it is always in the public interest to prevent the violation of a party's

22   constitutional rights.'"   *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting

23

24   [1]   The Court should not require Plaintiffs to post a bond under Federal Rule of Civil Procedure 65(c).   Rule 65(c) vests district courts with "discretion as to the amount of security required, *if any*."   *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)

25   (plaintiffs in public-interest litigation only required to post "a nominal amount"); *see also Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (no bond required absent

26   showing of "realistic likelihood of harm to the defendant from enjoining his or her conduct").   Requiring a bond in this litigation, brought in the public interest on behalf of a

27   plaintiff with limited financial resources, "would effectively deny access to judicial review."   *California ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d

28   1319, 1325 (9th Cir. 1985).

1    *Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir. 2002)).  "In addition,

2    'the public has a strong interest in the provision of constitutionally-adequate health care to

3    prisoners.'"   *McNearney v. Wash. Dep't Corrs.*, No. C11-5930 RBL/KLS, 2012 WL

4    3545267, at *16 (W.D. Wash. June 15, 2012) (quoting *Flynn v. Doyle*, 630 F. Supp. 2d

5    987, 993 (E.D. Wis. 2009)).   There is no public interest in Mr. Jensen's continued

6    suffering and deterioration.

7                                        **CONCLUSION**

8            Prisoner Plaintiffs respectfully request that the Court issue an order requiring

9    Defendants to (i) approve Mr. Jensen's urologist's request for a full body scan with x-rays

10   and (ii) allow a physician skilled in the management of advanced prostate cancer to

11   completely reconsider all available data in order to properly workup and stage

12   Mr. Jensen's disease and develop a comprehensive treatment plan to be carried out as

13   ordered by the same physician who develops the plan.

14   Dated:  March 1, 2017                          **EIDENBACH LAW, PLLC**

15

16                                       By:   *s/ Kirstin T. Eidenbach*
                                              Kirstin T. Eidenbach (Bar No. 027341)
                                              EIDENBACH LAW, PLLC
17                                            P. O. Box 91398
                                              Tucson, Arizona 85752
18                                            Telephone:  (520) 477-1475
                                              Email:   kirstin@eidenbachlaw.com
19
                                              Donald Specter (Cal. 83925)*
20                                            Alison Hardy (Cal. 135966)*
                                              Sara Norman (Cal. 189536)*
21                                            Corene Kendrick (Cal. 226642)*
                                              Rita Lomio (Cal. 254501)*
22                                            **PRISON LAW OFFICE**
                                              1917 Fifth Street
23                                            Berkeley, California 94710
                                              Telephone:  (510) 280-2621
24                                            Email:    dspecter@prisonlaw.com
                                                        ahardy@prisonlaw.com
25                                                      snorman@prisonlaw.com
                                                        ckendrick@prisonlaw.com
26                                                      rlomio@prisonlaw.com

27                                            *Admitted *pro hac vice*

28

                                            -7-

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Jamelia Morgan (N.Y. 5351176)**
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@npp-aclu.org
           afettig@npp-aclu.org
           jmorgan@aclu.org

*Admitted *pro hac vice*.  Not admitted
 in DC; practice limited to federal
 courts.
**Admitted *pro hac vice*

Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:     kbrody@acluaz.org
           dpochoda@acluaz.org

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:     dbarr@perkinscoie.com
           agerlicher@perkinscoie.com
           jhgray@perkinscoie.com

Caroline Mitchell (Cal. 143124)*
Amir Q. Amiri (Cal. 271224)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:     cnmitchell@jonesday.com
           aamiri@jonesday.com

*Admitted *pro hac vice*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

John Laurens Wilkes (Tex. 24053548)\*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email: jlwilkes@jonesday.com

\*Admitted *pro hac vice*

Jennifer K. Messina (N.Y. 4912440)\*
**JONES DAY**
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3498
Email: jkmessina@jonesday.com

\*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;*
*Stephen Swartz; Sonia Rodriguez; Christina*
*Verduzco; Jackie Thomas; Jeremy Smith;*
*Robert Gamez; Maryanne Chisholm;*
*Desiree Licci; Joseph Hefner; Joshua*
*Polson; and Charlotte Wells, on behalf of*
*themselves and all others similarly situated*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2017, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com

*Attorneys for Defendants*

Sarah Kader
Asim Dietrich
Rose A. Daly-Rooney
J.J. Rico
Jessica Jansepar Ross
Maya Abela
ARIZONA CENTER FOR DISABILITY LAW
skader@azdisabilitylaw.org
adietrich@azdisabilitylaw.org
rdalyrooney@azdisabilitylaw.org
jrico@azdisabilitylaw.org
jross@azdisabilitylaw.org
mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

_s/ D. Freouf_

-10-