# EXHIBIT A

# REPORT OF
# TODD RANDALL WILCOX, M.D., M.B.A.,
# C.C.H.P.-A

*Parsons, et al. v Ryan, et al.*
No. 2:12-cv-00601-NVW
February 23, 2017

134583111.1

Shawn Jensen is a 68 year old man with a history of prostate cancer that has recurred. After many years of poor care, Mr. Jensen has now been denied a diagnostic test that is critical to his ongoing treatment. Without this test, it will be impossible to develop a treatment plan and monitor the efficacy of that treatment for what appears to be recurrence of his cancer, with possible metastases.

I have reviewed Mr. Jensen's care several times over the last three years. In my April 2, 2014 report, I performed an in-depth analysis of Mr. Jensen's care, and concluded that Mr. Jensen's care had been "dangerously mismanaged, disorganized, and delayed, and [fell] well below the standard of care." As of the date of that report, I had found that, more than one year after he had shown signs of cancer recurrence, a medically reasonable treatment plan had not been developed or implemented by a qualified specialist. I reported that this is particularly troubling because Mr. Jensen has at least three risk factors that substantially increase his risk of a cancer recurrence—his age, weight, and reported exposure to Agent Orange.

Having now reviewed his records for the three intervening years, I see that his level of care has only worsened. Since 2014, Mr. Jensen has seen several different urologists, which has further fragmented his care in that none of the current consultants seemed to have records or complete history relevant to Mr. Jensen's prostate cancer. When these consultants requested records, follow up would then change to a different urologist who would either overlook the prostate cancer issue or request records to understand his previous treatment. In the meantime, Mr. Jensen's PSA level (a marker for cancer) has continued to rise steadily, evidence that his cancer may be spreading.

1

Three years ago, in March, 2014, Mr. Jensen saw an oncologist who noted the patient was complaining of hip pain, which could be symptomatic of metastatic disease. The consult recommended an x-ray of the hip, but I found no indication that the x-ray had been done. Three months later, another consultant recommended that the prison primary care provider perform digital rectal exam to check for recurrence of the tumor. Again, I found no indication that this had been done.

Finally, in July 2015, Mr. Jensen saw a urologist who saw that his Lupron had been discontinued, and ordered an injection at that time and every six months thereafter. That urologist also requested from the prison copies of Mr. Jensen's surgical reports from 2010. I found no record indicating that these were ever provided, however. It also appears that Mr. Jensen did not receive Lupron again, after the injection provided on August 24, 2015.

Mr. Jensen saw urologists in May and June 2016 for issues related to his urinary strictures and his catheter. It does not appear that his Lupron treatment or his rising PSA values and likely recurrence of cancer were addressed.

When Mr. Jensen returned to a urologist in January 2017, who noted that Mr. Jensen's last Lupron injection was in 2015 and that he had rising PSA values. He diagnosed him with prostate cancer with metastasis to his spine. He ordered Lupron again, and Casodex, an additional chemotherapy that must be administered with the Lupron. Although the patient appears to be receiving the Casodex, it appears the Lupron injection has not been provided. This is critical to his treatment and will render the Casodex ineffective without it. The dose of his Casodex is 50 mg every day which is the

dose used when Casodex is being used as adjunctive therapy to a primary leutinizing hormone releasing hormone (LHRH analog) therapy. Clearly, he should be on an LHRH analog (i.e, Lupron) but notes in the medical record indicate that this was ordered but never received. The urologist also recommended a whole body scan with x-rays as needed.

On February 16, 2017, Dr. Richard Kosierowski, an oncologist that Corizon contracts with nationally to provide guidance and second opinions regarding care plans for cancer patients in the Corizon system, denied the requested bone scan. He denied that request because he indicates that he does not have sufficient information to make a decision and he requested additional clinical information from Corizon. I cannot understand why Dr. Kosierowski, who is employed by Corizon, does not have full and complete access to the medical records of the patients he is consulting on. In Mr. Jensen's case, the information that Dr. Kosierowski states that he needs (Gleason score, initial PSA after prostatectomy) are readily available in the records that I reviewed remotely in Corizon's own EMR system. Dr. Kosierowski's denial of care recommended by a urologist who is seeing the patient in person because Dr. Kosierowski does not have adequate information to make a decision is the epitome of a completely broken medical system that is putting Mr. Jensen's health in grave jeopardy.

Based on these records, likelihood is very high that Mr. Jensen has had progression of disease, as evidenced by his persistently elevated PSA results that continue to increase. At a minimum, he requires a proper workup and staging. Because Corizon has not consistently provided the recommended Lupron therapy and because

3

Corizon has provided only the adjunct Casodex therapy, it has not even been determined whether Mr. Jensen's prostate cancer is castration sensitive or castration resistant. This is a fundamental determination critical to disease staging and future management. As such, years of opportunity have been squandered because the basic information necessary to determine a treatment plan for Mr. Jensen has not been obtained and analyzed. At this point Mr. Jensen needs a complete reconsideration of all the available data by someone qualified in the management of advanced prostate cancer and a complete re-staging of his disease state. After that is done, he needs a comprehensive treatment plan developed using the information gathered and the treatment plan needs to be carried out as ordered. Whoever develops the treatment plan should be the clinician following the patient for the remainder of his life to ensure that care is continuous, logical, and well-informed.

_____
Todd R. Wilcox, M.D., M.B.A., C.C.H.P.-A

4