# EXHIBIT 1

**P E R F O R M A N C E   M E A S U R E S**

ARIZONA DEPARTMENT OF CORRECTIONS

Health Services Contract Monitoring Bureau

# Monitor Guide Duties & Responsibilities

1

Draft Revised: 3/1/1710/31/4601-2349-17

**Formatted:** Right

**P E R F O R M A N C E   M E A S U R E S**



**Formatted:** Right

Draft Revised: 3/1/17~~10/31/16~~01-23~~19-17~~

**P E R F O R M A N C E   M E A S U R E S**

ARIZONA DEPARTMENT OF CORRECTIONS
HEALTH SERVICES CONTRACT MONITORING BUREAU

# Monitor Guide

March 1,February 17January 23,19, 2017
Arizona Department of Corrections
1831 W. Jefferson
Phoenix, AZ  85007
Phone 602.255.2468

Draft Revised: 3/1/172/1/31/4601-23,19-17

**Formatted:** Right

Max Custody Performance Measure No. 01
Stipulation Category: Max Custody (01)

**CGAR Category: Max Custody**

**Performance Measure:**

All maximum custody prisoners at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max who are eligible for participation in DI 326 are offered a minimum of 7.5 hours out-of-cell time per week.   Those at Step II are offered a minimum of 8.5 hours out-of-cell time per week, and those at Step III are offered a minimum of 9.5 hours out-of-cell time per week.

**Formatted:** No widow/orphan control

**CGAR Question:**

Are all maximum custody prisoners at Eyman--Browning, Eyman--SMU I, Florence- Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max who are eligible for participation in DI 326 offered a minimum of 7.5 hours out-of-cell time per week? Are those at Step II offered a minimum of 8.5 hours out-of-cell time per week, and those at Step III offered a minimum of 9.5 hours out-of-cell time per week?

**Formatted:** No widow/orphan control

**Source of Records/Review:**

Random number generator printout; Maximum Custody Excel Spreadsheet form/printout ("Overview"); unit count sheets; memo(s) documenting substitution of one randomly selected inmate for another inmate; Max Custody and/or (SMI) Mental Health Monthly (Program) Activity Schedule(s); Maximum Custody Daily Out of Cell Time Tracking Forms for ten (10) randomly selected inmates (ADC Form #801-19); Warden's Certification(s) attesting that a particular inmate was excluded from participation in DI 326 programming and/or activities for applicable randomly selected inmate(s) (if applicable); Incident Report (IR) documenting cancellation of activity not made up on the same day (if applicable); AIMS data (if applicable).

**Methodology:**

a. The ADC Division Director of Offender Operations, or designee, randomly selects the week to be used for monitoring on the seventh day (rolling forward if the seventh day is a weekend or State of Arizona holiday) of the following month using a random number generator, such as random.org or other randomizing methodology.  In this way, the last week of a month shall remain eligible for monitoring even if some of the days of the week fall within two different months. Notice of the selected week to be monitored shall be distributed for the prior month on the seventh day of the following month (or the next State of Arizona business day thereafter if the seventh day of the month is not a business day) (e.g., the week to be monitored for January will be announced on the

**Formatted:** Right

4

seventh day of February (or the next business day thereafter if the seventh of February is not a State of Arizona business day).

The count sheets for the unit are used to determine the pool of eligible inmates.  The total number of inmates eligible for DI 326 is then divided by ten, and every nth inmate is reviewed.  If a randomly selected inmate was not present in the unit for the full seven (7) days of the monitoring week, that inmate's records are not reviewed and the inmate either directly above or below the randomly selected inmate who was on the unit for the full seven (7) days is used.  The Maximum Custody Daily Out of Cell Time Tracking Form for the specified monitoring week is reviewed for each of the ten randomly selected inmates.

b.   At each designated location, Maximum Custody Daily Out of Cell Time Tracking Forms are reviewed for the one randomly selected week for each monitored month, for the ten (10) randomly selected inmates.  Step levels for each inmate are noted and compliance with MC PM #1 for each inmate is determined.  Beginning and ending times for all out of cell time must be noted on the Maximum Custody Daily Out of Cell Time Tracking Form unless an inmate refuses that time offered.  In the case of a refusal, the refusal, should be recorded on the front of the Tracking Form and the amount of time refused should be documented in the "Comments" section on the back side of the individual inmate's out-of-cell tracking form. If the amount of time is not recorded in the "Comments", the Monitor must check the prisoner's Maximum Custody Daily Out of Cell Tracking Form and compare it with the Maximum Custody Activity Schedule and/or SMI Mental Health Monthly (Program) Activity Schedule (where applicable) to determine the amount of out of cell time refused and indicate that such a comparison was performed in the monitoring documentation.  If the refusal time is not properly documented or cannot be confirmed through a comparison of the unit schedules, the out-of-cell time/programming will not count towards compliance with the Performance Measure.

c.   When an inmate refuses out-of-cell time/programming, the refusal must be documented on the Out-of-Cell Tracking form and the personnel to whom the inmate stated the refusal must note the refusal and amount of time refused in the Comments section on the back of the Out of Cell Tracking form, and contemporaneously sign the same.  The beginning time of the refused out-of-cell time should be documented on the Out of Cell Tracking form with an "R" next to the beginning time indicating a refusal (end time for refused out-of-cell time is not documented on the front of the Out of Cell Tracking form). Either the inmate or a second staff member should sign the Comments section on the back of the Out of Cell Tracking form where feasible considering safety/security/operational concerns, to verify the refusal. In the event of an extended

5

**Formatted:** Right

pattern of refusals or changed behavior; supervisory personnel shall have a discussion with an inmate regarding refused out-of-cell time and shall document the date and nature of the conversation in the comments section on the back of the Maximum Custody Daily Out of Cell Tracking Form, including, when provided, inmate comments as to refusal or refusals.

d.   The reviewer notes the step level for each inmate in order to determine the minimum amount of out of cell time the inmate should have been afforded during the monitoring week.   This minimum amount of time is compared against the actual amount of time recorded on each inmate's Maximum Custody Daily Out of Cell Time Tracking Form. If the required amount of time for the inmate's step level is not met, there is a finding of non-compliance for that record.

e.   If an inmate selected for this measure is designated Seriously Mentally Ill, SMI time required under MC PM #8 should not be double-counted towards compliance with this measure. However, where a SMI inmate receives hour(s) of unstructured out-of-cell time per week in excess of ten (10) hours separately required by MC PM #8, time that exceeds the MC PM #8 ten (10) hour requirement for unstructured out-of-cell time may be counted towards the minimum out-of-cell time required under this MC PM #1.

**Formatted:** Right

Max Custody Performance Measure No. 02
Stipulation Category: Max Custody (02)

**CGAR Category: Max Custody**

| **Performance Measure:** |
| --- |
| All maximum custody inmates at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max who are eligible for participation in DI 326 are offered at least one hour of out-of-cell group programming a week at Step II and Step III. |

| **CGAR Question:** |
| --- |
| Are all maximum custody inmates at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max who are eligible for participation in DI 326 offered at least one hour of out-of-cell group programming a week at Step II and Step III? |

| **Source of Records/Review:** |
| --- |
| Max Custody and/or (SMI) Mental Health Monthly (Program) Activity Schedule(s); Maximum Custody Daily Out of Cell Time Tracking Form; Max Custody and/or (SMI) Mental Health Monthly Programming Attendance/Sign-In Sheets (containing inmate signature or the relevant AIMS data demonstrating a prisoner's attendance). |

| **Methodology:** |
| --- |
| a.  The records of the inmates selected for MC PM #1 are also reviewed for this performance measure.  The same week is also reviewed. |
| b.  At each designated location, Maximum Custody Daily Out of Cell Time Tracking Forms are reviewed for the one randomly selected week for each monitored month for the ten (10) randomly selected inmates.  The Maximum Custody Daily Out of Cell Time Tracking Forms are reviewed to determine if the Step II and Step III inmates were afforded one hour of group programming during the monitoring week.  Beginning and ending times for the group programming should be noted on the Tracking Form unless the inmate refuses that time.  In the case of a refusal, the refusal should be recorded on the front of the Tracking Form and the amount of time refused should be documented in the "Comments" section on the back side of the individual inmate's Out of Cell Tracking Form. If the amount of time is not recorded in the "Comments", the Monitor |

7

**Formatted:** Right

must check the inmate's Maximum Custody Daily Out of Cell Tracking Form and the Maximum Custody Activity Schedule and/or SMI Mental Health Monthly (Program) Activity Schedule (where applicable) to determine the amount of out-of-cell time/programming time refused and indicate that such a comparison was performed in the monitoring documentation. If the refusal time is not properly documented or cannot be confirmed through a comparison of the unit schedule, the out-of-cell time/programming will not count towards compliance with the Performance Measure.

c.   When an inmate refuses out-of-cell time/programming, the refusal must be documented on the Out of Cell Tracking form and the personnel to whom the inmate stated the refusal must note the refusal and amount of time refused in the Comments section on the back of the Out of Cell Tracking form, and contemporaneously sign the same.. The beginning time of the refused out-of-cell time should be documented on the Out of Cell Tracking form with an "R" next to the beginning time indicating a refusal (end time for refused out-of-cell time is not documented on the front of the Out of Cell Tracking form). Either the inmate or a second staff member should sign the Comments section on the back of the Out of Cell Tracking form where feasible considering safety/security/operational concerns, to verify the refusal. In the event of an extended pattern of refusals or changed behavior; supervisory personnel shall have a discussion with an inmate regarding refused out-of-cell time and shall document the date and nature of the conversation in the comments section on the back of the Maximum Custody Daily Out of Cell Tracking Form, including, when provided, inmate comments as to refusal or refusals..

d.   At each designated location, Max Custody and/or (SMI) Mental Health Monthly Programming Attendance/Sign-In Sheets for Step II and III are compared against the group programming recorded in the Maximum Custody Daily Out of Cell Time Tracking Forms of the ten (10) randomly selected inmates to confirm that the inmates attended the programs indicated. Reviewers must confirm that each selected inmate attended the group program by review of Max Custody and/or (SMI) Mental Health Monthly (Program) Activity Schedule(s); Maximum Custody Daily Out of Cell Time Tracking Form; Max Custody and/or (SMI) Mental Health Monthly Programming Attendance/Sign-In Sheets; and/or AIMS data. Failure to confirm actual attendance leads to a finding of non-compliance for that record. A determination of actual attendance may be achieved by comparison of (1) either Max Custody/Mental Health Monthly (Program) Activity Schedule(s) and/or Maximum Custody Daily Out of Cell Time Tracking Form, and (2) either Max Custody and/or (SMI) Mental Health Monthly Programming Attendance/Sign-In Sheets and/or AIMS data or other available documentation.

**Formatted:** Right

| PERFORMANCE MEASURES

Max Custody Performance Measure No. 03
Stipulation Category: Max Custody (03)

**CGAR Category: Max Custody**

---

**Performance Measure:**

All out-of-cell time specified in Outcome Measures 1, 2, 8 that is limited or cancelled is properly documented and justified in accordance with the terms of the Stipulation as set forth in ¶ 26 of the Stipulation.

---

**CGAR Question:**

Is all out-of-cell time specified in Outcome Measures 1, 2, 8 that is limited or cancelled properly documented and justified in accordance with the terms of the Stipulation as set forth in ¶ 26 of the Stipulation, which requires the following:

- If such out of cell time is cancelled for legitimate operational or safety and security reasons, such as an unexpected staffing shortage, inclement weather or facility emergency lockdown, then reasonable efforts are made to make up such out of cell time at another date/time.

- If an individual's out of cell time is canceled or limited, then a Warden or his/her designee if the Warden is not available, certifies in writing that allowing that prisoner such out of cell time would pose a significant security risk. Such certification shall expire after thirty (30) days unless renewed in writing by the Warden or his/her designee.

---

**Source of Records/Review:**

Maximum Custody Daily Out of Cell Time Tracking Forms for the ten (10) inmates randomly selected for the month, for the monitoring week; any IRs, or if no IR then other documentation generated during the monitoring week pertaining to the cancellation or limitation of out-of-cell time is reviewed; documentation of out of cell time made up is also reviewed.

Warden Certification of individual security risk necessitating limitation or cancellation where applicable to randomly selected prisoner.

---

**Methodology:**

a. The records of the inmates selected for MC PM #1 are also reviewed for this performance measure. The same week is also reviewed.

b. The records of the inmates selected for MC PM #8 are also reviewed for this

---

**Formatted:** Right

performance measure.  The same week is also reviewed.

c.   Any cancelled activities required by MC PM #1, #2 and #8 must be  documented in an Information Report (IR).  If out-of-cell programming or activities are cancelled but made up on the same day, an Information (IR) is not required if the time is equivalent.

d.   If there are any cancellations/limitations of out-of-cell time, it is first determined whether it was for legitimate operational or safety and security reasons, such as, but not limited to, an unexpected staffing shortage, inclement weather, or facility emergency lockdown.  The reason  for  any  cancellation/limitation  of  out-of-cell  time  is  documented  in  an Information Report (IR).  A reason other than for legitimate operational or safety and security reasons for cancellation requires a finding of non-compliance.  However, where there is a cancellation or limitation for any reason, and the time is made up, this shall result in a finding of compliance.   These findings are documented in the monthly Monitoring Overview for this Performance Measure.

e.   Next it is determined if reasonable steps were taken to make up the out-of-cell time and/or activity.  If no steps were taken to make up the required out-of-cell time and/or activity, the reason is documented.  If the reviewer concludes that reasonable steps could have been taken, this is the basis for a finding of non-compliance.  Insufficient time remaining at the end of a week to make up the out-of-cell time and/or activity is a basis for a finding of compliance (not for a finding of non-compliance).  These findings are documented in the monthly Monitoring Overview for this Performance Measure.

f.   If an individual inmate's required out of cell time under DI 326 is cancelled or limited and is not made up, the complex Warden, or designee, will write a Warden's Certification documenting that allowing such an inmate out-of-cell time would pose a significant security risk.  The lack of such a certification will lead to a finding of non-compliance. The time frame for a Warden's Certification is reviewed to determine whether it is current.  Any Warden's Certification with a date further out than one calendar month is "expired" and leads to a finding of noncompliance.  The Warden's Certification and the findings of compliance/non-compliance for this measure are documented in the monthly Monitoring Overview for this Performance Measure.

**Formatted:** Right

**P E R F O R M A N C E   M E A S U R E S**

**Max Custody Performance Measure No. 04**

**Stipulation Category: Max Custody (04)**

**CGAR Category: Max Custody**

| |
|---|
| **Performance Measure:** |
| All maximum custody prisoners receive meals with the same caloric and nutritional content as meals served to other ADC prisoners. |
| **CGAR Question:** |
| Are all maximum custody prisoners receiving meals with the same caloric and nutritional content as meals served to other ADC prisoners? |
| **Source of Records/Review:** |
| Max Custody Weekly Cycle Menu (Level 5); Food Vendor Monthly Statement of Nutritional Adequacy |
| **Methodology:** |
| a.  At each designated location, the Max Custody Weekly Cycle Menu (Level 5)  are selected for each monitored month. |
| b.  The Food Vendor Monthly Statement of Nutritional Adequacy is reviewed to determine whether it certifies that maximum custody inmates are receiving meals with the same caloric and nutritional content as those in lower custody areas on a monthly basis (2700 calories for Adult Male Menus and 2200 calories for Adult Female Menus) and includes the average daily caloric level for the month.  If the Weekly Cycle Menu (Level 5) is not certified as having the same caloric and nutritional content as those in lower custody, there is a finding of non-compliance.  The memo produced by the contracted Food Vendor is uploaded into the CGAR. |

**Formatted:** Right

Max Custody Performance Measure No. 05
Stipulation Category: Max Custody (05)

**CGAR Category: Max Custody**

| |
|---|
| **Performance Measure:**<br><br>All maximum custody prisoners at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max are offered a minimum of 6 hours of out-of-cell exercise time a week. |
| **CGAR Question:**<br><br>Are all maximum custody prisoners at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max offered a minimum of 6 hours of out-of-cell exercise time a week? |
| **Source of Records/Review:**<br><br>Max Custody and/or (SMI) Mental Health Monthly (Program) Activity Schedule(s); Maximum Custody Daily Out of Cell Time Tracking Forms. |
| **Methodology:**<br><br>  a.  The records of the inmates selected for MC PM #1 are also reviewed for this performance measure.  The same week is also reviewed.<br><br>  b.  At each designated location, the Maximum Custody Daily Out of Cell Time Tracking Forms are reviewed for compliance with this measure.  Each record is reviewed to determine whether each inmate was provided or offered a minimum of six hours of out-of-cell exercise/recreation during the monitoring week.  If an inmate is afforded less than 6 hours of recreation time per week this will result in a finding of non-compliance.<br><br>  **c.**  Beginning and ending times for all out-of-cell recreation time must be noted on the Maximum Custody Daily Out of Cell Time Tracking Form unless an inmate refuses that time offered.  In the case of a refusal, the refusal, should be recorded on the front of the Tracking Form and the amount of time refused should be documented in the "Comments" section on the back side of the individual inmate's out-of-cell tracking form. If the amount of time is not recorded in the "Comments", the Monitor must check the inmate's Maximum Custody Daily Out of Cell Tracking Form and the Maximum Custody Activity Schedule and/or SMI Mental Health Monthly (Program) Activity |

**Formatted:** Right

Schedule (where applicable) to determine the amount of out of cell time refused and indicate that such a comparison was performed in the monitoring documentation. If the refusal time is not properly documented or cannot be confirmed through a comparison of the unit schedule, the out-of-cell time/programming will not count towards compliance with the Performance Measure.

d.   When an inmate refuses out-of-cell time/programming, the refusal must be documented on the Out of Cell Tracking form and the personnel to whom the inmate stated the refusal must note the refusal and amount of time refused in the Comments section on the back of the Out of Cell Tracking form, and contemporaneously sign the same. The beginning time of the refused out-of-cell time should be documented on the Out of Cell Tracking form with an "R" next to the beginning time indicating a refusal (end time for refused out-of-cell time is not documented on the front of the Out of Cell Tracking form). Either the inmate or a second staff member should sign the Comments section on the back of the Out of Cell Tracking form where feasible considering safety/security/operational concerns, to verify the refusal. In the event of an extended pattern of refusals or changed behavior, supervisory personnel shall have a discussion with an inmate regarding refused out-of-cell time and shall document the date and nature of the conversation in the comments section on the back of the Maximum Custody Daily Out of Cell Tracking Form, including, when provided, inmate comments as to refusal or refusals.

**Formatted:** Right

**Max Custody Performance Measure No. 06**
**Stipulation Category: Max Custody (06)**

**CGAR Category: Max Custody**

---

**Performance Measure:**

All maximum custody prisoners at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max who are eligible for participation in DI 326 are offered out-of-cell time, incentives, programs and property consistent with their Step Level and housing assignment under the DI 326 policy.

---

**CGAR Question:**

Are all maximum custody prisoners at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max who are eligible for participation in DI 326 offered out-of-cell time, incentives, programs and property consistent with their Step Level and housing assignment under the DI 326 policy?

---

**Source of Records/Review:**

Max Custody and/or (SMI) Mental Health Monthly (Program) Activity Schedule(s); Maximum Custody Daily Out of Cell Time Tracking Form; Max Custody and/or (SMI) Mental Health Monthly Programming Attendance/Sign-In Sheets (containing prisoner signature or the relevant AIMS data demonstrating a prisoner's attendance); current maximum custody property inventory forms (which may include ADC Form #909-4, Inmate Property Inventory, Form #909-5, Inmate Property Received, and Form #909-1, Inmate Property Inventory Supplement) and/or equivalent information; inmate phone system printout and/or equivalent information; inmate visitation printouts (DV01 and DV05 screens) and/or equivalent information; banking printouts (BK03 balance and transaction screens) and/or equivalent information; AIMs data.

---

**Methodology:**                                                                                       ← Formatted: No widow/orphan control

a.  The records of the inmates selected for MC PM #1 are also reviewed for this performance measure.  The same week is also reviewed.  If an inmate changes Step Levels under DI326 for the week monitored, the Step Level change is noted.  A change in Step Level during the week reviewed is not a basis for a non-compliance finding if eligible incentives reasonably appear to be offered after the Step Level change, in accordance with the greater or lesser incentives available at Step Level changed to.

b.  Maximum Custody Daily Out of Cell Time Tracking Forms are reviewed for each inmate to ensure access to the out-of-cell time required under DI 326.  If the required out of cell time was not offered to the inmate there is a finding of noncompliance for that inmate for this

---

                                                                                     ← Formatted: Right

measure.

c. Current Property Inventory Forms, or equivalent information, for the ten (10) randomly selected inmates are reviewed to identify access to allowable property consistent with the inmate's Step Level under DI 326 for each monitored month.  If an inmate does not have access to property consistent with his/her Step Level due to the actions of ADC, then there is a finding of non-compliance for that inmate for this measure.

d. Prisoner telephone records, or equivalent information, are reviewed for the ten (10) randomly selected inmates to identify access to telephone privileges consistent with the inmate's Step Level.  If an inmate does not have access to visitation and/or telephone privileges consistent with his/her Step Level, then there is a finding of non-compliance for that inmate for this measure.

e. Prisoner visitation records, or equivalent information, are reviewed for the ten (10) randomly selected inmates to identify access to visitation privileges consistent with the inmate's Step Level.  If an inmate does not have access to visitation and/or telephone privileges consistent with his/her Step Level, then there is a finding of non-compliance for that inmate for this measure.

f. Inmate bank account records, or equivalent information, are reviewed for the ten (10) randomly selected inmates to identify whether each inmate has access to the weekly maximum spending amount consistent with the inmate's Incentive Phase (Step Level) amount.  If an inmate does not have access to the weekly maximum spending amount consistent with his/her Incentive Phase (Step Level) due to the actions of ADC, then there is a finding of non-compliance for that inmate for this measure.

g. The reviewer should note the Step Level for each inmate record reviewed and determine whether the type/location of recreation recorded in the Maximum Custody Daily Out-of-Cell Time Tracking Forms is consistent with the requirements of DI 326.  For example, a Step III inmate at Eyman-SMU I should be offered six hours per week to include one-time per month in a 10 x 10 enclosure (which holds up to four inmates), one time per month in 20 x 40 basketball enclosure (which holds up to eight inmates), and one-time per month recreation/par course field.  The reviewer looks at the week monitored, but if necessary to make an accurate compliance determination, the reviewer must look at the Out-of-Cell Tracking Forms for the month to determine compliance with the requirement that each inmate is offered the appropriate type/location of recreation under DI 326.  These form(s) showing compliance with appropriate type/location of recreation will be copied, highlighted (as to type/location compliance), and inserted behind the tracking form retained for the individual inmate. Failure to offer the appropriate type/location of recreation for the week and/or month will lead to a finding of non-compliance for this measure.

h. The location of the recreation offered or refused is recorded in the Maximum Custody Daily Out of Cell Time Tracking Form.  Beginning and ending times for all out-of-cell recreation time must be noted on the Maximum Custody Daily Out of Cell Time Tracking Form unless an inmate refuses that time offered.  In the case of a refusal, the refusal should be recorded on the front of the Tracking Form and the amount of time refused and the type/location of

Formatted: Right

the recreation should be documented in the "Comments" section on the back side of the individual inmate's out-of-cell tracking form. If the amount of time and type/location are not recorded in the "Comments", the Monitor must check the prisoner's Maximum Custody Daily Out of Cell Tracking Form and the Maximum Custody Activity Schedule and/or SMI Mental Health Monthly (Program) Activity Schedule (where applicable) to determine the amount of out of cell time and the type/location of recreation refused and indicate that such a comparison was performed in the monitoring documentation. If the refusal time and type/location of recreation is not properly documented or cannot be confirmed through a comparison of the unit schedule, the out-of-cell time/programming will not count towards compliance with the Performance Measure.

i.   When an inmate refuses out-of-cell time/programming, the refusal must be documented on the Out-of-Cell Tracking form and the personnel to whom the inmate stated the refusal must note the refusal and amount of time refused in the Comments section on the back of the Out of Cell Tracking form, and sign the same contemporaneously. The beginning time of the refused out-of-cell time should be documented on the Out of Cell Tracking form with an "R" next to the beginning time indicating a refusal (end time for refused out-of-cell time is not documented on the front of the Out of Cell Tracking form). Either the inmate or a second staff member should sign the Comments section on the back of the Out of Cell Tracking form where feasible considering safety/security/operational concerns, to verify the refusal. In the event of an extended pattern of refusals or changed behavior; supervisory personnel shall have a discussion with an inmate regarding refused out-of-cell time and shall document the date and nature of the conversation in the comments section on the back of the Maximum Custody Daily Out of Cell Tracking Form, including, when provided, inmate comments as to refusal or refusals.

**Formatted:** Normal

**Formatted:** Right

Max Custody Performance Measure No. 07
Stipulation Category: Max Custody (07)

**Formatted:** Indent: Left:  3", First line:  0.5"

**CGAR Category: Max Custody**

| Performance Measure: |
| --- |
| No prisoners with a mental health classification of MH3 or higher are housed in Florence Central-CB-5 or CB-7 unless the cell fronts are substantially modified to increase visibility. |
| **CGAR Question:** |
| Are there any prisoners with a mental health classification of MH3 or higher housed in Florence Central-CB-5 or CB-7 without a cell front that has been substantially modified to increase visibility? |
| **Source of Records/Review:** |
| Housing Assignment Log for maximum custody prisoners with mental health classification of MH-3 or higher:  The Housing Assignment Log for maximum custody prisoners with mental health classification of MH-3 or higher is reviewed for one randomly selected day of each monitored month. |
| **Methodology:** |
| a.  Pursuant to Defendants providing a declaration from Division Director Carson McWilliams attesting to the alteration of all of the CB5 and CB7 cells, Plaintiffs have agreed that Defendants no longer must monitor this MC PM.  (Letter from Fettig to Gottfried/Rand dated Oct. 4, 2016.)  Defendants have agreed to notify Plaintiffs if the cell fronts in these locations are substantially modified in the future during the life of the Stipulation (Dkt. 1185).  (*Id.*) |

**Formatted:** Right

17

Max Custody Performance Measure No. 08
Stipulation Category: Max Custody (08)

**CGAR Category: Max Custody**

| |
|---|
| **Performance Measure:** |
| In addition to the general privileges and incentives afforded to prisoners under DI 326, all SMI prisoners in maximum custody receive: |
| • 10 hours of unstructured out-of-cell time per week<br>• 1 hour of additional out-of-cell mental health programming per week<br>• 1 hour of additional out-of-cell psycho-educational programming per week<br>• 1 hour of additional out-of-cell programming per week |
| **CGAR Question:** |
| In addition to the general privileges and incentives afforded to prisoners under DI 326, are all SMI prisoners in maximum custody, receiving: |
| • 10 hours of unstructured out-of-cell time per week<br>• 1 hour of additional out-of-cell mental health programming per week<br>• 1 hour of additional out-of-cell psycho-educational programming per week<br>• 1 hour of additional out-of-cell programming per week |
| **Source of Records/Review:** |
| Maximum Custody and/or (SMI) Mental Health Monthly (Program) Activity Schedule(s); Maximum Custody Daily Out of Cell Time Tracking Form; Max Custody and/or (SMI) Mental Health Monthly Programming Attendance/Sign-In Sheets (containing inmate signature or the relevant AIMS data demonstrating a prisoner's attendance); Warden's Certification(s) attesting that a particular inmate was excluded from participation in DI 326 programming and/or activities for applicable randomly selected inmate(s) (if applicable); Incident Report (IR) documenting cancellation of activity not made up on the same day (if applicable). AIMS data (if applicable); EOMIS data (if applicable). |
| **Methodology:** |
| a. The same week selected for MC PM #1 is reviewed for this performance measure. |
| b. At each maximum custody unit where SMI inmates are housed, the count sheets for the unit are used to determine the pool of ten (10) randomly selected records reviewed for this measure. The total number of inmates classified as SMI is then divided by ten, and every $nth$ |

Formatted: Right

inmate is reviewed.  If a randomly selected inmate was not present in the unit for the full seven (7) days of the monitoring week, that inmate's records are not reviewed and the next SMI inmate either directly above or below the randomly selected SMI inmate is selected.  If no SMI inmate is listed either directly above or below the randomly selected SMI inmate, then the next SMI inmate listed in the roster who was housed in the unit for the full seven (7) days is used.  The Maximum Custody Daily Out of Cell Time Tracking Form for the specified monitoring week is reviewed for each of the ten (10) SMI inmates.

c.   The Maximum Custody Daily Out of Cell Time Tracking Forms are reviewed in order to determine compliance with MC PM ##1-2, 5-6 (DI 326), and 8 for each SMI inmate selected.  Beginning and ending times for all out of cell time must be noted on the Maximum Custody Daily Out of Cell Time Tracking Form unless an inmate refuses that time offered.  In the case of a refusal, the refusal should be recorded on the front of the Tracking Form and the amount of time refused should be documented in the "Comments" section on the back side of the individual inmate's out-of-cell tracking form. If the amount of time is not recorded in the "Comments", the Monitor must check the prisoner's Maximum Custody Daily Out of Cell Tracking Form and the Maximum Custody Activity Schedule and/or SMI Mental Health Monthly (Program) Activity Schedule (where applicable) to determine the amount of out of cell time/programming refused and indicate that such a comparison was performed in the monitoring documentation.  If the refusal time is not properly documented or cannot be confirmed through a comparison of the unit schedule, the out-of-cell time/programming will not count towards compliance with the Performance Measure.

d.   When an inmate refuses out-of-cell time/programming, the refusal must be documented on the Out-of-Cell Tracking form and the personnel to whom the inmate stated the refusal must note the refusal and amount of time refused in the Comments section on the back of the Out of Cell Tracking form, and contemporaneously sign the same. The beginning time of the refused out-of-cell time should be documented on the Out of Cell Tracking form with an "R" next to the beginning time indicating a refusal (end time for refused out-of-cell time is not documented on the front of the Out of Cell Tracking form). Either the inmate or a second staff member should sign the Comments section on the back of the Out of Cell Tracking form where feasible considering safety/security/operational concerns, to verify the refusal. In the event of an extended pattern of refusals or changed behavior; supervisory personnel shall have a discussion with an inmate regarding refused out-of-cell time and shall document the date and nature of the conversation in the comments section on the back of the Maximum Custody Daily Out of Cell Tracking Form, including, when provided, inmate comments as to refusal or refusals.

e.   Max Custody and SMI/Mental Health Monthly Programming Attendance/Sign-In Sheets are reviewed for the selected SMI inmates to confirm that the inmates attended all of the programs (e.g., mental health; psychological-education; out-of-cell programming; DI 326) reflected on the Maximum Custody Daily Out of Cell Time Tracking Forms.  Any discrepancies are noted.  Reviewers must confirm that each selected inmate attended the group program by comparison of Max Custody and/or (SMI) Mental Health Monthly (Program) Activity Schedule(s); Maximum Custody Daily Out of Cell Time Tracking Form; Max Custody and/or (SMI) Mental Health Monthly Programming Attendance/Sign-In

Formatted: Right

Sheets; AIMS data; and/or EOMIS data. Failure to confirm attendance leads to a finding of non-compliance for that record.   A determination of attendance may be achieved by comparison of (1) either Max Custody/Mental Health Monthly (Program) Activity Schedule(s) and/or  Maximum Custody Daily Out of Cell Time Tracking Form, and (2) either Max Custody and/or (SMI) Mental Health Monthly Programming Attendance/Sign-In Sheets, AIMS data; and/or EOMIS data or other available documentation. If any discrepancies regarding a determination of actual attendance cannot be reconciled that program/activity will not count towards the out-of-cell time required for compliance under this performance measure.

f.  For each of the selected SMI inmates, the Step Level is recorded, and it is determined if the basic requirements of DI 326 are met (MC PM ##1-2, 5-6). A failure to comply with any of these requirements results in a finding of non-compliance for the record.

- Determine whether each selected inmate has received the appropriate out-of-cell time, exercise, property, incentives, and programming according to his/her Step Level under DI 326 (MC PM ##1-2, 5-6).

- Determine whether Step II and III SMI inmates are receiving their one hour of group programming under DI 326 in addition to all of the SMI requirements enumerated below.

g.  For each of the selected SMI inmates determine whether the following requirements  have been met. A failure to comply with any of these requirements results in a finding of non-compliance for the record.

- 10 hours of unstructured out-of-cell time during the monitoring week.

- 1 hour of mental health group programming during the monitoring week.

- 1 hour of psychological educational programming during the monitoring week.

- 1 hour of additional out-of-cell programming during the monitoring week.

Max Custody Performance Measure No. 09
Stipulation Category: Max Custody (09)

**CGAR Category: Max Custody**

---

**Performance Measure:**

All use of force incidents involving use of pepper spray and other chemical agents on any maximum custody prisoners classified as SMI, and involving maximum custody prisoners in the following housing areas: Florence CB1 and CB4, Florence-Kasson (Wings 1 and 2); Eyman-SMU I (BMU); Perryville-Lumley SMA; Phoenix (Baker, Flamenco, and MTU); and Lewis-Rast Max (4C1 and 4C2), conform to the policies for use of force set forth in ¶ 27 (a)-(e) of the Stipulation.

---

**CGAR Question:**

Do all use of force incidents involving use of pepper spray and other chemical agents on any maximum custody prisoners classified as SMI, and  involving maximum custody prisoners in the following housing areas (where maximum custody SMI inmates and/or maximum custody inmates with substantial mental health issues are housed): Florence-CB-1 and CB-4; Florence-Kasson (Wings 1 and 2); Eyman-SMU I (BMU); Perryville-Lumley SMA; Phoenix (Baker, Flamenco, and MTU); and Lewis-Rast Max (4C1 and 4C2), conform to the policies for use of force set forth in ¶ 27 (a)-(e) of the Stipulation.²  Those requirements include:

   a.  Chemical agents shall be used only in case of imminent threat. An imminent threat is any situation or circumstance that jeopardizes the safety of persons or compromises the security of the institution, requiring immediate action to stop the threat. Some examples include, but are not limited to: an attempt to escape, on-going physical harm or active physical resistance. A decision to use chemical agents shall be based on more than passive resistance to placement in restraints or refusal to follow orders. If the inmate has not responded to staff for an extended period of time, and it appears that the inmate does not present an imminent physical threat, additional consideration and evaluation should occur before the use of chemical agents is authorized.

   b.  All controlled uses of force shall be preceded by a cool down period to allow the inmate an opportunity to comply with custody staff orders. The cool down period shall include clinical intervention (attempts to verbally counsel and persuade the inmate to voluntarily exit the area) by a mental health clinician, if the incident occurs on a weekday between 8:00 a.m. and 4:00 p.m. At all other times, a qualified health care professional (QHCP) (other than a LPN) shall provide such clinical intervention. This cool down period may include similar attempts by custody staff.

---

21

Formatted: Right

c.   If it is determined the inmate does not have the ability to understand orders, chemical agents shall not be used without authorization from the Warden, or if the Warden is unavailable, the administrative duty officer.

d.   If it is determined an inmate has the ability to understand orders but has difficulty complying due to mental health issues, or when a mental health clinician believes the inmate's mental health issues are such that the controlled use of force could lead to a substantial risk of decompensation, a mental health clinician shall propose reasonable strategies to employ in an effort to gain compliance, if the incident occurs on a weekday between 8:00 a.m. and 4:00 p.m. At all other times, a QHCP (other than a LPN) shall propose such reasonable strategies.

e.   The cool down period may also include use of other available resources/options such as dialogue via religious leaders, correctional counselors, correctional officers and other custody and non-custody staff that have established rapport with the inmate.

**Source of Records/Review:**

SIR Packet; Use of Force Review Packet; Use of Force Memo; all existing incident video capturing use of force and/or cool down period (including hand-held and/or security camera footage).

A list of all use of force incidents in a given month indication whether chemical agents were involved, the mental health classification of the inmate(s) involved, and the location of the housing unit of each inmate involved in a use of force incident.

At the discretion of the monitor, medical records; interviews of staff/inmates; and interview notes may also be reviewed if deemed necessary to make accurate compliance findings.

**Methodology:**

a.   The monitor shall review the source records listed above for use of force incidents involving the use of pepper spray and other chemical agents on any maximum custody prisoners classified as SMI, and classified as SMI in the following housing areas (where maximum custody SMI inmates and/or maximum custody inmates with substantial mental health issues are housed): Florence-CB-1 and CB-4; Florence-Kasson (Wings 1 and 2); Eyman-SMU I (BMU); Perryville-Lumley SMA; Phoenix (Baker, Flamenco, and MTU); and Lewis-Rast Max (4C1 and 4C2) for the reporting period. At the discretion of the monitor/designee, the monitor/designee may interview staff/inmates and

**Comment [A1]:** It is Plaintiffs' position that a document or other list such as this must be produced so that the monitor can determine which use of force incidents fall under the Stipulation. Right now, it is unclear how this is done.

**Comment [A2]:**

Feb. 17, 2017

• Plaintiffs object to the deletion of this language pursuant to the Court's Order (Doc. 1915) and the development of the checklist ordered by the Court. (Doc. 1915; Transcript of Hearing, 1/26/17, 43:21-44:8).

**Formatted:** Right

review any available medical records associated with the subject use of force, if necessary, to make a final compliance finding.

b.  If pepper spray and/or other chemical agents were used during the use of force incident, the monitor shall determine whether there was an imminent threat justifying the use of the pepper spray and/or other chemical agent.  If the monitor determines that the pepper spray and/or other chemical agents were used without justification, there is a finding of non-compliance.  These findings and the reasons for them must be documented in the CGAR.

c.  If there was no imminent threat and pepper spray and/or other chemical agents were deployed without engaging in a cool down period and additional consideration and evaluation by staff, there is a finding of non-compliance for the use of force incident. These findings and the reasons for them must be documented in the CGAR.

d.  The monitor shall determine whether or not the incident is a controlled use of force involving the use of pepper spray and/or other chemical agents or could have been a controlled use of force.  If the monitor determines that the incident should have been a controlled use of force but was erroneously treated as an imminent threat, there is a finding of non-compliance. These findings and the reasons for them must be documented in the CGAR.

e.  If the incident is a controlled use of force involving the use of pepper spray and/or other chemical agents it must be preceded by a cool down period to allow the inmate an opportunity to comply with custody staff orders.  The length of the cool down period can vary depending upon the circumstances, but should be allowed to continue until all reasonable interventions have been attempted, or an imminent threat exists.  If the monitor believes that the cool down period was insufficient under the circumstances, there is a finding of non-compliance.   If there is no cool down period documented or otherwise recorded in other documentation or on video (hand held and/or security camera footage reviewed by the monitor), then the incident must be found non-compliant.  Where video evidence is used to make a compliance finding, a written memo must accompany the Monitor's findings to include the names of the staff and clinicians involved in the cool down period and description of the cooldown afforded the inmate.  These findings and the reasons for them must be documented in the compliance findings.

f.  A cool down period during a controlled use of force involving the use of pepper spray and/or other chemical agents must include clinical intervention (attempts to verbally counsel and persuade the inmate to cease the behavior that has led to consideration of

**23**

**Comment [A3]:**

**Feb. 17, 2017**

•This language remains in dispute.  It is Plaintiffs' position that the Court did resolve this issue in its 1/26/17 Order:  :  "IT IS ORDERED pages 4 and 5 are to be adopted." This order refers to Plaintiffs brief filed on January 24 and the discussion of MC PM #9 on pages 4-5 therein.  (Doc. 1889).  The hearing transcript makes clear that the parties must develop a checklist to cover the video documentation issues. (Transcript of Hearing, 1/26/17, 43:21-44:8).

This is the same issue addressed in section (f) and (i) below.

**Comment [A4]:** Plaintiffs object to this addition of the vague "otherwise recorded in other documentation" because video often has no sound and it is impossible to verify  a clinical intervention is occurring and who is conducting it without documentation.

Plaintiffs proffer this new language to accommodate both parties' concerns.

**Formatted:** Right

use of force). This clinical intervention must be conducted by: (1) a mental health clinician, if the incident occurs on a weekday between 8:00 am and 4:00 pm; or (2) a QHCP (other than a LPN) at all other times. This cool down period may include similar attempts by custody staff – but such interventions by custody staff are not a replacement for the required clinical intervention. If no clinical intervention is documented during the cool down period or otherwise recorded in other documentation or on video (hand held and/or security camera footage reviewed by the monitor), there is a finding of non-compliance for the incident. Where video evidence is used to make a compliance finding, a written memo must accompany the Monitor's findings to include the names of the staff and clinicians involved in the clinical intervention and cool down period and description of the interventions/cooldown period afforded the inmate. These findings and the reasons for them must be documented in the compliance findings.

g. During the clinical intervention, the mental health clinician or QHCP (other than a LPN) must determine whether the inmate has the ability to understand orders; whether the inmate has the ability to understand orders but has difficulty complying due to mental health issues; and whether s/he believes the inmate's mental health issues are such that the controlled use of force could lead to a substantial risk of decompensation. Failure to document these determinations in the use of force documentation provided the monitor shall lead to a finding of non-compliance.

h. If pepper spray and/or other chemical agents were used where a mental health clinician or QHCP (other than an LPN) determined the inmate does not have the ability to understand orders, the monitor must determine that a Warden, or if the Warden was unavailable, the administrative duty officer, authorized the use of pepper spray and/or other chemical agents. If no such authorization was obtained, there is a finding of non-compliance for the incident. These findings and the reasons for them must be documented in the CGAR.

i. If the mental health clinician or QHCP (other than a LPN) determined that an inmate had the ability to understand orders but had difficulty complying due to mental health issues, or where the mental health clinician or QHCP believed the inmate's mental health issues are such that the controlled use of force involving the use of pepper spray and/or other chemical agents could lead to a substantial risk of decompensation, the mental health clinician or QHCP must propose reasonable strategies to employ in an effort to gain compliance. Such strategies might include, but are not limited to: verbal persuasion, positive behavior modifications, and/or other de-escalation/intervention techniques, or engaging additional clinicians, religious leaders, correctional counselors, correctional officers and other custody and non-custody staff that have an established

**Comment [A5]:** Feb. 17, 2017
See Comment A 14 Above.

**Comment [A6]:** Plaintiffs object to this addition because "otherwise recorded in other documentation" is duplicative and vague and video often has no sound and it is impossible to verify whether a clinical intervention is occurring and who is conducting it without documentation.

Plaintiffs proffer this new language to accommodate both parties' concerns.

**Formatted:** Right

24

rapport with the inmate.  If no proposals of reasonable strategies are documented or otherwise recorded in other documentation or on video (hand held and/or security camera footage reviewed by the monitor), there is a finding of non-compliance for the incident. ~~Where video evidence is used to make a compliance finding in this regard, a written memo must accompany the Monitor's findings to include the names of the staff and clinicians involved in the incident and a description of the strategies and proposals made regarding the inmate.  These findings and the reasons for them must be documented in the compliance findings.~~

**Comment [A7]:**

Feb. 17, 2017

See Comment A 14 above.

**Comment [A8]:** Plaintiffs object to this addition because "otherwise recorded in other documentation" is duplicative and vague and video often has no sound and it is impossible to verify whether a clinical intervention is occurring and who is conducting it without documentation.

Plaintiffs proffer this new language to accommodate both parties' concerns.

**Formatted:** Font: Bold, Condensed by  0.15 pt

**Formatted:** Right

Draft Revised: 3/1/17~~10/31/16~~01/23/19 17