1  Kathleen E. Brody (Bar No. 026331)
   Daniel Pochoda (Bar No. 021979)
2  **ACLU FOUNDATION OF ARIZONA**
   3707 North 7th Street, Suite 235
3  Phoenix, Arizona 85013
   Telephone: (602) 650-1854
4  Email: kbrody@acluaz.org
         dpochoda@acluaz.org
5
   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia*
6  *Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith,*
   *Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner,*
7  *Joshua Polson, and Charlotte Wells, on behalf of themselves and all*
   *others similarly situated*
8  **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

9  Sarah Kader (Bar No. 027147)
   Asim Dietrich (Bar No. 027927)
10 **ARIZONA CENTER FOR DISABILITY LAW**
   5025 East Washington Street, Suite 202
11 Phoenix, Arizona 85034
   Telephone: (602) 274-6287
12 Email: skader@azdisabilitylaw.org
         adietrich@azdisabilitylaw.org
13
   *Attorneys for Plaintiff Arizona Center for Disability Law*
14 **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

15                          UNITED STATES DISTRICT COURT
16                               DISTRICT OF ARIZONA

17 | Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-DKD |
|---|---|
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO DEFENDANTS' AMENDED NOTICE RE: ITEMS FROM FEB. 8, 2017 HEARING PURSUANT TO COURT ORDER [DOC. 1977]** |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

78204-0001/LEGAL135013726.1

Plaintiffs submit the following in response to Defendants' Amended Notice and Proposed Remediation Plans (Doc. 1977), and to update the Court as to Defendants' compliance with performance measures for which the Court has found Defendants noncompliant, or has issued enforcement orders. [Docs. 1583, 1709, 1743, 1754]

## I.  THE COURT SHOULD GRANT PLAINTIFFS' MOTION TO ENFORCE [DOC. 1863] AND FIND DEFENDANTS SUBSTANTIALLY NONCOMPLIANT WITH MULTIPLE PERFORMANCE MEASURES

As a threshold matter, Plaintiffs request that the Court formally find Defendants substantially noncompliant with the performance measures outlined in Plaintiffs' Motion to Enforce and Reply. [Docs. 1863, 1911] Defendants correctly noted that the Court has not ruled yet on Plaintiffs' pending Motion or issued an order finding them in substantial noncompliance with the performance measures raised therein, and they contend that therefore the Court cannot require Defendants to submit a remedial plan. [Doc. 1977 at 4-5, n.5][1] The Court can remedy that situation easily. According to the January CGAR data that Defendants provided Plaintiffs on March 24, 2017, Defendants continue to be substantially noncompliant with most of the relevant performance measures.[2]

**A. Performance Measure 35:** *All inmate medications (KOP and DOT) will be transferred with and provided to the inmate or otherwise provided at the receiving prison without interruption.*

Plaintiffs sought a finding of noncompliance for this performance measure at Eyman, Florence, Lewis, Phoenix, Tucson, and Yuma. [Doc. 1863 at 4] Defendants conceded that they continue to be substantially noncompliant with this performance measure at five institutions. [Doc. 1900 at 3-4 (listing Eyman, Florence, Lewis, Phoenix, and Tucson with grossly deficient scores through November 2016)] Despite Defendants' assurances of improvement, the December and January CGARs tell a different story. Defendants submitted remedial plans for this performance measure at Eyman, Florence,

---

[1] All citations are to the page numbers assigned by the Court's Electronic Case Filing system, and not to the pages of the documents contained therein.

[2] The January 2017 CGARs are filed under seal as Exhibits 1-10 to the Declaration of Corene Kendrick ("Kendrick Decl.") filed herewith.

78204-0001/LEGAL135013726.1

Lewis, and Tucson, but did not include plans to remediate Phoenix or Yuma. [*See* Doc. 1977 at 5-6] The Court should find Defendants substantially noncompliant with PM 35 at all six institutions in Plaintiffs' Motion.

|          | March | April | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan |
|----------|-------|-------|-----|------|------|-----|------|-----|-----|-----|-----|
| Eyman    | 56    | 74    | 60  | 76   | 72   | 80  | 86   | 54  | 64  | 56  | 76  |
| Florence | 24    | 45    | 36  | 48   | 42   | 43  | 53   | 69  | 63  | 44  | 39  |
| Lewis    | 48    | 57    | 49  | 33   | 47   | 35  | 31   | 32  | 32  | 28  | 24  |
| Phoenix  | 60    | 64    | 67  | 71   | 43   | 89  | 75   | 44  | 67  | 100 | 80  |
| Tucson   | 39    | 24    | 19  | 27   | 19   | 16  | 14   | 10  | 50  | 33  | 25  |
| Yuma     | 66    | 67    | 84  | 51   | 51   | 42  | 47   | 63  | 72  | 93  | 94  |

**B. Performance Measure 40:** *Urgent provider referrals are seen by a Medical Provider within 24 hours of the referral.*

Defendants have been noncompliant with this performance measure for most of 2016 at Eyman, Lewis, and Tucson, and notwithstanding some improvement at Eyman, remain substantially noncompliant. [Doc. 1900 at 5] The Court has ruled that a finding of "N/A" does not count as compliant or noncompliant; it simply does not count. [*See* Transcript of February 8, 2017 Hearing ("2/8/17 Tr.") at 45:19-20 ("those just don't get counted. It's not for or against, it's just pulled out")] Furthermore, in light of recent testimony by Defendants' monitors about how they audit this performance measure, Plaintiffs remain concerned that the findings overstate the degree of compliance, or rely upon inaccurate information entered into records by Corizon nurses.[3] The Court should find Defendants substantially noncompliant with PM 40 at Eyman, Lewis, and Tucson.

|        | March | April | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan |
|--------|-------|-------|-----|------|------|-----|------|-----|-----|-----|-----|
| Eyman  | 58    | 33    | 71  | 34   | 13   | 13  | 83   | 85  | 65  | 100 | 100 |
| Lewis  | 50    | N/A   | 100 | N/A  | N/A  | 40  | 100  | N/A | 88  | N/A | N/A |
| Tucson | 50    | 33    | 14  | 50   | 0    | 83  | 100  | N/A | 86  | 91  | 71  |

///

///

---

[3] For example, while Lewis yet again supposedly had no urgent referrals in the month of January, there were 72 routine referrals to the provider in January, and 26 emergent referrals. [*See* Kendrick Decl., Ex. 4 at ADCM842072]

**C. Performance Measure 44:** *Inmates returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital shall have the hospital's treatment recommendations reviewed and acted upon by a medical provider within 24 hours.*

Plaintiffs notified Defendants that they were substantially noncompliant with this measure at Douglas, Eyman, Florence, Lewis, and Tucson prisons. [Doc. 1863 at 5-6] Defendants conceded that they are noncompliant at Douglas, Florence, and Lewis prisons. [Doc. 1900 at 5] Defendants submitted a remedial plan for this performance measure for Eyman, Florence, and Lewis as the December and January data show the three institutions are grossly out of compliance. [Doc. 1977 at 6-8]

|          | March | April | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan |
|----------|-------|-------|-----|------|------|-----|------|-----|-----|-----|-----|
| Douglas  | 50    | 80    | 100 | 78   | 14   | 80  | 92   | 100 | 57  | 100 | 100 |
| Eyman    | 60    | 28    | 50  | 37   | 44   | 46  | 72   | 85  | 89  | 72  | 50  |
| Florence | 70    | 61    | 70  | 60   | 58   | 89  | 84   | 91  | 76  | 67  | 71  |
| Lewis    | 78    | 88    | 70  | 80   | 71   | 29  | 48   | 38  | 43  | 50  | 38  |
| Tucson   | 88    | 79    | 57  | 85   | 81   | 77  | 95   | 100 | 80  | 80  | 88  |

While at first glance, Douglas and Tucson appear to have improved, the findings of compliance at those prisons are based upon a methodology that contradicted the plain language of the Stipulation, and that the Court has invalidated. The Court ruled on December 14, 2016 that for PM 44, "the Monitoring Guide shall only permit compliance if the inmate received the prescribed treatment, or if there is a documented reason explaining why the prescribed treatment was rejected." [Doc. 1831 at 2; *see also* 12/14/16 Tr. at 33:4-8 ("the Department thought it was worthy to have an outside physician see someone, that physician makes a recommendation, and it's just crickets thereafter. You can't tell whether it's fallen between the cracks or somebody has decided something else. That doesn't make any sense to me.")] It was not until mid-January, 2017 that Defendants revised their Monitor Guide to comply with the Court's order. [Doc. 1890-1 at 242]

Accordingly, the CGAR scores through January still fail to comply with the Court's order, and Defendants should be found noncompliant with PM 44 at all five institutions.[4]

**D. Performance Measure 45:** *On-site diagnostic services will be provided the same day if ordered STAT or urgent, or within 14 calendar days if routine.*

Defendants conceded that they are noncompliant with this measure at Lewis, and submitted a remediation plan for the institution. [Doc. 1900 at 17; Doc. 1977 at 8] They argue they are compliant at the other three institutions in the Motion (Florence, Tucson, Yuma) because of compliance for more than one month. [Doc. 1900 at 17] The Court should find Defendants noncompliant with this measure at Florence, Lewis, and Tucson based upon the inability to remain compliant.[5]

|  | March | April | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Florence | 95 | 78 | 80 | 82 | 52 | 67 | 82 | 80 | 83 | 82 | 78 |
| Lewis | 85 | 69 | 92 | 69 | 85 | 78 | 80 | 81 | 69 | 77 | 64 |
| Tucson | 88 | 97 | 89 | 71 | 70 | 79 | 79 | 73 | 80 | 84 | 71 |

**E. Performance Measure 50:** *Urgent specialty consultations and urgent specialty diagnostic services will be scheduled and completed within 30 calendar days of the consultation being requested by the provider.*

Defendants conceded that they are noncompliant with this performance measure at Florence, and submitted a remedial plan for the prison. [Doc. 1900 at 7; Doc. 1977 at 8-9] The Court should find Defendants substantially noncompliant with PM 50 at Florence.

|  | March | April | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Florence | 66 | 62 | 65 | 77 | 72 | 76 | 78 | 93 | 71 | 53 | 55 |

---

[4] In light of recent testimony by Defendants' monitors, Plaintiffs are concerned that the change in methodology was not conveyed clearly to the monitors.

[5] Defendants misstate the nature of Plaintiffs' withdrawal of the Motion with respect to this PM. [Doc. 1977 at 8 n. 6] Plaintiffs withdrew the Motion with respect to PM 45 at Florence and Yuma prisons "***without prejudice to seek a finding of noncompliance if Defendants' performance subsequently fell below the levels required by the Stipulation***." [Doc. 1911 at 2 n.1 (emphasis added)] Florence's January 2017 compliance score was 78%. [Kendrick Decl., Ex. 3 at ADCM842015-16]

**F. Performance Measure 51:** *Routine specialty consultations will be scheduled and completed within 60 calendar days of the consultation being requested by the provider.*

Defendants submitted a remedial plan for PM 51 at Eyman. [Doc. 1977 at 9] They misstate the nature of Plaintiffs' withdrawal of the Motion with respect to this performance measure at Florence, Lewis, and Tucson. [*Id.* at n.7] Plaintiffs withdrew the Motion "***without prejudice to seek a finding of noncompliance if Defendants' performance subsequently fell below the levels required by the Stipulation***." [Doc. 1911 at 2 n.1 (emphasis added)]  Given more recent scores at Florence and Tucson, the Court should find Defendants substantially noncompliant with PM 51 at Eyman, Florence, and Tucson.

|  | March | April | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Eyman | 98 | 78 | 78 | 82 | 52 | 76 | 89 | 72 | 66 | 68 | 72 |
| Florence | 79 | 76 | 79 | 66 | 80 | 82 | 80 | 77 | 81 | 90 | 74 |
| Tucson | 75 | 64 | 65 | 70 | 81 | 77 | 84 | 82 | 88 | 59 | 76 |

**G. Performance Measure 52**: *Specialty consultation reports will be reviewed and acted on by a Provider within seven calendar days of receiving the report.*

Defendants concede noncompliance with respect to Florence, Perryville, and Tucson and submitted remedial plans for the three institutions. [Doc. 1900 at 8; Doc. 1977 at 9-11]  To ensure that Defendants continue to implement their remedial plans at the three institutions, the Court should find Defendants substantially noncompliant with PM 52 at Florence, Perryville, and Tucson.[6]

|  | March | April | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Florence | 45 | 40 | 24 | 45 | 50 | 61 | 56 | 71 | 69 | 73 | 76 |
| Perryville | 26 | 81 | 72 | 76 | 79 | 70 | 70 | 82 | 71 | 90 | 92 |
| Tucson | 61 | 55 | 45 | 43 | 47 | 42 | 39 | 13 | 57 | 57 | 59 |

---

[6] In the February 24, 2017 version of their Monitoring Guide, Defendants modified the methodological approach to this Performance Measure to comport with the Court's December 14, 2016 order regarding "acted upon" for PM 44. [Doc. 1831 at 2]

**H. Performance Measure 94:** *All prisoners on a suicide or mental health watch shall be seen daily by a licensed mental health clinician or, on weekends or holidays, by a registered nurse.*

Perryville has been noncompliant on this Performance Measure for six of the past 10 months, and is currently at 53%. The Court should find Defendants substantially noncompliant and order them to develop a remedial plan.[7]

|            | March | April | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan |
|------------|-------|-------|-----|------|------|-----|------|-----|-----|-----|-----|
| Perryville | 80    | 30    | 40  | 100  | 50   | 70  | 60   | 85  | 80  | 80  | 53  |

## II. DEFENDANTS' PURPORTEDLY COMPLIANT CGAR SCORES WERE CALCULATED USING INVALID METHODOLOGY.

The Court has ruled that Defendants may not claim as compliant CGAR scores that were calculated using a methodology that the Court has found to be invalid:

> [I]f Defendants want to persuade the Court that a given Performance Measures [sic] at a given facility is compliant with the Stipulation, then Defendants will have to show that this PM/facility was compliant under the Final Monitoring Guide's procedures.

[Doc. 1951 at 1-2] Plaintiffs have already shown that the purportedly compliant CGAR scores set forth by Defendants (*see* Doc. 1900) were calculated using methodologies that the Court has invalidated. [*See* Doc. 1911 at 5-11]

This Court has given Defendants multiple opportunities to inform it and Plaintiffs how they plan to implement the Court's rulings on monitoring methodology, as well as the parties' agreed-upon changes to the Monitoring Guide used to measure compliance. [*See, e.g.*, Transcript of Oct. 5, 2016 Status Conference ("10/15/16 Tr.") at 31:5-15; 2/8/17 Tr. at 45:6-17, 55:5-56:9, 56:19-57:7, 57:19-58:22; Doc. 1933 at 3; Doc. 1951] On February 8, 2017, the Court ordered that "within one week Defendants shall file a notice with the Court informing it which performance measures they believe warrant remediation (perhaps employing any recharacterization of the data in light of the Court's interpretative

---

[7] The Court has previously found Defendants substantially noncompliant with PM 94 at Eyman, Florence, and Tucson (Doc. 1709 at 1). *See* § IV, *infra*.

rulings). . ." [Doc. 1933 at 3]  More than six weeks later, Defendants still have not provided an answer.

First, Defendants asked for 30 more days to answer the question. [*See* Doc. 1930 at 3-4]  Then they asked the Court for clarification about what information it was seeking. [*See* Doc. 1942]  The Court provided guidance on February 24, 2017, and ordered Defendants to provide a statement within seven days.  [Doc. 1951]  The day their statement was due, Defendants asserted that they needed two more weeks to answer the question, and in the hope that Defendants would finally provide a substantive response, Plaintiffs stipulated to the extension.  [Doc. 1960 at 2]  Now, after all of this time, Defendants proclaim that they cannot answer the Court's question whether they plan to re-audit performance measures.  [Doc. 1977 at 2-4]

The Court's ruling is clear:  Defendants may not have the benefit of "compliant" CGAR scores that were calculated using a methodology the Court has ruled is invalid. [Doc. 1951 at 2]  In light of Defendants' failure to recalculate their scores using the correct methodology, the Court should find them noncompliant on the following performance measures set forth in Plaintiffs' Motion (Doc. 1863): 44, 73, 74, 80, 86, 88, 94, 95, 98.[8]

### III. PLAINTIFFS' RESPONSE TO DEFENDANTS' REMEDIAL PLANS

For the reasons set forth in Parts I and II above, the Court should find Defendants noncompliant on the performance measures set forth in Plaintiffs Motion to Enforce.  The Court also should order Defendants to provide remedial plans for all of the noncompliant performance measures.  Defendants submitted remedial plans for some of the measures

---

[8] Indeed, since Plaintiffs filed their reply brief (Doc. 1911), an additional monitoring defect has come to light.  It was established at the March 21, 2017 hearing that the samples drawn for PM 86 include the files of prisoners who have discontinued medications so recently that their files are guaranteed to be found compliant with that performance measure.  [*See, e.g.,* ADCM 750431-32 (Kendrick Decl., Ex. 11) (of the 41 prisoners whose files were reviewed for PM 86 at Florence in October 2016, 30 had discontinued medications in August, September, or October 2016, and thus could not possibly be found noncompliant with the requirements of PM 86 that the prisoner be seen within 90 days of discontinuing medication)]  This is obviously impermissible; the sample may not include files that are guaranteed in advance to be compliant.

discussed above, (*see* Doc. 1977 at 5-11), but Plaintiffs believe that these plans lack the specificity necessary to determine whether they will put Defendants on the path to remediation. Defendants' plans are incomplete, do not provide timeframes, and in many cases, fail to provide detailed action items and identify the individuals responsible for implementation or the evaluation of whether the action has resulted in improved health care services for class members.

### IV. UPDATE ON DEFENDANTS' JANUARY 2017 AUDIT SCORES FOR PERFORMANCE MEASURES FOR WHICH THE COURT PREVIOUSLY FOUND THEM NONCOMPLIANT OR THAT ARE THE SUBJECT OF THE COURT'S NOVEMBER 10, 2016 ORDER

On March 27, 2017, Defendants provided the Court with the January 2017 CGAR results for performance measures for which the Court found them noncompliant in May 2016 (Doc. 1583) and October 2016 (Doc. 1709). [*See* Doc. 1992] While the numbers presented comport with the January CGARs provided to Plaintiffs (which Plaintiffs are submitting to the Court under seal), Plaintiffs note that Defendants have, without seeking either Plaintiffs' agreement or the Court's permission, ceased monitoring PM 92 and 93 at Tucson and Perryville. They assert (without providing any evidence to the Court) that there are no longer any maximum custody prisoners at those facilities.[9] [*See* Doc. 1992 at 7] Plaintiffs dispute this claim and will be asking the Court to rule on this issue.[10]

---

[9] The Court found Defendants noncompliant in May 2016 with PM 92 (*MH-3 and above prisoners who are housed in maximum custody shall be seen by a mental health clinician for a 1:1 or group session a minimum of every 30 days*) at Eyman, Florence, Lewis, Perryville, and Tucson prisons; and with PM 93 (*Mental health staff (not to include LPNs) shall make weekly rounds on all MH-3 and above prisoners who are housed in maximum custody*) at Eyman, Florence, Lewis, and Tucson prisons. [Doc. 1583 at 2] The Court's November 10, 2016 order directing Defendants to seek outside assistance for certain performance measures included PM 92 at Perryville. [Doc. 1754 at 4]

[10] The Court has already rejected Defendants' similar claim that there are no longer any maximum custody prisoners in Central Unit at the Florence Complex. [*See* Doc. 1918 at 2; Doc. 1833 at 4-5]

### A. The Court Should Extend Its Community Resources Order to PMs 47 and 94

Plaintiffs ask that the Court extend its order that Defendants utilize community health care resources (Doc. 1754 at 4) to PM 47 (Eyman, Florence, Lewis, Perryville, Phoenix, Tucson, and Yuma) and PM 94 (Eyman, Florence, and Tucson). On October 7, 2016, the Court found Defendants substantially noncompliant with these Performance Measures at these complexes. [Doc. 1709 at 1] At the November 9, 2016 status hearing, Defendants stated that they had already implemented remedial plans earlier in 2016, and asked for an additional sixty days to show that these plans were working. [11/9/16 Tr. at 21:1-3; 23:23-24:1] The Court granted Defendants' request:

> And so we'll know if we -- if we grant 60 days from today -- here we are in the second week of November, and so we would be in the second week of January -- I keep hoping for an increased reporting rate -- but we will have the data we have at that time that we meet again in January. And we will see where we stand with respect to these three performance measures. Each of them includes the obvious suggestion of a similarity of approach that I would take with respect to addressing a failed defendant's remediation plan, and that is having these people seen by a provider that can be obtained in the market. So that's how we will proceed with those three.

[11/9/16 Tr. at 25:5-15]

At the January 11, 2017 status hearing, Defendants again requested, and again were granted, more time to demonstrate their remedial plans were working. [1/11/17 Tr. at 26:25-27:10] Unfortunately, despite these multiple opportunities for Defendants to show compliance, PM 47 and PM 94 remain noncompliant:

**PM 47**: *A Medical Provider will communicate the results of the diagnostic study to the inmate upon request and within seven calendar days of the date of the request.*[11]

|         | Mar | April | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan |
|---------|-----|-------|-----|------|------|-----|------|-----|-----|-----|-----|
| Douglas | 57  | 42    | 67  | 67   | 88   | 89  | 80   | 44  | 100 | 100 | 100 |

---

[11] While Perryville and Yuma prisons are at or above 80% in January, their performance in preceding months was substantially noncompliant, and "[a] good or lucky day is not a state of compliance. Nor is the dubious state in which a past . . . problem is not recurring at the moment, but the cause of that problem has not been completely and clearly eradicated." *Gwaltney of Smithfield Ltd. v. Chesapeake Bay Found.*, 474 U.S. 49, 69 (1987) (Scalia, J., concurring in part and concurring in the judgment).

|  | Mar | April | May | June | July | Aug | Sept | Oct | Nov | Dec | Jan |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Eyman | 45 | 41 | 27 | 65 | 32 | 38 | 47 | 55 | 25 | 45 | 55 |
| Florence | 33 | 26 | 38 | 53 | 31 | 49 | 68 | 64 | 41 | 63 | 59 |
| Lewis | 47 | 52 | 53 | 51 | 61 | 56 | 64 | 71 | 78 | 77 | 25 |
| Perryville | 7 | 15 | 38 | 43 | 72 | 61 | 47 | 64 | 70 | 79 | 89 |
| Phoenix | 100 | 100 | 0 | 100 | 67 | 100 | 100 | 75 | 0 | N/A | 67 |
| Safford | N/A | N/A | 100 | N/A | N/A | 100 | N/A | 100 | N/A | 100 | N/A |
| Tucson | 18 | 33 | 21 | 15 | 29 | 6 | 41 | 41 | 45 | 44 | 56 |
| Winslow | 0 | 100 | 100 | 50 | 100 | 50 | 100 | 100 | 100 | N/A | 86 |
| Yuma | 42 | 47 | 35 | 50 | 59 | 66 | 80 | 79 | 55 | 48 | 80 |

**PM 94:** *All prisoners on a suicide or mental health watch shall be seen daily by a licensed mental health clinician or, on weekends or holidays, by a registered nurse.*

|  | Dec | Jan |
|---|---|---|
| Eyman | 69 | 89 |
| Florence | 73 | 60 |
| Tucson | 68 | 84 |

Given the manifest failure of Defendants' remedial plans for these performance measures, some of which have been in effect for almost a year, (*see* 11/9/16 Tr. at 21:16-17), the Court should extend its November 10, 2016 order to these performance measures and institutions. [*See* 1/11/17 Tr. at 25:8-10 ("[THE COURT:] You have to meet the performance measure. I see the percentage, and I see a failure in the percentages, and then I take steps"][12]

### B. Defendants Continue to Fail to Comply With the Court's Community Resources Order

Plaintiffs are concerned about Defendants' inability or unwillingness to come into compliance with the Court's November 10, 2016 Order. [Doc. 1754 at 4] Plaintiffs repeatedly have expressed to the Court that they were not reassured that Defendants' so-called "open clinic" or "open sick call" process would somehow address all of the relevant

---

[12] The parties discussed PM 47 with the Court at the February 8, 2017 Status Conference. [*See* 2/8/17 Tr. at 26:20-28:9]  Upon the Court's order, Plaintiffs' expert Dr. Todd Wilcox participated in a telephone conference with Defendants and their contractor on February 28, 2017 to propose possible solutions for PM 46 and 47. To date, Plaintiffs have not received any update on remedial steps being taken, or whether any of Dr. Wilcox's suggestions will be implemented.

1 measures beyond PM 37, which deals specifically with sick call timeframes. [*See, e.g.*,
2 Doc. 1851 ¶ 11, Ex. 4; 1/11/17 Tr. at 32:7-17, 35:4-36:11, 41:25-42:9, 42:24-43:17;
3 2/8/17 Tr. at 22:14-23:12, 24:8-11, 32:2-6] The Court noted in January that

> I mean, right now there is an order in place, assuming, without having it in my head directly, that this was one of the performance measures that I addressed where there was a failure to comply at the required percentage, and I ordered that that be met by making sure that an outside provider was providing the service, assuming this is one of those; and assuming then that the next report shows yet again a failure of compliance [. . .], then I would address it again and I would say: What have you done; who have you taken to be seen? Why are these numbers not changing?
>
> [. . .]
>
> And so if it turns out that we don't have in a subsequent month an improvement, then I will say and demand what you have asked for, and that is, what have you done; what did you do; who was taken? Because then the next question will be, well, we know that wasn't enough, so we're going to have to double that. And that's the way that I'll approach it.

[1/11/17 Tr. at 42:10-20, 43:24-44:5]

Plaintiffs note that there is still significant noncompliance with many of the following performance measures that were part of the November 10, 2016 Order:

**PM 11:** *Newly prescribed provider-ordered formulary medications will be provided to the inmate within 2 business days after prescribed, or on the same day, if prescribed STAT.*

The Court's order applied to Eyman, Florence, and Lewis.

|  | Dec. 2016 | Jan. 2017 |
|---|---|---|
| Eyman | 80 | 48 |
| Florence | 87 | 93 |
| Lewis | 66 | 73 |

**PM 13**: *Chronic care and psychotropic medication renewals will be completed in a manner such that there is no interruption or lapse in medication.*

The Court's order applied to Florence, Lewis, and Perryville.

|  | Dec. 2016 | Jan. 2017 |
|---|---|---|
| Florence | 73 | 88 |
| Lewis | 76 | 79 |
| Perryville | 72 | 84 |

**PM 39**: *Routine provider referrals will be addressed by a Medical Provider and referrals requiring a scheduled provider appointment will be seen within fourteen calendar days of the referral.*

The Court's order applied to Eyman, Florence, Lewis, Perryville, and Tucson.

|  | Dec. 2016 | Jan. 2017 |
|---|---|---|
| Eyman[13] | 68 | 52 |
| Florence | 70 | 79 |
| Lewis | 55 | 82 |
| Perryville | 84 | 83 |
| Tucson | 79 | 94 |

**PM 46**: *A Medical Provider will review the diagnostic report, including pathology reports, and act upon reports with abnormal values within five calendar days of receiving the report at the prison.*

The Court's order applied to Douglas, Florence, Perryville, Tucson, and Yuma.

|  | Dec. 2016 | Jan. 2017 |
|---|---|---|
| Douglas | 80 | 98 |
| Florence | 60 | 50 |
| Perryville | 42 | 50 |
| Tucson | 63 | 68 |
| Yuma | 74 | 96 |

**PM 54**: *Chronic disease inmates will be seen by the provider as specified in the inmate's treatment plan, no less than every 180 days unless the provider documents a reason why a longer time frame can be in place.*

The Court's order applied to Eyman and Tucson.

---

[13] With reference to PM 39 at Eyman, and in response to counsel for Defendants' representations that based on preliminary CGAR data (not provided to Plaintiffs or the Court), that the institution would be improving from December's 68% level, the Court noted that "because it appears that Corizon has been taking some action, they have actually, as represented by counsel, they have identified a problem and sought to redress it. My hope is that that will be reflected in the Eyman numbers generally, a greater scrutiny of compliance with this performance measure." [2/8/17 Tr. at 24:18-23]

|  | Dec. 2016 | Jan. 2017 |
|---|---|---|
| Eyman[14] | 72 | 62 |
| Tucson | 92 | 79 |

**PM 66**: *In an IPC, a Medical Provider encounters will occur at a minimum every 72 hours.*

The Court's order applied to Tucson.

|  | Dec. 2016 | Jan. 2017 |
|---|---|---|
| Tucson | 30 | 30 |

In light of Defendants' ongoing failure to comply with the Court's November 10, 2016 order, as shown in their own audits, Plaintiffs request that the Court order them to provide written proof of how they are complying with the Order. Plaintiffs request that the Court order Defendants to produce documents no later than April 10, 2017 that for each noncompliant institution show (1) how many people were not seen within the time frames (or in the case of PMs 11 and 13, how many medications were not renewed or refilled, or in the case of PM 46, how many diagnostic reports were not reviewed in a timely manner), and (2) all steps Defendants took to ensure that each of those individuals were seen, or the medications were renewed/refilled, or the reports were reviewed, as required by the November 10, 2017 order.

---

[14] The parties discussed Eyman's ongoing lack of compliance with this performance measure in February:

> THE COURT: All right. And the reason that I'm not going to focus on Eyman at this stage is that the last four months -- well, I guess I could certainly ask the question, do we have a heads up on December on Performance Measure 54?
> MR. BOJANOWSKI: It appears to be trending about the same as it is.
> THE COURT: 74?
> MR. BOJANOWSKI: Yeah, 74 -- well, it may trend actually down to 72, which is problematic.
> THE COURT: That's not good.
> [. . .]
> I was giving you a pass because I really was hopeful that there was a reason to think that we would return to the compliance level. But now that we have dropped off again, it is worthy of additional focus, as you say.

[2/8/17 Tr. at 32:7-16, 32:24-33:2]

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' pending Motion to Enforce the Stipulation [Doc. 1863] and find Defendants substantially noncompliant with the performance measures delineated above in Parts I and II. Plaintiffs also request that the Court order Defendants to provide within 14 days specific, detailed remedial plans for the performance measures delineated above, including deadlines and responsible parties for implementing the remedial plans. Plaintiffs ask that the Court extend its November 10, 2016 Order that Defendants utilize community health care resources [Doc. 1754 at 4] to PM 47 (Eyman, Florence, Lewis, Perryville, Phoenix, Tucson, and Yuma) and PM 94 (Eyman, Florence, and Tucson). Finally, Plaintiffs ask the Court to order Defendants to provide written proof no later than April 10, 2017, that show how many class members were affected by their failure to comply with the November 10, 2016 Order, and all steps taken to comply with the Order.

A proposed order is being lodged herewith.

Respectfully submitted,

Dated: March 30, 2017

**PRISON LAW OFFICE**

By: *s/ Corene Kendrick*
Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita Lomio (Cal. 254501)*
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email: dspecter@prisonlaw.com
ahardy@prisonlaw.com
snorman@prisonlaw.com
ckendrick@prisonlaw.com
rlomio@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)\*
Amy Fettig (D.C. 484883)\*\*
Jamelia Morgan (N.Y. 5351176)\*\*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@npp-aclu.org
           afettig@npp-aclu.org
           jmorgan@aclu.org

\*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
\*\*Admitted *pro hac vice*

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, PLLC**
P. O. Box 91398
Tucson, Arizona 85752
Telephone:  (520) 477-1475
Email:     kirstin@eidenbachlaw.com

Kathleen E. Brody (Bar No. 026331)
Daniel Pochoda (Bar No. 021979)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:     kbrody@acluaz.org
           dpochoda@acluaz.org

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:     dbarr@perkinscoie.com
           agerlicher@perkinscoie.com
           jhgray@perkinscoie.com

| | |
|---|---|
| 1 | Caroline Mitchell (Cal. 143124)* |
|   | Amir Q. Amiri (Cal. 271224)* |
| 2 | **JONES DAY** |
|   | 555 California Street, 26th Floor |
| 3 | San Francisco, California 94104 |
|   | Telephone:  (415) 875-5712 |
| 4 | Email:    cnmitchell@jonesday.com |
|   |              aamiri@jonesday.com |
| 5 | |
|   | *Admitted *pro hac vice* |
| 6 | |
|   | John Laurens Wilkes (Tex. 24053548)* |
| 7 | **JONES DAY** |
|   | 717 Texas Street |
| 8 | Houston, Texas 77002 |
|   | Telephone:  (832) 239-3939 |
| 9 | Email:    jlwilkes@jonesday.com |
| 10 | *Admitted *pro hac vice* |
| 11 | Jennifer K. Messina (N.Y. 4912440)* |
|    | **JONES DAY** |
| 12 | 222 East 41st Street |
|    | New York, New York 10017 |
| 13 | Telephone:  (212) 326-3498 |
|    | Email:    jkmessina@jonesday.com |
| 14 | |
|    | *Admitted *pro hac vice* |
| 15 | |
|    | *Attorneys for Plaintiffs Shawn Jensen;* |
| 16 | *Stephen Swartz; Sonia Rodriguez; Christina* |
|    | *Verduzco; Jackie Thomas; Jeremy Smith;* |
| 17 | *Robert Gamez; Maryanne Chisholm;* |
|    | *Desiree Licci; Joseph Hefner; Joshua* |
| 18 | *Polson; and Charlotte Wells, on behalf of* |
|    | *themselves and all others similarly situated* |

|   |   |
|---|---|
| 1 | **ARIZONA CENTER FOR DISABILITY LAW** |
| 2 | |
| 3 | By: _s/ Maya Abela_<br>Sarah Kader (Bar No. 027147)<br>Asim Dietrich (Bar No. 027927) |
| 4 | 5025 East Washington Street, Suite 202<br>Phoenix, Arizona 85034 |
| 5 | Telephone: (602) 274-6287<br>Email:   skader@azdisabilitylaw.org |
| 6 |          adietrich@azdisabilitylaw.org |
| 7 | Rose A. Daly-Rooney (Bar No. 015690)<br>J.J. Rico (Bar No. 021292) |
| 8 | Jessica Jansepar Ross (Bar No. 030553)<br>Maya Abela (Bar No. 027232) |
| 9 | **ARIZONA CENTER FOR DISABILITY LAW** |
| 10 | 177 North Church Avenue, Suite 800<br>Tucson, Arizona 85701 |
| 11 | Telephone: (520) 327-9547<br>Email: |
| 12 |   rdalyrooney@azdisabilitylaw.org<br>  jrico@azdisabilitylaw.org |
| 13 |   jross@azdisabilitylaw.org<br>  mabela@azdisabilitylaw.org |
| 14 | |
| 15 | *Attorneys for Arizona Center for Disability Law* |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2017, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
Kevin R. Hanger
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
khanger@swlfirm.com

*Attorneys for Defendants*

s/ D. Freouf