# EXHIBIT 1

LEGAL DEPARTMENT
NATIONAL PRISON PROJECT



AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

March 23, 2017

**BY ELECTRONIC MAIL ONLY**

Lucy Rand
Office of the Arizona Attorney General
1275 West Washington Street
Phoenix, AZ 85007-2926
Lucy.Rand@azag.gov

      Re:    *Parsons v. Ryan*

Dear Lucy:

We write regarding two document production issues.

**January 2017 CGARs**

Although you have previously informed the Court that CGARs are available 45 days after the end of the monitored month, we have still not received the January 2017 CGARs. Please let us know when we can expect to receive them.

**Defendants' response to Plaintiffs' February 15, 2017 request for documents**

Unfortunately, your response is incomplete or otherwise deficient in several respects.

**Request No. 11:** All documents reflecting or discussing errors, inaccuracies, or inconsistencies in Defendants' or Corizon's monitoring of compliance with the Stipulation's Performance Measures.

Your response states "THIS REQUEST IS COMPLETE," but that is not correct. It appears that some responsive documents from Nicole Taylor were produced, but those from Richard Pratt were not.[1] Please produce these documents, as required by the Court's order. *See* Doc. 1708 at 2 ("IT IS ORDERED the parties shall continue to work on this item with the three

---

[1] The only Pratt documents produced were emails between him and Nicole Taylor, presumably found during a search of Dr. Taylor's emails.

available contacts, Richard Pratt, the procurement officer and Dr. Nicole Taylor").

**Request No. 21:** All documents reflecting, discussing, or establishing policies and/or practices related to Defendants' "open clinic concept" [See Defs' Proposed Agenda for 12/14/16 Status Conference] and documents sufficient to show its implementation and compliance with the Court's Nov. 10, 2016 Order.

Your response states "THIS REQUEST IS COMPLETE," but once again, that appears not to be correct. The only documents you have produced are flyers you state were posted in the prison housing units. Please produce the remaining responsive documents, or confirm that none exist.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

**Request No 26:** All documents reflecting, discussing, or establishing policies and/or practices related to Defendants' compliance with the Court's Nov. 10, 2016 Order, with regard to the nine performance measures to which the order is applicable, and documents sufficient to show the implemation [sic] and compliance with the Order.

> **02/23/2017 RESPONSE: Defendants OBJECT to this request because any documents, if any exist, may include attorney-client privileged documents. Furthermore, Defendants have already produced documentation regarding "open clinics", Dashboard documents, and .... Defendants will need to determine what kind of documentation might exist before objecting further and/or attempting to obtain documentation pursuant to this request.**

The Court's November 10, 2016 order (Doc. 1754) applies to nine separate Performance Measures. Defendants have acknowledged that the "open clinic" addresses only PM 37; accordingly, the few documents Defendants have produced regarding the open clinic do not show compliance with the Court's order with regard to the remaining eight Performance Measures.[2] Plaintiffs and the Court are entitled to know what steps (if any) Defendants are taking to comply with this order. Please either produce the responsive documents, or confirm that no such documents exist.

**Request No. 27**: All written direction or instructions, including all training materials, provided to ADC or Corizon staff regarding compliance with the

---

[2] Indeed, Request No. 26 specified, "This is for all policy and program changes in addition to the request of 12/15/16 regarding the 'open clinic concept' and PM 37."

2

Court's orders on monitoring methodology, including but not limited to Doc. 1673, 1745, 1754, 1831, 1833, and 1915.

> **02/23/2017 RESPONSE: Defendants OBJECT to this request because any documents, if any exist, may include attorney-client privileged documents.**
>
> **Defendants further OBJECT to this request as vague and ambiguous because these Orders are many pages long and contain many rulings, many of which do not pertain to Plaintiffs' request. Furthermore, many of the rulings require reference to Court transcripts or other documents. Plaintiffs must specify their request and not just point to a long list of documents.**
>
> **Defendants further OBJECT to this request because the Court has already resolved some of the issues contained in the Orders in a manner different than was specified in the Order. (E.g., 1673 does not require reporting of the offering of annual influenza vaccinations.)**
>
> **Defendants further OBJECT to this request as duplicative because Plaintiffs have already requested some of this information in other requests for production, such as documentation regarding "open clinics", which is one of the topics in Dkt. 1754.**
>
> **Further, Defendants OBJECT to this request as unduly burdensome. Plaintiffs have not shown what benefit will be had from obtaining this documentation and cannot show that the benefit to Plaintiffs outweighs the burden on Defendants to search for and produce the documentation, if any.**
>
> **Finally, Defendants may need to make additional objections after it is determined what kind of documentation might exist.**

The Court's orders on monitoring methodology are mandatory and must be complied with. These orders are well known to counsel for both sides; your "vague and ambiguous" objection is not well taken.

It was disturbing to learn at the March 21 hearing that some ADC monitors are unfamiliar with some or all of the Court's orders on monitoring methodology. It is essential to know whether and to what extent Defendants have taken steps to ensure that the monitors are familiar with, and comply with, those orders.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

Again, please either produce the responsive documents, or confirm that no such documents exist.

If you are withholding any documents responsive to Plaintiffs' requests pursuant to a claim of privilege or work product protection, please produce a privilege log.

We request a response by April 3, so that we can raise any remaining issues with the Court on April 17.

Very truly yours,

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

David C. Fathi

Cc: All counsel

# EXHIBIT 2



PRISON LAW OFFICE
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

February 14, 2017

Mr. Tim Bojanowski
Struck, Wieneke & Love, P.L.C.
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@swlfirm.com

RE:   *Parsons v. Ryan*, Defendants' Compliance With Doc. 1754

Dear Mr. Bojanowski,

I write regarding Defendants' compliance with the Court's November 10, 2016 Order (Doc. 1754), and Defendants' refusal to produce responsive documents related to Defendants' compliance with that order.

In our December 15, 2016 monthly request for documents, we requested "All documents reflecting, discussing, or establishing policies and/or practices related to Defendants' "open clinic concept" [See Defs' Proposed Agenda for 12/14/16 Status Conference] and documents sufficient to show its implementation and compliance with the Court's Nov. 10, 2016 Order."

Defendants refused to produce any responsive documents on January 17, 2017, and instead Ms. Rand provided us with the following objections:

> To the extent these documents even exist, this request is overly broad, vague and ambiguous, irrelevant, and not required to be produced under the Stipulation, as it is not "information reasonably necessary to perform [Plaintiffs'] responsibilities required by this Stipulation". (Dkt. 1185 at 12.) OBJECTION: To the extent these documents even exist, this request contemplates producing documents that are protected by the attorney-client and/or work-product privileges. OBJECTION: To the extent these documents even exist, these documents are unduly burdensome to produce and are likely maintained by a large number of individuals and; therefore, are not maintained and/or organized in such a manner as to be readily or easily obtainable without undue effort and disruption to the prison and/or medical staff.

We do not believe your objections to this request are meritorious; for example, memoranda sent to health care or custody staff plainly are not protected by the attorney-client privilege or work product doctrine; our request for it is not "vague and ambiguous," and production of the requested documents would not be "unduly burdensome." Furthermore, to the extent that Defendants claim any of this information is privileged, Defendants must produce a Privilege Log.

Board of Directors
Penelope Cooper, President • Michele WalkinHawk, Vice President
Marshall Krause, Treasurer • Christiane Hipps • Margaret Johns
Cesar Lagleva • Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

Mr. Tim Bojanowski
RE: Failure to Provide Documents
Re Compliance with Doc. 1754
February 14, 2017
Page 2

Based upon Ms. Rand's response to our request, it is our understanding that you decline to produce any documents in response to this request; accordingly, we will ask Judge Duncan to order production. Please let us know if our understanding is incorrect.

Furthermore, when the parties spoke by telephone on December 28, 2016, you promised to provide us an update by December 30, 2016, as to how Defendants are complying with the Court's order with respect to the other eight measures besides PM 37. (PM 11 – Eyman, Florence, Lewis; PM 13 – Florence, Lewis, Perryville; PM 39 – Eyman, Florence, Lewis, Perryville, Tucson; PM 46 – Douglas, Florence, Perryville, Tucson, Yuma;  PM 54 – Tucson; PM 66- Tucson; PM 85 – Florence, Lewis, Tucson; PM 92 – Perryville).  To date, we have not been provided this information.

On that call, you also stated that Defendants would provide "dashboard" documents or other documents showing compliance no later than January 11, 2017. To date, Defendants have provided us and the Court with only several pages of documents from one prison on one date.

Finally, at the February 8 hearing, the Court ordered Defendants to provide all "preliminary" December CGAR data that you repeatedly alluded to during the hearing within seven days.  We expect to receive those documents by tomorrow, February 15.

Thank you for your attention to this matter. We look forward to receiving all of the additional information that we have requested and/or that the Court has ordered Defendants to provide.

Sincerely yours,

*/s/ Corene Kendrick*

Corene Kendrick, Staff Attorney

cc:     Counsel of Record

# EXHIBIT 3



STRUCK WIENEKE & LOVE          3100 West Ray Road, Suite 300, Chandler, Arizona 85226 | 480.420.1600 | swlfirm.com

April 10, 2017

Daniel P. Struck
Partner

Kathleen L. Wieneke
Partner

Rachel Love
Partner

Timothy J. Bojanowski
Partner

Christina Retts
Partner

Nicholas D. Acedo
Partner

Amy L. Nguyen
Partner

Tara B. Zoellner
Associate

Ashlee B. Fletcher
Associate

Anne M. Orcutt
Associate

Kevin L. Nguyen
Associate

Jacob B. Lee
Associate

Kevin R. Hanger
Associate

Corene Kendrick
Staff Attorney
PRISON LAW OFFICE
General Delivery
San Quentin, CA  94964

**RE:** *Parsons v. Ryan* – **Plaintiffs' February 14, 2017 Letter regarding Defendants' Compliance with Dkt. 1754**

Dear Corene:

This letter responds to your correspondence dated February 14, 2017 regarding production issues relating to the Court's November 10, 2016 Order.

<u>Open Clinic Concept Documentation and Dashboards</u>

Defendants produced the "open clinic concept" documents for all prison complexes on December 30, 2016, bates labeled ADCM757503-757505 and ADCM757577-757619.  Additionally, Defendants produced HNR Daily Nurse Line (NL) and Provider Line (PL) Dashboards for all complexes on February 15, 2017, bates labeled ADCM833255-833416.

<u>Update regarding Defendants' Compliance with HC PM #11 (E, F, L), PM #13 (F, L, PV), PM #39 (F, F, L, PV, T), PM #46 (D, F, PV, T, Y), PM #54 (T), PM #66 (T), PM #85 (F, L, T), and PM #92 (PV)</u>

As you are aware, the Court's November 10, 2016 Order went into effect on December 10, 2016.  As a result, the January 2017 CGAR results cover a portion of time prior to the effective date of the Court's Order.  The first full month of reporting following the effective date of the Court's Order is not reflected until the February 2017 CGARs.  The final January 2017 and preliminary February 2017 CGAR results for the measures included in the November 10, 2016 Order are as follows:

Corene Kendrick
April 10, 2017
Page 2

| HC PM | Complex | December 2017 | January 2017 | February 2017 |
|---|---|---|---|---|
| 11 | Eyman | 80% | 48% | 76% |
| | Florence | 87% | 93% | 92% |
| | Lewis | 66% | 73% | 68% |

Florence remains compliant for PM 11.

At Eyman, noncompliance with this measure was a result of the failure to document delivery of KOP medications on the paper MARs. The medications arrived at the facility, and the inmates received them within the required two days, but this was not documented in eOMIS. In addition, a provider at Eyman was mistakenly writing STAT orders instead of routine orders. The provider has been retrained on entering orders in eOMIS.

At Lewis, officers are delivering KOP medications and having the inmates sign rosters indicating that the inmates received their medications. The inmates are receiving the medications in a timely manner, but the rosters are not being entered into eOMIS. Noncompliance with this measure does not reflect a failure to provide the medications, but is instead a result of staff not following procedure. The Facility Health Administrator (FHA) at Lewis has been terminated for failure to ensure compliance with the CGAR measures, and a more experienced FHA started on April 3, 2017.

In addition, a training and development management director has been hired and will be responsible for training nursing staff statewide on eOMIS.

| HC PM | Complex | December 2017 | January 2017 | February 2017 |
|---|---|---|---|---|
| 13 | Florence | 73% | 75% | 54% |
| | Lewis | 76% | 63% | 79% |
| | Perryville | 72% | 100% | 90% |

Corene Kendrick
April 10, 2017
Page 3

Perryville is compliant for PM 13.

At all sites, including Florence and Lewis, expiration reports are now available from PharmaCorr on a daily basis to allow for better tracking of renewals without interruptions. Previously, the reports provided by PharmaCorr covered a 15-day period, and medications may have expired before the complex received the report. The Assistant Facility Health Administrators (AFHAs) have been tasked with reviewing renewals from the daily reports and ensuring that prescribing providers are aware of expiring medications.

| HC PM | Complex | December 2017 | January 2017 | February 2017 |
|---|---|---|---|---|
| 39 | Eyman | 68% | 52% | 69% |
| | Florence | 70% | 79% | 68% |
| | Lewis | 55% | 82% | 69% |
| | Perryville | 84% | 83% | 91% |
| | Tucson | 79% | 94% | 97% |

Perryville and Tucson are compliant for PM 39.

Corizon has developed a new report to track the required timeframe for this measure, which better captures the inmates who need to be seen prior to the expiration of the 14-day timeframe. This report was implemented in early February.

At Eyman, two nurses were not scheduling appointments correctly and were not documenting correctly in eOMIS. Each unit will now have a designated nurse that will be responsible for assuring compliance with this measure for the unit. At Florence, nurses were scheduling inmates at the end of the 14-day timeframe, and providers were rescheduling inmates, resulting in inmates being seen outside the required timeframes. HNR nurses have been directed that when scheduling inmates, they need to schedule well before the end of the 14-day timeframe. When the appointment is scheduled, a note will be added to the comments to alert the provider that the inmate must be seen by X date. Providers have been directed not to cancel or reschedule appointments. Eyman and Florence are also upgrading their telemedicine capabilities so that inmates are timely seen even if a provider is not physically present.

Corene Kendrick
April 10, 2017
Page 4

| HC PM | Complex | December 2017 | January 2017 | February 2017 |
|---|---|---|---|---|
| 46 | Douglas | 80% | 98% | 98% |
| | Florence | 60% | 50% | 65% |
| | Perryville | 42% | 50% | 94% |
| | Tucson | 63% | 68% | 82% |
| | Yuma | 74% | 96% | 94% |

Douglas, Perryville, Tucson, and Yuma are compliant for PM 46.

Corizon held an all-provider meeting to train the providers on eOMIS entries and the importance of timely reviewing labs. At all sites, including Florence, reports covering a one-week timeframe will be pulled daily for lab and x-ray results each day for each yard and reviewed by the provider or a designee for that yard, who will ensure that the labs and x-ray results have been reviewed by the end of his or her shift. A designated person will pull a complex-wide report for lab and x-ray results to ensure that the providers are reviewing in a timely manner. In addition, Corizon has hired two new providers to review labs statewide and work with onsite providers to take action on the results

| HC PM | Complex | December 2017 | January 2017 | February 2017 |
|---|---|---|---|---|
| 54 | Tucson | 92% | 79% | 96% |

Tucson is compliant for PM 54. The Site Medical Director (SMD) has reviewed the required follow-up timeframes with the providers and reinforced the importance of compliance. Previously, the providers were not entering orders in the right location in eOMIS, and there were mistakes in scheduling appointments, but the providers have received additional training on these issues.

| HC PM | Complex | December 2017 | January 2017 | February 2017 |
|---|---|---|---|---|
| 66 | Tucson | 30% | 30% | 80% |

Corene Kendrick
April 10, 2017
Page 5

Tucson is now compliant for PM 66. At Tucson, the providers were completing all rounds in the IPC at one time, but were not documenting their rounds in eOMIS in a timely fashion because there is no Wi-Fi in the IPC at Tucson. The providers have been instructed to document the time the patient was seen in the encounter as they are charting following the completion of their rounds and not to merely rely on the time that is auto generated by eOMIS at the time of the entry.

| **HC PM** | **Complex** | **December 2017** | **January 2017** | **February 2017** |
|---|---|---|---|---|
| 85 | Florence | 100% | 100% | 85% |
| | Lewis | 90% | 83% | 93% |

Florence and Lewis remain compliant for PM 85.

| **HC PM** | **Complex** | **December 2017** | **January 2017** | **February 2017** |
|---|---|---|---|---|
| 92 | Perryville | N/A | N/A | N/A |

Perryville was marked as N/A for this measure because, as Plaintiffs are aware, there are no longer any inmates at Perryville who are classified as maximum custody.

<u>Preliminary December 2016 CGAR Data</u>

We disagree with your assertion that "at the February 8, 2017 hearing, the Court ordered Defendants to provide all 'preliminary' December CGAR data that you repeatedly alluded to during the hearing within seven days." We agreed to produce the dashboard data that was referenced during that hearing, and the Court directed us to produce the data within seven days. That information has been produced to you. The Court declined to order Defendants to produce preliminary CGAR data. Moreover, in light of the fact that the final December CGAR data was produced to you, the final data supersedes the preliminary data, and, as Defendants are not relying on the preliminary data for any purpose, there is no need to produce the preliminary December CGAR data.

Regards,

*[signature]*

Timothy J. Bojanowski

Corene Kendrick
April 10, 2017
Page 6


TJB/eap
cc:     All counsel of record