Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
       adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-DKD <br><br> **MOTION FOR RECONSIDERATION OF APRIL 24, 2017 ORDER (DOC. 2030)** |

LEGAL135497334.2

**INTRODUCTION**

It its order of April 24, 2017, the Court stated:

> Part of the dispute between the parties is that they do not have a shared standard to determine when a location/performance measure is non-compliant. Accordingly, the Court has concluded that a location/performance [sic] is non-compliant when (1) 6 of 24 months are non-compliant; and (2) three consecutive months are non-compliant. *See* Stipulation at ¶ 21(b).[1]

[Doc. 2030 at 1]

However, the Court has previously considered, and rejected, this definition of substantial noncompliance. In response to Plaintiffs' Motion to Enforce the Stipulation (Doc. 1535), Defendants argued as follows:

> In order for a measure to drop off, it must be compliant for eighteen months out of a twenty-four month period and have not been out of compliance for three or more consecutive months within the past eighteen month period. (Dkt. 1185 at 4 - 5). Defendants assert that of the above measures and facilities, as of October 15, 2015, the following performance measures: (1) did not have more than 6 total months of non-compliance; or (2) were not non-compliant for three or more consecutive months. As a result, at the time of Plaintiffs' October 15, 2015 Notice of Substantial Non-Compliance, the following measures at the following facilities were not in substantial non-compliance pursuant to the Stipulation[.]

[Doc. 1580 at 2-3] Plaintiffs responded that "Defendants' position is without merit, and is based on their erroneous conflation of the Stipulation's standards for termination of monitoring of a given Performance Measure, and the standards for finding non-compliance." [Doc. 1581 at 2]

The Court agreed with Plaintiffs:

> Plaintiff's opposition is well-taken. It appears that Defendants are referring to the Stipulation's standard for "Termination of the duty to measure and report on a particular performance

---

[1] Paragraph 21 of the Stipulation discusses prisoners with serious mental illness and has no subsection (b); the Court presumably intended to refer to ¶ 20(b), which is titled "Termination of the duty to measure and report on a particular performance measure," and applies to the maximum custody performance measures. [*See* Doc. 1185 at 8] The identically-titled section applicable to the health care performance measures is ¶ 10(b). [*Id.* at 4]

LEGAL135497334.2

measure." (Doc. 1185 at ¶ 10(b))  This is not the same as the Stipulation's standard for "Determining substantial compliance with a particular performance measure at a particular facility." (Doc. 1185 at ¶ 10(a)).  The current issue pending before the Court is whether Defendants are in substantial compliance and, therefore, the Court will rely on the standard for substantial compliance as established by the Stipulation at ¶ 10(a)(i):

> For the first twelve months after the effective date of this Stipulation, meeting or exceeding a seventy-five percent (75%) threshold for the particular performance measure that applies to a specific complex.

[Doc. 1583 at 1-2 (May 20, 2016)][2]

The Court reiterated this standard at the September 8, 2016 hearing:

> MR. STRUCK: Well, the plaintiffs' part of the requirement is they send us a notice of noncompliance, and that starts kind of the process.  Then we go to the mediation and we end up ultimately coming to you.  So we're getting letters from them with respect to performance measures that we say are in substantial noncompliance where there's just one month out of, in a particular facility, that is not compliant.  And I understand.  I read the Court's order.  I remember what you said, but I don't -- it wasn't really clear to me whether you really believe that if one, for example –
>
> THE COURT: Yeah.  I really do believe.
>
> MR. STRUCK: -- if Winslow is out of compliance for one month and in compliance for 11 months that's substantially noncompliant.
>
> THE COURT: Well, they are, for that month, they are substantially noncompliant for that one month.  Obviously with respect to your arguments, you can see that I pay attention to, you saw -- well, you will see from the e-mail that I noted trends and I denote those.  But I do think that as a threshold interpretation of the stipulation that if you fall below the percentage requirement that's required in the stipulation at 80 percent now and 85 percent in several months in a given month at a given institution on a given performance measure, then plaintiffs are well within their rights to say you missed it here.

[Transcript of Sept. 8, 2016 Hearing at 30:13-31:12]

---

[2] Defendants did not seek reconsideration of this order.

Because there is no reason for the Court to reverse its previous order, and because the Court's new definition of substantial noncompliance disables the Court from remedying even egregious noncompliance, Plaintiffs now move for reconsideration of the Court's April 24, 2017 order (Doc. 2030).[3]

**ARGUMENT**

**I.    THE COURT'S PRIOR RULING IS THE LAW OF THE CASE.**

> "Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988) (citations omitted). The doctrine is "a judicial invention designed to aid in the efficient operation of court affairs," *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (quoting *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990)), and is "founded upon the sound public policy that litigation must come to an end," *Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002), *cert. denied*, 540 U.S. 1016, 124 S. Ct. 566, 157 L. Ed. 2d 429 (2003). Further, the doctrine serves to advance the "principle that in order to maintain consistency during the course of a single lawsuit, reconsideration of legal questions previously decided should be avoided." *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986) (citation omitted).

*United States v. Smith*, 389 F.3d 944, 948–49 (9th Cir. 2004).

"As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). Reconsideration of a previously decided issue is appropriate only when there has been an "intervening change of controlling authority, new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice." *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995) (citing *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th

---

[3] Indeed, the standard for establishing substantial noncompliance set forth in Doc. 2030 is even more demanding than the Stipulation's standard for terminating monitoring and reporting altogether. Under the latter standard, monitoring and reporting may not terminate if *either* (1) the measure has not been compliant for eighteen of the last 24 months, *or* (2) it has been noncompliant for three consecutive months. [*See* Doc. 1185 ¶ 10(b)] By contrast, under Doc. 2030 a finding of noncompliance requires that *both* "(1) 6 of 24 months are non-compliant; *and* (2) three consecutive months are non-compliant." [Doc. 2030 at 1 (emphasis added)]

Cir. 1991)). Generally, and in the *Merritt* case cited above, the second exception is quoted as requiring "substantially different" evidence. *See Merritt*, 932 F.2d at 1320 & n. 2.

The Court's original definition of substantial noncompliance, set forth in Doc. 1583, is the law of the case. The Court has reiterated that definition, and all parties have relied upon it for nearly a year. The stringent test for reversal of that ruling is not met here. *See U.S. ex rel. Eitel v. Reagan*, 35 F. Supp. 2d 1151, 1155 (D. Ariz. 1998) (adhering to prior ruling where party "has not established that any exceptions to the law of the case doctrine apply"), *aff'd sub nom. Eitel v. United States*, 242 F.3d 381 (9th Cir. 2000); *Guadiana v. State Farm Fire & Cas. Co.*, No. CIV 07326 TUC FRZ (GEE), 2009 WL 3763693, at *5 (D. Ariz. Nov. 10, 2009) (adhering to prior ruling where party "presents no evidence of special circumstance that would allow the court discretion to depart from the law of the case doctrine").

## II. THE COURT'S NEW DEFINITION OF SUBSTANTIAL NONCOMPLIANCE IS INCONSISTENT WITH CANONS OF CONTRACT CONSTRUCTION AND WITH THE PLAIN LANGUAGE OF THE STIPULATION.

Paragraph 10(a) of the Stipulation is titled "Determining substantial compliance with a particular performance measure at a particular facility." Paragraph 10(b) is titled "Termination of the duty to measure and report on a particular performance measure." [Doc. 1185 at 3-4] In its May 20, 2016 order, the Court correctly recognized that these two separate provisions "[are] not the same." [Doc. 1583 at 1]

However, the Court's new definition conflates these two separate provisions, ruling that the ¶ 10(b) standard for termination of monitoring and the ¶ 10(a) standard for determining compliance with a particular performance measure at a particular facility are one and the same. [Doc. 2030 at 1] This cannot be reconciled with the rule that "a contract should be construed to give effect to all of its provisions and to prevent any of the provisions from being rendered meaningless," *Scholten v. Blackhawk Partners*, 909 P.2d 393, 396 (Ariz. Ct. App. 1995); *see also Rouser v. White*, 825 F.3d 1076, 1081 (9th Cir.

2016) ("Like terms in a contract, distinct provisions of consent decrees are independent obligations").

More fundamentally, the Court's new definition is inconsistent with the structure and the plain language of the Stipulation. Paragraph 10(b) provides that the duty to monitor and report on a particular performance measure ends when that performance measure "is in compliance, *as defined in [Paragraph 10(a)],* for eighteen months out of a twenty-four month period," and "has not been out of compliance, *as defined in [Paragraph 10(a)],* for three or more consecutive months within the past 18-month period" (emphasis added). [Doc. 1185 at 4-5] Thus, the standards established by ¶¶ 10(a) and 10(b) *cannot* be the same; otherwise, the standard for termination of monitoring becomes entirely circular.

### III. THE COURT'S NEW DEFINITION IS INCONSISTENT WITH THE ESTABLISHED MEANING OF SUBSTANTIAL COMPLIANCE, AND WILL DISABLE THE COURT FROM REMEDYING EGREGIOUS AND DANGEROUS NONCOMPLIANCE.

Substantial compliance is a contract doctrine "to assist the court in determining whether conduct should, in reality, be considered the equivalent of compliance under the contract." *Joseph A. by Wolfe v. New Mexico Dep't of Human Svcs.*, 69 F.3d 1081, 1086 (10th Cir. 1995) (citing John D. Calamari & Joseph M. Perillo, The Law of Contracts § 11-15, at 454 (3d ed. 1987)); *see also Rouser*, 825 F.3d at 1081 ("courts don't release parties from a consent decree unless they have substantially complied with *every one* of its provisions." (emphasis in original)). "[T]he touchstone of the substantial compliance inquiry is whether Defendants frustrated the purposes of the consent decree—i.e. its essential requirements." *Joseph A.*, 69 F.3d at 1086.

An essential purpose of the Stipulation is to ensure that Arizona prisoners receive adequate health care. But under the Court's new definition, a Performance Measure that had scored *zero* in four out of the previous five months could not be found noncompliant, as long as it was compliant in the fifth month (for example: January, 0%; February, 0%; March, 80%; April, 0%; May, 0%). Accordingly, even faced with such egregious

noncompliance with Performance Measures essential to patient health and safety, the Court would be powerless to order a remedy. [*See* Stipulation ¶ 36]  While substantial compliance may be "not amenable to a mathematically precise definition," *Rouser*, 825 F.3d at 1082 (internal quotation marks and citation omitted), it certainly demands more than this.

Thus, in *Halderman v. Pennhurst State School and Hosp.*, 901 F.2d 311, 324 (3d Cir. 1990), the court held that providing adequate services to 97% of class members did not automatically establish substantial compliance.  To hold otherwise, the court said, would allow defendants "to treat a few . . . class members in any fashion they want so long as they comply with the [settlement] with regard to a substantial number of other . . . class members.  It is safe to say that this inequitable and disconcerting principle is not what the parties contemplated when they agreed to the [settlement], it is not within the specific language of the agreement, and it certainly is not part of the spirit with which the parties resolved this troublesome litigation." *Id.*

The Court's new definition of substantial noncompliance will disable it from addressing noncompliance far more egregious than that in *Halderman*, to the detriment of the health and safety of the plaintiff class.  [*See, e.g.*, Doc. 1539 at 21-22 (Defendants' noncompliance with PM 54 (chronic disease care) "reveals a shocking pattern of failure, where some chronic care appointments lapse for over a year," including "Lumley patient with rheumatoid arthritis not seen for a chronic care appointment for 19 months after her diagnosis; patient at Santa Rosa Unit with blood disorders and anemia not seen for a chronic care appointment for 14 months")]

## CONCLUSION

For the reasons set forth above, the Court should grant the motion for reconsideration and reaffirm the definition of substantial noncompliance set forth in its May 20, 2016 order. [Doc. 1583 at 1-2]

| | | |
|---|---|---|
| 1 | Dated: May 8, 2017 | **ACLU NATIONAL PRISON PROJECT** |
| 2 | | |
| 3 | | By:  s/ David C. Fathi |
| | | David C. Fathi (Wash. 24893)* |
| 4 | | Amy Fettig (D.C. 484883)** |
| | | Jamelia Natasha Morgan (N.Y. 5351176)** |
| 5 | | Victoria Lopez (Ill. 6275388)* |
| 6 | | 915 15th Street N.W., 7th Floor |
| | | Washington, D.C. 20005 |
| 7 | | Telephone: (202) 548-6603 |
| | | Email:    dfathi@aclu.org |
| 8 | | afettig@aclu.org |
| | | jmorgan@aclu.org |
| 9 | | vlopez@aclu.org |
| 10 | | *Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts. |
| 11 | | **Admitted *pro hac vice* |
| 12 | | Donald Specter (Cal. 83925)* |
| | | Alison Hardy (Cal. 135966)* |
| 13 | | Sara Norman (Cal. 189536)* |
| | | Corene Kendrick (Cal. 226642)* |
| 14 | | Rita K. Lomio (Cal. 254501)* |
| 15 | | **PRISON LAW OFFICE** |
| | | 1917 Fifth Street |
| 16 | | Berkeley, California 94710 |
| | | Telephone: (510) 280-2621 |
| 17 | | Email:    dspecter@prisonlaw.com |
| | | ahardy@prisonlaw.com |
| 18 | | snorman@prisonlaw.com |
| | | ckendrick@prisonlaw.com |
| 19 | | rlomio@prisonlaw.com |
| 20 | | *Admitted *pro hac vice* |
| 21 | | Daniel C. Barr (Bar No. 010149) |
| | | Amelia M. Gerlicher (Bar No. 023966) |
| 22 | | John H. Gray (Bar No. 028107) |
| | | **PERKINS COIE LLP** |
| 23 | | 2901 N. Central Avenue, Suite 2000 |
| | | Phoenix, Arizona 85012 |
| 24 | | Telephone: (602) 351-8000 |
| | | Email:    dbarr@perkinscoie.com |
| 25 | | agerlicher@perkinscoie.com |
| | | jhgray@perkinscoie.com |
| 26 | | |
| 27 | | |
| 28 | | |

|   |   |
|---|---|
| 1 | Kirstin T. Eidenbach (Bar No. 027341) |
|   | **EIDENBACH LAW, PLLC** |
| 2 | P. O. Box 91398 |
|   | Tucson, Arizona 85752 |
| 3 | Telephone: (520) 477-1475 |
|   | Email:   kirstin@eidenbachlaw.com |
| 4 |   |
|   | Kathleen E. Brody (Bar No. 026331) |
| 5 | **ACLU FOUNDATION OF** |
|   | **ARIZONA** |
| 6 | 3707 North 7th Street, Suite 235 |
|   | Phoenix, Arizona 85013 |
| 7 | Telephone: (602) 650-1854 |
|   | Email:   kbrody@acluaz.org |
| 8 |   |
|   | Caroline Mitchell (Cal. 143124)* |
| 9 | **JONES DAY** |
|   | 555 California Street, 26th Floor |
| 10 | San Francisco, California 94104 |
|   | Telephone: (415) 875-5712 |
| 11 | Email:   cnmitchell@jonesday.com |
| 12 | *Admitted *pro hac vice* |
| 13 | John Laurens Wilkes (Tex. 24053548)* |
|   | **JONES DAY** |
| 14 | 717 Texas Street |
|   | Houston, Texas 77002 |
| 15 | Telephone: (832) 239-3939 |
|   | Email:   jlwilkes@jonesday.com |
| 16 |   |
|   | *Admitted *pro hac vice* |
| 17 |   |
| 18 | *Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith;* |
| 19 | *Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua* |
| 20 | *Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated* |
| 21 |   |
| 22 |   |
| 23 |   |
| 24 |   |
| 25 |   |
| 26 |   |
| 27 |   |
| 28 |   |

**ARIZONA CENTER FOR DISABILITY LAW**


By: s/ Maya Abela
    Sarah Kader (Bar No. 027147)
    Asim Dietrich (Bar No. 027927)
    5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
    Telephone: (602) 274-6287
    Email: skader@azdisabilitylaw.org
           adietrich@azdisabilitylaw.org

    Rose A. Daly-Rooney (Bar No. 015690)
    J.J. Rico (Bar No. 021292)
    Jessica Jansepar Ross (Bar No. 030553)
    Maya Abela (Bar No. 027232)
    **ARIZONA CENTER FOR DISABILITY LAW**
    177 North Church Avenue, Suite 800
    Tucson, Arizona 85701
    Telephone: (520) 327-9547
    Email:
        rdalyrooney@azdisabilitylaw.org
        jrico@azdisabilitylaw.org
        jross@azdisabilitylaw.org
        mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2017, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
Kevin R. Hanger
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
khanger@swlfirm.com

*Attorneys for Defendants*

s/ D. Freouf