Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
       adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | No. CV 12-00601-PHX-DKD<br><br>**PLAINTIFFS' STATEMENT REGARDING THE APPOINTMENT OF A SPECIAL MASTER OR COURT EXPERT** |

LEGAL135502214.1

## INTRODUCTION

At the April 17, 2017 hearing, the Court instructed the parties "to present to the court what they think [is] the significance of the testimony" heard at the evidentiary hearings held on March 8, 21, and 28, and April 17, 2017. [Transcript of April 17, 2017 Hearing ("4/17/17 Tr.") at 670:20-21]  The Court gave notice to the parties under Rule 53(b)(1) of the Federal Rules of Civil Procedure that it was contemplating appointing a Special Master to evaluate Defendants' monitoring program and to provide guidance to the Court on potential remedial measures. [*Id.* at 673:24-674:21]  The Court also ordered the parties to address the responsibilities of a Special Master, how best to select that person, and how to allocate the cost of the mastership. [*Id*. at 675:11-22]

This brief addresses the Court's questions regarding the appointment of a Special Master; Plaintiffs are filing concurrently a brief regarding and detailing the significance of the testimony heard at the evidentiary hearings.

Plaintiffs wholeheartedly agree that the dysfunctional and unreliable CGAR process, the complexities of the remedial issues, and Defendants' abject failure to improve critical health care functions over the last two years support the appointment of a neutral monitor.  However, because of the strict limitations that Congress placed on the appointment of special masters in prison conditions cases through the Prison Litigation Reform Act ("PLRA"), Plaintiffs do not support the appointment of a Rule 53 Special Master.  Instead, Plaintiffs believe that the Court should appoint an expert under Rule 706 of the Federal Rules of Evidence.  The expert should be charged with assisting the Court in evaluating the reliability of Defendants' monitoring system and the adequacy of their remedial plans, and providing guidance to the Court on the nature and scope of any future remedial orders.

The full cost of the expert must be borne by Defendants, the party solely responsible for the failure to timely comply with the Stipulation, instead of indigent prisoners and the Arizona Center for Disability Law, a nonprofit organization.  The $3 million in fines that Defendant Pratt testified Corizon has paid ADC for its failure to

comply with the Stipulation and the staffing requirements of the ADC-Corizon contract should be used by ADC to cover the cost of a Rule 706 expert. [4/17/17 Tr. at 640:2-4]

**I.     THE COURT SHOULD NOT APPOINT A RULE 53 SPECIAL MASTER, BUT INSTEAD SHOULD APPOINT AN EXPERT UNDER RULE 706 OF THE FEDERAL RULES OF EVIDENCE**

The Prison Litigation Reform Act ("PLRA") "has substantially limited the capacity of federal courts to appoint special masters to oversee prison conditions, specifically in order to ensure compliance with the Eighth Amendment." *Webb v. Goord*, 340 F.3d 105, 111 (2d Cir. 2003). First, the PLRA requires the parties to submit the names of five candidates and allows each party to eliminate three of the opposing party's candidates. 18 U.S.C. §3626(f)(2). This provision will undoubtedly remove some very qualified candidates from the Court's consideration.

Second, compensation for a special master is limited to the CJA rate, which currently is $146 per hour. [*See* Declaration of Alison Hardy ("Hardy Decl."), Ex. 1 at 37 (FY 2017 Federal Judiciary Budget Summary)] Further, all costs and compensation associated with a Special Master must be paid by the judiciary. 18 U.S.C. § 3626(f)(4). Even if the judiciary has funds available for this purpose, it is extremely unlikely that any qualified individual who has expertise in prison conditions, health care, and monitoring methodology would accept an appointment at that rate.

Third, special masters are prohibited from having any *ex parte* communications. 18 U.S.C. § 3626(f)(6)(B). This limitation will seriously inhibit the candid flow of information between the parties and the Special Master.

For these reasons, Plaintiffs submit that as a practical matter, a Special Master is not the most viable or effective method of providing the Court with the information and assistance it needs to enforce the Stipulation.

**A.     The PLRA Does Not Prohibit the Court From Appointing an Expert Under Rule 706**

Rule 706(a) of the Federal Rules of Evidence is a cost-efficient, flexible and proven method of delivering assistance to a court in prison conditions cases. That rule

provides that the Court may appoint an expert on its own or from nominations submitted by the parties. Fed. R. Evid. Rule 706(a). The Court must advise the expert of his or her duties after conferring with the parties, and in civil cases, it can set reasonable compensation that is allocated among the parties "in the proportion and at the time that the court directs. . . ." Rule 706(c)(2).

The PLRA's limitations on the appointment and role of Special Masters do not reach the Court's power to appoint other agents charged with helping it enforce a court ordered remedy. The Ninth Circuit has analyzed the legislative history of the PLRA as it relates to this question. "Monitors (or other court agents) were not included in the limitations applicable to special masters. . . . We conclude that § 3626(f) as finally enacted neither applies to receivers nor prohibits their use in implementing judicial relief in prison litigation." *Plata v. Schwarzenegger*, 603 F.3d 1088, 1096 (9th Cir. 2010); *accord, Benjamin v. Fraser*, 343 F.3d 35, 45-46 (2d Cir. 2003), *abrogated in part on other grounds by Caiozzo v. Koreman*, 581 F.3d 63, 70-72 (2d Cir. 2009).

Like the monitor in *Benjamin* and the Receiver in *Plata*, a Rule 706 expert would not have quasi-judicial power of a Rule 53 Special Master to "convene and to regulate hearings, to rule on the admissibility of evidence, to subpoena and swear witnesses, and to hold non-cooperating witnesses in contempt." *Benjamin*, 343 F.3d at 45. Instead, such experts commonly act more like monitors who assess progress toward compliance (or lack thereof), promote communication and discussion among the parties, and provide reports to the court on the adequacy of the defendants' remedial plans. *See Handberry v. Thompson*, 446 F.3d 335, 352 (2d Cir. 2006) (following *Benjamin* and holding judiciary is not required under the PLRA to pay monitor's fees because monitor is not a special master).

Plaintiffs propose that the qualifications and duties of the Rule 706 expert be similar to those of the monitors in *Benjamin* and *Handberry*, and consistent with those in other ongoing prison conditions cases. *See, e.g.*, *Armstrong v. Schwarzenegger*, 2007 WL 1687776 (N.D. Cal. June 11, 2007) (appointing a Rule 706 expert post-judgment in prison class action regarding prisoners with disabilities); *Armstrong v. Brown*, 768 F.3d 975 (9th

1  Cir. 2014) (noting district court's Rule 706 expert); *Plata v. Schwarzenegger*, 2005 WL
2  2932253 (N.D. Cal. October 3, 2005) (district court appointed post-judgment court expert
3  in medical care class action); *see also Karsjens v. Jesson*, 109 F. Supp. 3d 1139, 1150
4  (D. Minn. 2015) (four experts appointed in case challenging civil commitment of sex
5  offenders).  The expert's qualifications would include experience as a correctional health
6  care administrator with oversight of medical and mental health systems; knowledge and
7  experience in random sampling methodology; and, if possible, prior experience as an
8  expert or monitor of correctional systems.  The expert's duties would include
9  (1) evaluating the reliability and accuracy of ADC's monitoring program, including the
10 CGARs, (2) absent agreement of the parties, evaluating any proposed changes to the
11 Monitoring Guide, (3) undertaking or supervising an evaluation of the adequacy of
12 clinical staffing to comply with the requirements of the Stipulation, (4) evaluating the
13 adequacy of Defendants' remedial plans, (5) mediating any discovery disputes, and (6) if
14 requested by Magistrate Judge Bade, attending mediation sessions.  To perform those
15 functions, the expert would have reasonable access to all relevant parts of ADC state
16 prisons, all relevant documents, all persons, and all institutional meetings, trainings and
17 programs necessary to fulfill the expert's functions.
18     The parties should be ordered to meet and confer in an attempt to agree on an
19 expert or experts to fulfill these functions.  If within thirty days there is no agreement, the
20 parties should submit no more than three candidates for consideration by the Court.
21     **B.     Defendants Should Pay All of the Experts' Fees and Expenses**
22     Rule 706(c)(2) provides that the expert's compensation shall be paid by the parties
23 and shall be allocated in a manner directed by the Court.  Because the appointment of an
24 expert is necessary solely due to Defendants' failure to honor the terms of the Stipulation
25 through "great chasms of competence" and an utter unwillingness to force Corizon to live
26 up to the terms of the contract (4/17/17 Tr. at 637-638, 671), Defendants should bear the
27 full financial burden.  A district court has the ability to allocate all costs of a Rule 706
28 expert to one side.  *McKinney v. Anderson*, 924 F.2d 1500, 1511 (9th Cir. 1991)*, vacated*

LEGAL135502214.1                    -4-

*on other grounds sub nom. Helling v. McKinney*, 502 U.S. 903 (1991); *see also Armstrong v. Schwarzenegger*, 2007 WL 1687776 (N.D. Cal. June 11, 2007) (appointing a court expert and allocating all fees and expenses to Defendants). As noted above, Defendant Pratt testified that the State has received $3 million in fines from Corizon for failing to perform its contractual obligations. [4/17/17 Tr. at 640:2-4] Since those funds were allocated initially by the State to pay for health care to be delivered to prisoners, it is eminently reasonable and perfectly equitable to use that money to monitor and improve Defendants' efforts to comply with the Stipulation through the appointment of a qualified expert.

At the April 17 status conference, the Court suggested that it would consider allocating to the monitor some of the money that the Stipulation compels Defendants to pay Plaintiffs' counsel for monitoring "if it turns out that the monitor is performing services" that Plaintiffs' counsel are providing pursuant to the Stipulation. [*Id.* at 675:19-21] Plaintiffs strongly oppose that proposed modification of the Stipulation for several compelling reasons.

First, indigent class member prisoners do not have the ability to pay the experts' fees. The other plaintiff, Arizona Center for Disability Law ("ACDL"), is a non-profit organization designated as Arizona's Protection and Advocacy agency, and is an organizational plaintiff in this case representing the interests of prisoners with mental illness, under its Protection and Advocacy for Persons with Mental Illness Act ("PAIMI") grant. As the federally-designated Protection and Advocacy agency, under its PAIMI obligations, ACDL is charged with serving people with mental illness throughout Arizona. Payment of any expert fees would seriously jeopardize ACDL's ability to serve other Arizonans with mental illness in fulfillment of its other PAIMI obligations, both presently and into the future.[1] [Declaration of Jose de Jesus Rico ("Rico Decl."), filed

---

[1] Further, to date ACDL has received no portion of any fee amount paid by Defendants since the settlement of the case for monitoring or enforcement of the
(continued on next page…)

LEGAL135502214.1                        -5-

herewith, ¶¶ 5-10] It would be extremely inequitable for the Court to allocate some portion of the expert's fees and costs to Plaintiffs, when the entire reason for the expenditure is because Defendants are not complying with the Stipulation. *Webster v. Sowders*, 846 F. 2d 1032, 1038 (6th Cir. 1988) (The "District Court has authority to apportion costs under this rule, including excusing impecunious parties from their share.").

Unlike Plaintiffs' counsel's monitoring fees, which are limited to $250,000 per year,[2] fees for enforcement are not limited by a monetary cap. The enforcement provision permits Plaintiffs' counsel to recover all their fees and costs (including expert witness fees) for their efforts to judicially compel compliance with the Stipulation. [Doc. 1185 at ¶ 43] Thus, the Stipulation contemplates an open-ended expenditure of funds by the State if Defendants do not comply with the Stipulation. Therefore, it is consistent with the Stipulation's structure for the State to pay all of the expert's fees. And there is every reason to believe that the appointment of an expert will, in the long run, further the Court's goal of reducing the financial burden on the State, by reducing the time that Plaintiffs' counsel must spend enforcing the Stipulation.

---

(…continued from previous page)
Stipulation, and is presently participating in this case on what is functionally a pro bono basis. [Rico Decl. ¶ 9] As such, it would be particularly inequitable for any expert fees to be allocated to ACDL. The PAIMI funding that has enabled ACDL's continued involvement in this case is also subject to the federal government budgeting process, and is not guaranteed beyond the end of the present fiscal year. [*Id.* ¶ 7]

[2] The monitoring fees cap falls far short of covering all the fees and expenses that Plaintiffs' counsel has incurred in the past two years. In fact, because of the cap Plaintiffs' counsel has not recovered tens of thousands of dollars in monitoring fees and expenses. [Hardy Decl. ¶ 3] In addition, for the past 18 months Plaintiffs' counsel has not been paid for any of the work that they have done to judicially enforce the Stipulation. This amounts to over $100,000 in out-of-pocket expert fees and over 2,000 hours of attorney and legal assistant hours. [*Id.* ¶ 4]

These calculations also do not include any of the attorney time or costs spent by ACDL related to monitoring and enforcement of the Stipulation (236 hours of attorney time for the present fiscal year, for monitoring tours, court conferences and hearings, and mediations only). [Rico Decl. ¶ 8]

1         Conversely, there is no cause for the Court to modify the Stipulation by reducing the amount that Plaintiffs' counsel is compensated for their work in monitoring compliance. In *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367 (1992), the Supreme Court laid out a two-part inquiry for determining if modification of a consent decree pursuant to Rule 60(b)(5) is appropriate: "[A] party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree. If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance." 502 U.S. at 383. The modification proposed by the Court—reducing monitoring fees the Defendants agreed to pay to Plaintiffs' counsel—is not suitably tailored to the changed circumstance because it *diminishes* the protections the Stipulation provides to prisoners who already have suffered serious harm from Defendants' conduct. In addition, as set forth above, the Corizon fines provide a source that will permit the expert to be compensated, while not causing the State any further pecuniary loss.

        Nor is the fact that there invariably will be some duplication of effort between Plaintiffs' counsel and the expert a basis for modification. Both the expert and Plaintiffs' counsel will require some of the same information to properly perform their different roles. To fulfill their role, Plaintiffs' counsel must tour prison facilities, correspond with thousands of class members, interview class members and staff, and review various documents and reports. They also have an ethical duty to communicate with and provide advice to their clients. Ariz. Rules of Prof. Conduct, Rules 1.3 (diligence), 1.4 (communication). *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 451 (9th Cir. 2010) (noting that plaintiffs' monitoring is compensable because it "caus[es] defendants to fulfill their obligations 'more speedily and reliably,'" and affirming monitoring fees for plaintiff-publication's correspondence with prisoners because "[w]ithout such correspondence, it would be difficult for [plaintiff] to discover or document violations of the terms of the settlement" regarding prisoners' access to the publication) (citing *Keith v. Volpe*, 833 F.2d 850, 857 (9th Cir. 1987)); *see also Balla v. Idaho*, 677 F.3d 910, 918 (9th

Cir. 2012) (monitoring fees for contempt motion compensable because "injunctions do not always work effectively, without lawyers to see that the enjoined parties do what they were told to do"); *Cody v. Hillard*, 304 F.3d 767, 775 (8th Cir. 2002) (post-judgment monitoring fees available because work is "essential to the preservation of the integrity of the consent decree as a whole" and "[w]hen a remedial consent decree is threatened, 'plaintiffs' counsel are under a clear obligation to make a defensive effort.'") (citing *Plyer v. Evatt*, 902 F.2d 273, 280-81 (4th Cir. 1990).

The Rule 706 expert, on the other hand, would have a neutral role without any enforcement authority or any responsibility or duty to advocate on behalf of the plaintiff class or individual prisoners.

In short, the appointment of an expert would not diminish the need for Plaintiffs' counsel to undertake all of the monitoring activities required by the Stipulation and their responsibilities and duties pursuant to the Court's appointment of them as class counsel, and the Arizona Rules of Professional Conduct. *See Duran v. Carruthers*, 885 F.2d 1492, 1495 (10th Cir. 1989) (plaintiffs' counsel in prison conditions case were entitled to attorney fees for compliance monitoring despite the fact that a Special Master was also monitoring compliance; "the … consent decree was only the beginning, and counsel for the plaintiffs has a continuing duty and responsibility to make sure that the defendants comply, and continue to comply, with the decree").

**CONCLUSION**

For the reasons stated above, the Court should not appoint a special master, but should instead appoint an expert under Rule 706 of the Federal Rules of Evidence and require Defendants to pay all of the expert's fees and expenses.  Further, the court should order the parties to determine whether they can agree on a person to be appointed as the court expert and if not, each party should provide the Court with a list of no more than three candidates within 30 days.

Respectfully submitted,

| | | |
|---|---|---|
| 1 | Dated:  May 8, 2017 | **PRISON LAW OFFICE** |
| 2 | | |
| 3 | | By:  *s/ Donald Specter* |
| | | Donald Specter (Cal. 83925)* |
| 4 | | Alison Hardy (Cal. 135966)* |
| | | Sara Norman (Cal. 189536)* |
| 5 | | Corene Kendrick (Cal. 226642)* |
| | | Rita K. Lomio (Cal. 254501)* |
| 6 | | 1917 Fifth Street |
| | | Berkeley, California 94710 |
| 7 | | Telephone:  (510) 280-2621 |
| | | Email:   dspecter@prisonlaw.com |
| 8 | |           ahardy@prisonlaw.com |
| | |           snorman@prisonlaw.com |
| | |           ckendrick@prisonlaw.com |
| 9 | |           rlomio@prisonlaw.com |
| 10 | | *Admitted *pro hac vice* |
| 11 | | David C. Fathi (Wash. 24893)* |
| | | Amy Fettig (D.C. 484883)** |
| 12 | | Jamelia N. Morgan (N.Y. 5351176)** |
| | | Victoria Lopez (Ill. 6275388)* |
| 13 | | **ACLU NATIONAL PRISON PROJECT** |
| 14 | | 915 15th Street N.W., 7th Floor |
| | | Washington, D.C. 20005 |
| 15 | | Telephone:  (202) 548-6603 |
| | | Email:   dfathi@aclu.org |
| 16 | |           afettig@aclu.org |
| | |           jmorgan@aclu.org |
| 17 | |           vlopez@aclu.org |
| 18 | | *Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts. |
| 19 | | |
| | | **Admitted *pro hac vice* |
| 20 | | |
| 21 | | Kirstin T. Eidenbach (Bar No. 027341) |
| | | **EIDENBACH LAW, PLLC** |
| | | P. O. Box 91398 |
| 22 | | Tucson, Arizona 85752 |
| | | Telephone:  (520) 477-1475 |
| 23 | | Email:   kirstin@eidenbachlaw.com |
| 24 | | Kathleen E. Brody (Bar No. 026331) |
| | | **ACLU FOUNDATION OF ARIZONA** |
| 25 | | |
| 26 | | 3707 North 7th Street, Suite 235 |
| | | Phoenix, Arizona 85013 |
| 27 | | Telephone:  (602) 650-1854 |
| | | Email:   kbrody@acluaz.org |
| 28 | | |

| | |
|---|---|
| 1 | Daniel C. Barr (Bar No. 010149) |
| 2 | Amelia M. Gerlicher (Bar No. 023966)<br>John H. Gray (Bar No. 028107)<br>**PERKINS COIE LLP** |
| 3 | 2901 N. Central Avenue, Suite 2000<br>Phoenix, Arizona 85012 |
| 4 | Telephone: (602) 351-8000<br>Email:   dbarr@perkinscoie.com |
| 5 | agerlicher@perkinscoie.com<br>jhgray@perkinscoie.com |
| 6 | |
| 7 | Caroline Mitchell (Cal. 143124)*<br>**JONES DAY** |
| 8 | 555 California Street, 26th Floor<br>San Francisco, California 94104 |
| 9 | Telephone: (415) 875-5712<br>Email:   cnmitchell@jonesday.com |
| 10 | *Admitted *pro hac vice* |
| 11 | John Laurens Wilkes (Tex. 24053548)*<br>**JONES DAY** |
| 12 | 717 Texas Street<br>Houston, Texas 77002 |
| 13 | Telephone: (832) 239-3939<br>Email:   jlwilkes@jonesday.com |
| 14 | |
| 15 | *Admitted *pro hac vice* |
| 16 | *Attorneys for Plaintiffs Shawn Jensen;*<br>*Stephen Swartz; Sonia Rodriguez; Christina* |
| 17 | *Verduzco; Jackie Thomas; Jeremy Smith;*<br>*Robert Gamez; Maryanne Chisholm;* |
| 18 | *Desiree Licci; Joseph Hefner; Joshua*<br>*Polson; and Charlotte Wells, on behalf of* |
| 19 | *themselves and all others similarly situated* |

**ARIZONA CENTER FOR DISABILITY LAW**

By: s/ Maya Abela
Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email:   skader@azdisabilitylaw.org
             adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
    rdalyrooney@azdisabilitylaw.org
         jrico@azdisabilitylaw.org
         jross@azdisabilitylaw.org
         mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2017, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
Kevin R. Hanger
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
khanger@swlfirm.com

*Attorneys for Defendants*

s/ D. Freouf