1  Kathleen E. Brody (Bar No. 026331)
   **ACLU FOUNDATION OF ARIZONA**
2  3707 North 7th Street, Suite 235
   Phoenix, Arizona 85013
3  Telephone: (602) 650-1854
   Email: kbrody@acluaz.org
4
   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia*
5  *Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith,*
   *Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner,*
6  *Joshua Polson, and Charlotte Wells, on behalf of themselves and all*
   *others similarly situated*
7  **[ADDITIONAL COUNSEL LISTED BELOW]**

8  Sarah Kader (Bar No. 027147)
   Asim Dietrich (Bar No. 027927)
9  **ARIZONA CENTER FOR DISABILITY LAW**
   5025 East Washington Street, Suite 202
10 Phoenix, Arizona 85034
   Telephone: (602) 274-6287
11 Email: skader@azdisabilitylaw.org
          adietrich@azdisabilitylaw.org
12 *Attorneys for Plaintiff Arizona Center for Disability Law*

13 **[ADDITIONAL COUNSEL LISTED BELOW]**

14                    UNITED STATES DISTRICT COURT

15                         DISTRICT OF ARIZONA

16

17 Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-DKD
   Dustin Brislan; Sonia Rodriguez; Christina
18 Verduzco; Jackie Thomas; Jeremy Smith; Robert
   Gamez; Maryanne Chisholm; Desiree Licci; Joseph    **DECLARATION OF CRAIG**
19 Hefner; Joshua Polson; and Charlotte Wells, on      **HANEY, Ph.D., J.D.**
   behalf of themselves and all others similarly
20 situated; and Arizona Center for Disability Law,

21                    Plaintiffs,

22         v.

23 Charles Ryan, Director, Arizona Department of
   Corrections; and Richard Pratt, Interim Division
24 Director, Division of Health Services, Arizona
   Department of Corrections, in their official
25 capacities,

26                    Defendants.

27

28

LEGAL135439911.1

I, Craig Haney, declare:

1.      I am an academic psychology professor.  I was trained in a distinguished research-oriented graduate program in psychology (Stanford University), and I regularly teach graduate courses in research methods in the social psychology Ph.D. program at the University of California, Santa Cruz.  I am also a Distinguished Professor in the University of California system, a distinction reserved for professors who have reached the very highest level of the professoriate, after being nominated by our respective universities and undergoing a national and international review.  In addition, I currently serve as the UC Presidential Chair, 2015-2018, an honor bestowed on typically one faculty member from each University of California campus, in recognition of the distinguished nature of their research program.

2.      I recently served as a member of a committee of the nation's most esteemed scientific organization, the National Academy of Sciences.  Our committee was charged with the responsibility of scientifically analyzing the causes and consequences of the high rates of incarceration in the United States and proposing recommendations for reform.[1]

3.      My education, training, and academic and professional experiences are all grounded in scientific methods and in research methodology.  I regularly conduct and publish scientific research.  (A copy of my curriculum vitae is appended to this declaration.)  In addition, as part of my duties as a faculty member at UC Santa Cruz, I teach research methods to Ph.D.-level graduate students in the Psychology Department. For example, on a yearly basis I teach a "proseminar" to incoming social psychology graduate students in which research methodology is an explicit focus of my instruction.  I also periodically teach quarter-long courses that are devoted entirely to specific research

---

[1]  The analysis and recommendations appear in:  The Growth of Incarceration in the United States: Exploring the Causes and Consequences (with Jeremy Travis, Bruce Western, et al.).  [Report of the National Academy of Sciences Committee on the Causes and Consequences of High Rates of Incarceration in the United States.] Washington, DC: National Academy Press (2014).

methodologies, including experimental and survey methods (where the specific technique of random selection and random sampling are routinely employed).

4.      I have reviewed the Exhibits to the Stipulation in this case (Doc. 1185-1), setting forth the Performance Measures.  I have also reviewed transcripts of the hearings in this case held on March 8, March 21, and April 17, 2017.

5.      Attorneys for plaintiffs have asked me to discuss principles of sampling methodology with a focus on the nature and function of random sampling.  Random sampling is the process of selecting a sample of cases (such as persons, patients, files, outcomes, or events) from a larger universe of cases to ensure that the sample is unbiased and, therefore, representative.  "Random sampling" has a very specific and precise meaning.  A random sample does not mean a sample that is selected in an arbitrary, haphazard, or idiosyncratic fashion.  Rather, random sampling techniques ensure that no one case from the universe of cases has any higher probability or likelihood of being included in the sample than any other.

6.      Random sampling is done in order to maximize the representativeness of the sample—that is, to ensure that a smaller sample properly "represents" the characteristics of the larger whole or universe from which it is drawn.  Sampling is typically done when the universe of cases is too large to study or analyze in its entirety.  Randomly sampling from the universe of cases allows information derived from the smaller sample to be generalized to the larger universe of cases (within a margin of error that depends on the size of the sample that has been randomly drawn).

7.      Random sampling is important in many kinds of research because it serves as a safeguard against the possibility that the sample that has been drawn (upon which inferences about the larger universe of cases will be made) was inadvertently or intentionally biased or skewed.  If that were so, the sample would not faithfully represent the larger universe of cases to which researchers (or, in this instance, auditors) want to generalize.

8. For this reason, it is critically important that the random sample be drawn from an appropriate source. If, for example, a random sample is to be drawn of all female prisoners who gave birth in a given month, it is critically important that the sample is drawn from a complete and accurate list of such prisoners. Any incompleteness or inaccuracy, whether deliberate or inadvertent, in the source document from which the sample is drawn compromises the representativeness of the sample and the extent to which generalizations can be made about the population from which it is drawn.

9. The process of random sampling is relatively straightforward and facilitated nowadays by the ease of access to random number generators. These generators can produce random strings or sequences of numbers that allow for the randomization of cases that are selected for inclusion in the sample. The process requires all of the cases in the universe under study to be available, typically in chronological or alphabetical order. The random numbers are generated according to how many cases comprise the universe being sampled. For example, if there are 1000 cases, and an intended sample size of 100, the random number generator will provide a string or sequence of 100 non-repeating random numbers between 1 and 1000. Those numbers are then used as the basis on which to select the 100 cases (the sample) to be drawn from the larger population of 1000. For example, if 5, 7, and 139 were among the 100 random numbers generated, the 5th, 7th, and 139th cases of the alphabetically or chronologically arranged list of 1000 cases would be among those included in the sample.

10. Alternatively, the random number generator could be used to generate a string or sequence of 1000 non-repeating random numbers. Those numbers would then be assigned, in the order generated, to the alphabetical or chronological list of cases. After assigning the random numbers to the universe of cases, the table of cases would then be re-sorted into numerical order by the random numbers, from smallest to largest, and the first "X" cases would be selected from that list (where "X" is the sample size desired). Omission of any of these steps will result in a sample that is not random.

11.     Two issues slightly complicate this otherwise straightforward process.  The first is the importance of defining the universe of cases in a proper way that correctly identifies the cases that actually test the hypothesis for which the sample is being drawn and the universe of cases is being analyzed.  For example, in the present instance, a sample drawn to test compliance with Performance Measure 86 (requiring that "MH-3D prisoners shall be seen a minimum of every 90 days by a mental health clinician for a minimum of six months after discontinuing medication") must <u>exclude</u> cases in which 90 days have not yet elapsed since the patient discontinued medications.  Similarly, a sample drawn to test compliance with Performance Measure 82 (requiring "MH-3B prisoners shall be seen a minimum of every 90 days by a mental health clinician") must <u>exclude</u> cases in which a patient has not yet been classified as MH-3B for 90 days.  Likewise, a sample drawn to test Performance Measure 39 ("referrals requiring a scheduled provider appointment[] will be seen within fourteen calendar days of the referral") must <u>exclude</u> all referrals made less than 14 days before the sample is drawn.  In each of these examples, the cases described must be excluded from the sample because they cannot possibly be found to be noncompliant, and thus do not test the hypothesis in question—that is, compliance with the relevant Performance Measure.  To include such cases in the sample would misleadingly inflate the compliance figures that are calculated based on the sample.

12.     The second complication is related to the one just stated.  Whenever it is determined that one or more of the randomly selected cases is inapplicable (that is, should not be considered as part of the universe that is being sampled), it is necessary to return to the universe of cases and randomly select another case to include in the sample (rather than to simply discard the inappropriate cases and reduce the sample size).  That is because, depending on how many discarded cases there are, the remaining sample could be unrepresentative of the properly defined universe.

13.     Even though random sampling is relatively straightforward, it is critically important to carefully document all steps of the process that was followed, including the source from which the sample was drawn, the process by which randomization was

accomplished, the origin and results of the random draw, and how the random numbers were assigned to the list or series of cases in the universe of cases from which the sample was created (including which specific cases were included). This "audit trail" permits others to recreate the process and make sure that the steps that were taken were appropriate and correctly followed.

14.     Similarly, if the ultimate results derived from the sample (in this case, a given percentage level of compliance) are changed at any point, it is critically important that both the original values and the changed values be clearly documented, along with documentation of when and by whom the change was made and the justification for it. Under no circumstances should results be changed without this information being clearly apparent to anyone viewing the audit document.

15.     The documentation should occur in real time rather than after the fact. For example, if it was necessary to exclude cases drawn from the universe of cases because they did not fit the selection criteria (see paragraph 12 above), it is important to document which cases those were, why they were excluded, and exactly how they were replaced in the sample (see paragraph 13 above). Again, such an audit trail allows others to ensure the appropriateness of the methods by subsequently reviewing the exact actions that were taken.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of May, 2017 at Santa Cruz, California.

Craig Haney, Ph.D., J.D.

**ADDITIONAL COUNSEL**

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Jamelia Natasha Morgan (N.Y. 5351176)**
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:    dfathi@aclu.org
          afettig@aclu.org
          jmorgan@aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:    dbarr@perkinscoie.com
          agerlicher@perkinscoie.com
          jhgray@perkinscoie.com

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:    kbrody@acluaz.org

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:    dspecter@prisonlaw.com
          ahardy@prisonlaw.com
          snorman@prisonlaw.com
          ckendrick@prisonlaw.com
          rlomio@prisonlaw.com

*Admitted *pro hac vice*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, PLLC**
P. O. Box 91398
Tucson, Arizona 85752
Telephone: (520) 477-1475
Email:    kirstin@eidenbachlaw.com

Caroline Mitchell (Cal. 143124)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email:    cnmitchell@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email:    jlwilkes@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
ARIZONA CENTER FOR
DISABILITY LAW
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:    skader@azdisabilitylaw.org
              adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR
DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone:  (520) 327-9547
Email:
    rdalyrooney@azdisabilitylaw.org
        jrico@azdisabilitylaw.org
        jross@azdisabilitylaw.org
        mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability
Law*

1

## **CERTIFICATE OF SERVICE**

2        I hereby certify that on May 8, 2017, I electronically transmitted the above

3  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4  Notice of Electronic Filing to the following CM/ECF registrants:

5

6                          Michael E. Gottfried
                            Lucy M. Rand
7                    Assistant Arizona Attorneys General
                       Michael.Gottfried@azag.gov
8                        Lucy.Rand@azag.gov

9                          Daniel P. Struck
                          Kathleen L. Wieneke
10                           Rachel Love
                         Timothy J. Bojanowski
11                         Nicholas D. Acedo
                           Ashlee B. Fletcher
12                          Anne M. Orcutt
                            Jacob B. Lee
13                         Kevin R. Hanger
                   STRUCK WIENEKE, & LOVE, P.L.C.
14                       dstruck@swlfirm.com
                        kwieneke@swlfirm.com
15                        rlove@swlfirm.com
                       tbojanowski@swlfirm.com
16                        nacedo@swlfirm.com
                        afletcher@swlfirm.com
17                        aorcutt@swlfirm.com
                           jlee@swlfirm.com
18                        khanger@swlfirm.com

19                      *Attorneys for Defendants*

20

21                                        s/ D. Freouf

22

23

24

25

26

27

28