Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
khanger@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br>                                     Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>                                     Defendants. | NO. 2:12-cv-00601-DKD <br><br><br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR REMEDIATION PLAN (DKT. 1977)** |

## I. INTRODUCTION

On April 24, 2017, the Court adopted a standard to determine when a location/performance measure is non-compliant and ordered Defendants to provide remedial plans for certain facilities/measures that met this standard. (Dkt. 2030 at 1). Citing to the Stipulation, the Court ordered that a location/performance measure is non-compliant when (1) 6 of 24 months are non-compliant; and (2) three consecutive months are non-compliant. *Id*. Under the Stipulation, however, a measure is not substantially non-compliant until it is non-compliant for (1) 7 of 24 months; and (2) three consecutive months. (Dkt. 1185 at ¶10(b)) (emphasis added). Defendants assume the Stipulation's standard is the standard the Court intended to employ. Under either standard, all facilities/measures the Court requested remedial plans for are in substantial non-compliance, except one. Under the Stipulation's standard, Perryville is in substantial compliance for Performance Measure 94, as it has only been non-compliant six times. Because it is unclear whether the Court intended to adopt the Stipulation's standard, Defendants still provide a remedial plan for Performance Measure 94 at Perryville, but respectfully request clarification from the Court as to which standard to utilize going forward.

The Court's Order acknowledged that Defendants previously provided remedial plans for some of the measures found by the Court to be in substantial non-compliance, and that Plaintiffs raised objections to the proposed plans. (Dkt. 2030 at 2). While true that Plaintiffs provided general objections to Defendants' plans as a whole, Plaintiffs' Response did not provide specific objections for each plan, nor did it explain why a particular plan was unacceptable. (Dkt. 1998). Based on Plaintiffs' failure to provide objections, or explain how or why Defendants' proposed plans would not work, the Court should adopt the plans previously proposed by Defendants (Dkt. 1977), as well as the additional plans outlined below.

///

///

1

## II. DEFENDANTS PROPOSED REMEDIATION PLANS

**A.     Performance Measure 35:** *All inmate medications (KOP and DOT) will be transferred with and provided to the inmate or otherwise provided at the receiving prison without interruption*

The Court found that Eyman, Florence, Lewis, Phoenix, and Tucson are in substantial non-compliance with this measure. (Dkt. 2030 at 2). On March 17, 2017, Defendants provided remediation plans for Florence. Lewis, Tucson, and Eyman. (Dkt. 1977 at 5 – 6). Plaintiffs filed a response to Defendants' proposed plans on March 30, 2017, but did not provide specific objections to these plans. As such, the Court should approve the plans proposed by Defendants for Eyman, Florence, Lewis, and Tucson. Defendants propose the following plan for Phoenix:

### 1. Phoenix

The Phoenix facility primarily operates as the intake center for male inmates arriving at the Arizona Department of Corrections ("ADC"). Therefore, the majority of inmates who arrive at Phoenix were transferred from county jails or, if they violated the conditions of their parole or probation, the community. Thus, unlike the other ADC facilities, only a small number of inmates who are transferred to Phoenix, were transferred from an ADC facility. This mixed intake population often leads to inconsistent compliance results for this measure. To increase compliance for this measure, medical staff implemented and refined a proactive process where they receive advance notice of inbound intra-system transfers. This allows staff to contact the outbound facility to verify the inmate's medications and confirm if those medications will be transferred with the inmate or if the Phoenix facility needs to provide them upon the inmate's arrival.

**B.     Performance Measure 39:** *Routine provider referrals will be addressed by a Medical Provider and referrals requiring a scheduled provider appointment will be seen within fourteen calendar days of the referral*

The Court found Yuma in substantial non-compliance with this measure. (Dkt. 2030). Defendants provided a remediation plan for Yuma on March 17, 2017. (Dkt. 1977 at 6). Plaintiffs' Response does not contain specific objections to this plan. As such, the Court should approve it.

**C.     Performance Measure 40:** *Urgent provider referrals are seen by a Medical Provider within 24 hours of the referral*

The Court found Eyman and Tucson in substantial non-compliance with this measure. (Dkt. 2030 at 2). Defendants provided a remediation plan for Eyman. (Dkt. 1977 at 6). In their Response, Plaintiffs' claim Defendants cannot count a finding of "N/A" (Dkt. 1998 at 3); however, the Court advised the parties that it would not reject common sense arguments regarding "N/A" findings. [*See* Transcript of February 8, 2017 Hearing at 53:15 – 20; 69:11 – 23; 70:7 – 10]. A common sense argument exists here – Defendants cannot control whether or when an inmate will require an urgent provider referral. To the extent there were no referrals in a particular month, Defendants should not be penalized by receiving a non-compliant score. Despite Plaintiffs' claims to the contrary, not counting a score equates to a score of non-compliance, as Defendants cannot count the score and therefore will be required to continue the monitoring period for an additional month. Plaintiffs provided no specific objection to Defendants' plan for Eyman, and the Court should therefore approve it. Defendants propose the following plan for Tucson:

    1.     Tucson

Non-compliance at Tucson has been largely attributed to untimely communication of urgent referrals to medical providers. To increase compliance, an automated report listing all outstanding urgent referrals was created. Providers and Certified Nursing Aids (CNA) will have this tool at their fingertips to review details of all urgent referrals.

Additionally, in January and February 2017, there were reports of medical providers being unable to address the urgent referrals in a timely manner when providers were on vacation or out sick. To address this, a new protocol was implemented. Historically, providers would call in sick to the on-call supervisor rather than the site Medical Director. Under the new protocol, providers must call in directly to the Medical Director and the Facility Health Administrator. This will allow the Medical Director to reallocate available providers to ensure coverage. Finally, over the last few months, and

3

going forward, Tucson medical providers are provided refresher training specific to this performance measure and, specifically, on tools to assist compliance and how to use them.

    **D.**    <u>**Performance Measure 44:**</u>  *Inmates returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital shall have the hospital's treatment recommendations reviewed and acted upon by a medical provider within 24 hours.*

The Court found Eyman, Florence, and Lewis in substantial non-compliance with this measure. (Dkt. 2030 at 2). Defendants provided remedial plans for all three facilities. (Dkt. 1997 at 7 – 8). Plaintiffs did not provide specific objections to Defendants' plans, and they should be approved by the Court.

    **E.**    <u>**Performance Measure 45:**</u>  *On-site diagnostic services will be provided the same day if ordered STAT or urgent, or within 14 calendar days if routine.*

The Court found Lewis and Tucson in substantial non-compliance with this measure. (Dkt. 2030 at 2). Defendants previously provided a remedial plan for Lewis, and Plaintiffs did not provide specific objections to it. (Dkt. 1977 at 8). As such, Defendants' plan for Lewis should be approved by the Court. Defendants propose the following plan for Tucson:

    1.    <u>Tucson</u>

An internal analysis was conducted at Tucson to determine how best to improve compliance with this measure. First, the analysis revealed difficulties in timely and efficiently removing and delivering an inmate from his cell to radiology to receive an X-ray. Tucson staff are working to facilitate communication and collaboration of security and radiology staff to increase compliance with this measure. Second, the analysis revealed inefficiency in the tracking and management of outstanding diagnostic services. To increase compliance, an automated report that lists outstanding laboratory results by inmate is now available to unit staff. This report also includes the type of diagnostic service, priority category, medical provider name, and number of days since the lab was ordered. Tucson medical staff also receive regular education and training regarding the automated reports and timelines required by this performance measure. Finally, Tucson medical staff were counseled to have direct verbal communication with diagnostic service

4

1  providers when STAT services are ordered.

      **F.**     **Performance Measure 50:** *Urgent specialty consultations and urgent specialty diagnostic services will be scheduled and completed within 30 calendar days of the consultation being requested by the provider*

The Court found Florence in substantial non-compliance with this measure. (Dkt. 2030 at 2). Defendants previously provided a remedial plan for Florence, and because Plaintiffs did not provide specific objections to the plan, the Court should approve it. (Dkt. 1997 at 7 – 8).

      **G.**     **Performance Measure 51:** *Routine specialty consultations will be scheduled and completed within 60 calendar days of the consultation being requested by the provider*

The Court found Eyman, Florence, and Tucson in substantial non-compliance with this measure. (Dkt. 2030 at 2). Defendants previously provided a remedial plan for Eyman, and because Plaintiffs did not provide specific objections to the plan, the Court should approve it. (Dkt. 1977 at 9). Defendants propose the following remedial plans for Florence and Tucson:

      1.    <u>Florence</u>

Florence routinely faces challenges in establishing long-term relationships with community-based specialty service providers. These relationships are often strained by the difficulties of introducing an inmate into a community medical environment. Further, specialty practices often contain other members of the general public or close their practice for a period of time to isolate the inmate population from the general public. Both of these issues can erode the willingness of a community-based provider to offer their services to incarcerated individuals. Despite these obstacles, Corizon has made several adjustments to increase compliance with this measure.

For example, if the scheduled optometry clinics cannot accommodate all inmates who need optometry services, additional on-site optometry clinics will be scheduled. Florence is also reporting "off-site appointment metrics" during the Warden's meeting each week, to ensure adequate clinics are scheduled. Also, Corizon is evaluating the possibility of brining additional specialties onsite to avoid the need for offsite transfers.

1  And they have successfully done this for ultrasounds. As of January 24, 2017, ultrasounds are being performed onsite at Florence. Other services, such as psychiatry, rheumatology, and primary care, are now being offered through telemedicine. This eliminates the need for offsite transfers. For those specialty consults that still require a transport, security and medical staff are collaborating on more efficient and effective transfer solutions to increase the capacity and frequency of secure transports.

Finally, the responsibilities and duties of scheduling offsite services have been transferred exclusively to the clinical coordinator. Transfer of these responsibilities to a single person will allow for more effective management and adjustment of available resources. Each day, the previous day's consultations will be added to a master list. The clinical coordinator will utilize the master list to monitor the life cycle of a consultation, to ensure it is timely completed. Any consultation that has not been seen by the 53rd day will be escalated for review.

### 2. Tucson

The difficulties described above under Eyman in establishing long-term relationships with community-based specialty service providers are also present at Tucson. Additionally, at Tucson, urology and cardiology specialty providers are very difficult to locate. On occasion, inmates are transported as far as Phoenix for appointments in these areas.

Non-compliance with this measure at Tucson is significantly attributed to optometry consults. Optometry consults typically take longer than the time period afforded under this performance measure. As with the Florence facility, additional optometry clinics will be scheduled onsite, if the number of inmates needing these services increases. Medical staff have been, and will continue to be, educated on the timeframes specified in this performance measure and the importance of scheduling optometry clinics to ensure compliance with this measure.

**H.    Performance Measure 52:** *Specialty consultation reports will be reviewed and acted on by a Provider within seven calendar days of receiving the report*

The Court found Florence, Perryville, and Tucson in substantial non-compliance with this measure. (Dkt. 2030 at 2). Defendants previously submitted remedial plans for these measures, and because Plaintiffs did not provide specific objections, the Court should approve them. (Dkt. 1997 at 9 – 11).

**I.    Performance Measure 94:** *All prisoners on a suicide or mental health watch shall be seen daily by a licensed mental health clinician, or weekends or holidays, by a registered nurse.*

The Court found Perryville in substantial non-compliance with this measure (Dkt. 2030 at 2).   As described above, however, Perryville is in substantial compliance under the Stipulation's standard.  (Dkt. 1985 at ¶10(b)).  But because the Court ordered a remedial plan for this facility and measure, Defendants propose the following:

1.    <u>Perryville</u>

Perryville experienced non-compliance scores during the summer months of 2016. Upon investigation, it was determined that the weekend watches were not being performed by registered nurses.   This miscommunication has been resolved, and Perryville arranged for mental health staff to perform these daily checks on weekends, as well as their weekday shifts. This measure has returned to compliance and continues to score above the threshold.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

7

DATED this 8th day of May, 2017.

        STRUCK WIENEKE & LOVE, P.L.C.

        By:/s/Daniel P. Struck
        Daniel P. Struck
        Kathleen L. Wieneke
        Rachel Love
        Timothy J. Bojanowski
        Nicholas D. Acedo
        Ashlee B. Fletcher
        Anne M. Orcutt
        Jacob B. Lee
        Kevin R. Hanger
        3100 West Ray Road, Suite 300
        Chandler, Arizona  85226

        Arizona Attorney General Mark Brnovich
        Office of the Attorney General
        Michael E. Gottfried
        Lucy M. Rand
        Assistant Attorneys General
        1275 W. Washington Street
        Phoenix, Arizona 85007-2926

        *Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com; docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Kirstin T. Eidenbach: | kirstin@eidenbachlaw.com |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org; mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org |
| Rita K. Lomio: | rlomio@prisonlaw.com |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Daniel P. Struck