Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
khanger@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,

Plaintiffs,

v.

Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,

Defendants.

NO. 2:12-cv-00601-DKD

**DEFENDANTS' STATEMENT REGARDING APPOINTMENT OF SPECIAL MASTER**

Defendants Charles Ryan and Richard Pratt ("Defendants") submit this Statement regarding the Court's proposal of appointing a special master pursuant to Federal Rule of Civil Procedure 53 to oversee monitoring of the healthcare and maximum custody performance measures contained in the parties' Stipulation and to provide guidance to the Court in evaluating and developing remedial plans for which Defendants have been found to be in substantial noncompliance.

## I. **INTRODUCTION**

On April 17, 2017, the Court asked the parties to brief whether or not it should appoint a special master to oversee the Arizona Department of Corrections' (ADC's) monitoring programs and to guide the Court's decisions on proposed remedial measures. (4/17/17 Tr. at 673:22-674:10.) Plaintiffs oppose the appointment of a special master and instead ask the Court to appoint an expert under Federal Rule of Evidence 706. (Dkt. 2043 at 3.) The exhaustively bargained-for provisions of the Stipulation forbid the appointment of a special master or a Rule 706 expert. The parties also just completed five days of testimony educating the Court about the monitoring process. After participating in those hearings, the Court now has important knowledge of ADC's monitoring programs and systems and is better suited than anyone else to continue presiding over enforcement of the Stipulation. If the Court is hoping to relieve some of the day-to-day management of this case, at most it should consider delegating a portion of its duties under the Stipulation to another available magistrate or Article III judge in this District. Under no circumstances should the Court appoint a special master or consider Plaintiffs' request to appoint a Rule 706 expert, who would effectively take over management of ADC.

First, the Court cannot appoint a special master – or any other individual for that matter – to oversee Defendants' monitoring program. The parties already agreed – after exhaustive negotiations – to the specific monitoring procedures that are outlined in the Stipulation, which charges Defendants with self-monitoring and reporting compliance with a series of bargained-for and agreed-upon performance measures and monitoring protocols. The Stipulation does not give the Court the power to modify the monitoring

provisions in any manner. It is a private settlement agreement that cannot be modified by Plaintiffs or the Court without Defendants' agreement.

Second, before the Court can even appoint a special master under Rule 53, it first must determine whether or not the matters can be effectively and timely addressed by another available magistrate judge in the District of Arizona. *See* Fed. R. Civ. P. 53(a)(1)(C). Thus, if the Court still seeks docket relief, it must first refer a portion of its enforcement duties to another judge within the District of Arizona, reducing the demands on the Court's time and allowing it to focus instead on compliance and remedial plans. In this situation, Judge Bade, who already conducts mediations between the parties and therefore is aware of the history of the case and the Stipulation requirements, would be the logical magistrate to assist.

## II. DISCUSSION

### A. The Court, with the assistance of the parties, is best suited to oversee monitoring and enforcement and develop remedial plans.

Appointing a special master to oversee monitoring or provide guidance on remedial measures would flatly contradict the plain language and spirit of the Stipulation. Defendants agreed to refer this matter to this Court "because his constructive participation in the settlement negotiations has provided him with a unique ability to effectuate the parties' intent in any future proceedings." (Dkt. 1186 at 2; Dkt. 1194 at 1.) Defendants always understood and intended this Court to be solely and specifically responsible for assessing ADC's compliance with the parties' Stipulation if disputes arose. (Ryan Decl., Exh. A, at ¶ 10; Pratt Decl., Exh. B, at ¶ 11.) Indeed, the Stipulation's enforcement provisions actually refer to the Court by name. (Dkt. 1185 at ¶¶ 22, 29.) Given the Court's familiarity with the proceedings and the Stipulation, it is best suited to tackle those issues, and Defendants never envisioned that it would abdicate its role to an unrelated third party. (*See* Exh. A, Ryan Decl., at ¶¶ 11-14; *See* Exh. B, Pratt Decl., at ¶¶ 12-15.) And Defendants do not consent to this.

In addition to the Court's intimate involvement with the parties' negotiations and commensurate knowledge of the intent of the Stipulation, Defendants have invested considerable time and effort educating the Court about ADC's monitoring programs over the last two months. Defendants and their staff spent four days testifying about the healthcare monitoring program. They spent another full day bringing the Court up to speed on ADC's maximum custody monitoring program.

Between its recent education on the monitoring programs and unique insights into the intent of the Stipulation, there is no question that this Court is best suited to oversee the monitoring and enforcement of the Stipulation. Any appointed special master or expert would face an incredibly steep learning curve. The time and cost alone to bring an expert or special master up to speed on the proceedings would be staggering. *See Burlington N. R. Co. v. Dep't of Revenue of State of Wash.*, 934 F.2d 1064, 1072 (9th Cir. 1991) (noting that "in light of the judge's familiarity with the case[] and experience in the [subject matter], he could dispose of the cases more efficiently than anyone else."). It would exceed the Court's authority under the Stipulation, and waste the considerable resources the parties have invested to assist the Court in gaining an understanding of the monitoring methodology, to bring a special master or an outside expert on board more than 24 months into the life of the Stipulation with no knowledge of the parties, the Stipulation, or the ADC system.

Moreover, appointment of a special master or expert would not reduce the burden on the Court and would serve only to needlessly expand the proceedings and increase the parties' costs. Any special master or expert would only be empowered to prepare proposed findings of fact. *See* 18 U.S.C. § 3626(f)(6). In acting on a master's report and recommendations, the Court would have to give the parties notice and an opportunity to be heard. Fed. R. Civ. P. 53(f)(1). Either party could file objections to the master's report and recommendations and, given the history of this litigation, it is likely that each report and recommendation would be objected to by at least one of the parties. Fed. R. Civ. P. 53(f)(2). This Court would then have to review de novo any objections to findings of fact

and conclusions of law made by the master. Fed. R. Civ. P. 53(f)(3), (4); *Burlington*, 934 F.2d at 1072 (holding that "rubber stamping" a special master's findings or orders "is an inexcusable abdication of judicial responsibility and a violation of Article III of the Constitution" and requiring a court to conduct a thorough and independent review of all of the findings). Appointing a special master or expert would only serve to add unnecessary steps to the process.

**B. <u>Before considering a special master, the Court must first attempt to delegate duties to another Magistrate or District Judge.</u>**

Rule 53 permits the appointment of a special master only in three limited circumstances: (a) to perform duties consented to by the parties; (b) to hold trial proceedings and make or recommend findings of fact on issues to be decided by the court without a jury if appointment is warranted by some exceptional condition, or the need to perform an accounting or resolve a difficult computation of damages; or (c) to address pretrial and post-trial matters that cannot be addressed effectively and timely by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1); *Rouse v. Van Boening*, C09-5655 RBL/KLS, 2010 WL 3033731, at *3 (W.D. Wash. July 29, 2010). Here, the parties have not consented to the appointment of a special master, and there is no need for an accounting or difficult computation of damages. Consequently, the Court cannot appoint a special master unless it finds that an exceptional condition exists warranting appointment or the matters cannot be addressed effectively and timely by an available district judge or magistrate judge. Fed. R. Civ. P. 53(a)(1)(C); *Kifafi v. Hilton Hotels Ret. Plan*, 826 F. Supp. 2d 25, 36–37 (D.D.C. 2011) (declining to appoint a special master because the matters could be effectively and timely addressed by an available magistrate).

At the April 17, 2017 hearing, the Court noted challenges in devoting sufficient time and resources to enforcement of the Stipulation where the parties still had extensive disputes "over what could be called discovery matters." (4/17/17 Tr. at 672:12-20.) These disputes could easily be severed and transferred to another available magistrate or

district judge of this District. Judge Bade, for instance, is already familiar with the parties and the Stipulation through the lengthy mediations she has already hosted with respect to healthcare and maximum custody performance measures and monitoring methodology. Moreover, Judge Bade has successfully guided the parties in developing collaborative approaches to addressing noncompliance with respect to certain healthcare performance measures. The Court should refer the disputes to Judge Bade, or another willing magistrate, so that the Court may concentrate on enforcement of the Stipulation and development of remedial plans.[1] Alternatively, the Court could transfer a portion of enforcement of the Stipulation to Judge Bade (perhaps dividing up the medical, mental health, and maximum custody performance measures between the two magistrates), and if necessary, employ a third magistrate to conduct the mediations currently referred to Judge Bade.

Rule 53 already requires the Court to make the threshold determination whether there is an available magistrate or district judge before it can appoint a special master. Proceeding in the manner requested above would also be far more efficient and cost effective than appointing a third party without any knowledge of the parties, the Stipulation, the monitoring program, or the ADC system who would have to start at square one.

**C. <u>The Stipulation does not allow the Court to appoint a third party to oversee the monitoring program.</u>**

The Court proposed appointing a special master to oversee the monitoring program and to provide guidance on remedial measures. Plaintiffs' Statement urges the Court to instead appoint a third-party expert that would evaluate the reliability and accuracy of ADC's monitoring program, including the CGARs, evaluate any changes to monitoring methodology, assess compliance under the Stipulation, evaluate or supervise an evaluation

[1] The Stipulation does provide that the parties must submit all disputes regarding reasonable access to information to this Court. (Dkt. 1185 at ¶ 29.) Given Judge Bade's familiarity with the parties and issues through the mediation process, however, Defendants will stipulate to amend that provision to allow Judge Bade to assume that role.

of the adequacy of the clinical staffing to comply with the requirements of the Stipulation, mediate discovery disputes, evaluate the adequacy of Defendants' remedial plans, oversee ADC's monitoring program, and provide guidance on remedial measures. (Dkt. 2043 at 4-5.) In other words, Plaintiffs want the Rule 706 expert to take over ADC's monitoring programs. Plaintiffs prefer a Rule 706 expert to sidestep the PLRA's strict limitations on a special master's powers and duties. (Dkt. 2043 at 2.) But the parties already stipulated to specific monitoring provisions that place ADC in charge of monitoring compliance with the Stipulation's performance measures. (Dkt. 1185 at ¶¶ 9-10, 19-20.) Neither Plaintiffs nor the Court can rewrite the Stipulation by appointing anyone – special master, expert, or otherwise –to oversee ADC's monitoring program.

The Stipulation includes specific measurement and reporting procedures that apply to all performance measures. (*See, e.g.*, Dkt. 1185 at ¶¶ 9-10, 19-20.) It puts ADC in charge of monitoring compliance with the various performance measures and reporting back to Plaintiffs and the Court. (Id. at ¶¶ 9(a), 10(b), 19(a), and 20(b).) The measurement and reporting process set forth under the Stipulation determines "whether ADC has complied with particular performance measures at particular complexes." (Id. at ¶ 10.) The Stipulation also gives Plaintiffs' counsel and their experts access to the facilities, staff, contractors, inmates, and documents necessary to concurrently monitor and evaluate Defendants' compliance with performance measures. (Id. at ¶ 29.) To do as Plaintiffs request would unilaterally impose a "super monitoring bureau" to monitor ADC's monitoring bureau. This is not what the parties bargained for and agreed to in the Stipulation.

The Stipulation also sets forth very specific provisions concerning enforcement. Although the parties reserved the jurisdiction of this Court to decide disputes arising out of the Stipulation, potential disputes are limited to (a) whether Plaintiffs' counsel have reasonable access to information necessary to perform their monitoring duties, (b) whether Defendants have complied with the Stipulation, and (c) evaluation and development of remedial plans. (Id. at ¶¶ 29, 36.) If Plaintiffs believe Defendants have failed to

substantially comply with the Stipulation in some significant respect, they must provide Defendants with a notice of substantial noncompliance. (Id. at ¶ 30.) The parties are then required to meet and confer in good faith to try and resolve the dispute informally. (Id.) If they cannot resolve the dispute informally, then the parties are required to mediate the dispute before Magistrate Judge Bade.[2] (Id. at ¶ 31.) If the dispute is not resolved in mediation, either party may file a motion to enforce the Stipulation with the Court. (Id.) If the Court finds that Defendants have not complied with the Stipulation, it must initially require Defendants to submit a plan approved by the Court to remedy the deficiencies identified by the Court. (Id. at ¶ 36.) The Court is empowered to invoke additional legal remedies only if it subsequently determines that Defendants' remedial plans have failed to remedy the deficiencies in compliance. (Id. at ¶ 36.)

ADC undertook its monitoring obligations soon after the Stipulation was entered. Since that time, ADC has invested substantial time and resources into developing its monitoring programs. The ADC Health Services Contract Monitoring Bureau (HSCMB) now consists of more than 30 State employees who monitor compliance with the Stipulation performance measures for the provision of medical, mental health, and dental care to ADC inmates. ADC also voluntarily developed a comprehensive Monitor Guide that the monitors use to determine compliance with each performance measure. Although the Stipulation is silent on the creation and modification of a Monitor Guide, Plaintiffs and the Court have participated in defining and documenting the various monitoring procedures.

There is nothing in the Stipulation's enforcement provisions permitting Plaintiffs or the Court to supplant ADC's monitoring obligations and unilaterally modify the Stipulation by appointing a special master or expert to oversee (or take over) its monitoring. ADC never would have entered into an agreement that gave the Court or

[2] The Stipulation specifies that the mediations are to occur before Magistrate Judge Buttrick, but the parties have since agreed to hold them before Magistrate Judge Bade.

Plaintiffs the ability to eviscerate this critical aspect of the parties' Stipulation. (*See* Exh. A, Ryan Decl., at ¶ 13; *See* Exh. B, Pratt Decl., at ¶ 14.) To preserve the bargained-for provisions of the Stipulation, the parties also agreed that the Stipulation could not be modified unless both parties agreed. (See Dkt. 1185 at ¶ 40: "This is an integrated agreement and may not be altered or modified, except by a writing signed by all representatives of all parties at the time of modification.".)

Furthermore, the Court does not have the equitable authority to modify the Stipulation. Throughout their Statement, Plaintiffs suggest that the Court can modify it pursuant to Rule 60(b)(5). (Dkt. 2043 at 7.) Not so. The Stipulation is a private settlement agreement, not a consent decree, and it contains express language stating that it cannot be construed as a consent decree. (Dkt. 1185 at ¶ 35.) There are several important differences between private settlement agreements (like the Stipulation here) and consent decrees; principally, private settlement agreements cannot be modified or terminated by the Court:

> A consent decree will be the court's document, and thus the court can insist that a proposed decree be changed. Furthermore, consent decrees can subsequently be modified or terminated by the court, even over the objections of one of the parties. A settlement agreement is the parties' document. It will reflect whatever the parties have agreed to, irrespective of what the court thinks, ***and cannot be changed, except to reflect their mutual consent***.

Anthony DiSarro, *Six Decrees of Separation: Settlement Agreements and Consent Orders in Federal Civil Litigation*, 60 Am. U.L. Rev. 275, 278 (2010) (footnotes omitted and emphasis added); *compare Jeff D. v. Andrus*, 899 F.2d 753, 758 (9th Cir. 1989) ("[C]ourts are not permitted to modify settlement terms or in any manner to rewrite agreements reached by parties.") *with Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378 (1992) (noting that a consent decree may be amended under Rule 60(b)(6)).

The Court already recognized it cannot modify the Stipulation. (*See* Dkt. 1910 at 2 ["The Court declines to do so here. The parties agreed to resolve their dispute by a settlement memorialized in the Stipulation."].) So, the Court cannot alter or amend the

Stipulation without Defendants' consent, or over Defendants' objection. And because the Court cannot modify the Stipulation's monitoring provisions, the Court cannot appoint a third party to oversee the monitoring programs—whether that be a special master or an expert.

**D. <u>Plaintiffs' authorities do not authorize a Rule 706 expert in this case.</u>**

In support of their request for a Rule 706 expert, Plaintiffs cite to a number of interrelated California decisions where the courts appointed experts to oversee post-trial matters. (Dkt. 2043 at 3-4 (citing *Armstrong v. Schwarzenegger*, 2007 WL 1687776 (N.D. Cal. June 11, 2007) and *Plata v. Schwarzenegger*, 2005 WL 2932253 (N.D. Cal. October 3, 2005).) But, as Plaintiffs' counsel know, the parties in the *Armstrong* and *Perez* cases actually stipulated to the appointment of a Rule 706 expert to advise the court on compliance with the parties' agreements. (*See* Exh. C, Amended Stipulation and Order, *Carlos Perez v. James Tilton, et al.*, No. C-05-5241 JSW (N.D. Cal.); Exh. D, Stipulation for Injunctive Relief, *Plata v. Davis, et al.*, No. C-01-1351 TEH (N.D. Cal.).) Here, by stark contrast, the parties stipulated and agreed that *Defendants* would be in charge of self-monitoring and self-reporting compliance with the Stipulation, and Plaintiffs' counsel would be paid to monitor or enforce relief under the Stipulation.

The Ninth Circuit recently acknowledged that Rule 706 did not give the *Armstrong* court authority to appoint non-testifying experts in that instance. *Armstrong v. Brown*, 768 F.3d 975, 988 (9th Cir. 2014). Such authority is derived from the district court's inherent authority to appoint technical advisers, not from Rule 706. *Id*. ("Rule 706 does not even necessarily apply to *non-testifying* experts, although district courts retain inherent authority to appoint technical advisors in appropriate cases."). Absent agreement of the parties – like in the *Armstrong* case – the Court's inherent authority to appoint technical advisors is far from absolute, and their duties must be carefully defined and circumscribed.

Technical advisers can only be appointed in "rare cases;" their use "should be the exception and not the rule." *Ass'n of Mexican-Am. Educators v. State of California*, 231

F.3d 572, 610 (9th Cir. 2000) (in dissent). Their roles must also be carefully defined and limited. They "are not witnesses, and may not contribute evidence. Similarly, they are not judges, so they may not be allowed to usurp the judicial function." *Reilly v. United States*, 863 F.2d 149, 157 (1st Cir. 1988). "Neither may a court employ a technical advisor to undertake an independent mission of finding facts outside the record of the case." *Id*. at 158 (internal quotes and citation omitted). Plaintiffs' proposed advisors far exceed these narrow roles.

Plaintiffs urge the Court to give their proposed technical advisors unprecedented power and access. Plaintiffs ask the Court to appoint experts to independently evaluate the reliability and accuracy of ADC's monitoring program, including the CGARs. (Dkt. 2043 at 5.) They also suggest that the advisors be given access to all relevant parts of ADC's prisons, documents, persons, institutional meetings, trainings, and programs. Plaintiffs are thus proposing precisely the type of wide-ranging, fact-finding expedition that *Reilly* forbids. *Reilly*, 863 F.2d at 157 ("[A] court [cannot] employ a technical advisor to undertake an independent mission of finding facts outside the record of the case."). Plaintiffs also want the technical advisors to assess changes to monitoring methodology and compliance with the Stipulation, evaluate the adequacy of ADC's clinical staffing, mediate discovery disputes, and evaluate the adequacy of Defendants' remedial plans. (Dkt. 2043 at 5.) Given the broad scope of the duties Plaintiffs propose, there is also a real danger that the experts or advisors would end up usurping the role of the Court. Plaintiffs provide no authority permitting a Rule 706 expert under the unique circumstances of this case, much less authority permitting a Rule 706 expert with the authority they would like him or her to have in any case.

More importantly, Defendants only agreed to settle this case and enter into the Stipulation because this Court was charged with enforcing compliance, not some appointed third party. (*See* Exh. A, Ryan Decl., at ¶¶ 10, 12; *See* Exh. B, Pratt Decl., at ¶¶ 11, 13.) Defendants would not have agreed to settle this case if they believed the Court would eviscerate their agreements with Plaintiffs by appointing a Rule 706 expert to

oversee the monitoring program and determine compliance with the Stipulation. (*See* Exh. A, Ryan Decl., at ¶¶ 12-13; *See* Exh. B, Pratt Decl., at ¶¶ 13-14.) The Court should accordingly honor the parties' bargained-for agreement and refuse to appoint a Rule 706 expert.

**E. If the Court does appoint a special master or expert, the judiciary[3] or the parties should share the costs.**

Although Plaintiffs openly advocate for appointing a third-party expert and conferring expansive monitoring duties, Plaintiffs want nothing to do with the huge expense of the proposed experts. (Dkt. 2043 at 4-5, arguing that "Defendants should bear the full financial burden" of the appointed expert or special master.) In fact, the lion's share of Plaintiffs' Statement is devoted to explaining why they should not have to pay anything for their very expensive proposition. (Id. at 4-8.) There are many reasons, however, why Plaintiffs' counsel should bear a significant portion of the cost of an appointed expert through reallocation of a portion of the monitoring fees provided to them under the Stipulation.

Plaintiffs first argue that indigent prisoner class members and the Arizona Center for Disability Law ("ACDL") do not have the ability to pay the experts' fees. (Id. at 5-6.) Nobody doubts Plaintiffs themselves are unable to pay. But ADC pays Plaintiffs' counsel $250,000.00 per year in monitoring fees, as well as reasonable fees and costs for successfully enforcing the Stipulation. (Id. at 6.) Plaintiffs concede there "invariably will be some duplication of effort between Plaintiffs' counsel and the expert." (Id. at 7.) Indeed, there will be considerable overlap, as Plaintiffs propose that the expert should evaluate the reliability and accuracy of ADC's monitoring program, including the CGARs, evaluate the feasibility of changes to the Monitor Guide, and evaluate the adequacy of clinical staffing (although the plain language of the Stipulation makes it abundantly clear that the Court does not have any authority to order ADC to hire any

---

3 Plaintiffs correctly note that under the PLRA, the costs of a special master are paid for by the judiciary rather than the parties. *See* 18 U.S.C. § 3626(f)(4).

additional staff). (Id. at 4; Dkt. 1185 at ¶ 36.) All of these are tasks Plaintiffs' counsel are already paid to do under the Stipulation. If Plaintiffs' counsel believe that hiring an expert will help them better accomplish their monitoring obligations, then they should pay the bill for the expert out of their own annual budget as they have already done on other issues. Defendants should not be forced to pay twice for duplicative monitoring efforts.

Plaintiffs also argue that the sole reason for the expense of a special master or expert is due to Defendants' failure to comply with the Stipulation. This is not true. The Court is contemplating appointment of a special master due to the number and complexity of disputes between the parties and the Court's learning curve as to prison medical operations. However, the Court stated during the last status hearing that the evidentiary hearings have provided him with a much greater understanding of the system. Again, the significant cost and time associated with preparing for and attending the lengthy evidentiary hearings would be for naught if the Court turns over enforcement of the Stipulation to a third party without this pre-existing knowledge. In addition, many prior compliance disputes have stemmed from the parties' differing definitions of the term substantial noncompliance.[4] Now that the Court has issued an order giving the parties a concrete definition of substantial noncompliance that is consistent with the Stipulation (*see* Dkt. 2030 at 1), the Court's enforcement duties will be significantly reduced. The Court can then concentrate its efforts on the performance measures that are actually in substantial noncompliance and therefore truly warrant the additional scrutiny and remedial efforts set forth in the Stipulation.

---

[4] Plaintiffs have taken the position—unsupported by any provision in the Stipulation—that a single month of noncompliance for a given performance measure and complex warrants the issuance of a written Notice of Noncompliance to Defendants, participation in a meet and confer with Defendants, attendance at mediation, the filing of a Motion to Enforce with the Court, a hearing, and development of a remedial plan. By contrast, Defendants have taken the position that the definition in paragraph 10(b) of the Stipulation governing when the duty to monitor a performance measure under the Stipulation (compliance for 18 out of 24 months and no more than two consecutive months of noncompliance within the past 18 months) should logically also define when a performance measure is considered to be in substantial noncompliance.

Finally, Plaintiffs do not provide any authority for their claim that appointment of an expert will ultimately reduce the financial burden on the State. (Dkt. 2043 at 6.) In fact, the exact opposite will be true. Any special master or appointed expert will only be compensated as long as he or she continues to find Defendants in substantial noncompliance with the Stipulation. Under Plaintiffs' proposal, there is no incentive for the expert to conclude that Defendants are in substantial compliance and that the duty to monitor the performance measures set forth in the Stipulation ceases. Instead, the expert or special master will have ample incentive to continue looking for problems with the provision of healthcare services and maximum custody programming to ADC inmates, and their fees could easily reach hundreds of thousands, if not millions, of dollars. *See* Heather MacDonald, *California's Prison-Litigation Nightmare*, City Journal, Autumn 2013, available at https://www.city-journal.org/html/california%E2%80%99s-prison-litigation-nightmare-13604.html (noting that the special master appointed in *Coleman v. Brown* has incurred more than $48 million in fees).

## III. CONCLUSION

The terms of the Stipulation cannot be unilaterally modified through appointment of a special master or Rule 706 expert. Since the Court was intimately involved in the negotiation of the Stipulation and has received a thorough education on ADC's monitoring programs and systems, the Court is far better suited to administer the Stipulation than a third party with no knowledge of the intent of the Stipulation or the operation of Defendants' monitoring programs for healthcare and maximum custody performance measures. If the Court needs assistance with performing the duties allocated under the Stipulation, the Court should consider delegating more responsibilities to an available magistrate, such as Judge Bade.

/ / /

/ / /

/ / /

/ / /

DATED this 22nd day of May 2017.

STRUCK WIENEKE & LOVE, P.L.C.

By /s/Daniel P. Struck

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
Kevin R. Hanger
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona 85226

Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried
Lucy M. Rand
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alison Hardy: ahardy@prisonlaw.com

Amelia M. Gerlicher: agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com

Amy B. Fettig: afettig@npp-aclu.org

Asim Varma: avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

Caroline N. Mitchell: cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

Corene T. Kendrick: ckendrick@prisonlaw.com; edegraff@prisonlaw.com

Daniel Clayton Barr: DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

David Cyrus Fathi: dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

Donald Specter: dspecter@prisonlaw.com

Jessica Pari Jansepar Ross: jross@azdisabilitylaw.org

John Howard Gray: jhgray@perkinscoie.com; slawson@perkinscoie.com

John Laurens Wilkes: jlwilkes@jonesday.com, dkkerr@jonesday.com

Jose de Jesus Rico: jrico@azdisabilitylaw.org

Kathleen E. Brody kbrody@acluaz.org

Kirstin T. Eidenbach: kirstin@eidenbachlaw.com

Maya Abela mabela@azdisabilitylaw.org

Rose Daly-Rooney: rdalyrooney@azdisabilitylaw.org

Sara Norman: snorman@prisonlaw.com

Sarah Eve Kader: skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org

Rita K. Lomio: rlomio@prisonlaw.com

Victoria Lopez: vlopez@aclu.org

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Daniel P. Struck