Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
khanger@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DKD<br><br>**DEENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF APRIL 24, 2017 ORDER (Dkt. 2030)** |

## I. INTRODUCTION

Pursuant to this Court's May 10, 2017 Order (Dkt. 2061), Defendants respond to Plaintiffs' Motion for Reconsideration (Dkt. 2042). Plaintiffs' Motion should be denied because: (1) Plaintiffs have not made the requisite showing for reconsideration; (2) the "law of the case" doctrine is inapplicable; and (3) the Court's definition of substantial non-compliance, as defined in its April 24, 2017 Order, is consistent with the Stipulation and the only practical solution.

## II. MOTIONS FOR RECONSIDERATION ARE DISFAVORED

"The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv. 7.2(g)(1). Additionally, "no motion for reconsideration of an Order may repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order." *Id*. "Failure to comply with this subsection may be grounds for denial of the motion." *Id*. Only three grounds justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *Mustafa v. Clark County Sch. Dist.,* 157 F.3d 1169, 1178-79 (9th Cir. 1998).

Plaintiffs' Motion does not establish manifest error, nor does it inform the Court of new evidence or intervening legal authority. Instead, Plaintiffs' Motion does what LRCiv. 7.2(g)(1) prohibits – repeats arguments made by Plaintiffs in their underlying Motion. On this basis alone, Plaintiffs' Motion should be denied. *Id*. In Plaintiffs' Motion to Enforce, Plaintiffs asked the Court to define "substantial non-compliance . . . by the percentage of compliance Defendants report in their monthly compliance reports, or CGARS." (Dkt. 1863 at 3). And they urged the Court to adopt their interpretation of the Court's previous order – "a single month below the compliance threshold for a given reporting period at a given complex amounts to substantial noncompliance." *Id*. Indeed, Plaintiffs' Motion contains the same arguments. (Dkt. 2042.)

1

Finally, Plaintiffs' Motion does not establish, or even allege, clear error or manifest injustice. (Dkt. 2042). And Plaintiffs' anecdotal allegations of deficient, individual care, and assertion that the Court's definition "disables the Court from remedying even egregious noncompliance" are extraneous. The Stipulation does not require 100% compliance, it requires Defendants to meet the 75% benchmark for the first twelve months, the 80% benchmark for the second twelve months, and the 85% benchmark after the first 24 months. (Dkt. 1185 at ¶10(a)). Therefore, even if Defendants are compliant at every facility for every measure, there will be instances of individualized care that did not meet the protocols outlined in the performance measures. And the Court cannot order Defendants to provide specific treatment to individual inmates, as the Court's authority is limited to enforcement of the Stipulation, and compliance with the Stipulation does not require every ADC inmate's care to comply with the performance measures' standards.

### III.   THE "LAW OF THE CASE" DOCTRINE DOES NOT APPLY

"The law of the case doctrine is not an inexorable command, nor is it a limit to a court's power. Rather, application of the doctrine is discretionary." *United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004) (internal quotation marks and citations omitted).

Significantly, "[t]he law of the case doctrine is 'wholly inapposite' to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001). In *Santa Monica Baykeeper*, the Ninth Circuit was asked to determine whether the district court's reconsideration of its *own order* violated the law of the case doctrine. *Id*. at 884 (emphasis added). Accordingly, the Ninth Circuit determined, "[t]he doctrine simply does not impinge upon a district court's power to reconsider its own interlocutory order provided that the district court has not been divested of jurisdiction over the order." *Id*. at 888 (citing *Houser*, 804 F.2d at 567). Because the district court had rescinded its own prior order, over which it retained jurisdiction, the Ninth Circuit held that the court did not violate the law of the case doctrine. *Id*. at 889; *see also Smith,* 389 F.3d at 949 (holding the district court did not

violate the law of case doctrine as it reconsidered its own order, over which its jurisdiction had not yet been divested). "A survey of our sister circuits' application of the law of the case doctrine provides additional support for this conclusion." *Id*. (citing *Avitia v. Metro. Club of Chicago, Inc.,* 49 F.3d at 1219, 1227 (7th Cir. 1995); *Prisco v. A & D Carting Corp.,* 168 F.3d 593, 607 (2d Cir. 1999)); *see also* Moore's Federal Practice § 134.21[1] (3d ed.2003).

To the extent the Court sua sponte "re-considered" its earlier order, such reconsideration was appropriate, it did not violate the law of the case doctrine, and it was within the Court's lawful authority. The cases cited by Plaintiffs, and their analysis of the same, are misplaced. The "law of the case" doctrine does not apply here.

**IV. THE COURT'S DEFINITION OF SUBSTANTIAL NON-COMPLIANCE IS PRACTICAL AND CONSISTENT WITH THE STIPULATION**

**A.  The Clarified Definition Was Requested by Both Parties and the Court**

During the February 8, 2017 hearing, the Court and parties discussed the term "substantial noncompliance", recognized the Stipulation does not define the term, and acknowledged the unanswered questions presented by the Stipulation's silence. In particular, the Court and parties discussed when measures can, and should, enter and exit the remediation process without a firm understanding as to what "substantial noncompliance" means. The Court noted, "And so it's not an unreasonable question to ask. It's not a question that's answered by the mechanism for when performance measures are removed from the Stipulation. But it is a more nuanced question of when they should enter." (2/8/17 Hr'g Tr. at 41:16-19.)  And the Court appreciated the difficulty in answering these questions: "[The answer to these questions] . . . is difficult to define in a precise way." (*Id*. at 44:2–-3); "and it turns out to be somewhat of a complicated issue…" (*Id*. at 41:8–-9); "it is possible for the performance measures to vary with respect to whether or not they are meeting the benchmarks." (*Id*. at 41:13-–15). And it appreciated Defendants' concern: "It's complicated because of the fact that we have also in this time lag, we are presently dealing with a need to appreciate the impact of the Court's previous

3

rulings on how the performance measures are measured and also with respect to whether the monitoring guide was in a final process that meant that all of these other performance measures that, perhaps, are now just being looked at, whether they are affected by that as well." (*Id*. at 41:19 – 42:)  Plaintiffs agreed:   "[P]laintiffs do share this frustration . . . so we also struggled with that. . . " (*Id*. at 42:22 – 23; 43:5.)  Plaintiffs and the Court also admitted they do not use a "hard and fast rule" in deciding whether to send Defendants a notice of non-compliance, or in ruling Defendants are in substantial non-compliance at a particular facility for a particular measure. (*Id*. at 43:9–-10; 43:19–-44:3.)

Prior to the Court's Order defining substantial non-compliance, there was no rhyme or reason as to when Plaintiffs advised Defendants that they believed a particular facility or measure was non-compliant.  Nor was there any method to the Court's determination of ordering a remedial plan or its ultimate decision to find a measure/facility non-compliant.  This was largely due, as discussed above, to the time lapse between the time the notice of non-compliance was sent and a determination of non-compliance, which caused confusion in determining whether a measure was non-compliant.  For example, Plaintiffs sent Defendants a notice of non-compliance on July 29, 2016.  The mediation regarding the notice was on December 19, 2016.  Plaintiffs filed their Motion to Enforce on January 13, 2017 (Dkt. 1863), and the Court found Defendants' non-compliant with certain measures on April 24, 2017 – *nine months* after Plaintiffs sent Defendants their notice of non-compliance. (Dkt. 2030.)  A facility/measure that was below the compliance threshold in December is not necessarily going to be below the threshold in April of the following year.  To resolve the parties' and Court's concerns, and to streamline the remediation process and make it practical and effective, the Court provided an answer to the unanswered questions above, by deciding upon a standard to define substantial non-compliance.

Now, however, Plaintiffs claim there was "no reason" for the Court to clarify what substantial non-compliance meant. (Dkt. 2042 at 4.)  This position is inconsistent with their prior position, as *both* parties and the Court recognized the difficulty in determining

4

when a measure can enter and exit the remediation procedure. (2/8/17 Hr'g Tr. at 42:22–-23; 43:5.)   Had the Court intended to find every facility that missed the compliance threshold for one month non-compliant, it could have done so, although Defendants assert that doing so would be contrary to the Stipulation. As the parties and Court recognized, however, this is impractical as there is a time lag between the time Plaintiffs send Defendants a notice of non-compliance and when it is presented to the Court in a motion to enforce.

### B. The Definition is Consistent With the Stipulation

Plaintiffs conflate *monthly* compliance with a particular performance measure with *overall compliance with the Stipulation*. The purpose of the Stipulation is for Defendants to achieve substantial compliance with all performance measures at all ADC facilities.[1] This is tracked through monthly reporting of performance measure performance. (Dkt. 1185 at ¶10(a).) The monthly reports outline whether each performance measure has met a particular percentage threshold. *Id*. But substantial compliance with the *Stipulation as a whole* is not achieved until Defendants' duty to monitor and report that performance measure's performance is terminated. (*Id*. at ¶10(b).) Defendants' duty terminates if: (1) a performance measure is compliant for eighteen out of twenty-four months; and (2) the performance measure has not been out of compliance for three or more consecutive months within the past eighteen month period. *Id*. Thus, termination of Defendants' duty, not how a particular performance measure performed one month, establishes substantial compliance. Therefore, the Court's utilization of the Stipulation's termination language to determine substantial non-compliance is consistent with the Stipulation. To use the percentage thresholds outlined in Paragraph 10(a), as Plaintiffs request and as discussed in detail above, is impractical, unworkable, and confusing. Additionally, using Plaintiffs' requested method is inconsistent with the Stipulation in that it could result in performance measures being subject to court enforcement, when the duty to monitor them has

---

[1] Although, not all performance measures apply to all ADC facilities.

5

1  terminated pursuant to paragraph 10(b) or 20(b).

2        Further, the Court's definition does not disable Plaintiffs from monitoring
3  compliance. Over 24 months have passed since the Stipulation was adopted, therefore,
4  Plaintiffs have the ability to determine whether Defendants are in substantial non-
5  compliance, based on the Court's definition. While Plaintiffs cite to *Halderman* in
6  support of their argument that the Court's new definition will "disable it from addressing
7  noncompliance", *Halderman* is distinguishable. Unlike the Stipulation here, the
8  settlement agreement in *Halderman* did not include specific items, like performance
9  measures, that had to achieve monthly benchmarks. Instead, the settlement agreement in
10 *Halderman* included four subjective services that had to be provided to the *entire* Plaintiff
11 class. *See Halderman v. Pennhurst State School and Hosp.*, 901 F.2d 311, 315 (3d Cir.
12 1990) (emphasis added). Unlike here, where compliance is a black-and-white
13 determination of whether a record complies with the performance measure and whether a
14 facility hit the benchmark for the month, there was no rubric in the *Halderman* settlement
15 agreement as to whether the required "services" (protection from harm, safe conditions,
16 adequate shelter and clothing, etc.) were offered. *Id*. There, the court found defendant in
17 "substantial noncompliance" with the settlement agreement because it was not providing
18 the required services to certain members of the class. *Id*. at 316. Thus, *Halderman* is
19 further distinguishable in that, here, the Stipulation does not require 100% compliance,
20 i.e., that every ADC inmate be provided treatment/services pursuant to the performance
21 measures' terms.

22       The Court's Order resolved the concerns raised by the parties, and the definition is
23 consistent with the Stipulation. That Plaintiffs are dissatisfied with the ramifications of
24 having a clear definition of substantial non-compliance – inability to send notices of non-
25 compliance based on their own subjective beliefs – does not warrant the filing of a motion
26 for reconsideration. The Court's definition will streamline enforcement and monitoring of
27 the Stipulation and will allow a clear understanding, by the Court and parties, of when
28 performance measures may enter and exit the remediation process.

## V. <u>CONCLUSION</u>

For these reasons, Plaintiffs' Motion should be denied.

DATED this 24th day of May 2017.

          STRUCK WIENEKE & LOVE, P.L.C.


By /s/Daniel P. Struck
   Daniel P. Struck
   Kathleen L. Wieneke
   Rachel Love
   Timothy J. Bojanowski
   Nicholas D. Acedo
   Ashlee B. Fletcher
   Anne M. Orcutt
   Jacob B. Lee
   Kevin R. Hanger
   STRUCK WIENEKE & LOVE, P.L.C.
   3100 West Ray Road, Suite 300
   Chandler, Arizona  85226

   Arizona Attorney General Mark Brnovich
   Office of the Attorney General
   Michael E. Gottfried
   Lucy M. Rand
   Assistant Attorneys General
   1275 W. Washington Street
   Phoenix, Arizona 85007-2926

   *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com; docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Kirstin T. Eidenbach: | kirstin@eidenbachlaw.com |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org; mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Victoria Lopez: | vlopez@aclu.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Daniel P. Struck