Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
khanger@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br>Plaintiffs, <br><br>v. <br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br>Defendants. | NO. 2:12-cv-00601-DKD <br><br><br>**DEFENDANTS' RESPONSE TO PRISONER PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION (DKT. 1958)** |

Defendants Charles Ryan and Richard Pratt oppose Plaintiffs' Motion for Preliminary Injunction relating to medical treatment for Plaintiff Shawn Jensen because the Stipulation does not authorize the Court to provide individualized relief to class members with respect to their healthcare or conditions of confinement, this Court has already ruled that it cannot order individualized relief (Dkt. 1702), and the time for reconsideration of that order has long passed. Alternatively, even if the Stipulation did allow for such relief, Plaintiffs have not shown a likelihood of success on the merits as necessary to obtain a preliminary injunction.

## I. BACKGROUND

Inmate Jensen has been in the custody of the Arizona Department of Corrections ("ADC") since 1973, when he received a life sentence for the murders of two teenagers. (Dkt. 937 at ¶¶ 2069, 2071.) Jensen was a named Plaintiff and class representative in the underlying litigation; he alleged that Defendants failed to provide him adequate medical care in diagnosing and treating his prostate cancer. (Dkt. 1 at ¶¶ 7, 30.) Jensen was diagnosed with prostate cancer in 2009 and had a prostatectomy in 2010 utilizing the state-of-the-art da Vinci robotic surgical process. (Dkt. 902, 903.) ADC has continued to provide Jensen follow-up care since that time. (Id.; Exhibit 1: Declaration of Dr. Williams at ¶¶ 7-124.)

On October 9, 2014, the parties, including Jensen, agreed to settle the underlying lawsuit, which the Court approved on February 18, 2015, following a lengthy fairness hearing. (Dkt. 1185, 1188, 1193, 1458.) In approving the Stipulation, the Court noted that:

> [I]t is also reasonable to conclude that not every perceived deficiency will be resolved by the settlement. Some matters raised in the objections are beyond the scope of this lawsuit or address matters not subject to constitutional protection. Moreover, the Stipulation allows for graduated benchmarks that contemplate some margin of noncompliance. Nevertheless, the Stipulation includes the parties' agreement to adopt substantial measures designed to address the provision of medical care and other conditions of confinement. No settlement is perfect. A compromise of hotly contested issues will leave each side wanting, receiving something less than

> their highest and best expectations. But those highest expectations can only be achieved with a complete litigation victory both at the trial court and before the court of appeals. And in light of the fact that neither plaintiffs nor defendants could say that such victories were a "sure thing" in this case, the compromise which produced the "sure thing" of more limited results can still look wise and prudent. Both parties came to this understandable conclusion and reached a settlement that the Court can say, beyond any reasonable doubt, is fair, reasonable and adequate in light of the circumstances.

(Dkt. 1458 at 2-3.)

On March 1, 2017, more than two years after the parties consummated that Stipulation, Plaintiffs' counsel, on behalf of Jensen, filed a Motion for Preliminary Injunction. Instead of pursuing a remedy through appropriate channels, Plaintiffs seek to "enjoin Defendants from denying [Plaintiff Jensen] critical medical care for his life-threatening disease." (Dkt. 1958 at 2.) Specifically, Plaintiffs request that the Court "issue an Order requiring Defendants to stop denying his urologist's request for a full body scan with x-rays and to stop preventing his medical providers from developing a medical treatment plan based upon the body scans." (Id.) Plaintiffs assert that "Defendants' policy and practice of denying Inmate Jensen his medically necessary full body scan with x-rays . . . denies him his right to be free from cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution." (Id.)

## II. JENSEN'S REQUEST FOR INJUNCTIVE RELIEF IS BEYOND THE SCOPE OF THE STIPULATION AND THIS COURT'S ENFORCEMENT AUTHORITY.

The Stipulation only gives this Court jurisdiction to decide disputes arising out of the Stipulation. (Dkt. 1185 at ¶ 35.) Consequently, the Court's jurisdiction is confined to two narrowly defined areas: (1) ruling on disputes between the parties with respect to Plaintiffs' reasonable access to documents, individuals, and facilities as needed to monitor the Stipulation, and (2) evaluation and enforcement of Defendants' alleged non-compliance with the Stipulation's specific performance measures when the parties have already completed the dispute resolution procedures outlined in paragraphs 30 and 31. (Dkt. 1185 at ¶¶ 29, 36.)

The Stipulation sets forth the procedures Plaintiffs must follow if they allege that Defendants "have failed to substantially comply in some significant respect with this Stipulation." (Dkt. 1185, ¶¶ 30-31.) That procedure culminates in either party filing a motion to enforce compliance with the Stipulation. Doing so triggers the Court's authority to evaluate Defendants' compliance with the Stipulation. Paragraph 36 of the Stipulation provides that:

> In the event the Court finds that Defendants have not complied with the Stipulation, it shall in the first instance require Defendants to submit a plan approved by the Court to remedy the deficiencies identified by the Court. In the event the Court subsequently determines that the Defendants' plan did not remedy the deficiencies, the Court shall retain the power to enforce this Stipulation through all remedies provided by law, except that the Court shall not have the authority to order Defendants to construct a new prison or to hire a specific number or type of staff unless Defendants propose to do so as part of a plan to remedy a failure to comply with any provision of this Stipulation. In determining the subsequent remedies the Court shall consider whether to require Defendants to submit a revised plan.

Plaintiffs' Motion does not argue that Defendants denied them access or that Defendants performance on the CGARs for a specific performance measure was substantially noncompliant; they are instead criticizing individualized treatment decisions. There is nothing in the Stipulation that confers jurisdiction on the Court to evaluate the adequacy of an individual inmate's healthcare or enter any specific relief as to that inmate's care.

In ruling on other motions brought by class members seeking individualized relief with respect to their healthcare or conditions of confinement, the Court has already correctly ruled that it is unable to order the requested relief because his jurisdiction is constricted by the terms of the Stipulation. In its Order dated October 5, 2016, the Court stated:

> [T]he Court's jurisdiction in this case is limited by the terms of the parties' agreement to settle the case. Accordingly, the Court is unable to order specific relief as it relates to individual class members. The concerns raised in these filings are best addressed by separate lawsuits on each inmate's own behalf.

3

1  (Dkt. 1702 at 1.)  Plaintiffs did not move to reconsider or appeal that decision, and they
2  are foreclosed from doing so now.  *See* LRCiv 7.2(g)(2).  Moreover, as demonstrated by
3  the attached Declaration of Dr. Williams (See Exhibit 1), Jensen has received more than
4  adequate care.  Jensen has not provided any reason why he should be treated differently
5  than any other class member seeking individualized relief.  He shouldn't be. If he wants
6  relief, he must file a separate action requesting individualized relief.

7  Filing a separate action to obtain relief related to an individual inmate's medical
8  care is consistent with Ninth Circuit case law in similar post-settlement proceedings.  For
9  example, in *Pride v. Coreira*, 719 F.3d 1130 (9th Cir. 2013), the Ninth Circuit reversed
10 the district court's dismissal of an inmate's § 1983 action for injunctive relief seeking
11 specific medical treatment, including a knee brace and egg crate mattress, denied to him.
12 The district court dismissed the inmate's claim for injunctive relief on the ground that his
13 claim was subsumed by the *Plata v. Brown* class action.  719 F.3d at 1132.  The Ninth
14 Circuit reversed the dismissal, holding that because his claim for injunctive relief
15 concerned only his individual medical care, the inmate's claim was not encompassed in
16 the *Plata* litigation which sought systemic reform of medical care in the California
17 prisons.  *Id.*  The Ninth Circuit distinguished *Gary v. Hawthron*, 06-CV-1528 WQH
18 (PCL), 2007 WL 2781098 (S.D. Cal. Sept. 19, 2007), a case in which an inmate sought
19 injunctive relief, including medical staffing and screening procedures for *all inmates*.  *Id.*
20 at 1138.  The Ninth Circuit noted that by contrast, Pride's claim for injunctive relief
21 related solely to his individual need for medical treatment.  *Id.*  Here, as in *Pride*, Jensen's
22 claim for injunctive relief similarly relates solely to his individual need for diagnostic
23 imaging related to his prostate cancer, not to systemic relief that could be addressed under
24 the Stipulation's monitoring and enforcement provisions.  As a result, Jensen's exclusive
25 recourse is to file a separate action seeking injunctive relief related to his individual care.
26 / / /
27 / / /
28 / / /

### III. JENSEN HAS NOT ESTABLISHED HE IS ENTITELD TO AN INJUNCTION.

If the Court nonetheless believes it has the authority under the Stipulation to address Jensen's request for individual injunctive relief, it can only do so if he demonstrates: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public's interest.[1] *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). This is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter,* 555 U.S. at 22. Moreover, under Rule 65(b) and Ninth Circuit case law, a party must show more than a mere "possibility" of irreparable harm to obtain a preliminary injunction; he must "*demonstrate* immediate threatened injury." *See Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original); *Winter*, 555 U.S. at 21-22. Speculative injury does not demonstrate the immediate threat of irreparable injury sufficient to warrant granting a preliminary injunction. *Goldie's Bookstore Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984); *Winter*, 555 U.S. at 21-22.

Prisoners seeking injunctive relief bear an even heavier burden. Under the Prison Litigation Reform Act ("PLRA"), preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. 18 U.S.C. § 3626(a)(2). In crafting any relief, a court must also give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief. *Id.*

///

///

---

[1] The Prison Litigation Reform Act ("PLRA") prescribes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials: Section 3626(a)(2) essentially limits the court's power to grant preliminary injunctive relief to inmates.

5

### A. <u>Jensen Has Not Shown a Likelihood of Success on the Merits.</u>

Jensen cannot show a likelihood of success on the merits. First, Jensen has not exhausted available administrative remedies. The PLRA requires inmates to properly exhaust all available administrative remedies before filing a federal lawsuit challenging prison conditions. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 88, 90-91 (2006); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *McKinney v. Carey*, 311 F.3d 1198, 1199-1200 (9th Cir. 2002). Proper exhaustion requires a prisoner to complete the detention facility's "administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford*, 548 U.S. at 90–91. Exhaustion is mandatory under the PLRA, and unexhausted claims are barred. *Jones*, 549 U.S. at 211.

At ADC, the inmate grievance process is set forth in Department Order (DO) 802: Inmate Grievance Procedure. (See Exhibit 2: Declaration of Richard Pratt at ¶ 9.) First, an inmate must submit an Informal Complaint Resolution form to his Correctional Officer III (CO III) within ten days of the action that caused the Complaint. (Id. at ¶ 10.) For a complaint involving medical care, the CO III forwards the Informal Complaint Resolution form to the Contract Facility Director of Nursing, who must respond within 15 days using the Inmate Informal Complaint Resolution Form. (Id. at ¶ 11.) If the inmate is dissatisfied with the Contract Facility Director of Nursing's response, he may submit a Formal Grievance within five of the response to the unit CO IV Grievance Coordinator using the Inmate Grievance form. (Id. at ¶ 12.) The CO IV Grievance Coordinator forwards the Inmate Grievance to the Contract Facility Health Administrator, who has fifteen days to investigate and prepare a response. (Id. at ¶ 13.) The Contract Facility Health Administrator maintains a copy of the Formal Grievance, returns the completed grievance in a sealed envelope to the CO IV Grievance Coordinator, and emails the Formal Grievance, response, and any supporting documentation to the Contract Compliance Monitor or designee. (Id. at ¶ 14.) The CO IV Grievance Coordinator closes out the grievance tracking log and forwards the sealed grievance to the inmate. (Id. at ¶

15.)  The Contract Facility Health Administrator's response to the Formal Grievance is final and constitutes exhaustion of all remedies within ADC.  (Id. at ¶ 16.)

Jensen has not completed any portion of the ADC inmate grievance procedure with respect to his request for a full-body scan with x-rays and accordingly has not exhausted the administrative remedies available to him at ADC.  (Id. at ¶¶ 17-19.)  Consequently, his claim is barred.

Second, Jensen has not shown that Defendants are deliberately indifferent.  To prove an Eighth Amendment claim for denial of adequate health care, an inmate must demonstrate a "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  A prison official is deliberately indifferent if he knows of and disregards a serious medical condition or is aware of facts from which the inference could be drawn that a substantial risk of harm exists, and actually draws such an inference. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).  "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

The treatment for Jensen's cancer detailed in the attached Declaration of Dr. Williams shows frequent follow-up visits with nursing and providers, extensive diagnostic imaging and lab testing, and numerous specialty consults.  (See Ex. 1 at ¶¶ 7-124.)  Jensen received a full-body bone scan on March 21, 2017 and a CT scan of his abdomen and pelvis on April 17, 2017.  (Id. at ¶¶ 80, 98.)  While Jensen insists that he needs a "full body scan with x-rays," Dr. Williams opines that the CT scan Jensen received provides a better view of the bones than x-rays would, and the full-body bone scan he received gives a better indication of disease spread that would be missed on x-rays.  (Id. at ¶¶ 81, 99.)

At most, Jensen has a difference of medical opinion as to the diagnostic testing necessary for treatment of his cancer.  But a difference of medical opinion does not establish deliberate indifference and cannot form the basis of a constitutional violation under § 1983.  *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi*, 391 F.3d at 1059-60.  Jensen also alleges that Defendants have delayed providing testing of and

treatment for his cancer. But mere delay in the provision of health care, without more, is not sufficient to state a claim of deliberate indifference. *Shapley v. Nevada Bd.of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

In short, Jensen has not demonstrated likelihood of success on the merits on a claim for deliberate indifference to his medical needs because he has received the full-body bone scan and CT scan of his abdomen and pelvis that his treating providers believed were necessary to assess and treat his cancer, and Dr. Williams opines that these tests are better for evaluating disease progression than the test Plaintiffs insist Inmate Jensen should receive. (Ex. 1 at ¶¶ 80-81, 98-99.) Moreover, the full body bone scan and CT scan showed no evidence that the cancer has metastasized.[2] (Id. at ¶¶ 82, 98.)

### B. Jensen Has Not Demonstrated that He is likely to Suffer Irreparable Harm in the Absence of an Injunction.

In addition, Jensen has not demonstrated what, if any, irreparable harm he will suffer if he is not provided a full body scan with x-rays. Nor can he demonstrate that he is likely to suffer any irreparable harm without the x-rays. Jensen has already received a full-body bone scan, a CT scan of his abdomen and pelvis, and other diagnostic tests relating to his cancer which the Corizon medical providers and outside specialists who have physically examined Jensen believe are necessary for his care. His providers have prescribed medication and treatment consistent with their evaluation of his medical needs as informed by their review of the diagnostic tests ordered and completed for him. Moreover, Dr. Williams has reviewed the treatment provided to Jensen and opines that it is within the community standard of care. (Ex. 1 at ¶ 129.)

While Plaintiffs' expert may believe that Jensen should receive a full body scan with x-rays and have the remainder of his treatment performed by one physician, Jensen has not shown that any irreparable harm is likely to befall him in the absence of a scan with x-rays or treatment by a single provider. Mere speculation is not enough to carry

---

[2] In addition, Defendants are continuing to provide Jensen care as evidenced by the appointments he has scheduled later this week and month for a full body PET scan and radiation therapy. (Ex. 1 at ¶ 127.)

1  Jensen's burden on this critical factor.  *See Winter*, 555 U.S. at 21-22; *Goldie's Bookstore*, 739 F.2d at 472.  Moreover, while Plaintiffs also reference three reports from Dr. Wilcox, dated November 3, 2013, January 31, 2014, and April 2, 2014, criticizing the past healthcare Jensen has received, Plaintiffs, including Jensen, agreed to settle this case, thereby waiving any claims they have with respect to care that occurred prior to signing the Stipulation on October 9, 2014.

### C.     **The Other Factors Do Not Tip the Balance in Favor of an Injunction.**

The other factors to consider in ruling on a request for an injunction are whether the balance of equities tip in the movant's favor and whether entering the injunction would be in the public's interest.  While in the abstract the third factor may appear to weigh in Jensen's favor, as noted above, Defendants have provided extensive diagnostic studies and specialty treatment to Jensen for his cancer. In addition, the Regional Medical Director in charge of Jensen's care opines that the full body bone scan and CT scan provided to Jensen are superior to the test he requests.  (Ex. 1 at ¶¶ 81, 99.)  As to the fourth factor, entering an injunction is not in the public's interest because doing so would be contrary to the plain language of the Stipulation. The Stipulation does not confer jurisdiction on this Court to enter individualized relief, and Jensen cannot show a violation of his constitutional right to adequate medical care.  Moreover, if the Court addresses individualized relief in this instance, it will open up relief to every single individual request, which will drain judicial and State resources and effectively nullify the Stipulation.  Because all four factors weigh in favor of Defendants, the Court should deny Plaintiffs' requested relief.

### IV.    **THE COURT SHOULD AWARD DEFENDANTS THEIR REASONABLE ATTORNEYS' FEES.**

Defendants have on multiple occasions asked Plaintiffs' counsel to withdraw their Motion because this litigation is not an appropriate vehicle for seeking individual relief for and on Jensen's behalf, but they have refused to do so (as recently as today).  (See Exhibit 3, 4.)  Defendants initially informed Plaintiffs' counsel of their belief that a filing

9

1 with respect to Jensen's individual care was outside the scope of the Stipulation on
2 February 27, 2017, *before* Plaintiffs filed their Motion.  (Ex. 3.)  On March 10, 2017,
3 Defendants inquired as to what information Plaintiffs needed to withdraw their Motion.
4 (Id.)  Defendants asked Plaintiffs to withdraw their Motion again on April 17, 2017 and
5 May 1, 2017, but Plaintiffs refused.  (Id.)  On May 17, 2017, Plaintiffs' counsel stated that
6 they would not agree to another extension of the deadline for Defendants' response to
7 their Motion.  (Ex. 4.)  Based on this response from Plaintiffs, Defendants began
8 preparing their response, including a lengthy, 129-paragraph Declaration from Dr.
9 Williams regarding his review of the extensive diagnostic testing and treatment provided
10 to Jensen over the past seven months.  Prior to filing the response, Defendants again asked
11 Plaintiffs on May 30, 2017 to withdraw their Motion as unauthorized by the Stipulation,
12 but they did not respond until 2:00 pm on the deadline, when the response and supporting
13 Declarations of Dr. Williams and Richard Pratt had already been prepared.  (Id.)
14 Plaintiffs again refused to withdraw their Motion.  (Id.)

15 Accordingly, pursuant to 28 U.S.C. § 1927 and the Court's inherent authority, the
16 Court should award Defendants' reasonable fees and costs in responding to Plaintiffs'
17 unauthorized Motion.  *See* 28 U.S.C. § 1927 (fees may be awarded if party "multiplies the
18 proceedings in any case unreasonably and vexatiously"); *Roadway v. Piper*, 447 U.S. 752,
19 765 (1980) (federal courts have the inherent power to assess attorneys' fees in response to
20 abusive litigation practices).

21 **V.**     **CONCLUSION**
22 For the foregoing reasons, the Court should deny Jensen's Motion and award
23 Defendants their reasonable attorneys' fees incurred in having to respond.
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

DATED this 31st_day of May 2017.

STRUCK WIENEKE & LOVE, P.L.C.


By /s/Daniel P. Struck
   Daniel P. Struck
   Kathleen L. Wieneke
   Rachel Love
   Timothy J. Bojanowski
   Nicholas D. Acedo
   Ashlee B. Fletcher
   Anne M. Orcutt
   Jacob B. Lee
   Kevin R. Hanger
   STRUCK WIENEKE & LOVE, P.L.C.
   3100 West Ray Road, Suite 300
   Chandler, Arizona 85226

   Arizona Attorney General Mark Brnovich
   Office of the Attorney General
   Michael E. Gottfried
   Lucy M. Rand
   Assistant Attorneys General
   1275 W. Washington Street
   Phoenix, Arizona 85007-2926

   *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Kirstin T. Eidenbach: | kirstin@eidenbachlaw.com |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Victoria Lopez: | vlopez@aclu.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Daniel P. Struck