Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
       adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-DKD <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF STATEMENT REGARDING THE APPOINTMENT OF A SPECIAL MASTER OR COURT EXPERT (DOC. 2043)** |

LEGAL135768907.1

At the April 17, 2017 hearing, the Court stated that it may need the help of a person or persons "more skilled in this area" who can "oversee the monitoring program" and "provide guidance to the Court on what remedial measures would be best considered in the context of a very complicated stipulation involving many different individual prisons." [4/17/17 Tr. at 674:2-10] The Court observed that "it's unfortunately beyond the capacity of this one judge to appropriately address it. It takes more time than I have. I don't have full time for this case. This case deserves that kind of attention." [*Id*. at 672:21-24]

Plaintiffs suggested to the Court that it appoint an expert under Rule 706 of the Federal Rules of Evidence to assist it on discrete topics, instead of a special master under Federal Rules of Civil Procedure Rule 53. [Doc. 2043 at 3][1] Despite Plaintiffs' position, Defendants' Response purports to discuss the limitations of Rule 53. [Doc. 2067 at 3-10] As Plaintiffs also do not support the appointment of a Rule 53 special master, they will not waste the Court's time countering Defendants' arguments regarding a special master.

Defendants mischaracterize the Court's exercise of its plenary power to appoint an expert as a modification of the Stipulation, and they argue unpersuasively that the sections of the Stipulation regarding Defendants' monitoring of their contractor somehow tie the Court's hands and limit its inherent Article III power. Contrary to Defendants' assertions, the Stipulation provisions governing monitoring do not in any way nullify other sections of the Stipulation that reserved to the Court all of its equitable and remedial powers, with two exceptions not relevant here.

Therefore, for the reasons detailed in Plaintiffs' brief (Doc. 2043) and below, the Court should not appoint a special master, but should instead appoint an expert under Rule 706 of the Federal Rules of Evidence, and require Defendants to pay all expert fees and expenses.

---

[1] All citations to the Electronic Case Filing (ECF) docket are to the page number assigned by the Court's ECF system, and not the internal page numbers of the documents filed therein.

**I.     The Stipulation Expressly Permits the Court to Use Its Equitable Power to Appoint a Rule 706 Expert.**

The Stipulation expressly allows the Court to use its equitable enforcement power to appoint a Rule 706 expert, and the appointment of an expert does not modify the Stipulation. Additionally, the fact that Defendants Ryan and Pratt did not foresee at the time they entered into the Stipulation that there was a possibility that a Rule 706 expert could be appointed at some point in the future is unavailing and irrelevant.

**A.     The Court Has Power to Appoint a Rule 706 Expert, and Doing So Is Not a Modification of the Stipulation.**

Defendants assert the "exhaustively bargained-for provisions of the Stipulation forbid the appointment of a special master or a Rule 706 expert." [Doc. 2067 at 2] This is flat-out wrong. There is absolutely nothing in the Stipulation that forbids the Court from making such an appointment.

Rather, the Stipulation clearly states that "[t]he parties consent to the reservation and exercise of jurisdiction by the District Court over all disputes between and among the parties arising out of this Stipulation. [. . .] [T]he Court *shall retain the power* to *enforce* this Stipulation *through all remedies provided by law*, except that the Court shall not have the authority to order Defendants to construct a new prison or to hire a specific number or type of staff . . . ." [Doc. 1185 ¶¶ 35-36 (emphasis added)] Other than these two limits on the Court's enforcement power, this Court retains all of its inherent equitable Article III authority, and thus it can appoint a Rule 706 expert. *See* Fed. R. Evid. 706 advisory committee's note (1972 Proposed Rules) ("The inherent power of a trial judge to appoint an expert of his own choosing is virtually unquestioned") (citations omitted).

Defendants argue their permission is necessary for the Court to issue an order appointing an expert, because in their view, the Stipulation cannot be modified "without Defendants' agreement." [Doc. 2067 at 3] But the issuance of an order appointing a Rule 706 expert is not a modification of the Stipulation. *See Thompson v. Enomoto*, 815 F.2d 1323, 1327 (9th Cir. 1987) (post-judgment appointment of a special master in prison

1  conditions case is "pursuant to, and not a modification of, the original consent decree");
2  *see also Nat'l Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 540-541
3  (9th Cir. 1987) (order of reference to a special master is not a modification of an
4  injunction). Given these Ninth Circuit holdings regarding the appointment of a special
5  master, the much more limited step of appointing a Rule 706 expert *a fortiori* cannot be a
6  modification of the Stipulation.[2]

### B. The Stipulation is Judicially Enforceable By Its Own Terms.

Defendants attempt to make hay about whether the document memorializing the parties' agreement is labeled a "consent decree" or "private settlement agreement." [Doc. 2067 at 9-10] Regardless of how the Stipulation is characterized, the Court has the power to appoint an expert. Defendants' argument ignores the simple fact that the plain language of the Stipulation makes clear that the parties intended for the Court to retain all equitable enforcement powers, with the two discrete exceptions in Paragraph 36. [*See supra* page 2 and Doc. 1185 ¶¶ 35-36] The parties agreed the Stipulation satisfied the requirements of 18 U.S.C. § 3626(a)(1)(A), (Doc. 1185 ¶ 36), the Court made the findings

---

[2] Defendants' argument also fails because they conflate two separate concepts. Issues of ***interpretation*** or ***enforcement*** of a settlement agreement or consent decree typically are subject to the traditional rules of contract interpretation, and the district court's authority can be constrained by the language of the agreement. *See Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821, 832 n.6 (4th Cir. 2005). However, a court's inherent power to ***modify*** a settlement agreement or consent decree cannot be circumscribed by the language of the agreement. *See Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 651 (1961) (observing the Supreme Court "has never departed from th[e] general rule" that a court always has the authority to modify a consent decree; "[t]he parties cannot by giving each other consideration, purchase from a court of equity a continuing injunction").

Defendants selectively quote from a recent Order to mischaracterize its holding to support their position that the "Court already recognized it cannot modify the Stipulation." [Doc. 2067 at 9, quoting Doc. 1910] Defendants fail to acknowledge the sentence prior to the one they quoted, in which the Court acknowledged that it "retained equitable authority to modify the Stipulation" but went on to say it "declines to do so here." [Doc. 1910 at 2] The plain language of the Order shows that the Court declined to exercise its power; it did not say that it lacked the ability to exercise its power. The judicious use of power is not equivalent to lacking power.

LEGAL135768907.1                             -3-

required by the Prison Litigation Reform Act ("PLRA"), (Doc. 1458 at 6), and the parties agreed the Court retained authority to enforce the agreement. [Doc. 1185 ¶¶ 35-36]

Therefore, by definition, the Stipulation is ***not*** a "private settlement agreement" under the PLRA. *See* 18 U.S.C. § 3626(c)(2)(A) (defining "[p]rivate settlement agreements" as agreements "not subject to court enforcement other than the reinstatement of the civil proceeding that the agreement settled") *and* § 3626(g)(1), (6) (defining a consent decree "any relief entered by the court that is based in whole or in part upon the consent or acquiescence of the parties but does not include private settlements," which are "not subject to judicial enforcement other than the reinstatement of the civil proceeding that the agreement settled"); *Kelly v. Wengler*, 822 F.3d 1085, 1095 (9th Cir. 2016) (class-action settlement between prisoners and the Idaho Department of Corrections included a "reference to § 3626(a)(1)(A) [that] thus evinces the parties' intention to make the settlement agreement enforceable in federal court"). The Ninth Circuit also articulated the distinction, and in a different case, applying a functional analysis of a stipulation, held it was not a consent decree because

> The court did not retain jurisdiction, as it could have done. Nor does the judgment require Arizona to report on compliance, request permission to make changes, or return to court for any purpose, as it also could have done. Unlike cases where a consent decree does put an injunctive scheme in place and the court retains jurisdiction to enforce it, here the judgment explicitly granted all the relief to which Taylor was entitled.

*Taylor v. United States*, 181 F.3d 1017, 1022-1023 (9th Cir. 1999). Here, the Court retained jurisdiction pursuant to the Stipulation, (Doc. 1185 ¶¶ 35-36), the Stipulation requires Defendants to report on compliance, (*id.* ¶¶ 8-10, 18-20), Defendants must request permission from the Court to make changes to the way they report compliance with the Settlement, (*id.* ¶¶ 9(b), 19(b)), and the parties may return to court for any purpose. [*Id.* ¶ 35]  The Stipulation also includes explicit reference to 18 U.S.C. § 3626(a)(1)(A). [Doc. 1185 ¶ 36]

### C. The Appointment of a Rule 706 Expert is an Exercise of the Court's Enforcement Power.

Rule 706 of the Federal Rules of Evidence provides the Court with the authority to appoint an expert on its own or from nominations submitted by the parties. Fed. R. Evid. 706(a) The Court is responsible for setting the parameters of the expert's duties, (*id*. 706(b)), with the additional limitation that a Rule 706 expert does not have the quasi-judicial powers of a Rule 53 special master. *Armstrong v. Brown*, 768 F.3d 975, 987 (9th Cir. 2014) ("We have never approved a Rule 706 expert to act in an adjudicative capacity. . ."); *accord, Benjamin v. Fraser*, 343 F.3d 35, 45 (2d Cir. 2003), *abrogated in part on other grounds by Caiozzo v. Koreman*, 581 F.3d 63, 70-72 (2d Cir. 2009) (Rule 706 expert does not have special master's power to "convene and to regulate hearings, to rule on the admissibility of evidence, to subpoena and swear witnesses, and to hold non-cooperating witnesses in contempt.").

Defendants mischaracterize the 2014 Ninth Circuit opinion in *Armstrong*, falsely asserting that the Ninth Circuit held "Rule 706 did not give the *Armstrong* court authority to appoint non-testifying experts in that instance." [Doc. 2067 at 10] That is not at all what the Ninth Circuit ruled—rather, it held that one portion of an enforcement order issued by the district court that gave the court's Rule 706 expert (who was appointed years prior to the enforcement order at issue) final authority to resolve disputes on a discrete topic "is beyond the scope of duties that may be assigned to a Rule 706 expert." *Armstrong v. Brown*, 768 F.3d 975, 987 (9th Cir. 2014). Thus, in accordance with prior decisions of the Ninth Circuit and other circuits, the Court of Appeal ruled that Rule 706 "specifically limited the expert to making recommendations subject to review by the district court." *Id*.[3] The Ninth Circuit, however, approved all of the district court's

---

[3] In fact, since the district court appointed its Rule 706 expert in 2007, (*Armstrong v. Schwarzenegger*, No. C 94-2307 CW, 2007 WL 1687776 (N.D. Cal. June 11, 2007)), the Ninth Circuit has reviewed three appeals of district court enforcement orders, and has never ruled the appointment of the expert improper. *Armstrong v. Schwarzenegger*, 622

enforcement order except for this one particular section of it, and instructed the district court to "craft an appropriate procedure under which a party dissatisfied with the expert's recommendations can obtain district court review of that recommendation." *Id*. at 988.[4]

Defendants' citation to a dissent to an *en banc* Ninth Circuit opinion offers no support for their position that the Court cannot appoint a Rule 706 expert. [Doc. 2067 at 10-11] "A dissent, of course, represents a losing position and is not binding precedent." *Burrus v. Soto*, No. 13cv1789–LAB (WVG), 2015 WL 366459, at *4 (S.D. Cal. Jan. 23, 2015). But in any event, the case is inapposite: the Ninth Circuit held it was not an abuse of discretion for the district court to use a technical advisor (who was *not* appointed pursuant to Rule 706) to assist the court in analyzing if a test that California public school teachers must pass in order to receive a teaching credential was properly validated and

---

F.3d 1058 (9th Cir. 2010); *Armstrong v. Brown*, 732 F.3d 955 (9th Cir. 2013); *Armstrong v. Brown*, *supra*, 768 F.3d at 975.

[4] In response to Plaintiffs' citation to *Armstrong v. Schwarzenegger*, No. C 94-2307 CW, 2007 WL 1687776 (N.D. Cal. June 11, 2007), in which the court appointed a Rule 706 expert post-judgment, (Doc. 2043 at 4), Defendants assert that "as Plaintiffs' counsel know, the parties in the *Armstrong* and *Perez* cases actually stipulated to the appointment of a Rule 706 expert to advise the court on compliance with the parties' agreements." [Doc. 2067 at 10] Defendants misrepresent the facts. Some of Plaintiffs' counsel in this matter also are counsel of record in *Armstrong*, which was brought on behalf of a class of California prisoners with physical disabilities. [Declaration of Donald Specter ("Specter Decl.") ¶ 2] In *Armstrong*, the district court appointed the Rule 706 expert, over defendants' objections, only after issuing an Order to Show Cause why it should not appoint a Rule 706 expert. [*Id*. ¶ 3, Ex. 1] Defendants opposed the appointment of a Rule 706 expert, stating they would only consent to a Rule 53 special master. [*Id*. ¶ 4, Ex. 2] The district court ruled it would appoint a Rule 706 expert, over defendants' objections, and ordered the parties to meet and confer to identify the individual. [*Id*. ¶ 5, Ex. 3] The parties were unable to agree upon an expert, and separately submitted names to the district court, and the court issued a final order six weeks later, selecting an expert to report to the court on a narrow range of issues. *Id*. ¶¶ 5-6; *Armstrong, supra*, 2007 WL 1687776.

Defendants also fail to properly present information to the Court. Notably, they do not attach any *Armstrong* briefing or orders, and they inexplicably attach the settlement agreement from *Perez v. Tilton*, No. C 05-05241 JSW, 2006 WL 2433240 (N.D. Cal. Aug. 21, 2006), in which the parties stipulated at the time of settlement to two court experts on correctional dental care to serve as monitors. [Doc. 2067, Ex. C] But Plaintiffs did not cite *Perez* anywhere in their brief as an example of a court appointing a Rule 706 expert post-judgment. Plaintiffs cited *Plata v. Schwarzenegger*, No. C01–1351 TEH, 2005 WL 2932253 (N.D. Cal. Oct. 3, 2005), to show where the court appointed an expert three years post-judgment, (Doc. 2043 at 5); but Defendants attached only the parties' settlement agreement from January 2002. [Doc. 2067, Ex. D]

1  scaled. *Ass'n of Mexican-American Educators ("AMAE") v. State of Calif.*, 231 F.3d 572,
2  590-591 (9th Cir. 2000). Defendants' citation to a First Circuit case also is not on point:
3  it held that "Rule 706, while intended to circumscribe a court's right to designate expert
4  witnesses, was not intended to subsume the judiciary's inherent power to appoint
5  technical advisors. The Civil Rules, after all, were never meant to become the sole
6  repository of all of a federal court's authority." *Reilly v. United States*, 863 F.2d 149, 156
7  (1st Cir. 1988) (citations omitted).

8  Defendants again raise speculative fears that a Rule 706 expert—or a "technical
9  advisor," a term they use interchangeably with "expert" although they are distinct roles,
10 (*see AMAE, supra*, 231 F.3d at 590-591; *Reilly, supra*, 863 F.2d at 156),—would usurp
11 the role of the Court. [Doc. 2067 at 11] Plaintiffs are confident the Court will strictly
12 adhere to the limits of Rule 706, and if Defendants believe those limits have been
13 exceeded, they have the right to ask the Ninth Circuit to review the decision. *See*
14 *Armstrong, supra*, 768 F.3d at 975.

15 **D.  Given the Plain Language of the Stipulation and the Court's Inherent Power, the Court Should Not Consider Self-Serving Extrinsic Evidence of What Defendants Thought or Intended at the Time of Settlement.**
16

17 Because the Stipulation's plain language states the Court retains all enforcement
18 powers except for two specific limitations, Defendants resort to extrinsic evidence.
19 Relying on declarations from Defendants Ryan and Pratt, they argue they would have
20 never entered into the Stipulation had they known that at some point in the future, the
21 Court might appoint a Rule 706 expert. [*See* Doc. 2067 at 8-9, 11-12; Ex. A ¶¶ 10, 12, 13;
22 Ex. B ¶¶ 11, 13, 14]

23 It is a fundamental principle of contract interpretation that if the language of a
24 contract is clear and unambiguous, the Court need not look beyond the contract to divine
25 the intent of the parties because the intent is clear from the face of the contract. *See Cent.*
26 *Ariz. Water Conservation Dist. v. United States*, 32 F. Supp. 2d 1117, 1127 (D. Ariz.
27 1998) ("A court should first look to the four corners of the contract to ascertain the intent
28 of the contracting parties. If the contract's language is clear and ambiguous on its face,

1  the intent of the parties is most readily ascertained from simply reading the contract").
2  Further, extrinsic evidence, including evidence "'of antecedent understandings and
3  negotiations,'" may not be used to contradict a contract's plain language. *Taylor v. State*
4  *Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1138 (Ariz. 1993) (*quoting* 3 Arthur L. Corbin,
5  Corbin on Contracts § 573, at 357 (1960)).

6        In order for contractual terms to be ambiguous, they must be "susceptible to two
7  different and reasonable interpretations, each of which is consistent with the language of
8  the contract as a whole." *Cent. Ariz. Water.,* 32 F. Supp. 2d at 1127-28.  The Stipulation's
9  plain language is neither ambiguous nor "reasonably susceptible" to Defendants' current
10 interpretation, and thus the Court should not consider the declarations submitted by
11 Defendants. *State Farm, supra*, 854 P.2d at 1140 (quotation marks and citation omitted)
12 (observing that evidence is admissible to determine parties' intent only if "the contract
13 language is 'reasonably susceptible' to the interpretation asserted by its proponent").

14       Even if the Court finds extrinsic evidence not categorically barred here,
15 Defendants' uncorroborated and self-serving *post hoc* statements do not clarify the
16 parties' intent at the time of settlement. *See Wilson Arlington Co. v. Prudential Ins. Co. of*
17 *Am.*, 912 F.2d 366, 370 (9th Cir. 1990) ("If parties to an agreement could not rely on
18 written words to express their consent to the express terms of that agreement, those words
19 would become little more than sideshows in a circus of self-serving declaration as to what
20 the parties to the agreement really had in mind."). Regardless of what **Defendants'** intent
21 or beliefs may have been during negotiations, the integrated written agreement is the final
22 manifestation of the **parties'** mutual intent.  The Court noted in adopting the Stipulation,
23 "No settlement is perfect.  A compromise of hotly contested issues will leave each side
24 wanting, receiving something less than their highest and best expectations." [Doc. 1458 at
25 2]  Because the parties' respective intents may shift during the "give-and-take" of
26 negotiation, it is the agreed-upon written terms that govern. *See Lane v. Facebook, Inc.*,
27 696 F.3d 811, 821 (9th Cir. 2012) ("As the 'offspring of compromise,' settlement
28

LEGAL135768907.1                                  -8-

1  agreements will necessarily reflect the interests of both parties to the settlement.")
2  (citation omitted).

### II. The Stipulation's Provisions Regarding Monitoring, and the Existence of ADC's Monitoring Bureau, Do Not Foreclose a Rule 706 Expert.

Defendants also argue that the Stipulation's provisions for internal and external monitoring, and the fact that ADC has a monitoring bureau, foreclose the Court from appointing a Rule 706 expert, because it would modify the Stipulation. [Doc. 2067 at 6-9] As explained above, the appointment of an expert does not modify the Stipulation. More fundamentally, the abject failure of Defendants' monitoring bureau is the precise reason for the need for an independent expert. [*See generally* Doc. 2046 (Plaintiffs' Statement Regarding Evidentiary Hearing on Monitoring)]  The appointment of an expert whose expertise is in auditing complex government systems would assist the Court in enforcing the terms of the settlement, and assist Defendants in effectuating their obligation to monitor pursuant to the Stipulation.[5]

Defendants again fall back on their position that the Stipulation does not explicitly authorize the Court to appoint anyone to oversee ADC's monitoring program, analyze their monitoring program, or advise the Court about it. [Doc. 2067 at 7]  Again, as discussed above, the Court has the authority to do so under paragraph 36 of the Stipulation

---

[5] Plaintiffs requested that the Court appoint an expert with qualifications that "would include experience as a correctional health care administrator with oversight of medical and mental health systems; knowledge and experience in random sampling methodology; and if possible, prior experience as an expert or monitor of correctional systems." [Doc. 2043 at 5]  Plaintiffs suggested that the expert's duties, in addition to those related to monitoring and methodology, include "undertaking or supervising an evaluation of the adequacy of clinical staffing to comply with the requirements of the Stipulation, […] evaluating the adequacy of Defendants' remedial plans, […] mediating any discovery disputes, and […] if requested by Magistrate Judge Bade, attending mediation sessions." [*Id.*]

Defendants fail to address these other proposed duties other than to assert their fear "there is a real danger that the experts or advisors would end up usurping the role of the Court." [Doc. 2067 at 11]  Unlike Defendants, Plaintiffs are confident that an expert will understand and respect the limitations of the role, and that the Court will continue to play an active and engaged role in the case, as it has consistently done. *See supra* page 7.

1  and its inherent power, and the appointment of a Rule 706 expert is fully within the
2  Court's power.

### III. Defendants' Noncompliance Is the Reason an Expert Is Needed and Accordingly, Defendants Should Pay All Expert Fees and Expenses.

Finally, Defendants argue that they should not have to pay the price of their own noncompliance, and that it should instead be borne by indigent prisoners and Plaintiffs' counsel out of the relatively small (and capped) amount of money Plaintiffs' counsel receives each year pursuant to its monitoring duties.[6]  [Doc. 2067 at 12-13]  This amount of money falls short of covering the fees and costs Plaintiffs' counsel has incurred in the past two years in its monitoring duties.  [Doc. 2043 at 7; Doc. 2044 ¶ 3; Doc. 2045 ¶ 8]  Furthermore, if the Court were to reduce the amount paid to Plaintiffs' counsel, this would be a modification of the Stipulation that does not pass the *Rufo* test.  [*See* Doc. 2043 at 8]

Defendants argue that "all" of the expert's tasks would be "tasks Plaintiffs' counsel are already paid to do under the Stipulation."  [Doc. 2067 at 13]  This simply is not true; Plaintiffs' counsel's post-judgment monitoring obligations pursuant to the Stipulation and Rules of Professional Conduct are distinct from the role of a neutral court expert who is advising the Court, has no authority to bring enforcement motions (despite Defendants' erroneous assertions that an expert does, *see* Doc. 2067 at 13), and has no duty to advocate on behalf of class members.  [*See* Doc. 2043 at 8-9]

Plaintiffs believe that the appointment of an expert would reduce the cost of litigation and enforcement in the long run, because one would hope that Defendants will become more compliant with the Stipulation, and thus the need to bring enforcement motions will diminish.[7]  Finally, case law supports the allocation of all of the cost of a

---

[6] Plaintiff Arizona Center for Disability Law has not received any of this monitoring money paid by Defendants; and has funded all of its monitoring duties from its own limited budget.  [*See* Doc. 2045 ¶ 9]

[7] While Defendants appear to lay blame on Plaintiffs for filing multiple notices of noncompliance and bringing disputes before the Court, they fail to acknowledge that none

Rule 706 expert to Defendants. Ninth Circuit precedent holds that it is fully appropriate for a district court to allocate all costs of a Rule 706 expert to the state when one of the parties is an indigent prisoner. *McKinney v. Anderson*, 924 F.2d 1500, 1511 (9th Cir. 1991), *cert. granted, judgment vacated on other grounds sub nom. Heiling v. McKinney*, 502 U.S. 903 (1991), and *judgment reinstated*, 959 F.2d 853 (9th Cir. 1992) ("Otherwise, we are faced with an inflexible rule that would prevent the district court from appointing an expert witness whenever one of the parties in an action is indigent, even when the expert would significantly help the court."). Other district courts in the Ninth Circuit, mindful of *McKinney*, have similarly done so. [Specter Decl. ¶ 6]; *Armstrong v. Schwarzenegger*, No. 13cv1789–LAB (WVG), 2007 WL 1687776 (N.D. Cal. June 11, 2007).

Defendants offer no legal or factual basis for the Court to deviate from the Ninth Circuit's *McKinney* analysis, other than offering an article from the Manhattan Institute that criticizes prison reform litigation and Plaintiffs' counsel. [Doc. 2067 at 14] Defendants notably offer no explanation whatsoever as to why the cost of a Rule 706 expert cannot come from the $3.3 million budgeted by the State for the Corizon contract, that Corizon has forfeited to ADC due to Corizon's failure to comply with their contractual obligations. [4/17/17 Tr. at 640:2-4; 5/10/17 Tr. at 757:18-20] It certainly is both the most logical and equitable source of funds to pay an expert in this matter.

## CONCLUSION

For the reasons stated above and in Plaintiffs' opening statement, the Court should not appoint a special master, but should instead appoint an expert under Rule 706 of the Federal Rules of Evidence, and require Defendants to pay all expert fees and expenses. Further, the Court should order that the parties meet and confer to determine if they can agree on an individual to be appointed as a court expert, and if the parties cannot agree,

---

of the notices or enforcement motions would have been necessary if Defendants actually had complied with the Stipulation.

1  each party provide the Court with a list of no more than three candidates, and their
2  qualifications, within 30 days of the order.
3  　　　Respectfully submitted,
4  Dated:  June 2, 2017                                    **PRISON LAW OFFICE**

　　　　　　　　　　　　　　　　　　By: _s/ Corene Kendrick_
　　　　　　　　　　　　　　　　　　　　Donald Specter (Cal. 83925)*
　　　　　　　　　　　　　　　　　　　　Alison Hardy (Cal. 135966)*
　　　　　　　　　　　　　　　　　　　　Sara Norman (Cal. 189536)*
　　　　　　　　　　　　　　　　　　　　Corene Kendrick (Cal. 226642)*
　　　　　　　　　　　　　　　　　　　　Rita K. Lomio (Cal. 254501)*
　　　　　　　　　　　　　　　　　　　　**PRISON LAW OFFICE**
　　　　　　　　　　　　　　　　　　　　1917 Fifth Street
　　　　　　　　　　　　　　　　　　　　Berkeley, California 94710
　　　　　　　　　　　　　　　　　　　　Telephone:  (510) 280-2621
　　　　　　　　　　　　　　　　　　　　Email:　dspecter@prisonlaw.com
　　　　　　　　　　　　　　　　　　　　　　　　ahardy@prisonlaw.com
　　　　　　　　　　　　　　　　　　　　　　　　snorman@prisonlaw.com
　　　　　　　　　　　　　　　　　　　　　　　　ckendrick@prisonlaw.com
　　　　　　　　　　　　　　　　　　　　　　　　rlomio@prisonlaw.com

　　　　　　　　　　　　　　　　　　*Admitted *pro hac vice*

　　　　　　　　　　　　　　　　　　David C. Fathi (Wash. 24893)*
　　　　　　　　　　　　　　　　　　Amy Fettig (D.C. 484883)**
　　　　　　　　　　　　　　　　　　Jamelia N. Morgan (N.Y. 5351176)**
　　　　　　　　　　　　　　　　　　Victoria Lopez (Ill. 6275388)*
　　　　　　　　　　　　　　　　　　**ACLU NATIONAL PRISON PROJECT**
　　　　　　　　　　　　　　　　　　915 15th Street N.W., 7th Floor
　　　　　　　　　　　　　　　　　　Washington, D.C. 20005
　　　　　　　　　　　　　　　　　　Telephone:  (202) 548-6603
　　　　　　　　　　　　　　　　　　Email:　dfathi@aclu.org
　　　　　　　　　　　　　　　　　　　　　　afettig@aclu.org
　　　　　　　　　　　　　　　　　　　　　　jmorgan@aclu.org
　　　　　　　　　　　　　　　　　　　　　　vlopez@aclu.org

　　　　　　　　　　　　　　　　　　*Admitted *pro hac vice*.  Not admitted
　　　　　　　　　　　　　　　　　　　in DC; practice limited to federal
　　　　　　　　　　　　　　　　　　　courts.
　　　　　　　　　　　　　　　　　　**Admitted *pro hac vice*

　　　　　　　　　　　　　　　　　　Kirstin T. Eidenbach (Bar No. 027341)
　　　　　　　　　　　　　　　　　　**EIDENBACH LAW, PLLC**
　　　　　　　　　　　　　　　　　　P. O. Box 91398
　　　　　　　　　　　　　　　　　　Tucson, Arizona 85752
　　　　　　　　　　　　　　　　　　Telephone:  (520) 477-1475
　　　　　　　　　　　　　　　　　　Email:　kirstin@eidenbachlaw.com

| | |
|---|---|
| 1 | Kathleen E. Brody (Bar No. 026331) |
| | **ACLU FOUNDATION OF** |
| 2 | **ARIZONA** |
| | 3707 North 7th Street, Suite 235 |
| 3 | Phoenix, Arizona 85013 |
| | Telephone: (602) 650-1854 |
| 4 | Email:   kbrody@acluaz.org |
| 5 | Daniel C. Barr (Bar No. 010149) |
| | Amelia M. Gerlicher (Bar No. 023966) |
| 6 | John H. Gray (Bar No. 028107) |
| | **PERKINS COIE LLP** |
| 7 | 2901 N. Central Avenue, Suite 2000 |
| | Phoenix, Arizona 85012 |
| 8 | Telephone: (602) 351-8000 |
| | Email:   dbarr@perkinscoie.com |
| 9 |             agerlicher@perkinscoie.com |
| |             jhgray@perkinscoie.com |
| 10 | |
| | Caroline Mitchell (Cal. 143124)* |
| 11 | **JONES DAY** |
| | 555 California Street, 26th Floor |
| 12 | San Francisco, California 94104 |
| | Telephone: (415) 875-5712 |
| 13 | Email:   cnmitchell@jonesday.com |
| 14 | *Admitted *pro hac vice* |
| 15 | John Laurens Wilkes (Tex. 24053548)* |
| | **JONES DAY** |
| 16 | 717 Texas Street |
| | Houston, Texas 77002 |
| 17 | Telephone: (832) 239-3939 |
| | Email:   jlwilkes@jonesday.com |
| 18 | |
| | *Admitted *pro hac vice* |
| 19 | |
| | *Attorneys for Plaintiffs Shawn Jensen;* |
| 20 | *Stephen Swartz; Sonia Rodriguez; Christina* |
| | *Verduzco; Jackie Thomas; Jeremy Smith;* |
| 21 | *Robert Gamez; Maryanne Chisholm;* |
| | *Desiree Licci; Joseph Hefner; Joshua* |
| 22 | *Polson; and Charlotte Wells, on behalf of* |
| | *themselves and all others similarly situated* |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

**ARIZONA CENTER FOR DISABILITY LAW**

By: *s/ Maya Abela*
    Sarah Kader (Bar No. 027147)
    Asim Dietrich (Bar No. 027927)
    5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
    Telephone: (602) 274-6287
    Email:   skader@azdisabilitylaw.org
             adietrich@azdisabilitylaw.org

    Rose A. Daly-Rooney (Bar No. 015690)
    J.J. Rico (Bar No. 021292)
    Jessica Jansepar Ross (Bar No. 030553)
    Maya Abela (Bar No. 027232)
    **ARIZONA CENTER FOR DISABILITY LAW**
    177 North Church Avenue, Suite 800
    Tucson, Arizona 85701
    Telephone: (520) 327-9547
    Email:
       rdalyrooney@azdisabilitylaw.org
       jrico@azdisabilitylaw.org
       jross@azdisabilitylaw.org
       mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2017, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
Kevin R. Hanger
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
khanger@swlfirm.com

*Attorneys for Defendants*

                                                                                   s/ D. Freouf