# Exhibit 1



**PRISON LAW OFFICE**
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

May 30, 2017

Mr. Timothy Bojanowski
Struck Wieneke & Love
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@swlfirm.com

> RE:  *Parsons v. Ryan*
> Court's Instructions Re: Corizon Policy of Requiring Two Nurses' Line Visits
> Prior to a Provider Referral (PM 39)

Dear Mr. Bojanowski,

During the May 10, 2017 hearing, Mr. Pratt was asked by the Court and me about the possibility that Corizon had implemented a policy whereby prisoners had to be seen two times on nurse's line before they were referred to the provider, as part of their Corrective Action Plan for noncompliance with PM 39 at Perryville.  *See* ADCM722788-89 (enclosed, with relevant language highlighted yellow).  As you can see, this CAP is listed as being approved on October 29, 2016, which would appear to contradict Mr. Pratt's testimony that this Corizon policy ended over a year ago.  5/10/17 Tr. at 738:20.

Judge Duncan instructed you, "So the question is: When did the policy start that you had to be seen by two nurses before you could take the next step and when did it end?"  5/10/17 Tr. at 749:9-11.  He also said, "Mr. Bojanowski, what we'll do is we'll have you all let us know when this policy started, when it was put in place and when it ended.  [… and] [i]f it's been revived."  *Id*. at 750:8-12.  You responded, "I'm clear as to what the Court is requesting and we'll provide supplemental information per your direction."  Id. at 750:23-25.

On May 24, 2017 Defendants filed several updates to the Court and Plaintiffs' counsel in response to Judge Duncan's requests for information and instructions at the hearing.  However, Defendants did not file an answer to these questions about when Corizon had the policy in place at the prisons.

We request that you immediately file this information with the Court in a sworn declaration, with all necessary documentary evidence showing the dates that the policy was in place, and the dates when health care staff at all ten institutions were notified that the policy

Mr. Timothy Bojanowski
RE: Two Nurses' Line Visits (PM 39)
May 30, 2017
Page 2

was no longer in place. If Defendants do not file this information by close of business May 31, 2017, we will notify the Court of your failure to do so.

Thank you for your attention to this matter.

Sincerely,

Corene Kendrick

cc:     Counsel of Record

**CGAR CAPS – SUBMITTED IN OCTOBER 2016**
**PERRYVILLE COMPLEX**

| Measure | Outcome Desc | Am | Red | Level | # Compliance | # Review | % Compliance | Date of CGAR Notifications Entry | Corrective Action Plan | Corrective Actions | Status | Submitted Date | Approved Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | Time-frame of monitoring the corrective action: 30 days.  A 30 day development, implementation and validation will occur.<br><br>Date CAP submitted to ADC Monitor: 10/27/16 | | | | |
| Access to Care (C) | PM #39 Are routine provider referrals being addressed by a medical provider and referrals requiring a scheduled provider appointment being seen within fourteen (14) calendar days of the referral? | | X | 2 | 21 | 63 | 33.33 | 8/31/2016 8:51 AM Entered By: Mark Haldane  Number Compliance: 21; Number Review: 63;  Percent Compliance: 33.33 % | Identified Problem: Are routine provider referrals being addressed by a medical provider and referrals requiring a scheduled provider appointment being seen within fourteen (14) calendar days of the referral?<br><br>Process Improvement Proposed Why–discuss the issue impacting care: There has been a high demand for provider appointments and the providers are not completing their lines.<br><br>What–discuss the actual elements of the process improvement: Provider appointments have increased and it's been difficult for the providers to complete their lines. Nurses have been reminded that an inmate needs to be seen on the nurse line two times before being referred to a provider to ensure that all treatment plans that nursing can provide/explore are exhausted before sending the inmate to the provider.<br><br>Responsible party(ies) for process implementation: DON, Providers and Charge Nurses<br><br>Expected time of implementation: Already implemented<br><br>Expected date of full compliance: 10/31/16<br><br>Monitoring process to ensure CAP's effectiveness: The charge Nurses are the Gate keepers.  They review the pending orders daily and determine if the inmate needs to be seen on provider line or nurse line.  Corizon Compliance monitor will conduct 30 day post implementation review to | Will continue to audit this measure monthly. | Corrective Actions Plan Completed | Romy Franklin | 10/29/2016 |

8

**CGAR CAPS – SUBMITTED IN OCTOBER 2016**
**PERRYVILLE COMPLEX**

| Measure | Outcome Desc | Am | Red | Level | # Compliance | # Review | % Compliance | Date of CGAR Notifications Entry | Corrective Action Plan | Corrective Actions | Status | Submitted Date | Approved Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | ensure measure is in place.<br><br>Time-frame of monitoring process:<br>30 days. A 30 day development, implementation and validation will occur.<br><br>Date CAP submitted to ADC Monitor:<br>10/26/16 | | | | |
| Infirmary Care (C) | PM #65 Is a written history and physical examination being completed by a medical provider of IPC inmates within 72 hours of admission? | X | | 1 | 2 | 3 | 66.67 | 8/26/2016 12:09 PM Entered By: Becky Briddle  Number Compliance: 2; Number Review: 3; Percent Compliance: 66.67 % | Process Improvement Proposed<br><br>What-discuss the actual elements of the process improvement:<br>Nurses will review IPC patients daily to determine which need to be seen, and will provide the prioritized list to assigned Provider and/or their CNA.  Nurses will ensure the patients that are at a 48 hour window are seen first by the Providers.  Providers will ensure they are allowing themselves sufficient time to perform rounds in addition to other duties as assigned<br><br>Who-discuss the process improvement lead(s) for development and implementation:<br>SMD/site provider<br><br><br>Responsible party(ies) for process implementation:<br>SMD/DON<br><br>Expected time of implementation:<br>Immediately<br><br>Monitoring process to ensure CAP's effectiveness:<br>Corizon Compliance monitor will conduct 30 day post implementation review to ensure measure is in place.<br><br>Time-frame of monitoring process:<br>30 day process of development, implementation, and validation will occur<br><br>Date CAP submitted to ADC Monitor:<br>10/31/16 | Will continue to audit this measure monthly. | Corrective Actions Plan Completed | Romy Franklin | 11/16/2016 |

9

CONFIDENTIAL - SUBJECT TO A PROTECTIVE ORDER

PARSONS v. RYAN, USDC CV12-00601: ADCM722789

**Corene Kendrick**

---

| | |
|---|---|
| **From:** | Anne Orcutt |
| **Sent:** | Thursday, June 01, 2017 2:15 PM |
| **To:** | Corene Kendrick; Tim Bojanowski; Rachel Love; Dan Struck; Ashlee Fletcher; Elaine Percevecz; Lucy Rand; Michael E. Gottfried; Ybarra, Griselda; Brad Keogh |
| **Cc:** | Don Specter; Alison Hardy; Rita Lomio; Sarah Hopkins; Kirstin Eidenbach; David Fathi; Amy Fettig; Victoria Lopez; jonka@aclu.org; Maya Abela; Kathy Brody |
| **Subject:** | RE: Parsons: Court's Instructions Re: "Two Visits to Nurse's Line" Policy |

Corene,

We are preparing a Declaration on this issue and will send it to you early next week.

Thank you,
Anne



**Anne Orcutt**
**Attorney**

## STRUCK WIENEKE & LOVE, PLC

3100 W. Ray Road | Suite 300
Chandler, AZ 85226

P: (480) 420-1635 | aorcutt@swlfirm.com | www.swlfirm.com

---

**From:** Corene Kendrick [mailto:ckendrick@prisonlaw.com]
**Sent:** Tuesday, May 30, 2017 3:46 PM
**To:** Tim Bojanowski; Anne Orcutt; Rachel Love; Dan Struck; Ashlee Fletcher; Elaine Percevecz; Lucy Rand; Michael E. Gottfried; Ybarra, Griselda; Brad Keogh
**Cc:** Don Specter; Alison Hardy; Rita Lomio; Sarah Hopkins; Kirstin Eidenbach; David Fathi; Amy Fettig; Victoria Lopez; jonka@aclu.org; Maya Abela; Kathy Brody
**Subject:** Parsons: Court's Instructions Re: "Two Visits to Nurse's Line" Policy

Dear Tim,

Please see the attached correspondence regarding the Court's instruction to you to provide more information about when Corizon implemented a policy requiring patients be seen at least two times on nurse's lines before they can be referred to a provider.

Thank you,

Corene

Corene Kendrick, Staff Attorney
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, CA 94710

510.280.2621
ckendrick@prisonlaw.com

---

This electronic mail transmission contains information from the law firm Struck Wieneke & Love, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 420-1600. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

---

**Corene Kendrick**

| | |
|---|---|
| **From:** | Corene Kendrick |
| **Sent:** | Wednesday, June 07, 2017 3:36 PM |
| **To:** | 'Anne Orcutt' |
| **Cc:** | 'Tim Bojanowski'; 'Dan Struck'; 'Elaine Percevecz'; 'Maya Abela' |
| **Subject:** | RE: Parsons - Extension for Defendants' Notice re Nurses' Line Policy |

Hi Anne,

Yes, that's okay with me. Adding Maya/ACDL.

Thanks,

Corene

Corene Kendrick, Staff Attorney
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, CA 94710
510.280.2621
ckendrick@prisonlaw.com

**From:** Anne Orcutt [mailto:AOrcutt@swlfirm.com]
**Sent:** Wednesday, June 07, 2017 2:05 PM
**To:** ckendrick@prisonlaw.com
**Cc:** Tim Bojanowski; Dan Struck; Elaine Percevecz
**Subject:** Parsons - Extension for Defendants' Notice re Nurses' Line Policy

Corene,

We are still working on getting signed Declarations to file with our Notice regarding the issue of the CAP at Perryville stating that inmates must be seen twice on nurses' line before being referred to a provider. We would like an extension until Friday to file the Notice and Declarations, although if we are able we will file them tomorrow.

Thanks,
Anne



**Anne Orcutt**
**Attorney**

## STRUCK WIENEKE & LOVE, PLC

3100 W. Ray Road | Suite 300
Chandler, AZ 85226

P: (480) 420-1635 | aorcutt@swlfirm.com | www.swlfirm.com

This electronic mail transmission contains information from the law firm Struck Wieneke & Love, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 420-1600. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

# Exhibit 2



STRUCK WIENEKE & LOVE

3100 West Ray Road, Suite 300, Chandler, Arizona 85226 | **480.420.1600** | swlfirm.com

May 15, 2017

Daniel P. Struck
Partner

Kathleen L. Wieneke
Partner

Rachel Love
Partner

Timothy J. Bojanowski
Partner

Christina Retts
Partner

Nicholas D. Acedo
Partner

Tara B. Zoellner
Associate

Ashlee B. Fletcher
Associate

Anne M. Orcutt
Associate

Kevin L. Nguyen
Associate

Jacob B. Lee
Associate

Kevin R. Hanger
Associate

**_VIA EMAIL ONLY_**
Corene Kendrick
Staff Attorney
PRISON LAW OFFICE
General Delivery
San Quentin, CA  94964

     **RE:**   *Parsons v. Ryan* – HNR Boxes

Dear Corene:

     As part of the Open Clinic Concept, enclosed please find Inmate Notification No. 17-10 that has been provided to all ADC inmates regarding the discontinuation of health needs request (HNR) boxes for processing general HNRs for minimum and medium custody units, effective June 12, 2017.  Following the removal of the HNR boxes, inmates seeking medical treatment in these units must report to the health unit with a completed HNR.  Inmates seeking medication renewals may complete an HNR and place the HNR in the medication refill box which will be located outside the health unit building.  If you have any questions regarding this change, please feel free to contact me.

     Regards,

Timothy J. Bojanowski

TJB/eap
Enclosure: As stated

cc:   All counsel of record

|  | **ARIZONA DEPARTMENT OF CORRECTIONS**<br><br>**INMATE NOTIFICATION** | **Notification Number:**<br><br>**17-10** |
|---|---|---|
| | | **Issue Date:**<br><br>**05/10/2017** |

## *POSTING NOTIFICATION*

This information is to be posted for **a minimum of 30** days in areas accessible to inmates and shall be made available to inmates who do not have access to posted copies.

## TO ALL INMATES

### Discontinued Use of Health Needs Request (HNR) Boxes for ADC Minimum and Medium Units

Effective June 12, 2017, ADC will no longer utilize the HNR Box in processing general health needs requests for Minimum and Medium State operated units.  Following the removal of the HNR boxes from these areas, inmates seeking medical attention must report to the Health Unit with a completed HNR where they shall wait to be seen by a daily nurse's line.

Inmates with medication renewals shall complete their HNR medication refill request, drop it into the Medication Refill Box located outside the medical building.

Close and Maximum custody units are not affected by this operational change.

Charles L. Ryan
Directorp



**PRISON LAW OFFICE**
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

May 17, 2017

VIA EMAIL ONLY

Mr. Timothy Bojanowski
Struck Wieneke & Love
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@swlfirm.com

> RE:   *Parsons v. Ryan*, HNR boxes

Dear Tim,

Thank you for notifying me that ADC plans to remove HNR boxes on all minimum and medium security yards as of June 12, 2017.  We would like to discuss this plan with you as soon as possible.  We are concerned about the impact of the removal of the boxes for multiple reasons, and the reasons why Defendants are putting up a barrier for class members to access health care.

First, Defendants' own documents show that there have been problems with this "open clinic" system, especially for people who are not able to get to Nurse's Line during the timeframes that the units are staffed.  *See, e.g.*, ADCM840332 – Yuma February 2017 CQI minutes, ("MHRN Hedglin expressed that at Cheyenne there are concerns that patients are not being notified that their building is being called to medical for the open sick call. They are arriving to medical later in the day stating they never heard the call for the building.") and (patients who are going off site on work crew from Cocopah are not able to be seen or submit HNRs); ADCM840277 – Lewis February 2017 CQI Minutes at p. 2 ("We have identified an issue with appointments making it on the master pass" at Eagle Point and Sunrise; Bachman Unit having to schedule nurse's line in the early morning and early evenings); ADCM839977 – Lewis Jan. CQI minutes at p. 21 ("Open sick call has caused some issues with this process" developed as a Corrective Action Plan for PM 47).  During our tour of the Lewis prison in January, health care staff on-site also reported that the open clinics were not being done 7-7, and that prisoners who could not come to the clinic during the hours a nurse was there would instead submit their HNR in the box, and be scheduled for the next day.

Second, it is unclear what would happen if the person is too sick to get to the clinic, or if the housing units are locked down.  It is impractical to assume that custody staff will call an emergency ICS if someone is only sick, or that nursing staff would be able to come out to the housing unit each time.

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

Third, this plan disregards the fact that due to vacancies in nursing staff, open clinic may not be occurring during times that prisoners can access the clinics.  As one class member at ASPC-Eyman reported to the Court in March 2017:  "We do not have regular RN's or a Provider and are always short on medical staff.  Many days no HNR triage is being done, RN's are in training or transferred to another unit for the day."  Letter from Jonathan Ploof to Judge Duncan, at 3 [Doc. 2014] (Mar. 15, 2017).

Corizon's most recent staffing report also documents shortages of nursing staff.  *See, e.g.* Doc. 2061 at 82 [ADCM851875] (March 2017 statewide staffing report showing that statewide 89% of contracted RN positions and 93% of contracted LPN positions are filled); *id*. at 84 [ADCM841877] (84% of RN positions, 73% of LPN, 80% of Nursing Assistant positions at Eyman are filled); *id*. at 86 [ADCM841879] (82% of RN positions at Lewis are filled); *id*. at 87 [ADCM851880] (82% of RN positions at Perryville are filled); *id*. at 88 [ADCM851881] (87% of RN positions, 71% of LPN positions, and 50% of Nursing Assistant positions at Phoenix are filled); *id*. at 89 [ADCM851882] (33% of Nursing Assistant positions at Safford are filled); *id*. at 90 [ADCM851883] (73% of RN positions at Tucson are filled); *id*. at 91 [ADCM851884] (0% [0 out of 5.2 contracted] LPN positions at Winslow are filled); *id*. at 92 [ADCM851885] (77% of LPN positions at Yuma are filled).

We would like to discuss Defendants' plans further with you. We propose discussing this in the coming days when the parties have a phone call regarding the March 2017 Notice of Noncompliance.

Sincerely yours,

*/s/ Corene Kendrick*

Corene Kendrick

cc:     Counsel of record

| Topic | Discussion (brief recap of discussion, who stated what) | Individual Responsible (name(s) mandatory) | Due Date (date mandatory) |
|---|---|---|---|
| 1. Call to Order<br>a. Acknowledgement of Guests | Teleconference: Dr. Gray; Donna James | Barnett | |
| b. Review/Approval of previous minutes | Approval of January meeting minutes December Audit took place on: January 18, 2017 | Thomas | Monthly |
| 2.. Topics – *Multidisciplinary*<br>a. CQI follow-up from Medical Administrative Committee (MAC) meeting | **Sick Call Statistics**<br>• Grid showing sick call pattern for January<br>• Eagle Point and red lining inmates for appointments<br>Discussed that the original plan was that EP and SR were not on open call and would function the same as Rast Max. Therefore, scheduling he Inmates to have them red lined so that they are held back from work will continue to be the plan.<br>Discussed the nurse processing of HNR's from EP/SR<br>Nurse is picking the HNR's up at 12:30-1p and processing the HNR's. She is scheduling the inmates to be red lined the following day in eOMIS. We have identified an issue with appointments making it on the master pass. Therefore, the Warden would like for the nurse to notify the following individuals with the scheduling information for this working yard prior to 2 pm.<br>Kimble, Gaff, Chavez, Trujillo<br>This information will be communicated to the nurse upon her arrival this day.<br><br>• PPD Blitz to take place<br>• Accountability is the Wardens concern along with the total numbers of sharps<br>• Scheduling Sunrise and EP as well as Bachman will have to take place early morning or late evening<br>• Informed the Warden that I do not have any detail regarding the blitz but will communicate it as soon as I get it. | Thomas | Monthly |

PRIVILEGED AND CONFIDENTIAL QUALITY IMPROVEMENT INFORMATION

2

**CONFIDENTIAL - SUBJECT TO A PROTECTIVE ORDER**                    **PARSONS v. RYAN, USDC CV12-00601: ADCM840277**

# CORIZON
### HEALTH
## MONTHLY CQI COMMITTEE REPORT
### Complex: Arizona State Prison Complex- Yuma

| | | | |
|---|---|---|---|
| **1. Call to Order**<br>a. Acknowledgement of Guests | Meeting called to order at 0937 by AFHA Turpening. | | |
| b. Review/Approval of previous minutes | AFHA Turpening advised that the minutes from January 18th 2016 meeting were reviewed and approved by SMD Barcklay. | | |
| **2.. Topics - *Multidisciplinary***<br>a. CQI follow-up from Medical Administrative Committee (MAC) meeting | AFHA Turpening stated that staffing continues to approve for all departments complex wide.  The current vacancies are:<br>Dental Director- 1,  ADON- 1, LPN- 1.6, Clinical Coordinator- 1, Dentist- .25, Dental Hygienist- .25, Dental Assistant- 1, Mental Health Associate- .4, Psych Tech- .2<br><br>AFHA Turpening stated that all nursing sick call patients continue to be seen on a daily basis.<br>MHRN Hedglin expressed that at Cheyenne there are concerns that patients are not being notified that their building is being called to medical for the open sick call.  They are arriving to medical later in the day stating they never heard the call for their building.<br>AFHA Turpening advised that the issue would be addressed with the unit ADON, and unit DOC administration.<br>ADON Stoddard stated that there were no issues to report at Dakota and the sick call is typically completed prior to 1600.<br>SMD Barcklay stated that there are still issues with nurses documenting on HNR and in free text in EMR that they would like to refer a patient to provider review, but then checking the provider referral box in EMR.<br>AFHA Turpening stated that this issue would be readdressed with nursing staff meeting next week.<br>SMD Barcklay stated that there is an issue with patients on Cocopah being sent out on off complex work crews, but have submitted an HNR to be seen. | | |

| Topic | Discussion (brief recap of discussion, who stated what) | Individual Responsible (name(s) mandatory) | Due Date (date mandatory) |
|---|---|---|---|
| | AFHA Turpening stated the issue would be addressed with the unit deputy warden to find a resolution that works for both parties. AFHA Turpening stated that during the weekly warden's meeting prior to the CQI meeting there was clarification on how the open sick call should run. Each building is called individually and has a chance to report to medical to be seen on open sick call. Once that building has been seen, and given time to report, the next building will be called. Once all buildings have been called and afforded the opportunity to report to medical, the open sick call will end. As always, and emergent, urgent, or ICS patients will continue to be seen 24/7. | | |
| b. Grievances | AFHA Turpening stated there were eight grievances completed for the month of January. Three were from the same patient. Patient 182182 was skipping the HNR, inmate letter, and informal process and submitting grievances for medication refills. He continues to be advised to use the HNR process and that some of the requested items can be purchased at Keefe. His case was also discussed at the January meeting. One grievance was in regards to requesting treatment for hepatitis C and a diet. One was in regards to outside consultation information and three were in regards to medication. None of the above required corrective action and an explanation was sent to the patient. There is one grievance that a copy was received, but the original was not received by the end of January. Site admin has been advised by the DOC Central Office that grievances are not to be responded to until the original copy is received by Corizon admin staff. There continues to be issues with this process and the Cheyenne yard. | | |

PRIVILEGED AND CONFIDENTIAL QUALITY IMPROVEMENT INFORMATION

CONFIDENTIAL - SUBJECT TO A PROTECTIVE ORDER

PARSONS v. RYAN, USDC CV12-00601: ADCM840333

| Topic | Discussion (brief recap of discussion, who stated what) | | | | Individual Responsible (name(s) mandatory) | Due Date (date mandatory) |
|---|---|---|---|---|---|---|
| | | | | post section 4 being completed. (Scanning) | | |
| | 16423 | 35-For intersystem transfers (complex to complex), are all inmate medications (KOP and DOT) transferred with and provided to the inmate or otherwise provided at the receiving prison without interruption? | 31.82% | 1. Access to movement sheets have been requested for Nursing management and medication room. If the inmate arrives without medications from another facility the IC will obtain an order from the provider to go to the offsite pharmacy to obtain the medication and Nurse administer. Access to 24hour Pharmacy | | |
| | 16422 | 37-Is the inmate being seen on sick call by an RN within 24 hours after the HNR is received (or immediately if identified with an emergent need, or the same day if identified as having an urgent need)? | 52.00% | 1. Currently Lewis  has a lack of RN coverage to conduct nurse sick call. (2) LPN's have been assigned to do sick call on two different yards. Lines nurses have been educated to the Open sick call process and will see all inmates walk-in and HNR same day as necessary.  HUB nurses will act as back up as necessary. | | |
| | 16417 | 47-Are Medical Providers communicating the results of the diagnostic studies to the inmate upon request and within seven (7) calendar days of the date of the request? | 78.43% | Continue Current Cap 1. Open sick call has caused some issues with this process. The provider will be notified by the sick call nurse via chart review to review diagnostics and complete a communique within 7 business days of the request. 2. Nursing management meeting 1.10.2017 Provided direction to nurse management to direct line staff. Send to provider as a review apt. from Nurse Line | | |

CONFIDENTIAL - SUBJECT TO A PROTECTIVE ORDER

PARSONS v. RYAN, USDC CV12-00601: ADCM839977

Exhibit 3



**PRISON LAW OFFICE**

General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

May 1, 2017

Ms. Anne Orcutt
Struck, Wieneke & Love PLC
3100 West Ray Rd., Ste. 300
Chandler, AZ 85226
aorcutt@swlfirm.com

    RE: *Parsons v. Ryan*
       March 7, 2017 Version of the Monitoring Guide

Dear Anne,

  Thank you for providing us with the March 7, 2017 version of the Monitoring Guide in track-changes to PMs 46, 52, and 61. We accept the proposed language for PMs 46 and 52.

  With regard to PM 61, I have a few questions regarding the language you added to comport with the instructions of Judge Duncan at the January 26, 2017 hearing and in his subsequent Minute Order (Doc. 1915). At the hearing, he said:

> [W]hat I'm going to do is require that the performance manual say that it be, within the yard, that it be at least three years prior to the monitored month. And then I'm going to impose the language that I have proposed, and that is: In eOMIS, check whether there is documentation that the inmate was personally advised that she may have a pap smear every 36 months and that this occurred within 90 days of the 36-month anniversary.

1/26/17 Tr. at 68:14-21. Judge Wake's order stated:

> IT IS ORDERED the manual shall be updated to include language that inmates are to be advised 90 days prior to the three-year anniversary that a pap smear is available. IT IS FURTHER ORDERED that [an eOMIS] check is done to determine whether there is documentation that the inmate was personally advised that she may have a pap smear every 36 months and that this occurred within 90 days of the 36-month anniversary.

Doc. 1915 at 2.

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

Ms. Anne Orcutt
RE: Parsons v. Ryan
May 1, 2017
RE: 3/7/17 Version of Monitoring Guide
Page 2

Defendants' proposed language for this section of the Monitoring Guide is as follows, with your suggested new language highlighted yellow:

- In eOMIS, check whether a memorandum personally advising the inmate that she is able to receive a Pap smear every three years, if medically appropriate, is scanned into the inmate's record.  If the memorandum is dated at least 90 days prior to the 36-month anniversary of the effective date of the Stipulation (February 15, 2015), the record is compliant.  Thereafter, the record is compliant if there is a subsequent memorandum personally advising the inmate that she is able to receive a Pap smear every three years, if medically appropriate, that is dated no more than 90 days prior to the 36-month anniversary of the inmate receiving the first memorandum.

Our questions are as follows:

1. Why does the first sentence of the highlighted passage refer to the memorandum being dated "*at least* 90 days prior" to the 36-month anniversary? The Court's order and oral instruction referred to the notification occurring "*within* 90 days of the 36 month anniversary."

2. The 36 month anniversary to which the Court repeatedly referred was the three years since the prisoner's prior Pap smear (or intake), and not the date of the Stipulation.  Defendants previously took (and then abandoned) the position that they did not have to monitor this performance measure for the first three years of the Stipulation, and your proposed language would do exactly that.

We propose that the language be as follows:

- In eOMIS, check whether a memorandum personally advising the inmate that she is able to receive a Pap smear every three years, if medically appropriate, is scanned into the inmate's record.  If the memorandum is dated within 90 days prior to the 36-month anniversary of her last Pap smear, the record is compliant.

Please advise us whether you will agree to this language; if not, please let us know no later than May 5, so that we can present this to the Court in our proposed agenda for the May 10, 2017 status conference.

Ms. Anne Orcutt
RE: Parsons v. Ryan
May 1, 2017
RE: 3/7/17 Version of Monitoring Guide
Page 3

With regard to the mental health performance measures, we have previously stated our objection to the Monitoring Guide's provisions with regard to PM 85. *See* February 17, 2017 letter from Fathi to Orcutt. We have also stated that the methodology for PM 85 and 86 must be changed so that the sample does not include cases that cannot possibly be found to be noncompliant. *See* March 27, 2017 email from Fathi to Bojanowski.

In addition, the recent evidentiary hearings have revealed profound and systemic flaws in Defendants' monitoring methodology for the mental health performance measures.[1] Disturbingly, some of these flaws result from Defendants' failure to comply with the requirements of their own Monitor Guide – for example, the requirement for PM 77 that the monitor "review eOMIS, in the Mental Health tab, for the two most recent treatment plans [and] Determine whether the two treatment plans were 90 days (or 12 months if applicable) or less apart," and the requirement for PM 95 that patients removed from suicide watch be seen at the required intervals. Accordingly, the Monitor Guide may require additional clarification to ensure that Corizon's performance is monitored consistent with the requirements of the Stipulation and the Court's orders.

We are happy to set up a time to this week to discuss these remaining issues, so that we can hopefully resolve them prior to the May 10 status conference, or prepare to bring them to Judge Duncan's attention to resolve.

Sincerely yours,

*/s/ Corene Kendrick*

Corene Kendrick

cc:     Counsel of Record

---

[1] As directed by the Court (see Doc. 2029), Plaintiffs will address these flaws in our filing on May 8.



STRUCK WIENEKE & LOVE          3100 West Ray Road, Suite 300, Chandler, Arizona 85226 | **480.420.1600** | swlfirm.com

May 17, 2017

Daniel P. Struck
Partner

Kathleen L. Wieneke
Partner

Rachel Love
Partner

Timothy J. Bojanowski
Partner

Christina Retts
Partner

Nicholas D. Acedo
Partner

Amy L. Nguyen
Partner

Tara B. Zoellner
Associate

Ashlee B. Fletcher
Associate

Anne M. Orcutt
Associate

Kevin L. Nguyen
Associate

Jacob B. Lee
Associate

Kevin R. Hanger
Associate

***VIA EMAIL ONLY***
Corene Kendrick
Staff Attorney
PRISON LAW OFFICE
General Delivery
San Quentin, CA  94964

**RE:    *Parsons v. Ryan* – Outstanding Monitoring Methodology Issues**

Dear Corene:

  We write in response to your May 1, 2017 letter regarding outstanding issues with respect to monitoring methodology for several healthcare performance measures (HC PMs) as set forth in the March 7, 2017 version of the Monitor Guide.

**PM 61**

  As I explained in our March 7, 2017 correspondence, the previous language proposed for PM 61 has unintended consequences, which will result in records being found compliant or non-compliant in perpetuity if an inmate does not have an additional pap smear.  For example, if an inmate received the personalized communique within 90 days of the 36-month anniversary of her last pap smear, elected not to request an additional pap smear, and was never provided another personalized communique, her record would continue to be compliant indefinitely despite never receiving another communique.  Conversely, if an inmate did not receive the personalized communique within 90 days of the 36-month anniversary of her last pap smear, elected not to request an additional pap smear, and was provided any number of personalized communiques informing her of her entitlement to receive a pap smear, her record would continue to be noncompliant indefinitely even if she received daily personalized communiques.

  We believe the proposed language in track changes for this measure in the March 7, 2017 Monitor Guide reflects the intent of the measure (to inform all eligible female inmates of the opportunity to receive a pap smear every three years) while avoiding the unintended consequences of the language we discussed during the February 8, 2017 status hearing.

Corene Kendrick
May 17, 2017
Page 2

### **PMs 85 and 86**

We have reviewed all possibilities in changing the audit process that will allow Defendants to still be in compliance with the Stipulation, which requires that all records that are reviewed for PM 85 **will be** reviewed for PM 86.   This is exactly what Defendants are currently doing at your insistence.

Historically, Defendants monitored PM 85 and 86 in a common sense manner.  To that end, Defendants monitored PM 86 first, reviewing the universe of all MH-3D inmates.  Next, Defendants monitored PM 85, using any inmates monitored for PM 86 who had been discontinued from medications and needed a follow-up in the audit month.  This process was exactly the way that records were reviewed for the PMs involving MH-3A, MH-3B, MH-4, and MH-5 inmates.  Defendants used this methodology until you insisted that Defendants must start with PM 85 because the protocols require Defendants to do so.  We attempted to explain to you that doing so would result in some of these charts being automatically compliant because 90 days have not yet elapsed, but you insisted upon following the language of the Stipulation.  To avoid this scenario, Defendants began marking charts as N/A for PM 86 if the inmate had not had a contact and was not yet due one.  Doing so ensured that credit would only be given to the files where staff ensured that they met with the inmate after the medications had been discontinued, and that they did not receive any credit for inmates who had not received a contact.

David Fathi proffered to the Court that 70% of the records for PM 86 are automatically compliant, but this is not in fact accurate, as many are marked N/A and therefore not counted in the compliance score.  As an example, for February 2017 at Lewis, there were 40 MH-3Ds that were used for PM 85.  Of those, only 19 (47%) were also used for PM 86, because the other 21 had not yet had a contact after medications were discontinued.

Defendants also review additional charts for PM 86 so that up to 10 (if available) are reviewed for this PM.  Although there is no specific language in the Stipulation requiring Defendants to do this, Defendants felt this would allow for a more accurate reflection of the care provided to the population and be more consistent with the language in the other PMs for mental health.  Again, using the example of February 2017 at Lewis, Defendants pulled additional charts for PM 86 so that each unit had a total of 10 records reviewed (if available).  The total reviewed for PM 86 was 41 records, which included 19 that followed the process delineated in the Stipulation.  The other 22 were from the additional records pulled by Defendants.

If we restrict the review for PM 86 to the plain language of the Stipulation, Defendants would only review the same records that were reviewed for PM 85.  We believe that Plaintiffs would not be in favor of placing this type of limitation on the audit process and, therefore, we are not offering this as a viable procedure, although it is obviously allowed under the Stipulation.  Outside of the modification you

Corene Kendrick
May 17, 2017
Page 3

agreed to where additional charts are pulled for PM 86, we could not determine any other method that would not also violate the Stipulation.

### **PMs 77 and 95**

While we are aware of the outstanding issues between the parties with respect to PMs 61, 85, and 86, this is the first we are hearing of your concerns with the monitoring methodology for PMs 77 and 95.  We believe it may be useful to have a meet and confer to discuss these new issues.

Please let us know if you would like to discuss any of the issues with respect to PMs 61, 85, and 86 further or if you believe the parties should seek guidance from the Court.

Sincerely,

Anne M. Orcutt

AMO/eap
cc:    All counsel of record

Exhibit 4



**PRISON LAW OFFICE**
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

June 6, 2017

Mr. Timothy Bojanowski
Struck Wieneke & Love
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@swlfirm.com

   RE: *Parsons v. Ryan*
     Parties' June 2, 2017 Call

Dear Tim,

  Thank you for speaking with us on Friday, June 2. I write to memorialize the parties' discussions.  Please advise me immediately if any of this does not comport with your memory.

**Removal of HNR boxes**

  We discussed Defendants' plan to remove HNR boxes on all medium and minimum security yards as of June 12, 2017.  We reiterated the concerns that were articulated in our May 17, 2017 letter showing that this will create barriers to care.  Removal of the HNR boxes and requiring prisoners to come to clinics will also eliminate a paper trail regarding medical care, especially when nurse's line is not held.  There will be no record of requests for care that were not addressed.

  With regard to the concerns about prisoners who work, as indicated in Defendants' own documents, Mr. Pratt said that a separate time would be set up for those prisoners to come in before or after work, or they can forego working. However, when I asked whether there was any sort of written schedule of these clinic times for workers, he indicated that nothing is written and it is an operational/custodial decision as to when the open clinic occurs, because an officer has to be present.

  This lack of specificity and documentation has heightened our concerns with Defendants removing these HNR boxes, and Plaintiffs plan to ask Judge Duncan to resolve this issue.

**Finalization of Monitoring Guide**

**PM 61**

  We discussed the parties' positions on the methodology for this measure, as detailed in my May 1, 2017 letter to Anne Orcutt, and her response dated May 17, 2017.  We believe that Defendants' proposed methodology does not comport with the Court's past instructions on this PM.  We will seek the Court's assistance to resolve the issue.

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

**PMs 85, 86**

As we explained, the problem with Defendants' current methodology is that it includes many files that cannot possibly be found noncompliant.  You agreed to review the proposal in Mr. Fathi's June 2 letter, and stated that if we do not reach agreement prior to the June 14 hearing, we will present the issue to Judge Duncan for review.

**PMs 94, 95, 97**

With respect to the required sample size for PM 94, 95, and 97, you similarly agreed to review the proposal in Mr. Fathi's June 2 letter, and we agreed that we will present the issue to Judge Duncan if we do not reach agreement by June 14.

**<u>March 27, 2017 Notice of Noncompliance</u>**

Ms. Fletcher's May 1, 2017 letter conceded that many of the performance measures in our March 27, 2017 notice were substantially noncompliant.  On the call, you conceded substantial noncompliance for additional performance measures.  Kirstin Eidenbach will contact Judge Bade's chambers regarding availability for mediation.

**PM 6**
Eyman (May 1 letter)

**PM 12**
Eyman (May 1 letter)
Florence (May 1 letter)

**PM 15**
Eyman (May 1 letter)
Florence (May 1 letter)
Lewis (May 1 letter)
Tucson (June 2 call)

**PM 20**
Eyman (June 2 call)
Florence (May 1 letter)
Lewis (May 1 letter)
Perryville (May 1 letter)
Phoenix (May 1 letter)
Tucson (June 2 call)

**PM 24**
Eyman (May 1 letter)
Lewis (May 1 letter)
Tucson (May 1 letter)

**PM 42**
Eyman (May 1 letter)
Florence (May 1 letter)
Lewis (June 2 call)

**PM 49**
Douglas (June 2 call)
Eyman (May 1 letter)
Perryville (June 2 call)
Phoenix (June 2 call)
Tucson (May 1 letter)

**PM 51**
Tucson (May 1 letter)

Mr. Timothy Bojanowski
RE: June 2, 2017 Call
June 6, 2017
Page 3

**PM 55**
Eyman (May 1 letter)

**PM 69**
Perryville (June 2 call)

**PM 59**
Lewis (May 1 letter)

**PM 72**
Eyman (May 1 letter)

**PM 67**
Lewis (May 1 letter)

## May 9, 2017 Mediation

At the May 9, 2017 mediation, Defendants agreed to implement various remedial plans for substantially noncompliant performance measures, and to provide an update within 30 days to us. We look forward to receiving that update no later than  Friday, June 9.

## Update Regarding Corizon Policy That Prisoners Be Seen Twice on Nurse's Line

As detailed in my May 30, 2017 letter, Defendants failed to provide the Court on May 24 with an update on the status of any possible policy requiring prisoners be seen twice on nurse's line before the patient can be referred to the provider. Ms. Orcutt insisted that since the Court did not explicitly require this information be provided on May 24, as it did with other requested updates, that you didn't have to provide the information then.  In any event, you promised that a declaration would be filed with the court early this week.  We informed you that we will file a notice with the Court informing it of your failure to abide by its order if the declaration is not filed by Wednesday, June 7.

Thank you for your attention to these matters.

Sincerely,

Corene Kendrick

Corene Kendrick

cc:      Counsel of Record