# Exhibit 1



LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT

June 2, 2017

**BY ELECTRONIC MAIL ONLY**

Anne M. Orcutt
Struck Wieneke & Love, P.L.C.
3100 West Ray Road, Suite 300
Chandler, AZ 85226-2473
aorcutt@swlfirm.com

AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

      Re:    *Parsons v. Ryan*

Dear Anne:

I write in response to your two letters of May 17, 2017.

You write:

> In response to your comments regarding PMs 87, 88, 92, and 93, we propose changing the sample size for these measures to 20 records per yard for complexes that have only one applicable yard. For complexes that have more than one applicable yard, we propose keeping the sample size at 10 records per yard.

This proposal is acceptable to Plaintiffs. We reiterate our position that, under the plain language of the Stipulation, all records reviewed for PM 87 must be reviewed for PM 88, and all records reviewed for PM 92 must be reviewed for PM 93.

With respect to PM 94, 95, and 97, Defendants must review the number of individual patient records (not watch instances or telepsychiatry sessions) required by the Stipulation. The fact that the source documents list watch instances and telepsychiatry sessions is no barrier to sampling the required number of individual patient records. For example, for PM 94, the monitor would begin by drawing a random sample of ten watch incidents. If two or more of those incidents pertain to the same patient, all but the first incident for each patient are discarded from the sample, and additional incidents are randomly drawn until the sample consists of ten incidents involving ten different individual patients.

Finally, with respect to PM 85 and 86, we do not agree with your recitation of the history of the parties' discussions. Our proposal is as follows:

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

PM 85

The monitor selects a random sample of ten records from all MH-3D prisoners at a given unit. If any of them discontinued medications less than 30 days previously, that record is excluded from the sample, and another record is randomly drawn. See Doc. 2048 ¶ 12. Once there are ten records of MH-3D prisoners who have discontinued medications more than 30 days ago, those records are assessed to determine whether the patient was seen within 30 days of discontinuing medications.

PM 86

The final sample of ten records used for PM 85 is the starting point for evaluating compliance with PM 86. If any of these prisoners discontinued medications less than 90 days previously, that record is excluded from the sample, and another record is randomly drawn. Once there are ten records of MH-3D prisoners who have discontinued medications more than 90 days ago, those records are assessed to determine whether the patient was seen within 90 days of discontinuing medications.

Very truly yours,

David C. Fathi

Cc:   All counsel

# Exhibit 2

## SUPPLEMENTAL DOCUMENTS
### May 15, 2017

| | Documents | Date Requested | Request Notes: | Request Response Notes: |
|---|---|---|---|---|
| 1 | Backlog report described by Dr. Calcote and Dr. Taylor during Tucson tour | 12/15/2015 | Please produce an accurate version of the documents previously produced at ADCM273919-944. See Fathi letter dated 1/29/16. | STANDING OBJECTION to this request: Initially produced incorrect figures on 01/19/16; then Defendants withdrew (through the clawback provision) the production of this document as it was not an official report, it is not accurate, and it was not meant to be published. |
| 2 | All underlying documents used to complete and support the findings for the monthly CGAR review of the isolation/maximum security performance measures for each facility (Lewis, Tucson Minors, Eyman, Perryville, Phoenix, Florence and Florence-Kasson) during the period March 2015 through present. | 5/15/2017 | First requested 10/15/15. Updated monthly. | STANDING OBJECTION to this request: Minors are not monitored for max custody criteria; documents are voluminous and will be produced as soon as practicable. Defendanst have been producing these documents on a regular basis since May 27, 2015. Duplicative requests. |
| 3 | All Directors' level responses dated September 1, 2015 to present to prisoners' grievances regarding health care (medical, mental health, or dental) | 2/16/2016 | Please provide the requested Directors' level responses per Fathi e-mail dated 2/11/16. | 02/16/16 RESPONSE: Objection to this request: unduly burdensome and not required to produce under the Stipulation. 04/15/16 RESPONSE: STANDING OBJECTION to this request: unduly burdensome and not required to produce. |
| 4 | The monthly staffing reports and weekly staffing schedules for each prison for the month of January 2016 through the present, used to monitor compliance with Stipulation Performance Measures # 1-4 (Staffing Measures # 1-4 in the CGAR). | 5/15/2017 | STILL PENDING: Weekly staffing schedules for January 2016 - all facilities; February 2016 - all facilities other than Perryville and Lewis; March 2016 - all facilities other than Perryville and Lewis;  April 2016 - all facilities other than Perryville and Lewis; May 2016 - all facilities; June 2016 - all facilities; July 2016 - all facilities; August 2016 - all facilities; September 2016 - all facilities; October 2016 - all facilities; November 2016  - all facilities; December 2016 - all facilities; January 2017 - all facilities; February 2017 - all facilities; March 2017 - all facilities | 05/16/16 RESPONSE: Produced January 2016 monthly (ADCM387315-387325); February monthly 03/21/16 (ADCM387326-387336). 04/15/16 RESPONSE: Produced March 2016 monthly 5/18/16 (ADCM463749-463759; ADC462724-462734). 05/16/16 RESPONSE: Mar 2016 weekly for PV 5/18/16 (ADCM463760-763764). 08/15/16 RESPONSE: Produced Apr 2016 monthly 5/18/16 (ADCM463749- 763759); May 2016 monthly 6/15/16 (ADCM496743- 496753); Jun 2016 monthly 7/15/16 (ADCM537964- 537974). WEEKLY Produced Feb 2016 weekly (for Lewis ADCM466589, 466592, 466593-466596 and PV ADCM466597-466599); Mar 2016 weekly (for Lewis 466600-466604, 466590, 466587, 466592 and PV ADCM463760-463764); Apr 2016 weekly (for Lewis ADCM466591, 466592, 466605-466608, and PV ADCM463765-463772); Jun 2016 monthly (ADCM537964-537974). 10/04/16 RESPONSE: Jul 2016 Monthly 08/15/16 (ADCM586016-586026); Aug 2016 Monthly 09/21/16 (ADCM603839-603849); 11/17/16 RESPONSE: Sept 2016 Monthly 10/19/16 (ADCM659629-659639); Oct 2016 Monthly 11/16/16 (ADCM701197-707207). 12/16/16 RESPONSE: Nov 2016 Monthly 12/16/16 (ADCM750753-750763).  02/15/17 RESPONSE: December 2016 Monthly 02/03/17 (ADCM772361-772371). 03/15/17 RESPONSE: January 2017 Monthly 03/17/17 (ADCM833417-833427).  **04/17/17 RESPONSE: All monthly staffing reports have been produced through March 2017.** |

## SUPPLEMENTAL DOCUMENTS
### May 15, 2017

| | Documents | Date Requested | Request Notes: | Request Response Notes: |
|---|---|---|---|---|
| 5 | Medical examiner reports for all prisoners who died by suicide from 2/19/15 to present (see 2/23/16 email from Lucy Rand). | 5/15/2017 | Please provide the medical examiner reports from cases of suicide per Fathi e-mail dated 2/11/16. | 02/16/16 RESPONSE: Objection to this request: not required to provide. 04/15/15 RESPONSE: Pursuant to the PARTIES AGREEMENT modifying the request (see David Fathi's 02/11/16 agreement via email), Defendants will produce ME reports for only those prisoners whose death was ruled a suicide. Already produced Cushman, Smith, and Gonzales-Manjarrez. 08/15/16 RESPONSE: The ADC contacted the medical examiner's office to determine when they will have Apkaw's autopsy completed and they said maybe in a couple of months; however, the ADC has received a similar response before and the autopsy was not performed. As of 08/17/16 PRODUCED: Cushman, Smith, Gonazles-Manjarrez, Aguilar, Whitaker. As of 10/04/16 OUTSTANDING: Apkaw and Abdullah, neither of which have been provided by the appropriate county coroner's office. 02/23/17 RESPONSE: All produced except for Apkaw and Orona. 03/15/17 and 4/17/17 RESPONSE: Currently Outstanding: Orona. **05/15/17 RESPONSE: Defendants have produced all available reports.** |
| 6 | The monthly CQI meeting minutes for each prison for all meetings from July 2016 to the present, used to monitor compliance with PM # 27 (Quality Improvement # 2 in the CGAR). | 5/15/2017 | Pending June 2016 Phoenix minutes, October 2016 Safford minutes and January 2017 minutes for all 10 facilities. | 05/16/16 RESPONSE: Meeting minutes are available on a month and a half lag, e.g., minutes for June are available some time in July 2016. 08/15/16 RESPONSE: ALL requested CQI from September 2015 through May 2016 have been produced. 09/23/16 RESPONSE: ALL requested CQI from September 2015 through June 2016 have been produced. 11/17/16 RESPONSE: All requested CQI from July 2016 through October 2016 have been produced, except Safford, which has been produced through September 2016. 02/23/17 RESPONSE: All requested have been produced through December 2016, except Safford for September 2016. 03/23/17 RESPONSE: All have been produced through February 2017 (Jan data, Feb mtg). **06/09/17 RESPONSE: All have been produced through April 2017.** |
| 7 | Any Department Order, Director's Instruction, or other policy that applies to prisoners at Tucson Minors or in the Minors Unit at Perryville requiring out of cell time and group programming. | 5/15/2017 | Plaintiffs reiterate this request on a monthly basis in the event that new policies are developed or policies are updated. | 08/15/16 RESPONSE: The Stipulation does not require monitoring of Tucson Minors. Until such time as the Court requires the monitoring of minors, Defendants are not required to produce this documentation, as it is not "information reasonably necessary to perform [Plaintiffs'] responsibilities required by this Stipulation". (Dkt. 1185 at 12.) 11/17/16 RESPONSE: Pursuant to the parties' agreement during the mediation with Judge Bade on 10/26/16, the Tucson Post Order was produced on 11/17/16. 02/15/17 RESPONSE: THIS RESPONSE IS CURRENT. 04/14/17 RESPONSE: THIS RESPONSE IS CURRENT. **06/09/17 RESPONSE: THIS RESPONSE IS CURRENT.** |

**SUPPLEMENTAL DOCUMENTS**
May 15, 2017

|   | Documents | Date Requested | Request Notes: | Request Response Notes: |
|---|---|---|---|---|
| 8 | Documentation reflecting any updates/alterations in these menus or any others reflecting the meal service provided to ADC prisoners:<br>•Adult Male General Population level 1 & 2 Weekly Cycle Menus;<br>•Adult Male General Population level 3 & 4 Weekly Cycle Menus;<br>•Adult Male Population Level 5 Weekly Cycle Menus;<br>•Adult Female General Population Level 1 & 2 Weekly Cycle Menus;<br>•Adult Female General Population Level 3, 4, & 5 Weekly Cycle Menus;<br>•Minor Female and Male General Population Weekly Cycle Menus | 5/16/2016 | Plaintiffs have agreed to Defendants' production of the Statement of Nutritional Adequacy every 6 months or whenever there is a substantive change. We reiterate the other requests. | 09/15/16 RESPONSE: Defendants produced these documents revised as of August 1, 2016, on 08/29/16.  04/17/17 RESPONSE: Defendants have produced the August 1, 2016, menus each month within the Max Custody Notebooks, which were last produced for January 2017.  05/24/17 RESPONSE: Response is current through the February 2017 Max Custody Notebooks. |
| 9 | All documents reflecting or discussing errors, inaccuracies, or inconsistencies in Defendants' or Corizon's monitoring of compliance with the Stipulation's Performance Measures. | 6/15/16 | 3/15/17 - Plaintiffs reiterate this request, as the documents produced pertain to errors in monitoring mental health performance measures, and appear to come from a review only of Nicole Taylor's email. This request also covers all other performance measuers (medical, dental, pharmacy), and Judge Duncan specifically ordered a review and production of Defendant Pratt's email and any other person responsible for handling errors or inconsistencies. Kathleen Campbell testified on March 8, 2017 that she is responsible for rebuttals.  See also Defendants' Agenda for | 08/15/16 RESPONSE: OBJECTION: To the extent these documents even exist, this request is overly broad, vague and ambiguous, irrelevant, and not required to be produced under the Stipulation. OBJECTION: this request contemplates producing documents that are protected by the attorney-client and/or work-product privileges. OBJECTION: unduly burdensome: These documents, if any, are likely maintained by the approximately 30 individuals who perform the monitoring, as well as any other individuals the who might discuss these topics and, therefore, are not maintained and/or organized in such a manner as to be readily or easily obtainable. 11/17/16 RESPONSE: As provided by the Court's instructions, the parties are jointly working on this request.  01/17/17 RESPONSE: Defendants produced these documents on 12/13/16 and 12/29/16.  THIS RESPONSE IS COMPLETE. |

## SUPPLEMENTAL DOCUMENTS
### May 15, 2017

|    | Documents | Date Requested | Request Notes: | Request Response Notes: |
|----|-----------|----------------|----------------|-------------------------|
| 10 | Any updated Department Order, additional Director's Instruction, or other document reflecting a change in policy and practice to D.O. 804, Inmate Behavior Control (effective date June 7, 2012) (ADCM107478-ADCM107505). | 2/15/17 | Plaintiffs understand there is no updated policy at this time according to Ms. Rand's 10/5/16 letter. Nonetheless, this is a standing request should there by any update in policy or practice as described in this request. | 08/15/16 RESPONSE: OBJECTION: This request contemplates the production of irrelevant documentation, which does not pertain to inmates. 09/15/16 RESPONSE: The only policy change to Department Order #804, Inmate Behavior Control, is Director's Instruction 327, Staff Safety, which was issued on April 11, 2014. DI327 requires all staff/contractors working in ADC Complexes to carry O.C. spray while working at the ADC Complexes. This document is available on the public ADC website, to which Plaintiffs' counsel has access. **06/09/17 RESPONSE: THIS RESPONSE IS CURRENT: The DO 804 currently in effect is dated June 7, 2012.** |
| 11 | All external or internal reports, reviews, research, or analysis conducted to evaluate the programs and/or policies of the maximum custody units. | 9/15/16 | | 09/15/16 RESPONSE: OBJECTION: To the extent these documents even exist, this request is overly broad, vague and ambiguous, irrelevant, and not required to be produced under the Stipulation, as it is not "information reasonably necessary to perform [Plaintiffs'] responsibilities required by this Stipulation". (Dkt. 1185 at 12.) OBJECTION: this request contemplates producing documents that are protected by the attorney-client and/or work-product privileges. OBJECTION: unduly burdensome: To the extent these documents even exist, these documents are likely maintained by a large number of individuals and; therefore, are not maintained and/or organized in such a manner as to be readily or easily obtainable without undue effort and disruption to the prison and/or medical staff. |
| 12 | All meeting minutes, notes, or other memorandum related to corrections and/or medical/mental health staff meetings conducted to discuss maximum security units, operations, policies and/or inmates. | 9/15/16 | | 09/15/16 RESPONSE: OBJECTION: To the extent these documents even exist, this request is overly broad, vague and ambiguous, irrelevant, and not required to be produced under the Stipulation, as it is not "information reasonably necessary to perform [Plaintiffs'] responsibilities required by this Stipulation". (Dkt. 1185 at 12.) OBJECTION: this request contemplates producing documents that are protected by the attorney-client and/or work-product privileges. OBJECTION: unduly burdensome: To the extent these documents even exist, these documents are likely maintained by a large number of individuals and; therefore, are not maintained and/or organized in such a manner as to be readily or easily obtainable without undue effort and disruption to the prison and/or medical staff. |
| 13 | All disciplinary tickets issued in Tucson - Rincon, Unit 3 from 5/15/16 to present. | 11/15/16 | | 11/17/16 RESPONSE: OBJECTION: The Stipulation does not involve the monitoring of inmate disciplinary tickets. Further, Defendants are not required to produce this documentation, as it is not "information reasonably necessary to perform [Plaintiffs'] responsibilities required by this Stipulation". (Dkt. 1185 at 12.) To the extent that Plaintiffs request this documentation related to their allegations of intimidation at ASPC-Tucson-Rincon Unit at Housing Unit 3 ("HU3"), Plaintiffs did not allege intimidation beginning on or around May 15, 2016. Additionally, Plaintiffs did not tour ASPC-Tucson-Rincon Unit, HU3, between May and October of 2016. Plaintiffs first announced they intended to visit ASPC-Tucson on October 12, 2016. OBJECTION: Unduly burdensome; overly broad; most disciplinaries will be irrelevant to Stipulation monitoring and the allegations of intimidation. |
| 14 | All documents demonstrating policies and practices in the Minors Units at Tuscon and Perryville which establish out-of-cell time, exercise, education, and all other programming on a weekly and/or monthly basis. | 5/15/17 | Plaintiffs reiterate this request on a monthly basis in the event that new policies are developed or policies are updated. | 11/17/16 RESPONSE: The Stipulation does not require monitoring of Tucson Minors. Until such time as the Court requires the monitoring of minors, Defendants are not required to produce this documentation, as it is not "information reasonably necessary to perform [Plaintiffs'] responsibilities required by this Stipulation". (Dkt. 1185 at 12.) **04/17/17 RESPONSE: There are no policies and/or practices responsive to this request. THIS RESPONSE IS COMPLETE.** |

## SUPPLEMENTAL DOCUMENTS
### May 15, 2017

| | Documents | Date Requested | Request Notes: | Request Response Notes: |
|---|---|---|---|---|
| 15 | All documents reflecting, discussing, or establishing policies and/or practices related to Defendants' "open clinic concept" [See Defs' Proposed Agenda for 12/14/16 Status Conference] and documents sufficient to show its implementation and compliance with the Court's Nov. 10, 2016 Order. | 12/15/16 | See C.Kendrick letter dated 2/10/17. Defendants have only produced the flyers/notices posted that inform prisoners of the new system.<br><br>5/15/17 - See D. Fathi letter of 3/23/17 and C. Kendrick letter dated 5/3/17. If Defendants are withholding any documents pursuant to a claim of privilege or work product, please provide a privilege log immediately. If Defendants' position, as asserted during the 5/10/17 hearing, is that there are no additional documents beyond those produced to date, please file with the court a declaration signed by counsel under penalty of perjury, setting out the | 12/16/16 RESPONSE: OBJECTION: To the extent these documents even exist, this request is overly broad, vague and ambiguous, irrelevant, and not required to be produced under the Stipulation, as it is not "information reasonably necessary to perform [Plaintiffs'] responsibilities required by this Stipulation". (Dkt. 1185 at 12.) OBJECTION: To the extent these documents even exist, this request contemplates producing documents that are protected by the attorney-client and/or work-product privileges. OBJECTION: To the extent these documents even exist, these documents are unduly burdensome to produce and are likely maintained by a large number of individuals and; therefore, are not maintained and/or organized in such a manner as to be readily or easily obtainable without undue effort and disruption to the prison and/or medical staff.  02/15/17 RESPONSE: These documents were produced to Plaintiffs on December 30, 2016, bates labeled ADCM757503-757505 and ADCM757577-757623, pursuant to Plaintiffs' request for documents prior to the ASPC-Lewis Site Visits on January 4-5, 2017. THIS RESPONSE IS COMPLETE. |
| 16 | Current list of ADC/Corizon mental health staff at each of the ten complexes, specifying whether each staff member is licensed | 1/13/17 | 5/15/17 - This is a standing monthly request, necessary to review Defendants' compliance with mental health performance measures. | 02/15/17 RESPONSE:  This list was produced on 02/03/17, bates labeled ADCM772521-772524.  THIS RESPONSE IS COMPLETE. |
| 17 | All documents reflecting, discussing, or establishing policies and/or practices related to the implementation of Director's Instruction #326 at Lewis-Rast, particularly as it relates to recreation enclosures. | 1/17/17 | 5/15/17 - Please provide an update on the status of Defendants' search for these documents. | 01/17/17 RESPONSE: OBJECTION.  This request is overly broad, vague and ambiguous, irrelevant, and not required to be produced under the Stipulation, as it is not "information reasonably necessary to perform [Plaintiffs'] responsibilities required by this Stipulation". (Dkt. 1185 at 12.) OBJECTION: This request contemplates producing documents that could be protected by the attorney-client and/or work-product privileges. OBJECTION: This request is vague as it does not provide a relevant time frame.  OBJECTION: These documents, if they exist, are unduly burdensome to produce and are likely maintained by a large number of individuals and; therefore, are not maintained and/or organized in such a manner as to be readily or easily obtainable without undue effort and disruption to the prison and/or medical staff.  Without waiving the foregoing objections, provided any documents exist that are not protected by a legal privilege and provided these documents are not unduly burdensome to produce, Defendants will perform a search for these documents. |

## SUPPLEMENTAL DOCUMENTS
### May 15, 2017

| | Documents | Date Requested | Request Notes: | Request Response Notes: |
|---|---|---|---|---|
| 18 | All documents reflecting, discussing, or establishing policies and/or practices related to Defendants' compliance with the Court's Nov. 10, 2016 Order, with regard to the nine performance measures to which the order is applicable, and documents sufficient to show the implemation and compliance with the Order. | 2/15/17 | This is for all policy and program changes in addition to the request of 12/15/16 regarding the "open clinic concept" and PM 37.<br><br>5/15/17 - See D. Fathi 3/23/17 letter and C. Kendrick 5/3/17 letter. If Defendants are withholding any documents pursuant to a claim of privilege or work product, please provide a privilege log immediately. If Defendants' position, as asserted during the 5/10/17 hearing, is that there are no additional documents beyond those produced to date, please file with the court a declaration signed by counsel under penalty of perjury, setting out the efforts taken to identify | 02/23/2017 RESPONSE: Defendants OBJECT to this request because any documents, if any exist, may include attorney-client privileged documents. Furthermore, Defendants have already produced documentation regarding "open clinics", Dashboard documents, and .... Defendants will need to determine what kind of documentation might exist before objecting further and/or attempting to obtain documentation pursuant to this request. 04/14/2017 RESPONSE: Defendants further OBJECT to this request as vague and ambiguous because this Order pertains to 15 performance measures (12 related to the First Remedial Plan (Dkt. 1608) and 3 related to the Second Remedial Plan (Dkt. 1729)); however, Plaintiffs claim this Order (Dkt. 1754) pertains to HC PM #37 and 8 other performance measures, but do not specify to which performance measures their request applies. Plaintiffs must make their request with specificity. Defendants further OBJECT to this request because the Court has already resolved some of the issues contained in the Orders in a manner different than was specified in the Order. (E.g., 1673 does not require reporting of the offering of annual influenza vaccinations.)<br>Further, Defendants OBJECT to this request as unduly burdensome. Plaintiffs have not shown what benefit will be had from obtaining this documentation and cannot show that the benefit to Plaintiffs outweighs the burden on Defendants to search for and produce the documentation, if any.<br><br>Finally, Defendants may need to make additional objections after it is determined what kind of documentation might exist. |
| 19 | All written direction or instructions, including all training materials, provided to ADC or Corizon staff regarding compliance with the Court's orders on monitoring methodology, including but not limited to Doc. 1673, 1745, 1754, 1831, 1833, and 1915 | 2/15/17 | 5/15/17 - See D. Fathi 3/2 | 02/23/2017 RESPONSE: Defendants OBJECT to this request because any documents, if any exist, may include attorney-client privileged documents.<br><br>Defendants further OBJECT to this request as vague and ambiguous because these Orders are many pages long and contain many rulings, many of which do not pertain to Plaintiffs' request. Furthermore, many of the rulings require reference to Court transcripts or other documents. Plaintiffs must specify their request and not just point to a long list of documents.<br><br>Defendants further OBJECT to this request as duplicative because Plaintiffs have already requested this information in other requests for production, such as documentation regarding "open clinics" (requested 12/15/16), documentation regarding the term "seen" in performance measures 73-99 (requested 12/15/16), and CQI Meeting Minutes (ongoing request since September 2015).<br><br>Further, Defendants OBJECT to this request as unduly burdensome. Plaintiffs have not shown what benefit will be had from obtaining this documentation and cannot show that the benefit to Plaintiffs outweighs the burden on Defendants to search for and produce the documentation, if any.<br><br>Finally, Defendants may need to make additional objections after it is determined what kind of documentation might exist.<br><br><u>05/15/17 RESPONSE</u>: The Court addressed and ruled on this request in the May 10, 2017 hearing.  Accordingly, the response to this request is |

## SUPPLEMENTAL DOCUMENTS
May 15, 2017

| | Documents | Date Requested | Request Notes: | Request Response Notes: |
|---|---|---|---|---|
| 20 | A list of all inmates in detention in the ADC system during the week starting Feb. 6, 2017 including each person's SMI status and length of stay in detention | 2/15/17 | | 02/23/2017 RESPONSE: Defendants OBJECT to this request because it is vague as to the meaning of "detention" and because Defendants are not required to create documents to produce. There is no such report that contains only this information. Defendants will need to determine what kind of report can be generated based on this request.  04/14/2017 UPDATED RESPONSE: This information cannot be provided because there is no such report or combined reports that compiles the requested information.  Defendants also OBJECT to this request because it is unduly burdensome. There is no report for all inmates that were housed in "detention", however defined (and Plaintiffs did not define it). Furthermore, Plaintiffs' request asks for the list to cover an entire week, instead of as of a specific date, and inmates are moved in and out of prison locations constantly. Three separate searches would need to be performed. Additionally, an individual review of each inmate's prison record would need to be performed to determine the length of each inmate's stay in "detention". Finally, each inmate's status (SMI or non-SMI) would need to be determined and added to the list. |
| 21 | For each ADC complex, a list of prisoners who within the previous month reported heat intolerance while on medication prescribed by a psychiatric provider. See Doc. 1927 at 2. | 4/17/17 | | **06/09/17 RESPONSE: Defendants produced this documentation as ADCM919303.** |
| 22 | All written directions and instructions to monitoring staff regarding the methodology for selecting the sample used to monitor Performance Measure 95, including any written instructions not included in the Monitoring Guide. | 4/17/2017 | 5/17/17 - See, e.g., testimony of Mr. Dye, 4/17/17 Tr. at 505:10-25. | **06/09/17 RESPONSE: According to the monitors, including Dennis Dye, there are no documents in existence that are responsive to this request. In fact, Dennis Dye testified that he has never seen it written down anywhere.  (04/17/17 Tr. At 505:21-22.) Although Mr. Dye responded "Yeah", the question to which he responded was compound and vague. Consequently, it is unclear whether Mr. Dye is responding "Yeah" to the statement that the instructions are not in the monitor manual or to the statement that the instructions are written down.  Additionally, no follow-up or clarification was pursued.** |
| 23 | All emails between Richard Pratt and Corizon from Jan. 1, 2017 to the present, including but not limited to the "investigate and advise" emails described by Mr. Pratt in his May 10, 2017 testimony. | 5/15/17 | | **05/15/17 RESPONSE: Defendants object to this request because it contemplates producing irrelevant documents and/or attorney client privileged documents, as the phrase "investigate and advise" could have been used for many different issues.  Without waiving the foregoing objection, Defendants are searching for these emails and will advise of the results.** |
| 24 | The spreadsheet Mr. Pratt maintains regarding advocacy letters sent by Plaintiffs' counsel, described by Mr. Pratt in his May 10, 2017 testimony. | 5/15/17 | | **05/15/17 RESPONSE: Defendants object to this request because it contains attorney-client privileged information.  Furthermore, Defendants object to this request because the Stipulation does not require its production.  (Dkt. 1185 at 12, 14.)  The Stipulation only allows Plaintiffs to have reasonable access to documents necessary to properly evaluate whether Defendants are complying with the Stipulation and, more specifically, the performance measures.  The Stipulation did not contemplate that Plaintiffs would be able to obtain a document that was created to track Plaintiffs' complaints, is not used to monitor, and does not assist in evaluating whether Defendants are complying with the Stipulation. (*Id.*)** |

## SUPPLEMENTAL DOCUMENTS
### May 15, 2017

|    | Documents | Date Requested | Request Notes: | Request Response Notes: |
|----|-----------|----------------|----------------|-------------------------|
| 25 | All documents relied upon by Mr. Pratt for his May 10, 2017 testimony that prison suicide rates are increasing nationally. | 5/15/17 | | **05/15/17 RESPONSE**: There are no specific documents responsive to this request. Mr. Pratt was verbally advised that suicide rates were rising by Dr. Nicole Taylor upon her return from NCCHC and by various (and numerous) news reports on the subject, particularly in the wake of the high-profile suicide of incarcerated former NFL player Aaron Hernandez. |
| 26 | A current organizational chart for the ADC Health Services Monitoring Bureau, showing each position and identifiying the individual currently working in each position. | 5/15/17 | | **06/09/17 RESPONSE**: Defendants produced this chart as ADCM919304. |
| 27 | Documents showing the number of ADC prisoners (excluding those at private prisons) in each of the following mental health categories and, within each category, the number prescribed psychotropic medications:<br><br>MH-1<br>MH-2<br>MH-3A<br>MH-3B<br>MH-3C<br>MH-3D<br>MH-3E<br>MH-4<br>MH-5<br>SMI | 5/15/17 | | **05/15/17 RESPONSE**: Defendants object to this request for the following reasons:<br><br>No single report can provide the information requested and Defendants are not required to create documentation to produce. Defendants also object to the term "psychotropic medications" because it is ambiguous. Psychiatric medications can be used for various medical and mental health purposes, e.g., Neurontin is used to treat seizures, diabetic neuropathy, and as a mood stabilizer. Determining the uses for each medication prescribed to each inmate would be unduly burdensome and would require a review of every inmate's medical record. Additionally, inmates prescribed more than one psychiatric medication would need to be "de-duped". Plaintiffs also have not identified the performance measure that requires these numbers.<br><br>Without foregoing the above objections, Defendants will provide the same type of report previously provided in response to Plaintiffs' similar requests. |
| 28 | All written direction or instructions provided to ADC or Corizon staff regarding the meaning of the term "seen" in Performance Measures 73-99, including but not limited to the written memorandum referred to by Dr. Calcote during a meeting with plaintiffs' counsel at ASPC-Tucson on November 2, 2016. | 12/15/2016 | | 12/16/16 RESPONSE: OBJECTION: To the extent these documents even exist, this request is overly broad, vague and ambiguous, irrelevant, and not required to be produced under the Stipulation, as it is not "information reasonably necessary to perform [Plaintiffs'] responsibilities required by this Stipulation". (Dkt. 1185 at 12.) OBJECTION: To the extent these documents even exist, this request contemplates producing documents that are protected by the attorney-client and/or work-product privileges. OBJECTION: To the extent these documents even exist, these documents are unduly burdensome to produce and are likely maintained by a large number of individuals and; therefore, are not maintained and/or organized in such a manner as to be readily or easily obtainable without undue effort and disruption to the prison and/or medical staff. <u>01/17/17 RESPONSE</u>: These documents were produced on 01/17/17, bates labeled ADCM771906-771920. THIS RESPONSE IS COMPLETE. |

## SUPPLEMENTAL DOCUMENTS
### May 15, 2017

| | Documents | Date Requested | Request Notes: | Request Response Notes: |
|---|---|---|---|---|
| 29 | All documents reflecting any investigation into the suicides of prisoners Arvizo, #241872 (April 23), Krauss, #95781 (May 4), Gonzalez, # 235043 (May 8), and/or Mills, #284401 (May 13). | 5/15/2017 | | **05/15/17 RESPONSE: Defendants object to this request because:**<br><br>**The Stipulation does not require production of documents regarding an inmate housed at a private prison at the time of his death, as these inmates are not part of the class or subclass.  Inmate Mills, ADC #284401, was not in the custody of the ADC when he died, but was housed at the private prison ASP-Kingman.**<br><br>**Defendants further object to this request because the Stipulation does not require its production and it is duplicative.  (Dkt. 1185 at 12, 14.)  The Stipulation only allows Plaintiffs to have reasonable access to documents necessary to properly evaluate whether Defendants are complying with the Stipulation and, more specifically, the performance measures.  The Stipulation did not contemplate that Plaintiffs would be able to obtain operational and/or criminal investigation reports containing confidential safety and security information, crime scene photos, etc., which are not likely to assist in evaluating whether Defendants are complying with the Stipulation.  (*Id.*)  This request is duplicative because Plaintiffs already receive the medical records, mortality review, psychological autopsy, medical examiner autopsy, CAPS, and CQI Meeting Minutes, which provides more pertinent medical- and mental health-related information regarding the inmate's death and circumstances so that Plaintiffs can determine whether Defendants complied with the Stipulation.**<br><br>**Defendants further object on the basis of safety and security.  When an investigation is ongoing, release of vital information could jeopardize the outcome of the investigation and/or the safety of inmates, staff, and the public.  Even when an investigation has concluded, some documentation** |

# Exhibit 3

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT



BY EMAIL ONLY

June 12, 2017

Lucy M. Rand
Assistant Attorney General
1275 W. Washington St.
Phoenix, AZ 85007-2926

RE:   *Parsons v. Ryan*

Dear Lucy,

Thank you for your response to our May 15, 2017 document request, which was sent at 6:37 PM (Arizona time) on Friday, June 9. Unfortunately, your response is not complete:

1. Although you state in your response that certain documents were produced as ADCM919303 (Request No. 21) and ADCM919304 (Request No. 26), it appears that these documents have not been produced. If they have, please direct us to the email with which they were produced; if not, please produce them by the close of business today.

2. Please provide an approximate timeline for production of the documents you say you will produce in response to Requests No. 23 and 27.

3. To the extent that you are withholding responsive documents based on a claim of attorney-client privilege or work product protection (Requests No. 23, 24, 28), please produce a privilege log.

4. Your response to Request No. 29 ends in mid-sentence; we would be grateful for a complete response.

In addition, your objections to our requests are unfounded. For example, Request No. 24 seeks "The spreadsheet Mr. Pratt maintains regarding advocacy letters sent by Plaintiffs' counsel, described by Mr. Pratt in his May 10, 2017 testimony." You object to this request "because it contains [sic] attorney-client privileged information." This objection is groundless; a document created and maintained by Mr. Pratt, a non-attorney, obviously cannot be protected by the attorney-client privilege. In any event, as noted above, you have not produced a privilege log.

You also object on the ground that production of this document is not explicitly contemplated by the Stipulation. But Defendants' response to letters sent by class counsel, identifying patients who are not receiving essential medical or mental health care, has everything to do with Defendants' compliance or noncompliance with the Stipulation. We virtually never receive any response to these letters except a one-paragraph boilerplate email from Defendants' litigation counsel; Plaintiffs and the Court

AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

need to know if Defendants take any action in response to these letters, or instead simply ignore them. The Stipulation imposes numerous requirements upon Defendants that are not covered by the Performance Measures – including, for example, a requirement to provide language interpretation for health care encounters and to protect patients from heat injury – and many of the letters sent by class counsel have alleged violations of these provisions.

The Court overruled a similarly hyper-technical objection at the May 10, 2017 evidentiary hearing:

> MR. BOJANOWSKI: Your Honor, I guess I'm going to object. I'm not sure what this has to do with methodology for monitoring or the Monitoring Bureau or anything like that.
>
> THE COURT: It has everything to do with the Court's desire to get the stipulation effected. Overruled. That's why we're having this hearing. That's why Mr. Pratt is here so I can better understand this process so that I can solve this problem that is not getting solved by the State.

Tr. 5/10/17, 759:23 - 760:5. Please produce the requested documents.

As another example, Request No. 27 seeks "Documents showing the number of ADC prisoners (excluding those at private prisons) in each of the following mental health categories and, within each category, the number prescribed psychotropic medications." You "object to the term 'psychotropic medications' because it is ambiguous." The American Psychiatric Association disagrees; for example, its *Psychiatric Services in Jails and Prisons* (2d ed. 2000) recommends that psychiatrists in a prison setting have a maximum caseload of "150 patients on psychotropic medication." (p. 8). Please produce the requested documents.

Very truly yours,

David C. Fathi

Cc:   All counsel

AMERICAN CIVIL LIBERTIES UNION FOUNDATION