# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Antonio Parsons, et al., | No. CV-12-0601-PHX-DKD |
| Plaintiffs, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiffs' motion for reconsideration is fully briefed. (Docs. 2042, 2074, 2086) Plaintiffs moved for reconsideration of the Court's April 24, 2017 Order ("2017 Order") arguing that it contradicts the Court's May 2, 2016 Order ("2016 Order") and should not stand. (Docs. 1583, 2030, 2042, 2086) Both Orders were issued after the parties reached an impasse about which location/Performance Measures should be subjected to a remedial plan. Although the Stipulation references a remediation plan, it does not include a methodology for determining when to impose one. (Doc. 1185 at ¶ 36) Instead, the Stipulation uses the term "substantial compliance" repeatedly. (Doc. 1185 at ¶¶ 9, 10, 19, 20)

At this point, with more than two years of experience, it is clear that there are (at least) four different inflection points for a location/PM:

(1) whether a location/PM meets the % requirement for a particular month (Stipulation at ¶¶ 10(a), 20(a))

(2) whether a location/PM has such consistently poor performance that it should be subject to remedial measures;

    (3) whether a location/PM that was subject to remedial measures has improved enough to come out from under the remediation plan; and

    (4) whether a location/PM can exit the Stipulation (Stipulation at ¶¶ 10(b), 20(b)).

Although not articulated this way, the 2016 Order was attempting to harmonize categories (1) and (2) without the benefit of sufficient data to evaluate the over-arching implication of category (4). By contrast, the 2017 Order adopted a methodology that acknowledged the implications of, and relationship between, categories (2) and (4), something only made possible with the passage of time and the collection of sufficient data.[1]

Logically, if a location/PM could be released from the Stipulation, it cannot also be subject to a remedial plan. The 2017 Order recognizes this relationship. Accordingly, the Court concludes that the 2017 Order presents the more accurate and precise method for determining whether to impose a remediation plan.

Plaintiffs argue that, in essence, categories (1) and (2) are synonymous and wholly apart from category (4). (Doc. 2042 at 5-6) However, the Stipulation, which must be read as a whole, does not equate (1) and (2). Moreover, Plaintiffs have not proceeded with their motions to enforce under that assumption. (Doc. 1956 at 43-44)

Plaintiffs also argue that the Court's 2016 Order is the doctrine of the law of the case. (Doc. 2042 at 4) However, there are situations where "the law of the case doctrine is wholly inapposite. The doctrine simply does not impinge upon a district court's power to reconsider its own interlocutory order provided that the district court has not been divested of jurisdiction over the order." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882 (9th Cir. 2001). That is the case here. Accordingly, this argument is not well taken.

---

[1] At this point, the Court is not addressing whether categories (3) and (4) are, must, could, or should be synonymous. The parties may raise that issue when the appropriate facts arise.

- 2 -

Defendants argue that the 2017 Order was prompted by a request from the parties; Plaintiffs disagree. (Docs. 2074 at 4; 2086 at 4) Although neither party made a formal motion, this issue was triggered by the parties' repeated inability to agree on the location/PMs subject to a remedial measure. (Doc. 2030 at 1) While the 2016 Order had attempted to clarify the matter, the subsequent resurgence of the same question meant that the 2016 Order had not articulated a sufficiently clear standard to resolve the issue.

Finally, Plaintiffs argue that the 2017 Order conflicts with the structure of the Stipulation and undermines the ability to enforce. As noted earlier, the 2017 Order is consistent with the Stipulation because it recognizes that a location/PM cannot be both subject to a remedial measure and meet the criteria for exiting the Stipulation. Moreover, Plaintiffs argue that the class members will be harmed by application of the 2017 Order. (Doc. 2042 at 6-7) However, the Stipulation does not require 100% compliance, nor does it set a floor for compliance. (Doc. 1185 at ¶¶ 10(b), 20(b)). This means that individual examples of non-compliance and a hypothetical month of zero percent compliance do not, in and of themselves, violate the Stipulation or prevent a location/PM from exiting the Stipulation.[2]

Possibility of a Known Universe. Defendants have collected sufficient CGAR data that it appears theoretically possible to determine which location/PMs could exit the Stipulation. This, in turn, would permit this matter to proceed with a known universe of location/PMs that remained under dispute either because the CGAR data fell below the Stipulation's thresholds or because the parties disagreed on the methodology underlying the CGAR collection process. However, this culling process may not be practically possible for any number of reasons not readily apparent to the Court. Accordingly, the Court will ask the parties to discuss the feasibility of this approach at the July 2017 Status Hearing.

---

[2] Plaintiffs argue that the 2017 Order would exclude a hypothetical location/PM from a remedial plan if it had five months at zero percent compliance and then a sixth month at 86% compliance. (Doc. 2042 at 6-7) This is not correct since the 2017 Order excludes any location/PM with three or more consecutive months under the compliance threshold.

1   **IT IS THEREFORE ORDERED** denying Plaintiff's Motion for Reconsideration
2   (Doc. 2042).
3   Dated this 21st day of June, 2017.

David K. Duncan
United States Magistrate Judge