Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
khanger@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | NO. 2:12-cv-00601-DKD <br><br> **DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S $1000 SANCTION ORDER** |

Defendants Charles Ryan and Richard Pratt respectfully move for reconsideration of the Court's June 14, 2017 Order (Dkt. 2124) establishing a $1000 sanction for each instance of noncompliance with nine healthcare performance measures (HCPMs) at specific facilities ("$1000 Sanctions Order").

## I. INTRODUCTION

Following the June 14, 2017 status hearing, the Court issued an Order requiring Defendants to monitor 100% of ADC inmates subject to the affected HCPM and facility for the period of June 15, 2017 to July 12, 2017, and to file a report by July 13, 2017, listing any individual instances of noncompliance for each measure by inmate name and number. (Dkt. 2124.) Following an Order to Show Cause hearing, the Court stated that Defendants will be fined $1000 for each individual instance of noncompliance. (Id.) The HCPMs and facilities at issue are:

**HCPM 13** (Chronic care and psychotropic medication renewals will be completed in such a manner that there is no interruption or lapse in medication) at **Perryville**.

**HCPM 35** (All inmate medications (KOP and DOT) will be transferred with and provided to the inmate or otherwise provided at the receiving prison without interruption) at **Eyman, Florence, Lewis, Perryville, and Tucson**.

**HCPM 40** (Urgent provider referrals are seen by a Medical Provider within 24 hours of the referral) at **Eyman**.

**HCPM 44** (Inmates returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital shall have the hospital's treatment recommendations reviewed and acted upon by a medical provider within 24 hours) at **Eyman**.

**HCPM 45** (On-site diagnostic services will be provided the same day if ordered STAT or urgent, or within 14 calendar days if routine) at **Lewis and Tucson**.

**HCPM 46** (A Medical Provider will review the diagnostic report, including pathology reports, and act upon reports with abnormal values within five calendar days of receiving the report at the prison) at **Douglas, Eyman, Florence, Lewis, Perryville, Phoenix, and Tucson**.

**HCPM 50** (Urgent specialty consultations and urgent specialty diagnostic services will be scheduled and completed within 30 calendar days of the consultation being requested by the provider) at **Florence**.

///

1

**HCPM 52** (Specialty Consultation reports will be reviewed and acted on by a Provider within seven calendar days of receiving the report) at **Florence**.

**HCPM 66** (In an IPC, a Medical Provider encounters will occur at a minimum every 72 hours) at **Florence, Lewis, and Tucson**.

With respect to HCPM 44, the Court has further ordered that Defendants report on **all** ADC inmates subject to that measure at Eyman, not merely those whose files were noncompliant. (Id.)

## II. THE COURT'S ORDER EXCEEDS ITS AUTHORITY UNDER THE STIPULATION.

The Court acknowledged as recently as June 21, 2017, when ruling on Plaintiffs' Motion for Reconsideration as to the definition of substantial noncompliance, that "the Stipulation does not require 100% compliance." (Dkt. 2118 at 3.) Yet, the Court's $1000 Sanctions Order does exactly that. And, in addition to requiring 100% compliance, the Court's $1000 Sanctions Order also requires 100% monitoring. Neither was bargained for by the parties when negotiating the Stipulation, and neither is consistent with the final language of the Stipulation and the longstanding monitoring protocols in Exhibit C to the Stipulation. The Court's $1000 Sanctions Order effectively and impermissibly rewrites the Stipulation.

The Stipulation requires Defendants to "comply with the health care performance measures set forth in Exhibit B." (Dkt. 1185 at 3, ¶ 8.) It then expressly defines what compliance means:

> **a.** [C]ompliance with a particular performance measure identified in Exhibit B at a particular complex shall be defined as follows:
>
> \*   \*   \*
>
> **iii.** After the first twenty four months after the effective date of this Stipulation, meeting or exceeding an eighty-five percent (85%) threshold for the particular performance measure that applies to a specific complex, determined under the procedures set forth in Paragraph 9.

(Dkt. 1185 at 4, ¶ 10.a.iii.) Thus, under the plain language of the Stipulation, Defendants need only maintain an 85% compliance rate to satisfy their obligations under the

2

1  Stipulation from March 2017 forward. Defendants did not agree to—and never would
2  have agreed to—a requirement in the Stipulation that mandates perfection, yet that is
3  precisely what the Court now requires by ordering 100% compliance for the HCPMs.
4  (Exhibit 1: Declaration of Richard Pratt at ¶ 14.)

5  The monitoring protocols further provide that Defendants will randomly select 10
6  applicable records per yard or facility for review each month. For example, the protocol
7  for HCPM 66 states that: "At each IPC, 10 records per month are randomly selected for
8  documentation and timeliness." (Dkt. 1185-1 at 29.) HCPMs 13, 35, 40, 44, 45, 46, 50,
9  and 52 require a random selection of a minimum of 10 applicable records per yard. (Id. at
10 18, 23-26.) Under the plain language of the Stipulation, Defendants need review only 10
11 randomly selected records per yard or facility to satisfy their monitoring obligations under
12 the Stipulation. The Court's Order vastly expands the scope of monitoring agreed upon
13 by the parties in the Stipulation. Defendants did not agree to—and never would have
14 agreed to—100% monitoring. (Ex. 1 at ¶ 13.)

15 The Court only has the "power to enforce this Stipulation through all remedies
16 *provided by law*." (Dkt. 1185 at 13, ¶ 36, emphasis added). The law does not authorize a
17 court to eliminate, rewrite, or add provisions to a contract entered into between parties.
18 *See Olliver/Pilcher Ins., Inc. v. Daniels*, 715 P.2d 1218, 1221 (Ariz. 1986) ("[T]he court
19 cannot create a new agreement for the parties to uphold the contract."); *Isaak v.*
20 *Massachusetts Indem. Life Ins. Co.*, 623 P.2d 11, 14 (Ariz. 1981) ("It is not within the
21 power of this court to revise, modify, alter, extend, or remake a contract to include terms
22 not agreed upon by the parties.") (Internal quotation marks omitted); *Goodman v.*
23 *Newzona Inv. Co.*, 421 P.2d 318, 320 (Ariz. 1966) (court's "duty is confined to the
24 construction or interpretation of the one which the parties have made for themselves").
25 Consequently, the law does not empower the Court to rewrite the Stipulation as it did. For
26 that reason, the Court should rescind its $1000 Sanctions Order.
27 / / /
28 / / /

3

### III. 100% MONITORING CREATES AN UNDUE BURDEN.

Additionally, the potential number of inmate records Defendants will need to review to comply with the Court's $1000 Sanctions Order for the affected HCPMs is staggering and imposes an undue burden for the majority of the affected HCPMs.

HCPM 13 applies to inmates whose chronic care or psychotropic medications are due for renewal. (Dkt. 1185-1 at 18.) There are more than 3500 prescriptions written at Perryville per month, and in an average month, there may be approximately 400 to 450 renewals for chronic care and psychotropic medications. (Ex. 1 at ¶ 19.) The Court's $1000 Sanctions Order requires reviewing every corresponding chart at Perryville to determine if the inmate's prescriptions were timely renewed. Under the Stipulation, by contrast, Defendants are required to review only 10 randomly selected charts per yard for this measure at Perryville. (Dkt. 1185-1 at 18.) Reviewing 10 randomly selected charts currently takes the monitors about an hour per yard. (Ex. 1 at ¶ 18.) Reviewing 100% of applicable medications for this measure at Perryville could easily take 40 to 45 hours. (Id. at ¶ 19.)

HCPM 35 provides that inmates who are transferred to another prison receive their KOP and DOT[1] medications without interruption. (Dkt. 1185-1 at 23.) There are approximately 90,000 transfers of ADC inmates per year statewide, meaning that in an average month, there will be at least 7000-8000 inmate transfers. (Ex. 1 at ¶ 23.) Of these, about 1000 are intersystem transfers that would implicate HCPM 35. (Id.) The Court's $1000 Sanctions Order requires reviewing all of the inmate transfers to Eyman, Florence, Lewis, Perryville, and Tucson, which together comprise the vast majority of all intersystem transfers at ADC, and could easily exceed 700 inmate charts that Defendants must monitor and potentially report on per month. (Id. at ¶¶ 24-25.) Under the Stipulation, by contrast, Defendants are required to review only 10 randomly selected charts per yard for this measure. (Dkt. 1185-1 at 23.) In a typical month, it takes

---

[1] KOP stands for "keep on person," and DOT is "direct observation therapy."

1    Defendants about 20 hours to monitor HCPM 35 at the five facilities subject to the
2    Court's Order employing the Stipulation's methodology. (Ex. 1 at ¶ 26.) It will take over
3    three times that long if Defendants are required to monitor 100% of applicable inmates for
4    PM 35. (Id. at ¶ 27.)

5    HCPM 45 states that on-site diagnostic services, including radiology and lab
6    testing, must be provided the same day if ordered STAT or urgent or within 14 days if
7    routine. (Dkt. 1185-1 at 24.) In an average month, there are about 100 x-rays and 1350
8    labs taken on-site at Lewis and Tucson alone. (Ex. 1 at ¶ 31.) To comply with the
9    Court's $1000 Sanctions Order, Defendants would have to review approximately 1500
10   diagnostic services at Lewis and Tucson to determine timeliness versus the 10 randomly
11   selected charts per yard required by the Stipulation at these two complexes. Reviewing 10
12   randomly selected charts currently takes the monitors about 15 minutes per yard. (Id. at ¶
13   30.) By extrapolation, reviewing 100% of diagnostic services at the two facilities could
14   take 375 hours.

15   HCPM 46 requires that a medical provider review diagnostic reports and act upon
16   reports with abnormal values within five calendar days of receipt. (Dkt. 1185-1 at 25.)
17   The Court's $1000 Sanctions Order applies to Douglas, Eyman, Florence, Lewis,
18   Perryville, Phoenix, and Tucson, which will receive the vast majority of the diagnostic
19   reports statewide in any given month. (Ex. 1 at ¶ 33.) In a typical month, there are
20   approximately 300 x-rays and 5000 labs taken at these seven facilities. (Id. at ¶ 35.)
21   Compliance with the Court's $1000 Sanctions Order will require Defendants to review
22   more than 5000 diagnostic reports received at these facilities and make a clinical
23   determination as to which of these contain abnormal values and whether a provider acted
24   upon them. (Id.) By comparison, the Stipulation requires review of only 10 randomly
25   selected charts per yard at these facilities. (Dkt. 1185-1 at 25.) Reviewing 10 randomly
26   selected charts for HCPM 46 currently takes the monitors about an hour per yard. (Ex. 1
27   at ¶ 34.) Using this as a guide, reviewing 100% of diagnostic reports could take 500
28   hours.

The Court's Order regarding HCPM 66 applies to inmates in the IPCs at Florence, Tucson, and Lewis. (Dkt. 2124 at 3.) While the Stipulation requires monitoring of only 10 randomly selected inmate charts per IPC (Dkt. 1185-1 at 29), the Court's $1000 Sanctions Order requires monitoring all inmates in each of these IPCs to determine if they received a round from a medical provider at least every 72 hours. (Dkt. 2124 at 3.) The number of inmates at each IPC may fluctuate from day to day depending on inmate needs and acuity levels and hospital transfers, but the Florence IPC has 57 beds, Tucson has 66 beds, and Lewis has 13 beds. (Ex. 1 at ¶ 38.) The Court's $1000 Sanctions Order requires Defendants to review more than four times as many records than the Stipulation does for this measure.

The Court has repeatedly lamented the length of time needed to monitor and prepare the CGAR reports each month. Forcing Defendants to engage in 100% monitoring with respect to the nine HCPMs will add an overwhelming amount of additional time to the CGAR reporting process, because the ADC monitoring bureau will either have to halt its regular monitoring duties to comply with the Court's $1000 Sanctions Order on the nine affected HCPMs—which for several of the measures may still be impossible—or risk defying the Court's Order and continue monitoring as it has for the past two years under the Stipulation. The ADC monitoring bureau simply cannot do both.[2] (Ex. 1 at ¶ 40.) Unless the Court rescinds its Order, the likely result will be delayed CGAR reporting. (Id.)

### IV. CONCLUSION

For these reasons, Defendants respectfully request that the Court rescind its June 14, 2017 $1000 Sanctions Order to the extent it requires them to monitor 100% of applicable records and be in 100% compliance with the nine affected performance measures. If the Court nonetheless believes that imposing monetary sanctions for

---

[2] To do both, Defendants would have to hire additional monitors. As the Court has acknowledged, the Stipulation expressly prohibits the Court from ordering Defendants to hire additional staff. (Dkt. 1185 at ¶ 36; Dkt. 1910 at 2.)

noncompliance with the Stipulation is an appropriate remedial plan for the nine affected performance measures, the Court should limit the scope of the potential sanctions to any noncompliance found in the 10 randomly selected files per yard or facility that Defendants must monitor in accordance with the Stipulation protocols for these measures.

DATED this 28th day of June 2017.

                STRUCK WIENEKE & LOVE, P.L.C.


By /s/Daniel P. Struck
   Daniel P. Struck
   Kathleen L. Wieneke
   Rachel Love
   Timothy J. Bojanowski
   Nicholas D. Acedo
   Ashlee B. Fletcher
   Anne M. Orcutt
   Jacob B. Lee
   Kevin R. Hanger
   STRUCK WIENEKE & LOVE, P.L.C.
   3100 West Ray Road, Suite 300
   Chandler, Arizona 85226

   Arizona Attorney General Mark Brnovich
   Office of the Attorney General
   Michael E. Gottfried
   Lucy M. Rand
   Assistant Attorneys General
   1275 W. Washington Street
   Phoenix, Arizona 85007-2926

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Kirstin T. Eidenbach: | kirstin@eidenbachlaw.com |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Victoria Lopez: | vlopez@aclu.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Daniel P. Struck

9