Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
khanger@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | NO. 2:12-cv-00601-DKD <br><br><br> **DEFENDANTS' MOTION TO VACATE EVIDENTIARY HEARING ON HNR BOXES** |

Defendants Charles Ryan and Richard Pratt respectfully move to vacate the July 13, 2017 evidentiary hearing regarding the removal of Health Needs Request (HNR) boxes because: (1) Plaintiffs have not shown any genuine issue with access to healthcare under the new open clinic process; (2) the evidentiary hearing(s) will adversely impact the delivery of healthcare to ADC inmates; (3) there is no requirement under the Stipulation or applicable national standards that Defendants have HNR collection boxes; and (4) if necessary, the Court can receive evidence through alternative means that would not disrupt the delivery of healthcare or pose security concerns.

I. **INTRODUCTION**

During the June 14, 2017 status hearing, Plaintiffs' counsel claimed—without providing any evidence—that removal of the HNR collection boxes would prevent ADC inmates from accessing healthcare. There is simply no support for this bare allegation.

Under the former process, inmates would be seen by nursing—at the earliest—the day after placement of an HNR in the HNR collection box. (Exhibit 1, Declaration of Richard Pratt, at ¶ 43.) A nurse had to travel around to all of the housing units to collect the HNRs each day, bring them to a centralized location, sort them by discipline, triage the medical HNRs, and schedule inmates, and then security had to print and deliver appointment slips alerting inmates that they would be seen at medical the following day. (Id. at ¶ 44.) Inmates would then be brought to medical in a group and still have to wait their turn to see the nurse. (Id. at ¶ 45.) Under this process, inmates were frequently not seen until two days after placement of an HNR in the collection box, resulting in low scores for Performance Measure (PM) 37.[1] (Id.)

Under the new open clinic process, however, inmates are seen the same day they submit their HNRs. (Id. at ¶ 41.) Inmates in minimum and medium custody units[2] report

---

[1] PM 37 requires that an inmate be seen within 24 hours of submission of an HNR for routine medical treatment. (Dkt. 1185-1 at 10.)

[2] Due to security issues, the open clinic process is available only for minimum and medium custody inmates. Maximum and close custody inmates continue to submit HNRs through HNR boxes.

1

1  directly to the health unit with a completed HNR in hand and present it to a nurse rather
2  than dropping the HNR in a box in their housing units and waiting for the HNR to be
3  collected, triaged, and scheduled. (Id. at ¶¶ 41-42.) The fact that their clients are being
4  seen a day or even two days earlier than they would have under the old system should be a
5  cause for celebration for Plaintiffs' counsel, yet they are instead attempting to cast doubt
6  on the process because it results in compliant scores for PM 37.

7  Contrary to Plaintiffs' vague and unsupported assertions, the removal of the HNR
8  boxes does not prevent inmates from accessing healthcare. Plaintiffs and the Court can
9  test this by comparing the number of inmates seen by nursing before and after the removal
10 of the HNR boxes. In addition, there are procedures in place for inmates to access
11 healthcare if they work during open clinic hours. (Id. at ¶ 47.) An inmate worker can
12 choose to miss work if he or she is too sick to go, or the inmate can attend work and be
13 seen in the clinic afterwards. (Id.) Inmates with mobility issues are housed near medical
14 units and are assigned aides who can assist them in going to the open clinics. (Id. at ¶ 48.)
15 Moreover, all inmates with chronic health conditions, including those with mobility
16 issues, are automatically scheduled for chronic care appointments at set intervals without
17 needing to submit an HNR through the open clinic sick call process. (Id. at ¶ 49.)
18 Inmates experiencing medical emergencies or urgent health concerns can alert security
19 who will initiate an ICS and ensure that the inmate is seen by medical without needing to
20 submit an HNR. (Id. at ¶ 50.) Most importantly, even if true, none of these allegations
21 has anything to do with the removal of the HNR boxes.

22 **II.   PLAINTIFFS HAVE NO EVIDENCE TO SUPPORT THEIR VAGUE AND SPECULATIVE ALLEGATIONS REGARDING ACCESS TO CARE**
23 **UNDER THE NEW OPEN CLINIC PROCESS.**

24 Plaintiffs have offered no evidence to support their claims that:
25 (1) removal of the HNR boxes will prevent inmates from accessing health care;
26 (2) inmates who work are unable to access the open clinic process; or (3) inmates are
27 waiting eight hours for healthcare at the open clinics. When pressed by Defendants
28 following the last status hearing as to the source of these allegations, Plaintiffs refused to

provide any, claiming that the inmates feared retribution if identified. (See Exhibit 2.) Defendants responded that they did not need inmate names or numbers, but only specific facilities, dates, and times, so that they could investigate the accuracy of Plaintiffs' claims and make any necessary adjustments to hours of operation. (Id.) Plaintiffs still failed to provide any specifics, stating only that they had been told that an inmate had experienced an eight-hour wait time at Perryville, but providing no details as to when the eight-hour wait allegedly occurred, except to advise that they received the complaint from an inmate at San Carlos sometime in mid-to-late February. (Id.) After a third request for details, Plaintiffs again failed to provide any specifics and merely cited to various minutes from Continuous Quality Improvement (CQI) meetings and a Community Forum Meeting. (Exhibit 3.) Yet, Plaintiffs have informed the Court that they wish to bring inmates to court to testify regarding the open clinic process. (Id.) Plaintiffs cannot have it both ways. Without any evidence to support their allegations, Plaintiffs should not be allowed to waste Defendants' and the Court's time at an evidentiary hearing.

### III. THE EVIDENTIARY HEARING(S) WILL ADVERSELY IMPACT DELIVERY OF HEALTHCARE TO ADC INMATES

The last round of evidentiary hearings took five court days and was highly disruptive to the ADC monitors' ability to perform their monitoring duties. Forcing nurses from each medical unit to travel to court and wait all day in the hallway to testify regarding the hours of operation, process for inmates who work to obtain healthcare at the open clinics, and average wait times will seriously damage the delivery of healthcare to ADC inmates. Nurse lines at each of the medical units will have to be cancelled, and inmates will not be seen in the open clinics on the day(s) of the hearing. (Ex. 1 at ¶ 55.)

Defendants are not at all optimistic that an evidentiary hearing on the HNR boxes and open clinic process can be conducted in a single afternoon. Providing the level of detail requested by the Court and Plaintiffs will require, at a minimum, bringing in nurses from each complex, and likely from each individual health unit, to testify, because the schedules for each health unit vary based on the needs of that unit and the specific inmate

3

populations housed there, and the average wait times will also vary widely based on the size and custody level(s) of the inmate population. (Ex. 1 at ¶¶ 53-54.) This is especially true because Plaintiffs refuse to provide specifics regarding their vague allegations. Moreover, Defendants anticipate that Plaintiffs will seek to unduly expand their cross-examination of the nurses to unrelated matters such as staffing and attempt to attack their credibility as they did with the witnesses who testified at the evidentiary hearings on monitoring. Given Plaintiffs' litigation tactics, the disruption to the provision of healthcare to ADC inmates will stretch well beyond the afternoon currently slated for this testimony.

### IV. THE STIPULATION AND APPLICABLE NATIONAL STANDARDS DO NOT REQUIRE USE OF HNR COLLECTION BOXES.

There is no requirement in the Stipulation that Defendants maintain HNR collection boxes for inmates to access healthcare. Though there are several performance measures that require Defendants to perform an action based on the submission of an HNR—see PMs 36, 37, 98, 102, and 103—none of these measures or the corresponding monitoring protocols in Exhibit C to the Stipulation prescribe any specific method by which Defendants must collect HNRs. (See Dkt. 1185-1 at 23, 35-36.) Likewise, there is nothing in applicable national industry standards, such as the National Correctional Commission on Health Care (NCCHC) or American Correctional Association (ACA) standards, requiring use of boxes for collection of inmate requests for healthcare. (Ex. 1 at ¶ 51.) Indeed, a number of correctional systems in other jurisdictions have recently begun employing open sick call processes similar to ADC's open clinic concept. (Id. at ¶ 52.) The open clinic concept should be applauded for what it is—an innovative approach to improving the delivery of inmate healthcare by harnessing process improvements and efficiencies.

///

///

///

4

### V. THE COURT MAY OBTAIN EVIDENCE REGARDING THE REMOVAL OF HNR BOXES AND ACCESS TO CARE UNDER THE NEW OPEN CLINIC PROCESS THROUGH LESS DISRUPTIVE MEANS.

The Court has already stated that it intends to take a personal tour to witness an open clinic in operation. During the tour, the Court will be able to see first-hand the process by which inmates access healthcare on minimum and medium custody yards. The Court will also be able to speak with staff as to the hours of operations, the process for inmate workers to access healthcare, and the average wait times for that health unit.

Defendants could present the same information for complexes the Court does not visit through Declarations of nurses, directors of nursing (DONs), or facility health administrators (FHAs) who are familiar with the hours of operation, procedures for inmate workers to access the open clinics, and average wait times. This procedure will be far less disruptive to the provision of healthcare to ADC inmates because it will not pull nursing and supervisory personnel away from the open clinics.

If Plaintiffs wish to present any evidence from their clients, they can do so through Declarations. Bringing inmates to court to testify unnecessarily creates numerous security concerns that far outweigh any limited benefit of their live testimony. Defendants cannot address the specific security concerns without knowing which inmates Plaintiffs would like to testify, but, at a minimum, inmates of different custody levels cannot be transported together or placed in the same holding area while awaiting their testimony. (Ex. 1 at ¶ 56.) Likewise, male and female inmates cannot be transported or held together. (Id. at ¶ 57.) There may be additional concerns depending on the custody level of the inmates in question, but Defendants don't know, because Plaintiffs won't tell them who these inmates are. (Id. at ¶ 58.)

### VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court vacate the evidentiary hearing set for July 13, 2017 regarding the removal of the HNR boxes and access to healthcare under the new open clinic process. Plaintiffs' refusal to provide specific information as to these bare allegations seriously prejudices Defendants and calls

into question the validity of their allegations. If the Court nonetheless wishes to receive evidence on these topics, Defendants propose doing so through the Court's on-site tour and Declarations from nurses and staff so as to avoid disruption of the delivery of healthcare to ADC inmates.

DATED this 28th day of June 2017.

                                  STRUCK WIENEKE & LOVE, P.L.C.

                                  By /s/Daniel P. Struck
                                       Daniel P. Struck
                                       Kathleen L. Wieneke
                                       Rachel Love
                                       Timothy J. Bojanowski
                                       Nicholas D. Acedo
                                       Ashlee B. Fletcher
                                       Anne M. Orcutt
                                       Jacob B. Lee
                                       Kevin R. Hanger
                                     STRUCK WIENEKE & LOVE, P.L.C.
                                     3100 West Ray Road, Suite 300
                                     Chandler, Arizona 85226

                                   Arizona Attorney General Mark Brnovich
                                   Office of the Attorney General
                                   Michael E. Gottfried
                                   Lucy M. Rand
                                   Assistant Attorneys General
                                   1275 W. Washington Street
                                   Phoenix, Arizona 85007-2926

                                   *Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com; docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Kirstin T. Eidenbach: | kirstin@eidenbachlaw.com |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org; mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Victoria Lopez: | vlopez@aclu.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Daniel P. Struck