Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
khanger@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DKD<br><br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' PROPOSED LANGUAGE REGARDING PERFORMANCE MEASURES REQUIRING ACTION "EVERY X DAYS"** |

Pursuant to the Court's Order (Dkt. 2124), Defendants Charles Ryan and Richard Pratt submit their proposed Monitor Guide language for performance measures (PMs), which contain language requiring that an action or encounter occur "every X days." Defendants' proposed language, including the portions of Plaintiffs' proposed language that Defendants accept, is submitted in the form of tracked edits to the current draft of Defendants' Monitor Guide for PMs 73, 77, 80, 81, 82, 83, 84, 87, 88, 89, 90, and 92.[1] (*See* Exhibit 1.)

## I.   ELIMINATION OF RECORDS THAT ARE AUTOMATICALLY COMPLIANT

Defendants accept Plaintiffs' proposed language eliminating records that would be automatically compliant because the required action is not yet due, although Defendants maintain that doing so is not a good practice.  As Defendants have previously stated, the focus should be on monitoring compliance for these measures in a way that incentivizes mental health providers and clinicians to quickly provide assessments and treatment plans so that inmates can receive the appropriate level of mental health care as soon as possible. Plaintiffs' proposed language, however, provides the opposite incentive because Corizon will not get credit for any actions performed earlier than the "every X day" interval stated in the applicable performance measure.  Thus, rather than seeing an inmate within a few days of receiving a new mental health score, Corizon is incentivized to have its mental health providers wait until just before the expiration of the 30, 60, 90, or 180-day interval to provide the required mental health care so that they can focus attention on the inmates they would receive credit for.  The point of the Stipulation should be to improve the delivery of healthcare to inmates, not to create incentives to delay it.

## II.   USING START DATES TO COMPARE "EVERY X DAYS" ACTIONS

Defendants are pleased that Plaintiffs now agree that Defendants can monitor actions that must take place "every X days" by comparing the time elapsed between the

---

[1] Defendants believe that the same approach should be applied to PMs 85 and 86 so that all mental health PMs are handled consistently.

1

start date/last day of the audit month and one contact. Defendants do not agree, however, with Plaintiffs' proposed language that allows for calculating the time between the start date/last day of the audit month and the one contact only if the record is noncompliant. The Court's interest in obtaining an accurate picture of compliance so that it can focus its resources on measures that are truly noncompliant is not furthered by Plaintiffs' approach of including only those records that have already been reviewed and found to be noncompliant and removing any records that have already been found compliant. Defendants' proposed language allows for both compliant and noncompliant records to be included in the sample.

## III. A NUMBER OF PLAINTIFFS' PROPOSED EDITS ARE NOT CONSISTENT WITH THE STIPULATION PROTOCOLS AND PRIOR AGREEMENTS BETWEEN THE PARTIES.

A number of Plaintiffs' proposed edits effectively rewrite the Stipulation protocols upon which the parties agreed. As Plaintiffs are aware, the Stipulation and its protocols can only be changed through a writing signed by all parties, and Defendants do not agree to these changes. (See Dkt. 1185 at ¶ 40: "This is an integrated agreement and may not be altered or modified, except by a writing signed by all representatives of all parties at the time of modification.") Yet, Plaintiffs' proposed edits to the samples for PMs 81, 83, 88, and 90 are contrary to the plain language of the Stipulation.

The Stipulation protocol for PM 81 provides that "[t]he records reviewed for performance measure #80 will also be reviewed for compliance if they are on medications." (Dkt. 1185-1 at 32.) By contrast, Plaintiffs' proposed language for PM 81 adds additional records that are not contemplated by the plain language of the Stipulation. (See Dkt. 2128-1 at 11: "The records reviewed for HC PM #80 will also be reviewed for compliance if they are on medications. If the prisoner has been in ADC custody, or has been classified MH-3A, for less than 90 days, that record is excluded from the sample and another record is randomly drawn. This process is repeated until a total of ten records have been drawn.") The parties agreed that Defendants would review the same subset of records for both measures, and there is no provision requiring Defendants to pull additional records to

2

reach a sample of 10 records if any are excluded as automatically compliant.  The Stipulation protocols for PMs 83, 88, and 90 are identical to the protocol for PM 81, and the same logic applies to these PMs.[2]

A number of Plaintiffs' new edits also refute prior agreements between the parties as to the language of the Monitor Guide.  For example, Plaintiffs have previously agreed to the language of PM 77 but now propose drastic changes to the methodology for this measure.  Plaintiffs have not proposed these changes until more than two years into the monitoring period under the Stipulation, despite numerous meet and confers and corresponding revisions to the Monitor Guide.  The Monitor Guide was created on March 15, 2016 and revised on July 22, 2016, October 5, 2016, November 5, 2016, November 6, 2016, November 11, 2016, January 10, 2017, January 18, 2017, February 10, 2017, February 24, 2017, and March 7, 2017.  Plaintiffs had ample opportunity to offer their new language at the time of any of these negotiated revisions, but they failed to do so.  Plaintiffs also failed to include their new language in the chart they filed with the Court in January 2017 regarding disputes over the language of the Monitor Guide for the Monitor Guide hearings (see Dkt. 1890-1 at 338-351) and failed to identify any issues with these measures when asked by the Court in May 2017 which measures in the Monitor Guide were still in dispute (see Transcript of May 10, 2017 Status Hearing at 781:14-19).

Defendants have relied on the approved language in the Monitor Guide when monitoring these measures in the intervening months.  Plaintiffs should not be permitted to continually revise the monitoring methodology and then insist that Defendants either have to re-audit using the new methodology or disregard all compliance findings using the prior methodology.  If Plaintiffs are allowed to do so, monitoring will never cease under the Stipulation.

---

[2] Likewise, PM 86 requires Defendants to review the charts selected for PM 85.

**IV.   A NUMBER OF PLAINTIFFS' PROPOSED EDITS WILL NOT CHANGE COMPLIANCE RATES BUT DO DRASTICALLY INCREASE THE TIME NEEDED TO AUDIT**

Additionally, many of the changes now requested by Plaintiffs will not actually change Defendants' compliance scores, but will make it much more difficult and time-consuming for the monitors to audit these measures.  Defendants propose that if after three months of monitoring compliance utilizing the new methodology, Defendants' compliance rates for these measures have not fallen below the required compliance threshold of 85%, they be given credit for compliance findings under the old methodology without having to re-audit.

DATED this 6th day of July 2017.

STRUCK WIENEKE & LOVE, P.L.C.


By /s/Daniel P. Struck
        Daniel P. Struck
        Kathleen L. Wieneke
        Rachel Love
        Timothy J. Bojanowski
        Nicholas D. Acedo
        Ashlee B. Fletcher
        Anne M. Orcutt
        Jacob B. Lee
        Kevin R. Hanger
        STRUCK WIENEKE & LOVE, P.L.C.
        3100 West Ray Road, Suite 300
        Chandler, Arizona  85226

        Arizona Attorney General Mark Brnovich
        Office of the Attorney General
        Michael E. Gottfried
        Lucy M. Rand
        Assistant Attorneys General
        1275 W. Washington Street
        Phoenix, Arizona 85007-2926

        *Attorneys for Defendants*

4

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alison Hardy:                ahardy@prisonlaw.com

Amelia M. Gerlicher:    agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com

Amy B. Fettig:              afettig@npp-aclu.org

Asim Varma:                avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

Caroline N. Mitchell:    cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

Corene T. Kendrick:      ckendrick@prisonlaw.com; edegraff@prisonlaw.com

Daniel Clayton Barr:    DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

David Cyrus Fathi:        dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

Donald Specter:            dspecter@prisonlaw.com

Jessica Pari Jansepar Ross:   jross@azdisabilitylaw.org

John Howard Gray:      jhgray@perkinscoie.com; slawson@perkinscoie.com

John Laurens Wilkes:    jlwilkes@jonesday.com, dkkerr@jonesday.com

Jose de Jesus Rico:        jrico@azdisabilitylaw.org

Kathleen E. Brody:        kbrody@acluaz.org

Kirstin T. Eidenbach:    kirstin@eidenbachlaw.com

Maya Abela                  mabela@azdisabilitylaw.org

Rose Daly-Rooney:        rdalyrooney@azdisabilitylaw.org

Sara Norman:                snorman@prisonlaw.com

Sarah Eve Kader:          skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org

Rita K. Lomio:              rlomio@prisonlaw.com

Victoria Lopez:            vlopez@aclu.org

5

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Daniel P. Struck