1  Kathleen E. Brody (Bar No. 026331)
   **ACLU FOUNDATION OF ARIZONA**
2  3707 North 7th Street, Suite 235
   Phoenix, Arizona 85013
3  Telephone: (602) 650-1854
   Email: kbrody@acluaz.org
4
   *Attorneys for Plaintiffs Shawn Jensen, Stephen*
5  *Swartz, Sonia Rodriguez, Christina Verduzco,*
   *Jackie Thomas, Jeremy Smith, Robert Gamez,*
6  *Maryanne Chisholm, Desiree Licci, Joseph*
   *Hefner, Joshua Polson, and Charlotte Wells, on*
7  *behalf of themselves and all others similarly*
   *situated*
8  **[ADDITIONAL COUNSEL LISTED ON**
   **SIGNATURE PAGE]**
9
   Sarah Kader (Bar No. 027147)
10 Asim Dietrich (Bar No. 027927)
   **ARIZONA CENTER FOR DISABILITY LAW**
11 5025 East Washington Street, Suite 202
   Phoenix, Arizona 85034
12 Telephone: (602) 274-6287
   Email: skader@azdisabilitylaw.org
13         adietrich@azdisabilitylaw.org

14 *Attorneys for Plaintiff Arizona Center for Disability*
   *Law*
15 **[ADDITIONAL COUNSEL LISTED ON**
   **SIGNATURE PAGE]**
16

17              UNITED STATES DISTRICT COURT

18                    DISTRICT OF ARIZONA

19 Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-DKD
   Dustin Brislan; Sonia Rodriguez; Christina
20 Verduzco; Jackie Thomas; Jeremy Smith; Robert
   Gamez; Maryanne Chisholm; Desiree Licci; Joseph      **PLAINTIFFS' REPLY IN**
21 Hefner; Joshua Polson; and Charlotte Wells, on       **SUPPORT OF PLAINTIFFS'**
   behalf of themselves and all others similarly       **PROPOSED LANGUAGE**
22 situated; and Arizona Center for Disability Law,    **REGARDING**
                                                       **PERFORMANCE**
23                 Plaintiffs,                         **MEASURES REQUIRING**
         v.                                            **ACTION "EVERY X DAYS"**
24                                                     **(DOC. 2128)**
   Charles Ryan, Director, Arizona Department of
25 Corrections; and Richard Pratt, Interim Division
   Director, Division of Health Services, Arizona
26 Department of Corrections, in their official
   capacities,
27
                   Defendants.
28

LEGAL136190981.1

**INTRODUCTION**

Defendants now concede that records that cannot possibly be found noncompliant with a given Performance Measure (PM) must be excluded from the sample that is used to prepare the monthly CGAR reports. However, as explained below, the language Defendants propose for some Performance Measures fails to accomplish this, and in other cases Defendants' proposed language will continue to result in misleadingly inflated compliance scores. Accordingly, the Court should order Defendants to adopt Plaintiffs' proposed language. *See* Doc. 2128-1.[1]

**I.  A RECORD WITH ONLY A SINGLE CONTACT CANNOT BE COUNTED AS COMPLIANT.**

The Court has repeatedly ruled that for Performance Measures requiring that a mental health contact or other action occur "every X days," a finding of compliance requires measuring the interval between two such contacts and ascertaining that it is X days or less:

> In keeping with the plain language of the Stipulation, the Court concludes that an action that must occur every X days means that, in essence, a clock starts on the day an action occurs and that clock runs for X days. Before the end of that clock X days later, the action must occur again.

[Doc. 1673 at 4:6-9]

> [T]he monitor must look back two visits. The oldest reviewed visit is the baseline and will be used to determine if the most recent visit was timely.

[Doc. 1833 at 1-2]  The Court has since repeated this requirement several times. [*See, e.g.*, 6/14/17 Tr. at 52:5-8 ("[THE COURT:] So I know you have heard my previous expressions of doubt about how it can be that something you are supposed to do every X number of days can be ascertained with respect to only looking at one contact"); *id* at 50:23-24 ("THE COURT: How can you answer the question every 30 days when there's

---

[1] Defendants make passing reference to PM 85 and 86. [Doc. 2150 at 2 n.1, at 4 n.2] But the Court has already directed Defendants to adopt new monitoring language for these Performance Measures; they are thus not currently before the Court. [*See* 6/14/17 Tr. at 112:21-113:18; Doc. 2160 at 4:4-19]

only been one contact[?]"); *id.* at 59:13-18 ("Well, as you all have heard me say before, I do not see how it is that it's helpful for me to have a performance measure defined by something that doesn't give me what that performance measure is supposed to focus on, and that is whether or not there's this regularized performance of a service")] Indeed, Defendants' own Monitor Guide incorporates the requirement to measure the interval between two contacts. [*See, e.g.*, Doc. 2047-1 at 114 (PM 77) ("Review eOMIS, in the Mental Health tab, for the two most recent treatment plans. Determine whether the two treatment plans were 90 days (or 12 months if applicable) or less apart")]

Thus, contrary to Defendants' unsupported assertion (Doc. 2150 at 2-3), a record with only a single contact can never be compliant with the requirement that contacts occur "every X days." In some cases such a record must be counted as noncompliant; in others it will be counted as non-applicable—that is, neither compliant nor noncompliant.

As an illustrative example, Performance Measure 80 requires that "MH-3A prisoners shall be seen a minimum of every 30 days by a mental health clinician." [Doc. 1185-1 at 13] If a patient has been classified as MH-3A for one year, but her record shows only one contact by a clinician, that record is clearly noncompliant. By contrast, consider a patient who was first classified as MH-3A on January 15 and had a single clinician contact on February 10. For the month of February, that record cannot be compliant, because it contains only a single contact. Nor is it noncompliant, as there is no 30-day period in which the patient has not had a clinician contact. Thus, the record must be counted as neither compliant nor noncompliant, and excluded when calculating the percentage compliance rate. Plaintiffs' proposed language accomplishes this (*see* Doc. 2128-1 at 9). Defendants' language, by contrast, impermissibly counts a record with only a single contact as compliant (*see* Doc. 2150-1 at 8). The Court should adopt Plaintiffs' language.

## II. PLAINTIFFS' PROPOSED LANGUAGE IS ENTIRELY CONSISTENT WITH THE STIPULATION, WHILE DEFENDANTS' PROPOSED LANGUAGE CONTINUES TO INCLUDE RECORDS THAT CANNOT POSSIBLY BE FOUND NONCOMPLIANT.

Defendants allege that Plaintiffs' proposed language for some Performance Measures is "not consistent with the Stipulation protocols." [Doc. 2150 at 3:10-11] Defendants are wrong.

**PM 81, 83, 88, and 90**

The Stipulation protocol for each of these Performance Measures provides for review of the records that were reviewed for the immediately preceding Performance Measure. For example, Performance Measure 81 requires that "MH-3A prisoners who are prescribed psychotropic medications shall be seen a minimum of every 90 days by a mental health provider." [Doc. 1185-1 at 32] The protocol for PM 81 provides that "[t]he records reviewed for performance measure #80 will also be reviewed for compliance if they are on medications." [*Id.*]

Defendants concede that records that cannot possibly be found noncompliant must be excluded from the sample, and additional records drawn. For PM 80, they have agreed to Plaintiffs' proposed language: "If the prisoner has been in ADC custody, or has been classified MH-3A, for less than 30 days, that record is excluded from the sample and another record is randomly drawn. This process is repeated until a total of ten records have been drawn." [*See* Doc. 2128-1 at 9; Doc. 2150-1 at 8] Because any record in which the patient has been classified MH-3A for less than 90 days cannot possibly be found noncompliant with PM 81, those records must similarly be excluded, and additional records randomly drawn, before the records used for PM 80 can be used for PM 81. As explained by Dr. Haney:

> Whenever it is determined that one or more of the randomly selected cases is inapplicable (that is, should not be considered as part of the universe that is being sampled), it is necessary to return to the universe of cases and randomly select another case to include in the sample (rather than to simply discard the inappropriate cases and reduce the sample size). That is because, depending on how many discarded cases there are,

>the remaining sample could be unrepresentative of the properly defined universe.

[Doc. 2048, ¶ 12] Defendants have not submitted contrary expert evidence, or indeed challenged Dr. Haney's expert opinion in any way. And they fail to explain why they concede that this step must be carried out with respect to PM 80, but not with PM 81.[2]

Defendants' proposed language for PM 81, 83, 88, and 90 includes in the sample records that cannot possibly be found noncompliant, a result that the Court has repeatedly condemned and that Defendants now concede is impermissible. The Court should adopt Plaintiffs' language instead.[3]

**PM 77**

This Performance Measure requires that "Mental health treatment plans shall be updated a minimum of every 90 days for MH-3A, MH-4, and MH-5 prisoners, and a minimum of every 12 months for all other MH-3 prisoners." [Doc. 1185-1 at 13] Plaintiffs' proposed language for drawing the sample for PM 77 is identical to the language set forth in the Stipulation protocol: "An AIMS report will be run for all MH-3 and above prisoners at each Complex. 10 records will be reviewed per yard for compliance with the treatment plan time frames." [Doc. 1185-1 at 31; *compare* Doc. 2128-1 at 7]

---

[2] As Dr. Haney explains, failure to draw additional records to replace those that must be excluded would result in an impermissibly small and therefore unrepresentative sample. The sample size for PM 80 is a maximum of ten records per yard. [Doc. 1185-1 at 31] Excluding those records in which the patient has been classified MH-3A for less than 90 days, and not drawing additional replacement records, could result in a sample size for PM 81 of 4, 2, or even 0. Defendants' advocacy of this result is curious, given that they have recently argued that small sample sizes are unfair *to them*. [*See, e.g.*, 6/14/17 Tr. at 10:6-9 ("MR. BOJANOWSKI: It seems as though the problem may be the number of files being pulled. So what we would like to do and intend to do, I think, is change our source documents to try and increase the sample size"); *id.* at 10:13-14 ("MR. BOJANOWSKI: I think the problem is when you have, say, four files and you miss two, you are at 50 percent")]

[3] While Plaintiffs have used PM 81 as an example, the issues presented by PM 83, 88, and 90 are substantially identical. In each case, Defendants' proposed language will result in records that cannot possibly be found noncompliant being included in the sample.

LEGAL136190981.1                      -4-

Several months ago Defendants, without consulting Plaintiffs or the Court, changed this language to "[r]eview all inmates who were identified for HC PM ## 73, 80, 82, 84, 85, 87, 89, and 92." [*See* Doc. 2150-1 at 6]  Contrary to Defendants' assertion, Plaintiffs have repeatedly protested this unilateral rewriting of the Stipulation, and insisted upon adherence to the language set forth in the Stipulation protocol.  [*See* Declaration of David C. Fathi, Exs. 1-3]

As with PM 81, 83, 88, and 90, Defendants' proposed language for PM 77 will result in the inclusion of records that cannot possibly be found noncompliant.  For example, the records reviewed for PM 73 ("All MH-3 minor prisoners shall be seen by a licensed mental health clinician a minimum of every 30 days") will include records of patients who have been classified as MH-3 for less than 12 months, and therefore cannot possibly be found noncompliant with PM 77 ("Mental health treatment plans shall be updated a minimum of … every 12 months for all other MH-3 prisoners").  The Court should adopt Plaintiffs' language, which ensures that such records are excluded from the sample.

### III. DEFENDANTS SHOULD NOT BE PERMITTED TO DELETE THE REQUIREMENT THAT THE MONITOR DOCUMENT HER FINDINGS.

Defendants' proposed language also deletes the Monitor Guide's current requirement that the monitor record the dates of the contacts she finds to be compliant. [*See, e.g.*, Doc. 2150-1 at 8 (deleting "the date of the most recent contact will be recorded")]  Plaintiffs object to this deletion, which would make verifying the accuracy of the CGAR reports significantly more difficult.

### IV. DEFENDANTS SHOULD NOT BE REWARDED FOR DISREGARDING THIS COURT'S ORDERS.

Citing no evidence whatsoever, Defendants claim that "many of the changes now requested by Plaintiffs will not actually change Defendants' compliance scores." [Doc. 2150 at 5]  This is absurd.  For months Defendants have disregarded this Court's repeated orders that evaluating compliance with these Performance Measures requires

1 measuring the interval between two contacts. [*See* Doc. 1673 at 4:6-9; Doc. 1833 at 1-2]
2 They have routinely included in their samples records that could not possibly be found
3 noncompliant. They have failed to count as noncompliant even records that had *none* of
4 the contacts required by the relevant Performance Measure. [*See* Doc. 2046 at 39-41;
5 Doc. 2087 at 12-13] To suggest that all of these monitoring defects, taken together, had
6 no effect on the resulting compliance scores defies belief. The expert declaration of
7 Dr. Haney explains how these practices falsely inflate Defendants' compliance scores, and
8 that declaration is entirely uncontradicted. [*See* Doc. 2048, ¶ 11; Doc. 2090, ¶ 9]

9 The Court has already made clear that Defendants will not receive credit for scores
10 calculated using defective methodology. If Defendants are confident that they would have
11 received compliant scores using the correct methodology, they are free to demonstrate that
12 to the Court by re-auditing past months using that methodology. [*See* Doc. 1951 at 1:26-
13 2:1 ("if Defendants want to persuade the Court that a given Performance Measures [sic] at
14 a given facility is compliant with the Stipulation, then Defendants will have to show that
15 this PM/facility was compliant under the Final Monitoring Guide's procedures")][4]

## CONCLUSION

17 The Court should order Defendants to adopt the modifications to the Monitor
18 Guide proposed by Plaintiffs. [*See* Doc. 2128-1]

19 . . .
20 . . .
21 . . .

---

[4] Defendants also assert, again with no evidence or even explanation, that Plaintiffs' proposed language "will make it much more difficult and time-consuming for the monitors to audit these measures." [Doc. 2150 at 5] To the extent that Defendants suggest this is a reason they should be excused from employing proper monitoring methodology, that argument must be rejected. Defendants agreed in the Stipulation to monitor compliance with the Performance Measures. [*See* Docs. 1185, 1185-1] Their vague and entirely unsupported allegations of burden fall far short of an impossibility defense, which requires a showing that (1) performance would be "extremely costly or onerous," *Taylor-Edwards Warehouse &Transfer Co. v. Burlington N. Inc.*, 715 F.2d 1330, 1336 (9th Cir. 1983), and (2) "the events which [a party] claims frustrated his performance were not reasonably foreseeable at the time of contracting." *Ocean Air Tradeways, Inc. v. Arkay Realty Corp.*, 480 F.2d 1112, 1117 (9th Cir. 1973).

| | | |
|---|---|---|
| 1 | Dated:  July 13, 2017 | **ACLU NATIONAL PRISON PROJECT** |
| 2 | | |
| 3 | | By:   s/ David C. Fathi |
| | | David C. Fathi (Wash. 24893)* |
| | | Amy Fettig (D.C. 484883)** |
| 4 | | Victoria Lopez (Ill. 6275388)* |
| | | 915 15th Street N.W., 7th Floor |
| 5 | | Washington, D.C. 20005 |
| | | Telephone:  (202) 548-6603 |
| 6 | | Email:    dfathi@aclu.org |
| | | afettig@aclu.org |
| 7 | | vlopez@aclu.org |

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
agerlicher@perkinscoie.com
jhgray@perkinscoie.com

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:    kbrody@acluaz.org

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
ahardy@prisonlaw.com
snorman@prisonlaw.com
ckendrick@prisonlaw.com
rlomio@prisonlaw.com

*Admitted *pro hac vice*

| | |
|---|---|
| 1 | Kirstin T. Eidenbach (Bar No. 027341) |
| 2 | **EIDENBACH LAW, PLLC**<br>P. O. Box 91398 |
| 3 | Tucson, Arizona 85752<br>Telephone: (520) 477-1475 |
| 4 | Email:   kirstin@eidenbachlaw.com |
| 5 | Caroline Mitchell (Cal. 143124)*<br>**JONES DAY** |
| 6 | 555 California Street, 26th Floor<br>San Francisco, California 94104 |
| 7 | Telephone: (415) 875-5712<br>Email:   cnmitchell@jonesday.com |
| 8 | *Admitted *pro hac vice* |
| 9 | John Laurens Wilkes (Tex. 24053548)* |
| 10 | **JONES DAY**<br>717 Texas Street |
| 11 | Houston, Texas 77002<br>Telephone: (832) 239-3939 |
| 12 | Email:   jlwilkes@jonesday.com |
| 13 | *Admitted *pro hac vice* |
| 14 | *Attorneys for Plaintiffs Shawn Jensen;*<br>*Stephen Swartz; Sonia Rodriguez; Christina* |
| 15 | *Verduzco; Jackie Thomas; Jeremy Smith;*<br>*Robert Gamez; Maryanne Chisholm;* |
| 16 | *Desiree Licci; Joseph Hefner; Joshua*<br>*Polson; and Charlotte Wells, on behalf of* |
| 17 | *themselves and all others similarly situated* |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

LEGAL136190981.1                                  -8-

**ARIZONA CENTER FOR DISABILITY LAW**

By: <u>s/ Maya Abela</u>
    Sarah Kader (Bar No. 027147)
    Asim Dietrich (Bar No. 027927)
    5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
    Telephone: (602) 274-6287
    Email:  skader@azdisabilitylaw.org
            adietrich@azdisabilitylaw.org

    Rose A. Daly-Rooney (Bar No. 015690)
    J.J. Rico (Bar No. 021292)
    Jessica Jansepar Ross (Bar No. 030553)
    Maya Abela (Bar No. 027232)
    **ARIZONA CENTER FOR DISABILITY LAW**
    177 North Church Avenue, Suite 800
    Tucson, Arizona 85701
    Telephone: (520) 327-9547
    Email:
      rdalyrooney@azdisabilitylaw.org
        jrico@azdisabilitylaw.org
        jross@azdisabilitylaw.org
        mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

# CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2017, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
Kevin R. Hanger
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
khanger@swlfirm.com

*Attorneys for Defendants*

                                    s/ D. Freouf