## Index of Exhibits to Declaration
## of David C. Fathi

**Exhibit 1**  Excerpt of an April 15, 2016 letter sent by Plaintiffs to Defendants, discussing Defendants' methodology for monitoring Performance Measure 77

**Exhibit 2**  Excerpt of an October 27, 2016 letter sent by Plaintiffs to Defendants, discussing Defendants' methodology for monitoring Performance Measure 77

**Exhibit 3**  Excerpt of a November 9, 2016 letter sent by Plaintiffs to Defendants, discussing Defendants' methodology for monitoring Performance Measure 77

# EXHIBIT 1



**PRISON LAW OFFICE**
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Rana Anabtawi
Rebekah Evenson
Steven Fama
Penny Godbold
Alison Hardy
Corene Kendrick
Kelly Knapp
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

April 15, 2016

Ms. Lucy Rand, Assistant Attorney General
Office of the Arizona Attorney General
1275 West Washington Street
Phoenix, AZ 85007-2926
Lucy.Rand@azag.gov

RE: *Parsons v. Ryan*, CV-12-0601-DMD
Agreements Reached on 4/12/16 Negotiation Call
Outstanding Issues/Questions With Remaining Performance Measures

Dear Ms. Rand,

I write to memorialize our discussion on the April 12 call. Additionally, we agreed that I would send you an omnibus letter covering any questions we have regarding the remaining health care performance measures and the monitoring guide. You said you would gather the information and respond in writing, and if needed, by phone. We request the written response by April 25, 2016. Please let me know if any of our comments or questions are unclear. Additionally, Amy Fettig will be responding to you separately with regard to the maximum custody performance measures.

I. **Issues from the April 12 Call:**

You stated that you would provide us the <u>list of diagnoses that fall under "psychotic disorders"</u> that was discussed on the April 5 call. You also stated that you would provide a <u>response to our proposed methodology for PM 95</u>, which we discussed on April 5, and that was again presented on page 4 of my April 6, 2016 letter. You provided us with a document listing all the types of health care encounters, which explained the language in some of the measures referring to finding encounters in multiple locations. Thank you for the explanation.

1) **PM 102** (routine dental care wait times no more than 90 days from the date the HNR was received) and **PM 103** (urgent [dental] care weight times no more than 72 hours from the date the HNR was received).

23) **PM 63** (In an IPC, an initial health assessment will be completed by a Registered Nurse on the date of admission), **PM 64** (In an IPC, a Medical Provider evaluation and plan will occur within the next business day after admission), **PM 65** (In an IPC, a written history and physical examination will be completed by a medical provider within 72 hours of admission), **PM 68** (In an IPC, Inmate health records will include admission orders and documentation of care and treatment given), **PM 69** (In an IPC, nursing care plans will be reviewed weekly documented with a date and signature)

The Methodology for these Infirmary performance measures says that the first ten patients admitted to the IPC in the audited month will have their files reviewed. The Stipulation requires that the sample be randomly selected, and is not limited to patients admitted in the earlier part of the month. The Methodology section of these five performance measures needs to be changed to reflect the language of the Stipulation.

24) **PM 76** (If the initial mental health assessment of a prisoner during initial intake is not performed by licensed mental health staff, the prisoner shall be seen by a mental health clinician within fourteen days of his or her arrival into ADC.)

The measure requires that certain prisoners be "seen" by a mental health clinician "within fourteen days of his or her arrival into ADC." In the Manual, the final bullet under "Methodology" instructs the monitor to "determine whether the inmate had an additional contact by a mental health clinician within fourteen days of the inmate's arrival." Please confirm that only contacts meeting the Stipulation's definition of "seen" are counted as satisfying this measure, and that group and cell-front contacts are not counted.

25) **PM 77** (Mental health treatment plans shall be updated a minimum of every 90 days for MH-3A, MH-4, and MH-5 prisoners, and a minimum of every 12 months for all other MH-3 prisoners)

The Stipulation requires that "An AIMS report will be run for all MH-3 and above prisoners at each Complex. 10 records will be reviewed per yard[.]" The Manual, however, states the source of records as "Review all inmates who were identified for HC PM ## 73, 80, 82, 84, 86, 87, 89 and 92." Please explain why you are using this record selection method rather than that specified in the Stipulation. The Methodology section of this performance measure needs to be changed to reflect the language of the Stipulation.

38) **PM 99** (Peer reviews shall be conducted as set forth in the MHTM (rev. 4/18/14), Chapter 1, Section 3.0.)

The CGAR question is inaccurate, as it refers to "the current MHTM," while the Stipulation requires reference to "the MHTM (rev. 4/18/14), Chapter 1, Section 3.0." Furthermore, Chapter 1, Section 3.0 requires annual peer reviews of "all mental health staff" and is not limited to only psychiatrists, psych NPs, and psychologists.

If you have any questions or need clarification on any of our comments, please email or call me. We look forward to your response.

Sincerely yours,

*/s/ Corene Kendrick*

Corene Kendrick, Staff Attorney

cc:    Counsel of Record

# EXHIBIT 2

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT



AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

October 27, 2016

**BY ELECTRONIC MAIL ONLY**

Lucy Rand
Office of the Arizona Attorney General
1275 West Washington Street
Phoenix, AZ 85007-2926
Lucy.Rand@azag.gov

Dan Struck
Struck, Wieneke & Love, PLC
3100 West Ray Road
Chandler, AZ 85226
dstruck@swlfirm.com

   *Re:*  *Parsons v. Ryan*

Dear Counsel:

We write to address various issues of monitoring methodology.

**Compliance with the Court's orders**

Defendants are not yet in compliance with the Court's written and oral orders on monitoring methodology. *See* Doc. 1673; Transcript of October 5, 2016 status hearing, at 10 ("The stipulation I don't think allows for a cell-front encounter for the situation of the inmate who is on suicide watch"). Defendants' 10/21/16 Monitor Guide continues to direct the monitor to count group contacts (PM 80, 82, 86) and suicide watch checks (PM 78, 80, 82, 86, 87, 89, 91, 92, 94, 98) as satisfying the requirement that the patient be "seen," contrary to the Court's orders. Moreover, the Guide continues to instruct the monitor to count a file as compliant with the requirement that something occur "every X days" as long as it has occurred a single time. **Please let us know when Defendants intend to comply with the Court's orders regarding monitoring methodology, and which month's CGARs will be the first to reflect that compliance. Please also explain how the changes in monitoring methodology required by the Court's orders are being communicated to the monitors.**

**Specific performance measures**

Thank you for your two letters of October 14 (one from Dan Struck and one from Lucy Rand) in response to ours of April 15. We have reviewed these letters in light of the 10/21/16 version of the Monitor Guide, although we have

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

not yet been provided the four appendices that are listed in the Guide's Table of Contents.

The discussion below is necessarily based on the current version of the Guide. To the extent that the Guide changes, we may have additional comments regarding its compliance or noncompliance with the requirements of the Stipulation.

**PM 76** (*If the initial mental health assessment of a prisoner during initial intake is not performed by licensed mental health staff, the prisoner shall be seen by a mental health clinician within fourteen days of his or her arrival into ADC*).

The 10/21/16 Manual continues to instruct the monitor to "determine if the inmate had an additional contact by a mental health clinician within fourteen (14) days of their [sic] arrival." Our April 15 letter asked that you confirm "that group and cell-front contacts are not counted." Lucy's October 14 letter states only that "Monitors count cell-front contacts as 'seen' when an inmate refuses to come out of his/her cell for a contact." Please confirm that cell-front contacts are not otherwise counted, and that group contacts are not counted.

**PM 77** (*Mental health treatment plans shall be updated a minimum of every 90 days for MH-3A, MH-4, and MH-5 prisoners, and a minimum of every 12 months for all other MH-3 prisoners*).

The Stipulation Protocol requires that "An AIMS report will be run for all MH-3 and above prisoners at each Complex. 10 records will be reviewed per yard[.]" However, the 10/21/16 Manual instructs the monitor to "[r]eview all inmates who were identified for HC PMs #73, #80, #82, #84, #85, #86, #87, #89, and #92." This is not the random sample of all MH-3 and above prisoners for which Plaintiffs bargained. As we said in our April 15 letter, the Methodology section of this performance measure must be changed to reflect the language of the Stipulation.

**PM 78** (*All mental health treatment plan updates shall be done after a face-to-face clinical encounter between the prisoner and the mental health provider or mental health clinician*).

The sampling defect described under PM 77 also applies to this measure. In addition, the Stipulation Protocol requires that "[e]ach record that is reviewed for treatment plan compliance will also be reviewed for a face-to-face SOAPE note dated the same date." By contrast, the 10/21/16 Guide provides that "[a]ll records reviewed for HC PM #77 will be reviewed *if the treatment plan was*

2

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Paragraph 15 applies whenever "a prisoner who is taking psychotropic medication suffers a heat intolerance reaction." The interaction between heat and psychotropic medications can result in impaired cognitive functioning, so that many patients do not realize they are suffering from heat-related illness. *See* Doc. 1104-2 at 47-48 (declaration of Pablo Stewart, M.D.). Others may know they are feeling ill but not be aware the cause. *Id.* For these reasons, it is not sufficient (and not consistent with the language of the Stipulation) to limit the scope of this requirement to patients who affirmatively report a heat intolerance reaction.

An additional problem is the statement that "Defendants are unsure how long it will take to implement the procedures described above." Doc. 1703 at 4. It is unclear whether this statement applies only to the requirements of Paragraph 15 or to all three Stipulation requirements, but in either case, more than eighteen months into the life of the Stipulation, it is not sufficient for Defendants to say that they will comply at some point in the indeterminate future. As stated in our October 18 letter, we plan to raise these issues with the Court.

\* \* \*

We look forward to speaking with you at 10:00 a.m. Arizona time on November 8. Please provide a written response to this letter in advance of that call.

Very truly yours,

David C. Fathi

cc: All counsel

# EXHIBIT 3



LEGAL DEPARTMENT
NATIONAL PRISON PROJECT

AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

November 9, 2016

**BY ELECTRONIC MAIL ONLY**

Timothy J. Bojanowski
Struck, Wieneke & Love, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@swlfirm.com

    Re: *Parsons v. Ryan*

Dear Counsel:

We write to summarize our telephone call of November 8, 2016, regarding monitoring methodology.

**General**

We established that the parties agree that the only time a cellfront contact will be counted as satisfying the Stipulation's requirement that a patient be "seen" is when (1) the patient refuses to leave her cell for the encounter, or (2) there is a hard lockdown. *See* Doc. 1745. You agreed to add language to the Monitor Guide to this effect.

**PM 13** (Chronic care and psychotropic medication renewals will be completed in a manner such that there is no interruption or lapse in medication.)

  The methodology as written in the 11/6/16 revision is satisfactory.

**PM 14** (Any refill for a chronic care or psychotropic medication requested by a prisoner between three and seven business days prior to the prescription running out will be completed in a manner such that there is no interruption or lapse in medication.)

  Defendants will delete the phrase "…that information may be communicated to the Monitor who shall retain discretion regarding compliance" from the seventh bullet point in the Methodology section.

**PM 16** (Perpetual inventory medication logs will be maintained on each yard.)

  Plaintiffs disagree with Defendants' unilateral decision to change the methodology for this measure to break each record down into six components

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

lack of consultant's availability shall be excluded from the review." A person on the call (Ms. Campbell?) indicated that the intent was to include the scenario where a provider is specifically requesting a specialty appointment to occur in a time period outside the requirements, for example, a provider requesting a six-month follow up with a specialist. This is analogous to the situation in PM 45 when a provider specifically orders a lab test to be done far into the future. Defendants stated that they would change this bullet point on PM 50 and 51 to mirror the language on PM 45.

**PM 66** (In an IPC, a Medical Provider encounters will occur at a minimum every 72 hours); **PM 67** (In an IPC, Registered nurses will conduct and document an assessment at least once every shift. Graveyard shift assessments can be welfare checks); and **PM 69** (In an IPC, nursing care plans will be reviewed weekly documented with a date and signature.)

Since we last met, Defendants unilaterally changed their methodology for PMs 66, 67, and 69, which deal with the frequency of provider and nursing encounters for prisoners housed in the infirmary. Rather than marking a medical record as noncompliant if any of these encounters did not occur with the timeliness required by the Measure, Defendants now propose to measure compliance by calculating the number of encounters that should have occurred, and calculating what percent of those encounters happened.

<u>The parties are at an impasse regarding the change in methodological approach.</u>

**PM 77** (Mental health treatment plans shall be updated a minimum of every 90 days for MH-3A, MH-4, and MH-5 prisoners, and a minimum of every 12 months for all other MH-3 prisoners.)

We expressed our position that your sampling methodology is inconsistent with the requirements of the Stipulation, which requires that "An AIMS report will be run for all MH-3 and above prisoners at each Complex." We believe that your methodology (1) over-selects for MH-4 and MH-5 patients, who receive more attention from mental health staff, thereby inflating compliance scores; and (2) excludes MH-3E patients, unless they are either juveniles or in max custody. You agreed to submit proposed language to include MH-3E patients.

**PM 78** (All mental health treatment plan updates shall be done after a face-to-face clinical encounter between the prisoner and the mental health provider or mental health clinician.)

5

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

be seen by a mental health provider, mental health clinician, or psychiatric registered nurse between 24 and 72 hours after discontinuation, between seven and ten days after discontinuation, and between 21 and 24 days after discontinuation of the watch.)

We informed you that we do not agree to your unilateral changes to the monitoring methodology for these PMs, nor to your similar changes to the methodology for various medical and isolation performance measures. We will raise this issue with Judge Duncan.

We also discussed the importance of clinicians and other mental health staff maintaining clear records of patient encounters, so that it is clear from eOMIS (1) where the encounter took place (cellfront or in a confidential, out-of-cell setting), and (2) if it took place at cellfront, which of the two preconditions for a cellfront encounter applied. We noted that our November 7 filing contains several examples of encounters that listed the setting as "clinic," but actually took place at cellfront based on the clinician's notes. You stated that you are taking measures to address these concerns.

**Dental Performance Measures**

Mr. Bojanowski indicated that Defendants and counsel still have not spoken with Dr. Chu about the dental performance measures, **PM 100** and **101**. Counsel could provide no update on when this meeting will occur or if Defendants will be able to provide a response prior to the November 15 filing date. See the 10/19/16 letter from Corene Kendrick to Lucy Rand for a summary of Plaintiffs' concerns.

We look forward to receiving your proposed language and other outstanding responses on the PMs discussed above by close of business on Friday, November 11.

Very truly yours,

David C. Fathi

cc:     All counsel

8