Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
khanger@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DKD<br><br><br>**DEFENDANTS' NOTICE REGARDING MONITORING METHODOLOGY FOR PERFORMANCE MEASURES 85 AND 86 (DKT. 2160)** |

Defendants Charles Ryan and Richard Pratt provide the following Notice regarding the monitoring methodology for Performance Measures (PMs) 85 and 86 in response to Plaintiffs' July 10, 2017 Notice (Dkt. 2160) and the discussions during the June 14, 2017 and July 13, 2017 status hearings.  In addition to the documents cited by the Court for review in its Minute Entry regarding the July 13, 2017 status hearing (Dkt. 2185 at 2), Defendants request that the Court also review their prior briefing on these measures (Dkt. 1782 at 13-14 and Exhibit A) when ruling on this issue.

**I.   THE COURT'S ANNOUNCEMENT OF THE NEW METHODOLOGY FOR PM 85 AND PM 86.**

At the June 14, 2017 status hearing, the Court announced the following changes to the monitoring methodology for PMs 85 and 86:

> With respect to Performance Measures 85 and 86, there really wasn't a similar substantive objection that I could ferret out to the plaintiffs' proposed language. And so I would adopt the plaintiffs' language. And that is, with 85, MH-3D prisoners at a given unit. If any of them discontinued medications less than 30 days previously, that record is excluded from the sample and another record is randomly drawn. See Document 2048, Paragraph 12.
>
> Once these -- once there are 10 records of MH-3D prisoners that have discontinued medications more than 30 days ago, those records are assessed to determine whether the patient was seen within 30 days of discontinuing medications.
>
> And then with respect to Performance Measure 86, the final sample of 10 records used for Performance Measure 85 is the starting point for evaluating compliance with Performance Measure 86. If any of these prisoners discontinued medications less than 90 days previously, that record is excluded from the sample and another record is randomly drawn. Once there are 10 records of MH-3D prisoners who have discontinued medications more than 90 days ago, those records are assessed to determine whether the patient was seen within 90 days of discontinuing medications.

1

(Tr. of 6/14/17 Status Hearing at 112:21-113:18.)  After reading the new methodology into the record, the Court stated that Defendants would have an opportunity to raise any concerns with the Court's new methodology at the next monthly status hearing in July (Id. at 113:19-21), which Defendants did through the testimony of Dr. Taylor.

## II. DEFENDANTS MONITORED CONSISTENT WITH PLAINTIFFS' REQUESTED METHODOLOGY FOR PM 85 STARTING IN DECEMBER 2016.

In their July 10, 2017 Notice, Plaintiffs assert that Defendants were counting records that could not possibly be found noncompliant in the compliance scores for the January 2017 CGARs at Perryville and the April 2017 CGARs at Tucson for PM 85. (Dkt. 2160 at 3.)  Plaintiffs are mistaken.  Defendants did not count these records as compliant.  Instead, these records were marked as "0" and not counted in the compliance scores, which is easily apparent from a review of Plaintiffs' Exhibits 1 and 2.

Plaintiffs also assert that records that cannot possibly be found noncompliant take the place of records that could possibly be noncompliant, thus inflating Defendants' compliance scores.  (Dkt. 2160 at 3.)  This is also wrong.  Defendants included **all available applicable** files for PM 85 at Perryville for the January 2017 CGARs and at Tucson for the April 2017 CGARs.  Based on the language of the Monitor Guide that Plaintiffs dictated for PM 85, there were generally fewer than 10 applicable records available for review at most yards for this measure.  The records marked as "0" for PM 85 were solely included in the monitor's worksheets as placeholders for files to be reviewed under PM 86 and did not bump out other available records for PM 85.

## III. THERE IS NO APPRECIABLE DIFFERENCE IN COMPLIANCE SCORES FOR PM 85 WHEN USING THE NEW METHODOLOGY.

The new methodology includes all MH-3Ds, rather than only those due a contact in the monitored month.  Defendants began monitoring PM 85 in accordance with the Court's proposed language from the June 14, 2017 status hearing for the May 2017 CGARs at Lewis and Tucson.  The ADC monitors had already completed monitoring for PM 85 at all other complexes prior to the Court's announcement of the new methodology

2

and consequently could not have employed the new methodology when monitoring there. The June 2017 CGARs will reflect the new methodology at all monitored complexes.

Employing the new methodology has not appreciably changed the compliance scores. For PM 85, Lewis scored 96% in the April 2017 CGARs and 93% in the May 2017 CGARs. And, in fact, under the new methodology, Tucson increased its score from 89% in the April 2017 CGARs to 93% in the May 2017 CGARs. As Defendants anticipated, Plaintiffs' claim that including files in which an inmate was seen prior to the expiration of the 30-day deadline artificially inflates Defendants' compliance for these measures was much ado about nothing.

### IV. **PLAINTIFFS' DEMAND THAT DEFENDANTS DRAW ADDITIONAL FILES FOR PM 86 IS NOT CONSISTENT WITH THE STIPULATION AND POSES AN UNJUSTIFIED MONITORING BURDEN WITHOUT ANY CORRESPONDING GAIN IN INFORMATION FOR THE COURT.**

Plaintiffs now insist that if any files are excluded for PM 86 because the inmate discontinued medications less than 90 days prior to the audit, Defendants must draw additional files for PM 86 to reach at least 10 files per yard. As Defendants stated during the July 13, 2017 hearing, this effectively rewrites the Stipulation protocol for PM 86. As Plaintiffs are aware, the Stipulation and its protocols can only be changed through a writing signed by all parties, and Defendants do not agree to these changes. (See Dkt. 1185 at ¶ 40: "This is an integrated agreement and may not be altered or modified, except by a writing signed by all representatives of all parties at the time of modification.") Yet, Plaintiffs' demand that Defendants draw additional files for PM 86 is directly contrary to the plain language of the Stipulation protocol for PM 86, which states: "The Records reviewed for Performance Measure #85 will also be reviewed for compliance with this performance measure." (Dkt. 1185-1 at 32.) For this reason alone, the Court should not require Defendants to draw additional files for PM 86.

Moreover, drawing additional files for PM 86 poses a burden on the ADC monitors that was not contemplated or agreed upon during the Stipulation negotiations. Defendants specifically agreed to monitor the same records for PMs 85 and 86 so that the monitors

3

1  could pull and use the same set of records to answer multiple CGAR questions. The ADC
2  mental health monitors spend significant time each month looking up start dates for when
3  inmates receive a mental health subcode (3-A, 3-B, 3-C, or 3-D) prior to beginning their
4  audits. For the May 2017 CGARs, it took the mental health monitors four business days
5  to manually look up 1505 start dates at the beginning of the audit month. The look-up
6  process is manual and requires the monitors click through numerous screens in AIMS to
7  determine the start date. The monitors have to look up the start dates again each month
8  because subcode scores can change. The data for the 10 randomly selected inmates for
9  each measure is then placed in an Excel spreadsheet which automatically calculates
10 compliance rates and has built-in checks to ensure that the monitors are correctly
11 reporting the time elapsed between data points. If the monitors have to draw additional
12 files for PM 86 in the middle of the audit, they will have to go back to square one and
13 look up additional start dates before they can continue with the audit. Adding a variable
14 number of extra files will also require substantial modifications to the monthly
15 worksheets, which will disrupt the Excel formulas currently employed and could cause
16 inadvertent errors in reporting compliance.

17    Requiring significant additional monitoring time will not have a corresponding
18 payoff in terms of the information provided to the Court on Defendants' compliance with
19 PM 86. Choosing additional files for PM 86 is likely to increase, rather than decrease,
20 Defendants' compliance rates because with a larger sample, any noncompliance findings
21 will be diluted.

22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

DATED this 21ˢᵗ day of July 2017.

         STRUCK WIENEKE & LOVE, P.L.C.

        By /s/Timothy J. Bojanowski
         Daniel P. Struck
         Kathleen L. Wieneke
         Rachel Love
         Timothy J. Bojanowski
         Nicholas D. Acedo
         Ashlee B. Fletcher
         Anne M. Orcutt
         Jacob B. Lee
         Kevin R. Hanger
         STRUCK WIENEKE & LOVE, P.L.C.
         3100 West Ray Road, Suite 300
         Chandler, Arizona  85226

         Arizona Attorney General Mark Brnovich
         Office of the Attorney General
         Michael E. Gottfried
         Lucy M. Rand
         Assistant Attorneys General
         1275 W. Washington Street
         Phoenix, Arizona 85007-2926

         *Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Kirstin T. Eidenbach: | kirstin@eidenbachlaw.com |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Victoria Lopez: | vlopez@aclu.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

                                         /s/Timothy J. Bojanowski