WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Antonio Parsons, et al., | No. CV-12-00601-PHX-DKD |
| Plaintiffs, | **ORDER** |
| v. | |
| Charles L Ryan, et al., | |
| Defendants. | |

At the Court's most recent monthly Status Hearing on July 14, 2017, Plaintiffs presented four inmate witnesses to provide testimony regarding their experience with the open clinic process, removal of HNR (Health Needs Request) boxes from open clinic facilities, and the provision of healthcare at Arizona Department of Corrections prisons. Other inmates provided written statements concerning the same. During each inmate's testimony, the Court addressed the witness' reservations about testifying due to a fear of potential retaliation by prison staff. Each inmate had testified about a fear of retaliation and the Court directed them to inform their counsel if prison officials took retaliatory action. On Thursday July 20, Plaintiffs filed a Notice regarding harassment and retaliation regarding class members. (Doc. 2190) The Notice recounts specific alleged retaliatory allegations including:

- The Deputy Warden at Florence-South Unit telling class member witness Ronald Oyenik that he [Oyenik] "accused me of taking all of your property," when no such allegation had been made. This conversation was

loud and could be heard by other inmates.

- Mr. Oyenik also reported that inmates in ADA dorms were informed that if they had difficulty ambulating to the open clinic's new location that they would be moved to buildings closer to the clinic, which are not ADA-accessible.  Because the majority of inmates did not want to move, presumably because they are not ADA-compliant, the DW and the ADW required them to sign waivers that they accepted their current housing location.

- Mr. Oyenik is concerned that prison staff members, by attempting to forcibly move some inmates, are attempting to cast blame on him for these moves.  Mr. Oyenik also is concerned that his medication will not be renewed when it expires in the near future.

- Angela Ashworth also reported events that she felt were retaliatory, including her bunkmate Donna Scheid's transfer to another cell—with an inmate known to be a gang member with violent tendencies and disciplinary infractions—after Ms. Scheid wrote a statement that was admitted as evidence at the July 14 Hearing.

- Ms. Ashworth was also approached by an officer who indicated that he spoke about Ms. Ashworth's June 5, 2017 incident and indicated that "Sergeant Coleman and I have discussed it and we agreed that we saw nothing wrong with Ashworth."  Ms. Ashworth interpreted this statement as a decision to "close rank" and would deny the multiple witness reports that, indeed, there was something wrong with Ms. Ashworth and yet no action was taken.

- Ms. Ashworth further reported that a pregnant inmate was moved into her cell after her bunkmate was transferred.  The effect of this move is that on particularly hot nights when the pregnant inmate is moved to sleep in an air-conditioned room, Ms. Ashworth is alone.  Twice prison officials have

entered her cell at night to "take the temperature" when that had never happened previously. Ms. Ashworth feels vulnerable being left alone in her cell at night and, because her prison job is at night, is concerned that leaving her cell empty on those days exposes her to loss of property or false allegations of possessing contraband.

The Court held an emergency hearing to discuss the allegations on July 21, 2017. In correspondence with Plaintiffs' Counsel and at the hearing, Defendants disputed Mr. Oyenik's conversation with the Deputy Warden and the motives behind staff members' actions. However, Defendants do not deny that Ms. Ashworth's bunkmate was moved, that she is sleeping alone when her pregnant bunkmate is sleeping elsewhere, or that ADA inmates in the Florence South Unit signed waivers of their right to move closer to the open clinic.

All of these developments strongly suggest retaliatory action after the affected inmates provided testimony or written statements at the July 14 Hearing. Cell transfers, loss of property, and spreading potentially damaging information to other inmates are all adverse actions. Moreover, the testifying inmates plainly engaged in protected conduct by either testifying or submitting written statements to the Court.

As discussed at the hearing, the temporal proximity between their protected conduct and the adverse actions are too close in time to reasonably be viewed as anything other than retaliatory. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent"); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989) (Retaliatory motive can be inferred from the timing and nature of the events); *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 285-86 (1977). The Court further finds that these actions "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envtl. Center v. Mendocino Co.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

Finally, none of the justifications Defendants presented to the Court established a legitimate penological interest. Indeed, with respect to Ms. Scheid's cell transfer,

Defendants offered no rationale why she was selected to accommodate a third party inmate's need for a cell reassignment.

In short, the Court expressed its belief that no retaliation would flow from the inmates' testimony at the July 14 Hearing. It does not appear that message reached prison staff. The Court will therefore grant Plaintiffs' request for a Court order formally directing that no retaliatory actions take place.

**IT IS THEREFORE ORDERED** directing Defendants and Counsel for Defendants that no actions be taken that harass, intimidate, or otherwise retaliate against the witnesses who have provided the Court information, either via oral testimony or written statements. This prohibition includes actions which could reasonably be viewed as having a chilling effect on witness testimony by utilizing group punishments, or actions against other prisoners who could in turn blame or target the witnesses.

**IT IS FURTHER ORDERED** that Counsel for Defendants provide a written declaration within 7 days of the date of this Order describing all steps they took to communicate the Court's verbal orders of July 14, 2017, regarding retaliation to their clients, and to ensure that witnesses' freedom to communicate with the Court is protected

**IT IS FURTHER OREDERED** that Perryville staff immediately return Ms. Scheid to her previous cell and to not enter Ms. Ashworth's cell at night when she is alone or away working unless it is pursuant to a legitimate correctional objective.

**IT IS FINALLY ORDERED GRANTING** the Defendants' request that the Court set this matter for an evidentiary hearing after the parties confer and present their availability to the Court.

Dated this 25th day of July, 2017.

_____
David K. Duncan
United States Magistrate Judge