Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen
Swartz, Sonia Rodriguez, Christina Verduzco,
Jackie Thomas, Jeremy Smith, Robert Gamez,
Maryanne Chisholm, Desiree Licci, Joseph
Hefner, Joshua Polson, and Charlotte Wells, on
behalf of themselves and all others similarly
situated*

**[ADDITIONAL COUNSEL LISTED ON
SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
          adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability
Law*

**[ADDITIONAL COUNSEL LISTED ON
SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | No. CV 12-00601-PHX-DKD<br><br><br>**PLAINTIFFS' REPLY RE NOTICE REGARDING MONITORING METHODOLOGY FOR PERFORMANCE MEASURE 85 (DOC. 2160)** |

LEGAL136334103.1

The methodology for Performance Measures (PM) 85 and 86 has been exhaustively briefed and argued, and the Court has ruled. [*See* Doc. 2160 at 4] That should end the matter. Unfortunately, Defendants' "Notice Regarding Monitoring Methodology for Performance Measures 85 and 86" (Doc. 2197) requires Plaintiffs, yet again, to correct Defendants' factual misrepresentations and unsupported allegations.[1]

## I.   DEFENDANTS INCLUDED IN THE SAMPLE FOR PM 85 FOR JANUARY 2017 RECORDS THAT COULD NOT POSSIBLY BE FOUND NONCOMPLIANT.

Defendants' own CGAR report clearly shows that the January 2017 sample for PM 85 at Perryville included seven records that could not possibly be found noncompliant, because the patient had only discontinued medication that same month. [*See* Doc. 2161, ¶¶ 2-4, Ex. 1] Defendants' rejoinder that they "did not count these records as compliant" (Doc. 2197 at 3:10-11) is beside the point. The sample size for PM 85 is finite, consisting of a maximum of ten records per unit, and every record that cannot possibly be found noncompliant that is included in the sample takes the place of a record that could be found noncompliant, and thus falsely inflates Defendants' compliance scores. [*See* Doc. 2048 (Declaration of Craig Haney, Ph.D., J.D. ("Haney Decl.")), ¶ 11 ("To include such cases in the sample would misleadingly inflate the compliance figures that are calculated based on the sample")] For example, in January 2017 at Perryville, Defendants calculated a compliance rate of 95.83%, based on 23 out of 24 records being compliant. [*See* Doc. 2161, Ex. 1] If the seven records that could not possibly be found noncompliant were replaced by seven noncompliant records, Defendants' compliance rate would have been 74.19%.[2]

---

[1] As is their wont, Defendants make numerous factual allegations with no support from declarations, documents, or indeed any evidence at all. *See Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) ("the arguments and statements of counsel are not evidence").

[2] Defendants claim that they included "all available applicable files for PM 85 at Perryville for the January 2017 CGARs." [Doc. 2197 at 3] They provide no evidence for this claim, and there is no way for Plaintiffs or the Court to verify it. But even assuming it is true at this single facility for this single month, Defendants notably make no such claim

1       Defendants claim that "Plaintiffs assert that Defendants were counting records that

2  could not possibly be found noncompliant in the compliance scores for … the April 2017

3  CGARs at Tucson for PM 85."  [Doc. 2197 at 3]  This is false; Plaintiffs said nothing

4  whatsoever about PM 85 at Tucson.  Rather, Plaintiffs showed that the April 2017 sample

5  for *PM 86* at Tucson included 58 records that could not possibly be found noncompliant,

6  many of which were affirmatively counted as compliant, yielding a (spurious) compliance

7  rate of 100%.  [Doc. 2160 at 3:13-16; 4 n.3][3]

8
## II.     FOR PM 86, DEFENDANTS MUST RANDOMLY DRAW ADDITIONAL RECORDS TO REPLACE THOSE THAT ARE EXCLUDED BECAUSE THEY CANNOT POSSIBLY BE FOUND NONCOMPLIANT.
9

10      For PM 86, Defendants object to the portion of the Court's order requiring them to

11  randomly draw an additional record when a record is excluded from the sample because it

12  cannot possibly be found noncompliant:

13          And then with respect to Performance Measure 86, the final
            sample of 10 records used for Performance Measure 85 is the
14          starting point for evaluating compliance with Performance
            Measure 86.   If any of these prisoners discontinued
15          medications less than 90 days previously, that record is
            excluded from the sample and another record is randomly
16          drawn.  Once there are 10 records of MH-3D prisoners who
            have discontinued medications more than 90 days ago, those
17          records are assessed to determine whether the patient was seen
            within 90 days of discontinuing medications.
18

19  [Doc. 2160 at 4:14-18]

20      As the Court correctly pointed out at the July 13 hearing, "it's a principle of

21  sampling that that's what you do, that you then return and draw another file for one that

22  cannot possibly be non-compliant."  [7/13/17 Tr. at 54:11-13]  As explained by Professor

23  Haney:

24

25  for any other facility during the many months they included in the sample for PM 85 records that could not possibly be found noncompliant.

26  [3] Defendants assert that "there is no appreciable difference in compliance scores for PM 85 when using the new methodology."  [Doc. 2197 at 3:22-23]  The Court should

27  disregard this claim, which is based on CGAR data from two facilities for a single month—data that, at the time of Defendants' filing, had not been provided to Plaintiffs or

28  the Court.

> Whenever it is determined that one or more of the randomly selected cases is inapplicable (that is, should not be considered as part of the universe that is being sampled), it is necessary to return to the universe of cases and randomly select another case to include in the sample (rather than to simply discard the inappropriate cases and reduce the sample size).  That is because, depending on how many discarded cases there are, the remaining sample could be unrepresentative of the properly defined universe.

[Doc. 2048, ¶ 12][4]

Defendants' objections to the Court's order are groundless.  They first object that it is contrary to the Stipulation's provision that "[t]he Records reviewed for Performance Measure #85 will also be reviewed for compliance with [PM 86]."  [Doc. 1185-1 at 32]  Defendants are wrong.  The Court's order explicitly states that "with respect to Performance Measure 86, the final sample of 10 records used for Performance Measure 85 is the starting point for evaluating compliance with Performance Measure 86."  [Doc. 2160 at 4:14-15]  It goes on to require that records that cannot possibly be found noncompliant be excluded and additional records randomly drawn, for the reasons explained in Professor Haney's uncontradicted declaration.  The Court's order is entirely consistent with the Stipulation.[5]

Defendants' next argument is that drawing additional records for this single Performance Measure imposes "a burden on the ADC monitors."  [Doc. 2197 at 4:26][6]  Like Defendants' other assertions, this claim is supported by no evidence whatsoever, and as the Court has properly noted, it is implausible on its face.  [*See* 7/13/17 Tr. at 50:7-9

---

[4] The Court observed at the July 13 hearing: "Again, I have to say, I haven't had an opposition to Dr. Haney's affidavit. I haven't had a countervailing affidavit to it. And it just seems to make sense to me and also seems to have to kind of background that would suggest that he is speaking from authority." [7/13/17 Tr. at 68:5-9]

[5] Indeed, Defendants have agreed to perform this step for other PMs. [*See, e.g.*, Doc. 2150-1 at 8 (PM 80) ("If the prisoner has been in ADC custody, or has been classified MH-3A, for less than 30 days, that record is excluded from the sample and another record is randomly drawn. This process is repeated until a total of ten records have been drawn")]

[6] When Defendants made this argument at the July 13 hearing, the Court observed, "And I have to say that part of what Dr. Taylor [said] didn't really make sense to me, so I have to go back and make sure that I do understand what you were saying." [7/13/17 Tr. at 57:6-8]

("THE COURT: Is it really as enormous as you describe, that task? Because it doesn't seem to be that it would be that situation")]

To the extent that Defendants suggest that this "burden" should excuse them from compliance with the Court's order, that argument must be rejected. Defendants agreed in the Stipulation to monitor compliance with the Performance Measures. [*See* Docs. 1185, 1185-1] Their vague and entirely unsupported allegations of burden fall far short of an impossibility defense, which requires a showing that (1) performance would be "extremely costly or onerous," *Taylor-Edwards Warehouse &Transfer Co. v. Burlington N. Inc.*, 715 F.2d 1330, 1336 (9th Cir. 1983), and (2) "the events which [a party] claims frustrated his performance were not reasonably foreseeable at the time of contracting." *Ocean Air Tradeways, Inc. v. Arkay Realty Corp.*, 480 F.2d 1112, 1117 (9th Cir. 1973).

Defendants' final and most bizarre argument is that "[c]hoosing additional files for PM 86 is likely to increase, rather than decrease, Defendants' compliance rates because with a larger sample, any noncompliance findings will be diluted." [Doc. 2197 at 5:19-21] This contention reveals Defendants' failure to understand basic principles of sampling methodology. The statement would be true only if drawing a larger sample always increased the number of compliant files, while the number of noncompliant files remained fixed. By contrast, in a truly random sample, increasing the sample size will increase both the number of compliant files and the number of noncompliant files, in approximate proportion to the presence of each in the larger universe from which the sample is drawn. [*See* Doc. 2048 (Haney Decl.), ¶ 5 ("random sampling techniques ensure that no one case from the universe of cases has any higher probability or likelihood of being included in the sample than any other")] The only reliable effect of an increased sample size is increased accuracy; it is an elementary principle of sampling methodology that larger samples are more representative of the parent population than smaller samples. *See* Biau, Kerneis, and Porcher, "Statistics in Brief: The Importance of Sample Size in the Planning and Interpretation of Medical Research," *Clinical Orthopaedics and Related*

1   *Research* Volume 466(9):2282-88, September 2008 ("the larger the tested sample size is,

2   the better the precision").[7]

3   **CONCLUSION**

4           Defendants have offered no persuasive reason for the Court to reconsider its

5   order on the monitoring methodology for PM 85 and 86.  That order should stand.

6   Dated:  July 26, 2017                          **ACLU NATIONAL PRISON PROJECT**

7

8                                         By:   s/ David C. Fathi
                                               David C. Fathi (Wash. 24893)*
                                               Amy Fettig (D.C. 484883)**
9                                              Victoria Lopez (Ill. 6275388)*
                                               915 15th Street N.W., 7th Floor
10                                             Washington, D.C. 20005
                                               Telephone:  (202) 548-6603
11                                             Email:    dfathi@aclu.org
                                                         afettig@aclu.org
12                                                       vlopez@aclu.org

13                                             *Admitted *pro hac vice*.  Not admitted
                                                in DC; practice limited to federal
14                                              courts.
                                               **Admitted *pro hac vice*

15                                             Daniel C. Barr (Bar No. 010149)
16                                             Amelia M. Gerlicher (Bar No. 023966)
                                               John H. Gray (Bar No. 028107)
17                                             **PERKINS COIE LLP**
                                               2901 N. Central Avenue, Suite 2000
18                                             Phoenix, Arizona 85012
                                               Telephone:  (602) 351-8000
19                                             Email:    dbarr@perkinscoie.com
                                                         agerlicher@perkinscoie.com
20                                                       jhgray@perkinscoie.com

21

22

23

24

25

26

27

28           [7]  Available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2493004/.

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
              ahardy@prisonlaw.com
              snorman@prisonlaw.com
              ckendrick@prisonlaw.com
              rlomio@prisonlaw.com

*Admitted *pro hac vice*

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, PLLC**
P. O. Box 91398
Tucson, Arizona 85752
Telephone:  (520) 477-1475
Email:    kirstin@eidenbachlaw.com

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:    kbrody@acluaz.org

Caroline Mitchell (Cal. 143124)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:    cnmitchell@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:    jlwilkes@jonesday.com

*Admitted *pro hac vice*

1

*Attorneys for Plaintiffs Shawn Jensen;*
*Stephen Swartz; Sonia Rodriguez; Christina*
*Verduzco; Jackie Thomas; Jeremy Smith;*
*Robert Gamez; Maryanne Chisholm;*
*Desiree Licci; Joseph Hefner; Joshua*
*Polson; and Charlotte Wells, on behalf of*
*themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY**
**LAW**

By:   s/ Maya Abela
      Sarah Kader (Bar No. 027147)
      Asim Dietrich (Bar No. 027927)
      5025 East Washington Street, Suite 202
      Phoenix, Arizona 85034
      Telephone:  (602) 274-6287
      Email:    skader@azdisabilitylaw.org
                adietrich@azdisabilitylaw.org

      Rose A. Daly-Rooney (Bar No. 015690)
      J.J. Rico (Bar No. 021292)
      Jessica Jansepar Ross (Bar No. 030553)
      Maya Abela (Bar No. 027232)
      **ARIZONA CENTER FOR**
      **DISABILITY LAW**
      177 North Church Avenue, Suite 800
      Tucson, Arizona 85701
      Telephone:  (520) 327-9547
      Email:
        rdalyrooney@azdisabilitylaw.org
              jrico@azdisabilitylaw.org
              jross@azdisabilitylaw.org
              mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability*
*Law*

1

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2017, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
Kevin R. Hanger
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
khanger@swlfirm.com

*Attorneys for Defendants*

s/ D. Freouf