**Index of Exhibits to Plaintiffs' Proposed Agenda for the
August 9, 2017 Status Conference**

| | |
|---|---|
| Exhibit 1 | CV of Mr. Braxton "B.J." Millar |
| Exhibit 2 | 7/28/17 Letter from C. Kendrick to T. Bojanowski |
| Exhibit 3 | 7/28/17 Letter from A. Orcutt to C. Kendrick and D. Fathi |
| Exhibit 4 | 8/3/17 Letter from C. Kendrick to T. Bojanowski |
| Exhibit 5 | 8/1/17 Letter from D. Fathi to L. Rand |

# Exhibit 1



Advisory Board Consulting
& Management



**Braxton Millar, MBA**

*Vice President*
*25+ Years of Experience*
*Salt Lake City, UT*
millarb@advisory.com
**801.455.6092**

Braxton "B.J." Millar, MBA, brings more than 25 years of health care experience to his role as an Advisory Board Vice President specializing in value-based care. Mr. Millar serves Advisory Board clients with Accountable Care Organization and Clinical Integration program formation, program evaluation, care transformation strategy, population health management, payer strategy development, provider alignment and readiness assessments. Mr. Millar's versatile skillset combines analytics, communications, process design and strategy to provide exceptional project management and delivery to Advisory Board's clients.

Prior to joining Advisory Board, Mr. Millar served as Health Care Director of Navigant Consulting in Chicago. His responsibilities included managing project teams on physician enterprise assessment and implementation projects to effectively identify real value opportunities and produce sustainable results without creating artificial dependencies.

Before joining Navigant Consulting, Mr. Millar served Quorum Health Resources Consulting, located in Brentwood, Tennessee, as Director of Physician Services. In this role, Mr. Millar led the development and delivery of physician-focused consulting solutions to address the economic, operational and strategic needs of hospitals and their physician partners.

In addition to the above roles, Mr. Millar's consulting career has includes work in hospital and health system projects, correctional health care, and data and information technology solutions. He has worked in several regional consulting firms, including Equation Consulting and Phase 2 Consulting in Salt Lake City, as well as managing his own firms at Vertex Healthcare Consulting in Salt Lake City and Logix Consulting in Dallas. He began his career in health care as a surgical practice administrator at Salt Lake Cardiovascular and Thoracic Surgery P.C. Mr. Millar earned a Master of Business Administration, a Bachelor of Arts in philosophy and an associate degree in Spanish and Portuguese from Brigham Young University in Provo, Utah.

## PROFESSIONAL EXPERIENCE

**Vice President – Value Based Care, Advisory Board Consulting & Management**     2013 - Present

**Director – Healthcare - Physician Services, Navigant Consulting**     2011 - 2013

As a Director in the Navigant Healthcare leads project teams on physician enterprise assessment and implementation projects to identify real value opportunities and produce sustainable results without creating artificial dependencies.  Areas of focus include: physician practice management, physician and hospital alignment, clinical operations, and provider compensation modeling, operations benchmarking, analytical tool development, data driven management reporting, physician practice administration, clinical labor modeling & forecasting, operational redesign & process reengineering.

**Director Physician Services, QHR Consulting**                                    2010 - 2011

Director of QHR's Physician Services Group, led the development and delivery of physician focused consulting solutions that addressed the economic, operational, and strategic needs of hospitals and their physician partners. Assisted hospital clients with practice assessments, performance benchmarking, hospital and physician contracting, productivity improvement, and physician enterprise strategies addressing reform and the competitive marketplace.

**Senior Associate, Equation Consulting**                                          2009

Equation Consulting specializes in the measurement, planning and improvement of the physician economic enterprise. Mr. Millar's expertise was focused on physician practice management, clinical labor utilization, project management and electronic medical records implementation

**Managing Senior Partner, Vertex Healthcare Consulting, LLC**                     2007 - 2008

A specialty consulting firm with clientele including: hospitals, public health, correctional healthcare, and physicians. Responsibilities included business development, project management, client relations, operations management & budgeting, compensation & benefits. Clients included the California Department of Corrections, the Maricopa County Jail and Stanford University Hospital and Clinics.

**Senior Managing Consultant, Phase 2 Consulting**                                 2002 - 2007

A healthcare management and economic consulting firm specializing in strategic planning, operational improvement, financial turnarounds, business planning, market and financial feasibility studies and market research and analysis. Responsibilities included project management, product line development, staff training & recruiting, proposal development & budgeting, as well as internal application programming.

**President and Senior Consultant, LOGIX Consulting**                              1995 - 2002

A business management, technology and physician practice consulting firm. Completed projects focused on data analysis, IT systems management, application programming and process reengineering. Clientele included national manufacturing firms, regional healthcare clinics, physician practices, local business and educational organizations.

**Practice Administrator, Salt Lake Cardiovascular and Thoracic Surgery, PC**      1991 – 1998

Implemented computerized practice management system. Including Mac & PC interfaces, digital communications, hand-held and laptop applications, electronic claims and statement processing.  Responsible for day-to-day business office and clinic operations, managed care contracting, benefits and retirement planning, as well as all licensing and accreditation functions.  Supported the acquisition of the surgical clinic by the leading regional healthcare provider.

## EDUCATION

- **Master of Business Administration** - Marriott School of Management - Brigham Young University
- **Bachelor of Art's** – Philosophy; **Associate of Art's** - Spanish & Portuguese - Brigham Young University

## CERTIFICATION & ASSOCIATIONS

- **Medical Group Management Association (MGMA) National Member**            2010 - 2013
- **Project Management Professional (PMP) Project Management Institute**      2008 - 2011
- **Certified Correctional Healthcare Professional (CCHP)**
  **Academy of Correctional Healthcare Professionals**                       2007 – 2011

## MAJOR PROJECT EXPERIENCE – CORRECTIONAL HEALTHCARE

**California Department of Corrections and Rehabilitation** – Division of Correctional Health Services Mental Health, Sacramento, California, conducted a statewide mental health staffing workload study to meet the Coleman Court's mandate to execute and complete a workload study of the staffing requirements necessary to deliver the level of care outlined in the Revised Program Guide.  Provided a transparent and defensible methodology for mental health staffing and produced a usable and durable model to serve the client well into the future.

**Correctional Health Services-Maricopa County, Phoenix Arizona**, comprehensive system turnaround, provided interim management and consulting services.  Project included:  workload based staffing model for medical, behavioral health, & nursing, budgetary justification of staffing levels by clinic activity, behavioral health, nursing, and medical staff recruitment & retention, pharmacy process redesign and new vendor implementation, outside services and referral analysis, point-of-service lab analysis, EMR/RFP and implementation, 14-day health assessment evaluation and process improvements.

**Pima County Adult/Juvenile Detention – Tucson, Arizona**, system-wide assessment including: staffing levels, operational processes and management of the County's healthcare services contract.  Engagement focused on the management of referrals for external healthcare, utilization of and staffing for new inpatient behavioral health facilities, assistance in preparations for an upcoming NCCHC survey, and the development of an RFP for a new correctional health services vendor.

## PRESENTATION – CORRECTIONAL HEALTHCARE

**NCCHC:  National Commission on Correctional Healthcare** – October 2007

"Correctional Health Care Staffing: It's Not an Art, It's a Science" – methodology, process, and case study of a workload based clinical staffing model.  Workload staffing model must be transparent, defensible, and dynamic.

**TEPR:  Towards Electronic Patient Record** – May 2007

"Electronic Medical Records in Correctional Health and Public Health" – EMR's in institutional medicine, how can you afford not to have one?  Clinical crisis, political hurdles, and an implementation case study (Salt Lake County Jail).

**NCCHC:  National Commission on Correctional Healthcare** – October 2005

"Three Pillars of a Correctional Health Care System Turnaround" – in a correctional healthcare operational "turnaround" project, there are three functional areas that account for the majority of excessive costs and opportunities for improvement.  These three "Pillars" are Clinical Staffing, Outside Service Utilization, and Medication Management / Utilization.

# Exhibit 2



**PRISON LAW OFFICE**
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

July 28, 2017

Mr. Timothy Bojanowski
Struck Wieneke & Love
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@swlfirm.com

RE:    *Parsons v. Ryan*
         Outstanding Issues from July 13-14, 2017 Hearings

Dear Tim,

I write to follow up on several outstanding issues from the recent status hearings. If you'd like to set up a time for a conference call to discuss these matters next week, I am available any time on Monday or Thursday.

<u>Continued Evidentiary Hearing on August 8</u>
As a reminder, the Court ordered the parties to provide one another their lists of witnesses no later than Monday, July 31, and to report to the Court if there are any problems.  See 7/14/17 Tr. at 275:13-276:11.

<u>Monitoring Guide – Outstanding Matters</u>
The Court ordered the parties to meet and confer to discuss an introductory section to the Guide, including the methodology of random sampling as set out in Dr. Haney's affidavit.  Doc. 2185 at 2.

PM 25 (Emergency Response):  The Court asked that Defendants provide a current version of the Health Services manual and the equivalent of the 2010 version of "Appendix E" that includes nursing guidelines for emergency responses.  See 7/13/17 Tr. at 31:10-21.

PM 47 (Communicating the results of diagnostic studies):  You stated that you would provide additional information to the Court and Plaintiffs within two to three weeks about how the new systems are being rolled out.  See 7/14/17 Tr. at 237:17-20.

PM 61 (Offering pap smears every 3 years):  Anne stated that you would provide us with a reference to the language you want to use for the PM.  See 7/13/17 Tr. at 46:13-17; Doc. 2185 at 2.

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

Mr. Timothy Bojanowski
Re: *Parsons v. Ryan*
Outstanding Issues from
July 13-14, 2017 Hearings
July 28, 2017
Page 2

PM 95 (Removal from suicide watch): Defendants were to provide proposed language to us this week. *See* 7/14/17 Tr. at 277:3-278:5.

Potential Rule 706 Expert

Earlier today, I emailed to you for Defendants' review the CV of BJ Millar, who we plan to propose to the Court as another candidate for appointment of the experts.  See Doc. 2185 (7/13/17 Minute Entry) at 2.  We request that you let us know by August 3, if you will join us in proposing Mr. Millar.

Document Productions

The Court ordered Defendants to provide us with the temperature logs. *See* 7/14/17 Tr. at 268:17-20.  We request an update on when we will receive them.

Sincerely yours,

Corene Kendrick

Corene Kendrick
Staff Attorney

cc:      Counsel of Record

Exhibit 3



STRUCK WIENEKE & LOVE          3100 West Ray Road, Suite 300, Chandler, Arizona 85226 | **480.420.1600** | swlfirm.com

Daniel P. Struck
Partner

Kathleen L. Wieneke
Partner

Rachel Love
Partner

Timothy J. Bojanowski
Partner

Christina Retts
Partner

Nicholas D. Acedo
Partner

Tara B. Zoellner
Associate

Ashlee B. Fletcher
Associate

Anne M. Orcutt
Associate

Kevin L. Nguyen
Associate

Jacob B. Lee
Associate

Kevin R. Hanger
Associate

Dana M. Giallonardo
Associate

July 28, 2017

**_VIA EMAIL ONLY_**
David C. Fathi
NATIONAL PRISON PROJECT
915 15TH Street, NW - 7th Floor
Washington, DC  20005-2112

Corene Kendrick
PRISON LAW OFFICE
General Delivery
San Quentin, CA  94964

      **Re:   Parsons v. Ryan – 2:12-cv-00601-DKD**

Dear David and Corene:

      This correspondence addresses changes to the Monitor Guide language for Performance Measures (PMs) 25, 61, and 95.

      **PM 25**

      Attached as Exhibit 1 is a redlined version of the Monitor Guide showing Defendants' proposed revised language for PM 25 and the Appendix A definitions that reflect the discussion during the July 14, 2017 status hearing.  Please let us know if you are in agreement with the revisions or if you want to discuss the redlined language.

      **PM 61**

      Defendants' proposed revised language for PM 61 was previously included in the March 7, 2017 version of the Monitor Guide.  I have attached the relevant portion for your convenience as Exhibit 2.  We believe that this language is consistent with the Court's comments and proposed revisions discussed during the July 14, 2017 status hearing.  Please let us know if you want to discuss the redlined language from the March 7, 2017 Monitor Guide for this measure.

David Fathi
Corene Kendrick
July 28, 2017
Page 2

**PM 95**

Defendants' redlined proposed revisions to PM 95, as discussed during the June 14 and July 14, 2017 status hearings, are attached as Exhibit 3.  The redlines also include the parties' prior agreement to change the sample size for this measure. Please let us know if you are in agreement with the revisions or if you want to discuss the redlined language further.

Sincerely,

Anne M. Orcutt

AMO/eap

cc:     All counsel of record

**EXHIBIT 1**

**EXHIBIT 1**

**PERFORMANCE MEASURES**

Health Care Performance Measure No. 25
Stipulation Category: Emergency Response (01)

**CGAR Category: Emergency Response (C) 01**

---

**Performance Measure:**

A first responder trained in Basic Life Support responds and adequately provides care within three minutes of an emergency.

---

**CGAR Question:**

Are first responders trained in Basic Life Support responding and adequately providing care within three (3) minutes of an emergency?

---

**Source of Records/Review:**

Appropriate and pertinent Significant Incident Reports (SIRs), Incident Reports (IRs), and ER spreadsheet/report from monitored month (ADC).

---

**Methodology:**

- This performance measure evaluates two components of an emergency response: (1) the timeliness, and (2) the adequacy of the response. If either component is noncompliant, the record should be marked as noncompliant.

- If there are more than ~~The monitor will select the first~~ ten (10) inmates per yard from the SIRs and IRs from the monitored month that required basic life support, the monitor will randomly select a sample of ten inmates for review. If there are fewer than ten inmates, the monitor will review 100%.

- ~~An emergency requiring basic life support is defined as one requiring the use of an AED or performance of CPR~~ Basic Life Support ("BLS") is defined as emergency care performed to sustain life that includes CPR, automated external defibrillation, control of bleeding, and stabilization of injuries and wounds.

- A ~~First~~ first ~~Responders~~ responder ~~may be either medical or security officers~~ is a medical or corrections staff member trained in BLS.

- To measure the timeliness of the response, ~~T~~the Monitor will compare the time interval starting at the activation of an ICS and/or placement of the first call for an emergency response, whichever is earliest, and ending with the arrival of a first responder and the performance of BLS. ~~the SIR is initiated to the time of response where either use of an~~

---

42

**PERFORMANCE MEASURES**

> ~~AED or performance of CPR was initiated.~~
>
> - To measure the adequacy of the response, the monitor will evaluate whether the response was appropriate for the type of emergency situation presented.



43

PERFORMANCE MEASURES

# Appendix A: Definitions

| TERM | DEFINITION |
|---|---|
| Active labor & delivery | Contractions lasting 45-60 seconds and being 3 to 4 minutes apart |
| ASPC | Arizona State Prison Complex. ASPC- Safford includes Ft. Grant. ASPC-Florence includes Globe. ASPC-Winslow includes Apache. |
| ATP | Alternate Treatment Plan |
| Basic Life Support | Emergency care performed to sustain life that includes CPR, automated defibrillation, control of bleeding, and stabilization of injuries and wounds. Use of an AED or performance of CPR |
| Chronic Disease | Chronic diseases include the following:<br>• diabetes<br>• HIV/AIDs<br>• cancer<br>• hypertension<br>• Respiratory disease (for example, COPD / asthma / cystic fibrosis)<br>• Seizure Disorder<br>• heart disease<br>• sickle cell disease<br>• Hepatitis C<br>• Tuberculosis<br>• Neurological disorders (Parkinson's, multiple sclerosis, myasthenia gravis, etc.)<br>• Cocci (Valley Fever)<br>• End-Stage Liver Disease<br>• Hyperlipidemia<br>• Renal Diseases<br>• Blood Diseases (including those on anticoagulants (or long term >six months))<br>• Rheumatological Diseases (including lupus, rheumatoid arthritis)<br>• Hyperthyroidism<br>• Crohn's Disease |

143

PERFORMANCE MEASURES

| TERM | DEFINITION |
|---|---|
| Contracted Vendor | For purposes of this agreement, contracted vendor refers directly to Corizon Health and its subcontractors, or any successor contractor/subcontractor. |
| CQI | Continuous Quality Improvement |
| Diagnostic Service | Lab draws and specimen collections, X-rays, vision testing, and hearing testing |
| DOT | Direct-observation therapy (watch-swallow) (medications) |
| Effective date of the Stipulation | The date on which the Court grants final approval to the Stipulation. |
| Emergency | Includes any medical, mental health, or dental condition for which evaluation and treatment are necessary to prevent death, severe or permanent disability, or to alleviate disabling pain. A medical emergency exists when there is a sudden marked change in a patient-inmate's condition so that action is immediately necessary for the preservation of life or the prevention of serious bodily harm to the patient-inmate.(Requiring Basic Life Support). An incident requiring the use of an AED or performance of CPR. |
| Encounter | Interaction between a patient and a qualified healthcare provider that involves a treatment and/or exchange of confidential information. |
| First Responder | The first medical or corrections staff member trained in Basic Life Support on the scene of a medical emergency. |
| First Responder Response Time | The time interval starting at the activation of an ICS and/or placement of the first call for an emergency medical response, whichever is earliest, and ending with the arrival of medical or corrections staff trained in Basic Life Support at the scene of the incident. |
| Healthcare staff | Includes QHCPs as well as administrative and support staff (e.g. health record administrators, lab techs, nursing and medical assistants and clerical workers). |
| HNR | Health Needs Request |
| HSCMB | ADC's Health Services Compliance Monitoring Bureau |
| IPC | Inpatient Component / Infirmary beds |
| IR | Information Report |
| KOP | Keep-on-person (medications) |

Draft Revised: 7/26/17

**EXHIBIT 2**

**EXHIBIT 2**

**P E R F O R M A N C E   M E A S U R E S**

Health Care Performance Measure No. 61
Stipulation Category: Preventative Services (03)

**CGAR Category: Female Care – Prenatal Preventative (C) 01**

| |
|---|
| **Performance Measure:** |
| All female inmates ages 21 to 65 will be offered a Pap smear every 36 months after initial intake, unless more frequent screening is clinically recommended. |
| **CGAR Question:** |
| Are all female inmates ages 21 to 65 being offered a pap smear every 36 months after initial intake, unless more frequent screening is clinically recommended? |
| **Source of Records/Review:** |
| AIMS report of all female inmates ages 21-65 whose arrival date is at least three years prior to the monitored month;Arrival Log/List (randomized) and eOMIS/Medical Record. |

**Methodology:**

- Select ten inmates (Perryville only) per yard whose arrival date was at least three years prior to the monitored month.

- In eOMIS, check whether a memorandum personally advising the inmate that she is able is-to receive a Pap smear every three years, if medically appropriate, is scanned into the inmate's record.  If the memorandum is dated at least 90 days prior to the 36-month anniversary of the effective date of the Stipulation (February 15, 2015), the record is compliant.  Thereafter, the record is compliant if there is a subsequent memorandum personally advising the inmate that she is able to receive a Pap smear every three years, if medically appropriate, that is dated no more than 90 days prior to the 36-month anniversary of the inmate receiving the first memorandum.

- Inmates with history of a hysterectomy are exempt from this review.

Draft Revised: 3/7/17

**EXHIBIT 3**

**EXHIBIT 3**

**PERFORMANCE MEASURES**

**Health Care Performance Measure No. 95**
**Stipulation Category: Mental Health (23)**

**CGAR Category: Mental Health (C) 23**

---

**Performance Measure:**

Only licensed mental health staff may remove a prisoner from a suicide or mental health watch. Any prisoner discontinued from a suicide or mental health watch shall be seen by a mental health provider, mental health clinician, or psychiatric registered nurse between 24 and 72 hours after discontinuation, between seven (7) and ten (10) days after discontinuation, and between 21 and 24 days after discontinuation of the watch.

---

**CGAR Question:**

Are inmates that are removed from a suicide or mental health watch being removed by a licensed mental health staff?  Are any prisoners that were discontinued from a suicide or mental health watch seen by a mental health provider, mental health clinician, or a psychiatric registered nurse between 24 and 72 hours after discontinuation, and between seven (7) and ten (10) days, and between 21 and 24 days after discontinuation of the watch?

---

**Source of Records/Review:**

Suicide Watch Log (randomized).

---

**Methodology:**

- Review a minimum of ~~ten (10)~~ 20 inmate records (if available) per complex, ~~except at ASPC-Eyman, where twenty records will be reviewed~~.

- Review eOMIS under the Mental Health tab for the required watch follow-up note(s).  A watch follow-up note may be found in a variety of locations in eOMIS, including, but not limited to, the following locations: individual contact, segregation visit (refusal or lockdown), treatment plan, scheduled sick call, unscheduled sick call, scheduled psychiatry, unscheduled psychiatry, and initial psychiatric evaluation.

- Record the date the watch was discontinued.  Determine whether the watch follow-up note(s) occurred during the required time frame for any inmate who should have had a watch follow-up contact during the monitored month.

- Verify that the clinician, who discontinued the watch (during the monitored month), was a licensed clinician.  A monthly list of licensed mental health clinicians will be provided by the Contracted Vendor.

131

Draft Revised: 7/28/17

**P E R F O R M A N C E   M E A S U R E S**

- Verify that each watch follow up contact was completed by a mental health provider, mental health clinician, or psychiatric registered nurse.  A monthly list of all mental health staff will be provided by the Contacted Vendor.

- Record the dates of the watch follow-up contacts. If the follow up was not due during the monitored month, then "N/A" will be recorded.  If the follow up contact occurred at another complex, then "N/A" will be recorded.

- If an inmate goes back on watch any time prior to the expiration of the third post-watch follow-up (due between 21 and 24 days after removal from watch), record the first date the inmate was seen by a mental health provider, mental health clinician, or psychiatric registered nurse for the subsequent watch.  This contact will satisfy any remaining requirements that the inmate be seen for this performance measure.  When the inmate is removed from the subsequent watch, the clock will restart for the three watch follow-up contacts.

- Record the total number of contacts that are in compliance and the total number of contacts that should have occurred (e.g., 2 out of 3, 4 out of 4).  If any of the required contacts for each record are not in compliance, then the record will be coded as non-compliant.

- If there is a gap in contacts, review the external Movement Screen in AIMS (DI24, Shift + F5) to determine whether the inmate was out to court, out to hospital, or otherwise out of the facility.   (Or in eOMIS, from the Prison tab, click on the shortcuts "Population Tracking", and click on the link "External Movements" to view the inmate's movement).

Exhibit 4



**PRISON LAW OFFICE**
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

August 3, 2017

Mr. Timothy Bojanowski
Struck Wieneke & Love
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@swlfirm.com

RE:   *Parsons v. Ryan*
      August 3, 2017 Telephone Call

Dear Tim,

I write to recap our meet and confer today:

**Plaintiffs' Proposed Rule 706 Expert**
We provided you with Mr. Millar's CV on July 28. You stated that Defendants are still vetting Mr. Millar, and hope to have an answer by Wednesday's status hearing about whether Defendants will join us in proposing Mr. Millar to the Court as the Rule 706 expert. We agreed that Plaintiffs will submit Mr. Millar's CV to the Court with our proposed agenda.

**Production of Heat Logs**
Lucy Rand was not on the call. You said you would contact her to find out when she will be producing the temperature logs pursuant to the Court's order.  (7/14/17 Tr. at 268:17-20). We requested the logs since June 1, 2017, to the present, with continued production in the future as new logs become available.  Please provide an update as soon as possible.

**Evidentiary Hearing on Aug. 8 re: open clinic**
Defendants will produce Mr. Pratt for questioning on August 8.  Rachel explained that witnesses 7-12 (Van Winkle, Twyford, Coleman, Western Papworth, Simmons) are being called only to rebut prisoners' testimony regarding the physical plant, waiting space, ramps, etc. at the Florence and Perryville facilities, and that none of Defendants' witnesses will be testifying regarding allegations of retaliation.  She also stated that Mr. Trujillo and Mr. McWilliams are "back up" and will likely not be called.

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

Mr. Timothy Bojanowski
Re: *Parsons v. Ryan*
RE: Aug. 3, 2017 Call
Aug. 3, 2017
Page 2

**Possible Evidentiary Hearing re: Retaliation**

Of your proposed dates (Sept. 1, 4 [which is Labor Day], 6-8, 11), the only date that works for the necessary Plaintiffs' counsel is **Sept. 11**. This date has the added advantage of being two days before the regularly scheduled monthly status hearing, which will cut down on the time and expense for plaintiffs' counsel traveling from out of state.

We will be calling Director Ryan to testify at this hearing. Please confirm that he will be produced on that date.

We also request the following discovery be produced (and any privilege logs) **NO LATER THAN two weeks prior to the hearing** (which is Aug. 28, if the hearing is on September 11):

1. All written communications to or from Director Ryan, Carson McWilliams, Greg Lauchner, Ernie Trujillo, or Joe Profiri, dated July 18, 2017 to the present, regarding Plaintiffs' Notice to the Court Regarding Harassment and Retaliation Against Class Member Witnesses (Doc. 2190) and the allegations contained therein, including, but not limited to, any response to Director Ryan's July 27, 2017 email (Doc. 2222-1 at 8).

2. All written communications to or from Director Ryan, Carson McWilliams, Greg Lauchner, Ernie Trujillo, Joe Profiri, Norm Twyford, Elizabeth Oros, Jeff Van Winkle, John Mattos, Kevin Curran, or Kim Currier, dated July 7, 2017 to the present, that contains any of the following class member witnesses' names and/or ADC numbers:
   Angela Ashworth (ADC #315041)
   Mark Blocksom (ADC #180634)
   Dominique Keys (ADC #150050)
   Ronald Oyenik (ADC #150480)

3. All written communications to or from Director Ryan, Carson McWilliams, Greg Lauchner, Ernie Trujillo, Joe Profiri, Norm Twyford, Elizabeth Oros, Kim Currier, Sgt. R. Coleman, CO-II H. Western, Lt. C. Papworth, or CO-III M. Simmons, dated July 7, 2017 to the present, that contains any of the following class member witnesses' names and/or ADC numbers:
   Angela Ashworth (ADC #315041)
   Irma Cerecedes (ADC #271898)
   Ranae Cottrell (ADC #316751)
   Tammy Garbutt (ADC #312221)
   Kisha Irvins (ADC #304906)
   Dominique Keys (ADC #150050)
   Donna Scheid (ADC #310573)
   Vangie Sears (ADC #295409)

4.  All recordings, agendas, minutes, notes, or other communications regarding and/or memorializing Director Ryan's "video conference meeting with all wardens/deputy wardens/other pertinent staff" held on or after July 27, 2017 regarding the Court's Order regarding retaliation. (See Doc. 2222-1 at 8).

**Outstanding Matters Regarding the Monitoring Guide**

We discussed my letter of July 28, and Anne Orcutt's response of the same date.  You stated that Anne is out on vacation, so we agreed we will put this on the agenda for the August 9 hearing, and to the extent we can resolve anything after Anne's return and before the hearing, we will inform the Court at the hearing.

David Fathi will be out of the country on August 9, so we will not be able to discuss PM 95 at the hearing.

### *Incorporating language regarding random sampling*
You said you would get back to us about the Court's instruction (Doc. 2185 at 2) that the parties incorporate in the introductory section of the guide, language regarding methodology of random sampling, as set out in Dr. Haney's declaration.

### *PM 25 (Emergency response)*
Anne did not provide the current version of the 2010 "Appendix E" that includes nursing guidelines for emergency responses, as the Court asked.  (7/13/17 Tr. at 31:10-21)  I observed that her response did not incorporate our proposed changes, but reverted to the language that we found objectionable.

### *PM 47 (Communicating the results of diagnostic studies)*
You stated that you are working on gathering declarations from the various institutions about how the remedial efforts are being implemented at the institutions.

### *PM 61 (Offering Pap smears every 3 years)*
We are fine with Defendants' proposed language.

### *PM 95 (Removal from suicide watch)*
Performance Measure 95 provides as follows:

Only licensed mental health staff may remove a prisoner from a suicide or mental health watch. Any prisoner discontinued from a suicide or mental health watch shall be seen by a mental health provider, mental health clinician, or psychiatric registered nurse between 24 and 72 hours after

Mr. Timothy Bojanowski
Re: *Parsons v. Ryan*
RE: Aug. 3, 2017 Call
Aug. 3, 2017
Page 4

discontinuation, between seven and ten days after discontinuation, and between 21 and 24 days after discontinuation of the watch.

The purpose of this Performance Measure is to protect some of the most vulnerable patients in the ADC system – those who have recently been determined to present a significant risk of suicide – by ensuring that they are seen three times at specified intervals.

Unfortunately, your proposal bears little relationship to either the language or the purpose of the Performance Measure.  Consider the following example:  a patient is removed from suicide watch on August 1.  On August 3, she is placed back on watch, and is not seen by a provider, clinician, or psychiatric registered nurse until August 15.  The patient is then removed from watch, and is not subsequently seen by a provider, clinician, or psychiatric registered nurse. Under your proposal, this record would be counted as compliant with PM 95, despite the fact that the patient was not seen until 14 days after her first removal from watch, and was not seen at all after her second removal from watch.  We cannot agree to such a result.

It remains our position that Defendants must do what the plain language of this Performance Measure requires.  As Judge Duncan has repeatedly ruled, the Stipulation is an integrated agreement and Performance Measures may not be unilaterally modified by Defendants (see, e.g., Doc. 1673 at 5-6, 8).  However, in the spirit of compromise, we are willing to agree that any record in which the patient goes back on watch within 24 days of removal from watch be excluded from the sample, and another record randomly drawn to replace it.  Please let us know if you will agree to this proposal.

Finally, we note that your revised language for PM 95 does not incorporate Judge Duncan's ruling that the sample at each institution must include 20 unique individuals, not 20 instances in which a patient is removed from watch.  See Doc. 2185 at 2; 7/13/17 Tr. at 61:10-18. Please ensure that this language is included in the next draft of the Monitor Guide.

Thank you for your cooperation on these matters.

Sincerely yours,

*Corene Kendrick*

Corene Kendrick
Staff Attorney

cc:    Counsel of Record

Exhibit 5

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT



## BY EMAIL ONLY

August 1, 2017

Lucy M. Rand
Assistant Attorney General
1275 W. Washington St.
Phoenix, AZ 85007-2926

Re:     Response to Plaintiffs' document requests # 18 and 19

Dear Lucy,

At the July 10, 2017 telephonic discovery hearing, the following colloquy took place:

THE COURT: Ms. Rand, would you have any objection of providing to the Court and to Mr. Fathi the email that you sent to the people following up that you've described here on the record here today so that he could see whether or not there was any constructive addition that he would make in argument to me that would be helpful in producing additional documents?

MS. RAND: I don't have any objection to doing that, but I just feel as if Mr. Fathi's objections, if he feels that we didn't provide enough information, I would be more than happy to resend the email to the same people with the actual text of all to -- that we sent previously that discusses all of the different performance measures to them again so that they have it, and to also provide them the actual orders. I mean, that, to me, seems like it would be the most clear.

THE COURT: All right. Then why don't you -- why don't you send that first to Mr. Fathi, what you propose to resend to these people. Send it first to Mr. Fathi so that he can let you know if he sees some obvious infirmity there that could perhaps be addressed so that we make sure that we're communicating to people exactly what we're looking for.

7/10/17 Tr., 35:9-36:3.

On July 10, you forwarded to the Court and to Plaintiffs a June 30, 2017 email you had sent, along with a boilerplate declaration; these documents are attached hereto as Exhibit 1. Unfortunately, as discussed at the July 10 hearing, this email is not reasonably calculated to produce the documents requested in Plaintiffs' Requests # 18 and 19.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

PLEASE RESPOND TO
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

**First**, although you told the Court that you had sent inquiries "to all the healthcare providers, to all the monitors, to Corizon" (7/10/17 Tr., 27:23-25), the distribution of your email was extremely limited.  Putting aside counsel, there were a grand total of six recipients; only two were ADC employees.  *No* monitors or providers were among the recipients.  Clearly these six people do not constitute the entire universe of those who might have responsive documents in their possession.

**Second**, your email fails to inform recipients of the documents sought.  Plaintiffs' requests refer to various Court orders by date and by docket number.  While such references are comprehensible to lawyers, they will be meaningless to the Corizon and ADC line staff who are the actual custodians of responsive documents.  Although you referred during the July 10 hearing to a document that describes each of the Court's orders in substantive terms, we have never seen this document, and it was not included with your June 30 email.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

**Finally**, the provision of a boilerplate declaration drafted entirely by counsel, on which the "declarant" is asked to fill in only his or her name and job title, is not conducive to truthfulness.  As you admitted at the July 10 hearing, you drafted and submitted a declaration for Lynn Cole, which turned out to be false.  7/10/17 Tr. at 9:6-11.  Judge Duncan was not pleased.  *Id.* at 11:7-20.  Moreover, except for the untruthful Cole declaration, you have not provided Plaintiffs with any declarations from ADC or Corizon staff attesting to the production of all documents in their possession that are responsive to our requests.

**Please let us know how Defendants plan to ensure that all documents responsive to Plaintiffs' Requests # 18 and 19 are promptly produced.**
Among other steps, we urge you to follow Judge Duncan's recommendation:

> The only observation that I would make is that given that you had learned that that previous request in, I gather -- I'm assuming, in similar language, that had been dispersed to people hadn't produced the -- the poster on the wall that was my written instruction. So perhaps it might have been helpful to have said in this email: We uncovered what we found to be inclusive in this response, but had not been previously provided to defense counsel, and give an example of how it was so people can see that it was possible that they would not have included -- because you have evidence, I think, from what it sounds like, it sounds to me, that you could educate the people and better comply with the request by giving them this specific example of a failure to comply.

7/10/17 Tr. at 30:16-31:4.

2

On a related note, at the July 10 hearing there was discussion of documents in Dr. Leonard's possession that are concededly responsive to Request #19.  You represented to the Court that Dr. Leonard was returning from vacation on July 10 or 11, and that you would ask "that once she gets back, that she provide those documents immediately on the same day, and then I can produce them at that point."  7/10/17 Tr. at 21:9-18; 25:6-13.  We have still not received these documents; please produce them without further delay.

Thank you very much.

Very truly yours,

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

David C. Fathi

Cc:      All counsel

Attachment:  Exhibit 1

3

EXHIBIT 1

**David Fathi**

| | |
|---|---|
| **From:** | Rand, Lucy <Lucy.Rand@azag.gov> |
| **Sent:** | Monday, July 10, 2017 6:07 PM |
| **To:** | David Fathi; duncan_chambers@azd.uscourts.gov |
| **Cc:** | 'dspecter@prisonlaw.com'; 'ckendrick@prisonlaw.com'; 'kirstin@eidenbachlaw.com'; Amy Fettig; 'ahardy@prisonlaw.com'; 'snorman@prisonlaw.com'; Jamelia Morgan; 'rlomio@prisonlaw.com'; 'skader@azdisabilitylaw.org'; 'mabela@azdisabilitylaw.org'; Kathy Brody; 'Rpratt@azcorrections.gov'; 'bkeogh@azcorrections.gov'; 'ntaylor@azcorrections.gov'; Gottfried, Michael; 'dstruck@swlfirm.com'; 'tbojanowski@swlfirm.com'; 'EPercevecz@swlfirm.com'; 'rlove@swlfirm.com'; 'afletcher@swlfirm.com'; 'AOrcutt@swlfirm.com'; Jennifer Onka; 'megan@prisonlaw.com'; 'sarah@prisonlaw.com' |
| **Subject:** | PARSONS v. RYAN, USDC CV12-00601 - LMS12-0152 |
| **Attachments:** | Req. ##18 & 19: Docs. re: Performance Measure Monitoring - PARSONS v. RYAN |

Mr. Fathi and Judge Duncan,

Pursuant to the Court's order during the July 10, 2017, discovery hearing, attached hereto is the email Defendants sent regarding Plaintiffs' request for production ##18 and 19.

Thank you.



**Lucy M. Rand, Assistant Attorney General**
ARIZONA ATTORNEY GENERAL'S OFFICE
SGD / LMS / Department of Corrections Unit
1275 W. Washington St., Phoenix, AZ 85007-2926
**Direct: 602.542.7683**
**Secretary:** 602.542.2470 Griselda Ybarra
Receptionist: 602.542.1610
Lucy.Rand@azag.gov

NOTICE: This e-mail, including attachment(s), is the property of the Office of the Arizona Attorney General and contains information that may be PRIVILEGED, CONFIDENTIAL, or otherwise exempt from disclosure by law. It is intended only for the recipients to whom it is addressed. If you receive this communication in error, immediately notify the sender at the e-mail address shown above or call (602) 542-2470, and delete the original message. Thank you.

## David Fathi

| | |
|---|---|
| **From:** | Rand, Lucy <Lucy.Rand@azag.gov> |
| **Sent:** | Friday, June 30, 2017 10:43 PM |
| **To:** | 'Chris.Tucker@Corizonhealth.com'; 'Cole, Lynn (Lynn.Cole@CorizonHealth.com)'; 'Lynn.Calcote@corizonhealth.com' |
| **Cc:** | 'rhonda.almanza@corizonhealth.com'; 'Jennifer.Finger@Corizonhealth.com'; 'RPratt@azcorrections.gov'; 'NTaylor@azcorrections.gov'; 'tbojanowski@swlfirm.com'; 'dstruck@swlfirm.com'; 'EPercevecz@swlfirm.com'; 'Orcutt, Anne (aorcutt@swlfirm.com)'; Gottfried, Michael; MacPherson, Scott |
| **Subject:** | Req. ##18 & 19: Docs. re: Performance Measure Monitoring - PARSONS v. RYAN |
| **Attachments:** | PHX-#6052250-v1-PARSONS_(12-0152)__DECLARATION_RE_PERFORMANCE_MEASURE_MONITORING.DOCX |
| **Importance:** | High |

Hi all,

The Court has ordered the production of documents responsive to Plaintiffs' request below:

> **Request #18: Compliance with the Court's Orders:**
> All documents reflecting, discussing, or establishing policies and/or practices related to Defendants' compliance with the Court's Nov. 10, 2016 Order, with regard to the nine performance measures to which the order is applicable, and documents sufficient to show the implementation and compliance with the Order; and,
>
> **Request #19: Compliance with the Court's Orders:**
> All written direction or instructions, including all training materials, provided to ADC or Corizon staff regarding compliance with the Court's orders on monitoring methodology, including but not limited to Doc. 1673, 1745, 1754, 1831, 1833, and 1915.

1. Please conduct a search to locate any documents responsive to the above requests for documentation.  If you already provided documentation, please search again for documentation not already produced or documentation created since the last time you produced documents.

2. Attached hereto, is a draft declaration.  Each person who conducts this search must sign and return the declaration, regardless of whether documents are found and returned, so please ensure that your search for these documents is <u>thorough</u> and <u>exhaustive</u>.  Please customize the declaration as necessary.

**Please provide all documentation by Wednesday, July 12, 2017.**

Thank you.



**Lucy M. Rand, Assistant Attorney General**
ARIZONA ATTORNEY GENERAL'S OFFICE
SGD / LMS / Department of Corrections Unit
1275 W. Washington St., Phoenix, AZ 85007-2926
**Direct: 602.542.7683**
**Secretary:** 602.542.2470 Griselda Ybarra
Receptionist: 602.542.1610
Lucy.Rand@azag.gov

MARK BRNOVICH
ATTORNEY GENERAL

Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone:   (602) 542-1610
Fax:         (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:   (480) 420-1600
Fax:         (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
khanger@swlfirm.com
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>                                        Plaintiffs,<br><br>                v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>                                        Defendants. | No. CV12-00601-PHX-DKD<br><br>**DECLARATION OF**<br><br>_____ |

#6052250

I, _____, declare under penalty of perjury that the following information is true to the best of my information, knowledge, and belief:

1.      I am over the age of 18 years and am competent to testify to, and have personal knowledge of, the matters set forth in this Declaration.

2.      I am employed by the Arizona Department of Corrections and am the _____ for ASPC-_____.

3.      If called as a witness, I could testify competently to the facts stated herein.

4.      I received a request for documents as follows:

All documents reflecting, discussing, or establishing policies and/or practices related to Defendants' compliance with the Court's Nov. 10, 2016 Order, with regard to the nine performance measures to which the order is applicable, and documents sufficient to show the implementation and compliance with the Order;

and,

All written direction or instructions, including all training materials, provided to ADC or Corizon staff regarding compliance with the Court's orders on monitoring methodology, including but not limited to Doc. 1673, 1745, 1754, 1831, 1833, and 1915.

5.      After conducting a diligent search and/or causing my staff to conduct a diligent search, I verify that I reviewed copies of the responsive documents and that all responsive documents, if any, were provided to defense counsel on July _____, 2017.

6.      To the best of my knowledge, as of the date of this Declaration, I produced all responsive documents to defense counsel.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON this ___ day of July, 2017.

_____

#6052250                                        2