Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
khanger@swlfirm.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DKD<br><br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO JUNE 14, 2017 ORDER RE: ENFORCEMENT OF THE STIPULATION'S PERFORMANCE MEASURES (DOC. 2124)** |

Plaintiffs' Response to the Court's June 14, 2017 Order attempts to enlarge the scope of that Order by adding performance measures and proposed sanctions. It also prematurely argues that Defendants should be held in contempt of a court order before any show-cause hearing has taken place. Not only are these arguments improper, but they presume the Court has the authority to hold Defendants in contempt. It does not. And even if it did, the Court's purported $1,000 fine is an impermissible sanction.

## I.   THE COURT CANNOT HOLD DEFENDANTS IN CONTEMPT FOR PURPORTED VIOLATIONS OF THE STIPULATION.

Plaintiffs assert that Defendants are subject to contempt any time they violate the Stipulation. Neither the Stipulation, nor its terms, contemplate anything of the sort.

### A.   The Stipulation Is Not a Court Order.

While Plaintiffs are correct that "courts have inherent power to enforce compliance with their lawful orders through civil contempt" (Dkt. 2214 at 16), the Stipulation is not an order of this Court. Thus, any violations of the Stipulation are not subject to a contempt order. *See Macias v. N.M. Dep't of Labor*, 300 F.R.D. 529, 553 (D.N.M. 2014) ("[V]iolation of a term incorporated into an order is sanctioned using federal contempt of court proceedings; violation of a settlement agreement over which the court has retained jurisdiction is subject to state contract law regarding the prima facie elements, affirmative defenses, and remedies of and for breach of contract.").

In *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455 (7th Cir. 1993), the settlement agreement stated that the parties "shall be and remain subject to the jurisdiction of this court for purposes of the enforcement of such settlement agreement and subject to the contempt powers of this court in the event of a violation thereof." *Id*. at 460-61. But even that language—which expressly contemplated the contempt powers of the court—was held to be insufficient because "the court did not set forth any of the provisions of the settlement agreement in its order." *Id*. at 461. Stated simply, although "the district court retained jurisdiction to enforce the settlement agreement, that was not sufficient to transform the agreement into a court order enforceable through a contempt proceeding."

1

*Id.* at 460 ("Standing alone, a settlement agreement is nothing more than a contract; the imprimatur of an injunction is required to render it a consent decree enforceable through contempt."); *accord Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) ("The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order."); *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 917 (6th Cir. 2000) ("A dismissal order's mere reference to the fact of settlement does not incorporate the settlement agreement in the dismissal order."); *Int'l Bhd. of Electr. Workers, Local Union No. 545 v. Hope Electr. Corp.*, 293 F.3d 409, 418 (8th Cir. 2002) (holding that if the underlying order contains no operative commands, only abstract legal conclusions or compels no action, then a finding of contempt is not warranted).

This limitation makes sense. As the Seventh Circuit in *H.K. Porter Co. v. National Friction Products*, 568 F.2d 24 (7th Cir. 1977), advised:

> Because of the risks of contempt proceedings, civil or criminal, paramount interests of liberty and due process make it indispensable for the chancellor or his surrogate to speak clearly, explicitly, and specifically if violation of his direction is to subject a litigant . . . to coercive or penal measures, as well as to payment of damages.

*Id.* at 27; *see also Int'l Longshoremen's Ass'n, Local 1291 v. Phil. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967) ("The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one").

The limitation makes even more sense considering Plaintiffs' burden of proving that Defendants violated a clear and unambiguous court order. *See Fed. Trade v. Enforma Natural Prods.*, 362 F.3d 1204, 1211 (9th Cir. 2004) ("The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court."); *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989) ("Civil contempt is appropriate only when a party fails to comply with a court order that is both specific and definite."). Allowing contempt proceedings without a clear court order turns Plaintiffs' burden on its head.

2

*Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016), is not any different.  There, the Ninth Circuit was tasked with determining whether the district court had subject matter jurisdiction.  The court held that there was subject matter jurisdiction because the district court's dismissal order incorporated the terms of the settlement agreement.  *Id*. at 1095.  Here, there was no similar dismissal order.  The parties merely agreed that the court would "retain the power to enforce" the terms of the Stipulation.  (Dkt. 1185, ¶¶ 35-36.) "[M]erely retaining jurisdiction to enforce the agreement," however, "is not enough to transform it into an order enforceable by contempt." *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 371 (10th Cir. 1996).

## B.    The Stipulation Is Not a Consent Decree.

The Stipulation is abundantly clear: it is not a consent decree.  The parties: (1) titled the agreement a "Stipulation"; (2) specifically agreed therein that the "Stipulation shall not be construed as a consent decree"; and (3) specifically agreed that the Stipulation "may not be altered or modified, except by a writing signed by all representatives of all parties at the time of modification."  (Dkt. 1185, ¶¶ 4, 35, ¶ 40.) These provisions were deliberately included to limit the Court's authority to enforce and/or modify the Stipulation.

Even absent this express language, the Stipulation is significantly and meaningfully different from a consent decree.  A consent decree is a "*court decree* that all parties agree to."  Black's Law Dictionary 207 (9th ed.) (emphasis added); *see also Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992) (holding that a consent decree "is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees").  A consent decree is punishable by contempt.  *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 518 (1986).  The Stipulation, in contrast, is not a *court decree* that Plaintiffs and Defendants agreed to.  Notably, the parties did not ask the Court to memorialize all of the terms of the Stipulation in a court order, nor did the Court do so unilaterally.  In fact, the parties took pains to expressly disavow that the

Stipulation was a consent decree.  (Dkt. 1185, ¶ 35.)  The fact that the parties explicitly disclaimed consent-decree status demonstrates that the parties did not intend for this Court to enforce the Stipulation through contempt proceedings.

Plaintiffs argue that Paragraph 36 of the Stipulation—"The Court shall retain the power to enforce this Stipulation through all remedies provided by law"—implies that the Court has carte blanche authority to impose *anything* upon Defendants—including contempt sanctions.  However, that sentence only gives the Court the jurisdictional authority to oversee enforcement of the Stipulation—not that the Court may impose any sanctions it sees fit.  The sentence itself derives from *Kokkonen*, which held that the court did *not* have the jurisdictional power to enforce settlement terms because the dismissal order did not explicitly retain jurisdiction.  *See* 511 U.S. at 381 (acknowledging that "[t]he situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement)").  But holding jurisdictional power over the settlement agreement is meaningfully different from a consent decree, which would allow the Court to find Defendants in contempt and levy contempt sanctions.

*Christina A. ex. rel Jennifer A. v. Bloomberg*, 315 F.3d 990 (8th Cir. 2003) analyzed a similar settlement agreement and found it was *not* a consent decree punishable by contempt.  There, a class of juvenile inmates sued to improve conditions at the facility.  *Id.* at 991.  The parties later settled and presented a settlement agreement to the court for approval.  *Id.* After conducting a fairness hearing, the court approved the settlement agreement and dismissed the action without prejudice under Federal Rule of Civil Procedure 41(a)(2), retaining jurisdiction for the "purpose of enforcing the Settlement Agreement."  *Id.*  Notably, the court's order did not incorporate any of the specific terms and conditions agreed upon by the parties in its opinion and order.  *Id.*

On appeal, the Eighth Circuit held that "the district court's approval of the settlement agreement does not, by itself, create a consent decree."  *Id.* at 993.  The court

4

acknowledged that the "settlement agreement in this case is 'something more' than a private settlement because the district court retained jurisdiction to enforce it." *Id.* "However, the district court's enforcement jurisdiction alone is not enough to establish a judicial 'imprimatur' on the settlement contract." *Id.* In fact, the court was "convinced that the [district] court's dismissal order … would not support a citation for contempt" precisely because "no specifically enumerated contract terms were incorporated into the court's order." *Id.*

## II.    THE COURT CANNOT IMPOSE A $1,000 SANCTION PER VIOLATION OF THE STIPULATION.

Even assuming the Court has the authority to hold Defendants in contempt and in fact finds them in contempt of a specific and definite court order, the Court's proposed remedy of $1,000 per violation is inappropriate. Not only did the parties never contract for such a provision, if Defendants would have known that each individual violation was subject to a $1,000 fine, Defendants would never have entered into the agreement. Further, such an excessive fine is intended as an arbitrary punishment given that it is not based on any of Plaintiffs' alleged damages.

### A.    The Court is Engrafting Its Own Penalty Provision Into the Parties' Stipulation.

"An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989); *see also id.* ("The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally."). In settling a legal dispute, "[e]ach party agrees to extinguish those legal rights it sought to enforce through litigation in exchange for those rights secured by the contract." *Id.* (internal quotation marks omitted).

In effectuating the Stipulation, "[t]he court's task . . . is to discern the bargain that the parties struck." *United States v. Microsoft Corp.*, 147 F.3d 935, 946 (D.C. Cir. 1998); *see also Olliver/Pilcher Ins., Inc. v. Daniels*, 715 P.2d 1218, 1221 (Ariz. 1986) ("[T]he court cannot create a new agreement for the parties to uphold the contract."); *Isaak v.*

5

*Mass. Indem. Life Ins. Co.*, 623 P.2d 11, 14 (Ariz. 1981) ("It is not within the power of this court to revise, modify, alter, extend, or remake a contract to include terms not agreed upon by the parties." [internal quotation marks omitted]).

The Court does not have the power in a contempt proceeding to modify the terms of the agreement. *See Roquemore v. Burgess*, 642 S.E.2d 41, 42 (Ga. 2007). And if there was any doubt, the parties expressly precluded the Court from modifying the terms of the Stipulation. (Dkt. 1185, ¶ 40.) Yet, that is exactly what the Court's $1,000 contempt sanction seeks to do.

*Bradley v. American Household Inc.*, 378 F.3d 373 (4th Cir. 2004) is illustrative as it addresses why a district court cannot levy contempt sanctions in "enforcing" a settlement agreement. There, the Bradleys filed a products liability suit against Sunbeam claiming that their house had caught fire as a result of a defective Sunbeam electric blanket. *Id.* at 374. The parties settled upon the following terms: Sunbeam would pay the Bradleys $500,000 and produce 80 boxes of documents. *Id.* at 376. The court approved the settlement and dismissed the case, subject to reopening on either party's motion or for good cause shown. *Id.* The Bradleys later moved to reopen the case and enforce the settlement, arguing that Sunbeam should not have withheld 300 pages from the 80 boxes of documents produced and Sunbeam continued to destroy blanket remains during the pendency of the litigation. *Id.* At a contempt hearing, the court fined Sunbeam $200,000 and fined Sunbeam's lead counsel $100,000 for the blanket production issues. *Id.* at 377.

On appeal, the Fourth Circuit held that those contempt sanctions "should not have been imposed in light of the Settlement Agreement" because "their imposition here amounted to an impermissible reformation of the settlement agreement reached by the litigants." *Id.* at 377, 380. Notably, the appellate court reaffirmed that "courts enforce only those settlement terms on which the parties have reached agreement." *Id.* at 380 (acknowledging that it is "improper for the district court . . . to place itself in the role of 'final arbiter' of a settlement agreement" (quoting *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983))); *see also id.* ("Motions to enforce settlement agreements draw upon

standard contract principles."). Because the parties had agreed on the terms memorialized in the settlement agreement, any award of compensatory sanctions risked "augmenting the precise settlement figure that the parties had negotiated and agreed upon." *Id.* ("The sanctions here compensated the Bradleys for the very things they had agreed to contractually forego."); *see also id.* at 381 ("[T]he perception is that of a court improperly modifying a final settlement, not merely enforcing it."). Consequently, because the contempt sanctions were "irreconcilably at odds with the negotiated Settlement Agreement," the court vacated them. *Id.*

The Court's proposed $1,000 per violation contempt sanction was not included in the parties' Stipulation and was certainly not contemplated by the parties. *See Jeff D.*, 899 F.2d at 760 ("When interpreting a stipulation, the district court should construe the language of a particular section in the context of the entire agreement and not read individual sections out of context to achieve a result not originally contemplated by the parties. The overriding purpose in interpreting a contract is to give effect to the mutual intent of the parties at the time the contract was made.") (Citation omitted). To be clear, Defendants never would have agreed to an agreement that had the intent or force of a judicial consent decree, which could give rise to an arbitrary contempt sanction. To now levy such sanctions as part of the Court's "enforcement" effort contravenes the parties' negotiated settlement.

**B.    A $1,000 Fine for Each Purported Violation Is an Improper Penalty Because It Is Not an Approximation of Plaintiffs' Damages.**

To the extent civil contempt sanctions are designed to compensate for injuries resulting from contemptuous behavior, the Court's $1,000 per violation contempt sanction is not compensatory in nature. This is because the $1,000 per violation fine is not based on any evidence of Plaintiffs' actual loss. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947) ("Where compensation is intended . . . . [s]uch fine must of course be based upon evidence of complainant's actual loss."). Thus, it clearly constitutes a penalty considering it has nothing to do with any loss. *E.g.,* In *re Late Fee & Over-*

*Limit Fee Litig.*, 741 F.3d 1022, 1026 (9th Cir. 2014) ("Liquidated damages are customarily unenforceable as penalties when they are in excess of actual damage caused by a contractual breach."). Moreover, Plaintiffs already concede that their compensatory damages equal $10 per violation payable to each individual inmate. (Dkt. 2214 at 2.) Anything over and above that $10 figure is not compensatory.

### C.    A $1,000 Fine for Each Purported Violation is Punitive in Nature.

In determining whether a proceeding is civil or criminal, "the nature of the requested relief" dictates. *Penfield Co. of Cal. v. Sec. & Exch. Comm'n*, 330 U.S. 585, 590 (1947); *see also Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983) ("To distinguish civil from criminal contempt, the focus of the inquiry is often not upon the fact of punishment but rather its character and purpose.") (citing *Shillitani v. United States*, 384 U.S. 364, 369 (1966)). The distinction is critical because a finding of criminal contempt requires proof beyond a reasonable doubt that the contemnor was willfully disobedient of an order, *Falstaff*, 702 F.2d at 782, whereas a finding of civil contempt has no willfulness requirement and requires only clear and convincing evidence of a violation. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).

"The test is what does the court primarily seek to accomplish by imposing the sanction?" *Falstaff*, 702 F.2d at 778 (internal quotation omitted). "[A] contempt sanction is considered civil if it 'is remedial, and for the benefit of the complainant.'" *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827-28 (1994) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911)) (emphasis added). But if the sanction is intended to "vindicate the authority of the court," that is, punitive in nature, it is considered a criminal contempt sanction. *Id.* Where there are elements of both civil and criminal sanctions, the protections that precede a criminal contempt sanction control. *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 518 (9th Cir. 1992); *Falstaff*, 702 F.2d at 778-79 ("[W]here the fine imposed is part compensation and part punishment, the criminal feature dominates and fixes its character.").

A fine in and of itself is inherently punitive.  A fine paid to the Court is clearly punitive.  *See Int'l Union*, 512 U.S. at 827-28 (a sanction that is intended to "vindicate the authority of the court" is considered a criminal contempt sanction).  The purpose of a coercive sanction is *not* to penalize a past wrong.  *See Falstaff*, 702 F.2d at 780 (a coercive sanction "cannot undo or remedy what has been done nor afford any compensation.").  But that is what the Court's predetermined fine is intended to do.  Furthermore, it appears the Court intends to fine Defendants $1,000 for "every single failure to comply" with the enumerated performance measures.  That presumably includes failures above and beyond the 85% threshold.  But as Defendants have maintained all along, the Stipulation does not require 100% compliance.  Thus, any fine for non-compliance above the 85% benchmark can only be characterized as punitive because it is beyond the scope of the Stipulation.

III.    **PLAINTIFFS' REMAINING ARGUMENTS ARE PREMATURE.**

Plaintiffs' Response argues Defendants have failed to take all reasonable steps to comply with the Stipulation and contends Defendants have already received all the process they are due.  (Dkt. 2214 at 19-21.)  But the Court has not even issued an order to show cause nor has there been any hearing allowing Defendants an opportunity to show what steps have been taken.  Plaintiffs also request that the Court consider sanctioning Defendants for failing to comply with several performance measures not mentioned in the Court's June 14 Order (Id. at 11-16) and consider a $10-per-violation compensatory sanction (Id. at 11-16).  Neither issue is ripe for consideration or response, as the Court has not indicated that it is willing to extend or modify its June 14 Order in any way.  Plaintiffs cannot unilaterally give Defendants notice of impending contempt or sanctions.

**CONCLUSION**

For these reasons, the Court should reject Plaintiffs' proposed order and vacate its June 14, 2017 Order.

/ / /

/ / /

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED this 7th day of August 2017.

STRUCK WIENEKE & LOVE, P.L.C.


By /s/Daniel P. Struck
    Daniel P. Struck
    Kathleen L. Wieneke
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    Ashlee B. Fletcher
    Anne M. Orcutt
    Jacob B. Lee
    Kevin R. Hanger
    STRUCK WIENEKE & LOVE, P.L.C.
    3100 West Ray Road, Suite 300
    Chandler, Arizona  85226

    Arizona Attorney General Mark Brnovich
    Office of the Attorney General
    Michael E. Gottfried
    Lucy M. Rand
    Assistant Attorneys General
    1275 W. Washington Street
    Phoenix, Arizona 85007-2926

    *Attorneys for Defendants*

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on August 7, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

3

4    Alison Hardy:              ahardy@prisonlaw.com

5    Amelia M. Gerlicher:       agerlicher@perkinscoie.com;docketPHX@perkinscoie.com,
     kleach@perkinscoie.com

6

7    Amy B. Fettig:             afettig@npp-aclu.org

8    Asim Varma:                avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org;
     phxadmin@azdisabilitylaw.org

9    Caroline N. Mitchell:      cnmitchell@jonesday.com; mlandsborough@jonesday.com;
     nbreen@jonesday.com

10

11   Corene T. Kendrick:        ckendrick@prisonlaw.com; edegraff@prisonlaw.com

12   Daniel Clayton Barr:       DBarr@perkinscoie.com; docketphx@perkinscoie.com;
     sneilson@perkinscoie.com

13   David Cyrus Fathi:         dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

14   Donald Specter:            dspecter@prisonlaw.com

15   Jessica Pari Jansepar Ross:   jross@azdisabilitylaw.org

16   John Howard Gray:          jhgray@perkinscoie.com; slawson@perkinscoie.com

17   John Laurens Wilkes:       jlwilkes@jonesday.com, dkkerr@jonesday.com

18   Jose de Jesus Rico:        jrico@azdisabilitylaw.org

19   Kathleen E. Brody          kbrody@acluaz.org

20   Kirstin T. Eidenbach:      kirstin@eidenbachlaw.com

21   Maya Abela                 mabela@azdisabilitylaw.org

22   Rose Daly-Rooney:          rdalyrooney@azdisabilitylaw.org

23   Sara Norman:               snorman@prisonlaw.com

24   Sarah Eve Kader:           skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org;
     rstarling@azdisabilitylaw.org

25   Rita K. Lomio:             rlomio@prisonlaw.com

26

27   Victoria Lopez:            vlopez@aclu.org

28

11

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Daniel P. Struck