# EXHIBIT 1

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT

**BY EMAIL ONLY**

August 1, 2017

Lucy M. Rand
Assistant Attorney General
1275 W. Washington St.
Phoenix, AZ 85007-2926

   **Re:** **Response to Plaintiffs' document requests # 18 and 19**

Dear Lucy,

At the July 10, 2017 telephonic discovery hearing, the following colloquy took place:

THE COURT: Ms. Rand, would you have any objection of providing to the Court and to Mr. Fathi the email that you sent to the people following up that you've described here on the record here today so that he could see whether or not there was any constructive addition that he would make in argument to me that would be helpful in producing additional documents?

MS. RAND: I don't have any objection to doing that, but I just feel as if Mr. Fathi's objections, if he feels that we didn't provide enough information, I would be more than happy to resend the email to the same people with the actual text of all to -- that we sent previously that discusses all of the different performance measures to them again so that they have it, and to also provide them the actual orders. I mean, that, to me, seems like it would be the most clear.

THE COURT: All right. Then why don't you -- why don't you send that first to Mr. Fathi, what you propose to resend to these people. Send it first to Mr. Fathi so that he can let you know if he sees some obvious infirmity there that could perhaps be addressed so that we make sure that we're communicating to people exactly what we're looking for.

7/10/17 Tr., 35:9-36:3.

On July 10, you forwarded to the Court and to Plaintiffs a June 30, 2017 email you had sent, along with a boilerplate declaration; these documents are attached hereto as Exhibit 1. Unfortunately, as discussed at the July 10 hearing, this email is not reasonably calculated to produce the documents requested in Plaintiffs' Requests # 18 and 19.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

PLEASE RESPOND TO
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
*DIRECTOR*
*ATTORNEY AT LAW\**

*\*NOT ADMITTED IN DC:
PRACTICE LIMITED TO
FEDERAL COURTS*

**First**, although you told the Court that you had sent inquiries "to all the healthcare providers, to all the monitors, to Corizon" (7/10/17 Tr., 27:23-25), the distribution of your email was extremely limited.  Putting aside counsel, there were a grand total of six recipients; only two were ADC employees.  *No* monitors or providers were among the recipients.  Clearly these six people do not constitute the entire universe of those who might have responsive documents in their possession.

**Second**, your email fails to inform recipients of the documents sought.  Plaintiffs' requests refer to various Court orders by date and by docket number.  While such references are comprehensible to lawyers, they will be meaningless to the Corizon and ADC line staff who are the actual custodians of responsive documents.  Although you referred during the July 10 hearing to a document that describes each of the Court's orders in substantive terms, we have never seen this document, and it was not included with your June 30 email.

**Finally**, the provision of a boilerplate declaration drafted entirely by counsel, on which the "declarant" is asked to fill in only his or her name and job title, is not conducive to truthfulness.  As you admitted at the July 10 hearing, you drafted and submitted a declaration for Lynn Cole, which turned out to be false.  7/10/17 Tr. at 9:6-11.  Judge Duncan was not pleased.  *Id.* at 11:7-20.  Moreover, except for the untruthful Cole declaration, you have not provided Plaintiffs with any declarations from ADC or Corizon staff attesting to the production of all documents in their possession that are responsive to our requests.

**Please let us know how Defendants plan to ensure that all documents responsive to Plaintiffs' Requests # 18 and 19 are promptly produced.**
Among other steps, we urge you to follow Judge Duncan's recommendation:

> The only observation that I would make is that given that you had learned that that previous request in, I gather -- I'm assuming, in similar language, that had been dispersed to people hadn't produced the -- the poster on the wall that was my written instruction. So perhaps it might have been helpful to have said in this email: We uncovered what we found to be inclusive in this response, but had not been previously provided to defense counsel, and give an example of how it was so people can see that it was possible that they would not have included -- because you have evidence, I think, from what it sounds like, it sounds to me, that you could educate the people and better comply with the request by giving them this specific example of a failure to comply.

7/10/17 Tr. at 30:16-31:4.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

On a related note, at the July 10 hearing there was discussion of documents in Dr. Leonard's possession that are concededly responsive to Request #19.  You represented to the Court that Dr. Leonard was returning from vacation on July 10 or 11, and that you would ask "that once she gets back, that she provide those documents immediately on the same day, and then I can produce them at that point."  7/10/17 Tr. at 21:9-18; 25:6-13.  We have still not received these documents; please produce them without further delay.

Thank you very much.

Very truly yours,

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

David C. Fathi

Cc:      All counsel

Attachment:  Exhibit 1

# EXHIBIT 1

**David Fathi**

| | |
|---|---|
| **From:** | Rand, Lucy <Lucy.Rand@azag.gov> |
| **Sent:** | Monday, July 10, 2017 6:07 PM |
| **To:** | David Fathi; duncan_chambers@azd.uscourts.gov |
| **Cc:** | 'dspecter@prisonlaw.com'; 'ckendrick@prisonlaw.com'; 'kirstin@eidenbachlaw.com'; Amy Fettig; 'ahardy@prisonlaw.com'; 'snorman@prisonlaw.com'; Jamelia Morgan; 'rlomio@prisonlaw.com'; 'skader@azdisabilitylaw.org'; 'mabela@azdisabilitylaw.org'; Kathy Brody; 'Rpratt@azcorrections.gov'; 'bkeogh@azcorrections.gov'; 'ntaylor@azcorrections.gov'; Gottfried, Michael; 'dstruck@swlfirm.com'; 'tbojanowski@swlfirm.com'; 'EPercevecz@swlfirm.com'; 'rlove@swlfirm.com'; 'afletcher@swlfirm.com'; 'AOrcutt@swlfirm.com'; Jennifer Onka; 'megan@prisonlaw.com'; 'sarah@prisonlaw.com' |
| **Subject:** | PARSONS v. RYAN, USDC CV12-00601 - LMS12-0152 |
| **Attachments:** | Req. ##18 & 19: Docs. re: Performance Measure Monitoring - PARSONS v. RYAN |

Mr. Fathi and Judge Duncan,

Pursuant to the Court's order during the July 10, 2017, discovery hearing, attached hereto is the email Defendants sent regarding Plaintiffs' request for production ##18 and 19.

Thank you.



**Lucy M. Rand, Assistant Attorney General**
ARIZONA ATTORNEY GENERAL'S OFFICE
SGD / LMS / Department of Corrections Unit
1275 W. Washington St., Phoenix, AZ 85007-2926
**Direct: 602.542.7683**
**Secretary:** 602.542.2470 Griselda Ybarra
Receptionist: 602.542.1610
Lucy.Rand@azag.gov

NOTICE: This e-mail, including attachment(s), is the property of the Office of the Arizona Attorney General and contains information that may be PRIVILEGED, CONFIDENTIAL, or otherwise exempt from disclosure by law. It is intended only for the recipients to whom it is addressed. If you receive this communication in error, immediately notify the sender at the e-mail address shown above or call (602) 542-2470, and delete the original message. Thank you.

## David Fathi

| | |
|---|---|
| **From:** | Rand, Lucy <Lucy.Rand@azag.gov> |
| **Sent:** | Friday, June 30, 2017 10:43 PM |
| **To:** | 'Chris.Tucker@Corizonhealth.com'; 'Cole, Lynn (Lynn.Cole@CorizonHealth.com)'; 'Lynn.Calcote@corizonhealth.com' |
| **Cc:** | 'rhonda.almanza@corizonhealth.com'; 'Jennifer.Finger@Corizonhealth.com'; 'RPratt@azcorrections.gov'; 'NTaylor@azcorrections.gov'; 'tbojanowski@swlfirm.com'; 'dstruck@swlfirm.com'; 'EPercevecz@swlfirm.com'; 'Orcutt, Anne (aorcutt@swlfirm.com)'; Gottfried, Michael; MacPherson, Scott |
| **Subject:** | Req. ##18 & 19: Docs. re: Performance Measure Monitoring - PARSONS v. RYAN |
| **Attachments:** | PHX-#6052250-v1-PARSONS_(12-0152)__DECLARATION_RE_PERFORMANCE_MEASURE_MONITORING.DOCX |
| **Importance:** | High |

Hi all,

The Court has ordered the production of documents responsive to Plaintiffs' request below:

> **Request #18: Compliance with the Court's Orders:**
> All documents reflecting, discussing, or establishing policies and/or practices related to Defendants' compliance with the Court's Nov. 10, 2016 Order, with regard to the nine performance measures to which the order is applicable, and documents sufficient to show the implementation and compliance with the Order; and,
>
> **Request #19: Compliance with the Court's Orders:**
> All written direction or instructions, including all training materials, provided to ADC or Corizon staff regarding compliance with the Court's orders on monitoring methodology, including but not limited to Doc. 1673, 1745, 1754, 1831, 1833, and 1915.

1.  Please conduct a search to locate any documents responsive to the above requests for documentation.  If you already provided documentation, please search again for documentation not already produced or documentation created since the last time you produced documents.

2.  Attached hereto, is a draft declaration.  Each person who conducts this search must sign and return the declaration, regardless of whether documents are found and returned, so please ensure that your search for these documents is <u>thorough</u> and <u>exhaustive</u>.  Please customize the declaration as necessary.

**Please provide all documentation by Wednesday, July 12, 2017**.

Thank you.



**Lucy M. Rand, Assistant Attorney General**
ARIZONA ATTORNEY GENERAL'S OFFICE
SGD / LMS / Department of Corrections Unit
1275 W. Washington St., Phoenix, AZ 85007-2926
**Direct: 602.542.7683**
**Secretary:** 602.542.2470 Griselda Ybarra
Receptionist: 602.542.1610
Lucy.Rand@azag.gov

1

MARK BRNOVICH
ATTORNEY GENERAL

Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone:    (602) 542-1610
Fax:             (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:    (480) 420-1600
Fax:             (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
khanger@swlfirm.com
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>                                        Plaintiffs,<br><br>         v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>                                        Defendants. | No. CV12-00601-PHX-DKD<br><br>**DECLARATION OF**<br>_____ |

#6052250

I, _____, declare under penalty of perjury that the following information is true to the best of my information, knowledge, and belief:

1.   I am over the age of 18 years and am competent to testify to, and have personal knowledge of, the matters set forth in this Declaration.

2.   I am employed by the Arizona Department of Corrections and am the _____ for ASPC-_____.

3.   If called as a witness, I could testify competently to the facts stated herein.

4.   I received a request for documents as follows:

All documents reflecting, discussing, or establishing policies and/or practices related to Defendants' compliance with the Court's Nov. 10, 2016 Order, with regard to the nine performance measures to which the order is applicable, and documents sufficient to show the implementation and compliance with the Order;

and,

All written direction or instructions, including all training materials, provided to ADC or Corizon staff regarding compliance with the Court's orders on monitoring methodology, including but not limited to Doc. 1673, 1745, 1754, 1831, 1833, and 1915.

5.   After conducting a diligent search and/or causing my staff to conduct a diligent search, I verify that I reviewed copies of the responsive documents and that all responsive documents, if any, were provided to defense counsel on July _____, 2017.

6.   To the best of my knowledge, as of the date of this Declaration, I produced all responsive documents to defense counsel.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON this ___ day of July, 2017.

_____

#6052250                                                    2

# EXHIBIT 2

**P E R F O R M A N C E   M E A S U R E S**

Health Care Performance Measure No. 25
Stipulation Category: Emergency Response (01)

CGAR Category: Emergency Response (C) 01

| Performance Measure: |
| --- |
| A first responder trained in Basic Life Support responds and adequately provides care within three minutes of an emergency. |

| CGAR Question: |
| --- |
| Are first responders trained in Basic Life Support responding and adequately providing care within three (3) minutes of an emergency? |

| Source of Records/Review: |
| --- |
| Appropriate and pertinent Significant Incident Reports (SIRs), Incident Reports (IRs), and ER spreadsheet/report from monitored month (ADC). |

| Methodology: |
| --- |

- This performance measure evaluates two components of an emergency response: (1) the timeliness, and (2) the adequacy of the response.  If either component is noncompliant, the record should be marked as noncompliant.

- If there are more than ~~The monitor will select the first~~ ten (10) inmates per yard from the SIRs and IRs from the monitored month that required basic life support, the monitor will randomly select a sample of ten inmates for review.  If there are fewer than ten inmates, the monitor will review 100%.

- ~~An emergency requiring basic life support is defined as one requiring the use of an AED or performance of CPR~~Basic Life Support ("BLS") is defined as emergency care performed to sustain life that includes CPR, automated external defibrillation, control of bleeding, and stabilization of injuries and wounds.

- A ~~First~~first ~~Responders~~responder ~~may be either medical or security officers~~is a medical or corrections staff member trained in BLS.

- To measure the timeliness of the response, ~~T~~the Monitor will compare the time interval starting at the activation of an ICS and/or placement of the first call for an emergency response, whichever is earliest, and ending with the arrival of a first responder and the performance of BLS.~~the SIR is initiated to the time of response where either use of an~~

Draft Revised: 8/16/17

**P E R F O R M A N C E   M E A S U R E S**



AED or performance of CPR was initiated.

- To measure the adequacy of the response, the monitor will evaluate whether the response was appropriate for the type of emergency situation presented.  If the first responder was a medical staff member, the monitor will review the nursing protocols in Appendix E to the Health Services Technical Manual in making this determination.

43

# EXHIBIT 3

| | Emergency Response Orders | OPR: |
|---|---|---|
| Arizona Department of Corrections | | HS Contract Vendor Regional Director of Nursing<br>HSCMB HS Coordinator (Nurse Monitor) |
| Health Services Technical Manual | HSTM<br>Appendix E<br>Section 1.0. | Supersedes:  1/1/2010<br>Effective Date:  07/01/2016 |

The Emergency Response Orders were developed to provide guidance in emergency or life threatening situations.  Using these guidelines, licensed nursing staff may initiate emergency care based on nursing assessment in consultation with a Medical Practitioner.

The relevant medical history, pertinent physical findings, and vital signs shall be available for the Practitioner/ Provider and thoroughly documented in the medical record by the Nurse.

o   These orders are for **emergencies and life-threatening situations <u>only</u>**.  The Emergency Response Orders may be initiated by Contract Vendor Medical/ Nursing staff to manage emergencies and life threatening situations affecting staff and visitors.  Vendor Medical/Nursing staff will complete an information report for staff or visitors and submit the report to the Vendor Facility Health Administrator.  These procedures are to be utilized only if there is an immediate or imminent threat to the patient's life.  Should an emergency or life-threatening situation occur, treatment should be implemented in the following order:
   ▪   Activate ICS, if not already activated.
   ▪   Have Complex Control access the local EMS system via 911, if necessary.
   ▪   Institute emergency measures listed under the appropriate Emergency Response Orders.
o   **Note**:  Emergency Response Orders containing instructions to administer oxygen at the maximum flow rate of 15 liters per minute may not be possible in some of the ASPC health units due to equipment (tank regulator) limitations.  In these situations, **8 liters** or **10 liters per minute** may be the highest flow rate that can be attained.
   ▪   Notify Vendor health care Practitioner and obtain subsequent orders.
   ▪   Document the incident **as soon as possible** in the Health Record.  Documentation must be completed prior to the end of shift.
   ▪   Any incident requiring use of the Emergency Response Orders and documentation in the Health Record **must be signed** by the responsible Vendor Practitioner on the following business day or as soon as possible.
   ▪   If transport is required, complete Consultation Report form prior to transport.
•   The Emergency Response Orders must be reviewed and signed at least annually by HS Contract Vendor Regional Medical Director, HS Contract Vendor Regional Director of Nursing, and HSCMB Medical Program Administrator.

*1)*    *Table of Contents*

| Title | Number |
|-------|--------|
| Acute Asthma/Bronchospasm | 1 |
| Anaphylaxis | 2 |
| Cardiac Arrest | 3 |
| Chest Pain | 4 |
| Heatstroke | 5 |
| Hypoglycemia | 6 |
| Overdose | 7 |
| Shock | 8 |
| Smoke Inhalation | 9 |
| Status Epilepticus | 10 |
| Unconscious Patient | 11 |

## ACUTE ASTHMA / BRONCHOSPASM --- ORDER 1

Obtain pertinent history of current attack, measure vital signs including $O_2$ saturation, perform a nursing assessment/evaluation of the heart and lungs, and record in the Health Record.

For wheezing documented on examination, or poor tidal volume/air exchange is noted, initiate treatment as follows:

- Administer small volume nebulizer treatment (**SVN**) with **0.5 cc Albuterol mixed with 2.5 cc Normal Saline.**
- May repeat immediately, if no improvement.
- Notify Vendor Practitioner and obtain subsequent orders, if indicated.

## ANAPHYLAXIS --- ORDER 2

Anaphylactic reactions can be caused by insect bites, most notably bees and other stinging insects. They can also be caused by ingestion of foods, as well as medications, both prescriptive and illegal. Occasionally, such reactions can occur after inhalation of allergens or topical application of medication. Generally, parenteral and not oral administration of medication causes anaphylaxis.

Anaphylaxis is characterized by the onset of symptoms from the time of the triggering event is short, often between 5 and 60 minutes. **Note: The more rapid the onset of symptoms, the more severe the reaction.**

Common Signs/Symptoms:

- Tightness in the chest
- Rapid respiratory rate: tachypnea
- Cough
- Wheezing / Rales
- Generalized rash and hives/or itching
- Angioedema of the face or tongue
- Stridor due to laryngeal edema

*Treatment*

- Place patient in the supine position, or the position that best supports respiratory effort.
- Take and record vital signs, including Oxygen ($O_2$) saturation.
- Place patient in Trendelenburg by adjusting the position of the bed or by raising the lower extremities with several pillows if systolic blood pressure is less than 90 mm Hg.
- Begin $O_2$ at 15 liters per minute via non-rebreather mask, unless there is a known history of Chronic Obstructive Pulmonary Disease (COPD), in which case, $O_2$ should be administered by nasal cannula at no more than 2 liters per minute.
- Assess patient for evidence of stridor, facial swelling, and swelling of tongue, generalized rash, wheezes, or rales. If present, begin treatment with Epi-Pen per package insert instructions, or aqueous epinephrine (1:1000) 0.3 mg SUBCUT.
- After the first dose of epinephrine, administer Diphenhydramine 50 mg IM.
- Repeat vital signs and document.
- If above symptoms persist, repeat Epi-Pen per package insert instructions or aqueous epinephrine (1:1000) 0.3 mg SUBCUT every 20 minutes for a total of 3 doses.

Note: If a second dose is required, check vital signs and contact the Practitioner. Notify Complex Control to activate local EMS system.

- Start IV with Normal Saline. Run at an appropriate rate (not to exceed 200 cc/hr) to keep systolic blood pressure >110 mm Hg.
- Prepare patient for transport.

<u>CARDIAC ARREST --- ORDER 3</u>

- Activate ICS, if not already done.
- Assess ABCs
- Place patient on a firm horizontal surface.
- Have officers remove other inmates from the immediate area, if necessary.
- Assure <u>A</u>irway is patent.
- Begin Rescue <u>B</u>reathing.
- Perform external chest compressions to maintain <u>C</u>irculation.
- If AED is available, activate and shock if indicated, then continue CPR.
- <u>D</u>elegate rescue breathing/ventilation and external cardiac compressions to security staff.
- Begin IV with Normal Saline at a keep open rate.
- Notify Complex Control to activate local EMS via the 911 system.
- Continue CPR until the local EMS provider arrives on scene.
- Notify Practitioner and prepare for transport of patient.

<u>CHEST PAIN --- ORDER 4</u>

Take medical history, measure vital signs including $O_2$ saturation, perform a cardiac and respiratory assessment/evaluation, and record in the Health Record.

- Administer $O_2$ via non-rebreather mask at 15 liters per minute unless there is a known history of COPD; in which case, administer $O_2$ via nasal cannula at no more than 2 liters per minute.
- Administer Nitroglycerin 0.4 mg sublingually and Aspirin 81 mg orally (chewable). Measure vital signs and record.
- Obtain a 12 lead ECG.
- Notify Complex Control to activate EMS system via 911.
- May repeat nitroglycerin twice at five-minute intervals, if necessary.

    i.   Monitor and record vital signs after each dose.

    ii.   Document patient's response to medication in the Health Record.

- Start IV with Normal Saline at a keep open rate.
- Notify Practitioner and obtain subsequent orders.

## HEATSTROKE --- ORDER 5

- Characterized by hot, dry skin, temperature generally greater than 104 Fahrenheit, and evidence of central nervous system (CNS) dysfunction, such as delirium, seizures, or coma.
- Instruct correctional officers to begin emergency treatment by moving patient to a shady area. Cover patient with wet towels or spray with cool water, if available, while being transported to the Health Unit. Have the patient drink cool water, if able.
- Upon arrival in Health Unit, take vital signs including temperature and $O_2$ saturation. Record in the Health Record.
- Remove all clothes, and cover with wet towels.
- If temperature is 104 degrees Fahrenheit or greater, or if delirium, seizures or unresponsiveness is present, notify Complex Control to activate local EMS via the 911 system.
- Administer $O_2$ via non-rebreather mask at 15 liters per minute, unless there is a known history of COPD; in which case, administer $O_2$ via nasal cannula at no more than 2 liters per minute.
- Begin IV with Normal Saline at a rate not to exceed 200cc/hr.
- Begin cooling using wet sheets with ice packed around patient.
  - o   Use fans to accomplish vigorous airflow over patient.
  - o   Use ice packs in axilla, neck and groin areas.
- Notify Practitioner and obtain subsequent orders, if indicated.  Prepare for transport of patient.

## HYPOGLYCEMIA --- ORDER 6

Treatment without unconsciousness:

- Take medical history; obtain vital signs, glucose meter reading, and $O_2$ saturation.  Record in the Health Record.
- If blood glucose is below 60mg/dl, give up to three (3) glucose chew tablets 5g each (in individual blister pack) or glucose chew tablets 4g each (in packaged tubes).  Instead of glucose chew tablets, may give one tube of glucose gel orally.
- Obtain repeat glucose meter reading in 30 minutes and record.
- Notify Vendor Practitioner and obtain subsequent orders.

Treatment with unconsciousness or altered state of consciousness:

- Obtain vital signs, glucose meter reading, and $O_2$ saturation.  Record in Health Record.
- Start IV with D5W at keep open rate.  If unable to obtain IV access, skip to #7.
- Give 50 cc D50 IV push.  (RN only)
- LPN (Follow steps 7- 12 below)
- Obtain repeat glucose meter readings in 10 -15 minutes.
- If no response to D50, reassess patient using Emergency Response Order, Unconsciousness.
- Notify Vendor Practitioner and obtain subsequent orders.
- If unable to obtain IV access, administer Glucagon 1mg IM.
- Obtain glucose meter reading 15 minutes after administration of Glucagon.
- If glucose meter reading is 60mg/dl or less, or if patient is still symptomatic, may repeat Glucagon 1 mg IM.

- If no response to Glucagon and still unable to access IV, reassess patient using Emergency Response Order, Unconsciousness.
- Notify Vendor Practitioner and obtain subsequent orders.
- After stabilizing the patient, try to obtain a clear medical history. It is important to check for areas of possible injury if the patient lost consciousness.
- If there are potential neck injuries, immobilize the patient's neck with a cervical collar and notify the Practitioner.

OVERDOSE ---: ORDER 7

Overdose can occur with prescribed medication or illegal medication. It can be purposeful or accidental.

TREATMENT

- Unconscious Patient --Follow Emergency Response Orders, Unconsciousness.
- Conscious Patient
- Obtain medical history, including drug(s) taken. Measure vital signs, including $O_2$ saturation, and record in the Health Record.
- From any prison complex, Poison Control Center can be reached at 1-800-222-1222.
- If Poison Control Center indicates a need for oxygen, IV placement, or antidotes, follow instructions below:
- Start $O_2$ via nasal cannula at 4-6 liters per minute, unless there is a known history of COPD, in which case, administer $O_2$ via nasal cannula at no more than 2 liters per minute.
- Start IV with Normal Saline at keep open rate.
- Follow antidote instructions, up to and including the PO administration of activated charcoal. Use directions printed on the box for dosage and frequency.
- Notify Vendor Practitioner of incident and obtain subsequent orders, if indicated.
- Transport to Emergency Department at nearest hospital if advised by either the practitioner or the Poison Control Center.

SHOCK --- ORDER 8

Shock is a syndrome characterized by decreased tissue perfusion. While the syndrome itself is a diagnosis, there is always an underlying cause. Both the cause and the shock must be treated simultaneously or the outcome will be lethal.

Types of Shock:

- Hypovolemic shock
- Cardiogenic shock
- Septic shock
- Anaphylactic shock
- Other (pericardial tamponade, pulmonary embolus, venous obstruction, cervical cord transection)

Early in the syndrome, the following may occur:

- Slightly increased, normal, or slightly decreased blood pressure.
- Restlessness and anxiety
- Mild tachycardia
- Cool, clammy skin

As the syndrome progresses, the following may occur:

- Decreased systolic blood pressure (<90 mm Hg)
- Altered level of consciousness

- Tachycardia
- Tachypnea (usually a rapid, shallow respiratory pattern)
- Pale, cool, clammy skin

TREATMENT at the facility should be aimed at resuscitation, stabilization (if possible), and transport. Characterization of the type of shock is unimportant.

- Obtain pertinent medical history and vital signs including $O_2$ saturation and record in the Health Record.
- Place patient in the supine position.
- If systolic blood pressure is <90 mm Hg, place patient in Trendelenburg position by adjusting the position of the bed or by raising the lower extremities with several pillows.  ICS, if not already done.
- Notify Complex Control to activate local EMS system via the 911.
- Administer $O_2$ via non-rebreather mask at 15 liters per minute.  Unless there is a known history of COPD, in which case, administer $O_2$ via nasal cannula at no more than 2 liters per minute.
- Start IV with Normal Saline.
- Run at appropriate rate (not to exceed 200cc/hr) to keep systolic blood pressure at or above 110 mm Hg.
- Notify Vendor Practitioner and obtain subsequent orders.
- Transport to Emergency Department at nearest hospital.

SMOKE INHALATION --- ORDER 9

- Smoke and other toxic fumes, including those from chemicals are primarily respiratory mucosal irritants.  Substantial exposure can lead to respiratory mucosal damage, and in severe cases, can destroy the respiratory epithelium.
- Varying degrees of respiratory symptoms and distress are seen with inhalation injuries.  Cough is the most frequent symptom, along with mild respiratory distress.  Moderate or severe respiratory distress, as evidenced by flaring of the nostrils, use of respiratory accessory muscles and sternal or costal retractions are indicative of significant respiratory injury.  Patient with anything other than mild distress following an inhalation injury should be transported to a definitive care center.

TREATMENT

- If moderate to severe respiratory distress is present, activate ICS.
- Notify Complex Control to activate the local EMS system via 911.
- Obtain a focused medical history including:
- Mechanism of inhalation, and
- iIdentification of substance inhaled, and
- Current diagnoses on record and current medication regimens, and
- Record this information on the Health Record.
- Obtain vital signs, including $O_2$ saturation, and record in the Health Record.
- Place patient in the supine position, with head elevated 45: 90 degrees.
- Administer $O_2$ via non-rebreather mask at 15 liters per minute, unless there is a known history of COPD; in which case, administer $O_2$ via nasal cannula at no more than 2 liters per minute.
- Start IV with Normal Saline at keep open rate.
- Notify Vendor Practitioner and obtain subsequent orders.
- Prepare patient for transport to Emergency Department at nearest hospital.

STATUS EPILEPTICUS --- ORDER 10

Status Epilepticus is a life-threatening condition.  Generally, seizures that occur during Status Epilepticus are of the grand mal type, and occur one after the other.  The patient may or may not regain some level of consciousness between seizures.  Seizures may occur in rapid progression, or may have some short period of time (usually 10 minutes or less) between episodes.  Cerebral hypoxia and anoxia are common, especially when the seizure activity is repetitive.

TREATMENT

- Activate ICS, if not already activated.
- Notify Complex Control to activate the local EMS system via 911.
- Place patient in the supine position, and be prepared to protect airway if necessary.
- Administer $O_2$ via non-rebreather mask at 15 liters per minute, unless there is a known history of COPD; in which case, administer $O_2$ via nasal cannula at no more than 2 liters per minute.
- Start IV with Normal Saline at keep open rate.
- For adults weighing 167 -244 lbs: Administer Diastat (Diazepam) 20 mg RECTAL GEL, may repeat 4-12 hours later, or other appropriate rapid acting parenteral Bezodiazepine upon order from the Practitioner, with proper monitoring of the patient
- For adults weighing 112 -166 lbs: Administer Diastat (Diazepam) 15 mg RECTAL GEL, may repeat 4-12 hours later, or other appropriate rapid acting parenteral Benzodiazepine upon order from the Practitioner, with proper monitoring of the patient.
- Notify Vendor Practitioner and obtain subsequent orders.
- Obtain pertinent medical information from the Health Record, check, and record vital signs in the Health Record.
- Prepare patient for transport to Emergency Department at nearest hospital.

## **UNCONSCIOUSNESS --- ORDER 11**

Unconsciousness, or non-responsiveness, is a symptom rather than a disease entity.

Causes are many, and include trauma, cerebrovascular disease, cardiovascular disease, metabolic disorders, and medication overdoses from both prescribed and illegal drugs.  Factitial unconsciousness may also be seen.

TREATMENT

- Activate ICS, if not already activated.
- Assume that trauma to the neck may have occurred, and stabilize the cervical spine.
- Place in the supine position.  Be ready at all times to roll patient onto side if vomiting occurs. Have suction device available and ready for use.
- Obtain pertinent medical history, vital signs including blood pressure, glucose meter reading, and $O_2$ saturation.  Record in the Health Record.
- Administer $O_2$ via non-rebreather mask at 15 liters per minute, unless there is a known history of COPD, in which case administer $O_2$ via nasal cannula at no more than 2 liters per minute.
- If systolic blood pressure is <90mm Hg, follow Emergency Response Orders, Shock (e.g., place patient in Trendelenburg position).
- If systolic blood pressure is >90 mm Hg, start IV with Normal Saline at a keep open rate.
- If glucose meter reading indicates hypoglycemia with a blood glucose value of less than 60 mg/dl, give 50 cc D50 IV push (RNs only) and follow Emergency Response Orders for Hypoglycemia.
- If hypoglycemia is not present, administer Narcan 2 mg IV push (RNs only).
- This may be repeated after five minutes, if no response.
- For LPNs, administer Narcan 2mg SUBCUT or IM.
- Insert Foley catheter to obtain urine for drug screen.

- Notify Vendor Practitioner and obtain subsequent orders.
- EMS to transport patient to Emergency Department at nearest hospital.