**Index of Exhibits to**
**Plaintiffs' Statement**

Exhibit 1    Agreed Order Appointing Expert, *Lippert v. Godinez*, No. 10-cv-4603
             (N.D. Ill. Dec. 19, 2013)

Exhibit 2    Order, *Graves v. Arpaio*, No. 77-cv-0479 (D. Ariz. Jan. 28, 2009)

Exhibit 3    Order Appointing Experts Pursuant to Rule 706, *Plata v. Davis*, No. C01-
             1351 (N.D. Cal. June 13, 2002)

Exhibit 4    Order, *Carruthers v. Jenne*, No. 76-6068 (S.D. Fla. Aug. 2, 2001)

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DON LIPPERT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 10-cv-4603 |
| | ) | |
| SALVADOR GODINEZ, et al., | ) | Judge Sara Ellis |
| | ) | Magistrate Judge Daniel Martin |
| Defendants. | ) | |
| | ) | |

### AGREED ORDER APPOINTING EXPERT

This Court, with the agreement of the plaintiffs and the state defendants ("parties"), enters this order appointing Dr. Ronald Shansky as an expert ("Expert") in this case pursuant to Rule 706 of the Federal Rules of Evidence.

**Scope of the Expert's Duties**

1a. The Expert will assist the Court in determining whether the Illinois Department of Corrections ("IDOC") is providing health care services to the offenders in its custody that meet the minimum constitutional standards of adequacy. The Expert will investigate all relevant components of the health care system except for programs, services and protocols that relate exclusively to mental health. If systemic deficiencies in IDOC health care are identified by the Expert, he will propose solutions for consideration by the parties and the Court. These proposed solutions (if any) will form the bases for future negotiations between the parties in an effort to craft a final settlement of this matter, or,

Case 2:12-cv-00601-ROS   Document 2250-1   Filed 08/25/17   Page 4 of 26

Case: 1:10-cv-04603 Document #: 244 Filed: 12/19/13 Page 2 of 7 PageID #:1637
Case: 1:10-cv-04603 Document #: 240-1 Filed: 12/16/13 Page 3 of 8 PageID #:1624

alternatively, may be offered into evidence in the trial of this matter. The Expert will not recommend specific treatment for individual offenders unless those recommendations relate to systemic deficiencies in the health care provided to offenders in IDOC custody.

1b. The Expert, his consultants and assistants shall not provide opinions and/or testimony in unrelated cases based on knowledge and/or information gained in the course of performing their services in this matter.

### Retention of Consultants and Assistants

2a. The Expert may retain consultants and assistants as he deems necessary to conduct the assessment required herein. Before doing so, the Expert shall provide written notice to the parties identifying the proposed consultants and/or assistants as well as their fees and relevant experiences. If any party objects, that party shall submit a written statement describing the objection to the other party and the Expert within seven calendar days of receipt of the notice. Within seven calendar days of receipt of the objection, the parties and the Expert shall meet and confer. If an agreement is not reached, any party or the Expert may file a motion with the Court within seven calendar days of the meeting; otherwise any objection is waived.

2b. The Expert shall provide each retained consultant and assistant with a copy of this Order and the Protective Order entered by the Court on April 11, 2012.

### Initial Meeting of the Expert with the Parties

3a. Within 21 days of the entry of this Order, and before the Expert begins his investigation, the Expert shall meet with the parties to discuss how the investigation will be conducted.

3b. If the Expert resigns or otherwise becomes unavailable, the parties will attempt to agree on the selection of a replacement. If the parties are unable to reach agreement, each party will nominate one person to serve as the replacement and present the issue to the Court for resolution.

**Investigation**

4a. The Expert shall have the discretion to plan and conduct the investigation in accordance with his professional judgment, subject to this Order. The Expert shall base his opinions on facts and data reasonably relied upon by experts in the field of correctional health care.

4b. The Expert will review IDOC policies, procedures and forms related to the provision of health care at its correctional facilities.

4c. The Expert, his consultants and assistants will have the authority to perform on-site tours of all IDOC facilities, subject to any security concerns and with at least 12 hours' notice to the IDOC General Counsel's office. During his visits to IDOC facilities, the Expert and his consultants and assistants may observe the delivery of treatment and services.

4d. The parties tentatively recommend that the Expert and/or his consultants and assistants visit Stateville Correctional Center/Northern Reception Center, Dixon

Correctional Center, Logan Correctional Center/Reception Center, Hill Correctional Center, and Western Correctional Center. However, the Expert may elect to visit other facilities or decline to visit any of the recommended facilities at his discretion.

4e. The Expert and his consultants and assistants shall have timely access to all files, reports or other records which are not privileged under the attorney-client or work product privileges, and documents relevant to IDOC health care within the control of or subject to access by IDOC. In the event the Expert seeks access to a document relevant to his investigation that is not within the control of or subject to access by IDOC, the parties will assist the Expert in obtaining access to the document, including by serving a subpoena or bringing the matter to the attention of the Court. The Expert and his consultants and assistants will have access to health care staff, inmates and other persons having information relevant to the assessment of the adequacy of health care provided to offenders in IDOC custody.

## Report

5a. Within 210 calendar days of the initial meeting between the Expert and the parties detailed in Paragraph 3a of this Order, the Expert shall deliver to the parties a Confidential Draft Report addressing the issues described in Paragraph 1a of this Order.

5b. Within forty-five calendar days of receipt of the Confidential Draft Report, any party may submit to the Expert written comments regarding the Confidential Draft Report, with notice and a copy to the other party.

5c. Within thirty calendar days of the receipt of any written comments, the Expert shall conclude his investigation and submit a Final Confidential Report to the parties, which shall be treated as if marked "Attorneys Eyes Only" pursuant to the Protective Order entered by this Court on April 11, 2012 until either the plaintiffs and state defendants move for approval of a proposed settlement , or there is mutual agreement or a determination by the Court that there has not been reasonable progress toward a settlement in this matter.

5d. Pursuant to Rule 706(b) of the Federal Rules of Evidence, the Expert may be deposed by any party only following either mutual agreement of the parties or a determination by the Court that there has not been reasonable progress toward settlement in this matter. The Expert may, also, be called as a witness at trial or hearing by any party or the Court. No party shall be bound by any of the opinions contained in the Final Report.

**Documents**

6a. The Expert and his consultants and assistants, and counsel for any party, shall maintain the confidentiality of all material obtained and reviewed pursuant to this Order, as if all material was marked "Attorneys Eyes Only" as set forth in the Protective Order entered by this Court on April 11, 2012.

6b. All drafts of and comments to any drafts of the Expert's Reports required by or produced pursuant to this Order and/or future Court Orders shall be treated as "Attorneys Eyes Only" material under the April 11, 2012, Protective Order.

**Ex Parte Communications**

Case 2:12-cv-00601-ROS   Document 2250-1   Filed 08/25/17   Page 8 of 26

Case: 1:10-cv-04603 Document #: 244 Filed: 12/19/13 Page 6 of 7 PageID #:1641
Case: 1:10-cv-04603 Document #: 240-1 Filed: 12/16/13 Page 7 of 8 PageID #:1628

7. The Expert and his consultants and assistants may communicate ex parte (without other parties or counsel) with any party or counsel for any party. If the Expert or his consultants or assistants communicate in writing with the Court, they must simultaneously serve copies on the parties. The Expert and his consultants and assistants shall not communicate orally with the Court without affording the parties prior notice and an opportunity to be present.

**Compensation of the Expert**

8a. Until such time as costs would be awardable under Rule 54(d) of the Federal Rules of Civil Procedure, the plaintiffs and defendants shall jointly compensate and finance in equal shares the work of the Expert and his consultants and assistants. The Expert and his consultants and assistants shall charge the parties at the rate and for the costs which the parties agree, in advance, to pay. The Expert and his consultants and assistants shall invoice the parties every 30 days, and the plaintiffs and state defendants each shall be obligated to pay for half of the services provided in the preceding 30-day period.

8b. The Expert, his consultants and assistants and the Illinois Department of Corrections will enter into a contract pursuant to Illinois law, with the terms to be consistent with this Order. This contract will not affect the plaintiffs' payment of their portion of the Expert's fees and shall encompass the limitations articulated in Paragraph 1b of this Order.

8c. At such time as costs become awardable under Rule 54(d), either party may request that the Court, in accordance with applicable rules, order that all or a portion of the

compensation provided by the party to the Expert under this Order be charged against the opposing party as costs pursuant to Rule 706(c)(2) of the Federal Rules of Evidence.

**Wexford Health Sources**

9. Wexford Health Sources shall have the opportunity to participate in the meeting with the Expert described in Paragraph 3a of this Order, shall receive a copy of and have the opportunity to submit written comments regarding the Confidential Draft Report described in Paragraphs 5a and 5b of this Order, and shall receive a copy of the Final Confidential Report described in Paragraph 5c of this Order.

Enter:

_____

United States District Judge

DEC 1 9 2013

Approved by:

/s/ Benjamin S. Wolf _____

Attorney for Plaintiffs

/s/ Kevin Lovellette _____

Attorney for Defendants

7

# EXHIBIT 2

1

2

3

4

5

6                        IN THE UNITED STATES DISTRICT COURT

7                           FOR THE DISTRICT OF ARIZONA

8

9   Fred Graves, Isaac Popoca, on their own )   No. CV-77-0479-PHX-NVW
    behalf and on behalf of a class of all )
10  pretrial detainees in the Maricopa County )   **ORDER**
    Jails,                                  )
11                                          )
                    Plaintiffs,             )
12                                          )
    vs.                                     )
13                                          )
                                            )
14  Joseph  Arpaio,  Sheriff  of  Maricopa )
    County;  Fulton  Brock,  Don  Stapley, )
15  Andrew  Kunasek,  Max  W.  Wilson,  and )
    Mary  Rose  Wilcox,  Maricopa  County )
16  Supervisors;                            )
                                            )
17                  Defendants.             )
                                            )
18  _____ )

19         Plaintiffs and Defendants Fulton Brock, Don Stapley, Andrew Kunasek, Max

20  Wilson, and Mary Rose Wilcox (collectively "Board Defendants") ask the Court to

21  appoint a medical expert and a mental health expert jointly selected by the parties.  (Doc.

22  ##1767, 1768.)  They have reached agreement on the selection of two experts to evaluate

23  the delivery of medical and mental health care at the Maricopa County Jails, assist in the

24  development of a plan demonstrating compliance with the Second Amended Judgment,

25  and report on the implementation of a plan.  (*Id.*)  They have reached agreement on five

26  related issues and have been unable to resolve two issues.

27         First, the parties have not reached agreement on whether, upon reasonable notice,

28  Plaintiffs' counsel may tour Maricopa County Jails facilities, speak with detainees and

1    staff, and review records on-site.  The Board Defendants contend permitting Plaintiffs'

2    counsel such access "serves no purpose but to enable fishing expeditions to locate

3    individual claims," "undermines the authority of the experts," and "duplicates the work

4    that will be performed."  (Doc. #1768 at 3.)  The Board Defendants further contend such

5    access is unnecessary because the experts will have full access to Plaintiffs' clients and

6    their records, Plaintiffs' counsel may speak with the experts ex parte and may ask the

7    experts to review certain records or speak with certain detainees or staff if the need arises,

8    and Plaintiffs' counsel may communicate by mail with their clients.  (*Id.*)

9         Second, the parties have not reached agreement on whether, upon reasonable

10   request, CHS will provide copies of records to Plaintiffs' counsel for off-site review.  The

11   Board Defendants contend it is unnecessary for Plaintiffs' counsel to review records

12   because Plaintiffs' counsel will be able to suggest to the experts identified charts to

13   review, and the experts are hired to review the charts, not Plaintiffs' counsel.  The Board

14   Defendants acknowledge, however, that "there may be some occasions where it may be

15   necessary to provide limited records to Plaintiffs' counsel, but it is anticipated that those

16   occasions will be few and far between."  (Doc. #1768 at 4.)

17        On October 22, 2008, the Court found current and ongoing violations of

18   constitutional right and of the Amended Judgment as originally written or as narrowed by

19   the Second Amended Judgment and that Defendants are in breach of the Amended

20   Judgment and as it is restated and narrowed by the Second Amended Judgment.  (Doc.

21   #1634 at 79, ¶ 475.)  The Court expressly stated:

22        As in any case closed by entry of a permanent injunction, enforcement for
          non-compliance with the permanent injunction may be sought by an
23        aggrieved Plaintiff.  Such enforcement may be in the form of further
          specific orders to implement the permanent injunction and/or contempt
24        remedies to give incentive to cease the violations of the permanent
          injunction.
25
     (*Id.* at ¶ 476.)  Thus far, the parties have avoided more costly and time-consuming
26
     enforcement proceedings by negotiating and agreeing upon a process for bringing the
27
     Maricopa County Jails into compliance with the Second Amended Judgment.  This
28

- 2 -

process includes bringing in independent experts to evaluate Defendants' compliance with the medical and mental health provisions of the Second Amended Judgment and to assist Defendants in achieving compliance where necessary.  The independent experts do not, however, represent the Plaintiffs' interests, and Plaintiffs require representation for their interests in Defendants' compliance with the Second Amended Judgment until compliance is achieved and the judgment is terminated.  *See Duran v. Carruthers*, 885 F.2d 1492, 1495 (10th Cir. 1989) (appointment of special master did not render inmate plaintiffs' monitoring of compliance with consent decree unnecessary or duplicative; plaintiffs' counsel had "a continuing duty and responsibility to make sure that the defendants comply, and continue to comply with the decree"); *Keith v. Volpe*, 833 F.2d 850, 857 (9th Cir. 1987) (district court was entitled to believe that relief under a consent decree would occur more speedily and reliably if plaintiffs' counsel monitored post-judgment activities; therefore, post-judgment monitoring by plaintiffs' counsel was necessary); *Ginest v. Bd. of County Comm'rs*, 423 F. Supp. 2d 1237, 1240 (D. Wyo. 2006) (post-judgment activities of plaintiffs' counsel were necessary and did not duplicate those of court-appointed compliance monitor).   It is far more efficient to permit Plaintiffs to have meaningful representation during this remedial phase than to permit the Board Defendants to invest substantial time and money in unilateral efforts that may not avoid enforcement litigation.

As a practical matter, Plaintiffs' counsel cannot give meaningful input to the independent experts without access to the Maricopa County Jails facilities and staff, their clients, and their clients' records.  The Plaintiff class of all pretrial detainees in the Maricopa County Jails is by definition constantly changing, Defendants already have taken some steps toward compliance, and information to which Plaintiffs' counsel had access in the summer of 2008 likely is no longer accurate or complete.  With thousands of pretrial detainees requiring medical and mental health care, it would be extremely inefficient for Plaintiffs' counsel to ask the independent experts to speak to certain detainees or staff or to review certain records when Plaintiffs' counsel have had little or

1   no access to current information.  Moreover, for the independent experts to remain truly

2   neutral, they cannot serve as Plaintiffs' investigators.

3         At the January 9, 2009, status conference, the Board Defendants raised their

4   concern that Plaintiffs' counsel sought to engage in "fishing expeditions" to locate

5   individual claims, rather than to focus on systemic issues relevant to compliance with the

6   Second Amended Judgment.  Plaintiffs' counsel assured the Court their intent was to

7   represent the Plaintiff class and avowed they would not use their access to the Maricopa

8   County Jails during this remedial phase to further the efforts of individual detainees in

9   any individual actions for damages.  If Plaintiffs' counsel misuse or abuse their access to

10  the Maricopa County Jails facilities, staff, records, or detainees, the Board Defendants

11  may ask the Court to impose limitations as warranted by the circumstances.

12        IT IS THEREFORE ORDERED, upon stipulation of the parties, that medical

13  expert Dr. Lambert King and mental health expert Dr. Kathryn Burns are appointed to

14  serve as independent evaluators of the Defendants' compliance with the medical and

15  mental health provisions of the Second Amended Judgment and to be compensated by

16  Defendants for their services.

17        IT IS FURTHER ORDERED, upon stipulation of the parties, that:

18      1.   The experts will evaluate the delivery of medical and mental health care at

19            Maricopa County Jails, identify deficiencies, assist Correctional Health

20            Services ("CHS") in developing a corrective action plan, if needed, to achieve

21            compliance with the Second Amended Judgment, and submit reports on

22            compliance to the Court at 120-day intervals.

23      2.   CHS will provide the experts with clerical and administrative support as they

24            may reasonably need, with the costs to be borne by Maricopa County.  After

25            on-site evaluation, the experts will notify the Court of their need, if any, to

26            retain additional professional support.

27      3.   The experts will have access to Defendants' staff, facilities, and records for

28            purposes of evaluating compliance and may interview detainees in a private

- 4 -

setting.  Upon reasonable request, CHS will provide copies of records to the experts for off-site review.

4.  All parties are free to communicate with the experts ex parte or otherwise.

5.  CHS will compensate each of the experts at an hourly rate of $300.  The experts will submit invoices for their fees and costs to CHS on a monthly basis.  The invoices will show the number of hours worked and the services performed by date.  Costs will be substantiated by customary itemization.  The experts' services will be limited to such as are reasonably necessary to monitor, facilitate, and report on CHS's compliance with the Second Amended Judgment.

IT IS FURTHER ORDERED that, upon reasonable notice to the Defendants, Plaintiffs' counsel may tour the Maricopa County Jails facilities, speak with pretrial detainees and staff, and review records on-site.

IT IS FURTHER ORDERED that, upon reasonable request, CHS will provide copies of records to Plaintiffs' counsel for off-site review.

IT IS FURTHER ORDERED that the hearing set for February 3, 2009, at 9:30 a.m. is vacated.

DATED this 28th day of January, 2009.

_____
Neil V. Wake
United States District Judge

- 5 -

# EXHIBIT 3

**FILED**

JUN 1 3 2002

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIANO PLATA,<br><br>                              Plaintiffs,<br><br>               v.<br><br>GRAY DAVIS, et al.<br><br>                              Defendants. | No. C-01-1351 TEH<br><br>**ORDER APPOINTING**<br>**EXPERTS PURSUANT TO**<br>**RULE 706** |

At the request of the parties and good cause appearing therefor, the Court hereby appoints, with their consent, Joe Goldenson, M.D., Michael Puisis, and Madde LaMarre as court experts pursuant to Federal Rules of Evidence, Rule 706. Compensation for these experts shall be approved by the Court and paid by the California Department of Corrections.

Pursuant to Rule 706(a) the Court hereby informs the experts that their duties shall be as follows:

1. At the request of any party or the Court the experts shall evaluate defendants' Policies, and Procedures and the Audit Instrument to determine whether it is sufficient to satisfy defendants' obligations as set forth in the Stipulation filed herewith.

2. At the request of any party or the Court the experts shall evaluate any modifications proposed by defendants to determine whether those modifications in

COPY

1 combination with the rest of the Policies and Procedures and the Audit Instrument are

2 sufficient to satisfy defendants' obligations set forth in the Stipulation.

3       3. At the request of any party or the Court the experts shall evaluate any

4 modifications proposed by plaintiffs to determine whether those modifications are

5 necessary to satisfy defendants' obligations set forth in the Stipulation.

6       4. At the request of any party or the Court the experts shall evaluate

7 defendants' compliance with their Policies and Procedures or the adequacy of the Audit

8 Instrument.

9       5. Any evaluations by the experts shall be transmitted to the parties in a

10 written report(s). Such reports shall contain the experts' conclusions and shall specify the

11 information upon which any conclusions are based.

12       6. At the request of any party or the Court the experts shall attend any

13 negotiations, mediation sessions or court hearings.

14       7. The experts shall be available to meet with the parties in person or by

15 phone in such a manner as is reasonable and convenient. The experts shall be available to

16 meet with the plaintiffs or defendants separately or jointly as the occasion may warrant.

17       8. With reasonable notice the experts shall have access to all parts of any

18 institution, all relevant documents, all persons (including unprivileged interviews with

19 staff or inmates) and all institutional medical meetings, proceedings, training and

20 programs to the extent that such access is needed to fulfill their obligations.

21       **IT IS SO ORDERED.**

22

23 Dated: 6/13/02

24

25

26 THELTON E. HENDERSON
     United States District Judge

27

28

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **MARCIANO PLATA, et al. v. GRAY DAVIS, et al.**

No.:   **USDC-Northern District, C-01-1351 TEH**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar which member's direction this service is made.  I am 18 years of age and older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **June 21, 2002**, I served the attached **ORDER APPOINTING EXPERTS PURSUANT TO RULE 706 FILED JUNE 13, 2002** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 1300 I Street,  P.O.  Box 944255, Sacramento, California  94244-2550, addressed as follows:

**DONALD SPECTER**
**STEVEN FAMA**
**Prison Law Office**
**General Delivery**
**San Quentin, CA 94964-0001**

**WARREN E. GEORGE**
**McCutchen, Doyle, Brown & Enersen**
**Three Embarcadero Center**
**San Francisco, CA 94111-4066**

**CAROLINE MITCHELL**
**Pillsbury Winthrop**
**50 Fremont Street**
**San Francisco, CA 94105**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **June 21, 2002**, at Sacramento, California.

| | |
|---|---|
| C. Bain | |
| Declarant | Signature |

# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  76-6068-CIV-HOEVELER

OLLIE CARRUTHERS, et al.,

     Plaintiffs,

v.

KEN JENNE, et al.,

     Defendants.

_____/



FILED by MdL D.C.

AUG   2 2001

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## ORDER SETTING EVIDENTIARY HEARING
## AND ADDRESSING RELATED MOTIONS

THIS CAUSE comes before the Court upon Plaintiffs' Motion for an Evidentiary Hearing, Plaintiffs' Motion to Appoint Expert(s), Plaintiffs' Motion for a Scheduling Order, Plaintiffs' Motion for Clarification and Continuance, all filed on July 2, 2001, and Defendants' Motion for Protective Order, filed on July 18, 2001.  At the status conference held on July 20, 2001, the parties were given an opportunity to address the Court regarding these motions.  Having reviewed them in light of oral argument, and otherwise being advised in chambers, the Court enters the following Order.

### I. Plaintiffs' Motion for Evidentiary Hearing

The Defendants concede that before this Court can act on the Defendants' Joint Motion to Terminate/Dissolve Consent Decree it must conduct an evidentiary hearing.

E.g., Loyd v. AL Dep't of Corr., 176 F.3d 1336, 1336 (11th Cir. 1999); see also (Def. Sheriff's Memo. in Opp. to Pla. Mot. for Evid. Hearing, at 1). The Court agrees. Plaintiffs "must be given the opportunity to challenge or to supplement the findings of the monitor and to present evidence concerning the scope of the challenged relief and whether there are 'current and ongoing' violations of federal rights at the prison." Loyd, 176 F.3d at 1342. Thus an evidentiary hearing shall be held to determine whether there are current and ongoing violations of federal rights sufficient to support the continuation of prospective relief, and if so, whether the prospective satisfies the provisions of the Prison Litigation Reform Act of 1995. See 18 U.S.C. § 3626(b)(3) (requiring the relief to go no further than necessary to correct the violation, be narrowly drawn, and the least intrusive means to correct the violation). See Cason v. Seckinger, 231 F.3d 777, 785 (11th Cir. 2000).


## II. Plaintiffs' Motion to Appoint Expert(s)

The Plaintiffs' Motion to Appoint an Expert shall also be GRANTED. Defendants have retained Gary DeLand as a "consultant" in this matter. Although Mr. DeLand has not been designated an "expert," he has been offered as such by the Defendants. (See Sheriff's Memo. in Opp. to Pla. Mot. to Appt. Expert(s), at 3). Mr. DeLand's credentials are substantial and impressive, however, his role as a "consultant" for the Defendant and acknowledged history of representing other defendants create an appearance of partiality in this matter. Therefore, pursuant to Rule 706 of the Federal Rules of Evidence the Court shall appoint an expert whom the parties will be given an opportunity to jointly select. Failing that, the parties may each submit the names and credentials of two candidates, and the Court will select its own expert.

2

The Court recognizes its discretion to apportion the costs of the expert among the parties. <u>See</u> Fed. R. Evid. 706(b). The Plaintiffs have represented to the Court that they are indigent and have been unable to locate an expert willing to testify pro bono. Therefore, to the extent that any remaining fine monies levied and collected in this action are still available in the Court Registry, the court-appointed expert shall be compensated from this fund upon proper motion from the parties. The remainder of the expenses shall be borne by the Defendants, whose conduct occasioned these proceedings. <u>See</u> <u>McKinney v. Anderson</u>, 924 F.2d 1500, 1511 (9th Cir.) (permitting district court to apportion all costs to one side), <u>vacated on other grounds</u>, 502 U.S. 903 (1991).

### III. Plaintiffs' Motion for Scheduling Order

The Plaintiffs have also requested that this Court enter a scheduling order to "establish the timing and sequence of necessary discovery prior to any evidentiary matters being heard." (<u>Pla. Memo. in Supp. of Mot. for Sched. Ord.</u>, at 4). At this time, it is not clear to the Court whether the Defendants wish to retain their own "expert," or instead rely on the court-appointed expert. Although the Defendants "oppose entry of a scheduling order which formalizes a series of pre-hearing tasks, and deadlines for the completion of those tasks," (<u>Def. Memo. in Opp. to Pla. Mot. for Sched. Ord.</u>, at 3), some deadlines may be in order. For example, a deadline for the submission of expert reports and discovery cutoff date might facilitate the timely resolution of the matter at hand. Therefore, Plaintiffs' Motion for the Entry Scheduling Order shall also be GRANTED. The parties have fifteen (15) days to submit a joint scheduling report and proposed scheduling order.

## IV.  Defendants' Motion for Protective Order

Defendants complain that "the (Plaintiffs') Request for production is hopelessly overbroad in its scope." Unfortunately, the Defendants' Motion is also overbroad. Rule 34 of the Federal Rules of Civil Procedure requires that "[i]f objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts." Fed. R. Civ. P. 34.  Similarly, the local rules require that objections to requests to produce "state with specificity all grounds." S.D. Fla. L.R. 26.1.G.3(a).  The Defendants fail to individually identify a single request to which they object and state a basis for that objection.   Therefore Defendants' Motion for Protective Order is DENIED WITHOUT PREJUDICE TO RENEW, should they choose to state with more particularity the portions of the Plaintiffs' Request for Production that they object to, and their legal grounds for so objecting.

## V.  Plaintiffs' Motion for Clarification and Continuance

Lastly, the Court considers Plaintiffs' Motion for Clarification and Continuance. As noted at the beginning of this Order, Plaintiffs' filed this Motion on July 2, 2001. In it they asked for a clarification of the issues to be addressed at the status conference scheduled for July 20, 2001 and asked for a continuation of the evidentiary hearing. The Defendants, however, did not file a response to this motion until July 18, 2001. Now that the conference has been concluded and the Court has set a date for the evidentiary hearing, Plaintiffs' Motion for Clarification and Continuance must be DENIED AS MOOT.

Therefore it is hereby

ORDERED AND ADJUDGED as follows:

(I)      Plaintiffs' Motion for an Evidentiary Hearing is GRANTED.  An evidentiary hearing on the Defendants' Motion to Terminate the Consent Decree shall be held on December  3  , 2001, at  10:30  a.m./p.m. before the undersigned on the ninth floor of the federal courthouse located at 301 North Miami, Avenue, Miami, Florida.      .

(II)     Plaintiffs' Motion to Appoint Expert(s) is also GRANTED.  The parties have thirty (30) days to agree on one neutral expert, excluding Mr. DeLand (whom the Defendants have already retained as a "consultant").  If the parties are unable to agree, they may each submit the names of two candidates and the Court will select its own expert.

The court-appointed expert shall be available to both parties for the limited purpose of investigating compliance with the requirements of the Prison Litigation Reform Act of 1995, 18 U.S.C. § 3626.  In particular, the Court appointed expert shall examine the conditions in Defendants' jails to determine whether prospective relief remains necessary to correct *current or ongoing* violations of federal constitutional rights, and if so, make recommendations narrowly tailored to remedying the situation.

To the extent that any remaining fine monies levied and collected in this action are still available in the Court Registry, the court-appointed expert shall be compensated from this fund upon proper motion from the parties.  The remainder of the expenses shall be borne by the Defendants, whose conduct occasioned these proceedings.

5

(III)   Plaintiffs' Motion for a Scheduling Order is GRANTED.  The parties have fifteen (15) days to submit a Joint Scheduling Report and proposed Scheduling Order pertaining to discovery deadlines for the pending evidentiary hearing on Defendants' Joint Motion to Terminate/Dissolve Consent Decree.


(IV)   Defendants' Motion for a Protective Order is DENIED WITHOUT PREJUDICE TO RENEW should Defendants choose to state with more particularity the portions of the Plaintiffs' Request for Production that they object to, and their legal grounds for so objecting.


(V)   Plaintiffs' Motion for Clarification and Continuance is DENIED AS MOOT.


**DONE AND ORDERED** in Chambers in Miami, this _____ day of August 2001.



William M. Hoeveler
Senior United States District Judge



<u>Copies to:</u>
Professor Howard Messing
Christopher C. Cloney, Esq.
Elijah Williams, Esq.
Stephanie W. Noe, Esq.
Bruce Jolly, Esq.
Mr. John Tiedeberg

6