Michael J. Cohn #288721
ASPC Lewis/Stiner 5A20
P.O. Box 3100
Buckeye, AZ 85326

☒ FILED ☐ LODGED
**Sep 07 2017**
CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

UNITED STATES DISTRICT COURT, ARIZONA

| Parsons, et al, Plaintiffs | 2:12 CV 601 DKD |
|---|---|
| v. | Allegation of corruption by the attorney General |
| Ryan, et al Respondents | Hon. David K. Duncan |

I, Michael J. Cohn, am a class plaintiff in the above captioned case. Per the attached Prison Legal News column, (July 2017, p. 30 & 31.) per the column, the New York attorney General has sued a private medical care vendor for defrauding the taxpayers by not providing adequate medical care per its contract.

In Arizona, the attorney General aides/abets the fraud and Criminal Enterprise by defending A.D.O.C., Corizon Health in this matter. ARS§13-305 (A)(1)(2)(3) "Breach of duty imposed by law." Please, Judge Duncan, give me a credible explanation as to why the attorney General is defending Corizon Health and ADOC, Ryan + Pratt rather than prosecuting them?

Please don't tell me to go through counsel. They are engaged in their customary role, not willing to challenge the criminal aspects of this case. Please understand that as Judge Snow did in the Arpaio case, I know you have the authority to refer this matter to D.O.J. for possible investigation.

I wrote you in 2015 at the time of the Fairness

1 of 5

Hearing. I indicated that none of us expect ADOC/Corizon Health to provide adequate medical care in good faith. Nothing has changed that is meaningful in the sense of a change in Corizon/ADOC's culture. (See Docs. 2046 & 2103). They intend to neglect us and the Attorney General enables this. I see it every day. I helped three inmates with HNR's today and one of them with a medical grievance. The internal grievance system is futile, HNR's are often ignored (This is one statistic that isn't even calculated). Staff shortages are only part of the problem. The essential issue is that the culture of ADOC/Corizon Health is hostile to inmates. They highly placed managerial agents don't want to help us, they want to add to our suffering. No amount of performance standard compliance will change that. As a former psychologist I have the professional background to make such statements,.. but I shouldn't have to. It should be obvious to you!

Please Judge Duncan, refer this matter to D.O.J. in this matter. Arizona Government runs amok. It must be confronted.

Respectfully submitted,                    Date: 9/6/17
Michael J. Cohn, Ed.D.
Michael J. Cohn, Ed.D.
Prisoner Rights Advocate

Declaration
I certify under penalty of perjury that the contents herein are true and correct to the best of my knowledge and understanding as a Pro Se litigant.

Certificate of Service

Original e-filed to:   on: 9/7/17
Clerk of the U.S. District Court

Copy to:   on: 9/7/17  per General Order 14-17
Attorney General

# Seventh Circuit: Prison Doctor Not Entitled to Summary Judgment on Deliberate Indifference Claim

*by Lonnie Burton*

On September 8, 2016, the Court of Appeals for the Seventh Circuit reversed a district court's order granting summary judgment to a federal prison doctor who refused to adequately treat a prisoner with severe burns on his legs. However, summary judgment in favor of a health services administrator was proper, the appellate court ruled.

Federal prisoner Jessie Rivera suffered second-degree burns on his left leg, foot and ankle after he slipped and fell into a pool of boiling water while employed as a kitchen worker at the Federal Correctional Institution in Oxford, Wisconsin. His wounds were initially dressed and treated by a prison nurse, who prescribed a narcotic pain medication. Several months later, after repeatedly complaining of continued pain and numbness in his left leg, Rivera was scheduled to see the prison's doctor, Ravi Gupta.

According to Rivera's complaint, Dr. Gupta refused to examine him, look at his medical records or authorize any treatment whatsoever. Instead, he told Rivera that he would not have burned himself if he hadn't been in prison, and that "only God" could help him, according to court pleadings. Dr. Gupta also threatened to issue Rivera a disciplinary report if he continued to complain about his leg.

Rivera sued the doctor and a prison health services administrator, Cesar Lopez, for deliberate indifference to his serious medical needs under 42 U.S.C. § 1983. Rivera contended that Dr. Gupta's refusal to treat his burns put him at risk of nerve damage that could worsen without treatment, leading to the numbness, pain and difficulty walking that Rivera was in fact experiencing. In support of his argument Rivera submitted documents from a medical website, which Dr. Gupta did not contest.

The district court, however, granted summary judgment to the defendants, holding that Rivera had "produced no expert evidence that Gupta (or Lopez) had been deliberately indifferent to Rivera's numbness and pain." In doing so, the court refused to consider Rivera's website documents and denied his request for appointment of counsel to assist him in responding to the summary judgment motion.

The Seventh Circuit reversed with respect to the grant of summary judgment to Dr. Gupta. The Court of Appeals first noted that the district court erred in 1) refusing to consider Rivera's website evidence, and 2) refusing to appoint counsel to assist Rivera in answering the summary judgment motion when the court had acknowledged that doing so would have helped him secure expert testimony.

"A reasonable jury might well infer that personal hostility, divorced from medical judgment, had motivated Gupta's refusal to provide Rivera with any further treatment," the appellate court wrote. The Seventh Circuit also dismissed Dr. Gupta's contention that Rivera was faking or exaggerating his complaints because he went three years after his meeting with Gupta without seeing medical staff for any pain or numbness in his left leg.

"Rivera may have given up on the medical staff at the prison" until he was transferred to another facility "where he no longer had to worry about Gupta" filing a disciplinary report against him, the Court of Appeals noted.

The district court's grant of summary judgment in favor of Lopez was affirmed, as Lopez was not a medical professional and had no say in Rivera's course of treatment. The case was remanded with instructions for the district court to recruit counsel for Rivera, and remains pending. Rivera represented himself *pro se* on appeal. See: *Rivera v. Gupta*, 836 F.3d 839 (7th Cir. 2016).

# New York State Attorney General Settles Suit Against Jail's Medical Provider

*by Derek Gilna*

In July 2016, New York State Attorney General Eric T. Schneiderman filed a lawsuit against Armor Correctional Health Services, the medical provider for the jail in Nassau County. The suit alleged a dozen prisoners had died at the facility, in large part due to substandard medical care provided by the company. [See: *PLN*, May 2017, p.32].

According to the complaint, the Attorney General sought "an order and judgment ... declaring Armor's practices and conduct violated NY False Claims Act Section 189(1)(a-b) ... [and] declaring that Armor has converted, disposed of, obtained, and/or received public funds without right," by falsifying payment vouchers and providing inadequate medical care.

The company's $11 million contract with the county required payment vouchers to include verification that its work had been properly performed, but the lawsuit alleged that Armor "never reduced the amount owed to reflect that its services were not performed consistent with its contractual requirement."

"Prison inmates rely on companies providing health services for a wide range of medical issues, many of which have gone untreated," Schneiderman stated. "Those struggling with chronic diseases, mental health and substance abuse problems deserve comprehensive, reliable and high-quality medical care."

He also noted that "[f]ailing to provide proper health services as required is completely unacceptable. Neglecting the duty to provide adequate care not only defrauds taxpayers, it compromises the health and safety of inmates, with sometimes fatal consequences."

Prisoner advocates also weighed in. In reference to the Nassau County Jail, Dr. Dean Hart, president of Long Island Citizens for Good Government, said, "It is a horrible scene medically, psychiatrically, psychologically, black mold all over the place; the inmates that got out have described the conditions within."

The Attorney General's office argued that Armor had failed to institute proper quality control safeguards and sick call procedures,

provide adequate medications, properly diagnose diseases and injuries, maintain adequate staffing, and maintain complete and accurate medical records for prisoners.

With respect to medical records, the complaint alleged a serious and potentially fraudulent breach of contract. "An electronic health record system was never implemented," the lawsuit stated, "but there [has] been no deduction for the related costs of the system." The company was paid almost $160,000 to institute an electronic record system but failed to do so.

The predictable result of the inadequate medical care provided by Armor was the deaths of at least fourteen prisoners since 2011, at both the Nassau facility and the Niagara County Jail. According to the New York Commission of Correction's Medical Review Board, "egregious lapses in medical care" contributed to at least seven of the fourteen deaths.

The Nassau County Board, which hired Armor in 2011 and renewed its contract in 2015 despite numerous complaints against the company, did not escape criticism. The New York American Civil Liberties Union filed suit, noting that since Armor took over the contract for health care at the jail, the "volume of complaints received by the Nassau Chapter office of the NYCLU has increased dramatically."

The ACLU and other prisoner advocates accused Nassau County of failing to exercise proper oversight over its medical provider, instead relying on the contract's indemnity agreement to insulate itself from lawsuits and payouts.

The suit filed by the Attorney General settled in October 2016. Armor agreed "not to bid on or enter into any contract with any municipality in New York State for the provision of jail health services" for a three-year period; further, the company agreed to pay $350,000 to the Attorney General's office. Of that amount, the AG said it would designate $250,000 to Nassau County "as reimbursement related to Armor's performance of certain contractual obligations to the County...." See: *People v. Armor Correctional Health Medical Services*, Supreme Court of New York, County of New York, Index No. 450835/2016.

"For-profit jail providers must ensure that appropriate medical care is provided in jails, where many inmates suffer from complex medical needs. When these companies fail to uphold their contractual obligations, they not only defraud taxpayers, the health of inmates, and, by extension, the health of the general population, is jeopardized," Attorney General Schneiderman said in a statement. "I am pleased that our lawsuit pre-emptively forced changes to the monitoring of Armor's contract, while ultimately ensuring that the company would not renew its contract with Nassau County. This settlement agreement sends a clear message that companies who fail to provide the required health services to inmates won't be tolerated in New York State."

Although Armor notified Nassau County officials that it intended to stop providing medical services at the jail when its contract expired on May 31, 2017, the county said the company was required to stay on until a new healthcare vendor is hired. In an unusual move, Armor filed a lawsuit against Nassau County in March 2017 to extricate itself from the contract.

Sources: *www.courthousenews.com, www.newyork.cbslocal.com, www.shadowproof.com, www.nyclu.org, https://ag.ny.gov, www.newsday.com*



**I WANT YOU TO SUPPORT ART FOR VETERANS**

A Touch of Light is seeking donations of art created by incarcerated Veterans, to be included in our "Art for Vets" exhibition, a month-long art show at Seattle Center in December 2017. Our mission for the show is to raise awareness and support for Art-based rehabilitation and re-entry opportunities for Veterans being released.

All submissions of art **MUST** be received **no later than November 1st, 2017** to be included in the exhibit. Incarcerated Captive Artists™ must provide contact info for a family member or other outside supporter – if you write to us directly, please include an SASE.

We are also seeking fundraising support to cover the cost of the exhibit. We are powered by Shunpike, a local Seattle 501c3, and can provide tax receipts for all charitable and in-kind donations. Reach out to us at **info@atouchoflight.org**, or visit **www.atouchoflight.org/veterans** to learn more.

Please send all art submissions to:
A Touch of Light
300 Lenora Street, Ste #311
Seattle, WA 98121

**Shunpike** POWERING THE BUSINESS OF ART