```
                    UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF ARIZONA

                   _____


   Victor Parsons, et al., on      )
   behalf of themselves and all    )
   others similarly situated;      )
   and Arizona Center for          )
   Disability Law,                 )
                                   )   No. CV 12-00601-PHX-DKD
                  Plaintiffs,      )
                                   )
           vs.                     )   Phoenix, Arizona
                                   )   August 18, 2017
   Charles Ryan, Director,         )   2:20 p.m.
   Arizona Department of           )
   Corrections; and Richard        )
   Pratt, Interim Division         )
   Director, Division of Health    )
   Services, Arizona Department    )
   of Corrections, in their        )
   Official capacities,            )
                                   )
                  Defendants.      )
   _____)


       BEFORE:   THE HONORABLE DAVID K. DUNCAN, MAGISTRATE JUDGE

              REPORTER'S TRANSCRIPT OF PROCEEDINGS

                  (Telephonic Status Hearing)




   Official Court Reporter:
   Laurie A. Adams, RMR, CRR
   Sandra Day O'Connor U.S. Courthouse, Suite 312
   401 West Washington Street, Spc 43
   Phoenix, Arizona 85003-2151
   (602) 322-7256

   Proceedings Reported by Stenographic Court Reporter
   Transcript Prepared by Computer-Aided Transcription
```

```
 1                      A P P E A R A N C E S

 2   For the Plaintiffs:

 3           EIDENBACH LAW PC
             By:  Kirstin T. Eidenbach, Esq.
 4           P.O. Box 91398
             Tucson, AZ 85752
 5
             ACLU - Washington DC
 6           By:  David C. Fathi, Esq.
             915 15th Street NW
 7           7th Floor
             Washington, DC 20005
 8
             ARIZONA CENTER FOR DISABILITY LAW - Tucson, AZ
 9           By:  Maya S. Abela, Esq.
             177 N. Church Avenue
10           Suite 800
             Tucson, AZ 85701
11
             PRISON LAW OFFICE
12           By:  Donald Specter, Esq.
             By:  Corene Kendrick, Esq.
13           1917 5th Street
             Berkeley, CA 94710
14
     For the Defendants:
15
             STRUCK WIENEKE & LOVE, P.L.C.
16           By:  Timothy J. Bojanowski, Esq.
             By:  Daniel Struck, Esq.
17           By:  Anne M. Orcutt, Esq.
             3100 W. Ray Road
18           Suite 300
             Chandler, AZ 85226
19

20

21

22

23

24

25
```

P R O C E E D I N G S

THE MAGISTRATE CLERK: Civil Case Number 12-601, Parsons, et al., versus Ryan, et al., on for a telephonic status hearing.

THE COURT: Would counsel please state their appearances.

MR. FATHI: Good afternoon, Your Honor. This is David Fathi of the ACLU National Prison Project for the plaintiff class.

THE COURT: Thank you. Good afternoon.

MR. SPECTER: Donald Specter for the plaintiff class as well.

THE COURT: Thank you.

MS. KENDRICK: Corene Kendrick from the Prison Law Office.

THE COURT: Thank you.

MS. EIDENBACH: This is Kirsten Eidenbach for the prisoner plaintiff class.

THE COURT: Thank you.

MS. ABELA: This is Maya Abela for the Arizona Center for Disability Law.

THE COURT: Thank you.

MR. STRUCK: Dan Struck, Tim Bojanowski, and Anne Orcutt for the defendants.

THE COURT: Thank you very much. Anybody else?

|   |   |   |
|---|---|---|
| 1 | Okay.  The principal reason for this telephonic | |
| 2 | conference after we modified it at last week's hearing was that | |
| 3 | I would hear from you all with respect to Mr. Millar and, in | |
| 4 | particular, the defendants' evaluation of what they felt with | |
| 5 | respect to his use as an expert in the case. | 02:21PM |
| 6 | Is that you, Mr. Struck? | |
| 7 | MR. STRUCK:  Yes, Judge.  We had an opportunity to | |
| 8 | interview Mr. Millar a couple days ago, and we have some | |
| 9 | concerns and we wanted to just express them, the first being | |
| 10 | his experience.  He actually hasn't done anything in the field | 02:21PM |
| 11 | of correctional healthcare in 10 years.  He has really very | |
| 12 | limited experience in the field at all.  It ranged from 2003 to | |
| 13 | 2008.  He started out working on an electronic health record | |
| 14 | project for Salt Lake County Jail.  Interestingly, the medical | |
| 15 | director at the time was plaintiffs' medical expert, Dr. | 02:22PM |
| 16 | Wilcox. | |
| 17 | He went on to form a consulting company called Phase 2 | |
| 18 | Consulting, and one of his partners was Dr. Wilcox.  They had a | |
| 19 | project with the Maricopa County Jail System from 2004 to 2006 | |
| 20 | utilizing a methodology that he and Dr. Wilcox developed in | 02:22PM |
| 21 | terms of coming up with a staffing pattern.  So we have | |
| 22 | significant concerns regarding, I guess, a conflict here given | |
| 23 | that Dr. Wilcox is the plaintiffs' expert and they worked | |
| 24 | together and possibly utilized the same methodology Dr. Wilcox | |
| 25 | has developed. | 02:22PM |

1       After that, he had a very -- he took a look at an RFP
2  for Pima County in evaluating bids, and that was the extent of
3  that.  And then he worked -- he subcontracted -- he and Dr.
4  Wilcox formed a new company called Vertex Consulting, and they
5  subcontracted with another consulting firm on the *Coleman* case
6  and created a workload based staffing model for the California
7  Department of Corrections with respect to mental health
8  services.  He wasn't that -- whatever they came up with was, I
9  guess, kind of hijacked, according to him, by this consulting
10 firm.  And he has no idea whether it was even used by the
11 receiver in the *Coleman* case or not.  That ended in 2008, and
12 that was the last of his experience with respect to evaluating
13 any jail or correctional healthcare system.
14      So I guess my concern is lack of experience, the fact
15 that he hasn't really been in the field in almost a decade, and
16 the conflict of interest in working so closely with the
17 plaintiffs' medical expert in this case, Dr. Wilcox.  So that's
18 our concern with him.
19      Since that time we have talked to an individual that
20 is in the same field named John Allen.  We just talked to him
21 today so, you know, we would like to circulate his information
22 to the Court and counsel so they could take a look at it.  But
23 it looks like he has a lot more experience.  Mr. Specter might
24 even know Mr. Allen, because it looks like he's worked in
25 California.  And Mr. Fathi knows him because he worked with him

in the D.C. Jail System as well.

So, you know, we still have -- we're not listing an objection to having an expert at all.  We would at least like everybody to take a look at Mr. Allen because we do have a problem with Mr. Millar in terms of experience and conflict.

THE COURT:  I have been using the wrong name.  It's M-I-L-L-A-R?

MR. STRUCK:  Yes.

THE COURT:  Okay.  I'm sorry about that.

Second question I have, Mr. Struck, he's been out of the correctional healthcare for all these years.  With respect to what is the problem that I'm really focused on, and that is filling positions in healthcare, figuring out how to get empty positions filled and what is necessary to do that, I'm not sure it necessarily is a disqualifier if somebody hasn't been in corrections healthcare if they have been this involved in this activity I just described.

Subsequent to 2008, did you ask him any more questions about what he's done since then, what the focus of his practice has been?

MR. STRUCK:  His focus has been, for lack of a better term, free world healthcare and doing a variety of consulting for different companies, including Navigant, in mostly hospitals and things like that.  Now, I do think that in terms of the concerns that the Court has with respect to the hiring

1  of healthcare professionals and the difficulties that have been
2  experienced by Corizon in this instance, I think that there is
3  unique challenges, obviously, you know, they are obvious to,
4  you know, hiring individuals who are going to work in a prison
5  setting.  So I don't know that he is -- and in terms of what he
6  did when he was consulting in the corrections field, I don't
7  think he has done anything with respect to determining, you
8  know, the appropriate salaries, things like that.  It's mostly
9  either staffing, taking a look at an RFP and evaluating bids,
10 and working with electronic healthcare records systems.
11          So it didn't appear he had any experience relative to
12 what the Court is interested in.
13          THE COURT:  And on the plaintiffs' side, who would be
14 responding to what Mr. Struck said with respect to Mr. Millar's
15 qualifications?
16          MR. SPECTER:  I can respond, Your Honor.  This is
17 Donald Specter.
18          I think from what we have heard about his experience
19 in the *Coleman* case, which admittedly was sometime ago, it was
20 similar to the kind of information and study that you are
21 seeking at this point.  So I think it would probably be best to
22 talk to him directly to answer the second question you asked
23 Mr. Struck about his experience during the last 10 years.  And
24 with respect to the supposed conflict of interest, I don't
25 think there is a conflict of interest since he worked with our

1  expert many, many years ago.  And there's no suggestion that
2  they have had any contact with respect to this case in that
3  time or since.  So we think you should proceed with Mr. Millar.
4              THE COURT:  And do you know John Allen, Mr. Specter?    02:28PM
5              MR. SPECTER:  I don't know him personally, but he
6  did -- he was hired -- he's from Texas, if I'm not mistaken.
7  Is that right, Dan?
8              MR. STRUCK:  Yes.  That's correct.
9              MR. SPECTER:  Right.  So the Department of Corrections
10 hired Mr. Allen and his team to evaluate the adequacy of the    02:28PM
11 medical care in the California Department of Corrections when
12 they were thinking of making a termination motion to get out
13 from under the receivership.  From what we saw, we weren't very
14 impressed but we never saw, since they never made the motion,
15 we never saw the results of his evaluation.  So I don't know    02:29PM
16 what his work product was but we do know that we had some
17 serious concerns about his standards when he was out here.
18             THE COURT:  Okay.  What I'm going to do is I'm going
19 to ask you all to take a look at your calendars and pick a time
20 that we can do a telephonic conference call with Mr. Millar.    02:29PM
21 I'd like to ask him some questions directly myself.  And you
22 can pick somebody on each side that you would like to be
23 involved if you want.  You don't have to.  But I'm giving you
24 that opportunity to be involved in that.  And then once you
25 have decided whether you want to participate and what works for    02:30PM

1  your two schedules, get on the phone to Ms. Herrera and please
2  schedule something for me and I will do that.
3          I also would ask that Mr. Allen's vitae be circulated
4  to everybody.  I will take a look at that as well and decide
5  whether or not I need to proceed further with him in light of          02:30PM
6  what I read there and also what I encounter when I talk to Mr.
7  Millar.
8          That was what was on my agenda.  I then see that the
9  plaintiffs submitted an additional agenda.  And so I am
10 stuttering, because I don't know whether I have the time.  I          02:30PM
11 really had contemplated this would be this kind of quick phone
12 call that we had just completed.  And so let me ask you this:
13 I see that there have been some further back and forth with
14 respect to some of these issues.  Are there any of these issues
15 that come to the forefront right now that in the minutes that I       02:31PM
16 have make sense to address?  And so I say that to you on the
17 plaintiffs' side so that you understand that I have got this
18 time limitation because I have got initial appearances
19 occurring in about 30 minutes, but I also have to give my
20 courtroom over to the people who assemble for that.  And              02:31PM
21 because it is an initial appearance of a number of defendants
22 it probably precludes the use of using the courtroom for this
23 purpose.  I don't know when that will happen so I will have to
24 let you know.  But let's go ahead and take advantage of what
25 time we have now.                                                     02:31PM

1   So what on your list needs to be addressed right now?
2           MS. KENDRICK:  Yes, Your Honor.  This is Corene
3   Kendrick from the Prison Law Office.
4           First of all, I have good news.  Numbers 3, 4, and 6
5   can come off of that.  What we think the Court, we need your
6   input in as soon as possible, is actually Number 7 regarding
7   our request for defendants to produce documents for the
8   September 11th evidentiary hearing on retaliation against
9   prisoner witnesses.
10          We submitted to the Court a couple of weeks ago at
11  Docket 2227-1 at Page 24 a copy of the request that we had sent
12  to the defendants with regard to the documents that we wanted
13  to be produced no later than two weeks before the hearing.  And
14  we did have a conference call with Ms. Love on Tuesday about
15  our request, and she agreed to produce some of the documents
16  and she agreed to the two-week deadline but we are at an
17  impasse about the scope of the request, specifically the
18  custodians and the listed prisoners.
19          THE COURT:  I didn't hear the second -- custodian and
20  what then, please, did you say?
21          MS. KENDRICK:  The custodians and then the inmates who
22  we listed.
23          THE COURT:  Yes.  So you wanted to have the documents
24  related to them?
25          MS. KENDRICK:  Yes, sir.  And Ms. Love indicated that

1   they would only agree to produce them for Ms. Ashworth and Mr.
2   Oyenik whereas we had asked for them with regard to our second
3   request for all four of the testifying witnesses.  And the
4   custodians who we listed in our request are the individuals who
5   defendants had identified as being present at the emergency                02:33PM
6   telephonic hearing that we had on July 21st.  And so plaintiffs
7   are requesting those documents from the senior ADC officials
8   because we do want to know what steps, if any, all of them took
9   after hearing Your Honor tell them to restore the four
10  testifying witnesses to the status quo.  And we believe that we           02:34PM
11  should receive responsive documents in the custody of all the
12  individuals who were at that hearing and who we listed.
13              THE COURT:  Is the request that you had originally
14  made for these documents recounted in one of the letters or
15  e-mails attached as Exhibit A to the proposed agenda for today?           02:34PM
16              MS. KENDRICK:  No, sir.  We previously filed it with
17  the Court as an attachment to our proposed agenda for this
18  added hearing that we held on August 9th, at Docket 2227-1.
19              THE COURT:  The reason that I asked is because I
20  happen not to have the ability right now to call up on my                 02:34PM
21  computer the case docket and so I'm asking the clerk of the
22  court to do that because I don't have it right in front of me.
23  Hold on.
24              MR. STRUCK:  Your Honor, this is Dan Struck.
25              Ms. Love wasn't able to be here today.  She obviously         02:35PM

1  is the one with the knowledge with respect to this issue. She
2  had the conversation with plaintiffs regarding it and this kind
3  of came up at the last minute and, you know, we're kind of -- I
4  didn't have the benefit of being on that call or knowing
5  exactly what was discussed or how to respond to some of this.  02:35PM
6  So I would propose that we, perhaps, come up with a date, and
7  maybe it's a date that we can come up with regarding talking
8  about Mr. Millar and we can address it at that point and when
9  you have an opportunity to take a look at it and when we have
10 an opportunity at least to have Ms. Love involved in the  02:35PM
11 discussion.
12          THE COURT:  That sounds like a good -- go ahead.  I
13 was going to say -- I told you to go ahead and I started to
14 talk again.
15          What Mr. Struck has proposed sounds like a good plan  02:36PM
16 to me because I would like to be able to address this straight
17 away.  I know I will be available sometime, easily available
18 sometime Thursday or Friday next week.  So I would be able to
19 fit it in easily then and be able to focus on this particular
20 Number 7 issue.  I would like to have the benefit of the lawyer  02:36PM
21 on the defendants' side who was involved in the discussions so
22 that I can be as efficient as possible.  But I cut you off.  Go
23 ahead, Ms. Kendrick.
24          MS. KENDRICK:  Well, I'm sorry about that.  I just
25 want to note that we had requested they produce it no later  02:36PM

1  than two weeks prior to the hearing, which would be Monday
2  August 28.  So I am concerned we would be running into that
3  time frame.  Also at the August 9 hearing that Mr. Struck was
4  at you did instruct us to meet and confer earlier this week
5  about this very issue, and you said we should put it on the                02:36PM
6  schedule for today.  So it's unfortunate that counsel for
7  defendants were not prepared to discuss this with the Court,
8  but you had notified us last week.  And the concern that if we
9  wait until Thursday or Friday they are not going to produce the
10 responsive documents by the 28th, and given what happened last             02:37PM
11 time with them producing documents the night before and during
12 the hearing, we don't want that to happen again.
13         THE COURT:  Okay.  Well, I can make sure that that
14 doesn't happen.  I can make sure that if I decide that they
15 should be produced next Thursday or Friday, I will get them                02:37PM
16 produced in the next couple of days after that and you won't
17 have to worry about a last minute disclosure.
18         So that's what we're going to do is address 7 when Ms.
19 Love is available, and if you all will confer about that.  I am
20 available other times earlier in the week.  I just know that              02:37PM
21 I'm attending a conference Thursday and Friday, and so I know I
22 don't have any court matters.  So it would be possible for me
23 pretty much on your convenience to be able to be available by
24 phone and to address the issue on Thursday and Friday.  So talk
25 with Ms. Love, Ms. Kendrick, and figure out, as Mr. Struck is,            02:38PM

1  than two weeks prior to the hearing, which would be Monday
2  August 28.  So I am concerned we would be running into that
3  time frame.  Also at the August 9 hearing that Mr. Struck was
4  at you did instruct us to meet and confer earlier this week
5  about this very issue, and you said we should put it on the                02:36PM
6  schedule for today.  So it's unfortunate that counsel for
7  defendants were not prepared to discuss this with the Court,
8  but you had notified us last week.  And the concern that if we
9  wait until Thursday or Friday they are not going to produce the
10 responsive documents by the 28th, and given what happened last             02:37PM
11 time with them producing documents the night before and during
12 the hearing, we don't want that to happen again.
13         THE COURT:  Okay.  Well, I can make sure that that
14 doesn't happen.  I can make sure that if I decide that they
15 should be produced next Thursday or Friday, I will get them                02:37PM
16 produced in the next couple of days after that and you won't
17 have to worry about a last minute disclosure.
18         So that's what we're going to do is address 7 when Ms.
19 Love is available, and if you all will confer about that.  I am
20 available other times earlier in the week.  I just know that              02:37PM
21 I'm attending a conference Thursday and Friday, and so I know I
22 don't have any court matters.  So it would be possible for me
23 pretty much on your convenience to be able to be available by
24 phone and to address the issue on Thursday and Friday.  So talk
25 with Ms. Love, Ms. Kendrick, and figure out, as Mr. Struck is,            02:38PM

1  perhaps, intimating that there may be some even further
2  reduction in the issues at hand. But if you are not in that
3  position, get time with me on Thursday or Friday at the latest.
4  And I say that because if you try to contact Ms. Herrera and
5  you can get in earlier in the week, that's fine, too, but          02:38PM
6  knowing that in no event will I pose an unavailability problem
7  for you all next week because I have got Thursday and Friday
8  that I can do this. So do that with respect to 7. And then
9  regarding 2 and 5?
10          MR. FATHI: Yes, Your Honor. This is David Fathi.           02:39PM
11 We're happy to address these now, but we also want to respect
12 the Court's time. So if the Court prefers we could address
13 these either next week or at the next month's status hearing.
14          THE COURT: Have these been issues that Ms. Love has
15 been involved in so that it makes sense for the same reason to     02:39PM
16 put it off until next week?
17          MR. FATHI: I don't believe so, Your Honor.
18          THE COURT: All right. So, well, I guess I now notice
19 people are arriving in the courtroom. So what I will do is I
20 will reset this for -- if it works for the right lawyers to be     02:39PM
21 involved and it happens to work out that you do pick Thursday
22 or Friday, let's put these issues on the agenda for Thursday or
23 Friday in addition to the others and I will take them up then.
24          Thank you all very much.
25          (Proceeding concluded at 2:39 p.m.)                        02:39PM

<u>C E R T I F I C A T E</u>

I, LAURIE A. ADAMS, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 11th day of September, 2017.

s/Laurie A. Adams
_____
Laurie A. Adams, RMR, CRR