Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
Timothy M. Ray, Bar No. 029191
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1696
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
afletcher@strucklove.com
jlee@strucklove.com
khanger@strucklove.com
tray@strucklove.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DKD<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO ENFORCE THE STIPULATION (DKT. 2253)** |

Defendants Charles Ryan and Richard Pratt respond to Plaintiffs' Motion to Enforce the Stipulation regarding Performance Measures 6, 12, 15, 20, 24, 42, 49, 50, 51, 52, 55, 67, 72, 91, 94, 97, and 98.[1]

The Court should adopt Defendants' remediation plans for PM 15 at Eyman, Florence, and Lewis; PM 20 at Eyman, Florence, Lewis, Perryville, Phoenix, and Tucson; PM 42 at Eyman and Florence; PM 49 at Eyman, Florence, Phoenix, and Tucson; PM 52 at Eyman; PM 55 at Eyman; PM 67 at Lewis; PM 72 at Eyman; and PM 94 at Phoenix. The Court should deny Plaintiffs' Motion with respect to PM 6 at Eyman, PM 12 at Eyman and Florence; PM 15 at Tucson; PM 24 at Lewis; PM 42 at Lewis and Perryville; PM 49 at Douglas and Perryville; PM 50 at Perryville; PM 51 at Douglas, Perryville, and Yuma; PM 91 at Phoenix; PM 94 at Yuma; PM 97 at Phoenix, and PM 98 at Douglas as they either do not meet the Court's definition of substantial non-compliance or are trending compliance such that no remediation plan is currently necessary.

**I.   PERFORMANCE MEASURES SUBJECT TO PLAINTIFFS' MOTION TO ENFORCE**

   **A.   PM 6 (Eyman):** *Providers orders will be noted daily with time, date, and name of person taking the orders off.*

While Defendants concede this measure meets the Court's definition of substantial non-compliance at Eyman, PM 6 has been compliant for the last four months (April: 94%; May: 98%; June: 92%; July: 92%). Therefore, a remediation plan is not warranted at this time.

Steps taken thus far: Medical providers had been entering orders late in the day, and their orders were not being discovered and noted until the following day. Providers have been instructed to complete orders before 8:00 p.m. If anything is written after that

---

[1] Plaintiffs' Motion inaccurately represents that Defendants conceded non-compliance for all facilities and measures subject to their Motion to Enforce. First, this is inaccurate. For example, Defendants have never conceded that PM 42 was in substantial non-compliance at Lewis. Second, while Defendants may have conceded a measure was non-compliant at a facility at one time, significant time has passed since Plaintiffs sent their December 27, 2016, January 31, 2017, and March 27, 2017 Notices of Non-Compliance. This Response contains a current analysis of the measures and facilities based upon the July 2017 data.

1

time, the provider is to notify the unit leader.

### B. PM 12 (Eyman, Florence): *Medical record will contain documentation of refusals or "no shows."*

#### 1. Eyman

While Defendants concede this measure meets the Court's definition of substantial non-compliance at Eyman, PM 12 has been compliant for the last three months (May: 86%; June: 90%; July: 91%). As a result, a remediation plan is not warranted at this time.

Steps taken thus far: The Director of Nursing (DON) has re-trained nursing staff on all yards about proper procedures for documenting inmates who do not show up. Further, the Assistant DONs on each yard email the site health administrator regarding all no-shows as well as all refusals.

Indeed, these are the first three months Eyman has ever achieved compliance with this measure, indicating the steps described above are working.

#### 2. Florence

While Defendants concede this measure meets the Court's definition of substantial non-compliance at Florence, PM 12 has been compliant for the last four months (April: 88%; May: 98%; June: 100%; July: 97%).[2] Therefore, a remediation plan is not warranted at this time.

Steps taken thus far: At the end of each pill pass, nursing staff complete Incident Reports (IRs) for inmates who do not show up. These IRs are immediately provided to security, who will then have the "no-shows" escorted to the medical office to have their medication administered or, at their option, to sign a refusal.

### C. PM 15 (Eyman, Florence, Lewis, Tucson): *Inmates who refuse prescribed medication (or no show) will be counseled by a QHCP after three consecutive refusals.*

#### 1. Eyman, Florence, Lewis

Defendants concede this measure meets the Court's definition of substantial non-

---

[2] Florence scored 83% in February and missed compliance by only 5% in March, with a score of 80%.

2

compliance at Eyman, Florence[3], and Lewis. Defendants therefore propose the following remediation plan to remedy the deficiencies: To remediate the deficiencies for PM 15 at Eyman, Florence, and Lewis, and to maintain compliance at the other sites currently operating without a deficiency, Corizon will develop and implement a new procedure for the administration of medication, applicable at all sites, that includes specific action steps for nurses to follow in instances when a patient refuses his or her medication. More specifically, for each instance when a patient refuses to take his/her medication, the procedure will require the nurse to: 1) immediately counsel the patient as to the risks associated with refusing to take medications necessary to treat his/her illness, which is required during the encounter; 2) immediately following the encounter, enter the patient's name and information onto the medication refusal log; 3) before the end of the nurses' shift on the day of the encounter, he/she will obtain, complete, and scan a medication refusal form into eOMIS; and 4) during or at the conclusion of the encounter, the nurses must document in eOMIS that the patient has been counseled as to the risks and danger associated with refusing to take prescribed medications.

### 2. **Tucson**

Tucson does not meet the Court's definition of substantial non-compliance. As a result, no remediation plan is necessary.

### D. **PM 20: (Eyman, Florence, Lewis, Perryville, Phoenix, Tucson)** *Medical AIMs entries are accurately completed within three business days from the entry in the medical record.*

Defendants concede this measure meets the Court's definition of substantial non-compliance at Eyman, Florence, Lewis, Perryville[4], Phoenix, and Tucson. Defendants therefore propose the following remediation plan to remedy the deficiencies:

---

[3] Defendants note, however, that Florence has been in compliance for three of the last four months (April: 88%; May: 93%; June: 82%; July 86%) and only missed compliance by 3% in June.

[4] Defendants note, however, that Perryville has been in compliance for five of the last six months (February: 89%; March: 85%; April: 86%; May: 85%; June: 81%; July: 93%) and only missed compliance by 4% in June.

3

To remediate the deficiencies for PM 20 at Eyman, Florence, Lewis, Perryville, Phoenix, and Tucson, and to maintain compliance at the other sites currently operating without a deficiency, Corizon will develop and implement a procedure including action steps that will ensure SNOs are appropriately placed into eOMIS to allow the interface with AIMS to complete automated entries in a timely fashion.  With that, for each patient that requires a SNO, the provider will: 1) enter the SNO into eOMIS at the "Other Action and Procedures Section" during or immediately following the encounter; 2) when entering the SNO into eOMIS, the provider and/or nurse will utilize a list of preapproved orders to ensure the interface between eOMIS and AIMS works properly, and in no event will the provider and nurse rely upon or utilize the paper form SNO that has been discontinued; and 3) each morning (frequency needs to correspond to interface), an appointed employee will generate an AIMS DI35 Batch Report and confirm that all SNOs were appropriately completed in AIMS.

**E.    PM 24:  (Lewis)** *Emergency medical response bags are checked daily, inventoried monthly, and contain all required essential items.*

While Defendants concede this measure meets the Court's definition of substantial non-compliance at Lewis, PM 24 has been compliant for the last four months (April: 88%; May: 88%; June: 88%; July: 88%).  As a result, a remediation plan is not warranted at this time.

Steps taken thus far:  Every day by noon, all yards email a scanned copy of a signed and dated log detailing the inspection of emergency medical response bags to their leadership teams.

Indeed, these are the first four months Lewis has achieved compliance with this measure since May 2016 – an indication that the steps described above are working.

**F.    PM 42:  (Eyman, Florence, Lewis, Perryville)** *A follow-up sick call encounter will occur within the timeframe specified by the Medical or Mental Health Provider.*

1.   **Eyman, Florence**

Defendants concede this measure meets the Court's definition of substantial non-

4

compliance at Eyman and Florence. Defendants therefore propose the following remediation plan to remedy the deficiencies: To remediate the deficiency for PM 42 at Eyman and Florence, and to maintain compliance at the other sites currently operating without a deficiency, Corizon will develop and implement (or supplement if there is an existing procedure) 1) a procedure for all sites that includes steps to ensure all Follow Ups resulting from an initial sick call encounter are scheduled and occur within the specific timeframe set out in the order and; 2) a corresponding policy that provides the approval process for the rescheduling, modification and/or cancelling of a Follow Up. For each sick call encounter that results in an order for a Follow Up, the following will occur: 1) the treating provider (or designee as permitted in the procedure) will enter the patient's information on the appropriate Log; 2) at the conclusion of the encounter or prior to the end of his/her shift, the provider (or an appropriate scheduling designee as permitted in the procedure) must schedule the Follow Up in eOMIS within the timeframe ordered, or, if no timeframe is specified, within 14 days of the initial encounter unless the provider indicates "No Follow Up necessary" in eOMIS; 3) on a daily basis, the an appointed employee will utilize eOMIS to generate an appointment list for that particular day; 4) on a daily basis, an appointed employee will review the appointment list and confirm that all Follow Ups are set to occur timely; 5) the modification, rescheduling or cancellation of a Follow Up will not be approved if such action would result in non-compliance with a PM 42 requirement; and 6) an appointed employee will identify any Follow Up that has been modified, rescheduled or cancelled without approval and immediately elevate that to site leadership so as to allow the subject Follow Up to be rescheduled within the original timeframe ordered.

    2. **Lewis**

Lewis does not meet the Court's definition of substantial non-compliance. As such, no remediation plan is necessary.

///

///

### 3. **Perryville**

While Defendants concede this measure meets the Court's definition of substantial non-compliance at Perryville, PM 42 has been compliant for the last three months (May: 91%; June: 89%; July: 87%). As a result, a remediation plan is not warranted at this time.

Steps taken thus far: Medical providers provide the Certified Nursing Assistants (CNAs) each day with a list of inmates they want to follow up with and the timeframe for that follow up. The CNAs maintain a log of these patients with their timeframes and ensure that appointments are scheduled accordingly.

**G.    PM 49:   (Douglas, Eyman, Florence, Perryville, Phoenix, Tucson)** *Patients for whom a provider's request for specialty services is denied are told of the denial by a Medical Provider at the patient's next scheduled appointment, no more than 30 days after the denial, and the Provider documents in the patient's medical record the Provider's follow-up to the denial.*

### 1. **Douglas**

Douglas does not meet the Court's definition of substantial non-compliance as it has only been non-compliant for five of the 30 monitoring months. Moreover, Douglas has been compliant for the last eight months (Dec: 80%; Jan: 88%; Feb: 100%; March: N/A; April: 90%; May: 94%; Jun: 100%; July 100%). As such, no remediation plan is necessary.

### 2. **Eyman, Florence, Phoenix, Tucson**

Defendants concede this measure meets the Court's definition of substantial non-compliance at Eyman, Florence, Phoenix[5], and Tucson. Defendants therefore propose the following remediation plan to remedy the deficiencies: To remediate the deficiencies for PM 49 at Eyman, Florence, Phoenix, and Tucson, and to maintain compliance at the other sites currently operating without a deficiency, Corizon will develop and implement a new procedure at all sites for processing the denials ("ATP") of specialty services that includes specific steps for a Clinical Coordinator and provider to follow in instances where an ATP

---

[5] Defendants note, however, that Phoenix has been in compliant for six of the last seven months (Jan: 82%; Feb: 100%; March: 100%; April: 100%; May: 100%; Jun: 80%; July: 100%) and only missed compliance by 5% in June.

6

is issued. When a patient requires specialty services, the following will occur: 1) the provider will enter a request for consult ("Requests") into eOMIS; 2) regularly, but no less than three times per shift, the Clinical Coordinator will monitor the Consult Request Report to identify all new Requests; 3) for each new Request identified, the Clinical Coordinator will enter the information into CARES and ORC, making certain that an ORC# is assigned to the Request; 4) the Request will proceed through the UM process via CARES, with the UM then entering a determination in CARES ("Output") and ORC; 5) the Clinical Coordinator will monitor his/her CARES que for an Output; 6) for all Outputs that are equivalent to an ATP, the Clinical Coordinator will notify the provider of the ATP via an eOMIS email, within 24 hours of the Output being entered into CARES[6]; 7) within 48 hours of receiving notification of the ATP, the provider must resolve any outstanding issues (i.e., the original Request will be changed from an ATP to an approval) or accept the ATP in eOMIS, and in either case, the provider will notify the Clinical Coordinator via an email in eOMIS; 8) within 24 hours of receiving an ATP notification from the provider, the Clinical Coordinator will schedule an appointment for the patient, in no event more than 28 days from the date the ATP was entered into CARES; and 9) on the scheduled appointment date, the provider will advise the patient of the ATP and document the encounter and counseling in eOMIS.[7]

### 3. **Perryville**

Perryville does not meet the Court's definition of substantial non-compliance as it has only been non-compliant for five of the 30 monitoring months. Therefore, no remediation plan is necessary. Moreover, Perryville has been compliant for the last eight months (Dec: 96%; Jan: 100%; Feb: 97%; March: 100%; April: 100%; May: 100%; Jun:

---

[6] At this point in the procedure, if the Clinical Coordinator discovers that a patient has been transferred to another facility, he/she will notify site leadership and the Clinical Coordinator at the new facility so that the process may continue without delay.

[7] Note: To cancel, reschedule or modify an appointment scheduled as a result of this procedure, the provider or requesting party must obtain site leadership's written approval.

100%; July 100%).

**H.** **PM 50: (Perryville)** *Urgent specialty consultations and urgent specialty diagnostic services will be scheduled and completed within 30 calendar days of the consultation being requested by the provider.*

Perryville does not meet the Court's definition of substantial non-compliance as it has only been non-compliant for six of the 30 monitoring months. As a result, no remediation plan is necessary. Moreover, Perryville has been compliant for the last five months (March: 100%; April: 86%; May: 93%; June: 100%; July 93%).

**I.** **PM 51: (Douglas, Perryville, Yuma)** *Routine specialty consultations will be scheduled and completed within 60 calendar days of the consultation being requested by the provider*

1. **Douglas**

Douglas does not meet the Court's definition of substantial non-compliance as it has only been non-compliant for six of the thirty monitoring months. Moreover, Douglas has been compliant for the last six months (Feb: 83%; March: 100%; April 92%; May: 96%; June 97%; July: 93%). Therefore, no remediation plan is necessary.

2. **Perryville**

While Defendants concede this measure meets the Court's definition of substantial non-compliance at Perryville, PM 51 has been compliant for the last three months (May: 88%; June: 95%; July: 100%). As a result, a remediation plan is not warranted.

3. **Yuma**

While Defendants concede this measure meets the Court's definition of substantial non-compliance at Yuma, PM 51 has been compliant for the last three months, and has been compliant for eight of the last nine months (November: 82%; December: 84%; January: 81%; February: 83%; March: 86%; April: 78%; May: 88%; June: 95%; July: 89%) and only missed compliance by 7% in April. A remediation plan is not warranted.

**J.** **PM52: (Eyman)** *Specialty consultation reports will be reviewed and acted on by a Provider within seven calendar days of receiving the report.*

Defendants concede this measure meets the Court's definition of substantial non-compliance at Eyman. Defendants therefore propose the following remediation plan to

remedy the deficiencies: To remediate the deficiencies for PM 52 at Eyman, and to maintain compliance at the other sites, Corizon will develop and implement (or supplement if there is an existing procedure) a procedure to ensure Specialty Consults are reviewed and acted upon by the onsite provider within seven calendar days of receipt. The procedure will require the following: 1) upon the patient's return from an approved consult, the Clinical Coordinator will obtain the Specialty Consult (either directly from the patient in paper format or if not available via the patient, the Clinical Coordinator will contact the outside provider and request the same via facsimile); 2) once obtained, and in no case more than eight hours after receipt, the Clinical Coordinator (or his/her designee) will scan the Specialty Consult into eOMIS and documents receipt on the appropriate log; 3) immediately after the log entry is complete, the Clinical Coordinator (or his/her designee) will change the status in eOMIS to "Consult Completed Results Received" and send the provider an email notification of the same in eOMIS; 4) within 48 hours of receiving notification, the Provider will review the Specialty Consult to determine what additional treatment (if any) is necessary and document such in eOMIS; 5) if the additional treatment requires another scheduled patient encounter, the Provider shall submit a consult in eOMIS that notifies the Clinical Coordinator via email in eOMIS within 24 hours of completing Step 4, so that he/she may attend to scheduling the same; 6) on a daily basis, the Clinical Coordinator will monitor the appropriate logs to ensure all Specialty Consults are being processed timely; 7) the Clinical Coordinator will notify the provider ("Follow Up Notification") in eOMIS of any Specialty Consults for which the Processing Deadline will expire within 48 hours or less; 8) in the event the Follow Up Notification does not result in the appropriate processing of a Specialty Consult, and the Processing Deadline is set to expire in 24 hours or less, the Clinical Coordinator will notify site leadership; 9) upon receiving notice as previously described in Step 8, site leadership will engage the provider and ensure the Specialty Consult is reviewed and acted upon in a timely manner.

**K.      PM55: (Eyman)** *Disease management guidelines will be implemented for chronic diseases.*

Defendants concede this measure meets the Court's definition of substantial non-compliance at Eyman. Defendants do not have a remedial plan in place at this time. A plan will be developed and put into place within the next 30 days.

**L.      PM 67: (Lewis)** *In an IPC, Registered Nurses will conduct and document an assessment at least once every shift. Graveyard shift assessments can be welfare checks.*

Defendants concede this measure meets the Court's definition of substantial non-compliance at Lewis. Defendants therefore propose the following remediation plan to remedy the deficiencies: To remediate the deficiency for PM 67 at Lewis, and to maintain compliance at the other sites currently operating without a deficiency, Corizon will develop and implement (or supplement an existing procedure, as applicable) a procedure for all sites to ensure all patients in the IPC are assessed at least once during every shift by a Registered Nurse during normal operating hours and welfare checks otherwise. To that end, at each of the IPC units, the following will occur: 1) at the beginning of each shift, the ADON will update and review the daily patient census for his/her inpatient unit; 2) upon reviewing the same, the ADON will assign each qualified Registered Nurse (or other for welfare checks) his/her patients to assess before the end of the shift; 3) upon receiving his/her assigned patients, the Registered Nurse will assess each patient consistent with all clinical standards; 4) after completing each patient assessment, the Registered Nurse will properly document the assessment in eOMIS; 5) before the conclusion of each shift, the ADON will utilize the daily census from that day to verify each and every patient in the IPC unit has been assessed; 6) the ADON will identify any patient who has not been assessed and immediately elevate such to site leadership so he/she may assign a Registered Nurse to complete the assessment before the conclusion of the shift.

**M.      PM 72: (Eyman)** *Inmates who refuse prescribed diets for more than 3 consecutive days will receive follow-up nutritional counseling by a QHCP*

Defendants concede this measure meets the Court's definition of substantial non-compliance at Eyman. Defendants therefore propose the following remediation plan to

remedy the deficiencies: To remediate the deficiencies for PM 67 at Eyman, and to maintain compliance at the other sites currently operating without a deficiency, Corizon will develop and implement a procedure that provides appropriate medical and ADC personnel with specific steps to follow in instances when a patient refuses a prescribed diet for more than three consecutive days.  Per the procedure, the ADC Dietary Liaison will be accountable for ensuring he/she is 1) notified daily by security as to all prescribed diet refusals; and 2) provided the corresponding Dietary Rosters by security.  Upon receiving them, the ADC Dietary Liaison will maintain an accurate record of each prescribed diet refusal by inmate.  Because of the integrated nature of performance under this measure, the ADC Dietary Liaison and site leadership will mutually agree as to the means for notifying medical personnel of a prescribed diet refusal, the frequency of the notification, and the appropriate recipient, all of which will be memorialized in the procedure.

Once notification is addressed procedurally, Corizon will include steps for its personnel to timely schedule and counsel impacted patients.  At the final step in the procedure, Corizon will be required to properly enter the nutritional counseling note into eOMIS.

N. **PM 91 (Phoenix)** *MH-5 prisoners who are actively psychotic or actively suicidal shall be seen by a mental health clinician or mental health provider daily.*

Phoenix does not meet the Court's definition of substantial non-compliance.  As a result, no remediation plan is necessary.

O. **PM 94: (Phoenix, Yuma)** *All prisoners on a suicide or mental health watch shall be seen daily by a licensed mental health clinician or, on weekends or holidays, by a registered nurse*

1. **Phoenix**

Defendants concede this measure meets the Court's definition of substantial non-compliance at Phoenix. Defendants therefore propose the following remediation plan to remedy the deficiencies: To remediate the deficiency for PM 94 at Phoenix, Corizon will develop and implement (or supplement an existing procedure, as applicable) a procedure

at all sites to ensure all inmates on a mental health or suicide watch are seen daily by a licensed mental health clinician or, when applicable, an RN. To that end, when an inmate is placed on watch, the following will occur: 1) if during business hours, a licensed mental health clinician will document an individual counseling, segregation or MH-Sick call in eOMIS; 2) if during non-business hours, an RN will see the inmate face to face, and if warranted, the RN will contact an on-call psychologist for a watch order and placement; 3) the RN will document an ICS or sick call in eOMIS to verify that they spoke to an on-call provider for watch placement; 4) the MH Lead/designee will send a list via email to the licensed MH clinician conducting daily watches with the following information: ADC number, inmate name, date placed on watch, and current watch level; 5) if during weekdays, a licensed MH clinician will offer each inmate on watch a confidential face-to-face contact and document these contacts in eOMIS on the appropriate watch level; 6) the licensed MH clinician will send an email of the subjective section of each note for all the watches completed for the day to the MH Lead or designee; 7) if during weekends or holidays, a licensed MH clinician or RN will offer each inmate on watch a confidential face to face contact and document these contacts in eOMIS; and 8) the MH Lead/designee will review and verify in eOMIS by no later than 3:00 p.m. each innate on watch who was seen in a confidential setting or, when offered, who refused a confidential setting.

        2.    **Yuma**

Yuma does not meet the Court's definition of substantial non-compliance. Therefore, no remediation plan is necessary.

    **P.**    <u>**PM 97: (Phoenix)**</u> *<u>A mental health provider treating a prisoner via telepsychiatry shall be provided, in advance of the telepsychiatry session, the prisoner's intake assessment, most recent mental health treatment plan, laboratory reports (if applicable), physician orders, problem list, and progress notes from the prisoner's two most recent contacts with a mental health provider.</u>*

Phoenix does not meet the Court's definition of substantial non-compliance. Therefore, no remediation plan is necessary.

Q. **PM 98: (Douglas)** *Mental health HNRs shall be responded to within the timeframes set forth in the current Mental Health Technical Manual.*

Douglas does not meet the Court's definition of substantial non-compliance. As such, no remediation plan is necessary.

## II. CONCLUSION

For the foregoing reasons, the Court should adopt Defendants' proposed remediation plans and deny Plaintiffs' Motion for those measures that do not meet the Court's definition of substantial non-compliance or are significantly trending compliance.

DATED this 2nd day of October 2017.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By /s/Timothy J. Bojanowski
　　Daniel P. Struck
　　Rachel Love
　　Timothy J. Bojanowski
　　Nicholas D. Acedo
　　Ashlee B. Fletcher
　　Jacob B. Lee
　　Kevin R. Hanger
　　Timothy M. Ray
　　3100 West Ray Road, Suite 300
　　Chandler, Arizona 85226

　　Arizona Attorney General Mark Brnovich
　　Office of the Attorney General
　　Michael E. Gottfried
　　Lucy M. Rand
　　Assistant Attorneys General
　　1275 W. Washington Street
　　Phoenix, Arizona 85007-2926

　　*Attorneys for Defendants*

13

# CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com; docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Varma: | avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Kirstin T. Eidenbach: | kirstin@eidenbachlaw.com |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org; mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Victoria Lopez: | vlopez@aclu.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Timothy J. Bojanowski