UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br>v.<br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | No. CV 12-00601-PHX-DKD<br><br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO ENFORCE THE STIPULATION** |

1  This Court, having reviewed Plaintiffs' Motion to Enforce the Stipulation
2  (Maximum Custody Performance Measures 1-3, 5-6, and 8) ("Motion to Enforce") (Doc.
3  1944), and the evidence presented therein, hereby **ORDERS** that:

4  Defendants shall implement and abide by the monitoring methodology set forth in
5  the final Monitoring Guide for Maximum Custody Performance Measures ("MC PM")
6  developed during the pendency of this motion.  This guide was developed through a
7  combination of Court orders and negotiated and agreed-upon changes.  This Court has
8  previously held that Defendants are under no obligation to apply the Final Monitoring
9  Guide's procedures retroactively.  However, in order to persuade the Court that a given
10 facility is compliant with a given performance measure, Defendants will have to
11 demonstrate compliance under the procedures set forth in the final Monitoring Guide.
12 [Doc. 1951 at 1-2]

13 Therefore, the Court **ORDERS** Defendants to demonstrate compliance with the
14 procedures set forth in the final Monitoring Guide for the MC PM for Eyman-Browning;
15 Eyman-SMU I; Perryville-Lumley; Florence-Kasson; Florence Central; and Lewis-Rast
16 from the date of this ORDER onwards.  Defendants may choose to demonstrate such
17 compliance retroactively.

18 The Court further **FINDS** that the high rates of refusal for exercise and group
19 programming in both the seriously mentally ill ("SMI") and non-SMI populations raise
20 serious questions regarding the adequacy of Defendants' efforts to actually offer the out-
21 of-cell time required by the Stipulation.  Plaintiffs have documented refusal rates
22 representing approximately 50%, 60%, 70% or more of the records reviewed across most
23 facilities and monitoring months.  [Doc. 1946-1, Ex. 4]  Dr. Pablo Stewart has provided
24 unrebutted testimony that such refusal rates in a SMI population must be addressed as a
25 clinical failure and that such high rates of refusal are a "clinical red flag."  [Doc. 1947, ¶
26 3; Doc. 2006 at 7-8]  Dr. Stewart further identified factors that often underlie refusal rates
27 in a correctional setting, such as failure to create a safe environment for participants; fear
28 of officers and other prisoners; custody staff discouraging participation; patient acuity;

poor programming; and lack of a positive relationship with the provider. [Doc. 1947, ¶ 5] The underlying causes of refusals identified by Dr. Stewart are borne out by the experiences of subclass members in the isolation units as set forth in their declarations. [Doc. 1945-1, Exs. 1-7] Defendants' failure to deal clinically or operationally with the pervasive problem of refusals must be addressed.

Therefore, the Court **ORDERS** that Defendants shall monitor and report on the refusal rates for programming and exercise separately for both the population of SMI prisoners and the non-SMI prisoners in the isolation sub-class. These reports shall be made to the Court and Plaintiffs on a monthly basis for a minimum of eight months of monitoring. Within one month of this Order, the parties shall meet and confer to select an outside expert unaffiliated with the Arizona Department of Corrections to provide technical assistance to help remedy the overwhelming pattern of refusals. If the parties cannot agree upon a mutually-acceptable expert within one month of this Order, then on that date the parties will each submit one nomination to the Court, and the Court will select the expert.

The expert shall be compensated by Defendants for his or her work, and shall meet with both parties on a monthly basis to discuss strategies and implementation of those strategies for a minimum of six months. No later than one month following the expert's six months review period, the expert shall submit a report to this Court which 1) evaluates the programming and exercise refusal rates of the isolation sub-class and the reasons behind the refusal rates; 2) sets forth strategies necessary to lower these refusal rates; and 3) sets forth Defendants' efforts to implement those strategies during the six month period. The Court shall review this report with both parties' input and may order further relief at that time.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2017, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
Kevin R. Hanger
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
khanger@swlfirm.com

*Attorneys for Defendants*

s/ Jennifer Onka