# Exhibit 1



| ARIZONA DEPARTMENT OF CORRECTIONS | CHAPTER: 900<br>INMATE PROGRAMS AND SERVICES | OPR:<br>OPS |
|---|---|---|
| DEPARTMENT ORDER MANUAL | DEPARTMENT ORDER: 909<br>***INMATE PROPERTY*** | SUPERSEDES:<br>DO 909 (04/21/08) |
| | | EFFECTIVE DATE:<br>MAY 30, 2013 |
| | | REPLACEMENT PAGE REVISION DATE:<br>JULY 24, 2017 |

# TABLE OF CONTENTS


**PURPOSE**

**PROCEDURES** **PAGE**

**909.01** **PROPERTY - GENERAL** ........ **1**

**909.02** **PROPERTY RESTRICTIONS** ........ **2**

**909.03** **STATE-ISSUED CLOTHING** ........ **5**

**909.04** **PROPERTY INVENTORY** ........ **6**

**909.05** **TRANSFER AND INVENTORY OF INMATE PROPERTY** ........ **8**

**909.06** **PROPERTY CONTROL** ........ **11**

**909.07** **CONTRABAND SEIZURE AND DISPOSITION** ........ **13**

**909.08** **INVESTIGATIONS** ........ **20**

**909.09** **PROPERTY CLAIMS** ........ **20**

**909.10** **PROPERTY FILES** ........ **23**

**IMPLEMENTATION** ........ **23**

**DEFINITIONS** ........ **23**

**AUTHORITY** ........ **27**

**ATTACHMENTS**

# PURPOSE

This Department Order establishes the controls for personal property belonging to inmates. Inmates are authorized to have in their possession personal property items that do not threaten institutional order, safety, or security.

# PROCEDURES

**909.01 PROPERTY - GENERAL**

1.1 All inmates shall be authorized to possess property items as outlined in this Department Order and the Inmate Store/Property List. (See Attachment A and Department Order #809, Earned Incentive Program.) Inmate property shall be accurately inventoried, stored and safeguarded.

1.2 Wardens may determine there are safety and security considerations which require a property item to be restricted and may impose a temporary 60-day exception, pending review by the appropriate Regional Operations Director.

1.2.1 The Regional Operations Director shall uphold the exception and recommend to the Division Director of Offender Operations that the Inmate Store/Property List be modified, or direct the Warden to rescind the exception. If the exception is rescinded, no further action is required.

1.2.2 If the recommendation is to modify the Inmate Store/Property List, the Division Director shall forward the recommendation to the Director for final approval or denial. Only the Director can modify Attachment A of the Department Order.

1.3 Inmates eligible through the Earned Incentive Program (EIP), as outlined in Department Order #809, Earned Incentive Program, are authorized to participate in the AZ Securepak Program. The program shall be conducted as follows:

1.3.1 All inmates are allowed to receive an additional $80 worth of Securepak products, those offered in the program catalog.

1.3.2 The timeframe for the Securepak Program shall coincide with the vendor's calendar year and be based on the following frequency:

1.3.2.1 Phase III inmates are allowed one Securepak per month.

1.3.2.2 Phase II inmates are allowed one Securepak every other month.

1.3.2.3 Phase I inmates are allowed one Securepak per quarter.

1.3.3 Inmates may receive a Securepak from a non-incarcerated family member or friend. Products in a Securepak must come directly from the vendor and must comply with the requirements for allowable and authorized property.

1.3.4 Inmates in Maximum custody are not authorized to purchase food products that require heating or warming prior to consumption. Maximum custody food products in Securepak are to be readily consumable from the original container or package.

1.4 Inmates shall be authorized to possess religious property consistent with the practices of the inmate's chosen religion. Religious property shall be approved and maintained as outlined in Department Order #904, Inmate Religious Activities/Marriage Requests.

**909.02 PROPERTY RESTRICTIONS**

1.1 Inmates shall not possess any property item in excess of the total amount allowed. All property items, in the inmate's possession and in storage, shall equal the total amount of property allowed.

1.1.1 When a property item is received that is in excess of the total amount allowed, the inmate shall make arrangements to dispose of the excess item(s) as outlined in this Department Order.

1.1.2 An inmate shall not obtain or purchase, at the inmate store or any other source, any item including consumable and food products (such as candy, etc.) in a quantity that when added to the quantity currently possessed exceeds the total allowed by the Inmate Store/Property List.

1.2 An inmate shall not trade, loan, barter or sell any item of personal property to staff, a visitor, contractor, volunteer, or another inmate.

1.2.1 An inmate wishing to dispose of any item shall do so through assigned staff at the inmate's own expense.

1.2.2 If an inmate wishes to donate an item of personal property to an outside charitable organization or to the Department, the inmate may do so by completing an Inmate Property/Contraband/Disposition Tracking, Form 909-6.

1.2.3 An inmate shall not be permitted to designate a specific person to whom an item is to be donated.

1.3 At intake, inmates are not authorized to bring in any personal property (including crime scene photos), other than legal papers, legal documentation, prescription eyeglasses/contact lenses and a wedding band if they are married. Inmates shall mail property out at their own expense or the Department will arrange to have it destroyed. Legal documentation shall be placed in an envelope and secured in the inmate Institution file until he/she is released from custody.

1.3.1 Wedding bands

1.3.1.1 Inmates that become married while incarcerated or those that did not have a wedding ring at Reception may have one mailed in as long as the sender encloses a certified copy of a marriage certificate.

1.3.2 Religious items

1.3.2.1 Religious items used in the practice of the inmate's chosen religion, not posing a threat to the safe, secure and orderly operation of the institution, may be authorized. All items shall be capable of being stored within the inmate's storage property box.

1.3.2.2 Staff shall consult with the Chaplain's office regarding any questionable religious item(s). The Chaplain shall make the final determination on whether or not the item(s) are permitted. Inmates may appeal this decision by filing a grievance as outlined in Department Order #802, Inmate Grievance Procedure.

1.3.2.3 A list of approved items shall be maintained in the Pastoral Activities Administrator's office, with an updated list distributed to all institutions as updates occur.

1.3.3 Medical Items

1.3.3.1 An inmate may be authorized to have sent to the Department, and kept in his/her possession, Health Services specialized medical equipment or items (i.e., wheelchair, etc.) which are clinically indicated for the inmate’s medical condition(s).

1.3.3.2 Procedure for obtaining authorization - Specialized medical items to be sent in to an inmate (i.e., wheelchair, TENS Unit) require authorization from the complex Medical Review Committee. If the health care provider believes the item is medically necessary he/she shall submit documentation supporting the medical need and a (pre-authorization) Duty/Special Needs Order, Form 1101-60, to the next scheduled complex Medical Review Committee meeting for consideration.

1.3.3.2.1 If the Medical Review Committee approves the providers request for the inmate to have specialized medical property sent in, the Contract Facility Health Administrator shall have nursing initiate the Specialized Personal Medical Property Information/Agreement, Form 909-7, which outlines the inmate’s conditions for receiving specialized medical property.

1.3.3.2.2 If the Medical Review Committee disapproves the specialized medical property to be sent in, the Contract Facility Health Administrator shall complete an inmate communiqué to the inmate informing him/her of the committee’s decision.

1.3.3.2.3 If the inmate agrees to the conditions outlined in the Specialized Personal Medical Property Information/ Agreement form and has the medical device sent in to the Contract Facility Health Administrator. The Contract Facility Health Administrator upon delivery of the specialized medical property shall notify the inmate’s unit Chief of Security. The Facility Health Administrator and the unit’s Chief of Security shall jointly inspect the medical item for final approval/disapproval to allow the inmate to process the medical item on his/her unit.

1.3.3.2.4 If the medical item is approved, the Contract Facility Health Administrator and the unit's Chief of Security shall jointly sign the Duty/Special Needs Order form and distribute the form as outlined on the form's distribution listing. The unit Chief of Security shall take possession of the specialized medical property and have the unit property office issue the medical item to the inmate and add the medical item to the inmate's property list.

1.3.3.2.5 In the event the medical item is denied the inmate shall arrange for the item to be returned to the sender at his/her expense as agreed upon in the Specialized Personal Medical Property Information/Agreement form.

1.3.4 Medical Property Repair

1.3.4.1 Repairs to state issued property shall be completed as outlined in section 909.03, 1.7 of this Department Order.

1.3.4.2 An inmate who requires repair to an authorized personal medical property item (i.e., wheel chairs, etc.) may elect to return the medical property item to a third-party (i.e., family member, etc) who can coordinate the item's repair, and subsequently return the item to the inmate according to the procedures outlined in this Department Order.

1.3.4.2.1 Any costs associated with the transfer of a personal medical property item in need of repair shall be borne by the inmate.

1.3.4.2.2 The Department shall not pay for the repair of personal medical items.

1.3.4.3 If the inmate is unable to coordinate the repair of his/her medical property item through an outside intermediately, the inmate may elect to forfeit the item to the Department, in favor of receiving a state issued substitute, if clinically indicated.

1.3.4.3.1 Inmate forfeitures of authorized personal medical property in need of repair shall be accomplished by the inmate's submission of a Property/Contraband /Disposition Tracking, Form 909-6.

1.3.4.3.2 Inmate forfeitures of authorized personal medical property in need of repair shall be noted in the SOAPs portion of the inmate's Medical Record.

1.4 All authorized property shall be stored neatly in the inmate's assigned living area or in approved storage boxes as outlined in this Department Order and shall comply with Department Order #704 Inmate Regulations.

1.5 The total value of an inmate's authorized property shall not exceed $800, excluding property which has been deemed medically necessary for the inmate's medical condition and is authorized by the health care provider as outlined in 1.3.3 through 1.3.3.2.4.2 of this section. No single item of non-medical personal property shall exceed $300.

## 909.03 STATE-ISSUED CLOTHING

1.1 All state-issued outer garments for inmates shall be orange in color. Tee shirts shall be orange; however all other undergarments and socks shall be white.

1.2 All state-issued clothing shall be imprinted as Department property in a location that is visible when the clothing is worn.

1.3 Replacement costs for lost, damaged, modified or altered state-issued property shall be charged to the inmate in accordance with the Department's disciplinary system restitution process. (See Department Order #803, Inmate Disciplinary Procedure)

1.4 At intake, the Department shall assign each newly admitted inmate a standard issue of underwear, tee shirts and socks and one pair of pants. Reception center staff shall record the issue on the Inmate State Issue/Replace/Return Receipt, Form 909-10, which shall be placed into the inmate's personal property file.

1.4.1 Upon intake or return as a community supervision violator at any Department facility, inmate personal clothing shall be thoroughly searched. Contraband shall be seized and processed as outlined in this Department Order. The inmate shall be required to mail personal clothing and possessions out of the facility at his/her expense, or the inmate may elect to have them destroyed.

1.4.2 Inmates shall be transported from the Reception Centers to their assigned institution wearing pants and shower shoes. The standard issue of tee shirts, underwear and socks shall transfer with the inmate.

1.4.3 Inmates shall be transferred between assigned institutions wearing state issue or inmate purchased orange clothing and shower shoes. The standard issue of tee shirts, underwear and socks shall transfer with the inmate.

1.4.4 Inmates transported for any other reason, such as court or the hospital, shall wear state issued or inmate purchased orange clothing.

1.5 Receiving institutions shall provide inmates with the standard issue of required clothing, including seasonal items, as appropriate and return duffle bags to the statewide transportation staff.

1.5.1 Seasonal items shall be issued to and returned by the inmates as directed by staff.

1.5.2 All state-issue items shall be recorded on the Inmate State Issue/Replacement/ Return Record.

1.6 Inmates shall retain their underwear, tee shirts, socks, and athletic clothing when transferred. All other state-issue clothing shall be kept at the sending institution.

1.7 Replacement of state-issued items shall be authorized on a one-for-one exchange basis only, and recorded on the Inmate State Issue/Replacement/Return Record, which shall be maintained in the inmate's property file and updated each time state issued items are replaced as follows:

1.7.1 If a replacement is for other than routine wear, or because clothing no longer fits due to weight gain or loss, the reason shall be noted on the Inmate State Issue/Replacement/Return Record.

1.7.2 The item is worn, in need of repair and cannot be used.

1.7.3 The item was stolen. The appropriate supervisor shall provide written authorization for replacement, which shall be attached to the Inmate State Issue/Replacement/Return Record and shall become a permanent record in the property file.

1.7.4 The item was destroyed or damaged beyond use, in which case disciplinary action shall be taken.

1.7.4.1 When disciplinary action is taken against an inmate for destroying, losing or damaging state-issued items, the inmate's trust account shall be billed for the replacement costs of the item(s).

1.7.4.2 Disciplinary action may also be taken against inmates who have an excess amount of state-issued clothing in their possession.

1.7.5 Other valid reasons when authorized by the Warden or Deputy Warden.

1.8 Inmates shall return all state-issued items to designated staff upon release from Department custody, except for clothing to be worn for release. Staff shall record the return of the clothing on the inmate's Inmate State Issue/Replacement/Return Record.

1.8.1 Wardens may permit an inmate to receive suitable release clothing from family members, friends and/or charitable organizations.

1.8.2 State-issue release clothing may be obtained from Arizona Correctional Industries (ACI), and shall be of unique materials, colors, designs and/or construction, to allow it to be readily distinguished and recognized from that which is issued or sold by the Department to inmates.

1.8.3 All orange-colored uniform clothing purchased by an inmate through an inmate store shall be returned to the Department prior to release from custody. Inmates shall not be released in Department orange uniforms. The Department shall not reimburse inmates for the cost of these articles of clothing.

**909.04 PROPERTY INVENTORY**

1.1 Assigned staff shall complete an inventory of an inmate's property, using the Inmate Property Inventory, Form 909-4, and when appropriate, the Inmate Property Inventory Supplement, Form 909-1, when the inmate:

1.1.1 Arrives at a Reception Center.

1.1.2 Is transferred from one institution to another institution.

1.1.3 Is transferred from one unit to a unit of a higher custody level.

1.1.4 Is transferred from general population to a segregated population.

1.1.5 Is released from Department custody.

1.1.6 Is assigned to temporary placement.

1.1.7 Escapes.

1.1.8 Is deceased.

1.2 Assigned staff may permit the inmate to pack his/her personal property without a staff member completing an inventory when the inmate is to be transferred between units of the same custody level within the same institution. Property of inmates moving into double-bunked cells shall be searched. Assigned staff shall conduct a visual inspection of the inmate's property before permitting the items to be packed by the inmate, with a focus on the discovery of suspicious or excessive property.

1.3 Inventories of inmate property shall not be used as punishment or harassment.

1.4 Two staff members shall complete inventories when the inmate is not present. Both staff members shall sign the completed Inmate Property Inventory form indicating the inventory is a true and accurate account of the inmate's personal property.

1.5 The Inmate Property Inventory, and Supplement if necessary, shall be legibly completed, describing only one item on each line, and describing presence of the item as it is listed on the preprinted form.

1.6 Descriptions on the Inmate Property Inventory Supplement shall include items not preprinted on the Inmate Property Inventory, and where applicable:

1.6.1 Make.

1.6.2 Model designation.

1.6.3 Serial number.

1.6.4 Color and size. (Staff shall indicate jewelry items as yellow or gold colored or silver colored.)

1.6.5 Distinguishing marks.

1.6.6 Signatures.

1.6.7 Engravings.

1.6.8 Visible condition (poor, fair, good).

1.6.9 Working condition (The only authorized entries are W = Working, N = New, U = Used, NW = Not Working).

1.6.10 Any other identifying characteristics.

1.7 If an inmate escapes, the inmate's personal property and funds shall be declared unclaimed property and shall be disposed of as outlined in section 909.07 of this Department Order.

1.8 When an inmate is removed from an assigned cell or housing unit overnight for medical care, a court appearance, or other such temporary reasons, the appropriate staff member shall ensure the inmate's property is inventoried and securely stored until the inmate returns. A receipt of secured property shall either be given to the inmate, or placed in the inmate's file. This inventory shall be performed by one staff member if the inmate is present and by two staff member when the inmate is not.

1.9 Upon the death of an inmate, two staff members shall inventory the inmate's personal property.

1.9.1 An Affidavit for Collection of Personal Property, Form 909-2, shall be completed and notarized, when applicable.

1.9.2 The property shall be released as outlined in Department Order #711, Notification of Inmate Hospitalization or Death.

**909.05 TRANSFER AND INVENTORY OF INMATE PROPERTY**

1.1 When inmates are moved from one institution/unit to another, all property permitted by this Department Order, except for appliances and legal materials, shall be placed in a duffel bag (if a duffel bag is available) and sealed with a tamper-proof property seal.

1.1.1 Appliances shall be boxed if the type of transportation requires the boxing of the appliance to ensure safe transfer, and/or if distance to be traveled from one institution/unit to another is greater than 15 miles.

1.1.2 All storage boxes shall be numbered to indicate total number of boxes, such as 1 of 4, along with the inmates name and Arizona Department of Corrections (ADC) number on the side of each box.

1.2 Where the inmate has packed his/her own personal property, staff at the sending institution shall require the inmate to:

1.2.1 Transport his/her property to the packing site.

1.2.2 Pack the duffel bag or available container/box with the personal property item(s).

1.2.3 Test any appliance(s) for proper working condition in the presence of a staff member.

1.2.4 Observe the application of the tamper-proof property seal to the duffel bag (if a duffel bag is used).

1.3 Where the inmate has not been permitted to pack his/her own personal property, staff at the sending institution shall immediately secure the inmate's personal property, including any property in storage, and complete an inventory of the property using the Inmate Property Inventory, and Supplement if needed. Staff shall:

1.3.1 Print their name, badge number and tamper-proof property seal number on the inventory form(s) and sign the form(s).

1.3.2 Obtain the inmate's signature, if present.

1.3.3 When a duffel bag has been used, secure it by hooking the tongue of the zipper and the two metal grommets through the property seal.

1.3.4 Obtain a supervisor's review and signature on the Inmate Property Inventory certifying the inventory has been correctly performed. In the event the seal has to be broken prior to transport, a separate/supplemental inventory form(s) shall be completed and attached to the original inventory sheet and the container shall be resealed.

1.3.5 Ensure any Inmate Property Inventory forms are distributed and forwarded as outlined in this Department Order.

1.4 Boxes containing legal material or appliances shall be:

1.4.1 Labeled with inmate's last name and the Department issued number (ADC number).

1.4.2 Labeled to indicate total number of boxes, inclusive of those in storage, such as "1 of 4".

1.5 All property item(s) (such as, duffel bag, boxed and unboxed appliances) shall be labeled and numbered sequentially, such as "1 of 3", "2 of 3" and etc.

1.5.1 Staff shall place a three-inch wide piece of masking tape along the exterior of the duffel bag that has inmate's last name, ADC number and total number of items for transport printed on it.

1.5.2 The inventory officer shall record on the Inmate Property Inventory form the number of item(s) to be transported, such as two storage boxes, one duffel bag, two appliances, for a total of five items.

1.6 Excess or non-transferable property shall be boxed and processed as outlined in this Department Order by the sending institution. Staff shall:

1.6.1 Legibly and thoroughly complete the Inmate Property Inventory form(s), indicating the condition of each inventoried item, and shall sign and date the form(s) to include printed name and badge number.

1.6.2 Place the inventory form(s) inside the container.

1.6.3 Tape and seal all containers of property for transporting.

1.6.4 Print the inmate's name, ADC number and the number of containers being transported on the outside of each container.

1.6.5 Inventory property that was in storage and package it separately for transport.

1.7 Property that has been inventoried and sealed shall be stored in a secured area inaccessible to inmates until the time of transportation.

1.8 Transporting staff shall:

1.8.1 Accept inmate property files from the sending unit.

1.8.2 Load the property, with the assistance of sending institution staff.

1.8.3 Sign for the number of sealed containers.

1.8.4 Not accept unsealed or damaged containers.

1.8.5 Obtain blank forms from, and deliver completed Information Report(s), Form 105-2, to, receiving staff concerning any containers, which are lost, opened, or damaged in transit.

1.9 Receiving staff shall:

1.9.1 Note damaged containers and seals on the Inmate Property Inventory form(s). If the tamper-proof property seal has been compromised, inventory all property and submit an Information Report.

1.9.2 Conduct another inventory in those instances of an inmate not packing their personal property and indicate the receipt of each individual item by cross-checking in the "Receiving" column of the relevant Inventory form(s). Irregularities appearing during the inventory shall be noted in the comments section of the Inventory form(s).

1.10 In the presence of the inmate, one staff member shall complete the inventory, obtain the inmate's signature and sign the inventory form(s).

1.10.1 Both the sending and receiving institutional staff shall verify the working condition of all appliances and document it on the form in the box titled "condition." The only terms authorized for this entry are W = Working, N = New, U = Used, NW = Not Working.

1.10.2 Except when safety and/or security considerations dictate otherwise, staff shall ensure the inmate is present during an inventory of the inmate's personal property.

1.11 Upon transfer, staff shall document unauthorized property on the Inmate Property Inventory form(s) and the Inmate Property/Contraband/Disposition Tracking form, to allow the inmate to dispose of specified unauthorized property at the inmate's expense.

1.11.1 Unauthorized property that is not disposed of by the inmate shall be processed as unclaimed property.

1.11.2 The inmate shall sign the Inmate Property/Contraband/Disposition Tracking form prior to distribution of the form and disposition of the unauthorized/unclaimed property.

1.12 Staff shall carefully check each inmate's property record upon the inmate's discharge from the Department or transfer to another institution, to ensure the inmate is taking any previously-authorized property items.

1.13 Staff shall seize contraband and unclaimed property and forward it to the Contraband Control Officer to be held for appropriate disposition as outlined in Department Order #803, Inmate Disciplinary Procedure and this Department Order.

1.14 Prescription medications, which have been prescribed by Health Services, Mental Health or contract medical staff and are in the original prescription packet or container and are in the inmate's possession, may remain with the inmate during transport.

1.14.1 All other medications, to include store-bought/over-the-counter items, shall be packed in the duffel bag and sent with the inmate.

1.14.2 Health Services or contract medical staff shall determine any exceptions for inmates to possess other medications during transport.

1.14.3 An inmate may choose to have his/her medication transported with their inventoried property.

1.15 Any property allowed into any institution, including all stored property, shall be transferred with the inmate by the sending institution. Arrangements for disposition and/or storage of excess property or property that is disallowed shall be made by the receiving institution.

## 909.06 PROPERTY CONTROL

1.1 If unauthorized property arrives by mail, mailroom staff shall indicate this on an Inmate Property/Contraband/Disposition Tracking form, and notify the inmate, in person, within three workdays.

1.1.1 The inmate shall sign and date the Inmate Property/Contraband/Disposition Tracking form at the time of notification.

1.1.2 The inmate has 90 days to notify designated staff of the desired disposition. If the inmate fails to do so, the property shall be processed as unclaimed property and disposed of as outlined in section 909.07 of this Department Order. Documentation of the disposition shall be placed in the inmate personal property file.

1.2 Disposal of property by an inmate:

1.2.1 If an inmate wishes to dispose of any personal property, the inmate shall obtain an Inmate Property/Contraband/Disposition Tracking form from the assigned staff, complete it and return it with the personal property item to the designated staff member for disposition.

1.2.2 Inmates are responsible for all costs associated with the disposal of personal property, including the return of unauthorized property. If the is inmate is indigent, the Department shall be responsible for the return of incoming unauthorized property and shall place a hold on the inmate’s trust account to cover the costs of property disposal or return.

1.2.3 Property to be picked up shall not be released until the person designated by the inmate signs the Inmate Property/Contraband/Disposition Tracking form.

1.3 Any approved property item that is removed from an inmate's possession shall be stored by the Department, at the same institution as the inmate, until the property is returned to the inmate, or upon the inmate's release from the Department. Any property item for which proof of authorized ownership cannot be established may be disposed of as outlined in section 909.07 of this Department Order.

1.4 Staff shall provide the inmate with a legible copy of all documentation of personal property that is inventoried and received by mail or other than outlined under section 909.04, 1.1 of this Department Order. In addition, staff shall:

1.4.1 Provide the inmate with any invoices and/or packing slips included with merchandise received along with the property, and place copies of invoices and/or packing slips in the inmate personal property file.

1.4.2 Consider any item in the possession of an inmate, which is not documented in the inmate personal property file, as unauthorized property and immediately seize it, record it on an Inmate Property/Contraband/Disposition Tracking form, and give a copy of the form to the inmate. The inmate shall provide proof of authorized ownership of seized property prior to property being registered and returned to the inmate by the designated staff member. If the inmate does not provide proof within 90 days, the property shall be treated as unclaimed.

1.4.3 Register any appliance on an Inmate Property Received, Form 909-5, including the make, model, serial number, color, and other information pertinent to the description of the item(s).

1.4.4 Engrave the inmate's ADC number on the television in two visible locations and all other appliances in one visible location.

1.4.5 Require inmates to report to the appropriate staff member, within five workdays, any art or craft item manufactured within the institution that the inmate is allowed to keep as personal property.

1.4.5.1 Upon receipt of notification, the designated staff member shall begin registration, engraving, and/or photocopying of the art or craft item.

1.4.5.2 An inmate's failure to adhere to this requirement shall result in seizure of the art or craft item as unauthorized property.

1.5 Any staff member delivering or otherwise processing mail to an inmate, who discovers crime scene/autopsy photographs upon opening mail, shall not turn them over to the inmate for his/her possession. The staff member shall issue the inmate an Inmate Property/Contraband/Disposition Tracking form and write an Information Report, Form 105-2. For the purposes of this rule, crime scene/autopsy photos are not limited to actual photographs and include, but are not limited to, photocopies of photographs, internet reproductions, and other reproductions of actual photographs.

1.5.1 The seized photographs shall be forwarded the same day of receipt to the office of the appropriate unit Deputy Warden. The Deputy Warden shall ensure the photographs are secured in the designated property room.

1.5.2 The photographs shall be considered a "box" under this rule and shall be stored in an appropriate envelope or container clearly marked with the inmate's name, ADC number, and an inventory of the number of photographs inside. The envelope or box shall be clearly marked "Contents not allowed in cell." Staff shall ensure the photographs are transferred with the inmate's property upon any subsequent transfer to another institution or unit.

1.5.3 Inmates shall submit a written request to the unit Deputy Warden to access the box containing the photographs. Requests shall not be unreasonably denied. Repeated requests for access may be denied by the Warden or Deputy Warden if, in their professional judgment, the requests interfere with the orderly operation of the institution.

## 909.07 CONTRABAND/UNAUTHORIZED/UNCLAIMED PROPERTY SEIZURE AND DISPOSITION

1.1 Staff who discovers contraband shall:

1.1.1 Seize it when safe and practical to do so.

1.1.2 Leave contraband that is part of a crime scene in place. The crime scene shall be secured and the Criminal Investigations Unit (CIU) notified.

1.1.3 Submit an Inmate Property/Contraband/Disposition Tracking form, or an Inmate Bank Receipt, Form 905-9, through their immediate supervisor to the Contraband Control Officer.

1.1.4 Secure the contraband in the appropriate container, such as a paper envelope, box, vial or other container.

1.1.5 Seal the container with evidence tape and write their initials, date and time across the end of the tape.

1.1.6 Obtain a case number and write the case number on the container.

1.1.7 Complete the Contraband Control/Chain of Evidence section of the Inmate Property/Contraband/Disposition Tracking form, attach a copy of the form to the container, and begin to record the chain of evidence.

1.1.8 Complete an Information Report.

1.1.9 Submit the contraband, with the completed Contraband Control/Chain of Evidence section of the Inmate Property/Contraband/Disposition Tracking form, to the Contraband Control Officer.

1.2 When storing and recording contraband, the Contraband Control Officer shall:

1.2.1 Receive and store all contraband, physical evidence and unauthorized property submitted by staff members.

1.2.2 Ensure the Inmate Property/Contraband/Disposition Tracking form is properly completed, the contraband and physical evidence are properly packaged, and the physical evidence is properly documented.

1.2.3 Return property to rightful owners who file a legal claim of ownership, and complete the Inmate Property/Contraband/Disposition Tracking form.

1.2.4 Document the forfeiture procedure followed for each item of contraband and unclaimed property.

1.2.5 Coordinate and fully document the destruction/disposal of contraband and unclaimed property, to include completing a Contraband and Evidence Destruction, Form 909-9, when appropriate.

1.2.6 Maintain comprehensive records of the disposition of all contraband, physical evidence, unauthorized property and unclaimed property.

1.2.7 Purge and destroy contraband and property-disposition records three years from the disposition date.

1.3 Staff shall complete an Inmate Property/Contraband/Disposition Tracking form before releasing contraband property. Examples of situations in which property shall be released to lawful owners include, but are not limited to, the following:

1.3.1 Unauthorized property that was seized from an inmate, which:

1.3.1.1 The inmate has assigned or given to someone outside of the Department.

1.3.1.2 Belongs to someone outside of the Department.

1.3.1.3 Belongs to another inmate.

1.3.2 Property that was seized during the course of an investigation that belongs to the victim of a crime, upon the request of the victim and after consultation with the prosecutor and the investigator. If the property cannot be promptly returned, staff shall provide an explanation to the victim or return the property as soon as possible to the victim, or to a lawful recipient authorized by the victim (owner of the property), if the victim is an inmate and the property is not authorized.

1.3.3 Property that constitutes physical evidence for a trial or disciplinary hearing, if the court or disciplinary officer determines that a photograph of the evidence can be substituted and orders the property to be returned to the victim.

1.4 Staff shall ensure evidence to be released to the victim is made available to the defendant's attorney or investigator for inspection and independent photography before it is released.

1.5 The Contraband Control Officer, during the disposition of unclaimed or unauthorized property and contraband, shall:

1.5.1 Ensure staff returns those items that are marked and identified as belonging to the Department to the appropriate area, accompanied by a copy of the Inmate Property/Contraband/Disposition Tracking.

1.5.2 Include the items on the area's inventory.

1.5.3 Hold, as physical evidence until disciplinary hearings are completed, items from a previously-reported theft that have been marked and identified as belonging to an inmate theft victim.

1.5.3.1 A copy of the Inmate Property/Contraband/Disposition Tracking form shall be placed in the evidence bag, and a copy shall be given to the officer or investigator who submitted the recovered items.

1.5.3.2 After the Disciplinary Hearing Officer has announced the findings, the items shall be returned to the inmate who owns them.

1.5.4 Return, at the inmate's expense if possible, unauthorized items received through the mail and/or by other means to the sender, if the items have not been concealed to avoid detection.

1.5.4.1 If the inmate is indigent, the Department shall be responsible for the expense.

1.5.4.2 When the Contraband Control Officer establishes the inmate has no person to whom the items can be released, they shall be stored at the Department's expense.

1.5.4.3 If items are not claimed by and returned to the inmate/owner, they shall be processed as unclaimed property.

1.5.4.4 Unauthorized items received through the mail, and/or by other means, that have been concealed to avoid detection are seized as physical evidence.

1.5.5 Process the unclaimed or unauthorized property or contraband when the case is adjudicated or closed.

1.6 If an inmate chooses to donate property to the Department, or fails to claim seized items, the items shall be legally forfeited to the Department and disposed of appropriately.

1.6.1 All unauthorized property or money that is turned over to the Department by a finder is kept for 30 days, during which time every reasonable effort shall be made to locate the owner.

1.6.2 If the owner is not located within 30 days, a 15-day notice shall be sent to the finder.

1.6.2.1 After the 15-day notice has expired, a notice shall advise the finder to claim the money or property.

1.6.2.2 If the finder is a public officer or employee of the federal, state or local government who found the money in the course of the performance of duties of the office or employment, the property or money shall be disposed of as unclaimed property.

1.6.2.3 If unclaimed, the money or property shall be handled as unclaimed property and reverted to the Clerk of the Superior Court.

1.7 Contraband and unclaimed property shall be forfeited to the State so that the Department can begin disposal proceedings.

1.7.1 When the Warden or Deputy Warden has determined seized contraband is valued at $25 or less, disciplinary charges are filed, and the Disciplinary Hearing Officer orders that the contraband be forfeited as a penalty of a disciplinary hearing, the contraband shall be forfeited without a court order. The Department may use forfeited property that is valued at $25 or less.

1.7.2 When contraband valued at $25 or less, as determined by the Warden or Deputy Warden, is not forfeited through the disciplinary process, or when property remains unclaimed, it shall be forfeited without a court order and disposed of as outlined in 1.8 of this section.

1.7.3 If the Warden or Deputy Warden determines unclaimed property or contraband is valued in excess of $25, the items shall be forfeited pursuant to a court order and disposed of as outlined in 1.10 of this section. The Department may request the Office of the Attorney General to petition the Superior Court for an order to allow the Department to use property that is valued in excess of $25. (See Attachment B)

1.7.4 Contraband money and unclaimed money shall be forfeited and processed as outlined in 1.11 and 1.12 of this section.

1.7.5 Narcotics and illegal drugs shall be forfeited and processed as outlined in 1.10 of this section.

1.8 Periodically, as required by storage capacity, the Contraband Control Officer shall:

1.8.1 Select for disposal all items of contraband and unclaimed property that have been forfeited to the State or that will require a court-ordered forfeiture.

1.8.2 Secure or verify the case officer's/submitter's approval on a Contraband and Evidence Destruction, Form 909-9, prior to forfeiture and disposal of the contraband or physical evidence.

1.8.3 Prepare a list for items that are illegal, and two separate lists for other contraband, such as one for legal items of contraband and unclaimed property valued at $25 or less, and one for items valued in excess of $25. Each of the three lists shall include the case number and a general description of the contents.

1.8.4 Review each case to determine whether criminal or disciplinary charges were filed.

1.8.4.1 If charges were not filed in connection with the case, the prosecuting attorney or Disciplinary Coordinator's approval is not required to begin forfeiture or disposal proceedings.

1.8.4.2 If charges were filed or when there is no clear indication that charges were not filed, the prosecuting attorney or Disciplinary Coordinator's approval is necessary prior to requesting forfeiture or disposal of contraband or unclaimed property related to the case.

1.8.5 Finalize the disposal lists after review and compliance with any limitations or stipulations required by the prosecuting attorney or Disciplinary Coordinator.

1.8.6 Ensure physical evidence and/or unclaimed property for which there is no discernible record (i.e., for which there is no known owner, no record of whom the items were seized from and no record of how the items came into the Department's custody) have been forfeited as unclaimed property.

1.8.7 Submit all disposal lists to the Warden or Deputy Warden for review and approval.

1.8.8 Assemble all forfeited items listed for disposal prior to the disposal date, which shall be determined by the Warden, Deputy Warden or designee.

1.8.9 Notify the destruction committee members of a scheduled disposal/destruction at least three workdays prior to the scheduled disposal/destruction date.

1.8.10 At the time of disposal, work with the destruction committee to verify all forfeited items listed in the Inmate Property/Contraband/Disposition Tracking forms are included and checked off as they are disposed of or destroyed.

1.8.11 Request a court order to forfeit all unclaimed items that have not otherwise been forfeited. (See the Example of an Affidavit to Request Forfeiture, Attachment C)

1.8.12 Ensure unclaimed items valued at $25 or less, or items that have been rejected by the Clerk of the Superior Court, are destroyed or given to an appropriate charity or to an indigent inmate, as approved by the Warden.

1.8.12.1 Items that have military or historical value may be given to an appropriate museum.

1.8.12.2 Coins that have a fair market value other than face value may be sold at fair market value to a dealer or any other collector.

1.8.12.3 Items that may have a useful value to the Department may be retained and used by staff as directed by the Warden.

1.9 Contraband and unclaimed property (except money and explosives) valued at $25 or less, including that forfeited in as a result of disciplinary action shall be destroyed by the Contraband Control Officer and the destruction committee.

1.9.1 All forfeited narcotics, dangerous drugs and other items, used or intended for use in the sale or receipt of a narcotic or dangerous drug, shall be incinerated or disposed of in landfill approved for such use by local law enforcement, by the Contraband Control Officer and the destruction committee.

1.9.2 All forfeited items to be destroyed that that cannot be incinerated shall be broken or crushed, and deposited in an off-site dumpster or at a landfill.

1.10 Contraband (including narcotics, illegal drugs and other items, used or intended for use in the sale or receipt of a narcotic or dangerous drug) and unclaimed property (except for explosives) valued in excess of $25 shall be forfeited and disposed of in accordance with the following procedures:

1.10.1 Unclaimed property items to be disposed of shall be listed periodically, not more frequently than every two months, by the Contraband Control Officer and submitted to the Warden or Deputy Warden.

1.10.2 The Warden or Deputy Warden shall ensure the unclaimed items are legally advertised (as required by the Clerk of the Superior Court) so that lawful owners may be notified and may file a legal claim.

1.10.3 Eighteen calendar days from the advertising date, the Warden or Deputy Warden shall prepare an affidavit, listing items that remain unclaimed, to be submitted to the Attorney General Liaison for review and approval. (See Attachment C)

1.10.3.1 The Attorney General Liaison shall forward the approved affidavit to the Office of the Attorney General with a request for that office to petition the Superior Court for an order to forfeit and dispose. (See Attachment D)

1.10.3.2 When the court order is received, the Contraband Control Officer shall dispose of the items as ordered.

1.10.3.3 Since court-ordered disposal procedures may vary from county to county, Wardens and Deputy Wardens shall ensure their written instructions include procedures for disposal required by the Presiding Judge of the Superior Court in their respective county.

1.10.3.4 After the items are disposed of, the Contraband Control Officer shall prepare an affidavit stating the property listed in the court order was disposed of as ordered.

1.10.3.5 The Warden or Deputy Warden shall forward the affidavit to the Department's General Counsel who will forward copies to Office of the Attorney General and the Attorney General Liaison. (See Example of Disposal Affidavit, Attachment E)

1.10.3.6 When a court order requires items to be delivered to the Clerk of the Superior Court for disposition, the Warden or Deputy Warden shall prepare a letter of transmittal to the Clerk of the Superior Court. (See Attachment F)

1.10.4 All forfeited narcotics, dangerous drugs and other items shall be disposed of as outlined in 1.9.1 of this section.

1.10.5 All forfeited items to be destroyed that cannot be incinerated shall be deposed of as outlined in 1.9.2 of this section.

1.11 Contraband money in the amount of $25 or less forfeited pursuant to the Department's inmate disciplinary process or remains unclaimed by a lawful owner shall be deposited in the General Fund.

1.12 Contraband money in excess of $25 shall only be forfeited and disposed of in accordance with a court order.

1.13 When any firearm is seized, the Contraband Control Officer shall, prior to forfeiture or disposal, ensure the serial number is checked through the Arizona Criminal Justice Information System (ACJIS) to determine if the weapon has been reported lost or stolen. If the weapon is reported lost or stolen, CIU shall investigate and contact the reporting authority.

1.14 All firearms and other weapons forfeited through the disciplinary process, or remain unclaimed by a lawful owner and are valued at $25 or less shall be disposed of in one of the following ways:

1.14.1 Knives, homemade weapons and manufactured firearms that are damaged, old or of poor quality shall be destroyed with welding equipment or melted at the nearest smelter available for State use.

1.14.2 Manufactured firearms that are in serviceable condition shall be delivered to the Clerk of the Superior Court, in the county in which the firearms are located, for disposal. In the event the Clerk of the Superior Court declines to accept the firearms, they shall be destroyed as outlined in 1.14.1 of this section.

1.15 All firearms or weapons valued in excess of $25 and remain unclaimed by a rightful owner shall be listed on an affidavit for attachment to a petition to the Superior Court for forfeiture. After forfeiture, they shall be disposed of in accordance with the court order.

1.16 Wardens or Deputy Wardens, or other on-scene command staff, shall ensure explosives are never transported by Department staff members, are not submitted to a Contraband Control Officer as contraband or are never delivered to an institution for any reason. CIU shall be contacted immediately for all suspected explosive material.

1.17 Physical evidence that is no longer needed for inmate disciplinary or criminal prosecution shall be handled as contraband, unauthorized property or unclaimed property if it cannot be returned to the victim pursuant to Arizona Revised Statute (A.R.S.) 13-4429. Under no circumstance shall any employee convert any contraband, or unauthorized or unclaimed property of any type to personal use.

**909.08 INVESTIGATIONS**

1.1 The Criminal Investigations Unit (CIU) investigators shall:

1.1.1 Conduct appropriate investigations and follow-up investigations on contraband that consists of illegal items or substances, or unauthorized property.

1.1.2 Maintain all physical evidence related to cases being investigated by CIU. All evidence shall be properly reported, collected, secured and disposed of as lawfully authorized.

1.1.3 Assign a criminal case number to each case and related physical evidence investigated by CIU.

1.1.4 Collect and maintain custody and storage of all physical evidence from crime scenes prior to and after scientific analysis is obtained.

1.1.5 Request and obtain needed scientific analysis of physical evidence from Arizona Department of Public Safety (DPS).

**909.09 PROPERTY CLAIMS**

1.1 To file a property claim, inmates shall:

1.1.1 Use the provisions of Department Order #802, Inmate Grievance Procedure, to file Risk Management claims.

1.1.2 File reimbursement claims within 90 days from the date the loss is first discovered.

1.1.3 File Risk Management claims only after the reimbursement has been approved. The Risk Management Coordinator shall not accept claims for reimbursements that are not filed within the 90-day period from the date the inmate first discovers the loss.

1.2 Wardens, Deputy Wardens or Grievance Coordinators shall:

1.2.1 Determine through the inmate grievance system if there was staff or Department conduct that deviated from Department written instructions.

1.2.2 Recommend to the Risk Management Liaison, if such conduct indicated above is found, the inmate be reimbursed for the loss. A Claims Adjuster from the Arizona Department of Administration (ADOA) Risk Management shall determine payment of claims involving property loss or damage due to building system environment failures.

1.3 For property loss claims, the inmate shall obtain the necessary forms from the Grievance Coordinator and complete and provide copies of the following documents to the Grievance Coordinator:

1.3.1 Notice of Claim Against the State of Arizona (Risk Management form for Attorney General's Office).

1.3.2 General Liability Loss Report (Risk Management form RM-012).

1.3.3 Inmate Grievance, Form 802-1.

1.3.4 Inmate Grievance/Investigation Report, Form 802-5.

1.3.5 Any Inmate Property Inventory forms (Inmate Property Inventory form and/or Inmate Property Inventory Supplement form), indicating each item for which the reimbursement is being claimed.

1.3.6 Reimbursement Inventory Sheet, Form 909-11.

1.3.7 The purchase receipt that indicates the actual purchase value of each item lost; or an affidavit declaring the purchase price and date of purchase from the vendor, relative or other individual who can attest to the purchase price of the item.

1.4 The Grievance Coordinator shall:

1.4.1 Return to the inmate any claim submitted if a grievance has not been filed.

1.4.2 Assist the inmate in obtaining and completing the appropriate forms.

1.4.3 Forward the completed claim packet to the Business Office/Risk Management Coordinator.

1.5 The Division/Institution Risk Management Coordinator shall:

1.5.1 Enter into the annual Risk Management Claim History Log all liability claims for losses and assign Agency Tracking Numbers to each.

1.5.2 Adjust all inmate grievance "proven" claims of lost property, found as the "fault of the Department or that of an employee or contractor of the Department", and determine the actual depreciated dollar amount of compensation to be paid to an inmate for lost property. Depreciation shall only be determined using the approved ADOA Schedule of Depreciation.

1.5.2.1 Institutions shall pay an inmate's depreciated and adjusted claim less than $450 from an institution's Revolving Fund.

1.5.2.2 Department Accounting shall reimburse the institution's Revolving Fund for all inmate claims paid to the inmate that is less than $450. The ADOA Risk Management reimburses the Department for the inmate's depreciated and paid claim for any amount over $450.

1.5.2.3 Institutions shall submit depreciated and/or adjusted claims to the ADOA Risk Management for payment within 30 calendar days following notification by a Grievance Coordinator/Committee on all proven inmate claims of lost property with a value above $450.

1.5.3 Ensure a signed release is obtained from an inmate accepting ANY offer of payment prior to releasing of funds to the inmate's account.

1.5.4 Maintain copies of all original documentation submitted to ADOA Risk Management for three years following final closure disposition of claims.

1.5.5 ADOA Forms that are not in electronic format are provided as needed from the Safety Office. Institutions shall maintain an adequate stock to cover needs.

1.6 All inmate personal property shall be valued at replacement cost less depreciation (actual cash value).

1.6.1 Depreciation shall be determined by using the Inmate Property Schedule of Depreciation/Reimbursement. (See Attachment G)

1.6.2 When an inmate does not have a receipt to indicate the date of purchase and the cost, the efforts made to determine this information shall be documented in the claim file, along with how the final age and value were established.

1.6.3 Depreciation shall not exceed 90 percent of the item's value.

1.7 The Claims Adjuster from ADOA Risk Management shall not consider claims for compensation for:

1.7.1 Losses of edible foodstuffs or perishable items, other than canned goods obtained through purchases that are reported as a loss caused by the State.

1.7.2 **SECTION DELETED**

1.7.3 Property losses in excess of the limit, which occur before the inmate takes possession of the property, may be considered for reimbursement above the limit by the Claims Adjuster from ADOA Risk Management. An example of this situation may arise when property is lost in transit when the inmate is transported from the county jail.

1.8 As a resource to replace inmate property lost or damaged due to staff negligence, unclaimed property valued at $25 or less that is serviceable and meets the requirements of Attachment A may be issued to an inmate as approved by the Warden or Deputy Warden. This property shall be issued as follows:

1.8.1 The loss or damage has been verified by an investigation conducted by Department staff.

1.8.2 A property file review to determine original ownership has been completed and verified before issuance.

1.8.3 The item is not involved in any form of investigation.

1.8.4 The item is not issued under a “Loaner Status.”

1.8.5 The item becomes part of the inmate's personal property and is not subject to revocation upon transfer, release or death.

1.8.6 The inmate has agreed in writing to the replacement property item.

**909.10 PROPERTY FILES**

1.1 At intake, Reception Center staff shall establish an Inmate Personal Property File containing name, ADC number, and all documentation related to inventory, movement and registration of inmate's personal property. The intake staff shall photocopy authorized jewelry items and place the photocopy in the Inmate Personal Property File.

1.2 Upon transfer, the Inmate Personal Property File shall be transferred with the inmate.

1.3 Upon an inmate's release, staff shall place the Inmate Personal Property File in Side #3 of the Institution File.

1.4 Upon an inmate's return or recommitment, staff shall establish a new Inmate Personal Property File.

1.5 The Inmate Personal Property File shall include the following:

1.5.1 Side 1: Any required photocopies.

1.5.2 Side 2: Inmate property inventories.

1.5.3 Side 3: State Issue Property Records/Property Received Records.

1.5.4 Side 4: Property Release forms.

1.6 Property File Audits:

1.6.1 Staff assigned to maintain property files shall audit files on a random basis.

1.6.2 Discrepancies in the property amounts, possession or ownership shall be documented in the property file and may require an inventory.

1.7 Property files shall be maintained in terminal digit order as outlined in Department Order #901, Inmate Records Information and Court Action.

# IMPLEMENTATION

The Division Director for Offender Operations or designee shall update affected Post Orders as necessary. Once distributed, the Wardens and Deputy Wardens shall ensure the updated Post Orders are maintained and placed at the appropriate locations.

# DEFINITIONS

**ADJUST** - For the purpose of the Department Order, means to review, depreciate as required, forward $450 or greater depreciated claims to ADOA, or to make payment from a Department revolving fund for claims under a $450 adjusted value.

**ADOA SCHEDULE OF DEPRECIATION** - Is provided by the ADOA for liaisons use in depreciating inmate claims indicating a fair market value guide based on the age of a property item and a relative percentage value reduction for each year after purchase.

**ANNUAL AGENCY TRACKING NUMBERS** - A system of annually tracking liability loss claims internally and cross-referencing ADOA claim numbers once submitted and assigned.

**CHAIN OF EVIDENCE** - An accounting for the custody of evidence, contraband and property, including names of those in possession, and dates and times of possession, from the moment it reaches an employee's custody until legal disposition.

**CLAIMS ADJUSTOR** - A representative from the ADOA Risk Management Section who is responsible for insurance claims dealing with safety and loss activities.

**CLAIM HISTORY LOG** - A system for recording and tracking each submitted claim during a calendar year.

**CONSUMABLE FOOD ITEMS** – Authorized food items purchased from the inmate store not considered as a part of the inmate's personal property.

**CONTRABAND** – For the purpose of this Department Order, contraband is defined as any item considered to be a detriment to the safe and orderly operation of an institution or parole office. Contraband includes, but is not limited to:

- Any item that could be used as an aid to escape.
- Any item that could be used to disguise or alter an inmate's appearance.
- Any item of clothing or items for personal use or consumption that are not cleared first through security or the property room of the institution.
- Cameras, video, audio or related equipment, unless authorized by order of written instructions.
- The introduction and/or possession of any separate components that may aid in the use of wireless devices and/or multimedia storage devices. This includes, but may not be limited to:
    - Cell phone chargers.
    - Mobile chargers.
    - Cell phone batteries.
    - Any other item that staff reasonably determines may aid in the use of wireless devices and/or multimedia storage devices.
- Allowable items which are:
    - Possessed without permission.
    - Discovered in improper locations.
    - Are over set allowable amounts.
    - Obtained in improper manners or methods.

- In altered forms or conditions.

**CONTRABAND CONTROL OFFICER** - Staff assigned by the Warden and Deputy Warden to coordinate transportation, storage, documentation and disposition of contraband, evidence and unclaimed property.

**DEPARTMENT LOSS PREVENTION COORDINATOR** - An employee tasked to manage the Department Loss Prevention and Safety Program.

**DISPOSAL, DISPOSITION** - The Department's action to remove items of contraband, evidence, unauthorized property or unclaimed property from its inventory by destruction, donation, release to the victims/lawful owners, or otherwise according to court orders.

**DIVISION/INSTITUTION RISK MANAGEMENT COORDINATOR** - An employee trained by the Department Loss Prevention Coordinator, as tasked by a Warden/Administrator to locally adjust Risk Management claims; e.g., general and property liability losses, automobile losses for the institution.

**ELECTRICAL APPLIANCE** - Any inmate property item that must be plugged into an electrical outlet in order to operate. For the purposes of this Department Order, a major electrical appliance is considered to be a Television of any size, an immersion heater or fan of any type including those items that were authorized by earlier written instructions; but, are no longer included on the Inmate Store/Property List as an authorized item.

**ILLEGAL CONTRABAND** - Any item, the possession of which in the community or on prison grounds is a felony or misdemeanor, i.e., weapons, explosive devices, drugs, wireless communication devices, multimedia storage devices or other statutorily prohibited item(s).

**INDIGENT** - An inmate whose account balance is $12 or less and has not exceeded this amount during the previous 30 days.

**INMATE CLAIM** - A loss submitted by an inmate to the Department for lost property determined through a grievance process as being the fault of the state.

**INMATE PROPERTY** - An inmate's authorized personal property and the State Property issued to the inmate.

**INVENTORY** - A listing of inmate property excluding food items to ensure accountability and compliance with this Department Order.

**LEGAL DOCUMENTATION** – For the purpose of this Department Order, legal document is defined as an original or certified copy of a birth certificate, marriage license, adoption papers or other legal record, driver's license, military identification, non-drivers identification (state issued), passport, social security card and health insurance card.

**MODIFICATION** - Any change from the original appearance or function of an item of property. Changes that are prohibited include unauthorized repair, dismantling, cutting, tearing, numbering, lettering, drawing, painting or attaching of decals or pictures to or upon any item of property. When property is modified, it shall become unauthorized property and may not be replaced for one year.

**NOTICE OF CLAIM AGAINST THE STATE OF ARIZONA** - An ADOA claim form used by the Attorney General's Office in subrogating liability claims filed against the state or its agencies/employees. Distribution by a liaison shall occur as stipulated on the bottom of each form.

**PHYSICAL EVIDENCE** - Items connected to an inmate disciplinary case or to a crime, which may be presented as evidence in the administrative or criminal prosecution of an individual. When the case is adjudicated or closed and the evidentiary items are no longer needed, they are returned to the victim or are appropriately redefined as contraband or property, depending on the nature of the item.

**PROPERTY TAMPER SEAL** - A small, red, numbered, self-sealing tag that may be removed only by cutting.

**PROVEN PROPERTY CLAIMS** - Shall only be for inmate property losses where a grievance coordinator and/or a grievance committee has determined a loss is proved as the fault of the Department, Department employee and/or a contract partner of the Department.

**REVOLVING FUND** - A fund source controlled and monitored by the Institution's Business Administrator and replenished by reimbursements from the ADOA.

**RISK MANAGEMENT CLAIMS** - Claims submitted by inmates for reimbursement for property loss or damage due to building system environment failures or documented staff or Department conduct that deviates from Department written instructions.

**RISK MANAGEMENT COORDINATOR** - An employee designated by the Deputy Director, applicable Division Director/**Assistant Director** or Warden who coordinates loss claims between the division/institution and the ADOA, Risk Management Section.

**TEMPORARY PLACEMENT** - An inmate's temporary assignment to a court, hospital or furlough.

**UNAUTHORIZED PROPERTY** - Items not inherently illegal that are considered contraband when possessed by an inmate or visitor within an institution.

- Any item for personal use not cleared through staff assigned to process property, received from approved channels or purchased in an inmate store.
- Any approved item, including a document that is found in an unauthorized location.
- Any approved item that is in excess of the quantity allowed.
- Approved items modified from original appearance or function. Includes repair, dismantling, cutting, tearing, numbering, lettering, drawing, painting or attaching decals/pictures to property. Modified property is unauthorized and may not be replaced for one year.
- Any inmate property, per *Blum v. State*, previously accepted in the prison system, but subsequently disallowed by policy from an inmate's immediate possession.

**UNCLAIMED PROPERTY** – Unauthorized property, seized or recovered property which has not been legally claimed by an inmate within 90 days shall be considered contraband.

{Original Signature on File}

Charles L. Ryan
Director

**ATTACHMENTS**
Attachment A - Inmate Store/Property List
Attachment B - Example of a Petition
Attachment C - Example of an Affidavit to Request Forfeiture
Attachment D - Example of a Court Order
Attachment E - Example of a Disposal Affidavit
Attachment F - Example of a Letter of Transmittal to Comply With a Court Order
Attachment G - Inmate Property Schedule of Depreciation/Reimbursement

**FORMS LIST**
909-1, Inmate Property Inventory Supplement
909-2, Affidavit for Collection of Personal Property
909-4, Inmate Property Inventory
909-5, Inmate Property Received
909-6, Inmate Property/Contraband/Disposition Tracking
909-7, Specialized Personal Medical Property Information/Agreement
909-9, Contraband and Evidence Destruction
909-10, Inmate State Issue/Replace/Return Receipt
909-11, Reimbursement Inventory Sheet

# AUTHORITY

A.R.S. 12-821.A, Authorization of Claim Against Public Entity or Public Employee; Definition.

A.R.S. 12-941 et seq, Disposal of Certain Unclaimed Property in Custody of State, City or Town Officers.

A.R.S. 13-2501, Definitions of Contraband.

A.R.S. 13-2505, Promoting Prison Contraband.

A.R.S. 13-3105, Forfeiture of Weapons and Explosives.

A.R.S. 13-3309, Seizure; Exception; Definition.

A.R.S. 13-3310, Forfeiture.

A.R.S. 13-3413, Forfeiture and Disposition of Drugs and Evidence.

A.R.S. 13-3415, Possession, Manufacture, Delivery, Advertisement of Drug Paraphernalia; Definitions; Violation; Classification, Civil Forfeiture; Factors.

A.R.S. 13-4301, Forfeiture.

A.R.S. 13-4429, Return of Victim's Property; Release of Evidence.

A.R.S. 31-230, Taking Prohibited Articles into Prison.

A.R.S. 31-231, Unauthorized Communications.

| INMATE STORE/PROPERTY LIST - DO 909 ATTACHMENT A<br>EFFECTIVE DATE: JULY 24, 2017 | Minimum By Phase | | | Medium By Phase | | | Close By Phase | | | Maximum By Phase | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ITEM**<br>**X – Allowed 0 – Not Allowed SF – Sugar-Free Only** | **I $60** | **II $80** | **III $100** | **I $60** | **II $80** | **III $100** | **I $60** | **II $80** | **III $100** | **I $60** | **II $80** | **III $100** | **Baker** | **CDU DET** |
| Artificial Sweetener | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Bread - white, wheat | X | X | X | X | X | X | X | X | X | 0 | 0 | 0 | X | X |
| Bagels | X | X | X | X | X | X | X | X | X | 0 | 0 | 0 | X | X |
| Tortillas | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Candy, Bagged (includes Sugar Free) | X | X | X | X | X | X | X | X | X | SF | SF | SF | X | SF |
| Candy Bars | X | X | X | X | X | X | X | X | X | X | X | X | X | 0 |
| Nutrition/Granola/Cereal Bars | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Chips | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Popcorn - pre-popped | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Cocoa Mix, Instant (includes Kosher, Sugar Free) | X | X | X | X | X | X | X | X | X | SF | SF | SF | 0 | SF |
| Coffee, Instant (Regular, Decaffeinated) (Excluded from Minors Unit) | X | X | X | X | X | X | X | X | X | X | X | X | 0 | X |
| Creamer - Non-dairy (packets only) | X | X | X | X | X | X | X | X | X | 0 | 0 | 0 | 0 | 0 |
| Cookies (includes Sugar Free) | X | X | X | X | X | X | X | X | X | X | X | X | X | 0 |
| Crackers (includes Kosher) | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Bakery/Cupcakes/Donuts | X | X | X | X | X | X | X | X | X | 0 | 0 | 0 | X | 0 |
| Soup, dry 'Ramen-style' or pouch/envelope (no cup) | X | X | X | X | X | X | X | X | X | X | X | X | 0 | X |
| Ice | X | X | X | X | X | X | X | X | X | X | X | X | X | 0 |
| Ice Cream Bar (no stick) | X | X | X | X | X | X | X | X | X | 0 | 0 | 0 | 0 | 0 |
| Bottled Water (plastic bottle only) | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Soda (plastic bottle only) Regular and Diet/Sugar-Free | X | X | X | X | X | X | X | X | X | SF | SF | SF | X | X |
| Powdered Drink Mix (includes Sugar Free) | X | X | X | X | X | X | X | X | X | SF | SF | SF | X | SF |
| Grape Drink (Kosher) | X | X | X | X | X | X | X | X | X | 0 | 0 | 0 | X | X |
| Milk, powdered | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Peanut Butter (Smooth and Chunky) (includes packets) | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Squeeze Cheese | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Jalapenos | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Mayonnaise Packets | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Picante Sauce (Hot and Regular) | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Salsa | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Instant Breakfast (includes Sugar Free) | X | X | X | X | X | X | X | X | X | SF | SF | SF | X | SF |
| Cereal – dry, bagged | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Summer Sausage, Beef Salami, Beef Jerky | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Beans (includes in-a-bag, refried, etc.) | X | X | X | X | X | X | X | X | X | X | X | X | 0 | 0 |

| **INMATE STORE/PROPERTY LIST - DO 909 ATTACHMENT A**<br>**EFFECTIVE DATE: JULY 24, 2017** | **Minimum By Phase** | | | **Medium By Phase** | | | **Close By Phase** | | | **Maximum By Phase** | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ITEM**<br>**X – Allowed 0 – Not Allowed SF – Sugar-Free Only** | **I $60** | **II $80** | **III $100** | **I $60** | **II $80** | **III $100** | **I $60** | **II $80** | **III $100** | **I $60** | **II $80** | **III $100** | **Baker** | **CDU DET** |
| Beef Stew | X | X | X | X | X | X | X | X | X | X | X | X | 0 | 0 |
| Chili | X | X | X | X | X | X | X | X | X | X | X | X | 0 | 0 |
| Roast Beef, soft package/pouch | X | X | X | X | X | X | X | X | X | X | X | X | 0 | X |
| Chicken, soft package/pouch | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Pork, soft package/pouch | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| French Vanilla Cappuccino (Authorized for Phase III - Death Row) | X | X | X | X | X | X | X | X | X | 0 | 0 | 0 | 0 | X |
| Regular Oatmeal (includes Kosher) | X | X | X | X | X | X | X | X | X | X | X | X | 0 | 0 |
| Toaster Pastries (Pop-Tarts, etc.) | X | X | X | X | X | X | X | X | X | X | X | X | X | 0 |
| Peanuts/Nut varieties (no shells) | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Trail Mix | X | X | X | X | X | X | X | X | X | 0 | 0 | 0 | X | 0 |
| Hot Sauce (Louisiana, Tapatio, etc.) | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Spices/Seasoning – various | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Jumbo Pickle | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Rice, Instant | X | X | X | X | X | X | X | X | X | 0 | 0 | 0 | 0 | 0 |
| Noodles/Pasta | X | X | X | X | X | X | X | X | X | X | X | X | X | 0 |
| Fish – Tuna, Salmon, Mackerel, Sardines, etc. (soft pkg/pouch, in water only) | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Tea (includes Kosher) (Authorized for Phase III - Death Row) | X | X | X | X | X | X | X | X | X | 0 | 0 | 0 | 0 | X |
| Matzoh | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| **TOBACCO PRODUCTS/ACCESSORIES (Not sold to Minors)** | | | | | | | | | | | | | | |
| Cigarettes – 2 varieties filtered, 2 varieties unfiltered | 10 | 10 | 10 | 10 | 10 | 10 | 7 | 7 | 7 | 0 | 0 | 0 | 0 | 0 |
| Chewing Tobacco | 7 | 7 | 7 | 7 | 7 | 7 | 5 | 5 | 5 | 0 | 0 | 0 | 0 | 0 |
| Tobacco – loose, rolling, with papers | 24 | 24 | 24 | 24 | 24 | 24 | 12 | 12 | 12 | 0 | 0 | 0 | 0 | 0 |
| Roller Kit (plastic) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| **MEDICATIONS (Excluded from Minors Unit)** | | | | | | | | | | | | | | |
| ***Digestive Aids*** | | | | | | | | | | | | | | |
| Chewable antacid tablets - magnesium hydroxide | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Chewable antacid tablets - calcium supplement | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Liquid antacid | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Kaolin Pectin anti-diarrhea (Pepto Bismol, etc.) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Famotidine acid reducer (Pepcid, etc.) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Magnesium Hydroxide digestive aid (Milk of Magnesia, etc.) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Unflavored laxative tablets | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Psyllium Mycelioid Resin, fiber laxative tablets/capsules | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |

| INMATE STORE/PROPERTY LIST - DO 909 ATTACHMENT A EFFECTIVE DATE: JULY 24, 2017 | Minimum By Phase | | | Medium By Phase | | | Close By Phase | | | Maximum By Phase | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ITEM X – Allowed 0 – Not Allowed SF – Sugar-Free Only | I $60 | II $80 | III $100 | I $60 | II $80 | III $100 | I $60 | II $80 | III $100 | I $60 | II $80 | III $100 | Baker | CDU DET |
| Loperamide (Imodium, etc.) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Beano | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Cimetidine tablets 200 mg (Tagamet, etc.) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| ***Cough, Cold, Allergy Medications*** | | | | | | | | | | | | | | |
| Cholrpheniramine allergy tablets 4mg | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Loratidine Allergy (Claritin, etc.) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Saline nasal spray | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Guaifensin Non-alcohol formula cough syrup (Tussin, etc.) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Dextromenthorphan cough suppressant lozenges (cough drops) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Sore throat lozenges – benzocaine (Chloraseptic, etc.) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 |
| ***Pain and Fever Relievers*** | | | | | | | | | | | | | | |
| Acetaminophen tablets 325 mg (Tylenol, non-aspirin, etc.) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Ibuprofen Tablets 200 mg (Motrin, Advil, etc.) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Aspirin 325 mg (Bayer, etc.) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| ***Skin Creams, Ointments, Cleansers*** | | | | | | | | | | | | | | |
| Hydrocortisone 0.5% cream | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Triple Antibiotic Ointment | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Tolnaflate 1% antifungal cream | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Analgesic Greaseless Balm | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Benzoyl Peroxide Acne Ointment | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Benzoyl Peroxide Acne Soap | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Hemorrhoid Ointment | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Antiseptic Hemorrhoid Cleaning Pads | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Skin Lotion (including hypoallergenic) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Face Moisturizer with SPF | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Sun Block (Minimum of SPF 30) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| ***Vitamins, Supplements*** | | | | | | | | | | | | | | |
| Adult Multi-Vitamin Tablets | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Adult Multi-Vitamin with iron | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Vitamin C (500 mg) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Vitamin E (400 iu) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Fish Oil, Omega-3 (1200 mg) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| | | | | | | | | | | | | | | |

| INMATE STORE/PROPERTY LIST - DO 909 ATTACHMENT A<br>EFFECTIVE DATE: JULY 24, 2017 | Minimum<br>By Phase | | | Medium<br>By Phase | | | Close<br>By Phase | | | Maximum<br>By Phase | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ITEM**<br>**X – Allowed 0 – Not Allowed SF – Sugar-Free Only** | I<br>$60 | II<br>$80 | III<br>$100 | I<br>$60 | II<br>$80 | III<br>$100 | I<br>$60 | II<br>$80 | III<br>$100 | I<br>$60 | II<br>$80 | III<br>$100 | Baker | CDU<br>DET |
| **PERSONAL CARE PRODUCTS** | | | | | | | | | | | | | | |
| Antifungal Medicated Foot Powder | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Clipper, Nail - Finger Size (no file) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Cotton Swabs | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 |
| Band Aids | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 |
| Depends | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Dental Flosser Pick | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| Floss Loops - Dental Floss | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Plaque Remover (wooden) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 |
| Denture Cleaner Tablets | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Denture Adhesive Pads Upper Pad/Lower Pad | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Denture Adhesive Cream/Paste | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Denture/Nail Brush (max 3 1/2", plastic grip - no handle) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| Denture Cup with bath | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Deodorant/Antiperspirant | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 |
| Lip Balm/Ointment | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 |
| Soap - Bar (moisturizing; hypoallergenic; anti-bacterial) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 | 2 |
| Soap – Body Wash | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 2 |
| Tissue, Bathroom (up to 4-roll package) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Tissue, Facial (Kleenex or equivalent) | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 0 | 0 | 0 | 0 | 1 |
| Toothbrush (security) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 |
| Toothpaste (includes sensitive) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 |
| Mouth Wash, alcohol-free | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 |
| ***Contact Lens Solutions*** | | | | | | | | | | | | | | |
| Soft or Hard Lens: Multi Solution/Conditioning Solution | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Daily Cleaner/Cleaning Solution | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Rewetting Drops | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Lens Storage/Carrying Case, for hard or soft lenses | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| Eye Drops - Lubricating (Dry eyes) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 1 |
| ***Shaving Products*** | | | | | | | | | | | | | | |
| After Shave Lotion - non-alcohol | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| Shaving Cream, lathering | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 |
| Razor – Disposable, single | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 |

| INMATE STORE/PROPERTY LIST - DO 909 ATTACHMENT A<br>EFFECTIVE DATE: JULY 24, 2017 | Minimum By Phase | | | Medium By Phase | | | Close By Phase | | | Maximum By Phase | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ITEM<br>X – Allowed 0 – Not Allowed SF – Sugar-Free Only | I $60 | II $80 | III $100 | I $60 | II $80 | III $100 | I $60 | II $80 | III $100 | I $60 | II $80 | III $100 | Baker | CDU DET |
| Razor – Disposable Twin Blade, multi-pack | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Shaving Cream, Brushless - Regular (tube) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 |
| Pre-Shave, Bump Stopper Plus (non-alcohol); gel | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 1 |
| ***Hair Care Products*** | | | | | | | | | | | | | | |
| Combs up to 5" pocket | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Hair Brush – vented, medium | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Hair Pick (small) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| Conditioner (small) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 |
| Conditioner (large) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 |
| Do-Rag (black) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Palm brush (small plastic) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Hair Dressing/Grease | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 |
| Ponytailers (no metal, black only, multi-pack) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Shampoo - Small (includes Regular, Dandruff, Moisturizing) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 |
| Shampoo - Large (includes Regular, Dandruff, Moisturizing) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 |
| Curl Gel Activator | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 |
| Curl Gel Moisturizer | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 |
| Curl Gel Pomade | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 |
| Finishing Mist | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 |
| Conditioning Relaxer (no lye, non-caustic) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 |
| Laundry Detergent (Not to be sold in units with Centralized laundry service) | 6 | 6 | 6 | 4 | 4 | 4 | 4 | 4 | 4 | 0 | 0 | 0 | 0 | 0 |
| **FEMALE CARE PRODUCTS (Female inmates only)** | | | | | | | | | | | | | | |
| Emery Boards | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Sanitary Napkins (2 sizes) | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 0 | 24 |
| Panty Liners | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 0 | 24 |
| Tampons (2 sizes; unscented) | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 0 | 24 |
| Blush - no mirrors | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Deodorant/Antiperspirant female brand | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 |
| Eye Shadow - Multi color pack | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Brow/Liner pencil (up to 3 shades) | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Face Powder - no mirrors | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Lip Gloss | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Lipstick | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |

| **INMATE STORE/PROPERTY LIST - DO 909 ATTACHMENT A**<br>**EFFECTIVE DATE: JULY 24, 2017** | **Minimum By Phase** | | | **Medium By Phase** | | | **Close By Phase** | | | **Maximum By Phase** | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ITEM**<br>**X – Allowed 0 – Not Allowed SF – Sugar-Free Only** | **I $60** | **II $80** | **III $100** | **I $60** | **II $80** | **III $100** | **I $60** | **II $80** | **III $100** | **I $60** | **II $80** | **III $100** | **Baker** | **CDU DET** |
| Liquid foundation (plastic container) | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Mascara | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Makeup applicator | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Barrettes (plastic) | 4 | 4 | 4 | 4 | 4 | 4 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 |
| Hair Comb (up to 9") | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Shaving cream (tube) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 |
| Vaginal Cream-Clotrimazole, yeast infection cream | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| Pamprin | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| Sponge Rollers (medium or large) | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 2 | 0 |
| **STATIONARY SUPPLIES** | | | | | | | | | | | | | | |
| Address Book | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Brief cover-no metal clasps | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Dictionary | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Envelopes - Letter pre-printed (includes pre-stamped/embossed) | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 |
| Envelopes - Manila up to 10” x 13” pre-printed | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |
| File Folders - letter; no metal clasps | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| File Folders - legal; no metal clasps | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Greeting cards - various | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 |
| Pencil sharpener - single blade | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pencils - #2 Golf style or flexible | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 0 | 1 |
| Pens - Medium Black ink only (clear plastic) | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 0 | 0 | 0 | 0 | 0 |
| Pens - Fillers clear plastic only or approved Flex style (security) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 |
| Pencil Eraser | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| Writing Pad - white 8 ½” x 11” no metal binding | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Pushpins | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Postcards - pre posted | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 |
| Stamps/Postage – International/Airmail/Global (NO DOMESTIC) | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 |
| Storage Boxes (up to size 17.5” x 10.25” x 11.5”) (up to 3 legal boxes and 1 personal property box within living area) | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| Calendar (up to 12” x 12””; no metal binding**)** | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Photo Album (up to 12” x 14”; 1" thick; no metal binding) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| **APPLIANCES/ACCESSORIES (PER ADC SPECS)** | | | | | | | | | | | | | | |
| Adapter - clear view (mono/stereo for headphones and ear buds) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| Alarm Clock – clear view | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| INMATE STORE/PROPERTY LIST - DO 909 ATTACHMENT A<br>EFFECTIVE DATE: JULY 24, 2017 | Minimum By Phase | | | Medium By Phase | | | Close By Phase | | | Maximum By Phase | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ITEM**<br>**X – Allowed 0 – Not Allowed SF – Sugar-Free Only** | **I $60** | **II $80** | **III $100** | **I $60** | **II $80** | **III $100** | **I $60** | **II $80** | **III $100** | **I $60** | **II $80** | **III $100** | **Baker** | **CDU DET** |
| Batteries - as needed for each inmate appliance | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 |
| Calculator solar power only; no battery; clear view | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| Compact Disc Player - clear view plastic | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Compact Disc Adapter (power cord); clear view | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Coaxial Cable up to 9 ft. (Except SMU I) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| Coaxial Cable 12 ft. (SMU I only) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 0 | 0 |
| Desk Lamp - electric only; clear view; per ADC specs | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 |
| Desk Lamp Bulb replacement (30 or 40 watt as required; LED optional) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 |
| Fan - clear view; electric only; 8" | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| Extension Cord up to 9 ft. (Except SMU I) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 |
| Extension Cord up to 12 ft. (SMU I only) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 0 | 0 |
| Headphones (no metal; clear view; may include replacement pads) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Earbuds (clear view; no metal) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| Headphones/earbuds extension cord (up to 6’ length) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 |
| Immersion Heater (Authorized for Phase III - Death Row) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Shaver - Electric only | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Electric shaver replacement heads | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Beard Trimmer (battery operated; clear view; Male only) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 |
| Television (up to 15" color; clear view) (no remote, no antenna) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| AM/FM Radio, with or without Cassette Player - battery or electric; clear view | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| AM/FM radio/cassette Adapter (power cord if applicable) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| **GAMES** | | | | | | | | | | | | | | |
| Cards – Poker | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 |
| Pinochle | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 |
| Checkers/Chess – either combo or separate | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 |
| Dominos Set | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 |
| **ARTS & CRAFTS (must be on approved list to order)** | | | | | | | | | | | | | | |
| Pencils, colored | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 0 | 24 | 24 | 0 | 0 |
| Scissors, all plastic up to 6“ | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Ruler, 12“ maximum, flexible plastic | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 1 | 0 | 0 |
| Eraser, non-pliable | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 | 2 | 0 | 0 |
| ***Painting/Art*** | | | | | | | | | | | | | | |
| Paint Brushes (generic - for water color use) | 0 | 1 | 1 | 0 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |

| INMATE STORE/PROPERTY LIST - DO 909 ATTACHMENT A<br>EFFECTIVE DATE: JULY 24, 2017 | Minimum<br>By Phase | | | Medium<br>By Phase | | | Close<br>By Phase | | | Maximum<br>By Phase | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ITEM**<br>**X – Allowed 0 – Not Allowed SF – Sugar-Free Only** | **I<br>$60** | **II<br>$80** | **III<br>$100** | **I<br>$60** | **II<br>$80** | **III<br>$100** | **I<br>$60** | **II<br>$80** | **III<br>$100** | **I<br>$60** | **II<br>$80** | **III<br>$100** | **Baker** | **CDU<br>DET** |
| Artist paint brushes (Acrylic use) | 0 | 5 | 5 | 0 | 5 | 5 | 0 | 0 | 5 | 0 | 0 | 0 | 0 | 0 |
| Water color paint set (maximum of 36 colors and 3 brushes) | 0 | 1 | 1 | 0 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| Water color tablet (up to 12" x 16", max of 15 sheets, no metal binding) | 0 | 1 | 1 | 0 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| Acrylic paint set - plastic bottles, 5 primary colors, up to 2 oz. each | 0 | 5 | 5 | 0 | 5 | 5 | 0 | 0 | 5 | 0 | 0 | 0 | 0 | 0 |
| ***Greeting Cards*** | | | | | | | | | | | | | | |
| Markers, felt tip, water based only | 0 | 24 | 24 | 0 | 24 | 24 | 0 | 24 | 24 | 0 | 0 | 0 | 0 | 0 |
| Construction paper, sheet (various colors) | 0 | 20 | 20 | 0 | 20 | 20 | 0 | 20 | 20 | 0 | 0 | 0 | 0 | 0 |
| ***Drawing*** | | | | | | | | | | | | | | |
| Markers, felt tip, water based only (various colors) | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 0 | 0 | 0 | 0 | 0 |
| Drawing tablet (9” x 12”; no metal) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 | 1 | 0 | 0 |
| ***Origami/Paper Craft*** | | | | | | | | | | | | | | |
| Construction paper, sheet (various colors) | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 10 | 100 | 0 | 50 | 50 | 0 | 0 |
| ***Puzzles*** | | | | | | | | | | | | | | |
| Jigsaw – 500 piece, flat only, no 3D | 0 | 2 | 2 | 0 | 2 | 2 | 0 | 2 | 2 | 0 | 0 | 0 | 0 | 0 |
| **MISCELLANEOUS ITEMS** | | | | | | | | | | | | | | |
| Bowl - plastic | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Spork - teaspoon size, max 6" length, white | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 |
| Tumbler - plastic | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Mirror - 6" plastic/acrylic | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Reading Glasses - (plastic frame) various strength | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| Sunglasses - plastic; non-reflective; value not to exceed $10.00 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Ice chest - No Handles | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 |
| Padlock - Master Key Statewide-Override | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Soap Dish - clear plastic | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Wristwatch - not to exceed $25; time display and alarm | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Wristwatch battery | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Insoles | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 |
| Arch Supports | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 2 | 0 |
| Heel cup – rubber | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 |

| INMATE STORE/PROPERTY LIST - DO 909 ATTACHMENT A<br>EFFECTIVE DATE: JULY 24, 2017 | Minimum By Phase | | | Medium By Phase | | | Close By Phase | | | Maximum By Phase | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ITEM**<br>**X – Allowed 0 – Not Allowed SF – Sugar-Free Only** | **I $60** | **II $80** | **III $100** | **I $60** | **II $80** | **III $100** | **I $60** | **II $80** | **III $100** | **I $60** | **II $80** | **III $100** | **Baker** | **CDU DET** |
| **CLOTHING ITEMS (Maximum limit listed; combination of state issued and store bought)** | | | | | | | | | | | | | | |
| ID Lanyard – black, break-away (safety) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| ID Clips - plastic | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 0 |
| ***Shoes*** | | | | | | | | | | | | | | |
| Athletic/Tennis shoes Men's and Women's sizes - white only (3 styles high top, low quarter, Velcro); current stock or name brand replacement *can only have 2 if they do not have any deck shoes or work boots | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 |
| Shoelaces - white only | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 |
| Shoelaces - Personal Boots | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 |
| Heavy Duty Work Boots, men's and women's sizes | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Shower Shoes | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| Deck Shoes (as necessary or required) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| Safety Shoes (as necessary or required) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| ***Male/Female (orange unless indicated)*** | | | | | | | | | | | | | | |
| Athletic Shorts | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 |
| T-shirts | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 0 | 7 |
| Long Sleeve T-shirts | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 0 | 0 |
| Shirt (outer) pullover | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 0 | 0 | 0 | 0 | 0 |
| Pants | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 3 | 3 | 3 | 0 | 3 |
| Jumpsuits | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 3 | 3 | 3 | 3 |
| Headwear (baseball cap) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Jacket (per institutional policy) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 |
| Socks (white) Pair | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 |
| Sweatshirts | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 | 1 |
| Sweatpants | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 | 1 |
| Thermal underwear (as necessary or required) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 |
| Stocking cap (as necessary or required) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Straw Hat (as necessary or required) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Panties (white), can be unisex | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 |
| Bra (white) | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| Pajamas set (available color) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Robe (available color) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 |

| **INMATE STORE/PROPERTY LIST - DO 909 ATTACHMENT A**<br>**EFFECTIVE DATE: JULY 24, 2017** | **Minimum By Phase** | | | **Medium By Phase** | | | **Close By Phase** | | | **Maximum By Phase** | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ITEM**<br>**X – Allowed 0 – Not Allowed SF – Sugar-Free Only** | **I $60** | **II $80** | **III $100** | **I $60** | **II $80** | **III $100** | **I $60** | **II $80** | **III $100** | **I $60** | **II $80** | **III $100** | **Baker** | **CDU DET** |
| Sports Bra (white); can be unisex | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| Belt (as needed) | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| Boxer shorts | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 |
| **NON STORE ITEMS** | | | | | | | | | | | | | | |
| Contact Lenses | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Wedding Ring – Value not to exceed $150. Male - Wedding band only. Female - Engagement ring and wedding band counts as one ring. | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Eyeglasses - All plastic frame | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Eyeglasses Case – soft case | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| Personal Photos | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 30 |
| Books - Personal; Resource Center/library/state-issue do not count against limit; Max Custody and CDU soft cover only | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 |
| Newspaper - Not more than 7 days out of date | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Magazines/Periodicals/Catalogs | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 |
| Cassette Tapes - Mail Order Only; clear view plastic container or a cardboard container; must be factory sealed in original wrapping or packaging. | 20 | 20 | 20 | 20 | 20 | 20 | 15 | 15 | 15 | 10 | 10 | 10 | 10 | 5 |
| Compact Discs - Mail Order Only; clear view plastic container or a cardboard container; must be factory sealed in original wrapping or packaging. | 20 | 20 | 20 | 20 | 20 | 20 | 15 | 15 | 15 | 0 | 0 | 0 | 0 | 0 |
| NOTE: The possession limit for cassette tapes and compact discs is a combined limit; the total amount of tapes and/or CDs may not exceed 20; An inmate may not have 20/15/10/5 of each. | | | | | | | | | | | | | | |
| Substance Abuse Coordinator Approved - Alcoholics Anonymous Medallion | X | X | X | X | X | X | X | X | X | X | X | X | X | X |
| Typewriter Paper - Special order, for inmate possessing a typewriter | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 |
| **LINENS** | | | | | | | | | | | | | | |
| Washcloths | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 0 | 3 |
| Towels | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 3 |
| Blankets (per institutional policy) | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 1 |
| Pillow case | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |
| Bed sheet | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 2 |
| Laundry/clothing bag | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 1 |

**ATTACHMENT B**
**DEPARTMENT ORDER 909**

**EXAMPLE OF A PETITION**

ARIZONA SUPERIOR COURT

MARICOPA COUNTY

In the Matter of the Disposal ) )
) No.
of Contraband Narcotics, Drugs ) )
) PETITION
and Paraphernalia ) )
)
______________________) )

The State of Arizona, through the Department of Corrections, alleges:

I

This proceeding is instituted under the authority of A.R.S. 12-943 for the purpose of obtaining an order from the Court for the disposal of contraband drugs and paraphernalia.

II

The items for which the petitioner is requesting an order for disposal are located in County, Arizona.

III

During the ordinary course of the exercise of its authority, petitioner has lawfully come into possession of contraband narcotics, drugs, and paraphernalia either found or seized as evidence in connection with investigations of violations of State statutes. The description of this property is specifically set forth in the attachment designated as Exhibit "A" and incorporated by reference.

IV

Final deposition has been made of all causes for which these items were obtained. They are no longer of any evidentiary value and as contraband may not lawfully be returned to any person.

WHEREFORE, the petitioner respectfully requests the Court to issue an order for the Arizona Department of Corrections to destroy the contraband narcotics, drugs and paraphernalia by currently established procedures.

RESPECTFULLY SUBMITTED this ____ day of ___________, 20_.

OFFICE OF THE ARIZONA ATTORNEY GENERAL

BY:
(Signature)

**ATTACHMENT C**
**DEPARTMENT ORDER 909**

**EXAMPLE OF AN AFFIDAVIT TO REQUEST FORFEITURE**

STATE OF ARIZONA

County of Maricopa )
) ss.
)

_______________________, swears:

I am ________________________________________________________________________for the Department of Corrections. I have read the foregoing petition and know its contents, which are true to my own personal knowledge.

The items listed in Exhibit "A" consist of contraband narcotics, drugs and paraphernalia and may not lawfully be returned to any person, and therefore should be destroyed.

(Employee Signature)

SUBSCRIBED AND SWORN TO BEFORE ME this _____ day of ________, 20___.

_______________________, Notary Public

My commission expires _________, 20___.

Assistant Attorney General

**ATTACHMENT D**
**DEPARTMENT ORDER 909**

**EXAMPLE OF A COURT ORDER**

ARIZONA SUPERIOR COURT

MARICOPA COUNTY

In the Matter of the Disposal )
)
of Contraband Narcotics, Drugs ) ) No.
)
and Paraphernalia ) ) ORDER
)
________________________)

Pursuant to the foregoing Petition and good cause appearing;

IT IS ORDERED that the Arizona Department of Corrections is authorized to dispose of the property/contraband listed in the Petition at a date, time and place to be determined by the Arizona Department of Corrections, all in accordance with A.R.S. 12-941 et. seq.

DONE IN OPEN COURT this __________ day of ________, 20__.

JUDGE OF THE SUPERIOR COURT

**ATTACHMENT E**
**DEPARTMENT ORDER 909**

**EXAMPLE OF A DISPOSAL AFFIDAVIT**

______________________, being duly sworn, upon oath deposes and says:

That he/she is a ____________________ for the State of Arizona, Department of Corrections, and that all property enumerated in Superior Court Order # ___________________________________, signed by Judge ______________, was disposed of on the _____________ day of ____________, 20__.

(Employee Signature)

Subscribed and sworn to me before this ____ day of ________ A.D., 20__.

_____________________________, Notary Public

My commission expires _______________, 20_.

**ATTACHMENT F**
**DEPARTMENT ORDER 909**

**EXAMPLE OF A LETTER OF TRANSMITTAL TO COMPLY WITH A COURT ORDER**

_______, 20

Clerk of the Superior Court
101 West Jefferson Street
Phoenix, Arizona 85003

Dear Madame or Sir:

In accordance with current statutes and Court Order #______________, the following items are submitted to your office for appropriate disposition:

1. ______________________________.
2. ______________________________.
3. ______________________________.
4. ______________________________.
5. ______________________________.

Sincerely,

(Employee Signature)
Contraband Control Officer
Arizona State Prison Complex,
______________, Arizona 8

Received _______________, 20_.

Name: _______________________ Title:
(Court Employee)

**INMATE PROPERTY SCHEDULE OF DEPRECIATION/REIMBURSEMENT**

| ITEM | REASONABLE AVERAGE USEFUL LIFE IN YEARS | DEPRECIATION PER YEAR TO NEAREST WHOLE % |
|---|---|---|
| **Appliances, Major** | | |
| Fan | 5 | 10% |
| Walkman CD Player | 5 | 10% |
| Walkman-type Radio/Tape Player | 5 | 10% |
| Television | 10 | 10% |
| **Appliances, Minor** | | |
| Alarm Clock (manual) | 5 | 10% |
| Calculator (solar) | 5 | 16% |
| Electric Shaver | 5 | 20% |
| **Clothing** | | |
| Shoes (athletic, tennis) | 2 | 20% |
| **Jewelry** | | |
| Ring | 25 | 20% |
| Watch | 3 | |
| **Miscellaneous** | | |
| Desk Lamp | 5 | 10% |
| Game | 5 | 10% |
| Hard/Softbound Book | 15 | 4% |
| Brush | 10 | 5% |
| Dentures | 10 | 10% |
| Eye Glasses or Contact Lenses | 5 | 10% |
| Hearing Aid | 10 | 10% |

## REIMBURSEMENT

Hardback Book ....................60% Replacement Cost
Paperback Book ....................50% Replacement Cost
Beverage.................... Replacement Cost
Canned Food .................... Replacement Cost
Ornament/Decoration....................75% Replacement Cost
Photograph Album or Pictures .................... Materials Only
Scrapbook.................... Materials Only
Tapes....................75% Replacement Cost
Cosmetics/Toiletries ....................90% Replacement Cost
Stationery ....................90% Replacement Cost

## EXAMPLE

Television:

Life Span: 10 years
Purchase Price: $75.00
Depreciation: 10% per year for 5 years

1st year @ $75.00 - $ 7.50 = $67.50
2nd year @ $75.00 - $15.00 = $60.00
3rd year @ $75.00 - $22.50 = $52.50
4th year @ $75.00 - $30.00 = $45.00
5th year @ $75.00 - $37.50 = $37.50

Round to nearest dollar.
examples: $37.50 is $38.00, and $37.49 is $37.00

# Exhibit 2

ASPC-PERRYVILLE
TEMPERTURE LOG -
JULY 19, 2017

San Pedro Unit
Temperature Check
2300 Hrs

| HU 8 | | |
|---|---|---|
| | | Temp |
| A Pod | Upper Run | 85 |
| | | |
| | Lower Run | 87 |
| | | |
| B Pod | Upper Run | 85 |
| | | |
| | Lower Run | 86 |
| | | |
| C Pod | Upper Run | 88 |
| | | |
| | Lower Run | 89 |
| | | |
| D Pod | Upper Run | 90 |
| | | |
| | Lower Run | 89 |
| | | |

| HU 10 | | |
|---|---|---|
| | | Temp |
| A Pod | Upper Run | 85 |
| | | |
| | Lower Run | 86 |
| | | |
| B Pod | Upper Run | 84 |
| | | |
| | Lower Run | 85 |
| | | |
| C Pod | Upper Run | 88 |
| | | |
| | Lower Run | 86 |
| | | |
| D Pod | Upper Run | 87 |
| | | |
| | Lower Run | 86 |
| | | |

If the temperature reading is 96º or above, an email must be sent to the Unit and Complex Admin Staff.

# Exhibit 3



| ARIZONA DEPARTMENT OF CORRECTIONS | CHAPTER: 700<br>OPERATIONAL SECURITY | OPR:<br>OPS |
|---|---|---|
| DEPARTMENT ORDER MANUAL | DEPARTMENT ORDER: 709<br>***SUBSTANCE ABUSE, DETECTION AND CONTROL*** | SUPERSEDES:<br>DO 709, 10/15/04 |
| | | EFFECTIVE DATE:<br>APRIL 7, 2009 |
| | | REPLACEMENT PAGE EFFECTIVE DATE:<br>JANUARY 21, 2012 |

# TABLE OF CONTENTS


PURPOSE

APPLICABILITY

PROCEDURES PAGE

709.01 ZERO TOLERANCE FOR SUBSTANCE ABUSE ........ 1

709.02 INMATE URINE COLLECTION ........ 2

709.03 INMATE URINE TESTING GUIDELINES ........ 7

IMPLEMENTATION ........ 8

DEFINITIONS ........ 8

AUTHORITY ........ 9

# PURPOSE

The Department's position is **ZERO TOLERANCE** with respect to the possession or use of alcohol, narcotics or illegal drugs by inmates/offenders under its supervision, who face consequences for such violations. Enforcement shall entail varied activities and strategies, including the use of Narcotic Detection Dogs and a system of urine collection and testing. The Department provides opportunities for substance abuse education and treatment, allowing inmates to address drug and alcohol addictions.

# APPLICABILITY

This Department Order addresses the security and enforcement aspects of substance abuse and control. For information relating to the Department's treatment programs, see Department Order #917, Substance Abuse Services.

# PROCEDURES

**709.01** **ZERO TOLERANCE FOR SUBSTANCE ABUSE** - The Deputy Director, the Division Director for Offender Operations, the Regional Operations Directors, the Community Corrections Operations Director, Wardens and Deputy Wardens shall ensure:

1.1 Staff in all institutions and, to the extent possible, staff supervising offenders in the community, shall employ substance abuse prevention and interdiction tactics.

1.2 Designated staff administer discipline, in accordance with Department Order #803, Inmate Discipline System, to inmates who violate rules relating to illegal alcohol and substance abuse. Positive drug tests shall increase inmates' risk/need scores for addiction treatment and affect their ranking on the Priority Ranking Report for treatment.

1.3 Inmates housed in institutions and correctional release centers shall be charged with the appropriate disciplinary rule violation when:

1.3.1 They produce a urine specimen which tests positive for illegal drugs or alcohol.

1.3.2 They are found in possession of illegal drugs, drugs not legally prescribed, or alcohol.

1.3.3 They are involved in smuggling illegal substances or alcohol.

1.3.4 They willfully disobey a direct order from staff by refusing or failing to produce a urine specimen.

1.4 Disciplinary sanctions are imposed for all violations resulting in guilty findings. Sanctions imposed may include non-contact visitation.

1.5 Non-contact visitation is imposed or visitation is suspended, in accordance with Department Order #911, Inmate Visitation, for those inmates:

1.5.1 That test positive for illegal drugs or alcohol, regardless of the status of related disciplinary action.

1.5.2 That is involved in documented smuggling of illegal drugs or alcohol.

1.6 An inmate is referred to the Institutional Classification Committee for an appropriate increase in his or her correctional classification profile scores, in accordance with Department Order #801, Inmate Classification, following a conviction for a major disciplinary violation related to illegal drug or alcohol possession or use.

1.7 Staff responsible for the supervision of offenders in the community administer sanctions in accordance with Department Order #1003, Community Supervision, when an offender:

1.7.1 Tests positive for illegal drugs or alcohol (if it constitutes a violation of release conditions).

1.7.2 Is found in possession of illegal drugs, drugs not legally prescribed, or alcohol (if it constitutes a violation of release conditions).

1.7.3 Disobeys a direct order from staff by refusing or failing to produce a urine specimen.

1.8 Evidence obtained against suspects who take prohibited articles into a prison or correctional release center, or who promote prison contraband, are referred to the appropriate prosecuting authority for consideration for formal charges.

**709.02 INMATE URINE COLLECTION** - Staff shall collect inmate urine specimens to be tested for evidence of illegal drug or alcohol use.

1.1 Collection Frequency

1.1.1 The total number of institutional urinalysis tests performed each month shall equal at least ten percent of a unit's population. In order to use resources effectively, however, more emphasis shall be placed on Targeted Testing than on Random Testing.

1.1.1.1 Targeted Testing - Inmates designated for Targeted Testing shall be subject to frequent urinalysis based on their own exhibited behavior and status as a high-risk alcohol or drug user. In addition to frequent urinalysis, these inmates may also be placed on non-contact visitation status for an indefinite period at the discretion of the Deputy Warden or Administrator to prevent drug smuggling activity during visitation. Inmates in secure facilities who meet any of the following criteria shall be considered at high risk for abuse of alcohol and illegal drugs.

1.1.1.1.1 Inmates convicted of illegal drug use or smuggling-related disciplinary violations.

1.1.1.1.2 Inmates convicted of alcohol-related disciplinary violations.

1.1.1.1.3 Inmates suspected of being involved in any documented or undocumented smuggling activity in any location within the institution.

1.1.1.1.4 Inmates who exhibit any abnormal behavior that may be attributed to drug or alcohol abuse.

1.1.1.1.5 Inmates who have alcohol/drug classification scores of four or five as outlined in the Department Order #801, Inmate Classification.

1.1.1.1.6 Inmates are assigned to off-site work locations external of institution grounds.

1.1.1.1.7 Inmates who participate in drug and alcohol treatment programs.

1.1.1.2 Random Testing - Inmates not involved in Targeted Testing shall be tested at random at the discretion of the Deputy Warden or Administrator.

1.1.1.2.1 Random specimens shall be selected using a computer program that generates random numbers.

1.1.1.2.2 Deputy Wardens and Administrators shall assign a sequential numerical position representing every inmate in the unit, such as a mailbox or bed number, as the basis for random testing.

1.1.1.2.3 Specimens for random testing shall be collected on different days of the week and different shifts, to avoid setting a predictable pattern.

1.1.2 A Rapid-Tox cup conducts six separate panels, screening for marijuana, opiates, cocaine, PCP, amphetamines and methamphetamines. When urine samples are collected for reasonable suspicion of use of a specific drug, for example, staff detected odor of marijuana in the inmate's cell or living area, or a narcotic detection dog alerts to evidence of a specific drug in an inmate's possession, a notation shall be made by the collecting officer on the Request for Inmate Substance Screen, Form 709-1.

1.1.3 Community Corrections staff who are responsible for community supervision shall:

1.1.3.1 Conduct offender urinalysis testing in accordance with the Community Supervision Technical Manual.

1.1.3.2 Complete documentation according to the requirements of the Community Supervision Technical Manual, to include noting the type of test (targeted, random, scheduled or other appropriate language).

1.2 General Urine Collection Guidelines

1.2.1 Staff collecting urine specimens shall be of the same gender as the inmate/offender providing the specimen.

1.2.2 Institutions shall purchase and maintain Rapid-Tox specimen containers with screw on lids, and ensure that they are kept in a clean secure environment to eliminate the possibility of contamination. Daily inventory shall be conducted to ensure an accurate supply is maintained.

1.2.3 Units will be issued a sufficient supply of containers and lids to complete the mandatory 10% testing of their unit population, plus established target population. All cups containing samples will be accompanied by a completed Request for Substance Screen form and Urinalysis Chain of Evidence Log to maintain 100% accountability.

1.2.4 Parole Officers shall maintain a supply of specimen containers as required by the contract for urinalysis monitoring.

1.2.5 Certified Correctional Officers, or other authorized personnel accepting specimens being delivered for urinalysis may refuse to accept leaking specimens, specimens that are not correctly labeled, not accompanied by the proper paperwork, or not delivered according to procedures set forth in this Department Order. Refused specimens shall be returned to the requesting unit, along with the reason for the refusal. Staff who returns samples shall notify the requesting unit's Deputy Warden or designee of the rationale behind refusal to accept the samples in question.

1.2.6 If there is a question as to the legitimacy of a urine specimen or a possibility of contamination, a second urine specimen may be requested and collected.

1.2.7 If a staff member believes an inmate/offender has recently used marijuana, at least six hours (ample time for the substance to metabolize in the body) shall be allowed to pass before a specimen is collected.

1.2.8 In situations involving offenders, Community Corrections Officers may follow the procedures outlined in the Community Supervision Technical Manual. A urine specimen need not be taken in those cases where the offender has admitted use or is obviously under the influence of alcohol.

1.2.9 Urine specimens collected by Community Corrections Officers or by a contractor designated to conduct urinalysis shall be handled according to guidelines established by the contractor.

1.2.10 The Chain of Custody shall be preserved and documented for:

1.2.10.1 Inmates - on the Chain of Custody of Evidence section of the Request for Inmate Substance Screen (reverse side of the form).

1.2.10.2 Offenders - on forms designated by the contractor responsible for urinalysis.

1.3 Specimen Collection Procedure

1.3.1 When requested to collect a urine specimen, the staff member shall:

1.3.1.1 Obtain and complete the top portion of a Request for Inmate Substance Screen or a form approved by the contractor responsible for offender urinalysis.

1.3.1.2 Obtain a non-contaminated urine container, an indelible ink marker, clear tape, and latex gloves.

1.3.1.3 Legibly print the required information on the label, waiting to attach the label.

1.3.1.4 Accompany the inmate/offender to the collection site and conduct a strip search.

1.3.1.4.1 If the search or demonstrated behavior leads the staff member to believe the inmate/offender may try to contaminate the specimen, he or she may be prohibited from redressing until the specimen is provided. In the interest of general modesty, the inmate/offender shall be provided a garment, e. g., a hospital gown, that does not obstruct the staff member's clear view.

1.3.1.4.2 If necessary, the inmate/offender may be directed to roll up long shirt sleeves for inspection of the arms.

1.3.1.5 Examine the inmate's/offender's identification card and verify the identity of the inmate providing the sample.

1.3.1.6 Inspect the inmate's/offender's hands, especially the fingernails, to ensure that there are no foreign substance(s) embedded there.

1.3.1.7 Require the inmate/offender to wash his or her hands with soap and water in the presence of the staff member, and direct the inmate/offender to wash other parts of the body as deemed necessary by the staff member for hygienic reasons. The inmate/offender may be directed to put on gloves when providing a urine specimen.

1.3.1.8 Visually observe the urine leaving the inmate's/offender's urethra and entering the container.

1.3.1.8.1 Male inmates/offenders shall be instructed to position themselves at a urinal or commode in a manner that allows the staff member unobstructed observation of the urine voiding process.

1.3.1.8.2 Female inmates/offenders may be asked to squat and cough prior to providing the specimen, to preclude the use of vaginal set-ups containing clean urine or adulterants, and shall be instructed to straddle or sit towards the back of the commode seat facing forward, holding the specimen cup with one hand. The other hand may be placed against the wall for support. The staff member shall stoop in front of the commode and directly observe the voiding of the urine from the urethra.

1.3.1.9 Put on protective gloves before handling a urine specimen container.

1.3.1.10 Ensure that the specimen cup contains enough urine for testing (about one to two ounces).

1.3.1.11 Direct the inmate/offender to screw or lock the lid securely onto the container when the urine voiding process is complete.

1.3.1.12 Give the inmate/offender two five-inch strips of clear tape and instruct the inmate/offender to place the tape across the lid and down the sides of the container in a criss-cross fashion. No tape shall be applied if using security locking containers, or manufacturer provided/recommended sealing mechanisms.

1.3.1.13 Enter the inmate's name and ADC number on the container label and collection time on the Request for Inmate Substance Screen or approved collection form, and apply the label to the container's side.

1.3.1.14 Instruct the inmate/offender to sign where indicated on the Request for Inmate Substance Screen or approved collection form provided by the contractor.

1.3.1.15 Sign the request, enter his or her badge number, date and time, and write any necessary comments about the collection process or the specimen.

1.3.1.16 Enter the inmate's/offender's name on the first line of the Chain of Custody of Evidence, on the reverse side of the Request for Inmate Substance Screen or approved collection form provided by the contractor responsible for urinalysis.

1.3.1.17 Enter the date and time, which shall match the date and time on the front of the page and on the specimen.

1.3.1.18 Enter his/her own name below the inmate's/offender's to acknowledge receipt of the specimen from the inmate/offender.

1.3.1.19 Targeted samples will be noted on the Urinalysis Chain of Evidence Log, Form 709-9, by placing a "T" on the right side of the results box. Staff shall wait a minimum of five minutes before reading the strip on the cup for positive or negative results. If results are:

1.3.1.19.1 Negative - The negative box on the request for substance screen shall be checked. Staff shall ensure disposal of urine in a toilet and container shall be discarded in a trash bag to be disposed of by staff in a refuse container located outside the secure confines of the unit.

1.3.1.19.2 Positive - The positive box on the request for substance screen shall be checked. Staff shall ensure that all positive specimens are packaged along with accompanying completed paperwork and arrangements made with courier for pick-up and delivery to the designated lab to complete confirmation testing.

1.3.2 When urinalysis/blood tests are conducted at a contract or hospital site for an inmate who is suspected of substance abuse, those test results shall be forwarded to the applicable institution to be used as administrative evidence in the inmate disciplinary process.

1.3.3 The Community Supervision Technical Manual may establish procedures for obtaining a urine specimen that reflect physical location and/or physical plant issues or other situations unique to community supervision involving the taking of a specimen, e.g., size of the bathroom or availability of hand washing supplies.

1.4 Inmate/Offender Inability or Refusal to Produce a Specimen

1.4.1 Any inmate or offender who refuses to provide a urine specimen shall be subject to disciplinary action.

1.4.1.1 An inmate's refusal to give a specimen shall be considered refusal to obey a direct order, but shall not be considered an admission of guilt.

1.4.1.2 A refusal by an offender shall be considered a violation of conditions of supervision and may be considered an admission of guilt.

1.4.2 Inmates who claim to be unable to produce a specimen may be given no more than an eight ounce glass of water and shall remain under staff observation for two hours in an area where they cannot drink water or other liquids to dilute the urine.

1.4.2.1 If, at the end of two hours, the inmate still claims the inability to urinate, the inmate shall be charged with refusing to submit to urinalysis testing as outlined in Department Order #803, Inmate Discipline System.

1.4.3 If an offender claims to be unable to produce a specimen, Parole Officers shall follow procedures established by the Community Corrections Technical Manual. These procedures may decrease time limits, based on the staff member's judgment, but shall not exceed the two-hour time limit.

1.4.3.1 Offenders shall not be charged with disobeying a direct order, but shall be charged with a violation of conditions of supervision.

1.4.4 Certain psychotropic medications interfere with an individual's ability to urinate. If an inmate or offender has indicated that he or she is taking a medication that the staff member believes may be a psychotropic, the procedure outlined above shall be followed. At the end of the two-hour period, the inmate shall be instructed to produce whatever urine he or she can, even if it is less than the required one to two ounces. If the inmate is still unable to produce any urine, the staff member shall document the incident on the Request for Inmate Substance Screen.

1.4.4.1 Staff pursuing disciplinary action for the inmate's failure to produce a specimen shall verify that the inmate was on psychotropic medication as a potential mitigating circumstance.

## 709.03 INMATE URINE TESTING GUIDELINES

1.1 Urine tests shall be performed according to protocol established by the vendor providing the Rapid-Tox cups.

1.2 Urine tests shall be performed only by staff who has received training provided by the vendor, or completed a review of the vendor provided operational manual.

1.3 Test results shall be interpreted using only the established guidelines of the Rapid-Tox cup, as either positive or negative.

1.4 Specimens that test positive shall be logged, packaged, and sent by the vendor to the approved testing laboratory for confirmation. Confirmed positive test results may serve as the sole basis for inmate discipline, revocation, rescission, or classification action.

1.5 Inmate urine test results shall be considered confidential and shall be made known only to authorized personnel until disposition of related action is finalized.

# IMPLEMENTATION

Within 90 days of the effective date of this Department Order, the Division Director for Offender Operations shall, in cooperation with the Community Corrections Operations Director:

- Update the Inmate Urinalysis Technical Manual. The Technical Manual shall contain standard procedures for collecting and testing urine specimens at the institution.

- Update the Service Dog Technical Manual, to include procedures for the acquisition, training, upkeep and use of narcotic detection dogs and for selecting and training dog handlers.

Within 90 days of the effective date of this Department Order, the Community Corrections Operations Director shall ensure that:

- Testing and collection procedures for Community Corrections are established in the Community Supervision Technical Manual, to include procedures that outline scheduling for urine specimen collection from offenders on any type of Community Supervision. The procedures shall also address urine testing required by the Board of Executive Clemency.

- Testing and collection procedures are included in the appropriate contract publications.

Within 90 days of the effective date of this Department Order, Wardens, Deputy Wardens and Administrators shall develop Post Order #043, Urinalysis Security Officer

# DEFINITIONS

**CONFIRMATION** - The second test of a specimen that tested positive, verifying the accuracy of the first result.

**INMATE** - A person who is convicted and committed to the Department by any court of record or who is confined by the Department under the provisions of any agreement or compact to which the State or the Department is a party, and is currently confined in an institution.

**INTERDICTION** - Practices used to control the introduction of illegal drugs into Department facilities, to include, but not limited to, the Department Intelligence System and criminal prosecution for introducing or promoting illegal drugs into Department facilities.

**NEGATIVE RESULT** - Result indicates that either no trace of metabolite is present in the urine, or a level is present that is less than the established threshold value.

**OFFENDER** - Any person on any release status that is still under the supervision of the Department.

**POSITIVE RESULT** - Result indicates a level of metabolites in the urine equal to or above the established threshold value.

**PREVENTION** - Practices used to detect the presence of illegal drugs and/or substance abuse in all Department facilities, to include, but not limited to:

- Routine and random searches of Department facilities, Department equipment, inmates, inmate property and mail, visitors, visitors' vehicles, employees and employees' vehicles, in accordance with Department Order #708, Searches.
- Monitoring inmate telephone calls, inmate medication, medical equipment and supplies.
- Monitoring inmates by Department-approved procedures, including urine testing.
- Inmate orientation to ZERO TOLERANCE FOR INMATE/OFFENDER SUBSTANCE ABUSE during the initial admission process.
- Visitor orientation to ZERO TOLERANCE FOR INMATE/OFFENDER SUBSTANCE ABUSE during the visitor application process.
- Inmate alcohol/substance abuse education in all Department facilities.
- Inmate alcohol/substance abuse treatment in designated Department facilities.
- Employee orientation and training regarding the presence and use of drugs in the workplace.
- Placement of warning signs at the entrances to all Department facilities.

**RANDOM TESTING** - Selection of individual inmates without definite pattern or selection of individual offenders according to established guidelines for test scheduling.

**TARGETED TESTING** - A system of targeting individual inmates for testing based on behaviors or other indicators that suggest the inmates may be involved in illegal drug or alcohol use.

**THRESHOLD** - A cutoff value that differentiates between positive and negative results.

{Original Signature on File}

Charles L. Ryan
Director

**FORMS LIST**
709-1, Request For Inmate Substance Screen
709-9, Urinalysis Chain of Evidence Log

# AUTHORITY

A.R.S. 31-230, Taking Prohibited Articles into Prison.

A.R.S. 13-2505, Promoting Prison Contraband.