Exhibit Index

Exhibit A      October 4, 2017 Letter from D. Fathi to T. Bojanowski Regarding
               Spot-Check of July CGARs, and exhibits contained therein
               (REDACTED)

Exhibit B      September 27, 2017 Letter from D. Fathi to L. Rand Regarding
               Deficiencies in Document Production, and exhibits contained therein

Exhibit C      October 2, 2017 Letter from D. Fathi to L. Rand Regarding
               Declarations Provided to Plaintiffs, and exhibits contained therein

Exhibit D      October 4, 2017 Letter from D. Fathi to T. Bojanowski Regarding
               Production of Documents Ordered by the Court

# Exhibit A
# (Redacted)

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT



October 4, 2017

**BY ELECTRONIC MAIL ONLY**

Timothy J. Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com

   *Re: Parsons v. Ryan*

Dear Counsel:

  We write to address several issues regarding the July 2017 CGAR reports and Defendants' monitoring methodology.

**Using Partial Credit to Calculate Compliance**

  Defendants are using a partial credit methodology for multiple performance measures, which the Court ruled invalid on December 14, 2016. Specifically, Defendants are monitoring PMs 1, 2, and 4 using a partial credit calculation.[1]

**PM 1** (Each ASPC will maintain, at a minimum, one RN onsite 24/7, 7 days/week)

- Perryville– "No RN on night shift on 7/7, 7/20, or 7/21.  LPNs were present on those shifts" – monitor scored it as 28/31 or 90.32% compliance.  (ADCM1033094)
- Tucson – "No night shift RN noted on 7/28 or 7/29" – monitor scored it as 29/31 or 93.55% compliance.  (ADCM1033204)

**PM 2** (Each ASPC will maintain, at a minimum, one Medical Provider (not to include a dentist) onsite during regular business hour and on call at all other times)

- Safford – "No provider onsite on 7/3, 7/17, 7/24, or 7/31" – monitor scored it as 27/31 or 87.10% compliance.  (ADCM1033162)

---

[1] Defendants moved to terminate monitoring of PM 1 and PM 2 at all ten Arizona State Prison Complexes, and PM 4 at Lewis, Perryville, and Tucson. Doc. 2251 at 3-4.

AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202 393 4930
F/202 393 4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

- Winslow – "No Provider onsite on 7/5, 7/6, 7/7, 7/12, 7/13, 7/18, 7/19, 7/20, 7/21, 7/25, 7/26, 7/27" – monitor scored it as 18/31 or 58.06% compliance.  (ADCM1033239)

**PM 4** (Infirmary staffing will be maintained with a minimum staffing level of 2 RNs on duty in the infirmary at all times at Tucson & Florence infirmaries and a minimum of one RN on duty in the infirmary at all times at Perryville and Lewis infirmaries)

- Florence –there "was not 24/7 coverage by RNs on 7/25/17 and 7/27/17 night shifts" – monitor scored it as 29/31 or 93.55% compliance. (ADCM1032990)
- Tucson – "No second RN noted on 7/15/17 night shift" – monitor scored it as 30/31 or 96.77% compliance.  (ADCM1033204)[2]

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

This is especially problematic given the monitor who did these reviews at all ten institutions is Ms. Campbell, who testified in March 2017 that she was aware of the partial credit order:

> Q. … Are you aware of the Court's order about partial credit for performance measures?
> A. Yes.
> Q. And do you remember when you were told about that order?
> A. I believe it was last month for the -- I believe it was the infirmary questions, if I'm not mistaken.  But I'm not 100 percent positive on that.
> Q. Are you aware of other performance measures where you or the monitors are using a partial credit method of calculating compliance?
> A. *I do now on 23 and 24*.
> [. . .]
> Q. For what month have you started doing that older method of it's non-compliant if any days are missing?
> A. Starting with this month's audit for last month's data.
> Q. So the February 2017 CGARs would reflect --
> A. Yes.
> Q. -- a method that complies with the Court?

---

[2] It is unclear how to reconcile the findings on PM 1 and PM 4 for Tucson, where according to PM 1 there was no RN *at all* on site on 7/28 and 7/29, but on PM 4, 7/15 is listed as the only date without a second RN on duty.

A. Yes.
[. . .]
Q. And have you changed your approach for this coming month review?
A. Yes.
Q. *Are there other performance measures that you use where you have been using partial credit that you can think of?*
A. *No*.

[3/8/17 Tr. at 58:2-12; 59:4-10; 59:16-21 (emphasis added)][3]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

**Please let us know by close of business on Friday, October 6 whether you will agree to abandon the use of "partial credit" methodology for PMs 1, 2, and 4 for all future CGARs in accordance with the Court's order.**

**PM 25** (A first responder trained in Basic Life Support responds and adequately provides care within three minutes of an emergency.)

The parties agreed upon the language for the methodology on July 28, 2017, including broadening the definition of basic life support or how to measure timeliness. Plaintiffs do not have access to the source documents (Serious Incident Reports) and ER report, to confirm if all applicable incidents were included.

- Douglas – two incidents, no ADC number listed, but rather listed the SIR log numbers. (ADCM1032909)
- Eyman – no applicable incidents. (ADCM1032947)
- Florence – three incidents, ADC numbers are listed. (ADCM103300)
- Lewis – one incident, ADC number is listed. (ADCM1033053)
- Perryville – three incidents, ADC numbers are listed. (ADCM1033105)
- Phoenix – one incident, no ADC number listed. (ADCM1033145)
- Safford – no applicable incidents. (ADCM1033170)
- Tucson – one incident, ADC number is listed. (ADCM1033216)
- Winslow – no applicable incidents. (ADCM1033248)
- Yuma – no applicable incidents. (ADCM1033284)

---

[3] Ms. Campbell used the "partial credit" method on PMs 1, 2, and 4 one week prior to testifying and three weeks after testifying. See, e.g. ADCM841996 (Florence January 2017 CGAR, entered 2/28/17); ADCM865777 (Eyman February 2017, entered 3/31/17)

**Please let us know by close of business on Friday, October 6, whether Defendants will agree to provide Plaintiffs the underlying source documents for PM 25 in future monthly document productions.** *See* **Stipulation ¶ 29 (Plaintiffs' counsel shall have reasonable access to documents necessary to properly evaluate whether Defendants are complying with the performance measures).**

**PM 60** (All female inmates ages 21 to 65 will be offered a Pap smear at the inmate's initial intake physical examination, and every 36 months thereafter unless more frequent screening is clinically recommended.)

The Perryville monitor reviewed 10 files for the other intake PMs: PMs 33, 34, and 62, but for PM 60 inexplicably has "not applicable" listed. (ADCM1033125). If there were at least ten files to review for the other intake measures, it is unclear why they were not also reviewed for PM 60.

**Please let us know by close of business Friday, October 6 if the ten intake files reviewed for PMs 33, 34, and 62 will also be reviewed for compliance with PM 60.**

**Performance Measures that Require a Provider "Act Upon" a Report**

Performance Measure 44 requires that "Inmates returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital shall have the hospital's treatment recommendations reviewed and acted upon by a medical provider within 24 hours." On December 14, 2016, the Court ruled that performance measure 44 "shall only permit compliance if the inmate received the prescribed treatment, or if there is a documented reason explaining why the prescribed treatment was rejected." Doc. 1831 at 2.[4]

_____

[4] PM 44 is not the only measure that includes both a requirement that a report be reviewed and acted upon in a certain time frame. PM 46 requires, "A Medical Provider will review the diagnostic report, including pathology reports, and act upon reports with abnormal values within five calendar days of receiving the report at the prison" and PM 52 requires "Specialty consultation reports will be reviewed and acted on by a Provider within seven calendar days of receiving the report." We did not spot-check the monitoring of these two performance measures at other institutions, but in light of our spot-check of PM 44 at three institutions, we are concerned that similar methodological failings may be occurring.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

4

We conducted a spot-check of the July 2017 CGARs for Lewis, Perryville, and Safford for PM 44 and found the following records were erroneously counted as compliant when there is no documentation that the provider took any action upon reviewing the hospital recommendations, or when there is no documentation that the person returned from offsite in the month of July.  We emphasize that we did not check all of the records marked as compliant at any other institutions:

**Lewis**:

The monitor listed the institution as 100% compliant with 16 files reviewed.  (ADCM1033058).  However, there was a record that appeared to be noncompliant, and 3 files that appear to be inapplicable.  Therefore the correct calculation would be 12/13 compliant, or 92%.

███   He returned on 7/26/17, and the report was reviewed by the provider on 7/27/17, but no action was documented by the provider.

███:  It does not appear that he returned from an off-site hospitalization or emergency room visit during the month of July.

███   He returned from off-site appointments four times in the month of July, but none of them were for hospitalizations or emergency room transports.  7/3/17 – return from "chemo dry run"; 7/18/17 – return from ophthalmology; 7/25/17 – return from chemotherapy; 7/27/17 – return from CT scan.

███:  He returned from off-site appointments three times in July, but none of them were hospitalizations or emergency room transports.  7/1/17 – return from radiation treatment; 7/5/17 – return from radiation treatment; 7/16 – return from endocrinology consult.

**Perryville**:

The monitor listed the institution as 93.33% compliant with 14 out of 15 records compliant.  (ADCM1033111).  However there were 5 records marked as compliant that appeared noncompliant, and one file listed that was either incorrect or not applicable, because it lists a male prisoner.  Accordingly, the compliance rate should have been 8 out of 14, or 57%.

███   She returned from major surgery at the hospital the evening of 7/7/17. PA Rodriguez entered an "infirmary admission" for her upon her return, but there is no indication that he saw her, but rather it appears to be a pre-emptive

5

entry authorizing admission, as he wrote she was "being released back to Perryville long after I have left for the day."  A nursing note entered as "verbal/telephone orders" notes that PA Rodriguez ordered medications for the patient, but she had not yet returned from the hospital.  Accordingly, he could not be "acting upon" a hospital report, because she had not yet returned.  She was not seen by a provider until 7/10/17, the following Monday.  See Exs. 1-3.

███████    She returned from a procedure performed at the hospital on 7/26/17.  Dr. Stabinsky entered an "infirmary admission" for her with orders for medication, but similar to the patient listed above, this was done prior to her return from the hospital or his review of the hospital report.  See Ex. 4.  From the record it does not appear he saw her or reviewed the report until 7/28/17.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

███████    She returned from the emergency room on 7/10/17 after an act of self-harm (cutting her wrists).  There is no record that the discharge report was reviewed by the medical provider, other than a note stating that her KOP medications were going to be changed to DOT, and she was being placed on mental health watch.

███████    Listed as compliant at Perryville, but this is a male who was housed at Phoenix and Florence in July.

███████    She returned from the emergency room on 7/21/17 after attempting suicide by hanging.  There is no record that the discharge report was reviewed by the medical provider upon her return.  She was placed on mental health watch upon her return.

███████:  She returned from the hospital on 7/17/17 after an act of self-harm (lacerations to her arms).  The progress note from the nurse reads, "CWA staff does not know where hospital d/c paperwork is at this time.  On-call provider contacted for pain med orders."  See Ex. 5.

**Safford:**

The CGAR lists 100% compliance with 2 records reviewed. (ADCM1033175).  However, one of the records appears to be noncompliant, which would make the institution 50% compliant.

███████    On 7/31/17 he saw the RN on his return from the emergency room, where he was taken for back pain and loss of sensation to his lower extremities.  According to the nursing note, the ER had recommended that he meet with the provider to discuss an MRI.  The nurse wrote she was sending

6

him back on the yard with no medication orders or special needs.  See Ex. 6.
PA Underwood did not see the patient or submit a request for a MRI until
August 4.  Accordingly, the Medical Provider's review and action was outside
the timeframes.  A registered nurse encounter should not be counted.

**Please let us know by close of business on Friday, October 6
whether you will agree to re-check the July 2017 CGAR results for PM 44
at all institutions and correct the compliance figures accordingly.**

**Multiple Errors in CGARs at Eyman and Tucson**

Our spot-check of the July 2017 CGARs for Eyman and Tucson
revealed a number of errors.  All of the following records were erroneously
counted as compliant when they should have been counted as noncompliant:

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

| *Eyman PM #77*[5] | | | |
|---|---|---|---|
| ADC No. | MH Category | Most Recent Treatment Plan Update | Second Most Recent Treatment Plan Update |
| ███ | 3B | 7/12/17 | 7/11/16 |
| | 3A | 7/31/17 | 3/15/17 |
| | 3B | 10/10/16 | 9/16/15 |

| *Tucson PM #77* | | | |
|---|---|---|---|
| ADC No. | MH Category | Most Recent Treatment Plan Update | Second Most Recent Treatment Plan Update |
| ███ | 3B | 3/13/17 | 3/2/16 |
| | 3B | 7/11/17 | 7/7/16 |

---

[5] PM 77 requires that "Mental health treatment plans shall be updated a
minimum of every 90 days for MH-3A, MH-4, and MH-5 prisoners, and a
minimum of every 12 months for all other MH-3 prisoners."

7

| Tucson PM #80[6] | | |
|---|---|---|
| ADC No. | Most Recent Date Seen by MH Clinician | Second Most Recent Date Seen By MH Clinician |
| █ | 7/30/17 | 6/23/17 |
| | 7/25/17 | 5/26/17 |
| | 7/27/17 | 6/26/17 |

| Tucson PM #81[7] | | |
|---|---|---|
| ADC No. | Most Recent Date Seen by MH Provider | Second Most Recent Date Seen By MH Provider |
| █ | 5/15/17 | 2/14/17 |

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

*See* Exhibit 7.  We emphasize that we have not checked all institutions and performance measures.  The fact that a spot-check of a few PMs at two institutions revealed so many errors -- all in Defendants' favor -- is troubling and casts serious doubt on the reliability of the CGARs.

**Please let us know by close of business on Friday, October 6 whether you will agree to re-check the July 2017 CGAR results for PM 77, 80, and 81 at all institutions and correct the compliance figures accordingly.**

**PM 85 and 86[8]**

Thank you for your September 25, 2017 email attaching your proposed Monitor Guide language for PM 85 and 86.[9]  As you know, the Court has set

---

[6] PM 80 requires that "MH-3A prisoners shall be seen a minimum of every 30 days by a mental health clinician."

[7] PM 81 requires that "MH-3A prisoners who are prescribed psychotropic medications shall be seen a minimum of every 90 days by a mental health provider."

[8] PM 85 requires that "MH-3D prisoners shall be seen by a mental health provider within 30 days of discontinuing medications."  PM 86 requires that "MH-3D prisoners shall be seen a minimum of every 90 days by a mental health clinician for a minimum of six months after discontinuing medication."

[9] The Court had ordered that this proposal be provided to Plaintiffs no later than September 15, 2017.  See Doc. 2317 at 2.

forth the sampling methodology that is to be followed with these PMs, based upon the uncontradicted declaration of Dr. Haney:

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

> With respect to Performance Measures 85 and 86, there really wasn't a similar substantive objection that I could ferret out to the plaintiffs' proposed language. And so I would adopt the plaintiffs' language. And that is, with 85, that the monitor selects a random sample of 10 records from all MH-3D prisoners at a given unit. If any of them discontinued medications less than 30 days previously, that record is excluded from the sample and another record is randomly drawn. See Document 2048, Paragraph 12.

> Once these -- once there are 10 records of MH-3D prisoners that have discontinued medications more than 30 days ago, those records are assessed to determine whether the patient was seen within 30 days of discontinuing medications.

> And then with respect to Performance Measure 86, the final sample of 10 records used for Performance Measure 85 is the starting point for evaluating compliance with Performance Measure 86. If any of these prisoners discontinued medications less than 90 days previously, that record is excluded from the sample and another record is randomly drawn. Once there are 10 records of MH-3D prisoners who have discontinued medications more than 90 days ago, those records are assessed to determine whether the patient was seen within 90 days of discontinuing medications.

*See* Doc. 2160 at 4. We have modified your proposed language so that it is consistent with the Court's order. Additional modifications have been made to ensure that the Monitor Guide is consistent with the requirements of the Stipulation, and to ensure consistency between PMs 85 and 86. Our proposal is attached as Exhibit 8; please let us know if you agree.

9

**PM 95[10]**

It appears that the monitors are inappropriately including in the sample for one institution patients who were removed from suicide watch at a different institution. For example, patients ███ and ███ were both included in the July 2017 sample for PM 95 for Tucson. *See* ADCM 1033195. However, both were actually removed from suicide watch at Phoenix. While both of these patients were included in the Tucson sample, the monitor inexplicably counted the first required follow-up as "N/A" for each, even though that contact was required to occur in July of 2017.

The purpose of drawing a sample from a given institution is to assess Defendants' compliance with the performance measure *at that institution*. Please confirm that you will henceforth exclude from the sample for PM 95 any patients who were removed from suicide watch at a different institution, and will randomly draw replacement records until the required sample size is reached.

**PM 94, 95, and 97[11]**

It appears that monitors are continuing to include the same individual's record in a given sample for these PMs more than once. *See* Exhibit 9. Indeed, at Lewis, the monitor counted the same patient's June 27-July 3 suicide watch twice for PM 94. *See* ADCM 1033031. The monitor similarly counted the same patient's June 13, 2017 removal from suicide watch twice for PM 95. *See* ADCM 1033032.

---

[10] PM 95 requires that "Only licensed mental health staff may remove a prisoner from a suicide or mental health watch. Any prisoner discontinued from a suicide or mental health watch shall be seen by a mental health provider, mental health clinician, or psychiatric registered nurse between 24 and 72 hours after discontinuation, between seven and ten days after discontinuation, and between 21 and 24 days after discontinuation of the watch."

[11] PM 94 requires that "All prisoners on a suicide or mental health watch shall be seen daily by a licensed mental health clinician or, on weekends or holidays, by a registered nurse." PM 97 requires that "A mental health provider treating a prisoner via telepsychiatry shall be provided, in advance of the telepsychiatry session, the prisoner's intake assessment, most recent mental health treatment plan, laboratory reports (if applicable), physician orders, problem list, and progress notes from the prisoner's two most recent contacts with a mental health provider."

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

This is inconsistent with the Court's order of July 13, 2017.  *See* Doc. 2185 at 2 ("Argument is heard regarding Performance Measures 94, 95 and 97. IT IS ORDERED Defendants must draw individuals as previously ordered").

**Please let us know by close of business on Friday, October 6 whether you will agree to recalculate the July 2017 CGAR results for PM 94, 95, and 97 at all institutions in compliance with the Court's order, and correct the compliance figures accordingly.**

**PM 98 and 99**

PM 98 is listed in the CGARs as "Are mental health HNRs being responded to within the timeframes set forth in the current Mental Health Technical Manual (MHTM), rev. 4/18/14, Chapter 2, Section 5.0?"  PM 99 is listed as "Are peer reviews being conducted as set forth in the current MHTM? (rev. 4/18/14), Chapter 1, Section 3.0?"

As discussed at the September 12 hearing, the inclusion of the word "current" in each of these PMs is incorrect; that word occurs neither in the Stipulation nor in the Monitor Guide.  Please confirm that you will delete this word from the CGARs and from any other statement of the requirements of PM 98 and 99.

We look forward to your response.

Very truly yours,

David C. Fathi

Cc:    All counsel

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

11

# EXHIBIT 1

CHSS027J    Condensed Health Services Encounter          Wednesday October 04, 2017 08:13:20 AM

| | |
|---|---|
| ADC #: ▓▓▓▓    Inmate Name: ▓▓▓▓▓▓▓▓ | |
| ENCOUNTER DATE: 07/07/2017   TIME: 04:43:17 PM   DURATION: minutes   TYPE: Practitioner - Infirmary Admission | |
| LOCATION: ASPC-PV SANTA ROSA [B35]   SETTING: Clinic | |

**S**  Are interpreter services needed for this inmate? No
NOTES: pt is being released from the hospital.  She is S/P robotic laparoscopic radical hysterectomy with bilateral salpingo-oophorectomy.  she is being released with a foley

| Status: ☑ Infirmary admit | Acuity level (if infirmary admit): ☑ Acute |
|---|---|

**O**  NOTES: ▓▓ Y/O BF S/P radical hysterectomy, being released back to Perryville long after I have left for the day

**A**  RELATED PROBLEM:   Other Diagnosis:   Other Diagnosis   Acquired absence of both cervix and uterus [Z90.710]
MEDICAL DIAGNOSIS:   Acquired absence of both cervix and uterus [Z90.710]
NOTES: S/P  laparoscopic radical hysterectomy with bilateral salpingo-oophorectromy

**P**  LAB TEST ORDERED: Diagnostic Panel 2
LAB INSTRUCTIONS: None
APPT SCHEDULED: Lab   WITH: Sevilla, Jennifer
ON: 07/20/2017   AT: 05:00:00 AM
NOTES:

Admit to IPC
Dx:  S/P Robotic laparoscopic radical hysterectomy with bilateral salpingo-oophorectomy
Bilateral Pelvicl Lymphadenectomy
Para-aortic lymphadenectomy
Lysis of adhesions
squamous cell carcinoma of the cervix
Condition/Code: Stable/full code
vital signs:  Q shift and daily weights
Allergies:  NKDA
Activity bed rest, bathroom preivleges with assistance only
Diet:  Regular as tolerated
IV: none at present
Labs:  ordered
Meds:  continue current meds.  Apixaban 2.5 PO bid for 21 days
Special instructionsFoley catheter to stay in for 3 days (remove on Monday 07/10/2017)  please do a voiding trial, if does not urinate in 2 hours re-insert foley and trial again in 2 days.
F/U with Dr. Enciso on Monday

| Code Status: ☑ Full code | Activity: ☑ Bathroom privileges | ☑ Only up with assistance ☑ Fall precautions |
|---|---|---|
| Vital signs: ☑ Every shift | ☑ Other: daily weights | Diet: ☑ Regular |
| Foley: ☑ Foley to drainage bag | I and O: ☑ Every shift | |
| Wound care/dressings: no bandage necessary. expect mild oozing for 2 weeks and gauze may be placed | Nursing Care: ☑ Weigh on arrival | ☑ Weigh every morning ☑ Patient has sudden altered mental status ☑ Temperature is greater than 100 degrees or has a 2 degree increase in one shift |

**E**  NOTES: pt not seen

**H/S**  MH Status: Previously received MH services
STAFF: Rodriguez, Rumaldo

Corizon Correctional Health Services 1.0 /0.0 /1

# Clinical Orders

ADC #: ▮▮▮▮▮    Inmate Name: ▮▮▮▮▮▮▮▮
Encounter Date: 07/07/2017   Encounter Time: 04:43:17 PM

| |
|---|
| LAB TEST ORDERED: Diagnostic Panel 2 |
| LAB INSTRUCTIONS: None |

| |
|---|
| APPT SCHEDULED: Lab   WITH: Sevilla, Jennifer |
| ON: 07/20/2017   AT: 05:00:00 AM |

PROVIDER SIGNATURE: _____

Rodriguez, Rumaldo

# EXHIBIT 2

CHSS027J    Condensed Health Services Encounter      Wednesday October 04, 2017 08:14:29 AM

|  |  |
|---|---|
|  | ADC #: ▓▓▓   Inmate Name: ▓▓▓▓▓▓<br>ENCOUNTER DATE: 07/07/2017   TIME: 04:07:12 PM   DURATION: minutes   TYPE: Nurse - Verbal/Telephone Orders<br>LOCATION: ASPC-PV SPECIAL NEEDS [B41]   SETTING: Clinic |
| S | Are interpreter services needed for this inmate: No<br>NOTES: Patient not on site at this time. |
| O | NOTES: T.O. Per Provider Rodriguez, Medications ordered for Patients return from Hospital. |
| A | NOTES: Not on site |
| P | DRUG PRESCRIPTION: APIXABAN TABS/2.5 Mg   VERBAL BY: Rodriguez, Rumaldo<br>EFFECTIVE DT: 07/07/2017   RT: PO   DOSE: 1   STRENGTH: 2.5 Mg   METHOD: Normal Dose<br>FREQ: BID   FOR: 21 DAYS   EXPIRATION DATE: 07/27/2017   REFILLS: 0   STATUS: Received from Pharmacy<br>DRUG COMMENTS:<br><br>Per Provider Rodriguez: Take 1 tab, PO, BID, x 21 days.<br><br><br>DRUG PRESCRIPTION: CODEINE/APAP (UD) TABS/30-300 Mg   VERBAL BY: Rodriguez, Rumaldo<br>EFFECTIVE DT: 07/07/2017   RT: PO   DOSE: 2   STRENGTH: 30-300 Mg   METHOD: Normal Dose<br>FREQ: TIDPRN   FOR: 4 DAYS   EXPIRATION DATE: 07/10/2017   REFILLS: 0   STATUS: Discontinued - Other<br><br>NOTES: Meds ordered so as to be in place when Patient returns from hospital. |
| E | NOTES: Not on site. |
| H/S | MH Status: Previously received MH services |
|  | STAFF: Moya, Vonda F<br>NURSE SIGNATURE: _____ |

# Clinical Orders

ADC #: ▓▓▓   Inmate Name: ▓▓▓▓▓▓
Encounter Date: 07/07/2017   Encounter Time: 04:07:12 PM

DRUG PRESCRIPTION: APIXABAN TABS/2.5 Mg   VERBAL BY: Rodriguez, Rumaldo
EFFECTIVE DT: 07/07/2017   RT: PO   DOSE: 1   STRENGTH: 2.5 Mg   METHOD: Normal Dose
FREQ: BID   FOR: 21; DAYS   EXPIRATION DATE: 07/27/2017   REFILLS: 0   STATUS: Received from Pharmacy
DRUG COMMENTS:

Per Provider Rodriguez: Take 1 tab, PO, BID, x 21 days.

DRUG PRESCRIPTION: CODEINE/APAP (UD) TABS/30-300 Mg   VERBAL BY: Rodriguez, Rumaldo
EFFECTIVE DT: 07/07/2017   RT: PO   DOSE: 2   STRENGTH: 30-300 Mg   METHOD: Normal Dose
FREQ: TIDPRN   FOR: 4; DAYS   EXPIRATION DATE: 07/10/2017   REFILLS: 0   STATUS: Discontinued - Other
DRUG COMMENTS: At 07/12/2017 01:04:38 a prescription order message from the Pharmacy, with a status of "Order Discontinued at Pharmacy Vendor (DR)", was not processed because the prescription status in eOMIS was "Discontinued - Other" at the time the pharmacy message was received. At 07/11/2017 01:38:42 a prescription order message from the Pharmacy, with a status of "Order Discontinued at Pharmacy Vendor (DR)", was not processed because the prescription status in eOMIS was "Discontinued - Other" at the time the pharmacy message was received. At 07/09/2017 05:11:19 a prescription order message from the Pharmacy, with a status of "Order Discontinued at Pharmacy Vendor (DR)", was not processed because the prescription status in eOMIS was "Discontinued - Other" at the time the pharmacy message was received. At 07/08/2017 05:50:28 a prescription order message from the Pharmacy, with a status of "Order Discontinued at Pharmacy Vendor (DR)", was not processed because the prescription status in eOMIS was "Discontinued - Other" at the time the pharmacy message was received.

Per R. Rodriguez; Take 2 tabs, PO, TID, x 4 days.

Orders repeated and verified.

See new order
TimeStamp: 7 July 2017 23:41:53 --- User: Shannon Smith (SSMITH)

VERBAL ORDER REVIEWED BY DOCTOR: _____

# EXHIBIT 3

CHSS027J    Condensed Health Services Encounter             Wednesday October 04, 2017 08:15:14 AM

| | |
|---|---|
| | ADC #: [redacted]    Inmate Name: [redacted]<br>ENCOUNTER DATE: 07/10/2017    TIME: 08:47:12 AM    DURATION: minutes    TYPE: Provider - Infirmary Rounds<br>LOCATION: ASPC-PV SPECIAL NEEDS [B41]    SETTING: Clinic |
| S | Are interpreter services needed for this inmate: No<br>NOTES: POD #4 Robotic assisted Radical hysterectomy with BSO for cervical cancer, stage 1B1. Complains of post op abdominal pain. Has not had bowel movement yet. Has been pass flatus. Still has Foley catheter on. Has been on and about. She remains afebrile. |
| O | PREV: 06:33:26 AM    TEMP: 97.3    PULSE: 66    RP: 16    BP: 128/95    HT: 5 ft.  5 in.    WT: 174  lb    BLOOD SUGAR: NA<br>02 SAT:  97.00%    SOURCE:<br>NOTES: Vital signs- within normal limits. Heart and lungs- essentially all right. Abdomen- slightly distended, appropriately tender, soft. Incisions-no evidence of infection. Presence of active bowel sounds. No vaginal bleeding. |
| A | NOTES: POD #4, Radical hysterectomy for ca cervix, stage 1B1. Patient is doing well. |
| P | DRUG PRESCRIPTION: BISACODYL SUPP/10 Mg    VERBAL BY: Enciso, Vicente, MD<br>EFFECTIVE DT: 07/10/2017    RT: PR    DOSE: 1    STRENGTH: 10 Mg    METHOD: Normal Dose<br>FREQ: UAD    FOR: 1 DAYS    EXPIRATION DATE: 07/10/2017    REFILLS: 0    STATUS: Approved/Approval<br>DRUG COMMENTS: Why must this drug be used instead of one included on the formulary? Post op patient and has not had bowel movement for 4 days.<br>What formulary drugs have been tried?  Colace.<br>What was outcome?  No BM yet.<br><br><br>NOTES: DC Foley catheter. Bisacodyl suppository- 10 mg- insert rectally X one time. Encourage ambulation. |
| E | NOTES:<br><br>Discuss with the patient the extent of the surgery and the prognosis. |
| H/S | MH Status: Previously received MH services |
| | STAFF: Enciso, Vicente, MD |

# Clinical Orders

ADC #: [redacted]    Inmate Name: [redacted]
Encounter Date: 07/10/2017    Encounter Time: 08:47:12 AM

| |
|---|
| DRUG PRESCRIPTION: BISACODYL SUPP/10 Mg    VERBAL BY: Enciso, Vicente, MD<br>EFFECTIVE DT: 07/10/2017    RT: PR    DOSE: 1    STRENGTH: 10 Mg    METHOD: Normal Dose<br>FREQ: UAD    FOR: 1; DAYS    EXPIRATION DATE: 07/10/2017    REFILLS: 0    STATUS: Approved/Approval<br>DRUG COMMENTS: Why must this drug be used instead of one included on the formulary? Post op patient and has not had bowel movement for 4 days.<br>What formulary drugs have been tried?  Colace.<br>What was outcome?  No BM yet. |

PROVIDER SIGNATURE: _____

Enciso, Vicente, MD

# EXHIBIT 4

CHSS027J     Condensed Health Services Encounter        Wednesday October 04, 2017 08:16:41 AM

| | |
|---|---|
| ADC #: ▓▓▓▓     Inmate Name: ▓▓▓▓▓▓▓ | |

ENCOUNTER DATE: 07/26/2017   TIME: 02:12:20 PM   DURATION: minutes   TYPE: Practitioner - Infirmary Admission
LOCATION: ASPC-PV SPECIAL NEEDS [B41]    SETTING: Infirmary

**S**   Are interpreter services needed for this inmate: No
NOTES:

Patient is not back yet

Status: ☑ Infirmary admit        Acuity level (if infirmary admit): ☑ Sub-acute

**O**   NOTES: Will write physical exam tomorrow

**A**   NOTES:

Patient has been in either IPC or SNU since March 2016 due to the presence of nephrostomy (tubes). She was sent to the hospital on 7/21/17 for IV antibiotic therapy due to pseudomonas UTI and possible consults, imaging, and urological procedures to be done this week. She is returning to IPC due to the presence of a PICC line and IV abx requirements. Unfortunately, the patient only had her right ureteral stent replaced. No stones on that side were addressed. Her left nephrostomy tube was replaced. I say unfortunately because I believe that the stones remain a nidus for infection.

HCV carrrier
Pseudomonas urinary tract infection
Stage IV CKD secondary to silent obstructive hydronephrosis last year. currently with a 15mm calculus in her left kidney and a nephrostomy tube on that side. She has a 4mm stone on the right with a ureteral stent in place on that side and has been awaiting right ULL and stent removal versus exchange and either a left nephrolithostomy or nephrectomy. Her current infection precludes surgery until she receives at leas some intravenous antibiotics.

Until January of this year she had been in good health except that she is a carrier of the Hepatitis C virus. She has a normal APRI score and has not shown any clinical signs of liver cirrhosis, but does have a mildly enlarged spleen a 13.6 cm and normal platelets but on the low side.

In January 2017 the patient first demonstrated abnormal renal testing with a BUN of 30 and Cr of 2.31. Her eGFR was 23. Six months prior her labs had been normal. She does recollect some back pain occurring in the summer of 2016. Ultrasound on 3/1/17 demonstrated bilateral hydronephrosis and bilateral renal calculi. The patient had bilateral nephrostomy tubes placed on 3/9/17. She has lived in a prison infirmary setting since that time. Her CT scan performed on 4/21/17 demonstrated the nephrostomy tube without residual hydronephrosis, a left UPJ junction 1.4 m stone, a left non-obstructing sub-centimeter calculus in the inferior pole, and a right renal pelvis 0.5 cm stone.

Her scheduled 5/22/17 nephrolithostomy was cancelled by Dr. Galaxy Shah on 5/19/17 when he first realized that she had Stage IV kidney disease. While cancellation was very necessary and appropriate, it was disappointing, because we had been trying unsuccessfully to move up the surgical date with MCCMC for the previous several weeks. Her right nephrostomy tube fell out on 5/21/17. In mid May, I had attempted to drain what I thought was an abscess near the left nephrostomy site. She had been started on Bactrim a few days before due to a presumed urine infection. I got no pus and suspected a possible urine collection deep to the muscle on The left nephrostomy ceased to function on 5/22/17, so I specifically sent her to MCM after speaking again with Dr. Shah, and she was admitted to MCCMC where he cared for her.

In May while at the hospital, she was treated initially with cefepime 1 gram IV Q24h and Zosyn for pyelonephritis. CT Scan documented that there was no perinephric or flank wall abscess. When the urine cx returned mixed flora, the Zosyn was d/ced and the patient was continued on her cefepime until switched to PO Levoquin for discharge. The CT also revealed continued presence of a right 4mm pelvic stone and a left 1.5 cm UPJ obstructing stone. There was a patent stent in the right ureter, so the right nephrostomy tube, which had fallen out on 5/21/17 did not need to be replaced. The left nephrostomy tube was exchanged in IR. The patient had acidosis and hyperkalemia. Her K+ was 6.3, she was treated with D50 and insulin as well as kayexelate. Her creatinine was 2.99 and it improved to 1.74 at discharge on 5/24/17. Her d/c wbc was 4.2, hgb 9.1, plt ct 108k AST and ALT remained normal. After return to Perryville, I arranged for the renal scan and nephrology consults to be done at MCMC in late June. Her left kidney contributed 20% of the overall renal function and the right kidney, 80%. She had an appt with nephrology on 6/26/17. The imperative was and continues to be to make sure that left nephrectomy be avoided if at all possible if it is contributing enough to the patient's e-GFR to avoid dialysis.

I spoke at some length on the telephone on 7/19/17 in separate conversations first with Dr. Shah and then with

his partner, Dr. Homyoon. I spoke with Dr. Shah again on 7/20/17 and let him know about the patient's dual pathogen urinary tract infection. He reiterated that there was still no plan for the left kidney, and I expressed my concern about getting her quickly treated for her infection so surgery could proceed. I made him aware that I would probably send her to the ER at MCMC; he was somewhat I do not have the hospital records back but assume it was he who did the right ureteroscopic stent exchange. The patient was treated at MCMC with cefipime IV since 7/21/17. I am admitting her to the IPC to continue 2 grams IV of that drug Q24h until 8/4/17 per ID recommendation.  We have located another urologist and will send the patient out for a consult with him to arrange definitive treatment of the patient's stones.

---

**P**   DRUG PRESCRIPTION: CEFEPIME VIAL INJ/2 Grams   VERBAL BY: Stabinsky, Seth
EFFECTIVE DT: 07/27/2017   RT: IV   DOSE: 2 grams   STRENGTH: 2 Grams   METHOD: Normal Dose
FREQ: SEE NOTE   FOR: 9 DAYS   EXPIRATION DATE: 08/04/2017   REFILLS: 0   STATUS: Approved/Approval
DRUG COMMENTS:

DOT sig cefipime 2 grams in 100 cc NS to run via pick line over 30 minutes.
Why must this drug be used instead of one included on the formulary? multidrug resistant pseudomonas UTI
returning from hospital on this medication to complete course on 8/4/17.
What formulary drugs have been tried? na
What was outcome? na

LAB TEST ORDERED: Diagnostic Panel 3
LAB INSTRUCTIONS: draw 8/2/17
APPT SCHEDULED: Nurse - Treatment Call   WITH: Generic, Clinic Nurse
ON: 08/01/2017   AT: 08:00:00 AM
APPT SCHEDULED: Lab   WITH: Sevilla, Jennifer
ON: 08/02/2017   AT: 07:00:00 AM
APPT SCHEDULED: Practitioner - Infirmary Admission   WITH: Stabinsky, Seth
ON: 08/16/2017   AT: 09:30:00 AM
PREV TRANSFER HOLD: Medical Hold   EXPIRES: 06/12/2018
Consultation Request: Off-site Clinic
Service Type:    Priority: Routine
NOTES:

Admit to IPC
Dx: CKD, bilateral nephrolithiasis, left nephrostomy tube in place, HCV UTI
Condition Stable
Code Status: Full code
Vitals Q shift with daily weights
Activity ad lib. cover left nephrostomy tube skin insertion site and dressing with plastic for shower. Change
dressing as needed. Tell patient to avoid getting water on it.
NKDA
Routine PICC line care
Regular Diet
No Is&Os currently . Fasting labs to be drawn on 8/2/17. phlebotomy aware.
See medications above under drug prescriptions

---

| Code Status: ☑ Full code | ☑ Up ad lib | | Vital signs: ☑ Every shift |
| Diet: ☑ Regular | ☑ Other: PICC line routine care | ☑ Other: left nephrostomy tube care | |

---

**E**   NOTES: will review with patient when I see her

---

**H/S**   MH Status: No history of MH services

---

ADDENDUM: 07/27/2017 16:14:27 Stabinsky, Seth
Current complaint is sore from PICC but getting used to it. Wants to go back to SNU. Physical Exam for admission
HEENT Neck Node Thyroid WNL Lungs CTA Cor rrr s mrgc Abd +BS soft nt nd s hsm rebound masses. left
nephrostomy CD&I Ext s cce NT 2+ reflexes and pulses.

STAFF: Stabinsky, Seth

# Clinical Orders

ADC #:  ▮▮▮▮▮▮        Inmate Name:  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Encounter Date: 07/26/2017　Encounter Time: 02:12:20 PM

DRUG PRESCRIPTION: CEFEPIME VIAL INJ/2 Grams　VERBAL BY: Stabinsky, Seth
EFFECTIVE DT: 07/27/2017　RT: IV　DOSE: 2 grams　STRENGTH: 2 Grams　METHOD: Normal Dose
FREQ: SEE NOTE　FOR: 9; DAYS　EXPIRATION DATE: 08/04/2017　REFILLS: 0　STATUS: Approved/Approval
DRUG COMMENTS:

DOT sig cefipime 2 grams in 100 cc NS to run via pick line over 30 minutes.
Why must this drug be used instead of one included on the formulary? multidrug resistant pseudomonas UTI
returning from hospital on this medication to complete course on 8/4/17.
What formulary drugs have been tried? na
What was outcome? na

LAB TEST ORDERED: Diagnostic Panel 3
LAB INSTRUCTIONS: draw 8/2/17

APPT SCHEDULED: Nurse - Treatment Call　WITH: Generic, Clinic Nurse
ON: 08/01/2017　AT: 08:00:00 AM

APPT SCHEDULED: Lab　WITH: Sevilla, Jennifer
ON: 08/02/2017　AT: 07:00:00 AM

APPT SCHEDULED: Practitioner - Infirmary Admission　WITH: Stabinsky, Seth
ON: 08/16/2017　AT: 09:30:00 AM

PROVIDER SIGNATURE: _____

Stabinsky, Seth

# EXHIBIT 5

CHSS027J     Condensed Health Services Encounter          Wednesday October 04, 2017 08:18:00 AM

| | |
|---|---|

| | |
|---|---|
| | ADC #: [redacted]     Inmate Name: [redacted]<br>ENCOUNTER DATE: 07/17/2017   TIME: 07:27:00 PM   DURATION: minutes   TYPE: Nurse - Return From Offsite<br>LOCATION: ASPC-PV M/H [B30]   SETTING: Cell |
| S | Are interpreter services needed for this inmate: No<br>NOTES: Pt RFO Abrazo West at approx. 1630 for self-inflicted lacerations to bilat wrists. Pt seen in CWA on the run. Pt returned directly to CWA without seeing medical due to Pt assaulting DOC staff at hospital and acting out. Pt yelled at security when they approached her door "What do you want"? Pt angrily staring at security officer who asked why Pt was staring at her like that. Pt then smiled. Pt is demanding "I want to go to the hospital. I need medical care". Pt also requesting to go to IPC. |

| Inmate return from: ○ Scheduled appointment or procedure ● Emergency transport and/or admission | at 06:30:00 PM | Inmate returned from: Abrazo West |
|---|---|---|
| For (describe): self-inflicted lacerations to bilat wrists | | |

| | |
|---|---|
| O | CURR: 07:27:00 PM   TEMP: 97.3   PULSE: 85   RP: 18   BP: 118/78   HT: 5 ft.  6 in.   WT: 190  lb   BLOOD SUGAR: NA<br>02 SAT:  97.00%   SOURCE: Room Air<br>NOTES: Pt angry at first yelling at officer, then smiling. Pt angry that she is on a constant watch, stated "that's bullshit". This RN attempted to explain to Pt that she is still on a constant due to self harm and only gets downgraded after being seen by MH staff. Pt states "it's not my fault they didn't see me in the hospital". Pt asking to see MH "right now". Pt advised she would see MH in the AM some time. Pt has ACE wrap around L f/a that is hanging down. Pt cuffed up with leg shackels to avoid damage to stapled L wrist. Pt is unsure, but states she is not going to do anything to nurse or security. Pt has already removed the wrap from off of her R wrist leaving small sutured lac visible. Security threatened Pt with pepper spray to be able to retrieve the wrap from Pt. There is no visible drainage noted to R wrist area. Remainder of ACE wrap removed from L wrist/forearm. Small amount of sanguinous drainage noted on gauze. Pt has sutures running horizontal and vertical on wrist. Horizontal lac approx. 2-2.5" across, and vertical approx. 2-2.5". RN did not count amount of sutures due to Pt's instability. Pt asking "what would you do if I pulled the staples out of my arm"? Pt advised that once the area is repaired, Pt could end up 4-pt restrained on the bed across the hall from her should she continue shelf harm. Pt repeatedly asking for "medical care". Pt also asking to return to the hospital even though she just returned from the hospital. When questioned on this, Pt then states "I want to go to IPC". Pt asked what care she thought she would receive from IPC that she isn't currently getting. Pt had no answer. Pt also admits to never going to IPC. Pt is agitated. Pt c/o 10/10 pain, is demanding meds. Pt advised that on-call provider had to be contacted. Pt also advised that she will most likely not be moved to IPC. |

| Dressing: ● Y ○ N | Location: bilat wrists | Describe: sutures to R, staples to L |
|---|---|---|
| Dressing changes required: ● Y ○ N | Describe: need to keep wrists covered | Sutures: ● Y ○ N |
| Location: sutures to R wrist, staples to L | Complaints: ● Y ○ N | Describe: pain |

| | |
|---|---|
| A | NOTES:<br><br>risk for self directed violence<br>impaired skin integrity<br>risk for infection<br>impaired impulse control<br>ineffective coping |

| ● Stable ○ Unstable |
|---|

| | |
|---|---|
| P | DRUG PRESCRIPTION: IBUPROFEN TABS/600 Mg   VERBAL BY: Davis, Patricia, NP<br>EFFECTIVE DT: 07/17/2017   RT: PO   DOSE: 1   STRENGTH: 600 Mg   METHOD: Normal Dose<br>FREQ: STAT   FOR: 1 DAYS   EXPIRATION DATE: 07/17/2017   REFILLS: 0   STATUS: Approved/Approval<br><br>DRUG PRESCRIPTION: IBUPROFEN TABS/600 Mg   VERBAL BY: Davis, Patricia, NP<br>EFFECTIVE DT: 07/18/2017   RT: PO   DOSE: 1   STRENGTH: 600 Mg   METHOD: Normal Dose<br>FREQ: BID   FOR: 3 DAYS   EXPIRATION DATE: 07/20/2017   REFILLS: 0   STATUS: Refill Ordered<br>DRUG COMMENTS: None<br>NOTES: F/U with MH per protocol d/t constant MH watch. PL f/u for wound care orders, suture/staple removal orders. Pt to continue on constant MH watch. Security advised Pt threatening continued self-harm. CWA staff does not know where hospital d/c paperwork is at this time. On-call Provider contacted for pain med orders. |

| On call practitioner notified for medication order: ⦿ Y ○ N | Verbal medication orders entered into system: ⦿ Y ○ N |
|---|---|

| E | NOTES: Pt advised on-call provider needed to be contacted for orders. |
|---|---|

| H/S | MH Status: Admitted Outpatient-Specialized MH Program |
|---|---|

STAFF: Smith, Shannon
NURSE SIGNATURE: _____

# Clinical Orders

ADC #: ▮▮▮▮▮    Inmate Name: ▮▮▮▮▮▮▮▮
Encounter Date: 07/17/2017    Encounter Time: 07:27:00 PM

| DRUG PRESCRIPTION: IBUPROFEN TABS/600 Mg    VERBAL BY: Davis, Patricia, NP |
|---|
| EFFECTIVE DT: 07/17/2017   RT: PO   DOSE: 1   STRENGTH: 600 Mg   METHOD: Normal Dose |
| FREQ: STAT   FOR: 1; DAYS   EXPIRATION DATE:  07/17/2017   REFILLS: 0   STATUS: Approved/Approval |

| DRUG PRESCRIPTION: IBUPROFEN TABS/600 Mg    VERBAL BY: Davis, Patricia, NP |
|---|
| EFFECTIVE DT: 07/18/2017   RT: PO   DOSE: 1   STRENGTH: 600 Mg   METHOD: Normal Dose |
| FREQ: BID   FOR: 3; DAYS   EXPIRATION DATE: 07/20/2017   REFILLS: 0   STATUS: Refill Ordered |
| DRUG COMMENTS: None |

VERBAL ORDER REVIEWED BY DOCTOR:    _____

# EXHIBIT 6

CHSS027J    Condensed Health Services Encounter      Wednesday October 04, 2017 08:19:36 AM

| | |
|---|---|
| ADC #: ▓▓▓▓      Inmate Name: ▓▓▓▓▓▓▓ | |

ENCOUNTER DATE: 07/31/2017   TIME: 05:39:46 AM   DURATION: minutes   TYPE: Nurse - Return From Offsite
LOCATION: ASPC-S TONTO [S06]    SETTING: Clinic

**S**   Are interpreter services needed for this inmate: No
NOTES: IM returns from MGRMC at 0430.

Inmate return from: ◯ Scheduled appointment or procedure ◉ Emergency transport and/or admission     at 04:30:00 AM    Inmate returned from: MGRMC

For (describe): C/O lower back pain--loss of sensation to lower extremities

**O**   CURR: 05:39:46 AM   TEMP: 97.7   PULSE: 71   RP: 14   BP: 122/88   HT: 5 ft. 10 in.   WT: 164 lb   BLOOD SUGAR: NA
02 SAT: 98.00%   SOURCE: Room Air
NOTES: IM returns from MGRMC and states that the ER said he needs to have an MRI done. It was explained to IM that the ER did NOT say he needed to have an MRI. The patient visit information states that it's recommended he speak to the provider to discuss the possibility of a nonemergent MRI at a later date. IM states this is not true. It was then explained that looking back on the last 3 months in eomis, it shows that the IM has been seen multiple times for the same lower back issues and every time he states he's "never had this pain before". This same statement was said in each encounter. IM was sent back on the yard. No medication orders and no special needs at this time.

**A**   NOTES: HNR PRN

TimeStamp: 31 July 2017 05:55:26 --- User: Jodi Salyer (SALJO01)

◯ Stable   ◉ Unstable

**P**   NOTES: 1. IM to return to dorm

Returned with medications: ◯ Y ◉ N

**E**   NOTES:

HNR PRN
TimeStamp: 31 July 2017 05:59:02 --- User: Jodi Salyer (SALJO01)

**H/S** MH Status: Previously received MH services

ADDENDUM: 08/04/2017 22:43:42 Salyer, Jodi

Late entry for Off site encounter with IM ▓▓▓▓▓▓
IM came back from ER in stable condition and no ER orders, discharge instructions, or medications to review with provider at that time.

TimeStamp: 4 August 2017 22:45:01 --- User: Jodi Salyer (SALJO01)

STAFF: Salyer, Jodi, RN
NURSE SIGNATURE: _____

# EXHIBIT 7

# EXHIBIT 8

**P E R F O R M A N C E   M E A S U R E S**

Health Care Performance Measure No. 85
Stipulation Category: Mental Health (13)

**CGAR Category: Mental Health (C) 13**

| |
|---|
| **Performance Measure:** |
| MH-3D prisoners shall be seen by a mental health provider within 30 days of discontinuing medications. |
| **CGAR Question:** |
| Are MH-3D prisoners seen by a mental health provider within 30 days of discontinuing medications? |
| **Source of Records/Review:** |
| MH 3D Log (Randomized) |

**Methodology:**

- A random sample of 10 records is drawn from all MH-3D prisoners at each yard. ~~Ten (10) records (if available) with medication discontinuation follow-up contacts due in the monitored month will be selected for review at each yard.~~  If any of the inmates discontinued medications less than 30 days previously, that record is excluded and another record is randomly drawn.  This process is repeated until a total of ten records (if available) have been drawn.

- Review AIMS (DI85 screen) to determine when the inmate was designated MH 3D.

- Review eOMIS, in the Mental Health tab, for the contact by the psychiatric provider that officially discontinued the medications. A psychiatric contact may be documented in multiple electronic entries, including, but not limited to: scheduled psychiatry, unscheduled psychiatry, initial psychiatric evaluation, etc.  Also look under Drug Prescription Orders to confirm the date that the medications were officially discontinued.  This date is recorded on the spreadsheet.

- Review the medication discontinuation date and the subsequent follow-up date to ensure that the two contacts were no more than 30 days apart.  If they were 30 days or less apart, then it is coded as compliant.  If they were more than 30 days apart, then it is coded as non-compliant.

- If no follow-up contact occurred but should have, then it is coded as non-compliant.

- ~~If there are less than 10 records with a subsequent contact due in the monitored month,~~

**Formatted:** Font: (Default) Garamond, 12 pt, Condensed by  0.15 pt

**Formatted:** Font: (Default) Garamond, 12 pt, Condensed by  0.15 pt

1

**P E R F O R M A N C E   M E A S U R E S**

~~then the additional records reviewed under PM #86 will only record the date of the discontinuation and will be coded with a 0.~~

- If the medications were discontinued after February 2015, and the subsequent contact still has not occurred, then it is coded as noncompliant.

- If the inmate has not been on medications during this incarceration, then this record will not be used, as this is an incorrect subcode.  If this occurs, another record will be randomly drawn to replace the excluded record.

- If there is a gap in contacts, review the external Movement Screen in AIMS (DI24, Shift + F5) to determine whether the inmate was a new intake, out to court, out to hospital, or otherwise out of the facility.  (Or in eOMIS, from the Prison tab, click on the shortcuts "Population Tracking", and click on the link "External Movements" to view the inmate's movement).

Draft Revised: 8/25/17

**P E R F O R M A N C E   M E A S U R E S**

Health Care Performance Measure No. 86
Stipulation Category: Mental Health (14)

**CGAR Category: Mental Health (C) 14**

---

**Performance Measure:**

MH-3D prisoners shall be seen a minimum of every 90 days by a mental health clinician for a minimum of six months after discontinuing medication.

---

**CGAR Question:**

Are MH-3D prisoners seen a minimum of every 90 days by a mental health clinician for a minimum of six months after discontinuing medication?

---

**Source of Records/Review:**

~~Review the records for the same inmates reviewed for HC PM #85, and review additional records from the MH 3D Log (randomized) if there were not ten (10) records to review from HC PM #85.~~ See "Methodology," below.

---

**Methodology:**

~~All of the records from HC PM #85 will be reviewed for this PM.  If ten (10) records were not located for PM #85, then the required number of records will be reviewed from the MH 3D Log for this PM.~~ The final sample of 10 records used for Performance Measure 85 is the

- starting point for evaluating compliance with PerformanceMeasure 86. If the prisoner has been in ADC custody, or had their medications discontinued, for less than 90 days, that record is excluded from the sample and another record is randomly drawn. This process is repeated until a total of ten records (if available) have been drawn.

- Review AIMS (DI85 screen) to determine when the inmate was designated MH 3D.

- Review eOMIS to determine the medication discontinuation date.  This date is recorded on the spreadsheet.

- From the medication discontinuation date, look to see if there was a contact by a clinician within 90 days of that ~~first~~ date.  If this first contact was completed in 90 days or less from the medication discontinuation date, then it is coded as compliant.  If this contact was more than 90 days after the medication discontinuation date, then it is coded as non-compliant.

- ~~If the first follow up contact was not yet due in the monitored month, then "N/A" is~~

---

3

recorded and it is coded with a 0.

- If a second follow-up contact is due on during or before the last day of the monitored month, then the record is also reviewed to determine if this contact was completed within 90 days or less from the first follow-up contact. If it was completed within 90 days or less, then the record is coded as compliant. If it was completed more than 90 days from the first follow-up contact date, then the record is coded as non-compliant.

- If there are no contacts by a clinician, the record will be coded as non-compliant. If there is only one contact by a clinician, the record will be coded as non-compliant, unless that contact is no more than 90 days from both (1) the date the prisoner was admitted to ADC or the medications were discontinued, whichever is later, and (2) the last day of the monitored month. If both of these conditions are met, the record will be coded as "0" and not counted as either compliant or non-compliant.

- A contact may be documented in multiple electronic entries, including, but not limited to: individual contact, segregation visit (refusal or lockdown), treatment plan (with a clinical contact), scheduled sick call, unscheduled sick call, suicide watch (refusal, lockdown, or conducted in confidential setting), etc.

- If there is a gap in contacts, review the external Movement Screen in AIMS (DI24, Shift + F5) to determine whether the inmate was a new intake, out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the Prison tab, click on the shortcuts "Population Tracking", and click on the link "External Movements" to view the inmate's movement).

# EXHIBIT 9

# Exhibit B

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT



September 27, 2017

**BY ELECTRONIC MAIL ONLY**

Lucy Rand
Office of the Arizona Attorney General
1275 West Washington Street
Phoenix, AZ 85007-2926
Lucy.Rand@azag.gov

      **Re:**   *Parsons v. Ryan*

Dear Lucy:

To date, we have not received any response to the following supplemental document requests, propounded by Plaintiffs on July 17, 2017 and August 15, 2017:

**Request No. 50:**  The "list of heat-related medications [that] has been developed and distributed to all Facility Health Administrators" (See ADCM961516).

**Request No. 52:**  All documents reflecting the requirement that "except at non-corridor facilities, all suicide watches will be conducted by Behavioral Health clinical staff seven days per week" (see ADCM961584).

**Request No. 53:**  The Draft DI pertaining to the Transitional Housing Unit at ASPC-Tucson (see ADCM961584).

**Request No. 54:**  All documents reflecting the planned "population management - bed changes" set forth in the May 26, 2017 memorandum from Stacey Crabtree to Charles Ryan (see ADCM961594-98).

**Request No. 55:**  All agendas and minutes for Director's Meetings (also known as ADC & Corizon Bi-Weekly Meetings) from January 1, 2017 to the present (agendas for 5/2/17, 5/15/17, and 6/6/17 have been produced and need not be re-produced).

**Request No. 56:**  All versions, whether final or in draft form, of the Mental Health Technical Manual or equivalent document dated June 19, 2015 or later.

**Request No. 57:**  All documents reflecting the implementation of telemedicine utilization with the University of Arizona (see ADCM961471) and the Arizona Health Information Exchange Access Portal (AZHIE) (see ADCM961472).

AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC.
PRACTICE LIMITED TO
FEDERAL COURTS

**Request No. 58:**  All documents reflecting the implementation of the Offline MAR (oMAR) (See ADCM961473).

**Request No. 61:**  Draft (or final) Standard Operating Procedure for Medication Management and Administration During Intra-System Transfers (See ADCM961582).

**Request No. 62:**  Any documents relating to the system-wide and/or institution-wide discontinuation of Gabapentin (neurontin) or Tramadol as pain medications, including instructions or directives given to prescribing providers, and protocols for tapering patients off the medication.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

**Request No. 67:**  All documents reflecting (1) the rejection by Dr. Malachinski, or by any other person, of patients for housing at ASPC-Phoenix based on alleged noncompliance with CGAR measures; and (2) any disciplinary or corrective action taken against Dr. Malachinski or any other person for this behavior. See RP230000025.0001-0004. [Requested 8/15/17]

Furthermore, your response is incomplete or otherwise deficient as to the following supplemental document requests:

**Standing Request No. 1:**  The monthly staffing reports and weekly staffing schedules for each prison for the month of [ ] used to monitor compliance with Stipulation Performance Measures # 1-4 (Staffing Measures # 1-4 in the CGAR).

As stated in Corene Kendrick's September 26, 2017 email to Tim Bojanowski, Defendants have not yet produced the August 2017 statewide staffing report. Attached as Exhibit 1 is a copy of the September 26, 2017 email.

**Standing Request No. 2:**  The monthly CQI meeting minutes for each prison to the present, used to monitor compliance with PM # 27.

Defendants have not yet produced the August 2017 meeting minutes.

**Request No. 51:**  The "Heat Intolerance Log" for all ten state-operated ADC prisons from Jan. 1,  2017 to present [07/17/17] (See ADCM961516).

In response to this request, Defendants produced a "Heat Reaction List" for Perryville for February – July 2017.  Additionally, prior to Plaintiffs submitting this request, Defendants produced a list of patients at the Phoenix facility, who were on medications that made them sensitive to heat, as of June

2

1, 2017, and a Statewide "Heat Intolerance Reaction Log" for November 2016 – April 2017.   Therefore, with the exception of Perryville, Defendants have failed to provide this information for the critical summer months.

**Request No. 63:**  Any documents, emails, communications, plans (draft or final) relating to the conversion of maximum custody units to close custody units (See, e.g., ADCM961594).

Defendants have failed to produce any documents related to the Tucson facility and produced only a handful of documents relating to the Lewis-Rast and Florence-Central facilities.  Moreover, while Defendants did produce documentation for the Perryville unit, many of these documents, namely the "Correctional Service Logs," were so heavily redacted so to contain almost no useful information.  Amy Fettig emailed Rachel Love on September 19, 2017 concerning these deficiencies.  Attached as Exhibit 2 is the September 19, 2017 email.

**Request No. 64:**  Temperature Logs from 06/01/2017 to present for all prison complexes. [07/14/17].

As discussed during the September 11-13 hearings, Defendants have failed to produce a complete set of temperature logs for each of the ten facilities.  A detailed listing of which temperature logs are still outstanding can be found in the excerpted pages of the annotated Declaration of David Fathi, attached here as Exhibit 3.  In addition, as directed by the Court (9/12/17 Tr. at 179), this production must be updated with temperature logs from August and September.

We request a response to this letter by October 3, so that we can raise any remaining issues with the Court on October 5.

Very truly yours,

David C. Fathi

Cc: All counsel

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

# EXHIBIT 1

| From: | Corene Kendrick |
|---|---|
| To: | Tim Bojanowski; Rachel Love; Dan Struck; Ashlee Fletcher; Kevin Hanger; Nick Acedo; Elaine Percevecz; Lucy Rand; Ybarra, Griselda; Michael E. Gottfried |
| Cc: | Don Specter; Alison Hardy; Rita Lomio; Sarah Hopkins; David Fathi; Amy Fettig; Victoria Lopez; Jennifer Onka; Kirstin Eidenbach; Maya Abela; Kathy Brody |
| Subject: | Parsons: ASPC-Florence - new FTE nursing positions |
| Date: | Tuesday, September 26, 2017 6:29:15 PM |

Tim,

At the September 12, 2017 status hearing, you noted that one of the remedial plans for ASPC-Florence for PM 11 was that Corizon had hired 15 new nurses – five LPNs and 10 RNs – to increase compliance with the measure. *See* 9/12/17 Transcript at 7:15-16. This led to a long discussion with the Court about whether these were newly created additional FTE positions, or filling vacancies. *See id.* at 7:22-8:13, 24:18-26:11, 34:16-35:5.

Judge Duncan asked me to review the staffing reports and see if I could determine if these positions were new FTEs or simply filling vacancies. At the hearing, we only had the May and June staffing reports, which showed no change in the contracted FTE positions for RNs and LPNs at Florence. Judge Duncan ordered Defendants to provide us the July report, which Lucy sent to us later that day, and it showed no change in the contracted FTE positions (16.4 RN and 24.4 LPN). My office has no record of receiving the August 2017 staffing report from your office or the Attorney General's Office.

Judge Duncan directed me to serve an interrogatory on you asking for the staffing numbers and then report back to him on whether this was an increase in FTEs. 9/12/17 Transcript at 35:1-5. Rather than go through that formality, I am writing you to request (a) that you provide us the August 2017 statewide staffing report as soon as possible, and (b) that confirm no later than Friday that Corizon has not created any new FTE nursing positions at Florence.

Thanks,

Corene

Corene Kendrick, Staff Attorney
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, CA 94710
510.280.2621
ckendrick@prisonlaw.com

# EXHIBIT 2

| From: | Amy Fettig |
|---|---|
| To: | Rachel Love (RLove@strucklove.com); Elaine Percevecz (EPercevecz@strucklove.com); Tim Bojanowski; Dan Struck; Lucy Rand |
| Cc: | David Fathi; Corene Kendrick; Kirstin Eidenbach (kirstin@eidenbachlaw.com); Maya Abela; Jennifer Onka |
| Subject: | Parsons v. Ryan - Close Custody |
| Date: | Tuesday, September 19, 2017 4:47:35 PM |

Dear Rachel,

I'm writing to follow-up on our filing with the Court regarding close custody in June (Doc. 2102). Specifically, I'm hoping you can update me on the progress of the pilot project Defendants' proposed for Florence/Central. Also, while Defendants produced some records for Perryville we are still waiting for any production of the Florence/Central and Tucson documents. Can you give me a timeframe for that production?

Finally, I'd like to touch base with you on the production of the Perryville unit logs. Frankly, there's so much blacked out for "security reasons" that it looks like more of a maximum security unit than I expected – if you just go with the minimal information discernible. I'm certainly hoping this is not the case generally so it would be helpful to discuss how more useful information might be obtained here.

Thank you.

Amy

**Amy Fettig**
**Deputy Director, ACLU National Prison Project**
**Director, *Stop Solitary* Campaign**
**915 15th Street, NW 7th Floor**
**Washington, DC 20005**
**202-548-6608**
afettig@aclu.org
**@abfettig**

-

# EXHIBIT 3

1       7.     The Court has ordered Defendants to produce temperature logs from all

2   facilities from June 1, 2017 to the present.   [8/9/17 Tr. at 84:21-86:2; Doc. 2236 at 2]

3   Attached hereto as **Exhibit 4** are August 16, August 26, and August 31, 2017 emails from

4   Lucy Rand to Plaintiffs, attaching temperature logs.

5       8.     Upon receiving these logs, I instructed a paralegal and interns to review

6   them under my supervision.   The findings are set forth below.

7   **Missing temperature readings**

8       9.     On August 18, 2017, I sent an email to Lucy Rand, inquiring about

9   temperature data that was missing from Defendants' production.   On August 31, 2017,

10   Ms. Rand responded that "[a]ny data not provided does not exist."   A copy of this email

11   exchange is attached hereto as **Exhibit 5**.   Based upon Ms. Rand's representation, it

12   appears that Defendants did not take temperature readings for the following facilities and

13   dates:

14       Eyman-Browning:  No indoor temperatures taken June 1 – July 18, 2017.

15       Eyman-Rynning:  No indoor temperatures taken June 1 – July 19, 2017; no

16       outdoor temperatures taken after July 19, 2017.

17       Florence-East:  No temperature logs produced June 1 – July 17, 2017.

18       Florence-Globe:  No temperature logs produced June 1 – July 18, 2017.

19       Florence-North:  No temperature logs produced June 1 – July 18, 2017.

20       Florence-South:  No temperature logs produced June 1 – July 18, 2017.

21       Lewis-Eagle Point:  No temperature logs produced.

22       Lewis-Sunrise:  No temperature logs produced.

23       Perryville-Special Management:  No temperature logs produced.

24       Perryville-Women's Treatment Unit:  No temperature logs produced.

~~25       ASPC-Phoenix, all units:  No temperature logs produced.~~

25       Phoenix-B Ward:  No temperature logs produced.

26       Phoenix-Inmate Worker:  No temperature logs produced.

2627       Safford-Miles:  No temperature logs produced.

2728       ~~Tucson-Rincon:  No temperature logs produced.~~

2829       Winslow-Coronado:  No temperature logs produced June 1- July 18, 2017.

**Formatted:** Not Expanded by / Condensed by

**Formatted:** Not Expanded by / Condensed by

1        Winslow-Kaibab:  No temperature logs produced June 1 – July 18, 2017.

2        Yuma-Cheyenne:  No temperature logs produced.

3        Yuma-Cibola:  No temperature logs produced.

4        Yuma-Dakota:  No temperature logs produced.

5        Yuma-La Paz:  No temperature logs produced.

**Produced logs for 5 Yuma units, but cannot verify which units the logs are for as the logs do not specify the unit.  For one of units, produced logs from June 1, 2017 – August 9, 2017, but all of inside temperatures were "N/A."

10.    In addition, many of the logs Defendants did produce are partially or entirely blank.  Attached hereto as **Exhibit 6** is a sampling of such logs.  [*See, e.g.,* ADCM999580 (Lewis – all entries read "no report"); ADCM999866 (Tucson – "temps. Not taken – thermometer not working"); ADCM1002265 (Perryville – all entries blank); ADCM1002350 (Perryville – all entries read "no data available"); ADCM1004081 (Eyman – all entries blank; "temperature checks at this time were not required prior to 8/01/2017");  ADCM1004146  (Florence  –  "no  data  available  for  this  date"); ADCM1004380 (Winslow – all entries blank)]

**Obviously incorrect temperature readings**

11.    Many of the logs Defendants produced include temperature readings that are obviously incorrect.  Attached hereto as **Exhibit 7** is a sampling of such logs.  [*See, e.g.,* ADCM999508 (Douglas – recording temperature of 983 degrees); ADCM1003894 (Eyman – temperatures of 7, 8, and 9 degrees); ADCM1004161 (Florence – temperatures of 8902, 392.36, and 897.9 degrees)]

**Fabricated temperature readings**

12.    Attached  hereto  as  **Exhibit  8**  are  documents  Bates  stamped ADCM1003262-291.  These documents purport to be temperature readings from Perryville-Santa Maria Unit for August 26-31, 2017; they were produced by Defendants to Plaintiffs on August 25, 2017, as part of a larger set of temperature readings from that unit.  [*See* Exhibit 4 (email from Lucy Rand to Plaintiffs' counsel dated August 26, 2017, 12:30 a.m. EDT (August 25, 2017, 9:30 p.m. Arizona time))]  I personally examined these

Exhibit C

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT



October 2, 2017

**BY ELECTRONIC MAIL ONLY**

Lucy Rand
Office of the Arizona Attorney General
1275 West Washington Street
Phoenix, AZ 85007-2926
Lucy.Rand@azag.gov

      Re:    *Parsons v. Ryan*

Dear Lucy,

AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
*ATTORNEY AT LAW\**

*\*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS*

Thank you for the declarations you produced on September 29, 2017, pertaining to Plaintiffs' document Request No. 15: "All documents reflecting, discussing, or establishing policies and/or practices related to Defendants' 'open clinic concept' [See Defs' Proposed Agenda for 12/14/16 Status Conference] and documents sufficient to show its implementation and compliance with the Court's Nov. 10, 2016 Order." (ADCM 1033352-93). We have the following comments and questions:

1. Please explain what is meant by the phrase "I am employed by the Arizona Department of Corrections and am the at ASPC-Monitor," which appears in the declarations of Erin Barlund and Jeanne Chastain.

2. The declaration of Karen Chu is not dated; please provide a version that is both signed and dated.

3. Please produce all of the documents provided to Defendants' counsel by declarants Barlund, Briddle, Campbell, Chastain, Chu, Curran, Currier, Hacker Agnew, Haldane, Headstream, Maese, Medel, Mielke-Fontaine, Mitchell, Moody, Muse, Pearson, Reese, Roberts, Valenzuela, and Winland. In the alternative, please confirm that all of these documents have already been produced to Plaintiffs.

4. Finally, your production is unfortunately not complete. The declarations you have produced pertain only to Plaintiffs' Request No. 15. On July 10, 2017, you forwarded to the Court and Plaintiffs a June 30, 2017 email you had sent to various Corizon and ADC staff, along with a boilerplate declaration; these documents are attached hereto as Exhibit 1. As you will see, your email requested documents responsive to Plaintiffs' Requests No. 18 and 19, and the boilerplate declaration addressed documents responsive to those requests.

We have never received any of these declarations completed by Corizon or ADC staff.  Please produce these declarations, and any documents responsive to Requests No. 18 and 19, without further delay.

Thank you very much.

Very truly yours,

David C. Fathi

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Cc: All counsel

2

EXHIBIT 1

## David Fathi

| | |
|---|---|
| **From:** | Rand, Lucy <Lucy.Rand@azag.gov> |
| **Sent:** | Monday, July 10, 2017 6:07 PM |
| **To:** | David Fathi; duncan_chambers@azd.uscourts.gov |
| **Cc:** | 'dspecter@prisonlaw.com'; 'ckendrick@prisonlaw.com'; 'kirstin@eidenbachlaw.com'; Amy Fettig; 'ahardy@prisonlaw.com'; 'snorman@prisonlaw.com'; Jamelia Morgan; 'rlomio@prisonlaw.com'; 'skader@azdisabilitylaw.org'; 'mabela@azdisabilitylaw.org'; Kathy Brody; 'Rpratt@azcorrections.gov'; 'bkeogh@azcorrections.gov'; 'ntaylor@azcorrections.gov'; Gottfried, Michael; 'dstruck@swlfirm.com'; 'tbojanowski@swlfirm.com'; 'EPercevecz@swlfirm.com'; 'rlove@swlfirm.com'; 'afletcher@swlfirm.com'; 'AOrcutt@swlfirm.com'; Jennifer Onka; 'megan@prisonlaw.com'; 'sarah@prisonlaw.com' |
| **Subject:** | PARSONS v. RYAN, USDC CV12-00601 - LMS12-0152 |
| **Attachments:** | Req. ##18 & 19: Docs. re: Performance Measure Monitoring - PARSONS v. RYAN |

Mr. Fathi and Judge Duncan,

Pursuant to the Court's order during the July 10, 2017, discovery hearing, attached hereto is the email Defendants sent regarding Plaintiffs' request for production ##18 and 19.

Thank you.



**Lucy M. Rand, Assistant Attorney General**
ARIZONA ATTORNEY GENERAL'S OFFICE
SGD / LMS / Department of Corrections Unit
1275 W. Washington St., Phoenix, AZ 85007-2926
**Direct: 602.542.7683**
**Secretary:** 602.542.2470 Griselda Ybarra
Receptionist: 602.542.1610
Lucy.Rand@azag.gov

NOTICE:  This e-mail, including attachment(s), is the property of the Office of the Arizona Attorney General and contains information that may be PRIVILEGED, CONFIDENTIAL, or otherwise exempt from disclosure by law.  It is intended only for the recipients to whom it is addressed.  If you receive this communication in error, immediately notify the sender at the e-mail address shown above or call (602) 542-2470, and delete the original message.  Thank you.

## David Fathi

| | |
|---|---|
| **From:** | Rand, Lucy <Lucy.Rand@azag.gov> |
| **Sent:** | Friday, June 30, 2017 10:43 PM |
| **To:** | 'Chris.Tucker@Corizonhealth.com'; 'Cole, Lynn (Lynn.Cole@CorizonHealth.com)'; 'Lynn.Calcote@corizonhealth.com' |
| **Cc:** | 'rhonda.almanza@corizonhealth.com'; 'Jennifer.Finger@Corizonhealth.com'; 'RPratt@azcorrections.gov'; 'NTaylor@azcorrections.gov'; 'tbojanowski@swlfirm.com'; 'dstruck@swlfirm.com'; 'EPercevecz@swlfirm.com'; 'Orcutt, Anne (aorcutt@swlfirm.com)'; Gottfried, Michael; MacPherson, Scott |
| **Subject:** | Req. ##18 & 19: Docs. re: Performance Measure Monitoring - PARSONS v. RYAN |
| **Attachments:** | PHX-#6052250-v1-PARSONS_(12-0152)_DECLARATION_RE_PERFORMANCE_MEASURE_MONITORING.DOCX |
| **Importance:** | High |

Hi all,

The Court has ordered the production of documents responsive to Plaintiffs' request below:

> **Request #18: Compliance with the Court's Orders:**
> All documents reflecting, discussing, or establishing policies and/or practices related to Defendants' compliance with the Court's Nov. 10, 2016 Order, with regard to the nine performance measures to which the order is applicable, and documents sufficient to show the implementation and compliance with the Order; and,
>
> **Request #19: Compliance with the Court's Orders:**
> All written direction or instructions, including all training materials, provided to ADC or Corizon staff regarding compliance with the Court's orders on monitoring methodology, including but not limited to Doc. 1673, 1745, 1754, 1831, 1833, and 1915.

1. Please conduct a search to locate any documents responsive to the above requests for documentation.  If you already provided documentation, please search again for documentation not already produced or documentation created since the last time you produced documents.

2. Attached hereto, is a draft declaration.  Each person who conducts this search must sign and return the declaration, regardless of whether documents are found and returned, so please ensure that your search for these documents is <u>thorough</u> and <u>exhaustive</u>.  Please customize the declaration as necessary.

**Please provide all documentation by Wednesday, July 12, 2017.**

Thank you.



**Lucy M. Rand, Assistant Attorney General**
ARIZONA ATTORNEY GENERAL'S OFFICE
SGD / LMS / Department of Corrections Unit
1275 W. Washington St., Phoenix, AZ 85007-2926
**Direct: 602.542.7683**
**Secretary:** 602.542.2470 Griselda Ybarra
Receptionist: 602.542.1610
Lucy.Rand@azag.gov

MARK BRNOVICH
ATTORNEY GENERAL

Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone:   (602) 542-1610
Fax:            (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Kathleen L. Wieneke, Bar No. 011139
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 22126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Anne M. Orcutt, Bar No. 029387
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:   (480) 420-1600
Fax:            (480) 420-1696
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
khanger@swlfirm.com
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>                                        Plaintiffs,<br><br>            v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>                                        Defendants. | No. CV12-00601-PHX-DKD<br><br>**DECLARATION OF**<br><br>_____ |

#6052250

I, _____, declare under penalty of perjury that the following information is true to the best of my information, knowledge, and belief:

1.     I am over the age of 18 years and am competent to testify to, and have personal knowledge of, the matters set forth in this Declaration.

2.     I am employed by the Arizona Department of Corrections and am the _____ for ASPC-_____.

3.     If called as a witness, I could testify competently to the facts stated herein.

4.     I received a request for documents as follows:

All documents reflecting, discussing, or establishing policies and/or practices related to Defendants' compliance with the Court's Nov. 10, 2016 Order, with regard to the nine performance measures to which the order is applicable, and documents sufficient to show the implementation and compliance with the Order;

and,

All written direction or instructions, including all training materials, provided to ADC or Corizon staff regarding compliance with the Court's orders on monitoring methodology, including but not limited to Doc. 1673, 1745, 1754, 1831, 1833, and 1915.

5.     After conducting a diligent search and/or causing my staff to conduct a diligent search, I verify that I reviewed copies of the responsive documents and that all responsive documents, if any, were provided to defense counsel on July _____, 2017.

6.     To the best of my knowledge, as of the date of this Declaration, I produced all responsive documents to defense counsel.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON this ____ day of July, 2017.

_____

#6052250                                        2

Exhibit D



LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT

October 4, 2017

**BY ELECTRONIC MAIL ONLY**

Timothy J. Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com

      ***Re:    Parsons v. Ryan***

Dear Tim:

In addition to the overdue document production we have previously brought to
Defendants' attention (see our letters of September 27 and October 2, 2017), it
has come to our attention that the following documents whose production
Judge Duncan ordered during the September 12 hearing have not yet been
produced:

AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

      -PowerPoint used to train staff on Performance Measure 52 (9/12/17
      Tr. at 97:5-11)

      -Identity of all patients transferred due to a heat intolerance reaction
      pursuant to Paragraph 15 of the Stipulation (Doc. 2317 at 3; 9/12/17 Tr.
      at 178:3-22).

In addition, during our meet and confer on September 22, you agreed to
produce the joint defense agreement between ADC and Corizon.

Please let us know if you will produce these documents in advance of the
October 11 hearing.

Very truly yours,

David C. Fathi

Cc:    All counsel