**EXHIBIT 1**

**EXHIBIT 1**

1   Arizona Attorney General Mark Brnovich
    Office of the Attorney General
2   Michael E. Gottfried, Bar No. 010623
    Lucy M. Rand, Bar No. 026919
3   Assistant Attorneys General
    1275 W. Washington Street
4   Phoenix, Arizona 85007-2926
    Telephone: (602) 542-4951
5   Fax: (602) 542-7670
    Michael.Gottfried@azag.gov
6   Lucy.Rand@azag.gov

7   Daniel P. Struck, Bar No. 012377
    Rachel Love, Bar No. 019881
8   Timothy J. Bojanowski, Bar No. 022126
    Nicholas D. Acedo, Bar No. 021644
9   Ashlee B. Fletcher, Bar No. 028874
    Jacob B. Lee, Bar No. 030371
10  Kevin R. Hanger, Bar No. 027346
    Timothy M. Ray, Bar No. 029191
11  Richard M. Valenti, Bar No. 031533
    Jamie D. Guzman, Bar No. 022095
12  STRUCK LOVE BOJANOWSKI & ACEDO, PLC
    3100 West Ray Road, Suite 300
13  Chandler, Arizona  85226
    Telephone:  (480) 420-1600
14  Fax:  (480) 420-1696
    dstruck@strucklove.com
15  rlove@strucklove.com
    tbojanowski@strucklove.com
16  nacedo@strucklove.com
    afletcher@strucklove.com
17  jlee@strucklove.com
    khanger@strucklove.com
18  tray@strucklove.com
    rvalenti@strucklove.com
19  jguzman@strucklove.com
    *Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DKD<br><br><br><br>**DECLARATION OF RICHARD PRATT** |

I, **RICHARD PRATT**, make the following Declaration:

1. I am over the age of 18 years and have personal knowledge of and am competent to testify to the matters set forth in this Declaration.

2. I have been working with the Arizona Department of Corrections ("ADC") since July 2000, not including from October 2009 to July 2011, when I was employed elsewhere.

3. In February 2012, I was appointed Interim Assistant Director of ADC's Health Services Contract Monitoring Bureau ("HSCMB") following Dr. Michael Adu-Tutu's retirement. When Health Services was privatized in July 2012, my title was adjusted to be the Interim Assistant Director of ADC's HSCMB.

4. When Arthur Gross was hired to be the Assistant Director in October 2012, my position changed to Program Evaluation Administrator.

5. I was placed under a temporary special assignment as the Interim Assistant Director on March 1, 2014, when Mr. Gross retired.

6. I was named Assistant Director on August 2, 2014.

7. As Assistant Director, I am responsible for providing managerial oversight and direction to the HSCMB to monitor the contracted vendor's compliance with all aspects of the health services contract. I am also responsible for reviewing and responding to internal and external inquiries pertaining to compliance issues, contract specifications, reports, inspections, staffing levels, and legal mandates of inmate healthcare, mental health care, and dental care services.

8. I am familiar with ADC's policies and practices pertaining to healthcare, including medical care, dental care, and mental health care, the privatization of ADC healthcare, ADC's contract with Corizon, Corizon's responsibilities under that contract, and the HSCMB's monitoring of Corizon's care to ADC inmates.

9. I am personally familiar with the *Parsons* litigation, the resulting Stipulation, and the monitoring and reporting of the health care performance measures (HCPMs) in the Stipulation.

10. As Assistant Director of the HSCMB and a named Defendant in this case, I was closely involved in the negotiations between the parties that ultimately resulted in settlement of the lawsuit through the signing of a Stipulation.

11. In agreeing to the terms of the Stipulation on behalf of ADC, I understood that the HSCMB would be responsible for monitoring the healthcare performance measures as stated in Exhibit B to the Stipulation using the specific protocols set forth in Exhibit C to the Stipulation.

12. HCPM 35 states that "[a]ll inmate medications (KOP and DOT) will be transferred with and provided to the inmate or otherwise provided at the receiving prison without interruption." Doc. 1185-1 at 10. The Stipulation protocol for this measure provides that Defendants must randomly select and review 10 records per yard per month.

13. Complying with the Court's October 10, 2017 Order for HCPM 35 will require reviewing all intersystem transfers at ADC daily, individually searching for and reviewing each inmate's medical file in eOMIS to determine whether the inmate was prescribed medications, and reviewing eOMIS and paper Medication Administration Records (MARs) to determine if the inmate was provided his or her medications upon transfer.

14. ADC has no centralized report by inmate name and number of all intersystem inmate transfers, so determining the necessary information on transfers to comply with the Court's Order will require obtaining and reviewing daily transfer reports from each individual complex.

15. There are about 90,000 transfers of ADC inmates per year statewide, meaning that in an average month, there will be at least 7,000 to 8,000 inmate transfers. Of these, approximately 1,000 are intersystem transfers (versus intrasystem transfers where an inmate moves within a complex).

2

1    16.    The Court's Order requires reviewing *all* transfers to Eyman, Florence, Lewis, and Tucson, which make up the vast majority of the intersystem transfers throughout the ADC system.

    17.    I estimate that my staff will have to individually review at least 700 inmate charts in eOMIS to determine which of the transferred inmates were prescribed medications and are therefore applicable for HCPM 35.

    18.    Under the Stipulation methodology of randomly selecting 10 charts per yard, it takes my staff approximately one hour per yard to monitor HCPM 35 each month. Employing the Stipulation methodology for HCPM 35 at the four facilities subject to the Court's Order—Eyman, Florence, Lewis, and Tucson—will take over 20 hours.

    19.    Monitoring 100% of applicable inmates for HCPM 35 could easily take three times that long.

    20.    HCPM 46 requires that a medical provider review diagnostic reports and act upon reports with abnormal values within five calendar days of receipt.

    21.    The Court's Order applies to Eyman, Florence, Perryville, and Tucson, which will receive the vast majority of the diagnostic reports statewide in any given month.

    22.    It takes my staff about an hour per yard to monitor 10 randomly selected applicable charts for HCPM 46.

    23.    As previously reported to the Court in response to the Court's Sanctions Order (Doc. 2124), in a typical month, there are approximately 300 x-rays and 5,000 labs taken at the seven complexes that were subject to the Court's Sanctions Order. To comply with the Court's Show Cause Order, my staff would have to review thousands of diagnostic reports at the four applicable complexes to determine which have abnormal values and whether a provider acted upon them within five calendar days.

    24.    HCPM 66 requires that a medical provider conduct rounds a minimum of every 72 hours in an IPC.

    25.    The Court's Order applies to HCPM 66 at Florence, Lewis, and Tucson.

3

26. The number of inmates at each IPC will fluctuate from day to day depending on inmate needs, acuity levels, and hospital transfers. The bed capacity is 57 at Florence, 66 at Tucson, and 13 at Lewis.

27. It takes my staff of more than 30 an entire month to complete their monthly CGAR monitoring duties as set out in the Stipulation protocols.

28. If my staff have to monitor 100% of applicable inmates for the eleven performance measures subject to the Court's October 10, 2017 Order and report the results by January 5, 2018, they will be unable to complete their regularly monthly monitoring duties, and the CGAR reports will be delayed.

29. ADC does not have the capability to provide the level of reporting by January 5, 2018 as required by the Court's October 10, 2017 Order.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24TH day of October, 2017.

_____
RICHARD PRATT

4