Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
Timothy M. Ray, Bar No. 029191
Richard M. Valenti, Bar No. 031533
Jamie D. Guzman, Bar No. 022095
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
afletcher@strucklove.com
jlee@strucklove.com
khanger@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DKD<br><br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS (DKT. 2276)**<br><br>**ORAL ARGUMENT REQUESTED** |

## I.    INTRODUCTION

The Stipulation imposes specific limitations on the attorneys' fees the Court may award Plaintiffs.  Paragraph 44 caps the amount of fees for work reasonably performed to *monitor* the Stipulation at $250,000.[1]  Not subject to that cap, however, are reasonable fees for work performed to *enforce* the Stipulation.  (Dkt. 1185 at ¶43.)  But even those fees are limited: (1) Plaintiffs must prevail on the particular dispute ultimately enforced; and (2) "the hourly rate of attorneys' fees is governed by 42 U.S.C. § 1997e(d)."  (Id.)  Plaintiffs' Motion for Attorneys' Fees and Costs do not distinguish between fees incurred in monitoring the Stipulation and fees incurred in (and prevailing on) enforcing the Stipulation.  And their time entries make it virtually impossible for Defendants (and the Court) to determine which category they fall under.[2]  The Court should deny their Motion in its entirety for that reason alone, and order Plaintiffs to re-file any request (should they want to) with sufficient detail.[3]

## II.    PLAINTIFFS' COUNSEL HAS FAILED TO ESTABLISH THEY ARE ENTITLED TO FEES UNDER PARAGRAPH 43 OF THE STIPULATION

The Stipulation provides:

> 43.    In the event that Plaintiffs move to enforce any aspect of this Stipulation and the Plaintiffs are the prevailing party with respect to the dispute, the Defendants agree that they will pay reasonable attorneys' fees and costs, including expert costs, to be determined by the Court. The parties agree that the hourly rate of attorneys' fees is governed by 42 U.S.C. § 1997e(d).

---

[1] To date, Defendants have paid Plaintiffs' counsel $645,617.58 for their monitoring efforts.  *See* Exhibit 1 (Declaration of Amy Landry) at ¶6.

[2] Prior to filing their Motion, Plaintiffs' counsel provided Defendants' counsel the bills for which they sought recovery. After reviewing the time entries, Defendants' counsel requested Plaintiffs' counsel to provide further clarity and edit them to reflect sufficient detail so that Defendants and the Court can determine whether it was time spent monitoring or time spent enforcing the Stipulation (and, if so, whether Plaintiffs prevailed on their motion to enforce).  Plaintiffs' counsel refused and instead filed this Motion with the same time entries attached, as well as six months of additional time entries that suffer from the same defects.  *See* Exhibit 2 (Declaration of Daniel Struck) at ¶¶3 – 17.

[3] Plaintiffs' claim that they seek fees only for the enforcement of the Health Care Performance Measures is incorrect as many of the entries attached to their Motion are specific to maximum custody.  *See e.g.*, (Dkt. 2278 at 69; 2277-4 at 30).

1

44.     Plaintiffs' counsel shall be compensated for work reasonably performed or costs incurred to monitor or enforce the relief set forth in this Stipulation up to $250,000 per calendar year. In exchange for Plaintiffs' agreement to a cap on the amount of fees, Defendants shall not dispute the amount sought unless there is an obvious reason to believe that the work was unreasonable or the bill is incorrect. … This limitation on fees and costs shall not apply to any work performed in mediating disputes before the Magistrate pursuant to paragraphs 22, 29, and 31 above, or to any work performed before the District Court to enforce or defend this Stipulation.

Thus, to recover fees beyond Paragraph 44's annual cap, Plaintiffs must establish two things:  (1) that they *moved to enforce* an aspect of the Stipulation; and (2) they prevailed *with respect to the dispute*.  (Dkt. 1185 at ¶43) (emphasis added).  Disregarding these specific requirements, Plaintiffs' Motion requests fees in excess of $1 million because, in their view, (1) *all* time they and their experts have billed is recoverable and (2) they have generally prevailed in the post-settlement phase of this litigation.  Such generic claims fall woefully short of Paragraph 43's requirements.

### A.     Plaintiffs' Time Entries Fail To Reveal Whether the Time was Spent Enforcing the Stipulation

Under Paragraph 43, Plaintiffs' counsel may be compensated if they prevailed in moving to enforce the Stipulation. (Dkt. 1185 at ¶43). Paragraph 44 clarifies that this includes "any work performed in mediating disputes before the Magistrate pursuant to paragraph[] … 31 … or to any work performed before the District Court to enforce or defend this Stipulation."  Read together, this means work performed *outside* these two specific tasks, including work performed pursuant to Paragraph 30 (notice of substantial non-compliance) are considered monitoring activities that go towards the $250,000 fee cap, and cannot be recovered once that cap is reached in a calendar year.  The only way to determine which category a particular task falls under (monitoring or enforcement) is if the time entries delineate: (1) the task involved a motion to enforce; (2) the performance measure and facility sought to be enforced; and (3) the date of the enforcement motion.  None of Plaintiffs' time entries provide this detail.

**B.** **Plaintiffs' Time Entries Fail to Reveal Whether They Were the Prevailing Party With Respect to the Dispute They Moved to Enforce**

While Plaintiffs may be entitled to compensation for time associated with enforcing the Stipulation, Paragraph 43 only permits compensation if Plaintiffs were the prevailing party. This term is qualified in the Stipulation as, "the prevailing party *with respect to the dispute*." (Dkt. 1185 ¶ 43) (emphasis added). Therefore, in order to recover fees and costs under this section, Plaintiffs were required to include sufficient detail to determine whether they were ultimately the prevailing parties with respect to each time entry. None of Plaintiffs' time entries assist in determining whether they were the prevailing party with respect to the dispute moved on, and Plaintiffs have made no effort to revise the time entries to include this required information, despite Defendants' requests to do so. *See* Exhibit 2 at ¶19. As a result, it is impossible to determine whether Plaintiffs were the prevailing parties on any of the time entries they seek reimbursement for. This failure alone requires denial of Plaintiffs' Motion.

Because the parties defined "prevailing party" in the Stipulation, that definition controls. As such, Plaintiffs' citation to and reliance upon the "prevailing party" definition in 42 U.S.C. § 1988(b) and other cases, is misplaced, and should be disregarded by the Court as the parties' definition of "prevailing party" within the Stipulation is conclusive. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Muniz*, 19 Ariz. App. 5, 6, 504 P.2d 546, 548 (1972) ("While insurance contracts are construed most favorably to the insured where the meaning of the language is doubtful, such rule is inapplicable when the language is not doubtful and is defined within the contract itself. Therefore, we find that 'ownership' has been defined by the contract, and as such the terms of the contract exclude coverage"); *Schwab v. State Farm Fire & Cas. Co.*, 27 Ariz. App. 747, 751, 558 P.2d 942, 946 (1976) (same). [4] Further, the cases relied upon by Plaintiffs are distinguishable as, unlike those litigation cases, here the parties negotiated and bargained

---

[4] Plaintiffs must agree, as they cited to and relied upon this case law in in their Response to Defendants' Motion to Terminate Monitoring. (Dkt. 2344 at 12 – 13).

for specific compensation terms, including defining prevailing party to mean prevailing on individual enforcement disputes.

Instead of complying with the requirements of the Stipulation, or attempting to link their time entries to a dispute they prevailed on, Plaintiffs support their demand with sweeping claims that "they have repeatedly prevailed in enforcement motions; findings of non-compliance by this Court; and the relief repeatedly ordered." (Dkt. 2276 at 8 - 9).[5] But they fail to explain in their time entries which performance measures were found to be non-compliant, at which facilities, and in which motion to enforce.  Nor do they describe what "relief repeatedly ordered" they refer to.  Plaintiffs' justification for their failure is that "the hours spent on prosecuting the motions to enforce, evaluating Defendants' efforts to comply, and informing the Court of Defendants' continued non-compliance are essentially indistinguishable. . ." (Dkt. 2276 at 11).  This excuse for such lackadaisical entries lacks luster.  To the contrary, because each of Plaintiffs' Motions to Enforce details specific performance measures at specific facilities, and because each performance measure requires specific action, the time spent on each is easily distinguishable, traceable, and trackable.[6]  And Plaintiffs' argument that they need not "obtain every single aspect of relief they sought of the course of multiple motions to enforce and multiple findings of Defendants' non-compliance" flies in the face of Paragraph 43's requirements.

Plaintiffs' blanket demands and vague billing entries fail to explain which measures, facilities, and motions to enforce their billing entries are associated with.  Just as they did when Defendants requested additional detail, Plaintiffs refuse to reveal whether each time entry resulted in the Court finding Defendants in substantial non-compliance with the Stipulation – the only way Plaintiffs can "prevail" under the

---

[5] While Plaintiffs concede they have not prevailed on all relief requested (Dkt.2276 at 9), they fail to advise whether time entries regarding these failed efforts were removed from the fee demand, for failure to meet the requirements of Paragraph 43.

[6] In fact, Defense counsel captures their time in this fashion, as they must distinguish between maximum custody and medical performance measures for billing purposes. *See* Exhibit 2 at ¶22.

Stipulation: Because of Plaintiffs' counsel's careless approach, neither Defendants nor the Court can determine whether Plaintiffs' time entries were for enforcement of the Stipulation, or whether Plaintiffs were the prevailing party for each entry:[7]

For example:

**Prison Law Office**

11/10/2015 CK Phone call w/ Alison and Dr. Wilcox. 0.50

11/24/2015 DS review of lt to Lucy re videotapes. 0.20

12/10/2015 AH researched expert report. 1.40

12/18/2015 CK typed up notes from interviews for tour report. 1.50

1/22/2016 AH expert report. 3.70

2/16/2016 AH drafted motion to compel. 3.40

3/7/2016 AH drafted report. 4.00

3/31/2016 AN Cite check AZ motion. 0.50

4/4/2016 CK talk to DF re motion. 0.20

5/19/2016 CK research/help DF work on response to Defs' filing. 1.40

5/20/2016 DS review court order. 0.20

9/1/2016 CK worked on declaration. 0.30

12/5/2016 CK emails w/ oppo counsel. 0.20

12/6/2016 CK emails w/ oppo counsel. 0.20

12/15/2016 AH research expert report. 2.40

12/28/2016 CK draft confirming letter to Defendants. 0.40

4/13/2017 CK reviewed draft statement. 0.10

**ACLU**

3/15/2016 C. Regnier: Prepare expert report. 1.30

---

[7] And many of the entries are clearly associated with monitoring and are therefore not recoverable.

5/3/16 D. Fathi:  Final review of citation summary of notice of substantial noncompliance. .20

7/22/16 J Morgan:  Litigation team preparation call. .80

10/3/16 D. Fathi:  Draft notice of noncompliance. .40

10/18/16 D. Fathi:   Multiple emails with Corene regarding last week's discussions with defendants. .50

1/4/17 D. Fathi:   Begin drafting enforcement motion. 1.10

3/19/17 D. Fathi:  Review Defendants' Friday evening filings. .30

5/25/17 D. Fathi:   Review defendants' notices, Calcote declaration. .30

6/1/17 J. Morgan:  Inter section for fees brief. 2.00

**Kirstin Eidenbach**

02/10/2016 Research and outline settlement memorandum. 5.7

02/12/2016 Review documents re the same. 7.3

02/13/2016 Draft settlement memorandum. 6.3

04/04/2016 Review and revise motion papers. 5.2

09/02/2016 Review, and revise proposed order. 8.1

02/10/2016 Research and outline settlement memorandum. 5.7

02/12/2016 Research and outline settlement memorandum; review documents re the same. 7.3

02/13/2016 Draft settlement memorandum. 6.3

05/01/2016 Review and revise notices of substantial noncompliance; draft email correspondence regarding the same. 2.3

05/03/2016 Review and revise summation of notices of substantial noncompliance. 3.1

08/30/2016 Review and revise response brief. 3.1

09/12/2016 Review draft reply brief. 1.5

These exemplar entries fail to indicate which expert reports were drafted for which motion to enforce and whether Plaintiffs prevailed, what the reply/response briefs were and whether they were associated with a motion to enforce, which notices of non-

6

compliance they were working on and whether Plaintiffs prevailed, etc. While Defendants highlight these examples, Plaintiffs' bills are replete with (and almost entirely made up of) insufficient entries like those outlined above. As such, Plaintiffs Motion should be denied as they have failed to meet the requirements of Paragraph 43.

## C. It Cannot be Determined Whether Plaintiffs' Time Entries are Reasonable

Notwithstanding Plaintiffs' failure to meet the Stipulation's requirements for compensation of time under Paragraph 43, Plaintiffs' billing entries also fail to meet general fee applicant requirements. For example, Paragraph 43 only entitles Plaintiffs to *reasonable* fees and costs. (Dkt. 1185 at ¶43). But, Plaintiffs' careless billing entries foreclose on Defendants' and the Court's ability to make this determination. Plaintiffs' failure to meet this burden, further justifies denial of their Motion. *See Fitzgerald v. City of Los Angeles,* No. 03–1876, 2009 WL 960825, at *8 (C.D. Cal. Apr.7, 2009) (quoting *Smith v. Dist. of Columbia,* 466 F.Supp.2d 151, 158 (D.D.C. 2006)) ("[T]he fee applicant must provide 'sufficient detail' of its billing such that the court 'can evaluate what lawyers were doing and the reasonableness of the number of hours spent on those tasks.'"); *see also Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983) (holding the fee applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims").

Further, Plaintiffs' time entries suffer from the prohibited practice of "block billing." The Ninth Circuit defines block billing as "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro. Life Ins. Co*., 480 F.3d 942, 945 n.2 (9th Cir. 2007). Block billing "'renders it virtually impossible to break down hours,' leaving the court without the ability to accurately determine whether a reasonable amount of time was spent by counsel on a discrete task." *Bell v. Vista Unified Sch. Dist.,* 82 Cal.App.4th 672, 689 (2000); *see Welch,* 480 F.3d at 948 ("[B]lock billing makes it more difficult to determine how much time was spent on particular activities.");

*Bonner v. Fuji Photo Film*, C 06-04374 CRB, 2008 WL 410260, at *3  (N.D. Cal. Feb. 12, 2008).[8]

Moreover, Plaintiffs' counsel's conclusory statement that their fees are reasonable is contradicted by the type of fees requested. For example:[9]

**Prison Law Office**

> 2/29/16 DS phone calls w/press re mediation. .40
>
> 4/18/16 CK Talk to reporter re: enforcement motion and expert reports .80
>
> 4/29/16 CK Phone call w/reporter re enforcement motion. .30
>
> 12/5/16 SN Draft contempt motion. 1.50
>
> 1/13/17 DS Draft declaration in support of reply brief for mtn to modify stip. 1.00
>
> 5/1/17 DS Emails to co-counsel re Jensen motion. .50
>
> 5/5/17 AH Meeting with Ds and CK re Receiver, monitoring. .30
>
> 6/8/17 CK research on RFP for HC SVCS. 2.30.
>
> 6/21/17 Drafted, cite checked reply for Pl motion for Jensen. 4.80

Because Plaintiffs withdrew their Motion regarding Jensen's treatment, because Plaintiffs' motion to modify the Stipulation was denied, and because there has been no ruling on Plaintiffs' "contempt" motion regarding the allegations of retaliation at Tucson, none of these were "reasonably and necessarily spent . . . in enforcing the provision of the Stipulation in this case", as Don Specter attests in his declaration. (Dkt. 2278 at ¶7).

The Court is not required to engage in an hour-by-hour fee analysis of the fee request when presented with such a voluminous fee application, as the one here. *See Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).  Plaintiffs' faulty time entries should result in a denial of their Motion, for the reasons described above.  *See* Exhibit 2 at ¶19.

---

[8] Take, for example, these two entries from the Prison Law Office: 5/3/2017 CK worked on special master/monitoring brief. 13.10; 1/12/2017 MAB Research/draft reply to motion to modify. 10.20.

[9] Again, these entries are just examples of numerous billing entries that suffer from the same deficiencies.

(discussing why each of Plaintiffs' time entries are insufficient).   In the alternative, the Court should order Plaintiffs to re-file their fee request to include the requisite detail.[10]

### III.   PLAINTIFFS AGREED TO A FEE CAP ON ATTORNEYS FEES

Even if Plaintiffs could meet the strict requirements for compensation under Paragraph 43 (they cannot), their demand to be compensated at 2x the current rate for attorneys practicing in Washington D.C. and Berkeley, CA should be denied.

#### A.   Plaintiffs Bargained for an Hourly Cap on Their Fee Award

The parties bargained for and agreed to a cap on their hourly rate.  (Dkt. 1185 at ¶43) ("The parties agree that the hourly rate of attorneys' fees is governed by 42 U.S.C. § 1997e(d).").   And the plain language of § 1997e(d)(3) is clear.   In cases brought by an inmate "in which attorney's fees are authorized under section 1988," "*No* award of attorney's fees . . . shall be based on an hourly rate greater than 150 percent of the hourly rate established under [18 U.S.C. § 3006A] for payment of court-appointed counsel."   42 U.S.C. § 1997e(d)(1)–(3) (emphasis added).   In other words, by agreeing to the hourly rate prescribed by § 1997e(d), Plaintiffs' counsel agreed to cap their hourly rate at 150% of the CJA rate.   Furthermore, "simply because the PLRA sets a maximum rate does not mean that Plaintiffs are entitled to recover attorneys' fees at that rate."   *Plata v. Schwarzenegger*, C01-1351 TEH, 2009 WL 2997412, at *2 (N.D. Cal. Sept. 16, 2009). Plaintiffs bear the burden of demonstrating their requested fee award, including the claimed hourly rates, is reasonable.   *Id*. at *2.

##### 1.   Plaintiffs' Hourly Rate is Determined by Arizona CJA Rates

Plaintiffs seek compensation for billing entries captured from October 2015 – June 2017.   The CJA rate varied from 2015 – 2017.   *See* Exhibit 3 (CJA rates for Arizona attorneys).   From October 2015 – January 1, 2016, the rate was $127; from January 2, 2016 – May 4, 2017, the rate was $129; and from May 5, 2017 – current, the rate is $132.

---

[10] As Defendants previously advised Plaintiffs' counsel, if they resubmit their billing entries with the requisite detail, it is likely the parties will reach an agreement on fees, without Court intervention.

9

Thus, the highest rate Plaintiffs' counsel can recover, pursuant to § 1997e(d)(3), is:  $190; $193.50; and $198, respectively.[11]

Plaintiffs' demand to be compensated at the rates for Washington D.C. and Berkley, CA attorneys for a case they chose to bring in Arizona, should be rejected by the Court.  First, Plaintiffs dedicate all of one footnote to their demand they be compensated at these rates.  And the one case they cite in support belies their position.  In *Gates*, the court held that "rates, other than those of the forum, *may* be employed *if* local counsel was unavailable. . ." *Gates*, 987 F.2d at 1405 (emphasis added).[12]  Thus, under Plaintiffs' own (and only) authority, the decision to award rates other than the forum is only permitted (and is never required) if local counsel was unavailable.  But here, local counsel, Kirstin Eidenbach, was not only available, but appeared and actively participated in the litigation and post-settlement phase of this case.  Add to this, the **22** other local Arizona attorneys who made appearances:  Maya Abela (ACDL), James Ahlers (Perkins Coie), Jennifer Alewelt (ACDL), Daniel Barr (Perkins), Rose Daly-Rooney (ACDL), Asim Dietrich (ACDL), Cathleen Dooley (ACDL), Brenna Durkin (ACDL), Kirstin Eidenbach (Eidenbach), Kathy Flood (ASU Alumni Law Group), Amelia Gerlicher (Perkins), John Gray (Perkins), Sarah Kader (ACDL), James Lyall (ACLU AZ), Jerica Peters (Perkins), Daniel Pochoda (ACLU AZ), Jose Rico (ACDL), Jill Ripke (Perkins), Jessica Ross (ACDL), Thomas Ryerson (Perkins), Ruth Szanto (ACDL), Matthew du Mee (Perkins).  *See* Exhibit 4 (Pacer Attorney List).  What is more, Plaintiffs demand that Berkeley/Washington D.C. rates be applied not only to attorneys who practice in those areas, but to Ms. Eidenbach – a local Arizona attorney billing on a case brought in Arizona District Court.  This request defies common sense and is not supported by Plaintiffs' Motion or other legal authority.

---

[11] This inherent enhancement with § 1997e(d)(3) is an additional reason why the lodestar and multiplier do not apply.  *See infra,* Section IV.

[12] *See also Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) (attorney fee award based on rates of local forum, rather than rates of plaintiffs' counsel's place of business, was proper in civil rights case where district court found insufficient evidence that competent local counsel was unavailable).

Additionally, Kathleen Brody, the Legal Director of the ACLU of Arizona is counsel of record for Plaintiffs.  Ironically, she submits a declaration attesting to the alleged "unavailability" of local counsel. (Dkt. 2279)  And while Ms. Brody concludes, without more, that the ACLU of Arizona would not have brought this case, this bald allegation holds little weight when Ms. Brody's name is on the top of this case's caption. Add to this, Ms. Brody was not employed by the ACLU at the time the Parsons case was filed.  *See* Exhibit 5 (Brody Linkedin Profile).  The declaration from local attorney, Larry Hammond, is equally unpersuasive.  (Dkt. 2280).  He too claims local counsel is unavailable for class action prisoner litigation, yet concedes he is counsel of record in the long-standing class action against Maricopa County Jails in Arizona – *Graves v. Arpaio*. Because local counsel was not only available, but appeared and prosecuted the case, and because Plaintiffs have failed to establish otherwise, Plaintiffs are confined to Arizona's CJA rates.[13]

Moreover, paralegals are also subject to the attorney fee cap under the PLRA, and Plaintiffs carry the burden to determine the fee sought is reasonable. *Plata*, 2009 WL 2997412, at *2.  Unfortunately, Plaintiffs fail to provide any evidence as to the "prevailing market hourly rate for paralegals" in Arizona.[14]  As such, the Court must determine the reasonable paralegal rate based on the prevailing rates in the forum.  *See Progreso Produce Ltd 1 LP v. Triton Imports,* CV 08-04520 MMMAJWX, 2009 WL 1705609, at *2 (C.D. Cal. June 15, 2009) (citing *Moreno v. Empire City Subway Co.,* No. CV 05-7768(LMM)(HBP), 2008 WL 793605, *7 (S.D.N.Y. Mar. 26, 2008)).  Indeed, the only

---

[13] While Plaintiffs' counsel submits declarations of what their alleged rates are in other cases, "an attorneys' prior fee award is not sufficient without other evidence showing that the requested rates are prevailing in the community." *Barjon*, 132 F.3d at 502. "While an attorney's prior fee award may bear on the selection of a reasonable fee in a later case . . . simply offering the prior award is not enough." *Schwarz v. Secretary of Health & Human Services,* 73 F.3d 895, 908 (requiring additional proof that the requested rates are in line with other attorneys in the community of similar skill).  Regardless, such rates are irrelevant here where Plaintiffs agreed to an hourly rate cap.

[14] While Plaintiffs are not entitled to the rates in Washington D.C. and Berkeley, CA, as discussed below, Plaintiffs provide no evidence of the prevailing market rates for paralegals in these forums either.

authority on the prevailing market hourly rate for paralegals and law clerks is Defendants' rates. *See* Exhibit 2 at ¶20.  The Court should therefore adopt Defendants' rates and adjust Plaintiffs' fees accordingly.

### 2. **Any Fees Awarded to Plaintiffs are Subject to the Applicable Historical Rate**

Without citation to any legal authority, Plaintiffs applied the current CJA rate to all time entries, notwithstanding that most of the fees they seek are subject to lower, historical rates.  By doing this, "Plaintiffs affirmatively chose to argue [for] a fee award based solely on current rates . . . and did not provide any analysis for a few award based on historic rates."  *Hiken v. Dep't of Def.*, 06-CV-02812-YGR, 2013 WL 4496336, at *5 (N.D. Cal. Aug. 19, 2013).  Plaintiffs' decision is analogous to *Hiken*, where the court ordered that historical rates be applied:

> In essence, [Plaintiffs] attempted to shift the burden to the court to conduct an analysis of a reasonable historical rate for them.  The Court should not be forced to scour the record for Plaintiffs, who elected not to conduct their own historical rate analysis in support of a requested award.  At a minimum, Plaintiffs should have performed a lodestar calculation using reasonable historical rates and their evidence, and presented that to the court as an alternative fee award.

*Id*. at n. 2.

As is the case here, Plaintiffs' failure to provide historical rates, or calculate the fee award pursuant to those rates, requires that their Motion be denied, and forecloses on Plaintiffs' opportunity to be compensated under the appropriate historical rates.

Interestingly, because Plaintiffs' counsel is counsel of record in a similar, inmate class action, they are well aware of their inability to recover current rates, as they lost this argument numerous times in that case.  *See Plata*, 2009 WL 2997412, at *2) ("Plaintiffs seek reimbursement for work performed prior to the effective date of the new cap.  This Court previously ruled that fees may not be recovered 'at the current PLRA rate for time incurred before the effective date of that rate.'").  And while Plaintiffs fail to make the argument that they are entitled to current rates due to delay in payment, such argument would be without merit as Plaintiffs receive quarterly payments and have already been

compensated $645,617.58 since the inception of the Stipulation. *Id.* (plaintiffs' attorneys submitted periodic interim fee requests, and thus did not experience significant delays in payment).

Based on the above, any fee award to Plaintiffs must be based on the applicable rate at the time of the billing entry.

## IV. ANY FEES AWARDED TO PLAINTIFFS ARE CALCULATED UNDER THE PLRA, NOT THE LODESTAR

As discussed above, Plaintiffs are not entitled to any fees.[15]  Even if they were, the few award is calculated under the PLRA because:  (1) the lodestar framework does not apply to PLRA cases; and (2) the lodestar method is inapplicable where, as here, the parties stipulated to a reasonable fee award.

### A. The Lodestar Method Does Not Apply to PLRA Cases

The lodestar method was created to assist courts in calculating what a "reasonable" fee award is for a "prevailing party" under § 1988, as the statute itself did not describe or define that term.   *See* 42 U.S.C. § 1988(b) (authorizing a prevailing party their "reasonable" attorneys' fees); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010) ("Unfortunately, the statute does not explain what Congress meant by a 'reasonable' fee, and therefore the task of identifying an appropriate methodology for determining a 'reasonable' fee was left for the courts."); *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 (9th Cir. 2009) ("The 'lodestar method' is the fundamental starting point in determining a 'reasonable attorney's fee.'").

The lodestar amount begins with the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433 (1983). The hourly rate under the lodestar is set at the "prevailing market rates in the relevant community." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  The resulting amount is considered to be presumptively reasonable, but it can then be adjusted upward—using multipliers—or

---

[15] Based on the inadequate billing entries submitted in support.

13

1  downward to reflect what is actually "reasonable" for purposes of § 1988. *Perdue*, 559

2  U.S. at 552; *Gonzalez*, 729 F.3d at 1202, 1209 n.11.

3      But, subsequent to the implementation of the lodestar framework, the PLRA was

4  enacted and the fee landscape for inmate cases changed.   *See Martin v. Hadix*, 527 U.S.

5  343, 349 (1999) ("The fee landscape changed with the passage of the PLRA.").  Congress

6  effectively replaced the lodestar framework with § 1997e(d) in cases brought by prisoners.

7  *See Shepherd v. Goord*, 662 F.3d 603, 606 (2d Cir. 2011) ("With the 1996 enactment of

8  the PLRA, Congress imposed "substantial restrictions" on § 1988(b) attorney's fee awards

9  to prevailing prisoner-plaintiffs."); *Walker v. Bain*, 257 F.3d 660, 665 (6th Cir. 2001)

10 ("Among the many new changes relating to prisoner civil rights suits, the PLRA modifies

11 the application of 42 U.S.C. § 1988 to prevailing prisoners by providing stringent

12 limitations on both the availability and the amount of attorney fee awards."); *Boivin v.*

13 *Black*, 225 F.3d 36, 39 (1st Cir. 2000) ("In enacting the PLRA, Congress deviated from

14 this pattern, choosing to place some explicit limitations on the fees that courts can award

15 to prisoners' lawyers in civil cases.").

16     The lodestar method has become obsolete in inmate litigation as the PLRA now

17 defines the previously unanswered question of what constituted a "reasonable" fee –  "150

18 percent of the hourly rate" established under the CJA for court-appointed counsel."  42

19 U.S.C. § 1997e(d)(3).[16]

20     **B.    Lodestar is Inapplicable as the Parties Agreed to their Own Terms**

21     Even if Plaintiffs were entitled to fees (they are not) and even if the lodestar

22 applied to PLRA cases (it does not), the lodestar does not apply here because the parties

23 elected to define "reasonable" themselves.  *See St. Paul Fire & Marine Ins. Co. v. Muniz*,

24 19 Ariz. App. 5, 6, 504 P.2d 546, 548 (1972) (when the parties to a contract define a term

25 used in the contract, that definition is conclusive).  Therefore, even if applicable, the

26

27     [16] Defendants understand the Ninth Circuit rejected this interpretation in *Kelly v.*
    *Wengler*, 822 F.3d 1085, 1091 (9th Cir. 2016). but make the argument in the event
28  Defendants need to challenge it on appeal.

14

assistance of the lodestar is not needed here as the parties bargained for and agreed upon what constitutes a reasonable fee, as well as the definition of "prevailing party."  (Dkt. 1185 at ¶¶43 – 44).

### C.    Plaintiffs are not Entitled to an Enhancement Because They Agreed to a Cap on Fees

Even assuming the above to be true (that the lodestar applies to PLRA claims and to the Stipulation), Plaintiffs are not entitled to an enhancement as the parties agreed to a cap on the hourly rate and application of any enhancement would run afoul of the Stipulation's plain terms.

Indeed, Plaintiffs' decision and agreement to a cap on fees precludes any enhancement of their fees.  *See Californians for Disability Rights v. California Dept. of Transp.,* C 06-05125 SBA MEJ, 2010 WL 8746910, at *22 (N.D. Cal. Dec. 13, 2010), report and recommendation adopted sub nom. *Californians for Disability Rights, Inc. v. California Dept. of Transp.,* C 06-5125 SBA, 2011 WL 8180376 (N.D. Cal. Feb. 2, 2011) (declining to address Plaintiffs' argument they were entitled to a multiplier where the parties' settlement agreement specifically discussed the fees to be recovered).  This is especially so given the lodestar method of calculating fees is strongly presumed to be reasonable without application of an enhancement.  *See Oviatt v. Pearce*, 954 F.2d 1470, 1482 (9th Cir. 1992) ("There is a strong presumption that the lodestar figure is reasonable"); *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996) (the lodestar figure is presumed to be reasonable).  This presumption is for good reason – courts "must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir. 2008).

### D.    Even if a Multiplier Is Available, the *Kerr* Factors Do Not Justify One

Even if the lodestar applies (it does not), and even if a multiplier is available (it is not), the lodestar amount *may* only be adjusted upward in *rare* and *exceptional* circumstances after considering a variety of factors, known as the "*Kerr* factors." *Perdue*,

15

559 U.S. at 552, 554; *Gonzalez*, 729 F.3d at 1209 n.11 (citing *Kerr v. Screen Guild Extra, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

### 1.  **Plaintiffs' Reliance on *Kelly v. Wengler* is Misplaced**

In their Motion, Plaintiffs rely heavily on the Ninth Circuit's decision in *Kelly*.  In *Kelly*, the parties reached a settlement where Defendant agreed to comply with staffing requirements contained in its contract with the Idaho Department of Corrections, and to provide additional officers to enhance security.  *See Kelly v. Wengler*, 822 F.3d 1085, 1091 (9th Cir. 2016). Approximately two years after settlement, Plaintiffs claimed Defendant falsified staffing records, and they moved for an order to show cause why Defendant should not be held in contempt for violating the court's dismissal order.  *Id.* at 1092.  After a hearing, the district court entered an order holding Defendant in contempt and ordering remedial measures.  *Id.*  The Court subsequently award Plaintiffs' counsel fees, and applied a multiplier to their fee award.  *Id.* at 1105.

The *Kelly* facts are strikingly different than the facts presented here.  First, in executing the settlement agreement, the parties in *Kelly* did not bargain for a fee rate as it was not anticipated there would be further involvement by counsel.  Unlike here, where the parties knew there would be a monitoring period and that counsel would continue to be involved in the post-settlement phase of the case.  Because of this, here, the parties bargained for and agreed to a cap on attorneys' fees, and a specific rate for additional fees requested pursuant to Paragraph 43 of the Stipulation.  This meeting of the minds with respect to attorneys' fees was not present in *Kelly* because the parties did not anticipate continued involvement by counsel.  Here, because the parties bargained for a cap on fees, a multiplier cannot be applied.

Even if *Kelly* was analogous, there the district court "did not award fees for some of the hours Plaintiffs' counsel claimed because several time entries were vague. . ." *Id.* at 1093.  Unfortunately, here, *all* of Plaintiffs' counsel's time entries suffer from this defect. *See supra,* Section II.  Because of this, even if *Kelly* were applicable, *Kelly* prevents Plaintiffs from recouping time for such deficient time entries.  Further, while the Plaintiffs

in *Kelly* requested a 2.0 multiplier, the Court declined to enhance the fee award by the full amount requested. *Id*.

Additionally, the Court based its enhancement award on the fact Plaintiffs' counsel performed ". . . under extreme time pressure with very limited resources." *Id*. Such conditions are not present here. First, there are no time constraints. To the contrary, Plaintiffs' counsel has a monetary incentive to prolong the life of the Stipulation, for as long as possible, so as to continue to receive their annual $250,000 fee award. Awarding additional fees, as Plaintiffs request here, will only further incentivize the prolongation of the Stipulation, and run afoul of Congress's intent in enacting the PLRA. Second, unlike *Kelly*, where only two attorneys represented Plaintiffs, Plaintiffs' resources here are far from limited. Plaintiffs have heavily staffed this case. *See* Exhibit 4. Third, Plaintiffs have failed to establish that Arizona inmates have difficulty obtaining counsel for civil rights cases seeking declaratory and injunctive relief. Indeed, the sheer number of attorneys and firms who represent Plaintiffs from across the county, belies any argument that Arizona inmates have difficulty obtaining counsel.

Finally, even if *Kelly* was applicable, *Kelly* was not decided until May 23, 2016 – almost two years after the Stipulation was entered into by the parties. Therefore, it could not have been the parties' intention to allow for a multiplier as the precedent at that time was that the PLRA capped the hourly rate. *See Graves v. Arpaio*, 633 F. Supp. 2d 834, 845 (D. Ariz. 2009), aff'd, 623 F.3d 1043 (9th Cir. 2010) (". . . § 1997e(d)(3) limits the fee award by establishing a maximum hourly rate for attorneys' fees. The maximum hourly rate upon which an award for attorneys' fees may be based is 150% of the hourly rate established for payment of court-appointed counsel under 18 U.S.C. § 3006A.).

## 2.   **The *Kerr* Factors Do Not Justify an Enhancement Here**

Even assuming that fee enhancements exceeding the PLRA's fee cap are permissible, a fee enhancement is not warranted here. "[T]here is a 'strong presumption' that the lodestar figure is reasonable." *Perdue*, 559 U.S. at 554. And enhancements may only be awarded in "rare" and "exceptional" circumstances. *Id*. at 552, 554. Such

17

circumstances are not present here.

While there are twelve Kerr factors, Plaintiffs' concede an enhancement can only be based upon factors two, three, five, and seven – twelve, as the remaining factors are taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997).

### a.    **The Time and Labor Required**

Plaintiffs concede this factor is already subsumed in the calculation of the loadstar. Notwithstanding this, Plaintiffs note they staffed the case efficiently.  This is not true. Plaintiffs dedicated much of their time to issues and topics unrelated to enforcement of the Stipulation.   For example, Plaintiffs have spent the majority of the last few months prosecuting allegations of retaliation, resulting in the parties expending countless hours litigating claims that have nothing to do with the enforcement of the Stipulation.[17]  Not surprisingly, such claims have only multiplied as inmates learn they can use such allegations as a shield to circumvent facility rules.   Moreover, Plaintiffs seek reimbursement for time they spent investigating individual inmate's healthcare concerns, and for unnecessary time spent by experts analyzing individual inmates' medical records. Indeed, such entries were not in furtherance of enforcing the Stipulation, and Plaintiffs' general and vague time entries make no attempt to connect such entries to this task.

### b.    **The Novelty and Difficulty of the Issues**

Plaintiffs concede this factor is reflected in the calculation of the lodestar.  (Dkt. 2276 at 15).  Despite this concession, Plaintiffs argue the issues presented in enforcing compliance with the Stipulation were difficult.  *Id*. at 16.  To support this, Plaintiffs point only to the fact Defense counsel actively represented their clients' interests and that because of this, the post-judgment phase was "hard[] fought."  *Id*.  That Defense counsel

---

[17] Moreover, Plaintiffs have prosecuted numerous other irrelevant claims such as a motion regarding one inmate's health care (which was later withdrawn), and filing a motion demanding the Court increase staffing, despite the fact the Stipulation expressly prohibits such action by the Court.  *See* Dkts. 2133, 1958, and 1790.

were zealous litigants for their clients does not make the issues in this case difficult.  To the contrary, the post-litigation phase is quite simple.  The monitors monitor and report compliance findings each month, and Plaintiffs send notices of non-compliance when a specific facility and measure meet the Court's definition of substantial non-compliance. While it is Plaintiffs' counsel's habit to focus on extraneous issues, Plaintiffs' counsel's only role is to advise the Court when they believe Defendants are in substantial non-compliance.  Indeed, it is Defendants who must monitor 103 measures at ten facilities each month and who must develop remediation plans where necessary.  Plaintiffs' counsel's role is simply to review excel spreadsheets of compliance numbers, and send a letter when there is a pattern of non-compliance.  Such tasks do not require any expertise. And Plaintiffs' citation to routine litigation activities (attend mediation, correspond with client, review documents, and write declarations) are unconvincing to support this factor.

### c.    **The Skill Required to Perform the Legal Services**

Plaintiffs concede this factor is reflected in the calculation of the lodestar.  (Dkt. 2275 at 16 – 17).  As discussed above, little skill is required to monitor enforcement with the Stipulation.  And Plaintiffs' statement, without more, that the case was complex, is unavailing.

### d.    **The Preclusion of Other Employment by the Attorneys Involved in the Case**

This factor too is reflected in the calculation of the lodestar.  *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997).  But Plaintiffs claim David Fathi was "precluded from accepting new, potentially fee-generating work while he worked on this case."  (Dkt. 2265 at 17).

This case however, did not prevent David Fathi from filing a nearly identical Complaint against the Nebraska Department of Corrections on August 16, 2017.  *See* Exhibit 6 (Complaint in *Sabata v. Nebraska Department of Corrections*).  Because the post-judgment phase of this case is not over, it must not occupy that much of Mr. Fathi's time if he is able to lead the prosecution of another class action lawsuit in Nebraska while

also continuing his efforts in this case.[18]  Thus, Plaintiffs' assertion that Mr. Fathi could not accept work while also working on this case is inaccurate.  And while Donald Specter and Corene Kendrick claim, they were "limited" in the new work they could take on, they do not allege they were precluded from taking on new work nor do they provide any other detail regarding the type of limitations caused by their work on this case.  Importantly, none of the other attorneys who seek reimbursement of their fees claim to have been precluded in taking on additional work.

e.    **The Customary Fee in Similar Litigation**

Plaintiffs concede that the PLRA rate cap applies here, but they incorrectly rely on Berkley, CA and Washington D.C. rates.  As described above, because local counsel was available, and actually appeared and prosecuted this claim, Plaintiffs must use Arizona's local forum rate.  Further, in their Motion, Plaintiffs' counsel touts their prison litigation expertise and experience, but argues they should be compensated at a higher rate than the PLRA cap.  They cannot have it both ways.  Plaintiffs' counsel voluntarily practices at advocacy groups like the Prison Law Office and National Prison Project, knowing that their fees will be capped for such work.  This is especially so where Plaintiffs specifically bargained for the fee cap and did not request that the multiplier be an option.

Moreover, Arizona attorneys routinely take on inmate cases at the PLRA rate.  *See* Exhibit 2 at ¶24.  Significantly, the rates Defense counsel charges in this matter are comparable to the PLRA rate (partner: $210; associate: $195; paralegal: $125; law clerk: $65.00), which weighs heavily against application of a multiplier.  (*Id.* at ¶20).

f.    **Time Limitations Imposed by the Clients or Circumstances**

Plaintiffs concede this factor is already represented in the lodestar.

/ / /

/ / /

---

[18] It appears it is Mr. Fathi's intent to take a lead role in the Nebraska case as he signed the Complaint. *See* Exhibit 6.

g.    **The Results Obtained by the Lawsuit**

As discussed throughout this Response, Plaintiffs' counsel failed to keep track of their time so as to justify a payment pursuant to Paragraph 43 of the Stipulation.  Instead, they claim generally that they "vigorously and repeatedly enforce[ed] the terms of the Stipulation in the face of sustained intransigence by the Defendants."  (Dkt. 2276 at 18).  But this generic statement fails to explain what results Plaintiffs' counsel obtained, and what billing entries support each of their claimed "successes."  And any success Plaintiffs have had was simply pointing out where Defendants were non-compliant based on data prepared by Defendants.  There is nothing extraordinary about this.

h.    **The Experience, Reputation, and Ability of the Attorneys**

Plaintiffs concede this factor is reflected in the loadstar amount.

i.    **The Undesirability of the Case**

Plaintiffs conclude this case is undesirable because "no qualified lawyers in Arizona would have been willing to bring this case and others like it for the low fee rate set by the PLRA."  (Dkt. 2265 at 19).  Plaintiffs' support for this exaggerated conclusion comes from the self-serving declaration of Plaintiffs' own counsel, Kathleen Brody (Dkt. 2279 at ¶6); and from the declaration of *one* Arizona attorney who, on occasion, practices in the civil rights arena.  (Dkt. 2280).  To the contrary, Arizona attorneys take on inmate cases regularly.  *See* Exhibit 2 at ¶24.

That Plaintiffs find these cases "undesirable" is highly questionable.  Take, for example, the *Plata* case where in 2007 the same Plaintiffs' counsel (Specter, Hardy, Mitchell, George, Norman) filed a nearly identical case in California.  Since that time, Plaintiffs' counsel has recovered **$12,704,635.00** in fees – totaling over a million dollars a year since the signing of the agreement in 2007.  Such compensation can hardly be said to be undesirable, and indeed, is quite the opposite. So much so that Plaintiffs' counsel, David Fathi, recently filed another nearly identical case in the state of Nebraska.  These cases have becomes cash cows for Plaintiffs' counsel, incentivized by prolongation of the settlement agreement.

j.     **The Nature and Length of the Professional Relationship with the Clients**

Defendants do not challenge that Plaintiffs' counsel has had a relationship with the Plaintiff class since the inception of this case.  But because the other factors weigh heavily in Defendants' favor, this relationship does not tip the *Kerr* factors in Plaintiffs' favor.

k.     **Awards in Similar Cases**

Plaintiffs' argument that it is "difficult, if not impossible" to identify similar cases is wrong.  To the contrary, determination of awards in similar cases is simple, as the PLRA provides a cap on the hourly rate for inmate litigation.  Multiplying this fee cap by the total hours expended is the best indicator of what similar awards would be.  And the cases cited by Plaintiffs support this.  *See Graves v. Arpaio*, 633 F. Supp. 2d 834, 845 (D. Ariz. 2009), aff'd, 623 F.3d 1043 (9th Cir. 2010) (". . . § 1997e(d)(3) limits the fee award by establishing a maximum hourly rate for attorneys' fees.  The maximum hourly rate upon which an award for attorneys' fees may be based is 150% of the hourly rate established for payment of court-appointed counsel under 18 U.S.C. § 3006A.).

It is Plaintiffs' burden to show an enhancement is necessary.  Plaintiffs have failed to meet this burden here where they neglected to keep detailed time entries and can only justify their demands for an enhancement by general, sweeping claims that Defense counsel vigorously litigated the case and that the work was "difficult." *See Kelly*, 822 F.3d at 1102 (explaining that the fee applicant must provide specific evidence to prove "that an enhancement is necessary").  The discretionary *Kerr* factors weigh heavily against a multiplier award here. Add to this, an enhancement is unnecessary where Plaintiffs' counsel has already received and agreed upon an annual salary.

l.     **The *Kelly* Factors are Not Supported Here**

Defendants maintain *Kelly* was wrongfully decided, and that the below factors have no significance in the *Kerr* analysis.  Notwithstanding this, Plaintiffs cannot meet these factors.

22

(1)    **There Was Nothing Extraordinary About the Results**

Because Plaintiffs cannot establish they were the "prevailing party", as defined by the Stipulation, for any of the time entries they seek reimbursement for, it is unknown what results they obtained and certainty whether such results were extraordinary. While Plaintiffs claim they have "uncovered repeated violations of multiple measures across multiple facilities", they fail to tie their time entries to any particular successes as the Stipulation requires.

Plaintiffs cite to several of the parties' disputes regarding monitoring methodology. (Dkt. 2265 at 22 – 23). Because the monitoring guide is not part of the Stipulation, any time spent on methodology was not time spent enforcing the Stipulation pursuant to ¶43. At best, disputes regarding monitoring methodology fall into "monitoring the stipulation" category, and Plaintiffs' have already been compensated for this time under ¶44. Further, Plaintiffs' demand to be reimbursed for time spent litigating alleged claims of retaliation suffers from the same deficiencies. (Dkt. 2265 at 25 – 27). First, because the Court has made no finding on Plaintiffs' claims of retaliation, Plaintiffs are not the "prevailing party" with respect to these claims. Nor were such allegations necessary to enforce or monitor the Stipulation, thereby precluding their recovery under either paragraph ¶43 or ¶44. Plaintiffs' claims regarding the monitor guide and their retaliation claims are red herrings included to distract the Court from the only issue: whether Plaintiffs were the prevailing party on specific disputes regarding enforcement of the stipulation. Such claims do not meet either criteria. The Court should therefore disregard them.

(2)    **Enhancing Fees to Create an Incentive to Other Attorneys is Not a Valid Justification**

Plaintiffs' repeated assertion that there was a "lack of competent lawyers willing and able to bring such a complicated, time-intensive case under the PLRA fee cap" is belied by the volume of attorneys, both local and out of state, who have appeared and prosecuted this case. Moreover, this factor flies in the face of Congress's intent in passing the PLRA. "Congress's goal in passing the PLRA" was not to "encourag[e] competent

23

members of the private bar to undertake similar, highly meritorious litigation to vindicate federal rights." (AB at 51.) *See Perez*, 632 F.3d at 558; *Madrid*, 190 F.3d at 996. The purpose was to discourage prisoner lawsuits. *Id.* Awarding Plaintiffs' fees, as requested, frustrates the intent and purpose of the PLRA.

## V.   PLAINTIFFS' FAIL TO CONNECT THEIR COSTS TO A PREVAILING MOTION TO ENFORCE AS REQUIRED BY PARAGRAPH 43 OF THE STIPULATION

In demanding fees, Plaintiffs again incorrectly rely upon § 1988.  As with fees, the Stipulation, not the definitions in § 1988, control.  The Stipulation only allows for Plaintiffs to recover costs if they:  (1) were the prevailing party; (2) with respect to a specific dispute to enforce the Stipulation.  (Dkt. 1185 at ¶43).  And as with their fees demand, Plaintiffs fail to establish either element for any of the costs requested.  This alone requires their demand for costs be denied in its entirety.

## VI.   CONCLUSION

Plaintiffs cannot meet Paragraph 43's requirements for fees, and their Motion should be denied.  Any fees awarded to Plaintiffs, however, are capped at the historic CJA rate in Arizona, and are calculated pursuant to the PLRA.  Even if lodestar applies, Plaintiffs are not entitled to an enhancement because they bargained for a cap on attorneys' fees, and the *Kerr* factors weigh heavily in Defendants' favor.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DATED this 23rd day of October 2017.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC

By /s/Daniel P. Struck
    Daniel P. Struck
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    Ashlee B. Fletcher
    Jacob B. Lee
    Kevin R. Hanger
    Timothy M. Ray
    Richard M. Valenti
    Jamie D. Guzman
    3100 West Ray Road, Suite 300
    Chandler, Arizona  85226

    Arizona Attorney General Mark Brnovich
    Office of the Attorney General
    Michael E. Gottfried
    Lucy M. Rand
    Assistant Attorneys General
    1275 W. Washington Street
    Phoenix, Arizona 85007-2926

    *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alison Hardy:                    ahardy@prisonlaw.com

Amelia M. Gerlicher:             agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com

Amy B. Fettig:                   afettig@npp-aclu.org

Asim Varma:                      avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

Caroline N. Mitchell:            cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

Corene T. Kendrick:              ckendrick@prisonlaw.com; edegraff@prisonlaw.com

Daniel Clayton Barr:             DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

David Cyrus Fathi:               dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

Donald Specter:                  dspecter@prisonlaw.com

Jessica Pari Jansepar Ross:   jross@azdisabilitylaw.org

John Howard Gray:                jhgray@perkinscoie.com; slawson@perkinscoie.com

John Laurens Wilkes:             jlwilkes@jonesday.com, dkkerr@jonesday.com

Jose de Jesus Rico:              jrico@azdisabilitylaw.org

Kathleen E. Brody:               kbrody@acluaz.org

Kirstin T. Eidenbach:            kirstin@eidenbachlaw.com

Maya Abela                       mabela@azdisabilitylaw.org

Rose Daly-Rooney:                rdalyrooney@azdisabilitylaw.org

Sara Norman:                     snorman@prisonlaw.com

Sarah Eve Kader:                 skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org

Rita K. Lomio:                   rlomio@prisonlaw.com

Victoria Lopez:                  vlopez@aclu.org

26

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Daniel P. Struck