Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,

Plaintiffs,

v.

Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,

Defendants.

No. CV 12-00601-PHX-DKD

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR RECONSIDERATION OF COURT ORDER (DOC. 2373)**
**[DOC. 2396]**

Defendants ask the Court to reconsider and vacate its order to show cause. Defendants' motion should be denied. Defendants argue that reporting the information ordered by the Court is an undue burden (Doc. 2396 at 4), but when the Court ordered Defendants in June to produce similar information regarding noncompliance they similarly argued that they were incapable of tracking the information, but then ultimately were able to produce the requested information by the Court's July deadline. Furthermore, to the extent that Defendants state that they cannot provide the information due to Corizon's refusal to provide it, this is an unavailing argument. Finally, Defendants argue that they have to wait until the end of December to compile the requested information, but there is no reason why they cannot track the information in real time.

## I. Motions for reconsideration are disfavored and should be granted only in rare and extraordinary circumstances.

Local Rule of Civil Procedure 7.2(g)(1) provides:

> The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence. Any such motion shall point out with specificity the matters that the movant believes were overlooked or misapprehended by the Court, any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier, and any specific modifications being sought in the Court's Order. No motion for reconsideration of an Order may repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order. Failure to comply with this subsection may be grounds for denial of the motion.

"Motions for reconsideration are disfavored and should be granted only in rare circumstances." *United States v. Vistoso Partners*, No. CV10–0444 PHX DGC, 2011 WL 2550387, at *1 (D. Ariz. 2011); *accord Estrada v. Bashas' Inc.*, No. CV–02–00591–PHX–RCB, 2014 WL 1319189, at *2 (D. Ariz. Apr. 1, 2014) ("The granting of a motion for reconsideration is an extraordinary remedy which should be used sparingly") (internal quotation marks omitted); *Ross v. Arpaio*, No. CV 05–4177–PHX–MHM (ECV), 2008 WL 1776502, at *1 (D. Ariz. Apr. 15, 2008) ("Motions for reconsideration should be granted only in rare circumstances"); *Defenders of Wildlife v. Browner*, 909 F. Supp.

1342, 1351 (D. Ariz. 1995) (same). Such motions should not be used for the purpose of asking a court "to rethink what the court had already thought through – rightly or wrongly." *Defenders of Wildlife*, 909 F. Supp. at 1351 (internal quotation marks omitted).

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County v. ACandS, Inc*., 5 F.3d 1255, 1263 (9th Cir. 1993). Defendants have not met this heavy burden, and have not shown that any of these three factors are present.

## II. Defendants' arguments have already been considered and rejected by the Court.

A motion for reconsideration is not a proper vehicle to recycle arguments that have already been considered and rejected by the Court. *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985) (motion for reconsideration was properly denied "because, as [the District Court] noted, it presented no arguments that had not already been raised"); *Garcia v. Glendale Police Dep't*, No. CV 11–02260–PHX–JAT, 2014 WL 2197027, at *2 (D. Ariz. May 27, 2014), *aff'd sub nom. Garcia v. Solomon*, 623 F. App'x 486 (9th Cir. 2015) (motions for reconsideration denied when "[t]he arguments in Plaintiff's Motions are nothing more than re-arguments of the facts previously presented to the Court"); *Collins v. D.R. Horton, Inc*., 252 F. Supp. 2d 936, 938 (D. Ariz. 2003) (motion for reconsideration is not "the time to ask the Court to rethink what it has already thought"); *Yount v. Salazar*, 933 F. Supp. 2d 1215, 1236 (D. Ariz. 2013) ("Mere disagreement with an order is an insufficient basis for reconsideration").

In June of this year, Defendants filed a motion for reconsideration of the Court's order threatening to assess a sanction of up to $1,000 for each instance of noncompliance with certain performance measures at specific locations. [*See* Doc. 2135 (Motion for Reconsideration); Doc. 2124 (Court's Order)] At that time, Defendants filed a sworn declaration by Defendant Pratt stating that it would be practically impossible to track each instance of noncompliance. [*See generally* Doc. 2135-1] The Court denied Defendants'

motion for reconsideration (Doc. 2179), and despite Defendant Pratt's previous declaration to the contrary, Defendants provided the Court the ordered information on the date ordered by the Court. [Doc. 2173]

Now, four months later, Defendants file another declaration by Defendant Pratt, again swearing under oath that it is impossible to track such information. [Doc. 2396-1] Defendants trot out the same arguments about how difficult it is to provide the Court with real-time data, despite the fact that they and Corizon have previously provided such information to the Court. Indeed, most of Mr. Pratt's October declaration is *identical* to his June declaration, which the Court did not credit. [*See, e.g.*, ¶¶ 1-11 of Docs. 2135-1 and 2396-1 (identical); Doc. 2135-1 at ¶¶ 20-27 and Doc. 2396-1 at ¶¶ 12-19 (with the exception of a reference to Perryville at Doc. 2135-1 at ¶ 24, using identical language to argue that to provide relevant information regarding noncompliance with PM 35 (intersystem medication transfers) would "require reviewing all intersystem transfers," that "ADC has no centralized report" regarding transfers, and "I estimate that my staff will have to individually review at least 700 inmate charts in eOMIS to determine which of the transferred inmates were prescribed medication."); *see also* Doc. 2135-1 at ¶ 40 and Doc. 2396-1 at ¶ 28 (identical language threatening that "[I]f my staff have to monitor 100% of applicable inmates" for the measures in the Court's orders, "they will be unable to complete their regularly monthly monitoring duties, and the CGAR reports will be delayed.")]

Defendant Pratt also swears under oath that to comply with the Court's order with regard to PM 46, "my staff would have to review thousands of diagnostic reports at the four applicable complexes to determine which have abnormal values and whether a provider acted upon them within five calendar days." [Doc. 2396-1 at 5] Yet this was contradicted by counsel for Defendants at the October 11, 2017 hearing, where counsel reported real-time data about compliance with PM 46 and discussed the results at length with the Court. [10/11/17 Tr. at 102:17-105-24] The most recently submitted remedial plan for Defendants' chronic noncompliance with PM 46 refers to a "CGAR crosscheck

committee" that "tracks all improvement tasks related to CGAR performance" and that "has access to an aging/exception report that tracks all diagnostic reports and their age since their receipt at the prison." [Doc. 2374-1 at 106]

Not only has the Court previously rejected Defendants' arguments, their arguments are contradicted by their previous actions and their assertions that they and Corizon currently are tracking compliance with some performance measures on a real-time basis.

**III. The fact that Corizon self-servingly and contumaciously refuses to provide real-time data in response to the Court's Order is not a sufficient reason to reconsider the Order.**

Defendants provide a declaration from Corizon's Senior Vice President of Operations stating that "[r]eal time reporting of this magnitude will, if undertaken by Corizon Health, significantly impair its efforts to achieve the foregoing compliance objectives" (Doc. 2396-2 at ¶ 5), and therefore the corporation will not compile the information ordered by the Court and will instead "defer to ADC monitors to compile and provide any and all compliance reporting to the Court." [*Id*. at ¶ 6] The willful refusal of Defendants' for-profit vendor to assist Defendants in complying with the Court's Order is brazen defiance of the Court's Order, self-serving, and contrary to the contract between ADC and Corizon. Furthermore, the statement by Corizon's Vice President that the company cannot simultaneously provide monitoring reports and "achieve . . . compliance objectives" of providing required health care to class members (*id*. at ¶ 5), is at worse a ham-handed threat to hold the Court and class members hostage to its whims, or at best an admission that a multi-billion dollar corporation cannot walk and chew gum at the same time. In either case, Corizon's refusal to cooperate with the Court's Order cannot be the basis for reconsideration of the Order.

An injunction or order binds not only the parties to the injunction but also nonparties who act in privity with the named party. *See Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc*., 877 F.2d 787, 789 (9th Cir. 1989) ("Federal Rule of Civil Procedure 65(d) provides that injunctions are binding on persons who receive actual notice of the injunction order and act in concert or participate with the parties

named in the injunction"); *see also United States v. Baker*, 641 F.2d 1311, 1315 (9th Cir. 1981) (nonparties in privity with the parties could be found in criminal contempt for violating a court order if they had actual notice of the order). Commenting on Rule 65(d), the Supreme Court has noted that the Rule

> is derived from the commonlaw doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in "privity" with them, represented by them or subject to their control. In essence ... defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.

*Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945); *Sec. and Exch. Comm'n v. Homa*, 514 F.3d 661, 673-75 (7th Cir. 2008) ("if courts did not have the power to punish those who cooperate with those named in an injunction, the named parties could easily thwart the injunction by operating through others"); *see also Clear One Commc'ns, Inc. v. Bowers*, 651 F.3d 1200, 1215-16 (10th Cir. 2011) ("a district court may properly exercise personal jurisdiction over a nonparty for purposes of entering contempt orders, when the nonparty, with actual notice of an injunctive order issued by the district court, and in active concert or participation with a party, violates that order"); *Waffenschmidt v. MacKay*, 763 F.2d 711, 714 (5th Cir. 1985) (same).[1]

Additionally, the contract between Defendants and Corizon gives ADC the power to request Corizon provide "information pertaining to Contract compliance or other reports or information that may be required to respond to grievances, inquiries, complaints, or other questions raised by inmates or other parties." [Kendrick Decl., Ex. 2

---

[1] Corizon is hardly a disinterested third party: its interests run in tandem with those of Defendants, as it is Defendants' agent, and given ADC and Corizon's joint defense agreement, it is entirely possible that the company is taking this contumacious position at the direction of Counsel for Defendants. [*See, e.g.*, Doc. 2210 at 6-7 (Plfs' Opp. to Corizon Mot. to Be Amicus); *see also* 9/12/17 Tr. at 185:2-10 ("MR. STRUCK: [. . .] We've had a joint defense agreement with Corizon since Corizon contracted with ADC when Wexford left the scene. [. . .] The joint defense agreement remains, and it entitles defense counsel for ADC and defense counsel for Corizon, who the Court has recognized is the agent, or the plaintiffs have argued is the agent of ADC, to communicate without having the communications discovered."); *see also* Exhibit 1 to the Declaration of Corene Kendrick ("Kendrick Decl."), filed herewith (joint defense agreement)]

(Request for Proposals) at § 2.18.6 (p. 102 of RFP, Bates-stamped ADC014223)][2] Corizon, in response, stated it "has read, understands, and shall comply with Subsection 2.18.6." [*Id*. Ex. 3 at § 2.18.6 (p. 936 of Scope of Work)] Corizon further asserted in the Scope of Work that it "believes in providing correctional healthcare services using taxpayer dollars in as transparent a manner as possible. . .[,] will maintain accountability and share information with the ADC using our comprehensive data collection and reporting system," and "will make reports, as well as other relevant information requested by ADC available to the State on a 24-hour basis" (*id*. at § 2.18 (p. 933 of Scope of Work)), and promised to provide a variety of reports, including those called for in the RFP, monthly health services reports, monthly dashboard reports, and ad hoc reports. [*Id*. at § 2.18.11 (p. 940 of Scope of Work)] The contract further notes that a failure to provide reports can result in "monetary sanctions, suspension, refusal to renew, or termination of the contract." [*Id*. Ex. 2 at § 2.18.8 (p. 102 of RFP, Bates-stamped ADC014223), a term to which Corizon agreed); *id*. Ex. 3 at § 2.18.8 (p. 938 of Scope of Work)]

Defendants do not demand accountability from the vendor whom they paid over $11.6 million in the month of September to provide health care. [*See id*. Ex. 4 at #8 (Contract Amendment 10, 5/12/15, payment of $11.60 per day per prisoner); *see also* https://corrections.az.gov/sites/default/files/REPORTS/Monthly_CP/bed_capacity_2017/bed-capacity_sep17.pdf (September 2017 population of 33,427)] Rather, Defendants helplessly throw their hands in the air and avow that as a result of Corizon's "refusal" to provide Court-ordered information, they cannot comply with the Court's order. The Court should not tolerate Defendants' self-serving avowal of bureaucratic trained incapacity.

**IV. Defendants fail to explain why they cannot track real-time data in real-time.**

Finally, Defendants argue that the Court's Order will require them to "engage in 100% real time monitoring with respect to the eleven HCPMs at issue and the report the

[2] These "ad hoc" reports must be provided to ADC within 72 hours of the vendor's receipt of the request. [*See* Kendrick Decl., Ex. 2 at p. 147 (Bates No. ADC014268)]

numbers *five* days later . . ." [Doc. 2396 at 5 (emphasis in original)] However, it makes no sense for Defendants to wait until the end of the month to start reporting real-time data, and if they truly think that they need to wait, it calls into serious question their knowledge of basic monitoring methodology. When one is drawing a random sample, it is necessary to wait until the end of the month so that the parent population from which the sample is drawn is complete. But there is no such need to wait when the goal is to report and track all incidents. This can be done in real time; Defendants do not assert otherwise.

Dated: October 31, 2017

**PRISON LAW OFFICE**

By: s/ Corene Kendrick

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email: dspecter@prisonlaw.com
ahardy@prisonlaw.com
snorman@prisonlaw.com
ckendrick@prisonlaw.com
rlomio@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Victoria Lopez (Ill. 6275388)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email: dfathi@aclu.org
afettig@aclu.org
vlopez@aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, PLLC**
P. O. Box 91398
Tucson, Arizona 85752
Telephone: (520) 477-1475
Email: kirstin@eidenbachlaw.com

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email: dbarr@perkinscoie.com
agerlicher@perkinscoie.com
jhgray@perkinscoie.com

Caroline Mitchell (Cal. 143124)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email: cnmitchell@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email: jlwilkes@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By: s/ Maya Abela
Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
rdalyrooney@azdisabilitylaw.org
jrico@azdisabilitylaw.org
jross@azdisabilitylaw.org
mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2017, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Jacob B. Lee
Kevin R. Hanger
Timothy Ray
Richard M. Valenti
Jamie D. Guzman
STRUCK LOVE BOJANOWSKI & ACEDO, P.L.C.
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
afletcher@strucklovem.com
jlee@strucklove.com
khanger@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com

*Attorneys for Defendants*

s/ D. Freouf