Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
Timothy M. Ray, Bar No. 029191
Richard M. Valenti, Bar No. 031533
Jamie D. Guzman, Bar No. 022095
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
afletcher@strucklove.com
jlee@strucklove.com
khanger@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | NO. 2:12-cv-00601-DKD <br><br><br> **DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT ON THE COURT'S ORDER REGARDING RETALIATION (DOC. 2363)** |

Defendants submit this Brief in response to Plaintiffs' Statement on the Court's Order Regarding Retaliation (Doc. 2363). Plaintiffs failed to prove that ADC personnel retaliated against Inmates Ashworth, Scheid, and Oyenik in retaliation for their testimony (Ashworth and Oyenik) offered during the July 14, 2017 hearing regarding removal of HNR boxes. Accordingly, this Court must vacate its July 25, 2017 Order that is vague, overly broad, and categorically prohibits Defendants from taking "actions which could reasonably be viewed as having a chilling effect on witness testimony by utilizing group punishments, or actions against other prisoners who could in turn blame or target the witnesses." [Doc. 2209 at 4.]

Defendants incorporate herein and rely upon all witness testimony offered by Defendants during the September 11 and 13, 2017 retaliation hearings as well as Defendants admitted exhibits.[1]

## I.    INTRODUCTION

Plaintiffs failed to meet their burden of proving that Defendants retaliated against Inmates Ashworth and Oyenik for testifying on July 14, 2017, regarding removal of HNR boxes, and there was no retaliation. The actions complained of by counsel, but never by the inmates themselves through testimonial evidence, reasonably advanced legitimate penological goals and were not taken against inmates *because of* their protected conduct in this case. Indeed, the Court observed that the witnesses Defendants presented during the September 2017 hearings testified that there was no retaliation and the Court believes them. [9/11/17 Tr. at 204:14-24] The Court also recognized that Defendants made genuine efforts to ensure compliance with the Court's July 25, 2017 Order (Doc. 2209).  [Id.]

---

[1] At the Retaliation Hearings held on September 11, 2017 and continued on September 13, 2017, there was a question concerning discrepancies in the dates of the emails provided as Exhibits 1 and 3-7 (Docs. 2326 and 2327). Defendants counsel investigated the issue and confirmed that the date discrepancies are a result of a "bug" in the litigation software used to process the exhibits for disclosure and not of any manipulation by any employee or representative of the Arizona Department of Corrections, Defendants' counsel, or paralegals assisting Defendants' counsel. (See Attached Giardina Dec. dated 11/1/2017).

Against this backdrop of evidence, Plaintiffs argue that, regardless of Defendants' "purest of motives" [Doc. 2363 2:21-22], normal prison operations must cease at the slightest specter of a subjective belief of retaliation. This premise is wrong and contrary to the well-settled case law regarding proof of inmate retaliation claims.  Because the actions complained of were not the result of retaliatory intent and are based upon legitimate penological, the Court must find that there was no actual retaliation. Accordingly, the Court should vacate the injunctive Order issued on July 25, 2017 (Doc. 2209) – an order issued based only upon hearsay statements of Plaintiffs' counsel, not actual evidence. Inmates cannot be prophylactically and preferentially immune to legitimate prison administration when there was no retaliation leveled upon Inmates Ashworth or Oyenik for testifying on July 14, 2017.

## II.      PLAINTIFFS FAIL TO PROVE ACTUAL RETALIATION

Inmates have a First Amendment right to pursue civil rights litigation. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (quoting *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995)). Thus, prison officials may not retaliate against an inmate for exercising that right. *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995).

To prove retaliation, an inmate must establish *five* elements:  "(1) … a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68. *See also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims require an inmate to show that (1) the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) the action "advanced no legitimate penological interest").

As highlighted below and established by evidence admitted during the September retaliation hearing, Plaintiffs failed to meet their burden of proof to establish that Inmates Ashworth or Oyenik were retaliated against for testifying about removal of HNR boxes on July 14, 2017. Glaringly absent from these proceedings was any word from the actual

inmates themselves.  A declaration of counsel submitted on July 20, 2017, attesting to what the two inmates told counsel on the phone a couple days before is inadmissible hearsay.  Without admissible testimonial evidence proffered from the subject inmates themselves, Plaintiffs' retaliation claims fail at the outset. (Doc. 2191). Even if Plaintiffs could inexplicably surmount this primary evidentiary failure, Defendants have established that the actions complained of were not done the product of retaliatory motive and were based on legitimate prison operations.

### A. Inmate Ashworth's Property Was Not Inventoried and Stored While She Was Out to Court on July 14, 2017, in Retaliation for Testifying.

#### 1. Inmate Ashworth did not testify that adverse action was taken against her in retaliation for transport to court and testimony.

The issue of property roll ups at ASPC-Perryville for court appearances came up during Inmate Ashworth's testimony on July 14, 2017, regarding removal of HNR boxes. Inmate Ashworth did not understand why her property was rolled up for a one day court appearance transport and did not like it. [7/14/17 Tr. at 17-105:21].  But, she offered no evidence of either actual adverse action or retaliatory motive in this regard.  Notably missing is any evidence that the inventory and storage of the inmate's property was based on: 1) knowledge that Inmate Ashworth was being transported to testify in this case; and 2) that the property storage was retaliatory because of some unknown testimony she would offer at the hearing.

Warden Currier explained that property inventory and storage are normal operations for inmates who leave the complex for court transports.  She specifically testified that complex-wide, if an inmate is on a movement list for court, its "normal business" to inventory and store their property. [9/11/17 Tr. 14:21-15:1].  She also testified that for her entire time at Perryville, she is unaware that any inmate went out to court and returned the same day.  [Id. at 13:2-24.]  That situation never came up as far as she could recall. [Id.] So when staff sees a transport to court designation on the transportation form, they automatically store the property. [Id.] This is done to protect the

inmate's property from theft or loss. [9/11/2017 Tr. at 15:2-11]  Simply put, Perryville complex inmates who are transported out to court have their property inventoried and stored while they are away from the complex for legitimate reason.  This happens to all inmates – not just to Inmate Ashworth.

Leading up to the July 14, 2017 hearing, Inmate Ashworth had been at Perryville long enough to become aware that property inventory and storage happens when an inmate leaves the complex.  It therefore defies credulity that Inmate Ashworth, or any other Perryville inmate similarly situated, would have felt retaliated against when their property was processed "like any other trip to court."  [Id. at 32:6-8]

### 2.  There was no adverse action *because of* protected conduct.

To prove the second element of a retaliation claim, an inmate must show a "causal connection between the adverse action and the protected conduct." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).   Mere speculation that a defendant acted out of retaliation is not enough. *See Wood v. Yordy*, 753 F.3d 899, 904-05 (9th Cir. 2014) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit); *see also McCollum v. Cal. Dep't of Corr. & Rehab.,* 647 F.3d 870, 882 (9th Cir. 2011) (specific evidence of retaliation required). Retaliation is not established simply by showing adverse activity by defendant after protected speech; rather, plaintiff must show a nexus between the two.  *See Huskey v. City of San Jose,* 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore because of this"). The plaintiff has the burden of demonstrating that his exercise of his/her First Amendment rights was a substantial or motivating factor behind the defendants' conduct. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir.1989).

Here, the property inventory and storage happened in the normal course of ASPC-Perryville operations. Warden Currier relies upon Department Order 909 for such

operations – requiring property to be secured and stored for inmates who go out for court. [9/11/17 Tr. 13:5-12]  Plaintiffs take issue with the Warden's understanding of DO 909 and challenge her interpretation of comma placement in DO as to whether the Order requires inventory and storage of property for only overnight court transports or every transport.  But this argument fails to save Plaintiffs' claim of retaliation where Plaintiffs fail to establish that is unconstitutional to engage in practices to actually protect an inmate's property from theft or loss when they leave the prison – whether it is for a day or overnight.

Moreover, Warden Currier personally looked into the chain of events leading up to the inventory and found no evidence of retaliation. [Id. 14:21-15:1]   "It's normal business."  [Id.]  When staff see an inmate designated to go out to court, their property is inventoried and stored.  [Id.]  Officer Kay also testified that when he saw that Inmate Ashworth was going out to court for the day and her property was stored, he did not think that was a mistake. [9/13/17 Tr. at 70:7-13] Retaliatory motive is absent here. Inmate Ashworth has nothing to rebut normal operations that apply to all Perryville complex inmates. Operations that are not new and apply to any inmate going to any court for any reason.

### 3. ADC policy prohibits using property in retaliation and has a legitimate penological goal in securing inmate property.

To succeed in proving the fifth element of a retaliation claim, an inmate must establish that the subject prison official's actions "were arbitrary and capricious, or that they were 'unnecessary to the maintenance of order in the institution.'" *Watison,* 668 F.3d at 1114-15 (quoting *Franklin v. Murphy,* 745 F.2d 1221, 1230 (9th Cir. 1984)).  This fifth element places the burden on the inmate of "pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt*, 65 F.3d at 806; *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims require an inmate to show that adverse action "advanced no legitimate penological interest").  "Legitimate goals of a correctional institution include the preservation of

internal order and discipline and the maintenance of institutional security." *Schroeder*, 55 F.3d at 461.  In assessing this element, "courts should be circumspect when asked to intervene in the operation of state prisons" and "avoid excessive federal judicial involvement in prison administration." *Pratt*, 65 F.3d at 806-07.  Indeed, the Supreme Court has "specifically expressed its disapproval of excessive judicial involvement in day-to-day prison management." *Id.* at 807 (citing *Sandin v. Connor*, 515 U.S. 472, 482 (1995)).  For these reasons, courts "should 'afford appropriate deference and flexibility to prison officials when evaluating the proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.*

Securing an inmate's property while she is away from the complex even for the day serves legitimate penological goals and protects the inmate from property theft and loss. Such protections are provided for in ADC policy and it is the Warden's personal experience that inmates may steal another inmate's property if it is known the inmate is away from the complex. [9/11/2017 Tr. 11:21-24, 15:2-11, DO 909.04 § 1.8] Simply put, if an inmate is out of the facility and that fact is likely widely known on an open yard [9/11/17 Tr. 78:24-79:13], her belongings are at risk. ADC policy both allows for inventory and securing of inmate property, and prohibits retaliation specific to an inmate's property.  [DO 909.04 § 1.3].  Plaintiffs' attempts to dispute ADC's legitimate penological goal ostensibly clinging to the temporal timeframe fails to demonstrate that the action was not *reasonably* tied to penological goals.

### 4. Inmate Ashworth received all of her property promptly upon arriving back from court.

The curious nature of the retaliation allegation associated with the storing of Inmate Ashworth's property while she was out to court is that per normal prison operations, this was done to provide protection from theft — not to harm her in any way or take adverse action against her.  Warden Currier testified that she personally stayed late on July 14, 2017, to ensure Inmate Ashworth received her property that night—the same night she returned from court.  [9/11/2017 Tr. 16:17-25] There is no allegation, and

Warden Currier is not aware of any claim, that Inmate Ashworth's property was tampered with, destroyed, lost, or stolen while out to Court.  [Id.]

In sum, Plaintiffs have not proven that Defendants retaliated against Inmate Ashworth (and/or Inmate Keys for that matter) *because of* or the action taken was *substantially motivated* by any protected conduct.  Nor have Plaintiffs proven an *absence* of any penological goals with respect to the property storage. Inmate Ashworth's property was not targeted for roll up because of her participation in this case. The Court must therefore vacate its July 25, 2017 Order (Doc. 2209) prohibiting Defendants from operating ADC prisons per normal legitimate operations.

**B. Inmate Ashworth's Cellmate Change Was Not Retaliatory and Served Legitimate Penological Interests.**

Plaintiffs claim that Inmate Ashworth's cellmate was moved out of her cell in retaliation for their participation in this case. At the outset, Inmate Scheid (Ashworth's cellmate) has not testified at any hearing in this case.  Moreover, as to Inmate Scheid, Plaintiffs have only proffered inadmissible double hearsay of counsel to assert that Inmate Scheid was inappropriately housed with a dangerous inmate for a few days before the Court ordered her return to Ashworth's cell.  (Doc. 2109).  Attorney Corene Kendrick's account of what Inmate Ashworth told her on that phone allegedly about Inmate Scheid's displeasure with her new cellmate cannot serve as actual proof of retaliation.  As such, the Court should not entertain allegations of retaliation purportedly alleged by Inmate Scheid. It cannot go without saying, however, that Plaintiffs never established that Inmate Scheid was inappropriately housed with a dangerous inmate, let alone proof that Inmate Scheid was harmed as a result.

In short, Plaintiffs allege that ASPC-Perryville prison personnel split the two inmates up because Inmate Ashworth testified on July 14th and Scheid submitted an inmate letter in support of Inmate Ashworth regarding an alleged denial of an ICS. Defendants established during the hearings, however, that the cellmate change was based upon non-retaliatory, legitimate penological reasons. A pregnant inmate was having

problems with her cellmate, needed a cellmate change, needed a lower bunk, and moving this inmate in with Inmate Ashworth appropriately accomplished the necessary move. Add to this, neither the movement officer who made the cellmate/cell selection nor the Deputy Warden who approved the cellmate change, had any knowledge of Inmate Ashworth's participation in this case. Without knowledge of Inmate Ashworth's protected activity, the retaliation claim fails at the outset because there cannot be retaliatory motive for the conduct alleged.

Officer Kay explained to the Court during the September 13th hearing how he made the cellmate change selection. Specifically, the moves were to manage a potential threat to a pregnant inmate who was having escalating problems with her cellmate, not to retaliate against Inmates Ashworth and Scheid. [9/13/17 Tr. 53:14-23, 68:3-10] Indeed, Officer Kay was not even aware of Inmate Ashworth's participation in the case at the time of the moves. [9/11/17 TR. 20:6-18] Further, the decision was approved by a group of individuals, with the final decision belonging to Deputy Warden Oros.  Deputy Warden Oros' approval was not in retaliation for she too was not aware of Inmate Ashworth's participation in this case. [9/11/17 Tr. 17:1-18:13, 103:16-22]   Simply put, the two inmates were an appropriate cellmate match. [9/13/11 Tr. at 30:22-31:3, 9/11/17 Hg Ex. 19]  When Deputy Warden Oros was informed of claims that the moves were retaliatory, she personally investigated and found no indication whatsoever that the moves were *because* Inmate Ashworth testified in the case and Inmate Scheid provided a statement in the case.   [Id.] Moreover, the moves were accomplished with the least amount of disruption because the inmates' sense of community was considered. [Id. at 17:20-19:14] The cell changes were to merely provide some space between the pregnant inmate and her current cellmate but kept all the affected inmates on the same open yard, in the same neighborhood, where they could still do everything together they may have done before (socialize, eat together, recreate together, etc.) except sleep together in the same cell at night.  [Id.; 9/13/17 Tr. 33:21-34:8] And Inmate Ashworth had no issue with being paired with her new cellmate as to an appropriate match. [Doc. 2363 at 4:8-12]

1    So where is the impact Plaintiffs tout as implicating retaliation when Inmates

2   Ashworth and Scheid can do all they did before except sleep together in the same cell at

3   night? While Plaintiffs argue that Inmate Scheid was moved into a cell with an inmate

4   who has a reputation of being a gang member, those allegations came from Plaintiffs'

5   attorneys who articulated those concerns as Inmate Ashworth's, not Inmate Scheid's.

6   [Doc. 2190 at 5:12-16] Those allegations have never been confirmed by the record or by

7   even Inmate Scheid herself.

8    To-date, Inmate Scheid has not provided testimonial evidence  substantiating any

9   fears she had of her cellmate. Inmate's Ashworth's complaint about the cell change

10   simply boils down to having a pregnant cellmate and the inconveniences that come along

11   with it. More specifically, her _only_ counsel-made hearsay complaint has been a fear of

12   sleeping alone in the cell when officers came into her cell on a couple of nights to test the

13   temperature of the cell.  There is no evidence that the officers harassed or harmed her in

14   any way when they quickly entered the cell to test temperature.  And, there was legitimate

15   penological reason for the officers to check her cell temperature.  This is because her

16   cellmate was pregnant and temporarily had to be moved to an air conditioned area along

17   with all the other pregnant inmates (all housed at the same unit) to sleep until the

18   temperature fell below 86 degrees in the cell. [Doc. 2363 at 4:8-12, 9/11/17 Tr. at 21:15-

19   22:3] Warden Currier specifically explained that cell temperatures were still assessed even

20   when the pregnant inmates were sleeping in the air conditioned area so that the inmates

21   could be provided the option to return to the comfort of their cell when the cell

22   temperature decreased–a kind offering considering the pregnant inmates had to sleep on

23   the floor versus sleeping on the bunk and having a television to watch.  [Id. at 22:4-23:8].

24   Any impact that this couple of nights, fleeting inconvenience may have had on Inmate

25   Ashworth's sleep fails to prove the retaliatory conspiracy Plaintiffs allege. Ostensibly the

26   annoyance of sleeping alone is negligible as Plaintiffs have no issue proposing the

27   pregnant inmate be put into an empty cell to sleep alone every night. [Doc. 2363 at 4:19-

28   21]

Inmates do not have a constitutional right to the prison location, cell or cellmate of their choice. *Hewitt v. Helms*, 459 U.S. 460, 468 (1973). Here, Plaintiffs again fail to prove adverse action levied against Inmate Ashworth that was a result of retaliatory motive. Indeed, Inmate Ashworth kept her same cell assignment. Only her cellmate changed and the cellmate stayed assigned to the same yard. Plaintiffs likewise fail to prove an *absence* of any penological goals with respect to the action complained of. Indeed, Plaintiffs have not, and cannot, argue that moving a pregnant inmate who is having increasing friction with her cellmate does not serve a legitimate penological interest.[2] For these reasons, this Court should find no evidence of retaliation and vacate its July 25, 2017 Order (Doc. 2209) that categorically and inappropriately hamstrings prison officials from changing an inmate's housing location or even cellmate if the inmate participates in this case.

## C.  Counsel's Jumpsuit Assignment Challenge Fails.

Counsel, not Inmate Scheid, interjected a retaliatory jumpsuit assignment allegation into the September 11th hearing. No such claim was present in Plaintiffs' July 20, 2017 Notice (Doc. 2190). Nor is it anything that Inmate Scheid herself has ever complained about. Plaintiffs even concede that Inmate Scheid did not notify them that she was placed in a jumpsuit for failing to follow grooming rules. [Doc. 2363 at 7:28-28] If the inmate does not allege retaliation in this regard, counsel cannot do it for the inmate. On this basis alone, the Court must find no retaliation.

Even if Inmate Scheid herself had provided testimonial evidence challenging the jumpsuit assignment, the inmate cannot prove she was singled out for jumpsuit assignment in retaliation for her participation in this lawsuit. Indeed, the record is clear that at least 10 other inmates were similarly situated to Inmate Scheid and ordered to wear a jumpsuit. [9/13/17 Tr. 48:9-19] More importantly, it is not unconstitutional to require

---

[2] Plaintiffs challenge the credibility of Defendants' witnesses based on varying accounts of who moved Inmate Scheid back to the cell occupied by Inmate Ashworth on July 21, 2017. Whoever moved Scheid back is of no consequence where Plaintiffs are not challenging the move back.

an inmate to wear a one-piece inmate uniform versus a two-piece uniform.  ADC inmates on transport or watch regularly wear one-piece uniforms. [9/11/17 Tr. at 200:12-22] So, wearing a one-piece uniform at times is not a condition of confinement that is so out of the norm such that it could be considered retaliatory under any circumstance.  This is especially so where here, no one knows whether Inmate Scheid objected to the one-piece in the first place, let alone whether she was in the jumpsuit, not liking it, for an hour, a day, or longer.

In sum, the record is devoid of any proof that Inmate Scheid subjectively believed she was being retaliated against for being directed to wear a jumpsuit.  And, objectively, it defies credulity that an inmate peer could believe that Inmate Scheid was being singled out for participating in this case when she was similarly situated with at least 10 other inmates also wearing jumpsuits. Accordingly, this Court should reject this counsel generated claim.  Notably, the jumpsuit issue was brought to light because Lieutenant Papworth read an email from his superior who forwarded an email from Warden Currier directing that ADC staff is not to change certain enumerated inmates' (Inmate Scheid included) status prior to notifying the Warden.  [Id.]  This communication chain from Director Ryan, through wardens, deputy wardens, lieutenants, and down the line, demonstrates ADC's earnest efforts to comply with the Court's Order (Doc. 2209).

**D. Placement of Inmate Ashworth On the Target Search List Was Not Retaliatory and She Was Removed From the List Out of an Abundance of Caution – and Therefore Was Never Searched.**

In another counsel manufactured retaliation allegation, Plaintiffs' counsel challenge Inmate Ashworth's placement on the target search list for the month of August 2017. No such claim was present in Plaintiffs' July 20, 2017 Notice (Doc. 2190). Nor is it anything that Inmate Ashworth herself has ever complained about – which she would not have considering she was removed from the list and therefore not searched. Inmates are not notified when they are on the target search list for security and tactical reasons. [Id. at 93:5-7]  Inmate Ashworth was never searched as a result of being temporarily placed on

1    the list. [Id. at 101:9-102:3] And, there is no allegation that Inmate Ashworth knew she

2    was temporarily placed on the list and subject to search. Accordingly, Plaintiffs cannot

3    establish Inmate Ashworth suffered an adverse action that she considers retaliatory. Cut to

4    the quick, if the inmate does not allege retaliation, counsel cannot do it for the inmate. On

5    this basis alone, the Court should find no retaliation.

6         In any event, Defendants established that target searches serve penological goals of

7    preventing the introduction of contraband into the prison and hampering other illegal

8    activity. [9/13/17 Tr. At 78:16-80:23]   Plaintiffs cannot challenge this. As to Inmate

9    Ashworth, Special Security Unit Officer Jardine testified that he put Inmate Ashworth on

10   the target search list for August 2017 because she is a tram driver and he randomly targets

11   tram drivers because of their increased exposure to known sources of contraband and

12   increased access to areas where contraband can be obtained.  [Id. at 85:25-86:11, 88:14-

13   24, 97:15-101:1] There was no connection between Inmate Ashworth being placed on the

14   list and her participation in this case – SSU Officer Jardine was unaware of the inmate's

15   participation in this case.  [Id. 94:15-85:25, 96:4-97:14, 95:23-96:16].   When Inmate

16   Ashworth's connection with this case was made by Officer Papworth, Officer Papworth

17   took her off the list to avoid any baseless allegation of retaliation. [Id., see also 9/14/17

18   Hg. Ex. 31]   This demonstrates that the Court's Order regarding retaliation has been

19   communicated to all levels of ADC staff at ASPC Perryville and staff is cognizant of, and

20   following the Order, even going to far as to relieve an inmate from normal operations to

21   avoid defending against ongoing and baseless claims of retaliation.

22        Plaintiffs' retaliatory target search list allegation fails.  Inmate Ashworth did not

23   suffer any adverse action she could consider retaliatory when she was never searched.

24   Add to this, SSU Officer Jardine had no knowledge of Inmate Ashworth's participation in

25   this case; thus, no causal connection can be made between the list placement and the

26   inmate's protected activity. Even if Plaintiffs could make this necessary connection,

27   placement on the target search list was based upon legitimate penological goals to control

28   introduction of contraband into a prison facility – a decision based upon inmate job, not

specific to who the individual inmate is.   For these reasons, Plaintiffs' retaliation allegation fails.

### E. Defendants Did Not Deny Inmate Ashworth's Request for a Medical ICS in Retaliation for Her Participation in This Case.

Plaintiffs allege that Defendants have retaliated against Inmate Ashworth and/or Inmate Scheid because Corrections Officer Western told Inmate Scheid that officers agreed she did not need to call and ICS in response to Inmate Ashworth's demand that one be called.   Corrections Officer Western denied recollection of any such conversation. [8/08/17 Tr. at 33:7-22] And this is what the Court must consider.   Plaintiffs counsel's triple tier hearsay assertion that Inmate Ashworth told counsel that Officer Western told Inmate Scheid that officers agreed with the denial of the ICS is inadmissible to prove actual retaliation.   Add to this, the record is devoid of evidence that Officer Western made any such statement, or denied the ICS demand in the first place, because of personal knowledge that Inmate Ashworth testified in this case.   Because Plaintiffs cannot prove a causal connection between either the statement or the denial of the ICS and retaliatory motive, Plaintiffs' allegation has no merit.

Nevertheless, whether it's the statement at issue or the actual denial of the ICS, Defendants have established that the denial of the ICS was neither retaliatory, nor in violation of the Stipulation, nor conduct that caused Inmate Ashworth to suffer deliberate indifference to a serious medical need resulting in actual medical injury.   On August 9, 2017, Corrections Officer Western testified that she did not initiate an ICS because based upon her training, experience, and observation of Inmate Ashworth, the situation did not warrant activation.   [8/9/17 Tr. at 24:12-13]

On July 5, 2017, Inmate Ashworth was wheeled by another inmate over to Officer Western who was in the control room just beginning her shift. [Id. at 11:9-17]  The inmate told Officer Western that Inmate Ashworth needed to go to medical as she might be having an allergic reaction due to an eye procedure that was done earlier that day. [Id.]  Officer Western told her to go to medical. [Id. at 13:5-9]  At that time, Officer

14

Western did not observe anything warranting activating an ICS.  [Id. at 13:16-21. 25:3-22] Inmate Ashworth went to medical and they sent her back with instructions to put in an HNR to be seen the next day. [Id. at 15:2-7]  After that, Officer Western had repeat contact with Inmate Ashworth as Officer Western did her security checks.  [Id., 15:22-16:8]  During one of Officer Western's checks, Inmate Ashworth asked her to initiate an ICS. [Id.]  Officer Western then asked Inmate Ashworth to take her sunglasses off so she can be observed. [Id. at 16:9-17:25] Officer Western did not observe any physical signs of distress and observed that Inmate Ashworth was communicating without any signs of distress so she advised Inmate Ashworth that she was going to contact her supervisor. [Id., 18:1-5]  Indeed, her supervisor, Sergeant Coleman contacted medical personnel, received instruction to look for any change in presentation, met with Inmate Ashworth, and did not see any signs of distress warranting initiating an ICS.  [Id. at, 46:6-47:22]  Officer Western continued to observe Inmate Ashworth throughout her shift as she conducted her regular safety/security checks.  [Id. at 22:10-24:5] Officer Western observed no changes in Inmate Ashworth's physical presentation, but did observe that Inmate Ashworth sat outside in the direct summer sun to use the telephone for quite a while.  [Id. at 24:6-13, 20:4-10] If there had been a change, Officer Western would have initiated an ICS and, indeed, later that night, Officer Western did initiate an ICS for an inmate having chest pain. [Id. at 24:13-21]

In sum, Officer Western applied her training, experience, and common sense observation and determined that an ICS was not warranted.  There is no evidence that her decision was in retaliation *because of* Inmate Ashworth's participation in this case or for any other reason than a judgment call that corrections personnel make on a routine basis based upon the their training, experience, and the surrounding circumstances at the time. Plaintiffs have not met their burden of proof on the actions complained of here. And the record is indisputably devoid of any evidence that Inmate Ashworth suffered constitutional medical injury as a result.  Even after she was seen the next day by medical personnel, her condition did not require provision of emergency medical care.  Whether

1    challenging an inadmissible hearsay statement that Officer Western stood by her decision

2    not to activate and ICS, or the initial decision not to activate an ICE, there was no

3    retaliation.

4    **F. Plaintiffs Fail to Prove Retaliation Against Inmate Oyenik**

5    Inadmissible hearsay retaliation allegations made by Plaintiffs' counsel on behalf

6    of Inmate Oyenik suffer the same fatal flaws as those allegations made for Inmates

7    Ashworth and Scheid.  Plaintiffs fail to prove that the actions complained of were *because*

8    *of* or *substantially motivated by* Oyenik's participation in this case.  In sum, Plaintiffs

9    allege that because Inmate Oyenik testified in the July 14, 2017, HNR box removal

10   hearing, DW Mattos spoke to him in a loud/aggressive voice which might cause problems

11   for Inmate Oyenik with other inmates and Inmate Oyenik is concerned that ADA inmates

12   are being forced to move to the housing unit that is closer to the new medical clinic than

13   where the inmates presently live.  (Doc. 2190).  These retaliation claims are without

14   admissible evidentiary support.

15   First, during the July 14, 2017 hearing, Defendants committed to ensuring that any

16   inmates who testified during the hearing that day would have their property returned to

17   them upon arrival back to their complexes in the event their property was inventoried and

18   stored in their absence. [7/14/17 Tr. at 117:10-15]  As a result, ASPC-Florence South Unit

19   Deputy Warden Mattos was directed by his superiors to confirm whether Inmate Oyenik

20   had all of his property intact upon return back to ASPC-Florence.  [9/11/17 Tr. at 234:12-

21   235:1] Deputy Warden Mattos was not provided specific background information why he

22   was asked to do this. [Id. at 235:16-19]  Inmate Oyenik was asleep when DW Mattos

23   made contact with him to confirm his property was intact. When Inmate Oyenik did not

24   first respond to DW Mattos, DW Mattos asked again, louder. [Id. at 248:17-249:9] As the

25   Court surely observed during his testimony, DW Mattos naturally has a loud deep voice.

26   Speaking in a loud voice to an inmate to confirm his property was intact does not

27   constitute retaliation.  Nor is there any admissible evidence to establish Plaintiffs' curious

28   allegation that DW Mattos told Inmate Oyenik that the judge had called him up. [Id. at

249:10-13, 9/11/17 Hg. Ex 30]  In any event, such alleged statement is not retaliatory even if it occurred – which it did not.

Second, the record is devoid of any evidence that DW Mattos' loud voice actually turned inmates against him as Inmate Oyenik apparently feared. Inmate Oyenik has not suffered any actual retaliatory harm.

Third, Plaintiffs lament Oyenik's speculative fear that an offer made to ADA inmates to move closer to the new medical clinic could be attributed to him (Doc. 2363 at 13:16-21), yet Plaintiffs have not specified *what actions* Defendants took that would implicate Oyenik to other inmates. Moreover, it cannot be disputed that DW Mattos' offer to move ADA inmates closer to the medical clinic was indeed a kind and common sense offer resulting from a change in location of the medical clinic and completion of ADA improvements to a housing unit located closer to the medical clinic. [9/11/17 Tr. at 255:17-256:2].  The offer was not the result of retaliatory motive.  And, inmates were not forced to move as Plaintiffs allege.  Rather, Deputy Warden Mattos explained that he made the offer to all the ADA inmates, two inmates accepted the offer, and the inmates were asked to write inmate letters indicating their choice purely for documentation and planning purposes.  [Id. at 256:6-257:19, 9/11/17 Hg. Ex. 29]. If indeed inmates were "forced" to move in retaliation for Inmate Oyenik testifying, then surely more than two inmates would have been "forced" to move.  Finally, Inmate Oyenik is not an ADA inmate and was not present for the town hall meeting Deputy Warden Mattos held with the ADA inmates.  [Cite]. Plaintiffs therefore, are without any foundation to challenge what actually occurred during the meeting. Defendants' proof on this issue therefore stands without rebuttal.

Here, Plaintiffs are unable to prove that DW Mattos acted with any retaliatory motive in confirming Inmate Oyenik's property status or offering ADA inmates a chance to move closer to the new medical clinic.  Plaintiffs' allegations simply fail.

/ / /

/ / /

### III.   THE COURT'S JULY 25, 2017 ORDER (Doc. 2209) SHOULD BE VACATED WHERE PLAINTIFFS FAILED TO PROVE ACTUAL RETALIATION AND THE ORDER IMPERMISSIBLY MICROMANAGES PRISON OPERATIONS

In the flurry of Plaintiffs' extemporaneous and ongoing retaliation allegations, the resulting July 21, 2017 emergency telephonic hearing in which Defendants were deprived of the opportunity to introduce evidence, and two days of evidentiary hearings wherein Inmates Ashworth and Oyenik did not even testify, the rule of law on establishing actual retaliation claims has been turned on its head.  Indeed, over the course of this three-month-long exploration of retaliation allegations, the emphasis and focus has become the mere specter of on inmate forming a subjective perception of retaliation. This concentration has unlawfully subsumed the balancing principles that the Court must apply in determining whether actual retaliation occurred and if so, formulation of appropriate relief.

While inmates have a right to bring constitutional claims and not be retaliated against for doing so, inmates are not inoculated from the normal conditions of confinement merely because they engaged in protected activity.  *Peterson v. Shanks*, 149 F. 3d 1140, 1144 (10th Cir. 1998).  It is well recognized that courts must defer to prison officials' reasonable decisions in prison administration. *See Turner* v. *Safley*, 482 U.S. 78, 84–85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Rizzo* v. *Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).  It is additionally well established that security is a legitimate goal of the penal system. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).  Federal courts are ill equipped to deal with the problems of prison administration. *Lewis v. Casey*, 518 U.S. at 387, 116 S.Ct. 2174. "A deferential standard was deemed necessary to keep the courts out of the day-to-day business of prison administration, which 'would seriously hamper [prison officials'] ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration.'" *Id.* (quoting *Turner*, 482 U.S. at 89). "The Court adopted a reasonableness standard, as opposed to a heightened scrutiny, to permit prison administrators 'to anticipate security

problems and to adopt innovative solutions to the intractable problems of prison administration' and thereby prevent unnecessary federal court involvement in the administration of prisons." *Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir.1991) (quoting *Turner*, 482 U.S. at 89).

Courts have long since struck a balance among these interests by requiring inmates claiming retaliation to make the five requisite showings enumerated above: (1) a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68. Additionally, "[c]ase law dictates that such claims must be examined 'with skepticism and particular care[,]'" because "[r]etaliation claims by prisoners 'are prone to abuse.'" *Greening v. Klemme*, CV-12-06000-JLQ, 2014 WL 3640813, at *5 (E.D. Wash. July 22, 2014) (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), and *Graham v. Henderson*; 89 F.3d 75, 79 (2d Cir. 1996)).

Here, Plaintiffs argue (and the Court ordered in absence of any evidence of actual retaliation) that no action can be taken involving any inmate participating in this case for fear that those inmates themselves or any other similarly situated inmate may form a subjective belief of retaliation because of the protected conduct. Focusing solely on a specter of a subjective perception of retaliation ignores the careful balance courts must employ and in fact ignores that inmates must prove actual retaliation – not just feel like he/she is being retaliated against. Focus on inmate (or Plaintiffs counsel's or the Court's) subjective belief in absence of proof that actual retaliation has resulted in unprecedented preferential treatment of inmates and overbroad and unreasonable elimination of the deference that must be afforded to prison officials in operating their prisons. Prophylactically immunizing inmates from the legitimate realities of prison life impermissibly hampers prison operations and compromises safe, secure, and orderly operations. Indeed, in *Lewis v. Casey*, the Supreme Court set aside an injunctive order that was developed without any input from state prison authorities and was exceedingly

19

1   intrusive, and remanded for further proceedings.

2
    > [T]he injunction imposed by the District Court was
3   > inordinately—indeed, wildly—intrusive. There is no need to
    > belabor this point. One need only read the order . . . to
    > appreciate that it is the *ne plus ultra* of what our opinions have
4   > lamented as a court's 'in the name of the Constitution,
    > becom[ing] ... enmeshed in the minutiae of prison
5   > operations.")

6   *Lewis v. Casey*, 518 U.S. at 362–63, 116 S.Ct. 2174 (*citing Bell v. Wolfish*, 441 U.S. 520,

7   562, 99 S.Ct. 1861, 1886, 60 L.Ed.2d 447 (1979)).

8       The law on establishing inmate retaliation claims is settled.  Inmates must present

9   evidence of their claims, the Court must assess credibility on both sides, and the interests

10  at stake must be weighed in order to make a determination. There are ample protections

11  against retaliation already in place in this case. ADC policies prohibit it, and ADC

12  complied with the Court's Order to communicate the prohibition from top to bottom

13  specifically as it relates to any inmate participating in any way in this lawsuit.  The record

14  reflects that the message was conveyed immediately by ADC's Director and has since

15  been repeated by wardens and echoed down through staff. Accordingly, the injunctive

16  relief ordered by the Court should be lifted. This is especially so where the prohibition

17  against taking any action against an inmate in undefined temporal proximity to

18  participation in this case that could be subjectively considered retaliatory by the inmate is

19  impermissibly far reaching, unworkable,   requires guesswork as to what a particular

20  inmate might think is retaliatory, and constitutes prohibited micromanagement of prison

21  operations.

22      Because Plaintiffs have failed to prove actual retaliation, this Court should vacate

23  its July 25, 2017 Order (Doc. 2209) to the extent the Order finds retaliation to have

24  occurred and requires prison officials to cease normal and legitimate prison operations just

25  because an inmate might not understand the action, not like it, and claim it to be

26  retaliatory so that the inmate – not prison officials – get to dictate prison operations.

27  / / /

28  / / /

1

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court find that Defendants *have not* retaliated against Plaintiffs Ashworth, Scheid, and Oyenik and vacate its July 25, 2017 Order providing the class with injunctive relief for unproven claims.

RESPECTFULLY SUBMITTED this 1st day of November 2017.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By /s/Rachel Love
Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Jacob B. Lee
Kevin R. Hanger
Timothy M. Ray
Richard M. Valenti
Jamie D. Guzman
3100 West Ray Road, Suite 300
Chandler, Arizona  85226

Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried
Lucy M. Rand
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alison Hardy:              ahardy@prisonlaw.com

Amelia M. Gerlicher:       agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com

Amy B. Fettig:             afettig@npp-aclu.org

Asim Varma:                avarma@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

Caroline N. Mitchell:      cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

Corene T. Kendrick:        ckendrick@prisonlaw.com; edegraff@prisonlaw.com

Daniel Clayton Barr:       DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

David Cyrus Fathi:         dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

Donald Specter:            dspecter@prisonlaw.com

Jessica Pari Jansepar Ross:   jross@azdisabilitylaw.org

John Howard Gray:          jhgray@perkinscoie.com; slawson@perkinscoie.com

John Laurens Wilkes:       jlwilkes@jonesday.com, dkkerr@jonesday.com

Jose de Jesus Rico:        jrico@azdisabilitylaw.org

Kathleen E. Brody          kbrody@acluaz.org

Kirstin T. Eidenbach:      kirstin@eidenbachlaw.com

Maya Abela                 mabela@azdisabilitylaw.org

Rose Daly-Rooney:          rdalyrooney@azdisabilitylaw.org

Sara Norman:               snorman@prisonlaw.com

Sarah Eve Kader:           skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org

Rita K. Lomio:             rlomio@prisonlaw.com

Victoria Lopez:            vlopez@aclu.org

1

2       I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

3

4       N/A

5                                   /s/Rachel Love

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28