Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
15 South 15th Avenue
Phoenix, Arizona 85007
Telephone: (602) 542-1645
Fax: (602) 542-3393
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
Timothy M. Ray, Bar No. 029191
Richard M. Valenti, Bar No. 031533
Jamie D. Guzman, Bar No. 022095
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
afletcher@strucklove.com
jlee@strucklove.com
khanger@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DKD<br><br><br><br>**DEFENDANTS' OBJECTIONS TO PLAINTIFFS' [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO ENFORCE THE STIPULATION (DOC. 2362)** |

Defendants Charles Ryan and Richard Pratt ("Defendants") object to Plaintiffs' [Proposed] Order Granting Plaintiffs' Motion to Enforce the Stipulation. (Doc. 2362.) There has been no finding of substantial noncompliance with the Stipulation's Max Custody Performance Measures. The Motion has been denied without prejudice by the Court, and the relief requested by Plaintiffs exceeds the scope of the Stipulation. Accordingly, this Court should reject Plaintiffs' [Proposed] Order.

I.     **INTRODUCTION**

On February 23, 2017, nearly two years into the monitoring period, Plaintiffs filed their Motion to Enforce the Stipulation (Maximum Custody Performance Measures 1-3, 5-6, and 8) ("Motion to Enforce MCPMs"). (Doc. 1944.) Plaintiffs' Motion challenged—for the first time—the methodology and accuracy of compliance reporting for six of the nine MCPMs. (Id.) Briefing was complete on Plaintiffs' Motion on April 6, 2017. (Docs. 1983, 2006.)

At the August 9, 2017 Status Hearing, this Court requested that Plaintiffs consider "hitting the refresh button" on their Motion to Enforce. (Tr. 8/9/17 at 171:23-25-172:1-24.)[1] Plaintiffs' [Proposed] Order should be stricken/denied because: (1) there has been no finding by this Court that Defendants have been substantially noncompliant with MCPMs 1-3, 5-6, and 8 during the last 31 months; and (2) the relief proposed by Plaintiffs exceeds the scope of the Stipulation.

---

[1] While Plaintiffs orally requested that the Court extend the time period for monitoring of MCPMs based upon Plaintiffs' satisfaction with ADW Hackney's multi-level review and quality control duties associated with reporting of MCPMs (as testified to by ADW Hackney during the March 28, 2017, educational hearing regarding monitoring methodology), this request did not make it into Plaintiffs' [Proposed] Order. (Tr. 9/12/17 at 100:17-25 – 101: 1-2.) Had it been included, Defendants' response is that Plaintiffs have already received the relief requested in that regard. ADW Hackney implemented the multi-level review process of data reported for the MCPMs in the Fall of 2016. It is now Fall of 2017. When Defendants soon move to terminate monitoring and reporting of the MCPMs pursuant to Paragraphs 17-28 of the Stipulation (Doc. 1185), the Court will have nearly thirty-three (33) months of data before it – showing compliance with the Stipulation, necessitating termination of monitoring and reporting on the MCPMs.

1

## II. PLAINTIFFS' [PROPOSED] ORDER IS NOT RIPE FOR CONSIDERATION WHERE THE COURT DENIED PLAINTIFFS' MOTION TO ENFORCE (WITHOUT PREJUDICE).

On September 30, 2017, this Court denied Plaintiffs' Motion to Enforce MCPMs without prejudice. (Doc. 2353 at 3-4.) Consideration of a proposed order on a motion that has been denied puts the cart before the horse. On this basis alone, Plaintiffs' [Proposed] Order should be denied.

Moreover, as set forth in Defendants' Response to Plaintiffs' Motion to Enforce (Doc. 1983), and incorporated herein, Defendants established through ample evidence and argument that twenty-four (24) months of data and reporting should not be tossed aside as inaccurate or unreliable. The Court appears to understand this tug-of-war between Defendants' actual data and Plaintiffs' inherent distrust of the process in denying Plaintiffs' Motion to Enforce (without prejudice):

> As the Court explained at the September 12, 2017 Status Hearing, because the issues have become stale with regard to Plaintiffs' request for relief concerning maximum custody performance measures, the Court will deny the instant motion without prejudice to refiling when a proposed Order is filed that reflects the current status and request for relief.

(Doc. 2353 at 3-4).

One apparent reason for the Court's denial of Plaintiffs' Motion is the facial lack of evidence proffered by Plaintiffs to actually call into question the accuracy of the monitoring methodology and data reported by Defendants showing compliance with the Stipulation. (Tr. 9/12/17 at 105:10-25 – 106: 1-11.) Another is Plaintiffs' demand for an analysis of the rate of refusal for out of cell time offered to max custody inmates – as subject matter not required by the Stipulation. The Court has already recognized the lack of evidence obtained from the inmates themselves as to refusal rates. (Tr. 9/12/17 at 105:10-25 – 106: 1-11; Tr. 8/9/17 at 171:23-25 – 172:1-2.) More importantly, the Court recognizes that the Stipulation only requires the monitoring of offered out of cell time – not tracking, monitoring, or expert analysis of refusal rates. (Tr. 9/12/17 at 106: 1-11.)

2

In short, the Court has never ruled that Defendants are substantially noncompliant with the Stipulation regarding MCPMs 1-3, 5-6, and 8. Without such a ruling, Plaintiffs' [Proposed] Order should be rejected.

### III. THE COURT HAS NOT ORDERED THAT RETROACTIVE APPLICATION OF THE MAX CUSTODY MONITOR GUIDE IS NECESSARY TO TERMINATE MONITORING AND REPORTING.

In their [Proposed] Order, Plaintiffs request this Court order that Defendants "shall implement and abide by the monitoring methodology set forth in the final Monitoring Guide for Maximum Custody Performance Measures ("MCPM") developed during the pendency of this motion." (Doc. 2362 at 2.) To do so, however, would effectively re-write the terms of the Stipulation, which does not impose such an obligation on Defendants, in violation of Paragraph 40. That provision prohibits any alteration or modification of the Stipulation "except by a writing signed by all representatives of all parties at the time of the modification." (Doc. 1185, ¶ 40.) Defendants do not agree to such a change. However, Defendants have and are following their own Monitoring Guide as illustrated by documents produced in conjunction with the Max Custody Notebooks.

Plaintiffs also request that, to terminate monitoring and reporting under the Stipulation, Defendants must first show retroactive monitoring compliance with a given performance measure as dictated by the Max Custody Monitor Guide. Plaintiffs cite Doc. 1951 at 1-2 as support. But, this Order did not address MCPMs or monitoring methodology at all. Instead, the Order specifically pertains to the Monitoring Guide for the medical performance measures – a subject of constant Court scrutiny and actual orders finding substantial noncompliance. For MCPMs, there has been no such similar history – at all. There has been no Court scrutiny given to monthly MCPM compliance levels, nor has there been any remedial action taken, or even any findings of substantial noncompliance on any MCPMs or remedial plans implemented. Where substantial noncompliance has never been found by the Court as to any MCPMs, retroactive application of methodology for termination of monitoring defies fairness.

IV. **PLAINTIFFS' REQUEST FOR THE APPOINTMENT OF AN EXPERT TO ASSESS "RATES OF REFUSALS" FOR OFFERED OUT OF CELL TIME EXCEEDS THE SCOPE OF THE STIPULATION.**

Plaintiffs' [Proposed] Order asks this Court to find that alleged high rates of refusals of out of cell time for max custody inmates calls into question Defendants' veracity in actually offering the out of cell time required by the Stipulation. (Doc. 2362 at 2.) Plaintiffs request that the Court: (1) appoint an expert (paid by Defendants) to "remedy the overwhelming pattern of refusals"; (2) order Defendants to monitor and report programming and recreation refusal rates; and (3) order Defendants to report refusal statistics to the Court on a monthly basis for a period of eight (8) months.

First, Plaintiffs have not, and cannot, prove that Defendants failed to sincerely offer required out of cell time under the Stipulation/MCPMs. Regardless, this Court cannot order Defendants to monitor and report refusal rates and also appoint an expert to analyze a subject matter not addressed by and not required to be monitored/reported under the Stipulation. This Court already understands that the Stipulation requires only the opportunity for out of cell time, not monitoring and analysis of gross refusal rates of the same. (Tr. 9/12/17 at 106: 1-11.)

Where the demands for monitoring, reporting, and expert analysis of refusal rates fall outside the four corners of any subject matter contemplated by the Stipulation and corresponding MCPMs, the Court has no authority to order the relief requested by Plaintiffs. To do so would constitute prohibited modification of the terms of the Stipulation. (See Doc. 1185, ¶¶ 39-40 [prohibiting amendment, modification, or alteration of the terms of the settlement contract without written agreement of the parties]); *Olliver/Pilcher Ins., Inc. v. Daniels*, 715 P.2d 1218, 1221 (Ariz. 1986) ("[T]he court cannot create a new agreement for the parties to uphold the contract."); *Isaak v. Mass. Indem. Life Ins. Co.*, 623 P.2d 11, 14 (Ariz. 1981) ("It is not within the power of this court to revise, modify, alter, extend, or remake a contract to include terms not agreed upon by the parties."(Internal quotation marks omitted). The Court cannot unilaterally modify the Stipulation to require something that was not bargained for.

4

Second, even if appointment of a "rate of refusal" expert were permitted under the Stipulation and MCPMs, Plaintiffs have not established actual evidence of a systemwide epidemic of refusal rates that would justify the appointment of an expert. Plaintiffs assert that their expert "identified factors that often underlie refusal rates in a correctional setting, such as failure to create a safe environment for participants; fear of officers and other prisoners; custody staff discouraging participation; patient acuity; poor programming; and lack of a positive relationship with the provider." (Doc. 2362 at 2-3.) However, Plaintiffs have no evidence that these factors actually apply to what Plaintiffs assert are refusal rates out of the norm – also lacking actual comparison to any other comparable corrections system's statistics. In short, Plaintiffs rely on mere conclusions, speculation, and distrust, unsupported by actual evidence from the thousands of class members themselves. A few anecdotal declarations do not suffice to buttress Mr. Stewart's guesses. Add to this, Plaintiffs' request that the expert deal with "Defendants' failure to deal clinically or operationally with the pervasive problem of refusals" (Doc. 2362 at 3), yet clearly absent from the Stipulation or MCPMs is any provision requiring Defendants to "deal clinically or operationally" with refusals even if there was a "pervasive problem" – which Plaintiffs have not proven.

Third, Plaintiffs ask this Court to order Defendants to pay for an expert to conduct a refusal-rate analysis and prepare a remedial action plan. Plaintiffs' [Proposed] Order provides no legal authority for the same and fails to state under what vehicle the Court could appoint and order Defendants to pay for such an expert. As previously briefed in regard to the Court's objectionable appointment of a technical advisor to do a medical staffing analysis, Defendants are not required to pay for such an expert advisor. *See Improving Judicial Gatekeeping: Technical Advisors and Scientific Evidence*, 110 Harv. L. Rev. 941, 958 n. 70 (1997) ([J]udges are not explicitly authorized to allocate such costs between the parties). Indeed, because the advisor is serving the court, not the parties, the court should assume the costs of the advisor. *See*, *e.g.*, *Reilly v. United States,* 682 F.

5

Supp. 150, 157 (D.R.I. 1988), *affd in part*, 863 F.2d 149 (1st Cir. 1988).[2] The Court cannot appoint, and certainly should not order Defendants to pay for, an expert to track, analyze, and propose remedial action plans for a subject matter not contemplated by the Stipulation. To do so would exceed this Court's enforcement powers. Plaintiffs' [Proposed] Order should therefore be rejected.

## V. CONCLUSION

Based upon the foregoing, Defendants respectfully request this Court strike, deny and/or reject Plaintiffs' new [Proposed] Order regarding their Motion to Enforce the Stipulation (Maximum Custody Performance Measures 1-3, 5-6, and 8) (Doc. 2362.)

---

[2] If the Court were to grant Plaintiffs' request, which it should not where the Stipulation does not address rates of refusals and thus the Court has no authority to oblige Plaintiffs' request, it should apportion costs evenly as other Courts in this circuit have done. *See State of Washington v. Moniz*, 2:08-CV-5085-RMP, 2015 WL 7575067, at *14 (E.D. Wash. Aug. 13, 2015); *Agilent Techs. Inc. v. Affymetrix, Inc.*, 06-05958JW, 2007 WL 3231726, at *3 (N.D. Cal. Oct. 30, 2007) (same); *Regents of the Univ. of California v. Micro Therapeutics Inc.*, C 03-05669 JW, 2006 WL 1469698, at *2 (N.D. Cal. May 26, 2006) (same); *Cryptography Research, Inc. v. Visa Int'l Serv. Assoc.*, C04-04143 JW, 2007 WL 735714, at *2 (N.D. Cal. Mar. 7, 2007) (same); *Boston Sci. Corp. v. Micrus Corp.*, C 04-04072JW, 2007 WL 1518435, at *2 (N.D. Cal. May 22, 2007) (same).

6

DATED this 3rd day of November 2017.

                    STRUCK LOVE BOJANOWSKI & ACEDO, PLC


                    By /s/Rachel Love
                        Daniel P. Struck
                        Rachel Love
                        Timothy J. Bojanowski
                        Nicholas D. Acedo
                        Ashlee B. Fletcher
                        Jacob B. Lee
                        Kevin R. Hanger
                        Timothy M. Ray
                        Richard M. Valenti
                        Jamie D. Guzman
                        3100 West Ray Road, Suite 300
                        Chandler, Arizona 85226

                        Arizona Attorney General Mark Brnovich
                        Office of the Attorney General
                        Michael E. Gottfried
                        Lucy M. Rand
                        Assistant Attorneys General
                        15 South 15th Avenue
                        Phoenix, Arizona 85007

                        *Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Dietrich: | adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Kirstin T. Eidenbach: | kirstin@eidenbachlaw.com |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Victoria Lopez: | vlopez@aclu.org |

1
2   I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:
3
    N/A
4
                                    /s/Rachel Love
5