1   Kathleen E. Brody (Bar No. 026331)
    **ACLU FOUNDATION OF ARIZONA**
2   3707 North 7th Street, Suite 235
    Phoenix, Arizona 85013
3   Telephone: (602) 650-1854
    Email: kbrody@acluaz.org
4
    *Attorneys for Plaintiffs Shawn Jensen, Stephen*
5   *Swartz, Sonia Rodriguez, Christina Verduzco,*
    *Jackie Thomas, Jeremy Smith, Robert Gamez,*
6   *Maryanne Chisholm, Desiree Licci, Joseph*
    *Hefner, Joshua Polson, and Charlotte Wells, on*
7   *behalf of themselves and all others similarly*
    *situated*
8   **[ADDITIONAL COUNSEL LISTED ON**
    **SIGNATURE PAGE]**
9

10                   UNITED STATES DISTRICT COURT

11                         DISTRICT OF ARIZONA

12   Victor Parsons; Shawn Jensen; Stephen Swartz;      No. CV 12-00601-PHX-DKD
     Dustin Brislan; Sonia Rodriguez; Christina
13   Verduzco; Jackie Thomas; Jeremy Smith; Robert
     Gamez; Maryanne Chisholm; Desiree Licci; Joseph    **PLAINTIFFS' REPLY IN**
14   Hefner; Joshua Polson; and Charlotte Wells, on     **SUPPORT OF THEIR**
     behalf of themselves and all others similarly      **MOTION FOR ATTORNEYS'**
15   situated; and Arizona Center for Disability Law,   **FEES AND COSTS**
                                                        **[DOC. 2276]**
16                     Plaintiffs,

17            v.

18   Charles Ryan, Director, Arizona Department of
     Corrections; and Richard Pratt, Interim Division
19   Director, Division of Health Services, Arizona
     Department of Corrections, in their official
20   capacities,

21                     Defendants.

22

23

24

25

26

27

28

LEGAL137572022.2

1 **I.    INTRODUCTION**

2        Plaintiffs moved for attorneys' fees and costs, including expert costs, incurred in

3 *enforcing* the health care performance measures of the Stipulation through June 30, 2017.[1]

4 [Doc. 2276]  This work and this request for fees and costs are separate from the routine

5 monitoring work that pursuant to the Stipulation is capped at $250,000 per calendar year.

6 [Doc. 1185 ¶¶ 43-44]  Plaintiffs' counsel has tirelessly worked to enforce the Stipulation

7 and protect the Class, and they have achieved remarkable results, prevailing in numerous

8 motions and obtaining much needed relief for the Class, despite Defendants' ongoing

9 intransigence.  In response, Defendants merely make blanket objections, misconstrue the

10 Stipulation, misinterpret the law, and attempt to impugn the experience, skill and work of

11 Plaintiffs' counsel—all to no avail.  Plaintiffs' counsel are entitled to their full fees and

12 costs in enforcing the Stipulation, as well as a 2.0 multiplier to recognize superior

13 performance, excellent results, and the need to attract competent counsel to similar

14 extremely difficult and labor-intensive cases that serve to protect the fundamental

15 constitutional rights of vulnerable people.[2]

16

17

18

19

20

21

---

22        [1] Contrary to Defendants' claim that Plaintiffs' counsel did not attempt to
negotiate fees prior to this motion (Doc. 2402 at 2 n.1), Plaintiffs' counsel met and
23 conferred with Defendants and made a verbal settlement offer at the time.  Defendants
rejected that offer and no counter-offer was made.  [Doc. 2278 ¶ 10]  Plaintiffs note that
24 Corizon—not Defendants—will pay the attorneys' fees and costs requested here, as the
Contract Amendment between Corizon and the Arizona Department of Corrections
25 (ADC) dated May 11, 2015 indicates that Corizon has agreed to indemnify ADC for all
costs and attorneys' fees related to "substantial non-compliance with the terms of the
26 health care performance measures set forth in Exhibit B to the Stipulation but only for
claims arising from the acts or omissions of Corizon during the time period July 1, 2015
27 through contract termination."  [Doc. 2409-1 at 32]
        [2] Plaintiffs reserve the right to seek additional attorneys' fees for hours spent on
28 fee-related litigation, including any appeal.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    PLAINTIFFS ARE ENTITLED TO THE FULL FEES REQUESTED

### a.    Plaintiffs Request Only Fees for Time and Expenses Spent Enforcing the Stipulation

Defendants erroneously claim that Plaintiffs' billing records do not reflect that the time and expenses recorded were spent enforcing the Stipulation.[3]  [Doc. 2402 at 3, 25]  This is simply untrue.[4]  The Declarations of David Fathi and Don Specter clearly state that the time and expenses for which compensation is sought were spent in enforcing provisions of the Stipulation.  [Doc. 2277 ¶ 9; Doc. 2278 ¶ 7]  Plaintiffs have separately billed Defendants pursuant to Paragraph 44 of the Stipulation for the routine monitoring work conducted in this case.[5]

---

[3]  Defendants also erroneously read billing requirements into Paragraph 43 of the Stipulation that are simply nowhere in the text.  For example, they incorrectly assert that the Stipulation excludes work on notices of non-compliance from enforcement work, and requires that each compensable time entry include only work on a motion to enforce for a specific performance measure and facility.  [Doc. 2402 at 3]

[4]  In their response brief, Defendants cite a number of Plaintiffs' billing entries claiming that it is impossible to tell if they reflect enforcement work—despite the declarations to which the bills are appended.  [Doc. 2402 at 6-7]  Several of Defendants' examples, however, either contain errors in their reproduction, or are incorrectly duplicated.  For example, Defendants recite a billing entry from K. Eidenbach, dated 09/02/2016, as, "[r]eview, and revise proposed order.  8.1."  [Doc. 2402 at 7]  But the actual billing entry from the timesheet reads, "09/02/2016 Review and revise response brief, declaration, motion to seal, and exhibits; facilitate filing; draft, review, and revise proposed order.  8.1."  [Doc. 2278 at 68]  Additionally, Defendants duplicated three billing entries for K. Eidenbach, all of which appeared on her billing statements only once (*see* Doc. 2278 at 66):  1) 02/10/2016 Research and outline settlement memorandum. 5.7; 2) 02/12/2016 Review documents re the same. 7.3; 3) 02/13/2016 Draft settlement memorandum.  6.3.  [*See* Doc. 2402 at 7]  Finally, Defendants duplicated a 12/5/2016 billing entry by the PLO, "CK emails w/oppo counesl (sic)" (Doc. 2278 at 40), erroneously claiming that this billing entry appears on PLO's timesheets for both 12/5/2016 and 12/6/2016, when in fact it appears only on 12/5/16.  [Doc. 2402 at 6]

[5]  Defendants also claim that "many of the entries" in the billing records are specific to maximum custody issues, and cite four examples that total 7.6 hours.  [Doc. 2402 at 2 n.3]  Plaintiffs have reviewed these time entries and concede that in the 196 pages of billing records submitted, these entries were inadvertently included.  Plaintiffs acknowledge this minor oversight and agree to reduce the amount of their fee request by $1,629 [(7 hrs x $219) + (0.6 hours x $160)] plus $1,629 for the 2.0 enhancement for a total reduction of $3,258.

1

2

      **b.**      **Plaintiffs are the Prevailing Party in this Matter and the Fees Requested are Reasonable.**

3       Defendants claim that the Stipulation defines both "prevailing party" and

4  "reasonable attorney's fees" and that under these alleged definitions Plaintiffs are not

5  entitled to fees.  [Doc. 2402 at 4-8, 15-16]  But this is false:  the Stipulation defines

6  neither term; rather, both are well-established terms in the law of civil rights fee claims,

7  borrowed from 42 U.S.C. § 1988.  As outlined in the Motion for Attorneys' Fees and

8  Costs ("Motion"), Plaintiffs clearly and repeatedly have achieved "prevailing party" status

9  in enforcement motions and in findings of non-compliance and the relief repeatedly

10  ordered by this Court.  [Doc. 2276 at 6-9]  Moreover, the fees requested are reasonable

11  under the lodestar method and the *Kerr* factors pertinent to adjustments to the lodestar.

12  *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 69-70 (9th Cir. 1975).  [*See also*

13  Doc. 2276 at 10-20]

14       Defendants claim that Plaintiffs' attorneys' fees are unreasonable.  [Doc. 2402 at

15  15-16]  That contention is belied by their own counsels' fees for the same time period

16  which are substantially *more* than Plaintiffs seek even when a 2.0 multiplier is included.

17  [*See* Declaration of Jennifer Onka, November 6, 2017, ¶ 3, Ex. 1 (Invoices demonstrating

18  $1,744,543.45 in billing from Struck, Weineke, & Love on this case from February 2015

19  to June 2017)][6]  This fact is especially striking because courts have recognized that

20  plaintiffs' counsel generally will expend more time and incur greater fees than defendants,

21  as they have the burden of moving the case forward.  *See, e.g.*, *Keith v. Volpe*, 644 F.

22  Supp. 1317, 1320 (C.D. Cal. 1986), *aff'd*, 858 F.2d 467 (9th Cir. 1988) ("Plaintiffs' fees

23  will invariably exceed those of defendants because the plaintiffs must bear 'the laboring

24

25

---

26      [6] Recent media reports indicate that Defense counsel has actually been paid more than $1.8 million for their work on this case.  *See* J. Jenkins, *Legal Costs for Arizona*

27  *Prison Health Care Settlement Approach $4 Million*, KJZZ, November 6, 2017, *at* http://kjzz.org/content/562365/legal-costs-arizona-prison-health-care-settlement-

28  approach-4-million.

1   oar on burdens of proof and presentation.'") (citing *Burgess v. Premier Corp.*, 727 F.2d

2   826, 840 (9th Cir. 1984)).

3          In further support of the reasonableness of their attorney fees, Plaintiffs submitted

4   196 pages of detailed billing records with roughly 2,600 time entries.[7]  [Docs. 2277-2;

5   2277-3; 2277-4; 2278]  In response, Defendants have objected to nearly every single time

6   entry using one of two generic claims—either "more detail is needed" or "monitoring,

7   clerical, or otherwise insufficient."  [Docs. 2402 ¶ 19; 2394-2; 2394-3]  Of the thousands

8   of entries, only six were **not** objected to.[8]  [*See* Doc. 2402-2 at 74; Doc. 2402-3 at 23-24,

9   53]  But Defendants fail to present "specific objections" to the reasonableness of each

10  time entry (Doc. 2402 at 3-10) and as a result have waived their objections.  *See Gates v.

11  Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994) (the party opposing a fee award has the

12  burden of proving excessiveness and must make adequate specific objections); *see also*

13  *Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984) (declining "to consider petitioner's further

14  argument that the hours charged by respondents' counsel were unreasonable," as

15  "petitioner failed to submit to the District Court any evidence challenging the accuracy

16  and reasonableness of the hours charged . . . "); *Earthquake Sound Corp. v. Bumper

17  Indus.*, 352 F.3d 1210, 1219 (9th Cir. 2003) (parties waive the ability to challenge the

18  amount of attorney's fees by not making timely specific objections).

19         Defendants further claim that Plaintiffs are required to connect every minute of

20  time billed to a specific facility and specific performance measure in order to establish

21  "prevailing party" status.  They cite no case to support this allegation.  [Doc. 2402 at 5-6]

22  And that is not what the law requires.  As *Hensley v. Eckerhart* established, attorney fee

23  claims are fully compensable even when a plaintiff achieves partial success as long as

24  _____

25       [7]  Defendants also fail to note that Plaintiffs no-charged work on discrete issues on
    which they did not prevail.  For example, NPP's time entries related to Plaintiffs'
26  unsuccessful Motion for Reconsideration of April 24, 2017 Order (Docs. 2030; 2042) are
    no-charged.  [*See, e.g.*, Doc. 2277-4 at 12, 14]  Neither PLO nor K. Eidenbach's billing
27  statements included any time entries related to this motion.
         [8]  While Defendants challenged every single one of the 87 case-related expenses
28  submitted by PLO, Defendants did not challenge any of the 70 case-related expenses
    submitted by NPP.  [Doc. 2277-5 at 2-10]

they "involve a common core of facts or [are] based on related legal theories."  461 U.S. 424, 434-35 (1983); *see also Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986) (for fees sought on an unsuccessful claim the focus is on whether "the claims seek relief for essentially the same course of conduct.  Thus, the test is whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.") (internal quotations omitted); *Cabrales v. County of Los Angeles,* 935 F.2d 1050, 1052 (9th Cir. 1991) ("we read *Hensley* as establishing the general rule that plaintiffs are to be compensated for attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit.  Thus, even if a specific claim fails, the time spent on that claim may be compensable in full or in part, if it contributes to the success of other claims.").

The Court in *Hensley* noted that civil rights suits involving unrelated claims are unlikely to arise with great frequency.  461 U.S. at 435.  It further emphasized that there is no specific method of determining when claims are "related" or "unrelated" and counsel is not obligated to "record in great detail how each minute of time was expended."  *Id.* at 461 U.S. at 437 n. 12.  *See also Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (finding attorneys had satisfactorily identified the general subject matter of their time expenditures and that was sufficient).  And rather than divide the hours on a claim-by-claim basis, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435; *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.") (internal citation omitted).

Here, the entire focus of Plaintiffs' enforcement work has been ensuring compliance with the Stipulation and Defendants' "course of conduct" in that regard.

[Doc. 2276 at 6-8]   As outlined in the fees motion, Plaintiffs' enforcement work has generated significant overall relief in relation to the hours expended in the litigation, justifying both a full award of attorneys' fees and an enhancement.  [Doc. 2276 at 20-27]  Thus, Defendants' claim that each entry in the time records must relate to a particular Performance Measure that was enforced by a court order is entirely unsupported by the facts of this case and the pertinent law.[9]

### c. The Proper Rate under the PLRA is $219 per Hour for the Entire Billing Period

Defendants erroneously argue that the PLRA rate is determined by local Arizona CJA rates.  [Doc. 2402 at 10-13]  This is incorrect: the hourly rate under the Stipulation is the rate established by the PLRA at 42 U.S.C. § 1997e(d)(3), and that rate is currently $219 per hour.  [Doc. 2276 at 12-13]  It is long established precedent in the Ninth Circuit that the PLRA hourly rate is 150% of "the amount authorized by the Judicial Conference" for payment of court-appointed counsel in criminal cases.[10]  *Webb v. Ada County*, 285 F.3d 829, 839 (9th Cir. 2002) (holding that the PLRA expressly provides for payment at the rate "established" under 18 U.S.C. § 3006A and therefore the relevant hourly rate is the amount authorized by the Judicial Conference rather than the amount actually appropriated by Congress to compensate court-appointed counsel in criminal proceedings); *Perez v. Cate*, 632 F.3d 553, 556 (9th Cir. 2011) ("[R]eading the PLRA and the Criminal Justice Act together, the PLRA allows an award of attorney's fees…based on

---

[9]  Additionally, Defendants allege that Plaintiffs are engaging in "block billing." [Doc. 2402 at 8-9]  Block billing is defined as lumping together numerous tasks, making it difficult to determine how much time was actually spent on a specific activity.  *See generally Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007).  It is also characterized as entering the total amount of time one spends working on a case each day. *Id.* at 945 n.2.  However, Plaintiffs' billing entries are detailed, thorough, and identify the specific subject matter of the work.  [*See* Docs. 2277-2; 2277-3; 2277-4; 2278]  While there are entries where several hours are attributed to a given task, the task is described and the time expended is reasonable.  There is no block billing.

[10]  The current rate authorized by the Judicial Conference for the payment of court-appointed counsel is $146 per hour.  [Doc. 2044-1, Ex. 1 at 45]  Accordingly 150 percent of that rate is $219 per hour.

an hourly rate up to 150 percent [of the relevant rate prescribed by the Judicial Conference]"); *Graves v. Arpaio*, 633 F. Supp. 2d 834, 854 (D. Ariz. 2009) ("The hourly rate established under § 3006A is the amount authorized by the Judicial Conference, not the amount actually appropriated by Congress to compensate court-appointed counsel in criminal proceedings").   Contrary to Defendants' argument, the local CJA rate is irrelevant for PLRA purposes.

In the face of the overwhelming Ninth Circuit precedent regarding the PLRA rates, Defendants cite no cases to support their argument for a local CJA rate, and  misconstrue the relevance of the "local forum" rule for attorneys' fees established by *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).  [Doc. 2402 at 11]  The "local forum" rule is only pertinent here as to the fee request made for paralegals at the Prison Law Office, which bills paralegals at $219 per hour because the actual hourly rate for paralegals in the San Francisco Bay Area is $250.[11]  [Doc. 2276 at 12-13]  This is entirely appropriate as paralegal fees are subject to the same hourly cap under the PLRA as attorney fees where their market rates are higher than the established PLRA rate.  *See Perez v. Cate*, 632 F.3d 553, 556-58 (9th Cir. 2011).

Defendants appear to argue that the San Francisco Bay Area rates should not apply here by claiming—without evidence—that local Phoenix-area attorneys would have brought the case by themselves.  [Doc. 2402 at 11-12]  In contrast, Plaintiffs provided sworn declarations from knowledgeable local civil rights practitioners declaring the need for outside counsel to litigate this type of case in the District of Arizona.  [Doc. 2279; Doc. 2280]  Moreover, contrary to Defendants' assertion (Doc. 2402 at 22), the need for outside counsel would not be unusual, as prisoner rights cases are generally recognized as undesirable by the courts and the bar.  *See, e.g.*, *Graves*, 633 F. Supp. 2d at 847 ("This case is considered 'undesirable' because § 1983 class actions on behalf of prisoners

---

[11]  Defendants' claim that Plaintiffs provided no evidence on local rates for the San Francisco Bay Area and Washington, DC is simply false.  [*See* Docs. 2277-5 at 12; 2278 ¶ 11]

1   involving the conditions of confinement are exceedingly fact-intensive, time-consuming,
2   and expensive to litigate . . ."); *Gates*, 987 F.2d at 1405 (applying San Francisco billing
3   rates rather than Sacramento rates where no local firms or attorneys were capable of
4   taking on prison reform case).  Courts have recognized that prisoner civil rights cases in
5   particular are "extremely complex" and so require "experienced and sophisticated
6   counsel. *Id.*[12]

7       Defendants' argument that Plaintiffs should not be compensated at the full PLRA
8   rate of $219 per hour for all the time claimed is also unavailing.  [Doc. 2402 at 13-14]
9   Supreme Court and Circuit precedent establish that attorneys' fees are paid at current rates
10  to compensate for delay in payment.  *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 282
11  (1989) (Compensation for delay is made "either by basing the award on current rates or by
12  adjusting the fee based on historical rates to reflect its present value."); *Gates*, 987 F.2d at
13  1406 ("Plaintiffs' counsel began preparing this lawsuit over three years ago.  Since that
14  time they have expended an enormous amount of time and money without compensation.
15  An award based on current rates is reasonable to adjust for this delay"); *Carruthers v.
16  Israel*, No. 76-06086, ___ F. Supp. 3d __, 2017 WL 3531471 at *6 (S.D. Fla. Aug. 15,
17  2017) (awarding NPP the full amount of fees sought at an hourly rate of $219 for attorney
18  work done from 2001 to 2016).  Here, contrary to Defendants' assertions (Doc. 2402 at
19  13-14), Plaintiffs have received no fees for their *enforcement* work since the inception of
20  the Stipulation, and attempts to settle fees with Defendants met with intransigence and
21  silence.  [Doc. 2278 ¶ 10]

22      **d.    A Fee Enhancement is Justified in this Case**

23      Contrary to Defendants' arguments, the Stipulation clearly places no cap on fees
24  for enforcement of the Stipulation.  [Doc. 2402 at 14-16]  The $250,000 fee cap is

---

26  [12]  Defendants argue that the mere presence of Arizona lawyers on the pleadings in
27  this case establishes that out-of-state counsel was unnecessary.  [Doc. 2402 at 11]  But of
    course the willingness of local counsel to assist with litigation led by PLO and NPP does
28  not mean they would have been willing to bring that litigation by themselves, without
    outside resources and expertise.

1    contained in a separate provision and relevant only to routine monitoring fees which are

2    not the subject of this motion.  [Doc. 1185 ¶¶ 43-44]  Moreover, the adoption of the

3    PLRA rate for enforcement work under the Stipulation applies only to the hourly rate;

4    "[t]he parties agree that the hourly rate of attorneys' fees is governed by 42 U.S.C.

5    § 1997e(d)."  [Doc. 1185 ¶ 43]  Contrary to Defendants' argument and attempt to

6    distinguish *Kelly v. Wengler* from the present case (Doc. 2402 at 17-18), the Stipulation

7    does not address, and therefore does not foreclose, a request for an enhancement.  And the

8    PLRA itself does not limit a court's ability to award fee enhancements.  *Kelly v. Wengler*,

9    822 F.3d 1085, 1101 (9th Cir. 2016) ("We therefore hold that, while the PLRA limits the

10   hours and the hourly rate used in calculating the lodestar figure, it does not cap the total

11   amount of attorney's fees awards in cases seeking declaratory and injunctive relief, and it

12   continues to authorize a court to enhance the lodestar figure based on non-subsumed

13   factors.").

14        In prisoner rights cases, both the lodestar and enhancements of the lodestar

15   continue to be pertinent to a court's fee award.[13]  *Kelly*, 822 F.3d at 1103.  Plaintiffs' brief

16   exhaustively reviews the *Kerr* factors' support for full fees and an enhancement in this

17   case.  [Doc. 2276 at 14-20]  In opposition to Plaintiffs' excellent work and overwhelming

18   success, Defendants marshal a jumble of unsupported and unsupportable arguments.[14]

19   For example, Defendants' argument that Plaintiffs fail to meet the *Kerr* factors because

20   attorney David Fathi serves as counsel on another case is ridiculous.  [Doc. 2402 at 20-21]

21   The standard does not require total preclusion of all other work—and notably, the case

22   Defendants cite was filed *after* the time period for which fees are sought.  [Doc. 2402-7 at

23

24   [13] As Defendants acknowledge (Doc. 2402 at 15 n.16), their argument that the
     lodestar method is inapplicable to attorneys' fees for prisoner rights cases is foreclosed by
     circuit precedent.  *Kelly*, 822 F.3d at 1099-1100.

25   [14] Contrary to Defendants' assertion, awarding an enhancement here does not
     frustrate the purpose of the PLRA.  [Doc. 2402 at 24-25]  The PLRA was enacted "to
26   deter frivolous prisoner lawsuits that needlessly wasted judicial resources."  *Woods v.
     Carey*, 722 F.3d 1177, 1182 (9th Cir. 2013).  Congress sought to "reduce the quantity and
27   improve the quality of prisoner suits."  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).
     Attracting competent counsel to undertake meritorious litigation advances that goal.
28   Here, it also justifies a fee enhancement.  [*See* Doc. 2276 at 27]

89] Similarly, Defendants' argument that this case is simple, straightforward and requires little skill reflects only their counsels' unsworn statements.  [Doc. 2402 at 19-20]  These statements are belied by the findings of multiple courts.  *See supra* at Section II.c.  Likewise, the claim that *defense counsels'* hourly rates are pertinent customary fees in civil rights litigation is absurd, as defense counsel are paid for every minute of time and are reimbursed for every expense they incur, regardless of whether they win or lose.  [Doc. 2402 at 21]

Defendants also argue that the many hours Plaintiffs had to spend enforcing the provisions of the Stipulation that pertain to monitoring methodology simply do not count as enforcement.  [Doc. 2402 at 24]  This argument is frivolous.  Enforcement of these provisions—defining key terms (see Doc. 1185-1 at 3-6) and setting forth monitoring protocols (*see id*. at 8-36)—was essential to securing to class members the benefits of the Stipulation.

To cite just one example, the Stipulation defines "seen" as follows:

> Interaction between a patient and a Medical Provider, Mental Health Provider or Mental Health Clinician that involves a treatment and/or exchange of information in a confidential setting.  *With respect to Mental Health staff, means an encounter that takes place in a confidential setting outside the prisoner's cell, unless the prisoner refuses to exit his or her cell for the encounter.*

[Doc. 1185-1 at 5] (emphasis added).  Despite this pellucidly clear definition, Defendants stubbornly insisted that both cell-front encounters and group encounters satisfied the requirement of numerous mental health Performance Measures that a patient be "seen."  Plaintiffs had to litigate this issue for nearly *seven months* to obtain rulings enforcing the plain language of the Stipulation.[15]  This time is fully compensable.

Defendants' sustained non-compliance also made necessary a series of hearings over a three month period to resolve their refusal to monitor the Stipulation's performance measures properly.  [*See* Doc. 1964 (3/8/17); Doc. 1980 (3/21/17); Doc. 1996 (3/28/17);

---

[15]  *See* Docs. 1625-1627, 1644, 1654-1657, 1673, 1685, 1689, 1692, 1707, 1745, 1772-1773, 1781, 1791, 1794, 1813, 1907.

Doc. 2029 (4/17/17); Doc. 2061 (5/10/17)]  And their flawed compliance findings forced Plaintiffs to file numerous motions and expert declarations that resulted in rulings that ultimately developed a monitoring methodology which furthers compliance with the Stipulation and reflects accurate findings.  [Docs. 2046, 2047, 2048, 2087, 2088, 2089, 2090, 2091]  Ultimately, it is Defendants' own intransigence, stonewalling, and refusal to comply with accurate monitoring of the Stipulation that made Plaintiffs' sustained efforts to enforce the Stipulation necessary.

## III.    CONCLUSION

For these reasons and those outlined in Plaintiffs' Motion and set forth in the Proposed Order (Doc. 2265-1), this Court should find that Plaintiffs are the prevailing party because they repeatedly prevailed in enforcement motions, findings of non-compliance made by this Court, and the relief repeatedly ordered.  The Court should further find that Plaintiffs are entitled to recover all of the fees and costs requested because they have demonstrated that their request is reasonable for the volume of complex work accomplished and success achieved; they have exercised billing judgment and engaged in cost-effective litigation; and they are entitled to a 2.0 multiplier enhancement for superior performance and commitment of resources to this important case.  The Court should award Plaintiffs' counsel $1,344,422.87 in fees, costs, and enhancements, plus any interest from the date of this Court's order pursuant to 28 U.S.C. § 1961.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

1   Dated:  November 6, 2017                    **ACLU NATIONAL PRISON PROJECT**

2

3                                        By: _s/ Amy Fettig_____
                                             David C. Fathi (Wash. 24893)*
4                                            Amy Fettig (D.C. 484883)**
                                             Victoria Lopez (Ill. 6275388)*
5                                            915 15th Street N.W., 7th Floor
                                             Washington, D.C. 20005
6                                            Telephone:  (202) 548-6603
                                             Email:     dfathi@aclu.org
7                                                        afettig@aclu.org
                                                         vlopez@aclu.org
8
                                             *Admitted *pro hac vice*.  Not admitted
9                                             in DC; practice limited to federal
                                              courts.
10                                           **Admitted *pro hac vice*

11                                           Kathleen E. Brody (Bar No. 026331)
                                             **ACLU FOUNDATION OF**
12                                           **ARIZONA**
                                             3707 North 7th Street, Suite 235
13                                           Phoenix, Arizona 85013
                                             Telephone:  (602) 650-1854
14                                           Email:     kbrody@acluaz.org

15                                           Donald Specter (Cal. 83925)*
                                             Alison Hardy (Cal. 135966)*
16                                           Sara Norman (Cal. 189536)*
                                             Corene Kendrick (Cal. 226642)*
17                                           Rita K. Lomio (Cal. 254501)*
                                             **PRISON LAW OFFICE**
18                                           1917 Fifth Street
                                             Berkeley, California 94710
19                                           Telephone:  (510) 280-2621
                                             Email:     dspecter@prisonlaw.com
20                                                       ahardy@prisonlaw.com
                                                         snorman@prisonlaw.com
21                                                       ckendrick@prisonlaw.com
                                                         rlomio@prisonlaw.com
22
                                             *Admitted *pro hac vice*
23

24

25

26

27

28

LEGAL137572022.2                    -12-

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:     dbarr@perkinscoie.com
               agerlicher@perkinscoie.com
               jhgray@perkinscoie.com

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, P.L.L.C.**
P. O. Box 91398
Tucson, Arizona 85752
Telephone:  (520) 477-1475
Email:     kirstin@eidenbachlaw.com

Caroline Mitchell (Cal. 143124)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:     cnmitchell@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:     jlwilkes@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

1

<u>**CERTIFICATE OF SERVICE**</u>

2

I hereby certify that on November 6, 2017, I electronically transmitted the above

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrants:

5

Michael E. Gottfried
Lucy M. Rand

6

Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov

7

Lucy.Rand@azag.gov

8

Daniel P. Struck
Rachel Love

9

Timothy J. Bojanowski
Nicholas D. Acedo

10

Ashlee B. Fletcher
Jacob B. Lee

11

Kevin R. Hanger
Timothy M. Ray

12

Richard M. Valenti
Jamie D. Guzman

13

STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com

14

rlove@strucklove.com
tbojanowski@strucklove.com

15

nacedo@strucklove.com
afletcher@strucklove.com

16

jlee@strucklove.com
khanger@strucklove.com

17

tray@strucklove.com
rvalenti@strucklove.com

18

jguzman@strucklove.com
***Attorneys for Defendants***

19

20

Sarah Kader
Asim Dietrich

21

Rose A. Daly-Rooney
J.J. Rico

22

Jessica Jansepar Ross
Maya Abela

23

ARIZONA CENTER FOR DISABILITY LAW
skader@azdisabilitylaw.org

24

adietrich@azdisabilitylaw.org
rdalyrooney@azdisabilitylaw.org

25

jrico@azdisabilitylaw.org
jross@azdisabilitylaw.org

26

mabela@azdisabilitylaw.org
***Attorneys for Plaintiff Arizona Center for Disability Law***

27

28

s/ D. Freouf

LEGAL137572022.2

-14-