**EXHIBIT A**

**EXHIBIT A**

Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
Timothy M. Ray, Bar No. 029191
Richard M. Valenti, Bar No. 031533
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
afletcher@strucklove.com
jlee@strucklove.com
khanger@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br>　　　　　　　　　　　　　Plaintiffs,<br>v.<br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br>　　　　　　　　　　　　　Defendants. | NO. 2:12-cv-00601-DKD<br><br>**DECLARATION OF GREG CAMPBELL RELATING TO PERFORMANCE MEASURES 50 AND 51** |

I, Greg Campbell, RN, hereby declare as follows:

1. I am the Clinical Coordinator for Corizon Health ("Corizon") at the Arizona State Prison Division Complex in Phoenix/Alhambra. I have been a Corizon employee since May, 2013, and have worked in my current role for three years. I have personal knowledge of the facts set forth herein or knowledge based on a review of Corizon records and consultation with knowledgeable Corizon employees.

2. Performance Measure 50 requires that urgent consultations and urgent specialty diagnostic services be scheduled and completed within thirty (30) calendar days of the consultation being requested by the provider. The Arizona Department of Corrections' facilities currently before the Court, or addressed by the Court during the October 11, 2017 status hearing, relating to Performance Measure 50 are Florence, Perryville, Eyman, Lewis, Tucson, and Safford.

3. Performance Measure 51 requires that routine consultations be scheduled and completed within 60 calendar days of the consultation being requested by the provider. The current Arizona Department of Corrections facilities before the Court, or addressed by the Court during the October 11, 2017 status hearing, relating to Performance Measure 51 are Eyman, Florence, Tucson, Douglas, Perryville, Yuma, Lewis and Safford.

4. Every facility within Arizona concerning Performance Measures 50 and 51 has experienced similar challenges regarding obtaining the services of medical specialists.

5. When a patient is referred to a particular specialist who has not previously worked with Corizon, that specialist must be identified and contacted by the clinical coordinator to determine if the specialist is willing to see an inmate. Often there are a limited number of specialists in high demand in particular specialties, and they can be and are very selective in deciding which patients to see. As a result, they may simply decide that they do not want to include inmates in their patient population.

6. In some cases, the specialty is so specialized that it is almost impossible to identify a physician with the proper credentials and training. An example of such a

-1-

specialty is neuroophthalmology, which requires double certification in both neurology and ophthalmology.

7. When the clinical coordinator contacts a potential specialist for referral, the first issue is whether the specialist is willing to see inmates. Some physicians feel that if they agree to see inmates, that it will have a negative impact on the other patients or their private practice in general. Thus, some physicians refuse to see inmates because of the perceived "stigma" that they feel will result. In one case, after significant effort, I had arranged for a rheumatologist to see inmates, but after a while, the physician elected not to see inmates because he closed his office during the inmate visit, which resulted in his losing business from other patients.

8. When a clinical coordinator is able to identify a specialist willing to see inmates, often the specialists are so busy that they schedule inmate visits, like they do for other patients, several months in advance. Such advance scheduling is often outside the 30-60 calendar days allowed under Performance Measures 50 and 51. While the clinical coordinator attempts to schedule the follow-up visits within the allotted time, often with specialties that is not compatible with the specialists' schedules.

9. In addition to detecting if a specialist is willing to see inmates, the next question is whether the specialist is willing to accept the payment rates approved for treating inmates, which I understand is the same rate that applies for ACCHS patients. In some cases, a specialist has indicated a willingness to see inmates but not at the approved payment rate. Thus, unless the specialist already sees patients on ACCHS and their practice is accustomed to those rates, specialists have the ability to limit such payments by only accepting non-ACCHS patients or simply limiting the number of ACCHS patients.

10. Depending on the location of the particular facility, the ability to identify, contact, and arrange for scheduled specialists can be even more challenging. While the Phoenix facility is located in a metropolitan area, many of the other facilities are varying distance from population centers and medical communities.

11. All of the above are reasons why there is generally a shortage of specialists available to see inmates.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __6__ day of November, 2017.

_____
Greg Campbell