Index to Defendants' Notice of Filing Supplemental Information Concerning Plaintiffs' Agenda Items 2 and 11 (Dkt. 2425)

Exhibit 1  FILED UNDER SEAL
November 14, 2017 correspondence from Ashlee Hesman to Corene Kendrick in response to October 20, 2017 correspondence regarding July 2017 CGARS

Exhibit 2  FILED UNDER SEAL
November 17, 2017 correspondence from Richard Valenti to Corene Kendrick in response to October 20, 2017 correspondence regarding licensure status of telemedicine providers

Exhibit 3  FILED UNDER SEAL
November 18, 2017 correspondence from Richard Valenti to Corene Kendrick in response to October 31, 2017 correspondence regarding University of Arizona Telemedicine Program

Exhibit 4  FILED UNDER SEAL
November 18, 2017 correspondence from Timothy Bojanowski to David Fathi in response to October 20, 2017 correspondence regarding suicide of inmate ▮▮▮▮

Exhibit 5  FILED UNDER SEAL
November 20, 2017 correspondence from David Fathi to Ashlee Hesman in response to November 14, 2017 correspondence regarding July 2017 CGARS

# EXHIBIT 1

# (REDACTED)



Ashlee B. Hesman
480.420.1631
ahesman@strucklove.com

November 14, 2017

**VIA EMAIL ONLY**
Corene Kendrick
PRISON LAW OFFICE
General Delivery
San Quentin, CA  94964
Washington, DC  20005-2112

      Re:    **Parsons v. Ryan**
                *Defendants' Response to Plaintiffs' 10-24-2017 correspondence regarding July 2017 CGARs and monitoring of certain performance measures*

Dear Corene:

      We are in receipt of your October 24, 2017 correspondence.  We agree the parties are at an impasse for many of the items raised in Mr. Fathi's October 4, 2017 correspondence, but believe some can be resolved without court intervention.  As discussed below, we have re-audited PM 44 at Safford.  *See* Exhibit 1.  The re-audits for PMs 77, 80, and 81 will be completed by the end of this week.  Based on Plaintiffs' position after review of this correspondence, and the Court's ruling regarding same, we will re-audit the remaining measures if necessary.

**PMs 1, 2, and 4 (Partial Credit Allegation)**

      Defendants are not utilizing the partial credit methodology for these measures.  We agree the parties are at an impasse on this issue.

**PM 25 (Production of Source Documents)**

      The ER Hospital Report is generated from the Field Briefing Report, which contains IR and SIR information.  Therefore, Defendants utilize the correct source documents for this measure.  As stated in our October 20, 2017 correspondence, Defendants will provide these documents, when applicable, "in future monthly document productions", as requested in Mr. Fathi's October 4, 2017 correspondence.  We believe this issue has been resolved.

3100 West Ray Road | Suite 300 | Chandler, AZ 85226
480.420.1600 | STRUCKLOVE.COM

Corene Kendrick
November 14, 2017
Page 2

**PM 60 (N/A)**

In our October 20, 2017 correspondence, we advised that a finding of N/A for this measure was appropriate for Phoenix because only male inmates are processed at that facility. You did not include this measure in your October 24, 2017 response, and we believe this issue has been resolved.

**PM 44**

Lewis
- \#▉▉▉▉: We agree this file is noncompliant.
- \#▉▉▉▉: This file is compliant. Dr. Merchant is not a specialist, he is a Corizon provider. In accordance with the discharge recommendation, the inmate was seen by his primary care physician, Dr. Elijah[1], on July 16, 2017. This indicates the discharge instructions were reviewed and acted upon. The Court's December 14, 2016 Order states that compliance is permitted "if the inmate received the prescribed treatment. . ." (Dkt. 1831 at 2).
- \#▉▉▉▉: This file is compliant. The inmate returned directly to the infirmary on July 22, 2017. The infirmary orders indicate the nurse received the medication orders and ordered the requested medications by July 23, 2017.
- \#▉▉▉▉: You agree this file is compliant.

Perryville[2]
- \#▉▉▉▉: This file is compliant. In accordance with the discharge recommendation, the inmate received a Foley catheter for three days, was admitted to the IPC, placed on bedrest, and advised as to wound care. This indicates the record was reviewed and acted upon. Again, the Court's December 14, 2016 Order states that compliance is permitted "if the inmate received the prescribed treatment. . ." (Dkt. 1831 at 2).
- \#▉▉▉▉: This file is compliant. In accordance with the discharge recommendation, she received the medications requested by the hospital.
- \#▉▉▉▉: This file is compliant. The hospital discharge instructions recommended she be seen by the primary care provider within 3 – 5 days. She was seen on July 24, 2017 by Nurse Practitioner Marshal.
- \#▉▉▉▉: After further review, this file should not have been included because no discharge instructions were received from the hospital. Defendants will replace the file and re-audit.

---

[1] He could not see Dr. Merchant as Dr. Merchant was no longer with Corizon at the time of his follow-up appointment.

[2] The parties agree file #▉▉▉▉ is noncompliant and file #▉▉▉▉▉▉▉ is compliant.

Corene Kendrick
November 14, 2017
Page 3

      A copy of the re-audited CGARs for Safford are attached as Exhibit 1.  We will re-audit any additional measures and facilities should have been marked as non-compliant.

**PMs 77, 80, 81:  Eyman and Tucson**

    It is important to note that many of the "errors" referenced in Plaintiffs' October 4 and October 24 correspondence were not errors and, instead, were the result of Plaintiffs' incomplete review of records or misunderstanding of the Monitor Guide language.  What is more, the July CGARS were re-audited for the measures requested by Plaintiffs and revealed an average error rate of less than 1%.

- PM 77:  Of the 433 files that were reviewed, six typographical errors were found (one of the errors did not change the compliance result for the file).  This equates to an error rate of 1.3%.

- PM 80:  Of the 360 files that were reviewed, four typographical errors were found (two of the errors did not change the compliance result for those files).  This equates to an error rate of 1.1%.

- PM 81:  Of the 337 files that were reviewed, one typographical error was found.  This equates to an error rate of 0.3%.

    While the monitors strive for perfection, human error occurs.  More importantly, despite the small percentage of errors that did occur, none of the errors changed the score from compliant to non-complaint.  Indeed, as detailed below, the scores range from 92 – 97%.

- Eyman:
    - #77 – This changed the original compliance rate of **48/50 = 96% to 47/50 = 94%.**  This performance measure is still Green.
    - #80 – No errors
    - #81 – No errors

- Lewis:
    - #77 – No errors
    - #80 – This changed the original compliance rate of **73/74 = 99% to 72/74 = 97%.**  This performance measure is still Green.
    - #81 – No errors

- Perryville:
    - #77 – No errors
    - #80 – No errors
    - #81 – No errors

Corene Kendrick
November 14, 2017
Page 4

- Phoenix:
    - #77 – This changed the original compliance rate of **53/54 = 98% to 49/53 = 92%.** This performance measure is still Green.
    - #80 – No errors
    - #81 – No errors

- Tucson:
    - #77 – No errors
    - #80 – Two of the three typographical errors did not change the compliance of the files. This changed the original compliance rate of **74/76 = 97% to 73/76 = 96%.** This performance measure is still Green.
    - #81 – This changed the original compliance rate of **73/75 = 97% to 72/75 = 96%.** This performance measure is still Green.

- Yuma:
    - #77 – No errors
    - #80 – No errors
    - #81 – No errors

- Florence:
    - #77 – No errors
    - #80 – No errors
    - #81 – No errors

**PM 77**

PM 77 requires that mental health treatment plans be updated a minimum of every 90 days for MH-3A, MH-4, and MH-5 inmates and a minimum of every 12 months for all other MH-3 inmates. Unlike PM 77's 90 day timeframe, and other timeframes measured by days (PMs 39, 45, 47, 48, 49, 50, 51, 52, 53, 54, 73, 74, 76, 77,80, 81, 82, 83, 84, 86, 87, 90, 92, 96, 102), the agreed-upon language for PM 77 for MH-5's is "every twelve months", not every 365 days. Indeed, nothing in PM 77 requires the treatment plan to happen the same day as the year before, it only requires it happen within the same month. Treatment plans are updated during a routine contact and therefore must correspond with that 90-day timeframe. As you may recall, at the time language for the performance measures was being negotiated, ADC policies referred to periods of "months." Plaintiffs requested the language be changed to "days" for all measures except the portion of this measure regarding MH-5 inmates. If the parties' intent was to require treatment plans to be updated every 365 days, they would have agreed upon that language. They did not. As such, Defendants stand by the compliance findings detailed in our October 20, 2017 correspondence.

Corene Kendrick
November 14, 2017
Page 5

Additionally, even if plans were required to be updated every 365 days (they are not), please explain what harm comes from a treatment plan that is updated one (or even 31) day after it was updated the prior year?  Plaintiffs have not demonstrated – or even alleged – that harm occurred to a class member because of this difference.  Indeed, as Judge Duncan has previously reasoned, "The Court agrees that the difference between 30 days and one month appears to be insignificant."  (Dkt. 1673 at 3).  If you still contend these files are noncompliant, despite the clear language in PM 77, then we agree the parties are at an impasse.

**PM 80:**[3]

Defendants stand by the positions taken in their October 20, 2017 correspondence with respect to the files reviewed under this measure.  Your October 24, 2017 correspondence confuses some of the dates.  We hope the additional information provided below clarifies this issue:



\#█████ :  First contact was on June 23, 2017.  Second contact was on July 20, 2017.
\#█████ :  First contact was on June 27, 2017.  Second contact was on July 25, 2017.

If your position is still that these files are noncompliant, then we agree the parties are at an impasse.

**PMs 85 and 86:**

Exhibit 1 to Defendants' October 20, 2017 correspondence reflects our proposed language.  Please let us know if you agree.  We reiterate, however, that none of the language proposed by either party changes the monitoring process.

**PM 95**

In accordance with the Court's Order at the November 7, 2017 hearing, Defendants will only review inmates who were taken off suicide watch at the facility being monitored.  This issue has been resolved and will be reflected in the October CGARs.

**PMs 94, 95, and 97**

Defendants reviewed the files pulled for these measures.  No additional duplicates were found.  Defendants' re-audit for these measures revealed a 1.2% error rate.  Importantly, as detailed below, Plaintiffs' demand to re-audit PM 95 resulted in an increased compliance score at Perryville.  Additionally, the Lewis example highlighted in Plaintiffs' October 4, 2017 correspondence was not a duplicate, as the inmate was seen at two different units on two different days.  Despite the fact this file was correctly counted compliant, Defendants replaced the file as Plaintiffs requested.

---

[3] Defendants mistakenly referred to "treatment plans" in their October 20, 2017 correspondence when they should have referred to "contacts."

Corene Kendrick
November 14, 2017
Page 6

- PM 94: Of the 147 files that were reviewed, two duplicates were found. This equates to an error rate of 1.3%.
- PM 95: Of the 143 files that were reviewed, three duplicates were found. This equates to an error rate of 2.0%.
- PM 97: Of the 408 files that were reviewed, one duplicate entry was found. This equates to an error rate of 0.4%.

The revised scores are as follows:

- Eyman:
    - #94 – No errors
    - #95 – No errors
    - #97 – This did not change the original compliance rate of **45/50 = 90%**. This performance measure is still Green.

- Florence:
    - #94 – This did not change the original compliance rate of **13/15 = 87%**. This performance measure is still Green.
    - #95 – No errors
    - #97 – No errors

- Lewis:
    - #94 – This did not change the original compliance rate of **19/20 = 95%**. This performance measure is still Green.
    - #95 – This did not change the original compliance rate of **19/20 = 95%**. This performance measure is still Green.
    - #97 – This did not change the original compliance rate of **78/81 = 96%**. This performance measure is still Green.

- Perryville:
    - #94 – No errors
    - #95 – This changed the original compliance rate of **17/20 = 85% to an <u>increased score of 18/20 = 90%</u>**. This performance measure is still Green.
    - #97 – No errors

- Phoenix:
    - #94 – No errors
    - #95 – No errors
    - #97 – No errors

Corene Kendrick
November 14, 2017
Page 7

- Tucson:
    - #94 – No errors
    - #95 – No errors
    - #97 – No errors

- Yuma:
    - #94 – No errors
    - #95 – This did not change the original compliance rate of **18/20 = 90%**. This performance measure is still Green.
    - #97 – No errors

- Douglas:
    - #94 – No errors
    - #95 – No errors
    - #97 – No errors

- Safford:
    - #94 – No errors
    - #95 – No errors
    - #97 – No errors

- Winslow:
    - #94 – No errors
    - #95 – No errors
    - #97 – No errors

We believe this issue is resolved.

**PM 98 and 99**

We assume this issue has been resolved, as it was not included in your October 24, 2017 correspondence.

Please let us know which issues still need to be discussed at the November 21, 2017 hearing.

Sincerely,

*Ashlee Hesman*

Ashlee B. Hesman

ABF/eap
cc:     Counsel of record

**EXHIBIT 1**

**EXHIBIT 1**

## CGAR Finding for July 2017 SAFFORD COMPLEX

| # | Performance Measure | | Comments | | Num Compliance | Num Review | % |
|---|---|---|---|---|---|---|---|
| 9 | PM #44 Are inmates that are returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital having the hospital's treatment recommendations reviewed and acted upon by a Medical Provider within 24 hours? | X | 8/31/2017 6:03 AM Entered By: Troy Evans Number Compliance: 1; Number Review: 1; Percent Compliance: 100.00 % Comments: Safford Complex- Green 8/31/2017 6:02 AM Entered By: Troy Evans Number Compliance: 1; Number Review: 1; Percent Compliance: 100.00 % Comments: Tonto- The following charts were compliant: #135993 8/31/2017 5:08 AM Entered By: Troy Evans Number Compliance: 2; Number Review: 2; Percent Compliance: 100.00 % Comments: Ft. Grant- The following charts were compliant: #312203, #320398. 8/31/2017 4:31 AM Entered By: Troy Evans Number Compliance: ; Number Review: ; Percent Compliance: % Comments: Graham- There were no criteria in July. Addendum: 10/12/17 1542 Entered by Vanessa Headstream. Number Compliance: 0; Number Review; 3; Percent Compliance: 0%. Review of three applicable medical records indicates Ft. Grant was 0 compliant, 2 noncompliant (312203, 320398). Tonto was 0 compliant, 1 noncompliant (135993). Graham had no records to review for this measure. | 2 | 0 | 3 | 0.00 |
| 10 | PM #35 For intersystem transfers (complex to complex), are all inmate medications (KOP and DOT) transferred with and provided to the inmate or otherwise provided at the receiving prison without interruption? | | 8/31/2017 6:06 AM Entered By: Troy Evans Number Compliance: 28; Number Review: 28; Percent Compliance: 100.00 % Comments: Safford Complex- Green 8/31/2017 6:05 AM Entered By: Troy Evans Number Compliance: 10; Number Review: 10; Percent Compliance: 100.00 % Comments: Tonto- The following charts were compliant: #74388, #271898, #174473, #126315, #100859, #197996, #69536, #175389, #142661, #73250. 8/31/2017 5:11 AM Entered By: Troy Evans Number Compliance: 10; Number Review: 10; Percent Compliance: 100.00 % Comments: Ft. Grant- The following charts were compliant: #320300, #244330, #275041, #320165, #300588, #221037, #248901, #95552, #210714, #320130. 8/31/2017 4:34 AM Entered By: Troy Evans Number Compliance: 8; Number Review: 8; Percent Compliance: 100.00 % Comments: Graham- The following charts were compliant:#319905, #320313, #320158, #320085, #320342, #98470, #198064, #319200. | 1 | 28 | 28 | 100.00 |

## Corrective Action Plans for PerformanceMeasure: Access to Care (C)

9 PM #44 Are inmates that are returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital having the hospital's treatment recommendations reviewed and acted upon by a Medical Provider within 24 hours?
Level 2 Red User: Troy Evans Date: 8/31/2017