1  Kathleen E. Brody (Bar No. 026331)
   **ACLU FOUNDATION OF ARIZONA**
2  3707 North 7th Street, Suite 235
   Phoenix, Arizona 85013
3  Telephone: (602) 650-1854
   Email: kbrody@acluaz.org
4
   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
5  *Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
   *Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
6  *Desiree Licci, Joseph Hefner, Joshua Polson, and*
   *Charlotte Wells, on behalf of themselves and all others*
7  *similarly situated*

8  **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

9  Sarah Kader (Bar No. 027147)
   Asim Dietrich (Bar No. 027927)
10 **ARIZONA CENTER FOR DISABILITY LAW**
   5025 East Washington Street, Suite 202
11 Phoenix, Arizona 85034
   Telephone: (602) 274-6287
12 Email: skader@azdisabilitylaw.org
          adietrich@azdisabilitylaw.org
13
   *Attorneys for Plaintiff Arizona Center for Disability Law*
14
   **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**
15

16                        UNITED STATES DISTRICT COURT

17                               DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br>                Plaintiffs, <br><br>        v. <br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br>                Defendants. | No. CV 12-00601-PHX-DKD <br><br> **PLAINTIFFS' REPLY REGARDING SAMPLING METHODOLOGY LANGUAGE IN MONITOR GUIDE (DOC. 2425)** |

LEGAL137740244.1

**INTRODUCTION**

At the July 13, 2017 hearing, the Court said the following:

> As I read Dr. Haney's affidavit, it occurred to me that many of these things that he talked about were things that the testimony that we have had from the people from the State who are involved in the process of record collection, that it seemed like they didn't have the benefit of what was described as kind of basic understanding in this area. And it made me think that perhaps we could address that by including it in the monitoring manual. And I wonder if those who are working on the monitoring manual have an idea about that, about whether some of these random selection procedures should be explained to people who are doing it so they understand the philosophy.

[7/13/17 Tr. at 67:19-68:4]   Defendants voiced no objection to the Court's proposal; indeed, they asked Plaintiffs to provide draft language for inclusion in the Monitor Guide *(id.* at 68:14-21), and Plaintiffs promptly complied with that request. [*See* Doc. 2426-1 at 108-111 (Plaintiffs' proposed language based upon Dr. Haney's expert affidavit)][1]

Unfortunately, Defendants' response was to include a mere two sentences on random sampling in the draft Monitor Guide:

> Random sampling is the process of selecting a sample of files from a larger universe of files to ensure that the sample is unbiased and, therefore, representative of the characteristics of the larger whole or universe from which it is drawn. Random sampling techniques ensure that no one file from the universe of files has any higher probability or likelihood of being included in the sample than any other.

[*See* Doc. 2291-1 at 18 (8/25/17 draft Monitor Guide)][2]   Entirely absent from the Monitor Guide is any of Dr. Haney's guidance on the importance of drawing the sample from an appropriate source (*see* Doc. 2048 ¶ 8); the need to exclude from the sample records that cannot possibly demonstrate noncompliance with the measure being assessed, and

---

[1] The Court observed that Dr. Haney's expert affidavit was uncontradicted: "Again, I have to say, I haven't had an opposition to Dr. Haney's affidavit. I haven't had a countervailing affidavit to it. And it just seems to make sense to me and also seems to have to kind of background that would suggest that he is speaking from authority." [7/13/17 Tr. at 68:5-9]

[2] Defendants also included instructions on using the "RAND" function in Microsoft Excel. [*Id.*]

randomly draw replacement records (*id*. ¶¶ 11-12); or the critical importance of documenting the entire process in real time, including any changes made to the results (*id*. ¶¶ 13-15).

Now, without explanation, Defendants have changed their position and for the first time object to including "*any* language in the Monitor Guide regarding random sampling and/or randomization processes." [Doc. 2465 at 2 (emphasis in original)] Because Defendants' objections are as meritless as they are untimely, the Court should direct Defendants to include Plaintiffs' proposed language summarizing Dr. Haney's guidance in the Monitor Guide.

## ARGUMENT

Defendants object that "the monitors do not randomize the records to be selected. Instead, randomization is conducted by individuals at Central Office." [Doc. 2465 at 2] This statement is both incorrect and irrelevant.[3]

First, to the extent that Defendants claim that the monitors have no role in generating the lists of patients from which records are sampled for the monthly CGAR reports, this is incorrect. At the evidentiary hearing on monitoring methodology, Defendants' employee Ryan Owens specifically testified that the monitors are involved in generating these lists:

> Q. And you testified that the list of 3Ds that you randomize comes from Dennis Dye, correct?
>
> A. That's how I receive it.
>
> Q. And you don't know how Mr. Dye generates that list?
>
> A. I do not.
>
> Q. And so you don't know if that's a complete list of all the MH 3Ds in a given unit or a given complex?
>
> A. I assume that it is, but I do not know.

---

[3] As is their wont, Defendants make factual claims that are unsupported by citation to testimony, documents, or any evidence whatsoever. "[T]he arguments and statements of counsel are not evidence." *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) (internal quotation marks omitted).

[3/8/17 Tr. at 92:21-93:3][4]  [*See also* 4/17/17 Tr. at 438:16-439:10 (Mr. Dye stating that if there were more than 10 records in a given month for PM 74 he would randomize them himself); Doc. 2046 at 13-15 (citing testimony by Mr. Owens regarding categories of records he does not randomize)]

More fundamentally, there was ample testimony that the monitors are involved in other steps in the monitoring process on which Dr. Haney provides guidance.  [*See generally* Doc. 2046 at 31-35 (testimony of multiple monitors regarding their practice of making changes to CGAR results with no audit trail, and Dr. Haney's expert affidavit regarding the impropriety of such a practice)]

The Court has repeatedly observed that Defendants' employees have a poor grasp of sampling methodology.  [*See, e.g.*, 4/17/17 Tr. at 671:19-22 ("the witness that was proffered with respect to who has responsibility for randomization doesn't seem to have an understanding of the basic mechanism that he uses with Excel"); *see also id.* at 469:2-24 (Mr. Dye appears not to understand why records that cannot possibly be found noncompliant must be excluded from the sample); *id.* at 671:18 (finding "great chasms of competence" in the monitoring process)]  Including Dr. Haney's guidance in the Monitor Guide will help to remedy that problem.

Other than an unsupported and unexplained claim that "Dr. Haney's proposed language complicates the process" (Doc. 2465 at 2), Defendants do not challenge *any* of the statements in Plaintiffs' proposed language based on Dr. Haney's affidavit.  Indeed Defendants' expert, Dr. Baillargeon, explicitly states that "Dr. Haney's description of the principles of random sampling is reasonable and appropriate."  [Doc. 2465-1 ¶ 5]  His sole quibble is with Dr. Haney's testimony regarding the methodology for Performance Measure 39.  But while Dr. Haney explains the reasons for his recommended methodology (*see* Doc. 2048 ¶ 11), Dr. Baillargeon offers only *ipse dixit* ("it is not appropriate to exclude this subgroup").  [Doc. 2465-1 ¶ 8]  The Court should disregard

---

[4] Dennis Dye is a mental health monitor.  [4/17/17 Tr. at 423:16-20]

LEGAL137740244.1                -3-

this conclusory and unexplained statement. *See Luke v. Family Care & Urgent Med. Clinics*, 246 F. App'x 421, 424 (9th Cir. 2007) ("An expert opinion that is merely a conclusory statement without adequate supporting facts is insufficient to defeat a summary judgment motion").[5]

## CONCLUSION

Defendants should be ordered to include in the Monitor Guide Plaintiffs' proposed language based upon Dr. Haney's affidavit (Doc. 2426-1 at 108-111).

Dated:  November 28, 2017

**ACLU NATIONAL PRISON PROJECT**

By:   s/ David C. Fathi
David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Victoria Lopez (Ill. 6275388)*
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:    dfathi@aclu.org
          afettig@aclu.org
          vlopez@aclu.org

*Admitted pro hac vice.  Not admitted in DC; practice limited to federal courts.
**Admitted pro hac vice

---

[5] If the Court finds it necessary to evaluate the relative qualifications of the parties' experts to opine on sampling methodology, such a comparison clearly favors Dr. Haney.  Dr. Haney is a Distinguished Professor and UC Presidential Chair at the University of California.  He was trained in a distinguished research-oriented graduate program in psychology (Stanford University), and he regularly teaches graduate courses in research methods in the social psychology Ph.D. program at the University of California, Santa Cruz. [Doc. 2048 ¶ 1]  For example, he teaches a "proseminar" to incoming social psychology graduate students in which research methodology is an explicit focus of his instruction.  He also periodically teaches quarter-long courses that are devoted entirely to specific research methodologies, including experimental and survey methods (where the specific techniques of random selection and random sampling are routinely employed). [*Id.* ¶ 3; *see also* Doc. 2048-1 (Dr. Haney's *curriculum vitae*)]
Dr. Baillargeon lacks comparable qualifications. *See Capps v. Atiyeh*, 559 F. Supp. 894, 911 (D. Or. 1982) ("To the extent that these conflicting opinions require me to assess the credibility and credentials of the witnesses, I give greater weight to the testimony of Dr. Della Penna.  While Dr. Osborne may be a fine physician, he does not have Dr. Della Penna's expertise in the provision of prison medical services").

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email: dbarr@perkinscoie.com
agerlicher@perkinscoie.com
jhgray@perkinscoie.com

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email: dspecter@prisonlaw.com
ahardy@prisonlaw.com
snorman@prisonlaw.com
ckendrick@prisonlaw.com
rlomio@prisonlaw.com

*Admitted *pro hac vice*

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, P.L.L.C.**
P. O. Box 91398
Tucson, Arizona 85752
Telephone: (520) 477-1475
Email: kirstin@eidenbachlaw.com

Caroline Mitchell (Cal. 143124)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email: cnmitchell@jonesday.com

*Admitted *pro hac vice*

|   |   |
|---|---|
| 1 | John Laurens Wilkes (Tex. 24053548)* |
|   | **JONES DAY** |
| 2 | 717 Texas Street |
|   | Houston, Texas 77002 |
| 3 | Telephone: (832) 239-3939 |
|   | Email:   jlwilkes@jonesday.com |

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By:   s/ Maya Abela
Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email:   skader@azdisabilitylaw.org
         adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
   rdalyrooney@azdisabilitylaw.org
   jrico@azdisabilitylaw.org
   jross@azdisabilitylaw.org
   mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

LEGAL137740244.1               -6-

**CERTIFICATE OF SERVICE**

I hereby certify that on November 28, 2017, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Jacob B. Lee
Kevin R. Hanger
Timothy M. Ray
Richard M. Valenti
Jamie D. Guzman
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
afletcher@strucklove.com
jlee@strucklove.com
khanger@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com

*Attorneys for Defendants*

s/ D. Freouf

LEGAL137740244.1                     -7-