**EXHIBIT 3**

**EXHIBIT 3**

Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
1275 W. Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-4951
Fax: (602) 542-7670
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Fletcher, Bar No. 028874
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
Timothy M. Ray, Bar No. 029191
Richard M. Valenti, Bar No. 031533
Jamie D. Guzman, Bar No. 022095
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
afletcher@strucklove.com
jlee@strucklove.com
khanger@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DKD<br><br><br><br>**DECLARATION OF JOSEPH V. PENN, MD CCHP FAPA** |

I, **JOSEPH PENN**, make the following Declaration:

1. I am over the age of 18 years and have personal knowledge of and am competent to testify to the matters set forth in this Declaration.

2. I am a board-certified forensic psychiatrist and also a board-certified general psychiatrist specializing in correctional medicine and licensed to practice medicine in Texas. I attended medical school at the University of Texas Medical Branch (UTMB), Galveston, Texas, graduating in 1992. I completed seven years of specialty/subspecialty residency training – four years of general psychiatry in 1996 at Brown University, Providence, Rhode Island; two years of child and adolescent psychiatry in 1998 at Brown University, Providence, Rhode Island; and one year of forensic psychiatry, at Yale University, New Haven, Connecticut, in 1999.

3. Since 1998 I have focused my clinical, administrative, and forensic work within correctional settings, including detention facilities, jails, and prisons. Additionally, I have achieved and maintained specialized certification as a Certified Correctional Health Professional (CCHP) by the National Commission on Correctional Health Care (NCCHC). This requires passing of a written national examination, demonstration of proficiency in national correctional health standards, annual attestation of continuing medical education credits, full medical licensure without restrictions, and annual re-certification.

4. From 2008 to the present I have served as the Director of Mental Health services for UTMB Correctional Managed Care (CMC). In this capacity, I oversee the provision of psychiatric, psychological, and mental health services to approximately 80% (approximately 110,000 adult offenders) of the entire Texas state jail and state adult prison population (currently the largest state prison system in the US) housed within Texas Department of Criminal Justice (TDCJ) facilities statewide. I also oversee the delivery of psychiatric services to approximately 1,500 youths housed statewide within state juvenile correctional institutional facilities (referred to as state schools) and halfway

1  houses within the Texas Juvenile Justice Department (TJJD, previously known as the
2  Texas Youth Commission).

3      5.    In my administrative role, I oversee approximately 315 mental health staff,
4  including psychiatrists, psychologists, mental health managers and clinicians, case
5  managers, psychiatric nurse practitioners and physician assistants, and other various
6  mental health professionals and student trainees across the state. I have experience in the
7  provision of psychiatric services and psychotropic medication treatment to county jails,
8  short term substance abuse felony punishment treatment programs (SAFPs) and short term
9  intermediate sanction facilities (ISF). I also oversaw the psychiatric services that UTMB
10 CMC previously provided to four federal prison units in Beaumont, Texas.

11     6.    I currently serve on the Executive Operations Council of UTMB CMC; the
12 Pharmacy and Therapeutics Committee; other UTMB CMC and TDCJ and UTMB CMC
13 and TJJD committees, and various other local, state, and national committees that are
14 detailed in my CV.  This demonstrates my knowledge and direct interaction with the
15 provision of psychiatric and mental health care to incarcerated offender populations.

16     7.    I am a Clinical Professor, Department of Psychiatry and Behavioral
17 Sciences, UTMB, Galveston, Texas.  I was previously Clinical Associate Professor in the
18 Department of Psychiatry and Human Behavior at Brown University and the Warren
19 Alpert Medical School, Providence, Rhode Island.

20     8.    I have published extensively in scientific journals and other peer reviewed
21 publications in the areas of correctional mental health, recidivism of offenders with
22 mental health and substance abuse, and suicide prevention.  Two recent publications
23 specifically in the area of correctional mental health include <u>Psychiatric Services in
24 Correctional Facilities: A Work Group Report of the American Psychiatric Association</u>,
25 and "Standards and Accreditation for Jails, Prisons, and Juvenile Facilities," In the <u>Oxford
26 Textbook of Correctional Psychiatry</u>.  I am a lead author in the soon to be released
27 American Academy of Psychiatry and the Law (AAPL) "Resource Document for
28 Prescribing in Corrections."

2

9.     I have presented nationally and internationally and have consulted nationally on correctional and non-correctional mental health care delivery and standards of care.  Some recent examples: Technical Assistance Project Consultant, U.S. Department of Justice, National Institute of Corrections (NIC); Technical Assistance to New York County Jails, Valhalla, New York; Consultant to the State of Vermont Department of Corrections; and Consultant, National Institute of Mental Health (NIMH) regarding ICE detainees (other examples are listed in my CV).

10.    I have served as a Physician Surveyor for the National Commission on Correctional Health Care (NCCHC), a national organization that provides health care accreditation of jails, prisons, juvenile facilities, and other correctional facilities.  I have surveyed several major metropolitan county jails, short term detention facilities [e.g., US Immigration and Customs Enforcement (ICE) facilities] nationally (these are listed in my CV).  I am the past chair and remain a current member of the NCCHC Accreditation Committee.  I have served on several NCCHC Standards Revision Task Force Groups to revise the NCCHC health care standards: NCCHC Standards for Health Services in Jails and Prisons, NCCHC Standards for Mental Health Services in Correctional Facilities, and the NCCHC Juvenile Health Standards.

11.    I have been involved in national roles within several psychiatric organizations.  Some examples include the American Psychiatric Association (Council of Psychiatry and Law), the American Academy of Psychiatry and the Law, (past chair of the Suicidology Committee, a committee focused on suicide phenomenology and suicide assessment and prevention), and the American Academy of Child and Adolescent Psychiatry (Rights and Legal Matters Committee). I was previously the AACAP's representative to the NCCHC Board of Directors and am now the AAPL representative.  I have guided the development of correctional psychiatry resource documents, publications, policy, best practices, and position statements within the American Psychiatric Association (APA), the American Academy of Psychiatry and the Law (APPL), the American Academy of Child and Adolescent Psychiatry (AACAP), and the Texas Society

of Psychiatric Physicians (TSPP).

12. I also serve in a leadership role within several national correctional organizations, the NCCHC, the American Correctional Association (ACA), (the ACA also provides accreditation of correctional facilities nationally), and the American College of Correctional Physicians (formerly known as the Society of Correctional Physicians). I have served as a technical consultant and also as a physician surveyor of jails, prisons, and juvenile correctional facilities for the NCCHC and also on the NCCHC accreditation committee.

13. For a more detailed statement of my education, experience, and qualifications, please see my attached *Curriculum Vitae*. *See* Attachment A.

14. I am intimately familiar with this case as I served as Defendants' mental health expert in the underlying litigation.

15. I have reviewed the Stipulation and corresponding performance measures (PMs).

16. Specifically, in preparation of making this Declaration, I reviewed PM 77, which requires that mental health treatment plans for MH-3 inmates be updated a minimum of every 12 months. (Dkt. 1185-1 at 13).

17. While treatment plans are an important part of an inmate's mental health care, the updating of a treatment plan is purely an administrative function, as the actual treatment is provided throughout the year.

18. Inmates whose treatment plans must be updated on an annual basis (as opposed to a monthly or semi-annual basis) are inmates who do not require as frequent mental health interactions as inmates with higher mental health designations. Treatment plans for these inmates are done annually, rather than more often, simply to ensure the inmate is on the radar and that his/her needs have not changed. Because of this purpose, updating a treatment plan in the same month it was updated the prior year is within the standard of care. For example, if a treatment plan was updated in December 2016, the standard of care requires it be updated sometime in December 2017.

4

19. This is consistent with the provision and standard of care both in corrections and in the community.

20. Indeed, in the community, for procedures/exams/check-ups required to be done on an annual basis, the majority of insurance carriers will not cover the service unless it is done *after* the date it was done the prior year.

21. There is no risk of harm in updating an MH-3 treatment plan within the same month it was updated the previous year, and this practice complies with the standard of care.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th day of December, 2017.

_____
JOSEPH V. PENN