1          **UNITED STATES DISTRICT COURT**

2             **FOR THE DISTRICT OF ARIZONA**

3                    _____

4

**Victor Parsons, et al., on**      )
5  **behalf of themselves and all**   )
   **others similarly situated;**     )
6  **and Arizona Center for**         )
   **Disability Law,**                )
7                                      )    No. **CV 12-00601-PHX-DKD**
             Plaintiffs,              )
8                                      )
         vs.                          )    Phoenix, Arizona
9                                      )    November 21, 2017
**Charles Ryan, Director,**          )    9:02 a.m.
10 **Arizona Department of**          )
   **Corrections; and Richard**       )
11 **Pratt, Interim Division**        )
   **Director, Division of Health**   )
12 **Services, Arizona Department**   )
   **of Corrections, in their**       )
13 **Official capacities,**           )
                                       )
14             Defendants.            )
   _____ )
15

16

17   **BEFORE:   THE HONORABLE DAVID K. DUNCAN, MAGISTRATE JUDGE**

18          <u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

                   (*Telephonic Status Hearing*)
19

20

21 Official Court Reporter:
   Laurie A. Adams, RMR, CRR
22 Sandra Day O'Connor U.S. Courthouse, Suite 312
   401 West Washington Street, Spc 43
23 Phoenix, Arizona 85003-2151
   (602) 322-7256
24

25 Proceedings Reported by Stenographic Court Reporter
   Transcript Prepared by Computer-Aided Transcription

<u>**A P P E A R A N C E S**</u>

**For the Plaintiffs:**

      ACLU - Washington DC
      By:  **David C. Fathi, Esq.**
      915 15th Street NW
      7th Floor
      Washington, DC 20005

      EIDENBACH LAW PC
      By:  **Kirstin T. Eidenbach, Esq.**
      P.O. Box 91398
      Tucson, AZ 85752

      ARIZONA CENTER FOR DISABILITY LAW - Tucson, AZ
      By:  **Maya S. Abela, Esq.**
      177 N. Church Avenue
      Suite 800
      Tucson, AZ 85701

For the Defendants:

      STRUCK LOVE BOJANOWSKI & ACEDO PLC
      By: **Timothy J. Bojanowski, Esq.**
      By: **Ashlee Fletcher, Esq.**
      By: **Richard Valenti, Esq.**
      3100 W. Ray Road
      Suite 300
      Chandler, AZ 85226

Also Present:

      CORIZON HEALTHCARE
      **Ms. Jennifer Finger**
      **Mr. Roland Maldonado**

08:58AM

1              P R O C E E D I N G S

2          THE MAGISTRATE JUDGE CLERK:  Civil Case Number 12-601,

3    Parsons et al. versus Ryan, et al., on for telephonic status

4    hearing.

5          THE COURT:  Those on the phone please state your            09:02AM

6    appearances for the record.

7          MR. FATHI:  Good morning, Your Honor.  David Fathi of

8    the ACLU National Prison Project for the plaintiff class.

9          THE COURT:  Good afternoon for you, or good morning

10   for you still, I guess.  It's two hours.  I'm sorry.           09:03AM

11         MR. FATHI:  Good morning, Your Honor.

12         THE COURT:  Thank you.

13         MS. EIDENBACH:  Good morning, Your Honor.  This is

14   Kirsten Eidenbach for the prisoner plaintiff class.

15         THE COURT:  Thank you.                                   09:03AM

16         MR. MALDONADO:  Good morning, Your Honor.  Roland

17   Maldonado, Corizon Healthcare.

18         THE COURT:  I'm sorry.  I couldn't hear.  Roland

19   Maldonado you said?  Thank you.

20         MS. ABELA:  Your Honor, Maya Abela for the Arizona       09:03AM

21   Center For Disability Law.

22         THE COURT:  Thank you.

23         MS. FLETCHER:  Good morning, Your Honor.  Ashlee

24   Fletcher, Tim Bojanowski, and Richard Valenti for the

25   defendants.                                                    09:03AM

**11-21-17 - CV 12-601 - Telephonic Status Hearing**

1          THE COURT:  That's it.

2          So yesterday the defendants filed a supplemental

3    regarding the issues that were to be addressed today.  It would

4    seem to me that it would make sense to start with that document

5    as the road map for how to proceed.  And perhaps it also makes          09:04AM

6    sense for me to turn to plaintiffs so that they can have an

7    opportunity to tell me what issues remain to be addressed now.

8          MR. FATHI:  Thank you, Your Honor.  I agree with the

9    Court's suggestion and would suggest that we use my letter

10   which was filed last night at Document 2459-5, my letter dated          09:04AM

11   November 20th, simply as a road map of the issues that need to

12   be addressed under Agenda Item 2 from the plaintiffs' proposed

13   agenda, Document 2425.

14         THE COURT:  Oh, dear.  I'm sorry to have to tell you

15   quite honestly that, apparently, I misinterpreted or misread          09:04AM

16   the e-mails.  So let me see.  This was your letter of November

17   20th that you filed yesterday.  Let me just take a look at this

18   for a moment and see whether or not I have read it already.

19         MR. FATHI:  Yes, Your Honor.

20         MS. FLETCHER:  Your Honor, that was included in last          09:05AM

21   night's filing.

22         THE COURT:  Thank you, Ms. Fletcher.

23         All right.  I agree, Mr. Fathi, this makes sense to

24   use this most recent document then of you setting forth your

25   response to their responsive letter, or are they the same?          09:05AM

**11-21-17 - CV 12-601 - Telephonic Status Hearing**

1      MR. FATHI:  Thank you.  Should I proceed?

2      THE COURT:  I'm sorry for being a little bit slow on

3  this.  My apologies to you all.  Go ahead.

4      MR. FATHI:  Quite all right, Your Honor.

5      The first item then is the re-audited CGARs.  In                09:06AM

6  response to the errors we pointed out in the July 2017 CGARs,

7  defendants state that they have re-audited various performance

8  measures from July 2017 and made various representations about

9  the results of the re-auditing, how many errors they found, and

10 so on.  Unfortunately, we are unable to evaluate those claims        09:06AM

11 because they haven't provided a corrected CGAR showing which

12 they are now counting as compliant and which they are counting

13 as noncompliant.  So we would ask that those corrected CGARs

14 for Performance Measures 77, 80, 81, 94, 95, and 97 be produced

15 by a date certain.                                                   09:07AM

16     THE COURT:  I gather the defendants don't have an

17 objection to that.

18     MS. FLETCHER:  Your Honor, this is Ashlee Fletcher.

19 We don't have an objection, and given the holiday this week we

20 plan on having them to plaintiffs by next Thursday.                  09:07AM

21     THE COURT:  All right.  Thank you.

22     Go ahead, Mr. Fathi.

23     MR. FATHI:  The next item is Performance Measures 1,

24 2, and 4.  And the issue here is the defendants' use of a

25 partial-credit methodology in monitoring these performance           09:07AM

**11-21-17 - CV 12-601 - Telephonic Status Hearing**

1   measures.  These measures require the on-site presence of

2   essential healthcare staff.  So, for example, Performance

3   Measure 4 requires that infirmary staffing will be maintained

4   with a minimum staffing level of two RNs in the infirmary at

5   all times at Tucson and Florence infirmaries and a minimum of

6   one RN on duty in the infirmary at all times at Perryville and

7   Lewis infirmaries.

8          Now, the purpose of this performance measure is to

9   have nurses physically present at all times in the infirmary

10  who are the sickest people in the system.  And this measure is

11  binary; it's either complied with for the month or it's not.

12  There's absolutely no language in the performance measure to

13  allow the defendants to do what they have done and break it

14  down by individual days and give themselves partial credit.

15  That's just something they have made up out of whole cloth.

16         Under the defendants' interpretation, they could have

17  no nurses at all in the infirmary for four consecutive days and

18  still receive a passing score.  And that's just not consistent

19  with the intention of the measure to have nurses on site at all

20  times.

21         Now, the Court has already ruled that the

22  partial-credit method will not be allowed.  That's the order at

23  Docket 1831 at Page 2.  And at the hearing earlier this month,

24  Your Honor, you said that you didn't see any reason why these

25  performance measures should be treated differently.  And you

09:07AM

09:08AM

09:08AM

09:08AM

09:09AM

**11-21-17 - CV 12-601 - Telephonic Status Hearing**

1   were right.  We would ask that the Court rule that these three

2   performance measures are binary.  They are either complied with

3   for the month or they are not.  And there's no partial credit

4   available.

5          THE COURT:  Again, I don't see any reason why these          09:09AM

6   categories or these performance measures would fall outside of

7   the no partial credit rule created with, I think, a small

8   exception but that doesn't seem to apply here.  Tell me why you

9   think you should get partial credit again, whomever is going to

10   address this on the defendants' side?          09:09AM

11          MS. FLETCHER:  Thank you, Your Honor.  This is Ashlee

12   Fletcher.  And I would just like to back up a little bit.  When

13   the Court ruled that the partial credit methodology was

14   invalidated the Court was talking about a different type of

15   methodology.  The partial-credit methodology that was          09:10AM

16   invalidated was the process by which each individual inmate

17   file was reviewed and the number of contacts for that

18   individual file was given a percentage.  Each inmate file then

19   had their percentage and a global percentage was reached for

20   the month.          09:10AM

21          That's not what's happening here.  We are not

22   assigning a percentage for each day.  That was the methodology

23   that was invalidated.  Rather, just like any other performance

24   measure, we review every single day.  Similar to how we would

25   review individual files, that day is either compliant or          09:10AM

11-21-17 - CV 12-601 - Telephonic Status Hearing

1    noncompliant.  It is not given a percentage.  It is not given

2    partial credit.  It's compliant or noncompliant and then the 30

3    days is reviewed to determine a monthly compliance score.  That

4    is not the methodology that was invalidated by the Court.  We

5    are not providing partial credit per day.  We are reviewing the        09:11AM

6    measure in accordance with the monitor methodology.

7            And I'd like to point out as well, Your Honor, this is

8    how we have monitored these three measures since the inception

9    of the stipulation.  Mr. Fathi knows that.  So it's curious why

10   just now this is being brought to light.  If he had an issue of       09:11AM

11   how this is being monitored, we should have heard about this a

12   few years ago.

13           MR. FATHI:  Your Honor, the Court can look at the text

14   at Performance Measure 4.  There is absolutely nothing about

15   days in there.  So the idea that this is a measure that is to          09:11AM

16   be -- whose compliance is to be calculated day by day is simply

17   not supported by the language of the performance measure.

18           THE COURT:  I agree.  I agree, Mr. Fathi.  I don't

19   need to hear more on this.  I agree.  The stipulation could

20   have been written to have it be as the way Ms. Fletcher likes         09:11AM

21   to interpret it now.  It's not how it's written in the plain

22   reading, so I'm going to affirm that you get no special partial

23   credit in the circumstances of these performance measures.

24           MS. FLETCHER:  Your Honor, if I could point out one

25   thing, Performance Measure 1 actually does say days.  So how          09:12AM

**11-21-17 - CV 12-601 - Telephonic Status Hearing**

1   does it work for Performance Measure Number 1 which is also

2   subject to Mr. Fathi's letter?

3          THE COURT:  Let me take a look.  While I'm looking,

4   Mr. Fathi, you can give a shot on that one.

5          MR. FATHI:  Thank you, Your Honor.  It is true that        09:12AM

6   Performance Measure 1 refers to days.  Performance Measures 2

7   and 4, however, do not.  And it's also not correct as Ms.

8   Fletcher said, that the Court invalidated the partial-credit

9   methodology only as to measures in which an individual patient

10  file was receiving a percentage score.  The Court also        09:12AM

11  invalidated the partial-credit methodology as to Performance

12  Measure 16, which requires that perpetual inventory medication

13  logs will be maintained on each yard.  That, again, is at

14  Document 1831 at 2.

15         That measure didn't require or doesn't involve review     09:13AM

16  of individual patient files at all, and yet the Court still

17  invalidated the partial-credit methodology.  So we believe that

18  ruling controls here.

19         THE COURT:  This provides -- or this is a closer call.

20  I'm going to go back to the language of the performance measure  09:13AM

21  which I don't have right in front of me.  I will have it in

22  about 30 seconds, so stand be everybody.

23         As I read the performance measure, each ASPC will

24  maintain, at a minimum, one RN on site 24-7, seven days a week.

25  I'm going to rule that there is no partial credit on this.      09:14AM

**11-21-17 - CV 12-601 - Telephonic Status Hearing**

1    This is a fundamental element.

2            Next matter.

3            MR. FATHI:  Thank you, Your Honor.

4            MS. FLETCHER:  Your Honor, if I could just clarify

5    then, going forward with these measures, the monitors will need    09:14AM

6    to be giving an all or nothing score.  So it's just zero or 100

7    percent, is that correct?

8            THE COURT:  That's right.

9            MS. FLETCHER:  Okay.  Thank you.

10           MR. FATHI:  Your Honor, the next item is Performance    09:14AM

11   Measure 25.  And this measure requires that a first responder

12   trained in basic life support responds and adequately provides

13   care within three minutes of an emergency.  And the issue here

14   is what documents the monitors are reviewing.  The protocol for

15   this measure that's set forth in the stipulation specifically    09:15AM

16   requires that SIRs, Significant Incident Reports, will be

17   reviewed and compared with medical charts documenting the

18   emergency response.  The monitor guide similarly says that the

19   agreed source documents for this measure are significant

20   incident reports and incident reports.  The problem is that the    09:15AM

21   monitors haven't been systematically and in every case

22   reviewing these documents.  They have been using something

23   called an ER hospital report.

24           Now, the defendants say the hospital report is

25   generated from the field briefing report which contains IR and    09:15AM

1    SIR information.  But unless it contains all of the information

2    contained in the IRs and SIRs, defendants are simply not using

3    the required source documents for this performance measure.

4    And this is important because the SIRs may contain information

5    that the hospital report doesn't.  That's the whole point for          09:16AM

6    requiring in the stipulation that the SIRs will be reviewed and

7    compared with the medical chart documenting it the emergency

8    response.  So the parties bargained for review of the SIRs and

9    that's what the defendants have to do.

10          THE COURT:  But as I read the defendants' letter, it          09:16AM

11   seems like they agreed to do that.  Am I misreading the letter?

12          MR. FATHI:  Your Honor, what the letter says is the --

13   I'm looking at Page 1 of Ms. Fletcher's November 14th report.

14   It says, "The ER hospital report is generated from the field

15   briefing report which contains IR and SIR information."  I          09:16AM

16   don't see anywhere in here that it says they are reviewing the

17   IRs and the SIRs with regard to every incident that's included

18   in the sample.  If that's what Ms. Fletcher intended to say, if

19   that's what she's saying now, then I agree that resolves the

20   problem.                                                              09:17AM

21          THE COURT:  I understand the distinction that you are

22   making.  What you are saying, Mr. Fathi, is that you don't

23   know, you can't tell from the defendants' November 14th letter

24   whether the auditors are seeing the field briefing report or

25   the IR and SIR information reports themselves.  Is that what          09:17AM

1    you are saying?

2            MR. FATHI:  Exactly, Your Honor.

3            THE COURT:  All right.  Ms. Fletcher.

4            MS. FLETCHER:  Yes, Your Honor.  The monitors review

5    the IRs and the SIRs.  My November 14th letter simply explained    09:17AM

6    to Mr. Fathi that the ER hospital report is generated from the

7    field briefing report which also contains that information.

8    All three source documents are used.  And as I said in my

9    original letter, defendants have agreed to provide these

10   applicable documents.  So I don't think that there's an issue.    09:18AM

11           THE COURT:  All right.  That seems to be true.

12           Go ahead, Mr. Fathi.  The next one.

13           MR. FATHI:  Thank you, Your Honor.

14           The next issue involves Performance Measure 77.

15   Performance Measure 77 requires the treatment plan for certain    09:18AM

16   patients be updated, quote, "a minimum of every 12 months."

17   And the parties have a purely legal dispute about what the

18   phrase "every 12 months" means.  Plaintiffs' position is that

19   it means 12 calendar months or one calendar year.  So if the

20   treatment plan is dated December 1st, 2015, it has to be          09:18AM

21   updated again no later than December 1st, 2016.  And we have

22   cited case law supporting that position at Document 2426-1 at

23   Page 13.

24           The defendants' position is that the phrase every 12

25   months actually means every 13 months, so that if the treatment  09:18AM

**11-21-17 - CV 12-601 - Telephonic Status Hearing**

1   plan is updated on December 1st, 2015, their position is they

2   have until December 31st, 2016 to do the next update.  And that

3   position, Your Honor, is absurd.  If you asked a thousand

4   people is 12 months longer than one year, not one person in the

5   thousand will say yes, 12 months is a longer period of time          09:19AM

6   than one year.  That's what the defendants are saying here,

7   Your Honor.  It's a position for which they have offered no

8   case law or any other support.

9          So we ask the Court to adopt the plain and common

10  sense meaning of 12 months which is 12 calendar months or one        09:19AM

11  calendar year.

12         THE COURT:  All right.  That seems pretty simple to

13  me.  It's an easier way to do it.  Why is it such an imposition

14  on the defendants to do it that way?

15         MS. FLETCHER:  Your Honor, first of all, I'd like to          09:19AM

16  correct something that Mr. Fathi said.  We are not interpreting

17  this measure to mean every 13 months.  In fact, the example he

18  gave is within 12 months.  It's not within 13 months.  And the

19  most important thing to look here, look to, Your Honor, is

20  every other measure that requires something be done within a         09:20AM

21  three-month time period or a six-month time period under the

22  stipulation is written in 30-day or 90-day increments.  If Mr.

23  Fathi wanted the stipulation to read every 365 days, then

24  that's what the parties should have agreed to when they were

25  negotiating the stipulation.  That's not what they agreed to.        09:20AM

1    For every other measure, as I cite to in my November 14th

2    letter, every other measure that talks about the Performance

3    Measure 39, 45, 47, 48, I could go on and on, deals with

4    specific days.  They don't say three months, six months.

5            So I don't know why now all of a sudden for this          09:20AM

6    measure we have to interpret something that's not within the

7    stipulation.  The stipulation says 12 months.  We're doing it

8    within 12 months.  If it was supposed to be 365 days that's

9    what the parties would have agreed to and they didn't.  So we

10   look to the plain language of the stipulation not the case law    09:21AM

11   that Mr. Fathi cites.  The plain language of the stipulation

12   says 12 months.

13           MR. FATHI:  Your Honor.

14           THE COURT:  Yeah.

15           MR. FATHI:  The contract language is clear.  The           09:21AM

16   Court --

17           THE COURT:  Mr. Fathi, I have to interrupt.  The

18   problem is you are breaking up, and it's hard for the court

19   reporter to get every word.  Are you perhaps using a speaker

20   phone?                                                            09:21AM

21           MR. FATHI:  Yes, Your Honor.  I will pick up and we'll

22   see if that's better.

23           THE COURT:  I'm sorry.  Thank you very much.

24           MR. FATHI:  Let us be clear, Your Honor.  Defendants

25   are taking a position that 12 months is a longer period of time   09:21AM

1   than one year.  Their position is that if Treatment Plan 1 is

2   done on December 1st, 2015, they have 13 months.  They have

3   until December 31st, 2016 to do the next one.  And that just

4   does violence to the plain meaning of 12 months.  It's

5   extremely telling that they have not been able to come up with          09:22AM

6   a single case that says, yes, 12 months really means a period

7   of longer than one year.

8            Now, you will recall, Your Honor, that there are

9   performance measures requiring things to be done at intervals

10  of 30 days, 60 days, 90 days.  Now, defendants asked for that          09:22AM

11  to be changed.  They said they didn't want to count days.  They

12  wanted to count calendar months from, say, the 17th of one

13  month to the 17th of the next month or the 17th of the third

14  month.  And they specifically argued that it's easier for them

15  to count in calendar months, and they asked that they be              09:22AM

16  allowed to do so.  That's their brief at Document 1644.

17           And the Court granted their request and said yes, you

18  can count calendar months.  But now that there's a performance

19  measure that's specifically stated in months, they want to

20  count that in some entirely different way.  They can't have it        09:23AM

21  both ways.  They asked to be allowed to count in calendar

22  months.  The Court said okay, and now that's what they have to

23  do.  12 months is 12 months.  It's not 13 months.

24           THE COURT:  Well, say it this way:  If you do

25  something on the 1st of December you have to do it by the 1st        09:23AM

**11-21-17 - CV 12-601 - Telephonic Status Hearing**

1   of December the next year.  That's 12 months.  That's what

2   we'll do.

3           Next issue.

4           MR. FATHI:  Thank you, Your Honor.

5           The next issue is Performance Measure 80, and I'm          09:23AM

6   looking at the second page of my November 20th letter.  And the

7   issue here is simply that the defendants have identified in

8   this document not filed under seal an individual who suffers

9   from mental illness.  And so we would ask that they fix that

10  immediately.                                                      09:24AM

11          THE COURT:  That can be fixed.  Please do that.

12          MS. FLETCHER:  We can do that, Your Honor.

13          THE COURT:  Thank you.

14          MR. FATHI:  The next issue is Performance Measures 85

15  and 86.  We sent the defendants proposed language on October     09:24AM

16  4th.  That's been filed at Document 2368-1, Pages 33 to 36.

17  And unfortunately, the defendants haven't responded in the

18  sense of explaining what, if anything, they find objectionable

19  about our language, what they want to change.  They just

20  propose different language without explanation.                  09:24AM

21          There are two main problems with the defendants'

22  proposed language.  The first is that the sampling methodology

23  that it uses is inconsistent with the Court's order, Document

24  2160 at 4, which requires that a random sample of 10 records

25  from all MH-3D prisoners at a given unit be drawn.  The          09:24AM

1    defendants' proposal by contrast involves preselecting the

2    records in a nonrandom fashion contrary to the Court's order.

3            The second main problem is that Performance Measure 86

4    requires that MH-3D prisoners shall be seen a minimum of every

5    90 days by a mental health clinician for a minimum of six      09:25AM

6    months after discontinuing medication.  So the patient has to

7    be seen within 90 days of discontinuing medication and then has

8    to be seen again within 90 days of that first contact.

9            The defendants' proposed language simply doesn't

10   measure the first interval, the interval between discontinuing  09:25AM

11   medication and the first contact.  So it's not measuring what

12   the performance measure requires.  We think that the language

13   we have submitted is consistent with the Court's order and

14   that's what the Court should adopt for Performance Measures 85

15   and 86.                                                         09:25AM

16            THE COURT:  Ms. Fletcher.

17            MS. FLETCHER:  Yes, Your Honor.  First I'd like to say

18   with respect to Performance Measure 85 and with defendants'

19   proposed language, the Court's record plainly states that the

20   record will be randomized.  The problem that defendants have    09:26AM

21   with plaintiffs' proposed language is that the methodology

22   assumes there are 10 records available.  There are not always

23   10 records available for every unit.

24            Other than that small change, our language tracks the

25   Court's order verbatim for 85 and 86.  There's no reason to put  09:26AM

**11-21-17 - CV 12-601 - Telephonic Status Hearing**

1    "you must pull 10 records" into the language when there may or

2    may not be 10 records.  Our language is exactly the same just

3    says, "10 records if available."  There's no other difference.

4    It tracks the Court's order and language precisely.

5            MR. FATHI:  Unfortunately, that's not true, Your                09:26AM

6    Honor.  The defendants' language says, "10 records if available

7    with medication discontinuation follow-up contacts due in the

8    monitored month will be selected for review at each yard."

9    That's not what the Court's order said.  The Court's order said

10   you take a random sample of 10 records from all MH-3D prisoners    09:27AM

11   at a given unit.  That's what the Court's order says.  That's

12   what our proposed language says.  The defendants' language

13   involves sort of preselecting the records in some nonrandom

14   way.  That's what we object to.

15           MS. FLETCHER:  Your Honor, it does not.  It says that       09:27AM

16   each monitoring month will be selected for review at each yard.

17   The Court's record says "randomized."  I don't understand what

18   Mr. Fathi's issue is other than the fact we say 10 records if

19   available, and that's correct.  You only have to pull 10

20   records if there's 10 available.                                   09:27AM

21           THE COURT:  I understand how Mr. Fathi is pointing out

22   a further difference, but what I need to do is to take a look

23   at the three versions here, the defendants', the plaintiffs',

24   and mine and make sure that I make it clear enough for

25   everybody to understand.  So I will take a look at this.          09:27AM

**11-21-17 - CV 12-601 - Telephonic Status Hearing**

1        MR. FATHI:  Thank you, Your Honor.

2        The next item is Performance Measure 95.  The Court

3   has already ruled on this, but we just need to make sure the

4   defendants revise the monitor guide to comply with the Court's

5   ruling.                                                          09:28AM

6        THE COURT:  Ms. Fletcher.

7        MS. FLETCHER:  Yes, Your Honor.  To clarify, Mr.

8   Fathi, our understanding is that you are wanting us to, for any

9   measure that -- where an inmate is moved to another facility,

10  you want us to throw that file out since you only want us to    09:28AM

11  monitor files that are at the facility during the monitoring

12  month.  Is that correct?

13       MR. FATHI:  Your Honor, it's not what I want.  It's

14  what the Court has ordered.

15       THE COURT:  No.  That's exactly right.  That's what we     09:28AM

16  decided last hearing.

17       MS. FLETCHER:  No, I understand that, Your Honor.  I'm

18  just wanting to make -- and we will have that language for this

19  measure.  I'm trying to clarify whether it's Mr. Fathi's

20  position that he's going to argue the same type of methodology  09:28AM

21  applies to other measures where inmates may be transferred.

22       MR. FATHI:  Your Honor, I don't see the need to borrow

23  trouble.  The Court has ruled on Performance Measure 95.  All

24  we're asking is that the monitor guide be conformed with the

25  Court's rulings of Performance Measure 95.                      09:29AM

**11-21-17 - CV 12-601 - Telephonic Status Hearing**

1        THE COURT:  Couple of things here.  If you think

2  there's a particular way this needs to be said in the monitor

3  guide, have you provided that language to the defendants yet,

4  Mr. Fathi?

5        MR. FATHI:  I have not.  If they would prefer that we   09:29AM

6  provide a draft, we can do that.

7        THE COURT:  Provide a draft.

8        Go ahead, Ms. Fletcher.

9        MS. FLETCHER:  I would just say that would be great,

10  Your Honor.  We appreciate that.   09:29AM

11        THE COURT:  Mr. Fathi, Ms. Fletcher, with respect to

12  85 and 86, to make sure that I have your current respective

13  versions in front of me as I compare it to what the Court has

14  ruled, would you kindly e-mail to Ms. Selzer the last version

15  that you each have promulgated?  Thank you.   09:30AM

16        Then on to your next measure, Mr. Fathi.  Oh, and also

17  while I have a moment of the microphone, it is ordered granting

18  the motion to seal that was filed yesterday.

19        MR. FATHI:  Thank you, Your Honor.

20        At this point, we are ready to move on to Item 11 from   09:30AM

21  the plaintiffs' proposed agenda for the November 7 hearing,

22  which is the documents that we have requested that have not

23  been produced by the defendants.  And the relevant

24  correspondence is set forth at -- if you will give me one

25  moment.   09:30AM

**11-21-17 - CV 12-601 - Telephonic Status Hearing**

1    THE COURT:  I think I have read it.  This is Mr.

2  Bojanowski's letter of November 18th?

3    MR. FATHI:  No.

4    THE COURT:  No?

5    MR. FATHI:  Your Honor, it's actually Mr. Valenti's          09:30AM

6  letter of October 20th and my response of October 31st.

7    THE COURT:  Okay.

8    MR. FATHI:  And it is Document 2426-1 at Pages 86

9  through 104.

10    THE COURT:  Give me just a second, please.  And you          09:31AM

11  are directing me to Page 104 of that document?

12    MR. FATHI:  No.  104 is the end, Your Honor.  I would

13  start with the first page of my letter is Page 92.

14    THE COURT:  All right.

15    MR. FATHI:  And then Mr. Valenti's letter is at Page          09:31AM

16  86.

17    THE COURT:  Okay.  Go ahead.  I'm up to where you are.

18    MR. FATHI:  Thank you, Your Honor.

19    As a threshold matter, most of these documents were

20  first requested in July and so we are puzzled and disturbed          09:32AM

21  that the majority of them still have not been produced.  So I

22  would propose to simply go through the outstanding items one by

23  one.  Is that acceptable?

24    THE COURT:  That's fine.

25    MR. FATHI:  All right.  On request Number 50, this is          09:32AM

1    the list of heat-related medications that has been developed

2    and distributed to all facility health administrators.  We have

3    received a list, but there's no indication that the list has

4    been actually distributed to the facility health

5    administrators.  So we would like a declaration or at least the          09:32AM

6    affirmance of counsel that that list has been distributed to

7    all facility health administrators.

8            THE COURT:  Who will be responding on defendants' side

9    on this letter?

10           MR. VALENTI:  Your Honor, it will be me, Mr. Valenti.          09:32AM

11           THE COURT:  Thank you, Mr. Valenti.  What's your

12    response there?

13           MR. VALENTI:  Your Honor, based on my knowledge of

14    this request, it's on information and belief that that list was

15    provided to the facility health administrators.                        09:33AM

16           MR. FATHI:  Your Honor, we would like -- beg your

17    pardon.

18           THE COURT:  I'm sorry.  I was about to say that that

19    seems a little less than convincing, Mr. Valenti.

20           MR. VALENTI:  It's based on an e-mail that was given,          09:33AM

21    that was sent to me stating that these -- this was the list of

22    medications that was sent to the facility health

23    administrators.

24           THE COURT:  And again, I understand it was based on an

25    e-mail but I have to -- I mean, are you personally convinced          09:33AM

 1    that what is reported in the e-mail actually happened, or are

 2    you just taking it in and not vetting it to make sure it

 3    actually happened?

 4              MR. VALENTI:  No.  Based on the document I was

 5    provided, I am confident in saying that was the list that was          09:34AM

 6    provided to the facility health administrators.

 7              THE COURT:  Okay.  I will take your avowal there.

 8              Go ahead, Mr. Fathi.

 9              MR. FATHI:  Thank you, Your Honor.  The next request

10    is Number 52.  We were provided, many months ago, a document          09:34AM

11    provided by the defendants in discovery that said, quote,

12    "Except at non-corridor facilities all suicide watches will be

13    conducted by behavioral health clinical staff seven days per

14    week, end of quote.

15              So we asked for all documents reflecting the                09:34AM

16    implementation of that policy requirement.  Mr. Valenti's

17    letter of October 20th says there is no requirement that

18    corridor facility suicide watches will be conducted by

19    behavioral health clinical staff seven days per week.  So

20    obviously one of those two statements is not true.  We would          09:35AM

21    like to know which one and we would like to know why the untrue

22    statement was made.

23              THE COURT:  Well, let's answer the first question.  Go

24    ahead, Mr. Valenti.

25              MR. VALENTI:  Your Honor, as far as the statement, the      09:35AM

**11-21-17 - CV 12-601 - Telephonic Status Hearing**

1    correct statement is that there is no requirement that exists.

2    I was given information by Dr. Taylor and Dr. Calcote that that

3    is not a requirement.  That is not a requirement of the

4    stipulation.  It was a mistake made by the person who prepared

5    that document that Mr. Fathi is referring to.                    09:35AM

6            THE COURT:  Okay.  Mr. Fathi, that's your answer, I

7    guess.

8            MR. FATHI:  Well, Your Honor, that's not a very

9    satisfying answer.  When defendants produce documents to us we

10   assume when they are Bates stamped they have been reviewed.      09:35AM

11   And we rely on the truth of the statements in those documents.

12   So to be told oh, well, that was just wrong, is not a very

13   satisfying answer.

14           THE COURT:  I understand.  And you have heard me

15   address at length the issues with respect to making sure that    09:36AM

16   things are right.  But when the defendant comes forward and

17   says that we made a mistake and we didn't get it right,

18   especially since there's been a change in staffing, and perhaps

19   we'll have an opportunity to make sure that more things are

20   right, I don't think I need to belabor this point anymore.       09:36AM

21           MR. FATHI:  Thank you, Your Honor.

22           The next request is Number 53 which seeks the draft

23   DI, or director's instruction, pertaining to the transitional

24   housing unit at ASPC Tucson.  Mr. Valenti, in his October 20th

25   letter, said that defendants would produce documents,            09:36AM

1    responsive documents, the week of October 23rd.  But as of

2    today nothing has been produced.

3            THE COURT:  Mr. Valenti.

4            MR. VALENTI:  Your Honor, just to clarify, when we

5    requested this information from ADC, one of the attachments     09:37AM

6    that's to the DI-358, which is the pertinent document, it was

7    produced to us on October 25th which was after I sent my letter

8    out.  And I believe when I -- after I got it, we had to review

9    it, and then after we reviewed it we discovered that after a

10   certain time has passed it's actually publicly available for    09:37AM

11   Mr. Fathi to get on the ADC website.  It consists of DI-358 and

12   also consists of the attachment that is attached to the DI-358.

13           THE COURT:  That doesn't sound so kosher to me.  If

14   you are engaged in a dialogue back and forth with counsel and

15   you say you are going to produce something, you don't just pop   09:37AM

16   up and say, by the way, you can get it at the corner drug

17   store.  I think you need to follow up and give what you said

18   you were going to give.

19           MR. VALENTI:  Yes, Your Honor.  To respond to that,

20   when I put in here that defendants intend to produce documents   09:38AM

21   responsive to this request, at the time that it is written the

22   intention is to do that.  But when, for example, we don't get

23   the documents in time or an issue comes up, what I do not want

24   to do is to give the plaintiffs a set date and when that date

25   comes it winds up not occurring.  So I would rather say in that  09:38AM

1    sense, which is the true intent, we intend to produce those

2    documents by that time, there are things that may happen in the

3    interim that causes us not to produce those documents whether

4    it's because we didn't get the documents in time or whether it

5    needs more time to be reviewed.                                    09:38AM

6           THE COURT:  Well, I'm not challenging that idea.  That

7    seems to make sense to me.  But also what makes sense is to be

8    in open communication with the other side about when delays

9    developed and reporting those delays to the other side so they

10   are fully informed.  But what I was particularly directing my    09:38AM

11   last comment to was your suggestion that the fact that in the

12   interim the document had become available on the public

13   website, that that somehow relieved you from the obligation to

14   follow up on what had been an expectancy, I think, from what I

15   have heard, that that kind of information would be provided in   09:39AM

16   the -- by the hands of the lawyer.

17          MR. VALENTI:  And, Your Honor, just to clarify that,

18   it was not my intention.  If that was communicated that way

19   that was not my communication.  As far as this letter from Mr.

20   Fathi dated October 31st, basically, because of the number of   09:39AM

21   requests in that request, there were approximately 17 different

22   requests in the September 27th letter which is what the October

23   20th letter and the October 31st letter deal with, the

24   intention of the defendants was to send a more full response

25   once we got a majority of the documents and we were able to     09:39AM

```
 1    provide full answers to the request instead of doing it

 2    piecemeal.

 3              THE COURT:  Okay.  All right.  Sounds like --

 4              MR. VALENTI:  And the only reason I say that, Your

 5    Honor, is because I understand from my first comment it would      09:40AM

 6    seem as if my intention was just to let it go and then address

 7    it at the court hearing.  That was not my intention.  My

 8    intention was to wait until we got the majority of the

 9    documents and the majority of the information.  That way we're

10    not sending four or five different response letters back to       09:40AM

11    plaintiff so we could do it in one simple letter to facilitate

12    the communication as you stated before.

13              THE COURT:  All right.

14              MR. FATHI:  Well, a couple of responses, Your Honor.

15    Mr. Valenti's letter was dated October 20th.  It's now November   09:40AM

16    21st and we still haven't received the comprehensive response

17    he is promising.  Secondly, we would like the documents as they

18    become available.  We don't want to receive nothing until the

19    very last document is available and we get everything at once.

20    If one responsive document becomes available we would like that   09:40AM

21    promptly produced.

22              THE COURT:  Well, I think that there has to be some

23    reasonableness standard applied here, and that is lawyers

24    shouldn't just keep a stack growing until there's a big enough

25    stack to justify an envelope in this world of e-mail.  It's not   09:41AM
```

**11-21-17 - CV 12-601 - Telephonic Status Hearing**

1   such a big deal when you -- I gather mostly what you are

2   producing is by electronic means.  And so when you get

3   documents that are responsive, just because everybody is busy

4   and it's -- I don't want it to be -- I don't want to play a

5   part in making anybody's life more difficult.  And so it seems     09:41AM

6   to me the smoothest path is that when documents become

7   available and they are cleared for disclosure to the other

8   side, take quick action and get them to the other side and

9   don't let them accumulate because it isn't -- we're not in the

10  world anymore where you have to worry about saving the stamp      09:41AM

11  kind of thing.

12          So go ahead.

13          MR. FATHI:  Thank you, Your Honor.  The next request

14  is Number 54 which seeks all documents reflecting the planned

15  population management bed changes set forth in the May 26th,       09:42AM

16  2017 memorandum from Stacey Crabtree to Charles Ryan.  Again,

17  nothing has been produced in response to this request.

18          THE COURT:  Mr. Valenti.

19          MR. VALENTI:  Yeah.  Your Honor, may I have a moment?

20          THE COURT:  You may.                                       09:42AM

21          MR. VALENTI:  Your Honor, we intend to file a letter

22  responding to that request.

23          THE COURT:  By when?

24          MR. VALENTI:  Next week.

25          THE COURT:  Close of business of next week is your         09:43AM

1    deadline on that?

2              MR. VALENTI:  Yes, Your Honor.

3              THE COURT:  Okay.  Thank you.

4              MR. FATHI:  Excuse me, Your Honor.  I heard a letter.

5    I didn't actually hear that any documents would be produced.          09:43AM

6    Could we have clarification on that?

7              THE COURT:  He said he's going to provide a responsive

8    letter.  At least you will know then the position.  If there's

9    a problem with the response and I need to hear about it and you

10   can't resolve it at the meet-and-confer, give me a call and          09:43AM

11   we'll do what we're doing here.

12             MR. FATHI:  Thank you, Your Honor.

13             The next request is Number 55, which seeks all agendas

14   and minutes for director's meetings also known as ADC and

15   Corizon bi-weekly meetings from January 1, 2017, to the              09:43AM

16   present.  Again, no responsive documents have been produced.

17             THE COURT:  Mr. Valenti.

18             MR. VALENTI:  Your Honor, we are -- we have some of

19   those documents in our possession, however, we need some

20   further time to review them.  I would suggest that it would be       09:44AM

21   in -- my suggestion would be that it would be in the responsive

22   letter to request Number 54.

23             THE COURT:  So that's the end of next week you will

24   get that response?

25             MR. VALENTI:  Yes, Your Honor.                             09:44AM

1          THE COURT:  All right.  Thank you.

2          MR. FATHI:  Next is Request 57, all documents

3   reflecting the implementation of telemedicine utilization with

4   the University of Arizona and the Arizona Health Information

5   Exchange Access Portal.  The only documents -- the only          09:44AM

6   document that defendants claim is responsive is the declaration

7   of Juli Stover from Corizon filed at Document 2398-1, but that

8   is obviously not the universe of all documents reflecting the

9   implementation of telemedicine utilization.  So we would like

10  those documents produced by a date certain.                     09:44AM

11         THE COURT:  Mr. Valenti.

12         MR. VALENTI:  And, Your Honor, just to clarify on Mr.

13  Fathi's comment, actually another document was produced that

14  was responsive to Part 2 of that request which was the Arizona

15  Health Information Exchange Access Portal.  Documents           09:45AM

16  responsive to that request were produced back on November 6th

17  of 2017.  I just want to make sure the record is clear on that.

18         As far as the first part reflecting the implementation

19  of telemedicine utilization with the University of Arizona,

20  Corizon provided us with what they believe are responsive       09:45AM

21  documents on November 18th, and we plan to get those produced

22  to plaintiffs along with, as I said, the letter responding to

23  54 and 55 next week.

24         THE COURT:  All right.  Thank you.

25         MR. FATHI:  And could we please have the Bates numbers   09:45AM

1    of the documents allegedly responsive to the second part of the

2    request.

3            THE COURT:  Do you happen to have that?

4            MR. VALENTI:  Okay.  Thank you, Your Honor.  It is

5    ADCM 1038194 --  it's ADCM 1038194 to ADCM 1038205.                09:46AM

6            MR. FATHI:  So that's a total of 11 or 12 pages,

7    correct?

8            MR. VALENTI:  That is correct, Mr. Fathi.

9            MR. FATHI:  Okay.  Next is Request 58:  All documents

10   reflecting the implementation of the offline MAR, MAR stands       09:46AM

11   for medication administration record, the defendants have

12   produced nothing in response to this request.  They claim that

13   no such documents exist.  But it's clear from the documents

14   that have been produced that the offline MAR is a project that

15   is an innovation in medical recordkeeping that has been           09:46AM

16   implemented.  We have attached to the correspondence some of

17   those documents.  And it's just inconceivable that a program of

18   that magnitude could be implemented and not result in the

19   creation of a single document.  So we would ask that those

20   documents be produced.                                            09:47AM

21            THE COURT:  Mr. Valenti.

22            MR. VALENTI:  Your Honor, we will have a response to

23   that next week as well in the same letter for the previous

24   request.  I did follow up with Corizon on Mr. Fathi's letter of

25   October 31st and we were provided with some responsive            09:47AM

1    documents.  I intend to have those produced next week with the

2    response.

3              THE COURT:  Good.  Thank you.

4              MR. FATHI:  Thank you, Your Honor.  I would just ask

5    that the defendants refrain from the premature statements that          09:47AM

6    documents responsive to this request do not exist.  It now

7    appears that was incorrect and that responsive documents do

8    exist.  So I would ask that a little inquiry be made before

9    such assertions are made in the future.

10             THE COURT:  Can you explain what Mr. Fathi has just           09:48AM

11   pointed out, Mr. Valenti?

12             MR. VALENTI:  Yes, Your Honor.  When I made that

13   request back in October in response to the September 27th

14   letter I was given information by Corizon that there were no

15   documents.  After Mr. Fathi sent his October 31st letter, I            09:48AM

16   sent a follow-up to make sure that there were no documents

17   responsive to this request and I was provided with, after they

18   did their search again, they provided us with some -- with

19   documents they believed to be responsive to the request.

20             THE COURT:  Well.  That's what you need to do,               09:48AM

21   obviously.  You have got to shake that tree.

22             MR. VALENTI:  That's why I followed up, Your Honor.  I

23   wanted to double check.

24             THE COURT:  All right.  Thank you.  Mr. Fathi.

25             MR. FATHI:  Next is Request Number 61 which seeks a          09:48AM

1  draft or final standard operating procedure for medication

2  management and administration during intra-system transfers.

3  This is the problem that has vexed us for a very long time of

4  making sure that medications accompany patients when they are

5  transferred from one ADC facility to another.  Defendants cite          09:49AM

6  a court filing prepared by counsel, but that's not responsive

7  to our request which seeks the documentation.  That was

8  actually distributed to the custody and the healthcare staff

9  about how to implement this new procedure, so that is the

10  documentation we are seeking.                                         09:49AM

11         THE COURT:  How about that document, Mr. Valenti?

12         MR. VALENTI:  Your Honor, after Mr. Fathi sent that

13  clarification on October 31st, I followed up with Corizon.

14  They have provided us with some documents they believe are

15  responsive.  Again, I will have that -- we plan to have that          09:50AM

16  produced next week along with a response and a letter for the

17  previous requests.  And for the record, Your Honor, just to

18  make it easier, I'm just going to refer to it as "the letter"

19  if that's okay with you.

20         THE COURT:  Yes.  Thank you.  The ahead, Mr. Fathi.            09:50AM

21         MR. FATHI:  Document 62 seeks any documents relating

22  to the system-wide and/or institution-wide discontinuation of

23  Gabapentin or Tramadol as pain medications including

24  instructions or directives given to prescribing providers and

25  protocols for tapering patients off the medication.  The            09:50AM

**11-21-17 - CV 12-601 - Telephonic Status Hearing**

1    defendants' response is that no such policy exists, but that's

2    not responsive because our request didn't allege the existence

3    of a policy, it just asked for documents pertaining to

4    discontinuation of these medications.  So that is what we would

5    like to have produced.                                        09:50AM

6            THE COURT:  Mr. Valenti, your response, please.

7            MR. VALENTI:  Yes, Your Honor.  I sent a follow-up on

8    Mr. Fathi's October 31st, 2017 e-mail to make sure that my

9    assertion that there were -- my belief that there were no

10   responsive documents to confirm that.  I sent them to Corizon.  09:51AM

11   Corizon confirmed there were no responsive documents that

12   exist.

13           THE COURT:  Is there a system-wide discontinuation of

14   Gabapentin or Tramadol?

15           MR. VALENTI:  No, Your Honor.                          09:51AM

16           THE COURT:  Hold on just a second.

17           I am not a witness in this case, but I'm also not able

18   to put out of my head what I see very often in cases in front

19   of me in the Department of Corrections where it appears that

20   this is happening.  And the plaintiffs apparently have picked   09:51AM

21   it up, too, because that's why they are asking about it.  Maybe

22   I better ask Mr. Fathi to lay a foundation for this inquiry.

23           MR. FATHI:  That's correct, Your Honor.  We obviously

24   receive many, many letters from the 34,000 class members we

25   represent and there has been a definite uptick in letters       09:52AM

1    alleging that individual patients have had their Gabapentin or

2    Tramadol discontinued and that they have heard or it is their

3    understanding that this is pursuant to either an

4    institution-wide or system-wide change in prescribing

5    practices.  So that's the genesis of the request.                    09:52AM

6            THE COURT:  All right.  Well, make a further inquiry

7    based upon that, Mr. Valenti.  And also for our next status

8    hearing in December, give a heads up to Mr. Pratt to let us

9    know about whether or not there is a systematic -- well, to

10   explain what appears to be true to the Court and appears to be   09:53AM

11   true to the plaintiffs' class, as communicated to their

12   lawyers, that it seems like there is this broad reduction in

13   the use of these two drugs and to ask Mr. Pratt to be prepared

14   to address that.

15           MR. BOJANOWSKI:  Your Honor, this is Tim Bojanowski.      09:53AM

16   I will contact Mr. Pratt and follow up so we will have some

17   information to the Court for the next status hearing.

18           THE COURT:  Thank you kindly.

19           Mr. Fathi.

20           MR. FATHI:  Next is Request Number 63 which seeks any     09:53AM

21   documents, e-mails, communications, plans, draft or final,

22   relating to the conversion of maximum custody units to close

23   custody units.  And again, this is something the Court has

24   heard of before.  The defendants have claimed that at

25   certain -- well, they haven't claimed.  They have, in fact,       09:53AM

1    reclassified certain units from maximum custody to close

2    custody.  And so we are seeking documents pertaining to that,

3    that conversion process, and so far we have -- all we have

4    received are for the Perryville facility, correctional service

5    logs which are -- these are the unit logs where the officers          09:54AM

6    just write down everything that happens in the unit.  Number

7    one, it's not responsive; and number two, they are so heavily

8    redacted as to be almost incomprehensible.  So we would request

9    that responsive documents be produced.

10             THE COURT:  Mr. Valenti.                                      09:54AM

11             MR. VALENTI:  Your Honor, we will provide a response

12   to that particular request next week in the letter.

13             THE COURT:  Okay.  Mr. Fathi.

14             MR. FATHI:  Next is Request Number 64, which is

15   temperature logs from June 1st, 2017 to present for all prison        09:54AM

16   complexes.  We agreed that we would -- I believe the defendants

17   agreed they would produce through the end of September.  We

18   have received some production, but there are still large

19   portions that are missing.

20             What I would suggest rather than go through all of          09:55AM

21   them on the phone now, is that we will send a letter listing

22   what's missing and if we could have production of the missing

23   documents by a date certain that would be satisfactory to the

24   plaintiffs.

25             THE COURT:  Mr. Valenti, any objection to including         09:55AM

**11-21-17 - CV 12-601 - Telephonic Status Hearing**

1    that in the letter?

2              MR. VALENTI:  May I have one moment, Your Honor?

3              THE COURT:  Yes.

4              MR. VALENTI:  Your Honor, that is fine with the

5    defense.  We will await plaintiffs' letter to make sure that          09:56AM

6    everyone's on the same page about what's been produced and what

7    has not been produced.

8              THE COURT:  So in order for that to happen, Mr. Fathi,

9    you can pretty quickly get the identification of the missing

10   reports to Mr. Valenti?                                                09:56AM

11             MR. FATHI:  Yes, Your Honor.  We can certainly do that

12   this week before the holiday.

13             THE COURT:  Thank you.

14             MR. FATHI:  Next is Number 67, and this involves a

15   couple of incidents in which Dr. Malachinski, who was a              09:56AM

16   physician at the Phoenix facility, was rejecting certain

17   patients who other staff wanted to transfer to the Phoenix

18   facility based on alleged noncompliance with CGAR measures.

19   And so we asked for all documents reflecting the rejection by

20   Dr. Malachinski or by any other person of patients for housing       09:57AM

21   at ASPC Phoenix based on alleged noncompliance with CGAR

22   measures and any disciplinary or corrective action taken

23   against Dr. Malachinski or any other person for this behavior.

24   Again, we learned of these incidents through documents that

25   were produced by defendants.  So far we have received no             09:57AM

1   responsive documents.

2           THE COURT:  Mr. Valenti.

3           MR. VALENTI:  Your Honor, we will have a response in

4   the letter that we previously mentioned for next week.

5           THE COURT:  Thank you.                                    09:57AM

6           MR. VALENTI:  And just for the record, Your Honor,

7   when I say we'll have a response on each of these requests, we

8   have been working on getting responsive documents or an

9   explanation if there are no responsive documents.  So I just

10  want to make sure the record is clear that we have, between the   09:58AM

11  time the letter was sent to this hearing we have been working

12  on it.

13          THE COURT:  Thank you.

14          MR. FATHI:  Next is Request Number 18 and 19.  And

15  this goes back, I believe, to June, Your Honor, when we had       09:58AM

16  requested instructions that were given to Corizon and ADC staff

17  about compliance with the Court's various orders.  And we had a

18  telephonic hearing, I believe, too, with Lucy Rand from the

19  Attorney General's Office, and Ms. Rand told the Court about --

20  and then actually provided to the Court -- e-mails that she had   09:58AM

21  sent to Corizon and ADC employees asking that they complete a

22  declaration regarding their search for responsive documents and

23  provide all those declarations back by July 12th, 2017.

24          So we have asked for those declarations be produced

25  and defendants are taking the position, well, the language of     09:59AM

1    the letter was there are no declarations to produce at this

2    time.  It's not entirely clear what "at this time" means.  But

3    Ms. Rand sent out this e-mail to quite a large number of people

4    saying execute these declarations, return them by July 12th.

5    So it's puzzling to be told there are absolutely no such                09:59AM

6    documents in existence.  So we would like clarification on that

7    and production of any documents that do exist.

8              THE COURT:  Mr. Valenti.

9              MR. VALENTI:  Your Honor, we will have a response in

10   the letter next week.                                                   09:59AM

11             THE COURT:  Now, in addition to what's already been

12   disclosed, I think I was playing in the order that any draft

13   declaration would also have to be produced.  So that would

14   include the e-mails to the potential declarants and any drafts

15   that were provided to them.                                             10:00AM

16             MR. VALENTI:  And I believe those were given to you,

17   Your Honor, by Ms. Rand back in July.

18             THE COURT:  Well, and I think they were also produced

19   to the plaintiffs, weren't they?

20             MR. VALENTI:  Yes, they were.                                 10:00AM

21             MR. FATHI:  Just to be clear, Your Honor, the e-mail

22   and sort of boilerplate declaration that Ms. Rand sent out were

23   produced to the Court and plaintiffs.  We never received any

24   either draft or final completed declaration, which is what is

25   mystifying us in light of the number of people Ms. Rand wrote           10:00AM

**────── 11-21-17 - CV 12-601 - Telephonic Status Hearing ──────**

1  to and the firmness with which you set a July 12th deadline.

2  So again, we hope that the defendants will comply with the

3  Court's order to produce any declarations, either final or

4  draft, that do exist.

5          THE COURT:  And I would agree.                          10:01AM

6          Go ahead, Mr. Fathi.

7          MR. FATHI:  I have no other discovery requests.  There

8  are a few housekeeping matters I would like to raise with the

9  Court's permission.

10          THE COURT:  Please.                                    10:01AM

11          MR. FATHI:  First, we have not yet received the

12  September CGARs.  Although the defendants were provided orally

13  some numbers from the September CGARs at the November 7th

14  hearing, we still have not received them.  So we would like

15  those produced by a date certain.                            10:01AM

16          THE COURT:  And this is out of the ordinary course.

17  These are tardy in the normal practice.  Is that correct, Mr.

18  Fathi?

19          MR. FATHI:  Correct, Your Honor.  Historically they

20  have been produced by about the 15th of the month and we are  10:01AM

21  obviously at the 21st.

22          THE COURT:  Mr. Valenti.

23          MR. BOJANOWSKI:  Your Honor, this is Tim Bojanowski.

24  I will address this issue.

25          The CGARs are not yet completed.  It's my            10:02AM

1    understanding they should be completed sometime today.  So

2    usually once they are completed we have a fairly quick

3    turnaround time getting those out to everybody.  So as soon as

4    I get the completed set, we'll turn around and have them out

5    within a business day.                                            10:02AM

6                THE COURT:  All right.  Thank you.

7                Go ahead, Mr. Fathi.

8                MR. FATHI:  Similarly, at the November 7th hearing,

9    the court ordered that the monthly staffing reports be produced

10   by the 15th of the following month.  So the October staffing    10:02AM

11   reports should have been produced by the 15th of November.

12   They were not.  We would ask that they be produced without

13   further delay.

14               THE COURT:  Mr. Bojanowski, whoever.

15               MR. BOJANOWSKI:  Your Honor, they have not been      10:02AM

16   produced but I believe we can produce those today.

17               THE COURT:  All right.  Do you have any idea why we

18   have the delay now?

19               MR. BOJANOWSKI:  I'm not quite sure why there was a

20   delay in that, Your Honor.                                       10:03AM

21               THE COURT:  Well, light a fire, please.

22               MR. BOJANOWSKI:  I will light a fire and we will get

23   them out today.

24               THE COURT:  Thank you.

25               MR. FATHI:  Finally, Your Honor, plaintiffs' motion  10:03AM

1   for attorney's fees is now fully briefed.  The defendants have

2   requested oral argument.  Plaintiffs don't believe oral

3   argument is necessary.  But if the Court is going to hear

4   argument either at the December hearing or some other time, we

5   would just appreciate notice so that we can make sure that the          10:03AM

6   appropriate counsel is present.

7           THE COURT:  So far what I have seen I don't think that

8   oral argument would be helpful to the Court, but if I change my

9   view I will let you know.

10          MR. FATHI:  Thank you, Your Honor.                              10:03AM

11          THE COURT:  Is there anything else?

12          MR. FATHI:  That is all plaintiffs have, Your Honor.

13          THE COURT:  And anything from the defendants' side?

14          MR. BOJANOWSKI:  Your Honor, one of the things that we

15  had an issue with was the Court's granting of our motion to            10:04AM

16  reconsider on the contempt issues.  And there was a date set by

17  the Court previously for hearing in January, and it's my

18  understanding that was getting moved.  But there's no order on

19  file vacating that January date, and I just wanted to bring

20  that to the Court's attention.                                         10:04AM

21          THE COURT:  Oh.  All right.  We'll fix that.

22          MR. FATHI:  Your Honor, I assume that one of those two

23  dates will still be the monthly status hearing.

24          THE COURT:  Right.

25          MR. FATHI:  But I just want to make sure the Court's           10:04AM

————11-21-17 - CV 12-601 - Telephonic Status Hearing————

1   order addresses that as well.

2           THE COURT:  No.  What you say is true, and if what Mr.

3   Bojanowski says is right we'll fix that, too, because we

4   originally did set a date that needed to be put off until after

5   the extension that was granted with respect to the production        10:04AM

6   of the December numbers.

7           Anything else, Mr. Bojanowski?

8           MR. BOJANOWSKI:  Nothing further, Your Honor.

9           THE COURT:  All right.  Thank you all very much.  Have

10  a good day.                                                          10:05AM

11          MR. FATHI:  Thank you, Your Honor.

12          (Proceeding concluded at 10:05 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1

 2

 3

 4                    C E R T I F I C A T E

 5

 6          I, LAURIE A. ADAMS, do hereby certify that I am duly

 7    appointed and qualified to act as Official Court Reporter for

 8    the United States District Court for the District of Arizona.

 9          I FURTHER CERTIFY that the foregoing pages constitute

10    a full, true, and accurate transcript of all of that portion of

11    the proceedings contained herein, had in the above-entitled

12    cause on the date specified therein, and that said transcript

13    was prepared under my direction and control.

14          DATED at Phoenix, Arizona, this 28th day of November,

15    2017.

16

17                              s/Laurie A. Adams

18                              _____
                                Laurie A. Adams, RMR, CRR

19

20

21

22

23

24

25
```