Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED BELOW]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
        adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED BELOW]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | No. CV 12-00601-PHX-DKD<br><br>**DECLARATION OF MEGAN LYNCH** |

I, Megan Lynch, hereby declare:

1. I have been employed at the Prison Law Office since May 2013. Since that date, I was the supervising litigation assistant in my office and was the primary litigation assistant/paralegal assigned to work on *Parsons v. Ryan*. In July 2016, I was promoted to an Investigator/Monitor position where I monitor prison and jail system's compliance with our office's case settlements and I work on special projects to analyze systemic problems that arise in our cases for further investigation and advocacy. As part of my monitoring duties, I continue to work on *Parsons*, in both monitoring and paralegal capacities. If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge.

2. I am very familiar with the operations of the Prison Law Office, including the management of all correspondence the office receives from class members in our various cases, their loved ones, and other third parties. I oversaw all aspects of the creation and implementation of a Salesforce database that went live in May 2017 that the Prison Law Office uses to track all correspondence regarding class members received and sent under our cases. The database also tracks non-case related self-help correspondence with incarcerated people from across California and the nation who write us seeking assistance and information.

3. Prior to the implementation of the Salesforce database, I used and oversaw the training of all staff members on the use of a Microsoft Access database our office used to manage and track correspondence regarding class members up until May 2017. All information contained in the older Access database was imported and fully integrated into the new Salesforce database.

4. I am knowledgeable and have been trained in the use of Salesforce, Access, and Excel programs to track and analyze data within our operational procedures, and to run reports summarizing the data contained in these various database sources.

5. We refer to the process used by me and the other litigation assistants and monitors in reviewing correspondence as "triaging" the mail. In triaging, after sorting

1   physical letters and reviewing the substance to determine if a letter is case related, a copy
2   of all case related letters is electronically scanned to the database.  Next, the staff persons
3   triaging the letter read it, and assign the letter to a class member in our system or create a
4   new contact if this is our first time communicating with the class member, and assign the
5   letter to the respective lawsuit, i.e., *Parsons.*  Then we enter data from the letter into the
6   database, including summarizing the letter's content and coding the letter.  We next
7   forward the database entry to the attorneys to review and we draft responses to the class
8   member that are also reviewed by the attorneys.  This is a uniform practice that we use for
9   every case-related letter our office receives, not just *Parsons*.  "Code" refers to the fact
10  that our database is set up to have issue code lists relevant to each case.  These are pick
11  lists in our database permitting selection of one or more topics or issues raised by class
12  members in a particular case.

13        6.     In my role in the *Parsons* case, I am responsible, among other tasks, for
14  triaging mail from several Arizona prisons.  Throughout 2017, I primarily triaged letters
15  from class members at the Tucson prison, and from multiple yards at the Lewis and
16  Eyman prisons.  When litigation assistants and investigators assigned to triage mail from
17  other Arizona prisons are out of the office, I often will triage mail from their assigned
18  prisons, and vice versa when I am out of the office.  Therefore, we have a uniform office
19  approach to triaging and managing correspondence.  Additionally, the ACLU National
20  Prison Project (ACLU-NPP), the ACLU of Arizona, and the Arizona Center for Disability
21  Law forward to the Prison Law Office all correspondence that they receive in *Parsons* that
22  implicates medical or dental care.  (We reciprocally forward all mail or intake the Prison
23  Law Office receives regarding mental health care and conditions in isolation units to the
24  ACLU-NPP.)

25        7.     It has been my observation in reading *Parsons* correspondence that many
26  letters we received from class members, family members, third parties, or forwarded by
27  co-counsel were about pain management, including the discontinuation of pain
28  medication, or the administration of medications inadequate to address class members'

chronic pain. In fact, the number of letters that we received about the topic was so noticeable that at my suggestion, our office created a form letter in March 2017 to send class members who wrote us about the issue, and I created an issue code in the Salesforce database about pain medication so we could more easily track the letters.

8. After the November 21, 2017 telephonic hearing where the issue of Plaintiffs' request for documents regarding the discontinuation of pain medications was discussed, I was asked to run reports in the Salesforce database to quantify and analyze the mail our office has received in *Parsons* since January 1, 2017 about pain management.

9. On December 6, 2017, I ran two reports in our Salesforce database to gather this information. First, I ran a report searching the database for all letters received in *Parsons* that had the words "pain med" in the Letter Summary field (the database field in which the litigation assistant or investigator summarizes the content of the letter), or that in response our office sent the form letter on pain medications. I then exported the report into Excel. Second, I ran a report searching the database for all letters received since January 1, 2017 in *Parsons* to get a baseline number.

10. There was a total of 1,975 letters logged under *Parsons* between January 1 and the morning of December 6, 2017. Of these letters, 253 (or 13% of all mail received in *Parsons* in that time frame) referenced pain management concerns. Of those 253 letters, 165 (or 65% of the pain medication letters, or 8% of all mail received in *Parsons*) mention pain medication discontinuation, including replacement of medications or failure to renew medications. Of the 165 letters, 27 of them make reference to a blanket discontinuation policy announced by ADC and/or Corizon.

11. I also analyzed the letters by prison. The 253 letters our office received regarding pain management issues came from eight of the 10 Arizona State Prison Complexes ("ASPC"), as follows:

    a. ASPC-Eyman:    54 letters
    b. ASPC-Florence:    85 letters
    c. ASPC-Lewis:    79 letters

|  |  |  |  |
|---|---|---|---|
| 1 | d. | ASPC-Perryville: | 5 letters |
| 2 | e. | ASPC-Phoenix: | 4 letters |
| 3 | f. | ASPC-Safford: | 4 letters |
| 4 | g. | ASPC-Tucson: | 17 letters |
| 5 | h. | ASPC-Yuma: | 5 letters |

12. I reviewed the Letter Summary field of the 253 letters. A brief sample of the information our office received regarding a possible system-wide or institution-wide pain medication discontinuation policy is generally described below (I did not include names or identifying details because in some cases we do not have explicit authorization to do so).

   a. One person reported that a Nurse Practitioner showed him a mass email that said that all prisoners were to be taken off Gabapentin and Tramadol.

   b. One class member sent in a grievance response regarding the abrupt discontinuation of pain medication that stated, "[t]he medication you are requesting is no longer being ordered complex wide."

   c. Another grievance response we received from a different class member said that "[t]he medica[tion] you are requesting is no longer being prescribed for long term pain management."

   d. A different class member reported on an informal grievance that his pain medications were discontinued and replaced with ineffective medications. The response to his informal grievance states that the medications he requests are no longer offered.

13. In my spreadsheet, I also de-duplicated any multiple entries from the same person so I could get a count of the number of people about whom we were contacted regarding pain management. I found 152 separate individuals who reported that they had problems related to pain management. I reviewed the Letter Summary field from the database to compile the following list of allegations that they reported to us. Again, they are not named, as in many cases as they did not authorize us to share their names or other identifying details.

   a. A class member who testified on July 14, 2017 regarding the provision of health care and the removal of HNR boxes, has a history of back injuries and had an untreated hernia. He wrote us in a letter dated August 7, 2017

-4-

    that his Tramadol had been cut in half without explanation. He filed a HNR regarding this abrupt change of his medication, and the Plan of Action in the HNR that was signed by a nurse states that "a mistake was made / scheduled with provider ASAP!" He subsequently contacted our office to report that he was offered Cymbalta instead to treat his chronic pain, a psychotropic medication that was not effective.

b. A class member who has Parkinson's disease reported his Gabapentin was abruptly discontinued without tapering. When this happened, all of his medications, including those for the management of his Parkinson's related tremors, were discontinued for eight days. He alleged that since his pain medications were discontinued, he had been restricted to a wheelchair.

c. A class member who has Multiple Sclerosis (MS) reported his Gabapentin was discontinued with no replacement. Corizon also reportedly reduced his prescription for the muscle relaxant Baclofen for back spasms from three times per day to once a day.

d. Another class member with MS reports he tried many medications to help manage chronic pain caused by the disease, and that none worked except for Gabapentin. However, his prescription was discontinued, and he has been in severe debilitating pain ever since then.

e. A man who suffers chronic neuropathy pain as a result of HIV wrote to report his prescriptions for Gabapentin and Tramadol were discontinued. He was prescribed an alternate medication; however, he reports that the medication does not adequately manage his nerve pain, and it causes his skin to feel like it is burning and itching such that he scratches himself in his sleep until he bleeds or wakes up.

f. A class member who received Gabapentin upon the recommendation of a vascular surgeon, due to the chronic pain he suffers after having veins stripped from his left leg due to blood clots, reported that his pain medication was cut off. In addition, he suffers chronic pain as a result of being stabbed 14 times.

g. A man who had been hit by a car that resulted in a coma state for six days, multiple broken bones, a fractured larynx, and other very serious injuries reported that Corizon's pain management plan consisted of ibuprofen.

h. Another man said he suffered a facial injury which resulted in what he believed was an orbital fracture, drainage, and loss of his senses of taste and smell. He described feeling air come through his eye socket when he drinks. Three weeks after his injury, he reported to us that he had only been seen by nurses and despite severe pain, had not received any pain medications.

i. A class member reported he underwent a complicated surgery that resulted in a bone graft. Despite the invasive nature of the surgery, he reported that Corizon denied any post-operative pain medications.

j. A relatively young man in ADC custody reported that he had metastatic cancer after numerous delays in diagnosis and treatment for testicular cancer. He said that after surgery to remove his cancerous testicle, he was not provided effective pain medications during the recovery from his

      surgery, and that he was even denied access to ice. Unfortunately his testicular cancer had spread to his lungs, kidneys, and lymph nodes and by the time he wrote us, he reported that he needed immediate cancer treatment, and he still was not prescribed adequate pain medications.

  k. A class member reported the discontinuation of his Gabapentin that he took to manage severe pain up and down his leg. Without the Gabapentin, he reported difficulty sleeping due to the pain ("I can't sleep until exhaustion sets in"), and stated that he wraps a shoelace around his leg to cut off circulation until his leg goes numb so he cannot feel the pain.

  l. Another man wrote and reported he has had seven lower back operations, metal brackets placed in his spine, osteoarthritis with tremors, fibromyalgia, and rheumatoid nodules in his hips, knees, and feet. As a result, he reports he is in constant pain; however, his pain medications were discontinued without replacement therapies.

  m. We were notified by a third party of a class member who reportedly experiences pain that originates in his neck and back and radiates down his arms. The third party told us that the man's pain had become so great, particularly in his right arm, that he had lost grip strength and could not perform basic activities of daily living, such as gripping a spoon to eat, without intense pain. As a result of his inability to properly feed himself due to weakness and pain, he allegedly had lost approximately 20 pounds.

  n. A class member with arthritis, degenerative disc disease, and shrinkage between his vertebrae, reports that he was given only ibuprofen to manage his pain.

  o. We were contacted by a class member this summer who fractured his ankle and had two spiral fractures of his fibula. Throughout this time, he reports that he was not provided prescription pain medications.

  p. One class member reported pain so severe that "I want them to give me a writ of execution, instead of living like this."

14. I also was asked to review the court docket in Parsons, to review filings or letters sent to the Court by plaintiff class members in 2017. I identified 35 public filings with the Court by class members (through December 6, 2017), and 27 of them related to the provision of health care in Arizona state prisons. Of the 27 health care-related entries from class members on the 2017 docket, thirteen (13, or 48% of all of the health care related docket entries) raise problems with pain management.[1] Some of the concerns regarding pain management that class members directly reported to the Court included:

---

[1] [*See* Docs. 2054, 2056, 2059, 2110, 2113, 2169, 2216, 2231, 2261, 2262, 2320, 2391, 2449]

a. On May 8, 2017, Doc. 2054, Julie Pavlich notified the Court that on March 19, 2017 she reported to the morning pill call line and discovered that she was not issued Tramadol. When she questioned the missing medication, she was told she had to wait for the order to be refilled by a provider. She indicates that she was not provided the medication for five days during which time she experienced withdrawal symptoms.[2]

b. On June 13, 2017, Doc. 2110, Michael Mendoza notified the Court that he was issued psychotropic medications to manage his chronic pain associated with degenerative disc disease and nerve damage. He states that the mental health medications were not effective at managing his pain and caused severe side effects. He stated "I personally started having mental psychotic and emotional thoughts. We are all in solitary confinement and administering us psychiatry medication for pain management only compounds our mental state and our emotional life here in solitary confinement." He reports that as of the date of his filing, he also had been without any pain medication for approximately 35 days. He explains "my issue [] went from bad to extreme, now I'm having numbing sensations on my toes on both feet . . . and both of my legs are now full of red blood spots."

c. On June 19, 2017, Doc. 2113, David Klein notified the Court that he has a history of back surgery for which was not receiving timely follow-up care. He reports that he is in "continuous, immeasurable pain and now is barely physically mobile due to defendants ignored care."

d. On July 11, 2017, Doc. 2169, Larry Prince notified the Court that he tried numerous pain management medications before he was prescribed Gabapentin and Tramadol in 2015. He reported that the treatment plan consisting of Gabapentin and Tramadol greatly improved his quality of life (he was able to ambulate and complete activities of daily living) and that other chronic health conditions also improved when his chronic pain was managed effectively. However, he reports that his treatment plan was discontinued in May 2017, without a taper and that he was later told by a provider that "we no longer have reviews for non-formulary medication." A provider also reportedly stated that a "Ducey order takes your meds." Mr. Prince "suffers in daily identified real pain with blinding headaches, stabbing and burning sensations in his upper spine and neck. The pain burns down into Plaintiff's arms and hands and eventually causes Plaintiff to simply lay on his bunk until he can gather his energy again." He also reports that some of his other chronic conditions, such as high blood pressure, have deteriorated since his pain management plan changed.

e. On July 27, 2017, Doc. 2216, Richard Richards notified the Court that he had untreated cancer. He also reports that he was recommended for a hip replacement and is in severe pain, that he is unable to sit, lie down, walk, or sleep without severe pain.

f. On August 7, 2017, Doc. 2231, Mr. Prince updated the Court with additional information including that after his first filing with the Court, he was seen by medical staff who restarted his gabapentin prescription;

---

[2] The class members' names are included, as they all filed these documents publicly using their names.

however the prescription lasted for only a few weeks before it was once again discontinued without taper. He was told it was discontinued because he needs surgery. He questions the validity of discontinuation pain medication when his condition is severe enough to require surgical intervention.

g. On August 29, 2017, Doc. 2262, Walter Jordan notified the Court of his impending death and said that he was terminally ill as a result of delayed cancer treatment. He reported that he was in severe pain from the cancer, and gave the names of additional people at Florence-East who are "denied treatment by Corizon . . . and all falling, yelling, screaming of pain."

h. On September 21, 2017, Doc. 2320, Julie Pavlich updated the Court that her Gabapentin prescription was discontinued without taper. She also reports that in six of the first seven months of 2017 she suffered lapses of up to 10 days in distribution of her medications because of delayed orders to refill the medications.

i. On October 19, 2017, Doc. 2391, Clayton Gatlin notified the Court that he has been made to try six different and ineffective pain management medications to treat his chronic pain. He reports that he was prescribed different medications that were effective and discontinued when Corizon took over the health care contract.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

-8-

I declare under penalty of perjury that the foregoing is true and correct.

Executed December 15, 2017, in Berkeley, California.

*[signature: Megan Lynch]*
Megan Lynch

**COUNSEL OF RECORD:**

**PRISON LAW OFFICE**
Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:  dspecter@prisonlaw.com
  ahardy@prisonlaw.com
  snorman@prisonlaw.com
  ckendrick@prisonlaw.com
  rlomio@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Victoria Lopez (Ill. 6275388)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:  dfathi@aclu.org
  afettig@aclu.org
  vlopez@aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, PLLC**
P. O. Box 91398
Tucson, Arizona 85752
Telephone: (520) 477-1475
Email:  kirstin@eidenbachlaw.com

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:   kbrody@acluaz.org

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:   dbarr@perkinscoie.com
         agerlicher@perkinscoie.com
         jhgray@perkinscoie.com

Caroline Mitchell (Cal. 143124)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email:   cnmitchell@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email:   jlwilkes@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email:   skader@azdisabilitylaw.org
         adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
   rdalyrooney@azdisabilitylaw.org
   jrico@azdisabilitylaw.org
   jross@azdisabilitylaw.org
   mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2017, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Kevin R. Hanger
Timothy M. Ray
Richard M. Valenti
Jamie D. Guzman
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
khanger@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com

*Attorneys for Defendants*

s/ D. Freouf

LEGAL137939670.1

-12-