Index of Exhibits to Declaration of Corene Kendrick

Exhibit 1   **FILED UNDER SEAL**
12/11/17 Letter from C. Kendrick to T. Bojanowski re: Retention of Monitoring Experts and Mistakes in September 2017 CGARs

Exhibit 2   12/14/17 Emails from A. Hesman and D. Struck to C. Kendrick re: Retention of Monitoring Experts and Mistakes in September 2017 CGARs

Exhibit 3   11/27/17 Letter from D. Fathi to A. Hesman re: PM 95 and re-audits of July 2017 CGARs

Exhibit 4   **FILED UNDER SEAL**
12/14/17 Letter from C. Kendrick to T. Bojanowski re: Document Production and Failure to Properly Reissue July 2017 CGARs

Exhibit 5   **FILED UNDER SEAL**
11/13/17 Letter from D. Fathi to T. Bojanowski re: Mistakes in August 2017 CGARs

Exhibit 6   **FILED UNDER SEAL**
11/27/17 Letter from A. Hesman to D. Fathi re: August 2017 CGARs

Exhibit 7   **FILED UNDER SEAL**
7/27/17 Letter from A. Hardy to L. Rand re: Class Member in Need of Medical Care

Exhibit 8   **FILED UNDER SEAL**
8/7/17 Letter from A. Hardy to L. Rand re: Class Member in Need of Medical Care

Exhibit 9   **FILED UNDER SEAL**
12/5/17 Letter from C. Kendrick to L. Rand re: Class Member in Need of Medical Care

Exhibit 10  **FILED UNDER SEAL**
12/5/17 Letter from C. Kendrick to L. Rand re: Class Member in Need of Medical Care

Exhibit 11  **FILED UNDER SEAL**
11/15/17 Letter from K. Eidenbach to T. Bojanowski re: Plaintiffs' tour of ASPC-Tucson on November 29-December 1, 2017

Exhibit 12   11/27/17 Emails from C. Kendrick to T. Bojanowski re: production of
             documents for Plaintiffs' tour of ASPC-Tucson

Exhibit 13   11/29/17 Letter from R. Valenti to C. Kendrick re: Tucson tour documents

Exhibit 14   12/6/17 Letter from K. Eidenbach to T. Bojanowski re: filing schedule for Joint
             Motion for Clarification

Exhibit 15   Defendants' September 2017 Staffing Report (ADCM1036881-1036891)

Exhibit 16   Defendants' October 2017 Staffing Report (Produced as Excel spreadsheet, not
             Bates-stamped)

# EXHIBIT 1

# FILED UNDER SEAL



**PRISON LAW OFFICE**
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

December 11, 2017

Mr. Timothy Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com

Re:   *Parsons v. Ryan*
      Mistakes in September 2017 CGAR reports

Dear Tim:

We write regarding multiple issues regarding the September 2017 CGAR reports, which were produced by Defendants on November 27, 2017.  We conducted spot checks of the CGARs for several performance measures and institutions and discovered multiple mistakes in the monitoring that call into question the accuracy of the reports, and the causes of these mistakes. We emphasize that we did not check all institutions or all performance measures, but this spot-check review uncovered serious problems.  Most of these mistakes resulted in overinflated compliance numbers that were higher than what they actually should have been, and while in some cases the correct calculation resulted in a higher number, it was still noncompliant.  See PM 52 for Tucson (47% to 67%) and Eyman (24% for both).  While in several cases, the corrected calculations are still above the compliance threshold, they still show the failure to properly monitor the measures.

In light of our past correspondence regarding mistakes in monitoring, we are concerned that the systemic problems with Defendants' monitoring continue unabated despite assurances of increased training and improvements.  *See, e.g.*, 10/4/17 Ltr. from D. Fathi to T. Bojanowski [Doc. 2368-1 at 3-13]; 10/24/17 Ltr. from C. Kendrick to A. Fletcher [Doc. 2426-1 at 10-15 11/13/17 Ltr. from D. Fathi to T. Bojanowski.  **We ask that Defendants correct the compliance figures for these CGARs, and reissue them in a timely manner**.

We also plan to raise this issue at the December 20, 2017 status hearing and **we request that Defendants agree to utilize the services of an independent, professionally trained auditing group to perform the audits.  We also request that both you and your client be prepared to discuss at the hearing these chronic systemic problems, and all possible alternative approaches to monitoring**.  It is abundantly clear that the current system is not

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

Mr. Timothy Bojanowski
RE: Errors in September 2017 CGARs
December 11, 2017
Page 2

working and Defendants are not properly monitoring compliance with the Stipulation.  *See, e.g.*
Docs. 2046, 2087; *see also* Docs. 2160, 2212, 2338; 2469, 2471.


**PM 44 (Inmates returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital shall have the hospital's treatment recommendations reviewed and acted upon by a medical provider within 24 hours.)**

We conducted a check of the September 2017 CGARs for this PM at Eyman, Lewis, and Tucson, and found multiple errors with the monitoring methodology. As described in Mr. Fathi's October 4, 2017 letter with regard to PM 44 at other institutions, we found records that were counted as compliant when there was no documentation that the provider took action upon reviewing the hospital recommendations, or where the provider did not document why she or he was not taking action on all of the hospital's discharge recommendations.[1]

*Eyman*

The Court found Defendants substantially noncompliant with PM 44 at Eyman on April 24, 2017. [Doc. 2030]  This performance measure and institution is also part of the Court's Order to Show Cause regarding contempt, issued on October 10, 2017. [Doc. 2373 at 3]  The Court has ordered Defendants to record every instance of noncompliance with this PM for the months of December 2017 and January 2018, and report the results to Plaintiffs and the Court no later than February 26, 2018. [Doc. 2456 at 1]

The September CGARs reported that 8 out of 8 (100%) files reviewed were compliant. ADCM1041525.  As an initial matter, we are concerned by the low number of files reviewed, given the size of the institution.  The Monitoring Guide states that the source document for this PM is the "ADC Hospital Admission/Discharge/ER Log."  **We request a copy of the September 2017 Hospital Admission/Discharge/ER Log for Eyman, as well as any other source documents used by the monitor**.

Furthermore, based upon our review of the medical records of the eight class members, we found that only **4 out of 8 (50%) of the files were compliant**. The following files marked as compliant were actually noncompliant, as detailed below:

1.  ████████  This patient returned from the hospital on 9/11/17 after being sent out for chest pains. The RN who saw him upon his return wrote "On call provider, no follow up

---

[1] On December 14, 2016 the Court ruled that PM 44 "shall only permit compliance if the inmate received the prescribed treatment, or if there is a documented reason explaining why the prescribed treatment was rejected."  Doc. 1831 at 2.

recommendations." However, the hospital discharge report included a recommendation that the patient be seen by cardiologist Dr. Laufer within 5-7 days.  No cardiology consult request was made by the provider, and there is no documentation as to why the provider did not take the action recommended by the hospital.

2. ▮▮▮▮▮▮  This patient returned from the hospital on 9/21/17 after being sent out for toxic encephalopathy and elevated ammonia levels.  The nurse notified the on-call provider who authorized the prescription of certain medications, but did not authorize the prescription of all of the medications ordered by the hospital's medical doctor.  The Corizon provider authorized the prescription of an antibiotic different from that ordered by the hospital, without explanation.  The hospital discharge report also recommended that the patient be seen by nephrology and hepatology specialists.  The Corizon nurse practitioner did not see this patient until 9/23/17, 48 hours after his return, and noted that there needed to be a "Walgreen's run" to start the antibiotic, and she did not document why a different antibiotic was being used.  The provider also wrote that the patient "may need" a nephrology consult as this was his second hospitalization for kidney failure resulting in altered mental state, but there is no indication that specialty requests for nephrology or hepatology were submitted, or why the provider did not request the consults. (The provider had submitted a nephrology request a month earlier on 8/25/17 but Utilization Management denied the request on 9/1/17, stating that it was not medically necessary; the patient was hospitalized subsequent to that denial.)

3. ▮▮▮▮▮▮  This patient returned from the hospital on 9/20/17 to rule out an internal hemorrhage after injuring himself during a seizure.  The hospital's recommendation was that the patient see the on-site provider in the next 1-2 days to change his Keppra dosage.  A provider appointment was scheduled for the next day, 9/21/17, but did not occur.  He finally saw the nurse practitioner on 9/30/17, where she noted the recent hospitalization and injuries, but there is no indication of an evaluation to change the dosage, nor was the prescription changed at that time.

4. ▮▮▮▮▮▮  This patient returned from the hospital on 9/27/17 after treatment for a self-inflicted mutilation and resultant infection of a surgical wound.  The hospital recommendations included follow-up with the surgeon within 1-2 weeks and prescription antibiotics.  The provider reviewed the recommendations but without explanation prescribed a different antibiotic than that recommended by the hospital, and took no action with regard to requesting a referral to see the surgeon. There is no indication in the record that a request for follow up with the surgeon was submitted.


### *Lewis*

The Court found Defendants substantially noncompliant with PM 44 at Lewis on April 24, 2017. [Doc. 2030]  The September CGAR reports that 13 out of 13 (100%) records reviewed were compliant.  ADCM104162. However, based upon our review it appears that **11 out of 13**

**(85%) of the files were compliant**.  The following files that were noted as compliant by the monitor appear to be noncompliant:

1. ▮▮▮▮ The patient returned from the hospital on 9/18/17 for a gastrointestinal bleed. According to the discharge report, the hospital ordered prescription pantoprazole (Protonix) but the provider did not order this recommended treatment nor document the failure to act upon the recommendation.

2. ▮▮▮▮ This patient returned from the hospital on 9/6/17 after experiencing chest pains, shortness of breath, and irregular heartbeats on an EKG.  The hospital discharge report recommended an increase in the prescribed beta blocker and stated that he needed to return to the hospital see the cardiologist within 5-7 days. The provider authorized an increase in the dosage but did not take action to request a cardiology consult until 9/14/17, only after he suffered a second cardiac event (the patient saw the cardiologist on 10/16/17).

*Tucson*

The September CGAR reported that 22 of 23 files (or 96%) compliant.  ADCM1041802. However, **based upon our review it appears that 17 of 22 files (or 77%) are compliant**.

The following file identified by the monitor as compliant was not applicable to the performance measure:

1. ▮▮▮▮ The patient returned from a nephrology appointment on 9/28/17. This was not a return from a hospitalization or ER transport and was inapplicable to the relevant performance measure.

The following five files identified by the monitor in the CGAR as compliant appear to be noncompliant:

1. ▮▮▮▮ The patient returned from the ER on 9/30/17 for altered consciousness.  The nurse reviewed the discharge report but there is not documentation that the provider was told of the results.  The provider did not see the patient or review the report until 10/3/17.

2. ▮▮▮▮ This patient returned from the hospital on 9/8/17 after surgical repair of duodenal ulcer perforation, and H.Pylori infection.  The hospital discharge report recommended return follow up with the surgeon within 2-3 weeks for post-op review, and six prescription medications.  The nurse called the nurse practitioner Easley for his review but no orders were made by the provider at that time, and there is no explanation or documentation as to why he took no action on the hospital report.  The patient saw a provider on 9/11/17 for follow up on the hospitalization, and the provider

prescribed the medications, but the provider took no action to request a specialist consult with the surgeon.  (The consult was finally requested on 10/18/17, and he saw the surgeon for post-op reviewed on 11/21/17).

3. ███████  This patient returned from the hospital on 9/11/17 after open-heart surgery to replace his aortic valve.  The hospital discharge report ordered that the patient return to see the cardiologist within one week for post-op follow up.  The nurse on duty at the prison documented a verbal review of the report with the provider, but the provider took no action to request a specialist consult with the cardiologist, and as of 12/8/17, no cardiology consult request is in his file.

4. ███████  This patient returned from the hospital on 9/15/17 after surgery to remove a large tissue mass that infected his chest wall, resulting in osteomyelitis in 7-9 ribs.  The hospital discharge report ordered multiple medications, including gabapentin for pain and intravenous antibiotics to treat the continuing infection; and recommended follow up within two weeks with the cardiothoracic surgeon, the infectious disease specialist for special antibiotic therapy, and with a gastroenterologist.  The Corizon nurse documented reviewing the report with the on-call provider, who ordered the patient be admitted to the infirmary.  The provider on call authorized the prescription of the antibiotics and gabapentin (Utilization Management denied the gabapentin and suggested the anti-depressant Elavil instead); but took no action to request authorization for the three specialty consults.  There is no explanation as to the failure to initiate these follow-ups. An urgent request to Utilization Management for him to see the cardiothoracic surgeon ultimately was submitted on 9/25/17, and he saw the surgeon on 10/17/17. As of 12/8/17, no request has been submitted for him to see infectious disease for follow up to the osteomyelitis, or to see a gastroenterologist.

5. ███████  This patient returned from the hospital on 9/21/17 after an appendectomy.  The hospital orders recommended post-op follow up with the surgeon within 2 weeks, and 325 mg. of Percocet for surgical pain for four days.  The nurse who saw him upon his return called the provider to relay the hospital's instructions. The provider ordered he be given ibuprofen, and there is no record of any request being submitted for him to see the surgeon, and again, no documentation as to why no action was taken.

**PM 48 (Documentation, including the reason(s) for the denial, of Utilization Management denials of requests for specialty services will be sent to the requesting Provider in writing within fourteen calendar days, and placed in the patient's medical record.)**

Plaintiffs' counsel spot-checked three institutions for Defendants' monitoring of PM 48. There were two systemic problems with the monitoring that inflated Defendants' compliance rates.

First, monitors repeatedly included in their samples the specialty care denials (which are not called denials but instead referred to by Corizon as "Alternate Treatment Plans," or "ATPs") that occurred in months other than September. The parties have agreed that "within fourteen calendar days" refers from the date of the request for specialty care is submitted by the requesting Provider.  [See Doc. 1626-1 at 39, 47-48, 52]  If the file did not involve an ATP due in September, it should not have been counted, and instead a different applicable file should have been reviewed.   Second, monitors listed individual prisoners multiple times by parsing out each individual denial.

### *Eyman*

The September 2017 CGAR reported a compliance rate of 40/41 (or 98%) with PM 48. ADCM1041526.  However, after excluding the inapplicable entries relating to denials/ATPs that were **due** in months OTHER than September 2017, and the duplicative entries, the **actual compliance rate appears to be 9 out of 10 applicable files, or 90%.**

The following 30 entries marked as compliant actually were not applicable for the month of September 2017, and should not have been included in the CGAR review because the denial/ATP was due to occur in a month other than September 2017 (in one case, the same prisoner was counted more than once):

1. ███████ hematology/oncology req'd 7/26, denied 8/3
2. ███████ radiology req'd 7/23, denied 8/2
3. ███████ no ATP/denial in medical record
4. ███████ general surgery req'd 7/16, denied 8/29 (had it been reviewed for July CGARs when it was due, it would have been noncompliant)
5. ███████ orthopedics req'd 7/19, denied 9/8 (had it been reviewed for August CGARs when it was due, it would have been noncompliant)
6. ███████ MRI/ultrasound/CT req'd 7/5, denied 8/14 (had it been reviewed for July CGARs when it was due, it would have been noncompliant)
7. ███████ MRI/ultrasound/CT req'd 8/3, denied 8/14
8. ███████ physical therapy req'd 7/26, denied 8/29 (had it been reviewed for August CGARs when it was due, it would have been noncompliant)
9. ███████ radiology req'd 7/24, denied 9/1 (had it been reviewed for August CGARs when it was due, it would have been noncompliant)
10. ███████ **this prisoner was listed twice (See Attachment A).**  Neither request was applicable to September:
    a. Radiation oncology req'd 8/4, denied 8/18
    b. Hematology req'd 8/4, denied 8/18
11. ███████ radiology req'd 7/26, denied 8/29 (had it been reviewed for August CGARs when it was due, it would have been noncompliant)

Mr. Timothy Bojanowski
RE: Errors in September 2017 CGARs
December 11, 2017
Page 7

12. ███████ orthopedics req'd 7/14, denied 8/10
13. ███████ orthotics req'd 7/13, denied 8/29 (had it been reviewed for July CGARs when it was due, it would have been noncompliant)
14. ███████ gastroenterology req'd 7/17, denied 8/29 (had it been reviewed for July CGARs when it was due, it would have been noncompliant)
15. ███████ cardiology req'd 8/8, denied 8/15
16. ███████ cardiology req'd 7/24, denied 8/4
17. ███████ radiology req'd 7/18, denied 8/26 (had it been reviewed for August CGARs when it was due, it would have been noncompliant)
18. ███████ radiology req'd 8/7, denied 8/26 (had it been reviewed for August CGARs when it was due, it would have been noncompliant)
19. ███████ cardiovascular surgery req'd 7/27, denied 8/29 (had it been reviewed for August CGARs when it was due, it would have been noncompliant)
20. ███████ dermatology req'd 7/31, denied 8/11
21. ███████ radiology req'd 7/31, denied 8/11
22. ███████ radiology req'd 7/18, denied 8/11 (had it been reviewed for August CGARs when it was due, it would have been noncompliant)
23. ███████ dermatology req'd 7/28, denied 8/10
24. ███████ radiology req'd 7/24, denied 8/2
25. ███████ pain clinic req'd 7/12, denied 8/26 (had it been reviewed for July CGARs when it was due, it would have been noncompliant)
26. ███████ urology req'd 8/14, denied 8/16
27. ███████ hand surgery req'd 7/26, denied 8/26 (had it been reviewed for August CGARs when it was due, it would have been noncompliant)
28. ███████ radiology req'd 8/8, denied 8/15
29. ███████ radiology req'd 8/3, denied 8/8

The following file was listed in the CGAR as noncompliant, but it was not applicable because the denial/ATP was due in August. **See highlighted entry in Attachment A**.
1. ███████ echo req'd 7/24, denied 8/4 (but not placed in record)

The following file was listed as compliant when it should have been marked as noncompliant, because the denial and its entry in the record was more than 14 days from the date of the provider's request for specialty care:
1. ███████ radiology req'd 9/2, denied 9/21 (denial due no later than 9/16/17)

### *Lewis*

The September 2017 CGAR reported a compliance rate of 45/45 (or 100%) with PM 48. ADCM1041631.  However, after excluding the inapplicable entries relating to denials/ATPs that

were **due** in months OTHER than September 2017, and the duplicative entries, the **actual compliance rate appears to be 19 out of 20 applicable files, or 95%.**

The following 25 entries marked as compliant actually were not applicable for the month of September 2017, and should not have been included in the CGAR review because the denial/ATP was due to occur in a month other than September 2017, and/or because the same prisoner was counted multiple times (see **Attachment A** for highlighted entries):

1. ███ urology req'd 8/2, denied 8/9
2. ███ cardiovascular surgery req'd 8/16, denied 8/23
3. ███ infectious disease req'd 8/6, denied 8/15
4. ███ ophthalmology req'd 8/15, denied 8/22
5. ███ ophthalmology req'd 8/1, denied 8/16 (had it been reviewed for August CGARs when it was due, it would have been noncompliant)
6. ███ ENT req'd 8/7, denied 8/11
7. ███ **He was listed separately three times as compliant**, but only one of the consults involved a request where the denial/ATP had to be documented in the month of September 2017: hand surgery req'd 8/18, denied 8/23 (denial due no later than 9/2). These two consults were not applicable for September:
   a. Hand surgery req'd 7/28, denied 8/10
   b. Physical therapy consult req'd 7/20, denied 7/26
8. ███ orthopedics req'd 8/7, denied 8/17
9. ███ general surgery req'd 8/17, denied 8/28
10. ███ orthotics req'd 8/4, denied 8/9
11. ███ orthopedics req'd 8/9, denied 8/25 (had it been reviewed for August CGARs when it was due, it would have been noncompliant)
12. ███ general surgery req'd 8/5, denied 8/9
13. ███ hand surgery req'd 7/29, denied 8/3
14. ███ MRI/ultrasound/CT req'd 8/15, denied 8/22
15. ███ endocrinology req'd 8/14, denied 8/18
16. ███ cardiology req'd 7/20, denied 7/28
17. ███ no ATP/denial located in record
18. ███ He is listed twice in the CGAR (see Attachment A). Neither specialty request was applicable for review for September 2017:
   a. Physical therapy consult req'd 8/9, denied 8/15
   b. MRI/ultrasound/CT scan req'd 7/24, denied 8/2
19. ███ oral surgery req'd 8/16, denied 9/5 (ATP/denial due no later than 8/30, was noncompliant if it had been reviewed for August CGARs)
20. ███ cardiology req'd 8/7, denied 8/9
21. ███ oral surgery req'd 8/9, denied 8/14
22. ███ orthopedics req'd 8/4, denied 8/9

23. ███████ dermatology req'd 8/17, denied 8/29

*Tucson*

Plaintiffs sent a Notice of Noncompliance with regard to this performance measure at Tucson on August 28, 2017.  The parties mediated on November 28, 2017 regarding Defendants' substantial noncompliance with this measure.

The September 2017 CGAR reported a compliance rate of 40 out of 43 (93%).  ADCM1041802.  However, after excluding the inapplicable entries relating to denials/ATPs that were due in months other than September 2017, and/or the duplicative entries, the **actual compliance rate appears to be 13 out of 17 (76%)**.

The following 26 entries marked as compliant actually were not applicable, and should not have been included in the CGAR review because the denial/ATP was due to occur in a month other than September 2017 (in some cases, the same prisoner was counted more than once, see Attachment A for highlighted duplicate entries):

1. ███████ this patient was also counted twice, and both entries were inapplicable for the month of September:
    a. Nephrology req'd 7/3, denied 9/1 (had it been reviewed for July CGARs when it was due, it would have been noncompliant)
    b. Hematology/oncology req'd 7/28, denied 8/7
2. ███████ this patient was counted twice, and both of the entries were inapplicable for the month of September:
    a. Cardiology req'd 8/3, denied 8/29 (had it been reviewed in August when it was due, it would have been noncompliant)
    b. Cardiovascular surgery req'd 8/11, denied 8/29 (had it been reviewed in August when it was due, it would have been noncompliant)
3. ███████ physical therapy req'd 8/15, denied 8/25
4. ███████ radiology req'd 8/14, denied 8/25
5. ███████ orthotics req'd 8/3, denied 8/8
6. ███████ oral surgery req'd 8/10, denied 8/17
7. ███████ ophthalmology req'd 7/24, denied 7/26
8. ███████ this patient was counted twice, but both of these entries were inapplicable for the month of September
    a. MRI/ultrasound/CT scan req'd 7/7, denied 8/7 (had it been reviewed in July when it was due, it would have been noncompliant)
    b. MRI/ultrasound/CT scan req'd 7/11, denied 8/7 (had it been reviewed in July when it was due, it would have been noncompliant)

9. ██████ ENT req'd 8/3, denied 8/10
10. ██████ cardiology req'd 7/14, denied 8/7 (had it been reviewed in July when it was due, it would have been noncompliant)
11. ██████ this patient was counted twice, but both of these entries were inapplicable for the month of September:
   a. Gastroenterology req'd 7/17, denied 8/8 (had it been reviewed in July when it was due, it would have been noncompliant)
   b. Infectious diseased req'd 7/17, denied 8/8 (had it been reviewed in July when it was due, it would have been noncompliant)
12. ██████ MRI/ultrasound/CT scan req'd 7/25, denied 8/15 (had it been reviewed in August when it was due, it would have been noncompliant)
13. ██████ ophthalmology req'd 8/2, denied 8/7
14. ██████ gastroenterology req'd 8/3, denied 8/22 (had it been reviewed in August when it was due, it would have been noncompliant)
15. ██████ infectious diseased req'd 7/25, denied 8/2
16. ██████ radiology req'd 7/27, denied 8/10
17. ██████ oncology/hematology req'd 8/17, denied 8/23
18. ██████ cardiology req'd 7/12, denied 8/4 (had it been reviewed in July when it was due, it would have been noncompliant)
19. ██████ cardiology req'd 8/7, denied 8/10
20. ██████ MRI/ultrasound/CT req'd 7/14, denied 8/10 (had it been reviewed in July when it was due, it would have been noncompliant)
21. ██████ oral surgery req'd 8/17, denied 8/23
22. ██████ hematology/oncology req'd 7/25, denied 8/10 (had it been reviewed in August when it was due, it would have been noncompliant)

The following file was listed as compliant when it should have been marked as noncompliant, because the denial and its entry in the record was more than 14 days from the date of the provider's request for specialty care:

1. ██████ Orthotics requested 8/21, denial on 9/13 (due no later than 9/4/17)


**PM 52 (Specialty consultation reports will be reviewed and acted on by a Provider within seven calendar days of receiving the report.)**

The biggest problem we identified with the monitoring of this measure at three different institutions was that multiple entries marked as compliant were actually not applicable, because they involved specialty reports that were received and reviewed in months other than September 2017, should not have been included in the sample, and other applicable files should have been used instead. We also identified records the monitor had listed as compliant but where the provider did not document the action taken (or not taken), and in some cases, people that were

counted multiple separate times.  Specifically, we identified the following problems, as detailed below.

***Eyman***

The Court found Defendants substantially noncompliant with this PM on October 11, 2017.  Doc. 2403.  The September CGAR reported 11 out of 46 (24%) of records compliant. ADCM1041528-29.  However, we discovered that 12 of the class members included by the monitor involved specialty reports that reviewed in months other than September 2017, and should not have been included in the sample, and other applicable files should have been used instead.  Our review found that the actual compliance rate with applicable files was **8 out of 34 applicable records, or 24%**.[2]

The following three (3) files were marked as compliant but were not applicable and should not have been reviewed because the review of the report was not in September 2017:
1. ██████ report rec'd 8/17, reviewed 8/17
2. ██████ report rec'd 8/10, reviewed 8/11
3. █████ report rec'd 8/22, reviewed 8/21

The following nine (9) files were marked as noncompliant but should have been not applicable (See **Attachment B** for highlighted entries):
1. ██████ report rec'd 8/22, reviewed 8/26, no action taken – not applicable to September (would have been non-compliant if reviewed in August CGAR)
2. ██████ report rec'd 7/14, reviewed 7/14, no action taken – not applicable to September (would have been non-compliant if reviewed in July CGAR)
3. ███████ report rec'd 10/1, no review as of 10/15 – not applicable to September (would have been non-compliant if reviewed in October CGAR)
4. ██████ report rec'd 8/10, reviewed 8/21 – not applicable to September (would have been non-compliant if reviewed in August CGAR)
5. ██████ report rec'd 8/22, reviewed 8/26, no action taken – not applicable to September (would have been non-compliant if reviewed in August CGAR)
6. ██████ report rec'd 7/18, reviewed 7/29 – not applicable to September (would have been non-compliant if reviewed in July CGAR)
7. █████ report rec'd 8/3, reviewed 8/26, no action taken – not applicable to September (would have been non-compliant if reviewed in August CGAR)
8. ██████ report rec'd 7/18, reviewed 7/29 – not applicable to September (would have been non-compliant if reviewed in July CGAR)

_____

[2] We were unable to review all the records marked as compliant for this PM as Eyman, as the monitor listed that Browning Unit as having 3 out 8 files compliant, but only listed two compliant records. See Attachment B (highlighted)

9.  ████ report rec'd 8/19, reviewed 8/26, no action taken – not applicable to September (would have been non-compliant if reviewed in August CGAR)

### Lewis

According to the September 2017 CGAR, Lewis was listed as having 64 compliant out of 71 files reviewed (90%). ADCM 1041633-34.  However, we found that more than half of the files reviewed by the monitor involved specialty reports reviewed in months other than September and should not have been included in the sample, and other applicable files should have been used instead.  There also were class members listed multiple times. Our review found that the actual compliance rate with applicable files was **26 out of 31 (84%) applicable files**.

These class members were listed more than once in the CGAR, and the monitor should have excluded the multiple entries for the same person.  See Attachment B.

1.  ████ – (Listed and counted TWO separate times in CGAR). Ortho report rec'd 9/6, reviewed 9/12, action taken; Ortho report rec'd 9/20, reviewed 9/26, action taken.
2.  ████ – (Listed and counted FOUR separate times in CGAR). Radiation treatment daily reports reviewed on 9/6, 9/11, 9/12, 9/13, 9/14, 9/18, 9/19, 9/24, 9/29; Oncology report rec'd 9/25, reviewed 9/27, action taken 9/28
3.  ████ – (Listed and counted TWO separate times in CGAR): hand surgery note rec'd 9/8, reviewed 9/12, action taken; report rec'd 9/27, reviewed 9/29, action taken
4.  ████ – (Listed and counted TWO separate times in CGAR): hand surgery note rec'd 9/6, reviewed 9/12, no action needed; report rec'd 9/14, reviewed 9/19, action taken

There were five (5) files that the monitor marked as compliant, but they are not compliant:

1.  ████ – (Listed and counted TWO separate times in CGAR – once as compliant and once as noncompliant but only one relevant consult report was reviewed in the month of September, and it was noncompliant):  surgery post-op report rec'd 8/28, reviewed 9/6 (9 days).
2.  ████ – ortho report rec'd 9/13, reviewed 9/19. Plan of action: enter hand surgery consult when dictated copy is available. No indication this follow up consult request was made.
3.  ████ – GI report rec'd 9/8, reviewed 9/15. Plan: check medication, no indication this was done.
4.  ████ – two radiology reports: rec'd 9/13, reviewed 9/15, no action taken b/c pending follow up appointment; rec'd 9/18, reviewed 9/21, no action taken b/c pending consult, but the consult request for follow up was not submitted until 10/19/17
5.  ████ – podiatry report rec'd 8/29, reviewed 9/6, action taken (8 days)

Mr. Timothy Bojanowski
RE: Errors in September 2017 CGARs
December 11, 2017
Page 13

There were 25 medical records marked as compliant, but they should not have been considered or scored because our review found no specialty report reviewed in the month of September, and instead had reports reviewed in July or August 2017:

1. ███ – orthotics report rec'd 8/10, reviewed 8/11
2. ███ – PT report rec'd 8/10, reviewed 8/11
3. ███ – PT reports rec'd 8/14 and 8/16, reviewed 8/19, report rec'd 8/23, rev'd 8/26
4. ███ – radiology report rec'd 8/1, reviewed 8/1
5. ███ – biopsy report rec'd 8/14, reviewed 8/15
6. ███ – radiology report rec'd 8/7, reviewed 8/9
7. ███ – hand surgery report rec'd 8/9, reviewed 8/9
8. ███ – ultrasound report rec'd 8/10, reviewed 8/14
9. ███ – ultrasound report rec'd 8/10, reviewed 8/15
10. ███ – urology report rec'd 8/23, reviewed 8/27
11. ███ – optometry report rec'd 8/16, reviewed 8/16
12. ███ – pain clinic report rec'd 8/23, reviewed 8/25
13. ███ – hand surgery report rec'd 8/9, reviewed 8/10
14. ███ – neurology report rec'd 8/14, reviewed 8/14
15. ███ – ophthalmology report rec'd 8/10, reviewed 8/17
16. ███ – orthopedics report rec'd 8/14, reviewed 8/18
17. ███ – orthotics report rec'd 8/14, reviewed 8/18
18. ███ – oncology report rec'd 8/16, reviewed 8/22
19. ███ – radiology report rec'd 8/17, reviewed 8/20
20. ███ – hand surgery report rec'd 8/15, reviewed 8/22
21. ███ – general surgery – three reports received and reviewed in August
22. ███ – plastic surgery – report rec'd 8/23, reviewed 8/30
23. ███ – cardiology – note rec'd 8/3, reviewed 8/6; report rec'd 8/14, reviewed 8/15
24. ███ – CT scan report rec'd 8/16, reviewed 8/21
25. ███ – multiple GI reports, all received and reviewed in August

Six of the medical records that were marked as noncompliant, were not applicable (the determination that the records were noncompliant is correct, but they involved reviews done in July or August 2017).  See Attachment B.

1. ███ – cystoscopy report rec'd 8/23, reviewed 8/31
2. ███ – retinal results rec'd 7/20, reviewed 7/31
3. ███ – MRI results rec'd 8/7, reviewed 8/16
4. ███ – general surgery rec'd 7/27, reviewed 8/5
5. ███ – PT report rec'd 8/9, reviewed 8/17
6. ███ – GI report rec'd 8/21, reviewed 8/29

///
///

Mr. Timothy Bojanowski
RE: Errors in September 2017 CGARs
December 11, 2017
Page 14

*Tucson*

The Court found Defendants substantially noncompliant with this PM on April 24, 2017. *See* Doc. 2030. The September CGAR reported 28 of 60 (47%) of records compliant. ADCM1041806-07. However, we discovered that almost half of the files reviewed by the monitor involved specialty reports that were received and reviewed in months other than September 2017, and should not have been included in the sample, and other applicable files should have been used instead. Our review found that the actual compliance rate with applicable files was **22 out of 33 records, or 67%.**

The following six (6) records were listed as compliant but are in fact noncompliant for September.

1. ███████ retinal specialist report rec'd 8/25, recommendation of return to clinic in two weeks. Provider reviewed 8/25 (within 7 days, review due 9/1), but no action taken to request return to retinal specialist. In fact, urgent request for follow-up submitted 10/24 with note that patient did not have two week follow up post-op.

2. ███████ ophthalmology report rec'd 8/24, recommendation of return to specialist within two months. Provider reviewed 8/25 (within 7 days, review due 9/1) but no action taken to request return to ophthalmology. In fact, routine request for follow-up submitted 11/24 with a note that the "follow up post op appointment which was not scheduled"

3. ███████ general surgery report rec'd 9/21, with order that he was scheduled for repair of large inguinal hernia. On 9/22/17, the NP reviewed the report and wrote "sched. for surgery" but did not submit a consult request to Utilization Management for the recommended surgery.

4. ███████ oral surgeon report rec'd 9/11, with prescription medications and recommendation for follow up with prison dentist within 7-10 days. On 10/4/17 the dentist wrote, "Read the report. No followed [sic] up needed."

5. ███████ radiology ultrasound report of head/neck for thyroid cancer received on 8/30/17 with recommendations for additional follow-up imaging. (This ultrasound was done on 8/14/17, in violation of PM 50, as the "emergent" urgent request for the procedure was submitted to Utilizaiton Management on 4/18/17). The provider took no action and did not submit another radiology consult request for the follow-up imaging until 9/11/17.

6. ███████ urgent hematology/oncology report rec'd 8/25 (according to the fax cover sheet) but not scanned to eOMIS until 9/1. The report had numerous recommendations related to the plan of treatment for aggressive squamous cell carcinoma of the tongue. On 9/4/17, the provider appeared to review this report, but under "Action Taken" it states, "None."

Mr. Timothy Bojanowski
RE: Errors in September 2017 CGARs
December 11, 2017
Page 15

    There were 23 entries marked as compliant, but they should not have been considered or scored because our review found no specialty report reviewed in the month of September 2017, and instead it appears the monitor counted reports that were received and reviewed in prior months, some as old as March 2017:

1. ████ – pathology report rec'd 8/23, reviewed 8/30, no action taken (would have been noncompliant if reviewed for August 2017 CGAR)
2. ████ – last specialty report in his file was received on 4/3/17.
3. ████ – **He was listed twice as compliant, see Attachment B.**  His last specialty report in his file was received on 5/22/17.  It appears that the monitor may have reviewed a TEE/echocardiogram report received in September **2016**.
4. ████ – last specialty report in his file rec'd 4/19/17
5. ████ – last specialty report in his file rec'd 3/20/17
6. ████ – last specialty report in his file rec'd 4/27
7. ████ – last report rec'd 8/3, reviewed 8/4
8. ████ – last report rec'd 7/10, reviewed 7/14
9. ████ – last specialty report rec'd 4/28/17
10. ████ – last report rec'd & reviewed 7/28
11. ████ – last report rec'd & reviewed 7/28
12. ████ – report rec'd 8/23, reviewed 8/29
13. ████ – last report rec'd & reviewed 8/16
14. ████ – last report rec'd & reviewed 8/9
15. ████ – last report rec'd & reviewed 7/10
16. ████ – last report rec'd & reviewed 7/28
17. ████ – last report rec'd & reviewed 7/28
18. ████ – last report rec'd & reviewed 7/26
19. ████ – last report rec'd & reviewed 8/7
20. ████ – last report rec'd & reviewed 7/28
21. ████ – last report rec'd & reviewed 8/21
22. ████ – report rec'd 8/15, reviewed 8/16

    The following four files were listed as noncompliant, but they actually are not applicable to September 2017 because they involved reports received/reviewed in prior months.  (See Attachment B)

1. ████ – urology rec'd 8/9, reviewed 8/20
2. ████ – PT rec'd 8/14, reviewed 8/25
3. ████ – general surgery rec'd 8/16, reviewed 8/30
4. ████ – general surgery rec'd 8/, reviewed 8/9

Mr. Timothy Bojanowski
RE: Errors in September 2017 CGARs
December 11, 2017
Page 16

**PM 77 (Mental health treatment plans shall be updated a minimum of every 90 days for MH-3A, MH-4, and MH-5 prisoners, and a minimum of every 12 months for all other MH-3 prisoners.)**

The entries below for PM 77 were incorrectly marked compliant based on the dates listed on the face of the CGAR.  See **Attachment C** (Eyman, Lewis, Perryville, and Tucson). Please note that we did not review the medical records of the files listed as compliant on the CGAR to confirm that the dates listed in the CGAR are accurate.

| ADC No. | MH Category | Date Became MH Category | Second Most Recent Treatment Plan Update | Most Recent Treatment Plan Update |
|---|---|---|---|---|
| | | *Eyman* | | |
| ███ | MH-3B | 6/26/16 | 11/13/15 | 11/22/16 |
| | | *Lewis* | | |
| ███ | MH-3C | 7/20/16 | 7/20/16 | 7/24/17 |
| ███ | MH-3B | 12/11/14 | 1/7/16 | 1/10/17 |
| | | *Perryville* | | |
| ███ | MH-3C | 1/11/16 | 1/11/16 | 1/27/17 |
| ███ | MH-3C | 12/26/13 | 8/3/16 | 8/4/17 |
| | | *Tucson* | | |
| ███ | MH-3B | 12/2/15 | 7/8/16 | 7/10/17 |
| ███ | MH-3B | 4/30/15 | 8/22/16 | 8/24/17 |

We look forward to your prompt response and revised CGARs, and plan to raise the broader sytemic issues of inadequate monitoring with the Court at the December 20, 2017 hearing.

Sincerely yours,

*Corene Kendrick*

Corene Kendrick, Staff Attorney

# EXHIBIT 2

**Corene Kendrick**

| | |
|---|---|
| **From:** | Dan Struck |
| **Sent:** | Thursday, December 14, 2017 11:09 AM |
| **To:** | Corene Kendrick; Ashlee Hesman |
| **Cc:** | Don Specter; Alison Hardy; Rita Lomio; Mae Ackerman-Brimberg; Sarah Hopkins; Megan Lynch; David Fathi; Amy Fettig; Jennifer Onka; Ada Lin; Kirstin Eidenbach; Freouf,Delana (Perkins Coie); Maya Abela; Kathy Brody; Parsons Team; Lucy Rand; mary.beke@azag.gov |
| **Subject:** | RE: Parsons v. Ryan - Monitoring Mistakes September 2017 CGARs |

Corene,

The issue with discussing your allegation of "chronic systemic problems" with respect to monitoring at the status conference next week, is that you have not shown that there is such a problem with the current monitoring system.   The vast majority of "problems" that you have brought to our attention, were actually correctly scored and/or did not change the score from compliant to non-compliant.   The fact of the matter is that plaintiffs had an opportunity to negotiate for a different monitoring scheme, but you chose not to do so.   The stipulation was entered and approved by the court with the clear understanding that the monitoring bureau would continue reviewing the performance measures for compliance.

To agree to ask the court to consider alternatives to having ADC monitor Corizon's compliance is unnecessary.   Plaintiffs are attempting to create the illusion of a "systemic problem" with the current method of monitoring by pointing out a handful of "mistakes", that when we have the opportunity to review, turn out to be measures that were correctly scored.   We simply don't have time to go through your current allegations that "mistakes" were made in the monitoring before the hearing next week.   As a result, it makes no sense to even discuss this issue, particularly when there hasn't been a showing that there are "chronic systemic problems" with the current method that the parties bargained for.

Dan Struck



Daniel P. Struck
Attorney

**STRUCK LOVE BOJANOWSKI & ACEDO, PLC**
3100 W. Ray Road | Suite 300 | Chandler AZ 85226
p: 480.420.1601 | dstruck@strucklove.com | strucklove.com

---

**From:** Corene Kendrick [mailto:ckendrick@prisonlaw.com]
**Sent:** Thursday, December 14, 2017 11:44 AM
**To:** Ashlee Hesman <ahesman@strucklove.com>
**Cc:** Don Specter <dspecter@prisonlaw.com>; Alison Hardy <ahardy@prisonlaw.com>; Rita Lomio <rlomio@prisonlaw.com>; Mae Ackerman-Brimberg <mabrimberg@prisonlaw.com>; Sarah Hopkins <sarah@prisonlaw.com>; Megan Lynch <megan@prisonlaw.com>; David Fathi <dfathi@aclu.org>; Amy Fettig <afettig@aclu.org>; Jennifer Onka <jonka@aclu.org>; Ada Lin <alin@aclu.org>; Kirstin Eidenbach <kirstin@eidenbachlaw.com>; Freouf,Delana (Perkins Coie) <DFreouf@perkinscoie.com>; Maya Abela <mabela@azdisabilitylaw.org>; Kathy Brody <kbrody@acluaz.org>; Parsons Team <ParsonsTeam@strucklove.com>;

Lucy Rand <Lucy.Rand@azag.gov>; mary.beke@azag.gov
**Subject:** RE: Parsons v. Ryan - Monitoring Mistakes September 2017 CGARs

Ashlee,

As I stated clearly in the letter, I did not ask, nor do we expect, that Defendants respond with regard to the individual mistakes listed in the letter by December 20.  You are misstating what I said.  Instead, I wrote

> We ask that Defendants correct the compliance figures for these CGARs, and **reissue them in a timely manner**.
>
> We also plan to raise this issue at the December 20, 2017 status hearing and we request that Defendants agree to utilize the services of an independent, professionally trained auditing group to perform the audits. **We also request that both you and your client be prepared to discuss at the hearing these chronic systemic problems, and all possible alternative approaches to monitoring**.

We reiterate our request that Defendants and Mr. Bojanowski be prepared at the December 20 hearing to have a meaningful and substantive discussion about the broader systemic problems.  You do not have to review the medical records in order to have a discussion about the broader problem.

And to answer your question, and again as I clearly stated in the letter, yes, we reviewed every medical record listed in eOMIS for the files listed for the three medical performance measures. With regard to the mental health performance measures, the mistakes were apparent on the face of the CGAR and were highlighted in the attachments.

Thank you,

Corene

Corene Kendrick, Staff Attorney
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, CA 94710
510-280-2621
ckendrick@prisonlaw.com

---

**From:** Ashlee Hesman [mailto:ahesman@strucklove.com]
**Sent:** Thursday, December 14, 2017 10:27 AM
**To:** Corene Kendrick <ckendrick@prisonlaw.com>
**Cc:** Don Specter <dspecter@prisonlaw.com>; Alison Hardy <ahardy@prisonlaw.com>; Rita Lomio <rlomio@prisonlaw.com>; Mae Ackerman-Brimberg <mabrimberg@prisonlaw.com>; Sarah Hopkins <sarah@prisonlaw.com>; Megan Lynch <megan@prisonlaw.com>; David Fathi <dfathi@aclu.org>; Amy Fettig <afettig@aclu.org>; Jennifer Onka <jonka@aclu.org>; Ada Lin <alin@aclu.org>; Kirstin Eidenbach <kirstin@eidenbachlaw.com>; Freouf,Delana (Perkins Coie) <DFreouf@perkinscoie.com>; Maya Abela <mabela@azdisabilitylaw.org>; Kathy Brody <kbrody@acluaz.org>; Parsons Team <ParsonsTeam@strucklove.com>; Lucy Rand <Lucy.Rand@azag.gov>; mary.beke@azag.gov
**Subject:** RE: Parsons v. Ryan - Monitoring Mistakes September 2017 CGARs

Corene,

We are in receipt of your December 11, 2017 correspondence alleging mistakes in the September 2017 CGARs.  Including attachments, your correspondence totals 34 pages, and alleges mistakes in over **160** inmate files.  We simply do not have enough time to check on these allegations prior to the December status hearing, particularly with everything else that is going on in the case.  As such, your demand that Defendants provide a substantive response, and be prepared to discuss the correspondence at the December 20, 2017 Status Hearing, is unreasonable.  Defendants will object to including this issue on the agenda for the December 20, 2017 Status Hearing.  Additionally, please confirm that Plaintiffs reviewed and consulted eOMIS prior to sending the December 11, 2017 correspondence.  As stated in our November 29, 2017 correspondence, a review of eOMIS would have confirmed that the majority of files highlighted by Plaintiffs as "errors", were correctly counted as compliant.  For example, in Plaintiffs' November 13, 2017 correspondence, you claimed a file was incorrectly marked compliant for PM 86 at Yuma because a date of "58/5" was used.  Despite being rather obvious that this was a typographical error, Plaintiffs failed to review eOMIS before sending the correspondence.  Had such review been conducted, Plaintiffs would have seen that the correct date was "8/5", and that the file was compliant.  Therefore, if Plaintiffs have not already done so, please consult eOMIS to confirm that your allegations of error are meritorious.  Defendants will respond to your correspondence prior to the January 10, 2018 Status Hearing, and recommend that these allegations be addressed at that time.

Thank you,

Ashlee

---

**From:** Corene Kendrick [mailto:ckendrick@prisonlaw.com]
**Sent:** Monday, December 11, 2017 6:43 PM
**To:** Tim Bojanowski <TBojanowski@strucklove.com>; Elaine Percevecz <EPercevecz@strucklove.com>; Dan Struck <DStruck@strucklove.com>; Rachel Love <RLove@strucklove.com>; Ashlee Hesman <ahesman@strucklove.com>; Richie Valenti <RValenti@strucklove.com>; Kevin Hanger <KHanger@strucklove.com>; Lucy Rand <Lucy.Rand@azag.gov>; mary.beke@azag.gov
**Cc:** Don Specter <dspecter@prisonlaw.com>; Alison Hardy <ahardy@prisonlaw.com>; Rita Lomio <rlomio@prisonlaw.com>; Mae Ackerman-Brimberg <mabrimberg@prisonlaw.com>; Sarah Hopkins <sarah@prisonlaw.com>; Megan Lynch <megan@prisonlaw.com>; David Fathi <dfathi@aclu.org>; Amy Fettig <afettig@aclu.org>; Jennifer Onka <jonka@aclu.org>; Ada Lin <alin@aclu.org>; Kirstin Eidenbach <kirstin@eidenbachlaw.com>; Freouf,Delana (Perkins Coie) <DFreouf@perkinscoie.com>; Maya Abela <mabela@azdisabilitylaw.org>; Kathy Brody <kbrody@acluaz.org>
**Subject:** Parsons v. Ryan - Monitoring Mistakes September 2017 CGARs

Dear Tim,

Please see the attached letter regarding the mistakes in monitoring for the September 2017 CGARs.  We ask that you and your client be prepared to have a substantive conversation regarding the systemic issues identified at the December 20, 2017 Status Hearing.

Thank you,

Corene

Corene Kendrick, Staff Attorney
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, CA 94710
510-280-2621
ckendrick@prisonlaw.com

This electronic mail transmission contains information from the law firm Struck Love Bojanowski & Acedo, PLC that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 420-1600. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

# EXHIBIT 3



LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT

November 27, 2017

**BY ELECTRONIC MAIL ONLY**

Ashlee B. Hesman
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
ahesman@strucklove.com

      Re:   *Parsons v. Ryan*

AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
*ATTORNEY AT LAW\**

*\*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS*

Dear Ashlee:

Pursuant to the Court's direction during the November 21 telephonic hearing, attached is Plaintiffs' proposed Monitor Guide language to implement the Court's ruling regarding the sampling methodology for Performance Measure 95.  *See* Doc. 2456 at 4; 11/7/17 Tr. at 169:2-16.  We have accepted all tracked changes in your August 25, 2017 version of the Monitor Guide for PM 95, and made additional edits in redline to implement the Court's order.  Please let us know if you agree to this language.

Please also confirm that Defendants will re-audit the CGAR results for PM 1, 2, 4, 77, and 95 using the methodology ordered by the Court on November 7 (PM 95) and November 21 (PM 1, 2, 4, and 77).

Thank you very much.

Very truly yours,

David C. Fathi

Enclosure

Cc: All     counsel

**Health Care Performance Measure No. 95**
**Stipulation Category: Mental Health (23)**

**CGAR Category: Mental Health (C) 23**

---

**Performance Measure:**

Only licensed mental health staff may remove a prisoner from a suicide or mental health watch. Any prisoner discontinued from a suicide or mental health watch shall be seen by a mental health provider, mental health clinician, or psychiatric registered nurse between 24 and 72 hours after discontinuation, between seven (7) and ten (10) days after discontinuation, and between 21 and 24 days after discontinuation of the watch.

---

**CGAR Question:**

Are inmates that are removed from a suicide or mental health watch being removed by a licensed mental health staff?  Are any prisoners that were discontinued from a suicide or mental health watch seen by a mental health provider, mental health clinician, or a psychiatric registered nurse between 24 and 72 hours after discontinuation, and between seven (7) and ten (10) days, and between 21 and 24 days after discontinuation of the watch?

---

**Source of Records/Review:**

Suicide Watch Log (randomized).

---

**Methodology:**

- Review a minimum of 20 individual inmate records (if available) per complex.

- Review eOMIS under the Mental Health tab for the required watch follow-up note(s).  A watch follow-up note may be found in a variety of locations in eOMIS, including, but not limited to, the following locations: individual contact, segregation visit (refusal or lockdown), treatment plan, scheduled sick call, unscheduled sick call, scheduled psychiatry, unscheduled psychiatry, and initial psychiatric evaluation.

- Record the date the watch was discontinued.  Determine whether the watch follow-up note(s) occurred during the required time frame for any inmate who should have had a watch follow-up contact during the monitored month.

- Verify that the clinician, who discontinued the watch (during the monitored month), was a licensed clinician.  A monthly list of licensed mental health clinicians will be provided by the Contracted Vendor.

- Verify that each watch follow up contact was completed by a mental health provider, mental health clinician, or psychiatric registered nurse.  A monthly list of all mental health

staff will be provided by the Contacted Vendor.

- Record the dates of the watch follow-up contacts. If the follow up was not due during the monitored month, then "N/A" will be recorded.  ~~If the follow up contact occurred at another complex, then "N/A" will be recorded.~~

- If the inmate was not at the monitored complex when he/she was removed from watch and when all three of the post-watch follow-up contacts were due, the record will be excluded, and another record will be randomly drawn.  If an inmate goes back on watch any time prior to the expiration of the third post-watch follow-up (due between 21 and 24 days after removal from watch), the record will be excluded, and another record will be drawn.

- Record the total number of contacts that are in compliance and the total number of contacts that should have occurred (e.g., 2 out of 3, 4 out of 4).  If any of the required contacts for each record are not in compliance, then the record will be coded as non-compliant.

- If there is a gap in contacts, review the external Movement Screen in AIMS (DI24, Shift + F5) to determine whether the inmate was out to court, out to hospital, or otherwise out of the facility.   (Or in eOMIS, from the Prison tab, click on the shortcuts "Population Tracking", and click on the link "External Movements" to view the inmate's movement).

# EXHIBIT 4

# FILED UNDER SEAL



**PRISON LAW OFFICE**
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

December 14, 2017

**BY ELECTRONIC MAIL ONLY**

Mr. Richard M. Valenti
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
rvalenti@strucklove.com

     Re:   *Parsons v. Ryan*
              Outstanding Document Requests and Re-Issued July CGARS

Dear Richard,

     I write in response to several letters your office recently sent Plaintiffs' counsel.

     First, I write in response to your letter of December 1, 2017, regarding the document requests identified by Mr. Fathi at the November 21, 2017 Telephonic Status Hearing.  To the extent that Defendants have identified responsive documents to our requests, we ask that you heed the Court's advice and provide them on a rolling basis rather than wait until every last document is available.  *See* 11/21/17 Tr. at 27:23-28:11.

**Request No. 18:**  All documents reflecting, discussing, or establishing policies and/or practices related to Defendants' compliance with the Court's Nov. 10, 2016 Order, with regard to the nine performance measures to which the order is applicable, and documents sufficient to show the implementation and compliance with the Order.

**Request No. 19:**  All written direction or instructions, including all training materials, provided to ADC or Corizon staff regarding compliance with the Court's orders on monitoring methodology, including but not limited to Doc. 1673, 1745, 1754, 1831, 1833, and 1915.

     Defendants have confirmed that they "have made a new inquiry about whether responsive documents exist for both requests."  Plaintiffs reiterate their request for responsive documents and await further response.

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

Mr. Richard Valenti
RE: Parsons v. Ryan
December 14, 2017
Page 2

**Request No. 53:**  The Draft DI pertaining to the Transitional Housing Unit at ASPC-Tucson (see ADCM961584).

We can confirm we were able to obtain a copy of DI 358, Mental Health Transition Program from Arizona Department of Corrections' website.  However, Plaintiffs' original document request specifically asked for all *drafts* of the DI pertaining to the Transitional Housing Units.  Accordingly, we reiterate this demand.

**Request No. 54:**  All documents reflecting the planned "population management – bed changes" set forth in the May 26, 2017 memorandum from Stacey Crabtree to Charles Ryan (see ADCM961594-98).

Plaintiffs reiterate their request for documents relating to the planned population management – bed changes, particularly as, by counsel's own admission, Phase 3 will not be completed until early-mid 2018.  Prior to, and during the implementation of this Phase, we anticipate some documentation to be created.  Additionally, we request all documents relating to the implementation of the close custody pilot program at Florence-Central.  Finally, the most recent close custody notebooks produced by Defendants were for July 2017.  We request that Defendants produce the close custody notebooks for August 2017.

**Request No. 62:**  Any documents relating to the system-wide and/or institution-wide discontinuation of Gabapentin (neurontin) or Tramadol as pain medications, including instructions or directives given to prescribing providers, and protocols for tapering patients off the medication.

You respond that you are in the process of confirming whether responsive documents exist.  Additionally, at the November 21, 2017 Telephonic Status Hearing, Judge Duncan communicated to Defendants' counsel that Mr. Pratt should be prepared to address this issue at the December 20, 2017 status hearing.  (11/21/17 Tr. 35:6-14)  Plaintiffs await Defendants' further response and Mr. Pratt's testimony regarding this issue.

**Request No. 63:**  Any documents, emails, communications, plans (draft or final) relating to the conversion of maximum custody units to close custody units (See, e.g., ADCM961594).

Plaintiffs reiterate their request for all documentation relating to the conversion of maximum custody units to close custody units.  Plaintiffs specifically request all documents relating to the implementation of the close custody pilot program at Florence-Central.  Finally, the most recent close custody notebooks produced by Defendants were for July 2017.  We request that Defendants produce the close custody notebooks for August 2017.

Mr. Richard Valenti
RE: Parsons v. Ryan
December 14, 2017
Page 3

**Request No. 64:**  Temperature Logs from 06/01/2017 to present for all prison complexes. [07/14/17].

We confirm receipt of Mr. Bojanowski's letter dated December 6, 2017, regarding this issue.

**Request No. 67:**  All documents reflecting (1) the rejection by Dr. Malachinski, or by any other person, of patients for housing at ASPC-Phoenix based on alleged noncompliance with CGAR measures; and (2) any disciplinary or corrective action taken against Dr. Malachinski or any other person for this behavior. See RP230000025.0001-0004. [Requested 8/15/17]

You respond that you "have made further inquiry regarding this request.  Defendants are presently awaiting a response from Corizon regarding that inquiry."  Plaintiffs await further response.

## Re-issued July CGARS

In addition to the matter of outstanding document requests, we would also like to bring to your attention several issues we found with the re-issued July CGARS, produced by Defendants on December 4, 2017, for the following facilities:  Eyman, Florence, Lewis, Perryville, Phoenix, Tucson, and Yuma.

Plaintiffs reviewed these re-issued CGARS to verify that Defendants made all of the agreed-upon revisions, enumerated in Defendants' October 20, 2017 and November 14, 2017 letters.  Pursuant to this review, Plaintiffs found Defendants failed to make the following revisions to their reported compliance findings for PM #44:

Perryville

- In their October 20, 2017 letter, Defendants wrote, "inmate ███████  Because there are no hospital discharge records for this inmate, this file was mistakenly included in random sample…Defendants will adjust the July 2017 score for PM 44 at Perryville from 14/15 records compliant to 13/14 records compliant, which will result in a 92.85% compliance score."  The re-issued CGAR still reflects inmate ██████ and still indicates that this record is compliant.  The re-issued CGAR also still indicates 14 compliant records out of 15 records reviewed, for a compliance score of 93.33%.  (ADCM1042872)

- Also in their October 20, 2017 letter, Defendants admitted that, with regard to inmate ████████ "a typographical error appears in the CGAR.  The correct file is # ███████  This file is compliant.  Defendants will correct the error in the CGAR."  The re-issued CGAR still contains the original typographical error.  (ADCM1042872)

Mr. Richard Valenti
RE: Parsons v. Ryan
December 14, 2017
Page 4

- Finally, in their November 14, 2017 letter, Defendants conceded that, "# ███████ After further review, this file should not have been included because no discharge instructions were received from the hospital. Defendants will replace the file and re-audit." Defendants did not replace this file, as inmate number # ██████ is still appearing in the re-issued CGAR and is still marked, inaccurately, as "compliant." (ADCM1042872)

Lewis

- In their November 14, 2017 letter, Defendants agreed that file ██████ is noncompliant. However, the re-issued CGAR still indicates that this record is compliant. (ADCM1042819) What is of particular note is that Defendants clearly did re-audit this performance measure, as the total number of records reviewed was correctly revised from 16 to 17 records (it appears Defendants neglected to include record ██████ in the original CGAR). Despite Defendants catching this mistake, they failed to correct the error with regard to record ██████ which they had previously acknowledged and agreed to remedy.

  In reviewing the re-issued CGARS, Plaintiffs also discovered a typographical error with PM #95 for Tucson. The CGAR reports that prisoner # ██████ was taken off of watch on July 10, 2017, and was subsequently seen for follow-up visits on October 13, October 17, and October 31, 2017. These dates would clearly lead to a finding of non-compliance, however, a review of this prisoner's medical records on eOMIS indicates that these October dates were typographical errors. Prisoner # ██████ did, in fact, receive follow-up visits with mental health staff on July 11, July 13, July 17, and July 31. Despite Defendants' assertion that their re-audit yielded a finding of no errors, Plaintiffs discovered at least one error through their spot-check of this performance measure.

  Finally, we ask that you provide a Bates stamped version of the re-audited CGAR for Safford, which was annexed to Ms. Hesman's November 14, 2017 letter as "Exhibit 1."

  We look forward to your response.

Sincerely yours,

*Corene Kendrick*

Corene Kendrick, Staff Attorney

cc:     Counsel

# EXHIBIT 5

# FILED UNDER SEAL



LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT

November 13, 2017

**BY ELECTRONIC MAIL ONLY**

Timothy J. Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com

Dear Counsel:

In our letter of October 4, 2017[1], we set forth numerous errors we found in a spot-check of the July 2017 CGARs.  We have now done a similar spot-check of the August 2017 CGARs and once again found numerous errors, all in Defendants' favor.  Because most of these errors are apparent on the face of the document, it appears that the CGARs are not checked before they are submitted to Plaintiffs and the Court.[2]

**PM 77[3]**

The following records were incorrectly counted as compliant when they should have been counted as noncompliant:

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

PLEASE RESPOND TO
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

| ADC No. | MH Category | Date Became MH Category | Second Most Recent Treatment Plan Update | Most Recent Treatment Plan Update |
|---|---|---|---|---|
| *Eyman* | | | | |
| ███████ | 3B | 6/3/16 | 11/11/15 | 11/18/16 |
| ████ | 3B | 2/15/15 | 10/22/15 | 10/23/16 |
| *Florence* | | | | |
| ████ | 3B | 3/9/16 | 3/18/16 | 5/30/17 |
| *Lewis* | | | | |
| ████ | 3B | 10/12/15 | 10/12/15 | 10/17/16 |
| █████ | 3B | 12/21/15 | 12/21/15 | 1/2/17 |
| █████ | 3C | 6/8/16 | 6/8/16 | 6/22/17 |
| *Tucson* | | | | |
| ████ | 3B | 8/3/15 | 7/1/16 | 7/3/17 |

---

[1] Filed at Doc. 2368-1, at 3-13.
[2] As with our October 4 letter, we emphasize that we have not checked all performance measures or all institutions.
[3] PM 77 requires that "[m]ental health treatment plans shall be updated a minimum of every 90 days for MH-3A, MH-4, and MH-5 prisoners, and a minimum of every 12 months for all other MH-3 prisoners."  Doc. 1185-1 at 13.

| | 3B | 3/20/15 | 8/9/16 | 8/14/17 |
| --- | --- | --- | --- | --- |
| | | *Yuma* | | |
| █████ | 3E | 7/5/16 | 8/10/16 | 8/14/17 |
| █████ | 3B | 6/24/14 | 9/16/15 | 9/29/16 |
| █████ | 3A | 2/15/17 | 3/14/17 | 6/16/17 |

*See* Exhibit A.  **Please let us know by close of business on November 20 whether you will agree to recalculate the August 2017 CGAR results for PM 77 at all institutions and correct the compliance figures accordingly.**

## PM 86[4]

The following records were incorrectly counted as compliant when they should have been counted as noncompliant:

| ADC No. | Date Medication Discontinued | Second Most Recent Visit from MH Clinician | Most Recent Visit from MH Clinician |
| --- | --- | --- | --- |
| | | *Florence* | |
| █████ | 3/9/17 | 5/3/17 | 8/19/17 |
| █████ | 3/7/17 | None Listed | 8/3/17 |
| | | *Lewis* | |
| █████ | 4/25/17 | 5/3/17 | 8/11/17 |

*See* Exhibit B.

In addition, Patient ██████ (Eyman) is listed in the CGAR as having been seen by a mental health clinician on 6/21 and 5/25.  *See* Exhibit B.  This is untrue; no such contacts appear in the medical record on those dates.  *See* Exhibit C.

Patient ██████ (Yuma) is listed in the CGAR as having a contact with a mental health clinician on "58/5."  *See* Exhibit D.

**Please let us know by close of business on November 20 whether you will agree to recalculate the August 2017 CGAR results for PM 86 at all institutions and correct the compliance figures accordingly.**

## PM 88[5]

---

[4] PM 86 requires that "MH-3D prisoners shall be seen a minimum of every 90 days by a mental health clinician for a minimum of six months after discontinuing medication."  Doc. 1185-1 at 14.

[5] PM 88 requires that "MH-4 prisoners who are prescribed psychotropic medications shall be seen by a mental health provider a minimum of every 90 days."  Doc. 1185-1 at 14.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Patient ▓▓▓▓ (Tucson) is listed in the CGAR as having been seen by a mental health provider on 6/13/17.  *See* Exhibit E. This is untrue; the note in the medical record for that date reads "I/M not seen due to Building 7 'hard lockdown.'"  *See* Exhibit F.

**Please let us know by close of business on November 20 whether you will agree to recalculate the August 2017 CGAR results for PM 88 at all institutions and correct the compliance figures accordingly.**

**PM 94, 95, and 97[6]**

As was the case with the July 2017 CGARS (*see* Doc. 2368-1 at 12-13), the monitors are continuing to include the same individual's record in a given sample for these PMs more than once. The August 2017 CGARs show that this occurred, at a minimum, at the following institutions:

PM 94: Florence, Yuma
PM 95: Lewis, Phoenix, Tucson
PM 97: Phoenix

*See* Exhibit G.  And once again, the monitor counted the same patient's August 29, 2017  removal from suicide watch *twice* for PM 95.  *See id*. at ADCM1037728-29.

As we have previously pointed out (*see* Doc. 2368-1 at 12-13), this is inconsistent with the Court's order of July 13, 2017. *See* Doc. 2185 at 2 ("Argument is heard regarding Performance Measures 94, 95 and 97. IT IS ORDERED Defendants must draw individuals as previously ordered").  Please explain why the August 2017 CGARs, compiled at the end of September 2017, fail to comply with an order issued in mid-July.

**Please let us know by close of business on November 20 whether you will agree to recalculate the August 2017 CGAR results for PM 94, 95, and 97 at all institutions in compliance with the Court's order, and correct the compliance figures accordingly.**

---

[6] PM 94 requires that "[a]ll prisoners on a suicide or mental health watch shall be seen daily by a licensed mental health clinician or, on weekends or holidays, by a registered nurse."  PM 95 requires that "[o]nly licensed mental health staff may remove a prisoner from a suicide or mental health watch. Any prisoner discontinued from a suicide or mental health watch shall be seen by a mental health provider, mental health clinician, or psychiatric registered nurse between 24 and 72 hours after discontinuation, between seven and ten days after discontinuation, and between 21 and 24 days after discontinuation of the watch."  PM 97 requires that "[a] mental health provider treating a prisoner via telepsychiatry shall be provided, in advance of the telepsychiatry session, the prisoner's intake assessment, most recent mental health treatment plan, laboratory reports (if applicable), physician orders, problem list, and progress notes from the prisoner's two most recent contacts with a mental health provider."  Doc. 1185-1 at 14-15.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

We look forward to your response.

Very truly yours,

David C. Fathi

Cc:     All counsel

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

# EXHIBIT 6


# FILED UNDER SEAL



## STRUCK LOVE BOJANOWSKI & ACEDO, PLC

Ashlee B. Hesman
480.420.1631
ahesman@strucklove.com

November 29, 2017

***VIA EMAIL ONLY***
David C. Fathi
NATIONAL PRISON PROJECT
915 15TH Street, NW - 7th Floor
Washington, DC  20005-2112

  Re: **Parsons v. Ryan**
    ***Defendants' Response to Plaintiffs' 11-13-2017 correspondence regarding***
    ***August 2017 CGARs and monitoring of certain performance measures***

Dear David:

  We a re i n r eceipt of  your N ovember 13, 201 7 c orrespondence r egarding t he A ugust CGARS.  In t he f uture,  please  review t he  records i n e OMIS p rior t o s ending  correspondence claiming certain files should have been counted as noncompliant.  A s discussed below, a review of e OMIS w ould  have  confirmed t hat t he m ajority  of t hese  files w ere co rrectly  counted as compliant.  A dditionally, as  we have stated numerous times, human errors occur.  Despite your assumptions, errors are not intentional.

## PM 77

  Despite our request that Plaintiffs identify any harm which occurs to class members whose treatment plans are updated within the same month they were updated last year, Plaintiffs fail to articulate even a hypothetical harm which would occur.  For example, inmate ███ s treatment plan w as upda ted 366 d ays after i t was upda ted t he pr ior  year, and i nmate ███ s treatment plan was updated 367 days after it was updated the prior year.  Clearly, Plaintiffs are in agreement that there is no significance at all to the treatment of these inmates whose plans were updated in the s ame m onth t he f ollowing  year.   The di fference be tween 12  m onths a nd 365 d ays i s  so insignificant a nd  in no  way w arrants a re -audit f or t hese m easures.  A treatment plan u pdated within t he s ame m onth t he f ollowing year doe s  not r ender t he file s ubstantially non-compliant with the Stipulation.



November 29, 2017
Page 2

### Eyman

 This file is compliant as the treatment plan was updated within 12 months.

This file is compliant as the treatment plan was updated within 12 months.

### Florence

Plaintiffs are correct that this file should not have been counted as compliant. Defendants will adjust the CGAR score accordingly.

### Lewis

This file is compliant as the treatment plan was updated within 12 months.

Plaintiffs are correct that this file should not have been counted as compliant. Defendants will adjust the CGAR score accordingly.

This file is compliant as the treatment plan was updated within 12 months.

### Tucson

This file is compliant as the treatment plan was updated within 12 months.

This file is compliant as the treatment plan was updated within 12 months.

### Yuma

This file is compliant as the treatment plan was updated within 12 months.

This file is compliant as the treatment plan was updated within 12 months.

The most recent treatment plan update contains a typographical error. The date should be 6/6/17. This file is compliant.

## PM 86

### Florence

This file is compliant. A review of eOMIS would have revealed that this inmate was also seen on 8/1/17. This inadvertent error has been corrected.

This file is compliant. A review of eOMIS would have revealed contacts on these additional dates 7/21/17, 7/17/17, 6/21/17, and 5/26/17.

November 29, 2017
Page 3

**Lewis**

████████  T his f ile i s c ompliant.  A  r eview of e OMIS w ould ha ve r evealed a n  8/3/17 contact.

**Eyman**

████████     This f ile is   compliant.  A  r eview  of e OMIS  would ha ve r evealed t hat a typographical  error e xisted i n t he C GAR.  6/ 21/2017 s hould ha ve b een 6/ 19/17 a nd 5/ 25/17 should have been 5/31/2017.

**Yuma**

████████     This f ile is  c ompliant.  A  r eview o f e OMIS w ould h ave  revealed th at a typographical error existed in the CGAR.  Indeed, it is rather obvious that reporting a contact on "58/5" i s cl early a t ypographical error.  Again, please r eview the C GAR  before b ringing i ssues that can easily be clarified by Plaintiffs' counsel to our attention.  The correct date is 8/5/17.

**PM 88**

**Tucson**

████████     A review of this file shows that there was a 4/20/17 contact.  Therefore, this file was co rrectly co unted a s co mpliance.   All ot her c omplexes ha ve be en  reviewed  and no ot her errors were identified.

**PMs 94, 95, and 97**

With the exception of ██████  the files listed in your November 13, 2017 correspondence were incorrectly counted twice.  Defendants will replace the second file and re-audit these measures.  ██████  was correctly counted compliant as the inmate was housed at two different units during August 2017, and his file was randomly selected for two different units.  As such, his file was not counted twice for the same unit.  Despite this, Defendants will agree to replace it with another file.

Defendants will review the CGARS to confirm no additional typographical or inadvertent human errors exist.

Sincerely,

*Ashlee Hesman*

Ashlee B. Hesman

ABF/eap
cc:    Counsel of record

# EXHIBIT 7


# FILED UNDER SEAL



# PRISON LAW OFFICE

General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

July 27, 2017

Lucy M. Rand, Assistant Attorney General
Office of the Arizona Attorney General
1275 West Washington Street
Phoenix, AZ 85007-2926
Lucy.Rand@azag.gov

     RE:   *Parsons v. Ryan*, 2:12-CV-00601
           Class Member in Need of Medical Care
           ███████████████, Florence - South

Dear Ms. Rand:

     I write on behalf of Mr. ███████ who suffers from esophageal cancer, and is also awaiting cataract surgery.  It appears Mr. ██████ is not receiving necessary medical care.

     For over two years, Mr. ██████ has been under the care of Dr. Rakkar, an oncologist, who has prescribed several courses of chemotherapy for him in 2016.  Dr. Rakkar saw Mr. ██████ in February 2017, and found he was doing well, with no dysphagia, and did not prescribe additional chemo.  When he was last seen, on 3/30/17, Dr. Rakkar recommended Mr. ██████ have lab tests and return to him in four weeks.  However, on 5/17/17 and again on 7/5/17, Mr. ██████ follow-up appointment with the oncologist was denied.  On 7/5/17, David Ellison wrote, "If patient not actively receiving chemotherapy, patient can be followed onsite."  Mr. ██████ has repeatedly submitted HNRs, reporting that he experiencing, difficulty swallowing, severe pain and may have a blockage in his esophagus.  As his condition has clearly changed since the oncologist last saw him, Mr. ██████ should be promptly returned to Dr. Rakkar, per his recommendation in March.

     Mr. ██████ received cataract surgery on his right eye and, on 3/31/17, a specialty report recommends cataract surgery on his left eye.  To date, Mr. ██████ has not received his surgery.  In response to his grievance on the issue (A02-105-017), RN White wrote that he or she would investigate, and the FHA later responded that Mr. ██████ grievance for follow-up care had been substantiated.  However, Mr. ██████ has not been referred back to his ophthalmologist.  Please refer Mr. ██████ back to his ophthalmologist so that his surgery can be scheduled.

     Mr. ██████ pain medication for his cancer have lapsed repeatedly.  In response to his grievance reporting these lapses (A02-104-017), he was advised on 6/8/17 that he has a non-formulary medication and that it takes "a few days longer to receive when renewed."  The ADON wrote that staff had been educated to renew the medication correctly so that the delay would not occur again.  However, the

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

Lucy M. Rand, Assistant Attorney General
Re: ██████████████████
July 27, 2017
Page 2

medication once again lapsed on 7/22/17, and Mr. ████████ missed several doses, subjecting him to extreme pain. Florence's pharmacy and nursing staff must develop a system to ensure that Mr. ██████ critical medications are timely delivered to him.

In summary, we request that Mr. ████████ be promptly scheduled to return to his oncologist, that his cataract surgery be scheduled, and that his medications be delivered promptly and without interruption.

Thank you for your prompt attention to this matter.

Sincerely,

Alison Hardy
Senior Staff Attorney

cc:    Mr. ████████

# EXHIBIT 8

# FILED UNDER SEAL



**PRISON LAW OFFICE**
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

August 7, 2017

Lucy M. Rand, Assistant Attorney General
Office of the Arizona Attorney General
1275 West Washington Street
Phoenix, AZ 85007-2926
Lucy.Rand@azag.gov

RE:   *Parsons v. Ryan*, 2:12-CV-00601
       Class Member in Need of Medical Care
       ██████████████ Tucson - Rincon

Dear Ms. Rand:

I write on behalf of Mr. ████ a 29 year old man who suffers from advanced testicular cancer. According to his medical records, his care has been delayed for several months, and his cancer has metastasized to his lungs, pelvic organs and lymph nodes. Although he finally saw an oncologist until last week, Mr. ████ has yet to start receiving recommended treatment. I ask that Mr. ████ chemotherapy be initiated immediately. as recommended by the oncologist. Additionally, as he now apparently suffers from Stage IV metastatic cancer, I ask that he be considered for compassionate release.

Mr. ████ initially raised concerns about his swollen testicle in February 2017. He saw a nurse on 2/22/17, who referred him to a provider. His NP saw him the following day, who noted that his right testicle was twice the size of his left, and ordered an AFP/HCG tumor marker test, with a follow up in 30 days. Mr. ████ saw his provider on 3/22/17 who, based upon significantly elevated tumor marker results, referred him urgently to a urologist. After seeing Mr. ████ on 4/19/17, the urologist/surgeon scheduled him for a right orchiectomy (removal of the testicle), which he performed on 5/15/17. The uro-surgeon ordered the patient to return in one month to discuss the pathology results. Mr. ████ did not return to the uro-surgeon the following month, however.

On 6/14/17, Mr. ████ saw his provider, who noted that the uro-surgeon had requested an oncology consult to occur before Mr. ████ next urology appointment. Although the provider apparently submitted an emergency request the same day, the oncology appointment had not occurred by 7/19/17, when Mr. ████ finally returned to the urologist. Mr. ████ urologist documents that he had requested an oncology appointment in May, as well as in June. He wrote, "Recent diagnosis of mixed GCT [germ cell tumor, a form of cancer] .... Placed Oncology consult on 5/18/17, however, patient has not been seen due to administrative problems.... " In his clinical summary for that visit, the urologist wrote, "URGENT. Oncology referral placed in MAY. Patient has aggressive form of testicular cancer -- needs URGENT treatment."   (Failure to timely schedule emergent specialty consult, in violation of PM 50.)

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

Lucy M. Rand, Assistant Attorney General
Re: ███████████████
August 7, 2017
Page 2

Mr. ███ finally saw the oncologist on 8/3/17, who recommended that he start chemotherapy "next Monday," i.e., today.  According to his health record, Mr. ███ was in the infirmary today, and apparently did not receive chemotherapy.

Please schedule Mr. ███ to begin chemotherapy immediately, ensure that he receives adequate pain relief, and is considered for early release.  We appreciate your prompt attention to this extremely urgent case.

Thank you for your prompt attention to this matter.

Sincerely,

Alison Hardy
Senior Staff Attorney

cc:    Mr. ███

# EXHIBIT 9


# FILED UNDER SEAL



**PRISON LAW OFFICE**

General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

December 5, 2017

Lucy M. Rand, Assistant Attorney General
Office of the Arizona Attorney General
1275 West Washington Street
Phoenix, AZ 85007-2926
Lucy.Rand@azag.gov

RE:   *Parsons v. Ryan*, 2:12-CV-00601
        Class Member in Need of Medical Care
        ██████████████████  Tucson – Rincon Health Unit

Dear Ms. Rand:

I write in regard to Mr. █████ a class member housed at Tucson Rincon Unit's infirmary (Housing Unit 9), who is in need of specialty care to manage serious medical conditions related to his paralysis. Mr. █████ also is not receiving adequate pain management, and the Corizon Utilization Management team has denied the treating provider's request for nonformulary pain management.  Mr. █████ needs to see a urologist for the placement a suprapubic catheter, and wound specialists and a plastic surgeon for proper management of Stage IV decubitis pressure sores.

Mr. █████ is paralyzed from the chest down, since 1992. He reported to me during an interview (and showed me, and Mr. Bojanowski) a large decubitis ulcerating pressure sore on his upper buttocks/coccyx that is extremely large and deep, and he reports that he has had it since 2006 and ADC health care staff have been unable to properly treat it.  He reported that health care staff tell him to not sit in his wheelchair or stay on his back for long periods of time in his bed, but he suffers from severe back pain and back spasms when he tries to move or put his body in other positions.  He reported (and his medical record confirms) that the provider's requests for pain management medication was rejected by Corizon Utilization Management, and they were told to instead prescribe him anti-depressants.

With regard to his pain management for his back spasms, Mr. █████ medical record shows that he is prescribed 15 mg. IR morphine once daily but did not receive it on 11/23, 11/27, 11/30, 12/1, or 12/2. He also is supposed to receive 15 mg. extended release morphine once daily.  On 11/8/17 NP Castillo submitted a nonformulary request for 600 mg Gabapentin three times daily.  She wrote,

> *Increasing Gabapentin for pain control. He is paralyzed from T4 down and has scoliosis. Recently titrated down his narcotics from MSO4 ER BID to a daily dose and his MSO4 IR BID had been discontinued. Since then, patient has been complaining of increased*

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

Lucy M. Rand, Assistant Attorney General
Re: ▮▮▮▮▮▮▮▮
December 5, 2017
Page 2

*pain in his upper back. Nortriptylline increased but did not help. Lidocaine gel only lasts*
*for an hour. Already on Baclofen and APAP as well.*

Corizon's Regional Utilization Management official Dr. Babich denied the request for
Gabapentin, and wrote that "Corizon's preferred medication for neuropathic pain is venlafaxine XR 37.5
mg daily." (Venlafaxine is the generic name for Effexor, an antidepressant, see the attached note from
Mr. ▮▮▮▮▮ medical record.)

With regard to the ulcerating sore, NP Castillo submitted a routine request on November 20, 2017
for a consult with a wound care specialist "to help manage worsening sacral decub and non-healing
coccyx decub." In her request, she wrote,

*Patient with large area of denuded skin on his sacrum (Stg II) which per nursing*
*happened after he came back from the hospital on 9/30/2017. He was sent to the hospital*
*due to nursing unable to insert FC that day. Patient stated he was transported by DOC*
*van and he was sitting on a wheelchair. States he sat on his wheelchair from the time he*
*left infirmary to the time of FC insertion for almost 8 hours. Initially did W-D dressing*
*saline dressing changes. That wound worsen[ed] (Stage III), debrided due to some areas*
*with necrotic tissue, and dressing changed to 1/4 dakins solution wet-dry. Sacral decub*
*(Stg III-IV) measures 13 cm by 5 cm. He also has a tunneled coccygeal decub measuring*
*5 cm x 4 cm in size and tunneled about 4.5 cm deep. Coccyx wound has been present for*
*years and non-healing despite different treatment modalities: w-d saline, dakins, calcium*
*alginate, I/D, xeroform.*

One week later, November 27, 2017, Ms. Castillo's request for wound care was sent to Utilization
Management for review. As of today, Utilization Management has taken no action on the request, in
violation of PM 48 which requires that the documentation of a UM decision to deny a request be placed in
the person's medical record within 14 days of the request.

Additionally, there is no indication of any referral for Mr. ▮▮▮▮ to see a plastic surgeon for a
surgical repair of his Stage III-IV ulcers which the provider reports "has been present for years" and has
not healed despite conservative treatment attempts. The National Pressure Ulcer Advisory Panel advises
that such a referral for evaluation of flap reconstruction surgery is indicated in such a situation. Patients
such as Mr. ▮▮▮▮ are at a profound and serious risk of infection due to the unrepaired ulcers.

With regard to the urology consult, on October 4, 2017 NP Castillo submitted a routine request for
urology consult for placement of a subrapubic catheter instead of an external Foley Catheter:

*He was recently sent to the ED on 9/30/2017 as 4 nurses were unable to put in a new FC*
*[Foley Catheter] in. He has T4 paraplegia and uses indwelling FC which is being*
*changed monthly. He has hx of freq UTI and recently been treated for CAUTI. He also*
*has chronic urethral tear--ventral aspect related to chronic FC use and FC traction on*
*his penis with him positioning himself I the bed. Due to this, he also leaks urine around*
*his FC which also gives him intermittent dermatitis on his buttocks and periarea. He has*

Lucy M. Rand, Assistant Attorney General
Re: █████████████
December 5, 2017
Page 3

*large non-healing sacral decub that also gets soiled with his urine leaking from his FC. He is anticoagulation for hx of DVTs and his Coumadin almost always needs adjustment every time he gets CAUTI. Due to this, he also leaks urine around his FC which also gives him intermittent dermatitis on his buttocks. He has a urology consultation placed in March, 2017 to discuss suprapubic option for patient but is still pending approval to this time.*

According to Mr. ██████ medical record, he has not yet seen the urologist, in violation of PM 51. Furthermore, according to the ER report and Mr. █████ he was again sent to the Emergency Room on Nov. 10 because the nurses again could not replace his Foley Catheter. Mr. █████ also reported that his Foley catheter leaks urine all over his body and his bed, and because the washing machine in the infirmary is broken, he cannot always get his sheets changed when there is an accident.

We request that Mr. ██████ consult with the urologist and wound specialist be completed as soon as possible, and that he be evaluated for referral to plastics for a possible surgical repair of his ulcer.  We also request that he be provided all pain medication that his provider feels is appropriate, rather than be subject to an arbitrary policy of providing him with a psychotropic medication instead of appropriate pain management. We also ask that ADC ensure that there are functioning washing machines in the Tucson infirmary so that patients have access to clean laundry.

Thank you for your prompt attention to this matter.

Sincerely,

*Clendrick*

Corene Kendrick
Staff Attorney

cc:   Mr. █████

# EXHIBIT 10

# FILED UNDER SEAL



**PRISON LAW OFFICE**
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

December 5, 2017

Lucy M. Rand, Assistant Attorney General
Office of the Arizona Attorney General
1275 West Washington Street
Phoenix, AZ 85007-2926
Lucy.Rand@azag.gov

RE:     *Parsons v. Ryan*, 2:12-CV-00601
       Class Member in Need of Medical Care
       ██████████████████████ Tucson – Rincon Health Unit

Dear Ms. Rand:

I write regarding Mr. ███████ a class member who experienced delays in the diagnosis and treatment of his cancer, to the extent that he now has Stage IV lung and liver cancer that has metastasized to his bones. Mr. ███████ reports that he has been told that his cancer is terminal and that he should seek compassionate release. Mr. ███████ continues to experience delays in Utilization Management review and approval of specialty consults, and he reported in an interview that despite the fact that he is now prescribed pain medications, he experiences debilitating pain due to the cancer.

Mr. ███████ reports, and his medical record documents, that he has a family history of cancer: both of his parents died of cancer and three of his sisters died from breast cancer. He came into ADC custody in late December 2016, and reports that beginning in January 2017 he had a lump on his chest that caused him pain, but was not seen until April about it.

According to his medical record, on May 2, 2017, PA Salyer submitted an urgent request with radiology for CT of chest with contrast. Mr. Salyer wrote that Mr. ███████ had a "[l]arge mass growing on sternum" and presumed diagnosis was "malignant neoplasm of ribs, sternum, and clavicle." He was seen at Banner Health on 5/25/17, but the radiologist's report was not scanned into eOMIS at the prison (and then reviewed) until 6/28/17. The CT revealed an "expansile mass in the body of the sternum" of 6.3 x 4.1 x 4.6 cm, and an additional lesion on the bones, as well as several nodules on lungs and liver. Given the multiple lesions on the sternum

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

Lucy M. Rand, Assistant Attorney General
Re: ███████████
December 5, 2017
Page 2

and ribs, the radiologist report recommended a PET/CT scan to identify all skeletal lesions, and an MRI of the liver for more detailed imaging of those lesions.

On July 5, 2017 NP Holmden at Whetstone submitted an urgent request for hematology/oncology in light of the radiology report.  Corizon Utilization Management denied the request and instead issued an alternative treatment plan that Mr. ███████ have a tissue biopsy to confirm the sternal mass was cancerous.  It was not until July 31, 2017 that another provider, NP Baskas, submitted an urgent request for radiology consult for CT-guided tissue biopsy of the mass of the sternum.  The biopsy was not done until more than 30 days later, on September 5, 2017, in violation of PM 50. The biopsy found "Metastatic hepatocellular carcinoma in bone" and recommended immediate referral to oncologists and radiation oncologists.

Mr. ███████ was seen September 18 at the Arizona Oncology Network, where Dr. Goldfarb, the oncologist, noted that Mr. ███████ needed to immediately start chemotherapy and radiation treatment.  Dr. Goldfarb also noted that Mr. ███████ was in severe pain, and needed pain management for radiation therapy with fentanyl patch 50 mcg. every 72 hours and MSIR [morphine] 15 mg every 4 hours for breakthrough pain.  Dr. Goldfarb also stated that Mr. ███████ needed to see Dr. Marsh, the radiation oncologist, as soon as possible, return to AON to see Dr. Goldfarb wiithin two weeks.

Mr. ███████ saw Dr. Marsh, the radiation oncologist, on September 26, who documented that the "patient is experiencing weight loss, fatigue, anorexia and significant pain." Dr. Marsh recommended a treatment plan of chemotherapy (Sorafenib), and radiotherapy, and to start the radiotherapy no later than the following week.  Dr. Salazar, the Corizon provider, reviewed the report on 9/27/17 but took no action and did not document why he was taking no action, in violation of PM 52.  It was not until October 13 that Dr. Salazar finally submitted to Corizon Utilization Management an urgent request for the radiation therapy.  Mr. ███████ had three weeks of radiation, beginning on October 18 and finishing on November 7, 2017.  In the final radiation report of November 7, the radiation oncologist Dr. Marsh said that Mr. ███████ needed to continue the Sorafenib chemotherapy, and return for follow up in four weeks, and needed to also see the medical oncologist as soon as possible.

On November 9, 2017, the prison provider submitted an urgent request for the radiation-oncology follow up requested by Dr. Marsh.  As of December 5, 2017, this request is still listed as under consideration by Utilization Management, which is a violation of PM 48, and if Mr. ███████ is not seen by December 8, 2017, will be a violation of PM 50.  On November 29, Dr. Salazar submitted a second urgent request for the radiation/oncology consult, writing, "[p]atient with liver carcinoma with metastasis to bone, including sternum. Patient has rib metastasis. Oncology requesting consult with Dr. Marsh, radiation oncology."  He also submitted on

Lucy M. Rand, Assistant Attorney General
Re: █████████████
December 5, 2017
Page 3

November 29 the urgent request for the consult with the medical oncologist.  Both of these requests are still listed as pending Utilization Management review.

     Mr. █████████ medical record does not show that he is receiving the fentanyl patch recommended by Dr. Goldfarb to deal with the pain of the cancer and the radiation.  He is receiving morphine, but reports that he continues to experience severe pain.

     We request that Mr. ████████ urgent referrals to the radiation-oncologist and the medical oncologist be scheduled and completed immediately, and that all recommended treatments, including pain management, be implemented.  We request that Corizon health care staff immediately provide him with all necessary paperwork and reports to assist him in obtaining compassionate release, given the terminal stage of his cancer.

     Thank you for your prompt attention to this matter.

Sincerely,

Corene Kendrick
Staff Attorney

cc:   Mr. █████████

# EXHIBIT 11

# FILED UNDER SEAL

# Eidenbach Law, P.L.L.C.

Kirstin T. Eidenbach, Attorney-at-law (AZ Bar No. 027341)

P.O. Box 91398 • Tucson, AZ 85752 • Phone:  520-477-1475
E-Mail:  kirstin@eidenbachlaw.com

November 14, 2017

Tim Bojanowski
Struck, Love, Bojanowski, & Acedo PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226

Dear Tim:

We are writing to schedule our next tours.  We plan to tour the Tucson Complex on November 29-December 1, 2017.  As on the previous tours, we will plan to begin the tours at 8:00 a.m. and end them at 4:30 p.m., with a 30-minute lunch break at 12:00 noon.

The tour group will consist of Corene Kendrick, Rita Lomio, and Sarah Hopkins from the Prison Law Office; Maya Abela, Rose Daly-Rooney, Chris Carlson, and Jessica Jansepar Ross from the Arizona Center for Disability Law; William Peard from the ACLU of Arizona; and myself. Attached you will find Exhibit A containing the information you will need to authorize each tour participant.

We would like to take photos of any concerns that arise while walking around the institution.  We plan to rely on institutional staff (or ADC staff/counsel) to provide two cameras, take photographs as directed, log the photographs as taken, and then provide Plaintiffs' counsel with electronic copies of the photographs within one week through ADC's attorneys.

As on previous tours, we will be giving our contact information by way of business cards and envelopes to clients we speak with during the tour.  We will present the materials we plan to distribute to defense counsel and security staff prior to entering the complex.

The tours will include the following activities, which will vary in length of time from unit to unit:

<u>Inspection of Physical Premises</u>:  We would like to conduct physical inspections of:

- each unit within the facility;

- SMI housing;

- the close custody units that have replaced the maximum custody housing;

- detention cells, including those at each yard;

- Infirmary and medical bed units at all units;

- recreation areas;

- program spaces;

- ADA housing facilities;

- all medical clinics and facilities (including mental health and dental facilities), including IPCs;

- all watch areas, including those used for "security watch"; and

- we would also like to observe pill call, open clinic, and group programming at one or more units at each facility.

Staff Interviews: We would like to interview:

- the FHA for each facility;

- the Director of Nursing for each facility;

- the Medical Director for each facility;

- the Mental Health director for each facility;

- the Dental director for each facility;

- contract monitors for each unit or facility;

- any providers and medical, dental or mental health staff at the facility on the tour days;

- clinical and custody staff responsible for conducting programing for prisoners with mental illness;

- the staff members charged with scheduling prisoner medical appointments, including outside specialty consultations;

- custody staff in charge of or involved with transitioning maximum custody to close custody;

2



- the staff members charged with implementing and running open clinics; and

- the deputy warden or warden for each unit or facility.

<u>Prisoner Interviews</u>:  We would like to speak to class members either at their cell front or on the yard, as we encounter them.  On some occasions, we may want to briefly speak to a class member in a confidential setting.  We will want to meet with any of the named plaintiffs in *Parsons v. Ryan* housed at Tucson Complex at the time of the tours.

<u>Document Review</u>:  We still need the ability to review documents during the tour and ask that at least two computers be setup for this purpose.  In addition, we request that the documents listed in Exhibit B be provided to us no later than November 22, 2017.

Thank you for your assistance in facilitating our visit.  Please do not hesitate to call me if you have any questions or wish to discuss this further.

Sincerely,


/Kirstin


Kirstin Eidenbach
Attorney/Director

3



## Exhibit A:  Tour Participant Authorization Information

Rita Lomio
DOB: ▮▮▮▮▮▮▮
Driver's License: ▮▮▮▮▮▮▮▮
Bar No.:  CA 254501


Corene Kendrick
DOB: ▮▮▮▮▮▮
Driver's License: ▮▮▮▮▮▮▮
Bar No.:  CA 226642


Sarah Hopkins
DOB: ▮▮▮▮▮▮
Driver's License: ▮▮▮▮▮▮▮
Bar No.:  Paralegal


William Peard
DOB: ▮▮▮▮▮▮
Driver's License: ▮▮▮▮▮▮▮
Bar No.:  GA 308464


Christian Carlsen
DOB: ▮▮▮▮▮▮
Driver's License: ▮▮▮▮▮▮▮
Bar No.: AZ 023608


Kirstin Eidenbach:
DOB: ▮▮▮▮▮▮
Driver's License: ▮▮▮▮▮▮▮
Bar No.: AZ 027341




Maya Abela

DOB: ███████

Driver's license: ███████

Bar #: AZ 027232

Rose Daly-Rooney

DOB: ██████

Driver's License: ███████

Bar No.: AZ 015690

Jessica Jansepar Ross

DOB: ██████

Driver's License: ███████

Bar No.: AZ 030553

## Exhibit B: Documents requested in advance of tour (Delivery of November 22, 2017)

1. A list of all prisoners whose files were reviewed by the monitors for the August and September 2017 CGARs for Tucson Complex, and all worksheets used by the monitors.

2. List of pending specialty care appointments, with date of referral (urgent and routine), and all requests for specialty referral pending Utilization Management review for the preceding 90 days. (Measures # 48-49)

3. Suicide watch logs and other documents sufficient to show compliance with Measures # 94-95 for each unit for the preceding 90 days.

4. Medical emergency transport reports for the preceding 90 days. (Measure # 25)

5. List of all nonformulary medications requested during the preceding 90 days, and the utilization management response (and date of response) to the nonformulary prescription. (Measure # 11)

6. Medication expiration reports for the preceding month.  (Measure # 13)

7. Housing assignment log for all prisoners who are designated MH-3 or higher, indicating whether each such prisoner is SMI, as of October 1, 2017 (Stipulation para. 14, 21, and multiple mental health measures).

8. Daily Information Reports written by custody staff assigned to work at the medical units at ASPC-Tucson for the previous 90 days.

9. A list (including housing location) of all prisoners who are taking psychotropic medications and suffered a heat intolerance reaction within the previous 180 days (Stipulation, para. 15).

10. Any lists maintained by ADC of prisoners who are vulnerable to heat injury as a result of taking psychotropic medication (Stipulation, para. 15).

11. All documents showing (1) referral to managers, supervisors, and the CQI committee of any deficiencies identified in mortality reviews and psychological autopsies, and (2) all corrective actions taken (Stipulation para. 16).

12. The current version of the ADC SMI Determination Form (Form 1103-13), reflecting the addition of "intellectual disabilities" as required by Stipulation, para. 21.



13. Medical and mental health provider peer reviews and clinical performance reviews of nursing staff, conducted in the previous 90 days.  If no provider or nursing reviews occurred in the previous 90 days, please inform us of that fact. (Measures #28-29, 99)

14. All communications and memorandums provided to custody staff and prisoners regarding the operation, purpose, and use of open clinics.

15. A list of all prisoners designated as **SMI** or housed in an **SMI** housing cluster, grouping, pod, or unit at Rincon Unit, or any other unit at Tucson Complex.

# EXHIBIT 12

**Corene Kendrick**

| | |
|---|---|
| **From:** | Corene Kendrick |
| **Sent:** | Monday, November 27, 2017 9:01 AM |
| **To:** | 'Kirstin Eidenbach'; 'Tim Bojanowski'; 'Dan Struck'; 'Rachel Love'; 'Ashlee Hesman'; 'Elaine Percevecz'; 'Lucy Rand' |
| **Cc:** | 'David Fathi'; 'Amy Fettig'; Rita Lomio; Sarah Hopkins; 'Maya Abela'; 'Jessica Ross'; 'Rose Daly-Rooney'; 'Billy Peard'; 'Kathy Brody' |
| **Subject:** | RE: Parsons v. Ryan: November Tour of ASPC-Tucson |

Dear Tim,

Good morning.  We had requested that the documents listed in Exhibit B to Kirstin's letter be provided by Wednesday, November 22.  Please advise if we will receive these documents today, because if Defendants will not be producing them, then we will need to seek the Court's assistance in ensuring a timely production prior to the start of the tour on Wednesday.

Thank you,

Corene

Corene Kendrick, Staff Attorney
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, CA 94710
510-280-2621
ckendrick@prisonlaw.com

---

**From:** Kirstin Eidenbach [mailto:kirstin@eidenbachlaw.com]
**Sent:** Wednesday, November 15, 2017 7:33 PM
**To:** Tim Bojanowski <TBojanowski@strucklove.com>; Dan Struck <DStruck@strucklove.com>; Rachel Love <RLove@strucklove.com>; Ashlee Hesman <ahesman@strucklove.com>; Elaine Percevez <EPercevecz@strucklove.com>; Lucy Rand <Lucy.Rand@azag.gov>
**Cc:** David Fathi <dfathi@aclu.org>; Amy Fettig <afettig@aclu.org>; Corene Kendrick <ckendrick@prisonlaw.com>; Rita Lomio <rlomio@prisonlaw.com>; Sarah Hopkins <sarah@prisonlaw.com>; Maya Abela <mabela@azdisabilitylaw.org>; Jessica Ross <jross@azdisabilitylaw.org>; Rose Daly-Rooney <rdalyrooney@azdisabilitylaw.org>; Billy Peard <bpeard@acluaz.org>; Kathy Brody <kbrody@acluaz.org>
**Subject:** Parsons v. Ryan: November Tour of ASPC-Tucson

Counsel:

Attached please find Plaintiffs' letter regarding our next set of tours.  Please let me know if you have any questions.

Thanks,
Kirstin

*Eidenbach Law, P.L.L.C.*
*P.O. Box 91398*

*Tucson, AZ 85752*
*(520) 477-1475*
*kirstin@eidenbachlaw.com*

*This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.*

## Corene Kendrick

| | |
|---|---|
| **From:** | Corene Kendrick |
| **Sent:** | Monday, November 27, 2017 7:20 PM |
| **To:** | 'rvalenti@strucklove.com'; 'Tim Bojanowski'; 'Elaine Percevecz'; 'David Fathi'; 'Amy Fettig'; 'Kirstin Eidenbach'; Alison Hardy; 'Maya Abela'; 'skader@azdisabilitylaw.org'; 'Jennifer Onka'; Megan Lynch; Sarah Hopkins; 'Freouf, Delana (Perkins Coie)'; 'tsherman@azdisabilitylaw.org'; Rita Lomio |
| **Cc:** | 'Lucy Rand'; 'MacPherson, Scott (Scott.MacPherson@azag.gov)'; 'Parsons Team' |
| **Subject:** | RE: PARSONS - TUCSON TOUR PRODUCTION (ADCM1041217-1041488) |

Dear Richard and Tim,

Without waiving any objections once we are able to make a more detailed analysis of this production, based on our initial review, it appears that there were no responsive documents produced in response to the following requests:

# 1 (monitor worksheets for August and September CGARS);
# 8 (Daily Information Reports for medical units for prior 90 days);
#10 (list of prisoners vulnerable to heat injury due to taking psychotropic medication);
#11 (referrals of deficiencies identified in mortality reviews and psych autopsies & corrective action plans re: same); and,
#12 (SMI determination form reflecting the addition of 'intellectual disabilities').

We ask that you indicate in your forthcoming correspondence for each outstanding request: (a) when the document(s) will be produced, or (b) your affirmative statement that there are no responsive documents in ADC or Corizon's possession. We request that you provide this information no later than 10:00 am MST Tuesday so that we can inform Ms. Selzer about whether we need a conference with Judge Duncan before or after the mediation.

Thanks,

Corene

Corene Kendrick, Staff Attorney
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, CA 94710
510-280-2621
ckendrick@prisonlaw.com

---

**From:** Elaine Percevecz [mailto:EPercevecz@strucklove.com]
**Sent:** Monday, November 27, 2017 4:43 PM
**To:** David Fathi <dfathi@aclu.org>; Amy Fettig <afettig@aclu.org>; Kirstin Eidenbach <kirstin@eidenbachlaw.com>; Corene Kendrick <ckendrick@prisonlaw.com>; Alison Hardy (ahardy@prisonlaw.com) <ahardy@prisonlaw.com>; Maya Abela <mabela@azdisabilitylaw.org>; skader@azdisabilitylaw.org; Jennifer Onka <jonka@aclu.org>; Megan Lynch <megan@prisonlaw.com>; Sarah Hopkins (sarah@prisonlaw.com) <sarah@prisonlaw.com>; Freouf, Delana (Perkins Coie) <DFreouf@perkinscoie.com>; tsherman@azdisabilitylaw.org
**Cc:** Lucy Rand <Lucy.Rand@azag.gov>; MacPherson, Scott (Scott.MacPherson@azag.gov) <Scott.MacPherson@azag.gov>; Parsons Team <ParsonsTeam@strucklove.com>
**Subject:** PARSONS - TUCSON TOUR PRODUCTION (ADCM1041217-1041488)

Counsel:

Without waiving any objections, documents identified as responsive to various requests in Kirstin Eidenbach's November 14, 2017 letter regarding the Tucson tour have been sent to you through FirmShare.  Follow up correspondence regarding these requests is forthcoming from Richard Valenti.

Sincerely,

Elaine



Elaine Percevecz
Legal Assistant to Timothy J. Bojanowski

**STRUCK LOVE BOJANOWSKI & ACEDO, PLC**
3100 W. Ray Road | Suite 300 | Chandler AZ 85226
p: 480.420.1619 | epercevecz@strucklove.com | strucklove.com

This electronic mail transmission contains information from the law firm Struck Love Bojanowski & Acedo, PLC that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 420-1600. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

# EXHIBIT 13



STRUCK LOVE BOJANOWSKI & ACEDO, PLC

Richard M. Valenti
480.420.1615
rvalenti@strucklove.com

November 28, 2017

**_VIA EMAIL ONLY_**
Corene Kendrick
PRISON LAW OFFICE
General Delivery
San Quentin, CA  94964

      Re:    **_Parsons v. Ryan_**
              **November 2017 tour of ASPC-Tucson – Document Production**

Dear Corene:

Defendants respond to Kirstin Eidenbach's November 14, 2017 r equest for documents in preparation for the Tucson Complex tour as follows.

Defendants o bject t o t he timing o f th e P laintiffs' d ocument r equests. O n November 14 , Plaintiffs notified Defendants that they were planning to tour ASPC-Tucson from November 29 to December 1; included within that notice were 15 separate document requests. The time between the requests and the first day of the tour was approximately ten business days. Plaintiffs went a step further, how ever, and requested doc uments t o be pr oduced to P laintiffs n o la ter than November 22—*only* 5 business days from the initial request.

Both timeframes were unreasonable and neither are supported by the Stipulation. There is no requirement that Defendants provide these documents to Plaintiffs in advance of a tour. *See Dkt. 1185,* ¶¶ *29, 32.* In the future, Defendants expect Plaintiffs to provide Defendants with at least 30 days lead time for documents Plaintiffs are requesting.

Since the requests in Kirstin's letter pertain to the Tucson tour, Defendants have limited their response to Tucson records for the requests where Plaintiffs have not specified the Tucson Complex. To the extent Plaintiffs disagree with the scope of Defendants' production, Defendants object t o t he r equests t hat a re not l imited t o the T ucson C omplex a s ou tside t he s cope o f t he Tucson tour.

Corene Kendrick
November 28, 2017
Page 2

**Request No. 1:**
Without waiving objections, with regard to the inmates whose files were reviewed, the requested information is contained in the August and September 2017 CGARs for ASPC-Tucson, which Defendants produced on October 25 and November 27, 2017, respectively. *See ADCM1037882-1037936 (August), ADCM1041759-104818 (September)*. As for the monitor worksheets, without waiving objections, Defendants produced them on November 28, 2017. *See ADCM1041888-1042101.*

**Request No. 2:**
Without waiving objections, Defendants produced responsive documents on November 27, 2017. *See ADCM 1041454-1041458, 1041459-1041461.*

**Request No. 3:**
Defendants object to this request to the extent that "other documents sufficient to show compliance with" is vague, overbroad, and unduly burdensome. Without waiving objections, Defendants produced responsive documents on November 27, 2017. *See ADCM 1041225 - 1041230.*

**Request No. 4:**
Without waiving objections, Defendants produced responsive documents on November 27, 2017. *See ADCM 1041431-1041434, 1041435-1041438, and 1041439-1041441.*

**Request No. 5:**
Defendants object to this request because Performance Measure 11 does not encompass non-formulary medications. Without waiving objections, Defendants produced responsive documents on November 27, 2017. *See ADCM 1041327-1041430.*

**Request No. 6:**
Without waiving objections, Defendants produced responsive documents on November 27, 2017. *See ADCM1041282-1041326.*

**Request No. 7:**
Defendants object to this request because the information requested is not reasonably accessible since the data is maintained as dynamic data in a live database. In other words, to get information on inmates as of October 1, 2017, the information needed to be pulled from the database on October 1, 2017. Without waiving objections, Defendants produced responsive documents on November 27, 2017. *See ADCM1041231-1041281.*

**Request No. 8:**
Without waiving objections, Defendants produced responsive documents on November 28, 2017. *See ADCM 1042102-1042656.*

Corene Kendrick
November 28, 2017
Page 3

**Request No. 9:**
Without waiving objections, Defendants produced responsive documents on November 27, 2017. *See ADCM1041217-1041224 (Heat Intolerance Log)*. The Heat Intolerance Log does not contain inmates' housing location. However, Plaintiffs can access that information through e-OMIS.

**Request No. 10:**
ADC does not maintain such lists.

**Request No. 11:**
Defendants o bject t o t his r equest b ecause "all documents" is ov erbroad, va gue, a nd unduly burdensome. Defendants f urther o bject t o t his r equest as i t f ails t o s pecify a t imeframe. Defendants have previously advised Plaintiffs that any referrals or CAPS are contained within the mortality r eviews, t he p sychological a utopsies, or w ithin t he C QI M eeting M inutes. Without waiving obj ections, Defendants ha ve pr oduced CQI M eeting M inutes t hrough October 2017, which a re r esponsive t o t his request. *See A DCM1041462-1041468 (produced on N ovember 27, 2017).*

**Request No. 12:**
The document responsive t o t his r equest was pr eviously produced t o P laintiffs. *See ADCM1000972.*

**Request No. 13:**
Without waiving objections, Defendants produced responsive documents on November 27, 2017. *See ADCM1041442-1041453.*

**Request No. 14:**
Defendants obj ect t o t his r equest s ince " all c ommunications a nd m emorandums" i s va gue, overbroad, a nd undul y burdensome. Defendants a lso obj ect t o t his request because i t fails to specify a t imeframe. F inally, Defendants obj ect t o t his r equest a s du plicative o f P laintiffs' December 15, 2016 s upplemental request fo r "All d ocuments r eflecting, d iscussing, o r establishing p olicies an d/or p ractices related t o D efendants' ' open clinic co ncept' [ See D efs' Proposed A genda for 12/14/16 S tatus C onference] a nd d ocuments s ufficient t o s how i ts implementation a nd c ompliance w ith t he C ourt's N ov. 10, 2016 O rder." Without w aiving objections, Defendants pr oduced responsive doc uments on November 27, 2017 . *See ADCM1042657-1042676.*

Corene Kendrick
November 28, 2017
Page 4

**Request No. 15:**
Without waiving objections, Defendants produced responsive documents on November 27, 2017.
*See ADCM1041231-1041281.*

Sincerely,

Richard M. Valenti

RMV/eap

cc:     Counsel of Record

# EXHIBIT 14

# Eidenbach Law, P.L.L.C.

Kirstin T. Eidenbach, Attorney-at-law (AZ Bar No. 027341)

P.O. Box 91398 ● Tucson, AZ 85752 ● Phone:  520-477-1475
E-Mail:  kirstin@eidenbachlaw.com

**VIA EMAIL**

December 6, 2017

Dear Tim:

Below are the agreements reached during the mediation held before Judge Bade on November 28, 2017. Please let me know if you have any questions or changes.  The parties remain at an impasse regarding **PM 52** (Phoenix), 73 (Tucson), and 96 (Tucson).  The agreements detailed here do not waive Plaintiffs' right to file a Motion to Enforce based on substantial noncompliance.

Agreements reached regarding performance measures

The following additional information that Defendant agreed to provide, as detailed below, shall be included in Defendants' monthly filing with the Court prior to the December 20, 2017 Status Hearing.

**PM 19 (Eyman, Lewis, Perryville, Phoenix, and Tucson):**  Defendants will prepare a narrative description of the process depicted in the corresponding flow chart in Exhibit 3, and provide Plaintiffs and the Court the effective date of the remedial plan described in Exhibit 3.  Defendants agreed to design a training program on this **PM**, and start training at ASPC-Eyman, ASPC-Lewis, and ASPC-Phoenix within a month. Defendants agreed to provide a flow chart detailing how the med pass procedures differ from that provided in Exhibit 3 for maximum custody and close custody units, as well as which institutions and units are using the offline Medication Administration Record (**MAR**) system.  Finally, Defendants agreed to investigate the reasons underlying noncompliance at Eyman and Lewis.

**PM 44 (Winslow):**  Defendants will investigate (i) the cause of noncompliance; and (ii) whether the remedial plan included in Exhibit 3 is effective, particularly given that the plan has been in place since June 2017 and compliance numbers have continued to decline.  Defendants will update the remedial plan for health care staff, and Defendants also agreed to consider whether a separate corrective action plan may be necessary for custody staff.

**PM 48 (Tucson):**  Defendants will provide a narrative description of the process depicted in the corresponding flow chart in Exhibit 3.  Defendants will provide the effective date of the remedial plan described in Exhibit 3.  Defendants will note in their narrative and flow chart description of the process that it is the clinical coordinator who is responsible for placing patients on the provider line.

PM 50 (Tucson):  Defendants believe the remedial plan listed in Exhibit 3 was effective as of November 6, 2017 but will confirm this.  Defendants reported that the cause of noncompliance was Banner Hospital's decision to reduce services by specialists to the Arizona Department of Corrections by a certain percentage, and agreed to investigate and report the reasons for and the details of this decision.  Additionally, Defendants stated that according to the remedial plan, the clinical coordinator is supposed to contact Corizon regional headquarters to escalate an inability to identify a specialist for an urgent consult; Plaintiffs noted that the flow chart in Exhibit 3 showed that the escalation does not occur until Day 28, which is too late in the process to comply with the 30 day requirement.

PM 67 (Lewis): Defendants believe the remedial plan listed in Exhibit 3 was effective as of November 6, 2017 but will confirm this.  Defendants stated that the training of employees described in the plan was in August.

PM 95 (Tucson):  Defendants will correct the typographical error on number 5 to clarify the remedial plan. Defendants also agreed to investigate and report the process used when patients are transferred to a different institution after being taken off watch, and add this to the remedial plan.

PM 98 (Perryville):  Defendants agreed to review the remedial plan listed in Exhibit 3 and merge it with the process detailed in the Mental Health Services Technical Manual to ensure that the timelines set forth in the remedial plan are consistent with those contained in the Mental Health Services Technical Manual.

## Joint Motion for Clarification

The parties agreed to file a joint motion for clarification requesting that Judge Duncan provide definitive guidance on the definitional dispute over how to determine substantial noncompliance.  Judge Bade noted that the language of his past orders appear to contradict one another and the language of the Stipulation, and she encouraged the parties to file and seek a clarifying order.  She also proposed a structure a for such a filing, as detailed below, and that the parties file the joint motion by the middle of January.

1. The parties will prepare a joint prefatory statement to precede the parties' separate arguments/ position statement.  Plaintiffs will provide an initial draft of this prefatory statement to Defendants by January 10, 2018.  Defendants will provide Plaintiffs with any requested changes by 5:00 p.m. on January 17, 2018.  The prefatory statement will be finalized by January 22, 2018.

2. The parties will each prepare a position statement to be exchanged simultaneously by 5:00 p.m. on January 10, 2018.  Each party will then have until 5:00 pm January 17, 2018 to include responsive



information in their position statement.  The parties will provide final position statements by 5:00 p.m. on January 22, 2018.  Both position statements will be incorporated into a single document.

3.  The parties will agree to a single set of exhibits.  This set of exhibits will include the Stipulation, all relevant Court orders at issue, relevant hearing transcripts, and statistical information regarding the scores of the disputed Performance Measures.  The parties will exchange initial sets of exhibits on January 10, 2018.  This set of exhibits will be verified and de-duplicated by January 22, 2018.

4.  The joint motion will be filed on January 24, 2018.

Please let me know if any of this does not comport with your notes from the mediation.

Sincerely,

*Kirstin Eidenbach*

Kirstin Eidenbach
Attorney/Director

# EXHIBIT 15

**Arizona Monthly Staffing Report**
**Roll-Up**
*(Excludes Regional Office)*
**September 2017**

Working Days = 21

| Position | Total Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Contract Breakdown Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| Medical Director | 10.00 | 5.55 | 56% | 5.84 | - | - | - | 5.84 | 58% |
| Staff Physician | 14.00 | 7.60 | 54% | 4.87 | - | - | 1.71 | 6.58 | 47% |
| Administrator | 10.00 | 12.00 | 120% | 11.73 | - | - | - | 11.73 | 117% |
| Correctional RN Supervisor II / DON | 10.00 | 9.00 | 90% | 9.86 | - | - | - | 9.86 | 99% |
| Asst. Correctional RN Supervisor II / ADON | 3.00 | 35.00 | 1167% | 31.72 | - | 0.12 | - | 31.85 | 1062% |
| Administrative Services Officer | 7.00 | 7.00 | 100% | 6.08 | - | - | - | 6.08 | 87% |
| Nurse Practitioner | 26.00 | 29.35 | 113% | 28.57 | - | 0.23 | 1.17 | 29.97 | 115% |
| Correctional RN Supervisor I | 34.00 | 1.00 | 3% | 1.02 | - | - | - | 1.02 | 3% |
| RN | 178.90 | 181.85 | 102% | 194.68 | - | 19.11 | 1.08 | 214.87 | 120% |
| LPN | 156.60 | 146.65 | 94% | 153.66 | - | 20.15 | - | 173.81 | 111% |
| Nursing Assistant | 94.50 | 107.40 | 114% | 108.91 | - | 7.33 | - | 116.24 | 123% |
| Lab Technician | 2.00 | 3.00 | 150% | 2.75 | - | 0.74 | - | 3.48 | 174% |
| X Ray Tech | 8.50 | 7.00 | 82% | 5.94 | - | 0.69 | - | 6.63 | 78% |
| Pharmacy Tech | 23.50 | 26.00 | 111% | 21.20 | - | 0.84 | - | 22.03 | 94% |
| Secretary / Administrative Assistant | 21.00 | 18.80 | 90% | 12.99 | - | 0.15 | - | 13.14 | 63% |
| Med Records Supervisor | 10.00 | 9.00 | 90% | 9.00 | - | 0.03 | - | 9.02 | 90% |
| Med Records Clerk | 32.00 | 30.50 | 95% | 29.37 | - | 0.87 | - | 30.23 | 94% |
| Scheduler | 9.00 | 8.50 | 94% | 9.41 | - | 1.21 | - | 10.62 | 118% |
| Clinical Coordinator | 8.00 | 7.00 | 88% | 3.64 | - | 0.56 | - | 4.21 | 53% |
| Dental Director | 10.00 | 7.50 | 75% | 6.68 | - | - | - | 6.68 | 67% |
| Dentist | 20.00 | 18.26 | 91% | 13.01 | - | - | - | 13.01 | 65% |
| Dental Hygienist | 1.80 | 2.10 | 117% | 1.93 | - | - | - | 1.93 | 107% |
| Dental Assistant | 43.00 | 41.00 | 95% | 31.95 | - | - | - | 31.95 | 74% |
| Psychiatric Director | 0.50 | 0.50 | 100% | 0.50 | - | - | - | 0.50 | 100% |
| Psychiatrist | 7.50 | 6.00 | 80% | 5.97 | - | - | - | 5.97 | 80% |
| Psychologist | 19.00 | 15.55 | 82% | 11.27 | - | - | 2.18 | 13.46 | 71% |
| MH Director (PH.D) | 1.00 | 1.00 | 100% | 0.23 | - | - | - | 0.23 | 23% |
| MH Clerk | 4.00 | 5.00 | 125% | 4.01 | - | 0.02 | - | 4.03 | 101% |
| MH Nurse Practitioner | 11.50 | 10.70 | 93% | 9.57 | - | - | 0.98 | 10.55 | 92% |
| MH RN | 36.40 | 32.80 | 90% | 31.36 | - | 1.67 | - | 33.03 | 91% |
| Rec Therapist | 5.00 | 1.00 | 20% | 0.95 | - | - | - | 0.95 | 19% |
| Psych Associates | 52.40 | 53.60 | 102% | 44.57 | - | - | - | 44.57 | 85% |
| Psych Tech | 25.40 | 22.60 | 89% | 22.85 | - | 0.43 | - | 23.27 | 92% |
| MH RN Supervisor | 1.00 | - | 0% | - | - | - | - | - | 0% |
| Regional Director | - | - | 0% | - | - | - | - | - | 0% |
| **Total Contract** | **896.50** | **869.81** | **97%** | **836.10** | **-** | **54.14** | **7.12** | **897.36** | **100%** |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    PARSONS v. RYAN, USDC CV12-00601: ADCM1036881

**Arizona Monthly Staffing Report**
**Douglas Region**

**September 2017**

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| Medical Director | 1.00 | - | 0% | 0.10 | - | - | - | 0.10 | 10% |
| Administrator | 1.00 | 1.00 | 100% | 0.68 | - | - | - | 0.68 | 68% |
| Correctional RN Supervisor II / DON | 1.00 | 1.00 | 100% | 0.94 | - | - | - | 0.94 | 94% |
| Nurse Practitioner | 1.00 | 1.00 | 100% | 1.05 | - | - | - | 1.05 | 105% |
| Correctional RN Supervisor I | 1.00 | 1.00 | 100% | 1.02 | - | - | - | 1.02 | 102% |
| RN | 8.60 | 9.20 | 107% | 9.52 | - | 0.47 | - | 9.99 | 116% |
| LPN | 3.90 | 3.00 | 77% | 2.61 | - | 0.09 | - | 2.70 | 69% |
| Nursing Assistant | 3.40 | 3.00 | 88% | 1.72 | - | 0.01 | - | 1.73 | 51% |
| X Ray Tech | 0.50 | - | 0% | - | - | - | - | - | 0% |
| Secretary / Administrative Assistant | 2.00 | 2.00 | 100% | 0.85 | - | 0.02 | - | 0.87 | 43% |
| Med Records Supervisor | 1.00 | 1.00 | 100% | 1.77 | - | 0.03 | - | 1.79 | 179% |
| Med Records Clerk | 1.50 | 1.50 | 100% | 2.42 | - | 0.04 | - | 2.45 | 164% |
| Clinical Coordinator | - | 1.00 | 0% | 0.48 | - | 0.01 | - | 0.48 | 0% |
| Dental Director | 1.00 | - | 0% | 0.65 | - | - | - | 0.65 | 65% |
| Dentist | 1.00 | 2.01 | 201% | 0.99 | - | - | - | 0.99 | 99% |
| Dental Hygienist | 0.20 | 0.25 | 125% | 0.22 | - | - | - | 0.22 | 109% |
| Dental Assistant | 3.00 | 3.00 | 100% | 2.58 | - | - | - | 2.58 | 86% |
| Psych Associates | 1.00 | 1.00 | 100% | 0.78 | - | - | - | 0.78 | 78% |
| Total Contract | 32.10 | 30.96 | 96% | 28.37 | - | 0.65 | - | 29.03 | 90% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**Arizona Monthly Staffing Report**

**Eyman Region**

**September 2017**

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Contract Breakdown | | | | | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | |
| Medical Director | 1.00 | 1.00 | 100% | 1.14 | - | - | - | 1.14 | 114% |
| Staff Physician | 1.00 | 1.60 | 160% | 0.57 | - | - | 0.71 | 1.28 | 128% |
| Administrator | 1.00 | 1.00 | 100% | 1.28 | - | - | - | 1.28 | 128% |
| Correctional RN Supervisor II / DON | 1.00 | 1.00 | 100% | 1.22 | - | - | - | 1.22 | 122% |
| Asst. Correctional RN Supervisor II | - | 3.00 | 0% | 2.11 | - | - | - | 2.11 | 0% |
| Administrative Services Officer | 1.00 | 1.00 | 100% | 0.47 | - | - | - | 0.47 | 47% |
| Nurse Practitioner | 3.00 | 2.80 | 93% | 2.36 | - | 0.16 | 0.11 | 2.63 | 88% |
| Correctional RN Supervisor I | 5.00 | - | 0% | - | - | - | - | - | 0% |
| RN | 20.60 | 22.95 | 111% | 23.49 | - | 1.92 | 1.01 | 26.42 | 128% |
| LPN | 23.20 | 21.00 | 91% | 22.82 | - | 3.46 | - | 26.29 | 113% |
| Nursing Assistant | 10.80 | 8.60 | 80% | 8.09 | - | 0.59 | - | 8.68 | 80% |
| X Ray Tech | 1.00 | 1.00 | 100% | 0.95 | - | 0.29 | - | 1.24 | 124% |
| Pharmacy Tech | 3.00 | 3.00 | 100% | 1.67 | - | - | - | 1.67 | 56% |
| Secretary / Administrative Assistant | 2.00 | 2.00 | 100% | 0.84 | - | 0.01 | - | 0.85 | 43% |
| Med Records Supervisor | 1.00 | 1.00 | 100% | 0.96 | - | - | - | 0.96 | 96% |
| Med Records Clerk | 6.00 | 5.00 | 83% | 5.79 | - | 0.66 | - | 6.45 | 107% |
| Scheduler | 1.00 | 2.00 | 200% | 2.82 | - | 0.93 | - | 3.75 | 375% |
| Clinical Coordinator | 1.00 | - | 0% | 0.48 | - | 0.37 | - | 0.85 | 85% |
| Dental Director | 1.00 | 1.00 | 100% | 0.91 | - | - | - | 0.91 | 91% |
| Dentist | 2.50 | 2.25 | 90% | 1.49 | - | - | - | 1.49 | 60% |
| Dental Hygienist | 0.20 | - | 0% | 0.10 | - | - | - | 0.10 | 48% |
| Dental Assistant | 5.00 | 5.00 | 100% | 4.43 | - | - | - | 4.43 | 89% |
| Psychiatrist | 1.00 | 1.00 | 100% | 1.04 | - | - | - | 1.04 | 104% |
| Psychologist | 4.00 | 3.00 | 75% | 2.60 | - | - | - | 2.60 | 65% |
| MH Clerk | 1.00 | 2.00 | 200% | 1.78 | - | 0.02 | - | 1.80 | 180% |
| MH Nurse Practitioner | 2.00 | 1.50 | 75% | 1.24 | - | - | 0.98 | 2.22 | 111% |
| MH RN | 3.00 | 2.60 | 87% | 2.78 | - | 0.04 | - | 2.82 | 94% |
| Psych Associates | 9.00 | 8.00 | 89% | 6.80 | - | - | - | 6.80 | 76% |
| Psych Tech | 5.10 | 5.00 | 98% | 4.62 | - | 0.23 | - | 4.85 | 95% |
| | | | | | | | | | |
| Total Contract | 116.40 | 109.30 | 94% | 104.85 | 0.00 | 8.68 | 2.81 | 116.34 | 100% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                PARSONS v. RYAN, USDC CV12-00601: ADCM1036883

**Arizona Monthly Staffing Report**

**Florence Region**

**September 2017**

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| Medical Director | 1.00 | - | 0% | 0.07 | - | - | - | 0.07 | 7% |
| Staff Physician | 2.50 | 1.00 | 40% | 0.49 | - | - | - | 0.49 | 20% |
| Administrator | 1.00 | 2.00 | 200% | 2.14 | - | - | - | 2.14 | 214% |
| Correctional RN Supervisor II / DON | 1.00 | 1.00 | 100% | 1.11 | - | - | - | 1.11 | 111% |
| Asst. Correctional RN Supervisor II | 1.00 | 6.00 | 600% | 4.56 | - | - | - | 4.56 | 456% |
| Administrative Services Officer | 1.00 | 1.00 | 100% | 0.97 | - | - | - | 0.97 | 97% |
| Nurse Practitioner | 2.00 | 3.00 | 150% | 2.57 | - | - | 1.06 | 3.63 | 182% |
| Correctional RN Supervisor I | 5.00 | - | 0% | - | - | - | - | - | 0% |
| RN | 16.40 | 22.70 | 138% | 26.64 | - | 3.92 | - | 30.56 | 186% |
| LPN | 24.40 | 24.60 | 101% | 25.99 | - | 4.66 | - | 30.65 | 126% |
| Nursing Assistant | 15.40 | 15.50 | 101% | 15.27 | - | 2.29 | - | 17.57 | 114% |
| X Ray Tech | 1.00 | 1.00 | 100% | - | - | - | - | - | 0% |
| Pharmacy Tech | 3.00 | 3.00 | 100% | 3.18 | - | 0.10 | - | 3.28 | 109% |
| Secretary / Administrative Assistant | 2.00 | 2.00 | 100% | 1.85 | - | 0.01 | - | 1.85 | 93% |
| Med Records Supervisor | 1.00 | 1.00 | 100% | 1.14 | - | - | - | 1.14 | 114% |
| Med Records Clerk | 5.00 | 4.00 | 80% | 4.10 | - | - | - | 4.10 | 82% |
| Scheduler | 1.00 | 2.00 | 200% | 1.73 | - | 0.03 | - | 1.76 | 176% |
| Clinical Coordinator | 1.00 | 1.00 | 100% | - | - | - | - | - | 0% |
| Dental Director | 1.00 | 1.00 | 100% | 0.89 | - | - | - | 0.89 | 89% |
| Dentist | 3.00 | 1.50 | 50% | 1.71 | - | - | - | 1.71 | 57% |
| Dental Hygienist | 0.20 | 0.20 | 100% | 0.14 | - | - | - | 0.14 | 71% |
| Dental Assistant | 5.00 | 5.00 | 100% | 3.39 | - | - | - | 3.39 | 68% |
| Psychiatrist | 1.00 | 1.00 | 100% | 0.85 | - | - | - | 0.85 | 85% |
| Psychologist | 2.00 | 1.80 | 90% | 1.83 | - | - | - | 1.83 | 91% |
| MH Clerk | 1.00 | 1.00 | 100% | 0.95 | - | - | - | 0.95 | 95% |
| MH Nurse Practitioner | 2.00 | 2.00 | 100% | 1.90 | - | - | - | 1.90 | 95% |
| MH RN | 2.00 | 2.00 | 100% | 1.86 | - | 0.11 | - | 1.96 | 98% |
| Psych Associates | 6.50 | 7.00 | 108% | 6.82 | - | - | - | 6.82 | 105% |
| Psych Tech | 4.10 | 4.20 | 102% | 2.89 | - | 0.03 | - | 2.93 | 71% |
| | | | 0% | - | - | - | - | - | 0% |
| Total Contract | 112.50 | 117.50 | 104% | 115.04 | - | 11.15 | 1.06 | 127.26 | 113% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**            **PARSONS v. RYAN, USDC CV12-00601: ADCM1036884**

**Arizona Monthly Staffing Report**

**Lewis Region**

**September 2017**

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Contract Breakdown | | | | | |
| Medical Director | 1.00 | - | 0% | 0.33 | - | - | - | 0.33 | 33% |
| Staff Physician | 2.50 | 1.00 | 40% | 0.49 | - | - | 1.00 | 1.49 | 60% |
| Administrator | 1.00 | 1.00 | 100% | 1.19 | - | - | - | 1.19 | 119% |
| Correctional RN Supervisor II / DON | 1.00 | - | 0% | 0.55 | - | - | - | 0.55 | 55% |
| Asst. Correctional RN Supervisor II | - | 5.00 | 0% | 4.84 | - | 0.06 | - | 4.89 | 0% |
| Administrative Services Officer | 1.00 | 1.00 | 100% | 1.25 | - | - | - | 1.25 | 125% |
| Nurse Practitioner | 3.00 | 5.00 | 167% | 5.58 | - | - | - | 5.58 | 186% |
| Correctional RN Supervisor I | 3.00 | - | 0% | - | - | - | - | - | 0% |
| RN | 21.80 | 27.85 | 128% | 28.97 | - | 3.15 | 0.07 | 32.20 | 148% |
| LPN | 21.10 | 23.00 | 109% | 28.06 | - | 2.26 | - | 30.32 | 144% |
| Nursing Assistant | 13.90 | 13.00 | 94% | 12.10 | - | 0.83 | - | 12.92 | 93% |
| X Ray Tech | 1.00 | 1.00 | 100% | 0.94 | - | 0.05 | - | 0.99 | 99% |
| Pharmacy Tech | 3.00 | 4.00 | 133% | 2.96 | - | 0.14 | - | 3.11 | 104% |
| Secretary / Administrative Assistant | 2.00 | 2.00 | 100% | 0.96 | - | 0.02 | - | 0.97 | 49% |
| Med Records Supervisor | 1.00 | 1.00 | 100% | 0.57 | - | - | - | 0.57 | 57% |
| Med Records Clerk | 3.00 | 3.00 | 100% | 2.89 | - | 0.00 | - | 2.90 | 97% |
| Scheduler | 1.00 | 1.00 | 100% | 0.88 | - | 0.00 | - | 0.88 | 88% |
| Clinical Coordinator | 1.00 | 1.00 | 100% | 0.87 | - | - | - | 0.87 | 87% |
| Dental Director | 1.00 | 0.25 | 25% | - | - | - | - | - | 0% |
| Dentist | 3.00 | 3.00 | 100% | 2.62 | - | - | - | 2.62 | 87% |
| Dental Hygienist | 0.20 | 0.25 | 125% | 0.19 | - | - | - | 0.19 | 97% |
| Dental Assistant | 5.00 | 5.00 | 100% | 4.06 | - | - | - | 4.06 | 81% |
| Psychiatrist | 1.00 | 1.00 | 100% | 1.10 | - | - | - | 1.10 | 110% |
| Psychologist | 3.00 | 2.00 | 67% | 1.99 | - | - | 0.05 | 2.04 | 68% |
| MH Nurse Practitioner | 2.00 | 1.00 | 50% | 0.60 | - | - | - | 0.60 | 30% |
| MH RN | 2.00 | 2.00 | 100% | 2.00 | - | 0.00 | - | 2.00 | 100% |
| Psych Associates | 7.00 | 5.50 | 79% | 6.05 | - | - | - | 6.05 | 86% |
| Psych Tech | 1.00 | 4.20 | 420% | 3.72 | - | 0.05 | - | 3.77 | 377% |
| Total Contract | 106.50 | 114.05 | 107% | 115.75 | 0.00 | 6.56 | 1.11 | 123.42 | 116% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                    PARSONS v. RYAN, USDC CV12-00601: ADCM1036885

**Arizona Monthly Staffing Report**

**Perryville Region**

**September 2017**

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Contract Breakdown Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| Medical Director | 1.00 | 0.80 | 80% | 0.60 | - | - | - | 0.60 | 60% |
| Staff Physician | 2.50 | 2.00 | 80% | 1.89 | - | - | - | 1.89 | 75% |
| Administrator | 1.00 | 1.00 | 100% | 1.12 | - | - | - | 1.12 | 112% |
| Correctional RN Supervisor II / DON | 1.00 | 1.00 | 100% | 1.00 | - | - | - | 1.00 | 100% |
| Asst. Correctional RN Supervisor II | 1.00 | 4.00 | 400% | 3.58 | - | - | - | 3.58 | 358% |
| Administrative Services Officer | 1.00 | 1.00 | 100% | 0.75 | - | - | - | 0.75 | 75% |
| Nurse Practitioner | 5.00 | 5.55 | 111% | 5.28 | - | - | - | 5.28 | 106% |
| Correctional RN Supervisor I | 5.00 | - | 0% | - | - | - | - | - | 0% |
| RN | 22.70 | 23.50 | 104% | 24.06 | - | 4.23 | - | 28.29 | 125% |
| LPN | 21.10 | 24.60 | 117% | 21.90 | - | 3.08 | - | 24.98 | 118% |
| Nursing Assistant | 11.80 | 14.40 | 122% | 14.40 | - | 1.21 | - | 15.61 | 132% |
| Lab Technician | 1.00 | 2.00 | 200% | 1.80 | - | 0.09 | - | 1.88 | 188% |
| X Ray Tech | 1.00 | 1.00 | 100% | 0.87 | - | 0.00 | - | 0.87 | 87% |
| Pharmacy Tech | 4.50 | 4.00 | 89% | 3.62 | - | 0.03 | - | 3.64 | 81% |
| Secretary / Administrative Assistant | 2.00 | 2.00 | 100% | 1.50 | - | - | - | 1.50 | 75% |
| Med Records Supervisor | 1.00 | 1.00 | 100% | 0.92 | - | - | - | 0.92 | 92% |
| Med Records Clerk | 3.00 | 3.00 | 100% | 2.64 | - | 0.01 | - | 2.65 | 88% |
| Scheduler | 2.00 | 1.50 | 75% | 1.28 | - | 0.02 | - | 1.30 | 65% |
| Clinical Coordinator | 1.00 | 1.00 | 100% | - | - | - | - | - | 0% |
| Dental Director | 1.00 | 1.00 | 100% | 0.85 | - | - | - | 0.85 | 85% |
| Dentist | 2.50 | 4.000 | 160% | 1.92 | - | - | - | 1.92 | 77% |
| Dental Hygienist | 0.20 | 0.20 | 100% | 0.18 | - | - | - | 0.18 | 88% |
| Dental Assistant | 6.00 | 7.00 | 117% | 4.55 | - | - | - | 4.55 | 76% |
| Psychiatrist | 1.00 | 1.00 | 100% | 1.01 | - | - | - | 1.01 | 101% |
| Psychologist | 3.00 | 2.85 | 95% | 1.28 | - | - | 0.53 | 1.81 | 60% |
| MH Director (PH.D) | - | | 0% | - | - | - | - | - | 0% |
| MH Clerk | 1.00 | 1.00 | 100% | 0.95 | - | 0.01 | - | 0.96 | 96% |
| MH Nurse Practitioner | 2.00 | 1.20 | 60% | 1.18 | - | - | - | 1.18 | 59% |
| MH RN | 2.00 | 2.00 | 100% | 1.86 | - | 0.00 | - | 1.86 | 93% |
| Rec Therapist | 1.00 | - | 0% | - | - | - | - | - | 0% |
| Psych Associates | 6.50 | 6.00 | 92% | 5.32 | - | - | - | 5.32 | 82% |
| Psych Tech | 3.10 | 3.20 | 103% | 2.30 | - | 0.03 | - | 2.33 | 75% |
| | | | | | | | | | |
| Total Contract | 117.90 | 122.80 | 104% | 108.59 | 0.00 | 8.71 | 0.53 | 117.83 | 100% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                    **PARSONS v. RYAN, USDC CV12-00601: ADCM1036886**

**Arizona Monthly Staffing Report**

**Phoenix Region**

**September 2017**

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Contract Breakdown | | | | | |
| Medical Director | 1.00 | 1.00 | 100% | 1.28 | - | - | - | 1.28 | 128% |
| Staff Physician | 1.00 | 1.00 | 100% | - | - | - | - | - | 0% |
| Administrator | 1.00 | 1.00 | 100% | 1.12 | - | - | - | 1.12 | 112% |
| Correctional RN Supervisor II / DON | 1.00 | 1.00 | 100% | 1.10 | - | - | - | 1.10 | 110% |
| Asst. Correctional RN Supervisor II | - | 1.00 | 0% | 1.51 | - | - | - | 1.51 | 0% |
| Administrative Services Officer | 1.00 | 1.00 | 100% | 0.83 | - | - | - | 0.83 | 83% |
| Nurse Practitioner | 4.00 | 4.00 | 100% | 4.25 | - | - | - | 4.25 | 106% |
| Correctional RN Supervisor I | 1.00 | - | 0% | - | - | - | - | - | 0% |
| RN | 12.40 | 11.50 | 93% | 11.53 | - | 1.20 | - | 12.73 | 103% |
| LPN | 4.20 | 4.30 | 102% | 3.59 | - | 1.02 | - | 4.61 | 110% |
| Nursing Assistant | 2.00 | 2.00 | 100% | 1.84 | - | 0.34 | - | 2.18 | 109% |
| Lab Technician | 1.00 | 1.00 | 100% | 0.95 | - | 0.65 | - | 1.60 | 160% |
| X Ray Tech | 1.00 | 1.00 | 100% | 0.88 | - | - | - | 0.88 | 88% |
| Pharmacy Tech | 3.00 | 3.00 | 100% | 1.86 | - | 0.17 | - | 2.03 | 68% |
| Secretary / Administrative Assistant | 3.00 | 2.00 | 67% | 0.86 | - | 0.05 | - | 0.90 | 30% |
| Med Records Supervisor | 1.00 | 1.00 | 100% | 1.08 | - | - | - | 1.08 | 108% |
| Med Records Clerk | 4.00 | 3.00 | 75% | 2.90 | - | 0.14 | - | 3.04 | 76% |
| Scheduler | 1.00 | - | 0% | - | - | - | - | - | 0% |
| Clinical Coordinator | 1.00 | - | 0% | 0.94 | - | 0.17 | - | 1.11 | 111% |
| Dental Director | 1.00 | 1.00 | 100% | 0.54 | - | - | - | 0.54 | 54% |
| Dental Assistant | 2.00 | 2.00 | 100% | 1.94 | - | - | - | 1.94 | 97% |
| Psychiatric Director | 0.50 | 0.50 | 100% | 0.50 | - | - | - | 0.50 | 100% |
| Psychiatrist | 1.50 | 1.00 | 67% | 0.30 | - | - | - | 0.30 | 20% |
| Psychologist | 3.00 | 2.50 | 83% | 1.14 | - | - | 1.54 | 2.67 | 89% |
| MH Director (PH.D) | 1.00 | 1.00 | 100% | 0.23 | - | - | - | 0.23 | 23% |
| MH Nurse Practitioner | 1.00 | 1.00 | 100% | 0.92 | - | - | - | 0.92 | 92% |
| MH RN | 22.40 | 21.20 | 95% | 20.51 | - | 1.51 | - | 22.03 | 98% |
| Rec Therapist | 2.00 | 1.00 | 50% | 0.95 | - | - | - | 0.95 | 48% |
| Psych Associates | 6.40 | 6.50 | 102% | 5.52 | - | - | - | 5.52 | 86% |
| Psych Tech | 12.10 | 6.00 | 50% | 5.57 | - | 0.06 | - | 5.63 | 47% |
| MH RN Supervisor | 1.00 | - | 0% | - | - | - | - | - | 0% |
| | - | | | | | | | | |
| Total Contract | 97.50 | 82.50 | 85% | 74.64 | 0.00 | 5.32 | 1.54 | 81.49 | 84% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                    PARSONS v. RYAN, USDC CV12-00601: ADCM1036887

**Arizona Monthly Staffing Report**
**Safford Region**

**September 2017**

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Contract Breakdown | | | | | |
| Medical Director | 1.00 | 0.75 | 75% | 0.07 | - | - | - | 0.07 | 7% |
| Administrator | 1.00 | 1.00 | 100% | 0.65 | - | - | - | 0.65 | 65% |
| Correctional RN Supervisor II / DON | 1.00 | 1.00 | 100% | 0.86 | - | - | - | 0.86 | 86% |
| Asst. Correctional RN Supervisor II | - | 2.00 | 0% | 1.68 | - | - | - | 1.68 | 0% |
| Nurse Practitioner | 1.00 | 1.00 | 100% | 0.84 | - | - | - | 0.84 | 84% |
| Correctional RN Supervisor I | 2.00 | - | 0% | - | - | - | - | - | 0% |
| RN | 9.80 | 10.80 | 110% | 13.55 | - | 0.25 | - | 13.80 | 141% |
| LPN | 6.10 | 2.00 | 33% | 2.40 | - | 0.03 | - | 2.43 | 40% |
| Nursing Assistant | 2.80 | 4.00 | 143% | 3.42 | - | 0.06 | - | 3.48 | 124% |
| X Ray Tech | 0.50 | - | 0% | - | - | - | - | - | 0% |
| Secretary / Administrative Assistant | 2.00 | 1.00 | 50% | 0.90 | - | 0.00 | - | 0.90 | 45% |
| Med Records Supervisor | 1.00 | 1.00 | 100% | 0.76 | - | - | - | 0.76 | 76% |
| Med Records Clerk | 0.50 | 1.00 | 200% | 0.34 | - | - | - | 0.34 | 67% |
| Dental Director | 1.00 | 1.00 | 100% | 0.90 | - | - | - | 0.90 | 90% |
| Dental Hygienist | 0.20 | 1.00 | 500% | 0.72 | - | - | - | 0.72 | 362% |
| Dental Assistant | 2.00 | 1.00 | 50% | 0.90 | - | - | - | 0.90 | 45% |
| Psych Associates | 1.00 | 1.00 | 100% | 0.89 | - | - | - | 0.89 | 89% |
| Total Contract | 32.90 | 29.55 | 90% | 28.89 | - | 0.35 | - | 29.24 | 89% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                    **PARSONS v. RYAN, USDC CV12-00601: ADCM1036888**

# Arizona Monthly Staffing Report

## Tucson Region

### September 2017

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Contract Breakdown | | | | | |
| Medical Director | 1.00 | 1.00 | 100% | 0.95 | - | - | - | 0.95 | 95% |
| Staff Physician | 3.50 | - | 0% | 0.59 | - | - | - | 0.59 | 17% |
| Administrator | 1.00 | 2.00 | 200% | 1.70 | - | - | - | 1.70 | 170% |
| Correctional RN Supervisor II / DON | 1.00 | 1.00 | 100% | 1.17 | - | - | - | 1.17 | 117% |
| Asst. Correctional RN Supervisor II | 1.00 | 8.00 | 800% | 6.47 | - | 0.07 | - | 6.54 | 654% |
| Administrative Services Officer | 1.00 | 1.00 | 100% | 1.04 | - | - | - | 1.04 | 104% |
| Nurse Practitioner | 3.00 | 5.00 | 167% | 4.38 | - | 0.07 | - | 4.45 | 148% |
| Correctional RN Supervisor I | 6.00 | - | 0% | - | - | - | - | - | 0% |
| RN | 39.10 | 26.50 | 68% | 28.61 | - | 2.27 | - | 30.88 | 79% |
| LPN | 35.90 | 36.40 | 101% | 39.46 | - | 4.57 | - | 44.02 | 123% |
| Nursing Assistant | 22.00 | 34.20 | 155% | 32.01 | - | 1.53 | - | 33.53 | 152% |
| X Ray Tech | 1.00 | 1.00 | 100% | 0.90 | - | 0.02 | - | 0.93 | 93% |
| Pharmacy Tech | 4.00 | 5.00 | 125% | 4.33 | - | 0.00 | - | 4.34 | 108% |
| Secretary / Administrative Assistant | 2.00 | 2.00 | 100% | 1.81 | - | 0.02 | - | 1.83 | 92% |
| Med Records Supervisor | 1.00 | 1.00 | 100% | 1.06 | - | - | - | 1.06 | 106% |
| Med Records Clerk | 6.00 | 7.00 | 117% | 6.40 | - | 0.01 | - | 6.41 | 107% |
| Scheduler | 1.00 | 1.00 | 100% | - | - | - | - | - | 0% |
| Clinical Coordinator | 1.00 | 1.00 | 100% | - | - | - | - | - | 0% |
| Dental Director | 1.00 | 1.25 | 125% | 0.89 | - | - | - | 0.89 | 89% |
| Dentist | 4.00 | 2.00 | 50% | 1.83 | - | - | - | 1.83 | 46% |
| Dental Hygienist | 0.20 | 0.20 | 100% | 0.38 | - | - | - | 0.38 | 190% |
| Dental Assistant | 6.00 | 6.00 | 100% | 5.16 | - | - | - | 5.16 | 86% |
| Psychiatrist | 2.00 | 1.00 | 50% | 0.95 | - | - | - | 0.95 | 48% |
| Psychologist | 4.00 | 3.40 | 85% | 2.44 | - | - | 0.07 | 2.51 | 63% |
| MH Clerk | 1.00 | 1.00 | 100% | 0.32 | - | - | - | 0.32 | 32% |
| MH Nurse Practitioner | 1.50 | 3.00 | 200% | 2.70 | - | - | - | 2.70 | 180% |
| MH RN | 4.00 | 2.00 | 50% | 1.89 | - | - | - | 1.89 | 47% |
| Rec Therapist | 2.00 | - | 0% | - | - | - | - | - | 0% |
| Psych Associates | 10.00 | 12.20 | 122% | 7.93 | - | - | - | 7.93 | 79% |
| Total Contract | 166.20 | 165.15 | 99% | 159.13 | 0.00 | 8.59 | 0.07 | 167.79 | 101% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                    **PARSONS v. RYAN, USDC CV12-00601: ADCM1036889**

# Arizona Monthly Staffing Report
## Winslow Region

**September 2017**

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| Medical Director | 1.00 | - | 0% | 0.47 | - | - | - | 0.47 | 47% |
| Administrator | 1.00 | 1.00 | 100% | 0.99 | - | - | - | 0.99 | 99% |
| Correctional RN Supervisor II / DON | 1.00 | 1.00 | 100% | 1.05 | - | - | - | 1.05 | 105% |
| Asst. Correctional RN Supervisor II | - | 2.00 | 0% | 1.90 | - | - | - | 1.90 | 0% |
| Administrative Services Officer | - | - | 0% | - | - | - | - | - | 0% |
| Nurse Practitioner | 1.00 | - | 0% | 0.31 | - | - | - | 0.31 | 31% |
| Correctional RN Supervisor I | 2.00 | - | 0% | - | - | - | - | - | 0% |
| RN | 11.80 | 12.30 | 104% | 14.22 | - | 0.57 | - | 14.78 | 125% |
| LPN | 5.20 | - | 0% | - | - | - | - | - | 0% |
| Nursing Assistant | 4.00 | 3.90 | 98% | 5.43 | - | 0.04 | - | 5.46 | 137% |
| Lab Technician | - | - | 0% | - | - | - | - | - | 0% |
| X Ray Tech | 0.50 | - | 0% | 0.42 | - | - | - | 0.42 | 85% |
| Pharmacy Tech | 1.00 | 1.00 | 100% | 0.92 | - | - | - | 0.92 | 92% |
| Secretary / Administrative Assistant | 2.00 | 2.00 | 100% | 1.81 | - | 0.01 | - | 1.81 | 91% |
| Med Records Supervisor | 1.00 | - | 0% | 0.23 | - | - | - | 0.23 | 23% |
| Med Records Clerk | - | - | 0% | - | - | - | - | - | 0% |
| Scheduler | 1.00 | 1.00 | 100% | 0.95 | - | 0.01 | - | 0.97 | 97% |
| Clinical Coordinator | 1.00 | 1.00 | 100% | 0.88 | - | 0.02 | - | 0.90 | 90% |
| Dental Director | 1.00 | 1.00 | 100% | 1.06 | - | - | - | 1.06 | 106% |
| Dentist | 1.00 | - | 0% | - | - | - | - | - | 0% |
| Dental Hygienist | 0.20 | - | 0% | - | - | - | - | - | 0% |
| Dental Assistant | 3.00 | 1.00 | 33% | 0.84 | - | - | - | 0.84 | 28% |
| Psych Associates | 1.00 | - | 0% | - | - | - | - | - | 0% |
| **Total Contract** | 39.70 | 27.20 | 69% | 31.47 | 0.00 | 0.64 | 0.00 | 32.11 | 81% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

## Arizona Monthly Staffing Report
## Yuma Region
### September 2017

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Contract Breakdown | | | | | |
| Medical Director | 1.00 | 1.00 | 100% | 0.83 | - | - | - | 0.83 | 83% |
| Staff Physician | 1.00 | 1.00 | 100% | 0.84 | - | - | - | 0.84 | 84% |
| Administrator | 1.00 | 1.00 | 100% | 0.86 | - | - | - | 0.86 | 86% |
| Correctional RN Supervisor II / DON | 1.00 | 1.00 | 100% | 0.86 | - | - | - | 0.86 | 86% |
| Asst. Correctional RN Supervisor II | - | 4.00 | 0% | 5.06 | - | - | - | 5.06 | 0% |
| Administrative Services Officer | 1.00 | 1.00 | 100% | 0.77 | - | - | - | 0.77 | 77% |
| Nurse Practitioner | 3.00 | 2.00 | 67% | 1.96 | - | - | - | 1.96 | 65% |
| Correctional RN Supervisor I | 4.00 | - | 0% | - | - | - | - | - | 0% |
| RN | 15.70 | 14.55 | 93% | 14.09 | - | 1.13 | - | 15.23 | 97% |
| LPN | 11.50 | 7.75 | 67% | 6.84 | - | 0.98 | - | 7.82 | 68% |
| Nursing Assistant | 8.40 | 8.80 | 105% | 14.63 | - | 0.43 | - | 15.07 | 179% |
| X Ray Tech | 1.00 | 1.00 | 100% | 0.98 | - | 0.32 | - | 1.30 | 130% |
| Pharmacy Tech | 2.00 | 3.00 | 150% | 2.65 | - | 0.39 | - | 3.03 | 152% |
| Secretary / Administrative Assistant | 2.00 | 1.80 | 90% | 1.63 | - | 0.01 | - | 1.64 | 82% |
| Med Records Supervisor | 1.00 | 1.00 | 100% | 0.51 | - | - | - | 0.51 | 51% |
| Med Records Clerk | 3.00 | 3.00 | 100% | 1.89 | - | - | - | 1.89 | 63% |
| Scheduler | 1.00 | - | 0% | 1.74 | - | 0.22 | - | 1.96 | 196% |
| Clinical Coordinator | 1.00 | 1.00 | 100% | - | - | - | - | - | 0% |
| Dental Director | 1.00 | - | 0% | - | - | - | - | - | 0% |
| Dentist | 3.00 | 3.50 | 117% | 2.45 | - | - | - | 2.45 | 82% |
| Dental Hygienist | 0.20 | - | 0% | - | - | - | - | - | 0% |
| Dental Assistant | 6.00 | 6.00 | 100% | 4.08 | - | - | - | 4.08 | 68% |
| Psychiatrist | - | - | 0% | 0.71 | - | - | - | 0.71 | 0% |
| MH Nurse Practitioner | 1.00 | 1.00 | 100% | 1.02 | - | - | - | 1.02 | 102% |
| MH RN | 1.00 | 1.00 | 100% | 0.46 | - | - | - | 0.46 | 46% |
| Psych Associates | 4.00 | 6.40 | 160% | 4.46 | - | - | - | 4.46 | 112% |
| Total Contract | 74.80 | 70.80 | 95% | 69.35 | 0.00 | 3.49 | 0.00 | 72.85 | 97% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER        PARSONS v. RYAN, USDC CV12-00601: ADCM1036891

# EXHIBIT 16

# Arizona Monthly Staffing Report

Roll Up

*(Excludes Regional Office)*

**October 2017**

Working Days = 22

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| Medical Director | 10.00 | 4.75 | 48% | 5.41 | - | - | - | 5.41 | 54% |
| Staff Physician | 14.00 | 7.60 | 54% | 6.80 | - | - | 3.05 | 9.85 | 70% |
| Administrator | 10.00 | 10.00 | 100% | 9.30 | - | - | - | 9.30 | 93% |
| Correctional RN Supervisor II / DON | 10.00 | 9.00 | 90% | 9.14 | - | - | - | 9.14 | 91% |
| Asst. Correctional RN Supervisor II / ADON | 3.00 | 41.00 | 1367% | 34.77 | - | 0.16 | - | 34.92 | 1164% |
| Administrative Services Officer | 7.00 | 6.00 | 86% | 7.18 | - | - | - | 7.18 | 103% |
| Nurse Practitioner | 26.00 | 35.85 | 138% | 37.02 | - | 0.28 | 0.53 | 37.83 | 145% |
| Correctional RN Supervisor I | 34.00 | 1.00 | 3% | 0.91 | - | - | - | 0.91 | 3% |
| RN | 178.90 | 174.25 | 97% | 191.43 | - | 14.10 | - | 205.52 | 115% |
| LPN | 156.60 | 148.95 | 95% | 156.57 | - | 16.75 | - | 173.32 | 111% |
| Nursing Assistant | 94.50 | 105.25 | 111% | 109.58 | - | 6.69 | - | 116.27 | 123% |
| Lab Technician | 2.00 | 3.00 | 150% | 2.99 | - | 0.67 | - | 3.66 | 183% |
| X Ray Tech | 8.50 | 6.00 | 71% | 6.90 | - | 0.41 | - | 7.31 | 86% |
| Pharmacy Tech | 23.50 | 27.00 | 115% | 25.14 | - | 1.36 | - | 26.50 | 113% |
| Secretary / Administrative Assistant | 21.00 | 17.80 | 85% | 15.39 | - | 0.15 | - | 15.54 | 74% |
| Med Records Supervisor | 10.00 | 9.00 | 90% | 8.55 | - | - | - | 8.55 | 85% |
| Med Records Clerk | 32.00 | 28.50 | 89% | 27.66 | - | 0.25 | - | 27.91 | 87% |
| Scheduler | 9.00 | 8.50 | 94% | 9.78 | - | 0.55 | - | 10.33 | 115% |
| Clinical Coordinator | 8.00 | 9.00 | 113% | 5.42 | - | 0.23 | - | 5.65 | 71% |
| Dental Director | 10.00 | 7.25 | 73% | 7.47 | - | - | - | 7.47 | 75% |
| Dentist | 20.00 | 19.51 | 98% | 16.38 | - | - | - | 16.38 | 82% |
| Dental Hygienist | 1.80 | 2.10 | 117% | 2.46 | - | - | - | 2.46 | 137% |
| Dental Assistant | 43.00 | 40.00 | 93% | 35.48 | - | - | - | 35.48 | 83% |
| Psychiatric Director | 0.50 | 0.50 | 100% | 0.50 | - | - | - | 0.50 | 100% |
| Psychiatrist | 7.50 | 6.00 | 80% | 5.62 | - | - | - | 5.62 | 75% |
| Psychologist | 19.00 | 15.55 | 82% | 11.28 | - | - | 2.09 | 13.37 | 70% |
| MH Director (PH.D) | 1.00 | 1.00 | 100% | 1.06 | - | - | - | 1.06 | 106% |
| MH Clerk | 4.00 | 5.00 | 125% | 4.10 | - | 0.03 | - | 4.13 | 103% |
| MH Nurse Practitioner | 11.50 | 11.50 | 100% | 8.72 | - | - | 1.22 | 9.94 | 86% |
| MH RN | 36.40 | 32.70 | 90% | 31.19 | - | 1.80 | - | 32.99 | 91% |
| Rec Therapist | 5.00 | 1.00 | 20% | 0.91 | - | - | - | 0.91 | 18% |
| Psych Associates | 52.40 | 54.20 | 103% | 45.85 | - | - | - | 45.85 | 87% |
| Psych Tech | 25.40 | 22.60 | 89% | 23.65 | - | 0.44 | - | 24.09 | 95% |
| MH RN Supervisor | 1.00 | - | 0% | - | - | - | - | - | 0% |
| Regional Director | - | 1.00 | 0% | 1.05 | - | - | - | 1.05 | 0% |
| Clerk | - | 1.00 | 0% | 0.09 | - | - | - | 0.09 | 0% |
| Total Contract | 896.50 | 873.36 | 97% | 865.74 | - | 43.86 | 6.89 | 916.49 | 102% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

# Arizona Monthly Staffing Report
## Douglas Region

**October 2017**

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Contract Breakdown | | | | |
| Medical Director | 1.00 | - | 0% | 0.16 | - | - | - | 0.16 | 16% |
| Administrator | 1.00 | 1.00 | 100% | 1.02 | - | - | - | 1.02 | 102% |
| Correctional RN Supervisor II / DON | 1.00 | 1.00 | 100% | 0.94 | - | - | - | 0.94 | 94% |
| Nurse Practitioner | 1.00 | 2.00 | 200% | 1.51 | - | - | - | 1.51 | 151% |
| Correctional RN Supervisor I | 1.00 | 1.00 | 100% | 0.91 | - | - | - | 0.91 | 91% |
| RN | 8.60 | 9.20 | 107% | 8.63 | - | 0.25 | - | 8.88 | 103% |
| LPN | 3.90 | 3.00 | 77% | 2.91 | - | 0.06 | - | 2.97 | 76% |
| Nursing Assistant | 3.40 | 3.00 | 88% | 1.95 | - | 0.03 | - | 1.99 | 58% |
| X Ray Tech | 0.50 | - | 0% | - | - | - | - | - | 0% |
| Secretary / Administrative Assistant | 2.00 | 2.00 | 100% | 1.74 | - | 0.00 | - | 1.74 | 87% |
| Med Records Supervisor | 1.00 | 1.00 | 100% | 0.98 | - | - | - | 0.98 | 98% |
| Med Records Clerk | 1.50 | 1.50 | 100% | 2.01 | - | - | - | 2.01 | 134% |
| Clinical Coordinator | - | 1.00 | 0% | - | - | - | - | - | 0% |
| Dental Director | 1.00 | - | 0% | 0.67 | - | - | - | 0.67 | 67% |
| Dentist | 1.00 | 2.01 | 201% | 0.98 | - | - | - | 0.98 | 98% |
| Dental Hygienist | 0.20 | 0.25 | 125% | 0.20 | - | - | - | 0.20 | 98% |
| Dental Assistant | 3.00 | 3.00 | 100% | 2.73 | - | - | - | 2.73 | 91% |
| Psych Associates | 1.00 | 1.00 | 100% | 0.79 | - | - | - | 0.79 | 79% |
| Total Contract | 32.10 | 31.96 | 100% | 28.14 | - | 0.34 | - | 28.48 | 89% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

0.00

# Arizona Monthly Staffing Report

## Eyman Region

### October 2017

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Contract Breakdown Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| Medical Director | 1.00 | 1.00 | 100% | 1.12 | - | - | - | 1.12 | 112% |
| Staff Physician | 1.00 | 1.60 | 160% | 1.16 | - | - | 0.15 | 1.31 | 131% |
| Administrator | 1.00 | - | 0% | 0.73 | - | - | - | 0.73 | 73% |
| Correctional RN Supervisor II / DON | 1.00 | 1.00 | 100% | 1.38 | - | - | - | 1.38 | 138% |
| Asst. Correctional RN Supervisor II | - | 5.00 | 0% | 4.13 | - | 0.11 | - | 4.24 | 0% |
| Administrative Services Officer | 1.00 | 1.00 | 100% | 0.90 | - | - | - | 0.90 | 90% |
| Nurse Practitioner | 3.00 | 2.80 | 93% | 3.23 | - | 0.16 | - | 3.39 | 113% |
| Correctional RN Supervisor I | 5.00 | - | 0% | - | - | - | - | - | 0% |
| RN | 20.60 | 19.25 | 93% | 19.67 | - | 1.66 | - | 21.33 | 104% |
| LPN | 23.20 | 21.70 | 94% | 23.34 | - | 2.33 | - | 25.67 | 111% |
| Nursing Assistant | 10.80 | 7.60 | 70% | 7.86 | - | 0.46 | - | 8.33 | 77% |
| X Ray Tech | 1.00 | 1.00 | 100% | 1.03 | - | 0.14 | - | 1.17 | 117% |
| Pharmacy Tech | 3.00 | 4.00 | 133% | 3.94 | - | 0.29 | - | 4.22 | 141% |
| Secretary / Administrative Assistant | 2.00 | 2.00 | 100% | 0.99 | - | 0.01 | - | 1.01 | 50% |
| Med Records Supervisor | 1.00 | 1.00 | 100% | 1.01 | - | - | - | 1.01 | 101% |
| Med Records Clerk | 6.00 | 5.00 | 83% | 4.74 | - | 0.08 | - | 4.82 | 80% |
| Scheduler | 1.00 | 2.00 | 200% | 2.93 | - | 0.41 | - | 3.34 | 334% |
| Clinical Coordinator | 1.00 | 1.00 | 100% | 0.87 | - | 0.10 | - | 0.97 | 97% |
| Dental Director | 1.00 | 1.00 | 100% | 0.85 | - | - | - | 0.85 | 85% |
| Dentist | 2.50 | 2.75 | 110% | 2.43 | - | - | - | 2.43 | 97% |
| Dental Hygienist | 0.20 | - | 0% | 0.18 | - | - | - | 0.18 | 91% |
| Dental Assistant | 5.00 | 5.00 | 100% | 4.46 | - | - | - | 4.46 | 89% |
| Psychiatrist | 1.00 | 1.00 | 100% | 1.02 | - | - | - | 1.02 | 102% |
| Psychologist | 4.00 | 3.00 | 75% | 2.38 | - | - | - | 2.38 | 59% |
| MH Clerk | 1.00 | 2.00 | 200% | 1.79 | - | 0.01 | - | 1.80 | 180% |
| MH Nurse Practitioner | 2.00 | 1.50 | 75% | 1.06 | - | - | 1.03 | 2.09 | 104% |
| MH RN | 3.00 | 2.60 | 87% | 3.04 | - | 0.08 | - | 3.12 | 104% |
| Psych Associates | 9.00 | 7.00 | 78% | 6.42 | - | - | - | 6.42 | 71% |
| Psych Tech | 5.10 | 5.00 | 98% | 4.61 | - | 0.03 | - | 4.64 | 91% |
| Total Contract | 116.40 | 107.80 | 93% | 107.27 | 0.00 | 5.86 | 1.18 | 114.31 | 98% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

0.00

# Arizona Monthly Staffing Report
## Florence Region

### October 2017

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Contract Breakdown Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| Medical Director | 1.00 | - | 0% | 0.09 | - | - | - | 0.09 | 9% |
| Staff Physician | 2.50 | 1.00 | 40% | 0.15 | - | - | 0.80 | 0.95 | 38% |
| Administrator | 1.00 | 2.00 | 200% | 1.65 | - | - | - | 1.65 | 165% |
| Correctional RN Supervisor II / DON | 1.00 | 1.00 | 100% | 0.88 | - | - | - | 0.88 | 88% |
| Asst. Correctional RN Supervisor II | 1.00 | 6.00 | 600% | 5.45 | - | - | - | 5.45 | 545% |
| Administrative Services Officer | 1.00 | 1.00 | 100% | 0.76 | - | - | - | 0.76 | 76% |
| Nurse Practitioner | 2.00 | 4.00 | 200% | 5.73 | - | - | - | 5.73 | 287% |
| Correctional RN Supervisor I | 5.00 | - | 0% | - | - | - | - | - | 0% |
| RN | 16.40 | 20.00 | 122% | 25.03 | - | 2.62 | - | 27.65 | 169% |
| LPN | 24.40 | 22.70 | 93% | 24.03 | - | 3.91 | - | 27.94 | 115% |
| Nursing Assistant | 15.40 | 14.60 | 95% | 15.55 | - | 1.60 | - | 17.15 | 111% |
| X Ray Tech | 1.00 | - | 0% | 0.69 | - | - | - | 0.69 | 69% |
| Pharmacy Tech | 3.00 | 3.00 | 100% | 3.32 | - | 0.15 | - | 3.46 | 115% |
| Secretary / Administrative Assistant | 2.00 | 2.00 | 100% | 1.90 | - | 0.02 | - | 1.92 | 96% |
| Med Records Supervisor | 1.00 | 1.00 | 100% | 0.99 | - | - | - | 0.99 | 99% |
| Med Records Clerk | 5.00 | 4.00 | 80% | 3.53 | - | - | - | 3.53 | 71% |
| Scheduler | 1.00 | 1.00 | 100% | 1.82 | - | 0.06 | - | 1.88 | 188% |
| Clinical Coordinator | 1.00 | 1.00 | 100% | 0.57 | - | 0.05 | - | 0.62 | 62% |
| Dental Director | 1.00 | 1.00 | 100% | 0.85 | - | - | - | 0.85 | 85% |
| Dentist | 3.00 | 2.00 | 67% | 1.63 | - | - | - | 1.63 | 54% |
| Dental Hygienist | 0.20 | 0.20 | 100% | 0.14 | - | - | - | 0.14 | 72% |
| Dental Assistant | 5.00 | 5.00 | 100% | 4.41 | - | - | - | 4.41 | 88% |
| Psychiatrist | 1.00 | 1.00 | 100% | 0.89 | - | - | - | 0.89 | 89% |
| Psychologist | 2.00 | 1.80 | 90% | 1.79 | - | - | - | 1.79 | 90% |
| MH Clerk | 1.00 | 1.00 | 100% | 0.95 | - | 0.00 | - | 0.96 | 96% |
| MH Nurse Practitioner | 2.00 | 2.00 | 100% | 1.93 | - | - | - | 1.93 | 97% |
| MH RN | 2.00 | 2.00 | 100% | 1.55 | - | 0.07 | - | 1.62 | 81% |
| Rec Therapist | - | - | 0% | - | - | - | - | - | 0% |
| Psych Associates | 6.50 | 7.00 | 108% | 6.63 | - | - | - | 6.63 | 102% |
| Psych Tech | 4.10 | 4.20 | 102% | 3.66 | - | 0.08 | - | 3.74 | 91% |
| | | | 0% | - | - | - | - | - | 0% |
| Total Contract | 112.50 | 111.50 | 99% | 117.17 | - | 8.56 | 0.80 | 126.52 | 112% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

0.00

**October 2017**

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| Medical Director | 1.00 | 0.20 | 20% | 0.14 | - | - | - | 0.14 | 14% |
| Staff Physician | 2.50 | 1.00 | 40% | 1.25 | - | - | 1.03 | 2.28 | 91% |
| Administrator | 1.00 | 1.00 | 100% | 1.31 | - | - | - | 1.31 | 131% |
| Correctional RN Supervisor II / DON | 1.00 | 1.00 | 100% | 0.27 | - | - | - | 0.27 | 27% |
| Asst. Correctional RN Supervisor II | - | 6.00 | 0% | 3.58 | - | 0.04 | - | 3.62 | 0% |
| Administrative Services Officer | 1.00 | 1.00 | 100% | 1.42 | - | - | - | 1.42 | 142% |
| Nurse Practitioner | 3.00 | 5.00 | 167% | 5.87 | - | - | - | 5.87 | 196% |
| Correctional RN Supervisor I | 3.00 | - | 0% | - | - | - | - | - | 0% |
| RN | 21.80 | 27.25 | 125% | 30.17 | - | 2.73 | - | 32.90 | 151% |
| LPN | 21.10 | 24.70 | 117% | 26.61 | - | 2.62 | - | 29.23 | 139% |
| Nursing Assistant | 13.90 | 12.70 | 91% | 11.62 | - | 1.19 | - | 12.80 | 92% |
| X Ray Tech | 1.00 | 1.00 | 100% | 1.01 | - | 0.01 | - | 1.02 | 102% |
| Pharmacy Tech | 3.00 | 4.00 | 133% | 3.34 | - | 0.22 | - | 3.56 | 119% |
| Secretary / Administrative Assistant | 2.00 | 2.00 | 100% | 1.76 | - | 0.02 | - | 1.78 | 89% |
| Med Records Supervisor | 1.00 | 1.00 | 100% | 0.88 | - | - | - | 0.88 | 88% |
| Med Records Clerk | 3.00 | 2.00 | 67% | 2.84 | - | - | - | 2.84 | 95% |
| Scheduler | 1.00 | 1.00 | 100% | 0.98 | - | 0.01 | - | 0.99 | 99% |
| Clinical Coordinator | 1.00 | 1.00 | 100% | 0.96 | - | - | - | 0.96 | 96% |
| Dental Director | 1.00 | 0.25 | 25% | - | - | - | - | - | 0% |
| Dentist | 3.00 | 3.00 | 100% | 2.63 | - | - | - | 2.63 | 88% |
| Dental Hygienist | 0.20 | 0.25 | 125% | 0.23 | - | - | - | 0.23 | 116% |
| Dental Assistant | 5.00 | 5.00 | 100% | 4.51 | - | - | - | 4.51 | 90% |
| Psychiatrist | 1.00 | 1.00 | 100% | 1.09 | - | - | - | 1.09 | 109% |
| Psychologist | 3.00 | 2.00 | 67% | 2.05 | - | - | 0.10 | 2.15 | 72% |
| MH Nurse Practitioner | 2.00 | 2.00 | 100% | 1.13 | - | - | - | 1.13 | 56% |
| MH RN | 2.00 | 2.00 | 100% | 1.79 | - | 0.01 | - | 1.80 | 90% |
| Psych Associates | 7.00 | 7.00 | 100% | 6.88 | - | - | - | 6.88 | 98% |
| Psych Tech | 1.00 | 4.20 | 420% | 4.02 | - | 0.19 | - | 4.21 | 421% |
| Total Contract | 106.50 | 118.55 | 111% | 118.32 | 0.00 | 7.03 | 1.13 | 126.49 | 119% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

0.00

# Arizona Monthly Staffing Report
## Perryville Region

### October 2017

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Contract Breakdown | | | | | |
| Medical Director | 1.00 | 0.80 | 80% | 1.88 | - | - | - | 1.88 | 188% |
| Staff Physician | 2.50 | 2.00 | 80% | 0.91 | - | - | - | 0.91 | 36% |
| Administrator | 1.00 | 1.00 | 100% | 1.13 | - | - | - | 1.13 | 113% |
| Correctional RN Supervisor II / DON | 1.00 | 1.00 | 100% | 0.98 | - | - | - | 0.98 | 98% |
| Asst. Correctional RN Supervisor II | 1.00 | 5.00 | 500% | 4.42 | - | - | - | 4.42 | 442% |
| Administrative Services Officer | 1.00 | - | 0% | 0.92 | - | - | - | 0.92 | 92% |
| Nurse Practitioner | 5.00 | 5.55 | 111% | 5.80 | - | - | - | 5.80 | 116% |
| Correctional RN Supervisor I | 5.00 | - | 0% | - | - | - | - | - | 0% |
| RN | 22.70 | 24.50 | 108% | 26.09 | - | 3.05 | - | 29.13 | 128% |
| LPN | 21.10 | 23.60 | 112% | 22.22 | - | 2.06 | - | 24.28 | 115% |
| Nursing Assistant | 11.80 | 14.40 | 122% | 14.02 | - | 1.16 | - | 15.18 | 129% |
| Lab Technician | 1.00 | 2.00 | 200% | 1.92 | - | 0.08 | - | 2.00 | 200% |
| X Ray Tech | 1.00 | 1.00 | 100% | 0.82 | - | 0.00 | - | 0.82 | 82% |
| Pharmacy Tech | 4.50 | 4.00 | 89% | 3.55 | - | 0.02 | - | 3.57 | 79% |
| Secretary / Administrative Assistant | 2.00 | 2.00 | 100% | 1.75 | - | - | - | 1.75 | 87% |
| Med Records Supervisor | 1.00 | 1.00 | 100% | 0.80 | - | - | - | 0.80 | 80% |
| Med Records Clerk | 3.00 | 3.00 | 100% | 2.95 | - | 0.03 | - | 2.98 | 99% |
| Scheduler | 2.00 | 1.50 | 75% | 1.44 | - | 0.01 | - | 1.46 | 73% |
| Clinical Coordinator | 1.00 | 1.00 | 100% | 0.55 | - | 0.04 | - | 0.59 | 59% |
| Dental Director | 1.00 | 1.00 | 100% | 1.03 | - | - | - | 1.03 | 103% |
| Dentist | 2.50 | 4.250 | 170% | 3.86 | - | - | - | 3.86 | 154% |
| Dental Hygienist | 0.20 | 0.20 | 100% | 0.31 | - | - | - | 0.31 | 156% |
| Dental Assistant | 6.00 | 6.00 | 100% | 5.13 | - | - | - | 5.13 | 86% |
| Psychiatrist | 1.00 | 1.00 | 100% | 0.34 | - | - | - | 0.34 | 34% |
| Psychologist | 3.00 | 2.85 | 95% | 1.38 | - | - | 0.66 | 2.05 | 68% |
| MH Clerk | 1.00 | 1.00 | 100% | 0.95 | - | 0.01 | - | 0.96 | 96% |
| MH Nurse Practitioner | 2.00 | 1.00 | 50% | 0.66 | - | - | 0.19 | 0.85 | 43% |
| MH RN | 2.00 | 2.00 | 100% | 1.64 | - | 0.04 | - | 1.67 | 84% |
| Rec Therapist | 1.00 | - | 0% | - | - | - | - | - | 0% |
| Psych Associates | 6.50 | 6.00 | 92% | 5.66 | - | - | - | 5.66 | 87% |
| Psych Tech | 3.10 | 3.20 | 103% | 2.36 | - | 0.08 | - | 2.43 | 78% |
| Total Contract | 117.90 | 121.85 | 103% | 115.47 | 0.00 | 6.58 | 0.85 | 122.89 | 104% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

0.00

# Arizona Monthly Staffing Report

## Phoenix Region

### October 2017

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Contract Breakdown Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| Medical Director | 1.00 | - | 0% | - | - | - | - | - | 0% |
| Staff Physician | 1.00 | 1.00 | 100% | 0.95 | - | - | 1.07 | 2.01 | 201% |
| Administrator | 1.00 | 1.00 | 100% | 1.01 | - | - | - | 1.01 | 101% |
| Correctional RN Supervisor II / DON | 1.00 | 1.00 | 100% | 1.14 | - | - | - | 1.14 | 114% |
| Asst. Correctional RN Supervisor II | - | 1.00 | 0% | 1.04 | - | - | - | 1.04 | 0% |
| Administrative Services Officer | 1.00 | 1.00 | 100% | 1.13 | - | - | - | 1.13 | 113% |
| Nurse Practitioner | 4.00 | 4.00 | 100% | 3.49 | - | - | - | 3.49 | 87% |
| Correctional RN Supervisor I | 1.00 | - | 0% | - | - | - | - | - | 0% |
| RN | 12.40 | 10.60 | 85% | 11.86 | - | 1.43 | - | 13.30 | 107% |
| LPN | 4.20 | 4.30 | 102% | 4.25 | - | 1.00 | - | 5.24 | 125% |
| Nursing Assistant | 2.00 | 2.00 | 100% | 1.85 | - | 0.29 | - | 2.13 | 107% |
| Lab Technician | 1.00 | 1.00 | 100% | 1.07 | - | 0.59 | - | 1.65 | 165% |
| X Ray Tech | 1.00 | 1.00 | 100% | 0.97 | - | 0.03 | - | 1.00 | 100% |
| Pharmacy Tech | 3.00 | 3.00 | 100% | 2.62 | - | 0.22 | - | 2.83 | 94% |
| Secretary / Administrative Assistant | 3.00 | 2.00 | 67% | 1.68 | - | 0.05 | - | 1.73 | 58% |
| Med Records Supervisor | 1.00 | 1.00 | 100% | 0.95 | - | - | - | 0.95 | 95% |
| Med Records Clerk | 4.00 | 3.00 | 75% | 2.55 | - | 0.13 | - | 2.68 | 67% |
| Scheduler | 1.00 | - | 0% | - | - | - | - | - | 0% |
| Clinical Coordinator | 1.00 | - | 0% | - | - | - | - | - | 0% |
| Dental Director | 1.00 | 1.00 | 100% | 0.91 | - | - | - | 0.91 | 91% |
| Dental Assistant | 2.00 | 2.00 | 100% | 2.02 | - | - | - | 2.02 | 101% |
| Psychiatric Director | 0.50 | 0.50 | 100% | 0.50 | - | - | - | 0.50 | 100% |
| Psychiatrist | 1.50 | 1.00 | 67% | 0.97 | - | - | - | 0.97 | 64% |
| Psychologist | 3.00 | 2.50 | 83% | 1.09 | - | - | 1.33 | 2.42 | 81% |
| MH Director (PH.D) | 1.00 | 1.00 | 100% | 1.06 | - | - | - | 1.06 | 106% |
| MH Nurse Practitioner | 1.00 | 1.00 | 100% | 0.65 | - | - | - | 0.65 | 65% |
| MH RN | 22.40 | 21.10 | 94% | 20.23 | - | 1.58 | - | 21.81 | 97% |
| Rec Therapist | 2.00 | 1.00 | 50% | 0.91 | - | - | - | 0.91 | 46% |
| Psych Associates | 6.40 | 7.00 | 109% | 6.44 | - | - | - | 6.44 | 101% |
| Psych Tech | 12.10 | 6.00 | 50% | 5.66 | - | 0.07 | - | 5.73 | 47% |
| MH RN Supervisor | 1.00 | - | 0% | - | - | - | - | - | 0% |
|  | - |  |  | - |  |  |  |  |  |
| Total Contract | 97.50 | 81.00 | 83% | 76.99 | 0.00 | 5.37 | 2.40 | 84.76 | 87% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

0.00

# Arizona Monthly Staffing Report
## Safford Region

### October 2017

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| Medical Director | 1.00 | 0.75 | 75% | - | - | - | - | - | 0% |
| Administrator | 1.00 | 1.00 | 100% | - | - | - | - | - | 0% |
| Correctional RN Supervisor II / DON | 1.00 | - | 0% | 0.96 | - | - | - | 0.96 | 96% |
| Asst. Correctional RN Supervisor II | - | 2.00 | 0% | 1.70 | - | - | - | 1.70 | 0% |
| Nurse Practitioner | 1.00 | 2.00 | 200% | 1.08 | - | - | 0.09 | 1.16 | 116% |
| Correctional RN Supervisor I | 2.00 | - | 0% | - | - | - | - | - | 0% |
| RN | 9.80 | 9.90 | 101% | 12.46 | - | 0.04 | - | 12.50 | 128% |
| LPN | 6.10 | 2.00 | 33% | 2.47 | - | 0.14 | - | 2.61 | 43% |
| Nursing Assistant | 2.80 | 4.00 | 143% | 3.70 | - | 0.05 | - | 3.75 | 134% |
| X Ray Tech | 0.50 | - | 0% | - | - | - | - | - | 0% |
| Secretary / Administrative Assistant | 2.00 | 1.00 | 50% | 0.95 | - | 0.00 | - | 0.96 | 48% |
| Med Records Supervisor | 1.00 | 1.00 | 100% | 0.91 | - | - | - | 0.91 | 91% |
| Med Records Clerk | 0.50 | 1.00 | 200% | 0.29 | - | - | - | 0.29 | 58% |
| Dental Director | 1.00 | 1.00 | 100% | 0.98 | - | - | - | 0.98 | 98% |
| Dental Hygienist | 0.20 | 1.00 | 500% | 0.49 | - | - | - | 0.49 | 244% |
| Dental Assistant | 2.00 | 1.00 | 50% | 0.96 | - | - | - | 0.96 | 48% |
| Psych Associates | 1.00 | 1.00 | 100% | 0.77 | - | - | - | 0.77 | 77% |
| Total Contract | 32.90 | 28.65 | 87% | 27.70 | - | 0.23 | 0.09 | 28.02 | 85% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

0.00

# Arizona Monthly Staffing Report

Tucson Region

### October 2017

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Contract Breakdown | | | | | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | |
| Medical Director | 1.00 | 1.00 | 100% | 1.10 | - | - | - | 1.10 | 110% |
| Staff Physician | 3.50 | - | 0% | 1.06 | - | - | - | 1.06 | 30% |
| Administrator | 1.00 | 1.00 | 100% | 0.94 | - | - | - | 0.94 | 94% |
| Correctional RN Supervisor II / DON | 1.00 | 1.00 | 100% | 1.03 | - | - | - | 1.03 | 103% |
| Asst. Correctional RN Supervisor II | 1.00 | 10.00 | 1000% | 7.85 | - | - | - | 7.85 | 785% |
| Administrative Services Officer | 1.00 | 1.00 | 100% | 1.09 | - | - | - | 1.09 | 109% |
| Nurse Practitioner | 3.00 | 6.00 | 200% | 6.02 | - | 0.10 | 0.44 | 6.56 | 219% |
| Correctional RN Supervisor I | 6.00 | - | 0% | - | - | - | - | - | 0% |
| RN | 39.10 | 27.40 | 70% | 28.95 | - | 1.25 | - | 30.20 | 77% |
| LPN | 35.90 | 38.20 | 106% | 42.82 | - | 4.14 | - | 46.97 | 131% |
| Nursing Assistant | 22.00 | 33.30 | 151% | 33.83 | - | 1.53 | - | 35.37 | 161% |
| X Ray Tech | 1.00 | 1.00 | 100% | 0.93 | - | 0.01 | - | 0.94 | 94% |
| Pharmacy Tech | 4.00 | 5.00 | 125% | 4.39 | - | 0.00 | - | 4.39 | 110% |
| Secretary / Administrative Assistant | 2.00 | 1.00 | 50% | 1.09 | - | 0.02 | - | 1.12 | 56% |
| Med Records Supervisor | 1.00 | 1.00 | 100% | 1.08 | - | - | - | 1.08 | 108% |
| Med Records Clerk | 6.00 | 6.00 | 100% | 5.84 | - | 0.01 | - | 5.85 | 98% |
| Scheduler | 1.00 | 1.00 | 100% | 0.91 | - | - | - | 0.91 | 91% |
| Clinical Coordinator | 1.00 | 2.00 | 200% | 0.99 | - | 0.01 | - | 1.00 | 100% |
| Dental Director | 1.00 | 1.00 | 100% | 1.07 | - | - | - | 1.07 | 107% |
| Dentist | 4.00 | 2.25 | 56% | 2.39 | - | - | - | 2.39 | 60% |
| Dental Hygienist | 0.20 | 0.20 | 100% | 0.91 | - | - | - | 0.91 | 455% |
| Dental Assistant | 6.00 | 6.00 | 100% | 5.46 | - | - | - | 5.46 | 91% |
| Psychiatrist | 2.00 | 1.00 | 50% | 0.85 | - | - | - | 0.85 | 43% |
| Psychologist | 4.00 | 3.40 | 85% | 2.59 | - | - | - | 2.59 | 65% |
| MH Clerk | 1.00 | 1.00 | 100% | 0.40 | - | 0.01 | - | 0.41 | 41% |
| MH Nurse Practitioner | 1.50 | 3.00 | 200% | 2.71 | - | - | - | 2.71 | 181% |
| MH RN | 4.00 | 2.00 | 50% | 1.96 | - | 0.01 | - | 1.97 | 49% |
| Rec Therapist | 2.00 | - | 0% | - | - | - | - | - | 0% |
| Psych Associates | 10.00 | 13.20 | 132% | 8.25 | - | - | - | 8.25 | 82% |
| Regional Director | - | 1.00 | 0% | 0.48 | - | - | - | 0.48 | 0% |
| Clerk | | 1.00 | 0% | 0.09 | - | - | - | 0.09 | 0% |
| Total Contract | 166.20 | 168.95 | 102% | 170.36 | 0.00 | 7.09 | 0.44 | 200.86 | 107% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

0.09

# Arizona Monthly Staffing Report
## Winslow Region

### October 2017

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Contract Breakdown | | | | | |
| Medical Director | 1.00 | - | 0% | 0.13 | - | - | - | 0.13 | 13% |
| Staff Physician | - | - | 0% | 0.41 | - | - | - | 0.41 | 0% |
| Administrator | 1.00 | 1.00 | 100% | 0.95 | - | - | - | 0.95 | 95% |
| Correctional RN Supervisor II / DON | 1.00 | 1.00 | 100% | 0.95 | - | - | - | 0.95 | 95% |
| Asst. Correctional RN Supervisor II | - | 2.00 | 0% | 1.74 | - | - | - | 1.74 | 0% |
| Nurse Practitioner | 1.00 | 2.50 | 250% | 2.38 | - | 0.03 | - | 2.41 | 241% |
| Correctional RN Supervisor I | 2.00 | - | 0% | - | - | - | - | - | 0% |
| RN | 11.80 | 12.40 | 105% | 14.99 | - | 0.31 | - | 15.30 | 130% |
| LPN | 5.20 | - | 0% | - | - | - | - | - | 0% |
| Nursing Assistant | 4.00 | 3.90 | 98% | 5.52 | - | 0.01 | - | 5.52 | 138% |
| X Ray Tech | 0.50 | - | 0% | 0.43 | - | - | - | 0.43 | 86% |
| Pharmacy Tech | 1.00 | 1.00 | 100% | 0.99 | - | - | - | 0.99 | 99% |
| Secretary / Administrative Assistant | 2.00 | 2.00 | 100% | 1.92 | - | 0.01 | - | 1.93 | 97% |
| Med Records Supervisor | 1.00 | - | 0% | - | - | - | - | - | 0% |
| Scheduler | 1.00 | 1.00 | 100% | 0.93 | - | 0.01 | - | 0.94 | 94% |
| Clinical Coordinator | 1.00 | 1.00 | 100% | 0.92 | - | 0.02 | - | 0.93 | 93% |
| Dental Director | 1.00 | 1.00 | 100% | 1.11 | - | - | - | 1.11 | 111% |
| Dentist | 1.00 | - | 0% | - | - | - | - | - | 0% |
| Dental Hygienist | 0.20 | - | 0% | - | - | - | - | - | 0% |
| Dental Assistant | 3.00 | 1.00 | 33% | 0.94 | - | - | - | 0.94 | 31% |
| Psych Associates | 1.00 | - | 0% | - | - | - | - | - | 0% |
| Total Contract | 39.70 | 29.80 | 75% | 34.30 | 0.00 | 0.38 | 0.00 | 34.68 | 87% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

0.00

# Arizona Monthly Staffing Report
## Yuma Region

### October 2017

| Position | Corizon Contract SCD | Corizon Filled FTEs | % of Contract Fill Rate | Corizon Employee (Includes PRN) FTEs | Corizon PRN FTEs | Corizon Employee Overtime FTEs | Agency / Locum FTEs | Total FTEs | % of Operating Fill Rate |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Contract Breakdown | | | | | |
| Medical Director | 1.00 | 1.00 | 100% | 0.79 | - | - | - | 0.79 | 79% |
| Staff Physician | 1.00 | 1.00 | 100% | 0.91 | - | - | - | 0.91 | 91% |
| Administrator | 1.00 | 1.00 | 100% | 0.57 | - | - | - | 0.57 | 57% |
| Correctional RN Supervisor II / DON | 1.00 | 1.00 | 100% | 0.62 | - | - | - | 0.62 | 62% |
| Asst. Correctional RN Supervisor II | - | 4.00 | 0% | 4.85 | - | - | - | 4.85 | 0% |
| Administrative Services Officer | 1.00 | 1.00 | 100% | 0.95 | - | - | - | 0.95 | 95% |
| Nurse Practitioner | 3.00 | 2.00 | 67% | 1.91 | - | - | - | 1.91 | 64% |
| Correctional RN Supervisor I | 4.00 | - | 0% | - | - | - | - | - | 0% |
| RN | 15.70 | 13.75 | 88% | 13.58 | - | 0.77 | - | 14.34 | 91% |
| LPN | 11.50 | 8.75 | 76% | 7.91 | - | 0.49 | - | 8.41 | 73% |
| Nursing Assistant | 8.40 | 9.75 | 116% | 13.68 | - | 0.37 | - | 14.05 | 167% |
| X Ray Tech | 1.00 | 1.00 | 100% | 1.02 | - | 0.22 | - | 1.24 | 124% |
| Pharmacy Tech | 2.00 | 3.00 | 150% | 3.00 | - | 0.47 | - | 3.47 | 174% |
| Secretary / Administrative Assistant | 2.00 | 1.80 | 90% | 1.59 | - | 0.02 | - | 1.61 | 80% |
| Med Records Supervisor | 1.00 | 1.00 | 100% | 0.95 | - | - | - | 0.95 | 95% |
| Med Records Clerk | 3.00 | 3.00 | 100% | 2.92 | - | - | - | 2.92 | 97% |
| Scheduler | 1.00 | 1.00 | 100% | 0.77 | - | 0.04 | - | 0.81 | 81% |
| Clinical Coordinator | 1.00 | 1.00 | 100% | 0.56 | - | 0.02 | - | 0.58 | 58% |
| Dental Director | 1.00 | - | 0% | - | - | - | - | - | 0% |
| Dentist | 3.00 | 3.25 | 108% | 2.46 | - | - | - | 2.46 | 82% |
| Dental Hygienist | 0.20 | - | 0% | - | - | - | - | - | 0% |
| Dental Assistant | 6.00 | 6.00 | 100% | 4.86 | - | - | - | 4.86 | 81% |
| Psychiatrist | - | - | 0% | 0.46 | - | - | - | 0.46 | 0% |
| MH Nurse Practitioner | 1.00 | 1.00 | 100% | 0.58 | - | - | - | 0.58 | 58% |
| MH RN | 1.00 | 1.00 | 100% | 0.98 | - | 0.02 | - | 1.00 | 100% |
| Psych Associates | 4.00 | 5.00 | 125% | 4.01 | - | - | - | 4.01 | 100% |
| Total Contract | 74.80 | 71.30 | 95% | 69.94 | 0.00 | 2.42 | 0.00 | 72.36 | 97% |

PRN FTEs are included with the Staff FTEs in the Corizon Employee (Includes PRN) FTEs column

0.00