Michael J. Cohn #288721
ASPC Lewis / Stiner 5A21
P.O. Box 3100
Buckeye, AZ 85326

UNITED STATES DISTRICT COURT, ARIZONA

| Parsons et al. | 2:12 CV601-DKD |
| v. | Motion for Order to Show Cause; Failure to |
| Ryan, et al. | Report Adult Abuse, Neglect, exploitation, etc. |
| | Hon. David K. Duncan. |

I, Michael J. Cohn, class plaintiff in the above captioned case respectfully request this honorable Court order Charles Ryan to show cause why his staff are abusing vulnerable adult inmates and failing to require Corizon Staff to report adult abuse/neglect/exploitation. As described in the attached documents inmates are being seriously compromised in their health by Staff "deliberate indifference." Per ARS§46-451-457, See 454, medical staff have a legal obligation to report adult abuse/neglect/exploitation.

I bring to your attention the attached letters to class counsel for plaintiffs re: Mr. Wiles and Mr. Rozakis. I have reviewed Corene Kendrick Esq.'s extensive letter to Mr. Bojanowski of Struck, Love, ... et al., describing Mr. Wiles' horrifically morbid medical condition and his treatment to date. Letter is dated 12/22/17. Mr. Rozakis is just beginning to contact class counsel, but is in serious need of care. Yet, the Parsons V. Ryan case is ~~littered~~ replete with examples of abuse/neglect/exploitation of "vulnerable adults." To my knowledge, not one case has been reported

to the authorities as required in AKS §46 - 454 et seq. (attached)
As the court considers whether or not to impose
sanctions I respectfully request the consideration of Ryan, et
al's blatant disrespect for obeying the adult Protective
Services Statutes. This is not in the stipulated agreement,
but describes a pattern of disobeying the law, much as
the Bishops in the Priest sex abuse scandal refused to
report parishioner abuse to the authorities. There is an
obvious conspiracy to cover-up abuse, etc., which implicates
Consciousness of guilt. The Governor is implicated as he
Supervises Ryan, making him an accessory to abuse, etc,
If not an accomplice. Why the Governor has not suspended
or replaced Ryan/Pratt given what they are costing the
State in legal fees alone boggles. I'd certainly like to ask
him the question under oath.

   For the reasons stated herein, the court should grant
petitioner's request in all its respects.


      Respectfully Submitted,
      Michael J. Cohn, Ed.D.
      Michael J. Cohn, Ed.D.
Per Gen. Order 14-17
Original efiled to   on:
Clerk of the U.S. Dist Ct.

   copy to:   on:
   Attorney General

**Section**
46-458.    Hearing process; definitions.
46-459.    Adult protective services registry.
46-501, 46-502.   Repealed.
46-503.    Repealed.

*Chapter 4, Adult Protective Services, consisting of §§ 46-451 and 46-452, was added by Laws 1980, Ch. 127, § 2, effective July 31, 1980.*

*Former Chapter 4, Crippled Children's Services, added by Laws 1961, Ch. 109, § 2, consisting of §§ 46-501 to 46-503, was repealed by Laws 1973, Ch. 158, § 317, effective August 8, 1973, and Laws 1975, Ch. 21, § 2, effective May 12, 1975.*

## ARTICLE 1.  GENERAL PROVISIONS

*Article 1, consisting of §§ 46-451 and 46-452 was added by Laws 1980, Ch. 127, § 2, effective July 31, 1980.*

## § 46-451.  Definitions; program goals

A.  In this chapter, unless the context otherwise requires:

1.  "Abuse" means:

(a) Intentional infliction of physical harm.

(b) Injury caused by negligent acts or omissions.

(c) Unreasonable confinement.

(d) Sexual abuse or sexual assault.

2.  "De facto conservator" means any person who takes possession of the estate of a vulnerable adult, without right or lawful authority.  A de facto conservator is subject to all of the responsibilities that attach to a legally appointed conservator or trustee.

3.  "De facto guardian" means any person who takes possession of the person of a vulnerable adult, without right or lawful authority.  A de facto guardian is subject to all of the responsibilities that attach to a legally appointed guardian.

4.  "Exploitation" means the illegal or improper use of a vulnerable adult or his resources for another's profit or advantage.

5.  "Informed consent" means any of the following:

(a) A written expression by the person that the person fully understands the potential risks and benefits of the withdrawal of food, water, medication, medical services, shelter, cooling, heating or other services necessary to maintain minimum physical or mental health and that the person desires that the services be withdrawn.  A written expression is valid only if the person is of sound mind and if the consent is witnessed by at least two individuals who do not benefit by the withdrawal of services.

(b) Consent to withdraw food, water, medication, medical services, shelter, cooling, heating or other services necessary to maintain minimum physical or mental health as permitted by an order of a court of competent jurisdiction.

(c) A declaration made pursuant to title 36, chapter 32.[1]

(d) Consent by another person under a durable power of attorney relating to health care services to withdraw food, water, medication, medical services, shelter, cooling, heating or other services necessary to maintain minimum physical or mental health.

6.  "Neglect" means a pattern of conduct without the person's informed consent resulting in deprivation of food, water, medication, medical services, shelter, cooling, heating or other services necessary to maintain minimum physical or mental health.

7.  "Protective services" means a program of identifiable and specialized social services that may offer social services appropriate to resolve problems of abuse, exploitation or neglect of a vulnerable adult.

8.  "Protective services worker" means a person who has been selected by and trained under the requirements prescribed by the department to provide protective services.

9.  "Vulnerable adult" means an individual who is eighteen years of age or older and who is unable to protect himself from abuse, neglect or exploitation by others because of a physical or mental impairment.  Vulnerable adult includes an incapacitated person as defined in § 14-5101.

B.  Protective services programs shall seek to maintain the adult in his familiar environment by strengthening his capacity for self-maintenance or by providing supportive services.

C.  Nothing in this section shall be construed to mean that an adult is abused, neglected or in need of protective services for the sole reason that he relies on treatment from a recognized religious method of healing in lieu of medical treatment.

D.  For the purposes of this section, a person is not exploited by a transfer of assets if the transfer is to obtain or maintain eligibility for benefits under title 36, chapter 29[2] or benefits for supplemental security income, medicare or veterans' ad-

ministration programs and the transfer of assets is between the person and any of the following:

1. The person's spouse.

2. The person's child with a disability.

3. A trust for the benefit of the person's spouse or child with a disability.

E. A transfer of assets for the purpose of obtaining or maintaining eligibility for benefits under title 36, chapter 29 shall comply with 42 United States Code section 1396p and §§ 36–2934 and 36–2934.01.

Added by Laws 1980, Ch. 127, § 2. Amended by Laws 1986, Ch. 347, § 2, eff. May 9, 1986; Laws 1991, Ch. 219, § 2; Laws 2009, Ch. 119, § 4; Laws 2013, Ch. 185, § 1; Laws 2014, Ch. 215, § 217.

1 Section 36–3201 et seq.

2 Section 36–2901 et seq.

## § 46–452. Protective services worker; powers and duties

A. A protective services worker shall:

1. Receive reports of abused, exploited or neglected vulnerable adults.

2. Receive from any source oral or written information regarding an adult who may be in need of protective services.

3. Upon receipt of such information make an evaluation to determine if the adult is in need of protective services and what services, if any, are needed.

4. Offer an adult in need of protective services or his guardian whatever services appear appropriate in view of the evaluation.

5. File petitions as necessary for the appointment of a guardian or conservator or the appointment of a temporary guardian or temporary conservator or make application for a special visitation warrant as provided for in title 14, chapter 5.1

B. The department or a protective services worker employed by the department may not be appointed as guardian, conservator or temporary guardian.

C. An adult protective services worker is immune from civil liability for applying for a special visitation warrant or for filing a petition for guardianship or conservatorship unless the application or filing is done in bad faith.

Added by Laws 1980, Ch. 127, § 2. Amended by Laws 1991, Ch. 219, § 3; Laws 2009, Ch. 119, § 5.

1 Section 14–5101 et seq.

## § 46–452.01. Office of state long-term care ombudsman

The office of state long-term care ombudsman is established pursuant to the older Americans act of 1965, as amended (P.L. 100–175; United States Code § 307(a)(12)). The state long-term care ombudsman is under the direct supervision of the department of economic security, aging and adult administration program administrator or his designee. The department shall adopt rules for the purpose of implementing the state long-term care ombudsman program.

Added by Laws 1989, Ch. 215, § 6.

## § 46–452.02. Long-term care ombudsman; duties; immunity from liability

A. A representative of the office of the state long-term care ombudsman who performs the official duties of the long-term care ombudsman shall not be liable under state law for the good faith performance of official duties.

B. Official duties of the office of the state long-term care ombudsman include authority to:

1. Enter long-term care facilities to communicate with residents.

2. Hear, investigate and attempt to resolve complaints by agreement, mediation or conciliation.

3. Render advice to residents of facilities.

4. Refer cases involving abuse, neglect, exploitation or health and safety to adult protective services or the appropriate licensing agency.

5. Make appropriate referrals to legal services or other community services.

6. Such other responsibilities as required pursuant to the older Americans Act of 1965, as amended (P.L. 100–175, sec. 307(A)(12); 42 United States Code 3027(A)(12)).1

C. Official duties of the office of the state long-term care ombudsman shall not include those to be performed by a licensed health care provider as defined in § 12–561.

Added by Laws 1991, Ch. 194, § 1.

1 42 U.S.C.A. § 3027(A)(12).

## § 46–453. Immunity of participants; nonprivileged communication

A. Any person making a complaint, furnishing a report, information or records required or authorized by this chapter or otherwise participating in the program authorized by this chapter or in a judicial or administrative proceeding or investigation resulting from reports, information or records

ASPC Lewis
For Reference Only

submitted or obtained pursuant to this chapter is immune from any civil or criminal liability by reason of such action, unless the person acted with malice or unless such person has been charged with or is suspected of abusing, exploiting or neglecting the vulnerable adult in question. Except as provided in subsection B of this section the physician-patient privilege, husband-wife privilege or any privilege except the attorney-client privilege, provided for by professions such as the practice of social work or nursing covered by law or a code of ethics regarding practitioner-client confidences, both as they relate to the competency of the witness and to the exclusion of confidential communications, shall not pertain in any civil or criminal litigation in which a vulnerable adult's exploitation, abuse or neglect is an issue nor in any judicial or administrative proceeding resulting from a report, information or records submitted or obtained pursuant to § 46–454 nor in any investigation of a vulnerable adult's exploitation, abuse or neglect conducted by a peace officer or a protective services worker.

B. In any civil or criminal litigation in which incapacitation, abuse, exploitation or neglect of a vulnerable adult is an issue, a clergyman or priest shall not, without his consent, be examined as a witness concerning any confession made to him in his role as a clergyman or a priest in the course of the discipline enjoined by the church to which he belongs.

Added by Laws 1983, Ch. 319, § 1. Amended by Laws 1984, Ch. 306, § 1; Laws 1986, Ch. 347, § 3, eff. May 9, 1986; Laws 1988, Ch. 83, § 1; Laws 1989, Ch. 118, § 2; Laws 1991, Ch. 219, § 4; Laws 2009, Ch. 119, § 6.

§ 46–454. Duty to report abuse, neglect and exploitation of vulnerable adults; duty to make medical records available; violation; classification

A. A physician, registered nurse practitioner, hospital intern or resident, surgeon, dentist, psychologist, social worker, peace officer or other person who has responsibility for the care of a vulnerable adult and who has a reasonable basis to believe that abuse or neglect of the adult has occurred or that exploitation of the adult's property has occurred shall immediately report or cause reports to be made of such reasonable basis to a peace officer or to a protective services worker. The guardian or conservator of a vulnerable adult shall immediately report or cause reports to be made of such reasonable basis to the superior court. All of the above reports shall be made immediately in person or by telephone and shall be

followed by a written report mailed or delivered within forty-eight hours or on the next working day if the forty-eight hours expire on a weekend or holiday.

B. An attorney, accountant, trustee, guardian, conservator or other person who has responsibility for preparing the tax records of a vulnerable adult or a person who has responsibility for any other action concerning the use or preservation of the vulnerable adult's property and who, in the course of fulfilling that responsibility, discovers a reasonable basis to believe that exploitation of the adult's property has occurred or that abuse or neglect of the adult has occurred shall immediately report or cause reports to be made of such reasonable basis to a peace officer, to a protective services worker or to the public fiduciary of the county in which the vulnerable adult resides. If the public fiduciary is unable to investigate the contents of a report, the public fiduciary shall immediately forward the report to a protective services worker. If a public fiduciary investigates a report and determines that the matter is outside the scope of action of a public fiduciary, then the report shall be immediately forwarded to a protective services worker. All of the above reports shall be made immediately in person or by telephone and shall be followed by a written report mailed or delivered within forty-eight hours or on the next working day if the forty-eight hours expire on a weekend or holiday.

C. Reports pursuant to subsections A and B shall contain:

1. The names and addresses of the adult and any persons having control or custody of the adult, if known.

2. The adult's age and the nature and extent of the adult's vulnerability.

3. The nature and extent of the adult's injuries or physical neglect or of the exploitation of the adult's property.

4. Any other information that the person reporting believes might be helpful in establishing the cause of the adult's injuries or physical neglect or of the exploitation of the adult's property.

D. Any person other than one required to report or cause reports to be made in subsection A who has a reasonable basis to believe that abuse or neglect of a vulnerable adult has occurred may report the information to a peace officer or to a protective services worker.

E. A person having custody or control of medical or financial records of a vulnerable adult for whom a report is required or authorized under this section shall make such records, or a copy of such

Case 2:12-cv-00601-DKD Document 2523 Filed 01/04/18 Page 6 of 16

records, available to a peace officer or adult protective services worker investigating the vulnerable adult's neglect, exploitation or abuse on written request for the records signed by the peace officer or adult protective services worker. Records disclosed pursuant to this subsection are confidential and may be used only in a judicial or administrative proceeding or investigation resulting from a report required or authorized under this section.

F. If reports pursuant to this section are received by a peace officer, the peace officer shall notify the adult protective services of the department of economic security as soon as possible and make such information available to them.

G. A person required to receive reports pursuant to subsection A, B or D may take or cause to be taken photographs of the abused adult and the vicinity involved. Medical examinations including radiological examinations of the involved adult may be performed. Accounts, inventories or audits of the exploited adult's property may be performed. The person, department, agency or court that initiates such photographs, examinations, accounts, inventories or audits shall pay the associated costs in accordance with existing statutes and rules. If any person is found to be responsible for the abuse, neglect or exploitation of a vulnerable adult in a criminal or civil action, the court may order the person to make restitution as the court deems appropriate.

H. If psychiatric records are requested pursuant to subsection E, the custodian of the records shall notify the attending psychiatrist, who may excise from the records, before they are made available:

1. Personal information about individuals other than the patient.

2. Information regarding specific diagnosis or treatment of a psychiatric condition, if the attending psychiatrist certifies in writing that release of the information would be detrimental to the patient's health or treatment.

I. If any portion of a psychiatric record is excised pursuant to subsection H, a court, upon application of a peace officer or adult protective services worker, may order that the entire record or any portion of such record containing information relevant to the reported abuse or neglect be made available to the peace officer or adult protective services worker investigating the abuse or neglect.

J. A licensing agency shall not find that a reported incidence of abuse at a care facility by itself is sufficient grounds to permit the agency to close the facility or to find that all residents are in imminent danger.

K. A person who violates any provision of this section is guilty of a class 1 misdemeanor.

Added by Laws 1984, Ch. 306, § 2. Amended by Laws 1986, Ch. 347, § 4, eff. May 9, 1986; Laws 1988, Ch. 85, § 1; Laws 1991, Ch. 219, § 5; Laws 2007, Ch. 97, § 45; Laws 2009, Ch. 119, § 7.

§ 46-455. Permitting life or health of a vulnerable adult to be endangered by neglect; violation; classification; civil remedy; definition

A. A person who has been employed to provide care, who is a de facto guardian or de facto conservator or who has been appointed by a court to provide care to a vulnerable adult and who causes or permits the life of the adult to be endangered or that person's health to be injured or endangered by neglect is guilty of a class 5 felony.

B. A vulnerable adult whose life or health is being or has been endangered or injured by neglect, abuse or exploitation may file an action in superior court against any person or enterprise that has been employed to provide care, that has assumed a legal duty to provide care or that has been appointed by a court to provide care to such vulnerable adult for having caused or permitted such conduct. A physician licensed pursuant to title 32, chapter 13 or 17,[1] a podiatrist licensed pursuant to title 32, chapter 7,[2] a registered nurse practitioner licensed pursuant to title 32, chapter 15[3] or a physician assistant licensed pursuant to title 32, chapter 25,[4] while providing services within the scope of that person's licensure, is not subject to civil liability for damages under this section unless either:

1. At the time of the events giving rise to a cause of action under this section, the person was employed or retained by the facility or designated by the facility, with the consent of the person, to serve the function of medical director as that term is defined or used by federal or state law governing a nursing care institution, an assisted living center, an assisted living facility, an assisted living home, an adult day health care facility, a residential care institution, an adult care home, a skilled nursing facility or a nursing facility.

2. At the time of the events giving rise to a cause of action under this section, all of the following applied:

(a) The person was a physician licensed pursuant to title 32, chapter 13 or 17, a podiatrist licensed pursuant to title 32, chapter 7, a registered

SPC Lewis For Reference Only

16 of 20

nurse practitioner licensed pursuant to title 32, chapter 15 or a physician assistant licensed pursuant to title 32, chapter 25.

(b) The person was the primary provider responsible for the medical services to the patient while the patient was at one of the facilities listed in paragraph 1 of this subsection.

C. Any person who was the primary provider of medical services to the patient in the last two years before it was recommended that the patient be admitted to one of the facilities listed in subsection B, paragraph 1 of this section is exempt from civil liability for damages under this section.

D. For the purposes of this section, primary provider does not include a consultant or specialist as listed in subsection B, paragraph 2, subdivision (a) of this section who is requested by the primary provider to provide care to the patient for whom the primary provider is responsible, unless that consultant or specialist assumes the primary care of the patient.

E. The state may file an action pursuant to this section on behalf of those persons endangered or injured to prevent, restrain or remedy the conduct described in this section.

F. The superior court has jurisdiction to prevent, restrain and remedy the conduct described in this section, after making provision for the rights of all innocent persons affected by such conduct and after a hearing or trial, as appropriate, by issuing appropriate orders.

G. Before a determination of liability, the orders may include, but are not limited to, entering restraining orders or temporary injunctions or taking such other actions, including the acceptance of satisfactory performance bonds, the creation of receiverships and the appointment of qualified receivers and the enforcement of constructive trusts, as the court deems proper.

H. After a determination of liability such orders may include, but are not limited to:

1. Ordering any person to divest himself of any direct or indirect interest in any enterprise.

2. Imposing reasonable restrictions, including permanent injunctions, on the future activities or investments of any person including prohibiting any person from engaging in the same type of endeavor or conduct to the extent permitted by the constitutions of the United States and this state.

3. Ordering dissolution or reorganization of any enterprise.

4. Ordering the payment of actual and consequential damages, as well as costs of suit, to those persons injured by the conduct described in this section. The court or jury may order the payment of punitive damages under common law principles that are generally applicable to the award of punitive damages in other civil actions.

5. Ordering the payment of all costs and expenses of the prosecution and investigation of the conduct described in this section, civil and criminal, incurred by the state or county as appropriate to be paid to the general fund of this state or the county that incurred such costs and expenses.

I. A defendant convicted in any criminal proceeding is precluded from subsequently denying the essential allegations of the criminal offense of which he was convicted in any civil proceeding. For the purposes of this subsection, a conviction may result from a verdict or plea, including a plea of no contest.

J. A person who files an action under this section shall serve notice and one copy of the pleading on the attorney general within thirty days after the action is filed with the superior court. The notice shall identify the action, the person and the person's attorney. Service of the notice does not limit or otherwise affect the right of this state to maintain an action under this section or intervene in a pending action nor does it authorize the person to name this state or the attorney general as a party to the action. Upon receipt of a complaint the attorney general shall notify the appropriate licensing agency.

K. The initiation of civil proceedings pursuant to this section shall be commenced within two years after actual discovery of the cause of action.

L. Except for the standard of proof provided in subsection H, paragraph 4 of this section, the standard of proof in civil actions brought pursuant to this section is the preponderance of the evidence.

M. Except in cases filed by a county attorney, the attorney general, upon timely application, may intervene in any civil action or proceeding brought under this section if the attorney general certifies that in his opinion the action is of special public importance. Upon intervention, the attorney general may assert any available claim and is entitled to the same relief as if the attorney general had instituted a separate action.

N. In addition to the state's right to intervene as a party in any action under this section, the attorney general may appear as a friend of the court in any proceeding in which a claim under this section has been asserted or in which a court is interpreting § 46-453 or this section.

17 of 20

**O.** A civil action authorized by this section is remedial and not punitive and does not limit and is not limited by any other civil remedy or criminal action or any other provision of law. Civil remedies provided under this title are supplemental and not mutually exclusive.

**P.** The cause of action or the right to bring a cause of action pursuant to subsection B or E of this section shall not be limited or affected by the death of the vulnerable adult.

**Q.** For the purposes of this section, "enterprise" means any corporation, partnership, association, labor union or other legal entity, or any group of persons associated in fact although not a legal entity, that is involved with providing care to a vulnerable adult.

Added by Laws 1988, Ch. 85, § 2. Amended by Laws 1989, Ch. 118, § 3; Laws 1991, Ch. 219, § 6; Laws 1998, Ch. 161, § 8; Laws 2003, Ch. 129, § 2; Laws 2005, Ch. 101, § 3; Laws 2009, Ch. 119, § 8; Laws 2010, Ch. 84, § 1; Laws 2012, Ch. 163, § 1.

1 Sections 32–1401 et seq., 32–1800 et seq.
2 Section 32–801 et seq.
3 Section 32–1601 et seq.
4 Section 32–2501 et seq.

### § 46–456. Duty to a vulnerable adult; financial exploitation; civil penalties; exceptions; definitions

**A.** A person who is in a position of trust and confidence to a vulnerable adult shall use the vulnerable adult's assets solely for the benefit of the vulnerable adult and not for the benefit of the person who is in the position of trust and confidence to the vulnerable adult or the person's relatives unless any of the following applies:

1. The superior court gives prior approval of the transaction on a finding that the transaction is for the benefit of the vulnerable adult.

2. The transaction is specifically authorized in a valid durable power of attorney that is executed by the vulnerable adult as the principal or in a valid trust instrument that is executed by the vulnerable adult as a settlor.

3. The transaction is required in order to obtain or maintain eligibility for services under title 36, chapter 29.¹

4. The person in the position of trust and confidence to the vulnerable adult is the vulnerable adult's spouse and the transaction furthers the interest of the marital community, including applying for benefits pursuant to title 36, chapter 29 or benefits for supplemental security income, medicare or veterans' administration programs.

**B.** A person who violates subsection A of this section or § 13–1802, subsection B shall be subject to actual damages and reasonable costs and attorney fees in a civil action brought by or on behalf of a vulnerable adult and the court may award additional damages in an amount up to two times the amount of the actual damages.

**C.** In addition to the damages prescribed in subsection B of this section, the court may:

1. Order a person who violates subsection A of this section or § 13–1802, subsection B to forfeit all or a portion of the person's:

(a) Interest in any governing instrument.

(b) Benefits under title 14, chapter 2² with respect to the estate of the vulnerable adult, including an intestate share, an elective share, an omitted spouse's share, an omitted child's share, a homestead allowance, any exempt property and a family allowance. If the vulnerable adult died intestate, the vulnerable adult's intestate estate passes as if the person who violated subsection A of this section or § 13–1802, subsection B disclaimed that person's intestate share to the extent the court orders that person to forfeit all or a portion of the person's benefits under title 14, chapter 2.

2. Revoke, in whole or in part, any revocable:

(a) Disposition or appointment of property that is made in a governing instrument by the vulnerable adult to the person who violates subsection A of this section or § 13–1802, subsection B.

(b) Provision by the vulnerable adult that is contained in a governing instrument that confers a general or nongeneral power of appointment on the person who violates subsection A of this section or § 13–1802, subsection B.

(c) Nomination or appointment by the vulnerable adult that is contained in a governing instrument that nominates or appoints the person who violates subsection A of this section or § 13–1802, subsection B to serve in any fiduciary or representative capacity, including serving as a personal representative, executor, guardian, conservator, trustee or agent.

3. Sever the interests of the vulnerable adult and the person who violates subsection A of this section or § 13–1802, subsection B in any property that is held by them at the time of the violation as joint tenants with the right of survivorship or as community property with the right of survivorship, and transform the interests of the vulnerable adult and the person who violated subsection A of this section or § 13–1802, subsection B into tenancies in common. To the extent that the person who

18 OF 20

lated subsection A of this section or § 13–1802, subsection B did not provide adequate consideration for the jointly held interest, the court may cause the person's interest in the subject property to be forfeited in whole or in part.

**D.** A revocation or a severance under subsection C, paragraph 2 or 3 of this section does not affect any third party interest in property that was acquired for value and in good faith reliance on apparent title by survivorship in the person who violated subsection A of this section or § 13–1802, subsection B unless a writing declaring the severance has been noted, registered, filed or recorded in records that are appropriate to the kind and location of the property and that are relied on as evidence of ownership in the ordinary course of transactions involving that property.

**E.** If the court imposes a revocation under subsection C, paragraph 2 of this section, provisions of the governing instrument shall be given effect as if the person who violated subsection A of this section or § 13–1802, subsection B disclaimed all provisions revoked by the court or, in the case of a revocation of a nomination in a fiduciary or representative capacity, the person who violated subsection A of this section or § 13–1802, subsection B predeceased the decedent.

**F.** Section 46–455, subsections F, G, H, I, K, L, M and P also apply to civil violations of this section.

**G.** The vulnerable adult or the duly appointed conservator or personal representative of the vulnerable adult's estate has priority to, and may file, a civil action under this section. If an action is not filed by the vulnerable adult or the duly appointed conservator or personal representative of the vulnerable adult's estate, any other interested person, as defined in § 14–1201, may petition the court for leave to file an action on behalf of the vulnerable adult or the vulnerable adult's estate. Notice of the hearing on the petition shall comply with § 14–1401.

**H.** Subsections A, B, C, D, E and F of this section do not apply to an agent who is acting within the scope of the person's duties as, or on behalf of, any of the following:

1. A bank, financial institution or escrow agent licensed or certified pursuant to title 6.[3]

2. A securities dealer or salesman registered pursuant to title 44, chapter 12, article 9.[4]

3. An insurer, including a title insurer, authorized and regulated pursuant to title 20.[5]

4. A health care institution licensed pursuant to title 36, chapter 4[6] that provides services to the vulnerable adult.

**I.** A civil action brought by a person in a position of trust and confidence against a vulnerable adult regarding a governing instrument established by the vulnerable adult is presumed not to be for the benefit of the vulnerable adult unless it is shown otherwise by clear and convincing evidence.

**J.** For the purposes of this section:

1. "Asset" includes all forms of personal and real property.

2. "Disposition or appointment of property" includes a transfer of an item of property or any other benefit of a beneficiary designated in a governing instrument.

3. "For the benefit of the vulnerable adult" includes any act that is consistent with the clearly stated wishes of the vulnerable adult found by the court to be made without coercion and while the vulnerable adult was of sound mind.

4. "Governing instrument" means a deed, a will, a trust, a custodianship, an insurance or annuity policy, an account with pay on death designation, a security registered in beneficiary form, a pension, a profit sharing, retirement or similar benefit plan, a family limited partnership, an instrument creating or exercising a power of appointment, a power of attorney, an estate planning document or a dispositive, appointive or nominative instrument of any similar type.

5. "Position of trust and confidence" means that a person is any of the following:

(a) A person who has assumed a duty to provide care to the vulnerable adult.

(b) A joint tenant or a tenant in common with a vulnerable adult.

(c) A person who is in a fiduciary relationship with a vulnerable adult including a de facto guardian or de facto conservator.

(d) A person who is in a confidential relationship with the vulnerable adult. The issue of whether a confidential relationship exists shall be an issue of fact to be decided by the court based on the totality of the circumstances.

(e) A beneficiary of the vulnerable adult's governing instrument.

6. "Revocable" means a disposition, appointment, provision or nomination under which the vulnerable adult, at the time of or immediately before death, was alone empowered, by law or under the governing instrument, to cancel the des-

19 of 20

704

§ 46-456

**WELFARE**

ignation in favor of the person who violated subsection A of this section or § 13-1802, subsection B, whether or not the vulnerable adult was then empowered to designate the vulnerable adult in place of the person who violated subsection A of this section or § 13-1802, subsection B or the vulnerable adult then had capacity to exercise the power.

Added by Laws 1996, Ch. 274, § 1. Amended by Laws 1998, Ch. 161, § 9; Laws 2003, Ch. 129, § 3; Laws 2008, Ch. 247, § 17, eff. Jan. 1, 2009; Laws 2009, Ch. 119, § 9; Laws 2012, Ch. 163, § 2; Laws 2013, Ch. 67, § 1; Laws 2013, Ch. 185, § 2.

1 Section 36-2901 et seq.
2 Section 14-2101 et seq.
3 Section 6-101 et seq.
4 Section 44-1941 et seq.
5 Section 20-101 et seq.
6 Section 36-401 et seq.

## § 46-457. Elder abuse central registry; mandatory reporting; release of information

**A.** A person who files an action under this article shall serve notice and one copy of the pleading with the attorney general within thirty days after the action is filed in the superior court. The notice shall identify the action, the person against whom the civil complaint has been filed and that person's attorney. The person who files an action is responsible for submitting a report on the final disposition of the case within thirty days after the final action is taken.

**B.** Except as otherwise provided in this subsection, a state agency other than adult protective services that renders an administrative decision that substantiates the allegation of abuse or that files a civil action that alleges abuse, neglect or financial exploitation pursuant to this article or title 36[1] shall serve notice and one copy of the administrative decision or pleading with the attorney general within thirty days after the administrative decision is rendered or within thirty days after the action is filed in the superior court. The agency is responsible for submitting a report on the final disposition of the case within thirty days after the final action is taken. Adult protective services shall report its findings to the registry established pursuant to § 46-459. The department of economic security shall not provide the notice prescribed in this subsection for information maintained in the adult protective services registry pursuant to § 46-459.

**C.** If the victim of the offense is a vulnerable adult, a person who files a criminal complaint or indictment involving a violation of this article or

§ 13-1102, 13-1103, 13-1104, 13-1105, 13-1201, 13-1203, 13-1204, 13-1303, 13-1304, 13-1403, 13-1404, 13-1406, 13-1802, 13-1807, 13-2002, 13-2310 or 13-3623 shall submit a copy of the criminal complaint or indictment to the attorney general within thirty days after arraignment. Within thirty days of the date of issuance of the minute entry the court shall endorse to the attorney general a copy of the sentencing minute entry or the minute entry reflecting the case has been dismissed or a judgment of acquittal has been entered. The attorney general shall develop guidelines to implement this subsection.

**D.** The attorney general shall maintain a registry containing the names of persons pursuant to subsection A, B or C of this section with the date the action was filed with the superior court or the date the administrative decision was rendered, the dates of the conduct set forth in the complaint, the indictment or decision, the general nature of the complaint, indictment or decision and the disposition of the complaint, indictment or decision, if known.

**E.** The information maintained pursuant to subsection D of this section is available to the public on written request to the custodian of the registry.

**F.** A person may submit a written statement on that person's own behalf to the custodian of the registry. The statement is part of the records for distribution in response to all inquiries concerning that person.

**G.** A person or agency that distributes information in the registry in good faith is not subject to civil or criminal liability.

Added by Laws 1998, Ch. 161, § 10. Amended by Laws 2006, Ch. 211, § 3; Laws 2009, Ch. 119, § 10.

1 Section 36-101 et seq.

## § 46-458. Hearing process; definitions

**A.** After completing its investigation, the department shall notify a person who is alleged to have abused, neglected or exploited a vulnerable adult that the department intends to enter a substantiated finding of abuse, neglect or exploitation in the registry and of that person's right:

1. To receive a copy of the report containing the allegation and findings.

2. To a hearing before entry into the registry pursuant to § 46-459.

B. The department shall send the notice prescribed in subsection A of this section by first class mail not more than fifteen calendar days after completion of the investigation.

ASPC – Eyman<br>For Reference Only

20 of 20

Micheal J. Cohn #288721
ASPC Lewis / STINER 5A21
P.O. Box 3100
Buckeye, AZ 85326

12/31/17

Amber Norris, Investigator
Prison Law Off.
General Delivery
San Quentin, CA 94964
Re: Neal Wiles #136803

Ms. Norris: - Note, I reviewed C. Kendrick 12/22/17 Letter to Bajanowski.
   I write today regarding Neal Wiles #136803 who has been
returned to the Stiner Unit (Only the Lord knows why)
after his extensive hospitalization, extensive treatment for
a litany of morbid medical conditions and still has
gangrenous toes facing amputation. He also spent time in
the Lewis Complex infirmary under the care of Dr. Paul who
-ordered an Infectious disease consult, which was not approved
by Dr. Falkhowe, Corizon Regional Medical Director.
   Note: It should be known that Mr. Wiles is a military
veteran, an army Paratrooper who served in combat in
Desert Storm and is a war hero, having received a purple
Heart for being shot in the leg during combat. He was
honorably discharged from the military.
   There There are constitutional, malpractice and

criminal issues in this case as follows; allegedly:

1) Treatment less efficacious than appropriate constitute's "Deliberate Indifference," Estelle v. Gamble, 429 US at 107 n.10 (1976). Violation of 8th amndt.

2) Adult abuse/Neglect/Exploitation, ARS§46-451-457 see §454. Mr. Wiles reports his gangrenous toes are likely the result of the misapplication of ankle restraints while in a coma and weak blood circulation. Why would a person in a coma for 2 weeks need leg restraints?

2b) Dr. Fullhowe's refusal to approve an ID consult implicates neglect and exploitation. Even a lay person knows that the local unit cannot properly treat/manage a complex case like Mr. Wiles', especially given the history of non-compliance at this unit as described in Parsons v. Ryan. If Fullhowe has an incentive in his employment agreement to limit specialty consults for the sake of profit, exploitation is implicated.

ARS§46-454 requires Dr. Paul to report abuse/neglect, etc. to the proper authorities. Failure to report is a misdemeanor. Dr. Fallbowe should be arrested and charged with felony adult Neglect, a Class 6 Felony.

3) Malpractice, Mr. Wiles believes his toes could have been saved had proper treatment been timely. This implicates the "Lost Opportunity Doctrine of medical malpractice." Matsayama v. Birnbaum (M.D. mass, 2008).

4) The corrections Officers who improperly restrained Mr. Wiles' legs should be arrested and charge with

Adult abuse/excessive force.

 Ms. Kendrick, Esq. and staff members have a moral ie not legal imperative ~~have~~ to report adult abuse/neglect to the Arizona Dept. of Public Safety and/or the Buckeye Police Dept.

   Remedys.

1) Mr. Wiles should be immediately transferred to the Maricopa County Medical Center for intensive treatment of his serious medical problems, upon successful conclusion of acute treatment he should be transferred to a skilled Nursing facility in the community. Counsel should submit a motion for Habeas Corpus relief for an illegal sentence.

2) I will assist Mr. Wiles with the futile grievance process.

3) I will assist Mr. Wiles with obtaining a medical malpractice attorney.

~~The~~ Human beings like Dr. Fullhove should be held accountable for their crimes. Dr. Paul is an honorable professional who has integrity, I have met her and respect her, but an example needs to be made of those who fail to obey the Adult abuse reporting requirements.

  Yours truly,
  Michael J. Ely, ELtD.
  Prisoner Rights Advocate
 Certificates in Torts/personal Injury, Civil Litigation, criminal Law

Michael J. Cohn #288721
ASPC Lewis/STIREN
P.O. Box 3100
Buckeye, AZ 85326


12/31/17


Amber Norris, INVESTIGATOR
Prison Law Ofc.
General Delivery
San Quentin, CA 94964
        Re: Vincent Rozakis #095474 (ASPC Lewis/STIREN)

Ms. Norris:
I write today on behalf of Inm Vincent Rozakis #095474.
Mr. Rozakis reported to me that several months ago he
was prescribed a medication for prophylactic reasons
due to exposure to TB. Reportedly, this was prescribed by
Nurse Practitioner Somalley, who is the chronic care provider
via videoscreen at Lewis Complex medical unit. Mr. Rozakis
reports that he understood that blood tests to monitor
functioning were to be given monthly. He reports he began
having symptoms after two months. It appears the medication
caused severe liver toxicity. His labs as of 12/22/17 are:
    AST - Normal 34 —  current  1107
    ALT - 10-49  —  1710
    Billirubin .3-1.2  —  5.2
Mr. Rozakis had a recent appointment with Mr. Thule, NP.
Mr. Thule was asked if the liver damage is permanent.

1

Mr. Thude's response was that he doesn't know yet if liver damage is permanent. There is/are constitutional and malpractice issues implicated in this case as follows:

1) Treatment less efficacious than appropriate CONSTITUTES "Deliberate Indifference," Estelle v. Gamble, 429 US, at 107, N. 10 (1976).

2) Lost opportunity doctrine of medical malpractice, Matsayuma v. Birnbaum, (M.D. mass) 2008). an opportunity to properly treat the condition with a better chance of a positive outcome was lost due to negligence. In other words, if the liver toxicity could have been treated after one month with a greater chance for success the opportunity was lost due to failure to obtain lab tests.

Questions:

1) Did NP Smalley order monthly labs? If so, who dropped the ball? If not, why not?

2) Mr. Rozakis should be referred to a liver specialist, at least Stat.

3) Should Mr. Rozakis immediately be sent to Maricopa Co. Medical Center for intensive liver treatment? Stat.

Note: To my knowledge, other than discontinuing the toxic medication nothing is being done to rehabilitate his liver. For example, Naturopathic physicians might use Silymarin and I.V. high dose vitamin C for liver rehabilitation as I understand it.

Please contact Mr. Rozakis directly. Hopefully, the necessity of more extreme treatments can be avoided

2

with rapid intervention with appropriate treatments.

Yours truly,
Michael J. Coly, Ed.D.
Prisoner Rights Advocate
certificates in Torts/Personal Injury and Civil Litigation.

P.S. Please report this matter as Adult ABUSE, Neglect
per ARS § 46-454 and failure to report abuse/neglect
to the AZ, Dept, of Public Safety or the Buckeye
Police Dept. It is my understanding inmates cannot
file criminal charges, so we rely on you to do the
right thing, MJC

3