Index of Exhibits to Declaration of Corene Kendrick

Exhibit 1    January 5-9, 2018 Emails Between C. Kendrick and A. Hesman Regarding
             Mistakes in September 2017 CGARs

Exhibit 2    January 4, 2018 Letter from D. Fathi to R. Valenti Regarding Document
             Production Issues

Exhibit 3    December 29, 2017 Letter from R. Valenti to C. Kendrick Regarding Document
             Production Issues

Exhibit 4    January 2-5, 2018 Emails Between D. Fathi and A. Hesman Regarding
             Information on Pain Medication and Formulary

Exhibit 5    FILED UNDER SEAL
             January 10, 2018 Letter from D. Fathi to T. Bojanowski Regarding Class
             Member in Need of Mental Health Care

Exhibit 6    FILED UNDER SEAL
             November 15, 2017, December 19, 2017, and December 21, 2017 Letters from
             R. Lomio to L. Rand and T. Bojanowski Regarding Class Member in Need of
             Medical Care

Exhibit 7    FILED UNDER SEAL
             December 28, 2017 Letter from R. Lomio to T. Bojanowski Regarding Class
             Member in Need of Medical Care

Exhibit 8    FILED UNDER SEAL
             January 4, 2018 Letter from C. Kendrick to T. Bojanowski Regarding Class
             Member in Need of Medical Care

Exhibit 9    FILED UNDER SEAL
             January 5, 2018 Letter from R. Lomio to T. Bojanowski Regarding Class
             Member in Need of Medical Care

Exhibit 10   FILED UNDER SEAL
             January 8, 2018 Letter from C. Kendrick to T. Bojanowski Regarding Class
             Member in Need of Medical Care

Exhibit 11   Correspondence Dated December 4, 2017 – January 10, 2018 Between
             Plaintiffs' Counsel and L. Rand Regarding Parsons Q3 Time and Expenses

# Exhibit 1

## Corene Kendrick

| | |
|---|---|
| **From:** | Ashlee Hesman |
| **Sent:** | Tuesday, January 9, 2018 6:05 PM |
| **To:** | Corene Kendrick; Parsons Team |
| **Cc:** | Amy Fettig; Alison Hardy; David Fathi; Kirstin Eidenbach; Don Specter; Maya Abela; Rita Lomio |
| **Subject:** | RE: Parsons - September CGARs |

Corene,

Plaintiffs have reviewed the files contained in your December 11, 2017 correspondence and reached the conclusion that the files were incorrectly counted compliant.  It is unclear from your correspondence what documents (if any) support your claims.  We are requesting the supporting documentation.  If you do not have supporting documentation, or refuse to provide it, we will add it as an agenda item for next week's hearing.

Thank you,

Ashlee

**From:** Corene Kendrick [mailto:ckendrick@prisonlaw.com]
**Sent:** Tuesday, January 09, 2018 1:14 PM
**To:** Ashlee Hesman <ahesman@strucklove.com>; Parsons Team <ParsonsTeam@strucklove.com>
**Cc:** Amy Fettig <afettig@aclu.org>; Alison Hardy <ahardy@prisonlaw.com>; David Fathi <dfathi@aclu.org>; Kirstin Eidenbach <kirstin@eidenbachlaw.com>; Don Specter <dspecter@prisonlaw.com>; Maya Abela <mabela@azdisabilitylaw.org>; Rita Lomio <rlomio@prisonlaw.com>
**Subject:** RE: Parsons - September CGARs

Dear Ashlee,

Please provide us with specific information regarding which class member files you contend were correctly counted as compliant.  Defendants have access to eOMIS; we are not going to create PDFs and produce back to you documents that are in ADC's custody and control.  Our letter offered enough relevant detail from each file.

We also request that you explain specifically what you are referring to when you contend that Plaintiffs' counsel has a "misunderstanding of source documents and/or inmate medical records."

Thank you,

Corene

Corene Kendrick, Staff Attorney
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, CA 94710
510-280-2621
ckendrick@prisonlaw.com

**From:** Ashlee Hesman [mailto:ahesman@strucklove.com]
**Sent:** Friday, January 5, 2018 2:26 PM
**To:** Corene Kendrick (ckendrick@prisonlaw.com) <ckendrick@prisonlaw.com>
**Cc:** Amy Fettig (afettig@aclu.org) <afettig@aclu.org>; Alison Hardy (ahardy@prisonlaw.com) <ahardy@prisonlaw.com>; David Fathi (dfathi@aclu.org) <dfathi@aclu.org>; Kirstin Eidenbach (kirstin@eidenbachlaw.com) <kirstin@eidenbachlaw.com>; Parsons Team <ParsonsTeam@strucklove.com>; Don Specter (dspecter@prisonlaw.com) <dspecter@prisonlaw.com>; Maya Abela <mabela@azdisabilitylaw.org>
**Subject:** Parsons - September CGARs

Corene,

We've conducted a preliminary review of the approximate 180 inmate files Plaintiffs claim were incorrectly counted compliant in the September 2017 CGARS.  Our review confirmed that many of the claimed errors were correctly counted complaint.  As was the case with Plaintiffs' correspondence regarding the July and August CGARS, Plaintiffs' incorrect claims of error stem from Plaintiffs' misunderstanding of source documents and/or inmate medical records, and not from the faulty monitoring allegations Plaintiffs have repeatedly presented to the Court.

In order to understand Plaintiffs' position, please provide us with each and every document that supports the "errors" alleged by Plaintiffs in their December 11, 2017 correspondence.  Until we receive that information, we are unable to respond to your correspondence.

Thank you,

Ashlee



Ashlee B. Hesman
Attorney

**STRUCK LOVE BOJANOWSKI & ACEDO, PLC**
3100 West Ray Road | Suite 300 | Chandler AZ 85226
480.420.1631 | ahesman@strucklove.com | STRUCKLOVE.COM

This electronic mail transmission contains information from the law firm Struck Love Bojanowski & Acedo, PLC that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 420-1600. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

# Exhibit 2

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT



January 4, 2018

**BY ELECTRONIC MAIL ONLY**

Richard M. Valenti
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
rvalenti@strucklove.com

Re:     *Parsons v. Ryan*

Dear Counsel:

We write regarding several outstanding matters.

AMERICAN CIVIL
LIBERTIES UNION FOUNDATION

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

<u>Document production</u>

**Requests No. 18 and 19:**  Please confirm that the documents listed in your letter of December 29, 2017 (12/29/17 letter at 1) represent the entire universe of documents responsive to these requests, and that no documents are being withheld pursuant to your objections.

**Request No. 55**:  With regard to the "ADC and Corizon Bi-Weekly Directors' Office Meetings" (ADCM1043019-1043179), you have produced documents for meetings on the following dates in 2017; we had requested them from January 1, 2017 to the present (see 12/1/17 Valenti letter at 2):

- February 9
- March 3
- March 20
- April 3
- April 17
- May 2
- May 15
- June 12
- June 26
- July 12
- July 24
- August 10
- August 23
- September 21
- October 5

- October 19
- October 30

**Please confirm that there were no other meetings in 2017; if there were, please produce the missing agendas and minutes.**

**Request No. 67:**  You write that "Defendants are awaiting Corizon's response" (12/29/17 letter at 2).  We requested these documents from Defendants nearly five months ago (August 15, 2017); please let us know when we can expect to receive them.

<u>Other matters</u>

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

1.  Defendants have stated that they will re-audit CGARs from August 2017 (11/29/17 letter at 3; Doc. 2489 at 3 n. 1), but you have not produced the re-audited CGARs.  **Please let us know when re-audited August 2017 CGARs will be produced.**

2.  The Court has recently issued orders modifying Defendants' monitoring methodology for Performance Measures 1, 2, 4, 77, and 95. *See* Doc. 2456 at 4; Doc. 2474 at 1.  **Please produce a revised Monitor Guide reflecting the Court's orders.**

3.  In our November 29 letter, we asked "Please state whether any psychologists or psych associates are providing telepsychology care and, if so, identify all such persons."  11/29/17 letter at 2.  Your December 7 response was "Dr. Sonya Khilnani (psychologist) and Patrick Metz (LPC)."  12/7/17 letter at 2.  Your November 18 letter states that there were 1855 telepsychology sessions between June and October 2017.  11/18/17 letter at 2.  **Please confirm that Dr. Khilnani and Mr. Metz conducted all 1855 of these sessions.**

Thank you very much.

Very truly yours,

David C. Fathi

Cc: All      counsel

2

# Exhibit 3



STRUCK LOVE BOJANOWSKI & ACEDO, PLC

Richard M. Valenti
480.420.1615
rvalenti@strucklove.com

December 29, 2017

**_VIA EMAIL ONLY_**
Corene Kendrick
PRISON LAW OFFICE
General Delivery
San Quentin, CA  94964

     Re:     *Parsons v. Ryan*
            **December 14, 2017 correspondence regarding outstanding document requests and reissued July CGARs**

Corene,

Defendants respond to your December 14 letter regarding document production.

**Request No. 18:** Defendants reiterate their objections to this request as documented in our December 1 letter. Without waiving objections, refer to the following:

1. ADC and Corizon Bi-Weekly Director's Office Meetings (ADCM1043019-1043179, ADCM1047600-1047601).

2. Corizon Workflow Charts and Narratives for Performance Measures 11, 13, 37, 39, 46, 54, 66, 85, and 92 (ADCM1047581-1047599).

3. ADC HSCMB Monitor Guide for Performance Measures 1-103.

**Request No. 19:** Defendants reiterate their objections to this request as documented in our December 1 letter. Without waiving objections, refer to the following:

1) ADC and Corizon Bi-Weekly Director's Office Meetings (ADCM1043019-1043179, ADCM1047600-1047601).

2) ADC HSCMB Monitor Guide for Performance Measures 1-103.

3) Richard Pratt's statements at the May 10, 2017 Status Hearing. *See* 5/10/17 Tr. at 798-803.

Corene Kendrick
December 29, 2017
Page 2

**Request No. 53:** Defendants object to your request. ADC is implementing the version of DI 358 that is on ADC's website. Therefore, any "drafts" of DI 358 are irrelevant. Furthermore, the request is overbroad in scope and the burden of identifying and producing documents responsive to this request outweighs any likely benefit of production. *See* Fed. R. Civ. P. 26(b)(1).

**Request No. 54:** Defendants reiterate their objections to this request as documented in our December 1 letter. With respect to your request for "all documents relating to the implementation of the close custody pilot program at Florence-Central," this is a new document request. Defendants object to this request for the same reasons as Request 54; in addition, this request is duplicative of Request 63. Please refrain from making new document requests within letters that concern outstanding document requests. If Plaintiffs would like to make a new document request, they need to do so through a separate Request for Production (see e.g., Supplemental Production section of December 18, 2017 Plaintiffs' Monthly Request for Production).

With respect to the August 2017 Close Custody Notebooks, Defendants produced the August 2017 notebooks for Florence (ADCM1043384-1043409), Lewis (ADCM1043410-1043440), and Perryville (ADCM1043441-1043579) on December 14, 2017. Defendants produced the August 2017 Closed Custody Notebook for Eyman (ADCM1045996-1046027) on December 22, 2017.

**Request No. 62:** Refer to pages 122-136 and pages 153-155 of the December 20, 2017 Status Hearing transcript.

**Request No. 63:** Defendants reiterate their objections to this request as documented in our December 1 letter. With respect to your request for "all documents relating to the implementation of the close custody pilot program at Florence-Central," this is a new document request. Defendants object to this request for the same reasons as Requests 54 and 63. Please refrain from making new document requests within letters that concern outstanding document requests. If Plaintiffs would like to make a new document request, they need to do so through a separate Request for Production (see e.g., Supplemental Production section of December 18, 2017 Plaintiffs' Monthly Request for Production).

With respect to the August 2017 Close Custody Notebooks, Defendants produced the August 2017 notebooks for Florence (ADCM1043384-1043409), Lewis (ADCM1043410-1043440), and Perryville (ADCM1043441-1043579) on December 14, 2017. Defendants produced the August 2017 Closed Custody Notebook for Eyman (ADCM1045996-1046027) on December 22, 2017.

**Request No. 67:** Defendants are awaiting Corizon's response.

Corene Kendrick
December 29, 2017
Page 3

The re-issued July CGARs for Performance Measure 44 at Lewis, Perryville, and Safford are being produced with this letter.

Sincerely,

Richard M. Valenti

RMV/eap

cc:    Counsel of Record

# Exhibit 4

## Corene Kendrick

| | |
|---|---|
| **From:** | Ashlee Hesman |
| **Sent:** | Friday, January 5, 2018 7:55 AM |
| **To:** | David Fathi; Corene Kendrick (ckendrick@prisonlaw.com); Don Specter (dspecter@prisonlaw.com); Maya Abela; Kirstin Eidenbach (kirstin@eidenbachlaw.com) |
| **Cc:** | Parsons Team |
| **Subject:** | RE: Parsons - Gabapentin Information |

David,

We are still waiting on information from Corizon on this issue, and hope to have responsive documents to you next week.

Thanks,

Ashlee

---

**From:** Ashlee Hesman
**Sent:** Wednesday, January 03, 2018 8:34 AM
**To:** 'David Fathi' <dfathi@aclu.org>; Corene Kendrick (ckendrick@prisonlaw.com) <ckendrick@prisonlaw.com>; Don Specter (dspecter@prisonlaw.com) <dspecter@prisonlaw.com>; Maya Abela <mabela@azdisabilitylaw.org>; Kirstin Eidenbach (kirstin@eidenbachlaw.com) <kirstin@eidenbachlaw.com>
**Cc:** Parsons Team <ParsonsTeam@strucklove.com>
**Subject:** RE: Parsons - Gabapentin Information

David,

Thank you.  We are aware of the scope of the Court's order.

-   Ashlee

---

**From:** David Fathi [mailto:dfathi@aclu.org]
**Sent:** Wednesday, January 03, 2018 8:33 AM
**To:** Ashlee Hesman <ahesman@strucklove.com>; Corene Kendrick (ckendrick@prisonlaw.com) <ckendrick@prisonlaw.com>; Don Specter (dspecter@prisonlaw.com) <dspecter@prisonlaw.com>; Maya Abela <mabela@azdisabilitylaw.org>; Kirstin Eidenbach (kirstin@eidenbachlaw.com) <kirstin@eidenbachlaw.com>
**Cc:** Parsons Team <ParsonsTeam@strucklove.com>
**Subject:** RE: Parsons - Gabapentin Information

Ashlee,

Thank you for the update.  Please note that Judge Duncan's order to produce information and documents was not limited to Gabapentin:

Q. So you could produce that to us and we could see what the number of tramadol and gabapentin dispensings were in the third quarter in the prison system and compare that to the previous year, for example?

A. Yes, sir.
Q. Okay. Can I ask you to make sure that happens?
A. Of course.

12/20/17 Tr. at 129:23-130:4; *see also id.* at 191:22-192:7 (directing production of "the additional information regarding the formulary and the documents regarding the different dispensing rates").

We look forward to receiving the ordered information and documents by the end of this week.

Thanks very much.

David C. Fathi*
Director, ACLU National Prison Project
915 15th St. N.W., 7th Floor
Washington, DC  20005
(202) 548-6603
dfathi@aclu.org
@DavidCFathi


*Not admitted in DC; practice limited to federal courts


**From:** Ashlee Hesman [mailto:ahesman@strucklove.com]
**Sent:** Tuesday, January 02, 2018 1:59 PM
**To:** Corene Kendrick (ckendrick@prisonlaw.com); Amy Fettig; David Fathi; Don Specter (dspecter@prisonlaw.com); Maya Abela; Kirstin Eidenbach (kirstin@eidenbachlaw.com)
**Cc:** Parsons Team
**Subject:** Parsons - Gabapentin Information

Counsel,

At the December 20, 2017 hearing, Mr. Pratt testified that he hoped to obtain the requested information regarding Gabapentin by today.  Unfortunately, given the recent holidays, it is taking longer than expected to obtain this information.  We hope to have this to Plaintiffs and the Court by the end of this week.

Thank you,

Ashlee



Ashlee B. Hesman
Attorney
**STRUCK LOVE BOJANOWSKI & ACEDO, PLC**
3100 West Ray Road | Suite 300 | Chandler AZ 85226
480.420.1631 | ahesman@strucklove.com | STRUCKLOVE.COM

This electronic mail transmission contains information from the law firm Struck Love Bojanowski & Acedo, PLC that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 420-1600. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.



January 10, 2018

**BY ELECTRONIC MAIL ONLY**

Timothy J. Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com

**Re:    Parsons v. Ryan**
**Class member in need of mental health care**
██████████, ADC █████, ASPC-Tucson

Dear Tim:

We write regarding Mr. ████████ a class member in urgent need of mental health care.  We previously wrote to you regarding Mr. ████████ on December 19, explaining that he was in such excruciating pain that he had chewed off parts of his fingers.  I attach that letter, to which we have received no substantive response.

A January 4, 2018 note in Mr. ████████ record indicates that on that date, he "decided to attempt to bite his finger off his left hand index finger" and "bit almost clean through to the first knuckle:"

> ICS-INMATE BLEEDING DUE TO CUTTING HIS OWN ARM WITH RAZOR. Inmate states that he had to due it because he was in pain and it helped him relieve that pain. Multiple cuts along the arm and hand, all bleeding, all at different lengths and depths, none requiring suturing. Pressure applied by myself with an ABD pad to entire arm until bleeding had stopped which took 20 mins or more. Inmate had a blood trail from his bunk to medical of bright red blood. Once bleeding was controlled, area was cleaned with a Betadine and Saline water and dressed with Sterile dressing and tape as a wrap at this point could be use as a suicide tool. After I spoke to the on-call mental health for watch orders, the inmate was being prepared to being moved, at that time the inmate put his fingers in his mouth and decided to attempt to bite his finger off his left hand index finger. He bit almost clean through to the first knuckle, pressure was applied until bleeding stopped and surgery glue applied. Bandaids applied after area dried. Then inmate started picking and removing dry skin and nails to point of bleeding, on left hand. that fingers were cleaned and dressed with bandaids. Inmate states that he wants ex girlfriend came to him in a dream with a baby and he wants to die and be with her and the baby boy. Call placed to the on call mental health for the watch orders

**AMERICAN CIVIL**
**LIBERTIES UNION FOUNDATION**

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
*ATTORNEY AT LAW**

**NOT ADMITTED IN DC;*
*PRACTICE LIMITED TO*
*FEDERAL COURTS*

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT

however when I called back for other orders I was told to contact
another provider, who referred to yet another provider. I contacted the
medical provider on call for medical orders. See new orders. I did
receive order from mental health for watch order, continuous. Once
inmate was stable he was transport via stretcher DOC van with 3 DOC
officers present.

A January 8 note reads:

> MH met IM for a continuous suicide watch. IM was lying down on his
> bunk, head covered with his safety blanket. Writer offered I/M meeting
> in a confidential setting but he is unable/refused and was seen cell-side.
> MH was informed by security, IM is medicated with pain killers, has
> been sleeping most of the time.  IM made eye contact and made thumb
> up/sign to respond to questions.

> IM just met Psychiatrist to review his medication, he has to be
> transported on wheelchair for a confidential setting.

As of today, Mr. ███████ remains on a continuous watch.  The statement that
on January 8 he had "just met Psychiatrist" is untrue; according to eOMIS, his
last interaction of any kind with a mental health provider was on November 11,
2017.  This interaction appears in eOMIS as a "non-clinical contact note," so it
is not clear Mr. ██████ was actually seen by a provider.

It is clear that Mr. ██████ pain and his self-harming behavior are not being
adequately treated, and he has not been seen by a mental health professional
qualified to evaluate and treat him.  We urge that he be seen immediately and
in person by a psychiatrist and evaluated for transfer to an inpatient facility
where he can receive adequate mental health treatment.

Very truly yours,

David C. Fathi

Enclosure

Cc: All      counsel
    Mr. ██████

2



# PRISON LAW OFFICE

General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

December 19, 2017

Lucy M. Rand, Assistant Attorney General
Office of the Arizona Attorney General
1275 West Washington Street
Phoenix, AZ 85007-2926
Lucy.Rand@azag.gov

RE:     *Parsons v. Ryan*, 2:12-CV-00601
Class Member in Need of Medical Care
██████ ADC██████ Tucson - Manzanita

Dear Ms. Rand:

I write regarding Mr. ██████ I met Mr. ██████ during Plaintiffs' recent tour of ASPC-Tucson. Mr. ██████ uses a wheelchair due to left side paralysis.

Mr. ██████ reported that he was in excruciating pain.  He reported that the pain medications he was prescribed—Tylenol and another medication he could not remember the name of—were not working well.  He reported that the "horrible pain" he felt "makes everything else" seem insignificant.  Although he tries to hold the pain in, "the tears fall inside."  He keeps a photograph of his daughter posted above his bed to remind him that he needs to get out of prison for her.

He reported that, about three months ago, he chewed off part of the fingers on his left hand because the pain was so unbearable.  He also reported that he had cut the top of his left arm due to the pain.  With his permission, staff took photographs of his left hand and arm during the tour:



ADCM1043280-81

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

Lucy M. Rand, Assistant Attorney General
Re: ██████████████
December 19, 2017
Page 2

According to the electronic medical record, an ICS was initiated on September 15, 2017.  The following notes appear in the medical record:

| | |
|---|---|
| Subjective: | "ICS initiated, IM was engaging in self harm, chewing his finger.  Pieces of his finger have been recovered.  IM stated that he is in a lot of pain and added at one point, I would rather commit suicide than be in this much pain.  IM explained that he felt he was not being listened to to ensure he got the right medications." |
| | "ICS called regarding this IM self harming himself. IM has an extensive hx of this.  When questioned why did he bite himself multiple times he reports he wanted his pain medication." |
| Objective: | "'I'm in pain so I chew it off, I want to bite on my tongue too.'" |
| | "Approx 4 cm complete bite to his distal left forearm.  He also has nipped at several of his fingers." |
| Assessment: | "Minimal bleeding on L fore arm, fingers, and between thumb and index finger.  IM said that he has been on pain medication for years and doesn't want to be in pain, so he chews it off.  Refer IM to psych." |
| Patient Education: | "Avoid chewing/biting/self harm.  Avoid bite on the wound area.  HNR PRN." |

Shortly after the psych referral, Mr. ███████ was referred back to medical for pain management.  In particular, PA Spizzirri wrote on September 19, 2017, that he "[w]as asked by admin to re eval his need for cont pain management.  Per MH his self hasr [sic] is not the only reason fot [sic] his self harm behavior.  They feel his old injuries maybe contributing to this behavior."

Mr. ██████ has since been seen intermittently by medical staff for his pain.  Unfortunately, the problem does not appear to have been squarely resolved.  Earlier today, he was seen by a Psych Associate, who wrote in his medical record that she "[o]ffered him self-help workbooks on anxiety, managing pain."  He also reported "9/10" pain to an RN this morning.  The RN entered the following Plan Notes:  "Continue to monitor."

We request that Mr. ██████ be evaluated by a provider and that a meaningful pain management plan be developed and implemented.  We also ask that a provider speak with him about other housing options that may be available, so he has an opportunity to participate in activities, including yard time, as recommended by the Psych Associate.  Thank you for your prompt attention to this matter.

Sincerely yours,

Rita Lomio
Staff Attorney

cc:   Mr. ████████████████

# Exhibit 6

# FILED UNDER SEAL



# PRISON LAW OFFICE
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

November 15, 2017

Lucy M. Rand, Assistant Attorney General
Office of the Arizona Attorney General
1275 West Washington Street
Phoenix, AZ 85007-2926
Lucy.Rand@azag.gov

      RE:   *Parsons v. Ryan*, 2:12-CV-00601
            Class Member in Need of Medical Care
            ██████████████ ADC ██████, Florence - Central

Dear Ms. Rand:

        I write on behalf of ████████████, a 25-year-old man with chronic myeloid leukemia, a type of blood cancer. The medical record documents serious lapses in medical care for this condition.

        On 10/4/17, Mr. █████████ was sent to the Ironwood Cancer Center for a consult with his oncologist, who prescribed hydroxyurea 500 mg (a chemotherapy medication) and ordered weekly blood tests (CMP, CBC). That same day, the oncologist submitted a letter to prison officials, stating:

> **The patient listed above is under my care. It is my care plan that Mr. ████████ continue to take the Hydroxyurea 500mg every day as well as Gleevec. I want CBC and CMP blood draws faxed to me weekly…. I would like visits every 3 weeks until further notice.**

        Over a month later, Mr. █████████ was sent back to Ironwood for a consult with the same oncologist. The oncologist submitted an identical order for the tests originally requested on 10/4/17, along with a copy of her 10/4/17 letter, this time with handwritten circles and underscores included to emphasize the need for CBC and CMP blood draws faxed to her weekly, and the need for follow-up visits every three weeks. A handwritten note on the letter, presumably written by the oncologist, reads:

> **This was not done, please follow above[.] 11/8/17 @ 10:00 am[.]**

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

Lucy M. Rand, Assistant Attorney General

Re: ███████████████

November 15, 2017

Page 2

Upon Mr. ███████ return from the 11/8/17 oncology consult, a provider entered the following note:  "**returned Ironwood and needing CBC and CMP weekly and faxed to provider and follow up in 3 weeks.**" That same day, a nurse entered the following note:  "**Dr. Thompson** [provider] **notified of return orders received please see lab orders**."  The nurse appears to have submitted an order for a CMP blood test on 11/9/17, and an order for the CBC test on 11/18/17, each with orders for weekly draws and a fax number for the Ironwood Cancer Center.

The record is unclear as to whether both blood tests have been scheduled and/or performed.  There is a note from 11/9/17 indicating that CBC and CMP blood draws were completed by and submitted to BioReference Laboratories on that date, and indicating that results were received on 11/10/17, but we cannot find a record of the results.  The record also indicates a pending appointment for a CBC blood draw on 11/18/17, but that entry is marked as "completed."   Nor is it clear why it took over a week to schedule the CBC test, which was ordered to take place on a weekly basis.  There is no entry indicating a pending appointment for a CMP blood test.

No consult request has been submitted for an oncology follow-up.  Nor is hydroxyurea listed in Mr. ███████ current medication list, although it was prescribed as part of Mr. ███████ oncology treatment plan on at least two occasions.

We request that ADC immediately implement Mr. ███████ treatment plan, which includes weekly blood draws, with results faxed weekly to his oncologist; appointments with his oncologist every three weeks; and chemotherapy medication as prescribed by his oncologist.

Thank you for your prompt attention to this matter.

Sincerely yours,

Rita Lomio
Staff Attorney

cc: Mr. ███████



**PRISON LAW OFFICE**

General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

December 19, 2017

Lucy M. Rand, Assistant Attorney General
Office of the Arizona Attorney General
1275 West Washington Street
Phoenix, AZ 85007-2926
Lucy.Rand@azag.gov

     RE:    *Parsons v. Ryan*, 2:12-CV-00601
           Class Member in Need of Medical Care
           ███████████ ADC ██████ Florence - Central

Dear Ms. Rand:

    I write again on behalf of ████████████, a 25-year-old man with chronic myeloid leukemia, a type of blood cancer. We previously wrote to you about Mr. ██████████ on November 15, 2017. Unfortunately, the medical record continues to document serious lapses in medical care for this condition.

    On December 6, 2017, Dr. Cruz of Ironwood Cancer & Research Centers documented the following treatment plan:

    CML. Accelerated phase. Initial presentation with leukocytosis white count of 70,000.
    Bone marrow biopsy confirmed the diagnosis of CML.
    By peripheral blood there was a loss of 13 q. 14.3 FISH study. Therefore, I believe that this patient has accelerated phase of CML.
    He is currently in prison and will be difficult for bone marrow transplantation candidacy evaluation.
    Laboratories 3 weeks ago showed hematological response.
    I will continue Gleevec at this point.
    Unfortunately, I do not have any newer laboratories for him nor the BCR ABL mutation by PCR.
    Again, discussed with prison representative that we need to have the necessary laboratories prior to each visit. Otherwise, I do not have a way to monitor his disease.
    We have also refer him to Maricopa Medical Center with medical oncology there. Patient is awaiting for an appointment.

    Seizure disorders. Continue on Keppra per neurology.
    Referral to neurology was made again today.

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

Lucy M. Rand, Assistant Attorney General
Re: ███████████████████
December 19, 2017
Page 2

On December 13, an urgent consult request was submitted for "IRONWOOD oncology follow up :: Myeloid Leukemia." The request was approved on December 18, but with the following note:

> Due to the transition process from AON to MIHS, there has been a large amount of patients that are currently on a wait list/First come first serve basis and will try to schedule him as soon as possible.

We are deeply concerned by continued delays in Mr. █████████ medical care. We ask that he immediately be sent to the oncologist, with all necessary lab results provided in advance. We also ask that a provider review Dr. Cruz's specialty report and ensure that all necessary treatment and follow-up care have been ordered. Thank you for your prompt attention to this matter.

Sincerely yours,

Rita Lomio
Staff Attorney

cc:    Mr. █████████



# PRISON LAW OFFICE

General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

December 21, 2017

Lucy M. Rand, Assistant Attorney General
Office of the Arizona Attorney General
1275 West Washington Street
Phoenix, AZ 85007-2926
Lucy.Rand@azag.gov

RE:    *Parsons v. Ryan*, 2:12-CV-00601
        Class Member in Need of Medical Care
        ██████████ ADC ██████ Florence - Central

Dear Ms. Rand:

We write again regarding Mr. █████████  We have written to you about Mr. █████████ twice in the past two months—on November 15 and December 19.  My colleague Corene Kendrick also brought delays in Mr. █████████ cancer treatment to the attention of the Court at yesterday's hearing.  We remain deeply concerned about the serious and ongoing errors and delays in his medical care.

It appears that Mr. ████████ was administered excessive seizure medication on December 19. Dr. Stewart documented "POSSIBLE EXCESSIVE KEPPRA," "CONFUSION AND LETHARGY DUE TO ABOVE," with Plan Notes of "AWAIT MENTAL STATUS NORMALIZATION" and Patient Education Notes of "UNLIKELY THAT PATIENT COULD UNDERSTAND DISCUSSION."

In addition, Mr. █████████ apparently did not receive his chemotherapy on December 16 and 18, because, according to the electronic medical record, "Medication Not Available."

**Medication Administration Record** (1 - 84 of 84)

| Date | Time | Quantity Dispensed | Source | Outcome | Comments/Addendums |
|------|------|-------------------|--------|---------|--------------------|
| 12/18/2017 | 09:13 | 0.00 | Patient Specific | Medication Not Available | ***CLINIC STOCK MEDICATION ADMINISTERED*** The Order/Rx # associated with t... |
| 12/17/2017 | 09:09 | 1.00 | Patient Specific | Administered | ***CLINIC STOCK MEDICATION ADMINISTERED*** The Order/Rx # associated with t... |
| 12/16/2017 | 10:41 | 0.00 | Clinic Stock | Medication Not Available | ***CLINIC STOCK MEDICATION ADMINISTERED*** The Order/Rx # associated with t... |
| 12/15/2017 | 09:13 | 1.00 | Patient Specific | Administered | ***CLINIC STOCK MEDICATION ADMINISTERED*** The Order/Rx # associated with t... |
| 12/14/2017 | 09:30 | 1.00 | Patient Specific | Administered | ***CLINIC STOCK MEDICATION ADMINISTERED*** The Order/Rx # associated with t... |

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

Lucy M. Rand, Assistant Attorney General
Re: ███████████████████
December 21, 2017
Page 2

     We ask that the Arizona Department of Corrections immediately review Mr. ███████ medical record to investigate the serious and varied problems with his medical care and take all necessary corrective action.  Thank you for your prompt attention to this matter.

Sincerely yours,

Rita Lomio
Staff Attorney

cc:    Mr. ████████

# Exhibit 7

# FILED UNDER SEAL



# PRISON LAW OFFICE

General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

December 28, 2017

Mr. Timothy Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com

RE:   *Parsons v. Ryan*, 2:12-CV-00601
      Class Member in Need of Medical Care
      ██████████ ADC ██████ Eyman - SMU I

Dear Mr. Bojanowski:

I write regarding Mr.████████  Mr.████████ has a history of prostate cancer for which he underwent a transurethral resection of the prostate (TURP) in 2016.  Unfortunately, Mr.████████ again was diagnosed with prostate cancer.

According to the electronic medical record, Mr.████████ was referred to the Arizona Oncology Network (AON) and began radiation treatment in August 2017.  Treatment was completed on October 6, 2017.  The oncologist recommended follow-up with Mr.████████ in one month—that is, by November 6.

An urgent follow-up appointment was not submitted for approval until November 22, 2017, well after the requested appointment was due and almost two months after the original request by the oncologist.  It is not clear whether the delay was the result of poor recordkeeping.  We note that the oncologist's specialty report and recommendation from October 6 was scanned into Mr.████ medical record on October 19.  However, the request for the October 6 oncology appointment was itself entered into the record on October 26—twenty days after it occurred.  The specialty report is not associated with that request.

In any event, the requested follow-up oncology appointment has been scheduled "the week of January 18th with MIHS.  [S]oonest available apt per Brian Barnes RN BSN at MIHS oncology"—in violation of Performance Measure 50.  My colleague Corene Kendrick recently raised concerns during a *Parsons* court hearing about the "large amount of patients that are currently on a wait list . . . due to the transition process from AON to MIHS."  12/20/17 Tr. at 67:14-16.

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

Mr. Timothy Bojanowski
Re: █████████████████
December 28, 2017
Page 2

      We request that Mr. ██████ receive his oncology follow-up appointment immediately, as it already is almost two months late.  Thank you for your prompt attention to this matter.


Sincerely yours,

Rita Lomio
Staff Attorney


cc:    Mr. ███████

# Exhibit 8

# FILED UNDER SEAL



# PRISON LAW OFFICE

General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

January 4, 2018

Mr. Timothy Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com

RE:  *Parsons v. Ryan*, 2:12-CV-00601
     Class Member in Need of Medical Care
     ███████, ADC ██████ Perryville - Santa Maria

Dear Mr. Bojanowski:

I write regarding Ms. ██████ a 38 year old woman housed at Perryville-Santa Maria Unit with breast cancer who has experienced delays and interruptions in the treatment of her cancer. She has recently developed a suspicious mass on her ovary for which she is awaiting specialty diagnostic evaluation, and a new mass in her breast was identified by her oncologists but despite their request for a "stat" mammogram, this diagnostic procedure was requested only as a "routine" consult. Ms. ██████ reports that she has a significant family history of cancer. Finally, Ms. ██████ reports considerable pain associated with her cancer and the intensive chemotherapy that she is undergoing, but Corizon has only provided her with 375 mg. Alleve to manage this pain.

Ms. ██████ first reported via an HNR on April 19, 2017 that she needed a mammogram. She was seen on nurse's line by the Mental Health RN Marcus Konyi Kometi, who classified the request as a "skin complaint" and referred to the provider for follow up. She did not see the provider until May 12, 2017, in violation of PM 39. The provider documented that the request was based upon family history, but due to Ms. ██████ relative youth (37 at the time), the Corizon policy was that no mammogram would be done, because Ms. ██████ did not have any symptoms. However, despite asserting that Ms. ██████ displayed no symptoms or problems, the nurse practitioner failed to conduct a breast examination of Ms. ██████ documenting that no physical examination was done at all (nor were vitals even taken).

Ms. ██████ submitted a second HNR on May 27, 2017, writing, "I was doing a breast exam and I found a lump the size of a golf ball on my right side. I need it looked at because I have cancer in my family and it hurts real bad." She saw a RN who classified this as a "Genitourinary" complaint. The RN did perform a breast examination, and documented that

> Pt reports finding a large lump on her rt side breast area. Upon inspection rt side breast has a large strawberry size mass at approximately 7-8 o'clock. This mass is

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

moveable and painful. Per pt reports sister was diagnosed with breast CA and past away 8 mo later. As well as grandmother passing away a year after DX. Pt very concerned and would like a mammogram as soon as possible if possible. No swollen lymph noted."  The nurse made a referral to the OB/GYN for further review.

On June 1, 2017, she submitted a third HNR this time reporting pain from the lump. She was seen on nurse's line again, and this time the nurse made an urgent referral to the provider, who also saw her on June 1. The nurse practitioner (the same one who denied her request for a mammogram on May 12), wrote, "Pt seen today for c/o R breast mass, pt reports started a few weeks ago, is larger, painful to touch. Pt states family history of breast CA, her sister died 7 years ago secondary to breast CA and was younger than pt at the time of her death."  Unlike the prior encounter, the nurse practitioner this time performed a breast examination and documented that Ms. ████ had a "large, tender, firm mass palpable at 5 o'clock to 8 o'clock.  Pt with exquisite pain on palpation, bil breasts are fibrocystic on palpation as well." The nurse practitioner diagnosed this as mastitis, and prescribed 7 days of antibiotics.

On June 8, she was seen by the Perryville OB/GYN Dr. Enciso, who noted that the antibiotics had had little impact on the lump, and he requested a diagnostic mammogram. The mammogram was done on July 7, 2017 and reported that she had a "slightly irregular somewhat rounded mass within the posterior and inferior portion of the breast at the 6:00 position measuring 2.91 cm x 3.11 cm at its greatest width." The radiologist's recommendation was ultrasonography of the right breast for further evaluation.

Dr. Enciso reviewed the report on July 11, and submitted a specialty request for the ultrasound. The ultrasound report of July 19 stated that the "ultrasound reveals 2.3 cm x 2.1 cm x 2.3 cm heterogeneous mass with cystic component within its central aspect suggesting the possibility of a cavitating mass, possible necrotic within its center. Recommendation: MRI scan of the breast with and without contrast, and biopsy of the mass."

PA Rodriguez submitted a request the same day she had the ultrasound (7/19) for the MRI and biopsy. However, Corizon Utilization Management denied the MRI as not medically necessary but approved an ultrasound-guided biopsy. She had the ultrasound-guided biopsy on August 4, 2017 which found cancer, the radiologist again recommended MRI for staging for treatment.

One week later, on August 11, 2017, PA Rodriguez again submitted a request for an MRI, stating: "Consult request is for MRI of both breasts with and without contrast for this 38 Y/O LAF with Invasive Intraductal Carcinoma moderately differentiated, histology grade II OO of III of the Rt breast.  The cancer was found with ultrasound guided biopsy." Utilization Management again denied the MRI, on August 22, 2017, stating that "Additional imaging with MRI is not a medical necessity."

On August 11, PA Rodriguez also submitted a request for a general surgery consult for evaluation for treatment of the lump. She was seen by the surgeon, Dr. Whitman, on August 30, 2017. Dr. Whitman wrote that she has "a strong family history of cancer" and his recommendations were: "Patient needs oncology consult ASAP!! Pt also needs genetic testing. Surgery to follow after options given.

Mr. Timothy Bojanowski
Re: █████████████
January 4, 2018
Page 3

Mastectomy with possible sentinal node mapping and biopsy." Ms. ██████ underwent surgery to remove the cancer on 9/21/17.

On October 19, 2017, PA Rodriguez submitted a routine request for oncology, writing:

> Consult request is for Oncology  for chemotherapy for this 38 Y/O LAF with Triple
> Negative Breast Cancer.  Pt is S/P lumpectomy Rt Breast treated for Invasive
> infiltrating ductal carcinoma
> Stage pT2; pN0; pMX
> Pathology report is attached
> Genetics testing/biomarkers   Triple Negative breast cancer.  BRCA positive high
> grade

Ms. ██████ was not seen by an oncologist until November 15, 2017.  She started treatment, but the treatment was apparently interrupted, because on November 28, 2017 PA Rodriguez submitted a routine request for oncology to Corizon Utilization Management:

> Consult request is to re-establish for continuity of care for this 38 Y/O LAF who is
> receiving chemotherapy for triple negative breast cancer. She has received one
> cycle of Adriamycin and Cytoxin, she is due for her 2nd cycle on 12/04/2017,  her
> third cycle on 12/18/2017 and her fourth cycle on 01/01/2018.  She was then to
> start Taxol for 12 weeks followed by bilateral mastectomy and  bilateral salpingo-
> oophorectomy prophylactically.  The Arizona cancer network (where she was
> receiving chemo) is closing down permanently on December 1, 2017.

More than a week after she should have started her second cycle of chemotherapy, Ms. ██████ was seen on December 12, 2017 at Ironwood Cancer Center to establish a treatment plan.  She did not actually receive the next infusion of chemotherapy until December 19 and 20, 2017.

She had her third round of infusions on January 2 and 3, 2018.  On January 2, 2018, the oncologist made a STAT recommendation to Corizon that Ms. ██████ have another mammogram for a new breast mass so that the oncologist could adjust the chemotherapy at the next chemo appointment if the new mass was cancerous.

Despite the time-sensitivity and urgent need for this mammogram, PA Rodriguez submitted a routine request for a diagnostic mammogram, while noting that the mammogram should "hopefully [] be done prior to her next chemotherapy, so the chemo can be adjusted if it is a new cancer."  He also noted that Ms. ██████ was reporting pain at her portacath site and "bone pain secondary to chemotherapy." Despite this, he continued her only on Alleve for her pain.

In addition to her new suspicious breast mass, she has developed a suspicious mass on her ovary. On November 14, 2017 she filed a HNR complaining of a painful lump in her abdomen that was pressing on her bladder, causing pain and the sensation of needing to urinate at all times.  On November 19, PA Rodriguez submitted a request for a pelvic ultrasound: "Consult request is being requested by Oncology

Mr. Timothy Bojanowski
Re: ████████████
January 4, 2018
Page 4

for a Pelvic Ultrasound to evaluate a left lower quadrant mass on this 38 y/o LAF who is undergoing chemotherapy for triple negative breast cancer." Corizon Utilization Management denied the request for a pelvic ultrasound on November 29, 2017, on the basis that she first be seen by the onsite OB/GYN.

On December 21, 2017, the Perryville OB/GYN submitted a request for gynecology-oncologist consult to Corizon's Utilization Management: "Refer to Gyne Oncologist for evaluation and management of enlarged right ovary with complex cyst. 38 years old female, G4 P4, here for follow up of pelvic ultrasound report which showed an enlarged uterus with an enlarged ovary in the right side and a complex cyst on the same ovary. Patient complains of pain in the left lower abdominal quadrant." This specialty request was approved, but has not occurred.

We request that Utilization Management immediately review and approve the request for a mammogram and any diagnostic procedures such as a biopsy, to determine if Ms. ████████ cancer has spread in her breast. We request that the mammogram and other diagnostic procedures be completed prior to her next chemotherapy appointment so the oncologist can adjust the cancer treatment accordingly. If Ms. ████████ new breast mass is cancerous, we request that she be urgently referred to and seen by the surgeon for evaluation and treatment. We request that the gyne-oncologist appointment be completed as soon as possible to evaluate if the mass on her ovary is malignant, and accordingly that all specialty treatment be done in an expeditious manner. Finally, we request that Ms. ████████ be evaluated for a pain management protocol appropriate for the pain she is experiencing due to the cancer and the chemotherapy, and not be limited to the over-the-counter Alleve.

Thank you for your prompt attention to this matter.

Sincerely,

*Clendrick*

Corene Kendrick
Staff Attorney

cc:   Ms. ████████

Exhibit 9

FILED UNDER SEAL



# PRISON LAW OFFICE

General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

January 5, 2018

Mr. Timothy Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com

RE:  *Parsons v. Ryan*, 2:12-CV-00601
Class Member in Need of Medical Care
████████ ADC ████ Florence - South

Dear Mr. Bojanowski:

I write again regarding Mr. ████ This is the tenth time my office has written to you about delays in his cancer treatment.  We sent letters detailing our concerns on October 31, 2016; November 21, 2016; January 24, 2017; April 6, 2017; July 3, 2017; July 27, 2017; September 22, 2017; November 6, 2017; and December 15, 2017.  I will not repeat the content of those letters here; needless to say, we remain seriously concerned about ADC's continued inaction and indifference regarding Mr. ████

On December 8, 2017, an urgent hem/oncology consult request was submitted (emphasis added):

> Pt needs f/u with oncology and bone marrow bx recently done. Pt with hx of b-cell lymphoma started tx and has had lapse in tx. f/u is needed to determine tx plan. clinical coordinator please get copy of bone marrow bx results and attach to this c/s report.
> Last oncology consult of 11/16/17 and request for bone marrow bx.
>
> S.Pt presents to f/u on offsite return r/t oncology consult of 11/15/17.
> Pt on a wasting diet; pt also gets 4ensure per week and 2 resource supplements daily.
>
> Reports constipation, reports hard to push out - bleeds while stooling. Last BM 11/15/17; hard stool Denies N/V/D. C/O "extreme weakness" and poor appetite. Denies CP/SOB/pedal edema.
>
> Offsite oncology report reviewed with pt.:
> "THESE ORDERS ARE NOW A MEDICAL EMERGENCY"
> Total protein - 12.5 gram; gamma globulin 6.8

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

Biopsy of supraclavicular node done 11/14/17 - results being awaited
Needs a copy of last bone marrow Biopsy results - done in 12/2015
Needs urgent CT chest, abdomen and pelvis with contrast
Obtain results of previous bone marrow biopsy
F/U with oncology immediately following the biopsy and CT results
labs drawn - 11/15/17
Vitamin B12 Deficiency -start B12 supplement

O.

BMI - 17.50
G- Frail older adult, a/o x 3, NAD, ambulates independently without difficulty
E - PERRL, EOMI, Sclera non-icteric
H- RRR, no murmur, rub or gallop
L- CTA b/l no wheeze, rales or rhonchi
A- s/nt/nd +BS, no rebound tenderness, rigidity or guarding
ext- w/d no clubbing, cyanosis or edema

The urgent consult request was referred to Utilization Management on December 12, 2017.  It still is pending review—in violation of Performance Measure 48.

Mr. ████ was last seen by a provider on January 3, 2018.  The provider entered the following Plan Notes:  "Offsite consult hemoncology paced [sic], time for pt to go out being awaited pe [sic] clinical coordinator."  According to the electronic medical record, the only medications currently prescribed to Mr. ████ are vitamin B12 and an iron supplement.

We request that Mr. ████ immediately be seen by an oncologist.  As Judge Duncan said recently, "cancers grow, . . . that's what cancers do.  And so time is usually of the extreme essence."  12/20/17 Hearing Tr. at 71-72.  The oncologist should be provided with the results from the lymph node biopsy and bone marrow biopsy, so that Mr. ████ cancer may be staged and his treatment initiated.

Thank you for your immediate attention to this matter.

Sincerely yours,

Rita Lomio
Staff Attorney

cc:    Mr. ████

# Exhibit 10

# FILED UNDER SEAL



**PRISON LAW OFFICE**
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

VIA EMAIL ONLY

January 8, 2018

Mr. Timothy Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com

RE: *Parsons v. Ryan*, 2:12-CV-00601
Class Member in Need of Medical Care
██████████ ADC ██████ Perryville - San Carlos

Dear Mr. Bojanowski:

We write regarding Ms. ██████ a 50-year-old class member who has written and reported that she was diagnosed with stage 4 melanoma in February 2017, prior to her incarceration. Ms. ██████ medical record shows delays in follow-up care for her cancer and related symptoms. Her medical record also shows little to no follow up care for repeated complaints of chest pain and difficulty breathing.

According to her medical record, Ms. ██████ entered the custody of the Arizona Department of Corrections on 6/8/17, at which time she filled out an intake form noting that she had "melanoma skin cancer stage 4." The record shows that on 6/20/17, prison staff sent a release form to an outside medical center (Western Arizona Regional Medical Center) requesting copies of any records between June 2014 and June 2017 regarding cancer treatment. The handwritten faxed response reads, "No records found within range."

The record shows that Ms. ██████ saw a provider on 6/22/17 and reported her history of melanoma and radiation treatment. The provider ordered labs and an x-ray, and noted the following: "trying to get more information from her care provider re: melanoma." CMP lab results are extant in the record, but there does not appear to be any record of provider review nor of any x-ray performed.

The record shows that Ms. ██████ was seen again on three occasions in September regarding an unhealing lesion on her ankle. The record shows that on 9/8/17, she reported to a nurse that her work boots were causing irritation to the area on her leg where she had received radiation treatment. On 9/11/17, the record shows that she again saw a nurse regarding "skin breakdown on leg from XRT [radiation therapy]," at which time the nurse documented "skin breakdown" and "area blanchable." The record shows that she saw a provider on 9/18/17 regarding the same issue, who documented the following:

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

Mr. Timothy Bojanowski
Re: █████████████████
January 8, 2018
Page 2

Assessment: Melanoma of the left ankle - impaired skin integrity due to an unhealing ulcer.
Plan: 1. SNO for no boot given
2. Follow up as needed.

We note that, on 1/3/18, Corizon sent a second request for medical records to the Western Regional Medical Center regarding Ms. ██████ cancer care.

Finally, the medical record shows that Ms. ██████ has received medical attention for complaints of chest pain and difficulty breathing on at least seven occasions since her June 2017 incarceration (6/12/17, 6/21/17, 6/22/17, 7/11/17, 7/17/17, 9/7/17, 12/27/17) three of which are ICS responses.  The medical record appears to show that the underlying cause for the complaints has not been determined, and that she has generally been returned to her housing unit following assessment for those complaints.

We request that Ms. ██████ be referred urgently to a dermatologist for assessment of possible melanoma, given the nearly six-month delay in verifying her condition.  We also request that she be referred to a cardiologist due to her consistent complaints of chest pain and the Corizon provider's lack of substantive follow-up.

Thank you for your prompt attention to this matter.

Sincerely,

*Clendrick*

Corene Kendrick
Staff Attorney

cc:     Ms. ██████

# Exhibit 11

**Corene Kendrick**

| | |
|---|---|
| **From:** | Rand, Lucy <Lucy.Rand@azag.gov> |
| **Sent:** | Wednesday, January 10, 2018 8:26 PM |
| **To:** | David Fathi; 'Don Specter' |
| **Cc:** | Ashley Kirby; Gottfried, Michael; Elaine Percevecz (EPercevecz@strucklove.com); Tim Bojanowski (TBojanowski@strucklove.com); Dan Struck (DStruck@strucklove.com) |
| **Subject:** | RE: Parsons Q3 Time and Expenses |

David,

We are in the process of reviewing the invoices and will respond shortly.

Best regards,



**Lucy M. Rand, Assistant Attorney General**
**OFFICE OF THE ARIZONA ATTORNEY GENERAL**
SGD / LMS / Department of Corrections Unit
**Direct:**    602.542.7683
E-mail:    Lucy.Rand@azag.gov

NOTICE:  This e-mail, including attachment(s), is the property of the Office of the Arizona Attorney General and contains information that may be PRIVILEGED, CONFIDENTIAL, or otherwise exempt from disclosure by law.  It is intended only for the recipients to whom it is addressed.  If you receive this communication in error, immediately notify the sender at the e-mail address shown above or call (602) 542-7643, and delete the original message.  Thank you.

**From:** David Fathi [mailto:dfathi@aclu.org]
**Sent:** Wednesday, January 10, 2018 1:35 PM
**To:** Rand, Lucy; 'Don Specter'
**Cc:** Ashley Kirby; Gottfried, Michael; Elaine Percevecz (EPercevecz@strucklove.com); Tim Bojanowski (TBojanowski@strucklove.com); Dan Struck (DStruck@strucklove.com)
**Subject:** RE: Parsons Q3 Time and Expenses

Lucy,

We provided you our invoice for the third quarter of 2017 on December 4, 2017 (see below).  Paragraph 44 of the Stipulation provides that "Defendants shall pay the invoice within thirty (30) days of receipt."  Kindly forward payment without further delay.

Thanks very much.

David C. Fathi*
Director, ACLU National Prison Project
915 15th St. N.W., 7th Floor
Washington, DC  20005
(202) 548-6603
dfathi@aclu.org
@DavidCFathi

*Not admitted in DC; practice limited to federal courts

---

**From:** Rand, Lucy [mailto:Lucy.Rand@azag.gov]
**Sent:** Tuesday, December 05, 2017 7:41 PM
**To:** 'Don Specter'
**Cc:** David Fathi; Ashley Kirby; Gottfried, Michael; Elaine Percevecz (EPercevecz@strucklove.com); Tim Bojanowski (TBojanowski@strucklove.com); Dan Struck (DStruck@strucklove.com)
**Subject:** RE: Parsons Q3 Time and Expenses

Don,

I have received your invoice and will provide a response.

Best regards,



**Lucy M. Rand, Assistant Attorney General**
OFFICE OF THE ARIZONA ATTORNEY GENERAL
SGD / LMS / Department of Corrections Unit
**Direct:**     602.542.7683
E-mail:     Lucy.Rand@azag.gov

NOTICE:  This e-mail, including attachment(s), is the property of the Office of the Arizona Attorney General and contains information that may be PRIVILEGED, CONFIDENTIAL, or otherwise exempt from disclosure by law.  It is intended only for the recipients to whom it is addressed.  If you receive this communication in error, immediately notify the sender at the e-mail address shown above or call (602) 542-7643, and delete the original message.  Thank you.

---

**From:** Don Specter [mailto:dspecter@prisonlaw.com]
**Sent:** Monday, December 04, 2017 11:28 AM
**To:** Rand, Lucy
**Cc:** David Fathi; Ashley Kirby
**Subject:** Parsons Q3 Time and Expenses

Lucy,

Attached are the itemized runs and summary for monitoring activities for the third quarter.  Please have a check processed promptly.

Thank you.

Don