Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorney General
15 South 15th Avenue
Phoenix, Arizona 85007
Telephone: (602) 542-1645
Fax: (602) 542-3393
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Hesman, Bar No. 028874
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
Timothy M. Ray, Bar No. 029191
Richard M. Valenti, Bar No. 031533
Jamie D. Guzman, Bar No. 022095
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
khanger@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>                                    Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br>                                    Defendants. | NO. 2:12-cv-00601-DKD<br><br><br>**DEFENDANTS' MOTION TO LIMIT THE SCOPE OF THE FEBRUARY 9, 2018 EVIDENTIARY HEARING REGARDING KJZZ ARTICLE** |

Defendants move to limit the scope of the February 9, 2018 evidentiary hearing regarding allegations made by Dr. Watson in the December 19, 2017 KJZZ article. Notwithstanding Defendants' objection to the Court's sua sponte setting of an evidentiary hearing on an unverified KJZZ article, Defendants request this Court to limit the hearing to the specific statements allegedly made by Dr. Watson to the KJZZ reporter. Likewise, ESI discovery ordered produced in advance of the hearing should be specifically limited to that topic. Defendants also respectfully request this Court to refrain from commenting on or relying upon unverified media reports relating to this litigation. Such reports unfairly and improperly influence the Court's enforcement of the Stipulation and related orders.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  BACKGROUND**

    **A.  The December 19, 2017 Jan Watson Article.**

One day before the December 20, 2017 Monthly Status Hearing, KJZZ[1] published an article discussing allegations made by Dr. Jan Watson, a temp agency OB-GYN who worked a short stint with Corizon, providing patient care at ASPC- Eyman Complex over a period of five months. http://kjzz.org/content/572976/inside-chaos-arizona-prison-health-care (last visited 1/17/18). The article stated that during Dr. Watson's short time at Eyman, she allegedly saw twenty (20) patients a day; she experienced unspecified backlogs treating chronic care inmate patients; she prescribed pain medication that would often run out (requiring someone to fill the prescription at Walgreens); Corizon often denied her patient specialty referrals; and Corizon would ask her to cancel authorized specialty referrals.

    **B.  The December 20, 2017 Status Hearing.**

After counsel announced their appearances at the December 20, 2017 Status Hearing, the Court, clearly upset and waiving his iPad, declared:

---

[1] KJZZ is a local radio station that bills itself as "serv[ing] up local and national news during the day, jazz at night, and unique entertainment programming on the weekend." https://www.linkedin.com/showcase/kjzz-91.5-fm-phoenix (last visited 1/17/18). KJZZ reporter Jimmy Jenkins regularly attends court hearings and meets with Plaintiffs' counsel throughout the day during court breaks.

1

> Well, I'm standing because in the most literal sense I'm standing up for the inmates of the Arizona Prison System. It is my job to be the enforcement officer on this Stipulation, which I have earnestly tried to do for months expecting people to comply with my orders in good faith.
>
> I read on the website from KJZZ this morning a memo from Sara Neese at Corizon . . .

(R.T. 12/20/17 at 5:1-7).

The Court went on to read an email from a Corizon employee to Dr. Watson, asking the doctor to cancel two infectious disease consults, one because Corizon did not have a provider to send the inmate to. The email also referred to the Court's contempt order, which subjects Defendants to a $1,000 fine for each instance of non-compliance if consults sit for more than 30 days. After reading the unverified KJZZ article, the Court concluded:

> As I read this, there is no other way to read it than an end run around the monitoring program, an end run around the Stipulation.
>
> . . .
>
> I have used words in this courtroom like flabbergasted, stunned. I've run out of words. I've run out of a way to communicate what is such an egregious departure from honest representation in a case, from the defendants' side of this case.

(R.T. 12/20/17 at 5:18-20; 6:1-5). Relying on the unverified article, the Court went so far as to conclude that "[i]t's just a game to try to beat the judge and his monitoring program. It's just a game to try to beat the State's monitoring program." (R.T. 12/20/17 at 7:14-16).

While the Court acknowledged that "[t]his is certainly not something that has a foundation laid in court," the Court nevertheless found that the unverified KJZZ article constituted <u>prima facie</u> evidence requiring an evidentiary hearing to determine if Corizon was attempting an end-run around the Stipulation monitoring and compliance reporting.[2] (R.T. 12/20/17 at 5:1-7; 6:7-8; 12:5-12; 19:16-22; 20:14-17; 20:24-25 - 21:1). Specifically,

---

[2] The Court acknowledged at least two more times during the first nine minutes of the hearing that the KJZZ article was unverified and thus without foundation. (R.T. 12/20/17 at 20:18-25).

2

the Court ordered that it would "find out exactly what's going on . . ." and hear Dr. Watson's testimony as well as the testimony of a Corizon Clinical Coordinator with whom Dr. Watson communicated by email. (*Id*. at 7:23-25; 8:1-3). The unverified article changed the Court's entire approach to the case:

> I will get every single memo that of this like. And I am now changing the entire approach here. It's not my agenda anymore, it's digging down deep to see how deep this evil goes of trying to dissemble to the Court to see if it's true.[3]

(R.T. 12/20/17 at 8:3-7).

Despite the fact that no party had filed the KJZZ article with the Court or had asked for any relief regarding the same, the Court instructed Plaintiffs' counsel as to what evidence it wanted to present at an evidentiary hearing; it also directed Plaintiffs to lay foundation for the article and find witnesses to testify to the "reality on the ground" or provide Rule 30(b)(6) testimony. (*Id*. at 8:15- 12:13-18; 18:21-25; 19:22). Simply put, the Court asked Plaintiffs' counsel to "marshal the case . . ." in order to determine whether the unverified KJZZ article the Court discovered on its own is the "smoking gun" that could evidence "corruption within the system that is depriving the Court of its ability to perform its monitoring responsibilities in a fair and appropriate way." (*Id*. at 11:5-11, 19:10-11). The Court acknowledged that in ordering the evidentiary hearing on the KJZZ article ". . . I'm not in the typical role of the neutral judge, I'm the enforcer of the Stipulation." (*Id*. at 18:17-18).

In addition to this intense exchange, the Court also disclosed for the first time that its chambers and staff had been receiving phone calls from Corizon employees reporting "it is so much worse than you think." (R.T. 12/10/17 at 9:2-11). The Court did not disclose when these reported calls started coming in, the volume of the calls received, the content of

---

[3] The Court went on to state that it did not know if the article was true or not, "could be all made up. And if's [sic] it's made up I'm going to eat all these words." (Trans. 12/20/17, 8:8-11). The Court also acknowledged that "[t]here are decent and honorable people on the correction side, and there are liars on the prisoners' side." (Trans. 12/20/17, 8:20-22).

3

these communications, or the identity of the callers, but explained that the callers were told that the Court (staff) cannot "do anything other than to say, if you would like to come forward, we will have you in court any day to talk to us about that. Then they ask us, can you protect us? And my staff is told to instruct them, no, we cannot protect you. I can't guarantee what can happen." (*Id*. at 9:6-11). The Court admitted that these phone calls "add[] to the filter of how [it] evaluate[s] what [it] see[s] on a website from KJZZ . . ." (*Id.* at 9:16-21).

Finally, while the Court discussed the KJZZ allegations at length and even read directly from the article, the Court did not mention ADC or Corizon's responses to Dr. Watson's allegations, even though KJZZ reported it received a detailed response to the allegations from Corizon. Specifically, the Court did not mention that KJZZ reported that Corizon denied it was understaffed; explained that back-up pain medications were filled at Walgreens only nine (9) times during the five-month period of time from June 2017 to October 2017; explained only eighteen (18) specialty appointments were cancelled from July 2017 through September 2017, with twelve (12) of the eighteen (18) appointments cancelled by the specialty physician's offices – not Corizon or its providers; and denied that Corizon attempts to circumvent the Stipulation or accurate reporting of compliance on health care performance measures monitored under the Stipulation. (Corizon Response, Exh. 1). While Corizon requested KJZZ not to publish the article based upon the refuted and unverified nature of Dr. Watson's allegations, KJZZ published the article anyway. (*Id.*)

**II.    THE COURT SHOULD LIMIT THE SCOPE OF THE EVIDENTIARY HEARING AND THE ASSOCIATED PRODUCTION OF ESI**

The Court has found an unverified KJZZ article to be "prima facie evidence" of Corizon (and possibly ADC) attempting to "beat the monitor" and thus circumvent the Stipulation. At the outset, this Court should not rely on unverified media reports in any regard in these proceedings. Here, no party interjected the KJZZ article into the case. And the Court should not do the same. Unverified articles cannot serve as prima facie evidence of anything.

1          Notwithstanding Defendants' position that the Court should not sua sponte order
2   evidentiary hearings based on unverified media articles, this Court should limit the scope
3   of the February 9th hearing to only the allegations made by Dr. Watson and Corizon and
4   ADC's responses.  As evidenced by Corizon's response to KJZZ's media inquiry, each of
5   Dr. Watson's stories and allegations are exaggerated, incorrect, and/or provided without
6   context. Corizon does not encourage, expect, or instruct its providers to "game the system"
7   or "beat the monitor." The scope of the hearing should be limited to Dr. Watson's alleged
8   allegations, not a witch hunt regarding the sanctity of the entirety of the monitoring system
9   and almost three years of compliance reporting for 103 different health care performance
10  measures subject to monitoring at each of ADC's ten (10) state-operated prison complexes.
11         Plaintiffs' counsel has asked for, and the Court has ordered Defendants and Corizon
12  (a non-party to the case) to undertake and fund, an irrelevant, overly broad, unduly
13  burdensome, and expensive fishing expedition to be completed in advance of the February
14  9th evidentiary hearing – a feat that likely cannot reasonably be accomplished by the hearing
15  date. Twenty-seven (27) ADC employees and more than sixty (60) Corizon employees'
16  entire email accounts must be searched for a six month period of time for fifty-four (54)
17  and fifty-nine (59) search terms respectively, including the general term "Judge Duncan."
18  Completion of the search across nearly 100 custodians will likely result in estimated vendor
19  and attorneys' fees and costs incurred by ADC and Corizon between approximately
20  $163,026.92 and $280,000.00 combined. (Decl. Daniel P. Struck, Exh. 2, and Decl. Jeff
21  Stoneking, Exh. 3).
22         Defendants conservatively estimate that ADC will incur $45,000.00 in costs and fees
23  to conduct the ESI review as ordered by the Court. (Decl. Daniel P. Struck, Exh. 2 at ¶¶ 3-
24  14). Corizon currently estimates it will incur between $168,000.00 and $235,000.00 in
25  costs and fees to complete production for more than sixty (60) Corizon custodians.[4] (Decl.
26  Jeff Stoneking, Exh. 3 at ¶¶ 4-12). Even if Corizon's custodians were cut to thirty (30), as

---

[4] The reach of the custodians to be searched by Corizon has not yet been decided by either agreement of the parties and Corizon or Court intervention.

5

Defendants are currently requesting Plaintiffs to do, cost/fee estimates are still estimated at $118,026.92. (Decl. Jeff Stoneking, Exh. 3 at ¶¶ 3-11).

Here, Plaintiffs' ESI fishing expedition far exceeds the scope of the allegations made by Dr. Watson. The Court should restrict the scope.[5] If forced to continue, Plaintiffs should bear and/or share the costs. Because of the undue burden and costs, Plaintiffs' overly broad and irrelevant request is not reasonably accessible within the meaning of Rule 26(b)(2)(B). Defendants must undertake privilege review, analysis, and logging efforts to comply with the Court's orders in advance of the February 9th hearing. The expected volume of such information makes privileged determinations expensive and time-consuming. *See Hopson v. Mayor and City Council of Baltimore*, 232 F.R.D. 228, 238 (D. Md. 2005) (specifically considering counsel's privilege review when determining overall burden of discovery). For these reasons, the scope of the hearing, including the onerous ESI production, should be narrowed.

Further, although Defendants submit that a cost-shifting discussion is premature until the final data set is identified, Defendants reserve the right to seek cost-shifting once that is done. Narrowing Plaintiffs' ESI demand pursuant to Rule 26(b)(2) does not preclude the Court from also granting a protective order in the form of cost-shifting for those documents that were ordered to be produced. *See Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 283 (S.D. N.Y. 2003) ("Although 'the presumption is that the responding party must bear the expense of complying with discovery requests,' requests that run afoul of the Rule 26(b)(2) proportionality test may subject the requesting party to protective orders under Rule 26(c), 'including orders conditioning discovery on the requesting party's

---

[5]The Court did not order that the February 9th evidentiary hearing include allegations in the December 17, 2017 KJZZ article regarding the death of Inmate Jordan. The hearing should not address the individual inmate allegations. The Stipulation does not expressly or impliedly permit evidentiary hearing and rulings on individual claims. Specifically, the Stipulation does not provide for investigation, claim, or redress for individual constitutional violations or tort causes of action. Nor does the monitoring or enforcement of the Stipulation contemplate litigation of individual inmate claims. To require Defendants to defend an unverified media claim regarding deficient medical care would irreparably prejudice Defendants and Corizon and deny them their procedural due process safeguards by forcing them to prematurely defend a lawsuit that has not been brought against them.

payment of the costs of discovery.'") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978)); *see also Zeller v. S. Cent. Emergency Med. Servs. Inc.*, No. 13-cv-2854, 2014 SL 2094340, at *6, 9 (M.C. Pa. May 20, 2014) (discussing cost shifting of the expense of e-discovery under Fed.R.Civ.P. 26(b)(2)(B) and 26(c)(1)).

Plaintiffs' ESI demands are not proportional to the needs of the evidentiary hearing regarding specified allegations made by Dr. Watson, constitute an undue resource and financial burden, and outweigh the likely benefit as to actual information that will be discovered relevant to Dr. Watson's allegations.

### III. THE COURT SHOULD REFRAIN FROM COMMENTING OR RELYING ON UNVERIFIED MEDIA ACCOUNTS TO INFLUENCE THE COURSE OF PROCEEDINGS AND COURT FINDINGS

Defendants respectfully request this Court to refrain from commenting and/or relying on unverified media articles. By ordering an evidentiary hearing regarding the KJZZ article, the Court has created a new and impermissible voice in this case – the media. What either KJZZ or any other media outlet "says" should have no bearing on the course of these proceedings, the Court's perception of the evidence, the Court's opinion about Defendants, ADC and its more than 10,000 employees, or Corizon; and the Court's enforcement of the Stipulation and related rulings.

The Court should not create a new litigation track every time KJZZ (or any other media outlet) publishes an article in advance of a Court hearing, requiring Defendants to answer and defend against them. Indeed, the Court should not consider anything outside the purview of the filings by the parties and the admissible evidence submitted by the parties to fulfill its role in deciding disputes that may arise under the Stipulation. The media reports are not evidence, and the media should not influence the Court's handling of this case. *See*, *e.g.*, *U.S. v. South Florida Water Management Dist.*, 290 F.Supp.2d 1356, 1360 (S.D. Fla. 2003) (noting that a court must refrain from allowing extrajudicial sources to influence its decisions); *In re Marshall*, 403 B.R. 668, 679 (C.D. Cal. 2009) ("Neutrality is absent where the Judge acts as an advocate for one side or where bias or prejudice prevents the judge from considering relevant facts or law.").

Based upon the foregoing, this Court should refrain from making comments on the record regarding allegations (and particularly unverified allegations) as reported in the media. Statements by a federal judge relying upon unverified media allegations can be considered tantamount to vouching, which can impact future litigation against ADC, resulting in far reaching prejudice to ADC and its employees. The media should play no part in these proceedings, the Court's opinions of Defendants, the Court's considerations of the facts and law applicable to resolving disputes arising from the Stipulation, or the Court's ultimate rulings.

## IV. CONCLUSION

Based upon the foregoing, Defendants respectfully request this Court to limit the scope of the February 9, 2018, evidentiary hearing regarding the KJZZ article to Dr. Watson's alleged statements. The scope of the ESI Plaintiffs demand should likewise be narrowed. Finally, Defendants request this Court to refrain from commenting on or relying on unverified media accounts in the course of these proceedings.

DATED this 17th day of January 2018.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC

By: /s/Daniel P. Struck
    Daniel P. Struck
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    Ashlee B. Hesman
    Jacob B. Lee
    Kevin R. Hanger
    Timothy M. Ray
    Richard M. Valenti
    Jamie D. Guzman
    3100 W. Ray Road, Ste. 300
    Chandler, AZ 85226

    Arizona Attorney General Mark Brnovich
    Office of the Attorney General
    Michael E. Gottfried
    Lucy M. Rand
    Assistant Attorneys General
    15 South 15th Avenue
    Phoenix, AZ 85007

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Dietrich: | adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Kirstin T. Eidenbach: | kirstin@eidenbachlaw.com |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Victoria Lopez: | vlopez@aclu.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Daniel P. Struck