**EXHIBIT 1**

**EXHIBIT 1**

# FENNEMORE CRAIG
## ATTORNEYS

**Todd Kartchner**
tkartchner@fclaw.com

2394 East Camelback Road, Suite 600
Phoenix, AZ  85016-3429
PH (602) 916-5461 | FX (602) 916-5661
fennemorecraig.com

December 7, 2017

**VIA EMAIL**

Leslie K. Cooper
Maricopa County Community Colleges
General Counsel
Email: les2026063@domail.maricopa.edu

Re:      Request for Response from Corizon Health

Dear Ms. Cooper:

Please be advised Fennemore Craig, P.C. represents Corizon Health.  We are in receipt of the email from senior correspondent Jimmy Jenkins dated Monday, December 4, 2017 at 2:05 p.m., addressed to Corizon employee Martha Harbin, in which he seeks responses to claims allegedly made by a disgruntled former locum tenens provider named Jan Watson.   Corizon elected not to renew Dr. Watson's contract based on insubordination and performance issues.  It is also our understanding that Mr. Jenkins claims to have received multiple Corizon emails from Dr. Watson but is unwilling to identify what he has or provide copies of same.

Please be advised that the allegations Dr. Watson allegedly made can either be readily disproven, or if given proper context, credibly explained, and were Mr. Jenkins to proceed with publishing an article based on such misrepresentations or misleading information, he and his employer could be subject to, among others, a claim for defamation.  We will address each allegation in turn.

(1) <u>Dr. Watson alleges Corizon asked her to cancel referrals for specialty care because no providers were allegedly available.  She further alleges Corizon told her to cancel referrals to avoid fines.</u>

**Response**: Corizon reviewed relevant documents from the time period in which Dr. Watkins served as a provider.  From July 1, 2017 through the end of September, 2017, eighteen appointments were canceled, and of those, twelve of them were cancelled by the specialty physicians' offices themselves and not by Corizon or its providers.  Of the remaining six, records indicate (i) one was sent to an emergency room; (ii) one physician refused to see the patient at all, necessitating rescheduling the appointment with another provider; (iii) two patients had off-site visits cancelled in September but were, in turn, followed by onsite providers in consultation with a Corizon infectious disease consultant; and (iv) two patients were fed by security when they were to appear for their appointments fasted, necessitating having to reschedule those visits.

**FENNEMORE CRAIG**

**VIA EMAIL**

Leslie K. Cooper
December 7, 2017
Page 2

(2) Dr. Watson claims both the Florence and Eyman facilities were understaffed and that Corizon sent out emails asking for assistance with backlogged patients, referring to its requests as "Operation Backlog."

**Response:** Corizon denies it was understaffed but acknowledges backlogs occur from time to time due to provider absences, whether resulting from illness, injury, bereavement, or vacation. Seeking additional help from existing Corizon employees to eliminate such backlogs is both prudent and reasonable.

(3) Dr. Watson alleges that, during a provider meeting at the end of August 2017, Regional Medical Director Rodney Stewart instructed Dr. Watson to let a patient with heart problems die.

**Response:** Dr. Stewart denies ever having made such a statement. Moreover, during the time period in which Dr. Watson worked at the Eyman unit, medical records establish Corizon only had two mortalities in that unit, and neither patient died from cardiac related issues or complications, effectively refuting Dr. Watson's accusation.

(4) Dr. Watson alleges that, during another provider meeting of some unknown date and/or time, a Corizon employee instructed the providers on how to "beat the monitor," referring to the Court-ordered monitoring process implemented through the Parsons v. Ryan settlement.

**Response:** Corizon does stress compliance with performance measures resulting from the referenced settlement. However, this emphasis is based on maintaining and/or increasing efforts to provide good patient care and meet monitoring expectations. Corizon does not instruct its providers or employees to somehow "game the system" or otherwise mislead the Court as Dr. Watson's accusation seems to suggest. This accusation is further belied by ongoing reports the Arizona Department of Corrections provides on a monthly basis to the Court, detailing Corizon's efforts to meet monitoring requirements and setting forth plans of corrective action when necessary. Those compliance efforts and corrective plans are subject to review and comment from both the Court and plaintiffs' counsel.

If the term "beat the monitor" was ever used, it would have been in reference to how Corizon can properly improve its scores and did not (and does not) reflect any effort to mislead monitors or the Court.

FENNEMORE CRAIG

**VIA EMAIL**

Leslie K. Cooper
December 7, 2017
Page 3

(5) <u>Dr. Watson alleges she frequently ran out of morphine for cancer patients and would have to send Corizon employees to Walgreens to fill prescriptions while waiting on PharmaCorr to supply the requested medication.</u>

**Response:** During the time period from June 2017 through October 2017, backup morphine prescriptions were only filled at Walgreens a total of nine times, which is a fairly limited amount for a five-month period. In addition, Dr. Watson omits the fact that she was not current with her prescription renewals, which contributed to the very problem about which she complained.

(6) <u>Dr. Watson alleges she was admonished for not following the "Corizon Way"—a quote she attributes to Regional Health Director Rodney Stewart. Mr. Jenkins asked if there is a company policy entitled the "Corizon Way" and, if so, how it is defined.</u>

**Response:** There is no company policy entitled the "Corizon Way." Rather, when Dr. Stewart used this term, he was referring to applicable patient care standards. He merely used this phrase as a term of art.

Finally, Corizon also notes that if Dr. Watson provided Mr. Jenkins with information that contained private patient information, that improper disclosure violates HIPAA regulations.

Based on the foregoing, we respectfully request that Mr. Jenkins reconsider publishing an article based on Dr. Watson's allegations. We have provided you with sufficient information to undermine or refute her accusations, and were Mr. Jenkins to proceed with his intended article at this time without, at the very least, performing a far more thorough investigation, both he and his employer risk being held liable for defamation. Please know that Corizon will take whatever legal action it deems necessary to protect its interests and reputation. We trust such action will not prove necessary.

///

///

///

///

///

# FENNEMORE CRAIG

**VIA EMAIL**

Leslie K. Cooper
December 7, 2017
Page 4


      If needed, Corizon can provide you with additional information.  In the interim, we appreciate your anticipated courtesy and professionalism.  Please feel free to contact me with any questions.

                    Sincerely,

                    FENNEMORE CRAIG, P.C.

                    Todd Kartchner

TKAR
13473223.1/045669.0001