1  Kathleen E. Brody (Bar No. 026331)
   **ACLU FOUNDATION OF ARIZONA**
2  3707 North 7th Street, Suite 235
   Phoenix, Arizona 85013
3  Telephone: (602) 650-1854
   Email: kbrody@acluaz.org
4
   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
5  *Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
   *Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
6  *Desiree Licci, Joseph Hefner, Joshua Polson, and*
   *Charlotte Wells, on behalf of themselves and all others*
7  *similarly situated*
   **[ADDITIONAL COUNSEL LISTED ON**
8  **SIGNATURE PAGE]**

9  Sarah Kader (Bar No. 027147)
   Asim Dietrich (Bar No. 027927)
10 **ARIZONA CENTER FOR DISABILITY LAW**
   5025 East Washington Street, Suite 202
11 Phoenix, Arizona 85034
   Telephone: (602) 274-6287
12 Email: skader@azdisabilitylaw.org
          adietrich@azdisabilitylaw.org
13
   *Attorneys for Plaintiff Arizona Center for Disability Law*
14 **[ADDITIONAL COUNSEL LISTED ON**
   **SIGNATURE PAGE]**
15

16                    UNITED STATES DISTRICT COURT

17                         DISTRICT OF ARIZONA

18 | Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-DKD |
|---|---|
| Plaintiffs, | **JOINT MOTION FOR CLARIFICATION** |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

LEGAL138324302.1

**JOINT INTRODUCTORY STATEMENT**

The Stipulation sets forth a multi-step process to obtain judicial enforcement after "Defendants have failed to substantially comply" with the provisions of the Stipulation. [Doc. 1185 ¶ 30] The first step is for Plaintiffs to send a "Notice of Substantial Non-Compliance" to Defendants. [*Id.*] If the parties cannot resolve the dispute informally, the parties must enter into mediation. [*Id.* ¶ 31] If mediation does not resolve the issue within 60 days, "either party may file a motion to enforce the Stipulation in the District Court." [*Id.*]

The parties disagree as to the standard for determining when Defendants have failed to substantially comply with the provisions of the Stipulation. On April 24, 2017, after the parties requested guidance and direction from the Court, the Court provided the following standard for determining "that a location/performance is non-compliant":

  (1) 6 of 24 months are non-compliant; and

  (2) three consecutive months are non-compliant.

[Doc. 2030 at 1 (citing Doc. 1185 ¶ 21(b))][1] Plaintiffs moved the Court to reconsider its Order, and their Motion was denied. [Docs. 2042, 2074, 2061, 2086, 2118]

\\
\\
\\
\\
\\
\\
\\
\\

---

[1] Paragraph 21 of the Stipulation discusses people with serious mental illness and has no subsection (b). The Court presumably intended to refer to Paragraph 20(b), which is titled "Termination of the duty to measure and report on a particular performance measure," and applies to the maximum custody performance measures. [Doc. 1185 ¶ 20(b)] The identically-titled and -worded section applicable to health care performance measures is Paragraph 10(b).

LEGAL138324302.1

**PLAINTIFFS' POSITION**

Plaintiffs agree with the Court's definition, as set forth in Docket No. 2030, except that the "and" should be replaced with an "or." That is, Defendants have failed to substantially comply with the Stipulation with regard to a performance measure when:

(1) 6 of 24 months are non-compliant; <u>or</u>

(2) three consecutive months are non-compliant.

This appears to have been the Court's intended definition. In its order denying reconsideration of its previous order, the Court explained that the following scenario would be considered failure to substantially comply with the Stipulation:

| January | February | March | April | May | June |
|---|---|---|---|---|---|
| 0% | 0% | 0% | 0% | 0% | 86% |

[Doc. 2118 at 3 n.2][2] This data—"five months at zero percent compliance and then a sixth month at 86% compliance," (*id.*)—meets the second part of the Court's standard ("three consecutive months are non-compliant"), but not the first part ("6 of 24 months are non-compliant"). [*See* Doc. 2030 at 1] This indicates that the two parts were intended to be alternative ways of establishing failure to substantially comply with the Stipulation, and therefore should be written in the disjunctive—*i.e.*, with an "or" and not an "and."

That reading makes sense under the Stipulation. If the compliance percentage of a performance measure at a particular prison meets *either* part of the Court's test for failure to substantially comply with the Stipulation, that performance measure at that prison is not eligible for termination under the Stipulation. [*See* Doc. 1185 ¶ 10(b) (health care performance measures) (termination permissible only when a performance measure is in compliance "for eighteen months out of a twenty-four month period; <u>and</u> . . . has not been out of compliance . . . for three or more consecutive months within the past 18-month

---

[2] The Court wrote: "Plaintiffs argue that the 2017 Order [Doc. 2030] would exclude a hypothetical location/PM from a remedial plan if it had five months at zero percent compliance and then a sixth month at 86% compliance. *This is not correct since the 2017 Order excludes any location/PM with three or more consecutive months under the compliance threshold.*" [Doc. 2118 at 3 n.2 (citing Doc. 2042 at 6-7) (emphasis added)]

1  period" (emphasis added)); *see also id.* ¶ 20(b) (maximum custody performance
2  measures) (same)][3]

3      At a mediation on November 28, 2017, the parties disagreed about whether
4  Defendants had failed to substantially comply with the following performance measures
5  and the following institutions:[4]

6  **Performance Measure 52 at Phoenix**: Non-compliant three consecutive months.

| Nov. | Dec. | Jan. | Feb. | Mar. | Apr. | May | June | July | Aug. | Sept. | Oct. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 92 | 100 | 90 | 100 | 100 | 55 | 70 | 45 | 92 | 89 | 83 | 100 |

**Performance Measure 73 at Tucson**: Non-compliant six months out of last 24 months.

| Nov. 2015 | Dec. | Jan. 2016 | Feb. | Mar. | Apr. | May | June | July | Aug. | Sept. | Oct. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 80 | 90 | 70 | 60 | 20 | 40 | 100 | 100 | 90 | 90 | 100 | 100 |

| Nov. | Dec. | Jan. 2017 | Feb. | Mar. | Apr. | May | June | July | Aug. | Sept. | Oct. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 100 | 100 | 100 | 88 | 89 | 63 | 63 | 100 | 100 | 100 | 100 | 100 |

**Performance Measure 96 at Tucson**: Non-compliant three consecutive months.

| Nov. | Dec. | Jan. | Feb. | Mar. | Apr. | May | June | July | Aug. | Sept. | Oct. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 100 | 98 | 98 | 100 | 82 | 79 | 80 | 90 | 95 | 91 | 95 | 93 |

    Magistrate Judge Bade directed the parties to seek assistance from the Court regarding whether Defendants have failed to substantially comply with these performance measures and institutions. [Doc. 2520 at 2 n.1]

    Under Plaintiffs' definition, Defendants have failed to substantially comply with the three performance measures and institutions in dispute—PM 52 at Phoenix, PM 73 at Tucson, and PM 96 at Tucson. Defendants were substantially non-compliant for three

---

[3] The Stipulation defines "substantial compliance with a particular performance measure at a particular facility." [Doc. 1185 at ¶ 10(a)] That definition currently is:

> [M]eeting or exceeding an eighty-five percent (85%) threshold for the particular performance measure that applies to a specific complex . . . .

[*Id.* ¶ 10(a)(iii)]
[4] This data is set forth in Plaintiffs' Motion to Enforce the Stipulation and Defendants' spreadsheet of compliance scores. [Doc. 2520 at 6-8; Doc. 2251-1 at 57]

1  consecutive months with PM 52 at Phoenix (55% in April, 70% in May, and 45% in June
2  2017). [Doc. 2520 at 6] Defendants were substantially non-compliant for six months out
3  of the last 24 months for PM 73 at Tucson (70% in January 2016, 60% in February 2016,
4  20% in March 2016, 40% in April 2016, 63% in April 2017, and 63% in May 2017). [*Id.*
5  at 7] And Defendants were substantially non-compliant for three consecutive months for
6  PM 96 at Tucson (82% in March, 79% in April, and 80% in May 2017). [*Id.* at 8]

* * * * *

7  Plaintiffs therefore respectfully request that the Court modify its definition to read
8  that Defendants have failed to substantially comply with the Stipulation with regard to a
9  performance measure when:
10 
11  (1)     6 of 24 months are non-compliant; ~~and~~ or
12  (2)     three consecutive months are non-compliant.[5]

### DEFENDANTS' POSITION

14  This Motion is the culmination of Plaintiffs' ongoing disagreement with the
15  Court's definition of substantial non-compliance. While this issue has been extensively
16  briefed on several occasions, Plaintiffs remain dissatisfied with the result.

17  On April 24, 2017, the Court defined substantial non-compliance: "Accordingly,
18  the Court has concluded that a location/performance is non-compliant when (1) 6 of 24
19  months are non-complaint; and (2) three consecutive months are non-complaint. (Dkt.
20  2030 at 1). On May 8, 2017, Plaintiffs filed a Motion for Reconsideration of the Court's
21  Order. (Dkt. 2042). Defendants responded on May 24, 2017[6], and Plaintiffs replied on
22  June 2, 2017. (Dkt. 2086). On June 21, 2017, the Court denied Plaintiffs' Motion. (Dkt.

---

[5] This definition must be read in conjunction with the Court's ruling that months in which a performance measure is not applicable (N/A) at a given facility are not counted in assessing whether that measure is compliant or noncompliant at that facility. [*See* 2/8/17 Tr. at 45:18-20 ("I should also, I think, address what it means to have an N/A, and I think that those just don't get counted. It's not for or against, it's just pulled out"); *see also* Doc. 2344 at 12-13 (explaining that the Stipulation does not permit months that are N/A to be counted as compliant)]

[6] While LRCiv 7.2(g)(2) does not permit a response to a motion for reconsideration unless ordered by the Court, on May 10, 2017, the Court ordered Defendants to respond. (Dkt. 2061).

LEGAL138324302.1                    -4-

2118).  Despite the Court's cautious examination of the Stipulation in its April 24, 2017 and June 21, 2017 Orders, nine months later, Plaintiffs once again challenge the Court's ruling.  The Court has ruled; and it has defended its ruling.  After Plaintiffs unsuccessfully challenged the Court's April 24, 2017 Order in May 2017, the Court firmly advised, ". . . the Court concludes that the [April 24], 2017 Order presents the most accurate and precise method for determining whether to impose a remediation plan" and "the [April 24], 2017 Order is consistent with the Stipulation. . ."  (Dkt. 2118 at 3).

While Plaintiffs argued the April 24, 2017 Order harms class members because it prevents a "Performance Measure that had scored *zero* in four out of the previous five months" from being found noncompliant, the Court rejected this argument and reminded Plaintiffs that "the Stipulation does not require 100% compliance, nor does it set a floor for compliance. . . [t]his means that individual examples of non-compliance and a hypothetical month of zero percent compliance do not, in and of themselves, violate the Stipulation or prevent a location/PM from exiting the Stipulation."  *Id*.  Plaintiffs advance the same argument here as they did in their Motion for Reconsideration, and this argument was rejected by the Court.  (Dkt. 2042, n. 3).  Moreover, Plaintiffs support for their position is confined to a footnote, which they take out of context.  Even if the footnote supported their position, the Court Order defining substantial noncompliance and subsequent Order denying Plaintiffs' Motion to reconsider that Order, are far more indicative of the Court's intent.

As the Court is aware, the Court's definition of substantial non-compliance was the result of continued frustration and confusion regarding the term "substantial non-compliance."  (Dkt. 2118 at 3) (". . . this issue was triggered by the parties' repeated inability to agree on the location/PMs subject to a remedial measure).  The Court has clarified the confusion, remedied the frustration, and defined substantial non-compliance.  That Plaintiffs now wish to re-visit the issue, nine months after the resolution, is improper, as the parties and the Court have operated under this definition since April 2017.  And Plaintiffs apparently agree.  In their Motion for Reconsideration, Plaintiffs argued the

LEGAL138324302.1                                -5-

1  Court should maintain the status quo, "The Court has reiterated that definition, and all
2  parties have relied upon it for nearly a year." *Id*. Defendants agree.[7]

3        To about face (yet again), at this late juncture, throws a wrench into a well-greased
4  wheel. But, as has been Plaintiffs' habit throughout the course of this litigation, Plaintiffs
5  disrupt the status quo, so as to extend the life of the Stipulation. Revising the definition
6  accomplishes their goal of re-setting the Stipulation clock, and the Court should not allow
7  it.

## CONCLUSION

9        The parties respectfully request that the Court issue an order clarifying the standard
10  for determining when Defendants have failed to substantially comply with the Stipulation
11  with regard to a performance measure of the Stipulation, which is a prerequisite for
12  mediator assistance and judicial enforcement.

13  \\
14  \\
15  \\
16  \\
17  \\
18  \\
19  \\
20  \\
21  \\
22  \\
23  \\
24  \\

---

[7] Ironically, in their Motion for Reconsideration, Plaintiffs also argued "The Court's original definition of substantial noncompliance . . . is the law of the case." (Dkt. 2042 at 5). While that argument was rejected by the Court, Plaintiffs take a contrary position here by arguing the Court should reverse itself. Plaintiffs cannot have it both ways.

1 | Respectfully submitted the 25th of January, 2018.

| **PRISON LAW OFFICE** | **STRUCK LOVE BOJANOWSKI & ACEDO, P.L.C.** |
|---|---|
| By: s/ Rita K. Lomio<br>Donald Specter (Cal. 83925)*<br>Alison Hardy (Cal. 135966)*<br>Sara Norman (Cal. 189536)*<br>Corene Kendrick (Cal. 226642)*<br>Rita K. Lomio (Cal. 254501)*<br>**PRISON LAW OFFICE**<br>1917 Fifth Street<br>Berkeley, California 94710<br>Telephone:  (510) 280-2621<br>Email:    dspecter@prisonlaw.com<br>           ahardy@prisonlaw.com<br>           snorman@prisonlaw.com<br>           ckendrick@prisonlaw.com<br>           rlomio@prisonlaw.com<br><br>*Admitted *pro hac vice* | By:   s/ Timothy J. Bojanowski<br>       (with permission)<br>Daniel P. Struck<br>Rachel Love<br>Timothy J. Bojanowski<br>Nicholas D. Acedo<br>Ashlee B. Hesman<br>Jacob B. Lee<br>Kevin R. Hanger<br>Timothy Ray<br>3100 W. Ray Road, Suite 300<br>Chandler, Arizona 85226<br>Telephone:  (480) 420-1600<br>Email:   dstruck@strucklove.com<br>         rlove@strucklove.com<br>         tbojanowski@strucklove.com<br>         nacedo@strucklove.com<br>         ahesman@strucklove.com<br>         jlee@strucklove.com<br>         khanger@strucklove.com<br>         tray@strucklove.com |
| David C. Fathi (Wash. 24893)*<br>Amy Fettig (D.C. 484883)**<br>Victoria Lopez (Ill. 6275388)*<br>**ACLU NATIONAL PRISON PROJECT**<br>915 15th Street N.W., 7th Floor<br>Washington, D.C. 20005<br>Telephone:  (202) 548-6603<br>Email:   dfathi@aclu.org<br>         afettig@aclu.org<br>         vlopez@aclu.org<br><br>*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.<br>**Admitted *pro hac vice*<br><br>Kirstin T. Eidenbach (Bar No. 027341)<br>**EIDENBACH LAW, P.L.L.C.**<br>P. O. Box 91398<br>Tucson, Arizona 85752<br>Telephone:  (520) 477-1475<br>Email:   kirstin@eidenbachlaw.com | Arizona Attorney General Mark Brnovich<br>  Office of the Attorney General<br>Michael E. Gottfried<br>Lucy M. Rand<br>  Assistant Attorneys General<br>1275 W. Washington Street<br>Phoenix, Arizona 85007-2926<br><br>*Attorneys for Defendants* |

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:   kbrody@acluaz.org

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:   dbarr@perkinscoie.com
             agerlicher@perkinscoie.com
             jhgray@perkinscoie.com

Caroline Mitchell (Cal. 143124)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email:   cnmitchell@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email:   jlwilkes@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By: s/ Maya Abela
    Sarah Kader (Bar No. 027147)
    Asim Dietrich (Bar No. 027927)
    5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
    Telephone: (602) 274-6287
    Email:  skader@azdisabilitylaw.org
            adietrich@azdisabilitylaw.org

    Rose A. Daly-Rooney (Bar No. 015690)
    J.J. Rico (Bar No. 021292)
    Jessica Jansepar Ross (Bar No. 030553)
    Maya Abela (Bar No. 027232)
    **ARIZONA CENTER FOR DISABILITY LAW**
    177 North Church Avenue, Suite 800
    Tucson, Arizona 85701
    Telephone: (520) 327-9547
    Email:
        rdalyrooney@azdisabilitylaw.org
        jrico@azdisabilitylaw.org
        jross@azdisabilitylaw.org
        mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2018, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Kevin R. Hanger
Timothy M. Ray
Richard M. Valenti
Jamie D. Guzman
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
khanger@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com

*Attorneys for Defendants*

  s/ D. Freouf