**Index of Exhibits to**
**Declaration of Corene Kendrick**

**Exhibit 1**      A true and correct copy of the Joint Defense Agreement entered into between Defendants and Corizon, which was sent by Counsel for Defendants' Legal Assistant to Plaintiffs on October 4, 2017

**Exhibit 2**      A true and correct copy of Amendment 10 to the contract between ADC and Corizon, dated May 11, 2015

# Exhibit 1

**Corene Kendrick**

| | |
|---|---|
| **From:** | Elaine Percevecz |
| **Sent:** | Wednesday, October 4, 2017 3:53 PM |
| **To:** | David Fathi (dfathi@aclu.org); Alison Hardy (ahardy@prisonlaw.com); Amy Fettig (afettig@aclu.org); Caroline N. Mitchell; Corene Kendrick; Daniel Barr; Don Specter; kbrody@acluaz.org; Kirstin Eidenbach; Maya Abela; rlomio@prisonlaw.com; Victoria Lopez (vlopez@aclu.org); jonka@aclu.org; Megan Lynch; Sarah Hopkins (sarah@prisonlaw.com); Freouf, Delana (Perkins Coie) |
| **Cc:** | Tim Bojanowski; Dan Struck; Rachel Love; Nick Acedo; Parsons Team; Michael E. Gottfried; Lucy Rand; Ybarra, Griselda (Griselda.Ybarra@azag.gov); MacPherson, Scott (Scott.MacPherson@azag.gov) |
| **Subject:** | RE: Parsons v. Ryan - Joint Defense Agreement |
| **Attachments:** | Parsons - Joint Defense Agreement.pdf |

Counsel:

Attached is the Joint Defense Agreement entered into between the ADC and Corizon.

Sincerely,

Elaine



Elaine Percevecz
Legal Assistant to Timothy J. Bojanowski

**STRUCK LOVE BOJANOWSKI & ACEDO, PLC**
3100 W. Ray Road | Suite 300 | Chandler AZ 85226
p: 480.420.1619 | epercevecz@strucklove.com | strucklove.com

**From:** Jennifer Onka [mailto:jonka@aclu.org]
**Sent:** Wednesday, October 04, 2017 1:38 PM
**To:** Tim Bojanowski
**Cc:** Alison Hardy; Amy Fettig; Ashlee Fletcher; Brad Keogh; Caroline N. Mitchell; Corene Kendrick; Dan Struck; Daniel Barr; David Fathi; Dawn Northup; Don Specter; Elaine Percevecz; Griselda Ybarra; Kathy Brody; Kirstin Eidenbach; Lucy Rand; Maya Abela; Megan Lynch; Michael E. Gottfried; Rachel Love; Richard Lee Pratt; Richie Valenti; Rita Lomio; rowens1@azcorrections.gov; Sarah Hopkins; Scott MacPherson; skader@azdisabilitylaw.org; Victoria Lopez
**Subject:** Parsons v. Ryan - Discovery Issues

Dear counsel,

Please see the attached correspondence from David Fathi regarding the above-referenced matter.

Thank you,
Jennifer

**Jennifer Onka**
Paralegal
National Prison Project of the ACLU
915 15th St. NW, 7th Floor

Washington, DC 20005
■ 202.548.6602 ■ jonka@aclu.org
www.aclu.org



BECAUSE FREEDOM CAN'T PROTECT ITSELF

*This message may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system.*

This electronic mail transmission contains information from the law firm Struck Love Bojanowski & Acedo, PLC that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 420-1600. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

**PRIVILEGED AND CONFIDENTIAL**

## JOINT DEFENSE AGREEMENT

This Joint Defense and Common Interest Agreement ("Agreement") is made and entered into by and among undersigned Counsel as of June 3, 2013, acting for and on behalf of their respective clients Charles Ryan and Richard Pratt, the Arizona Department of Corrections, the Arizona Attorney General's Office and Corizon, Inc. ("the Parties"). The Parties share an interest in the defense of the claims or potential claims of unconstitutional conditions of confinement and inadequate mental, medical and dental health care within the Arizona Department of Corrections ("ADC") facilities in the class action lawsuit in the United States District Court for the District of Arizona, Cause No. 2:12-cv-00601-NVW ("Litigation"). Plaintiffs in the litigation are the Arizona Center or Disability Law; the class of all prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices of the ADC; and the subclass of all prisoners who are now, or will in the future be, subjected by ADC to isolation, defined as confinement in a cell for 22 hours or more each day or confinement in the following housing units: Eyman – SMU 1; Eyman – Browning Unit; Florence – Central Unit; Florence – Kasson Unit; or Perryville – Lumley Special Management Area. Class Representatives are Shawn Jensen, Stephen Swartz, Dustin Brislan, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Jr., Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells.

The Parties have determined that it is in their individual and common interests for the Parties and their respective attorneys to share information relating to common interests and common issues, including certain privileged communications, work product, and discovery planning to facilitate the representation and anticipated defense of the Litigation. Accordingly, the Parties' attorneys wish to pursue the separate but common interests of their clients and to make clear that by working together they do not waive any privilege.

This Agreement embodies in written form the continuous agreements of the Parties since the inception of this lawsuit on March 22, 2012.

In consideration of the foregoing, and by signing this Agreement, the Parties agree:

1.      "Client Group" is intended to mean the Parties and the Parties' respective employees.

2.      "Attorney Group" is intended to mean the Parties' respective legal counsel, including the signatories to this Agreement, as well as any other legal counsel and their legal staff retained or employed to represent the Parties in the Litigation.

3.      All communications between Client Group members and Attorney Group members that relate in any way to the Litigation or to the claims expressed in the

Litigation are confidential and protected from disclosure to any third party by the joint defense doctrine, attorney-client privilege, and the work-product privileges of the Attorney Group members.

4.    All communications between Attorney Group members that relate in any way to the Litigation or to the claims set forth in the Litigation are confidential and protected from disclosure to any third party by the joint defense doctrine, attorney-client privilege, and the work-product privileges of the Attorney Group members.

5.    Information in any way relating to the Litigation or to the claims set forth in the Litigation that is obtained by members of the Attorney Group upon viewing subpoenaed documents, attending witness or client briefings, or reviewing legal memoranda or other documents that are exchanged among Attorney Group members, shall remain confidential and protected from disclosure to any third party by the joint defense doctrine, the attorney-client privilege, and the work-product privileges of the Attorney Group members.

6.    All work, including but not limited to attorney work product, conversations, documents, internal interview memoranda, the results of research or investigations, including but not limited to those conducted by the Attorney Group or Client Group, and communications with Client Group members that are shared by members of the Attorney Group, and that in any way relate to the Litigation or to the claims expressed in the Litigation, will remain confidential and protected from disclosure to any third party by the joint defense doctrine, the attorney-client privilege, and the work product privilege.

7.    No communications, information, or work that the Client Group or Attorney Group members receive under this Agreement shall be revealed to third parties without the consent of the Attorney Group (with client agreement) or of the Client Group member who first provided the communications, information or work.

8.    In exchanging documents or other information pursuant to this Agreement, a party may choose to mark the documents or other information as subject to a particular privilege.  However, failure to mark any documents or information as privileged shall not be considered a waiver of any privilege that may apply to the document or information.

9.    Communications, information, or work received by an Attorney Group member under this Agreement may be disclosed to a Client Group member, and doing so conforms to this Agreement and is not a waiver of the attorney-client privilege, the work-product privilege, or the joint defense privilege, or any other privilege, although this Agreement recognizes that the client in receipt of such information is precluded from revealing it to third parties without the consent of the Attorney Group member (with client agreement) or the Client Group member who first provided the communications, information, or work.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

10.     No Party or its counsel has the authority to waive any applicable privilege on behalf of any other Party; nor shall any waiver of any applicable privilege by the conduct of one Party be construed to apply to another Party.

11.     Nothing in this Agreement shall be construed to affect or limit the separate and independent representation of Client Group members by their attorneys according to what the attorneys believe to be in their client's best interests, including advocating the allocation of fault among Client Group members and advocating for the use of special jury instructions, verdict forms, and interrogatories that delineate issues of fault, and nothing in this Agreement shall limit Client Group members' ability to settle the claims against them.

12.     Nothing in this Agreement shall be construed to restrict, obstruct or in any way interfere with obligations to maintain and produce records pursuant to Title 39, Arizona Revised Statutes.

13.     The parties acknowledge and are bound by the terms of the Protective Order in place in the Litigation, attached as **Exhibit A** to this Agreement.

14.     Attorney Group and Client Group members understand that one purpose of this Agreement is to facilitate a joint defense by maximizing the information flow among counsel and clients who are parties to the Agreement; however, there may be circumstances under which information known to one member of the Attorney Group or Client Group may not be shared with other members, and the decision to share or not share information and the appropriateness of sharing such information will be made at the sole discretion and determination of the Attorney Group and Client Group members without constraint or obligation by any terms of this Agreement. Attorney Group and Client Group members recognize the implied duty of good faith cooperation inherent in this Agreement.

15.     Attorney Group and Client Group members are free to withdraw from this Agreement upon giving express notification to all members of the Attorney Group, in which case this Agreement shall no longer be operative as to the withdrawing member but shall continue to protect all communications and information covered by the Agreement and disclosed to or communicated by the withdrawing member prior to the notification of withdrawal.   Upon demand, withdrawing members shall immediately return all joint defense materials and copies thereof.

16.     All Client Group members who receive information pursuant to this Agreement shall be informed of and shall agree to comply with the terms of this Agreement and shall not otherwise disclose the information they receive to the public or any other person except as provided for in this Agreement.   Before a Client Group member receives information pursuant to this Agreement, the Client Group member shall acknowledge his or her consent to comply with the terms of this Agreement by signing a copy of the attached acknowledgment form. .

17.    It is agreed that information obtained pursuant to this Agreement and information derived there from may not be used for any purpose other than preparation of a joint defense to the Litigation, to the claims expressed in the Litigation, or to proceedings arising out of the Litigation.

18.    Counsel executing this Agreement do so on their own behalf, on the behalf of Attorney Group members, and on the behalf of the Client Group members they represent.

19.    This Agreement is deemed confidential and shall not be disclosed by the Parties except as is reasonably necessary to support a claim of privilege or work product protection or as otherwise required by law.

20.    Attorney Group and Client Group members agree that, should one Client Group member testify at trial or some other proceeding, Attorney Group members shall not be disqualified from cross-examining the testifying Client Group member on the grounds that they are privy to attorney-client communications or for any other reason arising out of the existence of this Agreement, provided the cross-examining attorneys shall not examine in a manner so as to elicit testimony from the witness concerning joint defense communications.

21.    Counsel executing this Agreement will fully advise the party they represent that it is possible that a Client Group member may later become a witness against the client or hold a position adverse to the client.  Counsel for each party will fully explain to the party they represent the limitations on the direct use of the information obtained pursuant to this Agreement.  Attorney Group and Client Group members represent that they have considered the foregoing and believe that the benefits of being a member of this Agreement outweigh any of the limitations imposed by this Agreement.

22.    Attorney Group and Client Group members waive any right to seek the disqualification as counsel of any Attorney Group member based upon knowledge of communications, information, or work protected by this Agreement.

23.    Attorney Group and Client Group members represent and warrant to each other that they have not entered into any agreements with Plaintiffs or their attorneys, other than agreements on extensions or scheduling.

24.    In the event that an individual Client Group member settles the claims Plaintiffs have made against it, that Client Group member's attorney shall give express notification to all members of the Attorney Group and this Agreement shall no longer be operative as to the settling member; however, the Agreement shall continue to protect all communications and information disclosed to or by the settling member prior to the notification of settlement.   Upon demand, settling members shall immediately return all joint defense materials and copies thereof.

25.    This Agreement shall be executed in counterparts with the same force and effect as if executed in one complete document.

26.     Modifications may be made to this Agreement, if such modifications are in writing and signed by counsel for each Party.

27.     This Agreement may be executed in duplicate originals and each original shall fully bind each Attorney Group member who has executed it and the Client Group members they represent.

Date: _6-3-13_                  STRUCK WIENEKE & LOVE, P.L.C.

By: _____

Daniel P. Struck
*Attorneys for Defendants Charles Ryan and Richard Pratt*

Date: _5-21-13_

By: _____

Michael E. Gottfried
Assistant Attorney General
*Attorney for Defendants*

Date: _5.28.2013_

By: _____

Dawn M. Northup
*General Counsel, Arizona Department of Corrections*

Date: _____

By: _____

Justin Thomas Scalise
*Assistant General Counsel and Privacy Officer*
*Attorneys for Corizon, Inc.*

5

CONFIDENTIAL - ATTORNEYS' EYES ONLY

26.     Modifications may be made to this Agreement, if such modifications are in writing and signed by counsel for each Party.

27.     This Agreement may be executed in duplicate originals and each original shall fully bind each Attorney Group member who has executed it and the Client Group members they represent.

Date:_____          STRUCK WIENEKE & LOVE, P.L.C.


By:_____
   Daniel P. Struck
   *Attorneys for Defendants Charles Ryan and Richard Pratt*


Date:_____


By:_____
   Michael E. Gottfried
   Assistant Attorney General
   *Attorneys for Arizona Attorney General's Office*


Date:_____


By:_____
   Dawn M. Northrup
   *Attorneys for Arizona Department of Corrections*


Date: _5 - 16 - 13_


By:_____
   Justin Thomas Scalise
   *Assistant  General  Counsel  and  Privacy Officer*
   *Attorneys for Corizon, Inc.*

Acknowledgment of Joint Defense Agreement
*Parsons et al. v. Charles Ryan, et al.*, No. 2:12-cv-00601-NVW (D. Ariz.)

I, _Justin Thomas Scalise_, hereby acknowledge that I have read and understand the Joint Defense Agreement entered into by the Parties in this matter. I hereby agree to be bound by the terms of the Joint Defense Agreement.

_G. TR_

[signature]

_Justin Thomas Scalise_

[print name]

DATED: _5 - 16 - 13_

# Exhibit 2

# CONTRACT AMENDMENT

**ARIZONA
DEPARTMENT OF ORRECTIONS
1601 W. JEFFERSON, M/C 55302
PHOENIX, ARIZONA 85007
(602) 542-1172**

CONTRACT NO. 130051DC          AMENDMENT NO. 10          Contact: Bernadette Hill

**A SIGNED COPY OF THIS AMENDMENT MUST BE RECEIVED BY THE DEPARTMENT OF CORRECTIONS.**

May 11, 2015

Woodrow A. Myers, Jr., M.D., Chief Executive Officer
Corizon, LLC
103 Powell Court
Brentwood, Tennessee 37027
Via Email: Jennifer.Finger@corizonhealth.com

**Contract No. ADOC13-041943/130051DC - Privatization of All Correctional Health Services**

The Contract is hereby amended as follows:

1. **Exercise Year 4 Renewal Option:** The contract term is extended for one year from March 4, 2016 to March 3, 2017.

2. **Potential Year 5 Renewal:** Corizon agrees to exercise its second annual renewal option for contract Year 5 if ADC requests 4.0% CPI increases in its annual budget request for contract Years 4 and 5, and if the State Legislature authorizes the 4.0% CPI increase for contract Year 4. This would extend the contract until March 3, 2018.

3. **Cancellation Clause:** Section 1.25 Cancellation is revised to add the following:

   Corizon and ADC agree to a 180 day notice period to cancel the contract during Year 4 (March 4, 2016 to March 3, 2017) which will be triggered only if the Arizona Legislature does not fund in full a 4% CPI increase in Corizon's per diem rate for Year 4 of the contract. If the CPI increase is not fully funded for Year 4, the parties will negotiate for a period of up to 60 days to find other cost savings that can be used to replace the unfunded portion of the 4% CPI increase. During this time, ADC will release a Request for Proposal (RFP) for a replacement contract. If the parties are able to agree to other cost savings to replace the unfunded portion of the 4% CPI increase, ADC may cancel the RFP. If there is no agreement after the 60 day negotiation period, Corizon has the option to provide 180 days' notice of contract cancellation and ADC may continue with the RFP.

4. **Indemnification:** Section 1.29, Indemnification is hereby revised to read as follows:

   The Contractor (Corizon) shall indemnify, defend, save and hold harmless the State of Arizona, its departments, agencies, boards, commissions, universities and its officers, officials, agents, and employees (hereinafter referred to as "Indemnitee") from and against any and all claims, actions, liabilities, damages, losses, or expenses (including court costs, attorneys' fees, and costs

## CONTRACT AMENDMENT

ARIZONA
**DEPARTMENT OF ORRECTIONS**
1601 W. JEFFERSON, M/C 55302
PHOENIX, ARIZONA 85007
(602) 542-1172

CONTRACT NO. 130051DC          AMENDMENT NO. 10          Contact: Bernadette Hill

**A SIGNED COPY OF THIS AMENDMENT MUST BE RECEIVED BY THE DEPARTMENT OF CORRECTIONS.**

of claim processing, investigation and litigation) (hereinafter referred to as "Claims") for bodily injury or personal injury (including death), violation of the health care aspects of the Stipulation, allegations of unconstitutional health care resulting in a claim for injunctive relief, or loss or damage to tangible or intangible property caused, or alleged to be caused, in whole or in part, by the negligent or willful acts or omissions of the Contractor or any of its owners, officers, directors, agents, employees or subcontractors. This indemnity includes any claim or amount arising out of or recovered under the Workers' Compensation Law or arising out of the failure of such contractor to conform to any federal, state or local law, statute, ordinance, rule, regulation or court decree. It is the specific intention of the parties that the Indemnitee shall, in all instances, except for Claims arising solely from the negligent or willful acts or omissions of the Indemnitee, be indemnified by Contractor from and against any and all claims. It is agreed that the Contractor will be responsible for primary loss investigation, defense and judgment costs where this indemnification is applicable. In consideration of the award of this contract, the Contractor agrees to waive all rights of subrogation against the State of Arizona, its officers, officials, agents and employees for losses arising from the work performed by the Contractor for the State of Arizona.

In addition, Corizon agrees to indemnify ADC for claims asserted under Paragraphs 30 and 31 of the Stipulated Agreement in Parsons v. Ryan, 2:12-cv-00601-DKD (Doc. 1185 and Doc. 1185-1 attached as Exhibit A) alleging substantial non-compliance with the terms of the health care performance measures set forth in Exhibit B to the Stipulation but only for claims arising from the acts or omissions of Corizon during the time period July 1, 2015 through contract termination. ADC intends to utilize the resources of the Arizona Attorney General's office (AG) to work collaboratively with Corizon in responding to any claims of substantial non-compliance under Paragraph 30 of the Stipulation and Corizon will not be responsible for indemnifying ADC for work performed by the AG. The parties agree that Corizon will only be responsible for any and all costs and attorneys' fees incurred by ADC in defending claims before the District Judge pursuant to the last sentence in Paragraph 31 of the Stipulation involving substantial non-compliance with the health care performance measures that arise from Corizon's acts or omissions during the time period July 1, 2015 through contract termination. Corizon will be responsible for paying all court ordered monitoring fees and costs under Paragraph 31 of the Stipulation if the fees and costs were incurred as a result of substantial non-compliance with the health care performance measures in the Stipulation but only for claims arising from the acts or omissions of Corizon during the time period July 1, 2015 through contract termination.

5. **Mediation:** Effective upon the execution of this amendment, and through contract termination, the Contractor agrees to fully participate in any inmate mediation program developed, run by, or ordered by the United States District Court for the District of Arizona, the Ninth Circuit Court of Appeals, the Superior Court of the State of Arizona, or any other court of competent jurisdiction, regardless of the procedural posture of the case, when it or its employees are named as defendants. Such participation shall include, but is not limited to, preparation of mediation

# CONTRACT AMENDMENT

**ARIZONA
DEPARTMENT OF ORRECTIONS
1601 W. JEFFERSON, M/C 55302
PHOENIX, ARIZONA 85007
(602) 542-1172**

**CONTRACT NO. 130051DC**          **AMENDMENT NO. 10**          **Contact: Bernadette Hill**

A SIGNED COPY OF THIS AMENDMENT MUST BE RECEIVED BY THE DEPARTMENT OF CORRECTIONS.

memoranda, consultation with physicians and attorneys involved in mediations, and participation in mediation proceedings.

6. **Contract Sanctions:** The contract sanctions for performance measures for Year 3 are unchanged. Effective on March 4, 2016, the contract sanctions for performance measures are changed from 43 performance measures, sanctioned quarterly at a statewide level to approximately 100 performance measures evaluated monthly at each complex (See Attachment C). The sanctions are assessed as follows: For each performance measure at each complex, beginning with the month of March 2016, if Corizon's lack of performance results in an extension of the original timeframes specified in the Parsons vs. Ryan, et.al. stipulation, Corizon will be assessed $5,000. For any subsequent monthly performance measure that Corizon's performance results in a further extension of the timeframes in the Parsons vs. Ryan stipulation, Corizon will be assessed $5,000 for each extension of each performance measure at each complex. The total cumulative sanctions in any month shall not exceed $90,000.

7. **Additional Staffing:** As a result of the settlement of the case of *Parsons vs. Ryan, et al.*, Corizon has identified five additional FTE positions needed to comply with settlement requirements:

   | | |
   |---|---|
   | 1.0 FTE | Associate Regional Mental Health Director |
   | 1.0 FTE | Associate Regional Director of Nursing |
   | 1.0 FTE | Senior Manager Compliance & Quality Assurance |
   | 2.0 FTE | Compliance Monitors |

   Corizon agrees to fund these additional positions at no cost to the State.

8. **CPI Adjustment:** The average medical CPI for Metropolitan Phoenix, as specified by contract, increased 3.6% in 2014. As a result, a 3.6% CPI adjustment is hereby made, adjusting the per diem from $11.20 to $11.60 with an estimated annual fiscal impact of $5.2M.
   a. The increase is determined using the projected FY State Average Daily Population (ADP) of 35,159 inmates. No adjustment will be made to the per diem amount due to actual ADP being different than the estimate.
   b. The per diem rate with the CPI adjustment is retroactive to March 4, 2015.

9. A revised staffing plan (Attachment A) and per diem schedule (Attachment B) are attached hereto and incorporated herein.

# CONTRACT AMENDMENT

**ARIZONA**
**DEPARTMENT OF ORRECTIONS**
**1601 W. JEFFERSON, M/C 55302**
**PHOENIX, ARIZONA  85007**
**(602) 542-1172**

CONTRACT NO.  130051DC          AMENDMENT NO. 10          Contact: Bernadette Hill

A SIGNED COPY OF THIS AMENDMENT MUST BE RECEIVED BY THE DEPARTMENT OF CORRECTIONS.

## ALL OTHER PROVISIONS OF THE CONTRACT SHALL REMAIN IN THEIR ENTIRETY.

Vendor hereby acknowledges receipt and understanding of above Amendment.

_____   5-11-15
Signature                          Date

_Sott A. Brues / President + Coo_
Typed Name and Title

The above reference Contract Amendment is hereby executed this 12th day of MAY, 2015 at Phoenix, Arizona.

_____
Leon George, Chief Procurement Officer

Attachment A



**Arizona Department of Corrections**
**Statewide Roll-Up**

| Key Management Positions | Current Contract FTEs |
|---|---|
| *Chief Medical Officer* | 1.00 |
| *Mental Health Director (PH.D)* | 1.00 |
| *Psychiatric Director* | 0.25 |
| Medical Director | 10.00 |
| Facility Health Administrator | 10.00 |
| Correctional RN Supervisor II / DON | 10.00 |
| Nurse Practitioner - Apache | 0.25 |
| Dental Director | 10.00 |
| Psychiatric Director | 0.50 |
| Psychiatrist - Phoenix Region | 1.00 |
| Mental Health Director (PH.D) | 1.00 |
| | 45.00 |

| Provider Positions | Current Contract FTEs |
|---|---|
| Staff Physician | 14.00 |
| Nurse Practitioner | 25.75 |
| | 39.75 |

| Non-Management Positions | Current Contract FTEs |
|---|---|
| Asst. Correctional RN Supervisor II | 3.00 |
| Administrative Services Officer | 7.00 |
| Correctional RN Supervisor I | 34.00 |
| CRN | 178.90 |
| LPN | 156.60 |
| Certified Nursing Assistant | 94.50 |
| Laboratory Technician | 2.00 |
| Radiology Technician | 8.50 |
| Pharmacy Technician | 23.50 |
| Secretary / Administrative Assistant | 21.00 |
| Medical Records Librarian II | 10.00 |
| Medical Records Librarian | 32.00 |
| Scheduler | 9.00 |
| Clinical Coordinator | 8.00 |
| Dentist | 20.00 |
| Dental Hygienist | 1.80 |
| Dental Assistant | 43.00 |
| Psychiatrist | 6.50 |
| Psychologist | 19.00 |
| Mental Health Clerk | 4.00 |
| Mental Health Nurse Practitioner | 11.50 |
| Mental Health CRN | 36.40 |
| Recreational Therapist | 5.00 |
| Psychology Associate | 52.40 |
| Psychology Technician | 25.40 |
| Mental Health Correctional RN Supervisor I | 1.00 |
| | 814.00 |

| | Current Contract FTEs |
|---|---|
| Regional Office Positions Not Subject to Offset | 26.20 |
| **Total** | 924.95 |

*\* Regional Office Positions are in Italics*

1

Attachment A



## Arizona Department of Corrections
## Douglas Complex

| Key Management Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Medical Director | 1.00 | $ 111.15 |
| Facility Health Administrator | 1.00 | $ 49.14 |
| Correctional RN Supervisor II / DON | 1.00 | $ 45.63 |
| Dental Director | 1.00 | $ 88.00 |
| | 4.00 | |

| Provider Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Nurse Practitioner | 1.00 | $ 70.20 |
| | 1.00 | |

| Non-Management Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Correctional RN Supervisor I | 1.00 | $ 43.29 |
| CRN | 8.60 | $ 36.27 |
| LPN | 3.90 | $ 28.08 |
| Certified Nursing Assistant | 3.40 | $ 16.97 |
| Radiology Technician | 0.50 | $ 28.08 |
| Secretary / Administrative Assistant | 2.00 | $ 18.72 |
| Medical Records Librarian II | 1.00 | $ 18.72 |
| Medical Records Librarian | 1.50 | $ 17.55 |
| Dentist | 1.00 | $ 83.00 |
| Dental Hygienist | 0.20 | $ 60.00 |
| Dental Assistant | 3.00 | $ 27.00 |
| Psychology Associate | 1.00 | $ 29.84 |
| | 27.10 | |
| Total | 32.10 | |

*Loaded Hourly Rate Includes the Base Hourly Rate and Benefits*

2

Attachment A



## Arizona Department of Corrections
### Eyman Complex

| Key Management Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Medical Director | 1.00 | $ 99.45 |
| Facility Health Administrator | 1.00 | $ 51.48 |
| Correctional RN Supervisor II / DON | 1.00 | $ 46.80 |
| Dental Director | 1.00 | $ 88.00 |
| | 4.00 | |

| Provider Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Staff Physician | 1.00 | $ 93.60 |
| Nurse Practitioner | 3.00 | $ 58.50 |
| | 4.00 | |

| Non-Management Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Administrative Services Officer | 1.00 | $ 43.29 |
| Correctional RN Supervisor I | 5.00 | $ 42.71 |
| CRN | 20.60 | $ 37.44 |
| LPN | 23.20 | $ 29.84 |
| Certified Nursing Assistant | 10.80 | $ 18.14 |
| Radiology Technician | 1.00 | $ 29.25 |
| Pharmacy Technician | 3.00 | $ 17.55 |
| Secretary / Administrative Assistant | 2.00 | $ 21.06 |
| Medical Records Librarian II | 1.00 | $ 19.89 |
| Medical Records Librarian | 6.00 | $ 16.38 |
| Scheduler | 1.00 | $ 17.55 |
| Clinical Coordinator | 1.00 | $ 30.42 |
| Dentist | 2.50 | $ 83.00 |
| Dental Hygienist | 0.20 | $ 60.00 |
| Dental Assistant | 5.00 | $ 27.00 |
| Psychiatrist | 1.00 | $ 140.40 |
| Psychologist | 4.00 | $ 46.80 |
| Mental Health Clerk | 1.00 | $ 16.97 |
| Mental Health Nurse Practitioner | 2.00 | $ 87.75 |
| Mental Health CRN | 3.00 | $ 39.78 |
| Psychology Associate | 9.00 | $ 30.42 |
| Psychology Technician | 5.10 | $ 19.31 |
| | 108.40 | |
| Total | 116.40 | |

*Loaded Hourly Rate Includes the Base Hourly Rate and Benefits*

Attachment A



## Arizona Department of Corrections
## Florence Complex

| Key Management Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Medical Director | 1.00 | $ 98.87 |
| Facility Health Administrator | 1.00 | $ 55.58 |
| Correctional RN Supervisor II / DON | 1.00 | $ 52.65 |
| Dental Director | 1.00 | $ 88.00 |
| | 4.00 | |

| Provider Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Staff Physician | 2.50 | $ 93.02 |
| Nurse Practitioner | 2.00 | $ 58.50 |
| | 4.50 | |

| Non-Management Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Asst. Correctional RN Supervisor II | 1.00 | $ 46.80 |
| Administrative Services Officer | 1.00 | $ 36.27 |
| Correctional RN Supervisor I | 5.00 | $ 43.29 |
| CRN | 16.40 | $ 39.20 |
| LPN | 24.40 | $ 29.84 |
| Certified Nursing Assistant | 15.40 | $ 17.55 |
| Radiology Technician | 1.00 | $ 30.42 |
| Pharmacy Technician | 3.00 | $ 19.89 |
| Secretary / Administrative Assistant | 2.00 | $ 19.89 |
| Medical Records Librarian II | 1.00 | $ 20.48 |
| Medical Records Librarian | 5.00 | $ 18.14 |
| Scheduler | 1.00 | $ 17.55 |
| Clinical Coordinator | 1.00 | $ 30.42 |
| Dentist | 3.00 | $ 83.00 |
| Dental Hygienist | 0.20 | $ 60.00 |
| Dental Assistant | 5.00 | $ 27.00 |
| Psychiatrist | 1.00 | $ 140.40 |
| Psychologist | 2.00 | $ 46.80 |
| Mental Health Clerk | 1.00 | $ 16.97 |
| Mental Health Nurse Practitioner | 2.00 | $ 87.75 |
| Mental Health CRN | 2.00 | $ 42.12 |
| Psychology Associate | 6.50 | $ 30.42 |
| Psychology Technician | 4.10 | $ 18.14 |
| | 104.00 | |
| Total | 112.50 | |

* *Loaded Hourly Rate Includes the Base Hourly Rate and Benefits*

4

Attachment A



### Arizona Department of Corrections
### Lewis Complex

| Key Management Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Medical Director | 1.00 | $ 99.45 |
| Facility Health Administrator | 1.00 | $ 49.14 |
| Correctional RN Supervisor II / DON | 1.00 | $ 45.63 |
| Dental Director | 1.00 | $ 88.00 |
| | 4.00 | |

| Provider Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Staff Physician | 2.50 | $ 93.60 |
| Nurse Practitioner | 3.00 | $ 52.65 |
| | 5.50 | |

| Non-Management Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Administrative Services Officer | 1.00 | $ 42.12 |
| Correctional RN Supervisor I | 3.00 | $ 43.29 |
| CRN | 21.80 | $ 36.27 |
| LPN | 21.10 | $ 29.25 |
| Certified Nursing Assistant | 13.90 | $ 18.14 |
| Radiology Technician | 1.00 | $ 29.25 |
| Pharmacy Technician | 3.00 | $ 19.89 |
| Secretary / Administrative Assistant | 2.00 | $ 18.14 |
| Medical Records Librarian II | 1.00 | $ 18.72 |
| Medical Records Librarian | 3.00 | $ 17.55 |
| Scheduler | 1.00 | $ 16.97 |
| Clinical Coordinator | 1.00 | $ 30.42 |
| Dentist | 3.00 | $ 83.00 |
| Dental Hygienist | 0.20 | $ 60.00 |
| Dental Assistant | 5.00 | $ 27.00 |
| Psychiatrist | 1.00 | $ 140.40 |
| Psychologist | 3.00 | $ 45.63 |
| Mental Health Nurse Practitioner | 2.00 | $ 87.75 |
| Mental Health CRN | 2.00 | $ 41.54 |
| Psychology Associate | 7.00 | $ 30.42 |
| Psychology Technician | 1.00 | $ 19.89 |
| | 97.00 | |
| Total | 106.50 | |

\* *Loaded Hourly Rate Includes the Base Hourly Rate and Benefits*

Attachment A



### Arizona Department of Corrections
### Phoenix Complex

| Key Management Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Medical Director | 1.00 | $ 99.45 |
| Facility Health Administrator | 1.00 | $ 51.48 |
| Correctional RN Supervisor II / DON | 1.00 | $ 52.65 |
| Dental Director | 1.00 | $ 88.00 |
| Psychiatric Director | 0.50 | $ 152.10 |
| Psychiatrist | 1.00 | $ 140.40 |
| Mental Health Director (PH.D) | 1.00 | $ 52.65 |
| | 6.50 | |

| Provider Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Staff Physician | 1.00 | $ 93.60 |
| Nurse Practitioner | 4.00 | $ 52.65 |
| | 5.00 | |

| Non-Management Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Administrative Services Officer | 1.00 | $ 42.12 |
| Correctional RN Supervisor I | 1.00 | $ 42.12 |
| CRN | 12.40 | $ 37.44 |
| LPN | 4.20 | $ 29.25 |
| Certified Nursing Assistant | 2.00 | $ 18.14 |
| Laboratory Technician | 1.00 | $ 18.72 |
| Radiology Technician | 1.00 | $ 29.25 |
| Pharmacy Technician | 3.00 | $ 19.89 |
| Secretary / Administrative Assistant | 3.00 | $ 18.14 |
| Medical Records Librarian II | 1.00 | $ 18.14 |
| Medical Records Librarian | 4.00 | $ 16.97 |
| Scheduler | 1.00 | $ 17.55 |
| Clinical Coordinator | 1.00 | $ 28.08 |
| Dental Assistant | 2.00 | $ 27.00 |
| Psychiatrist | 0.50 | $ 140.40 |
| Psychologist | 3.00 | $ 45.63 |
| Mental Health Nurse Practitioner | 1.00 | $ 70.20 |
| Mental Health CRN | 22.40 | $ 40.95 |
| Recreational Therapist | 2.00 | $ 25.74 |
| Psychology Associate | 6.40 | $ 30.42 |
| Psychology Technician | 12.10 | $ 25.74 |
| Mental Health Correctional RN Supervisor I | 1.00 | $ 44.46 |
| | 86.00 | |

| | | |
|---|---|---|
| **Total** | **97.50** | |

* Loaded Hourly Rate Includes the Base Hourly Rate and Benefits

6

Attachment A



## Arizona Department of Corrections
## Perryville Complex

| Key Management Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Medical Director | 1.00 | $ 105.30 |
| Facility Health Administrator | 1.00 | $ 51.48 |
| Correctional RN Supervisor II / DON | 1.00 | $ 46.80 |
| Dental Director | 1.00 | $ 88.00 |
| | 4.00 | |

| Provider Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Staff Physician | 2.50 | $ 99.45 |
| Nurse Practitioner | 5.00 | $ 55.58 |
| | 7.50 | |

| Non-Management Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Asst. Correctional RN Supervisor II | 1.00 | $ 43.29 |
| Administrative Services Officer | 1.00 | $ 45.63 |
| Correctional RN Supervisor I | 5.00 | $ 44.46 |
| CRN | 22.70 | $ 36.27 |
| LPN | 21.10 | $ 28.67 |
| Certified Nursing Assistant | 11.80 | $ 17.55 |
| Laboratory Technician | 1.00 | $ 20.48 |
| Radiology Technician | 1.00 | $ 29.25 |
| Pharmacy Technician | 4.50 | $ 18.72 |
| Secretary / Administrative Assistant | 2.00 | $ 18.14 |
| Medical Records Librarian II | 1.00 | $ 18.72 |
| Medical Records Librarian | 3.00 | $ 16.97 |
| Scheduler | 2.00 | $ 16.38 |
| Clinical Coordinator | 1.00 | $ 30.42 |
| Dentist | 2.50 | $ 83.00 |
| Dental Hygienist | 0.20 | $ 60.00 |
| Dental Assistant | 6.00 | $ 27.00 |
| Psychiatrist | 1.00 | $ 140.40 |
| Psychologist | 3.00 | $ 49.14 |
| Mental Health Clerk | 1.00 | $ 16.97 |
| Mental Health Nurse Practitioner | 2.00 | $ 87.75 |
| Mental Health CRN | 2.00 | $ 42.12 |
| Recreational Therapist | 1.00 | $ 25.16 |
| Psychology Associate | 6.50 | $ 30.42 |
| Psychology Technician | 3.10 | $ 21.65 |
| | 106.40 | |
| **Total** | **117.90** | |

* Loaded Hourly Rate Includes the Base Hourly Rate and Benefits

Attachment A



## Arizona Department of Corrections
## Safford Complex

| Key Management Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Medical Director | 1.00 | $ 117.00 |
| Facility Health Administrator | 1.00 | $ 50.31 |
| Correctional RN Supervisor II / DON | 1.00 | $ 45.63 |
| Dental Director | 1.00 | $ 88.00 |
| | 4.00 | |

| Provider Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Nurse Practitioner | 1.00 | $ 70.20 |
| | 1.00 | |

| Non-Management Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Correctional RN Supervisor I | 2.00 | $ 42.71 |
| CRN | 9.80 | $ 38.61 |
| LPN | 6.10 | $ 31.01 |
| Certified Nursing Assistant | 2.80 | $ 17.55 |
| Radiology Technician | 0.50 | $ 30.42 |
| Secretary / Administrative Assistant | 2.00 | $ 21.06 |
| Medical Records Librarian II | 1.00 | $ 18.14 |
| Medical Records Librarian | 0.50 | $ 16.38 |
| Dental Hygienist | 0.20 | $ 60.00 |
| Dental Assistant | 2.00 | $ 27.00 |
| Psychology Associate | 1.00 | $ 30.42 |
| | 27.90 | |
| Total | 32.90 | |

*Loaded Hourly Rate Includes the Base Hourly Rate and Benefits*

8

Attachment A



## Arizona Department of Corrections
## Tucson Complex

| Key Management Positions | Current Contract FTEs | | Loaded Hourly Rate |
|---|---|---|---|
| Medical Director | 1.00 | $ | 105.30 |
| Facility Health Administrator | 1.00 | $ | 51.48 |
| Correctional RN Supervisor II / DON | 1.00 | $ | 46.80 |
| Dental Director | 1.00 | $ | 88.00 |
| | 4.00 | | |

| Provider Positions | Current Contract FTEs | | Loaded Hourly Rate |
|---|---|---|---|
| Staff Physician | 3.50 | $ | 99.45 |
| Nurse Practitioner | 3.00 | $ | 56.16 |
| | 6.50 | | |

| Non-Management Positions | Current Contract FTEs | | Loaded Hourly Rate |
|---|---|---|---|
| Asst. Correctional RN Supervisor II | 1.00 | $ | 44.46 |
| Administrative Services Officer | 1.00 | $ | 43.29 |
| Correctional RN Supervisor I | 6.00 | $ | 42.12 |
| CRN | 39.10 | $ | 37.44 |
| LPN | 35.90 | $ | 28.67 |
| Certified Nursing Assistant | 22.00 | $ | 18.14 |
| Radiology Technician | 1.00 | $ | 29.25 |
| Pharmacy Technician | 4.00 | $ | 18.14 |
| Secretary / Administrative Assistant | 2.00 | $ | 18.14 |
| Medical Records Librarian II | 1.00 | $ | 18.72 |
| Medical Records Librarian | 6.00 | $ | 17.55 |
| Scheduler | 1.00 | $ | 16.67 |
| Clinical Coordinator | 1.00 | $ | 28.08 |
| Dentist | 4.00 | $ | 83.00 |
| Dental Hygienist | 0.20 | $ | 60.00 |
| Dental Assistant | 6.00 | $ | 27.00 |
| Psychiatrist | 2.00 | $ | 140.40 |
| Psychologist | 4.00 | $ | 46.80 |
| Mental Health Clerk | 1.00 | $ | 18.72 |
| Mental Health Nurse Practitioner | 1.50 | $ | 87.75 |
| Mental Health CRN | 4.00 | $ | 40.95 |
| Recreational Therapist | 2.00 | $ | 25.16 |
| Psychology Associate | 10.00 | $ | 30.42 |
| | 155.70 | | |
| Total | 166.20 | | |

*Loaded Hourly Rate Includes the Base Hourly Rate and Benefits*

9

Attachment A



## Arizona Department of Corrections
## Winslow Complex

| Key Management Positions | Current Contract FTEs | | Loaded Hourly Rate |
|---|---|---|---|
| Medical Director | 1.00 | $ | 94.77 |
| Facility Health Administrator | 1.00 | $ | 49.73 |
| Correctional RN Supervisor II / DON | 1.00 | $ | 45.63 |
| Nurse Practitioner - Apache | 0.25 | $ | 52.65 |
| Dental Director | 1.00 | $ | 88.00 |
| | 4.25 | | |

| Provider Positions | Current Contract FTEs | | Loaded Hourly Rate |
|---|---|---|---|
| Nurse Practitioner | 0.75 | $ | 52.65 |
| | 0.75 | | |

| Non-Management Positions | Current Contract FTEs | | Loaded Hourly Rate |
|---|---|---|---|
| Correctional RN Supervisor I | 2.00 | $ | 42.12 |
| CRN | 11.80 | $ | 36.27 |
| LPN | 5.20 | $ | 26.91 |
| Certified Nursing Assistant | 4.00 | $ | 16.97 |
| Radiology Technician | 0.50 | $ | 26.91 |
| Pharmacy Technician | 1.00 | $ | 17.55 |
| Secretary / Administrative Assistant | 2.00 | $ | 19.89 |
| Medical Records Librarian II | 1.00 | $ | 18.43 |
| Scheduler | 1.00 | $ | 16.38 |
| Clinical Coordinator | 1.00 | $ | 28.08 |
| Dentist | 1.00 | $ | 83.00 |
| Dental Hygienist | 0.20 | $ | 60.00 |
| Dental Assistant | 3.00 | $ | 27.00 |
| Psychology Associate | 1.00 | $ | 29.25 |
| | 34.70 | | |
| Total | 39.70 | | |

*Loaded Hourly Rate Includes the Base Hourly Rate and Benefits*

10

Attachment A



## Arizona Department of Corrections
## Yuma Complex

| Key Management Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Medical Director | 1.00 | $ 105.30 |
| Facility Health Administrator | 1.00 | $ 52.65 |
| Correctional RN Supervisor II / DON | 1.00 | $ 45.05 |
| Dental Director | 1.00 | $ 88.00 |
| | 4.00 | |

| Provider Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Staff Physician | 1.00 | $ 99.45 |
| Nurse Practitioner | 3.00 | $ 60.84 |
| | 4.00 | |

| Non-Management Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Administrative Services Officer | 1.00 | $ 46.80 |
| Correctional RN Supervisor I | 4.00 | $ 40.95 |
| CRN | 15.70 | $ 35.10 |
| LPN | 11.50 | $ 28.67 |
| Certified Nursing Assistant | 8.40 | $ 17.55 |
| Radiology Technician | 1.00 | $ 29.25 |
| Pharmacy Technician | 2.00 | $ 16.97 |
| Secretary / Administrative Assistant | 2.00 | $ 18.72 |
| Medical Records Librarian II | 1.00 | $ 18.72 |
| Medical Records Librarian | 3.00 | $ 15.80 |
| Scheduler | 1.00 | $ 16.38 |
| Clinical Coordinator | 1.00 | $ 28.08 |
| Dentist | 3.00 | $ 83.00 |
| Dental Hygienist | 0.20 | $ 60.00 |
| Dental Assistant | 6.00 | $ 27.00 |
| Mental Health Nurse Practitioner | 1.00 | $ 87.75 |
| Mental Health CRN | 1.00 | $ 39.78 |
| Psychology Associate | 4.00 | $ 29.25 |
| | 66.80 | |

| | | |
|---|---|---|
| Total | 74.80 | |

*Loaded Hourly Rate Includes the Base Hourly Rate and Benefits*

11

Attachment A



## Arizona Department of Corrections
## Regional Office

| Key Management Positions | Current Contract FTEs | Loaded Hourly Rate |
|---|---|---|
| Chief Medical Officer | 1.00 | $ 140.63 |
| Mental Health Director (PH.D) | 1.00 | $ 56.25 |
| Psychiatric Director | 0.25 | $ 148.22 |
| | 2.25 | |

| Positions Not Subject to Offset | Current Contract FTEs |
|---|---|
| Chief Executive Officer | 1.00 |
| Regional Vice President | 2.00 |
| Statewide DON | 1.00 |
| Medical UM Administrator | 1.00 |
| Quality Management Administrator | 1.00 |
| Pharmacy Director/ Coordinator | 0.20 |
| Staff Development Specialist | 1.00 |
| Provider Services and Claims Representative | 1.00 |
| Financial Operations Manager | 1.00 |
| IT Technicians | 2.00 |
| Recruiter | 1.00 |
| IT Software and Network Administrator | 1.00 |
| Data & Reports Coordinator | 1.00 |
| Clinical Data Coordinator | 1.00 |
| Administrative Assistant | 3.00 |
| Inmate Grievance Representative | 1.00 |
| Discharge Planner | 2.00 |
| UM RN | 2.00 |
| UM Clerks | 2.00 |
| Regional Dental Coordinator | 1.00 |
| | 26.20 |
| Total | 28.45 |

*Loaded Hourly Rate Includes the Base Hourly Rate and Benefits*

12

Attachment B



| SOLICITATION NO. ADOC12-00001105   AMENDMENT NO. 10 | | | | ARIZONA DEPARTMENT OF CORRECTIONS |
|---|---|---|---|---|

Breakdown of relative daily costs included in the capitation rate:

| No. | Title | | Current Year 3 PIPD | CPI Increase | Amended Year 3 PIPD |
|---|---|---|---|---|---|
| 1. | **Employee Personal Services - Direct Care** | | | | |
| | 1.1 | Medical Services: Wages and Overtime | $ 3.694 | 0.133 | 3.827 |
| | 1.3 | Dental Services: Wages and Overtime | $ 0.000 | 0.000 | 0.000 |
| | 1.4 | Pharmacy Services: Wages and Overtime | $ 0.105 | 0.004 | 0.109 |
| | 1.5 | Mental Health Services: Wages and Overtime | $ 1.059 | 0.038 | 1.097 |
| 2. | **Employer Related Expenditures for Employees - Direct Care** | | | | |
| | 2.1 | Medical Services: Employer Related Expenditures | $ 0.631 | 0.023 | 0.654 |
| | 2.2 | Dental Services:  Employer Related Expenditures | $ 0.000 | 0.000 | 0.000 |
| | 2.3 | Pharmacy Services:  Employer Related Expenditures | $ 0.019 | 0.001 | 0.020 |
| | 2.4 | Mental Health Services:  Employer Related Expenditures | $ 0.164 | 0.006 | 0.170 |
| 3. | **Professional and Outside Services - Direct Care** | | | | |
| | 3.1 | Medical Services:  Professional and Outside Services | $ 1.883 | 0.068 | 1.951 |
| | 3.1.1 | Savings Due to Capital Construction for On-Site Services | $ N/A | N/A | N/A |
| | 3.2 | Dental Services:  Professional and Outside Services | $ 0.659 | 0.024 | 0.683 |
| | 3.3 | Pharmacy Services:  Professional and Outside Services | $ N/A | N/A | N/A |
| | 3.4 | Mental Health Services:  Professional and Outside Services | $ N/A | N/A | N/A |
| 4. | **Travel - In State** | | | | |
| | 4.1 | Medical Services:  Travel - In State | $ 0.014 | 0.001 | 0.015 |
| | 4.2 | Dental Services: - Travel - In State | $ N/A | N/A | N/A |
| | 4.3 | Pharmacy Services: - Travel - In State | $ N/A | N/A | N/A |
| | 4.4 | Mental Health Services: - Travel - In State | $ 0.002 | 0.000 | 0.002 |
| 5. | **Travel - Out of State** | | | | |
| | 5.1 | Medical Services:  Travel - Out State | $ 0.002 | 0.000 | 0.002 |
| | 5.2 | Dental Services: - Travel - Out State | $ N/A | N/A | N/A |
| | 5.3 | Pharmacy Services: - Travel - Out State | $ N/A | N/A | N/A |
| | 5.4 | Mental Health Services: - Travel - Out State | $ 0.001 | 0.000 | 0.001 |
| 6. | **Other Operating Expenses** | | | | |
| | 6.1 | Medical Services:  Other Operating Expenses | $ 0.500 | 0.018 | 0.518 |
| | 6.2 | Dental Services:  Other Operating Expenses | $ N/A | N/A | N/A |
| | 6.3 | Pharmacy Services: Pharmaceuticals | $ 1.139 | 0.041 | 1.180 |
| | 6.3 | Pharmacy Services: Other Operating Expenses excluding Pharmaceuticals | $ 0.104 | 0.004 | 0.108 |
| | 6.4 | Mental Health Services:  Other Operating Expenses | $ 0.014 | 0.001 | 0.015 |

Attachment B



| SOLICITATION NO. ADOC12-00001105   AMENDMENT NO. 10 | | | | ARIZONA DEPARTMENT OF CORRECTIONS |
|---|---|---|---|---|

**Breakdown of relative daily costs included in the capitation rate:**

| No. | Title | | Current Year 3 PIPD | CPI Increase | Amended Year 3 PIPD |
|---|---|---|---|---|---|
| 7. | **Capital Equipment** | | | | |
| | 7.1 | Medical Services: | $ 0.022 | 0.001 | 0.023 |
| | 7.2 | Dental Services: | $ N/A | N/A | N/A |
| | 7.3 | Pharmacy Services: | $ 0.000 | 0.000 | 0.000 |
| | 7.4 | Mental Health Services: | $ 0.000 | 0.000 | 0.000 |
| | 7.5 | Building Improvement/Construction: | $ 0.000 | 0.000 | 0.000 |
| 8. | **Non-Capital Equipment** | | | | |
| | 8.1 | Medical Services: | $ 0.016 | 0.001 | 0.017 |
| | 8.2 | Dental Services: | $ N/A | N/A | N/A |
| | 8.3 | Pharmacy Services: | $ 0.000 | 0.000 | 0.000 |
| | 8.4 | Mental Health Services: | $ 0.000 | 0.000 | 0.000 |
| 9. | **Insurance** | | | | |
| | 9.1 | Commercial General Liability | $ 0.000 | 0.000 | 0.000 |
| | 9.2 | Business Automobile Liability | $ 0.000 | 0.000 | 0.000 |
| | 9.3 | Umbrella Liability | $ 0.000 | 0.000 | 0.000 |
| | 9.4 | Professional Liability | $ 0.417 | 0.015 | 0.432 |
| 10. | **Cost Allocation and Indirect Costs** | | | | |
| | 10.1 | All Services: Cost Allocation and Indirect Costs | $ 0.384 | 0.011 | 0.395 |
| 11. | **Other** | | | | |
| | 11.1 | Claims (included in 10.1 All Services: Cost Allocation and Indirect Costs) | $ 0.000 | 0.000 | 0.000 |
| | 11.2 | EHR/EMAR System (includes all associated costs) | $ 0.080 | 0.003 | 0.083 |
| | 11.3 | Data Conversion Costs (including paper records) | $ 0.003 | 0.000 | 0.003 |
| | 11.4 | In-State Administration | $ 0.000 | 0.000 | 0.000 |
| | 11.5 | Out-of-State Administration | $ 0.000 | 0.000 | 0.000 |
| | 11.6 | Profit | $ 0.288 | 0.007 | 0.295 |
| | | **TOTAL DAILY COST/INMATE \*** | $ 11.200 | 0.400 | 11.600 |

# Amendment 10 Attachment C

## Performance Measure

| # | |
|---|---|
| 1 | Each ASPC will maintain, at a minimum, one RN onsite 24/7, 7 days/week. |
| 2 | Each ASPC will maintain, at a minimum, one Medical Provider (not to include a dental) onsite during regular business hour and on - call at all other times. |
| 3 | Dental staffing will be maintained at current contract levels – 30 dentists. |
| 4 | Infirmary staffing will be maintained with a minimum staffing level of 2 RNs on duty in the infirmary at all times at Tucson & Florence infirmaries and a minimum of one RN on duty in the infirmary at all times at Perryville and Lewis infirmaries |
| 5 | Medical Records will be accurate, chronologically maintained, and scanned or filed in the patient' s chart within two business days, with all documents filed in their designated location. |
| 6 | Provider orders will be noted daily with time, date, and name of person taking the orders off. |
| 7 | Medical record entries will be legible, and complete with time, name stamp and signature present. |
| 8 | Nursing protocols/NETS will be utilized by nurses for sick call. |
| 9 | SOAPE format will be utilized in the medical record for encounters. |
| 10 | Each patient's medical record will include an up to-date Master Problem list. |
| 11 | Newly prescribed provider-ordered formulary medications will be provided to the inmate within 2 business days after prescribed, or on the same day, if prescribed STAT. |
| 12 | Medical record will contain documentation of refusals or "no shows." |
| 13 | Chronic care and psychotropic medication renewals will be completed in a manner such that there is no interruption or lapse in medication. |
| 14 | Any refill for a chronic care or psychotropic medication that is requested by a prisoner between three and seven business days prior to the prescription running out will be completed in a manner such that there is no interruption or lapse in medication. |
| 15 | Inmates who refuse prescribed medication (or no show) will be counseled by a QHCP after three consecutive refusals. |
| 16 | Perpetual inventory medication logs will be maintained on each yard. |
| 17 | The Medication Administration Record (MAR) will reflect dose, frequency, start date and nurse's signature. |
| 18 | Daily delivery manifests will be signed off on the Inmate's individual MAR. |
| 19 | Perpetual inventory medications will be signed off on each yard/complex and will be reviewed and initiated daily by an LPN or RN. |
| 20 | Medical AIMs entries are accurately completed within 3 business days from the entry in the medical record. |
| 21 | Inmates who are paroled or released from ASPCs will receive a 30-day supply of all medications currently prescribed by the ADC contracted vendor. |
| 22 | Non-formulary requests are reviewed and approved, disapproved, or designated for an alternate treatment plan (ATP) within two business days of the prescriber's order. |
| 23 | Automated External Defibrillators (AEDs) will be maintained and readily accessible to Health Care Staff. |
| 24 | Emergency medical response bags are checked daily, inventoried monthly, and contain all required essential items. |
| 25 | A first responder trained in Basic Life Support responds and adequately provides care within three minutes of an emergency. |
| 26 | Responses to health care grievances will be completed within 15 working days of receipt (by health care staff) of the grievance. |
| 27 | Each ASPC facility will conduct monthly CQI meetings, in accordance with NCCHC Standard P-A-06 |
| 28 | Every medical provider will undergo peer reviews annually with reviews and recommended actions documented. |
| 29 | Each ASPC facility Director of Nursing or designee will conduct and document annual clinical performance reviews of nursing staff as recommended by NCCHC standard P-C-02. |
| 30 | The initial mortality review of an inmate's death will be completed within 10 working days of death. |
| 31 | Mortality reviews will identify and refer deficiencies to appropriate managers and supervisors, including CQI committee, and corrective action will be taken. |
| 32 | A final independent clinical mortality review be completed by the Health Services Contract Monitoring Bureau for all mortalities within 10 business days of receipt of the medical examiner's findings. |
| 33 | All inmates will receive a health screening by an LPN or RN within one day of arrival at the intake facility. |
| 34 | A physical examination including a history will be completed by a Medical Provider (not a dentist) by the end of the second full day of the intake inmate's arrival at the intake facility. |
| 35 | All inmate medications (KOP and DOT) will be transferred with and provided to the inmate or otherwise provided at the receiving prison without interruption. |

36 | A LPN or RN will screen HNRs within 24 hours of receipt.

37 | Sick call inmates will be seen by an RN within 24 hours after an HNR is received (or immediately if identified with an emergent need, or on the same day if identified as having an urgent need).

38 | Vital signs, to include weight, will be checked and documented in the medical record each time an inmate is seen during sick call.

39 | Routine provider referrals will be addressed by a Medical Provider and referrals requiring a scheduled provider appointment will be seen within fourteen calendar days of the referral.

40 | Urgent provider referrals are seen by a Medical Provider within 24 hours of the referral.

41 | Emergent provider referrals are seen immediately by a Medical Provider.

42 | A follow-up sick call encounter will occur within the time frame specified by the Medical or Mental Health Provider.

43 | Inmates returning from an inpatient hospital stay or ER transport will be returned to the medical unit and be assessed by a RN or LPN on duty there.

44 | Inmates returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital shall have the hospital's treatment recommendations reviewed and acted upon by a medical provider within 24 hours.

45 | On-site diagnostic services will be provided the same day if ordered STAT or urgent, or within 14 calendar days if routine

46 | A Medical Provider will review the diagnostic report, including pathology reports, and act upon reports with abnormal values within five calendar days of receiving the report at the prison.

47 | A Medical Provider will communicate the results of the diagnostic study to the inmate upon request and within seven calendar days of the date of the request

48 | Documentation, including the reason(s) for the denial, of Utilization Management denials of requests for specialty services will be sent to the requesting Provider in writing within fourteen calendar days, and placed in the patient's medical record.

49 | Patients for whom a provider's request for specialty services is denied are told of the denial by a Medical Provider at the patient's next scheduled appointment, no more than 30 days after the denial, and the Provider documents in the patient's medical record the Provider's follow-up to the denial.

50 | Urgent specialty consultations and urgent specialty diagnostic services will be scheduled and completed within 30 calendar days of the consultation being requested by the provider.

51 | Routine specialty consultations will be scheduled and completed within 60 calendar days of the consultation being requested by the provider.

52 | Specialty consultation reports will be reviewed and acted on by a Provider within seven calendar days of receiving the report.

53 | Treatment plans will be developed and documented in the medical record by a provider within 30 calendar days of identification that the inmate has a chronic disease.

54 | Chronic disease inmates will be seen by the provider as specified in the inmate's treatment plan, no less than every 180 days unless the provider documents a reason why a longer time frame can be in place.

55 | Disease management guidelines will be implemented for chronic diseases.

56 | Inmates with a chronic disease will be provided education about their condition/disease which will be documented in the medical record.

57 | A Medical Provider will order prenatal vitamins and diet for a pregnant inmate at the inmate's initial intake physical examination.

58 | Results of an inmate's prenatal screening tests will be documented in the medical record.

59 | Inmates will be screened for TB on an annual basis

60 | All female inmates ages 21 to 65 will be offered a Pap smear at the inmate's initial intake physical examination, and every 36 months thereafter unless more frequent screening is clinically recommended.

61 | All female inmates ages 21 to 65 will be offered a Pap smear every 36 months after initial intake, unless more frequent screening is clinically recommended

62 | All prisoners are screened upon intake.

63 | In an IPC, an initial health assessment will be completed by a Registered Nurse on the date of admission.

64 | In an IPC, a Medical Provider evaluation and plan will occur within the next business day after admission.

65 | In an IPC, a written history and physical examination will be completed by a medical provider within 72 hours of admission.

66 | In an IPC, a Medical Provider encounters will occur at a minimum every 72 hours.

67 | In an IPC, Registered nurses will conduct and document an assessment at least once every shift.  Graveyard shift assessments can be welfare checks.

68 | In an IPC, Inmate health records will include admission orders and documentation of care and treatment given.

69 | In an IPC, nursing care plans will be reviewed weekly documented with a date and signature.

70 | All IPC patients have properly working call buttons, and if not, health care staff perform and document 30-minute patient welfare checks.

71 | Inmates with diagnosed and documented diseases or conditions that necessitate a special diet will be provided the diet, if clinically indicated.  When prescribing the special diet, the provider will include the type of diet, duration for which it is to be provided, and any special instructions

72 | Inmates who refuse prescribed diets for more than 3 consecutive days will receive follow-up nutritional counseling by a QHCP.

73 All MH-3 minor prisoners shall be seen by a licensed mental health clinician a minimum of every 30 days.

74 All female prisoners shall be seen by a licensed mental health clinician within five working days of return from a hospital post-partum.

75 A mental health assessment of a prisoner during initial intake shall be completed by mental health staff by the end of the second full day after the prisoner's arrival into ADC.

76 If the initial mental health assessment of a prisoner during initial intake is not performed by licensed mental health staff, the prisoner shall be seen by a mental health clinician within fourteen days of his or her arrival into ADC.

77 Mental health treatment plans shall be updated a minimum of every 90 days for MH-3A, MH-4, and MH-5 prisoners, and a minimum of every 12 months for all other MH-3 prisoners.

78 All mental health treatment plan updates shall be done after a face-to-face clinical encounter between the prisoner and the mental health provider or mental health clinician.

79 If a prisoner's mental health treatment plan includes psychotropic medication, the mental health provider shall indicate in each progress note that he or she has reviewed the treatment plan.

80 MH-3A prisoners shall be seen a minimum of every 30 days by a mental health clinician.

81 MH-3A prisoners who are prescribed psychotropic medications shall be seen a minimum of every 90 days by a mental health provider.

82 MH-3B prisoners shall be seen a minimum of every 90 days by a mental health clinician.

83 MH-3B prisoners who are prescribed psychotropic medications shall be seen a minimum of every 180 days by a mental health provider.  MH-3B prisoners who are prescribed psychotropic medications for psychotic disorder, bipolar disorder, or major depression shall be seen by a mental health provider a minimum of every 90 days.

84 MH-3C prisoners shall be seen a minimum of every 180 days by a mental health provider.

85 MH-3D prisoners shall be seen by a mental health provider within 30 days of discontinuing medications.

86 MH-3D prisoners shall be seen a minimum of every 90 days by a mental health clinician for a minimum of six months after discontinuing medication

87 MH-4 prisoners shall be seen by a mental health clinician for a 1:1 session a minimum of every 30 days.

88 MH-4 prisoners who are prescribed psychotropic medications shall be seen by a mental health provider a minimum of every 90 days.

89 MH-5 prisoners shall be seen by a mental health clinician for a 1:1 session a minimum of every seven days.

90 MH-5 prisoners who are prescribed psychotropic medications shall be seen by a mental health provider a minimum of every 30 days.

91 MH-5 prisoners who are actively psychotic or actively suicidal shall be seen by a mental health clinician or mental health provider daily.

92 MH-3 and above prisoners who are housed in maximum custody shall be seen by a mental health clinician for a 1:1 or group session a minimum of every 30 days.

93 MH-3 and above prisoners who are housed in maximum custody.

94 All prisoners on a suicide or mental health watch shall be seen daily by a licensed mental health clinician or, on weekends or holidays, by a registered nurse.

95 Only licensed mental health staff may remove a prisoner from a suicide or mental health watch.  Any prisoner discontinued from a suicide or mental health watch shall be seen by a mental health provider, mental health clinician, or psychiatric registered nurse between 21 and 72 hours after discontinuation, between 21 and 72 days after discontinuation of the watch.

96 A reentry/discharge plan shall be established no later than 30 days prior to release from ADC for all prisoners who are MH-3 or above.

97 A mental health provider treating a prisoner via telepsychiatry shall be provided, in advance of the telepsychiatry session, the prisoner's intake assessment, most recent mental health treatment plan, laboratory reports (if applicable), physician orders, problem list, and progress notes from the prisoner's two most recent contacts with a mental health provider.

98 Mental health HNRs shall be responded to within the timeframes set forth in the Mental Health Technical Manual (MHTM) (rev. 4/18/14), Chapter 2, Section 5.0.

99 Peer reviews shall be conducted as set forth in the MHTM (rev. 4/18/14), Chapter 1, Section 3.0.

100 Prisoners on the routine dental care list will not be removed from the list if they are seen for urgent care or pain appointments that do not resolve their routine care issues or needs.

101 Dental assistants will take inmate histories and vital signs and dental radiographs (as ordered) by the Dentist.

102 Routine dental care wait times will be no more than 90 days from the date the HNR was received.

103 Urgent care wait times, as determined by the contracted vendor, shall be no more than 72 hours from the date the HNR was received.

104 All maximum custody prisoners at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, and Perryville-Lumley Special Management Area (Yard 30) who are eligible for participation in D1 326 are offered a minimum of 7.5 hours out-of-cell time per week.  Those at Step II are offered a minimum of 8.5 hours out-of-cell time per week, and those at Step III are offered a minimum of 9.5 hours out-of-cell time per week.

105 All maximum custody prisoners at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, and Perryville-Lumley Special Management Area (Yard 30) who are eligible for participation in D1 326 are offered at least one hour of out-of-cell group programming a week at Step II and Step III.

106 All out-of-cell time specified in Outcome Measures 1, 2, 8 that is limited or cancelled is properly documented and justified in accordance with the terms of the Stipulation as set forth in ¶26 of the Stipulation.

107 All maximum custody prisoners receive meals with the same caloric and nutritional content as meals served to other ADC prisoners.

108 All maximum custody prisoners at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, and Perryville-Lumley Special Management Area (Yard 30) are offered a minimum of 6 hours of out-of-cell exercise time a week.

| 109 | All maximum custody prisoners at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, and Perryville-Lumley Special Management Area (Yard 30), who are eligible for participation in DI 326 are offered out-of-cell time, incentives, programs and property consistent with their Step Level and housing assignment under the DI 326 policy. |
| 110 | No prisoners with a mental health classification of MH3 or higher are housed in Florence Central-CB 5 or CB-7 unless the cell fronts are substantially modified to increase visibility. |
| 111 | In addition to the general privileges and incentives afforded to prisoners under DI 326, all SMI prisoners in maximum custody receive: |
| 112 | All use of force incidents involving maximum custody prisoners classified as SMI, and in the following housing areas: Florence-CB-1 and CB-4; Florence-Kasson (Wings 1 and 2); Eyman-SMU I (BMU), Perryville-Lumley SMA, and Phoenix (Baker, Flamenco, and MTU), conform to the policies for use of force set forth in ¶ 27 (a)-(e) of the Stipulation. |
| 113 | All prisoners will be offered an annual influenza vaccination. |
| 114 | All prisoners with chronic diseases will be offered the required immunizations as established by the Centers for Disease Control |
| 115 | All prisoners ages 50 to 75 will be offered annual colorectal cancer screening. |
| 116 | All female prisoners age 50 and older will be offered a baseline mammogram screening at age 50, then every 24 months thereafter unless more frequent screening is clinically indicated. |
| 117 | Defendants or their contracted vendor(s) will implement a training program to train dental assistants about how to triage IINRs into routine and urgent care lines and to train dentists to evaluate the accuracy and skill of dental assistants under their supervision. |
| 118 | For prisoners who are not fluent in English, language interpretation for healthcare encounters shall be provided by a qualified health care practitioner who is proficient in the prisoner's language, or by a language line interpretation service. |
| 119 | If a prisoner who is taking psychotropic medications suffers a heat intolerance reaction, all reasonably available steps will be taken to prevent heat injury or illness. If all other steps have failed to abate the heat intolerance reaction, the prisoner will be transferred to a housing area where the cell temperature does not exceed 85 degrees Fahrenheit. |
| 120 | Psychological autopsies shall be provided to the monitoring bureau within thirty (30) days of the prisoner's death and shall be finalized by the monitoring bureau within fourteen (14) days of receipt. When a toxicology report is required, the psychological autopsy shall be provided to the monitoring bureau within thirty (30) days of receipt of the medical examiner's report. Psychological autopsies and mortality reviews shall identify and refer deficiencies to appropriate managers and supervisors including the CQI committee. |
| 121 | Defendants shall maintain restrictions on the use of pepper spray and other chemical agents on any maximum custody prisoner classified as SMI and in the following housing areas: Florence-c-CB-1 and CB-4; Florence-Kasson (Wings 1 and 2); Eyman-SMU-I (BMU), Perryville-Lumley SMA, and Phoenix (Baker, Flamenco, and MTU). Chemical agents shall be used only in case of imminent threat. |