Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorney General
15 South 15th Avenue
Phoenix, Arizona 85007
Telephone: (602) 542-1645
Fax: (602) 542-3393
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Hesman, Bar No. 028874
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
Timothy M. Ray, Bar No. 029191
Richard M. Valenti, Bar No. 031533
Jamie D. Guzman, Bar No. 022095
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
khanger@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DKD<br><br>**DEFENDANTS' STATEMENT ON PERFORMANCE MEASURE 86 METHODOLOGY** |

1  At the February 7, 2018 Status Hearing, Plaintiffs lamented the very monitoring methodology for Performance Measure (PM) 86 that they petitioned the Court for and the Court ordered be implemented over Defendants' objection. Because this performance measure continues to remain above the compliance threshold, Plaintiffs now take the opposite position in an attempt to get the Court to reverse its Order.

As a result of Plaintiffs' inverted position, the Court granted the parties the opportunity to make yet another record on this PM's methodology. While Defendants provide their Statement below, they urge the Court to recognize that Plaintiffs' (yet another) about face on this PM highlights the inchoateness that plagues the monitoring process. Indeed, monitoring the Stipulation has become so unnecessarily complicated that it has overshadowed the Court's ability to see Defendants' progress and continued compliance with the Stipulation and has resulted in a monumental strain on resources, time, and effort. These resources are better spent looking forward to improving processes and methods of delivering healthcare not backward.

**I. DEFENDANTS ARE APPLYING THE COURTS' ORDERED METHODOLOGY FOR MEASURING PERFORMANCE MEASURE 86 COMPLIANCE**

**Background**

> **PM 86:** Are MH-3D prisoners seen a minimum of **every 90 days** by a mental health clinician for a minimum of six months after discontinuing medication?

PM 86 requires that the records used for measuring performance under PM 85 also be used as a starting point for evaluating compliance with PM 86. However, Plaintiffs have successfully argued two scenarios where a file that was used for PM 85 must be excluded from the sample for PM 86 and replaced with another file randomly drawn: (1) If the inmate has been in custody and/or the medication has been discontinued for less than 90 days or (2) if there has not been two contacts by a mental health clinician between which to measure the time elapsed. Plaintiffs argued, and the Court agreed, that under either set of facts, the file cannot be non-compliant and therefore is invalid and cannot be used to measure performance under PM 86.

**Plaintiffs' Reversed Position on PM 86 Methodology**

At the February 7, 2018 Status Hearing, two issues emerged from Plaintiffs' inverted position on measuring performance under this PM: (1) does the every X number of days' Order (Doc. 1673 at 4, 6) apply to PM 86 and (2) is there a two-contact requirement? Despite Plaintiffs' long-entrenched position on the methodology for all PMs requiring an action to occur over a time interval, they took the opposite position at the February 7, 2018 Status Hearing.

The "every X" methodology applies to PM 86 because Plaintiffs repeatedly lobbied for the Court's Order to apply to PM 86, and the plain language of the Order itself requires application.

At the insistence of the Plaintiffs, the Order (Doc. 2225) requires two contacts to measure compliance. The Defendants have repeatedly argued against the method of requiring there to be two contacts, but the Court adopted the Plaintiffs' Monitoring Guide language they proposed for the "every X" PMs. Specifically, the language clearly states that only non-compliant files will be used, but the compliant files will not be counted towards compliance.

Their proposed language for PM 86 states:

> If there is only one contact by a clinician, the record will be coded as noncompliant, unless that contact is no more than 90 days from both (1) the date the prisoner was admitted to ADC or the medications were discontinued, whichever is later, and (2) the last day of the monitored month. If both of these conditions are met, the record will be coded as "0" and **not counted** as either compliant or noncompliant.

[Doc. 2368-1 at 2]

Plaintiffs complained that the Monitors are improperly taking inmates who made the final sample of records reviewed for Performance Measure 85 out of the final sample of records used for Performance Measure 86. Defendants admit they <u>are</u> taking inmates out of the files utilized for PM 86, but <u>only if</u> the inmate's medications were discontinued in

the prior 90 days, or if the inmate has only received one compliant clinician contact and is not yet due for the second clinician contact. (It is important to note that, under this methodology, if there was only one contact, but the contact did not occur within the requisite 90 days from the discontinuation date, the record stays in and is counted as non-complaint. As the Defendants repeatedly argued, this methodology would artificially deflate the compliance scores because the compliant records would be excluded and only the non-compliant records would be included. "[B]ut I'm only looking at ones that are not in compliant and removing any that are compliant I'm only – I'm not giving you an actual compliance report anymore." [Doc. 2148, 06/14/17 Status Hr. at 55:24-56:2] This methodology is precisely the methodology Plaintiffs urged the Court to adopt, and which the Court adopted in its "every X number of days" Order.

More specifically, Plaintiffs' counsel, David Fathi, argued at the Status Hearing that Plaintiffs' proposed language for Performance Measure 86 (Doc. 2368-1, pages 35 and 36), does not "require that anyone who does not have two contacts is excluded from the sample. It doesn't say that at all." [02/07/2017 Hr. Tr. at 11:2-3] The Court noted, "[w]ell, I think that it's fair to say that Mr. Fathi never argued that the X number of days order would apply to 85 and 86. If he did, you can point that out to me someplace in the record." [Id. at 12:25-13:3] Defendants, therefore, direct the Court to the following record excerpts, which are replete with the exact position Plaintiffs now advocate against—that the "every X number of days" Order would and should apply to PM 86.

In Plaintiffs' Motion to Enforce the Stipulation (Doc. 1625 at 12-13), they argued:

> Performance Measures 73, 77, 80, 81, 82, 83, 84, **85, 86**, 87, 88, 90, and 92, all of which relate to mental health care, each require that a specified clinical event or encounter occur a minimum of "every 30 days," "every 60 days," "every 90 days," or "every 180 days." **This language self-evidently requires that the event or encounter in question occur repeatedly at the specified intervals.** See Webster's Third New International Dictionary Unabridged (1981) (defining "every" as "being each in a succession of intervals (~ few days)"); Macmillan Dictionary

3

> (http://www.macmillandictionary.com/us/dictionary/american/every (last visited July 5, 2016)) ("every" is "used for showing how often something happens or how far apart things are, especially when there is a regular time or distance between them").
>
> Accordingly, **assessing Defendants' compliance with these measures requires measuring the time *elapsed* between multiple occurrences of the event in question.** Ignoring the plain language of the Performance Measures, Defendants take the position that a requirement that an encounter occur "every 90 days" is satisfied if the encounter has occurred once within 90 days of the auditor's review. This position is frivolous; **a requirement that something occur "every 90 days" cannot, by definition, be satisfied by showing that it occurred once**. *See White v. Mitchell*, 759 P.2d 1327, 1330 (Ariz. Ct. App. 1988) (in assessing compliance with regulation requiring vehicle inspection "every 90 days," court examines time elapsed between inspections); *cf. Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014) (considering the burden imposed by a requirement to register with the police "every 90 days").

[Id. (emphasis added)]  And Plaintiffs proposed the following language in an order that accompanied that motion:

> Defendants shall monitor compliance with all mental health performance measures that require that an act occur "every X days,"1 by using the same methodology contained within their proposed monitoring guide for medical performance measures. [Kendrick Decl. Ex. 17 at 79-80] **Specifically, Defendants shall measure the time elapsed between occurrences of the act, and not only whether the act occurred in the previous X days.**

[Id. at 3 (emphasis added)]

In Plaintiffs' Brief Regarding Defendants' Noncompliance with the Court's Order (Doc. 1673), Plaintiffs argued:

> Performance Measures 73, 77, 80, 81, 82, 83, 84, **86,** 87, 88, 90, and 92, all of which relate to mental health care, each require that a specified clinical event or encounter occur a minimum of "every 30 days," "every 60 days," "every 90 days," or "every 180 days." As Plaintiffs explained in their enforcement motion, case law, dictionary definitions, and common sense are

4

> unanimous that this language requires that the act be performed *repeatedly* at the specified interval. **A requirement that something be done "every 90 days" requires measuring the time elapsed between two or more occurrences of the act; it cannot be satisfied by showing that the act has been performed one single time**. [*See* Doc. 1625 at 13-14; Doc. 1654 at 4]
>
> . . .
>
> In summary: to comply with the Stipulation and the Court's order, **Defendants must measure the interval between two or more occurrences of the required act**.

[Doc. 1717 at 2-4 (emphasis added)]

In Plaintiffs' Statement Regarding Evidentiary Hearings on Monitoring (Doc. 2046 at 39-40), Plaintiffs complained:

> This Court has ruled that, for Performance Measures requiring that an action occur at specified intervals,
>
>> **the monitor must look back two visits**. The oldest reviewed visit is the baseline and will be used to determine if the most recent visit was timely. If the most recent visit was timely, then the intervening months are compliant. If the most recent visit was untimely (measured by looking to the previous visit), then the intervening months are non-compliant.
>>
>> [Doc. 1833 at 1-2]

[Id. (emphasis added)]

At the June 14, 2017 Status Hearing, Mr. Fathi testified:

> Well, Your Honor, this is an issue that involves every measure that requires something be done periodically, so every X days. And **the Court said in its order that the defendants have to look back at the last two occurrences and measure the interval.** Were they -- was it done within 30 days or less or 90 days or less.

[Doc. 2148, 06/14/17 Status Hr. 47:24-48:4 (emphasis added)]

5

Mr. Fathi further testified:

> **We were talking about 80 and all the other performance measures that require that something be done every X days. And the Court's order was very clear saying that for those performance measures you have to look at the last two occurrences and the interval between. Here's what the defendants are doing. They are counting records as compliant without measuring that interval. They are counting records as compliant even when there's only one single contact in the person's entire record.**

[Id. at 49:3-11(emphasis added)]

Contrary to Plaintiffs' position now, the record abundantly demonstrates that Plaintiffs demanded (1) the every X number of days' Order apply to PM 86 and (2) two contacts are required to measure compliance with the measure unless there is only one contact and the file is non-compliant. While Defendants did not agree with the every X number of days' Order, they complied with the Court's Order and consistently applied the Order to all PMs identified by the Plaintiffs. In addition, the Defendants adamantly objected to the two-contact requirement as it required Defendants to include non-compliant one-contact files, but exclude compliant one-contact files, which clearly deflates the score. The Court, however, agreed with Plaintiffs' proffered application over Defendants' objection:

> In keeping with the plain language of the Stipulation, the Court concludes that an action that must occur every X days means that, in essence, a clock starts on the day an action occurs and that clock runs for X days. Before the end of that clock X days later, ***the action must occur again.***

[Doc. 1673 at 4 (emphasis added)]  And during the June 14, 2017 Status Hearing the Court questioned:

> How can you answer the question every 30 days when there's only been one contact.

[Doc. 2148, 06/14/17 Status Hr. 50:23-24]  As a result of these positions, in its August 14, 2017 Order, the Court observed:

6

> The Stipulation includes several performance measures that require an evaluation of whether a certain action has occurred "every X days." What this means and how to measure it has been a point of contention for a long time. It appears that the parties have narrowed their disputes to a few remaining issues, all of which are addressed below.
>
> . . .
>
> Moreover, the Court agrees that the CGAR documentation must include two dates: the first date that the required action took place and the second date that the required action took place. The elapsed time between these two dates determines compliance.

[Doc. 2225 at 1-2]

Thus, contrary to Mr. Fathi's assertion at the February 7, 2018 Status Hearing, Plaintiffs have **repeatedly** argued that to measure compliance with PM 86 and/or any other PM that requires an act within X amount of days, there must be two acts between which to measure the intervals.

Defendants monitor performance under PM 86 **exactly** as the Court ordered in its September 6, 2016 Order (Doc. 1673), and exactly as Plaintiffs requested it be monitored. Indeed, David Fathi acknowledged that Defendants incorporated the Court's Order into the Monitor Guide. "[I]n fact, the defendants correctly incorporated the Court's Order in their monitor guide. It says you look at the last two instances and measure the interval." (Doc. 214, 06/21/2017 Hearing Tr. 48:5-8)

It appears now, however, Plaintiffs are agreeing with the position Defendants had all along—two contacts should not be required to measure compliance for PMs with an "every X" requirement. Further, it is patently unfair to require Defendants to include non-compliant one-contact files, but exclude compliant one-contact files. Plaintiffs have completely reversed their position on the methodology to be used for PM 86. This does not, however, change the undeniable fact that Defendants' complied with the Court's Order.

/ / /

/ / /

/ / /

7

## II. AMORPHOUS METHODOLOGIES ARE COUNTERPRODUCTIVE TO THE END GOAL AND UNFAIR TO DEFENDANTS WHO ARE APPLYING COURT ORDERS

Ostensibly, Plaintiffs are dissatisfied with the results of the monitoring methodology they campaigned for and now attempt to slip out from under the Court's "every other X day" Order as it pertains to PM 86. The Court should not allow such vacillation. Moving the target midstream ironically diverts valuable resources away from the shared end goal of improving inmate healthcare. There was no appreciable difference in the scores resulting from the methodology change required when Plaintiffs first shifted gears on measuring this PM. (Doc. 2197 at 2-3) The resources expended looking back at past performance could have been invested in improving future performance and growth.

Notwithstanding the promise of futility and inequity, should the Court be inclined to revise its order on the methodology, Defendants should not be penalized for monitoring as ordered and be required to re-audit. Further, if the Court revises its "every X number of days' Order as applied to PM 86, the Order should be revised for all PMs that require an action every X days. Plaintiffs should not be able to pick and choose which PMs the Order applies to midstream and whenever it behooves them. Likewise, if the Court revises its Order requiring Defendants to count non-compliant one-contact files, but exclude compliant one-contact files, it should revise that requirement for all PMs that contain the same language.

DATED this 14th day of February 2018.

        STRUCK LOVE BOJANOWSKI & ACEDO, PLC

        By /s/Timothy J. Bojanowski
           Daniel P. Struck
           Rachel Love
           Timothy J. Bojanowski
           Nicholas D. Acedo
           Ashlee B. Hesman
           Jacob B. Lee
           Kevin R. Hanger
           Timothy M. Ray
           Richard M. Valenti
           Jamie D. Guzman
           3100 West Ray Road, Suite 300
           Chandler, Arizona  85226

           Arizona Attorney General Mark Brnovich
           Office of the Attorney General
           Michael E. Gottfried
           Lucy M. Rand
           Assistant Attorneys General
           15 South 15th Avenue
           Phoenix, Arizona 85007

        *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Dietrich: | adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Kirstin T. Eidenbach: | kirstin@eidenbachlaw.com |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Sarah Eve Kader: | skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org; rstarling@azdisabilitylaw.org |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Victoria Lopez: | vlopez@aclu.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Timothy J. Bojanowski