Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
       adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | No. CV 12-00601-PHX-DKD<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT ON PERFORMANCE MEASURE 86 METHODOLOGY (DOC. 2598)** |

LEGAL138663033.1

**INTRODUCTION**

Performance Measure (PM) 86 requires that "MH-3D prisoners shall be seen a minimum of every 90 days by a mental health clinician for a minimum of six months after discontinuing medication." [Doc. 1185-1 at 14] The agreed monitoring protocol for PM 86 provides that "[t]he Records reviewed for Performance Measure #85 will also be reviewed for compliance with this performance measure." [*Id.* at 32]

Defendants now contend that the only records that can be included in the sample for PM 86 are those showing that the patient was actually seen twice by a mental health clinician after discontinuing medication. [*See* 2/7/18 Tr. at 9:1-3 (record reviewed for PM 85 was excluded from sample for PM 86 "because there isn't two contacts after the [discontinuation] date")] Defendants' position is inconsistent with the Court's order, with Defendants' own Monitor Guide language, and with basic principles of sampling methodology, and should accordingly be rejected.

**I.   DEFENDANTS' PRACTICE IS INCONSISTENT WITH THE COURT'S ORDER AND WITH DEFENDANTS' OWN PROPOSED MONITOR GUIDE LANGUAGE.**

Defendants' statement cites a great many briefs, orders, and transcripts. What it conspicuously fails to cite is the Court's order of June 14, 2017, dealing specifically with the sampling methodology for PM 85 and 86:

> With respect to Performance Measures 85 and 86, there really wasn't a similar substantive objection that I could ferret out to the plaintiffs' proposed language. And so I would adopt the plaintiffs' language. And that is, with 85, that the monitor selects a random sample of 10 records from all MH-3D prisoners at a given unit. If any of them discontinued medications less than 30 days previously, that record is excluded from the sample and another record is randomly drawn. See Document 2048, Paragraph 12.
>
> Once these -- once there are 10 records of MH-3D prisoners that have discontinued medications more than 30 days ago, those records are assessed to determine whether the patient was seen within 30 days of discontinuing medications.
>
> And then with respect to Performance Measure 86, the final sample of 10 records used for Performance Measure 85 is the starting point for evaluating compliance with Performance Measure 86. If any of these prisoners discontinued medications less than 90 days previously, that record is excluded from the sample and another

LEGAL138663033.1

> record is randomly drawn.  Once there are 10 records of MH-3D prisoners who have discontinued medications more than 90 days ago, those records are assessed to determine whether the patient was seen within 90 days of discontinuing medications.

[6/14/17 Tr. at 112:21-113:18; *see also* Doc. 2160 at 4]  This order—the Court's most recent order regarding PM 85 and 86—does not permit Defendants to exclude a record from the PM 86 sample on the ground that the patient has not had two clinician contacts after discontinuing medications.  Rather, it provides that all records reviewed for PM 85 shall be included in the sample for PM 86 with a single exception:  "If [the patient] discontinued medications less than 90 days previously, that record is excluded from the sample and another record is randomly drawn."  [*Id.*]  Because Defendants do not acknowledge the existence of this order, they provide no explanation for their failure to comply with it in the eight months since it was issued.

Even more tellingly, Defendants' own proposed Monitor Guide language for PM 86 nowhere provides for the exclusion of records on this ground.  Under Defendants' language, the *only* ground for excluding from the sample for PM 86 a record that was reviewed for PM 85 is if the patient "has been in ADC custody, or had their medications discontinued, for less than 90 days."  [Doc. 2591-1 at 7-8]  Defendants similarly provide no explanation for their failure to comply with their own proposed Monitor Guide language.

**II.     DEFENDANTS' PRACTICE IS INCONSISTENT WITH BASIC PRINCIPLES OF SAMPLING METHODOLOGY.**

PM 86 requires that "MH-3D prisoners shall be seen a minimum of every 90 days by a mental health clinician for a minimum of six months after discontinuing medication."  [Doc. 1185-1 at 14]  In other words, in the six month period following discontinuing medications, the patient must be seen twice, at intervals not exceeding 90 days.

By including in the sample for PM 86 only cases in which the patient was *actually seen* twice, Defendants systematically exclude noncompliant records and thus falsely inflate their compliance figures.  Imagine the following two cases: (1) the patient is not

1  seen at all in the six months after discontinuing medication, and (2) the patient is seen 120
2  days after discontinuing medication, and that is the only clinician contact that occurs in
3  the six months following discontinuation.  As Defendants' own Monitor Guide language
4  for PM 86 acknowledges, both of these cases must be counted as noncompliant:

> If there are no contacts by a clinician, the record will be coded as noncompliant. If there is only one contact by a clinician, the record will be coded as noncompliant, unless that contact is no more than 90 days from both (1) the date the prisoner was admitted to ADC or the medications were discontinued, whichever is later, and (2) the last day of the monitored month.

[Doc. 2591-1 at 7-8]  However, Defendants' "two-contact" requirement excludes both of these noncompliant records from the sample for PM 86, thus inflating compliance figures.[1]

As explained by Professor Craig Haney, "[s]uch a sampling methodology is invalid and will artificially inflate the compliance scores for this Performance Measure." [Declaration of Craig Haney, Ph.D., J.D. ("Haney Decl."), filed herewith, ¶ 5]  Professor Haney continues:

> It is a fundamental principle of sampling methodology that the occurrence or nonoccurrence of the variable that is ultimately to be measured (here, contacts with a mental health clinician) cannot be taken into account in deciding whether a particular case is included in the sample.  Such a methodology would be entirely circular and would render meaningless any conclusions drawn from the sample. In this instance, limiting the sample for PM 86 to cases in which two contacts had actually occurred would exclude from the sample all noncompliant cases in which no contacts or only one contact had occurred.

[*Id.* ¶ 6]

---

[1] Defendants now claim that "if there was only one contact, but the contact did not occur within the requisite 90 days from the discontinuation date, the record stays in and is counted as non-complaint [sic]." [Doc. 2598 at 4]  This is untrue. [*See* Doc. 2590 at 4-5 (patient discontinued medications on 2/23/17 and was not seen by a clinician within 90 days; her record was excluded from the sample for PM 86)]

### III. PLAINTIFFS HAVE NEVER ARGUED THAT THE SAMPLE FOR PM 86 SHOULD BE LIMITED TO CASES IN WHICH TWO CONTACTS HAVE OCCURRED SINCE THE PATIENT DISCONTINUED MEDICATIONS.

Defendants claim that Plaintiffs have previously taken the position that the sample for PM 86 should be limited to cases in which two contacts have occurred since the patient discontinued medications. [*See* 2/7/18 Tr. at 17:18-21] This is false.

It is and has always been Plaintiffs' position that only a record in which the patient has had two contacts since discontinuing medication can be *counted as compliant* with PM 86. This follows ineluctably from the plain language of the Performance Measure, which requires contacts "a minimum of every 90 days" for "a minimum of six months."[2] But that is entirely different than saying that only records in which two contacts have actually occurred can be *included in the sample*. As explained above, such a sampling methodology systematically and improperly excludes noncompliant cases, and Plaintiffs have never endorsed it.

### IV. THE COURT SHOULD APPOINT AN INDEPENDENT EXPERT TO SUPERVISE DEFENDANTS' MONITORING.

This is but the latest example of Defendants' repeated failure to understand basic principles of sampling methodology and their persistent inability or unwillingness to monitor their compliance in accordance with the Stipulation and the Court's orders. [*See, e.g.*, Doc. 1644 at 8 (Defendants counted cellfront contacts as satisfying the requirement that a patient be "seen," despite the Stipulation's definition of "seen" as "an encounter that takes place in a confidential setting outside the prisoner's cell"); Doc. 2459-1 at 6-7 (Defendants counted records in which more than one year had elapsed between contacts as compliant with requirement that contacts occur "a minimum of every 12 months"); Doc. 2160 at 3 (Defendants included in the samples for PM 85 and 86 records that could not possibly be found noncompliant)] Accordingly, the Court should exercise its

---

[2] Thus, under Plaintiffs' proposed Monitor Guide language for PM 86, records in which there have been no contacts are counted as noncompliant, and records in which there has been only one contact are either noncompliant, or are counted as neither compliant nor noncompliant. [*See* Doc. 2368-1 at 36]

1  authority pursuant to Fed. R. Evid. 706 and appoint an independent expert to supervise
2  Defendants' monitoring to ensure that the 34,000 members of the plaintiff class receive
3  the essential health care services to which they are entitled under the Stipulation.

## CONCLUSION

The Court should order Defendants to comply immediately with its June 14, 2017 order regarding sampling methodology for PM 86 (*see* Doc. 2160 at 4), and should adopt Plaintiffs' proposed Monitor Guide language for PM 86 (*see* Doc. 2368-1 at 35-36). In addition, the Court should appoint an independent expert pursuant to Fed. R. Evid. 706 to supervise Defendants' monitoring.

Dated: February 21, 2018

**ACLU NATIONAL PRISON PROJECT**

By: s/ David C. Fathi
David C. Fathi (Wash. 24893)\*
Amy Fettig (D.C. 484883)\*\*
Victoria Lopez (Ill. 6275388)\*
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:   dfathi@aclu.org
         afettig@aclu.org
         vlopez@aclu.org

\*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
\*\*Admitted *pro hac vice*

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:   kbrody@acluaz.org

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:      dspecter@prisonlaw.com
            ahardy@prisonlaw.com
            snorman@prisonlaw.com
            ckendrick@prisonlaw.com
            rlomio@prisonlaw.com

*Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
 **PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:      dbarr@perkinscoie.com
            agerlicher@perkinscoie.com
            jhgray@perkinscoie.com

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, P.L.L.C.**
P. O. Box 91398
Tucson, Arizona 85752
Telephone:  (520) 477-1475
Email:     kirstin@eidenbachlaw.com

Caroline Mitchell (Cal. 143124)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:     cnmitchell@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:     jlwilkes@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By:  s/ Asim Dietrich
Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email:  skader@azdisabilitylaw.org
adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
rdalyrooney@azdisabilitylaw.org
jrico@azdisabilitylaw.org
jross@azdisabilitylaw.org
mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2018, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Kevin R. Hanger
Timothy M. Ray
Richard M. Valenti
Jamie D. Guzman
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
khanger@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com

*Attorneys for Defendants*

                                                            s/ D. Freouf