Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED BELOW]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
       adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED BELOW]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-DKD **DECLARATION OF CORENE KENDRICK** |
| Plaintiffs, | **[REDACTED]** |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

LEGAL138715229.1

I, Corene Kendrick, hereby declare:

1.     I am an attorney licensed to practice before the courts of the State of California, and admitted to this Court *pro hac vice*.  I am a staff attorney at the Prison Law Office, and an attorney of record to the plaintiff class in this litigation.  If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge.

2.     Among the documents included in Defendants' production for the February 27, 2018 evidentiary hearing were various spreadsheets and logs that tracked some institutions' compliance with the performance measures in the Court's Order to Show Cause (Doc. 2373).

3.     First, there was a daily tracking report, a one or two page summary form that gave a snapshot of the institution's compliance with eleven measures for that day.  Within the document production were daily tracking reports for four institutions:  Eyman, Florence, Lewis, and Tucson.  While the four institutions were not all subject to the OSC for all eleven performance measure, Defendants tracked their progress in this way.

4.     Second, Defendants produced PDF versions of spreadsheets that appeared to list all instances of noncompliance (or tracked cases that were approaching deadlines) on a given day.  These performance measure logs appeared to be a mixture of Pentaho reports and Excel spreadsheets.

5.     As detailed below, Plaintiffs' counsel did not receive the daily tracking reports or performance measure logs for every day of December 2017.  We also did not find daily tracking reports or performance measure logs for Perryville or Phoenix prisons.  The Court's order included Perryville for PMs 46 and 47 and PM 47 at Phoenix.  [Doc. 2373 at 3]

6.     Defendants' February 5, 2018 filing (Doc. 2576-1) did not provide the total number of instances of noncompliance.  Two members of Plaintiffs' counsel's team (myself and Jennifer Onka, a paralegal at the ACLU National Prison Project) separately counted a total of 667 instances of noncompliance listed in that filing.  Defendants'

February 14, 2018 filing (Doc. 2595-1) likewise did not provide the total number of instances of noncompliance with PM 54 at Eyman, but I counted the filing two times and arrived at 405 instances of noncompliance. This would mean that Defendants reported to the Court and Plaintiffs that there were 1,072 separate instances of noncompliance with the relevant measures and institutions for the month of December 2017.

7.     Plaintiffs' counsel compared Defendants' filings purporting to show all instances of noncompliance with the Court's order in December 2017 (Docs. 2576-1 and 2595-1) against all of the daily tracking reports and performance measure logs that Plaintiffs' counsel were able to identify in Defendants' production. I personally compared all but two performance measure/institution combinations. I closely supervised an experienced Prison Law Office investigator/monitor and litigation assistant who are assigned to *Parsons v. Ryan* who analyzed the other two measure/institution combinations, and reviewed and corrected any mistakes I identified in their reviews. In my comparison between Defendants' two filings and the daily trackers/logs, I identified **420 additional instances of noncompliance at these four prisons that should have been included in Defendants' filings** in response to the Court's Order to Show Cause.

8.     As detailed below at paragraphs 10-17, there were **188 additional instances of noncompliance at ASPC-Eyman** that were not included in Defendants' filings with the Court, but that were reported in their internal daily tracking reports. As detailed below at paragraphs 18-25, there were **42 additional instances of noncompliance at ASPC-Florence** that were not included in Defendants' filings with the Court, but that were reported in their internal daily tracking reports. As detailed below at paragraphs 26-32, there were **179 additional instances of noncompliance at ASPC-Lewis** that were not included in Defendants' filings with the Court, but that were reported in their internal daily tracking reports. As detailed below at paragraphs 33-38, there were **11 additional instances of noncompliance at ASPC-Tucson** that were not included in Defendants' filings with the Court, but that were reported in their internal daily tracking reports.

9.     In many cases, I also reviewed the individual class members' medical records to confirm the accuracy of the internal tracking reports, and to confirm that they should have been listed in Defendants' Court filing, and to the extent practicable, printed out documentation from their medical records confirming the substantial noncompliance. In the course of reviewing the medical records, I observed several curious entries from medical records of class members at Eyman, Florence, and Tucson prisons, including diagnostic or specialty reports that were listed in the performance measure logs as outside required timeframes, but then these reports have provider entries that state that the report was reviewed **prior to** the date and time the report is documented to have been received. These entries are detailed further below.

**ASPC-Eyman**

10.     The Court's Order to Show Cause included ASPC-Eyman for Performance Measures 11, 35, 44, 46, 47, 51, and 54. [Doc. 2373 at 3-4] The document production we received included daily tracking reports and some performance measure logs for ASPC-Eyman dated December 5, 11, 13, 15, 18, and 20, 2017. Attached hereto and **filed under seal as Exhibit 1** are the daily tracking reports for those six dates, which Defendants Bates stamped as ADCM1138993, 1138871, 1229388, 1138730, 1229121, and 1228986, respectively. In total, I identified at least **188 additional instances of noncompliance at ASPC-Eyman** that were not included in Defendants' filings with the Court but were documented in Defendants' reports.

11.     Performance Measure 11 requires that "Newly prescribed provider-ordered formulary medications will be provided to the inmate within 2 business days after prescribed, or on the same day, if prescribed STAT." [Doc. 1185-1 at 8] Defendants' filing states that there were 29 instances of noncompliance with this measure at Eyman in December. [Doc. 2576-1 at 4] Of the six daily trackers that Plaintiffs' counsel identified, three of them referred to noncompliance. The December 11, 2017 daily tracker states that there were four instances on noncompliance. [Ex. 1 at ADC1138871] The December 13,

2017 daily tracker states that there were 23 instances of noncompliance. [*Id.* at ADCM1138867]   The December 15, 2017 daily tracker and performance measure log state that there were two (2) instances of noncompliance.   [*Id.* at ADCM1138730] Plaintiffs could not locate performance measure logs listing the names of the individuals to compare to Defendants' filing.

12.   Performance Measure 35 requires that "All inmate medications (KOP and DOT) will be transferred with and provided to the inmate or otherwise provided at the receiving prison without interruption." [Doc. 1185-1 at 10]  Defendants' filing states that there were 26 instances of noncompliance with this measure at Eyman in December. [Doc. 2576-1 at 8]   None of the six daily trackers that Plaintiffs' counsel identified referred to any instances of noncompliance, and therefore there was no documents at hand to compare to Defendants' filing.

13.   Performance Measure 44 requires that "Inmates returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital shall have the hospital's treatment recommendations reviewed and acted upon by a medical provider within 24 hours." [Doc. 1185-1 at 11]  Defendants' filing states that there were nine (9) instances of noncompliance with this measure at Eyman in December.  [Doc. 2576-1 at 15]  None of the six daily trackers that Plaintiffs' counsel identified referred to any instances of noncompliance, and therefore there was no documents at hand to compare to Defendants' filing.

14.   Performance Measure 46 requires that "A Medical Provider will review the diagnostic report, including pathology reports, and act upon reports with abnormal values within five calendar days of receiving the report at the prison."  [Doc. 1185-1 at 11] Defendants' filing states that there were 145 instances of noncompliance with this measure at Eyman in December.  [Doc. 2576-1 at 17-20]  However, Defendants' documents revealed an additional **25 instances of noncompliance not listed** in Defendants' filing with the Court.

a. The December 5, 2017 tracker states that 14 reports are noncompliant. [Ex. 1 at ADCM1138993]   Plaintiffs' counsel could not locate a performance measure log showing the names of the class members associated with the 14 instances of noncompliance to compare to Defendants' filing.

b. The December 11, 2017 daily tracker states that there are four (4) noncompliant labs.  [Ex. 1 at ADCM1138871]  The attached roster of compliance is dated December 7, 2017, however.   It identified four reports that were noncompliant as of 12/7/17, and these class members are all listed in the court filing.  [*See* ADCM1138980-91, attached hereto and **filed under seal as Ex. 2**]  Given the time difference between the performance measure log and the daily tracker, I checked the records of people whose deadline for review would have passed between December 7 and 11, 2017 (in other words, results received December 4 and earlier.  There were **two (2) instances of noncompliance not listed** in the Court filing:

    i. ████████████, cocci test received on 12/4/17, and reviewed 12/11/17.  [*See* Ex. 2 at ADCM1138981, 1138987; *see also* **Ex. 3 filed under seal** (pages from medical record)]

    ii. ████████████, two tests: Urinalysis and diagnostic panel 1, received 12/4/17.  [*See* Ex. 2 at ADCM1138982, 1138988] Curiously, the medical record showed an entry by the provider stating that the report was reviewed on 12/3/17, **before the labs are listed as being received**.  [*See* **Ex. 4 filed under seal** at 3-4, 5-6 (pages from medical record)]   He is only listed once in the court filing, when there were two noncompliant reports.

c. The December 13, 2017 daily tracker lists nine (9) noncompliant diagnostic lab reports.  [Ex. 1 at ADCM1229388]   The performance measure log lists nine (9) instances of noncompliance, including one listed above.  [*See* ADCM1229391-402, attached hereto and **filed under seal as Ex. 5**]  The following **two (2) instances of noncompliance are not listed** in Defendants' filing with the Court.

    i. ████████████████, two tests: Urinalysis and diagnostic panel 1, received 12/4/17.  [*See* Ex. 5 at ADCM1229394, 1229400]  Curiously, the medical record showed an entry by the provider stating that the two labs were reviewed on 12/3/17, **before the labs are listed as being received**.  [*See* **Ex. 6 filed under seal** at 3-4, 6-7 (pages from medical record)]  He is only listed once in the court filing, when there were two instances of noncompliance.

    ii. ██████████, INR test received 12/7/17. [*See* Ex. 5 at ADCM1229392, 1229398]  His medical record shows that the report was not reviewed until 12/14/17.  [*See* **Ex. 7 filed under seal** (pages from medical record)]

d. The December 15, 2017 daily tracking report lists six (6) instances of noncompliance.  [Ex. 1 at ADCM1138730]  The performance measure roster (ADCM1138731-38, 1138745-52) is attached hereto **under seal as Exhibit 8** and similarly lists six (6) instances of noncompliance.  [Ex. 8 at ADCM1138731, 1138733-35]  All six are listed in Defendants' filing.

e. The December 18, 2017 performance measure roster for PM 46 is attached hereto **under seal as Exhibit 9** (ADCM1229121-44).  It lists 14 instances of noncompliance, several of which were listed in previous

reports. Of the new incidents, the following **five (5) instances of noncompliance were not listed** in Defendants' filing:

      i.   █████████, lipid panel, received 12/12/17.  [Ex. 9 at ADCM1229123, 1229137]  Curiously, the medical record showed an entry by the provider stating that the report was reviewed 12/8/17, **before the lab is listed as being received**.  [*See* **Ex. 10 filed under seal** at 2-3 (pages from medical record)]

     ii.   █████████, valproic acid, received 12/12/17.  [Ex. 9 at ADC 1229130, 1229144]  This report was reviewed on 12/18/17.  [*See* **Ex. 11 filed under seal** (pages from medical record)]

    iii.   ███████████, **three tests**: Urine culture, urinalysis, and diagnostic panel 2, received 12/10/17.  [Ex. 9 at ADCM1229123, 1229137]  The results of the three tests were reviewed on 12/18/17.  [*See* **Ex. 12 filed under seal** (pages from medical record)]

f.  The December 20, 2017 daily tracker lists 24 out of compliance labs.  [Ex. 1 at ADCM1228986]  The accompanying roster of received labs awaiting review showed 26 noncompliant labs, and 32 that were due that same day, December 20.  [*See* **Ex. 13 filed under seal** (ADCM1228987-94, 1229000-08)]  Several of the listings of noncompliance were documented in previous reports (and listed above), but the following **16 instances of noncompliance were not listed** in Defendants' filing:

      i.   █████████, diagnostic panel 2, received 12/15/17.  [Ex. 13 at ADCM1228988, 1229002]  This report was reviewed on 12/21/17.  [*See* **Ex. 14 filed under seal** (pages from medical record)]

1         ii.    ███████████, diagnostic panel 1, received 12/13/17. [Ex. 13 at ADCM1228987, 1229001]   This report was reviewed by Corizon regional medical director Dr. Glen Babich on 12/27/17.  [*See* **Ex. 15 filed under seal** (pages from medical record)]

iii.    ███████████, lipid panel, received 12/14/17.  [Ex. 13 at ADCM1228987, 1229001]   This report was reviewed by Corizon regional medical director Dr. Glen Babich on 12/27/17.  [*See* **Ex. 16 filed under seal** (pages from medical record)]

iv.    █████████, **two tests**: lipid panel and diagnostic panel 2, received on 12/14/17.  [Ex. 13 at ADCM1228987, 1229001] These reports were reviewed on 12/21/17.  [*See* **Ex. 17 filed under seal** (pages from medical record)]

v.    ███████████, **two tests**: lipid panel and diagnostic panel 2, received 12/14/17.  [Ex. 13 at ADCM1228987, 1229001] These reports were reviewed on 12/21/17.  [*See* **Ex. 18 filed under seal** (pages from medical record)]

vi.    ██████████, lipid panel, received 12/14/17.  [Ex. 13 at ADCM1228987, 1229001]   This report was reviewed on 12/21/17.  [*See* **Ex. 19 filed under seal** (pages from medical record)]

vii.    ████████████, **three tests**: tumor marker, AFP screen, HCG/quant, received on 12/14/17.  [Ex. 13 at ADCM1228987, 1229001]  These reports were reviewed on 12/21/17.  [*See* **Ex. 20 filed under seal** (pages from medical record)]

viii. ████████████, prothrombin/INR, received 12/13/17. [Ex. 13 at ADCM1228988, 1229002]   This report was reviewed on 12/21/17. [*See* **Ex. 21 filed under seal** (pages from medical record)]

ix. ████████████, PPD test, received 12/14/17. [Ex. 13 at ADCM1228988, 1229002]   This report was reviewed on 12/21/17. [*See* **Ex. 22 filed under seal** (pages from medical record)]

x. ████████████, prothrombin/INR, received 12/13/17. [Ex. 13 at ADCM1228988, 1229002]   This report was reviewed on 12/20/17. [*See* **Ex. 23 filed under seal** (pages from medical record)]

xi. ████████████, prothrombin/INR, received 12/13/17. [Ex. 13 at ADC1228989, 1229003. This report was reviewed on 12/21/17. [*See* **Ex. 24 filed under seal** (pages from medical record)]

xii. ██████████, prothrombin/INR, received 12/13/17. [Ex. 13 at ADCM1228989, 1229003]   This report was reviewed on 12/21/17. [*See* **Ex. 25 filed under seal** (pages from medical record)]

xiii. ████████ ██████, prothrombin/INR, received 12/13/17. [Ex. 13 at ADCM1228989, 1229003]   This report was reviewed on 12/21/17. [*See* **Ex. 26 filed under seal** (pages from medical record)]

15. Performance Measure 47 requires that "A Medical Provider will communicate the results of the diagnostic study to the inmate upon request and within seven calendar days of the date of the request." [Doc. 1185-1 at 11] Defendants reported 17 instances of substantial noncompliance with this measure. [Doc. 2576-1 at 27] None

1    of the six daily trackers that Plaintiffs' counsel identified referred to any instances of

2    noncompliance, and therefore there was no documents at hand to compare to Defendants'

3    filing.

4         16.    Performance Measure 54 requires that "Chronic disease inmates will be seen

5    by the provider as specified in the inmate's treatment plan, no less than every 180 days

6    unless the provider documents a reason why a longer time frame can be in place."

7    [Doc. 1185-1 at 11]   Defendants originally reported that they did not have responsive

8    information to the Court in their February 5, 2018 filing (*see* Doc. 2576-1 at 42).   The

9    Court ordered Defendants to file this information in a February 8, 2018 Order (Doc. 2583

10   at 2-3), and Defendants complied on February 14, 2018.   [Doc. 2595-1]

11        17.    As detailed above in Paragraph 6, Defendants did not provide a total number

12   of instances of noncompliance with PM 54 at Eyman in December; Plaintiffs' counsel

13   counted 405 instances of noncompliance.   However, based upon the six Defendants' daily

14   tracker reports and PM 54 chronic care backlog reports Plaintiffs identified in Defendants'

15   document production, there are at least **163 additional instances of noncompliance not**

16   **reported** to the Court, if not more.

17        a.   First, the December 5, 2017 daily compliance tracker reports that for

18             PM 54 there is a backlog of 562 chronic care patients.   [Ex. 1 at

19             ADCM1138993]   Plaintiffs' counsel could not locate a performance

20             measure roster or log dated December 5 that could show the names of

21             the   class   members   associated   with   the   562   instances   of

22             noncompliance, in order to compare to Defendants' filing that

23             showed 405 instances of noncompliance.

24        b.   The December 11, 2017 daily tracker states for PM 54 that there is a

25             backlog of 301 chronic care patients.   [Ex. 1 at ADCM1138871]

26             Attached to that daily tracker is a chronic care backlog report listing

27             243 names that was produced at ADCM1138872-1138877, and is

28             attached **under seal as Exhibit 27**.   The following **157 class**

**members** listed in the backlog roster are not included in Defendants'
filing with the Court (the people are listed in the order in which they
appear in the roster):

    i.   █████████

    ii.   ████████████

    iii.   ██████

    iv.   █████████

    v.   ██████████

    vi.   ██████████████

    vii.   ██████

    viii.   █████████

    ix.   ███████

    x.   ████████

    xi.   ██████████

    xii.   ███████

    xiii.   █████████

    xiv.   █████████

    xv.   ████████

    xvi.   █████████

    xvii.   ██████████

    xviii.   ████████

    xix.   ████████

    xx.   ████████

    xxi.   █████████

    xxii.   █████████

    xxiii.   █████████

    xxiv.   ███████

    xxv.   █████████

1  xxvi. ███████

2  xxvii. ████████

3  xxviii. █████████

4  xxix. ████████

5  xxx. ██████

6  xxxi. █████

7  xxxii. ████

8  xxxiii. █████████

9  xxxiv. ██████

10  xxxv. █████████

11  xxxvi. █████████

12  xxxvii. ██████

13  xxxviii. ████████

14  xxxix. ███████

15  xl. ██████

16  xli. ███████

17  xlii. ████████

18  xliii. █████

19  xliv. ███████

20  xlv. ████████

21  xlvi. ██████

22  xlvii. ██████

23  xlviii. ████████

24  xlix. ████████

25  l. ███████

26  li. ███████

27  lii. ███████

28  liii. ███████

1       liv. ▮▮▮▮▮

2       lv. ▮▮▮▮▮▮

3       lvi. ▮▮▮▮▮

4       lvii. ▮▮▮▮▮▮

5       lviii. ▮▮▮▮▮▮▮▮▮

6       lix. ▮▮▮▮▮▮▮

7       lx. ▮▮▮▮▮

8       lxi. ▮▮▮▮▮

9       lxii. ▮▮▮▮▮▮

10       lxiii. ▮▮▮▮▮▮

11       lxiv. ▮▮▮▮▮

12       lxv. ▮▮▮▮▮

13       lxvi. ▮▮▮▮▮▮

14       lxvii. ▮▮▮▮▮

15       lxviii. ▮▮▮▮▮▮

16       lxix. ▮▮▮▮▮

17       lxx. ▮▮▮▮▮▮

18       lxxi. ▮▮▮▮▮

19       lxxii. ▮▮▮▮▮

20       lxxiii. ▮▮▮▮▮

21       lxxiv. ▮▮▮▮▮

22       lxxv. ▮▮▮▮▮▮

23       lxxvi. ▮▮▮▮▮

24       lxxvii. ▮▮▮▮▮

25       lxxviii. ▮▮▮▮▮▮

26       lxxix. ▮▮▮▮▮

27       lxxx. ▮▮▮▮▮

28       lxxxi. ▮▮▮▮▮▮

| | | |
|---|---|---|
| 1 | lxxxii. | ████████ |
| 2 | lxxxiii. | ████████ |
| 3 | lxxxiv. | █████ |
| 4 | lxxxv. | ███████ |
| 5 | lxxxvi. | █████ |
| 6 | lxxxvii. | ███████████ |
| 7 | lxxxviii. | █████ |
| 8 | lxxxix. | █████ |
| 9 | xc. | ████ |
| 10 | xci. | ██████ |
| 11 | xcii. | ██████ |
| 12 | xciii. | █████████ |
| 13 | xciv. | █████ |
| 14 | xcv. | ██████ |
| 15 | xcvi. | ███████ |
| 16 | xcvii. | ██████ |
| 17 | xcviii. | ████████ |
| 18 | xcix. | █████ |
| 19 | c. | ███████ |
| 20 | ci. | ████████ |
| 21 | cii. | █████ |
| 22 | ciii. | █████ |
| 23 | civ. | ██████ |
| 24 | cv. | █████ |
| 25 | cvi. | ███████ |
| 26 | cvii. | ███████ |
| 27 | cviii. | ██████ |
| 28 | cix. | ███████ |

| | |
|---|---|
| 1 | cx. |
| 2 | cxi. |
| 3 | cxii. |
| 4 | cxiii. |
| 5 | cxiv. |
| 6 | cxv. |
| 7 | cxvi. |
| 8 | cxvii. |
| 9 | cxviii. |
| 10 | cxix. |
| 11 | cxx. |
| 12 | cxxi. |
| 13 | cxxii. |
| 14 | cxxiii. |
| 15 | cxxiv. |
| 16 | cxxv. |
| 17 | cxxvi. |
| 18 | cxxvii. |
| 19 | cxxviii. |
| 20 | cxxix. |
| 21 | cxxx. |
| 22 | cxxxi. |
| 23 | cxxxii. |
| 24 | cxxxiii. |
| 25 | cxxxiv. |
| 26 | cxxxv. |
| 27 | cxxxvi. |
| 28 | cxxxvii. |

1    cxxxviii.  ██████████████

2    cxxxix.   █████████████

3    cxl.      ████████████

4    cxli.     █████████████

5    cxlii.    ██████████

6    cxliii.   ███████████

7    cxliv.    █████████████

8    cxlv.     █████████

9    cxlvi.    ████████████

10   cxlvii.   ████████████

11   cxlviii.  █████████████

12   cxlix.    ██████████

13   cl.       █████████████

14   cli.      █████████

15   clii.     ██████████

16   cliii.    ████████████

17   cliv.     ██████████

18   clv.      ███████████

19   clvi.     ██████████████

20   clvii.    █████████

21   c.   The December 13, 2017 daily tracker states that for PM 54, there was

22        a backlog of 190 patients, with 369 chronic care conditions.  [Ex. 1 at

23        ADCM1229388]   An accompanying chronic care backlog roster

24        listing 197 names was produced at ADCM1229409-14 (*see* **Ex. 28**

25        **filed under seal**).  All of these names were in the previous roster, and

26        no new names were added.

27   d.   The December 15, 2017 daily tracker states that for PM 54, there was

28        a backlog of 164.  [Ex. 1 at ADCM1138730]   An accompanying

chronic care backlog roster listing 164 names was produced at ADCM1138792-96 (*see* **Ex. 29 filed under seal**).  There were two (2) new names since the December 13 roster.  Of the two new names, <u>**one (1) is not listed**</u> in Defendants' filing:

    i. ████████████

  e. The December 18, 2017 daily tracker states that for PM 54, there was a backlog of 110.  [Ex. 1 at ADCM1229121]  A roster of 109 names, with four (4) new names since the December 15 list, was produced at ADCM1229197-200 (*see* **Ex. 30 filed under seal**).  These <u>**four (4) instances of noncompliance are not listed**</u> in Defendants' filing:

    i. ████████████

    ii. █████████

    iii. ███████9████

    iv. ████████████

  f. The December 20, 2017 daily tracker states that for PM 54, there was a backlog of 66.  [Ex. 1 at ADCM1228986]  A roster of 57 names was provided, with three new names since the previous list.  ADCM1229059-61 (*see* **Ex. 31 filed under seal**).  Of these three, <u>**one (1) instance of noncompliance is not listed**</u> in Defendants' filing:

    i. ██████████

**ASPC-Florence**

18.    The Court's Order to Show Cause included ASPC-Florence for Performance Measures 35, 46, 47, 50, 51, 52, and 66.  [Doc. 2373 at 3-4]  The document production we received included 11 daily tracking reports and some performance measure logs for ASPC-Florence dated December 1, 4, 5, 6, 7, 8, 14, 15, 19, 21, and 28, 2017.  Attached hereto and **filed under seal as Exhibit 32** are the daily tracking reports for Florence for

those dates.   I identified the following **42 instances of noncompliance at ASPC-Florence that were not included** in Defendants' filing but were stated in Defendants' documents and/or confirmed by a review of class members' medical records.

19.   Performance Measure 35 requires that "All inmate medications (KOP and DOT) will be transferred with and provided to the inmate or otherwise provided at the receiving prison without interruption."  [Doc. 1185-1 at 10]  Defendants reported 15 separate instances of substantial noncompliance with PM 35 at Florence in December. [Doc. 2576-1 at 9]  The 11 daily trackers did not list instances of noncompliance with this PM, so there is no way to check the accuracy of Defendants' filing.

20.   Performance Measure 46 requires that "A Medical Provider will review the diagnostic report, including pathology reports, and act upon reports with abnormal values within five calendar days of receiving the report at the prison."  [Doc. 1185-1 at 11] Defendants reported 111 separate instances of substantial noncompliance with PM 46 at Florence in December.   [Doc. 2576-1 at 21-23]   However, there were **14 additional instances of noncompliance with PM 46** that were not included in Defendants' report to the Court, but were documented in their daily tracking reports and daily rosters.

    a.  The December 6, 2017 Pentaho PM 46 report showing outstanding labs and Xrays to be reviewed (ADCM1229686-92), attached **under seal as Exhibit 33**, included **one (1) instance of noncompliance** that was not included in Defendants' filing:

        i.  ███████, diagnostic panel 2, received 11/30/17.  [Ex. 33 at ADCM1229686]   This report was reviewed on 12/6/17. [*See* **Ex. 34 filed under seal** (pages from medical record)]

    b.  The December 19, 2017 PM 46 report (ADCM1229105-1229112), attached **under seal as Exhibit 35**, lists 19 diagnostic reports that were outside the five day requirement as of the date of the report.  Of those 19 noncompliant reports, **13 instances of noncompliance were not listed** in Defendants' filing:

i.  ███████████, diagnostic panel 1, received 12/11/17, 8 days. [Ex. 35 at ADCM1229105] Curiously, according to his medical record (**Ex. 36 filed under seal**), this result was received on December 11 at 13:00, (*id*. at 2), but the provider noted she reviewed it December 11 at 8:00, **before its documented receipt**. [*Id.* at 4][1]

ii. ███████████, diagnostic panel 2, received 12/13/17, 6 days. [Ex. 35 at ADCM1229105] This report was reviewed on 12/20/17. [*See* **Ex. 37 filed under seal** (pages from medical record)]

iii. ███████████, **two reports**: PTT and urine culture, received 12/8/17, 11 days. [Ex. 35 at ADCM1229108] Curiously, according to his medical record, both of these reports were received on 12/8/17, but the provider's entry of 12/7/17 stated the reports were reviewed, **before the documented date of receipt**. [*See* **Ex. 38 filed under seal** at 1-2, 4-5 (pages from medical record)][2] Neither of these instances of noncompliance are listed in Defendants' filing.

iv. ███████████, **two reports**, calcium, HGB, received 12/13/17, 6 days. [Ex. 35 at ADCM1229108] The reports were reviewed on 12/19/17. [*See* **Ex. 39 filed under seal** (pages from medical record)]

v.  ███████████, urinalysis dipstick, received 10/21/17, 59 days. [Ex. 35 at ADCM1229110] This report was reviewed on 12/19/17 by Corizon Regional Medical Director Dr. Glen

---

[1] *See supra* ¶¶ 14(b)(ii); 14(c)(i); 14(e)(i).
[2] *See supra* ¶¶ 14(b)(ii); 14(c)(i); 14(e)(i); 20(b)(i).

Babich.  [*See* **Ex. 40 filed under seal** (pages from medical record)]

vi.     ████████████, RPR, received 12/12/17, 6 days.  [Ex. 35 at ADCM1229110]  This report was reviewed on 12/19/17.  [*See* **Ex. 41 filed under seal** (pages from medical record)]

vii.    ████████████, two reports, calcium and HGB, received 12/13/17, 6 days.  [Ex. 35 at ADCM1229111]  Both reports were reviewed on 12/20/17 by Corizon Regional Medical Director Dr. Glen Babich, but only one instance of noncompliance is listed in Defendants' filing.  [*See* **Ex. 42 filed under seal** (pages from medical record)]

viii.   ████████████, two reports, calcium and HGB, received 12/13/17, 6 days.  [Ex. 35 at ADCM1229111]  Both reports were reviewed on 12/20/17 by Corizon Regional Medical Director Dr. Babich, but only one instance of noncompliance is listed in Defendants' filing.  [*See* **Ex. 43 filed under seal** (pages from medical record)]

ix.     ████████████, two reports, calcium and HGB, received 12/13/17, 6 days.  [Ex. 35 at ADCM1229111]  Both reports were reviewed on 12/19/17 by Corizon Regional Medical Director Dr. Babich, but only one instance of noncompliance is listed in Defendants' filing.  [*See* **Ex. 44 filed under seal** (pages from medical record)]

x.      ████████████, two reports, diagnostic panel 2 and lithium, received 12/13/17, 6 days.  [Ex. 35 at ADCM1229111-12]  Both reports were reviewed on 12/19/17, but only one instance of noncompliance is in Defendants' filing.  [*See* **Ex. 45 filed under seal** (pages from medical record)]

1      xi.   ███████, two reports, Calcium and HGB, received

2            12/13/17, 6 days.  [Ex. 35 at ADCM1229112]  One report was

3            reviewed on 12/19/17 and the other on 12/20/17, but only one

4            instance of noncompliance is in Defendants' filing.   [*See*

5            **Ex. 46 filed under seal** (pages from medical record)]

6      21.   Performance Measure 47 requires that "A Medical Provider will

7  communicate the results of the diagnostic study to the inmate upon request and within

8  seven calendar days of the date of the request."  [Doc. 1185-1 at 11]  Defendants reported

9  one (1) instance of substantial noncompliance with PM 47 at Florence in December.

10  [Doc. 2576-1 at 28]  The 11 daily trackers did not list instances of noncompliance, so

11  there is no way to check the accuracy of Defendants' filing.  [Ex. 32]

12      22.   Performance Measure 50 requires that "Urgent specialty consultations and

13  urgent specialty diagnostic services will be scheduled and completed within 30 calendar

14  days of the consultation being requested by the provider."   [Doc. 1185-1 at 11]

15  Defendants reported 33 separate instances of substantial noncompliance with PM 50 at

16  Florence in December.  [Doc. 2576-1 at 34]  However, there were an additional **22**

17  **instances of noncompliance with PM 50 not listed** in Defendants' filing with the Court,

18  that were documented in Defendants' daily tracking reports and daily PM 50/51 logs.

19      a.   The December 1, 2017 daily tracker lists 13 consults for class

20            members (but not their ADC numbers) who are backlogged.[3]  [Ex. 32

21            at ADCM1230152]  However, of the listed names, **12 instances of**

22            **noncompliance are not listed** in Defendants' filing with the Court:

23            i.   ████

24            ii.   ███████

25            iii.   █████

26  ─────────────────

27        [3]  A December 7, 2017 list of all pending specialty consults (ADCM1229463-66,
    filed hereto **under seal as Ex. 48**) lists most of these individuals, and gives their ADC

28    numbers.  The instances of noncompliance that are not included in Defendants' filing are
    highlighted yellow.

iv. ████████████████

v. ███████████

vi. ████████████

vii. █████████████

viii. ██████████████

ix. ██████████

x. ████████████████

xi. ██████

xii. ██████

b. The December 4, 2017 daily tracker listed 12 instances of noncompliance, all of which were listed in the December 1, 2017 tracker. [Ex. 32 at ADCM1229968]

c. The December 4, 2017 PM 50/51 performance measure log was produced, but is difficult to read. ADCM1229795-1229834 (attached **under seal as Ex. 47**). Nevertheless, it also lists eight of the above individuals as noncompliant. [*Id*. at ADCM1229799-1229800]

d. The December 7, 2017 list of all pending specialty consults (ADCM1229463-66, attached **under seal as Ex. 48**) includes some of the individuals listed above, as well as additional urgent consults that are noncompliant. (The urgent requests are listed in red in the original document; Plaintiffs' counsel has highlighted yellow the entries that are noncompliant on the face of the report but not included in Defendants filing). However, of the listed names, **seven (7) instances of noncompliance are not listed** in Defendants' filing:

i. ████████████████

ii. ███████████

iii. █████████████

iv. ████████████

v. ████████████

vi. Jensen, 032465[4]

vii. ████████████

e. The December 27, 2017 list of all pending specialty consults shows 16 pending urgent consults outside the PM 50 timeframes. [ADCM1228915 (filed **under seal as Ex. 49**)]  (The urgent requests are listed in red in the original document; Plaintiffs' counsel has highlighted yellow the entries that are noncompliant on the face of the report but not included in Defendants filing).  Among the newly-listed instances of noncompliance with PM 50, **two (2) instances of noncompliance are not listed** in Defendants' filing:

i. ████████████ (180 days)

ii. ████████████ (51 days).  [*See* **Ex. 50 filed under seal** (medical records showing urgent request submitted 10/25/17 for orthopedics consult for fractured ulna, listed as Scheduled)]

f. Finally, in the course of reviewing the medical record of a class member who was listed as noncompliant with regard to a different performance measure, Plaintiffs' counsel identified that he, too, should have been listed in Defendants' filing as **one (1) instance of noncompliance**.

i. ████████████, urgent request for urology consult submitted 10/5/17 but not yet scheduled or completed.  [*See* **Ex. 51 filed under seal**]

23.    Performance Measure 51 requires that "Routine specialty consultations will be scheduled and completed within 60 calendar days of the consultation being requested by the provider."  [Doc. 1185-1 at 11]   Defendants reported 21 separate instances of

---

[4] This is *Parsons* named plaintiff Shawn Jensen.

substantial noncompliance with PM 51 at Florence in December.  [Doc. 2576-1 at 37]
However, there were **five (5) instances of noncompliance** with PM 51 not included in
Defendants' filing with the Court, but documented in their tracking reports.

  a.  The December 1, 2017 daily tracker lists seven (7) routine consults
      for class members (but not ADC numbers) who are noncompliant.[5]
      [ADCM1230152]    Of the listed names, **five (5) instances of**
      **noncompliance are not listed** in Defendants' filing:

         i.   █████████████

         ii.  ████

         iii. ██████████████

         iv.  ███████████████████

         v.   ██████████████

  b.  The December 7, 2017 list of all pending specialty consults (Ex. 48,
      ADCM1229463-66) includes three of the individuals listed above,
      and for the three of them, more than 100 days had elapsed since the
      request had been submitted and approved.  [*See* Ex. 48 at
      ADCM1229463 ███████, 176 days; ██████, 147 days; ███████,
      126 days)]

    24.    Performance Measure 52 requires that "Specialty consultation reports will
be reviewed and acted on by a Provider within seven calendar days of receiving the
report."  [Doc. 1185-1 at 11]  Defendants reported 26 separate instances of substantial
noncompliance with PM 52 at Florence in December.  [Doc. 2576-1 at 40]  The instances
of noncompliance with PM 52 that were documented in Defendants' tracking logs and
performance measure rosters were all listed in the court filings.  However, in the course of
reviewing the medical record of a class member who wrote Plaintiffs' counsel regarding

---

[5] A December 7, 2017 list of all pending specialty consults (**Ex. 48**,
ADCM1229463-66) lists most of these individuals, and gives their ADC numbers.

health care, Plaintiffs' counsel identified at least **one (1) instance of noncompliance not included** in Defendants' filing.

a. ███████████, optometry report received 11/16, reviewed 12/23. [*See* **Ex. 52 filed under seal**]

25.    Performance Measure 66 requires that "In an IPC, a Medical Provider encounters [sic] will occur at a minimum every 72 hours." [Doc. 1185-1 at 11] Defendants reported four (4) instances of noncompliance with PM 66 at Florence in December. [Doc. 2576-1 at 44] The instances of noncompliance with PM 66 documented in Defendants' tracking logs and performance measure rosters were listed in the court filing.

**ASPC-Lewis**

26.    The Court's Order to Show Cause included ASPC-Lewis for Performance Measures 11, 35, 39, 47, and 66.  Doc. 2373 at 3-4.  The document production we received included daily tracking reports for ASPC-Lewis for December 1-29, 2017 and performance measure logs.  Attached and **filed under seal as Exhibit 53** are the daily tracking reports for Lewis for those dates.[6]  I identified the following **179 instances of noncompliance at ASPC-Lewis that were not included** in Defendants' filing but were stated in Defendants' documents and/or confirmed by a review of class members' medical records.

27.    Performance Measure 11 requires that "Newly prescribed provider-ordered formulary medications will be provided to the inmate within 2 business days after prescribed, or on the same day, if prescribed STAT." [Doc. 1185-1 at 8]  Defendants reported 54 separate instances of noncompliance with PM 11 at Lewis in December. [Doc. 2576-1 at 5-6]  However, there were an additional **158 instances of noncompliance with PM 11 not listed** in their Court filing but that were documented in their daily

---

[6] The charts can be somewhat difficult to read, but this is how they were produced.

tracking reports and daily PM 11 Pentaho reports.  The daily PM 11 Pentaho reports for December 7-29, 2017 are attached **under seal as Exhibit 54** (ADCM1258351-466).[7]

        a.   The December 7, 2017 PM 11 report lists 28 instances of noncompliance.  [Ex. 54 at ADCM1258351-56]  The report shows **<u>25 instances of noncompliance not listed</u>** in Defendants' filing:

           i.   ██████████

          ii.   ████████

         iii.   ████████████

         iv.   █████████

          v.   ███████████

         vi.   ██████████

        vii.   ██████████

       viii.   ██████████████

         ix.   ████████████

          x.   ██████

         xi.   ██████████

        xii.   ██████████

       xiii.   ██████████

       xiv.   █████████

        xv.   █████████

       xvi.   █████████

      xvii.   ███████████

     xviii.   █████████

       xix.   ████████████

        xx.   ██████████

       xxi.   ██████████

---

[7] Again, the charts are somewhat difficult to read, but this is how they were produced.

1                  xxii. ███████████

2                  xxiii. ███████████

3                  xxiv. ██████████

4                  xxv. █████████████

5        b. The December 8, 2017 report lists 51 instances of noncompliance

6              (including 26 instances of noncompliance previously recorded in the

7              December 7 report). [Ex. 54 at ADCM1258357-64] Of the 25 new

8              instances of noncompliance detailed on December 8, Defendants'

9              filing does not include **20 instances of noncompliance**:

10                  i. ███████████

11                  ii. █████████

12                  iii. █████████

13                  iv. █████████

14                  v. █████████

15                  vi. ████████

16                  vii. █████████

17                  viii. ███████████

18                  ix. ████████

19                  x. ██████████

20                  xi. █████████ (only two instances recorded in Court filing

21              but report lists three)

22                  xii. ███████████ (aspirin)

23                  xiii. ██████████ (atorvasta)

24                  xiv. █████████ (aspirin)

25                  xv. ███████████ (atorvasta)

26                  xvi. ██████████

27                  xvii. █████████ (linsinopril)

28                  xviii. █████████ (omeprazole)

xix. █████████ (hydrochorothiazide)

xx. █████████ (Lisinopril)

c. The December 9, 2017 report lists 39 instances of noncompliance (including 36 instances reported on prior reports). [Ex. 54 at ADCM1258365-70]   Of the three new instances listed in the December 9 report, Defendants' filing **does not include two (2) instances of noncompliance**.

    i. █████████

    ii. █████████ (listed only once in filing, should be twice)

d. The December 10, 2017 report lists 32 instances of noncompliance (including 31 instances reported on prior reports). [Ex. 54 at ADCM1258371-76]   The additional **one (1) instance of noncompliance** is not listed in Defendants' filing.

    i. █████████

e. The December 11, 2017 report lists 30 instances of noncompliance (including 27 instances reported on prior reports). [Ex. 54 at ADCM1258377-82]   The additional **three (3) instances of noncompliance are not listed** in Defendants' filing.

    i. █████████

    ii. █████████

    iii. █████████

f. The December 12, 2017 report lists 33 instances of noncompliance (including 20 instances reported on prior reports). [Ex. 54 at ADCM1258383-90]   Of the 13 new instances of noncompliance listed in the December 12 report, Defendants' filing **does not include 11 instances of noncompliance**.

    i. █████████

    ii. █████████

1        iii. ██████████

2        iv. ████████

3        v. ████████

4        vi. ██████████

5        vii. ██████████

6        viii. ███████

7        ix. ██████████

8        x. ████████████

9        xi. ████████

10   g. The December 13, 2017 report lists 20 instances of noncompliance

11      (including 15 instances reported on prior reports).   [Ex. 54 at

12      ADCM1258391-94]   Of the five new instances of noncompliance

13      listed in the December 13 report, Defendants' filing **does not include**

14      **four (4) instances of noncompliance.**

15        i. ████████

16        ii. ████████

17        iii. ████████

18        iv. ██████████

19   h. The December 14, 2017 report lists 24 instances of noncompliance

20      (including 19 instances reported on prior reports).   [Ex. 54 at

21      ADCM1258395-98]   Of the five new instances of noncompliance

22      listed in the December 14 report, Defendants' filing **does not include**

23      **four (4) instances of noncompliance**.

24        i. ████████

25        ii. █████████████

26        iii. ████████

27        iv. ████████

28

i.  The December 15, 2017 report lists 28 instances of noncompliance (including 19 instances reported on prior reports).  [Ex. 54 at ADCM1258399-406]   Of the nine (9) new instances of noncompliance listed in the December 15 report, Defendants' filing **does not include six (6) instances of noncompliance.**

      i.  ███████████

      ii.  ████████

      iii.  █████████████

      iv.  ███████████

      v.  ███████████

      vi.  ██████████

j.  The December 16 and 17, 2017 reports list 21 instances of noncompliance, but there are no new instances not previously documented in past reports.  [Ex. 54 at ADCM1258407-14]   The December 18, 2017 report lists 20 instances of noncompliance (including 18 instances reported on prior reports). [*Id.* at ADCM1258415-18]  The new **two (2) instances of noncompliance are not listed** in Defendants' filing.

      i.  ███████████

      ii.  ███████████

k.  The December 19, 2017 report lists 22 instances of noncompliance (including 18 instances reported on prior reports).   [Ex. 54 at ADCM1258419-22]  Defendants' filing does not include the **four (4) new instances of noncompliance** listed on the December 19 report.

      i.  ███████████

      ii.  ██████████

      iii.  ███████████

      iv.  ██████████

l.  The December 20, 2017 report lists 30 instances of noncompliance (including 17 instances reported on prior reports).   [Ex. 54 at ADCM1258423-28]   Of the 13 new instances of noncompliance listed on the December 20 report, Defendants' filing **does not include 11 instances of noncompliance.**

     i.  ██████████████

     ii.  █████████

     iii.  ███████████

     iv.  ███████████

     v.  ████████████

     vi.  ████████████

     vii.  █████████

     viii.  ███████████

     ix.  █████████

     x.  ██████████

     xi.  ██████████

m.  The December 21, 2017 report lists 22 instances of noncompliance (including 18 instances reported on prior reports).   [Ex. 54 at ADCM1258429-32]   Defendants' filing **does not include four (4) instances of noncompliance**.

     i.  ██████████████

     ii.  ███████████

     iii.  ██████████

     iv.  █████████

n.  The December 22, 2017 report lists 16 instances of noncompliance (including 12 instances reported on prior reports).   [Ex. 54 at ADCM1258433-36]   Defendants' filing **does not include three (3) instances of noncompliance**.

      i. ████████████████

     ii. ████████████

   iii. ████████████████

o.  The December 23, 24, and 25, 2017 PM 11 reports list 16 instances of noncompliance, but there are no new instances not previously documented in past reports.  [Ex. 54 at ADCM1258437-48]  The December 26, 2017 report lists 14 instances of noncompliance (including nine (9) instances reported on prior reports).  [*Id.* at ADCM1258449-52]  Defendants' filing **does not include the five (5) new instances of noncompliance** documented in the report.

      i. █████████████

     ii. █████████████

   iii. ████████████

   iv. █████████████

    v. ████████████

p.  Plaintiffs could not locate a PM 11 report for December 27, 2017. The daily tracker lists 62 separate instances of noncompliance (including 21 instances reported on prior reports).  [Ex. 53 at ADCM1257816-19]   Of the 41 new instances of noncompliance listed on the December 27 daily tracker, Defendants' filing **does not include 40 instances of noncompliance**

      i. ██████

     ii. ██████

   iii. ██████

   iv. ██████

    v. ██████

   vi. ██████

  vii. ██████

1                 viii.   █████

2                 ix.   █████   (listed four times in daily tracker, listed once in Court

3                 filing)

4                 x.   █████

5                 xi.   █████

6                 xii.   █████

7                 xiii.   █████

8                 xiv.   █████

9                 xv.   █████

10               xvi.   █████

11               xvii.   █████

12               xviii.   █████

13               xix.   █████

14               xx.   █████

15               xxi.   █████

16               xxii.   █████

17               xxiii.   █████

18               xxiv.   █████

19               xxv.   █████

20               xxvi.   █████

21               xxvii.   █████

22               xxviii.   █████

23               xxix.   █████

24               xxx.   █████

25               xxxi.   █████

26               xxxii.   █████

27               xxxiii.   █████

28               xxxiv.   █████

xxxv. ████

xxxvi. ████

xxxvii. ████

xxxviii. ████

xxxix. ████

xl. ████

xli. ████

q. The December 28, 2017 report lists 37 instances of noncompliance (including 27 instances reported on prior reports). [Ex. 54 at ADCM1258453-60]  Of the 10 new instances of noncompliance listed on the December 28 report, Defendants' filing **does not include eight (8) instances of noncompliance**.

    i. █████

    ii. ███████

    iii. █████ (two medications)

    iv. ██████ (two medications)

    v. █████

    vi. ██████

    vii. ██████ (two medications)

    viii. ███████ (two medications)

r. The December 29, 2017 PM 11 report lists 24 instances of noncompliance (including 19 instances reported on prior reports). [Ex. 54 at ADCM1258461-66]   The new **five (5) instances of noncompliance are not listed** on Defendants' filing.

    i. ██████

    ii. █████

    iii. █████████

    iv. ██████

1          v. ███████████

2          28.    Performance Measure 35 requires that "All inmate medications (KOP and

3    DOT) will be transferred with and provided to the inmate or otherwise provided at the

4    receiving prison without interruption." [Doc. 1185-1 at 10]  Defendants reported 28

5    separate instances of substantial noncompliance with PM 35 at Lewis in December.

6    [Doc. 2576-1 at 10]  It should also be noted that staff at Tucson apparently took the

7    position that "[w]e have until noon to be compliant" with PM 35, (*see, e.g*., Ex. 53 at

8    ADCM157706) but Plaintiffs are not aware of the basis for that assertion, as there is

9    nothing in the Court's Order to Show Cause, the Stipulation, or the Monitoring Guide that

10   supports Defendants' interpretation of the Stipulation's requirement.

11         29.    Plaintiffs could not locate all daily rosters of noncompliant incidents with

12   PM 35, and this was not tracked in all of the daily tracking reports.   Nonetheless,

13   Plaintiffs identified at least **15 instances of noncompliance with PM 35 were not**

14   **included** in the report to the Court but were documented in their daily reports and other

15   documentation.

16                    a.   The December 7, 2017 daily tracker listed six instances of

17                         noncompliance. [Ex. 53 at ADCM1257700, 1257703]  Defendants'

18                         filing with the Court **did not list five (5) instances of**

19                         **noncompliance**.

20                         i.   ███████

21                         ii.  ███████ (**four medications**)

22                    b.   The December 12, 2017 daily tracker listed five instances of

23                         noncompliance.  [Ex. 53 at ADCM1257728, 1257731]  Defendants'

24                         filing with the court **did not list one (1) instance of noncompliance**.

25                         i.   ███████

26                    c.   The December 13, 2017 daily tracker listed one instance of

27                         noncompliance.  [Ex. 53 at ADCM1257734, 1257737]  Defendants'

28                         filing with the court **did not list one (1) instance of noncompliance**.

1                    i.  ███

2          d.  The December 16, 2017 daily tracker listed nine instances of

3               noncompliance.  [Ex. 53 at ADCM1257750, 1257753]  Defendants'

4               filing with the court **did not list eight (8) instances of**

5               **noncompliance**.

6                    i.  ███ (seven medications) – listed only once in filing

7                    ii.  ███

8                    iii.  ███

9          e.  The December 20, 2017 daily tracker listed noncompliance that day,

10              but the prisoner numbers are not included in the report.  [Ex. 53 at

11              ADCM1257774, 1257775]  The December 27, 2017 daily tracker

12              does not indicate whether there was noncompliance on that day.  [*Id.*

13              at ADCM1257816]  Similarly, the December 29, 2017 daily tracker

14              does not indicate whether there was noncompliance on that day.  [*Id.*

15              at ADCM1257828]

16        30.     Performance Measure 39 requires that "Routine provider referrals will be

17    addressed by a Medical Provider and referrals requiring a scheduled provider appointment

18    will be seen within fourteen calendar days of the referral."  [Doc. 1185-1 at 10]

19    Defendants reported two instances of substantial noncompliance with PM 39 at Lewis in

20    December.  [Doc. 2576-1 at 13]   Yet despite only reporting two instances of

21    noncompliance for the entire month, Defendants' December 1, 2017 tracker states that

22    with regard to PM 39, "*[p]roviders are working on cleaning up the backlog*" (Ex. 53 at

23    ADCM1257664, 1257667) (emphasis added), for which the use of the word "backlog"

24    implies that there is more than one or two instances of noncompliance.  Despite the

25    statement in the daily report that providers are "cleaning up the backlog," Defendants

26

27

28

reported compliance for that day.[8]  [*Id.*]  Plaintiffs identified at least **five (5) instances of noncompliance with PM 39 not listed** in Defendants' report to the Court but that were documented in their daily tracking reports and daily performance measure reports. Defendants' PM 39 daily compliance reports for December 7, 11, 16, and 21, 2017 are **attached under seal as Exhibit 55**.

    a. The December 7, 2017 daily tracker and PM 39 compliance roster for the day showed one instance of noncompliance.  [Ex. 53 at ADCM1257700, 1257703; Ex. 55 at ADCM1258859-60] Defendants' filing with the Court **does not include the one (1) instance of noncompliance.**

        i. ▮▮▮▮▮▮▮.  Seen by nurse on 10/26/17, scheduled for provider follow up on 12/7/17. [Ex. 55 at ADCM1258859-60] His medical records confirm this delay of 42 days between the nursing encounter and the provider follow-up.  [*See* **Ex. 56 filed under seal** (medical records)]

    b. The December 11, 2017 daily tracker and PM 39 compliance roster showed three instances of noncompliance.  [Ex. 53 at ADCM1257722, 1257725; Ex. 55 at ADCM1248867-68]  The medical records of two of the three listed class members show that they were seen in compliant time frames, and thus were properly not included in Defendants' filing, but **one (1) instance of noncompliance was not included** in Defendants' filing.

        i. ▮▮▮▮▮▮▮.  Seen by nurse on November 25, 2017, the roster states that he was scheduled for provider on December 7, 2017. [Ex. 57 at ADCM1248867-68]  However,

---

[8] Subsequent daily trackers also referred to a "backlog" with regard to PM 39, while not characterizing a "backlog" as noncompliance.  [*See, e.g.*, Ex. 53 at ADCM1257676, 1257679 (Dec. 3, 2017)]

1    according to his medical record, he was not seen by the

2    provider until December 11, 2017, 16 days after the referral.

3    [*See* **Ex. 57 filed under seal** (medical records)]

4    c.   The December 16, 2017 daily tracker and PM 39 compliance roster

5    showed one instance of noncompliance.  [Ex. 53 at ADCM1257750,

6    1257753; Ex. 55 at ADCM1248877-78]  Defendants' filing with the

7    Court **does not include this one (1) instance of noncompliance**.

8    i.   ▓▓▓▓▓▓▓▓.   Seen by nurse on November 19, 2017, the

9    roster states that he was scheduled for provider referral for

10   December 28, 2017.   [Ex. 59 at ADCM1248877-78]

11   According to his medical record, he was seen for follow up by

12   the provider on December 19, 2017, 30 days after the referral.

13   [*See* **Ex. 58 filed under seal** (medical records)]

14   d.   The December 21, 2017 daily tracker and PM 39 compliance roster

15   showed two instances of noncompliance.  [Ex. 53 at ADCM1257780,

16   1257783; Ex. 55 at ADCM1258887-88]  Defendants' filing with the

17   Court **does not list two instances of noncompliance**.

18   i.   ▓▓▓▓▓▓▓▓.   Seen by nurse on December 5, 2017, the

19   roster states that he was scheduled for provider follow up on

20   December 26, 2017.   [Ex. 61 at ADCM1258887-88]   His

21   medical records confirm that he was not seen until

22   December 26, 2017, 21 days after the referral.   [*See* **Ex. 59**

23   **filed under seal** (medical records)]

24   ii.  ▓▓▓▓▓▓▓▓.   Seen by nurse on December 7, 2017, the

25   roster states that he was scheduled for provider follow up on

26   December 22, 2017.   [Ex. 61 at ADCM1258887-88]

27   However, his medical records confirm that the provider only

28   reviewed his medical records on December 22, 2017 and he

was not seen by a provider until December 27, 2017, 20 days after the referral.   [*See* **Ex. 60 filed under seal** (medical records)]

31.     Performance Measure 47 requires that "A Medical Provider will communicate the results of the diagnostic study to the inmate upon request and within seven calendar days of the date of the request." [Doc. 1185-1 at 11]  Defendants reported ten (10) instances of substantial noncompliance with PM 39 at Lewis in December. [Doc. 2576-1 at 29]  However, there was **one (1) instance of noncompliance with PM 47 not listed** in Defendants' Court filing despite being documented in their daily tracking reports.

      a.   The December 16, 2017 daily tracker and PM 47 compliance roster for that day showed one instance of noncompliance, but it is not listed in Defendants' filing.  [Ex. 53 at ADCM1257751, 1257754; **Ex. 61 filed under seal**, (ADCM1258760-61)]

         i.   ███████████.  He submitted a HNR that was stamped as received on December 8, 2017, requesting the results of his lab tests.  [ADCM1258760]  His medical record confirms he was not provided the results until December 18, ten days later. [*See* **Ex. 62 filed under seal** (medical records)]

32.     Performance Measure 66 requires that "In an IPC, a Medical Provider encounters [sic] will occur at a minimum every 72 hours."   [Doc. 1185-1 at 11] Defendants reported no instances of noncompliance with PM 66 at Lewis in December. [Doc. 2576-1 at 45]  Plaintiffs could find no information to compare to this assertion.

**ASPC-Tucson**

33.     The Court's Order to Show Cause included ASPC-Tucson for Performance Measures 35, 46, 47, 51, and 66.  [Doc. 2373 at 3-4]  The document production we received included ten daily tracking reports and logs for some performance measure for

ASPC-Tucson dated December 6, 7, 8, 11, 12-15, 18, 19, 2017.  Attached hereto and **filed under seal as Exhibit 63** are the daily tracking reports for those dates.  I identified the following **11 instances of noncompliance at ASPC-Tucson not included** in Defendants' filing with the Court, but that were in their documents or filings with the court.

34.     Performance Measure 35 requires that "All inmate medications (KOP and DOT) will be transferred with and provided to the inmate or otherwise provided at the receiving prison without interruption."  [Doc. 1185-1 at 10]  Defendants reported there were 27 instances of noncompliance with PM 35 at Tucson in December.  [Doc. 2576-1 at 11]  Plaintiffs were unable to locate tracking logs to confirm the accuracy of this number.

35.     Performance Measure 46 requires that "A Medical Provider will review the diagnostic report, including pathology reports, and act upon reports with abnormal values within five calendar days of receiving the report at the prison."  [Doc. 1185-1 at 11]  Defendants reported there were 42 instances of noncompliance with PM 46 at Tucson in December.  [Doc. 2576-1 at 25]  However, there were **11 instances of noncompliance with PM 46 that were not listed** in Defendants' filing, but were in their tracking reports.

a.  The December 6, 2017 daily report for PMs 46 and 47 (ADCM1292142-58, attached hereto **under seal as Ex. 64**) showed **three (3) instances of noncompliance not listed** in Defendants' filing.  (I highlighted the noncompliant entries yellow).

i.  ▮▮▮▮▮▮▮▮▮, **two tests**: ESR and diagnostic panel 3, received 11/30/17.  [Ex. 64 at ADCM1292142]  These two reports were reviewed on 12/6/17.  [*See* **Ex. 65 filed under seal** (medical records)]

ii.  ▮▮▮▮▮▮▮▮, lithium, received 12/1/17.  [Ex. 64 at ADCM1292142]  This report was not reviewed.  [*See* **Ex. 66 filed under seal** (medical records)]

b.  The December 18, 2017 performance measure report for PMs 46 and 47 (ADCM1291779-92, attached **under seal as Ex. 67**) showed two

(2) instances of noncompliance.  Defendants' Court filing **did not list one (1) instance of noncompliance**.

    i.    █████████, urinalysis, received 12/11/17.  [Ex. 67 at ADCM1291779]  This report was reviewed on 12/18/17.  [*See* **Ex. 68 filed under seal** (medical records)]

c.   The December 19, 2017 performance measure report for PMs 46 and 47 (ADCM1291716-37, attached hereto **under seal as Ex. 69**) documents **seven (7) instances of noncompliance not listed** in Defendants' court filing.  (Plaintiffs' counsel highlighted these entries yellow in Ex. 69).

    i.    █████████, **two tests**: CBC with diff, phosphorus, received 12/13/17.  [Ex. 69 at ADCM1291716, 1291720] These tests were reviewed on 1/16/18.  [*See* **Ex. 70 filed under seal** (medical records)]

    ii.   █████████, urinalysis, received 12/12/17.  [Ex. 69 at ADCM1291716, 1291720]  This report was reviewed on 12/20/17. [*See* **Ex. 71 filed under seal** (medical records)]

    iii.  █████████, **two tests**: microlab, diagnostic panel 2, received 12/12/17.  [Ex. 69 at ADCM1291716, 1291720] These reports were reviewed on 1/2/18.  [*See* **Ex. 72 filed under seal** (medical records)]

    iv.  █████████, men's intake panel, received 12/13/18. [Ex. 69 at ADCM1291716, 1291720]  Although both the performance measure report and the lab result show the results were received on 12/13/17, the provider entry reviewing the

results is curiously dated 12/6/17, **before the results were received**.[9]  [*See* **Ex. 73 filed under seal** (medical records)]

v. ███████████, prothrombin/INR, received 12/13/17.  [Ex. 69 at ADCM1291716, 1291720]  This report was reviewed on 12/20/17.  [*See* **Ex. 74 filed under seal** (medical records)]

36.    Performance Measure 47 requires that "A Medical Provider will communicate the results of the diagnostic study to the inmate upon request and within seven calendar days of the date of the request."  [Doc. 1185-1 at 11]  Defendants reported there were three (3) instances of noncompliance with PM 47 at Tucson in December.  [Doc. 2576-1 at 32]  The documents Plaintiffs reviewed did not indicate any additional instances of noncompliance with PM 47.

37.    Performance Measure 51 requires that "Routine specialty consultations will be scheduled and completed within 60 calendar days of the consultation being requested by the provider."  [Doc. 1185-1 at 11]  Defendants reported there were 11 instances of noncompliance with PM 51 at Tucson in December (Doc. 2576-1 at 38), with one entry being listed as "Unknown," yet providing an ADC number of ███.  [*Id.*]  According to the December 6, 2017 PM 50/51/52 log (ADCM1292159, attached **under seal as Ex. 75**), there was a patient with a very similar ADC number (████████) whose routine specialty request for cardiology was noncompliant.  [Ex. 75]  According to his medical records, however, he had two separate pending consults that were noncompliant:  the request for cardiology and a request for pacemaker.  [*See* **Ex. 76 filed under seal** (medical records)]  According to his medical records, those consults are scheduled but have not been completed.  [*Id.*]

38.    Performance Measure 66 requires that "In an IPC, a Medical Provider encounters [sic] will occur at a minimum every 72 hours."  [Doc. 1185-1 at 11]  Defendants reported there was one (1) instance of noncompliance with PM 66 at Tucson

---

[9]  *See supra* ¶¶ 14(b)(i); 14(c)(i); 14(e)(i); 20(b)(i); 20(b)(iii).

in December.  [Doc. 2576-1 at 46]  The performance measure logs for PM 66 that I could identify were labeled by Counsel for Defendants in the meta-data of the document production as corresponding to December 1, 4, 6, 8, 11, 13, 15, 18, 2017 (the actual logs do not list the date).  The relevant Bates numbers are 1291761-68 (attached **under seal as Ex. 77**).  These documents show that on December 1, 2017, the provider saw 38 patients at 10:00 AM, (Ex. 80 at ADCM1291761); on December 4, 2017, the provider saw 41 patients at 8:00 AM, (*id*. at ADCM1291762); on December 6, 2017, the provider saw 41 patients at 8:00 AM, (*id* at ADCM1291763); on December 8, 2017, the provider saw 41 patients at 10:00 AM, (*id*. at ADCM1291764); on December 11, 2017, the provider saw 38 patients at 8:00 AM, (*id*. at ADCM1291765); on December 13, 2017, the provider saw 38 patients at 8:00 AM, (*id*. at ADCM1291766); on December 15, 2017, the provider saw 21 patients at 10:00 AM, (*id*. at ADCM1291767); on December 18, 2017, the provider saw 38 patients at 8:00 AM, (*id*. at ADCM1291768).

39.     Plaintiffs have previously noted their concerns with the fact that providers at Tucson (and Florence) were entering multiple encounters precisely and simultaneously on the hour, as it raises concerns about the accuracy of the data.  [*See, e.g.*, Doc. 2426-1 at 20-21, 24-25, 28, 32-44]  Mr. Pratt told the Court that "a provider has that ability to go in and say I did my rounds at 8:00 and they may do rounds on several patients and go back and document after the fact," (11/7/17 Tr. at 135:16-18), and confirmed that a provider can "purposely" put in a time for multiple patients, (*id*. at 135:25-136:1, 138:2-6). Nonetheless, Plaintiffs' medical expert Dr. Todd Wilcox has informed us that this runs contrary to electronic health record systems with which he is familiar, and Plaintiffs plan to call him to testify at the February 27, 2018 evidentiary hearing to this point.

I declare under penalty of perjury that the foregoing is true and correct.

Executed February 23, 2018, in Berkeley, California.

   s/ Corene Kendrick
Corene Kendrick

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:     dspecter@prisonlaw.com
           ahardy@prisonlaw.com
           snorman@prisonlaw.com
           ckendrick@prisonlaw.com
           rlomio@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Victoria Lopez (Ill. 6275388)*
**ACLU NATIONAL PRISON
PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@aclu.org
           afettig@aclu.org
           vlopez@aclu.org

*Admitted *pro hac vice*.  Not admitted
 in DC; practice limited to federal
 courts.
**Admitted *pro hac vice*

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, P.L.L.C.**
P. O. Box 91398
Tucson, Arizona 85752
Telephone:  (520) 477-1475
Email:     kirstin@eidenbachlaw.com

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:     kbrody@acluaz.org

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:     dbarr@perkinscoie.com
           agerlicher@perkinscoie.com
           jhgray@perkinscoie.com

Caroline Mitchell (Cal. 143124)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:     cnmitchell@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:     jlwilkes@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm; Desiree
Licci; Joseph Hefner; Joshua Polson; and
Charlotte Wells, on behalf of themselves and
all others similarly situated*

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR
DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:     skader@azdisabilitylaw.org
           adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
Maya Abela (Bar No. 027232)
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone:  (520) 327-9547
Email:
    rdalyrooney@azdisabilitylaw.org
           jrico@azdisabilitylaw.org
           jross@azdisabilitylaw.org
           mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability
Law*

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on February 23, 2018, I electronically transmitted the above

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrants:

5

6

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

7

8

9

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Kevin R. Hanger
Timothy M. Ray
Richard M. Valenti
Jamie D. Guzman
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
khanger@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com

10

11

12

13

14

15

16

17

18

19

20

*Attorneys for Defendants*

21

s/ D. Freouf

22

23

24

25

26

27

28

LEGAL138715229.1                                -47-