WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Antonio Parsons, et al., | No. CV-12-0601-PHX-DKD |
| Plaintiffs, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

Pending before the Court is "Defendants' Motion for Magistrate Judge Duncan to Disqualify Himself and Motion for Reassignment of Case for Evidentiary and Contempt Hearings, or, in the alternative, to Stay Proceedings" ("Motion to Stay"). (Doc. 2642) Defendants argue that the upcoming evidentiary and contempt hearings should be reassigned to another judge or stayed pending the resolution of their separate, contemporaneously filed "Motion to Disqualify Magistrate Judge Duncan from All Further Proceedings" ("Motion to Disqualify"). (Doc. 2641)

Defendants' first request in the Motion to Stay—that another Judge preside over the February 27-28, 2018 hearings—is duplicative of their contemporaneously filed Motion to Disqualify and will be denied on that basis. That Motion to Disqualify will be addressed after an opportunity for full briefing.

In essence, Defendants request a stay of this matter pending resolution of their Motion to Disqualify. But Defendants have provided neither an adequate justification for

the stay request nor did any of the issues alleged in the Motion to Stay arise on an emergent basis. Accordingly, the Motion to Stay is denied.

Standard of Review. Pursuant to Supreme Court precedent, a request for a stay is evaluated using four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008). Not only do Defendants fail to show that they meet any of these four factors, but they do not acknowledge this well-established Ninth Circuit standard in their Motion to Stay and, instead, cite to non-precedential Fifth Circuit case law and an irrelevant Supreme Court case. (Doc. 2642 at 3) For this reason alone, denial of the Motion to Stay is appropriate. The Court will, notwithstanding Defendants' failure to cite the relevant standard, address the merits of their request.

Likelihood of Success. Defendants have not established that their Motion to Disqualify will likely succeed on the merits.

*Background.* At the December 20, 2017 status hearing, the Court stated that a news article from that morning presented alarming allegations. The Court explicitly recognized that there was no foundation for these allegations because they had not been tested in an evidentiary hearing and offered the parties an opportunity to weigh in on the procedure for setting such a hearing. After hearing from both parties, the Court set February 9, 2018, for an evidentiary hearing where both sides would have a full opportunity to inform the Court of their respective positions and to provide evidentiary support for those positions pursuant to the Rules of Evidence. (Doc. 2561 at 11-24) The Court permitted the parties to engage in discovery, including electronically stored information, prior to the evidentiary hearing and, after acknowledging that the discovery effort was "onerous," vacated the February 9, 2018 Evidentiary Hearing and reset it for February 27. (Doc. 2564, Tr. Hr'g January 18, 2018 at 12:1, 16:24) Thus, Defendants

have known about this hearing for two full months and the Court has held four in-person or telephonic hearings about this evidentiary hearing since the December 20, 2017 hearing.

Defendants have been on notice since June 2017 that the Court was considering an OSC why financial sanctions should not be imposed. (Doc. 2124) In October 2017, the Court issued the OSC Order. (Doc. 2373) In October 2017, Defendants filed a motion for reconsideration of the OSC Order that only asked the Court to move the reporting deadline. (Doc. 2396) At the monthly status hearing on November 7, 2017, the Court granted the extension for the December 2017 OSC data and ordered Defendants to provide the January 2018 data at the same time. (Doc. 2456 at 1) Shortly thereafter, Defendants appealed the OSC Order to the Ninth Circuit Court of Appeals, arguing that the Stipulation precludes a contempt sanction and, if it does not, challenged the scope of the contemplated sanction. (Doc. 2444) But despite being on notice of the OSC schedule, Defendants did not request a stay from the Ninth Circuit. (Ninth Circuit Court of Appeals Docket 17-17324) Then, without any prior notice or explanation, Defendants filed an incomplete report for the December 2017 data and, five business days before the deadline, moved for an extension of time to report on the January 2018 data. (Docs. 2583, 2605)

The rationale for the OSC and the possible fine amount has not changed since the Court first raised it eight months ago and the Court has granted Defendants every extension that they have requested for the production of this information.[1] Thus, for 3½ months, Defendants have known the precise scope of, and date for, the OSC hearing.

*Analysis.* First, "[i]t is well established in this circuit that a recusal motion must be made in a timely fashion." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th 1992). In other words, "recusal issues must be raised at the earliest possible

---

[1] On its face, Defendants' request for an extension for the January 2018 data applied to only a subset of the performance measures at issue. (Doc. 2620) A few minutes before filing the instant motion to disqualify, Defendants moved for reconsideration of that Order. (Doc. 2640)

- 3 -

time after the facts are discovered." *First Interstate Bank of Ariz. N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 988 n.8 (9th Cir. 2000). "This is especially true when the late-assertion of recusal comes in situations like the present case, where litigants sit on known information while the court makes intervening rulings and 'complain[s] only after receiving an adverse decision.'" *Melendres v. Arpaio*, 2016 WL 7638469, at *2 (D. Ariz. Dec. 5, 2016) (citing *White v. Nat'l Football League*, 585 F.3d 1129, 1141 (9th Cir. 2009). Indeed, part of Defendants' argument in support of their Motion to Disqualify concerns events that are over seven months old and are only being raised now after Defendants' previous attempts to prevent or limit the February 27 evidentiary hearing were unsuccessful. As detailed above, Defendants have known about both hearings for several months but waited to file the Motion to Stay until after 10 p.m. on Friday, February 23, 2018, one business day before the start of the hearing. Defendants have not explained why they waited until the eve of the evidentiary hearing to seek recusal and have not pointed to any recent documentation, rulings, or developments that could otherwise justify the timing of this motion.

Based on the facts of this matter and pursuant to binding precedent on late-filed recusal requests, Defendants have not established that they are likely to prevail on the merits of their Motion to Disqualify.

Irreparable Injury to Defendants. Defendants have not alleged that they will be irreparably injured absent a stay and the Court cannot see how they might be so injured.[2] Defendants face civil contempt in the OSC hearing and "[m]ere financial injury . . . will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation." *Goldie's Bookstore, Inc. v. Superior Court of the State of Calif*, 739 F.2d 466, 471 (9th Cir. 1984). For the evidentiary hearing, no contempt finding has been made, no sanctions levied, and the Court has not indicated what kind of relief it might

---

[2] Although incurring litigation costs does not constitute an irreparable injury, Defendants have repeatedly informed the Court about the intensive efforts required to prepare for both hearings and they now acknowledge that they are prepared to proceed with both hearings. (Docs. 2588, 2640, 2642 at 3)

- 4 -

order. In the event either hearing results in an adverse finding or order, Defendants may seek appellate relief.

The Court notes that, in different ways, both hearings are predicated on data that Defendants have self-reported and that show Defendants have repeatedly failed to comply with the performance measures that they negotiated and agreed to satisfy. As the Court told Defendant Director Ryan, "you have the complete control" to "get me out of this business." (Doc. 2244 at 38:6, 38:15-16) In other words, the remedy to the underlying matter—compliance—lies in Defendants' hands.

<u>Injury to Plaintiffs</u>. The Court concludes that a stay of either hearing would substantially injure Plaintiffs.

The OSC hearing is "intended to spur Defendants' compliance with the performance measures that they have contractually agreed to perform." (Doc. 2373 at 1-2) Defendants have self-reported "pervasive and intractable failures to comply with" certain performance measures at certain prisons that implicate life-and-death matters for the Plaintiffs, such as the uninterrupted provision of prescribed medications, care for inmates who were in a hospital/ER or who are in the prison's infirmary, inmates who have abnormal values in a diagnostic report, inmates who need urgent and routine specialty consultations, and inmates with chronic diseases.[3] (Doc. 2373 at 1:15, 3-4) During the month of December 2017, Defendants self-reported over 1,000 instances when they failed to comply with this subset of PM/locations. (Docs. 2576, 2595) The importance and scope of the OSC hearing weighs mightily against delay.

The evidentiary hearing was set to investigate allegations that Defendants had intentionally failed to provide Plaintiffs with access to the healthcare that their providers had prescribed. Again, the importance and scope of the evidentiary hearing means that a delay would deleteriously impact Plaintiffs.

---

[3] By way of contrast, other performance measures such as PM 9 ("SOAPE format will be utilized in the medical record for encounters.") or PM 28 ("Every medical provider will undergo peer reviews annually with reviews and recommended actions documented.") address more administrative requirements. (Doc. 1185-1 at 8, 9)

- 5 -

Public Interest. The State agreed to the Stipulation over three years ago, has expended significant resources on this matter, and has fallen short on meeting its own benchmarks. The public interest in the OSC hearing and the evidentiary hearing—both aimed at examining whether the State of Arizona is meeting the basic healthcare needs for the 30,000-plus inmates in its care—seems self-evident.

**IT IS ORDERED** denying Defendants' Motion to Stay ("Defendants' Motion for Magistrate Judge Duncan to Disqualify Himself and Motion for Reassignment of Case for Evidentiary and Contempt Hearings, or, in the alternative, to Stay Proceedings") (Doc. 2642). Defendants' Motion to Disqualify ("Motion to Disqualify Magistrate Judge Duncan from All Further Proceedings") will be considered after briefing is complete.

Dated this 26th day of February, 2018.

_____
David K. Duncan
United States Magistrate Judge