Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorney General
15 South 15th Avenue
Phoenix, Arizona 85007
Telephone: (602) 542-1645
Fax: (602) 542-3393
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Hesman, Bar No. 028874
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
Timothy M. Ray, Bar No. 029191
Richard M. Valenti, Bar No. 031533
Jamie D. Guzman, Bar No. 022095
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1696
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
khanger@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | NO. 2:12-cv-00601-DKD <br><br><br> **DEFENDANTS' RESPONSE TO THE DECLARATION OF CORENE KENDRICK (DOC. 2633)** |

1    Defendants, Charles Ryan and Richard Pratt, through counsel, submit their

2    Response to the Declaration of Corene Kendrick ("Declaration") (Doc. 2633). Defendants

3    did not previously respond to the Declaration because: (1) it is not a motion to which

4    standard briefing deadlines apply, (2) it does not actually request any relief that would

5    require a response from Defendants before it could be granted, and (3) Defendants were

6    not otherwise ordered to provide a response.

7    Moreover, the Declaration was filed in advance of the February 28, 2018 status

8    hearing, but without first giving Defendants an opportunity to review the alleged errors

9    and try to come to a resolution with Plaintiffs. The Declaration was then not addressed at

10    that hearing, and Plaintiffs made no further efforts to discuss the allegations in the

11    Declaration with Defendants.

12    The Declaration was not addressed until the March 14, 2018 status hearing, at

13    which time it was decided that the Declaration and its allegation that Defendants failed to

14    include 420 instances of non-compliance in their February 2018 filings regarding

15    December 2017 compliance with the Order to Show Cause ("OSC") (Doc. 2373) would

16    be addressed at the telephonic status hearing held on Monday, March 19, 2018. There,

17    Defendants were asked for the first time—by either Plaintiffs or the Court—for their

18    response to the allegations raised in the Declaration.

19    After recognizing that Defendants would not have a meaningful opportunity to

20    investigate the 77 exhibits—consisting of hundreds of pages—attached to the Declaration,

21    and review the medical files for the 420 inmates/instances of non-compliance listed in the

22    Declaration, by Wednesday, March 21, 2018, the Court ordered Defendants to provide a

23    substantive response to the Declaration by close of business on Friday, March 23, 2018—

24    only four days after the hearing, and with only an additional two days beyond the date the

25    Court recognized as not providing Defendants a "meaningful opportunity" to respond. The

26    Court rejected Defendants' objection that four days still did not provide sufficient time for

27    Defendants to conduct the investigation necessary to fully and properly respond to the

28    allegations in the Declaration, stating that "these are your documents." (Exhibit 1,

1

Transcript of March 19, 2018 Status Hearing, 25:8-26:14.) Defendants therefore provide the following response.

## I.     LEGAL ARGUMENT

### A.     Plaintiffs' Assumptions Regarding The Reports Attached To The Declaration Are Incorrect.

Defendants object to the improper burden-shifting that has occurred here, in which Plaintiffs have been permitted to list out 420 inmates/instances of non-compliance with little to no support for their claims that these are instances that should have been included in Defendants' February 2018 filings, and based on little more than assumption and speculation. Plaintiffs assume that the various "reports," "rosters," and "logs" (collectively, "reports") attached to the Declaration are tools used to measure compliance, or lack thereof, with the performance measures that are subject to the OSC, with no context or explanation from which the Court can determine whether their assumptions are correct.

These reports, however, are not compliance monitoring tools, but are intended to allow the facility Wardens and Facility Health Administrators to identify and review potential issues in the delivery of health care at each facility, to determine whether security and operational issues may positively or negatively impact the delivery of care, and to ensure timely provision of health care to inmates. (Exhibit 2, Declaration of Richard Pratt, ¶19; Exhibit 3, Declaration of Benjamin Schmid, ¶¶4-6; Exhibit 4, Declaration of Spencer Sego, ¶¶4-6.) They are not intended, and are not used, by either ADC or Corizon to monitor Corizon's compliance with either the OSC or the Stipulation. (Ex. 2 at ¶¶19; Ex. 3 at ¶6; Ex. 4 at ¶6.)

### B.     Defendants Cannot Provide True Automated, Accurate "Real-Time" Reporting Data Within The Deadlines Imposed By The Court.

Automated, true "real-time" reporting data is not feasible under the current health services contract structure and Stipulation. (Exhibit 5, Declaration of Justin Thomas Scalise, ¶5; Ex. 3 at ¶7.) The Stipulation and standards set forth therein by design require the use of manual auditing methodology as provided for in the HSCMB's Monitoring

1  Guide. (Ex. 5 at ¶5.) Continuous manual auditing and review of each and every health

2  care encounter would be required to provide accurate "real-time" instances of non-

3  compliance. (Id.)

4        For example, PM 11 requires the administration of newly prescribed medication

5  within a certain time period. (Ex. 3 at ¶7.) Many people are involved in carrying this out,

6  including: the doctor who prescribes the medication; the nurse who enters the prescription

7  and forwards it to the pharmacy; individuals at the pharmacy who fulfill the medication

8  and ship it to the site; the inventory control coordinator who receives the medication, logs

9  it, and prepares it for delivery to the inmate; and the nurse who ultimately administers the

10  medications to the inmate and records it in the medical records. (Id.) This process occurs

11  over the course of many hours—and potentially days—and a report of this process is only

12  a snapshot in time that very quickly becomes inaccurate as the medication reaches the

13  next stage of the process. (Id.) As a result, a report run at 3:00 p.m. on a particular day

14  will be out of date by 4:00 p.m. that same day, as it will not have captured events

15  occurring in that hour. (Ex. 5 at ¶5.) Constant review of each and every health care

16  encounter would be required to provide true "real-time" data. (Id.)

17        Moreover, as stated in Defendants' Motion to Extend Time to Report January 2018

18  Data Regarding Compliance With Certain Performance Measures Pursuant to Order to

19  Show Cause (Doc. 2605), PMs 39, 44, 46, 52, and 54 involve subjective elements that

20  cannot be determined by simply running an automated report. (Ex. 5 at ¶6.)

21        For example, PM 44 requires that "Inmates returning from an inpatient hospital

22  stay or ER transport with discharge recommendations from the hospital shall have the

23  hospital's treatment recommendations reviewed and acted upon by a medical provider

24  within 24 hours." (Id. at ¶7.) Although Corizon can run a report to identify instances in

25  which a provider did or did not note in the electronic medical record ("EMR") that they

26  reviewed an inmate's hospital treatment recommendations within 24 hours after the

27  inmate returned from the hospital, no report can determine whether the recommendations

28  were "acted upon" by the provider, as this is a subjective element that is not susceptible to

1    identification by an automated computer program or other algorithm. (Id.) Rather, manual

2    review of the instances in which a provider noted in the EMR that they reviewed the

3    treatment recommendations is required to determine whether the provider also "acted

4    upon" the recommendations. (Id.)

5         Similarly, PM 54 requires that "Chronic disease inmates will be seen by the

6    provider as specified in the inmate's treatment plan, no [more] than every 180 days unless

7    the provider documents a reason why a longer time frame can be in place." (Id. at ¶8.) The

8    Stipulation defines a "chronic disease" as one of 19 diseases or categories of diseases.

9    (Id.) Some, such as cancer, require an inmate to be seen every 30 days. (Id.) Others, such

10   as HIV/AIDS, require an inmate to be seen every 90 days. (Id.) Still others, such as heart

11   disease, require an inmate to be seen every 180 days. (Id.)

12        To provide the "real-time" reporting of this particular performance measure it has

13   provided to date, Corizon starts with the source document identified in the HSCMB

14   Monitoring Guide. (Id. at ¶9.) For December 2017, the source document included 8,160

15   potentially eligible files. (Id.) After filtering out any conditions that were noted in the

16   EMR as "chronic" but that are not one of the 19 conditions/categories identified in the

17   Stipulation, any inmates that were "temporarily absent" (i.e., had been released from

18   prison and subsequently re-incarcerated) between their last two documented chronic care

19   encounters, and any inactive files per the AIMS report, Corizon was left with 4,428

20   eligible files. (Id.) Corizon then compiled a "final" list of 440 instances with a number of

21   days between encounters greater than 180 days, although this list would require further

22   review to determine whether any of the files included notes from a provider documenting

23   a reason why a period longer than 180 days is acceptable. (Id. at ¶10.)

24        As stated in Defendants' Motion for Reconsideration of Court Order (Doc. 2640),

25   even those performance measures subject to the OSC that do not contain similar

26   subjective elements (i.e., PMs 11, 35, 47, 50, 51, and 66) require more than simply

27   running an automated report in order to identify instances of non-compliance. (Id. at ¶11.)

28   Pentaho, Corizon's business intelligence software, pulls information from eOMIS (i.e., the

4

1    EMR). (Id. at ¶12.) Medical records are, by their nature, highly complex, and involve both

2    objective and subjective elements, the latter of which are difficult to assess via an

3    automated computer program or other form of algorithm. (Id.)

4         The difficulty in pulling such information is further compounded by variations in

5    the manner in which information is entered into the EMR. (Id. at ¶13.) For example, again

6    using PM 54 as an example, if a provider sees an inmate for the inmate's chronic

7    condition, but does not check the box in the EMR to document the encounter as a chronic

8    care encounter, a report run to calculate days between chronic care encounters would not

9    include the most recent encounter, making it potentially appear as an instance of non-

10    compliance even though the inmate may have been timely seen for their chronic

11    condition. (Id.)

12         To try and mitigate these issues and make the lists it provides to ADC for filing

13    with the Court as accurate as possible within the timeframes imposed by the Court,

14    Corizon manually compares the reports it generates for the 11 performance measures

15    subject to the OSC to ADC's Health Services Contract Monitoring Bureau's ("HSCMB")

16    monitoring outcomes for those same performance measures. (Id. at ¶14.) Unfortunately,

17    without manually reviewing each and every eligible medical file for each performance

18    measure, there is no way to obtain 100% accuracy, which cannot be done within the

19    deadlines imposed by the Court. (Id.)

20        **C.    Plaintiffs' Allegations Regarding The 50 Allegedly Unreported**
21               **Instances Of Non-Compliance Contain Inaccuracies.**

22         Plaintiffs only specifically identified 50 allegedly unreported instances of non-

23    compliance. Those 50 were the only instances listed in the Declaration that were

24    supported by any sort of evidence—namely, excerpts from inmate medical records

25    purporting to show that reviews of test results were not timely completed, outside

26    specialty consults were not timely completed, provider referrals were not timely

27    performed, etc.

28

1   Defendants have not reviewed the files of the 370 inmates for whom no particular

2   instances of non-compliance were alleged, and for which no supporting evidence was

3   produced. (Exhibit 6, Declaration of Vanessa Headstream, ¶5.) Sending Defendants on a

4   wild goose chase to try and guess which treatment instances in 370 files are the ones to

5   which the Declaration was intended to refer would impose a significant and undue burden

6   on Defendants, especially where Plaintiffs have provided no support for the vast majority

7   of their allegations. (Exhibit 2 at ¶¶13-18; Ex. 6 at ¶5.)

8   At a conservative estimate of 15 minutes per file, it would take a contract monitor

9   working full time (i.e., eight hours/day, five days/week) on nothing but the review 13.125

10  days to review all 420 inmate files—over two and a half working weeks. (Ex. 2 at ¶14.)

11  This assumes, however, that the issue for which each file is being reviewed is easily

12  identifiable, which is not the case with the 370 instances listed in the Declaration for

13  which no support was provided. (Id. at ¶15.) A contract monitor reviewing those 370 files

14  would have to conduct a more extensive review of each file in order to (1) locate records

15  that are potentially applicable to the performance measure and facility for which the

16  inmate is listed in the Declaration, and (2) determine whether the inmate/instance should

17  have been included in Defendants' February 2018 filings as non-compliant. (Id. at ¶16.)

18  It is impossible to estimate how much additional time would be required for each

19  of the 370 files, as factors such as the size of the file and the number of potentially

20  applicable treatment instances in each file varies from inmate to inmate. (Id. at ¶17.) It is

21  not unreasonable to assume, however, that the total review of all 420 alleged instances of

22  undisclosed non-compliance would take significantly longer than 13.125 days under these

23  circumstances. (Id.) Additionally, a compliance monitor tasked with reviewing these files

24  would be unable to perform his or her other monitoring duties, such that the HSCMB

25  would be unable to assign more than one contract monitor to the task in order to avoid

26  disrupting the normal functioning of the HSCMB of monitoring Corizon's compliance

27  with the health services contract and provision of health care to inmates. (Id. at ¶18.)

28

6

1    Defendants have reviewed the 50 inmate files for which Plaintiffs provided at least

2    some evidentiary support for their claim that they should have been reported as instances

3    of non-compliance, and have identified several errors in the Declaration's assumptions.

4    (Ex. 6 at ¶¶5-24.)

5            **1.    Inmate ▇▇▇, #▇▇▇**

6            Plaintiffs claim Inmate ▇▇▇, #▇▇▇, was only listed once on Defendants' court

7    filing regarding instances of non-compliance with PM 46 at ASPC-Eyman, but should

8    have been listed twice, for both his urinalysis and his diagnostic panel results. (Id. at ¶6.)

9    She also claims the results were noted as being reviewed before they were noted as being

10   received. (Id.) These claims are incorrect. (Id.)

11           Careful review of eOMIS shows that Inmate ▇▇▇ diagnostic panel results were

12   actually received on December 1, 2017, and reviewed by the provider on December 3,

13   2017, which is within the timeframe specified by PM 46, and therefore compliant.

| Status | | Last Updated | | |
|---|---|---|---|---|
| **As of Date** | **Status** | **User** | **Date** | **Time** |
| 12/04/2017 | Results Received | EOIR800 | 12/04/2017 | 14:15:08 |
| 12/03/2017 | Inmate Notified Of Results | ▇▇▇ | 12/03/2017 | 19:14:27 |
| 12/01/2017 | Results Received | EOIR800 | 12/01/2017 | 14:30:25 |

(Id. at ¶7.)

      The entry showing the results were received on December 4, 2017 is a duplicate

entry, most likely caused the lab sending the results twice, as occasionally happens. (Id. at

¶8.) Exhibit 4 to the Declaration shows that the "Initial Report Date" for the diagnostic

panel results was December 1, 2017.

Lab Test Site:                                                              Vendor:

       Results
       Received                                                            Time:
       Date:

Test Results:

                          BIOREFERENCE LABS
                PAGE: 1

                                              ▇▇▇  ▇▇▇
                                                 ADC#: ▇▇▇
                          SEX: M    D/O/B: 02/02/1964
                Unknown
                COLLECTION DATE: 11/30/2017 07:00
                RECEIVED DATE: 12/01/2017 00:13

7

INITIAL REPORT DATE: 12/01/2017 07:06
ACCESSION NO.: 971216046

(Id.) The same thing appears to have happened with the other inmates discussed below, as well. (Id. at ¶9.)

eOMIS shows no order for a urinalysis test for Inmate ████. (Id. at ¶10.) Careful review of Exhibit 2 to the Declaration shows that the urinalysis test was ordered for the inmate above Inmate ████. (Id.) Inmate ████ did have a second test, however, for valproic acid. (Id.) The results for that test, like the results for his diagnostic panel, were received on December 1, 2017, and reviewed by the provider on December 3, 2017, which is within the timeframe specified by PM 46, and therefore compliant.

| Status | | Last Updated | | |
|---|---|---|---|---|
| As of Date | Status | User | Date | Time |
| 12/04/2017 | Results Received | EOIR800 | 12/04/2017 | 14:15:12 |
| 12/03/2017 | Inmate Notified Of Results | ██████ | 12/03/2017 | 19:15:33 |
| 12/01/2017 | Results Received | EOIR800 | 12/01/2017 | 14:30:26 |

(Id.)

**2.      Inmate ██████████, #██████**

Plaintiffs claim Inmate ██████████, #██████, was only listed once on Defendants' court filing regarding instances of non-compliance with PM 46 at ASPC-Eyman, but should have been listed twice, for both his urinalysis and his diagnostic panel results. (Id. at ¶11.) She also claims the results were noted as being reviewed before they were noted as being received. (Id.) These claims are incorrect. (Id.)

Careful review of eOMIS shows that Inmate ████████████ results were actually received on December 1, 2017, and reviewed by the provider on December 3, 2017, which is within the timeframe specified by PM 46, and therefore compliant.

| Status | | Last Updated | | |
|---|---|---|---|---|
| As of Date | Status | User | Date | Time |
| 12/04/2017 | Results Received | EOIR800 | 12/04/2017 | 14:15:14 |
| 12/03/2017 | Inmate Notified Of Results | ██████ | 12/03/2017 | 19:11:07 |
| 12/01/2017 | Results Received | EOIR800 | 12/01/2017 | 14:30:30 |
| Status | | Last Updated | | |

8

| As of Date | Status | User | Date | Time |
|---|---|---|---|---|
| 12/04/2017 | Results Received | EOIR800 | 12/04/2017 | 14:15:13 |
| 12/03/2017 | Inmate Notified Of Results | ████ | 12/03/2017 | 19:10:09 |
| 12/01/2017 | Results Received | EOIR800 | 12/01/2017 | 14:30:29 |

(Id. at ¶12.)

### 3.   Inmate ████, #████

Plaintiffs claim Inmate ████ #████, was not listed on Defendants' court filing regarding instances of non-compliance with PM 46 at ASPC-Eyman, but should have been. (Id. at ¶13.) She also claims the results were noted as being reviewed before they were noted as being received. (Id.) These claims are incorrect. (Id.)

Careful review of eOMIS shows that Inmate ████ results were actually received on December 8, 2017 at 5:30 a.m., and reviewed by the provider on December 8, 2017 at 12:52 p.m., which is within the timeframe specified by PM 46, and therefore compliant.

| Status | | Last Updated | | |
|---|---|---|---|---|
| As of Date | Status | User | Date | Time |
| 12/12/2017 | Results Received | EOIR800 | 12/12/2017 | 12:00:14 |
| 12/08/2017 | Inmate Notified Of Results | ████ | 12/08/2017 | 12:52:36 |
| 12/08/2017 | Results Received | EOIR800 | 12/08/2017 | 05:30:07 |

(Id. at ¶14.)

### 4.   Inmate ████ #████

Plaintiffs claim Inmate ████, #████, was not listed on Defendants' court filing regarding instances of non-compliance with PM 46 at ASPC-Florence, but should have been. (Id. at ¶15.) She also claims the results were noted as being reviewed before they were noted as being received. (Id.) These claims are incorrect. (Id.)

Careful review of eOMIS shows that Inmate ████ results were actually received on December 9, 2017, and reviewed by the provider on December 11, 2017, which is within the timeframe specified by PM 46, and therefore compliant.

| Status | | Last Updated | | |
|---|---|---|---|---|
| As of Date | Status | User | Date | Time |
| 12/11/2017 | Results Received | EOIR800 | 12/11/2017 | 13:00:10 |

| Status | | Last Updated | | |
|---|---|---|---|---|
| **As of Date** | **Status** | **User** | **Date** | **Time** |
| 12/11/2017 | Inmate Notified Of Results | ▮▮▮▮▮▮▮▮ | 12/11/2017 | 08:01:17 |
| 12/09/2017 | Results Received | EOIR800 | 12/09/2017 | 04:45:14 |

(Id. at ¶16.)

     5.     **Inmate** ▮▮▮▮ **, #** ▮▮▮▮

    Plaintiffs claim Inmate ▮▮▮▮, #▮▮▮▮, was not listed on Defendants' court filing regarding instances of non-compliance with PM 46 at ASPC- Florence, but should have been listed twice, for both his PTT and his urine culture. (Id. at ¶17.) She also claims the results were noted as being reviewed before they were noted as being received. (Id.) These claims are incorrect. (Id.)

    Careful review of eOMIS shows that Inmate ▮▮▮▮ results were actually received on December 6, 2017, and reviewed by the provider on December 7, 2017, which is within the timeframe specified by PM 46, and therefore compliant.

| Status | | Last Updated | | |
|---|---|---|---|---|
| **As of Date** | **Status** | **User** | **Date** | **Time** |
| 12/08/2017 | Results Received | EOIR800 | 12/08/2017 | 13:00:27 |
| 12/07/2017 | Inmate Notified Of Results | ▮▮▮▮ | 12/07/2017 | 18:46:53 |
| 12/06/2017 | Results Received | EOIR800 | 12/06/2017 | 15:30:13 |

| Status | | Last Updated | | |
|---|---|---|---|---|
| **As of Date** | **Status** | **User** | **Date** | **Time** |
| 12/08/2017 | Results Received | EOIR800 | 12/08/2017 | 13:00:21 |
| 12/07/2017 | Inmate Notified Of Results | ▮▮▮▮ | 12/07/2017 | 18:45:00 |
| 12/06/2017 | Results Received | EOIR800 | 12/06/2017 | 15:30:10 |

(Id. at ¶18.)

     6.     **Inmate** ▮▮▮ **,** ▮▮▮▮▮

    Plaintiffs claim Inmate ▮▮▮, #▮▮▮▮, was not listed on Defendants' court filing regarding instances of non-compliance with PM 50 at ASPC- Florence, but should have been. (Id. at ¶19.) This claim is incorrect. (Id.) Careful review of eOMIS shows that the request for Inmate Hall's urgent orthopedics consult was submitted on October 25, 2017,

10

and that the consult was completed on November 10, 2018, which is within the timeframe specified by PM 50, and therefore compliant. (Id. at ¶20.)

**7.    Inmate ██████, ██████**

Plaintiffs claim Inmate ██████, #██████, was not listed on Defendants' court filing regarding instances of non-compliance with PM 46 at ASPC-Florence, but should have been. (Id. at ¶21.) This claim is incorrect. (Id.)

Careful review of eOMIS shows that Inmate ██████ urinalysis results were received on October 21, 2017, but that Inmate ██████ was transferred out of the facility to the hospital on October 23, 2017, before the time to review his results pursuant to PM 46 had expired. (Id. at ¶22.) Inmate ██████ returned to the facility on November 6, 2017. (Id.) Because of this transfer, Inmate ██████ chart would be excluded from HSCMB's audit. (Id.)

**8.    Inmate ██████, #██████**

Plaintiffs claim Inmate ██████, ██████, was not listed on Defendants' court filing regarding instances of non-compliance with PM 50 at ASPC-Florence, but should have been. (Id. at ¶23.)  This claim is incorrect. (Id.)

Careful review of eOMIS shows that the request for Inmate ██████ urgent urology consult was submitted on October 5, 2017. (Id. at ¶24.) On November 8, 2017, urology required additional testing and clearance from medical/pulmonology prior to the urology appointment. (Id.) Inmate ██████ urology consult should have been cancelled with this reasoning stated and resubmitted after the requested testing was complete, which occurred on February 1, 2018. (Id.)

**9.    Inmate ██████, # ██████**

Plaintiffs claim Inmate ██████, # ██████, was not listed on Defendants' court filing regarding instances of non-compliance with PM 46 at ASPC-Tucson, but should have been. (Id. at ¶25.) This claim is incorrect. (Id.)

Careful review of eOMIS shows that Inmate ██████ results were actually received on December 5, 2017, and reviewed by the provider on December 6, 2017, which

11

is within the timeframe specified by PM 46, and therefore compliant.

| Status | | Last Updated | | |
|---|---|---|---|---|
| As of Date | Status | User | Date | Time |
| 12/13/2017 | Results Received | EOIR800 | 12/13/2017 | 15:45:14 |
| 12/06/2017 | Inmate Notified Of Results | ███████████ | 12/06/2017 | 09:45:25 |
| 12/05/2017 | Results Received | EOIR800 | 12/05/2017 | 10:30:29 |

(Id. at ¶26.)

   10. Inmate ████████, #████████

  Plaintiffs claim Inmate ███████, ████████, was not listed on Defendants' court filing regarding instances of non-compliance with PM 46 at ASPC-Tucson, but should have been listed twice, for both a CBC and a phosphorous test. (Id. at ¶27.) This claim is incorrect. (Id.)

  Careful review of eOMIS shows that Inmate ████████ results were received on December 13, 2017, but that Inmate ███████ was transferred out of the facility to the hospital on December 18, 2017, before the last day to review his results pursuant to PM 46 ended. (Id. at ¶28.) Inmate ███████ died on December 21, 2017. (Id.) Because of his transfer and death, Inmate ███████ chart would be excluded from HSCMB's audit. (Id.) The review date of January 16, 2018 in Inmate ███████ chart is not relevant. (Id.)

   11. Inmate █████, #████████

  Plaintiffs claim Inmate █████, #████████, was not listed on Defendants' court filing regarding instances of non-compliance with PM 46 at ASPC-Tucson, but should have been listed twice, for both a microalbumin test  and diagnostics panel. (Id. at ¶29.) This claim is incorrect. (Id.)

  Careful review of eOMIS shows that the microalbumin test was not performed because no specimen was received, so this test should not be counted as an instance of non-compliance. (Id. at ¶30.) As set forth below, however, the review of Inmate ███████ diagnostics panel results was non-compliant. (Id.)

///

///

12

### 12.   Other Errors

Defendants identified other errors not dependent on review of the medical files, as well. Plaintiffs claim Inmate ███, ███, was listed once on Defendants' filing, where he should have been listed twice, but Inmate ███ was not listed on Defendants' filing for PM 46 at ASPC-Eyman at all, and, as demonstrated above, should not have been for the two instances cited in the Declaration. (Doc. 2576.) Plaintiffs claim Inmate ███, ███, should have been listed twice, but was not listed at all, but Inmate ███ was listed once on Defendants' February 5, 2018 filing on the first page of the list for PM 46 at Eyman. (Id.) Similarly, Plaintiffs claim Inmate ███, #███, should have been listed twice, but was not listed at all, but Inmate ███ was listed once on Defendants' February 5, 2018 filing on the third page of the list for PM 46 at Eyman. (Id.) Plaintiffs also claim Inmate ███, #███, should have been listed three times, but was not listed at all, but Inmate ███ was listed twice on Defendants' February 5, 2018 filing on the second page of the list for PM 46 at Eyman. (Id.)

Plaintiffs claim Inmate ███, #███, should have been listed for PM 54 at ASPC-Eyman—he was, on the fifth page of Defendants' February 14, 2018 filing for PM 54 at Eyman. (Doc. #2595.) Plaintiffs claim Inmate ███, ███, should have been listed for PM 46 at Florence—although he was not listed for PM 46 at Florence, he was listed for PM 46 at Eyman. (Doc. 2576.) While it is not clear why Inmate ███ was not listed under the correct facility, it is clear he was not unreported. Plaintiffs claim Inmate ███, ███, should have been listed twice, but was only listed once, but Inmate ███ is listed was listed twice on Defendants' February 5, 2018 filing on the second page of the list for PM 46 at Florence. (Id.) Plaintiffs claim Inmate ███, ███, should have been listed for PM 50 at Florence—which he was, on the sole page of the list for PM 50 at Florence. (Id.)

### 13.   Apparent Omissions

Based on Defendants' review of the 50 inmate files for which Plaintiffs provided at least some evidentiary support for their claim that they should have been reported as

13

1   instances of non-compliance, the following instances appear to be non-compliant:

2   ***PM 46 at Eyman***

3   | ████████████ | ██████████ | ███████████ |
|---|---|---|
4   | █████████ | ███████████████ | ██████████████████ |
5   | ██████████ | ████████████████ | ███████████ |
6   | ██████████████████ | ██████████ | █████████ |
7   | ██████████ | ████████████████ | ███████████ |
8   | ███████████ | █████████████ | |

9   ***PM 46 at Florence***

10  | █████████ | ██████████ | █████████████ |
|---|---|---|
11  | ██████████ | ██████████ | ██████████ |
12  | █████████████████ | ██████████ | ██████████ |

13  ***PM 39 at Lewis***

14  | ██████████ | ██████████ | ████████████ |
|---|---|---|
15  | █████████ | █████████ | |

16  ***PM 46 at Tucson***

17  | ███████████ | ██████████ | █████████ |
|---|---|---|
18  | ███████████ | █████████ | ██████████ |

19  ***PM 51 at Tucson***

20  | ███████████ (2 consults) | | |
|---|---|---|

21  (Ex. 6 at ¶31.)

22      These instances were not identified by HSCMB during its monitoring of the

23  performance measures subject to the OSC, as HSCMB does not review every eligible file

24  for each performance measure, but performs a "spot check" by auditing randomly-selected

25  files for each performance measure pursuant to the procedures outlined in the HSCMB

27      [1] Ms. Kendrick's Declaration incorrectly stated that Inmate █████ inmate number

28  is ██████.

14

1   Monitoring Guide. (Id. at ¶32.) All instances of non-compliance identified by HSCMB

2   during its monitoring review were included in the lists filed with the Court on February 5,

3   2018 and February 14, 2018. (Id.)

4   **II.    CONCLUSION**

5          This exercise demonstrates the difficulties inherent in providing "real-time" data

6   regarding compliance with the performance measures subject to the OSC. These

7   difficulties are particularly troublesome where, as argued in Defendants' Motion for

8   Reconsideration of Court Order (Doc. 2373) regarding the OSC, nothing in the Stipulation

9   requires 100% monitoring and compliance with the performance measures outlined in the

10  Stipulation. (Doc. 2396.) To the extent the Court construes the Declaration as a motion or

11  other request for relief, it should be denied.

12          DATED this 23rd day of March 2018.

13                                                    STRUCK LOVE BOJANOWSKI & ACEDO, PLC

14

15                                                    By /s/Daniel P. Struck
                                                          Daniel P. Struck
16                                                        Rachel Love
                                                          Timothy J. Bojanowski
17                                                        Nicholas D. Acedo
                                                          Ashlee B. Hesman
18                                                        Jacob B. Lee
                                                          Kevin R. Hanger
19                                                        Timothy M. Ray
                                                          Richard M. Valenti
20                                                        Jamie D. Guzman
                                                          3100 West Ray Road, Suite 300
21                                                        Chandler, Arizona 85226

22                                                        Arizona Attorney General Mark Brnovich
                                                          Office of the Attorney General
23                                                        Michael E. Gottfried
                                                          Lucy M. Rand
24                                                        Assistant Attorneys General
                                                          15 South 15th Avenue
25                                                        Phoenix, Arizona 85007

26                                                        *Attorneys for Defendants*

27

28

                                                    15

**CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alison Hardy:          ahardy@prisonlaw.com

Amelia M. Gerlicher:   agerlicher@perkinscoie.com;docketPHX@perkinscoie.com,
                       kleach@perkinscoie.com

Amy B. Fettig:         afettig@npp-aclu.org

Asim Dietrich:         adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org;
                       phxadmin@azdisabilitylaw.org

Caroline N. Mitchell:  cnmitchell@jonesday.com; mlandsborough@jonesday.com;
                       nbreen@jonesday.com

Corene T. Kendrick:    ckendrick@prisonlaw.com; edegraff@prisonlaw.com

Daniel Clayton Barr:   DBarr@perkinscoie.com; docketphx@perkinscoie.com;
                       sneilson@perkinscoie.com

David Cyrus Fathi:     dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

Donald Specter:        dspecter@prisonlaw.com

Jessica Pari Jansepar Ross:  jross@azdisabilitylaw.org

John Howard Gray:      jhgray@perkinscoie.com; slawson@perkinscoie.com

John Laurens Wilkes:   jlwilkes@jonesday.com, dkkerr@jonesday.com

Jose de Jesus Rico:    jrico@azdisabilitylaw.org

Kathleen E. Brody      kbrody@acluaz.org

Kirstin T. Eidenbach:  kirstin@eidenbachlaw.com

Maya Abela            mabela@azdisabilitylaw.org

Rose Daly-Rooney:      rdalyrooney@azdisabilitylaw.org

Sara Norman:          snorman@prisonlaw.com

Sarah Eve Kader:       skader@azdisabilitylaw.org;mlauritzen@azdisabilitylaw.org;
                       rstarling@azdisabilitylaw.org

Rita K. Lomio:         rlomio@prisonlaw.com

Victoria Lopez:        vlopez@aclu.org

16

1

2        I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

3

4        N/A

5                                          /s/Daniel P. Struck

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17