**EXHIBIT 5**

**EXHIBIT 5**

Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorney General
15 South 15th Avenue
Phoenix, Arizona 85007
Telephone: (602) 542-1645
Fax: (602) 542-3393
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Hesman, Bar No. 028874
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
Timothy M. Ray, Bar No. 029191
Richard M. Valenti, Bar No. 031533
Jamie D. Guzman, Bar No. 022095
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1696
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
khanger@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DKD<br><br>**DECLARATION OF JUSTIN THOMAS SCALISE** |

I, **JUSTIN THOMAS SCALISE**, make the following Declaration:

1. I am over the age of 18 years and have personal knowledge of and am competent to testify to the matters set forth in this Declaration. I make this Declaration in support of Defendants' Response to the Declaration of Corene Kendrick (Doc. 2633).

2. I am the Vice President for Contract Compliance for Corizon Health, Inc. ("Corizon"). I have worked for Corizon since September 4, 2017, and have held the position of Vice President for Contract Compliance since the aforesaid date.

3. As Vice President for Contract Compliance, I am responsible for overseeing Corizon's compliance with its health services contract with the Arizona Department of Corrections ("ADC").

4. I am familiar with the Court's October 10, 2017 Order to Show Cause ("OSC"), as well as Corizon's procedures for providing the "real-time" data required by the OSC for the 11 health care performance measures ("PMs") subject to the OSC.

5. Automated, true "real-time" reporting is not feasible under the current health services contract structure and Stipulation. The Stipulation and the standards as set forth therein, by design require the use of a manual auditing methodology as provided for in the Health Services Contract Monitoring Bureau's Monitoring Guide. Continuous manual auditing and review of each and every health care encounter would be required to provide accurate "real-time" instances of non-compliance.

6. Moreover, as stated in Defendants' Motion to Extend Time to Report January 2018 Data Regarding Compliance With Certain Performance Measures Pursuant to Order to Show Cause (Doc. 2605), PMs 39, 44, 46, 52, and 54 involve subjective elements that cannot be determined by simply running an automated report.

7. For example, PM 44 requires that "Inmates returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital shall have the hospital's treatment recommendations reviewed and acted upon by a medical provider within 24 hours." (Doc. 1185-1.) Although Corizon can run a report to identify instances in which a provider did or did not note in the electronic medical record ("EMR") that they

reviewed an inmate's hospital treatment recommendations within 24 hours after the inmate returned from the hospital, no report can determine whether the recommendations were "acted upon" by the provider, as this is a subjective element that is not susceptible to identification by an automated computer program or other algorithm. Rather, manual review of the instances in which a provider noted in the EMR that they reviewed the treatment recommendations is required to determine whether the provider also "acted upon" the recommendations.

8. Similarly, PM 54 requires that "Chronic disease inmates will be seen by the provider as specified in the inmate's treatment plan, no [more] than every 180 days unless the provider documents a reason why a longer time frame can be in place." The Stipulation defines a "chronic disease" as one of 19 diseases or categories of diseases. Some, such as cancer, require an inmate to be seen every 30 days. Others, such as HIV/AIDS, require an inmate to be seen every 90 days. Still others, such as heart disease, require an inmate to be seen every 180 days.

9. For "real-time" reporting of this particular performance measure, Corizon starts with the source document identified in the ADC Monitoring Guide. For December 2017, the source document included 8,160 potentially eligible files. After filtering out any conditions that were noted in the EMR as "chronic" but that are not one of the 19 conditions/categories identified in the Stipulation, any inmates that were "temporarily absent" (i.e., had been released from prison and subsequently re-incarcerated) between their last two documented chronic care encounters, and any inactive files per the AIMS report, Corizon was left with 4,428 eligible files.

10. Corizon then compiled a "final" list of 440 instances with a number of days between encounters greater than 180 days, although this list would require further review to determine whether any of the files included notes from a provider documenting a reason why a period longer than 180 days is acceptable.

11. As stated in Defendants' Motion for Reconsideration of Court Order (Doc. 2640), even those performance measures subject to the OSC that do not contain similar

1  subjective elements (i.e., PMs 11, 35, 47, 50, 51, and 66) require more than simply running an automated report in order to identify instances of non-compliance.

12. Pentaho, Corizon's business intelligence software, pulls information from eOMIS (i.e., the EMR). Medical records are, by their nature, highly complex, and involve both objective and subjective elements, the latter of which are difficult to assess via an automated computer program or other form of algorithm.

13. The difficulty in pulling such information is further compounded by variations in the manner in which information is entered into the EMR. For example, again using PM 54 as an example, if a provider sees an inmate for the inmate's chronic condition, but does not check the box in the EMR to document the encounter as a chronic care encounter, a report run to calculate days between chronic care encounters would not include the most recent encounter, making it potentially appear as an instance of non-compliance even though the inmate may have been timely seen for their chronic condition.

14. To try and mitigate these issues and make the lists it provides to ADC for filing with the Court as accurate as possible within the timeframes imposed by the Court, Corizon manually compares the reports it generates for the 11 performance measures subject to the OSC to ADC's Health Services Contract Monitoring Bureau's ("HSCMB") monitoring outcomes for those same performance measures. Unfortunately, without manually reviewing each and every eligible medical file for each performance measure, there is no way to obtain 100% accuracy, which cannot be done within the deadlines imposed by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of March, 2018.

JUSTIN THOMAS SCALISE