```
               UNITED STATES DISTRICT COURT

              FOR THE DISTRICT OF ARIZONA

              _____


Victor Parsons, et al., on    )
behalf of themselves and all  )
others similarly situated;    )
and Arizona Center for        )
Disability Law,               )
                              )    No. CV 12-00601-PHX-DKD
           Plaintiffs,        )
                              )
      vs.                     )    Phoenix, Arizona
                              )    March 22, 2018
Charles Ryan, Director,       )    3:02 p.m.
Arizona Department of         )
Corrections; and Richard      )
Pratt, Interim Division       )
Director, Division of Health  )
Services, Arizona Department  )
of Corrections, in their      )
Official capacities,          )
                              )
           Defendants.        )
_____)


   BEFORE:   THE HONORABLE DAVID K. DUNCAN, MAGISTRATE JUDGE

             REPORTER'S TRANSCRIPT OF PROCEEDINGS

                  (Telephonic Status Hearing)



Official Court Reporter:
Laurie A. Adams, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 43
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription
```

```
 1                    A P P E A R A N C E S

 2   For the Plaintiffs:

 3           PRISON LAW OFFICE
             By:  Corene Kendrick, Esq.
 4           1917 5th Street
             Berkeley, CA 94710
 5
             EIDENBACH LAW PC
 6           By:  Kirstin T. Eidenbach, Esq.
             P.O. Box 91398
 7           Tucson, AZ 85752

 8           ARIZONA CENTER FOR DISABILITY LAW - Tucson, AZ
             By:  Maya S. Abela, Esq.
 9           177 N. Church Avenue
             Suite 800
10           Tucson, AZ 85701

11   For the Defendants:

12           STRUCK LOVE BOJANOWSKI & ACEDO PLC
             By: Rachel Love, Esq.
13           By:  Jamie D. Guzman, Esq.
             3100 W. Ray Road
14           Suite 300
             Chandler, AZ 85226
15
     For Corizon:
16
             FENNEMORE CRAIG PC - Phoenix AZ
17           By:  Todd S. Kartchner, Esq.
             2394 E. Camelback Road, Suite 600
18           Phoenix, AZ 85016

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2            THE MAGISTRATE JUDGE CLERK:  Civil Case 12-601,
 3   Parsons, et al., versus Ryan, et al., on for telephonic status
 4   hearing.
 5            THE COURT:  Would those announce, please, in the              03:03PM
 6   courtroom first.
 7            MS. EIDENBACH:  Kirsten Eidenbach for the prisoner
 8   plaintiff class.
 9            MS. ABELA:  Maya Abela for the Arizona Center for
10   Disability Law.                                                         03:03PM
11            THE COURT:  Thank you.  And then on the plaintiffs'
12   side on the telephone, please.
13            MS. KENDRICK:  Good afternoon, sir.  This is Corene
14   Kendrick from the Prison Law Office.
15            THE COURT:  Is that it for plaintiffs?                         03:03PM
16            MS. KENDRICK:  Yes.
17            THE COURT:  Thank you.
18            On the defendants' side?
19            MS. LOVE:  Your Honor, for the defendants Rachel Love
20   and Jamie Guzman.                                                       03:03PM
21            MS. KENDRICK:  I'm sorry, Your Honor.  I believe
22   someone else is on.
23            THE COURT:  Who else was on?
24            MR. KARTCHNER:  Todd Kartchner for Corizon is also
25   here to listen in.                                                      03:04PM
```

1          THE COURT:  Thank you.  When you are on the phone let
2   us know, please, for the record.
3          MR. KARTCHNER:  I just barely got on.  I apologize,
4   Your Honor.
5          THE COURT:  Oh.  That's what went on.  Thank you very         03:04PM
6   much.
7          Let me say something first that has me, I suppose, in
8   the most kind way to say it, perplexed; in the less kind way to
9   say really dumbfounded.  I have in front of me an e-mail from
10  the defendants' office to my chambers indicating that only five    03:04PM
11  documents were required by my order.  I re-read my order.  It
12  says 10.  You submitted six but think you only had five.
13         Ms. Love, how would you get to that place?
14         MS. LOVE:  Your Honor, we re-read the transcript as
15  well, and we interpreted in the transcript the demand that Ms.    03:04PM
16  Kendrick provide 10 examples of that covered both Corizon and
17  ADC since the challenge was to both the privilege log and ADC.
18  And when you said to provide 10 examples, that's what we
19  interpreted it to be, a total of 10.
20         THE COURT:  And so why did I only receive six and an        03:05PM
21  e-mail from your staff saying you only had an obligation to
22  give five?  Again, tell me where.  I mean, if I read the
23  transcript here, Page 15:  "THE COURT:  Here's what I want you
24  to do, Ms. Kendrick.  Identify 10 examples from the privilege
25  log where you think it's an impermissibly broad application of    03:05PM

| | | |
|---|---|---|
| 1 | the attorney/client privilege or work product immunity and send | |
| 2 | those over today, by the close of business today, to the | |
| 3 | defendants.  The defendants will take a look at your 10 | |
| 4 | examples and respond by the close of business tomorrow.  If by | |
| 5 | the close of business Wednesday you are unable to resolve this | 03:05PM |
| 6 | issue, then by close of business Wednesday, I want those 10 | |
| 7 | examples sent over to me for in-camera review." | |
| 8 |       Again, how am I missing the plain English here and how | |
| 9 | are you interpreting this some other way, Ms. Love? | |
| 10 |       MS. LOVE:  Because the challenge by plaintiff were to | 03:06PM |
| 11 | the privilege logs of both Corizon and ADC.  The letter that | |
| 12 | Ms. Kendrick sent to us had more than 10 examples for both, I | |
| 13 | believe ADC and Corizon, so we interpreted the 10 to be a total | |
| 14 | of 10. | |
| 15 |       THE COURT:  Did you ever tell me in court that you had | 03:06PM |
| 16 | this special interpretation of what 10 -- I was told there was | |
| 17 | a privilege log that the plaintiffs said was impermissibly | |
| 18 | inclusive, overinclusive of documents that were not privilege | |
| 19 | or subject to the work product immunity.  I then addressed it | |
| 20 | on the record with everyone.  To my knowledge, you never told | 03:06PM |
| 21 | me that you thought that there was some kind of carve-out that | |
| 22 | there was only going to be six documents sent over to me | |
| 23 | ultimately.  And by the way, they were not sent over to me on | |
| 24 | the timetable that I prescribed. | |
| 25 |       So I am really at a loss to understand how we can have | 03:07PM |

1  a conversation where I can rely upon you to do when the plain
2  meaning seems to run contrary to what you have done or you have
3  a side understanding that you never disclosed to me about what
4  it is.  When I say the words that I just read that anticipate
5  that I will get to see the 10 examples that are being produced                03:07PM
6  I expect the plaintiffs to show 10 examples.  But at the very
7  least, if you aren't able to resolve it, I expect to have 10
8  examples.  I don't understand when at the end of the process I
9  have six somebody can say to me that I have what I asked for.
10 Again, give it another shot.                                                   03:07PM
11         MS. GUZMAN:  Your Honor, if I may, this is Jamie
12 Guzman.  I think the confusion might be there are two separate
13 privilege logs.  There's one from ADC and one from Corizon.
14         THE COURT:  I'm sorry to interrupt, but did you ever
15 tell me that?  When we were having this discussion, did anybody              03:07PM
16 ever tell me that?  How would I know that?
17         MS. KENDRICK:  Your Honor, may I speak?  This is
18 Corene Kendrick from the plaintiff.
19         THE COURT:  Yes.
20         MS. KENDRICK:  So the privilege logs were submitted to               03:08PM
21 a declaration that I filed with the Court, so they are
22 separate.  And so my letter to the defendants --
23         THE COURT:  Ms. Kendrick, I have to interrupt.  I'm
24 sorry to interrupt.  You have to slow down please.  The pace is
25 too rapid for the court reporter and it's also too rapid for                 03:08PM

1    the telephone.  If you were in court we would probably be able
2    to get a grip on it but on the telephone it's too rapid.  Thank
3    you.
4            MS. KENDRICK:  Okay.  I apologize to you and to the
5    court reporter.                                                    03:08PM
6            Those two privilege logs were attached as exhibits to
7    a declaration that I filed with the Court prior to the hearing.
8    It's at Docket 2681.  So my letter to defendants did cite those
9    to those two privilege logs.
10           Mr. Kartchner is on the phone.  He called me this          03:09PM
11   morning, and we had a conversation about the Corizon privilege
12   log.  And right now the concerns that we raised with regard to
13   the examples from the Corizon log, it appears that he
14   understands it as was spelled out in Ms. Guzman's letter.  But
15   he is also going to be creating a new privilege log for us that   03:09PM
16   includes the subject line, and he will be reviewing it and
17   redacting any attorney communications that are within a larger
18   e-mail.
19           So he can also speak for himself, but I do believe the
20   Corizon issue is, for now, resolved.  Obviously, we reserve the   03:09PM
21   right to come back with further objections when we see the
22   updated privilege logs.  But he represented to me he would have
23   that to us by no later than the end of next week.
24           THE COURT:  So that I understand -- go ahead.
25           MS. KENDRICK:  So I'm just saying, really, all we're      03:10PM

```
 1   concerned about here is with regard to the ADC privilege log.
 2            THE COURT:  All right.  So then let me understand the
 3   process here, because I need to know whether or not going
 4   forward I'm doing enough to make sure that we are all on the
 5   same page and that you all understand what you need to be                03:10PM
 6   letting me know about and informing me so that I can make
 7   appropriate decisions in a case where you had this declaration
 8   that you mentioned, which I think 77 exhibits?  Is that what it
 9   was, I think?  It was enormous.
10            MS. KENDRICK:  No.  No.  I'm sorry, sir.  That's a              03:10PM
11   separate declaration.  The declaration with the 77 exhibits was
12   something we filed February 23rd with regard to the order to
13   show cause re:  Contempt.
14            THE COURT:  Okay.  So I'm going to continue to work
15   this out so I can understand fully what was in the parties'              03:11PM
16   minds so I'm not castigating people wrongly or making errors.
17            As I understand what you have said, Ms. Kendrick, is
18   that you are telling me that you join with Ms. Love, that you
19   think it was reasonable for me to have understood that when I
20   said 10 documents, that that would mean that I would only be             03:11PM
21   getting five from each.
22            MS. KENDRICK:  No, sir.
23            THE COURT:  I'm sorry?
24            MS. KENDRICK:  No, sir.  I do not share Ms. Love's
25   interpretation of what you ordered the parties to do.  And, in          03:11PM
```

1  fact, I had to provide that letter to them by the close of
2  business Monday, so unfortunately I didn't have the exact words
3  of Your Honor from the transcript.  And I thought you had said
4  to provide at least 10 examples.  So that's why my letter to
5  them had 13 examples with regard to the ADC privilege log, and                03:12PM
6  I think it had like seven or eight with regard to Corizon.  So
7  I do not share that interpretation that you only needed to look
8  at five things from -- that we raised in our letter.
9              THE COURT:  Well, I asked the question because in
10  fairness I wanted to see if the three people who were involved              03:12PM
11  in the process, if two of them got it one way and the odd man
12  out was I, then that would cause me to reconsider.  But I have
13  to say that I do not think that I am the odd man out.  I think
14  that I am the one who said it, and I really understood what I
15  was saying, and that if anybody had any question about what I               03:12PM
16  was saying, I would have expected them to have asked about it
17  because you show that you know how to do that.  You also show
18  that you know how to preempt my decision making and my timing.
19  And so I do not favor that.
20              And so I am of the view, Ms. Love, that you improperly           03:13PM
21  interpreted my order; that you improperly conducted yourself
22  with respect to the procedure that I had outlined.  I have
23  taken a look at the documents that you have submitted.  I have
24  done the in-camera review.  It is an overbroad application of
25  the attorney/client privilege.                                               03:13PM

|  |  |  |
|---|---|---|
| 1 | The privilege, it almost seems, is something that you | |
| 2 | are trying to make efficient or convenient or the letter of | |
| 3 | explanation says we don't produce these things because they are | |
| 4 | already a matter of public record.  No.  That is never | |
| 5 | permissible.  The privilege runs against the grain of what we | 03:13PM |
| 6 | do in court, and that is to find the truth of what people are | |
| 7 | saying to one another, what the evidence is.  We create, | |
| 8 | however, an exception to that highest goal we have by saying | |
| 9 | there's an even higher goal.  And that is we want the client to | |
| 10 | be able to feel free to talk to the lawyer without any fear | 03:13PM |
| 11 | that that conversation, which is for the purpose of obtaining | |
| 12 | attorney advice, will be completely candid, completely honest. | |
| 13 | And so what we do is we create this special rule, but | |
| 14 | it runs against the grain of everything we do.  So we want to | |
| 15 | make sure it's strictly applied.  And there's no case anywhere | 03:14PM |
| 16 | that says anything else but that.  It is formalistic.  It is | |
| 17 | almost ritualistic.  And that if you don't read the sacred | |
| 18 | words in the right way it's gone.  And that's how every judge | |
| 19 | looks at it, and that's how every lawyer should look at it. | |
| 20 | And that's why you see redactions and you see things that | 03:14PM |
| 21 | aren't redacted because there are things that are in the | |
| 22 | communication that are not for the purpose of the | |
| 23 | attorney/client privilege and they inform people about what is | |
| 24 | going on that doesn't need the extra protection. | |
| 25 | And so when a judge sees something like his or her own | 03:14PM |

1  order included within an attorney/client privileged
2  communication and withheld from disclosure, that is an enormous
3  red flag.  And so in light of what I have seen here with
4  respect to the failed compliance with my order, and in light of
5  what I have seen with the overbreadth, I would want all of the
6  documents that are in the non-Corizon privilege log that you
7  are going to rework, in other words, the ADOC privilege log
8  documents, I want them .pdfed to me posthaste and I will
9  conduct an in-camera review of all of those.  And I will get a
10 sense so that I can, in deliberate time, tell you more about
11 what it is you need to and should understand about the
12 application of the privilege.
13         I am late in this game and really shocked it is
14 required that I need to conduct this tutorial almost.  But it
15 is evident to me that I do need to do that.  And I will tell
16 you that there are ways to understand how you apply the
17 privilege outside of reading cases.  There are really good
18 resources.  The ABA has a publication, I think it's a two- or
19 three-volume set that is very good at drawing the line and
20 helping people understand.  I think that tutorial in that
21 hornbook would be helpful for you all.
22         But in any event, I don't have time to do that right
23 now.  What I have to do is get to this in straightaway order.
24 So what I need is a .pdf e-mailed to my chambers of all of the
25 documents that are part of your privilege log, and we will

```
 1   conduct an in-camera review.  And I'd like to have that by the
 2   close of business tomorrow.
 3           MS. LOVE:  The entirety of defendants' privilege log?
 4           THE COURT:  Yes, for in-camera review.
 5           Anything else?                                           03:16PM
 6           MS. KENDRICK:  Not from plaintiffs, Your Honor.
 7           THE COURT:  Okay.  Hearing nothing further from
 8   defendants, we're concluded.  Thank you all.
 9           (Proceeding concluded at 3:16 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**C E R T I F I C A T E**

I, LAURIE A. ADAMS, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 22nd day of March, 2018.

s/Laurie A. Adams
_____
Laurie A. Adams, RMR, CRR