# EXHIBIT 1

Edward G. Hochuli, Bar #004566
Kathleen L. Wieneke, Bar #011139
Daniel P. Struck, Bar #012377
JONES, SKELTON & HOCHULI
2901 North Central Avenue
Suite 800
Phoenix, Arizona 85012
(602) 263-1700

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE STATE OF ARIZONA

| | |
|---|---|
| FLETCHER CASEY, JR., et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAMUEL A. LEWIS, Director, Arizona Department of Corrections, et al.,<br><br>Defendant. | NO.  CIV 90-54 PHX CAM<br><br>**MOTION TO DISQUALIFY THE HONORABLE CARL MUECKE** |

Defendants, through counsel, move to disqualify Judge Muecke pursuant to 28 U.S.C. § 455 for the reasons that his impartiality might reasonably be questioned, he has a personal bias and prejudice against the Defendants and he has personal knowledge of disputed evidentiary facts concerning the proceeding.  This motion is supported by the attached Memorandum of Points and Authorities and Exhibits.

. . .

. . .

. . .

1    RESPECTFULLY submitted this 20th day of June, 1991.

2                   JONES, SKELTON & HOCHULI

3
                   By
4                      Edward G. Hochuli
                       Kathleen L. Wieneke
5                      Daniel P. Struck
                       2901 North Central Avenue
6                      Suite 800
                       Phoenix, Arizona 85012
7                      Attorneys for Defendants

8

9            **MEMORANDUM OF POINTS AND AUTHORITIES**

10   I.        **INTRODUCTION.**

11            This case arose from a class action lawsuit filed on

12   January 12, 1990, against the Director of the Department of

13   Corrections, Samuel Lewis, and several wardens individually

14   named alleging that inmates incarcerated within the Department

15   of Corrections were receiving constitutionally inadequate

16   mental and medical health care and their constitutional rights

17   to access to the courts were being violated.  Since this case

18   was filed, Defendants have appeared before Judge Muecke in

19   this action as well as other ongoing prison cases.  Defendants

20   have become aware of numerous statements made by Judge Muecke

21   indicating that he may hold a personal bias against

22   Defendants, particularly against Defendant Samuel Lewis.  The

23   statements taken individually, however, did not appear to be

24   sufficient to request a disqualification.  However, statements

25   made at a May 31, 1991, hearing have convinced Defendants that

26                              2

their constitutional right to a neutral and detached judge to preside over the judicial proceedings will be violated.  This is of particular importance because Judge Muecke will be the trier of fact in the upcoming trial.  Defendants submit that this motion has been filed in good faith and without any intent to delay the proceedings in this case.

II.   **FACTUAL SUMMARY.**

     1. **Statements Made Prior To May 31, 1991.**

     Throughout the course of this litigation, this Court has made several statements which, taken as a whole, indicate bias and prejudice against Defendant Samuel Lewis and in favor of the Plaintiffs.  Additionally, this Court has received information from sources other than through the judicial process, which is especially disturbing in light of the fact that this Court will sit as the trier of fact in this case.  The following are excerpts from transcripts of court proceedings which support Defendants' position that the Judge should disqualify himself from this case.

     On July 6, 1990, the parties appeared before Judge Muecke on the Plaintiff's Motion for Protective Order.  When addressing an issue regarding the Plaintiffs' experts' access to medical records without a release, the Court stated:

> And I don't know why that can't be worked out.  As a matter of fact, most of the problems with the prison as I've said to Mr. Lewis several times, are a result of the prison not getting enough money from the legislature.  **And Mr. Lewis for some reason**

1  |  **says that publicly, but then when he gets**
**lawsuits which might help him solve some of**
2  |  **those problems, he gets all excited and mad**
**about them.   I don't understand it.   I've**
3  |  **never had those problems with any other**
**Department of Correction heads.   And**
4  |  **suddenly we have these problems, and I don't**
**know why.** (See, July 6, 1990, transcript,
5  |  p. 66., lines 1-11, attached hereto as
Exhibit "1"). (Emphasis added.)

At a hearing on December 6, 1990, in the <u>Hook v.</u>
<u>State of Arizona</u> case, the Court again made references
indicating judicial bias against Defendant Lewis.   The Court,
discussing his dealings with former Department of Corrections
heads stated:

And the reason we had consent degrees as I
saw it, is because we had people like
McDougall and Moran and others whose biggest
problems in running the prison had to do,
not with their notions about how the prison
ought to be run, but by the fact that they
didn't have the adequate finances to run the
prison. (See, December 6, 1990, transcript,
p. 2, lines 11-16, attached hereto as
Exhibit "2").

In discussing his belief regarding the prison system in
general the Court stated:

But I also believed, as does anyone who
believes in the Constitution or believes in
the United States of America, that when you
put people in prison you also treat them
according to the tenets of a Judeo-Christian
society, and according to the tenets of the
American democracy, and according to the
tenets of our Constitution.   . . . And
interestingly enough, in dealing with
prisoners over the years, they of course
have no constituency, and it's easy to
attack them and to denounce them, and to
call the places where they live as country
clubs.   And a lot of that is because the

4

1
2
3
4

> media doesn't take its responsibility
> seriously. They don't talk about reality.
> They think that there is crime because the
> judges are turning them all loose, even
> though the jails are all overcrowded. . . .
> Id. at p. 4, lines 8-14 and p. 5, lines 7-
> 14.

5   When discussing whether there was any evidence

6   before the Court regarding a certain issue the Court discussed

7   its belief that Defendants or their attorneys were leaking

8   "false" information to the press.

9
10

> I don't mean that there possibly might be
> evidence, but I don't see any evidence
> before the Court at this time.

11   MR. TRASK: This is --

12
13
14
15
16
17

> THE COURT: It's sort of like the $6
> million in Gluth, you know. The - for
> someone somewhere is persuading the
> editorial writers of the Gazette that this
> Court has before it evidence of $6 million
> of the cost of Gluth when the lawyers, if
> they're telling that to the editorial
> writers of the Gazette, since I know the
> reporters didn't tell it to them because
> they've told me that. Somebody is telling
> them something. Id. at p. 26, lines 18-25,
> and p. 27 lines 1-8.

18
19   **2. Statements Made At The May 31, 1991, Hearing.**

20   Finally, on May 31, 1991, a hearing took place in

21   this Court regarding the Plaintiff's motion for sanctions.

22   The court interrupted the hearing to read a letter from the

23   mother of one of the Plaintiff class, despite the fact the

24   letter had nothing to do with the subject of the hearing.

25
> THE COURT: Well, I have a letter here
> today, which I'm going to give a copy of to

26

5

1   both sides.  It's from a mother whose son is
    in Perryville Prison.  And she writes:
2
          "As I write this letter to --"
3
    Oh.
4
          "As I write this letter to you, I am
5   very angry --"

6   This is handwritten.

7         "-- and very upset at what happened to
    my son who is an inmate at San Juan Unit,
8   Perryville Prison."

9   She names them, but I think that's a matter
    that you all ought to use for your own
10  purposes.

11        "My son took real sick before the 21st
    of this month, and was told by the nurse at
12  Perryville that they didn't have enough
    staff to have someone drive him to the
13  hospital.  And she had been told that only
    if he dropped dead or dying they would take
14  him."

15  I'm well aware, having been here for 26
    years, that everybody tends to exaggerate,
16  and certainly you get a lot of exaggeration
    from all sides, and frequently from
17  prisoners and families and people who are
    concerned about their people.  **But a lot of
18  times what they tell you is true also.**

19        "His appendix burst, and by the grace
    of God he's alive today.  They operated on
20  him and cleaned up the poison out of his
    system, and put him on antibiotics.  I tried
21  to go see him, but they did not want to
    allow me to see him.  He could have died,
22  and I wouldn't have seen him.  I called
    Perryville four times to see if I could get
23  the okay to see my son, but was refused the
    right to see my own son.  If it hadn't been
24  that five of my friends called Perryville on
    behalf of my son and myself, I wouldn't have
25  seen my son.  This type of situation has
    been going on for years and nothing is done
26

                          6

> to change it.  We waste thousands of dollars
> on insect research and foolishness, but we
> can't come up with the money to hire more
> people to run our prisons.   Some people
> treat their dogs better than the way our
> prisoners are treated.   Some inmates have
> died needlessly, and would be alive today if
> people that run our prisons cared.   Thank
> you for your courteous attention."   "P.S.
> The people that work for the Department of
> Corrections have no regard for human life."

Judge Muecke, referring to the letter, went on to express his

opinion that the Plaintiffs' claims are legitimate and that

problems exist within the Department of Corrections that

should be resolved by settlement.   A review of this passage

clearly indicates that the Court has already made up his mind

that the Defendants are liable in this case, despite the fact

the trial date has not even been set.

> **That's her assessment, and a pretty powerful
> letter.  And I think whether it's completely
> true or not, one of the things we shouldn't
> forget here is we aren't playing a game.
> We're trying to make certain that certain
> standards are observed in the prison with
> medical care.  And I'm sure the defendants,
> given the opportunity, will stand up and say
> that everything is just marvelous.   That's
> of course why we're having a trial instead
> of having this matter resolved by some
> settlement.  But I can't for the life of me
> understand why there can't be one.**

Next, the Court expresses its opinion that past

directors of the Department of Corrections have worked with

his court, unlike the Defendant Samuel Lewis.

> It's always struck me that the problem
> with prison has been lack of funds, and lack
> of money given to them by the legislature.

7

And the fact that they're in isolated places where a lot of professional people don't want to live or work, and that socially and professionally and economically it isn't the kind of thing that most doctors want to do nowadays.   They want to be in private practice where the money is.  And I guess a lot of society is like that.  And so as a result, we've always had problems, all the years I've been here, with health care systems.  **And those heads of Department of Corrections that are professional people who have understood that, have understood that the courts could be of service in the sense of understanding and believing that failure to provide proper medical care involves a constitutional issue.  And the problem was not necessarily with the courts.  It was with their failure to get funds.**

**In fact recently the head of the Department of Corrections has asked for additional monies, but as far as I can see, it's been to build more prisons.**  We already have a prison system in the United States of America which has more people confined in prisons proportionate to the population than any other nation in the world.   I think South Africa follows us as second, and Russia third.

But at any rate, one of the problems is that the reason we have the other lawsuit going on access to the courts, is to keep a window open so that things like this can be determined to be true or not to be true. . . (Transcript of May 31, 1991, proceedings at pp. 7-11 , attached hereto as Exhibit "3").

The Court, in seeming to agree with plaintiffs counsel that Defendants were attempting to delay the trial, stated:

What's sad about this is that I'm sure that it can be assessed as to whether or not there's adequate medical care, and whether or not it's sufficiently funded, and whether or not they have enough professional people

8

1     to do the work that needs to be done.  And
hopefully if this letter is true, to avoid
2     things like this from happening.  Where I
presume if an appendix burst, it can usually
3     result in death.  <u>Id</u>. at p. 13, lines 4-10.

4     Defendants' counsel stated:

5     I'd say at the outset, Your Honor, that I'm
greatly concerned by the Court's apparent
6     determination that failure to settle this
case is because - is the defendants'
7     problem, and the defendants' delaying
tactics, and the defendants being
8     unreasonable.  I'm particularly concerned
when the Court is the trier of fact in this
9     case.  <u>Id</u>. at p. 13, lines 20-25.

10     . . .

11

12     THE COURT:  -- I have no idea what's
separating the two of you.  **It's just that**
13     **suddenly in its present regime, I never get**
**any cases settled, and then I get**
14     **accusations that all of this is costing the**
**taxpayers a great deal of money.  Before**
15     **this administration, we settled cases.**  <u>Id</u>.
at p. 14, lines 9-13.  (Emphasis added.)

16  III.    <u>ARGUMENT</u>.

17     1.  <u>Judge Muecke Should Disqualify Himself From This</u>
<u>Case Because A Reasonable Person Could Question His</u>
18     <u>Impartiality And He Has Demonstrated A Bias Against</u>
<u>The Defendants</u>.

19

20     This motion is brought on two alternative bases.

21  First, the motion should be granted because it is supported by

22  the cumulative effect of various hearings and statements made

23  by the Court.  Alternatively, and as an independent basis,

24  this motion should be granted as a result of the statements

25  made during the May 31, 1991 hearing.

26

One of the fundamental rights provided by the Constitution is that each party have a right to a neutral and detached judge to preside over judicial proceedings.  <u>Ward v. Village of Monroeville</u>, 93 S.Ct. 80, 409 U.S. 57, 34 L.Ed.2d. 267, (1972).  Accordingly, in <u>In re Murchison</u>, 75 S.Ct. 623, 349 U.S. 133, 99 L.Ed. 942 (1954) the Supreme Court stated:

> A fair trial in a fair tribunal is a basic requirement of due process.  Fairness of course requires an absence of actual bias in a trial of cases.  But our system of law has always endeavored to prevent even the probability of unfairness.  To this end, no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome.  That interest cannot be defined with precision. Circumstances and relationships must be considered.  This court has said, however, that "every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear and true between the state and the accused denies the ladder of due process of law." <u>Tumey v. State of Ohio</u>, 273 U.S. 510, 532, 47 S.Ct. 437, 71 L.Ed. 749 (1927). Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties.  But to perform its high function in the best way "justice must satisfy the appearance of justice." <u>Offutt v. United States</u>, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed 11 (1955).

To that end, the Congress enacted a federal statute dealing with the disqualification of judges.  28 U.S.C. §455 provides in relevant part:

> (a)  Any justice, judge or magistrate of the United States shall disqualify himself in

10

> any proceeding in which his impartiality
> might reasonably be questioned.
>
> (b)  He shall also disqualify himself in the
> following circumstances:  (1)  where he has
> a personal bias or prejudice concerning a
> party, or personal knowledge of disputed
> evidentiary facts concerning the proceeding;
> . . .

The standard for determining whether a judge should disqualify himself where his impartiality might reasonably be questioned is that of a reasonable man.  In other words, if a reasonable person knowing all the facts would conclude that the judge's impartiality might reasonably be questioned, the judge should recuse himself.  Hepperle v. Johnston, 590 F.2d 609 (5th Cir. 1979).  According to the legislative history, the purpose of § 455(a) is to promote confidence in the judiciary by avoiding even an appearance of impropriety where ever possible.  S. Rep. 93-419 at 5, H.R. Rep. 93-1453 at 5.

In this case, it is obvious that this court's impartiality can easily be put in question.  On several occasions, this Court has made reference to its opinion that since Defendant Samuel Lewis took over as the head of Department of Corrections, the Department of Corrections is more concerned with building more prisons rather than utilizing the court to obtain additional monies from the legislature for health care.  This Court has also expressed its opinion on the record that Director Lewis is not interested in settling cases and is not being reasonable.

11

Additionally, this Court has expressed his opinion that he believes someone within Department of Corrections has been misinforming the press regarding rulings in various cases involving this court and the Department.    Therefore, Defendants respectfully request this court recuse itself pursuant to 28 U.S.C. § 455(a), as there is no question that a reasonable person when examining the record in this case would believe that the judge was impartial.

Defendants also request that this court disqualify itself pursuant to 28 U.S.C. § 455(b) for the reason that the cumulative evidence referenced above indicates this court is biased against the Department of Corrections and Defendant Samuel Lewis and is favoring the Plaintiffs.   In fact, it is obvious from this Court's comments at the May 31, 1991, hearing that he has made his decision regarding this case, without hearing any evidence.

2. **Judge Muecke Should Disqualify Himself Because He Has Obtained Knowledge Of Evidentiary Facts Concerning This Proceeding.**

The Judge should also disqualify himself for the reason that the Judge has personal knowledge of disputed evidentiary facts concerning the proceeding.  Specifically, at the May 31, 1991, hearing this Court read into the record a letter which had been sent by the mother of one of the Plaintiff class regarding health care at ASPC-Perryville. Instead of refusing to read the letter when it came in, and

12

sending a copy of the letter to both sides without having reviewed it, the Judge instead read the letter into the record, stating his concerns regarding the health care within the Department of Corrections. Obviously, as the trier of fact, it is essential that this Court restrict itself to evidence that is submitted during the trial of this matter. As this Court has gained personal knowledge regarding facts directly at issue in this case from an extrajudicial source, the Judge should disqualify himself from hearing this matter pursuant to 28 U.S.C. § 455(b)(1).

One final point must be emphasized. Judge Muecke is the trier of fact in this case and will not only be ruling on the many legal issues involved, but will also determine the facts. The trial in this matter is expected to last three months or longer. Hundreds of witnesses have been listed, including many supervisors in the Department of Corrections as well as Director Lewis himself. Judge Muecke has demonstrated his personal bias against Director Lewis, the "current regime", and the Department of Corrections. The Court has also personally reviewed evidence and made it a part of the record, commenting on it's veracity, all outside of the trial setting.

If this case were being tried to a jury, perhaps the pre-determination by Judge Muecke would not be of such importance. It is apparent here, though, that the defendants

13

1   may not receive a fair and unbiased trial of this matter.  To

2   change judges at this point would not delay the trial in the

3   least, would cause no prejudice to the plaintiffs, and would

4   avoid any potential for an unfair result or the appearance of

5   impropriety.

6          If during voir dire examination, a prospective juror

7   made the same comments about the defendants, the facts, and

8   Director Lewis as have been made by Judge Muecke, there is

9   little doubt that such juror would be disqualified.  A similar

10  standard should be applied here.

11         Defendants are not suggesting that the Court would

12  intentionally let its personal bias affect the result.

13  Undersigned defense counsel has nothing but the highest

14  respect and admiration for Judge Muecke.   However, as the

15  trier of fact, if is difficult to keep one's personal feelings

16  and preconceptions from entering into a decision on the

17  merits.  Justice would best be served, and the appearance of

18  impropriety would best be accomplished, if another Judge were

19  to try this matter.

20  IV.    **CONCLUSION**.

21         28 U.S.C. § 455 provides that the Court shall

22  disqualify itself whenever its impartiality might reasonably

23  be questioned.   In this case, there is no doubt that this

24  Court's impartiality can be questioned based on statements

25  made at the May 31, 1991, hearing.   In the alternative,

26
                                14

1    Defendants submit that the cumulative effect of statements
2    made during court proceedings is sufficient to satisfy
3    Defendants burden of showing bias.  Clearly, the cumulative
4    effect of the record presented in this motion demonstrates
5    that this Court is biased against Defendant Department of
6    Corrections and more specifically Defendant Samuel Lewis.
7    Additionally, the cumulative evidence also suggests that this
8    Court is biased in favor of the Plaintiff class.
9            Even assuming that this Court rejects Defendants
10   contention of bias, this Court should disqualify itself based
11   on the personal knowledge of disputed evidentiary facts
12   regarding this case gained from an extrajudicial source.
13   Defendants respectfully request that Judge Muecke disqualify
14   himself in order that they obtain a fair and impartial trial
15   as guaranteed by the Constitution of the United States.
16           RESPECTFULLY submitted this 20th day of June, 1991.

17                        JONES, SKELTON & HOCHULI

18                        By_____
19                          Edward G. Hochuli
                            Kathleen L. Wieneke
20                          Daniel P. Struck
                            2901 North Central Avenue
21                          Suite 800
                            Phoenix, Arizona 85012
22                          Attorneys for Defendants

23

24

25

26
                              15

COPY of the foregoing
delivered this 30th day
of June, 1991, to:

Honorable Carl A. Muecke
UNITED STATES DISTRICT COURT
230 North First Avenue
Phoenix, Arizona  85025

COPY of the foregoing
mailed this 30th day
of June, 1991, to:

Adjoa A. Aiyetoro
Stuart H. Adams, Jr.
ACLU National Prison Project
1875 Connecticut Avenue, N.W.
Suite 410
Washington, D.C.  20009
Attorneys for Plaintiffs

Alice L. Bendheim
Attorney at Law
1542 West McDowell Road
Phoenix, Arizona  85007
Co-Counsel for Plaintiffs

16

# EXHIBIT 2

**FILED**

JUN 21 1991

RICHARD H. WEARE, CLERK
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

BY ――――――――――
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| FLETCHER CASEY, JR., et al., on behalf of themselves & all others similarly situated, | No. CIV 90-0054-PHX-CAM |
| Plaintiffs, | |
| vs. | ORDER |
| SAMUEL A. LEWIS, Director, Arizona Department of Corrections, et al., | |
| Defendants. | |

## INTRODUCTION

This is a prisoner civil rights class action filed on behalf of all the prisoners in the State of Arizona. The case was filed on January 12, 1990. The case was initially assigned to the Honorable Judge Carroll. On March 12, 1990, plaintiffs filed an Amended Motion to Transfer this case to this Court. Defendants withdrew their objections to plaintiffs' motion to transfer and on April 18, 1990, this Court signed an Order transferring this matter to this Court. Court's Order of April 18, 1990.

On June 26, 1990, this Court certified a class composed of all adult persons who are now or who in the future will be in the custody

AO 72
(Rev.8/82)

of or under the supervision of the Arizona Department of Corrections ("ADOC"). The class also consists of a subclass of all prisoners who are handicapped and within the custody of the ADOC. Named plaintiffs are seeking declaratory and injunctive relief on behalf of the class (inclusive of the subclass), which consists of more than 12,000 prisoners.

On May 13, 1991, defendants filed a motion for summary judgment that is set for oral argument on June 21, 1991. The day before the oral argument defendants filed a motion to disqualify the undersigned judge. Due to defendants' last minute filing, the Court has not had the opportunity to review the context of the transcripts quoted by defendants. The Court's Order is based solely on the quotations provided in their motion.

## DISCUSSION

According to defendants, the undersigned should disqualify himself because, under 28 U.S.C. § 455, the Court's impartiality might reasonably be questioned. Alternatively, defendants argue that the Court is biased against defendant Department of Corrections and more specifically defendant Samuel Lewis. Defendants' Motion, at 12. Finally, defendants assert that even if the Court rejects their contention of bias, the Court should disqualify itself based on its personal knowledge of disputed evidentiary facts. Id.

Title 28 U.S.C. § 455 provides in pertinent part:

> (a) Any . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the following circumstances:

2

  **(1)** Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]

Section 455 contains no procedural provisions.  It is self-enforcing in that it is directed to the justice, judge or magistrate.  <u>United States v. Chantal</u>, 902 F.2d 1018, 1023 (1st Cir. 1990); <u>Unites States v. Sibla</u>, 624 F.2d 864, 867-68 (9th Cir. 1980).

  While § 455(a) is concerned with whether a judge's impartiality might reasonably be questioned, § 455(b)1) is concerned with a judge's personal bias or prejudice against or in favor of any party. <u>Hasbrouck v. Texaco, Inc.</u>, 842 F.2d 1034, 1045 (9th Cir. 1987), <u>affirmed</u>, 110 S.Ct. 2535 (1990); <u>see Sibla</u>, 624 F.2d at 867 (9th Cir. 1980)  "The bias must stem from an extrajudicial source and not be based solely on information gained in the course of the proceedings." <u>Hasbrouck</u>, 842 F.2d at 1045-46.  A judge's prior adverse rulings are not sufficient cause for recusal.  <u>United States v. Studley</u>, 783 F.2d 934, 939 (9th Cir. 1986).  <u>Toth v. Trans World Airlines, Inc.</u>, 862 F.2d 1381, 1387-88 (9th Cir. 1988).  The burden is on the party filing the motion to recuse to show extrajudicial bias or prejudice. <u>See Thomassen v. United States</u>, 835 F.2d 727, 732 (9th Cir. 1987).

  Defendants assert that the undersigned judge should disqualify himself because a reasonable person could question his impartiality and the undersigned has demonstrated a bias against defendants, specifically Samuel A. Lewis.  The basis for defendants' motion is twofold.  "First, the motion should be granted because it is supported by the cumulative effect of various hearings and statements

1  made by the Court.   Alternatively, as an independent basis, this

2  motion should be granted as a result of the statements made during

3  the May 31, 1991 hearing."  Defendants' Motion, at 9.

4      Defendants quote substantial portions from transcripts from

5  various hearings that they claim would lead a reasonable person to

6  question its impartiality.  With respect to the hearings held before

7  the May 31, 1991, defendants quote approximately five paragraphs of

8  transcript proceedings.  See Defendants' Motion, at 3-5.  Only one

9  of those paragraphs relate to proceedings held in this matter.  The

10 remaining paragraphs were taken from a hearing held in an unrelated

11 case, Hook v. State of Arizona (CIV No. 73-0097-PHX-CAM), on December

12 6, 1990.  The propriety of utilizing material from another proceeding

13 to question the court's impartiality is less than clear.  The Court

14 finds it difficult to understand, and defendants did not establish,

15 how proceedings from another matter are relevant or how they may

16 serve as a basis to question the court's impartiality.  Further,

17 defendants did not establish how the one paragraph that is from this

18 proceeding would cause a reasonable person to question the Court's

19 impartiality.  The paragraph defendants quote states:

20      And I don't know why that can't be worked out.  As a
        matter of fact, most of the problems with the prison
21      as I've said to Mr. Lewis several times, are a result
        of the prison not getting enough money from the
22      legislature.  And Mr. Lewis for some reason says that
        publicly, but then when he gets lawsuits which might
23      help him solve some of the those problems, he gets all
        excited and mad about them.  I don't understand it.
24      I've never had those problems with any other
        Department of Correction heads.  And suddenly we have
25      these problems, and I don't know why.

26

4

Defendants' Motion, at 3-4 (emphasis in original) (citations omitted).   Defendants make merely conclusory assertions that the above quoted statement would cause a reasonable person to question this Court's impartiality.   See Defendants' Motion, at 11-12.   For example, defendants state, "[t]his Court has . . . expressed its opinion on the record that Director Lewis is not interested in settling cases and is not being reasonable."   Id. at 11.   The court does not understand how the above-quoted statement would cause a reasonable person to question the Court's impartiality.   Nor do defendants explain how a reasonable person, after having heard the above statement, would believe the judge is impartial.   In addition, to the extent that defendants assert this court has made up its mind due to its statement that Director Lewis is not interested in settlement, it should be noted that under Rule 16 of the Federal Rules of Civil Procedure, the Court should discuss settlement with the parties at the pretrial conference.

With regard to defendants' assertion that the undersigned should disqualify himself because he is biased against defendants, particularly defendant Samuel A. Lewis, defendants have not shown that the bias stems from an extrajudicial source.   See Thomassen, 835 F.2d at 732; Hasbrouck, 842 F.2d at 1045-46.   In fact, they rely primarily on the Court's comments made at the May 31, 1991, hearing. See Defendants' Motion, at 12.   Moreover, if, as defendants assert, the court is truly biased against the Department of Corrections and Director Lewis, it would require the Court to disqualify itself from ninety (90) prisoner civil rights cases and eighteen (18) habeas

5

corpus cases involving the Arizona Department of Corrections and Director Lewis. Such a result is clearly unreasonable.

Finally, defendants assert that the undersigned should disqualify himself because he has obtained knowledge of evidentiary facts concerning the proceeding. Id. at 12. The basis for this claim is the Court's reading of a letter in open court from the mother of one of the plaintiff class members. The letter concerned health care at the Arizona State Prison Complex in Perryville. Id. According to defendants, the court should have refused to send the letter when it came in and instead sent a copy of the letter to both sides without having reviewed it. Id. at 12-13. Defendants claim that as a result of the letter, the court, as the trier of fact, "has gained personal knowledge regarding facts at issue in this case from an extrajudicial source. . . ." Id. at 13.

The court receives approximately four to five letters a week from inmates confined in the Arizona prison system. Other judges of this Court also receive correspondence from inmates. Inmates, as pro se litigants, are not well versed in the law and legal procedure. It is not unusual for inmates to send pleadings directly to a judge's chambers. Often the prisoner's letters are intended to be a pleading. This Court, consistent with its obligation to construe liberally a pro se litigant's pleadings, King v. Atiyeh, 814 F.2d 565 (9th Cir. 1987),[1] will often construe an inmate's "letter" as a

---

[1] The Court also notes that this is consistent with the recent amendment to Rule 5 of the Federal Rules of Civil Procedure which no longer allows the Clerk of the Court to reject documents for failure to comply with local pleading requirements.

pleading.   In order to make this determination, the Court must of course read the letter.   Defendants would have this Court, as a result of this statewide class action, not read any letter sent to this Court because it might provide knowledge of facts that are at issue.   Defendants' request is clearly inconsistent with this Court's obligation to liberally construe pleadings of pro se litigants and with the recent amendment to the Federal Rules of Civil Procedure.

Moreover, it should be noted that the letter does not constitute evidence nor was it the intent of the court to offer it as evidence. First, notwithstanding the court's obligation to liberally construe pleadings, the letter in question was written by someone who is not a member of the class.   Second, it is clearly not admissible evidence since the letter has not been authenticated.   Finally, and most importantly, it was not intended as evidence; the court read the letter because it highlighted some of the concerns underlying this action.

## CONCLUSION

The Court received the instant motion at approximately 4:45 p.m. the day before the oral argument on the summary judgment motion. Consequently, the court has not been able to carefully examine all the transcripts upon which defendants' motion is based.   Still, even those passages cited in the motion and the other information contained in defendants' motion make it clear that the undersigned' impartiality cannot be reasonably questioned.   Nor have defendants been able to establish bias on the part of the undersigned.

Based on the foregoing, IT IS ORDERED THAT:

7

(1) Defendants' motion to continue oral argument **(filed June 20, 1991)** is denied.

(2) Defendants' motion to disqualify **(filed June 20, 1991)** is denied.

Dated this 2 1 day of June, 1991.

_C.A. Muecke_
U.S. District Judge

8