Milton Wagner (Bar No. 024976)
Wagner Law LLC
340 East Palm Lane, Suite 255
Phoenix, AZ 85004
(602) 456-4166
mw@wgnrlaw.com

*Counsel of Record for Amicus Curiae
Ethics Bureau at Yale*

Lawrence J. Fox
George W. and Sadella D. Crawford
Visiting Lecturer at Yale
127 Wall Street
New Haven, CT 06511
(203) 432-9258
lawrence.fox@yale.edu

*Of Counsel*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br>v.<br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | No. 2:12-cv-00601-DKD<br><br>**BRIEF OF *AMICUS CURIAE* ETHICS BUREAU AT YALE** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

INTEREST OF *AMICUS CURIAE* ETHICS BUREAU AT YALE ................................... 1

SUMMARY OF ARGUMENT ............................................................................................ 1

ARGUMENT ........................................................................................................................ 2

    I.    RULING AGAINST A PARTY OR USING HARSH LANGUAGE WITH RESPECT TO A PARTY'S CONDUCT DOES NOT DEMONSTRATE BIAS. IF IT DID, RECUSAL WOULD BE DEMANDED IN MOST CASES. .............. 2

    II.   JUDGES ARE PERMITTED UNDER THE RULES CONCERNING EX PARTE COMMUNICATION TO SCHEDULE A HEARING FOR FURTHER FACT-FINDING ON WHAT THE JUDGE HAS READ IN THE NEWS. .......... 5

    III.  JUDGES ARE PERMITTED UNDER THE RULES CONCERNING EX PARTE COMMUNICATION TO RESPOND TO INQUIRIES FROM THIRD PARTIES DURING A CASE BY REFERRING THEM TO PARTIES' COUNSEL. ............................................................................................................ 10

CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*,
   289 F.3d 589 (9th Cir. 2002) ................................................................................. 3

*Blixseth v. Yellowstone Mountain Club, LLC*,
   742 F.3d 1215 (9th Cir. 2014) ............................................................................ 4, 6

*Clabourne v. Ryan*,
   2009 U.S. Dist. LEXIS 95838 (D. Ariz. Sept. 29, 2009) ..................................... 3

*Cordoza v. Pac. States Steel Corp.*,
   320 F.2d 989 (9th Cir. 2003) ............................................................................... 12

*Devolder v. Lee*,
   2014 U.S. Dist. LEXIS 107071 (E.D. Mich. Aug. 5, 2014).................................. 12

*Ford v. Strickland*,
   696 F.2d 804 (11th Cir. 1983) ............................................................................. 11

*In re Mark*,
   609 N.E.2d 419 (Ind. 1993)................................................................................... 7

*In re Whitchurch*,
   639 F. App'x. 772 (3d. Cir. 2016) ....................................................................... 12

*Liteky v. United States*,
   510 U.S. 540 (1994) .................................................................................. 2, 3, 9, 14

*Microsoft Corp. v. United States*,
   530 U.S. 1301 (2000) ............................................................................................ 9

*Schmude v. Sheahan*,
   312 F. Supp. 2d 1047 (N.D. Ill. 2004).................................................................. 8

*Schweiker v. McClure*,
   456 U.S. 188 (1982) .............................................................................................. 3

*Withrow v. Larkin*,
  421 U.S. 35 (1975) .................................................................................................... 3

**Statutes**

28 U.S.C. § 455 ............................................................................................................... 2

28 U.S.C. § 455(b) ........................................................................................................ 13

**Other Authorities**

Am. Bar Ass'n Comm. on Ethics & Prof'l Resp., Formal Op. 478
  (Dec. 8, 2017) ........................................................................................................ 7, 9

Arthur H. Garwin et al., Annotated Model Code of Judicial Conduct
  (3d ed. 2016) ............................................................................................................. 7

Code of Conduct for United States Judges, Canon 2, cmt. 2A .......................................... 12

Code of Conduct for United States Judges, Canon 3(A)(4) ................................................. 6

Code of Conduct for United States Judges, Canon 3(A)(4)(a)-(d) ...................................... 6

James J. Alfini et al., *Judicial Conduct and Ethics*
  (5th ed. 2013) ........................................................................................................... 7

Leslie W. Abramson, *The Judicial Ethics of Ex Parte and Other Communications*, 37
  Hous. L. Rev. 1343 (2000) ................................................................................... 7, 8

Model Code of Judicial Conduct r. 2.9(A)
  (Am. Bar Ass'n 2007) .......................................................................................... 6, 11

Model Code of Judicial Conduct r. 2.9(A)(1)
  (Am. Bar Ass'n 2007) ............................................................................................. 12

Model Code of Judicial Conduct r. 2.9(A)(1)-(5)
  (Am. Bar Ass'n 2007) ............................................................................................... 6

Model Code of Judicial Conduct r. 2.9(C)
  (Am. Bar Ass'n 2007) ............................................................................................... 6

Model Code of Judicial Conduct, Terminology
  (Am. Bar Ass'n 2007) ............................................................................................... 9

Richard E. Flamm, *Judicial Disqualification: Recusal and Disqualification of Judges* (3d ed. 2017) ................................................................................................................. passim

# INTEREST OF *AMICUS CURIAE* ETHICS BUREAU AT YALE

The Ethics Bureau at Yale ("Ethics Bureau") is a clinic composed of sixteen law students supervised by an experienced practicing lawyer and lecturer in legal ethics.[1] The Ethics Bureau has submitted *amicus* briefs in matters involving lawyer and judicial ethics to various adjudicatory bodies; has assisted defense counsel with ineffective assistance of counsel claims implicating professional responsibility; and has provided assistance, counsel, and guidance on a pro bono basis to not-for-profit legal services providers, courts, and law schools.

The Ethics Bureau has reviewed Defendants' Motion to Disqualify Magistrate Judge Duncan from All Further Proceedings, and believes that both the allegations asserted and the relief sought are without a basis in law or fact. The Ethics Bureau has an interest in the fair and consistent application of codes of judicial conduct and the statutes governing the behavior of judges. *Amicus* believes that it can assist the Court by explaining why Magistrate Judge Duncan's behavior during these proceedings was appropriate and well within the scope of his professional role.

# SUMMARY OF ARGUMENT

Magistrate Judge Duncan should not recuse himself from the above captioned case. Defendants make three primary allegations in their Motion to Disqualify Magistrate Judge Duncan. First, Defendants claim that Magistrate Judge Duncan's demeanor and tone are evidence of bias and prejudice against them. Second, Defendants characterize Magistrate Judge Duncan's reading of the KJZZ article and subsequent scheduling of an evidentiary hearing as impermissible ex parte communications under principles of judicial ethics. Third, Defendants argue that Magistrate Judge Duncan's chambers showed clear partiality by providing routine administrative information to third parties who called the court.

---

[1] The preparation and publication of this document by a clinic affiliated with Yale Law School does not reflect any institutional views of Yale Law School or Yale University. No person or entity other than *amicus curiae* has made a monetary contribution to the preparation and submission of this brief.

*Amicus* believes that Defendants have mischaracterized Magistrate Judge Duncan's behavior throughout the monitoring and enforcement stage of this litigation. None of Magistrate Judge Duncan's actions should be found to meet the high bar needed to disqualify a judge for bias. Additionally, neither Magistrate Judge Duncan's access to the KJZZ article nor his chambers' provision of Plaintiffs' attorneys' contact information to third parties constitute prohibited ex parte communications. Instead, Magistrate Judge Duncan's statements and actions demonstrate that he is not biased against Defendants and remains firmly committed to the adversarial process and his ethical obligations.

**ARGUMENT**

**I. RULING AGAINST A PARTY OR USING HARSH LANGUAGE WITH RESPECT TO A PARTY'S CONDUCT DOES NOT DEMONSTRATE BIAS. IF IT DID, RECUSAL WOULD BE DEMANDED IN MOST CASES.**

Since the U.S. Supreme Court's decision in *Liteky v. United States*, 510 U.S. 540 (1994), federal courts have converged on an accepted definition for what merits judicial disqualification for bias under 28 U.S.C. § 455. This standard protects a judge from recusal motions merely because one party is disgruntled with the results of the court's view of the party's behavior. With one exception, disqualification is warranted only when the alleged bias or prejudice arises from an extrajudicial source, which the Court defined as "a source outside the judicial proceeding at hand." *Id.* at 545. The reason for this limitation is clear: judges are human. It is unavoidable, therefore, that judges may come to strongly dislike a particular party over the course of proceedings. This feeling may arise after reviewing the evidence in a case, because a party is disrespectful or disorganized, because the judge was forced to sanction the party for failing to comply with discovery, or for any number of other reasons. This natural reaction to what may happen during court proceedings, in and of itself, cannot be grounds for disqualification. Accordingly, in *Liteky*, the Court concluded that a judge is not subject to disqualification even if he or she becomes "exceedingly ill disposed towards [a] defendant . . . who has been shown to be a thoroughly reprehensible person." *Id.* at 550-51. In short, judges are entitled to voice concern or exasperation.

*Amicus* is especially troubled by the notion that something so subjective and poorly defined as ill-disposition could ever be a basis for recusal. The last person who could be objective about demeanor or tone is the party who has been reprimanded or had his or her best argument rejected. A rule that permits disappointment or hurt feelings to be the source of charges of bias and demands for recusal would risk producing a side show that supersedes the main event in most cases. As a result, the only exception to the extrajudicial source rule is when the moving party can demonstrate that the judge's conduct crosses the line of normal human reaction and instead demonstrates "deep-seated favoritism or antagonism that would make fair judgement impossible." *Id.* at 555. The Supreme Court cautioned, however, that this would occur "only in the rarest . . . circumstances." *Id.*

Movants claim that Magistrate Judge Duncan's "tone and demeanor" showed bias that merited disqualification. Def.'s Mot. Disqualify 4:20, Feb. 23, 2018, Dkt. 2641. But to prove this assertion, the movant must demonstrate that the judge has shown "deep-seated favoritism or antagonism" as articulated in *Liteky*. Translating demeanor into a basis for recusal might result in an epidemic of such motions. Further, generalized statements from the lawyers about a judge's demeanor are not enough to prove bias. *See, e.g.*, *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) ("Arguments and statements of counsel are not evidence.") (citation omitted).

Besides describing Magistrate Judge Duncan's overall demeanor, Defendants cite to hearing transcripts in the first four of five bulleted paragraphs on pages 4-6 of their motion. Def.'s Mot. Disqualify 4:20-6:11. These few hand-picked examples—calling a request by Defense counsel "incredulous," for example—prove the opposite. Even after proceedings of this length, movants rely on just a handful of "examples" of what they claim to demonstrate "judicial bias." A judge is not prohibited from being even "stern and short-tempered." *Liteky*, 510 U.S. at 556. To successfully challenge a judge's objectivity, the moving party must overcome a presumption of judicial integrity. *See Clabourne v. Ryan*, 2009 U.S. Dist. LEXIS 95838, at *47 (D. Ariz. Sept. 29, 2009) (*citing Schweiker v. McClure*, 456 U.S. 188, 195 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)) (noting

that judges are presumed to be "unbiased, honest, and have integrity"). The examples Defendants put forth do not cast meaningful doubt on that presumption.

Any determination of judicial bias must be made in the context of the Defendants' behavior. *See, e.g.*, *Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1221 (9th Cir. 2014) ("The bankruptcy judge, in fact, showed remarkable restraint given Blixseth's scorched-earth litigation tactics."). The Defendants describe the events that precipitated Magistrate Judge Duncan's alleged change in demeanor in sparse and opaque language: "instances of non-compliance with certain performance measures." Def.'s Mot. Disqualify 4:21. But it is precisely the Defendants' attempt to obfuscate and minimize their violations of the agreement that proves that it is not animus, but reality, that has caused Magistrate Judge Duncan to act as he has. Defendants do not admit the parameters of the performance measures; which measures they failed to fulfill; how long they have been non-compliant; when, if ever, they will become compliant; or how many class members have suffered as a result of the non-compliance and for what duration. But it is precisely these unadmitted factors would reasonably trigger any court to schedule a contempt hearing. No judge should be hesitant to call a contempt hearing for fear of generating a motion for recusal.

The Defendants' level of compliance cannot be explained by an agreement based on vague, general goals. Rather, the parties agreed that Defendants' compliance with 103 detailed health care performance measures would be determined based on a monthly random sampling process. Stipulation at 3 ¶ 9, Oct. 14, 2014, Dkt. 1185. Under the Stipulation, monthly compliance percentages are calculated under a specified methodology and then compared with pre-determined compliance benchmarks. Index Ex. Stipulation at 17-36, Oct. 14, 2014, Dkt. 1185-1. Undoubtedly, the Defendants recognized that the detailed procedures to which they agreed would make it straightforward to determine their level of non-compliance and that rectifying any subsequent failure to meet the ordered standards would then become the obligation of Magistrate Judge Duncan, who was specifically authorized to employ "all remedies provided by law" to fulfill his mandate. Stipulation at 14 ¶ 36.

If the Court were to adopt the lowered disqualification standard for bias desired by Defendants, any judicial decision in favor of one party and against another would, thereafter, become grist for the disqualification mill. This is especially concerning given that the more outrageous the conduct by the party seeking recusal, the more likely that the judge assigned to the case would, justifiably, become frustrated. The more upset a judge is when making a finding of unexcused non-compliance by one side or the other, the more likely the judge would be to face a motion for disqualification amidst allegations of bias and prejudice—even though it was precisely the Defendants' misconduct in missing deadlines to the Court that elicited the impatience to begin. Here, Magistrate Judge Duncan's frustration with Defendants' failure to comply with the Stipulation is understandable given the extreme consequences for class members. Every day that Defendants continue to fail to comply with the Stipulation is another day that class members, according to Defendants' own mortality reviews, experience deaths that could have been "prevented or delayed." 2/28/18 Tr. at 335:8-365:7. The behavior Defendants allege Magistrate Judge Duncan engaged in should not—and in fact does not—rise to the high level needed for disqualification for bias.

## II. JUDGES ARE PERMITTED UNDER THE RULES CONCERNING EX PARTE COMMUNICATION TO SCHEDULE A HEARING FOR FURTHER FACT-FINDING ON WHAT THE JUDGE HAS READ IN THE NEWS.

The Model Code and associated guidance, case law, and the work of ethics scholars demonstrate why Magistrate Judge Duncan's viewing of the KJZZ article and subsequent scheduling of an evidentiary hearing are not prohibited ex parte communications. The types of concerns that animate the general prohibition on ex parte communication—in particular, concerns that it undermines the adversary process, that it is unfair, and that it results in bias or impartiality—are not triggered in this case. Magistrate Judge Duncan's statements and actions make clear that he has made no factual determinations on the basis of the article.

1    Contrary to Defendants' claim, neither the Model Code of Judicial Conduct nor the U.S. Judicial Code of Conduct prohibits all ex parte communications on behalf of a judge. Rule 2.9(A) of the Model Code states that "[a] judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter" subject to certain exceptions. Model Code of Judicial Conduct r. 2.9(A) (Am. Bar Ass'n 2007). Canon 3(A)(4) of the U.S. Judicial Code contains a similar provision. Code of Conduct for United States Judges, Canon 3(A)(4) (noting that the rule that "a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers" is subject to certain exceptions).

Although neither the Model Code nor the U.S. Judicial Code define "ex parte communications" or "other communications," they carve out certain communications that are explicitly not prohibited. These exemptions include communications for scheduling, administration, or emergencies; from disinterested experts on relevant law; with the parties to a proceeding for the purposes of reaching a settlement; and communications otherwise permitted by law. Model Code of Judicial Conduct r. 2.9(A)(1)-(5); Code of Conduct for United States Judges, Canon 3(A)(4)(a)-(d). Aside from the exceptions provided in the Codes themselves, courts have recognized other permissible ex parte contacts. *See, e.g.*, *Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1219 (9th Cir. 2014) ("Ex parte motions may be brought in emergencies, to preserve state secrets and in a variety of other contexts.").

As an additional limitation on a judge's communications, Model Code Rule 2.9(C) states that "[a] judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed." Model Code of Judicial Conduct r. 2.9(C). However, it is not clear what constitutes such a prohibited investigation, as, for example, it is well-settled that a judge has discretion to make an on-site view of areas outside the courtroom. *See* Richard E. Flamm, *Judicial*

-6-

*Disqualification: Recusal and Disqualification of Judges* § 45.5 (3d ed. 2017). Thus, the Model Code and U.S. Judicial Code make clear that not all ex parte communications are prohibited.

Although neither Code touches explicitly on judges' access to news articles, the purpose behind the rules governing ex parte communications would not be served by forbidding such access. The rationale for prohibiting ex parte communications is that they "undermine the adversary system, threaten the fairness of a proceeding, and create an appearance of bias and impartiality." Arthur H. Garwin et al., Annotated Model Code of Judicial Conduct 195 (3d ed. 2016) (*citing In re Mark*, 609 N.E.2d 419 (Ind. 1993); James J. Alfini et al., *Judicial Conduct and Ethics* § 5.02 at 5-3 (5th ed. 2013)). For this reason, the types of ex parte contacts that are commonly agreed to be impermissible are primarily those between judges and parties involved in or responsible for adjudicating the litigation. *See* Leslie W. Abramson, *The Judicial Ethics of Ex Parte and Other Communications*, 37 Hous. L. Rev. 1343, 1354 (2000). Thus, although neither the Model Code nor the U.S. Judicial Code specifically address judges' interaction with media, the ethical reasons for banning judicial ex parte communication are not undermined by Magistrate Judge Duncan's reading of the KJZZ article or his subsequent actions.

Ex parte communication threatens the adversary system when it is "untested by the adversary process." Am. Bar Ass'n Comm. on Ethics & Prof'l Resp., Formal Op. 478 at 1 (Dec. 8, 2017). In this case, however, Magistrate Judge Duncan's actions demonstrate his concern for guarding the integrity of the adversarial system. Magistrate Judge Duncan explicitly stated that he had not made any conclusions about the truthfulness of the article, but was following up on information that was broadcast widely and needed to be credited or ignored. *See, e.g.*, 12/20/17 Tr. at 7:23-24 ("I'm going to find out exactly what's going on . . . ."); *id.* at 8:8-10 ("I've said already that I don't know what's on my iPad from the KJZZ website is something that's true or not. It could all be made up.") Defendants allege that Magistrate Judge Duncan "stated that he entertained . . . and considered [these] communications in ruling on issues." Def.'s Mot. Disqualify 14:20-21, Feb. 23, 2018, Dkt.

1  2641. However, Magistrate Judge Duncan clearly stated that he did not do so, and his
2  actions supported that assertion.

3        Magistrate Judge Duncan's actions on the day he read the KJZZ article, rather than
4  demonstrating any alleged bias on his part, clearly evidence his commitment to the
5  adversarial process. First, Magistrate Judge Duncan informed the parties about his
6  knowledge of the article on the same day that he read it. *See* 12/20/17 Tr. at 5:6-7 (stating
7  that he read the article "this morning"). More significantly, Magistrate Judge Duncan
8  scheduled an evidentiary hearing in this very same proceeding, *see* 12/20/17 Tr. at 12:3-19;
9  *see also Schmude v. Sheahan*, 312 F. Supp.2d 1047, 1060-61, 1063 (N.D. Ill. 2004) (holding
10 that issuing a Rule to Show Cause after learning from a newspaper article that a defense
11 attorney may have "acted improperly" was not grounds for recusal because "procedural
12 protections on these issues were obviously appropriate and afforded to counsel"). In
13 discussing the hearing, Magistrate Judge Duncan specifically contemplated that Defendants
14 would "test[] by cross-examination and [] by challenging evidence" Plaintiffs' evidence.
15 12/20/17 Tr. at 12:10-15. Thus, rather than ducking the adversarial process, Magistrate
16 Judge Duncan volunteered the fact that he had read the KJZZ article, made no factual
17 determinations based upon it, and instead initiated an adversarial process that would allow
18 both parties to present and rebut evidence.

19       Similarly, Magistrate Judge Duncan's exposure to the news report did not undermine
20 the fairness of the proceeding because it did not result in favorable treatment to either party.
21 The fairness of the judicial process is undermined when one party has "an advantage in the
22 presentation of information or the decision-making of a judge without notice to all interested
23 parties." Abramson, *supra* at 1355. This is because "[w]hen ex parte communications are
24 used, excluded parties lose the opportunity to rebut unfavorable or incorrect information."
25 *Id.* In this case, however, neither party's viewpoint is being advantaged and Magistrate
26 Judge Duncan did not take account of information that may be unfavorable or incorrect.

27       Finally, the full context of Magistrate Judge Duncan's actions in this case disprove
28 any claims of an appearance of bias or impartiality. In contrast to the Defendants' cherry-

-8-

picking of Magistrate Judge Duncan's statements during this exchange, the inquiry into the appearance of bias or impartiality "is an objective one, made from the perspective of a reasonable observer who is informed of *all* the surrounding facts and circumstances." *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000) (*citing Liteky v. United States*, 510 U.S. 540, 548 (1994)) (emphasis added). The Model Code defines "impartiality" as the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." Model Code of Judicial Conduct, Terminology. Rather than serving as evidence of bias or impartiality, Magistrate Judge Duncan's aforementioned statements and his scheduling of a hearing provide compelling evidence that he brought "an open mind" to his consideration of the truthfulness of the KJZZ article.

This conclusion is consistent with guidance from the American Bar Assocation. In a recent formal opinion, the ABA offered guidelines for when judges should engage in independent factual research, as well as hypotheticals to provide guidance on when independent research is permissible under the Model Code. *See* Am. Bar Ass'n Comm. on Ethics & Prof'l Resp., Formal Op. 478 at 6. The guidelines state that judges may not seek out information from the Internet that will be relied on for factual determinations in the proceedings, or "background information about a party or about the subject matter of a . . . case." *Id.* Similarly, the hypotheticals offer examples of prohibited Internet research. These include Yelp and Google Maps searches to determine whether a restaurant could have actually supported the hours that an attorney claimed in a case involving overtime pay and receiving information from a clerk on "the proper techniques and analysis for investigating fires of unknown origin," *id.* at 8, in a case in which competing experts testified on the cause of a fire that destroyed a plaintiff's property. *Id.* at 6-10. This ABA guidance supports the permissibility of Magistrate Judge Duncan's reading the KJZZ article: Magistrate Judge Duncan did not purposefully seek out the KJZZ article, nor did he rely on it for any factual determinations in the proceedings.

The Model Code and U.S. Judicial Code, while limiting the types of ex parte communications in which judges may participate, do not prohibit them entirely. Neither code clearly defines exactly which contacts and activities are prohibited. However, the ethical reasoning behind the enactment of these limitations—that certain ex parte communications threaten the adversary process, are unfair to one or more parties, and result in bias or impartiality—are not triggered by Magistrate Judge Duncan's actions here. Contrary to Defendants' allegations that Magistrate Judge Duncan relied on the KJZZ news article, the record clearly demonstrates that having seen the coverage, all of his actions thereafter prove his continued commitment to the adversarial process in this enforcement action.

### III. JUDGES ARE PERMITTED UNDER THE RULES CONCERNING EX PARTE COMMUNICATION TO RESPOND TO INQUIRIES FROM THIRD PARTIES DURING A CASE BY REFERRING THEM TO PARTIES' COUNSEL.

Defendants also allege that Magistrate Judge Duncan acted improperly when Dr. Jan Watson called Magistrate Judge Duncan's chambers and, upon request, was informed by staff of the identity of Plaintiffs' counsel, information which is listed in the public docket. However, this allegation is not supported by the facts on the record or the controlling standards of judicial ethics. Such administrative requests from members of the public are not uncommon. 2/28/18 Tr. at 9:7-18. Defendants now attempt to argue that this transmission of information, in and of itself, presents such an egregious showing of judicial bias that it constitutes "per se grounds for disqualification" of Magistrate Judge Duncan from the case. Suppl. Mot. Disqualify 4:5, Mar. 20, 2018, Dkt. 2692. This claim is far-fetched and does not comport with widely held understandings of the law governing judges.

First, ex parte contacts do not, in and of themselves, create a reasonable basis for questioning a judge's impartiality. *See* Flamm, *supra*, at § 48.4. Many ex parte communications, as discussed *infra* in Part II, are considered innocuous, such as those regarding scheduling, exigent situations, or harmless errors. Model Code of Judicial

Conduct r. 2.9(A); Flamm, *supra*, at § 46.2; Flamm, *supra*, at § 46.5. As such, determining whether there is impartiality at play is a context-specific inquiry that turns on multifarious factors such as "the extent and nature of the communications, the circumstances under which they were made, what the judge did as a result, and whether there is any reason to believe that the judge relied on the contacts in her decision-making process." Flamm, *supra*, at § 48.4.

Defendants argue that, to an "objective observer," an appearance of impropriety is presented by the chambers' handling of Dr. Watson's call. Specifically, Defendants attempt to argue that that the chambers' practice amounted to "acting on" calls, and thus, because Magistrate Judge Duncan had formerly said that he does not "act on" calls, he must be disqualified for partiality. Suppl. Mot. Disqualify 2-3. This argument is troubling and unreasoned. Magistrate Judge Duncan's explanation of his chambers' method of handling calls reflects best practices in judicial ethics.

Especially in high profile cases, judges' chambers inevitably receive communications from members of the public. It would be unreasonable for such communication to result in the de facto disqualification of a judicial officer who received it—this standard would impede the basic functioning of the judicial system. Given this, the standard in the field of judicial ethics is that judges should "endeavor to disregard such communications when they inadvertently receive them." Flamm, *supra*, at § 47.7; *see also, e.g.*, *Ford v. Strickland*, 696 F.2d 804, 811 (11th Cir. 1983).

Here, Magistrate Judge Duncan has done exactly that. When his staff receives inevitable phone calls from members of the public wishing to discuss the substance of the case, the callers are merely advised to go on record with their suggestions. 12/20/17 Tr. at 9:2-15. As Magistrate Judge Duncan made clear in his statement, even if some callers may have possessed information that would be relevant to the case, he refused to act on them unless they agreed to make their claims in the context of the litigation. *Id*. This practice is in line with the avoidance of impropriety that is required by the Model Code and the U.S. Judicial Code. The latter Code notes that the appearance of impropriety is only found where

"reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired." Code of Conduct for United States Judges, Canon 2, cmt. 2A. Magistrate Judge Duncan's arms-length handling of inevitable public communications certainly demonstrates best practices to avoid this problem.

Defendants' attempt to characterize the chambers' administrative referral of Plaintiffs' counsel as an instance of "acting on" incoming substantive ex parte communications—which the Court has clearly taken great pains to avoid—is thus inaccurate. In particular, Model Code Rule 2.9(A)(1) specifically exempts communications for "administrative purposes, which do[] not address substantive matters," from the ban on ex parte communications. Model Code of Judicial Conduct r. 2.9(A)(1). After all, judges are not only adjudicators, but also administrators of the court; as such, it is well recognized that ex parte communications related to the exercise of these administrative functions are not cognizable grounds for a judge's recusal or disqualification. *See, e.g.*, *Cordoza v. Pac. States Steel Corp.*, 320 F.2d 989, 1000 (9th Cir. 2003) (holding that the judge's "administrative responsibilities gave her substantial latitude to consult with outside sources"); *Devolder v. Lee*, 2014 U.S. Dist. LEXIS 107071, at *9-10 (E.D. Mich. Aug. 5, 2014) (noting that the Sixth Circuit "has concluded that ministerial communications and actions that do not pertain to the parties as adversaries are not grounds for disqualification"). Issues of non-substantive court procedure, like the communication with Dr. Watson in this case, are also commonly exempted. Flamm's Judicial Disqualification treatise notes that "the ex parte communications rule has seldom, if ever, been interpreted in such a way as to prohibit a jurist from engaging in communications, even on an ex parte basis, if those contacts pertain to matters of court procedure." Flamm, *supra*, at § 46.6. For example, in 2016, the Third Circuit held that telephone calls with the District Judge's chambers were not prohibited ex parte communication because they were merely "communications regarding procedural issues," with "no indication that substantive advice was either solicited or offered." *In re Whitchurch*, 639 F. App'x. 772, 775 (3d. Cir. 2016).

1  The communication between Dr. Watson and Magistrate Judge Duncan's chambers, in this case, was clearly a routine, non-substantive matter. The information concerning the identity of Plaintiff's counsel was already in the public docket. The Court, however, understanding that the docket is not as easily accessible to some members of the public as it is to others, provides such information to callers as an accommodation to the public. 2/28/18 Tr. at 9:7-18. Furthermore, defendants do not suggest that any substantive information was shared on the call. Model Code of Judicial Conduct r. 2.9. Despite the obvious procedural nature of the call, however, Defendants attempt to argue that the call gave Magistrate Judge Duncan "personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b). This is unsupported either by the record or in Defendants' motion. Not only is the party who seeks to disqualify the judge assigned the burden of proof, but judges are also afforded the strong presumption of integrity and impartiality. Flamm, *supra*, at § 4.5; *Withrow v. Larkin*, 421 U.S. 35 (1975). Defendants have not met their burden in this case.

## CONCLUSION

Courts maintain a high standard for disqualification—whether due to bias or ex parte communications—because motions to disqualify can be readily abused, whether to delay proceedings, embarrass a judge, or "judge shop" for a decisionmaker more sympathetic on the merits. Against the backdrop of the Defendants' feelings of animosity towards Magistrate Judge Duncan at the time of the Stipulation, Defendants' motion appears to be motivated by such improper purposes. The same judge Defendants and Plaintiffs selected to enforce the Stipulation because of his "unique ability to effectuate the parties' intent in any future proceedings," Def.'s Mot. Disqualify 3, *citing* Order 1, Oct. 22, 2014, Dkt. 1194, is now, after several decisions unfavorable to the Defendants on the merits and un-challenged as to substance, nonetheless are deemed "devoid of impartiality." *Id.* at 4.

The appropriate remedy for defendants who merely disagree with the decisions of a judge can never be disqualification. "Almost invariably, [judicial rulings] are proper

grounds for appeal, not for recusal." *Liteky*, 510 U.S. at 555. Magistrate Judge Duncan has not exhibited personal bias and should not recuse himself on that basis.

Accordingly, *amicus* respectfully requests that this Court deny Defendants' Motion to Disqualify Judge Duncan from All Further Proceedings.

Dated: March 30, 2018.

Respectfully submitted,

/s Milton Wagner

Wagner Law LLC
Milton Wagner (Bar No. 024976)
340 East Palm Lane, Suite 255
Phoenix, AZ 85004
(602) 456-4166
mw@wgnrlaw.com

*Counsel of Record*

Lawrence J. Fox
George W. and Sadella D. Crawford
Visiting Lecturer at Yale
127 Wall Street
New Haven, CT 06511
(203) 432-9258
lawrence.fox@yale.edu

*Of Counsel*

-14-

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

/s Milton Wagner