**Index of Exhibits to Declaration
of David C. Fathi**

**Exhibit 1**     March 2, 2018 email from Angela Fischer to Amy Fettig and David Fathi

**Exhibit 2**     Redacted documents attached to March 2, 2018 email from Angela Fischer to
Amy Fettig and David Fathi

**Exhibit 3**     March 7, 2018 emails between Angela Fischer and Jennifer Onka

**Exhibit 4**     March 7-22, 2018 emails between Angela Fischer and Jennifer Onka

**Exhibit 5**     March 29, 2018 email from Angela Fischer to Amy Fettig and David Fathi

**Exhibit 6**     Redacted documents attached to March 29, 2018 email from Angela Fischer to
Amy Fettig and David Fathi

**Exhibit 7**     April 5, 2018 emails between David Fathi and Angela Fischer

**Exhibit 8**     January 25, 2018 letter from David Fathi to Ashlee regarding revised
Monitoring Guide language

**Exhibit 9**     April 4, 2018 email from David Fathi to Ashlee Hesman regarding revised
Monitoring Guide

**Exhibit 10**    April 2, 2018 letter from Richard Valenti to Plaintiffs' counsel regarding
Defendants' objection to producing some of the documents requested

**Exhibit 11**    April 3, 2018 letter from Corene Kendrick to Richard Valenti

**Exhibit 12**    April 5, 2018 email from Richard Valenti to Plaintiffs' counsel declining to
engage in a meet-and-confer

**Exhibit 13**    February 2018 ADC/Corizon health care staffing report

# EXHIBIT 1

| | |
|---|---|
| **From:** | Angela Fischer |
| **To:** | Amy Fettig; David Fathi |
| **Subject:** | State of Arizona Department of Corrections/Corizon Deliberate Indifference |
| **Date:** | Friday, March 02, 2018 8:59:38 AM |
| **Attachments:** | Letter to the Board Chairman 9_29_2017 (1).pdf |
| | Fischer Response to Memorandum 7_21_2017.pdf |
| | Hazard Duty Pay 8_24_2017.pdf |
| | RE__Just checking in.pdf |
| | Additional Work Assignment.pdf |

Good morning Ms. Fettig and Mr. Fathi,

My name is Angela Fischer and I am currently working in the Arizona State Prison system for Corizon Healthcare. I have a plethora of evidence that demonstrates deliberate indifference toward patient mental health and medical needs in the Arizona state prison system. I have been trying for the better part of a year and half to work within the system to effect positive change, however it appears impossible to make substantive and lasting change from within. I have spoken to Corizon leadership, including the chairman of the board regarding my concerns to no avail. I would like to assist the prisoners in the system by offering support to the ACLU as you continue to fight for their rights. I have attached a letter I wrote to our board chairman outlining my concerns and a few other documents that provide some insight into the issues. I have dozens of emails demonstrating the substandard condition and care in the system. I would appreciate the opportunity to talk with you about my concerns.

Thank you,
Angela
████████

--

# EXHIBIT 2



July 21, 2017

Lynn Calcote, Ph.D.
Regional Director of Mental Health, VPBH
950 W Elliot Rd, Suite 220
Tempe, AZ 85284

Dr. Calcote,

I am in receipt of your memorandum dated July 12, 2017 and would like to take this opportunity to respond to the information therein.  In your memorandum you indicated that on the March and April CGARS lapses in my documentation, "Specifically, the issues were missing documentation and not noting that a confidential setting was offered.", were cited as factors in the facility's non-compliance with suicide watch documentation.

After reviewing the CGAR report for March, I have discovered that not a single patient that was found to be noncompliant was on my caseload, nor did I have the opportunity to see them on watch or for follow-ups during the month of March.  The patients that were found noncompliant were:

      ▆▆▆▆ – This noncompliance finding was due to 6 nursing watch notes that did not state whether a confidential setting was offered.
      ▆▆▆▆ – This noncompliance finding was due to 4 nursing watch notes that did not state whether a confidential setting was offered.
      ▆▆▆▆ – This noncompliance finding was due to 7 nursing notes that did not state whether a confidential setting was offered.
      ▆▆▆▆ – This noncompliance finding was due to 3 nursing notes that did not state whether a confidential setting was offered.
      ▆▆▆▆ – This noncompliance was due to a mental health watch follow-up that was late, however this patient was not in my care or on either of my units at that time.

After reviewing the CGAR report for April, I found 1 patient where I did not document a confidential setting.  Another patient was in my unit and was not seen for a watch appointment; however, that watch appointment happened on a Sunday when I was not at the facility.  The patients that were found noncompliant were:

      ▆▆▆▆ – The note on the CGAR report states "released on 10 minute watch". This was not my patient.
      ▆▆▆▆ – According to the CGAR report the date of noncompliance is 4/16 which was a Sunday and I was not scheduled to cover the facility that weekend.
      ▆▆▆▆ – The CGAR report indicates that an incorrect note was used for watch. This was not my patient.

███████ – The date of noncompliance for this inmate was 4/10.  I saw the patient on that day and did not indicate whether the patient was offered a confidential setting.

███████ – Per the CGAR report, the 7-10 day watch was completed 7 days early. This was not my patient.

For the month of May you indicated that I *frequently* did not indicate whether patients were offered to be seen in a confidential setting.  You also indicated that noting a clinic setting is not sufficient to meet the stipulation requirements, however my notes not only indicate the clinic setting, they also indicate that the setting was private.  In reviewing this with Dr. Leonard on 7/17/2017, I will change the wording from private to confidential moving forward.

You provided the following examples:

May 5, 2017, ADC #███████ – The note in question is not my note.  I did not see this patient on May 5th. This patient was seen by another clinician.
May 5, 2017, ADC #███████ – I failed to note confidential setting.
May 9, 2017, ADC #███████ – I failed to note confidential setting.
May 16, 2017, ADC #███████ – I saw this patient on May 16th in a private setting and it is documented in my note.
May 17, 2017, ADC #███████ – This patient was seen for his CSW during an ICS which happened on his way to a private setting for his appointment.  I concede that the way this is documented does not express this.  In discussing this with Dr. Leonard, I know how to move forward to make sure I explain why a confidential setting was not available.

You end your memorandum as follows; "Your ongoing failure to note offering to see patients in a confidential setting is a concern and a significant contrast to the fact that your treatment notes are otherwise of excellent quality."  I need to object to your characterization that there is an ongoing failure to document a confidential setting.  I concede that in the months of March, April and May, I failed to note a confidential setting a total of 4 times, which is hardly frequent given the fact that I see upwards of 200 patients per month; a number which doesn't take into account the patients I see on my weekend rotations.  My failure to document a confidential setting for the months of March, April and May amounts to a .0067 failure rate.

Dr. Calcote, as you know, at the Phoenix complex, and specifically in Baker and George Wards, we are working with the most acute mental health patients in the system.  Treating patients with this level of acuity in the best of circumstances is difficult and taxing; however, we both know we are not working in ideal circumstances.  The circumstances at the complex are riddled with conflict and competing priorities between the Department of Corrections and Corizon Health. These priorities could be complementary, but certainly are not at this point in time, especially at the line level.

While I strive to be impeccable in my work, you can expect that I will not be perfect. I am a professional and when I make a mistake I am eager to understand that mistake and correct it moving forward.  Receiving what amounts to a write up from you without so much as a single personal conversation about your concerns and without due diligence regarding the veracity of the information you cited, is emblematic of the larger problem at play in our organization.  If we are to improve we need to stop reacting defensively and reflexively and work together to get to the root cause of the issues that would result in an outstanding employee making these 4 mistakes.  I am hopeful that we can analyze the root cause of the Phoenix performance problems and work to put procedures in place to eradicate them; all the while, keeping our team engaged and positive.  Below you will find a list of requests that would certainly make my work life more bearable and I suspect they would help the rest of the team as well; most importantly, I believe they would foster an environment where our patients receive safer, more effective, and more efficient mental health services.

Please help create a more positive work environment at Alhambra.  Please send memorandums of the things we do well in addition to the things that you believe we are doing wrong.  This memorandum from you is the first piece of official written feedback I have received from Corizon in my tenure.  It would have been significantly easier to swallow, had a written memorandum been issued on June 15th when the ACLU called me out by name for exemplary patient care.  Did you know that I was named Non-uniform Employee of the Month by the Department of Corrections for January 2017?  It would have been nice to have been acknowledged by Corizon for having achieved that honor.  Your lack of communication on the good things we accomplish here does not dissuade us from doing our best day after day, but positive communication would make us feel like you support us and that you appreciate that we are all working diligently toward the same goals.  We need more communication, information, and acknowledgement, not just criticism.

Please make sure we have mental health leadership at this facility that is well versed both in clinical issues and administration/management techniques.  Since I joined the Corizon team I have had 4 clinical directors or acting directors, each with their own philosophies and perspectives, none of whom, for lack of time and being overwhelmed, provide substantial written expectations and often contradict each other, you, and/or the director before them.   When we do something wrong or make mistakes, please assume that we are trying to make sense of the multiple streams of verbal information that is being provided to us and that at heart we want to do the right thing.

Please ensure that we have the resources necessary to do our jobs effectively and efficiently.  For example, there is only one location on the Baker Ward to see patients where they can be restrained in a confidential room with computer access.  Whenever the psych provider or director are present, I am often left without a safe place to see patients.  I have been trying unsuccessfully for the better part of 5 months to get a laptop that provides email, Eomis, and the Microsoft office suite wirelessly, so that I can work in the group room, where there are restraint chairs but no computer access.

As an alternative I requested that a restraint chair and computer be installed in an additional location on the unit to accommodate the number of people working on the unit, which also has not come to fruition.  Similarly, there is not a single location on the George Ward with computer access where patients can be restrained, which was part of the problem that led to the assault I endured at the hands of an unrestrained patient back in February.  There is also an issue on the Quiet Ward with regard to a confidential setting.  If the medical provider is using the medical examination room, we have no place to see the patients that offers confidentiality and safety for our clients and clinicians, which is part of what I believe results in cell side assessments.

Please staff our facility at a level that allows us to do our jobs and take time to eat our lunches or leave on time without feeling guilty.  At one point in time the Baker Ward was staffed with 2 psychology associates and 2 psych techs.  If we want to run a mental health treatment program, we need the resources to run a treatment program, both human and material resources.  In addition to being responsible for Baker Ward, I am also responsible for George Ward which requires a full-time psychology associate and a full-time psych tech to run effectively.  Essentially, Baker and George Wards, which need 3 psychology associates, are being run by one psychology associate.  Similarly, another psychology associate is handling Ida Ward and King Ward, both of which warrant a full-time psychology associate of their own.

Please fully staff our facility on weekends.  What started out as a 2-hour weekend shift has turned into seeing upwards of 17 patients a day.  Doing this in a clinically appropriate manner in a confidential setting, requires a full day or more.  This cuts into the limited time we have to handle our personal business and recharge for the taxing week that we know lies ahead of us.

There has not been one single day since I joined Corizon that our facility has been fully staffed with mental health clinicians.  The workloads that we are managing are not sustainable and you can expect our CGARs to suffer until we have ample staff to tend to all areas in a reasonable work day.  In light of these facts, please consider that we are really doing all that is humanly possible to try to meet the expectations with a skeleton crew.  Please acknowledge this and provide negative feedback gently, and couch it in the fact that we are actually achieving the impossible.  This will make us want to continue working for you and Corizon.

Please provide sufficient time for training.  Please provide PRN mental health staff to cover our duties while we are in training, rather than trying to cram all of our other work around our mandatory trainings.  Please provide PRN mental health staff to cover sick leave.  As it stands today, when one of our coworkers is sick, we are required to increase our already overloaded schedules by adding patients to cover the person who is out sick.  There are pools of mental health clinicians that provide PRN mental health staff in the same manner that PRN staff is provided for nursing.  Two companies in the Valley that do this are At Work and Maximus.  By providing mental health PRN staff, our mental health leadership will be able to focus on the tasks of

leading rather than covering units so we can meet our performance goals.  This will provide them with ample time to properly train, support, and assist us.

Please open communication lines with us.  There are many meetings that happen behind closed doors where clinical decisions are made which we are not privy to.  Our patients are often moved without our input and/or against our clinical judgement, and without proper opportunity for closure for the patient, which leads to poor patient outcomes, distrust, and decompensation at their next housing unit.  Please tell us what is going on in a timely manner and explain the rationale behind decisions so we can understand them.  Please write memos and instructions for important things and put dates on them so we know which is the prevailing directive.  Be aware that when you send memorandums that require our signature we feel like we are going to be written up if we make a mistake.  These types of communications make us feel threatened, not engaged.  Please provide written information in the format of weekly or monthly bulletins that outline the key accomplishments and concerns of the Corizon teams across the state.  Please provide information about Corizon corporate, which will stand as reminders that we are part of a large thriving organization; an organization that cares about us and wants us to succeed in our jobs.

Please promote an environment that requires professional behavior, including cordial communication, both written and verbal; even when there are disagreements.  Please encourage prompt responses to emails and phone calls, and if a quick answer is not available to a problem, let's acknowledge that the communication was received and is being tended to.  This will foster more teamwork and collaboration and will ultimately result in better patient care.

Please protect our safety and compensate those of us working in hazardous work environments.  Since I joined the Corizon team I have been required to wear a safety vest daily.  I was informed that the Phoenix facility is considered a hazardous site and that DOC personnel receive Hazard Duty pay for working in the facility (aside from Aspen).  As you are aware, I have requested that I be paid the stipend that is paid to other Corizon staff who are required to wear safety gear to no avail.  Acknowledging this and paying us the stipend will go a long way to help us feel like Corizon cares about our wellbeing and compensates us appropriately for the risks we take daily in coming to work.

Please ensure that when incentives are offered, they are received swiftly and pointedly.  One of the reasons I joined the Corizon team was the tuition reimbursement that is offered to the employees.  For some reason, this process is very cumbersome and even when I believe I have done everything I need to do to get the reimbursement, the reimbursement is not provided.  I have tried repeatedly to rectify this situation.  Getting little things like this handled by administrative personnel will free us up to focus on patient care and let us know that Corizon intends for us receive the offered benefits.

FISCHER 005

Please solicit our input and inquire if we are satisfied with our jobs.  Please conduct anonymous polls so we feel safe expressing the things that are not working for us or that we believe pose a risk to ourselves or to our patients.  Please ask us why things are going awry rather than vaguely telling us we are doing things wrong.  For example, the CGARs monthly meetings offer data at a very high level and when that data is evaluated in further detail it is often found to be misinterpreted or not attributable to the person thought to be responsible.  In order for us to grow and improve we need to truly understand our deficiencies on an individual basis, to make the necessary adjustments.  Group chastising sessions only diminish our already dwindling morale.  Asking our opinions about these and other issues will demonstrate that you care about our thoughts and that you value our experience and education.  It will also demonstrate that you are vested in continually improving our working conditions.

Please guide us and help us when we run into issues with correctional staff and patient treatment at our facility.  We strive to use the Information Report system set in place to address problems in the facility, however, quite often when serious issues are written up, there appears to be no action taken to rectify the problems.  The officers cited continue to come to the units often inciting and inflaming patients and otherwise disturbing the milieu, to the detriment of all the patients; and sometimes the officers begin to retaliate against us.  Please explain the other remedies available to us to address these concerns so that we do not feel we are complicit in the continued mistreatment of patients in our facility.

In the interest of time and the duties that await me, I will close this letter in hopes that we can continue moving forward together as a team.  If I can provide any additional data or if you would like to discuss any portion of this letter I would welcome an invitation to meet with you.

Sincerely,

Angela Fischer, LPC
Psychology Associate

Attachment: Memorandum dated July 12, 2017 referenced herein.

Cc:   Mariann Burnetti-Atwell
       Rhonda Almanza
       Lynn Cole
       Dr. Leonel Urdaneta
       Richard Watts
       Dr. Stefanie Leonard
       Diane Ortega



August 24, 2017

Lynn Calcote, Ph.D.
Regional Director of Mental Health, VPBH
950 W Elliot Rd, Suite 220
Tempe, AZ 85284

Re: Hazard Duty Pay

Dr. Calcote,

Please accept this letter as a formal request that I be paid hazard duty pay, retroactively from my start date.  I was made aware when I first arrived at this facility that I was required to wear protective gear at all times, e.g. a stab-proof vest and safety goggles.  There are signs on the unit doors which state that protective gear is required.  I have been wearing such gear since my first day on the job.  Shortly after my arrival, I requested that I be paid the hazard duty pay that is being paid to other staff members at other facilities who are required to wear protective gear.  I have informally asked each of my directors and the Facility Health Administrator for hazard duty pay and finally began making my requests in writing in early March, after I was assaulted by an inmate in the George Ward in February.

Prior to the assault, on December 12, 2016, I requested that the lock on the George Ward run be changed to a lock that would engage when the door was closed rather than a lock that needed to be locked on both sides.  I followed up on that request on January 17, 2017 because the lock had not been changed.  On January 18th, I was advised by DOC staff that they were looking into the situation and would apprise me of the outcome.  On February 1st, 2017 I was assaulted by an inmate on George Ward due to the insufficient lock on that door.  The lock was changed to a self-latching lock the next day.

On March 15th, I received word that Lynn Cole would be following up on which units the DOC designates for hazard stipends.  On the same day, I sent a reply email indicating that the DW at the complex indicated that all Phoenix DOC employees working in the Alhambra/Phoenix complex, except Aspen, receive hazard duty pay.  On March 22nd, FHA Watts indicated that he was also looking into this issue.

On June 16th, I asked you for the status of this request, to which you responded, "I will see if I can find out the sites."  Again I responded, "According to DOC all officers in Alhambra, except for Aspen, receive hazard duty pay."  In your response you indicated, "I would think that would be the case at Kasson and Lewis Rast Max also."

On July 21, again I requested that I be paid the stipend that is paid to other staff members working in hazard duty sites.  I have received no response to this request.

FISCHER 007

On August 9th an inmate threatened to kill me and my children.  The IM repeated this threat to a DOC Captain on August 13th.  I received notification of this threat which stated that the IM knew where I worked in the community and that it would be easy to kill me.  This IM is currently incarcerated on murder charges.

Since the inception of my employment with Corizon, I have received numerous patients that arrive on my units with warning emails indicating that they are dangerous and assaultive.  One is even well known for having been found with shanks at a different facility.  There have been numerous staff assaults in both of my units since I started.  I have been assaulted at this facility and have received death threats while working here.  Corizon is fully aware of the danger involved with our work in this facility.  As such, I expect to be paid the hazard duty pay.  Please let me know when to expect this payment.

Sincerely,

Angela Fischer, LPC, CCHP
Psychology Associate

Cc:    Mariann Burnetti-Atwell
       Rhonda Almanza
       Roland Maldonado
       Lynn Cole
       Richard Watts
       Stefanie Leonard
       Diane Ortega



September 29, 2017

Jeff Goldberg
Corizon Board Chair
103 Powell Ct, Suite 200
Brentwood, TN 37027

Re: Company Update 9/29/2017

Dear Mr. Goldberg,

Thank you so much for the communication this afternoon, as well as your previous communications. I am a licensed professional counselor in an inpatient psychiatric unit, currently working for Corizon on the Arizona Department of Corrections contract. In my prior work life, I was a national sales manager for a fortune 100 company, that developed custom IT solutions for state and government human services entities. I also served as the State of Arizona, Statewide HIPAA Coordinator from 2002 - 2012, where I became acquainted with the Arizona Department of Corrections director, Charles Ryan. Your letter today really resonated with me on many levels. I have been employed with Corizon since October 2016 and have found myself wanting to leave out of frustration and exasperation on many occasions. I believe the work I do with the inmates in this prison makes a positive impact in their lives, will perhaps make this world a bit safer when they leave prison, and speaks to **Corizon's mission to deliver safe, effective and efficient healthcare services.** However, the administrative and organizational challenges at Corizon seem inconsistent with that mission, and appear insurmountable at times.

In keeping with my value of speaking truth to power, I recently wrote to several leaders in our organization, including my supervisor, the site clinical director, the site facilities health administrator, the associate regional director of mental health, the regional director of mental health, the associate vice president of operations, the vice presents of operations, and the senior vice president of behavioral health operations, to share some of my concerns in writing and make requests for remedies (see attached letter dated 7/21/2017). Not one single person in this list responded to my communication, not even to acknowledge having received it.

Amongst my concerns were the following primary issues; staffing, process management and patient care. Specifically, with regard to our mental health staff, our facility has been and remains dramatically understaffed. With the current staffing levels, our facility is not even approaching best practices or your vision of **being recognized as "the absolute best in our field** - consistently and across all of our sites - **bar none."** There are virtually no documented processes that inform employees of their roles, the expectations, and the processes by which they need to successfully and effectively accomplish their tasks. There is no meaningful or organized site-specific training and there are no job specific training documents

provided to employees.  Furthermore, we are often without the necessary equipment and materials to accomplish our tasks, as required by our contract and the terms of the lawsuit under which we are operating (Parsons v. Ryan).  In terms of patient care, we are unable to spend sufficient time with patients to assist in their mental health recovery and spend most of our time in crisis management and de-escalation mode.  Tragically, some of the mental distress patients experience, is related to either neglect or overt antagonism by correctional staff.  When these issues are reported no remedies are forthcoming.

In your letter dated September 22, 2017, you explained that we need to seek the root causes for performance deficiencies.  When there are deficiencies you compel us examine ourselves and wonder if we may have bid too aggressively, staffed improperly, **or perhaps didn't understand the customer's expectations.  In this case, I** believe this is a fair characterization of our issues on the Arizona contract and I fear that in our zeal to acquire this new pending contract, that we will unwittingly disregard the lessons we have already learned by bidding below what is required to **deliver on our promises and exceed our customer's expectations.**

It is my u**nderstanding that we are at the "best and final" stage of the bidding process** for the new Arizona contract.  If this is true, it seems logical and pressing that we apply our learning and ask ourselves if the way we are bidding this contract is in keeping with our values and whether our bid will allow us to fulfill the agreements we are making in the contract.

Also in your September 22, 2017, in addition to asking us to consider whether we bid too aggressively, misunderstood the client expectations, improperly staffed or underutilized technology; you asked us to wonder if it could be something else entirely.  As a former commissioned national sales professional, I am wondering if the compensation for our sales team is strictly tied to acquisitions, or if the compensation is split equally between acquisition and contract delivery.  I have worked in organizations where I was paid on a traditional acquisition model and in an organization where I was paid on an acquisition/delivery model.  I found myself more vigilant in the model where my compensation was tied to both ends of the spectrum.  I wonder if this is something that you and the operating committee might consider in the future, if you haven't already.

In closing, I want to thank you for your time.  Thank you for the invitation to communicate my concerns; and even more importantly, thank you for sharing your vision with me.  Yours is the first communication where I felt hopeful that I was working for an organization that shared my values.

Sincerely,

Angela C. Fischer, LPC, CCHP

# RE: Watches

Fischer, Angela
**Sent:** Friday, February 02, 2018 12:54 PM
**To:** Taylor, Eddie
**Cc:** Watts, Richard; Leonard, Stephanie; Calcote, Lynn; Johnson, Gayle

Looks like you already have someone capable of this.  If this was already working, I am wondering why there is a need for a change.

If this is a must, you know I will do my best, as I always do.  This appears to me to be less of a function of planning and scheduling and more a function of time and mathematics.  For example, today I am scheduled for 3 separate 1 hour meetings and I need to take my uninterrupted half hour lunch.  With the time it takes to walk from Flamenco to the atrium and back, plus any time the meetings run over leaves me with 11 patients to see in approximately 4 hours.  We should also consider that sometimes there is a wait to get patients brought to the confidential setting or to find an available room to see patients.  I will also need to submit the daily report to DOC and submit the narrative reports to Corizon management.  We should certainly factor in at least 30 minutes for those activities.  So now I am down to less than 3.5 hours to see 11 patients, 7 of which are on suicide watch.  How much time would you like me to spend with each patient?  Should I be teaching them coping skills or just asking them if they want to kill themselves?  If it is the former then it will take at least 20-30 minutes per patient, plus time to document and time to walk from area to area.  Should I be reviewing their treatment plans and any notes from providers who have seen them since my last session?  If so, this will take time.  If there is an ICS would you like to me to go?  If so, this will take time.  If there is an officer asleep on Quiet, would you like me to file and incident report?  If so, this will take time.  If they need a referral, would you like to submit one?  And if Mason needs to staff something with me for a patient on George Ward, would you like me to do that?  Would you like me to answer emails today?  All of these things take time.

If I see the 7 suicidal patients for 30 minutes each that will take the remaining 3.5 hours.  What shall I do with the other 4 patients that need to be seen?  I suppose I could reduce the amount of time I spend with the suicidal patients.  If I see them for 20 minutes each, that will take 2 hours and 20 minutes.  That leaves me 1 hour and 10 minutes to see the 4 other patients.  Is it ethical to provide therapy to patients in less than 18 minutes each?  Do you want me to provide therapy and help patients make gains so they can move off suicide watch, and move patients from inpatient units to less restrictive environments to make room for more acute patients?  Or would you like me to just get a note in eOMIS so we

don't miss our CGAR mark?  The math is not hard to figure out.  There are a certain number of patients at the Phoenix complex and a certain number of counselors.  When we add in all the other duties we have, there is no way to ethically provide care according to our contract or our licenses.  If you have done the math and find a different outcome, please share it with me.

When I was working Baker and George Ward I routinely worked 2 or more hours of overtime per day.  Of course it is possible to do these things with salaried employees, but at what cost?  Just because something can be done, doesn't mean it should.  It seems as if you are leveraging our values against us.  We obviously care about these patients or we wouldn't be here.  So we go the extra mile, then the extra mile and then the extra mile, until we can't go anymore.  I have been communicating our need for more staff since shortly after I arrived.  To insinuate that my unwillingness to provide substandard care due to staff shortages is a function of my inability to schedule and plan my day, is unacceptable.  Each and every PA that works on our team has communicated a frustration with the amount of work they are expected to produce and a frustration with the shortage of staff at this facility.  Dr. Calcote and Dr. Leonard have both acknowledged our shortage of staff.  The answer to our staffing problems is not further burdening those of us who are committed or shall I say, should be committed.  The answer is hiring more staff.  We have not been fully staffed since I started working here, aside from that one or two glorious weeks before Chahine left and Dr. McGady was moved to another facility.  There are plenty of media accounts and judicial documents that support my statements.  Properly staff our facility.  I will work 40 hours per week, and a little more if needed, but I will not work hours and hours of overtime day after day because Corizon will not hire the staff that is needed to provide proper patient care per their contract.

If you think there is a way I can provide quality care in accordance with my values and my obligation, we probably should set up that meeting so you can educate me on scheduling and planning my day.  I'd also welcome your offer of a meeting with another Licensed PA to share some insights as well.  Please let me know when we can meet on this, and the watch memo we got months ago, and for the Quiet Ward staffings.  There have been many offers for meetings and help, but a lack of follow through.

I am also wondering when our other psych associates will be coming on board.  I know we have been trying to hire someone since Chahine left in early November, McGady was moved to another facility around that same time, and Dr.

FISCHER 012

Sessions no longer appears to be working here.

Looking forward to working collaboratively so our patients get the level of care that is expected by our CEO and board members, as well as meeting the letter and spirit of our contract/technical manual,

PA Fischer

**From:** Taylor, Eddie
**Sent:** Thursday, February 01, 2018 2:13 PM
**To:** Fischer, Angela
**Cc:** Watts, Richard; Leonard, Stephanie; Calcote, Lynn; Johnson, Gayle
**Subject:** RE: Watches

PA Fischer,

You have presented excellent concerns.  In response, one person has been able to see watches, complete special intakes, and numerous other duties on an acute unit, in addition the items you have identified, in a highly competent and ethical manner.  It is possible, and I believe that you are capable of doing the same.  The watches on Delta/Echo vary and can be fewer than today's list.

If you have questions on scheduling and planning your day to complete this task, I can meet with you and have another Licensed PA to share some insights with you, as well.

Dr. Taylor

**From:** Fischer, Angela
**Sent:** Thursday, February 01, 2018 12:44 PM
**To:** Taylor, Eddie
**Cc:** Watts, Richard; Leonard, Stephanie; Calcote, Lynn
**Subject:** FW: Watches

Dr. Taylor,

In reviewing the list of watches today, I wanted to make clear that the expectation that one person will be able to see all of these watches, plus other duties, in a competent and ethical manner, is not possible.  Below are the list of watches for today:

| SIR | NAME | NUMBER | TYPE | QUIET | UNIT |
|-----|------|--------|------|-------|------|
| ███ | ███ | ███ | 10 MHW | ███ | Flamenco |
| | | | 10 MHW | | Flamenco |
| | | | Constant | | Flamenco |
| | | | 30 MHW | | Flamenco |
| | | | 30 MHW | | Flamenco |

FISCHER 013

| SIR | NAME | NUMBER | TYPE | GEORGE | UNIT |
|---|---|---|---|---|---|
| | | | 10 MHW | | Flamenco |
| | | | 30 MHW | | **Flamenco** |
| | | | | | Flamenco |
| | | | | | Flamenco |
| | | | 10 MHW | | Flamenco |
| | | | | | Flamenco |

| SIR | NAME | NUMBER | TYPE | DELTA/ECHO | UNIT |
|---|---|---|---|---|---|
| | | | 30 MHW | | Alhambra |
| | | | Continuous | | Alhambra |
| | | | 30 MHW | | Alhambra |
| | | | 10 MHW | | Alhambra |
| | | | 30 MHW | | Alhambra |
| | | | 10 MHW | | Alhambra |

In addition to these watches, I am responsible for submitting referrals, sending watch overviews, requesting room changes, attending staffings/meetings, writing meeting minutes, writing COEs, seeing patients on George Ward, running groups, covering facility call all day Monday, attending annual trainings, amongst other unplanned events that inevitably happen. As such, I am formally requesting that this schedule be changed to reflect a work load that is manageable and allows me to perform my duties in accordance with the requirements and ethical guidelines of my license.

Before I begin these duties, I strongly request a meeting to co-create a solution that will allow us to provide effective client care and treatment, as well as fulfill the compliance of the CGARs.

Respectfully,
PA Fischer


**From:** Taylor, Eddie
**Sent:** Thursday, February 01, 2018 10:35 AM
**To:** Aaron, James <James.Aaron@corizonhealth.com>; Chahine, Alecia <Alecia.Chahine@corizonhealth.com>; Collier, Marcus <Marcus.Collier@corizonhealth.com>; Ekeinde, Sandra <Sandra.Ekeinde@corizonhealth.com>; Fischer, Angela <Angela.Fischer@corizonhealth.com>; Greene, David <David.Greene@corizonhealth.com>; Hinojos, Paul <Paul.Hinojos@corizonhealth.com>; Hoffman, Jason <Jason.Hoffman@corizonhealth.com>; Lowder, Lisa <Lisa.Lowder@corizonhealth.com>; Mason, Sally <Sally.Mason@corizonhealth.com>; Ortega, Diane <Diane.Ortega@corizonhealth.com>; Pelton, Ashley <Ashley.Pelton@corizonhealth.com>; Salz, Donald <Donald.Salz@corizonhealth.com>; Straub, Brian <Brian.Straub@corizonhealth.com>; Tillman, Angela <Angie.Tillman@corizonhealth.com>; Walker, Michael <Michael.Walker@corizonhealth.com>
**Cc:** Watts, Richard <Richard.Watts@corizonhealth.com>; Johnson, Gayle <Gayle.Johnson@corizonhealth.com>; D Alessio, Barbara <Barbara.DAlessio@corizonhealth.com>
**Subject:** Watches

Dear Team,

Beginning Monday, 5 February 2018, PA Fischer will cover all watches (including Delta and Echo) from Monday - Wednesday of each week.  Dr. Salz will take over the Delta/Echo watches from Thursday - Friday.

FISCHER 014

RE: Just checking in
Fischer, Angela
Sent: Sunday, August 13, 2017 2:31 PM
To: Calcote, Lynn

Dr. Calcote,

Thanks for circling back with me on this. I know efforts are being made to try to recruit staff, however without understanding the reason people are leaving, we will simply replace them one for one. When put in open forums to discuss the challenges, for some reason people feel intimidated and don't speak out, but behind closed doors there is significant unrest and dissatisfaction that is communicated. In my opinion, we are not a team in any sense of the word and we have no common mission or purpose. It feels to me like we are all treading water, almost drowning; and it is every man for himself. I like to think that as mental health practitioners, we came into this field to provide aid and improve the lives of the people entrusted to our care, however it feels like the overriding message is for us to make sure the boxes are checked, with little consideration for the human beings we are touching in this process. At the risk of being perceived as idealistic, I believe whole-heartedly that we can meet performance measures, but we can only do this and be invested, if we keep the real purpose of our activities in mind and are property trained and staffed to meet that mission. We are here to serve. The patients are not an inconvenience or a nuisance... they are the reason we are here. I have never worked in a place so out of touch with this. If service was our mission we would be seeing patients weekly in confidential settings because we care about them, not because we are afraid we will get in trouble if we don't. We would be doing treatment planning, because it leads to better outcomes, not because it is required. We would be holding groups to offer evidenced based treatment information because it empowers the patients, not because we have to. We would be doing daily suicide watch assessments because we care that these people are on the verge of ending their lives and we would be providing tools to help empower them to make different choices, not simply hoping that time sitting practically naked in a cell alone will distinguish their wish to die. Likewise, if patients are "hiding out" we would try to understand and help them resolve what is so painful about the system that they'd rather be practically naked in a cell than deal with what awaits them in "the yard."

As it currently stands, patients are moved like chess pieces with little regard for their clinical needs, without real collaboration and without a true plan for helping them handle their mental health problems. I receive patients constantly with not a single shred of referral information. They just show up, sometimes I don't even know they are coming until they walk through the door. I wish I had the time to read their years long histories to discover their true needs, but I don't. I receive no overview of what they need from the inpatient unit. After working in the inpatient units for many months I would struggle to explain the criteria for admission to the inpatient unit, it seem so arbitrary and haphazard. Likewise, I have been told my patients need to be referred out of my programs when I do not feel they are clinically ready because we have a waiting list. When the new patients arrive and I become acquainted with them, it feels like they are often transferred for convenience or because they require too much attention, not for acute psychiatric needs.

Somewhere along the line we drank the correctional kool-aid and decided that there are "mental health" patients and "behavioral" patients. They are all patients. They all need compassion and care. In my perspective, the "behavioral" ones need even more compassion and care, not scorn and punishment. The punishment model does not work. These patients are labeled manipulative as if manipulation is a bad thing. The lengths they will go to in manipulating their environment is startling. Imagine what corner you would need to be pushed into to feel like the only answer was to swallow 12 screws or push a pencil through your abdomen. I feel it is our job to help them understand themselves and the other options there are in life. Instead, when they hit a bump, like engaging in anti-social behavior, we don't educate them and let them learn from the experience, we transfer them around and around. They languish in watch cells, harming themselves, assaulting staff, and racking up new charges and when they are "bad" enough, they get picked up again and moved abruptly, in what feels like retribution, not treatment. We can do better.

I realize that I can not fully comprehend the big picture of all that is being dealt with state-wide, but I can provide a perspective of what is happening at the ground level in Phoenix. I know there was good intention when Ms. Raak was assigned to come to Phoenix to help "fix us" and get us "back on track", however we don't need more policing, we need collaboration, transparency and inclusion. We need to be part of the solution. We need someone to ask more questions, not come in and tell us what we are doing wrong or assign someone else to keep track of us. We need partners not heroes. I do hope that our next director has some experience in organizational management, strategic planning, motivation and team building.

I am aware that this email and my previous letter crosses many lines that are not typically crossed. I am trying desperately to find a way to stay and be part of the solution to our problems, both in terms of patient care and

FISCHER 016

performance measures.  I am trying to stay because I believe we can make a difference with these patients and empower them to lead healthier lives, but honestly, it is becoming more difficult day by day.

No word on the laptop other than a part was approved to be ordered.

I wish you peace and a productive week ahead.

Sincerely,
Angela

---

From:  Calcote, Lynn
Sent:  Friday, August 11, 2017 5:23 PM
To: Fischer, Angela
Subject:   RE: Just checking in

This is not an answer to the crush, but we have hired a new psych associate who could start in two weeks if I can shove the paperwork through.  Also Dr. Ekeinde, a psychologist who worked there before starts on the 21st.  Dr. Eddie Taylor, the incoming (hopefully) Clinical Director, is sll a  waing licensur  e.  So, his entry is a bit down the road.

Even with that, there are issues that will not be remedied simply by these addions.  I w  ould really enjoy meeng with the PHX staff and hearing what the pressure points are.

Any word on the laptop?


Lynn Calcote, Ph.D.
Regional Director of Mental Health
VP Behavioral Health- Arizona
Lynn.Calcote@corizonhealth.com
Office: ██████████ ext. ████
Cell: ██████████

---

From:  Fischer, Angela
Sent:  Thursday, August 10, 2017 4:25 PM
To: Calcote, Lynn
Subject:   RE: Just checking in

Yes.  A very rough week.  I am half an hour past leaving me and s  ll ha  ve 6 notes to write because I don't have a safe place to see paen  ts with computer access on George.  I sll need t  o see 4 more Baker paen  ts and write their notes too.  This work load is not sustainable.  I rounely w  ork two or more hours past the me I should be lea  ving.  Something has got to give.

---

From: Calcote, Lynn
Sent: Thursday, August 10, 2017 2:00 PM
To: Fischer, Angela <Angela.Fischer@corizonhealth.com>
Subject: Just checking in

It sounds like you have had a rough week between death threats, DWs, and Benefits Department.  I hope you are doing okay.  If you get a chance, call me.  It sounds like it is going to take a while for the DW to sele in.


Lynn Calcote, Ph.D.

Regional Director of Mental Health
VP Behavioral Health- Arizona
Lynn.Calcote@corizonhealth.com
Office: ████████  ext. ████
Cell: ██████████

# EXHIBIT 3

**From:** Angela Fischer [mailto:███████████]
**Sent:** Wednesday, March 07, 2018 6:11 PM
**To:** Jennifer Onka
**Subject:** Re: State of Arizona Department of Corrections/Corizon Deliberate Indifference

Thank for the response, Jennifer.  I resigned on Monday.  My last day with Corizon will be
March 21st.  I would prefer that Corizon not be made aware of my identity until I am no
longer working there. I am concerned about my safety in the prison if my identity is disclosed,
as I have many concerns related to DOC security.  If there is an urgency in me speaking with
you about my concerns, I would be willing to let you disclose my identity on an agreed upon
date prior to my last day as a Corizon employee.  If there is no urgency, I look forward to
talking with you after the 21st.

Sincerely,
Angela

On Wed, Mar 7, 2018, 3:13 PM Jennifer Onka <jonka@aclu.org> wrote:

> Good afternoon Ms. Fischer,
>
> Thank you for reaching out to our office and thank you so much for the care and concern you
> have shown for the prisoners at ADC.
>
> Because you currently are a Corizon employee, and Corizon is represented by counsel, in an
> abundance of caution we have interpreted Arizona's ethical rules for attorneys to mean that we
> cannot talk to you without Corizon's attorneys' permission.  If you still want to speak with us and
> are willing to have us tell Corizon who you are, that is up to you.  Unless you give us permission to
> notify Corizon that you want to speak to us, we will be unable to speak further with you.
>
> All the best,
> Jennifer

**Jennifer Onka**
Paralegal
National Prison Project of the ACLU
915 15th St. NW, 7th Floor
Washington, DC 20005
⋮ 202.548.6602 ⋮ jonka@aclu.org
www.aclu.org



BECAUSE FREEDOM CAN'T PROTECT ITSELF

*This message may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system.*

# EXHIBIT 4

**From:** Angela Fischer [mailto:██████████████]
**Sent:** Thursday, March 22, 2018 10:18 AM
**To:** Jennifer Onka
**Subject:** Re: State of Arizona Department of Corrections/Corizon Deliberate Indifferrence

Good morning Jennifer,

I am no longer a Corizon employee and would appreciate the opportunity to speak with the ACLU about my concerns.

Thank you,
Angela

On Wed, Mar 7, 2018 at 4:11 PM, Angela Fischer <██████████████> wrote:
Thank for the response, Jennifer.  I resigned on Monday.  My last day with Corizon will be March 21st.  I would prefer that Corizon not be made aware of my identity until I am no longer working there. I am concerned about my safety in the prison if my identity is disclosed, as I have many concerns related to DOC security.  If there is an urgency in me speaking with you about my concerns, I would be willing to let you disclose my identity on an agreed upon date prior to my last day as a Corizon employee.  If there is no urgency, I look forward to talking with you after the 21st.

Sincerely,
Angela

On Wed, Mar 7, 2018, 3:13 PM Jennifer Onka <jonka@aclu.org> wrote:

Good afternoon Ms. Fischer,

Thank you for reaching out to our office and thank you so much for the care and concern you have shown for the prisoners at ADC.

Because you currently are a Corizon employee, and Corizon is represented by counsel, in an

abundance of caution we have interpreted Arizona's ethical rules for attorneys to mean that we cannot talk to you without Corizon's attorneys' permission.  If you still want to speak with us and are willing to have us tell Corizon who you are, that is up to you.  Unless you give us permission to notify Corizon that you want to speak to us, we will be unable to speak further with you.

All the best,
Jennifer


**Jennifer Onka**
Paralegal
National Prison Project of the ACLU
915 15th St. NW, 7th Floor
Washington, DC 20005
⦙ 202.548.6602 ⦙ jonka@aclu.org
www.aclu.org 🅕 🐦



BECAUSE FREEDOM CAN'T PROTECT ITSELF

*This message may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system.*

EXHIBIT 5

| | |
|---|---|
| **From:** | Angela Fischer |
| **To:** | Amy Fettig; David Fathi |
| **Subject:** | Arizona State Prison/Corizon |
| **Date:** | Thursday, March 29, 2018 7:20:49 PM |
| **Attachments:** | Inability to get patient proper psychiatric care.pdf |
| | Ongoing medical issue.pdf |
| | Request for staffing.pdf |
| | Resignation.pdf |
| | Self injurious caged inmate.pdf |

Hello Ms. Fettig and Mrs. Fathi,

I recently left employment with Corizon on the Arizona State Prison contract.  I have grave concerns about the quality of care that is being provided to prisoners in Arizona, both medically and psychiatrically.  I have attached a few documents that demonstrate substandard patient care in the facility where I was assigned.  I have tried diligently to work within the system to ensure that patients were well cared for, however substantive change does not seem possible from within; which is what prompted my resignation.  I have many other documents that demonstrate issues with facility maintenance, staffing and patient treatment.  I would appreciate the opportunity to talk with you regarding my concerns to see what might be done to improve the quality of care for prisoners in Arizona.

Thank you in advance for your consideration,
Angela

--