Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
*Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
*Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
*Desiree Licci, Joseph Hefner, Joshua Polson, and*
*Charlotte Wells, on behalf of themselves and all others*
*similarly situated*

**[ADDITIONAL COUNSEL LISTED ON**
**SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
        adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON**
**SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-DKD |
| Plaintiffs, | **PLAINTIFFS' STATEMENT RE: DEFENDANTS' SUPPLEMENTAL RESPONSE TO THE DECLARATION OF CORENE KENDRICK (DOC. 2633) [DOC. 2745]** |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

Defendants' latest filing (Doc. 2745) demonstrates, once again, that Defendants are incapable of accurately reporting to the Court on their compliance or noncompliance with the Stipulation and the Court's orders.   Defendants concede the existence of 242 additional instances of noncompliance with the Court's October 10, 2017 Order to Show Cause (hereinafter "OSC") (Doc. 2373), that they had not previously reported to the Court.[1]  Doc. 2745 at 2.  Critically, this noncompliance would never have been discovered and brought to the Court's attention but for Plaintiffs' efforts to check Defendants' initial report against Defendants' own source documents – an exercise that Defendants themselves could (and should) have undertaken, but apparently did not.  *See generally* Doc. 2633.[2]

Plaintiff summarize below, broken down by prison complex and Performance Measure, Defendants' instances of noncompliance. Defendants' supplemental report, taken at face value, shows that for the month of **December 2017**, Defendants have now admitted at least **1,314 instances of noncompliance** with the OSC.  [*See* Doc. 2576 (filed 2/5/18) (667 instances of noncompliance); Doc. 2595 (filed 2/14/18) (405 instances of noncompliance); Doc. 2704 (filed 3/23/18, first response to Plaintiffs' counsel's declaration (Doc. 2633)) (46 instances of noncompliance not previously reported); Doc. 2745 (filed 4/6/18, first response to Plaintiffs' counsel's declaration (Doc. 2633)) (242 instances of noncompliance previously unreported to the Court, including most of those listed initially in Doc. 2704)]  For the month of **January 2018**, Defendants have admitted **869 instances of noncompliance** with the OSC.[3]  [*See* Doc. 2648-1 (filed 2/26/18) (389

---

[1] Defendants argued that 106 other instances of apparent noncompliance in December were instead not applicable.  Doc. 2745 at 2. As detailed below, Plaintiffs dispute this characterization with regard to multiple PMs.

[2] As detailed in Plaintiffs' filing, Defendants' production of documents for the February 27, 2018 evidentiary hearing only included tracking reports for some (but not all) days in December 2017, at some (but not all) institutions included in the Court's Order to Show Cause.  Doc. 2633 ¶¶ 2-5, 10, 18, 26, 33.

[3] Plaintiffs' counsel has not been able to check Defendants' report of January 2018 noncompliance against Defendants' own source documents, as the agreed-upon cut-off date for the document production was December 31, 2017.

instances of noncompliance); Doc. 2662-1 (filed 3/5/18) (480 instances of noncompliance in January)).   Defendants' report regarding February 2018 compliance with the OSC is due to the Court on April 27, 2018.  [Doc. 2719]

**Defendants' Noncompliance By Performance Measure and Institution**

**PM 11 ("Newly prescribed provider-ordered formulary medications will be provided to the inmate within 2 business days after prescribed, or on the same day, if prescribed STAT.")**

The Court's OSC included Eyman and Lewis for PM 11.  [Doc. 2373 at 3]

**Eyman:** Defendants reported 29 instances of noncompliance with this measure at Eyman in December 2017.  Doc. 2576-1 at 4.  As noted in Plaintiffs' filing, Plaintiffs could not locate tracking logs that listed names of class members to compare to Defendants' report to the Court. Doc. 2633 ¶ 11.  Defendants reported 90 instances of noncompliance with PM 11 at Eyman in January 2018.  Doc. 2648-1 at 3-4.

**Lewis:** Defendants reported 54 instances of noncompliance with PM 11 at Lewis in December 2017. [Doc. 2576-1 at 5-6] Plaintiffs' Counsel identified 158 apparent additional instances of noncompliance that were listed in daily tracking logs for December 7-9, 2017. [Doc. 2633 ¶ 27]  Defendants' April 6 filing asserts that 46 of the instances listed on their source reports were in fact not applicable, because they involved medications not included in CGAR audits.  [Doc. 2745-3 at 14-15] Defendants admitted there were 68 additional instances of noncompliance with PM 11 at Lewis that were not reported previously.  [*Id.* at 15-17]  Defendants reported 95 instances of noncompliance with PM 11 at Lewis in January 2018.  [Doc. 2648-1 at 5-7]

**PM 35 ("All inmate medications (KOP and DOT) will be transferred with and provided to the inmate or otherwise provided at the receiving prison without interruption.")**

The Court's OSC included Eyman, Florence, Lewis, and Tucson for PM 35.  [Doc. 2373 at 3]  As noted in Plaintiffs' filing, none of the daily trackers for Eyman, Florence,

or Tucson referred to or documented noncompliance with PM 35 in December.  [Doc. 2633 at ¶¶ 12, 19, 34][4]

**Lewis:** Defendants reported 28 instances of noncompliance with PM 35 at Lewis in December. [Doc. 2576-1 at 10] Plaintiffs' Counsel identified 15 apparent additional instances of noncompliance listed in Defendants' source documents. [Doc. 2633 ¶ 29] Defendants conceded there were ten (10) additional instances of noncompliance not previously reported for December.  [Doc. 2745-3 at 17]  Defendants also reported 44 instances of noncompliance with PM 35 at Lewis in January 2018. [Doc. 2648-1 at 11]

**PM 39 ("Routine provider referrals will be addressed by a Medical Provider and referrals requiring a scheduled provider appointments will be seen within fourteen calendar days of the referral.")**

The Court's OSC included PM 39 at Lewis.  [Doc. 2373 at 3]  Defendants initially reported two (2) instances of noncompliance with PM 39 at Lewis in December [Doc. 2576-1 at 13]  Plaintiffs' Counsel identified five (5) apparent additional instances of noncompliance. [Doc. 2633 at ¶ 30]  Defendants first admitted these five (5) additional instances of noncompliance were not reported. [Doc. 2704 at 14]  In their April 6, 2018 filing, Defendants now argue that one of the five was not applicable because the referral from nursing line did not occur in December.  [Doc. 2745-3 at 18; *compare with* Doc. 2633 at ¶ 30(a)(i) (nurse referral to provider line on 10/26/17, provider appointment was scheduled for 12/7/17, appointment occurred on 12/7/17)]  Defendants also reported three (3) instances of noncompliance with PM 39 at Lewis in January 2018. [Doc. 2662-1 at 3]

---

[4] Defendants reported 26 instances of noncompliance with PM 35 at Eyman in December.  [Doc. 2576-1 at 8]  Defendants reported 24 instances of noncompliance with PM 35 at Eyman in January 2018.  [Doc. 2648-1 at 9]

Defendants reported 15 instances of noncompliance with PM 35 at Florence in December.  [Doc. 2576-1 at 9]  Defendants reported 13 instances of noncompliance with PM 35 at Florence in January 2018.  [Doc. 2648-1 at 10]

Defendants reported 27 instances of noncompliance with PM 35 at Tucson in December.  [Doc. 2576-1 at 11]  Defendants reported 17 instances of noncompliance with PM 35 at Tucson in January 2018.  [Doc. 2648-1 at 12]

**PM 44 ("Inmates returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital shall have the hospital's treatment recommendations reviewed and acted upon by a medical provider within 24 hours.")**

The Court's OSC included PM 44 at Eyman. [Doc. 2373 at 3] Defendants reported nine (9) instances of noncompliance with PM 44 at Eyman in December. [Doc. 2576-1 at 15] Plaintiffs were unable to locate source documents to compare to Defendants' filing. [Doc. 2633 ¶ 13] Defendants reported three (3) instances of noncompliance with PM 44 at Eyman in January 2018. [Doc. 2662-1 at 5]

**PM 46 ("A Medical Provider will review the diagnostic report, including pathology reports, and act upon reports with abnormal values within five calendar days of receiving the report at the prison.")**

The Court's OSC included PM 46 at Eyman, Florence, Perryville, and Tucson. [Doc. 2373 at 3]

**Eyman:** Defendants reported 145 instances of noncompliance with PM 46 at Eyman in December. [Doc. 2576-1 at 17-20] Plaintiffs' Counsel identified 25 apparent additional instances of noncompliance from a review of Defendants' source documents. [Doc. 2633 ¶ 14] Initially, Defendants admitted in response that there were 23 additional instances of noncompliance in December that they had not reported to the Court. [Doc. 2704 at 14] But in their April 6 filing, they instead argued that seven (7) of those 23 cases should be "Not Applicable" because they involved INR or urine tests,[5] and those tests are excluded from review for this performance measure. [Doc. 2745-3 at 3] No such exclusion exists in the methodology for PM 46 in the Monitoring Guide. [Doc. 2291-1 at 75] Therefore, those seven cases should also be counted as instances of noncompliance. Defendants reported 67 instances of noncompliance with PM 46 at Eyman in January 2018. [Doc. 2662-1 at 7-8]

**Florence:** Defendants reported 111 instances of noncompliance with PM 46 at Florence in December. [Doc. 2576-1 at 21-23] Plaintiffs' Counsel identified 14 apparent additional instances of noncompliance based on a review of source documents.

---

[5] An INR test measures how long it takes blood to clot, and is administered to persons prescribed anticoagulants to ensure that their medication is at therapeutic levels.

[Doc. 2633 ¶ 20] Defendants initially admitted in response that there were ten (10) additional instances of noncompliance they had not reported. [Doc. 2704 at 14]  In their April 6 filing, they stated that two (2) of those instances instead should be "Not Applicable" because the result was received in a month other than December. [Doc. 2745-3 at 4]  However, in the first case, the report was received on 11/30/17 and therefore was due to be reviewed no later than 12/4/17, which was not done on time. [*See* Doc. 2633 ¶ 20(a)(i) and Ex. 34]  In the other case, the report was received on 10/21/17, was listed in Defendants' source documents as 59 days late, and was reviewed on 12/19/17.  [*See* Doc. 2633 ¶20(b)(v) and Ex. 40]  Defendants also identified two additional instances of noncompliance, for a new admitted total of 11 instances of noncompliance that were not previously reported.  Defendants reported 208 instances of noncompliance with PM 46 at Florence in January 2018. [Doc. 2662-1 at 9-15]

**Perryville:** Defendants reported 41 instances of noncompliance with PM 46 at Perryville in December.  [Doc. 2576-1 at 24]  Plaintiffs could not locate any tracking reports for Perryville in Defendants' document production and accordingly had no way to check the accuracy of this report.  [Doc. 2633 ¶ 5]  Defendants reported 53 instances of noncompliance with PM 46 at Perryville in January.  [Doc. 2662-1 at 16-17]

**Tucson:**  Defendants reported 42 instances of noncompliance with PM 46 at Tucson in December. [Doc. 2576-1 at 25] Plaintiffs' Counsel identified 11 apparent additional instances of noncompliance. [Doc. 2633 ¶ 35]  Defendants initially admitted in response that there were six (6) additional instances of noncompliance that they had not reported. [Doc. 2704 at 14]  In their April 6 filing, Defendants argued that three of these cases should be "Not Applicable" because they involved INR or urine tests, and those are not included in this performance measure.  [Doc. 2745-3 at 3]  As noted above, no such exclusion exists in the methodology for PM 46 in the Monitoring Guide.  [Doc. 2291-1 at 75]  Therefore, those three cases should also be counted as instances of noncompliance.  Defendants also argued that two other instances of noncompliance should be "Not Applicable" because the diagnostic report was received in a month other than December.

But these test results were received on 11/30/17, and therefore had to be reviewed no later than 12/4/17, and they were not reviewed until 12/6/17.  [Doc. 2633 ¶ 35(a)(i), Ex. 65] Defendants reported 74 instances of noncompliance with PM 46 at Tucson in January. [Doc. 2662-1 at 18-20]

**PM 47 ("A Medical Provider will communicate the results of the diagnostic study to the inmate upon request and within seven calendar days of the date of the request.")**

The Court's OSC included PM 47 at Eyman, Florence, Lewis, Phoenix, Perryville, and Tucson.  [Doc. 2373 at 3]

**Lewis:**  Of these institutions, Plaintiffs were able to locate source documents for this measure only for the Lewis prison.  Defendants initially reported ten (10) instances of noncompliance with PM 47 at Lewis. [Doc. 2576-1 at 29]  Plaintiffs' Counsel identified one (1) apparent additional instance of noncompliance. [Doc. 2633 ¶ 31] Defendants admitted this was noncompliant and not reported.  [Doc. 2745-3 at 19]   Defendants reported seven (7) instances of noncompliance with PM 47 at Lewis in January 2018. [Doc. 2648-1 at 16] [6]

**PM 50 ("Urgent specialty consultations and urgent specialty diagnostic services will be scheduled and completed within 30 calendar days of the consultation being requested by the provider.")**

The Court's OSC included PM 50 at Florence. [Doc. 2373 at 3].   Defendants reported 33 instances of noncompliance with PM 50 at Florence in December. [Doc. 2576-1 at 34] Plaintiffs' Counsel identified 22 apparent additional instances of noncompliance based on a review of source documents. [Doc. 2633 ¶ 22] Defendants initially disputed whether one of the 22 instances was noncompliant, (Doc. 2704 at 10, *but see* Doc. 2633 ¶ 22(e) and Ex. 50), and conceded that another instance was outside the

---

[6] Defendants' reports of instances of noncompliance for the other five institutions was as follows:  **Eyman** (17 instances in December, seven (7) in January); **Florence** (one (1) instance in December, six (6) in January); **Perryville** (zero (0) in both December and January); **Phoenix** (one (1) instance in December, one (1) in January); **Tucson** (three (3) instances in December, seven (7) in January).  [Doc. 2576-1 at 27-32; Doc. 2648-1 at 14-19]

time frames but argued that the consult request should have been cancelled.  [Doc. 2704 at 11, *but see* Doc. 2633 ¶ 22(f) and Ex. 51]

In their April 6 filing, Defendants argue that five (5) uncompleted urgent specialty requests (that apparently are *still* not completed) listed in their source documents should be counted as "Not Applicable" because the specialty appointment has not yet occurred. [Doc. 2745-3 at 9]   This flies in the face of the language of the Monitoring Guide methodology, which does not limit PM 51 solely to completed specialty appointments. [*See* Doc. 2291-1 at 82 ("Monitor the first ten (10) urgent specialty consultation **requests** per health unit") (emphasis added)]  Defendants also now argue that eight (8) other urgent consults that were completed late (mostly in December, one as late as February) should not be counted as noncompliant but rather as "Not Applicable" because the requests were made in October or August 2017.  [Doc. 2745-3 at 9][7]  Defendants reported 31 instances of noncompliance with PM 50 in January.  [Doc. 2648-1 at 21]

**PM 51 ("Routine specialty consultations will be scheduled and completed within 60 calendar days of the consultation being requested by the provider.")**

The Court's OSC included PM 51 at Eyman, Florence, and Tucson.  [Doc. 2373 at 3]   Plaintiffs were able to identify source documents for PM 51 for December for Florence and Tucson.[8]

**Florence:**  Defendants reported 21 instances of noncompliance with PM 51 at Florence in December. [Doc. 2576-1 at 37] Plaintiffs' counsel identified five (5) apparent additional instances of noncompliance that appeared in Defendants' source documents. [Doc. 2633 ¶ 23]  Defendants' April 6 filing clearly shows that there were four routine consults that were completed outside the 60 day timeframe (three in December, one in January), but Defendants argued these cases should not be counted as noncompliant but

---

[7] Defendants complain that Plaintiffs' counsel did not provide a first name or ADC number for a class member listed in Defendants' source documents for PM 50 at Florence. [Doc. 2745-3 at 9]   As noted in Plaintiffs' filing, this was because Defendants' source documents failed to list the patient's first name or ADC number.  [*See* Doc. 2633 ¶ 22 n.3]

[8] Defendants reported 11 instances of noncompliance at Eyman in December, and 17 instances in January. [Doc. 2576-1 at 35; Doc. 2648-1 at 23]

rather as "Not Applicable" because the requests were made in June, July, and September 2017.  [Doc. 2745-3 at 10]  Defendants reported five (5) instances of noncompliance with PM 51 at Florence in January. [Doc. 2648-1 at 24]

**Tucson:**  Defendants reported 11 instances of noncompliance with PM 51 at Tucson in December, (Doc. 2576-1 at 38), and Plaintiffs' counsel identified two additional apparent instances of noncompliance that appeared in Defendants' source documents.  [Doc. 2633 ¶ 37]  Defendants admitted the failure to report these instances of noncompliance.  [Doc. 2745-3 at 21]  Defendants reported 17 instances of noncompliance with PM 51 at Tucson in January.  [Doc. 2648-1 at 25]

**PM 52 ("Specialty consultation reports will be reviewed and acted on by a Provider within seven calendar days of receiving the report.")**

The Court's OSC included PM 52 at Florence. [Doc. 2373 at 3]   Defendants reported 26 separate instances of noncompliance with PM 52 at Florence in December. [Doc. 2576-1 at 40] The instances of noncompliance with PM 52 listed in the source documents Plaintiffs identified were listed in the court filings.  [Doc. 2633 ¶ 24] Defendants reported 15 instances of noncompliance with PM 52 at Florence in January. [Doc. 2662-1 at 22]

**PM 54 ("Chronic disease inmates will be seen by the provider as specified in the inmate's treatment plan, no less than every 180 days unless the provider documents a reason why a longer time frame can be in place.")**

The Court's OSC included PM 54 at Eyman.  [Doc. 2373 at 4]   Defendants reported 405 instances of noncompliance with PM 54 at Eyman in December. [Doc. 2595-1]  Plaintiffs' Counsel identified 163 apparent additional instances of noncompliance based on a review of source documents. [Doc. 2633 ¶ 17] Defendants admitted in their April 6 filing that 137 additional instances were not compliant and had not been reported to the Court. [Doc. 2745-3 at 4-7]   Defendants also argue that 15 instances of noncompliance that appeared in their source documents are instead "Not Applicable."  [*Id.* at 4]  Plaintiffs disagree that three of these cases are not applicable – they involved people who were "removed from list" (ostensibly the chronic care list) in December 2017.  As for

the other 12 class members that Defendants list as N/A, Plaintiffs agree that people who do not have a chronic disease diagnosis or who were discharged from ADC custody as long ago as 2014 should not be included, (*see id.* at 4); however, the inclusion of these people in source documents does call into question the accuracy of the information contained therein. Defendants reported 57 instances of noncompliance with PM 54 at Eyman in January.  [Doc. 2662-1 at 24-25]

**PM 66 ("In an IPC, a Medical Provider encounters will occur at a minimum every 72 hours.")**

The Court's OSC included PM 66 at Florence, Lewis, and Tucson. [Doc. 2373 at 4]

**Florence:** Defendants reported four (4) instances of noncompliance with PM 66 at Florence in December.  [Doc. 2576-1 at 44]  The instances of noncompliance with PM 66 documented in Defendants' December source documents for Florence were listed in the court filing. [Doc. 2633 ¶ 25]  Defendants reported two (2) instances of noncompliance at Florence in January.  [Doc. 2648-1 at 27]

**Lewis:** Defendants reported no instances of noncompliance with PM 66 at Lewis in December.  [Doc. 2576-1 at 45] Plaintiffs could find no information to compare to this assertion. [Doc. 2633 ¶ 32]  Defendants reported zero instances of noncompliance with PM 66 at Lewis in January.  [Doc. 2648-1 at 28]

**Tucson:** Defendants reported one (1) instance of noncompliance with PM 66 at Tucson in December.  [Doc. 2576-1 at 46]  The source documents Plaintiffs identified showed multiple simultaneous encounters and therefore could not confirm the accuracy of the report to the Court. [Doc. 2633 at ¶¶38-39]  Defendants reported six (6) instances of noncompliance with PM 66 at Tucson in January.  [Doc. 2648-1 at 29]

\* \* \* \* \* \* \* \* \*

This latest filing is but the most recent illustration of Defendants' inability to provide accurate information to the Court.  To protect the integrity of the Court's truth-finding function, Plaintiffs reiterate their request that the Court exercise its authority pursuant to Fed. R. Evid. 706 to appoint one or more experts to supervise Defendants'

compliance monitoring and reporting, for all the reasons that have been fully briefed for months.  [*See* Doc. 2046, 2068, 2087; see also Doc. 2502-1 at 4-5; 12/20/17 Tr. at 15:2-17, 15:24-16:1, 17:5-13]  As the Court observed at the December 20, 2017 status hearing,

> I am thinking about it, the 706 expert for the auditor. And I think I have already said to both sides on the record that one of the notions with respect to if there is any sanction imposed for failure to comply, those dollars could be used to pay for the expert to do exactly this, to confirm that the numbers that we're relying on are accurate.

12/20/17 Tr. at 17:14-19.

Respectfully submitted,

Dated:  April 9, 2018

**PRISON LAW OFFICE**

By:   s/ Corene Kendrick
Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:     dspecter@prisonlaw.com
               ahardy@prisonlaw.com
               snorman@prisonlaw.com
               ckendrick@prisonlaw.com
               rlomio@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Victoria Lopez (Ill. 6275388)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@aclu.org
               afettig@aclu.org
               vlopez@aclu.org

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, PLLC**
P. O. Box 91398
Tucson, Arizona 85752
Telephone:  (520) 477-1475
Email:    kirstin@eidenbachlaw.com

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:    kbrody@acluaz.org

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
            agerlicher@perkinscoie.com
            jhgray@perkinscoie.com

Caroline Mitchell (Cal. 143124)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:    cnmitchell@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:    jlwilkes@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARIZONA CENTER FOR DISABILITY LAW**

By: ___s/ Maya Abela_____
Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:    skader@azdisabilitylaw.org
              adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone:  (520) 327-9547
Email:
   rdalyrooney@azdisabilitylaw.org
           jrico@azdisabilitylaw.org
           jross@azdisabilitylaw.org
           mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

<strong><u>CERTIFICATE OF SERVICE</u></strong>

I hereby certify that on April 9, 2018, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried<br>
Lucy M. Rand<br>
Assistant Arizona Attorneys General<br>
Michael.Gottfried@azag.gov<br>
Lucy.Rand@azag.gov

Daniel P. Struck<br>
Rachel Love<br>
Timothy J. Bojanowski<br>
Nicholas D. Acedo<br>
Ashlee B. Hesman<br>
Jacob B. Lee<br>
Kevin R. Hanger<br>
Timothy M. Ray<br>
Richard M. Valenti<br>
Jamie D. Guzman<br>
STRUCK LOVE BOJANOWSKI & ACEDO, PLC<br>
dstruck@strucklove.com<br>
rlove@strucklove.com<br>
tbojanowski@strucklove.com<br>
nacedo@strucklove.com<br>
ahesman@strucklove.com<br>
jlee@strucklove.com<br>
khanger@strucklove.com<br>
tray@strucklove.com<br>
rvalenti@strucklove.com<br>
jguzman@strucklove.com

<em>Attorneys for Defendants</em>

s/ C. Kendrick

-13-