**EXHIBIT 1**

**EXHIBIT 1**

Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorney General
15 South 15th Avenue
Phoenix, Arizona 85007
Telephone: (602) 542-1645
Fax: (602) 542-3393
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Hesman, Bar No. 028874
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
Timothy M. Ray, Bar No. 029191
Richard M. Valenti, Bar No. 031533
Jamie D. Guzman, Bar No. 022095
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1696
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
khanger@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | NO. 2:12-cv-00601-DKD |
| Plaintiffs, | |
| v. | **DECLARATION OF VANESSA HEADSTREAM** |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

1   I, **VANESSA HEADSTREAM**, make the following Declaration:

2   1.   I am over the age of 18 years and have personal knowledge of and am
3   competent to testify to the matters set forth in this Declaration. I make this Declaration in
4   support of Defendants' Reply to Plaintiffs' Statement Re: Defendants' Supplemental
5   Response to the Declaration of Corene Kendrick (Doc. 2750).

6   2.   I have been employed by the Arizona Department of Corrections ("ADC")
7   since 2007, first as a correctional nurse and then as RN supervisor at Perryville. I joined
8   the Health Services Contract Monitoring Bureau ("HSCMB") as a compliance audit nurse
9   in 2012 when Health Services was privatized.

10   3.   I am currently the Program Evaluation Administrator (Contract Compliance)
11   with the HSCMB. In my current position, I supervise eight monitors, oversee the Southern
12   Region for the HSCMB, and monitor several health care performance measures.

13   4.   I am familiar with the Court's October 10, 2017 Order to Show Cause
14   ("OSC"); the requirement to provide a report of all failures for the month of December
15   2017 for the 11 health care performance measures ("PMs") subject to the OSC; the
16   Court's March 19, 2018 order requiring a response to the Declaration of Corene Kendrick
17   (Doc. 2633); and the Court's March 27, 2018 order requiring a further response
18   addressing all 420 instances of alleged non-compliance listed in the Declaration of Corene
19   Kendrick (Doc. 2633).

20   5.   I am familiar with Defendants' Supplemental Response to the Declaration of
21   Corene Kendrick ("Supplemental Response") (Doc. 2745), for which I submitted a
22   Declaration in support (Doc. 2745-2). I am also familiar with Plaintiffs' Statement Re:
23   Defendants' Supplemental Response to the Declaration of Corene Kendrick ("Statement")
24   (Doc. 2750), and have personally reviewed the Statement.

25   6.   Regarding PM 11, Plaintiffs note that 46 of the instances addressed in
26   Exhibit 3 to Defendants' Supplemental Response for Lewis were marked as not applicable
27   because they involve medications not included in CGAR results.

28

1

7.     These findings are accurate, as the monitoring methodology for PM 11 prescribed in the Monitoring Guide states that "NFDRs [Non-Formulary Drug Requests], release medication, recognized taper medications, medications involving a surface area, eye drops, prn medications, or medications with a broad dosing interval" are excluded from review as not applicable. (Doc. 2291-1.)

8.     Regarding PM 39, Plaintiffs note that one of the instances addressed in Exhibit 3 to Defendants' Supplemental Response for Lewis was marked as not applicable because the referral from the nursing line did not occur in December 2017, which is, for purposes of this Declaration, the "monitored month."

9.     This finding is accurate, as the monitoring methodology for PM 39 prescribed in the Monitoring Guide requires ADC's Health Services Contract Monitoring Bureau ("HSCMB") to review eOMIS to determine whether provider encounters occurred within 14 days of the referral. (Doc. 2291-1.) To do this, the HSCMB monitor starts with the date the referral was made from the nursing line as indicated on the Nursing Line Log and the Provider Referral Log, which are the source documents listed in the Monitoring Guide, and which contain lists of provider referrals made from the nursing line during the monitored month. The monitor then looks to see whether the provider encounter occurred within 14 days of that date. If it did not, the instance is counted as a failure for the month in which the referral was made.

10.    Thus, the instance referenced in Plaintiffs' Statement for PM 39 at Lewis is not applicable for the monitored month of December 2017. Because the provider referral was made on October 26, 2017, but the provider encounter occurred more than 14 days from that date, it would have been counted as an October 2017 instance of non-compliance if it had been pulled as part of HSCMB's random audit of October 2017.

11.    Regarding PM 46, Plaintiffs argue that the seven instances that were marked as not applicable for Eyman and three of the instances that were marked as not applicable for Tucson in Exhibit 3 to Defendants' Supplemental Response should be counted as instances of non-compliance because the monitoring methodology for PM 46 prescribed

in the Monitoring Guide does not state that PT/INR and urine dipstick tests are excluded from monitoring.

12.     These findings are accurate because, although the Monitoring Guide does not explicitly state that PT/INR and urine dipstick tests are excluded from review, PM 46 applies to diagnostic reports that are received at ADC's facilities from outside providers. (Doc. 2291-1.) PT/INR and urine dipstick tests are, as noted in Exhibit 3 to Defendants' Supplemental Response, "point of care" tests,[1] meaning they are administered at the facility, usually by nursing staff, and the results are immediately documented in the inmate's medical file, such that the results are not "received at the facility" for purposes of PM 46.[2] The tests are typically administered multiple times over a period of time set by the provider, who does not necessarily review the results of each individual test immediately, but generally reviews the series of test results the next time he or she sees the inmate.

13.     Regarding PM 46, Plaintiffs also argue that two of the instances that were marked as not applicable for Florence and three of the instances that were marked as not applicable for Tucson in Exhibit 3 to Defendants' Supplemental Response should be counted as instances of non-compliance because the results were due to be reviewed in December and/or were reviewed in December.

14.     These findings are accurate, as the monitoring methodology for PM 46 prescribed in the Monitoring Guide requires HSCMB to review eOMIS to determine whether diagnostic reports were reviewed within five days of their receipt at the facility. (Doc. 2291-1.) To do this, the HSCMB monitor starts with the date the report was

---

[1] These tests are designated as "POC" tests in Exhibit 3 to Defendants' Supplemental Response.

[2] Plaintiffs refer generally to "urine tests," but the only "urine tests" marked as not applicable for PM 46 were two instances at Tucson, both of which were noted to be urine dipstick tests, which, as noted above, are performed at the point of care, such that results are not "received by the facility." Other "urine tests," such as urine cultures, that are sent out for testing, are not excluded from review during HSCMB's audits.

received at the facility as indicated on the Diagnostic Service Report, which is the source document listed in the Monitoring Guide, and which contains a list of reports received during the monitored month. The monitor then looks to see whether the report was reviewed, and any abnormal results acted upon, within five days of that date. If it was not, the instance is counted as a failure for the month in which the report was received.

15.     Thus, the instances referenced in Plaintiffs' Statement for PM 46 at Florence and Tucson are not applicable for the monitored month of December 2017. Because the reports were received in October and November 2017, but were reviewed and/or acted upon more than five days from the dates they were received, they would have been counted as either October or November 2017 instances of non-compliance if they had been pulled as part of HSCMB's random audits of October and November 2017.

16.     Regarding PM 50, Plaintiffs note that 14 instances addressed in Exhibit 3 to Defendants' Supplemental Response for Florence were marked as not applicable, even though the specialty requests have not yet occurred and/or were completed beyond the 30-day deadline, arguing that this "flies in the face" of the monitoring methodology prescribed in the Monitoring Guide for PM 50, which "does not limit PM [50] solely to completed specialty appointments."

17.     These findings are accurate, as the monitoring methodology for PM 50 prescribed in the Monitoring Guide requires HSCMB to review eOMIS to determine whether urgent specialty consultations were scheduled and occurred within 30 days of the provider's request for the consultation. (Doc. 2291-1.) To do this, the HSCMB monitor starts with the date the consultation was requested by the provider as indicated on the Combined Urgent and Routine Consult Log, which is the source document listed in the Monitoring Guide, and which contains a list of consultation requests made during the monitored month. The monitor then looks to see whether the consultation was scheduled and completed within 30 days of that date. If it was not, the instance is counted as a failure for the month in which the consultation was requested.

4

18.     Thus, the instances referenced in Plaintiffs' Statement for PM 50 at Florence are not applicable for the monitored month of December 2017. Because the consultations were requested in months other than December 2017, but were scheduled and/or occurred more than 30 days from the dates they were requested, they would have been counted as instances of non-compliance for the months in which the consultations were requested if they had been pulled as part of HSCMB's random audits of those months.

19.     Regarding PM 51, Plaintiffs note that four instances addressed in Exhibit 3 to Defendants' Supplemental Response for Florence were marked as not applicable, even though the specialty requests were completed beyond the 60-day deadline.

20.     These findings are accurate, as the monitoring methodology for PM 51 prescribed in the Monitoring Guide requires HSCMB to review eOMIS to determine whether routine specialty consultations were scheduled and occurred within 60 days of the provider's request for the consultation. (Doc. 2291-1.) To do this, the HSCMB monitor starts with the date the consultation was requested by the provider as indicated on the Combined Urgent and Routine Consult Log, which is the source document listed in the Monitoring Guide, and which contains a list of consultation requests made during the monitored month. The monitor then looks to see whether the consultation was scheduled and completed within 60 days of that date. If it was not, the instance is counted as a failure for the month in which the consultation was requested.

21.     Thus, the instances referenced in Plaintiffs' Statement for PM 51 at Florence are not applicable for the monitored month of December 2017. Because the consultations were requested in months other than December 2017, but were scheduled and/or occurred more than 60 days from the dates they were requested, they would have been counted as instances of non-compliance for the months in which the consultations were requested if they had been pulled as part of HSCMB's random audits of those months.

22.     Regarding PM 54, Plaintiffs disagree that three of the instances marked as not applicable in Exhibit 3 to Defendants' Supplemental Response for Eyman should be considered not applicable, as "they involved people who were 'removed from list'

5

1  (ostensibly the chronic care list) in December 2017."

2       23.    These findings are accurate, as the monitoring methodology for PM 54

3  prescribed in the Monitoring Guide requires HSCMB to review eOMIS to determine

4  whether chronic disease inmates are being seen by the provider as specified in the

5  inmate's treatment plan, not to exceed 180 days between visits unless a reason for a longer

6  period is documented by the provider. (Doc. 2291-1.) To do this, the HSCMB monitor

7  starts with the Chronic Care Report, which is the source document listed in the

8  Monitoring Guide, and which contains a list of all chronic care patients at the facility. The

9  monitor then looks in eOMIS to determine whether the inmate is currently compliant with

10  the provider's order, i.e., whether the condition subject to review has exceeded the

11  timeframe ordered by the provider. The three inmates noted in Exhibit 3 to Defendants'

12  Supplemental Response were noted to have been removed from the chronic care list in

13  December 2017 because they were no longer chronic care inmates. Review of their

14  eOMIS files shows that all three inmates' chronic conditions were noted to be resolved as

15  of December 2017. As such, there is no chronic care order to be evaluated for purposes of

16  PM 54, making those instances not applicable.

17       I declare under penalty of perjury that the foregoing is true and correct.

18       Executed this __16__ day of April, 2018.

19

20                        VANESSA HEADSTREAM

21

22

23

24

25

26

27

28