1  Arizona Attorney General Mark Brnovich
   Office of the Attorney General
2  Michael E. Gottfried, Bar No. 010623
   Lucy M. Rand, Bar No. 026919
3  Assistant Attorney General
   15 South 15th Avenue
4  Phoenix, Arizona 85007
   Telephone: (602) 542-1645
5  Fax: (602) 542-3393
   Michael.Gottfried@azag.gov
6  Lucy.Rand@azag.gov

7  Daniel P. Struck, Bar No. 012377
   Rachel Love, Bar No. 019881
8  Timothy J. Bojanowski, Bar No. 022126
   Nicholas D. Acedo, Bar No. 021644
9  Ashlee B. Hesman, Bar No. 028874
   Jacob B. Lee, Bar No. 030371
10 Kevin R. Hanger, Bar No. 027346
   Timothy M. Ray, Bar No. 029191
11 Richard M. Valenti, Bar No. 031533
   Jamie D. Guzman, Bar No. 022095
12 STRUCK LOVE BOJANOWSKI & ACEDO, PLC
   3100 West Ray Road, Suite 300
13 Chandler, Arizona 85226
   Telephone: (480) 420-1600
14 Fax: (480) 420-1696
   dstruck@strucklove.com
15 rlove@strucklove.com
   tbojanowski@strucklove.com
16 nacedo@strucklove.com
   ahesman@strucklove.com
17 jlee@strucklove.com
   khanger@strucklove.com
18 tray@strucklove.com
   rvalenti@strucklove.com
19 jguzman@strucklove.com
   *Attorneys for Defendants*

20

21  **UNITED STATES DISTRICT COURT**
    **DISTRICT OF ARIZONA**

22

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | NO. 2:12-cv-00601-DKD |
| Plaintiffs, | |
| v. | **DECLARATION OF RICHARD PRATT** |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

I, **RICHARD PRATT**, make the following Declaration:

1. I am over the age of 18 years and have personal knowledge of and am competent to testify to the matters set forth in this Declaration. I make this Declaration in support of Defendants' Notice regarding the staffing changes associated with ADOC13-041943/ADC No. 130051DC Contract Amendment No. 15 (Doc. 2799).

2. I have been working with the Arizona Department of Corrections ("ADC") since July 2000, not including from October 2009 to July 2011, when I was employed elsewhere.

3. In February 2012, I was appointed Interim Assistant Director of ADC's Health Services Contract Monitoring Bureau ("HSCMB") following Dr. Michael Adu-Tutu's retirement. When Health Services was privatized in July 2012, my title was adjusted to be the Interim Assistant Director of HSCMB.

4. When Arthur Gross was hired to be the Assistant Director in October 2012, my position changed to Program Evaluation Administrator.

5. I was placed under a temporary special assignment as the Interim Assistant Director on March 1, 2014, when Mr. Gross retired.

6. I was named Assistant Director on August 2, 2014.

7. As Assistant Director, I am responsible for providing managerial oversight and direction to HSCMB to monitor the contracted vendor's compliance with all aspects of the health services contract. I am also responsible for reviewing and responding to internal and external inquiries pertaining to compliance issues, contract specifications, reports, inspections, staffing levels, and legal mandates of inmate healthcare, mental health care, and dental care services.

8. I am familiar with ADC's policies and practices pertaining to healthcare, including medical care, dental care, and mental health care, the privatization of ADC healthcare, ADC's contract with Corizon, Corizon's responsibilities under that contract, and HSCMB's monitoring of Corizon's care to ADC inmates.

9. I am familiar with Contract Amendment No. 15 dated May 7, 2018 and the position statements of the Prison Law Office (PLO) concerning the perceived implications of staffing issues contained within the Amendment.

10. I provide this Declaration in order to provide an explanation of the staffing changes and address issues raised by the Plaintiffs concerning those changes. In addition, attached to this Declaration are charts that depict the changes made by the Amendment (*See* Ex. 1).

11. The PLO, representing Arizona prisoners, called the renewal and the 20 percent increase in the per diem rate "surprising." "Especially because Corizon Health has shown widespread noncompliance with health care benchmarks they agreed to." I do not consider consistent overall compliance scores during the most recent six months of 849 performance measures in excess of 90% for 849 performance measures as "widespread noncompliance". Recent scores as reported in Court have exceeded a 94% compliance rate systemwide.

12. The PLO states that when pressed in court about previous per diem increases, Arizona Department of Corrections Director Charles Ryan called them "the price of doing business." The PLO is performing an analysis of the staffing changes in the contract to see how the personnel shifts may impact prisoners. The contract also specifies more than $5 Million for hepatitis C treatment. At a recent hearing, a Corizon employee estimated more than 80 percent of inmates had hepatitis C. I refer the Court to the ADC "Corrections at a Glance" from March, 2018, which shows there are 6,304 inmates identified in ADC with Hep C. Based upon the population housed in the State facilities (33,590), this would be 18.77%. The PLO and the Corizon employee are wrong in their estimation of the total number of Hep C infected inmates.

13. An "analysis" performed by the PLO of the staffing changes in the new contract amendment shows an increase in line level staffing, but a decrease in provider level positions. Compared to the March 2018 monthly staffing report, the amendment shows physicians down from 14 to 12, while RN, LPN, and nursing assistants

2

1  significantly increase in number.  It is true that staff physician positions were reduced by
2  two FTEs, but consideration must be given to the addition of 13.2 FTEs for Midlevel
3  Practitioners, which have been discussed in testimony by the Court's staffing expert,
4  Advisory Board Consulting: "…where there might be a shortfall from physician positions
5  they (Corizon) have been able to overstaff in the midlevel or non-physician providers, and
6  I believe is at least a viable alternative to try to meet that need."

7        14.    Dental director positions and dentists are down, which the PLO says is a
8  violation of a specific performance measure in the Parsons Settlement Agreement.
9  "Performance measure three explicitly says they must have a total of 30.0 dentist positions
10 statewide – they've cut it to 26.0."  As a matter of threshold compliance, 26 FTEs meets
11 the 85% threshold required in the Stipulation. Dental performance measures are not an
12 issue, and the expectation to hire additional staff to meet an arbitrary number of dentist
13 positions in excess of current staffing levels when performance meets expectations is
14 unnecessary.

15       15.    The PLO states the amendment shows the same pattern in the mental health
16 staffing. "There are cuts to higher provider levels and an increase to lower level staff."
17 The PLO believes the numbers show positions like Mental Health Nurse Practitioner are
18 being cut from prisons like Eyman and Florence to offset increases elsewhere.  I would
19 note that while Mental health midlevel staff were reduced by ½ FTE at Eyman and
20 Florence, Statewide, Mental Health midlevels were increased by 2 ½ FTEs.

21       16.    The PLO asserts that ADC and Corizon staff have testified in federal court
22 that the lack of provider level positions is having a negative impact on inmate health care.
23 Prisoners with broken bones and life-threatening illnesses have claimed they are not given
24 proper treatment in time due to the lack of specialty care. These positions have been
25 vacant or understaffed for so long, Magistrate Judge David Duncan hired an expert to
26 address the staffing problems.  As I previously stated, physicians dropped by 2.8 FTEs
27 while 13.2 midlevel positions were added, for a net increase of 10.4 FTEs.  Dentists
28 decreased by three FTEs, and one Regional Dental Director was eliminated. These

positions have been routinely vacant in the past, at no expense to the performance, and determined to be a waste of resources. Psychologists are only one part of a variety of positions required to provide mental health services to inmates. One psychologist position was eliminated, and one lead psychologist position was added. Overall mental health staffing in the contract extension requires an increase of 19.95 FTEs.

17. The PLO states that ASPC-Phoenix prison received cuts in the contracted levels of medical, dental and mental health. "Overall they appear to go from 97.5 FTE contracted positions to 82.95 FTEs." Contrary to the PLO's statement, the Phoenix FTE numbers dropped from 97.5 to 87.45, not 82.95 as indicated by the PLO. The majority of that decrease comes from removal of 5.1 FTEs in the position of "Behavioral Health Technician". This position does not provide programming, which is a major component required at the Phoenix facility. These positions would have been the continuation of an inefficient use of staff in the care being provided to this population. The decrease in the position of Regional Psychiatric Director from Phoenix is simply a transfer of that position to the Regional Office and will not have a negative impact on care at Phoenix. Also, there was an increase of 1.25 Mental Health Midlevel FTEs at the Phoenix facility to increase high-level Provider care. These adjustments will not have a negative impact.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of May, 2018.

_____
RICHARD PRATT