**EXHIBIT 1**

**EXHIBIT 1**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, et al., on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>      Plaintiffs,<br><br>  vs.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their Official capacities,<br><br>      Defendants. | No. **CV-12-00601-PHX-DKD**<br><br>Phoenix, Arizona<br>May 9th, 2018<br>9:05 a.m. |

BEFORE:   THE HONORABLE DAVID K. DUNCAN, MAGISTRATE JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

STATUS CONFERENCE

Official Court Reporter:
Candy L. Potter, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 36
Phoenix, Arizona 85003-2151
(602) 322-7246

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1 process continually, that is one where you think on the one
2 hand you are looking at it with respect to just numbers.  On
3 the other hand, the plaintiffs visit -- the plaintiffs' lawyers
4 visit Winslow, and they submit pages of what I think are the
5 human experience of the failures of these numbers. 09:09:13
6      And I think that the frustration that I have felt in
7 this case must just be so small compared to the suffering that
8 seems to occur out in the prison yards because of people who
9 are not getting this basic healthcare.
10      I don't know how else to interpret it, to read it. 09:09:39
11 Because at some point there is a human impact, a human impact
12 that gets lost, I suppose, in the focus on the numbers of
13 running a big organization.  I don't think that all of it is
14 lost.
15      But I do think that at some point when I see the 09:10:03
16 reports of what inmates are telling their lawyers, that are
17 then shared with me, it makes me think that at some point we
18 have lost a connection to the fact that there are -- people's
19 lives and daily existence are hanging in the balance.
20      And I think that when I see the March reports, with 09:10:33
21 how much worse things are than they had been in the past, and
22 how things continue to fail, I need to reemphasize, reorient
23 the whole process, to try to make sure that we comply with the
24 stipulation, but also that we are speaking to the suffering.
25      So, one of the things I'm going to be talking about 09:11:12

1   is, before I leave -- and I gather you all have heard that I'm
2   leaving the Court.  It will happen in June.
3           I have had a number of strokes in the blood vessels
4   that supply my optic nerves.  I've had them over years.  I had
5   the first one in 1995, the second one in 2004, the third one in          09:11:37
6   2016.  All of those left me with the ability to perform my
7   duties, I could read well enough to do it.  And then in
8   February I had a number of them, more serious than the previous
9   ones, that reduced -- I cannot read out of my left eye anymore
10  at all.  And I have a very small area that I can read out of my          09:12:03
11  right eye.
12          But it is meant that I have requested and will receive
13  a medical disability retirement from the court, and will leave
14  no earlier than the 22nd of June, but likely about that time.
15          I'll continue to perform my responsibilities as best I            09:12:23
16  can in all of my cases.  The other judges have helped me to be
17  able to do that.
18          But I've got a number of hearings, and one of the
19  reasons that I chose the date in June was to make sure that we
20  could accomplish some of that.  I know that I won't be able to           09:12:41
21  tie it all up before the case, like all of my cases, is
22  reassigned.
23          But before then, and in that time period that remains,
24  I will do my work as best I can.  And one of the focuses that I
25  perhaps can do is to visit Winslow and follow up on the things           09:13:02

1   has become a very serious issue for the Court, and that is the
2   quality of the monitoring program.
3           Again, I don't want to just throw a broad brush here
4   and -- because I have seen that there is quality.  There are
5   people who are conscientious in the monitoring program.  But I                09:15:22
6   also know, as I've talked to you about repeatedly, that there
7   are intrinsic challenges to making sure that that system works
8   perfectly, and works as it must.
9           And there are -- there are so many examples of where
10  it appears that the monitoring program is unmoored to any kind             09:15:43
11  of verifiable and examinable analysis, that I am concerned that
12  we have incomplete information.
13          And so it may well be that the moneys that would be
14  the product of the sanctions against the State can be used for
15  the retention of an expert to assist the Court, a monitor to               09:16:17
16  oversee or overlook, to examine the practices that are being
17  undertaken.
18          And so those are the omnibus issues that I wanted to
19  address before we turn to agenda items.
20          Again, the most particular thing of what I mentioned,              09:16:43
21  and perhaps we'll need to discuss, is if -- after giving
22  counsel an opportunity to be heard, if it is contemplated that
23  we would -- that I would go to Winslow, we would need to pick a
24  day for that, because that would be something that would need
25  to happen between now and the 22nd of June.                                09:17:07

1   there are more people there, that it might be more useful for
2   Your Honor to visit the Yuma complex.
3           That being said, we are preparing to tour Eyman in
4   June, and so if Your Honor wanted to join us on that tour.
5           THE COURT: When is that?
6           MS. EIDENBACH: That will be the week of June 18th.
7   Which we haven't yet sent notice of, but that's our plan.
8           Eyman, of course, is a little bit different of a
9   situation. We would be combining that tour with Florence.
10          And I recently visited Mr. Upton, who the Court heard
11  from, about a month ago, to find out that he's once again not
12  receiving his cancer treatment. His condition has worsened to
13  the point where I imagine he'll be entering hospice soon. And
14  he found out for the first time that his cancer was incurable
15  stage 4 lymphoma from a filing that Corizon did in his
16  individual civil case. And so those results had never been
17  communicated to him personally, and he found it out by way of a
18  court filing.
19          So Florence also is a place that Your Honor may want
20  to visit.
21          THE COURT: Well, do you think that it is as
22  beneficial or is it perhaps obstructive of the process? I have
23  noticed when I've visited before that I have a sense that
24  things are different because I'm there. I'm sure things are
25  different because you're there. But I don't know whether I

1  plaintiffs.  Unfortunately I'm scheduled out of town that week.
2  Perhaps the previous week is available?
3          MS. KENDRICK:  We have the hearings the previous week.
4          MS. EIDENBACH:  Yeah, that's the difficulty, is we
5  have hearings so often.                                              09:28:18
6          MR. BOJANOWSKI:  Your Honor, I'm not trying to be a
7  stick in the mud here, but I like to take ahold of these tours
8  because they just run a little bit better if I'm there, to be
9  quite frank.
10         What about -- what about the first week of June?             09:28:36
11         Your last day is the 22nd, Your Honor?
12         THE COURT:  Yes.
13         MR. BOJANOWSKI:  Okay.
14         MS. EIDENBACH:  Your Honor, you know, we're certainly
15 happy to work with your schedule, but per the terms of the           09:28:53
16 stipulation and your recent order, I mean, this is now well
17 over a month's notice of the tour date.  And that's the date
18 that we would have given notice where there wouldn't really
19 have been the opportunity for defendants to decline.
20         That's really the only date -- unless Your Honor has         09:29:17
21 difficulty working his schedule around those dates, that's the
22 only date that works for all of the plaintiffs' counsel that
23 needs to be present on the Eyman Florence tour.
24         MR. BOJANOWSKI:  Your Honor, if you -- if they insist
25 on that week, then I'm sure that it can be made to happen.  I        09:29:34