Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,
Sonia Rodriguez, Christina Verduzco, Jackie Thomas,
Jeremy Smith, Robert Gamez, Maryanne Chisholm,
Desiree Licci, Joseph Hefner, Joshua Polson, and
Charlotte Wells, on behalf of themselves and all others
similarly situated*

**[ADDITIONAL COUNSEL LISTED ON
SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
        adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON
SIGNATURE PAGE]**

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-DKD <br><br> **PLAINTIFFS' STATEMENT REGARDING DEFENDANTS' CONTRACT EXTENSION WITH CORIZON (DOCS. 2799, 2800)** |

LEGAL139958858.1

Pursuant to the Court's instructions at the May 9, 2018 Status Hearing, Plaintiffs provide their additional comments to the Court regarding the Arizona Department of Corrections' (ADC's) contract extension with Corizon (hereinafter "Amendment 15") (Docs. 2799, 2800).   [5/9/18 Tr. at 145:19-146:19, 154:17-155:1, 157:10-14; *see also* Doc. 2816 at 2 (Minute Order)]  Plaintiffs incorporate herein the statements contained within their May 9, 2018 filing. [Doc. 2802]

## ADC Has Agreed to Pay Corizon $25 Million More Than the Legislature Has Appropriated For This Purpose

At the May 9, 2018 hearing, the Court asked Defendants to explain the apparent discrepancy between the amount of money that Defendant Ryan testified in March was budgeted for correctional health care services and the final state budget. [5/9/18 Tr. at 145:19-146:19; *see also* Doc. 2797 (ordering Defendants to address "what the final health care appropriation is for the next budget year")]  The Governor's proposed budget for FY 2019 asked for **$178,811,700**, an increase of $30 million from the amount appropriated for FY 2018, which comports with Defendant Ryan's testimony.   [*See* Declaration of Corene Kendrick ("Kendrick Decl.), filed herewith, Ex. 1 at 94][1]  The "Competition Impracticable" document prepared May 7, 2018 by ADC Chief Procurement Officer Ken Sanchez states that the "[t]otal annual contract value is **$188.6 M**."   [Doc. 2800-1 at 2 (emphasis added)]  However, in the final legislative appropriation to ADC for Fiscal Year 2019, the State Legislature appropriated **$163,811,700** for "Inmate health care contracted services."  [*See* Kendrick Decl. Ex. 2 at 21:22-23][2]  Thus, there is a difference of approximately **$25 million** between the amount Defendants have contracted to pay Corizon ($188.6 million) and the amount the Legislature has appropriated to ADC for that purpose ($163.8 million).  Defendants must explain to the Court how they plan to make up this significant gap.

---

[1] The Governor's proposed FY 2019 budget is available at http://www.azospb.gov/Documents/2018/FY%202019%20Agency%20Detail%20Book.pdf

[2] The final signed and chaptered FY 2019 budget is available at https://apps.azleg.gov/BillStatus/GetBillDocumentPdf/462806.

### Amendment 15 Does Not Include a Fee Schedule Breaking Down Expenditures

Amendment 15 raises the *per diem* rate paid to Corizon from $12.54 per class member per day to $15.164.  [Doc. 2799-1 at 3 (¶ 7)]  However, unlike past contract amendments, it does not include an itemized budget breaking down how this 20% increase in Corizon's revenue will be spent.[3]  Amendment 15 states that "additional line items have been added in ProcureAZ to reflect the new pricing," and that a "Fee Schedule (Attachment C) [is] attached hereto and incorporated herein," (*id.* at 3 (¶¶ 9, 10)), but Attachment C was not included with Defendants' filing with the Court, nor is it included on the State's ProcureAZ website.[4]  [Kendrick Decl. ¶ 5, Ex. 4]  It is unclear why Defendants and/or other state officials failed to include the fee schedule with Amendment 15 and then incorrectly stated that it was included, but in any event, this information must be included in Amendment 15 and filed with the Court, and provided to the general public via the state website.

### The Proposed Staffing Plan Cuts Higher-Level Provider Positions

As detailed in Plaintiffs' May 9, 2018 filing (Doc. 2802), while the new staffing plan shows an overall increase in the number of health care staff, this increase is disproportionately concentrated in midlevel and lower level staff, while higher-level staff positions are cut.  [*See* Doc. 2799-1 at 5-6]  Defendant Pratt confirmed in his May 9, 2018 declaration that the number of medical doctor positions (both Site Medical Director and Staff Physician positions require a medical degree) was cut by 2.8 FTEs, and that the number of dentist positions was cut by 4.0 FTEs.  [Doc. 2804 ¶ 16]  Defendant Pratt's

---

[3] For example, Amendment 13, the June 29, 2017 amendment that extended the contract to cover the time period of March 4, 2018 to June 30, 2018 (and that raised the *per diem* from $12.06 to 12.54 retroactive to March 4, 2017), includes an itemized budget that shows how money will be spent.  [*See* Kendrick Decl. Ex. 3 at 15-16 (Attachment B)]

[4] The Corizon contract and its amendments are available at https://procure.az.gov/bso/external/purchaseorder/poSummary.sdo?docId=ADOC13-041943&releaseNbr=0&parentUrl=contract.    Amendment    15    is    available    at https://procure.az.gov/bso/external/document/attachments/attachmentFileDetail.sdo?fileNbr=2542923&docId=ADOC13-041943&docType=P&releaseNbr=0&parentUrl=/external/purchaseorder/poSummary.sdo&external=true&searchType=contract.

Declaration incorrectly shows that no psychiatrist positions at Phoenix will be cut, (*see* Doc. 2804-1 at 5 [showing current and future 0.50 FTE budgeted position for psychiatrist]), but the March 2018 staffing plan for Phoenix shows that there is 1.5 FTE currently budgeted for the psychiatrist position.  [Doc. 2794-1 at 57; *see also* Kendrick Decl. Ex. 5 at 17 (April 27, 2018 Advisory Board report to the Court showing consistent failure to meet the 1.5 FTE budgeted psychiatrist position at ASPC-Phoenix in 2017), Ex. 6 at 9 (May 9, 2018 Advisory Board report showing a 4% compliance rate in 2017 with the contracted requirements for behavioral health provider staffing levels at Phoenix; "Consistent staffing of a 1.0 FTE Psychiatrist for most of the year yet never reached 1.5 FTE budget," and 48% provider turnover for three years ("Only retained one of four Psychiatrists in time period")]  The staffing plan also eliminates a 1.0 FTE psychologist position, dropping to only 18 psychologists for the entire state.  [Doc. 2799-1 at 5]

Plaintiffs' medical and mental health experts have repeatedly noted their concerns with Corizon's overreliance upon low-level and mid-level health care staff to provide treatment.  [*See, e.g.*, Doc. 1538-1 ¶ 18 (4/11/16 report of Pablo Stewart, M.D. ("in the ten full days I have spent inspecting mental health care in seven ADC prisons, I do not believe I have ever seen a psychiatrist.  This is extraordinary and completely unprecedented in my professional experience."); *id.* ¶ 16 ("In the September 2015 CGAR for Phoenix, the monitor noted that multiple mental health contacts were listed as being done by a psychiatrist, when in fact the staff member in question was not a psychiatrist. (ADCM197144).  This also occurred in July (ADCM 135620-21).")); Doc. 1539 ¶ 32 (4/11/16 report of Todd Wilcox, M.D. ("Corizon's primary care provider team in Arizona is problematic because there are too few providers overall, and because the ratio of physicians to mid-levels is too weak.  Physicians are obligated to proctor/monitor mid-levels, which means they have less time to provide treatment to patients.")); *id.* ¶ 77 ("Patients are denied a clinician's professional medical judgment if nurses or other staff are called upon to make decisions they are not qualified to make or exceed professional

1    licensing requirements.  I reported that this was a significant problem in my first report,

2    and it continues to occur, placing patients at serious risk of harm or death.")]

3        As noted above, Defendants are cutting 4.0 FTE dentist positions in the new

4    contract.  Performance Measure 3 requires that "Dental staffing will be maintained at

5    current contract levels—30 dentists."  [Doc. 1185-1 at 8]  Defendant Pratt takes the

6    position that "26 FTEs meets the 85% threshold required in the Stipulation."  [Doc. 2804

7    ¶ 14]  However, the Court has already rejected such an interpretation of the staffing

8    requirements in the Stipulation.  When a measure requires a particular number of staff

9    positions be maintained, compliance is binary:  it is determined by whether the required

10   number of staff is maintained throughout the month.  As the Court noted in invalidating

11   Defendants' monitoring methodology for PMs 1, 2, and 4, Defendants "get no special

12   partial credit in the circumstances of these performance measures."  [11/21/17 Tr. at 8:18-

13   23; *see also id*. at 10:4-8 ("MS. FLETCHER:  Your Honor, if I could just clarify then,

14   going forward with these measures, the monitors will need to be giving an all or nothing

15   score.  So it's just zero or 100 percent, is that correct?  THE COURT:  That's right.");

16   Doc. 2474 at 1][5]

17       PM 3, like PMs 1, 2, and 4, is written in a simple, declarative sentence, and

18   provides no language authorizing anything less than full compliance.  *Withrow v.*

19   *Concannon*, 942 F.3d 1385, 1387 (9th Cir. 1991) (language stating "that a decision 'shall'

20   or 'must' be made within a specified number of days" is "unequivocal").  Defendants'

21   plan to cut 4.0 FTE dentist positions is nothing less than an announcement of their

22   intention to violate a requirement of the Stipulation.

23

24

---

25       [5] PM 1 requires that "Each ASPC will maintain, at a minimum, one RN onsite
26   24/7, 7 days/week."  PM 2 requires that "Each ASPC will maintain, at a minimum, one
     Medical Provider (not to include a dentist) onsite during regular business hour and on-call
27   at all other times."  PM 4 requires that "Infirmary staffing will be maintained with a
     minimum staffing level of 2 RNs on duty in the infirmary at all times at Tucson &
28   Florence infirmaries and a minimum of one RN on duty in the infirmary at all times at
     Perryville and Lewis infirmaries."  [Doc. 1185-1 at 8]

## <u>Defendant Pratt's Declaration Contains Statements</u><br><u>That Are Intentionally or Recklessly False</u>

During the May 9, 2018 hearing, Defendant Pratt filed a declaration signed and sworn under penalty of perjury that purported to respond to the "position statements of the Prison Law Office (PLO) concerning the perceived implications of staffing issues contained within the Amendment." [Doc. 2804 ¶ 9]  Plaintiffs' counsel filed a declaration early in the morning of May 9, 2018, providing a comparison between the current budgeted levels of health care staff, and the allocation in Amendment 15.  [Doc. 2802] Defendant Pratt's declaration is not responsive to that filing.  [*See* 5/9/18 Tr. at 164:8-10] Rather, it closely tracks and quotes without attribution a news article published on May 8, 2018, after Defendants filed Amendment 15 with the Court.  [*See* Kendrick Decl. Ex. 7; 5/9/18 Tr. at 164:1-7]   The declaration does not cite to the source of the so-called "position statements" attributed to Plaintiffs' counsel to which Defendant Pratt ostensibly responds.  [*See generally* Doc. 2804 ¶¶ 9-17]

Defendant Pratt's declaration contains multiple misstatements and repeatedly—and falsely—attributes to Plaintiffs' counsel statements written by the reporter.  The veracity and accuracy of the news article is not the issue at hand, and Plaintiffs do not dispute its accuracy.  Rather, the issue is that Defendant Pratt repeatedly asserts under penalty of perjury that statements came out of the mouth of Plaintiffs' counsel, when he and his attorneys knew or should have known that they did not.

Mr. Pratt avows in Paragraph 12 of his declaration that "The PLO states that when pressed in court about previous per diem increases, Arizona Department of Corrections Director Charles Ryan called them 'the cost of doing business.'"  [Doc. 2804 ¶ 12]  The article reads: "When pressed in court about previous per diem increases, Arizona Department of Corrections Director Charles Ryan called them 'the cost of doing

business.'"  [Kendrick Decl. Ex. 7 at 2]  There is *no* attribution to Plaintiffs' counsel in the news article.[6]

The news article also states,

> Kendrick says she is performing an analysis of the staffing changes in the contract to see how the personnel shifts may impact prisoners.
>
> The contract also specifies more than $5 million for hepatitis C treatment.  At a recent hearing, a Corizon employee estimated that more than 80 percent of inmates had hepatitis C.

[Kendrick Decl. Ex. 7 at 2]

Paragraph 12 of Defendant Pratt's declaration repeats the three sentences practically word-for-word:

> The PLO is performing an analysis of the staffing changes in the contract to see how the personnel shifts may impact prisoners.  The contract also specifies more than $5 Million for hepatitis C treatment.  At a recent hearing, a Corizon employee estimated that more than 80 percent of inmates had hepatitis C.

[Doc. 2804 ¶ 12]  Defendant Pratt then refers the Court to a "Corrections at a Glance" report that apparently documents the number of incarcerated people identified as having Hepatitis C (without actually attaching or providing a citation for the report), and falsely attributes the reporter's account of recent testimony of a Corizon employee to Plaintiffs' counsel.  Defendant Pratt avows, "[t]he PLO and the Corizon employee are wrong in their estimation of the total number of Hep C infected inmates."  [*Id*.]

---

[6] For what it's worth, during the contempt hearings Defendant Pratt himself repeatedly characterized the multiple *per diem* increases ADC agreed to pay to Corizon as "the cost of doing business."  [3/26/18 Tr. at 868:19, 869:15, 872:20, *see also id*. at 872:8-10 (counsel for Defendants describing increased *per diem* rates as the "cost of doing business"), 881:16-22 (Defendant Pratt testifying in an oddly passive verb tense that "It was a business decision by the Department" and "It was felt that that was an appropriate business decision" for ADC to agree to cap monthly sanctions at $90,000)]  Defendant Ryan testified it was a "smart business decision" to give $2,550,000 in incentives to Corizon.  [3/27/18 Tr. at 980:5-6]

1       As evidenced by the plain language of the news article, quoted above, the article

2 ***does not*** cite Plaintiffs' counsel as the source of the statement that 80% of class members

3 have Hepatitis C, and it was not "the PLO" that estimated 80% of incarcerated persons

4 have Hepatitis C.  As the Court is well aware, it was Eyman Medical Director Dr. Rodney

5 Stewart who testified under oath in response to the Court's questions at the March 14,

6 2018 hearing that 80% of class members at Eyman have Hepatitis C.

7
8            THE COURT: Just that so I can understand that, what's the rough number of the number of people of the 5,000 you think are [sic] hep C?

9            THE WITNESS: I would -- I can only guess.

10            THE COURT: Yeah.

11
12            THE WITNESS: But I would -- probably about – of 5,000, probably 80 percent.

13            THE COURT: Eighty?

14            THE WITNESS: Eighty percent.

15 [3/14/18 Tr. at 498:11-19]

16       The news article accurately reports what Defendants' witness testified to on

17 March 14, 2018.[7]  To the extent that Defendants believe that Dr. Stewart testified falsely,

18 counsel for Defendants have made no effort to correct his testimony, as required by the

19 Arizona Rules of Professional Conduct, and instead engage in a ham-handed effort to

20 blame *Plaintiffs' counsel* for Defendants' witness's incomplete and/or inaccurate

21 testimony.[8]  Ariz. Rules of Prof'l Conduct, ER 3.3(a)(3) (eff. 2003).

22

23      [7] Corizon employees' statements are attributable to ADC.  *See* Fed. R.
24 Evid. 801(d)(2)(D) (a statement is not hearsay if it is "made by the party's agent or employee on a matter within the scope of that relationship and while it existed"); *see also*
25 *Hoptowit v. Ray*, 682 F.2d 1237, 1262 (9th Cir. 1982), *abrogated on other grounds*, *Sandin v. Conner*, 515 U.S. 472 (1995) (report by agent of correctional department
26 admissible); *Braggs v. Dunn*, No. 2:14CV601-MHT, 2017 WL 426875, at *3 (M.D. Ala. Jan. 31, 2017) (Corizon employees' statements regarding "mental-health needs of
27 prisoners are acting in the regular course of their own business" and are attributable to the Alabama Department of Corrections).
28      [8] This is not the first time that Defendants have blamed Plaintiffs' counsel for the false or incomplete testimony of their own witnesses. [*See, e.g.* Doc. 2068 at 18 (blaming

1    Defendant Pratt falsely attributes another statement to Plaintiffs' counsel in

2  Paragraph 16 of his declaration, where he states that "The PLO asserts that ADC and

3  Corizon staff have testified in federal court that the lack of provider level positions is

4  having a negative impact on inmate health care." [Doc. 2804 ¶ 16]  Again, a review of the

5  article he is relying upon shows there is no attribution to Plaintiffs' counsel, as the

6  sentence in the article reads in full, "ADC and Corizon staff have testified in federal court

7  that the lack of provider level positions is having a negative impact on inmate health

8  care." [Kendrick Decl. Ex. 7 at 2][9]  While it is true that both ADC and Corizon staff have

9  testified to the impact understaffing has upon patient care, the point is that this assertion

10  was not made by Plaintiffs' counsel, and Defendant Pratt falsely attributed the statement

11  to Plaintiffs' counsel under penalty of perjury.

12    "Statements made under penalty of perjury to a court are serious matters[.]"  *In re*

13  *Warburton*, No. 12-60022-7, 2013 WL 2237526, at *17 (Bankr. D. Mont. May 21, 2013).

14  Such statements are not to be made in a casual or careless manner.  *Simon v. Ashworth,*

15  *Inc.*, No. CV071324GHKAJWX, 2007 WL 4811932, at *3 (C.D. Cal. Sept. 28, 2007)

16  ("Plaintiff's reckless disregard of his role as class representative is so serious that he is

17  even cavalier about signing statements under penalty of perjury").   A party who

18  intentionally or recklessly makes a false statement under penalty of perjury is subject to

19  sanctions.   *Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 681 (W.D. Wash.

20  2014) (sanctioning a party and its counsel based upon, *inter alia*, "reliance on a recklessly

21  false declaration"); *Crayton v. Rochester Med. Corp.*, No. 1:07CV1318 OWWGSA, 2010

22

23  Plaintiffs' counsel and the Court for Defendants' witnesses' failure to testify in a complete
    and forthcoming manner regarding monitoring methodology)]

24    [9] Defendant Pratt's declaration repeatedly copies word-for-word the content of the
    news article without attribution.  [*Compare* Doc. 2804 ¶¶ 13-14 *with* Kendrick Decl. Ex. 7

25  at 2]   It also quotes a statement from the Court's expert at the April 11, 2018 status
    hearing with no attribution or citation.  [Doc. 2804 ¶ 13]  Defendant Pratt also provides

26  conflicting information to the Court without citation to a source document, admitting in
    Paragraph 13 that "staff physician positions were reduced by two FTEs," but then stating

27  in Paragraph 16 that "[a]s I previously stated, physicians dropped by 2.8 FTEs..."  [*Id.*
    ¶¶ 13, 16]  It appears that in Paragraph 16 he is referring to the site medical director

28  position at ASPC-Phoenix being cut from 1.0 FTE to 0.2 FTE.  [*See* Doc. 2799-1 at 5]

WL 1241014, at *3 (E.D. Cal. Mar. 26, 2010) ("The Court advises Plaintiff that making misrepresentations to the Court under penalty of perjury is a serious matter and may result in the imposition of sanctions").

Here, Defendant Pratt signed, under penalty of perjury, a declaration including a number of statements whose falsity would be apparent to anyone with basic reading comprehension skills who actually read the news article on which the declaration is based. Apparently neither Defendant Pratt nor his counsel took that elementary step to verify the accuracy of his sworn statements before filing them with the Court. Such conduct is at best reckless and sloppy, and at worst an intentional attempt to mislead the Court.[10]

Respectfully submitted,

Dated: May 21, 2018                                    **PRISON LAW OFFICE**

By:   s/ Corene Kendrick
Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:   dspecter@prisonlaw.com
              ahardy@prisonlaw.com
              snorman@prisonlaw.com
              ckendrick@prisonlaw.com
              rlomio@prisonlaw.com

*Admitted *pro hac vice*

---

[10] Although Plaintiffs' counsel pointed out some of the false statements in Defendant Pratt's declaration during the May 9 hearing (*see* 5/9/18 Tr. at 149:11-154:7, 158:21-159:8, 164:12-17), Defendants' counsel have taken no steps to withdraw the declaration or otherwise correct the record. *See* Ariz. Rules of Prof'l Conduct, ER 3.3(a)(3).

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Victoria Lopez (Ill. 6275388)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@aclu.org
           afettig@aclu.org
           vlopez@aclu.org

*Admitted *pro hac vice*.  Not admitted
 in DC; practice limited to federal
 courts.
**Admitted *pro hac vice*

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, P.L.L.C.**
P. O. Box 91398
Tucson, Arizona 85752
Telephone:  (520) 477-1475
Email:     kirstin@eidenbachlaw.com

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:     kbrody@acluaz.org

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:     dbarr@perkinscoie.com
           agerlicher@perkinscoie.com
           jhgray@perkinscoie.com

Caroline Mitchell (Cal. 143124)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:     cnmitchell@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:     jlwilkes@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By:   s/ Maya Abela
Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:     skader@azdisabilitylaw.org
           adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Jessica Jansepar Ross (Bar No. 030553)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone:  (520) 327-9547
Email:
    rdalyrooney@azdisabilitylaw.org
    jrico@azdisabilitylaw.org
    jross@azdisabilitylaw.org
    mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

1

## **CERTIFICATE OF SERVICE**

2       I hereby certify that on May 21, 2018, I electronically transmitted the above

3   document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4   Notice of Electronic Filing to the following CM/ECF registrants:

5

6                          Michael E. Gottfried
                            Lucy M. Rand
7                    Assistant Arizona Attorneys General
                         Michael.Gottfried@azag.gov
8                          Lucy.Rand@azag.gov

9                          Daniel P. Struck
                            Rachel Love
10                      Timothy J. Bojanowski
                          Nicholas D. Acedo
11                         Ashlee B. Hesman
                            Jacob B. Lee
12                         Kevin R. Hanger
                           Timothy M. Ray
13                        Richard M. Valenti
                           Jamie D. Guzman
14       STRUCK LOVE BOJANOWSKI & ACEDO, PLC
                         dstruck@strucklove.com
15                        rlove@strucklove.com
                      tbojanowski@strucklove.com
16                       nacedo@strucklove.com
                         ahesman@strucklove.com
17                         jlee@strucklove.com
                         khanger@strucklove.com
18                         tray@strucklove.com
                         rvalenti@strucklove.com
19                       jguzman@strucklove.com

20                      *Attorneys for Defendants*

21                                                s/ D. Freouf

22

23

24

25

26

27

28