Bruce Branscom ADC# 276168
Arizona Department of Corrections
Eyman Complex - Meadows Unit
P.O. Box 3300    8C9L
Florence, AZ  85132

☒ FILED   ☐ LODGED

# May 24 2018

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-DKD <br><br> DECLARATION OF BRUCE BRANSCOM INMATE UNDER FEDERAL LOCAL RULES OF CIVIL PROCEDURE 83.3c |

I, Bruce Branscom, declare:

1. I have personal knowledge of the matters set forth herein. If called as a witness I could and would testify to the facts stated herein, all of which have been collected by me personally.

2. I am an inmate currently incarcerated at ASPC-Eyman Complex Meadows Unit. I have been in the custody of the Arizona Department of Corrections for 6 years. I have been housed at meadows unit for 5 years. Because of this I am a member of the class of inmates in Parsons v. Ryan.

3. While I personally do not have a serious medical issue the problems described herein about DOC's medical system do directly affect me. These systemic issues are a threat to my security and safety. Also many of the cases documented are for inmates who are deceased and no longer have a voice to defend their rights. I believe it would be morally wrong not to speak.

## Overview

DOC's medical system is broken. This letter is an account of just a few of the more horrific cases that have occured at Eyman Meadows Unit in the last two years. These cases taken together show a systemic problem. They show DOC routinely employs delaying and minimizing tactics when treating inmates and the result is human suffering and needless death.

The enclosed documents are accurate to the best of my knowledge. However, because some accounts were collected from the victem's friends months after the incidents described I cannot guarantee complete accuracy of every detail. If any more information is needed or a different format preferred, please let me know.

## Summary of Contents

The following is a list of cases that demonstrate the broken nature of DOC's medical system. More detail on each case is included in the attached documents.

### Meyerson, Lawrence  ADC # 182373    Died 2-13-18

Suffocated due to excess fluid in lungs. Made multiple trips to medical requesting help. Nurse tried to request an ambulance three times but was denied by her Supervisor. Mr. Meyerson was found dead in his cubicle shortly after.

Swartz, Warren    ADC # 199514
Died of a heart attack. He went to medical twice complaining of pain in his chest and arm but was sent away. Found dead in his wheel chair hours later.

Crawford, Charles    ADC # 97390    Died early 2018
Died of cancer. Spent months in terrible pain without effective meds. Medical consistently denied he had any serious medical issue. By the time he was finally diagnosed it was too late. Died in DOC hospice without ever seeing an oncologist or receiving any cancer treatment.

Andersh, Gerald    ADC # 213419    Died February 2017
Died of bone cancer. Walked around with a broken collar bone for 2 months because DOC kept telling him it was only a pulled muscle. He was in excruciating pain but DOC would not give him effective meds and kept delaying his appointments. Due to these delaying tactics he was not diagnosed with cancer until days before his death.

Muncy, Kirtley    ADC # 230570
Cancer patient in DOC. It took over six months to be correctly diagnosed. When he finally went in for surgery it had been over a year and the tumor had reached the size of a twinkie. As a result his whole bladder, prostate, and lymph glands had to be removed.

<u>Ashby, Richard</u>          ADC #117661

Mr. Ashby has a history of cancer. An MRI taken in October 2017 revealed a new tumor pressing against the nerve in his leg. At the time of this writing he still has not had a biopsy to test if it is malignant or benign. This tumor causes him constant pain yet he is kept on meds ineffective for nerve pain. He has informed DOC of two more suspected tumors on his shoulder and arm yet they have not run any radiology tests to confirm.

I'm not a doctor, I don't know if Mr. Ashby has cancer. I hope he doesn't. The problem is that DOC doesn't know either and they are in no apparent hurry to find out, even though he is high risk for cancer.

During this research I did talk to one person with cancer who was diagnosed relatively quickly and had already started treatment. When I asked why he thought medical had started helping him so much faster than the others on this list he said he had to "fall out". Basically when he saw that medical was not taking his complaints seriously he fell on the ground and pretended to be unresponsive until they were forced to take him to the hospital. At the hospital he received a radiology test which identified the tumor and a biopsy that confirmed it was indeed cancer. By the time he came back, DOC had no choice but to start him on the correct treatment. This person is not being named because he wishes to avoid retaliation.

After reviewing all of these cancer cases a clear pattern starts to emerge. First DOC is incredibly slow at diagnosing cancer; the time it takes to go from symptoms to a correct diagnosis usually takes months or in many cases years. For several inmates by then it is too late and they die without ever receiving any cancer treatment. Second for those who actually survive these delaying tactics their pain management is often ineffective or nonexistent. DOC claims to use an "evidence based" approach to decide what meds to give. However because of their delaying and minimizing strategies they are incredibly slow at collecting such evidence. Even when they have sufficient evidence and a provider recomendation, such as in Mr. Ashby's case, they still refuse to provide effective pain management.

Finally DOC clearly does not have an adequate early detection system for cancer. They claim to offer a yearly colorectal exam, but when Mr. Ashby asked for one he was completely ignored. When it comes to cancer early detection is CRUCIAL. Those with high risk should be receiving yearly blood tests. A good early detection system would reduce medical costs not to mention human suffering and needless death.

I know there are many of you fighting to correct these issues and I am deeply grateful to you. Especially those of you that have helped with Parsons vs. Ryan. However, the frequency of cases like these shows that the fight is not over. My hope is that this information will help in the battle for positive change.

Meyerson, Lawrence    ADC #182373    Age: 75

An account of events leading to his death on 2/13/18.

**Monday** 2/12/18

**2:00 PM** — Mr. Meyerson was found on the floor of his cubicle unresponsive. ICS was activated and he was taken to medical. He was seen then sent back to his house.

**6:00 PM** — Mr. Meyerson returned to medical for blood work, x-ray and breathing treatment. NP Gay was on call provider. Mr. Meyerson was experiencing fluid in lungs, chest pain and dizziness. He was sent back to his house.

**10:00 PM** — His symptoms got worse. Officer Nickerson activated ICS and took Meyerson to medical in wheel chair where he was given a breathing treatment. The nurse called NP Gay to request an ambulance, she was told <u>no</u>, he has an appointment with provider on Tuesday AM.

**Tuesday AM** 2/13/18

**Midnight 12:02** — Officer Nickerson took Mr. Meyerson back to medical. The on call nurse called NP Gay again for an ambulance as she could hear fluid in his lungs. She was denied again and told he has to wait for his appointment. (It is important to note that his provider appointment was not actually for his breathing issues)

**3:00 AM** — Mr. Meyerson was taken back to medical again and recieved breathing treatment. Nurse called NP Gay again requesting ambulance but was told <u>no</u>. Mr. Meyerson sent back to his building.

**5:30 AM** — Insulin called for Mr. Meyerson's building. He went to medical in extreme distress to recieve insulin and diabetic shots. He was in tears complaining of

Meyerson, Lawrence   ADC# 182373

extreme breathing distress but was sent back to his bed.

**6:15 AM**   Mr. Meyerson was found not breathing by other inmates. They screamed for help but the officer was not at his post. It took 20 minutes before someone finally responded. Officer Garcia activated ICS. The nurse performed CPR in route to medical, an ambulance was called but Mr. Meyerson was pronounced dead.

These details can be verified by checking the officer logs. Also Michael Jensen ADC# 056119, has volunteered to answer any further questions about this information.

Swartz, Warren        AOC #199514

Mr. Swartz died of a heart attack at DOC in late 2017 or early 2018. I don't have many details about his death, but what I do have has been corroborated by multiple sources.

Mr. Swartz went to medical complaining of pain in his chest and arm. They told him there was no one to take care of him at that time and sent him away. He later went to medical again asking for help but was told they did not have the equipment to take care of him and was sent away. He was later found in front of his building dead in his wheel chair.

Crawford, Charles      ADC#97330    Age: 68

Mr. Crawford died of cancer in DOC early 2018. During the six month period leading to his death he was treated with extreme indifference, incompetence, and neglect by the medical staff. The following information has been gathered from Mr. Crawford's friends who were present at many of the events described.

(All dates are approximate)

**June 2017**   Mr. Crawford went to medical complaining of pain in his hip. He was sent away after a short interview. No tests were run, no meds given, no provider scheduled. Charged $4.

**July 2017**   He went to medical and informed them that the pain was getting worse and he was having a hard time walking. He also showed them that his lymph nodes were swollen. Medical told him nothing was wrong. They denied that his lymph nodes were swollen. He was sent away again, no meds, no tests, no treatment. Charged $4

**August 2017**   Continued to deteriorate. He stopped going to medical because they refused to help him yet kept taking his money. At this point he had paid the equivalent of $180 compared to someone earning minimum wage. He decided to start the grievance process instead. He got much worse; in constant pain. He could only take 40 steps before he had to stop and catch his breath, energy and motivation.

**September 2017**   CO II Chamberlin called an ICS (Incident Control System) because Mr. Crawford could hardly move at work. He

Crawford, Charles     ADC # 97330

was taken to medical. They told him he was fine.
No tests were given, no provider scheduled, no meds
prescribed. He was sent back to his house without a
wheel chair.

**November 2017**  He could barely walk and had to have help to
get around. His friends convinced Sgt. Sarauf to help.
The Sgt. took Mr. Crawford to medical and demanded
that he get treatment. An auditor also happened to
be there at the time and made sure he was seen
promptly. Several tests were ordered. Still not given
any meds for the pain. His friends stole a wheel chair
from medical because they still would not assign
him one.

**December 2017**  Blood work taken 4 times in a month. NP Gay
told Mr. Crawford she was not qualified to interpret
his test results but from looking on the internet she
said he might have Lymphoma. During all of this
time Mr. Crawford had been losing weight but now
it started dropping more rapidly. He had to have
help getting into bed and going to the restroom.
Still not given pain meds. Still not sent to a doctor.

**January 2018**  He could no longer eat normal food and was
alarmingly thin. His friends began buying him all
kinds of food to try and find something he could eat.
He reached such a state they believed he could die
at any time, and he still had not been taken to see
a doctor. One of his close friends took him to
medical again determined to make sure he get treatment.

Crawford, Charles     ADC # 97330

**Final Visit to Medical**

At medical the friend convinced the nurse that Mr. Crawford needed to be seen. Nurse Litton took his vitals then sent him to the waiting area. Next he was called back for a hip x-ray. The friend went with him and had to lift him on the table since Mr. Crawford couldn't get up there himself.

After the x-ray he was called in to see provider Weigel. She attempted to ask him what was bothering him but he was so weak he could barely speak. His friend interjected that Crawford was dying before their eyes and had lost 50 Lbs in the last few months. The Provider argued and said "you mean he's lost 15 Lbs" and showed the screen where his weight had been inputted up to that day and it showed that Nurse Litton had typed in 165 Lbs. The friend assured her (since he had just lifted him) that there was no way he weighed 165 Lbs. She then ordered the nurse to weigh him and he was 135 Lbs. Then she started to take everything seriously.

After that Nurse Tanna brought in his blood test results and provider Weigel read them. She said there were markers for tumors and immediately ordered some pain relief with two tylenol, an ensure nutrition drink and an IV to rehydrate. Mr. Crawford was sent to an In-Patient clinic that night.

Two weeks later the friend was called to medical and told Mr. Crawford had Osteo Carcoma and they were keeping him comfortable as he had only hours to live.

Crawford, Charles     ADC# 97330

Mr. Crawford was a valued member of his community, a very intelligent man who worked converting text books to braille for blind kids in Az. In his spare time he would work on famous unsolved math problems. He deserved more dignity than this. When it comes to cancer early diagnosis is **crucial**. If Mr. Crawford's initial complaints had been taken seriously he would have had a chance. At the very least there was no reason for him to spend his last months in terrible, debilitating pain. Sadly his story is not unique, it has become common place here at DOC.

One of Mr. Crawford's close friends has offered to answer any further questions about these incidents. His information is below:

Steven Scott Coplinger  ADC# 117700

Andersh, Gerald        ADC #213419

Mr. Andersh died of cancer at DOC in early 2017. In the months leading to his death he deteriorated from incredibly strong and healthy to concentration camp frail, and unable to walk due to debilitating pain. His suffering and lack of treatment are a result of the deliberate indifference and inhumane practices that pervade DOC's medical system.

(All dates are approximate)

**Oct 2016**   Mr. Andersh went to medical with an injured shoulder, they told him that he was fine and had only pulled a muscle. He insisted he was in intense pain and something else was going on. Medical denied that he had any serious issue and he was sent away without any tests.

**Nov 2016**   For weeks he continued to ask medical for tests to diagnose what was going on. He was in terrible pain but they would only give him low dose tylenol and otherwise denied he had a serious medical need.

- Weeks after the injury he finally convinces medical to give him an x-ray.

**Dec 2016**   About three weeks after the x-ray he is called in and told that he broke his collar bone. He is still not given effective meds or a sling for his arm.

- He informs medical that he is in terrible pain and it hurts to walk. He believes there is something more going on than just his collar bone and requests more tests.

Andersh, Gerald        ADC # 213419

| | |
|---|---|
| Jan 2017 | Medical keeps rescheduling his appointments so he has to keep waiting to be seen. He continues to deteriorate, the pain is much worse and he is losing weight rapidly. He still has not received effective pain meds. He starts to involve his family and lawyer to pressure DOC to take care of him. |
| | - More tests are finally run. Walking has become excruciating, he tells medical he is taking a wheel chair because they did not want to assign him one. The nurse tells him if he is caught using the wheel chair to help him to the restroom it will be taken away. |
| Feb 2017 | Mr. Andersh reaches a frightingly thin state. He is in constant terrible pain but has only received tylenol-3's which are ineffective. He is told by the provider that he "might have the 'C' word". She wouldn't actually say the word cancer for liability reasons. |
| | - He became so weak he had to have help dialing the phone. He still had not been given any treatment or effective meds for his "C word" |
| 2-22-17 | Mr. Andersh is found unresponsive sitting in his bed moaning. He is taken to a hospice where he is finally diagnosed with cancer. He dies shortly thereafter. |

Andersh, Gerald     ADC# 213419

It is clear from this tragedy that the gate keepers at DOC's medical department are routinely making medical decisions that they are not qualified to make. Furthermore it is believed these tactics are encouraged by unwritten policies and practices that reward delaying care and diagnostic tests, withholding meds, and minimizing inmate medical needs.

Mr. Andersh walked around for almost two months with a broken collar bone without recieving any medical treatment. The medical staff admitted that he probably had the "C word" yet they did not give him adequate pain management for someone with cancer nor was he taken to an oncologist or given any cancer treatment.

Cancer does not need to be a death sentence, especially if it is caught early. DOC has no early detection system to catch cancer. The time it takes to convince medical there is actually a problem and correctly diagnose it usually takes months or years. For many inmates by then it is too late. Mr. Andersh was strong and healthy, there was no reason that he should have died such an agonizing death without even a fighting chance.

Muncy, Kirtley          ADC # 230570

Muncy's case is the one where I have the least detail but I believe it is still worth review. Also to my knowledge he is still alive. Here are the things I do know from speaking with his friends:

In early 2016 Mr. Muncy was found doubled over in pain on the bathroom floor. When he went to medical they told him he was fine and did not give any tests or treatment.

- He became worse and informed medical that he was urinating blood and green foam. Medical told him he was just dehydrated and no tests were run.

- He knew something was terribly wrong and wrote HNR after HNR along with multiple grievances trying to get treated. At one point he was put on "suicide watch" because he was complaining too much. He was forced to sit naked in a white cell for three days as retaliation for all of his requests for treatment.

By the time he was correctly diagnosed with bladder cancer it had been over six months since his initial complaint. When he finally went in for surgery it had been over a year and the tumor had reached the size of a twinkie. As a result his whole bladder, prostate and lymph glands had to be removed.

Ashby, Richard H. III      ADC: 117661

18

Mr. Ashby has a history of cancer. In October 2017 an MRI revealed a new tumor in his Left leg however DOC has yet to perform a biopsy or send him to an oncologist. This tumor is pressing directly on a nerve in his leg and as a result he lives in constant pain. DOC has refused to provide him adequate pain management despite provider recommendations.

To date he can prove over 30 violations of the Parsons vs. Ryan agreement including a 3 month period where his repeated requests for help were completely ignored. He has also informed DOC he has found two other tumors on his shoulder and arm. To date DOC has still not performed any radiology tests to confirm the presence of these suspected tumors.

You should have already received a more detailed letter from Mr. Ashby. For that reason I am only including a short synopsis of the most relative points in his case. If you have any additional questions please contact Mr. Ashby himself. Also attached is a letter Mr. Ashby sent to the prison law office describing his interactions with medical.

( The following timeline is heavily abbreviated and only includes the most relevent events. )

Ashby, Richard H. III      ADC: 117661

| | |
|---|---|
| 2007 | - Mr. Ashby contacted medical about a growth on his ear. |
| 2012 | - Growth finally diagnosed as melanoma and treated with 45 days of radiation. |
| Jan 2015 | - Contacted medical about pain in left knee. Received a knee sleeve and pain meds. |
| July 2016 | - Informed medical that the pain was getting worse and he could no longer wear the knee sleeve. Requested further treatment to address the problem. |
| Sep 2016 to Nov 2016 | Informed medical repeatedly that pain meds not working. "It hurts to walk, I can hardly sleep" Requested additional pain management. |
| 11-20-16 | Finally seen by health care provider and given a more effective dosage of meds. Provider recommended a CT scan but it was denied by Corizen. |
| 12-28-16 | Physical therapy Alternate treatment plan ordered by Corizen. Only caused more pain. Report said PT failed |
| 1-3-17 | Pain meds expire. HNR requesting their renewal is ignored. |
| * | Starts 3 month period of being ignored by medical. |
| 1-18-17 | Scheduled provider appointment canceled. |
| 1-25-17 | Request renewal of pain meds ignored. |
| 2-1-17 | Request renewal of meds ignored. |
| 2-10-17 | Scheduled provider appointment canceled. |
| 2-22-17 | Provider appointment canceled. |
| 3-10-17 | Provider appointment canceled. |
| 3-26-17 | Requests to see provider after 5 appointments canceled. He is in constant pain but meds are not being renewed. "I need Help" |

Ashby, Richard H. III

**Apr 2017**  Finally sees provider. He is prescribed Triliptal but it is ineffective for the pain.

**5-26-17**  Receives a nerve conductivity test to see if the nerve is damaged. Results come back negative.

**6-4-17**  Still in severe pain, meds are not working. Requests to have leg amputated. "Help Please"

**6-15-17**  Seen by Dr. Stewart. Diagnosed with a compressed peroneal nerve.

**6-20-17**  Given a steroid injection in knee. Only causes more pain.

**7-9-17**  Has been on psychotropic meds for months that do nothing for the pain. Makes yet another request for effective pain management.

**9-11-17**  Sent to an orthopedist who recommends an MRI and also says he should be seen by a nerve specialist not an orthopedist.

**10-25-17**  Sent out for MRI.

**11-15-17**  Mr. Ashby is informed that the MRI revealed a tumor pressing against the peroneal nerve in his knee. HCP Gay orders outside "urgent" consult to orthopedist.

**11-17-17**  Mr. Ashby requests a PET scan to look for other tumors since he has had one growing for 2 years. Having a history of cancer he is concerned it has metastasized. His request is denied. He will be sent back to an orthopedist not an oncologist.

**12-6-17**  Seen by HCP for pain management. Given an increase in psych meds which are ineffective.

**12-24-17**  Informs medical he believes he has located another tumor in his left arm.

Ashby, Richard H. III

**1-14-18**  Tries to submit HNR to medical informing them he is in unbearable pain and has been waiting 2 months to see the orthopedist. He believes he has found a third tumor in his shoulder. Medical refuses to accept the HNR unless he pays a fee.

**1-30-18**  Visits an orthopedist who tells him he is the wrong doctor for this kind of issue. He also recommends more effective pain meds but medical refuses to follow his recommendation.

Mr. Ashby submits an HNR requesting an immediate biopsy of the tumor(s) to determine if they are malignant or benign. He also requests to see a doctor who is qualified to treat tumors.

**1-31-18**  Seen by NP Weigel. Told that his request for outside "urgent" consult would be submitted.

**2-1-18**  Goes to medical to follow up on his request for consult. Told the request was not allowed to be submitted as urgent. Also recommendations by provider for meds will not be followed unless another provider also recommends it within 30 days.

**3-6-18**  Blood test taken to test for cancer markers.

**3-22-18**  Met with NP Weigel to discuss blood test. Results were inconclusive.

See Mr. Ashby's attached letter for more information.

Richard H. Ashby III #117661
Arizona State Prison Complex- Eyman
Meadows Unit, 8D15L
P.O. Box 3300
Florence, AZ 85132


April 8, 2018


Ms. Amber Norris, Investigator
Prison Law Office
General Delivery
San Quentin, CA 94964


Dear Ms. Norris,

The following is a synopsis of my recent medical care.
You are aware of my serious medical need, a untreated tumor.
On March 22, 2018, I spoke with Nurse Practioner
Natalya Weigel at the Meadows Unit Health Unit.
We went over recent test results for cancer markers
in my blood. At that time she informed me that,
"No plastic surgeon in the state was willing to
touch the tumor in my left knee." It took Corizon
48 days to find this out.

①

I asked why I had not been referred to a neurosurgeon in the first place and why the request for specialty outside care was not an "urgent" consult like she had said she would submit.

NP Weigel candidly admitted that it was just too expensive. She stated that Corizon had instructed her to submit the request for outside consult to a plastic surgeon as it was less expensive and that it should be submitted as a "routine" consult.

In my presence, she called the Eyman Clinical Coordinator. I listened to NP Weigel's side of the conversation and it was agreed between the two of them that there was "no choice" but to request a consult with a neurosurgeon as an "urgent" consult. On March 22, 2018 NP Weigel submitted an "urgent" outside specialty consult with a neurosurgeon as there is a 1.9 cm x 1.6 cm "tumor" on the peroneal nerve in my left knee, which causes severe pain in my left leg. After NP Weigel got off the phone, I told her that the Tramadol was no longer relieving the severe pain the tumor was causing. I asked for Gabapentin. I have been prescribed Gabapentin in the past for the nerve pain. The last "specialist" I saw recommended Gabapentin because I saw profound relief from that drug. NP Weigel is aware of these facts.

NP Weigel said, "there is a state-wide directive that

②

no one is to receive Gabapentin." Head Nurse Pam Tanra was walking by and when she heard what NP Weigel said she stopped, stuck her head into the office shook her head in the affirmative and said the same thing. Nothing has been done about the severe pain I am in. Tramadol has been prescibed but it is not effective.

On March 30, 2018 I submitted a HNR asking for effective pain management. Specifically I asked for Gabapentin. This was in light of the fact that Gabapentin is an effective medication for the severe pain I experience from the tumor on my peroneal nerve, and because all other therapies have not been successful.

In the HNR I quoted from the "Declaration of Mack Moyers" in re: Parsons v. Ryan where he states "Corizon does not have a policy that prohibits pre-scriptions of Gabapentin... Importantly, Gaba-pentin... [is] still available if other therapies are not successful."

I also alleged that the "tumor" is "cancer." Web-ster's Encyclopedic Unabridged Dictionary of the English Language defines cancer as a "malignant and invasive growth or tumor, esp. one originating in the epithelium." The same dictionary defines a tumor as "an uncontrolled, abnormal, circumscribed growth of cells in any... tissue." Malignant is defined by Webster's as "disposed to cause

harm, suffering, (of a tumor) characterized by uncontrolled growth." I contend that the tumor in my knee is "cancer." NP Weigel would not address the need for additional pain management. Her only concern was to refute my claim of "cancer." Because I have not had a biopsy done, her position is that I do not have cancer. This is despite the fact that I have a confirmed history of cancer.

NP Weigel wrote on the HNR at Section IV Plan of Action, "Mr. Ashby you do not have cancer as of 3/30/18. Only biopsy can identify if your growth is cancerous or not. You are in the process of seeing a Neurologist who will, as a specialist in this situation, identify next step in the plan of your care."

I asked again for NP Weigel to do the biopsy as the tumor is close to the surface of the skin. She ignored my request.

While waiting for NP Weigel to answer the HNR, Head Nurse Pam Tanna, in the presence of Corrections Officer II Hall, said, "I am tired of hearing you guys complain about your medical care. My grandfather has stage 4 lung cancer and he has had to wait over a year to get treatment. You shouldn't have come to prison." I was surprised that she would say such a thing and took her statement to mean that because I

(4)

was in prison I did not deserve timely treatment or even medical care.

On April 5, 2018, I was called to the Health Unit for Doctor's Line. I had not expected to be seen, as the next step in my care was the "Urgent" specialty consult ordered on March 22, 2018. I was told the day before, at afternoon Watch Swallow Pill Call, that the current Tramadol prescription was expiring on April 6, 2018, and that a six (6) month prescription for this pain medication had been submitted and already approved by the "non-formulary" drug approval committee.

I thought that I was being seen at doctor's line because the "urgent" specialty consult request was denied and that was why the narcotic pain medication had been approved for such a long period of time.

I asked the nurse taking vitals why I was being seen. His first response was "for skin cancer." I told him that that couldn't be right because my only concern presently was the "tumor" and outside consult.

Next he said, "specialty needs." I told him that all of my Specialty Needs Orders (SNOs) were current and did not expire until July 2018.

Finally he said the doctor's line was for "chronic care." I did not dispute this even though I knew that my last "chronic care" visit had been on January 15, 2018

⑤

and I was not due for "chronic care" until July 2018,
as that is when my chronic care medication prescrip-
tions expire.
I was seen by NP Natalya Weigel. I asked her
why I was being seen as the next thing I expected
to be seen by a
was a consult with the neurosurgeon. She informed
me that the "urgent" specialty consult request had
not yet been approved.
Next I had her read Mark Moyers declaration at
#8 and #12. She said, "you are getting Tramadol
and that's it." I said that it was not working.
She then said, "I am not prescribing medication
when
because I don't know what your diagnosis is."
I said, "I have a tumor on the peroneal nerve
in my left leg which is causing me severe pain.
And if that is not neuropathy I don't know
what is. I have been on Gabapentin in the past
and all the other therapies and medications have
not worked."
NP Weigel flatly stated, "the reason you are not
going to get Gabapentin is because other inmates
have been caught selling their Gabapentin. Just
today an inmate was caught selling his Gabapentin.
I won't prescribe it."
NP Weigel went over my current chronic care. She
was extremely solicitous to all of my medical
needs other than the "tumor." I asked again

(6)

for her to biopsy the tumor as the location of the tumor is so close to the surface of the skin that a small sample of tissue could be easily obtained. She repeatedly refused.

NP Weigel could not explain what the "special needs" were. I surmise that your office has contacted ADOC and this is why I had doctor's line. My impression of this visit was medical's attempt to make sure my care is up-to-date. NP Weigel asked me if I was a party in the Parsons suit. I explained that I was not a named member, but that I was (and am) preparing a suit of my own and that as relief I was going to ask the court to add my name to Parsons as all of my complaints occured after the stipulations were agreed to.

NP Weigel stated that the reason inmates (to include me) could not get good health care was because the stipulations were too restrictive. She said, "no one is perfect and it is just too much to try and cover all of them."

We discussed the fact that I had seen eleven (11) different providers and over a period of two years nothing has really been accomplished. NP Weigel blamed the stipulations again as the cause of me seeing so many different providers and Corizon was unable to keep staff because of them.

To sum this letter up, the Tramadol, considered

a narcotic, is not alleviating the severe pain. Nortrip-
tyline, duloxetin, trileptal, ibuprofen, naproxen,
motrin, acetaminophen, and the kenalog injection
which was given directly into the tumor have
not helped ease the severe pain I am in every day.
In fact the side-effects of some of these
medications have added to my pain and suffering.
I continue to suffer constant severe pain in
my left leg with pronounced weakness and a worsening
limp. I have a history of cancer. The Arizona
Department of Corrections and Corizon know that
I have a tumor in my knee. They have been
aware of this for six (6) months, yet I still
have not had a biopsy despite my repeated requests
that this simple procedure be done. I have
not been seen by an oncologist.


Sincerely,



Richard H. Ashby III

**CERTIFICATE OF SERVICE**

I hereby certify that on _May 24, 2018_, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Kathleen L. Wieneke
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Fletcher
Anne M. Orcutt
Jacob B. Lee
Mark A. Bracken
STRUCK WIENEKE, & LOVE, P.L.C.
dstruck@swlfirm.com
kwieneke@swlfirm.com
rlove@swlfirm.com
tbojanowski@swlfirm.com
nacedo@swlfirm.com
afletcher@swlfirm.com
aorcutt@swlfirm.com
jlee@swlfirm.com
mbracken@swlfirm.com

_Attorneys for Defendants_

BRUCE BRANSCOM