Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Sarah Kader (Bar No. 027147)
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: skader@azdisabilitylaw.org
       adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | No. CV 12-00601-PHX-DKD<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR DISTRICT COURT JUDGE TO VACATE MAGISTRATE JUDGE REFERRAL FOR LACK OF SUBJECT MATTER JURISDICTION (DOC. 2825)** |

LEGAL140038743.1

**INTRODUCTION**

Defendants' Motion for District Court Judge to Vacate Magistrate Judge Referral for Lack of Subject Matter Jurisdiction [Doc. 2825] is frivolous.  Their argument that Magistrate Judge Duncan does not have subject matter jurisdiction over a prisoner civil rights action is the latest attempt to derail a contempt finding and accompanying sanctions that Judge Duncan has indicated will be forthcoming, and re-litigate the last several years of this case.  They fail to cite the controlling Supreme Court case on this issue, and do not acknowledge, much less apply, the unambiguous holding of the only case that they rely on, which when applied to the facts of the present case, indisputably shows that this Court's referral to Judge Duncan was proper.

This request is the second recent attempt by Defendants to remove Magistrate Judge Duncan from presiding over this case in order to avoid sanctions and a ruling finding them in contempt for failing to provide essential health care to people incarcerated in Arizona's state prisons.  Like Defendants' recent and unsuccessful motion to disqualify Judge Duncan following evidentiary hearings that began in February 2018, (Doc. 2658), Defendants have presented no valid reason in its present motion to have Judge Duncan removed: there was nothing inappropriate about the referral of this case to him in 2014 with the parties' consent, and there is no reason to short-circuit the issuance of a contempt order, or the conclusion of the fact-finding process on Defendants' failure to accurately report their record of providing critical health care services.

In addition to the pending contempt order pursuant to the Court's October 10, 2017 Order to Show Cause (Doc. 2373), for which the parties conducted multiple days of evidentiary hearings involving extensive witness testimony and which has been fully argued and submitted, there are the following outstanding issues that Judge Duncan, as the trier of fact who has in some instances heard live witness testimony, must resolve prior to his retirement from the bench:

    1.    Plaintiffs' proposal that the Court retain an expert under Rule 706 of the Federal Rules of Evidence to assess Defendants' compliance. [Doc. 2046 (Plaintiffs' Statement Re: Evidentiary Hearings on

LEGAL140038743.1

    Monitoring; Doc. 2068 (Defendants' Response); Doc. 2087 (Plaintiffs' Reply); *see also* Doc. 2502-1 at 4-5, 21; 12/20/17 Tr. at 15:2-17, 15:24-16:1, 17:5-15; *see also generally* transcripts of hearings conducted on December 20, 2017, February 27, 2018; March 14, 26, and 27, 2018]¹

2.  Plaintiffs' Motion for Attorneys' Fees and Costs, (Docs. 2276, 2277, 2278, 2279, 2280, 2402, 2433, 2434), and Plaintiffs' Motion for Reconsideration of the Court's Order of December 19, 2017 (Doc. 2503). [Docs. 2518, 2519, 2589, 2623]

3.  Plaintiffs' Statement Regarding Defendants' Removal of HNR Boxes. [Doc. 2365 (Statement); Doc. 2416 (Response); Doc. 2458 (Reply)]

4.  Monitoring methodology for Performance Measure 86. [*See* Docs. 2590, 2598, 2613, 2619, 2645, 2715, 2765, 2784]

There is no reason to jettison the substantial time and effort that Judge Duncan and the parties have devoted to these issues other than the fact that Defendants fear adverse rulings. *Cf. Melendres v. Arpaio*, No. 07-2513, 2015 WL 13173306, at *13 (D. Ariz. July 10, 2015) ("There is a presumption that a recusal petition submitted after the moving party suffers adverse rulings has been filed for suspect tactical and strategic reasons." (citation omitted)). The legal arguments offered by Defendants are not supported by controlling law, and are inapposite and inapplicable to this case.

## BACKGROUND

Plaintiffs filed this class action in March 2012 on behalf of over 34,000 men and women housed in Arizona state prisons—people who are entirely dependent on the state for their health care. [Doc. 1] The case was first assigned to Judge Wake and Magistrate Judge Aspey. [Doc. 4] Two years later, the parties each requested a settlement conference (Docs. 961, 977); Plaintiffs requested that the settlement be facilitated by Judge Duncan. [Doc. 977] Judge Wake made that referral on June 27, 2014. [Doc. 978]

The negotiations led by Judge Duncan ultimately produced a settlement of the case. But before that settlement was memorialized by a stipulation, the case was reassigned

---

¹ The Court has scheduled additional evidentiary hearings on the reliability of Defendants' self-monitoring for May 31, 2018, and June 1, 12, and 14, 2018. The parties' monthly status hearing is scheduled for June 13, 2018.

from Judge Wake to Judge Humetewa on August 11, 2014. [Doc. 1074] After that reassignment, the parties presented the stipulation to Judge Humetewa on October 14, 2014. [Doc. 1185] Under the stipulation, Defendants must measure and report, on a monthly basis, their compliance with 103 health care performance measures at the ten state-run prisons. [Doc. 1185 at 2 ¶ 9; Doc. 1185-1 at 8-15 (Performance Measures)] The stipulation also asked that the case henceforth be overseen by Magistrate Judge Duncan. [Doc. 1185 at 11 ¶ 29] After the stipulation was filed, Judge Humetewa, at the parties' joint request (Doc. 1186), issued an order formally referring the case to Judge Duncan pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure on October 22, 2014. [Doc. 1194]

Since then, Defendants have not delivered all promised health care to class members. "Because of pervasive and intractable failures to comply with the Stipulation," in October 2017, the Court issued an order to show cause why it "should not impose a civil contempt sanction of $1,000 per incident of non-compliance commencing the month of December 2017." [Doc. 2373 at 1, 4] Evidentiary hearings on the order to show cause were held on February 28, March 26 and 27, and April 10, 2018. [Docs. 2659, 2722, 2735, 2757] The issue of contempt was completely argued and submitted on April 10, 2018. [Doc. 2757 at 2]

On February 23, 2018, just days before the February 27-28 evidentiary hearings on both contempt and their profound failures in self-monitoring, Defendants filed a motion to disqualify Judge Duncan. [Docs. 2641, 2739, 2753][2] Judge Duncan denied that motion as "a meritless distraction" and noted that "[a]mid Defendants' continuing failure to meet many of the requirements of the Stipulation, Defendants devote[d] energy and time to an

---

[2] At the same time Defendants filed their Motion to Disqualify, Defendants also filed a motion to reassign the February 27-28, 2018 evidentiary hearings on self-monitoring and contempt to another judge, or in the alternative, to stay the hearings. [Doc. 2642] The Court denied that motion as duplicative of the Motion to Disqualify, and also denied the motion to stay the hearings. [Doc. 2643 at 1, 6]

effort to remove the judge *they chose* to hold their feet to the fire." [Doc. 2791 at 1 (emphasis added)]

On May 9, 2018, Judge Duncan informed the parties in open court that he was leaving the bench for health reasons. [5/9/18 Tr. at 5-6] He indicated that his last day on the bench would be approximately June 22, 2018. [*Id*. at 6] Judge Duncan also explained that, before that date, he would "take what actions I can, including the [contempt] order, which we are working on, which will result in an order, a judgment against the State for the payment of penalties associated with failure to comply." [*Id*. at 7] He also explained that "it will be more difficult for you all [and] for the new judge, to have to explain things, to not be able to have the institutional memory that's in my head." [*Id*. at 9-10]

On May 18, 2018, Defendants filed a motion asking Judge Humetewa to withdraw her referral of this case to Judge Duncan from almost four years ago, and also to stay all pending matters before Judge Duncan. [Doc. 2825] The chief legal authority in the motion was a case from the Seventh Circuit Court of Appeals, *Hatcher v. Consolidated City of Indianapolis*, 323 F.3d 513 (7th Cir. 2003).

The following day, Judge Duncan issued the following order:

> Defendants have filed a motion seeking the return of the case to Judge Humetewa pursuant to 28 U.S.C. § 636(c)(4) based upon the extraordinary circumstances of the undersigned's disability retirement. This text only order does not address that issue which is properly before the District Judge. This Order addresses the Defendants jurisdictional argument and the request to stay matters presently before the undersigned. *Hatcher v. Consolidated City of Indianapolis*, 323 F.3d 513 (7th Cir. 2003), is neither controlling authority and, in any event, is not persuasive given that it does not address the factual scenario presented here. This action was referred to the undersigned to conduct a settlement conference (Docs. 961, 968). After that referral, and successful negotiation of the Stipulation, the parties explicitly consented to the undersigned continuing to exercise jurisdiction over this action pursuant to 28 U.S.C. § 636(c) to promote the interests of judicial economy and efficiency (Doc. 1186). Moreover, there is no statutory or Ninth Circuit authority precluding such assignment. Accordingly, the undersigned rejects Defendants jurisdictional argument and affirms all rulings, briefing schedules, and pending matters set for hearing until an order to the contrary issues.

1  [Doc. 2826]

2  Four days later, Judge Humetewa denied Defendants' request for a status
3  conference and ordered Plaintiffs to submit a response by May 29, 2018.  [Doc. 2833]

**ARGUMENT**

**A.  Judge Humetewa's referral of this case to Judge Duncan three and a half years ago was proper.**

Defendants' legal argument that this Court's order referring this case to Judge Duncan was improper rests on a single case: *Hatcher v. Consolidated City of Indianapolis*, 323 F.3d 513 (7th Cir. 2003).  This out-of-circuit decision from fifteen years ago has not been cited since then by the Seventh Circuit, nor by any other Court of Appeals. It simply has no precedential value here.

The failure of any Court of Appeals to cite *Hatcher* is due to the fact that its holding was fatally undermined by a United States Supreme Court decision issued approximately one month after *Hatcher: Roell v. Withrow*, 538 U.S. 580 (2003).  In *Roell*, the Supreme Court held that "a defect in the referral to a full-time magistrate judge under § 636(c)(2) does not eliminate that magistrate judge's jurisdiction under § 636(c)(1) ***so long as the parties have in fact voluntarily consented***."  *Id.* at 587 (emphasis added). The Ninth Circuit has held the same.  *See Wilhelm v. Rotman*, 680 F.3d 1113, 1119 (9th Cir. 2012) ("[c]onsent, then, is the touchstone of magistrate judge jurisdiction" (quotation marks and citation omitted)).

*Roell* on its own disposes of Defendants' motion.  There is no dispute that the parties all consented to the referral of this case to Judge Duncan.  [*See* Doc. 1194 at 1 ("The parties assert in the motion that they consent to the reassignment of this case to Magistrate Judge David Duncan")]  Any defect in the referral that followed would therefore not eliminate Judge Duncan's jurisdiction.  *See Wilhelm*, 680 F.3d at 1119.

But even putting *Roell* aside and assuming that the out-of-circuit decision in *Hatcher* was binding, it does not apply to these circumstances.  *Hatcher* turned on whether the parties could "override" the usual process for referring a case to a magistrate judge by

1  "substitut[ing] their own chosen magistrate judge." 323 F.3d at 518. In *Hatcher*, the case had settled except for a dispute about attorneys' fees. The settlement agreement between the parties—with no judicial input—specified a particular magistrate judge to resolve the fees issue. *Id.* at 514-15. No document was filed requesting that the court order the referral and the district court judge apparently never issued an order about the referral, instead merely saying that he would give the magistrate judge a "heads up." *Id.* at 515-16.

The Seventh Circuit disapproved this informal process. "[M]agistrate judge assignment is a matter for the court to decide, not the parties." *Id.* at 518. As a result, "it is the court, and not the parties, that has the power to confer general or specific duties upon an individual magistrate judge." *Id.* The Seventh Circuit explained that "two prerequisites exist for a valid reference to a magistrate judge: (1) consent of the parties and (2) special designation by the court. Nothing in that system explicitly supports the idea that the parties may commandeer this entire process in lieu of the court." *Id.* (citation omitted).

No such commandeering happened here. When the parties consented to referring this case to Judge Duncan, he had already been associated with this case—a very different scenario from *Hatcher* where the parties picked an entirely new magistrate judge to resolve a particular issue. Defendants concede, as they must, that consent to a referral where the magistrate judge is already known raises no problems. [Doc. 2825 at 6 n.3] The referral of this case to Judge Duncan was approved by this Court after the parties explicitly asked that Judge Duncan—who was already thoroughly involved in the case due to his role in mediating the settlement—continue with the case because, as the parties motion to refer the case put it, of his "unique ability to effectuate the parties' intent in any future proceedings." [Doc. 1186 at 2] Not only was this Court's referral of the case to Judge Duncan not objectionable, it was a sound use of judicial resources to which all parties consented and for which the district court judge issued an order of designation.

LEGAL140038743.1                        -6-

1    Defendants' objections now raise bright red flags.  The Supreme Court has
2 highlighted the risk of "gamesmanship" when a party indulges in "the luxury of waiting
3 for the outcome before denying the magistrate judge's authority." *Roell*, 538 U.S. at 590.
4 Courts should not allow a party to retroactively invent a flaw in a magistrate judge referral
5 that would allow "a full and complicated trial [to be] wasted at the option of an
6 underserving and possibly opportunistic litigant." *Id*.

7    Those concerns are at their zenith here where Defendants, having tried and failed to
8 disqualify Judge Duncan, are attempting once again to remove him from this case before
9 he resolves the contempt issue, as well as the other pending matters, prior to his
10 retirement.  *Cf. Melendres*, 2015 WL 13173306, at *15 (waiting "until after contempt
11 proceedings were underway" to use long-known facts to argue for recusal "raise[d] the
12 specter of attempted manipulation of the judicial process").

13    **B.    There is no issue of subject matter jurisdiction here.**

14    This massive class action was headed to trial before it was resolved with a
15 settlement overseen by Judge Duncan. In the resulting stipulation, the parties jointly
16 agreed that he was an appropriate judicial officer to oversee the implementation of the
17 settlement, and the district judge referred the case to him pursuant to 28 U.S.C. § 636(c)
18 and Rule 73 of the Federal Rules of Civil Procedure.  That was more than three years ago.
19 Nothing related to that referral has changed.  Defendants long ago lost their ability to
20 complain about the structure of the settlement agreement that they agreed to.

21    To make this objection seem timely, Defendants argue that the issue here is one of
22 subject matter jurisdiction and thus can be raised at any time.  But there is no question
23 about subject matter jurisdiction.  Defendants admitted years ago in their Answer that the
24 federal district court properly exercised subject matter jurisdiction over this case involving
25 the constitutional rights of incarcerated people.  [*See, e.g*., Docs. 30 ¶ 4 (Answer); 33 ¶ 4
26 (Amended Answer)]

27    Defendants do not address this long-settled concession.  Instead, they use the
28 description of a magistrate judge's authority—termed "jurisdiction" in the relevant statute,

the Federal Magistrate Act, 28 U.S.C. § 636—interchangeably with "subject matter jurisdiction." But the "jurisdiction" referred to in the Federal Magistrate Act does not refer to "subject matter jurisdiction." The terms are not interchangeable and it is a basic tenet of legal construction that rules from one doctrine cannot be automatically grafted onto another. *See also* Jurisdiction Definition, Black's Law Dictionary (10th Ed. 2014), *available at* Westlaw (listing dozens of distinct uses of the word "jurisdiction").

But that is precisely what Defendants attempt here. By arguing that referral of this case to Judge Duncan was improper, they suggest that subject matter jurisdiction was somehow lacking. But Judge Duncan's jurisdiction in a case referred to him at the request of the parties—as conferred by the Federal Magistrate Act, 28 U.S.C. § 636—is an altogether different question than whether *a federal court* has subject matter jurisdiction over a prisoner rights action brought pursuant to 42 U.S.C. § 1983. On the latter point, there is no dispute, as Defendants conceded years ago in their Answer and Amended Answer.[3]

### C. Judge Duncan should continue presiding in this case until he leaves the bench.

In the alternative, Defendants ask Judge Humetewa withdraw her referral of the case to Judge Duncan because he has announced he is retiring for medical reasons. Since the request here comes at Defendants' insistence and not on the Court's own motion, only "extraordinary circumstances" allow withdrawal of the reference. 28 U.S.C. § 636(c)(4).

"Extraordinary circumstances" encompass "the timeliness of the request, whether granting the request would unduly interfere with or delay the proceedings, particularly relative to the burdens and costs to the litigants, and whether the party's consent was voluntary and uncoerced," as well as "whether the motion is made in good faith or is

---

[3] Defendants' authorities about magistrate judge "jurisdiction" all involve fact patterns where a party never consented to a magistrate judge's involvement. [Doc. 2825 at 8] None of these cases hold or suggest that a court's subject matter jurisdiction is implicated by improper referrals to magistrate judges. And none of the cases change the result here because all the parties asked that this case be referred to Judge Duncan.

1   dilatory and contrived." *M&I Marshall & Ilsley Bank v. McGill*, 10-CV-1436-PHX-ECV,
2   2011 WL 2464184, at *2 (D. Ariz. June 21, 2011) (citations omitted).

3   There are no extraordinary circumstances requiring removal of Judge Duncan here.
4   As already noted, there is no issue about whether the parties voluntarily consented to
5   Judge Duncan hearing this case.  And removing him now would impose substantial
6   burdens on the parties and this Court.  Judge Duncan has overseen this unwieldy case for
7   more than three years.  He has held numerous evidentiary hearings and immersed himself
8   in the minutiae of health care in Arizona prisons.  As he remarked when announcing his
9   departure from the bench, "it will be more difficult" for the parties and "the new judge"
10  because "the institutional memory that's in my head" will be lost.  [5/9/18 Tr. at 9-10]

11  Most importantly, Judge Duncan is on the verge of issuing an order about the
12  pending contempt issue in this case, following evidentiary hearings at which he heard the
13  live testimony of numerous witnesses.  Removing Judge Duncan now, before he issues
14  that contempt order (and before he rules on the other pending matters detailed *supra* pages
15  1-2), would require the parties, and the Court, to start from scratch.  Not only would a new
16  judge have to review the reams of evidence, digest volumes of written submissions, and
17  master the complexities of health care delivery in Arizona prisons, but he or she would
18  also have to hear the testimony of the same witnesses Judge Duncan has already heard to
19  assess their credibility.  *See Raithaus v. UNUM Life Ins. Co. of Am.*, 335 F. Supp. 2d
20  1098, 1130 (D. Haw. 2004) ("The trier of fact will have to determine the unresolved
21  factual issues in this case, including the credibility of all involved.").  And though the
22  pending decision on attorney fees here will not involve evaluating live witness testimony,
23  it does require immersion in the complicated history of this case.[4]

---

[4] Defendants also rely on *Paddington Partners v. Bouchard*, 950 F. Supp. 87, 90 (S.D.N.Y. 1996).  But that case does not support them.  In *Paddington Partners*, of the Court a reference to a magistrate judge *after* the magistrate judge had retired.  950 F. Supp. at 89.  *Paddington Partners* does not stand for what Defendants suggest it does— that a judge who announces his upcoming retirement from the bench should be immediately stripped of all cases.  [*See* Doc. 2825 at 9 ("*impending* retirement requires jurisdiction be revested to the district court judge" (emphasis added)]

Given these circumstances, Defendants have not shown "extraordinary circumstances" necessary to have Judge Duncan removed before his retirement. And judicial economy requires the opposite result: that Judge Duncan stay on this case until he leaves the bench to resolve as many pending issues as possible. It will be hard enough for another judge to take over following Judge Duncan's unexpected retirement; there is no reason to compound that difficulty for the next judge by preventing Judge Duncan from resolving what issues he can before his departure from the bench. Defendants' renewed attempts to throw Judge Duncan off the case should be rejected.[5]

## CONCLUSION

For these reasons, the Court should deny Defendants' Motion to Vacate Magistrate Judge Referral for Lack of Subject Matter Jurisdiction.

Dated: May 29, 2018          **PRISON LAW OFFICE**

By:   s/ Donald Specter
Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:   dspecter@prisonlaw.com
         ahardy@prisonlaw.com
         snorman@prisonlaw.com
         ckendrick@prisonlaw.com
         rlomio@prisonlaw.com

*Admitted *pro hac vice*

---

[5] As for "whether the motion is made in good faith or is dilatory and contrived," *M&I Marshall & Ilsley Bank*, 2011 WL 2464184, at *2, the fact that Defendants filed this motion barely two weeks after their motion to disqualify Judge Duncan was denied strongly suggests an attempt to achieve the same (illegitimate) result by different means.

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Victoria Lopez (Ill. 6275388)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:   dfathi@aclu.org
             afettig@aclu.org
             vlopez@aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, P.L.L.C.**
P. O. Box 91398
Tucson, Arizona 85752
Telephone: (520) 477-1475
Email:   kirstin@eidenbachlaw.com

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:   kbrody@acluaz.org

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:   dbarr@perkinscoie.com
             agerlicher@perkinscoie.com
             jhgray@perkinscoie.com

Caroline Mitchell (Cal. 143124)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email:   cnmitchell@jonesday.com

*Admitted *pro hac vice*

| | |
|---|---|
| 1 | John Laurens Wilkes (Tex. 24053548)* |
| | **JONES DAY** |
| 2 | 717 Texas Street |
| | Houston, Texas 77002 |
| 3 | Telephone: (832) 239-3939 |
| | Email:   jlwilkes@jonesday.com |
| 4 | |
| | *Admitted *pro hac vice* |
| 5 | |

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By:  s/ Maya Abela
       Sarah Kader (Bar No. 027147)
       Asim Dietrich (Bar No. 027927)
       5025 East Washington Street, Suite 202
       Phoenix, Arizona 85034
       Telephone: (602) 274-6287
       Email:   skader@azdisabilitylaw.org
                    adietrich@azdisabilitylaw.org

       Rose A. Daly-Rooney (Bar No. 015690)
       J.J. Rico (Bar No. 021292)
       Jessica Jansepar Ross (Bar No. 030553)
       Maya Abela (Bar No. 027232)
       **ARIZONA CENTER FOR DISABILITY LAW**
       177 North Church Avenue, Suite 800
       Tucson, Arizona 85701
       Telephone: (520) 327-9547
       Email:
          rdalyrooney@azdisabilitylaw.org
             jrico@azdisabilitylaw.org
             jross@azdisabilitylaw.org
             mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2018, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Kevin R. Hanger
Timothy M. Ray
Richard M. Valenti
Jamie D. Guzman
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
khanger@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com
*Attorneys for Defendants*

s/ D. Freouf