**EXHIBIT 4**

**EXHIBIT 4**

1   Arizona Attorney General Mark Brnovich
    Office of the Attorney General
2   Michael E. Gottfried, Bar No. 010623
    Lucy M. Rand, Bar No. 026919
3   Assistant Attorneys General
    2005 N. Central Ave
4   Phoenix, Arizona 85004-1592
    Telephone: (602) 542-1645
5   Michael.Gottfried@azag.gov
    Lucy.Rand@azag.gov
6
    Daniel P. Struck, Bar No. 012377
7   Rachel Love, Bar No. 019881
    Timothy J. Bojanowski, Bar No. 022126
8   Nicholas D. Acedo, Bar No. 021644
    Ashlee B. Hesman, Bar No. 028874
9   Jacob B. Lee, Bar No. 030371
    Kevin R. Hanger, Bar No. 027346
10  Timothy M. Ray, Bar No. 029191
    Richard M. Valenti, Bar No. 031533
11  Jamie D. Guzman, Bar No. 022095
    STRUCK LOVE BOJANOWSKI & ACEDO, PLC
12  3100 West Ray Road, Suite 300
    Chandler, Arizona  85226
13  Telephone:  (480) 420-1600
    dstruck@strucklove.com
14  rlove@strucklove.com
    tbojanowski@strucklove.com
15  nacedo@strucklove.com
    ahesman@strucklove.com
16  jlee@strucklove.com
    khanger@strucklove.com
17  tray@strucklove.com
    rvalenti@strucklove.com
18  jguzman@strucklove.com
    *Attorneys for Defendants*
19

20              UNITED STATES DISTRICT COURT
                    DISTRICT OF ARIZONA
21
    Victor Parsons, *et al.*, on behalf of themselves        NO. 2:12-cv-00601-DKD
22  and all others similarly situated; and Arizona
    Center for Disability Law,
23                                          Plaintiffs,
                     v.                                     **DECLARATION OF LORI**
24                                                          **JOHNSON**
    Charles Ryan, Director, Arizona Department
25  of Corrections; and Richard Pratt, Interim
    Division Director, Division of Health Services,
26  Arizona Department of Corrections, in their
    official capacities,
27                                          Defendants.

28

1           I, Lori Johnson, hereby declare as follows:

2           1. I am the Facility Health Administrator ("FHA") at the Arizona State Prison

3    Complex at Yuma and have been in that position for the past three and one-half years.

4           2. I have my bachelor's degree in healthcare administration, and I have been a nurse

5    for 25 years. Before entering into the corrections field, I was a surgery director for a

6    hospital in Wyoming for ten years.

7           3. I have personal knowledge of the statements contained herein.

8           4. The Yuma Complex runs open sick call every day (including weekends) and will

9    often operate longer than the stated 12-hour period. If there are no patients who require

10   care during that 12-hour period, sick call will still remain open. As necessary, nurses will

11   stay as long past the 12-hour period to see every patient that needs to be seen. We will

12   even see patients that do not bring with them a Health Needs Request ("HNR") form. I am

13   not aware of any instance in which open sick call was not conducted on a given day.

14          5. I am familiar with Cecilia Edwards and have knowledge about her position as

15   Clinical Coordinator. Ms. Edward's work station was located in the back corner of the

16   building and she would have been unable to see the patients who come and go. Moreover,

17   Ms. Edwards' position was not related to the nurse lines, and she would not have personal

18   knowledge about whether it was conducted.

19          6. I am not aware of any continuous errors in the position of the scheduler that would

20   have resulted in inmates getting sent to the wrong place or not getting the treatment they

21   needed. Any errors that may have occurred were isolated and quickly corrected.

22          7. New inmate arrivals occur at the Dakota Unit intake center. There are two intake

23   arrival times per day: one at approximately 10:00 a.m. and another at approximately 3:00

24   p.m. Intake is always adequately staffed by the Assistant Director of Nursing ("ADON")

25   or another nurse. Ms. Edwards was not involved in the intake process and was not

26   stationed at the Dakota Unit. She would have no firsthand knowledge about the ongoing

27   intake process.

28          8. To the best of my knowledge, there has not been an overall decrease in specialty

1

1   consult requests.

2       9.  At one point, I gave an instruction that was provided to me regarding specialty

3   consults for optometry.  Yuma Complex had been inputting optometry appointments as

4   provider appointments.  Instead, optometry appointments should have been classified as

5   outside consults.

6       10. After I gave this optometry instruction, Ms. Edwards sent me an email, stating that

7   there were issues resulting from the optometry classification change.  I asked her to

8   provide me a list of inmates for which Ms. Edwards believed there was an issue.  Ms.

9   Edwards never provided me with that list, and I never learned of any issues resulting from

10  this classification change.

11      11. Specialty consults are not canceled due to the appointment falling outside of the

12  required time frame.  If a scheduled appointment will be out of compliance, it will still take

13  place so that the patient will receive necessary treatment.  I have never been instructed –

14  nor have I instructed others – to cancel an appointment because it would result in a

15  performance measure being out of compliance.

16      12. Additionally, specialty consults are not canceled when there is no specialist

17  provider available.  If there is no specialist available, the consult would remain pending,

18  even if it is outside of the required time frame.  When a specialist is located, the

19  appointment is scheduled.

20      13. Occasionally, a specialty consult is canceled by the outside provider.  This can

21  occur when the outside provider sees the patient and determines that additional testing

22  should be done before the scheduled treatment is provided.  The outside provider then

23  cancels the consult so that the testing can be done.  After the testing, a new specialty

24  consult is entered.

25      14. The Yuma Complex has approximately 32 infectious disease patients.

26      15. At times, I attend clinical coordinator meetings, and I have never heard a

27  discussion in which clinical coordinators were instructed to cancel a specialty request until

28  a specialist can be located.  I am not aware of any such instruction ever being given.

2

16. I have been instructed by the ADC that we are prohibited from taking inmates across state lines for healthcare reasons.   Therefore, we are unable to utilize specialty providers outside of Arizona.

17. All inmates are screened before being placed at the Yuma Complex to verify that their medical conditions are compatible with the services we can provide from this facility.

18. I periodically speak with Ms. Smalley in the scope of my position as the FHA.  Ms. Smalley is open with concerns and does not have trouble expressing them to me.  Ms. Smalley has never expressed to me any frustration regarding an inability to have patients with HIV or Hepatitis-C seen in a timely manner.

I declare under penalty of perjury that the foregoing is true and correct.

Lori Johnson     6/18/18

3