**EXHIBIT 7**

**EXHIBIT 7**

1   Office of the Arizona Attorney General
    Michael E. Gottfried, Bar No. 010623
2   Lucy M. Rand, Bar No. 026919
    Assistant Attorney General
3   2005 N. Central Avenue
    Phoenix, Arizona 85004-1592
4   Telephone: (602) 542-1645
    Fax: (602) 542-3393
5   Michael.Gottfried@azag.gov
    Lucy.Rand@azag.gov
6
    Daniel P. Struck, Bar No. 012377
7   Rachel Love, Bar No. 019881
    Timothy J. Bojanowski, Bar No. 022126
8   Nicholas D. Acedo, Bar No. 021644
    Ashlee B. Hesman, Bar No. 028874
9   Jacob B. Lee, Bar No. 030371
    Kevin R. Hanger, Bar No. 027346
10  Timothy M. Ray, Bar No. 029191
    Richard M. Valenti, Bar No. 031533
11  Jamie D. Guzman, Bar No. 022095
    STRUCK LOVE BOJANOWSKI & ACEDO, PLC
12  3100 West Ray Road, Suite 300
    Chandler, Arizona 85226
13  Telephone: (480) 420-1600
    Fax: (480) 420-1696
14  dstruck@strucklove.com
    rlove@strucklove.com
15  tbojanowski@strucklove.com
    nacedo@strucklove.com
16  ahesman@strucklove.com
    jlee@strucklove.com
17  khanger@strucklove.com
    tray@strucklove.com
18  rvalenti@strucklove.com
    jguzman@strucklove.com
19  *Attorneys for Defendants*

20              **UNITED STATES DISTRICT COURT**
21                  **DISTRICT OF ARIZONA**

22  Victor Parsons, *et al.*, on behalf of themselves      NO. 2:12-cv-00601-DKD
    and all others similarly situated; and Arizona
23  Center for Disability Law,
                                    Plaintiffs,
24              v.                                          **DECLARATION OF SARA NEESE**

25  Charles Ryan, Director, Arizona Department
    of Corrections; and Richard Pratt, Interim
26  Division Director, Division of Health Services,
    Arizona Department of Corrections, in their
27  official capacities,
                                    Defendants.
28

I, **SARA NEESE**, make the following Declaration:

1.     I am over the age of 18 years and have personal knowledge of and am competent to testify to the matters set forth in this Declaration.

2.     I am a Licensed Practical Nurse, currently licensed in Arizona.

3.     I was employed by Corizon from July 2017 through mid-February 2018 as a Clinical Coordinator assigned to ASPC-Eyman, located in Florence, Arizona.

4.     I resigned my position with Corizon voluntarily.

5.     Prior to my employment with Corizon, I worked at a family medicine clinic.

6.     I am aware of the *Parsons v. Ryan* litigation and the resulting Stipulation that provides for numerous Performance Measures that govern the delivery of medical, mental health and dental care to the inmates in State-operated prison complexes.

7.     I am aware that Corizon's compliance with the Stipulation Performance Measures is monitored by the Arizona Department of Corrections Health Services Contract Monitoring Bureau.

8.     As a Clinical Coordinator at ASPC-Eyman, my duties included assisting ASPC-Eyman providers with gathering information necessary for review by Corizon's Utilization Management Team ("UM" Team) in seeking approval for outside specialty consults;  tracking UM responses to requests for outside specialty consults; tracking ASPC-Eyman provider review and response to UM responses to requests for outside specialty consults; and scheduling outside specialty consults as well as coordination of requests for services/equipment/testing made by ASPC-Eyman providers.

9.     In performing these duties, I interfaced with ASPC-Eyman providers, ASPC-Eyman's Medical Director, Corizon's UM Team, and ASPC-Eyman's Transportation Team.

10.    My understanding gained while working as a Clinical Coordinator, is that Corizon's UM Team is made up of providers who function as an oversight committee to determine whether Corizon's request for an outside specialty consultation will be approved.

11.     My communications with Corizon's UM Team were accomplished by electronic communication.

12.     The UM process worked as follows when I was a Clinical Coordinator at ASPC-Eyman (one of two Clinical Coordinators at the complex).

13.     To seek approval for an outside specialty consultation from Corizon's UM Team, the prison complex provider must submit an outside specialty consultation through Corizon's InterQual computer program, and provide the medical information necessary for the UM Team to make an educated decision as to whether a provider's outside specialty consultation request should be approved.

14.     This same process is likewise used for a provider to make a request for certain medical testing, equipment, and specialty treatment.

15.     InterQual is a quality assurance program that has set parameters for appropriate treatment based on information input into the system

16.     After consideration of a provider request, the UM Team responds with: (1) an approval; (2) a "needs more information" request ("NMI"); or (3) an "alternative treatment plan" ("ATP").

17.     If an approval was received, I would then contact the appropriate outside specialty consult provider and schedule the referral appointment.

18.     If a NMI was received, I would provide notice of the same to the requesting provider utilizing the CARES and eOMIS computer systems.  The provider would then gather the additional information required (or direct me to compile the same), and I would electronically submit the NMI information to the UM Team and await further response.

19.     If the UM Team determined that another type of treatment should be tried before approval of the provider's original request, the UM Team would respond to the provider's request with an ATP outlining the approved alternative treatment plan.

20.     I would then transmit the ATP to the provider upon receipt from the UM Team for review and acceptance.

21.     If the provider received further information or a patient's medical condition changed, the provider could submit a new specialty care request during the pendency of an ATP.

22.     The provider could also reject an ATP if the provider disagreed with the ATP and rebut/appeal the decision to Corizon's Regional Medical Director.

23.     Specifically, to reject an ATP, the provider had to send the ATP to Corizon's Regional Medical Director and challenge the ATP.  If the Regional Medical Director overturned the ATP, the issue was then escalated to Corizon's Chief Medical Officer/Director for approval or denial.

24.     In my experience, the UM Team did not respond to provider specialty care requests with denials; rather, if a request was not approved, the provider received an NMI or an ATP.

25.     The turnaround time on receiving a response from the UM Team was normally two to three days, unless the request was urgent, and then the UM Team could provide a response to the provider the same day.

26.     Providers were required to respond to ATPs (either accept or proceed to rebuttal/appeal) within three days of receipt from the UM Team.

27.     As part of my duties, I tracked UM Team and provider response times to facilitate compliance with the applicable timelines required of the UM process and applicable Stipulation Performance Measures.

28.     During the time period I worked as a Clinical Coordinator at ASPC-Eyman, I recall processing, on average, 180-200 specialty care and/or on-site optometry requests monthly.

29.     During the time period I worked as a Clinical Coordinator at ASPC-Eyman, I worked with Dr. Jan Watson and assisted her with UM Team requests.

30.     I found working with Dr. Watson on her UM Team specialty care requests to be difficult and Dr. Watson's attitude towards me to be hostile.

4

31.     Specifically, Dr. Watson regularly would not provide the UM Team with all of the information necessary to process a request for outside specialty consultation referral, medical testing, or treatment.

32.     It was also difficult for me to obtain the necessary information from Dr. Watson to provide to the UM Team either at the initial request stage or in response to an NMI.

33.     Likewise, oftentimes Dr. Watson was late in her response to ATPs received from the UM Team which needed to be responded to within three days of receipt.

34.     I regularly attempted to assist Dr. Watson with the UM Team process and provide her regular notice of deadlines so that tasks could be completed timely.

35.     For example, attached hereto as Exhibit 1 (Defendants' Evidentiary Hearing Exhibit 423) is an email correspondence from me to Dr. Watson dated August 8, 2017, asking her to address three NMIs and five ATPs that were getting close to the response deadlines.  Dr. Watson responded that same date, advising, "I do these when I have the time." She also advised ". . . my response time will not be as timely as providers who work for Corizon full time."  This correspondence was generated in the normal course of my duties as a Corizon Clinical Coordinator and is a business record of Corizon.

36.     Attached hereto as Exhibit 2 (Defendants' Evidentiary Hearing Exhibit 416) is an email correspondence from me to Dr. Watson dated September 8, 2017, asking her to complete an RUQ form for one patient and asking her to accept or deny an ATP on another patient.  I also advised Dr. Watson, **"If you need any assistance completing, I would be happy to come over."**  (bold type original).  Dr. Watson responded on September 11, 2017, stating in part, "I cannot keep up with all the things people want me to do."  This correspondence was generated in the normal course of my duties as a Corizon Clinical Coordinator and is a business record of Corizon.

37.     Attached hereto as Exhibit 3 (Defendants' Evidentiary Hearing Exhibit 405) is an email correspondence from me to Dr. Watson dated August 12, 2017, asking her to fill out a consult entered for a patient.  Dr. Watson responded in part on August 13, 2017,

telling me to "[h]ave the hep C coordinator or the infectious disease nurse complete this.  I am on vacation." This correspondence was generated in the normal course of my duties as a Corizon Clinical Coordinator and is a business record of Corizon.

38.     Attached hereto as Exhibit 4 (Defendants' Evidentiary Hearing Exhibit 390) is an email correspondence string from me to Dr. Watson dated October 11, 2017, asking her to complete ATPs and NMIs that day as a priority. I cc'd Daniel Sego (ASPC-Eyman's Facility Health Administrator ("FHA")) in order to attempt to ensure that Dr. Watson completed the priority reviews due that day and that the FHA was advised of the same.  This correspondence was generated in the normal course of my duties as a Corizon Clinical Coordinator and is a business record of Corizon.

39.     Attached hereto as Exhibit 5 (Defendants' Evidentiary Hearing Exhibit 437) is an email correspondence from me to Dr. Watson dated September 13, 2017, compiling a list for her of five ATPs and two NMIs that awaited completion, as well as a RUQ form that was needed to get an ultrasound approved for a patient.  These emails represent a just some of the regular attempts I made to keep Dr. Watson on track for timely responses to patient needs.  I ended the email with the following – an attempt to work collectively with Dr. Watson, but also an attempt to have her respect the time and effort taken to make sure the UM process ran in a timely manner such that inmate needs were addressed in accordance with the Stipulation Performance Measures:

> "I respect your work and the time and effort you put into your job, I ask that you please respect the time and effort that Martha and I Put into ours to get your requests completed on time.  If you would like me to come over and assist in any way I am more than happy to."

This correspondence was generated in the normal course of my duties as a Corizon Clinical Coordinator and is a business record of Corizon.

40.     My efforts in assisting Dr. Watson with her deadlines was not well received by her.  On one occasion when I personally presented Dr. Watson with an ATP that needed a response, she pushed the ATP back to me across the table in an angry and resentful manner, put her hand into the air and towards my face, and stated "I never want

1  to see one of these again."

2        41.    While I understood the above statement to mean that Dr. Watson would not

3  consider ATPs provided by the UM Team, I nevertheless (as I was required to do)

4  provided Dr. Watson with both the ATPs and the NMIs most frequently sent back by the

5  UM Team in response to Dr. Watson's UM Team submissions.

6        42.    For example, attached hereto as Exhibit 6 (Defendants' Evidentiary Hearing

7  Exhibit 428) is an email correspondence string back and forth between Dr. Watson and

8  me dated August 21, 2017, in which I guided Dr. Watson through the UM Team specialty

9  care referral process.  Dr. Watson eventually sought the status of a consult, asking what

10 the UM Team had done and asking whether she needed to resubmit the consult.  I advised

11 that the patient was receiving a Doppler test that week and recommended she cancel the

12 old request for nephrology and resubmit the request because Dr. Watson would then have

13 the Doppler test results necessary to back up her original nephrology consultation request.

14 This correspondence was generated in the normal course of my duties as a Corizon

15 Clinical Coordinator and is a business record of Corizon.

16       43.    I did not recommend canceling the specialty consult request in order to

17 avoid any Stipulation Performance Measure timelines or compliance findings.  Rather, I

18 recommended the request cancellation, because, based upon experience, her chances of

19 obtaining an *approved* referral request would be greater if accompanied by the results of

20 testing taking place that week.

21       44.    Attached hereto as Exhibit 7 (Defendants' Evidentiary Hearing Exhibit 432)

22 is an email correspondence between Dr. Watson and me dated August 22 and 28, 2017 in

23 which I asked Dr. Watson to look at two ATPs received from the UM Team on one

24 patient, advising that both oncology visits had been denied pending the patient seeing

25 urology first.  I also advised Dr. Watson that she could resubmit the oncology requests

26 after the urology results were received.  I did this so she would understand that she could

27 go back to the UM Team again for oncology care after the urology results were received

28 versus considering the ATP to be the last word from the UM Team on the oncology

7

1    requests. This correspondence was generated in the normal course of my duties as a

2    Corizon Clinical Coordinator and is a business record of Corizon.

3         45.    Attached hereto as Exhibit 8 (Defendants' Evidentiary Hearing Exhibit 408)

4    is an email correspondence from me to Dr. Watson dated August 22, 2017, confirming

5    that I had canceled a patient consult request to the UM Team and that Dr. Watson needed

6    to sign off on the consult.  The consult request was canceled pending the results of a prior

7    procedure.  I also advised Dr. Watson that she was able to resubmit the consult since the

8    Doppler study had been performed that morning – pending results.  This cancellation was

9    made for legitimate reasons, as the consult previously submitted to the UM Team did not

10   contain the pending test results.

11        46.    Attached hereto as Exhibit 9 (Defendants' Evidentiary Hearing Exhibit 389)

12   is yet another email correspondence from me to Dr. Watson dated October 11, 2017,

13   asking her to complete ATPs, NMIs, and consultations awaiting review.  I routinely had to

14   inform Dr. Watson that the requests I was making were urgent, and copied Daniel Sego,

15   the complex FHA, on the same, hoping to prompt a response to my request.   This

16   correspondence was generated in the normal course of my duties as a Corizon Clinical

17   Coordinator and is a business record of Corizon.

18        47.    Attached hereto as Exhibit 10 (Defendants' Evidentiary Hearing Exhibit

19   422) is an email correspondence from me to Dr. Watson dated September 25, 2017,

20   asking her to enter a consult for a patient and address an ATP.  Dr. Watson responded on

21   October 1, 2017, asking me to put in a response for her stating, "It cannot wait any longer.

22   I just need either a rebuttal or an acceptance."   This correspondence was generated in the

23   normal course of my duties as a Corizon Clinical Coordinator and is a business record of

24   Corizon.

25        48.    As to Dr. Watson's dissatisfaction with receipt of ATPs from the UM Team

26   on her specialty care requests, I was my understanding the Dr. Watson knew that if she

27   did not agree with an ATP received from the UM Team, she could reject it and elevate the

28   issue for reconsideration to Corizon's Regional Medical Director.

49.     For example, in Exhibit 10 attached hereto (previously discussed above and Defendants' Evidentiary Hearing Exhibit 422), Dr. Watson stated herself that she needed either a rebuttal or an acceptance of pending ATP.

50.     Attached hereto as Exhibit 11 (Defendants' Evidentiary Hearing Exhibit 391) is another an email correspondence from me to Dr. Watson dated October 11, 2017, asking her to complete review of an attached list of four pending ATPs and three pending NMIs.  Again, I cc'd Daniel Sego (FHA) in an attempt to bring attention to Dr. Watson's pending reviews and to prompt a response from her.   This correspondence was generated in the normal course of my duties as a Corizon Clinical Coordinator and is a business record of Corizon.

51.     I am aware that the media outlet KJZZ ran a story regarding Dr. Watson's criticisms regarding Corizon during the time period she worked at ASPC-Eyman.

52.     I am also aware that KJZZ published two email communications between Dr. Watson and me.

**53.**     Attached hereto as Exhibit 12 (Defendants' Evidentiary Hearing Exhibit 419 – see also Plaintiffs' Evidentiary Hearing Exhibit 3 (duplicate) attached hereto as Exhibit 13), and referred to in the KJZZ story, is an email correspondence string between me and Dr. Watson dated September 18, 2017 in which I requested that Dr. Watson cancel two infectious disease consults for one particular patient because we did not have a provider to send the patient to.  I advised that one of the two specialty consults had been approved and had been sitting for 42 days, but without an outside specialty provider to send the patient to. This correspondence was generated in the normal course of my duties as a Corizon Clinical Coordinator and is a business record of Corizon.

54.     It was my understanding at the time that Corizon would be fined for each day after thirty days that a patient was waiting to be seen after a specialty consult was approved.  I do not recall exactly how or where I gained this information but it was my understanding at the time.

55.     My inclusion of the statement that Corizon may be fined was not an attempt to circumvent the Stipulation Performance Measures, but was to advise Dr. Watson that the approval had been sitting for more than thirty days, but there was no outside infectious disease specialist to send the patient to.

56.     Because Dr. Watson was normally delayed in taking action on timelines associated with outside specialty consults, I wanted to avoid having an unnecessary referral on the books that could result in an unwarranted fine where completion of the referral was not possible without a provider to send the inmate to.

57.     Attached hereto as Exhibit 14 (Defendants' Evidentiary Hearing Exhibit 420; see also Plaintiffs' Evidentiary Hearing Exhibit 10 (duplicate) attached hereto as Exhibit 15) is an email correspondence string between Dr. Watson and me dated September 19, 2017, continuing the discussion regarding the unavailability of an outside infectious disease specialist.  After Dr. Watson asked who patients should be referred to "[i]f you do not have an infectious disease specialist to see patients with HIV . . .", I asked the same of Medical Director, Dr. R. Stewart, and he advised me that Corizon had its own infectious disease provider to consult with.  This correspondence was generated in the normal course of my duties as a Corizon Clinical Coordinator and is a business record of Corizon.

58.     The cancellation request made by me on September 18, 2017 (Exhibit 13 above) was made for legitimate reasons where there was no outside infectious disease specialist to send the patient to and Corizon had the ability to have an internal Corizon provider see the patient.

59.     Attached hereto as Exhibit 16 (Defendants' Evidentiary Hearing Exhibit 415) is an email correspondence from me to Dr. Watson dated September 11, 2017, asking Dr. Watson to cancel a cardiology consult appointment not needed until November, but to resubmit closer to November so that it would not inappropriately appear that the appointment was not completed in the required 60-day window subjecting Corizon to what I understood to be fines for every day past the 60-day timeframe that the

appointment was not completed.  Because Dr. Watson did not want the consult to occur until November, this was not an attempt to inappropriately cancel an appointment to avoid a fine, but, rather, was to avoid an incorrect compliance finding where the provider did not aim to have the appointment take place for another couple of months.  This correspondence was generated in the normal course of my duties as a Corizon Clinical Coordinator and is a business record of Corizon.

60.    Specialty consult/care appointments may be legitimately canceled where the outside provider is not available or cancels the appointment; the patient is out to the hospital; the patient refuses the appointment; the medical condition for which the referral was made resolves or changes such that the need for the original consult/care is no longer necessary; the Medical Director advises the provider that the referral for testing should be canceled in lieu of a different more appropriate test; and/or the referral is not requested by the outside provider to be completed for a designated time in the future beyond sixty days (i.e., refer back in two months, six months, annually, etc.).

61.    I have never canceled a specialty referral of my own volition or without authorization from the provider.

62.    No one at Corizon, the Arizona Department of Corrections, or the Arizona Department of Corrections Health Services Contract Monitoring Bureau has ever directed me to cancel outside specialty referrals solely because the appointment could not be accomplished in the requisite timeframes, thus risking a finding of non-compliance on a Stipulation Performance Measure.

63.    Nor has anyone from Corizon, the Arizona Department of Corrections, or the Arizona Department of Corrections Health Services Contract Monitoring Bureau ever suggested to me or directed me on how to "beat the monitor", how to otherwise game the system, or how to falsify records in order to deliberately and falsely show compliance with any Stipulation Performance Measures.

/ / /

/ / /

11

1   I declare under penalty of perjury that the foregoing is true and correct.

2   Executed this 19 day of June 2018.

4                                    SARA NEESE

12

**EXHIBIT 1**

**EXHIBIT 1**

**To:**      Neese, Sara[Sara.Neese@corizonhealth.com]
**From:**   Watson, Jan
**Sent:**    Tue 8/8/2017 6:38:44 PM
**Subject:** RE: NMI

I do these when I have the time.  I can now log on from home.  You do realize I am a locums physician and only work there 3 days a week, so my response time will not be as timely as providers who work for Corizon full time.
Jan Watson, MD

---

**From:** Neese, Sara
**Sent:** Tuesday, August 08, 2017 11:29 AM
**To:** Watson, Jan
**Cc:** Ramirez, Martha
**Subject:** NMI

Hello Dr.Watson. If you could please address these NMI's /ATP I would greatly appreciate it. I have one that is getting close to the 60 day mark. Some you may not have written, but for now we are sending to the units they are housed in per Dr.Stewart.



Need more information
-Need more information
Need more information

___ has 2 alternative treatment plans to review and either accept or return to UM team

- Alternative treatment plan recommended
-alternative treatment plan recommended for cardiovascular surgery
-Alternative treatment plan recommended  for cardiology

If you have any questions or need assistance, please contact me and I will be happy to help.

Thank You!

Sara Neese

CONFIDENTIAL

**EXHIBIT 2**

**EXHIBIT 2**

**To:**      Neese, Sara[Sara.Neese@corizonhealth.com]
**From:**    Watson, Jan
**Sent:**    Mon 9/11/2017 8:41:57 PM
**Subject:** RE: RUQ FORM

Is there someone who can do this? Can the HCV coordinator do these? I cannot keep up with all the things people want me to do.

**From:** Neese, Sara
**Sent:** Friday, September 08, 2017 1:38 PM
**To:** Watson, Jan
**Subject:** RUQ FORM

Hi Dr.Watson, This inmate (                    ) needs an RUQ form completed for abdominal US. I have attached document.

Also I have an ATP for you  to either accept or deny:

**If you need any assistance completing , I would be happy to come over.**


Thank you!
Sara Neese

CONFIDENTIAL                    CORIZON000073687

**EXHIBIT 3**

**EXHIBIT 3**

**To:** Neese, Sara[Sara.Neese@corizonhealth.com]
**From:** Watson, Jan
**Sent:** Sun 8/13/2017 1:24:29 PM
**Subject:** RE: RUQ FORM

Have the hep C coordinator or the infectious disease nurse complete this. I am on vacation. Thanks
Jan Watson, MD

**From:** Neese, Sara
**Sent:** Saturday, August 12, 2017 9:56 AM
**To:** Watson, Jan
**Subject:** RUQ FORM

Hello Dr.Watson. Would you please fill this out for consult you entered for IM ▮▮▮▮▮▮
▮▮▮▮▮ ? Thank You


Sara Neese
Clinical Coordinator

CONFIDENTIAL

CORIZON000073609

**EXHIBIT 4**

**EXHIBIT 4**

**To:**      Neese, Sara[Sara.Neese@corizonhealth.com]
**Cc:**      Watson, Jan[Jan.Watson@corizonhealth.com]; Smith,
Matilde[Matilde.Smith@corizonhealth.com]
**From:**    Sego, Daniel
**Sent:**    Wed 10/11/2017 1:01:36 PM
**Subject:** Re: ATP/NMI/Consults to review.

Hi Dr. Watson! We are needing all ATPs and NMIs Completed by the end of today. Please make this a priority and get them done. Thank you very much!

Sent from my iPhone

On Oct 11, 2017, at 10:22 AM, Neese, Sara <Sara.Neese@corizonhealth.com> wrote:

> Dr.Watson,
>
> Could you please complete these today. It is urgent
>
> Thank You.
>
> **Sara Neese**
> **Clinical Coordinator**
> **Eyman Complex**
> **Phone:520-368-0201 x 6823**
> **Fax:629-333-7209**
>
> <scan_0001.pdf>

CONFIDENTIAL                                    CORIZON000058725

**EXHIBIT 5**

**EXHIBIT 5**

**To:** Neese, Sara[Sara.Neese@corizonhealth.com]
**From:** Watson, Jan
**Sent:** Mon 9/18/2017 2:24:38 PM
**Subject:** RE: ATP/NMI

**From:** Neese, Sara
**Sent:** Wednesday, September 13, 2017 2:37 PM
**To:** Watson, Jan
**Cc:** Ramirez, Martha; Smith, Matilde; Johnson, Maureen
**Subject:** ATP/NMI

Good afternoon Dr.Watson. I have compiled a list of all the things I have for you to complete,

ATP: ▉▉▉▉▉▉ ▉
ATP: ▉▉▉▉▉▉▉-please accept or respond to atp.
ATP: ▉▉▉▉▉▉-please accept or respond to ATP
ATP: please accept Final ATP on ▉▉▉▉▉▉▉▉ and ▉▉▉▉
ATP: ▉▉▉▉▉▉ please accept or respond to atp.
NMI: ▉▉▉▉▉-CT neck/chest-please respond to NMI-do not cancel
NMI: ▉▉▉▉▉-PER UM TEAM:please provide who came up with parkinsons diagnosis, who started IM on meds, what previous diagnostics have been done and full neuro exam as well as initial lab test and detailed neuro history.

RUQ form for ▉▉▉▉▉▉▉▉-I know you are super busy but could you please complete this. As a provider you know how busy you are, that is also how busy the other providers are. I would like to try to get your ultrasound approved and this form is needed to do so.

I respect your work and the time and effort you put into your job, I ask that you please respect the time and effort that Martha and I Put into ours to get your requests completed on time. If you would like me to come over and assist in any way I am more than happy to.

Thank You

Sara Neese

CONFIDENTIAL

CORIZON000081299

**EXHIBIT 6**

**EXHIBIT 6**

**To:** Neese, Sara[Sara.Neese@corizonhealth.com]
**From:** Watson, Jan
**Sent:** Mon 8/21/2017 8:12:34 PM
**Subject:** RE:

Thank you

**From:** Neese, Sara
**Sent:** Monday, August 21, 2017 3:44 PM
**To:** Watson, Jan
**Subject:** RE:

He will be getting a Doppler of the fistula this week. I would cancel the old request for nephrology and resubmit as he will have had the Doppler to back up the request.

**From:** Watson, Jan
**Sent:** Monday, August 21, 2017 2:43 PM
**To:** Neese, Sara
**Subject:** RE:

The information I am seeking is what is the status of the consult, what did utilization do ? Do I need to resubmit the consult?

Jan Watson, MD

**From:** Neese, Sara
**Sent:** Monday, August 21, 2017 3:33 PM
**To:** Watson, Jan
**Subject:** RE:

When it says sent to UM team for review it just means that its already sent to the Utilization management team to approve or deny.

**From:** Watson, Jan
**Sent:** Monday, August 21, 2017 2:25 PM
**To:** Neese, Sara
**Subject:** RE:

Ok, how do I get the information, all I have is some numbers?

Jan Watson, MD

**From:** Neese, Sara
**Sent:** Monday, August 21, 2017 2:59 PM
**To:** Watson, Jan
**Subject:** RE:

That is another system to approve consults/ you have to generate a ORC # and put it into the CARES system to complete any consult request.

**From:** Watson, Jan
**Sent:** Monday, August 21, 2017 1:43 PM

CONFIDENTIAL

CORIZON000081201

**To:** Neese, Sara
**Subject:** ████████████

What does this mean in the comments section?

Jan Watson, MD

CONFIDENTIAL                                    CORIZON000081202

**EXHIBIT 7**

**EXHIBIT 7**

**To:**       Neese, Sara[Sara.Neese@corizonhealth.com]
**From:**    Watson, Jan
**Sent:**     Mon 8/28/2017 4:53:21 PM
**Subject:** RE: ATP

What exactly do you need? I've seen the results of the urology consult. The others were denied, that should be the end of that.
Jan Watson, MD

**From:** Neese, Sara
**Sent:** Tuesday, August 22, 2017 9:41 AM
**To:** Watson, Jan
**Subject:** ATP

Also could you please look at two ATPs I forwarded you on ████████████ They are final ATPS so they have already been sent back to Utilization management once. They denied both oncology visits as he is set up with urology first. They will just need to be re submitted after his urology consult is completed and results are in. I really appreciate it

Thank You

Sara neese

CONFIDENTIAL

CORIZON000081259

**EXHIBIT 8**

**EXHIBIT 8**

**To:** Watson, Jan[Jan.Watson@corizonhealth.com]
**From:** Neese, Sara
**Sent:** Tue 8/22/2017 11:49:11 AM
**Subject:** appt

Hello, I have canceled the consult for ▮▮▮▮▮▮▮▮ I sent to you to sign off. If you would like to resubmit now he had his Doppler study done this morning. Results are pending.

Thank You.

Sara Neese

CORIZON000073623

**EXHIBIT 9**

**EXHIBIT 9**

**To:**      Watson, Jan[Jan.Watson@corizonhealth.com]
**Cc:**      Sego, Daniel[Daniel.Sego@corizonhealth.com]; Smith,
Matilde[Matilde.Smith@corizonhealth.com]
**From:**    Neese, Sara
**Sent:**    Wed 10/11/2017 12:22:51 PM
**Subject:** ATP/NMI/Consults to review.
scan_0001.pdf

Dr.Watson,

Could you please complete these today. It is urgent

Thank You.

**Sara Neese**
**Clinical Coordinator**
**Eyman Complex**
**Phone:520-868-0201 x 6823**
**Fax:629-333-7209**

                    CORIZON000058721

OCSS011B

# **Consultation Request**

Wednesday October 11, 2017 10:16:24 AM

**Consultation Request** (1 - 3 of 3)

| Request Date | Inmate Name | ADC # | Request Type | Service Type | Procedure Requested | Priority | Request Status |
|---|---|---|---|---|---|---|---|
| 09/30/2017 | | | Off-site Clinic | Ophthalmology | | Urgent | Need More Information |
| 09/21/2017 | | | Off-site Clinic | Orthopedics | | Routine | Need More Information |
| 10/09/2017 | | | Off-site Clinic | Ophthalmology | | Urgent | Need More Information |

CONFIDENTIAL

CORIZON000058722

OCSS011B

# Consultation Request

Wednesday October 11, 2017 10:15:58 AM

**Consultation Request** (1 - 2 of 2)

| Request Date | Inmate Name | ADC # | Request Type | Service Type | Procedure Requested | Priority | Request Status |
|---|---|---|---|---|---|---|---|
| 09/21/2017 | | | Off-site Clinic | Orthotics | | Routine | Alternative Treatment Recommended |
| 09/23/2017 | | | Off-site Clinic | ENT | | Routine | Alternative Treatment Recommended |

CONFIDENTIAL                    CORIZON000058723

OCSS011B

# Consultation Request

Wednesday October 11, 2017 10:17:30 AM

**Consultation Request** (1 - 4 of 4)

| Request Date | Inmate Name | ADC # | Request Type | Service Type | Procedure Requested | Priority | Request Status |
|---|---|---|---|---|---|---|---|
| 08/23/2017 | | | Off-site Clinic | Orthopedics | | Routine | Consult Completed - Results Received |
| 09/17/2017 | | | Off-site Clinic | Ophthalmology | | Routine | Consult Completed - Results Received |
| 09/07/2017 | | | On-site Clinic | Optometry | | Routine | Consult Completed - Results Received |
| 09/01/2017 | | | Off-site Clinic | Optometry | | Routine | Consult Completed - Results Received |

https://azehr.eomis-cloud.com/eomis/servlet/com.marquis.eomis.EomisControllerServlet

10/11/201'

CONFIDENTIAL                    CORIZON000058724

**EXHIBIT 10**

**EXHIBIT 10**

**To:** Watson, Jan[Jan.Watson@corizonhealth.com]
**From:** Neese, Sara
**Sent:** Sun 10/1/2017 7:31:04 PM
**Subject:** RE: CONSULT

I have no idea if he is returning. Could you please put in a response to this. It cannot wait any longer. I just need either a rebuttal or an acceptance.

**From:** Watson, Jan
**Sent:** Saturday, September 30, 2017 6:29 PM
**To:** Neese, Sara
**Subject:** RE: CONSULT

**From:** Neese, Sara
**Sent:** Monday, September 25, 2017 12:40 PM
**To:** Watson, Jan
**Cc:** Ruehrup, Jens
**Subject:** CONSULT

Hi Dr.Watson, Could you please enter a consult for ▮▮▮▮▮▮▮▮▮▮▮ -Notes say refer to cv surgeon to have wire clipped.  I already did 9-23-17

ATP: ▮▮▮▮▮▮▮▮▮ -ultrasound  vIsn't Dr. Rowley returning?  I would like to ask him what he wants to do.

Thank you

**Sara Neese**
**Clinical Coordinator**
**Eyman Complex**
**Phone:520-868-0201 x 6823**
**Fax:629-333-7209**

CORIZON000073840

**EXHIBIT 11**

**EXHIBIT 11**

**To:** Watson, Jan[Jan.Watson@corizonhealth.com]
**Cc:** Sego, Daniel[Daniel.Sego@corizonhealth.com]; Smith, Matilde[Matilde.Smith@corizonhealth.com]
**From:** Neese, Sara
**Sent:** Wed 10/11/2017 4:02:42 PM
**Subject:** urgent
scan_0001.pdf

UPDATED LIST.

Please complete these today. If you need assistance please call or I can come over.

Thank you

Sara Neese
Clinical Coordinator
Eyman Complex
Phone:520-868-0201 x 6823
Fax:629-333-7209

CONFIDENTIAL                    CORIZON000058730

OCSS011B

# Consultation Request

Wednesday October 11, 2017 01:42:04 PM

**Consultation Request** (1 - 4 of 4)

| Request Date | Inmate Name | ADC # | Request Type | Service Type | Procedure Requested | Priority | Request Status |
|---|---|---|---|---|---|---|---|
| 09/21/2017 | | | Off-site Clinic | Orthotics | | Routine | Alternative Treatment Recommended |
| 09/30/2017 | | | Off-site Clinic | Nephrology | | Urgent | Alternative Treatment Recommended |
| 10/02/2017 | | | Off-site Clinic | Neurology | | Urgent | Alternative Treatment Recommended |
| 09/23/2017 | | | Off-site Clinic | ENT | | Routine | Alternative Treatment Recommended |

CONFIDENTIAL

CORIZON000058731

OCSS011B

# Consultation Request

Wednesday October 11, 2017 01:42:18 PM

**Consultation Request** (1 - 3 of 3)

| Request Date | Inmate Name | ADC # | Request Type | Service Type | Procedure Requested | Priority | Request Status |
|---|---|---|---|---|---|---|---|
| 09/30/2017 | | | Off-site Clinic | Ophthalmology | | Urgent | Need More Information |
| 09/21/2017 | | | Off-site Clinic | Orthopedics | | Routine | Need More Information |
| 10/09/2017 | | | Off-site Clinic | Ophthalmology | | Urgent | Need More Information |

CONFIDENTIAL

CORIZON000058732

**EXHIBIT 12**

**EXHIBIT 12**

**To:**      Neese, Sara[Sara.Neese@corizonhealth.com]
**From:**    Watson, Jan
**Sent:**    Mon 9/18/2017 2:20:48 PM
**Subject:** RE: CONSULT

Check the comments on some of those patients, I made several that need to be addressed.

---

**From:** Neese, Sara
**Sent:** Monday, September 18, 2017 10:17 AM
**To:** Watson, Jan
**Subject:** CONSULT

Hello Dr.Watson,

Could you please cancel ████████████████ infectious disease consults/there are two. We do not have a provider to send him to. One was approved and has been sitting there for 42 days. After 30 days we get nailed for 1000 bucks a day until they are seen. Also please look at my previous email and answer the other ATP/NMI's if you would. We really need them answered to get our job done. Thanks I appreciate it.


Sara Neese

CONFIDENTIAL

CORIZON000073744

**To:** Neese, Sara[Sara.Neese@corizonhealth.com]
**From:** Watson, Jan
**Sent:** Mon 9/18/2017 2:23:43 PM
**Subject:** RE: CONSULT

I added comments on him.

**From:** Neese, Sara
**Sent:** Monday, September 18, 2017 10:17 AM
**To:** Watson, Jan
**Subject:** CONSULT

Hello Dr.Watson,

Could you please cancel ▮▮▮▮▮▮▮▮▮▮ infectious disease consults/there are two. We do not have a provider to send him to. One was approved and has been sitting there for 42 days. After 30 days we get nailed for 1000 bucks a day until they are seen. Also please look at my previous email and answer the other ATP/NMI's if you would. We really need them answered to get our job done. Thanks I appreciate it.

Sara Neese

CONFIDENTIAL

CORIZON000073745

**EXHIBIT 13**

**EXHIBIT 13**



CONSULT - Google Chrome

🔒 Secure | https://webmail.corizonhealth.com/owa/?ae=Item&a=Open&t=IPM.Note&id=RgAAAACLXc02qq...

Reply   Reply All   Forward

## CONSULT

### Neese, Sara

To:      Watson, Jan

Monday, September 18, 2017 10:17 AM

- You replied on 9/18/2017 1:23 PM.

Hello Dr.Watson,

          Could you please cancel                    infectious disease consults/there are two. We do not have a provider to send him to. One was approved and has been sitting there for 42 days. After 30 days we get nailed for 1000 bucks a day until they are seen.  Also please look at my previous email and answer the other ATP/NMI's if you would. We really need them answered to get our job done. Thanks I appreciate it.


Sara Neese

Confidential Information – Subject to Protective Order

**EXHIBIT 14**

**EXHIBIT 14**

**To:**     Watson, Jan[Jan.Watson@corizonhealth.com]
**From:**  Neese, Sara
**Sent:**   Tue 9/19/2017 10:35:43 AM
**Subject:**  RE: HIV patients

Per Dr.Stewart We have a corizon ID provider that we can consult/I will ask Dr.Stewart to let you
know where to contact them.

---

**From:** Watson, Jan
**Sent:** Tuesday, September 19, 2017 7:43 AM
**To:** Neese, Sara
**Subject:** HIV patients

If you do not have an infectious disease specialist to see patients with HIV, to whom should they be
referred?

Jan Watson, MD

CONFIDENTIAL    CORIZON000073746

**EXHIBIT 15**

**EXHIBIT 15**



RE: HIV patients - Google Chrome

🔒 Secure | https://webmail.corizonhealth.com/owa/?ae=Item&a=Open&t=IPM.Note&id=RgAAAACLXc02qq...

Reply   Reply All   Forward

# RE: HIV patients

## Neese, Sara

To:      Watson, Jan

Tuesday, September 19, 2017 9:35 AM

Per Dr.Stewart We have a corizon ID provider that we can consult/I will ask Dr.Stewart to let you know where to contact them.

**From:** Watson, Jan
**Sent:** Tuesday, September 19, 2017 7:43 AM
**To:** Neese, Sara
**Subject:** HIV patients

If you do not have an infectious disease specialist to see patients with HIV, to whom should they be referred?

Jan Watson, MD

JW001072
**EXHIBIT 010.1**

**EXHIBIT 16**

**EXHIBIT 16**

**To:**       Watson, Jan[Jan.Watson@corizonhealth.com]
**Cc:**       Ramirez, Martha[Martha.Ramirez@corizonhealth.com]
**From:**     Neese, Sara
**Sent:**     Mon 9/11/2017 7:16:16 PM
**Subject:**  Consult for

Hello Dr.Watson. You had put in a consult request for                               It was for a
cardiology visit to be schedule in November. Could I ask you to cancel the request and put it in at a
later date(closer to November) as we only have a 60 day window to get it processed and scheduled. If
its past that timeframe we get fined 1000 dollars per day for just that one consult. Thank You

Sara Neese

CONFIDENTIAL

CORIZON000073685