**EXHIBIT 8**

**EXHIBIT 8**

Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
2005 N. Central Ave
Phoenix, Arizona 85004-1592
Telephone: (602) 542-1645
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
Ashlee B. Hesman, Bar No. 028874
Jacob B. Lee, Bar No. 030371
Kevin R. Hanger, Bar No. 027346
Timothy M. Ray, Bar No. 029191
Richard M. Valenti, Bar No. 031533
Jamie D. Guzman, Bar No. 022095
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
khanger@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-DKD<br><br><br>**DECLARATION OF EDDIE TAYLOR, Ph.D.** |

I, Eddie Taylor, Ph.D. hereby declare as follows:

1. I am over the age of 18 and am competent to make this Declaration.

2. I have been employed by Corizon Health, Inc. ("Corizon") as Clinical Director at the Arizona State Prison Complex - Phoenix ("Phoenix Facility") since September 2017.

3. From approximately June 2014 to September 2017, I was employed by Corizon as Lead Psychologist for its Indiana state prison complexes.

4. I obtained my Ph.D. in clinical psychology from Pacifica Graduate Institute in Carpinteria, California.

5. As Clinical Director, I supervised psychology associate Angela Fischer.

6. Ms. Fischer had never provided healthcare in a prison before. Her approach was based upon her experience in outpatient community facilities and was not appropriate for the fast-paced environment of a prison healthcare system.

7. In approximately February 2018, Ms. Fischer began working at "Quiet" Unit, which covers inmates on suicide watch, and Delta ward at the Phoenix Facility. Ms. Fischer continued to work on George ward as well.

8. Ms. Fischer volunteered to cover Quiet.

9. Prior to February 2018, Ms. Fischer worked only on the Baker and George wards.

10. After Ms. Fischer began working at Quiet and Delta wards, in addition to continuing to work on George ward, multiple issues arose.

11. Ms. Fischer began complaining to me about the prison healthcare system. In particular, she was concerned about the CGARs and performance measures. She complained that the prison healthcare system was not directed to providing care, but was directed towards "checking boxes." I told her that, so long as we were providing quality healthcare, we would meet the performance measures and that she should focus on providing care.

12. In addition, she complained about requests that she provide care for the inmates in George ward and also providing care at Quiet. George ward houses seven female

1

inmates. There is a range of seven to fourteen inmates on George ward at any time. However, George ward houses fewer inmates than other wards, which house between fifteen and twenty-five inmates at any time; therefore, Ms. Fischer had more availability and flexibility to also provide care for inmates in Quiet ward. Nevertheless, she complained that the arrangement was not fair to her.

13. Ms. Fischer also began having conflicts with other staff. She was harsh and rude in team meetings. I felt that her treatment of other staff members was inappropriate and unnecessary.

14. I became aware that Ms. Fischer's interactions were having a poor effect on other staff members, creating a negative atmosphere at the Phoenix Facility.

15. In addition, Ms. Fischer demonstrated a lack of care for other staff members' time and effort. For example, she would show up late to team meetings and would not apologize for her tardiness. Further, she would complain about the amount of work assigned to her when other staff members were assigned the same amount of work or more, and would make rude and derogatory comments when other staff members raised this fact to her.

16. Ms. Fischer disagreed with how I decided to split up the work at the Phoenix Facility. Ms. Fischer thought staff should be assigned to "zones" instead of specific roles. I assigned each staff member a specific coverage so that no inmates would be missed, even if they were transferred between wards or units. I told Ms. Fischer this.

17. In addition, Ms. Fischer began having conflicts with Arizona Department of Corrections ("ADC") officers and staff. Ms. Fischer believed that ADC officers were not performing their job duties appropriately. I recommended that Ms. Fischer address the specific ADC officers individually and have a direct discussion about her criticisms and the requirements for the Phoenix Facility, particularly for the Quiet ward. Ms. Fischer refused to speak with any ADC staff about her concerns.

18. Ms. Fischer's work performance also began to decline.

19. Ms. Fischer began spending significant amounts of time researching prison healthcare policy. Ms. Fischer would draft and send lengthy emails detailing this

research and her recommendations for changes. Ms. Fischer gave priority to this research over time required for her assigned work.

20. As a result of this time spent researching, Ms. Fischer did not have time to perform work assigned to her. She frequently told me that she was not sure if she would have time to perform work assigned. As a result, I had to constantly follow-up with her to ensure that work assigned was performed and, if not, had to assign someone else to perform the tasks initially assigned to Ms. Fischer. This required that I have an additional staff member present or available to cover anytime Ms. Fischer was scheduled to work.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Eddie Taylor, Ph.D.