WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Antonio Parsons, et al., | No. CV-12-0601-PHX-DKD |
| Plaintiffs, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

A Health Needs Request (HNR) form is the mechanism by which Arizona Department of Corrections (ADOC) inmates request medical treatment, dental care, mental health treatment, prescription refills, or report symptoms to the health care providers. ADOC's longstanding practice required housing units to have a repository for inmates to submit HNRs—HNR Boxes—from which health care staff would collect, review, log, triage, and act upon accordingly. At least a dozen of the Stipulation's performance measures require Defendants to act within certain time frames and it is the submission of an HNR which starts the clock for assessing compliance with them.[1] For example, PM 37 requires an RN to see a sick call inmate within 24 hours after receiving an HNR (or earlier if a more urgent need is present).

In a significant shift, the parties informed the Court in May 2017 that HNR Boxes would be removed from multiple units because those units had adopted the "open clinic

---

[1] Specifically, Performance Measures 5, 7, 36, 37, 39, 40, 41, 42, 47, 98, 102, and 103. (Doc. 1185-1)

process." As explained by the Defendants, the open clinic process is similar to the urgent care model in the community and requires inmates to go to the health unit at designated hours to see a nurse. As implemented by the Defendants, the open clinic procedures only allow the inmate to submit the HNR when visiting with the nurse in person (Doc. 2365 at 5).

Because the way HNRs are submitted and evaluated is critical to assuring meaningful compliance with multiple areas of the Stipulation, the Court held a four-day hearing to assess whether the new HNR submission process frustrated the ability to assess compliance with the Stipulation's Performance Measures. The Court heard testimony from multiple inmate witnesses, ADOC staff, and Corizon staff (Docs. 2124, 2186, 2233, 2318).

Witness testimony at the hearing confirmed that HNRs are now only tracked when an inmate sees a health care provider (Doc. 2148, June 14, 2017 Hr'g Tr. at 94:15-95:21; Doc. 2328, September 13, 2017 Hr'g Tr. at 143:13-25). The testimony indicated that ADOC does not have any mechanism to track inmates who attempted to attend an open clinic and does not log HNRs when inmates arrived at the open clinic (Doc. 2148, June 14, 2017 Hr'g Tr. at 94:15-95:21).

The testimony presented in Court indicated that not all inmates are able to attend an open clinic, wait to be seen, and submit an HNR without difficulty. Specifically, witnesses testified that some inmates were unable to attend the open clinic during the designated hours (Doc. 2208, July 14, 2017 Hr'g Tr. at 85:1-5, 132:3-4, 134:20-135:12, 137:19-138:3; Doc. 2243, August 9, 2017 Hr'g Tr. at 12:2-6, 13:13-14, 15-2:4). Other inmates were too ill or disabled to get to and wait at the open clinic (Doc. 2208, July 14, 2017 Hr'g Tr. at 67:2-12, 67:25-68, 69:9-71:6). Finally, some inmates were required to wait outside in temperatures exceeding 100 degrees while waiting to see nursing staff (Doc. 2208, July 14, 2017 Hr'g Tr. at 18:18-21, 20:25-21:4, 34:4-5, 34:11-35:5, 52:6-20, 83:13-15, 94:20-95:1).[2]

---

[2] This ruling does not pass judgment on the open clinic process itself which, as

This shift flatly contradicts Defendants' avowal to the Court on January 18, 2017, wherein they maintained that multiple HNR submission methods "ensure that inmates are able to submit HNRs in multiple ways to request and receive routine medical care" (Doc. 1873 at 3). And indeed, certain health care monitor staff testified that only accepting HNRs upon seeing a nurse at the open clinic erects a barrier for inmates to access care (Doc. 2244, August 8, 2017 Hr'g Ex. 27 at 2) ("I said this was in direct contradiction to what I was told today, which is that [HNR Boxes] are never going away because it is an access to care issue."). Finally, Mr. Pratt acknowledged that he did not believe it was necessary to completely remove the HNR boxes (Doc. 2244, August 8, 2017 Hr'g Tr. at 54:19-24).

Based on the evidence presented during the four-day hearing and the parties' briefing, it is clear that the open clinic process means that the only HNRs logged for measuring compliance with the Stipulation are the HNRs submitted by inmates who were able to see a nurse in person. In other words, there is no trace of an inmate's HNR until s/he is seen by a nurse, at which point the HNR is submitted. The Court concludes that the modified open clinic HNR process may impermissibly constrict the numbers of HNRs submitted for measurement and so it cannot replace the HNR Boxes for purposes of measuring compliance with the Stipulation. Because the parties identified the HNR boxes as the triggering event with some of the performance measures, this practice cannot be abandoned without proof that it would have no effect on the measurement of Defendants' compliance with the Stipulation. Not only have Defendants failed to meet this burden of proof but the Court is satisfied that it is likely that some class members would not be able to brave the gauntlet of making it to a nurse at the open clinic.

Defendants raise several arguments in defense of the open clinic process. None of them are well taken. First, Defendants maintain that the Court is powerless to address their decision because the Stipulation does not mandate a particular method for inmates

---

the witnesses noted, has positive attributes. This ruling also does not address how ADOC collects and logs HNRs during the open clinic process.

to submit HNRs (Doc. 2416 at 3-4). But, as Plaintiffs point out, when the parties negotiated the Stipulation, there was no indication that the HNR Box system—where inmates could submit HNRs in a collection box at any time of the day or to have another inmate submit it on their behalf if they were unable—would change (Doc. 2458 at 3).[3]

Moreover, Defendants' contention that the Court cannot evaluate their fundamental change in health care delivery to determine whether it complies with the letter and spirit of the Stipulation is meritless. As with innumerable disputes regarding monitoring compliance with the Performance Measures, the Court is well within its discretion to address Defendants' removal of the HNR boxes in order to ensure that compliance is assessed meaningfully.

Similarly unavailing is Defendants' contention that this issue is not yet ripe for resolution—it has been over one year since this decision was reported to the Court and the parties have litigated the issue to conclusion.

Based upon the testimony and evidence before it, the Court finds that the removal of the HNR boxes is inconsistent with the Stipulation's requirements.

**IT IS THEREFORE ORDERED** that within 30 days of this Order, Defendants shall:

(1) Defendants shall reinstall HNR boxes in all housing units where they were removed. The Court will not require the HNR boxes to be replaced in the same locations but will require the same number in each unit as before and expects that any change in location will not create a barrier for any particular group of inmates (i.e., if an HNR box was previously accessible to wheelchair-bound inmates then a comparably accessible box must be placed in the same unit);

(2) Defendants shall resume the previous process for collecting and logging the submitted HNRs. Defendants may also continue the open clinic procedures for accepting HNRs;

---

[3] The parties negotiated the Stipulation understanding that other procedural changes, such as the adoption of electronic medical records, were imminent.

(3)   Defendants shall notify the affected inmates in writing announcing the reversion to the prior HNR submission process; and

(4)   Defendants shall provide competent and admissible evidence to the Court that this return to the *status quo ante* has occurred.

Dated this 22nd day of June, 2018.

_____

David K. Duncan
United States Magistrate Judge