WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Antonio Parsons, et al., | No. CV-12-0601-PHX-DKD |
| Plaintiffs, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' motion for attorneys' fees and their motion for reconsideration. Because this is the first time Plaintiffs have sought fees stemming from enforcing the Stipulation, the Court will provide more detail to explain the reasoning for its decision.

**The Stipulation**

Background. In October 2014, the Parties entered into a Stipulation resolving this matter and empowering the Court to enforce it. (Doc. 1185) In April 2016, Plaintiffs filed their first "Motion to Enforce." (Docs. 1534-1548) Defendants moved to stay briefing on the Motion to Enforce and requested a status conference. (Doc. 1549) The Court conducted such a status conference on April 26, 2016. (Doc. 1554) Since then, the Court has moved to monthly status conferences that have grown from 30 minutes to an entire day. During the last two years, Plaintiffs have filed several other Motions to Enforce and have used the monthly status conferences to prosecute enforcement claims

for other aspects of the Stipulation, such as the Stipulation's requirement to offer Class Members a mammogram or colorectal screening. Prosecution of these claims has resulted in findings of substantial non-compliance, evidentiary hearings, Court tours of prison units, and some have resulted in Court imposed remedial measures. As it became clear that Defendants could not readily comply with the Stipulation, the Court has heard testimony on different aspects of compliance that are inextricably intertwined with enforcement such as how the CGAR data is collected and the Court has resolved a long string of disputes about how to interpret various terms in the Stipulation such as "90 days" and "being seen." (Doc. 1907)

Stipulation. Paragraphs 43 and 44 of the Stipulation discuss different avenues for Plaintiffs' counsel to receive fees. Paragraph 43 states in full:

> In the event that Plaintiffs move to enforce any aspect of this Stipulation and the Plaintiffs are the prevailing party with respect to the dispute, the Defendants agree that they will pay reasonable attorneys' fees and costs, including expert costs, to be determined by the Court. The parties agree that the hourly rate of attorneys' fees is governed by 42 U.S.C. § 1997e(d).

(Doc. 1185 at 16) Paragraph 44 details an annual payment to Plaintiffs' counsel for "work reasonably performed or costs incurred to monitor or enforce the relief set forth in this Stipulation" and "shall not apply . . . to any work performed before the District Court to enforce or defend this Stipulation." (*Id.*)

This is Plaintiffs' first fee application and so the Court has not yet delved into this corner of the Stipulation and the parties disagree about what work is covered by Paragraph 43's statement awarding reasonable attorneys' fees and costs "[i]n the event that Plaintiffs move to enforce any aspect of the Stipulation and Plaintiffs are the prevailing party with respect to the dispute." Defendants' central argument against Plaintiffs' fee application is that Plaintiffs are only entitled to fees if they prevailed "with respect to a specific dispute to enforce the Stipulation." (Doc. 2402 at 25) The Court concludes that this is an inappropriately narrow interpretation of the Stipulation. All of these various activities described above are driven by Plaintiffs' attempts to enforce the Stipulation. All of these matters are before the Court because Defendants have not

satisfied their obligations under the Stipulation thereby requiring Plaintiffs to move to enforce it. Hence, all are covered by Paragraph 43.

## Hourly Rate

Paragraph 43 states that Plaintiffs' hourly rate "is governed by 42 U.S.C. § 1997e(d)." The parties disagree about what dollar amount this translates into. Plaintiffs argue that they are entitled to the Judicial Conference rate, a dollar amount proposed by the Judiciary's budget. Defendants argue that this statutory cite is tied to the hourly rate set by the Administrative Office of the Court to compensate CJA-appointed lawyers. (Doc. 2402, 2433)

Under Ninth Circuit precedent, even when the "approved rate had not been implemented," hourly rates under Section 1997e(d) are not related "to the amount actually paid to CJA counsel." *Webb v. Ada County,* 285 F.3d 829, 839 (9th Cir. 2002).[1] Thus, the Circuit concluded that "Section 1997e(d)(3) makes no distinction between the amount authorized by the Judicial Conference and the amount actually appropriated by Congress to compensate court-appointed counsel in criminal proceedings." *Id*.

As relevant here, Section 1997e(d)(3) states that "No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel." The Judicial Conference sets this rate and it is currently $146/hour. (Doc. 2044-1 at 45). Accordingly, the Court concludes that the Stipulation provides Plaintiffs an hourly rate of $219/hour for fiscal year 2017.

Fiscal year 2017 covered the time period from October 1, 2016 to September 30, 2017. Plaintiffs argue that they are entitled to the FY17 rate for all of their work because Defendants did not engage with their attempts to negotiate a fee payment. As support for this argument, Plaintiffs' counsel avowed that he attempted to negotiate with Defendants for fees incurred from October 2015 to December 2016 to no avail. (Doc. 2278 at ¶10)

---

[1] Put another way, the Ninth Circuit explicitly disagreed with Defendants' position over 15 years ago.

However, there is no explanation for why Plaintiffs waited until they had incurred 15 months of fees or what happened between January 2017 (when the fees through December 2016 were, presumably, known) and September 2017 (when the fee application was filed).

It appears that the delay in filing the fee application was the Plaintiffs own doing and so they are not entitled to retrospective application of the higher rate. At the Court's direction, Plaintiffs have submitted their hours based on fiscal years and the Judicial Conference Rate for Fiscal year 2016. (Doc. 2721)

### Application of Enhancement

The Stipulation contains no mention of an enhancement or multiplier and the Court understands that silence to mean that it is free to evaluate the propriety of such an enhancement. *See, e.g.*, *Kelly v. Wengler*, 822 F.3d 1085, 1100 (9th Cir. 2016) (noting absence of limitation means multiplier is acceptable).[2]

The parties do not dispute that analysis of an enhancement is governed by *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), as modified by *City of Burlington v. Dague*, 505 U.S. 557 (1992). *See Jordan v. Gardner*, 986 F.2d 1521, 1531, n.10 (9th Cir. 1993). When the Court calculates a lodestar amount and then evaluates an enhancement, these factors are evaluated in either the lodestar analysis or the enhancement analysis. Because the Stipulation set the hourly rate, there is no true lodestar analysis here. Accordingly, the Court will evaluate the applicability of all the *Kerr* factors to determine whether an enhancement is appropriate.

Unsurprisingly, Plaintiffs argue they meet all of them and Defendants argue Plaintiffs meet none of them. As detailed below, the Court concludes Plaintiffs satisfy the *Kerr* factors.

---

[2] Defendants argue that the recent opinion in *Murphy v. Smith*, 138 S.Ct. 784 (2018), governs this case and overturned *Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016). (Doc. 2676) Plaintiffs disagree. (Doc. 2678) *Murphy* "is a case about how much prevailing prisoners must pay their lawyers" as a percentage of an award. 138 S.Ct. at 786. Before the Court is the enforcement of a contractual term, not allocation of fees after a monetary award for damages. Accordingly, the Court concludes that *Murphy* is inapposite to this attorneys fee application.

- 4 -

### The Time And Labor Required

Defendants argue that Plaintiffs should not be compensated for "litigating claims that have nothing to do with the enforcement of the Stipulation." (Doc. 2403 at 19) The Court did not disagree and ordered Plaintiffs to refile their fee request without the time spent litigating several enumerated and unrelated topics.

Defendants further argue that claims of retaliation and expert review of records should not be compensable. The Court concludes that this is an overly narrow understanding of what constitutes enforcement of the Stipulation. As the Court has repeatedly stated, claims of retaliation strike at the heart of the Court's ability to enforce the Stipulation. (Doc. 2223 at 5) Moreover, the CGAR data—which forms the foundation of enforcement—is generated and reviewed by people with medical training who review individual records. Thus, Plaintiffs' use of medical experts to review individual records is sufficiently related to enforcement of the Stipulation.[3]

### The Novelty And Difficulty Of The Questions Involved

Defendants argue that "the post litigation phase is quite simple." (Doc. 2402 at 20) As stated to the parties, the Court initiated the enforcement of the Stipulation with the expectation that enforcement would be simple. And it could have been simple if Defendants had been able to comply with the Stipulation's requirements, had timely responded to document requests, had promptly developed a final version of the Monitoring Guide, and had not raised spurious legal arguments.[4] However, the last two years have not been simple and so the Court concludes that this prong has been met.

### The Skill Requisite To Perform The Legal Service Properly

The Court notes that the attorneys on both sides of this case have extensive experience in prison litigation and assumes that Plaintiffs would have billed significantly

---

[3] The Court understands that some of the medical experts who appear on the fee application did not submit any reports to the Court because they were, in essence, associates and the expert was the partner. (Doc. 2545 at 2-3) This use of lower-cost medical experts is appropriate.

[4] *See, supra,* at fn 1.

more hours on this matter if more of the work had been done by co-counsel with less subject matter expertise.

Defendants argue that "little skill is required to monitor enforcement with the Stipulation." (Doc. 2402 at 20) In a different case, this could have been true. But here, Defendants have been unable to comply with multiple performance measures and so the post-Stipulation enforcement work has required a deep dive into the minutiae of prison health care operations, from refilling prescriptions to informing patients of test results. Any suggestion that skill is not required to solve the problem of compliance is belied by the fact that, notwithstanding their various proposed remediation plans, the problem remains. Based on their experience, Plaintiffs' counsel has brought ideas from other jurisdictions to this matter and this has assisted the Court (and Defendants) with solutions.

<u>The Preclusion Of Other Employment By Attorney Due To Acceptance Of The Case</u>

There are only so many hours in a day and working on one case necessarily precludes work on another. As with any piece of complex litigation, a division of labor is required but also certain leaders must emerge to corral the various complexities. From the time sheets and court appearances, it is clear that Corene Kendrick, Kirstin Eidenbach, and David Fathi are those leaders. Their time on this matter necessarily precluded work on other matters.

<u>The Customary Fee</u>

The customary fee analysis addresses market rates. The evidence before the Court is that the Stipulation's current rate of $219/hour is comparable to private practice rates for a first year lawyer; comparable to what Defendants' RFP authorized to outside counsel; and less than half the hourly rate for an experienced private sector attorney. (Doc. 2279, 2280)

<u>Time Limitations Imposed By The Client Or The Circumstances</u>

The Stipulation is structured around monthly reports and the parties and the Court long ago concluded that the most efficient way to manage enforcement was to conduct

monthly status conferences. In other words, the pace of this matter is on-going and does not allow counsel to pause this case and work on other matters.

### The Results Obtained

As earlier, Defendants argue that Plaintiffs' fee application should be limited to discreet "successes." (Doc. 2402 at 22) Again, this is too narrow an understanding of the enforcement phase of this Stipulation and does not reflect the reality of monthly status conferences where many, related enforcement issues are reviewed, developed, and discussed such as access to electronic medical records, useable temperature logs, or how to offer every female inmate a mammogram.

### The Experience, Reputation, And Ability Of The Attorneys

Like the requisite skill analysis, the Court notes that counsel (on both sides) have deep experience in prison litigation and have used that experience to accelerate the Court's focus on issues. The Court further notes that Plaintiffs are seeking fees only for a subset of the attorneys who are counsel of record.

### The "Undesirability" Of The Case

The nature of institutional reform litigation means that the most experienced counsel will have a national practice and the Court understands that is true for Plaintiffs' (and Defendants') counsel in this matter.

Defendants argue that "Arizona attorneys take on inmate cases regularly" and so it would be easy to find local counsel.[5] (Doc. 2402 at 22) Defendants do not explain how a lawyer who handles individual personal injury matters would be qualified, or interested in, a class action case and on-going enforcement of a comprehensive settlement. Thus, this argument is not well-taken.

Separately, Defendants also argue that an enhancement cannot be justified as an "incentive to other attorneys" and argue that "this factor flies in the face of Congress's

---

[5] Defendants, not for the first time, argue that Plaintiffs' counsel use these cases as "cash cows" and are "incentivized by prolongation of the settlement agreement." (Doc. 2402 at 22) These sorts of ad hominem attacks are beneath the dignity of counsel and the Court. Moreover, the Court notes that these arguments could be applied equally to Defendants.

- 7 -

intent in passing the PLRA" because the "purpose was to discourage prisoner lawsuits."[6] (Doc. 2402 at 24, 25)  Even if the PLRA governed this fee application, the Ninth Circuit is clear that "the PLRA was an effort to 'eliminate *frivolous* lawsuits,' it was not an effort to 'eliminate the ameliorative effect achieved by valid constitutionally-based challenges.'"  *Kelly v. Wengler*, 822 F.3d 1085, 1104 (9th Cir. 2016) (quoting *Cano v. Taylor*, 739 F.3d 1214, 1219 (9th Cir. 2014)) (emphasis added).  Counsel may disagree with the Ninth Circuit but neither counsel nor the Court is free to ignore or rewrite precedent.

### The Nature And Length Of The Professional Relationship With The Client

Both parties agree that Plaintiffs have represented the Class since the inception of this matter and so this factor weighs in favor of an enhancement.

### Awards In Similar Cases

Defendants again argue that inmate litigation provides a useful comparator but do not acknowledge the vast differences between a discrete personal injury case and ongoing enforcement of a class action settlement.  Defendants have not cited to any class action matters where an enhancement was sought and denied.  Moreover, the post-enhancement hourly rate is similar to other class action enforcement actions.  *See, e.g., Trueblood v. Washington State Dept. of Social & Health Svcs.*, 2015 WL 12030114 (W.D. Wash., 2015) (awarding $1,267,769.10 in fees for 3,232.77 hours of work).

### Conclusion

The Court finds that, taken together, these factors all weigh in favor of applying an enhancement to Plaintiffs' fee award.

. . .

. . .

. . .

. . .

---

[6] It appears that Defendants pulled this paragraph from another brief because it quotes an answering brief and pin cites to cases that were not otherwise referenced in this response.  In the future, the Court expects a more appropriate attention to detail.

## Motion for Reconsideration[7]

The Court previously denied Plaintiffs' request for payment of hours billed by law clerks and for photocopying expenses. Plaintiffs moved for reconsideration of that request and the Court ordered full briefing. (Docs. 2518, 2551, 2589, 2623)

Plaintiffs argue that Section 1988 case law provides for reimbursement of both law clerk time and photocopying. However, this is not a Section 1988 case and so those opinions have limited precedential value in this matter.

*Law Clerk Time*. Plaintiffs have provided no evidence that their law clerks received any actual compensation (as opposed to law school credit). The Court understands that paralegals and attorneys are paid, albeit in ways that do not correspond to fee applications. However, the Court will not authorize reimbursement for a cost without any evidence that a cost was, in fact, incurred.

*Photocopies*. Defendants agree that, if "the Court is inclined to award Plaintiffs their copying costs . . . the .25 cent a page rate is reasonable." (Doc. 2589 at n.5) The Court notes that, based on real-world experience, this rate seems high but further notes that the Clerk of the Court charges between 10 and 50 cents per page. http://www.azd.uscourts.gov/sites/default/files/documents/fee%20schedule.pdf.

Accordingly, the Court will award Plaintiffs their copying costs at .25 cents a page. (Doc. 2544-1 at 159)

. . .

. . .

. . .

. . .

. . .

. . .

. . .

---

[7] The Court notes that this covers only fee awards for enforcement matters under Paragraph 43 of the Stipulation. Ongoing monitoring expenses, including overhead, under Paragraph 44 are not implicated. (Doc. 2623 at n.1)

**Final Amount**

Based on the information submitted, the Court calculates attorneys' fees as follows:

| Year | Office | Hours Spent | Rate | Total |
|---|---|---|---|---|
| 2015 | PLO | 75.2 | $213.00 | $16,017.60 |
| | | | *2015 Total* | *$16,017.60* |
| 2016 | PLO | 703 | $216.00 | $151,848.00 |
| | Eidenbach | 237.7 | $216.00 | $51,343.20 |
| | ACLU-NPP | 437.5 | $216.00 | $93,150.40 |
| | | | *2016 Total* | *$296,341.60* |
| 2017 | PLO | 662.5 | $219.00 | $145,087.50 |
| | Eidenbach | 63.9 | $219.00 | $13,994.10 |
| | ACLU-NPP | 379 | $219.00 | $82,239.90 |
| | | | *2017 Total* | *$241,321.50* |
| | | | *2015-2017 Total* | *$553,680.70* |
| | | | ***Total with 2.0 Multiplier*** | ***$1,107,361.40*** |

(Doc. 2544-1 at 77; Doc. 2545 at 4; Doc. 2721)

The Court further calculates costs as follows. (Doc. 2544-1 at 159; Doc. 2545-1 at 118)

| | |
|---|---|
| PLO | $118,806.40 |
| ACLU-NPP | $33,824.18 |
| *Total* | **$152,630.58** |

Based on the foregoing,

**IT IS THEREFORE ORDERED** granting in part Plaintiffs' Motion for Fees. (Doc. 2276).

. . .

. . .

**IT IS FURTHER ORDERED** awarding Plaintiffs $1,107,361.40 in attorneys' fees and $152,630.58 in costs, for a total of $1,259,991.98 pursuant to the parties' Stipulation. The Clerk of Court must enter judgment against Defendants accordingly.

**IT IS FURTHER ORDERED** granting in part and denying in part Plaintiffs' Motion for Reconsideration (Doc. 2518).

Dated this 22nd day of June, 2018.

_____
David K. Duncan
United States Magistrate Judge