**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Antonio Parsons, et al., <br> Plaintiffs, <br> v. <br> Charles L. Ryan, et al., <br> Defendants. | No. CV-12-0601-PHX-DKD <br><br> **ORDER** |

After more than three years, it is clear to the Court that Defendants are unable or unwilling to meet several of the Stipulation's requirements. Defendants have submitted, and the Court has adopted, multiple remediation plans. (Docs. 1619, 2030) Defendants have revised and re-revised these remediation plans and yet, pockets of non-compliance persist. For example, PM 42 at Eyman has been non-compliant since April 2017 and Defendants have stopped proposing substantive revisions to their remediation plan. (Docs. 2801-1 at 83-85; 2807 at 68) Similarly, PM 39 at Lewis has been non-compliant for eight of the last 12 months and Defendants most recent plan is that they "will continue to utilize the same corrective action plan as set forth in the [previous] update." (Doc. 2874-1 at 79-80)

For other performance measure/locations, Defendants have not even attempted a substantive remedial measure and have simply informed the Court that a new hire will solve the problem. For example, PM 50 at Tucson has been non-compliant for 11 of the last 13 months. Defendants informed the Court on May 9, 2018, that "A new clinical

coordinator has been hired and is currently in the process of on-boarding. Effects of this action should be reflected in the May audit." (Doc. 2803-1 at 5) At the Status Hearing, Counsel could not address basic issues and had no information about how hiring one new person could constitute a remediation plan or would solve the previous year's non-compliance. (Doc. 2807 at 165-166) Accordingly, the Court ordered a remediation plan. (Doc. 2810) In response, Defendants responded with an explanation of the hiring history of the clinical coordinator position. (Doc. 2858-1 at 2) However, when Defendants had the position filled, PM 50/Tucson was non-compliant so it is unclear to the Court, and Defendants do not explain, why refilling the position will solve the underlying problem(s) and create compliance.

In another example, PM 19 at Lewis has been non-compliant for at least 13 consecutive months. Defendants submitted a corrective action plan on May 9, 2018, that stated "A new DON [Director of Nursing] started March 12 and, upon arrival, began addressing medication administration issues. . . . Due to the large number of staff that will need to be trained on the new plan, full plan development and implementation will not be accomplished until July 2018." (Doc. 2801-1 at 39) This means that for the previous year, Defendants did not attempt to create a solution.

The Court further notes that the show cause hearing did not result in full compliance with the subset of PM/locations targeted by the OSC. Moreover, the OSC only covered some of the failing PM/locations and, in the year since the OSC was first raised, other PM/locations have been consistently non-compliant. For example, PM 42 at Florence has been non-compliant for 12 of the last 13 months, PM 42 at Lewis has been non-compliant for 8 of the last 10 months, PM 44 at Florence has been non-compliant for the last three months, PM 52 at Tucson has been non-compliant for 8 of the last 10 months, and PM 67 has been non-compliant for 10 of the last 12 months. (Doc. 2801-1 at 86, 88, 93, 162, 183) It appears that Peter has, in fact, been robbed to pay Paul.

Defendants have professed that they welcome ideas from Plaintiffs. (Doc. 2071 at 137-138) To the extent that this knowledge-sharing has occurred, it has not produced

compliance. Based on Defendants' representations to the Court and the monthly CGAR reports, it appears that Defendants do not have additional ideas or resources that they can rely upon to obtain compliance with the Stipulation. As a result, the Court has determined that it is not efficacious to require Defendants to submit yet another revised remediation plan. (Doc. 1185 at ¶ 36)

"The ongoing, intractable nature of this litigation affords the district court considerable discretion in fashioning relief." *Armstrong v. Brown*, 768 F.3d 975, 986 (9th Cir. 2014). Accordingly, as part of the Court's remedial authority under the Stipulation (Doc. 1185 ¶ 36), the Court will require Defendants to hire outside experts who can perform the analysis necessary to understand why deficiencies persist and to opine as to the policies and procedures necessary to compel compliance with the Stipulation.[1] Put another way, the Court expects that the experts will review existing policies and procedures, create a remediation plan based on their expertise, and that Defendants will then adopt the expert's remediation plan. The Court expects that, because the problematic performance measures cover different categories of care, different experts may be necessary to create remediation plans that are targeted to the varying needs and difficulties at different prisons. Specifically, the Court expects expert opinions on the following six categories:

- Pharmacy: PM 15 at Lewis; PM 19 at Lewis.
- Intersystem Transfers: PM 35 at Lewis.
- Access to Care: PM 39 at Lewis; PM 40 at Eyman; PM 42 at Eyman, Florence, Lewis; PM 44 at Eyman, Florence, Lewis.
- Diagnostic Services: PM 46 at Eyman; PM 47 at Eyman, Lewis, Phoenix, Tucson.
- Specialty Care: PM 49 at Tucson; PM 50 at Florence, Tucson; PM 51 at Florence; PM 52 at Eyman, Florence, Tucson.

---

[1] Because of Defendants' inability to hire and retain providers, the Court has ordered an outside consultant, Advisory Group, to opine on the hiring and retention of providers. Advisory Group presented its findings in open court on June 13, 2018. (Doc. 2880) The Court expects the additional expert(s) would opine on what Defendants' employees should do and/or how they should do it.

- 3 -

- Chronic Care: PM 54 at Eyman; PM 55 at Eyman.
- Infirmary Care: PM 66 at Florence; PM 67 at Lewis, Tucson.

**IT IS THEREFORE ORDERED** that, within 30 days of the date of this Order, Plaintiffs and Defendants shall each submit a list of two proposed experts for each of the following categories of care delineated by the Stipulation: Pharmacy, Intersystem Transfers, Access to Care, Diagnostic Services, Specialty Care, and Chronic Care. For each proposed expert, the parties shall submit a current CV/resume and confirm that s/he is available to serve as an outside expert to Defendants. The Court will then conduct its selection process.

Dated this 22nd day of June, 2018.

_____
David K. Duncan
United States Magistrate Judge