UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| Victor Parsons, et al., on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | CV-12-0601-PHX-DKD |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | June 6, 2018 |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their Official capacities, | ) ) ) ) ) ) ) ) | 4:41 p.m. |
| | ) | |
| Defendants. | ) ) | |
| _____ | ) | |

BEFORE:  THE HONORABLE DAVID K. DUNCAN, MAGISTRATE JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

TELEPHONIC STATUS CONFERENCE

Official Court Reporter:
Linda Schroeder, RDR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 32
Phoenix, Arizona  85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                    A P P E A R A N C E S

2    For the Plaintiffs:

3            Prison Law Office
             By: CORENE KENDRICK, ESQ.
4                DONALD SPECTER, ESQ.
             1917 5th Street
5            Berkeley, CA  94710

6            ACLU – Washington DC
             By: DAVID C. FATHI, ESQ.
7            915 15th Street NW, 7th Floor
             Washington, DC  20005

8
             Eidenbach Law PC
9            By: KIRSTIN T. EIDENBACH, ESQ.
             P.O. Box 91398
10           Tucson, AZ  85752

11           Arizona Center for Disability Law – Phoenix, AZ
             By: MAYA S. ABELA, ESQ.
12           177 North Church Avenue, Suite 800
             Tucson, AZ  85701

13
     For the Defendants:

14
             Struck Love Bojanowski & Acedo PLC
15           By: TIMOTHY J. BOJANOWSKI, ESQ.
                 DANIEL STRUCK, ESQ.
16           3100 West Ray Road, Suite 300
             Chandler, AZ  85226

17

18

19

20

21

22

23

24

25

1    THE CLERK:  Civil case number 12-601, Parsons, et al.,

2  versus Ryan, et al., on for telephonic status hearing.

3    THE COURT:  Who's on the telephone please?

4    MR. FATHI:  Good morning, Your Honor.  Good afternoon,

5  Your Honor.  This is David Fathi of the ACLU National Prison

6  Project for the plaintiff class.

7    THE COURT:  Thank you.

8    MS. KENDRICK:  Good afternoon, Your Honor.  This is

9  Corene Kendrick and Don Specter from the Prison Law Office for

10  the plaintiff class.

11    THE COURT:  Thank you.  Good afternoon.

12    MS. EIDENBACH:  Good afternoon, Your Honor.  This is

13  Kirstin Eidenbach for the plaintiff class.

14    THE COURT:  Thank you.

15    MS. ABELA:  Good afternoon.  This is Maya Abela for

16  the Arizona Center for Disability Law.

17    THE COURT:  Thank you.

18    It sounds like it's defendants' turn.  Do we have

19  defendants?

20    MR. STRUCK:  It's Dan Struck and Tim Bojanowski for

21  the defendants, Your Honor.

22    THE COURT:  All right.  Thank you very much.  The

23  first thing that I wanted to address was to hear from

24  plaintiffs with respect to their review of the Edwards

25  documents and your anticipated need, if any, for any additional

1     examination of that witness.

2           MS. KENDRICK:  Yes.  Yes, sir.  This is Corene

3     Kendrick, to identify for the court reporter.  We reviewed the

4     documents that were provided yesterday evening, and we see no

5     reason for us to recall Ms. Edwards.  We would also note that

6     in defendants' amended list of witnesses that they filed at

7     4:28, they do not list Ms. Edwards either.

8           And in light of the fact that on Monday Ms. Love said

9     that the reason why defendants needed all those extra days and

10    hearings was because they needed to recall Ms. Edwards, we are

11    asking you once again to limit the hearings to June 12th to

12    14th because of that.

13          We would also note for the record that this amended

14    list of witnesses still lists at least 19 individuals.  One of

15    the persons that defendants list for Tuesday, June 12th, Erin

16    Barlund, is somebody who is new, had not been disclosed at any

17    time as a potential witness.  And plaintiffs believe that

18    all of the witnesses that defendants list for Thursday, June

19    14th, can be cut because these are the canine sergeants and the

20    people about the training and whether or not somebody said you

21    can tell an inmate's lying when he moves his lips.  And so we

22    don't think that is relevant to the matter at hand before the

23    Court.

24          We also feel the same way about witnesses 17, 18, and

25    19 on their list, that their testimony is not needed.  And to

1    the extent it is just to rebut allegations that Ms. Edwards

2    made about encounters and interactions with inmates, we do not

3    believe that's related to the matter at hand before the Court.

4            Defendants also state that they are going to submit a

5    final list by the close of business on Friday, June 8th.  That

6    is entirely too late, and we need a hard deadline.  And we

7    would ask for no later than noon tomorrow for the final witness

8    list stating the substance of each witness's testimony with the

9    witnesses and the order that they will be called and the time

10   limits for each, with equal time for plaintiffs.

11           Earlier today I asked defendants if we could start on

12   the 12th with the cross-examination of Dr. Stewart, who

13   testified almost three months ago on March 14th.  We've told

14   them that we would need up to 90 minutes but no more than 90

15   minutes, and defendants did not respond.  But in their filing

16   they proposed having him testify the week of June 18th.  And we

17   would just ask that he be the one so that we can close out this

18   witness whose testimony is still sitting open and complete his

19   examination.

20           THE COURT:  And, Ms. Kendrick, I didn't follow what

21   you were saying about when you want Dr. Stewart to be.

22           MS. KENDRICK:  We had asked defendants that we finish

23   up with him on Tuesday morning at 9:00 a.m. and just finish up

24   the cross-examination, because his direct examination was on

25   March 14th.  And it just is cleaner to close out the witnesses

1     to the extent we can.

2              THE COURT:  I understand.  All right.

3              Anything else you wanted to say, Ms. Kendrick?

4              MS. KENDRICK:  Well, yes, sir.  I do have some things

5     to say about the exchange of exhibits, but in terms of the

6     witnesses, that's what we have to say.  We don't think that

7     Ms. Barlund should be added.  We don't think any of the ones

8     listed for Thursday, June 14th, are relevant.  And we don't

9     think that their witnesses listed as witnesses 17 through 19 on

10    docket 2857 are relevant.  And we would ask the Court to order

11    that they cut their witness list.

12             THE COURT:  Okay.  Let me first address the issue of

13    Ms. Barlund.  I'm inclined to let the defendants decide what

14    they want to do and whom they want to do.  I obviously see

15    there's been a change, that Mr. Pratt's disappeared from the

16    first sort of triumvirate here, and we have Ms. Barlund

17    instead, but that's something that they can do.

18             And I'm not disinclined to agree that we should finish

19    out Dr. Stewart before we proceed to the others.  But let me

20    just address that Dr. Stewart issue first before we move to

21    other issues with the defendants.  And, Mr. Struck or

22    Mr. Bojanowski, what would be your view with respect to doing

23    Dr. Stewart first thing on Tuesday morning?

24             MR. STRUCK:  If -- And, you know, we apologize, Your

25    Honor, for providing this list when we did, and there's two

1    reasons why.  One is for some reason everyone here had this

2    miscalendared for the 13th, 14th, and 15th.  And it wasn't

3    until about two hours ago when I had an e-mail exchange with

4    Ms. Kendrick that we went and looked and saw that it was --

5    that actually was incorrect.  So that threw off pretty much all

6    the planning that we had for next week.

7            Dr. Stewart is a Corizon employee.  And the other

8    reason that this thing isn't complete like we had hoped it

9    would be is these folks that aren't listed for a specific date

10   are Corizon employees, and we're having to go through Corizon

11   for that.

12           If Dr. Stewart is available on the 12th, which we have

13   not confirmed whether he is as of yet, we don't have a problem

14   with starting with him.

15           And so we're still awaiting word from Corizon as to

16   whether or not he is available on the 12th.  And we're hoping

17   that, you know, I think we said in the pleadings close of

18   business on Friday.  If we can get it tomorrow, I don't think

19   we can get it by noon, but if we can get this information by

20   noon tomorrow, we, you know, will provide a list of who we're

21   going to call and what day we plan to call them by the end of

22   business tomorrow.  We want to get this list obviously as

23   quickly as we can.  We're just trying to get, you know, the

24   information from Corizon.

25           THE COURT:  All right.  Assuming Dr. Stewart's

1    available, then we'll start with Dr. Stewart in the morning at

2    9:00 a.m. on Tuesday, June 12th, and then we'll proceed

3    immediately to the three witnesses that are set forth on the

4    defendants' proposed witness list.  That's Ms. Barlund

5    Dr. Nicole Taylor, and Ms. McNeal.

6            I think that if we can get through those witnesses on

7    that day, you should also have Vanessa Headstream available so

8    that if we do make progress, that she can -- we can proceed

9    immediately to her testimony.

10            On Wednesday, we will devote no more than two hours to

11    the status report.  And we also have to afford the time for the

12    report from Mr. Millar.  So my expectation is that we will have

13    a half day for the opportunity for further defendants'

14    testimony.  And so we'll proceed with that testimony on

15    Wednesday and also on Thursday.

16            I don't need to hear about any of the retaliation

17    experts.  And what I'm going to do is I'm going to hope that we

18    can make as much progress as we possibly can on Thursday with

19    respect to all of the defendants' witnesses so that defendants

20    need to make sure that we're not in a position where we've run

21    out of witnesses and we have time yet to hear from them on

22    Thursday with -- I don't want anybody thinking that we're

23    automatically going to go into these additional days that I've

24    talked about that are possible for the last week of -- well,

25    for the -- on the 18th, starting.

UNITED STATES DISTRICT COURT

1              And so my thought is that everybody should understand

2    that we're going to try to be as efficient as we possibly can

3    and that if it turns out that it's obvious that people have

4    been efficient and that we do need additional time, we'll turn

5    then to the time starting on the 18th.  But I don't necessarily

6    think that that's necessarily where we'll be with respect to

7    either the 18th or any additional days that week.

8              Anything anybody wants to say about that?

9              Ms. Kendrick?

10             MR. STRUCK:  Yes, Your Honor.  This is Dan Struck.  I

11   wanted to let everybody know that we've been told by Corizon

12   that Dr. Khan is not available the 12th, 13th, or 14th.  So --

13             THE COURT:  Well, we understand -- I understand that.

14   I understand that --

15             MR. STRUCK:  Okay.

16             THE COURT:  -- because of Ramadan.  And so my

17   expectation is that if you all decide that it's necessary after

18   what we've gone through to have that witness and that you

19   all -- I mean, I'm going to be riding people pretty tightly on

20   this, so you may understand that it might be better just to

21   have a report submitted from him.  But, in any event, I'm not

22   going to force him or force you to forgo his testimony because

23   of his unavailability of that week.  So I think we are into

24   that Monday at least for Dr. Khan if you decide that that's

25   what you want to do.

1          But with respect to the other witnesses, I'm going to

2   be watching it still.

3          MR. STRUCK:  And that's understood, Your Honor.  But I

4   want to make sure I understand what -- something you said

5   before about -- with respect to the -- We have several

6   witnesses that have been added to the list following

7   Ms. Edwards' testimony last week.  She outlined several areas

8   that she believed were retaliation, and I understood you to say

9   you don't need to hear from any testimony with respect to the

10  allegations of retaliation at the Yuma facility?

11         THE COURT:  That is true, because she testified in

12  court, and I didn't have any sense that she was cowed into not

13  telling us what she honestly believed.  That's of course a

14  completely different issue if I hear that there's been

15  retaliation from that point forward.

16         But in terms of you presenting any evidence about --

17  with respect to the canine dogs or the investigation that she

18  said she was told didn't -- didn't -- didn't in fact start, I

19  don't need to hear about that.  So those --

20         MR. STRUCK:  There was an allegation that she made or

21  testified with respect to the inmate -- the deceased inmate or

22  the inmate who has since deceased that he had been placed in

23  some sort of disciplinary housing after he, I think, spoke with

24  Ms. Kendrick or somebody, you know, from the plaintiffs'

25  attorney's side.  And we had planned to have witnesses testify

1    with respect to why this particular inmate was actually placed

2    in segregation.  That seems to be a separate issue than what

3    you just described, Your Honor.

4         THE COURT:  It seems like a separate issue, but in

5    light of where we stand right now, I don't think it's necessary

6    for me to go into that.

7         MS. KENDRICK:  Your Honor, this is Corene Kendrick.

8    So a couple of comments and observations.  First, Mr. Struck

9    said that he didn't know until two hours ago when I told him

10   that the hearings were set for June 12th through 14th.  The

11   Court set those days on April 11th.  We discussed it at length

12   that they were going to happen June 12th and June 14th at the

13   hearing on Friday that Mr. Struck attended.

14        So it's disingenuous to say that they can't provide a

15   list of witnesses because they didn't realize that the hearings

16   were going to be on Tuesday, Wednesday, and Thursday.

17        Second, we ask that Your Honor impose time limits for

18   every single witness and equal amount for plaintiffs and

19   defendants, so that we can map out this day -- the days.  We

20   would also ask that you specifically name the witnesses that

21   are on their list that you're excluding because we don't need

22   to waste time this weekend preparing for people if you're going

23   to exclude them.  So we ask that you make that order right now

24   as to which ones you are striking from their list.

25        We also need to know the names of -- the final names

1   if any additional ones.  We are asking that defendants provide

2   the substance of each witness's testimony as specifically what

3   they are going to be rebutting that Dr. Watson, Ms. Edwards, or

4   Ms. Fischer testified to.

5         THE COURT:  All right.  First, with respect to the

6   retaliation witnesses that are no longer necessary, which of

7   these individuals on your list, Mr. Struck, are people that

8   are -- Some I can see the word retaliatory activity.  It looks

9   like Warden Pyle and Deputy Warden Aguilar are associated with

10  that issue.  Is that right?

11        MR. STRUCK:  Yes.

12        THE COURT:  So we can strike Wardens Aguilar and Pyle.

13        With respect to Sergeant Guerrero?

14        MR. STRUCK:  Yes.

15        THE COURT:  All right.  And I gather --

16        MR. STRUCK:  And then we had -- we were going to

17  call -- we were trying to identify correctional officer or

18  officers with respect to other allegations --

19        THE COURT:  So that's number nine.

20        MR. STRUCK:  -- of other retaliatory activity.

21        THE COURT:  So --

22        MR. STRUCK:  Number nine.

23        THE COURT:  So number nine can be struck?

24        MR. STRUCK:  Yes.

25        MS. KENDRICK:  Similarly, it appears the word

1    retaliatory does not appear for the Deputy Warden Eccles of

2    Phoenix or number eight to be determined ADC employee regarding

3    training provided to Ms. Fischer, but it appears that this is

4    designed to rebut Ms. Fischer's testimony about the

5    dehumanizing training, as she put it, that she experienced the

6    first day.  And again, you know, that's not necessarily

7    relevant to the task at hand, which is mistakes in the

8    monitoring methodology and the accuracy of underlying data.  So

9    we would ask the Court to strike five and eight.

10          MR. STRUCK:  Actually Deputy Warden Eccles was going

11   to testify about more than that.  There was extensive testimony

12   from Ms. Fischer with respect to her concerns that -- and

13   Mr. Fathi spent probably 45 minutes with her regarding the

14   testimony of officers falling asleep during suicide watch.  I

15   mean, all of these things were listed by plaintiffs, and

16   apparently Mr. Fathi spent all day with Ms. Fischer going over

17   this testimony.

18          So, you know, these are not things that we

19   anticipated, but we should be able to have, you know, Deputy

20   Warden Eccles come in and testify about those types of things

21   with respect to Ms. Fischer's allegations at ASPC Phoenix and

22   not be -- not simply strike them because Ms. Kendrick doesn't

23   want to hear it.

24          THE COURT:  All right.

25          MR. FATHI:  Your Honor, this is David Fathi.  There

1    was no surprise here.  Every one of those documents about the

2    multiple incidents of officers sleeping on suicide watches and

3    otherwise sleeping on the job were filed with the Court over a

4    month before this hearing.

5            So the defendants had those documents.  They had them

6    again when we identified them as exhibits for the hearing.  So

7    there was absolutely no surprise here.  They knew that

8    testimony was coming.

9            And, secondly, there was no testimony that Deputy

10   Warden Eccles had any personal knowledge, was present, when any

11   of those sleeping officer incidents occurred.  So it's far from

12   clear, putting aside the red herring of surprise, that Deputy

13   Warden Eccles' testimony about that would even be admissible

14   because he or she lacks personal knowledge.

15           THE COURT:  I'm pretty sure that there's a rule

16   against the people in the control room and the people on

17   suicide watch sleeping.  So I wouldn't think that it would be

18   very helpful to hear from the warden that there's a rule to

19   that effect.  I don't see how that's going to undercut the

20   testimony of the witness who testified that she had eyewitness

21   proof of this.

22           To me, I'll not be very generous with allowing

23   defendants' direct examination to go forward if it is not

24   directly linked to the testimony of the incidents that were

25   testified to by the witness here in court.  Again, general

1  policies exist with great frequency across this case with all

2  sorts of individual variations from those policies.

3       And so I'm, again, I'll -- you can call Mr. Eccles,

4  Warden Eccles, but you shouldn't expect that I'm going to be

5  very generous with the time if it turns out that he's just

6  telling me about general policies and how, if he ever hears

7  about somebody sleeping, he takes great action about it.

8  Again, that's not going to be very important to me.

9       And then it seemed like the training issue, again, you

10 know, the idea that you have training that would seem to be

11 rebuttal to her testimony that she was told by a trainer this

12 joke, and, you know, if you want to call the person who she

13 says said it to say I didn't say it, I suppose, you know,

14 that's something in fairness you should get to do.  But saying

15 that we have a general overall policy of being profoundly

16 respectful of inmates, you know, I've let you know throughout

17 this case that I think that there are oftentimes that you don't

18 have such a general view.

19      So I'm not going to be that persuaded by a general

20 policy saying we're respectful of inmates and we listen to what

21 they have to say.  There have been plenty of times where I've

22 had to call up defense counsel for what I thought was

23 representations of disrespect for individuals in the prison

24 system.

25      And so, again, a general policy is not going to be

1   something that's going to be very persuasive to me, and I'm not

2   going to be very generous with the time, but I'm not going to

3   preclude you from doing it.

4        With respect to the other witnesses, Ms. Kendrick,

5   which ones do you have some doubt as to what they would be

6   saying so that you need a heads-up to prepare for their

7   testimony?

8        MS. KENDRICK:  Well, it's unclear what the FHA is

9   going to testify to, whether he has personal knowledge of

10  things that Ms. Edwards spoke of.  Same with the DON and Meza.

11  And to the extent, you know, the testimony Ms. Edwards had

12  about the Nurse Meza related to comments that Meza made to the

13  deceased class member.

14       And so, again, to the extent they're just calling her

15  so she can say -- deny saying it, we don't think that it has

16  much probative value.  And, again, that is regarding the fact

17  that this deceased person told Ms. Edwards that he thought he

18  was being retaliated against for speaking with me when I was at

19  the prison.  That doesn't really have to do with mistakes in

20  monitoring and the like.

21       MR. STRUCK:  All right.  Well, I'll tell you, Judge --

22  I'm sorry; this is Dan Struck -- 90 percent of what we heard

23  doesn't have anything to do with mistakes in monitoring.  And

24  so for the plaintiff to throw all these allegations out there

25  in these hearings and have Jimmy Jenkins sitting in the

1      courtroom and reporting on these -- all of these things, I

2      mean, the first thing out -- on his story following the hearing

3      was --

4              THE COURT:  I don't really want to hear about -- I

5      don't need nor want to keep my staff here after hours to hear

6      about what the reporter has said.  I don't need to hear about

7      that.

8              I do know that I have allowed something to come into

9      evidence here, to have questions asked beyond monitoring,

10     because when I get these people in the prison who work there or

11     have worked there, I learn things that are useful for me and my

12     handling of this case.  And so I have told you repeatedly that

13     I'm interested in hearing about that, and that's why I didn't

14     cut it off.

15             And so any idea that we were solely limited to

16     monitoring and that any objection based upon that is not true

17     or is not sustainable as an objection that I'm going to hear

18     about because I've opened this up, and I've learned important

19     things that I needed to know that is wholly separate from the

20     monitoring.

21             I learned that the nurse line fails in Yuma from a

22     witness who works there.  And so I'm happy that I opened that

23     up.  But I don't need to hear about anything about a reporter.

24             So you can -- I think we have enough of an idea about

25     what Ms. Meza would be talking about.  But the FHA,

1    Ms. Johnson, regarding operation of the Cibola Medical Unit,

2    that to me seems like that would be appropriate for -- to

3    include and provides enough notice to you, Ms. Kendrick, with

4    respect to that witness.

5         So are there any others that you think you need

6    additional information?

7         MS. KENDRICK:  Well, Jennifer Brooks, who is listed as

8    witness number 19, Corizon Senior Provider Contracting

9    Specialist regarding efforts to secure outside specialty

10   providers and billing allegations, is that also in response to

11   Edwards as well?

12        MR. STRUCK:  Yes, it is.  In fact, these are all in

13   response to Edwards.  With respect to providing the plaintiffs

14   with the substance of their testimony, I just want to note we

15   weren't provided the substance of any of the testimony of the

16   witnesses that plaintiffs called.  This was -- This is

17   something that was just thrown at us about two hours ago.

18        And if you look at Ms. Edwards' testimony and

19   Ms. Fischer's testimony, that's where you're going to see what

20   the response to -- with respect to the folks that are

21   testifying from ASPC Phoenix and from ASPC Yuma are going to be

22   testifying with respect to.

23        THE COURT:  All right.  With respect to the objection

24   that I'm requiring something of the defendants that wasn't

25   required of plaintiffs, I'm doing the best I can with

1    fast-changing events and with the amount of time that we have.

2    And I think it is efficient, to the extent that it's possible,

3    to give the plaintiffs a heads-up about what the scope of the

4    expected direct examination is.  And so that's why we've been

5    going through this process.  And so I'll overrule any objection

6    to it because I don't think it's fundamentally unfair.  And

7    it's also, in my view, a reflection of the fact of where we are

8    in the case and the timing issues that we face and how to be

9    most efficient as we can.

10           So I think that I've given the opportunity for

11   plaintiff to identify those witnesses that you felt you needed

12   more information about, and you received that information.  But

13   I do think we need to set a deadline for the final witness list

14   so that people aren't caught by surprise.  It sounds to me as

15   though that you're in a position to do that by the close of

16   business tomorrow, Mr. Struck; is that right?

17           MR. STRUCK:  That's assuming that we can get the

18   information from Corizon, because that's, right now, that's the

19   fly in the ointment, is getting the information from Corizon.

20   And as soon as we get off the phone, we're going to let them

21   know we have to know by tomorrow; let us know if these people

22   are available.

23           THE COURT:  Okay.  And if there's somebody who -- If

24   there's somebody who's on your list, your final list tomorrow

25   that hasn't previously been on one of these lists, do let the

| | |
|---|---|
| 1 | plaintiffs know what the expected nature of the testimony, the |
| 2 | scope of it would be, so that they can prepare. |
| 3 | MR. STRUCK:  All right. |
| 4 | MR. FATHI:  I beg your pardon, Your Honor.  Could we |
| 5 | ask about one additional witness? |
| 6 | THE COURT:  Yes. |
| 7 | MR. FATHI:  I don't think we heard what number 15, |
| 8 | Richard Watts, is going to testify about. |
| 9 | MR. STRUCK:  Well, there was a significant amount of |
| 10 | testimony with respect to Richard Watts, I know, from Cecilia |
| 11 | Edwards, and there are documents that identified that were |
| 12 | e-mails and documents that were sent to and from Richard Watts |
| 13 | at the hearing, so I don't -- |
| 14 | THE COURT:  So it would all relate to issues that came |
| 15 | up with respect to him and the testimony of the previous |
| 16 | witnesses; is that correct? |
| 17 | MR. STRUCK:  Yes.  And I may be wrong about this, but |
| 18 | it's my recollection that there may have actually been some |
| 19 | testimony with respect to Mr. Watts with Ms. Fischer. |
| 20 | MS. KENDRICK:  Well, Ms. Edwards testified that Lori |
| 21 | Johnson is the Facility Health Administrator for Yuma, yet |
| 22 | defendants list number 15 as Richard Watts as the FHA, and then |
| 23 | they list Ms. Johnson as the Eyman FHA.  So it's unclear |
| 24 | whether all of these people have changed facilities or what's |
| 25 | going on.  But the testimony from Ms. Edwards was that |

1    Ms. Johnson was the Facility Health Administrator at Yuma.

2              THE COURT:  All right.

3              MR. STRUCK:  Well, we're -- Your Honor, we'll attempt

4    to clear -- we will clear that up when we provide the

5    plaintiffs with their requested substance of these other

6    witnesses.  But it's my recollection that Richard Watts came up

7    in both Ms. Fischer's testimony and Ms. Edwards' testimony.  So

8    he may have switched -- he may have worked at both ASPC Phoenix

9    and ASPC Yuma.

10             THE COURT:  Okay.

11             MS. KENDRICK:  Your Honor, we again would ask that you

12   impose time limits on these witnesses.  We proposed no more

13   than 90 minutes each side or two hours, but otherwise this will

14   just drag on as long as possible.  And we think that we need to

15   have some guidelines and framework for the testimony of these

16   people so that they can plot it out.

17             We're very concerned that we're going to, you know,

18   burn through some witnesses, and then it will be 2:00, and

19   defendants will have nobody to call.  So we want them to be

20   prepared for that.

21             THE COURT:  Well, I've already addressed that, and I

22   can also assure you, Ms. Kendrick, that I am not going to allow

23   people to just consume time without purpose, that I will be

24   more engaged.  As time becomes more limited, it becomes more

25   precious, and whereas previously perhaps in the conditions of a

| | |
|---|---|
| 1 | seasonal flood, I've been perfectly happy to let water flow |
| 2 | over the dam.  But in the existence of a drought, I'm going to |
| 3 | be minding every single one of the drops. |
| 4 | So don't worry about -- |
| 5 | MS. KENDRICK:  Your Honor -- |
| 6 | THE COURT:  -- about that.  Yes.  What else? |
| 7 | MS. KENDRICK:  I'm sorry, sir. |
| 8 | THE COURT:  Go ahead. |
| 9 | MS. KENDRICK:  There's also some issues with regard to |
| 10 | the exhibits.  We need the Court to set a hard deadline for |
| 11 | exchange of exhibits with regard to Ms. Fischer.  Defendants |
| 12 | provided us their exhibits for her at 9:00 the night before the |
| 13 | witness testified, and that's unreasonable in terms of |
| 14 | preparing. |
| 15 | The other thing is that last Wednesday, Ms. Eidenbach |
| 16 | and Ms. Abela toured the Phoenix facility.  And defendants at |
| 17 | their direction took photographs of much of the facility.  And |
| 18 | we have asked defendants to provide those to us as soon as |
| 19 | possible because we plan to use those as exhibits, potential |
| 20 | exhibits, in cross-examining the Phoenix staff. |
| 21 | And we would like to have all of our exhibits ready |
| 22 | and disclosed to defendants with due time.  And so we ask for a |
| 23 | deadline for them to produce those photos and a deadline for |
| 24 | the exchange of exhibits. |
| 25 | THE COURT:  All right.  In the previous witnesses when |

1    plaintiff has called the witnesses and you've had these

2    exhibits that you used with respect to Ms. Edwards, for

3    example, how many days in advance did you provide those

4    exhibits to the defendants?

5              MS. KENDRICK:  We provided them two days before.

6              THE COURT:  All right.  So let's do this.  Give the

7    photos to the plaintiffs no later than the close of business

8    this week and then give the other exhibits no later than the

9    close of business on Monday.

10             MS. KENDRICK:  Your Honor, that's the evening before

11   the first day of the hearing.

12             THE COURT:  Oh, you're right.  I'm sorry.

13             Let's then make it close of business on Saturday.

14   Sometimes we do business on Saturday, find ourselves doing it

15   more often than not.

16             MS. KENDRICK:  Is that Arizona time zones or Stockholm

17   time zones?

18             THE COURT:  That's a good joke.  It's 5:00 Mountain

19   Standard Time on Saturday.

20             MS. KENDRICK:  All right.

21             MR. FATHI:  Your Honor, may we have an earlier

22   deadline for production of the photographs?  We are more than

23   happy to work over the weekend, but we'll have no support

24   staff, and they're involved in preparing exhibits.  So if we

25   could get them before Friday evening, that would be far

1    preferable.

2              THE COURT:  That seems reasonable, those reasons given

3    to me, and I can't imagine why the photographs would be that

4    big of a difficulty.  So we'll make that the photographs have

5    to be served to the plaintiffs no later than 9:00 a.m. Friday

6    Mountain Standard Time.

7              MS. KENDRICK:  Thank you.

8              MR. FATHI:  Thank you, Your Honor.

9              THE COURT:  Anything else we need to address now?

10             MS. KENDRICK:  No.

11             THE COURT:  Thank you, all, very much.  Good

12   afternoon.

13             MS. KENDRICK:  Thank you.

14             MR. STRUCK:  Thank you, Your Honor.

15        (Proceedings recessed at 5:13 p.m.)

16

17

18

19

20

21

22

23

24

25

1

## C E R T I F I C A T E

2

3       I, LINDA SCHROEDER, do hereby certify that I am duly

4 appointed and qualified to act as Official Court Reporter for

5 the United States District Court for the District of Arizona.

6       I FURTHER CERTIFY that the foregoing pages constitute

7 a full, true, and accurate transcript of all of that portion of

8 the proceedings contained herein, had in the above-entitled

9 cause on the date specified therein, and that said transcript

10 was prepared under my direction and control.

11       DATED at Phoenix, Arizona, this 18th day of June,

12 2018.

13

14

15                        s/Linda Schroeder

16                  Linda Schroeder, RDR, CRR

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**