Office of the Arizona Attorney General
Michael E. Gottfried, Bar No. 010623
Assistant Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004-1592
Telephone: (602) 542-1645
Fax: (602) 542-3393
Michael.Gottfried@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | NO. 2:12-cv-00601-ROS <br><br><br> **DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR RELIEF FROM COURT ORDER RE: TERMINATION OF MONITORING (DKT. 2931)** |

On June 22, 2018, the Court denied Defendants' Motion to Terminate Monitoring (Dkt. 2251), finding "profound and systemic" problems with Defendants' monitoring process.  (Dkt. 2900.)  It listed five reasons for this conclusion:  (1) eOMIS is not an accurate reflection of the care because providers can backdate entries; (2) there is no rhyme or reason to the number of records ADC reviews; (3) other submissions by Defendants are inexplicably inconsistent; (4) evidence presented raised questions about

the integrity of the CGAR system; and (5) compliance can be a life-or-death matter for inmates.  (*Id*.)

Defendants timely filed a Rule 60(b)(6) Motion arguing that the record the Court cited did not support its conclusion that the CGAR system is broken.   In response, Plaintiffs conceded that the Court erred by not issuing an order to show cause before deciding to appoint a Rule 706 expert, and that it incorrectly determined ADC reviews an arbitrary number of records.  (Dkt. 2981 at 10 n.5, 16.)  Plaintiffs also briefly discussed Cecilia Edwards' testimony. Plaintiffs otherwise failed to address Defendants' remaining arguments with respect to the Court's reasons and supporting evidence.  Instead, Plaintiffs reargued the evidence and speculated as to what the Court could (or should) have relied on in order to bolster the evidentiary sufficiency of the Court's Order.  Plaintiffs have thus largely waived any argument in opposition.

For the reasons detailed in Defendants' Motion, and those outlined below, the Court's Order inappropriately relied upon anecdotal and isolated incidents to conclude the CGAR system is unreliable.  Defendants' Motion should be granted.

# I.  **LEGAL ARGUMENT**

## A.  **Defendants Properly and Timely Sought Relief From the Court's Order Pursuant to Rule 60(b)(6).**[1]

Relief under Rule 60(b)(6) rests on a highly fact-intensive balancing of finality and doing justice.  *See Hall v. Haws*, 861 F.3d 977, 987 (9th Cir. 2017).  A wide range of factors, such as the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process, determine whether extraordinary circumstances exist to warrant relief.  *Buck v. Davis*, 137 S. Ct. 759, 766 (2017).

Plaintiffs incorrectly contend that Defendants' Motion is improper under Rule 60(b)(6).  First, Plaintiffs argue Defendants did "not even attempt to establish" that extraordinary circumstances justify Rule 60(b) relief.  (Dkt. 2981 at 7.)    This is

---

[1] Defendants' likelihood of success on appeal is not an issue before this Court.  As such, Defendants do not respond to Plaintiffs' arguments on this issue.

2

inaccurate. Defendants explained the serious injustices inflicted upon them by the Court's Order—continued monitoring, compounded by the costs of paying for a Rule 706 expert. (Dkt. 2931 at 6-8.) That Defendants demonstrated extraordinary circumstances is also belied by the fact Plaintiffs specifically responded to Defendants' extraordinary circumstances arguments in their Response. (Dkt. 2981 at 20.)[2]

Next, Plaintiffs argue the Court's Order is not subject to Rule 60(b)(6) review because Defendants challenge the sufficiency of the evidence. (Dkt. 2981 at 8.) Plaintiffs cite no legal authority to support their position that the "catch-all" provision of Rule 60(b)(6) prohibits arguments based on the sufficiency of the evidence. Nor do they state what procedural vehicle Defendants should have moved under if not Rule 60(b)(6). Indeed, the Court has previously grappled with what procedural vehicle is most appropriate to challenge its orders, and determined Rule 60(b) is an appropriate vehicle for the Court to review its orders interpreting the Stipulation. (Dkt. 1917 at 2 n.2) (citing *U.S. v. Washington*, 761 F.2d 1404, 1406 (9th Cir. 1985)). Such unchartered waters are expected given the unique nature of this case, especially with respect to this Order which, as the Court noted, was a "first of its kind" as it was the first time Defendants had moved to terminate the Stipulation. (Dkt. 2900 at 1.)[3] Plaintiffs themselves have sought similar relief invoking Rule 60(b)(6). (*See*, *e.g.*, Dkts. 1790, 1806.) To the extent this Court

---

[2] While Plaintiffs appear to argue that Defendants somehow failed to timely take action to protect their interests because they were able to brief the issue before the Court issued its Order, Plaintiffs cite no case law to support this argument. Nevertheless, Defendants were not aware that the Court would rely on isolated and anecdotal instances to conclude the CGAR process was flawed until Defendants received its ruling. (Dkt. 2981 at 7.) Defendants' Motion is timely.

[3] Defendants disagree with Plaintiffs' characterization of the rate of Defendants' success with respect to specific PMs. While true that the Court has ordered Defendants to change the way in which they monitor certain PMs, and ordered these changes be applied retroactively, the majority of the measures subject to Defendants' Motion to Terminate have never had their monitoring methodology changed. Giving Plaintiffs the benefit of the doubt, and assuming that any measure that has had a court ordered methodology change specific to that measure cannot terminate (Defendants disagree with this broad interpretation of the Court's order), 60% of the measures Defendants moved on would still terminate (PMs 1-15, 17-22, 25-26, 28-32, 36-41, 43, 45-60, 63-65, 68, 70-71,79, 96, and 101-103.)

1    determines another procedural rule would be a better fit for these particularly unique

2    circumstances, Defendants respectfully request consideration and relief under that rule as

3    well.

4         Plaintiffs further argue Rule 60(b) relief is unavailable to Defendants because the

5    Court did not determine whether the CGAR data was reliable.  (Dkt. 2981 at 8.)  This

6    attempt to minimize the significant consequences of the Court's Order fails.  The Court

7    did not waver in its ruling; it found there was an "*inescapable* conclusion" that "profound

8    and systemic concerns" exist "at every stage" of the monitoring process.  (Dkt. 2900 at 6,

9    emphasis added.)  The Court's intended consequences aside, denial of Defendants'

10   Motion requires Defendants to waste significant time and resources monitoring PMs that

11   have already met or exceeded the compliance threshold.  The injury to Defendants is not

12   somehow delayed because the Court arguably reserved the question as to whether

13   Defendants' CGAR results are reliable.  The injury was immediately inflicted.  Indeed,

14   Defendants have suffered the injury since some of the PMS came into compliance well

15   over a year ago.

16        Finally, Plaintiffs argue Defendants' Motion is an improper attempt to reargue

17   evidence. (Dkt. 2981 at 10.)  This is incorrect.  Defendants' Motion does not reargue any

18   prior evidence or position.   Instead, it challenges the sufficiency of the anecdotal,

19   sporadic, and isolated alleged events relied on by the Court to conclude that the entire

20   CGAR process is systemically unreliable.

21        In fact, it is Plaintiffs who improperly reargue the evidence.  (Dkt. 2981 at 10-12.)

22   For example, Plaintiffs tallied up the number of filings, exhibits, and witnesses from

23   January 2017 to June 22, 2018.  Plaintiffs argue these numbers, in and of themselves, are

24   "ample evidence" sufficient to support the Court's Order.  But Plaintiffs fail to connect

25   any of those filings, exhibits, or witnesses to the Court's Order, or otherwise explain how

26   any specific item is relevant to and supports the Order.  Plaintiffs' attempt to convince the

27   Court that supporting evidence must exist somewhere in the record, or that the Court must

28   have meant something else, based simply on the volume of information presented to the

4

Court is unconvincing and sheer conjecture.[4]

**B.    Plaintiffs Fail to Respond to the Substantive Arguments of Defendants' Motion.**

Defendants' Motion discusses in detail each of the five reasons the Court found the CGAR results to be unreliable.  Defendants explain, with supporting citations, specifically why each reason has no grounding in the record.  (Dkt. 2931 at 8-17.)   Other than conceding the Court erred in determining there is no rhyme or reason to the number of records  ADC  reviews,[5] and  discussing  the  alleged  practice  of  canceling  specialty appointments, Plaintiffs' Response fails to meaningfully respond to Defendants' Motion. Therefore, any argument with respect to the remaining categories and specific evidentiary arguments related to each, has been waived.  *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (finding abandonment of claims for failure to respond to arguments in summary judgment motion); *Jenkins v. County of Riverside,* 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005) (same); *Castillo v. Wells Fargo Bank, N.A.,* CV 08-653-TUC-RCC, 2012 WL 12881981, at *3 (D. Ariz. Mar. 30, 2012), *aff'd*, 554 F. App'x 646 (9th Cir. 2014) (same); *Doe v. Dickenson*, 615 F. Supp. 2d 1002, 1010 (D. Ariz. 2009) (plaintiff's failure to respond to defendant's arguments constituted waiver); *United States v. Toyota of Visalia*, 772 F. Supp. 481, 482 n.1 (E.D. Cal. 1991), *aff'd sub nom, United States v. Toyota of Visalia, Inc.*, 988 F.2d 126 (9th Cir. 1993) (holding failure to respond to argument in

---

[4] During this approximate year and a half period, the parties briefed and submitted a myriad of documents and testimony regarding topics unrelated to the monitoring process.  For example, Plaintiffs cite to the testimony of Brian Creswell, Jason Manson, and Charles Ryan.  But these witnesses testified regarding other extraneous issues.  Mr. Creswell testified regarding his alleged claims of retaliation (11/8/17 TR at 7:11-8:9, 18:5-21:17, 22:12-29:1); Mr. Monson testified regarding inmates' claims of retaliation and Department Order 704 (*Id.* at 47:3-52:7, 84:9-88:17); and Mr. Ryan testified regarding healthcare privatization and contract amendments (3/27/18 at 915:17-921:1, 927:24-932:8, 933:10-934:1.)   It is disingenuous for Plaintiffs to list all testimony, exhibits, and filings and argue the support for the Court's Order lies somewhere among these items.

[5] Plaintiffs concede the Court erred in reaching this determination based on the Court's misunderstanding and conflation of real-time vs. CGAR data. (Dkt. 2981 at 10 n.5.)  While Plaintiffs argue this error was harmless, they fail to explain why.  The error was not harmless where the Court's only example of this alleged practice does not support the conclusion it reached.  (Dkt. 2931 at 12-13.)

1   motion concedes the issue).

2          The only specific issue Plaintiffs address in their Response is the Court's reliance

3   on Cecilia Edwards' testimony to conclude that eOMIS is not an accurate reflection of the

4   care because providers can backdate entries. (Dkt. 2981 at 13.)  But they do not otherwise

5   respond to Defendants' arguments regarding her testimony.[6]  Instead they baldy assert

6   "ample evidence" exists elsewhere, and speculate the Court must have also relied on this

7   other evidence, despite the fact none of this evidence (emails among Corizon staff) is

8   mentioned in the Court's Order. (Dkt. 2981 at 13 – 15.)   Even the emails Plaintiffs assert

9   support the Court's conclusion fall short of establishing, as Plaintiffs argue, that specialty

10  consults were canceled to avoid violating the Stipulation. (Dkt. 2981 at 13.)  The emails

11  simply show that specialty consultations can be canceled, and if consultations are not

12  completed within a certain timeframe, they violate the Stipulation.  None of the emails

13  bridge Plaintiffs' logical leap that cancellations are done to avoid violating the

14  Stipulation's requirements.  Importantly, Plaintiffs cite to no evidence that establishes the

15  inmate files referenced in the documents were selected for CGAR review and were

16  improperly marked compliant.  Indeed, it is only the files selected for CGAR review that

17  make up the CGAR scores and are relevant to the inquiry here.

18         Plaintiffs' decision to ignore the arguments outlined in Defendants' Motion and

19  divert the Court's attention to other evidence not mentioned anywhere in its Order is

20  telling—the Court relied on anecdotal and isolated incidents in reaching its conclusion

21  that the CGAR results are unreliable.

22     **C.    Plaintiffs' Injustice Argument is Inappropriate Because Compliance
23            With the Stipulation is not Based on the Provision of Individual Inmate
              Care.**

24         As detailed in Defendants' Motion, Defendants will suffer injustice if the Court's

25  Order stands, as they will be required to continue to monitor PMs which long-ago met or

26

27         [6] Additionally, Plaintiffs mischaracterize Ms. Edwards' testimony, claiming she
28  herself canceled specialty consults requests. (Dkt. 2981 at 13.)  Ms. Edwards actually
    testified that she was not the one who canceled consults. (6/1/18 PM Tr. at 76:15-18.)

6

1  exceeded the Stipulation's compliance thresholds. (Dkt. 2931 at 6.)  Substantial cost, time,

2  and effort will be required, and wasted, to continue these unnecessary efforts.  (*Id.*)

3  Plaintiffs argue Defendants "could have avoided this" by proving their CGAR data is

4  accurate and reliable.  (Dkt. 2981 at 20.)  Not surprisingly, Plaintiffs' bald assertion is not

5  supported by any citation to the Stipulation that requires Defendants to prove every

6  CGAR entry is accurate and reliable.  The Stipulation contains no such requirement.

7  Under the Stipulation, termination is *automatic* and self-executing once compliance has

8  been satisfied.  If a requirement that Defendants "prove" every score for every measure at

9  every facility had been important to Plaintiffs, they should have bargained for such a

10  provision during the parties' negotiations of the Stipulation's terms.  They did not and

11  cannot now read that missing language into the Stipulation to alter its terms.[7]

12  Plaintiffs argue the Court's Order should stand because there is a "considerable risk

13  of injustice" to class members should the Court vacate its order.  (Dkt. 2981 at 21.)  In

14  support, Plaintiffs cite to individual examples of alleged "lapses in medical care."  (*Id.*)

15  But, as the Court explained:

16  [T]he Stipulation does not require 100% compliance, nor does
   it set a floor for compliance . . . **[T]his means that individual**
17  **examples of non-compliance . . . do not, in and of**
   **themselves, violate the Stipulation.**
18
19  (Dkt. 2118 at 3, emphasis added.)

20  And Plaintiffs offer no explanation as to how termination of Defendants'

21  monitoring requirements under the Stipulation translates to inmates receiving

22  unconstitutional care.  Nor could they, as the Stipulation does not require Defendants to

23  provide inmates with constitutional care.  The Stipulation is a settlement agreement, not

24  an injunctive requirement that resulted from a judgment.  Indeed, the Court has never

25  found that Defendants provide, or have ever provided, constitutionally inadequate

26  [7] Defendants provide Plaintiffs with the necessary data to allow them to check
   Defendants' CGAR scores.  In fact, Plaintiffs habitually send Defendants correspondence
27  whenever they believe an error has been made in calculation of CGAR scores.  (Dkts
   2368-1; 2426-1 at 4-8, 10-18; 2459-1; 2494-1 at 4-19, 35-38, 40-42; 2794-1 at 63-70, 72-
28  77.)

1    healthcare.   The Stipulation simply requires Defendants to monitor whether specific PMs

2    are being met based upon a random review of records and/or documents.  With or without

3    the Stipulation, Defendants are required (and do) provide inmates with constitutional care.

4    Whether Defendants are obligated to monitor compliance with the Stipulation is,

5    therefore, irrelevant to the constitutional provision of inmate healthcare.

6         **D.**    <u>**Plaintiffs Concede the Court Failed to Issue an Order to Show Cause**</u>
     <u>**Prior to its Decision to Appoint a Rule 706 Expert.**</u>[8]

7    

8           Plaintiffs concede the Court is required to issue an order to show cause prior to

9    appointment of a Rule 706 expert, but argue the error was harmless because the court has

10   not yet selected the expert, and Defendants were previously heard on this issue. (Dkt.
     2981 at 16.)  These arguments are misplaced.

11   

12          Rule 706(a) states: "On a party's motion or on its own, the court may order the

13   parties to show cause why expert witnesses should not be *appointed* and may ask the

14   parties to submit *nominations*."  Fed. R. Evid. 706(a) (emphasis added).   Plaintiffs'

15   Response conflates "appointment" with "nomination."   Plaintiffs argue Defendants'

16   Motion is premature because the Court only required the parties to submit names

17   (nomination), but "the Court has not yet appointed an expert" (appointment).  (Dkt. 2981

18   at 16.)   While the Court has not yet decided *which* expert to appoint, the Court has

19   decided to retain an expert:

20               To provide confidence, the **Court will retain a rule 706**
                 **expert**, paid for by Defendants, who will review the entire

21               monitoring process . . . **the court has determined that an**
                 **expert is necessary** to evaluate the efficacy and reliability of

22               the Monitoring Guide and its procedures . . .

23   (Dkt. 2900 at 12, emphasis added.)

24   

25   _____

26      [8] Plaintiffs argue Defendants' Motion was improperly brought under Rule 60
     because it is not a final, appealable order.  (Dkt. 2981 at 16.)  As discussed above, to the

27   extent the Court believes this Motion is more appropriately brought under LRCiv.7.2(g),
     the Court should treat it as such.  Confusingly, Plaintiffs must concede LRCiv. 7.2(g) is

28   not the appropriate procedural vehicle, as they filed a response to Defendants' Motion.
     LRCiv. 7.2(g)(2) does not allow responses unless so ordered by the Court.

The Court was therefore required to issue an order to show cause before its decision. Plaintiffs concede this was error, but argue it was harmless because Defendants had an opportunity to brief whether a Rule 706 expert was warranted. (Dkt. 2981 at 16-17.) Plaintiffs argument, however, is misleading as they cobble together six pages of discussion from a June 14, 2017 Status Hearing—where appointment of a Rule 706 expert on *staffing* and *compensation* was discussed—to conclude Defendants should not be heard on the very different issue of a Rule 706 expert with respect to the *specific monitoring deficiencies* outlined in the Court's Order. (*Id*. at 17.)

At the June 14, 2017 hearing, the Court ordered the parties to meet and confer and identify a Rule 706 expert who "the Court can retain, at Defendants' cost, to determine and guide the Court in crafting more precise measures to assist in compliance with the stipulation." (TR. 6/14/17 at 103:14-24; *see generally* 101:4-104:21.) Defendants requested an opportunity to brief the issue of staffing and compensation, which the Court allowed. (*Id*. at 104:22-105:10). Following this, Plaintiffs discussed their request for a Rule 706 expert related to methodology, monitoring, and auditing, as well as an expert for oversight of medical and mental health care experience. (*Id*. at 106:13-106:25.) The Court responded:

> Where I am currently is someplace between your two positions. I have decided to do this with respect to the failure to maintain in place and to be able to procure the desired employees, but I do need expert testimony about that. I don't know yet whether what you say otherwise is true for certain. I did have a strong sense that that was where I was, but then in light of the restrictions and the views that have been expressed to me and the briefing associated with that issue, it may made me revisit my position and think, well, those things are true. But one of the things I can do myself to try to address it is to become more engaged with respect to the monitoring component.

(TR. 6/14/17 at 107:1-107:12.)

In other words, the Court denied Plaintiffs' request for a Rule 706 expert on methodology, monitoring, auditing, and oversight of medical and mental health at that time, and vowed to be more engaged in the monitoring process. (*Id*.)

The remaining transcript citations in Plaintiffs' Response are just as withdrawn from their proper context.  For example, Plaintiffs argue the Court specifically "offered Defendants additional opportunities to present argument" related to a Rule 706 expert because the Court noted, "[s]o you can certainly feel free to submit anything you would like and the plaintiffs can respond . . . .  I will read what you submit.  I always do."  (Dkt. 2981 at 19.)  But these comments were in response to Defendants' request for briefing on the staffing and compensation expert issue, not for the monitoring program as Plaintiffs imply.  The Court ordered a specific type of expert:

> To review the entire monitoring process . . . include[ing], but [] not limited to, a review of eOMIS, the Monitoring Guide as written and as applied including the sampling process and the number of records reviewed, the ADC/Corizon challenge process, and the metadata/trail of any subsequent modifications

(Dkt. 2900 at 12.)

Defendants have not had an opportunity to be heard on the appointment of this type of expert for this issue.  Rule 706 permits appointment of an expert "only on motion for an order to show cause why such an expert should not be appointed."  Fed.R.Civ.P. 706.  "This ensures that the parties are afforded an opportunity to be heard on the matter."  29 Fed. Prac. & Proc. Evid. § 6302 (2d ed.).  Defendants have not yet been heard as to why the specific type of expert appointed by the Court in its June 22, 2018 Order should not be appointed.  Due process entitles Defendants to be heard. The Court should vacate its Order to allow Defendants that opportunity.

## II.    CONCLUSION

The Court should grant Defendants' Motion for Relief from Court Order re: Termination of Monitoring.  (Dkt. 2931.)

1

DATED this 24th day of August, 2018.

2

STRUCK LOVE BOJANOWSKI & ACEDO, PLC

3

4

By /s/Daniel P. Struck

5
Daniel P. Struck
Rachel Love

6
Timothy J. Bojanowski
Nicholas D. Acedo

7
3100 West Ray Road, Suite 300
Chandler, Arizona  85226

8

Office of the Arizona Attorney General

9
Michael E. Gottfried
Assistant Attorneys General

10
2005 N. Central Avenue
Phoenix, Arizona 85004-1592

11

*Attorneys for Defendants*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alison Hardy: ahardy@prisonlaw.com

Amelia M. Gerlicher: agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com

Amy B. Fettig: afettig@npp-aclu.org

Asim Dietrich: adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

Caroline N. Mitchell: cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

Corene T. Kendrick: ckendrick@prisonlaw.com; edegraff@prisonlaw.com

Daniel Clayton Barr: DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

David Cyrus Fathi: dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

Donald Specter: dspecter@prisonlaw.com

Jessica Pari Jansepar Ross: jross@azdisabilitylaw.org

John Howard Gray: jhgray@perkinscoie.com; slawson@perkinscoie.com

John Laurens Wilkes: jlwilkes@jonesday.com, dkkerr@jonesday.com

Jose de Jesus Rico: jrico@azdisabilitylaw.org

Kathleen E. Brody kbrody@acluaz.org

Kirstin T. Eidenbach: kirstin@eidenbachlaw.com

Maya Abela mabela@azdisabilitylaw.org

Rose Daly-Rooney: rdalyrooney@azdisabilitylaw.org

Sara Norman: snorman@prisonlaw.com

Rita K. Lomio: rlomio@prisonlaw.com

Victoria Lopez: vlopez@aclu.org

/ / /

/ / /

/ / /

12

1       I hereby certify that on this same date, I served the attached document by U.S.
2 Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

3     N/A

4                    /s/Daniel P. Struck