Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
*Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
*Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
*Desiree Licci, Joseph Hefner, Joshua Polson, and*
*Charlotte Wells, on behalf of themselves and all others*
*similarly situated*

**[ADDITIONAL COUNSEL LISTED ON**
**SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON**
**SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-ROS **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY JUNE 22, 2018 ORDERS (Doc. 2971)** |
| Plaintiffs, | |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

141184792.2

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................ 1

II.  PROCEDURAL BACKGROUND AND ORDERS AT ISSUE ............................ 3

    A.   History of the Case ................................................................ 4

    B.   Specific Orders ...................................................................... 4

III. ARGUMENT ...................................................................................... 6

    A.   Defendants Have Little to No Likelihood of Success on Appeal ................. 6

    B.   Defendants Cannot Show Irreparable Injury Absent A Stay ...................... 8

    C.   Plaintiffs Will Be Substantially Injured If the Orders Are Stayed ............. 10

    D.   Public Interest Considerations Demand That No Stay Issue ..................... 16

IV.  CONCLUSION ................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACLU of Nev. v. Masto,*
670 F.3d 1046 (9th Cir. 2012) ....................................................................... 9

*Addington v. U.S. Airline Pilots Ass'n,*
CV 08-1633-PHX-NVW, 2009 WL 2761928 (D. Ariz. Aug. 28, 2009) ....................... 6

*All. for the Wild Rockies v. Cottrell,*
632 F.3d 1127 (9th Cir. 2011) ....................................................................... 2

*Ariz. Dream Act Coal. v. Brewer,*
757 F.3d 1053 (9th Cir. 2014) ..................................................................... 11

*Balla v. Idaho State Bd. of Corr.,*
869 F.2d 461 (9th Cir. 1989) ......................................................................... 7

*Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.,*
289 F.3d 589 (9th Cir. 2002) ......................................................................... 8

*Bazuaye v. INS,*
79 F.3d 118 (9th Cir. 1996) ........................................................................... 6

*Blum v. Caldwell,*
446 U.S. 1311 (1980) (Marshall, J., in chambers) ................................... 10, 11

*Brown v. Plata,*
563 U.S. 493 (2011) ............................................................................... 12, 17

*Clinton v. Jones,*
520 U.S. 681 (1997) ................................................................................. 2, 6

*CMAX, Inc. v. Hall,*
300 F.2d 265 (9th Cir. 1962) ..................................................................... 2, 6

*Coleman v. Brown,*
960 F. Supp. 2d 1057 (E.D. Cal. 2013) .......................................................... 17

*Cooper v. Harris,*
-- U.S. --, 137 S. Ct. 1455 (2017) .................................................................. 7

*Dependable Highway Express, Inc. v. Navigators Ins. Co.,*
498 F.3d 1059 (9th Cir. 2007) ....................................................................... 6

*Duran v. Anaya,*
642 F. Supp. 510 (D.N.M. 1986) .................................................................. 17

*Elrod v. Burns,*
427 U.S. 347 (1976) (plurality opinion) ........................................................ 11

*Facebook, Inc. v. ConnectU, Inc.,*
No. C-07-01389-JW, 2008 WL 11357786 (N.D. Cal. Aug. 8, 2008) ..................... 2

1

2

**TABLE OF AUTHORITIES**
(continued)

**Pag(s)**

3

CASES (CONT.)

4

*Flynn v. Doyle,*

5
    630 F. Supp. 2d 987 (E.D. Wis. 2009)........................................................... 17

*Frew v. Hawkins,*

6
    540 U.S. 431 (2004)........................................................................................ 12

7

*FTC v. Standard Oil Co. of Cal.,*
    449 U.S. 232 (1980)........................................................................................ 10

8

*Harris v. Bd. of Supervisors, Los Angeles Cty.,*

9
    366 F.3d 754 (9th Cir. 2004) ...................................................................... 2, 11

10

*Hook v. Ariz. Dep't of Corr.,*
    107 F.3d 1397 (9th Cir. 1997), *as amended on reh'g and reh'g en banc*

11
    (Apr. 22, 1997), *cert denied*, 522 U.S. 865 (1997)......................................... 9

12

*Kelly v. Wengler,*
    822 F.3d 1085 (9th Cir. 2016) ...................................................................... 3, 5

13

*Landis v. N. Am. Co.,*

14
    299 U.S. 248 (1936)...................................................................................... 2, 6

15

*Leiva-Perez v. Holder,*
    640 F.3d 962 (9th Cir. 2011) ................................................................... 2, 6, 8

16

*Leyva v. Certified Grocers of Cal., Ltd.,*

17
    593 F.2d 857 (9th Cir. 1979) ........................................................................ 2, 6

18

*Lightfoot v. Walker,*
    797 F.2d 505 (7th Cir. 1986) ......................................................................... 9

19

*Lockyer v. Mirant Corp.,*

20
    398 F.3d 1098 (9th Cir. 2005) ....................................................................... 6

21

*Lopez v. Heckler,*
    713 F.3d 1432 (9th Cir. 1983) ...................................................................... 11

22

*Love v. Associated Newspapers, Ltd.,*

23
    611 F.3d 601 (9th Cir. 2010) ......................................................................... 7

24

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012) ....................................................................... 17

25

*Mendez v. Optio Sols., LLC,*

26
    239 F. Supp. 3d 1229 (S.D. Cal. 2017)....................................................... 2, 6

27

*Monterey Mech. Co. v. Wilson,*
    125 F.3d 702 (9th Cir. 1997) ....................................................................... 11

28

*Nationwide Biweekly Admin., Inc. v. Owen,*
    873 F.3d 716 (9th Cir. 2017) ....................................................................... 10

1

2

# TABLE OF AUTHORITIES
(continued)

**Pag(s)**

3

**CASES (CONT.)**

4

*Nken v. Holder,*
556 U.S. 418 (2009) ...................................................................................... 3

5

*PLC Trenching Co., LLC v. Newton,*
No. 6:11-CV-0515(GTS/DEP), 2012 WL 1832150 (N.D.N.Y. 2012) .......... 9

6

*Renegotiation Bd. v. Bannercraft Clothing Co.,*
415 U.S. 1 (1974) ........................................................................................ 10

7

8

*Rodde v. Bonta,*
357 F.3d 988 (9th Cir. 2004) ...................................................................... 11

9

*Se. Booksellers Ass'n v. McMaster,*
233 F.R.D. 456 (D.S.C. 2006) ...................................................................... 9

10

11

*Stone v. City and Cty. of San Francisco,*
145 F.R.D. 553 (N.D. Cal. 1993) .................................................................. 9

12

*United States v. Raines,*
362 U.S. 17 (1960) ...................................................................................... 17

13

14

*United States v. State of Wash.,*
761 F.2d 1419 (9th Cir. 1985) ...................................................................... 7

15

*United States v. Working,*
224 F.3d 1093 (9th Cir. 2000) (en banc) ...................................................... 7

16

17

18

**RULES**

19

Fed. R. Civ. P. 62(d) ...................................................................................... 9

20

21

**STATUTES**

22

18 U.S.C. § 3626(a)(1)(A) ...................................................................... 3, 12

23

18 U.S.C. § 3626(c)(2) .................................................................................. 3

24

18 U.S.C. § 3626(g)(1) .................................................................................. 3

25

18 U.S.C. § 3626(g)(6) .................................................................................. 3

26

27

28

1     Since the inception of this litigation, Defendants have sought repeatedly to obstruct

2 and delay the vindication of Plaintiffs' constitutional rights with groundless stay motions.[1]

3 All of these motions have been denied.[2]   Defendants' latest stay motion is similarly

4 meritless and should meet the same fate.

5 **I.    INTRODUCTION**

6     The more than 33,000 women, men, and children incarcerated in Defendants' ten

7 prisons continue to face an ongoing risk of illness, injury, and death due to Defendants'

8 persistent failure to comply with the agreed-upon requirements of the Stipulation.  [*See,*

9 *e.g.*, Doc. 2496; Doc. 2531-1 at 16-40; Doc. 2628-1; 2/28/18 Tr. at 335:8-371:7

10 (discussing mortality reviews in which Defendants concluded that class member deaths

11 could have been "prevented or delayed by more timely intervention"); *see also*

12 Declaration of Corene Kendrick, filed herewith ("Kendrick Decl."), Exs. 5-9]  Plaintiffs

13 would be substantially prejudiced by a stay, which would allow Defendants' ongoing

14 violations of the Stipulation—documented as recently as Defendants' filing last week of

15 June 2018 compliance data (*see generally* Doc. 2988-1)—to continue unabated.

16     Against these grave risks to Plaintiffs (none of which Defendants acknowledge in

17 their Motion), Defendants argue only that it will cost money and cause administrative

18 inconvenience to comply with some of the Court's June 22 orders.  [*See* Doc. 2971 at 18-

19

20 --------

21     [1] [*See, e.g.*, Doc. 50 at 14 ("Defendants request a six-to-nine month stay in the proceedings with respect to the medical claims"); Doc. 532 ("Emergency Motion to Stay

22 Proceedings Pending Rule 23(f) Appeal"); Doc. 2642 ("Defendants' Motion for Magistrate Judge Duncan to Disqualify Himself and Motion for Reassignment of Case for

23 Evidentiary and Contempt Hearings, or, in the Alternative, to Stay Proceedings"); Ninth Circuit No. 13-16396, Doc. 7-1 ("Emergency Motion" to stay district court proceedings

24 pending appeal)]  All citations to documents filed on the Court's docket are to the page number assigned by the Electronic Case Filing system, and not the page of the document

25 therein.

    [2] [*See* Doc. 175 at 10 ("Defendants cite no authority under which a stay would be

26 appropriate and the Court finds there is no basis for a stay"); Doc. 567 (denying stay); Doc. 2643 at 1-2 ("Defendants have provided neither an adequate justification for the stay

27 request nor did any of the issues alleged in the Motion to Stay arise on an emergent basis. Accordingly, the Motion to Stay is denied"); Ninth Circuit No. 13-16396, Doc. 20

28 ("Appellants' Emergency Motion to Stay District Court Proceedings is DENIED")]

23]  This is an insufficient basis for a stay, because when "[f]aced with [] a conflict between financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *Harris v. Bd. of Supervisors, Los Angeles Cty.*, 366 F.3d 754, 766 (9th Cir. 2004) (quoting *Lopez v. Heckler*, 713 F.3d 1432, 1437 (9th Cir. 1983)).  Stays are particularly disfavored when a party's constitutional or statutory rights are at stake, as they are here for Plaintiffs.[3]

Defendants' stay motion also relies upon the wrong legal standard.  Defendants cite *Landis v. N. Am. Co.*, 299 U.S. 248 (1936), (Doc. 2971 at 16), but *Landis* provides the standard for a stay of proceedings while parallel or related proceedings are pending.[4] Defendants here seek a stay pending appeal, which is governed by a different standard:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise

---

[3] Defendants inexplicably waited seven weeks to file their Motion for a Stay. "[T]he court may consider that delay in filing an appeal and seeking a stay vitiates the force of allegations of irreparable harm."  *Facebook, Inc. v. ConnectU, Inc.*, No. C-07-01389-JW, 2008 WL 11357786, at *4 (N.D. Cal. Aug. 8, 2008) (citing *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977) (Marshall, J., in chambers) (delay "vitiates much of the force of their allegations of irreparable harm")).

[4] Defendants' other cases are similarly inapposite. *Clinton v. Jones*, 520 U.S. 681 (1997), involved the President's contention that a civil suit against him should be stayed until he left office. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011), involved the standard for granting a preliminary injunction, not a stay pending appeal. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857 (9th Cir. 1979), involved a stay pending the outcome of an arbitration, not a stay pending appeal. *CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962), involved a stay pending resolution of a dispute before the Civil Aeronautics Board. *Mendez v. Optio Sols., LLC*, 239 F. Supp. 3d 1229 (S.D. Cal. 2017) involved a stay of proceedings pending appeal of a similar issue in a different case.

1   result to the appellant[,]" and the party seeking a stay bears the burden of proof.  *Nken*,

2   556 U.S. at 427, 433-34.  Defendants fall far short of meeting this standard.  First, they

3   fail to make a strong showing that they are likely to succeed on the merits.  Second, they

4   fail even to allege, let alone show, irreparable injury absent a stay.  Third, a stay would

5   substantially injure Plaintiffs, as the Court's basis for its June 22 orders was the ongoing

6   violations of the Stipulation that place class members at unreasonable risk of harm,

7   including serious injury or death.  Finally, the public interest militates against a stay.

8   ## II.   PROCEDURAL BACKGROUND AND ORDERS AT ISSUE

9       Defendants' version of the history of the case and the genesis of the Court's orders

10  (Doc. 2971 at 7-16) demands correction.[5]  Contrary to Defendants' characterization of

---

12   [5] As a threshold matter, Defendants repeat their oft-proffered and unsuccessful
13   contention that "[t]here has never been a finding that Defendants have committed any
     constitutional violation."  [Doc. 2971 at 8]  It is true, of course, that the Stipulation
14   provides that it is not "an admission of any wrongdoing or liability" by Defendants.
     [Doc. 1185 ¶ 5]  But a party need not admit liability to be found liable, and the Court
15   made all necessary findings under the Prison Litigation Reform Act, including finding that
     the relief set forth in the Stipulation "is the least intrusive means necessary to correct the
16   violation of the Federal right of the Plaintiffs," at the parties' joint stipulation and request.
     [*See* Doc. 1458 at 6; Doc. 1185 ¶ 36; 18 U.S.C. § 3626(a)(1)(A)]
17       Defendants also argue, not for the first time, that "[t]he Stipulation is a private
     settlement agreement, not a judicial order or consent decree," and therefore "Defendants
18   cannot be held in civil contempt for violating the Stipulation…"  [Doc. 2971 at 20]
     Plaintiffs have explained why this argument fails (*see* Doc. 1882 at 8):  The Stipulation
19   provides prospective relief to the Plaintiffs, was approved by this Court, and was
     memorialized by the Court's signing of a jointly submitted proposed Order.  [Doc. 1458 at
20   6]  The Stipulation and memorializing Order expressly provide the Court with broad
     remedial powers to enforce the Stipulation.  [Doc. 1185 ¶¶ 35-36; Doc. 1458 at 6]  The
21   June 22 orders arise from this remedial power, and Defendants were held in civil
     contempt of the Court's OSC, not the Stipulation itself.  [Doc. 2898 at 3, citing Doc. 2373
22   at 3]
         The fact that the parties' settlement is titled a "Stipulation" is not dispositive.  The
23   name does not dictate the legal force of a subsequent court order approving the settlement.
     Under the PLRA, a "private settlement agreement" is "an agreement entered into among
24   the parties that is not subject to judicial enforcement other than the reinstatement of the
     civil proceeding that the agreement settled."  18 U.S.C. § 3626(g)(6).  By contrast, a
25   "consent decree" is "any relief entered by the court that is based in whole or in part upon
     the consent or acquiescence of the parties but does not include private settlements."  *Id*.
26   § 3626(g)(1).  A court may not "enter or approve a consent decree" without the PLRA
     findings set forth in 18 U.S.C. § 3626(a)(1)(A).  *Id*. § 3626(c)(2).
27       Here, the Stipulation includes "reference to § 3626(a)(1)(A)," and "thus evinces the
28   parties' intention to make the settlement agreement enforceable in federal court."  *Kelly v.*

---

141184792.2                              -3-

these orders spontaneously springing forth like the birth of Athena, the Court based the orders upon many months of hearings, the testimony of dozens of witnesses, and tens of thousands of pages of documentary evidence.

### A.   History of the Case

Defendants' recitation of the history of the case abruptly ends with "[t]wo months before trial, the Clerk reassigned the case to Judge Diane J. Humetewa. (Dkt. 1074.)" [Doc. 2971 at 7-8]   Defendants fail to acknowledge that as part of the settlement in October 2014, the parties *jointly* requested, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, that Judge Humetewa reassign the case to Magistrate Judge David K. Duncan for "all further proceedings [. . .] because his constructive participation in the settlement negotiations has provided him with a unique ability to effectuate the parties' intent in any further proceedings," (Doc. 1186 at 2), which she did.  [Doc. 1194] Judge Duncan presided over the case until his retirement for medical reasons in June 2018, and immersed himself in ensuring that Defendants lived up to the promises they had made to Plaintiffs in the Stipulation.  In the 18 months prior to the entry of the June 22, 2018 orders, Judge Duncan presided over more than 1,000 docket filings and 46 days of status, evidentiary, and/or contempt hearings where the parties submitted more than 300 exhibits into evidence, and presented live testimony from at least 53 witnesses.  [*See* Case Docket (1/1/17-6/22/18); *see also* Doc. 2981 at 11]   Defendants' buyer's remorse over "the judge they chose to hold their feet to the fire," (Doc. 2791 at 1), does not erase his role in the case, nor his immersion in the issues that informed the June 22 orders.

### B.   Specific Orders

**Docs. 2898, 2899**:  Defendants characterize the Court's Contempt Order that they continue to provide data on all instances of noncompliance with the specific performance measures in the Court's October 10, 2017 Order to Show Cause ("OSC") as a "significant

---

*Wengler*, 822 F.3d 1085, 1095 (9th Cir. 2016) (holding the district court had jurisdiction under the PLRA to enforce "stipulation for dismissal" that incorporated parties' "settlement agreement"); *see* Doc. 1185 ¶ 36.

1    departure from the current sampling and reporting process in place," (Doc. 2971 at 12),

2    but it was simply a directive to Defendants that they continue to report the data mandated

3    by the OSC.  [Doc. 2898 at 24, referencing Doc. 2373 at 3-4]  Despite the clear order to

4    provide ongoing data, Defendants willfully ignore the order and have not provided any

5    information for any month since February 2018.  [Doc. 2786-2]  Plaintiffs notified

6    Defendants of the failure to comply with the Court's order; Defendants assert the word

7    "continue" in the Contempt Order is "ambiguous."  [Kendrick Decl. ¶¶ 2-4, Exs. 1-4]

8        **Docs. 2900, 2901**:  Defendants again attack and mischaracterize these orders.

9    [Doc. 2971 at 13-14]  To avoid repetition, Plaintiffs invite the Court's attention to

10   Doc. 2981 at 8-22 (Plaintiffs' Response to Defendants' Motion for Relief From Court

11   Order Re: Termination of Monitoring) and Doc. 2982 at 4-8 (Plaintiffs' Response to

12   Defendants' Motion for Relief From Court Order Re: HNR Boxes), and citations therein,

13   for a detailed history of the basis for these orders.

14       **Docs. 2902, 2903**:  The Court granted Plaintiffs' Motion for Attorneys' Fees and

15   Costs, and found a 2.0 multiplier appropriate based upon *Kelly v. Wengler*, 822 F.3d 1085

16   (9th Cir. 2016).

17       **Doc. 2904**:  This order directed Defendants to submit a plan for how they would

18   implement the Court's Rule 706 expert's recommendations.  Defendants mischaracterize,

19   attack, and provide no context for the conclusions and recommendations in the final report

20   of the Court's Rule 706 expert.  [Doc. 2971 at 14-15; *id*. at fns. 6-8]  Plaintiffs direct the

21   Court to the expert report itself, filed on the docket at Doc. 2940-1 at 3-176, and the

22   summary of recommendations (and explanations) at 22-24.  Defendants also claim that

23   Judge Duncan ordered Defendants to file this implementation plan "despite his prior order

24   acknowledging he had no authority under the Stipulation to require Defendants to do

25   this." [Doc. 2971 at 15]  This is patently false.  The cited sources say nothing about the

26   Court's authority to order Defendants to file an implementation plan; indeed, they pre-

27   date the Court's appointment of its Rule 706 expert by many months.

28

1   **Doc. 2905:** The Court's Order directed both parties to submit names of persons for

2   the Court's consideration as a Rule 706 correctional health care expert to advise on how

3   Defendants can comply with certain performance measures at certain institutions.

4   **III.  ARGUMENT**

5   To obtain a stay pending appeal, Defendants must demonstrate: (1) a strong

6   showing that they are likely to succeed on the merits of the appeal; (2) that they will be

7   irreparably injured absent a stay; (3) that issuance of the stay will not substantially injure

8   Plaintiffs; and (4) that the stay is in the public interest.  *See Leiva-Perez*, 640 F.3d at 964.[6]

9   Defendants bear the burden to show the need for a stay, and they fail to do so.[7]

10   **A.  Defendants Have Little to No Likelihood of Success on Appeal.**

11   Defendants rehash their disagreement with the Court's June 22, 2018 orders, but

12   fail to marshal any serious argument that they are likely to prevail in their appeals of those

13   orders.  Instead, they focus on past appeals that are fully briefed and argued, and were

14   submitted to the Ninth Circuit as of October 2017, as a basis to stay the Court's more

---

[6] Defendants' own cases make clear that a stay is an extraordinary remedy and should rarely be granted. *See, e.g.*, *Clinton*, 520 U.S. at 707-08 (holding that stay imposed by lower court was an abuse of discretion).  *Landis* itself makes plain that a stay of proceedings should only be granted "in rare circumstances."  299 U.S. at 255; *see also Mendez*, 239 F. Supp. 3d at 1233 (same, denying stay)); *Addington v. U.S. Airline Pilots Ass'n*, CV 08-1633-PHX-NVW, 2009 WL 2761928, at *1 (D. Ariz. Aug. 28, 2009) (stay pending appeal "is an extraordinary remedy that should be granted sparingly").  "'[I]f there is even a fair possibility that the stay ... will work damage to some one else,' the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity.'" *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Landis*, 299 U.S. at 255).

Defendants further rely on *Leyva*, 593 F.2d 857, and *CMAX*, 300 F.2d at 268. [Doc. 2971 at 16, 18]  But in *Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005), the Ninth Circuit noted that neither *CMAX* nor *Leyva* involved a request for injunctive or declaratory relief, for which a stay would almost certainly create a harm which would weigh heavily against granting the stay.  *See id.* at 1112 ("Unlike the plaintiffs in *CMAX* and *Leyva*, who sought only damages for past harm, the Attorney General seeks injunctive relief against ongoing and future harm.").

[7] Defendants' Motion completely ignores the third and fourth prongs of the stay analysis, and for that reason alone, it should be denied.  Given Defendants' failure to argue them in their Motion, they are foreclosed from doing so in their Reply.  *See Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) ("[I]ssues raised for the first time in the reply brief are waived") (citing *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990)).

1  recent June 2018 orders.  [Doc. 2971 at 11-12, 16-17]  This is a nonsensical and untimely

2  basis for a stay, given the ten months since the appeals were submitted (and Defendants

3  first appealed these older orders in 2016).  Defendants also argue the Court "should wait

4  to see" if the Ninth Circuit finds "valid" their far-fetched and belated supplemental

5  argument to the Court of Appeals that Judge Duncan had no subject matter jurisdiction for

6  almost four years.  [*Id*. at 17-18]

7        Defendants face an uphill climb on appeal.  Doc. 2904, for example, which directs

8  Defendants to submit an implementation plan for the Rule 706 expert's recommendations,

9  is not an appealable order.  *See Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th

10  Cir. 1989) (order requiring submission of a remedial plan is not appealable)[8]  Other orders

11  will be reviewed for abuse of discretion.  *See United States v. State of Wash.*, 761 F.2d

12  1419, 1421 (9th Cir. 1985) ("We review the district court's decision to hold the state in

13  contempt under the abuse of discretion standard"); *Love v. Associated Newspapers, Ltd.*,

14  611 F.3d 601, 614 (9th Cir. 2010) ("We review an award of attorney's fees for abuse of

15  discretion").  Defendants fail to allege or show that the Court has abused its discretion.

16        Similarly, a district court's findings of fact "are subject to review only for clear

17  error."  *Cooper v. Harris*, -- U.S. --, 137 S. Ct. 1455, 1465 (2017) (citations omitted).

18  "Under that standard, [the reviewing court] may not reverse just because [it] would have

19  decided the [matter] differently.  A finding that is 'plausible' in light of the full record—

20  even if another is equally or more so—must govern."  *Id.* (internal quotation marks and

21  citation omitted); *see also United States v. Working*, 224 F.3d 1093, 1102 (9th Cir. 2000)

22  (en banc) ("Where there are two permissible views of the evidence, the factfinder's choice

23  between them cannot be clearly erroneous.") (citations and quotation marks omitted).

24  Defendants fail to cite a single factual finding they claim to be clearly erroneous, and their

25

26

_____

27        [8] The Orders at Docket 2900 and 2905 directing the parties to submit names and
CVs of candidates to be considered by the Court for possible appointment as Rule 706

28  experts are similarly not appealable.

1  complaint that Judge Duncan should have credited their evidence rather than Plaintiffs'

2  (*see* Doc. 2971 at 21-22) will not get them far on appeal.

3  **B.    Defendants Cannot Show Irreparable Injury Absent A Stay**

4  Without a showing of irreparable harm tipping "sharply" in the movant's favor, a

5  stay "may not issue, regardless of [the movant's] proof regarding the other stay factors."

6  *Leiva-Perez*, 640 F.3d at 965, 968, 971.  Perhaps recognizing they cannot meet this heavy

7  burden, Defendants do not allege or show that they will be irreparably harmed absent a

8  stay.  And they fail to provide declarations or any other evidence in support of their dire

9  predictions of "extraordinary administrative burden" and "significant expense to the

10  taxpayers."  [Doc. 2971 at 7; *see also id.* at 20-21 (no declaration or other evidentiary

11  support for claims regarding the time allegedly required to track Defendants'

12  noncompliance with the Stipulation)]  Such unsupported assertions have no weight; "the

13  arguments and statements of counsel are not evidence."  *Barcamerica Int'l USA Tr. v.*

14  *Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002).

15  Defendants assert that implementing the Rule 706 expert's recommendations to

16  improve the recruitment and retention of health care staff will result in unspecified

17  "permanent effects."  [Doc. 2971 at 18]  But this is rank speculation, again unsupported

18  by declarations or any other evidence.  More fundamentally, the Court has not yet ordered

19  Defendants to implement these recommendations; it only ordered them to "file their plan

20  to implement the recommendations" (Doc. 2904 at 1)—an order with which Defendants

21  claim they complied.  [*See* Doc. 2971 at 15:12]

22  Defendants insist it is "simply not possible" to track noncompliance with certain

23  performance measures as required by the Contempt Order.  [*Id.* at 21]  This unsupported

24  claim, which Defendants have made before, (*see* Docs. 2135, 2135-1, 2396, 2936-1), is

25  undercut by the fact that Defendants have, in fact, provided these data to the Court.

26  [Docs. 2173, 2600, 2650, 2664, 2675, 2747, 2786-2, 2815; *see also* Doc. 2408 at 3-5

27  (Plaintiffs' summary of Defendants' past impossibility claims)]

28

1    Finally, the Court should not stay the attorney fee award (Doc. 2902). If

2 Defendants had posted a *supersedeas* bond, they would be entitled to a stay of the attorney

3 fee award as a matter of right. *See* Fed. R. Civ. P. 62(d); *ACLU of Nev. v. Masto*, 670

4 F.3d 1046, 1066 (9th Cir. 2012). Given that Defendants chose—for reasons they do not

5 explain—to not comply with the Rule, the Court should deny the stay. *See Masto*, 670

6 F.3d at 1066-67 (no abuse of discretion when district court denied stay "based on the

7 State's failure to comply with the express requirements of Rule 62(d)").[9]

8    Defendants offer no persuasive reason why the Court should grant a stay despite

9 their failure to comply with Rule 62(d), and courts routinely deny stays to parties who

10 choose not to avail themselves of the Rule 62(d) procedure. *See Masto*, *supra*; *Lightfoot*

11 *v. Walker*, 797 F.2d 505, 506 (7th Cir. 1986) (prison conditions case); *Se. Booksellers*

12 *Ass'n v. McMaster*, 233 F.R.D. 456, 460 (D.S.C. 2006) ("although Defendants argue that

13 the bond requirement should be excused because the state retains the financial ability to

14 pay, the court finds that Defendants have not offered any valid reason to excuse the bond

15 requirement").

16    Defendants' declarant concedes that a legislative appropriation may be necessary to

17 allow ADC to pay the judgment. [Doc. 2971-1 ¶ 5] This was precisely the ground relied

18 upon for denying a stay in the absence of a bond in both *Lightfoot*, 797 F.2d at 506-07,

19 and *McMaster*, 233 F.R.D. at 459-60. Moreover, ADC's past behavior should give the

20 Court little basis for confidence that Defendants would pay the attorney fees judgment

21 promptly if affirmed on appeal. *See Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397 (9th Cir.

22

23    [9] By contrast, Defendants are not entitled to a stay of the contempt fines, even upon

24 posting a *supersedeas* bond. *See Stone v. City and Cty. of San Francisco*, 145 F.R.D. 553,
560 (N.D. Cal. 1993) (civil contempt order that imposes fines is more akin to a judgment

25 awarding injunctive relief than a judgment awarding money damages); *PLC Trenching
Co., LLC v. Newton*, No. 6:11-CV-0515(GTS/DEP), 2012 WL 1832150, at *1 (N.D.N.Y.

26 2012) ("a party taking an appeal from a district court's civil contempt order issuing
sanctions arising from a violation of an injunction does not have an automatic right to a

27 stay of the monetary sanctions by bond") (emphasis omitted); *id.* at *2 ("allowing a party
to stay a civil contempt judgment arising from a violation of an injunction would

28 undermine and impede the ability of the Court to enforce the injunction").

1   1997), *as amended on reh'g and reh'g en banc* (Apr. 22, 1997), *cert denied*, 522 U.S. 865

2   (1997) (Arizona Legislature enacted statute barring payment of federal court special

3   master's fees absent legislative appropriation; after ADC Director was held in contempt

4   for refusing to pay the master's fees, ADC unsuccessfully appealed to the Ninth Circuit

5   and unsuccessfully sought certiorari in the U.S. Supreme Court).   Unless and until

6   Defendants comply with Rule 62(d), the stay should be denied.

7       In short, Defendants have failed to provide any evidence whatsoever that they will

8   be irreparably harmed absent a stay.[10]

9       **C.   Plaintiffs Will Be Substantially Injured If the Orders Are Stayed**

10       Defendants unsurprisingly ignore the requirement that a party seeking a stay must

11   show definitively that no other parties will be substantially injured by a stay, as they

12   cannot make such as showing.   In fact, the overwhelming evidence of injury to Plaintiffs

13   shows the need to deny Defendants' motion, and underscores the need for the June 22,

14   2018 Orders compelling Defendants—almost four years after agreeing to do so—to

15   comply with the requirements of the Stipulation and their constitutional obligations.

16       Even assuming for the sake of argument that a stay would reduce Defendants'

17   expenses, the ongoing and resultant risk of harm, physical injury, and death to Plaintiffs

18   far outweighs Defendants' speculative budgetary or administrative concerns.   In *Blum v.*

19   *Caldwell*, 446 U.S. 1311, 1315 (1980) (Marshall, J., in chambers), the Supreme Court

20   denied the State of New York's request for a stay of an injunctive order when state

21   officials argued (with minimal support, as here) that compliance with the order would

22   require the state to pay up to $150 million a year more in Medicaid benefits to recipients:

23

24

25       [10] Defendants' self-inflicted expenses incurred litigating their multitude of appeals
     (or their multiple motions for reconsideration, or this stay motion) similarly are not
26   irreparable harm.   *See Renegotiation Bd. v. Bannercraft Clothing Co*., 415 U.S. 1, 24
     (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not
27   constitute irreparable injury") (citation omitted); *FTC v. Standard Oil Co. of Cal*., 449
     U.S. 232, 244 (1980) (same); *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716,
28   735 n.20 (9th Cir. 2017) (same).

On the other side of the balance are the life and health of the members of this class: persons who are aged, blind, or disabled and unable to provide for necessary medical care because of lack of resources. The District Court noted that some of the members of the class have already died since this suit was filed, and the denial of necessary medical benefits during the months pending filing and disposition of a petition for writ of certiorari could well result in the death or serious medical injury of members of this class. The balance of equities therefore weighs in favor of the respondents.

*Id.* at 1316. *See Harris*, 366 F.3d at 766 (plaintiffs' harm, including "pain, infection, amputation, medical complications, and death due to delayed treatment," outweighed harm to County of budget shortfall); *Lopez*, 713 F.2d at 1437 ("the physical and emotional suffering shown by plaintiffs in the record before us is far more compelling than the possibility of some administrative inconvenience or monetary loss to the government"); *Rodde v. Bonta*, 357 F.3d 988, 999 (9th Cir. 2004) (balance of hardships tipped in favor of plaintiffs who faced "delayed and/or complete lack of necessary treatment, and increased pain and medical complications" if a stay issued).

Defendants' continued noncompliance with the Stipulation and failure to provide constitutionally adequate health care to people in ADC custody constitute irreparable injury to Plaintiffs. *See Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) ("an alleged constitutional infringement will often alone constitute irreparable harm"); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) (loss of constitutional rights, "for even minimal periods of time, unquestionably constitutes irreparable injury") (plurality opinion); *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) ("[I]t would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available") (quoting *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (ellipses in original)).

Moreover, there is a considerable concrete risk of harm to class members who rely entirely on the State of Arizona for their health care should the Court stay the orders. Class members continue to suffer from serious—and sometimes fatal—lapses in health care. The Court has a duty to enforce the Stipulation, which was approved as necessary to

remedy constitutionally inadequate medical, dental, and mental health care.  [Doc. 1458 at 6; Doc. 1185 at 13 ¶ 36; 18 U.S.C. § 3626(a)(1)(A); *see Brown v. Plata*, 563 U.S. 493, 511 (2011) ("Courts . . . must not shrink from their obligation to enforce the constitutional rights of . . . prisoners." (internal quotation marks and citation omitted)); *Frew v. Hawkins*, 540 U.S. 431, 440 (2004) ("Federal courts are not reduced to approving consent decrees and hoping for compliance.")]

Defendants' blithe contention that Plaintiffs will not be harmed by a stay because "Defendants will continue to comply with the Stipulation" (Doc. 2971 at 21) is nothing short of jaw-dropping.  It is precisely because of Defendants' ***pervasive and intractable failures to comply with the Stipulation***" (Doc. 2373 at 1) (emphasis added), that the Court issued the OSC and subsequently held them in contempt.  Defendants' recent filing with the Court showing their self-reported rates of noncompliance with the Stipulation includes

> certain performance measures that implicate life-and-death matters for the Plaintiffs, such as the uninterrupted provision of prescribed medications, care for inmates who were in a hospital/ER or who are in the prison's infirmary, inmates who have abnormal values in a diagnostic report, inmates who need urgent and routine specialty consultations, and inmates with chronic diseases.

[Doc. 2643 at 5 (Order Denying Motion for Stay)(quotations and citations omitted)][11]

Specifically, Defendants' recent filing documenting their noncompliance in June 2018 with the Stipulation, (Doc. 2988-1), confirms the need for the Court's June 22, 2018 Orders.  Examples of noncompliance in June include, but are not limited to, the following:

- **PM 12** (Pharmacy) ("Medical record will contain documentation of refusals or 'no shows.'") [Doc. 1185-1 at 8]
  - **Eyman: 33% compliant.**  [Doc. 2988-1 at 17]
  - **Florence: 76% compliant.**  [*Id.* at 20]

- **PM 14** (Pharmacy) ("Any refill for a chronic care or psychotropic medication that is requested by a prisoner between three and seven business days prior to the

_____

[11] Defendants' claim of compliance with other performance measures, (Doc. 2971 at 15 n. 7), is unsupported by any evidence; it also ignores, once again, that the Court has invalidated Defendants' monitoring methodology for a number of Performance Measures, and that Defendants have refused to recalculate compliance using the correct, Court-ordered methodology.  [*See* Doc. 2981 at 12-13]

prescription running out will be completed in a manner such that there is no interruption or lapse in medication") [Doc. 1185-1 at 8]
  o **Florence: 17% compliant**. [Doc. 2988-1 at 31]

- **PM 15** (Pharmacy) ("Inmates who refuse prescribed medication (or no show) will be counseled by a [Qualified Health Care Professional] after three consecutive refusals.") [Doc. 1185-1 at 9]
  o **Florence: 68% compliant**. [Doc. 2988-1 at 39]
  o **Lewis: 65% compliant**. [*Id.* at 40]

- **PM 24** (Equipment) ("Emergency medical response bags are checked daily, inventoried monthly, and contain all required essential items.") [Doc. 1185-1 at 9]
  o **Lewis: 13% compliant**. [Doc. 2988-1 at 52]

- **PM 35** (Intersystem Transfers) ("All inmate medications (KOP and DOT) will be transferred with and provided to the inmate or otherwise provided at the receiving prison without interruption.") [Doc. 1185-1 at 10][12]
  o **Eyman: 72% compliant**. [Doc. 2988-1 at 55]

- **PM 39** (Access to Care) ("Routine provider referrals will be addressed by a Medical Provider and referrals requiring a scheduled provider appointment will be seen within fourteen calendar days of the referral") [Doc. 1185-1 at 10][13]
  o **Eyman: 60% compliant**. [Doc. 2988-1 at 79]
  o **Lewis: 74% compliant**. [*Id.* at 83]
  o **Yuma: 74% compliant**. [*Id.* at 87]

- **PM 40** (Access to Care) ("Urgent provider referrals are seen by a Medical Provider within 24 hours of the referral.") [Doc. 1185-1 at 10]
  o **Eyman: 50% compliant**. [Doc. 2988-1 at 89]

- **PM 42** (Access to Care) ("A follow-up sick call encounter will occur within the time frame specified by the Medical or Mental Health Provider") [Doc. 1185-1 at 10]
  o **Eyman: 42% compliant**. [Doc. 2988-1 at 94]
  o **Florence: 63% compliant.** [*Id.* at 98]
  o **Lewis: 56% compliant**. [*Id.* at 101]

- **PM 44** ("Inmates returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital shall have the hospital's treatment recommendations reviewed and acted upon by a medical provider within 24 hours") [Doc. 1185-1 at 11]
  o **Eyman: 31% compliant**. [Doc. 2988-1 at 105][14]
  o **Florence: 79% compliant**. [*Id.* at 108]
  o **Lewis: 58% compliant**. [*Id.* at 110]

- **PM 46** (Diagnostic Services) ("A Medical Provider will review the diagnostic report, including pathology reports, and act upon reports with abnormal values

---

[12] The OSC and Contempt Order include PM 35 at Eyman, Florence, Lewis, and Tucson. [Doc. 2373 at 3]
[13] The OSC and Contempt Order include PM 39 at Lewis. [Doc. 2373 at 3]
[14] The OSC and Contempt Order include PM 44 at Eyman. [Doc. 2373 at 3]

within five calendar days of receiving the report at the prison.")  [Doc. 1185-1 at 11]
  o **Yuma: 60% compliant**.  [Doc. 2988-1 at 126]

- **PM 47** (Diagnostic Services) ("A Medical Provider will communicate the results of the diagnostic study to the inmate upon request and within seven calendar days of the date of the request") [Doc. 1185-1 at 11][15]
  o **Eyman: 68% compliant**.  [Doc. 2988-1 at 129]
  o **Lewis: 17% compliant**.  [*Id.* at 135]

- **PM 49** (Specialty Care) ("Patients for whom a provider's request for specialty services is denied are told of the denial by a Medical Provider at the patient's next scheduled appointment, no more than 30 days after the denial, and the Provider documents in the patient's medical record the Provider's follow-up to the denial.") [Doc. 1185-1 at 11]
  o **Eyman: 50% compliant**.  [Doc. 2988-1 at 149]
  o **Tucson: 58% compliant**.  [*Id.* at 156]

- **PM 50** (Specialty Care) ("Urgent specialty consultations and urgent specialty diagnostic services will be scheduled and completed within 30 calendar days of the consultation being requested by the provider.") [Doc. 1185-1 at 11][16]
  o **Florence: 54% compliant**.  [Doc. 2988-1 at 159]
  o **Tucson: 74% compliant**.  [*Id.* at 164]

- **PM 51** (Specialty Care) ("Routine specialty consultations will be scheduled and completed within 60 calendar days of the consultation being requested by the provider.") [Doc. 1185-1 at 11][17]
  o **Florence: 79% compliant**.  [Doc. 2988-1 at 169]

- **PM 52** (Specialty Care) ("Specialty consultation reports will be reviewed and acted on by a Provider within seven calendar days of receiving the report.")  [Doc. 1185-1 at 11]
  o **Eyman: 66% compliant**.  [Doc. 2988-1 at 175]
  o **Florence: 72% compliant**.  [*Id.* at 180][18]

- **PM 54** (Chronic Care) ("Chronic disease inmates will be seen by the provider as specified in the inmate's treatment plan, no less than every 180 days unless the provider documents a reason why a longer time frame can be in place.") [Doc. 1185-1 at 11]
  o **Eyman: 80% compliant**.  [Doc. 2988-1 at 189][19]

- **PM 66** (Infirmary Care) ("In an IPC, a Medical Provider encounters will occur at a minimum every 72 hours") [Doc. 1185-1 at 12]

---

[15] The OSC and Contempt Order include PM 47 at Eyman, Florence, Lewis, Phoenix, Perryville, and Tucson.  [Doc. 2373 at 3]
[16] The OSC and Contempt Order include PM 50 at Florence.  [Doc. 2373 at 3]
[17] The OSC and Contempt Order include PM 51 at Eyman, Florence, and Tucson. [Doc. 2373 at 3]
[18] The OSC and Contempt Order include PM 52 at Florence. [Doc. 2373 at 3]
[19] The OSC and Contempt Order include PM 54 at Eyman. [Doc. 2373 at 4]

- o **Tucson: 80% compliant**. [Doc. 2988-1 at 207][20]

- **PM 67** (Infirmary Care) ("In an IPC, Registered nurses will conduct and document an assessment at least once every shift.  Graveyard shift assessments can be welfare checks.") [Doc. 1185-1 at 12]
    - o **Lewis: 60% compliant**. [Doc. 2988-1 at 209]
    - o **Tucson: 60% compliant**. [*Id.* at 212]

- **PM 72** (Medical Diets) ("Inmates who refuse prescribed diets for more than 3 consecutive days will receive follow-up nutritional counseling by a [Qualified Health Care Professional].") [Doc. 1185-1 at 13]
    - o **Eyman: 8% compliant**. [Doc. 2988-1 at 214]

But behind the sometimes abstract-sounding measures and compliance numbers are flesh and blood human beings utterly dependent upon Defendants for the delivery of medical, dental, and mental health care.  Class counsel, pursuant to their ethical obligations arising from the Court's appointment as counsel, regularly notify Defendants' attorneys of individuals who report (and whose medical records confirm) that they are in serious need of health care.  Unfortunately, Defendants' response, if any, is a boilerplate cut-and-paste email that entirely ignores the substance of the letter.  [*See, e.g.*, Kendrick Decl. Exs. 5-9]  Recent examples of people suffering from Defendants' failure to comply with their obligations under the Stipulation and the Constitution include, but are not limited to:

- On July 5, 2018, Plaintiffs' Counsel notified Defendants of a seriously mentally ill man diagnosed with paranoid schizophrenia who had been housed in the maximum custody Eyman-Browning Unit for more than two months awaiting transfer to the in-patient mental health unit at Phoenix-Baker Unit.  [Kendrick Decl. Ex. 5] According to his medical record, as of July 5, he had been on mental health watch without interruption for more than two months, and had been experiencing auditory and visual hallucinations, with an appearance that "is disheveled and odorous." [*Id.*]  The class member reported to the undersigned counsel during a July 19, 2018 tour that he had been on and off suicide watch for more than a year, counsel smelled and felt the residue of pepper spray coating his cell door, and other people incarcerated in the housing unit told Plaintiffs' counsel that custody staff frequently pepper sprayed him when he engaged in acts of self-harm.  [*Id.*]

- On July 18, 2018, Plaintiffs' Counsel contacted Defendants about an 81-year-old man at Florence-South whose entire body had been covered in a stinging, burning, and itching rash for more than seven months, which was assessed for scabies.  [*Id.* Ex. 6] The elderly man was sent to a maximum custody isolation prison unit

---

[20] The OSC and Contempt Order include PM 66 at Florence, Lewis, and Tucson. [Doc. 2373 at 4]

(Eyman SMU-I) for "Scabies Watch" quarantine where he was stripped of all clothing but his boxer shorts, given a tube of permethrin lotion for his rash, and given no hygiene supplies. [*Id.*] He was provided sandwiches of cold cuts and bread, which resulted in diarrhea and vomiting. [*Id.*] After his quarantine ruled out scabies, he was returned to the Florence prison, where health care staff dutifully documented his history of basal cell carcinoma skin cancer and need for biopsies of oozing and bloody lesions, but did not perform any biopsies. [*Id.*]

- On July 20, 2018, Plaintiffs' Counsel notified Defendants regarding an 85-year-old man with dementia who is "wheelchair bound, unable to ambulate independently" at Florence-South who suffers from a painful severe skin rash affecting his legs, torso, arms, buttocks, and groin. [*Id.* Ex. 7] His medical record confirmed that the quarantine "treatment" for this elderly man with dementia was making him sleep on the floor of the health clinic at Florence South Unit until he was "allowed entry into his room." [*Id.*]

- On July 23, 2018, Plaintiffs' Counsel notified Defendants regarding a man with prostate cancer, drug-induced gynecomastia, and spondylolisthesis, among other conditions, who had four separate requests for neurosurgery consults for spinal surgery postponed or denied via an "Alternate Treatment Plan" ("ATP") by Corizon, despite the fact that his cancer treatment had been put on hold pending the resolution of his spinal surgery. [*Id.* Ex. 8] Thus, it was of the utmost importance that his spinal surgery be addressed, rather than denied and delayed. [*Id.*]

- On August 10, 2018, Plaintiffs' Counsel notified Defendants regarding a woman with a history of serious mental illness and poorly-managed seizures, who on August 7, seriously harmed herself by attempted drowning in the toilet, while ostensibly on continuous suicide watch. [*Id.* Ex. 9] According to the responding nurse's notes, officers stated "they did not know how long she was in the water. They pulled her out and she had no pulse and was not breathing." [*Id.*] According to the nurse, it took three minutes of chest compressions before she began breathing. [*Id.*] The next day, according to the medical records, the woman tried to swallow her hospital bracelet and officers responded by pepper spraying and handcuffing her, and dragging her to and leaving her in a shower to decontaminate, at which point she suffered seizures while still handcuffed on the ground. [*Id.*]

In sum, the record overwhelmingly shows that Defendants continue to disregard their obligations to Plaintiffs to provide minimally adequate health care, resulting in staggering and profound injury to many class members, and a substantial risk of serious harm to all class members. Defendants' own reports show their chronic noncompliance with a number of the Stipulation's performance measures, emphasizing the need for the Court's orders to be implemented without delay.

**D. Public Interest Considerations Demand That No Stay Issue**

Public interest considerations also confirm a stay is inappropriate. As the Court noted in its most recent denial of a stay motion, the public interest militates against a stay:

1
2
3
4

> The State agreed to the Stipulation over three years ago, has expended significant resources on this matter, and has fallen short on meeting its own benchmarks.  The public interest in the OSC hearing and the evidentiary hearing – both aimed at examining whether the State of Arizona is meeting the basic healthcare needs for the 30,000-plus inmates in its care – seems self-evident.

5   [Doc. 2643 at 6]

6   "[I]t is always in the public interest to prevent the violation of a party's

7   constitutional rights."  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citations

8   and internal quotation marks omitted); *accord United States v. Raines*, 362 U.S. 17, 27

9   (1960) ("there is the highest public interest in due observance of all constitutional

10  guarantees").  And with regard to the right of incarcerated persons to minimally adequate

11  health care, "the public interest lies in obviating the ongoing constitutional violations in

12  the mental and medical health care systems in [the state's] prisons[.]"  *Coleman v. Brown*,

13  960 F. Supp. 2d 1057, 1073 (E.D. Cal. 2013) (Three Judge Panel) (denying State's motion

14  for stay of panel's order); *see Flynn v. Doyle*, 630 F. Supp. 2d 987, 993 (E.D. Wis. 2009)

15  ("The public has a strong interest in the provision of constitutionally-adequate health care

16  to prisoners"); *Duran v. Anaya*, 642 F. Supp. 510, 527 (D.N.M. 1986) ("The public at

17  large is not served by the . . . willful or wanton infliction on pain and suffering on

18  prisoners . . . [or] the deterioration and dismantling of [prison] medical and mental health

19  systems"); *cf. Plata*, 563 U.S. at 510-11 ("Prisoners are dependent on the State for food,

20  clothing, and necessary medical care. . . . Just as a prisoner may starve if not fed, he or she

21  may suffer or die if not provided adequate medical care.  A prison that deprives prisoners

22  of basic sustenance, including adequate medical care, is incompatible with the concept of

23  human dignity and has no place in civilized society.").

24  **IV.   CONCLUSION**

25      For the foregoing reasons, Defendants' motion for a stay should be denied.

26
27
28

1    Dated:  September 6, 2018          **PRISON LAW OFFICE**

2                                      By:   s/ Corene Kendrick
                                          Donald Specter (Cal. 83925)*
3                                         Alison Hardy (Cal. 135966)*
                                          Sara Norman (Cal. 189536)*
4                                         Corene Kendrick (Cal. 226642)*
                                          Rita K. Lomio (Cal. 254501)*
5                                         1917 Fifth Street
                                          Berkeley, California 94710
6                                         Telephone:  (510) 280-2621
                                          Email:    dspecter@prisonlaw.com
7                                                   ahardy@prisonlaw.com
                                                    snorman@prisonlaw.com
8                                                   ckendrick@prisonlaw.com
                                                    rlomio@prisonlaw.com
9
                                          *Admitted *pro hac vice*
10
                                          David C. Fathi (Wash. 24893)*
11                                        Amy Fettig (D.C. 484883)**
                                          Victoria Lopez (Ill. 6275388)*
12                                        **ACLU NATIONAL PRISON
                                          PROJECT**
13                                        915 15th Street N.W., 7th Floor
                                          Washington, D.C. 20005
14                                        Telephone:  (202) 548-6603
                                          Email:    dfathi@aclu.org
15                                                  afettig@aclu.org
                                                    vlopez@aclu.org
16
                                          *Admitted *pro hac vice*.  Not admitted in
17                                          DC; practice limited to federal courts.

18                                        **Admitted *pro hac vice*

19                                        Kirstin T. Eidenbach (Bar No. 027341)
                                          **EIDENBACH LAW, P.L.L.C.**
20                                        P. O. Box 91398
                                          Tucson, Arizona 85752
21                                        Telephone:  (520) 477-1475
                                          Email:    kirstin@eidenbachlaw.com
22
                                          Kathleen E. Brody (Bar No. 026331)
23                                        **ACLU FOUNDATION OF
                                          ARIZONA**
24                                        3707 North 7th Street, Suite 235
                                          Phoenix, Arizona 85013
25                                        Telephone:  (602) 650-1854
                                          Email:    kbrody@acluaz.org
26

27

28

141184792.2                          -18-

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
             agerlicher@perkinscoie.com
             jhgray@perkinscoie.com

Caroline Mitchell (Cal. 143124)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:    cnmitchell@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:    jlwilkes@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  |  **ARIZONA CENTER FOR DISABILITY LAW**

2

3  |  By:  s/ Maya Abela

4  |  Rose A. Daly-Rooney (Bar No. 015690)
   |  J.J. Rico (Bar No. 021292)

5  |  Maya Abela (Bar No. 027232)
   |  Jessica Jansepar Ross (Bar No. 030553)

6  |  177 North Church Avenue, Suite 800
   |  Tucson, Arizona 85701

7  |  Telephone:  (520) 327-9547
   |  Email:

8  |  rdalyrooney@azdisabilitylaw.org
   |  jrico@azdisabilitylaw.org

9  |  mabela@azdisabilitylaw.org
   |  jross@azdisabilitylaw.org

10 |  Asim Dietrich (Bar No. 027927)
   |  **ARIZONA CENTER FOR**

11 |  **DISABILITY LAW**
   |  5025 East Washington St., Ste. 202

12 |  Phoenix, Arizona 85034
   |  Telephone: (602) 274-6287

13 |  Email:   adietrich@azdisabilitylaw.com

14 |  *Attorneys for Arizona Center for Disability Law*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 6, 2018, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:


Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
Richard M. Valenti
Jamie D. Guzman
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com

*Attorneys for Defendants*


s/ D. Freouf