Office of the Arizona Attorney General
Michael E. Gottfried, Bar No. 010623
Assistant Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004-1592
Telephone: (602) 542-1645
Fax: (602) 542-3393
Michael.Gottfried@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-ROS<br><br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY JUNE 22, 2018 ORDERS**<br>**(Dkt. 2971)** |

# TABLE OF CONTENTS

**Page**

A.  Plaintiffs Rely on theWrong Standard for a Stay ......................................................2

B.  A Stay Is Warranted Under the Proper Standards ......................................................3

    1.  The Court should stay further proceedings related to the non-monetary June 22 Orders until the prior and current appeals are resolved ...........................3

    2.  The Court should stay Defendants' obligations under the the Real-Time Data and HNR-Box System Orders until the prior and current appeals are resolved ...............................................................................................................4

        a.  There are serious questions going to the merits ...................................4

        b.  There is a likelihood of irreparable injury..........................................6

        c.  Plaintiffs will not be substantially injured ..........................................6

        d.  A stay is in the public's interest .........................................................9

    3.  The Court should stay enforcement of the monetary orders ........................9

CONCLUSION ...............................................................................................................10

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*ACLU of Nevada v. Masto*
670 F.3d 1046 (9th Cir. 2012) ....................................................................... 9

*All. for the Wild Rockies v. Cottrell*
632 F.3d 1127 (9th Cir. 2011) ....................................................................... 5

*Biltmore Associates, L.L.C., as Tr. v. Twin City Fire Ins. Co.*
205-CV-04220-PHX-FJM, 2007 WL 2422053 (D. Ariz. Aug. 22, 2007) ...... 9

*Bingman v. Ward*
100 F.3d 653 (9th Cir. 1996) ....................................................................... 5

*Cardenas v. AmeriCredit Fin. Services Inc.*, C 09-04978 SBA
2011 WL 846070 (N.D. Cal. Mar. 8, 2011) ............................................... 2, 3

*CMAX, Inc. v. Hall*
300 F.2d 265 (9th Cir. 1962) ................................................................... 2, 4, 6

*Hatcher v. Consolidated City of Indianapolis*
323 F.3d 513 (7th Cir. 2003) ....................................................................... 4

*Hilton v. Braunskill*
481 U.S. 770 (1987) ....................................................................................... 2

*Hook v. Az. Dep't of Corrections*
107 F.3d 1397 (9th Cir. 1997) ..................................................................... 10

*Kirchgessner v. CHLN, Inc.*
CV-15-1048-PHX-SMM, 2016 WL 9525224 (D. Ariz. May 11, 2016) ......... 2

*Landis v. N. Am. Co.*
299 U.S. 248 (1936) .................................................................................. 2, 4

*Leiva-Perez v. Holder*
640 F.3d 962 (9th Cir. 2011) ............................................................... 2, 5, 6, 7

*Leyva v. Certified Grocers of Cal., Ltd.*
593 F.2d 857 (9th Cir. 1979) ....................................................................... 2

*Lightfoot v. Walker*
797 F.2d 505 (7th Cir. 1986) .................................................................... 9, 10

*Mendez v. Optio Sols., LLC*
239 F. Supp. 3d 1229 (S.D. Cal. 2017) ........................................................ 2

*Mendoza v. City of Peoria*
CV-13-00258-PHX-DJH, 2015 WL 13239816 (D. Ariz. July 31, 2015) ......... 2

1

## <u>TABLE OF AUTHORITIES (cont.)</u>

2

<u>Page</u>

3

*Nken v. Holder*
  556 U.S. 418 (2009) ........................................................................................ 2

4

*Ocean Beauty Seafoods LLC v. Pac. Seafood Group Acquisition Co. Inc.*

5

  C14-1072RSM, 2015 WL 12977383 (W.D. Wash. Oct. 16, 2015) ................................. 2

6

*Thomas, Head & Greisen Employees Tr. v. Buster*
  95 F.3d 1449 (9th Cir. 1996) ........................................................................... 5

7

*Unitek Solvent Servs., Inc. v. Chrysler Group LLC*

8

  12-00704 DKW-RLP, 2014 WL 12576648 (D. Haw. Jan. 14, 2014) .............................. 2

9

*Williamson v. Google Inc.*, 15-CV-00966-BLF
  2015 WL 10890658 (N.D. Cal. Oct. 8, 2015) ................................................... 1

10

11

**Statutes**

12

18 U.S.C. § 3626(a)(1)(A) ................................................................................ 7

13

14

**Rules**

15

Fed. R. Civ. P. 1 ............................................................................................ 1

16

Fed. R. Civ. P. 23(e) ...................................................................................... 7

Fed. R. Civ. P. 62(b) ...................................................................................... 3

17

18

19

20

21

22

23

24

25

26

27

28

iii

There is nothing immoral in requesting a stay.  Indeed, the law authorizes a stay of *all* proceedings and confers broad discretion to grant one.  Defendants responsibly sought a *narrowly tailored* stay of *further* proceedings *related to* the June 22 Orders until the pending appeals resolved whether they are valid (potentially, any day now).  Their intent was to maintain the orderly administration of justice and make efficient use of party and judicial resources. *See also* Fed. R. Civ. P. 1.  Predictably, Plaintiffs respond with ad hominem attacks and accusations that Defendants seek to "obstruct and delay" inmate healthcare and subject "women, men, and children" to "illness, injury, and death."  (Dkt. 2992 at 6.)

Stripped of its rhetoric and hyperbole, the Opposition applies the wrong standard for a stay and fails to address most of the points in the Motion.  Significantly, Plaintiffs do not dispute that the outcome of the prior pending appeals could nullify the June 22 Orders or that a stay could save precious resources.  Instead, they attempt to drown out the equities, efficiencies, and common sense of a stay with conclusory assertions that their constitutional rights have been and will continue to be violated if a stay is granted.  Yet, they do not point to any finding or determination that any class member's rights have been violated to date.  Nor do they link any illness, injury, or death to Defendants' failure to meet the 85% compliance benchmark on any particular performance measure.

Plaintiffs also assume that an illness, injury, or death will or likely will result if the June 22 Orders are stayed, and further assume that enforcement of the June 22 Orders will inevitably (and instantly) lead to 85% compliance and stave off their calamitous predictions.  But again, they fail to connect the dots with any evidence.  Speculative harm cannot defeat a stay. *Williamson v. Google Inc.*, 15-CV-00966-BLF, 2015 WL 10890658, at *3 (N.D. Cal. Oct. 8, 2015).  And Plaintiffs do not rebut the actual and irreparable harm that Defendants and the Court will sustain if a stay is not granted and the June 22 Orders are later nullified.  It is more than just an "administrative inconvenience," as Plaintiffs contend.  (Dkt. 2992 at 6.)  The Court should reject Plaintiffs' false choice between saving lives and saving money, apply the correct standard, and grant a stay.

1

**A.      Plaintiffs Rely on the Wrong Standard for a Stay.**

Plaintiffs argue that the appropriate standard for a stay request is the standard articulated in *Nken v. Holder*, 556 U.S. 418 (2009), not *Landis v. N. Am. Co.*, 299 U.S. 248 (1936).  (Dkt. 2992 at 7, 11.)  Plaintiffs have it wrong.  The standard in *Nken* derives from *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  *See Nken*, 556 U.S. at 425-26 (quoting the "traditional" standard stated in *Hilton*).  "The *Hilton* test, however, generally applies to requests to stay a *particular order or judgment*, not a request to stay a district court proceeding."  *Unitek Solvent Servs., Inc. v. Chrysler Group LLC*, 12-00704 DKW-RLP, 2014 WL 12576648, at *2 (D. Haw. Jan. 14, 2014) (emphasis added).  Indeed, *Hilton*, *Nken*, and *Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011), which Plaintiffs principally rely on, all involved requests to stay a particular order.  *See Nken*, 556 U.S. at 422 (removal order); *Hilton*, 481 U.S. at 773 (order granting habeas relief); *Leiva-Perez*, 640 F.3d at 964 (removal order).

The *Landis* test applies to a request to stay district court *proceedings*.  *See Unitek Solvent Servs.*, 2014 WL 12576648, at *2 (collecting cases that explain the difference in standards when requesting a stay with respect to a particular order as opposed to a stay of proceedings, and noting that the *Landis* standard applies to the latter).  And that is the standard when a request is made to stay district court proceedings pending not only the resolution of another proceeding that may bear upon the case, *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962), but also pending an appeal, including an appeal in the same matter.  *See, e.g.*, *Mendez v. Optio Sols., LLC*, 239 F. Supp. 3d 1229, 1232 (S.D. Cal. 2017) (stay pending appeal in a different case); *Kirchgessner v. CHLN, Inc.*, CV-15-1048-PHX-SMM, 2016 WL 9525224, at *2 (D. Ariz. May 11, 2016) (same); *Ocean Beauty Seafoods LLC v. Pac. Seafood Group Acquisition Co. Inc.*, C14-1072RSM, 2015 WL 12977383, at *1 (W.D. Wash. Oct. 16, 2015) (stay pending appeal in the same case); *Mendoza v. City of Peoria*, CV-13-00258-PHX-DJH, 2015 WL 13239816, at *4 (D. Ariz. July 31, 2015) (same); *Cardenas v. AmeriCredit Fin. Services Inc.*, C 09-04978 SBA, 2011 WL 846070,

1    at *1-2 (N.D. Cal. Mar. 8, 2011) (same).[1]

2        Defendants requested a stay of further *proceedings* related to the non-monetary

3    June 22 Orders until the Ninth Circuit resolved the pending appeals.  (Dkt. 2971 at 16-19.)

4    For example, it requested that the Court refrain from appointing experts to review the

5    monitoring process or alleged compliance deficiencies, or from taking any further action

6    on Braxton's Millar's staffing recommendations.  (*Id*. at 17.)  The *Landis* test applies to

7    that request.  Defendants also requested that the Court stay the Real-Time Data and HNR-

8    Box System *Orders*.  (*Id*.)  Although that request is arguably subject to the *Hilton* test

9    since it pertains to a stay of specifically ordered obligations, Defendants properly

10   analyzed those Orders under the *Hilton* test.[2]  (*Id*. at 19-22.)

11       **B.    A Stay Is Warranted Under the Proper Standards.**

12           **1.    The Court should stay further proceedings related to the
                     non-monetary June 22 Orders until the prior and current
13                   appeals are resolved.**

14       Because Plaintiffs applied the wrong standard (*Hilton*), they do not address at all

15   the correct one (*Landis*).  Thus, they do not refute any of the arguments supporting a stay

16   of further proceedings related to the June 22 Orders.  (Dkt. 2971 at 16-19.)  For example,

17   they do not dispute that it will be more efficient to wait until the Ninth Circuit decides the

18   prior and current appeals and determines whether the June 22 Orders are valid or the

19   impact those appeals will have on the Orders.  Nor do they dispute the extraordinary

20   administrative burden on ADC and Corizon staff and prison operations or the significant

21   expense to the taxpayers if a stay of proceedings is not granted, or that both (and judicial

22   resources necessary to enforce the Orders) will be wasted if the Orders are later deemed

23   void.  They simply mock these hardships and inequities.  (Dkt. 2992 at 6, 13, 15.)

---

25       [1] Plaintiffs' factual distinctions of *Leyva*, *CMAX*, and *Mendez* are immaterial. They
     all confirm that the *Landis* standard applies when seeking a stay of *proceedings*.

26
27       [2] Plaintiffs do not address at all Defendants' request for a stay, pursuant to Fed. R.
     Civ. P. 62(b), of the Termination and HNR-Box System Orders pending a ruling on their
     Rule 60 Motions. (Dkt. 2971 at 19.) Thus, they apparently concede that a stay of those
28   Orders is appropriate until a ruling is issued.

They call Defendants' argument regarding the magistrate-jurisdiction issue—that the Court should wait and see if the Ninth Circuit determines that all of Magistrate Judge Duncan's orders, including the June 22 Orders, are void for lack of jurisdiction (Dkt. 2971 at 16-17)—"far-fetched."  (Dkt. 2992 at 12.)  Aside from failing to explain why it is or why the Seventh Circuit's decision in *Hatcher v. Consolidated City of Indianapolis*, 323 F.3d 513, 519-20 (7th Cir. 2003) was wrongly decided, a stay of proceedings under the *Landis* test does not require a showing that Defendants will succeed on appeal.  299 U.S. at 254; *see also CMAX*, 300 F.2d at 268.  Plaintiffs label Defendants' argument regarding the substantive issues before the Ninth Circuit in the prior appeals "nonsensical and untimely" because those appeals were submitted ten months ago.  (Dkt. 2992 at 11-12.)  But the impact those prior appeals could have on the June 22 Orders obviously did not become apparent until Magistrate Judge Duncan issued them.

Defendants' Motion demonstrated that the *Landis* factors weigh heavily in favor of a stay of further proceedings relating to the June 22 Orders. Plaintiffs have not demonstrated otherwise.

**2.    The Court should stay Defendants' obligations under the Real-Time Data and HNR-Box System Orders until the prior and current appeals are resolved.**

As discussed above, Defendants' request to stay these Orders is arguably analyzed under the *Hilton* test.  Plaintiffs assert that the Motion "completely ignores the third [substantial injury to Plaintiffs] and fourth [public interest] prongs of the stay analysis." (Dkt. 2992 at 11 n.7.)  That is not true.  Defendants *did* analyze those prongs as it pertains to these Orders.  (Dkt. 2971 at 21-22.)  Plaintiffs' remaining arguments are unavailing.

**a.    There are serious questions going to the merits.**

Plaintiffs do not make any argument regarding the validity of the HNR-Box System Order and simply "invite the Court's attention to" its Response to Defendants' corresponding Rule 60 Motion.  (Dkt. 2992 at 10.)  Plaintiffs' only defense to the Real-Time Data Order is that it springs from the Contempt Order, which was based on the failure to comply with "the Court's OSC, not the Stipulation itself."  (Dkt. 2992 at 8 n.5.)

Thus, they argue, Magistrate Judge Duncan had the authority to hold Defendants in civil contempt and issue the corresponding Real-Time Data Order.  (*Id.*)  The Order to Show Cause, however, simply required Defendants to comply with the parties' Stipulation. (Dkt. 2373.)  In other words, Magistrate Judge Duncan issued an order to confer upon himself the power of contempt that did not otherwise exist.[3]  Plaintiffs generally assert that "Defendants face an uphill climb on appeal" because the Contempt Order will be reviewed for an abuse of discretion.  (Dkt. 2992 at 12.)  But whether Magistrate Judge Duncan had the authority to hold Defendants in civil contempt is a legal question that is reviewed de novo.  *Bingman v. Ward*, 100 F.3d 653, 656 (9th Cir. 1996); *see also Thomas, Head & Greisen Employees Tr. v. Buster*, 95 F.3d 1449, 1458 (9th Cir. 1996) ("Issue of whether a district court provided an alleged contemnor due process, however, is a legal question subject to de novo review on appeal.").  Furthermore, Plaintiffs overstate the standard.  Defendants need not show a "strong showing that [they are] likely to succeed on the merits."  (Dkt. 2992 at 7.)  The Ninth Circuit employs a sliding-scale approach, and a stay is warranted if there are serious questions going to the merits, *All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011), or if they have a "fair prospect" or "reasonable probability" of success, *Leiva-Perez*, 640 F.3d at 967. Defendants have made that showing.[4]

---

[3] Plaintiffs contend elsewhere that the Real-Time Data Order was "simply a directive to Defendants that they continue to report the data mandated by the OSC." (Dkt. 2992 at 10.) But the Order to Show Cause only ordered real-time data for December 2017 (Dkt. 2373 at 4), and the Real-Time Data Order does not specify when the reporting must resume or when Defendants must provide the data. (Dkt. 2898 at 24.) As Plaintiffs are well aware, Defendants have moved to stay that obligation altogether.

[4] Plaintiffs generally assert that findings of fact are reviewed for clear error. (Dkt. 2992 at 12.) But even so, Defendants' challenges involve legal questions as well, which are reviewed de novo. (*See* Dkt. 2971 at 19-22.) Plaintiffs also contend that the Orders requiring Defendants to propose monitoring and compliance experts (Dkt. 2900, 2905) and to submit a staffing plan (Dkt. 2904) are likely to fail on appeal because they are not appealable orders. (Dkt. 2992 at 12.) Defendants disagree, but that dispute, which will ultimately be resolved by the Ninth Circuit, is irrelevant to the instant stay motion because Defendants have not moved to stay their obligations under those Orders. Indeed, Defendants have already complied. (Dkt. 2946, 2948, 2949.) Defendants have moved to stay further *proceedings* related to those Orders. Thus, the *Hilton* test and its likelihood-of-success prong is inapplicable.

5

### b.   There is a likelihood of irreparable injury.

Defendants explained the irreparable harm they will incur on pages 12-16 of their Motion.   (Dkt. 2971 at 18-22.)   Plaintiffs do not dispute that Defendants will be irreparably harmed if the HNR-Box System Order is not stayed.   (*Compare* Dkt. 2971 at 21-22; *with* Dkt. 2992 at 13-15.)   Plaintiffs also do not dispute that Defendants will expend and potentially waste a significant amount of resources if the Real-Time Data Order is not stayed.[5]   (*Compare* Dkt. 2971 at 20-21; *with* Dkt. 2992 at 13-15.)

### c.   Plaintiffs will not be substantially injured.

Defendants seek a stay of their obligation to provide monthly real-time compliance data and to resume the HNR-box system.   Their request to stay the proceedings is similarly narrow and limited to *further* proceedings *relating to* the June 22 Orders. Plaintiffs do not explain how they will be harmed, *CMAX*, 300 F.2d at 268, much less substantially injured, *Leiva-Perez*, 640 F.3d at 964, by either request.   Instead, they contend that their constitutional rights are at stake and being violated, and that there is a risk of ongoing harm, physical injury, and death if a stay is not granted.   (Dkt. 2992 at 7, 15-21.)   These assertions are not supported by the record.

First, the purpose of the Stipulation was not to "vindicat[e]" the violation of Plaintiffs' constitutional rights.   (Dkt. 2992 at 6.)   The express purpose was "to settle" the case.   (Dkt. 1185, ¶ 4.)   Second, the Stipulation does not prescribe constitutional standards for inmate healthcare.   That obligation exists notwithstanding any settlement agreement. Rather, the performance measures set standards that far *exceed* any constitutional minimums.   For example, PM 37 requires an inmate to be seen by an RN within 24 hours after submitting an HNR.   (Dkt. 1185-1 at 10.)   Though Defendants would technically be noncompliant with that performance measure if the inmate is seen in the 25th hour, that

---

[5] In a footnote, Plaintiffs suggest that the seven-week delay between the issuance of the June 22 Orders and the filing of the stay request vitiates allegations of irreparable harm. (Dkt. 2992 at 7 n.3.) In that time, Defendants carefully analyzed the six June 22 Orders, complied with all ordered deadlines, prepared two Rule 60 motions, perfected three appeals, and prepared the Motion to Stay. The irreparable harm did not occur in that time period; it is yet to come unless a stay is granted.

one-hour delay does not necessarily violate the Eighth Amendment.  Thus, non-compliance does not mean there *has* been a constitutional violation.

Third, the Court has never found a constitutional violation in this litigation, either before or after the Stipulation.  There was never a trial.  Indeed, the parties settled the case *before* Plaintiffs were ever required to *prove* their allegations.  Nor has there been any finding that Defendants have violated any inmate's constitutional rights *after* the Stipulation.  Plaintiffs do not cite to any specific finding in the record.[6]  Fourth, Plaintiffs provide no evidence that any purported constitutional violation, injury, illness, or death was the result of Defendants' noncompliance with a particular performance measure. Plaintiffs merely assume that every injury, illness, and death in the last 3 ½ years occurred because of Defendants' failure to comply with the Stipulation *and* violated their constitutional rights.  They further assume that the June 22 Orders will prevent future constitutional violations, injuries, illnesses, and deaths, and, conversely, that a stay of those Orders will perpetuate them.  Such conjecture is not enough to defeat a stay.

To support their hypothesis, Plaintiffs cite to the Order to Show Cause and Contempt Order.  (Dkt. 2992 at 17.)  But as Plaintiffs admit, Magistrate Judge Duncan issued those Orders because of Defendants' "failure[] to comply with the Stipulation" (*id*.), not because it found constitutional violations or injuries, illnesses, or deaths caused by their noncompliance.  Plaintiffs also cherry pick 19 performance measures at certain

---

[6] Plaintiffs point to the Court's Order Re: Settlement, in which the Court signed the parties' proposed order that parroted the language of 18 U.S.C. § 3626(a)(1)(A) ("[T]he Court hereby finds that the relief set forth therein is narrowly drawn, extends no further than necessary to correct the violations of the Federal right, and is the least intrusive means necessary to correct the violations of the Federal right of the Plaintiffs."). (Dkt. 2992 at 8 n.5.) But that generic certification is not a determination that Defendants violated Plaintiffs' constitutional rights. There was no prior, specific finding of any violation.   Plaintiffs assert that this is an "oft-proffered and unsuccessful contention," (Dkt. 2992 at 8 n.5), but the issue (i.e., the significance of the PLRA certification) is currently before the Ninth Circuit. *See* Appeal No. 16-17282, Doc. 22, 78. Plaintiffs also attempt to argue that the Stipulation is a judicially enforceable consent decree, despite its explicit provision that it is not (Dkt. 1185, ¶ 35), because the Court approved it. (Dkt. 2992 at 8 n.5.) Plaintiffs have made this argument before, and the Court did not accept it. (Dkt. 1882, 1910.) The Court approved the Stipulation pursuant to Fed. R. Civ. P. 23(e). (*See* Dkt. 1458.) This issue is also currently before the Ninth Circuit. *See* Appeal No. 17-15302, Doc. 19, 52.)

facilities that were not in compliance in June 2018 to show a risk of substantial harm.  (*Id.* at 17-20.)  But again, these statistics do not show that the noncompliance resulted in a constitutional violation, injury, illness, or death to any class member.[7]  Finally, Plaintiffs cite to letters prepared by Plaintiffs' counsel alleging healthcare issues with eleven inmates (Dkt. 2992 at 6, citing Dkt. 2531-1, 2628-1; Dkt. 2992 at 20-21; Dkt. 2995, Ex. 5-9), and mortality reviews of six inmate deaths in which ADC concluded that more timely prevention could have prevented or delayed their deaths (Dkt. 2992 at 6, citing R.T. 2/28/18 at 335-371).  None of this proves a constitutional violation, a systemwide risk of serious harm, a causal connection between noncompliance with a performance measure and an injury, illness, or death, or impending substantial injury if a stay is granted.

Plaintiffs' assertions of "chronic noncompliance" with the Stipulation is undermined by the fact that Magistrate Judge Duncan has found Defendants to be substantially noncompliant with only 17% of the performance measures/facilities (Dkt. 2960), a fact Plaintiffs do not dispute.  And their claim that all (33,000) ADC inmates—men, women, and children—are currently exposed to a substantial risk of serious harm is based on nothing more than isolated *allegations* by a handful of inmates untethered to any finding or showing that Defendants' noncompliance with the Stipulation (or their actions) is the cause of that risk.[8]  A stay will not irreparably harm Plaintiffs.

---

[7] The performance measures they cite are part of a set of performance measures that Magistrate Judge Duncan had previously found to be noncompliant. (Dkt. 1583, 1709, 2030, 2403, 2764, 2989.) Collectively, Defendants were *compliant* with 71% (100 out of 140) of those performance measures/facilities in June 2018. (Dkt. 2989.)

[8] As of September 11, 2018, there were only 53 minor inmates (.1% of the total inmate population) housed in ADC's ten state-operated facilities. *See* https://corrections.az.gov/sites/default/files/DAILY_COUNT/Sep2018/09112018_count_sheet.pdf. Only one performance measure (PM 73) applies exclusively to minors. (Dkt. 1185-1 at 13.) On that Measure, Defendants have only been noncompliant three times in the last 40 months (and compliant every month since August 2016) at the female-minor unit, and only nine times in the last 40 months (and compliant every month since June 2017) at the male-minor unit.

#### d.     A stay is in the public's interest.

Plaintiffs argue that a stay is not in the public's interest because Magistrate Judge Duncan previously said it was not. (Dkt. 2992 at 22.) But he made that statement in response to Defendants' prior request to stay *all* proceedings until he ruled on their motion to disqualify him. (Dkt. 2643 at 6.) Defendants' current request, however, is much narrower. Plaintiffs assert that the public has an interest in preventing the violation of a party's constitutional rights. (Dkt. 2992 at 22.) But again, Plaintiffs merely assume that their rights will be violated if those Orders are stayed. They do not establish any correlation between the two.

### 3.     The Court should stay enforcement of the monetary orders.

Plaintiffs do not make any argument opposing Defendants' request to refrain from distributing or using the sanction monies that they have *already paid*. Plaintiffs argue that Defendants are not entitled to a stay of the Attorneys' Fees Order because they have not posted a supersedeas bond. (Dkt. 2992 at 14.) That argument ignores Defendants' request to *waive* the bond requirement, which the Court has the discretion to do. *See Biltmore Associates, L.L.C., as Tr. v. Twin City Fire Ins. Co.*, 205-CV-04220-PHX-FJM, 2007 WL 2422053, at *1 (D. Ariz. Aug. 22, 2007). Although the court in *ACLU of Nevada v. Masto*, 670 F.3d 1046, 1066-67 (9th Cir. 2012), denied a stay request, the State of Nevada did not request a bond waiver in that case. The court denied the request because the State neither appealed the underlying fees award nor posted a supersedeas bond. *Id.* Thus, that case is inapposite.

Plaintiffs alternatively argue that a waiver is not appropriate because "Defendants' declarant concedes that a legislative appropriation may be necessary to allow ADC to pay the judgment," and the court *Lightfoot v. Walker*, 797 F.2d 505 (7th Cir. 1986), denied a waiver request on "precisely" the same ground. (Dkt. 2992 at 14.) ADC's Division Director of Administrative Services said no such thing. Although, in explaining the accounting and budgeting process generally he avowed that ADC can work with the

9

Legislature to appropriate more money if the amount of the judgment exceeds the money already available in ADC's annual budget, he avowed that he was confident that ADC could pay this Judgment promptly and in full at the conclusion of the appeal, and that the amount is usually one that ADC can pay without any issues.  (Dkt. 2971-1 at 3-4, ¶¶ 5-10.)  In *Lightfoot*, the court denied the State of Illinois's waiver request because "the procedure for collecting a judgment against the [State of Illinois] is not only *cumbersome and time-consuming*, but *uncertain in outcome*" because "the judgment cannot be paid *unless and until the state legislature votes to appropriate the money necessary to pay it*." 797 F.2d 505, 506 (emphasis added).  Here, it is not.

Finally, Plaintiffs argue that the Court cannot have confidence that Defendants will pay the attorneys' fees award if the Order is upheld on appeal because in 1995 the Arizona legislature passed a law requiring legislative approval for payment of special-masters fees. *See Hook v. Az. Dep't of Corrections*, 107 F.3d 1397, 1400 (9th Cir. 1997).  Aside from the fact that (1) the award in this case is not for the payment of special-masters fees, (2) ADC does not control the Legislature, and (3) the legislative members today are not the same as those 20 years' ago, *Hook* teaches that such legislation does not fly.  *Id*. at 1401-03.  A federal judgment must be paid.  *Id*.

## CONCLUSION

For these reasons, and those in their Motion, Defendants respectfully request the Court to stay the June 22 Orders until the pending appeals are finally resolved.  (*See* Dkt. 2971 at 23.)

DATED this 13th day of September, 2018.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC

By /s/Nicholas D. Acedo
    Daniel P. Struck
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    3100 West Ray Road, Suite 300
    Chandler, Arizona  85226

    Office of the Arizona Attorney General
    Michael E. Gottfried
    Assistant Attorneys General
    2005 N. Central Avenue
    Phoenix, Arizona 85004-1592

    *Attorneys for Defendants*

3498911.1

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on September 13, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

3

4

Alison Hardy: ahardy@prisonlaw.com

5

Amelia M. Gerlicher: agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com

6

7

Amy B. Fettig: afettig@npp-aclu.org

8

Asim Dietrich: adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

9

Caroline N. Mitchell: cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

10

11

Corene T. Kendrick: ckendrick@prisonlaw.com; edegraff@prisonlaw.com

12

Daniel Clayton Barr: DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

13

David Cyrus Fathi: dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

14

Donald Specter: dspecter@prisonlaw.com

15

Jessica Pari Jansepar Ross: jross@azdisabilitylaw.org

16

John Howard Gray: jhgray@perkinscoie.com; slawson@perkinscoie.com

17

John Laurens Wilkes: jlwilkes@jonesday.com, dkkerr@jonesday.com

18

Jose de Jesus Rico: jrico@azdisabilitylaw.org

19

Kathleen E. Brody: kbrody@acluaz.org

20

Kirstin T. Eidenbach: kirstin@eidenbachlaw.com

21

Maya Abela: mabela@azdisabilitylaw.org

22

Rose Daly-Rooney: rdalyrooney@azdisabilitylaw.org

23

Sara Norman: snorman@prisonlaw.com

24

Rita K. Lomio: rlomio@prisonlaw.com

25

Victoria Lopez: vlopez@aclu.org

26

/ / /

27

/ / /

28

/ / /

12

1         I hereby certify that on this same date, I served the attached document by U.S.
2    Mail, postage prepaid, on the following, who is not a registered participant of the
     CM/ECF System:

3        N/A

4                           /s/Nicholas D. Acedo