UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services Monitoring Bureau, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | No. CV 12-00601-PHX-ROS<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES & COSTS** |

This Court, having reviewed Plaintiffs' Motion for Attorneys' Fees and Costs incurred in enforcing the provisions of the Stipulation from July 1, 2017 through June 30, 2018 (the "2017-2018 Enforcement Period"), hereby **FINDS** that Plaintiffs are entitled to their reasonable fees and costs as prevailing parties under the terms of the Stipulation. [Doc. 1185 ¶¶ 43, 44] Plaintiffs established prevailing party status here because they repeatedly prevailed in enforcement motions; findings of non-compliance made by this Court; and the relief repeatedly ordered. [*See, e.g.*, Docs. 2209, 2373, 2403, 2504, 2583, 2898, 2900, 2904, 2905]

The Court further **FINDS** that Plaintiffs are entitled to recover all of the attorneys' fees requested because their fee request is reasonable as demonstrated by the Declarations

1  of Counsel and the billing records submitted to the Court. [*See* Declaration of Corene
2  Kendrick ("Kendrick Decl."); Declaration of David C. Fathi ("Fathi Decl.")] The work
3  done here took considerable legal skill and precluded counsel from accepting other,
4  potentially fee-generating work. [*See* Fathi Decl. ¶ 17; Kendrick Decl. ¶¶ 4-5; *see also*
5  Doc. 2902 at 6] As the Court noted in its First Fee Decision:

> [Enforcement] could have been simple if Defendants had been able to comply with the Stipulation's requirements, had timely responded to document requests, had promptly developed a final version [of the Monitor Guide], and had not raised spurious legal arguments. However, ***the last two years have not been simple*** and so the Court concludes that this prong is met.

10  [Doc. 2902 at 5 (footnote omitted) (emphasis added)].

11      This is not a run-of-the-mill case for other reasons as well: it required the
12  marshalling and analysis of complex evidence, often from thousands of pages of medical
13  records and other documents; working with prisoner, staff, and expert witnesses; drafting
14  declarations; participating in multiple mediations and numerous evidentiary hearings;
15  preparing, briefing and arguing multiple issues; and keeping up to date on ADC's
16  compliance or noncompliance with 103 health care performance measures at ten prison
17  complexes. [Kendrick Decl. ¶ 5]

18      Furthermore, Plaintiffs have demonstrated that billing judgment was exercised to
19  reduce the total number of hours for which fees were requested. [Kendrick Decl. ¶ 6;
20  Fathi Decl. ¶ 6] Plaintiffs have also demonstrated that they engaged in cost-effective
21  measures by having local counsel perform onsite tasks to keep travel costs low.
22  [Kendrick Decl. ¶ 9] Additionally, lower-billing law clerks and paralegals were utilized
23  to perform document review and analysis, legal research and related tasks. [Fathi Decl.
24  ¶ 11]

25      The hourly rate in this matter is predetermined by the Stipulation which adopts the
26  PLRA limit on the hourly rate for attorney's fees. [Doc. 1185 ¶ 43] The Ninth Circuit
27  has held that the baseline for the PLRA hourly rate is "the amount authorized by the
28  Judicial Conference." *Webb v. Ada Cty.*, 285 F.3d 829, 839 (9th Cir. 2002). The current

rate authorized by the Judicial Conference for the payment of court-appointed counsel is $147 per hour for FY 2018,[1] and accordingly, 150 percent of that rate is $220.50 per hour for federal FY 2018, which began on October 1, 2017.  Plaintiffs' counsel requests a total of $801,477.60 in fees for hours spent by lawyers, paralegals and law students on enforcing the Stipulation.

Plaintiffs have also requested a multiplier enhancement of 2.0 to attorneys' fees in this matter.  Such enhancements to the lodestar for attorneys' fees in prisoner rights cases for declaratory and injunctive relief are recognized by the Ninth Circuit.  *See Kelly v. Wengler*, 822 F.3d 1085, 1102-1106 (9th Cir. 2016) (upholding attorney's fees enhancement in prisoner rights class action where attorneys demonstrated superior performance).  Like the attorneys in *Kelly*, Plaintiffs' counsel here demonstrated superior performance, extraordinary commitment of resources, and excellent results for clients, justifying an enhancement to the lodestar.  *Id*. at 1102-04.

The 2017-18 Enforcement Period included not only extensive motion practice but also extensive evidentiary hearings and mediations.  These hearings and mediations were a direct result of the Defendants' persistent failure to comply with the Stipulation.  During the pertinent time period mediations occurred in July 2017 and November 2017.  [*See* Doc. 2253 (referring to July mediation); Doc. 2470 (mediation hearing, November 28, 2017)]  There were also at least *40 days* of hearings.[2]

---

[1] http://www.uscourts.gov/sites/default/files/fy_2018_congressional_budget_summary_0.pdf at 37.

[2] These hearing dates included: July 10, 2017 (discovery dispute hearing, Doc. 2180); July 11, 2017 (evidentiary hearing, Doc. 2165); July 13, 2017 (evidentiary hearing, Doc. 2185); July 14, 2017 (status and evidentiary hearing, Doc. 2186); July 21, 2017 (emergency status hearing, Doc. 2205); August 8, 2017 (evidentiary hearing, Doc. 2233); August 9, 2017 (status and evidentiary hearing, Doc. 2236); August 18, 2017 (status hearing, Doc. 2245); August 24, 2017 (status hearing, Doc. 2249); September 11, 2017 (retaliation hearing, Doc. 2305); September 12, 2017 (status hearing, Doc. 2317); September 13, 2017 (evidentiary hearing, Doc. 2318); September 25, 2017 (miscellaneous hearing, Doc. 2342); October 11, 2017 (status hearing, Doc. 2403); October 24, 2017 (status hearing, Doc. 2437); November 7, 2017 (status hearing, Doc. 2456); November 8, 2017 (evidentiary hearing, Doc. 2457); November 21, 2017 (status hearing, Doc. 2474); December 20, 2017 (status hearing, Doc. 2526); January 12, 2018 (discovery dispute hearing, Doc. 2560); January 18, 2018 (status hearing, Doc. 2559); February 7, 2018 (status hearing, Doc. 2586); February 14, 2018 (status hearing, Doc. 2601); February 27,

As a result of the sustained work by Plaintiffs' counsel, during the 2017-18 Enforcement Period alone, the Court found major deficiencies with multiple performance measures across multiple facilities, including Performance Measures ## 6, 11, 12, 15, 19, 20, 24, 35, 39, 42, 44, 46, 47, 49-52, 54, 55, 66, 67, 72, 91, 94, 97, 98. [*See* Docs. 2373, 2403, 2583, and 2810; Transcript of April 11, 2018 Hearing at 21:22-25:11 with Doc. 2764] As a result of Plaintiffs' counsels' relentless work in this matter, the Court held Defendants in contempt and imposed fines of $1,445,000, representing 1445 separate violations of the Stipulation over the December 2017-February 2018 period alone. [Doc. 2898 at 20-23] The Court noted that failure to comply with the Stipulation remains, to this day, "wide-spread and systematic." [*Id.* at 19] And despite the Plaintiffs' best efforts, the Court correctly concluded that the Defendants were not voluntarily complying:

> In one recent example, Defendants had no information about what could be done to improve compliance for PM 50 at Tucson and failed to even attempt to provide a corrective action plan at the May 2018 Status Conference. In another example, instead of presenting a corrective action plan aimed at trying something new, Defendants informed the Court at the June status hearing that they will continue to use their previous plan even though the CGARs reflect that the previous plan has not obtained consistent compliance for PM 39 at Lewis. That Defendants should exhibit such nonchalance about addressing on-going failures to comply with the Stipulation—even as the sword of sanctions loomed above them—is considerable evidence that a contempt order and monetary sanctions are necessary.

[*Id.* at 19-20]

---

2018 (evidentiary hearing, Docs. 2657, 2658); February 28, 2018 (evidentiary, order to show cause, and status hearing, Doc. 2659); March 14, 2018 (status hearing, Doc. 2686); March 19, 2018 (status hearing, Doc. 2700); March 22, 2018 (status hearing, Doc. 2720); March 26, 2018 (evidentiary and show cause hearings, Doc. 2722); March 27, 2018 (evidentiary and show cause hearings, Doc. 2735); April 10, 2018 (show cause hearing, Doc. 2757); April 11, 2018 (status hearing, Doc. 2764); May 9, 2018 (status hearing, Doc. 2816); May 30, 2018 (status hearing, Doc. 2843); June 1, 2018 (evidentiary hearing, Doc. 2850); June 4, 2018 (status hearing, Doc. 2854); June 6, 2018 (status hearing, Doc. 2860); June 12, 2018 (status and evidentiary hearing, Doc. 2879); June 13, 2018 (status and evidentiary hearing, Doc. 2880); and June 14, 2018 (status and evidentiary hearing, Doc. 2882).

Notably, the Court's finding of contempt alone is also a basis for fees. *See, e.g., Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 958 (9th Cir. 2014) ("We hold that the Plaintiffs are entitled to recover attorney's fees and costs incurred in bringing and prosecuting these contempt proceedings."); *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985) ("Attorneys' fees frequently must be expended to bring a violation of an order to the court's attention. . . . We therefore conclude that the trial court should have the discretion [in contempt proceedings] to . . . decide whether an award of fees and expenses is appropriate"); *Webb*, 285 F.3d at 834-35 (affirming award of attorneys' fees as a remedy for contempt in jail conditions case).

Despite this difficult course of litigation, Plaintiffs' counsel has still managed to produce excellent results for the Plaintiff class by vigorously enforcing the terms of the Stipulation and its 103 health care performance measures. In addition to the Court's orders on June 22, 2018 holding Defendants in contempt and imposing fines, the Court separately issued the following additional orders:

1. Granting in part and denying in part Defendants' motion for leave to cease monitoring certain performance measures. [Doc. 2900 at 12] In that same order, the Court concluded that there are "profound and systemic concerns" with Defendants' monitoring methodology and gave notice that it will appoint an expert pursuant to Federal Rule of Evidence 706 to conduct a review of the monitoring process. [Doc. 2900 at 6, 12-14]

2. Finding non-compliance with numerous performance measures at multiple prison complexes, and giving notice that it will appoint third-party experts to create a remediation plan for these measures. [Doc. 2905 at 3-4]

3. Directing Defendants to submit a plan to implement the recommendations contained in the final report by the Court's Rule 706 expert. [Doc. 2904 at 1; final report at Doc. 2940-1, Ex. 1]

4. Directing Defendants to re-install Health Needs Request (HNR) boxes (receptacles for collecting written requests for health care from class

members), which Defendants had unilaterally removed from the prison complexes. [Doc. 2901 at 4-5]

Due to the superior performance of Plaintiffs' counsel and the excellent results achieved for the Plaintiffs, the Court **FINDS** that a 2.0 enhancement is warranted here.

Reasonable attorneys' fees include reimbursement of expenses and the Stipulation specifically allows Plaintiffs to seek costs when they are a prevailing party. [Doc. 1185 ¶ 43] Plaintiffs' counsel have provided the Court itemized lists of expenses appended to the Kendrick and Fathi Declarations. [Kendrick Decl., Ex. B; Fathi Decl., Ex. B] The expenses reflected in Plaintiffs' counsels' records are those for which reimbursement is typically billed to clients. [*See* Kendrick Decl. ¶ 8; Fathi Decl. ¶ 20] The Court **FINDS** that Plaintiffs' expenses in the amount of $45,082.60 are reasonable.

**IT IS THEREFORE ORDERED** that Defendants shall pay $801,477.60 in attorneys' fees, a $801,477.60 enhancement to those fees, and $45,082.60 in expenses. In total, Defendants shall pay Plaintiffs' counsel $1,648,037.80 in fees, costs and enhancements plus interest from the date of this order pursuant to 28 U.S.C. § 1961.