Office of the Arizona Attorney General
Michael E. Gottfried, Bar No. 010623
Assistant Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004-1592
Telephone: (602) 542-1645
Fax: (602) 542-3393
Michael.Gottfried@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-ROS<br><br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS (DKT. 3017)**<br><br>**(Oral Argument Requested)** |

## I.    INTRODUCTION

The parties' settlement agreement ("Stipulation") was the culmination of months of negotiations and compromises.    It represents the well-thought-out, bargained-for agreements that the parties reached in order to resolve this case.  In approving it, the Court noted "[b]oth parties . . . reached a settlement that the Court can say, beyond any reasonable doubt, is fair, reasonable and adequate in light of the circumstances." (*Id.* at 3.)  Appreciating the Stipulation was a representation of give-and-takes, the Court also

noted that, "a compromise of hotly contested issues will leave each side wanting, receiving something less than their highest and best expectations." (*Id*. at 2-3.)

Among the various compromises reached by the parties was an agreement regarding Plaintiffs' fees, and ability to seek future fees. At the time of settlement, Defendants agreed to pay Plaintiffs $4,900,000 in attorneys' fees. (Dkt. 1458.) The parties agreed that future fee requests would be subject to the Stipulation's terms. As discussed below, the Stipulation restricts Plaintiffs' ability to recover additional fees to two limited circumstances.

First, Plaintiffs may request "up to $250,000 "per calendar year for costs incurred to monitor or enforce the relief set forth in this Stipulation." (Dkt. 1185 at ¶44.) Second, if Plaintiffs "*move to enforce* any aspect of this Stipulation and the Plaintiffs are the *prevailing party with respect to the dispute*, the Defendants agree that they will pay reasonable attorneys' fees and costs, including expert costs, to be determined by the Court." (*Id*. at ¶43.) (emphasis added). Stated another way, Plaintiffs receive $250,000 a year to monitor and generally enforce the Stipulation ("Monitoring Fees").[1] To the extent Plaintiffs file a motion to enforce performance measures that are substantially non-compliant, and prevail with respect to the particular dispute, they are entitled to additional, reasonable fees ("Motion to Enforce Fees"). The Stipulation contains no other provision for attorneys' fees. To date, Defendants have paid Plaintiffs $806, 616.75 in Monitoring Fees. *See* Exhibit 1 (Declaration of A. Landry). Combined with the original fees settlement of $4,900,000, Defendants have paid Plaintiffs a total of **$5,706,616.75** in fees.[2]

---

[1] Paragraph 44 clarifies that this includes "any work performed in mediating disputes before the Magistrate pursuant to paragraph[] . . . 31 . . . or to any work performed before the District Court to enforce or defend this Stipulation." Read together, this means work performed outside these two specific tasks, including work performed pursuant to Paragraph 30 (notice of substantial non-compliance) are considered monitoring activities that go towards the $250,000 fee cap, and cannot be recovered once that cap is reached in a calendar year, even if Plaintiffs later prevailed on a motion to enforce regarding a dispute contained within the notice.

[2] This does not include the Motion to Enforce fees Plaintiffs request here or those subject to Defendants' appeal of the Court's June 22, 2018 Order. (Dkt. 2902.)

Plaintiffs' instant Motion requests Motion to Enforce Fees pursuant to Paragraph 43. (Dkt. 1185 at 43.) Therefore, the Court must determine whether Plaintiffs: (1) filed a motion to enforce an aspect of the Stipulation; *and* (2) were the prevailing party with respect to the dispute they moved on. (*Id.*) As detailed below, Plaintiffs cannot meet either of Paragraph 43's prongs because they refuse to track their billing entries with sufficient detail to allow the Court to determine whether they prevailed with respect to a dispute raised in a motion to enforce. (Dkts. 3018-1, 3019-1.)[3] Knowing they cannot meet the Stipulation's burden for a motion to enforce fees, Plaintiffs urge the Court to ignore the Stipulation's plain language and compensate them for any and all time billed on this case. The Stipulation cannot be rewritten to accommodate Plaintiffs' buyers' remorse. For this reason, and those detailed below, Plaintiffs' Motion should be denied.

## II.   LEGAL STANDARD

Federal courts view settlement agreements as contracts. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1990) (citations omitted). The interpretation and enforcement of a settlement agreement is governed by principles of state contract law. *See Botefur v. City of Eagle Point*, 7 F.3d 152, 156 (9th Cir.1993); *Hisel v. Upchurch*, 797 F.Supp. 1509, 1517 (D.Ariz.1992). Here, we apply Arizona contract law, as the Stipulation was entered into in Arizona and pertains to the provision of healthcare to inmates incarcerated in Arizona prisons.

---

[3] Additionally, attached as Exhibit 2 are highlighted versions of Plaintiffs' bills. As Defendants have done in the past, blue highlights represent entries that are obviously not recoverable under Paragraph 43. Yellow highlights represent entries that, if Plaintiffs provided Defendants more detail, Defendants may be willing to pay. As discussed *infra*, Plaintiffs have previously refused to provide such detail after Defendants provided them with highlighted bills in an attempt to resolve fee issues.

III.   **LEGAL ARGUMENT**

A.   **The Stipulation Requires Plaintiffs to be the Prevailing Party With Respect to a Dispute Raised in a Motion to Enforce Before They Can Recover Fees Under Paragraph 43.[4]**

In order for Plaintiffs to recover Motion to Enforce fees beyond the $250,000 in Monitoring Fees Plaintiffs receive each year, the Stipulation requires Plaintiffs to prove two things: (1) they *moved to enforce* an aspect of the Stipulation; and (2) they were the *prevailing party with respect to that dispute*. (Dkt. 1185 at ¶43.) (emphasis added).

In demanding additional fees, Plaintiffs ignore Paragraph 43's qualifying language and requirements, and argue they should recover any and all fees expended (regardless of whether they moved to enforce the Stipulation and regardless of whether they prevailed on the dispute they moved on) because they believe they have "generally prevailed" thus far. If this were true, Plaintiffs would be entitled to all fees incurred. Clearly, that is not what the parties bargained for, as they limited Plaintiffs' ability to recover fees to $250,000 for Monitoring Fees and required Plaintiffs to meet two additional requirements in order to recover Motion to Enforce fees. (Dkt. 1185 at ¶¶43-44.) Adopting Plaintiffs' argument would undo the structure of the parties' fee agreement and result in ambiguity with respect to what it means to "prevail" under the Stipulation.

1.   **Plaintiffs Cannot Rewrite the Stipulation to Remove Unhelpful Terms and Replace Them With Helpful Terms.**

"The intent of the parties, as ascertained by the language used, must control the interpretation of a contract. It is not within the province or power of the court to alter, revise, modify, extend, rewrite or remake an agreement. Its duty is confined to the construction or interpretation of the one which the parties have made for themselves." *Goodman v. Newzona Inv. Co.*, 421 P.2d 318, 320 (Ariz. 1966). "Where parties bind themselves by a lawful contract, in the absence of fraud, a court must give effect to the contract as it is written, and the terms or provisions of the contract, where clear and

---

[4] The Order on Plaintiffs' First Fees Motion is currently on appeal. As such, both parties assert arguments that have previously been rejected by the Court, but are currently before the Ninth Circuit.

unambiguous, are conclusive. . . . The intent of the parties, as ascertained by the language used, must control the interpretation of the contract." *Shattuck v. Precision–Toyota, Inc*., 115 Ariz. 586 (1977) (citations omitted).

Plaintiffs argue "prevailing party" should not mean "with respect to the dispute they moved on," (as the Stipulation states), but should mean "prevailing party on any significant issue" because, they claim, it should not matter that they did not prevail on every motion to enforce they filed. (Dkt. 3017 at 11.) This argument is belied by the Stipulation's own text: "In the event that Plaintiffs move to enforce *any aspect* of this Stipulation *and* the Plaintiffs are the *prevailing party with respect to the dispute . . .*" (Dkt. 1185 at ¶43) (emphasis added). Contrary to Plaintiffs' argument, it is *only* when they prevail on a specific dispute raised in a motion to enforce that they are entitled to compensation under Paragraph 43. (*Id*.) Neither Plaintiffs nor the Court can expand language "*or add something to the contract which the parties have not put there.*" *Emp'rs Mut. Cas. Co. v. DGG & CAR, Inc*., 218 Ariz. 262, ¶ 24 (2008) (emphasis added); *see also Jeff D. v. Andrus*, 899 F.2d 753, 758 (9th Cir. 1989) ("[c]ourts are not permitted to modify settlement terms or in any manner to rewrite agreements reached by parties.") (citations omitted).

The Court should deny Plaintiffs' request that it rewrite the Stipulation. Plaintiffs bound themselves to the terms of the Stipulation and cannot modify it to expand and/or change the terms so as to allow them to recover additional attorneys' fees. Plaintiffs gave up that ability by entering into the bargained-for compromises on attorneys' fees, and choosing the particular qualifying language contained in Paragraphs 43 and 44. The Court should reject Plaintiffs' attempt to re-write the Stipulation and hold Plaintiffs to the agreement they bargained for.

The parties' word choice matters. Courts must attempt to give meaning to every word in a contract, and avoid interpretations that render a word superfluous. *Scholten v. Blackhawk Partners*, 909 P.2d 393, 396 (Ariz. Ct. App. 1995) ("a contract should be construed to give effect to all of its provisions and to prevent any of the provisions from

1    being rendered meaningless"); *Aztar Corp. v. U.S. Fire Ins. Co.*, 224 P.3d 960, 975 (Ariz.

2    Ct. App. 2010) ("It is a cardinal rule of contract interpretation that we do not construe one

3    term of a contract to essentially render meaningless another term.").  That the parties

4    explicitly agreed to situations where Plaintiffs could recover additional fees beyond the

5    annual $250,000 Monitoring Fees cap shows the parties were capable of being specific

6    about which categories of fees they intended to shift. (Dkt. 1185 at ¶¶43-44.)

7        Removing Paragraph 43's qualifying language ("with respect to the dispute"), as

8    Plaintiffs suggest, renders that language superfluous and meaningless, the result of which

9    would run afoul of the plain language of the Stipulation, the parties' intent, and contract

10   law principles.  *See Trustees of the Aftra Health & Retirement Funds v. KTVU, Inc*., No.

11   C-93-0370 MHP, 1996 WL 721831, at *5 (N.D. Cal. Dec. 3, 1996) (use of qualifier to

12   define services covered by contract "more than suggests that there are services which are

13   not covered"); *Absher Constr. Co. v. N. Pac. Ins. Co*., 861 F. Supp. 2d 1236, 1249 (W.D.

14   Wash. 2012) (rejecting interpretation of contract that "effectively wr[o]te the word

15   'ongoing' out of the policy" because "if this were the parties' intent, there would be no

16   need to include the word 'ongoing' as a modifier of the word 'operations'").  Here, the

17   parties' decision to qualify when Plaintiffs would be entitled to fees under Paragraph 43

18   meant their intent was that fees expended on other events were not recoverable.

19       And the parties' inclusion of qualifying language was deliberate and intentional.

20   They agreed only to compensate Plaintiffs for particularized successes.  This is important

21   because, despite Plaintiffs' sweeping claims of "success," the truth is Plaintiffs do not

22   always prevail.  To use a recent example, this Court recently denied one of Plaintiffs'

23   Motions to Enforce, finding the following PMs at the following facilities to be in

24   substantial compliance:  PM 19 at Perryville, Phoenix, and Tucson; PM 67 at Florence

25   and Perryville; and PM 73 at Tucson.  (Dkt. 3020 at 1.)  The Court also refused to order

26   Defendants to submit a remediation plan for the following PMs and facilities because they

27   were recently compliant:  PM 44 at Winslow; PM 48 at Tucson; PM 95 at Tucson; PM 96

28   at Tucson; and PM 98 at Tucson.  (*Id*.)  Based on these findings, Plaintiffs were only

1    successful on **27%** of the disputes raised in that motion to enforce.   Because the

2    Stipulation clearly states they can only be compensated for *specific disputes* they prevail

3    on, they are not entitled to fees expended on moving to enforce specific PMs and facilities

4    that were unsuccessful.   As a result, Plaintiffs are only entitled to fees which can be

5    directly tied to their work enforcing measures and facilities they prevailed on.

6          *Barden v. City of Sacramento* is illustrative.   The plaintiffs in *Barden* filed a civil

7    rights class action.   *See Barden v. City of Sacramento*, 2:99-CV-00497 MCE, 2013 WL

8    2421741, at *1 (E.D. Cal. June 3, 2013).   Ultimately, the parties entered into a settlement

9    agreement with the assistance of a magistrate judge.   *Id*. at *1.   The agreement provided

10   for fees and costs in three separate sections, one of which capped plaintiffs' monitoring

11   fees at $3,000 per year.   *Id*.   Plaintiffs filed a motion seeking additional costs beyond the

12   $3,000 cap.   *Id*. at *2.   The Court found that the parties' settlement agreement prohibited

13   Plaintiffs from seeking additional fees because, as is the case here, "the parties engaged in

14   extensive   negotiations   that   focused,   in   part,   specifically   on   attorney   fees   thereby

15   demonstrating an intent to settle the attorney fees question" and "the parties addressed the

16   award of attorney fees in three separate sections of their agreement including negotiated

17   fees   for   three   years   of   post-judgment   monitoring   work . . ."   *Id*.   As   such,   the   Court

18   rejected   plaintiffs'   argument   for   additional   fees   because,   "contrary   to   [plaintiffs']

19   assertion, this is not a case where a settlement agreement or consent decree was silent or

20   ambiguous with respect to attorneys' fees and costs . . . [h]ere, the settlement agreement

21   contained   unambiguous   provisions   for   the   award   of   attorney   fees   and   costs   in   three

22   separate sections."   *Id*.   The court held that the parties' agreement was clear as to the cap

23   on fees and the requirements necessary for additional fees.   *Id*. *5.   Finding plaintiffs

24   failed to meet the requirements for additional fees, the court denied their motion.   *Id*.

25         This case is analogous to *Barden* in numerous ways.   Here, the Stipulation also

26   contains two sections which clearly delineate when Plaintiffs are entitled to fees.   This

27   evidences the parties' intent to limit an award of fees to those narrow circumstances.

28   Despite this plain language and the agreed upon cap, Plaintiffs attempt to obtain fees

1    beyond what the parties agreed to.  Just as the Plaintiffs in *Barden*, Plaintiffs here argue

2    they should be entitled to *all* fees simply because they believe they *generally* prevailed.

3    The Court should follow the *Barden* court's reasoning—Plaintiffs cannot establish the

4    Stipulation's pre-requisites for additional fees, and their motion should be denied.

5         Indeed, courts have refused to award additional fees beyond the specific fee

6    provisions outlined in the parties' agreement.  *See Partners for Payment Relief, LLC v.*

7    *Dreambuilder Investments, LLC*, 12-CV-1414(RJS), 2016 WL 4205595, at *4 (S.D.N.Y.

8    Aug. 8, 2016) (rejecting plaintiff's request for additional attorneys' fees beyond those

9    outlined in the settlement agreement); *Masood v. Capital Credit & Collection Serv., Inc.,*

10    CV05-490, 2006 WL 294795, at *4 (D. Or. Feb. 6, 2006) (declining to award plaintiff's

11    costs because doing so would be contrary to the parties' settlement agreement).  Plaintiffs'

12    argument is not supported by the plain language of the Stipulation and context in which

13    the fees provision appears.  *See Miller v. Hehlen*, 209 Ariz. 462, ¶12 (App. 2005) (courts

14    use common sense in interpreting contracts).  Why would the parties agree to cap fees if

15    the parties' intent was that Plaintiffs recover for any and all fees expended on this case?

16         Alternatively, Plaintiffs urge the Court to look to 42 U.S.C. § 1988 to define

17    "prevailing party." (Dkt. 3017 at 11.)  This argument fails for the same reasons discussed

18    above, and because § 1988 is not referenced in Paragraph 43 nor anywhere else in the

19    Stipulation.  Moreover, Plaintiffs did not prevail pursuant to § 1983, as Defendants denied

20    liability and denied Plaintiffs prevailed on their claim that Defendants violated Plaintiffs'

21    right to constitutionally adequate healthcare.  These denials were incorporated into the

22    Stipulation. (Dkt. 1185 at ¶5.)  Had the parties desired §1988 to play any role, they would

23    have stated so. (Dkt. 1185 at ¶43.) Plaintiffs' argument is further misplaced because the

24    parties defined "prevailing party" themselves and qualified it with specific language:

25    "prevailing party with respect to that dispute [raised in a motion to enforce]." (Dkt. 1185

26    at ¶43.)    Further, the Court previously rejected Plaintiffs' argument that § 1988 has any

27    application to the Stipulation because, ". . . this is not a Section 1988 case and so those

28

[cases] have limited precedential value in this matter."). [5]

2. **Plaintiffs' Time Entries Fail to Reveal Whether They Were the Prevailing Party With Respect to a Dispute Raised in a Motion to Enforce.**

In order to recover fees and costs under Paragraph 43, Plaintiffs were required to include sufficient detail to determine whether they were ultimately the prevailing parties with respect to each time entry. The only way to determine whether Plaintiffs were the prevailing party with respect to a dispute raised in a motion to enforce (thereby triggering recovery of Motion to Enforce Fees pursuant to Paragraph 43) is if the time entry includes: (1) the task performed in bringing a dispute by way of a motion to enforce; (2) the performance measure and facility sought to be enforced; and (3) the date of the enforcement motion. Plaintiffs could, should, and were required to delineate their time entries with respect to specific disputes (e.g., Prepare Notice of Non-Compliance for PM 98 at Tucson; Prepare section of Plaintiffs' Motion to Enforce with respect to PM 19 at Winslow). They elected not to. None of Plaintiffs' time entries provide this detail, let alone identify whether they prevailed with respect to the dispute, as discussed in Section IIIA, *supra*. Defendants have previously attempted to work with Plaintiffs to obtain these requisite details, but Plaintiffs have consistently refused. (Dkt. 2394-02 at ¶¶ 3-16.)[6] As a result, it is impossible to determine whether Plaintiffs were the prevailing parties on any of the time entries they seek reimbursement for. This failure alone requires denial of

---

[5] The cases Plaintiffs rely on are irrelevant because, here, the parties defined the term themselves. Moreover, none of the cases Plaintiffs rely on involved the unique set of facts present here: interpretation of a settlement agreement that was enacted without any finding on the merits of Plaintiffs' Complaint. *See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989) (finding respondent to be the "prevailing party" where its summary judgment motion was granted in part and therefore it had achieved success on a significant issue); *Farrar v. Hobby*, 506 U.S. 103 (1992) (affirming the Fifth Circuit's judgment and holding that while a plaintiff who recovers nominal damages is technically a prevailing party, not all prevailing parties are entitled to attorneys' fees where petitioner was granted nominal damages at trial); *Stivers v. Pierce*, 71 F.3d 732 (9th Cir. 1995) (reversing denial of attorneys' fees where plaintiffs' injunctive relief claims were settled, but summary judgment was granted to defendants on plaintiffs' remaining claims).

[6] Based on prior unsuccessful attempts to obtain the necessary detail, Defendants believe additional attempts would be futile.

Plaintiffs' Motion.

> ### 3. Plaintiffs' Laundry List of Excuses for Why Their Time Entries Lack the Detail Required by Paragraph 43 Fail.

Plaintiffs' reasons for their decision not to keep detailed time entries in accordance with the Stipulation's requirements all lack luster. First, Plaintiffs argue impossibility. Specifically, that all time spent on this case is "indistinguishable" because it "all involved the common issue of Defendants' failure to comply with the Stipulation and their resulting failure to provide class members the health care to which they are legally entitled." (Dkt. 3017 at 16.)[7]  Setting aside the fact the Stipulation requires Plaintiffs to keep such detailed time entries, this argument is unconvincing.

Defendants first address the "failure to provide class members the health care to which they are legally entitled" portion of Plaintiffs' "impossibility" argument.  As the Court has previously acknowledged, the Stipulation does not require 100% compliance. (Dkt. 2118 at 3.)  Therefore, that not every inmate's provision of healthcare meets or exceeds the individual requirements of the Stipulation is irrelevant to whether Defendants are complying with the Stipulation's requirements.  Similarly, many of the Stipulation's requirements exceed constitutional minimums.  Thus, an inmate who did not receive care consistent with the Stipulation does not translate to an inmate that received unconstitutional care.  Despite Plaintiffs' assumptions, the Stipulation does not give any inmate the "legal right" to the care outlined within it.  Rather, inmates are entitled to constitutionally adequate care—a requirement that is separate and distinct from the settlement agreement entered into by the parties.  To the extent Plaintiffs expended time on disagreements with respect to individual inmate healthcare, neither Paragraph 43 nor any other provision of the Stipulation provides for recovery of those fees.  And Plaintiffs cannot cure this by casting the "Motion to Enforce" label on all time entries, as they

---

[7] Ironically, Plaintiffs' summary of their efforts contains no reference to motions to enforce or prevailing party—the only two events that, when combined, trigger Paragraph 43's applicability.  (Dkt. 1185 at ¶43.)

attempt to do here.[8]  Second, "failure to comply with the Stipulation" is not grounds for recovery of fees as Plaintiffs suggest.  Rather, time spent prevailing on disputes raised in a motion to enforce is recoverable.  Plaintiffs have not shown this.

Crafting time entries that comply with the detail required by Paragraph 43 is simple.  The ease at which Plaintiffs could have tracked their time to include the requisite detail is represented in Plaintiffs' own motions to enforce.  Indeed, in each, Plaintiffs spell out with particularity each measure and facility they moved on.  (Dkts. 1535, 1625, 1663, 1863, 1944, 2253, 2520.)  Because each motion to enforce details specific performance measures at specific facilities, and because each performance measure requires specific action, the time spent on each is easily distinguishable, traceable, and trackable.  It is therefore difficult to understand how including these items is "impossible," as Plaintiffs represent to the Court.  Especially since Defense counsel captures their time in this fashion.  (Dkt. 2394-2 at ¶22.)

In an attempt to conceal their bargained-for-burden from the Court, Plaintiffs fill their Motion with personal beliefs regarding their general success:  "extraordinary success in vindicating the rights of the Plaintiff class . . ." (Dkt. 3017 at 9.); "enormous amount of work, time, efforts, and costs expended by Plaintiffs . . ." (*Id*.); "Plaintiffs have continuously and repeatedly prevailed in their efforts to enforce the Stipulation." (*Id*. at 11.)  None of these personal avowals are supported with documentation establishing Plaintiffs were the prevailing party with respect to a specific dispute raised in a motion to enforce.  Sweeping assertions of generic successes are not compensable under Paragraph 43 of the Stipulation.

4.      **The Stipulation Does Not Allow Plaintiffs to Recover Fees Associated With Contempt Proceedings, Fees Motions, or Law Student Time.**

As discussed in Section III(A)(1), *supra*, Plaintiffs cannot re-write the Stipulation

---

[8] Defendants urge the Court to review Plaintiffs' billing records in detail.  They are saturated with entries that are unrelated to motions to enforce, unrelated to monitoring (which is capped at $250,000), and often unrelated to the Stipulation at all.  (Dkts. 3018-01, 3019-1.)

to include provisions that are not present or remove qualifying language that no longer serves them.  Plaintiffs argue that because Magistrate Judge Duncan found Defendants in contempt (an order that is currently on appeal), Defendants should compensate Plaintiffs for "all of Plaintiffs' time and expenses during the 2017-2018 Enforcement Period."  (Dkt. 3017 at 12.)   Not surprisingly, Plaintiffs fail to cite to any provision of the Stipulation requiring Defendants to reimburse Plaintiffs for fees in the event Defendants are held in contempt.  The Stipulation contains no such provision.   Similarly, Plaintiffs request fees expended on fees motions, but the Stipulation does not provide for fees expended in requesting fees.  This is particularly so where Plaintiffs spent over 129 hours preparing their First Fees Motion.  *See, Mays v. Stobie*, 3:08-CV-552-EJL, 2012 WL 13024269, at *1 (D. Idaho Nov. 9, 2012) (reducing the reasonable amount of hours for the attorneys' fee motion to 43 hours from 94.1 hours); *Jones v. County of Sacramento*, No. CIV S–09–1025 DAD, 2011 WL 3584332, at *21 (E.D. Cal. Aug. 12, 2011) (reducing by half the fees awarded for an attorneys' fee motion on which counsel spent 153 hours); *Beecham v. City of West Sacramento*, No. Civ. S–07–1115 JAM EFB, 2009 WL 3824793, at *6–7 (E.D. Cal. Nov. 16, 2009) (reducing by half the fees awarded for an attorneys' fee motion on which counsel spent 175 hours).

###    B.    The Lack of Detail in Plaintiffs' Time Entries Forecloses the Ability to Determine Whether They Were Reasonably Incurred.

Notwithstanding Plaintiffs' failure to meet the Stipulation's requirements for compensation of time under Paragraph 43, Plaintiffs' billing entries also fail to meet general fee applicant requirements, including the time entry detail requirements of LRCiv. 54.2.[9]  Indeed, it is Plaintiffs' burden to prove that the fees requested were reasonable and necessarily incurred.  "The party requesting fees for [attorney] work must submit evidence documenting the hours claimed, and if the documentation is inadequate, or the claimed hours appear 'excessive, redundant, or otherwise unnecessary,' the court should reduce

---

[9] LRCiv. 54.2(e) requires stringent details in billing records, including specific requirements for legal research, telephone conferences, and preparation of pleadings and other papers.

the award accordingly." *Webb v. Bd of Educ. of Dyer Cnty., Tenn.,* 471 U.S. 234, 253 n. 16 (1985) (citation omitted).

Vague billing entries are not recoverable.  *See Kelly v. Wengler*, 822 F.3d 1085, 1093 (9th Cir. 2016); *see also Wolfe v. City of Port*land, 3:12-CV-02035-PK, 2013 WL 6002391, at *5 (D. Or. Nov. 8, 2013) (finding that plaintiffs attorneys' billings records "reveal hundreds of time entries with vague descriptions, such as 'email with client', 'email with opposing counsel,' and 'email with associate . . . [and] provide the court with no basis for determining whether the time billed for the task was 'excessive, redundant, or otherwise unnecessary.'"); *Mitchell v. Chavez*, 113CV01324DADEPG, 2018 WL 3218364, at *9 (E.D. Cal. June 29, 2018) (finding a billing entry that read "case analysis regarding . . ." to be insufficient to allow the court to ascertain whether such analysis was reasonably necessary and related to the litigation.).

Paragraph 43 only entitles Plaintiffs to *reasonable* fees and costs.  (Dkt. 1185 at ¶43.)  Plaintiffs' careless billing entries foreclose the Defendants and the Court's ability to make this determination.  (Dkts. 3018-01, 3019-01.)  Plaintiffs' failure further justifies denial of their Motion.  *See Fitzgerald v. City of Los Angeles,* No. 03–1876, 2009 WL 960825, at *8 (C.D. Cal. Apr.7, 2009) (quoting *Smith v. Dist. of Columbia,* 466 F.Supp.2d 151, 158 (D.D.C. 2006)) ("[T]he fee applicant must provide 'sufficient detail' of its billing such that the court 'can evaluate what lawyers were doing and the reasonableness of the number of hours spent on those tasks.'"); *see also Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983) (the fee applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims").

While all of Plaintiffs' counsel's time entries are woefully deficient, Kirstin Eidenbach's are particularly egregious.  Her billing records include the following time entries: "review draft brief"; "review documents"; "review legal draft"; and "prepare for upcoming hearing", without any detail as to what brief she was drafting, documents she was reviewing, or hearing she was attending.   (Dkt. 3018-1 at 43-88.)  Moreover, she failed to submit any declaration regarding her billing entries, let alone one that claimed

her hours were reasonable and necessarily incurred.  None of Plaintiffs' counsel's entries should be awarded.

### 1.   The Lack of Detail in Plaintiffs' Time Entries Fails to Meet Private Clients' Bare Minimums.

"The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).   "In the private sector, 'billing judgment' is an important component in fee setting.  It is no less important here.  Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."  *Copeland v. Marshall,* 205 U.S.App.D.C.   390,   401   (1980)   (en   banc)   (emphasis   in   original). "A private client presented with a six-figure bill would expect substantial detail . . ." *See In re WHET, Inc*., 61 B.R. 709, 712 (Bankr. D. Mass. 1986).  Here, the Stipulation not only expects, but *requires* such detail.  As does the Ninth Circuit and the Local Rules for the District of Arizona, as discussed above.  Required detail is missing from Plaintiffs' entries as exemplified in Exhibit 3 (Examples of Plaintiffs' deficient time entries).[10]  No private client would pay the bills submitted by Plaintiffs, and Defendants should not have to either.  (Dkt. 2394-2 at ¶23.)

### 2.   Plaintiffs Cannot Recover for Non-Billable Work or Improper Billing Practices.

Plaintiffs cannot recover for clerical tasks.  *Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (1989) ("purely clerical work or secretarial tasks should not be billed at a paralegal or lawyer's rate, regardless of who performs them.").   For example, Plaintiffs' billing records contain numerous entries for creating binders and booking travel.  Such entries are non-billable, clerical tasks that Plaintiffs cannot recover.  *Smith v. A-Check Am. Inc*., EDCV1600174VAPKKX, 2017 WL 3610592, at *10 (C.D. Cal. July 18, 2017) (finding

---

[10] Exhibit 3 contains examples of Plaintiffs' deficient time entries.  Plaintiffs' entries are replete with vague and ambiguous entries that would never pass the muster of a private client.  (Dkt. 2394-02 at ¶23.)

14

that making travel plans and creating a mediation binder were secretarial tasks that are overhead expenses reflected in the hourly rate).  Exhibit 4 contains examples of Plaintiffs' clerical task time entries.

Additionally, Plaintiffs continue to submit billing entries for time spent on appellate matters, despite the Court's Order that they cannot recover such fees.[11]  And they bill for tasks unrelated to the case, let alone a motion to enforce.[12]  That Plaintiffs included these entries in their fee request demonstrates that Plaintiffs included any and all time billed under the guise that all work on this case is "indistinguishable" and should therefore be recoverable under Paragraph 43.[13]

Further, Plaintiffs' time entries suffer from the prohibited practice of "block billing."  The Ninth Circuit defines block billing as "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007).  Block billing "'renders it virtually impossible to break down hours,' leaving the court without the ability to accurately determine whether a reasonable amount of time was spent by counsel on a discrete task." *Bell v. Vista Unified Sch. Dist.,* 82 Cal.App.4th 672, 689 (2000).  Block billing warrants a reduction in the number of hours spent on a matter where, because of the manner of billing, the court cannot ascertain whether such hours could "reasonably be billed to a private client."

---

[11] On December 19, 2017, the Court ordered Plaintiffs to resubmit their bills to exclude (among other categories) time spent on appellate matters. (Dkt. 2503.) Plaintiffs resubmission failed to remove these categories, as detailed in Defendants' Reply to Plaintiffs' Response to that Order.  (Dkt. 2575 at 6-8.)  The billing records attached to the instant motion suffer from the same deficiencies.  Examples of these time entries are attached as Exhibit 5.

[12] For example, Plaintiffs submit billing entries for de-designating expert reports as confidential so they can use them in other cases. (Dkt. 3019-1 at 91.); Exhibit 7 (Email exchange evidencing Plaintiffs desire to use Penn Report in other matters).

[13] Add to this, Plaintiffs allege their billing entries do "not even include [their] regular monitoring work in Parsons during this one year period, which includes the review and analysis of monthly document productions, site visits to institutions, and correspondence with class members." (Dkt. 3018 at ¶4.)  Yet, their billing records are littered with entries for such tasks.  Exhibit 8 contains various examples of such entries.

15

1    *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).   Examples of

2    Plaintiffs' block billing are contained in Exhibit 6.

3            **C.    The Stipulation Caps Plaintiffs' Counsel's Hourly Rate.**

4            Plaintiffs' deficient billing entries requires denial of their Motion.   If the Court is

5    inclined to award any fees, however, the Stipulation caps the hourly rate and precludes

6    any enhancement.   Plaintiffs concede that, pursuant to the Stipulation, the hourly rate of

7    attorneys' fees is governed by 42 U.S.C. § 1997e(d):

8                    **No** award of attorneys' fees . . . shall be based on an hourly
                    rate greater than 150 percent of the hourly rate established
9                    under section 3006A of Title 18 for payment of court-
                    appointed counsel.
10

11   (emphasis added)

12          By agreeing to the hourly rate prescribed by § 1997e(d), Plaintiffs agreed to cap

     their hourly rate at 150% of the CJA rate.[14]   Plaintiffs cite to the Judiciary FY 2018
13
     Congressional Budget Summary to suggest "the current rate authorized by the Judicial
14
     Conference for the payment of court-appointed counsel is $147 . . ." (Dkt. 3017 at 17.)
15
     They cite no case law to support this assertion or proof that this budget or rate increase
16
     was actually approved.   *See Gilman v. Brown*, CIV. S-05-830 LKK/CK, 2014 WL
17
     3735401, at *3 (E.D. Cal. July 28, 2014) (rejecting Plaintiffs' reliance on rate requested in
18
     congressional budget because there was no evidence that it "override[s] the official,
19
     published determination of the Judicial Conference [.]").   While they include a link to the
20
     alleged budget in a footnote, the link is inoperative.   (*Id*. at 17.)   Defendants, however,
21
     assume Plaintiffs rely on the "maximum rate" the Judicial Conference can approve under
22
     18 U.S.C. § 3006A(d)(1), not the rate requested by the Administrative Office of the U.S.
23
     Courts (much less approved by the Judicial Conference), as this is the rate they have relied
24
     upon in previous filings.   (Dkt. 3017 at 17.)   Their reliance is misplaced.
25

26          [14] "[S]imply because the PLRA sets a maximum rate does not mean that Plaintiffs
     are entitled to recover attorneys' fees at that rate." *Plata v. Schwarzenegger*, C01-1351
27   TEH, 2009 WL 2997412, at *2 (N.D. Cal. Sept. 16, 2009). Plaintiffs still have the burden
     of demonstrating their requested fee award, including the claimed hourly rates, is
28   reasonable. *Id*.

The correct rate is found in the Judicial Conference's Judiciary Policy § 230.16. *See Gilman*, 2014 WL 3735401, at \*\*6-7; *Hedrick v. Grant*, 2:76-CV-00162-GEB-EF, 2014 WL 4425816, at \*8 (E.D. Cal. Sept. 8, 2014) (quoting 7 Guide to Judiciary Policy § 230.16 for the rates established by the Judicial Conference).  Since the Judicial Conference has changed the established hourly rate over the past several years, the baseline rate of compensation under the PLRA depends on when the services were performed. *See Gilman*, 2014 WL 3735401, at \*1 ("[T]he baseline rate . . . depends on the year the services were performed . . .").  Plaintiffs seek compensation for billing entries captured from July 1, 2017—June 30, 2018.  (Dkt. 3017 at 7.)  The CJA rate varied from 2017—2018.  The Judicial Conference approved a maximum hourly rate of $132 for services performed between 5/5/17—3/22/18 and $140 for services performed between 3/23/18—present.[15]  Therefore, the highest rate Plaintiffs' counsel can recover, pursuant to § 1997e(d)(3), is $198 and $210, respectively.  *See Graves v. Arpaio*, 633 F. Supp. 2d 834, 840 (D. Ariz. 2009), *aff'd*, 623 F.3d 1043 (9th Cir. 2010) (noting the PLRA sets a *maximum* hourly rate, not a discount rate).

### 1.     Any Fees Awarded to Plaintiffs are Subject to the Applicable Historical Rate.

With Plaintiffs' First Fees Motion, the Court found that Plaintiffs unnecessarily delayed filing their Motion and, as a result, it refused to award Plaintiffs fees at current rates for time expended in prior years.  (Dkt. 2902 at 3-4.)  (". . . there is no explanation for why Plaintiffs waited until they had incurred 15 months of fees or what happened between January 2017 (when the fees through December 2016 were, presumably, known) and September 2017 (when the fee application was filed)").  With respect to this instant Motion, Plaintiffs again delayed, this time waiting 11 months before filing.  (Dkt. 3017.)  Indeed, Plaintiffs' fees through 2017 were presumably known in January 2018—over 10 months ago.  Plaintiffs should not be rewarded for delaying their fee request by getting compensation at a higher "current" rate.

---

[15] *See* Exhibit 9 (Judicial Conference's Approved CJA Rates).

Delay aside, as discussed in Section III(C), *supra*, Plaintiffs are not entitled to current rates because they agreed to cap their fees at rates set by the Judicial Conference, and the Judicial Conference's rates are determined by the date the service was performed. *See Gilman*, 2014 WL 3735401, at *2 (time entries governed by the rates set by the Judicial Conference "depend[] on the year the services were performed . . ."); *Hedrick*, 2014 WL 4425816, at *8 (same). Plaintiffs' counsel is counsel of record in a similar inmate class action where they lost the same argument they advance here. *See Plata*, 2009 WL 2997412, at *2) ("Plaintiffs seek reimbursement for work performed prior to the effective date of the new cap. This Court previously ruled that fees may not be recovered 'at the current PLRA rate for time incurred before the effective date of that rate.'").

Plaintiffs provide no argument or analysis as to why they should be compensated at current rates, and the cases they cite are unavailing where none of them involved a settlement agreement where the parties bargained for an hourly rate cap. To the extent Plaintiffs are entitled to any fees, they are subject to historical rates.

2. **Paralegal Rates are Determined by the Prevailing Market Rate in the Relevant Community and Subject to the PLRA Cap.**

Paralegal rates are determined by hourly market billing rates for paralegals in the Phoenix area. *See Schwarz v. Sec'y of Health and Human Servs.*, 73 F.3d 895, 906 (9th Cir.1995) ("[a] district court should calculate this reasonable hourly rate according to the prevailing market ranges in the relevant community, *which typically is the community in which the district court sits*.") (emphasis added); *see also Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) ("[g]enerally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits."). Plaintiffs carry the burden to establish that the fee sought is reasonable. *Plata*, 2009 WL 2997412, at *2.

Here, the relevant community is Phoenix, Arizona. Plaintiffs submit no evidence as to paralegal rates in Phoenix. Defendants do. The prevailing market rate in Phoenix, Arizona is $125—the same rate billed by paralegals at Defense counsel's firm. (Dkt.

2402-2 at ¶¶20-21.)  To the extent the Court is inclined to award any fees to Plaintiffs, the rate should be $125 for paralegal time entries.

### 3.   **Plaintiffs are Not Entitled to Recovery of Fees Expended by Law Students.**

In its Order on Plaintiffs' First Fees Motion, the Court refused to award Plaintiffs fees for time expended by law clerks.  (Dkt. 2902 at 9.)  The Court's decision was primarily based on Plaintiffs' failure to provide evidence that law clerks received actual compensation.  (*Id*.)  Plaintiffs now claim law clerks receive compensation, and ask the Court to award the same fee rate as their attorneys.  (Dkts. 3017 at 13-14, 19; 3018 at ¶7.) Plaintiffs' Motion lacks any explanation or analysis as to why the same PLRA rate should be applied to a student as is applied to a licensed attorney.  It should not.

Law students (even in California) bill significantly less on inmate cases than that requested by Plaintiffs.  *See Hall v. City of Fairfield*, 2:10–CV0508 DAD, 2014 WL 1286001, at *8 (E.D.Cal. Mar. 31, 2014) (setting hourly rate for law clerks at $125 per hour).  The Arizona District Court has found that "$181 is too much for students who have not graduated from law school or passed the full bar exam." *Nordstrom v. Ryan*, CV-11-02344-PHX-DGC, 2018 WL 1586751, at *3 (D. Ariz. Apr. 2, 2018).   Thus, Plaintiffs' demand that law students be compensated at $220.50 is unreasonable.  The law students' time should be reduced to one half of the PLRA baseline rates.  *See Hedrick,* 2014 WL 4425816, at *10 ("the reasonable hourly rate for the law students is one half of the PLRA baselines rates applicable to this action . . .").

### D.   **Any Fees Awarded Pursuant to Paragraph 43 of the Stipulation are Calculated Pursuant to the Stipulation's Terms not the Lodestar Method.**

As discussed above, Plaintiffs are not entitled to any of the fees they request as they have failed to provide billing entries that evidence they prevailed with respect to a dispute raised in a motion to enforce.  Even if they were, the fee award would be calculated under the PLRA because: (1) the lodestar framework does not apply to PLRA cases; and (2) the lodestar method is inapplicable where, as here, the parties stipulated to a

19

reasonable fee award.

> ### 1. The Lodestar is Inapplicable Here Because the Parties Agreed to Their Own Fee Terms.

As this Court has noted, "[b]ecause the Stipulation set the hourly rate, there is no true lodestar analysis here." (Dkt. 2902.) That is because the lodestar method was created to assist courts in calculating what a "reasonable" fee award is for a "prevailing party" under § 1988[16], as the statute itself did not describe or define that term. *See* 42 U.S.C. § 1988(b) (authorizing a prevailing party their "reasonable" attorneys' fees); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010) ("Unfortunately, the statute does not explain what Congress meant by a 'reasonable' fee, and therefore the task of identifying an appropriate methodology for determining a 'reasonable' fee was left for the courts."); *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 (9th Cir. 2009) ("The 'lodestar method' is the fundamental starting point in determining a 'reasonable attorney's fee.'").

Importantly, subsequent to the implementation of the lodestar framework, the PLRA was enacted and the fee landscape for inmate cases changed. *See Martin v. Hadix*, 527 U.S. 343, 349 (1999) ("The fee landscape changed with the passage of the PLRA."). Congress effectively replaced the lodestar framework with § 1997e(d) in cases brought by prisoners. *See Shepherd v. Goord*, 662 F.3d 603, 606 (2d Cir. 2011) ("With the 1996 enactment of the PLRA, Congress imposed "substantial restrictions" on § 1988(b) attorney's fee awards to prevailing prisoner-plaintiffs."); *Walker v. Bain*, 257 F.3d 660, 665 (6th Cir. 2001) ("Among the many new changes relating to prisoner civil rights suits, the PLRA modifies the application of 42 U.S.C. § 1988 to prevailing prisoners by providing stringent limitations on both the availability and the amount of attorney fee awards."); *Boivin v. Black*, 225 F.3d 36, 39 (1st Cir. 2000) ("In enacting the PLRA, Congress deviated from this pattern, choosing to place some explicit limitations on the fees that courts can award to prisoners' lawyers in civil cases."). The lodestar method has

---

[16] As discussed above, § 1988 is not relevant here.

therefore become obsolete in inmate litigation as the PLRA now defines the previously unanswered question of what constituted a "reasonable" fee –"150 percent of the hourly rate" established under the CJA for court-appointed counsel." 42 U.S.C. § 1997e(d)(3).[17]

Even if Plaintiffs were entitled to fees (they are not) and even if the lodestar applied to PLRA cases (it does not), **the lodestar does not apply here because the parties elected to define "reasonable" themselves**. (Dkt. 1185 at ¶43) (". . . Defendants agree that they will pay *reasonable* attorneys' fees and costs . . . the hourly rate of attorneys' fees is governed by 42 U.S.C. § 1997e(d)); *See St. Paul Fire & Marine Ins. Co. v. Muniz*, 19 Ariz. App. 5, 6 (1972) (when the parties to a contract define a term used in the contract, that definition is conclusive). Therefore, even if applicable, the assistance of the lodestar is not needed here as the parties bargained for and agreed upon what constitutes a reasonable fee, as well as the definition of "prevailing party." (Dkt. 1185 at ¶¶43-44.)

### 2.   **Plaintiffs are not Entitled to an Enhancement Because They Agreed to a Cap on Fees.**

Even assuming the above to be true (that the lodestar applies to PLRA claims and to the Stipulation), Plaintiffs are not entitled to an enhancement as the parties agreed to a cap on the hourly rate, and application of any enhancement would run afoul of the Stipulation's plain terms. Plaintiffs' decision and agreement to a cap on fees precludes any enhancement of their fees. *See Californians for Disability Rights v. California Dept. of Transp.,* C 06-05125 SBA MEJ, 2010 WL 8746910, at *22 (N.D. Cal. Dec. 13, 2010), *report and recommendation adopted sub nom, Californians for Disability Rights, Inc. v. California Dept. of Transp.,* C 06-5125 SBA, 2011 WL 8180376 (N.D. Cal. Feb. 2, 2011) (declining to address Plaintiffs' argument they were entitled to a multiplier where the parties' settlement agreement specifically discussed the fees to be recovered).

This is especially so given the lodestar method of calculating fees is strongly

---

[17] Defendants understand the Ninth Circuit rejected this interpretation in *Kelly v. Wengler*, 822 F.3d 1085, 1091 (9th Cir. 2016), but make the argument in the event they need to challenge it on appeal.

presumed to be reasonable without application of an enhancement.  *See Oviatt v. Pearce*, 954 F.2d 1470, 1482 (9th Cir. 1992) ("There is a strong presumption that the lodestar figure is reasonable"); *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996) (the lodestar figure is presumed to be reasonable).  This presumption is for good reason – courts "must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel."  *Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir. 2008).

### 3. Even if an Enhancement was Available to Plaintiffs, the *Kerr* Factors do not Justify One.

Even if the lodestar applies (it does not), and even if a multiplier is available (it is not), the lodestar amount may only be adjusted upward in rare and exceptional circumstances after considering a variety of factors known as the "Kerr factors."  *Perdue*, 559 U.S. at 552, 554; *Gonzalez*, 729 F.3d at 1209 n.11 (citing *Kerr v. Screen Guild Extra, Inc*., 526 F.2d 67, 70 (9th Cir. 1975)).

### a. *Kelly v. Wengler* is Distinguishable.

In their Motion, Plaintiffs rely heavily on the Ninth Circuit's decision in *Kelly*.  In *Kelly*, the parties reached a settlement where Defendant agreed to comply with staffing requirements contained in its contract with the Idaho Department of Corrections, and to provide additional officers to enhance security.  *See Kelly v. Wengler*, 822 F.3d 1085, 1091 (9th Cir. 2016).  Approximately two years after settlement, Plaintiffs claimed Defendant falsified staffing records, and they moved for an order to show cause why Defendant should not be held in contempt for violating the court's dismissal order.  *Id*. at 1092.  After a hearing, the district court entered an order holding Defendant in contempt and ordering remedial measures.  *Id*.  The Court subsequently awarded Plaintiffs' counsel fees, and applied a multiplier to their fee award.  *Id*. at 1105.

The *Kelly* facts are strikingly different than the facts presented here.  First, in executing the settlement agreement, the parties in *Kelly* did not bargain for a fee rate, as it was not anticipated there would be further involvement by counsel.  That was unlike here,

1    where the parties knew there would be a monitoring period and that counsel would

2    continue to be involved in the post-settlement phase of the case.  In short, unlike *Kelly*,

3    here the parties bargained for and agreed to a cap on attorneys' fees and a specific rate for

4    additional fees requested pursuant to Paragraph 43 of the Stipulation.  This meeting of the

5    minds with respect to attorneys' fees was not present in *Kelly* because the parties did not

6    anticipate continued involvement by counsel.  Here, because the parties bargained for a

7    cap on fees, a multiplier cannot be applied.

8         Even if *Kelly* was analogous, there the district court "did not award fees for some

9    of the hours Plaintiffs' counsel claimed because several time entries were vague. . ." *Id*. at

10   1093.  Unfortunately, here, *all* of Plaintiffs' counsel's time entries suffer from this defect.

11   Because of this, even if *Kelly* were applicable, *Kelly* prevents Plaintiffs from recouping

12   time for such deficient time entries.  Further, while the Plaintiffs in *Kelly* requested a 2.0

13   multiplier, the Court declined to enhance the fee award by the full amount requested.  *Id*.

14        Additionally, the *Kelly* Court based its enhancement award on the fact Plaintiffs'

15   counsel performed ". . . under extreme time pressure with very limited resources."  *Id*.

16   Such conditions are not present here.  First, there are no time constraints.  To the contrary,

17   Plaintiffs' counsel has a monetary incentive to prolong the life of the Stipulation, for as

18   long as possible, so as to continue to receive an annual $250,000 Monitoring Fees award.

19   Awarding additional fees, as Plaintiffs request here, will only further incentivize the

20   prolongation of the Stipulation, and run afoul of Congress's intent in enacting the PLRA.

21   Second, unlike *Kelly*, where only two attorneys represented Plaintiffs, Plaintiffs' resources

22   here are far from limited.  Plaintiffs have heavily staffed this case.  Third, Plaintiffs have

23   failed to establish that Arizona inmates have difficulty obtaining counsel for civil rights

24   cases seeking declaratory and injunctive relief.  Indeed, the sheer number of attorneys and

25   firms who represent Plaintiffs from across the county, belies any argument that Arizona

26   inmates have difficulty obtaining counsel.  Finally, even if *Kelly* was applicable, *Kelly*

27   was not decided until May 23, 2016 – almost two years after the Stipulation was entered

28   into by the parties.  Therefore, it could not have been the parties' intention to allow for a

1    multiplier as the precedent at that time was that the PLRA capped the hourly rate.   *See*

2    *Graves v. Arpaio*, 633 F. Supp. 2d 834, 845 (D. Ariz. 2009), aff'd, 623 F.3d 1043 (9th Cir.

3    2010) (". . . § 1997e(d)(3) limits the fee award by establishing a maximum hourly rate for

4    attorneys' fees.  The maximum hourly rate upon which an award for attorneys' fees may

5    be based is 150% of the hourly rate established for payment of court-appointed counsel

6    under 18 U.S.C. § 3006A.").

7         In fact, in February 2018, the Supreme Court rejected the arguments presented by

8    Plaintiffs in *Kelly*.  *See Murphy v. Smith*, 138 S. Ct. 784 (2018).  Specifically, that §1988's

9    lodestar method applies in prisoner litigation cases (it does not), or that a district court can

10   circumvent § 1997e(d)(3)'s rate cap under the guise of a discretionary lodestar

11   enhancement (it cannot).  *Id.* at 789.[18]

12              b.    **The *Kerr* Factors do not Justify an Enhancement Here.**

13        There is a strong presumption that the lodestar method produces a reasonable

14   figure and should only be enhanced or reduced in exceptional circumstances.  *Del. Valley*

15   *Citizens*, 478 U.S. at 565; *Fischer v. SJB-P.D., Inc*., 214 F.3d 1115, 1119 n.4 (9th Cir.

16   2000).  Even assuming fee enhancements exceeding the PLRA's fee cap are permissible, a

17   fee enhancement is not warranted here.  In deciding whether to adjust the lodestar, the

18   Court considers factors 5 and 7-12.  *See Graves v. Arpaio*, 633 F. Supp. 2d 834, 847 (D.

19   Ariz. 2009), *aff'd*, 623 F.3d 1043 (9th Cir. 2010).[19]  As such, Defendants only direct their

20   attention to those factors.[20]

21              (1)    ***The Customary Fee (Factor No.5)***

22        The relevant legal community for determining the customary fee is the forum in

23

24        [18] For a detailed summary of *Murphy*, Defendants direct the Court to their Notice
     of Supplemental Authority pertaining to this decision.  (Dkt. 2676.)

25        [19] Plaintiffs concede that these are the only factors the Court may look at when
     determining whether to adjust the lodestar.  (Dkt. 3017 at 20.)

26
     [20] Defendants addressed the remaining factors in their Response to Plaintiffs' First
27   Fees Motion.  (Dkt. 2402 at 18-23.)  To the extent the Court is interested in those factors,
     despite Plaintiffs' concession of their irrelevance, Defendants incorporate those arguments
28   here.

1    which the district court sits.  *See Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 979 (9th

2    Cir. 2008).   Plaintiffs submit no evidence of the customary fee in Phoenix, Arizona.

3    Instead, they submit evidence of the alleged customary fee in the San Francisco Bay Area

4    and Washington, D.C. based on the "Laffey Matrix."  (Dkt. 3017 at 23.)  "Neither the

5    *Laffey* matrix nor awards in other districts are relevant in determining reasonable hourly

6    rates for counsel in the [District of Arizona]."  *Callahan v. City of Sanger*, 1:14-CV-

7    00600-BAM, 2016 WL 1073249, at *5 (E.D. Cal. Mar. 18, 2016); *Torchia v. W.W.

8    Grainger, Inc.*, 304 F.R.D. 256, 276 (E.D. Cal. Dec. 29, 2014) (same);  *see also Prison

9    Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) ("just because the

10   Laffey matrix has been accepted in the District of Columbia does not mean that it is a

11   sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles

12   away").

13       *Callahan* is instructive.  There, Plaintiffs requested fees pursuant to the *Kerr*

14   factors.  *Callahan*, 2016 WL 1073249, at *2.  With respect to their customary fee, the

15   only evidence Plaintiffs' counsel submitted was that their customary rate was $500 and

16   that it was based upon the *Laffey* matrix.  *Id*.  The Court found Plaintiffs' hourly rate of

17   $500 to be unreasonable, and rejected their argument that they were entitled to

18   compensation at rates other than the district rates where the case was brought.  *Id*. at *5.

19       Plaintiffs advance the same misplaced argument here.  The Court should therefore

20   reject Plaintiffs' arguments that the "customary fee" in Phoenix for an attorney of similar

21   experience is $965 (San Francisco rate) and $570 (Washington, D.C. rate).  (Dkts. 3019 at

22   4, 3018 at 7.)  The only evidence of the "customary fee" in Phoenix, Arizona is Defense

23   counsel, Daniel Struck's declaration indicating he has practiced law in Phoenix for 30

24   years and his firm bills consistent with the customary fee in Phoenix: $210 for partners

25   and $195 for associates. (Dkt. 2394-2 at 5.)  Importantly, ***these rates are lower than the

26   PLRA rate Plaintiffs' bargained for.***  As such, this factor weighs against a multiplier as

27   the customary fee is lower than the fee Plaintiffs agreed to be compensated at.

28

25

1

2          (2)     ***Time Limitations Imposed by the Client or the
                   Circumstances (Factor No. 7)***

3      In their First Fees Motion, Plaintiffs claimed "for purposes of determining an

4  enhancement, this factor is presumed to be already represented in the lodestar."  (Dkt.

5  2276 at 17.)  Now they argue the factor should be analyzed, because they were forced to

6  turn down work as a result of this case.  (Dkt. 3017 at 24.)  Plaintiffs submit billing entries

7  for **31** timekeepers.  (Dkt. 2017 at 19-20.)  Nowhere in Plaintiffs' Motion, however, do

8  Plaintiffs allege or explain how any of these timekeepers were precluded from other

9  employment opportunities because of this case. Indeed, even if they did, that one or two

10 attorneys dedicated a majority of their practice to this case is not enough to conclude that

11 Plaintiffs' counsel, as a whole (all 31 timekeepers), were forced to turn down any (more
   lucrative or otherwise) work as a result.

12     Plaintiffs' counsel's involvement in this case has likely had an opposite effect on

13 their employment opportunities.  Both the PLO and the NPP's websites use this case as a

14 marketing tool, providing periodic updates of where the case stands and touting their

15 "successes." [21]  The PLO's website has links to additional media coverage about the case.

16 Additionally, both David Fathi and Corene Kendrick actively "tweet" about the case on

17 Twitter, a social media outlet utilized to garner additional attention regarding their

18 efforts.[22]  Indeed, as recent as September 30, 2018, Ms. Kendrick tweeted, "I hope this is

19 my next lawsuit . . ." in response to media articles regarding a corrections facility in

20 Texas.  *See* Exhibit 10.  The tweets are often theatrical in nature.  For example, Ms.

21 Kendrick attached a media article and tweeted, "Fasten your seat belts, ladies &

22 gentleman" before a scheduled hearing in the case.  (*Id*.)

23         (3)     ***Amount Involved & Results Obtained (Factor No. 8)***

24     In *Farrar v. Hobby*, 506 U.S. 103 (1992), the Supreme Court stated that "'the most

25

26 ───────────────

27 [21] https://www.aclu.org/cases/parsons-v-ryan; http://prisonlaw.com/news/arizona-contempt/ (last visited on October 19, 2018).

28 [22] *See* Exhibit 10 (Excerpts from Fathi and Kendrick's Twitter accounts).

critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"   *Id.* at 114 (quoting *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).   Here, Plaintiffs move for fees under Paragraph 43 of the Stipulation.   That paragraph defines success as being the prevailing party with respect to a dispute raised in a motion to enforce.  (Dkt. 1185 at ¶43.)  As discussed above, Plaintiffs have offered no evidence that they were successful as defined in Paragraph 43. As such, their degree of success cannot be measured.  This factor weighs against enhancement.

(4)     ***Experience, Reputation, and Ability of the Attorneys (Factor No. 9)***

Plaintiffs concede the use of this factor has been limited since *Kerr* was decided (Dkts. 3017 at 25; 2276 at 18.)

(5)     ***"Undesirability" of the Case (Factor No. 10)***

To date, Plaintiffs have been paid $806, 616.75 in monitoring fees.  This does not include the additional $1,648,037.80 in fees, costs, and enhancements they seek here or the $1,259,991.98 in fees, costs, and enhancements they sought in 2017, which is currently on appeal.  While Plaintiffs argue the case is "undesirable" because the PLRA restricts the hourly rate for attorneys' fees, that arguments falls flat where Plaintiffs use it to argue for more fees.  Plaintiffs cannot demand an enhancement while also arguing the case is undesirable because the fees are restricted.  Any enhancement does away with fee "restrictions" and the "undesirability" of the case.  This case has been profitable for Plaintiffs' counsel, even at the PLRA rate, which again, is higher than the rate Defense counsel's partners' bill.  This factor weighs against enhancement.

(6)     ***Nature and Length of the Professional Relationship with the Client (Factor No. 11)***

Defendants do not challenge that Plaintiffs' counsel has had a relationship with the Plaintiff class since the inception of this case. But because the other factors weigh heavily in Defendants' favor, this relationship does not tip the *Kerr* factors in Plaintiffs' favor.

(7)     ***Awards in Similar Cases (Factor 12)***

Plaintiffs' argument that it is "difficult, if not impossible" to identify similar cases

1   is wrong.  (Dkt. 3017 at 26.)    To the contrary, determination of awards in similar cases is

2   simple, as the PLRA provides a cap on the hourly rate for inmate litigation. Multiplying

3   this fee cap by the total hours expended is the best indicator of what similar awards would

4   be. And the cases cited by Plaintiffs support this. *See Graves v. Arpaio*, 633 F. Supp. 2d

5   834, 845 (D. Ariz. 2009), aff'd, 623 F.3d 1043 (9th Cir. 2010) (". . . § 1997e(d)(3) limits

6   the fee award by establishing a maximum hourly rate for attorneys' fees. The maximum

7   hourly rate upon which an award for attorneys' fees may be based is 150% of the hourly

8   rate established for payment of court-appointed counsel under 18 U.S.C. § 3006A.").

9                          c.    **The *Kelly* Factors are not Supported Here.**

10      Defendants maintain *Kelly* was wrongfully decided, and that the below factors have

11  no significance in the *Kerr* analysis. In fact, in deciding Plaintiffs' First Fees Motion, the

12  Court did not consider these factors.  (Dkt. 2902.)  Notwithstanding this, Plaintiffs cannot

13  meet these factors.

14                      (1)   ***Plaintiffs' Have Not Established They Prevailed, Let***
                              ***Alone That Their Results Were Extraordinary.***
15

16      Because Plaintiffs cannot establish they were the "prevailing party," as defined by

17  the Stipulation, for any of the time entries they seek reimbursement for, it is unknown

18  what results they obtained and certainly whether such results were extraordinary.

19  Plaintiffs conclude they "repeatedly, and successfully moved to enforce the terms of the

20  Stipulation, producing excellent results for the class," but cite to nothing to support this

21  sweeping statement, and their billing records contain insufficient information to make

22  such a determination.  Nor should the Court be distracted by Plaintiffs' laundry list of

23  hearings, motions, and Court Orders that Plaintiffs believe they should be compensated

24  for.  (Dkt. 3017 at 28-32.)  This is especially so where Plaintiffs list all items, including

25  monitoring tasks which are subject to the $250,000 cap under Paragraph 44.  Had the

26  parties contemplated that Plaintiffs would be compensated for all work on this case, they

27  would have agreed to such terms.  Instead, they agreed to two narrow instances when

28  Plaintiffs could recover fees:  monitoring the Stipulation (subject to a $250,000 cap) and

filing motions to enforce to the extent Plaintiffs were the prevailing parties.  (Dkt. 1185 at ¶¶43-44.)  This factor weighs against enhancement.

(2)   ***Enhancing Fees to Create an Incentive to Other Attorneys Does not Justify an Enhancement.***

Plaintiffs' repeated assertion that there was a "lack of competent lawyers willing and able to bring such a complicated, time-intensive case under the PLRA fee cap" is belied by the volume of attorneys, both local and out of state, who have appeared and prosecuted this case.  This factor weighs against enhancement.

## IV.   CONCLUSION

Plaintiffs cannot meet Paragraph 43's requirements for fees, and their Motion should be denied. Any fees awarded to Plaintiffs, however, are capped at the historic CJA rate and are calculated pursuant to the PLRA. Even if lodestar applies, Plaintiffs are not entitled to an enhancement because they bargained for a cap on attorneys' fees, and the *Kerr* factors weigh heavily in Defendants' favor.

Finally, Plaintiffs are not entitled to fees where they stubbornly refuse to provide billing records in sufficient detail to allow the Court and Defendants to ascertain exactly what the individual timekeepers were doing.  They should not be rewarded for their blatant and acknowledged failure to keep detailed and accurate time records.  As such, Plaintiffs' Motion should be denied.  In the alternative, the Court should require Plaintiffs to resubmit their billing entries so as to comply with Paragraph 43's requirements.

DATED this 19th day of October, 2018.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By /s/Daniel P. Struck

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
3100 West Ray Road, Suite 300
Chandler, Arizona  85226

Office of the Arizona Attorney General
Michael E. Gottfried
Assistant Attorneys General
2005 N. Central Avenue
Phoenix, Arizona 85004-1592

*Attorneys for Defendants*

30

1

**CERTIFICATE OF SERVICE**

2

      I hereby certify that on October 19, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

3

4    Alison Hardy:              ahardy@prisonlaw.com

5    Amelia M. Gerlicher:     agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com

6

7    Amy B. Fettig:           afettig@npp-aclu.org

8    Asim Dietrich:           adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

9    Caroline N. Mitchell:     cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com

10

11   Corene T. Kendrick:     ckendrick@prisonlaw.com; edegraff@prisonlaw.com

12   Daniel Clayton Barr:     DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

13   David Cyrus Fathi:      dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

14   Donald Specter:        dspecter@prisonlaw.com

15   Jessica Pari Jansepar Ross:   jross@azdisabilitylaw.org

16   John Howard Gray:      jhgray@perkinscoie.com; slawson@perkinscoie.com

17   John Laurens Wilkes:    jlwilkes@jonesday.com, dkkerr@jonesday.com

18   Jose de Jesus Rico:      jrico@azdisabilitylaw.org

19   Kathleen E. Brody:      kbrody@acluaz.org

20   Kirstin T. Eidenbach:    kirstin@eidenbachlaw.com

21   Maya Abela             mabela@azdisabilitylaw.org

22   Rose Daly-Rooney:      rdalyrooney@azdisabilitylaw.org

23   Sara Norman:          snorman@prisonlaw.com

24   Rita K. Lomio:          rlomio@prisonlaw.com

25   Victoria Lopez:        vlopez@aclu.org

26   / / /

27   / / /

28   / / /

1
2
        I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

3
        N/A

4
                                         /s/Daniel P. Struck

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28