Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-ROS <br><br> **PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE (DOC. 3032) TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS (DOC. 3017)** |

1

**TABLE OF CONTENTS**

2

**Page**

3

I.     INTRODUCTION ................................................................................................. 1

4

II.    DEFENDANTS' OBJECTIONS ARE WAIVED ................................................. 2

5

III.   PLAINTIFFS ARE ENTITLED TO THE FULL FEES REQUESTED ................ 3

6

7

       A.     This Court's Prior Fee Ruling is the Law of the Case and Supports
              Plaintiffs' Fee Application. ............................................................................ 3

8

       B.     Plaintiffs are the Prevailing Party in this Matter and the Fees
              Requested are Reasonable. ............................................................................ 4

9

              1.     Plaintiffs' Billing is Reasonable and Appropriate. ........................... 6

10

              2.     Plaintiffs are Entitled to Fees for Contempt Proceedings, Fee
                     Motions, and Law Clerk Time. ......................................................... 9

11

12

       C.     The Proper Rate under the PLRA is $220.50 per Hour for the Entire
              Billing Period. .............................................................................................. 11

13

       D.     A Fee Enhancement is Justified in this Case.............................................. 13

14

IV.    CONCLUSION ................................................................................................... 16

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arizona v. California,*
460 U.S. 605 (1983) ...................................................................................... 3

*Blum v. Stenson,*
465 U.S. 886 (1984) ...................................................................................... 3

*FDIC v. Garner,*
126 F.3d 1138 (9th Cir. 1997) ..................................................................... 8

*Gates v. Deukmejian,*
987 F.2d 1392 (9th Cir. 1992) ................................................................... 12

*Gates v. Rowland,*
39 F.3d 1439 (9th Cir. 1994) ....................................................................... 7

*Gompers v. Buck's Stove & Range Co.,*
221 U.S. 418 (1911) .................................................................................... 10

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) ...................................................................................... 6

*Int'l Union, United Mine Workers of Am. v. Bagwell,*
512 U.S. 821 (1994) .................................................................................... 10

*Jeff D. v. Kempthorne,*
365 F.3d 844 (9th Cir. 2004) ....................................................................... 4

*Kelly v. Wengler,*
7 F. Supp. 3d 1069 (D. Idaho 2014) .......................................................... 14

*Kelly v. Wengler,*
822 F.3d 1085 (9th Cir. 2016). ............................................................. passim

*Kerr v. Screen Extras Guild, Inc.,*
526 F.2d 67 (9th Cir. 1975) ......................................................................... 6

*Leslie Salt Co. v. United States,*
55 F.3d 1388 (9th Cir. 1995) ....................................................................... 3

*Maher v. Gagne,*
448 U.S. 122 (1980) ...................................................................................... 5

*Merritt v. Mackey,*
932 F.2d 1317 (9th Cir. 1991) ..................................................................... 4

*Missouri v. Jenkins by Agyei,*
491 U.S. 274 (1989) ................................................................................ 10, 12

*Mitchell v. Chavez,*
No. 113CV01324DADEPG, 2018 WL 3218364 (E.D. Cal. June 29,
2018) .............................................................................................................. 8

# TABLE OF CONTENTS
## (continued)

**Page**

CASES (CONT.)

*Montano v. Bonnie Brae Convalescent Hosp., Inc.,*
  686 F. App'x 479 (9th Cir. 2017) ............................................................. 3

*Murphy v. Smith,*
  -- U.S. --, 138 S. Ct. 784 (2018) ............................................................. 14

*Perez v. Cate,*
  632 F.3d 553 (9th Cir. 2011) ........................................................... 11, 12

*Phelps Dodge Corp. v. Brown,*
  540 P.2d 651 (Ariz. 1975) ...................................................................... 5

*Quade ex rel. Quade v. Barnhart,*
  570 F. Supp. 2d 1164 (D. Ariz. 2008) ..................................................... 8

*Richardson v. United States,*
  841 F.2d 993 (9th Cir. 1988) .................................................................. 3

*Texas State Teachers Ass'n v. Garland Ind. School Dist.,*
  489 U.S. 782 (1989) ............................................................................... 5

*Toussaint v. McCarthy,*
  826 F.2d 901 (9th Cir. 1987) .................................................................. 3

*Trevino v. Gates,*
  99 F.3d 911 (9th Cir. 1996) ................................................................... 3

*United States v. Sedaghaty,*
  728 F.3d 885 (9th Cir. 2013) .................................................................. 3

*Webb v. Ada County,*
  285 F.3d 829 (9th Cir. 2002) ............................................................... 11

*Welch v. Metropolitan Life Ins. Co.,*
  480 F.3d 942 (9th Cir. 2007) .................................................................. 9

OTHER AUTHORITIES

LRCiv 7.2(g)(1) ........................................................................................ 4

RESTATEMENT (SECOND) OF CONTRACTS § 202(3)(a)-(b) (1981) ....................... 5

1  **I.     INTRODUCTION**

2         On September 28, 2018, Plaintiffs moved for attorneys' fees and costs, including

3  expert costs, incurred in *enforcing* the health care performance measures of the Stipulation

4  from July 1, 2017 through June 30, 2018, and fees incurred in successfully obtaining

5  enforcement fees for work done through June 30, 2017.  [Doc. 3017]  This motion follows

6  Plaintiffs' successful enforcement fees application for work done through June 30, 2017.

7  [Doc. 2276]   Defendants similarly opposed that motion, arguing that Plaintiffs should

8  recover nothing.  [Doc. 2402]  The Court rejected all of Defendants' arguments, awarding

9  Plaintiffs a fully compensatory fee, including a 2.0 enhancement pursuant to *Kelly v.*

10  *Wengler*, 822 F.3d 1085 (9th Cir. 2016).  [Doc. 2902] (the "First Fee Decision").   In

11  response to the instant motion, Defendants simply recycle arguments that the Court has

12  already considered and rejected.  They entirely fail to explain why the Court's earlier

13  ruling was erroneous or why a different result should obtain now.

14         Under the clear terms of the Stipulation, Plaintiffs are entitled to fees for their work

15  in ensuring the Stipulation's requirements are met, including their work that resulted in

16  this Court's order on June 22, 2018 that held Defendants in contempt and imposed fines of

17  over $1.4 million for non-compliance with the terms of the Stipulation.[1]  [Doc. 2898]  The

18  Stipulation specifically provides that Plaintiffs be compensated for such efforts:

19             In the event that Plaintiffs move to enforce any aspect of this
              Stipulation and the Plaintiffs are the prevailing party with respect to
20             the dispute, the Defendants agree that they will pay reasonable
              attorneys' fees and costs, including expert costs, to be determined by
21             the Court.  The parties agree that the hourly rate of attorneys' fees is
              governed by 42 U.S.C. § 1997e(d).
22

23  [Doc. 1185 at 16, ¶ 43]  Despite this clear language, Defendants attempt to rewrite the

24  terms of the Stipulation by adding additional requirements and definitions that simply do

25  not exist.  For example, Defendants claim that while the Stipulation says "move to enforce

26

27         [1] Plaintiffs have previously provided the court an exhaustive list of their successful
   enforcement work during the period July 1, 2017 to June 30, 2018.  [*See* Doc. 3017 at 7-9,
28  28-32, nn. 2, 3, 10]

any aspect of this Stipulation;" that language should be read to mean a "motion to enforce performance measures that are substantially non-compliant."  [Doc. 3032 at 2]  These selective word changes and additions are nothing but a *post hoc* attempt to rewrite the parties' agreement and to foreclose compensation for work on such necessary enforcement measures as motions to enforce monitoring methodology, briefing in response to the Court's Order to Show Cause, and evidentiary hearings pertaining to these issues.

Defendants similarly attempt to graft their own set of nonsensical billing requirements onto Plaintiffs' billing records with no articulated or discernable basis in the Stipulation, law, or facts.  [Doc. 3032 at 9]  As a result, Defendants allege vague, blanket, and baseless objections to *each and every one* of the thousands of reasonable time records submitted by the Plaintiffs.  [Doc. 3032-2]

Defendants also recycle the same arguments regarding the hourly rate due under the Stipulation that this Court previously rejected pursuant to binding Ninth Circuit precedent.  [Doc. 2902 at 3-4]  Defendants also trot out the same failed arguments against the application of Ninth Circuit precedent in *Kelly v. Wengler* to a 2.0 enhancement for Plaintiffs' fees.  As the Court noted in the First Fee Decision, "Counsel may disagree with the Ninth Circuit but neither counsel nor the Court is free to ignore or rewrite precedent." [*Id*. at 8]

For all the reasons stated in the Court's earlier opinion and in Plaintiffs' opening brief, Plaintiffs' motion should be granted.[2]

## II.   DEFENDANTS' OBJECTIONS ARE WAIVED

As a threshold matter, Defendants have failed to submit *any* affidavits or other evidence challenging the reasonableness of the hours expended or the rates at which

---

[2] Plaintiffs reserve the right to seek additional attorneys' fees for hours spent on fee-related litigation, including the instant motion, reply, and responses to any appeal.

Plaintiffs seek compensation.[3]   Accordingly, any objections to those hours or rates are waived.  *See Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984) (objections to fee claim waived by defendants' failure "to submit to the District Court any evidence challenging the accuracy and reasonableness of the hours charged") (internal citations omitted); *Toussaint v. McCarthy*, 826 F.2d 901, 904 (9th Cir. 1987) (approving plaintiffs' lodestar amount, which "may appear to be high," when "defendant has not come forward with affidavits contesting the reasonableness of the rates or hours expended").[4]

## III.   PLAINTIFFS ARE ENTITLED TO THE FULL FEES REQUESTED

### A.   This Court's Prior Fee Ruling is the Law of the Case and Supports Plaintiffs' Fee Application.

"Under 'the law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case."   *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988). "As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).

Reconsideration of a previously decided issue is only appropriate under the doctrine when there has been an "intervening change of controlling authority, new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice." *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995) (citing *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991)).   The standard for

---

[3] The unsworn and unauthenticated documents submitted by Defendants are not admissible evidence. *See United States v. Sedaghaty*, 728 F.3d 885, 916 (9th Cir. 2013) (finding district court properly excluded exhibits because they were unauthenticated).

[4] Defendants point to an earlier affidavit setting forth the rates at which Defendants' counsel are paid in this case, and argue—without authority—that Plaintiffs' compensation should be capped at those rates.  [Doc. 3032 at 24-25]  But it is well settled that "defense counsel's rate is not the benchmark for a reasonable hourly rate" for plaintiffs' counsel. *Montano v. Bonnie Brae Convalescent Hosp., Inc.*, 686 F. App'x 479, 480 (9th Cir. 2017); *accord Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996) ("the district court should not have relied on the rates paid by the City to private attorneys for defending excessive force cases as a starting point for the reasonable hourly rate" for plaintiff's counsel).

1  reconsideration under the law of the case doctrine largely mirrors this Court's own local

2  rule pertaining to motions for reconsideration.  *See* LRCiv 7.2(g)(1).

3       As discussed in more detail below, Defendants have presented the same shopworn

4  arguments in their Response Brief as they unsuccessfully proffered in the first round of

5  briefing on attorneys' fees.  [*See, e.g.*, Doc. 2402 at 2-18]  This Court considered and

6  soundly rejected Defendants' arguments then, and the Court should reject them now.

7  [Doc. 2902 at 8, 11 (awarding Plaintiffs approximately $1.26 million in attorneys' fees

8  and costs, including a 2.0 multiplier)]  Defendants have not raised any "substantially

9  different [evidence]," and they do not argue that "controlling authority has since made a

10 contrary decision of the law applicable to such issues, or [that] the [previous] decision was

11 clearly erroneous and would work a manifest injustice."  *Merritt v. Mackey*, 932 F.2d at

12 1320 (internal quotation marks and citation omitted).[5]

13
14 **B.    Plaintiffs are the Prevailing Party in this Matter and the Fees Requested are Reasonable.**

15      Defendants claim that the Stipulation defines "prevailing party" and that under this

16 alleged definition Plaintiffs are not entitled to fees.  [Doc. 3032 at 4-9]  This was not true

17 when Defendants argued it prior to the First Fee Decision (Doc. 2402 at 4-8), and it is not

18 true now.  In the First Fee Decision the Court rejected Defendants' attempt to redefine

19 "prevailing party" to serve their own purposes:

20         Defendants' central argument against Plaintiffs' fee application is
        that Plaintiffs are only entitled to fees if they prevailed 'with respect
21      to a specific dispute to enforce the Stipulation.'  (Doc. 2402 at 25)
        The Court concludes that this is an inappropriately narrow
22      interpretation of the Stipulation.   All of the various activities

23

24 _____
        [5] While it is true that courts interpret settlement agreements as contracts as
25 Defendants suggest (Doc. 3032 at 3), the text of the Stipulation does not support their
   arguments.  [Doc. 1185 ¶ 43]  It is also true that in long-running institutional reform
26 litigation, there is substantial deference to the trial judge who has overseen the case for
   years.  "Deference to the district court's use of discretion is heightened where the court
27 has been overseeing complex institutional reform litigation for a long period of time."
   *Jeff D. v. Kempthorne*, 365 F.3d 844, 850 (9th Cir. 2004) (citing *Stone v. City & Cty. of
   San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992)).  The First Fee Decision is therefore a
28 strong controlling benchmark for all subsequent fee applications.

1    described above are driven by Plaintiffs' attempts to enforce the
2    Stipulation.[6]

3    [Doc. 2902 at 2]   Once again, Defendants attempt the same "inappropriately narrow

4    interpretation of the Stipulation" rejected by this Court.   They make this argument in the

5    face of the fact that "prevailing party" is a well-established term in the law of civil rights

6    fee claims, set forth in 42 U.S.C. § 1988(b) and defined in Supreme Court precedent.   *See,*

7    *e.g.*, *Texas State Teachers Ass'n v. Garland Ind. School Dist.*, 489 U.S. 782, 791-92

8    (1989) (A prevailing party is one who has "succeeded on *any* significant issue in litigation

9    which achieve[d] some of the benefit the parties sought in bringing suit.") (emphasis

10   added) (internal quotations and citation omitted).   When parties to a contract use a term

11   with a clearly established meaning, they are presumed to be aware of that meaning and to

12   intend that it be given effect in their contract. *See* RESTATEMENT (SECOND) OF

13   CONTRACTS § 202(3)(a)-(b) (1981) ("[W]here language has a generally prevailing

14   meaning, it is interpreted in accordance with that meaning . . . technical terms and words

15   of art are given their technical meaning when used in a transaction within their technical

16   field"); *Phelps Dodge Corp. v. Brown,* 540 P.2d 651, 653 (Ariz. 1975) ("[R]ules of

17   interpretation . . . include giving words their ordinary meaning, [and] giving technical

18   terms their technical meaning . . . .").[7]

19        As outlined in the Motion for Attorneys' Fees and Costs ("Motion"), Plaintiffs

20   clearly and repeatedly have achieved "prevailing party" status in enforcement motions and

_____

22   [6] Earlier in the opinion the Court discusses monthly status conferences, Motions to Enforce, evidentiary hearings, court tours of prison units, and testimony and dispute
23   resolution ranging from "how the CGAR data is collected" to "a string of disputes about how to interpret various terms in the Stipulation such as '90 days' and 'being seen.'"
     [Doc. 2902 at 2]
24   [7] Defendants attempt to argue that the clearly established definition of "prevailing party" under 42 U.S.C. § 1988(b) and Supreme Court precedent should not apply because
25   the settlement agreement here was allegedly achieved "without any finding on the merits of Plaintiffs' complaint."   [Doc. 3032 at 8-9]   This is false; the Court made explicit
26   findings pertaining to the violations of Plaintiffs' Federal rights and the relief granted. [Doc. 1458 at 6]   In any event, it is well established that plaintiffs can prevail by
27   settlement alone.   *See Maher v. Gagne*, 448 U.S. 122, 129 (1980) ("The fact that respondent prevailed through a settlement rather than through litigation does not weaken
28   her claim to fees.").

in findings of non-compliance and the relief repeatedly ordered by this Court.[8] [Doc. 3017 at 7-13, 27-32]  In response to this overwhelming evidence, Defendants claim that in a recent motion to enforce, Plaintiffs were "only successful on **27%** of the disputes" and therefore should only be compensated for "*specific disputes* they prevail on."  [Doc. 3032 at 6-7 (emphasis in original)]  Defendants' mathematical inaccuracy aside, this argument is exactly the type of hairsplitting foreclosed by this Court's previous decision and by Supreme Court precedent.  *See Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983) (time spent on multiple claims is fully compensable even where a plaintiff achieves only partial success as long as the claims "involve a common core of facts or [are] based on related legal theories.").  In *Hensley*, the Court held that rather than divide hours on a claim-by-claim basis, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  461 U.S. at 435.  Against *Hensley's* clear precedent, Defendants rely solely upon a slew of unreported district court cases that are easily distinguishable from this case, where enforcement fees are an explicit provision of the Stipulation.  [Doc. 3032 at 7-8]

### 1.      Plaintiffs' Billing is Reasonable and Appropriate.

Plaintiffs not only repeatedly established their prevailing party status for purposes of the Stipulation, they have also clearly demonstrated that the fees requested are reasonable under the lodestar method and the *Kerr* factors pertinent to adjustments to the lodestar.  *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 69-70 (9th Cir. 1975).  [*See also* Doc. 3017 at 14-21; Doc. 3018; Doc. 3019]  In response to Plaintiffs' carefully executed declarations by David C. Fathi and Corene Kendrick, and the comprehensive billing records submitted to the Court (Doc. 3018-1, Exs. A & B; Doc. 3019-1, Exs. A & B),

---

[8]  Defendants assert that Plaintiffs' fee motion cites no motions to enforce in which Plaintiffs prevailed.  [Doc. 3032 at 10, n.7]  This is false.  [*See* Doc. 3017 at n.2 (listing multiple enforcement motions); Doc. 3017 at n.3 (listing multiple orders of the Court finding Defendants to be non-compliant with the Stipulation and enforcing its terms); *see also* Doc. 3017 at 7-9]

Defendants allege—out of thin air—that Paragraph 43 of the Stipulation requires Plaintiffs to include the following in their billing records: "(1) the task performed in bringing a dispute by way of a motion to enforce; (2) the performance measure and facility sought to be enforced; and (3) the date of the enforcement motion." [Doc. 3032 at 9] These terms are nowhere to be found in the Stipulation, as they do not exist.

The only thing required by the Stipulation is that fees and costs sought were incurred for work done enforcing the Stipulation. [Doc. 1185 ¶ 43] Plaintiffs provided ample evidence that the fees and costs sought here are for enforcement work only.[9] The Declarations of Mr. Fathi and Ms. Kendrick also establish their offices' appropriate timekeeping methods, billing judgment, and reasonable hours expended.[10] [Doc. 3018 ¶¶ 6, 8; Doc. 3019 ¶¶ 6, 8] In further support of the reasonableness of their attorney fees, Plaintiffs submitted 205 pages of detailed and authenticated billing records with roughly 2,726 time entries amounting to 3,708.7 hours (3,702.3 billable hours). [Docs. 3018-1, Exs. A & B; Doc. 3019-1, Ex. A] In response, Defendants have submitted *no* declarations to counter the Plaintiffs' evidence of reasonableness and necessity. In light of their complete evidentiary default, Defendants' objections are waived. *See supra* Section II.

Instead of proffering evidence, Defendants have objected to *every single time entry* using one of two generic claims—either "obviously not recoverable" or "if Plaintiffs provided Defendants more detail, Defendants may be willing to pay." [Doc. 3032 at n.3] These vague, blanket objections do not provide the "specific objections" to the reasonableness of each time entry required by the Ninth Circuit; accordingly, Defendants have waived their objections. *Gates v. Rowland*, 39 F.3d 1439, 1450-51 (9th Cir. 1994)

---

[9] Plaintiffs have made clear that all of the hours covered by the instant fee motion were spent enforcing provisions of the Stipulation and that routine monitoring work is separately billed under the Stipulation. [Doc. 3018 ¶¶ 4, 8; Doc. 3019 ¶ 8]

[10] Defendants argue that the time entries of Kirstin Eidenbach are unsupported because she did not submit a declaration. [Doc. 3032 at 13-14] There is simply no requirement that every individual lawyer submit a declaration regarding his/her time. Ms. Eidenbach's billing records were reviewed and included in Ms. Kendrick's declaration and exhibits attached thereto. [Doc. 3018 ¶¶ 8-9]

1  (prison conditions case) (rejecting challenge to fee claim where "defendants failed to

2  make adequate specific objections.").[11]

3      Defendants make a few other assorted objections to Plaintiffs' billing records that

4  likewise do not withstand scrutiny.  They complain that Plaintiffs billed for reviewing

5  documents, such as "Review ADC documents produced for 2/27 hearing" (D. Fathi;

6  1/27/18; 2.20 hours).  [Doc. 3032-8]  This is absurd.  Obviously counsel must review

7  documents to prepare for an all-day evidentiary hearing (*see* Doc. 2657); Defendants

8  entirely fail to explain why they believe doing so is unreasonable.[12]

9      Defendants further complain of deficient time summaries when the work and its

10  purpose is clear: "telephone hearing re discovery" (C. Kendrick; 7/10/17; 1.00 hours);

11  "Research regarding counsel's concessions are binding on client" (D. Fathi; 10/5/17; .70

12  hrs).[13]  [Doc. 3032-3]  These entries in no way resemble the time-keeping practices that

13  concerned the courts in cases cited by Defendants (Doc. 3032 at 13), such as *Mitchell v.*

14  *Chavez*, where the court held "[i]f the . . . time entry provides *no information* about what

15  the research or analysis may have pertained to, the court cannot determine whether the

16  time was reasonably expended in pursuit of this case."  No. 113CV01324DADEPG, 2018

17  WL 3218364, at *9 (E.D. Cal. June 29, 2018) (unreported) (emphasis added).  Defendants

18  also make much of the few entries involving hearing preparation and administrative tasks

19  (Doc. 3032-4) and an email exchange about expert reports (Doc. 3032-7).  But this district

20  has found attorney's fees are recoverable for such tasks. *Quade ex rel. Quade v. Barnhart*,

21

22      [11]  Although Defendants similarly highlight as objectionable each and every item of
23  costs sought by Plaintiffs (Doc. 3032-2), their brief entirely fails to argue that Plaintiffs
    should not recover their costs, let alone assert specific objections to the costs for which
24  recovery is sought.  Accordingly, any objection to Plaintiffs' costs is waived. *See FDIC v.*
    *Garner*, 126 F.3d 1138, 1145 (9th Cir. 1997) (deeming claim waived where counsel
    provided no supporting case law or argument).
25      [12]  Plaintiffs concede that a few stray appellate tasks were inadvertently included in
26  the 205 pages of billing entries.  Plaintiffs acknowledge this oversight and agree to reduce
    the amount of their fee request by $2,182.95 [(9.9 hrs x $220.50] plus $ 2,182.95 for the
    2.0 enhancement for a total reduction of $4,365.90.
27      [13]  Defendants fail to mention that one of the entries they list as "deficient time
28  summary" was actually no-charged. ("Record time from this week's hearings; D. Fathi;
    9/14/17; .30 hrs).  [Doc. 3032-3]

570 F. Supp. 2d 1164, 1167 (D. Ariz. 2008) (attorneys may recover fees for some tasks that require clerical as well as legal skill).

Additionally, Defendants allege that Plaintiffs are engaging in "block billing." [Doc. 3032 at 15-16]  Block billing is defined as lumping together numerous tasks in a single entry, making it difficult to determine how much time was actually spent on a specific activity.  *See generally Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007).  It is also characterized as "enter[ing] the total daily time spent working on a case."  *Id.* at 945 n.2.  However, Plaintiffs' billing entries are detailed, thorough, and identify the specific subject matter of the work.  [*See* Docs. 3019-1, Ex. A; 3018-1, Ex. B]  While there are entries where several hours are attributed to a given task, the task is described and the time expended is reasonable.  There is no block billing.

### 2.    Plaintiffs are Entitled to Fees for Contempt Proceedings, Fee Motions, and Law Clerk Time.

Defendants erroneously claim that the Stipulation prevents recovery for fees associated with contempt proceedings, fees motions, and law clerk time.  [Doc. 3032 at 11-12]  But the Stipulation includes absolutely no language prohibiting fees for any of this enforcement work.  Indeed, the Stipulation speaks to enforcement of "any aspect of this Stipulation."  [Doc. 1185 ¶ 43]  Therefore, all of the activities in question—such as briefing and participating in hearings in response to the Court's Order to Show Cause due to Defendants' chronic non-compliance with the Stipulation, the successful motion for attorneys' fees pursuant to Paragraph 43 of the Stipulation, and work done by law students to support the enforcement litigation—are appropriately billed under the terms of the Stipulation.[14]

---

[14] As the Court noted in the First Fees Decision when discussing the availability of a multiplier: "The Stipulation contains no mention of an enhancement or multiplier and the Court understands that silence to mean that it is free to evaluate the propriety of such an enhancement."  [Doc. 2902 at 4]  The same is true in the case of contempt and fees on fees.

As explained in Plaintiffs' motion, "the Court's finding of contempt constitutes an independent ground for a fully compensatory award" of fees and costs.  [Doc. 3017 at 12] Defendants do not dispute that courts may award attorney fees incurred in winning an order of contempt, but argue that such fees may not be awarded in this case, because Defendants did not explicitly agree to them in advance.  [Doc. 3032 at 12]  This argument is frivolous.  The contempt power is inherent in all courts.  "Courts thus have embraced an inherent contempt authority . . . as a power necessary to the exercise of all others."  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (internal quotation marks and citations omitted); *see also Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911) (the contempt power is "absolutely essential to the performance of the duties imposed on [courts] by law").  While an agreement by the parties to divest the Court of its inherent contempt powers would be null and void in any event, Defendants point to no language in the Stipulation that even purports to do so.  On the contrary, the Stipulation provides that "the Court shall retain the power to enforce this Stipulation through all remedies provided by law," with two exceptions not relevant here.  [Doc. 1185 ¶ 36]

This is also the case for fees sought for work done on securing fees for enforcement work under Paragraph 43 of the Stipulation.  Such fees are awarded as a matter of course (*see* Doc. 3017 at 13) and are clearly allowed under the Stipulation's terms: "In the event that Plaintiffs move to enforce any aspect of this Stipulation and the Plaintiffs are the prevailing party with respect to the dispute . . ."  Plaintiffs' work on the First Fee Motion pertained to enforcement of Paragraph 43 of the Stipulation.

Fees for the work of law students are similarly routinely available.  *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286 (1989) (noting the widespread practice of billing for paralegals and law students who serve as clerks in fee awards under 42 U.S.C. § 1988).  In the First Fee Decision this Court did not foreclose reimbursement for law student fees; the Court simply required proof that the students are being paid.  [Doc. 2902 at 9]  Plaintiffs provided such proof in the instant motion.  [Doc. 3018 ¶ 7; Doc. 3019 ¶ 9]

1

2

      **C.**    **The Proper Rate under the PLRA is $220.50 per Hour for the Entire Billing Period.**

3        Defendants once again attempt to re-argue their erroneous position about hourly

4  rates that has been previously rejected by this Court.   [Doc. 2902 at 3]   It is long

5  established precedent in the Ninth Circuit that the PLRA hourly rate is 150% of "the

6  amount authorized by the Judicial Conference" for payment of court-appointed counsel in

7  criminal cases.[15]   *See, e.g.*, *Webb v. Ada County*, 285 F.3d 829, 839 (9th Cir. 2002)

8  (holding that the PLRA expressly provides for payment at the rate "established" under 18

9  U.S.C. § 3006A and therefore the relevant hourly rate is the amount authorized by the

10  Judicial Conference rather than the amount actually appropriated by Congress to

11  compensate court-appointed counsel in criminal proceedings); *Perez v. Cate*, 632 F.3d

12  553, 556 (9th Cir. 2011) ("[R]eading the PLRA and the Criminal Justice Act together, the

13  PLRA allows an award of attorney's fees . . . based on an hourly rate up to 150 percent [of

14  the relevant rate prescribed by the Judicial Conference.]").   As this Court noted in the

15  First Fee Decision, "[u]nder Ninth Circuit precedent, even when the 'approved rate had

16  not been implemented,' hourly rates under Section 1997e(d)(3) are not related 'to the

17  amount actually paid to CJA counsel.'"   [Doc. 2902 at 3 (citing *Webb*, 285 F.3d at 839)]

18      In the face of overwhelming Ninth Circuit precedent regarding the PLRA rates,

19  Defendants cite to unreported, out-of-district cases that misunderstand the difference

20  between the Judicial Conference's authorized rate used by the Ninth Circuit as the

21  baseline for PLRA rates, and the rate subsequently approved by Congress for CJA

22

---

23      [15] The Judiciary's Congressional Budget Summary states the following:   "The requested funding supports a $6 hourly wage rate increase above the cost-of-living

24  adjustment (COLA), from 135 to 141 per hour, for non-capital panel attorney cases in FY 2018 (the maximum rate authorized in the statute is $147 per hour)."   *See* The Judiciary

25  FY 2018 Congressional Budget Summary 38, (June 2017), http://www.uscourts.gov/sites/default/files/fy_2018_congressional_budget_summary_0.p

26  df (Defendants state that the previous link cited in Plaintiffs brief was broken; it is not. The link is to a PDF document which can truncate due to technical issues that require a

27  link be pasted into the browser to operate correctly.   For the Court's convenience a copy of the document is attached to the Declaration of Amy Fettig ("Fettig Decl."), as

28  Exhibit A).   Accordingly, 150 percent of that rate is $220.50 per hour for federal FY 2018, which ran from October 1, 2017 through September 30, 2018.

counsel.  [Doc. 3032 at 16-17]  Such non-binding authority cannot overrule Ninth Circuit precedent.

Defendants similarly attempt to dispute Supreme Court and Ninth Circuit precedent establishing that attorneys' fees are to be paid at current rather than historical rates.  *See Jenkins by Agyei*, 491 U.S. at 282 (applying current rates); *Gates v. Deukmejian*, 987 F.2d 1392, 1406 (9th Cir. 1992) (same).  They do so by again citing to the same faulty, unreported, out-of-district cases.  [Doc. 3032 at 18]  Defendants further allege that Plaintiffs "wait[ed] 11 months before filing" their fee application.  [Doc. 3032 at 17]  This is false.  The First Fee Decision encompassed all enforcement work done up to June 30, 2017 and the Court issued its Order on that motion on June 22, 2018, in addition to many of the motions that are the subject of this fee application, such as the Contempt Order.  [Doc. 2902; Doc. 2898]  Plaintiffs then attempted to negotiate fees for the one-year period of July 1, 2017 to June 30, 2018 with Defendants.  Defendants never responded to Plaintiffs' offer, and Plaintiffs filed the instant motion on September 28, 2018—less than three months after the close of the period for which fees are sought.  [Doc. 3019 ¶ 27]  There was no eleven-month delay as Defendants allege—or indeed any delay at all.  Plaintiffs are not required to seek fees every month or in any set period by the Stipulation or the law.  Seeking fees for a one-year period conserves resources and provides a suitable time for enforcement work to be initiated and completed.

Defendants also claim that paralegal rates should be billed at local Phoenix rates (Doc. 3032 at 18-19), ignoring the fact that the Court has already rejected this argument and awarded Plaintiffs their requested paralegal fees based on the PLRA cap under the Stipulation.  Doc. 2902 at 10; *see also Perez*, 632 F.3d at 556-58 (paralegal fees awarded to plaintiffs in prison civil rights litigation are subject to the same hourly cap under the PLRA as attorney fees, where the pertinent paralegal market rate is actually above the PLRA cap).  Defendants also ignore the exception to the "local forum" rule for attorneys' fees applied by the Court.  *See Gates*, 987 F.2d at 1405 (local rates do not apply where appropriately skilled and experienced local counsel was unavailable).  Instead they cite to

1    inapposite cases where an award of fees under a negotiated settlement with the rate

2    established by the PLRA cap was not at issue.  [Doc. 3032 at 18]

3         Moreover, Defendants fail to submit *any* evidence to contradict Plaintiffs'

4    evidence, and this Court's factual finding, that no qualified attorneys were able or willing

5    to bring this case, and thus an exception to the local forum applies so that Washington,

6    D.C. and San Francisco Bay Area rates are the baseline for fee calculation—subject to the

7    PLRA cap.  [*See* Doc. 2280 (Decl. of Larry Hammond) ¶¶ 9-14; Doc. 2279 (Decl. of

8    Kathy Brody) ¶¶ 5-6]  As the Court noted in the First Fee Decision:

9
> Defendants argue that "Arizona Attorneys take on inmate cases
10   > regularly" and so it would be easy to find local counsel.  Defendants
     > do not explain how a lawyer who handles individual personal injury
11   > maters would be qualified, or interested in, a class action case and
     > on-going enforcement of a comprehensive settlement.  Thus, this
12   > argument is not well-taken.

13   [Doc. 2902 at 7 (footnotes and internal citations omitted)][16]

14        **D.    A Fee Enhancement is Justified in this Case.**

15        Contrary to Defendants' argument (Doc. 3032 at 21-22), the cap on yearly

16   monitoring fees in Paragraph 44 of the Stipulation is irrelevant to enforcement fees under

17   Paragraph 43.  If the parties had intended such a cap for enforcement fees it would have

18   been included in Paragraph 43.  It was not.

19        As noted by this Court in the First Fee Decision, *Kelly v. Wengler* is controlling

20   precedent in this Circuit and fee enhancements are therefore available to prisoner

21   plaintiffs.  *Id.*  In *Kelly*, the Ninth Circuit upheld a 2.0 fee enhancement in a prisoner civil

22   rights case.[17]  822 F.3d at 1100-05.  The Court also upheld the lodestar method for PLRA

23

24        [16] Defendants also entirely fail to controvert Plaintiffs' evidence establishing
25   paralegal billing rates in their respective jurisdictions.  [*See* Doc. 3018 ¶ 10 (the hourly
     market billing rate for paralegals in the San Francisco Bay Area is $275); Doc. 3019 ¶ 16
26   (hourly billing rate for paralegals in the Washington, D.C. area is $165)]  Indeed,
     Defendants submit *no* evidence as to market rates in these jurisdictions, and their only
27   purported evidence of market rates in Arizona is legally irrelevant.  *See supra* note 4.
          [17] Defendants claim that in *Kelly* "the Court declined to enhance the fee award by
28   the full amount requested."  [Doc. 3032 at 23]  This is inaccurate.  In *Kelly*, the district
     court awarded a 2.0 multiplier for one attorney and a 1.3 multiplier for another and the

cases as the "PLRA is silent as to the second step of the lodestar method, in which a court may adjust the lodestar figure based on factors not subsumed in that figure." *Kelly*, 822 F.3d at 1100.  In the face of clear Circuit precedent, Defendants claim that the loadstar method is inapplicable by citing out-of-circuit cases that actually do not support their claim that the lodestar no longer applies to prisoner civil rights cases for purposes of fee enhancements.  [*See* Doc. 3032 at 20-21 (citing various inapposite cases)]  But in prisoner rights cases, both the lodestar and enhancements of the lodestar continue to be pertinent to a court's fee award.  *Kelly*, 822 F.3d at 1103.[18]

Defendants also try, once again, to claim that a recent Supreme Court case, *Murphy v. Smith*, -- U.S. --, 138 S. Ct. 784 (2018), overrules *Kelly*.  [Doc. 3032 at 24]  This Court has already dismissed Defendants' argument in the First Fees Decision, noting that *Murphy* is a case about how much prevailing prisoners must pay their lawyers as a percentage of a damages award, and therefore it is not analogous to the present situation where "the enforcement of a contractual term, not allocation of fees after a monetary award for damages," is at issue.  [Doc. 2902 at n.2 ("Accordingly, the Court concludes that *Murphy* is inapposite to this attorneys fee application.")]

Plaintiffs' brief exhaustively reviews the *Kerr* factors' support for full fees and an enhancement in this case.  [Doc. 3017 at 20-33]  In opposition to Plaintiffs' excellent work and overwhelming success, Defendants marshal a jumble of unsupported and unsupportable arguments.  [Doc. 3032 at 24-29]  Chief among them is the curious argument that Plaintiffs do not present evidence of their overwhelming success.  [Doc. 3032 at 26-29]  Plaintiffs exhaustively detailed the overwhelming record of superior performance, extraordinary commitment of resources, and excellent results obtained for

---

Ninth Circuit simply upheld the lower court's enhancements.  822 F.3d at 1093-94; 1098-1105.

[18] Defendants claim that *Kelly* is not binding precedent in this case because the Ninth Circuit decision post-dates the Court's approval of the Stipulation.  They cite no authority for this absurd argument.  [Doc. 3032 at 23-24]  In any event, the district court decision in *Kelly*—awarding the 2.0 enhancement—was decided *before* the Stipulation was approved.  *Kelly v. Wengler*, 7 F. Supp. 3d 1069 (D. Idaho 2014).

the Plaintiff class in their brief.  [Doc. 3017 at 7-9, 24, 27-32]  Rather than grapple with this extensive record, Defendants simply choose to ignore it.  But the facts speak for themselves, as does the finding of contempt against the Defendants and $1.4 million in fines ordered by this Court for their failure to comply with the Stipulation.  [Doc. 2898][19]

In discussing the "customary fee" Defendants also cite authority that fails to engage with the exception to the "local forum" rule as discussed above.  *See supra* pp. 12-13.  For example, in the unpublished, out-of-district case Defendants cite for the proposition that the Laffey Matrix does not apply, the court was actually addressing a routine wage and hours case where no exception to the local forum rule was applied.  [*See* Doc. 3032 at 25 (citing *Callahan v. City of Sanger*, No. 1:14-CV-00600-BAM, 2016 WL 1073249, at *5 (E.D. Cal. Mar. 18, 2016))]

Defendants further allege that the time limitations and preclusion of other employment imposed by this case are somehow negated by the number of timekeepers on the case.  [Doc. 3032 at 26]  Defendants cite no authority that the number of billers is relevant to the Court's analysis of this *Kerr* factor.  Further, they offer no evidence to contradict Plaintiffs' sworn declarations attesting to the preclusion of other employment, and present no authority that such evidence is insufficient to satisfy this factor. [Doc. 3018 ¶ 4; Doc. 3019 ¶ 17]  As this Court noted in the First Fee decision, "As with any piece of complex litigation, a division of labor is required but also certain leaders must emerge to corral the various complexities.  From the time sheets and court appearances, it is clear that Corene Kendrick, Kirstin Eidenbach, and David Fathi are

---

[19] Defendants' brief also makes much of the fees sought by Plaintiffs in this matter without mentioning that their own counsels' fees were substantially *more* than Plaintiffs sought, even with a 2.0 multiplier.  [*See* Doc. 2434 ¶ 3 and Doc. 2434-1, Ex. 1 (invoices demonstrating $1,744,543.45 in billing from Struck, Wieneke, & Love on this case from February 2015 to June 2017); *see also* Fettig Decl., Ex. B, Jacques Billeaud, *Arizona Opposes Request for Fees in Suit Over Inmate Care*, Associated Press (October 22, 2018), https://www.thehour.com/news/article/Arizona-opposes-request-for-fees-in-suit-over-13327467.php (reporting, based on ADC record, that the state has spent $8.8 million in attorneys' fees for defense counsel in this matter)]  Plaintiffs further note that the Declaration of Amy Landry, submitted with Defendants' response brief, which purports to outline Plaintiffs' billing invoices, fails to attach the pertinent documents.  [Doc. 3032-1]

those leaders.  Their time on this matter necessarily precluded work on other matters." [Doc. 2902 at 6]  The same is true in the present motion.

Defendants also recycle their unsuccessful arguments about the undesirability of the case.  [Doc. 3032 at 27]  As discussed above, this Court already credited Plaintiffs' evidence on this issue and soundly rejected Defendants' arguments that institutional litigation is somehow desirable work for most attorneys or that there were actually attorneys available in Arizona to litigate this case over the last six years.  *See supra* pp. 12-13.  The Court also rejected Defendants' argument that a fee enhancement is contrary to the intent of the PLRA or that *Kelly* is somehow not controlling precedent here.  [Doc. 2902 at 7-8]  This truth still holds.

Finally, Defendants fail to address Plaintiffs' clear showing that their fees request is reasonable in light of awards in other cases, including the First Fee Decision. [Doc. 3017 at 26-27]  As this Court noted in that decision, "Defendants have not cited to any class action matters where an enhancement was sought and denied.  Moreover, the post-enhancement hourly rate is similar to other class action enforcement actions." [Doc. 2902 at 8 (citing cases)]

## IV.    CONCLUSION

For these reasons and those outlined in Plaintiffs' Motion and set forth in the Proposed Order (Docs. 3017, 3017-1), this Court should find that Plaintiffs are entitled to recover all of the fees and costs requested because they have demonstrated that they are the prevailing party and their request is reasonable for the volume of complex work accomplished and success achieved; they have exercised billing judgment and engaged in cost-effective litigation; and they are entitled to a 2.0 multiplier enhancement for superior performance and commitment of resources to this important case.  The Court should award Plaintiffs' counsel $1,643,670.90 in fees, costs, and enhancements, plus interest from the date of this Court's order pursuant to 28 U.S.C. § 1961.

| 1 | Dated:  November 2, 2018 | ACLU NATIONAL PRISON PROJECT |

By:   s/ Amy Fettig
David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Victoria Lopez (Ill. 6275388)*
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:    dfathi@aclu.org
              afettig@aclu.org
              vlopez@aclu.org

*Admitted *pro hac vice*.  Not admitted
 in DC; practice limited to federal
 courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:     dbarr@perkinscoie.com
               agerlicher@perkinscoie.com
               jhgray@perkinscoie.com

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF
ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:     kbrody@acluaz.org

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:     dspecter@prisonlaw.com
               ahardy@prisonlaw.com
               snorman@prisonlaw.com
               ckendrick@prisonlaw.com
               rlomio@prisonlaw.com

*Admitted *pro hac vice*

-17-

Kirstin T. Eidenbach (Bar No. 027341)
**EIDENBACH LAW, P.L.L.C.**
P. O. Box 91398
Tucson, Arizona 85752
Telephone:  (520) 477-1475
Email:     kirstin@eidenbachlaw.com

Caroline Mitchell (Cal. 143124)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:  (415) 875-5712
Email:     cnmitchell@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone:  (832) 239-3939
Email:     jlwilkes@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez;
Christina Verduzco; Jackie Thomas;
Jeremy Smith; Robert Gamez; Maryanne
Chisholm; Desiree Licci; Joseph Hefner;
Joshua Polson; and Charlotte Wells, on
behalf of themselves and all others
similarly situated*

1

## **CERTIFICATE OF SERVICE**

2    I hereby certify that on November 2, 2018, I electronically transmitted the above

3  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4  Notice of Electronic Filing to the following CM/ECF registrants:

5

6

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

7

8

9

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
Richard M. Valenti
Jamie D. Guzman
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com

10

11

12

13

14

15

16

17

18

19

*Attorneys for Defendants*

20

Asim Dietrich
Rose A. Daly-Rooney
J.J. Rico
Jessica Jansepar Ross
Maya Abela
ARIZONA CENTER FOR DISABILITY LAW
adietrich@azdisabilitylaw.org
rdalyrooney@azdisabilitylaw.org
jrico@azdisabilitylaw.org
jross@azdisabilitylaw.org
mabela@azdisabilitylaw.org

21

22

23

24

25

26

*Attorneys for Plaintiff Arizona Center for Disability Law*

27

s/ D. Freouf
_____

28

-19-