THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING TO FEDERAL AND/OR LOCAL RULES AND PRACTICES AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE LRCiv 5.4
(Rule Number/Section)

FILED ☑   LODGED ___
RECEIVED ___   COPY ___
NOV -9 2018
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Michael J. Cohn #288721
ASPC Tucson / Manzanita 3A3L
P.O. Box 24401
Tucson, AZ 85734-4401

# UNITED STATES DISTRICT COURT, ARIZONA

Parsons, et al.    |    2:12 CV 601-ROS
v.                 |    Motion To Resolve Expert Witness Status
Ryan, et al.       |    Hon. Roslyn O. Silver

I, Michael J. Cohn, class plaintiff / prisoner rights advocate, respectfully request that this honorable court resolve the question of my status as an expert witness. Per ARS §12-2601(c)(2) "Expert" means a person who is qualified by knowledge, skill, experience, training or education to express an opinion regarding a licensed professional's standard of care or liability for a claim. Please note, I surrendered my psychologist License #1219 shortly after my conviction voluntarily. To the best of my knowledge, I am still certified as a community college instructor in psychology and anthropology, by the Maricopa County Community College District.

For the purposes of the above captioned case, the issues may involve the community standard of care, but not necessarily, as a lay person's knowledge of a serious medical condition is at times sufficient to implicate "deliberate indifference" Estelle v. Gamble, 429 US, 97, 104 SCt. (1976); Farmer v. Brennan, 511 US, 825, 837 114 SCt1970(1979). Further, security staff are not necessarily licensed medical personnel, but their commissions or ommissions may implicate "deliberate indifference." (id).

### Rationale for Motion

It is apparent that counsel for Plaintiffs is/are constrained by the limits of the 2015 stipulation in terms of their

1

ability to monitor compliance with the stipulation. Their data collection relies on inmate documents such as HNRs, grievances, and ADC/Corizon documents, such as mortality reviews, ADC's compliance data and so forth. In my opinion, it is advantageous to the plaintiff's case to have an expert imbedded in the day to day operations of ADC/Corizon who has first hand knowledge of inmate/staff interactions, witnesses possible deliberate indifference/malpractice, has access to some staff members for staff insights, observations, opinions about care and so forth. As I have medical needs necessarily treated by Corizon staff, I observe policy, procedure, record keeping and so forth by staff, respond to Utilization Management denials, interact with specialists who I have been referred to in the past and so forth. These insights may be invaluable to the plaintiff's case. Sight visits by counsel may not provide such insights.

### Plaintiff or Expert

I see nothing in the stipulation that precludes a plaintiff class member from being an expert. If the court should find a conflict, I am willing to be removed as a plaintiff class member in favor of being an expert.

### Ability to Read Confidential Documents

Per the 10/23/18 letter to me from Corene Kendrick, counsel for plaintiffs, I am not eligible to receive mortality reviews or compliance data, due to these documents being controlled by the decedents survivors and medical privacy laws. However, an expert is eligible to receive such documents. As I pursue criminal complaints as well as civil complaints, I view these documents as evidence in possible

2

criminal acts. As a "Jailhouse Lawyer" who assists inmates in matters from child support/paternity/custody to direct appeals to medical care grievances and §1983 complaints, review of such documents may be essential to plaintiffs seeking recourse as a direct result of Parsons v. Ryan. As counsel for plaintiffs is on site only occasionally, even though I no longer have a license, I still adhere to the Ethics of the American Psychological Association. To the best of my memory, I am obligated to advocate for the vulnerable. I take this seriously. It is incumbent on those of us who are educated and were/are professionals to engage in the Parsons v. Ryan case to the greatest extent possible. A fellow inmate was a surgeon in the military and was a cancer researcher at the Mayo Clinic. Others were attorneys and CPAs. Our inputs to this case should not be underestimated in terms of their quality. Our involvement should be encouraged, not ignored.

  Knowledge, Skill, Experience, Training to the best of my memory.

1973 - B.A. Anthropology (cultural), ARIZONA STATE with DISTINCTION
1975 - Master of Counseling, ARIZONA STATE
1978-79 - School Psychometrist/Asst. School Psychologist
1977-79   Doctor of Education, Guidance and Counseling, minors in Educational Psychology and Special Education, Ball State. Licensed School Psychologist.
1979-1980 - Temporary Assistant Professor - Ball State University.
1980-1983 - School Violence/Drug Abuse Prevention Consultant, Indiana Dept. of Education. (Lectured at the International Conference on Drugs, AKA Nancy Reagan, "Just Say No" campaign, Atlanta, GA. Topic - "Teens, Drugs and Suicide.")

3

Licensed as a School Psychologist in Indiana. Briefly practiced.

1983-1986 - Various Administrative Positions, Fairbanks Hospital, Indianapolis IN. Supervised inpatient and outpatient addiction counseling services. Trained in the Standards of the Joint Commission on the Accreditation of Healthcare Organizations.

1986 - ~~2014~~ 2001 - C.E.O. of Treatment Centers of ~~Scott~~ America, Scottsdale. Left this position to pursue private practice after several months at T.C.A. Privileges to practice at Scottsdale Camelback Hospital. Licensed as a Psychologist.

Expert Certifications
- Fellow and Diplomate, American Board of Medical Psychotherapists and Psychodiagnosticians (Expired).
- Fellow and Diplomate: American College of Forensic Examiners (Expired?)
- Certificate in the treatment of Substance Abuse Disorders; American Psychological Association. (Expired)

2001- Disability due to mass in spine and related side effects/complications.

2005 - Post-Conviction Legal Education - Blackstone Career Institute - Paralegal Studies, Criminal Law, Civil Litigation, Family Law, Wills/Estates/Trusts

Expert Witness/Special Master
- 2 Expert Witness cases for the defense - Homicide.
- 1 " " case for the Petitioner - Child Custody
- 3 Special Master Appointments - Child Custody.

Publications
Several professional publications including an article on child custody evaluations in the "Family Law Quarterly," a publication of the American Bar Association.

4

Healthcare Administration Education

12 credits towards Masters of Healthcare Administrator. 6 more credits could be transferred from previous education, University of St. Francis, app. 1984-1985.

Note: As I was seriously mentally ill at the time of my offense, I have used legal education and activity as a therapeutic tool to regain my maximum mental functioning. My mental health has been restored. Other than my impaired mobility due to the mass in my spine and chronic pain, I believe I am competent to function as an expert witness. My medications include methyl carbonol, a muscle relaxant, daily cymbalta for pain and tylenol 3 with codeine as needed, but no more than twice a day.

If the court would like to speak to me to assess my competence, the phone number is 520-574-0024. Ask for Correction Officer III Saenz.

For the reasons cited herein the court should approve my motion in all its respects.

Respectfully submitted,                                    Date: 11/2/18

Michael J. Cohn, Ed.D.
Dr. Michael J. Cohn
Prisoner Rights Advocate                         copies to:        on: 11/5/18
                                                 - Attorney General
original mailed to:   on: 11/5/18                1275 W. Washington
Clerk of the U.S. Dist. Ct.                      Phoenix, AZ 85007
401 W. Washington, SPC-1                         - Prison Law Ofc.
Phoenix, AZ 85003                                General Delivery
                                                 San Quentin, CA 94964

5

Declaration

I declare that the contents herein are true and correct under the penalty of perjury, to the best of my knowledge, understanding and memory. Please note, the resume' may not be all inclusive.

*Michael J. Cobb*          Date: 11/2/18

Michael J. Cobb

Michael J. Cohn #288721
ASPC Tucson/Manzanita 3A3L
P.O. Box 24401
Tucson, AZ 85734-4401

11/1/18

Corene Kendrick, Esq.
Prison Law Ofc.
General Delivery
San Quentin, CA 94964

Re: Letter of 10/23/18

Ms. Kendrick:
Thank you for your letter dated 10/23/18.
   In your letter you responded to my request for a mortality review and compliance data for the Manzanita Unit. You indicated that the medical expert "often" (But not always?) reviews the mortality reviews to identify deficiencies in medical care.
   It appears to me that an expert witness is eligible to receive the mortality reviews and compliance data. Therefore, please see the attached motion to resolve my expert witness status. I see nothing in the stipulation stating a plaintiff cannot also be an expert witness. If necessary, I will request to be removed as a plaintiff in order to assume the role of expert witness. I have the advantage of first hand knowledge of the culture, the psycho/social dynamics of the community and first hand

1

observation of the medical staff including their interactions with inmates. The medical expert only has the reports submitted to him, which may or may not be complete or accurate. I also have the ability to interview inmates and some staff members.

Alternatively, since the medical expert reviews the mortality reports I request to see his report of deficiencies. It seems to me that his data is not controlled by the family or medical privacy laws, as it is a court document for the public domain.

Even if privacy laws apply, redaction of personal contact information should relieve your office and the expert's office of ANY privacy violations.

I find it ironic that you are concerned about these privacy issues when 42,000 inmates are not even able to sign a acknowledgement of their HIPPA rights, as this is wantonly disregarded by Corizon. Perhaps you could attend to this issue.

Please see my notes of the conversation I had with COIV Evans. I am continuing with my investigation of Mr. Cromwell's death. I will not let this matter drop. In my opinion, you should be pushing the court and local law enforcement to investigate all inmate deaths as criminal acts. If you don't, I see you as part of the problem, not part of the solution.

There is nothing in the Stipulation that says you can't report a crime or/and abuse/neglect of adults. If I was in your position, I would be vigorously

2

pursuing criminal action. I hope you find your inner courage to so do.

Yours in Prisoner Rights,

Michael J. Cohn, Ed.D.
Dr. Michael J. Cohn
Prisoner Rights Advocate

P.S. I saw you and several parties to the case on TV last Spring when they alleged retaliation at Perryville, etc. Thank you for all your hard work and the hard work of your staff. You deserve accolades for bringing the case this far. I will be appreciative when deserved and critical when deserved! MJC.

P.S. The State of Arizona is murdering us as quickly as they can get away with it. It is naive to believe otherwise. We need vigorous representation, not tolerance of governmental abuses. MJC

3

Notes

11/1/18 2:30 pm. Conversation with CO IV Evans

I spoke w/ CO IV Evans who was present on the day of Inm Cromwell's death. CO IV Evans who is 3rd highest admin. in this Unit and supervised CO III Colsten reported that Colsten had told her that a medical staff member was present, but when asked by inmates to look at Cromwell she chose not to., at that point - The C.O. Botco went to look at him. Q. If a medical person was present why were proper resuscitation efforts not employed?

CO IV reports she was present that day. She reports all all due diligence by administrative staff was performed appropriately based on their training (Q why was defib. not used, Did C.O. Botco have training?). She states not having access to medical info. Did CO have tube for m-m

Impression

Homicide - negligent or manslaughter - Wanton disregard for risk by medical staff - Voluntary manslaughter. Q. negligence by Security staff? Failure to use training?

note: I asked CO IV if I would be susceptible to administrative retaliation if I pursue this matter. She indicated "No." She further indicated that if admin. suspected a criminal act it would be referred to CIU. She repeated she did not have the medical info.

Michael J. Coly, Ed.D.       2:55 pm   11/1/18

Certificates in Paralegal Studies, Criminal Law, Civil Litigation, Torts/Personal Injury, Family Law, Wills, Trusts, Estates.



**PRISON LAW OFFICE**
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Rana Anabtawi
Steven Fama
Alison Hardy
Sophie Hart
Corene Kendrick
Rita Lomio
Margot Mendelson
Thomas Nosewicz
Camille Woods
Lynn Wu

# LEGAL MAIL - CONFIDENTIAL

October 23, 2018

Michael Cohn, ADC 288721
Tucson - Manzanita
PO Box 24401
Tucson, AZ 85734-4401

Dear Mr. Cohn:

We write in response to three letters received from you in October 2018, that were copies of documents you filed with the court in Parsons v. Ryan.

In your letters, you share concerns about the death of another person imprisoned at ASPC-Tucson. The Arizona Department of Corrections (ADC) conducts a review related to health care whenever any prisoner dies. Those reviews are confidential under state law. Pursuant to the Parsons settlement, we are provided copies of these confidential reports after a class member's death, and our medical expert often reviews them to identify deficiencies in medical care.

The information in mortality reviews is confidential health information about other individuals. It is controlled by the decedents' survivors and medical privacy laws. We cannot share these reviews with you, a third party.

Similarly, the compliance data for the Tucson-Manzanita unit contains confidential details about individual class members' medical conditions. Likewise, we cannot share this information with you.

Sincerely,

Corene Kendrick
Staff Attorney

Enclosures:   Original Documents

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris