**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Antonio Parsons, et al., | No. CV-12-00601-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| Charles L Ryan, et al., | |
| Defendants. | |

Defendants have moved for relief from two of the Court's earlier Orders under Federal Rule of Civil Procedure 60(b)(6) and to stay several other Orders. (Docs. 2931, 2932, 2971). The Court will deny these motions. The Court will also grant the pending motion to set a status hearing (Doc. 2999) and set a hearing for December 6, 2018, at 1:30 p.m.

## BACKGROUND

### A.    The Stipulation

In October 2014, after two-and-a-half years of litigation, the parties signed a Stipulation to settle this matter and jointly moved to refer the remainder of this case to Judge Duncan. (Docs. 1185, 1186). After receiving nearly 250 comments from class members, Judge Duncan conducted a Federal Rule of Civil Procedure 23(e) Fairness Hearing in February 2015 and granted the parties' Motion to Approve Stipulation. (Docs. 1208-1463).

Under the Stipulation, Defendants agreed to improve the healthcare provided to

inmates. In particular, Defendants agreed that over the course of three years, they would reach a minimum level of compliance regarding 103 healthcare performance measures (PMs) based on national standards for correctional healthcare. Defendants were required to meet or exceed a 75% compliance score during the first year, 80% during the second year, and 85% thereafter. Defendants further agreed to monitor and report on their progress. The Arizona Department of Corrections' pre-existing Monitoring Bureau was tasked with monitoring Defendants' efforts on each PM. Because the Stipulation only contained high-level definitions for each PM, the Monitoring Bureau drafted a "Monitoring Guide" for its employees to use.

As set out in the Monitoring Guide, every month, for each PM, the Monitoring Bureau reviews a certain number of healthcare records and, applying the standards applicable to that PM, determines whether each record is compliant. As of February 2017, if 85% or more of the records reviewed are compliant with the criteria in the Monitoring Guide, ADC is compliant with that PM for that prison for that month. After ADC generates a compliance number, it engages in an informal rebuttal process with its private contractor, Corizon Health, Inc. (Corizon). During that informal process, Corizon has the opportunity to offer additional information or context to explain why a particular PM is actually compliant. At the conclusion of that rebuttal process, ADC enters the compliance information into a spreadsheet called the CGAR report. This CGAR report, generated by the Monitoring Bureau, determines whether each prison facility is complying with the Stipulation's PMs.

**B.  Efforts to Compel Compliance with the Stipulation**

In February 2016—approximately one year after the Court approved the parties' stipulation—Plaintiffs filed a motion to compel, seeking production of information they believed necessary to assess Defendants' compliance with the Stipulation. (Doc. 1506). In April 2016, Plaintiffs filed their first Motion to Enforce the Stipulation involving PMs related to chronic care treatment, inpatient care in prison infirmaries, medication administration, diagnostic testing, access to mental health care, monitoring of

psychotropic medications, access to non-medication treatment, inadequate suicide prevention, and monitoring confinement in isolation for the mentally ill. (Docs. 1506, 1576). That filing resulted in the Court spending a tremendous amount of time trying to ascertain why Defendants were unable to comply with the obligations they accepted under the Stipulation. The Court held status conferences in April 2016 and again in May, June, August, September, October, November, and December. (Docs. 1549, 1559, 1582, 1619, 1645, 1678, 1708, 1780, 1831). These conferences covered Defendants' remediation plans for non-compliant PMs, Plaintiffs' access to Defendants' new electronic medical records system, and interpretations of key terms in the Stipulation. In the latter half of 2016, the Court also conducted telephonic hearings on discovery disputes, scheduled a prison tour, and addressed allegations of retaliation during the prison tour. (Docs. 1666, 1723, 1734).

In late 2016, the parties began presenting disputes for the Court to resolve about how to interpret the data and to assess compliance, including disputes about how to evaluate timing, e.g., whether something done within 30 days means it is done within one month; how to assess compliance when care needs to be provided within a specified number of days; and whether a prisoner is "seen" by a mental health care provider in a group setting or in their cell. (Doc. 1673). The Court also rejected Defendants' use of partial credit to assess compliance and held that if one part of a prisoner's file is deficient, it cannot be counted as compliant. (Doc. 1831).

In 2017, the Court continued to conduct monthly status hearings, emergent telephonic hearings, and evidentiary hearings. (Docs. 1895, 1933, 1964, 2029, 2061, 2124, 2185, 2186, 2205, 2233, 2236, 2245, 2249, 2285, 2313, 2317, 2330, 2403, 2437, 2456, 2474, 2526). The frequent of hearings continued in 2018. (Docs. 2560, 2559, 2586, 2601, 2658, 2659, 2686, 2700, 2720, 2735, 2757, 2764, 2816, 2843, 2844, 2850, 2854, 2860, 2879, 2880, 2882). The Court also sought clarification about the methodologies used to assess compliance and, therefore, held an evidentiary hearing beginning in March 2017 on how data is collected. (Docs. 1964, 1980, 1996).

Throughout this time, the motion practice continued apace with the hearings. (Docs. 1583, 1673, 1709, 1727, 1745, 1754, 1762, 1833, 1862, 1907, 1910, 1917, 1918, 1951, 2030, 2117, 2118, 2119, 2147, 2179, 2225, 2235, 2353, 2382, 2483, 2504, 2551, 2604, 2620, 2644, 2789, 2791, 2810, 2833, 2856). In April 2017, the Court informed the parties that it was considering the appointment of a Special Master under Federal Rule of Civil Procedure 53. (Doc. 2029). The Court contemplated that an expert would serve in multiple capacities to oversee the monitoring program and to provide guidance to the Court on what remedial measures would be most effective. Plaintiffs argued that the Court should instead appoint an expert under Federal Rule of Evidence 706. (Docs. 2043, 2083). Defendants argued that such an appointment would violate the Stipulation and that "there is no question that this Court is best suited to oversee the monitoring and enforcement of the Stipulation." (Doc. 2067 at 4:8-9). The Court ordered the parties to meet-and-confer about possible experts for appointment under Rule 706 and then submit names for the Court's consideration.

At the conclusion of this process, the Court appointed Mr. Millar of The Advisory Group as an expert in October 2017. (Docs. 2133, 2236, 2249, 2437, 2483). The Court recognized that the failure to meaningfully comply with the Stipulation was ultimately a matter of staffing, but the Stipulation precluded the Court from ordering that Defendants hire additional staff. Thus, the Court directed Mr. Millar to identify where Defendants failed to meet their own established staffing levels and to identify the underlying cause of that failure. Mr. Millar submitted his final report in June 2018. (Doc. 2880). The Court thereafter ordered Defendants to "file their plan to implement the recommendations contained in the final Advisory Group report." (Doc. 2904). Defendants submitted a plan and Plaintiffs have challenged that plan as insufficient. (Doc. 2948).

**C.    Contempt Proceedings Due to Pervasive Noncompliance with the Stipulation and Errors in the Monitoring Process**

At the June 2017 Status Hearing, after Defendants' continued failure to ensure compliance with critical PMs related to delivery of medication, seeing a healthcare

provider for routine illness or a specialist, ensuring compliance with emergency room discharge recommendations, acting upon abnormal diagnostic testing, and receiving urgent specialty diagnostic testing, the Court informed the parties that, for certain PMs at certain prisons, "every single failure to comply . . . will result in an order to show cause hearing as to why a $1,000.00 fine should not be imposed." (Doc. 2124). Following briefing and a hearing, the Court entered findings of fact, conclusions of law, and held Defendants in contempt for December 2017, January 2018, and February 2018 in the amount of $1,445,000. (Doc. 2898). Although some of the PM/locations captured by the contempt proceedings demonstrated improvement, that improvement was neither pervasive nor sustained. (Doc. 2095 at 2).

In prior orders, the Court concluded additional expert assistance was needed. In particular, such assistance was needed regarding the monitoring process and for the PMs Defendants repeatedly failed to satisfy. On the monitoring process, evidence—from whistleblower witnesses and internal documents—established that ADC manipulated the monitoring process so that the CGAR Reports showed compliance even when the goals of providing sufficient and appropriate care had not been met. As detailed in the Court's Order, "the credible evidence before the Court indicates that [Corizon's electronic medical record system] allows providers to create dishonest and untraceable entries in an inmate's medical record, that Corizon has manipulated categories of records to comply with the Stipulation's time frames, and that Corizon has not ensured the integrity of its electronic medical records system." (Doc. 2900 at 8).

Other evidence showed that the Monitoring Bureau reviewed a fluctuating number of records each month and the number of records reviewed may be manipulated to create compliance. Internal emails led to different concerns. One email showed that a member of the monitoring team raised concerns about a specific inmate but did not include him in the CGARs. It seems likely the monitoring team only knew about that particular inmate's record because it was being reviewed in preparing the CGARs and the fact that it was not included raises a concern that inmate records are artificially excluded from

CGARs.  A different email showed that a different member of the monitoring team raised concerns about a different inmate, but then counted his case as compliant for the CGARs. (Doc. 2900 at 8-9).  Further evidence showed that "Corizon [had] re-categorized a category of care in a way that allowed them to take additional time to provide the care and that did not permit an accurate assessment of whether or not there had been compliance with the relevant performance measure."  (Doc. 2900 at 11).

This evidence, combined with Defendants' "inexplicably inconsistent filings" and inability to explain the Monitoring Guide's procedures, resulted in the Court concluding that expert assistance is necessary to review Defendants' monitoring process and confirm that it produces accurate, valid, and reliable information about compliance with the Stipulation.  (Doc. 2900).

Expert assistance was also necessary because there is a set of PM/locations where the CGAR reports produced by Defendants show long-term non-compliance yet Defendants' remediation plans had stalled.  As detailed in the Court's Order, for some PM/locations, Defendants had stopped submitting new ideas and have proposed to "continue to utilize the same corrective action plan as set forth in the [previous] update." (Doc. 2874-1 at 79-80).  For other PMs/locations, "Defendants have not even attempted a substantive remedial measure and have simply informed the Court that a new hire will solve the problem" even though the PM/location was already non-compliant when that position had been filled.  (Doc. 2905 at 1-2).

The Court ordered the parties to submit names for an outside expert who could develop methods, policies, and procedures for Defendants in the performance measures/locations where Defendants have demonstrated persistent non-compliance. (Doc. 2905 at 3).

## ANALYSIS

Since this matter was reassigned, the parties have filed multiple motions and other documents required by Judge Duncan.  Defendants seek relief under Rule 60 from two of Judge Duncan's June 22, 2018 Orders as well as a stay of other orders pending appeal.

As for Plaintiffs, they request the Court hold a status hearing.

## A.     Motions for Relief Under Rule 60 and Stay Pending Appeal

Defendants seek relief from the Order denying their Motion to Terminate Monitoring and directing the retention of an expert to evaluate the monitoring process at Defendants' expense and the Order directing Defendants to reinstall Health Needs Request boxes.  (Docs. 2931, 2931).  Rule 60(b)(6) permits a court to relieve a party from an order "for any other reason that justifies relief" and is used only "sparingly as an equitable remedy to prevent manifest injustice."  *U.S. v. Alpine Land & Reservoir Co.,* 984 F.2d 1047, 1049 (9th Cir. 1993).  This procedural mechanism is reserved for "extraordinary circumstances" such as a case dismissed because of an attorney's gross negligence.  *See, e.g.*, *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010).  Thus, the moving party must be "able to show both injury and circumstances beyond its control prevented timely action to protect its interest."  *Gardner v. Martino*, 563 F.3d 981, 991 (9th Cir. 2009).  Here, Defendants' motions for relief rely entirely on arguments that were presented, considered, and rejected.  (Docs. 2931, 2932).  Rule 60(b)(6) is not a substitute for a motion for reconsideration or an appeal.  Similarly, reassignment of this matter with the Court is not an opportunity for a second bite at the apple.

Further, the Court will not grant a stay of the Orders entered on June 23, 2018.  Whether to grant a stay pending appeal is guided by an analysis of four factors set forth by the Supreme Court in *Nken v. Holder*, 556 U.S. 418, 434 (2009): "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012) (quoting *Nken*, 556 U.S. at 434 (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987))).

Defendants fail to meet a single factor.  The Stipulation empowers the Court to employ "any remedy provided by law" to compel Defendants to comply with the Stipulation and all of the Court's recent decisions—contempt sanctions, solicitation of an

expert, and restoring HNR boxes—are squarely within that authority. More than that, Defendants' interminable noncompliance—which persists to this day—forecloses a finding that a stay of the Court's June 22, 2018 Orders is appropriate because of the continued harm the class experiences. Defendants' Motion to Stay will be denied. (Doc. 2971).

### B.    Appointment of Expert

In light of the costs incurred and the current procedural posture, the Court has concluded that, instead of two separate experts, one consolidated expert is a more appropriate path forward. The Court will conduct a status hearing with the parties to discuss whether Marc Stern, M.D., should be appointed as the Court's Rule 706 expert. A copy of Dr. Stern's curriculum vitae is attached to this Order.

### C.    Cost of this Litigation and Path Forward

Unsurprisingly, this case has cost the State a lot of money. Under the Stipulation, Defendants agreed to pay Plaintiffs up to $250,000 per calendar year for fees and costs for "work reasonably performed" under the Stipulation. (Doc. 1185, ¶ 44). Through June 30, 2017, Defendants had paid Plaintiffs $645,617.58 pursuant to this provision. (Doc. 2402-1).

In November 2017, Plaintiffs informed the Court that Defendants had paid their outside counsel $1,744,543.45 between February 2015 and June 2017. During the first half of 2017, outside counsel invoiced over $100,000/month. (Doc. 2434). Based on the docket, the Court assumes this level of monthly invoicing continued throughout the latter half of 2017 and into 2018. In June 2018, after Plaintiffs submitted Court-directed revisions, the Court granted Plaintiffs' Motion for Attorneys' Fees and Costs for the amount of $1,259,991.98 for work through June 30, 2017. (Doc. 2902).

This means that, through June 30, 2017, the State had spent over $3.6 million in litigating this matter. Based on billing rates and Plaintiffs' recent submission, a safe assumption is that close to $2 million more has been spent since then. Thus, a conservative estimate is that the State has spent well over $5.5 million in attorneys' fees

with most of that being spent in the last three years.

While Defendants are free to utilize the State's resources as they wish, at some point their continued insistence that taxpayer money is better spent on assiduously defending their noncompliance with the Stipulation than on efforts towards remedying the fundamental underlying cause of that noncompliance is likely ill-conceived and ill-advised. The Court is disinclined to grinding down the well-worn path of noncompliance and failed remedial measures. It has been four years since the parties adopted the Stipulation and over six years since this litigation commenced. Defendants' actions raise the distinct miserable possibility that the Stipulation will have to be set aside and the parties instructed to litigate again. *See Delay v. Gordon*, 475 F.3d 1039, 1044 n.11 (2007) (noting "[r]epudiation of a settlement agreement . . . may justify vacating the court's prior dismissal order [and] return[ing] the parties to the status quo ante"). The parties, but especially Defendants, should carefully contemplate whether they are willing to engage in the good-faith efforts needed to bring Defendants into compliance with the Stipulation.

……
……
……
……
……
……
……
……
……
……
……
……
……

Accordingly,

**IT IS ORDERED denying** Defendants' Motion for Relief from Court Order Re: Termination of Monitoring (Doc. 2931).

**IT IS FURTHER ORDERED denying** Defendants' Motion for Relief from Court Order Re: HNR Boxes (Doc. 2932).

**IT IS FURTHER ORDERED denying** Defendants' to Stay (Doc. 2971).

**IT IS FURTHER ORDERED granting** Plaintiffs' Motion for Status Hearing. (Doc. 2999). A hearing is set for **December 6, 2018**, at **1:30 p.m.**

**IT IS FURTHER ORDERED granting** Defendants' Motion to Modify Order Doc. 2958 (Doc. 3046). Defendants' monthly compliance reports will be due on the 21st day of each month or on the business day thereafter.

**IT IS FURTHER ORDERED denying** Michael Cohn's pro se Motion for Investigation of Fraudulent Schemes (Doc. 3044).

Dated this 15th day of November, 2018.

Honorable Roslyn O. Silver
Senior United States District Judge

November, 2018

1100 Surrey Trace Drive, SE                                              marcstern@live.com
Tumwater, Washington 98501, USA                                         +1 (360) 701–6520

## SUMMARY OF EXPERIENCE

**CORRECTIONAL HEALTH CARE CONSULTANT**                                  **2009 – PRESENT**

Consultant in the design, management, and operation of health services in a correctional setting to assist in evaluating, monitoring, or providing evidence-based, cost-effective care consistent with constitutional mandates of quality.

Current activities include:

- Advisor to various jails in Washington State on patient safety, health systems, and related health care and custody staff activities and operations, and RFP and contract generation (2014 - )

- Consultant to Human Rights Watch to evaluate medical care of immigrants in Homeland Security detention (2016 - )

- Consultant to the US Department of Justice, Civil Rights Division, Special Litigation Section. Providing investigative support and expert medical services pursuant to complaints regarding care delivered in any US jail, prison, or detention facility. (2010 - ) (no current open cases)

- Consultant to Broward County Sheriff to help develop and evaluate responses to a request for proposals (2017 - )

- Physician prescriber/trainer for administration of naloxone by law enforcement officers for the Olympia, Tumwater, Lacey, and Evergreen College Police Departments (2017 - )

- Consultant to the Civil Rights Enforcement Section, Office of the Attorney General of California, under SB 29, to review the healthcare-related conditions of confinement of detainees confined by Immigration and Customs Enforcement in California facilities (2017 - )

Previous activities include:

- Member of monitoring team (medical expert) pursuant to Consent Agreement between US Department of Justice and Miami-Dade County (Unites States of America v Miami-Dade County, *et al.*) regarding, *entre outre*, unconstitutional medical care. (2013 - 2016)

- Jointly appointed Consultant to the parties in Flynn v Walker (formerly Flynn v Doyle), a class action lawsuit before the US Federal District Court (Eastern District of Wisconsin) regarding Eighth Amendment violations of the health care provided to women at the Taycheedah Correctional Institute. Responsible for monitoring compliance with the medical component of the settlement. (2010 - 2015)

- Consultant on "Drug-related Death after Prison Release," a research grant continuing work with Dr. Ingrid Binswanger, University of Colorado, Denver, examining the causes of, and methods of reducing deaths after release from prison to the community. National Institutes of Health Grant R21 DA031041-01. (2011 - 2016)

- Consultant to the US Department of Homeland Security, Office for Civil Rights and Civil Liberties. Providing investigative support and expert medical services pursuant to complaints regarding care received by immigration detainees in the custody of U.S. Immigration and Customs Enforcement. (2009 - 2014)

- Special Master for the US Federal District Court (District of Idaho) in Balla v Idaho State Board of Correction, et al., a class action lawsuit alleging Eighth Amendment violations in provision of health care at the Idaho State Correctional Institution. (2011 - 2012)

- Facilitator/Consultant to the US Department of Justice, Office of Justice Programs, Bureau of Justice Statistics, providing assistance and input for the development of the first National Survey of Prisoner Health. (2010-2011 )

- Project lead and primary author of National Institute of Corrections' project entitled "Correctional Health Care Executive Curriculum Development," in collaboration with National Commission on Correctional Health Care. NIC commissioned this curriculum for its use to train executive leaders from jails and prisons across the nation to better manage the health care missions of their facilities. Cooperative Agreement 11AD11GK18, US Department of Justice, National Institute of Corrections. (2011 - 2015 )

- Co-teacher, with Jaye Anno, Ph.D., for the National Commission on Correctional Health Care, of the Commission's standing course, *An In-Depth Look at NCCHC's 2008 Standards for Health Services in Prisons and Jails* taught at its national meetings. (2010 - 2013)

- Contributor to 2014 Editions of Standards for Health Services in Jails and Standards for Health Services in Prisons, National Commission on Correctional Health Care. (2013)
- Consultant to the California Department of Corrections and Rehabilitation court-appointed Receiver for medical operations. Projects included:
  - Assessing the Receiver's progress in completing its goal of bringing medical care delivered in the Department to a constitutionally mandated level. (2009)
  - Providing physician leadership to the Telemedicine Program Manager tasked with improving and expanding the statewide use of telemedicine. (2009)
- Conceived, co-designed, led, and instructed in American College of Correctional Physicians and National Commission on Correctional Health Care's Medical Directors Boot Camp (now called Leadership Institute), a national training program for new (Track "101") and more experienced (Track "201") prison and jail medical directors. (2009 - 2012)
- Participated as a member of a nine-person Delphi expert consensus panel convened by Rand Corporation to create a set of correctional health care quality standards. (2009)
- Convened a coalition of jails, Federally Qualified Health Centers, and community mental health centers in ten counties in Washington State to apply for a federal grant to create an electronic network among the participants that will share prescription information for the correctional population as they move among these three venues. (2009 - 2010)
- Participated as a clinical expert in comprehensive assessment of Michigan Department of Corrections as part of a team from the National Commission on Correctional Health Care. (2007)
- Provided consultation to Correctional Medical Services, Inc., St. Louis (now Corizon), on issues related to development of  an electronic health record. (2001)
- Reviewed cases of possible professional misconduct for the Office of Professional Medical Conduct of the New York State Department of Health. (1999 – 2001)
- Advised Deputy Commissioner, Indiana State Board of Health, on developing plan to reduce morbidity from chronic diseases using available databases. (1992)
- Provided consultation to Division of General Medicine, University of Nevada at Reno, to help develop a new clinical practice site combining a faculty practice and a supervised resident clinic. (1991)

**OLYMPIA FREE CLINIC, OLYMPIA, WASHINGTON**                                            **2017 - PRESENT**

Volunteer practitioner providing episodic care at a neighborhood clinic which provides free care to individuals without health insurance until they can find a permanent medical home

**OLYMPIA UNION GOSPEL MISSION CLINIC, OLYMPIA, WASHINGTON**                    **2009 – 2014**

Volunteer practitioner providing primary care at a neighborhood clinic which provides free care to individuals without health insurance until they can find a permanent medical home; my own patient panel within the practice focuses on individuals recently released jail and prison.

**WASHINGTON STATE DEPARTMENT OF CORRECTIONS**                                        **2002 – 2008**

Assistant Secretary for Health Services/Health Services Director, 2005 – 2008
Associate Deputy Secretary for Health Care, 2002 – 2005

Responsible for the medical, mental health, chemical dependency (transiently), and dental care of 15,000 offenders in total confinement. Oversaw an annual operating budget of $110 million and 700 health care staff.

- As the first incumbent ever in this position, ushered the health services division from an operation of 12 staff in headquarters, providing only consultative services to the Department, to an operation with direct authority and responsibility for all departmental health care staff and budget. As part of new organizational structure, created and filled statewide positions of Directors of Nursing, Medicine, Dental, Behavioral Health, Mental Health, Psychiatry, Pharmacy, Operations, and Utilization Management.
- Significantly changed the culture of the practice of correctional health care and the morale of staff by a variety of structural and functional changes, including: ensuring that high ethical standards and excellence in clinical practice were of primordial importance during hiring of professional and supervisory staff; supporting disciplining or career counseling of existing staff where appropriate; implementing an organizational structure such that patient care

decisions were under the final direct authority of a clinician and were designed to ensure that patient needs were met, while respecting and operating within the confines of a custodial system.

- Improved quality of care by centralizing and standardizing health care operations, including: authoring a new Offender Health Plan defining patient benefits based on the Eighth Amendment, case law, and evidence-based medicine; implementing a novel system of utilization management in medical, dental, and mental health, using the medical staffs as real-time peer reviewers; developing a pharmacy procedures manual and creating a Pharmacy and Therapeutics Committee; achieving initial American Correctional Association accreditation for 13 facilities (all with almost perfect scores on first audit); migrating the eight individual pharmacy databases to a single central database.

- Blunted the growth in health care spending without compromising quality of care by a number of interventions, including: better coordination and centralization of contracting with external vendors, including new statewide contracts for hospitalization, laboratory, drug purchasing, radiology, physician recruitment, and agency nursing; implementing a statewide formulary; issuing quarterly operational reports at the state and facility levels.

- Piloted the following projects: direct issuance of over-the-counter medications on demand through inmates stores (commissary), obviating the need for a practitioner visit and prescription; computerized practitioner order entry (CPOE); pill splitting; ER telemedicine.

- Oversaw the health services team that participated variously in pre-design, design, or build phases of five capital projects to build complete new health units.


## NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES                           2001 – 2002

Regional Medical Director, Northeast Region, 2001 – 2002

Responsible for clinical oversight of medical services for 14,000 offenders in 14 prisons, including one (already) under court monitoring.

- Oversaw contract with vendor to manage 60-bed regional infirmary and hospice.
- Coordinated activities among the Regional Medical Unit outpatient clinic, the Albany Medical College, and the 13 feeder prisons to provide most of the specialty care for the region.
- Worked with contracting specialists and Emergency Departments to improve access and decrease medical out-trips by increasing the proportion of scheduled and emergency services provided by telemedicine.
- Provided training, advice, and counseling to practitioners and facility health administrators in the region to improve the quality of care delivered.


## CORRECTIONAL MEDICAL SERVICES, INC. (now CORIZON)                           2000 – 2001

Regional Medical Director, New York Region, 2000 – 2001

Responsible for clinical management of managed care contract with New York State Department of Correctional Services to provide utilization management services for the northeast and northern regions of New York State and supervision of the 60-bed regional infirmary and hospice.

- Migrated the utilization approval function from one of an anonymous rule-based "black box" to a collaborative evidence-based decision making process between the vendor and front-line clinicians.


## MERCY INTERNAL MEDICINE, ALBANY, NEW YORK                                    1999 – 2000

Neighborhood three-physician internal medicine group practice.

Primary Care Physician, 1999 – 2000 (6 months)

Provided direct primary care to a panel of community patients during a period of staff shortage.


## ALBANY COUNTY CORRECTIONAL FACILITY, ALBANY, NEW YORK                         1998 – 1999

Acting Facility Medical Director, 1998 – 1999

Directed the medical staff of an 800 bed jail and provided direct patient care following the sudden loss of the Medical Director, pending hiring of a permanent replacement. Coordinated care of jail patients in local hospitals. Provided consultation to the Superintendent on improvements to operation and staffing of medical unit and need for privatization.


## VETERANS ADMINISTRATION MEDICAL CENTER, ALBANY, NY                            1992 – 1998

Assistant Chief, Medical Service, 1995 – 1998
Chief, Section of General Internal Medicine and Emergency Services, 1992 – 1998

Responsible for operation of the general internal medicine clinics and the Emergency Department.

- Designed and implemented an organizational and physical plant makeover of the general medicine ambulatory care clinic from an episodic-care driven model with practitioners functioning independently supported by minimal nursing involvement, to a continuity-of-care model with integrated physician/mid-level practitioner/registered nurse/licensed practice nurse/practice manager teams.
- Led the design and opening of a new Emergency Department.
- As the VA Section Chief of Albany Medical College's Division of General Internal Medicine, coordinated academic activities of the Division at the VA, including oversight of, and direct teaching in, ambulatory care and inpatient internal medicine rotations for medical students, residents, and fellows. Incorporated medical residents as part of the general internal medicine clinics. Awarded $786,000 Veterans Administration grant ("PRIME I") over four years for development and operation of educational programs for medicine residents and students in allied health professions (management, pharmacy, social work, physician extenders) wishing to study primary care delivery.

**ERIE COUNTY HEALTH DEPARTMENT, BUFFALO, NY**                                            **1988 – 1990**

Director of Sexually Transmitted Diseases (STD) Services, 1989 – 1990
Staff Physician, STD Clinic, 1988 – 1989
Staff Physician, Lackawanna Community Health Center, 1988 – 1990

Provided leadership and patient care services in the evaluation and treatment of STDs. Successfully reorganized the county's STD services which were suffering from mismanagement and were under public scrutiny. Provided direct patient care services in primary care clinic for underserved neighborhood.

**UNION OCCUPATIONAL HEALTH CENTER, BUFFALO, NY**                                  **1988 – 1990**

Staff Physician, 1988 – 1990

Provided direct patient care for the evaluation of occupationally-related health disorders.

**VETERANS ADMINISTRATION MEDICAL CENTER, BUFFALO, NY**                        **1985 – 1990**

Chief Outpatient Medical Section and Primary Care Clinic, 1986 – 1988
VA Section Head, Division of General Internal Medicine, University of Buffalo, 1986 – 1988

- Developed and implemented a major restructuring of the general medicine ambulatory care clinic to reduce fragmentation of care by introduction of a continuity-of-care model with a physician/nurse team approach.

Medical Director, Anticoagulation Clinic 1986 – 1990
Staff Physician, Emergency Department, 1985 – 1986

**FACULTY APPOINTMENTS**

| | |
|---|---|
| 2007 – present | Affiliate Assistant Professor, Department of Health Services, School of Public Health, University of Washington |
| 1999 – present | Clinical Professor, Fellowship in Applied Public Health (previously Volunteer Faculty, Preventive Medicine Residency), University at Albany School of Public Health |
| 1996 – 2002 | Volunteer Faculty, Office of the Dean of Students, University at Albany |
| 1992 – 2002 | Associate Clinical/Associate/Assistant Professor of Medicine, Albany Medical College |
| 1993 – 1997 | Clinical Associate Faculty, Graduate Program in Nursing, Sage Graduate School |
| 1990 – 1992 | Instructor of Medicine, Indiana University |
| 1985 – 1990 | Clinical Assistant Professor of Medicine, University of Buffalo |
| 1982 – 1985 | Clinical Assistant Instructor of Medicine, University of Buffalo |

**OTHER PROFESSIONAL ACTIVITIES**

| | |
|---|---|
| 2016 – present | Chair, Education Committee, Academic Consortium on Criminal Justice Health |
| 2016 – present | Member (Prisoner Advocate), Washington State Institutional Review Board |
| 2015 – present | Founding Editorial Board Member, Journal for Evidence-based Practice in Correctional Health, Center for Correctional Health Networks, University of Connecticut |
| 2013 – present | Member, Conference Planning Committee – Medical/Mental Health Track, American Jail Association |
| 2013 – present | Course Faculty, "Health in Prisons" course, Bloomberg School of Public Health, Johns Hopkins University/International Committee of the Red Cross |
| 2013 – present | Member (Prisoner Advocate), Institutional Review Board, University of Washington |
| 2011 – 2012 | Member, Education Committee, National Commission on Correctional Health Care |
| 2010 | Recipient, Armond Start Award of Excellence, American College of Correctional Physicians |
| 2010 | Recipient, (First) Annual Preventive Medicine Faculty Excellence Award, New York State Preventive Medicine Residency Program, University at Albany School of Public Health/New York State Department of Health |
| 2010 – present | Member, International Advisory Board, International Journal of Prison Health |
| 2009 – present | Member, Editorial Board, Journal of Correctional Health Care |
| 2007 – present | Member, National Advisory Committee, COCHS (Community–Oriented Correctional Health Services) |
| 2007 – present | Member, Planning Committee, Annual Academic and Health Policy Conference on Correctional Health, University of Massachusetts Medical School and Commonwealth Medicine Correctional Health Program |
| 2005 – present | Member, American Correctional Association/Washington Correctional Association |
| 2004 – 2006 | Member, Board of Directors, American College of Correctional Physicians |
| 2004 – 2006 | Member, Fellow's Advisory Committee, University of Washington Robert Wood Johnson Clinical Scholar Program |
| 2004 | Member, External Expert Panel to the Surgeon General on the "Call to Action on Correctional Health Care" |
| 2004 | Recipient, Excellence in Education Award for excellence in clinical teaching, Family Practice Residency Program, Providence St. Peter Hospital, Olympia, Washington |
| 2003 – present | Faculty Instructor, Critical Appraisal of the Literature Course, Family Practice Residency Program, Providence St. Peter Hospital, Olympia, Washington |
| 2001 – present | Chair/Co-Chair/Member, Education Committee, American College of Correctional Physicians |
| 2000 – present | Member, American College of Correctional Physicians |
| 1999 – present | Faculty Instructor, Critical Appraisal of the Literature Course, Preventive Medicine Residency Program, New York State Department of Health/University at Albany School of Public Health |
| 1999 | Co–Chairperson, Education Subcommittee, Workshop Submission Review Committee, Annual Meeting, Society of General Internal Medicine |
| 1997 – 1998 | Northeast US Representative, National Association of VA Ambulatory Managers |
| 1996 – 2002 | Faculty Mentor, Journal Club, Internal Medicine Residency Program, Albany Medical College |
| 1996 – 2002 | Faculty Advisor and Medical Control, 5 Quad Volunteer Ambulance Service, University at Albany |
| 1996 | Recipient, Special Recognition for High Quality Workshop Presentation at Annual Meeting, Society of General Internal Medicine |
| 1995 – 1998 | Preceptor, MBA Internship, Union College |
| 1995 | Member, Quality Assurance/Patient Satisfaction Subcommittee, VA National Curriculum Development Committee for Implementation of Primary Care Practices, Veterans Administration |
| 1994 – 1998 | Member, Residency Advisory Committee, Preventive Medicine Residency, New York State Department of Health/School of Public Health, University at Albany |
| 1993 | Chairperson, Dean's Task Force on Primary Care, Albany Medical College |
| 1993 | Member, Task Group to develop curriculum for Comprehensive Care Case Study Course for Years 1 through 4, Albany Medical College |
| 1988 – 1989 | Instructor, Teaching Effectiveness Program for New Housestaff, Graduate Medical Dental Education Consortium of Buffalo |

| | |
|---|---|
| 1987 – 1990 | Member, Human Studies Review Committee, School of Allied Health Professions, University of Buffalo |
| 1987 – 1989 | Chairman, Subcommittee on Hospital Management Issues and Member, Subcommittee on Teaching of Ad Hoc Committee to Plan Incoming Residents Training Week, Graduate Medical Dental Education Consortium of Buffalo |
| 1987 – 1988 | Member, Dean's Ad Hoc Committee to Reorganize "Introduction to Clinical Medicine" Course |
| 1987 | Preceptor, Nurse Practitioner Training Program, School of Nursing, University of Buffalo |
| 1986 – 1988 | Course Coordinator, Simulation Models Section of Physical Diagnosis Course, University of Buffalo |
| 1986 – 1988 | Chairman, Service Chiefs' Continuity of Care Task Force, Veterans Administration Medical Center, Buffalo, New York |
| 1986 | Recipient, Letter of Commendation, House Staff Teaching, University of Buffalo |
| 1979 – 1980 | Laboratory Teaching Assistant in Gross Anatomy, Université Libre de Bruxelles, Brussels, Belgium |
| 1973 – 1975 | Instructor and Instructor Trainer of First Aid, American National Red Cross |
| 1972 – 1975 | Chief of Service or Assistant Chief of Operations, 5 Quad Volunteer Ambulance Service, University at Albany. |
| 1972 – 1975 | Emergency Medical Technician Instructor and Course Coordinator, New York State Department of Health, Bureau of Emergency Medical Services |

## EDUCATION

University at Albany, College of Arts and Sciences, Albany; B.S., 1975 (Biology)

University at Albany, School of Education, Albany; AMST (Albany Math and Science Teachers) Teacher Education Program, 1975

Université Libre de Bruxelles, Faculté de Medecine, Brussels, Belgium; Candidature en Sciences Medicales, 1980

University at Buffalo, School of Medicine, Buffalo; M.D., 1982

University at Buffalo Affiliated Hospitals, Buffalo; Residency in Internal Medicine, 1985

Regenstrief Institute of Indiana University, and Richard L. Roudebush Veterans Administration Medical Center; VA/NIH Fellowship in Primary Care Medicine and Health Services Research, 1992

Indiana University, School of Health, Physical Education, and Recreation, Bloomington; M.P.H., 1992

New York Academy of Medicine, New York; Mini-fellowship Teaching Evidence-Based Medicine, 1999

## CERTIFICATION

Provisional Teaching Certification for Biology, Chemistry, Physics, Grades 7–12, New York State Department of Education (expired), 1975

Diplomate, National Board of Medical Examiners, 1983

Diplomate, American Board of Internal Medicine, 1985

Fellow, American College of Physicians, 1991

License: Washington (#MD00041843, active); New York (#158327, inactive); Indiana (#01038490, inactive)

## REVIEWER

| | |
|---|---|
| 2015 – present | Journal for Evidence-based Practice in Correctional Health |
| 2015 – present | PLOS ONE |
| 2001 – present | Journal of Correctional Health Care |
| 2011 – present | American Journal of Public Health |
| 2010 – present | Langeloth Foundation (grants) |
| 2001 – 2004 | Journal of General Internal Medicine |
| 1996 | Abstract Committee, Health Services Research Subcommittee, Annual Meeting, Society of General Internal Medicine |
| 1990 – 1992 | Medical Care |

## WORKSHOPS, SEMINARS, PRESENTATIONS, INVITED LECTURES

*Executive Manager Program in Correctional Health.* 4-day training for custody/health care teams from jails and prisons on designing safe and efficient health care systems. National Institute for Corrections Training Facility, Aurora, Colorado, and other venues in Washington State. Periodically, 2014 – present.

*Medical Ethics in Corrections.* Criminal Justice 441 – Professionalism and Ethical Issues in Criminal Justice. University of Washington, Tacoma. Recurring seminar, 2012 – present

*Medical Aspects of Deaths in ICE Custody.* Briefing for U.S. Senate staffers, Human Rights Watch. Washington, D.C. 2018

*Jails' Role in Managing the Opioid Epidemic.* Panelist. Washington Association of Sheriffs and Police Chiefs Annual Conference. Spokane, Washington. 2018

*Contract Prisons and Contract Health Care: What Do We Know?* Behind Bars: Ethics and Human Rights in U.S. Prisons Conference. Center for Bioethics – Harvard Medical School/Human Rights Program – Harvard Law School. Boston, Massachusetts. 2017

*Health Care Workers in Prisons.* (With Dr. J. Wesley Boyd) Behind Bars: Ethics and Human Rights in U.S. Prisons Conference. Center for Bioethics – Harvard Medical School/Human Rights Program – Harvard Law School. Boston, Massachusetts. 2017

*Prisons, Jails and Medical Ethics: Rubber, Meet Road.* Grand Rounds. Touro Medical College. New York, New York. 2017

*Jail Medical Doesn't Have to Keep You Up at Night – National Standards, Risks, and Remedies.* Washington Association of Counties. SeaTac, Washington. 2017

*Prison and Jail Health Care: What do you need to know?* Grand Rounds. Providence/St. Peters Medical Center. Olympia, Washington. 2017

*Prison Health Leadership Conference.* 2-Day workshop. International Corrections and Prisons Association/African Correctional Services Association/Namibian Corrections Service. Omaruru, Namibia. 2016; 2018

*What Would YOU Do? Navigating Medical Ethical Dilemmas.* Spring Conference. National Commission on Correctional Health Care. Nashville, Tennessee. 2016

*Improving Patient Safety.* Spring Provider Meeting. Oregon Department of Corrections. Salem, Oregon 2016

*A View from the Inside: The Challenges and Opportunities Conducting Cardiovascular Research in Jails and Prisons.* Workshop on Cardiovascular Diseases in the Inmate and Released Prison Population. The National Heart, Lung, and Blood Institute. Bethesda, Maryland. 2016

*Why it Matters: Advocacy and Policies to Support Health Communities after Incarceration.* At the Nexus of Correctional Health and Public Health: Policies and Practice session. Panelist. American Public Health Association Annual Meeting. Chicago, Illinois. 2015

*Hot Topics in Correctional Health Care.* Presented with Dr. Donald Kern. American Jail Association Annual Meeting. Charlotte, North Carolina. 2015

*Turning Sick Call Upside Down.* Annual Conference. National Commission on Correctional Health Care. Dallas, Texas, 2015.

*Diagnostic Maneuvers You May Have Missed in Nursing School.* Annual Conference. National Commission on Correctional Health Care. Dallas, Texas. 2015

*The Challenges of Hunger Strikes: What Should We Do? What Shouldn't We Do?* Annual Conference. National Commission on Correctional Health Care. Dallas, Texas. 2015

Practical and Ethical Approaches to Managing Hunger Strikes. Annual Practitioners' Conference. Washington Department of Corrections. Tacoma, Washington. 2015

*Contracting for Health Services: Should I, and if so, how?* American Jail Association Annual Meeting. Dallas, Texas. 2014

*Hunger Strikes: What should the Society of Correctional Physician's position be?* With Allen S, May J, Ritter S. American College of Correctional Physicians (Formerly Society of Correctional Physicians) Annual Meeting. Nashville, Tennessee. 2013

*Addressing Conflict between Medical and Security: an Ethics Perspective.* International Corrections and Prison Association Annual Meeting. Colorado Springs, Colorado. 2013

*Patient Safety and 'Right Using' Nurses.* Keynote address. Annual Conference. American Correctional Health Services Association. Philadelphia, Pennsylvania. 2013

*Patient Safety: Overuse, underuse, and misuse…of nurses.* Keynote address. Essentials of Correctional Health Care conference. Salt Lake City, Utah. 2012

*The ethics of providing healthcare to prisoners-An International Perspective.* Global Health Seminar Series. Department of Global Health, University of Washington, Seattle, Washington. 2012

*Recovery, Not Recidivism: Strategies for Helping People Who are Incarcerated.* Panelist. NAMI Annual Meeting, Seattle, Washington, 2012

*Ethics and HIV Workshop.* HIV/AIDS Care in the Correctional Setting Conference, Northwest AIDS Education and Training Center. Salem, Oregon. 2011

*Ethics and HIV Workshop.* HIV/AIDS Care in the Correctional Setting Conference, Northwest AIDS Education and Training Center. Spokane, Washington. 2011

*Patient Safety: Raising the Bar in Correctional Health Care.* With Dr. Sharen Barboza. National Commission on Correctional Health Care Mid-Year Meeting, Nashville, Tennessee. 2010

*Patient Safety: Raising the Bar in Correctional Health Care.* American Correctional Health Services Association, Annual Meeting, Portland, Oregon. 2010

*Achieving Quality Care in a Tough Economy.* National Commission on Correctional Health Care Mid-Year Meeting, Nashville, Tennessee, 2010 (Co-presented with Rick Morse and Helena Kim, PharmD.)

*Involuntary Psychotropic Administration: The Harper Solution.* With Dr. Bruce Gage. American Correctional Health Services Association, Annual Meeting, Portland, Oregon. 2010

*Evidence Based Decision Making for Non-Clinical Correctional Administrators.* American Correctional Association 139th Congress, Nashville, Tennessee. 2009

*Death Penalty Debate.* Panelist. Seattle University School of Law, Seattle, Washington. 2009

*The Patient Handoff – From Custody to the Community.* Washington Free Clinic Association, Annual Meeting, Olympia, Washington. Lacey, Washington. 2009

*Balancing Patient Advocacy with Fiscal Restraint and Patient Litigation.* National Commission on Correctional Health Care and American College of Correctional Physicians "Medical Directors Boot Camp," Seattle, Washington. 2009

*Staff Management.* National Commission on Correctional Health Care and American College of Correctional Physicians "Medical Directors Boot Camp," Seattle, Washington. 2009

*Management Dilemmas in Corrections: Boots and Bottom Bunks.* Annual Meeting, American College of Correctional Physicians, Chicago, Illinois. 2008

*Public Health and Correctional Health Care.* Masters Program in community–based population focused management – Populations at risk, Washington State University, Spokane, Washington. 2008

*Managing the Geriatric Population.* Panelist. State Medical Directors' Meeting, American Corrections Association, Alexandria, Virginia. 2007

*I Want to do my own Skin Biopsies.* Annual Meeting, American College of Correctional Physicians, New Orleans, Louisiana. 2005

*Corrections Quick Topics.* Annual Meeting, American College of Correctional Physicians. Austin, Texas. 2003

*Evidence Based Medicine in Correctional Health Care.* Annual Meeting, National Commission on Correctional Health Care. Austin, Texas. 2003

*Evidence Based Medicine.* Excellence at Work Conference, Empire State Advantage. Albany, New York. 2002

*Evidence Based Medicine, Outcomes Research, and Health Care Organizations.* National Clinical Advisory Group, Integrail, Inc., Albany, New York. 2002

*Evidence Based Medicine.* With Dr. LK Hohmann. The Empire State Advantage, Annual Excellence at Work Conference: Leading and Managing for Organizational Excellence, Albany, New York. 2002

*Taking the Mystery out of Evidence Based Medicine: Providing Useful Answers for Clinicians and Patients.* Breakfast Series, Institute for the Advancement of Health Care Management, School of Business, University at Albany, Albany, New York. 2001

*Diagnosis and Management of Male Erectile Dysfunction – A Goal–Oriented Approach.* Society of General Internal Medicine National Meeting, San Francisco, California. 1999

*Study Design and Critical Appraisal of the Literature.* Graduate Medical Education Lecture Series for all housestaff, Albany Medical College, Albany, New York. 1999

*Male Impotence: Its Diagnosis and Treatment in the Era of Sildenafil.* 4th Annual CME Day, Alumni Association of the Albany–Hudson Valley Physician Assistant Program, Albany, New York. 1998

*Models For Measuring Physician Productivity.* Panelist. National Association of VA Ambulatory Managers National Meeting, Memphis, Tennessee. 1997

*Introduction to Male Erectile Dysfunction and the Role of Sildenafil in Treatment.* Northeast Regional Meeting Pfizer Sales Representatives, Manchester Center, Vermont. 1997

*Male Erectile Dysfunction.* Topics in Urology, A Seminar for Primary Healthcare Providers, Bassett Healthcare, Cooperstown, New York. 1997

*Evaluation and Treatment of the Patient with Impotence: A Practical Primer for General Internists.* Society of General Internal Medicine National Meeting, Washington D.C. 1996

*Impotence: An Update.* Department of Medicine Grand Rounds, Albany Medical College, Albany, New York. 1996

*Diabetes for the EMT First–Responder.* Five Quad Volunteer Ambulance, University at Albany. Albany, New York. 1996

*Impotence: An Approach for Internists.* Medicine Grand Rounds, St. Mary's Hospital, Rochester, New York. 1994

*Male Impotence.* Common Problems in Primary Care Precourse. American College of Physicians National Meeting, Miami, Florida. 1994

*Patient Motivation: A Key to Success.* Tuberculosis and HIV: A Time for Teamwork. AIDS Program, Bureau of Tuberculosis Control – New York State Department of Health and Albany Medical College, Albany, New York. 1994

*Recognizing and Treating Impotence.* Department of Medicine Grand Rounds, Albany Medical College, Albany, New York. 1992

*Medical Decision Making: A Primer on Decision Analysis.* Faculty Research Seminar, Department of Family Practice, Indiana University, Indianapolis, Indiana. 1992

*Effective Presentation of Public Health Data.* Bureau of Communicable Diseases, Indiana State Board of Health, Indianapolis, Indiana. 1991

*Impotence: An Approach for Internists.* Housestaff Conference, Department of Medicine, Indiana University, Indianapolis, Indiana. 1991

*Using Electronic Databases to Search the Medical Literature.* NIH/VA Fellows Program, Indiana University, Indianapolis, Indiana. 1991

*Study Designs Used in Epidemiology.* Ambulatory Care Block Rotation. Department of Medicine, Indiana University, Indianapolis, Indiana. 1991

*Effective Use of Slides in a Short Scientific Presentation.* Housestaff Conference, Department of Medicine, Indiana University, Indianapolis, Indiana. 1991

*Impotence: A Rational and Practical Approach to Diagnosis and Treatment for the General Internist.* Society of General Internal Medicine National Meeting, Washington D.C. 1991

*Nirvana and Audio–Visual Aids.* With Dr. RM Lubitz. Society of General Internal Medicine, Midwest Regional Meeting, Chicago. 1991

*New Perspectives in the Management of Hypercholesterolemia.* Medical Staff, West Seneca Developmental Center, West Seneca, New York. 1989

*Effective Use of Audio–Visual Aids.* Nurse Educators, American Diabetes Association, Western New York Chapter, Buffalo, New York. 1989

*Management of Diabetics in the Custodial Care Setting.* Medical Staff, West Seneca Developmental Center, West Seneca, New York, 1989

*Effective Use of Audio–Visuals in Diabetes Peer and Patient Education.* American Association of Diabetic Educators, Western New York Chapter, Buffalo, New York. 1989

*Pathophysiology, Diagnosis and Care of Diabetes.* Nurse Practitioner Training Program, School of Nursing, University of Buffalo, Buffalo, New York. 1989

*Techniques of Large Group Presentations to Medical Audiences – Use of Audio–Visuals.*    New Housestaff Training Program,  Graduate Medical Dental Education Consortium of Buffalo, Buffalo, New York. 1988

## PUBLICATIONS/ABSTRACTS

Grande L, **Stern M.** *Providing Medication to Treat Opioid Use Disorder in Washington State Jails.* Study conducted for Washington State Department of Social and Health Services under Contract 1731-18409. 2018.

**Stern MF**, Newlin N. *Epicenter of the Epidemic: Opioids and Jails.* American Jails 2018 32(2):16-18

**Stern MF**. *A nurse is a nurse is a nurse…NOT!* Guest Editorial, American Jails 2018 32(2):4,68

Wang EA, Redmond N, Dennison Himmelfarb CR, Pettit B, **Stern M**, Chen J, Shero S, Iturriaga E, Sorlie P, Diez Roux AV. *Cardiovascular Disease in Incarcerated Populations*. Journal of the American College of Cardiology 2017 69(24):2967-76

Mitchell A, Reichberg T, Randall J, Aziz-Bose R, Ferguson W, **Stern M.** *Criminal Justice Health Digital Curriculum*. Poster, Annual Academic and Health Policy Conference on Correctional Health, Atlanta, Georgia, March, 2017

**Stern MF**. *Patient Safety (White Paper)*. Guidelines, Management Tools, White Papers, National Commission on Correctional Health Care. http://www.ncchc.org/filebin/Resources/Patient-Safety-2016.pdf. June, 2016

Binswanger IA, **Stern MF**, Yamashita TE, Mueller SR, Baggett TP, Blatchford PJ. *Clinical risk factors for death after release from prison in Washington State: a nested case control study.* Addiction 2015 Oct 17

**Stern MF.** Op-Ed on Lethal Injections. The Guardian 2014 Aug 6

**Stern MF.** *American College of Correctional Physicians Calls for Caution Placing Mentally Ill in Segregation: An Important Band-Aid*. Guest Editorial. Journal of Correctional Health Care 2014 Apr; 20(2):92-94

Binswanger I, Blatchford PJ, Mueller SR, **Stern MF**. *Mortality After Prison Release: Opioid Overdose and Other Causes of Death, Risk Factors, and Time Trends From 1999 to 2009.* Annals of Internal Medicine 2013 Nov; 159(9):592-600

Williams B,  **Stern MF,** Mellow J, Safer M, Greifinger RB. *Aging in Correctional Custody: Setting a policy agenda for older prisoner health care.* American Journal of Public Health 2012 Aug; 102(8):1475-1481

Binswanger I, Blatchford PJ, Yamashita TE, **Stern MF.** *Drug-Related Risk Factors for Death after Release from Prison: A Nested Case Control Study*. Oral Presentation, University of Massachusetts 4th Annual Academic and Health Policy Conference on Correctional Healthcare, Boston, Massachusetts, March, 2014

Binswanger I, Blatchford PJ, Forsyth S, **Stern MF**, Kinner SA. *Death Related to Infectious Disease in Ex-Prisoners: An International Comparative Study*. Oral Presentation, University of Massachusetts 4th Annual Academic and Health Policy Conference on Correctional Healthcare, Boston, Massachusetts, March, 2014

Binswanger I, Lindsay R, **Stern MF**, Blatchford P. *Risk Factors for All-Cause, Overdose and Early Deaths after Release from Prison in Washington State Drug and Alcohol Dependence.* Drug and Alcohol Dependence Aug 1 2011;117(1):1-6

**Stern MF**, Greifinger RB, Mellow J. *Patient Safety: Moving the Bar in Prison Health Care Standards.* American Journal of Public Health November  2010;100(11):2103-2110

Strick LB, Saucerman G, Schlatter C, Newsom L, **Stern MF**. *Implementation of Opt-Out HIV testing in the Washington State Department of Corrections.* Poster Presentation, National Commission on Correctional Health Care Annual Meeting, Orlando, Florida, October, 2009

Binswanger IA, Blatchford P, **Stern MF**. *Risk Factors for Death After Release from Prison*. Society for General Internal Medicine 32nd Annual Meeting; Miami: Journal of General Internal Medicine; April 2009. p. S164-S95

**Stern MF**. Force Feeding for Hunger Strikes – One More Step. CorrDocs Winter 2009;12(1):2

Binswanger I, **Stern MF**, Deyo RA, Heagerty PJ, Cheadle A, Elmore JG, Koepsell TD. *Release from Prison – A High Risk of Death for Former Inmates*. New England Journal of Medicine 2007 Jan 11;356(2):157–165

**Stern MF**, Hilliard T, Kelm C, Anderson E. *Epidemiology of Hepatitis C Infection in the Washington State Department of Corrections.* Poster Presentation, CDC/NIH *ad hoc* Conference on Management of Hepatitis C in Prisons, San Antonio, Texas, January, 2003

Phelps KR, **Stern M**, Slingerland A, Heravi M, Strogatz DS, Haqqie SS. *Metabolic and skeletal effects of low and high doses of calcium acetate in patients with preterminal chronic renal failure.* Am J Nephrol 2002 Sep–Dec;22(5–6):445–54

Goldberg L, **Stern MF,** Posner DS. *Comparative Epidemiology of Erectile Dysfunction in Gay Men*. Oral Presentation, International Society for Impotence Research Meeting, Amsterdam, The Netherlands, August 1998. Int J Impot Res. 1998;10(S3):S41 [also presented as oral abstract Annual Meeting, Society for the Study of Impotence, Boston, Massachusetts, October, 1999. Int J Impot Res. 1999;10(S1):S65]

**Stern MF.** *Erectile Dysfunction in Older Men.* Topics in Geriatric Rehab 12(4):40–52, 1997. [republished in Geriatric Patient Education Resource Manual, Supplement. Aspen Reference Group, Eds. Aspen Publishers, Inc., 1998]

**Stern MF**, Wulfert E, Barada J, Mulchahy JJ, Korenman SG. *An Outcomes–Oriented Approach to the Primary Care Evaluation and Management of Erectile Dysfunction.* J Clin Outcomes Management 5(2):36–56, 1998

Fihn SD, Callahan CM, Martin D, et al.; for the **National Consortium of Anticoagulation Clinics**.* *The Risk for and Severity of Bleeding Complications in Elderly Patients Treated with Warfarin.* Ann Int Med. 1996;124:970–979

Fihn SD, McDonell M, Martin D, et al.; for the **Warfarin Optimized Outpatient Follow–up Study Group**.* *Risk Factors for Complications of Chronic Anticoagulation.* Ann Int Med. 1993;118:511–520. (*While involved in the original proposal development and project execution, I was no longer part of the group at the time of this publication)

**Stern MF**, Dittus RS, Birkhead G, Huber R, Schwartz J, Morse D. *Cost–Effectiveness of Hepatitis B Immunization Strategies for High Risk People*. Oral Presentation, Society of General Internal Medicine National Meeting, Washington, D.C., May 1992. Clin Res 1992

Fihn SD, McDonell MB, Vermes D, Martin D, Kent DL, Henikoff JG, and the **Warfarin Outpatient Follow–up Study Group**. *Optimal Scheduling of Patients Taking Warfarin. A Multicenter Randomized Trial.* Oral Presentation, Society of General Internal Medicine National Meeting, Washington, D.C., May 1992. Clin Res 1992

Fihn SD, McDonnell MB, Vermes D, Kent DL, Henikoff JG, and the **Warfarin Anticoagulation Study Group**. *Risk Factors for Complications During Chronic Anticoagulation.* Poster Presentation, Society of General Internal Medicine National Meeting, Seattle, May 1991

Pristach CA, Donoghue GD, Sarkin R, Wargula C, Doerr R, Opila D, **Stern M**, Single G. *A Multidisciplinary Program to Improve the Teaching Skills of Incoming Housestaff.* Acad Med. 1991;66(3):172–174

**Stern MF**. *Diagnosing Chlamydia trachomatis and Neisseria gonorrhea Infections.* (letter) J Gen Intern Med. 1991;6:183

**Stern MF**, Fitzgerald JF, Dittus RS, Tierney WM, Overhage JM. *Office Visits and Outcomes of Care: Does Frequency Matter?* Poster Presentation, Society of General Internal Medicine Annual Meeting, Seattle, May 1991. Clin Res 1991;39:610A

**Stern MF**. *Cobalamin Deficiency and Red Blood Cell Volume Distribution Width.* (letter) Arch Intern Med. 1990;150:910

**Stern M**, Steinbach B. *Hypodermic Needle Embolization to the Heart.* NY State J Med. 1990;90(7):368–371

**Stern MF**, Birkhead G, Huber R, Schwartz J, Morse D. *Feasibility of Hepatitis B Immunization in an STD Clinic.* Oral Presentation, American Public Health Association Annual Meeting, Atlanta, November 1990

# EXPERT TESTIMONY

Dockery, *et al.* v. Hall *et al.* US District Court for the Southern District of Mississippi Northern Division, 2018 (trial)

Benton v. Correct Care Solutions, *et al.* US District Court for the District of Maryland, 2018 (deposition)

Pajas v. County of Monterey, *et al.* US District Court Northern District of California, 2018 (deposition)

Walter v. Correctional Healthcare Companies, *et al*. US District Court, District of Colorado, 2017 (deposition)

Winkler v. Madison County, Kentucky, *et al*. US District Court, Eastern District of Kentucky, Central Division at Lexington, 2016 (deposition)

US v. Miami-Dade County, *et al.* US District Court, Southern District of Florida, periodically 2014 - 2016

Rosemary Saffioti v. Snohomish County *et al.* US District Court Western District of Washington at Seattle, 2015 (deposition)

Christopher Alsobrook v. Sergeant Alvarado, *et al.*, US District Court, Southern District of Florida, Miami Division, 2014 (deposition)

Stefan Woodson v. City of Richmond, Virginia, *et al*., US District Court, Eastern District of Virginia, Richmond Division, 2013 and 2014 (deposition)