1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7              **FOR THE DISTRICT OF ARIZONA**

8

9    Victor Antonio Parsons, et al.,              No. CV-12-00601-PHX-ROS

10              Plaintiffs,                        **ORDER**

11   v.

12   Charles L Ryan, et al.,

13              Defendants.

14

15          In advance of the December 6, 2018, status conference, and to comply with the

16   Court's own obligation to confirm it has jurisdiction, the Court will address in some detail

17   an argument Defendants have raised regarding Magistrate Judge Duncan's jurisdiction.

18                                  **BACKGROUND**

19          When this case was filed in March 2012, it was assigned to District Judge Neil V.

20   Wake and referred to Magistrate Judge Mark E. Aspey.  (Judge Wake subsequently

21   withdrew that referral.)  The case proceeded before Judge Wake with discovery and motion

22   practice.  Trial was set for October 20, 2014.  A few months before trial, Judge Wake

23   referred this case to Magistrate Judge Duncan for a settlement conference.  (Doc. 978).

24   The parties attended that settlement conference, continued to negotiate after the conference,

25   and simultaneously prepared for trial.  On August 11, 2014, the case was reassigned from

26   Judge Wake to District Judge Diane J. Humetewa.  (Doc. 1074).  Less than a week before

27   trial, the parties filed a "Stipulation" indicating that they had agreed to a settlement.  Less

28   than five minutes after filing that stipulation, the parties filed a "Joint Motion to Refer

Remainder of Case to Magistrate Judge Duncan and to Refer Case to Magistrate Judge Buttrick for Mediation." (Doc. 1186). That motion stated, in relevant part,

> Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties hereby consent to have Magistrate Judge David Duncan conduct all further proceedings in this case, including proceedings to determine the fairness of the settlement pursuant to Fed. R. Civ. P. 23(e), and any other proceedings contemplated by the settlement in this case.

The parties explained their motion was based on Magistrate Judge Duncan's "constructive participation in the settlement negotiations" which had "provided him with a unique ability to effectuate the parties' intent in any future proceedings." (Doc. 1186 at 2). The request for a referral to Magistrate Judge Buttrick was based on the parties' settlement contemplating the mediation of certain disputes before more formal "enforcement proceedings" could be initiated. Based on the parties' filings, Judge Humetewa vacated the trial.

On October 22, 2014, Judge Humetewa granted the parties request for "reassignment of this case to Magistrate Judge Duncan pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure." In doing so, Judge Humetewa stated Judge Duncan would "conduct all further proceedings in this case." (Doc. 1194). Judge Humetewa denied the request to refer the case to Magistrate Judge Buttrick because "[i]n light of the reassignment of this matter to Judge Duncan, any requests to refer the matter to a magistrate judge . . . should be directed to Judge Duncan." (Doc. 1194). Once the case was reassigned to Magistrate Judge Duncan, he held the necessary hearings and formally approved the parties' settlement. (Doc. 1458). As recounted in prior orders, Magistrate Judge Duncan then undertook a multi-year effort to have Defendants comply with their settlement obligations. Magistrate Judge Duncan eventually issued multiple rulings, prompting multiple appeals. (Doc. 1817). Proceedings continued before Magistrate Judge Duncan while the appeals were being briefed.

In May 2018, Magistrate Judge Duncan informed the parties he would be retiring in June 2018. That announcement prompted defense counsel to research the "legal

ramifications" of Magistrate Judge Duncan's retirement. (Doc. 2825 at 2). Defense counsel discovered a 2003 case from the Seventh Circuit that prompted them to conclude Magistrate Judge Duncan never had "subject matter jurisdiction to conduct any proceedings in this case." (Doc. 2825 at 2). On May 18, 2018, Defendants filed a motion asking Judge Humetewa "to vacate the referral of this matter to Magistrate Judge [Duncan]." (Doc. 2825). Defendants' motion prompted Magistrate Judge Duncan to issue an Order stating:

> Defendants have filed a motion seeking the return of the case to Judge Humetewa pursuant to 28 U.S.C. § 636(c)(4) based upon the extraordinary circumstances of the undersigneds disability retirement. This text only order does not address that issue which is properly before the District Judge. This Order addresses the Defendants jurisdictional argument and the request to stay matters presently before the undersigned. Hatcher v. Consolidated City of Indianapolis, 323 F.3d 513 (7th Cir. 2003), is neither controlling authority and, in any event, is not persuasive given that it does not address the factual scenario presented here. This action was referred to the undersigned to conduct a settlement conference (Docs. 961, [978]). After that referral, and successful negotiation of the Stipulation, the parties explicitly consented to the undersigned continuing to exercise jurisdiction over this action pursuant to 28 U.S.C. § 636(c) to promote the interests of judicial economy and efficiency (Doc. 1186). Moreover, there is no statutory or Ninth Circuit authority precluding such assignment. Accordingly, the undersigned rejects Defendants jurisdictional argument and affirms all rulings, briefing schedules, and pending matters set for hearing until an order to the contrary issues.

(Doc. 2826).

On June 5, 2018, Judge Humetewa issued a similar order. Judge Humetewa ruled, in relevant part,

> Citing 28 U.S.C. § 636(c)(4) and Federal Rule of Civil Procedure 73(b)(3), Defendants attack Judge Duncan's subject matter jurisdiction over this action and request that the referral of this action be vacated for extraordinary circumstances. Defendants allege that under *Hatcher v. Consolidated City of Indianapolis*, 323 F.3d 513 (7th Cir. 2003), their explicit agreement to Judge Duncan's jurisdiction in October 2014 is invalid. Judge Duncan has addressed this argument, but the undersigned agrees that *Hatcher* is factually and legally distinguishable from this case. Defendants' position is also foreclosed by the Supreme Court's decision in *Roell v. Withrow*, 538 U.S.

580, 587 (2003), because while there does not appear to be any defect in the process by which Judge Duncan became involved in this case, and even if there was one, it was cured by the parties' explicit consent to his jurisdiction in their standalone joint motion at Doc. 1186 ("Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties hereby consent to have Magistrate Judge David Duncan conduct all further proceedings in this case[.]").

\*\*\*

As a consequence, the transfer of this case consistent with the parties' consent extinguished this Court's jurisdiction over this matter. The motion to vacate the Magistrate Judge referral is therefore denied.

(Doc. 2856 at 1-2).

After not obtaining relief from Judge Humetewa, Defendants turned to the Ninth Circuit.

In one of their pending appeals, Defendants filed a "Motion to Dismiss Appeals for Lack of Magistrate Judge Jurisdiction." That motion presented the same arguments and requested the Ninth Circuit "vacate [Magistrate Judge Duncan's] rulings and dismiss the appeals for lack of magistrate-judge jurisdiction." (16-17282, Doc. 110). The Ninth Circuit has not ruled on that motion.

## ANALYSIS

Although there is no pending motion regarding jurisdiction, the Court has an obligation to confirm jurisdiction exists. *See, e.g.*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1135 (9th Cir. 1997) (jurisdiction "must" be raised sua sponte). The Court has read Defendants' prior filings on the jurisdictional issue and those filings are based on a single opinion from the Seventh Circuit, *Hatcher v. Consolidated City of Indianapolis*, 323 F.3d 513 (7th Cir. 2003). A careful analysis of that case shows it has no application to the present situation and that Magistrate Judge Duncan had jurisdiction.

Plaintiff Lee Hatcher obtained a jury verdict of approximately $19,000 against the City of Indianapolis and several individuals. *Id.* at 514. That verdict prompted cross-appeals by the parties as well as a motion for attorneys' fees by Hatcher. The District Judge did not immediately rule on that motion. While the cross-appeals were pending, the parties settled. The parties' settlement agreement provided "for a $100,000 payment to Hatcher

and his attorneys" but went on to state the "legal fees claimed by [various lawyers] . . . would be referred to Magistrate V. Sue Shields for mediation and resolution." *Id.* at 514. The parties "advised" the District Judge of their settlement and the District Judge "seemed to endorse the referral to a named magistrate judge." *Id.* at 515. The Magistrate Judge set a briefing schedule but, without any explanation, the District Judge ruled on the motion for attorneys' fees and awarded Hatcher some, but not all, of his requested costs and fees. *Id.* Neither side was pleased with the District Judge's order and the previously filed cross-appeals became solely about the awards of costs and fees.

Hatcher presented two arguments on appeal. First, Hatcher believed the District Judge had erred by ruling on the motion for fees given the language in the parties' settlement agreement designating the Magistrate Judge would decide that issue. Second, Hatcher argued even if the District Judge had been authorized to resolve the fees issue, the amount awarded was too low. The Seventh Circuit concluded it did not need to "delve too deeply into the merits of the [amount of the] award" because "the district court never should have ruled on the fee petitions in the first place." *Id.* To explain that conclusion, the Seventh Circuit went into great detail about the parties' ill-fated attempt to have a particular judicial officer resolve the fees issue.

The Seventh Circuit began its analysis by holding the parties had validly consented to referring the case to a Magistrate Judge. The written settlement agreement was sufficient evidence of the parties' consent to the Magistrate Judge hearing the case and "the district court acknowledged that the reference was being made when he told the parties that he would give Magistrate Judge Shields a 'heads up' on the matter." *Id.* at 516. Thus, the Seventh Circuit believed there had been a valid referral to the Magistrate Judge. Despite the existence of that valid referral, the Seventh Circuit reasoned there was a "problem" with the parties "consenting only to referral to a specific named magistrate judge whom the parties have handpicked." *Id.*

The "problem" with the parties' attempt to have a specific Magistrate Judge resolve the fees motion was that "parties are not permitted to select their own judges in cases in

federal court." *Id.* at 517. And "the degree of specificity the parties sought in this case is inconsistent with the role of magistrate judges as federal judicial officers." *Id.* at 516. The Seventh Circuit believed "the parties [had] attempted to override the district court's assignment protocol and [] substitute their own chosen magistrate." *Id.* at 518. The governing statutes allegedly indicated "that magistrate judge assignment is a matter for the court to decide, not the parties." *Id.* Thus, only "the court, and not the parties, [] has the power to confer general or specific duties upon an individual magistrate judge." *Id.*

Based on the parties' allegedly improper attempt to select Magistrate Judge Shields, the Seventh Circuit remanded for the district court to determine if the parties' settlement agreement had meant to allow any Magistrate Judge resolve their remaining disputes. In that situation, the reference would be permissible and a Magistrate Judge, presumably selected at random, could resolve the issues. If, however, the parties' intent had been to select only Magistrate Judge Shields, their "consent" was "ineffective" and the district court would have to "reconsider its award of fees and costs." *Id.* at 520.

The Seventh Circuit's analysis is contradictory. The Seventh Circuit claimed the parties had "commandeer[ed]" the judge selection process by designating Magistrate Judge Shields. *Id.* at 518. But the Seventh Circuit's own recitation of the facts proves it was the District Judge, not the parties, who decided the case should be referred to Magistrate Judge Shields. At the start of its analysis, the Seventh Circuit ruled the parties had validly consented to Magistrate Judge jurisdiction and that the District Judge properly made the referral to the Magistrate Judge. *Id.* at 515. Accepting that it was the District Judge, not the parties, who made the referral, the remainder of the Seventh Circuit's analysis falls apart. Assuming the parties attempted to pick Magistrate Judge Shields to hear the fees motion, that attempt would not have come to anything if the District Judge had not consented. In other words, the District Judge could have rejected the parties' attempt to designate Magistrate Judge Shields. But instead of rejecting the parties' allegedly improper request for Magistrate Judge Shields, the District Judge ratified it and, in so doing, made it the Court's determination. Thus, the Seventh Circuit's conclusion that it was the parties,

- 6 -

not the District Judge, who made the important decision is not accurate.

Ignoring the contradictory nature of the Seventh Circuit's analysis, Defendants focus on the portions of that decision remarking it is improper for parties to try and pick the judicial officer to resolve their disputes. Relying on those portions, Defendants argue the referral of this case to Magistrate Judge Duncan was ineffective such that he lacked "subject matter jurisdiction" to take any actions in this case. Defendants' argument is premised on a misreading of the record.

Defendants' filings argue the joint motion requesting Judge Humetewa refer the case to Magistrate Judge Duncan was equivalent to what occurred in *Hatcher*. But similar to the analysis by the Seventh Circuit, Defendants have not explained why it is their joint motion–and not Judge Humetewa's decision–that is important. It is undisputed that Judge Humetewa could have denied the parties' request to refer the case to Magistrate Judge Duncan. In fact, Judge Humetewa denied a portion of the motion regarding which other judge would handle mediations with the parties. Thus, it is inaccurate to describe the referral to Magistrate Judge Duncan as taking place *because of* the parties' selection of him. The more accurate view is that the referral occurred *because of* Judge Humetewa's order.[1] And Defendants have not identified any flaw in Judge Humetewa's order. That is, Defendants have not explained how Judge Humetewa's direct assignment of this matter to Magistrate Judge Duncan conflicts with the statement in *Hatcher* "that magistrate judge assignment is a matter for the court to decide, not the parties." 323 F.3d at 518. In short, Defendants' reliance on *Hatcher* is based on a simple misunderstanding of how the referral to Magistrate Judge Duncan actually occurred.

Finally, even assuming there were some flaw in the way in which the case ended up before Magistrate Judge Duncan, Defendants have not explained how that flaw meant

---

[1] By way of example, parties routinely file joint motions seeking extensions of time regarding discovery deadlines. When presented with such a joint motion, a judge must decide whether to grant or deny the extension. If a judge grants the motion, it would be quite strange to complain the parties have "commandeered" the judicial scheduling process. Yet that seems to be how the Seventh Circuit would view things given its concern that an attempt to designate a particular Magistrate Judge, subject to approval by the District Judge, constituted an inappropriate invasion of the judicial role.

Magistrate Judge Duncan was proceeding without subject matter jurisdiction. The facts in *Hatcher* did not involve any actions by the designated Magistrate Judge. Thus, even if this Court were to accept *Hatcher* entirely, it does not follow that Magistrate Judge Duncan lacked jurisdiction. *Hatcher* simply does not address what should occur when a Magistrate Judge takes actions despite some flaw in the way in which the case came before him. There is no authority suggesting that the necessary or appropriate result would be to vacate Magistrate Judge Duncan's nearly four years of rulings. And available Supreme Court authority indicates Defendants waited far too long to complain.

In *Roell v. Withrow*, two defendants had never explicitly consented to proceeding before a Magistrate Judge. 538 U.S. 580 (2003). Nor had the two defendants ever objected. Instead, they participated in the litigation before the Magistrate Judge, all the way up through a jury trial and verdict. *Id.* at 583. It was only on appeal that the defendants' lack of explicit consent was noticed. *Id.* The Fifth Circuit eventually ruled consent to Magistrate Judge jurisdiction "cannot be implied by the parties' conduct." *Id.* at 585. Thus, the litigation had to start anew. The issue for the Supreme Court was whether the Fifth Circuit was correct.

The Supreme Court's analysis turned, in large part, on the language of the statute governing Magistrate Judge jurisdiction and how parties consent to proceeding before a Magistrate Judge. Under 28 U.S.C. § 636(c)(1), "[u]pon the consent of the parties," a Magistrate Judge "may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case." Under 28 U.S.C. § 636(c)(2), the decision of the parties whether to proceed before a Magistrate Judge "shall be communicated to the clerk of court." The Supreme Court interpreted these provisions as "envision[ing] advance, written consent communicated to the clerk." *Roell*, 538 U.S. at 586. But the Supreme Court believed a party might "signal[] consent to the magistrate judge's authority through actions rather than words." *Id.* at 589. And that type of consent is no less valid than the preferred "advance, written consent." According to the Supreme Court, "a defect in the referral to a full-time magistrate judge under § 636(c)(2) does not eliminate that magistrate

judge's 'civil jurisdiction' under § 636(c)(1) so long as the parties have in fact voluntarily consented." *Id.* at 587. The Supreme Court noted that any other conclusion would create a serious risk of "gamesmanship" where a party could sit back and await "the outcome before denying the magistrate judge's authority." *Id.* at 590. Accordingly, the actions by the two defendants constituted implicit consent and they were bound by the verdict obtained before the Magistrate Judge.

Based on *Roell*, Defendants had years and years to object to Magistrate Judge Duncan's exercise of jurisdiction. They did nothing. Only after compliance proceedings did not evolve as they hoped did Defendants discover and assert their jurisdictional argument. Defendants appear to be engaged in the type of "gamesmanship" the Supreme Court identified and discouraged. Defendants long ago waived any objection to Magistrate Judge Duncan's exercise of jurisdiction. Accordingly, Magistrate Judge Duncan had jurisdiction and this case will proceed based on his rulings remaining in place.

Notwithstanding the foregoing, and to avoid any future disputes, the parties should be prepared to discuss at the December 6, 2018, status hearing their current positions regarding jurisdiction. In particular, Defendants should be prepared to explain how this case would proceed if the Ninth Circuit were to agree with their position regarding Magistrate Judge Duncan's jurisdiction. Defendants should also be prepared to explain whether they have any objection to the manner in which this case was reassigned to the undersigned upon Magistrate Judge Duncan's retirement.

**IT IS SO ORDERED.**

Dated this 6th day of December, 2018.

Honorable Roslyn O. Silver
Senior United States District Judge