THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING TO FEDERAL AND/OR LOCAL RULES AND PRACTICES AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE CIV L R 54
(Rule Number/Section)

FILED ✓   LODGED ___
RECEIVED ___ COPY ___
DEC 17 2018
CLERK U.S DISTRICT COURT
DISTRICT OF ARIZONA
BY ✓ DEPUTY

Michael J. Cohn #288721
ASPC Tucson / Manzanita 3A3L
P.O. Box 24401
Tucson, AZ 85734

UNITED STATES DISTRICT COURT, ARIZONA

| Parsons, et al. | 2:12 CV 601-ROS |
| v. | motion for emergency injunctive relief |
| Ryan, et al. | Hon. Roslyn O. Silver |

I, Michael J. Cohn, class plaintiff, advocate in the above captioned case, respectfully request emergency injunctive relief as follows:

1) Order to ADC to obtain tissue samples/biopsies and follow-up treatment for victims of the unresolved "scabies outbreak" on this unit.

2) Order to ADC to reinstate "Open clinic" as appropriate in all ADC complexes/units.

A so-called "scabies outbreak" occurred some weeks ago. Inmates so afflicted were quarantined for several days. Infection control procedures were implemented including taking bedding, spraying bleach on mattresses and destroying some inmate's private property, such as sheets, blankets purchased via fundraisers. Cream for symptom relief was distributed. However, as set forth in attached letter to counsel for plaintiffs, inmates continue to be symptomatic. In my opinion, with a public health matter of this nature it is incumbent to follow-up as initiated by medical staff. The burden should not be on the inmates to submit follow-up HNR's.

To my knowledge, no tissue sample was taken from any afflicted inmate. Therefore, the diagnosis was nothing more than an

1

informed guess. Appropriate treatment requires an accurate diagnosis. Therefore, a court order is necessary to ensure adequate care.

- Per the November 18, 2015 letter to inmates from class plaintiffs, HNR boxes were to be reinstalled <u>in addition to</u> "open clinic." Corizon, unsurprisingly, interpreted Judge Duncan's order to mean HNR boxes <u>replace</u> "open clinic." I have reviewed Judge Duncan's order and there is <u>nothing</u> <u>stating</u> "open clinic" <u>should be canceled or replaced</u>. To date, "open clinic" has not been reinstated. (see attached inmate letter, etc.).

- An emergency is indicated as "open clinic" eliminates a barrier to treatment that Judge Duncan recognized and remedied. In light of public health contagions in 2 ADC complexes reportedly, Corizon cannot be relied on to act in good faith to reinstate open clinics or follow-up with afflicted inmates or implement preventive measures. A compelling order is necessary for ADC in general and for the two afflicted complexes in particular.

For the reasons stated herein, the Court should grant this motion in all its respects.

Respectfully Submitted                    Date: 12/9/18

Michael J. Cohn, EdP.

Dr. Michael J. Cohn, Advocate            Copies to:    on: 12/11/18
                                         - Attorney General
Original mailed to:   on: 12/11/18         1275 W. Washington
                                           Phoenix, AZ 85007
Clerk of the U.S. Dist. Ct.
                                         - Prison Law Ofc.
401 W. Washington, SPC-1                   General Delivery
                                           San Quentin, CA 94964
Phoenix, AZ 85003

2

Michael J. Cohn #288721
ASPC Tucson/Manzanita 3A32
P.O. Box 24401
Tucson, AZ 85734-4401

12/4/18

Prison Law Ofc.
General Delivery
San Quentin, CA 94964
ATTN: Sara Norman/Corene Kendrick, Esqs.
   Re: Supposed Scabies outbreak

Counselors:
   I have reviewed the packet you sent to the inmates supposedly infected with "Scabies," dated 11/18/18. I met with 3 of them in the library yesterday and saw their scars and lesions still present on their legs, arms, torso, etc. I assisted them with completing the forms you requested.
— I allege/assert that the medical staff was "deliberately indifferent" in this matter for one extremely important reason.! To my knowledge, no tissue sample/biopsy was taken to determine the exact nature of the condition. In fact, I asked LPN C. if a tissue sample was taken, He said "NO" and words to the effect that I would be fine if I stayed away from the guys who had it.
— This is so far below the standard of care it is beyond outrageous. For an apparently contagious condition to not be accurately diagnosed, as soon as possible, is just

1

another example of the hostile attitude Corizon has towards us. They guess at diagnoses. I'm sure you have many examples where they avoid x-rays, scans, etc. However, in the matter of a contamination, they not only put inmates at risk, but staff as well, perhaps even the community at large.

- I strongly suggest that you ask Judge Silver to order several tissue samples be taken from those inmates who are still symptomatic with appropriate treatment to follow.
- Per 5 USC §702 inter alia, I am aggrieved. Per Estelle v. Gamble, inter alia, et. al., etc., treatment less efficacious than appropriate constitutes "deliberate indifference."

Please take class action in this matter.

Yours in Prisoner Rights,  Date: 12/4/18
Mahal J. Coby, Ed.D., Advocate
Dr. Michael J. Cobn

Read to Ms. Turner, R.N. on 12/8/18. - Turner states she will email supervisors on 12/9/18. She thanked me for bringing this to her attention. She asked if the inmates are submitting HNR's. I said, none to my knowledge as they feel it is futile. She grimaced. MJC. note: This is another reason to have open clinic reinstated. It is a barrier to care access for many inmates to have to wait 24 hours to be seen by an R.N. and then wait 18 days to be seen by a provider. They'd rather not bother. MJC.

2

**ARIZONA DEPARTMENT OF CORRECTIONS**
Inmate Letter

Requests are limited to one page and one issue. NO ATTACHMENTS PERMITTED. Please print all information.

| Inmate Name (Last, First M.I.) | ADC Number | Institution/Unit | Date |
|---|---|---|---|
| Cohn, Michael J. | 288721 | TUCSON / MANZANITA 3A32 | 12/3/18 |

| To: | Location |
|---|---|
| J. Kidd, ADON | HU 3 |

State briefly but completely the problem on which you desire assistance. Provide as many details as possible.

Issue: Open Clinic: See attached letter from Prison Law Office at bottom of p.1, dated Nov. 18, 2018.

Per the attached letter "open clinic" should be reinstated in addition to the HNR boxes.

I asked C.O. Geiran to copy this for you, but medical staff refused. Therefore, I am sending this to you on my own expense. It is unfortunate that medical staff are so hostile to inmates.

Please reinstate "OPEN CLINIC" immediately.

cc: Judge Silver
    Attny. General
    Prison Law Office
    CoIV Evans

Inmate Signature: M.J. C.    Date: 12/3/18

Have You Discussed This With Institution Staff?  ☒ Yes  ☐ No   I have discussed this w/ staff in the past, but I don't remember who.
If yes, give the staff member's name: ~~C.O.~~ ~~Geiran~~ C.O.

Distribution: White - Master Record File    Canary - Inmate

916-1
5/13/10



PRISON LAW OFFICE
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 ° Fax (510) 280-2704
www.prisonlaw.com

*Director*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Rana Anabtawi
Steven Fama
Alison Hardy
Sophie Hart
Corene Kendrick
Rita Lomio
Margot Mendelson
Thomas Nosewicz
Shira Tevah
Camille Woods

LEGAL MAIL – CONFIDENTIAL
November 2018

Dear Sir or Madam:

Thank you for writing us for an update about *Parsons v. Ryan*, the federal lawsuit against the Arizona Department of Corrections' (ADC) medical, mental health, and dental care system. The suit also challenges inhumane conditions in isolation units. This case is a "class action" and covers all prisoners in the ten ADC prisons. The lawsuit sought only changes to the policies and practices of ADC, and did not seek money damages.

The case was filed in March 2012 by the Prison Law Office, the ACLU and other lawyers. On February 18, 2015, Judge David Duncan approved the case's settlement. The settlement agreement requires ADC to fix its health care system and meet more than 100 health care outcome measures, including medical care; mental health care; and dental care. ADC also must overhaul the rules for isolation units.

On June 22, 2018, Judge Duncan issued a series of orders, including one finding Defendants Charles Ryan and Richard Pratt in civil contempt of court for ADC's failure to comply with the Stipulation. (Doc. 2898). Judge Duncan also issued an order appointing an independent expert to analyze the accuracy of ADC's monitoring of Corizon, Doc. 2900; an order directing ADC/Corizon to reinstall HNR boxes within 30 days on all prison yards where they had been removed, Doc. 2901;[1] an order directing ADC/Corizon to submit a plan to the court within 30 days on how to recruit and retain health care staff, Doc. 2904; and an order that Defendants retain experts on a variety of topics relating to the delivery of health care, Doc. 2905. Copies of these orders are attached to this letter.

We hope these orders will spur ADC to improve the health care provided to people incarcerated in its prisons, and to comply with the Stipulation. State officials have appealed all of Judge Duncan's rulings to the Ninth Circuit Court of Appeals, but the briefing has been stayed (put on hold) pending rulings from the Ninth Circuit in appeals taken in 2016 for other orders.

---

[1] We are aware that ADC has told prisoners that Judge Duncan ordered ADC and Corizon to end the so-called "open clinic" program. This is false. As you can see in reading the HNR box order, he simply ordered them to re-install HNR boxes to provide class members an *additional* manner of requesting health care, in *addition* to having the open clinic system.

Board of Directors
Penelope Cooper, President ° Michele WalkinHawk, Vice President ° Marshall Krause, Treasurer
Harlan Grossman ° Christiane Hipps ° Margaret Johns ° Cesar Lagleva
Laura Magnani ° Michael Marcum ° Ruth Morgan ° Seth Morris

Judge Duncan retired at the end of June 2018 for medical reasons. The chief judge of the federal district court reassigned the case to Judge Roslyn Silver. On November 15, 2018, Judge Silver issued an order denying ADC's request that she set aside or put on hold Judge Duncan's June 22 orders. (Doc. 3057). A copy of her order is attached to this letter as well.

To monitor ADC more effectively, we have divided monitoring duties with our co-counsel. Our office monitors problems with medical and dental care. The ACLU National Prison Project monitors problems with mental health care and the maximum custody units. If your letter raised mental health care or maximum custody unit problems, we sent them a copy of your letter. In the future you can write them directly via confidential Legal Mail at:

ACLU National Prison Project
Attn: David Fathi, Attorney at Law
915 15th Street, NW, 7th Floor
Washington DC 20005.

When the judge certified the case as a class action, he appointed us to represent all prisoners only with regard to the case. We may be able to notify ADC's attorneys if we learn of prisoners with serious and urgent untreated health care needs that could lead to death or permanent injury. Other than notifying ADC, we cannot assist with your individual health care concern. Thank you for your interest in the case, and we wish you the best.

Sincerely yours,

Prison Law Office

Encls: Docs. June Orders [5]; Nov. Order (without Stern CV)

2  This ruling does not pass judgment on the open clinic process itself which, as the witnesses noted, has positive attributes. This ruling also does not address how ADOC collects and logs HNRs during the open clinic process.

*2 This shift flatly contradicts Defendants' avowal to the Court on January 18, 2017, wherein they maintained that multiple HNR submission methods "ensure that inmates are able to submit HNRs in multiple ways to request and receive routine medical care" (Doc. 1873 at 3). And indeed, certain health care monitor staff testified that only accepting HNRs upon seeing a nurse at the open clinic erects a barrier for inmates to access care (Doc. 2244, August 8, 2017 Hr'g Ex. 27 at 2) ("I said this was in direct contradiction to what I was told today, which is that [HNR Boxes] are never going away because it is an access to care issue."). Finally, Mr. Pratt acknowledged that he did not believe it was necessary to completely remove the HNR boxes (Doc. 2244, August 8, 2017 Hr'g Tr. at 54:19-24).

Based on the evidence presented during the four-day hearing and the parties' briefing, it is clear that the open clinic process means that the only HNRs logged for measuring compliance with the Stipulation are the HNRs submitted by inmates who were able to see a nurse in person. In other words, there is no trace of an inmate's HNR until s/he is seen by a nurse, at which point the HNR is submitted. The Court concludes that the modified open clinic HNR process may impermissibly constrict the numbers of HNRs submitted for measurement and so it cannot replace the HNR Boxes for purposes of measuring compliance with the Stipulation. Because the parties identified the HNR boxes as the triggering event with some of the performance measures, this practice cannot be abandoned without proof that it would have no effect on the measurement of Defendants' compliance with the Stipulation. Not only have Defendants failed to meet this burden of proof but the Court is satisfied that it is likely that some class members would not be able to brave the gauntlet of making it to a nurse at the open clinic.

Defendants raise several arguments in defense of the open clinic process. None of them are well taken. First, Defendants maintain that the Court is powerless to address their decision because the Stipulation does not mandate a particular method for inmates to submit HNRs (Doc. 2416 at 3-4). But, as Plaintiffs point out, when the parties negotiated the Stipulation, there was no indication that the HNR Box system—where inmates could submit HNRs in a collection box at any time of the day or to have another inmate submit it on their behalf if they were unable—would change (Doc. 2458 at 3).³

3  The parties negotiated the Stipulation understanding that other procedural changes, such as the adoption of electronic medical records, were imminent.

Moreover, Defendants' contention that the Court cannot evaluate their fundamental change in health care delivery to determine whether it complies with the letter and spirit of the Stipulation is meritless. As with innumerable disputes regarding monitoring compliance with the Performance Measures, the Court is well within its discretion to address Defendants' removal of the HNR boxes in order to ensure that compliance is assessed meaningfully.

Similarly unavailing is Defendants' contention that this issue is not yet ripe for resolution—it has been over one year since this decision was reported to the Court and the parties have litigated the issue to conclusion.

Based upon the testimony and evidence before it, the Court finds that the removal of the HNR boxes is inconsistent with the Stipulation's requirements.

IT IS THEREFORE ORDERED that within 30 days of this Order, Defendants shall:

(1) Defendants shall reinstall HNR boxes in all housing units where they were removed. The Court will not require the HNR boxes to be replaced in the same locations but will require the same number in each unit as before and expects that any change in location will not create a barrier for any particular group of inmates (i.e., if an HNR box was previously accessible to wheelchair-bound inmates then a comparably accessible box must be placed in the same unit);

*3 (2) Defendants shall resume the previous process for collecting and logging the submitted HNRs. Defendants may also continue the open clinic procedures for accepting HNRs;

(3) Defendants shall notify the affected inmates in writing announcing the reversion to the prior HNR submission process; and

over

(4) Defendants shall provide competent and admissible evidence to the Court that this return to the *status quo ante* has occurred.

**All Citations**

Slip Copy, 2018 WL 3083847

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.