Office of the Arizona Attorney General
Michael E. Gottfried, Bar No. 010623
Assistant Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004-1592
Telephone: (602) 542-1645
Fax: (602) 542-3393
Michael.Gottfried@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1696
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-ROS<br><br><br>**DEFENDANTS' MOTION TO TERMINATE MONITORING AND REPORTING OF MAXIMUM CUSTODY PERFORMANCE MEASURES 1 THROUGH 8** |

Pursuant to Paragraph 20(b) of the parties' Stipulation (Doc. 1185), Defendants Charles Ryan and Richard Pratt move to terminate the Arizona Department of Corrections' (ADC's) duty to measure and report on Maximum Custody Performance Measures ("MCPMs") 1-8.[1] Defendants do not move to terminate monitoring and

---

[1] There are nine MCPMs set forth in Exhibit C to the Stipulation. The corresponding Maximum Custody Outcome Measure Protocols are set forth in Exhibit E to the Stipulation. (Doc. 1185). Defendants submit this Motion only as to MCPMs 1-8.

reporting on MCPM 9, as this MCPM is subject to a Separate Agreement Regarding Modification of Stipulation ¶27(a)-(e) entered into in August 2017, and MCPM 9 is not yet ripe for termination.

## I.     TERMINATION OF MONITORING UNDER THE STIPULATION

The parties entered into the Stipulation to provide for a prescribed monitoring period during which Defendants would be required to comply with specified compliance thresholds, in part, for defined maximum custody conditions of confinement performance measures. (Doc. 1185 at ¶¶3-4, 17-28). Stipulation Paragraphs 19 and 20 provide the measurement and reporting process as well as the compliance thresholds required for the MCPMs. (Doc. 1185 at 5-7). For the first twelve months after the effective date of the Stipulation, Defendants were required to meet or exceed 75% for a particular PM that applies at a specific complex. (Doc. 1185 at 6-7). For the second twelve months, Defendants were required to meet or exceed 80%, and after the first twenty-four months (currently), Defendants must meet or exceed 85%. (*Id.*)

Paragraph 20(b) provides that after twenty-four months of monitoring, Defendants' duty to monitor MCPMs that are in substantial compliance as defined by the Stipulation terminates. (*Id.* at 6-7.) Specifically, Paragraph 20(b) provides that for the MCPMs, "ADC's duty to measure and report on a particular performance measure, as described in Paragraph 19, terminates if: (i) The particular performance measure that applies to a specific unit is in compliance, as defined in sub-paragraph A of this Paragraph, for eighteen months out of a twenty-four month period; and (ii) The particular performance measure has not been out of compliance, as defined by sub-paragraph A of this Paragraph, for three or more consecutive months within the past 18-month period." (*Id.*) Paragraph 20(c) further states that ADC's "duty to measure and report on any performance measure for a given unit shall continue for the life of the Stipulation unless terminated pursuant to sub-paragraph B of this paragraph." (*Id.* at 7.) The Stipulation was deemed accepted by the Court as of February 18, 2015 (Doc. 1458 at 3), and Defendants began monitoring/reporting the MCPMs beginning with the March 2015 CGAR reports.

Here, in accordance with paragraph 20(b), Defendants' duty to monitor and report on MCPMs 1-6 & 8 terminated as of the end of October 2018. (Exh. 1 hereto, Dec. of Carson McWilliams and Attachments 1, 2 thereto). Likewise, Defendants' duty to monitor MCPM 7 terminated as of November 2016 per agreement of the parties. (Exh. 2 hereto, Letter to Counsel from Amy Fettig dated 11/14/16 at 1 regarding MCPM 7). Defendants accordingly ask this Court to issue an Order finding that their duty to measure and report on MCPMs 1-8 for maximum custody inmates incarcerated at all locations contemplated by the Stipulation (and including ASPC-Lewis/Rast Unit per agreement of the parties) has terminated.

## II. DEFENDANTS' MULTI-LEVEL CROSS REVIEW OF REPORTING AND COMPLIANCE

As a result of the Stipulation and the Court's approval of the same, and on its own initiative, ADC developed a multi-level review process for monitoring, reporting, and compliance with the MCPMs. (Exh. 1, McWilliams Dec., at ¶¶ 1-34, 52-53 generally, and ¶¶ 35-49 specifically). The MCPMs generally track ADC's Director's Instruction 326 ("DI 326") as to out-of-cell activities, programming, and privileges afforded to maximum custody inmates. DI 326 provides a process that requires maximum custody inmates to work through a program utilizing a step system. The step system is a pro-social behavioral modification system that provides maximum custody inmates the opportunity to participate in out-of-cell activities, programming, and jobs where privileges are increased as the inmates progress through the step system. (*Id.* at ¶¶ 38-39).

Each applicable prison complex has DI 326 designated staff responsible to ensure operational compliance with DI 326 and the MCPMs. DI 326 staff are also responsible for monitoring the accuracy of the source documents utilized to monitor and report on the MCPMs, and to ensure operational compliance regarding the same. (*Id.* at ¶¶ 40-41). The Stipulation Protocols for the MCPMs require that at each designated location, Maximum Custody Daily Out of Cell Time Tracking Forms ("OOCT Forms") are reviewed for one randomly selected week for each monitored month, for 10 randomly selected inmates.

(*Id.* at ¶ 42). Once the monitored week is randomly selected for a monitored month, DI 326 staff gather the OOCT Forms for 10 randomly selected inmates and prepare extensive Maximum Custody Notebooks books containing source documents used to monitor and determine compliance for MCPMs 1-6, & 8. These Maximum Custody Notebooks usually contain between 200-400 pages of source documents per notebook, per location. (*Id.* at ¶ 43).

Each prison complex Maximum Custody Notebook goes through four levels of review to ensure accuracy of monitoring and compliance for CGAR reporting. (*Id.* at ¶ 44). Three of the four levels of review receive cross-complex review. (*Id.* at ¶ 45). At the first three levels of review, the Maximum Custody Notebooks are traded among differing complex DI 326 staff and leadership personnel so that personnel from another prison complex audits the accuracy of monitoring and reporting for the MCPMs. (*Id.* at ¶ 46). The first level review is conducted by prison complex DI 326 staff, including DI 326 sergeants and lieutenants. (*Id.* at ¶ 47).

The second level review is conducted by Deputy Wardens and Associate Deputy Wardens for the prison complexes housing maximum custody inmates. During this second level review, the accuracy of calculating time out of cell and MCPM compliance that was conducted at the first level review is double checked. Any inconsistencies, errors, and/or missing source documentation are noted for additional review and follow-up. A highly performing staff member from each complex also participates in the second level review to provide understanding and training to all levels of security and programming staff as to MCPM compliance, monitoring, and reporting. (*Id.* at ¶ 48).

The third level review is conducted by Wardens and Deputy Wardens of Operations for the prison complexes housing maximum custody inmates. During this third level review, the accuracy of calculating time out of cell and MCPM compliance that was conducted at the first and second level review is triple checked. Any inconsistencies, errors, and/or missing source documentation are noted for additional review and follow-up. A highly performing staff member from each complex also participates in the third

4

level review to provide understanding and training to all levels of security and programming staff as to MCPM compliance, monitoring, and reporting. (*Id.* at ¶ 49). The third level review is also presided over by the Northern Regional Operations Director, Ernest Trujillo. In his absence, either the Southern Regional Operations Director or the Division Director, Offender Operations, will preside over the review. Direction and training regarding MCPM compliance, monitoring, and reporting is provided by the Division Director, the presiding Regional Operations Director, and/or and Defendants' counsel. (*Id.* at ¶ 50).

The fourth and final level review is conducted by the Warden of the applicable prison complex – his or her Maximum Custody Notebook having previously been through three levels of cross-prison-complex review.  The Warden conducts a final audit of his or her Maximum Custody Notebook and then reports CGAR findings for the MCPMs for his or her complex. (*Id.* at ¶ 50).

In addition to the four level review process implemented for monitoring and reporting on the MCPMs, in October of 2016, ADC created the position of Associate Deputy Warden of Compliance, Northern Regional ("ADW of Compliance"). (*Id.* at ¶ 54). The ADW of Compliance directly reports to Ernest Trujillo, Northern Regional Operations Director. (*Id.* at ¶ 55).

The duties of the ADW of Compliance include providing monitoring and reporting support to the complexes to which MCPMs 1-6, & 8 apply; leading the first, second, and third level Maximum Custody Book review meetings; assisting in compiling Maximum Custody Notebook source documents; randomly auditing Maximum Custody Notebooks for accuracy and compliance; assisting Defendants' counsel in production review of the Maximum Custody Notebooks; providing direction/training to correctional/programming personnel regarding OOCT Form documentation; conducting unannounced tours of maximum custody units to conduct live-time random audits of out-of-cell activities, comparing them to recorded documentation noted on the OOCT Forms; and identifying

whether any cancellations of out-of-cell activities or programming must be made up in the applicable week in order to achieve MCPM compliance. (*Id.* at ¶ 56).

In sum, the monitoring and reporting for the MCPMs are subject to multiple levels of cross-complex review and operational oversite to ensure Stipulation compliance as well as accurate monitoring and reporting. (*Id.* at ¶ 57). Simply put, ADC's monitoring system for measuring, reporting, and ensuring Stipulation compliance for the MCPMs is robust and sound.

While Plaintiffs filed a Motion to Enforce the Stipulation (Maximum Custody Performance Measures 1-3, 5-6, and 8) in February 2017 (Doc. 1944), the Court dismissed Plaintiffs' Motion without Prejudice. (Doc. 2353). Thereafter, the Court permitted Plaintiffs to file a new Proposed Order regarding the Motion to Enforce to tailor the proposed relief requested and Defendants responded with their objections. (Docs. 2362 and 2430). The Court never took further action. Plaintiffs' Motion is now moot and does not affect Defendants' ability to terminate at this juncture as Plaintiffs' Motion to Enforce did not address CGAR data for the time periods at issue here other than March, April, May, June, July 2015, and July 2016 data for ASPC-Perryville as to MCPM 8. The challenge to this specified 2015/2016 MCPM 8 data for ASPC-Perryville has been acknowledged by Defendants, but the challenge is nevertheless moot where ASPC-Perryville does not incarcerate any maximum custody inmates to which a continued duty to monitor and report is required by the Stipulation. (Doc. 1995 at 22).

Finally, the Stipulation's termination provision at Paragraph 20(b) is self-executing upon presentation of compliant CGAR scores for the applicable MCPMs. (Doc. 1185 at 7). There has been no determination by the Court at any time that Defendants have failed to substantially comply with the terms of the Stipulation as to MCPMs 1-8. (Compare Stipulation ¶20(b) with ¶¶30 & 31, Doc. 1185 at 7 and 12).

///
///
///

### III. DEFENDANTS' COMPLIANCE WITH MCPMS 1-8

Defendants' compliance with the MCPMs is set forth in the Declaration of Carson McWilliams, attached as Exhibit 1 hereto, and the accompanying charts of historical CGAR performance through October 2018 attached to Mr. McWilliams' Declaration. As reflected in Attachments A and B to Exhibit 1, Defendants have satisfied paragraph 20(b) of the Stipulation by: (1) complying with the required percentage thresholds from paragraph 20(a) for at least 18 out of 24 months of monitoring, with fewer than three consecutive months of noncompliance within the prior 18 months; and/or (2) a particular location no longer houses maximum custody inmates and thus MCPMs 1-8 are no longer applicable such that monitoring and reporting must terminate. Defendants accordingly request this Court issue an Order finding that their duty to measure and report on MCPMs 1-8 terminated as of the **end of October 2018**.[2]

### A. Compliance Is Achieved for November 2016-October 2018.

- **MCPM 1**: ASPC-Florence-Central Unit (Kasson Cellblock); ASPC-Eyman (SMU-1 and Browning Units); ASPC-Lewis-Rast Unit. (Exh. 1, McWilliams Dec., at ¶¶ 58-64, 66-71 and Attachment 1 thereto);

- **MCPM 2:** ASPC-Florence-Central Unit (Kasson Cellblock); ASPC-Eyman (SMU-1 and Browning Units); ASPC-Lewis-Rast Unit. (*See id.*);

- **MCPM 3:** ASPC-Florence-Central Unit (Kasson Cellblock); ASPC-Eyman (SMU-1 and Browning Units); ASPC-Lewis-Rast Unit. (*See id.*);

- **MCPM 4:** ASPC-Florence-Central Unit (Kasson Cellblock); ASPC-Eyman (SMU-1 and Browning Units); ASPC-Lewis-Rast Unit; and ASPC-Phoenix. (Exh. 1, McWilliams Dec., at ¶¶ 58, 68-71, 73 and Attachment 1 thereto);

---

[2] By moving for termination of MCPMs herein focusing on the time period of November 2016 through October 2018, Defendants do not concede, agree, or otherwise acknowledge that Stipulation compliance was not achieved from March 2015 through October 2016 or any other 24-month time period that could be assessed from March 2015 to the present.

7

- **MCPM 5:** ASPC-Florence-Central Unit (Kasson Cellblock); ASPC-Eyman (SMU-1 and Browning Units); ASPC-Lewis-Rast Unit. (Exh. 1, McWilliams Dec., at ¶¶ 58, 68-71 and Attachment 1 thereto);

- **MCPM 6:** ASPC-Florence-Central Unit (Kasson Cellblock); ASPC-Eyman (SMU-1 and Browning Units); ASPC-Lewis-Rast Unit. (*See id.*); and

- **MCPM 8:** ASPC-Florence-Central Unit (Kasson Cellblock); ASPC-Eyman (SMU-1 and Browning Units); ASPC-Lewis-Rast Unit. (*See id.*)

**B.  Monitoring and Reporting Is No Longer Required for ASPC-Florence/Central Unit (Main Yard) and ASPC-Perryville Where These Locations No Longer Houses Maximum Custody Inmates**

- **MCPMs 1-6, & 8:** ASPC-Florence-Central Unit (Main Yard) (Exh. 1, McWilliams Dec., at ¶¶ 32, 58-64, 66-71 and Attachments 1-2 thereto).

ASPC-Florence-Central Unit (Main Yard) has not housed maximum custody inmates since January 17, 2018 and therefore is no longer subject to monitoring and reporting.[3] The last month monitored and reported for ASPC-Florence/Central Unit (Main Yard) was December 2017. For the 24-month time period prior to Central Yard ceasing to house maximum custody inmates (December 2015-December 2017), this location still achieved compliance for MCPMs 1-6 & 8 for at least 18 out of the prior 24 months, and was not out of compliance for three or more consecutive months during the prior 18 months. (Exh. 1, McWilliams Dec., at ¶¶ 32, 69 and Attachments 1-2 thereto).

- **MCPMs 1-6, & 8:** ASPC-Perryville (Exh. 1, McWilliams Dec., at ¶¶ 32, 58, 68-71 and Attachments 1-2 thereto).

ADC's duty to monitor/report at ASPC-Perryville Special Management Area (Yard 30) terminated as of December 2016 where as of December 2016, this complex no longer houses maximum custody inmates. The last month monitored and reported for this

---

[3] ASPC-Florence/Central Unit (Main Yard) last monitored maximum custody in the December 2017 Max Custody Notebook. The last date that the Central Unit housed a maximum custody inmate was January 17, 2018. The randomly selected monitoring week for January 2018 was January 27 through February 2, 2018. Thus, there were no maximum custody inmates housed at the Central Unit during the January 2018 monitored month.

8

location was November 2016. For the 20-month time period prior to ASPC-Perryville ceasing to house maximum custody inmates in December 2016, this complex achieved compliance for MCPMs 1-6, 20 out of 20 months. For this same 20 month time period, this complex achieved compliance for MCPM 8, 14 out of 20 months. (Exh. 1, McWilliams Dec., at ¶¶ 32, 72 and Attachments 1-2 thereto; *see also* Doc. 1995 at 22 acknowledging this location did not reach applicable 75% compliance levels for MCPM 8 for March-July 2015, and January 2016). ASPC-Perryville's maximum custody population was not moved elsewhere in the system. There are no female inmates in ADC's system that require a maximum custody classification. (Exh. 1, McWilliams Dec., at fn. 8).

### C. Monitoring and Reporting Is No Longer Required for MCPM 7 Per Agreement of the Parties.

- **MCPM 7:** ASPC-Florence/Central Unit (Main Yard). (Exh. 1, McWilliams Dec. at ¶¶ 65 and Attachment 1, 2 thereto; Exh. 2 hereto).

Per agreement of the parties, ADC's duty to monitor/report at ASPC-Florence/Central Unit (Main Yard) for MCPM 7, as related to housing of maximum custody inmates with a mental health classification of MH3 or higher unless the cell fronts are substantially modified to increase visibility, ceased in November 2016. Per the agreement of the parties, Defendants have completed their duty to measure and report on this MCPM applicable only as to ASPC-Florence/Central Unit (Main Yard). (*See id*.)

### D. Monitoring and Reporting Is No Longer Required for MCPM 4 at ASPC-Phoenix

ADC's duty to monitor/report at ASPC-Phoenix for MCPM 4 related to caloric and nutritional content for maximum custody inmates terminated where this complex was compliant for MCPM 4 for at least 18 out of the prior 24 months, and was not out of compliance for three or more consecutive months during the prior 18 months. (Exh. 1, McWilliams Dec. at ¶¶ 31, 61, 73 and Attachment 1, 2 thereto).

## IV. CONCLUSION

Pursuant to Paragraph 20(b) of the Stipulation, Defendants' duty to measure and report on MCPMs 1-8 has terminated in its entirety, and Defendants respectfully request that this Court issue an Order finding that Defendants are no longer required to measure or report compliance with respect to MCPMs 1-8.

DATED this 11th day of January, 2019.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC

By /s/Rachel Love
Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
3100 West Ray Road, Suite 300
Chandler, Arizona  85226

Office of the Arizona Attorney General
Michael E. Gottfried
Assistant Attorneys General
2005 N. Central Avenue
Phoenix, Arizona 85004-1592

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Dietrich: | adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Caroline N. Mitchell: | cnmitchell@jonesday.com; mlandsborough@jonesday.com; nbreen@jonesday.com |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| Jessica Pari Jansepar Ross: | jross@azdisabilitylaw.org |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| John Laurens Wilkes: | jlwilkes@jonesday.com, dkkerr@jonesday.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Kirstin T. Eidenbach: | kirstin@eidenbachlaw.com |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Victoria Lopez: | vlopez@aclu.org |

///

///

///

1  I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Rachel Love