**EXHIBIT 2**

**EXHIBIT 2**



**LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT**

**AMERICAN CIVIL
LIBERTIES UNION FOUNDATION**

PLEASE RESPOND TO:
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

<u>Via Email Only</u>

November 14, 2016

Ms. Lucy Rand                                Rachel Love
Office of Arizona Attorney General           Struck, Wieneke & Love, PLC
1275 W. Washington                           3100 West Ray Road
Phoenix AZ 85007                             Chandler, AZ 85226
Lucy.Rand@azag.gov                           rlove@swlfirm.com

**RE: Maximum Custody Performance Measures, Monitoring Methodology, *Parsons v. Ryan*, Civ-12-00601-DKD**

Dear Counsel:

This letter serves as a follow-up to the conference call between Plaintiffs' counsel and Defendants held on Wednesday, November 10, 2016, during which the Maximum Custody Performance Measures (MC PM) were discussed. I am also attaching a redline of the draft sent to us on November 10 and summarize what we believe to be the current understanding of the status of the monitoring guide for each of the nine maximum custody performance measures (MC PM) below.

**MC PM ##3-4, 7**

The parties have reached agreement on the methodology for MC PM ##3-4. The parties have also agreed that MC PM #7 no longer requires monitoring.

**MC PM #1**

This performance measure requires the following:

> All maximum custody prisoners at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max who are eligible for participation in DI 326 are offered a minimum of 7.5 hours out-of-cell time per week. Those at Step II are offered a minimum of 8.5 hours out-of-cell time per week, and those at Step III are offered a minimum of 9.5 hours out-of-cell time per week.

The parties have reached a great deal of agreement on this measure but two major issues in the methodology section remain. In paragraph a, Plaintiffs

object to the requirement that notice of the selected week to be monitored for the prior month be given on the first day of the following month because it precludes monitoring of the last week of each month for much of the year. This methodology therefore undermines the Stipulation's requirement that the week to be monitored by randomly chosen. [Doc. 1185-1, Exhibit E]. It also possibly creates the unintended consequence that staff know their compliance in the final week of a month will almost never be monitored so they have less incentive to comply with the requirements of the Stipulation during that time.

In paragraph b, Plaintiffs object to the removal of the requirement to document refusals of exercise/programming without a prisoner's signature or the signature of two officers if the prisoner refuses to sign. Plaintiffs further object to the removal of the requirement that officers record the time refused contemporaneously.

This objection carries through many of the MC PM and is noted in the redline. The parties have discussed the matter and we understand that Defendants are concerned about operational constraints. The Plaintiffs are concerned about the pervasive pattern of refusals across both exercise, programming and other out-of-cell time required by the Stipulation which we raised in our July 7, 2016 notice of non-compliance. In our Notice we alerted Defendants to the alarmingly high refusal rates which translate into days, weeks and months in their cell for many prisoners and raise serious questions about both the legitimacy of the refusals and the underlying cause of such pervasive refusals.

Plaintiffs are also concerned about the lack of proper documentation and procedure for these pervasive refusals. As we outlined in our Notice, the underlying documents supporting the CGAR findings for the maximum custody measures demonstrate that in each facility, there is differing practice amongst staff on the proper procedure to document prisoner refusals of exercise and other out-of-cell time. Some follow the proper refusal procedure from DO 809, Earned Incentive Program, of a signed refusal by the prisoner or the signature of two officer if the prisoner refuses to sign. Many more do not – or do so episodically.

During our call on November 10 Defendants stated that the goal was to comply with the above outlined refusal procedure, but that staffing issues some times precluded such procedures. We recognize that staffing issues remain an issue in ADC, but are concerned about the need for safeguards to ensure the accuracy of the monitoring documents. We've tried to think of alternative solutions (at least as to the signature issue) and one tentative idea is to maintain the requirement that prisoners sign all refusals and that if the prisoner refuses to sign, two officers sign, but if two officers are not available, then one officer may sign, with the additional requirement that if only one officer signs s/he

must write the reason for the refusal and describe attempts to encourage the prisoner to participate in exercise, programming, etc. in the comments section on the back of the tracking sheet. We are happy to discuss this alternative with you.

**MC PM #2**

This performance measure requires the following:

> All maximum custody inmates at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max who are eligible for participation in DI 326 are offered at least one hour of out-of-cell group programming a week at Step II and Step III.

The parties have also reached some agreement around this measure. The remaining issue is in paragraph b of the Methodology Section, where Plaintiffs object to the removal of the requirement to document refusals of exercise/programming without a prisoner's signature or the signature of two officers if the prisoner refuses to sign. Plaintiffs further object to the removal of the requirement that officers record the time refused contemporaneously. However, our alternative offer outlined in MC PM #1 is the same regarding this issue.

**MC PM #5**

This performance measure requires the following:

> All maximum custody prisoners at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max are offered a minimum of 6 hours of out-of-cell exercise time a week.

The parties have also reached some agreement around this measure. The remaining issue is in paragraph c of the Methodology Section, where Plaintiffs object to the removal of the requirement to document refusals of exercise/programming without a prisoner's signature or the signature of two officers if the prisoner refuses to sign. Plaintiffs further object to the removal of the requirement that officers record the time refused contemporaneously. However, our alternative offer outlined in MC PM #1 is the same regarding this issue.

### MC PM #6

This performance measure requires the following:

> All maximum custody prisoners at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max who are eligible for participation in DI 326 are offered out-of-cell time, incentives, programs and property consistent with their Step Level and housing assignment under the DI 326 policy.

Here again, the parties have reached substantial agreement on much of the methodology, but some issues remain. In paragraph b of the Methodology Section, Plaintiffs object to removing a requirement that the monitor evaluate whether or not the record of each prisoner reviewed documents that appropriate out-of-cell time under DI 326 is offered because MC PM #6 specifically requires an evaluation of "out-of-cell time" in addition to other incentives.

In paragraph g, Plaintiffs object to the removal of the requirement to offer particular types of exercise according to step level as part of the compliance finding for this measure. Different venues for exercise, the basket ball enclosure and par course at Eyman-SMU I for example are incentives in the Step Program. As such, they are part of the compliance finding for MC PM #6.

In paragraph h, defendants have added some new requirements and cut others. We believe the more straightforward evaluation in the former paragraph b combined with paragraph g makes more sense for this measure and that paragraph h can be cut if Defendants agree to the versions of paragraph b and g that Plaintiffs suggest.

Plaintiffs object to new paragraph i because it changes the monitoring methodology established under the Stipulation that a prisoner file is either compliant or non-compliant as opposed to a percentage of compliance.

### MC PM #8

This performance measure requires the following:

> In addition to the general privileges and incentives afforded to prisoners under DI 326, all SMI prisoners in maximum custody receive:

- 10 hours of unstructured out-of-cell time per week
- 1 hour of additional out-of-cell mental health programming per week
- 1 hour of additional out-of-cell psycho-educational programming per week
- 1 hour of additional out-of-cell programming per week

For this measure the parties have reached some agreement, but issues remain. In the Methodology section, paragraph c, Plaintifs again object to the removal of the requirement to document refusals of exercise/programming without a prisoner's signature or the signature of two officers if the prisoner refuses to sign. Plaintiffs further object to the removal of the requirement that officers record the time refused contemporaneously. However, our alternative offer outlined in MC PM #1 is the same regarding this issue.

In paragraph e, Plaintiffs note that language must be added to clarify that a finding of non-compliance with the requirements of DI 326 for an SMI prisoner record leads to a finding of non-compliance, as MC PM #8 is premised on the fact that SMI prisoners in maximum custody received out-of-cell time "in addition to the general privileges and incentives afforded to prisoners under DI 326."

In paragraph f, Plaintiffs object to removing language which requires a finding of non-compliance if the enumerated additional SMI out-of-cell time and programming is not met.

Plaintiffs also object to the new language about compliance percentage in paragraph f because it changes the monitoring methodology established under the Stipulation that a prisoner file is either compliant or non-compliant as opposed to a percentage of compliance.

### **MC PM #9**

For MC PM #9, the meaning of the actual measure and its application to the maximum custody population is now in dispute. Plaintiffs previously wrote to Defendants objecting to their new interpretation of the scope of the Stipulation and the meaning of MC PM #9 in our correspondence with Ms. Rand and Ms. Love on November 3, 2016. Those objections still stand.

Currently, the parties do not agree on the definition of the performance measure itself or the CGAR question the monitor needs to evaluate.

The parties also disagree on the Source of Records for review. Plaintiffs believe that a full list of all the use of force incidents in a gven period including the MH score/SMI status of each prisoner involved; the specific

housing unit; and whether or not chemical agents were used is necessary to ascertain whether the monitor is looking at the full rage of events that need to be monitored for the month. Defendants have added "Use of Force Memo" to the list, but the current memos produced to support CGAR findings do not contain all of this information.

Plaintiffs also object to the conditional language for review of use of force videos by the monitor. If video of an incident is available (whether hand-held or stationary), it must be viewed by the monitor.

Plaintiffs also object to the exclusion of review of medical records of prisoners if they were treated by medical staff as a result of the use of force as a potential source of records that should be reviewed. This will not be necessary in every case, but in some cases the monitor may need to review such records to make an accurate finding. Similarly, Plaintiffs object to the exclusion of notes/records of any staff or prisoner interviews that might be necessary to make a compliance finding.

In terms of the Methodology section, there are several areas of agreement but still some issues that have not been resolved. In paragraph a, the parties dispute the interpretation of the meaning and coverage of MC PM #9 which leads to disagreement around the langaguage in this paragraph. Plaintiffs also object to the deletion of the requirement that "Staff and prisoners will also be questioned if necessary to make a final compliance finding." Plaintiffs believe that monitors should be able to engage in this level of fact finding if it is necessary to make an accurate compliance finding.

In paragraph e, Plaintiffs object to the removal of the following language: "If the monitor believes that the cool down period was insufficient under the circumstances, there is a finding of non-compliance." The monitor needs to be able to exercise independent judgment regarding use of force incidents and should not be bound by the fact that an officer simply checked a box if s/he believes that the underlying actions actually do not reflect compliance.

In paragraph e, Plaintiffs also object to the *addition* of the following language in italics:

> If there is no cool down period documented *or otherwise recorded in other documentation or on video (hand held and/or security camera footage[)] reviewed by the monitor*, then the incident must be found non-compliant.

The language "or otherwise recorded in other documentation" is vague and confusing in light of the previous reference to "If there is no cool down period

documented." Also, where video is available it should be used as additional evidence to make a compliance finding – not the sole source of a finding -- as the use of force videos produced are often incomplete, without sound, and difficult to track making it impossible to verify a clinical intervention and who is conducting it without further documentation.

In paragraph f, Plaintiffs object to the ***deletion*** of the following language in italics:

> This cool down period may include similar attempts by custody staff *but such interventions by custody staff are not a replacement for the required clinical intervention*.

This object is lodged because the deleted language makes it clear to the monitor that the Stipulation and MC PM requires that in such circumstances a cool down period by custody staff alone is not sufficient for a finding of compliance.

Plaintiffs also object to the same language related to "other documetation or on video" as referenced in paragraph e for the same reasons as enumerated above.

Paragraph g outlines the requirement in the Stipulation that during a clinical intervention, the mental health clinician or qualified health care provider (QHCP) (other than a LPN) must determine whetherthe inmate has the ability to understand orders; whether the inmate has the ability to understand orders but has difficulty complying due to mental health issues; and whether s/he believes the inmate's mental health issues are such that the controlled use of force could lead to a substantial risk of decompensation.

Plaintiffs object to the deletion of the requirement in paragraph g that the record be found non-compliant if no such determination is documented in the use of force documents (video alone would be insufficient due to reasons noted above) because this is a direct requirement from paragraph 27 (c)-(d) of the Stipulation. The monitor must know that failure to make such a determination requires a finding of non-compliance.

Paragraph i tracks the requirements of the Stipulation, paragraph 27 (d):

> If it is determined an inmate has the ability to understand orders but has difficulty complying due to mental health issues, or when a mental health clinician believes the inmate's mental health issues are such that the controlled use of force could lead to a substantial risk of decompensation, a mental health clinician shall propose reasonable strategies to employ in an

        effort tot gain compliance, if the incident occurs on a weekday between 8:00 am and 4:00 pm.  At all other tiems a QHCP (other than a LPN) shall propose such reasonable strategies.

Plaintiffs object to the deletion of the requirement in paragraph i of the Monitoring Guide that if no such reasonable strategies are proposed and documented in the use of force documents under such circumstances (video alone would be insufficient for the reasons outlined above), then there is a finding of noncompliance.

If it is helpful to discuss these matters further on the phone, please let us know. We look forward to working cooperatively with Defendants to address these issues and concerns.

        Sincerely,

        Amy Fettig
        Deputy Director, ACLU National Prison Project

cc:    All counsel