Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | No. CV 12-00601-PHX-ROS<br><br>**JOINT STIPULATED PLAN TO IMPLEMENT THE COURT'S APPOINTMENT OF DR. MARC STERN AS A RULE 706 EXPERT (DOC. 3089)** |

The parties jointly submit this Statement to the Court pursuant to the Court's December 11, 2018 order that the parties "meet and confer to jointly develop a stipulated plan to implement Dr. Stern's appointment," and "to identify . . . terms of his engagement." [Doc. 3089 at 2] The parties have met and conferred telephonically twice with Dr. Stern to discuss his proposed plan for the expert work and have exchanged and discussed written draft proposals.

The parties have been unable to agree on some terms, and their respective positions are set forth herein, as well as, when offered, Dr. Stern's position on the topic. The parties respectfully request that the Court resolve the disputed positions set forth herein before the week of February 4, 2019, as Dr. Stern is scheduled to visit Arizona to meet with individuals at the Arizona Department of Corrections and the Monitoring Bureau.

**Scope of Engagement**

**Plaintiffs' Position**

The Court appointed Dr. Stern as an expert pursuant to Federal Rule of Civil Procedure 706 to conduct analysis that "will include, but is not limited to," the "irregularities and errors in the monitoring process" and Defendants' "substantial noncompliance with critical aspects of health care delivery." (Doc. 3089 at 1).

Plaintiffs' position is that Dr. Stern is the Court's expert and he has the professional experience and judgment to determine what information he needs and what methodology he will use to provide the Court with his analysis, assessment, and recommendations. Plaintiffs therefore object to Defendants' repeated attempts to *a priori* deny Dr. Stern various sources of information and to dictate the methodology he will use in his reports to the Court. The Court should reject Defendants' limitations and order Defendants to allow Dr. Stern access to all information, persons, and facilities that he deems necessary.

//
//
//

**Defendants' Position**[1]

Defendants disagree with Plaintiffs' position as it assumes errors in the monitoring process that invalidate findings by the Monitoring Bureau. There are no such errors, and the Court appointed Dr. Stern to evaluate these very allegations.

Plaintiffs further assert that Defendants' positions in this Plan are intended to limit Dr. Stern's access while performing his audit. To the contrary, Defendants comply with the Court's order and prepare a plan of implementation that facilitates the most effective and efficient access to Dr. Stern. Defendants offer additional access herein at Dr. Stern's discretion, but request prior notice so that Defendants can ensure the personnel, records, and or other information sought is made available most expeditiously. The following sets forth that plan accordingly.

The Court appointed Dr. Stern as an expert pursuant to Federal Rule of Civil Procedure 706, to perform the following tasks:

> (1) Review a sample of the Health Services Contract Monitoring Bureau's ("Monitoring Bureau") findings and determine whether the Monitoring Bureau correctly applied the respective methodology for determining compliance, and
>
> (2) Evaluate causes of noncompliance of certain specified performance measures and provide recommendations to alleviate any barriers to compliance.

(Doc. 3089).

In auditing the Monitoring Bureau's methodology application, Dr. Stern will review the remaining 775 health care performance measures as set forth in Attachment A as reported for the most recent 24-month period. Dr. Stern will conduct a process-based audit of the Monitoring Bureau's application of methodologies by selecting an appropriate

---

[1] By participating in preparing this joint recommendation to the court pursuant to the Court's December 11, 2018 order, the Defendants do not waive any objections either previously or in the future asserted with respect to the June 22, 2018 orders (Dkts. 2900 and 2905) pertaining to the appointment of a FRCP 706 expert, including but not limited to objections made in any appeal currently pending.

sample size and sampling process. (Doc. 3089). In analyzing the sample, Dr. Stern will review the Monitor's worksheets, Monitoring Bureau's Monitor Guide, and the Stipulation to determine whether the Monitoring Bureau's methodology application was correct. (Id.) The analysis will include a review of the electronic medical records system (eOMIS), a review of the informal ADC/Corizon rebuttal process regarding draft compliance findings, and the documentation of any subsequent modification to proposed compliance findings (also known as the Monitoring Bureau's internal rebuttal process). (Id.) Dr. Stern will refer to the Stipulation and the Monitoring Bureau's Monitor Guide and internal practices to determine whether the Monitoring Bureau correctly applied pertinent methodologies. The following are not within the scope of Dr. Stern's appointment to evaluate:

- The quality of care provided to the individual inmates or population groups;
- The Methodology set forth in the Stipulation and the Monitoring Guide for each Performance Measure except as required for the second part of the engagement, which is evaluating causes of noncompliance of specified performance measures;
- The Source of Records specified in the Stipulation and Monitoring Guide utilized in measuring performance under each Performance Measure;
- Data beyond the 24-month period designated by the parties.

Notwithstanding, Defendants welcome any suggestions/observations by Dr. Stern that could potentially make delivering care and/or measuring performance more simple and effective.

For the second part of his engagement of evaluating the performance measures, Dr. Stern will analyze the performance measures and facilities that the Court determined were substantially noncompliant including but not limited to the remedial measures set forth in its Order, Doc. 3089 at 2.

**Dr. Stern's Position**

With regard to the specific elements of "scope" proposed by the Defendants, Dr. Stern believes these are generally reasonable (including limiting the review to the 775 PMs cited in Attachment A as the Plaintiffs have not taken issue here with that list) and workable with one exception. Dr. Stern would modify (in italics) the Defendant's sentence that lists the allowable sources of information to be used in his review as follows: "In

1  analyzing the sample, Dr. Stern will review the Monitor's worksheets, Monitoring
2  Bureau's Monitor Guide, ~~and~~ the Stipulation, *other relevant documents, and will interview*
3  *key personnel, including facility health care and custody staff, who it may be necessary to*
4  *interview to understand the processes followed,* to determine whether the Monitoring
5  Bureau's methodology application was correct.

**Access to Documents, Records, and Prison Facilities**

**Parties Agree**

The parties agree that Dr. Stern will have access to the Monitoring Bureau and facilities to conduct his audit and the parties' attorneys will not attend. They disagree below as to the scope of that access.

**Plaintiffs' Position**

Defendants shall provide Dr. Stern all documents and reports, as requested. Defendants shall provide Dr. Stern with remote access to eOMIS, so that he may review the electronic health records of class members. Dr. Stern requested that he have the ability to create data reports across individual health records to extract system-wide or institution-wide information – for example, all patients with a current cancer diagnosis. Corizon's "Pentaho reports" are able to do this.

Defendants shall make any and all staff of the ADC Monitoring Bureau available for Dr. Stern to meet with and interview about their work.

With regard to access to prison facilities, Plaintiffs defer to Dr. Stern's judgment. Dr. Stern has informed the parties that his preference is to be able to visit facilities at any time of day, and to have the option of making an unannounced visit. He indicated that it would be very rare that he would visit a facility unannounced, but thought that it was important to have that option. He also requested that his meetings or interviews with health care or custody staff occur without the presence of counsel to encourage full candor by the persons with whom he is speaking. While Corizon is not a party to this suit, the Court can order that Corizon permit Dr. Stern access to health care staff without the presence of counsel, at his discretion. Plaintiffs' counsel do not object to Dr. Stern

speaking with class members, or with Plaintiffs' experts, outside the presence of counsel.

**Defendants' Position**

Defendants offer to provide a designated space at the Monitoring Bureau for Dr. Stern to conduct his assessment of the application of the Monitoring Bureau's methodologies and practices in measuring compliance with the Stipulation. There he will have access to eOMIS, worksheets, and designated staff of the Monitoring Bureau who can address any questions or concerns. Dr. Stern will have access to all Monitoring Bureau staff as needed, however, he will be provided a primary contact to assist with and expedite access to the information and personnel he needs for his review. This proposal is based upon the challenges encountered in understanding the applied methodology, data, and review process. The space will be available between the hours of 8:00 a.m. and 5:00 p.m., Monday through Friday, excluding any legal holidays. The parties agree that neither party's attorneys will be in attendance.

Source records will be available through eOMIS electronically or by hard copy. Dr. Stern agreed to utilize the most cost-effective and efficient method as possible and will first access source records available through eOMIS or electronically. Records not available through such mediums may be viewed at the prison facility where they are maintained or produced at the Monitoring Bureau. Source documents may also be reviewed at the facility upon reasonable prior notice. Notice must be given at least three (3) business days in advance of any visit to ensure that Dr. Stern has access to appropriate personnel and records while at the facility. Dr. Stern agreed that unannounced visits would not be the most efficient use of time and resources and would not likely serve his purposes. A designee from the Monitoring Bureau will be available to Dr. Stern throughout any visit and Dr. Stern shall have access to the medical area where the source records are kept and to authorized personnel only. Dr. Stern will generally not speak with inmates during his visits or any unauthorized personnel. Dr. Stern has agreed that speaking with inmates or the parties' experts is not likely to be helpful, however, if he determines a need to do so, Defendants' request three (3) business days prior notice and

an opportunity to discuss any objection to the same. To the extent that Dr. Stern needs to communicate with any additional personnel, Defendants request the same three (3) business days advance notice. If a dispute arises concerning whether a communication should be permitted, the parties will request that the Court make the determination. In the event that access is granted, it should be limited to the scope of the request.

The parties agree that neither party's attorneys, experts or other representatives will be in attendance. Corizon (or any other health care contractor providing medical, mental health or dental services to class members pursuant to a contract with ADC) is not party and may elect at its own discretion to have its attorneys present with its employees during any visit.

Dr. Stern will be subject to the Requirements for Access to Monitoring Bureau attached as Attachment B to this proposal while utilizing the Monitoring Bureau's office space and will be subject to security operations while accessing any prison facility during his engagement.

Plaintiffs suggest that Dr. Stern be given access to Pentaho to run reports, however, such access provides no utility to his engagement. Pentaho is proprietary to Corizon and is a program tool that only Corizon uses to generate reports of data contained in eOMIS. It is not an independent source of records. The Monitoring Bureau does run Pentaho reports. Because eOMIS is a live database where records are constantly input and updated, a report generated in Pentaho will vary from minute to minute and day to day. Dr. Stern will have access to any Pentaho report run by Corizon and used by monitors in measuring compliance as these reports are maintained as source records and are kept with the monitor file. Direct access to run a report today will not assist Dr. Stern in determining whether a past compliance finding was valid or invalid because the underlying data has vastly changed since the finding was reported.

Further, because medical records are, by their nature, highly complex and involve both objective and subjective elements, Pentaho reports are also an inadequate tool for assessing real-time compliance. For example, a Pentaho report could be generated

purportedly assessing compliance with PM 54, which would list instances where encounters with a chronic disease inmate occurred more than 180 days apart; however, the resulting report would not identify instances where the provider dictated a treatment plan with a different timeframe for encounters (regardless of whether such timeframe was more or less than 180 days). The resulting report would also not capture encounters which did occur but which were inadvertently not marked "chronic care encounter" in eOMIS. Therefore, any Pentaho report attempting to assess compliance with PM 54 would be both over- and under-inclusive, and would be of no practical use to Dr. Stern. As another example, in assessing compliance with PM 39, a Pentaho report listing all referrals to a provider from a nursing encounter would include all instances where the inmate refused, but the refusal would not be evident without a manual review of the medical file. In addition, the resulting report would also include instances where the referral was addressed outside of a dedicated scheduled appointment, such as during an existing appointment. Similar difficulties exist for several other PMs. As a result, Pentaho is not an adequate substitute for manual reviews and running a Pentaho report cannot be considered a method for determining compliance. For these reasons, access to Pentaho would be of very minimal benefit to Dr. Stern.

With these limitations and understanding in mind, Defendants recommend that, rather than giving Dr. Stern direct access to Pentaho, which, for some reporting, requires some expertise in analytics and in the system itself, Corizon be prepared to run any available Pentaho reports for Dr. Stern at his request.

**Dr. Stern's Position**

While unfettered access to all persons, places, and materials would be ideal, Dr. Stern recognizes the practicality of setting some limitations on such access and so is generally acceptable of the limitations articulated by Defendants, with the following exceptions.

1. Defendants propose that "Notice must be given at least three (3) business days in advance of any visit to ensure that Dr. Stern has access to appropriate personnel and

records while at the facility." While this is a very reasonable request for visits that will be time-intensive for facility staff, it is not necessary for visits during which Dr. Stern expects to largely observe daily operations as they normally transpire, and it is counterproductive for unannounced visits (which Dr. Stern expects to be conducted rarely, if at all, but could be at any time of day or day or the week). Thus Dr. Stern proposes that, pursuant to communication between Dr. Stern and Defendants, Defendants be given *up to* three (3) business days notice for announced visits, depending on the planned nature of the visit and Defendants' reasonable needs to plan for that visit, and that Defendants be given no notice for unannounced visits with the understanding that these will be rare events and will have minimal impact on staff operations; Dr. Stern recognizes that, by definition, a designee from the MB would not be available to him for unannounced visits.

2. Defendants propose that "Dr. Stern will generally not speak with … during his visits … any unauthorized personnel…To the extent that Dr. Stern needs to communicate with any additional personnel, Defendants request the same three (3) business days advance notice." Dr. Stern's position is that, as with visit notice (above), this is a reasonable limitation for interviews or communications that are likely to be time-intensive for the personnel involved, but impractical for brief impromptu communications with facility staff and other individuals. For example, if during a planned meeting with the pharmacist at Lewis to discuss PM 15, the pharmacist indicated that the nurse was in the best position to answer a question, it would not be practical (or economical for the Defendants) for Dr. Stern to wait three to five calendar days to ask the question of the nurse. Thus Dr. Stern proposes that he have the ability to communicate with any individual he reasonably expects can help him discharge his responsibilities to the Court, recognizing that for communications he expects to significantly impact workflow, Defendants be given *up to* three (3) business days notice, based on Defendants' reasonable needs to plan.

3. To further define "individual" in the previous sentence, Dr. Stern's ability to speak directly with Corizon personnel – front line professionals as well as managers – will

be invaluable to discharge the Court's charge, especially the second part (proposals to alleviate noncompliance with PMs). Thus Dr. Stern echoes Plaintiffs' recommendation, that Dr. Stern have access to Corizon health care staff without the presence of Corizon or other counsel, at his discretion.

**Timeframe for Dr. Stern's Work, Including Deadlines for Interim Status Updates**

**Parties Agree**

Dr. Stern indicated that he wants to focus first on the monitoring process (Doc. 2900), as that would inform his analysis and review of chronic substantial noncompliance with critical performance measures (Doc. 2905). He indicated that he would like to meet with ADC monitors, and possibly visit one or more facilities, in the next few weeks, and after that he would have a better sense of the scope of his duties. Dr. Stern is tentatively planning to visit the Monitoring Bureau and one or more facilities the week of February 4, 2019. Dr. Stern estimates that no later than 30 days after the submission of this Statement, he will be able to provide the Court and the parties a much more concrete timeframe for his work.

**Plaintiffs' Position**

Plaintiffs' preference is that Dr. Stern have periodic, regularly-scheduled (every two weeks) phone calls with counsel for the parties, to update the parties on the status of his work. If Dr. Stern determines that he has no update for a particular scheduled call, he will so inform counsel no later than one day prior to the scheduled call. Plaintiffs' counsel will agree to calls on an as-needed basis, provided that the scheduling of such calls shall be based upon Dr. Stern's schedule and shall not be delayed because of the unavailability of a particular attorney for Plaintiffs or Defendants.

**Defendants' Position**

Concerning periodic phone calls with counsel regarding status updates, Defendants' request that any status update calls be conducted on an as-needed basis, to be decided by Dr. Stern.

//

**Dr. Stern's Position**

Dr. Stern's position is that either regularly scheduled phone hearings or as-needed are equally acceptable.

**Dr. Stern's Recommendations to the Court**

**Parties Agree**

Dr. Stern will provide the Court with a written report, and prior to submitting it to the Court, he will send drafts to counsel for comment and response. Dr. Stern indicated that he would like to have the ability to communicate with the Court periodically to update the Court on the status of his work. The parties do not object to these meetings between Dr. Stern and the Court (whether by telephone or in person) occurring without the participation of counsel.

**Plaintiffs' Position**

Plaintiffs' position is that as long as any personally identifying patient information is redacted, there is no legal justification for filing Dr. Stern's report(s) under seal.

**Defendants' Position**

Defendants request that any report filed with the Court be filed under seal.

**Dr. Stern's Position**

1. In the interest of frank, efficient, and productive communications, Dr. Stern requests the ability to communicate with the Court or either counsel *ex parte.*

2. In the interest of increased accuracy and concurrence of his written report(s) to the Court, Dr. Stern proposes acceptance of the parties' joint agreement that he provide the parties drafts of his report(s) for comment.

3. Dr. Stern has no position with regard to the filing of his reports under seal. Without regard to sealing, for ease of redaction and to reduce the possibility of error, he proposes using numbers to identifying any patients referred to in his report(s), and providing both parties a lexicon of patient numbers and names under separate cover.

//
//

**Dr. Stern's Compensation**

    **Plaintiffs' Position**

    Dr. Stern has a sliding scale hourly rate for his consulting; the rate charged to government agencies is $400/hour. Defendants will compensate Dr. Stern directly, he will invoice ADC monthly, and payment will be completed within 30 days of ADC's receipt of the invoice. Plaintiffs do not believe that Dr. Stern should be paid from the sanction fine assessed by the Court (Doc. 2898, 2899), as the Defendants currently are appealing this fine to the Ninth Circuit Court of Appeals. *See* Appeal No. 18-16358. The Court has already ruled that Defendants will pay for the Rule 706 expert, (Doc. 2900 at 12; Doc. 2905 at 3; Doc. 3089 at 2; 12/6/18 Tr. at 34:9 ("The defense is going to pay for this"), and Plaintiffs further object to Defendants' suggestion that they be "reimbursed" by unnamed persons or parties if Defendants were to prevail in their appeal of the sanctions fine.

    **Defendants' Position**

    Dr. Stern's suggested billing rate for this matter is $400 per hour. Unless reduced by the Court, he will be compensated at that rate, plus reasonable and related out-of-pocket expenses, consistent with the State of Arizona rates for costs and expenses. *See* http://www.gao.state.az.us. This rate should be inclusive of all services provided pursuant to the engagement. Defendants propose that Dr. Stern's fees be paid from the sanction monies imposed by the Court, unless such sanction monies are overturned on appeal. *See* Docs. 2898 and 2945; s*ee also* Appeal No. 18-16358. Defendants propose to pay Dr. Stern's fees as set forth below, but request that should any sanctions ultimately be upheld, that Defendants be reimbursed from those monies for any fees they paid to Dr. Stern while the appeal was pending. Given the costs involved and that the source of payment is public funds, Dr. Stern should fulfill his engagement as economically as circumstances reasonably permit.

- Dr. Stern should register in the Arizona Procurement Portal system ("APP system") to facilitate the payment process. The APP system can be accessed at

https://appstate.az.gov. All billing statements should be submitted no more frequently than every month to counsel for the Arizona Department of Corrections and counsel will forward the same for payment by ADC. The statements should include: Separate entries for the following tasks: (1) travel, (2) meetings, (3) conference calls, (4) record review/research, (5) report writing, (6) prison visits, and (7) court hearings/conferences;

- The specific time attributed to each task on no more than a .10 of an hour basis;
- The date performed; and
- Any reasonable and related out-of-pocket costs associated with performing the task.

Separate entries are requested for each task enumerated above. Lump sum entries may require further review and result in delayed payment. Defendants shall pay Dr. Stern through the APP system within 30 days from receipt of the billing statement. Dr. Stern may charge an hourly rate and/or mileage reimbursement only when he must travel over a 50-mile radius from his normal place of business location. Statements, with receipts attached, shall be accompanied by itemization of disbursements and costs (long distance calls, photocopying, transcripts, expert witnesses, court costs, et cetera) and travel and living expenses shall be itemized separately to indicate travel, lodging, business meetings, meals, taxis, and other expenses (specifically detailed). Travel time and per diem expenses shall be accordance with the Arizona Department of Administration Travel Policy, Topic 50, including but not limited to Sections 05 (General Travel Principles and Policies), 06 (Reducing State Travel Costs), 10 (Common Carrier Transportation), 25 (Meals and Incidentals), 30 (Hotels, Motels and Lodging), 65 (Vendor and Other Non-employee Travel), and 95 (Maximum Mileage, Lodging, Meal, Parking and Incidental Expense Reimbursement Rates). *See* Attachment C. Please refer to the Policy for current maximum mileage, lodging, meal, parking, and incidental expense reimbursement rates. The following full day rates apply: $.044 per mile mileage reimbursement, $46 per day for meals and incidentals, and $172 per day for lodging. *See* Section 95 at Attachment C. For

1 additional rates and more details, please refer to the Policy viewable at
2 http://www.gao.az.gov.
3 Travel, when necessary, should be conducted as economically as circumstances
4 reasonably permit.

**Dr. Stern's Position**

The parties appear to agree all but one matter and Dr. Stern shares their position on the former. As to the latter matter, Dr. Stern has no position with regard to the source of monies used to compensate him.

**How the Parties and the Court May Communicate With Dr. Stern**

**Plaintiffs' Position**

In order to minimize costs, maximize efficiency, and encourage candor, Plaintiffs do not object to Dr. Stern communicating with the Court, ADC employees, class members, and/or Corizon employees without the presence of counsel. Plaintiffs do not object to *ex parte* communications by Dr. Stern with counsel for Defendants, so long as there is a reciprocal agreement for his communications with Plaintiffs' counsel.

**Defendants' Position**

Defendants agree with Dr. Stern's position that he may speak with the Court, the parties' counsel, and authorized ADC employees without the presence of counsel. No communication is anticipated (and therefore not permitted) with experts or incarcerated individuals, and if the need arose, he would request permission in advance, with the parties addressing on a case-by-case basis. Defendants add that Corizon (or any other health care contractor providing medical, mental health or dental services to class members pursuant to a contract with ADC) is not a party and may elect to have its counsel present with its employees at its own discretion.

**Dr. Stern's Position**

Dr. Stern's position regarding communications with counsels, ADC and Corizon employees, other non-patient non-expert individuals, and the Court, is articulated

elsewhere in this proposal. With regard to patients and parties' experts, Dr. Stern's position echoes that of Defendants.

**Protocols of Evaluation**

**Plaintiffs' Position**

As noted above, Plaintiffs' position is that Dr. Stern is the Court's expert and he has the professional experience and judgment to determine what methodology he will use to provide the Court with his analysis, assessment, and recommendations. Given the Court's "inescapable conclusion [that] there are profound and systemic concerns with the monitoring process at every stage of the process," (Doc. 2900 at 6), it is especially inappropriate for Defendants to attempt to dictate the methodology to be used by Dr. Stern, who is an expert on the topic.

**Defendants' Position**

*Auditing the Monitoring Bureau's Application of Methodologies*

Defendants are amenable to an approach suggested by Dr. Stern where he conducts a preliminary review of the most challenging and lowest-scoring performance measures. Dr. Stern indicated that this is not necessarily the approach he will take, however, Defendants would be amenable to the same should he choose this approach. For any approach Dr. Stern chooses, Dr. Stern suggested that he would keep both parties informed and would welcome input at an early stage to discuss any objections or concerns. Defendants are amendable to this process, however, also request an opportunity to submit any unresolved objections at that early stage to the Court for its determination to avoid any prejudice or hind-sight fairness arguments from either party.

Defendants also propose an alternative sampling approach as suggested by the Court. Doc. 3089 at 2. Sampling is necessary given the monumental number of records supporting the findings that are the subject of the audit—the number of remaining monitored performance measures is 774, and over a 24-month period, sums to a target population of 18,579 performance scores that are subject to auditing.

//

1         *Protocol for Review of Non-Compliant Measures*

2         Dr. Stern will review the Performance Measures that were found by the Court as being substantially non-compliant, including but not limited to the Performance Measures set forth in Doc. 3089 at 2.

        In performing this part of his engagement, Dr. Stern will be permitted the same access to the Monitoring Bureau, prison facilities, and authorized personnel as he had in performing the first part of his engagement. Dr. Stern will evaluate the causes of non-compliance and barriers to compliance, then provide recommendations to alleviate non-compliance. The recommendations must be consistent with the terms of the Stipulation.

**Dr. Stern's Position**

        Borrowing from passages of both parties' positions, Dr. Stern's position is:

        Dr. Stern is the Court's expert and he has the professional experience and judgment to determine what methodology he will use to provide the Court with his analysis, assessment, and recommendations. Dr. Stern would keep both parties informed and would welcome input at an early stage to discuss any objections or concerns. He is supportive of party submitting any unresolvable objections at an early stage to the Court, though hopefully the aforementioned process would reduce the need for this. In performing the latter part of his engagement (review of non-compliant measures), Dr. Stern will be permitted the same access to the Monitoring Bureau, prison facilities, and authorized personnel as he had in performing the first part of his engagement.

//
//
//
//
//
//
//
//

| | |
|---|---|
| Respectfully submitted, | |
| Dated: January 18, 2019 | |
| **STRUCK LOVE BOJANOWSKI & ACEDO, PLC** | PRISON LAW OFFICE |
| By: s/ Daniel P. Struck (*with permission*)<br>   Daniel P. Struck<br>   Rachel Love<br>   Timothy J. Bojanowski<br>   Nicholas D. Acedo<br>**STRUCK LOVE BOJANOWSKI & ACEDO, PLC**<br>3100 W. Ray Road, Ste. 300<br>Chandler, AZ 85226 | By: s/ Corene Kendrick<br>   Donald Specter (Cal. 83925)*<br>   Alison Hardy (Cal. 135966)*<br>   Sara Norman (Cal. 189536)*<br>   Corene Kendrick (Cal. 226642)*<br>   Rita K. Lomio (Cal. 254501)*<br>**PRISON LAW OFFICE**<br>1917 Fifth Street<br>Berkeley, California 94710<br>Telephone: (510) 280-2621<br>Email:  dspecter@prisonlaw.com<br>         ahardy@prisonlaw.com<br>         snorman@prisonlaw.com<br>         ckendrick@prisonlaw.com<br>         rlomio@prisonlaw.com |
| Office of the Arizona Attorney General<br>Michael E. Gottfried<br>Assistant Attorney General<br>2005 N. Central Avenue<br>Phoenix, AZ 85004-1592 | |
| *Attorneys for Defendants* | *Admitted *pro hac vice* |
| | David C. Fathi (Wash. 24893)*<br>Amy Fettig (D.C. 484883)**<br>Victoria Lopez (Ill. 6275388)*<br>**ACLU NATIONAL PRISON PROJECT**<br>915 15th Street N.W., 7th Floor<br>Washington, D.C. 20005<br>Telephone: (202) 548-6603<br>Email:  dfathi@aclu.org<br>         afettig@aclu.org<br>         vlopez@aclu.org |
| | *Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.<br>**Admitted *pro hac vice* |
| | Kirstin T. Eidenbach (Bar No. 027341)<br>**EIDENBACH LAW, PLLC**<br>P. O. Box 91398<br>Tucson, Arizona 85752<br>Telephone: (520) 477-1475<br>Email:  kirstin@eidenbachlaw.com |

| | |
|---|---|
| 1 | Kathleen E. Brody (Bar No. 026331) |
| 2 | **ACLU FOUNDATION OF ARIZONA** |
| 3 | 3707 North 7th Street, Suite 235<br>Phoenix, Arizona 85013 |
| 4 | Telephone: (602) 650-1854<br>Email: kbrody@acluaz.org |
| 5 | Daniel C. Barr (Bar No. 010149)<br>Amelia M. Gerlicher (Bar No. 023966) |
| 6 | John H. Gray (Bar No. 028107)<br>**PERKINS COIE LLP** |
| 7 | 2901 N. Central Avenue, Suite 2000<br>Phoenix, Arizona 85012 |
| 8 | Telephone: (602) 351-8000<br>Email: dbarr@perkinscoie.com |
| 9 | agerlicher@perkinscoie.com<br>jhgray@perkinscoie.com |
| 10 | |
| 11 | Caroline Mitchell (Cal. 143124)*<br>**JONES DAY** |
| 12 | 555 California Street, 26th Floor<br>San Francisco, California 94104 |
| 13 | Telephone: (415) 875-5712<br>Email: cnmitchell@jonesday.com |
| 14 | *Admitted *pro hac vice* |
| 15 | John Laurens Wilkes (Tex. 24053548)*<br>**JONES DAY** |
| 16 | 717 Texas Street<br>Houston, Texas 77002 |
| 17 | Telephone: (832) 239-3939<br>Email: jlwilkes@jonesday.com |
| 18 | |
| 19 | *Admitted *pro hac vice* |
| 20 | *Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated* |

**ARIZONA CENTER FOR DISABILITY LAW**

By: s/ Maya Abela

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Maya Abela (Bar No. 027232)
Jessica Jansepar Ross (Bar No. 030553)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
  rdalyrooney@azdisabilitylaw.org
  jrico@azdisabilitylaw.org
  mabela@azdisabilitylaw.org
  jross@azdisabilitylaw.org

Asim Dietrich (Bar No. 027927)
5025 East Washington St., Ste. 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.com

*Attorneys for Arizona Center for Disability Law*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2019, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
Richard M. Valenti
Jamie D. Guzman
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com

*Attorneys for Defendants*

                s/ C. Kendrick