**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Antonio Parsons, et al., | No. CV-12-00601-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| Charles L Ryan, et al., | |
| Defendants. | |

The parties submitted a joint statement regarding the terms of Dr. Stern's engagement. (Doc. 3111). The parties agree on some issues but disagree on others. The Court will accept the portions where the parties agree and this Order addresses only the disagreements.

**I.       Scope of Engagement**

It is not entirely clear where the parties disagree regarding the general overview of Dr. Stern's engagement and planned work. The Court appointed Dr. Stern to conduct analysis that "will include, but is not limited to," the "irregularities and errors in the monitoring process" and Defendants' "substantial noncompliance with critical aspects of health care delivery." (Doc. 3089 at 1). It appears, however, that Defendants wish to artificially limit the scope of Dr. Stern's work both in substance and by preventing him from speaking with personnel involved in providing care. Such limitations are not appropriate. Contrary to Defendants' contention, the quality of health care provided to individual prisoners is necessarily relevant to determine whether there is a "practice of

substantially departing from the standard of care." (Doc. 1185 ¶ 8.) Dr. Stern will not be precluded from analyzing care provided to particular prisoners in order to draw global conclusions about health care delivery. Nor will Dr. Stern be limited in reviewing the Monitoring Guide and the methodology by which compliance scores are obtained. The Court has spent tremendous time and resources in reviewing the various methodologies to ensure accurate compliance scores are obtained and if Dr. Stern identifies revisions to the Guide to enhance the reliability of the data, the Court will entertain those recommendations.

Defendants also seek to limit the records Dr. Stern may review and the individuals he may interview. Neither attempted restriction is well-taken. Dr. Stern may review source documents that underly any of the compliance numbers he is tasked with analyzing. Further, Dr. Stern will be allowed to "interview key personnel, including facility health care and custody staff, who it may be necessary to interview to understand the processes followed, to determine whether the Monitoring Bureau's methodology application was correct." (Doc. 3111 at 5).

## II. Access to Documents, Records, and Prison Facilities

The parties disagree whether Dr. Stern should be required to give notice three business days in advance of any visit to a prison facility. The parties also disagree on which personnel Dr. Stern should be allowed to communicate with during those visits. Dr. Stern will be required to give as much advance notice as possible but he will not be required to give three business days' notice. Nor will the Court preclude unannounced visits in light of Dr. Stern's commitment that they will be rare events. Also, Dr. Stern will be permitted to speak with the personnel he believes necessary during his visits. Dr. Stern has avowed he will avoid interfering with the daily operations to the extent possible and, at present, there is no reason to believe his visits will be unduly burdensome. Good faith allegations that the Department of Corrections is incurring substantial burdens can be brought ot the Court's attention for possible adjustment.

Dr. Stern must be permitted to speak privately with individuals (i.e., no counsel

present) but because he will be speaking with many individuals employed by non-party Corizon, those individuals are entitled to have counsel present if they wish.

The parties also disagree whether Dr. Stern should be given access to "Pentaho," a proprietary software program that would allow Dr. Stern to generate reports based on prisoners' electronic medical records. The Court will leave this matter to Dr. Stern's discretion. If he believes access to Pentaho would be helpful, Defendants must arrange that access.

### III. Timeframe and Status Updates

Plaintiffs would like Dr. Stern to have regularly-scheduled phone calls to update the parties while Defendants believe Dr. Stern should conduct phone calls only on an as-needed basis. Dr. Stern has no preference. The Court will not require Dr. Stern to provide updates at regular intervals; the parties will have status updates when deemed advisable by Dr. Stern. If either party requests a status update, they may request that Dr. Stern provide one.

### IV. Recommendations to the Court

Defendants request that Dr. Stern's reports be filed under seal but they do not explain why. There is no support for sealing Dr. Stern's reports and provided personally identifying patient information has been redacted, there is no need for them to be filed under seal.

### V. Dr. Stern's Compensation

The Court will not reduce Dr. Stern's billing rate of $400.00 per hour. The parties disagree, however, on whether Dr. Stern should be paid from the contempt sanction previously assessed by the Court. This issue is premature as the propriety of the fine is on appeal. For present purposes, Defendants shall pay Dr. Stern's bills as they come due and the Court will resolve at a later date whether Defendants are entitled to be reimbursed from the contempt sanction.

### VI. Communications with Dr. Stern

The parties agree that Dr. Stern may have ex parte communications with the Court

and either counsel. The Court will approve Dr. Stern having ex parte communications with either counsel but to avoid any potential concern, the Court will not have ex parte communications with Dr. Stern on any merits-related matters. That is, the Court's ex parte communications with Dr. Stern will continue to involve only logistical matters, such as access to court records and scheduling of any future Court appearances. The Court will not have any substantive discussions with Dr. Stern outside the presence of counsel for both parties.

**VII.  Protocols of Evaluation**

The protocols Dr. Stern will use when conducting his analysis are entirely within his discretion. The Court will therefore adopt his suggested language governing the protocols he will employ.

Dated this 31st day of January, 2019.

Honorable Roslyn O. Silver
Senior United States District Judge