THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE **LRCiv 5.4**
(Rule Number/Section)

Case 2:12-cv-00601-ROS   Document 3129   Filed 01/31/19   Page 1 of 20

✓ FILED ___ LODGED
___ RECEIVED ___ COPY

JAN 3 1 2019

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

Michael J. Cohn #288721

ASPC Tucson/Manzanita 3A3L

P.O. Box 24401

Tucson, AZ 85734-4401

## UNITED STATES DISTRICT COURT, ARIZONA

| Parsons, et al. | Ninth Cir. 18-17351 |
|---|---|
| v. | D.C. 2:12 CV601-ROS |
| Ryan, et al. | 5th supplement in Support of motion for Sanctions / in support |
| v. | of criminal Investigation in the death of Inmate Cromwell |
| Cohn, et al. | Hon. Roslyn O. Silver |

I, Michael J. Cohn, class plaintiff, appellant, advocate in the above named case, respectfully submit the attached complaint to the AZ. State Board of Nursing regarding the death of inmate Cromwell. Internal remedies are exhausted. I allege the prior submitted documents regarding retaliation by medical staff are related to this matter to conceal the alleged homicide of Mr. Cromwell from the authorities.

Respectfully submitted,

Michael J. Cohn, Ed.D.          Date: 1/25/19

Dr. Michael J. Cohn

Advocacy/Education/Expert Witness

Service

Original mailed to:   on: 1/28/19      Attorney General
Clerk of the U.S. District Ct,                1275 W. Washington
                                              Phoenix, AZ 85007
401 W. Washington #130-SPC-1

Phoenix, AZ 85003                    Prison Law Ofc.

     Copies to?  on: 1/28/19         General Delivery
Clerk of the 9th Cir. Ct. of Appeals
P.O. Box 193939                      San Quentin, CA 94964
San Francisco, CA 94119

1

Michael S. Cohn #288721
ASPC Tucson / Manzanita 3A3L
P.O. Box 24401
Tucson, AZ 85734-4401

1/28/19

Arizona State Board of Nursing
1740. W. Adams #2000
Phoenix, AZ 85007
Attn. Ms. Hortado, Sr. Investigator, Complaint Triage Coordinator

COMPLAINT

ALLEGATION: Homicide of a disabled, Jewish inmate / Unprofessional Conduct ARS§§36-446.09 sec.03
ARS§46-451-457 - Adult abuse/neglect

Parties: Ms. Broadwater, LPN - address unknown

(Tel. 520-574-0024) { Ms. J. Kidd, R.N., Asst. Dir. of Nursing, ASPC Tucson, P.O. 24400, Tucson 85734.
Ms. Kimberylee Switzer, RN, BSN, Dir. of Nursing, ASPC Tucson, P.O. Box 24400, Tucson, AZ 85734.

STATUS: Per Officer Rojas of the Special Security Unit (S.S.U.), a criminal
(520-574-0024) investigation by an independent law enforcement agency, such as
the F.B.I., U.S. Marshalls or Pima Co. Sheriff is being pushed for.
Exhaustion of internal remedies per ARS§31-341(A)(B) is documented herein.
OTHER attempts to Resolve - Letters to Tucson, P.D., Internal grievance process,
Letter to Pima Co. Attorney, and Letter to Ambassador of Israel, Filings
in Case 2:12cv601-ROS, Parsons et al. v. Ryan, et al., v. Cohn 18-17351
Ninth Cir. Ct. of appeals, U.S. District Ct., Judge Roslyn Silver
Presiding, Mark Brnovich, Attorney General, via Lacy Rand, A.A.G.,
Prison Law Ofc., AZ Center for Disability Law, ACLU.

1

Standard of Care: Per LPN Hall, all inmates must be resuscitated as they are wards of the state. DNR orders do not apply.

Documents: Some 40-50 pages of documentation have been submitted to the above agencies and officers. Will be submitted upon case # assigned.

Brief Points of the Case as Reported to me.

*See also attached court filing including Director's response documenting exhaustion of Internal Remedies.

1) Inmate Cromwell was wheelchair bound and in severe pain with bone deformity from an arthritic condition. He was a patient/resident of Nursing Care Institution Building HU5, an ADA compliant facility. Meals and medication were brought to the building. The medical office is about 100 yards away. No nurse or CNA is stationed 24 hours per day in this building. Med pass is from 7-9am, 12-1pm and 5-6pm.

2) Inmate Broadwater was passing out meds am. or pm when inmates told her Cromwell had collapsed. She refused to render aide. Corrections Officer Boteo aided by providing chest compressions, but no breathing assistance. He prevented Red Cross trained CPR inmates from assisting. It was obvious to lay persons that Cromwell was not breathing/turning blue. This was vigorously brought to Boteo's attention, but he did not deviate from policy to provide breathing aide. He continued chest compressions apparently believing nursing help would arrive.

3) An AED defibrillator was stationed on the unit. No effort was made to utilize it at any time during this crisis.

4) Corrections Officer Colsten arrived some minutes later. Estimates are anywhere from 10-20 minutes. She provided breathing aide via plastic tube. Again, no defibrillator was used.

5) Nursing supervisor Kidd arrived some time later. No time estimates are available from those I interviewed. D.O.N. Switzer did not arrive at all.

### Issues Before the Fact as reported to me.

6) Cromwell reportedly received an injection of Toridol some 15-30 minutes prior to his collapse. He was not kept at the medical unit for observation per standard of care.

7) Per SSU Lt. Hansen, Cromwell was known to the staff as a narcotics user/abuser.

8) Cromwell had become a pill-seeking nuisance to the medical/nursing staff.

9) Cromwell was disoriented at the time he received meds from Broadwater.

### Duty to Protect

10) Per the ADA et seq., See Title II, Rehabilitation Act §504, ARS §41-1992 et seq., the AZ. Dept. of Corrections/Corizon had a duty to protect an inmate from self-injury. As set forth in the attached court filing, such action could include ordering an inmate to drug rehabilitation treatment, who is known as user/abuser.

11) Again, by policy, all inmates as wards of the state must be resuscitated. This policy was ~~followed~~ not followed in the full intent of the statement.

3

12) Nursing staff had motive to let Cromwell suffer and die.

13) Anti-semitism as a motive has not been ruled out.

### Supervisor Negligence or Intent

14) Supervisor negligence is implicated. Why was Broadwater assigned to do med pass on this unit, Was this intentional?

15) It appears that Kidd and Switzer do not have Nursing Care Institution administrator Licenses or assisted Living Facility Administrator Certificates. This is unlawful and constitutes unprofessional conduct (see attached), and immediately constitutes negligent homicide at a minimum.

16) Where was Kidd at the time of the crisis? Did she know Broadwater was a possible liability or did she intentionally assign her to HU5 hoping for a Cromwell crisis under the cover of death due to overdose? Did Switzer approve or know? If she didn't know, why not?

17) All deaths under the supervision of Kidd/Switzer are allegedly homicides due to the lack of proper licensure, per HU1B, HU4A, HU5 76.

### Alleged Fraud

Corizon, via Facility Health Administrator Benjamin Schmid admits it does not have a Tucson/Pima County Business License to operate medical or nursing care businesses. This has been reported by me to Federal Court, the Attorney General and the ACLU, et al. (Ninth cir. 18-17351, 2018). All inmate deaths since Corizon signed its contract appear to be felony murders. Several hundred are implicated. Cromwell's is one of these if fraud

4

is upheld. Nurses should know better than to work for an unlicensed medical care business.

### 8th Amendment & 14th Amendment

Inmates have a right to equivalent care to the community standard of care, per the 8th & 14 amndmts of the U.S. Const. Estelle v. Gamble, 429 US 97, 103, 104 (1976). Proper licensure is part of that standard of care. *

### Requested Remedies

1) Suspension of Broadwater, Kidd's and Switzer's licenses pending investigation.
2) Recommendation to the Attorney General for an external Law enforcement criminal investigation of this matter (also, Pima Co. atty.)
3) Revocation of Licenses if found in violation of nursing standards.
4) Referral to Pima Co. attorney for criminal charges

Respectfully submitted,

*Michael J. Cohn, Ed.D.*

Dr. Michael J. Cohn

Advocacy/ Education/ Expert Witness

Board Certified Clinical Background, former healthcare/hospital administrator

---

\* To the best of my knowledge, Kidd, Switzer, Broadwater concealed the exact nature and extent of Cromwell's prior to the fact condition from Dr. Salazar, the Tucson complex Medical Director. However, if Dr. Salazar did know, he is also implicated in a homicide, allegedly.

4



# ARIZONA DEPARTMENT OF CORRECTIONS
# INMATE GRIEVANCE APPEAL RESPONSE

*Received 1/23/19 MAC*

| Log # | Inmate Name | ADC# | Case # | Complex | Unit |
|---|---|---|---|---|---|
| 974 | Cohn | 288721 | C14170018 | Tucson | Manzanita |

In your grievance filed at Manzanita Unit, you claim Department staff were negligent in their duties as it pertains to the death of another inmate. Your resolution is for the staff involved to be suspended or reassigned.

Your grievance has been reviewed at Central Office and the Deputy Warden's response is affirmed. Allegations of staff misconduct involving inmates are taken seriously. These allegations have been forwarded to the Administration for review. Investigations are treated as confidential and you will not be notified of the outcome or of any corrective action that may have been taken.

No further action is warranted in this matter.

cc: Warden, Tucson Complex

RK

*R. Kepney*
Appeals Officer


*CRGlynn for*
Charles L. Ryan, Director

01/08/2019
Date

*Exhaustion of administrative remedies*
*MAC.*

Michael J. Cohn #288721
ASPC Tucson / Manzanita 3A3L
P.O. 24401
Tucson, AZ 85734-4401

UNITED STATES DISTRICT COURT, ARIZONA

| Parsons, et al. | Ninth Cir. 18-17351 |
| v. | D.C. 2:12cv601-ROS |
| Ryan, et al. | Supplemental Submission; 4th Supplement to Preliminary Investigative Report of Death of Inmate Cromwell |
| v. | |
| Cohn, Pro Se | Hon. Roslyn O. Silver |

I, Michael J. Cohn, Advocate/Appellant/Class Plaintiff, respectfully submit the attached report. The ultimate issue is this: ongoing contempt for the law by ADC/Corizon and betrayal of clients by counsel for Plaintiffs. I will continue to investigate this matter and report my findings to the court, et al. As set forth in the attached report, I assert counsel for Plaintiffs should pursue reopening the investigation of Cromwell's death.

Respectfully submitted,

Michael J. Cohn, Ed.D.
Dr. Michael J. Cohn
Advocacy/Education/Expert Witness

original mailed to:    on: 1/17/19         copies to:    on: 1/17/19
Clerk of the U.S. Dist. Ct.                - Attorney General
401 W. Washington #130-SPC-2               1275 W. Washington
Phoenix, AZ 85003                          Phoenix, AZ 85007

                                           - Prison Law Office
                                           General Delivery
                                           San Quentin, CA 94964

Michael J Cohn #285721
ASPC Tucson/Manzanita 3A3L
P.O. Box 24401
Tucson, AZ 85734-4401

Supplement #4 to Preliminary Investigative Report of the Death of Inmate Sean Cromwell, a Jewish Inmate. Submitted to the Prison Law Office. 1/15/19

I met with Lt. Hansen of the SSU on Monday 1/13/19. I have met with officer Rojos in the past, but he will be in tomorrow. I reviewed my knowledge of the case with Lt. Hansen. Lt. Hansen provided some insights. To briefly review this matter I will highlight the issues.

1) Mr. Cromwell was disabled, wheelchair bound and in severe pain.
2) Medical staff reportedly viewed him as a pill-seeking nuisance.
3) Lt. Hansen stated that Cromwell was a known narcotics abuser and implied this apparently was a factor in his death.
4) Cromwell was reportedly given an injection of Toridol about 15-30 minutes prior to collapse, but was reportedly not kept under observation in the medical unit per standard of care.
5) Nurse Broadwater per CO IV Evans was present on the unit, but refused to give aide after being notified of Cromwell's collapse by inmates.
6) Officer Botco provided chest compressions, but no breathing assistance. Lt. Hansen states this is policy

1

until medical staff arrive.

7) Boteo refused to allow inmates to assist. Lt. Hansen states this is also per policy. (I did not tell Lt. Hansen that the inmate(s) were red cross certified).

8) Narcan was not administered. Lt. Hansen states Narcan is optional. (If Cromwell was known to staff to be a Narcotics user, it was not optional in my opinion).

9) I made the point that it is security/medical staff's obligation to prevent/protect Cromwell from Narcotics abuse. Lt. Hansen refuted, stating words to the effect that I would lose on this issue as precedent is that staff cannot supervise one inmate 24 hours a day. (I did not argue this point, however, I will research case law to verify. I am skeptical). ADA applies.

10) I made the point that if my argument in the ninth Cir. prevails and a criminal Investigation of contempt of Business License verifies guilt on the part of Corizon/ADC/Fraudulent Scheme, every inmate death since Corizon signed the contract is a felony murder.

11) Lt. Hansen indicated that I seem to have things moving in this matter. He wondered what I needed SSU for. I indicated that I believe Criminal Investigations Unit, et al. are overlooking staff misconduct. I want a criminal investigation as anti-semitism on the part of Boteo, Broadwater and Kidd, et al. has not been investigated. Their peers need to be questioned as well as their computer activities need to be examined.

2.

12) My civil attorney, Scott Dosek met with me today at Manzanita visitation room. We agree on what is required in this matter.

Betrayal of Clients by Counsel for Plaintiffs—
Per Model Code, ER 1.3, diligence, counsel for plaintiffs in 2:12cv601-ROS in my opinion has betrayed their own clients. By wantonly abandoning pursuit of this matter and obstructing my efforts to obtain justice for Mr. Cromwell and all inmates, counsel for plaintiffs appears to connive with ADC/Corizon, overlooking staff misconduct. This is unconscionable and worthy of sanctions. Mr. Dosek is admitted to practice before the 9th Cir. and the U.S. Supreme Ct. We will be discussing this in future meetings.

— In my opinion, it is the best interests of all inmates and future inmates that Counsel for plaintiffs reopen the investigation of Mr. Cromwell's death and pursue it to its ultimate conclusion. We cannot trust that Boteo, Kidd, et al. will properly care for us. Yet they are allowed to work on this unit and Boteo mostly in HU5 where the Cromwell death occurred. Despite my objections, Manzanita administrators harbor murder suspects and expose inmates to unreasonable risk of harm. Deputy Warden Gerron stated to me that since there is no finding of wrongdoing there is nothing he

3.

can do. I view this as "deliberate indifference."

<u>When Deviation from Policy is Necessary</u>

The connivance in this matter by CIU, ADC & SSU is this. Policies are guidelines. (an overall plan, principle or guideline; Merriam-Webster <u>Dictionary of Law</u>, 2011). When circumstances require it, deviation is necessary. The bottom line is this... When Broadwater refused to aide, Boteo should have deviated from policy and provided Cromwell with breathing assistance or let inmates assist as it was reportedly obvious to lay persons Cromwell was not breathing. He should have also told inmates to get the defibrilator. In short, Boteo manifested poor judgment for the circumstances. He followed policy to the letter, which I allege, along with Broadwater's criminal negligence murdered Cromwell. He should also have obtained Narcan from medical given Cromwell's reported history of narcotic abuse, apparently known to staff.

<u>Homicide, No Matter How You Slice it</u>

I assert, in my informed/educated opinion, Cromwell's death was a homicide by any definition. At best, negligent homicide is implicated. At worst, 2nd degree murder is implicated. Broadwater, Boteo, Colsten and Kidd (supervisor of Broadwater), in my mind are suspects until I am satisfied they are not. Hate crime has not been ruled out. A criminal investigation by an independent law enforcement agency is justified.

4

I would like it to be known, I would pursue any other inmate's death as vigilantly as I have Cromwell's if asked. We cannot rely on Counsel for Plaintiffs to do due diligence on these matters. How many times have we been betrayed? I shudder at the thought!

Please reopen the investigation of Mr. Cromwell's death. It's the least you can do!

*Michael J. Cohn, Ed.D.*

Dr. Michael J. Cohn
Advocacy/Education/Expert Witness

CC: Judge Silver
    Attorney General
    Richard Pratt
    Scott Dosek

6

Cohn #288721                                          1/15/19

Addendum to Supplement #4, Death of Cromwell.
Additional thoughts on Cromwell's reported narcotic use/abuse

It seems that ADC/CIV are intent on blaming the victim in this matter rather than taking responsibility for staff misconduct. I allege "malpractice" if not "deliberate indifference" on the part of Corizon. Knowing Cromwell had severe pain, was he sent to a pain clinic for management by epidurals or other alternatives to pain medication? According to NP Salas, Corizon opts for pain meds rather than alternatives/non-medical interventions. I have asked for physical therapy myself and been denied more than once. Did utilization management ever review his case? Was his case brought to the CQI committee for review? If not, why not? If so, was there adequate follow-up? Was he counseled on narcotic use? Was his pain medicine dose adjusted? If so, how many times? Was he at the maximum dosage? These are all questions for a criminal investigation.

I respectfully remind your office that I had certification in the treatment of substance use disorders (& cerpiral) by the American Psychological association. I am qualified in all respects to address these points by knowledge, trainin and experience.

Michael J. Cohn, Ed.D.
Dr. Michael J. Cohn
Advocacy/Education/Expert Witness

AUTHORITY
Mushlin, M. The Rights of Prisoners, chapter on "Medical Care"
West, 5th Ed. 2018.                    5

Addendum #2  Death of Cromwell
Failure to Protect

The question of whether or not ADC/Corizon had a duty to protect Cromwell from injuring himself by narcotic abuse is at issue. Staff reportedly knew of his narcotic use. (Addendum I). "Possible Deliberate indifference" was found in such a case contradicting Lt. Hansen's belief that ADC is not liable for such protection. (Thompson v. Upshur County, Texas, 245 F.3d 447, 458-459, (5th Cir. 2001).

The lack of prison drug addiction treatment program is unconstitutional per Palmigiano v. Garrahy, 443 F. Supp at 971-973. Similarly, the failure to provide drug and alcohol treatment "contributes to the totality of conditions which make degeneration probable and self-improvement unlikely." Ramos v. Lamm, 485 F. Supp. 122, 146 (D. Colo. 1980) aff'd in part, vacated in part on other grounds 639 F.2d 559 (10th Cir. 1980). Was Cromwell provided a drug treatment program? Unlikely, in my opinion. In fact, prison officials could have required Cromwell participate in drug treatment. Ross v. Keelings, 2 F. Supp. 2d 810, 815-20 (E.D. Va 1998).

Per the Americans with Disabilities Act Title II, I allege Cromwell had a right to drug treatment as an equivalent program or service to those available in the community. ARS§ 41-1492 et seq. "Disability." (Disparate treatment, Disparate Impact. Briefly, ADC/Corizon had a "duty to treat/protect" an inmate who was reportedly a known drug user/abuser.

Michael J. Cohn, Ed.D.
Dr. Michael J. Cohn

# ARIZONA DEPARTMENT OF CORRECTIONS

## Inmate Grievance Appeal

| | |
|---|---|
| The inmate may appeal the Warden's, Deputy Warden's or Administrator's decision to the Director by requesting the appeal on this form. | Please type or print in black or blue ink. (To be completed by staff member initially receiving appeal) <br> Received By: Saenz, S <br> Title: COIII <br> Badge #: 5637 <br> Date: (mm/dd/yyyy) 12-5-18 |

**Please Print**

INMATE'S NAME (Last, First M.I.) (please print): Cohn, Michael J.
ADC NUMBER: 288721
DATE (mm/dd/yyyy): 12/5/18

INSTITUTION: Tucson - Manzanita
CASE NUMBER: C14-170-018

TO: Tucson Complex Warden Roberts

I am appealing the decision of D.W. Geiron for the following reasons:

I dispute, with respect, everything stated in the Inmate grievance response. One need not have first hand knowledge of a crime to investigate and establish enough evidence that a crime was probably committed. This is what police do after a robbery, etc. I am qualified as a former Forensic examiner. I have much more evidence than likely was obtained. If D.W. is sincere about concerns for staff misconduct then invite the County Sheriff to investigate independently. I have notified the Judge in Parsons v. Ryan, the Attorney General and our Lawyers. I suggest due diligence by ADC. I am not an authority. Authorities need to investigate.

INMATE'S SIGNATURE: M. J. Cohn
DATE: 12/5/18
GRIEVANCE COORDINATOR'S SIGNATURE: [signature]
DATE: 12/13/18

RESPONSE TO INMATE BY: 
LOCATION: 

STAFF SIGNATURE:
DATE (mm/dd/yyyy):

DISTRIBUTION: INITIAL: White & Canary – Grievance Coordinator
Pink – Inmate
FINAL: White – Inmate
Canary – Grievance File

802-3
12/12/13

# ARIZONA DEPARTMENT OF CORRECTIONS

## Inmate Grievance – GF Supplement

| Inmate Name *(Last, First M.I.)* | ADC Number | Institution/Facility | Case Number |
|---|---|---|---|
| Cohn, Michael | 288721 | ASPC-T-Manzanita | C14-170-018 |

**Summarization of complaint:** You allege that staff (Corizon Broadwater, ADON Kidd, COII Botello and COIII Colston) were negligent in their duties that contributed to the death of a former inmate assigned to Manzanita. You further allege that this was a result of a hate crime because the victim was Jewish.

**Description of investigation:** Policy review, inmate file review.

**Summary of findings:** As the administrator of the Manzanita unit, it is my duty to ensure that all protocols are followed after any significant event, particularly one that ends in the death of an inmate. I have read the allegations listed in your grievance. These allegations are all based on hearsay as you were not assigned to the Manzanita unit and could not have had any firsthand knowledge of this inmate or incident. The Department and I take all allegations of staff misconduct seriously. Based on my knowledge of this incident and known details of the investigation, there is nothing that would be considered suspicious concerning this inmate's death. D.O. 711 was followed and CIU provided all information available to conduct a proper investigation.

**Decision/ Rationale:** This matter is considered resolved. If this solution is not acceptable to you, you have five working days to submit a grievance appeal on this matter.

| Signature | Date |
|---|---|
| *[signed]* | 12/04/18 |

INITIAL DISTRIBUTION – Committee Recommendation – All copies to Grievance Advisory Committee
FINAL DISTRIBUTION - White and Pink – Inmate, Canary – Grievance File

INITIAL DISTRIBUTION – GF Supplement – White and Canary – Grievance Coordinator, Pink – Inmate
FINAL DISTRIBUTION – White – Inmate, Canary – Grievance File

802-7P
2/14/00



# ARIZONA DEPARTMENT OF CORRECTIONS

## Inmate Grievance

| RECEIVED BY | Saenz, S |
|---|---|
| TITLE | CoIII |
| BADGE NUMBER | DATE (mm/dd/yyyy) |
| 5637 | 11-21-18 |

*Note: You may appeal the Grievance Coordinator's decision to the Warden/Deputy Warden/Administrator by filing form 802-3, within 10 calendar days of receipt of this notice*

| INMATE NAME (Last, First M.I.) (Please print) | ADC NUMBER | DATE (mm/dd/yyyy) |
|---|---|---|
| Cohn, Michael J. | 288721 | 11/21/18 |

INSTITUTION/FACILITY: Tucson/Manzanita 3A34   CASE NUMBER: C14-170-018

TO: GRIEVANCE COORDINATOR

**Description of Grievance** (To be completed by the Inmate): Informal complaint resolution Response is insufficient as it fails to address the harboring of alleged staff homicide suspects in their current position on this unit. This exposes inmates to an unreasonable risk of future harm violating their 8th Amdt. U.S. Const Rights to freedom from cruel & unusual punishment, Helling v. McKinney 509 US at 33 (1993). Also, it is reasonable for inmates aware of the Cromwell incident to be suspicious and fearful of the staff members, creating a culture of suspicion by unit administration. This has the potential to interfere with the smooth operation/function of the unit.

**Proposed Resolution** (What informal attempts have been made to resolve the problem? What action(s) would resolve the problem?)

1) Suspend the staff members allegedly suspected of homicide pending criminal investigation.
2) If personnel policies preclude suspension, please reassign the alleged staff members to other units.

| INMATE'S SIGNATURE | DATE (mm/dd/yyyy) | GRIEVANCE COORDINATOR'S | DATE (mm/dd/yyyy) |
|---|---|---|---|
| | | K. E__ | 11/26/18 |

Action taken by _____   Documentation of Resolution or Attempts at Resolution.

| STAFF MEMBER'S SIGNATURE | BADGE NUMBER | DATE (mm/dd/yyyy) |
|---|---|---|

DISTRIBUTION: INITIAL: White and Canary or Copies – Grievance Coordinator; Pink or Copy - Inmate
FINAL: White – Inmate; Canary – Grievance File

802-1
12/12/13

# ARIZONA DEPARTMENT OF CORRECTIONS

## Inmate Informal Complaint Response

**For Distribution:** Copy of Corresponding Inmate Informal Complaint Resolution must be attached to this response.

| Inmate Name (Last, First M.I.) | ADC Number |
|---|---|
| COHN, MICHAEL J. | 288721 |

Institution/Unit

ASPC/T/Manzanita

| From | Location |
|---|---|
| COIII SAENZ | HU03 A03L |

I received your Inmate Informal Complaint Resolution regarding an alleged homicide & your complaint against staff members. I have forwarded your complaint my supervisor. The results of the review of the complaint & staff members will remain confidential and you will not be advised if any action is taken. End of repsonse.

**Staff Signature** [signature]

**Date** 11-21-18

Distribution: Original - Inmate
Copy – Grievance Coordinator File

802-12(e)
12/19/12



# ARIZONA DEPARTMENT OF CORRECTIONS
## Inmate Informal Complaint Resolution

*Complaints are limited to one page and one issue. Please print all information.*

| INMATE NAME (Last, First M.I.) (Please print) | ADC NUMBER | INSTITUTION/UNIT 3A3 2 | DATE (mm/dd/yyyy) |
|---|---|---|---|
| Cohn, Michael J. | 288721 | TUCSON/MANZANITA | 11/7/18 |

| TO CO II Saenz - Please note: This document may be evidence in court. | LOCATION HU3 |
|---|---|

**State briefly but completely the problem on which you desire assistance. Provide as many details as possible.**

Issue: alleged homicide of inmate Sean Cromwell, a Jewish Inmate. Per the Administrative Procedures Act 5 USC §706, Inmates suffering legal wrong because of agency action or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof (5th, 8th and 14th Amdts. US Const.; comparable state Const. article ARS §13-1101-1105. I allege the following persons are parties to homicide C.O. II Botello, Nurse Broadwater, CO III Colsten, ADOW Kidd.

    Facts as reported to me

Per CO IV Evans who was present on the day in question, CO III Colsten told her that a nurse (Broadwater reportedly) was present on the unit when Cromwell was impaired. Inmates reportedly told Broadwater that Cromwell was impaired, but she refused to check on him (criminal negligence), wantonly disregarding risk. CO II Botello went to check on Cromwell, started chest compressions, but no mouth to mouth or defibrillator per policy/training as he should (Sgt. Nrero 11/5/18). It was obvious to lay persons Cromwell had stopped breathing. CO III Colsten arrived some minutes later & began mouth-mouth. She did not defibrillate as she should per policy/training (id). Per Nrero - annual CPR/defibrillator training.

    Criminal Implications, alleged (law enforcement notified)

1) 1st Degree murder (hate crime with intent to neglect a Jewish inmate.
2) Negligent homicide/manslaughter - Wanton disregard for risk. Failure to implement resuscitation efforts properly per training. 3) Criminal
4) Negligence - Felony murder does not require intent to kill. Negligence by supervisor ADOW Kidd to adequately supervise/train Broadwater.

    Requested Remedies

1) Suspension of the above parties pending criminal investigation.
2) Criminal investigation by outside/independent law enforcement agency.

| INMATE SIGNATURE M. J. Cohn | DATE (mm/dd/yyyy) 11/7/18 |
|---|---|

Any evidence of retaliation against me will be reported to authorities.

| Have you discussed this with institution staff? ☑ Yes ☐ No | Received 11-9-18 Saenz |
|---|---|
| If yes, give the staff member name: CO IV Evans | |

Distribution: INITIAL: White and Canary - Inmate
FINAL: White – Inmate; Canary – Grievance Coordinator File

802-11
6/25/14