THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE **CJULS.4**
(Rule Number/Section)

Michael J. Cohn #288721
ASPC Tucson/Manzanita 3A3L
P.O. Box 24401
Tucson, AZ 85734-4401

☑ FILED ___ LODGED
___ RECEIVED ___ COPY
JAN 31 2019
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT, ARIZONA

| Parsons, et al. | Ninth Cir. 18-17351 |
| v. | D.C., 2:12CV601-ROS |
| Ryan, et al. | Motion for maintaining 75% compliance standard in the |
| v. | first year of new contract |
| Cohn, Pro Se | Hon. Roslyn O. Silver |

I, Michael J. Cohn, class plaintiff, advocate, appellant in the above named case, respectfully request that this honorable court maintain the 75% compliance standard at least for the first year of the new contract.

¶ I am skeptical that counsel for plaintiffs will insist on such a standard, preferring to give Centurion of AZ., the reported new medical care vendor, a more lenient standard. Any new contractor is walking into this situation with its eyes wide open as to the non-compliance of Corizon.

¶ It is in the best interests of the class that there be no gap in the provision of care or lessening of standards. It was reported in an editorial by the American Friends Service Committee last spring that any company being considered has an equally bad track record to Corizon's. —attached. I had a chance to look at Centurion's website along with its associates, MHM, Inc. & Centene, Inc., two managed care companies in our library on 1/28/19. Talking points included full staffing and a state of the art electronic medical records system. I am skeptical.
↓ my terms

Transition concerns.

It would not surprise me if Corizon obstructs the transition

1

to a new vendor. I understand Corizon owns the EOmis medical records software. When and how will the transition to Centurion's system take place? How will data loss be prevented. Should Corizon make hard copies of all charts as backups? Is there a backup in the cloud that can be retrieved by Centurion? How will the pharmacy transition occur? Will there be a gap in patients getting their meds. How will this be managed? I expect we will be told there will be glitches and we should be patient. We should not be patient, in my opinion. We should expect competence. Back to medical records. How long will Corizon keep electronic backups of our records? Can we request to have our records deleted from Corizon's system? If not, why not? Wouldn't this be a HIPAA violation? Will we be getting HIPAA and Patient Rights forms to review and sign? If not, why not? Will we be able to view business licenses and medical staff licenses? If not, why not? Most of us are taxpayers as we pay taxes on our commissary purchases. We have a right to know our caregivers are legitimate. Why should we trust any vendor to ensure this?

    I expect the response I would get to the above from counsel for plaintiffs would be that the above issues are in the contracts. Until I see the contracts for myself and review them through the lenses of a healthcare administrator and jailhouse lawyer, I have no reason to trust counsel for plaintiffs anymore than ADC, et al. Corizon hasn't met its contractual obligations, so why would they now?

    Your honor, please forgive my rant. ADC always excludes an important part of contractual agreements. They do not seek input from their wards. Our only options are to

2

write counsel for plaintiffs or the courts to express our concerns. As counsel for plaintiffs often responds with form letters, our best option is to write the court.
— The ultimate issue is this... start with high standards that lead to improved performance. There is no reason/excuse a company in 11 states with 30 years experience in correctional healthcare can give that would justify a lesser standard.

Respectfully submitted,                Date: 1/28/19

*Michael J. Cohn, Ed.D.*

Dr. Michael J. Cohn
Advocacy / Education / Expert Witness
Service

Original mailed to:   on: 1/29/19
Clerk of the U.S. Dist. Ct.
401 W. Washington #130 - SPC-1
Phoenix, AZ 85007

Copies to:    on: 1/28/19

Clerk of the Ninth Cir. Ct. of Appeals          Prison Law Ofc
P.O. Box 193939                                  General Delivery
San Francisco, CA 94119                          San Quentin, CA 94964

Attorney General
1275 W. Washington
Phoenix, AZ 85007

3

# Federal sanctions alone won't fix prison health care

*APP 6/23/18*



**Your Turn**
Tiera Rainey
Guest columnist

In an unprecedented ruling on Friday, U.S. Magistrate Judge David Duncan handed down $1.4 million in federal sanctions against the Arizona Department of Corrections and its director, Chuck Ryan.

The agency and Ryan were found to be in contempt of court for failing to ensure that ADC's current for-profit contractor of health-care services, Corizon Health Inc., is providing adequate care to more than 34,000 state prisoners.

We applaud Judge Duncan for finally holding Ryan and Corizon accountable for the cruel and inhumane mistreatment of prisoners, which has led to needless suffering since prison health care was privatized in 2011. However, sanctions alone will not fix this broken system.

The sanctions imposed by Judge Duncan are the result of ADC's years-long legal battle with the American Civil Liberties Union and the class-action suit it filed against Ryan and ADC in 2012. The *Parsons vs. Ryan* case spotlighted ADC's systemic neglect, high death tolls, and overuse of solitary confinement. ADC reached a settlement with the ACLU in 2015 in which it agreed to not only improve its health-care system, but also required ADC and Corizon to meet 100 health-care performance measures.

When the ACLU brought Ryan and ADC back to court in October 2017, it provided overwhelming evidence of continued negligence by Corizon. The ACLU's witnesses, collected testimonies, and ADC's internal documents showed that health-care units remain understaffed, and prisoners are routinely denied access to essential services and medications, as well as to timely medical referrals. The sanctions are the first real consequences that ADC has faced after years of broken promises to change and improve its system.

Admittedly, ADC-managed health care has always been problematic. But its underlying shortcomings have only worsened with privatized care, which ADC began outsourcing in 2012.

That year, Wexford Health Sources took over ADC's health care, only to have its $349 million contract canceled after a wave of negative press, including a story about a Wexford nurse creating a Hepatitis-C scare after reusing needles on prisoners.

As we at American Friends Service Committee-Arizona documented in our report, *Death Yards: Continuing Problems with Arizona's Correctional Health-care*, ADC recorded a combined 37 prisoner deaths in 2011 and 2012. When Corizon took over for Wexford in 2013, ADC reported 50 prisoner deaths within Corizon's first eight months on the job.

While hefty sanctions are a symbolic – and welcome – punishment for ADC's negligence and callous disregard for the people it incarcerates, fines are likely to have an adverse effect on prisoners and their families, through higher service fees for phone calls and commissary, and/or larger cuts to programming and re-entry assistance. More importantly, the sanctions imposed by Judge Duncan do not require ADC to take meaningful actions to address the drivers of its ongoing health-care crises.

Despite the looming sanctions, ADC renewed Corizon's contract in May for another year and *increased* Corizon's per diem rate by 20 percent, which was rubber-stamped by a joint legislative budget committee earlier this week. ADC has also released a new RFP for a three-year health-care contract to begin in 2019, further perpetuating this vicious cycle by taking bids from companies with equally bad track records who hope to profit off Ryan's malfeasance.

Rather than look for innovative, people-first solutions that could include working with local, public hospitals and universities, ADC chooses more of the same: providing inadequate care to some of our state's most vulnerable.

Judge Duncan's sanctions are themselves an urgent call for change, but apathy is proving to be ADC's only response.

*Tiera Rainey is a project coordinator for American Friends Service Committee-Arizona, which works to reduce the size and scope of the criminal punishment system. Reach her at trainey@afsc.org; on Twitter, @tbiz30.*

---

(ISSN 0892-8711) · (USPS 030-920) · Vol. 129, No. 38

Merchandise or service advertised in *The Republic* is expected to be accurately described and readily available at the advertised prices. Deceptive or misleading advertising is never knowingly accepted. Complaints regarding advertising should be directed in writing to *The Arizona Republic*, Advertising Department, or the Better Business Bureau, 4428 N. 12th St., Phoenix, AZ 85014.

Letters to the editor, opinion columns and articles submitted to *The Arizona Republic* may be published or distributed in print, electronic or other forms. For more information, call us at 602-444-8499.

**ARIZONA REPUBLIC**
**REPUBLIC** MEDIA

Published daily by Phoenix Newspapers Inc. 200 E. Van Buren St., Phoenix, AZ 85004 or P.O. Box 1950, Phoenix, AZ 85001. Phone 602-444-8000.
Periodicals Postage Paid in Phoenix AZ 85026.
**Member:** Alliance for Audited Media
**Postmaster:** Send address changes to The Arizona Republic, P.O. Box 1950, Phoenix, AZ 85001.

Executive Editor, **Greg Burton**
602-444-8797, greg.burton@azcentral.com
Regional President, Advertising, **Anthony Bratti**
602-444-8701, anthony.bratti@gannett.com
Editorial Page Editor, **Phil Boas**
602-444-8292, phil.boas@arizonarepublic.com
Community Relations Director, **Stacy Sullivan**
602-444-8749, stacy.sullivan@arizonarepublic.com
Senior News Director, **Josh Susong**
602-444-8299, josh.susong@arizonarepublic.com