Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED BELOW]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED BELOW]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-ROS |
| Plaintiffs, | **DECLARATION OF AMY FETTIG** |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

143387830.1

I, AMY FETTIG, declare:

1.     I am an attorney licensed to practice in the District of Columbia and admitted to this court *pro hac vice*.  I am the Deputy Director of the ACLU National Prison Project and an attorney of record to the plaintiff class in this litigation.  If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge.

2.     In response to the issue of astronomically high refusal rates for out-of-cell-time reported in Defendants' compliance data for the max custody performance measures (MCPM) set forth under the Stipulation, Plaintiffs advocated certain monitoring requirements, such as requiring contemporaneous signatures by officers when prisoners refuse out-of-cell time and requiring that either the prisoner refusing out-of-cell time or a second staff member should sign the Comments section on the back of the out-of-cell tracking form to verify the refusal.  The Court approved language around the methodology required for monitoring refusals for the MCPM that is included in the *Max Custody Monitor Guide Duties & Responsibilities* ("Monitoring Guide"), July 2017.

3.     In March and April 2017 the Court held hearings on Defendants' monitoring methodology for the performance measures under the Stipulation, including the MCPM. Following these hearings, negotiations between the parties, and discussion with the Court, the *Max Custody Monitor Guide Duties & Responsibilities* ("Monitoring Guide") was finalized in July 2017.  Defendants provided Plaintiffs with the final monitoring guide on September 26, 2017.  I attach hereto as **Exhibit 1** a true and correct copy of the *Max Custody Monitor Guide Duties and Responsibilities*, July 2017.

4.     I attach hereto as **Exhibit 2** a true and correct copy of the Notice of Substantial Non-Compliance, January 15, 2019 (Florence Kasson and Lewis Rast, MCPM ## 1-2, 5-6, and 8).

5.     I attach hereto as **Exhibit 3** a true and correct copy of the Notice of Substantial Non-Compliance, February 1, 2019 (Eyman SMU-I and Browning, MCPM ##1-2, 5-6, and 8).

143387830.1

7.      I attach hereto as **Exhibit 4** a true and correct copy of the Letter from T. Bojanowski to C. Kenrick, dated January 17, 2019.

9.      I attach hereto as **Exhibit 5** a true and correct copy of the Declaration of Maurice Soto, dated January 25, 2019.

10.     I attach hereto as **Exhibit 6** a true and correct copy of the Declaration of William Hartless, dated January 25, 2019.

11.     I attach hereto as **Exhibit 7** a true and correct copy of the Declaration of Mack Gordnattaz, dated January 25, 2019.

12.     I attach hereto as **Exhibit 8** a true and correct copy of the Declaration of Kyle Drattlo, dated January 25, 2019.

13.     I attach hereto as **Exhibit 9** a true and correct copy of the Declaration of Vinson Johnson, dated January 25, 2019.

14.     I attach hereto as **Exhibit 10** a true and correct copy of the Declaration of Juan Chavez, dated January 25, 2019.

15.     I attach hereto as **Exhibit 11** a true and correct copy of Victor Lizardi, dated January 25, 2019.

16.     I attach hereto as **Exhibit 12** a true and correct copy of the Declaration of Jesus Ceja, dated January 25, 2019.

17.     I attach hereto as **Exhibit 13** a true and correct copy of the Declaration of Yerco Arrvayo, dated January 25, 2019.

18.  I attach hereto as **Exhibit 14** a true and correct copy of the Declaration of Tania Amarillas Diaz, dated January 30, 2019, attesting to the translation of the Declaration of Yerco Arrvayo from Spanish to English.

19.     I attach hereto as **Exhibit 15** a true and correct copy of the Declaration of Tyler Rangel, dated December 14, 2018.

20.     I attach hereto as **Exhibit 16** a true and correct copy of the Declaration of Sergio Rodriguez, dated December 28, 2018.

1     21.    I attach hereto as **Exhibit 17** a true and correct copy of the Declaration of

2   Jesus Guzman, dated January 25, 2019.

3     22.    I attach hereto as **Exhibit 18** a true and correct copy of the Declaration of

4   Quinton Hollis, dated January 25, 2019.

5     23.    I attach hereto as **Exhibit 19** a true and correct copy of the Declaration of

6   John Romero, dated December 23, 2018.

7     24.    I attach hereto as **Exhibit 20** a true and correct copy of the Declaration of

8   Miguel Berroteran, dated January 25, 2019.

9     25.    I attach hereto as **Exhibit 21** a true and correct copy of the Declaration of

10   Timothy Monk, dated December 18, 2018.

11     26.    I attach hereto as **Exhibit 22** a true and correct copy of the Declaration of

12   Marc Fasano, dated December 14, 2018.

13     27.    I attach hereto as **Exhibit 23** a true and correct copy of the Declaration of

14   Refugio Cruz, dated December 18, 2018.

15     28.    Prisoners in maximum custody units in the Arizona Department of

16   Corrections may not necessarily have access to alarm clocks either due to property

17   restrictions or lack of personal funds to purchase such items.

18

19     I declare under penalty of perjury that the foregoing is true and correct.

20     Executed this 22nd day of February, 2019, in Washington, D.C.

21

22                                             s/Amy Fettig

23

24

25

26

27

28

**ADDITIONAL COUNSEL:**

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Victoria Lopez (Ill. 6275388)*
Ryan Matthew Kendall (Calif. 324714)*
**ACLU NATIONAL PRISON
PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:    dfathi@aclu.org
            afettig@aclu.org
            vlopez@aclu.org
            rkendall@aclu.org

*Admitted *pro hac vice*. Not admitted
 in DC; practice limited to federal
 courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:    dbarr@perkinscoie.com
            agerlicher@perkinscoie.com
            jhgray@perkinscoie.com

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF
ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:    kbrody@acluaz.org

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:    dspecter@prisonlaw.com
            ahardy@prisonlaw.com
            snorman@prisonlaw.com
            ckendrick@prisonlaw.com
            rlomio@prisonlaw.com

*Admitted *pro hac vice*

Caroline Mitchell (Cal. 143124)*
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5712
Email:    cnmitchell@jonesday.com

*Admitted *pro hac vice*

John Laurens Wilkes (Tex. 24053548)*
**JONES DAY**
717 Texas Street
Houston, Texas 77002
Telephone: (832) 239-3939
Email:    jlwilkes@jonesday.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez;
Christina Verduzco; Jackie Thomas;
Jeremy Smith; Robert Gamez; Maryanne
Chisholm; Desiree Licci; Joseph Hefner;
Joshua Polson; and Charlotte Wells, on
behalf of themselves and all others
similarly situated*

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR
DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email:    skader@azdisabilitylaw.org
             adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR
DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
   rdalyrooney@azdisabilitylaw.org
        jrico@azdisabilitylaw.org
        mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability
Law*

1

## **CERTIFICATE OF SERVICE**

2   I hereby certify that on February 22, 2019, I electronically transmitted the above

3 document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4 Notice of Electronic Filing to the following CM/ECF registrants:

5

6   Michael E. Gottfried
Lucy M. Rand

7   Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov

8   Lucy.Rand@azag.gov

9   Daniel P. Struck
Rachel Love

10   Timothy J. Bojanowski
Nicholas D. Acedo

11   Ashlee B. Hesman
Jacob B. Lee

12   Timothy M. Ray
Richard M. Valenti

13   Jamie D. Guzman
STRUCK LOVE BOJANOWSKI & ACEDO, PLC

14   dstruck@strucklove.com
rlove@strucklove.com

15   tbojanowski@strucklove.com
nacedo@strucklove.com

16   ahesman@strucklove.com
jlee@strucklove.com

17   tray@strucklove.com
rvalenti@strucklove.com

18   jguzman@strucklove.com

19   *Attorneys for Defendants*

20
   s/ D. Freouf

21

22

23

24

25

26

27

28

## INDEX OF EXHIBITS
## TO DECLARATION OF AMY FETTIG

**Exhibit 1**   A true and correct copy of the *Max Custody Monitor Guide Duties and Responsibilities*, July 2017

**Exhibit 2**   A true and correct copy of the Notice of Substantial Non-Compliance, January 15, 2019 (Florence Kasson and Lewis Rast, MCPM ## 1-2, 5-6, and 8)

**Exhibit 3**   A true and correct copy of the Notice of Substantial Non-Compliance, February 1, 2019 (Eyman SMU-I and Browning, MCPM ##1-2, 5-6, and 8)

**Exhibit 4**   A true and correct copy of the Letter from T. Bojanowski to C. Kenrick, dated January 17, 2019

**Exhibit 5**   A true and correct copy of the Declaration of Maurice Soto, dated January 25, 2019

**Exhibit 6**   A true and correct copy of the Declaration of William Hartless, dated January 25, 2019

**Exhibit 7**   A true and correct copy of the Declaration of Mack Gordnattaz, dated January 25, 2019

**Exhibit 8**   A true and correct copy of the Declaration of Kyle Drattlo, dated January 25, 2019

**Exhibit 9**   A true and correct copy of the Declaration of Vinson Johnson, dated January 25, 2019

**Exhibit 10**   A true and correct copy of the Declaration of Juan Chavez, dated January 25, 2019

**Exhibit 11**   A true and correct copy of Victor Lizardi, dated January 25, 2019

**Exhibit 12**   A true and correct copy of the Declaration of Jesus Ceja, dated January 25, 2019

**Exhibit 13**   A true and correct copy of the Declaration of Yerco Arrvayo, dated January 25, 2019

**Exhibit 14**    A true and correct copy of the Declaration of Tania Amarillas Diaz, dated January 30, 2019, attesting to the translation of the Declaration of Yerco Arrvayo from Spanish to English

**Exhibit 15**    A true and correct copy of the Declaration of Tyler Rangel, dated December 14, 2018

**Exhibit 16**    A true and correct copy of the Declaration of Sergio Rodriguez, dated December 28, 2018

**Exhibit 17**    A true and correct copy of the Declaration of Jesus Guzman, dated January 25, 2019

**Exhibit 18**    A true and correct copy of the Declaration of Quinton Hollis, dated January 25, 2019

**Exhibit 19**    A true and correct copy of the Declaration of John Romero, dated December 23, 2018

**Exhibit 20**    A true and correct copy of the Declaration of Miguel Berroteran, dated January 25, 2019

**Exhibit 21**    A true and correct copy of the Declaration of Timothy Monk, dated December 18, 2018

**Exhibit 22**    A true and correct copy of the Declaration of Marc Fasano, dated December 14, 2018

**Exhibit 23**    A true and correct copy of the Declaration of Refugio Cruz, dated December 18, 2018

# EXHIBIT 1

**PERFORMANCE MEASURES**

## ARIZONA DEPARTMENT OF CORRECTIONS

# MAX CUSTODY Monitor Guide Duties & Responsibilities

**PERFORMANCE MEASURES**

ARIZONA DEPARTMENT OF CORRECTIONS

# MAX CUSTODY Monitor Guide

July 2017
Arizona Department of Corrections
1831 W. Jefferson
Phoenix, AZ  85007
Phone 602.255.2468

**P E R F O R M A N C E   M E A S U R E S**

Max Custody Performance Measure No. 01
Stipulation Category: Max Custody (01)

**CGAR Category: Max Custody**

| |
|---|
| **Performance Measure:**<br><br>All maximum custody prisoners at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max who are eligible for participation in DI 326 are offered a minimum of 7.5 hours out-of-cell time per week.   Those at Step II are offered a minimum of 8.5 hours out-of-cell time per week, and those at Step III are offered a minimum of 9.5 hours out-of-cell time per week. |
| **CGAR Question:**<br><br>Are all maximum custody prisoners at Eyman-Browning, Eyman-SMU I, Florence-Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max who are eligible for participation in DI 326 offered a minimum of 7.5 hours out-of-cell time per week? Are those at Step II offered a minimum of 8.5 hours out-of-cell time per week, and those at Step III offered a minimum of 9.5 hours out-of-cell time per week? |
| **Source of Records/Review:**<br><br>Random number generator printout; Maximum Custody Excel Spreadsheet form/printout ("Overview"); unit count sheets; memo(s) documenting substitution of one randomly selected inmate for another inmate; Max Custody and/or (SMI) Mental Health Monthly (Program) Activity Schedule(s); Maximum Custody Daily Out of Cell Time Tracking Forms for ten (10) randomly selected inmates (ADC Form #801-19); Warden's Certification(s) attesting that a particular inmate was excluded from participation in DI 326 programming and/or activities for applicable randomly selected inmate(s) (if applicable); Incident Report (IR) documenting cancellation of activity not made up on the same day (if applicable); AIMS data (if applicable); Holiday Make Up Day Memorandum (if applicable); additional Maximum Custody Daily Out of Cell Time Tracking Forms for holiday make-up programming (if applicable) (Note that if an Arizona State Holiday occurs during the monitoring week, the relevant source records and the procedure described below applies for all pertinent Max Custody Performance Measures). |
| **Methodology:**<br><br>   a.  The ADC Division Director of Offender Operations, or designee, randomly selects the week to be used for monitoring on the seventh day (rolling forward if the seventh day is a weekend or State of Arizona holiday) of the following month using a random number generator, such as random.org or other randomizing methodology.  In this way, the last week of a month shall remain eligible for monitoring even if some of the days of the |

week fall within two different months. Notice of the selected week to be monitored shall be distributed for the prior month on the seventh day of the following month (or the next State of Arizona business day thereafter if the seventh day of the month is not a business day) (e.g., the week to be monitored for January will be announced on the seventh day of February (or the next business day thereafter if the seventh of February is not a State of Arizona business day).

Monitored weeks that include a State of Arizona holiday shall be afforded an additional day during the following week to provide required programs/activities not provided on the holiday due to staffing shortage. The Warden at each designated maximum custody location shall have discretion to select the additional day in the following week to make up any required programs/activities not provided on the holiday that occurred during the monitored week.  The Warden shall author a memorandum ("Holiday Make Up Day Memorandum") designating the selected additional day in the following week that will serve to make up any required programs/activities not provided on the holiday that occurred during the monitored week at that particular maximum custody location, listing the programs/activities subject to make up.  The additional day in the following week that will serve to make up any required programs/activities not provided on the holiday that occurred during the monitored week may vary by maximum custody location, at the discretion of the particular complex Warden, based upon staffing, scheduling, and physical plant considerations unique to each maximum custody location. The Monitor shall review these Memorandum and the additional Out-of-Cell Tracking forms and/or source records to ensure that any holiday make-up programming/activities were provided.   In his/her review, the Monitor shall ensure that the make-up programming/activities are not double-counted towards compliance in the non-monitored week.

The count sheets for the unit are used to determine the pool of eligible inmates.  The total number of inmates eligible for DI 326 is then divided by ten, and every nth inmate is reviewed.  If a randomly selected inmate was not present in the unit for the full seven (7) days of the monitoring week, that inmate's records are not reviewed and the inmate either directly above or below the randomly selected inmate who was on the unit for the full seven (7) days is used.  The Maximum Custody Daily Out of Cell Time Tracking Form for the specified monitoring week is reviewed for each of the ten randomly selected inmates.

b.  At each designated location, Maximum Custody Daily Out of Cell Time Tracking Forms are reviewed for the one randomly selected week for each monitored month, for the ten (10) randomly selected inmates.  Step levels for each inmate are noted and compliance

with MC PM #1 for each inmate is determined.  Beginning and ending times for all out of cell time must be noted on the Maximum Custody Daily Out of Cell Time Tracking Form unless an inmate refuses that time offered.  In the case of a refusal, the refusal, should be recorded on the front of the Tracking Form and the amount of time refused should be documented in the "Comments" section on the back side of the individual inmate's out-of-cell tracking form. If the amount of time is not recorded in the "Comments", the Monitor must check the prisoner's Maximum Custody Daily Out of Cell Tracking Form and compare it with the Maximum Custody Activity Schedule and/or SMI Mental Health Monthly (Program) Activity Schedule (where applicable) to determine the amount of out of cell time refused and indicate that such a comparison was performed in the monitoring documentation.  If the refusal time is not properly documented or cannot be confirmed through a comparison of the unit schedules, the out-of-cell time/programming will not count towards compliance with the Performance Measure.

c.  When an inmate refuses out-of-cell time/programming, the refusal must be documented on the Out-of-Cell Tracking form and the personnel to whom the inmate stated the refusal must note the refusal and amount of time refused in the Comments section on the back of the Out of Cell Tracking form, and contemporaneously sign the same.  The beginning time of the refused out-of-cell time should be documented on the Out of Cell Tracking form with an "R" next to the beginning time indicating a refusal (end time for refused out-of-cell time is not documented on the front of the Out of Cell Tracking form). Either the inmate or a second staff member should sign the Comments section on the back of the Out of Cell Tracking form where feasible considering safety/security/operational concerns, to verify the refusal. In the event of an extended pattern of refusals or changed behavior; supervisory personnel shall have a discussion with an inmate regarding refused out-of-cell time and shall document the date and nature of the conversation in the comments section on the back of the Maximum Custody Daily Out of Cell Tracking Form, including, when provided, inmate comments as to refusal or refusals.

d.  The reviewer notes the step level for each inmate in order to determine the minimum amount of out of cell time the inmate should have been afforded during the monitoring week.  This minimum amount of time is compared against the actual amount of time recorded on each inmate's Maximum Custody Daily Out of Cell Time Tracking Form. If the required amount of time for the inmate's step level is not met, there is a finding of non-compliance for that record.

e.  If an inmate selected for this measure is designated Seriously Mentally Ill, SMI time required under MC PM #8 should not be double-counted towards compliance with this

**P E R F O R M A N C E   M E A S U R E S**

measure. However, where a SMI inmate receives hour(s) of unstructured out-of-cell time per week in excess of ten (10) hours separately required by MC PM #8, time that exceeds the MC PM #8 ten (10) hour requirement for unstructured out-of-cell time may be counted towards the minimum out-of-cell time required under this MC PM #1.

**P E R F O R M A N C E   M E A S U R E S**

Max Custody Performance Measure No. 02
Stipulation Category: Max Custody (02)

## CGAR Category: Max Custody

| Performance Measure: |
| :--- |
| All maximum custody inmates at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max who are eligible for participation in DI 326 are offered at least one hour of out-of-cell group programming a week at Step II and Step III. |

| CGAR Question: |
| :--- |
| Are all maximum custody inmates at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max who are eligible for participation in DI 326 offered at least one hour of out-of-cell group programming a week at Step II and Step III? |

| Source of Records/Review: |
| :--- |
| Max Custody and/or (SMI) Mental Health Monthly (Program) Activity Schedule(s); Maximum Custody Daily Out of Cell Time Tracking Form; Max Custody and/or (SMI) Mental Health Monthly Programming Attendance/Sign-In Sheets (containing inmate signature or the relevant AIMS data demonstrating a prisoner's attendance. |

| Methodology: |
| :--- |
| a. The records of the inmates selected for MC PM #1 are also reviewed for this performance measure.  The same week is also reviewed.<br><br>b. At each designated location, Maximum Custody Daily Out of Cell Time Tracking Forms are reviewed for the one randomly selected week for each monitored month for the ten (10) randomly selected inmates.  The Maximum Custody Daily Out of Cell Time Tracking Forms are reviewed to determine if the Step II and Step III inmates were afforded one hour of group programming during the monitoring week.  Beginning and ending times for the group programming should be noted on the Tracking Form unless the inmate refuses that time.  In the case of a refusal, the refusal should be recorded on the front of the Tracking Form and the amount of time refused should be documented in the "Comments" section on the back side of the individual inmate's Out of Cell Tracking Form. If the amount of time is not recorded in the "Comments", the Monitor |

**P E R F O R M A N C E   M E A S U R E S**

must check the inmate's Maximum Custody Daily Out of Cell Tracking Form and the Maximum Custody Activity Schedule and/or SMI Mental Health Monthly (Program) Activity Schedule (where applicable) to determine the amount of out-of-cell time/programming time refused and indicate that such a comparison was performed in the monitoring documentation.  If the refusal time is not properly documented or cannot be confirmed through a comparison of the unit schedule, the out-of-cell time/programming will not count towards compliance with the Performance Measure.

c.   When an inmate refuses out-of-cell time/programming, the refusal must be documented on the Out of Cell Tracking form and the personnel to whom the inmate stated the refusal must note the refusal and amount of time refused in the Comments section on the back of the Out of Cell Tracking form, and contemporaneously sign the same.  The beginning time of the refused out-of-cell time should be documented on the Out of Cell Tracking form with an "R" next to the beginning time indicating a refusal (end time for refused out-of-cell time is not documented on the front of the Out of Cell Tracking form). Either the inmate or a second staff member should sign the Comments section on the back of the Out of Cell Tracking form where feasible considering safety/security/operational concerns, to verify the refusal. In the event of an extended pattern of refusals or changed behavior; supervisory personnel shall have a discussion with an inmate regarding refused out-of-cell time and shall document the date and nature of the conversation in the comments section on the back of the Maximum Custody Daily Out of Cell Tracking Form, including, when provided, inmate comments as to refusal or refusals..

d.   At each designated location, Max Custody and/or (SMI) Mental Health Monthly Programming Attendance/Sign-In Sheets for Step II and III are compared against the group programming recorded in the Maximum Custody Daily Out of Cell Time Tracking Forms of the ten (10) randomly selected inmates to confirm that the inmates attended the programs indicated.  Reviewers must confirm that each selected inmate attended the group program by review of Max Custody and/or (SMI) Mental Health Monthly (Program) Activity Schedule(s); Maximum Custody Daily Out of Cell Time Tracking Form; Max Custody and/or (SMI) Mental Health Monthly Programming Attendance/Sign-In Sheets; and/or AIMS data. Failure to confirm actual attendance leads to a finding of non-compliance for that record. A determination of actual attendance may be achieved by comparison of (1) either Max Custody/Mental Health Monthly (Program) Activity Schedule(s) and/or  Maximum Custody Daily Out of Cell Time Tracking Form, and (2) either Max Custody and/or (SMI) Mental Health Monthly Programming Attendance/Sign-In Sheets and/or AIMS data or other available documentation.

**P E R F O R M A N C E   M E A S U R E S**

**Max Custody Performance Measure No. 03**
**Stipulation Category: Max Custody (03)**

**CGAR Category: Max Custody**

---

**Performance Measure:**

All out-of-cell time specified in Outcome Measures 1, 2, 8 that is limited or cancelled is properly documented and justified in accordance with the terms of the Stipulation as set forth in ¶ 26 of the Stipulation.

---

**CGAR Question:**

Is all out-of-cell time specified in Outcome Measures 1, 2, 8 that is limited or cancelled properly documented and justified in accordance with the terms of the Stipulation as set forth in ¶ 26 of the Stipulation, which requires the following:

- If such out of cell time is cancelled for legitimate operational or safety and security reasons, such as an unexpected staffing shortage, inclement weather or facility emergency lockdown, then reasonable efforts are made to make up such out of cell time at another date/time.

- If an individual's out of cell time is canceled or limited, then a Warden or his/her designee if the Warden is not available, certifies in writing that allowing that prisoner such out of cell time would pose a significant security risk.  Such certification shall expire after thirty (30) days unless renewed in writing by the Warden or his/her designee.

---

**Source of Records/Review:**

Maximum Custody Daily Out of Cell Time Tracking Forms for the ten (10) inmates randomly selected for the month, for the monitoring week; any IRs, or if no IR then other documentation generated during the monitoring week pertaining to the cancellation or limitation of out-of-cell time is reviewed; documentation of out of cell time made up is also reviewed; Holiday Make Up Day Memorandum (if applicable).

Warden Certification of individual security risk necessitating limitation or cancellation where applicable to randomly selected prisoner.

---

**Methodology:**

a. The records of the inmates selected for MC PM #1 are also reviewed for this performance measure.  The same week is also reviewed.

b.  The records of the inmates selected for MC PM #8 are also reviewed for this performance measure.  The same week is also reviewed.

c.  Any cancelled activities required by MC PM #1, #2 and #8 must be  documented in an Information Report (IR).  If out-of-cell programming or activities are cancelled but made up on the same day, an Information (IR) is not required if the time is equivalent.

d.  If there are any cancellations/limitations of out-of-cell time, it is first determined whether it was for legitimate operational or safety and security reasons, such as, but not limited to, an unexpected staffing shortage, inclement weather, or facility emergency lockdown.  The reason for any cancellation/limitation of out-of-cell time is documented in an Information Report (IR).  A reason other than for legitimate operational or safety and security reasons for cancellation requires a finding of non-compliance.  However, where there is a cancellation or limitation for any reason, and the time is made up, this shall result in a finding of compliance.  These findings are documented in the monthly Monitoring Overview for this Performance Measure.

e.  Next it is determined if reasonable steps were taken to make up the out-of-cell time and/or activity.  If no steps were taken to make up the required out-of-cell time and/or activity, the reason is documented.  If the reviewer concludes that reasonable steps could have been taken, this is the basis for a finding of non-compliance.  Insufficient time remaining at the end of a week to make up the out-of-cell time and/or activity is a basis for a finding of compliance (not for a finding of non-compliance).  These findings are documented in the monthly Monitoring Overview for this Performance Measure.

f.  If an individual inmate's required out of cell time under DI 326 is cancelled or limited and is not made up, the complex Warden, or designee, will write a Warden's Certification documenting that allowing such an inmate out-of-cell time would pose a significant security risk.  The lack of such a certification will lead to a finding of non-compliance.  The time frame for a Warden's Certification is reviewed to determine whether it is current.  Any Warden's Certification with a date further out than one calendar month is "expired" and leads to a finding of noncompliance.  The Warden's Certification and the findings of compliance/non-compliance for this measure are documented in the monthly Monitoring Overview for this Performance Measure.

**P E R F O R M A N C E   M E A S U R E S**

**Max Custody Performance Measure No. 04**

**Stipulation Category: Max Custody (04)**

**CGAR Category: Max Custody**

| |
|---|
| **Performance Measure:**<br><br>All maximum custody prisoners receive meals with the same caloric and nutritional content as meals served to other ADC prisoners. |
| **CGAR Question:**<br><br>Are all maximum custody prisoners receiving meals with the same caloric and nutritional content as meals served to other ADC prisoners? |
| **Source of Records/Review:**<br><br>Max Custody Weekly Cycle Menu (Level 5); Food Vendor Monthly Statement of Nutritional Adequacy |
| **Methodology:**<br><br>a.  At each designated location, the Max Custody Weekly Cycle Menu (Level 5)  are selected for each monitored month.<br><br>b.  The Food Vendor Monthly Statement of Nutritional Adequacy is reviewed to determine whether it certifies that maximum custody inmates are receiving meals with the same caloric and nutritional content as those in lower custody areas on a monthly basis (2700 calories for Adult Male Menus and 2200 calories for Adult Female Menus) and includes the average daily caloric level for the month.  If the Weekly Cycle Menu (Level 5) is not certified as having the same caloric and nutritional content as those in lower custody, there is a finding of non-compliance.  The memo produced by the contracted Food Vendor is uploaded into the CGAR. |

**P E R F O R M A N C E   M E A S U R E S**

Max Custody Performance Measure No. 05
Stipulation Category: Max Custody (05)

## CGAR Category: Max Custody

| Performance Measure: |
| --- |
| All maximum custody prisoners at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max are offered a minimum of 6 hours of out-of-cell exercise time a week. |

| CGAR Question: |
| --- |
| Are all maximum custody prisoners at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max offered a minimum of 6 hours of out-of-cell exercise time a week? |

| Source of Records/Review: |
| --- |
| Max Custody and/or (SMI) Mental Health Monthly (Program) Activity Schedule(s); Maximum Custody Daily Out of Cell Time Tracking Forms. |

**Methodology:**

    a.  The records of the inmates selected for MC PM #1 are also reviewed for this performance measure.  The same week is also reviewed.

    b.  At each designated location, the Maximum Custody Daily Out of Cell Time Tracking Forms are reviewed for compliance with this measure.  Each record is reviewed to determine whether each inmate was provided or offered a minimum of six hours of out-of-cell exercise/recreation during the monitoring week.  If an inmate is afforded less than 6 hours of recreation time per week this will result in a finding of non-compliance.

    c.  Beginning and ending times for all out-of-cell recreation time must be noted on the Maximum Custody Daily Out of Cell Time Tracking Form unless an inmate refuses that time offered.  In the case of a refusal, the refusal, should be recorded on the front of the Tracking Form and the amount of time refused should be documented in the "Comments" section on the back side of the individual inmate's out-of-cell tracking form. If the amount of time is not recorded in the "Comments", the Monitor must check the inmate's Maximum Custody Daily Out of Cell Tracking Form and the Maximum Custody Activity Schedule and/or SMI Mental Health Monthly (Program) Activity

Schedule (where applicable) to determine the amount of out of cell time refused and indicate that such a comparison was performed in the monitoring documentation.  If the refusal time is not properly documented or cannot be confirmed through a comparison of the unit schedule, the out-of-cell time/programming will not count towards compliance with the Performance Measure.

d.  When an inmate refuses out-of-cell time/programming, the refusal must be documented on the Out of Cell Tracking form and the personnel to whom the inmate stated the refusal must note the refusal and amount of time refused in the Comments section on the back of the Out of Cell Tracking form, and contemporaneously sign the same.  The beginning time of the refused out-of-cell time should be documented on the Out of Cell Tracking form with an "R" next to the beginning time indicating a refusal (end time for refused out-of-cell time is not documented on the front of the Out of Cell Tracking form). Either the inmate or a second staff member should sign the Comments section on the back of the Out of Cell Tracking form where feasible considering safety/security/operational concerns, to verify the refusal. In the event of an extended pattern of refusals or changed behavior; supervisory personnel shall have a discussion with an inmate regarding refused out-of-cell time and shall document the date and nature of the conversation in the comments section on the back of the Maximum Custody Daily Out of Cell Tracking Form, including, when provided, inmate comments as to refusal or refusals.

**P E R F O R M A N C E   M E A S U R E S**

**Max Custody Performance Measure No. 06**
**Stipulation Category: Max Custody (06)**

**CGAR Category: Max Custody**

---

**Performance Measure:**

All maximum custody prisoners at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max who are eligible for participation in DI 326 are offered out-of-cell time, incentives, programs and property consistent with their Step Level and housing assignment under the DI 326 policy.

---

**CGAR Question:**

Are all maximum custody prisoners at Eyman-Browning, Eyman-SMU I, Florence Central, Florence-Kasson, Perryville-Lumley Special Management Area (Yard 30), and Lewis-Rast Max who are eligible for participation in DI 326 offered out-of-cell time, incentives, programs and property consistent with their Step Level and housing assignment under the DI 326 policy?

---

**Source of Records/Review:**

Max Custody and/or (SMI) Mental Health Monthly (Program) Activity Schedule(s); Maximum Custody Daily Out of Cell Time Tracking Form; Max Custody and/or (SMI) Mental Health Monthly Programming Attendance/Sign-In Sheets (containing prisoner signature or the relevant AIMS data demonstrating a prisoner's attendance); current maximum custody property inventory forms (which may include ADC Form #909-4, Inmate Property Inventory, Form #909-5, Inmate Property Received, and Form #909-1, Inmate Property Inventory Supplement) and/or equivalent information; inmate phone system printout and/or equivalent information; inmate visitation printouts (DV01 and DV05 screens) and/or equivalent information; banking printouts (BK03 balance and transaction screens) and/or equivalent information; AIMs data.

---

**Methodology:**

a. The records of the inmates selected for MC PM #1 are also reviewed for this performance measure. The same week is also reviewed. If an inmate changes Step Levels under DI326 for the week monitored, the Step Level change is noted. A change in Step Level during the week reviewed is not a basis for a non-compliance finding if eligible incentives reasonably appear to be offered after the Step Level change, in accordance with the greater or lesser incentives available at Step Level changed to.

b. Maximum Custody Daily Out of Cell Time Tracking Forms are reviewed for each inmate to ensure access to the out-of-cell time required under DI 326. If the required out of cell time was not offered to the inmate there is a finding of noncompliance for that inmate for this

measure.

c.  Current Property Inventory Forms, or equivalent information, for the ten (10) randomly selected inmates are reviewed to identify access to allowable property consistent with the inmate's Step Level under DI 326 for each monitored month.  If an inmate does not have access to property consistent with his/her Step Level due to the actions of ADC, then there is a finding of non-compliance for that inmate for this measure.

d.  Prisoner telephone records, or equivalent information, are reviewed for the ten (10) randomly selected inmates to identify access to telephone privileges consistent with the inmate's Step Level.  If an inmate does not have access to visitation and/or telephone privileges consistent with his/her Step Level, then there is a finding of non-compliance for that inmate for this measure.

e.  Prisoner visitation records, or equivalent information, are reviewed for the ten (10) randomly selected inmates to identify access to visitation privileges consistent with the inmate's Step Level.  If an inmate does not have access to visitation and/or telephone privileges consistent with his/her Step Level, then there is a finding of non-compliance for that inmate for this measure.

f.  Inmate bank account records, or equivalent information, are reviewed for the ten (10) randomly selected inmates to identify whether each inmate has access to the weekly maximum spending amount consistent with the inmate's Incentive Phase (Step Level) amount.  If an inmate does not have access to the weekly maximum spending amount consistent with his/her Incentive Phase (Step Level) due to the actions of ADC, then there is a finding of non-compliance for that inmate for this measure.

g.  The reviewer should note the Step Level for each inmate record reviewed and determine whether the type/location of recreation recorded in the Maximum Custody Daily Out-of-Cell Time Tracking Forms is consistent with the requirements of DI 326.  For example, a Step III inmate at Eyman-SMU I should be offered six hours per week to include one-time per month in a 10 x 10 enclosure (which holds up to four inmates), one time per month in 20 x 40 basketball enclosure (which holds up to eight inmates), and one-time per month recreation/par course field.  The reviewer looks at the week monitored, but if necessary to make an accurate compliance determination, the reviewer must look at the Out-of-Cell Tracking Forms for the month to determine compliance with the requirement that each inmate is offered the appropriate type/location of recreation under DI 326.  These form(s) showing compliance with appropriate type/location of recreation will be copied, highlighted (as to type/location compliance), and inserted behind the tracking form retained for the individual inmate. Failure to offer the appropriate type/location of recreation for the week and/or month will lead to a finding of non-compliance for this measure.

h.  The location of the recreation offered or refused is recorded in the Maximum Custody Daily Out of Cell Time Tracking Form.  Beginning and ending times for all out-of-cell recreation time must be noted on the Maximum Custody Daily Out of Cell Time Tracking Form unless an inmate refuses that time offered.  In the case of a refusal, the refusal should be recorded

**P E R F O R M A N C E   M E A S U R E S**

on the front of the Tracking Form and the amount of time refused and the type/location of the recreation should be documented in the "Comments" section on the back side of the individual inmate's out-of-cell tracking form. If the amount of time and type/location are not recorded in the "Comments", the Monitor must check the prisoner's Maximum Custody Daily Out of Cell Tracking Form and the Maximum Custody Activity Schedule and/or SMI Mental Health Monthly (Program) Activity Schedule (where applicable) to determine the amount of out of cell time and the type/location of recreation refused and indicate that such a comparison was performed in the monitoring documentation. If the refusal time and type/location of recreation is not properly documented or cannot be confirmed through a comparison of the unit schedule, the out-of-cell time/programming will not count towards compliance with the Performance Measure.

i.   When an inmate refuses out-of-cell time/programming, the refusal must be documented on the Out-of-Cell Tracking form and the personnel to whom the inmate stated the refusal must note the refusal and amount of time refused in the Comments section on the back of the Out of Cell Tracking form, and sign the same contemporaneously. The beginning time of the refused out-of-cell time should be documented on the Out of Cell Tracking form with an "R" next to the beginning time indicating a refusal (end time for refused out-of-cell time is not documented on the front of the Out of Cell Tracking form). Either the inmate or a second staff member should sign the Comments section on the back of the Out of Cell Tracking form where feasible considering safety/security/operational concerns, to verify the refusal. In the event of an extended pattern of refusals or changed behavior; supervisory personnel shall have a discussion with an inmate regarding refused out-of-cell time and shall document the date and nature of the conversation in the comments section on the back of the Maximum Custody Daily Out of Cell Tracking Form, including, when provided, inmate comments as to refusal or refusals.

**PERFORMANCE MEASURES**

Max Custody Performance Measure No. 07
Stipulation Category: Max Custody (07)

**CGAR Category: Max Custody**

| |
|---|
| **Performance Measure:**<br><br>No prisoners with a mental health classification of MH3 or higher are housed in Florence Central-CB-5 or CB-7 unless the cell fronts are substantially modified to increase visibility. |

| |
|---|
| **CGAR Question:**<br><br>Are there any prisoners with a mental health classification of MH3 or higher housed in Florence Central-CB-5 or CB-7 without a cell front that has been substantially modified to increase visibility? |

| |
|---|
| **Source of Records/Review:**<br><br>Housing Assignment Log for maximum custody prisoners with mental health classification of MH-3 or higher:  The Housing Assignment Log for maximum custody prisoners with mental health classification of MH-3 or higher is reviewed for one randomly selected day of each monitored month. |

| |
|---|
| **Methodology:**<br><br>a. Pursuant to Defendants providing a declaration from Division Director Carson McWilliams attesting to the alteration of all of the CB5 and CB7 cells, Plaintiffs have agreed that Defendants no longer must monitor this MC PM.  (Letter from Fettig to Gottfried/Rand dated Oct. 4, 2016.)  Defendants have agreed to notify Plaintiffs if the cell fronts in these locations are substantially modified in the future during the life of the Stipulation (Dkt. 1185).  (*Id.*) |

**PERFORMANCE MEASURES**

Max Custody Performance Measure No. 08
Stipulation Category: Max Custody (08)

## CGAR Category: Max Custody

---

**Performance Measure:**

In addition to the general privileges and incentives afforded to prisoners under DI 326, all SMI prisoners in maximum custody receive:

- 10 hours of unstructured out-of-cell time per week
- 1 hour of additional out-of-cell mental health programming per week
- 1 hour of additional out-of-cell psycho-educational programming per week
- 1 hour of additional out-of-cell programming per week

---

**CGAR Question:**

In addition to the general privileges and incentives afforded to prisoners under DI 326, are all SMI prisoners in maximum custody, receiving:

- 10 hours of unstructured out-of-cell time per week
- 1 hour of additional out-of-cell mental health programming per week
- 1 hour of additional out-of-cell psycho-educational programming per week
- 1 hour of additional out-of-cell programming per week

---

**Source of Records/Review:**

Maximum Custody and/or (SMI) Mental Health Monthly (Program) Activity Schedule(s); Maximum Custody Daily Out of Cell Time Tracking Form; Max Custody and/or (SMI) Mental Health Monthly Programming Attendance/Sign-In Sheets (containing inmate signature or the relevant AIMS data demonstrating a prisoner's attendance); Warden's Certification(s) attesting that a particular inmate was excluded from participation in DI 326 programming and/or activities for applicable randomly selected inmate(s) (if applicable); Incident Report (IR) documenting cancellation of activity not made up on the same day (if applicable). AIMS data (if applicable); EOMIS data (if applicable).

---

**Methodology:**

a.   The same week selected for MC PM #1 is reviewed for this performance measure.

b.   At each maximum custody unit where SMI inmates are housed, the count sheets for the unit are used to determine the pool of ten (10) randomly selected records reviewed for this measure.  The total number of inmates classified as SMI is then divided by ten, and every *nth*

inmate is reviewed.  If a randomly selected inmate was not present in the unit for the full seven (7) days of the monitoring week, that inmate's records are not reviewed and the next SMI inmate either directly above or below the randomly selected SMI inmate is selected.  If no SMI inmate is listed either directly above or below the randomly selected SMI inmate, then the next SMI inmate listed in the roster who was housed in the unit for the full seven (7) days is used.  The Maximum Custody Daily Out of Cell Time Tracking Form for the specified monitoring week is reviewed for each of the ten (10) SMI inmates.

c.   The Maximum Custody Daily Out of Cell Time Tracking Forms are reviewed in order to determine compliance with MC PM ##1-2, 5-6 (DI 326), and 8 for each SMI inmate selected.  Beginning and ending times for all out of cell time must be noted on the Maximum Custody Daily Out of Cell Time Tracking Form unless an inmate refuses that time offered. In the case of a refusal, the refusal should be recorded on the front of the Tracking Form and the amount of time refused should be documented in the "Comments" section on the back side of the individual inmate's out-of-cell tracking form. If the amount of time is not recorded in the "Comments", the Monitor must check the prisoner's Maximum Custody Daily Out of Cell Tracking Form and the Maximum Custody Activity Schedule and/or SMI Mental Health Monthly (Program) Activity Schedule (where applicable) to determine the amount of out of cell time/programming refused and indicate that such a comparison was performed in the monitoring documentation.  If the refusal time is not properly documented or cannot be confirmed through a comparison of the unit schedule, the out-of-cell time/programming will not count towards compliance with the Performance Measure.

d.   When an inmate refuses out-of-cell time/programming, the refusal must be documented on the Out-of-Cell Tracking form and the personnel to whom the inmate stated the refusal must note the refusal and amount of time refused in the Comments section on the back of the Out of Cell Tracking form, and contemporaneously sign the same. The beginning time of the refused out-of-cell time should be documented on the Out of Cell Tracking form with an "R" next to the beginning time indicating a refusal (end time for refused out-of-cell time is not documented on the front of the Out of Cell Tracking form). Either the inmate or a second staff member should sign the Comments section on the back of the Out of Cell Tracking form where feasible considering safety/security/operational concerns, to verify the refusal. In the event of an extended pattern of refusals or changed behavior; supervisory personnel shall have a discussion with an inmate regarding refused out-of-cell time and shall document the date and nature of the conversation in the comments section on the back of the Maximum Custody Daily Out of Cell Tracking Form, including, when provided, inmate comments as to refusal or refusals.

e.   Max Custody and SMI/Mental Health Monthly Programming Attendance/Sign-In Sheets are reviewed for the selected SMI inmates to confirm that the inmates attended all of the programs (e.g., mental health; psychological-education; out-of-cell programming; DI 326) reflected on the Maximum Custody Daily Out of Cell Time Tracking Forms.   Any discrepancies are noted.  Reviewers must confirm that each selected inmate attended the group program by comparison of Max Custody and/or (SMI) Mental Health Monthly (Program) Activity Schedule(s); Maximum Custody Daily Out of Cell Time Tracking Form; Max Custody and/or (SMI) Mental Health Monthly Programming Attendance/Sign-In

**P E R F O R M A N C E   M E A S U R E S**

Sheets; AIMS data; and/or EOMIS data. Failure to confirm attendance leads to a finding of non-compliance for that record.  A determination of attendance may be achieved by comparison of (1) either Max Custody/Mental Health Monthly (Program) Activity Schedule(s) and/_or_  Maximum Custody Daily Out of Cell Time Tracking Form, and (2) either Max Custody and/or (SMI) Mental Health Monthly Programming Attendance/Sign-In Sheets, AIMS data; and/or EOMIS data or other available documentation. If any discrepancies regarding a determination of actual attendance cannot be reconciled that program/activity will not count towards the out-of-cell time required for compliance under this performance measure.

f.   For each of the selected SMI inmates, the Step Level is recorded, and it is determined if the basic requirements of DI 326 are met (MC PM ##1-2, 5-6). A failure to comply with any of these requirements results in a finding of non-compliance for the record.

- Determine whether each selected inmate has received the appropriate out-of-cell time, exercise, property, incentives, and programming according to his/her Step Level under DI 326 (MC PM ##1-2, 5-6).

- Determine whether Step II and III SMI inmates are receiving their one hour of group programming under DI 326 in addition to all of the SMI requirements enumerated below.

g.   For each of the selected SMI inmates determine whether the following requirements have been met. A failure to comply with any of these requirements results in a finding of non-compliance for the record.

- 10 hours of unstructured out-of-cell time during the monitoring week.

- 1 hour of mental health group programming during the monitoring week.

- 1 hour of psychological educational programming during the monitoring week.

- 1 hour of additional out-of-cell programming during the monitoring week.

**PERFORMANCE MEASURES**

Max Custody Performance Measure No. 09
Stipulation Category: Max Custody (09)

## CGAR Category: Max Custody

**Performance Measure:**

All use of force incidents involving use of pepper spray and other chemical agents on any maximum custody prisoners classified as SMI, and involving maximum custody prisoners in the following housing areas: Florence CB1 and CB4, Florence-Kasson (Wings 1 and 2); Eyman-SMU I (BMU); Perryville-Lumley SMA; Phoenix (Baker, Flamenco, and MTU); and Lewis-Rast Max (4C1 and 4C2), conform to the policies for use of force set forth in ¶ 27 (a)-(e) of the Stipulation.

**CGAR Question:**

Do all use of force incidents involving use of pepper spray and other chemical agents on any maximum custody prisoners classified as SMI, and involving maximum custody prisoners in the following housing areas (where maximum custody SMI inmates and/or maximum custody inmates with substantial mental health issues are housed): Florence-CB-1 and CB-4; Florence-Kasson (Wings 1 and 2); Eyman-SMU I (BMU); Perryville-Lumley SMA; Phoenix (Baker, Flamenco, and MTU); and Lewis-Rast Max (4C1 and 4C2), conform to the policies for use of force set forth in ¶ 27 (a)-(e) of the Stipulation.  Those requirements include:

a. Chemical agents shall be used only in case of imminent threat. An imminent threat is any situation or circumstance that jeopardizes the safety of persons or compromises the security of the institution, requiring immediate action to stop the threat. Some examples include, but are not limited to: an attempt to escape, on-going physical harm or active physical resistance. A decision to use chemical agents shall be based on more than passive resistance to placement in restraints or refusal to follow orders. If the inmate has not responded to staff for an extended period of time, and it appears that the inmate does not present an imminent physical threat, additional consideration and evaluation should occur before the use of chemical agents is authorized.

b. All controlled uses of force shall be preceded by a cool down period to allow the inmate an opportunity to comply with custody staff orders. The cool down period shall include clinical intervention (attempts to verbally counsel and persuade the inmate to voluntarily exit the area) by a mental health clinician, if the incident occurs on a weekday between 8:00 a.m. and 4:00 p.m. At all other times, a qualified health care professional (QHCP) (other than a LPN) shall provide such clinical intervention. This cool down period may include similar attempts by custody staff.

c.   If it is determined the inmate does not have the ability to understand orders, chemical agents shall not be used without authorization from the Warden, or if the Warden is unavailable, the administrative duty officer.

d.   If it is determined an inmate has the ability to understand orders but has difficulty complying due to mental health issues, or when a mental health clinician believes the inmate's mental health issues are such that the controlled use of force could lead to a substantial risk of decompensation, a mental health clinician shall propose reasonable strategies to employ in an effort to gain compliance, if the incident occurs on a weekday between 8:00 a.m. and 4:00 p.m. At all other times, a QHCP (other than a LPN) shall propose such reasonable strategies.

e.   The cool down period may also include use of other available resources/options such as dialogue via religious leaders, correctional counselors, correctional officers and other custody and non-custody staff that have established rapport with the inmate.

**Source of Records/Review:**

SIR Packet; Use of Force Review Packet; Use of Force Memo; all existing incident video capturing use of force and/or cool down period (including hand-held and/or security camera footage). At the discretion of the monitor, medical records; interviews of staff/inmates; and interview notes may also be reviewed if deemed necessary to make accurate compliance findings.

**Methodology:**

a.   The monitor shall review the source records listed above for use of force incidents involving the use of pepper spray and other chemical agents on any maximum custody prisoners classified as SMI, and classified as SMI in the following housing areas (where maximum custody SMI inmates and/or maximum custody inmates with substantial mental health issues are housed): Florence-CB-1 and CB-4; Florence-Kasson (Wings 1 and 2); Eyman-SMU I (BMU); Perryville-Lumley SMA; Phoenix (Baker, Flamenco, and MTU); and Lewis-Rast Max (4C1 and 4C2) for the reporting period.  At the discretion of the monitor/designee, the monitor/designee may interview staff/inmates and review any available medical records associated with the subject use of force, if necessary, to make a final compliance finding.

b. If pepper spray and/or other chemical agents were used during the use of force incident, the monitor shall determine whether there was an imminent threat justifying the use of the pepper spray and/or other chemical agent. If the monitor determines that the pepper spray and/or other chemical agents were used without justification, there is a finding of non-compliance. These findings and the reasons for them must be documented in the CGAR.

c. If there was no imminent threat and pepper spray and/or other chemical agents were deployed without engaging in a cool down period and additional consideration and evaluation by staff, there is a finding of non-compliance for the use of force incident. These findings and the reasons for them must be documented in the CGAR.

d. The monitor shall determine whether or not the incident is a controlled use of force involving the use of pepper spray and/or other chemical agents or could have been a controlled use of force. If the monitor determines that the incident should have been a controlled use of force but was erroneously treated as an imminent threat, there is a finding of non-compliance. These findings and the reasons for them must be documented in the CGAR.

e. If the incident is a controlled use of force involving the use of pepper spray and/or other chemical agents it must be preceded by a cool down period to allow the inmate an opportunity to comply with custody staff orders. The length of the cool down period can vary depending upon the circumstances, but should be allowed to continue until all reasonable interventions have been attempted, or an imminent threat exists. If the monitor believes that the cool down period was insufficient under the circumstances, there is a finding of non-compliance. If there is no cool down period documented or otherwise recorded in other source documentation or on video (hand held and/or security camera footage reviewed by the monitor), then the incident must be found non-compliant.

f. A cool down period during a controlled use of force involving the use of pepper spray and/or other chemical agents must include clinical intervention (attempts to verbally counsel and persuade the inmate to cease the behavior that has led to consideration of use of force). This clinical intervention must be conducted by: (1) a mental health clinician, if the incident occurs on a weekday between 8:00 am and 4:00 pm; or (2) a QHCP (other than a LPN) at all other times. This cool down period may include similar attempts by custody staff – but such interventions by custody staff are not a replacement for the required clinical intervention. If no clinical intervention is documented during the cool down period or otherwise recorded in other source documentation or on video (hand held and/or security camera footage reviewed by the

monitor), there is a finding of non-compliance for the incident.

g. During the clinical intervention, the mental health clinician or QHCP (other than a LPN) must determine whether the inmate has the ability to understand orders; whether the inmate has the ability to understand orders but has difficulty complying due to mental health issues; and whether s/he believes the inmate's mental health issues are such that the controlled use of force could lead to a substantial risk of decompensation. Failure to document these determinations in the use of force documentation provided the monitor shall lead to a finding of non-compliance.

h. If pepper spray and/or other chemical agents were used where a mental health clinician or QHCP (other than an LPN)  determined the inmate does not have the ability to understand orders, the monitor must determine that a Warden, or if the Warden was unavailable, the administrative duty officer, authorized the use of pepper spray and/or other chemical agents.  If no such authorization was obtained, there is a finding of non-compliance for the incident.  These findings and the reasons for them must be documented in the CGAR.

i. If the mental health clinician or QHCP (other than a LPN) determined that an inmate had the ability to understand orders but had difficulty complying due to mental health issues, or where the mental health clinician or QHCP believed the inmate's mental health issues are such that the controlled use of force involving the use of pepper spray and/or other chemical agents could lead to a substantial risk of decompensation, the mental health clinician or QHCP must propose  reasonable strategies to employ in an effort to gain compliance.  Such strategies might include, but are not limited to:  verbal persuasion, positive behavior modifications, and/or other de-escalation/intervention techniques, or engaging additional clinicians, religious leaders, correctional counselors, correctional officers and other custody and non-custody staff that have an established rapport with the inmate.  If no proposals of reasonable strategies are documented or otherwise recorded in other source documentation or on video (hand held and/or security camera footage reviewed by the monitor), there is a finding of non-compliance for the incident.

# EXHIBIT 2

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT



January 15, 2019

**BY ELECTRONIC MAIL ONLY**

Rachel Love
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
rlove@strucklove.com

   Re: *Parsons v. Ryan*
      **Notice of Substantial Non-Compliance**

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

PLEASE RESPOND TO
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
*DIRECTOR*
*ATTORNEY AT LAW\**

*\*NOT ADMITTED IN DC:
PRACTICE LIMITED TO
FEDERAL COURTS*

Dear Counsel:

Pursuant to ¶ 30 of the Stipulation, we hereby serve a Notice of Substantial Non-Compliance with respect to Defendants' noncompliance with the Maximum Custody Performance Measures ("MC PM") ##1-2, 5-6, and 8 at Florence Kasson and at Lewis Rast.

  **I. Noncompliance with Monitoring Methodology for Sub-class Members Housed in Florence Kasson and Lewis Rast.**

Under the final "Max Custody Monitor Guide Duties & Responsibilities" ("Monitoring Guide") approved by the Court there is a required process for recording refusals of out-of-cell time/programming offered under MC PM ##1-2, 5-6, and 8. The Guide specifically states:

   When an inmate refuses out-of-cell time/programming, the refusal
   must be documented on the Out-of-Cell Tracking form and *the
   personnel to whom the inmate stated the refusal must note the
   refusal and amount of time refused in the Comments section on the
   back of the Out of Cell Tracking form, and contemporaneously sign
   the same*….Either the inmate or a second staff member should sign
   the Comments section on the back of the Out of Cell Tracking form
   where feasible considering safety/security/operational concerns, to
   verify the refusal.

Monitoring Guide, July 2017 at 5, 8, 13, 16, and 19 (emphasis added).

During the December 2018 tour of Florence Kasson, we noted that the Out of Cell Tracking forms were no longer being kept on the doors of the cells in any of the Max Custody housing units. We were told by Kasson staff, CO II Knight and others, that the procedures for recording out-of-cell time and programming had changed. Instead of using the required contemporaneous methodology set forth in the Monitoring Guide, Kasson staff are using at least two different methodologies.

Some staff told us that an officer will enter the pod and ask prisoners if they want to participate in out-of-cell time/programming and then later tell the desk officer who sits outside the housing pod who refused out-of-cell time/programming.  That desk officer then makes entries into the Out of Cell Tracking form.  Other officers at Kasson told us that the procedure for offering out-of-cell time/programming is for one officer to enter the housing pod and asks each prisoner if he wants to participate in out-of-cell time and then radio the answers to an officer outside the pod.  That officer makes the entries on the Out of Cell Tracking form.

Both of these procedures are noncompliant with the Monitoring Guide because the offering officer is not contemporaneously noting the refusal or signing the form.  Instead, a third party, who has no personal knowledge of the refusal, is signing the form.  Further, this method is non-compliant with the Monitoring Guide because it prevents both the prisoner from signing the refusal contemporaneously and a second officer with personal knowledge of the refusal from signing. The result of these non-compliant methodologies is alleged refusals that do not meet the standards of proof required by the Monitoring Guide.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

We note that during our November 2018 tour of Lewis-Rast we found that the max custody units had similarly discontinued the practice of keeping the Out of Cell Tracking forms in front of the cell doors.  Given our findings at Kasson we will assume, unless and until it is demonstrated otherwise, that the method of noting refusals at Rast is similarly noncompliant, as set forth above.  We have yet to visit the Eyman complex so the status of the monitoring methodology is unclear at the Browning and SMU-I facilities.

We ask that you inform us of when these new methodologies were implemented at each unit; if the methodology extends to any of the other max custody units beyond Kasson and Rast; and what monitoring methodology is being employed at Eyman SMU-I and Browning.  We also ask that you confirm the date that the monitoring methodology for max custody is corrected in compliance with the Monitoring Guide at each unit.

We look forward to your response as required by ¶ 30 of the Stipulation.

Sincerely,

Amy Fettig

cc:     All counsel

2

# EXHIBIT 3

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT



February 1, 2019

**BY ELECTRONIC MAIL ONLY**

Rachel Love
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
rlove@strucklove.com

> Re:   *Parsons v. Ryan*
>        **Notice of Substantial Non-Compliance**

Dear Counsel:

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

PLEASE RESPOND TO
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
*DIRECTOR*
*ATTORNEY AT LAW\**

*\*NOT ADMITTED IN DC:
PRACTICE LIMITED TO
FEDERAL COURTS*

Pursuant to ¶ 30 of the Stipulation, we hereby serve a Notice of Substantial Non-Compliance with respect to Defendants' noncompliance with the Maximum Custody Performance Measures ("MC PM") ##1-2, 5-6, and 8 at Eyman SMU-1 and Browning.

## I.   Noncompliance with Monitoring Methodology for Sub-class Members Housed in Eyman SMU-1 and Browning.

Under the final "Max Custody Monitor Guide Duties & Responsibilities" ("Monitoring Guide") approved by the Court there is a required process for recording refusals of out-of-cell time/programming offered under MC PM ##1-2, 5-6, and 8.  The Guide specifically states:

> When an inmate refuses out-of-cell time/programming, the refusal must be documented on the Out-of-Cell Tracking form and *the personnel to whom the inmate stated the refusal must note the refusal and amount of time refused in the Comments section on the back of the Out of Cell Tracking form, and contemporaneously sign the same*....Either the inmate or a second staff member should sign the Comments section on the back of the Out of Cell Tracking form where feasible considering safety/security/operational concerns, to verify the refusal.

Monitoring Guide, July 2017 at 5, 8, 13, 16, and 19 (emphasis added).

During the recent tour of Eyman SMU-1 and Browning on January 24 and 25, 2019, we noted that the Out of Cell Tracking forms were no longer being kept on the doors of the prisoners in any of the Max Custody housing units.  We were told by Eyman SMU-1 and Browning staff, Warden Morris, Captain O'Connor, and others, that the procedures for recording out-of-cell time and programming had changed.  Instead of using the required contemporaneous methodology set forth in the Monitoring Guide, Eyman SMU-1 and Browning staff are recording information in the tracking sheets after the fact or calling in information to another

officer. Staff who are offering out-of-cell time are not always the staff documenting the information in the tracking sheets.  At SMU-1 officers appear to take binders with tracking sheets out to the recreation yard with them, but this does not appear to be the case at Browning. In both units prisoners are not being asked to sign refusals, instead officers are the only signatories to any alleged refusals.

The new procedures at Browning and SMU-1 are noncompliant with the Monitoring Guide because the offering officer is not contemporaneously making entries or signing refusals.  Instead, a third party, who has no personal knowledge of the refusal, may sign the form, or documentation is done after-the-fact.  Further, this method is non-compliant with the Monitoring Guide because it prevents both the prisoner from signing the refusal contemporaneously or a second officer with personal knowledge of the refusal from signing. The result of these non-compliant methodologies is alleged refusals that do not meet the standards of proof required by the Monitoring Guide.

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

We note that the problems found at Eyman SMU-1 and Browning are similar to those found at Lewis Rast and Florence Kasson during earlier tours, which were the subject of our January 15, 2019 Notice of Non-compliance.

We ask that you inform us (1) when these new methodologies were implemented at Browning and SMU-1, and (2) what specific monitoring methodology is being employed at each of the maximum custody units.  We also ask that you confirm the date that the monitoring methodology for max custody is corrected in compliance with the Monitoring Guide at each unit.

We look forward to your response as required by ¶ 30 of the Stipulation.

Sincerely,

Amy Fettig

cc:     All counsel

2

# EXHIBIT 4



STRUCK LOVE BOJANOWSKI & ACEDO, PLC

Timothy J. Bojanowski
480.420.1604
tbojanowski@strucklove.com

January 17, 2019

**VIA EMAIL ONLY**
Corene Kendrick
PRISON LAW OFFICE
General Delivery
San Quentin, CA 94964

Re:    **Parsons v. Ryan**
       ASPC-Lewis Tour (November 13-15, 2018)

Dear Corene:

We are responding to your November 30, 2018 letter regarding Plaintiffs' November 13-15, 2018 Lewis tour.

In your letter, you repeat, as a "threshold matter", allegations of retaliation that were raised in your November 16, 2018 letter, but add nothing new to your claims. We responded to that letter separately—the claims are unfounded. No additional response is warranted here.

**Mental Health Encounters:**  You allege receiving multiple reports that some mental health encounters held in-unit have not been confidential. You fail, however, to identify key information needed to investigate the claims. Neither we nor ADC can address bare allegations. Please provide specific information, including the inmate name/number, time, location, and nature of the encounter so that any such allegations can be investigated and addressed, if necessary.

In any event, all complexes are instructed on a continuing basis that providers must ensure their contacts are confidential when the inmate agrees to leave the cell for the same. When review of records by the monitors indicates that a confidential setting was not indeed confidential, that encounter is not given credit and the situation is addressed in out-briefs. Mental health staff are allowed to have security (and other staff) present during their interactions so long as they have not indicated these contacts are confidential 1:1 contacts. The expected practice is that confidential contacts do not include an officer in the room. Any deviation is addressed immediately. Indeed, Dr. Calcote distributed a memo after the Lewis tour

Corene Kendrick
January 17, 2019
Page 2

reinforcing this expectation. Dr. Taylor confirmed that, for monitoring purposes, patient encounters in which an officer is present or within earshot are not counted as satisfying the Stipulation's requirement that the patient be "seen by mental health staff" in a confidential setting unless they are being seen cell front due to their refusal to be seen in a confidential setting. Doc. 1185-1 at 5.

**Mental Health Watch:**  You allege receiving reports from unidentified inmates at Rast and Stiner that officers are not appropriately conducting checks required by watch orders, and self-harm has occurred.  However, you do not tie any such allegations to actual incidents.  Nor do you tie the allegations to a performance measure.  Accordingly, no response to these allegations is warranted.  Notwithstanding, self-harm occurring while on a continuous watch is not indicative of inappropriate checks. Mentally ill inmates intent on harming themselves find ways at times to execute self-harm out of view of officers conducting checks, e.g., under blankets, smocks, or other allowed materials, which can obscure visibility.  ADC is continually looking at ways to improve observation and visibility for inmates on watch, independently of and unrelated to your allegations.

Regarding unidentified inmates' allegations of refusals to provide HNR forms upon request, again, you fail to provide sufficient information to investigate and address any such claims.  Contrary to your allegations, the Lewis HNR log documents for the last six months show that for inmates on watch, the number of HNR submissions per month was consistently one to two HNRs.  Moreover, the eight HNRs submitted by inmates on watch in the last six months were appropriately triaged and the inmates were seen on time.  Defendants are unaware of any reports of staff refusing to provide HNR forms. Inmates may utilize the grievance process to address any such alleged actions of staff pursuant to DO 802.01.  In sum, the allegations of inmate reports of staff refusals are unsubstantiated by your letter, as well as the information available to us.

You also requested any policies concerning transport of inmates on watch. DO 807 addresses transferring inmates on watch to the hospital as well as for offsite appointments. You further referenced a cancellation of a specialty appointment documented in ADCM1542392-93, but have not alleged substantial non-compliance with any applicable performance measure in connection with the IR.  There is no policy permitting transportation officers to cancel specialty appointments.  They may, however, cancel transportation upon approval from mental health.

**Max Custody PM 1 and 2:**  You complain that out-of-cell tracking forms were not posted on cell fronts in the Rast Max housing locations.  As has been the case at other max custody housing locations for quite some time, the forms are no longer maintained on cell fronts because inmates take and/or destroy them.  They are now kept in a binder on the unit.  The notebooks are easily accessible to movement staff, and out-of-cell activity is contemporaneously recorded. Indeed, Rachel Love herself accessed and went through the notebooks while on tour with your group, while you were interviewing inmates.  At no time during the tour did you or anyone in your group ask about the location of the out-of-cell tracking forms. If such inquiry had been made, Rachel would have shown you the books – as she herself picked books up and reviewed them herself while on tour.

Corene Kendrick
January 17, 2019
Page 3

You also allege receiving reports from inmates of programming cancellations and/or conflicts with recreation time requiring inmates to choose between rec time and programming. Cancellations and refusals are documented on out-of-cell tracking forms and are subject to monitoring. If a cancellation was not appropriately made up or justification was not provided as to any inability to make up a cancellation, monitoring and reporting of the same would show non-compliant. Likewise, if an inmate is not offered the required out-of-cell time for programming and recreation, monitoring and reporting would show non-compliant. The monthly Max Custody Notebooks produced to Plaintiffs show that actual operations are contrary to the allegations you receive from your clients.

**Prison Conditions:**  Your letter goes on for several pages alleging various conditions of confinement that were purportedly reported to you by inmates. Notwithstanding the fact that Defendants disagree with the allegations, the conditions of confinement complained about are not subject to the terms of the Stipulation and thus are outside the scope of monitoring and reporting pursuant to the Stipulation and its performance measures.  If inmates have concerns about conditions of confinement, they may utilize the inmate administrative grievance procedure to address the same.

Regards,

Timothy J. Bojanowski

TJB/eap
cc:   Counsel of record

# EXHIBIT 5

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
*Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
*Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
*Desiree Licci, Joseph Hefner, Joshua Polson, and*
*Charlotte Wells, on behalf of themselves and all others*
*similarly situated*

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:  adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-ROS <br><br> **DECLARATION OF MAURICE SOTO (#209226)** |

1   I, _Maurice Soto_____, hereby declare:

2       1.   I am a prisoner in the custody of the Arizona Department of Corrections,

3   ADC# _209226_. I am currently housed in _Browning 4 Lincoln 18_. I have been in this

4   unit for _approximately 1 year_. I am over 18 years of age.  If called as a witness, I could

5   and would testify competently to the facts stated herein, all of which are within my

6   personal knowledge.

8   #2 ADC offers Exercise in my pod at approximately

9   6:00 AM when most prisoners are asleep.

11  #3 At times, ADC staff offer exercise in a

12  whisper so we cannot hear the offer.

14  #4 ADC does not offer warm clothes unless

15  we buy them. This contributes to me not

16  wanting to go outside in the cold early morning.

18  #5 to my Knowledge, I have not received a step

19  level under D.I 326a ADC does not advance

20  people through the step levels at Browning.

lof2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24          Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

25   is true and correct.

26   Executed _January_ _25_, 2019, in _Florence_, AZ.
            (Month)      (Day)

27

28                                    _Maurice Soto_
                                      Maurice  Soto

                              2 oF 2

# EXHIBIT 6

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
*Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
*Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
*Desiree Licci, Joseph Hefner, Joshua Polson, and*
*Charlotte Wells, on behalf of themselves and all others*
*similarly situated*

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:  adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-ROS  **DECLARATION OF WILLIAM HARTLESS (#218281)** |
| Plaintiffs, | |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

I, William Hartless, hereby declare:

1. I am a prisoner in the custody of the Arizona Department of Corrections, ADC#218281. I am currently housed in Eyman SMU-I 4D11. I have been in this unit for two weeks. I am over 18 years of age. If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge.

2. I am a Step 1. I am eligible for Step 2 but have not yet been advanced to Step 2.

3. I am offered exercise three times per week. Two of those times are at 6:30 am when almost every one is asleep.

4. At times, even when I am awake custody staff do not ask us to go out to exercise. On their second walk, they only ask if we want showers.

5. If I take exercise and receive a shower afterwards, I have been stuck in the shower for three hours. It discourages me from taking exercise.

6. ADC does not provide warm clothes during winter unless you buy them. Since arriving in the pod, I have not

1 OF 2

1  received my property, including my
2  warm clothes. This discourages
3  me and others from taking
4  exercise because we do not want
5  to be out in the cold, early
6  morning.

7
8  7. Other than regular exercise, I
9  am not offered any other out-
10  of-cell time.

11
12  8. There are no out-of-cell tracking
13  sheets on the cell doors. I have
14  not seen ADC staff tracking
15  refusals. I haven not been asked
16  to sign a refusal.

17
18  9. At times, exercise is cancelled
19  due to staff shortages. when this
20  happens, I have seen only 2
21  custody officers walk the pod.

22
23  Pursuant to 28. U.S.C. Section 1746, I declare
24  under penalty of perjury that the
25  ~~following~~ foregoing is true and correct.
26      Executed January 25, 2019 in Florence, AZ
27
28

William Hartless

2 OF 2

# EXHIBIT 7

1   Kathleen E. Brody (Bar No. 026331)
    **ACLU FOUNDATION OF ARIZONA**
2   3707 North 7th Street, Suite 235
    Phoenix, Arizona 85013
3   Telephone:  (602) 650-1854
    Email: kbrody@acluaz.org
4
    *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
5   *Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
    *Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
6   *Desiree Licci, Joseph Hefner, Joshua Polson, and*
    *Charlotte Wells, on behalf of themselves and all others*
7   *similarly situated*

8   Asim Dietrich (Bar No. 027927)
    **ARIZONA CENTER FOR DISABILITY LAW**
9   5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
10  Telephone:  (602) 274-6287
    Email:  adietrich@azdisabilitylaw.org

11  *Attorneys for Plaintiff Arizona Center for Disability Law*

12                  UNITED STATES DISTRICT COURT

13                       DISTRICT OF ARIZONA

14  Victor Parsons; Shawn Jensen; Stephen Swartz;          No. CV 12-00601-PHX-ROS
    Dustin Brislan; Sonia Rodriguez; Christina
15  Verduzco; Jackie Thomas; Jeremy Smith; Robert
    Gamez; Maryanne Chisholm; Desiree Licci; Joseph       **DECLARATION OF**
16  Hefner; Joshua Polson; and Charlotte Wells, on        **MACK GORDNATTAZ**
    behalf of themselves and all others similarly         **(#189558)**
17  situated; and Arizona Center for Disability Law,

18                  Plaintiffs,

19          v.

20  Charles Ryan, Director, Arizona Department of
    Corrections; and Richard Pratt, Division Director,
21  Division of Health Services, Arizona Department of
    Corrections, in their official capacities,

22                  Defendants.

23

24

25

26

27

28

1    I, _Mack Gordnattaz_, hereby declare:

2    1.    I am a prisoner in the custody of the Arizona Department of Corrections,

3    ADC# _189558_. I am currently housed in _Eyman SMU-1_. I have been in this

    _4D25_

4    unit for _over one year_. I am over 18 years of age.  If called as a witness, I could

5    and would testify competently to the facts stated herein, all of which are within my

6    personal knowledge.

7    2. I believe I was previously designated as

8    SMI. I was SMI out in the community.

9

10   3. ADC does not consider me SMI.

11

12   4. ADC offers exercise in my pod at

13   6:00 am when all prisoners are

14   asleep.

15

16   5. ADC does not provide warm clothes

17   during winter unless you buy them.

18   This discourages me and others from

19   taking exercise in the cold, early

20   morning.

21

22   6. If I receive a shower after exercise,

23   I have been stuck in that shower

24   for up to two hours. This discourages

25   me and others from taking exercise.

26

27   7. I am a step 3. Step recreation is

28   cancelled once to twice per month.

1 of 2

& Exercise is often cancelled due to staff shortages. When this happens, we see two officers walking the pod.

9. At times, ADC staff does not actually offer us exercise. They just walk by our cells.

10. Out-of-cell time tracking sheets were removed from cell fronts approximately one and a half years ago. I have never observed ADC staff recording refusals. I have never been asked to sign a refusal.

11. I receive a class once a week. I do not receive group programming. Other than this class and exercise, I do not receive any other out-of-cell time.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed January 25, 2019, in Florence, AZ.
(Month)        (Day)

Mack Gordnattaz

2 of 2

# EXHIBIT 8

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
*Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
*Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
*Desiree Licci, Joseph Hefner, Joshua Polson, and*
*Charlotte Wells, on behalf of themselves and all others*
*similarly situated*

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-ROS |
| Plaintiffs, | **DECLARATION OF KYLE DRATTLO (#320681)** |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

1   I, _Kyle Drattlo_, hereby declare:

2       1.    I am a prisoner in the custody of the Arizona Department of Corrections,

3   ADC# _320681_. I am currently housed in _Browning 361_. I have been in this

4   unit for _approximately 13 months_. I am over 18 years of age. If called as a witness, I could

5   and would testify competently to the facts stated herein, all of which are within my

6   personal knowledge.

7

8   #2  ADC offers recreation/exercise to my pod at

9   about 6:00 AM when most prisoners are asleep.

10

11   #3  ADC does not provide warm clothes during winter

12   unless you buy them. This discourages me and others

13   from taking exercise in the cold early morning.

14

15   #4  If I get a shower after exercise, I have been

16   stuck in the shower for up to four hours. This

17   discourages me from taking exercise.

18

19   #5  I am not offered a class or group programming.

20

21   #6  Other than regular exercise, I do not get offered

22   any other out-of-cell time.

23

24   #7  There have been times feces have been left in

25   the SHU recreation area for long periods of

26   time. This discourages me from taking exercise.

27

28

1 of 2

1  #8  At times, when ADC "offers" us exercise, the
2      staff do not actually ask us if we want to
3      go — they just walk the pod  without making an
4      offer.

24     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing
25 is true and correct.
26     Executed  January  25 , 2019, in  Florence  , AZ.
                (Month)     (Day)
27
28
                                    Kyle Drattlo

                              2 of 2

# EXHIBIT 9

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
*Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
*Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
*Desiree Licci, Joseph Hefner, Joshua Polson, and*
*Charlotte Wells, on behalf of themselves and all others*
*similarly situated*

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:  adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-ROS <br><br><br> **DECLARATION OF VINSON JOHNSON (#103152)** |

1    I, _Vinson Johnson_____, hereby declare:

2    1.    I am a prisoner in the custody of the Arizona Department of Corrections,

3    ADC# _10315 2_. I am currently housed in _Browning 4 Lincoln 3_. I have been in this

4    unit for _almost one year_. I am over 18 years of age. If called as a witness, I could

5    and would testify competently to the facts stated herein, all of which are within my

6    personal knowledge.

7

8    #2 ADC offers exercise in my pod at 6:00 AM when

9    most prisoners are sleeping. We have not used the restroom

10   or gotten ready but must go to rec immediately if

11   we want to take it.

12

13   #3 We only receive exercise in the concrete SHU.

14

15   #4. If we get to shower after exercise, I have been

16   stuck in the shower for up to three hours. This

17   discourages me from wanting to take rec.

18

19   #5. ADC does not provide warm clothes during winter

20   unless you buy them. This discourages me from

21   wanting to take exercise in the cold early morning.

22

23   #6 I do not receive an offer of class or group

24   programming.

25

26   #7 I do not have a step level under DI 326. My

27   pod does not participate in DI 326.

28

1 of 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24        Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

25   is true and correct.

26   Executed _January_ __25__ , 2019, in _Florence_ , AZ.
             (Month)      (Day)

27

28

_Vinson Johnson_

Vinson Johnson

2 of 2

# EXHIBIT 10

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,
Sonia Rodriguez, Christina Verduzco, Jackie Thomas,
Jeremy Smith, Robert Gamez, Maryanne Chisholm,
Desiree Licci, Joseph Hefner, Joshua Polson, and
Charlotte Wells, on behalf of themselves and all others
similarly situated*

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-ROS |
| Plaintiffs, | **DECLARATION OF JUAN CHAVEZ (#222245)** |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

1    I, _Ivan Chavez_ , hereby declare:

2       1.      I am a prisoner in the custody of the Arizona Department of Corrections,

3    ADC# _222245_. I am currently housed in _Eyman Browning_ . I have been in this

    _5K47_

4    unit for _11 months_ . I am over 18 years of age.  If called as a witness, I could

5    and would testify competently to the facts stated herein, all of which are within my

6    personal knowledge.

7    2. On average, exercise is cancelled about

8    once a week because of staff

9    shortages. Officers inform us that

10   ~~te~~ exercise is cancelled because of

11   staff shortages.

12   3. Officers inform the pod that it is

13   exercise time by shouting an

14   announcement on the tier. I have

15   seen people ~~miss~~ miss their exercise

16   time because they are asleep.

17   Officers do not come to offer exercise

18   cell-front if someone is asleep

19   and didn't hear the announcement.

20

21

22

23

24

25

26

27

28

1 of 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24        Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

25   is true and correct.

26        Executed _____, 2019, in _Florence_, AZ.
            (Month)        25
                          (Day)

27

28

                        Juan M Chavez
                        Juan Chavez

                        2 of 2

# EXHIBIT 11

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
*Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
*Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
*Desiree Licci, Joseph Hefner, Joshua Polson, and*
*Charlotte Wells, on behalf of themselves and all others*
*similarly situated*

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:  adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-ROS **DECLARATION OF VICTOR LIZARDI (#261379)** |
| Plaintiffs, | |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

1    I, _Victor Lizardi_____, hereby declare:

2        1.    I am a prisoner in the custody of the Arizona Department of Corrections,

3    ADC# _261379_. I am currently housed in _Eyman Browning_. I have been in this

4    unit for _3½ years___. I am over 18 years of age. If called as a witness, I could

5    and would testify competently to the facts stated herein, all of which are within my

6    personal knowledge.

7    2. I don't go to exercise because it is offered

8    very early in the morning, usually around

9    6:00 am. At that time in fall and winter,

10   it is very cold. I am not provided warm

11   clothes and cannot afford to buy warm

12   clothes on my own.

13   3. I have seen officers walk by people's

14   cell and if the person is sleeping they

15   ~~mark~~ take it as a refusal. Officers have

16   walked by my door while I'm asleep and

17   said I refused ~~pros~~ exercise. When I

18   ask about my exercise time, ~~they~~

19   officers say I refused because I

20   was asleep.

21   4. While I was in Florence-Central and

22   Eyman-Smut units, I was receiving

23   programming to help me advance my

24   Step Program Level. When I moved to

25   Eyman-Browning unit in 2015, I was

26   told there is no programming in

27   this unit and was made Step 1

28   again. I have remained Step 1 for

    1 of 2

1  three and a half years.
2  5. Often during holidays, exercise and
3  showers get cancelled because of
4  staff shortages. When ~~re~~ exercise is
5  cancelled, I only see one correctional
6  officer walking the pod.
7  6. I provided this declaration in Spanish.
8  It was translated and read to ~~breathe~~ me
9  by Tania Amarillas, an investigator at
10 the Prison Law Office.

24    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing
25  is true and correct.

26  Executed January      25 , 2019, in Florence          , AZ.
        (Month)        (Day)

27

28  _____
        Victor Lizardi

2 of 2

# EXHIBIT 12

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,
Sonia Rodriguez, Christina Verduzco, Jackie Thomas,
Jeremy Smith, Robert Gamez, Maryanne Chisholm,
Desiree Licci, Joseph Hefner, Joshua Polson, and
Charlotte Wells, on behalf of themselves and all others
similarly situated*

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:  adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-ROS **DECLARATION OF JESUS CEJA (#311500)** |
| Plaintiffs, | |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

1    I, _Jesus Ceja_____, hereby declare:

2        1.    I am a prisoner in the custody of the Arizona Department of Corrections,

3    ADC# _311500_. I am currently housed in _Eyman Browning_ I have been in this

4    unit for _11 months___. I am over 18 years of age. If called as a witness, I could

5    and would testify competently to the facts stated herein, all of which are within my

6    personal knowledge.

7    2. Exercise gets cancelled due to staff

8    shortage about once every two weeks.

9    When exercise is cancelled, officers

10   will tell us it is because they are

11   short staffed.

12   3. Exercise starts at 6:00 am. Officers

13   will walk by while most people are

14   asleep and say it is shower and

15   exercise time. If people do not

16   respond immediately, officers will

17   move on to the next person.

18   4. Our out-of-cell time schedule is posted

19   outside the pod where ~~we are not~~

20   ~~allowed~~ I am not allowed to

21   see it.

22   5. In my experience, I have never

23   seen officers recording refusals as

24   they are going cell by cell to

25   ask if people want to go to ~~xe~~

26   exercise.

27

28

1 of 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24        Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

25  is true and correct.

26        Executed _January_ _25_, 2019, in _Florence_, AZ.
              (Month)        (Day)

27

28  _____
                    Jesus Ceja

                 2 of 2

# EXHIBIT 13

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
*Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
*Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
*Desiree Licci, Joseph Hefner, Joshua Polson, and*
*Charlotte Wells, on behalf of themselves and all others*
*similarly situated*

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:  adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-ROS |
| Plaintiffs, | **DECLARATION OF YERCO ARRVAYO (#239477)** |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

I, ___Yerco Arrvayo___, hereby declare:

1.      I am a prisoner in the custody of the Arizona Department of Corrections, ADC# __239477__. I am currently housed in __Eyman  Browning 1L9__ I have been in this unit for __8 months__. I am over 18 years of age.  If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge.

2. Exercise is offered at 6:00 am. Officers expect me to be ready by 6:00 am otherwise you are not let out. I do not get time to wash my face, brush my teeth, or use the toilet. The cages in the exercise yard do not have toilets.

3. Warm clothing is not provided to us. In the Fall and winter, people in my pod refuse exercise because they do not have warm clothes.

4. On average, I leave my cell about two hours per week because of the above conditions.

5. In my experience, exercise is cancelled about two or three times per month because of staffing shortages. Officers tell me that exercise is cancelled because they are short staffed.

6. I have been on step 1 of the step Program since I have been at Browning. No programming is offered to help me move on to the next step.

1 of 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24        Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

25   is true and correct.

26        Executed ENERO      25 , 2019, in FLORENCES   , AZ.
             (Month)      (Day)

27

28

                                    Jerco Arrvayo

                            2 of 2

EXHIBIT 14

1  Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
2  3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
3  Telephone:  (602) 650-1854
Email: kbrody@acluaz.org
4
*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
5  *Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
*Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
6  *Desiree Licci, Joseph Hefner, Joshua Polson, and*
*Charlotte Wells, on behalf of themselves and all others*
7  *similarly situated*

8  **[ADDITIONAL COUNSEL LISTED ON
SIGNATURE PAGE]**

9  Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
10  5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
11  Telephone:  (602) 274-6287
Email: adietrich@azdisabilitylaw.org
12  *Attorneys for Plaintiff Arizona Center for Disability Law*

13  **[ADDITIONAL COUNSEL LISTED ON
SIGNATURE PAGE]**

14

15             UNITED STATES DISTRICT COURT

16                  DISTRICT OF ARIZONA

| | |
|---|---|
| 17  Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-ROS  **DECLARATION OF TANIA AMARILLAS DIAZ** |
| Plaintiffs, | |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

I, Tania Amarillas Diaz, declare:

1. I am an investigator at the Prison Law Office under the supervision of attorneys Corene Kendrick and Rita Lomio, who are counsel of record in this case. If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge.

2. I am fluent in Spanish and English.

3. On January 24 and 25, 2019, I met with class members at ASPC-Eyman during a Plaintiffs' counsel tour of the institution. I was under the supervision of Ryan Kendall, an attorney at the ACLU National Prison Project.

4. On January 25, 2019, I met with Mr. Yerco Arrvayo, ADC #239477, in Browning Unit.

5. While meeting with Mr. Arrvayo, I helped him to draft a written declaration accounting his experiences at ASPC-Eyman in English.

6. I communicated the contents of Mr. Arrvayo's declaration to him by accurately translating it from English to Spanish.

I declare under penalty of perjury that the foregoing is true and correct.

Executed January 30, 2019 in Berkeley, California.

Tania Amarillas Diaz

# EXHIBIT 15

1   Kathleen E. Brody (Bar No. 026331)
    **ACLU FOUNDATION OF ARIZONA**
2   3707 North 7th Street, Suite 235
    Phoenix, Arizona 85013
3   Telephone: (602) 650-1854
    Email: kbrody@acluaz.org

4   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
    *Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
5   *Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
    *Desiree Licci, Joseph Hefner, Joshua Polson, and*
6   *Charlotte Wells, on behalf of themselves and all others*
    *similarly situated*
7
    **[ADDITIONAL COUNSEL LISTED ON**
8   **SIGNATURE PAGE]**

9   Asim Dietrich (Bar No. 027927)
    **ARIZONA CENTER FOR DISABILITY LAW**
10  5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
11  Telephone: (602) 274-6287
    Email: adietrich@azdisabilitylaw.org
12
    *Attorneys for Plaintiff Arizona Center for Disability Law*
13
    **[ADDITIONAL COUNSEL LISTED ON**
14  **SIGNATURE PAGE]**

15                  UNITED STATES DISTRICT COURT

16                      DISTRICT OF ARIZONA

17  Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-ROS
    Dustin Brislan; Sonia Rodriguez; Christina
18  Verduzco; Jackie Thomas; Jeremy Smith; Robert
    Gamez; Maryanne Chisholm; Desiree Licci; Joseph      **DECLARATION OF**
19  Hefner; Joshua Polson; and Charlotte Wells, on       **TYLER RANGEL (#239251)**
    behalf of themselves and all others similarly
20  situated; and Arizona Center for Disability Law,

21                            Plaintiffs,

22         v.

23  Charles Ryan, Director, Arizona Department of
    Corrections; and Richard Pratt, Division Director,
24  Division of Health Services, Arizona Department of
    Corrections, in their official capacities,

25                            Defendants.

26

27

28

I, Tyler Rangel, hereby declare:

1.      I am a prisoner in the custody of the Arizona Department of Corrections, ADC# 239251.  I am currently housed in ASPC Florence, Kasson Unit.  I have been in this unit for at least two months.  I am over 18 years of age.  If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge.

2.      I am designated as SMI.  I am currently a Step 2.

3.      At times, I have refused outdoor exercise because we are not given the opportunity to shower after exercising.

4.      In my experience, corrections officers do not give us enough time to accept out-of-cell opportunities.  We must accept immediately if we want to out-of-cell opportunity.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed December 14 2018, in Florence, AZ.

_Tyler Rangel_
Tyler Rangel

# EXHIBIT 16

1  Kathleen E. Brody (Bar No. 026331)
   **ACLU FOUNDATION OF ARIZONA**
2  3707 North 7th Street, Suite 235
   Phoenix, Arizona 85013
3  Telephone: (602) 650-1854
   Email: kbrody@acluaz.org
4
   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
5  *Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
   *Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
6  *Desiree Licci, Joseph Hefner, Joshua Polson, and*
   *Charlotte Wells, on behalf of themselves and all others*
7  *similarly situated*

   **[ADDITIONAL COUNSEL LISTED ON**
8  **SIGNATURE PAGE]**

9  Asim Dietrich (Bar No. 027927)
   **ARIZONA CENTER FOR DISABILITY LAW**
10 5025 East Washington Street, Suite 202
   Phoenix, Arizona 85034
11 Telephone: (602) 274-6287
   Email: adietrich@azdisabilitylaw.org
12
   *Attorneys for Plaintiff Arizona Center for Disability Law*
13
   **[ADDITIONAL COUNSEL LISTED ON**
14 **SIGNATURE PAGE]**

15                UNITED STATES DISTRICT COURT

16                     DISTRICT OF ARIZONA

17 | Victor Parsons; Shawn Jensen; Stephen Swartz; | No. CV 12-00601-PHX-ROS |
   | Dustin Brislan; Sonia Rodriguez; Christina | |
18 | Verduzco; Jackie Thomas; Jeremy Smith; Robert | |
   | Gamez; Maryanne Chisholm; Desiree Licci; Joseph | **DECLARATION OF** |
19 | Hefner; Joshua Polson; and Charlotte Wells, on | **SERGIO RODRIGUEZ** |
   | behalf of themselves and all others similarly | **(#241833)** |
20 | situated; and Arizona Center for Disability Law, | |
   | Plaintiffs, | |
21 | | |
   | v. | |
22 | Charles Ryan, Director, Arizona Department of | |
   | Corrections; and Richard Pratt, Division Director, | |
23 | Division of Health Services, Arizona Department of | |
   | Corrections, in their official capacities, | |
24 | Defendants. | |
25
26
27
28

I, Sergio Rodriguez, hereby declare:

1.      I am a prisoner in the custody of the Arizona Department of Corrections, ADC# 241883.  I am currently housed in ASPC Lewis, Rast Unit.  I have been in this unit for at least six months.  I am over 18 years of age.  If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge.

2.      I believe I am currently at Step 2 under DI 326.  In my experience, inmates at Step 3 under DI 326 get to go to class once a week for about one hour.  However, officers often offer class at the same time as exercise.  I believe they do this to force people to choose one or the other so they can mark on of the offers as "refused."

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed __DECEMBER__ _29_ 2018, in Buckeye, AZ.
            (Month)        (Day)


_____
Sergio Rodriguez

# EXHIBIT 17

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
*Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
*Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
*Desiree Licci, Joseph Hefner, Joshua Polson, and*
*Charlotte Wells, on behalf of themselves and all others*
*similarly situated*

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:  adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-ROS **DECLARATION OF JESUS GUZMAN (#133935)** |
| Plaintiffs, | |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

I, _Jesus Guzman_, hereby declare:

1. I am a prisoner in the custody of the Arizona Department of Corrections, ADC# _133935_. I am currently housed in _Browning 4 King 36_. I have been in this unit for _about one year_. I am over 18 years of age. If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge.

#2 I am a Step 3.

#3 I do not get "Step Rec / Basketball rec."

#4 At times, ADC offers recreation / exercise to my pod at 6:00 AM to 7:00 AM when most prisoners are sleeping.

#5 ADC does not provide warm clothes during winter unless you buy them. This discourages me and others from taking exercise in the cold / early morning. I/we do not want to get sick from being in the cold.

#6 I am the shower porter in my pod. If exercise is in the afternoon, since I am the afternoon porter I can only do one — porter or take exercise.

#7 If I get a shower after exercise, I have been stuck in the shower for up to one hour. Sometimes this discourages me from taking exercise.

1 of 2

1  #8 Other than regular exercise and a class once a
2      week, I do not receive any other out-of-cell
3      time.

5  #9 While there are board games in the pod, we do not
6      get to use them. ADC does not ask us if we
7      want table time.

24      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing
25  is true and correct.
26      Executed January   25  , 2019, in  Florence  , AZ.
          (Month)      (Day)

27

28
                                    Jesus Guzman

                              2 OF 2

# EXHIBIT 18

1   Kathleen E. Brody (Bar No. 026331)
    **ACLU FOUNDATION OF ARIZONA**
2   3707 North 7th Street, Suite 235
    Phoenix, Arizona 85013
3   Telephone: (602) 650-1854
    Email: kbrody@acluaz.org
4
    *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
5   *Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
    *Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
6   *Desiree Licci, Joseph Hefner, Joshua Polson, and*
    *Charlotte Wells, on behalf of themselves and all others*
7   *similarly situated*

8   Asim Dietrich (Bar No. 027927)
    **ARIZONA CENTER FOR DISABILITY LAW**
9   5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
10  Telephone: (602) 274-6287
    Email: adietrich@azdisabilitylaw.org
11  *Attorneys for Plaintiff Arizona Center for Disability Law*

12                     UNITED STATES DISTRICT COURT

13                         DISTRICT OF ARIZONA

14  Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-ROS
    Dustin Brislan; Sonia Rodriguez; Christina
15  Verduzco; Jackie Thomas; Jeremy Smith; Robert
    Gamez; Maryanne Chisholm; Desiree Licci; Joseph      **DECLARATION OF**
16  Hefner; Joshua Polson; and Charlotte Wells, on       **QUINTON HOLLIS**
    behalf of themselves and all others similarly        **(#296531)**
17  situated; and Arizona Center for Disability Law,

18                     Plaintiffs,

19         v.

20  Charles Ryan, Director, Arizona Department of
    Corrections; and Richard Pratt, Division Director,
21  Division of Health Services, Arizona Department of
    Corrections, in their official capacities,

22                     Defendants.

23

24

25

26

27

28

1    I, Quinton Hollis_____, hereby declare:

2       1.      I am a prisoner in the custody of the Arizona Department of Corrections,

3    ADC# 296531___. I am currently housed in Browning, Henry Pod 1___. I have been in this

4    unit for almost 10 months___. I am over 18 years of age. If called as a witness, I could

5    and would testify competently to the facts stated herein, all of which are within my

6    personal knowledge.

7

8    #2 Exercise is offered in my pod around 6:00 Am

9    when most prisoners are still asleep.

10

11   #3 ADC does not provide warm clothes during

12   winter unless we buy them. This contributes to

13   me not wanting to take exercise in the cold early

14   morning.

15

16   #4 I have size 17 feet. ADC did not provide

17   me shoes that fit. At times, this lack of

18   the correct size shoes prevented me from

19   taking exercise or leaving my cell.

20

21   #5. In my experience, ADC does not provide out-of-cell

22   time in accordance with DI 326 or advance

23   prisoners through the steps at Browning.

24

25   #6 I am a step 1. To my knowledge, I have been

26   eligible for step 2 for approximately over one year.

27

28

1 of 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

25  is true and correct.

26  Executed _January_ __25__, 2019, in _Florence_, AZ.
         (Month)      (Day)

27

28

Quinton Hollis

2 of 2

EXHIBIT 19

1   Kathleen E. Brody (Bar No. 026331)
    **ACLU FOUNDATION OF ARIZONA**
2   3707 North 7th Street, Suite 235
    Phoenix, Arizona 85013
3   Telephone: (602) 650-1854
    Email: kbrody@acluaz.org

4   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
    *Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
5   *Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
    *Desiree Licci, Joseph Hefner, Joshua Polson, and*
6   *Charlotte Wells, on behalf of themselves and all others*
    *similarly situated*
7
    **[ADDITIONAL COUNSEL LISTED ON**
8   **SIGNATURE PAGE]**

9   Asim Dietrich (Bar No. 027927)
    **ARIZONA CENTER FOR DISABILITY LAW**
10  5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
11  Telephone: (602) 274-6287
    Email: adietrich@azdisabilitylaw.org
12
    *Attorneys for Plaintiff Arizona Center for Disability Law*
13
    **[ADDITIONAL COUNSEL LISTED ON**
    **SIGNATURE PAGE]**
14

15              UNITED STATES DISTRICT COURT

16                   DISTRICT OF ARIZONA

17  Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-ROS
    Dustin Brislan; Sonia Rodriguez; Christina
18  Verduzco; Jackie Thomas; Jeremy Smith; Robert        **DECLARATION OF**
    Gamez; Maryanne Chisholm; Desiree Licci; Joseph      **JOHN ROMERO (#247367)**
19  Hefner; Joshua Polson; and Charlotte Wells, on
    behalf of themselves and all others similarly
20  situated; and Arizona Center for Disability Law,

21                   Plaintiffs,

22          v.

    Charles Ryan, Director, Arizona Department of
23  Corrections; and Richard Pratt, Division Director,
    Division of Health Services, Arizona Department of
24  Corrections, in their official capacities,

                     Defendants.
25

26

27

28

1    I, John Romero, hereby declare:

2        1.      I am a prisoner in the custody of the Arizona Department of Corrections,

3    ADC# 247367.  I am currently housed in ASPC Lewis, Rast Unit.  I have been in this unit

4    since March of 2016.  I am over 18 years of age.  If called as a witness, I could and would

5    testify competently to the facts stated herein, all of which are within my personal

6    knowledge.

7        2.      I do not take exercise because the outside cages strongly smell of urine.  No

8    restroom is available, and ADC staff rarely take you to the restroom when you ask them to

9    while outside for exercise.

10       3.      I am currently a Step 1, but in at least the last 11 months, no programming

11   or unstructured time has been offered to me or anyone I've seen in my housing pod.

12       4.      ADC staff have not mentioned any type group programming that might be

13   available to us.  We struggle to get our sample questions answered by our COIII.

14       Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

15   is true and correct.

16       Executed December 23 2018, in Buckeye, AZ.

17

18   _____

19   John Romero

20

21

22

23

24

25

26

27

28

# EXHIBIT 20

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
*Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
*Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
*Desiree Licci, Joseph Hefner, Joshua Polson, and*
*Charlotte Wells, on behalf of themselves and all others*
*similarly situated*

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:  adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-ROS <br><br><br> **DECLARATION OF MIGUEL BERROTERAN (#076611)** |

I, _Miguel Berroteran_, hereby declare:                    Y·K·60

1.    I am a prisoner in the custody of the Arizona Department of Corrections, ADC# _076 611_. I am currently housed in _Browning 6 King 60_. I have been in this unit for _approximately 13 months_. I am over 18 years of age. If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge.

#2 I am a step 3

#3 At times, ADC officers exercise to my pod at 5:30 AM or 6:00 AM when most prisoners are asleep.

#4 We do not receive "step Rec / Basketball rec."

#5 At times, our pod is on "Hard lockdown" or exercise is canceled, due to staff shortages. During these times, I see only one custody officer walking the pod.

#6 On days I take exercise I cannot porter. On days I porter, I cannot take exercise.

#7 I am the shower porter in my pod.

#8 ADC does not provide warm clothes during winter unless you buy them. This contributes to me not wanting to take exercise in the cold early morning.

1 of 2

#9 Other than a class once a week, exercise, or being a porter, there is no other out-of-cell time offered to me.

#10 IF I take exercise and take a shower after, at times I have been left in the shower for up to two hours. This discourages me from taking rec. IF other people are are stuck in the shower before I take exercise, it means I won't get a shower after exercise. This discourages me from taking exercise.

#11 When exercise is offered in the afternoon, we often get back without enough time to take a shower before we are required to be in our cells. This discourages me from taking exercise.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed ___Janaury___  ___25___, 2019, in ___Florence___, AZ.
        (Month)     (Day)

Miguel Bellotian

2 oF 2

# EXHIBIT 21

1    Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**

2    3707 North 7th Street, Suite 235
Phoenix, Arizona 85013

3    Telephone:  (602) 650-1854
Email: kbrody@acluaz.org

4

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*

5    *Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
*Jeremy Smith, Robert Gamez, Maryanne Chisholm,*

6    *Desiree Licci, Joseph Hefner, Joshua Polson, and*
*Charlotte Wells, on behalf of themselves and all others*

7    *similarly situated*

**[ADDITIONAL COUNSEL LISTED ON**

8    **SIGNATURE PAGE]**

9    Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**

10   5025 East Washington Street, Suite 202
Phoenix, Arizona 85034

11   Telephone:  (602) 274-6287
Email:  adietrich@azdisabilitylaw.org

12   *Attorneys for Plaintiff Arizona Center for Disability Law*

13   **[ADDITIONAL COUNSEL LISTED ON**
**SIGNATURE PAGE]**

14

15                 UNITED STATES DISTRICT COURT

16                   DISTRICT OF ARIZONA

17   Victor Parsons; Shawn Jensen; Stephen Swartz;    No. CV 12-00601-PHX-ROS
Dustin Brislan; Sonia Rodriguez; Christina

18   Verduzco; Jackie Thomas; Jeremy Smith; Robert
Gamez; Maryanne Chisholm; Desiree Licci; Joseph    **DECLARATION OF**

19   Hefner; Joshua Polson; and Charlotte Wells, on    **TIMOTHY MONK (#068675)**
behalf of themselves and all others similarly

20   situated; and Arizona Center for Disability Law,

21                  Plaintiffs,

22        v.

Charles Ryan, Director, Arizona Department of

23   Corrections; and Richard Pratt, Division Director,
Division of Health Services, Arizona Department of

24   Corrections, in their official capacities,

                  Defendants.

25

26

27

28

I, Timothy Monk, hereby declare:

1.     I am a prisoner in the custody of the Arizona Department of Corrections, ADC# 068675.  I am currently housed in ASPC Lewis, Rast Unit.  I have been in this unit since January 6, 2015.  I am over 18 years of age.  If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge.

2.     I am currently a Step 3.

3.     At times, I have refused outdoor exercise because no restroom is available and the cages are dirty.  We are also not given the opportunity to shower after exercising.  While outside in the cages, there is no water available, and we either have dirty ice or no ice at all.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed December _18_, 2018, in Buckeye, AZ.

Timothy Monk

# EXHIBIT 22

1  Kathleen E. Brody (Bar No. 026331)
   **ACLU FOUNDATION OF ARIZONA**
2  3707 North 7th Street, Suite 235
   Phoenix, Arizona 85013
3  Telephone:  (602) 650-1854
   Email: kbrody@acluaz.org
4
   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
5  *Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
   *Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
6  *Desiree Licci, Joseph Hefner, Joshua Polson, and*
   *Charlotte Wells, on behalf of themselves and all others*
7  *similarly situated*

8  **[ADDITIONAL COUNSEL LISTED ON
   SIGNATURE PAGE]**

9  Asim Dietrich (Bar No. 027927)
   **ARIZONA CENTER FOR DISABILITY LAW**
10 5025 East Washington Street, Suite 202
   Phoenix, Arizona 85034
11 Telephone:  (602) 274-6287
   Email:  adietrich@azdisabilitylaw.org
12
   *Attorneys for Plaintiff Arizona Center for Disability Law*
13
   **[ADDITIONAL COUNSEL LISTED ON
14 SIGNATURE PAGE]**

15             UNITED STATES DISTRICT COURT

16                  DISTRICT OF ARIZONA

17 Victor Parsons; Shawn Jensen; Stephen Swartz;      No. CV 12-00601-PHX-ROS
   Dustin Brislan; Sonia Rodriguez; Christina
18 Verduzco; Jackie Thomas; Jeremy Smith; Robert      **DECLARATION OF**
   Gamez; Maryanne Chisholm; Desiree Licci; Joseph    **MARC FASASNO (#271456)**
19 Hefner; Joshua Polson; and Charlotte Wells, on
   behalf of themselves and all others similarly
20 situated; and Arizona Center for Disability Law,

21                      Plaintiffs,

22                         v.

23 Charles Ryan, Director, Arizona Department of
   Corrections; and Richard Pratt, Division Director,
24 Division of Health Services, Arizona Department of
   Corrections, in their official capacities,

25                     Defendants.

26

27

28

I, Marc Fasano, hereby declare:

1.      I am a prisoner in the custody of the Arizona Department of Corrections, ADC# 271456.  I am currently housed in ASPC Florence, Kasson Unit.  I have been in this unit for at least 15 months.  I am over 18 years of age.  If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge.

2.      I am designated as SMI.  I am currently a Step 2.  In my experience, we do not receive unstructured time (table time).  There is no table for us to go to.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed December 14 2018, in Florence, AZ.

Marc Fasano

# EXHIBIT 23

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
*Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
*Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
*Desiree Licci, Joseph Hefner, Joshua Polson, and*
*Charlotte Wells, on behalf of themselves and all others*
*similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-ROS |
| Plaintiffs, | **DECLARATION OF REFUGIO CRUZ (#112552)** |
| v. | |
| Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

I, Refugio Cruz, hereby declare:

1.     I am a prisoner in the custody of the Arizona Department of Corrections, ADC# 112552.  I am currently housed in ASPC Lewis, Rast Unit.  I have been in this unit for at least 14 months.  I am over 18 years of age.  If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge.

2.     I am designated as SMI.  I am currently a Step 3.

3.     ADC have stopped offering table time consistently in our pod.  At times, we have gone at minimum of two weeks without table time.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed December 18 2018, in Buckeye, AZ.

Refugio Cruz