**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Victor Antonio Parsons, et al., | No. CV-12-00601-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. |  |
| Charles L Ryan, et al., |  |
| Defendants. |  |

Plaintiffs have filed two motions related to payment. (Docs. 3017, 3026.) The first seeks attorneys' fees and costs for their efforts to enforce the Stipulation from July 1, 2017 through June 30, 2018. (Doc. 3017.) The second relates to payment for monitoring fees for 2018 (Doc. 3026). As detailed below, the Court will grant both motions.

**I.      Fees and Costs for Enforcement**

This is Plaintiffs second motion for fees stemming from their efforts to enforce the Stipulation. In ruling on the first motion, which addressed Plaintiffs' costs and fees prior to July 1, 2017, the Court concluded that Plaintiffs were entitled to fees and detailed its rationale for the awarded hourly rate, the application of a multiplier, and several limitations on costs. (Doc. 2902.) Plaintiffs' current request concerns work between July 1, 2017 and June 30, 2018 but Defendants offer the same objections to this request as they did to the first. Having previously considered their objections, there is no discernable basis to deviate from the Court's rationale and the Court will only briefly address Defendants' objections.

Defendants maintain that the only way to determine whether Plaintiffs were the prevailing party with respect to a dispute raised in a motion to enforce (thereby triggering

recovery of Motion to Enforce Fees pursuant to Paragraph 43) is if each time entry includes: (1) the task performed in bringing a dispute by way of a motion to enforce; (2) the performance measure and facility sought to be enforced; and (3) the date of the enforcement motion. Although not entirely clear, Defendants appear to assume that compensable fees must be tied to *filing* a motion to enforce. The Court does not read the Stipulation so narrowly. To do so would only compensate Plaintiffs for bringing the initial motion to enforce. As Defendants have amply demonstrated, however, that for many critical healthcare measures the motion to enforce is but the first step in the seemingly unending march toward compliance. Because the efforts expended by Plaintiffs were uniformly geared toward enforcing the Stipulation, which was only necessary because of Defendants' failure to comply with the Stipulation in the first instance (or second or third).

Nor does the Court have any difficulty crediting Plaintiffs even if an entire motion to enforce was not ultimately successful because the effort to review Defendants' compliance is not lessened if a small fraction of performance measures are ultimately deemed compliant or ineligible for a remedial plan because of the delay between filing the motion and the Court's decision on it. In other words, if Defendants bring a measure into compliance or show a trend toward compliance, the Court still deems Plaintiffs the prevailing party because the majority of performance measures were noncompliant when Plaintiffs filed their motions to enforce.

Most critically, however, Defendants do not meaningfully object to Plaintiffs' specific bills and only lodge wholesale objections that were not credited in the Court's first order and are no more persuasive now.[1] For the reasons cited in the Court's prior order, the Court also affirms its payment rate and multiplier. To the extent Defendants' response is an invitation to revisit those rulings, the Court declines.

Based on the Court's prior rulings, Plaintiffs have applied for $1,602,955.20 in fees and $45,082.60 in costs for a total of $1,648,037.80 in work performed between July 1,

---

[1] Both parties have appealed the Court's Order on attorneys' fees. (Doc. 2936, 2957) While the cross-appeals are pending, the Court's Order remains the law of the case. *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995).

- 2 -

2017 and June 30, 2018. Consistent with the Court's prior ruling, however, Plaintiffs will not be compensated for unpaid law clerk time. The Court will reduce the award by $14,916 (or $7458 before the multiplier). Thus, the Court will award Plaintiffs $1,588,039.20 in fees and $45,082.60 in costs for a total of $1,633,121.80.

## II. Monitoring Fees Under Paragraph 44 of the Stipulation

Plaintiffs also move for partial payment of the $250,000 annual monitoring fee set forth in paragraph 44 of the parties Stipulation. (Doc. 3017.) Paragraph 44 states in full:

> Plaintiffs' counsel shall be compensated for work reasonably performed or costs incurred to monitor or enforce the relief set forth in this Stipulation up to $250,000 per calendar year. In exchange for Plaintiffs' agreement to a cap on the amount of fees, Defendants shall not dispute the amount sought unless there is an obvious reason to believe that the work was unreasonable or the bill is incorrect. . . . Plaintiffs' counsel shall submit an invoice for payment quarterly along with itemized time records and expenses. Defendants shall pay the invoice within thirty (30) days of receipt. This limitation on fees and costs shall not apply to any work performed in mediating disputes before the Magistrate [Judge] pursuant to paragraphs 22, 29, and 31 above, or to any work performed before the District Court to enforce or defend this Stipulation.

(Doc. 1185.) Plaintiffs allege that they submitted an invoice consistent with Paragraph 44 on August 14, 2018 and received no payment or response within 30 days. After two more failed attempts to communicate with Defendants, Plaintiffs filed their motion to enforce payment of the monitoring fees.

Defendants raise two primary objections that can generously be described as distractions. First, they claim that Plaintiffs should have attempted to meet and confer before filing their motion, ignoring that Plaintiffs' attempts to communicate that went unanswered. Next, Defendants argue that Paragraph 44 does not deprive them of an opportunity to challenge Plaintiffs' monitoring bills (and they go on to identify several categories of objections). Defendants interpretation of Paragraph 44 requires herculean effort. That provision benefitted both sides by limiting Defendants' exposure for monitoring fees by guaranteeing payment to Plaintiffs within a time certain. Defendants—apparently—want an unlimited amount of time to object to a negotiated fee schedule. But

1 | none of Defendants' belated objections present "an obvious reason to believe that the work was unreasonable or the bill is incorrect." Defendants were required to pay the bill within 30 days and they did not; any objection is therefore waived, and Defendants must remit any remaining payment within 10 days.[2]

**IT IS THEREFORE ORDERED granting** Plaintiffs' Motion to Enforce Payment of Monitoring Fees. (Doc. 3026) Defendants shall ensure that Plaintiffs' August 14, 2018 invoice is paid in full within 7 days of the date of this Order with interest accruing from September 13, 2018, and calculated pursuant to 28 U.S.C. § 1961.

**IT IS FURTHER ORDERED granting** Plaintiffs' Motion for Attorneys' Fees and Costs. (Doc. 3017)

**IT IS FURTHER ORDERED** awarding Plaintiffs $1,602,955.20 in attorneys' fees and $45,082.60 in costs, for a total of $1,648,037.80 pursuant to the parties' Stipulation. The Clerk of Court must enter judgment against Defendants accordingly.

Dated this 3rd day of May, 2019.

Honorable Roslyn O. Silver
Senior United States District Judge

---

[2] The Court understands that this payment will constitute the completion of payment under Paragraph 44 for calendar year 2018.