Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen*
*Swartz, Sonia Rodriguez, Christina Verduzco,*
*Jackie Thomas, Jeremy Smith, Robert Gamez,*
*Maryanne Chisholm, Desiree Licci, Joseph Hefner,*
*Joshua Polson, and Charlotte Wells, on behalf of*
*themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON**
**SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability*
*Law*

**[ADDITIONAL COUNSEL LISTED ON**
**SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-ROS <br><br><br> **PLAINTIFFS' SUR-REPLY TO DEFENDANTS' REPLY (DOC. 3216) TO PLAINTIFFS' RESPONSE (DOC. 3157) TO DEFENDANTS' MOTION TO TERMINATE MAXIMUM CUSTODY PERFORMANCE MEASURES (DOC. 3108)** |

LEGAL23774493.1

## I.     Introduction

On January 11, 2019, Defendants moved to terminate monitoring and reporting of maximum custody performance measures.  Doc. 3108.  On February 22, 2019, Plaintiffs responded in part by offering evidence indicating Defendants had not randomly selected prisoners for monitoring, as required by the Stipulation.  Doc. 3157 at 14-16; Doc. 3160-1, Exhibit 1 (FRE 1006 Summary Exhibit "Prisoners Chosen for Maximum Custody Performance Review") (detailing evidence Defendants were not randomly selecting prisoners for monitoring by listing 111 prisoners selected repeatedly for inclusion in Defendants' monitoring sample).  Defendants replied on April 16, 2019—vehemently asserting they had randomly selected prisoners for monitoring.  Doc. 3216 at 9-13.

Upon review of Defendants' Reply, particularly Defendants' detailed explanation of how they implemented their sampling methodology (Doc. 3216 at 9-49), Plaintiffs uncovered the source of a crucial and fatal flaw in Defendants' sampling methodology.  Subsequently, Plaintiffs' expert, Dr. Craig Haney, confirmed that Defendants' sampling methodology is not an accepted form of random selection.  *See* Declaration of Craig Haney ¶ 14 ("Specifically, because Defendants have not begun their . . . sampling with a random start . . . Defendants are not randomly sampling records.").  On April 26, 2019, Plaintiffs asked this Court for leave to file a sur-reply on the methodological issue they had uncovered.  Doc. 3226.  This Court granted Plaintiffs' request.  Doc. 3228.

## II.     Defendants' Monthly Selection of Prisoners to be Monitored is Not Random and Is Therefore Not Compliant with the Stipulation for MCPM Nos. 1-3, 5-6, and 8

The Stipulation requires Defendants to monitor compliance with the Maximum Custody Performance Measures (MCPMs) by auditing Daily Out of Cell Time Tracking Forms (records) "for one randomly selected week for each month monitored, for 10 **randomly selected** prisoners."  *See* Doc. 1185, Exhibit E "Maximum Custody Outcome Measure Protocol" at 41-45 (emphasis added) (requiring random selection for MCPM

Nos. 1-3, 5, 6, and 8).[1]  Defendants have failed to randomly sample records as required by the Stipulation.  For that reason, and for the additional reasons stated in Plaintiffs' Response (Doc. 3157), this Court should deny Defendants' Motion to Terminate Monitoring and Reporting of Maximum Custody Performance Measures (Doc. 3108).

Plaintiffs' methodological complaints are not new.  Plaintiffs have repeatedly raised the issue of Defendants' flawed implementation of their chosen sampling methodologies for monitoring both the maximum custody and health care performance measures.  *See* Doc. 1944, Plaintiffs' Motion to Enforce the Stipulation, at 9-10 (explaining the "near-impossibility" that the weeks Defendants selected for monitoring were randomly selected); Doc. 3108 at 14-17 (discussing evidence of non-random sampling by Defendants in violation of the Stipulation).  While Defendants groundlessly characterize Plaintiffs' random-selection arguments as a "conspiracy theory" (Doc. 3216 at 13), this Court has already found serious and pervasive methodological errors by Defendants based upon Plaintiffs' complaints, written evidence, and sworn testimony of Corizon and ADC employees.  *See, e.g.*, Doc. 2900 at 12 (finding multiple issues with Defendants' monitoring and methodology, and explaining that "evidence of structural weaknesses in the monitoring program demand[s] a high level of audit integrity").

Defendants have responded to Plaintiffs' complaints by displaying a fundamental misunderstanding of random selection, or by demanding Plaintiffs do Defendants' methodological work for them.  *See* Doc. 3216 at 13 ("Plaintiffs' entire exercise [regarding random selection] should be ignored . . . where Plaintiffs fail to provide the Court [with information] demonstrating that the inmates selected for monitoring *were not randomly selected*.").  This is not the first time Defendants have failed to understand the concept of random selection.  *See* Doc. 1984 at 8 ("Plaintiffs have offered absolutely no evidence to suggest that unit staff . . . knew exactly which week may be monitored . . . ");[2]

---

[1] Plaintiffs previously did not contest termination of monitoring and reporting for MCPMs 4 and 7.

[2] The question is not whether Defendants knew exactly what weeks would be selected for monitoring, but whether each week in the sampling pool had an equal chance

*See also, e.g.*, Declaration of Craig Haney (Doc. 2090) ¶ 3 ("Although [Defendants] refer to this [methodological] process as 'randomizing' the source documents . . . this is in fact not a random process, and will not yield a sample that is representative of the larger population from which the sample is drawn.").

It is Defendants'—not Plaintiffs'— responsibility to perform Defendants' obligations under the terms of the Stipulation, and it is the Defendants' burden to prove that they have performed their obligations competently and correctly before they can argue that they are entitled to the termination of monitoring.  *See* Doc. 1185 ¶ 18 ("Defendants **shall comply** with the maximum custody performance measures . . . ." (emphasis added)); *see also Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 (1992) ("[A] party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree."); *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000) ("A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction."); *Gilmore v. California*, 220 F.3d 987, 1007 (9th Cir. 2000) ("[N]othing in the termination provisions [of the Prison Litigation Reform Act] can be said to shift the burden of proof from the party seeking to terminate prospective relief.").[3]  Nevertheless, Plaintiffs have uncovered the source of a profound methodological flaw fatal to Defendants' chosen sampling methodology.

### III. Random Sampling Requires an Equal Chance of Sampling Any Particular Record; Interval Sampling Requires a Randomly-Selected Starting Point

For a sample selection to be random, it must be drawn in a manner ensuring "that no one case from the universe of cases has any higher probability or likelihood of being

---

of being selected in accordance with the principle of random selection as required by the Stipulation.

[3] Defendants do not seek termination under the PLRA but rather under the terms of the Stipulation.  (Doc. 3108 at 1).  Nothing in the PLRA or otherwise is inconsistent with "the ordinary rule that the party seeking an order bears the burden of proof."  *Coleman v. Brown*, 938 F. Supp. 2d 955, 960 (E.D. Cal. 2013).

included in the sample than any other."[4]  Haney Decl. ¶ 5.  To achieve the Stipulation's required random selection, Defendants have chosen a type of probability sampling known as systematic, or interval random sampling.  Interval sampling is a "method of random sampling in which, after a **random start**, every *Nth* sample is selected from a sampling frame containing all possible cases from which to sample records."[5]  Haney Decl. ¶ 8 (emphasis added).  However, a non-random initial selection destroys the randomness of the sampling technique, making the process non-random and potentially biased.  Haney Decl. ¶¶ 10-11.

### IV.   Defendants Failed to Randomly Sample Records for Monitoring by Beginning Their Sampling with the First Record Listed or a Record Not Demonstrated to be Randomly Selected

Utilizing the detailed explanation within their Reply of how Defendants implemented their sampling methodology (Doc. 3216 at 9-49), Plaintiffs have determined that Defendants regularly begin their sampling selection with the first name listed within their sampling pool, or begin at a starting point not demonstrated to be randomly selected. *See, e.g.*, Doc 3211-1 (filed under seal as Defendants' Exhibit 3) at 4, 16 (showing Maximum Custody and SMI sampling beginning with the first name in sampling pool); Doc. 3211-1 (filed under seal as Defendants' Exhibit 22) at 6 (showing SMI starting selection not demonstrated to be randomly selected).  This fundamental error alone is fatal to Defendants' chosen methodology and is a sufficient ground for this Court to deny Defendants' Motion to Terminate.

For the period subject to Defendants' Motion to Terminate, November 2016–October 2018, Plaintiffs have conducted an exhaustive review of the count sheets from the Eyman-Browning, Eyman-SMU I, Lewis, and Florence facilities Defendants used as their sampling pool.  In 136 instances out of 192 total, Defendants began their sampling with the first name listed on the count sheet, or with the first SMI prisoner listed.  *See*

---

[4] For convenience, Plaintiffs here refer to the "universe of cases" from which Defendants sample records as the *sampling pool*.
[5] The random start should be generated between the first record and the sampling interval.  *See* Haney Decl. ¶ 9.

Declaration of Jessica Carns ¶ 5.  In the remaining 56 instances, Defendants began at a different start point not demonstrated to be randomly selected.[6]  *Id.*  Because Defendants regularly started their sampling with the first name listed on the count sheet or at a location not demonstrated to be randomly selected, their methodology does not qualify as random sampling.  *See* Haney Decl. ¶ 14 ("Specifically, because Defendants have not begun their interval random sampling with a random start, their chosen methodology is not compliant with the basic, critical principle of random sampling, i.e., Defendants are not randomly sampling records.").

**V.     Defendants' Failure to Randomly Sample Records Substantially Distorts the Data Used for Monitoring the MCPMs**

Random sampling is required by the Stipulation for a good reason: without it, the data produced is not representative of the whole—fatally undermining the entire purpose of monitoring Defendants' performance under the Stipulation.  *See* Haney Decl. ¶¶ 6-7 ("Random sampling . . . allows information derived from the smaller sample to be generalized to the larger universe of cases . . . . [and] serves as a safeguard against the possibility that the sample . . . was inadvertently or intentionally biased or skewed.").  As implemented, Defendants' methodology dramatically skews the data used to monitor the MCPMs.

The primary way in which Defendants' implemented methodology distorts their monitoring data is by artificially shifting the probability of selecting any given record to a narrow band of records.  This shift in probability effectively eliminates the possibility of selecting a different record in the place of those with an artificially high probability of being selected.  *See* Haney Decl. ¶ 14 ("Defendants' error shifts the sampling probabilities such that certain records . . . are much more likely to be selected than others, which have . . . [a] virtually zero percent chance of being selected.").  For example, at ASPC Eyman-

---

[6] Even if Defendants arbitrarily selected a starting position in these instances, the starting point would not have been **randomly** selected.  *See* Haney Decl. ¶ 5 ("A random sample is not a sample that is selected in an arbitrary, haphazard, or idiosyncratic fashion.").

Browning, in November, December, and January of 2016, the sampling interval was 77—meaning that every 77th record was selected.  *See* Carns Decl., Exhibit 1 "FRE Summary Exhibit 'Summary of Defendants' Starting Sample Selections'" at 3.  For five of the six samples drawn, Defendants began their sampling with the first name listed on the count sheet,[7] resulting—inexorably—in the 77th record (and subsequent multiples thereof) being included in the sample.  That is, the 77th record had a 100% chance of being included in the sample for five of the six sampling selections; all other records had a zero percent chance of being selected.  This is not random sampling.  *See* Haney Decl. ¶ 14. From November 2016 to October 2018, the sampling interval at ASPC Eyman-Browning ranged from 67 to 77, which means that records in that narrow, ten-record band (and subsequent multiples thereof) were certain to be included in the sample used for monitoring, whereas records not in that probability band had a virtually zero percent chance of being selected.  *See* Carns Decl., Exhibit 1 at 3.

Another way in which Defendants' sampling methodology may skew the monitoring data is by unintentionally or intentionally intersecting with any hidden periodicities or other structural organization of the data in the sampling pool.  *See* Haney Decl. ¶¶ 11-12.  Defendants' sampling pool appears to be organized by housing pod, which may be a source of hidden periodicities or other structural organization leading to biased results.  *See* Haney Decl. ¶ 11 ("In this instance, the sampling pool appears to be arranged by housing pod, which may introduce hidden, systematic bias into the sample if not sampled correctly.").  This is one reason the random start required by interval random sampling is an essential part of the methodology.  *Id.* at ¶¶11-12.

Ultimately, Defendants' flawed sampling methodology tied the probability of any record being included in the sample to the total population from which the sample was drawn.  *See* Haney Decl. ¶ 14 (explaining how Defendants' flowed methodology tied their

---

[7] For Defendants' December 2016 Maximum Custody Sample at ASPC Eyman-Browing, Defendants began at a starting position not demonstrated to be randomly selected.

sampling slection to the total population of the sampling pool).  For instance, from December 2017 to October 2018, the sampling pool of maximum custody prisoners for ASPC Eyman-Browing ranged from 741 to 760, resulting in a sampling interval from 74 to 76.  *See* Carns Decl., Exhibit 1 at 3.  This means that starting with the first name on the count sheet, one would be guaranteed to select the 74th, 75th, or 76th record (and subsequent multiples thereof) for inclusion in the sample.  All other records had a zero percent chance of being selected.  This is not random sampling,[8] and this methodology violates the requirements of the Stipulation.   In light of Defendants' failure to appropriately begin their sampling with a random start as is required by interval random sampling,[9] this Court cannot find Defendants' chosen sampling methodology to be in compliance with the terms of the Stipulation.  *See* Doc. 1185, Exhibit E "Maximum Custody Outcome Measure Protocol" at 41-45 (emphasis added) (requiring that records be "randomly selected"for MCPM Nos. 1-3, 5, 6, and 8); Doc. 3160-1 (FRE 1006 Summary Exhibit "Prisoners Chosen for Maximum Custody Performance Review") (detailing evidence Defendants were not randomly selecting prisoners for monitoring by listing 111 prisoners selected repeatedly for inclusion in Defendants' monitoring sample); Carns Decl., Exhibit 1 "FRE 1006 Summary Exhibit 'Summary of Defendants' Starting Sample Selections.'"

## VI.   Conclusion

Time after time, Defendants have failed to comply with the terms of the Stipulation.   Defendants have repeatedly failed to implement the required sampling methodologies correctly; they have failed again here.  For the reasons stated above, and for the additional reasons stated in Plaintiffs' Response (Doc. 3157), this Court should deny Defendants' Motion to Terminate Monitoring and Reporting of Maximum Custody Performance Measures (Doc. 3108).[10]

---

[8] *See* Haney Decl. ¶ 14.
[9] *Id.*
[10] Plaintiffs reiterate their request that in the alternative, this Court order an evidentiary hearing to evaluate whether or not Defendants have met their burden.  *See*

| | |
|---|---|
| 1 | Dated:  May 6, 2019 |

**ACLU NATIONAL PRISON PROJECT**

By: _____s/ Ryan M. Kendall_____
   David C. Fathi (Wash. 24893)*
   Amy Fettig (D.C. 484883)**
   Ryan M. Kendall (Cal. 324714)*
   915 15th Street N.W., 7th Floor
   Washington, D.C. 20005
   Telephone:  (202) 548-6603
   Email:     dfathi@aclu.org
                afettig@aclu.org
                rkendall@aclu.org

   *Admitted *pro hac vice*.  Not admitted
    in DC; practice limited to federal
    courts.
   **Admitted *pro hac vice*

   Daniel C. Barr (Bar No. 010149)
   Amelia M. Gerlicher (Bar No. 023966)
   John H. Gray (Bar No. 028107)
   **PERKINS COIE LLP**
   2901 N. Central Avenue, Suite 2000
   Phoenix, Arizona 85012
   Telephone:  (602) 351-8000
   Email:     dbarr@perkinscoie.com
                agerlicher@perkinscoie.com
                jhgray@perkinscoie.com

   Kathleen E. Brody (Bar No. 026331)
   **ACLU FOUNDATION OF
   ARIZONA**
   3707 North 7th Street, Suite 235
   Phoenix, Arizona 85013
   Telephone:  (602) 650-1854
   Email:     kbrody@acluaz.org

Doc. 3157 at 24.

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
              ahardy@prisonlaw.com
              snorman@prisonlaw.com
              ckendrick@prisonlaw.com
              rlomio@prisonlaw.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez;
Christina Verduzco; Jackie Thomas;
Jeremy Smith; Robert Gamez; Maryanne
Chisholm; Desiree Licci; Joseph Hefner;
Joshua Polson; and Charlotte Wells, on
behalf of themselves and all others
similarly situated*

**ARIZONA CENTER FOR DISABILITY
LAW**

By:    s/ Maya Abela
              Asim Dietrich (Bar No. 027927)
              5025 East Washington Street, Suite 202
              Phoenix, Arizona 85034
              Telephone:  (602) 274-6287
              Email:    adietrich@azdisabilitylaw.org

              Rose A. Daly-Rooney (Bar No. 015690)
              J.J. Rico (Bar No. 021292)
              Maya Abela (Bar No. 027232)
              **ARIZONA CENTER FOR
              DISABILITY LAW**
              177 North Church Avenue, Suite 800
              Tucson, Arizona 85701
              Telephone:  (520) 327-9547
              Email:
                rdalyrooney@azdisabilitylaw.org
                    jrico@azdisabilitylaw.org
                    mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for
Disability Law*

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 6, 2019, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
Richard M. Valenti
Jamie D. Guzman
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com

*Attorneys for Defendants*

s/ Jessica Carns