Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: kbrody@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, Plaintiffs, v. Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, Defendants. | No. CV 12-00601-PHX-ROS **DECLARATION OF CRAIG HANEY, Ph.D., J.D.** |

LEGAL23774493.1

I, CRAIG HANEY, DECLARE:

1. I am a professor of psychology at the University of California, Santa Cruz. I am also a Distinguished Professor in the University of California system, a distinction reserved for professors who have reached the very highest level of the professoriate, after being nominated by our respective universities and undergoing a national and international review. In addition, I recently served as the UC Presidential Chair, 2015-2018, an honor bestowed typically on one faculty member from each University of California campus, in recognition of the distinguished nature of their research program.

2. My education, training, and academic and professional experiences are all grounded in scientific methods and research methodology. I regularly conduct and publish scientific research. Additionally, as part of my duties as a faculty member at UC Santa Cruz, I teach research methods to Ph.D.-level graduate students in the Psychology Department.

3. Additional information about my background and qualifications is set forth in my previous declaration in this case (Doc. 2048) and in my *curriculum vitae*, which is attached to that declaration.

4. Counsel for Plaintiffs have asked me to discuss whether the sampling methodology for the Maximum Custody Performance Measures (MCPMs) Nos. 1-3, 5-6, and 8 used by Defendants can be considered random. I have reviewed a selection of the Defendants' count sheet exhibits attached to their Reply (Doc. 3216, Exhibits 3-37) and Defendants' description of how they implemented their sampling methodology (Doc. 3216 at 9-49) provided to me by Plaintiffs.

**The Critical Importance of Random Sampling**

5. Attorneys for Plaintiffs have asked me to discuss principles of sampling methodology with a focus on the nature and function of random sampling. Random sampling is the process of selecting a sample of cases (such as persons, patients, files, outcomes, or events) from a larger universe of cases (known as a sampling frame) to ensure that the sample is unbiased, and therefore, representative of the larger population

LEGAL23774493.1

as a whole. "Random sampling" has a very specific and precise meaning. A random sample is not a sample that is selected in an arbitrary, haphazard, or idiosyncratic fashion. Rather, random sampling techniques ensure that no one case from the universe of cases has any higher probability or likelihood of being included in the sample than any other.

6. Random sampling is done to maximize the representativeness of the sample—that is, to ensure that a smaller sample properly "represents" the characteristics of the larger whole or universe from which it is drawn. Sampling is typically done when the universe of cases is too large to study or analyze in its entirety. Randomly sampling from the universe of cases allows information derived from the smaller sample to be generalized to the larger universe of cases within a margin of error that depends on the size of the sample that has been randomly drawn.

7. Random sampling is important in many kinds of research because it serves as a safeguard against the possibility that the sample that has been drawn (upon which inferences about the larger universe of cases will be made) was inadvertently or intentionally biased or skewed. If that were so, the sample would not faithfully represent that larger universe of cases to which researchers (or, in this instance, auditors) want to generalize.

8. Attorneys for Plaintiffs have asked me to opine specifically on a random sampling technique known as systematic, or interval, random sampling. I incorporate here by reference my previous declaration about random sampling generally (Doc. 2048 ¶¶ 5-14). Interval random sampling is a method of random sampling in which, after a random start, every *Nth* sample is selected from a sampling frame containing all possible cases from which to sample records.

9. In performing interval random sampling, the total population of cases from which one draws the sample is divided by the desired sample size. The resulting number then becomes the sampling interval or skip interval. For example, if one has a universe of 500 cases and wants a sample size of ten cases, dividing 500 by ten results in a skip interval of 50—meaning that after a random start one would select every 50th case for

inclusion in the sample. The sampling start point for interval random sampling should be randomly selected between the first record and the interval sample—in the example here, that would mean generating a random start point between the first record and the fiftieth record.

10. The defining feature of random sampling is that no one case from the universe of cases has any higher probability or likelihood of being included in the sample than any other. Because of the systematic selection of interval random sampling, it is essential that the first sampling selection is randomly selected from between the first record and the skip interval. If this is not done, then the method fails to be an accepted random sampling technique.

11. While interval random sampling is an accepted sampling methodology, it contains weaknesses not found in simple random sampling. If the universe of cases is organized in a manner that contains hidden periodicities or other structural organization, the data may be biased. For example, if the sampling list is organized by ADC number, from lowest to highest, the prisoners toward the beginning of the list, with lower ADC numbers, are likely to be older on average than those toward the end, with higher ADC numbers. Thus, a sample drawn that was intentionally drawn from the beginning of such a list would be expected to overrepresent older prisoners compared to their representation in the population from which the sample is drawn. Likewise, if the list is organized by date (i.e., date of request, renewal, or encounter), the sample drawn by selecting every $Nth$ record without a random start would skew towards those individuals seen earlier in the month. In this instance, the sampling pool appears to be arranged by housing pod, which may introduce hidden, systematic bias into the sample if not sampled correctly. The point here is that there are often implicit and non-obvious patterns or periodicities that are built into the way that a list is organized so that taking every $Nth$ entry intersects inadvertently with those patterns, which compromises the randomness of the sample. The use of a random number generator to produce genuinely random number sequences would safeguard against that problem.

12. The accepted way of guarding against these sources of potential bias in interval sampling is to always utilize a random starting point between the first record and the skip interval, and by repeatedly sampling in this manner (such as is done here by sampling monthly). In the above example, with 500 total cases and a desired random sample of 10, a randomly selected starting point between 1 and 50 would be need to be chosen each time, and the skip interval of 50 would then be counted from that random starting. In the aggregate, both these measures (the random start and repeated sampling) are necessary and vital to shield the integrity of the sample.

13. Upon review of the exemplars drawn from Defendants' exhibits provided by Plaintiffs, as well as Defendants' explanation of how they implemented their sampling methodology (Doc. 3126 at 9-49), I have determined that Defendants have regularly begun their sampling with the first name on their sampling list, or they have begun at a start position not demonstrated to be randomly determined. This violates the process of true random selection.

14. Specifically, because Defendants have not begun their interval random sampling with a random start, their chosen methodology is not compliant with the basic, critical principle of random sampling, i.e., Defendants are not randomly sampling records. Defendants' error shifts the sampling probabilities such that certain records (those closer to the skip interval) are much more likely to be selected than others, which have a very low or virtually zero percent chance of being selected. Furthermore, because the skip interval is a division of the population size, instead of a random sample, the Defendants' sample is a function of the population of the sampling frame. This means that instead of samples being randomly selected, the samples that are selected are dependent on the underlying sample population size. For example, in a population of 500 with an interval sample of 50—and beginning with a non-random starting selection—one would **always** select the fiftieth record and then sequential multiples thereof (i.e., the 50th, 100th, and 150th records, etc.), which is not random sampling. This is a key reason why the selection of a random starting record is essential to interval random sampling.

[THIS PAGE LEFT BLANK]

| | |
|---|---|
| 1 | I declare under penalty of perjury that the foregoing is true and correct. |
| 2 | Executed this 4th day of May, 2019. |

*(signature: Craig Haney Ph.D., J.D.)*

Craig Haney, Ph.D., J.D.

**ADDITIONAL COUNSEL:**

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ryan Matthew Kendall (Calif. 324714)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:  dfathi@aclu.org
        afettig@aclu.org
        rkendall@aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:  dbarr@perkinscoie.com
        agerlicher@perkinscoie.com
        jhgray@perkinscoie.com

Kathleen E. Brody (Bar No. 026331)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:  kbrody@acluaz.org

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:   dspecter@prisonlaw.com
         ahardy@prisonlaw.com
         snorman@prisonlaw.com
         ckendrick@prisonlaw.com
         rlomio@prisonlaw.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email:   adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
   rdalyrooney@azdisabilitylaw.org
         jrico@azdisabilitylaw.org
         mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*