**EXHIBIT 1**

**EXHIBIT 1**

```
Office of the Arizona Attorney General
Michael E. Gottfried, Bar No. 010623
Assistant Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004-1592
Telephone: (602) 542-1645
Fax: (602) 542-3393
Michael.Gottfried@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
```

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>                          Plaintiffs,<br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>                          Defendants. | NO. 2:12-cv-00601-ROS<br><br>**DECLARATION OF RICHARD PRATT** |

I, **RICHARD PRATT**, make the following Declaration:

1. I am over the age of 18 years and have personal knowledge of and am competent to testify to the matters set forth in this Declaration.

2. I have been working with the Arizona Department of Corrections ("ADC") since July 2000, not including from October 2009 to July 2011, when I was employed elsewhere.

3. In February 2012, I was appointed Interim Assistant Director of ADC's Health Services Contract Monitoring Bureau ("HSCMB") following Dr. Michael Adu-Tutu's retirement. When Health Services was privatized in July 2012, my title was adjusted to be the Interim Assistant Director of ADC's HSCMB.

4. When Arthur Gross was hired to be the Assistant Director in October 2012, my position changed to Program Evaluation Administrator.

5. I was placed under a temporary special assignment as the Interim Assistant Director on March 1, 2014, when Mr. Gross retired.

6. I was named Assistant Director on August 2, 2014.

7. As Assistant Director, I am responsible for providing managerial oversight and direction to the HSCMB to monitor the contracted vendor's compliance with all aspects of the health services contract. I am also responsible for reviewing and responding to internal and external inquiries pertaining to compliance issues, contract specifications, reports, inspections, staffing levels, and legal mandates of inmate healthcare, mental health care, and dental care services.

8. I am familiar with ADC's policies and practices pertaining to healthcare, including medical care, dental care, and mental health care, the privatization of ADC healthcare, ADC's contract with Corizon, Corizon's responsibilities under that contract, and the HSCMB's monitoring of Corizon's care to ADC inmates.

9. I am personally familiar with the *Parsons* litigation, the resulting Stipulation, and the monitoring and reporting of the health care performance measures (HCPMs) in the Stipulation.

10. As Assistant Director of the HSCMB and a named Defendant in this case, I was closely involved in the negotiations between the parties that ultimately resulted in settlement of the lawsuit through the signing of a Stipulation.

11. In agreeing to the terms of the Stipulation on behalf of ADC, I understood that the HSCMB would be responsible for monitoring the healthcare performance

measures as stated in Exhibit B to the Stipulation using the specific protocols set forth in Exhibit C to the Stipulation.

12. The Monitor Guide, which is a living document, provides the methodology for monitoring each HCPM.

13. By the fifth day of each month, Corizon is to provide the HSCMB with source documents containing all records applicable to each HCPM.

14. The HSCMB uses a Microsoft Excel randomization function to develop randomized lists utilized in the monitoring process.

15. Randomized lists are further filtered as necessary to draw samples applicable to each specific HCPM.

16. Ten records per yard are randomly selected for each HCPM. If there are less than ten records, all are measured/monitored.

17. The data is collected in a retrospective manner, allowing for monitoring periods to be consistent and complete.

18. The data reporting period is the completed period of time prior to the month in which the monitoring is being conducted.

19. Thus, for June 2019 compliance scores, source document data will be collected and provided to HSCMB during the month of July 2019.

20. Collected source document data for June 2019 will then be reviewed and scored during the month of July 2019.

21. The entire month of July 2019 following the monitored month of June 2019 is required for HSCMB personnel to analyze HCPM source documents, determine compliance, and report compliance percentages for the HCPMs at issue in the Stipulation.

22. Specifically, it will take my monitoring staff the entire month of July 2019 to complete the review for the monitored month of June 2019.

23. Preliminary results for the monitored month of June 2019 will be presented to Corizon throughout the month of July 2019 as the results are completed by the

HSCMB. All preliminary results for the month of June 2019 will be completed and available for review by Corizon by August 1, 2019.

24. Corizon is allowed the first ten business days of August 2019 to rebut or dispute any preliminary findings for the monitored month of June 2019 made by the HSCMB. The final scores for the monitored month of June 2019 will be available on or about August 15, 2019.

25. Accordingly, in the normal course of operations, data regarding June 2019 compliance scores for HCMPs 6, 11, 12, 14, 15, 19, 24, 35, 37, 39, 40, 42, 44, 47, 49, 50, 51, 52, 66, 67, and 72 which are at issue in the Court's May 6, 2019 Order (Doc. 3235) will not be available until mid-August 2019.

26. Complying with the Court's May 6, 2019 Order to provide June scores for 21 HCPMs to the Court by July 19, 2019 for review will cause an undue burden, as the scores will not have been fully gathered, reviewed, and scored by then thus compromising the accuracy of the information provided to the Court.

27. Providing premature scores by July 19, 2019 will also deprive ADC and Corizon of any rebuttal period which, in turn, will compromise the accuracy of the information provided to the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __20TH__ day of May, 2019.

RICHARD PRATT