Arizona Attorney General Mark Brnovich
Office of the Attorney General
Michael E. Gottfried, Bar No. 010623
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General
2005 N. Central Ave
Phoenix, Arizona 85004-1592
Telephone: (602) 542-1645
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, et al., on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | Case No. 2:12-cv-00601-ROS <br><br> **DEFENDANTS' MOTION TO STAY AND OBJECTION TO THIS COURT'S ORDER DATED MAY 6, 2019** |

Defendants Charles Ryan and Richard Pratt move to stay enforcement of, and object to, this Court's May 6, 2019 Order.  The May 2019 Order is substantially similar to a prior contempt and sanctions order of this Court, which is currently being challenged on

appeal in the Ninth Circuit.  As further detailed below, a ruling by the Ninth Circuit on the validity of the prior contempt and sanctions order could significantly affect, or even invalidate, the May 2019 Order.  Further, in the Ninth Circuit, Defendants have argued that the prior contempt and sanctions order was an improper application of criminal contempt and therefore must be vacated.  Because the May 2019 Order is substantially similar to the prior order, these objections apply equally here.  As a result, the Order must also be vacated.  This Motion is supported by the following Memorandum of Points and Authorities, the pleadings and papers filed in this matter, and any oral argument heard.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    FACTUAL BACKGROUND**

   **A.    The Order.**

On May 6, 2019, this Court ordered Defendants to bring twenty-one Performance Measures ("PMs") at four facilities into compliance by July 1, 2019.  (Dkt. 3235.)  The Order was the result of Defendants' past noncompliance with the PMs.  (*Id.* at 1-5.)  The Court relied on Defendants' compliance scores for the listed PMs in January and February 2019.  (*Id.* at 2-5.)  The Court further ordered Defendants to show "cause as to why the Court should not impose a civil contempt sanction of $50,000 per [PM] per complex" at a hearing on July 26, 2019.  (*Id.* at 7.)  As a result, it appears that the Court intends to sanction Defendants up to $1,600,000.00 for any noncompliance with these PMs.

It is unclear whether the proposed $50,000 per-PM, per-complex sanction can be cured if Defendants are in compliance with the listed PMs at the listed facilities by July 1, 2019.  It is further unclear whether any sanction will be imposed only once or if sanctions will be imposed for noncompliance in each month going forward.

   **B.    The Prior Sanctions Order.**

The May 2019 Order is nearly identical to a prior order of this Court, which is currently on appeal in the Ninth Circuit.  On June 22, 2018, this Court (Magistrate Judge

Duncan) ordered civil contempt sanctions against Defendants in the amount of $1,000 for every instance of noncompliance with ten PMs at six facilities (the "Prior Sanctions Order").[1]   (Dkt. 2898 at 20-23.)   In total, the Prior Sanctions Order imposed $1,445,000.00 in civil contempt sanctions against Defendants.  (*Id.*)  This amount breaks down as follows:

| PM | Sanction |
| --- | --- |
| 35 | $109,000 |
| 39 | $5,000 |
| 44 | $17,000 |
| 46 | $318,000 |
| 47 | $103,000 |
| 50 | $69,000 |
| 51 | $38,000 |
| 52 | $224,000 |
| 54 | $542,000 |
| 66 | $20,000 |

(*Id.*)   Similar to the May 2019 Order, the Prior Sanctions Order was the result of Defendants' past noncompliance with the PMs.  (*See*, *e.g.*, *id.* at 18-19, 21-23.)   Also similar to the May 2019 Order, the Court announced its intent to impose the $1,000 per-violation fine prior to the Prior Sanctions Order, in October 2017.  (Dkt. 2373.)

Defendants appealed the Prior Sanctions Order to the Ninth Circuit.  (Dkt. 2935.) In its appeal, Defendants argued that this Court does not have contempt power.  *See* No. 18-16358, Doc. 36, filed May 8, 2019, attached as **Exhibit A**.  In addition, Defendants

---

[1]   On October 10, 2017, Judge Duncan ordered Defendants to show cause why the $1,000-per-violation fine should not be imposed for each violation of eleven PMs at six facilities.  (Dkt. 2373.)

argued that the Prior Sanctions Order imposed criminal contempt without the requisite findings or due process.  (*Id.*)  Further, Defendants argued that, even if the Prior Sanctions Order imposed civil contempt sanctions, the amount ordered was unduly punitive. (*Id.*)  Defendants requested the Ninth Circuit to vacate the Prior Sanctions Order.  (*Id.*)

### C.    The March 2019 Compliance Scores.

On May 21, 2019, Defendants filed their monthly compliance report.  (Dkt. 3262.)  Notably, several PMs listed in the May 2019 Order showed significant improvement.  (*Id.*)  For example:

| PM | January 2019 | February 2019 | March 2019 |
|---|---|---|---|
| PM 39 | Lewis: 70% | Lewis: 0% | Lewis: 76% |
|  | Eyman: 32% | Eyman: 66% | Eyman: 76% |
| PM 42 | Florence: 63% | Florence: 70% | Florence: 84% |
|  | Eyman: 52% | Eyman: 34% | Eyman: 74% |
| PM 44 | Lewis: 53% | Lewis: 46% | Lewis: 66% |
| PM 47 | Lewis: 15% | Lewis: 0% | Lewis: 66% |

(Dkt. 3235 at 2-5; Dkt. 3262.)

In addition, many of the PMs in the May 2019 Order are now compliant.  (*Id.*)  These include:

| PM | January 2019 | February 2019 | March 2019 |
|---|---|---|---|
| PM 6 | Eyman: 76% | Eyman: 78% | Eyman: 88% |
| PM 14 | Eyman: 54% | Eyman: 84% | Eyman: 85% |
| PM 15 | Eyman: 92% | Eyman: 70% | Eyman: 92% |
| PM 40 | Eyman: 63% | Eyman: 100% | Eyman: 100% |
| PM 50 | Florence: 53% | Florence: 43% | Florence: 85% |

| PM 52 | Florence: 59% | Florence: 71% | Florence: 85% |
|---|---|---|---|
| | Eyman: 71% | Eyman: 68% | Eyman: 94% |
| PM 66 | Tucson: 70% | Tucson: 60% | Tucson: 90% |
| PM 72 | Eyman: 97% | Eyman: 6% | Eyman: 100% |

*Id.* As such, Defendants have already taken steps to address compliance with these PMs, and no court intervention is necessary.

## II. THE COURT SHOULD STAY THE ORDER PENDING RESOLUTION OF THE APPEAL OF THE PRIOR SANCTIONS ORDER.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). When considering a motion to stay a court order, courts consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Courts apply a sliding scale analysis to these factors, where "[a]t one end of the continuum, the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury. . . . [and a]t the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor." *Golden Gate Restaurant Ass'n v. City & Cnty. Of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008) (internal citations and quotations omitted); *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011) (a movant can obtain a stay by showing that there are "serious questions going to the merits" and the balance of hardships that favors the movant). A stay of the May 2019 is warranted under

these factors.

First, Defendants are likely to succeed on the merits in their appeal of the Prior Sanctions Order.  A movant need not show a high probably of success on the merits; instead, a finding that he has "at least a fair chance of success . . . is all that is required." *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988).  Further, a movant can obtain a stay by showing that there are "serious questions going to the merits." *Alliance for the Wild Rockies*, 632 F.3d at 1131–32.  In their appeal of the Prior Sanctions Order, Defendants argued that this Court does not have contempt power to enforce the Stipulation.  *See* **Ex. A** at 23-40.  Defendants' Opening Brief demonstrates that they have "at least a fair chance of success" on appeal because this Court's exercise of contempt powers is barred by both federal law and the express terms of the Stipulation. *Id.*  Further, the appeal raises "serious questions" about the validity of the Order since the Order relies upon the same authority as the Prior Sanctions Order to order purportedly civil contempt sanctions against Defendants.  (*Compare* Dkt. 2898; *with* Dkt. 3235.)  It is crucial that the Ninth Circuit determine whether this Court has contempt power to enforce the Stipulation before further contempt sanctions are ordered against Defendants.

Second, Defendants will be irreparably injured if the Order is not stayed. Preservation of the "status quo" will often prevent irreparable injury.  *See Golden Gate Restaurant*, 512 F.3d at 1116.  Staying the Order will merely stay the imposition of the proposed sanctions against Defendants and the potential payment of sanctions monies to the Court.  Defendants will continue providing all constitutionally-required healthcare, performing under the Stipulation, and complying with all other, prior court orders.  This would preserve the status quo in this matter.  This Court has already recognized the validity of this argument by refusing to disburse the sanctions monies paid by Defendants in connection with the Prior Sanctions Order over Plaintiffs' repeated requests.  The same logic applies here.

1    Third, Plaintiffs will not be injured by a stay.  The Order does not require
2  Defendants to pay any sanctions at this time, and it cannot be said until after the July 26,
3  2019 hearing whether Defendants will be required to pay any sanctions monies.  This is
4  after briefing in the appeal of the Prior Sanctions Order will be completed.  *See* No. 18-
5  16358, Doc. 31 (reply brief due July 1, 2019).  In addition, it is not clear based on the May
6  2019 Order to who the proposed sanctions should be paid, but, if the Prior Sanctions
7  Order is any guidance, the sanctions monies will not be paid to Plaintiffs.  (*See* Dkts.
8  2898, 2899.)  In addition, this stay request is narrow and limited only to the May 2019
9  Order, not the case in its entirety.  Defendants will continue providing all constitutionally-
10 required healthcare, performing under the Stipulation, and complying with all other, prior
11 orders.  For these reasons, any delay in enforcing the Order will not detrimentally affect
12 Plaintiffs.

13    Finally, public interest favors granting a stay here.  "The public interest is served in
14 preserving the integrity of the right to appellate review."  *Gila River Indian Cmty. v.*
15 *United States*, No. CV-10-1993-PHX-DGC, 2011 WL 1656486, at *4 (D. Ariz. May 3,
16 2011) (internal citations and quotations omitted).  Defendants' right to appeal will be
17 futile should the Order be enforced before appellate review is completed.  The Ninth
18 Circuit may well hold that this Court does not have contempt powers, at which point, the
19 Order will immediately become null and void.  As discussed above, staying enforcement
20 of the Order will merely stay the imposition of and Defendants' payment of sanctions
21 monies; however, refusing to stay enforcement will force Defendants to unnecessarily
22 undergo extensive contempt proceedings and undertake payment of exorbitant contempt
23 sanctions.  In addition, the public has an interest in the efficient use of judicial resources.
24 *Hatch v. United States*, CR 02-1016-PHX-JJT, 2016 WL 6155363, at *3 (D. Ariz. Sept.
25 30, 2016), *report and recommendation adopted in part*, CR 02-01016-PHX-JJT, 2016 WL
26 6143047 (D. Ariz. Oct. 21, 2016).  A stay of the May 2019 Order could potentially save

1    enormous judicial resources.  The Order states that the Court will conduct a hearing

2    regarding the proposed sanctions.  (Dkt. 3235 at 7.)  If the Ninth Circuit later determines

3    that this Court does not have contempt powers, this judicial time and effort in conducting

4    the hearing and imposing or managing any sanctions order will have been entirely wasted.

5         Therefore, a stay of the May 2019 Order is warranted and necessary here.

6    Defendants respectfully request that this Court stay enforcement of the Order until final

7    resolution of their appeal of the Prior Sanctions Order.

8    **III.   DEFENDANT'S OBJECTIONS TO THE ORDER**

9         The proposed $50,000 per-PM, per-complex sanction inappropriately constitutes

10   criminal contempt sanctions.  To determine whether contempt and related sanctions are

11   civil or criminal, courts look to the character and the purpose of the order awarding them.

12   *Shell Offshore, Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) (the question is

13   "what does the court primarily seek to accomplish by imposing the sanction?"); *Falstaff*

14   *Brewing Corp. v. Miller Brewing Corp.*, 702 F.2d 770, 778 (9th Cir. 1983).  If a contempt

15   order imposes sanctions that have both civil and criminal facets, the criminal character

16   prevails in determining procedure and review.  *Falstaff Brewing*, 702 F.2d at 778-79.

17        Civil contempt sanctions are imposed for compensatory or coercive purposes.  *Id.*

18   If the civil contempt is intended to be compensatory, the sanction must be based on the

19   complainant's actual losses sustained.  *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148

20   (9th Cir. 1983).  If the civil contempt is intended to be coercive, the Court must consider

21   the "character and magnitude of the harm threatened by continued contumacy, and the

22   probable effectiveness of any suggested sanction."  *Id.*  A coercive sanction cannot be

23   used to punish a past wrong.  *Falstaff Brewing*, 702 F.2d at 799.  In either instance, the

24   beneficiary of civil contempt is the complainant, who should receive payment of the

25   sanctions.  *See Hook v. Arizona*, 907 F. Supp. 1326, 1340 (D. Ariz. 1995); *Hicks on*

26   *Behalf of Feiock v. Feiock*, 485 U.S. 624, 632 (1988).

In contrast, criminal contempt sanctions are imposed for punitive purposes.  *Shell Offshore*, 815 F.3d at 629; *Falstaff Brewing*, 702 F.2d at 778.   The beneficiaries of criminal contempt are the Court and the public interest.  *Falstaff Brewing*, 702 F.2d at 778.  When contempt sanctions are paid to the Court, it is evidence that the sanctions are criminal.  *Hicks*, 485 U.S. at 632; *Shell Offshore*, 815 F.3d at 629 n. 4.

The $50,000 per-PM, per-complex proposed sanctions are criminal in nature.  It cannot be argued that the proposed sanctions are compensatory or based on any evidence of Plaintiffs' alleged loss.  By Plaintiffs' own assertion, their damages as a result of Defendants' purported noncompliance are, at most, only $10 per violation.  (Dkt. 2214 at 6:3-5 & 24:6-8.)   If the proposed sanctions are to be considered "civil," the only alternative is to assert that the sanctions are coercive civil sanctions.  However, to be coercive, the Sanctions must not be punitive—i.e. they cannot be intended to punish Defendants for a past wrong.  *See Shell Offshore*, 815 F.3d at 629; *Falstaff Brewing*, 702 F.2d at 799 (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911)) ("a coercive sanction cannot undo or remedy what has been done") (internal quotations omitted).  The Court's statements demonstrate that its true intent is to punish Defendants for their past non-compliance with the Stipulation.   Indeed, the Court imposes the proposed sanctions for PMs that "remain substantially noncompliant nearly one year after" the Prior Sanctions Order and that "have been [substantially noncompliant] for at least 3 of the last 6 months."  (Dkt. 3235 at 2-4.)  In addition, the Court includes PMs for an entire facility because that facility's performance "[f]or the last several years" has been "woefully deficient."  (*Id.* at 4-5.)  Indeed, throughout its analysis, the Court relies on Defendants' compliance percentages for January and February 2019.  (*Id.* at 2-5.)  The retrospective nature of the proposed sanctions underscores that the intent was to punish for past misdeeds, not to spur future compliance.  It is clear that the proposed sanctions are, at least in part, punitive, and, therefore, they cannot be imposed without a finding of

*criminal* contempt.  *See Falstaff Brewing*, 702 F.2d at 778-79.  And criminal contempt proceedings require basic due process protections.  *See* Fed. R. Crim. P. 42(a)(1); *Bagwell*, 512 U.S. at 826-27, 833-34.

Further, if the sanctions were intended to be coercive, Defendants must be given an opportunity to purge them through compliance with the Order.  *See Bagwell*, 512 U.S. at 829; *Shell Offshore*, 815 F.3d at 629 ("the ability to purge is perhaps the most definitive characteristic of coercive civil contempt"); *Falstaff Brewing*, 702 F.3d at 778 ("A court's power to impose coercive civil contempt depends upon the ability of the contemnor to comply with the court's coercive order."); *United States v. Ayres*, 166 F.3d 991, 997 (9th Cir. 1999) ("civil contempt sanctions . . . are only appropriate where the contemnor is able to purge the contempt by his own affirmative act").  No such opportunity to purge is provided here.  The Court intends to hold a hearing on July 26, 2019 to determine whether to impose the proposed sanctions for Defendants' noncompliance prior to July 1, 2019.  After the Court's determination, Defendants will have no opportunity to remedy their noncompliance, which will have occurred at least one month prior.  The fact that the Court announced the fines in May 2019 does not change this determination.  *See Bagwell*, 512 U.S. at 836 ("the fact that the trial court announced the fines before the contumacy, rather than after the fact, does not in itself justify respondents' conclusion that the fines are civil or meaningfully distinguish these penalties from the ordinary criminal law").  The sanctions, when imposed, will be retrospective and will not allow Defendants an opportunity to purge the contempt or the sanctions.  Therefore, they cannot be coercive civil contempt.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court stay enforcement of its May 6, 2019 Order until final resolution of the appeal of the Prior Sanctions Order.

1

DATED this 24th day of May, 2019.

2

STRUCK LOVE BOJANOWSKI & ACEDO, PLC

3

4

By /s/Daniel P.  Struck

5

Daniel P. Struck
Rachel Love

6

Timothy J. Bojanowski
Nicholas D. Acedo

7

3100 West Ray Road, Suite 300
Chandler, Arizona  85226

8

Office of the Arizona Attorney General

9

Michael E. Gottfried
Assistant Attorney General

10

2005 N. Central Avenue
Phoenix, Arizona 85004-1592

11

*Attorneys for Defendants*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Dietrich: | adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Ryan M. Kendall: | rkendall@aclu.org; ryankendall@ucla.edu |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Daniel P. Struck