THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING TO FEDERAL AND/OR LOCAL RULES AND PRACTICES AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE _LR5.4_
(Rule Number/Section)

Stanley Nelson 065784 3-B-47
ASPC Tucson - Whetstone
10,004 S Wilmot Rd Box 24402
Tucson Ariz 85734

U.S District Court Clerk
Honorable Roselyn O Silver
Sandra Day O Connor
- U.S Court house 130
Phoenix Ariz 85003-2118
- 401 Washington St - SPC-1

FILED ___ LODGED
RECEIVED ___ COPY
MAY 28 2019
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

| Victor Parson | Case 2:12 cv 00601 PHX-ROS |
| US | |
| Charles Ryan | motion to file civil contempt of court order 6-22-18 |

U.S District Court — Clerk
Honorable courts

— Parson vs Ryan 2012 Ariz
2:12 cv 00601 PHX -DKD-
2:12 cv00601 - DJH - 2014
2:12 cv00601- DKD-PHX
6-22-18 civil contempt

I Stanley Nelson wish to file
a civil contempt against Charles
Ryan for failure to comply
with a U.S District court order
to assist, treatment, care, proper,
preformance of lack of medical
while incarcerated Tucson
complex— whetstone unit.

Submitted on 5-13-19
Stanley Nelson
signed x — Stanley E Nelson

X FILED ___ LODGED
___ RECEIVED ___ COPY

AUGUST 8, 2014

CLERK US DISTRICT COURT
DISTRICT OF ARIZONA
BY s/ M. Hudson DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| In the matter of: | |
|---|---|
| ELECTRONIC SUBMISSION OF PRISONER DOCUMENTS PILOT PROJECT | **GENERAL ORDER 14-14** |
| **SUPERSEDES GENERAL ORDER 14-08** | |

  The Court and the Arizona Department of Corrections (ADC) have agreed to extend the following pilot project designed to reduce the cost of processing prisoner filings.

1. The Court will provide five digital senders for use in the five units of the ADC Eyman Complex: Cook, Meadows, Rynning, Browning, and SMU I. The Court will retain ownership of the digital senders.

2. Eyman Complex staff will scan to PDF and, after quality review, email to the Court all documents presented by prisoners for filing with the Court. The original documents will be returned to the prisoner. All documents submitted for filing by prisoners in the Eyman Complex must be emailed to the Court in a PDF format. Sealed cases are exempt from this pilot project.

3. The Court will receive and file the prisoners' documents electronically. After traditional service of the prisoner's complaint or petition and appearance by an opposing party, transmission of the Notice of Electronic Filing (NEF) to opposing parties who are Electronic Case Filing Registered

|   |   |
|---|---|
| 1 | Users constitutes service of the hyperlinked document for purposes of Rule 5(b)(3) of the Federal Rules of Civil Procedure. The Clerk of Court will mail a copy of the prisoner's electronically filed document to Non-registered Users. |
| 4. | The Eyman Complex Units will each establish an email address for receipt of NEFs of documents filed electronically. Staff in these Units will print the NEFs and the hyperlinked orders and other documents filed by the Court. Receipt of copies of the NEFs and hyperlinked documents by the prisoner constitutes service of the document on the prisoner. If the prisoner refuses delivery or is no longer at the designated Unit, Unit staff will indicate the reason for non-delivery on the NEF and email it to the Court. |
| 5. | Opposing parties must serve filings on Eyman prisoners by means other than electronic filing as provided in Rule 5.5(h) of the Local Rules of Civil Procedure and Rule 5 of the Federal Rules of Civil Procedure. Eyman staff will not provide to prisoners NEFs or the hyperlinked documents filed by opposing parties. |
| 6. | The Court or ADC may terminate the pilot project at any time. The Court and ADC must periodically evaluate the pilot project and determine whether it should be continued, terminated, modified or expanded. |

This General Order supersedes General Order 14-08.

DATED *nunc pro tunc* July 16, 2014.

_____
Raner C. Collins
Chief United States District Judge



**PRISON LAW OFFICE**
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Mae Ackerman-Brimberg
Rana Anabtawi
Steven Fama
Alison Hardy
Sia Henry
Corene Kendrick
Rita Lomio
Margot Mendelson
Millard Murphy
Lynn Wu

### Information Regarding Hepatitis C Virus (HCV) and HCV Treatment in Arizona Prisons

### (October 2017)

We received your letter regarding Hepatitis C Virus (HCV) and treatment of HCV while in the custody of the Arizona Department of Corrections (ADC). Hepatitis C is a very complicated medical condition. The other side of this page has basic information about HCV.

ADC/Corizon prison doctors and primary care providers (PCPs) use guidelines from the Federal Bureau of Prisons (BOP) to diagnose and treat HCV. The guide is called *Evaluation and Management of Chronic Hepatitis C Virus (HCV) Infection*. ADC's Department Order 1101: Inmate Access to Health Care, has rules about how you can get medical care, including for HCV. A copy of DO 1101 should be in your law library; if not, please write us. If you want a copy of the BOP guidelines, please write us back and request them.

If you have questions about HCV, put in a HNR and talk to your provider. According to ADC's DO 1101 and the Stipulation in the *Parsons v. Ryan* case, you should have regular chronic care appointments if you have HCV. <u>You should not be charged for an HCV appointment because it is a chronic condition</u>. If you cannot resolve your HCV concern by speaking with medical staff, you can file a grievance. If you are not getting the medical care you need for HCV, you can file an informal complaint (Form 802-11), and then a formal medical grievance (Form 802-1). If you have more questions about the medical grievance process, write to us and ask for a free copy of our grievance handout.

Prison Law Office will consider taking action regarding a person's HCV concern only if you have filed a grievance and received a final level response. Additionally, a final level response is required before a prisoner can file any formal legal action about a medical issue. If you can, send us copies of the requests or grievances you filed, and the responses you got. We have a very limited ability to provide individual help to prisoners with health care needs. We may be able to notify ADC's attorneys under the *Parsons* case if we learn of prisoners who have urgent untreated health care needs that could lead to death or serious permanent injury, or are seriously affecting your ability to complete activities of daily living such as eating, walking, or toileting. Under the law, we cannot dictate a specific course of treatment, but we can ask that you be evaluated for care.

**Please see other side of this page for additional information about HCV**

Board of Directors
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris

## General Information about HCV
## This information is based upon the May 2017 BOP Guidelines and ADC policies

You should have been tested for HCV when you came to prison, unless you refused the test. If you refused the test, you can ask to be tested at any time. Health care providers generally test for HCV in people with specific risk factors (such as history of injection drug use, improperly sanitized tattoos) or people born between 1945 and 1965. The test (called an "anti-HCV" test) can only tell if you have been exposed to HCV. If the test shows that you have been exposed to HCV, your provider will order another blood test (called a "quantitative HCV RNA") to figure out if you have an infection now. Once a diagnosis of HCV is made, it is important to identify the form of the virus (called a "genotype"), because each genotype is treated differently. Another important aspect of diagnosis is assessing the condition of the liver.

HCV is a virus that hurts the liver. Most people infected with HCV have no or only mild symptoms. HCV is spread by contact with blood, and not by casual contact. Your body forms scars when it heals injuries. When the liver fixes the damage from HCV, the liver forms scars. This scarring is called **fibrosis**. Scarring may lead to **cirrhosis**.

Of the people who have chronic HCV infection, only 10-20% will develop cirrhosis or severe liver disease. About 1-5% of people with chronic HCV infection will die from cirrhosis or liver cancer. It usually takes years or decades to progress to severe liver disease. There is not a test to predict who will progress to severe liver disease.

You may have heard about new medications for HCV like Harvoni and Sovaldi. These drugs, called direct-acting antivirals (DAAs), are very effective. ADC does not give these medications to everyone. ADC prioritizes who will get them. Someone is high priority if they have advanced fibrosis, cirrhosis, liver cancer, are already on treatment when they get to prison, or have had a liver transplant. To be high priority, you also have to have a life expectancy of more than 18 months, and enough time left on your sentence to complete treatment. Some prisons will not prescribe DAAs to people with HCV if they have recently used drugs. According to the May 2017 BOP guidelines, you do not have to pass a urine test to get treatment, unless ongoing drug use is suspected or indicated. The medications for HCV are very expensive, and people in the community often have trouble getting them.

Whether treatment for HCV is necessary depends on many factors and circumstances. Your provider should make a decision based on your HCV genotype, your treatment history, your symptoms, and what other medications you are on, if any. Treatment decisions also depend on how much damage, if any, HCV has caused to your liver.

**HCV is a complicated medical condition.
Ask your doctor or primary care provider
about your condition and treatment plan.**