(1 of 12)

R. Joseph Benge No. 137719
ASPC-Florence/East Unit
P.O. Box 5000
Florence, Arizona 85132
'pro se'

FILED ___ LODGED
___ RECEIVED ___ COPY

JUN 0 3 2019

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

United States District Court
District of Arizona

CV-12-00601-PHX-ROS

Victor Parson, et al,
(Robert J. Benge)
(Class Member),
    Plaintiff,

v.

Charles Ryan, Director,
Arizona Dep't of Corrections, et al.,
    Defendants.

No. CV-12-00601-PHX-DKD

REQUEST TO TESTIFY AT NEXT STATUS CONFERENCE, ("A FRIEND OF THE COURT BRIEF")

Hon. Roslyn O. Silver
Senior United States District Judge

NOW COMES, "Class Member, Robert J. Benge", (ADC No. 137719) ("Plaintiff") 'pro se' hereby moves this Court for an Order allowing him to testify for the following reason(s).

I.  <u>Factual Facts</u>

I, Robert J. Benge current "Class Member" in the Class Action, Parsons v. Ryan do hereby request to testify at the Courts next status conference in the above entitled case.

This request is made because I, as a "Class Member" have an interest in uncovering and opposing blatant deception. I also have constitutional rights that are currently being infringed upon. The Eighth Amendment and other Amendments were enacted to protect prisoners in American. They do not exist for authority figures to choose

(3 of 12)

whether to comply with them, or not. No one is above the law, not an ordinary citizen and not Charles Ryan or Corizon health. They must be held accountable for their alleged illegal activities — for their apparently and willful violations of the nation's laws. Upon information and belief, The Arizona Department of Corrections ("ADC") have engaged in obstruction of justice and other misconduct. ADC have conspired and coordinated with Corizon Health, LLC in the obstruction acts. Plaintiff Benge will produce a trove of new details via, His live testimony

and a wealth of evidence describing what he's experienced 17 months now, as a parole violator. Although Benge is a 20 year veteran of the ADC prison system.

The Plaintiff's Legal Counsel being, Prison Law Office in California have been contumacious, and upon information and belief, they have ignored this Court's order that they comply with this Courts Order, to assist all Class Members equally.

The past 17 months have been mindboggling, and although my release date from ADC custody is

(5 of 12)

August 09, 2019 I believe it's the Prison Law Office position that it's alright that I continue to suffer for 2 more months without adequate health care or pain management. Upon my release I do intend to go public with my story. I'm not going to do this in order to embarrass the ADC or Corizon Health, LLC and Prison Law Office. I want to make the community aware of the misconduct taking place within these walls/prison system. No human being should have to go through this type of cruel and unusual punishment.

I further believe that Director Ryan truly has ventured a little too far from the shores of sanity. Perhaps, Director Ryan mentally thinks he's back in charge as Director of Abu Ghraib prison, Baghdad, Iraq. The widely-distributed photos of American guards abusing/torturing Iraqi prisoners during Charles Ryan 4 year tenure there as Director. What's happening today in the "State of Arizona", (United States of American) is the equivalent of the Abu Ghraib prison scandal in Iraq that shocked the world. Director Charles L. Ryan

and Corizon Health are treating Arizona State Prisoners, including myself, as if animals in a zoo! This mistreatment offends even the most elementary notions of common decency and dignity. It also fails to serve any legitimate penological purpose in any Country, much less America. The fact that it's occurring at all exhibits a callous and malicious intent to inflict gratuitous humiliation and punishment. Unfortunately, A lack of accountability and oversight has led to a plague of poor care for prisoners in the (10) Ten State ran complexes. This epidemic has

spread to all levels of Corizon Health, and (ADC's) agency. Some of the Corizon employees are uncaring and apathetic. Plaintiff's testimonial and documentary evidence will show that he's been the subject of group punishments, via, actions against other prisoners who in turn blame, targeted him with an assault on ~~may~~ April 02, 2019 that required medical attention. His testimony will show that this pattern is attributable, not to inadvertence or mistake, but to defendants deliberate indifference and knowing willingness that harm occur. This is a conclusion

that I ("Benge") do not reach lightly. On the contrary, it is with considerable reluctance and regret that I find myself the subject of violations of this nature within an institution, (on a classwide basis) of the state of Arizona. My experience and personal knowledge, evidence permit no other result.

## II. CONCLUSION

For the foregoing reason(s) it is requested that I be allowed to testify at the next status conference in the entitled Parsons v. Ryan class action given that I am a class member with information

of a "sensitive nature".

And/or Alternatively issue an Order requiring U.S. Attorney of Arizona, Michael Bailey to contact myself at ASPC-Florence East Unit Admin, c/o C.O. IV Bohuszewicz (520) 868-4011. With regards to the information that I hold as I'm concerned about further acts of retaliation and retribution. Require the Prison Law Office to file a ("mea culpa") brief to show cause why they should not be sanctioned for contumacious conduct in this Court with regards to their disloyalty disservice toward a ("Class Member") of

Parsons v. Ryan, et al. I've written them to no avail and other inmates here at East Unit have as well.

Plaintiff Robert J. Benge ADC #137719 respectfully request to testify.

RESPECTFULLY SUBMITTED this 30th day of May, 2019.

*Robert J. Benge*
ROBERT JOSEPH BENGE
Plaintiff/Class Member
'Pro Se'

## CERTIFICATE OF SERVICE

Original mail this 30th day of May, 2019 to:

✓ Clerk of U.S. District Court
401 W. Washington Street
Suite 130, SPC-1
Phoenix, AZ 85003

One copy mail this 30th day of May, 2019 to:

Prison Law Office
Mr. Donald Specter, Director/Attorney At Law
General Delivery
San Quentin, California 94964

STRUCK LOVE BOJANOWSKI & ACEDO, PLC
Mr. Timothy J. Bojanowski
Attorney At Law
3100 West Ray Road, Suite 300
Chandler, Arizona 85226

Exhibit A

5/19/2019

# 56-year-old is 15th prisoner to die in Arizona over past month

**Grace Oldham** Arizona Republic
USA TODAY NETWORK

A man was found "hanging with a cloth tied around his neck," making him the 15th Arizona prisoner to have died in the past month, according to the state Department of Corrections inmate death notifications' website.

Corrections workers found 56-year-old Michael A. Poirier unresponsive, hanging in his prison housing unit during a routine security check on Thursday at Arizona State Prison Complex-Eyman in Florence, officials said in an Arizona Department of Corrections statement.

"Officers immediately attempted life-saving measures until responding paramedics arrived and pronounced him deceased," the statement said.

Officials said he died in an "apparent act of self-harm."

Several of the men serving sentences at prison complexes across Arizona died after being taken to a nearby hospital.

Others died of natural causes, according to the department's death notifications website.

The department did not specify any



Poirier

cause of death for four men.

Poirier was sentenced out of Yavapai County to serve three years in prison for a sex offender registration violation and resisting arrest. He had worked as a prison kitchen helper and had no records of disciplinary infractions with the state Department of Corrections, according to his online inmate record.

Poirer was pronounced dead by paramedics at 3:28 a.m. at the facility, Andrew Wilder, a spokesman for the state Department of Corrections, told *The Arizona Republic* Thursday.

Poirier went to the Arizona Department of Corrections system on December 12, 2018.

He had a maximum prison end date of March 10, 2021, according to the department's website.

All inmate deaths are investigated in coordination with the county's medical examiner, the department's statement said.

*Reach the reporter at GOldham@gannett.com. Follow the reporter on Twitter @graceoldham123.*

Exhibit

# AZ inmate who complained of inadequate health care dies

**Lauren Castle**
Arizona Republic
USA TODAY NETWORK

The recent death of an inmate in Florence is highlighting health-care access in Arizona's prison system once again.

Inmate Richard Washington, 64, sent a letter to the U.S. Court of Appeals for the 9th Circuit a month before he died, claiming he wasn't getting adequate medical treatment and worrying that it may kill him.

The state's Department of Corrections has faced criticism for more than a decade after being hit with a lawsuit over the health-care treatment of inmates. The state settled the case and agreed to make changes, but there is disagreement about whether the state is keeping its promises.

Advocates say Washington's death

## Inmate
Continued from Page 1A

didn't come as a surprise.

Washington died Jan. 31, according to the Department of Corrections. He was serving 63 years for armed robbery, and had been incarcerated for nearly 29 years.

He claimed prison staff had refused to treat his medical issues and stopped providing his medication.

"My greatest fear is that I'm going to die more sooner than later should this treatment — or lack thereof — continues," he wrote a month before his death.


**Richard Washington**

The state has not yet responded to the letter in court filings. When asked about the claims in the letter, Department of Corrections spokesman Andrew Wilder via e-mail confirmed Washington's death, and said all inmate deaths are investigated by the county medical examiner's office.

Arizona outsources its prison health care to private companies. Corizon currently has the contract.

When asked about Washington's letter, Corizon spokesman Kurt Davis said, "We are confident that appropriate care was provided and that the investigation will yield similar findings."

Corene Kendrick, a lawyer at the California-based Prison Law Office, said Washington's letter and death didn't come as a surprise because a similar thing happened with another inmate in 2017.

Just like Washington, Walter Jordan was housed at ASPC-Florence. He was serving life in prison for first-degree murder and kidnapping.

Jordan died from "apparent natural causes," the Department of Corrections said in a death notification.

A month before he died, he submitted a letter to court, claiming the department and Corizon delayed treating his cancer, and stating that he would be lucky to be alive in 30 days.

"The delayed treatment they gave me is causing memory loss, pain. Too many inmates in East unit have the same issues," he wrote.

Dr. Todd Wilcox reviewed Jordan's medical file and submitted a declaration to the court. Jordan had skin cancer, specifically squamous cell carcinoma, he said. According to Wilcox, the illness has a 90 percent cure rate if it is identified early.

"Mr. Jordan may well have survived had he been treated by a competent dermatologist and referred to an oncologist sooner," Wilcox stated. "Unfortunately, the dermatologist he saw was not competent, and by the time he saw an oncologist, his cancer had advanced and it was too late."

Wilcox claimed one of the physicians who treated Jordan at the dermatology clinic was not a board-certified dermatologist, according to court records.

The state never filed a response to Wilcox's claims with the court, according to Kendrick.

Kendrick said Washington's medical file will also be reviewed by an independent expert to determine whether his death was caused by inadequate medical care.

The Arizona Center for Disability Law filed a class-action lawsuit — Parsons v. Ryan — against the Arizona Department of Corrections in 2012, alleging inadequate medical, health and dental care for prisoners.

Lawyers from the American Civil Liberties Union and the Prison Law Office joined the case.

A settlement was reached in 2014, requiring the department to comply with a number of performance measures, including:

▪ Requiring refills on chronic care or psychotropic medication to be filled promptly to assure that there is no interruption in medication.

▪ Assuring an inmate gets a health screening by a licensed practical nurse or registered nurse within one day of arriving at an intake facility.

▪ Requiring a treatment plan be developed — and documented — within 30 days of an inmate being diagnosed with a chronic disease.

The department is monitored to make sure it complies with the agreement.

If the department isn't compliant enough, a judge can order it to do more.

In June, a U.S. district judge found the department in contempt of court for not meeting conditions of the settlement and imposed sanctions of $1.4 million.

The state has appealed the ruling to the U.S. Court of Appeals for the 9th Circuit.

Since the settlement, the prison system has gone through two for-profit health-care management companies.

Last month, the department announced Centurion will take over managing health care starting in July.

Kendrick said the Prison Law Office hopes during the transition, the treatment of prisoners will not fall through the cracks, and that they will be able to see doctors and get prescriptions on time.

"We are just concerned that the transition goes smoothly," Kendrick said.

*Have thoughts on Arizona's prison system? Reach criminal justice reporter Lauren Castle at Lauren.Castle@gannett.com. Follow her on Twitter: @Lauren_Castle.*

*Arizona Republic Newspaper 02/20/2019*

# EXHIBIT

# Exhibit B

# Corizon Health Strikes Out in Arizona

*by Ed Lyon*

IN 2014, A SETTLEMENT WAS REACHED in *Parsons v. Ryan*, a lawsuit over healthcare in Arizona's prison system. The state contracted with Corizon Health to provide medical services for the Arizona Department of Corrections (ADC), even though the company had been plagued with problems and lawsuits over its failure to provide adequate medical care to prisoners in other jurisdictions. [See, e.g.: *PLN*, Nov. 2018, p.60; Sept. 2018, pp. 26-27].

As part of the *Parsons* settlement, the ADC set up a monitoring board to oversee Corizon's contractual performance. Time would prove the company was no better at providing medical care to Arizona prisoners than it was anywhere else, and as a result the *Parsons* case was eventually reopened.

U.S. District Court Judge Roslyn Silver appointed an expert to review the ADC's healthcare system operated by Corizon amid allegations by multiple whistleblowers that the for-profit company was skirting state auditors, violating regulations and risking the lives of prisoners who relied on the firm for medical care.

Jose Vallejo, a former police officer and prison guard, was employed as a licensed vocational nurse at ADC's State Prison Complex-Eyman in Florence for two years, beginning in December 2016. He primarily worked with the most acutely mentally ill prisoners who were housed in the SMU-1 unit. Under its contract, Corizon was to maintain a 90 percent staffing level at all times with properly trained employees. Vallejo was supposed to be trained for two weeks before beginning work but received only two days of instruction. Once on the job, he worked 12 hours a day for four or more days weekly, up to 150 hours every two weeks due to dangerously low staffing levels. He said he had never before seen such a high staff turnover rate, and that "Corizon is just hiring bodies, trying to get their numbers up."

Vallejo reported that he had to make decisions "that someone with more education should be doing," which led to dangerous situations. "We're putting people's lives on the line," he added.

For example, diabetic prisoners received their morning insulin so late they would not even be peaking before their afternoon doses. In protest of not receiving their medications, SMU-1 prisoners set their building on fire. Supervisors repeatedly ordered Vallejo and his co-workers to improperly set up and distribute medications. "We told her [our supervisor] we weren't going to do it. It's illegal. We can't pass medicines that somebody else has poured. But they didn't care."

Short staffing was only the tip of the iceberg. Vallejo further reported that emergency response kits were routinely raided for supplies that were not replaced, and thus were missing when needed. He fought with administrators for months to obtain dialysis for a prisoner and, in another case, a full year for treatment for a cancer patient. He often encountered empty oxygen tanks and broken EKG machines.

Corizon always had advance notice of inspections by state auditors. Vallejo said he and his co-workers were routinely ordered to falsify records before inspectors arrived. Expired medications were hidden in locked rooms during inspections, then brought out to be dispensed afterward, he claimed.

Vallejo contacted administrators up through the regional nursing director and even Arizona's Department of Labor. Corizon fired him for his efforts to draw attention to the company's inadequate medical services and poor working conditions. While pointedly *not* responding to any of Vallejo's complaints, Corizon spokesperson Martha Harbin said he was "terminated from his position for failure to perform required duties." It was only after his firing that Vallejo contacted radio station KJZZ to bring these issues to the public's attention.

Former Corizon physician Jan Wilson and counselor Angela Fischer also blew the whistle on many of the company's practices, including during an evidentiary hearing before U.S. Magistrate Judge David Duncan in the re-opened *Parsons* case. Fischer testified about severe staffing shortages that resulted in substandard medical care and prison guards sleeping while on suicide watch duty. It was during one of those naps that a prisoner managed to hang himself.

In retaliation for her whistleblowing, guards retaliated against Fischer by refusing to bring prisoners to her office for scheduled appointments. Once, knowing the lock on her door was broken, guards brought a violent prisoner to her office unrestrained, then left.

"I just pushed the door closed and held it with my body while she was banging the door against me," Fischer stated. She also testified about mental health unit cells that stank of feces and urine, and were infested with vermin, while mice and cockroaches ate from prisoners' food trays. After being thanked by Judge Duncan for her testimony, Fischer said, "I'm glad that I had a chance to speak up for people who don't have the opportunity to speak up for themselves."

Beginning on July 1, 2019, Centurion Managed Care, a different for-profit contractor, will take over ADC medical care from Corizon, state officials announced in January. The cost per day per prisoner will increase from $15.164 to $16.604. Arizona prison officials publicly stated that switching to Centurion was "in the state's best interest," while in December 2018 the *Parsons* court appointed an independent expert – Dr. Marc Stern – to oversee ADC's medical services. Earlier, in June 2018, the ADC was held in contempt by the federal district court, which imposed $1.45 million in fines against the state that was paid by Corizon. [See: *PLN*, Nov. 2018, p.1; May 2018, p.28].

Arizona prisoner Richard Washington, 64, was one of the more recent victims of inadequate medical care in the state's prison system. Washington died on January 31, 2019; about a month before his death, he mailed a letter to the Ninth Circuit Court of Appeals, which is hearing the ADC's appeal of the district court's contempt ruling. "My greatest fear is that I'm going to die more sooner than later should this treatment – or lack thereof – continue," Washington wrote.

On February 25, 2019, activists gathered outside the ADC's headquarters in Phoenix to protest poor prison medical care, citing Washington's death. The protesters included members of Puente Human Rights Movement and former prisoners.

"It's very unjust," said Erika Ovalle, one of the founding members of Puente. "And the fact that it's being run by a private company, says a lot. You know, they want to cut corners. They're just playing with

lives at a certain point."

Since Centurion presumably follows the same profit-driven business model as Corizon and other private medical service providers, it is unknown whether healthcare in Arizona prisons will improve under the ADC's new contractor.

Sources: *kjzz.org, azcentral.com*

TUESDAY, MAY 7, 2019 ∎ THE ARIZONA REPUBLIC

# Inmate care could cost Ariz. millions

## Judge orders ADC to comply with several performance measures

**Lauren Castle**
Arizona Republic | USA TODAY NETWORK

Months after an inmate sent a letter to the court shortly before his death accusing the Arizona prison system of poor medical treatment, a judge hit the Department of Corrections with an order that could cost taxpayers millions.

U.S. District Judge Roslyn Silver ordered the Arizona Department of Corrections to comply with several performance measures after noticing "unacceptable levels of noncompliance remain in three critical respects."

The order is part of a lawsuit regarding the health care treatment of inmates. The state settled the case and agreed to make changes.

The judge focused on 34 measures she said the state is failing.

The state must bring these measures into compliance by July 1 or it will be forced to pay $50,000 for each performance measure per prison complex.

The cost could total up to $17 million. The state already owes $1.4 million for not complying in 2018.

The judge split the 34 measures in the motion into three different groups.

The first group includes measures that were part of a group which Judge Duncan ordered the department to show cause in 2017. According to court records, the department's compliance worsened from January to February of this year.

"Defendants' continued excuses for noncompliance do not reflect the seriousness of their prolonged breach of the Stipulation or the ramifications of their

See ORDER, Page 5A

## Exhibit

## Order

Continued from Page 1A

failure to meet their obligations in the affected fundamental aspects of health care delivery," Silver wrote in the motion.

The second group of measures focuses on the department's actions regarding prescription medication, referrals to appointments and follow-through on hospital discharge instructions. According to the motion, the department has not complied for at least three of the last six months.

The last group focuses on actions at the Eyman Complex, which the motion calls "woefully deficient and reflects a wholesale breakdown in the medical unit's operations."

Here are some of the measures:

∎ Are refills for chronic care or requested by a prisoner between three and seven business days prior to the prescription running out completed in a timely manner such that there is no interruption or lapse in medication?

∎ Are urgent provider referrals being seen by a medical provider within 24 hours of the referral?

∎ Are inmates that are returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital having the hospital's treatment recommendations reviewed and acted upon by a medical provider within 24 hours?

∎ Are medical providers reviewing the diagnostic report, including pathology reports, and acting upon the reports with abnormal values within five (5) calendar days of receiving the report at the prison?

∎ Are provider orders noted daily with time, date, and name of person taking the orders off?

### The original lawsuit

Lawyers at the Arizona Center for Disability Law, American Civil Liberties Union, the Prison Law Office and other firms filed a class action lawsuit — Parsons v. Ryan — against the Arizona Department of Corrections in 2012, alleging inadequate medical, health and dental care for prisoners.

A settlement was reached in 2014, requiring the department to comply with a number of performance measures, including:

∎ Requiring refills on chronic care or psychotropic medication to be filled promptly to assure that there is no interruption in medication.

∎ Assuring an inmate gets a health screening by a licensed practical nurse or registered nurse within one day of arriving at an intake facility.

∎ Requiring a treatment plan be developed — and documented — within 30 days of an inmate being diagnosed with a chronic disease.

The department is monitored to make sure it complies with the agreement. If the department isn't compliant enough, a judge can order it to do more.

In June, a U.S. district judge found the department in contempt of court for not meeting conditions of the settlement and imposed sanctions of $1.4 million.

The state appealed the ruling.

Since the settlement, the prison system has gone through two for-profit health care management companies. The department announced Centurion will take over managing health care starting in July.

*Have thoughts about Arizona's legal system? Reach criminal justice reporter Lauren Castle at Lauren.Castle@gannett.com. Follow her on Twitter: @Lauren_Castle.*