1  Kathleen E. Brody (Bar No. 026331)
   Molly Brizgys (Bar No. 029216)
2  **ACLU FOUNDATION OF ARIZONA**
   3707 North 7th Street, Suite 235
3  Phoenix, Arizona 85013
   Telephone:  (602) 650-1854
4  Email: kbrody@acluaz.org
   Email:  mbrizgys@acluaz.org
5
   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
6  *Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
   *Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
7  *Desiree Licci, Joseph Hefner, Joshua Polson, and*
   *Charlotte Wells, on behalf of themselves and all others*
8  *similarly situated*
   **[ADDITIONAL COUNSEL LISTED ON**
9  **SIGNATURE PAGE]**

10  Asim Dietrich (Bar No. 027927)
    **ARIZONA CENTER FOR DISABILITY LAW**
11  5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
12  Telephone:  (602) 274-6287
    Email: adietrich@azdisabilitylaw.org
13
    *Attorneys for Plaintiff Arizona Center for Disability Law*
14  **[ADDITIONAL COUNSEL LISTED ON**
    **SIGNATURE PAGE]**
15

16                  UNITED STATES DISTRICT COURT

17                       DISTRICT OF ARIZONA

18  Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-ROS
    Dustin Brislan; Sonia Rodriguez; Christina
19  Verduzco; Jackie Thomas; Jeremy Smith; Robert
    Gamez; Maryanne Chisholm; Desiree Licci; Joseph      **PLAINTIFFS' OPPOSITION**
20  Hefner; Joshua Polson; and Charlotte Wells, on       **TO DEFENDANTS' MOTION**
    behalf of themselves and all others similarly        **TO STAY AND OBJECTION**
21  situated; and Arizona Center for Disability Law,     **TO THIS COURT'S ORDER**
                                                         **DATED MAY 6, 2019**
22                        Plaintiffs,                    **(DOC. 3265)**

             v.
23
    Charles Ryan, Director, Arizona Department of
24  Corrections; and Richard Pratt, Division Director,
    Division of Health Services, Arizona Department of
25  Corrections, in their official capacities,

26                        Defendants.

27

28

Yet again Defendants seek to obstruct and delay the Court's orders to enforce the Stipulation and vindicate Plaintiffs' constitutional rights. As this Court observed when it last rejected their stay and reconsideration motions, "Defendants' motions for relief rely entirely on arguments that were presented, considered, and rejected," "Defendants fail to meet a single factor" in the legal analysis for granting a stay, and "Defendants' interminable noncompliance – which persists to this day – forecloses a finding that a stay . . . is appropriate because the continued harm the class experiences" because of inadequate health care. [Doc. 3057 at 7, 8][1]

Defendants' stay motion is little more than a continuation of their ongoing "distracting" motions practice that this Court noted "divert[s] the attention from . . . what should be the appropriate focus of this case." Doc. 2878 (6/1/18 AM Tr. at 14:3-24); Doc. 3057 at 9 (finding "Defendants' continued insistence that taxpayer money is better spent on assiduously defending their noncompliance with the Stipulation than on efforts towards remedying the fundamental underlying cause of that noncompliance is likely ill-conceived and ill-advised"). There is no merit to Defendants' argument that this Court should not initiate a new round of contempt proceedings for their persistent noncompliance just because they are continuing to fight this Court's 2018 contempt order.[2]

## I.    INTRODUCTION

The more than 34,000 people incarcerated in Defendants' ten prisons continue to face an ongoing risk of illness, injury, and death due to Defendants' persistent failure to

---

[1] *See also* Doc. 175 at 10 ("Defendants cite no authority under which a stay would be appropriate and the Court finds there is no basis for a stay"); Doc. 567 (denying stay); Doc. 2643 at 1-2 ("Defendants have provided neither an adequate justification for the stay request nor did any of the issues alleged in the Motion to Stay arise on an emergent basis. Accordingly, the Motion to Stay is denied"); Ninth Circuit No. 13-16396, Doc. 20 ("Appellants' Emergency Motion to Stay District Court Proceedings is DENIED").

All citations to case filings refers to the page number assigned by the court's Electronic Case Filing (ECF) systems, except as noted *infra* n. 5.

[2] On June 4, 2019, the Ninth Circuit ruled on three pending stay motions raised by Defendants, granting and denying in part stays of the Court's Contempt Order and Attorneys' Fees Order and Judgment. Doc. 3276 at 2. The Ninth Circuit denied Defendants' motion to stay the underlying orders. *Id.* Plaintiffs request that this Court proceed with the contempt proceedings, and if it again enters a contempt judgment, it can decide at that time whether to issue a stay.

1    comply with the Stipulation's agreed-upon requirements.  Plaintiffs will be substantially

2    prejudiced by a stay, as it would allow Defendants' ongoing violations of the Stipulation,

3    documented as recently as their filing of March 2019 CGAR data (*see generally* Doc.

4    3262-1), to continue unabated. *See also* Doc. 3255-1 Exs. 1-2, 4-6, 8-10, 17; Doc. 3071-1

5    Exs. 1, 15; Doc. 2794-1 Exs. 1-3, 7; Doc. 2865-1 Exs. 2-3.

6         Against these grave risks to Plaintiffs (none of which Defendants acknowledge),

7    Defendants argue only that it will cost money and cause inconvenience to comply with the

8    Court's May 6 order.  [*See* Doc. 3265 at 6]  This is an insufficient basis for a stay, because

9    when "[f]aced with [] a conflict between financial concerns and preventable human

10   suffering, we have little difficulty concluding that the balance of hardships tips decidedly

11   in plaintiffs' favor." *Harris v. Bd. of Supervisors, Los Angeles Cty.*, 366 F.3d 754, 766

12   (9th Cir. 2004) (quoting *Lopez v. Heckler*, 713 F.3d 1432, 1437 (9th Cir. 1983)).  Stays

13   are disfavored when a party's constitutional rights are at stake, as they are here.

14   **I.      PROCEDURAL BACKGROUND AND THE ORDER AT ISSUE**

15        Defendants assert that the Court's May 6, 2019 Order "is nearly identical" to the

16   June 22, 2018 contempt order (Doc. 3265 at 2), but this is untrue.  First and most

17   significantly, the May 6, 2019 Order does not include a finding of contempt, but rather

18   orders Defendants to comply with certain specific performance measures at specified

19   prisons in June 2019, much like the October 17, 2017 Order (Doc. 2373) that undergirded

20   the Court's June 22, 2018 contempt order.  [*See* Doc. 3235 at 6-7]  Second, the May 6,

21   2019 Order, like the October 17, 2017 Order, gives Defendants prospective notification

22   and instruction about how they can avoid the possible fine—by exceeding the

23   Stipulation's 85% threshold for judicial involvement for these measures at these prisons in

24   June 2019.  *Id.* at 5-7, Doc. 2373 at 2.

25        Unlike the October 17, 2017 Order, this order to show cause does not require

26   Defendants to report every instance of individual noncompliance, but only to provide the

27   June CGAR scores.  [Doc. 3235 at 7] The proposed fine schedule in the May 6, 2019

28   Order makes clear that for each of the 34 PMs and prisons listed, the Court may impose a

civil contempt sanction of $50,000 for any PM / prison below the 85% threshold in June 2019.  *Id.* at 5-7.[3]  If Defendants fail to bring the measures into compliance and the Court issues an order of civil contempt, again any fines deposited in the Court's Registry will ultimately be spent to improve health care services for the benefit of the Plaintiff class.

## II.    ARGUMENT

In ruling on a stay request, the Court is to consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).[4]

Defendants fall far short of meeting this standard.  First, they fail to make a strong showing that they are likely to succeed on the merits.  Second, they fail to articulate their irreparable injury absent a stay.  Third, a stay would substantially injure Plaintiffs, as the Court's basis for its May 6, 2019 Order was the ongoing violations of the Stipulation that place class members at unreasonable risk of harm, including serious injury or death. Finally, the public interest militates against a stay.

### A.    Defendants Have Little to No Likelihood of Success on Appeal

Defendants argue that this Court should stay the May 6 Order (and by extension, any possible subsequent contempt findings), because they are appealing the June 2018 contempt order. [Doc. 3265 at 6] But they provide no authority for the proposition that they are now immunized from future contempt findings, or that the Court's hands are tied,

---

[3] Defendants notably fail to describe what efforts—if any—they have undertaken in the weeks since the Court issued the order on May 6, 2019, to prepare for and to ensure that they will meet the benchmark in June.  Plaintiffs hope that Defendants' response is more robust than their inadequate and ad-hoc response in the fall of 2017 and the winter of 2018 after the October 2017 order giving them prospective notice of the possibility of contempt and an avenue for avoiding the fines, as detailed in the June 2018 contempt order.  [*See* Doc. 2898 at 5-7, 15-16]

[4] Defendants' reliance on *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) (Doc. 3265 at 5), is misplaced.  That case involved the standard for granting a preliminary injunction, not a stay.

1    merely because they have appealed the first contempt order.

2          Defendants tout their Ninth Circuit appeal as raising "serious questions" about the

3    Court's power to enforce the Stipulation, *id.*, when in fact much of their appeal rehashes

4    the same arguments that they made previously and unsuccessfully to the Ninth Circuit.

5    [*Parsons v. Ryan*, 912 F.3d 486 (9th Cir. 2018) ("*Parsons II*")]  Their appeal even calls on

6    the Ninth Circuit to reverse portions of its 2018 decision and adopt the dissenting opinion.

7    [*See, e.g.,* Doc. 3265-1 at 52 ("[this Court should adopt Judge Callahan's reasoning. . .)][5]

8    The probability that Defendants' arguments will prevail in the Ninth Circuit is slim to

9    nonexistent, given the doctrine of "law of the case."  *See United States v. Smith*, 389 F.3d

10   944, 948-49 (9th Cir. 2004); *see also B.K. v. Snyder*, 922 F.3d 957, 969 (9th Cir. 2019)

11   (holding it was "beyond the scope of this panel's authority" to overturn *Parsons v. Ryan,*

12   754 F.3d 657 (9th Cir. 2014) ("*Parsons I*"), as requested by the attorneys for the State of

13   Arizona in an unsuccessful appeal of this Court's certification of a class of foster children)

14   (citing *Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003)).

15         Defendants face a strong headwind in prevailing on appeal.  A civil contempt order

16   is reviewed for abuse of discretion.  *Kelly v. Wengler*, 822 F.3d 1085, 1094 (9th Cir.

17   2016); *Hook v. Ariz. Dep't of Corrs.*, 107 F.3d 1397, 1403 (9th Cir. 1997), *as amended on*

18   *reh'g and reh'g en banc* (Apr. 22, 1997), *cert denied*, 522 U.S. 865 (1997) ("The district

19   court has wide latitude in determining whether there has been contemptuous defiance of

20   its order.") (quotation marks and citation omitted). Findings of fact supporting a contempt

21   order are reviewed for clear error, *Kelly*, 822 F.3d at 1094, and can be reversed only on a

22   "definite and firm conviction that a mistake has been committed."  *Anderson v. City of*

23   *Bessemer City*, 470 U.S. 564, 573 (1985) (quotation marks omitted).

24         **B.    Defendants Cannot Show Irreparable Injury Absent a Stay**

25         Without a showing of irreparable harm tipping "sharply" in the movant's favor, a

26

27         [5] This citation is to the page of their brief, as the district court's ECF system's
     stamp overwrote the Court of Appeals' ECF stamp.  As noted *supra* n.1, all other citations
28   to the docket refer to the page number assigned by the district court's ECF system.

1    stay "may not issue, regardless of [the movant's] proof regarding the other stay factors."

2    *Leiva-Perez*, 640 F.3d at 965, 968, 971.  Perhaps recognizing they cannot meet this heavy

3    burden, Defendants do not show, or even allege, they will be irreparably harmed absent a

4    stay, other than a one-sentence assertion that "Defendants will be irreparably injured if the

5    Order is not stayed."  Doc. 3265 at 6.  Defendants then falsely assert that "the Court has

6    already recognized the validity of this argument by refusing to disburse the sanctions

7    monies paid by Defendants in connection with the Prior Sanctions Order over Plaintiffs'

8    repeated requests," (*id.*), without citation to anything in the record where (1) the Court has

9    explained the reason for not yet directing the disbursement of the money held in escrow in

10   the Registry of the Court, or (2) Plaintiffs "repeated[ly] request[ing]" the disbursement.

11           This likely is because there is no such record.  First, it is well within the discretion

12   of the Court to hold the money in escrow before directing its disbursement to benefit the

13   Plaintiff class, and not share its reasons for doing so with the parties.  Second, other than

14   filing their proposal for the use of the fines as ordered by the Court, Doc. 2941, Plaintiffs

15   have not made "repeated requests"—or indeed any requests—to the Court to disburse the

16   money.  The Court should not give unsupported assertions by counsel any weight.  *See*

17   Doc. 3269 at 1-2 ("[W]hile none of Defendants' objections have merit, the Court must

18   specifically address them because they raise concerns about Defendants' candor to the

19   Court."); *see also Carrillo-Gonzalez v. I.N.S.*, 353 F.3d 1077, 1079 (9th Cir. 2003)

20   ("[T]he argument of her counsel […] does not constitute evidence"); *Barcamerica Int'l*

21   *USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) ("the arguments

22   and statements of counsel are not evidence"); *Mason v. Ryan*, No. CV-1708098-PCT-

23   DGC-MHB, 2019 WL 1014896, at *2 (D. Ariz. Mar. 4, 2019) (same)

24           In short, Defendants provide no evidence of irreparable harm absent a stay.[6]

25   _____

26           [6] Defendants' self-inflicted expenses incurred litigating their multitude of appeals
     (and motions for reconsideration or a stay) similarly are not irreparable harm.  *See*
27   *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation
     expense . . . does not constitute irreparable injury") (citation omitted); *F.T.C. v. Standard*
28   *Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (same); *Nationwide Biweekly Admin., Inc. v.*
     *Owen*, 873 F.3d 716, 735 n.20 (9th Cir. 2017) (same); *see also* Doc. 3057 at 9.

C.     **Plaintiffs Will Be Substantially Injured If the Orders Are Stayed**

Defendants cannot make a showing that no other parties will be substantially injured by a stay. In fact, the overwhelming evidence of injury to Plaintiffs shows the need to deny Defendants' motion, and underscores the need for the May 6, 2019 order compelling Defendants—four and a half years after agreeing to do so—to comply with the requirements of the Stipulation and their constitutional obligations.

Even if a stay would reduce Defendants' expenses or workload, Plaintiffs' ongoing risk of harm, physical injury, and death far outweighs budgetary or administrative concerns. In *Blum v. Caldwell*, 446 U.S. 1311, 1315 (1980) (Marshall, J., in chambers), the Supreme Court denied the State of New York's request for a stay of an injunctive order when state officials argued (with minimal support, as here) that compliance would require the state to pay up to $150 million a year more in Medicaid benefits to recipients:

> On the other side of the balance are the life and health of the members of this class: persons who are aged, blind, or disabled and unable to provide for necessary medical care because of lack of resources. The District Court noted that some of the members of the class have already died since this suit was filed, and the denial of necessary medical benefits during the months pending filing and disposition of a petition for writ of certiorari could well result in the death or serious medical injury of members of this class. The balance of equities therefore weighs in favor of the respondents.

*Id*. at 1316. *See Harris*, 366 F.3d at 766 (plaintiffs' harm, including "pain, infection, amputation, medical complications, and death due to delayed treatment," outweighed harm to County of budget shortfall); *Lopez*, 713 F.2d at 1437 ("the physical and emotional suffering shown by plaintiffs in the record before us is far more compelling than the possibility of some administrative inconvenience or monetary loss to the government"); *Rodde v. Bonta*, 357 F.3d 988, 999 (9th Cir. 2004) (balance of hardships tipped in favor of plaintiffs who faced "delayed and/or complete lack of necessary treatment, and increased pain and medical complications" if a stay issued).

Defendants' continued noncompliance with the Stipulation and failure to provide constitutionally adequate health care to people in ADC custody constitute irreparable injury to Plaintiffs. *See Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997)

("an alleged constitutional infringement will often alone constitute irreparable harm"); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) (loss of constitutional rights, "for even minimal periods of time, unquestionably constitutes irreparable injury") (plurality opinion); *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) ("[I]t would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available") (quoting *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (ellipses in original)).

There is also a considerable concrete risk of harm to class members—who rely entirely on the State of Arizona for their health care—should the Court stay the orders. Class members continue to suffer from serious—and sometimes fatal—lapses in health care. The Court has a duty to enforce the Stipulation, which was approved as necessary to remedy constitutionally inadequate medical, dental, and mental health care. [Doc. 1458 at 6; Doc. 1185 at 13-14 ¶ 36; 18 U.S.C. § 3626(a)(1)(A); *see Brown v. Plata*, 563 U.S. 493, 511 (2011) ("Courts . . . must not shrink from their obligation to enforce the constitutional rights of . . . prisoners." (internal quotation marks and citation omitted)); *Frew v. Hawkins*, 540 U.S. 431, 440 (2004) ("Federal courts are not reduced to approving consent decrees and hoping for compliance.")]

Defendants' assertion that a stay will not harm class members because "Defendants will continue providing all constitutionally-required healthcare, performing under the Stipulation, and complying with all other, prior court orders" (Doc. 3265 at 6, 7), is nothing short of jaw-dropping. It is precisely because of their "continued excuses for noncompliance," "prolonged breach of the Stipulation," "woefully deficient" care that "reflects a wholesale breakdown in the medical unit's operations," and "failure to honor its obligations under the Stipulation and to the prisoners in their charge," that the Court issued the May 6 Order. Doc. 3235 at 1, 4, 5. Defendants' data showed noncompliance with "the provision of prescription medication, referrals to appointments with health care providers, and follow-through on hospital discharge instructions." *Id.* at 3; *see also* Doc.

3057 at 6 (denying stay, noting that "for some PM/locations, Defendants had stopped submitting new ideas and have proposed to 'continue to utilize the same corrective action plan as set forth in the [previous] update.'") (quoting Doc. 2874-1) (brackets in original).

Specifically, Defendants' most recent filing of March 2019 data underscores the need for the Order directing them to increase compliance in June 2019. While Defendants point to "significant improvement" in some measures / prisons, (Doc. 3265 at 4), it is of small comfort because these supposedly improved measures are still below the 85% threshold for judicial involvement. *See id.* (listing **PM 39:** Eyman – 76%, Lewis – 76%; **PM 42:** Eyman – 74%; Florence 84%; **PM 44:** Lewis – 66%; **PM 47:** Lewis – 66%). While 11 of the 34 PMs / prisons in the May 6 Order were above 85% in March, (*id.* at 4-5; Doc. 3262-1 at 114, 256), the other 23 PMs / prisons were noncompliant in March:

PM 11 (Eyman) – 68% [Doc. 3262-1 at 6]

PM 12 (Eyman) – 44% [*Id.* at 19]

PM 15 (Lewis) – 61% [*Id.* at 47]

PM 19 (Lewis) – 62% [*Id.* at 54]

PM 24 (Lewis) – 50%  [*Id.* at 67]

PM 35 (Eyman) – 57% [*Id.* at 72], PM 35 (Lewis) – 76% [*Id.* at 87]

PM 37 (Eyman) – 8% [*Id.* at 94],[7] PM 37 (Lewis) – 33% [*Id.* at 100]

---

[7] Defendants' May 21, 2019 Corrective Action Plan for the single digit result for PM 37 at Eyman is

> The centralized process has been discontinued at the facility and they have returned to the HNRs being processed on the unit. The process was directed back to the yards the third week in February, which is also when the education was provided by the DON [Director of Nursing] to all nursing staff. Due to a backlog, we will not see an improvement in the scores until the backlog is cleared. Providers are picking up extra shifts seeing patients to clear the backlog. HNRs are being processed daily, and the DON is tracking the HNRs to ensure compliance.

Doc. 3262-1 at 98.  It is unclear how having primary care providers working overtime will solve the delays in patients being seen by nurses, as Plaintiffs brought to Defendants' and the Court's attention the shockingly low fill rate of nurse's positions at Eyman, *see* Doc. 3255-1 Ex. 6 (Eyman tour report), which continues in the most recent staffing reports provided to Plaintiffs.  *See* Ex. 1, filed hereto, at ADCM1572708 (April 2019 staffing at Eyman of 36% of RNs, and 64% of LPNs)

PM 39 (Eyman) – 76% [*Id*. at 107]

PM 42 (Eyman) – 74% [*Id*. at 131], PM 42 (Florence) – 84% [*Id*. at 138]

PM 44 (Eyman) – 50% [*Id*. at 151], PM 44 (Florence) – 75% [*Id*. at 157],

      PM 44 (Lewis) – 66% [*Id*. at 163]

PM 47 (Eyman) – 31% [*Id*. at 190], PM 47 (Lewis) – 63% [*Id*. at 199]

PM 49 (Eyman) – 60% [*Id*. at 219], PM 49 (Florence) – 71% [*Id*. at 225]

PM 51 (Eyman) – 50% [*Id*. at 246], PM 51 (Florence) – 72% [*Id*. at 251]

PM 66 (Florence) – 50% [*Id*. at 299]

PM 67 (Tucson) – 70% [*Id*. at 316]

In their opposition to Defendants' last stay motion, Plaintiffs detailed examples of class members suffering from Defendants' egregious failure to comply with their obligations and the Constitution. [*See* Doc. 2992 at 20-21; *see also* Doc. 2993-1, Exs. 5-9] Plaintiffs' counsel and their experts continue to this day to identify systemic and individual deficiencies in health care, four and a half years after Defendants settled and agreed to start providing minimally adequate health care. [*See* Doc. 3071-1 Ex. 15 (11/13-11/15/18 tour of Lewis); Doc. 3255-1 Exs. 2, 4, 6, 10 (1/8-1/9/19 tour of Tucson, 1/10/19 tour of Phoenix, 1/24-1/25/19 tour of Eyman, 4/2-4/4/19 tour of Perryville)] These deficiencies include systemic issues such as mental health treatment encounters—including of people on suicide watch—lasting as little as two minutes (Doc. 3255-1 Exs. 1, 5, 8, and 9), and staff shortages at Eyman prison, with less than half of the Registered Nurse positions filled by full-time employees. [*Id*. at 27; *see also supra* n.7] And class members reported, and medical record reviews by Plaintiffs' experts and counsel showed:

- Profound lapses in prenatal and postnatal care at Perryville women's prison, including a seriously mentally ill woman who gave birth alone in her cell (the baby survived), a full-term stillborn, and a second trimester miscarriage by a woman whose medical record documented she had used heroin while pregnant before being incarcerated was not provided methadone treatment. [Doc. 3255-1, Ex. 10]

- Plaintiffs' mental health expert observed severely mentally ill patients at the Phoenix prison's suicide watch unit with uncontrolled psychotic symptoms, smearing feces and licking spit off the ground, and other

dangerous behaviors.  [*Id.*, Ex. 4]  Several of these patients had recent histories of self-harm, including a man who tried to bite his finger off. [*Id.*]

- Deaf class members report and their medical records show that they are not provided language interpretation services when they see health care staff, in violation of Paragraph 14 of the Stipulation and the Americans with Disabilities Act. [*Id.*, Ex. 17]

In sum, the record shows that Defendants continue to disregard their obligations to Plaintiffs to provide minimally adequate health care, leading to staggering and profound injury to many class members, and a substantial risk of serious harm to all class members. Defendants' own data show chronic noncompliance, emphasizing the need for the Court's orders to be implemented without further delay.

### D.    Public Interest Considerations Demand That No Stay Issue

Public interest considerations also confirm a stay is inappropriate.  As the Court held in one of its many denials of a stay motion, the public interest militates against a stay:

> The State agreed to the Stipulation over three years ago, has expended significant resources on this matter, and has fallen short on meeting its own benchmarks.  The public interest in the OSC hearing and the evidentiary hearing – both aimed at examining whether the State of Arizona is meeting the basic healthcare needs for the 30,000-plus inmates in its care – seems self-evident.

[Doc. 2643 at 6]

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citations and internal quotation marks omitted).  As to the right of incarcerated people to minimally adequate health care, "the public interest lies in obviating the ongoing constitutional violations in the mental and medical health care systems in [the state's] prisons[.]" *Coleman v. Brown*, 960 F. Supp. 2d 1057, 1073 (E.D. Cal. 2013) (Three Judge Panel) (denying State's motion for stay of panel's order); *see Flynn v. Doyle*, 630 F. Supp. 2d 987, 993 (E.D. Wis. 2009) ("The public has a strong interest in the provision of constitutionally-adequate health care to prisoners"); *cf. Plata*, 563 U.S. at 510-11 ("Prisoners are dependent on the State for food, clothing, and necessary medical care. . . . Just as a prisoner may starve if not fed, he or she may suffer or die if not provided

adequate medical care.  A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society."); *id.* at 531-32 ("all prisoners in California are at risk so long as the State continues to provide inadequate care . . . . [I]n no sense are they remote bystanders in California's medical care system. They are that system's next potential victims"); *Armstrong v. Brown*, 939 F. Supp. 2d 1012, 1022 (N.D. Cal. 2013) ("the Court need not wait until a death to require compliance with its orders").

### E.    Defendants' Objections to the May 6, 2019 Order Are Meritless

Defendants offer three pages of objections to the May 6, 2019 Order, (Doc. 3265 at 8-10), where they rehash many of the legal arguments they have unsuccessfully made before about the Court's enforcement power, and their position that any contempt fines would be punitive, and therefore criminal in nature.  Plaintiffs respond only to correct Defendants' mischaracterization of the Court's Order.  Defendants assert that "the Court relies on Defendants' compliance percentages for January and February 2019. . . . The retrospective nature of the proposed sanctions underscores that the intent was to punish for past misdeeds, not to spur future compliance."  Doc. 3265 at 9 (citation omitted).  This misapprehends and misconstrues the May 6, 2019 Order.  The Court relied on January and February 2019 CGAR data to identify performance measures for which it previously found Defendants noncompliant—and indeed, for some of them, in civil contempt of court—that were ***still*** substantially noncompliant, and put Defendants on notice that ***future*** noncompliance with these same measures / prisons in June 2019 might lead to a finding of civil contempt and coercive and compensatory fines.  [Doc. 3235 at 5-7]

The Court's prospective, forward-looking announcement of what Defendants need to do in the future—in other words, the Court handing Defendants the proverbial keys to their cell doors—is the classic model for civil contempt.  The ball is now in Defendants' court:  the Court gave them due notice to comply in June and to take "all reasonable steps to comply with the order," (*Kelly*, 822 F.3d at 1096), and they will avoid any finding of

1  contempt or sanctions if they achieve 85% compliance June with the 34 measures and
2  prisons in the Order.

3  **III.    CONCLUSION**

4          For these reasons, Defendants' motion for a stay should be denied.

5                                  Respectfully submitted,

6  Dated:  June 7, 2019            **PRISON LAW OFFICE**

7                                  By:  s/ Corene T. Kendrick
8                                      Donald Specter (Cal. 83925)*
                                       Alison Hardy (Cal. 135966)*
9                                      Sara Norman (Cal. 189536)*
                                       Corene T. Kendrick (Cal. 226642)*
10                                     Rita K. Lomio (Cal. 254501)*
                                       **PRISON LAW OFFICE**
11                                     1917 Fifth Street
                                       Berkeley, California 94710
12                                     Telephone:  (510) 280-2621
                                       Email:    dspecter@prisonlaw.com
13                                               ahardy@prisonlaw.com
                                                 snorman@prisonlaw.com
14                                               ckendrick@prisonlaw.com
                                                 rlomio@prisonlaw.com

15                                     *Admitted *pro hac vice*

16                                     David C. Fathi (Wash. 24893)*
                                       Amy Fettig (D.C. 484883)**
17                                     Ryan Kendall (Cal. 324714)*
                                       **ACLU NATIONAL PRISON PROJECT**
18                                     915 15th Street N.W., 7th Floor
                                       Washington, D.C. 20005
19                                     Telephone:  (202) 548-6603
                                       Email:    dfathi@aclu.org
20                                               afettig@aclu.org
                                                 rkendall@aclu.org
21
                                       *Admitted *pro hac vice*. Not admitted in DC;
22                                       practice limited to federal courts.
                                       **Admitted *pro hac vice*
23
                                       Kathleen E. Brody (Bar No. 026331)
24                                     Molly Brizgys (Bar No. 029216)
                                       **ACLU FOUNDATION OF ARIZONA**
25                                     3707 North 7th Street, Suite 235
                                       Phoenix, Arizona 85013
26                                     Telephone:  (602) 650-1854
                                       Email:    kbrody@acluaz.org
27                                     Email:    mbrizgys@acluaz.org

28

                                    -12-

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
              agerlicher@perkinscoie.com
              jhgray@perkinscoie.com

*Attorneys for Plaintiffs Shawn Jensen; Stephen
Swartz; Sonia Rodriguez; Christina Verduzco;
Jackie Thomas; Jeremy Smith; Robert Gamez;
Maryanne Chisholm; Desiree Licci; Joseph
Hefner; Joshua Polson; and Charlotte Wells, on
behalf of themselves and all others similarly
situated*


**ARIZONA CENTER FOR DISABILITY LAW**

By:   s/ Maya Abela
          Rose A. Daly-Rooney (Bar No. 015690)
          J.J. Rico (Bar No. 021292)
          Maya Abela (Bar No. 027232)
          **ARIZONA CENTER FOR DISABILITY
          LAW**
          177 North Church Avenue, Suite 800
          Tucson, Arizona 85701
          Telephone:  (520) 327-9547
          Email:    rdalyrooney@azdisabilitylaw.org
                        jrico@azdisabilitylaw.org
                        mabela@azdisabilitylaw.org

          Asim Dietrich (Bar No. 027927)
          5025 East Washington St., Ste. 202
          Phoenix, Arizona 85034
          Telephone: (602) 274-6287
          Email:    adietrich@azdisabilitylaw.com

*Attorneys for Arizona Center for Disability Law*

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that on June 7, 2019, I electronically transmitted the above

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrants:

5

6

Michael E. Gottfried
Lucy M. Rand

7

Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov

8

Lucy.Rand@azag.gov

9

Daniel P. Struck
Rachel Love

10

Timothy J. Bojanowski
Nicholas D. Acedo

11

Ashlee B. Hesman
Jacob B. Lee

12

Timothy M. Ray
Richard M. Valenti

13

Jamie D. Guzman
STRUCK LOVE BOJANOWSKI & ACEDO, PLC

14

dstruck@strucklove.com
rlove@strucklove.com

15

tbojanowski@strucklove.com
nacedo@strucklove.com

16

ahesman@strucklove.com
jlee@strucklove.com

17

tray@strucklove.com
rvalenti@strucklove.com

18

jguzman@strucklove.com

19

*Attorneys for Defendants*

20

21

s/ C. Kendrick

22

23

24

25

26

27

28

-14-