Office of the Arizona Attorney General
Michael E. Gottfried, Bar No. 010623
Assistant Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004-1592
Telephone: (602) 542-1645
Fax: (602) 542-3393
Michael.Gottfried@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1696
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-ROS<br><br>**DEFENDANTS' MOTION FOR RECONSIDERATION RE: ORDER APPOINTING DR. ABPLANALP (Dkt. 3269)** |

The Court had ordered the parties to file statements indicating whether they objected or consented to the appointment of Dr. Abplanalp to assist Dr. Stern. (Dkt. 3247.) The Court previously appointed Dr. Stern pursuant to Federal Rule of Evidence 706 to investigate Defendants' monitoring system and non-compliance with certain performance measures. (Dkt. 3089, 3127, 3231.) Dr. Stern sought to collaborate with Dr. Abplanalp regarding certain aspects of mental health care delivery. (Dkt. 3247 at 3.)

Defendants objected to Dr. Abplanalp's appointment on three grounds: (1) he could not be fair and impartial given his close relationship with Plaintiffs' counsel, evidenced by the fact that he was an "expert witness for the American Civil Liberties Union" and the fact that he charged the ACLU half the hourly rate that he sought to recover from Defendants; (2) his sampling methodology, and therefore any resulting opinion, was not credible; and (3) his appointment exceeded the scope of the Stipulation and the permissible limits of a Rule 706 expert or technical advisor. (Dkt. 3252, 3253.)

On May 30, 2019, the Court appointed Dr. Abplanalp as a "supplemental Rule 706 expert." (Dkt. 3269.) This Motion does not concern the actual appointment. Rather, it is filed to contest the following statement in the Court's appointment order: "And while none of Defendants' objections have merit, the Court must specifically address them *because they raise concerns about Defendants' candor to the Court*." (*Id*. at 1-2, emphasis added.) This is a serious charge and one that cannot be left unanswered. Defendants take very seriously its duty of candor to the Court, and, for the following reasons, do not believe that the Court's statement was justified here. Defendants respectfully request that the Court reconsider its Order and withdraw the suggestion that Defendants' objections were less than candid. *See* LRCiv 7.2(g)(1) (manifest error).

**Objection #1: Dr. Abplanalp's partiality**.

In denying Defendants' first objection, the Court stated: "Defendants ignore that experts may charge different fees for performing different types of work or the practice of charging fees on a sliding scale. … In short, there is no legitimate basis to question Dr. Abplanalp's impartiality based merely on his varying fees." (Dkt. 3269 at 2.) But Defendants did not object merely on that basis. Their objection was based on the fact that (1) Dr. Abplanalp was an expert witness "for the" ACLU (Dkt. 3252-1 at 2), (2) the ACLU publishes Dr. Abplanalp's opinions on their website, *see* https://www.aclu.org/sites/default/files/assets/abplanalp_report.pdf (last visited June 7, 2019), and (3) Dr. Abplanalp charges the ACLU half the hourly rate than he sought to charge Defendants. (Dkt. 3252 at 1-2.) Defendants' "concern" about these cumulative facts—which neither

Plaintiffs (Dkt. 3258) nor the Court disputed as false—is that they objectively undermine Dr. Abplanalp's ability to be impartial. Although experts are within their right to charge different rates in different cases, Dr. Abplanalp's preexisting relationship with the ACLU highlights that impartiality concern in this case. Indeed, the Court ordered Dr. Abplanalp to justify his increased rate in this case. (Dkt. 3269 at 2.) At a minimum, the objection was grounded in truthful, undisputed facts.

**Objection #2: Dr. Abplanalp's credibility.**

In denying Defendants' second objection, the Court suggested that they misrepresented a case (*Dockery v. Fischer*, 253 F. Supp. 3d 832 (S.D. Miss. 2015)) in challenging the credibility of any of Dr. Abplanalp's forthcoming opinions. (Dkt. 3269 at 2.) But a close look at that case and Defendants' objection confirms that Defendants discussed it accurately. *Dockery* involved a lawsuit brought by and on behalf of prisoners challenging several aspects of their treatment and housing, including an allegation of inadequate mental health care.[1] *Id*. at 839. The plaintiffs moved to certify a class and several subclasses and, in response, the defendants moved to exclude (under *Daubert*) the plaintiffs' four medical and mental health experts, one of whom was Dr. Abplanalp. *Id*. at 843. The defendants' first of two challenges was to these experts' sampling methodologies that they applied in formulating their opinions—"'qualitative studies' of a few 'unrepresentative samples.'" *Id*. at 843-44. The district court denied the defendants' request to exclude the experts (under *Daubert*), ruling:

---

[1] The district court described the particular allegations this way: "Plaintiffs allege: (1) they receive little, if any, individual or group mental health treatment, (2) they are over-medicated with tranquilizing anti-psychotic medications, (3) the symptoms of their mental diseases are exacerbated by the conditions under which they are housed, and (4) they are subjected to disciplinary actions if they attempt to seek help from the medical staff. Plaintiffs further allege: (1) they have de minis contact with psychiatrists, (2) they are given little to no opportunity to discuss their symptoms or problems with mental health care providers, and (3) that psychiatric medications are often prescribed by psychiatrists who have not evaluated or assessed the prisoners but, instead, are simply rubber-stamping recommendations made by insufficiently trained personnel." *Dockery*, 253 F. Supp. 3d at 840. The plaintiffs also challenged the prison's use of solitary confinement, the provision of medical care, use of excessive force, failure to protect prisoners from violence, and sanitation and environmental conditions. *Id*. at 840-41.

> [A]lthough <u>Defendants have shown that the qualitative methodologies used by Plaintiffs' experts raise questions regarding bias</u>, and whether it is scientifically permissible to make inferences as to the whole EMCF prisoner population based on a selective sampling of the medical records of only a few inmates, <u>the Court finds these issues go more to the credibility of the expert opinions</u> as opposed to undermining the methodologies used by Plaintiffs' experts in formulating those opinions.

*Id.* at 844 (emphasis added).

Defendants relied on the district court's ruling in *Dockery* to object to Dr. Abplanalp's credibility in this case. They stated:

> Second, due to the sampling methodology employed by Dr. Abplanalp, his opinions are not credible. In *Dockery*, the Court found that his methodology, "rais[ed] questions regarding bias, and whether it is scientifically permissible to make inferences as to the whole [prison] prisoner population based on a selective sampling of medical records of only a few inmates ..." and determined these issues went to the credibility of Dr. Abplanalp's opinions. *Dockery v. Fischer*, 253 F. Supp. 3d 832, 844 (S.D. Miss. 2015).

(Dkt. 3252 at 2.)  In its Order, however, this Court was critical of that recitation:

> The first objection leveled against Dr. Abplanalp is that his opinions are not credible because another court found that his sampling methodology, "rais[ed] questions regarding bias, and whether it is scientifically permissible to make inferences as to the whole [prison] prisoner population based on a selective sampling of medical records of only a few inmates." *Dockery v. Fischer*, 253 F. Supp. 3d 832, 844 (S.D. Miss. 2015). <u>But the district court in *Dockery* made no such finding. Instead, the court referenced the questions raised by the correctional defendants' *Daubert* motion to exclude all of plaintiffs' expert witnesses' opinions about conditions of confinement. And in fact, the court ultimately denied the defendants' motion to exclude plaintiffs' experts' opinions and certified a class action alleging unconstitutional conditions of confinement for mentally ill prisoners.</u>

(Dkt. 3269 at 2.)  Thus, it appears that the Court believes that Defendants mischaracterized *Dockery* in three ways: (1) the district court in *Dockery* never found that Dr. Abplanalp was not credible; (2) the district court only "referenced the questions raised by the correctional defendants' *Daubert* motion to exclude all of plaintiffs' expert witnesses' opinions about conditions of confinement"; and (3) the district court ultimately denied the defendants' *Daubert* motion.

Respectfully, Defendants' recitation of *Dockery* was accurate and not misleading. Defendants never asserted that the district court in *Dockery* found Dr. Abplanalp not credible. (*See* Dkt. 3258, Plaintiffs' Response to Defendants' Objections, at 2 ["Contrary to Defendants' misleading characterization, the *Dockery* court did not find the opinions of Dr. Abplanalp (or the opinions of any of plaintiffs' medical and mental health experts) to be 'not credible.'].") They stated that *they* believed that "his opinions are not credible" and then quoted—verbatim—the district court's conclusion. *Compare* Dkt. 3252 at 2 ("In *Dockery*, the Court found that his methodology, "rais[ed] questions regarding bias …"); *with Dockery*, 253 F. Supp. 3d at 844 ("[D]efendants have shown that the qualitative methodologies used by Plaintiffs' experts raise questions regarding bias …"). In concluding that the defendants in *Dockery* "have shown" that the methodologies used by their experts—including Dr. Abplanalp—raised questions regarding bias, the district court did more than simply reference the defendants' argument. It *agreed* with their argument. Moreover, nothing in the decision limited either the defendants' methodology argument or the district court's agreement to the experts' opinions relating to "conditions of confinement." In fact, the challenged opinions pertained to "medical and mental health care." *See Dockery*, 253 F. Supp. 3d at 843 ("In moving to exclude Plaintiffs' experts, Defendants first challenge the methodologies they applied in formulating their opinions. *See e.g.* Mem. in Supp. of Mot. to Exclude [Docket No. 224], 2 (arguing that Plaintiffs' experts 'could have and should have used established, recognized and universally accepted principles and methods of statistical sampling and analysis to evaluate and forecast the inmate population's <u>medical and mental health care</u> need.').") (emphasis added).[2]

---

[2] In their Response to Defendants' objections, Plaintiffs broadly characterized *Dockery* as involving "a challenge to conditions of confinement," and, while accusing Defendants of providing a "highly misleading and incomplete characterization" of *Dockery*, they failed to inform the Court that *Dockery*—and particularly the opinions at issue—pertained to medical and mental health care. (Dkt. 3258 at 2.) Notably, the National Prison Project of the ACLU, who is counsel in this case (*id.* at 4), was appointed class counsel in *Dockery*. 253 F. Supp. 3d at 856.

Finally, the fact that the district court in *Dockery* ultimately denied the defendants' *Daubert* motion and certified the class does not suggest at all that Defendants' passage was misleading. Defendants were simply providing objections to Dr. Abplanalp's appointment, and this particular objection pertained to his credibility. Defendants were not moving to exclude his opinions under *Daubert*, or opposing class certification, nor were they citing *Dockery* as support to do the same here. And in fact, Defendants *did* note that the court "determined these issues went to the credibility of Dr. Abplanalp's opinions." (Dkt. 3252 at 2.)

**Objection #3: Preserving Rule 706/technical advisor arguments.**

In denying Defendants' last objection, the Court stated that Defendants "intentionally altered" a reference in *Reilly v. United States*, 863 F.2d 149 (1st Cir. 1988). (Dkt. 3269 at 2-3.) Again, Defendants do not believe that they did. As the Court correctly noted, this objection was lodged in a Supplemental Response. (Dkt. 3253.) What the Court may not be aware of is that Defendants had previously objected to the appointment of any Rule 706 expert, more than a year before this Court was assigned to the case. (Dkt. 2067.) Before Magistrate Judge Duncan, Defendants argued that the Stipulation did not authorize the appointment of a Rule 706 expert and that, even if did, Rule 706 did not authorize non-testifying experts. (*Id*. at 9-12, citing *Armstrong v. Brown*, 768 F.3d 975, 988 (9th Cir. 2014).) They further argued that, although a court has the authority to appoint a non-testifying expert pursuant to its inherent authority to appoint a technical adviser, even a technical adviser cannot engage in fact-finding. (*Id*., citing *Reilly*.) Magistrate Judge Duncan ultimately disagreed and ordered the appointment of a Rule 706 expert. (Dkt. 2900 at 12; Dkt. 2905 at 4.) This Court appointed Dr. Stern to fill that role. (Dkt. 3089, 3127, 3231.)

Defendants have appealed Dr. Stern's appointment on the same grounds that it objected to the appointment of Dr. Abplanalp. *See Parsons v. Ryan*, No. 18-16368, Doc. 34 [Opening Brief] at 61-63. Mindful of this Court's prior admonitions that it will not reconsider any of Magistrate Judge Duncan's prior rulings, Defendants submitted its

6

Supplemental objection to the appointment of Dr. Abplanalp to preserve a similar challenge for appeal. (Dkt. 3253.) In that Supplement, Defendants accurately quoted *Reilly*. (*See id*. at 2, quoting *Reilly*, 863 F.2d at 158 ["Neither may a court employ a technical advisor to undertake an independent mission of finding facts outside the record of the case."]; *id.*, quoting *Reilly*, 863 F.2d at 155 ["A technical advisor may not assume the role of an expert witness by supplying new evidence; nor may an advisor usurp the role of the judge by making findings of fact or conclusions of law."].) There was no alteration.

The Court noted that *Reilly* "addressed the role of a technical advisor as specifically distinguished from an expert under Rule 706." (Dkt. 3269 at 2.) Defendants agree that *Reilly* discussed the difference between a Rule 706 expert and a technical advisor, and that their objection cited to those portions of the opinion that discussed the role of a technical advisor. But, again, their objection was built upon their earlier objection that Rule 706 does not authorize a non-testifying expert (like Dr. Stern or Dr. Abplanalp), and thus the only possible authority to appoint either one was its inherent authority to appoint a technical advisor. Defendants cited *Reilly* to preserve a challenge to the scope of Dr. Abplanalp's engagement, as exceeding the bounds of a technical advisor. The Court disagreed with that argument, but, in citing *Reilly*, Defendants did not misstate it.[3]

---

[3] In a preceding sentence, Defendants stated: "Second, <u>technical experts</u>' roles must be carefully defined and limited." (Dkt. 3253 at 1, emphasis added.) This could be what the Court is referring to when it stated that Defendants "intentionally altered *Reilly*'s reference from 'advisor' to 'expert." (Dkt. 3269 at 2.) In conflating the terms "Rule 706 *expert*" and "technical *advisor*," Defendants did not intend to suggest that *Reilly* addressed the role of a Rule 706 expert. As discussed above, their prior briefing clarifies that distinction and Defendants' argument. Moreover, Defendants did not quote *Reilly* when it referred to a "technical expert." *But see Reilly*, 863 F.3d at 155 (referring to technical advisors as "expert advisors"); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 280 F. Supp. 3d 691, 696 (D. Md. 2017) (referring to technical advisor as a "technical expert").

7

## CONCLUSION

For these reasons, Defendants request that the Court reconsider and amend its Order to remove the following statements: (1) "because they raise concerns about Defendants' candor to the Court" (Dkt. 3269 at 1:28-2:1); and (2) "Defendants intentionally altered *Reilly*'s reference from 'advisor' to 'expert' and" (*id*. at 2:27-28).

DATED this 7th day of June, 2019.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By /s/Daniel P. Struck
    Daniel P. Struck
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    3100 West Ray Road, Suite 300
    Chandler, Arizona  85226

    Office of the Arizona Attorney General
    Michael E. Gottfried
    Assistant Attorney General
    2005 N. Central Avenue
    Phoenix, Arizona 85004-1592

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com; docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Dietrich: | adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Ryan M. Kendall: | rkendall@aclu.org; ryankendall@ucla.edu |
| Molly Brizgys: | mbrizgys@acluaz.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Daniel P. Struck

9