# EXHIBIT A

# [REDACTED]



STRUCK LOVE BOJANOWSKI & ACEDO, PLC

Timothy J. Bojanowski
480.420.1604
tbojanowski@strucklove.com

June 13, 2019

***VIA EMAIL ONLY***
David C. Fathi
American Civil Liberties Union
Legal Department
NATIONAL PRISON PROJECT
915 15th Street, NW
7th Floor
Washington, DC 20005-2112

**Re: *Parsons v. Ryan* - Plaintiffs' Notice of Substantial Noncompliance: PMs 74, 76, 80-92, 94, 95 – ASPC-Phoenix**

Dear David:

We are responding to Plaintiffs' May 14, 2019 Notice of Substantial Noncompliance concerning the following Performance Measures ("PMs") at Phoenix: 74, 76, 80-92, 94-95. Plaintiffs' pattern of erroneous notices is repeated here, and this Notice suffers the same fatal flaws as their April 22, 2019 Notice concerning Perryville, their May 1, 2019 Notice concerning Eyman, and their May 3, 2019 Notice concerning Florence:

(1) Plaintiffs inappropriately sweep-in inapplicable PMs;
(2) Plaintiffs skip over multiple other mental health encounters and extract handpicked samples out of the context of the complete mental health care plan that is individualized to the respective inmate patient; and
(3) Plaintiffs have a fundamental misunderstanding of the purpose of the contacts they extracted out of context in their Notice.

For the same reasons Plaintiffs' Notices of Substantial Noncompliance concerning Perryville, Eyman, and Florence were erroneous, their Notice concerning Phoenix is erroneous.

Notwithstanding, Defendants deny Plaintiffs' claims that the measures were in substantial noncompliance because of the duration of the contacts Plaintiffs singled out and affirmatively assert that there is no substantial noncompliance with the settlement Stipulation. None of the examples in the Notice substantiate any claims to the contrary. Furthermore, there is no good

faith basis in the Stipulation for Plaintiffs' claims, and the Notice should be withdrawn immediately.

**The Performance Scores Plaintiffs Allege are at Issue at Phoenix.**

PM 74: All female inmates shall be seen by a licensed mental health clinician within five (5) working days of return from a hospital post-partum.

PM 76: If the initial mental health assessment of a prisoner during initial intake is not performed by licensed mental health staff, the prisoner shall be seen by a mental health clinician within 14 days of his or her arrival into ADC.

PM 80: MH-3A prisoners shall be seen a minimum of every 30 days by a mental health clinician.

PM 81: MH-3A prisoners who are prescribed psychotropic medications shall be seen a minimum of every 90 days by a mental health provider.

PM 82: MH-3B prisoners shall be seen a minimum of every 90 days by a mental health clinician.

PM 83: MH-3B prisoners who are prescribed psychotropic medications shall be seen a minimum of every 180 days by a mental health provider. MH-3B prisoners who are prescribed psychotropic medications for psychotic disorders, bipolar disorder, or major depression shall be seen by a mental health provider a minimum of every 90 days.

PM 84: MH-3C prisoners shall be seen a minimum of every 180 days by a mental health provider.

PM 85: MH-3D prisoners shall be seen by a mental health provider within 30 days of discontinuing medications.

PM 86: MH-3D prisoners shall be seen a minimum of every 90 days by a mental health clinician for a minimum of six months after discontinuing medication.

PM 87: MH-4 prisoners shall be seen by a mental health clinician for a 1:1 session a minimum of every 30 days.

PM 88: MH-4 prisoners who are prescribed psychotropic medications shall be seen by a mental health provider a minimum of every 90 days.

PM 89: MH-5 prisoners shall be seen by a mental health clinician for a 1:1 session a minimum of every seven days.

PM 90: MH-5 prisoners who are prescribed psychotropic medications shall be seen by a mental health provider a minimum of every 30 days.

PM 91: MH-5 prisoners who are actively psychotic or actively suicidal shall be seen by a mental health clinician or mental health provider daily.

PM 92: MH-3 and above prisoners who are housed in maximum custody shall be seen by a mental health clinician for a 1:1 or group session a minimum of every 30 days.

PM 94: All prisoners on a suicide or mental health watch shall be seen daily by a licensed mental health clinician or, on weekends or holidays, by a registered nurse.

PM 95: Only licensed mental health staff may remove a prisoner from a suicide or mental health watch. Any prisoner discontinued from a suicide or mental health watch shall be seen by a mental health provider, mental health clinician, or psychiatric registered nurse between 24 and 72 hours after discontinuation, between seven (7) and ten (10) days after discontinuation, and between 21 and 24 days after discontinuation of the watch.

**Performance Scores Do Not Support Plaintiffs' Allegations of Substantial Noncompliance.**

Defendants are not currently in substantial noncompliance at Phoenix for any of the PMs cited by Plaintiffs because Phoenix's performance scores do not meet the Court's definition of substantial noncompliance.[1] There are no findings by the Monitoring Bureau that Phoenix's performance under these measures was noncompliant in number or succession so as to meet the Court's definition of noncompliance.

The following are Phoenix's scores over the past two years:

PM 74: Not applicable for the past 24 months
PM 76: Not applicable for the past 24 months
PM 80: Compliant for the past 24 months
PM 81: Compliant for the past 24 months
PM 82: Compliant for the past 24 months
PM 83: Compliant for the past 24 months
PM 84: Not applicable for the past 24 months
PM 85: Not applicable for the past 24 months

[1] The Court has concluded that a performance measure is noncompliant when (1) 6 of 24 months are non-compliant; and (2) three consecutive months are non-compliant pursuant to the Stipulation at ¶ 21(b). Doc. 2030.

PM 86: Not applicable for the past 24 months
PM 87: Compliant for the past 24 months
PM 88: Compliant for the past 24 months
PM 89: Compliant for the past 24 months
PM 90: Compliant for the past 24 months
PM 91: Compliant for the past 24 months
PM 92: Compliant for the past 24 months
PM 94: Compliant for the past 24 months
PM 95: Compliant for the past 24 months

None currently meet the Court's definition of substantial noncompliance and, accordingly, we ask that Plaintiffs withdraw their notice as to all of these measures.

Furthermore, some of the 21 files highlighted by Plaintiffs were selected and reviewed for compliance in Plaintiffs' December 2018 through April 2019 timeframe and found to be compliant. The remainder were not selected, reviewed, and measured and, therefore, are irrelevant to compliance. Plaintiffs have not alleged that the findings by the Monitoring Bureau are inappropriate or inaccurate because they cannot—there is no time requirement in the Stipulation's definition of the term "seen."

**Plaintiffs Erroneously Sweep In Inapplicable PMs.**

In addition to the above, all of the inmate records handpicked by Plaintiffs were inmates being seen by a psychiatric associate in connection with being on watch or weekly contacts. None were scheduled mental health encounters mandated by PMs 74, 76, 80-88 or 90. Furthermore, PMs 74, 76, and 84-86 have not been applicable at Phoenix for the past 24 months.

Plaintiffs' attempt to sweep in PMs that are clearly inapposite to the claims alleged in the Notice is grossly misleading. Plaintiffs have not substantiated or "described the alleged noncompliance" with respect to PMs 74, 76, 80-88 or 90 as required by Paragraph 30 of the Stipulation.

There is no Rule 11 good faith basis to maintain Plaintiffs' claim of substantial noncompliance with respect to these PMs, and we request that you withdraw Plaintiffs' Notice accordingly.

**Plaintiffs' Complaint Concerning the Duration of Encounters is a Disguised Standard of Care Complaint with No Basis in the Stipulation or the PMs.**

Plaintiffs erroneously allege that the mental health encounters cited in their letter were somehow not long enough to satisfy the PMs' requirement that a patient be "seen" by mental health staff as defined in the Stipulation. Again, neither the definition nor the PMs mandate that a certain amount of time be utilized during the encounters. Further, duration is not measured for

purposes of determining compliance with the PMs. Therefore, Plaintiffs' claim that the encounters are somehow not long enough to comply with the Stipulation is unfounded.

Moreover, the definition of "seen" in the Stipulation includes "a treatment and/or exchange of information in a confidential setting." Doc. 1185-1 at 5 (emphasis added). The purpose of most of the encounters picked by Plaintiffs was crisis intervention treatment services conducted by a mental health clinician to observe behavior, as well as cognitive and emotional state, in order to determine whether the patient's watch or post-watch status was appropriate or needed to be adjusted. Crisis intervention is immediate and short term to protect the patient from self-injury or injury to others. It is intended to stabilize and return the patient to his/her status quo. Counseling or long-term therapy is not appropriate while inmates are on watch. Plaintiffs have a clear misunderstanding of the purpose of these contacts.

Most importantly, however, contacts are individualized by the patient and duration is driven by the patient. If a patient needs more time, more time is given. The attached table demonstrates the multiple contacts and varying durations—some encounters take minutes while others last 10, 15, 20 minutes, with several examples of 60 minutes and an example of a 100-minute encounter. And, a closer look at the specific encounters Plaintiffs attached to their letter reveals that most of the patients refused a confidential setting and were unwilling to further engage the mental health clinician. The patients themselves dictated the level and duration of those contacts.

Ultimately, the encounters were deemed appropriate by the mental health professionals, and the "exchange of information" was sufficient in their professional opinions to make their assessments and serve the crisis intervention purpose of the encounter within the meaning of the PMs. By contrast, Plaintiffs are not qualified to make a determination that the duration of an encounter alone is not sufficient to meet mental health standards of care. Plaintiffs have not provided expert opinion supporting their position.

Because there is no time requirement for inmate patients to be deemed "seen" as defined in the Stipulation or set forth in the PMs, Plaintiffs' claim boils down to a disagreement with medical professional opinion and care. The Stipulation does not provide a medium for disagreement with medical opinion; rather, it sets forth objective criteria to be monitored and reported. Had Plaintiffs required a certain time for "the exchange of information" within the meaning of the term "seen", they would have bargained for it and set it forth expressly in the Stipulation. They cannot now after nearly five years of monitoring, and in the wake of Defendants seeking to terminate reporting on certain PMs, seek to attack medical professional discretion that has no basis in the parties' agreement.

Plaintiffs' unqualified claim that the encounters were not long enough to meet mental health standards of care is unsupported.

**<u>Plaintiffs' Examples Do Not Demonstrate the Entire Record of Mental Health Contacts and Treatments each Inmate Reviewed.</u>**

Plaintiffs note only a few encounters and leave out multiple other contacts that, together, complete the mental health care plan for each inmate patient during the timeframe complained of. The attached table demonstrates the total contacts as well as durations, if noted, for each inmate appearing in Plaintiffs' letter for the December 2018 – April 2019 timeframe complained of. Below are some examples:

[redacted]: IM [redacted] was "seen" 104 times during the timeframe complained of by Plaintiffs. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: release planning, non-clinical mental health, group counseling, and unscheduled psychiatric nurse visits. Two of the encounters complained of by Plaintiffs were watch follow-up contacts by a psychiatric associate (PA). The contacts were cell-front because IM [redacted] refused to come out and talk in a confidential setting. Two of the contacts he ended stating he had nothing else to talk about. The third contact was a weekly contact that he ended because he stated he wanted to go lay down.

[redacted] IM [redacted] was "seen" 44 times during Plaintiffs' timeframe. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: group counseling, non-clinical mental health, health and welfare rounds, and unscheduled psychiatric nurse visits. The three encounters complained of by Plaintiffs were weekly and watch follow-up contacts by a PA. The contacts were cell-front because IM [redacted] refused to come out and talk in a confidential setting. He ended the contacts stating he had nothing further to talk about.

[redacted]: IM [redacted] was "seen" 37 times during Plaintiffs' timeframe. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: group counseling, non-clinical mental health, and unscheduled psychiatric nurse visits. The three encounters singled out by Plaintiffs were weekly contacts by a PA. One contact was confidential, but 5 minutes into the contact IM [redacted] stood up and left. The other two contacts were cell front because he refused to come out and talk in a confidential setting. Both contacts he ended stating he had nothing further to talk about.

[redacted]: IM [redacted] was "seen" 38 times during Plaintiffs' timeframe. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: group counseling, non-clinical mental health, and unscheduled psychiatric nurse visits. The contact complained of by Plaintiffs was a treatment plan review by a PA. IM [redacted] refused a confidential setting and was seen cell front. He ended the contact stating he had nothing further to talk about.



IM was "seen" 65 times during Plaintiffs' timeframe. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: group counseling, non-clinical mental health, and unscheduled psychiatric nurse visits. Two of the contacts singled out by Plaintiffs were weekly contacts by a PA. IM ended them declining to speak with the PA about anything else. The third contact was a PREA contact that he ended by denying wanting to process the complaint any further, and he had nothing further to say to the PA because he had his individual counseling session recently.

: IM was "seen" 32 times during Plaintiffs' timeframe. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: group counseling, non-clinical mental health, and unscheduled psychiatric nurse visits. The contact complained of by Plaintiffs was a weekly contact by a PA. The contact was cell-front because IM refused to come out and talk in a confidential setting. He ended the contact stating he had nothing further to talk about with the PA.

: IM was "seen" 44 times during Plaintiffs' timeframe. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: group counseling, health and welfare rounds, and unscheduled psychiatric nurse visits. The contact singled out by Plaintiffs was a weekly contact by a PA. The contact was cell-front because IM refused to come out and talk in a confidential setting. He ended the contact stating he had nothing further to talk about with the PA.

: IM was "seen" 53 times during Plaintiffs' timeframe. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: group counseling, non-clinical mental health, and unscheduled psychiatric nurse visits. The four contacts complained of by Plaintiffs were weekly and watch follow-up contacts by a PA. Three were cell-front because IM refused to come out and talk with the PA in a confidential setting. He ended the contacts stating he had nothing further to talk about with the PA. During one of the contacts he covered up with a blanket and refused to engage further. Another time he refused to speak further and went to the back of his cell and sat on the toilet. The fourth contact was a watch follow-up contact in a confidential setting. He ended the contact stating that he did not want to be there and requested to go back to his cell.

IM was "seen" 40 times during Plaintiffs' timeframe. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: group counseling, non-clinical mental health, and unscheduled psychiatric nurse visits. The five contacts Plaintiffs singled out were weekly and watch follow-up contacts by a PA. All were conducted cell-front because IM refused to come out and talk in a confidential setting. He ended all contacts stating he had nothing further to talk about with the PA.



: IM was "seen" 41 times during Plaintiffs' timeframe. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: group counseling, non-clinical mental health, and unscheduled psychiatric nurse visits. The five contacts Plaintiffs complained of were weekly contacts by a PA. He ended the contacts stating he had nothing further to talk about with the PA and requested to go back to his cell.

: IM was "seen" 55 times during Plaintiffs' timeframe. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: group counseling, non-clinical mental health, and unscheduled psychiatric nurse visits. Two contacts Plaintiffs point out were a treatment plan review by a PA. The remaining were weekly contacts. IM refused to come out and talk in a private setting for all but one contact so those contacts were conducted cell-front. He ended the contacts stating he had nothing further to speak with the PA about. Contrary to Plaintiffs' assertion concerning his watch contacts, however, IM remained on his level of watch and was not lowered during the contacts Plaintiffs complained of because he refused to engage the PA.

: IM was "seen" 40 times during Plaintiffs' timeframe. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: group counseling and unscheduled psychiatric nurse visits. The contact Plaintiffs complain of is a weekly contact by a PA. IM ended the contact stating there was nothing he needed to talk about.

: IM was "seen" 33 times during Plaintiffs' timeframe. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: group counseling, non-clinical mental health, health and welfare rounds, and unscheduled psychiatric nurse visits. The four contacts Plaintiffs complain of were weekly and watch contacts by a PA. All contacts were conducted cell-front because IM refused to come out and talk to the PA in a confidential setting. He ended the contacts stating he had nothing further to talk to the PA about.

: IM was "seen" 45 times during Plaintiffs' timeframe. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: health and welfare rounds and unscheduled psychiatric nurse visits. The contact Plaintiffs complain of was a daily watch contact by a PA. The contact was conducted cell-front because IM refused to come out and talk to the PA in a confidential setting. He ended the contact stating that he had nothing further to discuss. Contrary to Plaintiffs' assertion, he remained on constant watch and was not moved to a lower watch level.



████: This inmate's mental health care was complained of in Plaintiffs' Notice concerning Eyman and repeated here because the inmate moved from Eyman to Phoenix in Plaintiffs' timeframe. His wrap-around treatment was explained in Defendants' response to the Eyman Notice and is incorporated here. Additionally, the three contacts Plaintiffs complain of were daily watch contacts conducted by a PA. The PA repeatedly asked IM ████ to talk, however, he declined. During one contact, he stood up naked, put his bottoms on and came to the cell-front, looked around, and then took his bottoms off and walked to the back of the cell. IM ████ refused to engage with the PA. During another contact, he waived the PA away. Contrary to Plaintiffs' assertion, he remained on 30-minute watch and was not removed.

████: IM ████ was "seen" 68 times during Plaintiffs' timeframe. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: unscheduled psychiatric nurse visits. The contact Plaintiffs complain of is a daily watch contact by a PA. The contact was conducted cell-front because IM ████ refused to come out and talk with the PA in a confidential setting. He ended the contact stating that he had nothing else to talk about and requested he be put on watch. He remained on a 30-minute watch after this contact and was not removed.

████: IM ████ was "seen" 77 times during Plaintiffs' timeframe. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: group counseling, non-clinical mental health, and unscheduled psychiatric nurse visits. The contact Plaintiffs complain of is a daily watch contact by a PA. IM ████ was on constant watch and remained on constant watch after the contact. He ended the contact stating he no longer wanted to speak to the PA and wanted to go to sleep. Contrary to Plaintiffs' assertion, as indicated above, he remained on constant watch and was not moved to a lower watch level.

████: IM ████ was "seen" 69 times during Plaintiffs' timeframe. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: group counseling, non-clinical mental health, health and welfare rounds, and unscheduled psychiatric nurse visits. The three contacts Plaintiffs complain of were daily watch contacts by a PA. IM ████ was on constant watch on November 3, 2018 and refused to come out of his cell to talk with the PA in a confidential setting. He was laying on the floor covered with a blanket and rolled over refusing to engage with the PA. He remained on constant watch. During the January 4, 2019 contact Plaintiffs single out, IM ████ agreed to participate in an assessment and was moved to a 10-minute watch. During the January 14, 2019 contact Plaintiffs single out, IM ████ was on a 30-minute watch and engaged the PA. He was removed from watch as a result of the professional assessment of the PA who had encountered him multiple times over his time on watch.



[redacted]: IM [redacted] was "seen" 84 times during Plaintiffs' timeframe. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: group counseling and unscheduled psychiatric nurse visits. The contact complained of by Plaintiffs was a daily watch contact by a PA. He engaged with the PA cell-front and then ended the contact stating he had nothing further to talk about. He was moved from a 10-minute to a 30-minute watch after the contact.

[redacted]: IM [redacted] was "seen" 42 times over Plaintiff's timeframe. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: non-clinical mental health, release planning, and unscheduled psychiatric nurse visits. The three contacts Plaintiffs complain of are daily watch contacts by a PA. IM [redacted] was moved from a 30-minute watch to a 10-minute watch during one of the contacts. The other two contacts he remained at his current level and not moved to a lower level.

[redacted]: IM [redacted] was "seen" 32 times over Plaintiffs' timeframe. This number does not include numerous other mental health encounters the inmate received that do not have a "seen" requirement in the Stipulation and are in addition to the foregoing: non-clinical mental health, health and welfare rounds, and unscheduled psychiatric nurse visits. The two contacts Plaintiffs complain of are daily watch contacts by a PA. IM [redacted] refused to engage staff and remained on constant watch as a result.

Each of the examples cited by Plaintiffs was extracted out of a wrap-around treatment plan context. The totality of these encounters demonstrates a treatment plan that included crisis intervention encounters by mental health clinicians, as well as follow-up contacts to maintain stability, and follow-up therapy by mental health providers. The wrap-around plan is individualized by each patient to stabilize and maintain mental health, and the encounters are intended to build upon the other. At the end of each day, a summary of each patient encounter is distributed to staff. Staffing is also done at the start of each day where staff are briefed on the status of the patients. Staff know their population. The encounters do not occur in a vacuum and cannot be extracted from one another.

Plaintiffs' letter demonstrates an incomplete picture of the health care that each inmate patient received. A review of the entire record demonstrates that each inmate had multiple other encounters which complete the mental health treatment plan and care needs individualized to each inmate patient.

In addition, Plaintiffs' accusation that medical encounters are not lasting long enough does not state a claim of noncompliance, substantial noncompliance, or demonstrate that the care fell below the standard of care or breached the Stipulation.

**Conclusion**

Plaintiffs have not provided a single example of nor have they "described the alleged non-compliance" with respect to PMs 74, 76, 80-92, or 94-95 as required by Paragraph 30 of the Stipulation. There is no Rule 11 good faith basis to maintain their Notice concerning these PMs.

As indicated above, neither the Stipulation nor any of the PMs complained of by Plaintiffs mandate a certain length of time for a patient to be "seen". Plaintiffs are not qualified to conclude that the encounters were somehow not long enough and fell below the standard of care. Plaintiffs' allegations concerning the length of an encounter do not support their claim of noncompliance.

Defendants request that Plaintiffs withdraw their Notice in its entirety.

Regards,

Timothy J. Bojanowski

TJB/eap

cc: Counsel of Record

| 1:1 | Seg. | Daily | WFU | Psych | Psych RN | Total | Notes |
|---|---|---|---|---|---|---|---|
| 16 | 14 | 0 | 0 | 7 | 4 | 41 | 1:1 mins = 5(x3),15(x5),20(x5),25,30; Seg mins = 5(x2),10(x3),15(x7) |
| 2 | 2 | 14 | 2 | 2 | 10 | 32 | Movement = Phx-Tucson-Eyman; Daily mins = 5,5,20 |
| 2 | 4 | 62 | 5 | 6 | 2 | 81 | Movement: Phoenix-Tucson-Eyman-Phoenix-Released 2/27/19; 1:1 mins: 10,20; Daily mins: 5,5,5,5,5,5 |
| 13 | 2 | 12 | 5 | 6 | 6 | 44 | Movement = Phx-Tucson; 1:1 mins = 15; Seg mins = 5; Daily mins = 5,10(x3),15(x2); WFU mins = 10,30 |
| 2 | 0 | 55 | 4 | 1 | 6 | 68 | Released 1/13/19; Daily mins = 3,5(x33),10(x5),15(x3); WFU mins = 10,20,20 |
| 7 | 8 | 5 | 3 | 8 | 13 | 44 | Movement = Eyman-Phx-Florence; 1:1 mins = 10,15,15,20,20; Seg mins = 5; Daily mins = 5,10,25; WFU mins = 5,5,25 |
| 16 | 7 | 28 | 6 | 7 | 40 | 104 | Released 5/1/19; 1:1 mins = 10(x2),15(x4),20(x4),25(x2),30; Seg mins = 5; Daily mins = 7,10(xx4),15(x2),20(x3),30(x2); WFU mins = 5,5,15,20,25 |
| 25 | 3 | 0 | 0 | 9 | 3 | 40 | 1:1 mins = 5,10(x5),15(x3),20(x6),25,30(x5),40(x2); Seg mins = 5,5 |
| 30 | 2 | 24 | 3 | 8 | 10 | 77 | Movement = Phx-Eyman-Phx; 1:1 mins = 10(x2),15,20(x7),25,30(x5),40,45(x2),60; Daily mins = 5(x3); WFU mins = 20,25,40 |
| 18 | 10 | 0 | 0 | 8 | 2 | 38 | 1:1 mins = 10(x3),15(x5),20(x5),25,30(x3); Seg mins = 5,10(x4),20 |
| 1 | 10 | 14 | 6 | 1 | 1 | 33 | Released 1/10/19; Movement = Eyman-Phx; Seg mins = 5(x4); Daily mins = 5,10,15; WFU mins = 5,25 |
| 25 | 8 | 9 | 6 | 11 | 6 | 65 | Movement = Tucson-Phx; 1:1 mins = 5(x2),10(x3),15,20(x2),25,30(x9); Seg mins = 5,20; Daily mins = 15; WFU mins = 15,20,20 |
| 4 | 8 | 19 | 3 | 2 | 9 | 45 | Arrived 11/20/18; Movement = Phx-Tucson-Eyman; Daily mins = 5,15,10,10,20 |
| 2 | 19 | 12 | 4 | 2 | 1 | 40 | Out To Court since 3/29/19; 1:1 mins = 5; Seg mins = 5(x3),10(x4); WFU mins = 10 |
| 11 | 17 | 0 | 0 | 9 | 0 | 37 | 1:1 mins = 5,8,10(x5),15,15,20,20; Seg mins = 5,5,15 |
| 9 | 18 | 14 | 1 | 8 | 5 | 55 | 1:1 mins = 5,10,30(x5),35,45; Seg mins = 5,5,5,10,10,15,15; Daily mins = 5(x4); WFU mins = 5 |
| 29 | 8 | 3 | 1 | 10 | 2 | 53 | 1:1 mins = 5,10(x2),15(x3),20(x4),25(x3),30(x11); Seg mins = 5,5,20; Daily mins = 20; WFU mins = 5 |
| 13 | 4 | 29 | 7 | 7 | 9 | 69 | Movement = Phx-Florence; 1:1 mins = 5,10,30,40,45,60,60,100; Seg mins = 5, Daily mins = 5(x10),15,15,20,20,25,30; WFU mins = 5,20,20,40,60 |
| 16 | 6 | 1 | 2 | 7 | 0 | 32 | 1:1 mins = 10(x4),15(x3),20(x3),30(x4),40; Seg mins = 5, WFU mins = 10,20 |
| 16 | 2 | 46 | 12 | 4 | 4 | 84 | Movement = Phx-Tuson; 1:1 mins = 30; Daily mins = 5,10,10,15; WFU mins = 20 |
| 1 | 0 | 32 | 5 | 2 | 2 | 42 | Movement = Phx-Tucson-Eyman; Release 2/15/19; Daily mins = 5(x4),15 |
| | | | | | **Grand Total** | **1124** | |