1    Kathleen E. Brody (Bar No. 026331)
     Molly Brizgys (Bar No. 029216)
2    **ACLU FOUNDATION OF ARIZONA**
     3707 North 7th Street, Suite 235
3    Phoenix, Arizona 85013
     Telephone:  (602) 650-1854
4    Email: kbrody@acluaz.org
     Email: mbrizgys@acluaz.org
5
     *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
6    *Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
     *Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
7    *Desiree Licci, Joseph Hefner, Joshua Polson, and*
     *Charlotte Wells, on behalf of themselves and all others*
8    *similarly situated*
     **[ADDITIONAL COUNSEL LISTED ON**
9    **SIGNATURE PAGE]**

10   Asim Dietrich (Bar No. 027927)
     **ARIZONA CENTER FOR DISABILITY LAW**
11   5025 East Washington Street, Suite 202
     Phoenix, Arizona 85034
12   Telephone:  (602) 274-6287
     Email: adietrich@azdisabilitylaw.org
13
     *Attorneys for Plaintiff Arizona Center for Disability Law*
14   **[ADDITIONAL COUNSEL LISTED ON**
     **SIGNATURE PAGE]**
15

16                  UNITED STATES DISTRICT COURT

17                       DISTRICT OF ARIZONA

18   Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-ROS
     Dustin Brislan; Sonia Rodriguez; Christina
19   Verduzco; Jackie Thomas; Jeremy Smith; Robert
     Gamez; Maryanne Chisholm; Desiree Licci; Joseph     **MOTION TO COMPEL**
20   Hefner; Joshua Polson; and Charlotte Wells, on      **COMPLIANCE WITH THE**
     behalf of themselves and all others similarly       **COURT'S ORDER**
21   situated; and Arizona Center for Disability Law,    **(DOC. 2898) AND FOR**
                                                         **ORDER TO SHOW CAUSE**
22                Plaintiffs,
            v.
23
     Charles Ryan, Director, Arizona Department of
24   Corrections; and Richard Pratt, Division Director,
     Division of Health Services, Arizona Department of
25   Corrections, in their official capacities,

26                Defendants.

27

28

**INTRODUCTION**

On June 22, 2018, when this Court found Defendants in civil contempt of court, it also ordered that "Defendants shall continue to file monthly reports reflecting every instance of noncompliance for PMs at facilities under the October 10, 2017 Order to Show Cause [Doc. 2373 at 3-4] that are at less than 85% compliance." Doc. 2898 at 24.  Despite this clear order, the most recent month for which Defendants filed a report is February 2018. [*See* Doc. 2786-2]  Defendants have flouted their obligation to obey the Court's contempt order for more than a year, during their unsuccessful attempts to obtain a stay, (Docs. 3057, 3276), ignoring the clear law that merely filing a motion for a stay does not stay the order.

> We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, ***but, absent a stay, . . . must comply promptly with the order pending appeal.*** Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.")

*Maness v. Meyers*, 419 U.S. 449, 458 (1975) (emphasis added); *see also Barnd v. City of Tacoma*, 664 F.2d 1339, 1342 (9th Cir. 1982) ("Counsel must obey even erroneous orders").

Given Defendants' brazen disregard for and refusal to obey this Court's and the Ninth Circuit's clear orders, Plaintiffs move the Court for an order directing Defendants (1) to provide all responsive information from March 2018 to the present audited month no later than August 19, 2019, and (2) to show cause on August 19, 2019, why they should not be found in civil contempt of court and assessed a daily fine of $10,000 for each day after August 19, 2019 that they do not provide this information.  The Court also should order Defendants to provide this information on a monthly basis until further order.

//

//

//

**PROCEDURAL BACKGROUND**

The Court's October 10, 2017 Order to Show Cause ("OSC") required Defendants to comply with 11 performance measures at different prison facilities.  Doc. 2373 at 3-4.[1] On June 22, 2018, the Court held Defendants in contempt and ordered them to file monthly reports on noncompliant performance measures.  Doc. 2898 at 24.  On July 2, 2018, Plaintiffs' counsel notified Defendants that they needed to file reports for March, April, May, and June 2018 as required by the Court.  Doc. 2993-1 at 3. Receiving no response, Plaintiffs' counsel reiterated this request on July 13, 2018.  Doc. 3000-1 at 29. On July 17, 2018, Defendants' Counsel responded, stating that despite the plain language of the Court's order, it "does not specifically require that data for March-June 2018 be filed" but "in the spirit of good faith" they were "working with Corizon to gather and produce the data and to establish procedures for continued production going forward. Doc. 2993-1 at 5.  One week later, on July 24, 2018, Plaintiffs' counsel requested for the third time that Defendants comply, *id*. at 7-8, to which Defendants' attorneys responded on August 1, 2018, asserting that "the Court's use of the word 'continue' in the June 22, 2018 order is ambiguous," but that they "were working with Corizon to gather and produce the data for March-June 2018 and to establish procedures for continued production going forward."  Doc. 2993-1 at 11. They asserted that since the contempt order did not give them a specific deadline for the continued production of monthly data, they were not in violation of the order.  *Id*.

On August 9, 2018, seven weeks after the Court's order, Defendants moved the Court for a stay.  [Doc. 2971].  On November 7, 2018, Plaintiffs' counsel again notified Defendants' attorneys that they were not in compliance with the Court's order, and requested Defendants provide the information for March 2018 through October 2018. [Doc. 3071-1 at 4-5]  This Court denied the stay motion on November 15, 2018.  [Doc. 3057]  Defendants' attorneys responded to Plaintiffs' counsel on December 5, 2018,

---

[1] At the November 2017 status hearing, the Court added PM 52 at Eyman. Doc. 2456 at 3.

1    asserting that since they planned to seek a stay with the Ninth Circuit, they did not have to

2    obey the order and provide the information.  [Doc. 3075-1 at 2]  They also asserted that

3    "there is no current Order to Show Cause to which such reports would apply," and that

4    "there is no utility in producing the reports," because in their view (which has been

5    rejected by this Court, and by the Ninth Circuit), they do not have to comply 100% with

6    the Stipulation, and "the reports are difficult to produce and prone to errors."  *Id.*

7         On December 11, 2018, Defendants requested that the Ninth Circuit stay the June

8    22 order.  *See* 9th Cir. Appeal No. 18-16358, Dkt. 15-1. On June 3, 2019, the Court of

9    Appeals granted the stay motion with regard to the judgment of contempt, but specifically

10   noted that "[w]e do not stay the district court's order of contempt requiring monthly

11   reporting."  Doc. 3276 at 2.  Despite this clear order from the Ninth Circuit, Defendants

12   have made no effort to provide this information to the Court.

13                          **DEFENDANTS' ONGOING NONCOMPLIANCE**

14        Defendants' audits show noncompliance below the 85% threshold for judicial

15   involvement for the following PMs / prisons in the October 2017 OSC, and accordingly,

16   Defendants should have provided the Court with the required information for the

17   applicable months of all instances of noncompliance with the measure at the facility:

18        **PM  11** ("Newly prescribed provider-ordered formulary medications will be

19   provided to the inmate within 2 business days after prescribed, or on the same day, if

20   prescribed STAT") at Eyman and Lewis. [Doc. 2373 at 3][2]  Defendants' reports to the

21   Court (Doc. 3262-1 at 6, Doc. 3292-1 at 6) show that since March 2018, they have been

22   below 85% for PM 11 for five months at Eyman:

23             • October 2018 – 80%

24             • January 2019 – 84%

25             • February 2019 – 84%

26             • March 2019 – 68%

27   _____

28   [2] This Court has ordered Defendants to come into compliance with PM 11 at
     Eyman no later than July 1, 2019.  Doc. 3235 at 6.

-3-

- April 2019 – 78%

**PM 35** ("All inmate medications (KOP and DOT) will be transferred with and provided to the inmate or otherwise provided at the receiving prison without interruption") at Eyman, Florence, Lewis, and Tucson.  [Doc. 2373 at 3][3]  Defendants' reports to the Court (Doc. 3262-1 at 72, Doc. 3292-1 at 73) show that since March 2018, they have been below 85% for PM 35 for eight months at Eyman:

- April 2018 – 72%
- May 2018 – 84%
- June 2018 – 72%
- December 2018 – 82%
- January 2019 – 78%
- February 2019 – 60%
- March 2019 – 57%
- April 2019 – 72%

Defendants' reports to the Court (Doc. 3262-1 at 87, Doc. 3292-1 at 89) show that since March 2018, they have been below 85% for PM 35 for nine months at Lewis:

- April 2018 – 82%
- May 2018 – 76%
- August 2018 – 73%
- September 2018 – 77%
- November 2018 – 71%
- December 2018 – 73%
- January 2019 – 78%
- March 2019 – 76%
- April 2019 – 79%

**PM 39** ("Routine provider referrals will be addressed by a Medical Provider and

---

[3] This Court has ordered Defendants to come into compliance with PM 35 at Eyman and Lewis no later than July 1, 2019. Doc. 3235 at 6.

referrals requiring a scheduled provider appointment will be seen within fourteen calendar days of the referral") at Lewis.   [Doc. 2373 at 3][4]   Defendants' reports to the Court (Doc. 3262-1 at 114, Doc. 3292-1 at 119) shows that since March 2018, they have been below 85% for PM 39 for eleven months at Lewis:

- March 2018 – 82%
- April 2018 – 81%
- June 2018 – 74%
- July 2018 – 70%
- September 2018 – 73%
- October 2018 – 77%
- November 2018 – 53%
- December 2018 – 80%
- January 2019 – 70%
- February 2019 – 0%
- April 2019 – 83%

**PM 44** ("Inmates returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital shall have the hospital's treatment recommendations reviewed and acted upon by a medical provider within 24 hours.") at Eyman.  [Doc. 2373 at 3][5]  Defendants' reports to the Court (Doc. 3262-1 at 151, Doc. 3292-1 at 158) shows that since March 2018, they have been below 85% for PM 44 for 14 months at Eyman:

- March 2018 – 40%
- April 2018 – 23%
- May 2018 – 35%
- June 2018 – 31%

---

[4] This Court has ordered Defendants to come into compliance with PM 39 at Lewis no later than July 1, 2019.  Doc. 3235 at 6.
[5] This Court has ordered Defendants to come into compliance with PM 44 at Eyman no later than July 1, 2019.  Doc. 3235 at 6-7.

1

2

3

4

5

6

7

8

9

10

- July 2018 – 17%

- August 2018 – 46%

- September 2018 – 25%

- October 2018 – 33%

- November 2018 – 44%

- December 2018 – 0%

- January 2019 – 44%

- February 2019 – 40%

- March 2019 – 50%

- April 2019 – 50%

**PM 46** ("A Medical Provider will review the diagnostic report, including pathology reports, and act upon reports with abnormal values within five calendar days of receiving the report at the prison") at Eyman, Florence, Perryville, and Tucson.  [Doc. 2373 at 3]  Defendants' reports to the Court (Doc. 3262-1 at 174, Doc. 3292-1 at 183) show that since March 2018, they have been below 85% for PM 46 for one month at Eyman:

- September 2018 – 84%

Defendants' reports to the Court (Doc. 3262-1 at 177, Doc. 3292-1 at 186) show that since March 2018, they have been below 85% for PM 46 for one month at Florence:

- September 2018 – 81%

**PM 47** ("A Medical Provider will communicate the results of the diagnostic study to the inmate upon request and within seven calendar days of the date of the request") at Eyman, Florence, Lewis, Phoenix, Perryville, and Tucson.  [Doc. 2373 at 3][6]  Defendants' reports to the Court (Doc. 3262-1 at 190, Doc. 3292-1 at 199) show that since March 2018, they have been below 85% for PM 47 for 13 months at Eyman:

- March 2018 – 76%

--------

[6] This Court has ordered Defendants to come into compliance with PM 47 at Eyman and Lewis no later than July 1, 2019. Doc. 3235 at 7.

- April 2018 – 76%
- May 2018 – 59%
- June 2018 – 68%
- July 2018 – 52%
- August 2018 – 80%
- October 2018 – 75%
- November 2018 – 77%
- December 2018 – 76%
- January 2019 – 47%
- February 2019 – 41%
- March 2019 – 31%
- April 2019 – 59%

Defendants' reports to the Court (Doc. 3262-1 at 197, Doc. 3292-1 at 206) show that since March 2018, they have been below 85% for PM 47 for one month at Florence:

- March 2018 – 82%

Defendants' reports to the Court (Doc. 3262-1 at 199, Doc. 3292-1 at 208) show that since March 2018, they have been below 85% for PM 47 for 14 months at Lewis:

- March 2018 – 23%
- April 2018 – 68%
- May 2018 – 40%
- June 2018 – 17%
- July 2018 – 27%
- August 2018 – 7%
- September 2018 – 36%
- October 2018 – 44%
- November 2018 – 29%
- December 2018 – 13%
- January 2019 – 15%

- February 2019 – 0%
- March 2019 – 63%
- April 2019 – 56%

Defendants' reports to the Court (Doc. 3262-1 at 207, Doc. 3292-1 at 216) show that since March 2018, they have been below 85% for PM 47 for three months at Phoenix:

- April 2018 – 67%
- October 2018 – 67%
- November 2018 – 75%

Defendants' reports to the Court (Doc. 3262-1 at 211, Doc. 3292-1 at 220) show that since March 2018, they have been below 85% for PM 47 for three months at Tucson:

- August 2018 – 83%
- September 2018 – 61%
- October 2018 – 77%

**PM 50** ("Urgent specialty consultations and urgent specialty diagnostic services will be scheduled and completed within 30 calendar days of the consultation being requested by the provider") at Florence.  [Doc. 2373 at 3][7]  Defendants' reports to the Court (Doc. 3262-1 at 236, Doc. 3292-1 at 246) show that since March 2018, they have been below 85% for PM 50 for ten months at Florence:

- May 2018 – 73%
- June 2018 – 54%
- July 2018 – 49%
- August 2018 – 61%
- September 2018 – 76%
- October 2018 – 71%
- November 2018 – 81%
- January 2019 – 53%

---

[7] This Court has ordered Defendants to come into compliance with PM 50 at Florence no later than July 1, 2019.  Doc. 3235 at 7.

- February 2019 – 43%
- April 2019 – 79%

**PM 51** ("Routine specialty consultations will be scheduled and completed within 60 calendar days of the consultation being requested by the provider") at Eyman, Florence, and Tucson.  [Doc. 2373 at 3][8]  Defendants' reports to the Court (Doc. 3262-1 at 246, Doc. 3292-1 at 257) show that since March 2018, they have been below 85% for PM 51 for ten months at Eyman:

- April 2018 – 78%
- May 2018 – 68%
- July 2018 – 74%
- August 2018 – 74%
- September 2018 – 78%
- December 2018 – 72%
- January 2019 – 50%
- February 2019 – 45%
- March 2019 – 50%
- April 2019 – 50%

Defendants' reports to the Court (Doc. 3262-1 at 251, Doc. 3292-1 at 263) show that since March 2018, they have been below 85% for PM 51 for seven months at Florence:

- June 2018 – 79%
- August 2018 – 76%
- September 2018 – 73%
- January 2019 – 76%
- February 2019 – 69%
- March 2019 – 72%

---

[8] This Court has ordered Defendants to come into compliance with PM 51 at Eyman, Florence, and Tucson no later than July 1, 2019. Doc. 3235 at 7.

- April 2019 – 69%

Defendants' reports to the Court (Doc. 3262-1 at 256, Doc. 3292-1 at 268) show that since March 2018, they have been below 85% for PM 51 for four months at Tucson:

- August 2018 – 84%
- September 2018 – 80%
- January 2019 – 81%
- February 2019 – 69%

**PM 52** ("Specialty consultation reports will be reviewed and acted on by a Provider within seven calendar days of receiving the report") at Eyman and Florence. [Doc. 2373 at 3; Doc. 2456 at 3][9]  Defendants' reports to the Court (Doc. 3262-1 at 261, Doc. 3292-1 at 273) show that since March 2018, they have been below 85% for PM 52 for 12 months at Eyman:

- March 2018 – 84%
- April 2018 – 61%
- May 2018 – 73%
- June 2018 – 66%
- July 2018 – 83%
- August 2018 – 73%
- September 2018 – 72%
- October 2018 – 74%
- November 2018 – 62%
- December 2018 – 72%
- January 2019 – 71%
- February 2019 – 68%

Defendants' reports to the Court (Doc. 3262-1 at 268, Doc. 3292-1 at 280) show that since March 2018, they have been below 85% for PM 52 for 12 months at Florence:

---

[9] This Court has ordered Defendants to come into compliance with PM 52 at Eyman and Florence no later than July 1, 2019. Doc. 3235 at 7.

1      • March 2018 – 73%

2      • April 2018 – 60%

3      • May 2018 – 58%

4      • June 2018 – 72%

5      • July 2018 – 78%

6      • August 2018 – 40%

7      • September 2018 – 25%

8      • October 2018 – 48%

9      • November 2018 – 54%

10     • December 2018 – 36%

11     • January 2019 – 59%

12     • February 2019 – 71%

13         **PM 54** ("Chronic disease inmates will be seen by the provider as specified in the

14     inmate's treatment plan, no less than every 180 days unless the provider documents a

15     reason why a longer time frame can be in place") at Eyman. [Doc. 2373 at 4]  Defendants'

16     reports to the Court (Doc. 3262-1 at 282, Doc. 3292-1 at 294) show that since March

17     2018, they have been below 85% for PM 54 for two months at Eyman:

18         • May 2018 – 78%

19         • June 2018 – 80%

20         **PM 66** ("In an IPC, a Medical Provider encounters will occur at a minimum every

21     72 hours") at Florence, Lewis, and Tucson.  [Doc. 2373 at 4][10]  Defendants' reports to the

22     Court (Doc. 3262-1 at 299, Doc. 3292-1 at 311) show that since March 2018, they have

23     been below 85% for PM 66 for 12 months at Florence:

24         • March 2018 – 80%

25         • April 2018 – 50%

26         • July 2018 – 80%

27     _____

28         [10] This Court has ordered Defendants to come into compliance with PM 66 at
       Florence and Tucson no later than July 1, 2019. Doc. 3235 at 7.

1        • August 2018 – 40%

2        • September 2018 – 10%

3        • October 2018 – 20%

4        • November 2018 – 30%

5        • December 2018 – 0%

6        • January 2019 – 40%

7        • February 2019 – 70%

8        • March 2019 – 50%

9        • April 2019 – 70%

10       Defendants' reports to the Court (Doc. 3262-1 at 305, Doc. 3292-1 at 317) show

11   that since March 2018, they have been below 85% for PM 66 for two months at Lewis:

12       • July 2018 – 20%

13       • October 2018 – 67%

14       Defendants' reports to the Court (Doc. 3262-1 at 307, Doc. 3292-1 at 319) show

15   that since March 2018, they have been below 85% for PM 66 for 11 months at Tucson:

16       • March 2018 – 50%

17       • May 2018 – 80%

18       • June 2018 – 80%

19       • July 2018 – 70%

20       • August 2018 – 60%

21       • September 2018 – 80%

22       • October 2018 – 20%

23       • November 2018 – 50%

24       • December 2018 – 50%

25       • January 2019 – 70%

26       • February 2019 – 60%

27   //

28   //

**ARGUMENT**

**I.     Legal and Procedural Requirements for Civil Contempt**

This Court has the power to enforce compliance with its orders through civil contempt proceedings.  18 U.S.C. § 401(3); *Spallone v. United States*, 493 U.S. 265, 276 (1990) ("[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt") (quotation marks omitted); *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992) (district court has "wide latitude" to determine if a party defied an order and is in contempt) (citations omitted).

Prior to holding a party in civil contempt, a court must find by clear and convincing evidence that:

(1)     a valid court order exists that is "specific and definite" (*Balla v. Idaho State Bd. of Corrs.*, 869 F.2d 461, 465 (9th Cir. 1989));

(2)     the party had knowledge of the order, and notice of and an opportunity to be heard about the alleged noncompliance (*Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) ("*Bagwell*"); *United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999)); and

(3)     the party failed to take "all reasonable steps to comply with the order." *Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016) (emphasis in original).

The contempt "need not be willful, and there is no good faith exception to the requirement of obedience to a court order."  *In Re Dual-Deck Video Cassette Recorder Antitrust Litig. v. Motion Picture Ass'n of Am.*, 10 F.3d 693, 695 (9th Cir. 1993) (internal quotation marks and citation omitted).  Should a party seek to defend against a contempt finding by arguing inability to comply, it must show "categorically and in detail" why it is unable to comply.  *N.L.R.B. v. Trans Ocean Export Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973).  Moreover, impossibility is not a valid defense if the party is "responsible for the inability to comply."  *United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980) (quotation marks and citation omitted); s*ee also F.T.C. v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999) (suggesting that impossibility is not a defense if the

1  inability to comply is self-induced).

2       Once a defendant has been found in civil contempt, a court has "broad equitable

3  power to order appropriate relief in civil contempt proceedings." *S.E.C. v. Hickey*, 322

4  F.3d 1123, 1128 (9th Cir. 2003).  When considering a sanction to make a defendant

5  comply with a court order, the court should consider "the character and magnitude of the

6  harm threatened by continued contumacy, and the probable effectiveness of any suggested

7  sanction in bringing about the result desired." *United States v. United Mine Workers of*

8  *Am.*, 330 U.S. 258, 304 (1947) ("*United Mine Workers*").

9       The relief granted in civil contempt proceedings can be either coercive or

10  compensatory. *Id.*, 330 U.S. at 303-04; *Hook v. State of Ariz.*, 907 F. Supp. 1326, 1340

11  (D. Ariz. 1995).  The Court has the authority to issue monetary sanctions if it determines

12  that such sanctions are necessary to coerce compliance by Defendants or to compensate

13  Plaintiffs for their losses and injuries.  *Shell Offshore Inc. v. Greenpeace, Inc*., 815 F.3d

14  623, 629 (9th Cir. 2016) ("A court may wield its civil contempt powers for two separate

15  and independent purposes: (1) 'to coerce the defendant into compliance with the court's

16  order'; and (2) 'to compensate the complainant for losses sustained.'") (quoting *United*

17  *Mine Workers*, 330 U.S. at 303-04); *see also Bagwell*, 512 U.S. at 829 (explaining that

18  one of the paradigmatic civil contempt sanctions "is a per diem fine imposed for each day

19  a contemnor fails to comply with an affirmative court order . . . such fines exert a constant

20  coercive pressure, and once the jural command is obeyed, the future, indefinite, daily fines

21  are purged").

22  **II.  Defendants Have Committed Civil Contempt By Knowingly and Willfully**
   **Disobeying This Court's June 22, 2018 Order To File Monthly Reports**
23  **Detailing Noncompliance With Certain Performance Measures**

24      **A.  The Court's Order is Specific and Definite**

25       The Court's order requiring ongoing monthly production of data is a clear, simple,

26  and unequivocal declarative sentence:  "Defendants shall continue to file monthly reports

27  reflecting every instance of noncompliance for PMs at facilities under the October 10,

28  2017 Order to Show Cause that are at less than 85% compliance." Doc. 2898 at 24; *see*

-14-

*Withrow v. Concannon*, 942 F.2d 1385, 1387 (9th Cir. 1991) (holding that language stating "that a decision 'shall' or 'must' be made within the specified number of days" is "unequivocal").[11]   Defendants' excuse that they found the meaning of the word "continue" in the order to be "ambiguous" is unavailing, (Doc. 2993-1 at 11), as the proper response to their self-induced confusion would have been to seek clarification from the district court regarding the meaning of the word and the order, rather than to disobey the order.  In *Chapman v. Pacific Tel. & Tel. Co*., 613 F.2d 193, 194 (9th Cir. 1979), the Ninth Circuit affirmed a lower court's contempt order against an attorney for willfully refusing to comply with a clear and definite order that she insisted was confusing and unconstitutional, finding counsel's confusion to be "self-induced and self-perpetuated."

**B.    Defendants Had Knowledge of the Court's Order to Continue to Produce Monthly Data to the Court and Have Not Taken Any Steps to Comply With It**

Defendants cannot plausibly argue they were unaware of the Court's order to continue to produce monthly information regarding all instances of noncompliance when a particular measure / prison fell below the 85% threshold for judicial involvement, as their counsel repeatedly acknowledged the existence of the order when offering their excuses for disobeying it.  [See Doc. 2993-1 at 5, 11; Doc. 3075-1 at 2]  The Court also should reject Defendants' stubborn refusal to comply with the order because "there is no utility in producing the reports," and "the reports are difficult to produce and prone to errors." [Doc. 3075-1 at 2]  Obviously since the Court ordered Defendants to continue to file these monthly reports, it found utility in the past reports despite any errors.   A determination regarding the usefulness of the information is the Court's to make, and Defendants cannot unilaterally take it upon themselves to choose to flout the Court's order.  *Maness*, 419 U.S. at 449; *Chapman*, 613 F.2d at 197.  Despite their promises to Plaintiffs that they were "working with Corizon" to gather the information, they have *never* provided it to the Court. Doc. 2993-1 at 5, 11.

---

[11] Likewise, the Ninth Circuit's order is pellucidly clear: "We do not stay the district court's order of contempt requiring monthly reporting." Doc. 3276 at 2.

1     Finally, Defendants asserted that they did not have to obey the Court's order

2     because they do not have to comply with the Stipulation 100% of the time.  [Doc. 3075-1

3     at 2]  Defendants' belabored and oft-rejected argument is unsupported by the Stipulation's

4     language and the law, and has been rejected by both this Court and the Ninth Circuit. *See*

5     *Parsons v. Ryan*, 912 F.3d 486, 500 (9th Cir. 2018) (finding that the 85% threshold rate

6     "constitutes compliance ***for purposes of avoiding judicial involvement***") (emphasis

7     added); Doc. 2898 at 18 ("As this Court has repeatedly stated, the Stipulation's 85%

8     threshold ***is simply a triggering point for the Court's intervention***") (emphasis added).

9     To allow Defendants to comply only 85% of the time with the Stipulation would be an

10    "inequitable and disconcerting principle" and enable them "to treat a few . . . class

11    members in any fashion they wanted so long as they comply with the [Stipulation] with

12    regard to a substantial number of other . . . class members." *Halderman ex rel. Halderman*

13    *v. Pennhurst State Sch. & Hosp*., 901 F.2d 311, 324 (3d Cir. 1990); *see also Withrow v.*

14    *Concannon*, 942 F.2d 1385, 1388 (9th Cir. 1991) ("Impossibility of perfect compliance . .

15    . does not preclude an injunction requiring compliance with the regulations when a pattern

16    of non-compliance has been shown to have existed."); *Health Care for All, Inc. v.*

17    *Romney*, No. Civ. 00-10833, 2005 WL 1660677, at *8 (D. Mass. July 14, 2005) ("While

18    absolutely perfect compliance . . . may not be feasible, this fact does not excuse them from

19    striving to comply as much as possible.")  Defendants' position would read into the

20    Stipulation a nonexistent provision allowing them to not provide medical, dental, or

21    mental health care to 15% of the 34,000 class members (about 5,100 people), or 15% of

22    the time.  Similarly, they cannot argue with a straight face that they only need to comply

23    with 85% of this Court's orders.

24    More fundamentally, Defendants entirely fail to explain why their subjective belief

25    that they are only required to comply with the Stipulation's requirements 85% of the time

26    excuses their refusal to comply with a lawful court order to report their noncompliance for

27    performance measures that are below 85% compliance.  *See Maness, supra.*

28    //

1    **III.    A Finding of Civil Contempt Is Appropriate Here**

2            Plaintiffs respectfully request that this Court order Defendants to provide the

3    information regarding all instances of noncompliance for the PMs / prisons listed at pp. 3-

4    12, *supra*, for the months from March 2018 to the present, no later than August 19, 2019,

5    and order Defendants to continue to file the data for each month no later than the 20th day

6    of each month thereafter.  This information regarding the individual class members who

7    were affected by noncompliance, including "the quality of health care provided to

8    individual prisoners is necessarily relevant to determine whether there is a 'practice of

9    substantially departing from the standard of care'" and to the analysis by the Court's

10   expert Dr. Stern "of care provided to particular prisoners in order to draw global

11   conclusions about health care delivery."  Doc. 3127 at 1-2 (quoting Stipulation, Doc. 1185

12   ¶ 8). Plaintiffs also request that this Court order Defendants to show cause on August 19,

13   2019, why they should not be held in civil contempt of court and fined $10,000 for each

14   day after August 19, 2019 that they do not provide the information regarding all instances

15   of noncompliance from March 2018 to the present.  A proposed order is attached.

16                                 Respectfully submitted,

17   Dated:  July 1, 2019                 **PRISON LAW OFFICE**

18                                 By:   s/ Corene T. Kendrick

19                                    Donald Specter (Cal. 83925)*
                                     Alison Hardy (Cal. 135966)*
20                                    Sara Norman (Cal. 189536)*
                                     Corene T. Kendrick (Cal. 226642)*
21                                    Rita K. Lomio (Cal. 254501)*
                                     **PRISON LAW OFFICE**
22                                    1917 Fifth Street
                                     Berkeley, California 94710
23                                    Telephone:  (510) 280-2621
                                     Email:    dspecter@prisonlaw.com
24                                              ahardy@prisonlaw.com
                                              snorman@prisonlaw.com
25                                              ckendrick@prisonlaw.com
                                              rlomio@prisonlaw.com
26                                    *Admitted *pro hac vice*

27

28

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Ryan Kendall (Cal. 324714)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@aclu.org
           afettig@aclu.org
           rkendall@aclu.org

*Admitted *pro hac vice*. Not admitted in DC;
 practice limited to federal courts.
**Admitted *pro hac vice*

Kathleen E. Brody (Bar No. 026331)
Molly Brizgys (Bar No. 029216)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:     kbrody@acluaz.org
           mbrizgys@acluaz.org

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:     dbarr@perkinscoie.com
           agerlicher@perkinscoie.com
           jhgray@perkinscoie.com

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

1

2

**ARIZONA CENTER FOR DISABILITY LAW**

3
By:   s/ Maya Abela

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)

4
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY**

5
**LAW**

177 North Church Avenue, Suite 800

6
Tucson, Arizona 85701
Telephone:  (520) 327-9547

7
Email:    rdalyrooney@azdisabilitylaw.org
jrico@azdisabilitylaw.org

8
mabela@azdisabilitylaw.org

9
Asim Dietrich (Bar No. 027927)
5025 East Washington St., Ste. 202

10
Phoenix, Arizona 85034
Telephone: (602) 274-6287

11
Email:    adietrich@azdisabilitylaw.com

12
*Attorneys for Arizona Center for Disability Law*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2019, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
Richard M. Valenti
Jamie D. Guzman
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com

*Attorneys for Defendants*

s/ C. Kendrick