Office of the Arizona Attorney General
Michael E. Gottfried, Bar No. 010623
Assistant Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004-1592
Telephone: (602) 542-1645
Fax: (602) 542-3393
Michael.Gottfried@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-ROS<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH THE COURT'S ORDER (DKT. 2898) AND FOR ORDER TO SHOW CAUSE** |

Plaintiffs' attempt to convince the Court to hold Defendants in civil contempt for not filing "real time" data for March 2018-present fails.  Their Motion does not establish, by clear and convincing evidence, that Defendants' interpretation of and decision on how to proceed regarding the Court's June 22, 2018 Order rises to the level of civil contempt and subjects them to the arbitrary "$10,000 per instance" fine Plaintiffs demand.

Defendants are not in civil contempt because: (1) the Court's June 22, 2018 Order is not specific and definite; (2) despite the Order's ambiguity, Defendants took all reasonable steps to comply with the Order;(3) it is not reasonably possible for Defendants to comply with the Order; and (4) the Order violates the Stipulation. Plaintiffs' Motion should be denied.

**I.     FACTUAL BACKGROUND**

On October 10, 2017, the Court ordered Defendants to comply with eleven Performance Measures ("PMs") at specific facilities (11 (Eyman, Lewis); 35 (Eyman, Florence, Lewis, Tucson); 39 (Lewis); 44 (Eyman); 46 (Eyman, Florence, Perryville, Tucson); 47 (Eyman, Florence, Lewis, Phoenix, Perryville, Tucson); 50 (Florence); 51 (Eyman, Florence, Tucson); 52 (Florence); 54 (Eyman); and 66 (Florence, Lewis, Tucson)) and to "file a list of every instance of non-compliance with [these measures] during December 2017." (Dkt. 2373 at 4.) This list is referred to as "real time" data.

On October 25, 2017, in response to this Order, Defendants sent correspondence to Corizon demanding it provide "real time" data as ordered by the Court. *See* Exhibit 1 (Declaration of J. Lee) at ¶2. On November 6, 2017, Corizon responded and noted its current tracking system was not suitable to provide "real time" data. (*Id*. at ¶3.) On November 8, 2017, Defendants reiterated to Corizon that it was obligated to effectively and accurately provide Defendants with "real time" data. (*Id*. at ¶4.) Corizon compiled data for December 2017, and Defendants filed it with the Court on February 5, 2018. (Dkt. 2576.)[1] In response to subsequent Court Orders requiring production of January and February 2018 data (Dkts. 2456, 2679), Corizon compiled January and February 2018 data, and Defendants filed it with the Court. (Dkts. 2468, 2662, 2786, 2812.) The Court did not issue any subsequent order which required Defendants to provide "real time" data for March-June 2018. Despite there being no requirement from the Court, Defendants continued their efforts to obtain the data from Corizon.

---

[1] On February 14, 2018, Defendants supplemented their filing to include additional data. (Dkt. 2595.)

2

On March 22, 2018, after Corizon advised of the serious difficulties it faced in compiling the data, Defendants sent correspondence to Corizon acknowledging the difficulty, but reiterating that the "real time" reporting was an expected deliverable from Corizon. (*Id*. at ¶5.)   On April 16, 2018, Corizon responded and advised that true "real time" reporting was not possible.   (*Id*. at ¶6.)

On June 22, 2018, the Court ordered that "Defendants shall continue to file monthly reports reflecting every instance of noncompliance for PMs at facilities under the October 10, 2017 Order to Show Cause that are at less than 85% compliance." (Dkt. 2898 at 24.) On July 10, 2018, Defense counsel sent correspondence to Corizon advising of the Court's June 22, 2018 Order and of Corizon's obligation to continue to file "real time" data. (*Id*. at ¶7.)   On July 11, 2018, Defense counsel again reiterated that Corizon must comply with the Court's order to produce "real time" data.   (*Id*. at ¶8.)   Corizon did not provide any additional "real time" data. (*Id*. at ¶9.)   The only real time data Defendants received from Corizon was for December 2017-February 2018.   (*Id*. at ¶10.)

In their Motion, Plaintiffs claim the Court's June 22, 2018 Order required Defendants to produce "real time" data from March 2018-present.  Because Defendants did not provide data for this time period, Plaintiffs urge the Court to find them in civil contempt and issue fines of "$10,000 for each day after August 19, 2019 that they do not provide the information regarding all instances of noncompliance from March 2018 to the present." (Dkt. 3301 at 18.)  For the reasons detailed below, Plaintiffs' Motion should be denied.

**II.   THE COURT SHOULD NOT HOLD DEFENDANTS IN CIVIL CONTEMPT.**

    **A.   The Contempt Order is Not Specific or Definite.**

"Civil contempt is appropriate only when a party fails to comply with a court order that is both specific and definite." *Balla v. Idaho State Bd. of Corr*., 869 F.2d 461, 465 (9th Cir. 1989).  The Court's June 22, 2018 Order states "Defendants shall continue to file monthly reports reflecting every instance of noncompliance for PMs at facilities under the

3

October 10, 2017 Order to Show Cause that are at less than 85% compliance." (Dkt. 2898 at 24.) This is neither specific nor definite. First, the word "continue" is ambiguous. As of June 22, 2018 (the date of the Order), there was no order requiring Defendants to file "real time" data. The last order requiring production of "real time" data was March 12, 2018 (three months earlier) for February 2018 data (four months earlier). Therefore, there were no "monthly" reports for Defendants to "continue" to file. And, contrary to Plaintiffs' assertion, the June 22, 2018 Order did not order Defendants to retroactively report data from March-June 2018.

Even assuming the word "continue" referred to the December 2017-February 2018 "real time" data, it has several possible interpretations. It could mean: (1) that Defendants were required to file unidentified prior months' "real time" data in July 2018; (2) that Defendants were required to file "real time" data for June 2018 (or July 2018) forward; or (3) that Defendants were required to file "real time" data for every month from December 2017 forward. Based on the Order's language, it cannot be said which of these interpretations the Court intended to order, or if its intent was to order something entirely different. Finally, even assuming the Court intended to order Defendants to file "real time" data for December 2017-forward, it did not specify a date or deadline to do so. The June 22, 2018 Order is therefore ambiguous, and not specific and definite.[2] At a minimum, given the Order's ambiguity, Defendants substantially complied with it, which precludes a finding of civil contempt. *See Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986) (". . . substantial compliance with a court order is a defense to an action for civil contempt.") (internal citations omitted).

---

[2] In contrast, the Court's Orders requiring Defendants to file "real time" data for December 2017-February 2018 were specific and definite. In those orders, Defendants were specifically ordered to report the data for those months and were ordered to file such lists by a specific date. *See* Dkt. 2373 at 4 ("by Friday, January 5, 2018, Defendants shall file a list of every instance of non-compliance with this Order during December 2017"); Dkt. 2456 at 1 ("Plaintiffs request that the December 2017 and January 2018 data be included in the February report. . . . IT IS ORDERED the data shall be reported by no later than February 26, 2018."); Dkt. 2679 at 2 ("Defendants shall have up to and including April 13, 2018 to file their Notice Regarding February 2018 Compliance with Certain Performance Measures Pursuant to Order to Show Cause (Doc. 2373).").

4

Plaintiffs' arguments, and corresponding supporting authority, fail to establish otherwise. First, citing *Withrow v. Concannon*, 942 F.2d 1385, 1387 (9th Cir. 1991), Plaintiffs argue that language stating something "shall" or "must" occur within a specified number of days is "unequivocal." (*Id*. at 16.) But the *Withrow* court made no such finding. Rather, it concluded without analysis or explanation that the regulation's language at issue was unequivocal. It did not find it was unequivocal because it contained the terms "shall" or "must." Even if it did, such a finding holds no authoritative weight here, where the June 22, 2018 Order contained no such language. Indeed, in contrast, it did not set any deadline or date for Defendants to produce "real time" data.

Second, citing *Chapman v. Pac. Tel. & Tel. Co.*, 613 F.2d 193, 194 (9th Cir. 1979), Plaintiffs argue Defendants were required to seek clarification from the Court if they thought the language of the Court's June 22, 2018 Order was ambiguous. (Dkt. 3301 at 16.) *Chapman* does not support Plaintiffs' assertion. In *Chapman*, the court found an attorney's refusal to comply with its order to be "self-induced and self-perpetuated" not because she failed to seek clarification (as Plaintiffs suggest), but because the court's order was clear and definite, and because she continuously failed to comply with it despite inquiries from the court as to her progress. *Id*. at 194. Plaintiffs fail to explain how *Chapman* applies here. It does not.

The Court should disregard Plaintiffs' inapplicable authority. For the reasons detailed above, the June 22, 2018 Order is neither specific nor definite. On this basis alone, Plaintiffs' Motion should be denied.

**B. Defendants Took All Reasonable Steps to Comply With the Court's June 22, 2018 Order.**

"If a violating party has taken 'all reasonable steps' to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt." *See Gen. Signal Corp*, 787 F.2d at 1379 (internal citations omitted). Plaintiffs conclude that because Defendants did not provide "real time" data to the Court for March 2018 to the present, they have failed to take any steps to comply with the Court's Order.

5

(Dkt. 3301 at 16.) This is incorrect, as detailed in Section I above. Importantly, because Corizon controlled the documents, software, and staff required to collect and produce "real time" data, Defendants could not have complied with the Court's Order without Corizon's assistance. As such, and in an ongoing attempt to comply with the Court's Order, Defendants made repeated attempts to obtain the data from Corizon by sending correspondence reiterating Corizon's obligation to provide the data to Defendants and the Court—even during months where there was no order requiring data be produced. And Defendants kept Plaintiffs apprised of their continued, unsuccessful efforts to obtain the data from Corizon. Not surprisingly, Plaintiffs' Motion is silent as to what additional steps Defendants were required to take to comply with the Court's Order. Because Defendants took all reasonable steps, they cannot be held in civil contempt. Plaintiffs' Motion should be denied.

### C. Defendants' Compliance with the Reporting Requirement in the Contempt Order is Not Reasonably Possible.

Defendants' attempts to comply aside, "real time" reporting was not reasonably possible. "[I]nability to comply with a judicial decree constitutes a defense to a charge of civil contempt." *N.L.R.B. v. Trans Ocean Exp. Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973); *see also United States v. Rylander*, 460 U.S. 752, 757 (1983) ("Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action."). A party asserting an inability to comply "must show 'categorically and in detail' why he is unable to comply." *Id.*

Defendants' compliance with the PMs is tracked monthly by Defendants' Health Services Contract Monitoring Bureau ("HSCMB"). The Stipulation does not required the HSCMB to review every eligible inmate medical file for each Performance Measure every month. Rather, it requires only that the HSCMB audit randomly-selected files. (Dkt. 1185 at ¶ 9, Ex. C.) To monitor these randomly-selected files, HSCMB must conduct approximately 849 audits and reviews. *See* Exhibit 2 (Declaration of J. Finger) at ¶ 15. This limited audit takes the HSCMB, which consists of approximately 45 persons, nearly

6

a month to complete. *Id.* As explained above, in order to conduct a manual review to identify every instance of noncompliance (as the Court's June 22, 2018 Order requires), Defendants would have to review exponentially more inmate medical files. *See, e.g.*, Dkt. 2704-5 at 2 (measuring instances of noncompliance with only one PM required review of almost 4,500 individual medical files); Dkt. 2790-1 at 7 (to compile the December 2017 noncompliance lists, Defendants reviewed a total of 22,670 health care encounters); Dkt. 2786 (there were 15,832 eligible healthcare encounters reviewed for the February 2018 lists). Add to this, the June 22, 2018 Order requires Defendants to report the results of this extensive review with the same frequency they report the results of their limited audits. This is not reasonably possible.[3]

Additionally, providing "real time" data is not reasonable because "real time" data cannot be reported automatically. (Ex. 2 at ¶7.) Rather, in order to identify every instance of noncompliance, Defendants must conduct a ***manual review*** of each and every relevant inmate's medical file. *Id.*; *see also* Dkt. 2790-1 at 5–7 (explaining why manual review is necessary); Dkt. 2704-5 at 1 ("[c]ontinuous manual auditing and review of each and every healthcare encounter would be required to provide accurate 'real time' instances of noncompliance."); Dkt. 2790-1 at 5 ("without manually reviewing each and every eligible medical file for each [PM], there is no way to obtain 100% accuracy . . . ."). Further, manual review is extremely tedious and time consuming. To manually review a file, Defendants must locate and open the file in the electronic medical records system, review the file, and assess the file's compliance with the relevant PMs by utilizing the requisite monitoring methodology. (Ex. 2 ¶8); (Dkts. 2790-1 at 4, 2745-1 at 1.) Due to the large number of healthcare encounters and the size of the inmate population, this manual monitoring method is not possible. *See, e.g.,* Dkt. 2704-5 at 2 (measuring instances of noncompliance with only one PM required review of almost 4,500 individual

---

[3] Furthermore, Defendants' compliance with the Stipulation is already being tracked and reported in the monthly CGARs. Requiring Defendants to file "real time" data of each instance of noncompliance serves no additional purpose.

medical files); Dkt. 2745-1 at 2 (review of 420 individual files took three persons more than thirty-seven hours to complete). To illustrate, in order to compile the "real time" data for December 2018, Defendants reviewed 22,670 health care encounters. (Dkt. 2790-1 at 7.) Compilation of the February 2018 data required Defendants to review 15,832 health care encounters. (Dkt. 2786.) It is impossible to conduct this extensive review (on top of Defendants' other reporting obligations) monthly. Indeed, due to this extreme burden, Defendants had to request several extensions to file the "real time" data for December 2017-February 2018. (Dkts. 2396, 2605, 2640.)[4]

For these reasons, the "real time" data Defendants were able to compile has no value. Indeed, as a result of the need for manual review, Defendants noted in the December 2017-February 2018 filings that the data was over inclusive, that the information was not yet available, or that the list contained preliminary data only. *See, e.g.*, Dkts. 2662, 2648, 2595, 2576. Moreover, because determining compliance with a particular PM requires subjective, individual review, production of "real time" data requires Defendants to re-review individual files for accuracy. For example, the HSCMB submits preliminary compliance scores to Corizon, who then has an opportunity to challenge the preliminary scores. (Ex. 2 at ¶16.) These challenges frequently result in the HSCMB changing a particular audited file from "noncompliant" to "compliant." *Id.* This "challenge period" adds to the impossibility of producing "real time" data, as accurate, complete data is simply not available in real time. Due to the impossibilities outlined above, Defendants should not be held in civil contempt

---

[4] The difficulty in conducting a manual review is compounded by the fact Corizon is no longer Defendants' healthcare contractor. As of July 1, 2019, Defendants transitioned to a new healthcare contractor, Centurion. As a result, Corizon's operations and staff remaining in Arizona is extremely limited and Corizon is left with fewer staff members to conduct this exhausting manual review. (Ex. 2 at ¶11.)

**D.     The Court's June 22, 2018 Order Violates the Stipulation.**

"Where the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto." *See Goodman v. Newzona Inv. Co.*, 421 P.2d 318, 320 (Ariz. 1966). The Stipulation expressly defines compliance as "meeting or exceeding an eighty-five percent (85%) threshold for the particular performance measure that applies to a specific complex." (Dkt. 1185 at ¶10.) Because the Order requires 100% compliance, it improperly modifies the Stipulation.[5]

Contrary to Plaintiffs' suggestion, the Ninth Circuit did not decide, or even consider, in *Parsons v. Ryan*, 912 F.3d 486 (9th Cir. 2018), whether requiring 100% compliance with the Stipulation would improperly modify it. Instead, the Court limited its consideration to the order at issue in that appeal and whether *that order* required 100% compliance. 912 F.3d at 500. The Court stated:

> Although the OPO requires Defendants to use outside providers if Defendants cannot otherwise treat inmates within the prescribed time frame, it does not, in fact, change the threshold for substantial compliance. The threshold for substantial compliance remains 80 percent. In other words, ***the OPO is simply a remedy to address Defendants' non-compliance, it does not change what constitutes compliance*** for purposes of avoiding judicial enforcement. ***So long as Defendants meet or exceed the 80 percent benchmark provided in the Stipulation, the OPO has no effect***. Therefore, we disagree with the notion that the OPO effectively requires 100 percent compliance.

*Id.* (emphasis added). In finding that the order at issue in the prior appeal did not require 100% compliance, the Court did not decide, as a general matter, whether requiring 100% compliance is an improper modification. *Id.* However, Judge Callahan, in her dissent, recognized that any interpretation of the Stipulation that required 100% compliance would "erroneously modify" it. *Id.* at 508 (Callahan, J., dissenting).

---

[5] Plaintiffs argue that requiring only 85% compliance with the Stipulation is "inequitable and disconcerting" (Dkt. 3301 at 16:9–23), but these are the terms Plaintiffs negotiated and agreed to, (Dkt. 1185 at ¶10), and they do not have the luxury of being able to renegotiate the terms of the Stipulation.

9

In contrast to the order at issue in the prior appeal, the June 22, 2018 Order expressly requires 100% compliance with the Stipulation. (Dkt. 2898 at 18.) This violates the Stipulation's express terms.

1. **Requiring Defendants to Report Every Instance of Non Compliance Violates the Sampling Procedure in the Stipulation.**[6]

The Stipulation details how inmate healthcare records are to be randomly selected and reviewed to determine compliance with the Stipulation's PMs. (Dkts. 1185 at ¶ 9, 1185-1 at Ex. C (providing that, for measuring compliance with the majority of the PMs, "10 records will be randomly selected.")). Specifically, it requires that monitors assess a random sampling of inmate medical records applicable to the measure for each unit at the facility (or specified units and facilities). This measurement and reporting process determines "whether ADC has complied with particular [PMs] at particular complexes." *Id.* at ¶ 10. It does not require, as the June 22, 2018 states, that they measure every instance of compliance or noncompliance for all inmate medical files. *Id.* Thus, under the plain language of the Stipulation, Defendants need only measure compliance using randomly sampled records. *See Goodman v. Newzona Inv. Co.*, 421 P.2d 318, 320 (Ariz. 1966) ("Where the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto.").

## III. CONCLUSION

For these reasons, Plaintiffs' Motion should be denied.

---

[6] In appeal No. 18-16358, Plaintiffs conceded that the June 22, 2018 Order's requirement that Defendants report on every instance of noncompliance violates the sampling procedures detailed in the Stipulation by failing to dispute Defendants' argument in their Opening Brief on the issue. Where a party fails to dispute an argument, it is deemed to have conceded the issue. *See Greenawalt v. Ricketts*, 943 F.2d 1020, 1027 (9th Cir. 1991); *see also Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008); *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 826 (9th Cir. 2000).

DATED this 15th day of July, 2019.

          STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By /s/Timothy J. Bojanowski
   Daniel P. Struck
   Rachel Love
   Timothy J. Bojanowski
   Nicholas D. Acedo
   3100 West Ray Road, Suite 300
   Chandler, Arizona  85226

   Office of the Arizona Attorney General
   Michael E. Gottfried
   Assistant Attorney General
   2005 N. Central Avenue
   Phoenix, Arizona 85004-1592

   *Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com; docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Dietrich: | adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Kathleen E. Brody | kbrody@acluaz.org |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Ryan M. Kendall: | rkendall@aclu.org; ryankendall@ucla.edu |
| Molly Brizgys: | mbrizgys@acluaz.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Timothy J. Bojanowski

12