Office of the Arizona Attorney General
Michael E. Gottfried, Bar No. 010623
Assistant Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004-1592
Telephone: (602) 542-1645
Fax: (602) 542-3393
Michael.Gottfried@azag.gov

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1696
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br>Defendants. | NO. 2:12-cv-00601-ROS<br><br>**DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE (DKT. 3235)** |

Defendants file this Response pursuant to the Court's Orders, dated May 6, 2019 and July 3, 2019, requiring Defendants to "show cause as to why the Court should not impose a civil contempt sanction of $50,000 per Performance Measure per complex." (Dkt. 3235 at 7; Dkt. 3306 at 2.)  For the reasons that follow, the Court should not impose any civil contempt sanction.

## I.   FACTUAL BACKGROUND

Under the parties' Stipulation, Defendants agreed to comply, for a limited, specified period of time, with 103 healthcare performance measures ("PMs"). (*See* Dkt. 1185.) Since October 2016, the Stipulation requires at least 85% compliance with each PM to be deemed in "substantial compliance." (*Id.* at ¶ 10(a)(iii).) The Stipulation further authorized this Court to enforce the Stipulation through "all remedies provided by law" with certain exceptions not relevant to the instant issues. (*Id.* at ¶ 36.)

On May 6, 2019, the Court ordered Defendants to bring twenty-one PMs at certain facilities (34 PMs total) into compliance by July 1, 2019. (Dkt. 3235 (the "Order"), filed May 6, 2019, at 6-7, incorporated herein by reference.) In addition, the Court ordered Defendants to "show cause as to why the Court should not impose a civil contempt sanction of $50,000 per [PM] per complex." (*Id*. at 7.)

On August 9, 2019, Defendants submitted the June compliance scores for the ordered PMs/facilities. (Dkt. 3335.) Notably, many of the ordered PMs are now compliant. (*Id.*) These include:

| PM | June 2019 |
|---|---|
| PM 6 | Eyman: 98% |
| PM 15 | Eyman: 86% |
| PM 35 | Eyman: 88%<br>Lewis: 86% |
| PM 39 | Lewis: 85% |
| PM 44 | Eyman: 93%<br>Florence: 100%<br>Lewis: 88% |
| PM 49 | Florence: 91% |
| PM 72 | Eyman: 100% |

(*Id.*)

In addition, several PMs have reached substantial compliance for at least one month since February 2019, and several other PMs have shown significant improvement and are nearing compliance. For example:

| PM | January 2019 | February 2019 | March 2019 | April 2019 | May 2019 | June 2019 |
|---|---|---|---|---|---|---|
| PM 39 | Eyman: 32% | Eyman: 66% | Eyman: 76% | Eyman: 62% | Eyman: 60% | **Eyman: 72%** |
| PM 42 | Eyman: 52% | Eyman: 34% | Eyman: 74% | Eyman: 74% | Eyman: 80% | **Eyman: 76%** |
|  | Florence: 63% | Florence: 70% | Florence: 84% | **Florence: 85%** | **Florence: 88%** | **Florence: 80%** |
| PM 47 | Lewis: 15% | Lewis: 0% | Lewis: 63% | Lewis: 56% | Lewis: 54% | **Lewis: 72%** |
| PM 50 | Florence: 53% | Florence: 43% | **Florence: 85%** | Florence: 79% | Florence: 72% | **Florence: 82%** |
| PM 52 | Eyman: 71% | Eyman: 68% | **Eyman: 94%** | **Eyman: 94%** | **Eyman: 88%** | **Eyman: 82%** |
| PM 66 | Tucson: 70% | Tucson: 60% | **Tucson: 90%** | **Tucson: 90%** | **Tucson: 100%** | **Tucson: 80%** |

(Dkt. 3328 at 113, 140, 147, 210, 251, 280, 327; Dkt. 3335.)

**II.   THE COURT SHOULD NOT ORDER CONTEMPT SANCTIONS AGAINST DEFENDANTS.**

**a. The Court Cannot Enforce the Stipulation with Contempt Sanctions.**

To hold Defendants in contempt, the Court must first find a violation of a court order. *See* 18 U.S.C. § 401; *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994); *Spallone v. United States*, 493 U.S. 265, 276 (1990); *Stone v. City of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992). For the reasons Defendants have

3

previously explained, and which they incorporate here, the Stipulation is a private settlement agreement, not a court order or a consent decree. (*See*, *e.g.*, Dkt. 2228, 2241, 2281.) Therefore, the Court cannot hold Defendants in contempt for violations of the Stipulation. (*Id*.)

### b. The Proposed Sanctions are Criminal Contempt.

The proposed $50,000 per-PM, per-complex sanction constitutes an impermissible criminal contempt sanction. To determine whether contempt and related sanctions are civil or criminal, courts look to their character and purpose. *Shell Offshore, Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016); *Falstaff Brewing Corp. v. Miller Brewing Corp.*, 702 F.2d 770, 778 (9th Cir. 1983). If a contempt order imposes sanctions that have both civil and criminal facets, the criminal character prevails in determining procedure and review. *Falstaff Brewing*, 702 F.2d at 778-79.

Civil contempt sanctions are imposed for compensatory or coercive purposes. *Id.* If a civil contempt sanction is intended to be compensatory, it must be based on the complainant's actual sustained losses. *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983). If the civil contempt sanction is intended to be coercive, the Court must consider the "character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction." *Id.* A coercive sanction cannot be used to punish a past wrong. *Falstaff Brewing*, 702 F.2d at 799. In either instance, the beneficiary of a civil contempt sanction is the complainant, who should receive payment of the sanction. *See Hook v. Arizona*, 907 F. Supp. 1326, 1340 (D. Ariz. 1995); *see also Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 632 (1988).

In contrast, criminal contempt sanctions are imposed for punitive purposes. *Shell Offshore*, 815 F.3d at 629; *Falstaff Brewing*, 702 F.2d at 778. The beneficiaries of a criminal contempt sanction are the Court and the public interest. *Falstaff Brewing*, 702 F.2d at 778. Where the Court takes payment of the contempt sanctions, that is evidence that the sanctions are criminal. *Hicks*, 485 U.S. at 632; *Shell Offshore*, 815 F.3d at 629 n.4.

The Court's $50,000 per-PM, per-complex proposed sanction is criminal in nature. The proposed sanction cannot be characterized as compensatory because it is not based on any evidence of Plaintiffs' alleged loss. By Plaintiffs' own assertion, their damages are, at most, only $10 per violation. (Dkt. 2214, filed July 26, 2017, at 6:3-5 & 24:6-8, incorporated herein by reference.) The only alternative is to assert that it is coercive. However, to be coercive, the sanction must not be punitive—i.e. it cannot be intended to punish Defendants for a past wrong. *See Shell Offshore*, 815 F.3d at 629; *Falstaff Brewing*, 702 F.2d at 799 (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911)) ("a coercive sanction cannot undo or remedy what has been done") (internal quotations omitted). The proposed sanction here can only be construed as punishment for Defendants' past noncompliance with the Stipulation. Indeed, the proposed sanction will be applied to PMs that "remain substantially noncompliant nearly one year after" the issuance of a prior contempt sanctions order (Dkt. 2898) and for PMs that "have been [substantially noncompliant] for at least 3 of the last 6 months." (Dkt. 3235 at 2-4.) In addition, the Court included PMs for an entire facility simply because that facility's performance "[f]or the last several years" has been "woefully deficient." (*Id.* at 4-5.) Further, throughout its analysis, the Court relies on Defendants' compliance percentages for January and February 2019, more than two months prior. (*Id.* at 2-5.) The retrospective nature of the proposed sanction underscores that it is intended to punish for past noncompliance, not to spur future compliance.

Further, if the proposed sanction is intended to be coercive, Defendants must be given an opportunity to purge the contempt through compliance with the order. *See Bagwell*, 512 U.S. at 829; *Shell Offshore*, 815 F.3d at 629; *Falstaff Brewing*, 702 F.3d at 778. Defendants have not been given any opportunity to purge here. The Court ordered this Response to determine only whether to impose the proposed sanction for Defendants' noncompliance prior to July 1, 2019, six weeks before. In addition, the Court stated that it will consider further briefing on the issue, which will not be completed until September 20, 2019. (Dkt. 3306 at 2.) After that, the Court will make its determination, but

Defendants will have no opportunity to remedy their noncompliance, which will have occurred more than three months prior. The fact that the Court announced the proposed sanction in May 2019 does not change this determination. *See Bagwell*, 512 U.S. at 836 ("the fact that the trial court announced the fines before the contumacy, rather than after the fact, does not in itself justify respondents' conclusion that the fines are civil or meaningfully distinguish these penalties from the ordinary criminal law"). The proposed sanction, if and when imposed, will be retrospective and will not allow Defendants an opportunity to purge. Therefore, it cannot be considered a coercive civil contempt sanction.

To impose criminal contempt sanctions, certain due process requirements must be met. *Bagwell*, 512 U.S. at 833. The elements of contempt must be proven beyond a reasonable doubt. *Id.* at 833–34. In addition, the contemnor must be found to have willfully disobeyed the order. *Falstaff Brewing*, 702 F.2d at 782. Further, the contemnor must receive: (1) notice that the proposed contempt will be criminal; (2) proof beyond a reasonable doubt; and (3) a jury trial. *See* Fed. R. Crim. P. 42(a)(1); *Bagwell*, 512 U.S. at 826-27, 833-34. It does not appear that these essential due-process requirements will be met. Defendants have not been given notice that the contempt will be criminal. (Dkt. 3235 at 7 [referring to the proposed sanctions as a "civil contempt sanction"]; Dkt. 3306 at 2 [same].) In addition, there is no indication that the Court intends to provide a jury trial for Defendants. (*Id.*) If the Court proceeds with the Order, it must provide adequate due process to Defendants.

### c. These Issues are Currently Before the Ninth Circuit.

These issues are currently before the Ninth Circuit Court of Appeals, *see* No. 18-16358, Doc. 36, in an appeal arising from the Court's (Judge Duncan's) substantially similar prior contempt sanctions order (Dkt. 2898). In deciding the validity of that prior order, the Ninth Circuit must necessarily decide: (1) whether the Stipulation is a private settlement agreement or a consent decree; (2) whether the Stipulation can be enforced through contempt; and (3) whether contempt sanctions substantially similar to those

1  proposed in the Order are civil or criminal/punitive.  These decisions will certainly affect
2  any contempt finding and sanction order imposed here.  Oral argument in that appeal is
3  currently set for September 24, 2019, only four days after the conclusion of the briefing
4  schedule set for this issue.  Therefore, the Court should, at the very least, wait until after
5  resolution of the pending appeal to decide whether to impose additional contempt
6  sanctions against Defendants.

### d. Defendants Took All Reasonable Steps to Comply With the Order.

To avoid civil contempt, a defendant must have taken "all reasonable steps to comply with the order." *Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016). Defendants have done so and the reasons for the noncompliance are largely out of their control.  During the end of June and beginning of July, Defendants were transitioning healthcare contractors from Corizon Health, Inc. ("Corizon") to Centurion of Arizona, LLC ("Centurion"). (Exhibit 1, Declaration of William Carr, filed concurrently, at ¶ 6.) As a result of this transition, there were several delays and interferences with Defendants' ability to monitor compliance with the PMs.  (*Id.* at ¶ 8.)  For example, to monitor compliance with PM 12, Defendants' monitoring bureau locates a form documenting an inmate's medical refusal, which must be hand-signed by the inmate and then scanned into the medical file by a nurse.  (*Id.* at ¶ 9.)  However, as a result of the transition, there were significant delays in scanning the documentation needed.  (*Id.*)  A similar issue occurred with PM 24—Defendants review scanned copies of inventory logs which were misplaced during the transition between contractors—and PM 14—Defendants review a manual log created by the healthcare contractor, but Corizon, the healthcare contractor for June, was unable to create the log due to the then-completed transition.  (*Id.* at ¶¶ 10-11.)  In addition, the transition between healthcare contractors complicated Corizon's ability to comply with the PMs.  (*Id.* at ¶ 12.)  In particular, due to the pending transition, Corizon had difficulty staffing open positions and maintaining existing staff at Defendants' facilities.  (*Id.* at ¶ 13.)  The lack of available staff created backlogs and presented difficulties in increasing the PM compliance scores.  (*Id.* at ¶ 14.)  These staffing issues

affected several PMs, including 15, 19, 37, 66, and 67. (*Id.*) Further, as a result of the pending transition, several outside healthcare providers ended their relationships with Corizon, upon which Corizon relied to provide specialty care to inmates. (*Id.* at ¶ 15.) As a result of the loss of these relationships, there were less available providers for specialty consults, which affected the compliance scores for PMs 50 and 51. (*Id.* at ¶ 16.) Both Defendants and their healthcare contractors took all reasonable steps to comply with the Order, but the pending transition of healthcare contractors presented unexpected and atypical difficulties. These issues were entirely outside of Defendants' (or their healthcare contractor's) control. As a result, the Court should find that Defendants took all reasonable steps to comply with the Order and should not impose the proposed contempt sanction. At a minimum, the Court must give Defendants an opportunity to present evidence at a hearing to establish that they did take all reasonable steps to comply. (*See* Dkt. 2373 at 4 [ordering a show cause hearing before finding of contempt to allow Defendants an opportunity to show why the Court should not impose a civil contempt sanction]; *see also* Dkt. 2214 at 5, 23 [Plaintiffs acknowledging that Defendants are entitled to a show-cause hearing to show they have taken all reasonable steps to comply].)

### e. Several PMs are in Substantial Compliance or Are Nearing Substantial Compliance.

In the event that the Court decides to proceed immediately with a finding of contempt, it should not impose the proposed $50,000 per-PM, per-complex sanction for all of the PMs listed in the Order because Defendants are in substantial compliance, or are nearing substantial compliance, with many of those PMs.

### i. PMs in Substantial Compliance

The Order required that Defendants bring the listed PMs into "substantial compliance" (which the Stipulation defines as a compliance score of 85% or above) no later than July 1, 2019. (Dkt. 3235 at 6-7; Dkt. 1185 at ¶ 10(a)(iii).) As of June 2019, Defendants have compliance scores of at least 85% for seven of the listed PMs at three facilities (ten PMs total). (*See* Dkt. 3335.) These include:

- PM 6 at Eyman;
- PM 15 at Eyman;
- PM 35 at Eyman and Lewis;
- PM 39 at Lewis;
- PM 44 at Eyman, Florence, and Lewis;
- PM 49 at Florence; and
- PM 72 at Eyman.

(*Id.*)  Therefore, Defendants have complied with the Order and are in "substantial compliance" with these PMs.  The Court should not order civil contempt sanctions against Defendants relating to these PMs.

### ii. PMs Nearing Substantial Compliance

In addition to the PMs in substantial compliance, several PMs included by the Court in the Order have shown significant improvement and are nearing compliance.  For example, PM 47 at Lewis was cited in the Order as having compliance scores of 15% and 0% for January and February 2019.  (Dkt. 3235 at 2.)  However, since that time, PM 47 at Lewis has improved significantly, with the June 2019 compliance score above 70%.  (Dkt. 3328 at 210; Dkt. 3335.)  PMs 39 and 42 at Eyman and PM 50 at Florence show similar trends; both have drastically improved compliance scores and both are moving towards reaching substantial compliance.  (Dkt. 3328 at 113, 140, 251; Dkt. 3335.)

Further, several PMs included in the Order have reached substantial compliance for at least one month since February 2019.  For example, PM 42 at Florence reached compliance scores of 85% and 88% in April and May 2019, respectively.  (Dkt. 3328 at 147.)  This is in addition to near-compliant scores of 84% and 80% in March and June 2019.  (*Id.*; Dkt. 3335.)  Further, there are several PMs included in the Order which have far exceeded the "substantial compliance" threshold for multiple facilities over the past four months.  For example, PM 52 at Eyman was in substantial compliance for three of the four months (94%, 94%, and 88%) and in June 2019, its compliance score is only barely below the substantial compliance threshold (82%).  (Dkt. 3328 at 280; Dkt. 3335.)

Similarly, PM 66 at Tucson was in substantial compliance for March, April and May 2019 (90%, 90%, and 100%, respectively) and, in June 2019, is very near to the substantial compliance threshold (80%). (Dkt. 3328 at 327; Dkt. 3335.)

To avoid civil contempt, a defendant must have failed to take "all reasonable steps to comply with the order." *Kelly*, 822 F.3d at 1096. Defendants' improvement on these multiple PMs across several facilities is strong evidence that they engaged in significant steps to increase compliance scores at these facilities. In addition, "substantial compliance with the court order is a defense to civil contempt." *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993) (citations omitted). Defendants have substantially complied with the Order relating to these PMs, and it would be inequitable to impose contempt sanctions against Defendants for PMs which are likely to reach substantial compliance in the very near future. Therefore, the Court should not order civil contempt sanctions against Defendants relating to the following PMs:

- PM 39 at Eyman;
- PM 42 at Eyman and Florence;
- PM 47 at Lewis;
- PM 50 at Florence;
- PM 52 at Eyman; and
- PM 66 at Tucson.

**III.   CONCLUSION**

For the foregoing reasons, the Court should not impose any civil contempt sanction against Defendants for noncompliance with the Order.

///
///
///
///
///

DATED this 16th day of August, 2019.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By /s/Timothy J. Bojanowski
    Daniel P. Struck
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    3100 West Ray Road, Suite 300
    Chandler, Arizona 85226

    Office of the Arizona Attorney General
    Michael E. Gottfried
    Assistant Attorney General
    2005 N. Central Avenue
    Phoenix, Arizona 85004-1592

    *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com; docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Dietrich: | adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Ryan M. Kendall: | rkendall@aclu.org; ryankendall@ucla.edu |
| Molly Brizgys: | mbrizgys@acluaz.org |
| Marty Lieberman: | mlieberman@acluaz.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Timothy J. Bojanowski