1  Michael S. Cohn # 288721

2  ASPC Tucson / MANZANITA / B19

3  10002 S. Wilmot, P.O.B. 24401

4  Tucson, AZ 85734-4401

5      UNITED STATES DISTRICT COURT, ARIZONA

6

7  Parsons, et al.                          )

8  _____ )      2:12 CV 601-ROS

9              vs.                          )   Update re: Nursing Admin,

10  Ryan, et al.                            )   in Tucson Complex, etc.

11  _____ )      Hon. Roslyn O. Silver

12                                          )

13

14  Per FedRCivP (23)(d), I Michael J. Cohn, Class Plaintiff/

15  Advocate in the above named case, respectfully provide this update

16  for the court, et al. Nursing administration changes at Tucson

17  complex (Manzanita Unit specifically), have occurred by promotions from

18  within. I believe this is significant as such changes signal no

19  change in the culture of non-compliance/indifference to the settlement

20  agreement. I am submitting questions to the assistant Dir. of

21  Nursing at Manzanita Unit to further guage the intent of Centurion,

22  et al. regarding the intent to comply (see attached).

23      Upon experience, information and belief the new Director of

24  Nursing (L. Palmer-Neete) continues the obfuscating/meaningless

25  responses to grievances. Also, I see no evidence of use of

26  the Health Services Technical Manual protocols to address

27  patient needs. I am not aware of any training efforts

28  being made to ensure that the protocols are applied

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICE
AND IS SUBJECT TO REJECTION BY THE COURT.      Page  1  of 27  page(s)

REFERENCE  LRCiv 5.4
              (Rule Number/Section)

1  routinely for patient care.
2      I also point out upon information and belief that
3  policy 1101 (D.O.1101, Inmate Access to Healthcare) has not
4  been updated to include the 100+ items in the
5  stipulation. Nor have they been added to the Health
6  Services Technical Manual to my ~~knowledge~~ knowledge.
7  This is significant as ADC continues to signal by such
8  wanton negligence to not comply with the stipulation.
9  Another way to say this is that if ADC was serious
10  about compliance, the stipulation would have been immedi-
11  ately ~~been~~ incorporated into policy.
12      I respectfully request that sanctions be enhanced for
13  the reasons stated herein, inter alia.
14      Respectfully submitted,              Date: 9/3/19
15      Michael J. Cohn, Ed.D.
16      Dr. Michael J. Cohn, Pro Se
17  original mailed to:   on: 9/5/19
18  Clerk of the U.S. Dist. Ct.
19  401 W. Washington
20  Phoenix, AZ 85003
21      Copies to:   on: 9/5/19
22  Michael E. Gottfried, A.A.G.
23  2005 N. Central
24  Phoenix, AZ 85004
25
26  Corene Kendrick, Esq.
    Prison Law Ofc.
27  General Delivery
28  San Quentin, CA 94964

ARIZONA DEPARTMENT OF CORRECTIONS

Inmate Letter

| | | | |
|---|---|---|---|
| Requests are limited to <u>one page</u> and <u>one issue</u>. <u>NO ATTACHMENTS PERMITTED</u>. Please print all information. | | | |

| Inmate Name (Last, First M.I.) | ADC Number | Institution/Unit | Date |
|---|---|---|---|
| Cohn, Michael J. | 288721 | Tucson / Manzanita 1B59 | 8/2/19 |

| To: | Location |
|---|---|
| D. Thayer, ADON | Manzanita Medical |

State briefly but completely the problem on which you desire assistance. Provide as many details as possible.

As you may know, I am active as a witness in the Parsons V. Ryan class action case. The case alleges that ADC provides systemically inadequate medical care. As there has been a change in nursing administration, on update update for the court, et al. will be provided (Ms. L. Palmer-Neefe is now complex Director Of Nursing & Dr Thayer is A.D.O.N for the Manzanita Unit). I would appreciate it if you would send me an Inmate Letter Response to the following questions: (note: a Non-response will be reported to the court).

1) Do you have a Nursing Care Institution Administrators License. If not, why not? HU5 & HU6 at least require such Licenses IMO. (See ANA Code of Ethics, Prov. 5 & 6)

2) Will you be advocating for Centurion to obtain and post a City of Tucson Business License? If not, why not? (ANA Prov. 5 & 6)

3) Will you be advocating for HU5 & HU6 to have emergency call buttons? If not, why not? (ANA Prov. 1-6 & 8)

4) Will you insure that the 45 or so nursing care protocols, inter alia, etc. in the Health Services Technical Manual will be followed? If not, why not? Will you annually train staff on those and advise ADC of necessary protocol modifications? If not, why not? (ANA Prov. 1-6 & 8)

5) Will you be advocating for Open Clinic per Judge Duncan's order? If not, why not? (ANA Prov. 1-6 & 8)

cc: Judge Silver, McGottfried, asst. attorney General, Corene Kendrick, Staff attorney, Prison

| Inmate Signature | | Date |
|---|---|---|
| M. J. Cohn, Ph.D. | Witness in Parsons V. Ryan case, (Advocacy / coaching/education, Expert Witness) | 8/2/19 |

Have You Discussed This With Institution Staff? ☑ Yes ☐ No

If yes, give the staff member's name: FHA Schmid, D.W. Heliotes, CO IV Wood

Distribution:  White - Master Record File     Canary - Inmate

916-1
5/13/10

*Printed 9/1/19 by Librarian*

CHAPTER: 1100

**Inmate Health Services**

DEPARTMENT ORDER:

1101 – Inmate Access to Health Care

OFFICE OF PRIMARY
RESPONSIBILITY:

HS

---

**Effective Date:**

October 22, 2016

**Amendment:**

October 17, 2018

**Supersedes:**

DO 1101 (12/19/12)
DI 324 (1/13/14)
DI 335 (3/10/15)
DI 365 (3/1/18)

**Scheduled Review Date:**

October 1, 2020

---

**ACCESS**

☐  **Contains Restricted Section(s)**

# Arizona Department of Corrections

Department Order Manual



---

Charles L. Ryan, Director

# TABLE OF CONTENTS

PURPOSE ............................................................................................................................1

APPLICABILITY ..................................................................................................................1

RESPONSIBILITY ...............................................................................................................1

PROCEDURES .....................................................................................................................2

1.0    GUIDELINES...........................................................................................................2

2.0    CHARGING .............................................................................................................2

3.0    APPOINTMENTS.....................................................................................................3

4.0    FEMININE HYGIENE PRODUCTS .........................................................................6

5.0    OUTSIDE SPECIALTY CARE CLINICAL APPOINTMENTS..................................6

6.0    DETENTION ............................................................................................................6

7.0    EMERGENCIES ......................................................................................................8

8.0    CHRONIC ILLNESSES ...........................................................................................9

9.0    EXTRAORDINARY LIFE SUPPORT MEASURES ................................................10

10.0   TERMINAL ILLNESSES........................................................................................12

11.0   DENTAL SERVICES .............................................................................................12

12.0   REFUSAL OF TREATMENT..................................................................................14

13.0   INMATE HUNGER STRIKES ................................................................................15

14.0   PRESCRIPTIONS ..................................................................................................18

IMPLEMENTATION ...........................................................................................................18

DEFINITIONS/GLOSSARY ................................................................................................18

ATTACHMENTS ................................................................................................................18

FORMS LIST ......................................................................................................................18

AUTHORITY ......................................................................................................................19

## PROCEDURES

### 1.0   GUIDELINES

1.1   The Health Services Contractor shall ensure providers have available to them the resources to provide constitutionally mandated health care and appropriate referrals for inmates who appear for treatment.

1.1.1   Medications or restricted medical diets are available when medically necessary.

1.1.2   Interviews and treatment of inmates occur in private to the maximum extent possible to preserve confidentiality of the inmate-provider relationship.

1.1.3   When an inmate's behavior poses a danger to self or others, security staff shall monitor visits by health personnel with continuous, unimpaired, visual observations.

1.2   Condemned inmates shall not be transported off institutional grounds for routine medical appointments without the local Contract Facility Health Administrator coordinating transport with the Complex Warden at a minimum of 48 hours in advance to the medical appointment.

### 2.0   CHARGING

2.1   The Contract Facility Health Administrator shall ensure healthcare staff forwards the original Appointment List, Form 1101-13, or the Turn-Out Scheduling System (TOSS) Appointment List to the institution's Business Office each day.

2.2   The Institution's Business Manager or designee shall:

2.2.1   Deduct the health care fee from each inmate's account and deposit the monies in the State's General Fund within 30 calendar days.

2.2.1.1   If the inmate does not have sufficient funds in his/her account to pay the health care fee, the Business Manager or designee shall place a "hold" on the inmate's account for future debiting when funds become available.

2.2.1.2   For a listing of exemptions to health care fees, refer to the Glossary of Terms.

2.2.2   Deduct, from all deposits into an inmate's account, including wages and mail money, any amounts on hold for health care fees.

2.2.3   Ensure, when an inmate returns to custody after being released, but before his/her sentence has expired, any pre-existing obligations are posted to the inmate's account.

2.3   The Health Services Contractor shall submit statistical reports in accordance with the Health Services contract.

2.4   The Chief Financial Officer shall collect monthly statistics relating to health care fees assessed to inmates (including fees collected and fees debited) and prepare a quarterly report to the ADC Assistant Director for Health Services Contract Monitoring Bureau, due by the 10th workday following the end of the quarter.

# PURPOSE

This Department Order requires inmates to be provided opportunities for reasonable and appropriate access to medical, mental health, and dental health care at reasonable fees. The Department Order also requires appropriate and uninterrupted health care be provided to inmates with chronic health conditions. Security, program, transportation and healthcare staff cooperate and coordinate their activities to provide scheduled and emergency health care.

References to health care professionals (i.e., Health Services (medical), Mental Health Services, and Dental Services) are referring to the Health Services Contractors and their sub-contractors unless otherwise stated.

# APPLICABILITY

This Department Order applies to medical, mental health and dental health care services provided for inmates. For additional information concerning inmate health care functions, programs and controls, refer to the following Department Orders and NCCHC Standards:

- #108, Americans with Disabilities Act (ADA) Compliance

- #810, Management of LGBTI Inmates

- #1102, Communicable Disease and Infection Control

- #1103, Inmate Mental Health Care, Treatment and Programs

- #1104, Inmate Medical Records

- #1105, Inmate Mortality Review

- National Commission on Correctional Health Care (NCCHC) Standards for Health Services in Prisons

# RESPONSIBILITY *[Revision – October 17, 2018]*

The Assistant Director for the Arizona Department of Corrections (ADC) Health Services Contract Monitoring Bureau shall hold the Contractor providing Health Services accountable to ensure all inmates are provided access to scheduled and emergency (as needed) health care, and are not refused health care treatment due to financial reasons.

Health care shall be delivered through a joint effort of Health Services and Prison Operations staff. Health Services staff are subject to the same security regulations as other Department employees. Clinical decisions and actions regarding health care services provided to inmates are the sole responsibility of qualified health care professionals.

Wardens, Deputy Wardens and Administrators are responsible for ensuring that security/transportation staff transports inmates for scheduled and emergency health care, and for ensuring that an appropriate security escort is provided when inmates are transported by ambulance.

The ADC Financial Services Bureau Administrator is responsible for providing a quarterly report relating to health care fees assessed to inmates to the Director and the ADC Assistant Director for Health Services Contract Monitoring Bureau.

**3.0   APPOINTMENTS**

3.1   Inmates (including parole violators and releasees returned to custody) may access Health Services of a NON-EMERGENCY nature by making an appointment, for which there may be a charge. To make an appointment, inmates shall:

  3.1.1   Complete the Health Needs Request (HNR) (Non-Emergency), Form 1101-10ES.

  3.1.2   Deposit the Health Needs Request form in the appropriately labeled drop box.

3.2   Healthcare staff shall collect Health Needs Request forms from drop boxes daily, as designed by the Contract Facility Health Administrator. Such a schedule shall include the requirement for a daily pick-up and shall not interfere with, or delay the scheduling of inmate appointments.

  3.2.1   On the same day the Health Needs Request form is received (and date stamped on the yard received), healthcare staff shall triage the Health Needs Request forms and separate by discipline. Each discipline shall prepare an Appointment List form utilizing the Inmate Health System or similar system for each workday.

    3.2.1.1   Inmates will be seen within 24 hours (one day) after the Health Needs Request form is received for routine needs.

    3.2.1.2   Inmates will be seen immediately if identified with an emergent need, or on the same day if identified as having an urgent need.

    3.2.1.3   Health Needs Request forms requesting non-emergency Mental Health or Dental Services shall be provided to the relevant mental health or dental staff in the appropriate unit within 24 hours (one day) of receipt of the Health Needs Request form.

  3.2.2   In the event a Health Needs Request form indicates a mental health emergency, healthcare staff shall immediately contact available qualified mental health professional (QMHP).

    3.2.2.1   If it is after-hours, weekends or holidays without on-site coverage, healthcare staff shall perform a face-to-face evaluation, and then contact the on-call psychologist or psychiatrist for further direction.

  3.2.3   In the event a Health Needs Request form indicates a serious dental emergency, healthcare staff shall immediately contact available dental staff.

    3.2.3.1   If after-hours, weekends or holidays without onsite coverage, healthcare staff shall perform a face-to-face evaluation, and then contact the on-call dental or medical health care provider for further direction.

  3.2.4   Healthcare staff shall provide, at least 18 hours prior to the scheduled appointment, a copy of the Appointment List form to each unit, if not provided electronically.

    3.2.4.1   Retain the original Appointment List form for reference by Health Services staff, if not provided electronically.

3.3     QMHP shall:

    3.3.1     Review Health Needs Request forms requesting Mental Health Services upon receipt of such Health Needs Request forms.

    3.3.2     Review Health Needs Request forms received during weekends and/or holidays no later than the next working day.

    3.3.3     Respond to Health Needs Request forms requesting non-emergency Mental Health Services with a specific Plan of Action (HNR Section IV) within five working days.

    3.3.4     Respond within the same day of receipt of Health Needs Request form indicating urgent mental health symptoms or complaints by conducting a face-to-face evaluation.

        3.3.4.1     During after-hours, weekends and/or holidays a health care professional may conduct the face-to-face evaluation and consult with the on-call psychologist or psychiatrist.

        3.3.4.2     Suicide attempts, threats or verbalizations shall be handled according to Department Order #807, <u>Inmate Suicide Prevention, Mental Health Watches, and Progressive Mental Health Restraints.</u>

3.4     Dental healthcare staff shall:

    3.4.1     Review Health Needs Request forms requesting Dental Services upon receipt.

    3.4.2     Review Health Needs Request forms received during weekends and/or holidays no later than the next working day.

    3.4.3     Respond to Health Needs Request forms requesting non-emergency Dental Services with a specific Plan of Action (HNR Section IV) written within five working days.

    3.4.4     Respond within the same day of receipt of dental emergency (pain) Health Needs Request form indicating serious dental symptoms or complaints by conducting a face-to-face evaluation.

        3.4.4.1     During weekend and/or holidays a Registered Nurse (RN) or provider may conduct the face-to-face evaluation and consult with the on-call dentist.

3.5     The shift supervisor or representative shall:

    3.5.1     Upon electronic receipt of the copied Appointment List form, ensure security staff notify the inmate of the date and time of his/her medical appointment and return the completed Appointment List form signed by each inmate on the list to the Health Unit.

    3.5.2     Be the only person who may request an unscheduled medical evaluation consisting of an emergency examination/mental health assessment or a non-emergency "security-need-to-know" examination, for which the inmate shall not be charged.

    3.5.2.1    If, after the evaluation, a treatment plan is prepared with the inmate's consent, healthcare staff shall have the inmate sign the Emergency Appointment List form for which the inmate shall be charged a health care fee.

    3.5.2.2    If, after the evaluation, a treatment plan is prepared, but the inmate does not consent to it, healthcare staff shall counsel the inmate and ensure information (regarding the treatment plan, the inmate's refusal to consent to treatment, the counseling provided to the inmate, and instructions about appropriate housing relative to the health findings) is placed in the Medical Record, and shall not charge a health care fee.

        3.5.2.2.1    The shift supervisor or representative shall ensure inmates who refuse to consent to a treatment plan are returned to the appropriate housing area in accordance with instructions provided by healthcare staff.

3.6    Healthcare staff shall:

    3.6.1    Retain the Appointment List form in the Health Unit after it is signed and returned by the shift supervisor.

    3.6.2    Have each inmate who appears for an appointment sign the Appointment List form.

    3.6.3    Retain a copy of the original Appointment List form after it has been signed by each inmate.

    3.6.4    Forward the original Appointment list form to the institution Business Office daily.

3.7    Healthcare staff shall notify the shift supervisor within two hours about inmates who do not appear for their scheduled appointments (e.g., nurses line, providers line, mental health line, dental line, treatment and medication line). Upon being notified, the shift supervisor shall investigate and determine why the inmate failed to appear for the appointment and notify the Health Unit.

    3.7.1    If the inmate refuses to keep the on-site appointment and refuses treatment, security staff shall bring the inmate to the Health Unit, and the healthcare staff shall counsel the inmate on risks of refusing the appointment. If he/she still refuses the appointment, ask the inmate to sign the Refusal to Submit to Treatment, Form 1101-4 (Negativa de Someterse a Tratamiento, Form 1101-4S).

        3.7.1.1    If the inmate refuses to sign the form, healthcare staff shall have two independent witnesses attest to the refusal by signing the form.

    3.7.2    If the inmate agrees to the appointment and there is not sufficient time for healthcare staff to conduct the appointment the inmate shall be rescheduled.

        3.7.2.1    Rescheduled appointments shall be explained and documented in the Medical Record.

    3.7.3    Medication given outside of the medication line time frame must be approved by a medical provider.

3.8    Healthcare staff shall submit to the appropriate Deputy Warden or Administrator each workday an Information Report, Form 105-2, listing missed appointments for which the Health Unit has received no explanation or otherwise remain unresolved.

3.9    The Deputy Warden or Administrator shall investigate the circumstances of each unresolved missed appointment, and take appropriate action, ensuring the information and reason regarding the missed appointment is transmitted to the Contract Facility Health Administrator.

3.10    Healthcare staff shall reschedule the appointment.

**4.0    FEMININE HYGIENE PRODUCTS –** Inmates who require additional feminine hygiene products due to medical issues shall complete a Health Needs Request. *[Revision – June 11, 2018: Sections 4.0 thru 4.2]*

4.1    Health Services shall write a Special Needs Order for inmates who need additional or alternative feminine hygiene products due to medical issues.

4.2    The health care fee for this medical appointment shall be waived.

**5.0    OUTSIDE SPECIALTY CARE CLINICAL APPOINTMENTS**

5.1    When a health care provider has determined an outside specialist appointment is required for diagnosis or treatment of an inmate, healthcare staff shall:

5.1.1    Explain the clinical need to the inmate.

5.1.2    Complete an Inmate Outside Consultation Appointment Agreement, Form 1101-74.

5.1.3    Ask the inmate to sign the Inmate Outside Consultation Appointment Agreement form.

5.2    If the inmate refuses to sign the Inmate Outside Consultation Appointment Agreement form (e.g., chooses not to go to a specialty appointment), healthcare staff shall inform the inmate no specialty appointment will be made. An informed refusal shall be documented in the Medical Record.

5.3    If the inmate agrees and signs the Inmate Outside Consultation Appointment Agreement form, the appointment shall be made and scheduling shall proceed according to routine procedures.

5.4    If, on the scheduled appointment day, the inmate refuses to go to the appointment or refuses to be seen by the consultant at the specialty clinic, the security staff shall issue a disciplinary ticket to the inmate utilizing the Inmate Disciplinary Report, Form 803-1, in accordance with Department Order #803, Inmate Disciplinary Procedure.

5.5    If charges are billed to the Department for the refused appointment, the information shall be forwarded to the unit Disciplinary Officer for restitution of charges incurred.

**6.0    DETENTION**

6.1    The shift supervisor shall:

6.1.1    Notify healthcare staff within one hour after an inmate is placed in detention as outlined in Department Order #804, Inmate Behavior Control.

6.1.2     Notify healthcare staff immediately if an inmate placed in detention is injured or appears to be ill, and follow up by submitting the Detention Assignment Checklist, Form 804-1.

6.1.3     Allow inmates assigned to detention to submit a Health Needs Request form in accordance with the institution's Post Orders.

6.1.4     In the event such as an extreme shortage of healthcare staff or a disturbance which would preclude required health care visits, provide an escort and supervision necessary to ensure access to health care.

6.2     The Contract Facility Health Administrator shall:

6.2.1     Require healthcare staff:

6.2.1.1     Upon notification, to immediately review the inmate's Medical Record to determine if any health issue(s) (including dental and mental health) exists which would be impacted by the detention status.

6.2.1.2     To document their findings in the Medical Record in Subjective Objective Assessment Plan Education (SOAPE) format.

6.2.1.3     When the notification includes information that the inmate is injured or appears to be ill, to conduct an immediate hands-on assessment (for which there is no health care fee).

6.2.2     Require healthcare staff to visit an inmate in detention/segregation based on the NCCHC Standards for segregated inmates for the complex.

6.2.2.1     P-E-09 "SEGREGATED INMATES"

6.2.2.1.1     Inmates under extreme isolation with little or no contact with other individuals are monitored daily by healthcare staff and at least once a week by QMHP.

6.2.2.1.2     Inmates who are segregated and have limited contact with staff or other inmates are monitored three days a week by QMHP.

6.2.2.1.3     Inmates who are allowed periods of recreation or other routine social contact among themselves while being segregated from the general population are checked weekly by QMHP.

6.2.2.2     Rounds shall be documented on the Segregation Log, Form 1101-25, or in the Electronic Health Record (EHR).

6.2.2.3     Should circumstances, such as an extreme shortage of healthcare staff or a disturbance, preclude healthcare staff from making a required visit, security staff shall provide the escort and supervision necessary to ensure access to health care.

6.2.3   Require QMHP to:

    6.2.3.1   Visit an acutely Seriously Mentally Ill inmate placed in isolation or a lock-down cell within 24 hours of notification to Health Unit staff by the Shift Commander, except on weekends and holidays when the inmate shall be seen by a nurse within 24 hours, in consultation with a QMHP. QMHP shall visit with Seriously Mentally Ill inmates in detention/isolation three times a week.

    6.2.3.2   Follow-up with a face-to-face visit with a Seriously Mentally Ill inmate on the first working day following the inmate's placement in isolation, and ensure timely and appropriate follow-up mental health treatment upon the inmate's release from isolation.

6.2.4   Require healthcare staff, when an inmate's medical condition precludes reporting to the Health Unit, to make daily visits to observe the inmate's health status and provide or coordinate any treatment required (for which there is no health care fee).

## 7.0   EMERGENCIES – First Responders trained in Basic Life Support shall respond to provide care within three minutes of an emergency.

7.1   Security staff shall:

    7.1.1   If the inmate is in medical distress, immediately initiate the Incident Command System (ICS).

    7.1.2   Immediately contact healthcare staff to advise them of a medical situation on the yard.

7.2   Healthcare staff shall:

    7.2.1   Immediately respond to any call from security staff to assess the medical status of an inmate.

        7.2.1.1   Healthcare staff shall immediately go to the inmate's location for further assessment, or;

        7.2.1.2   After discussion with security staff, the inmate may immediately be brought to the Health Unit for evaluation, if the inmate is stable.

        7.2.1.3   If the inmate is returned to the housing unit after an assessment, healthcare staff shall add the inmate to the next scheduled Appointment List form (ER) for the day.

        7.2.1.4   Healthcare staff shall provide appropriate health care (for which there may be a charge), during the encounter.

    7.2.2   Obtain verbal authorization from the Warden or designee prior to the off-site transportation of a condemned inmate.

7.3    Wardens, Deputy Wardens and Administrators shall ensure:

    7.3.1    Appropriate security escort is provided if an inmate is in need of emergency treatment and is transported by ADC vehicle, or ground or air ambulance.

    7.3.2    Security and/or transportation staff exerts every reasonable effort to transport inmates for scheduled health treatment.

## 8.0  CHRONIC ILLNESSES

8.1    Qualified health care professionals shall:

    8.1.1    Ensure that chronic illnesses are documented on a Continuity of Care/Transfer Summary, Form 1101-8, or in the EHR, when any inmate transfers from one yard to another yard, or one facility to another facility.

        8.1.1.1    Healthcare staff shall review the Continuity of Care/Transfer Summary information at the receiving yard/facility and notify the Shift Commander of any anticipated medical emergencies which may arise based upon the medical or mental health condition of the incoming inmate.

            8.1.1.1.1    The notification shall be made immediately by telephone, followed by completion of an Information Report to the Shift Commander.  Written notification shall include a copy to the Contract Facility Health Administrator, and shall be completed on the day of the transfer.

    8.1.2    Ensure allergic substances, including medications, are recorded (in red ink) within the Medical Record file (i.e., on the problem list, medical history form) and the outside front cover of the Medical Record (paper chart), and documented in the EHR.

    8.1.3    Ensure inmates with a chronic condition(s) are entered into the EHR, or electronic tracking system, to ensure the inmates are seen on a regularly scheduled basis, as ordered by the health care provider.

    8.1.4    Re-order medications and treatments for inmates with chronic conditions in a timely manner so the inmates receive the necessary treatment for their chronic conditions without interruption or unnecessary delay.

    8.1.5    Notify the Contract Facility Health Administrator when a movement is required in order to provide a special assignment or special housing to accommodate an inmate's chronic condition.

8.2    The Contract Facility Health Administrator shall:

    8.2.1    When notified of a movement requirement:

        8.2.1.1    Arrange for an intra-facility movement, when appropriate.

        8.2.1.2    Coordinate with their chain of command and Offender Services Bureau to initiate inmate movement for medical reasons.

        8.2.1.3    Notify the Deputy Warden or Administrator.

      8.2.2   Ensure special arrangements are made for treatment or delivery of medications immediately after being notified of such a need by the supervising physician or Director of Nursing.

**9.0   EXTRAORDINARY LIFE SUPPORT MEASURES** – The Department and the healthcare staff shall ensure all efforts are taken to maintain the inmate's life while on the prison complex.

   9.1   During the receiving unit intake/orientation or at the inmate's Correctional Plan Review, the Correctional Officer III (CO III) shall:

      9.1.1   Interview the inmate and ensure (via signature as witness) the inmate reads, or have read to them, the Right to Medical Care Directive forms and attachments:

         9.1.1.1   Revocation of Medical Care Directives, Form 1101-90

         9.1.1.2   Durable Health Care Power of Attorney, Form 1101-97

         9.1.1.3   Living Will (End of Life Care), Form 1101-98

         9.1.1.4   Inmate Acknowledgement of Rights, Form 1101-99

         9.1.1.5   Attachment A - WHO DECIDES? / QUIEN DECIDES?

         9.1.1.6   Attachment B – Definitions of Medical Care Directive Forms

      9.1.2   Explain to the inmate how to complete the Medical Care Directives forms.

         9.1.2.1   To assist the CO III in explaining the Medical Care Directives forms, the CO III shall be provided with standardized explanations of the forms being provided to the inmate. (See Attachment B, Definitions of Medical Care Directive Forms.)

         9.1.2.2   To assist the inmate in understanding the purpose of the Medical Care Directives forms, the inmate may read or have read to them Attachment A, WHO DECIDES? / QUIEN DECIDES?

         9.1.2.3   The CO III shall inform the inmate of the completed forms which have to be signed in the presence of the CO III. The CO III shall forward the completed forms (signed by inmate and witness signature by CO III) to the Health Unit and Institution Offender Information Unit. If the inmate does not want to complete the forms at that time, he/she may take the forms to review and notify the CO III by Inmate Letter, Form 916-1, requesting an appointment to meet with the CO III to finalize the forms.

         9.1.2.4   The CO III shall document in the Adult Inmate Management System (AIMS), Offender Comments screen, to indicate when the Medical Care Directive forms are given to the inmate.

      9.1.3   Ensure inmate signs the acknowledgment of their Right to Medical Care Directives forms.

9.1.4    Ensure all COMPLETED Medical Care Directive forms, including the Acknowledgement form, are forwarded to the inmate's medical and institutional records and a copy is provided to the inmate.

9.1.4.1    Upon receiving the completed Medical Care Directives forms, healthcare staff shall scan and file the forms into the Legal/Administrative section of the Medical Record, and ensure information is placed in the AIMS Offender Comments screen.

9.1.4.2    The Institution Offender Information Unit shall file the forms in the inmate file.

9.2    This is a onetime interview/documentation process for each inmate, except the inmate may request to change the original or subsequent decisions at any time.  The CO III shall inform the inmate he/she may at any time sign, modify or revoke any or all of the forms provided by submitting an Inmate Letter form to the CO III.

9.2.1    The CO III shall be responsible for providing the inmate with the necessary forms when any changes are requested in writing by Inmate Letter form.

9.2.2    If an inmate desires to modify and/or revoke any or all of the Medical Care Directives, he/she shall submit an Inmate Letter form to the CO III.  The CO III shall interview the inmate and provide the inmate with Revocation of Medical Care Directives (MCD) form.

9.2.2.1    In the event of a modification, the CO III shall provide the inmate with the appropriate form(s) he/she wishes to change, and then allow the inmate to make the change(s), and then forward the form to the Institution Offender Information Unit and healthcare staff in the assigned unit, with a copy for the inmate.

9.2.2.2    In the event of a revocation(s), the CO III shall provide the inmate with the Revocation of Medical Directives form, allow the inmate to complete it, sign it (both inmate and CO III), and then forward the completed form to the Institution Offender Information Unit and the healthcare staff, who, in turn shall stamp the Directive "REVOKED."

9.2.2.3    In the event of a modification and/or revocation, the healthcare staff in the assigned unit shall update the inmate's AIMS records accordingly, and scan and file the completed Medical Care Directives forms in the Legal/Administrative section of the Medical Record.

9.3    All correctional staff members are obligated to engage life-saving measures for any inmate in physical distress regardless of the cause. An inmate's Pre-Hospital Care Directive or "Do Not Resuscitate (DNR)" request does NOT apply to security staff. A DNR is for use only by outside health care providers, hospitals and/or hospice facilities, or for use by HEALTH SERVICES STAFF ONLY. When Emergency Medical Staff (EMT/Paramedic) arrive the inmate shall be transported to the appropriate community emergency hospital.

9.3.1    Inmate patients' DNR requests will be honored only by healthcare staff.

    9.3.1.1    As private prisons currently under contract with ADC do not maintain Inpatient Component (IPC) infirmary units, DNRs shall not be honored in ADC private prisons.

9.3.2    Correctional staff shall engage in life-saving measures for any inmate in physical distress unless or until directed otherwise by healthcare staff.

9.3.3    DNR orders may be written by a medical provider employed by the state's contracted medical vendor in consultation with the inmate. *[Revision - October 17, 2018: Sections 9.3.3 and 9.3.3.1]*

    9.3.3.1    Any DNR order written by a hospital, hospice, or other medical provider not directly employed by the ADC medical vendor shall be honored under the provisions outlined in 9.3 of this section.

## 10.0  TERMINAL ILLNESSES – The Health Services Contractor shall provide on-site hospice care or arrange with the contracted community hospitals for the management of terminally ill inmates by:

10.1    Requesting copies of the "Do Not Resuscitate" procedures used at the hospital providing patient services for the terminally ill inmate.

10.2    Providing written notification to the hospital the Department shall not object to a "Do Not Resuscitate" order if:

    10.2.1    The order is written as a medical order by the physician.

    10.2.2    The hospital has a written procedure for such an order.

    10.2.3    The hospital procedures are the same for all patients.

10.3    Developing a liaison with the hospital and monitoring the condition of inmates who are hospitalized in critical condition.

10.4    Providing a copy of the inmate's Declaration of Intent to Limit Life-Support Procedures, Form 1101-9, upon admission to a hospital.

## 11.0  DENTAL SERVICES

11.1    <u>Initial Treatment</u>

    11.1.1    Within seven days of entering the system at the initial intake facility, all inmates shall have the following performed:

        11.1.1.1    A Panoramic x-ray.

        11.1.1.2    Every inmate shall receive an Oral Hygiene Instruction Pamphlet.

        11.1.1.3    If the inmate has an urgent matter which requires immediate attention (i.e., infection and swelling, fractured dentition with pulpal exposure), the inmate shall receive treatment for the specific problem only.

    11.1.2    Within 30 days of the inmate arriving to the next complex, the inmate shall receive:

11.1.2.1   Bitewing x-rays or FMX (full mouth series of x-rays), if medically recommended.

11.1.2.2   Complete dental examination.

11.1.3   Subsequent appointments shall be scheduled if deemed necessary after an inmate submits a Health Needs Request form, or if the dentist determines that follow up is required.

11.2   Prosthesis – Refer to the Dental Technical Services Manual for qualifying parameters.

11.2.1   Inmates requesting replacement of existing prostheses supplied at State expense shall be examined by a dentist, who shall determine if a replacement is medically necessary.

11.2.2   If the dentist determines an inmate has damaged a prosthesis in an attempt to obtain a replacement, the dentist shall take disciplinary action against the inmate for damage of State property.

11.2.3   Full or partial prostheses provided by the State shall not be replaced routinely until five years have elapsed since the insertion of the prosthesis, and then only if the examining dentist deems it necessary.

11.2.4   Full or partial prosthesis made at State expense remains State property until the inmate leaves the jurisdiction of the Department.

11.2.5   Replacement or repair of gold crowns, any type of porcelain crowns, fixed bridges or gold/porcelain inlays/on-lays shall not be provided.

11.2.6   Partial dentures and anterior flippers shall not be provided for cosmetic or aesthetic reasons.

11.3   Emergency/Urgent Dental Care – Each prison complex shall have an on-call dentist during non-clinic hours.

11.3.1   During non-clinic hours triage shall be conducted by a nurse.

11.3.1.1   If a nurse is doing triage, the nurse shall contact the dentist on-call to arrange for necessary treatment.

11.3.2   During clinic hours triage shall be conducted by the dentist.

11.4   Pre-Existing Orthodontic Treatment – The Department shall ensure inmates entering an institution upon commitment are currently undergoing orthodontic treatment shall not have treatment interrupted or changed without the written approval of the orthodontist or dentist of record.

11.4.1   A complete history shall be obtained, including dentist of record, date treatment started and course of treatment to date.

11.4.2   The history information shall be provided to the contracted Dental Director immediately upon compilation.

11.4.3   No treatment shall be performed, other than in an emergency situation, unless authorized by the contracted Dental Director.

11.4.4   If authorized, the dentist or orthodontist of record shall be contacted by the dentist and/or dental hygienist, and any necessary arrangements shall be made for follow-up treatment.

11.5   Fracture of Facial Bones – Inmates examined for facial injury shall be referred to the on-duty or on-call dentist/hygienist for examination and any necessary treatment for fractures of facial bones.

11.5.1   Depending on the circumstances of the case and the presence or absence of non-facial conditions, the dentist/hygienist shall evaluate the case and advise on treatment/disposition accordingly.

## 12.0  REFUSAL OF TREATMENT

12.1   Non-Life Threatening – When an inmate with a medical condition that is not life-threatening refuses medical treatment, healthcare staff shall:

12.1.1   Explain to the inmate the consequences of not receiving treatment.

12.1.2   Complete a Refusal to Submit to Treatment form in the inmate's presence, and file it in the Medical Record.

12.1.3   Ask two staff members, if the inmate refuses to sign the form, to witness the inmate's refusal and sign the form, indicating the inmate's refusal.

12.1.4   Honor the inmate's preference, if the inmate continues to refuse medical treatment.

12.1.5   Continue to respond to future medical situations involving the inmate who refused treatment.

12.1.6   Thoroughly document the situation for future reference and litigation which may occur, and be prepared to testify if subpoenaed to do so.

12.2   Life-Threatening – When an inmate with a medical condition that is life-threatening refuses medical treatment:

12.2.1   Health taff shall:

12.2.1.1   Immediately notify the Contract Facility Health Administrator.

12.2.1.2   Explain to the inmate the consequences of not receiving treatment.

12.2.1.2.1   If the inmate is mentally incompetent, healthcare staff shall request the inmate be admitted to a tertiary provider or transferred to ASPC-Phoenix, Alhambra B Ward, whichever best serves the inmate's emergent need, in accordance with Department Order #1103, Inmate Mental Health Care, Treatment and Programs.

12.2.1.3   Complete a Refusal to Submit to Treatment form in the inmate's presence, if the inmate continues to refuse treatment. The form shall be placed in the Medical Record.

12.2.1.4   Thoroughly document the situation for future reference and litigation which may occur, and be prepared to testify if subpoenaed to do so.

12.2.1.5   Provide medical treatment if a court orders treatment to be provided.

12.2.1.6   If the court does not order treatment, and the inmate continues to refuse treatment, honor the inmate's preference.

12.2.2   The Contract Facility Health Administrator shall:

12.2.2.1   Immediately advise the Health Services Regional Administrator and the ADC Contract Monitor that the inmate has refused medical treatment for a condition which is life-threatening.

12.2.2.2   Immediately advise the Warden, Deputy Warden or Administrator that the inmate has refused medical treatment for a condition which is life-threatening, and continue to respond to future medical situations involving the inmate who refused treatment.

12.2.2.3   Ensure a Significant Incident Report, Form 105-3, is completed in accordance with Department Order #105, <u>Information Reporting</u>, and a copy of the report is forwarded to the Warden, Deputy Warden or Administrator.

12.2.3   The Health Services Contractor shall immediately contact the Department's General Counsel to coordinate with the Attorney General's Office to obtain a court order to provide necessary treatment.

12.2.3.1   The Department's General Counsel shall contact the Office of the Attorney General to request a petition of the court for an order mandating the Department to provide necessary treatment to the inmate.

**13.0 INMATE HUNGER STRIKES** – The Department recognizes an inmate may refuse nutrition as a hunger strike to achieve a personal objective. The Department shall attempt to resolve any issues which may lead an inmate to attempt a hunger strike; however, the Department shall not violate or overturn any Department written instructions, guidelines or procedures to stop the hunger strike.

13.1   Department and healthcare staff shall monitor the health and welfare of an inmate engaged in a hunger strike and shall ensure legal and medical procedures are pursued to preserve the inmate's life.

13.2   An inmate shall be considered to be on a hunger strike when:

13.2.1   The inmate communicates the fact to staff and is observed by staff to be refraining from eating for a period of time, ordinarily in excess of 72 hours.

13.2.2   Staff observes the inmate to be refraining from eating for a period in excess of 72 hours. When staff considers it prudent to do so, a referral for medical evaluation may be made without waiting 72 hours.

13.2.2.1   Although an inmate may not indicate that he/she is on a hunger strike, staff shall refer the inmate for medical evaluation as a precautionary measure.

13.3   The appropriate staff member shall report the hunger strike using a Significant Incident Report form in accordance with Department Order #105, <u>Information Reporting</u>. Healthcare staff shall report the hunger strike through their chain of command.

13.4   In consultation with the appropriate management staff, Wardens may attempt to address any issues raised by the inmate; however, no Department written instructions, procedures or guidelines shall be violated in addressing the issue(s).

13.4.1   The Warden or designee shall contact the senior chaplain of the institution and arrange for a chaplain to visit the inmate.

13.4.1.1   The chaplain shall attempt to determine if any religious issues are involved, or if the inmate wishes to be visited by a qualified religious leader of the inmate's chosen religion.

13.4.1.2   The chaplain shall advise the Warden and the Religious and Volunteer Services Administrator of any religious issues associated with the hunger strike and arrange for the pastoral visit if the inmate requests one.

13.5   When notified an inmate is engaged in a hunger strike, the appropriate healthcare staff shall examine the inmate and conduct an initial evaluation.

13.5.1   Healthcare staff shall establish the inmate's base line weight and vital signs, and obtain a standard automated chemistry panel, a routine urinalysis and a chronic disease history.

13.5.2   A Psychiatrist or Psychologist shall conduct a mental health assessment of the inmate's capacity to make decisions.

13.5.2.1   If, as a result of the mental health assessment, the inmate is found to not have the capacity to make decisions, legal proceedings shall be initiated to obtain a court order for forced care. The Health Services Contractor shall immediately contact their General Counsel to coordinate with the State Attorney General's Office to obtain a court order to provide necessary treatment.

13.5.2.2   If an inmate, initially found to have the capacity to make decisions, is later determined to not have the capacity to make decisions, the Health Services Contractor shall initiate appropriate legal proceedings to obtain a court order for forced care.

13.5.2.3   The Psychiatrist or Psychologist shall make a determination regarding the need for a mental health/suicide watch.

13.5.3   The Health Services Contractor shall, in the event of imminent death, immediately contact their General Counsel to coordinate with the State Attorney General's Office to obtain a court order to provide necessary treatment.

13.6     If the inmate is determined to have the capacity to make decisions his/her medical status shall be monitored as follows:

    13.6.1     The inmate shall be moved to a single occupant cell and shall be provided with regularly scheduled meals and an adequate supply of drinking water.

    13.6.2     Security staff shall confiscate store purchased food or other private food supplies from the inmate. Confiscated items shall be held for the duration of the hunger strike. The inmate shall not be allowed to purchase any food items from the inmate store while under hunger strike management.

    13.6.3     Health Services staff shall take and record the inmate's weight, intake and output, and vital signs at least once every 24 hours. Other medical procedures, including mental health assessments, shall be repeated as medically indicated.

    13.6.4     The inmate shall be monitored in accordance with the Health Services Technical Manual. At the discretion of the inmate's attending medical provider, the inmate shall undergo additional medical and lab testing.

        13.6.4.1     An interdisciplinary clinical staffing panel as outlined in the Health Services Technical Manual shall determine any potential issues and attempt to resolve them. The inmate shall be informed of the medical consequences of the hunger strike and shall be asked to sign a Refusal to Submit to Treatment form acknowledging understanding the consequences.

        13.6.4.2     The inmate's treating physician shall make the determination regarding the potential need to have the inmate placed on a medical watch, to include the monitoring intervals.

13.7     When the appropriate healthcare staff considers it medically mandatory, the Health Services supervising physician or his/her designee shall ensure the inmate is admitted to an acute care facility for observation and/or treatment.

13.8     The Health Services Contractor shall notify their General Counsel advising of the need to begin preparing a court order for involuntary forced feeding, if necessary, at least 72 hours prior to hospitalization.

    13.8.1     Any needed forced treatment shall be terminated if/when the inmate ends the hunger strike, or voluntarily consumes sufficient nutrition to sustain life and prevent serious harm as determined by a medical provider.

13.9     A declared hunger strike shall be documented as terminated upon the inmate's ingestion of food, excluding water and medication, for a sufficient period of time as determined by a medical provider.

    13.9.1     When the medical provider has determined supervision is no longer necessary, the decision shall be documented and supervision shall end.

**14.0  PRESCRIPTIONS**

14.1    Health care providers shall prescribe:

14.1.1    Medications for inmates as needed.

14.1.2    Injections to inmates as needed. The syringe and medication shall not be issued to the inmate.

14.2    Dispensing Medications - Medications shall be dispensed in accordance and compliance with all State and Federal laws governing the practice of pharmacy.

14.2.1    Inmates may possess no more than a 30-day supply of medications, or 120 doses (units).

14.2.2    Upon receipt of medications from a pharmacy, a nurse shall document such receipt and make the medications available to inmates, as prescribed and in accordance with security restrictions.

14.2.3    Non-medical Department staff may deliver prescriptions to the inmate, provided all medications are signed for by the inmate and accountability is ensured.

## IMPLEMENTATION *[Revision – June 11, 2018]*

The Assistant Director for Health Services Contract Monitoring Bureau shall ensure the Health Services Technical Manuals are updated and address the healthcare requirements outlined in this Department Order.

## DEFINITIONS/GLOSSARY

Refer to the Glossary of Terms

## ATTACHMENTS

Attachment A – WHO DECIDES? / QUIEN DECIDES? - Spanish
Attachment B – Definitions of Medical Care Directive Forms

## FORMS LIST

1101-4, Refusal to Submit to Treatment
1101-4S, Negativa de Someterse a Tratamiento
1101-8, Continuity of Care/Transfer Summary
1101-9, Declaration of Intent to Limit Life-Support Procedures
1101-10ES, Health Needs Request (HNR) (Non-Emergency)
1101-11, Health Needs Request (HNR) (Emergency)
1101-11S, Peticion de Necesidades Medicos (Emergencia)
1101-13, Appointment List
1101-25, Segregation Log
1101-74, Inmate Outside Consultation Appointment Agreement
1101-90, Revocation of Medical Care Directives
1101-90S, Directivo De Revocacion De Como Dirigir Cuidados Medicos
1101-97, Durable Health Care Power of Attorney

1101-97S, Poder Legal De Cuidado Medico
1101-98, Living Will (End of Life Care)
1101-98S, Testamento En Vida (Fin del Cuidado de la Vida)
1101-99, Inmate Acknowledgement of Rights
1101-99S, Conocimiento De Los Derechos Del Preso

# **AUTHORITY**

A.R.S. §9-499.02, Standards for Curb Ramps
A.R.S. §31-201.01, Duties of the Director; Tort Actions; Medical Treatment Costs; State Immunity; Definitions
A.R.S. §31-224, Duty to Deliver Medical Records
A.R.S. §32-1968, Dispensing Prescription-Only Drug; Prescription Orders; Refills; Labels; Misbranding; Dispensing Soft Contact Lenses; Opioid Antagonists
A.R.S. §36-2523, Records of Registrants; Inspection; Confidentiality
A.R.S. §36-2525, Prescription Orders; Labels
A.R.S. §41-1492 et seq, Arizonans with Disabilities Act of 1992
Americans with Disabilities Act of 1990, Titles I-V
28 CFR Part 35.130 et. seq., Nondiscrimination on the Basis of Disability by State and Local Government Services
U.S. Civil Rights Act of 1964
Architectural Barriers Act of 1968
Rehabilitation Act of 1973

## ATTACHMENT A

**WHO DECIDES?**

The following may be read to/by an inmate

If you get hurt or sick in prison, so sick you can't talk or answer at all. Who will make your medical decisions? It's very important for you to choose a person to make those decisions for you, just in case.

You can fill out forms ahead of time to decide. These forms are called your "Medical Care Directives." They allow YOU to decide who will make decisions for you and what decisions you want them to make. They give YOU control over your medical decisions, so there's no confusion later in case you can't talk or answer.

(As long as you can still talk, answer, nod you head, blink you eye or communicate at all with doctors and nurses, your Medical Care Directives are not needed.)

If you choose NOT to complete your Medical Care Directives, Arizona Law says who can make medical decisions for you, in the following order:

1. The patient's spouse (unless you are legally separated);

2. An adult child of the patient; if more than one adult child, consent is by a majority "vote";

3. The patient's parent;

4. If unmarried, the patient's domestic partner;

5. The patient's brother or sister;

6. A close friend of the patient (someone showing special care/concern and knows the patient's health care views);

7. The patient's attending physician after consulting the hospital's ethics committee;

8. Patient's physician in consultation with a second physician.

No one can make you complete your Medical Care Directives. It is your right; however, whether you use this right is completely your decision. You can talk to anyone you trust before deciding whether or not to complete the forms. You are allowed to look at the forms first, in private, before deciding what to do. You can set up and change your Medical Care Directives at any time. Contact your CO III for further information.

## ATTACHMENT A

### QUIEN DECIDE?

Lo siguiente puede ser leido pare un Preso/o por un Preso

Dice lo siguiente: Si se lastima o se enferma de gravedad al grado que no pueda hablar o comunicarse en lo absoluto, y no responde en el tiempo que está en la prisión, QUIEN es responsable de tomar decisiones sobre su condición médica en caso necesario.

Existe una forma que usted puede llenar por adelantado que se llama (DECISIONES DE CUIDADO DE SALUD). Al llenar esta forma da su autorización a la persona designada para sus decisiones médicas por usted.  En esta forma usted deja por escrito las indicaciones que quiere que se hagan en caso de que no pueda hablar o responder del todo si esto llegara a pasar estaría todo listo y no existiera ninguna confusión.

Si usted todavía se puede comunicar hablando, moviendo la cabeza, parpadeando los ojos en fin comunicándose con los doctores, y enfermeras.  No sería necesario utilizar a la persona designada para sus decisiones médicas.

Si usted decide no llenar esta forma (DECISIONES DE CUIDADO DE SALUD) en Ingles (Medical Care Directives) La Ley de Arizona le asignan a una persona para usted que decida en su condición médica en el orden de siguiente:

1.  Cónyuge del paciente/preso (*si está legalmente separado no puede ser su cónyuge*).

2.  El hijo mayor del paciente/preso que sea adulto; Si más de un hijo adulto, consentimiento es por una mayoría de "Voto."

3.  Si no está casado el pareja/preso pareja con quien vive.

4.  Padre(s) del paciente/preso.

5.  El hermano o (a) del paciente/preso.

6.  Un amigo cercano (alguien que demuestre que lo quiere y se preocupa por el paciente y el comité ético del hospital.

7.  El doctor que lo está atendiendo en el hospital y el comité ético del hospital.

8.  El doctor del paciente con una segunda opinión.

Nadie lo puede obligar a llenar esta forma es su derecho y su decisión es completamente suya, puede hablar con alguien que sea de su completa confianza antes que decida qué es lo que va a hacer.

Ya que llene la forma (DECISIONES DE CUIDADO DE SALUD) si usted decide hacer algún cambio lo puede hacer en cualquier momento.

Solamente necesita comunicárselo a su Oficial de Correcciones II (CO II) para hacer estos cambios.

## ATTACHMENT B

### Definitions of Medical Care Directive Forms

1.  Living Will (End of Life Care):

This form allows you to tell *medical personnel* how you wish to be cared for in the event you have a terminal illness, go into an irreversible coma, and/or are diagnosed as being in a persistent vegetative state. It puts in writing your medical decisions so the doctors can treat you according to your personal choices.  It allows you to specifically tell doctors what choices you have made for yourself even if you cannot communicate verbally.

2.  Durable Health Care Power of Attorney:

This form is used if you wish to select a person, *other than another inmate*, to make future health care decisions for you if you become too ill and cannot communicate those decisions for yourself.  The person you choose should be someone you trust who can make these decisions when you are unable to do so, then the State makes the choice by a list set forth in the Arizona statues. (see Attachment A, WHO DECIDES? / QUIEN DECIDES?)

3.  Revocation of Medical Care Directives:

This form is used to allow you to revoke or modify any or all of the Medical Care Directives you have provided. You are permitted at any time to change directives presently in place or add or change any directives not presently chosen.

<u>NOTE</u>:  THESE FORMS DO NOT APPLY TO SITUATIONS INSIDE OF THE INSTITUTIONS WHERE STAFF MAY HAVE TO RENDER AID TO AN INMATE ATTEMPTING SELF-HARM OR WHO MAY HAVE BEEN THE VICTIM OF AN ASSAULT OR ACCIDENT CAUSING INJURY.