Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1696
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-ROS<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE (DKT. 3235)** |

Plaintiffs' Response to Defendants' Notice of Compliance with Court Order and Defendants' Response to the Order to Show Cause (the "Response," Dkt. 3352) fails to establish that this Court may enforce the Stipulation through contempt. Instead, Plaintiffs repeat the same flawed arguments in support of the proposed sanctions, which (again) miss the mark. Quite simply, the Stipulation is not a court order or a consent decree, and therefore, cannot be enforced through contempt. Plaintiffs' reliance on *Parsons v. Ryan*, 912 F.3d 486 (9th Cir. 2018), does not change this analysis because it did not determine either that (1) the Stipulation is a consent decree or court order, or (2) the Stipulation may be enforced through contempt. In addition, Plaintiffs fail to refute that the sanctions proposed in the May 5, 2019 Order to Show Cause (the "Order") are not compensatory,

and Plaintiffs' argument that the proposed sanctions are coercive in nature ignores pertinent standards and relies upon inapplicable case law. Moreover, Plaintiffs have failed to disprove that Defendants took all reasonable steps to comply with the Order. For these reasons, as further detailed below, the Court should not hold Defendants in contempt or order the proposed sanctions.[1] The Court should also dismiss out of hand Plaintiffs' request to appoint a receiver to manage ADC's healthcare services.

## I. THE COURT SHOULD NOT ORDER CONTEMPT SANCTIONS AGAINST DEFENDANTS.

### A. There Is No Valid Court Order Underlying The Proposed Contempt Sanctions.

Although district courts generally have contempt powers, that general authority does not permit the Court's imposition of the proposed sanctions here. As Plaintiffs acknowledge, to hold Defendants in contempt, the Court must first find a violation of a ***court order***. (Dkt. 3352 at 2:26-3:3.) *See* 18 U.S.C. § 401; *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994); *Spallone v. United States*, 493 U.S. 265, 276 (1990); *Stone v. City of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992). Absent a court order, the Court cannot exercise contempt power. Quite plainly, the Stipulation is ***not*** a court order.

To support their argument that this Court may enforce the Stipulation through contempt, Plaintiffs assert that the Ninth Circuit has already determined that this Court has contempt power and that the Stipulation is not a private settlement agreement. (Dkt. 3352, at 3:15-20, n.1.) This is false. *Parsons v. Ryan*, 912 F.3d 486 (9th Cir. 2018), did not decide, or even discuss, whether the Stipulation is a consent decree, or court order, or whether this Court can exercise contempt power to enforce the Stipulation. In *Parsons*, the Ninth Circuit reviewed several of Magistrate Judge Duncan's orders. *Id.* at 495-96. First, it overturned a ruling that the Stipulation precludes ordering Defendants to develop a general staffing plan. *Id.* at 497-99. In doing so, the court interpreted the Stipulation's

---

[1] Director Charles Ryan retired on September 13, 2019. Joe Profiri is currently the Acting Director of ADC.

2

limits on the district court's ability to order staffing increases; it did not discuss or interpret the Stipulation's other limits on the Court's enforcement authority, including the use of its contempt power. *Id.* at 497-99. Second, the court upheld an order requiring Defendants to use community healthcare services as needed to meet their obligations under the Stipulation. *Id.* at 499-501. The court determined this second order did not "change the threshold for substantial compliance" under the Stipulation because "it does not change what constitutes compliance for purposes of avoiding judicial enforcement." *Id.* at 500.[2] Again, it did not discuss either the proper categorization of the Stipulation, or the broader limits on, or extent of, the district court's enforcement authority. *Id.* at 500-01. Third, the court overturned a ruling interpreting the Stipulation's "close custody" subclass and determined Magistrate Judge Duncan impermissibly altered that definition. *Id.* at 503-05. However, that determination again did not discuss either the limits of the district court's enforcement authority or the categorization of the Stipulation. *Id.*

In short, the *Parsons* decision did not conclusively determine that the Stipulation is a consent decree or enforceable through contempt, and it did not discuss whether the Stipulation is a consent decree or court order, or incorporated into one. Indeed, such a discussion was not necessary for the court to reach its conclusions. In addition, *Parsons* does not discuss or interpret the extent of the district court's enforcement authority (other than discrete limitations not relevant here), what "all remedies provided by law" includes, or whether the district court has contempt authority to enforce the Stipulation. Nothing in *Parsons* supports Plaintiffs' assertion that this Court has unlimited enforcement authority, including contempt authority. The law makes clear that certain prerequisites (namely, a court order) must be met.

In fact, whether the Stipulation is a private settlement agreement or consent decree, and whether this Court may enforce the Stipulation through contempt, are issues currently pending before the Ninth Circuit in Appeal No. 18-16358. Oral argument in that appeal is

---

[2] The court also held that the second order complied with 18 U.S.C. § 3626(a)(1)(A). *Parsons*, 912 F.3d at 501.

3

1  set for September 24, 2019.  The determination of these issues is critical to the question of
2  whether a finding of contempt and the sanctions proposed are legitimate or appropriate.

3            **B.**       **The Proposed Sanctions are Criminal Contempt.**

4         Plaintiffs fail to refute that the proposed $50,000 per-PM, per-facility sanction is
5  not compensatory.  As a result, if the proposed sanctions are to be considered civil, they
6  must be coercive.  *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983).
7  However, if the proposed sanctions are intended to be coercive, Defendants must be given
8  an opportunity to purge the contempt through compliance with the order.  *See Bagwell*,
9  512 U.S. at 829; *Shell Offshore*, 815 F.3d at 629; *Falstaff Brewing*, 702 F.3d at 778.
10 Defendants will not be given any opportunity to purge here; once the proposed sanctions
11 are imposed, the noncompliance will have occurred more than three months prior.  At that
12 time, Defendants will have no opportunity to remedy their noncompliance.  Whether
13 contempt sanctions are criminal or civil is determined at the time contempt is ***enforced***.
14 *Shell Offshore*, 815 F.3d at 630.

15        The fact that the Court prospectively announced the fines does not change this
16 determination.  *See Bagwell*, 512 U.S. at 836 ("the fact that the trial court announced the
17 fines before the contumacy, rather than after the fact, does not in itself justify respondents'
18 conclusion that the fines are civil or meaningfully distinguish these penalties from the
19 ordinary criminal law").  Plaintiffs attempt to minimize this fact by asserting that the
20 Court's Order to Show Cause "was prospective and conditional" and "placed Defendants
21 on notice that they could be fined for future noncompliance."  (Response at 6:2-21.)
22 However, Plaintiffs' argument ignores *Bagwell* and mischaracterizes *Shell Offshore*.  In
23 *Bagwell*, the Supreme Court found that contempt sanctions imposed pursuant to a
24 prospective fine schedule, which announced the fines applicable to any future violations
25 of an injunction, were criminal contempt and rejected the argument that they were
26 coercive civil contempt, in part, because the contemnor "had no opportunity to purge [the
27 fines] once imposed."  512 U.S. at 836-37.  To the contrary, in *Shell Offshore*, the Ninth
28 Circuit entered a preliminary contempt order imposing sanctions pursuant to a fine

4

1 schedule, but conditioned the sanctions upon the contemnor's noncompliance with an injunction.[3] 815 F.3d at 627. The preliminary contempt and related sanctions were coercive civil contempt because "[f]urther accrual of the conditional fines could have been avoided by [contemnor] at any time." *Id.* at 630. The situation here is identical to that in *Bagwell*, not *Shell Offshore*. The proposed sanctions, when imposed, will be imposed multiple months after the asserted noncompliance occurred, and Defendants will have no opportunity to purge. Therefore, the proposed sanctions are not coercive civil contempt.

In addition, to be coercive, the sanction must not be punitive—i.e. it cannot be intended to punish Defendants for a past wrong. *See Shell Offshore*, 815 F.3d at 629; *Falstaff Brewing*, 702 F.2d at 799 (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911)) ("a coercive sanction cannot undo or remedy what has been done") (internal quotations omitted). The proposed sanctions here can only be construed as punishment for Defendants' past noncompliance with the Stipulation. Plaintiffs claim that Defendants failed to provide any legal authority supporting that the proposed sanctions are criminal because the court relied on past noncompliance in issuing the Order. (Dkt. 3352, at 5:27-6:1.) That is untrue. In fact, Defendants provided multiple cases supporting the position that a fine imposed for past noncompliance is criminal. *See Shell Offshore*, 815 F.3d at 629 (cited at Dkt. 3339, 5:7); *Falstaff Brewing*, 702 F.2d at 799 (cited at Dkt. 3339, 5:7-8) (citation and internal quotations omitted).

Plaintiffs' argument regarding Defendants' reporting time for compliance, as dictated by the Stipulation, falls flat. Plaintiffs attempt to minimize the fact that the proposed sanctions are punitive by asserting that Defendants' compliance with the Stipulation is measured retrospectively.[4] (Dkt. 3352 at 6:22-7:15.) However, the speed

---

[3] Notably, in both *Bagwell*, 512 U.S. at 823-24, and *Shell Offshore*, 815 F.3d at 627, the contempt sanctions were imposed for violation of a ***court-ordered*** injunction. There is no court-ordered injunction or other court order at issue here.

[4] Plaintiffs' reliance on *Shell Offshore* is misplaced. In *Shell Offshore*, the question was whether the contempt sanctions were compensatory or coercive, not whether they were civil or criminal. 815 F.3d at 628. Moreover, as noted above, in *Shell Offshore*, the court prospectively imposed the coercive civil sanctions against the contemnor. *Id.* at 627.

5

with which Defendants report their compliance with the Stipulation has no effect on the determination of whether the proposed sanctions are punitive. To determine whether contempt and related sanctions are civil or criminal, courts look to the character and the purpose of the order awarding them. *Shell Offshore*, 815 F.3d at 629; *Falstaff Brewing*, 702 F.2d at 778. The question is "what does the court primarily seek to accomplish by imposing the sanction?" *Shell Offshore*, 815 F.3d at 629. The Order to Show Cause indicates that the proposed sanctions are intended to punish Defendants for past noncompliance, not to spur future compliance. (*See, e.g.*, Dkt. 2898 [the proposed sanctions will be applied for PMs that "remain substantially noncompliant nearly one year after" the issuance of a prior contempt sanctions order]; Dkt. 3235 at 2-4 [the proposed sanctions will be applied for PMs that "have been [substantially noncompliant] for at least 3 of the last 6 months"]; *id*. at 4-5 [including fines for PMs at an entire facility because its performance "[f]or the last several years" has been "woefully deficient"].)

Again, this issue is directly before the Ninth Circuit in Appeal No. 18-16358. In that appeal, the Ninth Circuit must decide whether contempt sanctions substantially similar to those proposed here are civil or criminal.

**C. Defendants Took All Reasonable Steps to Comply with the Order.**

To avoid civil contempt, a defendant must have failed to take "all reasonable steps to comply with the order." *Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016). Plaintiffs assert, without legal authority, that "Defendants must present evidence that they explored or tried every reasonable alternative to provide the necessary services." (Response, at 8:11-13.) This is not the standard. Defendants have presented evidence that they took all reasonable steps to comply with the Order and that the reasons for the noncompliance are largely out of their (or their healthcare contractors') control. (*See* Dkt. 3339 at 7:8-8:16, 9:12-10:20.) As a result, the Court should find that Defendants took all reasonable steps to comply with the Order and, on that basis, should not impose the proposed contempt sanction.

Moreover, should the court desire (or require) more evidence of Defendants' attempts to comply with the Order, the Court should give Defendants an opportunity to present evidence at a hearing to establish that they did take all reasonable steps to comply. (*See* Dkt. 3339 at 8:11-16.)

## II.     THE COUNT CANNOT AND SHOULD NOT CONSIDER THE APPOINTMENT OF A RECEIVER.

The Court ordered Defendants to show cause as to why they should not be held in civil contempt for failing to comply with 21 performance measures at four facilities. (Dkt. 3235.) In their Response to Defendants' filing, Plaintiffs make a cursory request—unsupported by any legal analysis—to appoint "a receiver to manage ADC's delivery of health care services to class members." (Dkt. 3352 at 3.) The Court should reject this suggestion out of hand for several reasons.

As Plaintiffs are keenly aware, receivers are appointed to coerce compliance with a ***court order***. *See*, *e.g.*, *Inmates of D.C. Jail v. Jackson*, 158 F.3d 1357, 1358 (D.C. Cir. 1998); *Morgan v. McDonough*, 540 F.2d 527, 533 (1st Cir. 1976); *Plata v. Schwarzenegger*, C01-1351 TEH, 2005 WL 2932253, at *22 (N.D. Cal. Oct. 3, 2005); *Dixon v. Barry*, 967 F. Supp. 535, 550 (D.D.C. 1997); *Shaw v. Allen*, 771 F. Supp. 760, 762 (S.D. W.Va. 1990); *Newman v. State of Ala.*, 466 F. Supp. 628, 635 (M.D. Ala. 1979). Plaintiffs request a receiver to coerce compliance with the Stipulation, but the Stipulation is not a court order. (*See* Dkt. 1185, ¶ 35 ["The parties agree that this Stipulation shall not be construed as a consent decree."].) It is a voluntary settlement agreement. The Court has already rebuffed Plaintiffs' suggestion that it has the authority to appoint a receiver:

> I don't know that I have the authority to appoint a receiver federally. I haven't looked carefully at that yet. It seems to me that I would -- everything that I have seen is there's been judgments and there has been consent orders issued. So I haven't really gotten into that. My impression is, is that if I were to appoint a receiver in the method and means that have been appointed in other cases, I would essentially be declaring that this stipulation hasn't been met. So I'm a little concerned about that. … The stipulation doesn't require or allow for appointment of a receiver. …

7

(Dkt. 3093 at 10.) It should do so again. A receiver cannot be appointed to coerce compliance with the Stipulation.

Even if the Court did have the power to appoint a receiver, Plaintiffs' request is both procedurally and factually improper. Both the Supreme Court and the Ninth Circuit have recognized—particularly in the prisoner litigation context—that a receiver is only appropriate to remedy an established constitutional violation. *See Brown v. Plata*, 563 U.S. 493, 511 (2011) ("Courts faced with the sensitive task of remedying unconstitutional prison conditions must consider a range of available options, including appointment of special masters or receivers and the possibility of consent decrees."); *Plata v. Schwarzenegger*, 603 F.3d 1088, 1093-94 (9th Cir. 2010) ("[R]eceiverships are recognized equitable tools available to the courts to remedy otherwise uncorrectable violations of the Constitution or laws."); *see also Plata*, 2005 WL 2932253, at *23 (appointing receiver to "remedy the violation of [inmates'] constitutional rights); *Shaw*, 771 F. Supp. at 764 (appointing receiver to ensure jail met "federal constitutional standards"); *Newman*, 466 F. Supp. at 630 (appointing a receiver to ensure prison meets "minimum constitutional standards").

Unlike these cases, the Court has never found that Defendants' noncompliance with the Stipulation's performance measures violated the constitutional rights of ADC inmates. Indeed, the performance measures are not a constitutional benchmark. A receiver cannot be considered until and unless Plaintiffs have proven, and the Court has found, a current, ongoing constitutional violation in need of correction. This Court has recognized as much already. (*See* Dkt. 3093 at 4 ["As I read the stipulation, that essentially would allow me to declare a breach of the stipulation and we would then set the matter for trial and I would resolve the underlying issues in the complaint. And if I found that there was a violation, in other words, that I would grant the request for the remedies, then there is the possibility, of course, like California has done, which makes no sense in this case, considering all the time that was spent, is that I would appoint a receiver, which is extraordinarily expensive."].)

Even then, a receiver is not automatic. "Receivership is a remedy of last resort." *Bracco v. Lackner*, 462 F. Supp. 436, 456 (N.D. Cal. 1978); *see also Plata*, 2005 WL 2932253, at *1 (acknowledging that appointing a receiver is a "drastic" action); *Dixon*, 967 F. Supp. at 550 (considering a receiver where it was "the only remedy left"). The extraordinary nature of a receiver demands significant procedural protections, for example, an order to show cause why a receiver should not be appointed and an evidentiary hearing. *Plata*, 2005 WL 2932253, at **1-2. And after considering all of the evidence, the Court must consider a variety of factors, including:

(1) whether there is a grave and immediate threat or actuality of harm to Plaintiffs;

(2) whether the use of less extreme measures of remediation have been exhausted or prove futile;

(3) whether continued insistence that compliance with the Court's orders would lead only to confrontation and delay;

(4) whether there is a lack of leadership to turn the tide within a reasonable period of time;

(5) whether there is bad faith;

(6) whether resources are being wasted; and

(7) whether a receiver is likely to provide a relatively quick and efficient remedy.

*Id*. at *23.

In short, Plaintiffs' demand is legally impermissible and procedurally and factually deficient. It also ignores the posture of this case. Last December, the Court said it was going to "take little steps for little feet" and appoint a Rule 706 expert. (Dkt. 3093 at 20.) That expert, Dr. Stern, has spent the last several months investigating the reasons certain performance measures have been consistently noncompliant. His report is forthcoming. Moreover, on September 13, 2019, Director Ryan retired. A new Director will soon be named. And, on July 1, 2019, Centurion took over the provision of healthcare to ADC inmates. These events could change the trajectory of this litigation. Defendants also note that their overall compliance with the Stipulation is not what Plaintiffs make it out to be.

Under the Stipulation, Defendants were required to comply with 103 healthcare performance measures. (Dkt. 1185-1, Ex. B.) Extrapolated out to each of the 10 facilities, Defendants had an obligation to monitor and report on 1,030 performance measures/facilities. The Court has terminated 140 performance measures/facilities, bringing the total number of remaining measures/facilities that must be monitored to 890. (Dkt. 2900 at 12-13.) The Court has issued two Orders to Show Cause, identifying only 47 chronically noncompliant performance measures/facilities. That is only 5% of the remaining 890 performance measures/facilities. (Dkt. 2373, 3235.) And of those 47 performance measures/facilities (involving only six facilities), the Court has found Defendants in contempt for noncompliance with only 19 of them, just 2% of the remaining 890 performance measures/facilities. (Dkt. 2898 at 21-23.) This does not resemble anything close to a "prison medical care system [that] is broken beyond repair." *Plata*, 2005 WL 2932253, at *1. And if Dr. Stern concludes that many of the remaining 890 performance measures/facilities should be terminated, as Defendants have argued (Dkt. 2900), the remaining performance measures/facilities can receive focused attention and resources.

## III. CONCLUSION

For the foregoing reasons, the Court should not impose any civil contempt sanctions against Defendants for noncompliance with the Order, nor should it consider Plaintiffs' request to appoint a receiver.

RESPECTFULLY SUBMITTED this 20th day of September, 2019.

                STRUCK LOVE BOJANOWSKI & ACEDO, PLC

                By /s/Daniel P. Struck
                    Daniel P. Struck
                    Rachel Love
                    Timothy J. Bojanowski
                    Nicholas D. Acedo
                    3100 West Ray Road, Suite 300
                    Chandler, Arizona  85226

                *Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com; docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Dietrich: | adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Ryan M. Kendall: | rkendall@aclu.org; ryankendall@ucla.edu |
| Molly Brizgys: | mbrizgys@acluaz.org |
| Marty Lieberman: | mlieberman@acluaz.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Daniel P. Struck