# EXHIBIT 1

No. _____

=================================================================

In The

# Supreme Court of the United States

———————— ◆ ————————

CHARLES L. RYAN, et al.,

*Petitioners,*

v.

SHAWN JENSEN, et al.,

*Respondents.*

———————— ◆ ————————

**On Petition For Writ Of Certiorari
To The United States Court Of Appeals
For The Ninth Circuit**

———————— ◆ ————————

**PETITION FOR WRIT OF CERTIORARI**

———————— ◆ ————————

NICHOLAS D. ACEDO
 *Counsel of Record*
DANIEL P. STRUCK
STRUCK LOVE BOJANOWSKI &
 ACEDO, PLC
3100 W. Ray Road, Suite 300
Chandler, Arizona 85226
(480) 420-1600
nacedo@strucklove.com

*Counsel for Petitioners*

=================================================================

COCKLE LEGAL BRIEFS (800) 225-6964
WWW.COCKLELEGALBRIEFS.COM

i

## QUESTIONS PRESENTED

1.   Did the Ninth Circuit—in direct conflict with the Seventh Circuit—erroneously fail to recognize that 28 U.S.C. § 636(c) precludes the parties from selecting a particular magistrate judge to preside over their conflict and that, when they do so, the magistrate judge does not obtain jurisdiction over the matter?

2.   Did the Ninth Circuit—contrary to the text of 18 U.S.C. § 3626(a)(1)(A), the purpose of the Prison Litigation Reform Act, and decisions of this Court and other circuit courts—err in holding that a court can order prospective relief in a civil action relating to prison conditions without first finding that the defendant actually violated the prisoner's federal rights?

ii

## PARTIES TO THE PROCEEDING

The Petitioners are Charles L. Ryan, Director of the Arizona Department of Corrections ("ADC"), and Richard Pratt, Assistant Director of ADC's Health Services Contract Monitoring Bureau. They were the Defendants below, sued in their official capacities.

The Respondents are Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, Charlotte Wells, and the Arizona Center for Disability Law ("ACDL"). The individual Respondents are ADC inmates. The ACDL is a non-profit law firm statutorily authorized to pursue legal remedies for individuals with disabilities. All Respondents were Plaintiffs below and brought the underlying action under 42 U.S.C. § 1983.[1]

---

[1] Victor Parsons and Dustin Brislan were also Plaintiffs below, but they were dismissed from the lawsuit prior to its disposition.

iii

# TABLE OF CONTENTS

Page

QUESTIONS PRESENTED ................................   i

PARTIES TO THE PROCEEDING......................   ii

TABLE OF CONTENTS .....................................   iii

TABLE OF AUTHORITIES................................   vi

PETITION FOR WRIT OF CERTIORARI...........   1

OPINIONS BELOW...........................................   3

STATEMENT OF JURISDICTION ....................   3

STATUTORY PROVISIONS...............................   3

STATEMENT OF THE CASE............................   4

   I.   Proceedings.............................................   4

        A.  District Court .....................................   4

        B.  Court of Appeals .................................   8

REASONS FOR GRANTING THE WRIT............   10

   I.   The Ninth Circuit's Holding Allowing Par-
ties to Choose Their Own Magistrate
Judge Conflicts with the Seventh Circuit's
Decision in *Hatcher* ...................................   10

  II.   The Ninth Circuit's Holding Allowing Pro-
spective Relief in a Prisoner Case Without
First Finding a Specific Constitutional Vi-
olation Contravenes the Text and Purpose
of the Prison Litigation Reform Act, and
the Decisions of This Court and Other Cir-
cuit Courts ................................................   16

CONCLUSION...................................................   22

iv

TABLE OF CONTENTS—Continued

Page

APPENDIX

Appendix A—United States Court of Appeals for the Ninth Circuit, Opinion, December 20, 2018 .................................................................. App. 1

Appendix B—United States District Court for the District of Arizona, Order, June 5, 2018 ........ App. 42

Appendix C—United States District Court for the District of Arizona, Order, May 19, 2018 ......... App. 45

Appendix D—United States District Court for the District of Arizona, Order, February 6, 2017 ............................................................... App. 47

Appendix E—United States District Court for the District of Arizona, Order, February 3, 2017 ............................................................... App. 56

Appendix F—United States District Court for the District of Arizona, Order, December 23, 2016 ............................................................... App. 58

Appendix G—United States District Court for the District of Arizona, Order, November 10, 2016 ............................................................... App. 65

Appendix H—United States District Court for the District of Arizona, Order Re: Settlement, February 18, 2015 ......................................... App. 72

Appendix I—United States District Court for the District of Arizona, Order, October 22, 2014 ............................................................... App. 74

v

TABLE OF CONTENTS—Continued

Page

Appendix J—United States Court of Appeals for the Ninth Circuit, Order Denying Petition for Rehearing, March 14, 2019 ............................ App. 76

Appendix K—Joint Motion to Refer, filed in the United States District Court for the District of Arizona ....................................................... App. 79

Appendix L—Stipulation, filed in the United States District Court for the District of Arizona................................................................ App. 84

Appendix M—Relevant Statutory Provisions.... App. 109

vi

## TABLE OF AUTHORITIES

Page

CASES

*Anderson v. Woodcreek Venture Ltd.*, 351 F.3d 911 (9th Cir. 2003)....................................................8

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) .......16

*Armstrong v. Schwarzenegger*, 622 F.3d 1058 (9th Cir. 2010).........................................................18

*Bradley v. Fisher*, 80 U.S. 335 (1871) ..........................1

*Brown v. Plata*, 563 U.S. 493 (2011)................2, 18, 20

*California v. LaRue*, 409 U.S. 109 (1972)...................13

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ...........10

*Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148 (9th Cir. 2004) ................................................................16

*Columbia Record Prods. v. Hot Wax Records, Inc.*, 966 F.2d 515 (9th Cir. 1992)............................14

*Hallett v. Morgan*, 296 F.3d 732 (9th Cir. 2002).........18

*Hatcher v. Consolidated City of Indianapolis*, 323 F.3d 513 (7th Cir. 2003)............................*passim*

*Hernandez v. City of El Monte*, 138 F.3d 393 (9th Cir. 1998) ..............................................................10

*Inmates of Suffolk Cty. Jail v. Rouse*, 129 F.3d 649 (1st Cir. 1997) ..................................................21

*Johnson v. Breeden*, 280 F.3d 1308 (11th Cir. 2002).....................................................................21

*Lewis v. Casey*, 518 U.S. 343 (1996)...........................17

vii

TABLE OF AUTHORITIES—Continued

Page

*M & I Marshall & Ilsley Bank v. McGill*, 2011 WL 2652569 (D. Ariz. June 30, 2011) .....................16

*Miller v. French*, 530 U.S. 327 (2000) .........................21

*Missouri v. Jenkins*, 515 U.S. 70 (1995).....................17

*Nasca v. Peoplesoft*, 160 F.3d 578 (9th Cir. 1998).........8

*Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.*, 725 F.2d 537 (9th Cir. 1984) .........2

*Parker v. Glacier Water Servs.*, 2014 WL 5781209 (D. Ariz. Nov. 6, 2014)..............................................16

*Parsons v. Ryan*, 289 F.R.D. 513 (D. Ariz. 2013), *aff'd*, 754 F.3d 657 (9th Cir. 2014)............................4

*Plata v. Schwarzenegger*, 603 F.3d 1088 (9th Cir. 2010) .......................................................................19

*Plyler v. Moore*, 100 F.3d 365 (4th Cir. 1996) .......18, 20

*Reynaga v. Cammisa*, 971 F.2d 414 (9th Cir. 1992) .........................................................................8

*Roell v. Withrow*, 538 U.S. 580 (2003)................7, 9, 10

*Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367 (1992)...................................................................17

*Ruiz v. Estelle*, 161 F.3d 814 (5th Cir. 1998) ...............2

*Standing Comm. on Discipline of U.S. D. Ct. v. Yagman*, 55 F.3d 1430 (9th Cir. 1995) ...............1, 10

*Tyler v. Murphy*, 135 F.3d 594 (8th Cir. 1998) .....18, 20

viii

TABLE OF AUTHORITIES—Continued

Page

*Webb v. Goord*, 340 F.3d 105 (2d Cir. 2003)...............21

*Williams v. Edwards*, 87 F.3d 126 (5th Cir. 1996) .................................................................. 18, 20

STATUTES

18 U.S.C. § 3626(a)(1) ..................................................2

18 U.S.C. § 3626(a)(1)(A) ...................................*passim*

18 U.S.C. § 3626(b)(1) ................................................21

18 U.S.C. 3626(b)(3) ...................................................21

28 U.S.C. §§ 631-39 ...................................................10

28 U.S.C. § 636(c) ................................................*passim*

28 U.S.C. § 636(c)(1)........................................3, 10, 13

28 U.S.C. § 636(c)(4).....................................................7

28 U.S.C. § 1254(1).......................................................3

RULES AND REGULATIONS

Civil Rule 23(e) ......................................................5, 19

Civil Rule 73 ................................................................5

Civil Rule 73(b)(3).......................................................7

District of Arizona Local Rule 72.2(a)(13) ...........15, 16

District of Arizona Local Rule 73.1(b).......................16

District of Arizona Local Rule 73.1(d) ......................16

ix

TABLE OF AUTHORITIES—Continued

Page

OTHER AUTHORITIES

H.R. Rep. No. 104-21 (1995) .................................18, 20

1

**PETITION FOR WRIT OF CERTIORARI**

Judicial independence is indispensable to the administration of justice. *Bradley v. Fisher*, 80 U.S. 335, 356 (1871). That independence is breached when the parties have a hand in selecting their judge, even mutually. Here, the Ninth Circuit allowed the parties to choose the particular magistrate judge who was to handle their case, despite 28 U.S.C. § 636(c)'s requirement that a magistrate judge be selected by the court and the universal condemnation of judge-shopping. *See Standing Comm. on Discipline of U.S. D. Ct. v. Yagman*, 55 F.3d 1430, 1443 (9th Cir. 1995) ("Judge-shopping doubtless disrupts the proper functioning of the judicial system.").

The Ninth Circuit's holding directly conflicts with the Seventh Circuit's decision in *Hatcher v. Consolidated City of Indianapolis*, which held that the parties' consent to a particular magistrate judge is ineffective as a matter of law and does not grant any jurisdiction under § 636(c) to the selected magistrate. 323 F.3d 513, 519-20 (7th Cir. 2003). The Seventh Circuit correctly recognized that "magistrate judge assignment is a matter for the court to decide, not the parties," and allowing the parties to "pick the magistrate judge who [is] to handle their case" constitutes improper "judge-shopping." *Id*. at 518-19.

This Court should grant the Petition to resolve this circuit split and restore the judiciary's independence. Moreover, because the transfer of jurisdiction to a magistrate judge involves a "component of the

2

separation of powers rule that protects the integrity of the constitutional structure," *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.*, 725 F.2d 537, 543-44 (9th Cir. 1984) (Kennedy, J.), the question is of exceptional importance that should be settled by this Court.

The second question presented here is equally important. The Prison Litigation Reform Act "reflect[s] Congress's concern to limit judicial enforcement of obligations that arise out of [an] agreement of the parties" and to "limit the relief which can be afforded." *Ruiz v. Estelle*, 161 F.3d 814, 825 (5th Cir. 1998). To that end, the Act limits the scope of prospective relief that courts may grant and imposes strict requirements on courts before doing so. One requirement is that a court must first find an actual and proven constitutional violation and then certify that the prospective relief is necessary to correct that violation. 18 U.S.C. § 3626(a)(1).

Here, the Ninth Circuit upheld an order of prospective relief against the Petitioners without any actual finding that they had violated anyone's constitutional rights. The district court had only found that the relief was necessary to correct an entirely unidentified violation, and the Ninth Circuit held that that was good enough. In doing so, it effectively authorized district courts to flout Congress's statutory directive and has allowed them to order prospective relief with no cognizable purpose or limitation. That holding cannot be reconciled with *Brown v. Plata*, 563 U.S. 493, 531 (2011), which held that the scope of

3

prospective relief *must* be determined with reference to an established constitutional violation, or the decisions of at least three other circuit courts. This Court should grant certiorari, or alternatively summarily reverse, to correct the Ninth Circuit's flouting of Congress's mandate.

———————◆———————

**OPINIONS BELOW**

The Ninth Circuit's opinion is reported at 912 F.3d 486 (9th Cir. 2018). Appendix A. The district court's orders are unreported but available at 2018 WL 6418611 and 2017 WL 476598. Appendix B, C, D.

———————◆———————

**STATEMENT OF JURISDICTION**

The Ninth Circuit issued its opinion on December 20, 2018. It denied the Petitioner's timely petition for panel rehearing and rehearing en banc on March 14, 2019. Appendix J. This Court has jurisdiction under 28 U.S.C. § 1254(1).

———————◆———————

**STATUTORY PROVISIONS**

28 U.S.C. § 636(c)(1) and 18 U.S.C. § 3626(a)(1)(A) are included in Appendix M.

———————◆———————

4

## STATEMENT OF THE CASE

### I.   Proceedings.

#### A.  District Court.

In March 2012, the Plaintiffs-Respondents filed this class-action lawsuit on behalf of all ADC inmates, alleging that the Defendants-Petitioners failed to provide adequate healthcare and exposed them to unlawful conditions of confinement, in violation of the Eighth Amendment. Dkt. 1. The Respondents sought declaratory and injunctive relief. *Id*. The district court certified a class (healthcare allegations) and a subclass (conditions-of-confinement allegations) in March 2013. *See Parsons v. Ryan*, 289 F.R.D. 513 (D. Ariz. 2013), *aff'd*, 754 F.3d 657 (9th Cir. 2014).

On the eve of trial, in October 2014, the parties entered into a settlement agreement ("Stipulation"), whereby the Petitioners agreed to comply with more than one hundred performance measures for a conditional period of time. App. 87-90. In the Stipulation, the Petitioners "den[ied] all the allegations in the Complaint," and the parties agreed that the Stipulation "d[id] not constitute and shall not be construed or interpreted as an admission of any wrongdoing or liability by any party." App. 87. At no time did the Petitioners admit, and at no time did the district court find, a violation of any class member's constitutional rights.

In the Stipulation, the parties "consent[ed] to the reservation and exercise of jurisdiction by the District Court over all disputes between and among the parties

5

arising out of this Stipulation," although they expressly agreed that the "Stipulation shall not be construed as a consent decree." App. 102. The district court nonetheless had the "power to enforce this Stipulation through all remedies provided by law," subject to several exceptions. App. 103. At the time, District Judge Diane J. Humetewa was the Article III judge assigned to the case (Dkt. 1074), and Magistrate Judge Mark Aspey was the court-ordered magistrate referral (Dkt. 4).

Contemporaneous with the Stipulation, the parties filed a Joint Motion requesting "to have Magistrate Judge David Duncan conduct all further proceedings," pursuant to 28 U.S.C. § 636(c) and Civil Rule 73. App. 80-81. Magistrate Judge Duncan had been involved in the settlement negotiations, and thus the parties wanted him to take over the proceedings because his participation in those negotiations "provide[d] him with a unique ability to effectuate the parties' intent in any future proceedings." *Id*. Indeed, the Stipulation already assigned Magistrate Judge Duncan certain discrete responsibilities (to resolve disputes regarding access to evidence and modification of a behavioral step program). App. 95, 99. District Judge Humetewa granted the Joint Motion and "reassign[ed] this matter to Magistrate Judge Duncan for all further proceedings." App. 74-75.

After providing notice to class members and a fairness hearing, Magistrate Judge Duncan approved the Stipulation, as required by Civil Rule 23(e). Dkt. 1458.

6

He also entered an order, titled Order Re: Settlement, which stated:

> Based upon the entire record in this case and the parties' Stipulation (Doc. 1185), the Court hereby finds that the relief set forth therein is narrowly drawn, extends no further than necessary to correct the violations of the Federal right, and is the least intrusive means necessary to correct the violations of the Federal right of the Plaintiffs.

App. 72-73. He entered that Order without ever finding a constitutional violation or identifying a federal right that was necessary to correct.

Magistrate Judge Duncan began monitoring the Stipulation in February 2015. Dkt. 1458. In November 2016, after finding that the Petitioners were not in compliance with several performance measures that required providing care within a certain timeframe, he ordered them to utilize community healthcare services (e.g., urgent-care facilities and hospitals) to ensure that the care was timely provided ("Outside-Provider Order"). App. 68-71. At the Respondents' request, Magistrate Judge Duncan amended the Outside-Provider Order and certified that it "extended no further than necessary to correct the violation of the Federal right, and was the least intrusive means necessary to correct the violation of the Federal right as required by 18 U.S.C. § 3626(a)(1)(A)." App. 53-54. The Petitioners appealed the Outside-Provider Order and the subsequent certification. Dkt. 1817, 1952.

7

In May 2018, Magistrate Judge Duncan informed the parties that he would be retiring from the court in June 2018. 9th Cir. Dkt. 110. As a result of that unexpected announcement, counsel for the Petitioners began researching its legal effect on the magistrate-judge referral. *Id*. In the course of that research, counsel discovered the *Hatcher* case, which holds that the parties' selection of a particular magistrate judge violates § 636(c) and thereby deprives the magistrate judge of jurisdiction. 323 F.3d at 519-20.

The Petitioners promptly brought the jurisdictional issue to the district court's attention and, pursuant to 28 U.S.C. § 636(c)(4) and Civil Rule 73(b)(3), moved to vacate the magistrate-judge referral. Dkt. 2825. They argued that the parties' hand-picked selection of Magistrate Judge Duncan was invalid under *Hatcher* and did not confer jurisdiction. *Id*.

The next day, Magistrate Judge Duncan issued a docket-text order "reject[ing] Defendants['] jurisdictional argument" and affirming all prior orders. App. 45-46. He ruled that his referral was valid because "the parties explicitly consented to the undersigned continuing to exercise jurisdiction over this action pursuant to 28 U.S.C. § 636(c)," and that there was no *binding* authority otherwise precluding his assignment. *Id*. District Judge Humetewa also issued an order, agreeing with Magistrate Judge Duncan that "*Hatcher* is factually and legally distinguishable," and adding that any jurisdictional challenge was foreclosed by *Roell v. Withrow*, 538 U.S. 580 (2003), because the parties had explicitly consented to jurisdiction. App. 42-44.

8

### B.  Court of Appeals.

When the Petitioners challenged Magistrate Judge Duncan's jurisdiction in the district court, their appeal from the Outside-Provider Order was pending in the Ninth Circuit. After Magistrate Judge Duncan and District Judge Humetewa denied their motion to vacate the referral, they moved to dismiss the appeal, as well as two other consolidated appeals challenging Stipulation-enforcement orders (Appendix E, F), for lack of magistrate-judge jurisdiction.[2] 9th Cir. Dkt. 110.

The Ninth Circuit panel denied the motion to dismiss, holding that Magistrate Judge Duncan's jurisdiction was proper, and affirmed the Outside-Provider Order and certification. Appendix A. Regarding jurisdiction, the court held that all of § 636(c)'s predicate requirements were satisfied: (1) the parties gave their express, voluntary consent to magistrate jurisdiction, and (2) the district court "specially designated" Magistrate Judge Duncan to serve as the magistrate judge. App. 10. The court purported to distinguish *Hatcher* on the grounds that it was technically District Judge Humetewa, not the parties, who referred the case to Magistrate Judge Duncan. App. 10-11. In other words, it

---

[2] The Ninth Circuit's appellate jurisdiction turned on whether Magistrate Judge Duncan had jurisdiction to issue the rulings challenged in the consolidated appeals. *Anderson v. Woodcreek Venture Ltd.*, 351 F.3d 911, 911 (9th Cir. 2003). If Magistrate Judge Duncan did not have jurisdiction, then all of his rulings were void, and the Ninth Circuit did not have appellate jurisdiction. *Nasca v. Peoplesoft*, 160 F.3d 578, 580 (9th Cir. 1998); *Reynaga v. Cammisa*, 971 F.2d 414, 417 (9th Cir. 1992).

9

was the order granting the parties' Joint Motion that effectuated the referral to him, not the parties' specific request.[3] *Id*.

Regarding the certification of the Outside-Provider Order, the court held that the certification—and therefore prospective relief—was valid because Magistrate Judge Duncan "necessarily" found a constitutional violation when he approved the Stipulation and issued the Order Re: Settlement. App. 23. And, the court held, because he issued the Outside-Provider Order to remedy "the same constitutional violations upon which the Stipulation rests," he was not required to make new findings of a constitutional violation.[4] App. 23-24.

———————◆———————

———————

[3] The Ninth Circuit did not adopt District Judge Humetewa's ruling that *Roell* foreclosed the Petitioners from challenging jurisdiction, or the Respondents' similar argument that the Petitioners waived any jurisdictional challenge.

[4] Judge Callahan dissented from the majority's decision to affirm the Outside-Provider Order, believing that it improperly modified the terms of the Stipulation. App. 39-40. Although she did not comment on the propriety of the certification in that dissent, she voted to "grant the petition [for panel rehearing and rehearing en banc] in part." App. 77. The rehearing order did not provide any further comment (*id.*), but the petition for rehearing challenged the panel's magistrate-jurisdiction holding, as well as the majority's prospective-relief certification holding and its holding pertaining to another (staffing) order, 9th Cir. Dkt. 117-1.

10

## REASONS FOR GRANTING THE WRIT

### I.   The Ninth Circuit's Holding Allowing Parties to Choose Their Own Magistrate Judge Conflicts with the Seventh Circuit's Decision in *Hatcher*.

The Federal Magistrates Act governs the jurisdiction and authority of federal magistrate judges. 28 U.S.C. §§ 631-39. Section 636(c)(1) authorizes a magistrate judge to "conduct any or all proceedings" in a civil matter, but only if (1) the parties consent and (2) the magistrate judge is "specially designated to exercise such jurisdiction *by the district court*" that he or she serves. (Emphasis added.) A magistrate judge lacks jurisdiction unless both criteria are met: there must be consent by the parties and the court's special designation. *Roell*, 538 U.S. at 582.

The reason for requiring the court, not the parties, to select the magistrate judge who is to proceed under § 636(c) is obvious: to prevent the parties (or a party) from engaging in judge-shopping, which "doubtless disrupts the proper functioning of the judicial system[.]" *Yagman*, 55 F.3d at 1443. "Judge-shopping clearly constitutes 'conduct which abuses the judicial process.'" *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)).

Applying these precepts in a factually similar case, the Seventh Circuit in *Hatcher* held that parties *cannot* select their magistrate judge. *Hatcher*, like this case, was a civil-rights lawsuit against government

11

officials. 323 F.3d at 514. And, similar to this case, the parties specified in their settlement agreement that a particular magistrate judge would resolve an outstanding attorneys'-fees issue. *Id*. The plaintiff appealed because the district judge, not the magistrate judge, made the final attorneys'-fees award. *Id*. The plaintiff argued that the parties had validly consented to the magistrate judge's jurisdiction, which precluded the district judge from ruling. *Id*. Despite consenting to the magistrate judge, the defendants countered that the form of the parties' consent to the magistrate judge was inadequate under § 636(c). *Id*.

The Seventh Circuit held that there was "nothing wrong" with the form of the parties' consent, but it *sua sponte* found a "more serious problem" with the referral—the parties' hand-picked selection of the magistrate judge:

> That problem has to do with the difference between consenting to referral of a case to "a" magistrate judge, as opposed to consenting only to referral to a specific named magistrate judge whom the parties have hand-picked. The Settlement Agreement purported to choose one particular magistrate judge from among those serving in the Southern District of Indiana. As the district court docket sheet reflects, Magistrate Judge Shields was not the original magistrate judge assigned to this case through the district court's routine assignment procedures. When asked about the referral to a specific magistrate judge at oral arguments, Hatcher's lawyer freely admitted

12

that the parties chose Magistrate Judge
Shields because "both parties knew her and
recognized her as to be a competent person to
resolve it [the dispute] and that was the pur-
pose behind" choosing her.

*Id.* (alteration in original). The court held that, under
these circumstances—i.e., "the [parties'] selection of a
particular magistrate judge"—"the consent [under
§ 636(c)] is ineffective" and "the reference cannot be
carried out." *Id.* at 519-20.

The Seventh Circuit provided two reasons for this
prohibition. First, "the general rule that one may not
choose one's judge in federal court should not have an
exception for magistrate judges." *Id.* at 519. "[N]o one
would think of arguing that parties had the right to
select a particular district judge," and there is "no dis-
tinction between the position of the magistrate judges
for this purpose and the position of any other judicial
officers exercising power in the federal courts." *Id.* at
518. The court refused to endorse a scheme that al-
lowed the parties to "shop among a district court's
magistrate judges" and "disregard[] the assignment
procedures otherwise used in that district court for al-
locating work to the magistrate judges." *Id.* at 517-18.

Second, the plain language of § 636(c) does not
"provide for the parties' choice of a specific magistrate
judge." *Id.* at 518. It would be inappropriate to construe
§ 636(c) "to allow parties to designate a magistrate
judge independently of the district court's procedures
for magistrate assignment." *Id.* "The language in the
statute that indicates that the magistrate judge may

13

exercise her power 'when specially designated to exercise such jurisdiction by the district court or courts' is inconsistent with a rule permitting the parties effectively to make that designation." *Id*. at 519 (quoting 28 U.S.C. § 636(c)(1)).

Thus, under *Hatcher*, parties cannot "pick the magistrate judge who [is] to handle their case." *Id*. at 518. To do so violates § 636(c) and amounts to improper judge-shopping. This conclusion is legally sound. The plain language of the statute clearly allows only the "district court" to designate the magistrate judge. 28 U.S.C. § 636(c)(1). "This can mean only that it is the court, and not the parties, that has the power to confer general or specific duties upon an individual magistrate judge." *Hatcher*, 323 F.3d at 518; *accord California v. LaRue*, 409 U.S. 109, 112 n.3 (1972) ("Parties may not confer jurisdiction . . . by stipulation.").

The parties' selection of Magistrate Judge Duncan in this case is nearly identical to the impermissible selection of Magistrate Shields in *Hatcher*. The parties in *Hatcher* executed a settlement agreement and, as part of that agreement, they hand-picked the magistrate judge to resolve an issue corollary to that agreement. 323 F.3d at 514-15. Here, the parties executed a settlement agreement and, as part of that agreement, they hand-picked Magistrate Judge Duncan to resolve all disputes arising out of that agreement. In both cases, neither magistrate judge was randomly selected through the court's routine assignment procedures. *Id*. at 516, 519. These material, common facts should have compelled a uniform application of *Hatcher*.

14

The Ninth Circuit purported to distinguish *Hatcher*, but its decision cannot be reconciled with the Seventh Circuit's. The Ninth Circuit upheld the referral to Magistrate Judge Duncan because of District Judge Humetewa's written order reassigning him the case. But that elevates form over substance. It places too much emphasis on the formal *referral* or *designation* that triggers the statutory transfer of jurisdiction to a magistrate judge. And it ignores *Hatcher*'s concern with the *selection* of a *particular* magistrate judge designated to carry out § 636(c) functions.

It goes without saying that parties have no ability—no power—to actually assign judges to their cases. Assignment of a judge or magistrate judge is a court function, and an order is necessary to effectuate the change. An individual district judge is generally the one who makes the magistrate referral. *Columbia Record Prods. v. Hot Wax Records, Inc.*, 966 F.2d 515, 517 (9th Cir. 1992). Here, District Judge Humetewa's order directing the clerk to reassign the matter to Magistrate Judge Duncan effectuated the formal transfer of jurisdiction.

But in doing so, District Judge Humetewa also reassigned the case to the magistrate judge *hand-picked by the parties*. *Hatcher* forbids parties from "pick[ing] the magistrate judge who [is] to handle their case." 323 F.3d at 518. The *parties* are the ones who have hand-picked their magistrate judge, even when the district judge endorses or ratifies their selection. Indeed, in *Hatcher*, the district judge "was advised of the decision of the parties and seemed to endorse the referral." *Id*.

15

at 515-16. The Seventh Circuit still vacated the referral because the parties made the particular selection. *Id*. at 518-19.

That is precisely what happened here. District Judge Humetewa merely granted the parties' request to reassign the case to the magistrate judge whom they had selected. In other words, she ratified the parties' conditioned consent to "their own chosen magistrate." *Id*. at 518. Under *Hatcher*, that is forbidden. *See id*. at 519 (holding that § 636(c) does not "permit[] the parties [to] *effectively* . . . make that designation") (emphasis added); *id*. at 518 (refusing to endorse parties' attempt to choose their own magistrate judge). Indeed, District Judge Humetewa only ordered the reassignment to Magistrate Judge Duncan because the parties had asked her to do so. His involvement had already been preordained by the Stipulation. App. 95, 99. Thus, the Ninth Circuit allowed what *Hatcher* prohibited. It did not distinguish *Hatcher*, as it claimed. Instead, its decision directly conflicts with *Hatcher*.[5]

———————

[5] The Ninth Circuit attempted to support its jurisdictional endorsement with District of Arizona Local Rule ("LRCiv") 72.2(a)(13)—which allows a referral under § 636(c) "when a case is initially assigned to a District Judge and thereafter the case is reassigned to a Magistrate Judge *with the District Judge's approval*." (Emphasis added.) The court construed that Local Rule as allowing a district judge to reassign a matter to a magistrate judge of his or her own choosing. Even if that were true (and it is not), District Judge Humetewa did not assign the matter to a magistrate judge of her own choosing. She instead rubber-stamped the parties' selection. Again, *Hatcher* holds that that is not allowed. [footnote continued on next page]

16

This Court should grant the writ and hold that Magistrate Judge Duncan lacked jurisdiction to proceed in this case.

**II.  The Ninth Circuit's Holding Allowing Prospective Relief in a Prisoner Case Without First Finding a Specific Constitutional Violation Contravenes the Text and Purpose of the Prison Litigation Reform Act, and the Decisions of This Court and Other Circuit Courts.**

As a general matter, "[t]he scope of injunctive relief is dictated by the extent of the violation established." *Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148, 1153 (9th Cir. 2004) (quoting *Armstrong v. Davis*, 275

---

In any event, the Ninth Circuit misconstrued LRCiv 72.2(a)(13). The *selection* of magistrate judges for purposes of § 636(c) is prescribed by LRCiv 73.1(d), and requires the *clerk* to assign a magistrate judge by "automated random selection." It further requires that the magistrate judge be selected "in such a manner so that neither the Clerk nor any parties or their attorneys shall be able to make a deliberate choice for a particular case." *Id*. Thus, even the selection of a magistrate judge reassigned under LRCiv 72.2(a)(13) must occur by random automated selection. The "District Judge's approval" (referenced in LRCiv 72.2(a)(13)) simply effectuates the formal reassignment. *See* LRCiv 73.1(b) (no reassignment unless "the District Judge has determined that the case should be reassigned to a Magistrate Judge"). Indeed, in practice, the clerk randomly reassigns the matter to a magistrate judge; neither the district judge nor the parties make that selection. *See*, *e.g.*, *Parker v. Glacier Water Servs.*, 2014 WL 5781209, at *1 n.1 (D. Ariz. Nov. 6, 2014); *M & I Marshall & Ilsley Bank v. McGill*, 2011 WL 2652569, at *1 (D. Ariz. June 30, 2011).

17

F.3d 849, 870 (9th Cir. 2001) (quoting *Lewis v. Casey*, 518 U.S. 343, 359 (1996))); *accord Missouri v. Jenkins*, 515 U.S. 70, 88 (1995) (holding that a remedy "is to be determined by the nature and scope of the constitutional violation"). Another indisputable proposition is that "[f]ederal courts may not order States or local governments, over their objection, to undertake a course of conduct not tailored to curing a constitutional violation that has been adjudicated." *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 389 (1992).

In prisoner litigation, Congress further narrowed the scope of prospective relief available to courts by enacting the Prison Litigation Reform Act ("PLRA"):

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. § 3626(a)(1)(A). Congress's intent behind this provision is clear:

> By requiring courts to grant or approve relief constituting the least intrusive means of curing an actual violation of a federal right, the provision stops judges from imposing remedies intended to effect an overall

18

> modernization of local prison systems or pro-
> vide an overall improvement in prison condi-
> tions. The provision limits remedies to those
> necessary to remedy the proven violation of
> federal rights.

H.R. Rep. No. 104-21, at 24 n.2 (1995). Thus, a prereq-
uisite for any prospective relief is the existence of an
"actual" and "proven" constitutional violation. *Id.*

This Court recognized that common-sense in-
terpretation in *Brown v. Plata*. In construing
§ 3626(a)(1)(A), it held that an order for prospective re-
lief "must be determined with reference to the consti-
tutional violations established by the specific plaintiffs
before the court." 563 U.S. at 531. So have the Fourth,
Fifth, and Eighth Circuits. *See Tyler v. Murphy*, 135
F.3d 594, 596 (8th Cir. 1998) ("The statute limits rem-
edies to those necessary to remedy the proven violation
of federal rights.") (internal quotation marks and cita-
tion omitted); *Plyler v. Moore*, 100 F.3d 365, 369 (4th
Cir. 1996) (same); *Williams v. Edwards*, 87 F.3d 126,
133 (5th Cir. 1996) ("[I]f [the district court] should find
a violation of a 'Federal right,' then any remedy it
might fashion must conform to the standards set forth
in the Act.").[6]

---

[6] Even the Ninth Circuit has recognized that § 3626(a)(1)(A)
"requires the existence of a constitutional 'violation' in need of
correction," *Hallett v. Morgan*, 296 F.3d 732, 743 (9th Cir. 2002),
and one that is predicated on findings of fact and conclusions of
law, *see Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th
Cir. 2010) (holding that a PLRA certification is sufficient if the
district court "has explained clearly the factual circumstances un-
derlying an order and its understanding of the relevant law as

19

The Ninth Circuit's decision diverges from these decisions and renders the PLRA toothless. In this case, there has never been a finding that the Petitioners violated any class member's constitutional rights. Two months before the Stipulation, the District Judge determined that there were issues of fact on all of the Respondents' claims and allegations. Dkt. 1065. A few weeks before the Stipulation, the parties filed their proposed final pretrial order, in which the Respondents acknowledged that their claims were contested. Dkt. 1162, 1162-2. In the Stipulation, the parties agreed that it did "not constitute and shall not be construed or interpreted as an admission of any wrongdoing or liability by any party." App. 102. From the date the parties signed the Stipulation to the date Magistrate Judge Duncan approved it (Dkt. 1458), there were no hearings on whether the Petitioners had committed a constitutional violation. In their motion to approve the Stipulation, the Respondents conceded that there was a "risk . . . that the fact-finder would not find the evidence comprehensive or compelling enough to meet the legal standard of proof for Eighth Amendment claims." Dkt. 1449. At the Rule 23(e) fairness hearing, the Respondents did not offer evidence of a constitutional violation, nor did Magistrate Judge Duncan find one. Dkt. 1458 at 8-48. In fact, he acknowledged that there had been no constitutional finding. *See* Dkt. 1458 at 2-3 ("[N]either plaintiffs nor defendants could say that

_____

applied to the facts"); *Plata v. Schwarzenegger*, 603 F.3d 1088, 1092 (9th Cir. 2010) (noting district court's predicate findings of fact and conclusions of law supporting underlying constitutional violation and PLRA certification).

20

such victories were a 'sure thing' in this case."). And at no point after the Stipulation's approval has there ever been a finding that the Petitioners violated a federal right.

In upholding the Outside-Provider Order, the Ninth Circuit nonetheless concluded that Magistrate Judge Duncan must have found a constitutional violation somewhere (and somehow) because in approving the Stipulation, he signed the Order Re: Settlement that stated "that the relief set forth therein . . . extends no further than necessary to correct the violations of the Federal right." App. 23, 72. "[I]f there were no violation of the federal right," the Ninth Circuit concluded, "there would be nothing for the Stipulation to 'correct.'" App. 23. But the Stipulation *expressly* disclaimed that it established any constitutional violation, and the proceedings prior to that point did not reach any definitive findings.

The Ninth Circuit's presumption that a constitutional violation must have occurred—without pointing to any prior specific violation, finding of fact, or conclusion of law—is simply not permitted under the text or purpose of the PLRA. Nor can it be reconciled with *Brown*, or the Fourth, Fifth, and Eighth Circuits' decisions in *Plyler*, *Williams*, and *Tyler*, respectively. Without an actual and proven violation, no remedial order could even *conceivably* satisfy the PLRA's mandate that prospective relief be narrowly drawn and extend no further than necessary to correct a constitutional violation. A court would simply be ordering "an overall improvement in prison conditions," H.R.

21

Rep. No. 104-21, at 24 n.2, which is precisely the sort of federal micromanagement of state prisons that the PLRA prohibits. *See Inmates of Suffolk Cty. Jail v. Rouse*, 129 F.3d 649, 655 (1st Cir. 1997) ("Congress passed the PLRA in an effort, in part, to oust the federal judiciary from day-to-day prison management.").

Moreover, without a concrete finding, a district court cannot resolve whether to terminate prospective relief under 18 U.S.C. § 3626(b)(1). To terminate such relief, a court must "make[] written findings based on the record" that it is no longer "necessary to correct a *current and ongoing* violation of the Federal right." 18 U.S.C. § 3626(b)(3) (emphasis added); *see Miller v. French*, 530 U.S. 327, 346 (2000) (holding that prospective relief must cease absent such findings). But if a violation was not identified at the outset, the state has no ability to remedy it and a court cannot determine if the violation is current and ongoing.[7]

The Ninth Circuit's decision allows prospective relief without the district court ever finding a constitutional violation or giving defendants notice or an opportunity to defend against the alleged violation. The PLRA requires more than lip service. It requires strict compliance. *Webb v. Goord*, 340 F.3d 105, 111 (2d Cir. 2003); *Johnson v. Breeden*, 280 F.3d 1308, 1323 (11th Cir. 2002). If the PLRA's certification requirement means anything at all, it necessarily requires a predicate finding of an actual constitutional violation

---

[7] The Petitioners became eligible to move to terminate the Stipulation in March 2019. App. 103.

22

(not a theoretical one) before a federal court may impose intrusive mandates. The Ninth Circuit's defiance of that requirement is sufficiently egregious to warrant summary reversal.[8]

———————◆———————

## CONCLUSION

The Petition for Writ of Certiorari should be granted.

Respectfully submitted,

NICHOLAS D. ACEDO
  *Counsel of Record*
DANIEL P. STRUCK
STRUCK LOVE BOJANOWSKI &
  ACEDO, PLC
3100 W. Ray Road, Suite 300
Chandler, Arizona 85226
(480) 420-1600
nacedo@strucklove.com

*Counsel for Petitioners*

———————

[8] The Petitioners note that there are other district court orders currently on appeal in the Ninth Circuit unrelated to the PLRA question presented here. Those issues are not before the Court at this time.