**EXHIBIT 1**

**EXHIBIT 1**

1   Daniel P. Struck, Bar No. 012377
    Rachel Love, Bar No. 019881
2   Timothy J. Bojanowski, Bar No. 022126
    Nicholas D. Acedo, Bar No. 021644
3   STRUCK LOVE BOJANOWSKI & ACEDO, PLC
    3100 West Ray Road, Suite 300
4   Chandler, Arizona  85226
    Telephone:  (480) 420-1600
5   Fax:  (480) 420-1696
    dstruck@strucklove.com
6   rlove@strucklove.com
    tbojanowski@strucklove.com
7   nacedo@strucklove.com

8   *Attorneys for Defendants*

9                    **UNITED STATES DISTRICT COURT**
10                        **DISTRICT OF ARIZONA**

11  Victor Parsons, *et al.*, on behalf of themselves      NO. 2:12-cv-00601-ROS
    and all others similarly situated; and Arizona
12  Center for Disability Law,
                                        Plaintiffs,        **DECLARATION OF DANIEL P.**
13            v.                                            **STRUCK**

14  Charles Ryan, Director, Arizona Department
    of Corrections; and Richard Pratt, Interim
15  Division Director, Division of Health Services,
    Arizona Department of Corrections, in their
16  official capacities,
                                        Defendants.

17       I, **DANIEL P. STRUCK**, make the following Declaration:

18       1.     I am over the age of 18 years and have personal knowledge of and am
19  competent to testify to the matters set forth in this Declaration.

20       2.     I am an attorney licensed to practice in the State of Arizona and have
21  practiced in Arizona for 31 years.  I am a managing partner of Struck Love Bojanowski
22  Acedo ("Struck Love") and counsel of record for Defendants in *Parsons, et al. v. Ryan, et*
23  *al*.

24       3.     On Thursday, October 3, 2019 at approximately 12:15 PM, we were
25  informed that Dr. Stern was planning to remove a section and a table from his report that
26  detailed 508 performance measures he had determined could be terminated from the
27  Stipulation as they were compliant within the terms of Paragraph 10(b) of the Stipulation.

28

Dr. Stern had been working on this section and table for several months, in part pursuant to his analysis as to the accuracy of the monitoring of the performance measures by ADC's Health Services Contract Monitoring Bureau.  The report was submitted to the Court by Dr. Stern on Thursday, October 3, 2019 at 5:11 PM.

4.     On Friday, October 4, 2019, I contacted Dr. Stern to find out why he had decided not to include this section of his report and the accompanying table.  Based upon my conversation with Dr. Stern, it was my understanding that Plaintiffs' counsel had objections with this section of the report, precipitating his decision to remove the section and table from the report.  And, while he believed that these objections could be overcome, Dr. Stern was concerned that addressing the objections would delay the report to the Court, which he was not inclined to do.   It was also my understanding that Dr. Stern had a secondary concern that this section of the report might be outside the scope of his duties as defined by the Court.  I informed Dr. Stern that Defendants believed that determining which performance measures should be terminated from the Stipulation were within the scope of his duties, and that the Court and parties would benefit if it were included.  I told Dr. Stern that Defendants intended to provide this information to the Court by filing a notice which attached the omitted section and table.

5.     Based on my conversation with Dr. Stern, it was my understanding that he had no objection to Defendants filing this section of his report and the accompanying table with the Court, but hoped that the parties could address whatever the Plaintiffs' objections were to this section of the report and the table identifying the 508 performance measures that should be terminated from the Stipulation.

6.     Attached hereto as Attachment A are true and correct excerpts of Dr. Stern's September 30, 2019 draft report presented in comparison format showing deleted portions in redline format.

1    I declare under penalty of perjury that the foregoing is true and correct.

2    Executed this 7th day of October, 2019.

3

4    _____

5    DANIEL P. STRUCK

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ATTACHMENT A

# ATTACHMENT A

**Introduction**

Charge and Report Organization
This report is provided to the Court in my capacity as an expert pursuant to Federal Rule of
Evidence 706 in the case of *Parsons v. Ryan, et al.* and provides responses to four charges
contained in two orders issued by the Court. (Doc. 3089 and 3231) The report is organized as
follows.

Part I addresses the issue of whether there are "irregularities or errors in the monitoring process
that produces the compliance numbers for the Stipulation's 103 health care Performance
Measures and undermine confidence in their validity" and if "any aspect of the monitoring
process is unreliable or inaccurate, [provides] written recommendations of remedial measures to
correct any identified deficiencies." (Doc. 3089)

Part IA presents recommendations for the retirement, collapse, or modification of Performance
Measures (PM). Though not directly anticipated by the Court or by me during the initial stages
of my work on this review, it became obvious that while some PMs were not reported
inaccurately-, the Court should be aware of an issue with them because, in the best interests of
this case, one or both Parties, or the health of residents of the Arizona Department of Corrections
(ADC), the PMs themselves require some remedial action. As explained in more detail in Part
IA, this Part is responsive, albeit indirectly, to the Court's charges.

Part IB presents my summary of the termination status of all the PMs in this case.

Part II presents evidence of "how any failure to successfully perform on PMs poses a significant
risk of serious harm to patients due to health care delivery that falls below the community
standard of care." (Doc. 3194-1 at 4)" to determine "Consistent with the Stipulation and the
Court's January 31, 2017 Order, … whether 'there is a practice of substantially departing from
the standard of care.' (Doc. 3127)." (Doc 3231)

Part III presents my evaluation of "substantial noncompliance with critical aspects of health care
delivery including access to prescription medications, diagnostic testing, routine and specialty
physician consultations, treatment for chronic health care problems, and emergency care (Doc.
2905)," "the barriers to compliance and propose[d] written recommendations to alleviate them."
(Doc. 3089)

Part IV addresses "whether the PMs by themselves accurately reflect the adequacy of the care
being provided to prisoners." (Doc. 3194-1 at 4)," which "analysis likely will assist
the Court in tailoring the appropriate remedial measures."  (Doc. 3231) In accordance with the
Court's indulgence in its order, Part IV will be produced separately, but should be considered an
integrated part of this (single) report.

4

### Part IA - Retirement, Collapsing, or Modifying Measurement of PMs

In the following section I recommend the retirement, collapse, or modification of PMs. This is responsive, albeit indirectly, to the Court's instruction in three ways. First, the Court seeks recommendations for alleviating causes of, or barriers to, compliance with the PMs. Compliance with, and monitoring of, the PMs drives much workload for both ADC and the vendor. To the extent that compliance with a given PM does not improve patient safety, continued measurement of that PM diverts valuable resources away from achieving compliance with the remaining PMs. Thus these non-value-added PMs contribute to non-compliance. Second, the Court seeks evidence of how failures to successfully perform on PMs pose a risk of harm. This inquiry, addressed in Part II of my report, indirectly begs the question of whether there are PMs, failure of which do *not* post a risk of harm. Third, in Part IV of my report, I will be addressing the question "whether the PMs by themselves accurately reflect the adequacy of the care being provided to prisoners," an analysis which the Court states "will assist the Court in tailoring the appropriate remedial measures." In that analysis I will identify gaps in measuring the adequacy of the care being provided to prisoners. In the event that gap analysis leads the Court to introduce new PMs, it is only fair to reduce the work load burden of PM monitoring by removing less useful or non-useful ones.

~~I have included some PMs in this section which, elsewhere, I recommend for termination on the merits (i.e., compliance). I included them here in the event that the Court does not terminate them on the merits alone.~~

PM 12 (*Medical record will contain documentation of refusals or "no shows."*)
   *Issue:*
   This PM is conceptually flawed in two ways. First, it legitimizes a behavior ("no show") that should not be acceptable in a prison environment. Staff should always know where patients are and policy should require that either patients present themselves to the locus of medication administration or the medical staff arrange for the patient to receive the medications in an alternative location (e.g. legal visit, classroom, court). In a prison environment, failure of a patient to present for medication administration (or, in fact, any other scheduled health-related activity) cannot be assumed to be volitional on the part of the patient. Indeed, there can be other reasons such as: COs coerced the patient to no show; other residents coerced the patient to no show; the patient is suffering a side effect of the medication and is unable to show.

   Second, it encourages a behavior (having the nurse have the patient sign a refusal form) that is counterproductive (and unnecessary). It is counterproductive because it messages to nurses that when a patient refuses a medication, the nurses' responsibility to the patient has been discharged by signing the form. In fact, for medications where missed (refused)

60

Master List

The landscape of 103 PMs at 10 facilities over more than 49 months is quite complicated and figuring out which PMs have been successfully completed in accordance with the Stipulation has consumed much of the Parties' and Courts' time. I thought it would be helpful to the Court to consolidate the current standing of PM performance at this point in time, as I see it. To that end, I have included as Exhibit 2 a table showing each of the 1,030 PM/complex pairs and their current status with regard to termination. It shows PMs which have already been terminated by the Court or which the Court recognized should not be measured because they are not applicable (e.g. prenatal care at a men's facility). It also shows PMs which, in my opinion, have met the requirements of the Stipulation, and indicates where there is agreement/disagreement by the Parties. Finally, it shows some contingent terminations or retirements[53], i.e., those PMs which would be terminable or retireable contingent on the Court's decisions on my recommendations, and, in some cases, the result of retrospective re-auditing following those recommendations.[54]

**Formatted:** Font: Bold

---

[53] I use the word retirement for those PMs which should be closed out because they can be replaced by another PM or are no longer worth monitoring. This is in contrast to termination which is closing out a PM for cause, i.e. it has met the requirements of the Stipulation for termination.

[54] In their response to the draft of this report, Plaintiffs reiterate their support for termination or retirement contingent on adoption of related recommendations I have made elsewhere in this report. Defendants' position is that "The termination of PMs is not a quid pro quo of Defendants' agreements to all recommendations made in the report."

82

For ease of drafting/editing, if you disagree with any of my recommendations here, please do not mess with these 2 choices. Instead, just highlight the cell in red and feel free to use the Comments box to explain (or explain in the relevant section of the report

| Cell | Meaning |
|---|---|
| √ | Already terminated by the Court |
| n/a | PM not applicable to this complex because it does not house relevant population (some of these have been explicitly terminated by the Court because of the non-applicability). |
| √ | I recommend for termination; both parties concur. |
| √ If Rec X Accepted | I recommend retirement/termination contingent on the Court's acceptance of the recommendation cited. |
| √ If Rec X re-audit OK | I recommend retirement/termination contingent on the Court's acceptance of the recommendation cited and subsequent success on re-audit. |
| √ - P | I recommend for termination, but only Plaintiffs concur. |
| √ - D | I recommend for termination, but only Defendants concur. |
| | Has not yet met the criteria for termination, both parties concur. |

| # | | Douglas | Eyman | Florence | Lewis | Perryville | Phoenix | Safford | Tucson | Winslow | Yuma | Comments for Marc for any red cells |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Each ASPC will maintain, a | √ | | | | √ | √ | √ | √ | √ | √ | |
| 2 | Each ASPC will maintain, at | | √ | √ | √ | √ | √ | | √ | √ | √ | |
| 3 | Dental staffing will be maint | √ | √ | | √ | √ | √ | √ | √ | √ | √ | |
| 4 | Infirmary staffing will be ma | n/a | n/a | | | √ | | n/a | n/a | √ | n/a | n/a |
| 5 | Medical Records will be acce | | √ | √ | | √ | | √ | √ | √ | | |
| 6 | Provider orders will be noted | √ | | | | √ | | √ | | | | |
| 7 | Medical record entries will b | √ | √ | √ | √ | √ | √ | √ | √ | √ | √ | |
| 8 | Nursing protocols/NETS will | √ | √ | √ | √ | √ | √ | √ | √ | √ | √ | |
| 9 | SOAPE format will be utilize | √ | √ | | √ | √ | √ | √ | √ | | | |
| 10 | Each patient's medical record | √ | √ | | √ | √ | √ | √ | √ | | √ | |
| 11 | Newly prescribed provider-or | √ | | | | √ | √ | √ | √ | √ | √ | |
| 12 | Medical record will contain d | √ | √ If Rec 32 accepted | √ If Rec 32 accepted | √ If Rec 32 accepted | √ | √ | √ | √ | √ | √ | |
| 13 | Chronic care and psychotropi | √ | √ | √ | √ | √ | √ | √ | √ | √ | √ | |
| 14 | Any refill for a chronic care | √ | √ | √ | √ | √ | √ | √ | √ | √ | √ | |
| 15 | Inmates who refuse prescribe | √ | | | | √ | √ | | √ | √ | √ | |
| 16 | Perpetual inventory medicatio | √ | √ If Rec 34 accepted | √ | √ If Rec 34 accepted | √ | √ | √ If Rec 34 accepted | √ | √ | | |
| 17 | The Medication Administratio | √ | √ | √ | √ | √ | √ | √ | √ | √ | √ | |
| 18 | Daily delivery manifests will | √ | √ | √ | √ | √ | √ | √ | √ | | √ | |
| 19 | Perpetual inventory medicatio | √ | √ If Rec 36 accepted | √ | √ If Rec 36 accepted | √ | √ If Rec 36 accepted | √ | √ | √ | √ | |
| 20 | Medical AIMs entries are acc | √ | √ | √ If Rec 37 accepted | √ If Rec 37 accepted | √ | √ | √ | √ | √ | √ | |
| 21 | Inmates who are paroled or re | √ | √ | √ | √ | √ | √ | √ | √ | | √ | |
| 22 | Non-formulary requests are re | √ | √ | √ | √ | √ | √ | √ | √ | √ | √ | |
| 23 | Automated External Defibrill | √ | | √ | | √ | √ | √ | √ | √ | √ | |
| 24 | Emergency medical response | √ | | | | √ | | | √ | √ | | |
| 25 | A first responder trained in B | √ If Rec 18.1 accepted | √ | √ | √ | √ If Rec 18.1 accepted | √ | √ If Rec 18.1 accepted | √ | √ If Rec 18.1 accepted | √ If Rec 18.1 accepted | |
| 26 | Responses to health care grie | | √ | | | | | | | | √ | |
| 27 | Each ASPC facility will cond | √ | √ | √ | | √ | √ | √ | √ | √ | √ | |
| 28 | Every medical provider will c | √ | √ | √ | √ | √ | √ | √ | √ | √ | √ | |
| 29 | Each ASPC facility Director | √ | √ | √ | | √ | √ | √ | √ | √ | √ | |
| 30 | The initial mortality review w | | | | | | | | √ | | | |
| 31 | Mortality reviews will identif | | | | | √ | | | √ | | | |
| 32 | A final independent clinical m | | √ | √ | √ | | | | √ | | | |
| 33 | All inmates will receive a hea | n/a | | n/a | n/a | √ | √ | n/a | √ | n/a | n/a | |
| 34 | A physical examination includ | n/a | | n/a | n/a | √ | √ | n/a | √ | n/a | n/a | |
| 35 | All inmate medications (KOP | | | | | √ | √ | | √ | | | |
| 36 | A LPN or RN will screen HN | √ If Rec 7&10 re-audit | √ If Rec 7&10 re-audit | √ If Rec 7&10 re-audit | √ If Rec 7&10 re-audit | √ If Rec 7&10 re-audit | √ If Rec 7&10 re-audit | √ If Rec 7&10 re-audit | √ If Rec 7&10 re-audit | √ If Rec 7&10 re-audit | √ If Rec 7&10 re-audit | |
| 37 | Sick call inmates will be seen | √ If Rec 10 re-audit ok | | √ If Rec 10 re-audit ok | | | √ If Rec 10 re-audit ok | √ If Rec 10 re-audit ok | √ If Rec 10 re-audit ok | √ If Rec 10 re-audit ok | √ If Rec 10 re-audit ok | |
| 38 | Vital signs, to include weight | √ | √ | √ | √ | √ | √ | √ | √ | √ | √ | |
| 39 | Routine provider referrals wil | √ If Rec 10 re-audit ok | | | | √ If Rec 10 re-audit ok | √ If Rec 10 re-audit ok | √ If Rec 10 re-audit ok | √ If Rec 10 re-audit ok | √ If Rec 10 re-audit ok | √ If Rec 10 re-audit ok | |
| 40 | Urgent provider referrals are | | | | √ | √ | √ | | √ | √ | √ | |
| 41 | Emergent provider referrals a | √ | √ | √ | √ | √ | √ | √ | √ | √ | √ | |
| 42 | A follow-up sick call encount | | | | | √ | √ | | √ | √ | | |
| 43 | Inmates returning from an inp | √ | √ | √ | √ | √ | √ | | √ | √ | √ | |
| 44 | Inmates returning from an inp | √ If Rec 19 re-audit ok | | | | √ If Rec 19 re-audit ok | | | | | | |
| 45 | On-site diagnostic services w | √ | | | √ | √ | √ | √ | √ | | | |
| 46 | A Medical Provider will revie | | | | | | | | | √ If Rec 21 re-audit ok | √ If Rec 21 re-audit ok | |
| 47 | A Medical Provider will com | | | | | | | | | | √ | |
| 48 | Documentation, including the | √ | √ | | | √ | | √ | | √ | √ | |
| 49 | Patients for whom a provider | √ | | | | √ | √ | √ | | | | |
| 50 | Urgent specialty consultation | √ If Rec 5 re-audit ok | | | √ If Rec 5 re-audit ok | √ If Rec 5 re-audit ok | √ If Rec 5 re-audit ok | √ If Rec 5 re-audit ok | | √ If Rec 5 re-audit ok | | |
| 51 | Routine specialty consultation | √ If Rec 5 re-audit ok | | | √ If Rec 5 re-audit ok | √ | | | | √ If Rec 5 re-audit ok | √ If Rec 5 re-audit ok | |
| 52 | Specialty consultation reports | | | | | | | | √ | | √ | |
| 53 | Treatment plans will be devel | √ | √ | | | √ | | √ | | | √ | |
| 54 | Chronic disease inmates will | √ | √ If Rec 24 accepted | √ If Rec 24 accepted | √ If Rec 24 accepted | √ | √ | √ | √ | | √ | |
| 55 | Disease management guidelin | √ | | | | √ | √ | √ | | √ | | |
| 56 | Inmates with a chronic diseas | √ | √ | √ | √ | √ | √ | √ | √ | √ | √ | |
| 57 | A Medical Provider will orde | n/a | n/a | n/a | n/a | | n/a | n/a | n/a | n/a | n/a | |
| 58 | Results of an inmate's prenata | n/a | n/a | n/a | n/a | | n/a | n/a | n/a | n/a | n/a | |
| 59 | Inmates will be screened for t | √ | | | | √ | √ | √ | √ | √ | | |

| # | Requirement | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 60 | All female inmates ages 21 t... | √ | √ | √ | √ | √ | n/a | √ | √ | √ | √ |
| 61 | All female inmates ages 21 t... | √ | √ | √ | √ | √ | √ | √ | √ | √ | √ |
| 62 | All prisoners are screened fo... | n/a | | n/a | n/a | √ | √ | n/a | √ | n/a | n/a |
| 63 | In an IPC, an initial health as... | n/a | n/a | √ | √ | √ | n/a | n/a | √ | n/a | n/a |
| 64 | In an IPC a Medical Provide... | n/a | n/a | √ | √ | √ | n/a | n/a | √ | n/a | n/a |
| 65 | In an IPC, a written history a... | n/a | n/a | √ | √ | √ | n/a | n/a | √ | n/a | n/a |
| 66 | In an IPC, a Medical Provide... | n/a | n/a | | √ | √ | n/a | n/a | | n/a | n/a |
| 67 | In an IPC, Registered nurses... | n/a | n/a | | | √ | n/a | n/a | | n/a | n/a |
| 68 | In an IPC, female health reco... | n/a | n/a | √ | | √ | n/a | n/a | | n/a | n/a |
| 69 | In an IPC, nursing care plans... | n/a | n/a | | √ | √ | n/a | n/a | √ | n/a | n/a |
| 70 | All IPC patients have properl... | n/a | n/a | √ | √ | √ | n/a | n/a | √ | n/a | n/a |
| 71 | Inmates with diagnosed and ... | √ | √ | √ | √ | √ | √ | √ | √ | √ | √ |
| 72 | Inmates who refuse prescribe... | | | | √ | | | | √ | | √ |
| 73 | All MH-3 minor prisoners sha... | n/a | n/a | n/a | n/a | √ | n/a | n/a | √ | n/a | n/a |
| 74 | All female prisoners shall be ... | √ | √ | √ | √ | √ | n/a | √ | √ | √ | √ |
| 75 | A mental health assessment s... | n/a | | n/a | n/a | √ | | n/a | √ | n/a | n/a |
| 76 | If the initial mental health ass... | n/a | | n/a | n/a | | | n/a | √ | n/a | n/a |
| 77 | Mental health treatment plans... | n/a | √ | √ | √ | √ | √ | n/a | | n/a | √ |
| 78 | All mental health treatment p... | n/a | √ | √ | √ | √ | √ | n/a | √ | n/a | √ |
| 79 | If a prisoner's mental health t... | n/a | √ | √ | √ | √ | √ | n/a | √ | n/a | √ |
| 80 | MH3-A prisoners shall be see... | n/a | √ | √ | √ | √ | √ | n/a | √ | n/a | √ |
| 81 | MH3-A prisoners who are pre... | n/a | √ | √ | √ | √ | √ | n/a | √ | n/a | √ |
| 82 | MH-3B prisoners shall be see... | n/a | √ | √ | √ | √ | √ | n/a | √ | n/a | √ |
| 83 | MH-3B prisoners who are pre... | n/a | √ | √ | √ | √ | √ | n/a | √ | n/a | √ |
| 84 | MH-3C prisoners shall be see... | n/a | √ | | | | | n/a | √ | n/a | √ |
| 85 | MH-3D prisoners shall be see... | n/a | √ If Rec 27 re-audit ok | √ If Rec 27 re-audit ok | √ If Rec 27 re-audit ok | √ If Rec 27 re-audit ok | | n/a | √ If Rec 27 re-audit ok | n/a | √ If Rec 27 re-audit ok |
| 86 | MH-3D prisoners who are see... | n/a | √ If Rec 30 re-audit ok | √ If Rec 30 re-audit ok | √ If Rec 30 re-audit ok | √ If Rec 30 re-audit ok | | n/a | √ If Rec 30 re-audit ok | n/a | √ If Rec 30 re-audit ok |
| 87 | MH-4 prisoners shall be seen... | n/a | √ | √ | n/a | √ | √ | n/a | √ | n/a | n/a |
| 88 | MH-4 prisoners who are prov... | n/a | √ | √ | n/a | √ | √ | n/a | √ | n/a | n/a |
| 89 | MH-5 prisoners shall be seen... | n/a | n/a | n/a | n/a | n/a | √ | n/a | n/a | n/a | n/a |
| 90 | MH-5 prisoners who are prov... | n/a | n/a | n/a | n/a | n/a | √ | n/a | n/a | n/a | n/a |
| 91 | MH-5 prisoners who are activ... | n/a | n/a | n/a | n/a | n/a | √ | n/a | n/a | n/a | n/a |
| 92 | MH-3 and above prisoners wh... | n/a | √ | √ | √ | | √ | n/a | √ | n/a | n/a |
| 93 | Mental health staff (not to inc... | n/a | √ | √ | √ | | √ | n/a | | n/a | n/a |
| 94 | All prisoners on a suicide or ... | √ | | | √ | √ | √ | √ | √ | √ | √ |
| 95 | Only licensed mental health s... | | √ | | √ | √ | √ | | √ | | √ |
| 96 | A reentry/discharge plan shall... | n/a | √ | √ | √ | √ | √ | n/a | √ | n/a | √ |
| 97 | A mental health provider must... | | √ | √ | √ | √ | √ | | √ | | √ |
| 98 | Mental health HNRs shall be... | If Rec 7&12 re-audit o | If Rec 7&12 re-audit o | If Rec 7&12 re-audit o | If Rec 7&12 re-audit o | If Rec 7&12 re-audit o | If Rec 7&12 re-audit o | If Rec 7&12 re-audit o | If Rec 7&12 re-audit o | If Rec 7&12 re-audit o | If Rec 7&12 re-audit ok |
| 99 | Peer reviews shall be conduct... | n/a | √ | √ | √ | √ | √ | n/a | √ | n/a | √ |
| 100 | Prisoners on the routine denta... | | √ | | | | | | | | √ |
| 101 | Dental assistants will take ine... | √ | √ | √ | √ | √ | √ | √ | √ | √ | √ |
| 102 | Routine dental care wait time... | √ | √ | √ | √ | √ | √ | √ | √ | √ | √ |
| 103 | Urgent dental care wait times... | √ | √ | √ | √ | √ | √ | √ | √ | √ | √ |