# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>David Shinn, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services Contract Monitoring Bureau, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | No. CV 12-00601-PHX-ROS<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** |

This Court, having reviewed Plaintiffs' Motion for Attorneys' Fees and Costs incurred in enforcing the provisions of the Stipulation from July 1, 2018 through June 30, 2019 (the "2018-19 Enforcement Period"), hereby **FINDS** that Plaintiffs are entitled to their reasonable fees and costs as prevailing parties under the terms of the Stipulation. [Doc. 1185 ¶¶ 43, 44]  Plaintiffs established prevailing party status here because they continued to serve and prosecute multiple notices of non-compliance with the health care performance measures, opposed Defendants' efforts to terminate monitoring of the performance measures, continued to highlight and expose deficiencies in Defendants' monitoring practices, and responded to ongoing enforcement documentation requested by the Court.  [*See, e.g.*, Docs. 2940, 2941, 2961, 2971, 2976, 3184, 3249, 3261 3265, 3281].

78204-0001/146153936.1

As a result of Plaintiffs' ongoing enforcement efforts and Defendants' continuing failure to comply with the Stipulation, the Court has issued multiple orders finding a host of performance measures noncompliant, appointed two Rule 706 experts, ordered Defendants to develop remedial plans for noncompliant performance measures, awarded Plaintiffs' attorneys' fees for enforcement work and superior performance; and ordered Defendants to bring myriad performance measures into compliance or face a civil contempt sanction of $50,000 per performance measure per complex.  [*See, e.g.*, Docs. 2958, 3020, 3051, 3077, 3089, 3127, 3231, 3232, 3234, 3235, 3260, 3269].

The Court further **FINDS** that Plaintiffs are entitled to recover all of the attorneys' fees requested because their fee request is reasonable as demonstrated by the Declarations of Counsel and the billing records submitted to the Court.  [*See* Declaration of Corene Kendrick ("Kendrick Decl."); Declaration of David C. Fathi ("Fathi Decl.")]  The work done here took considerable time, resources, and legal skill and precluded counsel from accepting other, potentially fee-generating work.  [*See* Fathi Decl. ¶¶ 17-18; Kendrick Decl. ¶ 4; *see also* Doc. 2902 at 6]  As the Court noted in its First Fee Decision:

> [Enforcement] could have been simple if Defendants had been able to comply with the Stipulation's requirements, had timely responded to document requests, had promptly developed a final version [of the Monitor Guide], and had not raised spurious legal arguments.  However, *the last two years have not been simple* and so the Court concludes that this prong is met.

[Doc. 2902 at 5 (footnote omitted) (emphasis added)]  Unfortunately, the litigation of this matter remains anything but simple.

For other reasons, this has been a very complex and time consuming case: it stands out for Defendants' failure to acknowledge that there are problems in the delivery of health care, failure to cooperate in any meaningful way, and their seeming unwillingness or inability to comply with the Court's orders or the remedies that they agreed to implement.  [Kendrick Decl. ¶ 4]

Furthermore, Plaintiffs have demonstrated that billing judgment was exercised to reduce the total number of hours for which fees were requested.  [Kendrick Decl. ¶ 5;

1  Fathi Decl. ¶ 6]  Plaintiffs have also demonstrated that they engaged in cost-effective
2  measures by using lower-billing law clerks and paralegals to perform document review
3  and analysis, legal research and related tasks.  [Fathi Decl. ¶ 11]

4  The hourly rate in this matter is predetermined by the Stipulation which adopts the
5  PLRA limit on the hourly rate for attorney's fees.  [Doc. 1185 ¶ 43]  The Ninth Circuit
6  has held that the baseline for the PLRA hourly rate is "the amount authorized by the
7  Judicial Conference."  *Webb v. Ada Cty.*, 285 F.3d 829, 839 (9th Cir. 2002).  The current
8  rate authorized by the Judicial Conference for the payment of court-appointed counsel is
9  $149 per hour for FY 2020,[1] and accordingly, 150 percent of that rate is $223.50 per hour
10 for federal FY 2020, which began on October 1, 2018.  Plaintiffs' counsel requests a total
11 of $189,858.60 in fees for hours spent by lawyers, paralegals, and law students on
12 enforcing the Stipulation.

13 Plaintiffs have also requested a multiplier enhancement of 2.0 to attorneys' fees in
14 this matter.  Such enhancements to the lodestar for attorneys' fees in prisoner rights cases
15 for declaratory and injunctive relief are recognized by the Ninth Circuit.  *See Kelly v.*
16 *Wengler*, 822 F.3d 1085, 1102-1106 (9th Cir. 2016) (upholding attorney's fees
17 enhancement in prisoner rights class action where attorneys demonstrated superior
18 performance).  Like the attorneys in *Kelly*, Plaintiffs' counsel here demonstrated superior
19 performance, extraordinary commitment of resources, and excellent results for clients,
20 justifying an enhancement to the lodestar.  *Id*. at 1102-04.

21 During the 2018-19 Enforcement Period, Plaintiffs' counsel has again been forced
22 by Defendants' noncompliance to work tirelessly to enforce their compliance with the
23 obligations they voluntarily assumed over five years ago.  During the 2018-19
24 Enforcement Period alone, the Court found major deficiencies with multiples performance
25 measures across multiple facilities, including Performance Measures 6, 11, 12, 14, 15,19,

---

27  [1] https://www.uscourts.gov/sites/default/files/fy_2020_congressional_budget_summary_0.pdf at 37.  The Court takes judicial notice of this government document pursuant
28  to Federal Rule of Evidence 201(c)(2).

78204-0001/146153936.1                    -3-

1  24, 35, 37, 39, 42, 44, 47, 49, 50, 51, 52, 66, 67, 72, 95, 96, and 98.  [*See* Docs. 3020,
2  3235]  As a result of Plaintiffs' counsels' relentless work in this matter, and Defendants'
3  continued failure to comply, the Court also ordered Defendants to show cause why the
4  Court should not impose yet another civil contempt sanction of $50,000 per substantially
5  noncompliant performance measure per complex.  [Doc. 3235]

6  Notably, a court's finding of contempt alone is also a basis for fees. *See, e.g., Inst.*
7  *of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 958 (9th Cir.
8  2014) ("We hold that the Plaintiffs are entitled to recover attorney's fees and costs
9  incurred in bringing and prosecuting these contempt proceedings."); *Perry v. O'Donnell*,
10  759 F.2d 702, 705 (9th Cir. 1985) ("Attorneys' fees frequently must be expended to bring
11  a violation of an order to the court's attention. . . . We therefore conclude that the trial
12  court should have the discretion [in contempt proceedings] to . . . decide whether an award
13  of fees and expenses is appropriate"); *Webb v. Ada Cty.*, 285 F.3d at 834-35 (affirming
14  award of attorneys' fees as a remedy for contempt in jail conditions case).

15  Throughout the 2018-19 Enforcement Period, the Court upbraided Defendants for
16  their scorched-earth litigation tactics and noncompliance, noting that:

> While Defendants are free to utilize the State's resources as they wish, at some point their continued insistence that taxpayer money is better spent on assiduously defending their noncompliance with the Stipulation than on efforts towards remedying the fundamental underlying cause of that noncompliance is likely ill-conceived and ill-advised.

21  [Doc. 3057 at 9]  The Court has further noted that "Defendants' actions raise the distinct
22  miserable possibility that the Stipulation will have to be set aside and the parties instructed
23  to litigate again."  [*Id.* (emphasis added)]  This Court has exhorted Defendants to engage
24  in "good-faith" efforts at achieving compliance with the Stipulation, and rebuffed
25  Defendants' objections to the appointment of a Rule 706 expert "because they raise
26  concerns about Defendants' candor to the Court."  [*Id.*; Doc. 3269 at 1-2]  The Court also
27  noted "the potential of further contempt sanctions . . . because of Defendants' failure to
28

honor its obligations under the Stipulation and to the prisoners in their charge." [Doc. 3235 at 5]

Despite this difficult course of litigation, Plaintiffs' counsel has still managed to produce excellent results for the Plaintiff class by vigorously enforcing the terms of the Stipulation and its 103 health care performance measures. Throughout the 2018-19 Enforcement Period, the Court again issued multiple orders due to Plaintiffs' enforcement work, including:

1. Granting in part Plaintiffs' Motion to Enforce. [Doc. 2520] In that order, the Court found noncompliance with numerous performance measures at multiple prison complexes and ordered Defendants to file remedial plans tailored to each noncompliant performance measure and location. [Doc. 3020]

2. Appointing Dr. Marc Stern as an FRE 706 expert to review Defendants' monitoring process. [Doc. 3089] In the same order, the Court noted it was appointing Dr. Stern because of "irregularities and errors in the monitoring process" and "substantial noncompliance with critical aspects of healthcare delivery including access to prescription medications, diagnostic testing, routine and specialty physician consultation, treatment for chronic care problems, and emergency care." [*Id.* at 1]

3. Ordering Defendants to bring 34 performance measures/complex pairs into compliance no later than July 1, 2019, and requiring Defendants to show cause why the Court should not impose a civil contempt sanction of $50,000 per Performance Measure per complex by July 26, 2019. [Doc. 3235]

4. Appointing Dr. Bart Abplanalp as an FRE 706 expert to review mental health files at the request of Dr. Stern. [Doc. 3269]

Due to the superior performance of Plaintiffs' counsel and the excellent results achieved for the Plaintiffs, the Court **FINDS** that a 2.0 enhancement is warranted here.

Reasonable attorneys' fees include reimbursement of expenses and the Stipulation specifically allows Plaintiffs to seek costs when they are a prevailing party. [Doc. 1185 ¶ 43] Plaintiffs' counsel have provided the Court itemized lists of expenses appended to the Kendrick and Fathi Declarations. [Kendrick Decl., Ex. B; Fathi Decl., Ex. B] The expenses reflected in Plaintiffs' counsels' records are those for which reimbursement is typically billed to clients. [*See* Kendrick Decl. ¶ 7; Fathi Decl. ¶ 20] The Court **FINDS** that Plaintiffs' expenses in the amount of $7,141.41 are reasonable.

1    **IT IS THEREFORE ORDERED** that Defendants shall pay $189,858.60 in
2  attorneys' fees, a $189,858.60 enhancement to those fees, and $7,141.41 in expenses. In
3  total, Defendants shall pay Plaintiffs' counsel $386,858.61 in fees, costs and
4  enhancements plus interest from the date of this order pursuant to 28 U.S.C. § 1961.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28