Marty Lieberman (Bar No. 007442)
Molly Brizgys (Bar No. 029216)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: mlieberman@acluaz.org
       mbrizgys@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED BELOW]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> David Shinn, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services Contract Monitoring Bureau, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-ROS <br><br> **DECLARATION OF DAVID C. FATHI** |

LEGAL146154291.1

**I, DAVID C. FATHI, DECLARE:**

1. I am an attorney and the Director of the National Prison Project of the American Civil Liberties Union Foundation ("NPP"). With Donald Specter of the Prison Law Office ("PLO"), I serve as co-lead counsel for the plaintiff class herein. I make this Declaration based on my personal knowledge and a review of the records maintained by my office in the ordinary course of business.

2. I have been Director of the NPP since 2010; I have also served as a staff attorney and senior staff attorney at the NPP from 1990 to 1993 and 2000 to 2007. From 2007 to 2010 I was Director of the U.S. Program at Human Rights Watch. A copy of my curriculum vitae is filed at Doc. 2277-1.

3. The NPP, founded in 1972, is located in Washington, D.C. It has decades of experience in complex prisoner rights class actions and has represented prisoners in five cases before the U.S. Supreme Court. Since its founding, the NPP has litigated challenges to conditions of confinement in almost every U.S. state, as well as the District of Columbia and the U.S. Virgin Islands.

4. The NPP is one of a handful of offices in the nation that focus on litigating prisoners' rights cases such as this action. Litigating prisoners' rights cases requires specialized knowledge and skills as well as considerable resources. As a result, NPP's assistance as co-counsel is frequently sought by other attorneys throughout the nation. Federal courts have long recognized the special expertise of NPP staff. *See, e.g.*, *Plyler v. Evatt*, 902 F.2d 273, 278 (4th Cir. 1990); *Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir. 1983); *Duvall v. O'Malley*, No. CV ELH-94-2541, 2016 WL 3523682, at *9 (D. Md. June 28, 2016); *Dockery v. Fischer*, 253 F. Supp. 3d 832, 856 (S.D. Miss. 2015); *Riker v. Gibbons*, No. 3:08-CV-00115-LRH, 2010 WL

LEGAL146154291.1

|   |   |   |
|---|---|---|
| 1 |   | 4366012, at *4 (D. Nev. Oct. 28, 2010); *Diaz v. Romer*, 801 F. Supp. 405, |
| 2 |   | 410 (D. Colo. 1992), *aff'd*, 9 F.3d 116 (10th Cir. 1993). |
| 3 | 5. | The NPP and PLO began investigating conditions of confinement in Arizona state prisons in approximately April of 2011.  Since that time, through the filing of this case in 2012 and at every subsequent stage of the litigation, the NPP has maintained a close relationship with our clients, both named plaintiffs and unnamed class members.  This relationship has included correspondence, telephone calls, and regular visits to Arizona state prisons.  Maintaining this relationship with a class of approximately 34,000 prisoners requires a substantial commitment of time and resources.  However, the work done to maintain client relations, as well as routine monitoring in the case, are not billed to enforcement work and are therefore not included in Plaintiffs' fee motion. |
| | 6. | Attached hereto as **Exhibit A** is an itemized report detailing the hours expended on this case by NPP staff for which compensation is sought.  This documentation indicates the identity of the biller, time spent on the activity, specific description of the activity, and hourly rate charged by the biller.  I have reviewed this documentation and exercised billing judgment, resulting in a reduction of the total amount of fees sought in the instant motion. |
| | 7. | Attached hereto as **Exhibit B** is an itemized report detailing the expenses incurred by NPP for which reimbursement is sought. |
| | 8. | In total, NPP seeks compensation for a total of $83,941.95 in attorney fees and $3,422.46 in expenses.  All of this time was reasonably and necessarily spent, and all of these expenses were reasonably and necessarily incurred, in enforcing the provisions of the Stipulation in this case. |
| | 9. | It is NPP's practice to pay law clerks if they do not receive course credit from their law schools. Exhibit A details the time spent by each law clerk on this matter.  I have reviewed our records and determined that the total time |

1  spent by unpaid law clerks on this case is 12.3 hours ($2,029.50). If these hours are excluded from the compensation sought by NPP, the new total in attorney fees is $81,912.45. All other staff for whose time compensation is sought were paid.

10. NPP's policy and standard business practice with respect to recording billable time, which it has followed in this case, is for each legal staff member on a daily basis to record the time that he or she spends on a particular task, in increments of one-tenth hour. Each time-keeper enters those hours into NPP's computerized billing system. NPP uses the Timeslips program as its computerized billing system. In the case of Justin Sadowsky, who served as a contract attorney for NPP, Mr. Sadowsky's time was recorded following the same guidelines as NPP attorneys as part of his invoicing practice, and then entered into NPP's electronic billing system after the invoice was approved.

11. Consistent with our practice in all cases, NPP has made every effort to litigate this case with maximum efficiency. For example, when possible, NPP has used paralegals to conduct document review and analysis, and law clerks to perform legal research and related tasks, rather than having those tasks performed by lawyers.

12. Below is a listing of the current market rates for all attorneys, and all other categories of staff who billed time in this matter. For each attorney, the year of graduation from law school is provided:

| Attorney/Staff | Year of Law School Graduation | Hourly Rate |
|---|---|---|
| David Fathi | 1988 | $613 |
| Amy Fettig | 2001 | $544 |
| Ryan Kendall | 2018 | $307 |
| Stephanie Wylie | 2018 | $307 |

| Attorney/Staff | Year of Law School Graduation | Hourly Rate |
|---|---|---|
| Justin Sadowsky | 2005 | $491 |
| Paralegals | N/A | $165 |
| Law Clerks | N/A | $165 |

13. I establish the current market rates for all attorneys and staff who billed time in this matter. To ensure that they are reasonable within the Washington, D.C. market, I refer to the rates determined to be reasonable by the Civil Division of the United States Attorney's Office for the District of Columbia, as set forth in the Laffey Matrix. I attach hereto as **Exhibit C** a copy of the 2015-19 Laffey Matrix (https://www.justice.gov/usao-dc/file/796471/download).

14. The Laffey Matrix was created by the U.S. Attorney's Office as evidence of Washington, D.C. market rates in cases in which a fee-shifting statute permits the prevailing party to recover "reasonable" attorney's fees. The Matrix was originally based on the hourly rates allowed by the district court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds,* 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985). The U.S. Attorney's Office periodically updates the Matrix. The Court of Appeals for the District of Columbia Circuit has stated that parties may rely on the updated Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area, and the lower federal courts in the District of Columbia have used this updated Laffey Matrix when determining whether fee awards under fee-shifting statutes are reasonable. *See* Exhibit C at n.9.

15. The Laffey Matrix rates are considered extremely conservative by bench and bar alike in Washington, D.C. In the actual legal market in Washington,

D.C., lawyers are charging and being paid at rates well above those reflected in the Laffey Matrix.

16. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(d), provides for a maximum hourly billing rate for attorneys in cases brought by prisoners. This maximum hourly rate is currently $223.50. Because the market rates for all attorneys who have billed time on this case exceed $223.50 per hour, compensation is sought at a rate of $223.50 per hour for all attorneys. Compensation for paralegals and law clerks is sought at a rate of $165 per hour, consistent with the Laffey Matrix.

17. I personally billed the largest share of NPP's total hours on this case. I was precluded from accepting new, potentially fee-generating work while I worked on this case, and was further precluded from working on other cases in which I am counsel of record.

18. Class action cases on behalf of prisoners are generally considered undesirable even by the civil rights bar, because they are so time-consuming and expensive to litigate, and because of the numerous restrictions imposed by the PLRA.

19. NPP's law practice focuses on cases governed by fee-shifting statutes and, accordingly, does not charge clients a surcharge for exceptional results. Indeed, as a matter of policy NPP accepts no payment from clients at all.

20. It is NPP's policy and standard business practice, which it has followed in this case, to keep records for reimbursable litigation costs, namely, those that would normally be billed to a paying client, and enter those costs into its computerized billing system, Timeslips.

21. NPP's business policy and practice with respect to in-house photocopying, which was followed in this case, is to assign a case code as an internal client billing number in each case, and manually enter this code in the photocopier whenever copies are made for that case. NPP's photocopier requires the

entry of a unique case-specific number before any documents can be copied. The copier records monthly totals by case number. The monthly totals are entered into the expense summaries for each case handled in the office. NPP assigned a case code to be used in this case for enforcement work only, and only for copies necessary for and related to this aspect of the case.

22. NPP has billed photocopies in this case at the rate of 25 cents per page, a well-established rate for photocopies in the Washington D.C. market, and the rate at which NPP bills photocopies in all its cases.

23. NPP policy and business practice, which was followed in this case, requires that the case code assigned to each litigation matter be used in making long distance calls in connection with this case. NPP's telephone system is programmed so that in order to make a long-distance call a code must be entered.

24. Similarly, NPP policy and business practice, which was followed in this case, requires that the assigned case code be used in all mailings associated with the case, and that those items, and only those items, be entered in the expense report each month. NPP uses an electronic postage machine, which requires unique case codes to print postage.

25. It is NPP's general policy to keep travel costs as low as possible while maintaining appropriate business practices, such as access to internet and clean, safe accommodation. NPP attorneys and staff have scrupulously followed the presumptive travel and accommodation caps set forth by Judge Duncan in this matter. (Doc. 2503 at 2) Where roundtrip airfare exceeded $550 from Washington, DC or a hotel exceeded $200/night in Arizona, this was due to (1) trips that could not be booked well in advance, such as unexpected hearings or hearings that were rescheduled, and/or (2) seasonal variations in the cost of travel that are beyond our control, such as the high tourist season or large conventions and other events that increase hotel rates.

26. All other expenses for which reimbursement is sought are billed on an at-cost basis.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of October, 2019.

        s/ David C. Fathi
David C. Fathi

**ADDITIONAL COUNSEL:**

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Eunice Hyunhye Cho (Wash. 53711)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:  dfathi@aclu.org
        afettig@aclu.org
        echo@aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:  dspecter@prisonlaw.com
        ahardy@prisonlaw.com
        snorman@prisonlaw.com
        ckendrick@prisonlaw.com
        rlomio@prisonlaw.com

*Admitted *pro hac vice*

|   |   |
|---|---|
| 1 | Daniel C. Barr (Bar No. 010149) |
| 2 | Amelia M. Gerlicher (Bar No. 023966) |
|   | John H. Gray (Bar No. 028107) |
|   | **PERKINS COIE LLP** |
| 3 | 2901 N. Central Avenue, Suite 2000 |
|   | Phoenix, Arizona 85012 |
| 4 | Telephone: (602) 351-8000 |
|   | Email:   dbarr@perkinscoie.com |
| 5 |              agerlicher@perkinscoie.com |
|   |              jhgray@perkinscoie.com |

Marty Lieberman (Bar No. 007442)
Molly Brizgys (Bar No. 029216)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:   mlieberman@acluaz.org
             mbrizgys@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2019, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
Richard M. Valenti
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com

*Attorneys for Defendants*

Asim Dietrich
Rose A. Daly-Rooney
J.J. Rico
Maya Abela
ARIZONA CENTER FOR DISABILITY LAW
adietrich@azdisabilitylaw.org
rdalyrooney@azdisabilitylaw.org
jrico@azdisabilitylaw.org
mabela@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

s/ D. Freouf