Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> Charles Ryan, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | NO. 2:12-cv-00601-ROS <br><br> **DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO THE COURT'S OCTOBER 11, 2019 ORDER (Dkt. 3385, 3402)** |

Plaintiffs request that the Court "terminate" the Stipulation and proceed to a trial on the merits. (Dkt. 3402.) The legal authority they cite to support this "time consuming, highly expensive, and potentially harsh course" (Dkt. 3385 at 5) does not allow the Court to pursue that path. The only available options are to order the parties to attempt to negotiate a new settlement agreement or continue enforcement of the existing Stipulation.

Plaintiffs contend that the Court "has the discretion pursuant to Federal Rule of Civil Procedure 60(b)(5) to reinstate the proceedings on the grounds that applying the Stipulation 'prospectively is no longer equitable.'" (Dkt. 3402 at 3:20–22.) They cite *Keeling v. Sheet Metal Workers Int'l Ass'n, Local Union 162*, 937 F.2d 408 (9th Cir. 1991), and *Grand Canyon W. Ranch, LLC v. Kempthorne*, No. CV-03-02496-PCT-NVW, 2013 WL 12364963

1   (D. Ariz. July 1, 2013).   Neither of those cases, however, addressed Rule 60(b)(5)

2   ("applying it prospectively is no longer equitable").   Rather, they addressed a federal court's

3   authority to vacate a settlement agreement under Rule 60(b)*(6)* ("any other reason that

4   justifies relief").   *See Keeling*, 937 F.2d at 410; *Grand Canyon W. Ranch*, 2013 WL

5   12364963, at *2.   Plaintiffs make no argument under Rule 60(b)(6) and cite no authority

6   supporting their request to terminate the Stipulation under Rule 60(b)(5).

7         Furthermore, neither Subsection can be invoked here because they apply only to

8   judicial orders.   Rule 60(b)(5) "represents a codification of preexisting law, recognizing the

9   inherent power of a court sitting in equity to modify *its decrees* prospectively to achieve

10   equity." *S.E.C. v. Worthen*, 98 F.3d 480, 482 (9th Cir. 1996) (quoting *Transgo, Inc. v. Ajac

11   Transmission Parts Corp.*, 911 F.2d 363, 365 (9th Cir. 1990)) (emphasis added).   A court's

12   equitable power extends only to modifications of consent decrees or court-ordered

13   injunctions.   *See Horne v. Flores*, 557 U.S. 433, 441 (2009); *Flores v. Huppenthal*, 789

14   F.3d 994, 998 (9th Cir. 2015); *Valdivia v. Schwarzenegger*, 599 F.3d 984, 987 (9th Cir.

15   2010); *Bellevue Manor Associates v. United States*, 165 F.3d 1249, 1251 (9th Cir. 1999).

16   Rule 60(b)(6) also only applies to court orders.   *See*, *e.g.*, *Rufo v. Inmates of Suffolk Cty.

17   Jail*, 502 U.S. 367, 372 (1992); *United States v. Asarco Inc.*, 430 F.3d 972, 979 (9th Cir.

18   2005); *Hook v. State of Ariz., Dep't of Corr.*, 972 F.2d 1012, 1016 (9th Cir. 1992).

19         Rule 60 cannot be used to modify or rescind a settlement agreement like the

20   Stipulation in this case.   The Stipulation is a negotiated settlement agreement voluntarily

21   entered into by the parties.   It is not a consent decree.   (*See* Dkt. 1185, ¶ 35 ["The parties

22   agree that this Stipulation shall not be construed as a consent decree."].)   Thus, the Court

23   does not have the equitable authority to unilaterally modify it.   Under the terms of the

24   Stipulation, only the parties can modify it (mutually).   (*Id.*, ¶ 40.)

25         In a footnote, Plaintiffs assert that the Court "also has the power to reinstate the

26   proceedings for trial pursuant to its contempt power."   (Dkt. 3402 at 4:23–24, citing *Kelly

27   v. Wengler*, 822 F.3d 1085, 1097 (9th Cir. 2016).)   Once again, the cited authority says no

28   such thing.   Unlike this case, *Kelly* involved a judicially enforceable court order.   822 F.3d

1    at 1095.  The court held only that, under Rule 60(b), substantial non-compliance with that

2    court order may justify the *extension* of its time frame as a contempt sanction.  *Id.* at 1097–

3    98.  It did not involve a settlement agreement, the rescission of a settlement agreement, or

4    the reinstatement of proceedings.

5          Like any settlement agreement, if Plaintiffs want to rescind the agreement, they may

6    initiate an action in state court for breach of contract.  *Grand Canyon W. Ranch*, 2013 WL

7    12364963, at \*3; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 382

8    (1994) ("[E]nforcement of the settlement agreement is for state courts, unless there is some

9    independent basis for federal jurisdiction.").  That is what counsel was referring to at oral

10   argument in the related appeal.  (*See* Dkt. 2241, 2271.)  Plaintiffs cannot circumvent that

11   path under the guise of Rule 60.[1]

12         If the Court believes that it has the authority under Rule 60 to rescind the Stipulation,

13   Defendants request the due process that they are entitled to.  Not only do Plaintiffs have the

14   heavy burden of demonstrating extraordinary circumstances warranting rescission,

15   *Bellevue*, 165 F.3d at 1254–57; *Grand Canyon W. Ranch*, 2013 WL 12364963, at \*2, but

16   Defendants are entitled to a "full and fair hearing" including "full briefing and argument,"

17   *Keeling*, 937 F.2d at 411.  It is not enough to simply allege that Plaintiffs do not and will

18   not receive constitutionally adequate care unless a trial followed by a consent decree occurs.

19   (Dkt. 3402 at 2:7–19.)  Nor is it enough to allege that Defendants are in substantial non-

20   compliance, that the failure to comply with the performance measures "poses a significant

21   risk of serious harm to class members," that inmates are "at risk of, or actually suffering,

22   serious injury or death due to inadequate" healthcare, or that "the measures by themselves

23   do not accurately reflect the adequacy of the care provided to class members."  (*Id.*)  These

24   allegations must be proven, and Defendants must be permitted to defend against them.[2]

---

25         [1] Plaintiffs assert that they "dispute Defendants' position that the Stipulation is

26   unenforceable and that this Court lacks power to enforce it." (Dkt. 3402 at 22:25–27.) Defendants have never taken that position.

27         [2] Plaintiffs purportedly rely on the unsworn opinions of Dr. Stern. Not only have Defendants had no opportunity to examine Dr. Stern or his opinions, but Plaintiffs overstate

28   them. Although Dr. Stern reviewed 36 inmate files (Dkt. 3379 at 73–88) and concluded that

Only after—and if—Plaintiffs have met their burden to rescind the Stipulation should the Court consider anything else, e.g., whether the Stipulation should be terminated or vacated (Dkt. 3402 at 5:21–28), whether the provisions of the Stipulation must remain in effect until a post-trial judgment is entered (*id*. at 4:9–19), a trial date, the length of trial, and a pre-trial schedule (*id*. at 5:2-15, 6:5–7), and any rules for the presentation of evidence (*id*. at 5:16-6:4).  Defendants do note, however, that many of Plaintiffs' proposals, on their face, deprive Defendants of due process.  If the Stipulation is rescinded, the case starts anew and is governed by the Rules of Civil Procedure.  Plaintiffs are no longer entitled to anything under the Stipulation, for example, unfettered access to eOMIS and monthly document

---

the failure to comply with a particular performance measure posed a significant risk of serious harm "to that particular inmate," he carefully noted that "the failure to comply does not necessarily mean that other patients in different circumstances would have been exposed to a significant risk of harm, and not all individual patient cases at facilities that fail to successfully perform on PMs carry this same level of risk." (*Id*. at 72.) He further noted that he did not have an opinion "on the severity of the non-compliance or its systematic pervasiveness," or whether "any particular inmate's constitutional rights were violated." (*Id*.) Plaintiffs suggest that Dr. Stern's opinion that the existing performance measures do not accurately reflect the adequacy of the care provided means that inmates are not receiving adequate care if the facility is not in compliance with all performance measures. But Dr. Stern never made that connection. (*Id*. at 113-135; *see also id*. at 113 ["I did not conduct a systematic evaluation of the adequacy of all health care delivered at ADC. It is important to note that as a result, my inclusion of an issue here does not necessarily mean that there is a systemic problem with care at ADC relative to that issue. It simply means that there is an aspect of care – as evidenced by one or more actual examples, not just that an error which theoretically might occur – for which the PMs by themselves do not accurately reflect the adequacy of care being provided."]; *id*. at 120 ["The absence of an adequate treatment plan does not automatically equate with inadequate care, though it may in some cases."].) Furthermore, Plaintiffs' advocacy letters making allegations of inadequate care are not proven instances of inadequate or unconstitutional care. (Dkt. 3404, ¶ 3.)

Setting aside Plaintiffs' false narrative of systemwide inadequate healthcare, Defendants note that, of the original 1,030 healthcare performance measures, the Court has terminated 140, and Dr. Stern has recommended terminating or retiring 536 and believes an additional 113 are no longer applicable to the particular complex. (Dkt. 2900; Dkt. 3379 at 37–38, 44, 53–56, 89–90; Dkt. 3382-1 at 9–10.) Historically, Defendants have been in compliance with the majority of performance measures.  For example, in August 2019, 6 of the 10 ADC facilities were compliant with over 90% of the performance measures and 8 out of 10 facilities were compliant with at least 85% of the performance measures. (Dkt. 3397.)  Furthermore, only 47 performance measures have been included in an order to show cause for chronic non-compliance (Dkt. 2372, 3235), and the Court has held Defendants in contempt for failing to comply with only 19 performance measures (Dkt. 2898), just 2% of the total number originally required to be monitored (Dkt. 1185-1, Exhibit B). Moreover, there has never been an express finding that ADC provides unconstitutional healthcare to inmates in its system.

production.  At a minimum, Defendants must be given notice of which claims in the Complaint Plaintiffs are pursuing, they are entitled to conduct their own discovery and test Plaintiffs' evidence, they are entitled to move for summary judgment on any claims that lack evidence, they are entitled to move to decertify the Class and Subclass if appropriate, their ability to depose and examine Plaintiffs' experts and present fact and expert testimony should not be arbitrarily limited, and they should not be forced to stipulate to the admission of Plaintiffs' evidence. A trial of this magnitude should not be "streamline[d] or shorten[ed]," as Plaintiffs hope.  (Dkt. 3402 at 5:16–17.)

If the Court agrees that it cannot unilaterally rescind the Stipulation, it should order the parties to attempt to negotiate a new settlement agreement.  As noted in their Statement (Dkt. 3399), Dr. Stern has provided a platform for negotiations: terminate those performance measures that he recommends should be terminated or retired or are no longer applicable (approximately 649 of the remaining 890).  (Dkt. 3382–1 at 9–10; Dkt. 3379 at 37–38, 44, 53–56, 89–90.)  That would allow the parties to focus on crafting new terms designed to cure those performance measures that are non-compliant.  Both parties should welcome the idea of re-negotiating a new agreement that is narrowly tailored to the needs of inmates, continues to meet the community standard of care for the delivery of health services, and will minimize future litigation.  Defendants do.[3]

---

[3] Plaintiffs suggest in their Statement that any new settlement agreement should be a consent decree with receiver oversight. (Dkt. 3402 at 3:10–14.) But that is precisely the path taken by California and Idaho that has resulted in decades of litigation. (Dkt. 3385 at 1–2 n.1.) Indeed, Plaintiffs' counsel are the architects of the California system, which has been under a federal receivership for over a decade. California spends $28,046.35 per inmate, annually on providing medical, mental health and dental care. *See* http://www.ebudget.ca.gov/budget/2019-20EN/#/Department/5225 (last visited 11/5/2019). That is almost four times what the Bureau of Prisons spends per inmate, per year on healthcare. *See* https://www.justice.gov/jmd/page/file/1034421/download (last visited 11/5/2019). And California still cannot get out from underneath the consent decree. California's framework would cost Arizona approximately $1 billion per year for ADC inmate healthcare. *See* https://corrections.az.gov/sites/default/files/REPORTS/Monthly_CP/bed_capacity_2019/bed-capacity_sep19.pdf (last visited 11/5/2019).

DATED this 5th day of November, 2019.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC

By /s/Daniel P. Struck
    Daniel P. Struck
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    3100 West Ray Road, Suite 300
    Chandler, Arizona 85226

    *Attorneys for Defendants*

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on November 5, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

3

4

Alison Hardy:                ahardy@prisonlaw.com

5

Amelia M. Gerlicher:         agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com

6

7

Amy B. Fettig:               afettig@npp-aclu.org

Asim Dietrich:               adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

8

9

Corene T. Kendrick:          ckendrick@prisonlaw.com; edegraff@prisonlaw.com

10

Daniel Clayton Barr:         DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

11

12

David Cyrus Fathi:           dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

Donald Specter:              dspecter@prisonlaw.com

13

John Howard Gray:            jhgray@perkinscoie.com; slawson@perkinscoie.com

14

Jose de Jesus Rico:          jrico@azdisabilitylaw.org

15

Maya Abela                   mabela@azdisabilitylaw.org

16

Rose Daly-Rooney:            rdalyrooney@azdisabilitylaw.org

17

Sara Norman:                 snorman@prisonlaw.com

18

Rita K. Lomio:               rlomio@prisonlaw.com

19

Molly Brizgys:               mbrizgys@acluaz.org

20

Marty Lieberman:             mlieberman@acluaz.org

21

Eunice Cho                   ECho@aclu.org

22

23

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

24

25

N/A

26

/s/Daniel P. Struck

27

28

7