Martin Lieberman (Bar No. 007442)
Molly Brizgys (Bar No. 029216)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: mlieberman@acluaz.org
         mbrizgys@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen*
*Swartz, Sonia Rodriguez, Christina Verduzco,*
*Jackie Thomas, Jeremy Smith, Robert Gamez,*
*Maryanne Chisholm, Desiree Licci, Joseph Hefner,*
*Joshua Polson, and Charlotte Wells, on behalf of*
*themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> David Shinn, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services Contract Monitoring Bureau, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-ROS <br><br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY SECOND ATTORNEYS' FEES ORDER AND JUDGMENT (DOC. 3413)** |

1    Defendants have moved to stay this Court's May 8, 2019 order and judgment
2    awarding Plaintiffs attorneys' fees.  [Doc. 3413]  If Defendants posted a bond as set forth
3    in Fed. R. Civ. P. 62(b), they would be entitled to a stay as a matter of right.  However,
4    while Defendants assure the Court that they have plenty of money and could easily pay
5    this judgment, they refuse—for reasons they do not explain—to post a bond, and claim
6    they are entitled to a stay notwithstanding this refusal.  For the reasons set forth below,
7    Defendants' motion should be denied.

8    **I.    INTRODUCTION**

9        In October 2014, the parties reached a settlement agreement ("the Stipulation") in
10   this class action filed on behalf of approximately 34,000 Arizona Department of
11   Corrections ("ADC") prisoners, as well as the Arizona Center for Disability Law
12   ("Plaintiffs").  The Court found the Stipulation to be "fair, adequate, and reasonable," and
13   it went into effect on February 18, 2015.  [Doc. 1458 at 1]

14       Since then, Plaintiffs have engaged in extensive and sustained efforts to enforce the
15   terms of the Stipulation.[1]  Because of Plaintiffs' ongoing enforcement efforts and
16   Defendants' continuing recalcitrance and failure to comply with the Stipulation, the Court
17   has issued multiple orders finding Defendants non-compliant with numerous provisions of

_____

[1]   In the years since the Settlement Agreement was reached, Plaintiffs have served
upon Defendants multiple notices of non-compliance with the health care performance
measures, highlighted deficiencies in Defendants' monitoring practices, and filed several
motions to enforce, as well as ongoing enforcement documentation as requested by the
Court.  [*See, e.g.*, Pls.' Resp. to June 14, 2017 Order (Doc. 2214); Mot. to Enforce the
Stipulation (Doc. 2253); Pls.' Statement on the Court's Order Regarding Retaliation
(Doc. 2363); Pls.' Statement Regarding Defs.' Removal of Health Needs Request (HNR)
Boxes (Doc. 2365); Pls.' Notice Regarding Monitoring Methodology for Performance
Measure 86 (Doc. 2765)]  Likewise, Plaintiffs have had to respond to the many motions
filed by Defendants.  [*See, e.g.*, Defs.' Mot. to Terminate Monitoring (Doc. 2251); Defs.'
Mot. for Reconsideration of Court Order (Doc. 2396); Defs.' Mot. for Reconsideration of
Court Order (Doc. 2484); Mot. to Disqualify Magistrate Judge Duncan From All Further
Proceedings (Doc. 2641); Defs.' Mot. for Reconsideration of Court's Order (Doc. 2640);
Suppl. Mot. to Disqualify Magistrate Judge Duncan From All Further Proceedings
(Doc. 2692); Mot. for Chief Judge to Rule on Defs.' Mot. to Disqualify Magistrate Judge
Duncan from All Further Proceedings (Doc. 2693); Defs.' Mot. for District Court Judge to
Vacate Magistrate Judge Referral for Lack of Subject Matter Jurisdiction (Doc. 2825);
and Defs.' Motion for Expedited Status Conference and Consideration of Their Mot. for
District Court Judge to Vacate Magistrate Judge Referral for Lack of Subject Matter
Jurisdiction (Doc. 2829)]

the Stipulation, ordering Defendants to properly monitor their compliance with the Stipulation's requirements, and enforcing its terms.[2]   While Defendants' sustained, intractable non-compliance and their dilatory litigation tactics have forced Plaintiffs' counsel to engage in nearly five years of ongoing enforcement and litigation activities, the tremendous amount of work, time, effort, and costs expended by Plaintiffs to enforce the Stipulation has continued unabated, and has led the Court to consistently determine that Plaintiffs are entitled to compensation per the plain terms of the Stipulation.  [Doc. 2902; Doc 2903; Doc. 3245; Doc. 3246]

Continuing their repeated attempts to obstruct and delay Plaintiffs' ongoing attempts to enforce the Stipulation, Defendants now move to stay the enforcement of the Court's May 8, 2019 Order Awarding Attorney's Fees.  [Doc. 3413]  In their motion, Defendants make no attempt to assert an equitable basis for staying enforcement of the May 8, 2019 Order, instead arguing the inadequately supported assertion that the ADC is equipped to promptly pay the attorneys' fees award if the award is affirmed on appeal and that the process for doing so is not complex, thus entitling them to a stay of the award's enforcement.  [Doc. 3413 at 6]

However, Defendants' position relies upon the wrong legal standard.  Defendants, who have declined to post a bond security as required by Fed. R. Civ. P. 62(b) for a stay, assert that the factors governing whether a stay should be granted are inapplicable to this case, and argue instead that the Court need *only* analyze whether the Defendants have met their burden to show that they are entitled to a waiver of the bond requirement for a stay.  [Doc. 3413 at 4]  While the waiver analysis applies in this case, the threshold test for the

---

[2] [*See, e.g.*, Doc. 2209 (finding that Defendants improperly retaliated against prisoners and ordering them to stop); Doc. 2373 (requiring immediate compliance with PMs 11, 35, 39, 44, 46, 47, 50, 51, 52, 54, and 66, and issuing an order to show cause for contempt sanctions); Doc. 2403 (finding noncompliance with PMs 6, 12, 15, 20, 24, 42, 49, 50, 51, 52, 55, 67, 72, 91, 94, 97, 98); Doc. 2504 (denying Defendants' request for reconsideration regarding interpretation of stipulation); Doc. 2583 (finding noncompliance with PM 54 at Eyman and ordering compliance and other relief); Doc. 2764 and Transcript of April 11, 2018 Hearing at 21:22-25:11 (finding noncompliance with PMs 19, 44, 50, 52, and 67); Doc. 2810 (finding PM 50 at Tucson non-compliant and ordering Defendants to file a remedial plan)]

1    Court to consider prior to reaching the waiver analysis is whether the balance of equities

2    favors granting a stay pending appeal. *Kirby v. Gen. Elec. Co.*, 210 F.R.D. 180, 195

3    (W.D.N.C. 2000) ("[b]efore the Court can exercise its discretion to grant a stay without a

4    bond, it must first determine that a stay is warranted"); *Diamond Falls Estates, LLC v.*

5    *Nantahala Bank & Tr. Co.*, 2015 WL 6394194 (W.D.N.C. 2015) (holding that the

6    question of whether a stay is warranted is a threshold test to be met prior to the

7    determination of whether the Rule 62(b) bond requirement should be waived).

8         With this in mind, Defendants' arguments for a stay in this matter fail because they

9    make no attempt to meet the high legal standard for a stay pending appeal.[3]  "A stay is an

10   intrusion into the ordinary processes of administration and judicial review, and

11   accordingly is not a matter of right, even if irreparable injury might otherwise result to the

12   appellant[,]" and the party seeking a stay bears the burden of proof. *Nken v. Holder*, 556

13   U.S. 418, 427, 433-434 (2009).  In order to meet this burden, a moving party must

14   affirmatively demonstrate that the balance of equities favors a stay of proceedings pending

15   appeal, using the following four factors: (1) whether the stay applicant has made a strong

16   showing that he is likely to succeed on the merits; (2) whether the applicant will be

17   irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure

18   the other parties interested in the proceeding; and (4) where the public interest lies. *Leiva-*

19   *Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (quoting *Nken v. Holder*, 556 U.S.

20   418, 434 (2009)).

21        Because Defendants fail to make a single argument as to whether the balance of

22   equities under the traditional factors warrants a stay pending appeal, and likewise fail to

23   meet their burden to show that they are entitled to a waiver of the bond requirement for a

24

25

---

26        [3] Given Defendants' failure to argue the legal standard for a stay in their opening

27   brief, they are foreclosed from doing so in their reply, and for this reason alone the Court should deny their motion. *See Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) ("[I]ssues

28   raised for the first time in the reply brief are waived.") (citing *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990)).

1  stay pending appeal, the Court should deny their motion for a stay of the Court's Second

2  Attorneys' Fees Order and Judgment.

3  **II.   PROCEDURAL BACKGROUND**

4         On May 8, 2019 the Court awarded Plaintiffs $1,633,121.80 in attorneys' fees and

5  costs for the period of July 1, 2017 - June 30, 2018 ("Second Attorneys' Fees Order").

6  [Doc. 3245; Doc. 3246]  Because Defendants offered the same unsuccessful objections to

7  Plaintiffs' request for fees and costs accruing during the July 1, 2017 - June 30, 2018

8  period as they did to Plaintiffs' request for fees and costs accrued prior to July 1, 2017, the

9  Court affirmed its findings as to the hourly rate and the application of a 2.0 multiplier that

10  were made in the Court's prior June 22, 2018 Order Awarding Attorneys' Fees ("First

11  Attorneys' Fees Order").[4]  [Doc. 2902; Doc. 2903]

12         On May 31, 2019, Defendants filed their Notice of Appeal of the Court's Second

13  Attorneys' Fees Order.  On November 8, 2019, Defendants filed the instant Motion to

14  Stay the Second Attorneys' Fees Order and Judgment pending appeal.  On November 12,

15  Plaintiffs' counsel emailed Defendants' counsel, pointing out that, during oral argument

16  on Defendants' appeal of the First Attorneys' Fees Order, Defendants' counsel had

17  conceded that Plaintiffs are entitled to some attorneys' fees.[5]  [*See* Declaration of Amy

18  Fettig, filed concurrently herewith, Ex. 1].  Plaintiffs' counsel proposed that, if the parties

19  could reach agreement on Defendants' prompt payment of the undisputed portion of the

20  Second Attorneys' Fees Order and Judgment, Plaintiffs would consider stipulating to a

21  stay.  [*Id*.]  Defendants rejected this offer out of hand.  [*Id*.]

22

23

24         [4] This Court denied Defendants' motion to stay the First Attorneys' Fees Order.
   [Doc. 3057]

25         [5] "Paragraph 43 can only mean that they are entitled to fees and costs that can be

26  directly attributed to filing the motion to enforce, which includes preparing the motion and
   the reply, and any subsequent related briefing, oral argument, or hearing.  We're not

27  saying that they're not entitled to any fees; they are, but only for fees that can be directly
   attributed to that motion."  *Parsons v. Ryan*, Ninth Cir. No. 18-16358 Oral Argument

28  (September 24, 2019) at 11:54, https://www.ca9.uscourts.gov/media/view_video.php?pk
   _vid =0000016209.

III.   **ARGUMENT**

A.   **The *Nken* factors remain the controlling test for a stay pending appeal**

Rule 62(b) provides that "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b). Courts have interpreted this rule as allowing a moving party to obtain a stay as a matter of right upon providing a sufficient bond. *ACLU of Nev. v. Masto*, 670 F.3d 1046, 1066 (9th Cir. 2012) ("[h]ad the State complied with the express requirements of Rule 62[b] by appealing the underlying fees order and posting a *supersedeas* bond with the district court, it would have been entitled to a stay as a matter of right"). However where, as here, the party moving for a stay pending appeal refuses to provide a bond or security for a stay, that party bears the burden of showing that the following two conditions are met: 1) the moving party faces hardship or inequities such that a stay should be granted; and 2) there is a valid equitable basis for waiving the Rule 62(b) bond requirement. *See Kirby*, 210 F.R.D. at 195; *Diamond Falls Estates*, 2015 WL 6394194, at *1.

For the first prong, courts use the following four factors to determine whether the balance of equities favors a stay: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Kirby*, 210 F.R.D. at 195 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also Diamond Falls Estates*, 2015 WL 6394194, at *1.[6] Only after determining that a stay is warranted do courts rely on the following five factors to determine whether there is an equitable basis for a waiver of the bond requirement: (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds

---

[6] Both *Leiva-Perez* and *Nken*, cases that are cited both prior and subsequent to this passage, adopted and applied Hilton's four factor test for determining whether the balance of equities favor a stay. *Leiva-Perez*, 640 F.3d at 964; *Nken*, 556 U.S. at 425-426. As such, this line of cases refers to the same four factor test.

1    to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain

2    that the cost of a bond would be a waste of money; and (5) whether the defendant is in

3    such a precarious financial situation that the requirement to post a bond would place other

4    creditors of the defendant in an insecure position.  *Southeast Booksellers Ass'n v.*

5    *McMaster*, 233 F.R.D. 456, 459 (D.S.C. 2006) (citing *Dillon v. City of Chicago*, 866 F.2d

6    902, 904–05 (7th Cir. 1988)).[7]

7         Defendants argue that the *Nken* test is irrelevant to deciding their motion to stay

8    pending appeal, likely because the record shows that the Defendants fail on each *Nken*

9    factor.  [Doc. 3057 at 7; Doc. 3413 at 4]  Instead the Defendants, who have refused—for

10   reasons they decline to explain—to post any bond to secure a stay pending appeal,

11   incorrectly assert that the *only* consideration before the Court is whether they are entitled

12   to a waiver of Rule 62(b)'s bond requirement.  [Doc. 3413 at 4]

13        Defendants' application of an incorrect legal standard fatally undercuts their

14   arguments for a stay by conflating the question of whether they are entitled to a waiver of

15   the bond requirement with the threshold question of whether they are entitled to a stay at

16   all.  By disregarding the *Nken* test for determining whether the balance of equities favors a

17   stay, Defendants essentially assert that the grant of a waiver of the Rule 62(b) bond

18   requirement automatically confers a stay as a matter of right, a notion for which there is

19   simply no support.  The *Dillon* test controls the analysis for the waiver of the Rule 62(b)

20   bond requirement, but the *Nken* factors remain the threshold test for courts to analyze

21   before even reaching the waiver question.

22

23

24   _____

25        [7] As with the *McMaster* Court, courts throughout the Ninth Circuit have regularly
     adopted the *Dillon* test for determining whether there is an equitable basis for waiving the
26   Rule 62(b) waiver requirement.  *See, e.g.*, *Biltmore Assocs., L.L.C. v. Twin City Fire Ins.
     Co.*, 2007 WL 2422053, at *1 (D. Ariz. Aug. 22, 2007) (applying *Dillon* factors to
27   determine that Defendants were not entitled to a waiver of the Rule 62[b] bond
     requirement); *Kranson v. Fed. Express Corp.*, 2013 WL 6872495, at *1 (N.D. Cal.
28   Dec. 31, 2013) ("Courts in the Ninth Circuit regularly use the Dillon factors in
     determining whether to waive the bond requirement").

-6-

**B.   Defendants fail to meet their burden to show their entitlement to a stay of the Court's May 8, 2019 Attorney's Fees Order**

A stay is an extraordinary remedy that should rarely be granted. *Nken*, 556 U.S. at 427, 433-34. In order to obtain a stay pending appeal, the moving party must meet the burden of showing that it faces hardship or inequities such that a stay is warranted. In determining whether the balance of equities favors a stay, courts analyze the following four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Leiva-Perez*, 640 F.3d at 964. Defendants entirely fail to meet—or even address—their burden under this test.

**1.   Defendants Cannot Show a Strong Likelihood of Success on Appeal**

Defendants face demanding standards of review on appeal, and their stay motion fails to show that the Court abused its discretion in the First Attorneys' Fee Order. Defendants intend to raise the same objections to the Second Attorneys' Fees Order as were raised in their appeal of the First Attorneys' Fees Order, but those arguments are meritless. [Doc. 3415 at 1] For example, Defendants argue on appeal that lodestar enhancement multipliers in prison cases—specifically approved in *Kelly v. Wengler*, 822 F.3d 1086 (9th Cir. 2016)—are now flatly disallowed by *Murphy v Smith*, 138 S. Ct. 784 (2018). [Ninth Cir. No. 18-16365, Doc. 11-1 at 18] But *Murphy* considered only the narrow issue of what portion of money damages should be used for attorneys' fees under the Prison Litigation Reform Act (PLRA). 138 S. Ct. at 786. While the Stipulation adopts the hourly rates prescribed by the PLRA, that statute is not the basis for the fees awarded here, and the Court correctly found that *Murphy* was irrelevant to the multiplier issue. [Doc. 2902 at 4] *Kelly* remains binding Circuit precedent. *See United States v. Robertson*, 875 F.3d 1281, 1291 (9th Cir. 2017) ("So long as the court can apply our prior circuit precedent without running afoul of the intervening authority it must do so")

1    (internal quotation marks omitted).  Defendants have failed to show a strong likelihood of

2    success on appeal.

3                    **2.      Defendants Cannot Show Irreparable Injury Absent A Stay**

4            Without a showing of irreparable harm tipping "sharply" in the movant's favor, a

5    stay "may not issue, regardless of [the movant's] proof regarding the other stay factors."

6    *Leiva-Perez,* 640 F.3d at 965, 968, 971.  Perhaps recognizing they cannot meet this heavy

7    burden, Defendants do not show—or even allege—that they will be harmed absent a stay,

8    much less that they will be so irreparably harmed that this factor tips sharply in their

9    favor.

10

11                   **3.      Defendants Cannot Show That Plaintiffs Will Not Be
                            Substantially Injured If a Stay is Granted**

12           Defendants  ignore  the  requirement  that  a  party  seeking  a  stay  must  show

13   definitively that no other parties will be substantially injured by a stay, as they cannot

14   make such as showing. Plaintiffs would be substantially injured by a stay.

15           Underlying the Court's orders awarding attorneys' fees is the recognition that in

16   the face of sustained intransigence by Defendants, Plaintiffs' counsel have vigorously,

17   repeatedly, and successfully moved to enforce the terms of the Stipulation, producing

18   excellent results for the 34,000 class members in this case.  The uncommonly difficult

19   issues encountered by Plaintiffs' counsel in enforcing the Stipulation, largely a product of

20   Defendants' conduct and litigation strategy, have necessitated an enormous outlay of

21   resources and continuous work to overcome.

22           The purpose of fee-shifting provisions is "to attract competent counsel to represent

23   citizens deprived of their civil rights."  *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862,

24   870 (9th Cir. 2002).  In this case, Plaintiffs' counsel have yet to be paid *a single penny* for

25   nearly five years of successful work to enforce the Stipulation—and now Defendants seek

26   still more delay.  Defendants' efforts to obstruct the delivery of just compensation for the

27   efforts of Plaintiffs' counsel perpetuates the undesirability of class action cases on behalf

28   of prisoners, which ultimately reduces the availability of counsel to litigate such cases,

thus inflicting harm both on Plaintiff class members and on similarly situated incarcerated people facing unconstitutional conditions of confinement.

Class action cases on behalf of prisoners are generally considered undesirable even by the civil rights bar, owing to the fact that they are so time-consuming and expensive to litigate.[8] The PLRA's fee cap serves to make such cases even more undesirable by cutting market rates substantially.  And, coupled with the significant degree of expertise and experience required to litigate complex prisoner rights class action cases, the end result is that few lawyers are willing to, or even equipped to, bring cases such as this one.[9] Preventing the just compensation of counsel who nonetheless overcome these systemic factors further enshrines such disincentives and thus harms both the Plaintiff class in this case and similarly situated persons.

### 4. Defendants Cannot Show That Public Interest Considerations Support a Stay

Defendants likewise ignore the requirement that a party seeking a stay must show that the public interest favors a stay.  However, public interest considerations confirm that a stay is inappropriate.

Public interest considerations weigh sharply in favor of Plaintiffs.  Militating against the granting of a stay is the interest in vindicating Plaintiffs' counsel's superior performance, extraordinary commitment of resources, and excellent results for their clients, particularly in the face of Defendants' persistent non-compliance and

---

[8] "This case is considered 'undesirable' because § 1983 class actions on behalf of prisoners involving the conditions of confinement are exceedingly fact-intensive, time-consuming, and expensive to litigate, and the PLRA restricts the hourly rate for attorneys' fees below market." *Graves v. Arpaio*, 633 F. Supp. 2d 834, 847 (D. Ariz. 2009).
[9] "To my knowledge, no lawyers, law firms, or public-interest groups in Arizona have the degree of experience in prisoner-rights litigation, the expertise to litigate a complex, statewide, prisoner-rights class action, and the resources to bring a lawsuit like the Parsons v. Ryan litigation.  I am also unaware of any qualified local counsel who would be willing to bring a complicated, resource intensive case, like Parsons, for the low fee rate set by the Prison Litigation Reform Act.  As a result, it was necessary to bring in outside legal expertise to conduct this case."  [*See* Doc. 2279 ¶ 5 (Declaration of Kathleen E. Brody)]

1    obstruction.[10]  The vast outlay of resources required to enforce the Stipulation during the

2    2017-18 Enforcement Period is directly linked to Defendants' conduct, and principles of

3    fundamental fairness support the prompt delivery of just compensation for Plaintiffs'

4    counsel's successful representation of 34,000 class members in spite of that conduct.

5

6          **C.    Defendants fail to meet their burden to show that they are entitled to a
                 waiver of the Rule 62 bond requirement**

7          Rule 62(b) provides that "[a]t any time after judgment is entered, a party may

8    obtain a stay by providing a bond or other security."  Fed. R. Civ. P. 62(b).  However,

9    when the moving party declines to post a bond or other security, there is no automatic stay

10   and "the grant or denial of the stay [is] a matter strictly within the [district] judge's

11   discretion."  *Masto,* 670 F.3d at 1066-67 (no abuse of discretion when district court

12   denied a stay "based on the State's failure to comply with the express requirements of

13   Rule 62[b]").  For reasons they do not explain, Defendants have declined to post a bond as

14   required by Rule 62(b).

15         Defendants' request that they be relieved from Rule 62's bond requirement should

16   be rejected because there is no valid equitable basis for doing so.  *See McMaster*, 233

17   F.R.D. at 460 ("although Defendants argue that the bond requirement should be excused

18   because the state retains the financial ability to pay, the court finds that Defendants have

19   not offered any valid reason to excuse the bond requirement").  Defendants' sole

20   argument is that "it is not a complex process" for ADC to pay a judgment.  [Doc. 3413 at

21   6]  But this is contradicted by their own declarant, who concedes that a legislative

22

23   _____

24          [10] As the Court noted, "In one recent example, Defendants had no information
     about what could be done to improve compliance for PM 50 at Tucson and failed to even
25   attempt to provide a corrective action plan at the May 2018 Status Conference.  In another
     example, instead of presenting a corrective action plan aimed at trying something new,
26   Defendants informed the Court at the June status hearing that they will continue to use
     their previous plan even though the CGARs reflect that the previous plan has not obtained
27   consistent compliance for PM 39 at Lewis.  That Defendants should exhibit such
     nonchalance about addressing on-going failures to comply with the Stipulation—even as
28   the sword of sanctions loomed above them—is considerable evidence that a contempt
     order and monetary sanctions are necessary."  [Doc. 2898 at 19-20]

appropriation may be necessary to allow ADC to pay the judgment.[11]  This is precisely the ground relied upon to deny a stay in the absence of a bond in both *McMaster*, 233 F.R.D. at 459-60, and *Lightfoot v. Walker*, 797 F.2d 505, 506 (7th Cir. 1986) ("The fact that the state has the financial wherewithal to pay a judgment for $700,000 can be of little solace to the plaintiffs when the state does not contest Judge Marshall's finding in *Preston* that the procedure for collecting a judgment against the state is not only cumbersome and time-consuming, but uncertain in outcome, since *the judgment cannot be paid unless and until the state legislature votes to appropriate the money necessary to pay it*") (emphasis added).

Finally, ADC's past behavior inspires little confidence that Defendants will promptly pay the attorneys' fees judgment if it is affirmed on appeal.  *See Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397 (9th Cir. 1997), *as amended on reh'g and reh'g en banc* (Apr. 22, 1997), *cert. denied*, 522 U.S. 865 (1997) (Arizona Legislature enacted statute barring payment of federal court special master's fees absent legislative appropriation; after ADC Director refused to pay the master's fees and was held in contempt, ADC unsuccessfully appealed to the Ninth Circuit and unsuccessfully sought *certiorari* in the U.S. Supreme Court).  In *Hook*, as Defendants concede, "the [Arizona] Legislature did not appropriate funds for the [court-ordered] fees and expenses."  107 F.3d at 1400. Defendants' claim that "ADC has never defaulted on a judgment" (Doc. 3413 at 7) is therefore incorrect.

## IV.   CONCLUSION

Defendants could obtain a stay automatically and immediately by posting a bond. For reasons they choose not to share with the Court, they refuse to do so.  For the reasons

---

[11]  "If the amount of the judgment exceeds the amount of money that has been set aside to cover legal claims (or that remains in that allotment), the Administrative Services Division will locate and use money from other portions of ADC's budget to ensure that it is promptly paid in full.  *If necessary, it can work with the State Legislature to appropriate more money*" (emphasis added).  [Doc. 3413-2 at 2]

set forth above, Defendants' motion for a stay of the Court's Second Attorneys' Fees Order and Judgment should be denied.

Dated:  December 2, 2019                    **ACLU NATIONAL PRISON PROJECT**

By:   s/ Amy Fettig
David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Eunice Hyunhye Cho (Wash. 53711)*
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@aclu.org
             afettig@aclu.org
             echo@aclu.org

*Admitted *pro hac vice*.  Not admitted
 in DC; practice limited to federal
 courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:     dbarr@perkinscoie.com
             agerlicher@perkinscoie.com
             jhgray@perkinscoie.com

Martin Lieberman (Bar No. 007442)
Molly Brizgys (Bar No. 029216)
**ACLU FOUNDATION OF
ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:     mlieberman@acluaz.org
             mbrizgys@acluaz.org

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
          ahardy@prisonlaw.com
          snorman@prisonlaw.com
          ckendrick@prisonlaw.com
          rlomio@prisonlaw.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

1

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2019, I electronically transmitted the above

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
Richard M. Valenti
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com

*Attorneys for Defendants*

Asim Dietrich
Rose A. Daly-Rooney
J.J. Rico
Maya Abela
ARIZONA CENTER FOR DISABILITY LAW
adietrich@azdisabilitylaw.org
rdalyrooney@azdisabilitylaw.org
jrico@azdisabilitylaw.org
mabela@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

s/ D. Freouf

-14-