Molly Brizgys (Bar No. 029216)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: mbrizgys@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,

Plaintiffs,

v.

David Shinn, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services Contract Monitoring Bureau, Arizona Department of Corrections, in their official capacities,

Defendants.

No. CV 12-00601-PHX-ROS

**RESPONSE IN OPPOSITION TO MOTION QUASH (DOC. 3436)**

## I. INTRODUCTION

The federal courts have long recognized "the general principle that litigants have a right to 'every man's evidence,' and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (citation omitted). Defendants now seek to obstruct the search for truth by blocking the deposition of a high-ranking psychiatrist, formerly employed by Corizon Health, who has come forward with evidence that the actions of the Arizona Department of Corrections ("ADC") and Corizon have resulted in serious injury and death to patients incarcerated in ADC.

The Court should not countenance this attempt to interfere with its truth-seeking function. Defendants' motion to quash should be denied.

## II. FACTUAL BACKGROUND

Leonel Urdaneta, M.D. is a psychiatrist with more than thirty years of experience in correctional mental health care. Prior to July 1, 2019, when Corizon held the contract to provide health care to ADC prisoners, Dr. Urdaneta was Director of Psychiatry for the ADC-Corizon contract. [*See* Declaration of David C. Fathi ("Fathi Decl."), Ex. 1]

On October 27, 2019, Dr. Urdaneta sent an email to Plaintiffs' counsel which read, in pertinent part:

> I am a psychiatrist who has worked in the correctional field for 30 years plus. My last job was as Director of Psychiatry for the AZ-Corizon contract.
>
> My reason for reaching out to you is my interests in bringing to light the dysfunctions I was witness to during my two years as head of the Psychiatric Service for the contract, dysfunctions that were part to AZ Correctional Department and of Corizon itself. Those dysfunctions caused tremendous harm to patients, including suicides and severe self-injurious damage.

[*Id.*]

On October 31, Plaintiffs' counsel sent the following email to attorney Todd Kartchner of Fennemore Craig, which represents Corizon and ADC in this litigation:

> Dr. Leonel Urdaneta recently contacted us, requesting to speak with us about the provision of mental health care in the Arizona Department of Corrections. As you may be aware, Dr. Urdaneta is no longer employed by Corizon. Nevertheless, we are writing as a courtesy to let you know that we intend to speak with him. If Corizon intends to assert any objection to our communication with Dr. Urdaneta, please let us know by the close of business on Monday, November 4.

[Fathi Decl., Ex. 2 at 4][1] On November 4, Mr. Kartchner responded on behalf of both ADC and Corizon:

> *ADC and Corizon jointly object* to communications with Dr. Urdaneta without having defense counsel present. Pursuant to *Lang v. Superior Court*, 170 Ariz. 602 (1992), ex parte communications with former employees whose acts or omissions may be imputed to the former employer are prohibited.
>
> You will need to coordinate a meeting, *or, if you prefer, a deposition, with us, and again, defense counsel will need to be present for either option.*

[*Id.* at 3 (emphasis added)]

Pursuant to Mr. Kartchner's offer on behalf of ADC and Corizon, on November 13 Plaintiffs filed a Notice of Intent to Serve Subpoenas. [Doc. 3417] Appended to the Notice were a subpoena duces tecum, calling for production of documents on December 2, and a subpoena for a deposition on December 10. [Doc. 3417-1, 3417-2] Dr. Urdaneta was personally served on November 18, 2019. [Fathi Decl. ¶ 8][2]

On November 19, attorney Ashlee Hesman of Struck Love Bojanowski & Acedo objected to the subpoenas on behalf of Defendants. Plaintiffs' counsel responded on November 20, pointing out that Defendants had already consented to the deposition, and offering to discuss the scheduling of the deposition or specific items called for in the

---

[1] Defendants have submitted unauthenticated copies of email correspondence between counsel. [Doc. 3436-1, 3436-2] Because unauthenticated documents are inadmissible (*Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002)), Plaintiffs attach properly authenticated copies to the Fathi Declaration.

[2] Plaintiffs subsequently withdrew the subpoena duces tecum. [Doc. 3425]

subpoena. [Fathi Decl., Ex. 3 at 2-3] Defendants rejected that offer, and filed the instant motion.[3]

## III. ARGUMENT

While Defendants claim that "Plaintiffs have failed to offer any reasons why this deposition should go forward" (Doc. 3436 at 5), "[t]he burden of persuasion in a motion to quash a subpoena . . . is borne by the movant." *Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 424 (E.D.N.Y. 2007); *accord, Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003). Defendants entirely fail to carry their burden.

### A. Defendants have already consented to the deposition of Dr. Urdaneta.

In response to Plaintiffs' email about speaking with Dr. Urdaneta, Mr. Kartchner responded on behalf of both ADC and Corizon:

> *ADC and Corizon jointly object* to communications with Dr. Urdaneta without having defense counsel present. . . . You will need to coordinate a meeting, *or, if you prefer, a deposition, with us, and again, defense counsel will need to be present for either option*.

[Fathi Decl., Ex. 2 at 3 (emphasis added)] While Defendants claim that "Corizon's counsel does not bind Defendants" (Doc. 3436 at 5), Mr. Kartchner and his firm represent both Defendants and Corizon in this litigation; he was thus authorized to speak on behalf of Defendants.[4] And although Defendants claim that Mr. Kartchner's objection to an *ex parte* interview and offer of a deposition was made "without Defense counsel's input" (Doc. 3436 at 2), attorneys Rachel Love and Tim Bojanowski of Struck Love Bojanowski & Acedo were copied on Mr. Kartchner's November 4 email and on the subsequent lengthy email exchange, and at no time voiced any disagreement with Mr. Kartchner's

---

[3] Citing no evidence whatsoever, Defendants smear Dr. Urdaneta as "a disgruntled former Corizon employee." [Fathi Decl., Ex. 4] The Court has previously cautioned Defendants' counsel that "[t]hese sorts of ad hominem attacks are beneath the dignity of counsel and the Court." [Doc. 2902 at 7 n.5]

[4] [*See* Fathi Decl., Ex. 5 (cover page of brief on behalf of Defendants filed by Fennemore Craig attorneys, including Mr. Kartchner, in Ninth Circuit No. 18-16358, Dkt. 36)] Defendants' failure to disclose this critical fact "raise[s] concerns about Defendants' candor to the Court." [Doc. 3269 at 1-2]

statement of ADC's position or any objection to a deposition of Dr. Urdaneta. [Fathi Decl. ¶ 3 & Ex. 2]

In the absence of egregious circumstances, parties are bound by the statements of their attorneys. *Town of N. Bonneville v. Callaway*, 10 F.3d 1505, 1509 (9th Cir. 1993). Defendants, through their attorney Mr. Kartchner, objected to Plaintiffs' counsel speaking with Dr. Urdaneta *ex parte*, and consented to his deposition. They identify no egregious circumstances or any other reason why they should be permitted to rescind that consent.

**B. Defendants lack standing to quash the subpoena to Dr. Urdaneta.**

As Defendants admit, they are "not a party to the subpoena" served on Dr. Urdaneta. [Fathi Decl., Ex. 4] "Generally speaking, a party does not have standing to quash a subpoena served on a third party." *Thomas v. Marina Assocs.*, 202 F.R.D. 433, 434 (E.D. Pa. 2001); *accord, Atl. Inv. Mgmt., LLC v. Millennium Fund I, Ltd.*, 212 F.R.D. 395, 398 (N.D. Ill. 2002); *McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 587 (W.D.N.Y. 1995); *Oliver B. Cannon & Son, Inc. v. Fid. & Cas. Co. of New York*, 519 F. Supp. 668, 680 (D. Del. 1981). Although there is an exception to this rule when "the party seeks to quash based on claims of privilege relating to the documents being sought," *Thomas*, 202 F.R.D. at 434, that exception has no relevance here, where no documents are sought. [*See* Doc. 3425 (withdrawing subpoena duces tecum previously served on Dr. Urdaneta)] Defendants' motion must be denied based upon their lack of standing.[5]

---

[5] Defendants' cases are not to the contrary. Three of them involve the exception to the no-standing rule for document subpoenas, a situation not presented here. *See In re REMEC, Inc. Sec. Litig.*, No. CIV 04CV1948 JLS AJB, 2008 WL 2282647, at *3-4 (S.D. Cal. May 30, 2008); *Springbrook Lenders v. Nw. Nat. Ins. Co.*, 121 F.R.D. 679, 680 (N.D. Cal. 1988); and *Portland Gen. Elec. Co. v. U.S. Bank Tr. Nat. Ass'n*, 38 F. Supp. 2d 1202, 1206 (D. Or. 1999), *rev'd and remanded sub nom. Portland Gen. Elec. Co. v. U.S. Bank Tr. Nat. Ass'n as Tr. for Tr. No. 1*, 218 F.3d 1085 (9th Cir. 2000). The remaining two involve subpoenas issued in violation of a case management order, which is not the case here. *See Ferreira v. Penzone*, No. CV-15-01845-PHX-JAT, 2018 WL 1706212, at *1 (D. Ariz. Apr. 9, 2018); *Integra Lifesciences I, Ltd. V. Merck KGaA*, 190 F.R.D. 556, 562 n.3 (S.D. Cal. 1999).

**C. The testimony of Dr. Urdaneta is critical to the vindication of the rights of the Plaintiff class and to the upcoming negotiations.**

Dr. Urdaneta was Corizon's chief psychiatrist in Arizona when Corizon held the contract to provide health care to ADC prisoners. Dr. Urdaneta wishes to expose

> the dysfunctions I was witness to during my two years as head of the Psychiatric Service for the contract, dysfunctions that were part to AZ Correctional Department and of Corizon itself. *Those dysfunctions caused tremendous harm to patients, including suicides and severe self-injurious damage*.

[Fathi Decl., Ex. 1 (emphasis added)] In light of Corizon's and ADC's refusal to allow Plaintiffs' counsel to speak with Dr. Urdaneta, a deposition is essential to bring this critical information to light.

Defendants claim, without evidence or explanation, that Dr. Urdaneta's deposition will "frustrate the parties' upcoming settlement discussions." [Doc. 3436 at 6] On the contrary, Dr. Urdaneta's evidence is particularly critical as settlement negotiations begin. If those negotiations are to address, *inter alia*, current deficiencies in the provision of mental health care, Dr. Urdaneta's evidence can only benefit both parties. Defendants' refusal to allow Plaintiffs to speak with Dr. Urdaneta, coupled with their attempt to block his deposition, would leave Plaintiffs at a significant information deficit as these negotiations get underway.[6]

The Court's Rule 706 expert, Marc Stern, M.D., has already identified harm to patients that has occurred as a result of Defendants' failure to provide adequate mental health care. [*See, e.g.*, Doc. 3379 at 31 (extremely brief encounters with mental health staff "are too short to be clinically effective, and in the context of the cases, place patients at significant risk of substantial harm"); *id.* at 76-77 (delay in responding to patient's request for mental health care "placed him at significant risk of serious harm"); *id.* at 87-

---

[6] Defendants also claim that Dr. Urdaneta's evidence is "irrelevant and stale." [Doc. 3436 at 1] They provide no evidence for or explanation of this claim. If Dr. Urdaneta's evidence pertains to policies and practices that are continuing to the present time, it is manifestly not "irrelevant and stale." The only way to find out is to hear the evidence—the very result Defendants are striving mightily to prevent.

88 (removal of patient from suicide watch by unlicensed mental health staff "put the patient at significant risk of self-harm"); *id.* at 122 ("The inadequate care this patient received over the course of two back-to-back suicide watches . . . placed her at a significant risk of serious harm")] And Defendants themselves have admitted as recently as November 21 that two large ADC prisons suffer from a "[l]ack of psychiatric providers to see patients in a timely manner." [Doc. 3421-1 at 415, 416]

This Court has repeatedly expressed concern about the harm class members are suffering as a result of Defendants' failure to provide adequate health care. [*See, e.g.*, Doc. 3057 at 8 (denying Defendants' stay motion "because of the continued harm the class experiences"); Doc. 3385 at 2 (the Court observes that Dr. Stern's report "describes in detail how Defendants' behavior creates a significant risk of serious harm to prisoners' health")] If Dr. Urdaneta has information regarding inadequate mental health care—including deficiencies that have led to patient injuries and deaths—that evidence should be available to the parties and to the Court.

**D. Defendants fail to carry their burden to show that the subpoena should be quashed.**

Fed. R. Civ. P. 45(d)(3) sets forth the grounds upon which a subpoena may be quashed. Defendants do not even assert, let alone carry their burden to show, that any of these grounds apply here. For this reason alone, their motion must be denied. *See Porter v. Pinkerton Gov't Servs., Inc.*, 304 F.R.D. 24, 31 (D.D.C. 2014) (denying motion to quash where the grounds asserted "certainly do not constitute grounds to quash under Rule 45(d)(3)"); *Strike 3 Holdings, LLC v. Doe*, No. 19CV2552LAKOTW, 2019 WL 4855039, at *2 (S.D.N.Y. Oct. 2, 2019) (motion to quash denied where "Defendant does not move to quash the subpoena on any of the grounds listed in Federal Rule of Civil Procedure 45(d)(3)(A)"); *Kennedy v. Basil*, No. 18-CV-2501(ALC)(KNF), 2019 WL 2343153, at *5 (S.D.N.Y. June 3, 2019) (motion to quash denied where movant "neither asserted nor established any of the grounds for quashing the subpoena contemplated by Fed. R. Civ. P. 45(d)(3)(A)"); *Sutton v. Leeuwen*, No. 14-CV-02379-RM-MJW, 2016 WL

1258595, at *2 (D. Colo. Mar. 30, 2016) ("Neither the words 'undue burden' nor any of the other grounds for quashing a subpoena in Rule 45(d)(3) appear anywhere in the motion to quash. As a result, no adequate grounds have been presented for quashing this subpoena").

Defendants' sole argument is that "Plaintiffs issued their subpoena after settlement of the case and thus after the close of discovery." [Doc. 3436 at 4] But depositions and other discovery are routine in the post-judgment monitoring and enforcement phase of prison conditions cases and other complex injunctive litigation. *See, e.g.*, *Armstrong v. Brown*, No. C 94-2307 CW, 2011 WL 2020589, at *2 (N.D. Cal. May 24, 2011) (denying prison officials' motion to quash post-judgment notice of deposition and request for documents; "Defendants have not justified precluding Plaintiffs from taking the discovery they seek"); *Coleman v. Schwarzenegger*, No. CIV S-90-0520-LKK-JFMP, 2008 WL 4300437, at *6 (E.D. Cal. Sept. 15, 2008) (post-judgment deposition in prison conditions case). *See also State of N.Y. v. Shore Realty Corp.*, 763 F.2d 49, 53 (2d Cir. 1985) (discovery permitted in post-judgment contempt proceedings in environmental litigation); *Palmer v. Rice*, 231 F.R.D. 21, 27 (D.D.C. 2005) (post-judgment discovery in employment discrimination class action).[7]

None of Defendants' cases are to the contrary. Rather, those cases stand only for the proposition that a court may establish and enforce a pretrial discovery cutoff date. This proposition is uncontroversial but irrelevant here, where there is no case management order setting a discovery cutoff, and Defendants have failed to provide any support for their argument that depositions or other discovery are categorically prohibited in the post-judgment phase of a complex injunctive case.[8]

---

[7] Indeed, Defendants admit that they have repeatedly issued subpoenas during the post-judgment phase of this case—including to a previous whistleblower and to her employer. [*See* Doc. 3436 at 5; Doc. 2585-1 (Defendants' subpoena duces tecum to Onyx Healthcare LLC); Doc. 2565-1 (Defendants' subpoena duces tecum to Dr. Janice Watson)]

[8] Even Defendants' cases involving pretrial discovery deadlines are far from unanimous, with the motion to quash being denied in *R. Prasad Industries v. Flat Irons Envtl. Sols. Corp.*, No. CVI-12-08261-PCT-JAT, 2014 WL 2804276 at *6 (D. Ariz.

Most fundamentally, Defendants fail to identify any persuasive reason why the deposition of Dr. Urdaneta should not proceed. They claim a desire "to prevent the expenditure of fees" (Doc. 3436 at 1), but that is not a ground for quashing a subpoena under Rule 45(d)(3).[9] Moreover, this argument rings more than a little hollow in light of Defendants' multi-year history of scorched-earth litigation tactics. [*See* Doc. 3385 at 6 (the Court observes that "Defendants have spent millions of dollars on the present litigation and Defendants appear determined to spend millions more in the future")] Indeed, it is likely that more resources have already been expended on litigating Defendants' baseless motion to quash than will be spent on the deposition itself.[10]

**E. The need for a deposition.**

The Court has directed the parties to address "whether the subpoena was necessary or if Plaintiffs can speak with Urdaneta, and have him produce documents, without issuing a subpoena." [Doc. 3440 at 1][11] A deposition is superior to an informal interview because it provides (1) testimony under oath, under penalty of perjury, and (2) a verbatim transcript of proceedings taken by a neutral court reporter, on whose accuracy the parties can agree. Given the contentious nature of this case, an informal interview will inevitably

---

June 20, 2014), and *Joseph P. Carroll Ltd. v. Baker*, No. 09 CIV-3174-SHS, 2012 WL 1232957, at *2 (S.D.N.Y. April 12, 2012). And in *Green v. City of Phoenix*, 330 F.R.D. 239, 240 (D. Ariz. 2019), Judge Humetewa declined to follow *Integra*, and permitted the deposition despite the fact that discovery had closed.

[9] Defendants do not claim that participating in the deposition—which, of course, they are not obligated to do—would subject them to "undue burden." *See* Fed. R. Civ. P. 45(d)(3)(A)(iv).

[10] Defendants fail to disclose that *Internmatch, Inc. v. Nxtbigthing, LLC*, No. 14-CV-05438-JST, 2016 WL 1212626 (N.D. Cal. Mar. 28, 2016), cited at p. 3 of their brief, was subsequently vacated. *See* 2017 WL 8944065 (N.D. Cal. Nov. 17, 2017); *see also Kawitt v. United States*, 842 F.2d 951, 954 (7th Cir. 1988) (citation of opinion without disclosing its subsequent vacatur warranted imposition of sanctions). And they omit a crucial qualifier from their quotation from *Internmatch*. *Compare* 2016 WL 1212626 at *1 ("*Some* courts have found that Rule 45 subpoenas sought after the discovery cut-off are improper attempts to obtain discovery beyond the discovery point") (emphasis added) *with* Doc. 3436 at 3 (omitting "some").

[11] As noted above (*supra* n.2), Plaintiffs have withdrawn their subpoena duces tecum to Dr. Urdaneta. However, before Plaintiffs did so, Mr. Kartchner objected to each and every category of documents sought and threatened to move to quash the subpoena. [Fathi Decl., Ex. 6] It therefore appears unlikely that Plaintiffs would be able to obtain documents from Dr. Urdaneta absent a subpoena.

result in disagreement among the parties on what was said, thus considerably reducing the reliability and usefulness of the information gained. If the Court ultimately sets the case for trial as Plaintiffs have requested (*see* Doc. 3402 at 2), the deposition transcript, unlike notes from an informal interview, can be used at trial, including if Dr. Urdaneta is unavailable. *See* Fed. R. Civ. P. 32. Finally, given that counsel for Plaintiffs, Defendants, and Corizon will presumably participate, it is unclear that an informal interview would result in any saving of attorney time.

## IV. CONCLUSION

For all of these reasons, Defendants' motion to quash should be denied.

Dated: December 6, 2019

**ACLU NATIONAL PRISON PROJECT**

By: s/ David C. Fathi

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Eunice Hyunhye Cho (Wash. 53711)*
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email: dfathi@aclu.org
afettig@aclu.org
echo@aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email: dbarr@perkinscoie.com
agerlicher@perkinscoie.com
jhgray@perkinscoie.com

Molly Brizgys (Bar No. 029216)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: mbrizgys@acluaz.org

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email: dspecter@prisonlaw.com
ahardy@prisonlaw.com
snorman@prisonlaw.com
ckendrick@prisonlaw.com
rlomio@prisonlaw.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By: s/ Maya Abela
Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
rdalyrooney@azdisabilitylaw.org
jrico@azdisabilitylaw.org
mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2019, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
Richard M. Valenti
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com

*Attorneys for Defendants*

s/ D. Freouf