Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>David Shinn, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-ROS<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO COURT ORDER (Dkt. 3416)** |

The Court ordered the parties to address two issues: "1) the *legal basis* for reopening this case and proceeding to trial; and 2) every enforcement mechanism that is *authorized by* the Stipulation and general principles of law." (Dkt. 3416 at 2, emphasis added.)  Plaintiffs' Response goes beyond those two inquiries and encourages the Court to "avail itself of these options and exercise its power without any further delay." (Dkt. 3430 at 15.)  This is not the time—and certainly not the format ("an opposition brief of no more than ten pages")—to decide *which* action to take or whether there is a *factual* basis for doing so.  The Court has simply asked what it is *legally* permitted to do.  Only after the Court decides what authority it has *and* Defendants are given (1) notice of impending action—either by motion or an order to show cause—and (2) an opportunity to refute any factual basis through briefing, evidence, and a hearing, should the Court consider taking any action.

As to Plaintiffs' purported legal grounds for reinstating the proceedings and other enforcement mechanisms, they continue to rely on devices that are available only to terminate, modify, or enforce *court orders*. The Stipulation is *not* a court order. It is a negotiated settlement agreement voluntarily entered into by the parties. Plaintiffs chose that resolution instead of proving their claims at trial and securing a consent decree or court-ordered injunction.

**I.     Rule 60 Is Not a Valid Legal Basis to Terminate the Stipulation and Reinstate Proceedings.**

Plaintiffs argue that the Court may terminate the Stipulation and reinstate proceedings pursuant to Civil Rules 60(b)(5) ("prospectively is no longer equitable") and 60(b)(6) ("any other reason that justifies relief"). (Dkt. 3430 at 11–12.) Initially, none of the cases they cite to support this argument addresses Rule 60(b)(5). They discuss only Rule 60(b)(6). *See Lehman v. United States*, 154 F.3d 1010, 1017 (9th Cir. 1998); *Keeling v. Sheet Metal Workers Int'l Ass'n, Local Union 162*, 937 F.2d 408, 410 (9th Cir. 1991); *Grand Canyon W. Ranch, LLC v. Kempthorne*, 2013 WL 12364963, at *3 (D. Ariz. July 1, 2013). Thus, Rule 60(b)(5) is a non-starter.

Nonetheless, neither Subsection is applicable because they apply only to court orders. Rule 60(b)(5) "represents a codification of preexisting law, recognizing the inherent power of a court sitting in equity to modify *its decrees* prospectively to achieve equity." *S.E.C. v. Worthen*, 98 F.3d 480, 482 (9th Cir. 1996) (quoting *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 911 F.2d 363, 365 (9th Cir. 1990)) (emphasis added); *see also Horne v. Flores*, 557 U.S. 433, 447 (2009) ("Rule 60(b)(5) … provides a means by which a party can ask a court to modify or vacate a *judgment or order*….") (emphasis added); *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 (1992) ("Rule 60(b)(5) provides that a party may obtain relief from a *court order*….") (emphasis added). Similarly, Rule 60(b)(6) can only vacate a court's dismissal order. *See Keeling*, 937 F.2d at 410 ("Repudiation of a settlement agreement that terminated litigation pending before a court constitutes an extraordinary circumstance [under Rule 60(b)(6)], and it justifies vacating the court's prior

*dismissal order.*") (emphasis added); *Grand Canyon*, 2013 WL 12364963, at *3 ("One such [extraordinary] circumstance is when a party repudiates the settlement underlying the dismissal order that terminated litigation; it is then appropriate to vacate that *dismissal order* under Rule 60(b)(6).") (emphasis added).

The Stipulation is not a court order. The Stipulation itself refutes this notion: (1) it is titled a "Stipulation" (Dkt. 1185); (2) its stated purpose was to "settle" the case (*id.*, ¶ 4); (3) it states that it "does not constitute and shall not be construed or interpreted as an admission of any wrongdoing or liability by any party" (*id.*, ¶ 5); (4) it states that the "Stipulation shall not be construed as a consent decree" (*id.*, ¶ 35); and (5) it states that it "may not be altered or modified, except by a writing signed by all representatives of all parties at the time of modification" (*id.*, ¶ 40). Moreover, the Stipulation was not issued or entered by the Court; it is signed only by the parties. (*Id.* at pg. 15-19.) Indeed, even the Ninth Circuit has referred to the Stipulation as a "settlement agreement," and applied legal principles interpreting and enforcing settlement agreements specifically. *See Parsons v. Ryan*, 912 F.3d 486, 495, 497–98 (9th Cir. 2018) (citing *Jeff D. v. Andrus*, 899 F.2d 753 (9th Cir. 1989), *City of Emeryville v. Robinson*, 621 F.3d 1251 (9th Cir. 2010), and *Wilcox v. Arpaio*, 753 F.3d 872 (9th Cir. 2014)).[1]

Because the Stipulation is a settlement agreement, not a court order, Rule 60 is not a legal basis to terminate it and reinstate proceedings.[2] Plaintiffs label this argument "unpersuasive" (Dkt. 3430 at 8 n.8), but they do not (and have never) meaningfully rebutted it. They just assert once again that the Stipulation is a court order and cite the same cases

---

[1] Neither the Rule 23(e) Fairness Order nor the Order Re: Settlement converted the Stipulation into a court order. They do not incorporate the terms of the Stipulation; they do not grant any remedy; and they do not require Defendants' compliance with the Stipulation. *See Christina A. ex rel. Jennifer A. v. Bloomberg*, 315 F.3d 990, 992–93 (8th Cir. 2003); *Disability Law Ctr. v. Mass. Dep't of Correction*, 960 F. Supp. 2d 271, 275, 283-84 (D. Mass. 2012). *See also Parsons v. Ryan*, No. 18-16358, Doc. 36 at 31–41, incorporated here. Moreover, the fact that the Court has the authority to enforce the Stipulation does not transform it into a consent decree. *Id*.

[2] Even if Rule 60 applied, the Court can only vacate, *Horne*, 557 U.S. at 447, or repudiate, *Keeling*, 937 F.2d at 410, the Stipulation, not terminate it, as Plaintiffs propose.

they always have (despite knowing what Defendants have repeatedly argued before). The Ninth Circuit should resolve this issue in the pending appeal from the June 22, 2018 Contempt Order. *See Parsons v. Ryan*, No. 18-16358.

**II.    Plaintiffs' Proposed Enforcement Mechanisms Are Not Authorized by the Stipulation or Other Principles of Law.**

    **A.    The Court Does Not Have the Authority to Modify the Stipulation Without the Parties' Approval.**

Plaintiffs' contention that the Court can modify the Stipulation pursuant to Rule 60(b)(5) fails for the same reasons. Rule 60(b)(5) authorizes a court to modify its own orders. *Horne*, 557 U.S. at 447; *Rufo*, 502 U.S. at 383; *Worthen*, 98 F.3d at 482. (*See* Dkt. 3430 at 8 n.8 ["the Court's equitable power to modify applies to *all <u>orders and judgments</u>*, with prospective application, including not only consent decrees but also court-ordered and stipulated injunctions."], double emphasis added.) The Stipulation is not a court order (i.e., not a consent decree or an injunction), and none of the cases Plaintiffs cite hold that Rule 60(b)(5) extends to private settlement agreements. *See Brown v. Plata*, 563 U.S. 493, 514, 542–43 (2011) (discussing a court's authority to modify "a decree of injunctive relief")[3]; *Salazar v. Buono*, 559 U.S. 700, 708 (2010) (involving a court-ordered injunction); *Rufo*, 502 U.S. at 371 (involving a consent decree); *Armstrong v. Brown*, 768 F.3d 975, 978 (9th Cir. 2014) (involving a court-ordered injunction); *Valdivia v. Schwarzenegger*, 599 F.3d 984, 987 (9th Cir. 2010) (involving a court-approved injunction following a finding of a constitutional violation, *see Valdivia v. Brown*, 2012 WL 219342, at *1 (E.D. Cal. Jan. 24, 2012)); *Bellevue Manor Associates v. United States*, 165 F.3d 1249, 1252 (9th Cir. 1999) (involving a court-ordered injunction).

Consequently, Rule 60(b)(5) does not authorize the Court to modify the Stipulation. Only the parties can modify it.[4] (Dkt. 1185, ¶ 40.)

---

[3] *Brown* involved two cases: *Coleman v. Brown* and *Plata v. Brown*. 563 U.S. at 500. *Coleman* involved a court-ordered remedial plan, *Coleman v. Wilson*, 912 F. Supp. 1282, 1324 (E.D. Cal. 1995), and *Plata* involved a consent decree and stipulated injunction, *Brown*, 563 U.S. at 514. Neither involved a private settlement agreement.

[4] Defendants also disagree that a modification would be warranted under Rule 60(b)(5) and the *Rufo* factors to "align it with Dr. Stern's recommendation that qualitative

### B. The Court Does Not Have the Authority to Hold Defendants in Contempt or Appoint a Receiver.

As the Court (and Plaintiffs) are aware, the Ninth Circuit will soon resolve whether the Stipulation can be enforced through contempt. *See Parsons v. Ryan*, No. 18-16358. Defendants maintain that it cannot, *see id.*, Doc. 36, 50; Dkt. 2228, 2241, incorporated here, but recognize that the Court has ruled to the contrary. However, the Court should abstain from exercising that power again until the Ninth Circuit decides the issue.

The Court does not, however, have the authority to appoint a receiver. Receivers are appointed to coerce compliance with a *court order*. *See*, *e.g.*, *Inmates of D.C. Jail v. Jackson*, 158 F.3d 1357, 1358 (D.C. Cir. 1998); *Morgan v. McDonough*, 540 F.2d 527, 533 (1st Cir. 1976); *Plata v. Schwarzenegger*, 2005 WL 2932253, at *22 (N.D. Cal. Oct. 3, 2005); *Dixon v. Barry*, 967 F. Supp. 535, 550 (D.D.C. 1997); *Shaw v. Allen*, 771 F. Supp. 760, 762 (S.D. W.Va. 1990); *Newman v. State of Ala.*, 466 F. Supp. 628, 635 (M.D. Ala. 1979); *Wayne Cty. Jail Inmates v. Wayne Cty. Chief Executive Officer*, 444 N.W.2d 549, 551 (Mich. App. 1989). (*See* Dkt. 3430 at 13:18 ["Courts have appointed receivers to enforce orders related to prisons and jails …."].) As discussed above, the Stipulation is a voluntary settlement agreement, not a court order.

Nonetheless, any consideration of a receiver is premature. Both the Supreme Court and the Ninth Circuit have recognized—particularly in the prisoner litigation context—that a receiver is only appropriate to remedy an established constitutional violation. *See Brown*, 563 U.S. at 511 ("Courts faced with the sensitive task of remedying unconstitutional prison conditions must consider a range of available options, including appointment of special masters or receivers and the possibility of consent decrees."); *Plata v. Schwarzenegger*, 603 F.3d 1088, 1093–94 (9th Cir. 2010) ("[R]eceiverships are recognized equitable tools available to the courts to remedy otherwise uncorrectable violations of the Constitution or

---

measurements evaluating actual clinical care be used to determine adequacy of health care" or "to eliminate Paragraph 36's limitation on its power to order Defendants to hire a specific number or type of staff." (Dkt. 3430 at 8:10–11:9.) But, as stated at the outset, any such analysis and factual development is premature.

laws."); *see also Plata*, 2005 WL 2932253, at *23 (appointing receiver to "remedy the violation of [inmates'] constitutional rights"); *Shaw*, 771 F. Supp. at 764 (appointing receiver to ensure jail met "federal constitutional standards"); *Newman*, 466 F. Supp. at 630 (appointing a receiver to ensure prison meets "minimum constitutional standards").

Unlike these cases, the Court has never found that Defendants' noncompliance with the Stipulation's performance measures violated the constitutional rights of ADC inmates. Indeed, the performance measures are not a constitutional benchmark.[5] A receiver cannot be considered until and unless Plaintiffs have proven, and the Court has found, a current, ongoing constitutional violation in need of correction.[6] This Court has recognized as much already. (*See* Dkt. 3093 at 4 ["As I read the stipulation, that essentially would allow me to declare a breach of the stipulation and we would then set the matter for trial and I would resolve the underlying issues in the complaint. And if I found that there was a violation, in other words, that I would grant the request for the remedies, then there is the possibility, of course, like California has done, which makes no sense in this case, considering all the time that was spent, is that I would appoint a receiver, which is extraordinarily expensive."].)

Even then, a receiver is not automatic. "Receivership is a remedy of last resort." *Bracco v. Lackner*, 462 F. Supp. 436, 456 (N.D. Cal. 1978); *see also Plata*, 2005 WL 2932253, at *1 (acknowledging that appointing a receiver is a "drastic" action); *Dixon*, 967 F. Supp. at 550 (considering a receiver where it was "the only remedy left"). The extraordinary nature of a receiver demands significant procedural protections, for example, an order to show cause why a receiver should not be appointed and an evidentiary hearing. *Plata*, 2005 WL 2932253, at **1-2. And after considering all of the evidence, the Court must consider a variety of factors. *Id.* at *23. In short, a receiver is legally impermissible

---

[5] Although Dr. Stern opined that compliance with the performance measures does not necessarily reflect the provision of adequate care (because they do not all measure the adequacy of care), his logic works both ways: non-compliance does not necessarily mean that the provision of care was inadequate.

[6] Neither Plaintiffs' allegations (either in inmate letters or pleadings) nor Dr. Stern's opinions constitute findings.

6

and procedurally and factually inappropriate.

### C. The Court Does Not Have the Authority to Appoint a Rule 706 Expert.

As the Court (and Plaintiffs) are aware, the Ninth Circuit will soon resolve whether the Stipulation authorizes the appointment of a Rule 706 expert. *See Parsons v. Ryan*, No. 18-16368. Defendants maintain that it does not, *see id.*, Doc. 34, 49; Dkt. 2067, incorporated here, but recognize that the Court has ruled to the contrary. However, the Court should abstain from appointing another Rule 706 expert until the Ninth Circuit decides the issue.

If it does appoint a Rule 706 expert, the expert "may present recommendations, but may not issue findings of fact or conclusions of law." *Armstrong v. Brown*, 768 F.3d 975, 987–88 (9th Cir. 2014); *see also Reilly v. United States*, 863 F.2d 149, 155 (1st Cir. 1988) ("[T]he grasp of Rule 706 is confined to court-appointed expert witnesses; the rule does not embrace expert advisors or consultants."). Defendants must also be given an opportunity to examine the expert. *Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 591 (9th Cir. 2000); *Reilly*, 863 F.2d at 156 (holding that Rule 706 "establishes a procedural framework for nomination and selection of an expert witness and for the proper performance of his role after an appointment is accepted (e.g., [show cause], advising the parties of his findings, submitting to depositions, being called to testify, being cross-examined)").

Plaintiffs suggest that Dr. Stern conduct "a system-wide evaluation, using qualitative metrics," to determine whether the healthcare system poses a substantial risk of serious harm, but such an evaluation far exceeds what is required or measured under the Stipulation. As they admit, the Stipulation employs a quantitative measurement of specific performance measures at certain facilities/units. Thus, any qualitative, systemwide evaluation is irrelevant to whether Defendants are in compliance with the Stipulation, and therefore unauthorized. Plaintiffs' suggestion to allow Dr. Stern or another Rule 706 expert to "monitor the delivery of care" exceeds the bounds of Rule 706. *Armstrong*, 768 F.3d at 987–88; *Reilly*, 863 F.2d at 155. Plaintiffs cite *Kelly v. Wengler*, 979 F. Supp. 2d 1104 (D.

Idaho 2013), to support their request for a Rule 706 monitor, but the district court in that case did not appoint a monitor pursuant to Rule 706. *See id*. at 1116. Both proposals are non-starters.

**III.     The Court's Enforcement Authority Is Limited to Contractual Remedies.**

The Stipulation authorizes this Court to enforce the Stipulation through "all remedies provided by law." (Dkt. 1185, ¶ 36.) It does not, as Plaintiffs hope, authorize "all powers inherent in an Article III court." (Dkt. 3430 at 2:13.) As discussed in Defendants' Response, those remedies are limited to rescission, specific performance, or damages. (Dkt. 3435.) Plaintiffs further assert that "[a] federal court has the power to issue further enforcement orders and injunctive relief to effectuate the purpose of a … settlement agreement" (Dkt. 3430 at 4:4-5), but neither of the cases they cite to support that proposition involved a settlement agreement (like the Stipulation). *See Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 434 (2004) (involving a consent decree); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 27 (1984) (involving a protective order). They also cite the All Writs Act, but the cases they cite there confirm that the Act applies only to court orders. *United States v. New York Tel. Co.*, 434 U.S. 159, 172, (1977) ("This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration *of orders it has previously issued* in its exercise of jurisdiction otherwise obtained…") (emphasis added); *Nat'l Org. For the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 544 (9th Cir. 1987) ("One of the recognized applications of the All Writs Act is the issuance of orders necessary to ensure the integrity *of orders previously issued*.").

Defendants do not dispute that the Ninth Circuit held that the Court may order Defendants "to develop a general staffing plan." *Parsons*, 912 F.3d at 498. This presumably qualifies as specific performance. But any such order can only require Defendants to develop a "plan to increase staffing in general." *Id*. at 498. It cannot require Defendants to hire a specific number or type of personnel. *Id*. Thus, the Court could not, for example, blindly order "a staffing analysis" and then order Defendants to "implement

8

staffing changes accordingly," as Plaintiffs contend. (Dkt. 3430 at 5:11–12.)

Plaintiffs also suggest that the Court should rescind two state statutes (one capping payment to outside specialists and another privatizing healthcare), as recommended by Dr. Stern. (Dkt. 3430 at 5–6.) This is not an available contractual remedy. Even in the appropriate context (e.g., a case involving a consent decree or court-ordered injunction), such relief is a "matter of last resort," more so than the appointment of a receiver, and requires several factors to be satisfied. *See Coleman v. Brown*, 922 F. Supp. 2d 1004, 1053 (E.D. Cal. 2013); *see also* 18 U.S.C. § 3626(a)(1)(B) (i) ("Federal law requires such relief to be ordered in violation of State or local law"), (ii) ("the relief is necessary to correct the violation of a Federal right"), (iii) ("no other relief will correct the violation of the Federal right"). Rescinding any statute fails at the gate.[7]

DATED this 16th day of December, 2019.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By /s/Daniel P. Struck
Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
3100 West Ray Road, Suite 300
Chandler, Arizona 85226

*Attorneys for Defendants*

---

[7] Dr. Stern's recent communication with a legislative member and assistance in drafting a bill to repeal the statute privatizing inmate healthcare (Dkt. 3452) undermines the conclusions and opinions in his report that are critical of the care provided to ADC inmates and his recommendation to de-privatize ADC healthcare.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com; docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Dietrich: | adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Molly Brizgys: | mbrizgys@acluaz.org |
| Eunice Cho | ECho@aclu.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Daniel P. Struck