Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>David Shinn, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-ROS<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO ENFORCE THE STIPULATION AND AMEND THE ORDER TO SHOW CAUSE (DKT. 3492)** |

Before filing a Motion to Enforce, Plaintiffs must first send Defendants a Notice of Noncompliance. (Dkt. 1185 at ¶¶30–31.) They then must participate (in good faith) in a meet and confer with Defendants to resolve the dispute informally. (*Id.*) If the dispute cannot be resolved, they then must mediate the dispute with Defendants before Magistrate Judge Fine. (*Id.* at ¶31.) Only if the dispute cannot be resolved through mediation can Plaintiffs file a motion to enforce. (*Id.*) This process takes approximately three months. (*Id.*)

Plaintiffs' instant Motion to Enforce is based upon a Notice of Noncompliance they sent Defendants on January 2, 2019—over a year ago—and upon a mediation that took place six months ago. (Dkt. 3492 at 2.) As a result of Plaintiffs' unexplained delay in

moving to enforce, the data and positions of the parties from the meet and confer and mediation are now far different. While measures may have met the definition of substantial noncompliance a year ago, because Centurion has made great strides in improving compliance rates, it is not true today. Moreover, it is important to note that the compliance scores listed in Plaintiffs' Motion for PM 24 and PM 44 are wrong.[1] This filing contains the correct scores.

As detailed below, of the twelve PMs/facilities subject to Plaintiffs' Motion, only one requires a remedial plan. Thus, with the exception of PM 40 at Florence (for which Defendants will agree to develop a remedial plan), Plaintiffs' Motion should be denied.

**I. MEASURES THAT HAVE MAINTAINED COMPLIANCE AND DO NOT REQUIRE A REMEDIAL PLAN.**

While the following measures meet the Court's definition of substantial noncompliance, a remedial plan is unnecessary because they have recently maintained compliance. The Court has previously denied Plaintiffs' Motion to Enforce, and refused to order Defendants to submit a remedial plan, where a measure meets the definition of substantial noncompliance, but was recently compliant. (Dkt. 3020 at 1-2.) For the same reasons, at this time, the Court should not order a remedial plan for these measures.

**PM 23:** Automated External Defibrillators (AEDs) will be maintained and readily accessible to Health Care Staff.

| 2018 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lewis | 100 | 100 | 67 | 33 | 78 | 89 | 56 | 89 | 67 | 78 | 100 | 33 |

| 2019 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lewis | 44 | 89 | 44 | 67 | 78 | 67 | 56 | 67 | 78 | 100 | 100 | 100 |

**Lewis**: Maintained 100% compliance the last three months.

**PM 24:** Emergency medical response bags are checked daily, inventoried monthly, and contain all required essential items.

---

[1] PM 24: Eyman scored 60% (not 100%) in September 2018, Phoenix scored 100% (not 80%) in November 2019; PM 44: Phoenix scored 38% (not 100%) in March 2019; Tucson scored 79% (not 100%) in March 2019; Tucson scored 88% (not 77%) in November 2019.

2

| 2018 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Eyman | 100 | 100 | 100 | 40 | 0 | 40 | 60 | 40 | 60 | 40 | 80 | 60 |
| Florence | 100 | 100 | 83 | 83 | 100 | 67 | 33 | 83 | 100 | 100 | 83 | 100 |
| Phoenix | 100 | 100 | 100 | 100 | 80 | 80 | 80 | 80 | 100 | 100 | 100 | 100 |
| Yuma | 100 | 100 | 60 | 80 | 80 | 100 | 80 | 100 | 80 | 100 | 100 | 100 |

| 2019 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Eyman | 20 | 40 | 0 | 0 | 0 | 0 | 0 | 80 | 100 | 20 | 100 | 100 |
| Florence | 100 | 83 | 100 | 83 | 100 | 100 | 100 | 50 | 83 | 100 | 100 | 100 |
| Phoenix | 100 | 100 | 100 | 100 | 100 | 100 | 80 | 80 | 80 | 100 | 100 | 100 |
| Yuma | 100 | 100 | 100 | 40 | 100 | 80 | 60 | 80 | 100 | 100 | 100 | 100 |

**Eyman:** Achieved 100% compliance three of the last four months.

**Florence**: Maintained 100% compliance the last three months. In September 2019, it only missed compliance by 2%.

**Phoenix**: Maintained 100% compliance the last three months. Of the last 24 months, it has only been noncompliant seven times. Each of those seven times, it only missed compliance by 5%.

**Yuma**: Maintained 100% compliance the last four months.

**PM 44:** Inmates returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital shall have the hospital's treatment recommendations reviewed and acted upon by a medical provider within 24 hours.

| 2018 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Phoenix | 38 | 67 | 100 | 86 | 50 | 60 | 33 | 0 | 67 | 58 | 100 | 20 |
| Tucson | 32 | 58 | 79 | 68 | 86 | 89 | 74 | 62 | 69 | 54 | 88 | 76 |

| 2019 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Phoenix | 20 | 0 | 38 | 33 | 100 | 67 | 100 | 100 | 100 | 100 | 100 | 90 |
| Tucson | 77 | 69 | 79 | 69 | 79 | 75 | 82 | 77 | 85 | 88 | 88 | 85 |

**Phoenix**: Maintained compliance the last six months. Five of the last six months it scored 100%.

**Tucson**: Maintained compliance the last four months.

**PM 52:** Specialty consultation reports will be reviewed and acted on by a Provider within seven calendar days of receiving the report.

| 2018 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lewis | 97 | 97 | 97 | 95 | 62 | 74 | 74 | 78 | 58 | 80 | 75 | 75 |

| 2019 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lewis | 63 | 60 | 45 | 82 | 89 | 78 | 88 | 87 | 98 | 90 | 94 | 89 |

**Lewis:** maintained compliance the last six months.

## II. MEASURES THAT ARE SUBSTANTIALLY NONCOMPLIANT FOR WHICH DEFENDANTS WILL DEVELOP A REMEDIAL PLAN.

Defendants concede that PM 40 at Florence meets the Court's definition of substantial noncompliance. They will identify the deficiencies and develop a remedial plan to correct them.

**PM 40:** *Urgent provider referrals are seen by a Medical Provider within 24 hours of the referral.*

| 2018 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Florence | 33 | 100 | 75 | 50 | 100 | 60 | 100 | 100 | 50 | N/A | 100 | 100 |

| 2019 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Florence | 50 | 100 | N/A | N/A | N/A | 100 | 50 | 60 | 100 | 67 | 60 | 68 |

## III. MEASURES THAT ARE NOT IN SUBSTANTIAL NONCOMPLIANCE.

The following measure does not meet the Court's definition of substantial noncompliance.[2]

**PM 74 (Perryville)**: All female prisoners shall be seen by a licensed mental health clinician within five working days of return from a hospital post-partum.

| 2018 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Perryville | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 71 |

| 2019 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Perryville | 83 | 100 | 100 | 100 | 100 | 100 | 75 | 100 | 100 | 100 | 100 | 100 |

Plaintiffs argue that PM 74 at Perryville is substantially noncompliant because the February 2019 score should be 75% not 100%. (Dkt. 3492 at 4–5.) Specifically, they argue that one of the four patient files reviewed should have been marked noncompliant because, during the encounter, "there was another inmate in the area." (*Id*. at 5.) Plaintiffs' analysis is incorrect. The file was correctly marked compliant. *See* Exhibit 2 (Declaration of N. Taylor) at ¶7. The details of the patient encounter with which Plaintiffs take issue with is described below:

---

[2] Plaintiffs' Motion omits Defendants' Response to Plaintiffs' May 20, 2019 Notice of Substantial Noncompliance. (Dkt. 3493-1.) To ensure the Court's record is complete, Defendants attach it as Exhibit 1.

Following a C-section, as required by PM 74, the inmate was seen by a psychologist while she recovered in the facility's IPC. (*Id*. at ¶10.) Another inmate, who was receiving IV antibiotic therapy, was approximately thirty feet away. (*Id*. at ¶11.) Because the inmates' medical needs precluded their removal from the IPC, in order to maintain confidentiality, the psychologist spoke in Spanish and in a low voice. (*Id*. at ¶12.) Even if the psychologist had the authority to move either inmate, it would have been inappropriate as one was attached to an IV and one had just returned from the hospital that day, and was experiencing post-partum pain following major surgery. (*Id*. at ¶13.) Plaintiffs provide no evidence that the other inmate understood Spanish or that she was able to hear the psychologist's low voice. Indeed, no such evidence exists. (*Id*. at ¶14.)

Dr. Taylor, ADC's Mental Health Director at the time, reviewed the file to determine its compliance with PM 74. (*Id*. at ¶15.) Based upon her monitoring experience, extensive review of the inmate's file, discussions with individuals who interviewed the psychologist that interacted with the inmate, and after conferring with the Court's expert, Dr. Stern, the file was marked compliant. (*Id*. at ¶16.) This was the appropriate determination as the encounter allowed for the confidential exchange of information in accordance with PM 74's requirements. (*Id*. at ¶17.) Moreover, this encounter provided the inmate with far more confidentiality than a civilian hospital room, where patients reside in the same room separated (at most) by a curtain. Therefore, the correct score for PM 74 at Perryville in February 2019 is 100%. (*Id*. at ¶18.)

Even if Perryville scored 75% for PM 74 in February 2019, because it has recently maintained compliance (at 100% for 9 of the last 10 months), the Court should not order a remedial plan. (Dkt. 3020 at 1-2.)

### IV. PLAINTIFFS' REQUEST REGARDING PM 19 AND PM 67 IS AN UNTIMELY MOTION FOR RECONSIDERATION.

Plaintiffs also request reconsideration of the Court's September 28, 2018 Order denying their Motion to Enforce with respect to PM 19 at Tucson and PM 67 at Florence. (Dkt. 3492 at 6.) As an initial matter, because the Court terminated PM 19, Plaintiffs'

Motion should be denied with respect to PM 19 at Tucson.[3] (Dkt. 3495 at 14.) Additionally, Plaintiffs' Motion should be denied as untimely. Pursuant to LRCiv 7.2(g)(2), absent good cause (which Plaintiffs have not argued nor shown), motions for reconsideration must be filed no later than fourteen days after the date of the filing of the Order that is the subject of the motion. Because Plaintiffs waited 496 days to file their Motion, it is untimely and should be denied.

Even if timely (it is not) Plaintiffs' Motion should be denied because they failed to complete the requisite procedural requirements outlined in the Stipulation before filing. That Plaintiffs previously moved to enforce PM 67 at Florence *over two years ago* (Dkt. 2520) is irrelevant. Especially where their prior motion was denied. If Plaintiffs want to again move to enforce PM 67 at Florence, they must begin the process again. Allowing Plaintiffs to utilize previously denied motions to enforce (as they request) circumvents the Stipulation's procedural requirements, and runs afoul of the Stipulation's intent. The purpose of the four-step process is to provide the parties the opportunity to informally resolve issues before seeking Court intervention. To illustrate, the parties are required to meet and confer and mediate the dispute in good faith before filing a motion to enforce. (Dkt. 1185 at ¶¶30–31.) While that occurred two years ago, those discussions concerned compliance scores and a healthcare provider which are no longer at issue. Indeed, Plaintiffs' January 4, 2018 Motion relied upon CGAR scores from November 2016–October 2017. (Dkt. 2520.) Those scores are no longer relevant and, not surprisingly, are not included in Plaintiffs' instant Motion. (Dkt. 3492 at 6.) Thus, the parties have not yet completed the Stipulation's steps for the CGAR data Plaintiffs rely upon now. Plaintiffs' request that the Court find PM 67 noncompliant at Florence is therefore premature and should be denied.

Even if timely (it is not) and even if procedurally proper (it is not), Plaintiffs' Motion should be denied because PM 67 at Florence has been compliant for eleven of the last

---

[3] It is unclear why Plaintiffs included this measure in their Motion as they previously agreed to retire it. (Dkt. 3379 at 54-56.)

6

thirteen months. For the two months it was noncompliant, it missed the threshold by only 5%:

**PM 67 (Florence):** *In an IPC, Registered Nurses will conduct and document an assessment at least once every shift. Graveyard shift assessments can be welfare checks.*

| 2018 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Florence | 100 | 100 | 90 | 100 | 90 | 100 | 90 | 60 | 60 | 70 | 80 | 90 |

| 2019 | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Florence | 100 | 100 | 80 | 90 | 100 | 90 | 100 | 80 | 100 | 100 | 90 | 90 |

Because the Court has previously denied Plaintiffs' Motion to Enforce, and refused to order Defendants to submit a remedial plan, where a measure meets the definition of substantial noncompliance, but was recently compliant, the Court should deny Plaintiffs' Motion with respect to PM 67 at Florence. (Dkt. 3020 at 1-2.)

## V. PLAINTIFFS' REQUEST TO AMEND THE JANUARY 31, 2019 OSC IS PREMATURE.

Finally, because it is prohibited by the Stipulation's requirements, the Court should deny Plaintiffs' one-sentence request that it amend its January 31, 2019 Order to Show Cause (or issue a subsequent one) to include the above PMs and facilities. Indeed, the Court must first make several findings, and provide Defendants an opportunity to correct the noncompliance, before it may issue an order to show cause:

> In the event the Court finds that Defendants have not complied with the Stipulation, it **shall** in the first instance require Defendants to submit a plan approved by the Court to remedy the deficiencies identified by the Court. In the event the Court subsequently determines that the Defendants' plan did not remedy the deficiencies, the Court shall retain the power to enforce this Stipulation through all remedies provided by law
> . . .

(Dkt. 1185 at ¶36) (emphasis added).

Because the Court has not made a noncompliance determination, has not provided Defendants the opportunity to submit a remedial plan, and has not made a second noncompliance determination after submission of such plan, Plaintiffs' request is premature and should be denied.

**VI. CONCLUSION**

For these reasons, with the exception of PM 40 at Florence, Plaintiffs' Motion should be denied.

DATED this 5th day of March, 2020.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By /s/Rachel Love
    Daniel P. Struck
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    3100 West Ray Road, Suite 300
    Chandler, Arizona 85226

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com; docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Dietrich: | adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Eunice Cho | ECho@aclu.org |
| Jared G. Keenan | jkeenan@acluaz.org |
| Casey Arellano | carellano@acluaz.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Rachel Love